1 | Richard M. Pachulski (CA Bar No. 90073)
Dean A. Ziehl (CA Bar No. 84529)
2 | Robert B. Orgel (CA Bar No. 101875)
PACHULSKI STANG ZIEHL & JONES LLP
3 | 10100 Santa Monica Blvd., 11th Floor
Los Angeles, California 90067-4100
4 | Telephone: 310/277-6910; Facsimile: 310/201-0760

5 | Edward Soto (admitted *pro hac vice*)
Shai Y. Waisman (admitted *pro hac vice*)
6 | WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
7 | New York, NY 10153-0119
Telephone: (212) 310-8000; Facsimile: (212) 310-8007

8 |
Attorneys for Lehman Commercial Paper Inc. and Lehman
9 | ALI, Inc.

10 |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SANTA ANA DIVISION**

In re:
Palmdale Hills Property, LLC, and its Related Debtors,
        Jointly Administered Debtors and
        Debtors-In-Possession

Affects:
☐ All Debtors
☑ Palmdale Hills Property, LLC
☑ SunCal Beaumont Heights, LLC
☐ SCC/Palmdale, LLC
☑ SunCal Johannson Ranch, LLC
☑ SunCal Summit Valley, LLC
☑ SunCal Emerald Meadows, LLC
☑ SunCal Bickford Ranch, LLC
☑ Acton Estates, LLC
☑ Seven Brothers, LLC
☐ SJD Partners, Ltd.
☐ SJD Development Corp.
☑ Kirby Estates, LLC
☑ SunCal Communities I, LLC
☑ SCC Communities LLC
☐ SunCal Communities III, LLC
☐ North Orange Del Rio Land, LLC
☑ Tesoro SF, LLC
*Caption Continued on Next Page*

Case No.: 8:08-bk-17206-ES
Chapter 11

Jointly Administered Case Nos.
8:08-bk-17209-ES; 8:08-bk-17240-ES;
8:08-bk-17224-ES; 8:08-bk-17242-ES;
8:08-bk-17225-ES; 8:08-bk-17245-ES;
8:08-bk-17227-ES; 8:08-bk-17246-ES;
8:08-bk-17230-ES; 8:08-bk-17231-ES;
8:08-bk-17236-ES; 8:08-bk-17248-ES;
8:08-bk-17249-ES; 8:08-bk-17573-ES;
8:08-bk-17574-ES; 8:08-bk-17575-ES;
8:08-bk-17404-ES; 8:08-bk-17407-ES;
8:08-bk-17408-ES; 8:08-bk-17409-ES;
8:08-bk-17458-ES; 8:08-bk-17465-ES;
8:08-bk-17470-ES; 8:08-bk-17472-ES;
and 8:08-bk-17588-ES

**DISCLOSURE STATEMENT WITH
RESPECT TO JOINT CHAPTER 11
PLAN FOR TWELVE VOLUNTARY
DEBTORS PROPOSED BY THE
LEHMAN VD LENDERS**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

1    ☐ LB/L-SunCal Oak Valley, LLC
    ☐ SunCal Heartland, LLC
2    ☐ LB/L-SunCal Northlake, LLC
    ☐ SunCal Marblehead, LLC
3    ☐ SunCal Century City, LLC
    ☐ SunCal PSV, LLC
4    ☐ Delta Coves Venture, LLC
    ☐ SunCal Torrance Properties, LLC
5    ☐ SunCal Oak Knoll, LLC

**Hearing:**
Date:     November 5, 2010
Time:    10:00 a.m.
Place:   Courtroom 5A
         411 West Fourth Street
         Santa Ana, CA  92701

[THIS IS NOT A SOLICITATION OF ACCEPTANCE OR REJECTION OF THE

JOINT VD PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL A

DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS

DISCLOSURE STATEMENT IS BEING SUBMITTED FOR APPROVAL BUT HAS NOT BEEN

APPROVED BY THE COURT]

|  | SUMMARY INFORMATION[1] |
|---|---|
| **VD Plan Debtors:** | **Group I Debtors:** Palmdale Hills Property, LLC; SunCal Bickford Ranch, LLC; SunCal Emerald Meadows, LLC |
|  | **Group II Debtors:** Acton Estates, LLC; SCC Communities LLC; SunCal Communities I, LLC; SunCal Summit Valley, LLC; Tesoro SF, LLC |
|  | **Group III Debtors:** Seven Brothers, LLC; Kirby Estates, LLC; SunCal Beaumont Heights, LLC; SunCal Johannson Ranch, LLC |
| **Recommendation:** | The Lehman VD Lenders recommend that you vote in favor of the Plan. |
| **Vote Required to Accept the Plan:** | Acceptance of the Plan requires the affirmative vote of two-thirds in amount and a majority in number of the Allowed Claims actually voted in each Class (or subclass) of Impaired Classes entitled to vote. Only Entities holding Claims in Classes 2, 6, 7, 8, 9, 10 and 11 are entitled to vote. If any of these Classes as to any particular VD Plan Debtor rejects the Plan, the Bankruptcy Court nevertheless may confirm the Plan as to such VD Plan Debtor if the "cramdown" requirements of Bankruptcy Code § 1129(b) are satisfied with respect to such Class or subclass. |
| **Voting / Balloting Information Generally:** | If you are entitled to vote, you should have received a Ballot with this Disclosure Statement. After completing and signing your Ballot, you should return it to: |
|  |       Pachulski Stang Ziehl & Jones LLP<br>      10100 Santa Monica Blvd., 11th Floor<br>      Los Angeles, California  90067-4100<br>      Attention: Michael Matteo |
|  | For your ballot to be counted, Pachulski Stang Ziehl & Jones LLP must receive it no later than 5:00 p.m. Pacific Time on _____ __, 2010. |
| *Special Voting Procedures: Holders of Reliance Claims & General Unsecured Claims against Group I Debtors and Group II Debtors (Classes 6, 7, 8 & 9)* | **Whether you have an Allowed Reliance Claim in Class 6 or Class 7 or an Allowed General Unsecured Claim in Class 8 or Class 9, you only receive 1% on your Claim (plus a proportional share of Residual Cash) unless you properly and timely elect to receive the Lehman Distribution Enhancement and afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.** Ballots for each Holder of a General Unsecured Claim in Class 8 or Class 9 or Reliance Claim will afford the Holder the opportunity to elect that, if its Claim is Allowed, it would receive the Lehman Distribution Enhancement and grant the Lehman Released Parties the Creditor's Assignment / Release for Lehman. This affords Holders of Allowed Reliance Claims up to a 25% Distribution (Claims against Group I Debtors) or up to a 10% Distribution (Claims against Group II Debtors).  This affords Holders of General Unsecured Claims up a 5% Distribution. |

---

[1] All capitalized terms have the meanings set forth in Article II and Exhibit "C" of the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | |
|---|---|
| *Special Voting Procedures: Holders of Alleged Mechanic's Lien Claims Against Group I Debtors or Group II Debtors (Other than SunCal Summit Valley)* | **The Lehman Proponents dispute that any Mechanic's Lien Claims Against Group I Debtors or Group II Debtors (Other than SunCal Summit Valley) could be Allowed as Sr. Secured Mechanic's Lien Claims** because they believe that, with respect to Plan Projects of such Debtors, the Lehman VD Lenders' Liens are senior Encumbrances and there is no value in the junior Liens of the Holders of such Mechanic's Lien Claims. For each Holder identified in advance as having alleged to hold such a Mechanic's Lien Claim, **the Ballot will afford an opportunity to waive any contention that the Holder has a Secured Claim senior to the Secured Claim of the applicable Lehman VD Lender(s) on the applicable Plan Project** and to assert, instead, that its Claim is a General Unsecured Claim or Reliance Claim, **thereby affording the Creditor**, as more fully set forth below, **the opportunity to elect to receive the <u>Lehman Distribution Enhancement</u> if its Claim is Allowed. If the Creditor holding a Mechanic's Lien Claim against a Group I Debtor or Group II Debtor (other than SunCal Summit Valley) instead waits to see whether its Claim later is deemed to be entitled to "secured" status and it is unsuccessful in such effort, even if its Claim is Allowed as a Reliance Claim or General Unsecured Claim, it will only receive 1% on its Claim plus a proportional share of Residual Cash and it will not have the opportunity to elect to receive the Lehman Distribution Enhancement.** |
| *"Reliance Claim" Status Must Be Asserted on a Ballot* | For any Creditor to vote its Claim as a Reliance Claim (Class 6 or Class 7), and have offered to it the higher Distributions available therefor with respect to the Lehman Distribution Enhancement, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim. The features distinguishing General Unsecured Claims from Reliance Claims, as more fully reflected in the definitions of each, are essentially that Reliance Claims are Claims (a) for "new value," (b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the applicable November, 2008 Petition Date(s), and (c) Filed by the Primary Claims Bar Date or listed on the Filed Schedules by June 1, 2010 as (undisputed, non-contingent, liquidated) Scheduled Claims; but Reliance Claims exclude Insider Claims and Lehman Creditor Claims (other than Lehman-Owned Settling Bond Issuer-Related Claims). The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims |
| **Confirmation Hearing:** | The hearing on Confirmation will be held on [**_____ __, 2010 at __:__ _.**]m. Pacific Time in Courtroom 5A, 411 West Fourth Street, Santa Ana, CA 92701. The hearing on Confirmation may be continued from time to time without notice. |
| **Plan Effective Date:** | The Plan's Effective Date for a VD Plan Debtor as to which the Plan is confirmed by the Bankruptcy Court will be a date selected by the Lehman VD Lenders, but in no event later than the sixtieth (60th) day after the Confirmation Date. |

| | | |
|---|---|---|
| **Questions:** | All inquiries about the Plan and Disclosure Statement should be in writing and should be sent to:<br><br>Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 11th Floor<br>Los Angeles, California 90067-4100<br>Attention: Richard M. Pachulski, Esq. &<br>Robert B. Orgel, Esq. | |
| **NOTICE:** | THE PLAN, DISCLOSURE STATEMENT AND BALLOTS CONTAIN IMPORTANT INFORMATION THAT IS NOT INCLUDED IN THIS SUMMARY. THAT INFORMATION COULD MATERIALLY AFFECT YOUR RIGHTS. YOU SHOULD THEREFORE READ THE PLAN, DISCLOSURE STATEMENT, AND BALLOTS IN THEIR ENTIRETY. YOU ALSO SHOULD CONSULT WITH YOUR LEGAL AND FINANCIAL ADVISORS BEFORE VOTING ON THE PLAN. | |

**SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS**

| CLASS AND/OR CLAIM TYPE | TREATMENT | IMPAIRED STATUS/VOTING STATUS |
|---|---|---|
| **Unclassified Claims** | | |
| Allowed Ordinary Course Administrative Claims | To be paid in full or performed by the Liquidating Trustee in the ordinary course of business, in accordance with the terms of the particular obligation. | Not Entitled to Vote |
| Lehman Administrative Loans | To be paid in Cash in full from the Lehman Creditor Distribution Funding on the Effective Date or at such later time and on such other terms as the Lehman VD Lenders may agree. | Not Entitled to Vote |
| Other Allowed Administrative Claims | To be paid by the Liquidating Trustee in full, in Cash, on the later of (i) the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim becomes due according to its terms. Administrative Tax Claims must be Filed and served on the Liquidating Trustee on or before the later of: (1) sixty (60) days following the Effective Date; or (2) 180 days following the date that the tax return for such tax year or period to which such Taxes relate is required to be filed with the applicable governmental unit. Other Administrative Claims, including for Professional Fees must be Filed by the General Administrative Claim Bar Date (first Business Day following the sixtieth (60th) day after the Confirmation Date). | Not Entitled to Vote |

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/VOTING STATUS** |
| Allowed Priority Tax Claims | To receive equal quarterly Cash payments payable until November 6, 2013, with all such payments totaling 100% of the principal amount of such Claim, plus interest on any unpaid balance from the Effective Date, calculated at the nonbankruptcy interest rate applicable on the Effective Date, if any. | Not Entitled to Vote |
| **Secured Claims** | | |
| Class 1<br><br>Allowed Secured Real Property Tax Claims | To receive either: (a) a lump sum payment on the Effective Date in the full amount owing when last due before default or maturity, plus any fees incurred in reasonable reliance on timely receipt of the tax, but without any penalty amounts at any time incurred or charged; (b) quarterly Cash payments until November 6, 2013, totaling the Allowed Amount of the Claim, with interest at the rate applicable under non-bankruptcy law; or (c) Simple Unimpairment (*e.g.*, to have left unaltered Creditor's legal, equitable and contractual rights, and Creditor to be free to pursue its rights and remedies under applicable nonbankruptcy law). The first treatment will be applicable by default unless the Bankruptcy Court rules that, despite cure and reinstatement, any penalty amounts are owing, or unless a Lehman VD Lender selects to make the second or third treatment applicable. | Not Entitled to Vote |
| Class 2<br><br>Allowed Lehman Secured Claims | Plan Projects to be conveyed free and clear to Lehman Nominees, as designated by the Lehman VD Lender(s); Collateral for the Lehman Secured Claims or its Net Cash Proceeds to be paid to the applicable Lehman VD Lender, unless the applicable Lehman VD Lender(s) otherwise directs. | Impaired<br><br>Entitled to Vote |
| Class 3<br><br>Allowed Sr. Secured Mechanic's Lien Claims | To receive either: (a) a cure and payment of the full amount owing and reinstatement of the terms applicable when last due before default or maturity, only with interest if not penalty interest, plus any fees incurred in reasonable reliance on timely receipt of payment, but without any penalty amounts at any time incurred or charged (if the original maturity date has passed as of the Effective Date, cure to be paid in a lump sum); or (b) the Holder of the Claim will have left unaltered its legal, equitable and contractual rights as a Holder of such Claim and will be free to pursue its rights and remedies, if any, against the underlying collateral under applicable | Not Entitled to Vote |

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/VOTING STATUS** |
| | nonbankruptcy law. The first treatment will be (i) applicable to all Settling Bond Issuer-Backed Performed Work Claims and (ii) also applicable to other Class 3 Claims unless the applicable Lehman VD Lender or Lehman Nominee selects and notifies the applicable Creditor or Creditors of its selection of the second alternative treatment. Lehman VD Lenders and Settling Bond Issuers holding Class 3 Claims have agreed to less favorable treatment. | |
| Class 4<br><br>Allowed Other Secured Claims | To receive either: (a) Simple Unimpairment (e.g., to have left unaltered Creditor's legal, equitable and contractual rights and Creditor to be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law); or (b) Unimpairment With Surrender or Abandonment (e.g., the Liquidating Trustee to abandon or surrender to the Creditor the property securing such Allowed Claim and turn over possession as soon as practicable thereafter); or (c) the applicable Allowed Claim to be cured and reinstated as of the first date when last payable without interest, fees or penalties, plus any non-penalty interest thereafter, plus fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of any penalty amounts thereof at any time incurred or charged (if the original maturity date has passed as of the Effective Date, cure to be paid in a lump sum). | Not Entitled to Vote |
| **Priority Unsecured Claims** | | |
| Class 5<br><br>Allowed Priority Claims | To receive the full amount of such Claim in Cash on the later of (i) the Effective Date, and (ii) the date such Claim becomes payable in accordance with its terms. | Not Entitled to Vote |
| **Non-Priority Unsecured Claims** | | |
| Class 6<br><br>Allowed Reliance Claims against Group I Debtors | A guaranteed Cash Distribution equal to the lesser of: (a) 25% of the Allowed Claim against the applicable Group I Debtor; and (b) an On Proportion Distribution with Holders of Allowed Claims in Class 8 of $_____ less the Calculating Claims against Group I Debtors, but only if the Creditor elects to receive the Lehman Distribution Enhancement, which it can do by electing on its Ballot to provide the Lehman Released Parties a Creditor's Assignment / Release for Lehman. | Impaired<br><br>Entitled to Vote |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/VOT-ING STATUS** |
| | If the Creditor does not elect to receive the Lehman Enhanced Distribution, it will receive an unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Claim. | |
| | Creditors will also receive a pro rata share of any Residual Cash, if any. | |
| Class 7<br><br>Allowed Reliance Claims against Group II Debtors | A guaranteed Cash Distribution equal to the lesser of: (a) 10% of the Allowed Claim against the applicable Group II Debtor; and (b) an On Proportion Distribution with Holders of Allowed Claims in Class 9 of $_____ less the Calculating Claims against the Group II Debtors and Group III Debtors, but only if the Creditor elects to receive the Lehman Distribution Enhancement, which it can do by electing on its Ballot to provide the Lehman Released Parties a Creditor's Assignment / Release for Lehman.<br><br>If the Creditor does not elect to receive the Lehman Enhanced Distribution, it will receive an unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Claim.<br><br>Creditors will also receive a pro rata share of any Residual Cash, if any. | Impaired<br><br>Entitled to Vote |
| Class 8<br><br>Allowed General Unsecured Claims against Group I Debtors | A guaranteed Cash Distribution equal to the lesser of: (a) 5% of the Allowed Claim against the applicable Group I Debtor; and (b) an On Proportion Distribution with Holders of Allowed Claims in Class 6 of $_____ less the Calculating Claims against the Group I Debtors, but only if the Creditor elects to receive the Lehman Distribution Enhancement, which it can do by electing on its Ballot to provide the Lehman Released Parties a Creditor's Assignment / Release for Lehman.<br><br>If the Creditor does not elect to receive the Lehman Enhanced Distribution, it will receive an unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Claim.<br><br>Creditors will also receive a pro rata share of any Residual Cash, if any. | Impaired<br><br>Entitled to Vote |

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/VOT-ING STATUS** |
| Class 9<br><br>Allowed General Unsecured Claims against Group II Debtors | A guaranteed Cash Distribution equal to the lesser of: (a) 5% of the Allowed Claim against the applicable Group II Debtor; and (b) an On Proportion Distribution with Holders of Allowed Claims in Class 7 of $_____ less the Calculating Claims against the Group II Debtors and Group III Debtors, but only if the Creditor elects to receive the Lehman Distribution Enhancement, which it can do by electing on its Ballot to provide the Lehman Released Parties a Creditor's Assignment / Release for Lehman.<br><br>If the Creditor does not elect to receive the Lehman Enhanced Distribution, it will receive an unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Claim.<br><br>Creditors will also receive a pro rata share of any Residual Cash, if any. | Impaired<br><br>Entitled to Vote |
| Class 10<br><br>Allowed General Unsecured Claims against Group III Debtors | To receive a Cash Distribution equal to 100% of each Claim plus post-petition interest at the Federal Judgment Rate applicable on the applicable Petition Date unless the Allowed Class 10 Claims exceed the Project Value less the Allowed Senior Claims against the applicable Group III Debtor.  In such event, each Holder is to receive, instead, a Pro Rata distribution of: (1) any positive sum resulting from subtracting the Allowed Senior Claims against the applicable Group III Debtor from the Project Value for the applicable Group III Debtor's Plan Project; and (2) Residual Cash, if any, of the Estate of the applicable Group III Debtor; provided that such Pro Rata Distribution shall not be less than 1% of each Allowed Claim. | Impaired<br><br>Entitled to Vote |
| Class 11<br><br>Allowed Settling Bond Issuer-Related Future Work Bond Claims | To receive performance of the Future Work obligations with respect to each Allowed Claim, without penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date, provided that: (a) the initial payment for the performance of the Future Work obligations will be the obligation of the applicable Settling Bond Issuer that issued a Future Work Bond with respect to the subject Claim and will not be an obligation of the Liquidating Trustee or a VD Plan Debtor's Estate; (b) the Lehman Nominee that takes title to the Plan Project to which the subject Claim relates is to cooperate in connection with the performance of | Impaired<br><br>Entitled to Vote |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| SUMMARY OF CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS | | |
|---|---|---|
| **CLASS AND/OR CLAIM TYPE** | **TREATMENT** | **IMPAIRED STATUS/VOT-ING STATUS** |
| | such Future Work obligations, contingent upon such payment by the applicable Settling Bond Issuer; and (c) as and to the extent provided in the applicable Settling Bond Issuer Agreement: (i) the Lehman Nominee that takes title to the Plan Project to which a subject Claim relates is to take an assignment from the applicable Settling Bond Issuer of such Settling Bond Issuer's Claims against the applicable VD Plan Debtor and third parties; and (ii) in exchange therefor, such Lehman Nominee is to reimburse such Settling Bond Issuer agreed amounts for payments made by such Settling Bond Issuer under the applicable Future Work Bonds. | |
| **Equity Interests** | | |
| Class 12 Interests | To receive nothing. | Not Entitled to Vote |

**TABLE OF CONTENTS**

Page

I PRELIMINARY MATTERS .................................................................................................. 1
   1.1    Introduction .................................................................................................................. 1
   1.2    Definitions and Rules of Contstruction ...................................................................... 2
   1.3    Summary of The Plan Process – Disclosure, Voting, and Treatment of Claims and
       Interests. ....................................................................................................................... 2
      (a)    Disclosure. .................................................................................................... 2
      (b)    Voting. .......................................................................................................... 3
      (c)    Treatment of Claims and Interests Under the Plan. .................................... 4
   1.4    Background to the Joint VD Plan. ................................................................................ 5
   1.5    Purpose of This Document. .......................................................................................... 9
   1.6    Court Approval of this Document ............................................................................. 11
   1.7    Plan Overview ........................................................................................................... 11
   1.8    Summary of the Joint VD Plan. ................................................................................. 12
     1.8.1   Groupings of Debtors ...................................................................................... 12
     1.8.2   Overview of Treatment of Claims and Relevant Agreements. ....................... 13
      (a)    Lehman Plan Funding. ............................................................................... 13
      (b)    Bond-Backed Claims and Bond Issuer Settlement(s). .............................. 13
      (c)    Treatment of Non-Priority Unsecured Claims and Interests. .................... 14
      (d)    Treatment of Secured Claims and Claims with Statutory Priorities. ......... 19
      (e)    Less Favorable Treatment for Certain Claims of Settling Bond Issuer(s) and the
           Lehman VD Lenders. ................................................................................. 22
   1.9    Voting Recommendations. ......................................................................................... 22
II PLAN CONFIRMATION DEADLINES ........................................................................... 23
   2.1    Time and Place of the Confirmation Hearing. ........................................................... 23
   2.2    Deadline for Voting for or Against the Joint VD Plan. ............................................. 23
   2.3    Deadline for Objecting to the Confirmation of the Joint VD Plan. ........................... 23
   2.4    Identity of Person to Contact for More Information Regarding the Joint VD Plan .... 24
   2.5    Disclaimer. ................................................................................................................. 24
III ACCEPTANCE OR REJECTION OF THE JOINT VD PLAN ....................................... 25
   3.1    Who May Object to Confirmation of the Joint VD Plan. .......................................... 25
   3.2    Who May Vote to Accept/Reject the Joint VD Plan. ................................................ 25
   3.3    What Is an Allowed Claim/Interest. .......................................................................... 25
   3.4    What Is an Impaired Class. ........................................................................................ 26
   3.5    Who Is Not Entitled to Vote. ..................................................................................... 27
   3.6    Who Can Vote in More than One Class ..................................................................... 28
   3.7    Votes Necessary for a Class to Accept the Joint VD Plan. ....................................... 28
   3.8    Special Provisions for Listed Holders of Mechanic's Lien Claims. .......................... 28
   3.9    Special Provisions for Allowed General Unsecured Claims in Classes 8 and 9 and
       Allowed Reliance Claims in Classes 6 and 7. ........................................................... 29
     3.9.1   Voting Permitted Regardless of Election to Receive the Lehman Distribution
          Enhancement. .................................................................................................. 29
     3.9.2   "Reliance Claim" Status Must Be Asserted on a Ballot. ................................. 29
   3.10  Receipt of No or Incorrect Ballots. ........................................................................... 29
   3.11  Acceptance of the Plan Contrasted With Confirmation. ............................................ 29
IV BACKGROUND OF THE VD PLAN DEBTORS, THEIR BUSINESS AND THE CASES ... 30
   4.1    The SunCal Companies and the Debtors. ................................................................... 30
   4.2    Financial Information: Assets and Liabilities. ........................................................... 32
     4.2.1   The VD Plan Debtors' Primary Assets. .......................................................... 32
     4.2.2   Values for Plan Projects. ................................................................................. 35
     4.2.3   Remaining Other Assets ................................................................................. 37
      (a)    VD Plan Debtors' Cash. ............................................................................. 37
      (b)    Net Cash Litigation Recoveries ................................................................ 38

| | | |
|---|---|---|
| 4.2.4 | Debt and Capital Structure. | 38 |
| (a) | A Summary of the Lehman VD Lenders' Loans. | 38 |
| (b) | Other Debts against the VD Plan Debtors and Plan Projects. | 40 |
| (c) | Mechanic's Lien Claims. | 42 |
| 4.2.5 | Alleged Litigation Claims And Challenges Against The Lehman Creditors Asserted Currently By The Voluntary Debtors And Formerly By The Trustee. | 43 |
| (a) | Introduction. | 43 |
| (b) | The Equitable Subordination Claims Relating to the Lehman Creditors' Claims. | 44 |
| (c) | The Voluntary Debtors' Assertions regarding Fraudulent Transfer Actions against the Lehman Creditors Arising under Various Cross-Collateralized Lehman Loans. | 46 |
| (d) | Alleged Preference Claims Against the Lehman Creditors. | 48 |
| (e) | Alleged Fraud, Breach of Fiduciary Duty and Other Potential Litigation Claims Against the Lehman Creditors. | 49 |
| (f) | Challenge to Proofs of Claim with Respect to the Claims of the Lehman Creditors. | 50 |
| (g) | The Debtors' Disputes Relating to the Allowed Secured Claims of Fenway Capital Pursuant to Bankruptcy Code Section 506. | 51 |
| 4.3 | Significant Events In The Debtors' Chapter 11 Cases. | 52 |
| 4.3.1 | Voluntary Debtors. | 52 |
| 4.3.2 | Trustee Debtors. | 53 |
| 4.3.3 | The Debtors' Motions for Relief from Stay in the Lehman Commercial Chapter 11 Proceedings. | 53 |
| 4.3.4 | Certain of the Voluntary Debtors' Motion for Surcharge and Use of Cash Collateral. | 54 |
| 4.3.5 | Lehman Commercial's Motions for Relief from the Automatic Stay Against Certain of the Voluntary Debtors' Projects. | 54 |
| 4.3.6 | The Debtors' Filing of the ES Action Against the Lehman Creditors. | 55 |
| 4.3.7 | Certain Debtors' Filing of the Sales Procedures Motion. | 55 |
| (a) | Lehman Commercial's Stay Assertion and the Sales Procedure Motion. | 56 |
| (b) | Danske Bank's Intervention into the Sales Procedures Motion. | 56 |
| (c) | Lehman's Disclosure of the Repurchase Agreement Involving Certain Loans with the Debtors. | 57 |
| (d) | The Modifications to the Sales Procedure Motion. | 57 |
| (e) | The Continuance of the Sales Procedure Motion. | 57 |
| 4.3.8 | The Lehman Administrative Loans | 57 |
| (a) | The Initial Stipulation. | 57 |
| (b) | The Subsequent Stipulations Regarding Use of Lehman Creditors' Cash Collateral and/or Provision by the Lehman Creditors of Secured or Administrative Loans. | 58 |
| (c) | Voluntary Debtors' Surcharging and Financing Motions. | 65 |
| 4.3.9 | The Contractors' Successful Motions for Relief from Stay to Pursue the Bond Claims… | 65 |
| 4.3.10 | The Voluntary Debtors' Motion Pursuant to Bankruptcy Code Section 506(d). | 66 |
| 4.3.11 | The Debtors' Motions to Strike the Claims and Pleadings Arising from the Repurchase Lehman Loans. | 66 |
| 4.3.12 | The Debtors' Denied Preliminary Injunction Motion Against the Holders of Bond Claims. | 66 |
| 4.3.13 | The Debtors' Potential Preferential Transfers. | 67 |
| 4.3.14 | The Voluntary Debtors' Substantive Consolidation Motion | 67 |
| 4.3.15 | Villa San Clemente Turnover Motion against SunCal Marblehead | 68 |
| V LEHMAN VD LENDERS' PLAN | | 68 |
| 5.1 | Treatment of Unclassified Claims. | 68 |
| 5.1.1 | Treatment of Allowed Administrative Claims. | 68 |
| (a) | Treatment and Repayment of the Lehman Administrative Loan(s). | 69 |
| (b) | Administrative Claim Bar Date. | 69 |
| 5.1.2 | Treatment of Priority Tax Claims. | 71 |
| 5.2 | Classification of Claims and Interests | 71 |
| 5.3 | Treatment Of Classified Claims And Interests | 88 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| | | |
|---|---|---|
| 5.3.1 | Treatment of Allowed Secured Real Property Tax Claims (Class 1). | 89 |
| (a) | A Voting and Impairment. | 89 |
| (b) | Liens. | 89 |
| (c) | Distributions and Distribution Dates. | 89 |
| 5.3.2 | Treatment of Lehman Secured Claims (Class 2). | 91 |
| (a) | Voting. | 91 |
| (b) | Liens. | 91 |
| (c) | Claims. | 91 |
| (d) | Disposition of Collateral | 91 |
| 5.3.3 | Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3). | 92 |
| (a) | Voting and Impairment. | 92 |
| (b) | Liens. | 93 |
| (c) | Distributions and Distribution Dates. | 93 |
| (d) | Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent. | 95 |
| 5.3.4 | Treatment of Allowed Other Secured Claims (Class 4). | 95 |
| (a) | Voting and Impairment. | 95 |
| (b) | Liens. | 95 |
| (c) | Distributions and Distribution Dates. | 96 |
| 5.3.5 | Treatment of Allowed Priority Claims (Class 5). | 97 |
| (a) | Voting and Impairment. | 97 |
| (b) | Distributions and Distribution Dates. | 97 |
| 5.3.6 | Treatment of Allowed Reliance Claims Against Group I Debtors (Class 6). | 97 |
| (a) | Voting and Impairment. | 97 |
| (b) | Distributions. | 98 |
| (c) | Distribution Dates. | 99 |
| (d) | Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent. | 100 |
| 5.3.7 | Treatment of Allowed Reliance Claims Against Group II Debtors (Class 7). | 100 |
| (a) | Voting and Impairment. | 100 |
| (b) | Distributions. | 101 |
| (c) | Distributions for Allowed Bond-Backed Performed Work Claims in Class 7. | 102 |
| (d) | Distribution Dates. | 102 |
| (e) | Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent. | 103 |
| 5.3.8 | Treatment of Allowed General Unsecured Claims Against Group I Debtors (Class 8). | 103 |
| (a) | Voting and Impairment. | 104 |
| (b) | Distributions. | 104 |
| (c) | Distributions for Allowed Bond-Backed Performed Work Claims in Class 8. | 105 |
| (d) | Distribution Dates. | 105 |
| (e) | Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent. | 106 |
| 5.3.9 | Treatment of Allowed General Unsecured Claims Against Group II Debtors (Class 9). | 107 |
| (a) | Voting and Impairment. | 107 |
| (b) | Distributions. | 107 |
| (c) | Distributions for Allowed Bond-Backed Performed Work Claims in Class 9. | 108 |
| (d) | Distribution Dates. | 108 |
| (e) | Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent. | 109 |
| 5.3.10 | Treatment of Allowed General Unsecured Claims Against Group III Debtors (Class 10). | 110 |
| (a) | Voting and Impairment. | 110 |
| (b) | Distributions:  Lehman Creditor Distribution Funding. | 110 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(c)      Distribution Dates. ...................................................................... 110
5.3.11  Treatment of Allowed Settling Bond Issuer-Related Future
Work Claims (Class 11). ........................................................................ 111
(a)      Voting and Impairment. ............................................................. 111
(b)      Distributions and Distribution Dates. ....................................... 111
5.3.12  Treatment of Allowed Interests (Class 12). ......................................... 112
5.4      Means of Execution and Implementation of the Joint VD Plan. ..................... 112
5.4.1    Introduction. ......................................................................................... 112
5.4.2    The Liquidating Trustee. ...................................................................... 113
5.4.3    Conditions to Confirmation and Plan Effectiveness. ........................... 113
5.4.4    Plan Funding. ....................................................................................... 114
(a)      Lehman Creditor Distribution Funding. ................................... 115
(b)      Lehman Post-Confirmation Expense Funding. ......................... 116
(c)      Funding with Cash Collateral of a Lehman VD Lender. ........... 116
(d)      Funding with New Cash Payments from a Lehman Related Party. ........ 116
(e)      Plan Reserve. ............................................................................ 117
(f)      Terms and Documentation of Lehman Plan Funding. ............... 117
5.4.5    Post-Confirmation Expenses and Intercompany Loans. ...................... 117
5.4.6    Vesting of Assets in Estates of VD Plan Debtors Managed by Liquidating Trustee. . 119
5.4.7    Disposition and Value of Assets ........................................................... 119
(a)      Disposition and Value of the Plan Projects. ............................. 119
(b)      Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining Other
Assets. ....................................................................................... 121
5.4.8    Bond Claims and the Settling Bond Issuer Agreements. ...................... 122
(a)      Background. .............................................................................. 122
(b)      Settling Bond Issuer Agreement. ............................................. 123
(c)      Bond Modification Discussions. ............................................... 125
5.4.9    Releases for Lehman Released Parties. ................................................. 126
(a)      Creditors' Assignments / Releases for Lehman. ....................... 126
(b)      Settling Bond Issuer Releases for Lehman Released Parties. .... 129
(c)      Plan Release for Lehman. ......................................................... 132
(d)      Dismissal of Pending Litigation. .............................................. 133
(e)      Process for Execution and Delivery of Creditor's Assignments / Releases for
Lehman. ..................................................................................... 134
5.4.10  Entry of Final Decrees. ........................................................................ 135
5.4.11  Dissolution of Voluntary Debtors' Committee and Discharge of
Liquidating Trustee. ............................................................................. 135
5.5      Distributions. ................................................................................................. 136
5.5.1    Distribution Agent. ............................................................................... 136
5.5.2    Distributions. ........................................................................................ 136
(a)      Dates of Distributions. ............................................................. 136
(b)      Limitation on Liability. ............................................................ 136
5.5.3    Old Instruments and Securities. ........................................................... 137
(a)      Surrender and Cancellation of Instruments and Securities. ...... 137
(b)      Cancellation of Liens. .............................................................. 137
5.5.4    *De Minimis* Distributions and Fractional Shares. ............................... 137
5.5.5    Delivery of Distributions. .................................................................... 137
5.5.6    Unclaimed Property. ............................................................................. 138
5.5.7    Disposition of Unclaimed Property. .................................................... 138
5.6      Objections to Claims and Disputed Claims. .................................................. 139
5.6.1    Standing for Objections to Claims. ...................................................... 139
5.6.2    Treatment of Disputed Claims. ............................................................ 139
(a)      No Distribution Pending Allowance. ....................................... 139
(b)      Distribution After Allowance. ................................................. 140
(c)      Reserves for Disputed Claims. ................................................ 140

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.7    Executory Contracts And Unexpired Leases. ................................................. 140
    5.7.1    Identification of Executory Contracts and Unexpired Leases. ................... 140
    5.7.2    Executory Contracts Being Assumed or Assumed and Assigned............... 140
    5.7.3    Cure Rights. .............................................................................................. 141
    5.7.4    Executory Contracts Being Rejected. ....................................................... 142
    5.7.5    Retention of Property Rights by Lehman Nominees or Liquidating Trustee. ............ 142
    5.7.6    Continuing Obligations. ............................................................................ 143
    5.7.7    Bar Date for Rejection Damages. .............................................................. 143
5.8    Effect Of Confirmation Of The Joint VD Plan. ............................................ 144
5.9    Other Plan Provisions. ................................................................................. 145
    5.9.1    Limitation Of Liability.............................................................................. 145
        (a)    No Liability for Solicitation or Participation. .................................. 145
        (b)    Limitation of Liability. ..................................................................... 145
    5.9.2    Conditions To Confirmation And Effectiveness Of The Joint VD Plan..... 146
        (a)    Conditions Precedent to Entry of the Confirmation Order. ............... 146
        (b)    Conditions Precedent to Plan Effectiveness. ................................... 146
    5.9.3    Retention Of Jurisdiction. ......................................................................... 147
    5.9.4    Modification Or Withdrawal Of Plan. ....................................................... 147
        (a)    Modification of Plan. ........................................................................ 147
        (b)    Nonconsensual Confirmation. ........................................................... 147
    5.9.5    Miscellaneous. .......................................................................................... 148
        (a)    Changes in Rates Subject to Regulatory Commission Approval. ....... 148
        (b)    Payment of Statutory Fees. ............................................................... 148
        (c)    Payment Dates. .................................................................................. 148
        (d)    Headings. ........................................................................................... 148
        (e)    Other Documents and Actions. .......................................................... 148
        (f)    Notices. ............................................................................................. 148
        (g)    Governing Law. ................................................................................. 149
        (h)    Binding Effect.................................................................................... 149
        (i)    Successors and Assigns. ..................................................................... 149
        (j)    Severability of Plan Provisions. ........................................................ 150
        (k)    No Waiver. ......................................................................................... 150
        (l)    Inconsistencies. ................................................................................. 150
        (m)    Exemption from Certain Transfer Taxes and Recording Fees............... 150
        (n)    Post-Confirmation Status Report. ..................................................... 151
        (o)    Post-Confirmation Conversion/Dismissal. ....................................... 151
        (p)    Final Decree. ..................................................................................... 151
VI BEST INTERESTS OF CREDITORS TEST................................................................. 152
VII PLAN FEASIBILITY ................................................................................................... 158
VIII RISK FACTORS........................................................................................................... 159
IX CERTAIN UNITED STATES FEDERAL INCOME TAX  CONSEQUENCES OF THE JOINT
    VD PLAN ................................................................................................................... 161
    9.1    Consequences to Holders of Lehman Secured Claims ................................. 162
    9.2    Consequences to Holders of General Unsecured Claims. ............................. 163
    9.3    Consequences to Holders of Settling Bond Issuer-Related Future Work Claims. .......... 164
    9.4    Distributions in Discharge of Accrued but Unpaid Interest........................... 165
    9.5    Character of Gain or Loss ........................................................................... 166
    9.6    Information Reporting and Withholding ....................................................... 166
X ALTERNATIVES, CONCLUSION AND RECOMMENDATION ......................................... 167

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   EXHIBIT LIST

2   EXHIBIT 1 -  Summary of Health and Safety Notices

3   EXHIBIT 2 -  Lehman VD Lenders' Claims

4   EXHIBIT 3 -  Additional Definitions

THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE JOINT VD PLAN.

This Disclosure Statement With Respect to Joint Chapter 11 Plan for Twelve Voluntary Debtors Proposed by the Lehman VD Lenders is being sent to you as an accompaniment to the Joint Chapter 11 Plan for Twelve Voluntary Debtors Proposed By the Lehman VD Lenders, which is being provided to you either in the same envelope as this Disclosure Statement or under separate cover.

**I**

**PRELIMINARY MATTERS**

**1.1    Introduction.**

The Lehman VD Lenders are pleased to be able to propose their Joint VD Plan.  The Plan is a chapter 11 plan for twelve Voluntary Debtors (as marked on the cover page(s) of this Disclosure Statement).

While good faith efforts have been made to make the Plan and Disclosure Statement consistent in all respects, if there are any discrepancies between the Plan and the Disclosure Statement, the Plan controls, and if there are any discrepancies between (a) the summaries provided in the table above or in Disclosure Statement section 1.8 and (b) the other provisions of this Disclosure Statement, the other provisions will control.

It is anticipated that besides the solicitation of votes on the Joint VD Plan by the Lehman VD Lenders for the affected twelve Voluntary Debtors, the Lehman Creditors (*i.e.,* the Lehman VD Lenders, Northlake Holdings and OVC Holdings) simultaneously will be soliciting acceptances for a plan for eight Trustee Debtors (the "Joint TD Plan"), jointly proposed by the Lehman Creditors and the Trustee.  There is no overlap between the two plans for which the Lehman VD Lenders or Lehman Creditors are proponents or co-proponents (the Joint VD Plan and the Joint TD Plan) and votes will be solicited separately as to each such plan from the appropriate creditors. Because there is no overlap, both such plans may be confirmed by the Court.  At the same time, however, the Voluntary Debtors, Acquisitions and/or other Persons simultaneously may be soliciting acceptances for a plan or plans (each an "Alternative Plan") affecting all or some of the same

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtors and Estates as the Joint VD Plan and Joint TD Plan. After voting, if only one plan affecting a Debtor receives sufficient accepting votes and otherwise qualifies for confirmation by law and according to its terms, it will be confirmed by the Bankruptcy Court and become effective as to such Debtor. If both an Alternative Plan and either the Joint VD Plan and/or Joint TD Plan receive sufficient votes and otherwise qualify for confirmation as to a particular Debtor, the Bankruptcy Court "will consider the preferences of creditors and equity security holders in determining which plan to confirm" in accordance with section 1129(c) of the Bankruptcy Code.

### 1.2 Definitions and Rules of Contstruction.

The rules of construction set forth in the Plan will be applicable to the Disclosure Statement. The defined terms set forth in **Exhibit "C"** to the Plan and **Exhibit "3"** to the Disclosure Statement are incorporated into the Disclosure Statement by this reference and will apply to capitalized terms used in the Disclosure Statement, provided that any capitalized term that is not defined in the Plan or Disclosure Statement, but is defined in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

### 1.3 Summary of The Plan Process – Disclosure, Voting, and Treatment of Claims and Interests.

Votes of Creditors are being solicited for the Plan. The Joint VD Plan is essentially a blueprint of how the VD Plan Debtors will be structured or liquidated after or as a result of bankruptcy – whether they will survive, the forms of entities they will be, who will own them, and what distributions will be made or required. Among other things, the Plan designates Classes of Claims and Classes of Interests, identifies Unimpaired and Impaired Classes, sets forth a proposal for the satisfaction of all Claims against, and Interests in, the VD Plan Debtors, and provides adequate means for the implementation of the Joint VD Plan. If the Plan receives sufficient votes and meets certain other criteria described in this Disclosure Statement, it will be confirmed by the Bankruptcy Court.

#### (a) Disclosure.

The Disclosure Statement is intended to provide Creditors with information sufficient

1   to enable Creditors to vote on the Plan [and has been approved by the Bankruptcy Court as

2   containing sufficient information for that purpose][2].  The Disclosure Statement includes a summary

3   of the VD Plan Debtors' assets and liabilities, a summary of what Holders of Allowed Claims and

4   Interests will receive under the Joint VD Plan, references to certain alternatives to the Plan, and a

5   summary of the procedures and voting requirements necessary for confirmation of the Plan.  Each

6   Creditor should thoroughly review both the Joint VD Plan and Joint VD Disclosure Statement before

7   deciding whether the Creditor will accept or reject the Plan.  No solicitation materials, other than the

8   Disclosure Statement and related materials transmitted therewith and approved for solicitation

9   purposes by the Bankruptcy Court, have been authorized for use in soliciting acceptances or

10  rejections of the Plan.

11              **(b)      Voting.**

12              The Lehman VD Lenders recommend approval of the Joint VD Plan. Holders of

13  Claims and Interests entitled to vote on the Plan will receive with the Plan a Ballot, for voting on the

14  Plan.

15                      (i)      Voting - General Unsecured Claims or Reliance Claims

16  Against Any Group I Debtor or Group II Debtor.

17              Ballots for each Holder of a General Unsecured Claim or Reliance Claim against any

18  Group I Debtor or Group II Debtor also will afford the Holder the opportunity to elect that, if its

19  Claim is Allowed, it would receive the Lehman Distribution Enhancement.  *By such election and*

20  *execution and delivery of the Ballot, as the Ballot reflects, the Holder also is executing and*

21  *delivering the Creditor's Assignment / Release for Lehman set forth in the Plan for the benefit of the*

22  *Lehman Released Parties.*

23                      (ii)      Voting / Election - Alleged Mechanic's Lien Claims Against

24  Any Group I Debtor or Group II Debtor.

25              For each Holder identified in advance as having alleged to hold a Mechanic's Lien

26  Claim against any Group I Debtor or Group II Debtor, the Ballot will afford an opportunity to waive

27  any contention that the Holder has a Secured Claim senior to the Secured Claim of the applicable

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2] THIS STATEMENT IS NOT YET TRUE. Brackets to be removed after Disclosure Statement approved.

Lehman VD Lender(s) on the applicable Plan Project and to assert, instead, that its Claim is a

General Unsecured Claim or Reliance Claim, thereby affording the Creditor the opportunity to elect

to receive the Lehman Distribution Enhancement if its Claim is Allowed.

### (c) Treatment of Claims and Interests Under the Plan.

Upon confirmation by the Bankruptcy Court of the Joint VD Plan, the Lehman VD

Lenders will pay substantial sums for the benefit of other Creditors through the Lehman Plan

Funding to enable Distributions as described below and the VD Plan Debtors will convey ownership

of the Plan Projects to the designees of the Lehman VD Lenders (the Lehman Nominees) in

satisfaction of the Lehman VD Lenders' Secured Claims (Class 2) or, in the case of the Plan Projects

of the Group III Debtors, in exchange for the consideration to be provided by the Lehman VD

Lenders, as applicable.

As a result of the Lehman Plan Funding, under the Plan, Creditors with Allowed

Claims in Classes 6, 7, 8 and 9, which Creditors execute the Creditor's Assignment / Release for

Lehman, will receive enhanced recoveries (a) of up to 5% of each Allowed General Unsecured

Claim in Class 8 and Class 9, (b) of up to 25% of each Allowed Reliance Claim in Class 6, and (c) of

up to 10% of each Allowed Reliance Claim in Class 7, provided that the exact percentage(s) of

enhanced recovery will be subject to the Plan. Holders of Allowed Reliance Claims and Allowed

General Unsecured Claims also share in Residual Cash, if any, such as from any Net Litigation

Recoveries. Reliance Claims, as more fully defined below, are those Claims Filed by the Primary

Claims Bar Date or listed on the Filed Schedules by June 1, 2010 as Scheduled Claims that were

incurred to non-insiders who provided new value to a TD Plan Debtor after August 1, 2007.

For priority and secured claims, under the Plan, Holders of Allowed Secured, Priority,

Priority Tax and Administrative Claims are paid in full through the Plan; Holders of Interests receive

nothing. Additionally, the Plan treats separately certain Claims arising in connection with Future

Work Bonds. For Creditors (*e.g.*, municipalities) holding Settling Bond Issuer-Backed Future Work

Claims in Class 11, the Settling Bond Issuer has recommitted to perform under its Project Bonds

with respect to such Claims, if Allowed, and the related Future Work obligations, but without

penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Petition Date.  The Lehman Nominee that takes title to the Plan Project to which the Settling Bond

Issuer-Backed Future Work Claim relates is to cooperate in connection with the performance of such

Future Work obligations, is to take an assignment from the Settling Bond Issuer of such Settling

Bond Issuer's Claims against the applicable VD Plan Debtors (although no Distribution is made to

such Lehman Nominee therefor under the Plan) and against third parties, and is to reimburse such

Settling Bond Issuer agreed amounts for the payments made by such Settling Bond Issuer under the

applicable Future Work Bonds, creating such Settling Bond Issuer's Allowed Class 11 Claims.

### 1.4    Background to the Joint VD Plan.

In the Bankruptcy Court, under case number 8:08-bk-17206-ES, the chapter 11

bankruptcy cases (the "Cases") of twenty-six affiliated debtors (the "Debtors") are being jointly

administered.  The Debtors include seventeen debtors who continue to manage, and remain in

possession of, their assets as debtors and debtors in possession (the "Voluntary Debtors") and nine

debtors for whom Steven M. Speier was duly appointed as the chapter 11 trustee (the "Trustee

Debtors").

The Plan is a chapter 11 plan for the following twelve Voluntary Debtors (each a

"VD Plan Debtor"):  Palmdale Hills, SunCal I, Acton Estates, SunCal Beaumont, SunCal Emerald,

SunCal Johannson, SunCal Bickford, SunCal Summit Valley, Seven Brothers, Kirby Estates, SCC

Communities, and Tesoro.   The proponents of the Plan are the Lehman VD Lenders: (a) Lehman

ALI, Inc. and (b) Lehman Commercial, each in its capacity as a lender in its own right and/or as

agent for themselves, with respect to the applicable Lehman Loans.  The Lehman VD Lenders are

referred to in the Plan as both the "Lehman Proponents," with reference to their role as proponents of

the Plan, and as the Lehman VD Lenders, with reference to their other capacities.

Each of the Group I Debtors and Group II Debtors are insolvent.  Plan Projects are

the primary Assets of the Estates of the VD Plan Debtors other than SunCal I, which owns Interests

in other VD Plan Debtors that own Plan Projects. The Lehman VD Lenders hold Claims against all

of the Group I Debtors and against Group II Debtors Acton, Tesoro and SCC Communities,

aggregating to approximately $711 million, which Claims are secured by deeds of trust on the Plan

Projects of such Voluntary Debtors, and secured by any and all Cash Collateral and certain other

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Assets of such Voluntary Debtors.  Approximately $343 million of such amount also is owed by

SunCal Summit Valley, secured by a pledge of its Interests in Group III Debtors Kirby Estates and

Seven Brothers, and owed by SunCal I, secured by, *inter alia,* a pledge of its Interests in Group III

Debtors SunCal Beaumont and SunCal Johannson.  The Lehman VD Lenders' collateral, including

the Plan Projects of the Group I Debtors and Group II Debtors and the equity interests in the Group

III Debtors, collectively, is worth substantially less than the total amount of the Lehman Secured

Claims.

Moreover, the VD Plan Debtors are generating no or virtually no current revenue.

Yet, these Cases have been pending for over 20 months and have been highly litigious and, thus,

costly to the VD Plan Debtors' Estates and the Lehman Creditors in terms of out of pocket expenses,

time and delay.  Prepetition, Lehman Related Parties provided debt and equity funding to the

Debtors and during the Cases, challenges have been asserted to the Claims of the Lehman Creditors

and claims asserted to subordinate or set aside certain of their Claims or Liens.  As discussed herein,

the Lehman Creditors believe that the pending challenges to their Claims and claims against them

are without merit.

Previously, during the Cases, prior to the Filing of any plans for which a solicitation

process is underway, competing plans and accompanying disclosure statements were Filed for all of

the Debtors.  On the one hand, the most recent version of a plan and disclosure statement (third

amended) Filed for all Debtors by the Voluntary Debtors and Acquisitions (the indirect parent

company of the Debtors managed by Bruce Elieff) were Filed September 9, 2009 (the "Prior Elieff

Plan" and "Prior Elieff Disclosure Statement," respectively). The Prior Elieff Plan appeared to the

Lehman Creditors to offer no meaningful recovery to general unsecured Creditors of most Debtors

unless the Trustee and Voluntary Debtors or their successors were to obtain a successful result in the

ES Action (and in particular the cornerstone of that proceeding, the hotly disputed equitable

subordination claims).

Whereas the Joint VD Plan offers Holders of Reliance Claims up to an approximately

10% recovery in the case of Allowed Reliance Claims against Group II Debtors and an

approximately 25% recovery in the case of Allowed Reliance Claims against Group I Debtors (as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  provided more fully below), the Prior Elieff Plan purported to include an offer of the Voluntary

2  Debtors and Acquisitions to purchase Claims entitled to the benefits of a judgment for equitable

3  subordination at ten cents on the dollar.  Although in respect to Reliance Claims against Group II

4  Debtors, the proposed payouts under the Joint VD Plan and the Prior Elieff Plan are similar (while

5  the payout to Reliance Claims against Group I Debtors is significantly higher under the Joint VD

6  Plan), the offer of the Voluntary Debtors and Acquisitions appeared in all events to the Lehman

7  Creditors to be illusory and/or unfunded.  Moreover, for this "lottery ticket" litigation to have

8  benefitted a broad group of the Debtors' Creditors, besides the plaintiffs having to first prove

9  inequitable conduct by the Lehman Creditors, it appeared to the Lehman Creditors that Acquisitions

10  and the Voluntary Debtors would have to be successful also in arguing that the Estates of the various

11  Debtors should be merged (*e.g.*, substantively consolidated) so that values payable, absent

12  subordination, to the Lehman Creditors in their capacity as Creditors of one particular Debtor could

13  be used instead to pay Creditors of another Debtor.  This "substantive consolidation" required the

14  Trustee and Voluntary Debtors to meet high evidentiary hurdles before the Bankruptcy Court that

15  the Lehman Creditors believed they appeared unlikely to meet.

16       In fact, the Lehman Related Parties believed that the Prior Elieff Plan and its "lottery

17  ticket" litigation strategy were just a smokescreen for a course of action by Acquisitions and Elieff

18  designed primarily to provide Elieff the personal benefit of reducing or eliminating his personal

19  liability with respect to his guarantee to Bond Issuers.  The Prior Elieff Plan was centered upon a

20  sale (that Acquisitions and Elieff arranged and proposed) of certain Projects to D.E. Shaw or another

21  bidder at an under-market price, but on terms that required all of the likely liability for the Elieff

22  guaranteed debt to Bond Issuers to be assumed and satisfied by the buyer, whether or not any other

23  Holder of an unsecured, non-priority Claim got paid anything at all.  (According to the Voluntary

24  Debtors' Third Amended Disclosure Statement - Exhibit 6, notes – obligations under bonds of $157

25  million were to be paid or resolved by the proposed sale to D.E. Shaw.)  In any event, even if the

26  Voluntary Debtors were able to overcome the legal obstacles they faced in confirming the Prior

27  Elieff Plan, the Lehman Creditors view the litigation attendant to the cornerstones of the Prior Elieff

28  Plan as taking years to resolve – thus depriving the Debtors' Creditors from access to any payment

on account of their Allowed Claims until resolution of such litigation and, all the while, forcing the Creditors to bear the risk of the inevitable protracted litigation.

The most recent version of the Lehman Creditors' prior competing plan (the "Prior Lehman Plan") and disclosure statement for all Debtors (the Voluntary Debtors and the Trustee Debtors) (second amended) were Filed October 13, 2009.  Under the Prior Lehman Plan, the Lehman Creditors agreed to fund $10 million on the Prior Lehman Plan's Effective Date, to provide plan implementation funding that included up to $5 million of new money plus the use of over $18 million of existing Cash Collateral, to provide limited funding and litigation concessions to permit all litigation by the Trustee and Voluntary Debtors to continue (including against the Lehman Creditors) and to offer certain Creditors that it believed may hold Allowed Claims that arguably would benefit from any judgment with respect to the ES Action as to the equitable subordination claims therein a guaranteed payment in exchange for a release.  Based on then available information and, thus, assuming a large pool of eligible claims, the guaranteed payment for such likely beneficiaries of the equitable subordination claims was estimated to approximate 6.6% on their Claims.  The current offer presented in the Joint VD Plan to Holders of Allowed Reliance Claims and Allowed General Unsecured Claims against the VD Plan Debtors is a substantial improvement over the Prior Lehman Plan for such Creditors (assuming such Creditors provide certain releases pursuant to the Joint VD Plan).

Votes were not solicited for the Prior Lehman Plan and Prior Elieff Plan.  The Filing of a plan and disclosure statement is just part of the process leading to plan confirmation.  Before votes could be solicited, the disclosure statement with respect to each plan had to have been approved by the court.  The Lehman Creditors, Voluntary Debtors and Acquisition abandoned efforts to move forward the process for obtaining confirmation of the Prior Lehman Plan or the Prior Elieff Plan and no disclosure statements with respect thereto were approved (and no votes solicited).

Prior to the Filing of the Joint VD Plan, Joint VD Disclosure Statement, Joint TD Plan and Joint TD Disclosure Statement, the Bankruptcy Court and Voluntary Debtors were made aware of the intention of the Lehman Creditors and Trustee to file their joint plan and joint disclosure statement and utilize a date before the Bankruptcy Court for the Bankruptcy Court to

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

consider the adequacy of the disclosure statement.  To give sufficient time for the Voluntary Debtors

to also File a plan and disclosure statement or amend their prior plan and disclosure statement and to

enable the Voluntary Debtors to also have a disclosure statement considered for approval at the same

time, the date for such disclosure statement hearing was postponed to November 5, 2010.  The

November 5, 2010 date meant that September 30, 2010 would be the deadline for the Filing of any

disclosure statements or amended disclosure statement for consideration on November 5, 2010.

On September 21, 2010, the Voluntary Debtors Filed a motion with the Bankruptcy

Court seeking, *inter alia*, to "stay[] all pending . . .  plan and disclosure statement proceedings . . .

filed by . . . the 'Lehman Entities.'" Although a thorough review of the pleadings Filed with or as

part of the Voluntary Debtors' motion are not complete, the pleadings include a draft disclosure

statement for a Plan by the Voluntary Debtors and Acquisitions, which appears to propose a plan

similar in many respects to that proposed last year by the Voluntary Debtors and Acquisitions – *e.g.*,

a continuation of all litigation against the Lehman Creditors, a sale of the Projects (now at an

auction, with no buyer currently identified), and an offer to buy claims that would be benefited by

the equitable subordination litigation (with the percentage purchase price not disclosed in the draft).

As of September 29, 2010, the hearing on the Voluntary Debtors' motion was set for October 29,

2010.

The Trustee and Lehman Creditors determined to proceed on September 30, 2010 to

File the Joint TD Plan and Joint TD Disclosure Statement and certain of the Lehman Creditors (the

Lehman VD Lenders) determined to proceed on September 30, 2010 to File the Joint VD Plan and

Joint VD Disclosure Statement.

The Joint VD Plan for the twelve VD Plan Debtors will not affect the status of the

other Debtors in their Cases or preclude plans being promulgated for those other Debtors or preclude

the Filing of competing plans.  As to each other such Debtor, its Case will remain pending until

either a plan for such Debtor is confirmed or its Case is dismissed or converted to a liquidating case

under chapter 7 of the Bankruptcy Code.

### 1.5    Purpose of This Document.

The Disclosure Statement is submitted in accordance with 11 U.S.C. § 1125 and

contains information regarding the Joint VD Plan, a copy of which accompanies this Disclosure Statement. The Disclosure Statement is being distributed to you for the purpose of enabling you to make an informed judgment about the Joint VD Plan. The Joint VD Disclosure Statement describes the Joint VD Plan and contains information concerning, among other matters: (1) the history, business, results of operations, assets and liabilities of the Debtors, (2) the business plan (*e.g.*, to liquidate) that is to be implemented following confirmation of the Joint VD Plan, (3) risk factors to be considered in voting on the Joint VD Plan, and (4) certain tax considerations of the Joint VD Plan.

The Lehman VD Lenders strongly urge you to review carefully the contents of this Joint VD Disclosure Statement and the Joint VD Plan (including the exhibits to each) before making a decision to accept or reject the Joint VD Plan. Particular attention should be paid to the provisions affecting or impairing your rights as a Holder of a Claim or Interest.

This Disclosure Statement cannot tell you everything about your rights. You should consider consulting your own lawyer to obtain more specific advice on how the Joint VD Plan will affect you and your best course of action.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

➢ **WHO CAN VOTE OR OBJECT TO THE JOINT VD PLAN;**

➢ **HOW YOUR CLAIM OR INTEREST IS TREATED;**

➢ **HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE ON ACCOUNT OF YOUR CLAIM OR INTEREST IN LIQUIDATION;**

➢ **A BRIEF HISTORY OF THE DEBTORS AND SIGNIFICANT EVENTS DURING THEIR CHAPTER 11 BANKRUPTCY PROCEEDINGS;**

➢ **WHAT FACTORS THE BANKRUPTCY COURT WILL CONSIDER TO DECIDE WHETHER OR NOT TO CONFIRM THE JOINT VD PLAN;**

➢ **WHAT IS THE EFFECT OF CONFIRMATION; AND**

➢ **WHETHER THE JOINT VD PLAN IS FEASIBLE.**

### 1.6    Court Approval of this Document.

==The Bankruptcy Court approved the Joint VD Disclosure Statement as containing sufficient information to enable a hypothetical reasonable investor, typical of Holders of Claims or Interests receiving the Joint VD Disclosure Statement, to make an informed judgment about the Joint VD Plan.[3]== This approval enabled the Lehman VD Lenders to send you this Disclosure Statement and solicit your acceptance of the Joint VD Plan. The Bankruptcy Court has not, however, ruled on the Joint VD Plan itself, nor conducted a detailed investigation into the contents of this Disclosure Statement.

### 1.7    Plan Overview.

The Joint VD Plan is designed to enable a reasonable resolution of the financial distress of the VD Plan Debtors and of the delay and cost attendant to the continuation of the VD Plan Debtors' Cases absent confirmation of a plan. In all, under the Plan, the Lehman VD Lenders believe that Creditors will receive as much or more than they would if the VD Plan Debtors' Cases were converted to cases under chapter 7 of the Bankruptcy Code. As importantly, however, the Plan Proponents believe that, under the Plan, Creditors will receive payment much sooner than if no consensual plan with the Lehman VD Lenders occurred.

Because the Lehman VD Lenders appreciate that, for the foreseeable future, the VD Plan Debtors have and will have no ability to pay the full amount of the debt owed to the Lehman VD Lenders giving rise to the Lehman Secured Claims or, without additional funding, to develop the Plan Projects, the Lehman VD Lenders want ownership of all Plan Projects. Thus, upon confirmation of the Plan, as more fully set forth below, among other things, the VD Plan Debtors will convey ownership of the Plan Projects to the designees of the Lehman VD Lenders (the Lehman Nominees). In exchange, the Lehman VD Lenders will pay substantial sums for the benefit of other Creditors through the Lehman Plan Funding, as and to the extent provided under the Plan.

The Joint VD Plan with respect to which this Disclosure Statement is being Filed requires consummation of a settlement between the Lehman VD Lenders and the Bond Issuers. Bond Claims are complicated. The Bond Issuers issued Payment Bonds and Future Work Bonds

---

[3] **THIS STATEMENT IS NOT YET TRUE.**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

bonding certain VD Plan Debtors' obligations to certain Creditors in exchange for premiums and reimbursement obligations from the affected VD Plan Debtors. The Creditors holding Claims benefited by the Bonds (Bond-Backed Claims) include, by example, subcontractors who may be beneficiaries of Payment Bonds and municipalities who may be beneficiaries of Future Work Bonds. For Bond Backed Claims that are Allowed Sr. Secured Mechanic's Lien Claims (Class 3), Allowed Reliance Claims (Class 6 or Class 7) or Allowed General Unsecured Claims (Class 8, 9 or 10), under the Plan, the *Bond-Backed Claims get treated under the Plan the same as Class 3, Class 6, Class 7, Class 8, Class 9 and Class 10 Claims, as applicable, but the Holders of Bond-Backed Claims retain any and all of their rights against the applicable Bond Issuer*. Still, as noted above, *for Holders of Class 11 Settling Bond Issuer-Backed Future Work Claims, the Lehman VD Lenders are obtaining a recommitment from the Settling Bond Issuers to perform under their Future Work Bonds with respect to such Class 11 Claims*.

The Lehman VD Lenders are pleased to be able to present the Joint VD Plan.

### 1.8 Summary of the Joint VD Plan.

The summary of the Joint VD Plan that follows in this Section 1.8 is not intended to substitute for the more specific terms set forth in the Joint VD Plan. If there are any discrepancies between the summary provided in this Section 1.8 and the Joint VD Plan, the provisions of the Joint VD Plan will control. Additionally, the Cases of the VD Plan Debtors have been jointly administered, but not substantively consolidated. Accordingly, the Joint VD Plan provides separate treatment for Holders of Claims and Interests against each VD Plan Debtor. Under the Plan, Holders of Interests receive nothing. The following is a general outline of the Joint VD Plan.

#### 1.8.1 Groupings of Debtors.

The Joint VD Plan divides the VD Plan Debtors into three groups:

(a) **Group I Debtors:**

The Group I Debtors consist of:

(i)     Palmdale Hills Property, LLC;

(ii)     SunCal Bickford Ranch, LLC; and

(iii)     SunCal Emerald Meadows, LLC;

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

        **(b)**     **Group II Debtors:**

The Group II Debtors consist of:

                (i)     Acton Estates, LLC;

                (ii)    SCC Communities, LLC;

                (iii)   SunCal Communities I, LLC;

                (iv)    SunCal Summit Valley, LLC; and

                (v)     Tesoro SF, LLC;

        **(c)**     **Group III Debtors:**

The Group III Debtors consist of:

                (i)     Kirby Estates, LLC;

                (ii)    Seven Brothers, LLC;

                (iii)   SunCal Beaumont Heights, LLC; and

                (iv)    SunCal Johannson Ranch, LLC.

**1.8.2    Overview of Treatment of Claims and Relevant Agreements.**

        Essential features of the Plan are summarized in this section, subject to the Plan itself. Because the Cases of the VD Plan Debtors have been jointly administered, but not substantively consolidated, the Plan provides separate treatment for Holders of Claims and Interests against each VD Plan Debtor.

        **(a)**     **Lehman Plan Funding.**

        Under the Plan, the Lehman VD Lenders, for the benefit of other Creditors, will provide the Lehman Plan Funding consisting of the Lehman Creditor Distribution Funding for direct payment to Creditors holding Allowed Claims and the Lehman Post-Confirmation Expense Funding for payment of Post-Confirmation Expenses.

        **(b)**     **Bond-Backed Claims and Bond Issuer Settlement(s).**

        Many of the Claims against the VD Plan Debtors are secured by Project Bonds (the "Bond-Backed Claims") issued by Arch Insurance Company ("Arch") or Bond Safeguard Insurance Company or its Affiliate, Lexon Insurance Company (collectively, "Bond Safeguard" and together with Arch, the "Bond Issuers"). The Bond Issuers have made and may continue to make payments

to certain Creditors who are beneficiaries of Project Bonds based on the Bond Issuer's own
obligations, which payments and treatment from the Bond Issuers may be different than, and may or
may not be in addition to, payments provided under the Plan. Nonetheless, to facilitate the Plan,
unless waived by the Lehman VD Lenders in their sole and absolute discretion, prior to the Effective
Date, certain Lehman Related Parties must enter into a Settling Bond Issuer Agreement with each
Bond Issuer. In the event the Lehman VD Lenders do waive the requirement for entry into such a
settlement with either or both Bond Issuers and waive attendant rights to withdraw the Plan, the
treatment of Claims in the Plan accounts for the possibility of settlements or of no settlements with
one or both of the Bond Issuers. For each Settling Bond Issuer Agreement entered into as required
under the Plan, as more fully set forth in the Plan, pursuant thereto and subject to the specific terms
thereof: (a) the applicable Settling Bond Issuer will agree to perform under its Future Work Bonds,
(b) to the extent that there is or may be an Allowed Claim for the obligation to perform the relevant
Future Work covered by a Future Work Bond of the applicable Settling Bond Issuer, the Lehman
Nominee taking title to an applicable Project will cooperate in the performance of such Future Work
and will agree to reimburse the Settling Bond Issuer for certain amounts with respect to payments
made by the Settling Bond Issuer under Future Work Bonds and indemnify the Settling Bond Issuer
for certain amounts with respect to certain costs incurred therewith, (c) the Settling Bond Issuer will
waive payment under the Plan with respect to certain Claims and (d) the Settling Bond Issuer will
assign to a Lehman Related Party(ies) its Claims against the VD Plan Debtors and its related claims
against any Bond Obligors.

(c)     **Treatment of Non-Priority Unsecured Claims and Interests.**

(i)     Allowed Reliance Claims are certain Allowed Claims for "new value," arising
after August 1, 2007 and either Filed by the Primary Claims Bar Date or listed on the Filed
Schedules by June 1, 2010 as Scheduled Claims. Allowed Reliance Claims against the Group I
Debtors (Palmdale Hills, SunCal Bickford and SunCal Emerald) are classified in Class 6, and
Allowed Reliance Claims against the Group II Debtors (Acton Estates, SCC Communities, SunCal I,
SunCal Summit Valley, and Tesoro) are classified in Class 7. Both Classes 6 and 7 are Impaired
under the Plan.

Under the Plan, each Holder of an <u>Allowed Class 6 Reliance Claim against a Group I Debtor</u> receives the following:

- o An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Reliance Claim in Class 6 – part of the Lehman Creditor Distribution Funding;

- o An <u>additional</u> Cash Distribution of up to 24% of its Allowed Reliance Claim, if the Holder of the Class 6 Claim completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties – also part of the Lehman Creditor Distribution Funding, provided further that the exact percentage of enhanced recovery will be subject to the Plan; and

- o A share of any Residual Cash of the applicable VD Plan Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable VD Plan Debtor that are any of the following: (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 6, and (iii) Allowed General Unsecured Claims in Class 8.

Under the Plan, each Holder of an <u>Allowed Class 7 Reliance Claim against a Group II Debtor</u> receives the following:

- o An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Reliance Claim in Class 7 – part of the Lehman Creditor Distribution Funding;

- o An <u>additional</u> Cash Distribution of up to 9% of its Allowed Reliance Claim, if the Holder of the Class 7 Claim completes its Ballot so as to deliver, or otherwise executes and delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties – also part of the Lehman Creditor Distribution Funding, provided further that the exact percentage of enhanced recovery will be subject to the Plan; and

- o A share of any Residual Cash of the applicable VD Plan Debtor to be shared Pro Rata among other Holders of Allowed Claims against the applicable VD Plan Debtor that are any of the following: (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3)

that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed

Reliance Claims in Class 7, and (iii) Allowed General Unsecured Claims in Class 9.

Payments from the Lehman Creditor Distribution Funding of Allowed Reliance

Claims will be made after the Effective Date within a short time after a Claim is determined to be

Allowed (*i.e.*, generally within thirty (30) days following such Claim's Allowance Determination

Date). Payments of Residual Cash, if any, would occur if and as the Liquidating Trustee determines

it is available.

(ii) Class 8 Allowed General Unsecured Claims against Group I Debtors, Class 9

Allowed General Unsecured Claims against Group II Debtors and Class 10 Allowed General

Unsecured Claims against Group III Debtors consist of Allowed Claims that have no priority or

security and do not fit within the definitions of Reliance Claims or Settling Bond Issuer-Related

Future Work Claims (Class 11). Claims in Classes 8, 9 and 10 are Impaired.

Under the Plan, each Holder of an Allowed Class 8 General Unsecured Claim against

a Group I Debtor or Allowed Class 9 General Unsecured Claim against a Group II Debtor receives

the following:

- o An unconditional, guaranteed Cash Distribution equal to 1% of its Allowed Claim –
  part of the Lehman Creditor Distribution Funding;

- o An additional Cash Distribution of up to 4% of its Allowed General Unsecured
  Claim, if the Holder completes its Ballot so as to deliver, or otherwise executes and
  delivers, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman
  Released Parties – also part of the Lehman Creditor Distribution Funding, provided
  further that the exact percentage of enhanced recovery will be subject to the Plan; and

- o A share of any Residual Cash of the applicable VD Plan Debtor to be shared Pro Rata
  among other Holders of Allowed Claims against the applicable VD Plan Debtor that
  are any of the following (as applicable): (i) Allowed Sr. Secured Mechanic's Lien
  Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii)

1  Allowed Reliance Claims in Classes 6 or 7, as applicable, and (iii) other Allowed

2  General Unsecured Claims in Classes 8 or 9, as applicable.

3  Under the Plan, each Holder of an Allowed Class 10 General Unsecured Claim against a Group III

4  Debtor receives a Distribution in Cash equal to the lesser of: (a) 100% of the Allowed Amount of

5  such Claim, plus post-petition interest at the Federal Judgment Rate applicable on the applicable

6  Petition Date; and (b) a Pro Rata distribution of: (i) any positive sum resulting from subtracting the

7  Allowed Senior Claims against the applicable VD Plan Debtor from the Project Value for the

8  applicable VD Plan Debtor's Plan Project; and (ii) Residual Cash of the Estate of the applicable VD

9  Plan Debtor; provided that such Pro Rata Distribution shall not be less than 1% of each Allowed

10  Claim.

11  Payments from the Lehman Creditor Distribution Funding on account of Allowed

12  General Unsecured Claims are to occur after the Effective Date within a short time after a Claim is

13  determined to be Allowed (*i.e.*, generally within thirty (30) days following such Claim's Allowance

14  Determination Date). Payments of Residual Cash, if any, would occur if and as the Liquidating

15  Trustee determines it is available.

16  (iii)    Class 11 Settling Bond Issuer-Related Claims include Settling Bond Issuer-

17  Backed Claims and Settling Bond Issuer-Owned Claims.  If a Bond Issuer and the applicable

18  Lehman Related Party(ies) have entered into a Settling Bond Issuer Agreement, the Settling Bond

19  Issuer-Backed Claims will be certain Claims against VD Plan Debtors that are Bond-Backed Claims

20  secured by Project Bonds issued by such Settling Bond Issuer.  Settling Bond Issuer-Owned Claims

21  will be those certain Claims against the VD Plan Debtors owned and held by such Settling Bond

22  Issuer.  Settling Bond Issuer-Owned Claims will receive treatment under the Plan consistent with the

23  applicable Settling Bond Issuer Agreement.  Under the Plan, Allowed Settling Bond Issuer-Backed

24  Claims receive the following treatment:

25  o  *Settling Bond Issuer-Backed Claims which are Sr. Secured Mechanic's Lien Claims*

26  *(Class 3):*  Each of these Secured Claims of Bond-Backed Claimants, if and once

27  Allowed, would receive payment from the Lehman Creditor Distribution Funding of

28  the full amount of the Claim, exclusive of any penalty or similar amounts, payable as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

a lump sum on the Effective Date if the original maturity date has passed or,

otherwise, payable by curing any defaults and paying any fees on the Effective Date

and making further payments as required under the applicable contract or statute

under the applicable contract or statute after reinstatement (Section 1124(2)

Unimpairment).

o  *Settling Bond Issuer-Backed Claims which are Reliance Claims or General*

   *Unsecured Claims (Classes 6, 7, 8, 9, and 10):*  If Allowed, each such Claim of a

   Bond-Backed Claimant is to receive the applicable treatment in Class 6, Class 7,

   Class 8, Class 9 or Class 10, depending on whether such Claims fits the definition of

   a Reliance Claim or General Unsecured Claim and depending on which VD Plan

   Debtor the Claim is against.  The Bond Issuer also may have separate obligations to

   the Bond-Backed Claimants in respect of these Claims such that these Claims may be

   paid or settled by the Bond Issuer (and possibly acquired by the Bond Issuer as part of

   any such payment or settlement).

o  *Settling Bond Issuer-Backed Future Work Claims (Class 11):*  The Settling Bond

   Issuer is to perform and/or pay in full for the performance of the Future Work

   obligations with respect to each Settling Bond Issuer-Backed Future Work Claim, if

   Allowed, without penalties, and with the obligation reinstated as to any maturity

   applicable prior to the applicable Petition Date. The Lehman Nominee that takes title

   to the Plan Project to which the Claim relates will (a) be required to cooperate in

   connection with the performance of such Future Work obligations, (b) take an

   assignment from the Settling Bond Issuer of such Settling Bond Issuer's Claims

   against the applicable VD Plan Debtors and Bond Obligors, and (c) reimburse such

   Settling Bond Issuer agreed amounts for payments made by such Settling Bond Issuer

   under the applicable Future Work Bonds.  Nonetheless, the applicable Creditor

   holding a Settling Bond Issuer-Backed Future Work Claim may agree to forego

   performance or payment for certain Future Work directly or through release of the

   applicable Future Work Bond.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(iv)    Class 12 Interests are the ownership interests in each of the VD Plan Debtors.
Class 12 is Impaired.  Under the Plan, Holders of the Class 12 Interests get nothing and retain
nothing.

(d)    **Treatment of Secured Claims and Claims with Statutory
Priorities.**

(i)    For Class 1 Allowed Secured Real Property Tax Claims, at the election of the
Lehman VD Lenders, each Holder either (1) would receive a lump sum payment from the Lehman
Creditor Distribution Funding of the full amount of its Claim on the Effective Date, exclusive of any
penalty or similar amounts (Section 1124(2) Unimpairment), (2) would receive 100% of its Allowed
Claim through equal Cash payments, with interest, payable every third month following the
Effective Date until the fifth year anniversary of the applicable VD Plan Debtor's Petition Date, or
(3) would have its legal, equitable and contractual rights and remedies unaltered, with the Holder
free to pursue its remedies, if any, against the underlying collateral pursuant to nonbankruptcy law
(*i.e.*, Simple Unimpairment).

(ii)    For Class 2 Allowed Lehman Secured Claims, generally, the Plan provides for
the VD Plan Debtors to convey, free and clear of Encumbrances (other than Lehman Claim Liens
and other Permitted Liens), their respective Plan Projects to the Lehman VD Lenders or Lehman
Nominees (provided, however, that the Lehman VD Lenders would have to elect that such
conveyance occur with respect to any Seller Financing Encumbered Parcels).

(iii)    Class 3 consists of Allowed Sr. Secured Mechanic's Lien Claims.

o    Alleged Holders of Class 3 Claims against Group I Debtors or Group II Debtors are
offered under the Plan an opportunity to elect to have their Claims treated as General
Unsecured Claims or Reliance Claims:

▪    The Lehman VD Lenders believe that some Mechanic's Lien Claims are
General Unsecured Claims or Reliance Claims (to be treated in Class 6, 7, 8, 9
or 10, if Allowed).  For Group I Debtors and Group II Debtors (other than
SunCal Summit Valley), the Lehman VD Lenders hold Lehman Secured
Claims against the relevant Plan Projects and believe that the Liens supporting
such Lehman Secured Claims are senior Encumbrances to the Mechanic's

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Liens Claims. Further, because, generally, the Plan Projects subject to Lehman

Secured Claims are worth less than the aggregate outstanding amount of the

Lehman Loans that are secured by the Lehman Claim Liens, there is no value

in the Plan Projects to which the junior Liens of the Holders of Mechanic's

Lien Claims could attach.

- If a Creditor with a Mechanic's Lien Claim, that it contends is a Secured

   Claim senior to the applicable Secured Claim of the Lehman VD Lender(s) on

   the applicable Project, waits to find out after an objection to such Claim

   whether its Claim will be Allowed as having the status of a Sr. Secured

   Mechanic's Lien Claim, General Unsecured Claim or Reliance Claim, then,

   the Plan offers no opportunity at such later point for the Creditor to avail itself

   of the Lehman Distribution Enhancement, which, as provided in the Plan,

   essentially offers Creditors an opportunity on their Ballots to elect to receive

   an enhanced recovery of (as applicable) up to 24% for Allowed Reliance

   Claims against Group I Debtors, up to 9% for Allowed Reliance Claims

   against Group II Debtors, and up to 4% for Allowed General Unsecured

   Claims against Group I Debtors and Group II Debtors.

- Thus, each listed Holder of a Mechanic's Lien Claim will be provided a Ballot

   on which such Holder may elect to vote its Claim as a General Unsecured

   Claim or a Reliance Claim, as applicable, and will have the opportunity to

   elect to receive the Lehman Distribution Enhancement in respect of its

   Allowed Claim (in exchange for the Creditor's Assignment / Release for

   Lehman). To elect this option, the Creditor must and would waive all

   contentions that its Claim is a Secured Claim against the applicable Plan

   Project. If such Holder does not elect to vote its Claims as General Unsecured

   Claims or Reliance Claims, thereby electing to proceed as a Holder of

   Mechanic's Lien Claims, then if it is subsequently determined that such

Claims are not Sr. Secured Mechanic's Lien Claims, such Holder will not be
eligible to receive the Lehman Distribution Enhancement.

o   Some of the Mechanic's Lien Claims are Bond-Backed Claims and may be paid or
otherwise settled by the applicable Bond Issuer.

o   With respect to Mechanic's Lien Claims that are Allowed Sr. Secured Mechanic's
Lien Claims, under the Plan, at the election of the Lehman VD Lenders, each Holder
of such Class 3 Claim either (1) would receive payment of the full amount of its
Claim, exclusive of any penalty or similar amounts, payable as a lump sum on the
Effective Date if the original maturity date has passed or, otherwise, payable by
curing any defaults and paying any fees on the Effective Date and making further
payments as required under the applicable contract after reinstatement (Section
1124(2) Unimpairment), or (2) would have its rights against its collateral left
unaltered by the Plan (Simple Unimpairment).

o   The Settling Bond Issuer(s) (if any) and the Lehman VD Lenders are consenting to
less favorable treatment for any Allowed Sr. Secured Mechanic's Lien Claims that
are also, respectively, Settling Bond Issuer-Owned Performed Work Claims or
Lehman-Owned Settling Bond Issuer-Related Claims.

(iv)   For Class 4 Allowed Other Secured Claims, each Holder, if any, would have
its rights against its collateral left unaltered by the Plan (Simple Unimpairment) or, at the election of
the Lehman VD Lenders: either (1) would receive back its collateral through surrender or
abandonment (Unimpairment With Surrender or Abandonment) or (2) would receive payment from
the Lehman Creditor Distribution Funding of the full amount of its Claim, exclusive of any penalty
or similar amounts, payable as a lump sum on the Effective Date if the original maturity date has
passed or, otherwise, payable by curing any defaults and paying any fees on the Effective Date and
making further payments as required under the applicable contract or statute after reinstatement
(Section 1124(2) Unimpairment).

(v)   For Class 5 Allowed Priority Claims and the unclassified Allowed
Administrative Claims, and Allowed Priority Tax Claims, the Plan provides for 100% payment from

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Lehman Creditor Distribution Funding.

**(e)     Less Favorable Treatment for Certain Claims of Settling Bond Issuer(s) and the Lehman VD Lenders.**

(i)     Under the Plan, Lehman VD Lenders holding Class 6, Class 7, Class 8 or Class 9 Claims have agreed to take nothing for such Claims unless such Claims are Lehman-Owned Settling Bond Issuer-Related Claims.  Further, for the Lehman-Owned Settling Bond Issuer-Related Claims in Classes 3, 6, 7, 8 and 9 held by the Lehman VD Lenders or held by any Lehman Related Parties, the Lehman Related Parties will receive only their proportional share of Residual Cash of the applicable VD Plan Debtor (sharing Pro Rata with other Holders of Allowed Reliance Claims (Class 6 or Class 7) and Allowed General Unsecured Claims (Class 8 or Class 9)).  Lehman Related Parties may hold Lehman-Owned Settling Bond Issuer-Related Claims, in part, because, under each Settling Bond Issuer Agreement, the Settling Bond Issuer-Owned Performed Work Claims in Classes 3, 6, 7, 8 and 9 will be transferred to Lehman Related Parties on the Effective Date (in exchange for the consideration afforded the applicable Settling Bond Issuer under the applicable Settling Bond Issuer Agreement); and

(ii)     Each Settling Bond Issuer is consenting through the applicable Settling Bond Issuer Agreement to itself receive nothing from the applicable VD Plan Debtors' Estates for Settling Bond Issuer-Owned Performed Work Claims in Class 6, Class 7, Class 8 or Class 9.  (Nonetheless, due to the ongoing liability of the applicable Settling Bond Issuer under the relevant Future Work Bonds, the applicable Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Backed Future Work Claims in Class 11, summarized above.)

**1.9     Voting Recommendations.**

Your vote on the Joint VD Plan is important.  The Lehman VD Lenders urge you to vote to accept the Joint VD Plan by completing and returning the enclosed ballot(s) no later than the Voting Deadline (defined below).   Additionally, the Lehman VD Lenders suggest all Holders of Reliance Claims in Classes 6 and 7 and of General Unsecured Claims in Classes 8 and 9 seriously consider the offer that such Creditors may elect to receive the Lehman Distribution Enhancement, understanding that, by such election, such Creditors would afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.  The Lehman VD Lenders further urge Holders of

08-13555-mg Doc 1780-2 Filed 10/04/10 Entered 10/04/10 10:18:20 Exhibit B
Pg 39 of 197

Mechanic's Lien Claims to seriously consider waiving any Secured Claim and agreeing that their Claim, instead, is a Reliance Claim or General Unsecured Claim, as applicable, in order that such Holder of a Mechanic's Lien Claim too can elect to receive the Lehman Distribution Enhancement (thereby affording the Lehman Released Parties the Creditor's Assignment / Release for Lehman).

The Voting Deadline is set forth in a notice or order, which is being sent as an accompaniment to the Disclosure Statement and Plan.

## II

## PLAN CONFIRMATION DEADLINES

The Bankruptcy Court has not confirmed the Joint VD Plan described in this Joint VD Disclosure Statement. Accordingly, the terms of the Joint VD Plan are not binding on anyone. However, if the Bankruptcy Court confirms the Joint VD Plan, then the Joint VD Plan will be binding on all Persons with respect to the matters set forth in the Plan.

### 2.1    Time and Place of the Confirmation Hearing.

The hearing where the Bankruptcy Court will determine whether or not to confirm the Joint VD Plan will take place before Judge Erithe Smith, in Courtroom 5A, 411 West Fourth Street, Santa Ana, California 92701-4593, at _.m. on _____, __, 2010.

### 2.2    Deadline for Voting for or Against the Joint VD Plan.

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot with any applicable election to:

Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Blvd., 11th Floor
Los Angeles, California  90067-4100
Attention: Michael Matteo

Your ballot must be **received by** _____, 2010 (the "Voting Deadline"), or it will not be counted.

### 2.3    Deadline for Objecting to the Confirmation of the Joint VD Plan.

Objections to the confirmation of the Joint VD Plan must be Filed with the Bankruptcy Court, and served upon the following parties so that they are received by _____, 2010:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Counsel for Lehman VD Lenders: | Richard M. Pachulski |
| | Dean A. Ziehl |
| | Robert B. Orgel |
| | Jeremy V. Richards |
| | PACHULSKI STANG ZIEHL & JONES LLP |
| | 10100 Santa Monica Blvd., 11th Floor |
| | Los Angeles, California 90067-4100 |
| | |
| | Edward Soto |
| | Shai Waisman |
| | WEIL, GOTSHAL & MANGES LLP |
| | 767 Fifth Avenue |
| | New York, NY 10153-0119 |

**2.4     Identity of Person to Contact for More Information Regarding the Joint VD Plan.**

Any interested party desiring further information about the Joint VD Plan should contact the Lehman VD Lenders' counsel, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 11th Floor, Los Angeles, California 90067, (310) 277-6910, attention: Richard M. Pachulski and Robert B. Orgel.

**2.5     Disclaimer.**

Certain information contained in this Joint VD Disclosure Statement (general information in Section 4.1, Project descriptions in Section 4.2.1, SunCal's stated opinions of value in Section 4.2.2, various information regarding Claims used to develop the summary in Section 4.2.4 hereof) is either provided by the Voluntary Debtors or is contained in the Prior Elieff Disclosure Statement. Additionally, this Disclosure Statement from time to time notes within the text when the Proponents are specifically relying upon information provided or disclosed or believed by either the Voluntary Debtors or Elieff. The Lehman Proponents represent that they are unaware of any material inaccuracies in the information set forth herein.

The Bankruptcy Court has not yet determined whether or not the Joint VD Plan is confirmable and makes no recommendation as to whether or not you should support or oppose the Joint VD Plan.

The discussion in this Joint VD Disclosure Statement regarding the VD Plan Debtors

may contain "forward looking statements" within the meaning of the Private Securities Litigation

Reform Act of 1995. Such statements consist of any statement other than a recitation of historical

fact and can be identified by the use of forward looking terminology such as "may," "expect,"

"anticipate," "estimate," or "continue," or the negative thereof or other variations thereon or

comparable terminology. The reader is cautioned that all forward looking statements are necessarily

speculative and there are certain risks and uncertainties that could cause actual events or results to

differ materially from those referred to in such forward looking statements. The liquidation

analyses, distribution projections, projections of financial results and other information are estimates

only, and the timing, amount and value of actual distributions to Creditors may be affected by many

factors that cannot be predicted. Therefore, any analyses, estimates, or projections mayor may not

turn out to be accurate.

**III**

**ACCEPTANCE OR REJECTION OF THE JOINT VD PLAN**

**3.1**     **Who May Object to Confirmation of the Joint VD Plan.**

Any party in interest may object to the confirmation of the Joint VD Plan, but as

explained below not everyone is entitled to vote to accept or reject the Joint VD Plan.

**3.2**     **Who May Vote to Accept/Reject the Joint VD Plan.**

Subject to the following, a Holder of a Claim or Interest has a right to vote for or

against the Plan if that Holder of the Claim or Interest has a Claim, which is (1) Allowed or Allowed

for voting purposes, (2) classified in an Impaired Class and (3) receives something under the Plan.

Allowed Claims in Classes 2, 6, 7, 8, 9, 10 and 11 are classified as Impaired and

receive or retain property or rights under the Plan and, thus, Holders of Claims in such Classes are

entitled to vote to accept or reject the Plan.

**3.3**     **What Is an Allowed Claim/Interest.**

As noted above, a Holder of Claim or Interest must first have an Allowed Claim or

Allowed Interest to vote. As more fully defined in the Plan, a Claim (other than an Administrative

Claim) is "Allowed:" (1) if it is a Scheduled Claim and the Holder of such Claim did not File proof

thereof with the Bankruptcy Court on or before the Claims Bar Date, in the amount thereof, with the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

status as secured or unsecured thereof and with the statutory priority thereof if no objection to such

Claim was interposed by the Claims Objection Deadline; or (2) if the Holder of such Claim has Filed

a Proof of Claim therefor with the Bankruptcy Court on or before the Claims Bar Date, in the

amount and with the status as secured or unsecured and in the statutory priority as stated in such

Proofs of Claim if no objection to such Claim was interposed by the Claims Objection Deadline; or

(3) if an objection to such Claim was interposed by the Claims Objection Deadline, in the amount

and with the status as secured or unsecured and in the statutory priority thereof as fixed by Final

Order of the Bankruptcy Court; and (4) with respect to a Claim's status as a Reliance Claim, (a) with

such status if it is alleged on the Holder's Ballot in the manner provided therefor and if no objection

thereto is interposed by the Claims Objection Deadline, (b) with such status if it is alleged by the

Liquidating Trustee and either (i) the Lehman VD Lenders consent or (ii) no objection thereto is

Filed by the later of the Claims Objection Deadline or seventy-five (75) days after notice thereof to

the Voluntary Debtors' Committee, if surviving, and the Lehman Creditors or (c) as fixed by Final

Order of the Bankruptcy Court.  An Interest is "Allowed" (1) if no objection to such Interest was

interposed within the applicable period of time fixed by the Bankruptcy Code, the Bankruptcy Rules,

the Plan or the Bankruptcy Court, (i) if the Holder of such Interest did not File proof thereof with the

Bankruptcy Court within the applicable period of time fixed by the Bankruptcy Code, the

Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount or percentage of such

Interest and with the nature thereof as listed in the VD Plan Debtors' Schedules if listed as neither

disputed, contingent or unliquidated and (ii) if the Holder of such Interest has Filed a Proof of

Interest therefor with the Bankruptcy Court within the applicable period of time fixed by the

Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount

or percentage of such Interest and with the nature thereof as stated in such Proof of Interest, or (2) if

an objection to such proof was interposed within the applicable period of time fixed by the

Bankruptcy Code, the Bankruptcy Rules, the Plan or the Bankruptcy Court, in the number, amount

or percentage of such Interest and nature thereof as fixed by Final Order of the Bankruptcy Court.

### 3.4    What Is an Impaired Class.

A Class is impaired if the Joint VD Plan alters the legal, equitable, or contractual

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

rights of the Claims or Interests in that Class, other than the right to accelerate the Claim upon

certain kinds of defaults. Under the Joint VD Plan, Classes 1, 3, 4, and 5 are Unimpaired and Classes

2, 6, 7, 8, 9, 10 and 11 are Impaired.

**3.5      Who Is Not Entitled to Vote.**

The following four types of Claims are not entitled to vote: (1) Claims that have not

been Allowed; (2) Claims that, pursuant to Bankruptcy Code sections 507(a)(2), (a)(3) or (a)(8), are

entitled to priority; (3) Claims in Unimpaired Classes; and (4) Claims in Classes that do not receive

or retain any value under the Plan:

(a)      Claims in Unimpaired Classes are not entitled to vote because such

Classes are deemed to have accepted the Plan.

Classes 1, 3, 4, and 5 are Unimpaired and thus Holders of Allowed Claims in those

Classes are not entitled to vote because they are deemed to have accepted the Plan under Bankruptcy

Code § 1126(f).

(b)      Claims entitled to priority pursuant to Bankruptcy Code section

507(a)(2), (3) or (8) are not entitled to vote because voting is to determine class acceptance of a Plan

under Bankruptcy Code § 1129(a)(8) and such Claims are not to be placed in Classes (unclassified)

pursuant to Bankruptcy Code § 1123(a)(1).  Instead, such Claims are required to receive certain

treatment specified under Bankruptcy Code §§ 1129(a)(9)(A) & (C).

Allowed Administrative Claims and Allowed Priority Tax Claims are unclassified

Claims the Holders of which are not entitled to vote.

(c)      Claims in Classes that do not receive or retain any property under the

Plan do not vote because such Classes are deemed to have rejected the Plan.

Class 12 Interests are Impaired but Holders of such Interests receive and retain

nothing under the Plan in respect of such Interests and, accordingly, these Holders are not entitled to

vote because they are deemed to have voted to reject the Plan under Bankruptcy Code § 1126(f).

EVEN IF A CLAIM IS OF THE TYPE DESCRIBED ABOVE, A CREDITOR MAY

STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

**3.6**     **Who Can Vote in More than One Class.**

A Creditor whose Claim has been Allowed in part as a Secured Claim and in part as an Unsecured Claim is entitled to accept or reject the Plan in both capacities by casting one Ballot for the secured part of the Claim and another Ballot for the Unsecured Claim. Also, a Creditor may otherwise hold Claims in more than one Class (such as a Holder of General Unsecured Claims (Class 8 or 9) and Reliance Claims (Class 6 or Class 7)), and may vote the Allowed Claims held in each Class.

**3.7**     **Votes Necessary for a Class to Accept the Joint VD Plan.**

A Class of Claims is deemed to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Claims *that actually voted*, vote to accept the Plan. A Class of interests is deemed to have accepted the Plan when Holders of at least two-thirds (2/3) in amount of the interest-Holders of such Class which actually vote, vote to accept the Plan.

**3.8**     **Special Provisions for Listed Holders of Mechanic's Lien Claims.**

Although the subclasses of Class 3 are Unimpaired and any Holders of <u>Allowed</u> Sr. Secured Mechanic's Lien Claims are deemed to accept the Plan, the Lehman Proponents dispute the "secured" status of such Claims against all Group I Debtors and against Group II Debtors (other than SunCal Summit Valley) because the Lehman Proponents assert that the aggregate amount of the applicable Lehman Loans secured by Lehman Claim Liens on each applicable Plan Project exceeds the value of such Plan Project, such that there is no value in the junior Liens of the Holders of Mechanic's Lien Claims. Thus, <u>each listed Holder of a Mechanic's Lien Claim against Group I Debtors or Group II Debtors (other than SunCal Summit Valley) will be provided a Ballot on which such Holder may elect to vote its Claims as General Unsecured Claims or Reliance Claims, as applicable, in which event the Holder will be waiving contentions that its interest in the collateral securing its Claim has any value and thus will be waiving contentions that it holds a Secured Claim against the applicable Plan Project.</u>

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**3.9** **Special Provisions for Allowed General Unsecured Claims in Classes 8 and 9 and Allowed Reliance Claims in Classes 6 and 7.**

    **3.9.1** **Voting Permitted Regardless of Election to Receive the Lehman Distribution Enhancement.**

        Creditors voting a General Unsecured Claim in Class 8 or Class 9 or a Reliance Claim in Class 6 or Class 7 may vote for or against the Plan whether or not the Creditor elects to execute and deliver the Creditor's Assignment / Release for Lehman and receive the benefits of the Lehman Distribution Enhancement (applicable only if the Claim is Allowed, Plan is Confirmed and Effective Date occurs).

    **3.9.2** **"Reliance Claim" Status Must Be Asserted on a Ballot.**

        For any Creditor to vote its Claim as a Reliance Claim in Class 6 or Class 7, and have offered to it the higher Distributions available therefor with respect to the Lehman Distribution Enhancement, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim. The features distinguishing General Unsecured Claims from Reliance Claims, as more fully reflected in the definitions of each, are essentially that Reliance Claims are Claims (a) for "new value," (b) voluntarily extended after the August 1, 2007 Reliance Date and prior to the applicable November, 2008 Petition Date(s), and (c) Filed by the Primary Claims Bar Date or listed on the Filed Schedules by June 1, 2010 as Scheduled Claims, excluding (d) Insider Claims and Lehman VD Lender Claims (other than Lehman-Owned Settling Bond Issuer-Related Claims). The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.

    **3.10** **Receipt of No or Incorrect Ballots.**

        If a Creditor does not receive a Ballot or receives an incorrect Ballot, it may contact the Proponents to receive the correct Ballot.

    **3.11** **Acceptance of the Plan Contrasted With Confirmation.**

        Many requirements must be met before the Bankruptcy Court can confirm the Plan. Some of the requirements include that the Plan must (a) be proposed in good faith, (b) be accepted in accordance with the provisions of the Bankruptcy Code, (c) pay creditors at least as much as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    creditors would receive in a Chapter 7 liquidation and (d) be feasible. Creditor acceptance of the

2    Plan is only a factor relating to confirmation.  Even if there are Impaired Classes that do not accept

3    the proposed Plan, the Court may nonetheless confirm the Plan if the non-accepting Classes are

4    treated in the manner required by the Bankruptcy Code and at least one Impaired Class of Claims

5    accepts the Plan.  The process by which a plan may be confirmed and become binding on non-

6    accepting classes is commonly referred to as "cramdown."  The Bankruptcy Code allows the Plan to

7    be "crammed down" on non-accepting Classes of Claims or Interests if it meets all statutory

8    requirements except the voting requirements of 1129(a)(8) and if the Plan does not "discriminate

9    unfairly" and is "fair and equitable" with respect to each Impaired Class that has not voted to accept

10   the Plan, as set forth in 11 U.S.C. § 1129(b) and applicable case law.  The confirmed Plan binds the

11   non-accepting Classes.  The Proponents will ask the Bankruptcy Court to confirm the Plan by

12   cramdown on any Impaired Class if such Class does not vote to accept the Plan.

13          The requirements described in the Plan may not be the only requirements for

14   confirmation. PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THE PLAN

15   SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

16   CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.

17                                    **IV**

18   **BACKGROUND OF THE VD PLAN DEBTORS, THEIR BUSINESS AND THE CASES**

19          **4.1     The SunCal Companies and the Debtors.**[4]

20          SunCal's business focused upon the acquisition and development of residential land.

21   A typical SunCal project began with the acquisition of one or more parcels of raw land.  Thereafter,

22   the SunCal team developed a master plan for the acreage that incorporated streets, homes, parks,

23   schools and commercial areas, and then it worked with the applicable municipal planning authorities

24   (the city, county, state and federal) to secure the necessary approvals or "entitlements" to achieve

25   such plan.  This process, which required the assistance of land planners, civil engineers, architects,

26   lawyers, and other land specialists, took a period of years. Once a master plan had been approved,

27
28   _____

[4] The information set forth in this Disclosure Statement Section 4.1 is largely obtained from the previously Filed Prior
Elieff Disclosure Statement, although certain amounts have been updated as more recent data became available.  This
information is designed to provide to the reader with a general background understanding of the Debtors and their
operations.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   SunCal provided for the grading of the project and the installation of the foundational infrastructure

2   (streets, utilities, *etc*.) and then sold the lots or parcels within the project to merchant builders.

3       The land development process is inherently capital intensive due to size and costs of

4   the assets being acquired, the front-loaded capital requirements, and the length of time between the

5   initial acquisition and the ultimate realization of profits. A typical SunCal project was financed

6   through an equity contribution coupled with a land or acquisition loan. Thereafter one or more

7   development and entitlement credit facilities would either be incorporated into the acquisition loan,

8   or an entirely new facility would be obtained to fund the development. In some cases a layer of

9   mezzanine debt (secured by an equity ownership interest in the entity that owns the project) was

10  employed to provide additional funding.

11      The Debtors are twenty-six (26) entities formed to develop the Projects throughout

12  California. Some of the Debtors directly own the Projects and others serve as holding companies,

13  owning Allowed Interests directly or indirectly in the Debtors that hold title to the Projects. SunCal

14  Management, a non-debtor entity owned and controlled by Elieff, had management contracts with

15  respect to all of the Projects.

16      Attached hereto as **Exhibit "1"** is a list and general description of various notices of

17  potential health and safety issues asserted by various government agencies with respect to the Plan

18  Projects, which information was derived from information from the Voluntary Debtors.

19      The Assets, debt and capital structure of the VD Plan Debtors are set forth in the

20  subsections below. As to the related, seventeen Voluntary Debtors, SunCal Affiliates are the owners

21  of one hundred percent (100%) of the equity and SunCal Affiliates have full corporate governance

22  authority over the Voluntary Debtors. The Voluntary Debtors, collectively, own currently nine (9)

23  Projects – owned by eleven (11) of the Voluntary Debtors – with an approximate collective value of

24  $65 million to $105 million. As to the Voluntary Debtors, the Lehman Creditors who are creditors

25  of the Voluntary Debtors (the Lehman VD Lenders) assert that they hold first priority, voluntary

26  liens against Projects of certain of the Voluntary Debtors securing an aggregate debt to such the

27  Lehman VD Lenders of approximately $711 million.

28

**4.2     Financial Information: Assets and Liabilities.**

**4.2.1    The VD Plan Debtors' Primary Assets.**

The following is a general description of the VD Plan Debtors and their primary Assets (other than the Litigation Claims) as of their respective Petition Dates, based solely upon the Voluntary Debtors' disclosures in the Prior Elieff Disclosure Statement, except that, unless otherwise stated, amounts of Cash on hand have been updated to approximately August 31, 2010:

| **DEBTOR** | **ASSET DESCRIPTION** |
|---|---|
| Palmdale Hills | Palmdale Hills owns the Ritter Ranch Project. The Ritter Ranch Project consists of a 10,625 acre site situated in the City of Palmdale, in Los Angeles County, California. Grading of the first phase is complete with master infrastructure nearly 90% complete. The specific plan and the development agreement were approved in 1992 and allow for the development of up to 7,200 residential units. A vesting tentative parcel map consisting of 42 parcels has been processed and was recorded in 1995. Additionally, six vesting tentative tract maps totaling 553 lots were approved by the city in December 1995. All regulatory permits have been received.<br><br>Palmdale Hills also owns personal property in the form of cash and the Palmdale Hills CFD Bonds. |
| Acton Estates | Action Estates owns the Acton Project consisting of a 175-acre site situated in Los Angeles County, California. The Acton Project is surrounded by mostly equestrian properties and light agricultural vacant land. The Acton Project is expected to consist of 136 units. |
| SunCal Beaumont | SunCal Beaumont owns the Beaumont Heights Project, that originally consisted of a 1,191-acre site situated in the City of Beaumont, in Riverside County, California. The property is currently designated as low density residential use -rural residential use. The City of Beaumont is in the process of amending the general plan, preparing an environmental impact report and annexing the assemblage. The specific plan and tentative tract map are in the drafting stage. The Beaumont Heights Project was expected to consist of 1,203 units. A portion of the Beaumont Heights Project has been lost through foreclosure sales completed prior to the Petition Date. |

| **DEBTOR** | **ASSET DESCRIPTION** |
|---|---|
| SunCal Bickford | SunCal Bickford owns the Bickford Ranch Project, consisting of a 1,940-acre site situated in the City of Penryn, in Placer County, California. The Bickford Ranch Project is fully entitled with an approved large lot tentative map, small lot tentative map, specific plan, design guidelines, development standards, and a development agreement. The offsite water and sewer improvements are mostly complete. Improvement plans for major roads and in-tract improvements were in process of being completed and a memorandum of understanding between the City and County for the regional sewer pipeline was in process. The Bickford Ranch Project is expected to consist of 2,105 units.<br><br>SunCal Bickford owns personal property in the form of cash. |
| SunCal Emerald | SunCal Emerald owns the Emerald Meadows Project, consisting of a 178-acre site situated in the City of Rubidoux, in Riverside County, California. The specific plan, general plan and the environmental impact report were approved in October 2005. The tentative tract map & final map were in process. The Emerald Meadows Project is expected to consist of 1,002 units. |
| SunCal Johannson | SunCal Johannson owns the Johannson Ranch Project, consisting of a 501-acre site in the City of Modesto, in Stanislaus County, California. Tentative maps were in the process of being prepared. Engineering plans and preparation of the draft specific plan were commenced prior to the filing of the Debtors' Cases. The SunCal Johannson Project is expected to consist of 921 units.<br><br>SunCal Johannson also owns personal property in the form of cash. |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| **DEBTOR** | **ASSET DESCRIPTION** |
|---|---|
| SunCal Summit Valley | SunCal Summit Valley, Kirby Estates and Seven Brothers each own portions of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to the Petition Date. SunCal Summit Valley is the Holder of the Allowed Interests in Seven Brothers and Kirby Estates.

SunCal Summit Valley also owns personal property in the form of cash. |
| Kirby Estates | SunCal Summit Valley, Kirby Estates and Seven Brothers each own portions of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to the Petition Date. Kirby Estates owns 27 acres of the Summit Valley Project. (SunCal Summit Valley is the Holder of the Allowed Interests in Seven Brothers and Kirby Estates.) |

| **DEBTOR** | **ASSET DESCRIPTION** |
|---|---|
| Seven Brothers | SunCal Summit Valley, Kirby Estates and Seven Brothers each own portions of the Summit Valley Project that originally consisted of a 2,500-acre site situated in the City of Hesperia, in San Bernardino County, California. The City of Hesperia's general plan allows for low density residential development. SunCal Summit Valley anticipated approximately 2.5 lots per acre over the entire assemblage. Most of the technical studies for the environmental impact report were completed. The Summit Valley Project was previously expected to consist of 6,023 units. A part of the Summit Valley Project has been lost through foreclosure proceedings completed prior to the Petition Date.  Seven Brothers owned 900 acres of the Summit Valley Project, a portion of which has been lost through foreclosure proceedings completed prior to the Petition Date.  (SunCal Summit Valley is the Holder of the Allowed Interests in Seven Brothers and Kirby Estates.) |
| SCC Communities | SCC Communities owns the Joshua Ridge Project, consisting of an 80-acre site situated in the City of Victorville in San Bernardino County, California. The Joshua Ridge Project was slated to be sold to the city and the city was scheduled to use the land to build a park or a school. |
| Tesoro | Tesoro owns the Tesoro Project consisting of a 185-acre site situated in the City of Santa Clarita in Los Angeles County, California. The existing entitlements include a tentative tract map approved by the planning commission, which allows for 45 lots. |
| SunCal I | SunCal I does not own any real property. SunCal I is the Holder of Allowed Interests in Acton Estates, SunCal Bickford, SunCal Beaumont, SunCal Summit Valley, SunCal Johannson and SunCal Emerald. |

### 4.2.2   Values for Plan Projects.

The below chart sets forth the appraised value of the VD Plan Debtors' Projects based upon appraisals prepared for the Lehman Creditors during the pendency of the Bankruptcy Cases, and SunCal's stated valuation opinions for the Projects.

| NAME OF DEBTOR | APPRAISED VALUE OF DEBTORS' PROJECTS BASED UPON APPRAISALS PREPARED FOR LEHMAN CREDITORS DURING THE PENDENCY OF THE DEBTORS' CHAPTER 11 PROCEEDING | SUNCAL'S STATED VALUATION OPINIONS[5] |
|---|---|---|
| SunCal Bickford | $29,500,000 | $21,000,000 |
| SunCal Emerald | $12,000,000 | $6,000,000 |
| Palmdale Hills | $42,900,000 | $27,000,000 |
| Tesoro | $1,850,000 | $1,500,000 |
| SCC Communities | $1,200,000 | $1,000,000 |
| SunCal Beaumont | $1,400,000 | $1,200,000 |
| Acton Estates | $6,800,000 | $3,400,000 |
| SunCal Johannson | $4,000,000 | $2,100,000 |
| SunCal Summit Valley | $2,200,000 | $750,000 |
| Kirby Estates | $2,800,000 | $1,000,000 |
| Seven Brothers | $200,000 | $75,000 |
| **TOTAL** | $104,850,000 | $65,025,000 |

• The Lehman Creditors' appraised value of the Summit Valley Project includes the portions of the Summit Valley Project owned by Seven Brothers and Kirby Estates. The appraisal values the property that is owned outright by SunCal Summit, Seven Brothers and Kirby Estates, and not subject to Seller Financing Secured Claims.

As to the net values estimated to be available for the Lehman Secured Claims against SunCal I and SunCal Summit Valley based on the value of their Interests in Kirby Estates, Seven Brothers, SunCal Beaumont, and SunCal Johanson, the following estimate is applicable:

---

[5] SunCal represented that the valuations set forth below were prepared by its internal underwriting team using criteria consistent with the team's acquisition of real properties. The Lehman Proponents have not verified, nor do they vouch for the valuation techniques adopted by the Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| DEBTOR | Project Values | Cash | Aggregate Asset Values | Total Non-Lehman Creditor Claims | Available for Lehman Secured Claim |
|---|---|---|---|---|---|
| Kirby Estates | $2,800,000 | $10 | $2,800,010 | $12,214 | $2,787,796 |
| Seven Brothers | $200,000 | $174 | $200,174 | $404,953 | ($204,779) |
| SunCal Beaumont | $1,400,000 | $11 | $1,400,011 | $993,416 | $406,595 |
| SunCal Johannson | $4,000,000 | $90,218 | $4,090,218 | $484,772 | $3,605,446 |
| Total | $8,400,000 | $90,413 | $8,490,413 | $1,895,355 | $6,595,058 |

### 4.2.3   Remaining Other Assets

Besides the Plan Projects and any associated personal property, the only significant Remaining Other Assets are the VD Plan Debtors' Cash and any potential Net Cash Litigation Recoveries.

### (a)      VD Plan Debtors' Cash

The following chart sets forth the VD Plan Debtors' cash on hand as of August 31, 2010 (based on information in September 2010 Filings by the Voluntary Debtors of Monthly Operating Reports and pleadings).  The Lehman Creditors contend that some or all of the following amounts are subject to its Liens and therefore constitute their "Cash Collateral."

| Debtor | Undisputed Cash Collateral | Disputed Cash Collateral | Unrestricted Cash |
|---|---|---|---|
| **Group I Debtors** | | | |
| Palmdale Hills | $17,085,459 | $3,710,269 | |
| SunCal Bickford | | $1,800,519 | |
| SunCal Emerald | | | |
| **Total** | **$17,085,459** | **$5,510,788** | |
| **Group II Debtors** | | | |
| Acton Estates | | | |
| SCC Communities | | $ 3,409 | |
| SunCal I | | $ 26 | |
| SunCal Summit Valley | | $34,709 | |
| Tesoro | | $ 71 | |
| **Total** | | **$38,215** | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| **Group III Debtors** | | | |
|---|---|---|---|
| Kirby Estates | | | $       10 |
| Seven Brothers | | | $     173 |
| SunCal Beaumont | | | $       11 |
| SunCal Johannson | | | $90,218 |
| **Total** | | | **$90,412.00** |

**(b)      Net Cash Litigation Recoveries**

The Proponents have not completed their investigation of potential Litigation Claims as to matters not resolved under the Plan and are not aware of any material matters of this type.  Yet, the Plan preserves the ability of the Liquidating Trustee to pursue Remaining Litigation Claims and affords non-priority, unsecured creditors (*e.g.*, Holders of Allowed Reliance Claims and Allowed General Unsecured Claims), a proportional share of any Net Litigation Recoveries.

**4.2.4   Debt and Capital Structure.**

The VD Plan Debtors' ownership is reflected in the classification tables.  The following summarizes the debt of the VD Plan Debtors.

**(a)      A Summary of the Lehman VD Lenders' Loans.**

As to the twelve (12) VD Plan Debtors, there are currently nine (9) Plan Projects, as follows:

1.      Ritter Ranch Project
2.      Acton Project
3.      Beaumont Heights Project
4.      Bickford Ranch Project
5.      Emerald Meadows Project
6.      Johannson Ranch Project
7.      Summit Valley Project
8.      Joshua Ridge Project
9.      Tesoro Project

As of the applicable Petition Dates, there were first priority, voluntary liens and security interests against each Plan Project of the Group I Debtors and Group II Debtors other than SunCal Summit Valley, that now are held by the Lehman VD Lenders, each as owner of all of the subject loan or of the term or revolver component thereof, as more fully set forth in **Exhibit "2"** to the Disclosure Statement. The amount owing, collectively, by the VD Plan Debtors under the Lehman Loans, without duplication, totals approximately $711 million.

More specifically:

(a)     Four (4) Projects – Ritter Ranch Project, Acton Estates Project, Emerald Meadows Project, and Bickford Ranch Project – are owned, respectively, by Palmdale Hills, Acton Estates, SunCal Emerald, and SunCal Bickford.  Lehman Commercial asserts a first priority lien by virtue of first-priority deeds of trust on each of these four Projects.  Additionally, besides holding a first priority Lien directly on the Ritter Ranch Project, Lehman Commercial holds a first priority pledge of the membership interests in Palmdale Hills, which is the owner of the Ritter Ranch Project.

(b)     Two (2) Projects – the Joshua Ridge and Tesoro Projects – are owned, respectively, by SCC Communities and Tesoro.  Lehman ALI is the primary secured creditor on each of these two additional Projects.

(c)     Two (2) Projects – the Johannson Ranch Project and Beaumont Heights Project – are owned, respectively, by SunCal Johannson and SunCal Beaumont.  Lehman Commercial holds a first priority pledge of SunCal I's membership interests in SunCal Johannson and SunCal Beaumont.

(d)     One (1) Project – SunCal Summit Valley – is owned by three Debtors: SunCal Summit Valley, Kirby Estates and Seven Brothers, which each own a portion of the Project.  Lehman Commercial holds a first priority pledge of SunCal I's membership interests in SunCal Summit Valley and in SunCal Summit Valley's membership interests in Kirby Estates and Seven Brothers.

The Lehman VD Lenders also hold a substantially undisputed Lien on a major part (and undisputed or disputed Liens on substantially all) of the VD Plan Debtors' cash balances (Cash Collateral) and receivables and other rights relating to the Projects in which they assert Liens.

The various Lehman Loans, the entities against which they are asserted and the Allowed Amount of each Lehman Loan as of the Petition Date for the purposes of the Joint VD Plan are all set forth in the classification tables that are set forth herein below and in the Plan.

The Plan Projects are being conveyed to the Lehman Nominees pursuant to the Plan, as permitted by Bankruptcy Code § 1123(a), and the value of such conveyance is set under the Plan based on the appraisals and amounts described therein.  All of the Lehman Loans are recourse loans

as to the respective borrowers' assets.  Accordingly, for each Lehman Loan, each applicable Lehman VD Lender is afforded a Lehman Creditor Deficiency Claim against each VD Plan Debtor liable for the subject Lehman Loan equal to the balance of the applicable Lehman Loan not satisfied by the conveyance of Plan Projects to the Lehman Nominee for such Lehman VD Lender.

**(b)** **Other Debts against the VD Plan Debtors and Plan Projects.**

In addition to the Secured Claims of the Lehman VD Lenders against certain Plan Projects, there are miscellaneous Real Property Tax Claims, Mechanic's Lien Claims and possibly Other Secured Claims, alleged to be Allowed Secured Claims against the Plan Projects, and other Priority Claims, Administrative Claims, General Unsecured Claims or Reliance Claims asserted against each of the VD Plan Debtors, summarized in the chart below.

| | ESTIMATED CLAIMS (OTHER THAN LEHMAN CREDITOR CLAIMS) | | | | | | |
|---|---|---|---|---|---|---|---|
| DEBTOR | ADMINISTRA-TIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | PREPETITION REAL PROPERTY TAX CLAIMS (CLASS 1) | POST-PETITION REAL PROPERTY TAX CLAIMS (ESTIM.) | MECHANIC'S LIEN CLAIMS, IF ANY (CLASS 3) | RELIANCE CLAIMS (CLASS 6 OR 7) | GENERAL UNSECURED CLAIMS (CLASS 8, 9, OR 10) | SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS (CLASS 11) |
| Palmdale Hills | $594,159 | $2,015,455 | $2,015,455 | $1,207,235 | $1,139,875 | $1,542,339 | $21,388,095 |
| SunCal Bickford | $591,205 | $4,118,893 | $4,118,893 | $10,007,203 | $460,255 | $324,103 | $2,581,887 |
| SunCal Emerald | $214,556 | $259,960 | $259,960 | $1,228,593 | $249,700 | $88,411 | $0 |
| Acton Estates | $60,087 | $413,287 | $413,287 | $0 | $84,811 | $60,506 | $1,290,000 |
| SCC Communities | $27,918 | $19,543 | $19,543 | $0 | $2,958 | $29,855 | $20,000 |
| SunCal Summit Valley | $48,015 | $176,005 | $176,005 | $16,827 | $269,062 | $12,254 | $0 |
| Tesoro | $128,297 | $52,837 | $52,837 | $0 | $28,095 | $134,314 | $422,000 |
| Kirby Estates | $846 | $5,684 | $5,684 | $0 | $0 | $0 | $0 |
| Seven Brothers | $1,691 | $201,631 | $201,631 | $0 | $0 | $0 | $0 |
| SunCal Beaumont | $34,518 | $365,955 | $365,955 | $43,355 | $136,612 | $47,021 | $0 |
| SunCal Johannson | $34,947 | $204,322 | $204,322 | $0 | $265 | $40,916 | $0 |
| SunCal I | $846 | $0 | $0 | $0 | $0 | $0 | $0 |
| **Total** | **$1,737,085** | **$7,833,573** | **$7,833,573** | **$12,503,213** | **$2,371,633** | **$2,279,718** | **$25,701,982** |

As to the above chart:

•     Seller Financing Secured Claims are excluded from the above chart. They are irrelevant to any evaluation of the Plan because it provides that their Holders, absent settlement,

either are to be paid in full, receive back their collateral or be unimpaired.

•      These estimates are the result of the initial, first level Claims analysis. The Claims analysis is continuing and incomplete and late Filed Claims and many amendments have not been included in arriving at the numbers set forth above.

•      The chart takes into account information compiled by the Lehman Proponents after having received input from SunCal Management in late 2009 as to Claims likely subject to disallowance.

•      Settling Bond Issuer-Related Future Work Claims in the above chart involve numerous assumptions. Efforts were made to avoid duplication in that the Proponents believe certain Bond Issuer Claims will be subject to disallowance under Bankruptcy Code section 502(e) to the extent the corresponding Bond-Backed Claim is Allowed. Although Arch asserted that these alleged Claims (and similar Claims against the Trustee Debtors) are joint and several obligations of all the Debtors, such contentions are disputed and are not taken into account in the chart above (and are irrelevant if there is consensual treatment of the Bond Issuer Claims under the Plan).

•      The chart excludes Seller Financing Secured Claims because such claims are not relevant to the estimated Distribution percentages for Holders of Allowed General Unsecured Claims against Group III Debtors (*i.e.*, Class 10 Claims) in that Holders of Allowed Seller Financing Secured Claims will either receive their collateral or be paid in full (or may voluntarily and separately agree to less favorable treatment). For additional information on such claims, see the classification table relating to Class 4 claims in the Plan.

•      This first level estimation of what Claims may become Allowed Claims and the status of their listing herein or in the Joint VD Plan should not be construed as providing or admitting that any Claim is Allowed or is to be Allowed under the Joint VD Plan unless expressly so provided in the Plan.

•      Administrative Claims are ongoing and the amounts included are estimates as of August 31, 2010.

Totals from the chart above are as follows:

| DEBTOR | TOTAL NON-LEHMAN CREDITOR CLAIMS |
|---|---|
| Palmdale Hills | $29,902,613 |
| SunCal Bickford | $22,202,439 |
| SunCal Emerald | $2,301,180 |
| Acton Estates | $2,321,978 |
| SCC Communities | $119,817 |
| SunCal Summit Valley | $698,168 |
| Tesoro | $818,380 |
| Kirby Estates | $12,214 |
| Seven Brothers | $404,953 |
| SunCal Beaumont | $993,416 |
| SunCal Johannson | $484,772 |
| SunCal I | $846 |
| Total | $60,260,777 |

### (c)    Mechanic's Lien Claims.

Mechanic's Lien Claims constitute Claims arising pursuant to California Civil Code §3110 *et seq.* that were either perfected prepetition or otherwise satisfy the requirements of Bankruptcy Code 546(b).  There are estimated to have been asserted approximately $12.5 million of asserted Mechanic's Lien Claims against various of the Plan Projects.  The Lehman VD Lenders contend that the Lehman Claim Liens are first priority, voluntary Liens on the Plan Projects of the Group I Debtors and Group II Debtors (other than SunCal Summit Valley), senior to the alleged Mechanic's Lien Claims.  Because the Lehman Claims Liens are senior Encumbrances to such Mechanic's Liens Claims and because the Plan Projects of the Group I Debtors and Group II Debtors (other than SunCal Summit Valley) are worth less than the aggregate outstanding amount of the Lehman Loans that are secured by the Lehman Claims Liens, the Lehman Proponents assert that there is no value in said Plan Projects to which the junior Liens of the Holders of Mechanic's Lien Claims could attach.

The Lehman VD Lenders believe that, generally, the Mechanic's Lien Claims are General Unsecured Claims or Reliance Claims (to be treated in Class 6, Class 7, Class 8, Class 9, or Class 10, if Allowed).  If a Creditor with a Mechanic's Lien Claim that it contends is a Secured Claim (which means such Claim must be senior to the Secured Claim against the applicable Plan

Project of the applicable Lehman VD Lender) waits to find out after an objection to such Claim whether its Claim will be Allowed as having the status of a Sr. Secured Mechanic's Lien Claim, General Unsecured Claim or Reliance Claim, then, the Plan offers no opportunity at such later point for the Creditor to avail itself of the Lehman Distribution Enhancement, which, as provided in the Plan, essentially offers Creditors an opportunity on their Ballots to elect to receive an enhanced recovery of (as applicable) up to 24% for Allowed Reliance Claims against Group I Debtors, up to 9% for Allowed Reliance Claims against Group II Debtors, and up to 4% for Allowed General Unsecured Claims against Group I Debtors and Group II Debtors.

Thus, each listed Holder of a Mechanic's Lien Claim relating to the Plan Projects of Group I Debtors and Group II Debtors (other than SunCal Summit Valley) will be provided a Ballot on which such Holder may elect to vote its Claim as a General Unsecured Claim or a Reliance Claim, as applicable, and will have the opportunity to elect to receive the Lehman Distribution Enhancement in respect of its Allowed Claim (in exchange for the Creditor's Assignment / Release for Lehman). To elect this option, the Creditor must and would waive all contentions that its Claim is a Secured Claim against the applicable Plan Project. If such Holder does not elect to vote its Claims as General Unsecured Claims or Reliance Claims, thereby electing to proceed as a Holder of Mechanic's Lien Claims, then if it is subsequently determined that such Claims are not Sr. Secured Mechanic's Lien Claims, such Holder will not be eligible to receive the Lehman Distribution Enhancement.

Some of the Mechanic's Lien Claims are Bond-Backed Claims and may be paid or otherwise settled by the applicable Bond Issuer.

### 4.2.5   Alleged Litigation Claims And Challenges Against The Lehman Creditors Asserted Currently By The Voluntary Debtors And Formerly By The Trustee.

#### (a)   Introduction.

The Voluntary Debtors contend and the Trustee, prior to the Plan, contended that the Debtors' Estates or certain of the Debtors' Creditors have substantial claims and challenges against the Lehman Creditors with respect to the loans and Claims of the Lehman Creditors that would result either in the subordination of the Claims of the Lehman Creditors against the Debtors to payment in

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

full of all, or a substantial portion of the Debtors' Creditors, the avoidance or setting aside of various Claims and Liens that the Lehman Creditors assert against certain Debtors and/or recovery of substantial monies by one or more of the Debtors' Estates from the Lehman Creditors.  Those claims and challenges fall into five general categories:  (i) the Equitable Subordination Claims; (ii) the Fraudulent Transfer Claims; (iii) the Preference Claims; (iv) the Breach of Fiduciary Duty Claims; (iv) the Section 506(d) Claims; and (v) the Challenge to the Lehman Creditors' Proofs of Claims. The nature of these claims and the Lehman Creditors' analysis of their merits and likely value is discussed in this Disclosure Statement Section 4.2.5.

> **(b)**    **The Equitable Subordination Claims Relating to the Lehman Creditors' Claims.**

The previously Filed Prior Elieff Disclosure Statement sets forth the basis upon which the Elieff Proponents believe that the Lehman Creditors' Claims could be "equitably subordinated" to the claims of all other unsecured creditors such that distributions that would otherwise be made by the Trustee or Voluntary Debtors to the Lehman Creditors on account of their senior secured claims could be redistributed to junior, unsecured creditors of the Debtors.

As the Elieff Proponents acknowledge, equitable subordination requires findings that: the claimant whose claim is sought to be equitably subordinated engaged in some type of inequitable conduct; the conduct injured creditors, or conferred an unfair advantage on the claimant; and subordination would not be inconsistent with the Bankruptcy Code.  Additionally, applicable case law provides that claims can be subordinated only to the extent necessary to offset the injury to a debtor or its creditors and that the concept of equitable subordination is remedial, not penal, and is a measure that should be used only sparingly.  Furthermore, the applicable provision of the Bankruptcy Code (section 510(c)) is clear that a claim may only be subordinated to "all or part of [another] allowed claim" but that a claim cannot be subordinated to an interest.

In January 2009, certain of the Debtors commenced an action in the Bankruptcy Cases (the "ES Action"), seeking to subordinate all of the Claims of certain of the Lehman Creditors to payment in full of all unsecured claims against those Debtors and named certain of the Lehman Creditors, among others, as defendants (collectively, the "ES Defendants").

The primary basis of the Equitable Subordination Action as originally Filed was that,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

beginning in or about August of 2007, the Lehman Creditors took over effective control of all of the material aspects of the Debtors' projects operations without regard as to whether a Lehman Related Party was the lender or whether a Lehman Related Party was an equity member and caused the Debtors to incur substantial unsecured vendor claims with the promise of payment that went unfulfilled. The Debtors twice amended their complaint, and thereafter the Lehman Creditors moved to dismiss the second amended complaint for failure to state a claim upon which relief could be granted. At a hearing held on June 11, 2009, the Bankruptcy Court granted the foregoing motion to dismiss, with leave to further amend the complaint. The Bankruptcy Court found that the Debtors had failed to (1) state a claim regarding insider status; (2) tie specific defendants to inequitable conduct or sufficiently state the basis of imputing such conduct; (3) adequately allege "gross and egregious conduct"; (4) identify particular inequitable conduct of defendants against particular Debtor plaintiffs; (5) sufficiently identify the alleged injured creditors; and (6) allege fraudulent conduct with particularity.

In July 2009, the Debtors filed a third amended complaint that added new causes of action alleging preference and fraudulent transfer liability, certain post-petition "bad acts" of the Lehman Creditors, but otherwise asserted similar allegations as the prior Filed complaints. The ES Defendants (including the Lehman Creditors) timely filed a motion to dismiss the third amended complaint. On March 9, 2010, the Bankruptcy Court dismissed certain of the Debtors' claims.

At the same time, the Lehman Creditors were contending that the automatic stay in the bankruptcy case of Lehman Commercial precluded prosecution of challenges to the Liens of Lehman Commercial absent obtaining prior stay relief in such case. In an opinion entered on December 15, 2009, the Bankruptcy Appellate Panel agreed. The Voluntary Debtors have appealed.

Thereafter, the Trustee and Voluntary Debtors Filed a fourth amended complaint that does not name Lehman Commercial as a defendant. Yet, whereas the aggregate of each Lehman VD Lender's Claims against the VD Plan Debtors approximates, without duplication, $711 million (*see* **Exhibit "2"**), Lehman Commercial holds over 89% of such aggregate amount. The Lehman Creditors have filed a partial motion to dismiss and a motion to strike the fourth amended complaint.

In any event, prosecution of the ES Action is costly for all parties. The Debtors

previously estimated that the Lehman Adversary Proceeding will cost between $3 and $4 million to

prosecute.  It is not clear how the Debtors' Estates could fund the anticipated costs and expenses.

Moreover, although the Lehman Creditors believe that the pending challenges to their Claims are

without merit, they also are aware that, despite their holding Liens securing obligations that

substantially exceed the value of the Plan Projects, the Group I Debtors and Group II Debtors have

(and will have) no ability to pay, in the foreseeable future, the full amount of the debt owed under

the Lehman Loans.  Thus, the Lehman VD Lenders want ownership of their collateral and want that

ownership now.  As discussed herein, the Lehman VD Lenders have proposed the Plan, which would

result in the conveyance of the Plan Projects to the Lehman Nominees selected by the Lehman VD

Lenders, the payment by the Lehman VD Lenders of the Lehman Plan Funding and resolution of all

Litigation Claims and challenges against the Lehman Creditors or their Claims.

###### (c)    The Voluntary Debtors' Assertions regarding Fraudulent Transfer Actions Against the Lehman Creditors Arising under Various Cross-Collateralized Lehman Loans.

The Voluntary Debtors contend (and the Trustee had contended) that certain Claims

and Liens of the Lehman Creditors can be set aside and avoided pursuant to Bankruptcy Code

sections 544, 548, 502(d) and 551 on the theory that at least part of the Claims and Liens identified

therein relate to monies received by a Debtor other than the Debtor with a secured obligation to

repay those monies.  The Elieff Proponents contend the Lehman Creditors may only assert a Claim

and Lien against a particular Debtor to the extent that particular Debtor actually received monies on

account of the subject Claim (rather than to the extent the Debtor guaranteed and secured repayment

of monies received by an Affiliate).

There are numerous problems with this theory of recovery, not the least of which is

that a guarantee or co-obligor obligation (and the lien securing such obligation) based upon monies

advanced to an Affiliate can only be set aside if the Debtor incurring such obligation or granting

such lien was insolvent, or was rendered insolvent (as insolvency is defined in section 544 and

applicable state law or section 548) by virtue of incurring the secured obligation at the time the

obligation and lien were incurred.  The Prior Elieff Disclosure Statement does not allege that the

subject cross-collateralization identified therein was incurred by any Debtor at a time when the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Debtor was, or was thereby rendered, insolvent.  The Lehman Creditors believe that in all, or

2    substantially all instances of cross-collateralization identified by the Elieff Proponents, the Debtor

3    incurring the secured obligation was not insolvent, nor was it rendered insolvent (as such term is

4    defined by applicable law) at the time the Lien and obligation were incurred.

5            Furthermore, the Elieff Proponents concede that the Liens and Claims of Lehman

6    Creditors cannot be set aside to the extent that funds were actually received by the obligor/pledgor.

7    Taking the amount of funds that the Elieff Proponents concede each of the relevant Debtors received

8    and comparing that number with the Debtors' estimate of the value of the related collateral pledged

9    in favor of the Lehman Creditors, it is clear that in only one instance involving a Voluntary Debtor's

10   Project (the Acton Project) is the amount of funds allegedly received ($380,000) less than the value

11   of the pledged collateral (in this case, $3.4 million).  Thus, even if the Fraudulent Transfer Claims

12   are valid, they would at best generate a recovery of approximately $3.02 million and then only for

13   the benefit of Creditors of the Acton Estate.  However, as Bankruptcy Code section 550 limits

14   recovery "for the benefit of the estate" and the Lehman Creditors contend that fraudulent transfer

15   claims cannot be prosecuted for the benefit of equity holders, the potential recovery on account of

16   the foregoing Fraudulent Transfer Claims would be capped at no more than approximately $1.4

17   million, the unsecured claims asserted against the Acton estate according to the Prior Elieff

18   Disclosure Statement.

19           Even if the fraudulent conveyance alleged with respect to the cross-collateralization

20   of the SSC Palmdale Loan had merit, the value to the estate of SSC Palmdale is zero, as noted by the

21   Elieff Proponents.  The collateral, SSC Palmdale's Allowed Interest in Palmdale Hills, therefore is

22   worthless.

23           Likewise, even if other theories alleged against the Lehman Creditors (described in

24   Article 4.5(c) and (d) of the Prior Elieff Disclosure Statement) were valid and the requisite

25   insolvency could be proven, the Elieff Proponents have conceded that the Claims and Liens of the

26   Lehman Creditors are valid at least to the extent of proceeds received by the obligor/pledgor.  As the

27   proceeds received by TD Plan Debtors SunCal Oak Knoll and SunCal Torrance ($103.5 million and

28   $45 million, respectively) exceed the estimate from SunCal of the value of the underlying pledged

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

collateral ($48 million and $25 million, respectively), the Fraudulent Transfer Claims identified in

Articles 4.5(c) and (d) of the Prior Elieff Disclosure Statement are without merit.

Finally, with respect to the claims identified in the Elieff Disclosure Statement

relating to the Interim Loan Agreement, assuming insolvency as of the date such obligations were

incurred can be proved, the maximum potential liability of the Lehman Creditors would be

approximately $1.5 million as to the Tesoro Estate and $4.5 million as to the Del Rio Estate.

However, based on the Elieff Proponents' own numbers, the unsecured claims at those estates total

approximately $290,000 and $270,000, respectively, therefore capping the maximum potential

recovery on account of such alleged Fraudulent Transfer Claims at approximately $560,000.

While the Lehman Creditors believe that the Fraudulent Transfer Claims outlined in

the Elieff Disclosure Statement are without merit, making assumptions most favorable to the

Debtors, the maximum aggregate exposure of Lehman Creditors to such Fraudulent Transfer Claims

is no more than approximately $2 million, and the probable value of litigation on such claims

significantly less.

### (d)     Alleged Preference Claims Against the Lehman Creditors.

The Elieff Proponents assert that Delta Coves, SunCal Century City and SunCal

Marblehead Heartland Master LLC made prepetition transfers in the one year preceding the Petition

Date to Lehman Creditors in the sums of approximately $6.5 million, $10.6 million, and $3.4

million, respectively.  The Prior Elieff Disclosure Statement asserts, without any further support, that

these payments are recoverable as preferences.  However, the Lehman Creditors contend that there is

absolutely no factual support in the Prior Elieff Disclosure Statement to support these contentions.

In particular, it would be necessary for the plaintiff to establish balance sheet insolvency (as required

by Bankruptcy Code section 547) in order to be able to maintain a preference recovery.

Furthermore, and perhaps more importantly, the Lehman Creditors assert (or in the case of SunCal

Century City, at all relevant times asserted) validly perfected first priority security interests and

deeds of trust in and to all of the material assets of the Debtors that the Elieff Proponents contend

may have made alleged preferential transfers.  Under such circumstances, a transfer of some or all of

the collateral of a validly perfected secured creditor (even an undersecured creditor) cannot

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

constitute a recoverable preferential transfer as it does not have the effect of depleting assets

otherwise available to pay unsecured creditors. Furthermore, as noted above, the Lehman Creditors

contend that pursuant to Bankruptcy Code section 550, preferences can only be recovered for the

benefit of unsecured creditors of the transferor. The Lehman Creditors believe that for these, and

other reasons that will be asserted at the appropriate time, the preference claims that have been

alleged against them are wholly, or largely, without merit and are unlikely to result in Creditors

receiving a meaningful recovery.

Finally, the status of any preference claim against Lehman Commercial (which is

itself a debtor in a chapter 11 proceeding before the United States Bankruptcy Court for the Southern

District of New York) is subject to the treatment in that chapter 11 case. Specifically, there is a

distinct possibility that such a claim may be treated as a general unsecured claim in Lehman

Commercial's bankruptcy, which claim is subject to an uncertain recovery.

The Elieff Proponents also contend that the foreclosure by Lehman ALI on its second

priority deed of trust against the Pacific Point Project in August 2008 constituted a preferential

transfer because there was no equity value supporting the second priority deed of trust.

"Specifically, the fair market value of the Pacific Point Project was and remains approximately $25

million and the alleged obligations securing the first deed of trust was approximately $100 million."

However, based upon the Elieff Proponents' own assertions, it is clear that the bankruptcy estate of

SJD Partners (and in turn, the unsecured creditors of that Estate) were not deprived of any value by

virtue of the alleged foreclosure. Indeed, based upon the Prior Elieff Disclosure Statement, Lehman

ALI, as the beneficiary under the first deed of trust, is undersecured by more than $75 million.

Under these circumstances, no valid preference claims can be asserted against the Lehman Creditors

based on the foregoing transactions.

(e)     **Alleged Fraud, Breach of Fiduciary Duty and Other Potential
Litigation Claims Against the Lehman Creditors.**

Article 4.7 of the Prior Elieff Disclosure Statement purports to set forth further claims

against the Lehman Creditors, based upon the Interim Loan Agreement, the Restructuring

Agreement of May 2008, and the Pacific Point Foreclosure. However, the narrative contained in the

Prior Elieff Disclosure Statement does not state any claim for relief or theory of recovery against the
Lehman Creditors based upon the alleged facts and, in reality, asserts nothing different from the
material allegations set forth in the Equitable Subordination Claims (more fully discussed in
Article 4.5).

**(f)        Challenge to Proofs of Claim with Respect to the Claims of the
Lehman Creditors.**

On or before the bar date for filing Proofs of Claim, the Lehman Creditors Filed
Proofs of Claim on account of all of the Lehman Loans.  All or portions of seven of the outstanding
loans to the Lehman Creditors (the "Repurchase Lehman Loans") were subject to repurchase
agreements with Fenway Capital.  The obligations under the subject repurchase agreements with
Fenway Capital had been guaranteed by the ultimate parent and Affiliate of the Lehman Creditors,
Lehman Brothers Holdings Inc. ("LBHI").  In connection with the bankruptcy cases of LBHI and
Lehman Creditor, Lehman Commercial, the subject repurchase agreement was unwound pursuant to
an agreement to which Fenway Capital and LBHI also were parties.  As a result, Lehman
Commercial presently holds whatever interests in the subject loans formerly were held by Fenway
Capital.

Based upon the original repurchase transactions, the Debtors moved to strike certain
of the Proofs of Claim Filed by the Lehman Creditors on the basis that they allegedly did not own
the Repurchase Lehman Loans when the Proofs of Claim were Filed.  The Lehman Creditors
opposed the motion, asserting that they did then own the Repurchase Lehman Loans because the
repurchase agreements with Fenway Capital were transfers for security only, and that they had the
power and authority to File the related Proofs of Claim.

The Bankruptcy Court held a hearing on the foregoing motion to strike on June 30,
2009.  At that hearing, the Bankruptcy Court determined, over the objection of the Lehman
Creditors, that the Repurchase Lehman Loans had actually been "sold" to Fenway Capital (rather
than having been pledged to Fenway Capital as collateral for a loan, as asserted by the Lehman
Creditors).  The Court entered an order on the foregoing issue on October 2, 2009 and the Lehman
Creditors appealed such Order.  A hearing on whether the Lehman Creditors were authorized to File

1   Proofs of Claim as agent for Fenway Capital was held on September 22, 2009 and, on December 21,

2   2009, the Court issued its Order Regarding Lehman Creditors' Authority To File Proofs Of Claim

3   As Agents Of Fenway Capital, LLC (the "Authority Order"), pursuant to which the Court held, *inter*

4   *alia*, that "the Lehman Creditors had the requisite authority to file the Proofs of Claim on behalf of

5   Fenway [Capital] as Fenway [Capital]'s Agents pursuant to Rule 3001(b) of the Federal Rules of

6   Bankruptcy Procedure." The Debtors have appealed.

7           At the same time, the Lehman Creditors believe, and the Voluntary Debtors continue

8   to dispute, that the Bankruptcy Court, in all events, recognized that not all of the relevant loans ever

9   were Repurchase Lehman Loans.

10          Even were the appeals all decided adversely to the Lehman Creditors, the Lehman

11  Creditors contend that the only effect would be that the Lehman Creditors would be unable to assert

12  the Lehman Creditor Deficiency Claims against the TD Plan Debtors' Estates. The Lehman

13  Creditors believe that it is well established and accepted that Creditors need not File Proofs of Claim

14  to preserve their Liens such that even if there were adverse determinations on appeal (such that if it

15  were determined that Fenway Capital owned all equitable interests in the subject Claims and failed

16  to File any timely Claims), such circumstance would not in any way invalidate or impair the subject

17  Liens or any of the rights and remedies relating to such Liens other than the ability to obtain an

18  unsecured deficiency claim.

19          **(g)     The Debtors' Disputes Relating to the Allowed Secured Claims of
    Fenway Capital Pursuant to Bankruptcy Code Section 506.**
20

21          Bankruptcy Code section 506(a) provides that an asserted secured claim is only an

22  Allowed Secured Claim to the extent of the value of such Creditors' interest in the Estate's interest

23  in such property. Bankruptcy Code section 506(d) provides that to the extent a lien secures a claim

24  against a debtor that is not an allowed secured claim, such lien is void subject to certain exceptions.

25  (One such exception where the lien is not voided is where the underlying claim is not Filed, as was

26  alleged as to the Repurchase Lehman Loans). Finally, Bankruptcy Code section 551 provides that

27  any liens that are void under section 506(d) are preserved for the benefit of the applicable debtor's

28  estate.

            The Voluntary Debtors contend that based upon the Lehman Creditors' appraised

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

values of certain Voluntary Debtors' Projects, there is no value to the collateral supporting certain of the Lehman Creditors' Liens against SunCal I, SunCal III, SunCal Bickford and SCC/Palmdale (all Voluntary Debtors). SunCal I, SunCal III, SunCal Bickford and SCC/Palmdale, on the one hand, and Lehman ALI and Lehman Commercial, on the other hand, entered into a stipulation resolving the valuation of such Liens, which, as of September 10, 2010, was approved both by the Bankruptcy Court in these Cases and by the New York Bankruptcy Court in the New York Bankruptcy Cases. Although collateral values being less than these liens is unfortunate for all Creditors, (a) as to SunCal Bickford, Lehman VD Lenders hold other more senior Liens on the same collateral that already are in excess of such collateral's value, (b) as to SCC/Palmdale's interest in Palmdale Hills, Lehman VD Lenders hold other senior Liens on the Project of Palmdale Hills, exhausting its value, (c) as to SunCal I, the Lehman VD Lenders are owed over $343 million and likely would dilute the Distributions due to any other Creditors, and (d) SunCal III is not believed to hold any real or personal property from which to obtain a Distribution for any Creditor.

**4.3**     **Significant Events In The Debtors' Chapter 11 Cases.**

    **4.3.1**    **Voluntary Debtors.**

Since the Petition Dates, beginning in November 6, 2008, the seventeen (17) Voluntary Debtors have continued to operate as a "debtors-in-possession" subject to the supervision of the Bankruptcy Court. The Voluntary Debtors are authorized to operate their businesses in the ordinary course during the Chapter 11 proceedings. Transactions outside the ordinary course of business must be approved by the Bankruptcy Court.

The Voluntary Debtors' Cases are jointly administered with each other pursuant to orders entered on November 10, 2008 and November 26, 2008. The Voluntary Debtors' Cases are being jointly administered with the Trustee Debtors' Chapter 11 Cases pursuant to an order entered on March 11, 2009.

The Voluntary Debtors have employed Winthrop Couchot Professional Corporation as their general insolvency counsel, Morgan Lewis & Bockius LLP as their special litigation counsel for the Southern District of New York and Miller Barondess, LLP as their special litigation counsel.

The Voluntary Debtors' Committee has employed Irell & Manella LLP as its counsel

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

08-13555-mg    Doc 11780-2    Filed 10/04/10    Entered 10/04/10 19:18:21    Exhibit B
Pg 69 of 197

1    pursuant to an order entered on February 13, 2009.

2          **4.3.2    Trustee Debtors.**

3          Orders for Relief were entered in the involuntary cases beginning on January 6, 2009.

4    The Trustee Debtors are represented by their duly-appointed Chapter 11 trustee, Steven M. Speier,

5    pursuant to orders of the Bankruptcy Court entered on January 15, 2009.

6          The Trustee has employed the Lobel Firm as the Trustee's general insolvency counsel

7    and Miller Baroness LLP as special litigation counsel.

8          The Trustee Debtors' Committee has employed Weiland, Golden, Smiley, Wang,

9    Ekvall & Strok, LLP as its counsel.

10          **4.3.3    The Debtors' Motions for Relief from Stay in the Lehman Commercial**

11    **Chapter 11 Proceedings.**

12          On November 10, 2008, the Debtors Filed a motion for an order modifying the

13    automatic stay in the Lehman Commercial Bankruptcy Proceeding to allow the Voluntary Debtors to

14    administer their own Cases to the extent that such Cases, and the relief requested by such Debtors

15    therein, may affect the rights of Lehman Commercial. The Voluntary Debtors also requested the

16    court to allow the Voluntary Debtors to proceed to obtain post-petition debtor-in-possession

17    financing on a priming lien basis that would subordinate Lehman Commercial's Claims and Liens

18    arising from the Ritter Ranch Loan Agreement and the SunCal Communities I Loan Agreement to

19    those of a proposed debtor-in-possession lender. Lehman Commercial opposed the motion on

20    November 18, 2008 and the objection was joined by the Lehman Commercial Official Creditors'

21    Committee. The motion was denied, without prejudice, by the New York Bankruptcy Court pursuant

22    to an order entered on November 21, 2008.

23          On April 21, 2010, the Debtors filed a motion in the New York Bankruptcy Court

24    seeking relief from Lehman Commercial's automatic stay to, *inter alia*, pursue the ES Action against

25    Lehman Commercial and to prosecute a plan seeking to, *inter alia*, equitably subordinate Lehman

26    Commercial's Claims.  The Trustee subsequently withdrew from the motion.  The Voluntary

27    Debtors further sought a ruling that LBHI's automatic stay does not apply to the foregoing efforts,

28    but if it did, relief from stay should be granted.  The Voluntary Debtors' motion was denied, without

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

prejudice, on May 12, 2010.  On May 28, 2010, the Voluntary Debtors filed a motion in the New

York Bankruptcy Court, seeking a stay of that Court's ruling pending appeal.  On June 16, 2010, the

Voluntary Debtors' motion was denied.  On June 17, 2010, the Voluntary Debtors filed a motion in

the United States District Court for the Southern District of New York, again seeking a stay pending

appeal.  On June 21, 2010, the motion was denied.  On August 27, 2010, the United States District

Court for the Southern District of New York affirmed the New York Bankruptcy Court's May 12,

2010 ruling.  The Voluntary Debtors have appealed to the United States Court of Appeals for the

Second Circuit.  That appeal is pending.

### 4.3.4   Certain of the Voluntary Debtors' Motion for Surcharge and Use of Cash Collateral.

On January 16, 2009, seven of the Voluntary Debtors Filed a motion seeking an order

authorizing Palmdale Hills to use and surcharge, pursuant to 11 U.S.C. § 506(c), and/or use the

purported cash collateral of Lehman Commercial arising from the Ritter Ranch Loan Agreement,

pursuant to 11 U.S.C. § 363(c)(2), in order to pay for the reasonable and necessary maintenance

expenses required to preserve the value of such Voluntary Debtors' Projects that are subject to deeds

of trust and other security held by Lehman Commercial.

Lehman Commercial objected to the motion and subsequently Filed a motion in the

New York Bankruptcy Court requesting the New York Bankruptcy Court to enforce its automatic

stay as to the motion. The motion was taken off calendar prior to any ruling by the New York

Bankruptcy Court.

### 4.3.5   Lehman Commercial's Motions for Relief from the Automatic Stay Against Certain of the Voluntary Debtors' Projects.

On January 23, 2009, Lehman Commercial and Lehman ALI Filed in the Bankruptcy

Court various motions for relief from the automatic stay against Palmdale Hills, SCC/Palmdale,

SunCal Beaumont, SunCal Summit Valley, SunCal Emerald, SunCal Bickford, Acton Estates,

SunCal Johannson, and SCC Communities I (the "Lehman Creditors' Stay Motions") pursuant to

which Lehman Commercial and Lehman ALI sought to foreclose on, *inter alia,* their deeds of trust

encumbering certain of the Debtors' Projects.

On February 4, 2009, the Voluntary Debtors Filed an opposition to Lehman Commercial and Lehman ALI's requests for relief from stay. On February 13, 2009, Lehman Commercial and Lehman ALI Filed a reply to the Voluntary Debtors' opposition primarily asserting that the ES Action would violate the automatic stay in the bankruptcy cases of Lehman Commercial and LBHI.

On March 10, 2009, the Bankruptcy Court entered an order denying the Lehman Creditors' Stay Motion without prejudice. Lehman Commercial appealed the Bankruptcy Court's order.

On December 15, 2009, the Bankruptcy Appellate Panel ruled that the ES Action may not proceed unless prosecuted in the bankruptcy cases of Lehman Commercial and LBHI or until stay relief is granted in the bankruptcy cases of Lehman Commercial and LBHI. The Voluntary Debtors have appealed. Confirmation of the Plan would moot the appeal as to the VD Plan Debtors.

### 4.3.6 The Debtors' Filing of the ES Action Against the Lehman Creditors.

(*See* Disclosure Statement Section 4.2.5(b) above.)

### 4.3.7 Certain Debtors' Filing of the Sales Procedures Motion.

On February 18, 2009, the Trustee for the Trustee Debtors and certain Voluntary Debtors Filed a motion (the "Sale Procedures Motion") seeking approval of overbid procedures for a purchase by D.E. Shaw of a significant portion of the Debtors' assets for $200 million and its purported assumption of certain related bond liabilities personally guaranteed by Elieff. Although the Sale Procedures Motion indicated that D.E. Shaw would assume the bond liabilities as part of its purchase of the properties, there was no such commitment in D.E. Shaw's commitment letter. The commitment letter provided that $175 million of the purchase price would be paid in cash and the remaining $25 million would be in the form of an assumption of some of the Debtors' contractual and other obligations. As part of the Sale Procedures Motion, the Trustee and Debtors seeking relief conditioned the sale on the disallowance of the Lehman Creditors' credit bid rights and the transfer of their Liens to the Debtors.

On March 10, 2009, the Bankruptcy Court commenced a hearing on the Sale Procedures Motion. At that hearing, the Bankruptcy Court held that the automatic stay in the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lehman Commercial Bankruptcy Proceeding did not apply to the Sales Procedures Motion and continued the Sales Procedures Motion to March 20, 2009.

At the March 20, 2009 hearing, the parties agreed to continue the Sale Procedures Motion to allow settlement discussions to take place. The Sale Procedures Motion was continued from time to time.

**(a)**     **Lehman Commercial's Stay Assertion and the Sales Procedure Motion.**

On March 9, 2009, the Trustee, SCC Communities, Del Rio, and Tesoro Filed emergency motions for an order that the automatic stay in the Lehman Commercial Bankruptcy Proceeding does not apply to the Sales Procedures Motion.

On March 10, 2009, Lehman Commercial, Lehman ALI, Northlake Holdings and OVC Holdings Filed responses to the emergency motions, asserting that Lehman Commercial's automatic stay prevented the Bankruptcy Court from hearing the Sales Procedures Motion.

On March 10, 2009, the Bankruptcy Court held that the automatic stay in the Lehman Commercial Bankruptcy Case does not apply to the Sales Procedures Motion.

**(b)**     **Danske Bank's Intervention into the Sales Procedures Motion.**

On March 25, 2009, Danske Bank Filed a supplemental response to the Sales Procedures Motion. Danske Bank's supplemental response asserts various allegations, including the allegations that Danske Bank has a first-priority deed of trust on the 10000 Santa Monica Project by the virtue of the SunCal Century City Loan Agreement and related loan documents and that the Secured Claim and Lien arising from the SunCal Century City Loan Agreement and related loan documents are not subject to a bona fide dispute because there has been no allegation of wrongdoing by Danske Bank and that Danske Bank is a holder in due course that effectively cuts off any defenses to the loan based on the Lehman Creditors' alleged inequitable conduct.

On April 1, 2009, the Debtors Filed a reply to Danske Bank's supplemental response asserting that Danske is not a holder in due course and that Danske Bank took the assignment of the disputed loan subject to all defenses thereto, including the defense of equitable subordination described below.

In August 2009, the Sales Procedures Motion was modified to exclude the 10000

Santa Monica Project owned by SunCal Century City and to reduce the purchase price to $150 million pursuant to a tentative settlement agreement between Danske Bank and the Trustee. Based upon disclosures made by the Trustee, pursuant to that settlement agreement, the Trustee will convey the 10000 Santa Monica Project to Danske Bank in exchange for $5.3 million. The Trustee has further disclosed that the settlement agreement provides that SunCal Century City will retain any right it has, or may have, to pursue any Avoidance Actions against the Lehman Creditors with respect to the 10000 Santa Monica Project and SunCal Century City.

        **(c)    Lehman's Disclosure of the Repurchase Agreement Involving Certain Loans with the Debtors.**

On or about April 15, 2009, the Lehman Creditors provided a letter to the Debtors disclosing the Repurchase Lehman Loans.

        **(d)    The Modifications to the Sales Procedure Motion.**

The Sales Procedures Motion was thereafter modified to include a purchase of the Assets of only the Trustee Debtors and the D.E. Shaw proposed aggregate purchase price was reduced from $200 million to $195 million.

        **(e)    The Continuance of the Sales Procedure Motion.**

As described more fully below in Disclosure Statement Section 4.3.8(b), on December 10, 2009, the Lehman Creditors filed the Stipulation Authorizing Use of Cash Collateral and Approving Financing For Covered Professional Expenses and Granting Administrative Expense Claims by and among Lehman ALI, Northlake Holdings, and OVC Holdings, on the one hand, and the Trustee, and a joint motion to approve such stipulation. Pursuant to such stipulation, the Lehman Creditors and the Trustee agreed, among other things, to continue the Sale Procedures Motion. Pursuant to the order entered by the Bankruptcy Court on December 17, 2009, the Court ordered that the Sale Procedures Motion will be continued to a date following the conclusion of the confirmation hearing(s) in connection with any plan of reorganization or liquidation in these Cases.

**4.3.8   The Lehman Administrative Loans.**

        **(a)    The Initial Stipulation.**

At a hearing on March 20, 2009, the Bankruptcy Court approved a stipulation (the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"April 2009 Financing Stipulation") among Lehman ALI, Palmdale Hills, SunCal Emerald, SunCal Bickford, Acton Estates, SunCal Oak Valley, SunCal Heartland, SunCal Northlake, SunCal Marblehead, SunCal Century City, SunCal PSV, Delta Coves, and SunCal Oak Knoll, pursuant to which each of the foregoing Debtors was authorized to borrow from Lehman ALI and Lehman ALI agreed to make individual loans in an aggregate amount equal to $1,790,572 for the purposes of paying the costs and expenses provided in their 30-day budgets and for paying up to $250,000 of certain professional expenses limited to settlement efforts. The loan proceeds were used to pay for the most urgent and critical public health and safety issues on certain of the Projects. The April 2009 Financing Stipulation provided Lehman ALI superpriority administrative status in each of the Debtor borrowers' Estates on account of such loans, and such loans also have priming lien status on all of the borrowing Debtors' Assets with the exception of SunCal Century City in which such loans have junior priority.

        **(b)**      **The Subsequent Stipulations Regarding Use of Lehman Creditors' Cash Collateral and/or Provision by the Lehman Creditors of Secured or Administrative Loans.**

The Lehman Creditors, the Trustee, and the Voluntary Debtors, as applicable, subsequently have entered into additional stipulations providing for financing by the Lehman Creditors and/or consent to the use of the Lehman Creditors' cash collateral.

The following is a breakdown of the VD Plan Debtors' loans (approximate, unpaid net amount as of August 31, 2010) from the Lehman Creditors under the applicable financing stipulations and the sum of the Lehman Creditors' Administrative Claim for monies advanced after the Petition Dates:

| LEHMAN DIP LOAN SUMMARY | |
| --- | --- |
| **VD PLAN DEBTOR NAME** | **LEHMAN ADMINISTRATIVE LOAN TOTAL** |
| Acton Estates | $5,315 |
| SunCal Bickford | $12,754 |
| SunCal Emerald | $10,223 |

58

| LEHMAN DIP LOAN SUMMARY | |
|---|---|
| **VD PLAN DEBTOR NAME** | **LEHMAN ADMINISTRATIVE LOAN TOTAL** |
| Palmdale Hills | $45,930 |
| **Total** | **$74,222** |

The following summarizes the various stipulations (including those affecting the Trustee Debtors):

(i)     *Stipulation Pursuant to 11 U.S.C. §§362, 363, 364, and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Status; and (3) Modifying the Automatic Stay to the Extent Necessary* (the "December 2009 Trustee Debtor Financing Stipulation"), by and between Lehman ALI, on the one hand, and the Trustee on behalf of certain of the Trustee Debtors as borrowers thereunder, on the other hand, dated December 7, 2010.  Pursuant to the December 2009 Trustee Debtor Financing Stipulation, each of the Trustee Debtor borrowers was authorized to borrow from Lehman ALI and Lehman ALI agreed to make individual loans in an aggregate amount equal to $2,124,937.00 for the purposes of paying the health and safety costs and expenses provided in their 120-day budgets.  The borrowers' obligations under such stipulation are secured by first priority security interests and liens and superpriority claims (junior only to the claims specified under the December 2009 Trustee Debtor Financing Stipulation), and will be treated as administrative expense claims owed to Lehman ALI.  The December 2009 Trustee Debtor Financing Stipulation was approved by the Bankruptcy Court on an interim basis by the entry of an interim order on November 20, 2009 and on a final basis by the entry of a final order on December 17, 2010.

(ii)     *Stipulation Authorizing Use of Cash Collateral and Approving Financing For Covered Professional Expenses and Granting Administrative Expense Claims* (the "Professional Fees Funding Stipulation"), by and among Lehman ALI, Northlake Holdings, and OVC Holdings, on the one hand, and the Trustee on behalf of the borrowers thereunder, on the other hand, dated December 8, 2010.  Pursuant to the Professional Fees Funding Stipulation, the Lehman Creditors consented to the use of their cash collateral and Lehman ALI agreed to make administrative loans in

the maximum total amount of $2,700,000.00 (the "Professional Fees Funding Amount") to pay

certain professional fees and expenses described therein.  Pursuant to the Professional Fees Funding

Stipulation, the portions of the Professional Fees Funding Amount used pursuant to the terms of the

stipulation will be treated as administrative expense claims owed to the Lehman Creditors, as

applicable.  The Professional Fees Funding Stipulation was approved by the Bankruptcy Court by

the entry of an order on December 17, 2009.

           (iii)    The SunCal Oak Knoll Financing Stipulation by and between Lehman ALI

and the Trustee on behalf of SunCal Oak Knoll, dated December 7, 2010.  As set forth above,

pursuant to the SunCal Oak Knoll DIP Stipulation, Lehman ALI made a secured loan to SunCal Oak

Knoll in an aggregate amount not to exceed $4,400,000.00.[6]  The obligations under the SunCal Oak

Knoll Financing Stipulation are secured by first priority security interests and liens and superpriority

claims, and will be treated as an administrative expense claims under the Bankruptcy Code.  The

SunCal Oak Knoll Financing Stipulation was approved by the entry of an order on January 5, 2010.

           (iv)    *Stipulation Pursuant to 11 U.S.C. §§362, 363, and 364: (1) Authorizing the*

*Use of Cash Collateral and Alleged Unencumbered Cash; (2) Approving Postpetition Financing; (3)*

*Providing Administrative Expense Status; and (4) Modifying the Automatic Stay to the Extent*

*Necessary* (the "December 2009 Voluntary Debtor Financing Stipulation") by and between Lehman

Commercial, Lehman ALI, Northlake Holdings, OVC Holdings, on the one hand, and certain of the

Voluntary Debtors as borrowers thereunder, on the other hand, dated December 8, 2009.  The

December 2009 Voluntary Debtor Financing Stipulation was approved by the entry of an order by

the Bankruptcy Court on December 17, 2009, and Lehman Commercial's entry into the December

2009 Voluntary Debtors' Stipulation was approved by the New York Bankruptcy Court on

December 17, 2009.

           Pursuant to the December 2009 Voluntary Debtors' Stipulation, the parties agreed to

---

[6] As to the uses of such funds, *see* Disclosure Statement Section 4.2.1. The SunCal Oak Knoll Financing Stipulation also provides that the proof of claim filed (the "CST Claim") by CST Environmental be deemed an allowed general unsecured claim in the amount of $3,617,869.56, which amount is the filed amount of such claim less the proceeds to be paid to CST Environmental in accordance with the stipulation. In consideration for Lehman ALI's agreement to fund such payment, CST Environmental has agreed to transfer the CST Claim to Lehman ALI. All rights and benefits in connection with the CST Environmental Claim will be transferred to Lehman ALI, with the sole exception of the right to vote on any plan of reorganization or liquidation in these cases, which right with respect to such Claim is waived by Lehman ALI.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the following financing provisions:

(1)    Use of Cash Collateral Held in Ritter Accounts

Lehman Commercial consented to the use by Palmdale Hills of cash collateral held in a certain escrow account in an amount not to exceed $2,191,008.89 solely for the purpose of (i) paying the costs and expenses attributable to the completion of the construction of certain improvements relating to Elizabeth Lake Road located at the Ritter Ranch Project and (ii) reimbursing Palmdale Hills in the amount of $148,560.63 of "Alleged Unencumbered Cash"[7] used to pay such costs and expenses.  In the event a party other than a Lehman Creditor (or a nominee and/or successor thereof) purchases the Ritter Ranch Project pursuant to a sale of the Ritter Ranch Project under section 363 of the Bankruptcy Code or otherwise, such purchaser is required to repay such portion of the funds used from the subject escrow account as provided for in the stipulation, in cash, by depositing such amount in such escrow account upon the closing of the sale of the Ritter Ranch Project.

Lehman Commercial also consented to the use by Palmdale Hills of cash collateral held in the Ritter Pledged Account for the health and safety costs set forth in the 120-day budget. Such amounts will be treated as administrative expense claims.

Lastly, Lehman Commercial consented to, and Palmdale Hills was authorized to make, individual loans to the respective borrowers (with the exception of Palmdale Hills) from the Ritter Pledged Account, the proceeds of which will be used by the respective borrowers for the purpose of paying the health and safety costs and expenses attributable to each such borrower as set forth in the 120-day budgets.  All amounts borrowed from the Ritter Pledged Account will be treated as administrative expense claims.

---

[7] Certain of the Voluntary Debtors maintain bank accounts containing cash or cash equivalents, which the Lehman Creditors assert are subject to perfected liens and therefore constitute the Lehman Creditors' "cash collateral" under section 363 of the Bankruptcy Code.  The Voluntary Debtors dispute such contention, and assert that such cash and cash equivalents are not subject to perfected liens of the Lehman Creditors and therefore do not constitute "cash collateral" under section 363 of the Bankruptcy Code.  The cash and cash equivalents held by the Voluntary Debtors, excluding the cash and cash equivalents (i) held by Fidelity National Title Insurance Company ("Fidelity") in the escrow account (the "ELR Escrow Account") pursuant to that certain escrow agreement (as amended and/or supplemented), dated June 25, 2008, by and among Palmdale Hills, Lehman Commercial and Fidelity and (ii) held by California Bank & Trust in account no. 3090340741 (the "Ritter Pledged Account" and, collectively with the ELR Escrow Account, the "Ritter Accounts"), are referred to in the December 2009 Voluntary Debtors' Stipulation as the "Alleged Unencumbered Cash."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(2)    Use of Alleged Unencumbered Cash

The Lehman Creditors also consented to the use by the borrowers of the Alleged Unencumbered Cash for the purpose of paying the reasonable fees and expenses incurred by professionals retained in the Voluntary Debtors' cases and, at the Voluntary Debtors' option, to make loans to the Trustee Debtors for the purpose of paying the professionals retained in the Trustee Debtors' cases.  In addition, the Lehman Creditors consented to the use by each Voluntary Debtor of Alleged Unencumbered Cash held by such Voluntary Debtor in an amount equal to 10% in excess of the amount allocable to each such Voluntary Debtor in the 120-day budgets.  Further, Lehman Commercial consented to the use by Palmdale Hills of Alleged Unencumbered Cash held by Palmdale Hills in an amount equal to 10% in excess of the aggregate amount of the 120-day budget allocable to Palmdale Hills.  Lastly, Lehman Commercial consented to, and Palmdale Hills was authorized to make, from Alleged Unencumbered Cash held by Palmdale Hills, individual loans to each of the other borrowers in amounts equal to 10% in excess of the amounts allocable to each such borrower in the 120-day budgets.  The amounts used by the borrowers under the December 2009 Voluntary Debtor Financing Stipulation will be treated as administrative expense claims provided that the conditions set forth in such stipulation have been satisfied.

(v)    *Stipulation to Enable Timely Payment of Post-Petition Real Property Taxes By and Between Lehman ALI, Inc. and Chapter 11 Trustee Pursuant To 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay to the Extent Necessary* (the "Tax Financing Stipulation"), by and between Lehman ALI, on the one hand, and the Trustee on behalf of certain of the Trustee Debtors as borrowers thereunder, on the other hand, dated April 7, 2010.  Pursuant to the Tax Financing Stipulation, Lehman ALI agreed, conditioned as set forth in the stipulation, to make available to each of the borrowers thereunder, individual loans in an aggregate amount not to exceed $8.7 million, the proceeds of which will be used by the respective borrowers solely for purposes of paying sufficient amounts to enable them to avoid incurring the 10% penalty for failing to pay the certain post-petition real property taxes by April 12, 2010.  The obligations under the Tax Financing Stipulation are secured by first priority

security interests and liens and superpriority claims (junior only to the claims specified in the Tax

Financing Stipulation), and will be treated as an administrative expense claims under the Bankruptcy

Code. The Tax Financing Stipulation was approved by the Bankruptcy Court on an interim basis by

the entry of an order on April 8, 2010 and on a final basis by the entry of an order on April 27, 2010.

         (vi)    *Stipulation By and Between Lehman ALI, Inc. and Chapter 11 Trustee*

*Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Approving Senior Secured Superpriority*

*Postpetition Financing; (2) Granting Liens and Providing Superpriority Administrative Expense*

*Status; and (3) Modifying Automatic Stay to the Extent Necessary* (the "April 2010 Trustee Debtor

Financing Stipulation") by and between Lehman ALI, on the one hand, and the Trustee on behalf of

certain of the Trustee Debtors as borrowers thereunder, on the other hand, dated April 22, 2010.

Pursuant to the April 2010 Trustee Debtor Financing Stipulation, Lehman ALI agreed to make

available to each borrower thereunder individual loans in an aggregate amount not to exceed

$2,185,972.00, the proceeds of which will be used by the respective borrowers solely for purposes of

paying the health and safety costs and expenses attributable to each such borrower's project as set

forth in the 120-day budgets. Repayment of such loans is secured by first priority security interests

and liens and superpriority claims (junior only to the claims specified in the April 2010 Trustee

Debtor Financing Stipulation), and will be treated as administrative expense claims. In addition,

Lehman ALI agreed to pay directly to the applicable insurers the insurance premiums in connection

with the provision of insurance coverage for the borrowers' Projects up to the aggregate amount of

$219,157.00. The insurance amounts paid by Lehman ALI will be treated as an administrative

expense claims. The April 2010 Trustee Debtor Financing Stipulation was approved by the

Bankruptcy Court on a final basis by the entry of an order on June 11, 2010.

         (vii)    *Stipulation Pursuant to 11 U.S.C. §§ 362, 363, 364, and 507: (1) Authorizing*

*the Use of Alleged Unencumbered Cash; (2) Granting Administrative Expense Claims; and (3)*

*Modifying Automatic Stay to the Extent Necessary* (the "June 2010 Voluntary Debtor Financing

Stipulation") by and between Lehman ALI, Northlake Holdings, OVC Holdings, on the one hand,

and certain of the Voluntary Debtors as borrowers thereunder, dated June 4, 2010. Pursuant to the

June 2010 Voluntary Debtor Financing Stipulation, the Lehman Creditors agreed to the borrowers'

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

use of "Alleged Unencumbered Cash"[8] (i) in the amount of \$423,172.00 to pay necessary expenses

to maintain the borrowers' Projects pursuant to 120-day budgets and (ii) amounts necessary to pay

the reasonable fees and expenses incurred by professionals retained in the Voluntary Debtors' cases

(subject to the conditions set forth in such stipulation). In addition, Lehman Commercial consented

to and Palmdale Hills was authorized to make, from Alleged Unencumbered Cash held by Palmdale

Hills, individual loans: (a) to each of the other borrowers solely for the purpose of paying (i) the

costs and expenses attributable to each such borrower as set forth in the budgets attached to the

stipulation and (ii) the reasonable fees and expenses incurred by professionals retained in the

Voluntary Debtors' cases, including Miller Barondess, LLP (the "Miller Firm"); and (b) by separate

Bankruptcy Court approval, to the Trustee Debtors for the purpose of paying the reasonable fees and

expenses incurred by professionals retained in the Trustee Debtors' cases, including the Miller Firm;

provided, however, that: (a) Palmdale Hills is permitted to make individual loans from Alleged

Unencumbered Cash held by Palmdale Hills only to borrowers or Trustee Debtors that have used,

and accordingly no longer hold, any Alleged Unencumbered Cash; and (b) the use of any Alleged

Unencumbered Cash for payments to the Miller Firm will be subject to the terms and conditions set

forth in the *Order Granting Amended Joint Application for Authority to Employ Miller Barondess,

LLP as Special Litigation Counsel* [D.E. 1061]. The amounts used by the borrowers under the June

2010 Voluntary Debtor Financing Stipulation will be treated as administrative expense claims

provided that the conditions set forth in such stipulation have been satisfied. In addition, Lehman

ALI agreed to pay directly to the applicable insurers the insurance premiums in connection with the

provision of insurance coverage for the borrowers' Projects up to the aggregate amount of

\$42,218.00. The insurance amounts paid by Lehman ALI will be treated as administrative expense

claims. The June 2010 Voluntary Debtor Financing Stipulation was approved by the Bankruptcy

Court on a final basis by the entry of an order on July 9, 2010.

---

[8] Certain of the Voluntary Debtors maintain bank accounts containing cash or cash equivalents, which the Lehman Creditors assert are subject to perfected liens and therefore constitute the Lehman Creditors' "cash collateral" under section 363 of the Bankruptcy Code. The Voluntary Debtors dispute such contention, and assert that such cash and cash equivalents are not subject to perfected liens of the Lehman Entities and therefore do not constitute "cash collateral" under section 363 of the Bankruptcy Code. The cash and cash equivalents held by the Voluntary Debtors is referred to in the June 2010 Voluntary Debtor Financing Stipulation as the "Alleged Unencumbered Cash."

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(c)    Voluntary Debtors' Surcharging and Financing Motions**

On September 1, 2009, five of the Voluntary Debtors and the Trustee for eight of the Trustee Debtors filed the *Voluntary Debtors' and Trustee's Motion for Order (1) Authorizing Surcharge Under 11 U.S.C. Section 506(c), or, In the Alternative, Use of Cash Collateral, and (2) Compelling Release and Turnover of Undrawn Pledged Accounts* (the "Surcharge/Cash Collateral Motion") seeking authority to surcharge collateral pursuant to Bankruptcy Code § 506(c) or use the alleged "cash collateral" of the Lehman Creditors for the purpose of addressing public health, safety and other issues relating to the moving Trustee Debtors' and Voluntary Debtors' Projects.  In the motion, the Trustee for the moving Trustee Debtors and moving Voluntary Debtors proposed a 120-day budget with expenses totaling $6,483,316.  The Lehman Creditors objected to the Surcharge/Cash Collateral Motion.

On October 15, 2009, the Voluntary Debtors filed the *Voluntary Debtors' Motion For Order (1) Approving Acquisition's Proposal, (2) Authorizing Disposition Of Certain Depository Accounts, (3) Rejecting Cost Sharing Agreement With Anaverde LLC, And (4) Turnover Of Funds* (the "Acquisitions Financing Proposal Motion"), which sought authority to use the Lehman Creditors' cash collateral for certain expenses and to authorize loans on an administrative expense basis from SCC Acquisitions to pay professional fees and expenses, up to a cap of $2.7 million.  The Lehman Creditors opposed the motion.

After extensive negotiations, the Lehman Creditors, the Voluntary Debtors and the Trustee entered into the December 2009 Voluntary Debtor Financing Stipulation, pursuant to which the Voluntary Debtors and the Trustee agreed that the Surcharge/Cash Collateral Motion and the Acquisitions Financing Proposal Motion were resolved effective as of December 17, 2009.[9]

**4.3.9    The Contractors' Successful Motions for Relief from Stay to Pursue the Bond Claims.**

Various contractors of the Debtors that were hired to perform work on some of the Projects have Filed motions for relief from stay with the Bankruptcy Court to pursue their purported

---

[9] The December 2009 Voluntary Debtor Financing Stipulation also provided that the Voluntary Debtors' *Motion for Reconsideration of DIP Order Entered on April 17, 2009* (the "Reconsideration Motion") was deemed withdrawn. Under the Reconsideration Motion, which was opposed by the Lehman Creditors, the Voluntary Debtors sought reconsideration by the Bankruptcy Court of the April 2009 Financing Stipulation.

Bond Claims against the Bond Issuers. These creditors have requested the Bankruptcy Court relief from the automatic stay to allow such creditors to enforce certain Claims that such creditors allege to have against some of the Debtors, including rights to payment under certain surety bonds that are alleged to have been issued in favor of such creditors. The Debtors opposed the motions on the grounds that the various Debtors are indispensible parties. The Court conditionally granted the motions provided that the Bond Claimants are able to sever the Debtors from their proceedings on the surety bonds against the Bond Issuers.

**4.3.10 The Voluntary Debtors' Motion Pursuant to Bankruptcy Code Section 506(d).**

(*See* Disclosure Statement Section 4.2.5(g) above.)

**4.3.11 The Debtors' Motions to Strike the Claims and Pleadings Arising from the Repurchase Lehman Loans**

(*See* Disclosure Statement Section 4.2.5(f) above.)

**4.3.12 The Debtors' Denied Preliminary Injunction Motion Against the Holders of Bond Claims.**

On February 20, 2009, the Debtors Filed a complaint and a motion for preliminary injunction, pursuant to which the Debtors sought a preliminary injunction against the Holders of Bond Claims from pursuing such Claims.

On February 23, 2009, the Bankruptcy Court denied the Debtors' request for a temporary restraining order and granted the Debtors' request to require the defendants thereon to show cause why the motion for preliminary injunction should not be granted.

On March 2, 2009, several Bond Claimants objected to the motion for the preliminary injunction. The objections generally alleged that the Debtors failed to show that the balancing of the equities favored granting the preliminary injunction versus the harm to the Bond Claimants.

At a hearing held on March 4, 2009, the Court denied the motion for preliminary injunction and the underlying complaint has subsequently voluntarily been dismissed without prejudice.

### 4.3.13  The Debtors' Potential Preferential Transfers.

The Debtors' Schedules and Statement of Financial Affairs, which are on file with the Bankruptcy Court and available for viewing, provide a list of all payments made to creditors, other than Insiders, for the 90 days preceding the respective Petition Dates, and all payments made to insiders during the one year preceding the respective Petition Dates.

Below is a summary showing the total payments by each VD Plan Debtor to non-insiders within the 90 days preceding the Petition Date for each VD Plan Debtor, as disclosed in the Schedules and Statement of Financial Affairs.

| NAME OF DEBTOR | AMOUNT TRANSFERRED |
|---|---|
| Acton Estates | $1,300.00 |
| SunCal Beaumont | $25,244.97 |
| SunCal Bickford | $133,669.98 |
| SunCal I | $0.00 |
| SunCal Emerald | $128,287.10 |
| SunCal Johansson | $26,187.00 |
| Kirby Estates | $0.00 |
| Palmdale Hills | $6,002,491.87 |
| SCC Communities | $500.00 |
| Seven Brothers | $0.00 |
| SunCal Summit Valley | $39,649.77 |
| Tesoro | $659.00 |
| Total | **$6,357,989.69** |

To the extent these Litigation Claims would be against the Lehman Creditors, they believe they have substantial defenses.  In any event, such Litigation Claims against all Lehman Related Parties are waived under the Plan.

### 4.3.14  The Voluntary Debtors' Substantive Consolidation Motion

On September 24, 2009, the Voluntary Debtors filed a motion for substantive consolidation of some, but not all, of the Debtors' assets and liabilities, as well as non-debtor LV Pacific Point LLC.  The substantive consolidation motion did not include the Estates of Seven Brothers, Kirby Estates, SunCal Beaumont or SunCal Johannson, ostensibly for the reason that "such Debtors do not have a Lehman Creditor as their primary Secured Creditor, do not have any Assets or value, or do not have unsecured creditors".  The Lehman Creditors did not believe that the

substantive consolidation motion had any merit.  The motion was withdrawn, without prejudice to its

renewal.

### 4.3.15  Villa San Clemente Turnover Motion against SunCal Marblehead

On April 8, 2010, Villa San Clemente, LLC ("VSC") filed a motion (the "VSC

Turnover Motion") for an order determining that certain funds in the approximate amount of $1.2

million held in an escrow account were not property of SunCal Marblehead's estate and/or to compel

the Trustee to assume or reject a real property purchase and sale agreement (the "VSC APA") related

to the escrowed funds and described by VSC as an "executory contract."  The Trustee subsequently

filed an opposition to such motion.  On May 27, 2010, the Bankruptcy Court entered an order

denying the VSC Turnover Motion in its entirety.

On June 10, 2010, VSC filed a motion to reconsider such order (the "VSC

Reconsideration Motion"), and the Trustee subsequently filed an opposition to such motion.  On

August 2, 2010, the Bankruptcy Court entered an order partially granting the VSC Reconsideration

Motion solely to the extent that it sought clarification that, in denying the VSC Turnover Motion, the

Bankruptcy Court did not make any ruling whether the VSC APA was an executory contract.

### V

### LEHMAN VD LENDERS' PLAN

### 5.1    Treatment of Unclassified Claims.

As required by the Bankruptcy Code, the Plan places Claims and Interests into

various Classes according to their right to priority.  However, in accordance with Bankruptcy Code §

1123(a)(1), certain types of Claims are not classified in any Classes under the Plan and the

Proponents have not placed such Claims in a Class.  These Claims are "unclassified."  As to Allowed

Administrative Claims and Allowed Priority Tax Claims, these Claims are not considered Impaired,

and they do not vote on the Plan because they are automatically entitled to specific treatment

provided for them in the Bankruptcy Code.  The treatment of these unclassified Claims is as

provided below.

### 5.1.1    Treatment of Allowed Administrative Claims.

Except to the extent that the Holder of an Allowed Administrative Claim agrees to a

different treatment, and subject to the Administrative Claim Bar Date set forth in the Plan, the

Liquidating Trustee will pay each Allowed Administrative Claim in full, in Cash, on the later of (i)

the Effective Date, (ii) within ten (10) Business Days after the date such Administrative Claim

becomes an Allowed Administrative Claim, or (iii) the date such Allowed Administrative Claim

becomes due according to its terms. Notwithstanding the foregoing, any Allowed Administrative

Claim representing obligations incurred prior to the Effective Date in the ordinary course of post-

petition business by the VD Plan Debtors (including, without limitation, post-petition trade

obligations and routine post-petition payroll obligations) will be paid in full or performed by the

Liquidating Trustee in the ordinary course of business, in accordance with the terms of the particular

obligation.

> **(a)** **Treatment and Repayment of the Lehman Administrative Loan(s).**

The Lehman Administrative Loans (certain post-petition and pre-Confirmation

financing provided by Lehman ALI and/or other Lehman Related Parties pursuant to order(s) of the

Bankruptcy Court, as more fully defined above) are Allowed in the amount loaned or advanced by

Lehman ALI and/or other applicable Lehman Related Parties after the commencement of the Cases

net of any repayment thereof, will be paid in Cash in full on the Effective Date from the Lehman

Creditor Distribution Funding or will be payable from the Lehman Creditor Distribution Funding at

such later time and on such other terms as the Lehman VD Lenders may agree.  Pending any such

payment or during a period of voluntary deferral by Lehman ALI and/or Lehman Related Parties, the

Lehman Administrative Loans will continue to have a first priority Lien against the respective Assets

securing such loans as of the moment prior to the Effective Date, including any Cash of the VD Plan

Debtors, such as may be deposited in the Plan Reserve or Post-Confirmation Accounts, and any

proceeds thereof.

> **(b)** **Administrative Claim Bar Date.**

Any Administrative Claim which is subject to an Administrative Claim Bar Date and

not Filed by the applicable Administrative Claim Bar Date will not be Allowed, and no Distribution

will be made on account of any such Administrative Claim.

(i)     General Administrative Claim Bar Date.

All applications of Professionals for final Professional Fees for services rendered and for reimbursement of expenses incurred on or before the Effective Date and all other requests for payment of Administrative Claims incurred before the Effective Date under sections 507(a)(2) or 507(b) of the Bankruptcy Code (except only for (i) post-petition, ordinary course trade obligations and routine post-petition payroll obligations incurred in the ordinary course of the VD Plan Debtors' postpetition business, for which no bar date will apply, and (ii) post-petition tax obligations, for which the bar date described in the following section will apply) will be Filed with the Bankruptcy Court and served upon the Liquidating Trustee no later than the General Administrative Claim Bar Date (the first Business Day following the sixtieth (60th) day after the Confirmation Date), unless such date is extended by the Bankruptcy Court after notice to the Liquidating Trustee.  Any such request for payment of an Administrative Claim that is subject to the General Administrative Claim Bar Date and that is not Filed and served on or before the General Administrative Claim Bar Date will be forever barred; any party that seeks payment of Administrative Claims that is required to File a request for payment of such Administrative Claims and does not File such a request by the deadline established in the Plan, will be forever barred from asserting such Administrative Claims against the VD Plan Debtors, their properties or assets or the successors thereto, including, without limitation, the Liquidating Trustee, Lehman Nominees and the VD Plan Debtors' Estates.

(ii)    Administrative Tax Claim Bar Date.

All requests for payment of Administrative Claims by a governmental unit for Taxes (and for interest and/or penalties related to such Taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the applicable Petition Date through and including the Effective Date ("Administrative Tax Claims") and for which no bar date has otherwise previously been established, must be Filed and served on the Liquidating Trustee on or before the later of: (1) sixty (60) days following the Effective Date; or (2) 180 days following the date that the tax return for such tax year or period to which such Taxes relate is required to be filed with the applicable governmental unit. Any Holder of an Administrative Tax Claim that is required to File a request for payment of such Taxes and does not File and properly serve such a request by

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the applicable bar date will be forever barred from asserting any such Administrative Tax Claims

against the VD Plan Debtors, their properties or assets or the successors thereto, including, without

limitation, the Liquidating Trustee, Lehman Nominees and the VD Plan Debtors' Estates.

### 5.1.2   Treatment of Priority Tax Claims.

Priority Tax Claims are certain unsecured income, employment and other Taxes

described by Bankruptcy Code section 507(a)(8).  The Bankruptcy Code requires that each Holder of

such a Priority Tax Claim receive the present value of such Claim in deferred Cash payments over a

period not exceeding five (5) years from the applicable Petition Date and that such treatment not be

less favorable than the treatment accorded to non-priority unsecured creditors.

Allowed Priority Tax Claims, if any, will receive from the Liquidating Trustee (i)

equal Cash payments to be made on the last Business Day of each third full-calendar month

following the Effective Date, *provided that* the first payment need not be made any sooner than

thirty (30) days following the Effective Date and *provided that* such periodic payments are to be

payable until November 6, 2013, on which date the final payment will be due, with all such

payments totaling 100% of the principal amount of such Claim, plus interest on any unpaid balance

from the Effective Date, calculated at the nonbankruptcy interest rate applicable on the Effective

Date, if any, or (ii) such other treatment agreed to by the Holder of the Allowed Priority Tax Claim

and the Liquidating Trustee, provided such treatment is on more favorable terms to the applicable

VD Plan Debtor's Estate than the treatment set forth in clause (i) hereof; provided that, prepayments

will be made and permitted with the consent or at the direction of a Lehman VD Lender, including

payment in full any time on or after the Effective Date.

### 5.2    Classification of Claims and Interests.

As required by the Bankruptcy Code, the Plan places Claims and Interests into

various Classes according to their right to priority and other relative rights. The Plan specifies

whether each Class of Claims or Interests is Impaired or Unimpaired, and the Plan sets forth the

treatment each Class will receive. The table below lists the Classes of Claims established under the

Plan and states whether each particular Class is Impaired or left Unimpaired by the Plan.  A Class is

"Unimpaired" if the Plan leaves unaltered the legal, equitable and contractual rights to which the

Holders of Claims or Interests in the Class are entitled, with certain exceptions specified in the Bankruptcy Code.

For voting purposes and to comply with Bankruptcy Code section 1122(a), each Allowed Secured Claim will be deemed to be in its own subclass even if not expressly designated as such. Further, in the event that any alleged Secured Claim is not, or only is partially, Allowed as a Secured Claim, the deficiency amount if Allowed, will constitute a Class 6, Class 7, Class 8, Class 9 or Class 10 Claim against the applicable VD Plan Debtor, as appropriate, and will receive the same treatment as provided to other Claims in Class 6, Class 7, Class 8, Class 9 or Class 10 of such VD Plan Debtor, as appropriate. (The deficiency amounts with respect to the Claims of Lehman VD Lenders are Allowed General Unsecured Claims in Classes 8 and 9.)

The Plan does not intend to and does not provide for substantive consolidation of any of the VD Plan Debtors for any purpose, *e.g.*, for voting, for classification, for the testing of compliance of the Plan with applicable provisions of the Bankruptcy Code, for treatment of Claims and Interests, including calculations of Distributions among creditors, or for the obligations created under the Plan with respect to Distributions for Creditors. Thus, each Allowed Claim in a Class will be deemed to be in one or more subclasses of the applicable VD Plan Debtor as the classification tables herein reflect. If at the hearing on Confirmation, the Proponents establish a reasonable good faith belief that a particular Class or subclass contains no Allowed Claims, such Class or subclass will be disregarded thereat.

THE INVESTIGATION OF CLAIMS AND INTERESTS IS NOT YET COMPLETE, AND THEIR LISTING IN THE PLAN OR IN THE TABLES BELOW SHOULD NOT BE CONSTRUED AS INDICATING OR PROVIDING THAT SUCH CLAIMS ARE ALLOWED UNDER THE PLAN IN ANY RESPECT (WHETHER AS TO AMOUNT OR AS TO STATUS, E.G., AS A SECURED CLAIM, SECURED REAL PROPERTY TAX CLAIM OR SR. SECURED MECHANIC'S LIEN CLAM), EXCEPT AS EXPRESSLY SET FORTH FOR THE PARTICULAR CLAIM.

ADDITIONALLY, ALTHOUGH THE LISTED *POTENTIAL* CLASS 3 SR. SECURED MECHANIC'S LIEN CLAIMS ARE CLAIMS AS TO WHICH A MECHANIC'S

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

72

**LIEN MAY HAVE BEEN FILED, SOME OF THE IDENTIFIED CLAIMS AGAINST**
**GROUP I DEBTORS AND GROUP II DEBTORS OTHER THAN SUNCAL SUMMIT**
**VALLEY ARE BELIEVED TO BE JUNIOR TO THE LEHMAN SECURED CLAIMS**
**AGAINST THE APPLICABLE PROPERTY AND, THUS, ARE NOT BELIEVED TO BE**
**ENTITLED TO THE TREATMENT AFFORDED IN CLASS 3 FOR ALLOWED SR.**
**SECURED MECHANIC'S LIEN CLAIMS, BUT, INSTEAD, IF ALLOWED, ENTITLED TO**
**CLASS 6, 7, 8, 9 OR 10 TREATMENT, AS APPLICABLE.**

The Lehman Secured Claims and Lehman Creditor Deficiency Claims set forth in the tables below are calculated using, *inter alia,* the applicable Project Value for the applicable Plan Project and estimates of Cash Collateral and other collateral derived in substantial part from September 2010 Filings of the Voluntary Debtors. To the extent Cash Collateral amounts may be relevant to Distributions, they may be adjusted based on actual balances as agreed by the Lehman VD Lenders and Liquidating Trustee.

| CLASS 1: CLASSIFICATION OF SECURED REAL PROPERTY TAX CLAIMS, IF SO ALLOWED | | Class 1 is Unimpaired | Class 1 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) | |
| | | **Group I Debtors** | |
| Class 1.1 | Secured Real Property Tax Claim of Los Angeles County against the Ritter Ranch Project | Palmdale Hills; Palmdale Hills 12 | |
| Class 1.2 | Secured Real Property Tax Claim of Placer County against the Bickford Ranch Project | SunCal Bickford; SunCal Bickford Scheduled Amount | |
| Class 1.3 | Secured Real Property Tax Claim of Riverside County against the Emerald Meadows Project. | SunCal Emerald; SunCal Emerald 9 | |
| | | **Group II Debtors** | |
| Class 1.4 | Secured Real Property Tax Claim of Los Angeles County against the Acton Project. | Acton Estates; Acton Estates 1 | |
| Class 1.5 | Secured Real Property Tax Claim of San Bernardino County against the Joshua Ridge Project. | SCC Communities; SCC Communities Scheduled Amount | |
| Class 1.6 | None; Class Number Reserved. | | |
| Class 1.7.1 | Secured Real Property Tax Claim of Placer County against the Summit Valley Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Summit Valley; Palmdale Hills 97 | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Class 1.7.2 | Secured Real Property Tax Claim of San Bernardino County against the Summit Valley Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Summit Valley |
|---|---|---|
| Class 1.7.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Arthur Riggs pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.7.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Arleen Logan pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.7.5 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, K Square pursuant to a first-priority deed of trust Properties Inc. against certain portions of the Summit Valley Project. | SunCal Summit Valley |
| Class 1.7.6 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Leslie Quigg & Betty Quigg pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project. | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 1.8 | Secured Real Property Tax Claim of Los Angeles County against the Tesoro Project. | Tesoro; Tesoro 2 |
| | | **Group III Debtors** |
| Class 1.9 | Secured Real Property Tax Claim of San Bernardino County against the property Kirby Estates' property. | Kirby Estates; Kirby Estates Scheduled Amount |
| Class 1.10.1 | Secured Real Property Tax Claim of San Bernardino County against Seven Brothers' property, exclusive of Seller Financing Encumbered Parcels. | Seven Brothers |
| Class 1.10.2 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Cheltimalie Enterprises pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| Class 1.10.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Philip C. Dowse and Vera G. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
|---|---|---|
| Class 1.10.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Philip C. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.10.5 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Desert Wind, LLC pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers. | Seven Brothers |
| Class 1.11.1 | Secured Real Property Tax Claim of Riverside County against the Beaumont Project, exclusive of Seller Financing Encumbered Parcels. | SunCal Beaumont; SunCal Beaumont 9 |
| Class 1.11.2 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Cheryl M. Mims pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project. | SunCal Beaumont |
| Class 1.11.3 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, William L & Kathleen Ward pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project. | SunCal Beaumont |
| Class 1.11.4 | Secured Real Property Tax Claim against Seller Financing Encumbered Parcel Affected by Seller Financing Secured Claim of, or formerly of, Marie B. Stanford pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project. | SunCal Beaumont |
| Class 1.12 | Secured Real Property Tax Claim of Stanislaus County against the Johannson Ranch Project. | SunCal Johannson; SunCal Johannson Scheduled Amount |

| CLASS 2: CLASSIFICATION OF LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| <u>Class</u> | <u>Claims</u> | | <u>VD Plan Debtor and Basis for Claim</u> (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). |
| | | | **Group I Debtors** |
| Class 2.1 | **Ritter Ranch Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against Palmdale Hills arising form the Ritter Ranch Loan Agreement in the Allowed Amount of $287,252,096.31 and as an Allowed Secured Claim against the Ritter Ranch Project, all Cash Collateral and PH CFD Bonds in the amount of $98.9 million. | | Palmdale Hills; Palmdale Hills: 65 |
| Class 2.2 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal Bickford arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Bickford Ranch Project and all Cash Collateral in the amount of $31.3 million. | | SunCal Bickford; SunCal Bickford: 16 |
| Class 2.3 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal Emerald arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Emerald Meadows Project and all Cash Collateral in the amount of $12 million. | | SunCal Emerald; SunCal Emerald: 7 |
| | | | **Group II Debtors** |
| Class 2.4 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against Acton Estates arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Acton Project and all Cash Collateral in the amount of $6.8 million. | | Acton Estates; Acton Estates: 6 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 2: CLASSIFICATION OF LEHMAN SECURED CLAIMS | | Class 2 is Impaired | Class 2 Claim Holders are Entitled to Vote |
|---|---|---|---|
| <u>Class</u> | <u>Claims</u> | | <u>VD Plan Debtor and Basis for Claim</u> (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number). |
| Class 2.5 | **Interim Loan Agreement** Allowed Claim of Lehman ALI or its assignee or successor against SCC Communities, arising from the Interim Loan Agreement in the Allowed Amount of $23,795,012.59 and as an Allowed Secured Claim against the Joshua Ridge Project and all Cash Collateral in the amount of $1.2 million. | | SCC Communities; SCC Communities: 9 |
| Class 2.6 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal I arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against the Interests in SunCal Johannson and SunCal Beaumont and all Cash Collateral in the amount of $4,012,093. | | SunCal I; SunCal I: 1 |
| Class 2.7 | **SunCal Communities I Loan Agreement** Allowed Claim of Lehman Commercial or its assignee or successor against SunCal Summit Valley arising from SunCal Communities I Loan Agreement in the Allowed Amount of $343,221,391.06 and as an Allowed Secured Claim against SunCal Summit Valley's portions of the Summit Valley Project, the Interests in Kirby Estates and Seven Brothers, and all Cash Collateral in the amount of $7,052,435. | | SunCal Summit Valley; SunCal Summit Valley: 12 |
| Class 2.8 | **Interim Loan Agreement** Allowed Claim of Lehman ALI or its assignee or successor against Tesoro rising from the Interim Loan in the Allowed Amount of $23,795,012.59 and as an Allowed Secured Claim against the Tesoro Project and all Cash Collateral in the amount of $1.9 million. | | Tesoro; Tesoro: 7 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 3: CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, **IF SO ALLOWED** | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | | **Group I Debtors** |
| Class 3.1.1 | Mechanic's Lien Claim of Asphalt Professionals or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $38,249. | | Palmdale Hills; Palmdale Hills 1 and 46 |
| Class 3.1.2 | Mechanic's Lien Claim of Sierra Cascade Construction or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $550,677. | | Palmdale Hills; Palmdale Hills 33 |
| Class 3.1.3 | Mechanic's Lien Claim of Staats Construction. Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $166,105. | | Palmdale Hills; Palmdale Hills 51 |
| Class 3.1.4 | Mechanic's Lien Claim of Southland Farmers, Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $177,801. | | Palmdale Hills; Palmdale Hills 55, 67 and 68 |
| Class 3.1.5 | Mechanic's Lien Claim of Pinnick, Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $1,530,146. (Alleged Project Collateral for this alleged Lien may not be Collateral for Lehman Secured Claims). | | Palmdale Hills; Palmdale Hills 62, 63 and 64 |
| Class 3.1.6 | Mechanic's Lien Claim of Chameleon Design Inc. or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $73,600. | | Palmdale Hills; Palmdale Hills 93, 99 |
| Class 3.1.7 | Mechanic's Lien Claim of HD Supply Construction or its assignee or successor against the Ritter Ranch Project owned by Palmdale Hills in the amount of $14,893. | | Palmdale Hills; Palmdale Hills 15 |
| Class 3.1.8 | Mechanic's Lien Claim of Park West Landscape or its assignee or successor against the Ritter Ranch Project in the amount of $27,624.70. | | Palmdale Hills; Palmdale Hills 109 |
| Class 3.2.1 | Mechanic's Lien Claim of MHM Engineers or its assignee or successor against the Bickford Ranch Project in the amount of $8,916. | | SunCal Bickford; SunCal Bickford 5 |
| Class 3.2.2 | Mechanic's Lien Claim of Land Architecture or its assignee or successor against the Bickford Ranch Project in the amount of $100,245. | | SunCal Bickford; SunCal Bickford 6 |

| CLASS 3: CLASSIFICATION OF SR. SECURED MECHANIC'S LIEN CLAIMS, IF SO ALLOWED | | Class 3 is Unimpaired | Class 3 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claim (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| Class 3.2.3 | Mechanic's Lien Claim of Kiewit Pacific Co. or its assignee or successor against the Bickford Ranch Project in the amount of $1,868,357. | | SunCal Bickford; SunCal Bickford 10 |
| Class 3.2.4 | Mechanic's Lien Claim of ARB, Inc. or its assignee or successor against the Bickford Ranch Project in the amount of $1,052,272. | | SunCal Bickford; SunCal Bickford 15 |
| Class 3.2.5 | Mechanic's Lien Claim of Independent Construction or its assignee or successor against the Bickford Ranch Project in the amount of $117,209. | | SunCal Bickford; SunCal Bickford 28 |
| Class 3.2.6 | Mechanic's Lien Claim of Marques Pipeline, Inc. or its assignee or successor against the Bickford Ranch Project in the amount of $330,118. | | SunCal Bickford; SunCal Bickford 29 and 30 |
| Class 3.3.1 | Mechanic's Lien Claim of Hall & Foreman, Inc. or its assignee or successor against the Emerald Meadows Project in the amount of $287,727. | | SunCal Emerald; SunCal Emerald 13 |
| Class 3.3.2 | Mechanic's Lien Claim of Proactive Engineering or its assignee or successor against the Emerald Meadows Project in the amount of $991,315. | | SunCal Emerald; SunCal Emerald 15 and 16 |
| | | | **Group II Debtors** |
| Classes 3.4 – 3.7 | None; Claim Numbers Reserved. | | |
| Class 3.8 | Mechanic's Lien Claim of Pacific Soils Engineering or its assignee or successor against the portion of the Summit Valley Project owned by Summit Valley in the amount of $16,827. | | SunCal Summit Valley; SunCal Summit Valley 9 |
| | | | **Group III Debtors** |
| Classes 3.9 – 3.10 | None; Claim Numbers Reserved. | | |
| Class 3.11 | Mechanic's Lien Claim of Proactive Engineering or its assignee or successor against the Beaumont Heights Project in the amount of $46,188. (Alleged Project Collateral for this alleged Lien may not be Collateral for Lehman Secured Claims). | | SunCal Beaumont; SunCal Beaumont 11 and 12 |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 4:  CLASSIFICATION OF OTHER SECURED CLAIMS, IF SO ALLOWED | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| | | | **Group I Debtors** |
| Class 4.1 | Allowed Other Secured Claims against Palmdale Hills | | Palmdale Hills |
| Class 4.2 | Allowed Other Secured Claims against SunCal Bickford | | SunCal Bickford |
| Class 4.3 | Allowed Other Secured Claims against SunCal Emerald | | SunCal Emerald |
| | | | **Group II Debtors** |
| Class 4.4 | Allowed Other Secured Claims against Acton Estates | | Acton Estates |
| Class 4.5 | Allowed Other Secured Claims against SCC Communities | | SCC Communities |
| Class 4.6 | Allowed Other Secured Claims against SunCal I | | SunCal I |
| Class 4.7.1 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Arthur Riggs, pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $801,900. | | SunCal Summit Valley; SunCal Summit Valley 4 |
| Class 4.7.2 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Arleen Logan pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $668,250. | | SunCal Summit Valley; SunCal Summit Valley 5 |
| Class 4.7.3 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, K Square pursuant to a first-priority deed of trust Properties Inc. against certain portions of the Summit Valley Project in the amount of $200,000. | | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 4.7.4 | Other Secured Claims against SunCal Summit Valley, consisting of the Seller Financing Secured Claim of, or formerly of, Leslie Quigg & Betty Quigg pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project in the amount of $1,246,500. | | SunCal Summit Valley; SunCal Summit Valley Scheduled Amount |
| Class 4.7.5 | Allowed Other Secured Claims against SunCal Summit Valley | | SunCal Summit Valley |
| Class 4.8 | Allowed Other Secured Claims against Tesoro | | Tesoro |
| | | | **Group III Debtors** |
| Class 4.9 | Allowed Other Secured Claims against Kirby Estates | | Kirby Estates |

| CLASS 4: CLASSIFICATION OF OTHER SECURED CLAIMS, IF SO ALLOWED | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| Class | Claims | VD Plan Debtor | |
| Class 4.10.1 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Cheltimalie Enterprises pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $1,388,156. | Seven Brothers; SunCal Summit 17 | |
| Class 4.10.2 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Philip C. Dowse and Vera G. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $296,910. | Seven Brothers; Seven Brothers Scheduled Amount | |
| Class 4.10.3 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Philip C. Dowse pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $880,000. | Seven Brothers; Seven Brothers Scheduled Amount | |
| Class 4.10.4 | Other Secured Claims against Seven Brother, consisting of the Seller Financing Secured Claim of, or formerly of, Desert Wind, LLC pursuant to a first-priority deed of trust against certain portions of the Summit Valley Project owned by Seven Brothers in the amount of $862,000. | Seven Brothers; Seven Brothers Scheduled Amount | |
| Class 4.10.5 | Allowed Other Secured Claims against Seven Brother | Seven Brothers | |
| Class 4.11.1 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Cheryl M. Mims pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $136,229. | SunCal Beaumont; Palmdale Hills 101 | |
| Class 4.11.2 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, William L & Kathleen Ward pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $130,000. | SunCal Beaumont; SunCal Beaumont Scheduled Amount | |
| Class 4.11.3 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Wayne & Francis Lee pursuant to a first-priority deed of trust against certain portions of the Beaumont Heights Project in the amount of $650,000. | SunCal Beaumont; SunCal Beaumont Scheduled Amount | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 4: CLASSIFICATION OF OTHER SECURED CLAIMS, **IF SO ALLOWED** | | Class 4 is Unimpaired | Class 4 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| <u>Class</u> | <u>Claims</u> | | <u>VD Plan Debtor</u> |
| Class 4.11.4 | Other Secured Claims against SunCal Beaumont, consisting of the Seller Financing Secured Claim of, or formerly of, Marie B. Stanford pursuant to a first-priority deed of trust against certain portions of Beaumont Heights Project in the amount of $154,742. | | SunCal Beaumont; SunCal Beaumont 6 |
| Class 4.11.5 | Allowed Other Secured Claims against SunCal Beaumont | | SunCal Beaumont |
| Class 4.12 | Allowed Other Secured Claims against SunCal Johannson | | SunCal Johannson |

| CLASS 5: CLASSIFICATION OF PRIORITY CLAIMS, **IF SO ALLOWED** | | Class 5 is Unimpaired | Class 5 Claim Holders are Not Entitled to Vote |
|---|---|---|---|
| <u>Class</u> | <u>Claims</u> | | <u>VD Plan Debtor and Basis for Claim</u> (*i.e.*, Scheduled Amount or Case in Which Proof Filed and Number) |
| | | | **Group I Debtors** |
| Class 5.1 | Priority Claims (alleged amount - $10,950). | | Palmdale Hills; Palmdale Hills 70 |
| Class 5.2 | Priority Claims (none alleged) | | SunCal Bickford |
| Class 5.3 | Priority Claims (none alleged) | | SunCal Emerald |
| | | | **Group II Debtors** |
| Class 5.4 | Priority Claims (none alleged) | | Acton Estates |
| Class 5.5 | Priority Claims (none alleged) | | SCC Communities |
| Class 5.6 | Priority Claims (none alleged) | | SunCal I |
| Class 5.7 | Priority Claims (none alleged) | | SunCal Summit Valley |
| Class 5.8 | Priority Claims (none alleged) | | Tesoro |
| | | | **Group III Debtors** |
| Class 5.9 | Priority Claims (none alleged) | | Kirby Estates |
| Class 5.10 | Priority Claims (none alleged) | | Seven Brothers |
| Class 5.11 | Priority Claims (none alleged) | | SunCal Beaumont |
| Class 5.12 | Priority Claims (none alleged) | | SunCal Johannson |

| CLASS 6: CLASSIFICATION OF RELIANCE CLAIMS, IF ALLOWED, AGAINST GROUP I DEBTORS | | Class 6 is Impaired | Class 6 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| Class 6.1 | Reliance Claims against Palmdale Hills | | Palmdale Hills - Various Filed and Scheduled |
| Class 6.2 | Reliance Claims against SunCal Bickford | | SunCal Bickford - Various Filed and Scheduled |
| Class 6.3 | Reliance Claims against SunCal Emerald | | SunCal Emerald - Various Filed and Scheduled |

| CLASS 7: CLASSIFICATION OF RELIANCE CLAIMS, IF SO ALLOWED, AGAINST GROUP II DEBTORS | | Class 7 is Impaired | Class 7 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| Classes 7.1 – 7.3 | None; Class Numbers Reserved. | | |
| Class 7.4 | Reliance Claims against Acton Estates | | Acton Estates - Various Filed and Scheduled |
| Class 7.5 | Reliance Claims against SCC Communities | | SCC Communities - Various Filed and Scheduled |
| Class 7.6 | Reliance Claims against SunCal I | | SunCal I - Various Filed and Scheduled |
| Class 7.7 | Reliance Claims against SunCal Summit Valley | | SunCal Summit Valley - Various Filed and Scheduled |
| Class 7.8 | Reliance Claims against Tesoro | | Tesoro - Various Filed and Scheduled |

| CLASS 8: CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP I DEBTORS | | Class 8 is Impaired | Class 8 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Class 8.1 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the Ritter Ranch Loan Agreement in the Allowed Amount of $188,356,368) | | Palmdale Hills |
| Class 8.2 | General Unsecured Claims (including the Allowed General Unsecured Claims of: (a) Lehman Commercial or its assignee or successor arising from | | SunCal Bickford |

Case 8:08-bk-17206-ES Doc 1780-2 Filed 10/04/10 Entered 10/04/10 19:18:21 Exhibit B
Pg 100 of 197

| CLASS 8: CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP I DEBTORS | | Class 8 is Impaired | Class 8 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| | the SunCal Communities I Loan Agreement in the Allowed Amount of $311,920,872 and (b) Lehman ALI or its assignee or successor arising from the Bickford Second Lien Loan Agreement in the Allowed Amount of $56,494,059) | | |
| Class 8.3 | General Unsecured Claims(including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $331,221,391) | | SunCal Emerald |

| CLASS 9: CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP II DEBTORS | | Class 9 is Impaired | Class 9 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Classes 9.1 – 9.3 | None; Claim Numbers Reserved. | | |
| | | | **Group II Debtors** |
| Class 9.4 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $336,421,391) | | Acton Estates |
| Class 9.5 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman ALI or its assignee or successor arising from the Interim Loan Agreement in the Allowed Amount of $22,591,604) | | SCC Communities |
| Class 9.6 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $339,209,298) | | SunCal I |
| Class 9.7 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman Commercial or its assignee or successor arising from the SunCal Communities I Loan Agreement in the Allowed Amount of $336,168,956) | | SunCal Summit Valley |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 9:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP II DEBTORS | | Class 9 is Impaired | Class 9 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Class 9.8 | General Unsecured Claims (including the Allowed General Unsecured Claim of Lehman ALI or its assignee or successor arising from the Interim Loan Agreement in the Allowed Amount of $21,944,442) | | Tesoro |

| CLASS 10:  CLASSIFICATION OF GENERAL UNSECURED CLAIMS, IF SO ALLOWED, AGAINST GROUP III DEBTORS | | Class 10 is Impaired | Class 10 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor |
| Classes 10.1 – 10.8 | None; Claim Numbers Reserved. | | |
| Class 10.9 | General Unsecured Claims | | Kirby Estates |
| Class 10.10 | General Unsecured Claims | | Seven Brothers |
| Class 10.11 | General Unsecured Claims | | SunCal Beaumont |
| Class 10.12 | General Unsecured Claims | | SunCal Johannson |

| CLASS 11:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | | Class 11 is Impaired | Class 11 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| | | | **Group I Debtors** |
| Class 11.1 | Settling Bond Issuer-Related Future Work Claims against Palmdale Hills (including the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 107 was filed in the aggregate penal amount of $24,859,950, and the Claim of Arch, if Allowed, for which Proof of Claim No. 54 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | | Palmdale Hills – Various Filed and Scheduled |
| Class 11.2 | Settling Bond Issuer-Related Future Work Claims against SunCal Bickford (including the | | SunCal Bickford – Various Filed and Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

85

| CLASS 11: CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | | Class 11 is Impaired | Class 11 Claim Holders are Entitled to Vote |
|---|---|---|---|
| Class | Claims | | VD Plan Debtor and Basis for Claims |
| | Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 24 was filed in the amount of $2,827,548) (unliquidated)) | | |
| Class 11.3 | Settling Bond Issuer-Related Future Work Claims against SunCal Emerald (including the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | | SunCal Emerald – Various Filed and Scheduled |
| | | | **Group II Debtors** |
| Class 11.4 | Settling Bond Issuer-Related Future Work Claims against Acton Estates (including the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 7 was filed in the amount of $1,290,000 (unliquidated), and the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | | Acton Estates – Various Filed and Scheduled |
| Class 11.5 | Settling Bond Issuer-Related Future Work Claims against SCC Communities (including the Claim of Bond Safeguard, if Allowed, for which Proof of Claim No. 4 was filed in the amount of $25,000, and the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | | SCC Communities – Various Filed and Scheduled |
| Class 11.6 | Settling Bond Issuer-Related Future Work Claims against SunCal I (including the Claim of Arch, if Allowed, for which Proof of Claim No. 2 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | | SunCal I – Various Filed and Scheduled |
| Class 11.7 | Settling Bond Issuer-Related Future Work Claims against SunCal Summit Valley (including the Claim of Arch, if Allowed, for which Proof of Claim No. 15 was filed in the total penal amount of $155,426,657 (of which $131,589 was | | SunCal Summit Valley – Various Filed and Scheduled |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

| CLASS 11:  CLASSIFICATION OF SETTLING BOND ISSUER-RELATED FUTURE WORK CLAIMS, IF ALLOWED | Class 11 is Impaired | Class 11 Claim Holders are Entitled to Vote |
|---|---|---|
| Class | Claims | VD Plan Debtor and Basis for Claims |
| | liquidated and the balance was unliquidated and contingent)) | |
| Class 11.8 | Settling Bond Issuer-Related Future Work Claims against Tesoro (including the Claim of Arch, if Allowed, for which Proof of Claim No. 8 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | Tesoro – Various Filed and Scheduled |
| | | **Group III Debtors** |
| Class 11.9 | Settling Bond Issuer-Related Future Work Claims against Kirby Estates (including the Claim of Arch, if Allowed, for which Proof of Claim No. 2 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | Kirby Estates – Various Filed and Scheduled |
| Class 11.10 | Settling Bond Issuer-Related Future Work Claims against Seven Brothers (including the Claim of Arch, if Allowed, for which Proof of Claim No. 1 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | Seven Brothers – Various Filed and Scheduled |
| Class 11.11 | Settling Bond Issuer-Related Future Work Claims against SunCal Beaumont (including the Claim of Arch, if Allowed, for which Proof of Claim No. 10 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | SunCal Beaumont – Various Filed and Scheduled |
| Class 11.12 | Settling Bond Issuer-Related Future Work Claims against SunCal Johannson (including the Claim of Arch, if Allowed, for which Proof of Claim No. 5 was filed in the total penal amount of $155,426,657 (of which $131,589 was liquidated and the balance was unliquidated and contingent)) | SunCal Johannson – Various Filed and Scheduled |

| CLASS 12: CLASSIFICATION OF INTERESTS, IF ALLOWED | | Class 12 is Impaired | Class 12 Interest Holders are Deemed to Reject the Plan and are Not Entitled to Vote |
|---|---|---|---|
| Class | Interests (and alleged Holders) | | VD Plan Debtor and Basis for Interests |
| Class 12.1 | Interests in Palmdale Hills (of SCC Palmdale). | | Palmdale Hills - Scheduled |
| Class 12.2 | Interests in SunCal I (of SCC LLC). | | SunCal I - Scheduled |
| Class 12.3 | Interests in Acton Estates (of SunCal I). | | Acton Estates - Scheduled |
| Class 12.4 | Interests in SunCal Beaumont (of SunCal I). | | SunCal Beaumont - Scheduled |
| Class 12.5 | Interests in SunCal Emerald (of SunCal I). | | SunCal Emerald - Scheduled |
| Class 12.6 | Interests in SunCal Johannson (of SunCal I). | | SunCal Johannson - Scheduled |
| Class 12.7 | Interests in SunCal Bickford (of SunCal I). | | SunCal Bickford - Scheduled |
| Class 12.8 | Interests in SunCal Summit Valley (of SunCal I). | | SunCal Summit Valley - Scheduled |
| Class 12.9 | Interests in Seven Brothers (of SunCal Summit Valley). | | Seven Brothers - Scheduled |
| Class 12.10 | Interests in Kirby Estates (of SunCal Summit Valley). | | Kirby Estates - Scheduled |
| Class 12.11 | Interests in SCC Communities (of SCC LLC). | | SCC Communities - Scheduled |
| Class 12.12 | Interests in Tesoro (of SCC LLC). | | Tesoro - Scheduled |

**5.3     Treatment Of Classified Claims And Interests**

Any references in the Plan to Classes 1 through 12 are summary references made for convenience only to the group of subclasses of each such Class.  Voting and treatment for each subclass are to remain distinct. Regardless of the treatment provided in the Plan for any Holder of a Claim, the Holder may agree to accept less favorable treatment and no Creditor will receive more than 100% of its Claim (plus any interest, fees or other cost or expenses payable under the Plan). Provisions for treatment below for Holders of Allowed Claims are not an indication that any particular Claim is Allowed unless expressly provided.

### 5.3.1   Treatment of Allowed Secured Real Property Tax Claims (Class 1).

The treatment of any Allowed Secured Real Property Tax Claims (Class 1) under the Plan is as follows:

#### (a)   A Voting and Impairment.

Class 1 is <u>Unimpaired</u> under the Plan, and each Holder of an Allowed Secured Real Property Tax Claim is <u>not entitled to vote</u> on the Plan.

#### (b)   Liens.

As of the Effective Date, each Holder of an Allowed Secured Real Property Tax Claim, on account of such Claim, <u>will retain its underlying Liens</u> on the applicable real property collateral pending full payment in accordance with the Plan.

#### (c)   Distributions and Distribution Dates.

Each Allowed Secured Real Property Tax Claim will receive, on account of such Claim, one of the three following alternative treatments identified immediately below, performance of which, when due, will be undertaken by the owner of the Plan Project serving as collateral for the subject Claim as its own obligation and that of the Liquidating Trustee, in full and final satisfaction of each such Allowed Secured Real Property Tax Claim.

#### (i)   <u>Section 1124(2) Unimpairment.</u>

On the Effective Date, the applicable Allowed Secured Real Property Tax Claim will be cured and reinstated as of the first date when last payable without interest, fees or penalties, and, as so cured and reinstated, will receive a lump sum payment in full on the Effective Date.  Under this treatment, the Holder of an Allowed Secured Real Property Tax Claim will be paid Cash on the Effective Date equal to the amount of such Allowed Secured Real Property Tax Claim due as of the first date when last payable without interest, fees or penalty, plus any interest thereupon from such date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law, plus any fees incurred in reasonable reliance on timely receipt of the tax, but exclusive of any penalty amounts thereof at any time incurred or charged (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)); or

(ii)     Quarterly Payments.

As permitted by Bankruptcy Code § 1129(a)(9)(D), each Holder of an Allowed

Secured Real Property Tax Claim will receive value as of the Effective Date equal to 100% of its

Allowed Secured Real Property Tax Claim through equal Cash payments totaling the Allowed

Amount of the Claim, with interest at the rate applicable under non-bankruptcy law, if any, or, if

none, the federal judgment rate applicable as of the Effective Date, with each payment to be made on

the last Business Day of each third full-calendar month following the Effective Date (*provided that*

the first payment need not be made any sooner than thirty (30) days following the Effective Date).

Such periodic payments will continue until November 6, 2013, on which date (within the five-year

payment period mandated under section 1129(a)(9)(D)) the final payment will be due.  Prepayments

are permitted any time on or after the Effective Date, including payment in full of the Allowed

Amount of the Claim, plus accrued interest as provided in this paragraph, but only with the consent

of (and will be made if at the direction of) a Lehman VD Lender; or

(iii)     Simple Unimpairment.

As of the Effective Date, the Holder of any Allowed Secured Real Property Tax

Claim, on account of such Claim, will have left unaltered its legal, equitable and/or contractual rights

as a Holder of such Allowed Secured Real Property Tax Claim and will be free to pursue its rights

and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; and

(iv)     Determination of Applicable Treatment.

For subclasses as to which the taxes do <u>not</u> relate to Seller Financing Encumbered

Parcels, the first alternative treatment will be applicable unless the applicable Lehman VD Lender

selects and notifies the subject Creditor prior to the Effective Date of its selection of the second or

third alternative treatments; provided that, notwithstanding, the foregoing, the second alternative

treatment will be applicable if the Lehman VD Lenders do not waive the application of the following

condition and the Bankruptcy Court rules as to the subject Claim (each of which is its own subclass)

that despite cure and reinstatement in accordance with the Plan any of the following amounts remain

payable:  (a) 10% of a tax, added upon non-payment of the tax by any deadline occurring prior to the

applicable Petition Date for timely payment thereof or (b) 1.5% of the tax, added monthly from the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

first July 1 following the first missed timely payment deadline occurring prior to the Petition Date until payment.

For subclasses as to which the taxes relate to Seller Financing Encumbered Parcels, the third alternative treatment will be applicable unless the applicable Lehman VD Lender selects and notifies the subject Creditor prior to the Effective Date of its selection of the first or second alternative treatments.

### 5.3.2 Treatment of Lehman Secured Claims (Class 2).

The treatment of Lehman Secured Claims (Class 2) under the Plan will be as follows:

**(a)** **Voting.**

Class 2 is Impaired under the Plan, and each Holder of a Lehman Secured Claim is entitled to vote on the Plan.

**(b)** **Liens.**

As of the Effective Date, each Holder of a Lehman Secured Claim, on account of such Claim, will retain its Lehman Claim Liens pending full payment in Cash of both the secured and unsecured portions of its Claim.

**(c)** **Claims.**

Each Claim of a Lehman VD Lender will be Allowed for voting and all other purposes of the Plan in the amount and with the status as a Secured Claim or General Unsecured Claim as set forth in the Plan's classification tables.

**(d)** **Disposition of Collateral**

(i) On the Effective Date, the Plan Projects (other than any Seller Financing Encumbered Parcel designated by a Lehman VD Lender for conveyance in a Filed notice) will be conveyed free and clear of Encumbrances other than the Lehman Claim Liens and other Permitted Liens to one or more Lehman Nominees, as designated by the Lehman VD Lender(s) with a Secured Claim against the applicable Plan Project; and

(ii) On the Effective Date, the Liquidating Trustee will pay all Cash Collateral for a Lehman Secured Claim to the applicable Lehman VD Lender or, may, at the direction of the Lehman VD Lenders, use all or a portion thereof to pay the Lehman Creditor Distribution Funding

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(in the order set forth in the definition thereof, unless the applicable Lehman VD Lender(s) otherwise directs), with the balance, if any, payable to the applicable Lehman VD Lender; and

      (iii)    Any other remaining collateral for a Lehman Secured Claim may be retained and liquidated or sold by the Liquidating Trustee with the Net Cash Proceeds therefrom to be paid to the applicable Lehman VD Lender, *provided that:*

      (a)    the Liquidating Trustee and Lehman VD Lenders may agree to any alternative disposition of such collateral, including transfer of the collateral to the applicable Lehman VD Lender or abandonment to the applicable VD Plan Debtor, which abandonment will be deemed to occur on notice from the Liquidating Trustee;

      (b)    the Lehman VD Lender, on reasonable notice to the Liquidating Trustee, may require turnover to it of such collateral, including the PH CFD Bonds; and

      (c)    if no disposition of such collateral occurs within six (6) months after the Effective Date, the Liquidating Trustee will give the Lehman VD Lenders thirty (30) days' notice indicating the Liquidating Trustee's intention to turn over the collateral to a particular Lehman VD Lender and describing the collateral and:

      (1)    If before the expiration of the notice period, the Lehman VD Lender rejects such turn over, the Liquidating Trustee will abandon such collateral to the applicable VD Plan Debtor, which abandonment will be deemed to occur on subsequent notice from the Liquidating Trustee to the VD Plan Debtor and applicable Lehman VD Lenders; and

      (2)    If the Lehman VD Lender does not reject such turn over, upon expiration of the notice period, the Liquidating Trustee will turn over such collateral to the applicable Lehman VD Lenders.

### 5.3.3   Treatment of Allowed Sr. Secured Mechanic's Lien Claims (Class 3).

The treatment of any Allowed Sr. Secured Mechanic's Lien Claims (Class 3) under the Plan will be as follows:

      **(a)**    **Voting and Impairment.**

Class 3 is <u>Unimpaired</u> under the Plan, and each Holder of an Allowed Sr. Secured Mechanic's Lien Claim in Class 3, if any, is <u>not entitled to vote</u> on the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The Lehman Proponents dispute that any Mechanic's Lien Claims against any Group I Debtor or Group II Debtor (other than SunCal Summit Valley) could be Allowed as Sr. Secured Mechanic's Lien Claims because they believe that the Lehman VD Lenders' Liens are senior Encumbrances and there is no value in the junior Liens of the Holders of such Mechanic's Lien Claims against any Group I Debtor or Group II Debtor. For each Holder identified in advance as having alleged to hold a Mechanic's Lien Claim against any Group I Debtor or Group II Debtor (other than SunCal Summit Valley), the Ballot will afford an opportunity to waive any contention that the Holder has a Secured Claim senior to the Secured Claim of the applicable Lehman VD Lender(s) on the applicable Plan Project and to assert, instead, that its Claim is a General Unsecured Claim or Reliance Claim, thereby affording the Creditor, as more fully set forth below, the opportunity to elect to receive the Lehman Distribution Enhancement if its Claim is Allowed. **If the Creditor holding a Mechanic's Lien Claim against any Group I Debtor or Group II Debtor (other than SunCal Summit Valley) instead waits to see whether its Claim later is deemed to be entitled to "secured" status and it is unsuccessful in such effort, even if its Claim is Allowed as a Reliance Claim or General Unsecured Claim, it will only receive 1% on its Claim plus a proportional share of Residual Cash and it will not have the opportunity to elect to receive the Lehman Distribution Enhancement.**

**(b)      Liens.**

As of the Effective Date, each Holder of an Allowed Sr. Secured Mechanic's Lien Claim in Class 3, if any, on account of such Claim, will <u>retain its underlying Liens</u> on the applicable collateral pending full payment;

**(c)      Distributions and Distribution Dates.**

Each Allowed Sr. Secured Mechanic's Lien Claim, if any, will receive, on account of such Claim, one of the two following alternative treatments identified immediately below in full and final satisfaction of any such Allowed Sr. Secured Mechanic's Lien Claim:

(i)      <u>Section 1124(2) Unimpairment.</u>

On the Effective Date, the applicable Allowed Sr. Secured Mechanic's Lien Claim will be cured and reinstated as of the first date when last payable without interest, fees or penalties.

The Holder of such Claim will receive from the owner of the Plan Project serving as collateral for the subject Claim (or from the applicable Settling Bond Issuer for Allowed Sr. Secured Mechanic's Lien Claims that also are Settling Bond Issuer-Backed Performed Work Claims), as an obligation of such owner of the Plan Project and the Liquidating Trustee for the applicable Estate, payment in full equal to the amount of such Allowed Sr. Secured Mechanic's Lien Claim due as of the first date when last payable without interest, fees or penalty, plus any interest thereupon from such date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law, plus any fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of any penalty amounts thereof at any time incurred or charged.  Such amounts will be payable in Cash as a lump sum on the Effective Date if the original maturity date has passed as of the Effective Date or, otherwise, will be payable by curing any defaults and paying any fees in Cash on the Effective Date and making further payments in Cash as required under the applicable contract after reinstatement (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)); or

(ii)     Simple Unimpairment.

As of the Effective Date, the Holder of any such Allowed Sr. Secured Mechanic's Lien Claim, on account of such Claim, will have left unaltered its legal, equitable and contractual rights as a Holder of such Allowed Sr. Secured Mechanic's Lien Claim and will be free to pursue its rights and remedies, if any, against the underlying collateral under applicable nonbankruptcy law; and

(iii)     Determination of Applicable Treatment.

The first treatment indicated above will be applicable to each subclass unless, as to such subclass either the Lehman VD Lender with a Secured Claim against the applicable Plan Project or the Lehman Nominee, if any, taking title to such Plan Project selects and, prior to payment, notifies the applicable Creditor or Creditors of its selection of, the second alternative treatment, in which case the second alternative treatment will be applicable; provided that only the first treatment will be applicable for Allowed Sr. Secured Mechanic's Lien Claims that are Settling Bond Issuer-Backed Performed Work Claims; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(d)** **Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)     The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 3, each Holder of an Allowed Lehman-Owned Settling Bond Issuer-Related Claim in Class 3, on account of such Claim, only will be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) other Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims against Group I Debtors (Class 6), (iii) Allowed Reliance Claims against Group II Debtors (Class 7), (iv) Allowed General Unsecured Claims against Group I Debtors (Class 8), and (v) Allowed General Unsecured Claims against Group II Debtors (Class 9).

(ii)     Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 3, will forego any payment from the VD Plan Debtors' Estates for any Allowed Sr. Secured Mechanic's Lien Claims that also are Settling Bond Issuer-Owned Performed Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 11.

### 5.3.4    Treatment of Allowed Other Secured Claims (Class 4).

The treatment of any Allowed Other Secured Claims in Class 4 under the Plan will be as follows:

**(a)** **Voting and Impairment.**

Class 4 is Unimpaired under the Plan, and each Holder of an Allowed Secured Claim in Class 4, if any, is not entitled to vote on the Plan.

**(b)** **Liens.**

As of the Effective Date, each Holder of an Allowed Other Secured Claim in Class 4, if any, on account of such Claim, will retain its underlying Liens on the applicable collateral pending full payment.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1          **(c)**     **Distributions and Distribution Dates.**

2         Unless agreed otherwise with the applicable Creditor, each Allowed Other Secured

3 Claim, including, without limitation, any Seller Financing Secured Claim, will receive, in full and

4 final satisfaction of any such Allowed Other Secured Claim, the first following treatment identified

5 immediately below <u>unless</u> the Lehman Proponents or any of them selects the second or third

6 following alternative treatment identified below, in which case the selected alternative treatment will

7 be applicable:

8             (i)     <u>Simple Unimpairment.</u>

9         As of the Effective Date, the Holder of any such Allowed Other Secured Claim in

10 Class 4, on account of such Claim, will have left unaltered its legal, equitable and contractual rights

11 as a Holder of such Allowed Other Secured Claim in Class 4 and will be free to pursue its rights and

12 remedies, if any, against the underlying collateral under applicable nonbankruptcy law; or

13            (ii)     <u>Unimpairment With Surrender or Abandonment.</u>

14         The Liquidating Trustee will abandon or surrender to the Holder of any such Allowed

15 Other Secured Claim in Class 4 the property securing such Allowed Other Secured Claim in Class 4

16 and will turn over possession of such collateral to the Holder of such Allowed Other Secured Claim

17 upon the Filing, prior to the closing of the Case, of a notice so providing therefor either by: (a) any

18 Lehman VD Lender or (b) the Liquidating Trustee, either with the consent of a Lehman VD Lender

19 or upon order of the Court after the refusal of the Lehman VD Lenders to provide reasonable

20 financial support for the maintenance of such property; or

21            (iii)     <u>Section 1124(2) Unimpairment.</u>

22         On the Effective Date, the applicable Allowed Other Secured Claim will be cured and

23 reinstated as of the first date when last payable without interest, fees or penalties. The Holder of

24 such Claim will receive, as an obligation of the Liquidating Trustee for the applicable Estate,

25 payment in full equal to the amount of such Allowed Other Secured Claim in Class 4 due as of the

26 first date when last payable without interest, fees or penalty, plus any interest thereupon from such

27 date until payment at the rate of interest, if any, determined under the applicable nonbankruptcy law,

28 plus any fees incurred in reasonable reliance on timely receipt of timely payment, but exclusive of

1  any penalty amounts thereof at any time incurred or charged. Such amounts will be payable in Cash

2  as a lump sum on the Effective Date if the original maturity date has passed as of the Effective Date

3  or, otherwise, will be payable by curing any defaults and paying any fees in Cash on the Effective

4  Date and making further payments in Cash as required under the applicable contract or statute after

5  reinstatement (*see* Bankruptcy Code §§ 365(b)(2)(D), 1123(a)(5)(G) & 1124(2)).

6      **5.3.5    Treatment of Allowed Priority Claims (Class 5).**

7      The treatment of any Allowed Priority Claims in Class 5 under the Plan will be as

8  follows:

9      **(a)    Voting and Impairment.**

10      Class 5 is <u>Unimpaired</u> under the Plan, and each Holder of an Allowed Priority Claim

11  in Class 5 is <u>not entitled to vote</u> on the Plan.

12      **(b)    Distributions and Distribution Dates.**

13      Each Holder of an Allowed Priority Claim in Class 5 will be paid, on account of such

14  Claim as an obligation of the Liquidating Trustee for the applicable Estate, the full amount of such

15  Allowed Priority Claim in Cash on the later of (i) the Effective Date, and (ii) the date such Allowed

16  Priority Claim becomes payable in accordance with the terms governing such Allowed Priority

17  Claim.

18      **5.3.6    Treatment of Allowed Reliance Claims Against Group I Debtors (Class**

19  **6).**

20      The treatment of any Allowed Reliance Claims in Class 6 under the Plan will be as

21  follows:

22      **(a)    Voting and Impairment.**

23      Class 6 is <u>Impaired</u> under the Plan, and each Holder of an Allowed Reliance Claim

24  against a Group I Debtor is <u>entitled to vote</u> on the Plan. The same Ballot will be provided to those

25  Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims. For

26  any Creditor to vote its Claim as a Reliance Claim, the Creditor must mark its Ballot to indicate that

27  it contends it holds a Reliance Claim.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(b)    Distributions.**

(i)    <u>Lehman Creditor Distribution Funding.</u>

(1)    Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed Reliance Claim in Class 6 (against a Group I Debtor) will receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD Lenders.

(2)    Lehman Distribution Enhancement.

A Holder of an Allowed Reliance Claim in Class 6 (against a Group I Debtor) will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) <u>unless</u> such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a Reliance Claim in Class 6 (against a Group I Debtor), who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with the Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, will, to the extent its Reliance Claim in Class 6 is Allowed, have reserved the right to the following and thereby will receive, on account of such Allowed Claim, the following additional amount in Cash, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman VD Lenders: *the lesser of -*

(a)    twenty-four percent (24%) of the Allowed amount of the Class 6 Reliance Claim against the applicable Group I Debtor; and

(b)    an On Proportion Distribution with Holders of Allowed Claims in Class 8 of $_____ less (i) the Calculating Claims against the Group I Debtors and (ii) the Guaranteed Minimum Distribution payable with respect to Creditors of Group I Debtors.

(ii)    <u>Distribution of Residual Cash.</u>

Each Holder of an Allowed Reliance Claim against a Group I Debtor, will receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor: (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 6, and (iii) Allowed General Unsecured Claims in Class 8.

(iii)    Distributions for Allowed Bond-Backed Performed Work Claims in Class 6.

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed Reliance Claims that are Bond-Backed Claims, which, thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired by such Settling Bond Issuer as part of any such payment or settlement).

(c)    **Distribution Dates.**

Distributions in the amounts provided under the Plan are payable to Holders of Allowed Reliance Claims in Class 6 after the Effective Date as follows:

(i)    Lehman Creditor Distribution Funding.

(1)    Lehman Guaranteed Minimum Distribution.

Any Lehman Guaranteed Minimum Distribution due as to an Allowed Reliance Claim in Class 6 will be payable within thirty (30) days following such Claim's Allowance Determination Date;

(2)    Lehman Distribution Enhancement.

For each Allowed Reliance Claim in Class 6 entitled to the Lehman Distribution Enhancement, the applicable Lehman Distribution Enhancement shall be payable the later of (a) thirty (30) days following such Claim's Allowance Determination Date and (b) forty-five days following the Effective Date; provided that if the amount payable therefor is not the maximum amount that might be payable upon resolution of all Disputed Claims, then, the Liquidating Trustee shall make Interim Capped Distributions pending such final determination of Disputed Claims; and

(ii)    Residual Cash.

Any Distribution of Residual Cash will be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Distribution and the progress in the claims allowance process.

**(d)** **Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)    The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 6, for Allowed Reliance Claims of the Lehman VD Lenders against Group I Debtors, if any:

(1)    the Lehman VD Lenders, as the Holders thereof, will forego any payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2)    to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only will be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 6, and (iii) Allowed General Unsecured Claims in Class 8.

(ii)    Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 6, will forego any payment from the VD Plan Debtors' Estates for any Allowed Reliance Claims in Class 6 that also are Settling Bond Issuer-Owned Performed Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 11.

**5.3.7    Treatment of Allowed Reliance Claims Against Group II Debtors (Class 7).**

The treatment of any Allowed Reliance Claims in Class 7 under the Plan will be as follows:

**(a)    Voting and Impairment.**

Class 7 is <u>Impaired</u> under the Plan, and each Holder of an Allowed Reliance Claim against a Group II Debtor is <u>entitled to vote</u> on the Plan.  The same Ballot will be provided to those

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims. For any Creditor to vote its Claim as a Reliance Claim, the Creditor must mark its Ballot to indicate that it contends it holds a Reliance Claim.

**(b)** **Distributions.**

(i) <u>Lehman Creditor Distribution Funding.</u>

(1) Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed Reliance Claim in Class 7 (against a Group II Debtor) will receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD Lenders.

(2) Lehman Distribution Enhancement.

A Holder of an Allowed Reliance Claim in Class 7 (against a Group II Debtor) will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) <u>unless</u> such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a Reliance Claim in Class 7 (against a Group II Debtor), who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with the Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, will, to the extent its Reliance Claim in Class 7 is Allowed, have reserved the right to the following and thereby will receive, on account of such Allowed Claim, the following additional amount in Cash, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman VD Lenders: *the lesser of -*

(a) nine percent (9%) of the Allowed amount of the Class 7 Reliance Claim against the applicable Group II Debtor; and

(b) an On Proportion Distribution with Holders of Allowed Claims in Class 9 of $_____ less (i) the Calculating Claims against the Group II Debtors and Group III Debtors and (ii) the Guaranteed Minimum Distribution payable with respect to Creditors of Group II Debtors.

DOCS_LA:225339.8                     101

(ii)     Distribution of Residual Cash.

Each Holder of an Allowed Reliance Claim against a Group II Debtor, will receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 7, and (iii) Allowed General Unsecured Claims in Class 9.

**(c)     Distributions for Allowed Bond-Backed Performed Work Claims in Class 7.**

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed Reliance Claims that are Bond-Backed Claims, which, thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired by such Settling Bond Issuer as part of any such payment or settlement).

**(d)     Distribution Dates.**

Distributions in the amounts provided under the Plan are payable to Holders of Allowed Reliance Claims in Class 7 after the Effective Date as follows:

(i)     Lehman Creditor Distribution Funding.

(1)     Lehman Guaranteed Minimum Distribution.

Any Lehman Guaranteed Minimum Distribution due as to an Allowed Reliance Claim in Class 7 will be payable within thirty (30) days following such Claim's Allowance Determination Date;

(2)     Lehman Distribution Enhancement.

For each Allowed Reliance Claim in Class 7 entitled to the Lehman Distribution Enhancement, the applicable Lehman Distribution Enhancement shall be payable the later of (a) thirty (30) days following such Claim's Allowance Determination Date and (b) forty-five days following the Effective Date; provided that if the amount payable therefor is not the maximum amount that might be payable upon resolution of all Disputed Claims, then, the Liquidating Trustee shall make Interim Capped Distributions pending such final determination of Disputed Claims; and

(3)     Residual Cash.

Any Distribution of Residual Cash will be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

**(e)     Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)     The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 7, for Allowed Reliance Claims of the Lehman VD Lenders against Group II Debtors, if any:

(1)     the Lehman VD Lenders, as the Holders thereof, will forego any payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2)     to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only will be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) other Allowed Reliance Claims in Class 7, and (iii) Allowed General Unsecured Claims in Class 9.

(ii)     Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 7, will forego any payment from the VD Plan Debtors' Estates for any Allowed Reliance Claims in Class 7 that also are Settling Bond Issuer-Owned Performed Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 11.

**5.3.8     Treatment of Allowed General Unsecured Claims Against Group I Debtors (Class 8).**

The treatment of any Allowed General Unsecured Claims in Class 8 under the Plan

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

will be as follows:

(a)    **Voting and Impairment.**

Class 8 is <u>Impaired</u> under the Plan, and each Holder of an Allowed General Unsecured Claim against a Group I Debtor is <u>entitled to vote</u> on the Plan. The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims. A Creditor can vote its Claim as a General Unsecured Claim or, if eligible, may mark its Ballot to indicate that it contends it holds a Reliance Claim.

(b)    **Distributions.**

(i)    <u>Lehman Creditor Distribution Funding.</u>

(1)    Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed General Unsecured Claim in Class 8 will receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD Lenders.

(2)    Lehman Distribution Enhancement.

A Holder of an Allowed General Unsecured Claim in Class 8 will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) <u>unless</u> such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a General Unsecured Claim in Class 8, who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with the Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties, as consideration for such Creditor's Assignment / Release for Lehman, will, to the extent its General Unsecured Claim in Class 8 is Allowed, have reserved the right to the following and thereby will receive, on account of such Allowed Claim, the following additional amount in Cash, which amount is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman VD Lenders:

*the lesser of -*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(a)    four percent (4%) of the Allowed amount of the Class 8 General Unsecured Claim against the applicable Group I Debtor; and

(b)    an On Proportion Distribution with Holders of Allowed Claims in Class 6 of $_____ less (i) the Calculating Claims against the Group I Debtors and (ii) the Guaranteed Minimum Distribution payable with respect to Creditors of Group I Debtors.

(ii)    <u>Distribution of Residual Cash.</u>

Each Holder of an Allowed General Unsecured Claim in Class 8, will receive, on account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims in Class 6, and (iii) other Allowed General Unsecured Claims in Class 8.

(c)    **Distributions for Allowed Bond-Backed Performed Work Claims in Class 8.**

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-Backed Claimants in respect of Allowed General Unsecured Claims that are Bond-Backed Claims, which, thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired as part of any such payment or settlement).

(d)    **Distribution Dates.**

Distributions in the amounts provided under the Plan are payable to Holders of Allowed General Unsecured Claims in Class 8 after the Effective Date as follows:

(i)    <u>Lehman Creditor Distribution Funding.</u>

(1)    Lehman Guaranteed Minimum Distribution.

Any Lehman Guaranteed Minimum Distribution due as to an Allowed General Unsecured Claim in Class 8 will be payable within thirty (30) days following such Claim's Allowance Determination Date;

(2)    Lehman Distribution Enhancement.

For each Allowed General Unsecured Claim in Class 8 entitled to the Lehman Distribution Enhancement, the applicable Lehman Distribution Enhancement shall be payable the

later of (a) thirty (30) days following such Claim's Allowance Determination Date and (b) forty-five days following the Effective Date; provided that if the amount payable therefor is not the maximum amount that might be payable upon resolution of all Disputed Claims, then, the Liquidating Trustee shall make Interim Capped Distributions pending such final determination of Disputed Claims; and

(ii) <u>Residual Cash.</u>

Any Distribution of Residual Cash will be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

**(e) Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i) The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 8, for Allowed General Unsecured Claims in Class 8 of the Lehman VD Lenders:

(1) the Lehman VD Lenders, as the Holders thereof, will forego any payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2) to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only will be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor: (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims in Class 6, and (iii) other Allowed General Unsecured Claims in Class 8.

(ii) Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 8, will forego any payment from the VD Plan Debtors' Estates for any Allowed General Unsecured Claims in Class 8 that also are Settling Bond Issuer-Owned Performed Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date. Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 11.

### 5.3.9    Treatment of Allowed General Unsecured Claims Against Group II Debtors (Class 9).

The treatment of any Allowed General Unsecured Claims in Class 9 under the Plan will be as follows:

#### (a)    Voting and Impairment.

Class 9 is Impaired under the Plan, and each Holder of an Allowed General Unsecured Claim against a Group II Debtor is entitled to vote on the Plan.  The same Ballot will be provided to those Creditors believed by the Proponents to hold General Unsecured Claims or Reliance Claims.  A Creditor can vote its Claim as a General Unsecured Claim or, if eligible, may mark its Ballot to indicate that it contends it holds a Reliance Claim.

#### (b)    Distributions.

(i)    Lehman Creditor Distribution Funding.

(1)    Lehman Guaranteed Minimum Distribution.

Each Holder of an Allowed General Unsecured Claim in Class 9 will receive, on account of such Claim, one percent (1%) of the Allowed Amount of such Claim, which amount is part of the Lehman Guaranteed Minimum Distribution, arranged or provided by the Lehman VD Lenders.

(2)    Lehman Distribution Enhancement.

A Holder of an Allowed General Unsecured Claim in Class 9 will only receive the Lehman Guaranteed Minimum Distribution (one percent (1%) of the Allowed Amount of such Claim) plus the Distribution of certain Residual Cash (described below) unless such Creditor properly and timely elects to receive the Lehman Distribution Enhancement and to afford the Lehman Released Parties the Creditor's Assignment / Release for Lehman.

On the other hand, each Holder of a General Unsecured Claim in Class 9, who elects to receive the Lehman Distribution Enhancement and executes and delivers, in accordance with the Plan, a Creditor's Assignment / Release for Lehman for the benefit of the Lehman Released Parties,

as consideration for such Creditor's Assignment / Release for Lehman, will, to the extent its General

Unsecured Claim in Class 9 is Allowed, have reserved the right to the following and thereby will

receive, on account of such Allowed Claim, the following additional amount in Cash, which amount

is part of the Lehman Distribution Enhancement, arranged or provided by the Lehman VD Lenders:

*the lesser of -*

(a)     four percent (4%) of the Allowed amount of the Class 9 General Unsecured Claim against the applicable Group II Debtor; and

(b)     an On Proportion Distribution with Holders of Allowed Claims in Class 7 of $_____ less (i) the Calculating Claims against the Group II Debtors and Group III Debtors and (ii) the Guaranteed Minimum Distribution payable with respect to Creditors of Group II Debtors.

(ii)     <u>Distribution of Residual Cash.</u>

Each Holder of an Allowed General Unsecured Claim in Class 9, will receive, on

account of such Claim, any Residual Cash in the applicable Estate, to be shared Pro Rata with

Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor: (i) Allowed

Sr. Secured Mechanic's Lien Claims (Class 3) that are Lehman-Owned Settling Bond Issuer-Related

Claims, (ii) Allowed Reliance Claims in Class 7, and (iii) other Allowed General Unsecured Claims

in Class 9.

**(c)     Distributions for Allowed Bond-Backed Performed Work Claims in Class 9.**

A Bond Issuer may have separate obligations, not arising under the Plan, to Bond-

Backed Claimants in respect of Allowed General Unsecured Claims that are Bond-Backed Claims,

which, thus, may be paid or settled by the applicable Settling Bond Issuer (and may be acquired as

part of any such payment or settlement).

**(d)     Distribution Dates.**

Distributions in the amounts provided under the Plan are payable to Holders of

Allowed General Unsecured Claims in Class 9 after the Effective Date as follows:

(i)     <u>Lehman Creditor Distribution Funding.</u>

(1)     Lehman Guaranteed Minimum Distribution.

Any Lehman Guaranteed Minimum Distribution due as to an Allowed General

Unsecured Claim in Class 9 will be payable within thirty (30) days following such Claim's Allowance Determination Date;

(2)     Lehman Distribution Enhancement.

For each Allowed General Unsecured Claim in Class 9 entitled to the Lehman Distribution Enhancement, the applicable Lehman Distribution Enhancement shall be payable the later of (a) thirty (30) days following such Claim's Allowance Determination Date and (b) forty-five days following the Effective Date; provided that if the amount payable therefor is not the maximum amount that might be payable upon resolution of all Disputed Claims, then, the Liquidating Trustee shall make Interim Capped Distributions pending such final determination of Disputed Claims; and

(ii)     Residual Cash.

Any Distribution of Residual Cash will be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

**(e)     Less Favorable Treatment for Lehman VD Lenders and Settling Bond Issuer(s) by Consent.**

(i)     The Lehman VD Lenders have consented that, in lieu of the treatment provided for other Allowed Claims in Class 9, for Allowed General Unsecured Claims in Class 9 of the Lehman VD Lenders:

(1)     the Lehman VD Lenders, as the Holders thereof, will forego any payment from the VD Plan Debtors' Estates on account of such Claims, except as follows in the next paragraph; and

(2)     to the extent such Claims are Lehman-Owned Settling Bond Issuer-Related Claims, each Lehman VD Lender holding such a Claim, on account of such Claim, only will be entitled under the Plan to receive from the applicable VD Plan Debtor the Residual Cash of the applicable VD Plan Debtor's Estate Pro Rata with Holders of other Allowed Claims in the following subclasses for such VD Plan Debtor:  (i) Allowed Sr. Secured Mechanic's Lien Claims that are Lehman-Owned Settling Bond Issuer-Related Claims, (ii) Allowed Reliance Claims in Class 7, and (iii) other Allowed General Unsecured Claims in Class 9.

(ii)     Based on its consent, each Settling Bond Issuer, in lieu of the treatment provided for other Allowed Claims in Class 9, will forego any payment from the VD Plan Debtors' Estates for any Allowed General Unsecured Claims in Class 9 that also are Settling Bond Issuer-Owned Performed Work Claims, held by the applicable Settling Bond Issuer immediately prior to the Effective Date.  Based on its ongoing liability under Future Work Bonds, a Settling Bond Issuer will be a beneficiary of the treatment of Settling Bond Issuer-Related Future Work Claims in Class 11.

**5.3.10  Treatment of Allowed General Unsecured Claims Against Group III Debtors (Class 10).**

The treatment of any Allowed General Unsecured Claims in Class 10 under the Plan will be as follows:

**(a)     Voting and Impairment.**

Class 10 is Impaired under the Plan, and each Holder of an Allowed General Unsecured Claim against a Group III Debtor is entitled to vote on the Plan.

**(b)     Distributions:  Lehman Creditor Distribution Funding.**

Each Holder of an Allowed General Unsecured Claim in Class 10 will receive, on account of such Claim, a Distribution in Cash equal to the lesser of:

(i)     100% of the Allowed Amount of such Claim, plus post-petition interest at the Federal Judgment Rate applicable on the applicable Petition Date; and

(ii)     a Pro Rata distribution of:

(1)     any positive sum resulting from subtracting the Allowed Senior Claims against the applicable VD Plan Debtor from the Project Value for the applicable VD Plan Debtor's Plan Project; and

(2)     any Residual Cash of the Estate of the applicable VD Plan Debtor; provided that such Pro Rata Distribution shall not be less than 1% of each Allowed Claim.

**(c)     Distribution Dates.**

Distributions in the amounts provided under the Plan are payable to Holders of Allowed General Unsecured Claims in Class 10 after the Effective Date as follows:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(i)  Lehman Creditor Distribution Funding.

For each Allowed General Unsecured Claim in Class 10, Distributions shall be payable the later of (a) thirty (30) days following such Claim's Allowance Determination Date and (b) forty-five days following the Effective Date; provided that if the amount payable therefor is not the maximum amount that might be payable upon resolution of all Disputed Claims, then, the Liquidating Trustee shall make Interim Capped Distributions pending such final determination of Disputed Claims; and

(ii)  Residual Cash.

Any Distribution of Residual Cash will be payable at such times as determined in the sole discretion of the Liquidating Trustee, considering, *inter alia*, the amount of sums available for Distribution and the progress in the claims allowance process.

**5.3.11  Treatment of Allowed Settling Bond Issuer-Related Future Work Claims (Class 11).**

The treatment of any Allowed Settling Bond Issuer-Related Future Work Claims in Class 11 under the Plan will be as follows:

**(a)  Voting and Impairment.**

Class 11 is Impaired under the Plan, and the Holders of the Allowed Settling Bond Issuer-Related Future Work Claims are entitled to vote on the Plan.

**(b)  Distributions and Distribution Dates.**

Allowed Settling Bond Issuer-Related Future Work Claims consist of Allowed Settling Bond Issuer-Backed Future Work Claims and Allowed Settling Bond Issuer-Owned Future Work Claims. Each Holder of an Allowed Settling Bond Issuer-Related Future Work Claim will receive the following on account of its Claim:

(i)  The related Future Work obligations will be performed, with no penalties to be applicable (and, to the extent applicable, with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date);

(ii)  The initial payment for the performance of the Future Work obligations will be the obligation of the applicable Settling Bond Issuer that issued a Future Work

Bond with respect to the subject Claim and will not be an obligation of the Liquidating Trustee, Lehman Nominee or any VD Plan Debtor's Estate;

(iii)    The Lehman Nominee that takes title to the Plan Project to which the subject Claim relates will cooperate in connection with the performance of such Future Work obligations, contingent upon such payment by the applicable Settling Bond Issuer;

(iv)    As and to the extent provided in the applicable Settling Bond Issuer Agreement:

(1)    A Lehman Related Party(ies) will take an assignment from the applicable Settling Bond Issuer of such Settling Bond Issuer's Claims against the applicable VD Plan Debtor and Bond Obligors; and

(2)    In exchange therefor, the Lehman Nominee that takes title to the Plan Project to which the subject Claim relates is to reimburse such Settling Bond Issuer agreed amounts for payments made by such Settling Bond Issuer under the applicable Future Work Bonds; and

(v)    Nonetheless, pursuant to the Bond Modification Discussions or otherwise, the Holder of an Allowed Settling Bond Issuer-Backed Future Work Claim may agree to forego performance or payment for certain Future Work, such as may occur specifically as to such performance or payment of Future Work or through release of the applicable Future Work Bond.

**5.3.12  Treatment of Allowed Interests (Class 12).**

The treatment of any Allowed Interests in Class 12 under the Plan will be as follows:

(a)    Class 12 is <u>Impaired</u> under the Plan, and each Holder of an Allowed Interest is <u>deemed to reject</u> the Plan and is <u>not entitled to vote</u>; and

(b)    On the Effective Date, all such Allowed Interests will be cancelled and each Holder thereof will not be entitled to, and will not, retain or receive any property or interest in property on account of its Interest.

**5.4    <u>Means of Execution and Implementation of the Joint VD Plan.</u>**

**5.4.1    Introduction.**

This section is intended to address how the Proponents intend to fund and to have

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

implemented the obligations to Creditors under the Plan.  It thus provides information regarding

funding sources and mechanisms for the Plan obligations, management of the VD Plan Debtors'

Estates after the Effective Date and other material issues bearing upon the performance of the Plan.

### 5.4.2   The Liquidating Trustee.

The Estate of each VD Plan Debtor will be managed after the Effective Date by the

Liquidating Trustee, who, except as otherwise provided in the Plan, will oversee and effectuate the

Distributions to Creditors under the Plan, the liquidation of the Remaining Other Assets, and the sale

and transfer of the Plan Projects to the Lehman Nominees, and otherwise will implement the Plan.

[_____] will be the Liquidating Trustee or, if such Person declines to serve, another

Person selected by the Lehman Proponents and approved by the Court shall be the Liquidating

Trustee. The person who becomes the Liquidating Trustee, while serving in his capacity as the

Liquidating Trustee, will be an agent of each Estate and not a separate taxable entity therefrom.

Compensation of the Liquidating Trustee will be reasonable compensation payable from the VD

Plan Debtors' Estates after prior notice to, *inter alia*, the Lehman Creditors, Voluntary Debtors'

Committee members, and U.S. Trustee and after order of the Bankruptcy Court.  The Bankruptcy

Court may, by order, replace the Liquidating Trustee in its reasonable discretion.  After the Effective

Date, the Liquidating Trustee, *inter alia*, will cooperate in granting, perfecting or reflecting

perfection of any Liens acknowledged or created or provided for under the Plan, will cooperate with

the Lehman Proponents in the claims process and prosecution, resolution or abandonment of any

objections to Claims, and will resolve or dismiss any Remaining Litigation Claims, all in accordance

with the Plan.

### 5.4.3   Conditions to Confirmation and Plan Effectiveness.

Under the Plan, as more fully set forth herein, the Lehman VD Lenders are to be

conveyed the Plan Projects (through the Lehman Nominees) and receive releases, as more fully set

forth below, and the Liquidating Trustee is to cooperate with any Lehman Related Party in

connection with Bond Modification Discussions that any Lehman Related Party desires to initiate.

As discussed more fully below, unless waived by the Lehman VD Lenders in their sole and absolute

discretion, conditions precedent to entry of the Confirmation Order for the Plan, which Confirmation

113

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Order will reflect the approval of the Plan by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable provisions of the Bankruptcy Code, are: (a) first, execution of a Settling Bond Issuer Agreement by certain of the Lehman Related Parties and each Bond Issuer; (b) second, approval of the role and obligations under the Plan of certain of the Lehman VD Lenders and of each Settling Bond Issuer Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having jurisdiction over the New York Bankruptcy Cases of Lehman Commercial, a Lehman VD Lender, and LBHI, which may be a party to the applicable Settling Bond Issuer Agreement (as a guarantor of one or more applicable Lehman Nominee's reimbursement obligations thereunder) and may be a source of funding of the Lehman Plan Funding; (c) third, as to the Group I Debtors, that the Lehman VD Lenders good faith estimate of such Debtors' Allowed Senior Claims does not exceed $_____ and as to the Group II Debtors, that the Lehman VD Lenders good faith estimate of such Debtors' Allowed Senior Claims does not exceed $_____; and (d) fourth, unless waived by the Lehman VD Lenders as to one or more VD Plan Debtors, confirmation of the Plan as to all of the VD Plan Debtors. Conditions to the Plan's effectiveness and occurrence of the Effective Date are: (i) the Confirmation Order must be a Final Order in form and substance reasonably satisfactory to the Lehman VD Lenders; (ii) unless waived by the Lehman VD Lenders, all agreements and instruments contemplated by the Plan have been executed and delivered and all conditions to their effectiveness satisfied or waived; and (iii) unless waived by the Lehman VD Lenders as to one or more VD Plan Debtors, the simultaneous occurrence of the Effective Date for all of the VD Plan Debtors.

### 5.4.4   Plan Funding.

Under the Plan, the Lehman VD Lenders have agreed to pay the Lehman Post-Confirmation Expense Funding and the Lehman Creditor Distribution Funding. Additionally, except as expressly provided otherwise in the Plan, Cash that is not Cash Collateral will first be used to pay all Allowed Administrative Claims, and then Allowed Priority Claims, and then Allowed Secured Real Property Tax Claims, and any excess thereof may be held as a reserve by the Liquidating Trustee for Post-Confirmation Expenses in lieu or prior to becoming Residual Cash.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**(a)**   **Lehman Creditor Distribution Funding.**

The Lehman VD Lenders have agreed under the Plan to fund, to the extent not paid

from other designated sources, through permitting use of Cash Collateral or through new transfers of

Cash or through other arrangements, the Distributions that Plan Articles IV and VI mandate for the

following (i) Allowed Secured Real Property Tax Claims (Class 1), (ii) Allowed Administrative

Claims, (iii) Allowed Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr.

Secured Mechanic's Lien Claims (Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to

the extent that the third alternative treatment set forth in the Plan is selected), (viii) the Lehman

Guaranteed Minimum Distribution, and (ix) as applicable, the Lehman Distribution Enhancement for

Holders of Allowed General Unsecured Claims in Class 8 and Class 9 and Allowed Reliance Claims

in Class 6 and Class 7.  The Lehman VD Lenders also have agreed under the Plan to arrange, as

provided in Plan Article VI, for the applicable Lehman Nominees to cooperate in the performance of

Future Work that is the subject of an Allowed Settling Bond Issuer- Backed Future Work Claim and

to reimburse the agreed upon amount to the applicable Settling Bond Issuer for the Settling Bond

Issuer -Incurred Future Work Obligations arising under any Future Work Bond.

**(i)**   **Lehman Guaranteed Minimum Distribution.**

The Lehman VD Lenders have agreed under the Plan to fund guaranteed, minimum

recoveries, of one percent (1%) of each Allowed General Unsecured Claim in Class 8 and Class 9

and one percent (1%) of each Allowed Reliance Claim in Class 6 and Class 7, regardless of whether

the individual Creditor holding such Claim executes and delivers for the benefit of the Lehman

Released Parties the applicable Creditor's Assignment / Release for Lehman.

**(ii)**   **Lehman Distribution Enhancement.**

For Creditors holding Allowed General Unsecured Claims in Class 8 and Class 9 and

Allowed Reliance Claims in Class 6 and Class 7 who do execute and deliver for the benefit of the

Lehman Released Parties the applicable Creditor's Assignment / Release for Lehman, the Lehman

VD Lenders have agreed to provide enhanced recoveries (a) of up to four percent (4%) of each

Allowed General Unsecured Claim in Class 8 and Class 9, (b) of up to twenty-four percent (24%) of

each Allowed Reliance Claim in Class 6, and (c) of up to nine percent (9%) of each Allowed

Reliance Claim in Class 7, provided that the exact percentage(s) of enhanced recovery will be subject to the Plan.

**(b)** **Lehman Post-Confirmation Expense Funding.**

Under the Plan, the Lehman VD Lenders have agreed to pay an amount (with such amount not to exceed $500,000 and which shall not be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date) for Post-Confirmation Expenses in the form of new Cash transfers or by a Lehman VD Lender permitting the use of Cash Collateral of a Lehman VD Lender, each as loans payable by each benefitted VD Plan Debtor's Estate, provided that the recourse for such loans shall be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

**(c)** **Funding with Cash Collateral of a Lehman VD Lender.**

If permitted by the applicable Lehman VD Lender, on the Effective Date, the Liquidating Trustee will use Cash Collateral for a Lehman Secured Claim to pay the Lehman Creditor Distribution Funding (in the order set forth in the definition thereof, unless otherwise specified by the applicable Lehman VD Lender) and then to pay the applicable Lehman VD Lender, unless it agrees that the Liquidating Trustee, instead, may hold such Cash Collateral in the Plan Reserve for potential use for payment of Post-Confirmation Expenses.

**(d)** **Funding with New Cash Payments from a Lehman Related Party.**

On the Effective Date, the Lehman VD Lenders will cause to be paid to the Liquidating Trustee from new Cash transfers sufficient amounts such that, when combined with other available and designated sources and Cash Collateral for Lehman Secured Claims and Lehman Administrative Loans, the Liquidating Trustee is holding sufficient funds to make the payments required under the Plan to be paid on the Effective Date from Lehman Plan Funding. Thereafter, the Lehman VD Lenders will pay the Liquidating Trustee further amounts at such times as the VD Plan Debtors and the Liquidating Trustee, as applicable, and the Lehman VD Lenders reasonably determine are necessary to enable the Liquidating Trustee to make timely payments due under the Plan as Lehman Plan Funding.

**(e)     Plan Reserve.**

All Lehman Plan Funding provided by a Lehman Related Party will be deposited in or held in the Plan Reserve until utilized in accordance with the Plan. The applicable Lehman VD Lender will report the Cash Collateral, while held in the Plan Reserve, as being owned by it for all applicable federal, state and local income tax purposes.  To enable the applicable Lehman VD Lender to pay its applicable federal, state and local income tax with respect to amounts in the Plan Reserve, the Liquidating Trustee will distribute to the applicable Lehman VD Lender, or cause to be distributed, forty five percent (45%) of all income and gain earned with respect to amounts in the Plan Reserve no less than annually and prior to any such amounts being otherwise distributed pursuant to the Plan.

**(f)     Terms and Documentation of Lehman Plan Funding.**

The Liquidating Trustee will be obligated to repay to the applicable Lehman Related Party any Lehman Plan Funding not utilized in accordance with the Plan.  The Liquidating Trustee also will be obligated to repay all of the Lehman Post-Confirmation Expense Funding to the extent of Net Cash Proceeds from Remaining Other Assets, based on such funding being a non-recourse loan against Remaining Other Assets and their Net Cash Proceeds as indicated above.  Repayments will be due immediately upon funds therefor becoming available.  Repayment obligations will be secured by a Lien (or replacement Liens as to use of Cash Collateral) (1) of first priority in all funds in the Plan Reserve and in any Post-Confirmation Account(s) until such funds have been utilized in accordance with the Plan and (2) a Lien on any Remaining Other Assets, junior only to any other valid and indefeasible Liens in the Remaining Other Assets.  The Liquidating Trustee will reasonably execute all documents reasonably requested by a Lehman VD Lender to evidence a loan or use of Cash Collateral constituting Lehman Post-Confirmation Expense Funding and to evidence any Liens or replacement Liens for the use of Cash Collateral, securing the Liquidating Trustee's repayment obligations, on terms and in a form reasonably requested by such Lehman VD Lender, with customary and reasonable provisions for interest, fees and expenses upon the loan(s).

**5.4.5     Post-Confirmation Expenses and Intercompany Loans.**

Limited functions are required to implement the Plan after the Effective Date.  The

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Liquidating Trustee will need to distribute Cash to Creditors (most of which is being provided by the Lehman VD Lenders), convey the Plan Projects to the Lehman Nominees, participate and cooperate with the Lehman VD Lenders in the claim reconciliation and objection processes, and liquidate the limited Remaining Other Assets.  Post-Confirmation Expenses expected to be incurred include:

(a)     Compensation for the Liquidating Trustee for the period following the Effective Date;

(b)     Expenses for fees of the professionals retained by the Liquidating Trustee following the Effective Date;

(c)     Quarterly U.S. Trustee fees for this government agency with responsibilities in respect to bankruptcy cases following the Effective Date; and

(d)     Additional obligations of the Liquidating Trustee (in such capacity) that arise on or after the Effective Date consistent with the Plan.

All Post-Confirmation Expenses may be paid by the Liquidating Trustee from the Post-Confirmation Account(s) upon ten (10) days' prior written notice and opportunity to object provided to the Lehman Creditors, but without further notice to any others, including Creditors or Holders of Interests, or approval of the Bankruptcy Court.  Any disputes concerning the payment of Post-Confirmation Expenses will be submitted to the Bankruptcy Court for resolution.  To the extent readily determinable, Post-Confirmation Expenses attributable to a particular VD Plan Debtor will be paid from that VD Plan Debtor's Assets consistent with the provisions of the Plan.  To the extent of available Assets from each VD Plan Debtor, other Post-Confirmation Expenses will be payable by each VD Plan Debtor Pro Rata consistent with the Plan, provided that after a VD Plan Debtor's Available Cash or Assets are exhausted, the other VD Plan Debtors will absorb such VD Plan Debtor's share of unpaid Post-Confirmation Expenses as provided in the Plan, which will be Pro Rata to the extent reasonably possible.  To the extent one VD Plan Debtor advances funds on behalf of another, the Liquidating Trustee will book a receivable for the advancing VD Plan Debtor and a payable for the borrowing VD Plan Debtor.

**5.4.6    Vesting of Assets in Estates of VD Plan Debtors Managed by Liquidating Trustee.**

Except as otherwise provided in the Plan or any agreement, instrument or other document relating to the Plan, on and after the Effective Date, all property of each VD Plan Debtor's Estate will vest in each respective Estate, free and clear of all Liens.  Except as may be provided in the Plan, on and after the Effective Date, the Liquidating Trustee may operate the business of each Estate and may use, acquire or dispose of property and compromise or settle any Claims or Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  On motion to the Bankruptcy Court and consent of the Lehman VD Lenders, the Liquidating Trustee may elect hereafter to abandon to the VD Plan Debtors' Assets of inconsequential value.

**5.4.7    Disposition and Value of Assets**

The Assets of the Estates of the VD Plan Debtors consist primarily of certain Projects (the Plan Projects).  There also may be some Cash, some of which is Cash Collateral for Lehman Secured Claims and/or Lehman Administrative Loans, and certain Remaining Other Assets, including Remaining Litigation Claims.  (Remaining Litigation Claims possibly could result in affirmative recoveries for the Estates or possibly could reduce the size of the Creditor Claims to share in Available Cash for Distribution.)

**(a)    Disposition and Value of the Plan Projects.**

a.    Pursuant to Bankruptcy Code section 1123(a) and the Plan, each Plan Project and all easements and appurtenances thereto and all associated personal property and rights, including the applicable VD Plan Debtor's Estate's right, title and interest in, to and under any development agreements, plans, engineering reports, permits and community facilities district bonds, but excluding subdivision improvement and monumentation agreements, will be sold and conveyed by virtue of the Confirmation Order to the applicable Lehman Nominee (to be identified for each Plan Project by the Lehman VD Lenders by Filing a statement providing such identification) free and clear of any Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) with

such Encumbrances (other than the Lehman Claim Liens and other Permitted Liens) not paid in connection with the transaction to attach to the Lehman Creditor Distribution Funding to the extent payment is due therefor under the Plan. in the same priority and subject to the same defenses and avoidability, if any, as before the closing of the transaction.  After conveyance of a Plan Project to a Lehman Nominee, the Lehman Nominee will report the subject Plan Project and related Assets as being owned by it for all applicable federal, state and local income tax purposes.

b.        To facilitate further conveyances of the Plan Projects, the recording of evidence of the conveyances and the identification of specific Encumbrances from which a Plan Project is being sold free and clear or specific Permitted Liens:

(1)        Separate orders, consistent with the Plan, authorizing such conveyances will be issued by the Bankruptcy Court as reasonably requested by the Lehman VD Lenders or applicable Lehman Nominee, which orders will reflect the conveyance of the Plan Projects free and clear of all Encumbrances (other than Lehman Claim Liens and other Permitted Liens) in accordance with the Plan; and

(2)        Entry of the Confirmation Order, without more and thus automatically, will retroactively and prospectively authorize the VD Plan Debtors and the Liquidating Trustee to take all actions that a Lehman VD Lender or Lehman Nominee believes in good faith to be necessary or appropriate to consummate the transactions contemplated by the Plan, which actions would include execution of the grant deeds, assignments and other documents set forth in a supplemental exhibit to the Plan (Plan Supplement) to be filed by the Lehman Proponents no later than ten (10) days prior to the last day of the hearing on Confirmation and which transactions would include conveyance of the Plan Projects to the Lehman VD Lenders or Lehman Nominees as provided in the Plan; and

(3)        At no material cost to the VD Plan Debtors or Liquidating Trustee, upon the reasonable request of a Lehman VD Lender or Lehman Nominee at any time and from time to time on or after the Effective Date and through the closing of the VD Plan Debtors' Cases, and notwithstanding any prior knowledge of a Lehman Creditor or Lehman Nominee, the VD Plan Debtors, prior to the Effective Date, and the Liquidating Trustee, from and after the Effective

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Date, will, do, execute, acknowledge and deliver, and cause to be done, executed, acknowledged and delivered, all such further reasonable acts, deeds, transfers, conveyances, assignments, powers of attorney or assurances as may be required (i) to transfer, assign, convey and grant all of the Plan Projects to the applicable Lehman Nominees in accordance with the terms of the Plan, (ii) for the acquiring Lehman Nominees to record such transfers, assignments and conveyances of the Plan Projects in the applicable filing offices of the applicable governmental entity or (iii) to otherwise implement the Plan.

c.      The conveyances, free and clear of Encumbrances (other than Lehman Claim Liens and other Permitted Liens), of the Plan Projects of the Group I Debtors and Group II Debtors to the Lehman VD Lenders or Lehman Nominees under the Plan, result in a deficiency owed to the Lehman VD Lenders under the applicable Lehman Loans (the "Lehman Creditor Deficiency Claims").  The Allowed General Unsecured Claims of the Lehman VD Lenders and the Allowed Amount thereof with respect to such Lehman Creditor Deficiency Claims shall be fixed for all purposes relevant to the Plan and Disclosure Statement as to all VD Plan Debtors and Creditors at the amounts set forth in Plan Article V, which determination is based, in part, on the Project Values.

d.      Pursuant to the Plan, the Plan Projects of the Group III Debtors shall also be conveyed to the Lehman VD Lenders or Lehman Nominees, free and clear of Encumbrances (other than any Lehman Claim Liens and other Permitted Liens), in exchange for the consideration to be provided to Creditors of the Group III Debtors as set forth in Article VI hereof and based on the Lehman Secured Claims against the Holders of Interests in the Group III Debtors (SunCal I and SunCal Summit Valley) and the applicable Project Values less Allowed Senior Claims.

**(b)      Remaining Litigation Claims, Net Cash Litigation Recoveries and Remaining Other Assets.**

The Remaining Other Assets (other than Cash) will be liquidated by the Liquidating Trustee, and the Net Cash Proceeds therefrom will be available for payment of Claims and Creditors in accordance with the Plan.  Pursuant to section 1123(b)(3) of the Bankruptcy Code and subject to the compromises, waivers and releases provided in the Plan, the Liquidating Trustee will retain all Remaining Litigation Claims whether or not pending on the Effective Date. Unless a Litigation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Claim is expressly waived, relinquished, released, compromised or settled in the Plan or prior to the

Plan's Effective Date in a Final Order, all rights with respect to such Litigation Claims are reserved

and the Liquidating Trustee may pursue such Remaining Litigation Claims. The Liquidating Trustee

will not settle or abandon a Remaining Litigation Claim valued at greater than $100,000, if any,

without a Lehman VD Lender's consent; and the Lehman VD Lenders may pursue any Remaining

Litigation Claim for the applicable Estate or Estates that, upon request, the Liquidating Trustee does

not agree to pursue. Any disputes concerning the settlement or abandonment of a Remaining

Litigation Claim will be submitted to the Bankruptcy Court for resolution on no less than ten (10)

days' notice to the objecting party. All Net Cash Litigation Recoveries realized or obtained in

respect of Remaining Litigation Claims of the Estates will be promptly deposited into the Post-

Confirmation Account(s) or Plan Reserve, as appropriate. Except as otherwise provided in the Plan

and the Confirmation Order, the Net Cash Litigation Recoveries will be free and clear of all

Encumbrances and will only be expended in accordance with the provisions of the Plan.

### 5.4.8 Bond Claims and the Settling Bond Issuer Agreements.

#### (a) Background.

Prior to the Petition Dates for the VD Plan Debtors, the Bond Issuers, at the request of

certain VD Plan Debtors, issued certain Project Bonds in connection with the development of the

Plan Projects owned by such VD Plan Debtors. These Project Bonds issued by the Bond Issuers for

the benefit of the VD Plan Debtors consist of either Payment Bonds or Future Work Bonds, securing

payment to the applicable third party for work performed by such third party for or with respect to

the applicable Plan Project and/or for the performance of certain work by the applicable VD Plan

Debtor which work has not yet been performed. Although the definitions herein are controlling, the

Payment Bonds might typically secure payment to contractors and others who undertook

construction work and Future Work Bonds might typically guarantee the performance of Future

Work such as infrastructure improvements to a municipality who has jurisdiction over the

development of the applicable Plan Project and who may have executed a development agreement

providing for entitlements relating to such Plan Project. Reimbursement to the Bond Issuer for any

payments made under or any liabilities or obligations incurred by such Bond Issuer with respect to

the Project Bonds were guaranteed or indemnified by the Bond Obligors.

Prepetition, Bond Issuers are believed to have paid and/or settled with some of the third party beneficiaries of Payment Bonds (and received an assignment of the Claims held by such third parties upon such payment or settlement). As a result, the Claims, if any, of a Bond Issuer against the applicable VD Plan Debtor and relating to such Payment Bonds would be non-contingent.

As of the applicable Petition Dates, various other third parties with Bond-Backed Claims allege that they held unpaid or unsatisfied Claims secured by Project Bonds of the Bond Issuers. The Claims, if any, of a Bond Issuer relating thereto would have been contingent.

After the Petition Dates, Bond Issuers are believed to have continued paying and/or settling with Bond-Backed Claimants secured by Payment Bonds. To the extent such occurred, any Claim of a Bond Issuer relating thereto may have become non-contingent. Still, there remain Bond-Backed Claimants holding Bond-Backed Claims secured by Payment Bonds and Future Work Bonds that remain unpaid or unsatisfied. The Claims, if any, of a Bond Issuer relating thereto are contingent.

### (b) Settling Bond Issuer Agreement.

Absent a settlement with each of the Bond Issuers, each Allowed Bond Claim related to a Future Work Bond will be classified and treated under the Plan as either a Reliance Claim in Class 6 or Class 7 or a General Unsecured Claim in Class 7, Class 8, Class 9 or Class 10, depending on which definition the Claim fits within. To facilitate confirmation of the Plan, certain of the Lehman Related Parties (including the Lehman Nominees taking title to Plan Projects as to which there are related Bond-Backed Claims secured by Future Work Bonds) are prepared to enter into agreements with respect to certain matters relating to the Allowed Bond-Backed Claims secured by Future Work Bonds.

Under each Settling Bond Issuer Agreement and as part of the Lehman Creditor Distribution Funding, the Lehman Nominee that takes title to a Plan Project for which Future Work Bonds were issued and remain outstanding as of the Effective Date, in consideration for an assignment of certain Allowed Claims from the applicable Settling Bond Issuer as described below,

will reimburse and or commit to reimburse such Settling Bond Issuer for all or a portion of the

Settling Bond Issuer -Incurred Future Work Obligations arising in connection with the satisfaction of

such Settling Bond Issuer's obligations to Bond-Backed Claimants of Future Work Bonds issued by

such Settling Bond Issuer and related to such Allowed Claims provided that each Lehman Nominee

will have first requested such performance.  Such reimbursement obligations of each applicable

Lehman Nominee will be collateralized or credit enhanced in one (and only one) of the following

two manners, as determined by the Lehman VD Lenders in their sole and absolute discretion (the

applicable type of collateral or credit enhancement being provided by any particular Lehman

Nominee being referred to herein as the "Future Work Obligation Collateral"):  (a) a first Lien deed

of trust encumbering the applicable Plan Project owned by such Lehman Nominee and securing the

reimbursement obligations of such Lehman Nominee to the applicable Settling Bond Issuer, or (b) a

guarantee of such Lehman Nominee's reimbursement obligations provided by LBHI, which

guarantee obligation of LBHI will be an administrative claim in the New York Bankruptcy Cases.

In turn, the applicable Settling Bond Issuer will agree that such Settling Bond Issuer, itself, will not

receive anything under the Plan from the VD Plan Debtors' Estates with respect to the Settling Bond

Issuer-Owned Claims or any other Claims it may have (provided that, with respect to Settling Bond

Issuer-Owned Future Work Claims, it will receive the applicable cooperation and reimbursement

from the applicable Lehman Nominees and the applicable Future Work Obligation Collateral as

described above).  Further, under each Settling Bond Issuer Agreement, the applicable Settling Bond

Issuer would agree to cooperate with and assist the Lehman Related Parties in connection with the

Bond Modification Discussions.

Moreover, under each Settling Bond Issuer Agreement, as reflected in the Plan, the

applicable Settling Bond Issuer will agree to assign to the Lehman VD Lenders or another Lehman

Related Party (as determined by the Lehman VD Lenders) (and release to the extent such assignment

is ineffective), effective as of the Effective Date, all the Settling Bond Issuer-Owned Claims held by

the applicable Settling Bond Issuer as of the Effective Date and all such Claims acquired by such

Settling Bond Issuer thereafter, as well as all right and claims that the Settling Bond Issuer may have

against the Bond Obligors. Upon assignment by the applicable Settling Bond Issuer of Settling Bond

Issuer-Owned Performed Work Claims to a Lehman VD Lender or other Lehman Related Party under the Plan, such Lehman VD Lender or other Lehman Related Party will be entitled to the proportional share of the Residual Cash attributable to such Allowed Claim, as more fully set forth in the Plan.  To the extent that on or after the Effective Date, the applicable Settling Bond Issuer acquires any claims of the type assigned or released on the Effective Date by the Settling Bond Issuer Release for Lehman Released Parties, promptly thereafter, the applicable Settling Bond Issuer will execute an assignment / release in substantially the form of the Settling Bond Issuer Release for Lehman Released Parties for the benefit of the Liquidating Trustee and Lehman Released Parties.

Thus, whereas other Creditors are to receive the Lehman Distribution Enhancement with respect to each Allowed General Unsecured Claim or Allowed Reliance Claim that they hold if they execute and deliver the Creditor Assignment / Release for Lehman, under a Settling Bond Issuer Agreement, the applicable Settling Bond Issuer is to receive treatment under the Plan providing nothing for its Settling Bond Issuer -Owned Performed Work Claims and is to receive an agreed-upon reimbursement essentially for all or a portion of the Settling Bond Issuer-Incurred Future Work Obligations arising from Future Work Bonds relating to the Allowed Settling Bond Issuer-Related Future Work Claims with such Settling Bond Issuer agreeing to waive payment for any obligations which are not required to be reimbursed pursuant to the terms of the applicable Settling Bond Issuer Agreement.

### (c)     Bond Modification Discussions.

There may be discussions and efforts to approach and initiate discussions by Lehman Related Parties, with various municipalities, utilities and governmental, quasi-governmental and other entities that the Lehman VD Lenders or Lehman Nominees believe, in good faith, are beneficiaries under certain of the Future Work Bonds (including Holders of Class 11 Settling Bond Issuer-Backed Future Work Claims), regarding the development rights and entitlements relating to the Plan Projects including (a) the implementation of any modifications to such development rights and entitlements and/or to any development agreements, subdivision agreements, permits, approvals, consents or other documents, instruments and agreements evidencing, effectuating or providing for such development rights and entitlements, and (b) the reduction, release and/or substitution of any

Future Work Bonds issued for the benefit of any Plan Project and currently outstanding ("Bond Modification Discussions"). Pursuant thereto or otherwise, agreement may be reached by all applicable parties either (a) as to the timing, scope or other matters with respect to certain Future Work or its performance or (b) to forego performance or payment for certain Future Work directly or through release of the applicable Future Work Bond.

### 5.4.9 Releases for Lehman Released Parties.

In exchange for, *inter alia*, the Lehman Plan Funding, various releases are to be afforded for the benefit of the Lehman Released Parties.

#### (a) Creditors' Assignments / Releases for Lehman.

In exchange for the Lehman Distribution Enhancement, each Creditor who holds a Reliance Claim or General Unsecured Claim against a Group I Debtor or Group II Debtor and checks the appropriate box on its Ballot and/or timely executes and delivers a separate, written assignment or assignment and release in accordance with the Plan, whether or not the Creditor votes in favor of the Plan, automatically upon the occurrence of the Effective Date, assigns to the applicable Lehman VD Lender (or if multiple applicable Lehman VD Lenders, to the Lehman VD Lender holding the most senior Lien against the applicable Plan Project) all rights, benefits and interests of the assigning Holder with respect to all such Holder's Reliance Claims, General Unsecured Claims, and, if any, Lehman Released Claims held as of the Disclosure Hearing Date and as might arise after the Disclosure Hearing Date as a result of an avoided transfer, with such assignment to be effective immediately upon the Effective Date. Such assignments are to be effective to the greatest extent permitted by applicable law and will not require anything or any action for their effectiveness except as expressly provided herein. To the extent any such assignment is not effective to assign all of any such Reliance Claim, General Unsecured Claim or Lehman Released Claim, each Holder of such Reliance Claim or General Unsecured Claim who, in exchange for the Lehman Distribution Enhancement, checks the appropriate box on its Ballot and/or timely executes and delivers a separate, written release or assignment and release in accordance with the Plan, automatically upon the occurrence of the Effective Date, unconditionally, irrevocably and generally releases, acquits and forever discharges, waives and relinquishes the Holder's General

Unsecured Claims, Reliance Claims and Lehman Released Claims (including such Claims as might

arise after the Disclosure Hearing Date as a result of an avoided transfer) from and against the VD

Plan Debtors and all Lehman Released Parties, including, without limitation, the Lehman Nominees,

with such release to be effective immediately after the moment that the assignment was to become

effective. Such releases are to be effective to the greatest extent permitted by applicable law and

will not require anything or any action for their effectiveness except as expressly provided herein.

**SUCH RELEASES INCLUDE AN EXPRESS, INFORMED, KNOWING AND VOLUNTARY**

**WAIVER AND RELINQUISHMENT TO THE FULLEST EXTENT PERMITTED BY LAW**

**OF RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH**

**READS AS FOLLOWS, AND UNDER ANY SIMILAR OR COMPARABLE LAWS**

**ANYWHERE IN THE WORLD:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each releasing Creditor, by the release, waives and relinquishes any right or benefit

that such Creditor has or may have under section 1542 of the California Civil Code or any similar

provision of statutory or non-statutory law of California or any other jurisdiction to the fullest extent

that such releasing Creditor may lawfully waive such rights and benefits pertaining to the subject

matter of the release set forth above. In that regard, each such releasing Creditor, by the release,

further acknowledges that such Creditor is aware that such Creditor or the attorneys of such Creditor

may hereafter discover claims or facts in addition to or different from those which such Creditor or

such attorneys now know or believe to exist with respect to the subject matter of the release, and that

it is each such releasing Creditor's intention fully, finally, and forever to settle and release the

Holder's General Unsecured Claims, Reliance Claims and Lehman Released Claims (including such

Claims as might arise after the Disclosure Hearing Date as a result of an avoided transfer) from and

against the VD Plan Debtors and all Lehman Released Parties, including, without limitation, the

Lehman Nominees. Through the release, each such releasing Creditor is expressly acknowledging

that it understands that, notwithstanding the discovery or existence of any such additional or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  different claims or facts, the release shall be and remain in full force and effect as a full and

2  complete general release with respect to the Holder's General Unsecured Claims, Reliance Claims

3  and Lehman Released Claims (including such Claims as might arise after the Disclosure Hearing

4  Date as a result of an avoided transfer) from and against the VD Plan Debtors and all Lehman

5  Released Parties, including, without limitation, the Lehman Nominees. Through the release, each

6  such releasing Creditor further acknowledges that no released Person has made any representation of

7  any kind or character whatsoever in order to induce the execution of the release other than the

8  Disclosure Statement for which certain released Persons are Proponents, subject to its disclaimers.

9  In each case, neither the assignment nor the release will include for General

10  Unsecured Claims or Reliance Claims (including such Claims as might arise after the Disclosure

11  Hearing Date as a result of an avoided transfer) (1) a Creditor's rights under the Plan to the Lehman

12  Creditor Distribution Funding and (2) the proportional share of Residual Cash attributable under the

13  Plan to the Claims so assigned or released.  Moreover, for clarity, (A) neither the assignment nor the

14  release will preclude a Creditor holding an assigned or released Claim from opposing or responding

15  defensively to the Filing of an objection to such Claim or request for determination of such Claim's

16  status as a Reliance Claim (nor preclude such Filing of an objection to the Claim or request for

17  determination of such Claim's status as a Reliance Claim); (B) neither the assignment nor the release

18  includes any claim of a Creditor against a Bond Issuer arising under a Project Bond to the extent

19  such claim is severable from any and all of such Creditor's General Unsecured Claims, Reliance

20  Claims and Lehman Released Claims; and (C) neither the assignment nor the release will preclude a

21  Creditor against which the Liquidating Trustee asserts a Remaining Litigation Claim from opposing

22  or responding defensively to such Remaining Litigation Claim, including assertion of its Claims for

23  offset, recoupment or setoff purposes (nor preclude the Liquidating Trustee from asserting any

24  Remaining Litigation Claims against such Creditor).

25  On or as soon as practicable after the Effective Date, the assigning and/or releasing

26  Creditor will dismiss (with prejudice) all litigation pending against a Lehman Released Party with

27  respect to a Lehman Released Claim, with all parties to bear their own costs and professional fees.

28  The assigning and/or releasing Creditor also will take all appropriate steps to withdraw, dismiss or

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 release any Encumbrances it may hold or have asserted against any of the Plan Projects or other

2 Assets of the VD Plan Debtors as a condition of receipt of its Distributions under the Plan.

3     If the Ballot is appropriately marked to indicate the Creditor's election to receive the

4 Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman,

5 the Confirmation Order, without more, will effectuate the assignment and/or release, waiver and

6 relinquishment described or referenced in this section for the Lehman Released Parties, in

7 accordance herewith.  Nonetheless, and regardless of whether the Ballot is appropriately marked: (a)

8 the Lehman VD Lenders may require the Creditor electing to receive the Lehman Distribution

9 Enhancement to execute and deliver to the VD Plan Debtors, the Liquidating Trustee or a Lehman

10 Released Party, a separate Creditor's Assignment / Release for Lehman in a form determined by the

11 Lehman Released Party and reasonably consistent herewith; and (b) a condition subsequent to the

12 assignment and release will be the disallowance of all Claims of the Creditor electing to receive the

13 Lehman Distribution Enhancement prior to the Creditor receiving any of the Lehman Distribution

14 Enhancement.

15     If such condition subsequent to a particular Creditor's Assignment / Release for

16 Lehman will occur: (i) the applicable Creditor's Assignment / Release for Lehman will be void and

17 (ii) if such Creditor dismissed any litigation pending against a Lehman Released Party with respect

18 to a Lehman Released Claim with the dismissal reciting it was based on the Plan's assignment and

19 release for such Lehman Released Party, then such the Lehman Released Party will stipulate to

20 reinstatement of such litigation (subject to all applicable defenses, objections and other rights of the

21 applicable Lehman Released Party); provided that such voidance of the applicable Creditor's

22 Assignment / Release for Lehman will not limit or affect any other provision or effect of the Plan,

23 including, without limitation, such voidance of an applicable Creditor's Assignment / Release for

24 Lehman will not preserve or restore any Encumbrances from which a Plan Project is conveyed free

25 and clear under the Plan.

26     **(b)**    **Settling Bond Issuer Releases for Lehman Released Parties.**

27     Consistent with each Settling Bond Issuer Agreement, each Settling Bond Issuer,

28 automatically upon the occurrence of the Effective Date, will assign to the applicable Lehman VD

Lender (or if multiple applicable Lehman VD Lenders, to the Lehman VD Lender holding the most

senior Lien against the applicable Plan Project or its designee) or to another Lehman Related Party

(as determined by the applicable Lehman VD Lender) all rights, benefits and interests of the

applicable Settling Bond Issuer with respect to all the Settling Bond Issuer -Owned Claims, and, if

any, Lehman Released Claims, including, without limitation, the applicable Settling Bond Issuer's

rights under the Plan, on account of any the Settling Bond Issuer -Owned Performed Work Claims

that are not Secured Claims, to a proportional share of Residual Cash attributable under the Plan to

such Claims so assigned to a Lehman VD Lender or other Lehman Related Party, and shall further

assign all such Settling Bond Issuer's rights and claims against all Bond Obligors, with such

assignment to be effective immediately upon the Effective Date. Such assignments are to be

effective to the greatest extent permitted by applicable law.  To the extent such assignments are not

effective to assign all of any such Settling Bond Issuer -Owned Claims (subject to the express

exceptions above), the applicable Settling Bond Issuer, unconditionally, irrevocably and generally

releases, acquits and forever discharges, waives and relinquishes (a) the Lehman Released Claims,

(b) the Settling Bond Issuer -Owned Claims, and (c) each other Claim owned by the applicable

Settling Bond Issuer against any of the VD Plan Debtors (other than any Class 11 Allowed Claim it

may hold arising from a Project Bond issued for the Plan Project of the VD Plan Debtor against

which the Class 11 Claim is asserted), to the extent that any of such Claims are owned by the

applicable Settling Bond Issuer as of the moment prior to the Effective Date, from and against all

Lehman Released Parties, including, without limitation, the Lehman Nominees, with such release to

be effective immediately after the moment that the assignment was to become effective.  **SUCH**

**RELEASES INCLUDE AN EXPRESS, INFORMED, KNOWING AND VOLUNTARY**

**WAIVER AND RELINQUISHMENT TO THE FULLEST EXTENT PERMITTED BY LAW**

**OF RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH**

**READS AS FOLLOWS, AND UNDER ANY SIMILAR OR COMPARABLE LAWS**

**ANYWHERE IN THE WORLD:**

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

130

Each releasing Settling Bond Issuer, by the release, waives and relinquishes any right
or benefit that such Settling Bond Issuer has or may have under section 1542 of the California Civil
Code or any similar provision of statutory or non-statutory law of California or any other jurisdiction
to the fullest extent that such releasing Settling Bond Issuer may lawfully waive such rights and
benefits pertaining to the subject matter of the release set forth above. In that regard, each such
releasing Settling Bond Issuer, by the release, further acknowledges that such Settling Bond Issuer is
aware that such Settling Bond Issuer or its attorneys may hereafter discover claims or facts in
addition to or different from those which such Settling Bond Issuer or such attorneys now know or
believe to exist with respect to the subject matter of the release, and that it is each such releasing
Settling Bond Issuer's intention fully, finally, and forever to settle and release (a) the Lehman
Released Claims, (b) the Settling Bond Issuer -Owned Claims, and (c) each other Claim owned by
the applicable Settling Bond Issuer against any of the VD Plan Debtors (other than any Class 11
Allowed Claim it may hold arising from a Project Bond issued for the Plan Project of the VD Plan
Debtor against which the Class 11 Claim is asserted), to the extent that any of such Claims are
owned by the applicable Settling Bond Issuer as of the moment prior to the Effective Date, from and
against the VD Plan Debtors and all Lehman Released Parties, including, without limitation, the
Lehman Nominees. Through the release, each such releasing Settling Bond Issuer is expressly
acknowledging that it understands that, notwithstanding the discovery or existence of any such
additional or different claims or facts, the release shall be and remain in full force and effect as a full
and complete general release with respect to (a) the Lehman Released Claims, (b) the Settling Bond
Issuer -Owned Claims, and (c) each other Claim owned by the applicable Settling Bond Issuer
against any of the VD Plan Debtors (other than any Class 11 Allowed Claim it may hold arising
from a Project Bond issued for the Plan Project of the VD Plan Debtor against which the Class 11
Claim is asserted), to the extent that any of such Claims are owned by the applicable Settling Bond
Issuer as of the moment prior to the Effective Date, from and against the VD Plan Debtors and all
Lehman Released Parties, including, without limitation, the Lehman Nominees. Through the release,
each such releasing Settling Bond Issuer further acknowledges that no released Person has made any
representation of any kind or character whatsoever in order to induce the execution of the release.

In each case, neither the assignment nor the release will include for Allowed Settling Bond Issuer-Related Future Work Claims the obligation of the Lehman Nominee that takes title to a Plan Project to reimburse the applicable Settling Bond Issuer, pursuant to the terms of the applicable Settling Bond Issuer Agreement, for all or a portion of the Settling Bond Issuer -Incurred Future Work Obligations arising from each Allowed Settling Bond Issuer-Related Future Work Claim, incurred with respect to such Plan Project.

On or as soon as practicable after the Effective Date, the assigning and/or releasing Bond Issuer will dismiss (with prejudice), all litigation pending against a Lehman Released Party with respect to a Lehman Released Claim, with all parties to bear their own costs and professional fees.

The Confirmation Order, without more, will effectuate the release, waiver and relinquishment described or referenced in this section for the Lehman Released Parties in accordance herewith.

(c)      **Plan Release for Lehman.**

In exchange for the consideration represented by, *inter alia*, the Lehman Plan Funding, as of the Effective Date, the Estate of each VD Plan Debtor, on behalf of itself and its Affiliates exclusive of other Debtors in these Cases, automatically upon the occurrence of the Effective Date, will be deemed to unconditionally, irrevocably and generally release, acquit and forever discharge, waive and relinquish any and all Lehman Released Claims against each and every Lehman Released Party.

**THE RELEASE GIVEN ABOVE INCLUDES AN EXPRESS, INFORMED, KNOWING AND VOLUNTARY WAIVER AND RELINQUISHMENT TO THE FULLEST EXTENT PERMITTED BY LAW OF RIGHTS UNDER SECTION 1542 OF THE CALIFORNIA CIVIL CODE, WHICH READS AS FOLLOWS, AND UNDER ANY SIMILAR OR COMPARABLE LAWS ANYWHERE IN THE WORLD:**

**A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

Each such releasing Person, by the release, waives and relinquishes any right or

benefit that such Person has or may have under section 1542 of the California Civil Code or any

similar provision of statutory or non-statutory law of California or any other jurisdiction to the

fullest extent that such releasing Person may lawfully waive such rights and benefits pertaining to

the subject matter of the release set forth above. In that regard, each such releasing Person, by the

release, further acknowledges that such Person is aware that such Person or the attorneys of such

Person may hereafter discover claims or facts in addition to or different from those which such

Person or such attorneys now know or believe to exist with respect to the subject matter of the

release, and that it is each such releasing Person's intention fully, finally, and forever to settle and

release any and all Lehman Released Claims against each and every Lehman Released Party.

Through the release, each such releasing Person is expressly acknowledging that it understands that,

notwithstanding the discovery or existence of any such additional or different claims or facts, the

release shall be and remain in full force and effect as a full and complete general release with respect

to any and all Lehman Released Claims against each and every Lehman Released Party. Through the

release, each such releasing Person further acknowledges that no released Person has made any

representation of any kind or character whatsoever in order to induce the execution of the release.

        The Confirmation Order, without more, will effectuate the release, waiver and

relinquishment described or referenced in this section for the Lehman Released Parties in accordance

herewith.  Nonetheless, the Lehman Released Parties also will be entitled to issuance of a separate

written release, waiver and relinquishment by the Liquidating Trustee in a form acceptable to the

Lehman VD Lenders and Liquidating Trustee or as reasonably proposed by the Lehman VD Lenders

and approved by the Bankruptcy Court at or after the hearing on Confirmation of the Plan.

        **(d)**     **Dismissal of Pending Litigation**

        On or as soon as practicable after the Effective Date, the Liquidating Trustee will

dismiss (with prejudice), as to the Estates of all VD Plan Debtors, all litigation pending against a

Lehman Released Party on behalf of any VD Plan Debtor's Estate, including, without limitation, (a)

the Liquidating Trustee will dismiss any action seeking equitable subordination, avoidance of

fraudulent transfers or other relief against any Lehman Released Party, specifically the ES Action,

(b) the Liquidating Trustee will dismiss any appeals adverse to a Lehman Related Party, including,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

without limitation, appeals seeking findings relating to the validity or allowance of Proofs of Claim filed by any of the Lehman Related Parties, and (c) the Liquidating Trustee will withdraw any opposition to any appeals by Lehman Related Parties, with all parties to bear their own costs and professional fees (except as expressly provided in the Plan for the Lehman Post-Confirmation Expense Funding).

(e)     **Process for Execution and Delivery of Creditor's Assignments / Releases for Lehman.**

The releases contained in the Plan will become effective on the Effective Date without further notice or action of any Person or party.  Although execution and delivery of a separate writing reflecting releases contained herein may be required by the Lehman VD Lenders as more fully set forth in the Plan, such requirement will not affect or diminish the effectiveness of the releases contained herein.  As to a Holder of a General Unsecured Claim or Reliance Claim, its execution and delivery of the Creditor Assignment / Release for Lehman herein will occur and be deemed to occur upon the delivery to the Liquidating Trustee or any of the Lehman Related Parties of an original, facsimile, electronic formatted or other written Ballot of such Holder marking the appropriate box thereupon signifying its intent to accept the benefits of the Lehman Distribution Enhancement and afford the Lehman Released Parties the benefit of the Creditor Assignment / Release for Lehman herein.  Disallowance in whole of such Creditor's Claim(s) prior to receipt of any Lehman Distribution Enhancement will be a condition subsequent voiding such release.

The Liquidating Trustee will be entitled to utilize the following procedure to determine which Creditors have appropriately marked their Ballots or otherwise provided the Creditor's Assignment / Release for Lehman entitling it to the Lehman Distribution Enhancement. The procedure may be modified by the Liquidating Trustee with the consent of the Lehman VD Lenders, which they may grant or withhold in their sole and absolute discretion:

(1)     Within two (2) Business Days after the voting deadline, the VD Plan Debtors (or their designated agent, if any) will deliver to the appropriate Lehman VD Lenders or as they direct the duly executed original of each Ballot received by the VD Plan Debtors (or their agent) by the voting deadline and each separately executed Creditor's Assignment / Release for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Lehman;

    (2)  Within fifteen (15) Business Days after receipt of all such Ballots and Creditors' Assignments / Releases for Lehman, the Lehman VD Lenders will advise the VD Plan Debtors or Liquidating Trustee, as then in place, of any issues with respect to the form or propriety of the execution or delivery of any such Ballots, the marking thereupon of the election to receive the Lehman Distribution Enhancement in exchange for the Creditor's Assignment / Release for Lehman, or any actual Creditors' Assignments / Releases for Lehman;

    (3)  Within ten (10) days after expiration of the time for the Lehman VD Lenders to advise the VD Plan Debtors or Liquidating Trustee of issues with respect to the form or propriety of the execution and delivery of such items, if no issues are so raised, the form and propriety of such items will be deemed adequate to entitle the applicable Creditor to the applicable Lehman Distribution Enhancement, as and to the extent set forth in the Plan and if and to the extent such Creditor holds an Allowed Claim.

   **5.4.10 Entry of Final Decrees.**

    The Liquidating Trustee will cause the entry of a final decree in the Case of each Estate of a VD Plan Debtor at the earliest reasonable opportunity therefor.  Such final decrees may be sought and entered individually for each Case.

   **5.4.11 Dissolution of Voluntary Debtors' Committee and Discharge of Liquidating Trustee.**

    The Voluntary Debtors' Committee will dissolve and its members will be released and discharged from all duties and obligations arising from or related to the Cases thirty days following the Effective Date unless the Bankruptcy Court, for good cause shown, extends such date. Except as may be necessary to File applications pursuant to the Plan, the Professionals retained by the Voluntary Debtors' Committee will not be entitled to compensation or reimbursement of expenses for any services rendered after the dissolution of the Voluntary Debtors' Committee.  (The Liquidating Trustee may employ Professionals after the Effective Date.)  The Liquidating Trustee will be discharged upon consummation of the Plan and the entry of a final decree in each Case or as otherwise ordered by the Bankruptcy Court.

**5.5   Distributions.**

**5.5.1   Distribution Agent.**

The Liquidating Trustee will serve as the Distribution Agent for Distributions due under the Plan. The Distribution Agent may employ one or more subagents on such terms and conditions as it may agree in his discretion and pay such subagent as a Post-Confirmation Expense from the Post-Confirmation Account(s). The Distribution Agent will not be required to provide any bond in connection with the making of any Distributions pursuant to the Plan.

**5.5.2   Distributions.**

**(a)   Dates of Distributions.**

Any Distribution required to be made on the Effective Date will be deemed timely if made as soon as practicable after such date and, in any event, within thirty (30) days after such date. Any Distribution required to be made upon a Disputed Claim becoming an Allowed Claim and no longer being a Disputed Claim will be deemed timely if made as soon as practicable thereafter.

**(b)   Limitation on Liability.**

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating Trustee, the Voluntary Debtors' Committee, their Affiliates, nor any of their employees, members, officers, directors, agents, attorneys, representatives, consultants, asset managers or other professionals will be liable for:  (i) any debts arising under the Plan; (ii) any acts or omissions or the damages therefrom (except for damages proximately caused by gross negligence or intentional misconduct of such Person) in connection with implementing the Distribution provisions of the Plan and the making or withholding of Distributions pursuant to the Plan, including, without limitation, such Person will not be liable as to the order of payment of any such Distributions which order of payment is not expressly set forth in the Plan; or (iii) any change in the value of Distributions made pursuant to the Plan resulting from any delays in making such Distributions in accordance with the Plan's terms (including but not limited to any delays caused by the resolution of Disputed Claims).

### 5.5.3   Old Instruments and Securities.

#### (a)   Surrender and Cancellation of Instruments and Securities.

As a condition to receiving any Distribution pursuant to the Plan in respect of a Claim, each Person holding any note or other instrument or security evidencing such Claim must surrender such instrument or security to the Distribution Agent, if requested.

#### (b)   Cancellation of Liens.

Except as otherwise provided in the Plan, any Lien against any Assets of any VD Plan Debtors, including any Plan Project, will be deemed released and discharged, and the Person holding such Lien will be authorized and directed to release any collateral or other property secured or allegedly secured by such Lien (including, without limitation, any Cash Collateral) held by such Person and to take such actions as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project) to evidence the release of such Lien, including, without limitation, the execution, delivery and Filing or recording of such releases as may be requested by the Liquidating Trustee (or applicable Lehman Nominee as to a Plan Project).

### 5.5.4   *De Minimis* Distributions and Fractional Shares.

No Cash payment of less than ten dollars ($10) will be made by the Liquidating Trustee to any Holder of Claims unless a request therefor is made in writing to the Liquidating Trustee.  Whenever payment of a fraction of a cent would otherwise be called for, the actual payment will reflect a rounding down of such fraction to the nearest whole cent. Any Cash or other property that is not distributed as a consequence of this section will, after the last Distribution on account of Allowed Claims in the applicable Class, be treated as "Unclaimed Property" under the Plan.

### 5.5.5   Delivery of Distributions.

Except as provided in the Plan with respect to Unclaimed Property, Distributions to Holders of Allowed Claims and Allowed Administrative Claims will be distributed by mail as follows: (1) with respect to each Holder of an Allowed Claim that has Filed a Proof of Claim, at the address for such Holder as maintained by the Liquidating Trustee; (2) with respect to each Holder of an Allowed Claim that has not Filed a Proof of Claim, at the address reflected on the Schedules Filed

by the VD Plan Debtors, provided, however, that if the VD Plan Debtors or the Liquidating Trustee

has received a written notice of a change of address for such Holder, the address set forth in such

notice will be used; or (3) with respect to each Holder of an Allowed Administrative Claim, at such

address as the Holder may specify in writing.

### 5.5.6    Unclaimed Property.

If either (1) the Distribution of Cash to the Holder of any Allowed Claim is returned

to the Liquidating Trustee (*e.g.,* as undeliverable) and the check or other similar instrument or

Distribution remains unclaimed for one hundred twenty (120) days from sending or (2) the check or

other similar instrument used for the Distribution to the Holder of any Allowed Claim remains

uncashed for one hundred twenty (120) days from sending; or (3) the Liquidating Trustee does not

have an address for a Holder of any Allowed Claim on the date such Distribution first could have

been made under the Plan and for one hundred twenty (120) days thereafter, then such applicable

Distribution will be Unclaimed Property under the Plan and the Liquidating Trustee will be relieved

of making such Distribution or any further Distribution to such Holder of such Allowed Claim

unless and until the Liquidating Trustee is notified in writing of the then current address of such

Holder of an Allowed Claim.  Subject to the remainder of this section and the following section,

Unclaimed Property will remain in the possession of the Liquidating Trustee pursuant to this section,

and will be set aside and (in the case of Cash) held in a segregated, interest bearing account to be

maintained by the Distribution Agent until such time as the subject Distribution becomes

deliverable.  Nothing contained in the Plan will require the Liquidating Trustee or any other Person

to attempt to locate the Holder of an Allowed Claim as to which there is Unclaimed Property.

### 5.5.7    Disposition of Unclaimed Property.

If the Person entitled thereto notifies the Liquidating Trustee of such Person's Claim

to a Distribution of Unclaimed Property within ninety (90) days following such Person's initial

Distribution Date, the Unclaimed Property distributable to such Person, together with any interest or

dividends earned thereon, will be paid or distributed to such Person as soon as practicable. Any

Holder of an Allowed Claim that does not assert a Claim in writing for Unclaimed Property held by

the Liquidating Trustee within ninety (90) days after the Holders' initial Distribution Date will no

longer have any Claim to or Interest in such Unclaimed Property, and will be forever barred from

receiving any Distributions under the Plan or otherwise from the Liquidating Trustee. In such cases,

any property held for Distribution on account of such Claims will become Available Cash and

deposited into the Post-Confirmation Account of the VD Plan Debtor's Estate against which the

applicable Allowed Claim was asserted.

**5.6     Objections to Claims and Disputed Claims.**

**5.6.1    Standing for Objections to Claims.**

The Liquidating Trustee and Lehman Creditors may File and resolve for the Estates

objections to Claims and requests for the determination of Claims' status as Reliance Claims, may

do so jointly or separately, and will have the exclusive right to do so, except that only the

Liquidating Trustee will have such rights as to any particular Claim for which a disabling conflict

exists that precludes all of the Lehman Creditors from performing such functions as determined

either by the Lehman Creditors or by the Bankruptcy Court. The Liquidating Trustee will cooperate

in Filing objections and taking action with respect to Claims identified for objection or action by the

Lehman Creditors in good faith, except that the Liquidating Trustee need not object to a Claim or to

a Claim's asserted status as a Reliance Claim that he reasonably believes is valid. Any objection to a

Claim or any objection to a Claim's status as a Reliance Claim, will be Filed with the Bankruptcy

Court and served on the Person holding such Claim on or before the applicable Claims Objection

Deadline, expect as provided in the Plan.

**5.6.2    Treatment of Disputed Claims.**

**(a)     No Distribution Pending Allowance.**

If any portion of a Claim is a Disputed Claim, no payment or Distribution provided

for under the Plan will be made on account of such Claim unless expressly provided hereunder or

unless and until such Claim becomes an Allowed Claim. Except as expressly provided in the Plan,

Holders of Disputed Claims, pending their allowance, will forbear from enforcement of the rights

entitled to them under the Plan for their Claims were they Allowed Claims; provided that if the

Claim is a Secured Claim, the Creditor may seek adequate protection for its Claim from the

Bankruptcy Court. A Claim that has not been Allowed by a Final Order of the Bankruptcy Court

and as to which the objection deadline has not passed, including as to its status as a Reliance Claim, may be treated by the Liquidating Trustee as a Disputed Claim and, absent the agreement of the Lehman VD Lenders, the Liquidating Trustee will so treat any such Secured Claim not expressly Allowed under the Plan and any Reliance Claim to which a payment otherwise would be due from Lehman Creditor Distribution Funding.

**(b)      Distribution After Allowance.**

On the next Distribution Date following the date on which a Disputed Claim becomes an Allowed Claim and is no longer a Disputed Claim, the Distribution Agent will distribute to the Person holding such Claim any Cash that would have been distributable to such Person if on the initial Distribution Date such Claim had been an Allowed Claim and not a Disputed Claim.

**(c)      Reserves for Disputed Claims.**

In the event that Disputed Claims are pending, the Liquidating Trustee will establish reasonable reserves, including the Plan Reserve for such Disputed Claims. The Distribution Agent may move the Bankruptcy Court for approval of its determination to reserve certain amounts.

**5.7      Executory Contracts And Unexpired Leases.**

**5.7.1      Identification of Executory Contracts and Unexpired Leases.**

The Lehman Proponents may File and/or amend or modify on or prior to the Confirmation Date an **Exhibit "A"** to the Plan containing, *inter alia*, a list of contracts and leases. The Liquidating Trustee will assume, assume and assign or reject the executory contracts and unexpired leases on **Exhibit "A"** to the Plan as requested by the Lehman Proponents no later than forty-five (45) days after the Effective Date.  The Lehman Proponents may add any executory contract or unexpired leases to this exhibit or delete any contract or lease therefrom up to and including the Confirmation Date.

**5.7.2      Executory Contracts Being Assumed or Assumed and Assigned.**

In accordance with the provisions and requirements of Sections 365 and 1123 of the Bankruptcy Code, any executory contracts and unexpired leases of the VD Plan Debtors' Estates listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner that expressly indicates that such contract or lease is to be assumed or assumed and assigned will be

so assumed or assumed and assigned automatically as of the Effective Date, and the cure amount

therefor will be paid promptly thereafter as an Administrative Claim under the Plan. (Such

assumption or assumption and assignment will be in addition to all executory contracts and

unexpired leases that have been previously assumed by the VD Plan Debtors by order of the

Bankruptcy Court.)

The Proponents will provide notice of any amendments to **Exhibit "A"** to any party

with a lease or contract to be assumed under the Plan and to the Voluntary Debtors' Committee.

To the extent applicable, all executory contracts or unexpired leases of VD Plan

Debtors or their Estates assumed or assumed and assigned pursuant to the Plan shall be deemed

modified such that the transactions contemplated by the Plan shall not be a "sale", "transfer",

"conveyance", "assignment", "change of control" or words of similar meaning (collectively, a

"transfer"), however such transfer may be defined in the relevant executory contract or unexpired

lease, and any precondition to a transfer (including without limitation any notice or required consent)

under any such contract or lease shall be deemed satisfied by Confirmation of the Plan.

Each executory contract and unexpired lease assumed or assumed and assigned

pursuant the Plan (or pursuant to other Bankruptcy Court order) will remain in full force and effect

and be fully enforceable by the applicable VD Plan Debtors' Estate or assignee in accordance with

its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court

authorizing and providing for its assumption or applicable law.

### 5.7.3   Cure Rights.

Any monetary cure amounts by which each executory contract and unexpired lease to

be assumed pursuant to the Plan is in default will be satisfied, pursuant to Section 365(b)(1) of the

Bankruptcy Code, by payment of the cure amount in Cash on the later of (a) the Effective Date (or as

soon as practicable thereafter), (b) as due in the ordinary course of business or (c) on such other

terms as the parties to such executory contracts or unexpired leases may otherwise agree.  In the

event of a dispute regarding: (i) the amount of any cure payments, (ii) the ability of any assignee to

provide "adequate assurance of future performance" (within the meaning of Section 365 of the

Bankruptcy Code) under the contract or lease to be assumed or assigned, or (iii) any other matter

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

pertaining to assumption, the cure payments required by Section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order resolving the dispute and approving the assumption.  The Proponents may list cure amounts for executory contracts and unexpired leases on **Exhibit "A."**  The failure of any non-Debtor party to an executory contract or unexpired lease to File and serve an objection to the cure amount listed on **Exhibit "A"** for such party's contract or lease by the deadline for objecting to the Plan will be deemed consent to such cure amount; provided, however, that prior to entry of a Final Order approving the assumption of an executory contract or unexpired lease, the VD Plan Debtors will be authorized to reject any executory contract or unexpired lease to the extent the Lehman Proponents conclude that the amount of the cure obligation as determined by the Bankruptcy Court renders assumption of such executory contract or unexpired lease unfavorable.

### 5.7.4    Executory Contracts Being Rejected.

Any executory contracts and unexpired leases of the VD Plan Debtors' Estates listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, in a manner that indicates such contract or lease is to be rejected will be so rejected as of the Confirmation Date. Additionally, there will be rejected as of the Confirmation Date all executory contracts and unexpired leases of the VD Plan Debtors' Estates not listed on **Exhibit "A"** to the Plan, as is or as amended prior to the Confirmation Date, provided that such contracts or leases: (a) have not previously expired or terminated pursuant to their own terms, (b) were not previously rejected, and (c) are not the subject of any pending motion, including to assume, to assume on modified terms, to reject or to make any other disposition filed by the VD Plan Debtors on or before the Confirmation Date.  Further, all executory contracts and unexpired leases of the VD Plan Debtors' Estates that are listed on **Exhibit "A"** to the Plan that are not assumed or assumed and assigned within the deadlines set forth in the Plan are automatically rejected after such deadline has expired.

### 5.7.5    Retention of Property Rights by Lehman Nominees or Liquidating Trustee.

To the extent that a matter that provides the VD Plan Debtors or their Estates with property rights does not constitute an executory contract or unexpired lease, or the VD Plan Debtors

have obtained property rights under the executed portion of an executory contract or unexpired lease,

rejection will not constitute an abandonment by the VD Plan Debtors, the Lehman Nominees or the

Liquidating Trustee of any such property rights.

### 5.7.6 Continuing Obligations.

Continuing obligations of third parties to the VD Plan Debtors under insurance

policies, contracts, or leases that have otherwise ceased to be executory or have otherwise expired on

or prior to the Effective Date, including, without limitation, continuing obligations to pay insured

claims, to defend against and process claims, to refund premiums or overpayments, to provide

indemnification, contribution or reimbursement, to grant rights of first refusal, to maintain

confidentiality, or to honor releases, will continue and will be binding on such third parties

notwithstanding any provision to the contrary in the Plan to the extent no obligations to such third

party must be cured or assumed as a condition thereto by the VD Plan Debtors, their Estates or their

assignees under or pursuant to the Plan, unless otherwise specifically terminated by the VD Plan

Debtors or by order of Bankruptcy Court. The deemed rejection provided by the Plan is of

executory contracts and unexpired leases and thus will not apply to any such continuing obligations.

### 5.7.7 Bar Date for Rejection Damages.

Any Claim arising out of the rejection of an executory contract or unexpired lease

will be forever barred and will not be enforceable against the VD Plan Debtors, their Estates, the

Liquidating Trustee, their Affiliates, their successors, or their properties, and will not be entitled to

any Distribution under the Plan, unless a Proof of Claim for such Claim is timely Filed and served.

For rejections occurring prior to Confirmation, such Claims must have been Filed by the later of

March 31, 2009 or thirty (30) days following the date of entry of the order of the Bankruptcy Court

approving rejection. For Claims related to executory contracts or unexpired leases not listed on

**Exhibit "A"** to the Plan that are rejected under the Plan, such Claim must have been Filed and

served on the VD Plan Debtors (if before the Effective Date) or the Liquidating Trustee and Lehman

VD Lenders (if after the Effective Date) within thirty (30) days after the Confirmation Date. For

Claims related to executory contracts or unexpired leases listed on **Exhibit "A"** to the Plan that are

rejected under or in accordance with the Plan, such Claim must have been Filed and served on the

Liquidating Trustee and Lehman VD Lenders within the later of: (a) thirty (30) days after service upon the non-debtor party to the contract or lease of any notice of the rejection of the contract or lease, including service of the Plan and its **Exhibit "A"** if the contract or lease is listed for rejection thereupon; and (b) thirty (30) days after the Confirmation Date.

### 5.8 Effect Of Confirmation Of The Joint VD Plan.

Following Confirmation, the VD Plan Debtors shall reasonably cooperate with, and take all actions reasonably requested by, the Lehman VD Lenders in preparing for the Effective Date and the matters to occur and actions required to be taken in connection therewith.

<u>Except as otherwise expressly provided</u> in the Plan, the documents executed pursuant to the Plan, or the Confirmation Order, on and after the Effective Date, <u>all Persons who have held, currently hold, or may hold a debt, Claim, or Interest against a VD Plan Debtor</u> (including but not limited to States and other governmental units, and any State official, employee, or other entity acting in an individual or official capacity on behalf of any State or other governmental units, other than as to matters excepted from the automatic stay by Bankruptcy Code § 362(b)(4)) <u>will be permanently enjoined from</u>:

(a) <u>taking any of the following actions *on account of any such debt, Claim, or Interest*</u>:

(1) commencing or continuing in any manner any action or other proceeding against the VD Plan Debtors, the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

(2) enforcing, attaching, executing, collecting, or recovering in any manner any judgment, award, decree, or order against the VD Plan Debtors, the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them);

(3) creating, perfecting, or enforcing any Lien or encumbrance against the VD Plan Debtors, the Liquidating Trustee or the Lehman Released Parties (or the successors or property of either of them); and

(4) asserting any set off, right of subrogation, or recoupment of any kind against any obligation due to the VD Plan Debtors, the Liquidating Trustee or the Lehman Released

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Parties (or the successors or property of either of them); and

(b)    <u>challenging the Distributions</u> to be effected by the Plan <u>or the classification of Claims or Interests</u> set forth in the Plan, except as expressly provided in and permitted by the Plan.

Any Person injured by any willful violation of such injunction will recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from the willful violator.

**5.9**    <u>**Other Plan Provisions.**</u>

**5.9.1**    **Limitation Of Liability.**

(a)    **No Liability for Solicitation or Participation.**

As specified in section 1125(e) of the Bankruptcy Code, entities that solicit acceptances or rejections of the Plan and/or that participate in the offer, issuance, sale, or purchase of securities offered or sold under the Plan, in good faith and in compliance with the applicable provisions of the Bankruptcy Code, will not be liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer, issuance, sale, or purchase of securities.

(b)    **Limitation of Liability.**

Notwithstanding contrary provisions of non-bankruptcy law, except as expressly set forth otherwise in the Plan, neither the Lehman Related Parties, the Lehman Nominees, the Liquidating Trustee, the Voluntary Debtors' Committee, their respective Affiliates, nor any of their employees, Professionals, staff, members, officers, directors, agents, attorneys, representatives, consultants, asset managers or other professionals will have any liability to any Holder of any Claim or Interest or any other Person for any act or omission in connection with or arising out of the negotiation, preparation and pursuit of confirmation of the Plan, the Disclosure Statement, the consummation of the Plan, the administration of the Plan, the Cases or the property to be distributed under the Plan, or any contract, instrument, document or other agreement entered into pursuant thereto through and including the Effective Date, except: (a) the Liquidating Trustee, in such capacity, will be liable contractually for the performance of obligations assumed or imposed under or by the Plan; (b) for liability for damages proximately caused by (i) intentional misconduct as

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

finally determined by a Final Order of the Bankruptcy Court and (ii) gross negligence in connection

with implementing the Distribution provisions of the Plan and the making or withholding of

Distributions pursuant to the Plan, other than liability resulting from the order of payment of any

such Distributions which order of payment is not expressly set forth in the Plan. Each of the

Liquidating Trustee, his Professionals and staff, and Lehman Related Parties will be entitled to rely,

in every respect, upon the advice of counsel with respect to their duties and responsibilities under or

with respect to the Plan.

### 5.9.2 Conditions To Confirmation And Effectiveness Of The Joint VD Plan.

#### (a) Conditions Precedent to Entry of the Confirmation Order.

Unless waived by the Lehman VD Lenders in their sole and absolute discretion,

conditions precedent to entry of the Confirmation Order, which will reflect the approval of the Plan

by the Bankruptcy Court having jurisdiction over the Cases after consideration of all applicable

provisions of the Bankruptcy Code, are:  (i) first, execution of a Settling Bond Issuer Agreement by

certain of the Lehman Related Parties and each Bond Issuer; (ii) second, approval of the role and

obligations under the Plan of certain of the Lehman VD Lenders and each Settling Bond Issuer

Agreement (or the material terms thereof) by the New York Bankruptcy Court, due to its having

jurisdiction over the New York Bankruptcy Cases of Lehman Commercial, a Lehman VD Lender,

and LBHI, which may be a party to the Settling Bond Issuer Agreements and may be a source of

funding of the Lehman Plan Funding; (iii) third, as to the Group I Debtors, that the Lehman VD

Lenders good faith estimate of such Debtors' Allowed Senior Claims does not exceed $_____

and, as to the Group II Debtors, that the Lehman VD Lenders good faith estimate of such Debtors'

Allowed Senior Claims does not exceed $_____; and (iv) fourth, unless waived by the Lehman

VD Lenders as to one or more VD Plan Debtors, confirmation of the Plan as to all of the VD Plan

Debtors.

#### (b) Conditions Precedent to Plan Effectiveness.

The following will be conditions precedent to the effectiveness of the Plan and the

occurrence of the Effective Date.

(i) The Confirmation Order will be a Final Order in form and substance

reasonably satisfactory to the Lehman VD Lenders;

(ii)     Unless waived by the Lehman VD Lenders, all agreements and instruments contemplated by, or to be entered into pursuant to, the Plan, including, without limitation, each of the documents necessary for consummation of the Plan, will have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness will have been satisfied or waived other than the occurrence of the Effective Date; and

(iii)     Unless waived by the Lehman VD Lenders as to one or more VD Plan Debtors, the ability to have the Effective Date occur for all of the VD Plan Debtors.

### 5.9.3    Retention Of Jurisdiction.

Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court will not be limited under the Plan and the Bankruptcy Court will retain jurisdiction over the Cases of the VD Plan Debtors and any of the proceedings related to the Cases of the VD Plan Debtors pursuant to Bankruptcy Code § 1142 and 28 U.S.C. § 1334 to the fullest extent permitted by the Bankruptcy Code and other applicable law.

### 5.9.4    Modification Or Withdrawal Of Plan.

#### (a)     Modification of Plan.

At any time prior to confirmation of the Plan, the Lehman VD Lenders may supplement, amend, modify or restate the Plan or withdraw it as to any VD Plan Debtor.  After confirmation of the Plan, the Lehman VD Lenders or Liquidating Trustee with the consent of the Lehman VD Lenders may (x) apply to the Bankruptcy Court, pursuant to section 1127 of the Bankruptcy Code, to modify the Plan; and (y) apply to the Bankruptcy Court to remedy defects or omissions in the Plan or to reconcile inconsistencies in the Plan.

#### (b)     Nonconsensual Confirmation.

In the event that any Impaired Class of Claims or Interests will fail to accept the Plan in accordance with section 1129(a)(8) of the Bankruptcy Code, Lehman VD Lenders (i) may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, and in accordance with the Plan, and (ii) may modify the Plan in accordance with section 1127(a) of the Bankruptcy Code.

**5.9.5   Miscellaneous.**

  **(a)  Changes in Rates Subject to Regulatory Commission Approval.**

  The VD Plan Debtors are not subject to governmental regulatory commission approval of their rates.

  **(b)  Payment of Statutory Fees.**

  All quarterly fees due and payable to the Office of the United States Trustee pursuant to section 1930(a)(6) of Title 28 of the United States Code with respect to the VD Plan Debtors will be paid in full on or before the Effective Date, or, to the extent such quarterly fees are disputed, an adequate reserve will have been established and set aside for payment in full thereof, as required by section 1129(a)(l2) of the Bankruptcy Code.  The Liquidating Trustee will remain responsible for timely payment of quarterly fees due and payable after the Effective Date with respect to the VD Plan Debtors until each applicable VD Plan Debtor's Case is closed, to the extent required by section 1930(a)(6) of Title 28 of the United States Code.

  **(c)  Payment Dates.**

  Whenever any payment or Distribution to be made under the Plan will be due on a day other than a Business Day, such payment or Distribution will instead be made, without interest, on the immediately following Business Day.

  **(d)  Headings.**

  The headings used in this Disclosure Statement and in the Plan are inserted for convenience only and neither constitutes a portion of the Joint VD Disclosure Statement or the Joint VD Plan nor in any manner affect the construction of the provisions of the Joint VD Disclosure Statement or the Joint VD Plan.

  **(e)  Other Documents and Actions.**

  The VD Plan Debtors and Liquidating Trustee may execute such other documents and take such other actions as may be necessary or appropriate to effectuate the transactions contemplated under the Plan.

  **(f)  Notices.**

  All notices and requests in connection with the Joint VD Disclosure Statement and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Plan will be in writing and will be hand delivered or sent by mail addressed to:

    Edward Soto, Esq.
    Nellie P. Camerik, Esq.
    Weil, Gotshal & Manges LLP
    1395 Brickell Avenue
    Suite 1200
    Miami, FL 33131

    and

    Shai Y. Waisman, Esq.
    Weil, Gotshal & Manges LLP
    767 Fifth Avenue
    New York, NY  10153-0119

    With copies to:

    Dean A. Ziehl, Esq.
    Pachulski Stang Ziehl & Jones LLP
    10100 Santa Monica Blvd., 11th Fl.
    Los Angeles, CA  90067

        All notices and requests to any Person holding of record any Claim or Interest will be sent to them at their last known address or to the last known address of their attorney of record. Any such Person may designate in writing any other address for purposes of this section, which designation will be effective on receipt.

        **(g)**    **Governing Law.**

        Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to its conflict of law rules) will govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specifically provided in such agreements, documents, or instruments.

        **(h)**    **Binding Effect.**

        The Joint VD Plan and all rights, duties and obligations thereunder will be binding upon and inure to the benefit of the Lehman Creditors, the VD Plan Debtors, the Liquidating Trustee, Holders of Claims, Holders of Interests, and their respective successors and assigns.

        **(i)**    **Successors and Assigns.**

        The rights, benefits, and obligations of any Person named or referred to in the Plan

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

will be binding on, and will inure to the benefit of, the heirs, executors, administrators, successors, and assigns of such Person.

**(j)      Severability of Plan Provisions.**

If, prior to the Confirmation Date, any term or provision of the Plan is held by the Bankruptcy Court to be illegal, impermissible, invalid, void or unenforceable, or otherwise to constitute grounds for denying confirmation of the Plan, the Bankruptcy Court will, with the consent of the Lehman Proponents, have the power to interpret, modify or delete such term or provision (or portions thereof) to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision will then be operative as interpreted, modified or deleted. Notwithstanding any such interpretation, modification or deletion, the remainder of the terms and provisions of the Plan will in no way be affected, impaired or invalidated by such interpretation, modification or deletion.

**(k)      No Waiver.**

The failure of the VD Plan Debtors, Liquidating Trustee, Voluntary Debtors' Committee or Lehman Creditors or any other Person to object to any Claim for purposes of voting will not be deemed a waiver of the Voluntary Debtors' Committee's, the VD Plan Debtors', the Liquidating Trustee's or the Lehman VD Lenders' right to object to or examine such Claim, in whole or in part.

**(l)      Inconsistencies.**

In the event the terms or provisions of this Disclosure Statement are inconsistent with the terms and provisions of the Plan or documents executed in connection with the Plan, the terms of the Plan will control.

**(m)      Exemption from Certain Transfer Taxes and Recording Fees.**

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers from a VD Plan Debtor or its Estate to the Liquidating Trustee, the Lehman Nominees or to any other Person pursuant to the Plan, or any agreement regarding the transfer of title to or ownership of any of the VD Plan Debtors' real or personal property or of any other interest in such property (including, without limitation, a security interest), including, without limitation, transfers or sales pursuant to the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Confirmation Order or any Sale Order will not be subject to any document recording tax, stamp tax,

conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage

recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or

governmental assessment, and the Confirmation Order will direct the appropriate state or local

governmental officials or agents to forego the collection of any such tax or governmental assessment

and to accept for filing and recordation any of the foregoing instruments or other documents without

the payment of any such tax or governmental assessment.

(n)      <strong>Post-Confirmation Status Report.</strong>

By the earlier of 180 days following the entry of the Confirmation Order a status

report will be Filed with the Court explaining what progress has been made toward consummation of

the confirmed Plan, which report will be Filed by the Liquidating Trustee, if the Effective Date

occurs with 120 days following the entry of the Confirmation Order and, otherwise, by the Lehman

Creditors.  The status report will be served on the United States Trustee, the list of twenty largest

unsecured creditors Filed by the VD Plan Debtors for the jointly administered Cases of the Debtors,

the Lehman Creditors, the Liquidating Trustee and those parties who have requested special notice.

Unless otherwise ordered, further status reports will be Filed every 180 days and served on the same

entities.

(o)      <strong>Post-Confirmation Conversion/Dismissal.</strong>

A creditor or party in interest may bring a motion to convert or dismiss any Case of a

VD Plan Debtor under § 1112(b), after the Plan is confirmed, if there is a default in performing the

Plan, subject to the right of any party in interest to object to such motion.  If the Court orders any of

the Cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property

of the Chapter 11 Estate, and that has not been disbursed pursuant to the Plan, will revest in the

Chapter 7 estate.  The automatic stay will be reimposed upon the revested property, but only to the

extent that relief from stay was not previously authorized by the Court during this Case.

(p)      <strong>Final Decree.</strong>

Once a VD Plan Debtor's Estate has been fully administered, as referred to in

Bankruptcy Rule 3022, the Liquidating Trustee, or other party as the Bankruptcy Court will

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

designate in the Confirmation Order, will File a motion with the Bankruptcy Court to obtain a final

decree to close the Case of such VD Plan Debtor.

# VI

## **BEST INTERESTS OF CREDITORS TEST**

Pursuant to Section 1129(a)(7) of the Bankruptcy Code, if any creditor or interest

holder who holds a claim or interest in an impaired class under a plan does <u>not</u> vote to accept the

plan, the plan for that debtor cannot be confirmed unless the Bankruptcy Court determines that the

distributions under the plan for such creditor or interest holder are not less than those which the

creditor or interest holder would receive in a liquidation under chapter 7 of the Bankruptcy Code

(referenced herein as the "<u>Best Interests Test</u>").

The Best Interests Test must be satisfied even if the Joint VD Plan is accepted by

each impaired Class of Claims and Interests if any Holder of an Allowed Claim or Allowed Interest

objects to the Joint VD Plan on such basis. The Best Interests Test requires the Bankruptcy Court to

find either that (i) all Holders of Claims and Interests in an <u>Impaired</u> Class for a particular VD Plan

Debtor have accepted the Joint VD Plan, or (ii) the Joint VD Plan for such VD Plan Debtor provides

each Holder of Allowed Claim or Interest in an <u>Impaired</u> Class who has not accepted the Joint VD

Plan with a recovery of property of a value, as of the effective date of the Joint VD Plan, that is not

less than the amount that such Holder would receive if the applicable VD Plan Debtor were

liquidated under chapter 7 of the Bankruptcy Code.  Excluding the Secured Claims of the Lehman

VD Lenders (who, as Plan Proponents, will vote in favor of the Plan) and ignoring the Claims of

Settling Bond Issuers based on the settlement embodied in the applicable Settling Bond Issuer

Agreement, Allowed Claims and Interests classified as <u>Impaired</u> include:

(1)  the Allowed Reliance Claims against Group I Debtors in Class 6;

(2)  the Allowed Reliance Claims against Group II Debtors in Class 7;

(3)  the Allowed General Unsecured Claims against Group I Debtors in Class 8;

(4)  the Allowed General Unsecured Claims against Group II Debtors in Class 9;

(5)  the Allowed General Unsecured Claims against Group III Debtors in Class 10;

(6)  the Allowed Settling Bond Issuer-Related Future Work Claims in Class 11; and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(7)   the Allowed Interests in Class 12.

Because each of the Plan Projects of the Group I Debtors and Group II Debtors (other than SunCal Summit Valley) is subject to a Lehman Claim Lien and the amount owed under the applicable Lehman Loan exceeds the value of the applicable Plan Project, unless the equitable subordination claims were successful, Claims in Impaired Classes 6, 7, 8, 9 and 11 would receive no recovery in chapter 7 liquidation Cases from the Plan Projects.  The Lehman VD Lenders contend that the equitable subordination claims asserted in the ES Action are without merit.  Further, there is no basis for a present estimate of any value for the other Litigation Claims, primarily consisting of Avoidance Actions.

The Lehman Proponents estimate the outcome as follows if all of the VD Plan Debtors' Cases were converted to Cases under chapter 7 of the Bankruptcy Code: [10]

## LEHMAN PROPONENTS' ESTIMATED DISTRIBUTIONS UNDER CHAPTER 7 CASES FOR CREDITORS OTHER THAN LEHMAN VD LENDERS

### GROUP I DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | RELIANCE CLAIMS (CLASS 6) | GENERAL UNSECURED CLAIMS (CLASS 8) | SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS - CLASS 11 |
|---|---|---|---|---|---|---|
| Palmdale Hills | Unknown | 100% | 100% | 0% | 0% | 0% |
| SunCal Bickford | Unknown | 100% | 100% | 0% | 0% | 0% |

---

[10] In any event, for net recoveries from Litigation Claims to result in distributions to Holders of Claims in Classes 6, 7, 8, 9 and 10 (a) the Litigation Claims or their proceeds would have to be unencumbered by any Liens and (b) the net recoveries would need to exceed the amount of, at a minimum, Administrative Claims (including postpetition real property taxes), Secured Real Property Tax Claims and Priority Claims, which are estimated to aggregate over $17 million presently and will continue to increase pending final conclusion of pursuit of the Litigation Claims.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## GROUP I DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | RELIANCE CLAIMS (CLASS 6) | GENERAL UNSECURED CLAIMS (CLASS 8) | SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS - CLASS 11 |
|---|---|---|---|---|---|---|
| SunCal Emerald | Unknown | 100% | 100% | 0% | 0% | 0% |

## GROUP II DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | RELIANCE CLAIMS (CLASS 7) | GENERAL UNSECURED CLAIMS (CLASS 9) | SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS - CLASS 11 |
|---|---|---|---|---|---|---|
| Acton Estates | Unknown | 100% | 100% | 0% | 0% | 0% |
| SCC Communities | Unknown | 100% | 100% | 0% | 0% | 0% |
| SunCal I | Unknown | 100% | 100% | 0% | 0% | 0% |
| SunCal Summit Valley | Unknown | 100% | 100% | 0% | 0% | 0% |
| Tesoro | Unknown | 100% | 100% | 0% | 0% | 0% |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## GROUP III DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | GENERAL UNSECURED CLAIMS (CLASS 10) | SETTLING BOND ISSUER RELATED FUTURE WORK CLAIMS - CLASS 11 |
|---|---|---|---|---|---|
| Kirby Estates | Unknown | 100% | Not applicable | Unknown | Not applicable |
| Seven Brothers | Unknown | 100% | Not applicable | Unknown | Not applicable |
| SunCal Beaumont | Unknown | 100% | 100% | 100% | 100% |
| SunCal Johannson | Unknown | 100% | Not applicable | 100% | Not applicable |

In contrast, under the Plan, Holders of Allowed Claims in Classes 6, 7, 8, 9 and 10 all receive Distributions or performance (and the Lehman Proponents believe that any Distribution with respect to Class 6, Class 7, Class 8 or Class 9 Claims under the Plan would be more than a Creditor would receive through a chapter 7 liquidation by depending on success with respect to the ES Action).

Under the Plan, Distributions and performance proposed for Creditors other than the Lehman Creditors and other than the Settling Bond Issuers are as follows, *based on the Lehman VD Lenders' estimates of Claims set forth in the Disclosure Statement*:

## DISTRIBUTIONS UNDER THE PLAN – GROUP I DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | RELIANCE CLAIMS (CLASS 6) (Sign Creditor's Assignment/ Release for Lehman? % if Yes / % if No) | GENERAL UNSECURED CLAIMS (CLASS 8) (Sign Creditor's Assignment/ Release for Lehman? % if Yes / % if No) | SETTLING BOND ISSUER-BACKED FUTURE WORK CLAIMS - CLASS 11 |
|---|---|---|---|---|---|---|
| Palmdale Hills | 100% | 100% | 100% | 25% / 1% | 5% / 1% | 100% |
| SunCal Bickford | 100% | 100% | 100% | 25% / 1% | 5% / 1% | 100% |
| SunCal Emerald | 100% | 100% | 100% | 25% / 1% | 5% / 1% | 100% |

## DISTRIBUTIONS UNDER THE PLAN – GROUP II DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | RELI-ANCE CLAIMS (CLASS 7) (Sign Creditor's Assignment/ Release for Lehman? % if Yes / % if No) | GENERAL UNSECURED CLAIMS (CLASS 9) (Sign Creditor's Assignment/ Release for Lehman? % if Yes / % if No) | SETTLING BOND ISSUER-BACKED FUTURE WORK CLAIMS - CLASS 11 |
|---|---|---|---|---|---|---|
| Acton Estates | 100% | 100% | 100% | 10% / 1% | 5% / 1% | 100% |
| SCC Communities | 100% | 100% | 100% | 10% / 1% | 5% / 1% | 100% |
| SunCal I | 100% | 100% | 100% | 10% / 1% | 5% / 1% | 100% |
| SunCal Summit Valley | 100% | 100% | 100% | 10% / 1% | 5% / 1% | 100% |
| Tesoro | 100% | 100% | 100% | 10% / 1% | 5% / 1% | 100% |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## DISTRIBUTIONS UNDER THE PLAN – GROUP III DEBTORS

| DEBTOR | ADMIN-ISTRATIVE, PRIORITY TAX, PRIORITY (CLASS 5) & OTHER SECURED (CLASS 4) CLAIMS | SECURED REAL PROPERTY TAX CLAIMS (CLASS 1) | ALLOWED SR. SECURED MECHANIC'S LIEN CLAIMS (CLASS 3) IF ANY | GENERAL UNSECURED CLAIMS (CLASS 10) | SETTLING BOND ISSUER-BACKED FUTURE WORK CLAIMS - CLASS 11 |
|---|---|---|---|---|---|
| Kirby Estates | 100% | 100% | 100% | Not applicable | Not applicable |
| Seven Brothers | 100% | 100% | Not applicable | Not applicable | Not applicable |
| SunCal Beaumont | 100% | 100% | 100% | 100% | 100% |
| SunCal Johannson | 100% | 100% | Not applicable | 100% | 100% |

For Holders of Allowed Class 6 and Class 7 Reliance Claims, they receive not only their proportional share of Residual Cash, but also the Guaranteed Minimum Distribution of 1% of the Allowed Claims and, if they elect it, the Lehman Distribution Enhancement of up to, as applicable, another 24% of their Allowed Claims against Group I Debtors and another 9% of their Allowed Claims against Group II Debtors. As to the fairness of the Distributions for Allowed Reliance Claims with respect to the equitable subordination claims, the Lehman VD Lenders believe the Lehman Plan Funding results in fair value for the VD Plan Debtors' Assets based on the complexities of the ES Action with respect to the equitable subordination claims, the lack of definitive funding for the prosecution thereof and for the maintenance of the Plan Projects and VD Plan Debtors' Estates pending resolution of the ES Action, the delay attendant to prosecution of the ES Action as as to at least Lehman Commercial due to the automatic stay in its bankruptcy case and the high evidentiary hurdles for either recovery for an individual Creditor or to substantively consolidate multiple VD Plan Debtors to enable recoveries for a broader group of Creditors.

For Holders of Allowed Class 8 and Class 9 General Unsecured Claims, they receive not only their proportional share of Residual Cash, but also the Guaranteed Minimum Distribution of

1% of their Allowed Claims and, if they elect it, the Lehman Distribution Enhancement of up to

another 4% of their Allowed Claims.

For Holders of Allowed Class 10 General Unsecured Claims, they receive 100% of

their Claims unless Residual Cash and Project Values are insufficient to pay all Claims. In that

event, Holders of Allowed Class 10 Claims receive their Pro Rata share of Project Values and

Residual Cash after payment of Allowed Senior Claims, but no less than 1% of each Allowed Class

10 Claim.

For Holders of Allowed Class 11 Settling Bond Issuer-Backed Future Work Claims,

based on the recommitment from the Settling Bond Issuers, they are to receive essentially the full

benefit of their bargains.  As described in the Plan and Disclosure Statement, however, Settling Bond

Issuers are waiving payment on their Allowed Claims in Classes 3, 6, 7, 8, and 9.

For Holders of Allowed Class 12 Interests, because (i) all of the Group I Debtors and

Group II Debtors are insolvent and (ii) in the case of the Group III Debtors, Lehman VD Lenders

hold Secured Claims in the Interests in the Group III Debtors (entitling them to any Distributions

therefor in a chapter 7 liquidation), nothing would be available for Holders of Interests and nothing

is payable to them under the Plan.  Thus, they do no worse.

## VII

## PLAN FEASIBILITY

In order to confirm the Joint VD Plan as to a particular VD Plan Debtor, the

Bankruptcy Court must find that confirmation of the Joint VD Plan is not likely to be followed by

the liquidation or the need for further financial reorganization of such VD Plan Debtor, unless

provided in the Plan.  This requirement is imposed by Section 1129(a)(11) of the Bankruptcy Code

and is generally referred to as the "feasibility" requirement.

Under the Plan, the Lehman VD Lenders have agreed to provide the Lehman Plan

Funding, being the Lehman Post-Confirmation Expense Funding and the Lehman Creditor

Distribution Funding.  For the Lehman Creditor Distribution Funding, the Lehman VD Lenders have

agreed under the Joint VD Plan to fund, through permitting use of Cash Collateral or through new

transfers of Cash or through other arrangements, the Distributions for the following (i) Allowed

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Secured Real Property Tax Claims (Class 1), (ii) Allowed Administrative Claims, (iii) Allowed

Priority Tax Claims, (iv) Allowed Priority Claims (Class 5), (v) Allowed Sr. Secured Mechanic's

Lien Claims (Class 3), (vi) Allowed Other Secured Claims (Class 4) (only to the extent that the third

alternative treatment set forth in the Plan is selected), (vii) the Lehman Guaranteed Minimum

Distribution, (viii) the Lehman Distribution Enhancement for Holders of Allowed General

Unsecured Claims in Classes 8 and 9 and Allowed Reliance Claims in Classes 6 and 7, and (ix)

Allowed General Unsecured Claims in Class 10. The Lehman VD Lenders also have agreed under

the Joint VD Plan to arrange, as provided in Plan Article VI, for the applicable Lehman Nominees to

cooperate in the performance of Future Work that is the subject of an Allowed Settling Bond Issuer-

Backed Future Work Claim and to reimburse the applicable Settling Bond Issuer the agreed amount

for the Settling Bond Issuer -Incurred Future Work Obligations arising under any Future Work

Bond.

For the Lehman Post-Confirmation Expense Funding, the Lehman VD Lenders have

agreed to pay an amount (with such amount not to exceed $500,000 and which will not be payable

for expenses to be incurred or payable or for services to be rendered from or after two (2) years

following the Effective Date) for Post-Confirmation Expenses in the form of new Cash transfers or

by a Lehman VD Lender permitting the use of Cash Collateral of a Lehman VD Lender, each as

loans payable by each benefitted VD Plan Debtor's Estate, provided that the recourse for such loans

will be limited to the applicable Estate's Net Cash Proceeds from Remaining Other Assets.

## VIII

## RISK FACTORS

The Plan essentially provides for (a) payments to Creditors by the Liquidating Trustee

from the Lehman Plan Funding, (b) payments to Creditors of Residual Cash by the Liquidating

Trustee, (c) conveyance to Lehman Nominees of the Plan Projects, and (d) payments and

reimbursements by Lehman Nominees to Bond Issuers and Holders of Secured Real Property Tax

Claims. The following discussion summarizes some of the material risks associated with the Plan

and its implementation:

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1.     The Plan includes in its Article XIV express conditions to its Confirmation and the Effective Date occurring, in addition to the statutory conditions for Confirmation set forth in Bankruptcy Code § 1129.  That such conditions would not be met is a risk that the Plan would not become effective, but these are <u>not</u> risks that the Plan, once effective, would fail.

2.     Most of the Distributions from the Lehman Plan Funding and the conveyance of the Plan Projects to the Lehman Nominees are to be made by the Liquidating Trustee.  The Liquidating Trustee will be a Person selected by the Lehman VD Lenders, whose identity will be disclosed prior to the hearing on Confirmation.  Should there be any issues as to the Liquidating Trustee, whether as to his or her performance, health or other issues, the Bankruptcy Court may, by order, replace the Liquidating Trustee in its reasonable discretion.

3.     The Liquidating Trustee requires the Lehman Plan Funding to make a substantial part of the Distributions required under the Plan and such is thereby a risk of the Plan.  Article VIII of the Plan requires that, on the Effective Date, the Lehman VD Lenders will cause to be paid to the Liquidating Trustee from new Cash transfers sufficient amounts such that, when combined with Cash Collateral for Lehman Secured Claims, the Liquidating Trustee is holding sufficient funds to make the payments required under the Plan to be paid on the Effective Date from Lehman Plan Funding.  Thereafter, the Lehman VD Lenders will pay the Liquidating Trustee further amounts at such times as the Lehman VD Lenders reasonably determine are necessary to enable the Liquidating Trustee to make timely payments due under the Plan as Lehman Plan Funding, provided that the Post-Confirmation Expense Funding is not to exceed $500,000 nor  to be payable for expenses to be incurred or payable or for services to be rendered from or after two (2) years following the Effective Date.

4.     The existence of any Residual Cash for Distribution for a VD Plan Debtor's Estate is dependent, first, on revenue from the liquidation by the Liquidating Trustee of any Remaining Other Assets of such Estate, including any applicable Net Cash Litigation Recoveries in which such Estate has an interest.  That any such revenues will materialize is uncertain.

5.     Moreover, the existence of Residual Cash also is dependent on whether any revenue from Remaining Other Assets of an Estate will remain after Distributions for Secured

Claims with respect thereto and payment or reserve for the Post-Confirmation Expenses, including

post-Confirmation Date intercompany payables and reimbursements for Lehman Post-Confirmation

Expense Funding. Such deductions or applications of such revenue also are uncertain.

6. Under the Plan, the Lehman Nominees are to perform the following functions

and their performance is a risk of the Plan: (a) to cooperate in the performance of Future Work that

is the subject of an Allowed Settling Bond Issuer-Backed Future Work Claim and to reimburse the

agreed upon amount to the applicable Settling Bond Issuer for the Settling Bond Issuer -Incurred

Future Work Obligations arising under any Future Work Bond; and (b) as owners of the Plan

Projects, to pay the Allowed Secured Real Property Tax Claims.

## IX

## CERTAIN UNITED STATES FEDERAL INCOME TAX
## CONSEQUENCES OF THE JOINT VD PLAN

The following discussion summarizes certain United States federal income tax

consequences of the implementation of the Joint VD Plan to certain Holders of Claims. The

following summary does not address the United States federal income tax consequences to Holders

of Claims that are not entitled to vote, such as (i) Holders of Claims who are unimpaired or

otherwise entitled to payment in full in Cash under the Joint VD Plan or (ii) Holders of Interests as

they are deemed to reject the Plan.

The following summary is based on the Internal Revenue Code of 1986 and all rules

and treasury regulations promulgated thereunder ("Tax Code"), judicial decisions, and published

administrative rules and pronouncements of the Internal Revenue Service ("IRS"), all as in effect on

the date hereof. Changes in such rules or new interpretations thereof may have retroactive effect and

could significantly affect the United States federal income tax consequences described below.

The United States federal income tax consequences of the Joint VD Plan are complex

and are subject to significant uncertainties. The Lehman Proponents have not requested a ruling

from the IRS or an opinion of counsel with respect to any of the tax aspects of the Joint VD Plan.

Thus, no assurance can be given as to whether the IRS will successfully assert alternative positions

from those set forth herein or the interpretation that the IRS will adopt. In addition, this summary

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

generally does not address foreign, state or local tax consequences of the Joint VD Plan, nor does it address the United States federal alternative minimum or federal income tax consequences of the Joint VD Plan to special classes of taxpayers (such as foreign taxpayers, broker-dealers, banks, mutual funds, insurance companies, other financial institutions, small business investment companies, regulated investment companies, tax-exempt organizations (including, without limitation, certain pension funds), persons holding a Claim as part of a constructive sale, straddle or other integrated transaction, and investors in pass-through entities, including partnerships). If a partnership (or other Person taxed as a partnership) holds a Claim, the tax treatment of a partner in the partnership will generally depend upon the status of the partner and upon the activities of the partnership.

Accordingly, the following summary of certain United States federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the individual circumstances pertaining to a Holder of a Claim.

IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, Holders of Claims are hereby notified that: (a) any discussion of United States federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by Holders of Claims for the purpose of avoiding penalties that may be imposed on them under the Tax Code; (b) such discussion is written in connection with the promotion or marketing by the Lehman Proponents of the transactions or matters addressed herein; and (c) Holders of Claims should seek advice based on their particular circumstances from their tax advisors.

**9.1    Consequences to Holders of Lehman Secured Claims**

Pursuant to the Joint VD Plan, the Holders of Lehman Secured Claims will receive property (including Plan Projects), conveyed to the Holders of such Claims or one or more Lehman Nominees) in satisfaction of their Claims.

In general, each Holder of such a Claim should recognize gain or loss in an amount equal to the difference between (x) the amount of cash and the fair market value of other property received by the Holder in satisfaction of its Claim (other than any Claim for accrued but unpaid interest and other than any amount treated as imputed interest as further discussed below) and (y) the

Case 8:08-bk-17206-ES   Doc 1780-2   Filed 10/04/10   Entered 10/04/10 19:18:21   Exhibit B
Part 4   Page 179 of 197

Holder's adjusted tax basis in its Claim (other than any basis attributable to accrued but unpaid

interest but including any basis such Holder has as a result of a transfer by a Lehman Related Party

of new Cash to fund a Lehman Post-Confirmation Loan).

Distributions to such Holders may be made subsequent to the Effective Date.  Under

the Tax Code, a portion of each distribution to such Holders may be treated as imputed interest.  In

addition, it is possible that any loss and a portion of any gain realized by such Holder may be

deferred until such time as such Holder has received its final distribution.  All Holders of such

Claims should consult their tax advisors as to tax consequences of distributions subsequent to the

Effective Date.

A Holder's initial tax basis in any Plan Projects conveyed should equal the fair

market value thereof.  Gain or loss recognized by a Holder on the sale, exchange or other disposition

of the Plan Projects will equal the difference, if any, between the amount realized by the Holder and

the Holder's adjusted tax basis in the Plan Projects immediately before the sale, exchange or other

disposition.  Any such gain or loss will be long-term if the Holder's holding period for the Plan

Project is more than one year at that time.  A Holder's holding period for any conveyed Plan Projects

generally should begin the day following the day that it is conveyed to the Holder.  Depending upon

the facts at the time, such gain or loss may be capital or may be "Section 1231 Gain" or "Section

1231 Loss."  The discussion in this paragraph is premised upon the Holder being considered the

owner of a Plan Project for federal income tax purposes.

**9.2**      **Consequences to Holders of General Unsecured Claims.**

Pursuant to the Joint VD Plan, the Liquidating Trustee will distribute to the Holders

of Allowed General Unsecured Claims in Classes 8 and 9 and Allowed Reliance Claims the

Guaranteed Minimum Distribution (1% of their Claims) and, Residual Cash, if any, Pro Rata.  In

addition, each such Holder of an Allowed General Unsecured Claim or Allowed Reliance Claim that

executes and delivers the Creditor's Assignment / Release for Lehman will assign its Claims to the

applicable Lehman VD Lender(s) and receive the applicable, additional Lehman Distribution

Enhancement.  Holders of Allowed General Unsecured Claims in Class 10 will receive a 100%

recovery with post-petition interest, capped by, in effect, their respective pro rata share of the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

residual value of the applicable Plan Project and Estate's Residual Cash, after application thereof to the Allowed Senior Claims.

In general, each Holder of such a Claim should recognize gain or loss in an amount equal to the difference between (x) the amount of Cash received by the Holder in satisfaction of its Claim (other than any Claim for accrued but unpaid interest and other than any amount treated as imputed interest as further discussed below), and (y) the Holder's adjusted tax basis in its Claim (other than any basis attributable to accrued but unpaid interest).

Distributions to such Holders will be made subsequent to the Effective Date. Under the Tax Code, a portion of each distribution to such Holders may be treated as imputed interest. In addition, it is possible that any loss and a portion of any gain realized by such Holder may be deferred until such time as such Holder has received its final distribution. All Holders of such Claims should consult their tax advisors as to tax consequences of distributions subsequent to the Effective Date.

**9.3    Consequences to Holders of Settling Bond Issuer-Related Future Work Claims.**

Settling Bond Issuer-Related Future Work Claims consist of Settling Bond Issuer-Backed Future Work Claims and Settling Bond Issuer-Owned Future Work Claims. Pursuant to the Joint VD Plan, (a) each Holder of an Allowed Settling Bond Issuer-Backed Future Work Claim is to receive performance of the Future Work obligations with respect to such Allowed Claim, without penalties, and with the obligation reinstated as to any maturity applicable prior to the applicable Petition Date, as more fully set forth in the Plan and (b) each Holder of an Allowed Settling Bond Issuer-Owned Future Work Claim is (i) to receive the cooperation of the Lehman Nominee that takes title to the Plan Project to which the subject Allowed Claim relates in connection with the performance of such Future Work obligations, contingent upon such payment by the applicable Settling Bond Issuer and (ii) as and to the extent provided in the applicable Settling Bond Issuer Agreement: (1) the Lehman Nominee that takes title to the Plan Project to which a subject Claim relates is to take an assignment from the applicable Settling Bond Issuer of such Settling Bond Issuer's Claims against the applicable VD Plan Debtor and third parties; and (2) in exchange therefor, such Lehman Nominee is to reimburse such Settling Bond Issuer agreed amounts for

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

payments made by such Settling Bond Issuer under the applicable Future Work Bonds.

In general, each Holder of such a Claim should recognize gain or loss in an amount equal to the difference between (x) the amount of Cash received by the Holder in satisfaction of its Claim (other than any Claim for accrued but unpaid interest and other than any amount treated as imputed interest as further discussed below), and (y) the Holder's adjusted tax basis in its Claim (other than any basis attributable to accrued but unpaid interest).

Distributions to such Holders will be made subsequent to the Effective Date.  Under the Tax Code, a portion of each distribution to such Holders may be treated as imputed interest.  In addition, it is possible that any loss and a portion of any gain realized by such Holder may be deferred until such time as such Holder has received its final distribution.  All Holders of such Claims should consult their tax advisors as to tax consequences of distributions subsequent to the Effective Date.

**9.4** **Distributions in Discharge of Accrued but Unpaid Interest.**

Pursuant to the Joint VD Plan, distributions to any Holder of Allowed Claims will be allocated first to the principal amount of such Claims, as determined for federal income tax purposes, and thereafter, to the portion of such Claim, if any, representing accrued but unpaid interest or original issue discount ("OID").  However, there is no assurance that the IRS would respect such allocation for federal income tax purposes.

In general, to the extent that any consideration received pursuant to the Joint VD Plan by a Holder of an Allowed Claim is received in satisfaction of accrued interest or OID during its holding period, such amount will be taxable to the Holder as interest income (if not previously included in the Holder's gross income).  Conversely, a Holder generally recognizes a deductible loss to the extent any accrued interest claimed or amortized OID was previously included in its gross income and is not paid in full.  However, the IRS has privately ruled that a holder of a security of a corporate issuer, in an otherwise tax-free exchange, could not claim a current deduction with respect to any unpaid OID.  Accordingly it is also unclear whether, by analogy, a Holder of a Claim of a non-corporate issuer would be required to recognize a capital loss, rather than an ordinary loss, with respect to previously included OID that is not paid in full.

1    Each Holder of a Claim is urged to consult its tax advisor regarding the allocation of

2    consideration and the deductibility of accrued but unpaid interest for federal income tax purposes.

3    **9.5    Character of Gain or Loss**

4    Where gain or loss is recognized by a Holder of such a Claim, the character of such

5    gain or loss as long-term or short-term capital gain or loss or as ordinary income or loss will be

6    determined by a number of factors, including, among others, the tax status of the Holder (including

7    method of accounting), whether the Claim constitutes a capital asset in the hands of the Holder,

8    whether the Claim arose in connection with the provision of services by the Holder and how long it

9    has been held, whether the Claim was acquired at a market discount, and whether and to what extent

10   the Holder previously had claimed a bad debt deduction.

11   **9.6    Information Reporting and Withholding**

12   All distributions to Holders of Allowed Claims under the Joint VD Plan are subject to

13   any applicable tax withholding.  Under United States federal income tax law, interest, dividends, and

14   other reportable payments may, under certain circumstances, be subject to "backup withholding" at

15   the then applicable withholding rate (currently 28% and scheduled to increase to 31% beginning in

16   2011).  Backup withholding generally applies if the Holder (a) fails to furnish its social security

17   number or other taxpayer identification number ("TIN"), (b) furnishes an incorrect TIN, (c) fails

18   properly to report interest or dividends, or (d) under certain circumstances, fails to provide a certified

19   statement, signed under penalty of perjury, that the TIN provided is its correct number and that it is a

20   United States person that is not subject to backup withholding.  Backup withholding is not an

21   additional tax but merely an advance payment, which may be refunded by the IRS to the extent it

22   results in an overpayment of tax and the appropriate information is timely supplied to the IRS.

23   Certain persons are exempt from backup withholding, including, in certain circumstances,

24   corporations and financial institutions.

25   In addition, from an information reporting perspective, Treasury Regulations

26   generally require disclosure by a taxpayer on its United States federal income tax return of certain

27   types of transactions in which the taxpayer participated, including, among other types of

28   transactions, certain transactions that result in the taxpayer's claiming a loss in excess of specified

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

thresholds. Holders are urged to consult their tax advisors regarding these regulations and whether the transactions contemplated by the Plan would be subject to these regulations and require disclosure on the Holders' tax returns.

The foregoing summary has been provided for informational purposes only. All Holders of Claims receiving a distribution under the Plan are urged to consult their tax advisors concerning the United States federal, state and local and foreign tax consequences applicable under the Plan.

**X**

**ALTERNATIVES, CONCLUSION AND RECOMMENDATION**

The Joint VD Plan provides for prompt Distributions to Creditors in amounts believed by the Lehman VD Lenders to represent fair value for the Assets of the VD Plan Debtors, including all Litigation Claims. Although no current alternative to the Plan is contemplated by Lehman Creditors, possible alternatives would be (a) another plan under which someone provided funding to enable continued operation of the VD Plan Debtors pending sale of the Plan Projects and resolution of all Litigation Claims, including those against the Lehman Creditors (the Lehman Proponents believe that the Voluntary Debtors and/or Acquisitions may be proposing an alternative Plan) or (b) conversion of the VD Plan Debtors' Cases to Cases under chapter 7 in which, again, someone would need to provide funding to enable continued operation of the VD Plan Debtors pending sale of the Plan Projects and resolution of all Litigation Claims. Because the Lehman VD Lenders believe that the current Plan offers fair value for the VD Plan Debtors' Assets, and the foregoing alternatives would involve substantial delay before Distributions would be likely for Holders of unsecured, non-priority Claims, the Lehman VD Lenders recommend that eligible Creditors vote for the Plan.

08-13555-mg   Doc 11780-2   Filed 10/04/10   Entered 10/04/10 19:18:21   Exhibit B
Pg 184 of 197

Dated:  September 30, 2010               PACHULSKI STANG ZIEHL & JONES LLP


                                         By      /s/Robert B. Orgel
                                                 Richard M. Pachulski (CA Bar No. 90073)
                                                 E-mail: rpachulski@pszjlaw.com
                                                 Dean A. Ziehl (CA Bar No. 84529)
                                                 E-mail: dziehl@pszjlaw.com
                                                 Robert B. Orgel (CA Bar No. 101875)
                                                 E-mail: rorgel@pszjlaw.com

                                                 Attorneys for Lehman Commercial Paper
                                                 Inc. and Lehman ALI, Inc.

# EXHIBIT "1"

## Summary of Health and Safety Notices

| Ex. No | Citation | Date | Issuing Agency | Applicable Projects |
|---|---|---|---|---|
| 1 | Request for Supplemental Deposit | February 19,2009 | Los Angeles County Department of Regional Planning | Tesoro Project |
| 2 | Letter from City of Palmdale | March 10, 2009 | City of Palmdale | Palmdale Hills |

Case 08-13555-mg    Doc 11780-2    Filed 10/04/10    Entered 10/04/10 19:18:21    Exhibit B -
Pg 186 of 197

**EXHIBIT "2"**

**Lehman VD Lenders' Claims**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**JOINT VD DISCLOSURE STATEMENT: EXHIBIT "2"**

| | | | | | | | | | Combined Secured Claims & Deficiency Claims by Lehman Creditor | |
|---|---|---|---|---|---|---|---|---|---|---|
| Class | Prepetition Loan | Loan Amounts Per Loan | Plan Debtors: Claim # | Loan Amounts Per Plan Debtor | Plan Debtors' Projects' Values* | Cash Collateral & Other Collateral** | Lehman Creditor Secured Claims | Lehman Creditor Deficiency Claims | Lehman ALI | Lehman Commercial |
| | Ritter Ranch Loan Agreement Claim Filed by Lehman Commercial: $287,252,096.31 | $287,252,096 | Group I Debtors: | | | | | | | |
| 2.1 | | | Palmdale Hills #65 | $287,252,096 | $42,900,000 | $55,995,728 | $98,895,728 | $188,356,368 | | $287,252,096 |
| | SunCal Communities I Loan Agreement Claim Filed by Lehman Commercial: $343,221,391.06 | $343,221,391 | Group I Debtors: | | | | | | | |
| 2.2 | | | SunCal Bickford #16 | $343,221,391 | $29,500,000 | $1,800,519 | $31,300,519 | $311,920,872 | | $343,221,391 |
| 2.3 | | | SunCal Emerald #7 | $343,221,391 | $12,000,000 | $0 | $12,000,000 | $331,221,391 | | $343,221,391 |
| | | | Group II Debtors: | | | | | | | |
| 2.4 | | | Acton Estates #6 | $343,221,391 | $6,800,000 | $0 | $6,800,000 | $336,421,391 | | $343,221,391 |
| 2.6 | | | SunCal I #1 | $343,221,391 | $0 | $4,012,093 | $4,012,093 | $339,209,298 | | $343,221,391 |
| 2.7 | | | SunCal Summit Valley #12 | $343,221,391 | $2,200,000 | $4,852,435 | $7,052,435 | $336,168,956 | | $343,221,391 |
| | SunCal Bickford 2nd Lien Loan Agreement Claim Filed by Lehman Ali: $56,494,059.38 | $56,494,059 | Group I Debtors: | | | | | | | |
| 8.2 | | | SunCal Bickford #17 | $56,494,059 | $0 | $0 | $0 | $56,494,059 | $56,494,059 | |
| | Interim Loan Agreement Claim Filed by Lehman ALI: $23,795,012.59 | $23,795,013 | Group II Debtors: | | | | | | | |
| 2.5 | | | SCC Communities #9 | $23,795,013 | $1,200,000 | $3,409 | $1,203,409 | $22,591,604 | $23,795,013 | |
| 2.8 | | | Tesoro #7 | $23,795,013 | $1,850,000 | $71 | $1,850,071 | $21,944,942 | $23,795,013 | |
| **Totals** | | $710,762,559 | | $2,107,443,136 | $96,450,000 | $66,664,255 | $163,114,255 | $1,944,328,881 | $104,084,085 | $2,003,359,052 |
| Each Lehman VD Lender's Percentage of Total Loan Amounts For VD Plan Debtors | | | | | | | | | 5% | 95% |
| Total, collectively, for all Lehman VD Lenders: | | | | | | | | $2,107,443,136 | | |

*For the Plan Debtors' Project Values, the values used are from the Lehman Creditors' appraisals undertaken during these Chapter 11 Cases. Becaue the Bickford Ranch Project's value is less than the amount of the senior lien, no value is shown for the Project with respect to the 2nd Lien loan of Lehman ALI.

**Cash amounts include both Undisputed Cash Collateral and Disputed Cash Collateral. The numbers were derived from September 2010 Filings by the Voluntary Debtors of pleadings and Monthly Operating Reports. Also, Palmdale Hills apparently owns approximately $35.2 million of CFD Bonds. Additionally, the Lehman VD Lenders' collateral includes the Interests of SunCal Summit Valley in Seven Brothers and Kirby Estates (estimated to be worth $4,817,726) and the Interests of SunCal I in SunCal Beaumont and SunCal Johannson (estimated to be worth $4,012,067).

# EXHIBIT "3"

## Additional Definitions

1.    **Acquisitions**. SCC Acquisitions, Inc., a California corporation, an indirect parent company of all of the Debtors.

2.    **Danske Bank**. Danske Bank A/S London Branch.

3.    **Fenway Capital**.  Fenway Capital Funding LLC, which previously owned or held a legal or equitable interest in all or a portion of the Lehman Loans made pursuant to and/or evidenced by the following loan agreements, but for which a Lehman Creditor nonetheless continued as agent:  (a) SunCal Communities I Loan Agreement; (b) Ritter Ranch Loan Agreement; (c) SunCal PSV Loan Agreement; (d) Delta Coves Loan Agreement; (e) SunCal Marblehead / SunCal Heartland Loan Agreement; (f) SunCal Oak Valley Loan Agreement; and (g) SunCal Northlake Loan Agreement.

4.    **NY Bankruptcy Court.**  United States Bankruptcy Court for the Southern District of New York, which court has jurisdiction over the case of Lehman Commercial under the Bankruptcy Code (jointly administered under case no. 08-13555)

5.    **SunCal Management**. SunCal Management, LLC, a Delaware limited liability company, and the property manager for the Projects.

| | | |
|---|---|---|
| In re: | | CHAPTER 11 |
| PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS, | | |
| | Debtor(s). | CASE NUMBER 08-17206-ES |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Blvd., 11th Floor, Los Angeles, CA 90067**

A true and correct copy of the foregoing document described as *DISCLOSURE STATEMENT WITH RESPECT TO JOINT CHAPTER 11 PLAN FOR TWELVE VOLUNTARY DEBTORS PROPOSED BY THE LEHMAN VD LENDERS* will be served or was served **(a)** on the **judge in chambers** in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On _____September 30, 2010_____ I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒ Service information continued on attached page

**II.  SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served)**:**
On _____September 30, 2010_____ I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

JUDGE'S COPY [Overnight Delivery]

The Honorable Erithe A. Smith
United States Bankruptcy Court - Central District of California
Ronald Reagan Federal Building and
United States Courthouse
411 West Fourth Street, Suite 5041
Santa Ana, CA 92701-4593

☒ Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____September 30, 2010_____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 30, 2010 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                                                          **F 9013-3.1**

| In re: | CHAPTER 11 |
| PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS, | |
| Debtor(s). | CASE NUMBER 08-17206-ES |

## I. SERVED BY NEF

## 8:08-bk-17206-ES Notice will be electronically mailed to:

(1)     Selia M Acevedo    sacevedo@millerbarondess.com, mpritikin@millerbarondess.com;bprocel@millerbarondess.com
(2)     Joseph M Adams    jadams@sycr.com
(3)     Raymond H Aver    ray@averlaw.com
(4)     James C Bastian    jbastian@shbllp.com
(5)     John A Boyd    fednotice@tclaw.net
(6)     Mark Bradshaw    mbradshaw@shbllp.com
(7)     Jeffrey W Broker    jbroker@brokerlaw.biz
(8)     Brendt C Butler    BButler@rutan.com
(9)     Andrew W Caine    acaine@pszyjw.com
(10)    Carollynn Callari    ccallari@venable.com
(11)    Dan E Chambers    dchambers@jmbm.com
(12)    Shirley Cho    scho@pszjlaw.com
(13)    Vonn Christenson    vrc@paynefears.com
(14)    Brendan P Collins    bpcollins@bhfs.com
(15)    Vincent M Coscino    vcoscino@allenmatkins.com, emurdoch@allenmatkins.com
(16)    Paul J Couchot    pcouchot@winthropcouchot.com, pj@winthropcouchot.com;sconnor@winthropcouchot.com
(17)    Jonathan S Dabbieri    dabbieri@shlaw.com
(18)    Ana Damonte    ana.damonte@pillsburylaw.com
(19)    Vanessa S Davila    vsd@amclaw.com
(20)    Melissa Davis    mdavis@shbllp.com
(21)    Daniel Denny    ddenny@gibsondunn.com
(22)    Caroline Djang    crd@jmbm.com
(23)    Donald T Dunning    ddunning@dunningLaw.com
(24)    Joseph A Eisenberg    jae@jmbm.com
(25)    Lei Lei Wang Ekvall    lekvall@wgllp.com
(26)    Richard W Esterkin    resterkin@morganlewis.com
(27)    Marc C Forsythe    kmurphy@goeforlaw.com
(28)    Alan J Friedman    afriedman@irell.com
(29)    Steven M Garber    steve@smgarberlaw.com
(30)    Christian J Gascou    cgascou@gascouhopkins.com
(31)    Barry S Glaser    bglaser@swjlaw.com
(32)    Robert P Goe    kmurphy@goeforlaw.com, rgoe@goeforlaw.com;mforsythe@goeforlaw.com
(33)    Eric D Goldberg    egoldberg@stutman.com
(34)    Richard H Golubow    rgolubow@winthropcouchot.com, pj@winthropcouchot.com
(35)    Kelly C Griffith    bkemail@harrisbeach.com
(36)    Matthew Grimshaw    mgrimshaw@rutan.com
(37)    Asa S Hami    ahami@morganlewis.com
(38)    Michael J Hauser    michael.hauser@usdoj.gov
(39)    D Edward Hays    ehays@marshackhays.com
(40)    Michael C Heinrichs    mheinrichs@omm.com
(41)    Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
(42)    Jonathan M Hoff    jonathan.hoff@cwt.com
(43)    Nancy Hotchkiss    nhotchkiss@trainorfairbrook.com
(44)    Michelle Hribar    mhribar@rutan.com
(45)    John J Immordino    john.immordino@wilsonelser.com, raquel.burgess@wilsonelser.com
(46)    Lawrence A Jacobson    laj@cohenandjacobson.com
(47)    Michael J Joyce    mjoyce@crosslaw.com
(48)    Stephen M Judson    sjudson@fablaw.com
(49)    David I Katzen    katzen@ksfirm.com
(50)    Christopher W Keegan    ckeegan@kirkland.com, emilee@kirkland.com;alevin@kirkland.com
(51)    Payam Khodadadi    pkhodadadi@winthropcouchot.com, pj@winthropcouchot.com
(52)    Irene L Kiet    ikiet@hkclaw.com
(53)    Mark J Krone    mk@amclaw.com, crs@amclaw.com;amc@amclaw.com
(54)    Leib M Lerner    leib.lerner@alston.com
(55)    Peter W Lianides    plianides@winthropcouchot.com, pj@winthropcouchot.com
(56)    Charles Liu    cliu@winthropcouchot.com
(57)    Kerri A Lyman    klyman@irell.com
(58)    Mariam S Marshall    mmarshall@marshallramoslaw.com
(59)    Robert C Martinez    rmartinez@mclex.com

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                                                                                F 9013-3.1

In re:
PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,

Debtor(s).

CHAPTER 11

CASE NUMBER 08-17206-ES

(60)   Michael D May     mdmayesq@verizon.net
(61)   Hutchison B Meltzer   hmeltzer@wgllp.com
(62)   Krikor J Meshefejian   kjm@lnbrb.com
(63)   Joel S. Miliband   jmiliband@rusmiliband.com
(64)   James M Miller   jmiller@millerbarondess.com
(65)   Louis R Miller   smiller@millerbarondess.com
(66)   Mike D Neue   mneue@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
(67)   Robert Nida   Rnida@castlelawoffice.com
(68)   Henry H Oh   henry.oh@dlapiper.com, janet.curley@dlapiper.com
(69)   Sean A Okeefe   sokeefe@okeefelc.com
(70)   Robert B Orgel   rorgel@pszjlaw.com, rorgel@pszjlaw.com
(71)   Malhar S Pagay   mpagay@pszjlaw.com, mpagay@pszjlaw.com
(72)   Penelope Parmes   pparmes@rutan.com
(73)   Ronald B Pierce   ronald.pierce@sdma.com
(74)   Cassandra J Richey   cmartin@pprlaw.net
(75)   Debra Riley   driley@allenmatkins.com
(76)   James S Riley   tgarza@sierrafunds.com
(77)   Todd C. Ringstad   becky@ringstadlaw.com
(78)   Martha E Romero   Romero@mromerolawfirm.com
(79)   John P Schafer   jps@mandersonllp.com
(80)   John E Schreiber   jschreiber@dl.com
(81)   William D Schuster   bills@allieschuster.org
(82)   Christopher P Simon   csimon@crosslaw.com
(83)   Wendy W Smith   wendy@bindermalter.com
(84)   Steven M Speier   Sspeier@Squarmilner.com, ca85@ecfcbis.com
(85)   Michael St James   ecf@stjames-law.com
(86)   James E Till   jtill@thelobelfirm.com, jmattiace@thelobelfirm.com;pnelson@thelobelfirm.com
(87)   United States Trustee (SA)   ustpregion16.sa.ecf@usdoj.gov
(88)   Carol G Unruh   cgunruh@sbcglobal.net
(89)   Jason Wallach   jwallach@gladstonemichel.com
(90)   Joshua D Wayser   , kim.johnson@kattenlaw.com
(91)   Christopher T Williams   ctwilliams@venable.com, jcontreras@venable.com
(92)   Marc J Winthrop   mwinthrop@winthropcouchot.com, pj@winthropcouchot.com
(93)   David M Wiseblood   dwiseblood@seyfarth.com
(94)   Brett K Wiseman   bwiseman@aalaws.com
(95)   Arnold H Wuhrman   wuhrman@serenitylls.com
(96)   Dean A Ziehl   dziehl@pszjlaw.com, dziehl@pszjlaw.com

## II.  SERVED BY U.S. MAIL

*Please see attached service lists*

## III.  SERVED BY E-MAIL

(1) Gen'l Counsel for Voluntary Debtors:
    Paul Couchot - pcouchot@winthropcouchot.com
    Marc J Winthrop - pj@winthropcouchot.com
    Paul Lianides - plianides@winthropcouchot.com
(2) Debtors:
    Palmdale Hills Property, LLC and its related entities - bcook@suncal.com
(3) Special Counsel for Jt. Admin. Debtors & Trustee Speier:
    Louis Miller - smiller@millerbarondess.com
    Martin Pritikin – mpritikin@millerbarondess.com
(4) Gen'l Counsel for Ch. 11 Trustee (Speier):
    William Lobel - wlobel@thelobelfirm.com
    Mike Neue - mneue@thelobelfirm.com
(5) Ch. 11 Trustee (c/o Squar Milner):
    Steven N. Speier - sspeier@squarmilner.com; ca85@ecfcbis.com
(6) Counsel for Voluntary Debtors' Committee:
    Alan Friedman - afriedman@irell.com
    Kerri A Lyman - klyman@irell.com
(7) Counsel for Trustee Debtors' Committee:

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                           **F 9013-3.1**

| In re:<br><br>PALMDALE HILLS PROPERTY, LLC. AND ITS RELATED DEBTORS,<br><br>Debtor(s). | CHAPTER 11<br><br>CASE NUMBER 08-17206-ES |
|---|---|

Case 8:08-bk-17206-ES   Doc 1780-2   Filed 09/30/10   Entered 09/30/10 20:01:44   Exhibit B Pg 192 of 197

Lei Lei Wang Ekvall - lekvall@wgllp.com
Hutchison B Meltzer - hmeltzer@wgllp.com
(8) Office of the United States Trustee:
Michael Hauser - michael.hauser@usdoj.gov

Edward Soto - Edward.soto@weil.com; odalys.smith@weil.com; lori.seavey@weil.com
Allen Blaustein - Allen.Blaustein@weil.com
Clay Roesch – clay.roesch@weil.com
Carrolynn H. G. Callari - ccallari@venable.com
Chauncey Cole – chauncey.cole@cwt.com
Betty Shumener - betty.shumener@dlapiper.com
John E. Schreiber - jschreiber@dl.com; rreinthaler@dl.com
Joseph A Eisenberg - jae@jmbm.com
Mark McKane - mark.mckane@kirkland.com
Atty for Bond Safeguard & Lexon - mea@amclaw.com

*See attached additional Email Service List*

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                                      **F 9013-3.1**

Lehman/Palmdale Hills Property, LLC
52063-001

List of names served with Plan and Disclosure Statement by Michael Matteo

| | |
|---|---|
| Efiled 01/11/10 | |
| Via Email<br>Chris Kimbrell<br>Hunsaker and Associates<br>Email:  CKimbrell@hunsaker.com | |
| Efiled 12/15/09 | |
| Via Email<br>Ken Goddard<br>Operations Officer<br>Roddan Paolucci Roddan<br>2516 Via Tejon, Suite 114<br>Palos Verdes, CA 90274<br>310.791.2755 ext. 345<br>kgoddard@roddanpaolucci.com | Via Email<br>**John Gentillon**<br>C.E.O.<br>455 North Twin Oaks Valley Road<br>San Marcos , CA  92069<br>(760)759-2366   ext.  307<br>john@thelandstewards.com |
| Via Email<br>**Deborah L. Lemanski**<br>Assistant to Frederick A. Berg, Esq. and<br>Barry J. Jensen, Esq.<br>**Kotz, Sangster, Wysocki and Berg, P.C.**<br>400 Renaissance Center, Suite 3400<br>Detroit, MI 48243-1618<br>(313) 259-8300 (Main)<br>(313) 259-2449 (Direct)<br>(313) 259-1451 (Fax)<br>dlemanski@kotzsangster.com<br>bjensen@kotzsangster.com | Via Email<br>Virginia Zareba, Sec'y to Darren G. Burge<br>Darren G. Burge<br>Cohen & Burge, LLP<br>699 Hampshire Road, #207<br>Thousand Oaks, CA 91361<br>(805) 449-4200<br>(805) 449-4210 Fax<br>vzareba@cohenburgelaw.com<br>dburge@cohenburgelaw.com |
| Via Email<br>Brian Cartmell<br>Independent Construction Co.<br>3911 Laura Alice Way<br>Concord, CA  94520<br>Phone: (925) 686-1780<br>Fax:  (925) 686-1499<br>bcartmell@indycc.com | |

Mr. C.F. Raysbrook
California Department of Fish and Game
Streambed Alteration Team
4949 Viewridge Avenue
San Diego, CA  92123

Bob Hosea
California Department of Fish and Game,
Region 2
Attn.:  Streambed Alteration Agreement
Program
1701 Nimbus Road
Rancho Cordova, CA  95670

County of Riverside Transportation and Land
Management Agency
4080 Lemon Street, 8th Floor
Riverside, CA  92501
Attn.:  Juan C. Perez, P.E., T.E.
        Director of Transportation

Mitchell Ogron
14 Old Lake Circle
Henderson, NV  89074

Rte 60, LLC
14 Old Lake Circle
Henderson, NV  89074
Attn:  Jim Stockhausen

Lee Ann Carranza, Preserve Manager
Center for Natural Lands Management
P.O. Box 2162
Capistrano Beach, CA  92624

U.S. Fish and Wildlife Service
Carlsbad Fish and Wildlife Office
6010 Hidden Valley Road
Carlsbad, CA  92009
Attn.:  Field Supervisor

Denise H. Hering, Esq.
Stradling, Yocca, Carlson & Rauth
660 Newport Center Drive, Suite 1600
Newport Beach, CA  92660

Stephen L. Millham
Anaverde LLC
c/o Empire Partners, Inc.
3536 Concours Street, Suite 300
Ontario, CA  91764

California Regional Water Quality
Control Board
Los Angeles Region
320 West 4th Street, Suite 200
Los Angeles, CA  90013

Ms. Leslie Gault
Placer County Water Agency
144 Ferguson Road
Auburn, CA  95604

County of Riverside
P.O. Box 1090
Riverside, CA  92502-1090
Attn.:  George Johnson

Church of God in Jesus Christ
3349 Rubidoux Blvd.
Riverside, CA  92509
Attn.:  Cecilia A. Bennett

Riverside County Economic Development
Agency
1153 Spruce Street, Suite B
Riverside, CA  92507
Attn.:  Tina English,  Deputy Executive
Director

U.S. Army Corps of Engineers
Los Angeles District
P.O. Box 532711
Los Angeles, CA  90053-2325
Attn.:  District Counsel

City of San Clemente
City Hall
100 Avenida Presidio
San Clemente, CA  92672
Attn.:  George Scarborough, City Manager

Mr. Sam Wyngaarden
Southern California Gas Company
One Liberty
Aliso Viejo, CA  92656-3830

Mr. Brian Veit
Farallon Capital Management, LLC
One Maritime Plaza, Suite 2100
San Francisco, CA  94111

Dr. Aaron Allen
U.S. Army Corps of Engineers
2151 Alessandro Drive, Suite 110
Ventura, CA  93301

Riverside County Flood Control and Water
Conservation District
1995 Market St.
Riverside, CA  92501
Attn.:  Warren D. Williams
        General Manager & Chief Engineer

Jurupa Area Recreation & Park District
4810 Pedley Rd.
Riverside, CA  92502
Attn.:  Dan Rodriguez, General Manager

Marjorie Ina and Jerry Ray Engelauf
5037 Riverside Drive
Riverside, CA  92509-6427

David R. Brunner, Executive Director
Center for Natural Lands Management
425 E. Alvarado St., Ste. H
Fallbrook, CA  92028-2960

California Department of Fish and Game
4949 Viewridge Avenue
San Diego, CA  92123
Attn.:  Regional Manager

Ron Lebs, Deputy Superintendent
Capistrano Unified School District
Business and Support Services
33122 Valle Road
San Juan Capistrano, CA  92675

Ms. Pinky Oliver
San Diego Gas & Electric
8330 Century Park Court, Room 31-C
San Diego, CA  92123

Mr. Justin Bowman, OSP Planning Mgr.
AT&T
739 E. Santa Clara St., Room 312A
Ventura, CA  93001

Ms. Deborah Schwenk
AT&T
6930 Van Nuys Blvd., Room 110
Van Nuys, CA  91405

Elma Watson, Assistant Planner
City of Lancaster
44933 Fern Avenue
Lancaster, CA  93534

Ms. Laurie Lile
City of Palmdale
38250 N. Sierra Highway
Palmdale, CA  93550-4798

Stephen H. Williams, City Manager
City of Palmdale
38300 N. Sierra Hwy.
Palmdale, CA  93550-4798

Mr. Michael Mischel
City of Palmdale Engineering Department
38250 N. Sierra Highway
Palmdale, CA  93550-4798

Matthew Ditzhazy, City Attorney
Noel James Dorean, Deputy City Attorney
City of Palmdale
38300 N. Sierra Hwy.
Palmdale, CA  93550-4798

Tobi Tyler
California Regional Water Quality Control
Board
Lahontan Region
2501 Lake Tahoe Bouelvard
South Lake Tahoe, CA  96150

Ronnie Burtner
Los Angeles County Sanitation District
P.O. Box 4998
Whittier, CA  90607

Adam Ariki
Los Angeles County Waterworks District No.
40, Antelope Valley
P.O. Box 1460
Alhambra, CA  91802-1406

Mr. Jay R. Olson
Southern California Edison
10180 Telegraph Road
Ventura, CA  93004

Bertram E. Williams
Southern California Edison
26100 Menifee Road
Romoland, CA  92585

City of Torrance
City Hall
3031 Torrance Blvd.
Torrance, CA  90503-2970
Attn.:  Jeffery W. Gibson,
          Community Development Director

City of Torrance
City Attorney's Office
3031 Torrance Blvd.
Torrance, CA 90503
Attn.:  John Fellows, City Attorney

Rutan & Tucker, LLP
611 Anton Blvd., Ste. 1400
Costa Mesa, CA 92626-1931
Attn.:  Jeffrey M. Oderman, Esq.

City of Beaumont
Attn.:  Ernest Egger, Director of Planning
550 E. Sixth St.
Beaumont, CA  92223-0158

City of San Clemente
City Hall
100 Avenida Presidio
San Clemente, CA  92672
Attn.:  George Scarborough, City Manager

Rutan & Tucker, LLP
611 Anton Blvd., Ste. 1400
Costa Mesa, CA 92626-1931
Attn.:  Jeffrey M. Oderman, Esq.

City of Beaumont
Attn.:  Ernest Egger, Director of Planning
550 E. Sixth St.
Beaumont, CA  92223-0158

City of Palmdale
Attn.:  Steve Williams, City Manager
          Matthew Ditzhazy, City Attorney
38300 N. Sierra Hwy.
Palmdale, CA  93550

John Sanabria
Acting Director of Dept. of Regional Planning
County of Los Angeles Dept. of Regional
Planning
1390 Hall of Records
320 West Temple Street
Los Angeles, CA  90012

**Palmdale Hills Property**
**8:08-bk-17206-ES**
**Service List for Parties not being served electronically**

Richard B Andrade
Andrade & Associates
27101 Puerta Real Ste 120
Mission Viejo, CA 92691-8518

Tab L K Artis
301 N Lake Ave 7th Fl
Pasadena, CA 91101

Shaaron A Bangs
Crawford & Bangs
1290 E Center Ct Dr
Covina, CA 91724

Miller Barondess LLP
,

William Bissell
110 Newport Center Dr Ste 200
Newport Beach, CA 92660

William G Bissell
110 Newport Ctr Dr Ste 200
Newport Beach, CA 92660

Brian Construction Co Inc
,

John W Busby
251 Lafayette Circle Ste 350
Lafayette, CA 94549

CRG Partners Group, LLC
,

Wayne W Call
Call & Jensen
610 Newport Ctr Dr Ste 700
Newport Beach, CA 92660

Central Pacific Bank
Frandzel Robins Bloom & Csato, L.C.
6500 Wilshire Boulevard
17th Floor
Los Angeles, CA 90048-4920

Brent S Clemmer
Slovak Baron & Empey LLP
1800 E Tahquitz Cyn Wy
Palm Springs, CA 92262

Adrianna M Corrado
Lanak & Hanna
400 N Tustin Ave Ste 120
Santa Ana, CA 92705-3815

Delta Coves Venture LLC
2392 Morse
Irvine, CA 92614

Donald B Devirian
Devirian & Shinmoto
11400 W Olympic Blvd Ste 200
Los Angeles, CA 90064

Francis T Donohue
Voss, Cook & Thel LLP
895 Dove Street Suite 450
Newport Beach, CA 92660

Norman A. Filer
500 N. State College Bl., #1270
Orange, CA 92868

Stanley Haren
Gill & Baldwin
130 N Baldwin Blvd #405
Glendale, CA 91203

William R Hart
Hart King & Coldren
200 Sandpointe Fourth Fl
Santa Ana, CA 92707

Andrew C Kienle
200 Sandpointe, 4th Fl
Santa Ana, CA 92707

LB/L SunCal Northlake LLC
,

LB/L SunCal Oak Valley LLC
,

Vivian Le
Gary R King & Associates
30950 Rancho Viejo Rd Ste 155
San Juan Capistrano, CA 92675

Mark E McKane
Kirkland & Ellis LLP
555 California St
San Francisco, CA 94104

Louis R Miller
1999 Ave of The Star Ste 1000
Los Angeles, CA 90067

Louis R Miller
Miller Barondess LLP
1999 Avenue of the Stars
Ste 1000
Los Angeles, CA 90067

Louis R Miller
Miller Barondess, LLP
1999 Avenue of the Stars, Ste 1000
Los Angeles, CA 90067

Gerald W Mouzis
The Mouzis Law Firm APC
13681 Newport Ave Ste 8-605
Tustin, CA 92680

Howard S Nevins
2150 River Plaza Dr Ste 450
Sacramento, CA 95833

New Anaverde LLC
,

Richard Pachulski
Pachulski Stang Ziehl & Jones LLP
10100 Santa Monica Bl Ste 1100
Los Angeles, CA 90067-4003

Martin Pritikin
Miller Barondess, LLP
1999 Avenue of the Stars, Ste 1000
Los Angeles, CA 90067

J Patrick Ragan
1881 S Business Center Dr Suite 7b
San Bernardino, CA 92408

Regal Development LLC
c/o Benjamin M Weiss
12770 High Bluff Dr
Ste 160
San Diego, CA 92130

SQUAR, MILNER, MIRANDA &
WILLIAMSON, LLP
4100 Newport Place, Third Floor
Newport Beach, CA 92660

Raymond D Scott
1835 W Orangewood Ave Ste 255
Orange, CA 92868

Laurie A Shade
333 W Santa Ana Blvd Ste 407
PO Box 1379
Santa Ana, CA 92702-1379

Kimberly A Soyer
251 Lafayette Cir, Ste 350
Lafayette, CA 94549

Joseph L Strohman
Ferguson Case Orr Paterson LLP
1050 S Kimball Rd
Ventura, CA 93004

SunCal Century City LLC
2392 Morse
Irvine, CA 92614

SunCal Heartland LLC
2392 Morse
Irvine, CA 92614

SunCal Marblehead LLC
2392 Morse
Irvine, CA 92614

SunCal Oak Knoll LLC
,

SunCal PSV LLC
2392 Morse
Irvine, CA 92614

SunCal Torrance Properties LLC
2392 Morse
Irvine, CA 92614

Dina Tasini
Tasini and Associates
2126 Grant St
Berkeley, CA 94703

Theresa C Tate
Crawford & Bangs LLP
1290 E Center Crt Dr
Covina, CA 91724

Robert S Throckmorton
Throckmorton, Beckstrom & Tomassian,
LLP
2 Corporate Park, Ste 210
Irvine, CA 92606-5115

Elizabeth A Walters
3365 Seventh Ave
San Diego, CA 92103

Douglas F Welebir
Welebir Tierney & Weck
2068 Orange Tree Ln Ste 215
Redlands, CA 92374