HEARING DATE AND TIME: October 27, 2010 at 10:00 a.m.
RESPONSE DEADLINE: October 13, 2010 at 4:00 p.m.

KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102-2186
Tel: (402) 346-6000
Facsimile: (402) 346-1148
Bruce A. Wilson, Esq. (BAW 7206)
Jeffrey T. Wegner, Esq. (JTW 4893)
bruce.wilson@kutakrock.com
jeffrey.wegner@kutakrock.com

*Attorneys for The Morningside Ministries Foundation, Inc.*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.* | : Case No. 08-13555 (JMP) |
| | : Jointly Administered |
| Debtors. | : |
| | : |

------------------------------------------------------------------------x

### RESPONSE OF THE MORNINGSIDE MINISTRIES FOUNDATION, INC. TO DEBTORS' THIRTY-FIFTH OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)

The Morningside Ministries Foundation, Inc. ("Foundation") files this Response to the Debtors' Thirty-Fifth Omnibus Objection to Claims (Valued Derivative Claims) (the "Claim Objection"), and states as follows:

### RELIEF REQUESTED

The Debtors' Claim Objection requests an improper reduction of the claims of the Foundation filed in the bankruptcy cases of Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBH"). However, the Proofs of Claim of the Foundation evidence the proper

4838-2238-1575.4

amounts owed by LBSF and LBH to the Foundation. Accordingly, the Debtors' Claim Objection must be denied.

## BACKGROUND

1. Morningside Ministries is a faith-based nonprofit organization located in San Antonio, Texas that provides long-term retirement care, assisted living and skilled health care services to the elderly in San Antonio and the surrounding area. The Foundation is a 501(c)(3) support organization to Morningside Ministries, and as such has no employees but holds all land, buildings and other assets and debt obligations of the two entities. Morningside Ministries was established in 1961 by a division of the United Methodist Church in southwest Texas, has provided needed retirement, assisted living and skilled care to the elderly for nearly 50 years and currently operates three retirement facilities in the San Antonio area. Morningside Ministries is not supported financially by its affiliated church, but is supported in part by its operations and in part by charitable giving.

2. In connection with a financing transaction of the Foundation, LBSF previously provided the following swap agreement and related confirmations to the Foundation to evidence, in aggregate, a $23,000,000 notional amount interest rate swap transaction between the parties (collectively, the swap agreement, confirmations and related documents, the "Swap Agreement"):

    (i)    ISDA Master Agreement dated as of March 13, 2008;

    (ii)    Confirmation dated March 13, 2008 bearing Global ID: 3714534; and

    (iii)    Confirmation dated March 13, 2008 bearing Global ID: 3714538.

3. LBH guaranteed LBSF's performance under the Swap Agreement.

4. The Foundation properly terminated the transactions under the Swap Agreement (the "Swap Transactions") as of October 2, 2008 based on defaults thereunder by Debtors. The Foundation subsequently entered into a replacement swap transaction with a new swap provider in order to

continue to hedge its financing transaction. Considerable costs were incurred by the Foundation in connection with such termination and replacement.

## PROOFS OF CLAIM

5.  After LBSF and LBH filed bankruptcy, the Foundation timely filed proofs of claim (the "Proofs of Claim") in the bankruptcy cases of LBSF and LBH. The Proofs of Claim evidenced the following claims of the Foundation against LBSF and LBH for amounts owed under the terminated Swap Transactions in the amount of $495,099.25, among other potential claims:

(i) a Settlement Amount (as defined in the Swap Agreement) of the Swap Transactions, determined in accordance with the terms of the Swap Agreement as of the date the Swap Transactions were terminated; and

(ii) additional unliquidated amounts due to the Foundation under the Swap Agreement, including, without limitation, accrued interest at the default rate, other unpaid payment amounts under the Swap Agreement and indemnification for legal fees and professional advisory fees of the Foundation associated with the termination of the Swap Transactions and otherwise incurred as a result of the Debtors' defaults under the Swap Agreement and related guaranty (provision for such indemnification and fees being expressly provided for in the Swap Agreement).

6.  The Proofs of Claim evidence valid claims against LBSF and LBH relating to the Swap Agreement and LBH guaranty in at least the amount of $495,099.25 based on the Debtors' default of their obligations under the Swap Agreement and related guaranty. The claim amount set forth in the Proofs of Claim was determined by the Foundation, with the assistance of its professional advisors, based directly on the terms of the Swap Agreement and the documents submitted by the Foundation in connection with the Proofs of Claim and related Derivative Questionnaire.

7. In the Debtors' Claim Objection, the Debtors seek to improperly reduce the claims of the Foundation to less than 1% of the amount set forth in the Proofs of Claim. The Debtors' Claim Objection does not set forth any proper basis to reduce the claims. Moreover, the Debtors' Claim Objection is based on an undisclosed calculation methodology that the Foundation asserts is inconsistent with the Swap Agreement. The Claim Objection asserts only the bare conclusion that the Debtors have determined, through a process described by the Debtors as the "Proposed Settlement Amount and Classification," that the amount set forth in the Proofs of Claim is, in the Debtors' view and under the Debtors' purported standard, not a "fair, accurate and reasonable" amount. Claims Objection at ¶ 14.[1] It is not surprising that the valuation methodology developed and employed by the Debtors produces a dramatically reduced claim amount.

8. Moreover, the Foundation is compelled to note that the Debtors have also either forgotten or disregarded *the Court's* clear statements to the Debtors during the November 19, 2009 hearing on the motion to compel performance of Chicago Board of Education executory contracts. Given the nature of the Debtors' counterparty in that case, which was an entity engaged in public benefit activities, similar to the counterparty here, the Court admonished the Debtors to "settle the ones you don't want to present" (Tr. at p. 95) and advised the Debtors not to make circumstances even "more expensive" for such counterparties (Tr. at p. 114).

