THOMAS PIETRANTONIO, P.C.
Attorneys for INTERFACE CABLE
ASSEMBLIES AND SERVICES CORPORATION
334 Main Street
Port Washington, NY 11050
T (516) 944-6169
F (516) 684-9824

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

In re:

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtors.

-------------------------------------------------------------------X

Chapter 11
Case No.:08-13555 (JMP)
(Jointly Administered)

## OPPOSITION TO DEBTORS' MOTION TO STAY AVOIDANCE ACTIONS AND FOR RELATED RELIEF

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

INTERFACE CABLE ASSEMBLIES AND SERVICES CORPORATION (hereinafter ICAS), through its counsel THOMAS PIETRANTONIO, P.C., submits this opposition to the motion of the debtors in possession dated September 15, 2010, and respectfully represents that:

1. ICAS is named as a defendant in an adversary proceeding filed by the debtors which seeks to avoid certain payments as preferences pursuant to 11 USC §547. See copy of Complaint under Docket No.:10-03607 (JMP) appended as Exb. A.

2. As of the date of this opposition service has not been effected on ICAS, and apparently a summons has not issued with respect to same.

1

## **POSITION OF ICAS ON THE MOTION**

3. This is in opposition to the motion of the debtor to stay all avoidance actions herein and for an extension of time within which to effect service of process.

4. Movant has failed to demonstrate that a balancing of the equities favors the exercise of this Court's inherent power to issue a stay under 11 USC §105(a).

5. Debtors waited until the eve of the running of the two year statute of limitations prior to filing a preference action as pertains ICAS. In fact, the instant motion was served after the statute expired.

6. ICAS is in the business of installing local area networks (LANs) for business computer systems. ICAS installed LANs, and related components, for Lehman Bros. over a period of several years prior to the bankruptcy filing.

7. Although movant claims that it is bogged down by the sheer size and complexity of the bankruptcy proceeding they have managed to specify the allegedly voidable transactions involving ICAS by dates and amounts. See Schedule 1 attached to Complaint. [Exb. A].

8. Should the debtors pursue the avoidance action ICAS will claim, amongst other defenses, that the transactions are not voidable as preferences as the payments were made in the ordinary course of business of the debtor(s) and ICAS under 11 USC §547(c)(2).

9. It is the position of ICAS that the instant motion should be denied as it will result in a delay of the hearing of the claim which will work to the detriment of ICAS, and that it will also ultimately result in greater litigation costs.

10. The transactions in issue occurred over two years ago at this point. The more time between the transaction dates and the hearing of the preference claim the more difficult it will be to marshal and preserve relevant evidence. For example, due to the enormous shake-up in the

2

Lehman Bros. businesses it is likely that individuals with knowledge of the facts pertaining to the preference claims have already moved on to employment with different entities. This problem will only be exacerbated if the proceeding is delayed until some unknown time in the future when the debtors have been able to formulate a plan to handle the proceedings.

11. Additionally, the suggestion that some alternate dispute resolution process can be devised for the handling of the avoidance claims is not to the financial benefit of ICAS. ICAS is not bound by any arbitration or mediation process by reason of its business dealings with debtors. As a result, if ICAS were to be required to undergo arbitration and not obtain a dismissal of the proceeding it would likely litigate the matter again before the Court. This will cause ICAS to incur more counsel fees and expenses than if the proceeding were heard before the Court in the first instance. Movant seeks to avoid the "enormous costs and burdens" of litigating immediately [motion p. 3]. However, as respects ICAS, a stay will likely result in increased costs and evidentiary burdens.

## THE APPLICABLE LAW

12. Movant admits that a determination whether to stay proceedings "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). [Quoted by movant at p. 8]. In applying *Landis* the Court should not issue a stay unless the movant has established that " 'the efforts of the bankruptcy court and the rights of creditors ... will suffer' absent a limited stay". *Bedel v. Thompson*, 103 F.R.D. (SD Ohio 1984), quoting *Landis, supra* at 255.

13. The debtors have identified the allegedly voidable transactions by date and amount in the ICAS Complaint. [Exb. A, Schedule 1]. Also, there has been no allegation that the business transactions of debtors with ICAS share any commonality with those of other proposed

3

adversary proceeding defendants. Thus staying the ICAS proceeding and linking it administratively with other avoidance actions will not streamline discovery or motion practice in the ICAS claim.

14. Moreover, there is no claim that the processing of any adversary proceeding must abide the determination of any other action or proceeding. *In Re S.W. Bach & Co.*, 425 B.R. 78, 98-99 (SDNY 2010).

15. In short, there has been no showing that hardship will result to the creditors if the adversary proceeding against ICAS is not stayed. Rather, a stay would cause hardships to ICAS; one being financial if it were required to arbitrate the matter then proceed before the Court, and the other practical in terms of evidence gathering and preservation.

