

# MANNING & NAPIER
ADVISORS, INC.

290 Woodcliff Drive ▪ Fairport, NY 14450 ▪ 585.325.6880 ▪ 585.325.5617 fax

October 1, 2010

U.S. Bankruptcy Court
Southern District of New York
Honorable James M. Peck
Courtroom 601
One Bowling Green
New York, NY 10004



RE:
Notice of Hearing on Debtors' Fortieth Omnibus Objection to Claims (Late-Filed Claims)
U.S. Bankruptcy Court Southern District of New York
Case no. 08-13555(JMP)
Debtor: Lehman Brothers Holdings Inc., et al 08-13555
Creditor: Empire State Carpenters Pension Plan

Dear Sirs:

Please let this letter serve as formal Objection to the Notice that Claim Number 34521 was to be Disallowed & Expunged due to late filing. The Claimant, Empire State Carpenters Pension Plan, was a bond holder of the above mentioned Debtor.

The Objection to this Notice is based on the enclosed documentation. As you will witness, the Proof of Claim was shipped via FedEx marked for Priority Overnight Service on September 21, 2009 with an anticipated delivery on the morning of September 22, 2009. Unfortunately, for reasons outside of the control of the Creditor or Manning & Napier Advisors, Inc. as their Discretionary Investment Manager, FedEx did not deliver the package until September 23, 2009.

Based on the reasons stated above we respectfully request that this claim is not disallowed or expunged from the bankruptcy proceedings.

If you have any questions or concerns, please do not hesitate to contact me at 800-551-0224.

Sincerely,
MANNING & NAPIER ADVISORS, INC.

Kimberly Baxter
Client Services Supervisor/Class Action Coordinator

Investment Advisors For Over Thirty-Five Years

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :    08-13555 (JMP)
                                          :
                        Debtors.          :    (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------x
LBH OMNI40 09-13-2010 (MERGE2,TXNUM2) 4000081280 MAIL ID *** 0033298215 *** BSIUSE: 390

EMPIRE STATE CARPENTERS PENSION PLAN
C/O MANNING-NAPIER ADVISORS INC
ATTN: KIM BAXTER
290 WOODCLIFF DR
FAIRPORT, NY 14450

### THIS IS A NOTICE REGARDING YOUR CLAIM(S).  YOU MUST READ IT AND TAKE ACTION IF YOU DISAGREE WITH THE OBJECTION.

### IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR THE OBJECTION, PLEASE CONTACT DEBTORS' COUNSEL, JOHN O'CONNOR, ESQ., AT 214-746-7700.

### NOTICE OF HEARING ON DEBTORS' FORTIETH OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)

| CLAIM TO BE DISALLOWED & EXPUNGED | | |
|---|---|---|
| **Creditor Name and Address:** | **Claim Number:** | 34521 |
| EMPIRE STATE CARPENTERS PENSION PLAN C/O MANNING-NAPIER ADVISORS INC ATTN: KIM BAXTER 290 WOODCLIFF DR FAIRPORT, NY 14450 | **Date Filed:** | 9/23/2009 |
| | **Debtor:** | 08-13555 |
| | **Classification and Amount:** | UNSECURED: $ 105,000.00 |

PLEASE TAKE NOTICE that, on September 13, 2010, Lehman Brothers Holdings Inc. and certain of its affiliates (collectively, the "Debtors") filed their Fortieth Omnibus Objection to Claims (Late-Filed Claims) (the "Objection") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[1]

The Objection requests that the Bankruptcy Court expunge, reduce, reclassify, and/or disallow your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED on the ground that said claims(s) violate the Bankruptcy Court's July 2, 2009 order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271], as they were filed after the September 22, 2009 bar date. **Any claim that the Bankruptcy Court expunges and disallows will be treated as if it had not been filed and you will not be entitled to any distribution on account thereof.**

If you do NOT oppose the disallowance, expungement, reduction or reclassification of your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then you do NOT need to file a written response to the Objection and you do NOT need to appear at the hearing.

If you DO oppose the disallowance, expungement, reduction or reclassification of your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then you MUST file with the Court and serve on the parties listed below a

---

[1]     A list of the Debtors, along with the last four digits of each Debtor's federal tax identification number, is available on the Debtors' website at http://www.lehman-docket.com.

