HEARING DATE AND TIME: October 27, 2010 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: October 13, 2010 at 4:00 p.m. (Eastern Time)

BROWN RUDNICK LLP
One Financial Center
Boston, MA  02111
(617) 856-8200
Thomas H. Montgomery

*Counsel to Darby Financial Products*

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | )<br>)<br>) Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al. | ) Case No. 08-13555 (JMP)<br>) |
| Debtors. | ) (Jointly Administered)<br>) |

**RESPONSE OF DARBY FINANCIAL PRODUCTS TO THE DEBTORS'
THIRTY-FIFTH OMNIBUS OBJECTION TO CLAIMS
(VALUED DERIVATIVE CLAIMS)**

Darby Financial Products ("Darby") hereby files this response to the Debtors' Thirty-Fifth Omnibus Objection to Claims (Valued Derivative Claims) ("Objection"), and in support thereof, respectfully states as follows:

**FACTUAL BACKGROUND**

1. On September 11, 2009, Darby timely filed (i) Claim No. 19182 against Lehman Brothers Holdings Inc. and (ii) Claim No. 19183 against Lehman Brothers Special Financing Inc. (the "Darby Claims"), asserting claims for $3,063,040.00 (plus any accrued and unpaid interest) for amounts owing as a result of the Early Termination of certain transactions (the "Transactions") governed by that certain ISDA Master Agreement, dated as of September 13, 2005, between Lehman Brothers Special Financing Inc. ("LBSF") and Darby (the "Master Agreement").

2. In addition, in October 2009, Darby timely submitted its completed Derivative Questionnaire and Guarantee Questionnaire (collectively, the "Darby Questionnaires").[1]

3. The Darby Claims and Darby Questionnaires attached all relevant supporting documentation, including the Master Agreement, the Schedule to the Master Agreement (the "Schedule"), the Credit Support Annex, various notices designating an Early Termination Date and requesting payment of the Early Termination Amount submitted by Darby to the Debtors, a statement calculating the Close-out Amounts claimed, and the various quotations obtained by Darby in support of its claimed Early Termination Amount.

## ARGUMENT

**A.     Applicable Legal Standard**

4. It is well-settled bankruptcy law that a properly filed proof of claim is *prima facie* evidence of that claim. See 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). "If a proper objection is made, the objecting party has the burden of presenting evidence sufficient to overcome the *prima facie* validity of the claim." King, Collier on Bankruptcy, ¶501.02[2][d] (15th ed. rev.); see also In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is prima facie evidence of the validity and the amount of the claim, and the objector bears the initial burden of persuasion."). The burden shifts to the claimant only where the "objector produces evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." See Oneida, 400 B.R. at 389 (internal quotations omitted).

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Master Agreement.

**B.       The Debtors Have Failed To Rebut The Validity Of The Darby Claims**

      **1.       The Debtors' Unsubstantiated Objection To The Darby Claims**

5.      In the Objection, the Debtors object to the Darby Claims on the basis that the amounts asserted therein are "greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records."  See Objection, ¶ 2.  The Debtors' empty assertion that the claims do not match their books and records does not refute the properly filed Darby Claims.  The Debtors have failed to offer any evidence or justification to support the conclusory statements in the Objection and certainly nothing to explain why the Darby Claims should be reduced to the amount of $2,066,370.44.

6.      Moreover, not only does the Objection, on its face, fail to properly refute the Darby Claims, Darby's informal discussions with the Debtors have failed to uncover an explanation for their opposition.  Although Darby has attempted, in good faith, to engage in negotiations with the Debtors, it has never been provided with a substantive basis for the Objection – thereby leaving Darby with no choice but to infer that there is, in fact, no legitimate basis for it and that the Debtors are attempting to extract wholly unjustified reductions to their valid and properly filed proofs of claim.

7.      Simply put, the Darby Claims and Darby Questionnaires (complete with all relevant supporting documentation), constitute more than sufficient evidence for the amounts claimed thereunder.  As described in more detail below, the Darby Claims are fully supported by the terms of the Transactions entered into between Darby and LBSF under the Master Agreement and should be allowed as set forth herein.

**2.      The Darby Claims Are Fully Supported By The Master Agreement**

8.      Under Section 5(a)(vii) of the Master Agreement, the bankruptcy of a party or Credit Support Provider constitutes an Event of Default. Pursuant to Section 6 of the Master Agreement, upon an Event of Default, the Non-defaulting Party may designate an Early Termination Date in respect of all outstanding Transactions under the Master Agreement and must provide notice thereof to the Defaulting Party.

9.      On September 15, 2008, Darby provided notice to LBSF that it was designating that day (which was the date of the bankruptcy filing of the Credit Support Provider, Lehman Brothers Holdings Inc.) as the Early Termination Date in respect of all outstanding Transactions under the Master Agreement.

