RESPONSE DEADLINE: October 13, 2010 at 4:00 p.m. (EST)

SEWARD & KISSEL LLP
Ronald L. Cohen (RC-3897)
Laurie R. Binder (LB-0476)
One Battery Park Plaza
New York, New York 10004
Telephone: (212) 574-1200
Facsimile:  (212) 480-8421

Attorneys for Global Thematic
Opportunities Fund LP

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., *et al.*<br><br>　　　　　　　　　　　　　Debtors. | Chapter 11 Case No.<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**RESPONSE OF GLOBAL THEMATIC OPPORTUNITIES FUND LP
TO DEBTORS' THIRTY-FIFTH OMNIBUS OBJECTION
<u>TO CLAIMS (VALUED DERIVATIVE CLAIMS)</u>**

TO THE HON. JAMES PECK, UNITED STATES BANKRUPTCY JUDGE:

　　　　　Global Thematic Opportunities Fund LP ("Global"), by and through its undersigned counsel, hereby submits this response (the "Response") to the Debtors' (the "Debtors") Thirty-Fifth Omnibus Objection to Claims (Valued Derivative Claims), dated September 10, 2010 (the "Objection").  In support of its Response, Global respectfully states as follows:[1]

---

[1]　　Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Master Agreement (as defined below).

**Background**

**Global's Proof of Claim**

        1.        On or about September 16, 2009, Global filed (a) a proof of claim against Lehman Brothers Special Financing Inc. ("LBSF") (Claim No. 33274) (the "LBSF Proof of Claim") seeking (i) recovery of an aggregate amount of $438,225.00, (ii) an unliquidated amount of fees and expenses that will continue to accrue, (iii) unliquidated interest at the default rate, to the extent permitted under applicable law, and (iv) an unliquidated amount for LBSF's potential breaches under the Master Agreement (as defined below), and (b) a proof of claim against Lehman Brothers Holdings Inc. ("LBHI") (Claim No. 33281) (the "LBHI Proof of Claim" and, together with the LBSF Proof of Claim, the "Proofs of Claim") seeking recovery under the Guarantees (as defined below) of (a) $438,225.00 with respect to the Master Agreement, (b) an unliquidated amount of fees and expenses that will continue to accrue, (c) unliquidated interest at the default rate, to the extent permitted under applicable law, and (d) an unliquidated amount for LBSF's potential breaches under the Master Agreement.

        2.        Global entered into an ISDA Master Agreement with LBSF, dated as of May 10, 2007, (together with the Schedule thereto and the Credit Support Annex part thereof, the "Master Agreement").[2] Under the terms of the Master Agreement, and as set forth in the Proofs of Claim, Global and LBSF agreed to enter into one or more derivative transactions, each evidenced by a confirmation.

        3.        LBHI unconditionally guaranteed the obligations of LBSF under the Master Agreement pursuant to the Guarantee of LBHI relating to the Master Agreement (the

---

[2] All relevant documentation was uploaded to the Debtors' Supplemental Questionnaire website in satisfaction of the Derivative Questionnaire requirements set forth in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, entered on July 2, 2009.

2

"Guarantee"). The Guarantee is a Credit Support Document as contemplated by the Master Agreement. LBHI also fully guaranteed the payment of all liabilities, obligations and commitments of certain of its subsidiaries, including LBSF, pursuant to a resolution of its board of directors, dated June 9, 2005(together with the Guarantee, the "Guarantees").

4. The filing by debtor guarantor LBHI of a chapter 11 petition on September 15, 2008 constituted an Event of Default under Section 5(a)(vii) of the Master Agreement. Pursuant to Section 6 of the Master Agreement, which gives Global the right to terminate all outstanding transactions following an Event of Default, on September 17, 2008, Global sent LBSF a Notice of Termination, which set an Early Termination Date of October 2, 2008.

5. Part 1(f) and Section 6(e) of the Master Agreement state that the Loss and Second Method will apply to determine payments owing on an Early Termination Date. Section 6(e)(i)(4) of the Master Agreement defines the Second Method and Loss as follows:

> If the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party; if it is a negative number, the Non-defaulting Party will pay the absolute value of that amount to the Defaulting Party.

"Loss" is defined in Section 14 of the LBSF Master Agreement as:

> the Termination Currency Equivalent of an amount that [a] party reasonably determines in good faith to be its total losses and costs (or gain, in which case expressed as a negative number) in connection with this Agreement or that Terminated Transaction or group of Terminated Transactions, as the case may be, including any loss of bargain, cost of funding or, at the election of such party but without duplication, loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position (or any gain resulting from any of them). Loss includes losses and costs (or gains) in respect of any payment or delivery required to have been made (assuming satisfaction of each applicable condition precedent) on or before the relevant

3

        Early Termination Date and not made, except, so as to avoid duplication, if Section 6(e)(i)(1) or (3) or 6(e)(ii)(2)(A) applies. Loss does not include a party's legal fees and out-of-pocket expenses referred to under Section 11. A party will determine its Loss as of the relevant Early Termination Date, or, if that is not reasonably practicable, as of the earliest date thereafter as is reasonably practicable. A party may (but need not) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets.

6.      Calculating its Loss pursuant to the Second Method and Loss, Global asserted a claim in the amount of $438,225.00 for amounts owing under the Master Agreement and the Guarantees.

