KUTAK ROCK LLP
1650 Farnam Street
Omaha, NE 68102-2186
Tel: (402) 346-6000
Facsimile: (402) 346-1148
Jeremy T. Fitzpatrick, Esq. (JTF 4108) (admission *pro hac* pending)
Heather H. Anschutz, Esq. (HHA 9681) (admission *pro hac* pending)
Bruce A. Wilson, Esq. (BAW 7206)
jeremy.fitzpatrick@kutakrock.com
heather.anschutz@kutakrock.com
bruce.wilson@kutakrock.com

*Attorneys for the Nebraska Investment Finance Authority*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS INC., et al.,**<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>(Jointly Administered) |

**OBJECTION OF THE NEBRASKA INVESTMENT FINANCE AUTHORITY
TO DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 7004(a)(1) TO STAY AVOIDANCE ACTIONS AND
<u>GRANT CERTAIN RELATED RELIEF</u>**

The Nebraska Investment Finance Authority ("NIFA"), a body politic and independent instrumentality of the State of Nebraska organized and existing under the laws of the State of Nebraska, hereby objects to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) to Stay Avoidance Actions and Grant Certain Related Relief [D.I. #11389] (the "Motion") and in support thereof states as follows:

**Background**

1. NIFA, a body politic and corporate, is an independent instrumentality exercising essential public functions organized and existing under the laws of the State of Nebraska. *See* Nebraska Investment Finance Authority Act, Neb. Rev. Stat. § 58-201 et seq. (Reissue 2004), as amended. NIFA is a government unit as defined under Section 101(27) of the Bankruptcy Code.

2. NIFA files this Objection for the limited purpose of objecting to the Debtors' Motion to the extent the Motion purports to or would apply to NIFA or the NIFA Swap Agreements (as defined below). By filing this Objection, NIFA does not waive any right or remedy under applicable state or federal law.

3. Lehman Brothers Financial Products Inc. ("LBFP") and NIFA were parties to an ISDA Master Agreement and Schedule to the Master Agreement, each dated as of November 1, 2000, together with the following related Confirmations (collectively, the "LBFP Swap Agreements"):

    (i) Confirmation relating thereto dated as of November 1, 2000 and a trade date of November 1, 2000, with respect to NIFA's Single Family Housing Revenue Bonds, 2000 Series F;

    (ii) Confirmation relating thereto dated as of April 3, 2001 and a trade date of March 14, 2001, with respect to NIFA's Single Family Housing Revenue Bonds, 2001 Series B;

    (iii) Confirmation relating thereto dated as of November 27, 2001 and a trade date of October 16, 2001, with respect to NIFA's Single Family Housing Revenue Bonds, 2001 Series E;

    (iv) Confirmation relating thereto dated as of March 19, 2002 and a trade date of February 5, 2002, with respect to NIFA's Single Family Housing Revenue Bonds, 2002 Series B;

    (v) Confirmation relating thereto dated as of August 8, 2002 and a trade date of July 23, 2002, with respect to NIFA's Single Family Housing Revenue Bonds, 2002 Series E;

    (vi) Confirmation relating thereto dated as of June 10, 2003 and a trade date of April 30, 2003, with respect to NIFA's Single Family Housing Revenue Bonds, 2003 Series B;

    (vii) Confirmation relating thereto dated as of October 9, 2003 and a trade date of September 3, 2003, with respect to NIFA's Single Family Housing Revenue Bonds, 2003 Series E; and

    (viii) Confirmation relating thereto dated as of January 29, 2004 and a trade date of January 7, 2004, with respect to NIFA's Single Family Housing Revenue Bonds, 2004 Series B.

  4. On September 15, 2008, LBFP's parent or affiliate, Lehman Brothers Holdings Inc. ("Holdings"), filed a petition for relief under Chapter 11 of 11 U.S.C. §§ 101 et seq., as amended (the "Bankruptcy Code"). On October 5, 2008, LBFP filed its own petition for relief under Chapter 11 of the Bankruptcy Code. The Chapter 11 cases of Holdings and LBFP, debtors and debtors in possession, together with the Chapter 11 cases of certain affiliates of Holdings and LBFP, are currently jointly administered under Case No. 08-13555 (the "Bankruptcy Cases"), pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court" or the "Court").

  5. Following the filing of LBFP's bankruptcy case, each LBFP Swap Agreement was terminated on November 25, 2008 in accordance with the Early Termination Date terms thereof pursuant to a notice to LBFP from NIFA dated November 25, 2008.

  6. NIFA delivered to LBFP on December 23, 2008, a Settlement Notice setting forth, in accordance with the terms of the LBFP Swap Agreements, the amounts due and payable to NIFA and LBFP as of the Early Termination Date.

