Hearing Date and Time: October 20, 2010 at 10:00 a.m.
Objection Date and Time: October 13, 2010 at 4:00 p.m.

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000
Craig M. Price

Attorneys for U.S. Bank National Association, as Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | CASE NO. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**OBJECTION OF U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE TO DEBTORS'
MOTION, PURSUANT TO SECTION 105(A) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 7004(A)(1), TO STAY AVOIDANCE ACTIONS AND GRANT
CERTAIN RELATED RELIEF**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES U.S. Bank National Association, not individually but as Indenture Trustee

and/or Owner Trustee in connection with a myriad of transactions which are subject to recently

filed avoidance actions (*"U.S. Bank"* or the *"Trustee"*), by and through its counsel, Chapman

2886834.01.06.doc

and Cutler LLP, to object to the Debtors' Motion, Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1), to Stay Avoidance Actions and Grant Certain Related Relief (the "*Motion*" and the Trustee's objection thereto, the *"Objection"*). In support of its Objection, the Trustee states as follows:[1]

## SUMMARY OF OBJECTIONS

The Trustee objects to the Motion in its entirety because the Debtors have failed to carry their burden of providing an adequate justification for a stay. Also, a stay of these proceedings must be denied because it will adversely affect the rights of other parties to those actions as follows: (a) a case cannot be stayed while a substantive and important matter of law is being decided in another proceeding which the Debtors will argue is precedential, as the Trustee has a right to be heard on issues that will affect its rights; (b) substantive rights of the trusts and other litigants may be adversely affected by the stay through, *inter alia*, the running of any statute of limitations against claims it may have to recover from third parties in connection with any judgment rendered against it in the Avoidance Actions; (c) the Trustee may lose defenses because the passage of time makes it more difficult to determine the true beneficiaries of any avoidable transfer or avoidable distributions through the loss of information; (d) the passage of time makes it more difficult to obtain discovery on the financial condition of the Debtors pre-petition, particularly from third parties; (e) a Defendant class action may be difficult to define in the context of a stay since it is unclear whether the class will continually change as notes or certificates change hands; and (f) as a result of the assertion of the applicability of the automatic stay with respect to distributions, noteholders or certificateholders in many transactions who have not received distributions *for more than two years*, would be further delayed these in

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the relevant Trust Agreement or Indenture.

receiving distributions that may be due them (particularly if the Debtors' legal position is ultimately determined to be incorrect).[2]

## ARGUMENT

Before issuing a stay, the Court must exercise sound judgment and weigh all parties' interests. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). If a "fair" possibility exists that a stay will cause damage to the non-movant, the applicant must make a clear case of hardship or inequity. *Id*. at 255. The movant has the burden of demonstrating the wisdom and justice of the stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need"); *John's Insulation, Inc. v. Siska Const. Co., Inc.*, 671 F.Supp. 289, 297 (S.D.N.Y. 1987). Finally, any stay must maintain "an even balance" between the interests at stake. *Landis*, 299 U.S. at 258. As described below, the Debtors have failed to demonstrate that a stay is just in this case or make out a "clear case" of any hardship. Rather, as described below, the party that will suffer hardship and inequality is the Trustee.

### I.     THE JUSTIFICATIONS ADVANCED BY THE DEBTORS ARE INADEQUATE

The merits of a stay are analyzed on a case by case basis. Factors considered include: (1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice if delayed; (2) the private interests and burdens of the defendants; (3) the interests of the courts; (4) the interests of the persons not party to the litigation; and

---

[2] In the event this Court determines that a stay is appropriate, the Trustee respectfully requests certain changes in the proposed order: (i) the stay be granted for a definitive time period of no more than six months without prejudice to the right of the Debtors or any Defendant to apply for an extension of the stay; (ii) after an initial "stay period" either party may elect to terminate the stay by written notice to the others without the requirement of seeking court involvement; (iii) the Court toll all applicable statutes of limitations between the parties to the litigation, the trusts and recipients of any distributions from the trusts; and (iv) an Order providing that in circumstances where a trustee has distributed assets from a trust, the Debtors will not seek monetary damages against the Trustee, but rather will look solely to the relevant Trust and those noteholders for any repayment determined to be due and payable.

