UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                                 :
In Re LHEMAN BROTHERS HOLDINGS     :     Case No. 08-13555
INC., *et al.*                                      :     (jointly Administered)
                                                                 :
           Debtors.                                    :
                                                                 :
-----------------------------------------------------------------x

**OPPOSITION OF MOSHE AND HANNA SHRAM TO DEBTORS'
FORTY-SECOND OMNIBUS OBJECTION TO CLAIMS
(LATE-FILED LEHMAN PROGRAMS SECURITIES CLAIMS)**

Moshe and Hanna Shram ("Shram"), through their counsel, Dan Shaked, Esq., a member of Shaked & Posner, submit this opposition to the Debtors' Forty-Second Omnibus Objection to Claims (Late-Filed Lehman Programs Securities Claims), and state as follows:

1. Debtors moved for an order disallowing and expunging the proof of claim filed by Shram, Claim Number 64621 in the amount of $785,000 (the "Claim"), on the grounds that it was filed beyond the November 2, 2009 bar date. Copy of Claim is annexed hereto as Exhibit A. Shram disagrees that the Claim was filed late and in the alternative state that even in the event that the Claim is determined to have been filed late, the reason for the delay was justified, there was no prejudice to the debtors, the length of the delay was *de minimis*, and Shram acted in good faith.

**BACKGROUND**

2. The background is summarized on the annexed Declaration of Jonathan Schwartz, Esq. ("Schwartz"), securities counsel to Shram (the "Schwartz Declaration"), a copy of which is annexed hereto as Exhibit B. Schwartz was retained by Shram to bring a claim against Israel Discount Bank of New York ("IDB") seeking to rescind the sale of a Lehman Brothers note.

1

Thereafter, in October, 2009, Schwartz attempted to prepare the Proof of Claim on behalf of Shram. It is undisputed that the deadline for filing this type of a claim was November 2, 2009.

3. Paragraph 3 of the Proof of Claim "required" the filer to "provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate for each Lehman Programs Security for which you are filing a claim . . ." and paragraph 4 of the Proof of Claim "required" the filer to "provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim . . ." (the "Proof of Claim Requirements").

4. Neither Schwartz nor Shram had access to this information. The only party that did have access to this information was IDB. IDB was represented by Allan N. Taffet ("Taffet") of the law firm of Duval & Stachenfeld, LLP. Schwartz made numerous attempts to obtain the Proof of Claim Requirements from Taffet, but Taffet, in complete bad faith, refused to provide this required information. As Schwartz was ethically forbidden from contacting IDB directly, he tried, without success, to use other means of obtaining this information. His continued requests for this information from Taffet were denied. All these efforts caused unwarranted delay in the filing of the Proof of Claim.

5. As the bar date was approaching, Schwartz was compelled to use the language that Taffet suggested. The Proof of Claim Requirements were responded with the following phrase: "Contact Israel Discount Bank of New York, 511 Fifth Avenue, New York, NY 10017." The Claim was henceforth completed and signed and was mailed on October 29, 2009. Schwartz was positive that it would be received on or before November 2, 2009 and disputes that it was

2

received only on November 4, 2009. Were it not for the failure of Mr. Taffett, Israel Discount Bank's attorney, to cooperate with Mr. Schwartz, the Proof of Claim would have been filed weeks earlier.

## ARGUMENT

I. **Proof of Claim Requires Various Identifying Information**

6. The Claim requires that the filer provide in paragraph 3 of the Claim "Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number" and in paragraph 4 of the Claim "Accountholders Eurclear Bank, Clearstream Bank or Other Depository Participant Account Number."  It was Schwartz's belief that without this information, the Claim may be defective or rejected on its face.  Schwartz made every possible effort to obtain this information but was thwarted by the bad faith of Taffet.

7. Section 105(a) of the Bankruptcy Code grants bankruptcy courts the equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. §105(a).  In particular, bankruptcy courts, as courts of equity, have the power to "sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate."  NCNB Tex. Nat'l Bank v. Jones (In re Jones), 966 F.2d 169, 173 (5th Cir. 1992).  "A bankruptcy court's powers under 11 U.S.C. §105 are broad."  In re Alexander's Inc., No. 95 Civ. 904 (LMM), 1996 WL 284907, at *1 (S.D.N.Y. May 30, 1996) (citing In re Jones).  If the Claim is disallowed or expunged in this case, an inequitable and unfair result would occur, namely the permanent disallowance of Shram's valid claim.

8. But for Taffet's bad faith withholding of vital information, there is no dispute that the Claim would have been filed earlier.

