# EXHIBIT C
## DECEMBER 23, 2009, APRIL 1, 2010, AND AUGUST 31, 2010 E-MAILS RECEIVED FROM LEHMAN TRANSMITTING DRAFTS OF THE TERMINATION AGREEMENT

CATHAY UNITED BANK'S RESPONSE IN OPPOSITION TO
DEBTORS' FORTIETH OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS) AS TO CLAIM NO. 35181
AND MOTION TO HAVE CLAIM NO. 35181 DEEMED TIMELY FILED – Page 14
DALDMS/686457.3

Exhibit C

| | |
|---|---|
| From: | Karjanis, Christine [christine.karjanis@lehmanholdings.com] |
| Sent: | Wednesday, December 23, 2009 8:43 AM |
| To: | Swick, R. Adam |
| Cc: | Payne, Sarah; Berg, Brian; Cahill, George |
| Subject: | Cathay United Bank Termination Agreement |
| Attachments: | Cathay United TA v2.DOC |

Hello Adam,

Please see the attached Termination Agreement for your review and execution. Should you have any questions/comments, please do not hesitate to contact me, otherwise, please sign and send back to me via email, an executed version of the Termination Agreement and Incumbency Certificate.

Thank you,
Christine

Christine Karjanis
Lehman Brothers
Derivatives Legal
1271 6th Avenue, 40th Floor
New York, NY 10020
(646) 285-9544

# LEHMAN BROTHERS

## TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of December 23, 2009, by and between CATHAY UNITED BANK ("Counterparty") and LEHMAN BROTHERS SPECIAL FINANCING INC. ("Lehman"), and LEHMAN BROTHERS HOLDINGS INC. ("Holdings") as credit support provider (each of the foregoing a "Party" and collectively the "Parties").

RECITALS:

WHEREAS, the Parties entered into one or more transactions (each a "Transaction") that were governed by an ISDA Master Agreement, dated as of August 2, 2007, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to acknowledge the maturity of each Transaction under the Agreement Documents and termination thereof in accordance with their terms.

WHEREAS, on December 16, 2008 the court having jurisdiction over the Bankruptcy Cases entered an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "December Order").

WHEREAS, as of the date hereof, the Parties have agreed a settlement amount in favor of Counterparty in the amount of $179,552.00 (the "Settlement Amount") in respect of the claims arising under the Agreement Documents.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Allowance of General Unsecured Claim.  In consideration of the termination of the Transaction under the Agreement Documents by Counterparty, Lehman and Holdings hereby agree to the allowance of general, unsecured claims against each of them in their respective chapter 11 cases (the "Claim Allowance") in favor of Counterparty in the amount of the Settlement Amount (the "Allowed Claims"), in full and complete satisfaction of all of the claims of Counterparty against Lehman, Holdings and any other debtor in the Bankruptcy Cases under the Agreement Documents and the Transactions thereunder; provided, however, that the aggregate recovery of Counterparty in respect of the Allowed Claims shall not exceed the Settlement Amount. Counterparty agrees, promptly after this Termination Agreement becomes effective, to amend any filed Proofs of Claim and the related Derivative Questionnaires (in each case, as defined in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "Bar Date Order") entered in the Bankruptcy Cases on July 2, 2009) in respect of the Agreement Documents against Lehman, Holdings and any other Debtor (as defined in the Bar Date Order) to the extent necessary to reflect the entry into this Termination Agreement and Claim Allowance and, pending such amendments, such Proofs of Claim and related Derivative Questionnaires shall be deemed so amended.

Section 2.    Release.  In consideration of each other Party's execution of this Termination Agreement and the Claim Allowance, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, other than the Allowed Claim and the rights and obligations of the Parties set forth under this Termination Agreement, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.

Section 3.    Representations.  Each Party represents and warrants to each other Party that (i) the execution, delivery, and performance by such Party of this Termination Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party and (ii) this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Agreement Documents or this Termination Agreement, and (vii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown.  Additionally, Lehman and Holdings represent and warrant to Counterparty that this Termination Agreement is being entered into in accordance with the terms of the Order.  The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into the Termination Agreement.  Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement. These representations and warranties shall survive the execution of this Termination Agreement indefinitely without regard to statutes of limitations.

