| | |
|---|---|
| REED SMITH LLP<br>599 Lexington Avenue<br>New York, NY 10022<br>Tel: (212) 521-5400<br>Fax: (212) 521-5450<br>Andrea J. Pincus<br>John L. Scott<br>Han J. Ahn | Hearing Date and Time:<br>October 27, 2010 at 10:00 a.m. (Eastern) |

*Counsel to Banco di Napoli S.p.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | Refers to Dkt. No. 11308 |
| | : | |

**OPPOSITION OF BANCO DI NAPOLI S.P.A. TO**
**DEBTORS' FORTY-THIRD OMNIBUS OBJECTION TO CLAIMS**
**(LATE-FILED LEHMAN PROGRAMS SECURITIES CLAIMS)**

Banco di Napoli S.p.A ("Banco di Napoli"), by and through its undersigned counsel, submits this Response in Opposition to the Debtors' Forty-Third Omnibus Objection to Claims (Late-Filed Lehman Programs Securities Claims) (Docket No. 11308), and states as follows.

**I.    FACTUAL BACKGROUND**

(a)    *Case Background*

1.    On September 15, 2008, Lehman Brothers Holdings Inc. ("LBHI"), commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On September 15, 2008 or periodically thereafter, certain of LBHI's

subsidiaries (collectively with LBHI, the "Debtors") also commenced voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors have been authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the bankruptcy Code.

2.       On September 17, 2008, pursuant to section 1102(a) of the Bankruptcy Code, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors.

3.       On July 19, 2009, the U.S. Trustee appointed Anton R. Valukas as Examiner (the "Examiner") in the above-captioned 11 cases, which appointment was approved by order, dated January 20, 2009 (Docket No. 2583). On or about March 11, 2010, the Examiner filed his report (Docket No. 7531) pursuant to section 1106(b) of the Bankruptcy Code.

(b)      *The Securities Programs Bar Date and Banco di Napoli's Proof of Claim*

4.       On July 2, 2009, this Court entered an order establishing the procedures and deadlines for filing proofs of claims in the Debtors' chapter 11 cases (Docket No. 4271) (the "Bar Date Order"). The Bar Date Order provided, in pertinent part, that all claims against the Debtors arising from securities on the Lehman Programs Securities list[1] must be filed on or before November 2, 2009 (the "Securities Programs Bar Date").

5.       Once Banco di Napoli learned of the Securities Programs Bar Date, Banco di Napoli diligently began preparation of the Securities Programs proof of claim (Claim Number

---

[1] As noted in the Bar Date Order, a "Lehman Program Security" refers to securities issued by the Debtors or any of the Debtors' affiliates outside of the United States as identified on http://www.lehmandocket.com under the heading "Lehman Programs Securities." Bar Date Order at p. 12.

65266) (the "LPS Proof of Claim") at issue.  *See* Affidavit of Giustino Vincenzo in Support of the Opposition of Banco di Napoli to Debtors' Forty-Third Omnibus Objection to Claims (the "Vincenzo Aff.") at ¶ 3.

6. On October 22, 2009, Banco di Napoli completed preparation of the LPS Proof of Claim, which asserts a claim in the amount of $111,447.67 arising from certain types of bonds covered by the Lehman Programs Securities List.  Id. at ¶ 4.

7. In compliance with the Bar Date Order, on October 23, 2009, Banco di Napoli submitted the completed LPS Proof of Claim to its mailroom for delivery to Epiq Bankruptcy Solutions, LLC, as evidenced by a stamped delivery request receipt (the "Delivery Request Receipt").[2]  Id. at ¶ 5.  For some unforeseen reason, the LPS Proof of Claim was not actually received by Poste Italiane S.p.A. ("Poste Italiane"), the official government-owned postal service of Italy, until October 27, 2009.  Id. at ¶ 6.

8. In connection with the LPS Proof of Claim mailing, Banco di Napoli requested a return receipt (the "Return Receipt") so that it would have the ability to track the package.  Id. at ¶ 7.  A true and correct copy of the Return Receipt is attached to the Vincenzo Aff. as "Exhibit B."

9. On September 13, 2010, the Debtors filed their Forty-Third Omnibus Objection to Claims (Late-Filed Lehman Programs Securities Claims) (the "Omnibus Objection").  By the Omnibus Objection, the Debtors request, inter alia, that Banco di Napoli's LPS Proof of Claim be disallowed and expunged.  See Omnibus Objection at p. 2, ¶ 1.

10. Specifically, the Debtors allege that the LPS Proof of Claim was actually received on November 9, 2009, in violation of the Bar Date Order, which set the Securities Programs Bar

---

[2] A true and correct copy of the Delivery Request Receipt is attached to the Castagna Aff. as "Exhibit A".

Date to November 2, 2009. See id. at p. 6, ¶¶15-16; see also Exhibit A to Omnibus Objection at p. 4.

11. On or about October 5, 2010, Banco di Napoli received the Omnibus Objection.

## II. ARGUMENT

12. Bankruptcy Rule 9006(b) provides, in pertinent part:

> [W]hen an act is required or allowed to be done at or within a specified period…by order of court, the court for cause shown may at any time in its discretion…(2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. Bankr. R. 9006(b)(1).

