**Hearing Date and Time: October 27, 2010 at 10:00 a.m.**

Michael H. Torkin (MT-5511)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone:  (212) 848-4000
Facsimile:  (212) 646-8283

*Attorneys for Ontario Teachers' Pension Plan Board*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
:
In re:                                          :    Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*, :    Case No. 08 – 13555 (JMP)
:
Debtors.                  :    (Jointly Administered)
:
:
------------------------------------------------------------x

**RESPONSE OF ONTARIO TEACHERS' PENSION PLAN
BOARD TO THE DEBTORS' FORTIETH OMNIBUS
OBJECTION TO CLAIMS (LATE-FILED CLAIMS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Ontario Teachers' Pension Plan Board ("**OTPPB**") hereby submits this response to the Debtors' Fortieth Omnibus Objection to Claims (Late-Filed Claims) [Docket No. 11305] (the "**Claims Objection**"), and in support thereof, respectfully represents as follows:

**Preliminary Statement**

        1.     By the Claims Objection, Lehman Brothers Holdings, Inc. ("**LBHI**") and its affiliated debtors in the above-captioned cases (together, the "**Debtors**") seek entry of an order disallowing and expunging certain specified claims, including Claim No. 65647

NYDOCS03/914971.5

(the "**LBF Guarantee Claim**") on the basis that it was filed untimely.[1] As described below, the circumstances surrounding the delay in filing the LBF Guarantee Claim satisfy the excusable neglect standard, and therefore, OTPPB respectively requests that this Court deem the LBF Guarantee Claim to have been timely filed.

2. The LBF Guarantee Claim arose as a result of LBHI's guarantee of an ISDA Master Agreement entered into between OTPPB and Lehman Brothers Finance S.A., a Swiss entity ("**LBF**") and affiliate of LBHI. Given the multijurisdictional nature of the transaction with LBF, the existence of the Guarantee (defined below) was unfortunately overlooked. There was no nefarious or ulterior motive behind the tardy filing. On the contrary, OTPPB respectfully submits that it at all times acted in good faith in an effort to timely file the LBF Guarantee Claim.

3. Understandably, the importance of the establishment of a bar date is to provide a debtor with certainty as to the universe of claims against it, so that the debtor can begin its claims reconciliation process effectively and emerge from chapter 11 in an expedited and efficient manner. In these circumstances, OTPPB respectively submits that permitting it to assert the LBF Guarantee Claim against LBHI will not impede this important goal.

4. First, the LBF Guarantee Claim was filed as promptly as practicable once OTPPB became aware of its existence – a mere 59 days after the bar date, thereby providing LBHI with ample time and opportunity to incorporate the LBF Guarantee Claim into its claims reconciliation process. Moreover, OTPPB proactively reached out to the Debtors in January 2010 in an attempt to resolve all of its claims against the Debtors, including the LBF Guarantee Claim, and those settlement discussions have been ongoing.

---

[1] The Claims Objection lists Lehman Brothers Special Financing Inc. ("**LBSF**") as the debtor under the LBF Guarantee Claim. OTPPB does not oppose the Claims Objection for this reason, but notes for clarification that the OTPPB Claim was filed against LBHI.

2

5.  Second, as this Court is well aware, these proceedings are some of the largest and most complex bankruptcies in history. OTBBP understands that over $830 billion of claims have been filed against the Debtors. Accordingly, the approximate $12.6 million asserted value of the LBF Guarantee Claim is nominal in comparison to the unprecedented number and amount of claims asserted against the Debtors. Due to its relative size, permitting OTPPB to assert its Guarantee against LBHI will have virtually no impact on any eventual distributions to LBHI's other creditors. Moreover, OTPPB is no way attempting to derogate from LBHI's right to object to the amount or other merits of the LBF Guarantee Claim; rather, it is simply requesting that this Court permit it to assert the claim against LBHI.

6.  Clearly this is not a situation in which a creditor failed to file a timely proof of claim for strategic purposes. OTPPB at all times consciously endeavored to comply with the Bar Date Order (defined below) and acted in good faith. This Court's indulgence in concluding that the circumstances at hand satisfy the excusable neglect standard is rooted in its equitable powers. OTPPB respectfully submits that these circumstances warrant such a finding, and the principals of equity and fundamental fairness weigh in favor of deeming the LBF Guarantee Claim to have been timely filed.

