Ralph M. Stone
SHALOV STONE BONNER & ROCCO LLP
260 Madison Ave., 17th Floor
New York, New York 10016
(212) 239-4340

*Attorney for Claimant Ernsdörfer*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
**In re**                                                              :
                                                                       : **Chapter 11 Case No.**
                                                                       :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
                                                                       :
           Debtors.                                          :    **(Jointly Administered)**
------------------------------------------------------------------x

**KARL ERNSDÖRFER'S RESPONSE TO DEBTORS'
FORTY-THIRD OMNIBUS OBJECTION TO CLAIMS
(LATE-FILED LEHMAN PROGRAMS SECURITIES CLAIMS)**

Claimant Karl Ernsdörfer ("Ernsdörfer"), by his counsel, respectfully submits this response and objection to Debtors', Lehman Brothers Holdings INC., *et al.* ("Debtors" or "LBHI"), forty-third omnibus objection to claims (the "Debtor's Forty-Third Omnibus Objection to Claims"), which was filed on September 13, 2010.

*Summary of Argument*

Ernsdörfer's proof of claim was mailed to Epiq Bankruptcy Solutions LLC ("Epiq") thirteen days before the Bar Date of November 2, 2009, and Epiq stamped the document as received on November 4, 2009. There is no evidence of when the claim was actually received, and there is a presumption that an item properly mailed was received in the usual time. Here, the mailing of the claim nearly two weeks before the Bar Date leads one to the conclusion it was received on time, and the claim should not be barred.

Alternatively, equitable considerations favor allowing the claim given the good faith and diligent submission of the claim. No prejudice has been cited, and the barring of Ernsdörfer's claim does not serve the interests of justice. Ample authority supports allowing the claim, as unusual delays in the mails have qualified as excusable neglect. And the notification to Ernsdörfer ten months later that his claim was late suggests that the minimal delivery delay – if there was such a delay, then it was obviously the product of an unusual circumstance in the mails beyond the control of the parties – had no negative impact on the judicial proceedings.

Under these circumstances, we respectfully submit that the Court should allow the claim.

*Facts*

LBHI filed a petition for bankruptcy under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York on September 15, 2008. As of September 15, 2008, Ernsdörfer owned a Lehman Programs Security (ISIN: DE000A1AV3K3) and as described below, Ernsdörfer thereafter filed a claim in the amount of $284,720.00 in this proceeding relating to Lehman Programs Securities.

This Court entered a Bar Date Order (the "Order") detailing the filing procedures for claims based on Lehman Programs Securities on the July 2, 2009. The Order required that proofs of claim based on Lehman Programs Securities be filed by September 22, 2009. However, the Lehman Programs Securities Procedures set November 2, 2009, as the deadline for the filing of proofs of claim based on Lehman Programs Securities. The Order entered by this Court stated that "any holder of a claim against the Debtors who is

2

required, but fails to file a proof of such claim in accordance with the Bar Date Order … shall forever be barred, estopped, and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto)….". The Notice of the Securities Program Bar Date included a phrase that defined "timely filed" Securities Programs Proofs of Claim as those that were received on or before the Lehman Programs Securities Procedures Bar Date.

On October 20, 2009, 13 days before the November 2, 2009, Lehman Programs Securities Bar Date, Ernsdörfer properly mailed an accurate and complete Lehman Securities Programs Proof of Claim Form by "Luftpost" (the German word for "airmail") to Epiq Bankruptcy Solutions LLC. This Proof of Claim, Claim number 64555, set forth Ernsdörfer's claim in the amount of $284,720.00. See Declaraton of Bernd Jochem, attached hereto, at ¶ 3. It is contended that Epiq received Claim number 64555 on November 4, 2009.

Debtor's Forty-Third Omnibus Objection to Claims proposes to disallow the Creditor's claim on the grounds that it was received by Epiq two days after the Lehman Programs Securities Bar Date. Ernsdörfer's claim is listed on line number 111 of Exhibit A of Debtor's Forty-Third Omnibus Objection to Claims. Exhibit A misidentifies the Creditor as "Karl Ernsdorfo". Although for purposes of this response we take Exhibit A as proposed evidence of the lateness of the Ernsdörfer claim, we note that there is in fact no evidence in the record that the claim was received by Epiq late.

