# EXHIBIT A



## 3 2/3-Year Cash-Settled Call Warrants Linked to the Performance of D. E. Shaw Oculus Fund

This preliminary private placement memorandum supplement is not to be shown or given to any person other than the person who directly received it from the Placement Agent (as defined below) and is not to be copied or otherwise reproduced in any manner whatsoever. If the language along the left margin does not appear in red, there is a presumption that this preliminary private placement memorandum supplement has been improperly reproduced and circulated, in which case Lehman Brothers Inc. disclaims any responsibility for its content and use. Failure to comply with this directive can result in a violation of the Securities Act of 1933, as amended (the "Securities Act").

The warrants have not been and will not be registered under the Securities Act, or any state securities law. The warrants are exempt from registration under Section 4(2) of the Securities Act and similar exemptions from registration provided by certain state securities laws. The warrants may be offered, sold and otherwise transferred only to persons who are "accredited investors" as defined in Rule 501 of the Securities Act who are also "qualified purchasers" as defined in Section 2(a)(51) of the Investment Company Act of 1940 (the "Investment Company Act"), who have no need for liquidity of investment and understand and can afford the financial and other risks of an investment in a warrant.

The Warrants are being offered by the Issuer through Lehman Brothers Inc. as placement agent (the "Placement Agent"). The Issuer reserves the right to withdraw, cancel or modify such offers and to reject orders in whole or in part. The Placement Agent will have the right to reject in whole or in part any offer to purchase Warrants.

For more information about D. E. Shaw Oculus Fund, L.L.C. (the "Reference Fund"), D. E. Shaw Oculus Portfolios, L.L.C., and D. E. Shaw Oculus International Fund (collectively with the Reference Fund and subsidiaries of any of the foregoing, "Oculus Fund") as well as about D. E. Shaw & Co., L.P. ("DESCO L.P."), which acts as the investment adviser to the Reference Fund, and D. E. Shaw & Co., L.L.C. ("DESCO L.L.C."), which is the managing member of the Reference Fund, prospective investors are encouraged to review the Confidential Private Offering Memorandum of the Reference Fund, attached as Exhibit V to the preliminary private placement memorandum. Neither the Issuer nor its affiliates or agents have participated in the preparation of any offering or subscription documents for interests the Reference Fund. Accordingly, neither the Issuer nor its affiliates or agents makes any representation or warranty with respect to the accuracy, validity or completeness of any such information. Investors should conduct their own diligence of the Reference Fund as they would if investing directly in the Reference Fund. None of DESCO L.P., DESCO L.L.C., the Reference Fund, or any affiliate of the foregoing sponsors or endorses the Issuer or the Warrants.

The Warrants are issued by Lehman Brothers Holdings Inc. and represent an investment that is separate and distinct from an investment in the Reference Fund or Oculus Fund. Neither the Issuer nor its affiliates or agents is offering any interest in the Reference Fund. An investment in the Warrants confers no indicia of ownership in the Reference Fund or Oculus Fund and neither creates nor implies any rights or remedies with respect to the Reference Fund, Oculus Fund, DESCO L.P., DESCO, L.L.C, or D. E. Shaw Securities, L.L.C. (the placement agent for the Reference Fund) or affiliates of the foregoing.

© 2007 Lehman Brothers Inc. All rights reserved. Member SIPC.

The information in this preliminary private placement memorandum supplement is not complete and may be changed. We may not sell these warrants until the preliminary private placement memorandum supplement is delivered in final form. This preliminary private placement memorandum supplement is not an offer to sell these securities and it is not soliciting an offer to buy these securities in any jurisdiction where the offer or sale is not permitted.

LEHMAN BROTHERS

CONFIDENTIAL



THIS DOCUMENT IS NOT AN OFFER OR SOLICITATION WITH RESPECT TO THE PURCHASE OR SALE OF ANY SECURITY. ANY SUCH OFFER OR SOLICITATION WILL BE MADE ONLY PURSUANT TO A COMPLETED PRIVATE PLACEMENT MEMORANDUM. THIS DOCUMENT SHOULD BE READ IN CONJUNCTION WITH THE PRIVATE PLACEMENT MEMORANDUM FOR THE WARRANTS.

Dated as of [June *, 2007]

## Introduction

## 3 2/3-Year Cash-Settled Call Warrants (the "Warrants") Linked to the Performance of D. E. Shaw Oculus Fund (the "Reference Fund")

### The Warrants: At-the-money call options providing leveraged exposure[1]

The Warrants are call warrants with a strike price that is at-the-money as of the date of issuance. Warrant investors can achieve a higher percentage return from favorable moves in the Reference Fund compared to a direct investment since less up-front capital (premium) is required for similar exposure. Additionally, the downside is limited to the initial premium paid for the Warrants. However, similar to other at-the-money warrants, the Reference Fund must appreciate by a sufficient amount in order for investors to achieve any gain. The payout of the Warrants is the greater of zero and the difference obtained by subtracting the "Strike Price" (as defined in the Summary of Indicative Terms) from the "Final NAV" (as defined in the Summary of Indicative Terms).

### Exposure to the Performance of a Hedge Fund

The Warrants provide investors with an opportunity to gain levered exposure to the performance of a hedge fund with an experienced management team.

The Warrants are issued by Lehman Brothers Holdings Inc. and represent an investment that is separate and distinct from an investment in the Reference Fund. Neither the Issuer nor its affiliates or agents is offering any interest in the Reference Fund. An investment in the Warrants confers no indicia of ownership in the Reference Fund and neither creates nor implies any rights or remedies with respect to the Reference Fund or its affiliates.

### Lower Minimums

The Warrants require a lower minimum capital commitment compared to the minimum requirement for a direct investment in the Reference Fund.

### Tax Considerations

Please refer to the section entitled "Certain U.S. Federal Income Tax Considerations" of the Preliminary Private Placement Memorandum (the "Memorandum") for details regarding the tax treatment of the Warrants.

---

[1] Investors should consider the inherent risks of options before investing. Options are not suitable for all investors. Please refer to the "Risk Factors" herein and in the Private Placement Memorandum for a discussion of these risks.

**LEHMAN BROTHERS**

CONFIDENTIAL



LEHMAN BROTHERS IS NOT A TAX ADVISOR AND THE STATEMENTS MADE IN THE MEMORANDUM SHOULD NOT BE CONSIDERED TAX ADVICE. INVESTORS SHOULD CONSULT THEIR OWN TAX COUNSEL BEFORE MAKING ANY INVESTMENTS IN THE WARRANTS.

LEHMAN BROTHERS

CONFIDENTIAL



## Summary of Indicative Terms

| | |
|---|---|
| Warrant Type: | Call Warrant |
| Warrant Style: | European |
| Issuer: | Lehman Brothers Holdings Inc. ("LBHI") |
| Reference Fund: | D. E. Shaw Oculus Fund, L.L.C. |
| Reference Performance: | Performance of the Regular Member Interests of the Reference Fund (the "Interests"). |
| Deemed Quantity of Interests: | A hypothetical quantity of Interests of the Reference Fund with an aggregate value as of the Issue Date equal to the Initial NAV. |
| Total Cost (Issue Price): | $[255-265] per Warrant |
| Fees and Commissions: | Lehman Brothers (as defined below) will earn selling commissions of 2% of the Notional Amount Per Warrant (i.e., $20 per Warrant) in connection with the sale of each Warrant as well as fees related to risk-management of products of this type. |
| Initial NAV: | $1,000 |
| Notional Amount Per Warrant (Reference Fund Exposure Amount): | $1,000 |
| Final NAV: | As of the Valuation Date, the aggregate redemption proceeds that would be received by a Reference Holder on or prior to the date that is [five] Business Days after the Audit Date, assuming timely submission of a request for redemption of the Deemed Quantity of Interests effective as of the Valuation Date, as determined by the Calculation Agent. The Final NAV shall be calculated by deducting from such amount any redemption, management, incentive or administrator fees or other costs (including any applicable withdrawal fee) payable by a Reference Holder in respect of such Deemed Quantity of Interests, to the extent such amounts have not already been deducted by the Reference Fund in calculating the amount of redemption proceeds payable to the Reference Holder, as determined by the Calculation Agent. For the avoidance of doubt, if the Calculation Agent determines that a Reference Holder, assuming timely submission of a request for redemption of the Deemed Quantity of Interests effective as of the Valuation Date, would not have received any of the redemption proceeds on or prior to the date that is [five] Business Days after the Audit Date, the Calculation Agent shall determine the Final NAV, which Final NAV may be equal to zero. |
| Audit Date: | With respect to any date of determination, the date on which the Reference Fund's independent auditors have completed their examination of the Reference Fund's financial statements for the period including such date of determination. |

LEHMAN BROTHERS

CONFIDENTIAL

| Reference Holder: | A hypothetical Regular Member of the Reference Fund that is deemed to have the benefits and obligations of an investor owning, during the term of the Warrants, Interests in the Reference Fund, as determined by the Calculation Agent. The Reference Holder will have a tax situs in Delaware. The Reference Holder does not represent an actual investment in or an Interest in the Reference Fund. |
|---|---|
| Strike Price: | 100% of the Initial NAV, $1,000 |
| Currency: | USD |
| Issue Date: | [August 1], 2007 |
| Warrant Payment Amount: | On the Warrant Payment Date, Holders will receive, per Warrant, the greater of:<br><br>1)  Final NAV – Strike Price<br><br>and<br><br>2)  Zero |
| Valuation Date: | [March 31, 2011] |
| Warrant Payment Date: | [May 5, 2011]; provided that if the Calculation Agent determines that a Reference Holder would not have received all redemption proceeds by the end of the day on [April 30, 2011], based on a timely request for redemption by such Reference Holder of the Deemed Quantity of Interests effective as of the Valuation Date, the Warrant Payment Date shall be the earlier of (i) [five] Business Days after the date that a Reference Holder would have received all such redemption proceeds, as determined by the Calculation Agent and (ii) [ten] Business Days after the Audit Date. |
| Client Suitability: | Each Warrant holder must be (i) an "accredited investor" as such term is defined in Rule 501 of the Securities Act and (ii) a "qualified purchaser" as such term is defined in the Investment Company Act. |
| Minimum Initial Purchase: | USD 100,000 ([377-392] Warrants), unless the Placement Agent permits the purchase of a smaller number of Warrants. |
| Warrant Maturity Date: | The Warrant Payment Date |
| Settlement Method: | Cash Settlement |
| Automatic Exercise: | Each warrant will be deemed to be automatically exercised on the Expiration Date. |
| Expiration Date: | The Valuation Date, scheduled to be the date that is approximately 3 2/3 years following the Issue Date. |
| Calculation Agent: | Lehman Brothers Inc. |
| Placement Agent: | Lehman Brothers Inc. ("Lehman Brothers") |
| Transfer Agent: | Citibank, N.A. |
| Business Day: | A day, other than a Saturday or Sunday, which is neither a legal holiday nor |

**LEHMAN BROTHERS**

CONFIDENTIAL



| | a day on which banking institutions in New York are authorized or obligated by law or executive order to close. |
|---|---|
| Early Termination Events: | The Issuer reserves the right to terminate the Warrants at any time prior to the Warrant Payment Date if at any time before that date, the Calculation Agent determines that an Early Termination Event (as defined below) has occurred. The occurrence of any of the following events may be deemed an "Early Termination Event" by the Calculation Agent:

(1) The termination, bankruptcy, insolvency, dissolution, removal or withdrawal of DESCO, L.L.C., as managing member of the Reference Fund, or DESCO L.P., as investment adviser of the Reference Fund (DESCO L.P. and DESCO L.L.C., are referred to collectively as the "Key Entities"), or such parties otherwise cease to act for the Reference Fund as managing member or investment adviser, respectively;

(2) The Reference Fund (a) is dissolved or has a resolution passed for its dissolution, winding up, or official liquidation; (b) makes a general assignment or arrangement with or for the benefit of its creditors; (c) becomes insolvent or is unable to pay its debts or fails or admits its inability generally to pay its debts as they become due (d)(i) institutes or has instituted against it, by a regulator, supervisor or any similar official with primary insolvency, rehabilitative or regulatory jurisdiction over it in the jurisdiction of its incorporation or organization or the jurisdiction of its head or home office, a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by it or such regulator, supervisor or similar official, or (ii) has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and such proceeding or petition is instituted or presented by a person or entity not described in clause (i) above and either (x) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (y) is not dismissed, discharged, stayed or restrained in each case within 15 days of the institution or presentation thereof; (e) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, or custodian or other similar official for it or for all or substantially all its assets in a proceeding of the type described herein; (f) has a secured party take possession of all or substantially all its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all its assets and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within 15 days thereafter; (g) causes or is subject to any event with respect to it which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (a) through (f) above (inclusive); or (h) takes any action in furtherance of, |

LEHMAN BROTHERS

CONFIDENTIAL



or indicating its consent to, approval of, or acquiescence in, any of the foregoing acts;

(3) DESCO L.L.C. restates the monthly net return of the Reference Fund, as reported in the monthly final performance indication report of the Reference Fund, for any month during the term of the Warrants by more than 2% (measured as a percentage of the total assets of the Reference Fund) from the monthly net return of the Reference Fund as originally reported in the monthly final performance indication report of the Reference Fund for such month;

(4) (a) Any of the Key Entities or any of their affiliates, employees, officers or agents, materially breaches any applicable law or regulation, (b) any governmental, legal or regulatory authority or other person brings or threatens to bring an administrative or judicial proceeding, investigation or litigation against any such person (including, in the case of the Investment Adviser, against any other fund managed by the Investment Adviser) or makes or threatens to make any claim, demand, charge or complaint against such person alleging any misconduct, impropriety, illegality, negligence, contractual or fiduciary breach or other wrongdoing, or (c) the cancellation, suspension or revocation of the registration or approval of a Key Entity by any governmental, legal or regulatory entity with authority over such Key Entity;

(5) (a) There is a change in any law, regulations, practice or the interpretation of any law, regulations or practice by any court, tribunal or regulatory authority which causes it to become unlawful or inadvisable for the Issuer or any of its affiliates to perform any obligations hereunder or otherwise has material adverse consequences for the Issuer or any of their affiliates including, for greater certainty, with any hedging activity; or (b) there is a change in the legal, tax, accounting or regulatory treatments of the Interests, the Reference Fund or the Investment Adviser that is reasonably likely to have a material adverse consequence for the Reference Fund or the Interests;

(6) (a) The modification of the Reference Fund (such as, but not limited to, modification of the organizational documents or any prospectus, offering memorandum, information memorandum or other similar offering document related thereto) in a way that could reasonably be expected to have a material adverse effect on the Final NAV or the rights and remedies of a Reference Holder from those prevailing on the Issue Date (including, without limitations rights of liquidation, transfer or redemption of the Interests), or (b) any event or any change affecting the Reference Fund and/or an Interest thereof (such as, but not limited to, interruption, breakdown, suspension or deferral of the calculation or the publication of the level or value of such Interest, or the disappearance of the level or value of such Interest resulting more particularly from, but not limited to, the winding-up or the termination of such Fund or the cancellation of the registration or of the approval by any relevant authority of the Fund) and that, in the opinion of the Calculation Agent, is likely to have a material effect on the Interests of

LEHMAN BROTHERS

CONFIDENTIAL

CONFIDENTIAL

LEHMAN BROTHERS

a Reference Holder:

(7) The conversion of an Interest of the Reference Fund into another series of interests or securities with materially different benefits, rights or obligations, or the split of the Reference Fund, or its consolidation or its merger with or its sale or its conveyance of all or substantially all of its Interests or assets to a third party;

(8) The occurrence of a Hedging Disruption Event or an Increased Cost of Hedging Event;

(9) An event of default or a termination event, however defined, occurs with respect to the Reference Fund under any prime brokerage agreement, any ISDA Master Agreement or other similar derivatives agreement, or any other agreement for borrowed money (including, without limitation, any loan agreement or repurchase agreement);

(10) The net return of the Reference Fund (i) during any calendar month is less than negative ten percent (-10%) or (ii) during any consecutive three-month period is less than negative twenty five percent (-25%); or

(11) All the Interests or substantially all the assets of the Reference Fund are nationalized, expropriated or are otherwise required to be transferred to any governmental agency, authority, entity or instrumentality thereof.

Upon the occurrence of any of the foregoing events, the Calculation Agent shall determine whether the occurrence of such event constitutes an Early Termination Event. If the Calculation Agent deems the occurrence of such event to be an Early Termination Event and the Issuer determines to terminate the Warrants, the Issuer will notify the Transfer Agent of its intent to terminate the Warrants and the date selected by the Calculation Agent as the Early Termination Date. Holders will receive the Early Termination Amount (as defined below) on the Early Termination Date. The "Early Termination Date" shall be determined by the Calculation Agent and shall be [five] Business Days following the date on which all redemption proceeds would have been received by a Reference Holder of Interests based on a timely request for redemption by such Reference Holder effective as of the Early Termination Valuation Date (as defined below). Notwithstanding the foregoing, in no event will the Early Termination Date occur more than [ten] Business Days after the relevant Early date on which the Calculation Agent determines that the relevant Early Termination Event has occurred (such date of determination, the "Event Determination Date"). If the last day of the calendar quarter in which the Event Determination Date occurs is at least [50] days following the Event Determination Date, the Early Termination Date shall occur not more than [ten] Business Days after the Audit Date in respect of the last day of the calendar quarter next succeeding the calendar quarter in which the Event Determination Date occurred. Upon receipt of notice from the Issuer of its intent to terminate the Warrants following the Early Termination Event, the Transfer Agent will notify each Holder of the Issuer's election to terminate the Warrants in accordance with

the Issuing, Paying and Transfer Agency Agreement (as defined below).