---

[1] In addition to being inconsistent with the terms of the Swap Agreement, the basis of the Debtors' Claim Objection does not appear to comply with the requirements of Fed.R.Bankr.Proc. 3007(d) applicable to omnibus claims objections, as enlarged by the "Additional Permitted Grounds" authorized by the Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(a) for Approval of Claims Objection Procedures entered on January 14, 2010.

**DISCUSSION**

9. The Bankruptcy Code creates a "burden-shifting framework" in connection with claim objections. *Stancill v. Harford Sands Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 640 (4th Cir. 2004).

10. In accordance with Fed. R. Bankr. P. 3001(f), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001 (f); *see* 11 U.S.C. § 502(a) (deeming a claim allowed unless a party in interest objects to the claim); *In re Mid-Amer. Waste Sys., Inc.*, 284 B.R. 53, 69 n.23 (Bankr. D. Del. 2002) ("Fed. R. Bankr. P. 3001(f) creates a presumption in favor of validity of a claimant's proof of claim.").

11. If a court determines a proof of claim is *prima facie* evidence of its validity, the burden shifts to the Debtors to "go[ ] forward with evidence supporting the objection." *Wilson v. Broadband Wireless Int'l Corp. (In re Broadband Wireless Int'l Corp.)*, 295 B.R. 140, 145 (B.A.P. 10th Cir. 2003) (citation omitted). This evidence must be "of probative force equal to that of the allegations contained in the proof of claim." *Id.* (citation omitted); *see also Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991) (stating that an objecting party must produce evidence "tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves") (citation omitted).

12. Only if the objecting party "overcomes the prima facie validity of the claim" does the burden shift again to the claimant to "prove its claim by a preponderance of the evidence." *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 50 (Bankr. D. Del. 2001) (citation omitted).

13. Merely filing a claim objection is insufficient to "deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." *Juniper Dev. Group v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in the original);

*In re Holm,* 931 F.2d at 623 (noting that a proof of claim "is some evidence as to its validity and amount . . . [and] is strong enough to carry over a mere formal objection without more") (citation omitted).

### The Foundation's Proofs of Claims Are Valid Claims

14. Contrary to the Debtors' conclusory Claim Objection, the Proofs of Claim constitute valid claims and establish accurate amounts that are owed by the Debtors to the Foundation.

15. Apart from a bare assertion that the Debtors' methodology results in a reduced amount owed on the Proofs of Claim, the Debtors offer no substantive evidence for this conclusion and the proposed reduction in the amount of the Proofs of Claim.

16. Accordingly, the Debtors have failed to satisfy their "initial burden of presenting sufficient evidence to overcome the presumed validity and amount" of the Proofs of Claim, and the Debtors' Claim Objection to the Proofs of Claim must be overruled. *In re Planet Hollywood Int'l*, 274 B.R. 391, 394 (Bankr. D. Del. 2001).

17. Last, the Debtors' Claim Objection also purports to reserve the right to assert additional objections to the Foundation's Proofs of Claim at a later date. However, the Debtors should only be provided with one bite at the apple, rather than resolving the Proofs of Claim piecemeal and requiring the Foundation to respond to further claims objections. For the reasons set forth, the Debtors' Claim Objection should be denied and the Foundation's claims should be allowed. In addition to the Settlement Amount and other claims set forth above, the Foundation is entitled to recover all of its fees, costs and expenses, including but not limited to its reasonable fees of counsel. *See Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143, 147 (2nd Cir. 2009) (holding that "an unsecured claim for post-petition fees, authorized by a valid pre-petition contract, is allowable under Section 502(b) [of the

4838-2238-1575.4                                          6

Bankruptcy Code] and deemed to have arisen pre-petition."); *See also, Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443 (2007).

WHEREFORE, for the foregoing reasons, and such additional reasons as may be raised in a supplemental response and/or at the hearing on the Claim Objection, the Foundation requests that the Claim Objection be overruled and that the claims of the Foundation be allowed in their entirety.

Dated: Omaha, Nebraska
October 11, 2010

       Respectfully submitted,

       KUTAK ROCK LLP


       By: */s/ Bruce A. Wilson*
        Bruce A. Wilson, Esq. (BAW 7206)
        Jeffrey T. Wegner, Esq. (JTW 4893)
        Kutak Rock LLP
        1650 Farnam Street
        Omaha, NE 68102-2186
        Tel: (402) 346-6000
        Facsimile: (402) 346-1148

       *Attorneys for The Morningside Ministries*
       *Foundation, Inc.*

4838-2238-1575.4

## CERTIFICATE OF SERVICE

      I hereby certify under penalty of perjury that on October 11, 2010, a true and exact copy of the foregoing Response of The Morningside Ministries Foundation, Inc. to the Debtors' Thirty-Fifth Omnibus Objection to Claims (Valued Derivative Claims) was filed using this Court's electronic filing system, which sent notification to all parties in interest participating in such electronic filing system, and was forwarded by Fed Ex overnight, postage prepaid, to all parties below:

Chambers copy:
The Honorable James M. Peck
Courtroom 601
One Bowling Green
New York, NY 10004

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn.: Shai Waisman, Esq. and Penny Reid, Esq.

Office of the United States Trustee
for the Southern District of New York
33 Whitehall Street
21st Floor
New York, NY 10004
Attn.: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq.
Brian Masumoto, Esq., Linda Riffkin, Esq. and
Tracy Hope Davis, Esq.

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY 10005
Attn.: Dennis F. Dunne, esq., Dennis O'Donnell, Esq.,
and Evan Fleck, Esq.

                                                                   */s/ Mary Beth Brukner*
                                                                   Mary Beth Brukner

4838-2238-1575.4