## **PRIOR PRECEDENT FOR THE REQUESTED RELIEF**

16. Movant cites stay orders granted in two bankruptcy proceedings as proof of the appropriateness of a stay in the instant matter. [See para. 23 of motion]. Movant herein relates that in the *Delphi* bankruptcy 740 avoidance actions were stayed. That is more than ten times the 50 adversary proceedings commenced herein. [See para. 2 of motion]. In reality the movant in *Delphi* cited over 11,000 potential avoidance actions and approximately $5.8 billion dollars in transfers. [*See In re Delphi Corp.*, Case No. 05-44481 (RDD) Bankruptcy SDNY; motion for stay at Docket No. 8905, p. 8]. In *Enron*, there were allegedly 5,000 pre-petition transfers, valued at $1.5 billion. [*See In re Enron Corp.*, Case No. 01-16034 (AJG) Bankruptcy SDNY; motion for stay at Docket No. 17364, p. 3-4]. The volume of the anticipated avoidance proceedings herein does not rise to the level cited in the *Delphi* and *Enron* stay applications.

17. Moreover, the *Delphi* and *Enron* orders are not determinative on the instant application. In neither of the orders cited by movant did the court set forth a description of the

4

balancing of interests of the parties on the stay issue. Thus one cannot determine from the court orders whether the size and complexity of the bankruptcy court actions alone were the reasons for the granting of a stay. In any event, as the debtors have identified the allegedly voidable transactions by date and amount in the ICAS proceeding [Exb. A, Schedule 1], the size and complexity of the Lehman bankruptcy has not burdened debtors as to that avoidance claim.

## CONCLUSION

18. Based on the foregoing ICAS respectfully requests that this Court enter an order denying debtors' motion which asks for a stay of the avoidance actions and for an extension of time within which to effect service of process.

Dated: October 12, 2010
    Port Washington, NY

                                  s/Thomas Pietrantonio, Esq. (TP0058)
                                  THOMAS PIETRANTONIO, P.C.
                                  Attorneys for:
                                  INTERFACE CABLE ASSEMBLIES
                                  AND SERVICES CORP.
                                  334 Main Street
                                  Port Washington, NY 11050
                                  T (516) 944-6169
                                  F (516) 684-9824

**EXHIBIT A**

Shai Y. Waisman
Mindy J. Spector
Kevin F. Meade
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>Debtors. | Chapter 11 Case No.<br>08-13555 (JMP)<br>(Jointly Administered) |

------------------------------------------------------------------x

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., on behalf of itself and as assignee of LEHMAN BROTHERS INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTERFACE CABLE ASSEMBLIES & SERVICES CORPORATION,<br><br>Defendant. | Adv. Pro. No. 10-___<br><br>**<u>COMPLAINT</u>** |

------------------------------------------------------------------x

Lehman Brothers Holdings Inc. ("LBHI"), as debtor and debtor in possession, by its undersigned attorneys, alleges as follows:

## NATURE OF THE ACTION

1. LBHI brings this adversary proceeding on behalf of itself and as assignee of Lehman Brothers Inc. ("LBI" or "Assignor") under 11 U.S.C. §§ 547(b) and 550(a) to avoid as preferential transfers certain payments made to Interface Cable Assemblies and Services Corporation ("Defendant") to or on account of an antecedent debt during the 90 day period prior to commencing their respective cases in this Court, at which time LBHI and the Assignor were presumed to have been insolvent. Specifically, LBHI seeks entry of a judgment against the Defendant (i) pursuant to 11 U.S.C. § 547(b), avoiding the Avoidable Transfers (defined below), and (ii) pursuant to 11 U.S.C. § 550(a), directing the Defendant to pay to LBHI's estate the amount of the Avoidable Transfers, plus interest.

## JURISDICTION AND VENUE

2. This adversary proceeding is commenced pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), as well as sections 547(b) and 550(a) of title 11 of the United States Code (the "Bankruptcy Code").

3. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

4. This adversary proceeding constitutes a core proceeding under 28 U.S.C. § 157(b)(2).

5. Venue is proper in this Court under 28 U.S.C. § 1409(a) because LBHI's bankruptcy case is pending in this district.

## THE PARTIES

6.  At the times of the Avoidable Transfers, LBHI was a corporation organized and existing under the laws of the State of Delaware with its principal place of business located in New York, New York.

7.  Commencing on September 15, 2008 (the "Commencement Date"), and periodically thereafter, LBHI and certain of its subsidiaries (the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, and, accordingly, are authorized to prosecute preference actions.

8.  On September 19, 2008, the Honorable Gerard E. Lynch of the United States District Court for the Southern District of New York, entered the Order Commencing Liquidation of the Debtor, LBI (the "LBI Liquidation Order"), pursuant to the provisions of the Securities Investor Protection Act of 1970 in the case captioned *Securities Investor Protection Corporation v. Lehman Brothers Inc.*, No. 08-CIV-8119 (GEL) (S.D.N.Y. Sept. 19, 2008). The LBI Liquidation Order, *inter alia*, appointed James W. Giddens as SIPA Trustee and removed the proceeding to this Court.

9.  Upon information and belief, Defendant is a New York corporation that did or transacted business within the United States, including the State of New York.