**FedEx**

Español | Customer Support | FedEx Locations   Search    Go

| Package/Envelope | Freight | Expedited | Office/Print Services ✷ |

Ship ▸     Track ▸     Manage ▸     Business Solutions ▸

## Detailed Results

Printer-Friendly     Get Link     Help

Enter tracking number     Track

| Detailed Results | Notifications |

Tracking no.: 868926842891          Select time format: 12H | 24H          E-mail notifications

### Delivered

Initiated    Picked up    In transit    Delivered

**Delivered**
Signed for by:  J.SANCHEZ

Shipment Dates                          Destination

Ship date ⑦   Sep 21, 2009           NEW YORK CITY, NY
Delivery date ⑦  Sep 23, 2009 9:24 AM   Signature Proof of Delivery ⑦

### Shipment Options                                      Help

**Hold at FedEx Location**
Hold at FedEx Location service is not available for this shipment.

### Shipment Facts                                        Help

| Service type | Priority Overnight | Reference | 420 |

### Shipment Travel History                               Help

Select time zone: | Local Scan Time

All shipment travel activity is displayed in local time for the location

| Date/Time | Activity | Location | Details |
|---|---|---|---|
| Sep 23, 2009 9:24 AM | Delivered | NEW YORK CITY, NY | |

FedEx Desktop: Tracking at your fingertips. Learn more▸

Sign up for FedEx® Billing Online Plus to save paper, save time and enter for a chance to win

Learn more ▸

Global Home | Small Business Center | Service Info | About FedEx | Investor Relations | Careers | fedex.com Terms of Use | Privacy Policy | Site Map
This site is protected by copyright and trademark laws under US and International law. All rights reserved. © 1995- 2010 FedEx

http://fedex.com/Tracking                                        9/28/2010

**FedEx Express** US Airbill

FedEx Tracking Number: **8689 2684 2891**

**1** Please print and press hard.

Date: **9/21/09**
Sender's FedEx Account Number: **1023-1542-1**

Sender's Name: **Kim Baxter**
Phone: **(585) 325-6880**

Company: **MANNING & NAPIER**

Address: **290 WOODCLIFF DR**

City: **FAIRPORT**   State **NY**   ZIP **14450-4212**

Your Internal Billing Reference: **400**   OPTIONAL

**2** Recipient's Name: **Epiq Bankruptcy Solutions**   Phone ( )

Company: **attn: Lehman Brothers Holdings Claims Processing 3rd**

Address: **757 Third Ave.**

We cannot deliver to P.O. boxes or P.O. ZIP codes.

Dept/Floor/Suite/Room

To request a package be held at a specific FedEx location, print FedEx address here.

**New York**   State **NY**   ZIP **10017**

0401435281

Store your addresses at fedex.com

**4a Express Package Service**   *Packages up to 150 lbs.*

[X] FedEx Priority Overnight
[ ] FedEx Standard Overnight
[ ] FedEx First Overnight

[ ] FedEx 2Day
[ ] FedEx Express Saver

**4b Express Freight Service**   *Packages over 150 lbs.*

[ ] FedEx 1Day Freight
[ ] FedEx 2Day Freight
[ ] FedEx 3Day Freight

**5 Packaging**

[X] FedEx Envelope*
[ ] FedEx Pak*
[ ] FedEx Box
[ ] FedEx Tube
[ ] Other

**6 Special Handling**   Include FedEx address in Section 3.

[ ] SATURDAY Delivery
[ ] HOLD Weekday at FedEx Location
[ ] HOLD Saturday at FedEx Location

Does this shipment contain dangerous goods?

One box must be checked.

[ ] No
[ ] Yes As per attached Shipper's Declaration.
[ ] Yes Shipper's Declaration not required.
[ ] Dry Ice   Dry Ice, 9, UN 1845

[ ] Cargo Aircraft Only

**7 Payment** Bill to:   Enter FedEx Acct. No. or Credit Card No. below.

[X] Sender Acct. No. in Section 1 will be billed.
[ ] Recipient
[ ] Third Party
[ ] Credit Card
[ ] Cash/Check

FedEx Acct. No.

Credit Card No.