10.     In Section 1(f) of the Schedule, the parties agreed that the Close-out Amount methodology would apply for purposes of calculating payments to be made pursuant to an Early Termination Date. Pursuant to Section 5(p) of the Schedule, the Close-out Amount is defined as the amount of losses or costs of the Determining Party that are or would be incurred under then prevailing circumstances (expressed as a positive number) or gains of the Determining Party that are or would be realized under then prevailing circumstances (expressed as a negative number) in replacing, or in providing for the Determining Party the economic equivalent of the material terms of the Terminated Transactions. Section 5(q)(ii) makes clear that the Non-defaulting Party is the Determining Party for purposes of this calculation.

11.     Section 5(p) of the Schedule also states that in determining the Close-out Amount, the Determining Party may consider any relevant information, ***including, without limitation, quotations (either firm or indicative) for replacement transactions supplied by one or more third parties*** that may take into account the creditworthiness of the Determining Party at the time

4

the quotation is provided and the terms of any relevant documentation, including credit support documentation, between the Determining Party and the third party providing the quotation. Third parties supplying quotations may include dealers, brokers or other sources of market information.  That Section also states that in the absence of written confirmation from the source of a quotation or market data obtained in determining a Close-out Amount, the records of the party obtaining such quotations or market data will be conclusive evidence of the existence and accuracy of such quotations or market data.

12. Pursuant to the Master Agreement, Darby, as the Non-defaulting Party and Determining Party, obtained quotations to calculate the Close-out Amount for the six Terminated Transactions in effect under the Master Agreement and, as permitted under the Master Agreement, on September 19, 2008, sent notice to LBSF demanding payment.  As required by Section 5(q) of the Schedule, Darby provided to LBSF a statement showing in reasonable detail its calculations, and included all quotations and market data used in making the calculations.

13. Darby's calculations are entirely reasonable and, in fact, notably conservative in that they utilize the quotations most favorable to the Debtors (where multiple quotations were available) and do not include estimated transaction costs that would have been incurred in a replacement transaction (notwithstanding that the express terms of the Master Agreement permit such amounts to be included).  <u>See</u> Schedule, § 5(p). A summary of the calculations underlying the Darby Claims is set forth below:

- **Zero Coupon Inflation Swap:**  On July 11, 2007, Darby and LBSF entered into a zero coupon inflation swap under the Master Agreement with a notional amount of $100,000,000. On September 15, 2008, Darby obtained a quotation in the amount of $1,700,000 for Close-out Amount of this Transaction from Barclays Capital. On the following day, Darby obtained a quotation in the amount of $1,740,000 from Goldman Sachs. The Close-out Amount asserted in the Darby Claims for this Transaction inadvertently used the Goldman

5

Sachs quotation. However, taking the quotation most beneficial to the Debtors, the Close-out Amount for this Transaction would be $1,700,000.

- **ML Credit Default Swap:** On January 7, 2008, Darby and LBSF entered into a credit default swap under the Master Agreement with a notional amount of $10,000,000. On September 15, 2008, Darby obtained a quotation of 3.80% from Barclays Capital, which indicated that, in order to open a new trade with the same original deal spread and maturity, it would cost Darby $822,460. After subtracting accrued unpaid interest owed to LBSF in the amount of $38,000, the Close-out Amount for this Transaction would be $784,460.

- **30-Year MMD Rate Lock Swap:** Between July 23, 2008 and September 5, 2008, Darby and LBSF entered into four 30-year MMD Rate Lock swap transactions with a total notional amount of $45,000,000. On September 15, 2008, Darby solicited quotations for any, all or none of the four rate lock transactions that had been terminated. Merrill Lynch provided a quotation of 4.66% for all, Citigroup offered 4.65% for all, and JPMorgan Securities offered 4.51% for all. Using the quotation most favorable to the Debtors (4.66%), the Close-out Amount for this Transaction would be $1,223,500.

14. Taking Darby's reasonable and conservative approach to the calculation of the Darby Claims as outlined above, and aggregating the Close-out Amounts for the six Terminated Transactions ($1,700,000 + $784,460 + $1,223,500), yields a gross Close-out Amount of $3,707,960. After subtracting LBSF's collateral (in the amount of $686,000), the net Close-out Amount owed to Darby would be $3,021,960, plus accrued and unpaid interest at the Default Rate (if and to the extent payable under applicable law).

15. In sum, the Darby Claims are fully corroborated by the terms of the underlying documents, and the relief sought in the Objection (which fails to offer anything approaching a meaningful justification for the proposed reduction) must be denied.

**WHEREFORE**, Darby respectfully requests that this Court disallow the Objection as it pertains to the Darby Claims, enter an Order allowing each of the Darby Claims in an amount not less than $3,021,960 (plus any accrued by unpaid interest payable under applicable law) and grant Darby such other relief as may be appropriate and just.

Dated: October 13, 2010                    Respectfully submitted,

                                           BROWN RUDNICK LLP

                                           /s/ Thomas H. Montgomery
                                           Thomas H. Montgomery, Esq.
                                           One Financial Center
                                           Boston, MA  02111
                                           (617) 856-8200

                                           *Counsel to Darby Financial Products*

# 1778641