7.      As set forth in the Proofs of Claim, under the Master Agreement, LBSF agreed to indemnify Global and pay all reasonable out-of-pocket expenses, including legal fees and stamp tax, as a result of enforcement of its rights under that agreement or any Credit Support Document, such as the Guarantee. The Proofs of Claim include Global's legal fees and expenses, including legal fees and expenses in an amount to be determined.

8.      Pursuant to the Master Agreement, Global is also entitled to interest at the default rate on all amounts due and owing. The Proofs of Claim include all interest and default interest to the extent permitted under applicable law in amounts to be determined.

9.      In addition, LBSF made certain representations and warranties under the LBSF Master Agreement. The Proofs of Claim include damages to Global for any breaches of representations and warranties made by LBSF in the Master Agreement, to the extent applicable under the Master Agreement and related documents in amounts to be determined.

**The Debtors' Objection to the Proofs of Claim**

10.      The Debtors state in the Objection that they had examined Global's Proofs of Claim and that such Proofs of Claim should be reduced and allowed "on the basis that the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values

4

determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records. . . ." Objection at ¶ 2.

11.     Based on such statement, and no further evidence, the Debtors seek to reduce both the LBSF Proof of Claim and the LBHI Proof of Claim from $438,225.00 to $229,543.00 (the "Debtors' Modified Claims Amounts").

## Argument

12.     The Debtors' Objection to Global's Proofs of Claim is baseless. Global was entitled, under the express terms of the Master Agreement, to calculate the amounts underlying Global's Proofs of Claim and Global so calculated such amounts. The Debtors do not offer any evidence to dispute this fact. Further, the Debtors erroneously claim that the burden of proof with respect to the Proofs of Claim lies with Global even though the Debtors' own cited case law is unequivocal that the proofs of claim are *prima facie* valid and that the burden of proving otherwise rests squarely with the Debtors.

**The Debtors Do Not Provide Any Evidence To Dispute the Amounts in the Proofs of Claim**

13.     As set forth above, Global calculated the amounts in the Proofs of Claim as required by the terms of the Master Agreement. The Debtors do not provide any evidence to dispute the amounts asserted by Global in the Proofs of Claim.

14.     The Debtors do not even address the terms of the Master Agreement in their Objection. Instead, the Objection discusses only the general process – unrelated to the terms of the Master Agreement – that resulted in their conclusion that the amounts in the Proofs of Claim should be reduced. The Debtors do not provide a single calculation or a single document in support of their position – just their bare conclusion that the amounts in Global's

5

Proofs of Claim should be reduced.[3] Neither the Debtors' general process nor its conclusion is supported by the Master Agreement. In fact, the Debtors' process and conclusion are wholly inconsistent with the terms of the Master Agreement.

**The Debtors Misstate the Burden of Proof**

15. The Debtors not only ignore the terms of the Master Agreement that govern the calculation of the amounts in the Proofs of Claim but, even according to their own cited case law, they misstate the applicable burden of proof. The Debtors argue that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim." Objection at ¶ 12 *citing In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Comms Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

16. To the contrary, "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the *objector* bears the initial burden of persuasion." *Oneida*, 400 B.R. at 389 (emphasis added). The burden would only shift to Global if the Debtors had produced "evidence in equal force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id.* In other words, to shift the burden of proof to Global, the Debtors must first produce sufficient evidence to overcome the "prima facie validity" of Global's Proofs of Claim. *Adelphia*, 2007 Bankr. LEXIS 660 at *15-16; *Rockefeller*, 272 B.R. at 539.

---

[3] "[F]or a more comprehensive discussion of the valuation process," the Debtors refer in footnote 2 of their Objection to the Declaration of Gary H. Mandelblatt in Support of Debtors' Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3002(c)(3) for Establishment of the Deadline for Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Proof of Claim Form. However, that declaration does not provide any information that is specific to Global.

6

17. The Debtors have not produced information sufficient to shift the burden of proof to Global; indeed, the Debtors have not produced any information at all. The Objection does not provide any data, numerical or otherwise, in support of how the Debtors' Modified Claims Amounts were calculated and does not even refer to the Master Agreement, which defines the obligations of the parties and which governs the calculation of the amounts in the Proofs of Claim. The Objection merely describes a general process that was purportedly used to reach the Debtors' Modified Claim Amounts. This general process has no basis in, and is in fact inconsistent with, the express terms of the Master Agreement. The Debtors' Objection should be denied.

**Reservation of Rights to File a Supplemental Response**

18. On October 8, 2010, Global, LBHI and LBSF entered into a Settlement Negotiations Agreement. Pursuant to the Settlement Negotiations Agreement, Global is intending to engage in discussions with LBHI and LBSF concerning the valuation of the Proofs of Claim. As a result of such discussions and other information Global may obtain in connection with the valuation of the Proofs of Claim, Global reserves its right to file a supplemental and/or amended response to the Objection, subject to the terms of the Settlement Negotiations Agreement.

## **Conclusion**

WHEREFORE, for the foregoing reasons, Global respectfully requests that this Court deny the Debtors' Objection and grant Global such other, further, and different relief as this Court deems just and proper.

New York, New York
October 13, 2010

        SEWARD & KISSEL LLP

        By:   /s/ Ronald L. Cohen
             Ronald L. Cohen (RC-3897)
             Laurie R. Binder (LB-0476)
             One Battery Park Plaza
             New York, New York 10004
             Telephone: (212) 574-1200
             Facsimile:  (212) 480-8421

        *Attorneys for Global Thematic Opportunities Fund LP*

SK 25845 0001 1137346