**The Debtors' Motion**

7. On September 15, 2010, Debtors filed the Motion requesting the Court to stay each of the Avoidance Actions[1] identified on Exhibit A to the Motion. At the time the Motion was originally filed, NIFA was not the subject of an Avoidance Action and, accordingly, was not initially identified by the Debtors on Exhibit A to the Motion. In their Motion, Debtors allege there is no prejudice to the defendants named in the Avoidance Actions resulting from the proposed stay or other relief requested.

8. Pursuant to the Motion, the Debtors request the Court stay: (i) all applicable deadlines (other than those related to completion of service); (ii) all discovery and pre-trial conference; and (iii) all motion practice and contested hearings or trials respecting the Avoidance Actions. Debtors, however, request certain and notable exceptions to the effectiveness of the stay for their sole benefit, to be exercised by the Debtors at their sole discretion respecting any Avoidance Action: the Debtors may (a) amend the Avoidance Action complaint, (b) employ the Derivative ADR Procedures, (c) enter into settlements of the Avoidance Actions, (d) complete service of the Avoidance Action complaints, (e) seek discovery for the purpose of assisting the Debtors in completing service of the Avoidance Action complaints, and (f) dismiss an Avoidance Action. Additionally, the Motion requests an extension of time to complete service of any Avoidance Action complaint and provides that the Debtors may act to lift the stay as to an Avoidance Action upon the filing and service of a notice to the Court.

9. As originally set forth in the Motion, the Objection Deadline for the Motion was set for October 13, 2010 and the Hearing Date was set for October 20, 2010.

10. On October 4, 2010, Debtors filed an Adversary Action against NIFA, case number 10-ap-03812, currently pending before the Bankruptcy Court (the "NIFA Complaint").

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the Motion.

The NIFA Complaint contains LBFP's six alleged causes of action against NIFA, several of which rely on allegations of actual fraud committed by a former employee of the Debtors. In addition, the NIFA Complaint seeks accrued interest on the LBFP alleged claim for $12,770,182.00. To date, the NIFA Complaint has not been served.

11. On October 5, 2010, the Debtors filed their revised notice of the Motion to include the later-in-time NIFA Complaint without any revision to the scheduled Objection Deadline or Hearing Date. As a result, the Debtors seek to make NIFA subject to the same October 13, 2010 Objection Deadline and October 20, 1010 Hearing Date as those Defendants originally identified on Exhibit A to the Motion at the time the Motion was initially filed and served on September 15, 2010. *See* Notice of Revised Schedule of Avoidance Actions to Proposed Order Granting Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1) to Stay Avoidance Actions and Grant Certain Related Relief [D.I. #11805] (the "Revised Schedule").

12. On October 8, 2010, NIFA informed LBFP, through its consel, of NIFA's preliminary objections to the Motion, and specifically, its belief that NIFA would be prejudiced by the stay the Debtors seek through the Motion. In the same communication, however, NIFA proposed to LBFP that it would not oppose the Motion if LBFP in turn would agree that no interest would accrue from and after the date of the filing of the NIFA Complaint on the amounts LBFP now claims are due and owing from NIFA. On October 12, 2010, LBFP responded that NIFA's request was not acceptable.

13. As more fully set forth below, NIFA objects to the Motion for the following reasons: (i) the Debtors failed to comply with the requisite procedures set forth in the Management Order (as defined below) for pleadings filed in connection with adversary

4839-2501-9143.3                                      5

proceedings; (ii) the requested relief in the Motion is fundamentally unfair; (iii) NIFA would be unfairly prejudiced by staying the adversary proceedings commenced by the Debtors with the filing of the NIFA Complaint without also ordering that (a) interest alleged by the Debtors in the NIFA Complaint is stayed from and after the filing of the NIFA Complaint, (b) mediation of *all* causes of action contained in the NIFA Complaint must proceed immediately, (c) the stay, if any, imposed based on the Motion is lifted without further order in the event mediation is not successful; (d) NIFA may request at any time that the Court lift such stay; (e) the stay also toll any deadlines or legal bars, including the ability to add parties that are not currently parties to the NIFA Complaint, that are or may be applicable to NIFA or the rights of NIFA and (f) the effect of such stay does not preclude NIFA from commencing its own adversary proceeding against any Debtor or third party relating to the NIFA Complaint or the transactions therein; and (iv) core allegations in the NIFA Complaint rely on information required to be obtained from a former employee of the Debtors. Accordingly, the Debtors Motion must be denied as to NIFA.