(5) the public interest. *Wing Shing Products (BVI) Ltd. v. Simatelex Manufactory Co., Ltd.*, 2005 WL 912184, at *1 (S.D.N.Y Apr. 19, 2010). The objective is the avoidance of prejudice, and "[t]he party moving for a stay 'must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else.'" *Export-Import Bank of the United States v. Hi-Films S.A de C.V.*, 2010 WL 3743826, at *12 (S.D.N.Y. Sept. 24, 2010); (*Consol. Edison Co. v. United States*, 30 F.Supp.2d 385, 389 (S.D.N.Y. 1998) (declining to stay a declaratory judgment action upon balancing of factors).[3]

The Debtors' Motion fails on each account. The Debtors do not attempt to satisfy the balancing of factors set forth above. Rather, the Debtors' main argument is that if a stay is issued, the costs of litigation will be minimized and that a stay would allow for "settlement discussions." However, the prospect of "settlement discussions" is an empty justification, as parties to litigation can always engage in settlement discussions. In fact, the Trustee has been attempting to resolve issues with the Debtors since the commencement of the case. Often, the reverse is true, as the reality of costly and lengthy litigation often serves as a catalyst for a resolution of the dispute. Additionally, while litigating creditor-specific claims may be time consuming and expensive, this is not a reason to stay the case. As the district court has noted in analyzing justifications for granting a stay, "'[b]urdensome and oppressive' is a shibboleth of little value to this Court." *Walter v. Conner*, 1985 WL 2522, *1 (S.D.N.Y. 1985) (finding that stay of discovery may not be granted "without a strong showing of 'good cause'" and that conclusory claims of "inconvenience and expense" do not suffice.) Additionally, a lack of financial resources to litigate multiple suits generally does not demonstrate unfair prejudice.

---

[3] The first factor is irrelevant when the plaintiff requests a stay. *LaSala v. Needham & Co., Inc.*, 399 F.Supp.2d 421, 428 (S.D.N.Y. 2005).

*Export-Import Bank of the United States*, 2010 WL 3743826 at *13; *Paine, Webber, Jackson & Curtis, Inc., v. Malon S. Andrus, Inc.*, 486 F. Supp. 1118, 1119 (S.D.N.Y. 1980); *Motorola, Inc. v. Abeckaser*, 2009 WL 816343, at *2-3 (E.D.N.Y. 2009). A stay is particularly inappropriate here because the Debtors will have to respond separately to each defendant regarding the unique aspects of each transaction. Therefore, any stay will merely defer the costs that the parties will have to incur, and will only hinder the Trustee from adjudicating its claims.[4]

Additionally, the Court cannot grant a stay that does not terminate at a time certain. *See, e.g., Trujillo v. Conover & Co. Communications*, 221 F.3d 1262, 1265 (11th Cir. 2000) (also noting "the interests of judicial economy alone are insufficient to justify such an indefinite stay"). Defendant's proposed stay is indefinite in nature. Unless the Debtors decide to exercise their unilateral right to lift the stay, or a Defendant can show "good cause," the stay is permanent. As such, the stay could cause the beneficiaries of these transactions months or even years of delay. Here, the Trustee is in possession of billions of dollars that would be placed in judicial limbo if a stay is granted. Noteholders or certificateholders in many transactions have not received distributions for more than two years, and have been denied distributions that may be due them in the event the Debtors' legal position is determined to be incorrect. As described below, even if the Court overlooks the Debtors' failure to establish the factors required to obtain a stay, the substantial prejudice that the Trustee would suffer is sufficient to tip the balance in favor of denying a stay.

Finally, while each motion must be evaluated on its own merits, the Debtors attempt to point to several cases where stays were granted. However, none of these cases involved the

---

[4] Additionally, the reason the Debtors now confront so much litigation is that they chose to bring several "test cases" which presented the best opportunity for a favorable ruling, while waiting until several days before the statute of limitations expired to file claims against the Trustee. The fact that the Debtors face so much litigation at this stage of the case is entirely of their own making and they should not receive equitable relief on this basis.

sweeping relief sought by the Debtors.  *cf*. *In re Dephi Corp*., Case No. 05-44481 (RDD), ¶ 8-9 (Bankr. S.D.N.Y. Aug. 16, 2007) [Dkt. No. 9105] (stay terminated automatically upon service of summons and complaint, which had to be made by date certain); *In re Enron Corp*., *et. al*., Case No. 01-16034 (ALG) (Bankr. S.D.N.Y. May 5, 2004) (granting "temporary stay" relating to discovery only, not entire case); *In re Ames Dep't Stores, Inc*., Case No. 01-42217 (REG) Bankr. S.D.N.Y. Feb. 3, 2004) [Dkt. No. 2524] (unrelated to stay; extending service of process deadline only).  Rather, the Debtors' failure to identify any case where such a sweeping stay was granted suggests that such extraordinary relief is unwarranted under the circumstances.  When set against the backdrop of the prejudice described below that the Trustee may suffer, the motion should be denied.