3

**II.     Proof of Claim is Presumed to have Arrived on Time**

9. The Claim was mailed on October 29, 2009 from Schwartz's office in Marina Del Rey, California to Lehman Brothers Holdings Claim Processor located at FDR Station, P.O. Box 5076, New York, NY 10150-5076. It is reasonable to assume that a letter from California to a Post Office Box in New York City would arrive in less than four (4) days.

10. Shram believes that the Claim may have in fact arrived at the Post Office Box on or before November 2, 2009, but that the Post Office Box was not emptied by the Claims Agent until November 4, 2009. The Debtor has provided no proof that the Post Office Box was in fact checked on November 2nd and that the Claim was not there.

11. In Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), the Supreme Court stated that "[t]he rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." This rule has been extended to the filing of a proof of claim in bankruptcy cases. See In re Pyle, 201 B.R. 547 (Bankr.E.D.Cal., 1996). The fact that the Claim was mailed on October 29, 2009 raises a rebuttable presumption of whether the Claim was timely received. See In re Numz Transp., Inc., 505 F2d 177 (7th Cir. 1974) and Matter of Kero-Sun, Inc., 63 B.R. 50 (Bankr.D.Conn. 1986).

12. Since the Claim was mailed on time and since the Debtor failed to rebut the presumption that it was actually received on time by failing to provide evidence that the Claim was not received on or before the Bar Date of November 2, 2009, the presumption is that the Claim was timely filed.

**III.     Claim Should be Allowed Under the Excusable Neglect Standard**

4

13. Bankruptcy Rule 9006(b)(1) authorizes the Court in its discretion to permit the filing of an untimely proof of claim where the delay is the result of "excusable neglect." See Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship., 507 U.S. 380 (1993).  In Pioneer, the Supreme Court stated that the excusable neglect standard is an "elastic concept" that "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." Id. At 392, 395.  Four factors should be considered in the excusable neglect analysis:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

See id. At 395.

14. Shram is familiar with this Judge's May 20, 2010 decision denying the Motion of seven (7) separate creditors who sought to file late proofs of claim (the "May 20 Decision") as well as the Judge's granting of the same relief to PB Capital Corporation and to Banesco Banco Universal (the "PB Capital and Banesco Ruling").  May 20, 2010 decision is annexed hereto as Exhibit C.  Shram believes that the facts and circumstances which led to its alleged late filed Claim are more in line with the facts of the PB Capital and Banesco Ruling than to the decision denying relief.

15. In the case at hand, the delay in filing the claim was not due to a mistake by an attorney or an agent or a miscommunication by and between any parties or advisors.  On the contrary, it was due to an intentional withholding of information vital to the preparation of an adequate proof of claim by the person in possession of such information.  The late filed Claim was not due to an oversight or inattention that was within the control of Shram or Schwartz.  On

5

the contrary, Schwartz made diligent efforts to try and obtain the Proof of Claim Requirements and his inability to obtain it was clearly beyond his control.

16. Shram and Schwartz made a conscientious endeavor to comply with the bar date by conducting the maximum diligence afforded under the circumstances. Due to the acts of a third party, the filing of thte Claim was subjected to unwarranted delay. Finally, as stated in the Schwartz Declaration, Schwartz realized that he had to choose between a possibly defective Proof of Claim or no Proof of Claim at all. At that point, the Claim was filed. It should be noted that even with all the hindrances, Schwartz was able to mail the Claim prior to the Bar Date.

### A. No Prejudice To The Debtor

17. The first Pioneer factor heavily weighs in favor of permitting the late filing of proofs of claim, as the delay in filing here does not jeopardize the success of the reorganization." Midland Cogeneration Venture Ltd., P'ship v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 130 (2d Cir. 2005) (internal citations and quotations omitted). First of all, it is still disputed whether the Claim, which was mailed on October 29, 2009 did in fact arrive on November 4, 2009, as is alleged. Even if it did in fact arrive on November 4, 2010, a delay of a mere 2 days of a claim of the size and nature of this Claim could not possible cause any prejudice to the Debtor. Secondly, no disclosure statement or plan was filed in this case on the date the Claim was filed. See e.g., In re Enron, 2003 WL 21756785, at *4 (permitting filing of nine-day-late proof of claim and finding no prejudice because claims review and reconciliation process was in early stages and no plan or disclosure statement had yet been filed); In re Infiltrator Sys., Inc., 241 B.R. 278, 281-282 (Bankr.D.Conn. 1999) (permitting late-filed claim because debtor had not yet proposed plan). Thirdly, Shram's Claim is inconsequential due to its size in comparison to the estate and to other creditors of the same class. See, In re Enron Corp., 419 F.3d at 130,

6

("[W]e agree with the observation that the [Supreme] Court must have had more in mind than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims . . . Otherwise, virtually all late filings would be condemned by this factor . . . .") (internal citations and quotations omitted). As there is no actual harm by allowing Shram to file a late proof of claim, any hypothetical harm that may be raised by the Debtors will not rise to the level of prejudice. See In re O'Brien Envtl. Energy, 188 F.3d 116, 127 (3d Cir. 1999).