Section 4.    Setoff.  Counterparty agrees that it will not, nor will the Counterparty permit any affiliate or third party to set-off, recoup, appropriate, or otherwise apply any deposits (general, special, time or demand, provisional or final) in any currency, or any other credits, indebtedness or claims, in any currency, whether direct or indirect, absolute or contingent, matured or unmatured, that are held or owing by the Counterparty or any third party or affiliate against the Allowed Claims and Counterparty hereby irrevocably and unconditionally waives any and all rights to do so, whether such rights arise by virtue of contract or law.

Section 5.    Execution in Counterparts.  This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one

2

EM ID No.: 012507CATH

Exhibit C

and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 6.    Effectiveness.    This Termination Agreement shall become effective upon execution hereof by each of the Parties. The Transactions that are not already terminated according to their terms will terminate as of the effective date of this Termination Agreement.

Section 7.    Governing Law/Jurisdiction.    This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The court having jurisdiction over the Bankruptcy Cases shall have exclusive jurisdiction over any action or proceeding with respect to this Agreement, and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 8.    Special Provision for Unknown Claims.    All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 2. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 9.    Confidentiality.    Counterparty shall not disclose this Termination Agreement or its terms, including the Settlement Amount ("Confidential Information"), to any person other than to its directors, officers, employees, counsel, other advisors and potential assignees (provided that, prior to any disclosure, such potential assignees have executed with Counterparty a confidentiality agreement the terms of which are no less restrictive than the terms of this Confidentiality provision) (hereinafter, collectively, the "Related Parties"), in each case who need to know such information solely for the purpose of effecting this Termination Agreement or, in the case of a potential assignee, solely for the purpose of effecting an assignment of the Allowed Claims (it being understood that such Related Parties will be informed in advance of the confidential nature of the Confidential Information and will be directed maintain the confidentiality of such Confidential Information), except as may be required by law, including but not limited to as may be required by United States federal securities and bankruptcy laws. Counterparty agrees that, when it enters into a confidentiality agreement with respect to Confidential Information, it shall promptly provide Lehman a copy of said agreement.

If Counterparty or any Related Party becomes legally obligated (whether by court or regulatory order or otherwise), other than due to compliance with United States federal securities or bankruptcy laws, to disclose any of the Confidential Information, Counterparty or such Related Party, as the case may be, will promptly provide Lehman, if permitted by law, with notice of such proposed disclosure so that Lehman may seek a protective order or other appropriate remedy. If such a protective order or other protective remedy is not obtained, Counterparty or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and Counterparty or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

3

EM ID No.: 012507CATH

Exhibit C

Section 10.    <u>Successors and Assigns</u>.  The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 11.    <u>Amendment</u>.  This Termination Agreement may be amended, modified, superseded or canceled and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 12.    <u>Entire Agreement</u>. This Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersede all prior agreements and understandings relating to the subject matter hereof.

Section 13.    <u>Construction</u>. This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

*[Signature pages follow]*

4

EM ID No.: 012507CATH

Exhibit C

# LEHMAN BROTHERS

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

**CATHAY UNITED BANK**

By: _____
Name:
Title:

**LEHMAN BROTHERS SPECIAL FINANCING INC.**

By: _____
Name:
Title:

**LEHMAN BROTHERS HOLDINGS INC.**

By: _____
Name:
Title:

6

| | |
|---|---|
| From: | Berg, Brian [brian.berg@lehmanholdings.com] |
| Sent: | Thursday, April 01, 2010 8:32 AM |
| To: | Swick, R. Adam |
| Cc: | Payne, Sarah; Karjanis, Christine; Hunt, Warren M. |
| Subject: | Cathay TA |
| Attachments: | Cathay United TA v4.DOC |

Hi Adam,

Please find the Termination Agreement for Cathay United attached to this email for your review and execution.

Thank you,

Brian Berg
Lehman Holdings
646-285-9534


Confidentiality Notice: The contents of this email, all related responses and any files and/or attachments transmitted with it are CONFIDENTIAL and are intended solely for the use of the individual or entity to whom they are addressed. This email may contain legally privileged or confidential information and may not be disclosed or forwarded to anyone else without authorization from the originator of this email. If you have received this email in error, please notify the sender immediately and delete all copies from your system.