13. Thus, a bankruptcy court may allow a proof of claim that is received after the bar date where the claimant's neglect is excusable. The United States Supreme Court has held that a determination of whether to allow a late claim under Rule 9006(b)(1) "is an equitable one, taking account of all relevant circumstances surrounding the party's omission." Pioneer Inv. Servs. Co. v. Brunswick Assocs. LP, 507 U.S. 380, 395 (1993). The Supreme Court set forth the following factors which should be considered in determining whether a claimant's late proof of claim should be allowed: (i) the danger of prejudice to the debtor; (ii) the length of delay and its potential impact on judicial proceedings; (iii) the reason for the delay, including whether it was in the reasonable control of the movant; and (iv) whether the movant has acted in good faith. Id.

14. In the case at bar, an application of the Pioneer factors compels the conclusion that the LPS Proof of Claim should be allowed.

15. First, there is a complete absence of prejudice here to the Debtors in allowing the LPS Proof of Claim. As noted above, in the LPS Proof of Claim, Banco di Napoli asserts a claim in the amount of $111,447.67. To put this amount in perspective, one only needs to take a quick glance at the State of the Estate report prepared by LBHI's financial advisors to see that

approximately $860 billion in total claims have been filed against LBHI.  Also, it is clear that the claims resolution process is far from complete, so it is difficult to see how a one-week delay in the receipt of the LPS Proof of Claim has prejudiced the Debtors or their creditors.  Moreover, because no confirmable plan has been finalized, the inclusion of Banco di Napoli's claim would in no way jeopardize the Debtors' attempt to reorganize.  See In re Sacred Heart Hosp. of Norristown, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995) (finding that because request to file late claim was made prior to confirmation of debtor's liquidating plan, the danger of prejudice to the debtor and a negative impact upon the bankruptcy proceedings was "practically nil").

16.    For similar reasons, the insignificant one-week delay in the receipt of the LPS Proof of Claim has not had, and will not have, any effect on the administration of the Debtors' cases.  See, e.g., In re Hillsborough Holdings Corp., 172 B.R. 108, 111 (Bankr. M.D. Fla. 1994) (holding that "with confirmation months away, and the prospect of litigating claims continuing beyond confirmation, granting an extension will not diminish [] this Court's ability to efficiently administer this Chapter 11").

17.    Moreover, Banco di Napoli's efforts in delivering the LPS Proof of Claim to the Debtors were reasonable under the circumstances.  Indeed, this is far from the case where a creditor willfully flaunts the bar date.  Upon receiving notice of the Securities Programs Bar Date, Banco di Napoli promptly commenced preparation of the LPS Proof of Claim, which it completed on October 22, 2009.  Vincenzo Aff. at ¶ 3.  On the very next day, and almost two weeks prior to the Securities Programs Bar Date, Banco di Napoli promptly took actions to commence the delivery of the LPS Proof of Claim to the Debtors, in full compliance with the Bar Date Order.  Id. at ¶ 5.  Given that the Securities Programs Bar Date was not until November 2, 2009, Banco Napoli had every reason to believe that the LPS Proof of Claim would be delivered

timely. However, due to postal service delays beyond the control of Banco di Napoli, id. at ¶ 6, the LPS Proof of Claim allegedly did not reach the Debtors until November 9, 2009, a week past the Securities Programs Bar Date.

18.  Accordingly, although Banco di Napoli took diligent steps to ensure timely delivery of the LPS Proof of Claim, an apparent delay with both the internal mailroom and the Italian international postal service, which was beyond Banco di Napoli's knowledge or control, resulted in the LPS proof of claim arriving with the Debtors after November 2, 2009.[3]

19.  Finally, there is no question that Banco di Napoli acted in good faith in filing its LPS Proof of Claim, and there is no suggestion from the Debtors otherwise. The Debtors do not (and cannot) point to any ulterior motive that Banco di Napoli may have had in filing a late proof of claim. Simply put, Banco di Napoli acted in good faith and any delay in the LPS Proof of Claim was certainly unintentional and due to excusable neglect, if any.

20.  Based on the foregoing, this Court should exercise its broad discretion in rejecting the Debtors' attempt to have Banco di Napoli's valid claim disallowed and expunged based on their minimally delayed receipt of the LPS Proof of Claim.

### III. CONCLUSION

WHEREFORE, Banco di Napoli respectfully requests that this Court (i) deny the relief requested in the Omnibus Objection to the extent Debtors seek entry of an order disallowing and expunging the claim of Banco di Napoli related to its LPS Proof of claim; and (ii) grant such other and further relief as is just and proper.

---

[3] It is worth noting that other Italian creditors experienced similar unexpected delay issues with Poste Italiane's delivery services around the same time as Banco di Napoli. See, e.g., Response of Bianco Graziella (Docket No. 11834) (arguing that although proof of claim was mailed on October 22, 2009 using Italian postal services, the Debtors did not receive the claim until November 23, 2009); Response of Chierichetti Augusto (Docket No. 11832) (arguing that although proof of claim was mailed on October 16, 2009 using Italian postal services, the Debtors did not receive the claim until November 18, 2009).

Dated: October 15, 2010
New York, New York

Respectfully Submitted,

By: */s/ Andrea J. Pincus*
Andrea J. Pincus
John L. Scott, Jr.
Han J. Ahn
REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Counsel to Banco di Napoli S.p.A.*

TO:

Chambers of Honorable James J. Peck
One Bowling Green, Courtroom 601
New York, New York 10004

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention:    Shai Y. Waisman, Esq.

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attention:    Andy Velez-Rivera, Esq.
              Paul Schwartzberg, Esq.
              Brian Masumoto, Esq.
              Linda Riffkin, Esq.
              Tracy Hope Davis, Esq.

Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005
Attention:    Dennis F. Dunne, Esq.
              Dennis O'Donnell, Esq.
              Evan Fleck, Esq.