**Background**

7.  As discussed, prior to the Debtors' bankruptcy proceedings, OTPPB and LBF entered into that certain ISDA Master Agreement dated November 1, 2000 (as amended, supplemented or modified, and together with all schedules, annexes and exhibits thereto and all confirmations exchanged pursuant to transactions entered into in connection therewith, the "**Master Agreement**").

8.  On December 14, 2000, LBHI unconditionally and irrevocably guaranteed

3

to OTPPB the due and punctual payment of all amounts payable by LBF under the Master Agreement when such amounts become due and payable (the "**Guarantee**").

9. Beginning on September 15, 2008 and periodically thereafter, the Debtors, including LBHI, commenced before this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

10. LBHI's bankruptcy filing constituted an Event of Default, as that term is defined in section 5(a) of the Master Agreement, and on September 16, 2008, OTPPB sent LBF a notice of Early Termination in accordance with section 6 of the Master Agreement.

11. On or about September 30, 2008, the Swiss Federal Bank Commission exercised regulatory authority over LBF, and ultimately appointed PricewaterhouseCoopers AG, Zurich ("**PWC**") as liquidator of LBF in Switzerland (the "**Swiss Proceedings**").

12. On October 3, 2008, LBF filed a voluntary petition under chapter 11 of the Bankruptcy Code before this Court.

13. On February 10, 2009, PWC, in its role as the bankruptcy liquidator and putative foreign representative of LBF, filed a chapter 15 proceeding and simultaneously sought the dismissal of LBF's chapter 11 case. On March 12, 2009, this Court entered orders dismissing LBF's chapter 11 proceedings and recognizing the Swiss Proceedings as foreign main proceedings.

14. On July 2, 2009, this Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the

4

Proof of Claim Form [Docket No. 4271] (the "**Bar Date Order**") establishing September 22, 2009 (the "**Bar Date**") as the deadline for filing proofs of claim against the Debtors.

15. In addition to the LBF Guarantee Claim that is the subject of the Claims Objection, OTPPB has other claims against the Debtors. OTPPB properly and timely filed Claim Nos. 27468 and 27469 (the "**LBSF Derivatives Claim**s") against LBHI and LBSF, respectively. Additionally, OTPPB filed a proper and timely claim (together with the LBF Guarantee Claim, the "**LBF Derivatives Claims**") in the Swiss Proceedings against LBF as primary obligor under the Master Agreement.

16. Prior to the expiration of the Bar Date, despite its good faith effort to timely file all claims against the Debtors, OTPPB and its counsel were mistaken about the existence of the Guarantee. Given the principal obligation under the Master Agreement was owed by LBF, a Swiss entity, Swiss counsel was involved in filing a claim in the Swiss Proceedings. Unfortunately, due to confusion among OTPPB and Shearman & Sterling LLP, the existence of the Guarantee was not discovered until after the Bar Date. As soon as the existence of the Guarantee was discovered, OTPPB and its counsel promptly prepared the required documentation, and on November 20, 2009, filed the LBF Guarantee Claim.

17. Since January 2010, OTPPB and the Debtors have been actively attempting to resolve the LBSF Derivatives Claims, as well as the LBF Derivatives Claims, including the LBF Guarantee Claim.

18. On September 13, 2010, the Debtors filed the Claims Objection, seeking, among other things, to disallow the LBF Guarantee Claim as untimely.

5

**Argument**

**The Claim Objection Should be Denied Because the Delay in Filing Was the Result of Excusable Neglect**

19. Bankruptcy Rule 9006(b)(1) permits this Court to treat a late-filed claim as timely where the delay in filing is the result of excusable neglect. The Supreme Court has held that neglect encompasses inadvertence, mistake, or carelessness in addition to intervening circumstances beyond the party's control. *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380, 392, 395 (1993). Whether such neglect is excusable is determined by "taking account of all relevant circumstances surrounding the party's omission." *Id*. at 395.

20. The *Pioneer* court enumerated the following four factors for consideration in determining whether a delay constitutes excusable neglect: (1) the danger of prejudice to the debtor; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the claimant; and (4) whether the claimant acted in good faith. *Id*.