Germany's mail system states on its website that envelopes marked "Luftpost" and mailed from Germany to the United States usually arrive in three to five business days. Declaration of Bernd Jochem at ¶ 4.

3

*Argument*

*1. The Claim Was Timely*

There is no evidence that Ernsdörfer's claim was in fact received late. The minimal showing that the Debtor has made does not rise to the level of evidence. And there are many reasons to believe that the claim was in fact received in a timely manner.

First, it was mailed long before it was due, and items properly mailed are presumed to have been received in the usual time. *See In re Ms. Interpret*, 222 Bankr. 409, 413 (Bankr. S.D.N.Y. 1998) ("Courts uniformly presume that an addressee receives a properly mailed item when the sender presents proof that it properly addressed, stamped, and deposited the item in the mail" *citing Hagner v. United States*, 285 U.S. 427, 430, 52 S.Ct. 417, 76 L.Ed. 861 (1932) ("the rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed")). Here, it is undisputed that the claim was mailed on October 20, 2009.

Second, the claim may very well have arrived on time but was simply lost in the shuffle by Epiq, which almost certainly was inundated with many tens of thousands of pieces of mail in only a few days' time as the Bar Date approached and in its immediate aftermath. The hasty and less than precise manner in which claims were handled is evidenced by the list of purportedly late claims, which misspells Ernsdörfer's name and misspells the name of his counsel's law firm. *See* Exhibit A to the Objection at 16 of 48. Since one can safely assume that properly spelling the names of claimants is an important part of the administrative process, the sloppiness of the claims data provided by Epiq calls into question the care and quality of all aspects of the administrative process.

In short, Ernsdörfer respectfully challenges the determination that his claim was in fact late.

2. *As An Alternative, The Claim Should Be Allowed Under An "Excusable Neglect" Test*

As an alternative, and to avoid a laborious examination of the claims administration process, excusable neglect can serve as a basis for allowing the claim, even if there was no neglect per se. The concept of excusable neglect is applied flexibly in the Chapter 11 context and has been construed to embrace such things as "uncontrollable delays in the mails" in order to excuse any lateness. *See generally Pioneer Inv. Services Co. v. Brunswick Associates Limited Partnership*, 507 U.S. 380, 388-395 (1993) (discussing application of "excusable neglect" standards in context of Chapter 11 case); *United States v. Carson*, 52 F.3d 1173, 1180 (2d Cir. 1995) ("'uncontrollable delays in mail delivery' may be a basis for a finding of excusable neglect"). Under *Pioneer*, the review is an equitable one, "taking account" of the circumstances. *Pioneer* at 395. Relevant factors are: "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.*

All of these factors support allowing the claim. No prejudice has been alleged to have resulted from the minimal delay, and we are aware of none, and the allowance of this claim will not delay or otherwise impact the judicial proceedings. The delay, if any, was obviously caused by an uncontrollable delay in the mails that was beyond the control of Ernsdörfer or his counsel. Notwithstanding counsel's efforts to obtain an explanation

5

for the delay, the delay is inexplicable. And the good faith of Ernsdörfer is evident from the diligent placement of his claim into the mails nearly two weeks before it was due.

In contrast, the denial of his claim as late will send a harsh and unfair message to an individual who has suffered a meaningful loss and who merely seeks to stake his legitimate claim. Denial of the claim as late would be unjust and inconsistent with *Pioneer*.

### *Conclusion*

Accordingly, for all of the foregoing reasons, we respectfully submit that the objection to Ernsdörfer's claim should be overruled and that his claim should be allowed.

Dated: October 18, 2010            Respectfully submitted,

SHALOV STONE BONNER & ROCCO LLP


By:   /s/ Ralph M. Stone
        Ralph M. Stone (RS-4488)
        rstone@lawssb.com
260 Madison Avenue, 17th Floor
New York, New York  10024
Tel. 212.239.4340
Fax 212.239.4310

*Attorney for Claimant Ernsdörfer*

6