"**Early Termination Amount**" means the amount determined by the Calculation Agent equal to the market value of the Warrant as of the Early Termination Valuation Date, reduced by any losses or costs of the Issuer or its affiliates that are or would be incurred under then prevailing circumstances in closing its or its affiliates' hedge position(s) (including the effect of any withdrawal fees) arising from the occurrence of such Early Termination Event. The "**Early Termination Valuation Date**" shall be determined by the Calculation Agent and shall be the date as of which a Reference Holder, which properly submitted a redemption notice to the Reference Fund promptly after such Early Termination Event, would have been able to redeem its Interests; provided that if the Calculation Agent determines that a Market Disruption Event has occurred on the Early Termination Valuation Date, the Early Termination Valuation Date shall be the next succeeding day on which no Market Disruption Event occurs. If the Calculation Agent determines that a Reference Holder would not have received all of the redemption proceeds by the [fifth] day after the relevant Audit Date, the Early Termination Amount may be equal to zero. In determining the Early Termination Amount, the Calculation Agent may, but need not, consider any relevant information, including, without limitation, information consisting of relevant market data in the relevant market including, without limitation, relevant rates, prices, yields, volatilities, spreads, correlations or other relevant market data from external or internal sources (including any affiliates of the Calculation Agent) or otherwise.

"**Market Disruption Event**" means, on any Business Day, any event that (i) affects any of the Interests of a Reference Holder that, in the judgment of the Calculation Agent, would make it impossible or impracticable to determine the value of such Interests as of that date or (ii) causes a Hedging Disruption Event (as defined below) or (iii) causes an Increased Cost of Hedging Event (as defined below).

"**Hedging Disruption Event**" means (1) the Issuer and/or any of its affiliates is unable, after using commercially reasonable efforts, or it is deemed inadvisable for the Issuer and/or any of its affiliates, to (A) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any transaction(s) or asset(s) it deems necessary to hedge the price risk of the Issuer issuing and performing its obligations with respect to the Warrants, or (B) realize, recover or remit the proceeds of any such transaction(s) or asset(s), including, without limitation, where such inability or impracticability has arisen by reason of (i) any restrictions or increase in charges or fees imposed by the relevant Reference Fund on any investor's ability to redeem such Interest, in whole or in part, or any existing or new investor's ability to make new or additional investments in such Interest, or (ii) any mandatory redemption, in whole or in part, of such Interest imposed by the relevant Reference Fund (in each case other than any restriction in existence on the date on which such Interest was first included in such a Reference Fund derivative transaction) or (2) the Issuer and/or any of its affiliates is unable, after using commercially reasonable efforts, to determine the value of any hedging position in the Reference Fund.

LEHMAN BROTHERS

CONFIDENTIAL



| | |
|---|---|
| | "Increased Cost of Hedging Event" means the Issuer and/or any of its affiliates would incur a materially increased (as compared with circumstances existing as of the Issue Date) amount of tax, duty, expense or fee (other than brokerage commissions) to (1) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any transaction(s) or asset(s) it deems necessary to hedge the price risk of the Issuer issuing and performing its obligations with respect to the Warrants, or (2) realize, recover or remit the proceeds of any such transaction(s) or asset(s), provided that any such materially increased amount that is incurred solely due to the deterioration of the creditworthiness of the Issuer and/or any of its affiliates. |
| Potential Adjustment Events: | A "Potential Adjustment Event" means the occurrence of any of the following events: |
| | (1) a subdivision, reclassification, reorganization, consolidation, increase, reduction by cancellation of the Interests of a Reference Holder or, a free distribution or dividend of any such Interests to existing holders by way of bonus, capitalization or similar issue; |
| | (2) a distribution or dividend to existing holders of (a) Interests, or (b) any other interest capital or securities granting the right to payment of dividends and/or the proceeds of liquidation of the Reference Fund equally or proportionately with such payments to holders of such interests, or (c) any other type of securities, rights or warrants or other assets, in any case for payment (cash or other) at less than the prevailing market price as determined by the Calculation Agent; |
| | (3) an extraordinary dividend; |
| | (4) a call by the Reference Fund of such Interests in respect of Interests that are not fully paid; |
| | (5) a repurchase by the Reference Fund of Interests whether out of profits or capital and whether the consideration for such repurchase is cash, securities or otherwise; or |
| | (6) any other similar event. |
| | Upon the occurrence of a Potential Adjustment Event, the Calculation Agent will make such adjustment to the exercise, settlement, payment or any other terms of the Warrants as the Calculation Agent determines appropriate, and determine the effective times thereof, to account for the economic effect on the Warrants of such Potential Adjustment Event. |
| Governing Law: | The Warrants shall be governed by the laws of the State of New York, without reference to the choice of law doctrine. |
| Secondary Markets: | The Warrants will not be listed on any securities exchange or quotation system. No secondary market in the Warrants is expected to develop. The only market, if any, for the Warrants will be the repurchase of the Warrants by the Issuer or the purchase of Warrants by the Placement Agent. Neither the Placement Agent nor its affiliates have any obligation to make a market for the Warrants, they do not anticipate making a market for the Warrants, |

LEHMAN BROTHERS

CONFIDENTIAL

and may cease or alter market-making activities if commenced at any time. To the extent the Placement Agent does effect market-making transactions, the Placement Agent will determine market-making prices, based largely, on the factors set in the Memorandum forth under *"Risk Factors— Secondary Trading of the Warrants is Limited and They are Subject to Substantial Restrictions on Transferability."*

The Placement Agent intends, but is not obligated, to provide an opportunity for Holders to sell their Warrants to the Placement Agent. To request a market making transaction, a Holder must provide a signed copy of the form of Market Making Request attached as Exhibit VI to the Memorandum. The Market Making Request must be received by the Placement Agent no later than [55] calendar days in advance of the last Business Day of a calendar quarter. The Placement Agent will determine the market making price as of that quarter end. For the avoidance of doubt, until the parties agree to the final terms of any such transaction, the submission of a Market Making Request shall not obligate the Placement Agent or the requesting Holder to enter into a market making transaction.

If the Placement Agent agrees to buy a Warrant from a Holder, there will likely be significant delays between the time it agrees to such purchase and the pricing and settlement of such purchase. The Placement Agent may be the only source of price quotes for the Warrants. Any secondary market price quoted by the Placement Agent would reflect any changes in market conditions and other relevant factors, and the quoted price could be higher or lower than the initial purchase price.

In addition, any secondary market purchase of the Warrants by the Placement Agent or any of its affiliates prior to maturity will be at a price that is net of the commissions paid to the Placement Agent as described in the Memorandum under *"Plan of Distribution."* Also, likely to be excluded from the secondary market price quote are the projected profits included in the cost of hedging the Issuer's obligations under the Warrants. In addition, any such prices may differ from values determined by pricing models used by the Calculation Agent, due to dealer discounts, mark-ups, hedge unwinds or other transaction costs (including any applicable withdrawal fee). As a result, the price at which Holders may sell their Warrants to the Placement Agent or any of its affiliates may be less than the Holders' original cost.

LEHMAN BROTHERS

CONFIDENTIAL



## D. E. Shaw Oculus Fund and D. E. Shaw Group Information

### D. E. Shaw Oculus Fund

D. E. Shaw Oculus Fund, L.L.C. (the "Reference Fund") invests in D. E. Shaw Oculus Portfolios, L.L.C. (the "Oculus Master Fund," and collectively with the Reference Fund, D. E. Shaw Oculus International Fund, and subsidiaries of any of the foregoing, "Oculus Fund"). Oculus Fund operates within a quantitative framework, using fundamental and price-based models to exploit inefficiencies in the futures, currencies, fixed income, and equity markets, among others. The four principal sub-strategies of Oculus Fund currently are: (i) futures and currency-related strategies, (ii) equity statistical arbitrage strategies, (iii) asset class-based inefficiencies, and (iv) discretionary investing. Oculus Fund launched in April 2004.

### The D. E. Shaw Group

Founded in 1988 by Dr. David E. Shaw, the D. E. Shaw Group is a specialized investment and technology development firm whose activities center on various aspects of the intersection between technology and finance. Headquartered in New York, the D. E. Shaw Group has offices in North America, Europe, and Asia. The firm has approximately 1,100 employees involved in the implementation or support of the group's investment activities. The D. E. Shaw Group has a successful 18-year track record in trading of investment strategies using quantitative and computational techniques.

An affiliate of the Issuer acquired a minority equity investment in each of DESCO L.P. and DESCO L.L.C., effective March 1, 2007, which entitles such affiliate, among other rights, to receive a share of the management fees and incentive fees paid by the Reference Fund to DESCO L.P. and DESCO L.L.C. In addition, the Issuer and its affiliates may be party to various financial contracts with, or provide services to, the Reference Fund. None of the Issuer nor any of its affiliates has the ability to control the investment decisions of the Reference Fund. Neither the Issuer nor its affiliates or agents makes any representation as to the financial condition or creditworthiness of the Reference Fund in connection with the issuance of the Warrants. None of DESCO, L.P., DESCO L.L.C., the Reference Fund, or any affiliate of the foregoing sponsors or endorses the Issuer or the Warrants.

### Related Performance

The past performance of the Reference Fund, Oculus Fund generally, or of any investment fund or account advised or managed by a Key Entity is not indicative of the future performance of the Reference Fund and has no bearing on the future performance of the Reference Fund.

#### Quantitative Information (through April 2007)[2]

| | |
|---|---|
| Total AUM of the D.E. Shaw Group: | $30.2bn |
| Total AUM in Oculus Fund: | $9.5bn |
| Lifetime Sharpe Ratio for Oculus Fund: | 2.3 |
| Annualized Standard Deviation for Oculus Fund: | 8.6% |
| Annualized Return for Oculus Fund: | 23.1% |

PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS

---

[2] Source: the D. E. Shaw Group. None of the Issuer or any of its affiliates has verified the validity or accuracy of this data. All return information is presented net of fees.

LEHMAN BROTHERS

**CONFIDENTIAL**



## Reference Fund Performance[3]:

The Reference Fund's inception was April 2004.

| | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | YTD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2004 | | | | 2.0% | -1.0% | 1.4% | 4.0% | 3.9% | 3.3% | 6.5% | 5.6% | 3.0% | 27.7% |
| 2005 | 3.1% | -0.5% | 2.7% | 3.2% | 4.3% | 3.6% | -1.6% | -2.3% | -0.3% | 1.6% | 1.7% | 0.5% | 16.8% |
| 2006 | 3.3% | -2.5% | 1.3% | 1.7% | -0.8% | -1.3% | -0.3% | 5.4% | 3.7% | 1.4% | 2.8% | 4.7% | 18.0% |
| 2007 | 3.8% | -2.9% | 2.5% | 4.4% est. | | | | | | | | | |
| | | | | | | | | | | | | | 8.0% |

Return information reflects the actual historical returns for the Reference Fund, after deduction of asset-based fees (equal to 2.5% of net assets annually) and profit-based fees or allocations (equal to 25% of annual net profits, where applicable) but ignoring conditionally recoverable foreign taxes. The performance figures shown above reflect the reinvestment of dividends and other earnings.

The past performance of the Reference Fund, Oculus Fund or any other investment fund or account managed by D. E. Shaw & Co., L.P. is not indicative of the future performance of the Reference Fund and has no bearing on the future performance of the Reference Fund. Potential investors should not expect or rely on similar performance in the future.

---

[3] Source: the D. E. Shaw Group. None of the Issuer or any of its affiliates has verified the validity or accuracy of this data.

LEHMAN BROTHERS

CONFIDENTIAL



**Growth of $100 Investment in Oculus Fund[4]**

PAST PERFORMANCE IS NOT INDICATIVE OF FUTURE RESULTS

## The Warrants

The Warrants are structured as European-style cash-settled call options and are issued by Lehman Brothers Holdings, Inc. The following is a brief summary of the Warrants. Please refer to the Memorandum for a more detailed description of the structure and the risks associated with an investment in the Warrants.

### Warrant Payment Amount at Maturity

The return on the Warrants is linked to the Final NAV of the Reference Fund as measured on the Valuation Date

1.  The Strike Price for the Warrants will be equal to the Initial NAV.

2.  The payout of the Warrant at maturity may be described as follows: Max [Final NAV – Strike Price, zero].

---

[4] Chart constructed from data received from the D. E. Shaw Group. None of the Issuer or any of its affiliates has verified the validity or accuracy of this data.

LEHMAN BROTHERS

CONFIDENTIAL

## Warrant Profit and Loss at Maturity[5]




The above hypothetical analysis assumes the Warrants are issued at a price of [$260] per Warrant for a notional exposure of $1,000 and that the Warrants remain outstanding until maturity. A Final NAV of [$1260] represents an annualized return of 6.51% in the Reference Fund.

**If the investor holds the Warrants until expiration, the investor can expect either of these two scenarios:**

- At expiration, the Warrants will be automatically exercised and, if the Final NAV is greater than the Initial NAV, investors will receive the Warrant Payment Amount calculated as the Final NAV minus the Strike Price. Investors should note, however, that the Warrants will not necessarily generate a profit simply because the Final NAV is higher than the Initial NAV. In the above example, the break even point of [$1260] represents a scenario in which the Reference Fund has an annualized fund growth of [6.51]% whereas the Warrants generate 0% return on investment.

- If, at expiration, the Final NAV is lower than or equal to the Initial NAV, the Warrants will expire worthless and the investors will not receive any payment.

The Warrants may be terminated by the Issuer prior to maturity if certain Early Termination Events have occurred. Please refer to the Memorandum for details on Early Termination Events.

[5] Simulated, modeled, or hypothetical performance results have certain inherent limitations. No representation is being made that any client will or is likely to achieve the hypothetical returns represented above.



CONFIDENTIAL



### Hypothetical Illustration of Warrant payout amount assuming various Reference Fund annual returns[6]

| $1,000 Warrant Issue Price | Notional Value | Fund Net Annual Return[7] | Final NAV | Notional Gain/(Loss) | Cash Settlement at Expiration | Net $ Return | Warrant Net ROI |
|---|---|---|---|---|---|---|---|
| $260 | $1,000 | -20.0% | $441 | ($550) | $0 | ($260) | -100.0% |
| $260 | $1,000 | -15.0% | $551 | ($449) | $0 | ($260) | -100.0% |
| $260 | $1,000 | -10.0% | $680 | ($320) | $0 | ($260) | -100.0% |
| $260 | $1,000 | -5.0% | $829 | ($171) | $0 | ($260) | -100.0% |
| $260 | $1,000 | 0.0% | $1,000 | $0 | $0 | ($260) | -100.0% |
| $260 | $1,000 | 2.5% | $1,095 | $95 | $95 | ($165) | -63.6% |
| $260 | $1,000 | 5.0% | $1,196 | $196 | $196 | ($64) | -24.7% |
| $260 | $1,000 | 6.0% | $1,260 | $260 | $260 | $0 | 0.0% |
| $260 | $1,000 | 7.5% | $1,304 | $304 | $304 | $44 | 16.8% |
| $260 | $1,000 | 10.0% | $1,418 | $418 | $418 | $158 | 60.9% |
| $260 | $1,000 | 12.5% | $1,540 | $540 | $540 | $280 | 107.7% |
| $260 | $1,000 | 15.0% | $1,669 | $669 | $669 | $409 | 157.5% |
| $260 | $1,000 | 17.5% | $1,806 | $806 | $806 | $546 | 210.1% |
| $260 | $1,000 | 20.0% | $1,951 | $951 | $951 | $691 | 265.9% |
| $260 | $1,000 | 22.5% | $2,105 | $1,105 | $1,105 | $845 | 324.8% |
| $260 | $1,000 | 25.0% | $2,266 | $1,266 | $1,266 | $1,006 | 387.1% |
| $260 | $1,000 | 27.5% | $2,437 | $1,437 | $1,437 | $1,177 | 452.7% |

A hypothetical illustration is not meant to forecast, imply or guarantee future performance.

Represents the scenario under which the Warrant Payment Amount equals the Warrant Issue Price.

[6] Simulated, modeled, or hypothetical performance results have certain inherent limitations. No representation is being made that any client will or is likely to achieve any of the hypothetical returns represented above.

[7] This analysis assumes appreciation or depreciation of the Reference Fund at a constant rate with annual compounding. This is a simplifying assumption. Such a path represents but one of an infinite number of possible paths that an actual investment in the Reference Fund might take over such a term. We make no claim as to what path an actual investment in the Reference Fund would take.

CONFIDENTIAL

LEHMAN BROTHERS



## Hypothetical Scenarios

The following analysis compares an investment in the Warrant with a hypothetical direct investment in the Reference Fund over the same period, assuming such hypothetical direct investment were sold or redeemed for a value equal to the Final NAV.

This analysis compares the performance of the Warrant and the hypothetical direct investment under various return scenarios for the Reference Fund. In order to describe such scenarios in terms of annual returns for the Reference Fund, this analysis assumes the Reference Fund appreciates or depreciates at a constant rate compounded annually from the Issue Date to the Valuation Date. A constant rate is a simplifying assumption representing one path of the infinite number of potential paths an actual investment in the Reference Fund might display over such a term. We make no claims or representations regarding the potential path for an actual investment in the Reference Fund. The examples provided below are for illustrative purposes only.