## COUNT I – TO AVOID PREFERENTIAL TRANSFERS
## PURSUANT TO SECTION 547(b) OF THE BANKRUPTCY CODE

10. LBHI repeats and realleges each and every allegation contained in paragraphs 1 through 9 as if fully set forth herein.

11. Sections 547(b) and 550(a) of the Bankruptcy Code empower a debtor in possession, for the benefit of its estate, to avoid and recover a transfer to a creditor of an interest of the debtor in property if the requirements set forth therein are met.

12. Pursuant to section 547(b) of the Bankruptcy Code, a debtor in possession may avoid any transfer of an interest of the debtor in property (a) to or for the benefit of a creditor, (b) for or on account of an antecedent debt owed by the debtor before such transfer was made, (c) made while the debtor was insolvent, (d) made on or within 90 days, or in certain circumstances within one year, before the filing of the petition, and (e) that enables such creditor to receive more in satisfaction of its claims than it would receive in a case under chapter 7 of the Bankruptcy Code if the transfer had not been made.

13. Further, pursuant to section 551 of the Bankruptcy Code, any preference avoidable pursuant to section 547(b) of the Bankruptcy Code is automatically preserved for the benefit of LBHI's estate.

14. During the 90-day period prior to the Commencement Date, LBHI or the Assignor made transfers (the "Avoidable Transfers") to the Defendant on the dates, and in the amounts, listed on Exhibit 1, which is expressly incorporated by reference into the Complaint.

15. The Avoidable Transfers were to or for the benefit of Defendant.

16. The Avoidable Transfers were for or on account of antecedent debts owed by LBHI or the Assignor to Defendant before such transfers were made.

17. The Avoidable Transfers were made at a time when, pursuant to 11 U.S.C. § 547(f), LBHI and the Assignor are presumed to have been insolvent.

18. At the time LBHI or the Assignor made the Avoidable Transfers to Defendant, debts and liabilities of LBHI or the Assignor to the Defendant were unsecured obligations. The Avoidable Transfers thus enabled the Defendant to receive more in satisfaction of its claim against LBHI or the Assignor than it would have received in a case under chapter 7 of the Bankruptcy Code had the payment not been made.

19. By reason of the foregoing, the Avoidable Transfers should be avoided and set aside as preferential and the money transferred should be returned to LBHI. LBHI is entitled to recover from Defendant an amount to be determined that is not less than $1,148,948.65, plus interest thereon to the date of payment.

WHEREFORE LBHI respectfully requests that this Court enter judgment against Defendant (i) avoiding the Avoidable Transfers; (ii) directing Defendant to pay to LBHI's estate the amount of the Avoidable Transfers in an amount to be determined that is not less than $1,148,948.65, plus interest and (iii) granting to LBHI such other and further relief as may appear just and proper.

Dated:  September 15, 2010
        New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman
Mindy J. Spector
Kevin F. Meade
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

*Attorneys for Debtors and Debtors in Possession*

# EXHIBIT 1

Schedule 1

| BANK CLEAR DATE | PAYMENT ID | PAYMENT CURRENCY | PAYMENT METHOD | PAYMENT AMOUNT | INVOICE DATE | INVOICE NUMBER | Preference Amount USD |
|---|---|---|---|---|---|---|---|
| 6/17/2008 | 0002070780 | USD | CHK | $8,778.38 | 5/9/2008 | 139291 | $8,778.38 |
| 6/20/2008 | 0002072242 | USD | CHK | $42,910.06 | 5/14/2008 | 139311 | $2,059.13 |
| 6/24/2008 | 0002072981 | USD | CHK | $1,381.78 | 5/19/2008 | 139328 | $1,381.78 |
|  | 0002073218 | USD | CHK | $232,979.71 | 2/26/2008 | 139030 | $232,979.72 |
| 6/26/2008 | 0002073626 | USD | CHK | $9,592.05 | 5/21/2008 | 139340 | $2,637.10 |
|  |  |  |  |  |  | 139341 | $3,288.99 |
|  |  |  |  |  |  | 139343 | $1,632.43 |
|  |  |  |  |  |  | 13942 | $2,033.53 |
| 7/8/2008 | 0002075207 | USD | CHK | $31,843.54 | 5/30/2008 | 139361 | $3,679.76 |
|  |  |  |  |  |  | 139362 | $28,163.78 |
| 7/18/2008 | 0002076857 | USD | CHK | $136,016.04 | 6/9/2008 | 139392 | $136,016.03 |
| 8/5/2008 | 0002080868 | USD | CHK | $31,417.80 | 12/5/2007 | 138686 | $9,127.10 |
|  |  |  |  |  |  | 138690 | $16,672.40 |
|  |  |  |  |  | 6/3/2008 | 139381 | $5,618.30 |
| 8/21/2008 | 0002082853 | USD | CHK | $544,032.31 | 6/2/2008 | 139370 | $494,386.27 |
| 9/9/2008 | 0002085724 | USD | CHK | $205,900.70 | 7/25/2008 | 139566 | $200,493.95 |
| **Grand Total** |  |  |  |  |  |  | **$1,148,948.65** |