Total Packages ___   Total Weight **1 lb**   Total Declared Value $ .00

**8 Residential Delivery Signature Options**

[ ] No Signature Required
[ ] Direct Signature
[ ] Indirect Signature

**519**

Rev. Date 10/00•Part #158129•©1994–2008 FedEx•PRINTED IN U.S.A.•SRS

Sender's Copy

PULL AND RETAIN THIS COPY BEFORE AFFIXING TO THE PACKAGE. NO POUCH NEEDED.

**PROOF OF CLAIM**

*United States Bankruptcy Court/Southern District of New York*

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: <br> Lehman Brothers Holdings Inc., et al. <br> Debtors. | Chapter 11 <br> Case No. 08-13555 (JMP) <br> (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held <br> Lehman Brothers Holdings Inc. | Case No. of Debtor |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Empire State Carpenters Pension Plan
C/O Manning - Napier Advisors, Inc.
Attn: Kim Baxter
290 Woodcliff Dr.
Fairport, NY 14450
Telephone number: (585) 325-6880    Email Address: service@manning-napier.com

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**
_____
(If known)

Filed on: _____

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

Name and address where payment should be sent (if different from above):

Empire State Carpenters
Mrs. Denise Cossaro
Dept A. 270 Motor Parkway
Hauppauge, NY 11788
Telephone number: (631) 952-9700    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed:** $ 105,000
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Corporate Bond Holder
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** 1772
   3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
**Amount of Secured Claim:** $_____ **Amount Unsecured:** $_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ 0
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

| Date: <br> 9/21/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. <br><br> Kimberly Baxter   Manning & Napier Advisors Inc. <br> Class Action Coordinator |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
Fill in the name of the Debtor in the bankruptcy case, and the bankruptcy case number.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of a security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

---

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

09 / 21 / 2009

# PURCHASES AND SALES REPORT

## in US Dollars

### 09 / 14 / 2007 To 09 / 14 / 2007

#### PURCHASES

**6206**
**Empire State Carpenters Pension Plan**

| NUMBER OF UNITS | DESCRIPTION | TRADE DATE | UNIT COST | TOTAL COST | COMMIS/ SHARE |
|---|---|---|---|---|---|
| **CORPORATE BONDS** | | | | | |
| 55,000.00 | LEHMAN BROTHERS HOLDINGS ADJ R  0.000  11 / 16 / 2009 | 09 / 14 / 2007 | $96.77 | $53,224.05 | 0.00 |
| | SUBTOTALS | | | $53,224.05 | |
| | TOTALS | | | $53,224.05 | |

This report does not take proper tax reporting requirements into consideration and is therefore not accurate for tax purposes.

2

09 / 21 / 2009

**PURCHASES AND SALES REPORT**

in US Dollars

12 / 19 / 2008  To  12 / 19 / 2008

SALES

`6206
Empire State Carpenters Pension Plan

| NUMBER OF UNITS | DESCRIPTION | | | TRADE DATE | UNIT COST | TOTAL COST | COMMIS/ SHARE | UNIT PROCEED | TOTAL PROCEEDS | GAIN OR LOSS |
|---|---|---|---|---|---|---|---|---|---|---|
| | **CORPORATE BONDS** | | | | | | | | | |
| 55,000.00 | LEHMAN BROTHERS HOLDINGS ADJ R | 0.000 | 11 / 16 / 2009 | 12 / 19 / 2008 | $96.77 | $53,224.05 | 0.00 | $8.50 | $4,675.00 | ($48,549.05) |
| | | | SUBTOTALS | | | $53,224.05 | | | $4,675.00 | ($48,549.05) |
| | | | TOTALS | | | $53,224.05 | | | $4,675.00 | ($48,549.05) |

This report does not take proper tax reporting requirements into consideration and is therefore not accurate for tax purposes.

09 / 21 / 2009

**PURCHASES AND SALES REPORT**

in US Dollars

07 / 25 / 2007  To  07 / 25 / 2007

PURCHASES

**'5206**
**Empire State Carpenters Pension Plan**

**CORPORATE BONDS**

| NUMBER OF UNITS | DESCRIPTION | | TRADE DATE | UNIT COST | TOTAL COST | COMMIS/ SHARE |
|---|---|---|---|---|---|---|
| 20,000.00 | AMBAC CORP BOND | 5.950  12 / 05 / 2035 | 07 / 25 / 2007 | $90.05 | $18,009.40 | 0.00 |
| 50,000.00 | LEHMAN BROTHERS HOLDINGS | 0.000  07 / 19 / 2017 | 07 / 25 / 2007 | $98.79 | $49,394.00 | 0.00 |
| | | | SUBTOTALS | | $67,403.40 | |
| | | | TOTALS | | $67,403.40 | |

This report does not take proper tax reporting requirements into consideration and is therefore not accurate for tax purposes.