## Objections

**A. The Debtors Failed to Comply With the Requisite Procedures for Pleadings Connected to Adversary Proceedings.**

14. Pursuant to this Court's Second Amended Order . . . Implementing Certain Notice and Case Management Procedures entered June 17, 2010 [D.I. #9635] (the "Management Order"), pleadings must be served pursuant to Bankruptcy Rule 2002 and the Management Order. The Management Order provides specific procedures for pleadings filed in connection with adversary proceedings ("Adversary Pleadings").

15. Paragraph 24 of the Management Order provides Adversary Pleadings "shall be scheduled upon request of a party to the adversary proceeding and approval of the Court." Paragraph 24 further provides, "[a]fter a hearing date has been set by the Court . . . the parties to

the adversary proceedings shall confer and agree upon a briefing schedule for all adversary matters, which shall be submitted for approval of the Court." By contrast, other Pleadings (i.e., Pleadings other than those filed in connection adversary proceedings and subject to paragraph 24 of the Management Order) are instead subject to the deadlines set forth in paragraph 29 of the Management Order, upon which the Debtors have apparently relied in setting the Hearing Date and related Objection Deadline for the Motion.

16. Pursuant to the Debtors' Revised Schedule, the Motion is in connection with the adversary proceeding filed against NIFA, i.e. the NIFA Complaint, and constitutes an Adversary Pleading. As such, the Debtors were required to comply with the procedures in the Management Order required for Adversary Pleadings and NIFA objects to the Motion on the basis that the Motion is not properly the subject of a regularly scheduled Omnibus Hearing. The Debtors were required to request a hearing date to be approved by the Court as contemplated by paragraph 24 of the Management Order rather than the filing deadlines on which the Debtors rely pursuant to paragraph 29 of the Management Order.

17. NIFA is prejudiced by the shortened notice of the Motion, leaving NIFA with only one week in which to respond by the Objection Deadline and make necessary preparations to appear for the scheduled Hearing Date for the Motion--a substantially truncated timeframe from that afforded to the originally scheduled Defendants in the other Avoidance Actions.

18. As stated by the United States Supreme Court in *Mullane, Special Guardian v. Central Hanover Bank & Trust Co.*:

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information and *it must afford a reasonable time* for those

> interested to make their appearance. But when notice is a person's due, process which is a mere gesture is not due process.

*Mullane, Special Guardian v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-315 (1950). Under the guidance articulated in *Mullane* or by any measure, the Objection Deadline and Omnibus Hearing imposed by the Debtors is simply inadequate to permit NIFA the opportunity to properly evaluate the impact of, and prepare an appropriate and thorough response to, the relief sought by the Debtors under the Motion.

**B.    The Requested Relief in the Motion Is Fundamentally Unfair.**

19.    In addition to the procedural defects addressed above, NIFA asserts the relief requested by the Debtors fails on principles of fundamental fairness because the Debtors request certain exceptions to the stay solely for their benefit and to the detriment of other parties, i.e. permitting the Debtors to amend their Avoidance Action complaints, complete service of additional Avoidance Action complaints and seek discovery for the purpose of assisting the Debtors in completing service of additional Avoidance Action complaints. The Debtors additionally request the Court grant them additional time to complete service of the Avoidance Action complaints and allow them to lift the stay upon the unilateral filing of a notice.

20.    The Debtors, however, request the Court to prohibit Defendants from responding to or otherwise answering the Avoidance Action complaints, including motions to dismiss, and failing to provide any procedure allowing a Defendant to request a lift of the stay.

21.    The Motion is fundamentally unfair and substantially prejudicial to NIFA. The Debtors' requested relief seeks to unilaterally usurp NIFA's rights.

**C.    NIFA Would Be Unfairly Prejudiced by Staying the Adversary Proceedings Contained in the NIFA Complaint Without Additional Protections.**

22.    The Debtors allege there is no prejudice to the Avoidance Actions Defendants from the issuance of the stay. This allegation is false as it relates to NIFA.

23. Within the NIFA Complaint, LBFP seeks accrued interest on its alleged claim for $12,770,182.00. Pursuant to the Motion and Proposed Order thereto, the stay would not suspend accrual of the interest on the Debtors' claims against NIFA. Depending on when the stay is eventually lifted, an event solely in control of the Debtors, the amount of interest accrued could be substantial and would be economically prejudicial to NIFA in the event the Debtors were to ultimately prevail on their claims set forth in the Complaint.

24. As such, NIFA requested LBFP to agree to stay the interest on its alleged claims from the date of the filing of the NIFA Complaint to address one of NIFA's principal concerns respecting the Motion and the relief sought therein by the Debtors. As stated above, LBFP has informed NIFA that the request is unacceptable to LBFP.

25. The Debtors should not be permitted to request a stay for their own purposes over NIFA's objection and still allow interest to accrue.