## II. THE PREJUDICE TO THE TRUSTEE OUTWEIGHS ANY PURPORTED "JUDICIAL ECONOMY" OR "COST" SAVINGS

The Debtors take an extremely simplistic and overly optimistic view of the potential prejudice that defendants would suffer as a result of a stay.  They assert that there will be "no prejudice" to defendants and assert that they will actually "benefit from the Stay" because they will not have to expend resources for a defense. (*Motion* at 9.) However, this optimism is misplaced.  As described below, the Trustee will suffer significant prejudice if a stay is imposed, and the delay will provide the Debtors with a significant tactical advantage in the litigation.

### A. A Stay Would Prejudice the Trustee's Right to be Heard on Important Issues of Substantive Law

While this Court is vested with discretion to control its docket by staying a case under limited circumstances, such discretion is not unlimited.  In this case, the stay must be denied because the Trustee cannot be made to stand by while its rights are determined in another proceeding:

> The suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else. Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both.

*Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971); *see also Colorado River Water Conser. Dist. v. United States*, 424 U.S. 800, 817 (1976) (noting that Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them); *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) (reversing a stay where a pressing need was not shown and noting that district court had "paramount obligation to exercise jurisdiction timely in cases properly before it.")

Here, other than the litigation costs associated with litigation that they themselves commenced and some burden on the Court, the Motion fails to cite any hardship or inequity which the Debtors will suffer in being required to go forward. On the other hand, in addition to the economic harm which noteholders will suffer from a delay in resolution of these proceedings, the Trustee will also be denied an opportunity to present its own arguments to this Court as to the termination provisions at issue in the adversary cases. BNY and the Debtors should not alone define the Trustee's rights in another matter.

For example, in a Memorandum Decision Granting Motion for Summary Judgment and Declaring Applicable Payment Priorities in the adversary proceeding styled *Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services Limited*, Adv. Proc. No. 09-01242, this Court made legal determinations with respect to the scope of Sections 365(e)(1), 541(c)(1)(B) and 560 of the Bankruptcy Code. In analyzing BNY's argument, this Court noted that the *ipso facto* provisions of the Code -- sections 365(e)(1) and 541(c)(1)(B) -- prohibit modification by a provision conditioned on the commencement of *a case* under the Code and does not limit the definition of "case" to "*by or against the debtor*." The absence of this limiting

language, the court found, is significant. The court determined that the plain language of these provisions "of a case under the Code" does not refer to the commencement of a specific case, but rather presumably addresses any case that in some appropriate manner relates to the contracting parties. This Court recognized that this was a novel interpretation of these provisions. In addition, this Court made some findings with respect to the scope of the safe harbor provisions of Section 560 of the Bankruptcy Code. These findings came in the context of the facts and circumstances facing the Court in connection with that matter.

As of the date hereof, however, counterparties in many other transactions have not had the opportunity to have a judicial determination made with respect to similar provisions in their respective agreements. For example, several key questions remain, including whether the waterfall provisions are contained in the swap agreement, and the impact of when the Notice of Termination was given. The full extent of this Court's ruling (and perhaps the scope of appellate rulings) will not be fully explored if these Avoidance Actions are stayed. As noted in *Landis*, "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis*, 299 U.S. at 255. Defendants ought to be able to decide for themselves whether to agree to a stay of proceedings based upon the individual facts and circumstances of their situations.

### B. Defendants May Lose Critical Rights Against Third Parties if these Cases are Stayed and a Stay May Impede Discovery of Important Facts

The Debtors admit that the primary purpose of filing these Avoidance Actions at this time is to preserve their rights, if any, to challenge these provisions on the basis that they are somehow avoidable as preferences or fraudulent conveyances. However, in this instance, defendants may be prejudiced in at least three different additional ways as a result of the continued delay in the prosecution of these actions.

### 1. Delay in the Avoidance Actions May Make it More Difficult to Track the Recipients of any Allegedly Avoidable Transfers

It is very difficult to determine the beneficial holders of interest in public securities on a current time basis, let alone at earlier times. Many public securities are not directly held by the beneficial holder, but rather are held by The Depository Trust Company ("*DTC*") through its nominee, Cede & Co. Cede & Co. maintains lists of those DTC Participants that hold certain securities. Generally, however, these DTC Participants are not themselves the beneficial holders; rather, the true beneficial owners may yet be layers of levels of ownership away. While a trustee may also be the Registrar for the securities, its books and records generally only reflect the record holders of the securities - Cede & Co. While the Trustee may know the DTC Participant through DTC, it relies upon the DTC Participant and others down the "ownership" chain to communicate with holders, and often only knows the beneficial holders to the extent that the beneficial holders elect to identify themselves to the Trustee. In order to determine the ultimate recipient of a distribution, therefore, the Trustee would need to rely upon the records up and down this "ownership chain." The quality and existence of these records erodes over time, and the continual trading in these securities makes it increasingly difficult over time to know who held the security during the relevant time period. As a result, a stay on discovery may result in the Court being unable to identify the recipient of a given purportedly fraudulent transfer, and otherwise frustrate the Trustee's defenses. Under these circumstances, the stay should be denied. *Clinton*, 520 U.S. at 707-08 (denying stay where there was a "danger of prejudice resulting from the loss of evidence.")[5]