18. Disallowing or expunging Shram's Claim would cause more harm to Shram than would its allowance. This is a unique situation caused by the intentional interference by a third party. The disallowance of the Shram claim would give effect to the bad faith efforts of Mr. Schwartz's adversary, in the claim he was asserting against Israel Discount Bank, the seller of the Lehman Bros. Note to Shram. Such a result should be seen as being against public policy. Also, it is inconceivable that the allowance of this minor claim would in any way prejudice the efficient administration of the estate. See In re Beltrami Enters., Inc., 178 B.R. 389, 392 (Bankr.M.D.Pa. 1994).

### B. Length of Delay is De Minimis

19. The second Pioneer factor also heavily weighs in favor of allowing the Claim. Schwartz was ready to file the Claim weeks before the deadline. But for the intentional withholding of the Proof of Claim Requirements, the Claim would have been filed long before the Bar Date.

As stated in the Schwartz Declaration, once it appeared that the required information would not be available through Mr. Taffett or otherwise, Schwartz completed the Claim and mailed it to the Debtors' Claims Agent. While Shram and Schwartz believe that there is a presumption that the Claim arrived on time, even if it did not, the delay of a mere 2 days is *de*

7

*minimis*. See, e.g., Pioneer, 507 U.S. at 398-99 (permitting filing proof of claim twenty days after the bar date); In re Enron, 2003 WL 21756785, at *5 (nine-day delay did not impact debtor's judicial proceedings); In re Sage-Dey, Inc., 170 B.R. 46, at 52-53 (Bankr.N.D.N.Y. 1994) (permitting filing of proof of claim six months after bar date); In re Beltrami, 178 B.R. at 392 (permitting filing a two-year late proof of claim).

### C.  Reasons for the Delay Justifiable

20. In Pioneer, the Court found that excusable neglect may extend to "inadvertent delays" and that it is "not limited strictly to omissions caused by circumstances beyond the control of the movant."  507 U.S. 392.  The Court also stated "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings cause by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control."  Id. at 388. Moreover, the extent to which a bar date order is unusual or outside of the ordinary is another factor that courts weigh in determining justification. Id. at 388.

21. Shram does not dispute that the Bar Date Order provides that the Claim be filed by November 2, 2009.  However, Shram does dispute that the Claim was filed late.  Even in the event that the Court determines that the Claim was in fact filed late, Shram submits that the delay is justifiable and excusable under the specific facts and circumstances of its case.  In this case, the alleged delay was caused by actions beyond the control of Shram or Schwartz, as is set forth above and in the Schwartz Declaration.  Had Taffet agreed to provide the information required in the Claim, this Claim would have been filed long before the Bar Date.  Schwartz made every possible effort to obtain the information required on the Claim without success, and filed it without the "required" information when it became clear that time was running out..

8

22. The facts here are distinguishable from the cases in which this Court disallowed the filing of a late proof of claim:

 a. <u>PSERS</u>: This creditor asked the Court to allow the filing of a late claim due to excusable neglect. In that case, there was a miscommunication between the creditor and its advisors. It was under the mistaken belief that the advisors filed a claim when in fact, no claim was filed. This Court ruled that the creditor had not made a sufficient showing of excusable neglect because "the miscommunication, carelessness or inattention to the guarantee claim was entirely within the control of PSERS and DB Advisors." <u>See</u> <u>May 20 Decision</u> at page 12. In the case at hand, the reason for the delay was beyond the control of Shram or Schwartz. To the contrary, it was with an adversarial third party;

 b. <u>Dynergy</u>: This creditor asked the Court to allow the filing of a late claim due to excusable neglect. In that case, the delay was the result of "oversight" or "inattention that was within the control of Dynergy and its counsel." <u>See</u> <u>May 20 Decision</u> at page 13. Again, in the case at hand, the reason for the delay was Taffet's intentional withholding of information necessary to prepare a proof of claim and was not due to oversight or inattention;