21. All of the *Pioneer* factors need not weigh in favor of the party seeking relief. For example, relief can be granted where the court finds against the claimant as to the reason for the delay *See In re Enron Corp.*, No. 01-16034, 2003 WL 21756785, at *4, *6 (July 30, 2003 Bankr. S.D.N.Y.) In *Enron*, although the court found the claimant's reason for delay in filing its proof of claim was unsatisfactory, the court nevertheless deemed the claim timely filed because doing so did not prejudice the debtor, the length of the delay was minimal, and the creditor acted in good faith. *Id*. at *6. The facts in the instant case, when analyzed in light of the *Pioneer* factors, demand the same result.

I. **There is No Danger of Prejudice to the Debtors**

22. The first *Pioneer* factor considered is whether the deeming the LBF

6

Guarantee Claim to be timely filed will prejudice the Debtors. OTPPB respectfully submits that doing so will in no way prejudice the Debtors or imperil their prospects for a successful reorganization. There is no danger of prejudice to a debtor where the claim "is not substantial in relation to the rest of the claims filed against the [d]ebtor's estate. *In re XO Communications*, 301 B.R. 782, 797 (Bankr. S.D.N.Y. 2003). These proceedings are some of the largest and most complex bankruptcies in history. OTPPB understands that over $830 billion worth of claims have been filed against the Debtors. The approximate $12.6 million asserted value of the LBF Guarantee Claim is nominal when compared to the unprecedented volume of claims asserted against the Debtors.

23. Due to its relative size, determining that the LBF Guarantee Claim was timely filed will have virtually no impact on any eventual distributions to other creditors. To the extent that the ultimate allowance of the LBF Guarantee Claim does dilute the assets available for distribution to other creditors, "a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims" does not constitute prejudice. *In re Enron*, 419 F. 3d 115, 130 (2d Cir. 2005) (citing *In re R.H. Macy & Co., Inc.*, 166 B.R. 799, 802 (S.D.N.Y)).

24. Furthermore, due to the size and complexity of the Debtors' cases, in which more than 65,000 claims were filed, claims reconciliation will continue in the months and years to come. As evidenced by the dozens of omnibus claims objections the Debtors have filed in the last month alone, the claims reconciliation process continues to be on-going. The settlement discussions which began in January 2010 and the Claims Objection itself, the first related to late-filed claims, indicates that the Debtors had notice of the LBF Guarantee Claim and are only now, nearly a year after its filing (and nine months after the commencement of settlement discussions), seeking to expunge the claim on the basis that it was filed untimely.

7

These circumstances demonstrate that deeming the LBF Guarantee Claim to have been timely filed will have no impact on the administration of these cases. Additionally, the Debtors also will retain all rights to object to the amount and other merits of the LBF Guarantee Claim.

25. The Debtors will suffer no actual harm if the LBF Guarantee Claim is not expunged. Any hypothetical harm that may be alleged by the Debtors cannot rise to the level of prejudice. *In re O'Brien Envtl. Energy*, 188 F.3d 116, 127 (3d Cir. 1999) (stating that "a finding of prejudice should be a conclusion based on facts in evidence"). The instant facts indicate that no harm will come to the Debtors by deeming the LBF Guarantee Claim to have been timely filed.

## II.     The Length of the Delay is *De Minimis*

26. The next *Pioneer* factor to be considered is the length of the delay in filing the proof of claim. The LBF Guarantee Claim was filed a mere 59 days after the Bar Date, providing the Debtors with ample time to incorporate it into the reconciliation process, as evidenced by the Claims Objection itself. As discussed above, the Court's discretion not to expunge the LBF Guarantee Claim causes no prejudice to estate and does not in any way disrupt judicial administration of these cases.

27. Furthermore, a 59-day delay is *de minimis*, particularly in light of the extended time frame on which a case of this magnitude operates. *See Collezione Europa USA, Inc. v. Dugan (In re Rhodes)*, No. 04-78434, 2007 WL 7143074, at *5 (Bankr. N.D. Ga. Dec. 18, 2007) (allowing a claim filed eight months after the bar date); *In re Sage-Dey*, 170 B.R. 46, 52-53 (Bankr. N.D.N.Y. 1994) (allowing a claim that was filed 6 months after the bar date); *In re Beltrami Enters.*, 178 B.R. 389 (Bankr. M.D. Pa. 1994) (allowing a claim filed two years after the bar date).