### Pro-Tax Comparison of Warrant vs. Hypothetical Direct Investment[8]

| Fund Net Annual Return | Initial NAV | Final NAV | Initial Warrant Premium | Payoff at Maturity | Annualized Warrant Return [9] | Initial Investment Value | Final Investment Value | Annualized Investment Return [10] |
|---|---|---|---|---|---|---|---|---|
| -8% | 1,000 | 737 | 260 | 0 | -100% | 1,000 | 737 | -8% |
| -6% | 1,000 | 797 | 260 | 0 | -100% | 1,000 | 797 | -6% |
| -4% | 1,000 | 861 | 260 | 0 | -100% | 1,000 | 861 | -4% |
| -2% | 1,000 | 929 | 260 | 0 | -100% | 1,000 | 929 | -2% |
| 0% | 1,000 | 1,000 | 260 | 0 | -100% | 1,000 | 1,000 | 0% |
| 2% | 1,000 | 1,075 | 260 | 75 | -39% | 1,000 | 1,075 | 2% |
| 4% | 1,000 | 1,155 | 260 | 155 | -13% | 1,000 | 1,155 | 4% |
| 6% | 1,000 | 1,238 | 260 | 238 | -2% | 1,000 | 1,238 | 6% |
| 6.31% | 1,000 | 1,260 | 260 | 260 | 0.00% | 1,000 | 1,260 | 6.31% |
| 8% | 1,000 | 1,326 | 260 | 326 | 6.36% | 1,000 | 1,326 | 8.00% |
| 10% | 1,000 | 1,418 | 260 | 418 | 13.84% | 1,000 | 1,418 | 10.00% |
| 12% | 1,000 | 1,515 | 260 | 515 | 20.50% | 1,000 | 1,515 | 12.00% |
| 14% | 1,000 | 1,617 | 260 | 617 | 26.56% | 1,000 | 1,617 | 14.00% |
| 16% | 1,000 | 1,723 | 260 | 723 | 32.18% | 1,000 | 1,723 | 16.00% |
| 18% | 1,000 | 1,834 | 260 | 834 | 37.45% | 1,000 | 1,834 | 18.00% |

A hypothetical illustration is not meant to forecast, imply or guarantee future performance.

Represents the scenario under which the Payoff at Maturity Amount equals the Initial Warrant Premium of the Warrant.

Represents the scenario under which the Annualized Pre-Tax Warrant Return equals the Annualized Pre-Tax Investment Return of the Hypothetical Direct Investment.

---

[8] Simulated, modeled, or hypothetical performance results have certain inherent limitations. No representation is being made that any client will or is likely to achieve any of the hypothetical returns represented above.

[9] The constant rate at which the applicable Warrant Premium must grow to equal the Payoff at Maturity, if compounded annually over 3 2/3 years. Note this calculation gives no consideration to the time from the Valuation Date to the Warrant Payment Date.

[10] The constant rate at which the applicable Initial Investment Value must grow to equal the applicable Final Investment Value, if compounded annually over 3 2/3 years.

LEHMAN BROTHERS

CONFIDENTIAL



| | Reference Fund | | Warrant | | | | Hypothetical Direct Investment | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| Fund Net Annual Return[12] | Initial NAV | Final NAV | Initial Warrant Premium | Payoff at Maturity | Post-Tax Payoff at Maturity[13] | Annualized Post-Tax Return[14] | Initial Investment Value | Final Investment Value | Final Post-Tax Value[15] | Annualized Post-Tax Return[16] |
| -8% | 1,000 | 737 | 260 | 0 | 0 | -100% | 1,000 | 737 | 737 | -8% |
| -6% | 1,000 | 797 | 260 | 0 | 0 | -100% | 1,000 | 797 | 797 | -6% |
| -4% | 1,000 | 861 | 260 | 0 | 0 | -100% | 1,000 | 861 | 861 | -4% |
| -2% | 1,000 | 929 | 260 | 0 | 0 | -100% | 1,000 | 929 | 929 | -2% |
| 0% | 1,000 | 1,000 | 260 | 0 | 0 | -100% | 1,000 | 1,000 | 1,000 | 0% |
| 2% | 1,000 | 1,075 | 260 | 75 | 75 | -29% | 1,000 | 1,075 | 1,048 | 1% |
| 4% | 1,000 | 1,155 | 260 | 155 | 155 | -13% | 1,000 | 1,155 | 1,100 | 3% |
| 6% | 1,000 | 1,238 | 260 | 238 | 238 | -2% | 1,000 | 1,238 | 1,153 | 4% |
| 6.9%* | 1,000 | 1,355 | 260 | 355 | 355 | 0%* | 1,000 | 1,355 | 1,000 | 6.9%* |
| 10% | 1,000 | 1,418 | 260 | 418 | 394 | 12% | 1,000 | 1,418 | 1,269 | 7% |
| 12% | 1,000 | 1,515 | 260 | 515 | 477 | 18% | 1,000 | 1,515 | 1,331 | 8% |
| 14% | 1,000 | 1,617 | 260 | 617 | 563 | 23% | 1,000 | 1,617 | 1,397 | 10% |
| 16% | 1,000 | 1,723 | 260 | 723 | 654 | 29% | 1,000 | 1,723 | 1,465 | 11% |
| 18% | 1,000 | 1,834 | 260 | 834 | 748 | 33% | 1,000 | 1,834 | 1,537 | 12% |
| 20% | 1,000 | 1,951 | 260 | 951 | 847 | 38% | 1,000 | 1,951 | 1,612 | 14% |

A hypothetical illustration is not meant to forecast, imply or guarantee future performance.

* Represents the scenario under which the Annualized Post-Tax Warrant Return equals the Annualized Post-Tax Investment Return of the Hypothetical Direct Investment.

Lehman Brothers does not provide tax advice. These numbers assume that the Warrant is respected as an option for U.S. federal income tax purposes, as explained in greater detail in the Memorandum. Alternative characterizations are possible that could affect the amount, timing and character of income, gain or loss recognized by you. These tax issues are complex. For more information, please consult the section in the Memorandum entitled "Certain U.S. Federal Income Tax Considerations." In addition, you are urged to consult your own tax advisor as to the proper tax treatment of the Warrant for U.S. federal, state and local income tax purposes.

---

[11] Simulated, modeled, or hypothetical performance results have certain inherent limitations. No representation is being made that any client will or is likely to achieve any of the hypothetical returns represented above.

[12] As mentioned above, this analysis assumes appreciation or depreciation of the Reference Fund at a constant rate with annual compounding.

[13] Assumes that gains (i.e., the excess of the applicable Warrant Payment Amounts over the applicable Warrant Premiums) as of the Warrant Payment Date are taxed at the maximum long term capital gain rate currently in effect (15%). Note that this analysis gives no consideration to the effect of losses for U.S. federal income tax purposes.

[14] The constant rate at which the applicable Warrant Premium must grow to equal the applicable Post-Tax Warrant Payment Amount, if compounded annually over 3 2/3 years. Note this calculation gives no consideration to the time from the Valuation Date to the Warrant Payment Date.

[15] Assumes that cumulative gains (i.e., the excess of the applicable Final Investment Value over the applicable Initial Investment Value) as of the Valuation Date are taxed at a 35.64% rate. An actual investment in the Reference Fund may be taxed at a different rates and would likely realize taxes on an annual basis. Note that this calculation gives no consideration to the effect of losses for U.S. federal income tax purposes.

[16] The constant rate at which the applicable Initial Investment Value must grow to equal the applicable Post-Tax Final Investment Value, if compounded annually over 3 2/3 years.

**LEHMAN BROTHERS**

CONFIDENTIAL

# RISK FACTORS

The following highlights some, but not all, of the risk considerations relevant to investing in the Warrants. The following must be read in conjunction with the section "Risk Factors" beginning on page [●] of the attached Memorandum. Defined terms not defined herein shall have the same meaning as in the attached Memorandum.

## Holders May Lose Their Entire Investment

The Warrants are leveraged investments that involve a high degree of risk that may result in the Warrants maturing worthless. A Holder will lose its entire investment if the Final NAV is less than or equal to the Strike Price. A Holders will lose a portion of its investment if the net asset value of the Reference Fund does not increase such that the Final NAV is at least [25.5-26.5]% greater than the Strike Price. This means that if the net asset value of the Reference Fund increases such that the Final NAV is exactly [25.5-26.5]% greater than the Strike Price, each Holder will receive an amount equal to the Total Cost in respect of each of its Warrants.

## Limited Trading History on the Performance of the Reference Fund

The Reference Fund has a limited trading history. Historical levels of the Reference Fund or any investment fund or account managed by DESCO L.P. are not indicative of and have no bearing on future performance of the Reference Fund.

## Holders Should Investigate the Reference Fund as if Investing Directly

Holders should conduct their own diligence of the Reference Fund as it would if it were directly investing in the Reference Fund. Holders should not conclude that the sale by the Issuer of the Warrants is any form of investment recommendation by the Issuer to invest in the Reference Fund.

## Related Ownership of the Issuer and the Reference Fund

An affiliate of the Issuer, acquired a minority equity investment in each of DESCO L.P., and DESCO L.L.C., effective as of March 1, 2007, which entitles such affiliate, among other rights, to receive a share of the management fees and incentive fees paid by the Reference Fund to DESCO L.P. and DESCO L.L.C.. In addition, the Issuer and its affiliates may be party to various financial contracts with, or provide services to, the Reference Fund. None of the Issuer nor any of its affiliates has the ability to control the investment decisions of the Reference Fund. Neither the Issuer nor its affiliates or agents makes any representation as to the financial condition or creditworthiness of the Reference Fund in connection with the issuance of the Warrants. None of DESCO, L.P., DESCO L.L.C., the Reference Fund, or any affiliate of the foregoing sponsors or endorses the Issuer or the Warrants.

## The Issuer is Not Responsible for Disclosure of Information by the Reference Fund

Neither the Issuer nor any of its affiliates or agents has participated in the preparation of the Confidential Private Offering Memorandum of the Reference Fund. Accordingly, the Issuer makes no representation or warranty with respect to the accuracy, validity or completeness of any such information.

Although the Issuer owns a 20% interest in the top-level investment management entities of the D. E. Shaw group, the Issuer has no ability to control or predict their actions or the public disclosure of any events or circumstance affecting them. Therefore, the Issuer has no responsibility to monitor, verify, or disseminate current or future public disclosure of information by the Reference Fund in its fund documents or otherwise.

LEHMAN BROTHERS

CONFIDENTIAL



## Specific Investment and Trading Risks Relating to the Reference Fund

The Warrants are subject to the risks of an investment in the Reference Fund. Investors should review the risks set forth in the Confidential Private Offering Memorandum of the Reference Fund, which is attached as Exhibit V of the Memorandum.

## Risks Relating to Hedge Funds and the Reference Fund

The Warrants are subject to many of the risks of investments in hedge funds. Investments in hedge funds can be speculative and involve a high degree of risk. The following is a list of some of the significant risks associated with hedge funds and the performance of the Warrants.

•    The Reference Fund is not registered or regulated under the Investment Company Act. Investor protections similar to those afforded by the Investment Company Act relating to, among other matters, publication of net asset values, rights of redemption and controls over changes to an investment company's investment adviser, investment policies, and fees payable to an investment company's service providers, may not be available.

•    The unregulated nature of investments made by the Reference Fund, such as the employment of different types of trading strategies (including leverage) and the investment in certain types of instruments that are typically prohibited for funds registered under the Investment Company Act.

•    The Reference Fund may invest in and trade in a variety of financial instruments using sophisticated investment techniques for hedging and non-hedging purposes. Such financial instruments and investment techniques include but are not limited to, the use of leverage (i.e., borrowing money for investment purposes), transactions that use derivatives such as swaps, options, index options, futures contracts and options on futures. While these investment strategies and financial instruments allow the Reference Fund the flexibility to generate positive returns, they also allow for greater volatility and the opportunity for significant losses that may adversely affect the value of the Reference Fund and thus the return on the Warrants.

•    The Reference Fund may invest in securities listed or traded on foreign exchanges. The execution of transactions on foreign exchanges might involve particular risks including but not limited to higher volatility, government intervention, lack of transparency, lack of regulation, currency risk, political risk and economic social instability.

•    DESCO L.P. has total trading authority over the Reference Fund. The use of a single adviser applying generally similar trading programs could mean lack of diversification and, consequently, higher risk.

•    Certain inherent and potential conflicts of interest may exist with respect to the operation of the Reference Fund.

•    The use of the above investment strategies, investment in the above instruments and the general characteristics of hedge funds may cause the Reference Fund to be volatile.

•    Hedge funds may involve complex tax structures and delays in distributing important tax information.

•    Hedge funds may have high fees and expenses that may offset the hedge fund's trading profits.

•    There is no secondary market for investors' interests in hedge funds (and none is expected to develop), there may be restrictions on transferring interests in hedge funds, and hedge funds may suspend or limit the right of

LEHMAN BROTHERS

CONFIDENTIAL

redemption under certain circumstances. Thus, an investment in hedge funds should generally be regarded as illiquid.

* While hedge funds generally may provide periodic performance reports and annual audited financial statements, they are not otherwise required to provide periodic pricing or valuation information to investors.

* Legal, tax and regulatory changes could occur during the term of this Warrant that may adversely affect the Reference Fund. The regulatory environment for hedge funds is evolving, and changes in the regulation of hedge funds may adversely affect the value of investments held by the Reference Fund.

## Your Warrants Could Be Terminated Early

If the Calculation Agent determines that an Early Termination Event has occurred during the term of the Warrants, your Warrants will be terminated as of the date selected by the Calculation Agent as the Early Termination Date. Upon termination of the Warrants pursuant to an Early Termination Event, the Calculation Agent will determine the Early Termination Amount, which will be an amount equal to the market value of the Warrants as of the relevant measurement date, and which will be reduced by any losses or costs of the Issuer or its affiliates that are or would be incurred in closing its or its affiliates' hedge position(s) (including the effect of any withdrawal fees) arising from the occurrence of such Early Termination Event. In determining the Early Termination Amount, the Calculation Agent may consider any relevant information it deems appropriate.

## Reliance on DESCO L.P.

The value of Interests in the Reference Fund is dependent on the ability of DESCO L.P. to choose investments that appreciate in value, as well as other factors not within DESCO L.P.'s control. There can be no assurance that DESCO L.P. will succeed in choosing investments that appreciate in value.

## Secondary Trading of the Warrants is Limited and They are Subject to Substantial Restrictions on Transferability

The Warrants will not be listed on an organized securities exchange in the United States or abroad. There is currently no secondary market for the Warrants. Even if there is a secondary market, it is not likely to provide significant liquidity.

The Warrants are subject to substantial restrictions on transferability. The Warrants will not be registered under the Securities Act or the securities laws of any state or any other jurisdictions and cannot, therefore, be resold unless they are subsequently registered under these laws or an exemption from registration is found. The Warrants may be sold only to Accredited Investors who are also Qualified Purchasers. Investors must thus be prepared to bear the risk of owning Warrants for an extended period of time.

## Warrants are not Registered

The Warrants are not registered, and the Issuer does not intend to register the Warrants, under the Securities Act or under any state securities laws. Neither the Securities and Exchange Commission nor any state securities commission or regulatory authority has recommended or approved the Warrants, nor has any such commission or regulatory authority reviewed or passed upon the accuracy or adequacy of this Memorandum.

LEHMAN BROTHERS

CONFIDENTIAL



## The Warrants do not Confer Beneficial Ownership in the Reference Fund or its Affiliates

The Reference Fund is merely a reference used to calculate the value of the Warrants. The Warrants are issued by Lehman Brothers Holdings Inc. and represent an investment that is separate and distinct from an investment in the Reference Fund or Oculus Fund. Neither the Issuer nor its affiliates or agents is offering any interest in the Reference Fund. An investment in the Warrants confers no indicia of ownership in the Reference Fund or Oculus Fund and neither creates nor implies any rights or remedies with respect to the Reference Fund, Oculus Fund, DESCO L.P., DESCO, L.L.C., or D. E. Shaw Securities, L.L.C. (the placement agent for the Reference Fund) or affiliates of the foregoing.

## Your Investment Will Be 'New Issues' Restricted

Investments in the Warrants will be 'new issues' restricted. In calculating the Warrant Payment Amount, returns will exclude any amount (whether positive or negative) attributable to 'new issues,' as defined in Rule 2790 (or any successor rule) of the National Association of Securities Dealers, Inc. (the "NASD"). Rule 2790 prohibits certain persons from receiving the economic benefit of new issues. Each of the Issuer and any affiliate that may be entering into transactions to hedge the Issuer's exposure under the Warrants is a Restricted Person under Rule 2790 and, accordingly, any investment by any of them in member interests of the Reference Fund will be treated as though it had been made by a Restricted Person. A 'Restricted Person' includes most associated persons of a U.S. broker-dealer, most owners and affiliates of a broker-dealer and certain other classes of persons. The Reference Fund does not currently invest in new issues, but the Reference Fund's operative documents reserve the right for DESCO L.L.C. as the managing member of the Reference Fund, without the approval or consent of the Reference Fund's members to make such amendments as DESCO L.L.C. deems necessary or appropriate in connection with enabling the Reference Fund to trade new issues. In the event such amendments are adopted, the Warrants would be linked to the performance of Interests of the Reference Fund that are restricted from participating in gains or losses attributable to new issues pursuant to and subject to the terms of the Reference Fund's amended operative documents.

## ERISA Limitations

The Warrants may not be acquired by, on behalf of, or with the assets of, an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), a plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), a plan subject to any federal, state, local or other law, rule or regulation which is substantially similar to Title I of ERISA or Section 4975 of the Code ("Similar Law") or any entity deemed to hold the assets of such an employee benefit plan or plan for purposes of ERISA, Section 4975 of the Code or Similar Law. Any investor or transferee shall further be deemed to represent and covenant that throughout the period it holds Warrants, the foregoing representations shall be true.

## Income Tax Rules Related to the Warrants are Complex

The income tax rules relevant to the Warrant are quite complex and may result in significant and possibly adverse tax consequences. An investor should consult with its own tax adviser in order to understand fully the federal, state and local income tax consequences of an investment in this Warrant.

LEHMAN BROTHERS

CONFIDENTIAL

**Subject to Completion Dated June [•], 2007**

[•]

## 3 2/3-YEAR CASH-SETTLED CALL WARRANTS

### linked to the

### PERFORMANCE OF

### D. E. SHAW OCULUS FUND

### ISSUED BY LEHMAN BROTHERS HOLDINGS INC.

### CONFIDENTIAL

### PRELIMINARY PRIVATE PLACEMENT MEMORANDUM

This preliminary private placement memorandum is not to be shown or given to any person other than the person who directly received it from the Placement Agent (as defined below) and is not to be copied or otherwise reproduced in any manner whatsoever. If the language along the left margin does not appear in red, there is a presumption that this preliminary private placement memorandum has been improperly reproduced and circulated, in which case Lehman Brothers Inc. disclaims any responsibility for its content and use. Failure to comply with this directive can result in a violation of the Securities Act of 1933, as amended (the "Securities Act").