2

09 / 21 / 2009

**PURCHASES AND SALES REPORT**

in US Dollars

10 / 08 / 2008  To  10 / 08 / 2008

SALES

6206
Empire State Carpenters Pension Plan

| NUMBER OF UNITS | DESCRIPTION | | TRADE DATE | UNIT COST | TOTAL COST | COMMIS/ SHARE | UNIT PROCEED | TOTAL PROCEEDS | GAIN OR LOSS |
|---|---|---|---|---|---|---|---|---|---|
| | **TREASURY BILLS** | | | | | | | | |
| 3,635,000.00 | UNITED STATES TREAS BILL | 0.000  08 / 27 / 2009 | 10 / 08 / 2008 | $98.23 | $3,570,539.34 | 0.00 | $98.82 | $3,592,082.76 | $21,543.42 |
| | | | SUBTOTALS | | $3,570,539.34 | | | $3,592,082.76 | $21,543.42 |
| | **CORPORATE BONDS** | | | | | | | | |
| 50,000.00 | LEHMAN BROTHERS HOLDINGS | 0.000  07 / 19 / 2017 | 10 / 08 / 2008 | $98.79 | $49,394.00 | 0.00 | $0.09 | $45.00 | ($49,349.00) |
| | | | SUBTOTALS | | $49,394.00 | | | $45.00 | ($49,349.00) |
| | **COMMON STOCKS** | | | | | | | | |
| 3,870.00 | DEAN FOODS CO | | 10 / 08 / 2008 | $25.66 | $99,313.88 | 0.03 | $21.36 | $82,647.64 | ($16,666.24) |
| 26,300.00 | LOUISIANA-PACIFIC CORP | | 10 / 08 / 2008 | $19.97 | $525,140.66 | 0.03 | $6.32 | $166,312.37 | ($358,828.29) |
| 17,410.00 | LOWES COS INC | | 10 / 08 / 2008 | $24.14 | $420,317.44 | 0.03 | $19.54 | $340,243.46 | ($80,073.98) |
| 19,395.00 | THE COOPER COS INC | | 10 / 08 / 2008 | $50.16 | $972,860.17 | 0.03 | $30.14 | $584,560.08 | ($388,300.09) |
| | | | SUBTOTALS | | $2,017,632.15 | | | $1,173,763.55 | ($843,868.60) |
| | | | TOTALS | | $5,637,565.49 | | | $4,765,891.31 | ($871,674.18) |

This report does not take proper tax reporting requirements into consideration and is therefore not accurate for tax purposes.

## DISCRETIONARY INVESTMENT MANAGEMENT AGREEMENT

**EMPIRE STATE CARPENTERS PENSION FUND** (the "Fund"), being duly authorized and having established an investment account (the "Account"), hereby agrees to employ and retain **MANNING AND NAPIER ADVISORS, INC.** (the "Investment Manager"), to act as investment manager of the Account on the following terms and conditions:

1.    Appointment of Investment Manager. The Fund appoints the Investment Manager to act as an investment manager with respect to the Account with the following power and authority. Investment Manager will supervise and direct, in its sole discretion, and pursuant to its long-term growth account pursuant to its balanced objectives style and fixed income account pursuant to its fixed income style, the investments of and on behalf of the Account, subject to applicable law and regulations, the Statement of the Investment Policy of the Fund, annexed hereto as Appendix A and made a part of this Agreement (the "Investment Policy"), and such limitations and restrictions as the Fund may impose by notice in writing to Investment Manager. Pursuant to these laws, guidelines and other written authority from the Fund, Investment Manager will have full power and authority to act on behalf of the Account to (a) make all investment decisions; and (b) buy, sell, exchange, convert and otherwise trade in any and all stocks, bonds and other securities as Investment Manager may select on a best execution basis; and (c) establish and deal through securities brokers, securities dealers or banks, provided that said securities broker, securities dealer or bank can execute trades on a best execution basis, and provided such selected entity does not charge a fee, expense, or commission in excess of the institutional fees and expenses, or commissions generally charged to institutional clients.