26. The Motion also fails to provide several additional protections to NIFA. Specifically, the Motion fails to require that (a) mediation of *all* causes of action contained in the NIFA Complaint must proceed immediately, (b) the stay, if any, imposed based on the Motion is lifted without further order in the event mediation is not successful; (c) NIFA may request at any time that the Court lift such stay; (d) the stay also tolls any deadlines or legal bars, including the ability to add parties that are not currently parties to the NIFA Complaint, that are or may be applicable to NIFA or the rights of NIFA and (e) the effect of such stay does not preclude NIFA from commencing its own adversary proceeding against any Debtor or third party relating to the NIFA Complaint or the transactions therein.

**D.     Core Allegations in the NIFA Complaint Rely on Information that Must be Obtained from a Former Employee of the Debtors.**

27.     Core allegations made by LBFP in the NIFA Complaint rely on information that must be obtained from a former employee of the Debtors (the "Employee"). Specifically, LBFP alleges Employee acted outside the scope of his authority and, in the alternative, acted with actual intent to hinder, delay or defraud creditors by executing the consent on behalf of LBFP to the removal of the remarketing agent (the "Consent").

28.     Pursuant to these allegations, LBFP seeks a declaratory judgment against NIFA that the Consent was invalid as *ultra vires*, or alternatively, that the Consent constitutes a fraudulent transfer avoidable under Section 548 of the Bankruptcy Code.

29.     Among other things, allegations of actual fraud under Section 548 require that a person acted with specific intent to defraud. Only Employee can testify as to his intent in executing the Consent. As such, Employee's testimony is crucial to the Debtor's claims and NIFA's defenses thereto.

30.     Due to the importance of Employee's testimony and the possibility that recollections fade or documents are lost or misplaced, any delay in the Avoidance Action could be prejudicial to NIFA. These evidentiary matters are especially important in connection with an action based on actual fraud as alleged by LBFP.

[remainder of page intentionally left blank]

WHEREFORE, for the reasons set forth herein, NIFA objects to the Motion and requests that the Bankruptcy Court:

1. enter an order denying the Debtors' Motion as it relates to NIFA; or

2. in the alternative, order that (a) interest alleged in the NIFA Complaint is stayed from and after the filing of the NIFA Complaint, (b) mediation of *all* causes of action contained in the NIFA Complaint must proceed immediately, (c) the stay, if any, imposed based on the Motion is lifted without further order in the event mediation is not successful; (d) NIFA may request at any time that the Court lift such stay; (e) the stay also tolls any deadlines or legal bars, including the ability to add parties that are not currently parties to the NIFA Complaint, that are or may be applicable to NIFA or the rights of NIFA and (f) the effect of such stay does not preclude NIFA from commencing its own adversary proceeding against any Debtor or third party relating to the NIFA Complaint or the transactions therein; and

3. grant NIFA such further relief as may be just and equitable.

Dated: October 13, 2010
Omaha, Nebraska

          Respectfully submitted,

          KUTAK ROCK LLP

          By: */s/ Jeremy T. Fitzpatrick*
              Jeremy T. Fitzpatrick, Esq. (JTF 4108)
              (admission *pro hac* pending)
              Heather H. Anschutz, Esq. (HHA 9681)
              (admission *pro hac* pending)
              Bruce A. Wilson, Esq. (BAW 7206)
              Kutak Rock LLP
              1650 Farnam Street
              Omaha, NE 68102-2186
              Tel: (402) 346-6000
              Facsimile: (402) 346-1148

          *Attorneys for the Nebraska Investment Finance Authority*

# **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on October 13, 2010, a true and exact copy of the foregoing OBJECTION OF NEBRASKA INVESTMENT FINANCE AUTHORITY TO DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 7004(a)(1), TO STAY AVOIDANCE ACTIONS AND GRANT CERTAIN RELATED RELIEF was filed using this Court's electronic filing system, which sent notification to all parties in interest participating in such electronic filing system, and was forwarded by Fed Ex overnight, postage prepaid, to all parties below:

Chambers copy:
The Honorable James M. Peck
Courtroom 601
One Bowling Green
New York, NY  10004

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY  10153
Attn.: Shai Waisman, Esq. and Penny Reid, Esq.

Office of the United States Trustee
for the Southern District of New York
33 Whitehall Street
21st Floor
New York, NY  10004
Attn.: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq.
Brian Masumoto, Esq., Linda Riffkin, Esq. and
Tracy Hope Davis, Esq.

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY  10005
Attn.: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq.,
and Evan Fleck, Esq.

*/s/ Jeremy T. Fitzpatrick*
Jeremy T. Fitzpatrick, Esq.