---

[5] Even the Debtors appear to recognize the reality of this prejudice. The Debtors are seeking an extension of the deadline to effect service because they cannot locate many of the noteholder defendants, and are requesting additional time to conduct third party discovery to attempt to ascertain the identity of the holders. (*Motion* at 10.)

### 2. A Stay May Negatively Impact the Claims of Defendants Against Third Parties, Both Legally and In Terms of Collection

More importantly, some of the Defendants in these Avoidance Actions may be intermediaries, and may not be the ultimate beneficiary of any of the distributions that are determined to be avoidable as fraudulent conveyances, preferences or otherwise. While it appears that the Debtors are only seeking declaratory relief and not money damages with respect to these intermediaries and the trusts they represent, as is appropriate under cases such as *In re Cveo Corp.*, 327 B.R. 210, 216 (Bankr. D.Del. 2005) (*citing Richardson v. I.R.S.* (*In re Anton Noll, Inc.*), 277 B.R. 875, 879 (1st Cir. BAP 2002)); *Rupp v. Markgraf,* 95 F.3d 936, 942 (10th Cir. 1996), the Trustee is concerned that the Debtors may attempt to hold intermediary trustees, and not merely the trusts, liable, for distributions that were made post-petition in reliance upon what was reasonably believed to be the state of the law with respect to the scope the *ipso facto* provisions of the Bankruptcy Code and the safe harbors for swap agreements contained therein. In the event that trustees or other Defendants serving as intermediaries are sought to be held monetarily liable to the Debtors, the Trustee believes that it and the trust would have claims against third party recipients of the distributions. A stay, then, may adversely affect the rights of trustees and other intermediaries to the extent that any statute of limitations that may be applicable to these claims expires while the claims asserted against the trustees remain dormant and/or stayed. Further, time only increases the risk of uncollectability of amounts determined to be due from third parties. Upon information and belief, some of these investors are themselves funds which make distributions to their investors.

### 3. A Stay of the Action and Discovery May Make it More Difficult for Defendants to Obtain Discovery of Relevant Facts in the Hands of Third Parties

In addition, delay in the prosecution of the Avoidance Actions may negatively impact the ability of the Defendants to obtain discovery in these proceedings. Two years has elapsed since

the filing of the voluntary petitions initiating these cases. The stay requested by the Debtors is of an indefinite duration. The determination of solvency, particularly if the determination date significantly precedes the petition dates, is a fact intensive determination. The availability and accessibility to documents held by third parties will erode over time, impeding Defendants' defenses.

### C.  The Avoidance Actions Should Instead be Expedited to Enable Investors to Receive Distributions

On and after September 15, 2008, the Trustee began the process of assessing the respective rights and interests of investors under the terms of the Indentures, Trust Agreements and swaps. In some instances it was determined that the swaps automatically terminated. In other cases it was determined that the Trustee had the right and the ability to terminate the swap. Some swaps required that a certain percentage of investors provide direction as to whether the swap should be terminated. Another category required the Issuer to terminate the swap. When the Debtors gave their November 25, 2008 notice to trustees with respect to their interpretation of the breadth of the automatic stay, the Trustee ceased its activities to terminate swaps, liquidate collateral or underlying assets and make distributions to investors. Further, the Debtors have not made any payments on any swaps since the date of the petitions. As a result there are a number of investors who have not received distributions of any kind on their investments since September 15, 2008. An indefinite stay of the Avoidance Actions may only serve to further delay distributions to Noteholders, and further harm the rights of others.[6]

---

6    In addition, a stay may increase the difficulty in defining and identifying those investors constituting the defendant class as a result of the deterioration in the quality of records in the hands of third parties. Determination of class Defendants ought to be promptly made. Delay leaves possible doubt with respect to putative class members.