 c. <u>Tensor</u>: This creditor asked the Court to allow the filing of a late claim due to excusable neglect. In that case, the delay was caused by counsel's error and by overlooking certain facts. "Because this error was within the control of counsel for Tensor, Tensor has failed to demonstrate that the late filings should be allowed." <u>See</u> <u>May 20 Decision</u> at page 14. In the case at hand, it was counsel's diligent efforts that led to the Claim's eventual filing;

 d. <u>Pacific Life</u>: This creditor asked the Court to allow the filing of a late claim due to excusable neglect. In that case, the delay was caused by internal policies leading to a failure to coordinate, a lack of supervision or a mistake. <u>See</u> <u>May 20 Decision</u> at page 15. In the case at

9

hand, there was a single person making diligent effort to properly complete a proof of claim in a timely fashion;

e. <u>Seaport and BEKB</u>: These creditors asked the Court to allow the filing of a late claim due to excusable neglect. In those cases, the delay "resulted from a series of sequential errors, but these errors at all times were within the complete control of Seaport or BEKB." <u>See</u> <u>May 20 Decision</u> at page 17. In this case, again, the alleged delay was beyond the control of Shram or Schwartz; and

f. <u>Santa Fe and CVI</u>: These creditors asked the Court to allow the filing of a late claim due to excusable neglect. In those cases, the creditors argued that they were not aware that their claims existed. The Court denied the application because "[t]hese Movants, with the exercise of reasonable diligence, could have discovered the existence of the guarantee claims." <u>See</u> <u>May 20 Decision</u> at page 18. In the case at hand, Shram and Schwartz were aware of the claim and did everything in their powers to get the Claim filed in a timely basis. But for the acts of a third party intentionally attempting to hinder and delay the filing of the Claim, the Claim would have been filed on time.

23. In the above decisions, this Court appears to distinguish between claims that are filed late due to reasons within the control of the creditor and claims which are filed late due to reasons which are beyond the control of the creditor. In the case at hand, just like in the PB Capital and Banesco cases, the creditor conducted a reasonable amount of diligence, but in this case, even more so than in the PB Capital and Banesco cases, the delay in filing was clearly beyond the control of the creditor. Therefore, this case has a truly unusual and compelling circumstance which warrants the allowance of a late filed claim.

    D.    <u>Shram has Acted in Good Faith</u>

10

24. The circumstances of this filing demonstrate that Shram acted in good faith. Shram and their counsel, Schwartz, intended and planned in utmost good faith to file their claim in a timely fashion, as is evidenced by the Schwartz Declaration. Schwartz attempted to obtain the required information from Taffet long before the Bar Date and had no expectations that Taffet would attempt to intentionally hinder and delay the filing of the Claim. It was Schwartz's efforts and diligence that enable the Claim to be filed at all.

E.    **The Equities of the Case Favor the Allowance of the Claim**

25. The Supreme Court in Pioneer stated that the determination of excusable neglect is an equitable one. See Pioneer, 507 U.S. 395. Subsequent cases have made clear that the determination involves a balancing of several factors, no one of which is determinative. See Praedium II Broadstone, LLC v. Wall St. Strategies, Inc., 2004 U.S. Dist. LEXIS 23308 (S.D.N.Y. Nov. 18, 2004). Here, the balance of equitable factors weighs heavily in favor of Shram. Unlike many cases where a claim of "excusable neglect" has been rejected, there is no prejudice, there is no delay, and there can be no dispute as to the good faith of the movant. The only true question is how the Court should review and weigh the reason for the delay. Based on prior decisions of this Court and taking into consideration the specific and unique facts and circumstances of this case, as set forth in the Schwartz Declaration, the equities weigh heavily in favor of allowing this alleged late filed claim and denying the Debtors' motion to disallow or expunge the Claim.

**MEMORANDUM OF LAW**

26. Because the legal points and authorities upon which this Motion relies are incorporated herein, Shram respectfully requests that the requirement of service and filing of a

11

separate memorandum of law pursuant to Rule 9013-1(b) of Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, Shram respectfully requests that the Court deny the Debtors' Objection to the late-filed Claim of Shram, that Shram's Claim be deemed allowed and for such other and further relief as to this Court seems just and proper.

Dated: New York, New York
October 14, 2010

                      SHAKED & POSNER

                  By: /s/ Dan Shaked, Esq._____
                  DAN SHAKED (DS-3331)
                  *Attorney for Moshe & Hanna Shram*
                  255 W. 36th St., 8th Floor
                  New York, NY 10018
                  (212) 494-0035