8

**III.    The Reason for the Delay is Justifiable**

28.    This Court has found the third prong of the *Pioneer* test to be a "central focus" in determining whether a claimant has established excusable neglect. *See* Memorandum Decision Denying Motions for Leave to File Late Claims, dated May 20, 2010 [Docket No. 9150] (the "**Memorandum Decision**"). In those circumstances where this Court has found excusable neglect, claimants have "consciously endeavored to comply with the bar date and established that their delay was the result of justifiable confusion over the application of the bar date to their particular claims." (Memorandum Decision p. 19.) OTPPB has at all times made every effort to act in accordance with this Court's Bar Date Order. *See* Declaration of Michael H. Torkin in Support of Response of Ontario Teachers' Pension Plan Board Response to the Debtors' Fortieth Omnibus Objection to Claims (the "**Torkin Declaration**"), dated October 18, 2010, ¶¶ 12-16, attached hereto as Exhibit A. It was only as a result of confusion regarding the applicability of the Bar Date to claims arising out of the Master Agreement that OTPPB failed to timely file the LBF Guarantee Claim.

29.    Furthermore, excusable neglect is not "limited strictly to omissions caused by circumstances beyond the control" of the claimant, but also encompasses inadvertent delays. *Pioneer*, 507 U.S. at 392. The fact that a claimant may have been careless is not enough to support denial of its claim. *In re Garden Ridge Corp.*, 348 B.R. 642, 647 (Bankr. D. Del. 2006) (stating that "[a]lthough [the claimant] was careless in its obligation to file its claim by the deadline, that fact standing alone does not support the denial of its claim").

30.    Here, in an effort to unwind complex derivative transactions and simultaneously comply with bar dates in the United States and Switzerland, the existence of the Guarantee was simply overlooked. Immediately upon discovery of the Guarantee, all actions

NYDOCS03/914971.5

necessary to put the Debtors on notice of the LBF Guarantee Claim were promptly taken. (*See* Torkin Declaration ¶¶ 16-17.) This simple error is exactly the type of situation the doctrine of excusable neglect is designed to remedy and should not be used to support a denial of the relief requested.

31. "[T]he determination as to excusable neglect is at bottom an equitable one." *Pioneer*, 507 U.S. at 395. The principles of equity and fundamental fairness weigh in favor of deeming the LBF Guarantee Claim to have been timely filed.

### IV. OTPPB Acted in Good Faith

32. Finally, under the *Pioneer* framework, a court must consider whether the claimant acted in good faith. The circumstances surrounding the filing of the LBF Guarantee Claim demonstrate that OTPPB has acted in good faith. As evidenced by the timely-filed Claim Nos. 27468 and 27469 and the timely claim filed in the Swiss Proceedings, OTPPB and its counsel endeavored to protect OTPPB's rights and file all claims in compliance with the Bar Date Order. (*See* Torkin Declaration ¶ 13.) Upon discovery of the Guarantee, OTPPB and its counsel immediately gathered the appropriate information and prepared and filed the proof of claim in an attempt to notify the Debtors as quickly as possible. (*See* Torkin Declaration ¶ 16.) This is not a case where a creditor refused to file a timely proof of claim for strategic settlement reasons. OTPPB at all times attempted to comply with the Bar Date Order and acted in good faith.

NYDOCS03/914971.5

**Conclusion**

WHEREFORE, OTPPB respectfully requests that the Court deny the Claim Objection with respect to the LBF Guarantee Claim, deem the LBF Guarantee Claim to be timely filed, and grant such other and further relief as this Court deems just and equitable.

Dated: New York, New York
October 18, 2010

                    SHEARMAN & STERLING LLP

          By:   */s/ Michael H. Torkin*
                Michael H. Torkin
                599 Lexington Avenue
                New York, New York 10022
                Telephone: (212) 848-4000
                Facsimile: (212) 848-7179

                *Attorneys for Ontario Teachers' Pension Plan Board*