The warrants have not been and will not be registered under the Securities Act, or any state securities law. The warrants are exempt from registration under Section 4(2) of the Securities Act and similar exemptions from registration provided by certain state securities laws. The warrants may be offered, sold and otherwise transferred only to persons who are "accredited investors" as defined in Rule 501 of the Securities Act who are also "qualified purchasers" as defined in Section 2(a)(51) of the Investment Company Act of 1940 (the "Investment Company Act"), who have no need for liquidity of investment and understand and can afford the financial and other risks of an investment in a warrant.

The warrants are being offered by Lehman Brothers Holdings Inc. (the "Issuer") through Lehman Brothers Inc. as placement agent (the "Placement Agent"). The Issuer reserves the right to withdraw, cancel or modify such offers and to reject orders in whole or in part. The Placement Agent will have the right to reject in whole or in part any offer to purchase warrants.

For more information about D. E. Shaw Oculus Fund, L.L.C. (the "Reference Fund"), D. E. Shaw Oculus Portfolios, L.L.C., and D. E. Shaw Oculus International Fund (collectively with the Reference Fund and subsidiaries of any of the foregoing, "Oculus Fund") as well as about D. E. Shaw & Co., L.P. ("DESCO L.P."), which acts as the investment adviser to the Reference Fund, and D. E. Shaw & Co., L.L.C. ("DESCO L.L.C."), which is the managing member of the Reference Fund, prospective investors are encouraged to review the Confidential Private Offering Memorandum of the Reference Fund, attached as Exhibit V to the preliminary private placement memorandum. Neither the Issuer nor its affiliates or agents have participated in the preparation of any offering or subscription documents for interests the Reference Fund. Accordingly, neither the Issuer nor its affiliates or agents makes any representation or warranty with respect to the accuracy, validity or completeness of any such information. Investors should conduct their own diligence of the Reference Fund as they would if investing directly in the Reference Fund. None of DESCO L.P., DESCO L.L.C., the Reference Fund, or any affiliate of the foregoing sponsors or endorses the Issuer or the Warrants.

The Warrants are issued by Lehman Brothers Holdings Inc. and represent an investment that is separate and distinct from an investment in the Reference Fund or Oculus Fund. Neither the Issuer nor its affiliates or agents is offering any interest in the Reference Fund. An investment in the Warrants confers no indicia of ownership in the Reference Fund or Oculus Fund and neither creates nor implies any rights or remedies with respect to the Reference Fund, Oculus Fund, DESCO L.P., DESCO, L.L.C., or D. E. Shaw Securities, L.L.C. (the placement agent for the Reference Fund) or affiliates of the foregoing.

## LEHMAN BROTHERS INC.

Dated as of [June •], 2007

The information in this preliminary private placement memorandum is not complete and may be changed. We may not sell these warrants until the preliminary private placement memorandum is delivered in final form. This preliminary private placement memorandum is not an offer to sell these securities and it is not soliciting an offer to buy these securities in any jurisdiction where the offer or sale is not permitted.

## TABLE OF CONTENTS

Page

SUMMARY OF PRINCIPAL TERMS ....................................................................1
   Issuance......................................................................................................1
   Exercise and Maturity ................................................................................2
   Warrant Payment Amount .........................................................................2
   Liquidity.....................................................................................................3
   In-Kind Distributions ................................................................................4
   Early Termination ......................................................................................4
   Potential Adjustment Event .......................................................................8
   Transfer Agent ...........................................................................................9
   Calculation Agent ......................................................................................9
   Calculations..............................................................................................10
   Form and Transfer....................................................................................10
   Ratings .....................................................................................................10
RISK FACTORS ...................................................................................................11
   Holders May Lose Their Entire Investment..............................................11
   Limited Trading History on the Performance of the Reference Fund ........11
   Holders Should Investigate the Reference Fund as if Investing Directly ...12
   Risks Relating to the Reference Fund, DESCO L.L.C. or DESCO L.P. ....12
   Related Ownership of the Issuer and the Reference Fund .........................12
   The Issuer is Not Responsible for Disclosure of Information by the Reference Fund
      and Has No Obligation to Disclose Information About the Reference Fund After
      the Date of this Memorandum ...............................................................12
   Value of Warrants Influenced by Many Unpredictable Factors .................13
   Specific Investment and Trading Risks Relating to the Reference Fund .....14
   Risks Relating to Hedge Funds and the Reference Fund............................14
   Your Warrants Could Be Terminated Early ..............................................16
   Reliance on DESCO L.P...........................................................................16
   Secondary Trading of the Warrants is Limited and They are Subject to Substantial
      Restrictions on Transferability............................................................17
   Warrants are not Registered......................................................................18
   Investors in Warrants will be Exposed to the Issuer's Credit Risk.............18
   The Warrants do not Confer Beneficial Ownership in the Reference Fund or its
      Affiliates .............................................................................................18
   Your Investment Will Be 'New Issues' Restricted.....................................19
   ERISA Limitations...................................................................................19
   Hedging Transactions by the Issuer .........................................................19
   Adverse Economic Interests to Holders....................................................20
   Certain Business Activities May Create Conflicts of Interest with Holders ...20
   Investment Suitability ..............................................................................21
   Transfer Restrictions................................................................................22
   Income Tax Rules Related to the Warrants are Complex............................22
PLAN OF DISTRIBUTION ..................................................................................22

-i-

SUITABILITY REQUIREMENTS AND TRANSFER RESTRICTIONS ...................................23
CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS .........................................25
   Tax Treatment of Warrants..................................................................26
   Taxation of U.S. Holders......................................................................26
   Possible Alternative Tax Treatments of an Investment in Warrants ...................28
   Backup Withholding and Information Reporting ......................................28
CERTAIN BENEFIT PLAN CONSIDERATIONS.............................................................28
USE OF PROCEEDS ..............................................................................................29
LEHMAN BROTHERS HOLDINGS INC. .....................................................................29
THE REFERENCE FUND ........................................................................................31

**EXHIBITS**

I:   Form of Investor Representation Letter....................................................I-1

II:   Form of Transferee Representation Letter..................................................II-1

III:   Form of Issuing, Paying and Transfer Agency Agreement ...........................III-1

IV:   Form of Calculation Agency Agreement...................................................IV-1

V:   Confidential Private Offering Memorandum of D. E. Shaw Oculus Fund, L.L.C. .........V-1

VI:   Form of Market Making Request..............................................................VI-1

This Preliminary Private Placement Memorandum (the "Memorandum") relates to the offer and sale by Lehman Brothers Holdings Inc. ("LBH" or the "Issuer"), in a transaction not involving a public offering, of 3 2/3-Year Cash-Settled Call Warrants Linked to the Performance of D.E. Shaw Oculus Fund (the "Warrants") as more fully described herein.

The obligations of the parties to the transaction contemplated herein are set forth in and will be governed by certain documents described herein; all of the statements and information contained herein are qualified in their entirety by reference to such documents. This Memorandum contains summaries of certain of these documents which LBH believes to be accurate, but for a complete description of the rights and obligations of the parties thereto, reference is hereby made to the actual documents, copies of which are attached hereto, and all such summaries are qualified in their entirety by this reference.

LBH will afford to prospective investors the opportunity to ask questions of, and receive answers from, LBH concerning the offering of the Warrants and to obtain additional relevant information which LBH possesses or can acquire without unreasonable effort or expense.

This Memorandum is based on information supplied by LBH and other sources identified herein and is being furnished on a confidential basis solely for the use of prospective investors in connection with the non-public offering of the Warrants.

The Warrants are being offered in negotiated transactions or otherwise and are offered when, as, and if issued, subject to prior sale or withdrawal, cancellation, or modification of any matters by counsel and certain other conditions. LBH may from time to time offer and sell other, similar Warrants with different terms to purchasers other than the offerees hereunder.

Subject to the provisions contained herein, the Warrants are being sold on behalf of LBH to persons described in the paragraph below by Lehman Brothers Inc. (the "Placement Agent").

The purchase of a Warrant offered hereby is suitable only for, and should be made only by, investors who are "accredited investors," as defined in Rule 501 of Regulation D under the Securities Act ("Accredited Investors") who are also "qualified purchasers," as defined in Section 2(a)(51) of the Investment Company Act ("Qualified Purchasers") who have no need for liquidity of investment and understand and can afford the financial and other risks of an investment in a Warrant.

THE INITIAL INVESTOR AND EACH TRANSFEREE SHALL REPRESENT THAT IT IS NOT, AND IT IS NOT ACQUIRING WARRANTS WITH THE ASSETS OF, AN EMPLOYEE BENEFIT PLAN SUBJECT TO TITLE I OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED ("ERISA"), A PLAN SUBJECT TO SECTION 4975 OF THE INTERNAL REVENUE CODE OF 1986, AS AMENDED (THE "CODE"), A PLAN SUBJECT TO ANY FEDERAL, STATE, LOCAL OR OTHER LAW, RULE OR REGULATION WHICH IS SUBSTANTIALLY SIMILAR TO TITLE I OF ERISA OR SECTION 4975 OF THE CODE ("SIMILAR LAW") OR ANY ENTITY DEEMED TO HOLD THE ASSETS OF SUCH AN EMPLOYEE BENEFIT PLAN OR PLAN FOR PURPOSES OF ERISA, SECTION 4975 OF THE CODE OR SIMILAR LAW. ANY INVESTOR OR TRANSFEREE SHALL FURTHER BE DEEMED TO REPRESENT AND

COVENANT THAT THROUGHOUT THE PERIOD IT HOLDS WARRANTS, THE FOREGOING REPRESENTATIONS SHALL BE TRUE.

AN INVESTMENT IN THE WARRANTS INVOLVES CERTAIN SUBSTANTIAL RISKS, INCLUDING THE RISK THAT INVESTORS MAY LOSE THE ENTIRE VALUE OF THEIR INVESTMENTS IN CERTAIN CIRCUMSTANCES. See "Risk Factors" for a discussion of certain factors that prospective investors should carefully consider before they invest in the Warrants.

The Warrants are being offered to a limited number of Accredited Investors who are also Qualified Purchasers. The offering of the Warrants will not be registered under the Securities Act in reliance upon an exemption provided in the Securities Act. There is no market for the Warrants being offered hereby and, as a result, a purchaser of a Warrant must be prepared to hold it for an indefinite period of time. Transfers of the Warrants may be made only in accordance with the transfer restrictions set forth herein.

## IRS CIRCULAR 230 NOTICE

THIS MEMORANDUM WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING UNITED STATES FEDERAL, STATE, OR LOCAL TAX PENALTIES. THIS MEMORANDUM WAS WRITTEN AND PROVIDED BY THE ISSUER IN CONNECTION WITH THE PROMOTION OR MARKETING BY THE ISSUER AND/OR PLACEMENT AGENT OF THE WARRANTS. EACH HOLDER SHOULD SEEK ADVICE BASED ON ITS PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

Notwithstanding anything to the contrary contained herein, all persons may disclose to any and all persons, without limitation of any kind, the federal, state and local tax treatment of the Warrants, any fact relevant to understanding the federal, state and local tax treatment of the Warrants and all materials of any kind (including opinions or other tax analyses) relating to such tax treatment and that may be relevant to understanding such tax treatment. However, no person may disclose the name of or identifying information with respect to any party identified herein or any pricing terms or other nonpublic business or financial information that is unrelated to the purported or claimed federal, state or local tax treatment of the Warrants and is not relevant to understanding the purported or claimed federal, state and local tax treatment of the Warrants.

No person has been authorized to give any information or to make any representations other than those contained in this Memorandum and, if given or made, such information or representations must not be relied upon. This Memorandum does not constitute an offer to sell or a solicitation of an offer to buy any securities other than the Warrants nor does it constitute an offer of the Warrants to any person in any state or other jurisdiction in which such offer would be unlawful. This Memorandum does not include information relating to events occurring subsequent to its date, except as specifically indicated. The delivery of this Memorandum at any time does not imply that information herein is correct as of any time subsequent to its date. The Warrants may not be sold to any person without delivery of this Memorandum and the Exhibits attached hereto.

## SUMMARY OF PRINCIPAL TERMS

*The information set forth below is qualified in its entirety by reference to the Form of Issuing, Paying and Transfer Agency Agreement attached hereto as Exhibit III. Each prospective investor should review Exhibit III, and no purchase of a Warrant should be made until such review is completed.*

**Issuance**

The Issuer will issue [•] U.S. dollar Warrants for a total cost, including selling compensation, that is currently expected to be as high as $[255-265] per Warrant (the "Total Cost"). The Total Cost has been priced to include the selling compensation payable to Lehman Brothers Inc. (the "Placement Agent"). For an explanation of the components of the Total Cost and the plan of distribution, see "*Plan of Distribution.*"

The Issuer expects to issue the Warrants on or about [August 1, 2007] (the "Issue Date"). The minimum initial investment is [377-392] Warrants per investor, subject to waiver at the discretion of the Placement Agent, with additional investments permitted in denominations of one Warrant or multiples thereof. The closing and settlement date for the Warrants will be the Issue Date.

Each Warrant is linked to the performance of the regular member interests (the "Interests") D. E. Shaw Oculus Fund (the "Reference Fund"). Each Warrant will entitle you to receive from the Issuer an amount, if any, on the Warrant Payment Date (as defined below) in U.S. dollars based on the value of the Reference Fund, as determined by the Calculation Agent, on the Valuation Date (as defined below).

The Warrants represent an investment that is separate and distinct from an investment in the Reference Fund. Neither the Issuer nor its affiliates or agents is offering any Interest in the Reference Fund. An investment in the Warrants confers no indicia of ownership in the Reference Fund and neither creates nor implies any rights or remedies with respect to the Reference Fund or its affiliates.

The Reference Fund invests in D. E. Shaw Oculus Portfolios, L.L.C. (the "Oculus Master Fund" and collectively with the Reference Fund, D. E. Shaw Oculus International Fund, and subsidiaries of any of the foregoing, the "Oculus Fund"). For purposes of the discussion herein, any reference to the Reference Fund's assets or investments shall include the assets and investments of the Oculus Master Fund that are attributable to interests of the Oculus Master Fund held by the Reference Fund.

For more information about the Reference Fund, prospective investors are encouraged to review the Confidential Private Offering Memorandum of the Reference Fund, attached hereto as Exhibit V. Neither the Issuer nor its affiliates or agents have participated in the preparation of any offering or subscription documents for interests of the Reference Fund. Accordingly, neither the Issuer nor its affiliates or agents makes any representation or warranty with respect to the accuracy, validity or completeness of any such information. Investors should conduct their own diligence of the Reference Fund as they would if investing directly in the Reference Fund. None of the Reference Fund, D. E. Shaw & Co., L.P. ("DESCO L.P."), which acts as the investment

-1-

adviser to the Reference Fund, D. E. Shaw & Co., L.L.C. ("DESCO L.L.C."), which is the managing member of the Reference Fund, or any affiliate of the foregoing sponsors or endorses the Issuer or the Warrants.

The Warrants will be governed by, and construed in accordance with, the laws of the State of New York.

**Exercise and Maturity**

The Warrants will be exercised automatically on the Valuation Date. The Warrants are scheduled to mature on [May 5, 2011] (the "Warrant Payment Date"); provided that if the Calculation Agent determines that a Reference Holder (as defined below) would not have received all redemption proceeds by the end of the day on [April 30, 2011], assuming a timely request for redemption by such Reference Holder of the Deemed Quantity of Interests (as defined below) effective as of the Valuation Date, the Warrant Payment Date shall be the earlier of (i) [five] Business Days after the date that a Reference Holder would have received all such redemption proceeds, as determined by the Calculation Agent and (ii) [ten] Business Days after the Audit Date. Each Warrant entitles each holder thereof (a "Holder") to payment of the Warrant Payment Amount (as defined below) on the Warrant Payment Date. The Warrants may only be exercised for cash (U.S. dollars) and Holders will not be entitled to receive any Interests of the Reference Fund.

**Warrant Payment Amount**

On the Warrant Payment Date (or if such day is not a Business Day then the immediately succeeding Business Day), Holders will receive, with respect to each Warrant, an amount (the "Warrant Payment Amount") which is the greater of zero and

$$\text{USD } 1,000 \times \left( \frac{\text{Final NAV - Strike Price}}{\text{Initial NAV}} \right)$$

If the calculation of the Warrant Payment Amount yields an amount less than zero, Holders will not receive a payment from the Issuer, nor will Holders be required to make any payment to the Issuer. A Holder's loss will be limited to the Total Cost paid by such Holder for each Warrant.

"Final NAV" means, as of the Valuation Date, the aggregate redemption proceeds that would be received by a Reference Holder on or prior to the date that is [five] Business Days after the Audit Date, assuming timely submission of a request for redemption of the Deemed Quantity of Interests (as defined below) effective as of the Valuation Date, as determined by the Calculation Agent. The Final NAV shall be calculated by deducting from such amount any redemption, management, incentive or administrator fees or other costs (including, without limitation, any applicable withdrawal fee) payable by a Reference Holder in respect of such Deemed Quantity of Interests, to the extent such amounts have not already been deducted by the Reference Fund in calculating the amount of redemption proceeds payable to the Reference Holder, as determined by the Calculation Agent. For the avoidance of doubt, if the Calculation Agent determines that a Reference Holder, assuming timely submission of a request for redemption of the Deemed Quantity of Interests effective as of the Valuation Date, would not have received any of the

-2-

redemption proceeds on or prior to the date that is [five] Business Days after the Audit Date, the Calculation Agent shall determine the Final NAV, which Final NAV may be equal to zero.

"Valuation Date" means [March 31, 2011].