Nothing herein is intended to preclude the Investment Manager from using the general accounts it has established with securities brokers and dealers for the benefit of all its fiduciary customers in making purchases and/or sales on behalf of the Fund; and further provided, however, the Investment Manager will not establish such an account or otherwise place orders, or cause orders to be placed for the purchase, sale, tender, exchange, conversion or other acquisition or disposition of any investment in the portfolio, with the Investment Manager or any person or entity related to or affiliated with the Investment Manager, or any person or entity that Fund identifies, in a writing delivered to the Investment Manager, as an investment manager (as such term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) to the Fund that provides similar services with respect to the selection of investments, or as a person or entity related to or affiliated with such an Investment Manager. The Trustees of the Fund may, from time to time, amend the Investment Policy and the Investment Manager agrees, upon notification, that such amended Investment Policy will become a part of this Agreement and that the Investment Manager will comply with such modifications.

2.    Best Execution. Subject to applicable law, the Investment Manager is ultimately required to seek a combination of the lowest commission, best price and best execution that will result in the net price most favorable to the Fund taking into account commission, size of order and best execution.

3.    Reports to Fund. Investment Manager hereby accepts appointment as Investment Manager for the Account and agrees to appraise and review at directed intervals

## DISCRETIONARY INVESTMENT MANAGEMENT AGREEMENT

EMPIRE STATE CARPENTERS PENSION FUND (the "Fund"), being duly authorized and having established an investment account (the "Account"), hereby agrees to employ and retain **MANNING AND NAPIER ADVISORS, INC.** (the "Investment Manager"), to act as investment manager of the Account on the following terms and conditions:

1.      Appointment of Investment Manager.  The Fund appoints the Investment Manager to act as an investment manager with respect to the Account with the following power and authority. Investment Manager will supervise and direct, in its sole discretion, and pursuant to its long-term growth account pursuant to its balanced objectives style and fixed income account pursuant to its fixed income style, the investments of and on behalf of the Account, subject to applicable law and regulations, the Statement of the Investment Policy of the Fund, annexed hereto as Appendix A and made a part of this Agreement (the "Investment Policy"), and such limitations and restrictions as the Fund may impose by notice in writing to Investment Manager.  Pursuant to these laws, guidelines and other written authority from the Fund, Investment Manager will have full power and authority to act on behalf of the Account to (a) make all investment decisions; and (b) buy, sell, exchange, convert and otherwise trade in any and all stocks, bonds and other securities as Investment Manager may select on a best execution basis; and (c) establish and deal through securities brokers, securities dealers or banks, provided that said securities broker, securities dealer or bank can execute trades on a best execution basis, and provided such selected entity does not charge a fee, expense, or commission in excess of the institutional fees and expenses, or commissions generally charged to institutional clients.

Nothing herein is intended to preclude the Investment Manager from using the general accounts it has established with securities brokers and dealers for the benefit of all its fiduciary customers in making purchases and/or sales on behalf of the Fund; and further provided, however, the Investment Manager will not establish such an account or otherwise place orders, or cause orders to be placed for the purchase, sale, tender, exchange, conversion or other acquisition or disposition of any investment in the portfolio, with the Investment Manager or any person or entity related to or affiliated with the Investment Manager, or any person or entity that Fund identifies, in a writing delivered to the Investment Manager, as an investment manager (as such term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA")) to the Fund that provides similar services with respect to the selection of investments, or as a person or entity related to or affiliated with such an Investment Manager. The Trustees of the Fund may, from time to time, amend the Investment Policy and the Investment Manager agrees, upon notification, that such amended Investment Policy will become a part of this Agreement and that the Investment Manager will comply with such modifications.

2.      Best Execution.  Subject to applicable law, the Investment Manager is ultimately required to seek a combination of the lowest commission, best price and best execution that will result in the net price most favorable to the Fund taking into account commission, size of order and best execution.