### III. IN THE ALTERNATIVE, ANY ORDER IMPLEMENTING A STAY SHOULD BE AMENDED TO BE MORE FAIR AND EQUITABLE TO THE DEFENDANTS

In the event this Court determines that a stay of the Avoidance Actions is appropriate, the Trustee respectfully requests that the Order implementing the stay be amended in a number of respects: (i) the stay be granted for a definitive time period of no more than six months without prejudice to the Debtors' ability to apply for an extension of the stay pending; (ii) after an initial "stay period" either party may elect to terminate the stay by written notice without the requirement of seeking court involvement; (iii) the Court toll all applicable statutes of limitations among all parties related to the litigation, including all applicable certificateholders and noteholders; and (iv) an Order providing that in circumstances where a trustee has distributed assets prior to receiving the Debtors letter of November 25, 2008, the Debtors will not seek monetary damages against the trustees, but rather will look solely to the relevant Trust and the applicable certificateholders and noteholders for any repayment determined to be due and payable.

The stay, as proposed, is extremely one sided, providing the Debtors undue control over the terms and duration of the stay. The stay ought to be neutral relative to the Debtors and Defendants. The Trustee proposes that a definitive expiration date be included as part of the Order. This would provide some certainty to parties as to when they can expect the litigation to resume. As set forth in *Landis*, any stay must be of moderate duration, and will not pass muster merely because a court has the ability to undo the stay. *Landis*, 299 U.S. at 257 (a stay "is not to be upheld as moderate because conceivably the court that made it may be persuaded at a later time to undo what it has done.") In the event the Debtors or Defendants still believe a stay is necessary upon expiration, either party is free to apply to the Court to extend the stay. The Trustee suggests a stay of no longer than 180 days for the initial period.

In addition, the stay as proposed gives the Debtors the sole right to end the stay at any time. Again, in fairness to all parties, both the Defendants and the Debtors should have the right to terminate the stay after an initial period. Giving the Debtors the sole right to terminate provides undue leverage to the Debtors in efforts to settle the disputes. They can threaten to maintain the stay in perpetuity, denying investors access to money that may belong to them, or threaten the immediate termination of the stay and require Defendants to expend significant amounts of sums to defend their positions. Both sides should have an equal ability to terminate the stay.

As noted above, the Trustee is concerned about statutes of limitations that may exist in connection with reclaiming any judgment rendered against it from third party recipients of the benefits of any distribution determined to have been made inappropriately. In addition, the Trustee is concerned about any statute of limitations that might apply in connection with any counterclaims it may have against the debtors relating to these matters. Any Order must provide protections for the Defendants in connection with any limitations periods, including tolling any limitations periods during the duration of the stay and assuring that there will be no prejudice of any rights, claims or defenses of a trust or Defendant due to the imposition of a stay.

Finally, it appears that the Debtors are only seeking declaratory relief against trustees and not monetary relief from them individually. This would seem to be appropriate given that trustees are mere intermediaries in the distributions that were made. *See e.g., In re Cveo Corp.*, 327 B.R. 210, 216 (Bankr. D.Del. 2005) (citing *Richardson v. I.R.S. (In re Anton Noll, Inc.)*, 277 B.R. 875, 879 (1st Cir. BAP 2002)); *Rupp v. Markgraf* 95 F.3d 936, 942 (10th Cir. 1996). Many of the Trustee's issues can be resolved by simply providing in the Order that the Debtors are barred and prohibited from pursuing trustees in their individual capacities for any distributions made.

WHEREFORE, for all of the foregoing reasons, the Trustee respectfully requests that this Court deny the Motion in its entirety; but to the extent this Court implements a stay, condition the stay by: (i) staying the Avoidance Actions for a definitive time period of no more than six months without prejudice to the Debtors ability to apply for an extension of the stay pending; (ii) permitting any party to terminate the stay after an initial "stay period" by written notice without the requirement of seeking court involvement; (iii) tolling all applicable statutes of limitations between the parties to the litigation, and those limitations period relating to claims against third party beneficiaries of the distributions, and providing that the stay shall have no adverse affect on any right, claim, cause of action or defense of any trust or third party, and that the failure to assert such rights, claims, causes of action or defenses as a result of the stay shall not constitute a waiver or estoppel; and (iv) providing that in circumstances where the Trustee has distributed assets prior to receiving the Debtors letter of November 25, 2008, the Debtors are barred from seeking monetary damages against the Trustee, and may look solely to the relevant trust or the actual beneficiary of the distribution(s) for repayment.

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

DATED: October 13, 2010

                                      Respectfully submitted,

                                      U.S. BANK NATIONAL ASSOCIATION, not individually but as Trustee

                                      By: _____/s/ James M. Heiser_____
                                                  One of Its Attorneys

James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
(312) 845-3000

Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
(212) 655-6000

- 15 -