"Audit Date" means, with respect to any date of determination, the date on which the Reference Fund's independent auditors have completed their examination of the Reference Fund's financial statements for the period including such date of determination.

"Reference Holder" means a hypothetical Regular Member of the Reference Fund that is deemed to have the benefits and obligations of an investor owning, during the term of the Warrants, Interests in the Reference Fund, as determined by the Calculation Agent. The Reference Holder will have a tax situs in Delaware. The Reference Holder does not represent an investment in or an Interest in the Reference Fund.

"Strike Price" means 100% of the Initial NAV.

"Initial NAV" means $1,000.

"Deemed Quantity of Interests" means a hypothetical quantity of Interests of the Reference Fund with an aggregate value as of the Issue Date equal to the Initial NAV.

"Business Day" means a day, other than a Saturday or a Sunday, that is neither a legal holiday nor a day on which banking institutions in New York are authorized or obligated by law or executive order to close.

The Warrants are linked the performance of Interests of the Reference Fund that are restricted from participating in gains or losses attributable to "new issues" investments by the Reference Fund to the extent deemed necessary or advisable by the Reference Fund to comply with Rule 2790 as adopted by the NASD on December 23, 2003, and as may subsequently be modified.

## Liquidity

The Warrants will not be listed on any securities exchange or quotation system. No secondary market in the Warrants is expected to develop. The only market, if any, for the Warrants will be the repurchase of the Warrants by the Issuer or the purchase of Warrants by the Placement Agent. Neither the Placement Agent nor its affiliates have any obligation to make a market for the Warrants, they do not anticipate making a market for the Warrants, and may cease or alter market-making activities if commenced at any time. To the extent the Placement Agent does effect market-making transactions, the Placement Agent will determine market-making prices, based largely, on the factors set forth under "*Risk Factors— Secondary Trading of the Warrants is Limited and They are Subject to Substantial Restrictions on Transferability.*"

The Placement Agent intends, but is not obligated, to provide an opportunity for Holders to sell their Warrants to the Placement Agent. To request a market making transaction, a Holder must provide a signed copy of the form of Market Making Request attached hereto as Exhibit VI. The Market Making Request must be received by the Placement Agent no later than [55] calendar days in advance of the last Business Day of a calendar quarter. The Placement Agent

will determine the market making price as of that quarter end. For the avoidance of doubt, until the parties agree to the final terms of any such transaction, the submission of a Market Making Request shall not obligate the Placement Agent or the requesting Holder to enter into a market making transaction.

If the Placement Agent agrees to buy a Warrant from a Holder, there will likely be significant delays between the time it agrees to such purchase and the pricing and settlement of such purchase. The Placement Agent may be the only source of price quotes for the Warrants. Any secondary market price quoted by the Placement Agent would reflect any changes in market conditions and other relevant factors, and the quoted price could be higher or lower than the initial purchase price.

In addition, any secondary market purchase of the Warrants by the Placement Agent or any of its affiliates prior to maturity will be at a price that is net of the commissions paid to the Placement Agent as described under *"Plan of Distribution."* Also, likely to be excluded from the secondary market price quote are the projected profits included in the cost of hedging the Issuer's obligations under the Warrants. In addition, any such prices may differ from values determined by pricing models used by the Calculation Agent, due to dealer discounts, mark-ups, hedge unwinds or other transaction costs (including any applicable withdrawal fee). As a result, the price at which Holders may sell their Warrants to the Placement Agent or any of its affiliates may be less than the Holders' original cost.

## In-Kind Distributions

The Warrants are linked the performance of Interests of the Reference Fund that are restricted from participating in gains or losses attributable to "new issues" investments by the Reference Fund to the extent deemed necessary or advisable by the Reference Fund to comply with Rule 2790 as adopted by the NASD on December 23, 2003, and as may subsequently be modified.

If the Reference Fund makes an in-kind payment to its Reference Holders, the Calculation Agent, when it determines the Final NAV, will determine the value of such distribution (including, without limitation, illiquidity discounts, the time remaining until the Warrants are unwound early or exercised, fees, transactions costs and other factors), for the purpose of calculating any related cash settlement amounts due to each Holder.

## Early Termination

The Issuer reserves the right to terminate the Warrants at any time prior to the Warrant Payment Date if at any time before that date, the Calculation Agent determines that an Early Termination Event (as defined below) has occurred. The occurrence of any of the following events may be deemed an "Early Termination Event" by the Calculation Agent:

> (i) The termination, bankruptcy, insolvency, dissolution, removal or withdrawal of DESCO, L.L.C., as managing member of the Reference Fund, or DESCO L.P., as investment adviser of the Reference Fund (DESCO L.P. and DESCO L.L.C., are referred to collectively as the "Key Entities"), or such parties otherwise cease to act for the Reference Fund as managing member or investment adviser, respectively;

-4-

(ii)   The Reference Fund (1) is dissolved or has a resolution passed for its dissolution, winding up, or official liquidation; (2) makes a general assignment or arrangement with or for the benefit of its creditors; (3) becomes insolvent or is unable to pay its debts or fails or admits its inability generally to pay its debts as they become due (4)(A) institutes or has instituted against it, by a regulator, supervisor or any similar official with primary insolvency, rehabilitative or regulatory jurisdiction over it in the jurisdiction of its incorporation or organization or the jurisdiction of its head or home office, a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation by it or such regulator, supervisor or similar official, or (B) has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and such proceeding or petition is instituted or presented by a person or entity not described in clause (A) above and either (x) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (y) is not dismissed, discharged, stayed or restrained in each case within 15 days of the institution or presentation thereof; (5) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, or custodian or other similar official for it or for all or substantially all its assets in a proceeding of the type described herein; (6) has a secured party take possession of all or substantially all its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all its assets and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within 15 days thereafter; (7) causes or is subject to any event with respect to it which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (1) through (6) above (inclusive); or (8) takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the foregoing acts;

(iii)   DESCO L.L.C. restates the monthly net return of the Reference Fund, as reported in the monthly final performance indication report of the Reference Fund, for any month during the term of the Warrants by more than 2% (measured as a percentage of the total assets of the Reference Fund) from the monthly net return of the Reference Fund as originally reported in the monthly final performance indication report of the Reference Fund for such month;

(iv)   (1) Any of the Key Entities or any of their affiliates, employees, officers or agents, materially breaches any applicable law or regulation, (2) any governmental, legal or regulatory authority or other person brings or threatens to bring an administrative or judicial proceeding, investigation or litigation against any such person (including, in the case of the Investment Adviser, against any other fund managed by the Investment Adviser) or makes or threatens to make any claim, demand, charge or complaint against such person alleging any misconduct, impropriety, illegality, negligence, contractual or fiduciary breach or other wrongdoing; or (3) the cancellation, suspension or revocation of the registration or approval of a Key Entity by any governmental, legal or regulatory entity with authority over such Key Entity;

-5-

(v)  (1) There is a change in any law, regulations, practice or the interpretation of any law, regulations or practice by any court, tribunal or regulatory authority which causes it to become unlawful or inadvisable for the Issuer or any of its affiliates to perform any obligations hereunder or otherwise has material adverse consequences for the Issuer or any of their affiliates including, for greater certainty, with any hedging activity; or (2) there is a change in the legal, tax, accounting or regulatory treatments of the Interests, the Reference Fund or the Investment Adviser that is reasonably likely to have a material adverse consequence for the Reference Fund or the Interests;

(vi)  (1) The modification of the Reference Fund (such as, but not limited to, modification of the organizational documents or any prospectus, offering memorandum, information memorandum or other similar offering document related thereto) in a way that could reasonably be expected to have a material adverse effect on the Final NAV or the rights and remedies of a Reference Holder from those prevailing on the Issue Date (including, without limitations rights of liquidation, transfer or redemption of the Interests), or (2) any event or any change affecting the Reference Fund and/or an Interest thereof (such as, but not limited to, interruption, breakdown, suspension or deferral of the calculation or the publication of the level or value of such Interest, or the disappearance of the level or value of such Interest resulting more particularly from, but not limited to, the winding-up or the termination of such Fund or the cancellation of the registration or of the approval by any relevant authority of the Fund) and that, in the opinion of the Calculation Agent, is likely to have a material effect on the Interests of a Reference Holder;

(vii)  The conversion of an Interest of the Reference Fund into another series of interests or securities with materially different benefits, rights or obligations, or the split of the Reference Fund, or its consolidation or its merger with or its sale or its conveyance of all or substantially all of its Interests or assets to a third party;

(viii)  The occurrence of a Hedging Disruption Event or an Increased Cost of Hedging Event;

(ix)  An event of default or a termination event, however defined, occurs with respect to the Reference Fund under any prime brokerage agreement, any ISDA Master Agreement or other similar derivatives agreement or any other agreement for borrowed money (including, without limitation, any loan agreement or repurchase agreement);

(x)  The net return of the Reference Fund (i) during any calendar month is less than negative ten percent (-10%) or (ii) during any consecutive three-month period is less than negative twenty five percent (-25%); or

(xi)  All the Interests or substantially all the assets of the Reference Fund are nationalized, expropriated or are otherwise required to be transferred to any governmental agency, authority, entity or instrumentality thereof.

Upon the occurrence of any of the foregoing events, the Calculation Agent shall determine whether the occurrence of such event constitutes an Early Termination Event. If the Calculation Agent deems the occurrence of such event to be an Early Termination Event and the Issuer

-6-

determines to terminate the Warrants, the Issuer will notify the Transfer Agent of its intent to terminate the Warrants and the date selected by the Calculation Agent as the Early Termination Date. Following the occurrence of an Early Termination Event, Holders will receive the Early Termination Amount (as defined below) on the Early Termination Date. The "Early Termination Date" shall be determined by the Calculation Agent and shall be [five] Business Days following the date on which all redemption proceeds would have been received by a Reference Holder of Interests based on a timely request for redemption by such Reference Holder effective as of the Early Termination Valuation Date. Notwithstanding the foregoing, in no event will the Early Termination Date occur more than [ten] Business Days after the Audit Date in respect of the date on which the Calculation Agent determines that the relevant Early Termination Event has occurred (such date of determination, the "Event Determination Date"); provided that the last day of the calendar quarter in which the Event Determination Date occurs is at least [50] days following the Event Determination Date. If the last day of such calendar quarter is less than [50] days following the Event Determination Date, the Early Termination Date shall occur not more than [ten] Business Days after the Audit Date in respect of the last day of the calendar quarter next succeeding the calendar quarter in which the Event Determination Date occurred. Upon receipt of notice from the Issuer of its intent to terminate the Warrants following the Early Termination Event, the Transfer Agent will notify each Holder of the Issuer's election to terminate the Warrants in accordance with the Issuing, Paying and Transfer Agency Agreement (as defined below).

The "Early Termination Amount" shall be determined by the Calculation Agent and shall be an amount equal to the market value of the Warrant as of the Early Termination Valuation Date, reduced by any losses or costs of the Issuer or its affiliates that are or would be incurred under then prevailing circumstances in closing its or its affiliates' hedge position(s) (including the effect of any withdrawal fees) arising from the occurrence of such Early Termination Event. The "Early Termination Valuation Date" shall be determined by the Calculation Agent and shall be the date as of which a Reference Holder, which properly submitted a redemption notice to the Reference Fund promptly after such Early Termination Event, would have been able to redeem its Interests; provided that if the Calculation Agent determines that a Market Disruption Event has occurred on the Early Termination Valuation Date, the Early Termination Valuation Date shall be the next succeeding day on which no Market Disruption Event occurs. If the Calculation Agent determines that a Reference Holder would not have received all of the redemption proceeds by the [fifth] day after the relevant Audit Date, the Early Termination Amount may be equal to zero. In determining the Early Termination Amount, the Calculation Agent may, but need not, consider any relevant information, including, without limitation, information consisting of relevant market data in the relevant market including, without limitation, relevant rates, prices, yields, volatilities, spreads, correlations or other relevant market data from external or internal sources (including any affiliates of the Calculation Agent) or otherwise.

"Market Disruption Event" means, on any Business Day, any event that (i) affects any of the Interests of a Reference Holder that, in the judgment of the Calculation Agent, would make it impossible or impracticable to determine the value of such Interests as of that date or (ii) causes a Hedging Disruption Event (as defined below) or (iii) causes an Increased Cost of Hedging Event (as defined below).

"Hedging Disruption Event" means (1) the Issuer and/or any of its affiliates is unable, after using commercially reasonable efforts, or it is deemed inadvisable for the Issuer and/or any of its affiliates, to (A) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any transaction(s) or asset(s) it deems necessary to hedge the price risk of the Issuer issuing and performing its obligations with respect to the Warrants, or (B) realize, recover or remit the proceeds of any such transaction(s) or asset(s), including, without limitation, where such inability or impracticability has arisen by reason of (i) any restrictions or increase in charges or fees imposed by the relevant Reference Fund on any investor's ability to redeem such Interest, in whole or in part, or any existing or new investor's ability to make new or additional investments in such Interest, or (ii) any mandatory redemption, in whole or in part, of such Interest imposed by the relevant Reference Fund (in each case other than any restriction in existence on the date on which such Interest was first included in such a Reference Fund derivative transaction), or (2) the Issuer and/or any of its affiliates is unable, after using commercially reasonable efforts, to determine the value of any hedging position in the Reference Fund.

"Increased Cost of Hedging Event" means the Issuer and/or any of its affiliates would incur a materially increased (as compared with circumstances existing as of the Issue Date) amount of tax, duty, expense or fee (other than brokerage commissions) to (1) acquire, establish, re-establish, substitute, maintain, unwind or dispose of any transaction(s) or asset(s) it deems necessary to hedge the price risk of the Issuer issuing and performing its obligations with respect to the Warrants, or (2) realize, recover or remit the proceeds of any such transaction(s) or asset(s), provided that any such materially increased amount that is incurred solely due to the deterioration of the creditworthiness of the Issuer and/or any of its affiliates.

## Potential Adjustment Event

Upon the occurrence of a Potential Adjustment Event (as defined below), the Calculation Agent shall make such adjustment to the exercise, settlement, payment or any other terms of the Warrants as the Calculation Agent determines appropriate, and determine the effective times thereof, to account for the economic effect on the Warrants of such Potential Adjustment Event. "Potential Adjustment Event" means any of the following:

(i)    a subdivision, reclassification, reorganization, consolidation, increase, reduction by cancellation of the Interests of a Reference Holder, or, a free distribution or dividend of any such Interests to existing holders by way of bonus, capitalization or similar issue;

(ii)    a distribution or dividend to existing holders of (a) Interests, or (b) any other interest capital or securities granting the right to payment of dividends and/or the proceeds of liquidation of the Reference Fund equally or proportionately with such payments to holders of such interests, or (c) any other type of securities, rights or warrants or other assets, in any case for payment (cash or other) at less than the prevailing market price as determined by the Calculation Agent;

(iii)    an extraordinary dividend;

(iv)    a call by the Reference Fund of such Interests in respect of Interests that are not fully paid;

(v)   a repurchase by the Reference Fund of Interests whether out of profits or capital and whether the consideration for such repurchase is cash, securities or otherwise; or

(vi)  any other similar event.

## Transfer Agent

Citibank N.A. will act as registrar and Transfer Agent (the "Transfer Agent") for the Warrants pursuant to the terms of an issuing, paying and transfer agency agreement (the "Issuing, Paying and Transfer Agency Agreement"), dated as of [June ●, 2007] by and between the Issuer and the Transfer Agent. The Transfer Agent's corporate offices are located at 388 Greenwich Street, New York, New York 10013. Pursuant to the terms of the Issuing, Paying and Transfer Agency Agreement, the Transfer Agent has agreed to make payments on behalf of the Issuer and register the transfer or exchange of Warrants. Fees and expenses of the Transfer Agent will be paid by the Issuer. The Transfer Agent will not be liable for any loss, liability, cost, claim, action, demand or expense (including, without limitation, all costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of its functions, except such as may result from its own willful default or gross negligence or that of its officers or agents. Nothing shall prevent the Transfer Agent or any of its affiliates from dealing in the Warrants or from entering into any related transactions, including any swap or hedging transactions, with the Issuer or any holder of Warrants. The Transfer Agent may resign at any time upon three months written notice, and the Issuer may remove the Transfer Agent at any time upon 30 days written notice. Neither resignation or removal of the Transfer Agent will take effect until a successor Transfer Agent has been appointed.

## Calculation Agent

Lehman Brothers Inc. will initially serve as calculation agent (the "Calculation Agent") for the Warrants pursuant to the terms of a Calculation Agency Agreement (the "Calculation Agency Agreement"), dated as of June, 2007, by and between the Issuer and the Calculation Agent, attached hereto as Exhibit IV. Except as otherwise provided in the Warrants, all determinations, calculations or valuations made by the Calculation Agent shall be at the sole discretion of the Calculation Agent and, in the absence of manifest error, shall be conclusive for all purposes and binding on the Issuer, the Transfer Agent and each Holder. The Calculation Agent will not be liable for any loss, liability, cost, claim, action, demand or expense (including, without limitation, all costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of its functions, except such as may result from its own willful default or gross negligence or that of its officers or agents. Nothing shall prevent the Calculation Agent or any of its affiliates from dealing in the Warrants or from entering into any related transactions, including any swap or hedging transactions, with the Issuer or any holder of Warrants. The Calculation Agent may resign at any time upon written notice to the Issuer, and the Issuer may remove the Calculation Agent at any time upon written notice to the Transfer Agent. Neither resignation nor removal of the Calculation Agent will take effect until a successor Calculation Agent has been appointed.

**Calculations**

Except as otherwise set forth herein, all calculations made with respect to a Warrant by the Calculation Agent will be calculated to the nearest one hundredth (i.e., to the nearest 0.01), with five one thousandths and greater rounded upwards.

**Form and Transfer**

The Warrants will at all times be represented by definitive warrant certificates representing each Holder's interest, in denominations of one Warrant or multiples thereof. Such certificates may be held by the Placement Agent on behalf of the beneficial owners of the Warrants, and ownership of the Warrants shall be recorded in the records of the Placement Agent. Transfers of the Warrants, to the extent effected only on the books of the Placement Agent, shall require the consent of the Placement Agent.