3.      Reports to Fund.  Investment Manager hereby accepts appointment as Investment Manager for the Account and agrees to appraise and review at directed intervals

during the life of this Agreement, said intervals to be no less than quarterly, the investments of the Account as initially accepted by Investment Manager, together with all additions, substitutions and alterations thereto. Investment Manager agrees to provide to Fund monthly a portfolio summary of the investments of the Account. The portfolio summary will be prepared whenever possible to allow consideration by the Fund at their regularly scheduled trustees meetings. A representative of Investment Manager will attend if reasonably requested by the Fund the regularly scheduled meetings of the trustees, or subcommittee, thereof, of the Fund to review and comment on the status of the Account and the portfolio summary provided by Investment Manager. In addition, Investment Manager will meet at least periodically with the Fund or any designated investment monitor, in order to review past investment performance, evaluate the current investment outlook and discuss investment strategy; provide information regarding major changes in investment policy that may result in major investment strategy changes; review any significant changes in management, research, personnel or ownership with Investment Manager; and to review other communications that Investment Manager feels are necessary to facilitate achievement of the Funds' goals and objectives. Investment Manager, as the case may be, will comply with, and it will furnish to the Fund, such information and reports, as required by the United States Department of Labor and those regulations or directives as may be promulgated by those administrative agencies having jurisdiction over securities transactions involving employee benefit plans. Such information to be provided by Investment Manager will include all securities transaction related charges, including, but not limited to, a listing of brokers who handle securities transactions, and the amounts of their commissions. The officers or employees of Investment Manager will be available at all times upon reasonable notice for consultation with the Fund in connection with investments of the Account.

        4.    <u>Fiduciary Status</u>. Investment Manager acknowledges that the Fund and this Account are governed by the Employee Retirement Income Security Act (ERISA). Investment Manager agrees to serve as an Investment Manager as that term is defined in Section 3(38) of ERISA with respect to the Fund's Account. Investment Manager further agrees to serve and to be designated as fiduciary as defined in Section 3(21) of ERISA, and will act in accordance with Section 404 of ERISA. Investment Manager represents and warrants to the Fund that it is registered with the Securities and Exchange Commission as an Investment Advisor under the Investment Advisers Act of 1940. The Investment Manager represents and warrants that it has completed, performed and obtained, as applicable, all other registrations, filings, approvals, authorizations, consents or examination required of any government or governmental authority with respect to any action contemplated or required by this Agreement and all such registrations, etc. are in full force an effect. The Investment Manager represents and warrants that it has the full power and authority to enter into this Agreement and to consummate the transactions contemplated hereby and the execution and delivery of this Agreement and the consummation of transactions contemplated hereby will not, with or without the giving of notice and/or the passage of time, violate any provision of any federal, state or local laws, rules and regulations or any order or decree of any governmental authority applicable to it, or conflict with any agreement or instrument giving rise to its legal existence or to which it may be bound and this Agreement is the valid and binding obligation of the Investment Manager in accordance with its terms. The Investment Manager agrees and covenants that it will, at all times hereinafter until the effective date of the termination of this Agreement, comply with ERISA and the rules and regulations thereunder and all other applicable laws, rules and regulations insofar as such may be applicable to the Investment Manager's duties hereunder. In connection therewith, the

2

Investment Manager agrees and covenants that it will comply with all provisions and standards of conduct applicable to it as a fiduciary under ERISA, insofar as such may be applicable to the Investment Manager's duties and obligations hereunder. The Investment Manager agrees and covenants that it will promptly notify the Fund, in writing, if any representation, warranty or covenant made in this Agreement ceases to be true or is breached, as the case may be, at any time from the date hereof until the effective date of the termination of this Agreement.

5.    Custodian.    All transactions authorized by this Agreement will be consummated by payment or delivery to or by such fund, firm, corporation or person as Fund may designate from time to time in writing (the "Custodian") of all cash and securities due to or from the Account. The Custodian as of the effective date of this Agreement is the Bank of New York. Instructions of Investment Manager to Fund or the Custodian with respect to Account will be made in writing or orally and confirmed in writing as soon as practicable thereafter. Investment Manager will instruct all brokers executing orders on behalf of the Account to forward to Fund, the Investment Manager and the Custodian copies of notices of all transactions promptly, within five (5) business days, after execution.  Investment Manager will not be responsible for any loss incurred by reason of any act or omission of any broker or unaffiliated Custodian. Anything contained in this Agreement to the contrary notwithstanding, Investment Manager will not at any time cause the indicia of ownership of any assets in the Account to be maintained outside the jurisdiction of the district courts of the United States.