The Warrants will not be registered under the Securities Act or under the securities laws of any other jurisdiction. The Warrants will be offered and sold only to Accredited Investors who are also Qualified Purchasers. The minimum transfer amount is [377-392] Warrants and no transfers of Warrants will be effected by the Transfer Agent within [five] Business Days of the Valuation Date. In addition, no transfer will be permitted unless the transferee has delivered to the Placement Agent or to the Issuer and the Transfer Agent the transfer certificate on the reverse of the Warrants, if applicable, and a transferee representation letter in the form of Exhibit II attached hereto and such transfer is otherwise made pursuant to, or in a manner exempt from, the registration requirements of the Securities Act.

**Ratings**

The Warrants will not be rated by any rating agency.

# RISK FACTORS

*Prior to making an investment decision in respect to the Warrants, prospective purchasers should carefully consider all the information set out in this Memorandum, the Issuing, Paying and Transfer Agency Agreement and the other related documents. The risk factors set out herein are not and do not purport to be exhaustive. There may be other risks that a prospective purchaser should consider that are relevant to an investor's particular circumstances or generally.*

*The Warrant Payment Amount for the Warrants will depend solely on the performance of the Reference Fund. An instrument linked to the Reference Fund carries with it substantial risks including, but not limited to, the risks referred to below. There can be no assurance that at maturity holders will receive at least or more than the Total Cost per Warrant. The Warrant Payment Amount could be zero.*

*The Issuer disclaims any responsibility to advise prospective purchasers of such risks as they exist at the date of this document or as they change from time to time. Prospective purchasers should consult their own financial, tax and legal advisors about risks associated with an investment in the Warrants and the suitability of investing in the Warrants in light of their particular circumstances.*

*Potential investors in the Warrants should review the risks stated in the Confidential Private Offering Memorandum of D. E. Shaw Oculus Fund, L.L.C., a copy of which is attached hereto as Exhibit V.*

## Holders May Lose Their Entire Investment

The Warrants are leveraged investments that involve a high degree of risk that may result in the Warrants maturing worthless. A Holder will lose its entire investment if the Final NAV is less than or equal to the Strike Price. A Holders will lose a portion of its investment if the net asset value of the Reference Fund does not increase such that the Final NAV is at least [25.5-26.5]% greater than the Strike Price. This means that if the net asset value of the Reference Fund increases such that the Final NAV is exactly [25.5-26.5]% greater than the Strike Price, each Holder will receive an amount equal to the Total Cost in respect of each of its Warrants.

## Limited Trading History on the Performance of the Reference Fund

The Reference Fund has a limited trading history. As a consequence, each prospective investor should understand that very limited historical performance is available, by which it may be able to evaluate the Reference Fund's performance. **You are cautioned that the historical levels of the Reference Fund or any investment fund or account managed by DESCO L.P. are not indicative of and have no bearing on future performance of the Reference Fund. The Reference Fund may outperform or under-perform the historical levels. No assurance can be given that the Final NAV will not be less than the Strike Price which may result in the Warrants maturing worthless.**

**Holders Should Investigate the Reference Fund as if Investing Directly**

*Holders should conduct their own diligence of the Reference Fund as they would if they were directly investing in the Reference Fund. Holders should not conclude that the sale by the Issuer of the Warrants is any form of investment recommendation by the Issuer or the Placement Agent to invest in the Reference Fund.*

**Risks Relating to the Reference Fund, DESCO L.L.C. or DESCO L.P.**

The performance of the Warrants could be adversely affected by the occurrence of negligence, fraud, misconduct or other acts of the Reference Fund, DESCO L.L.C. or DESCO L.P. Holders should understand that they could be materially adversely affected by any such acts. For example, any such acts may lead to an Early Termination Event. As described above, an Early Termination Event will cause the termination of the Warrants and thus a Holder will lose the opportunity to participate further in the performance of the Reference Fund and may receive less than the Total Cost of the Warrants. Investors should further understand that they will have no recourse against the Reference Fund, DESCO L.L.C. or DESCO L.P. in connection with their Warrants.

Additionally, Holders will have very limited information regarding the Reference Fund, DESCO L.L.C. or DESCO L.P. and will have no information regarding the underlying investments in the Reference Fund.

**Related Ownership of the Issuer and the Reference Fund**

An affiliate of the Issuer acquired a minority equity investment in each of DESCO L.P. and DESCO L.L.C., effective as of March 1, 2007 which entitles such affiliate to, among other rights, receive a share of the management fees and incentive fees paid by the Reference Fund to DESCO L.P. and/or DESCO L.L.C. In addition, the Issuer and its affiliates may be party to various financial contracts with, or provide services to, the Reference Fund. See "*—Certain Business Activities May Create Conflicts of Interest with Holders*" herein for a further discussion. None of the Issuer nor any of its affiliates has the ability to control the investment decisions of the Reference Fund. This Memorandum does not and is not intended to provide information with respect to the Reference Fund. Neither the Issuer nor its affiliates or agents makes any representation as to the financial condition or creditworthiness of the Reference Fund in connection with the issuance of the Warrants. None of DESCO, L.P., DESCO L.L.C., the Reference Fund, or any affiliate of the foregoing sponsors or endorses the Issuer or the Warrants.

**The Issuer is Not Responsible for Disclosure of Information by the Reference Fund and Has No Obligation to Disclose Information About the Reference Fund After the Date of this Memorandum**

The Issuer has not participated in the preparation of the Confidential Private Offering Memorandum of the Reference Fund. Accordingly, neither the Issuer nor its affiliates or agents makes any representation or warranty with respect to the accuracy, validity or completeness of any such information. Furthermore, the Issuer cannot give any assurance that all events occurring prior to the date hereof (including events that would affect the accuracy or completeness of the Confidential Private Offering Memorandum of the Reference Fund) have

-12-

been properly disclosed. Subsequent disclosure of any such events or the disclosure of or failure to disclose material future events concerning the Reference Fund could affect any Warrant Payment Amount received by you with respect to the Warrants.

Although an affiliate of the Issuer owns a minority equity investment in both DESCO L.P. and DESCO L.L.C., none of the Issuer nor any of its affiliates has the ability to control the investment decisions of the Reference Fund. The Issuer has no responsibility to monitor, verify, or disseminate current or future public disclosure of information by the Reference Fund in its fund documents or otherwise. In the course of the Issuer's dealings with the Reference Fund, the Issuer or any of its affiliates may acquire non-public information about the Reference Fund. If the Issuer or its affiliates do acquire non-public information about the Reference Fund, they are not obligated to disclose such non-public information to you.

Neither the Issuer nor its affiliates or agents makes any representation or warranty to you as to the performance of the Warrants or the Reference Fund. Historical data or other performance data is not a prediction of future results.

## Value of Warrants Influenced by Many Unpredictable Factors

An investment in the Warrants entails certain risks which are different from those associated with an investment in a conventional debt security issued by the Issuer. The value of the Warrants may increase and decrease between the Issue Date and the Warrant Payment Date. Several factors, many of which are beyond the control of the Issuer, will influence the value of the Warrants, including:

- the value of the Reference Fund;

- the volatility (frequency and magnitude of changes) in the value of the Reference Fund;

- interest and yield rates in the market;

- the market price of securities, derivative products or other investment instruments purchased by the Reference Fund;

- economic, financial, political and regulatory or judicial events that affect the financial markets generally and which may affect the level of the Reference Fund and/or the Warrants;

- the time remaining to the maturity of the Warrants;

- the amount of fees or other charges payable to the Issuer or its affiliates in connection with its activities relating to the Warrants, including hedging of the Issuer's obligations under the Warrants; and

- the creditworthiness of the Issuer. Any person who purchases the Warrants is relying upon the creditworthiness of the Issuer and has no rights against any other person. The Warrants constitute the general, unsecured and unsubordinated contractual obligations of the Issuer.

Some or all of these factors will influence the price that an investor will receive if an investor sells its Warrants in the secondary market, if any, prior to maturity. For example, an investor

-13-

may have to sell its Warrants at a substantial discount from the Total Cost if at the time of sale the value of the Reference Fund is at, below, or not sufficiently above the Initial NAV.

## Specific Investment and Trading Risks Relating to the Reference Fund

The Warrants are subject to some of the risks of an investment in the Reference Fund. Investors should review the risks set forth in the *"Risk Factors"* section beginning on page 57 of the Confidential Private Offering Memorandum of the Reference Fund, which is attached hereto as Exhibit V. Each of these risks impacts the value of the Interests in the Reference Fund and will, in turn, have a corresponding impact on the value of the Warrants. As a result, the Interests in the Reference Fund, and thus the performance of the Warrants, may be adversely affected by such factors.

## Risks Relating to Hedge Funds and the Reference Fund

The Warrants are subject to many of the risks of investments in hedge funds. Investments in hedge funds can be speculative and involve a high degree of risk. The following is a list of some of the significant risks associated with hedge funds and the performance of the Warrants. Each of these risks may impact the value of the Warrants. The Reference Fund is not subject to the same reporting requirements or investment restrictions as funds that are registered under the Investment Company Act of 1940, as amended (the "Investment Company Act"). As a result, performance of the Warrants may be adversely affected by the following factors:

- The Reference Fund is a limited liability company organized under the laws of the State of Delaware. The Reference Fund is not registered or regulated under the Investment Company Act. Investor protections similar to those afforded by the Investment Company Act relating to, among other matters, publication of net asset values, rights of redemption and controls over changes to an investment company's investment advisor, investment policies, and fees payable to an investment company's service providers, may not be available. Furthermore, pursuant to exemptions available under rules of the United States Commodity Futures Trading Commission ("CFTC"), DESCO L.P. will not register with the CFTC as a commodity pool operator or a commodity trading advisor with respect to the Reference Fund.

- The unregulated nature of investments made by the Reference Fund, such as the employment of different types of trading strategies (including leverage) and the investment in certain types of instruments that are typically prohibited for funds registered under the Investment Company Act.

- There is no secondary market for investors' interest in hedge funds (and none is expected to develop), there may be restrictions on transferring interests in hedge funds, and hedge fund may suspend the right of redemption under certain circumstances. Thus, an investment in hedge funds should generally be regarded as illiquid.

- While hedge funds generally may provide periodic performance reports and annual audited financial statements, they are not otherwise required to provide periodic pricing or valuation information to investors.

- Generally, hedge funds are not registered under the Investment Company Act and therefore provide less transparency than those that are registered. For example, investors in

unregistered hedge funds may not easily be able to ascertain all the risk characteristics of the investment vehicle or investment strategies employed by the investment managers of unregistered investment vehicles, as a result, investors in unregistered investment vehicles may have to strictly rely on the portfolio position disclosure to evaluate the investments and risks of the related investment vehicle.

• The Reference Fund may invest in and trade in a variety of financial instruments using sophisticated investment techniques for hedging and non-hedging purposes. Such financial instruments and investment techniques include but are not limited to the use of leverage (i.e., borrowing money for investment purposes), transactions that use derivatives such as swaps, options, index options, futures contracts and options on futures. While these investment strategies and financial instruments allow the Reference Fund the flexibility to generate positive returns, they also allow for greater volatility and the opportunity for significant losses that may adversely affect the value of the Reference Fund and thus the return on the Warrants.

• The Reference Fund may invest in securities listed or traded on foreign exchanges. The execution of transactions on foreign exchanges might involve particular risks including but not limited to higher volatility, government intervention, lack of transparency, lack of regulation, currency risk, political risk and economic social instability.

• DESCO L.P. and DESCO L.L.C. will receive an incentive fee from the Reference Fund (the "Incentive Fee"), based upon the appreciation, if any, in the assets of the Reference Fund. The Incentive Fee may create an incentive for DESCO L.P. to make investments that are riskier or more speculative than would be the case if such arrangement were not in effect. Such risky investments may increase the opportunity for significant losses that would adversely affect the return on the Warrants. In addition, because the Incentive Fee is calculated on a basis that includes unrealized appreciation of the Reference Fund's assets, it may be greater than if such compensation were based solely on realized gains. Certain management fees and administrative fees charged by DESCO L.P. (as well as expenses of the Reference Fund) will also reduce the performance of the Reference Fund and the value of the Warrants.

• DESCO L.P. has total trading authority over the Reference Fund. The use of a single advisor applying generally similar trading programs could mean lack of diversification and, consequently, higher risk.

• Substantial redemptions of the Reference Fund on a particular redemption day could require DESCO L.P. to liquidate positions more rapidly than would be otherwise desirable, which could have a negative impact on the performance of the Reference Fund.

• Certain inherent and potential conflicts of interest may exist with respect to the operation of the Reference Fund. DESCO L.P. may also serve as the investment adviser for other clients. In performing its obligations for such other clients, DESCO L.P. may be in possession of certain material non-public information and DESCO L.P. will have no obligation to disclose such information or use such information for the benefit of the Reference Fund. DESCO L.P. is not obligated to devote any specific amount of time to

manage the Reference Fund and there can be no assurance that the performance by DESCO L.P. of services for its other clients may not operate to the detriment of the Reference Fund.

• The lack of oversight and regulation associated with hedge funds may increase the likelihood of fraud and negligence by the Reference Fund, DESCO L.L.C., DESCO L.P., its brokerage firm or bank.

• The use of the above investment strategies, investment in the above instruments and the general characteristics of hedge funds may cause the Reference Fund to be volatile.

• Hedge funds may involve complex tax structures and delays in distributing important tax information.

• Hedge funds may have high fees and expenses that may offset the hedge fund's trading profits.

• Legal, tax and regulatory changes could occur during the term of this Warrant that may adversely affect the Reference Fund. The regulatory environment for hedge funds is evolving, and changes in the regulation of hedge funds may adversely affect the value of investments held by the Reference Fund. In addition, the securities and futures markets are subject to comprehensive statutes, regulations and margin requirements. The Securities and Exchange Commission, other regulators and self-regulatory organizations and exchanges are authorized to take extraordinary actions in the event of market emergencies. The regulation of derivatives transactions and funds that engage in such transactions is an evolving area of law and is subject to modification by government and judicial action. The effect of any future regulatory change on the Reference Fund could be substantial and adverse and consequently adversely effect the value of this Warrant.

**Your Warrants Could Be Terminated Early**

If the Calculation Agent determines that an Early Termination Event has occurred during the term of the Warrants, your Warrants will be terminated as of the date selected by the Calculation Agent as the Early Termination Date. Upon termination of the Warrants pursuant to an Early Termination Event, the Calculation Agent will determine the Early Termination Amount, which will be an amount equal to the market value of the Warrants as of the relevant measurement date, and which will be reduced by any losses or costs of the Issuer or its affiliates that are or would be incurred in closing its or its affiliates' hedge position(s) (including the effect of any withdrawal fees) arising from the occurrence of such Early Termination Event. In determining the Early Termination Amount, the Calculation Agent may, but need not, consider any relevant information, including, without limitation, information consisting of relevant market data in the relevant market including, without limitation, relevant rates, prices, yields, volatilities, spreads, correlations or other relevant market data from external or internal sources (including any affiliates of the Calculation Agent) or otherwise. See "Summary of Principal Terms - Early Termination Events."

**Reliance on DESCO L.P.**

The Warrant Payment Amount is based on changes in the value of an Interest of the Reference Fund, which fluctuates. Changes in the value of the Reference Fund cannot be

predicted, and is dependent on the ability of DESCO L.P. to choose investments that appreciate in value, as well as other factors not within DESCO L.P.'s control. There can be no assurance that DESCO L.P. will succeed in choosing investments that appreciate in value. Furthermore, DESCO L.P. is dependent on the services of its key personnel. If the services of any such person were to become unavailable, the Reference Fund's performance could be negatively affected.

The Issuer and its affiliates are not in a position to protect the Holders against negligence, fraud and misrepresentation by DESCO L.P. Holders do not have and are not entitled to any beneficial Interests in the Reference Fund or its components and as such, have no recourse against DESCO L.P. either contractually or statutorily. Furthermore, as a practical matter, it may be difficult to bring an action, or to seek to enforce a judgment obtained in an action, against any of the aforementioned entities.

**Secondary Trading of the Warrants is Limited and They are Subject to Substantial Restrictions on Transferability**

The Warrants will not be listed on an organized securities exchange in the United States or abroad. There is currently no secondary market for the Warrants. Even if there is a secondary market, it is not likely to provide significant liquidity. Accordingly, it will be difficult to obtain reliable information about the value of the Warrants at any given time as such value will reflect many factors and cannot be predicted.

The Placement Agent intends, but is not obligated, to provide an opportunity for Holders to sell their Warrants to the Placement Agent. To request a market making transaction, a Holder must provide a signed copy of the form of Market Making Request attached hereto as Exhibit VI. The Market Making Request must be received by the Placement Agent no later than [55] calendar days in advance of the last Business Day of a calendar quarter. The Placement Agent will determine the market making price as of that quarter end. For the avoidance of doubt, until the parties agree to the final terms of any such transaction, the submission of a Market Making Request shall not obligate the Placement Agent or the requesting Holder to enter into a market making transaction.

If the Placement Agent agrees to buy a Warrant from a Holder, there will likely be significant delays between the time it agrees to such purchase and the pricing and settlement of such purchase. The Placement Agent may be the only source of price quotes for the Warrants. Any secondary market price quoted by the Placement Agent would reflect any changes in market conditions and other relevant factors, and the quoted price could be higher or lower than the initial purchase price.

The original cost of the Warrants includes the cost of hedging the Issuer's obligations under the Warrants through one or more of its affiliates. Such cost includes the affiliates' expected cost of providing such hedge, as well as the profit such affiliates expect to realize in consideration for assuming the risks inherent in providing such hedge. As a result, assuming no change in market conditions or any other relevant factors, the price, if any, at which the Placement Agent would be willing to purchase Warrants in secondary market transactions, if at all, would likely be lower than the original cost of the Warrants. In addition, any such prices may differ from values determined by pricing models used by the Calculation Agent, due to dealer discounts, mark-ups, hedge unwinds or other transaction costs (including any applicable

-17-

withdrawal fee). As a result, the price at which Holders may sell their Warrants to the Placement Agent or any of its affiliates may be less than the Holders' original cost.