6.    Withdrawals.    The Fund may make withdrawals from the Account at such times and in such amounts as it will determine, by first delivering to the Custodian and Investment Manager at least four (4) business days prior to such withdrawal written notice of such intended withdrawal and the amount of such withdrawal, executed by the duly authorized signatories for the Fund.

7.    Reports to Investment Manager.    The Fund will instruct the Custodian to provide Investment Manager with such periodic reports concerning the status of the Account as Investment Manager may reasonably request from time to time.

8.    Confidential Relationship.    All information, recommendations and advice furnished by either party to the other will at all times be treated as confidential, and will not be disclosed to third persons except as may be requested by regulatory authority or required by law, except upon the prior written approval of the other party to this Agreement.

9.    Services to Other Funds.    It is understood that Investment Manager performs investment manager services for various funds. It is understood that Investment Manager will be acting in a similar capacity for other institutional and individual customers (including customers with discretionary accounts and customers with whom it may differ investments from those made or recommended with respect to other portfolios and customers even though the investment objectives may be the same or similar). Nothing in this Agreement will be deemed to confer upon Investment Manager any obligation to acquire for the Account a position in any security which Investment Manager, its principals, affiliates or employees may acquire for its or their own account, or for the account of any other fund, if in the sole and absolute discretion of Investment Manager, it is not for any reason practical or desirable to acquire a position in such security for the Account.

3

10.    Investment Banking and Other Activities. By reason of investment banking and other activities, the Investment Manager and its affiliates may from time to time acquire privileged and confidential information about corporations or other entities and their securities. Fund recognizes that the Investment Manager and its affiliates will not be free to divulge such information to Fund, or to act upon it.

11.    Termination. This Agreement will continue in force from the date first written below unless terminated as hereinafter provided. Either party may terminate this Agreement by giving to the other party thirty (30) days written notice by certified mail, return receipt requested. Such thirty (30) days period will be deemed to commence on the day following the mailing of such notice. Such notice will not in any case, affect or preclude the consummation of the transactions initiated prior to effectiveness of the termination, however, no such transactions may be consummated thereafter without approval of the Fund.

12.    Assignment. No assignment (as that term is defined in the Investment Advisers Act of 1940) of this Agreement will be made by Investment Manager without the prior consent of the Fund. With regard to a communication of significant managerial and/or business changes affecting the business structure of the Investment Manager, the Investment Manager shall provide any and all notification to the Fund which is required by, and consistent with, the terms of the Investment Advisers Act of 1940. In addition, Investment Manager shall conduct a monthly review of any changes to senior management and notify the Fund of any changes promptly thereafter.

13.    Fees. Investment Manager will be fully compensated for its services rendered under this Agreement in accordance with the annexed Fee Schedule (Appendix B). Fees will be a pro rata portion of that calculated at the standard rate set forth in Appendix B based on the Account's market value and will be billed quarterly as set forth on such Appendix. The Fund and the Investment Manager each agree and covenant that the only compensation to be received, directly or indirectly by the Investment Manager, in connection with the services to be rendered by it to the Fund, pursuant to this Agreement, and otherwise, will be as set forth in Appendix B of this Agreement. The Fund and the Investment Manager each agree and covenant that the Investment Manager will not use any of the assets of the Fund or the portfolio or the authority and discretion granted to it pursuant to this Agreement to compensate any entity with respect to any services performed or to be performed on behalf of, or for the benefit of, the Fund, except for brokerage commissions paid to executing brokers for services rendered solely for the actual execution of the securities transaction.

14.    Valuation. In computing the market value of any investment of the Account, each security listed on any national securities exchange will be valued, as of the valuation date, at the closing composite price (the consolidated tape price). Any other security will be valued in such manner as will be determined in good faith by Investment Manager to reflect its fair market value. Money market accounts and bank accounts, if any, will be valued as of the valuation date.

15.    Governing Law. The validity of this Agreement and the rights and liabilities of the parties hereunder will be determined in accordance with the laws of the State of New York to the extent such laws are not preempted by ERISA, and will be enforceable in the

4

courts of the State of New York.