The Warrants are subject to substantial restrictions on transferability. The Warrants will not be registered under the securities Act or the securities laws of any states or any other jurisdictions and cannot, therefore, be resold unless they are subsequently registered under these laws or an exemption from registration is found. The Warrants may be sold only to Accredited Investors who are also Qualified Purchasers. Investors must thus be prepared to bear the risk of owning Warrants for an extended period of time.

### Warrants are not Registered

The Warrants are not registered, and the Issuer does not intend to register the Warrants, under the Securities Act or under any state securities laws. Neither the Securities and Exchange Commission (the "SEC") nor any state securities commission or regulatory authority has recommended or approved the Warrants, nor has any such commission or regulatory authority reviewed or passed upon the accuracy or adequacy of this Memorandum.

### Investors in Warrants will be Exposed to the Issuer's Credit Risk

The Warrants will constitute general unsecured obligations of the Issuer, Lehman Brothers Holdings Inc. If the Issuer is unable to meet its obligations as they come due, a Holder could suffer a complete loss of its investment. Payment of any amounts due under the Warrants will not be guaranteed by any corporate or governmental entity. The claims of Holders, if any, will not be secured by Interests in the Reference Fund or otherwise, and no amount will have been placed or will be placed in escrow to satisfy any such claims. Moreover, in the event the Issuer becomes the subject of voluntary or involuntary bankruptcy proceedings, investors may lose the whole of their investment, whether a cash settlement amount is or becomes due upon maturity or termination, or otherwise, and will not have a claim for any Interests in the Reference Fund.

Actual or anticipated changes in the Issuer's credit ratings, financial condition or results may affect the market value of the Warrants.

### The Warrants do not Confer Beneficial Ownership in the Reference Fund or its Affiliates

The Reference Fund is merely a reference used to calculate the value of the Warrants. The Warrants represent an investment that is separate and distinct from an investment in the Reference Fund or Oculus Fund. Neither the Issuer nor its affiliates or agents is offering any Interest in the Reference Fund. An investment in the Warrants confers no indicia of ownership in the Reference Fund or Oculus Fund and neither creates nor implies any rights or remedies with respect to the Reference Fund, Oculus Fund, DESCO L.P., DESCO L.L.C., or D. E. Shaw Securities, L.L.C. (the placement agent for the Reference Fund) or affiliates of the foregoing.

There are no actual investments in the Reference Fund underlying the Warrants or to which a Holder would have recourse. The Issuer, or an affiliate, may, in order to hedge its obligations under the Warrants, purchase Interests in the Reference Fund but it is under no obligation to do so  Such Interests, if any, are the separate property of the Issuer and do not secure or otherwise underlie the Warrants. For example, in the event of a failure to pay the Warrant Payment Amount by the Issuer under the Warrants, Holders will have no beneficial interest in or claim to

any such Interests. Accordingly, any claims of Holders pursuant to the terms and conditions of such Warrants will be pari passu with all other unsecured, unsubordinated, unconditional creditors of the Issuer.

## Your Investment Will Be 'New Issues' Restricted

Your investment in the Warrants will be 'new issues' restricted. In calculating the Warrant Payment Amount, returns will exclude any amount (whether positive or negative) attributable to 'new issues,' as defined in Rule 2790 (or any successor rule) of the National Association of Securities Dealers, Inc. (the 'NASD'). Rule 2790 prohibits certain persons from receiving the economic benefit of new issues. Each of the Issuer and any affiliate that may be entering into transactions to hedge the Issuer's exposure under the Warrants is a Restricted Person under Rule 2790 and, accordingly, any investment by any of them in member interests of the Reference Fund will be treated as though it had been made by a Restricted Person. A 'Restricted Person' includes most associated persons of a U.S. broker-dealer, most owners and affiliates of a broker-dealer and certain other classes of persons. The Reference Fund does not currently invest in new issues, but the Reference Fund's operative documents reserve the right for DESCO L.L.C., as the managing member of the Reference Fund, without the approval or consent of the Reference Fund's members to make such amendments as DESCO L.L.C. deems necessary or appropriate in connection with enabling the Reference Fund to trade new issues. In the event such amendments are adopted, the Warrants would be linked to the performance of Interests of the Reference Fund that are restricted from participating in gains or losses attributable to new issues pursuant to and subject to the terms of the Reference Fund's amended operative documents.

## ERISA Limitations

The Warrants may not be acquired by, on behalf of, or with the assets of, an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), a plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), a plan subject to any federal, state, local or other law, rule or regulation which is substantially similar to Title I of ERISA or Section 4975 of the Code ("Similar Law") or any entity deemed to hold the assets of such an employee benefit plan or plan for purposes of ERISA, Section 4975 of the Code or Similar Law. Any investor or transferee shall further be deemed to represent and covenant that throughout the period it holds Warrants, the foregoing representations shall be true.

## Hedging Transactions by the Issuer

The Issuer and its affiliates, including Lehman Brothers Inc., may from time to time buy or sell Interests in the Reference Fund or enter into derivative instruments or other instruments which track or are related to the Reference Fund for their own accounts in connection with their normal business practices or in connection with hedging of the Issuer's obligations under the Warrants, including on the Valuation Date. Although the Issuer has no reason to believe that such activities had or will have a material impact on the value of the Reference Fund, the Issuer cannot give any assurance that it did not, or in the future will not, affect such value as a result of such activities.

**Adverse Economic Interests to Holders**

As described herein, the Issuer has appointed Lehman Brothers Inc. as the Calculation Agent for the Warrants. The Calculation Agent will be solely responsible for the determination and calculation of the Warrant Payment Amount (including the components thereof) or the Early Termination Amount and any other determinations and calculations in connection with the Warrants. Because the Calculation Agent is an affiliate of the Issuer, the Calculation Agent may have economic interests adverse to those of the Holders, including with respect to certain determinations and judgments that the Calculation Agent must make in determining the Warrant Payment Amount or the Early Termination Amount or whether an Early Termination Event, Market Disruption Event or potential Adjustment Event has occurred. An investor might disagree with such determination and might be adversely affected by such early termination.

**Certain Business Activities May Create Conflicts of Interest with Holders**

*Ownership of Minority Equity Investment in Reference Fund.* An affiliate of the Issuer acquired a minority equity investment in each of DESCO L.P. and DESCO L.L.C., effective as of March 1, 2007 which entitles such affiliate to, among other rights, receive a share of the management fees and incentive fees paid by the Reference Fund to DESCO L.P. and/or DESCO L.L.C. None of the Issuer nor any of its affiliates has the ability to control the investment decisions of the Reference Fund.

*Other Businesses of Lehman Brothers Inc.* The Issuer or its affiliates, including Lehman Brothers Inc., (collectively, "Lehman Brothers") will be engaged in businesses related and unrelated to the Reference Fund. Lehman Brothers is a major participant in the global finance, equity and fixed income markets. As such, Lehman Brothers may be actively engaged in transactions in the same securities and instruments in which the assets of the Reference Fund may be invested. While informational barriers among business units at Lehman Brothers have been established, certain business units at Lehman Brothers may purchase or sell the securities of or otherwise invest in or finance, companies in which the Reference Fund has an interest. Lehman Brothers may also have proprietary interests in, and may manage or advise, accounts or investment funds (collectively, "LB Accounts") which may engage in transactions in the same types of securities and instruments in which the Reference Fund is transacting. Lehman Brothers is not under any obligation to share any investment opportunity, idea or strategy with the Reference Fund. As a result, Lehman Brothers may compete with the Reference Fund for appropriate investment opportunities.

The proprietary trading activities or portfolio strategies of Lehman Brothers, or the activities or strategies used for LB Accounts managed by Lehman Brothers (collectively, "Lehman Discretionary Trading"), could conflict with the transactions and strategies employed on behalf of the Reference Fund and could affect the prices and availability of the securities and instruments in which the Reference Fund seeks to invest. Lehman Discretionary Trading transactions will be executed independently of the Reference Fund's transactions, and thus at prices or rates that may be more or less favorable. Companies whose securities are held by the Reference Fund may have publicly or privately traded securities in which Lehman Brothers is an investor or makes a market. Lehman Discretionary Trading will be carried out without reference to positions held by the Reference Fund and may have an effect on the value of the positions so held, or may result in Lehman Brothers having an interest in securities adverse to that of the

Reference Fund (e.g., Lehman Brothers may have a short position in a security held long by the Reference Fund).

Lehman Brothers may also create, write or issue other derivative instruments with respect to which the underlying securities or instruments may be those in which the Reference Fund invests or which may be based on the performance of the Reference Fund. Certain of such derivative instruments could require Lehman Brothers or Lehman Brothers' derivative counterparty to enter into positions in such securities or instruments that could have a negative effect on the value of the Reference Fund's portfolio. Lehman Brothers may keep any profits, commissions, and fees accruing to it in connection with such activities.

The Issuer or its affiliates may receive fees in connection with activities relating to the Warrants, including hedging of the Issuer's obligations under the Warrants.

Any of these business activities or relationships may affect the value of the Reference Fund and thus could be adverse to a Holder's return on the Warrants. Any prospective purchaser of the Warrants should undertake an independent investigation of the Reference Fund as in its judgment is appropriate to make an informed decision with respect to an investment in the Warrants.

**Investment Suitability**

The Warrants are not typical, straightforward debt securities. Prospective investors should determine whether an investment in the Warrants is appropriate in their particular circumstances and should consult with their legal, business, and tax advisors to determine the consequences of an investment in the Warrants and to arrive at their own evaluation of the investment.

Investment in the Warrants is only appropriate for investors who:

• Have the requisite knowledge and experience in financial and business matters to evaluate the merits and risks of an investment in the Warrants;

• Have access to, and knowledge of, appropriate analytical tools to evaluate such merits and risks in the context of their financial situation;

• Are capable of bearing the economic risk of an investment in the Warrants for an indefinite period of time; and

• Recognize that it may not be possible to dispose of the Warrants prior to their maturity.

Prospective investors in the Warrants should not rely on any communication (written or oral) of the Issuer, Placement Agent or the Transfer Agent as investment advice or as a recommendation to invest in the Warrants, it being understood that information and explanations related to the terms and conditions of these Warrants shall not be considered to be investment advice or a recommendation to invest in the Warrants. No communication (written or oral) received from the Issuer, Placement Agent or the Transfer Agent shall be deemed to be an assurance or guarantee as to the expected results of an investment in the Warrants.

**Transfer Restrictions**

The Warrants are subject to transfer restrictions. Consequently, the liquidity of the Warrants may be significantly impaired.

**Income Tax Rules Related to the Warrants are Complex**

The income tax rules relevant to the Warrant are quite complex and may result in significant and possibly adverse tax consequences. An investor should consult with its own tax adviser in order to understand fully the federal, state and local income tax consequences of an investment in this Warrant.

THE FOREGOING LIST OF RISK FACTORS DOES NOT PURPORT TO BE A COMPLETE ENUMERATION OR EXPLANATION OF THE RISKS INVOLVED IN AN INVESTMENT IN THIS TRANSACTION. ANY PROSPECTIVE PURCHASER SHOULD CONSULT WITH ITS OWN LEGAL, TAX AND FINANCIAL ADVISERS BEFORE DECIDING TO INVEST IN THIS TRANSACTION.

## PLAN OF DISTRIBUTION

In order to purchase Warrants, investors will be required to execute and deliver to the Placement Agent a representation letter (available at the offices of Lehman Brothers Inc. at 745 Seventh Avenue, New York, New York, 10019, Attn: Structured Equity Products, the form of which is attached hereto as Exhibit I); the Warrants will be subject to transfer restrictions. Please refer to *"Suitability Requirements and Transfer Restrictions"* below.

The Issuer will pay to the Placement Agent a sales commission of $[●] of the gross offering proceeds of the Warrants, representing a 2% commission on the notional amount per Warrant of each Warrant sold in the offering. Additionally, the Issuer expects to earn revenue from its hedging activities consistent with products of this type.

The Placement Agent and/or certain other placement agents will distribute the Warrants from time to time in one or more transactions at a fixed price or prices, which may be changed, or at market prices prevailing at the time of sale, at prices related to such prevailing market prices or at negotiated prices, subject to withdrawal, cancellation or modification of the offer by the Issuer, the Placement Agent and/or certain other placement agents.

Prior to the offering, there has been no market for the Warrants. No secondary market in the Warrants is expected to develop. The only market, if any, for the Warrants will be the repurchase of the Warrants by the Issuer or the purchase of Warrants by the Placement Agent. Neither the Placement Agent nor its affiliates have any obligation to make a market for the Warrants, they do not anticipate making a market for the Warrants, and they may cease or alter market-making activities at if commenced at any time. To the extent the Placement Agent does effect market-making transactions, the Placement Agent will determine market-making prices, based largely, on the factors set forth herein under *"Risk Factors – Secondary Trading of the Warrants is Limited and They are Subject to Substantial Restrictions on Transferability."*

The original cost of the Warrants includes the cost of hedging the Issuer's obligations under the Warrants through one or more of its affiliates. Such cost includes the affiliates' expected cost of providing such hedge, as well as the profit such affiliates expect to realize in consideration for assuming the risks inherent in providing such hedge. As a result, assuming no change in market conditions or any other relevant factors, the price, if any, at which the Placement Agent would be willing to purchase Warrants in secondary market transactions, if at all, would likely be lower than the original cost.

An affiliate of the Issuer purchased a minority equity investment in each of DESCO L.P. and DESCO L.L.C., effective as of March 1, 2007. The Issuer and certain of its affiliates currently perform, and will in the future perform, various investment and commercial banking services from time to time for the Reference Fund, DESCO L.P., DESCO L.L.C. and their affiliates. See *"Risk Factors – Certain Business Activities May Create Conflicts of Interest with Holders."*

## SUITABILITY REQUIREMENTS AND TRANSFER RESTRICTIONS

The Warrants have not been registered, and the Issuer has no intention of registering any sales of the Warrants, under the Securities Act or any other applicable securities laws. Thus, the Warrants may not be offered or sold within the United States or to, or for the account or benefit of, United States persons except in compliance with the registration requirements of the Securities Act and any other applicable securities laws, or pursuant to an exemption from registration under the Securities Act and any other applicable securities laws, or in a transaction not subject to such laws. Accordingly, the Warrants are being offered and sold only to Accredited Investors who are also Qualified Purchasers.

Any sales or transfers of Warrants in violation of the transfer restrictions set forth herein are prohibited and will be treated by the Issuer and the Transfer Agent as having no legal effect. The Issuer will not honor such sale or transfer and will have the right, at any time, at the expense and risk of the Holder of any Warrants held by or on behalf of a person who is not an Accredited Investor who is also a Qualified Purchaser at the time it purchases such Warrants, to (1) redeem such Warrants, in whole or in part, at the then-current value per Warrant as determined by the Calculation Agent or (2) require such holder to sell such Warrants to a qualifying transferee who satisfies all of the requirements set forth in these transfer restrictions.

Transfers of Warrants may be made by delivery of the relevant certificate or certificates evidencing ownership of the Warrants to the Transfer Agent together with the form of transfer in writing endorsed thereon and the transferee representation letter duly completed and executed by the transferee.

Each initial purchaser and each transferee will represent and agree as follows:

(i)        It is an Accredited Investor who is also a Qualified Purchaser;

(ii)        It is purchasing at least [377-392] Warrants, unless the Placement Agent permits the purchase of a smaller number of Warrants.

(iii)        In connection with the purchase of such Warrants: (A) it has received a copy of this Memorandum, the Confidential Private Offering Memorandum of the Reference Fund and

any other information it deems necessary to make an investment decision; (B) neither the Issuer nor its affiliates make any representations or warranties with respect to the accuracy, validity or completeness of the information contained in the Confidential Private Offering Memorandum of the Reference Fund, (C) it has such knowledge and experience in financial and business matters so as to be able to evaluate the merits and risks of an investment in the Warrants and have sufficient net worth and/or annual income to hold the Warrants for an indefinite period of time and to bear the risk of losing its entire investment; and (D) it is acquiring the Warrants as principal solely for its own account, or for the accounts of its discretionary advisory clients, in each case for investment and not with a view to the resale, distribution or other disposition thereof in violation of the Securities Act.

(iv)     On each date from the date on which the investor acquires such Warrants through and including the date on which it disposes of its interests in such Warrants, it is not, and it is not acquiring Warrants with the assets of, an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), a plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), a plan subject to any federal, state, local or other law, rule or regulation which is substantially similar to Title I of ERISA or Section 4975 of the Code ("Similar Law") or any entity deemed to hold the assets of such an employee benefit plan or plan for purposes of ERISA, Section 4975 of the Code or Similar Law. Any investor or transferee shall further be deemed to represent and covenant that throughout the period it holds Warrants, the foregoing representations shall be true.

(v)     It acknowledges that (A) the Warrants have not been, nor will be, registered under the Securities Act or any state securities or blue sky laws or the laws of any other jurisdiction, and the Warrants will bear a legend to such effect, (B) the Warrants are being offered only to Accredited Investors who are also Qualified Purchasers and (C) none of the Warrants nor any interest or rights therein may be transferred in the absence of such registration under the Securities Act or an exemption from the registration requirements thereof or such other applicable laws, and the purchaser has informed itself about and will observe all restrictions on transfer of the Warrants under such laws that may be applicable to it.

(vi)     The Purchaser agrees to treat the Warrants in accordance with the treatment described in "*Certain U.S. Federal Income Tax Considerations*" section of this Memorandum, unless otherwise required by law, for federal income tax purposes.