16.    Insurance Coverage.  Investment Manager agrees to maintain in full force and effect for the term of this Agreement an errors and omissions insurance, the minimum amount to be specified by the Fund, and to be bonded in accordance with Section 412 of ERISA. Such insurance coverage is set forth in Appendix C.  Investment Manager agrees to provide the Fund with certified proof from an outside agency of the insurance existence as outlined in Appendix C within three (3) months of execution of this Agreement.  Investment Manager will notify Fund in writing within seven (7) days, in the event its "Errors and Omissions Policy" is terminated or reduced in any material amount.

17.    Notices.  Except as otherwise provided herein, all notices, instructions and other communications required by this Agreement will be deemed duly given if transmitted by certified mail to Investment Manager or to Fund at the respective addresses appearing below, or at such other address or addresses as will be specified, in each case, in a notice similarly given. The Investment Manager will provide the Fund such information as the Fund may from time to time reasonably request in regard to the following:

(a)    the portfolio and the Investment Manager's performance under this Agreement;

(b)    the identify of the employees, partners, officers, directors and the principal shareholders (holding 5% or more of the outstanding common stock or partnership interest) of the Investment Manager; and

(c)    the identify of each person or entity who is a party in interest, as such term is defined by Section 3(14) or ERISA with respect to the Fund by reason of such person or entities relationship with the Investment Manager.

The Investment Manager will promptly notify the Fund in writing of the names of its partners or principal executive officers and any material change in the management of the Investment Manager, or the addition of or removal or any Investment Manager or investment officer, as such terms are used in the securities industry, or any senior officers assigned to the Investment Manager for services to be rendered by the Investment Manager pursuant to this Agreement.

18.    Representation by Fund.  The Fund will furnish Investment Manager with a true copy of the Trust Agreement of the Fund, all related plan documents and any amendments thereto, which in any manner govern, control or affect the investment objectives, requirements, or decisions pertaining to the Account and, further, represents and warrants that the provisions of this Agreement, including all exhibits hereto, do not now and will not in the future violate any applicable requirement contained in such Trust Agreement or in any related plan document or in an amendment to either.  The Fund represents and warrants that the appointment of Investment Manager on the basis set forth in this Agreement is authorized by and has been accomplished in accordance with procedures specified in the Trust Agreements and related plan documents, and upon request, it will furnish Investment Manager with true copies of all resolutions, consents and notices as may be required to be taken or made pursuant to such procedures.

5

19.    <u>Amendment, Entire Agreement and Severability</u>.  This Agreement may not be amended or modified in any respect unless in written instrument executed by both parties. This Agreement contains the entire agreement with respect to such subject matter and supersedes all prior agreements between the parties relating to the subject matter hereof.  In the event that any provisions of this Agreement is declared to be invalid, such declaration will not be deemed to affect the validity of any of the other provisions.

20.    <u>Written Disclosure Requirement</u>.  Fund will receive the written disclosure statement of Investment Manager, which disclosure statement consists of Part II of Form ADV. If such disclosure statement was not received by the Fund at least forty-eight (48) hours prior to entering into this Agreement.  Fund will have the right to terminate this Agreement without penalty, within five (5) business days after entering into it.

21.    <u>Voting Rights of Portfolio Securities</u>.  To the extent permitted by law, and subject to those guidelines which may be issued from time to time by the Fund, all proxy voting decisions undertaken by the Investment Manager, will be in a manner consistent with furthering the Fund's best interest.  Additionally, the Investment Manager will bring to the attention of the Fund any proxy voting matters which it believes may have a material impact upon the value of the Fund's investment.  It is further agreed that on a periodic basis, the Investment Manager will provide the Fund with a list that sets forth the proxy votes taken on behalf of the Fund.

IN WITNESS WHEREOF, the Fund and the Investment Manager have executed this Agreement, and have evidenced their ratification and consent to be bound by this Agreement, effective as of the _____ day of _____, 2006.

**EMPIRE STATE CARPENTERS PENSION FUND**

By:    _____
       Employer Trustee

By:    _____
       Union Trustee

**MANNING AND NAPIER ADVISORS, INC.**

By:    _____

Title:    _____
          Corporate Secretary

6

APPENDIX A