Prior to any purchase of Warrants on the Issue Date, each purchaser of Warrants must represent in writing, by completing, signing and delivering to the Placement Agent in the form of investor representation letter attached hereto as Exhibit I, that the Warrants are being acquired for its own account, for investment purposes and not with a view for resale and that such investor otherwise meets the suitability standards referred to above. In connection with any subsequent sale or transfer of a Warrant, each prospective transferee will be required to complete, sign and deliver to the Placement Agent or the Issuer and the Transfer Agent, as applicable, the form of transferee representation letter attached hereto as Exhibit II. Before any Warrants may be offered, sold, pledged or otherwise transferred, an initial investor or a subsequent transferee may be required to provide the Transfer Agent with a written certification as to compliance with applicable securities laws.

-24-

The Issuer has the right to reject a subscription for the purchase of Warrants for any reason or for no reason.

The Warrants are being offered to qualified investors only in such jurisdictions where offers and sales of Warrants are permitted and only in compliance with all applicable laws and regulations.

## CERTAIN U.S. FEDERAL INCOME TAX CONSIDERATIONS

This disclosure is limited to the U.S. federal income tax issues addressed herein. Additional issues may exist that are not addressed in this disclosure and that could affect the federal tax treatment of the Warrants. This tax disclosure was written in connection with the promotion or marketing by the Issuer of the Warrants, and it cannot be used by you for the purpose of avoiding penalties that may be asserted against you under the Internal Revenue Code or any state or local tax laws. You should seek advice based on your particular circumstances from an independent tax adviser.

In the opinion of Cadwalader, Wickersham & Taft LLP, our special tax counsel, the following are the material United States federal income tax consequences of the purchase, ownership and disposition of the Warrants. This discussion applies to you only if you are an initial holder of a Warrant and you hold such Warrant as a capital asset within the meaning of Section 1221 of the Internal Revenue Code of 1986, as amended (the "Code").

This summary does not address all aspects of the U.S. federal income taxation of the Warrants that may be relevant to you in light of your particular circumstances, nor does it address all of your tax consequences if you are a taxpayer that is subject to special treatment under the U.S. federal income tax laws, such as:

- a financial institution;

- a tax exempt organization;

- a dealer in securities or foreign currencies;

- a person that does not write, sell, or grant (directly or indirectly) any put option with respect to the Reference Fund or any interest therein or asset thereof or holds the Warrants as part of a hedging transaction, straddle, synthetic security, conversion transaction, or other integrated transaction, or enters into a "constructive sale" with respect to the Warrants or a "wash sale" with respect to your Warrants or any Reference Fund Interests;

- a U.S. Holder (as defined below) whose functional currency is not the U.S. dollar;

- a trader in securities who elects to apply a mark to market method of tax accounting;

- a partnership or other entity classified as a partnership for United States federal income tax purposes; or

- a person that is not a U.S. Holder, as defined below.

-25-

This summary is based on the Code, administrative pronouncements, judicial decisions and final, temporary and proposed Treasury regulations as of the date of this Memorandum, changes to any of which subsequent to the date of this Memorandum may affect the tax consequences described herein. If you are considering the purchase of a Warrant, you should consult your own tax adviser concerning the application of the United States federal income tax laws to your particular situation, as well as any tax consequences arising under the laws of any state, local or foreign jurisdictions.

If an entity that is classified as a partnership for U.S. federal income tax purposes holds a Warrant, the U.S. federal income tax treatment of a partner will generally depend on the status of the partner and upon the activities of the partnership. Partners of partnerships holding Warrants should consult their own tax advisers.

## Tax Treatment of Warrants

Based on certain factual representations provided to Cadwalader, Wickersham & Taft LLP by us, Cadwalader, Wickersham & Taft LLP is of the view that each Warrant should be treated for U.S. federal income tax purposes as an option with respect to the Reference Fund. While other treatments of the Warrants could be asserted by the Internal Revenue Service (the "IRS") in respect of the Warrants, as discussed below, the Issuer intends and, pursuant to the terms of the Warrants each U.S. Holder agrees, in the absence of an administrative determination or judicial ruling to the contrary, to characterize the Warrants as call options with respect to the Reference Fund, for U.S. federal income tax purposes and the following discussion assumes that this treatment of the Warrants is respected.

## Taxation of U.S. Holders

This discussion applies to you only if you are a "U.S. Holder." A "U.S. Holder" is a beneficial owner of a Warrant that, for United States federal income tax purposes, is:

- a citizen or resident of the United States;

- a corporation, or other entity taxable as a corporation, created or organized in or under the laws of the United States or any political subdivision thereof;

- an estate the income of which is subject to United States federal income taxation regardless of its source; or

- a trust if a court within the United States is able to exercise primary supervision over its administration, and one or more United States persons have the authority to control all of its substantial decisions.

An individual may, subject to certain exceptions, be deemed to be a resident of the United States by reason of being present in the United States for at least 31 days in the calendar year and for an aggregate of at least 183 days during a three-year period ending in the current calendar year (counting for such purposes all of the days present in the current year, one-third of the days present in the immediately preceding year, and one-sixth of the days present in the second preceding year).

-26-

Further, this summary does not address any investor that is related to, employed by, or affiliated with, the Reference Fund, or DESCO L.L.C. or DESCO L.P. or to any employee of the Issuer or its affiliates that is involved in management of assets of, or in supervising or administrating, the Reference Fund. In addition, this discussion applies only to U.S. Holders that do not have any prearrangement with the Reference Fund regarding the purchase of an interest in the Reference Fund upon lapse, settlement or other termination of the Warrants.

*Tax Treatment Prior to Expiration.* Under existing law, you should not be required to recognize taxable income over the term of your Warrants prior to the sale, exchange, redemption, settlement, lapse, exercise, maturity or other taxable disposition thereof.

*Sale, Exchange, Redemption, Exercise or Lapse of the Warrants.* Upon the sale, exchange, redemption, exercise, lapse or other taxable disposition of a Warrant (including the settlement of a Warrant at maturity), you should recognize gain or loss in an amount equal to the difference between the amount realized and your tax basis in the Warrant, which should equal the amount you paid to acquire the Warrant. In general, subject to the PFIC rules discussed below, such gain or loss should be long term capital gain or loss if you held the Warrant for more than one year at such time. Additionally, the deductibility of capital losses is subject to further limitations under the Code and U.S. Holders are encouraged to consult their own tax advisors regarding their ability to use any capital losses arising from ownership of the Warrants in light of their particular circumstances.

*Possible Treatment of the Warrants as Interests in One or More PFICs.* In general, a U.S. taxpayer that holds an option to acquire stock in a "passive foreign investment company" (a "PFIC") is required to report any gain on the disposition of the option as ordinary income, rather than capital gain, as if the gain had been earned ratably over each day in the taxpayer's holding period (or certain portion thereof), and the taxpayer is subject to tax on such gain at the highest ordinary income tax rate for each taxable year of the taxpayer's holding period for the option, other than the current year, regardless of the rate otherwise applicable to the taxpayer. The taxpayer is also liable for a non-deductible interest charge at the federal underpayment rate as if such tax liabilities had been due with respect to each prior year of the taxpayer's holding period. For purposes of these rules, gifts, exchanges pursuant to corporate reorganizations and use of a PFIC option as security for a loan may be treated as a taxable disposition of a PFIC option. In addition, a stepped-up basis in a PFIC option will not be available upon the death of an individual investor.

While the Reference Fund will not be classified as a PFIC, a U.S. Holder may be subject to the PFIC rules with respect to the Warrants to the extent that the Reference Fund directly or indirectly invests in PFICs or any investments of the Reference Fund are treated as PFICs. However, even if the Reference Fund were to acquire an interest in a PFIC, certain elections made by the Reference Fund for U.S. federal income tax purposes may eliminate any PFIC related exposure in respect of the Warrants. More specifically, even if the Reference Fund were to own an interest in a PFIC, such interest should not cause the Warrant to be treated as a PFIC option if the Reference Fund makes a timely "qualified electing fund" election with respect to such PFIC interest or elects to mark to market all of its trading activity under section 475 of the Code. We understand from the Confidential Private Offering Memorandum of the Reference Fund that the Oculus Master Fund has made such an election under section 475, although we have not verified the existence or validity of such election. Nevertheless, if the Reference Fund

-27-

were to acquire a non-qualified electing fund PFIC interest directly or if the Oculus Master Fund acquires such an interest and identifies it for U.S. federal income tax purposes as outside of its trading activity (or alternatively the IRS were to treat it as outside of such trading activity or otherwise treat the Oculus Master Fund's election under section 475 as invalid), then the application of the PFIC rules to the Warrants would be unclear and the IRS might assert that the Warrants constitute a PFIC option subject to the above described rules.  Prospective U.S. Holders should consult their own tax advisors regarding the potential application of the PFIC rules to their ownership and disposition of the Warrants.

**Possible Alternative Tax Treatments of an Investment in Warrants**

Due to the absence of authorities that directly address the proper treatment of the Warrants, no assurance can be given that the IRS will accept, or that a court will uphold, the treatment of the Warrants described above. If the IRS were successful in asserting an alternative treatment of the Warrants, the amount, timing and character of income, gain or loss on your Warrants could differ materially from our description herein. For example, one alternative federal income tax treatment of the Warrants might require you to include amounts in income during the term of the Warrants on the theory that you own an equity interest in the Reference Fund, either directly or through a partnership with the Issuer. Other treatments could result in the recharacterization of some or all of any long term capital gain you realize as ordinary income, together with the imposition of an interest charge.  Other tax treatments are also possible. Accordingly, you should consult your tax adviser regarding the existence, probability and consequences of potential IRS recharacterizations of the Warrants.

**Backup Withholding and Information Reporting**

In general, information returns may be filed with the IRS in connection with payments of proceeds from a sale, exchange or settlement of a Warrant.  In addition, a U.S. Holder who is not a corporation may be subject to U.S. backup withholding tax on these payments unless it provides its taxpayer identification number to the paying agent or otherwise establishes an exemption from backup withholding.  The amount of any backup withholding imposed on a payment to a U.S. Holder may be allowed as a credit against its U.S. federal income tax liability and may entitle it to a refund, provided the required information is furnished to the IRS.

The tax consequences of owning a Warrant are unclear. You should consult your own tax adviser regarding the tax consequences of purchasing, owning and disposing of a Warrant, including the tax consequences under state, local, foreign and other tax laws and the possible effects of changes in United States federal or other tax laws.

## CERTAIN BENEFIT PLAN CONSIDERATIONS

The Warrants may not be acquired by, on behalf of, or with the assets of, an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), a plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"), a plan subject to any federal, state, local or other law, rule or regulation which is substantially similar to Title I of ERISA or Section 4975 of the Code ("Similar Law") or any entity deemed to hold the assets of such an employee benefit plan or plan for purposes of

-28-

ERISA, Section 4975 of the Code or Similar Law. Each Investor shall be required to provide a representation and warranty with respect to the foregoing.

## USE OF PROCEEDS

The Issuer estimates that it will receive net proceeds from this offering of approximately $[●], after deducting estimated offering expenses. The Issuer plans to use some of the net proceeds to effect purchases (in each case through an affiliate or affiliates of the Issuer) of Interests in the Reference Fund in order to hedge its obligations under the Warrants. However, it is not required to hedge those obligations.

Such Interests purchased, if any, will be the separate property of the Issuer, or such affiliate or affiliates of the Issuer, and do not secure or otherwise underlie the Warrants; and holders of Warrants have no beneficial interest in or claim over such assets.

The remainder of the proceeds will be used for general corporate purposes.

## LEHMAN BROTHERS HOLDINGS INC.

Lehman Brothers Holdings Inc. (together with its consolidated subsidiaries hereinafter referred to as the "Company" unless the context otherwise requires), an innovator in global finance and one of the leading global investment bank, serves the financial needs of corporations, governments and municipalities, institutional clients and individuals worldwide. The Company provides a full array of equities and fixed income sales, trading and research, investment banking services and investment management and advisory services. The Company's global headquarters in New York and regional headquarters in London and Tokyo are complemented by offices in additional locations in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

Through the Company's subsidiaries, it is a global market-maker in all major equity and fixed income products. To facilitate its market-making activities, the Company is a member of all principal securities and commodities exchanges in the United States, as well as NASD, Inc., and it holds memberships or associate memberships on several principal international securities and commodities exchanges, including the London, Tokyo, Hong Kong, Frankfurt, Paris, Milan and Australian stock exchanges.

The Company's principal business activities are investment banking, capital markets and investment management which, by their nature, are subject to volatility primarily due to changes in interest and foreign exchange rates, valuation of financial instruments and real estate, global economic and political trends and industry competition. Through its investment banking, trading, research, structuring and distribution capabilities in equity and fixed income products, the Company continues to build on its customer flow business model, which is based on its principal focus of facilitating client transactions in all major global capital markets products and services. The Company generates customer flow revenues from institutional, corporate, government and high-net-worth customers by (i) advising on and structuring transactions specifically suited to meet client needs; (ii) serving as a market maker and/or intermediary in the global marketplace, including having securities and other financial instrument products available

to allow clients to rebalance their portfolios and diversify risks across different market cycles; (iii) originating loans for distribution to clients in the securitization or principal market; (iv) providing investment management and advisory services; and (v) acting as an underwriter to clients. As part of the Company's customer flow activities, it maintains inventory positions of varying amounts across a broad range of financial instruments. In addition, it also takes proprietary investment positions, the success of which is dependent on its ability to anticipate economic and market trends. The financial services industry is significantly influenced by worldwide economic conditions as well as other factors inherent in the global financial markets. As a result, revenues and earnings may vary from quarter to quarter and from year to year. The Company believes its customer flow orientation helps to mitigate overall revenue volatility.

LBH was incorporated in Delaware on December 29, 1983. LBH's principal executive offices are located at 745 Seventh Ave., New York, NY 10019. LBH is subject to the informational requirements of the Exchange Act and in accordance therewith files reports and other information with the SEC. Such reports and other information may be inspected and copied at the public reference facilities maintained by the SEC at 450 Fifth Street, N.W., Washington, D.C. 20549, and copies of such material can be obtained from the Public Reference Section of the SEC at prescribed rates. In addition, information provided to or filed with the SEC electronically can be accessed through a website maintained by the SEC. The address of the SEC's website is http://www.sec.gov. Information provided to or filed with the SEC by LBH pursuant to the Exchange Act can be located by reference to Commission file number 1-9466. Such reports and other information may also be inspected at the Information Center of the New York Stock Exchange Inc., 20 Broad Street, New York, New York 10005 and at the American Stock Exchange, 86 Trinity Place, New York, New York 10006.

The annual report of LBH on Form 10-K for the year ended November 30, 2006, the quarterly reports on Form 10-Q dated April 9, 2007, and the current reports of LBH on Form 8-K dated February 14, 2007, February 28, 2007, March 1, 2007, March 13, 2007, March 14, 2007, March 21, 2007, March 23, 2007, March 30, 2007, April 6, 2007, April 9, 2007, April 18, 2007, May 1, 2007, May 9, 2007, May 10, 2007, May 14, 2007, May 23, 2007, May 30, 2007, and June 12, 2007 which contain financial information concerning LBH and its subsidiaries on a consolidated basis and other information, have been filed with the SEC and otherwise publicly distributed. Such reports of LBH and subsequent reports of LBH filed with the SEC pursuant to Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act after the date hereof are incorporated herein by reference.

The Company operates in three business segments: Investment Banking, Capital Markets and Client Services. Financial information concerning the Company for the fiscal years ended November 30, 2006, November 30, 2005, and November 30, 2004, including the amount of net revenue contributed by each segment in such periods, is set forth in the Company's Consolidated Financial Statements and the Notes thereto in its 2006 annual report on Form 10-K, which is incorporated by reference herein. Information with respect to operations by segment and net revenues by geographic area is set forth under the captions "*Management's Discussion and Analysis of Financial Condition and Results of Operation—Business Segments*" and "*— Geographic Diversification*" and in Note 19 of the Notes to Consolidated Financial Statements contained in the annual report on Form 10-K, which, as noted above, is incorporated by reference herein.

Some of the statements contained in this Memorandum and the documents incorporated herein by reference, including those relating to LBH's strategy and other statements that are predictive in nature, that depend upon or refer to future events or conditions or that include words such as "expects," "anticipates," "intends," "plans," "believes," "estimates" and similar expressions are forward-looking statements within the meaning of Section 27A of the Securities Act of 1933 and Section 21E of the Securities Exchange Act of 1934. These statements are not historical facts but instead represent only LBH's expectations, estimates and projections regarding future events. These statements are not guarantees of future performance and involve certain risks and uncertainties that are difficult to predict, which may include market, credit or counterparty, liquidity, legal and operational risks. Market risks include changes in interest and foreign exchange rates and securities valuations, global economic and political trends and industry competition. LBH's actual results and financial condition may differ, perhaps materially, from the anticipated results and financial condition in any such forward-looking statements. LBH undertakes no obligation to update any forward-looking statements, whether as a result of new information, future events or otherwise.

Each prospective investor is encouraged to obtain and review the information referred to above, and it is recommended that no prospective investor make a decision to purchase a Warrant until such review is completed.

## THE REFERENCE FUND

*This Memorandum is not an offer to sell and it is not an offer to buy interests of the Reference Fund. All disclosures contained in this Memorandum regarding the Reference Fund have been provided D. E. Shaw Oculus Fund, L.L.C. The Reference Fund invests in D. E. Shaw Oculus Portfolios, L.L.C. (the "Oculus Master Fund" and collectively with the Reference Fund, D. E. Shaw Oculus International Fund, and subsidiaries of any of the foregoing, the "Oculus Fund"). None of the Issuer, or any of its affiliates take any responsibility for the accuracy or completeness of such information.*

*Attached as Exhibit V is the Confidential Private Offering Memorandum of D. E. Shaw Oculus Fund, L.L.C. By accepting this document, you acknowledge and agree that all of the information contained in this document shall be kept strictly confidential by you.*