UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                                   :
In re                                              :    Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :    08-13555 (JMP)
                                                   :
              Debtors.                             :    (Jointly Administered)
                                                   :
----------------------------------------------------------------x

## DECLARATION OF F. ROBERT BRUSCO IN SUPPORT OF MOTION OF THE DEBTORS PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 FOR AUTHORITY TO ENTER INTO SETTLEMENT WITH SUNCAL TRUSTEE ON BEHALF OF SUNCAL INVOLUNTARY DEBTORS

I, F. Robert Brusco, do hereby declare and depose that the following is true to the best of my knowledge, information, and belief:

1.      I am employed by LAMCO, LLC ("LAMCO"), a wholly owned subsidiary of LBHI[1] and an affiliate of LCPI, which are both debtors in possession in the above-captioned cases. LAMCO is the asset manager for the Debtors and their controlled affiliates and responsible for the asset management of the Involuntary Debtors' Financing. As an employee of LAMCO, I am the person primarily responsible for the direct management of the Involuntary Debtors' Financing and have been involved with such since January of 2008.

2.      I submit this declaration (this "Declaration") in support of the Motion. I am over the age of 21 and fully competent to testify to the matters set forth in this Declaration. I am fully familiar with the facts stated herein based upon the information provided to me by the Debtors, their counsel, the SunCal Trustee and through my work as an employee of LAMCO. If

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the *Motion of the Debtors Pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authority to Enter into Settlement With SunCal Trustee on Behalf of SunCal Involuntary Debtors*, dated September 29, 2010 [Docket No. 11688] (the "Motion").

called to testify at the October 20, 2010 hearing on the Motion, the following would be my direct testimony.

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of the relevant documents, information provided to me by counsel or employees working under my supervision, or my opinion based upon my experience, knowledge, and information concerning the Involuntary Debtors' Financing and the SunCal Involuntary Settlement.

4. Pursuant to the Motion, LCPI and LBHI seek approval of the SunCal Involuntary Settlement, pursuant to the terms set forth in the Joint Plan proposed in the SunCal Involuntary Debtor Cases by the SunCal Trustee and the Lehman Creditors. On September 30, 2010, the SunCal Trustee and the Lehman Creditors filed the Joint Plan and the disclosure statement in support thereof (the "Joint Plan Disclosure Statement") with the California Bankruptcy Court. Copies of the Joint Plan and the Joint Plan Disclosure Statement are attached to the *Notice of Joint Plan in Connection with Motion of the Debtors Pursuant to Section 363 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 for Authority to Enter into Settlement With SunCal Trustee on Behalf of SunCal Involuntary Debtors,* dated October 4, 2010 [Docket No. 11779], as Exhibit A and Exhibit B, respectively.

**A. The Loan Agreements**

5. Over the past five years, the Lehman Lenders became the SunCal Involuntary Debtors' largest funding source pursuant to the following Loan Agreements:

- that certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of September 9, 2005, between LB/L-SunCal Northlake, LLC, as borrower, and Northlake Holdings, as successor agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $100 million;

- that certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of May 23, 2006, between LB/L-SunCal Oak Valley, LLC, as borrower, and OVC Holdings, as successor agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $120 million;

- that certain Loan Agreement, dated as of November 30, 2006, among Lehman SunCal Real Estate Holdings, LLC, SunCal Torrance Properties, LLC, and SunCal Oak Knoll, LLC, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $167.7 million;

- that certain Term Loan and Revolving Line of Credit Loan Agreement, dated as of February 12, 2007, by and between SunCal PSV, LLC, as borrower, and Lehman ALI, as agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $90 million;

- that certain Amended and Restated Loan Agreement, dated as of April 20, 2007, by and between Delta Coves Venture, LLC, as borrower, and Lehman ALI, as agent and lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $236 million; and

- that certain Second Amended and Restated Term Loan and Revolving Line of Credit Loan Agreement, dated as of October 3, 2007, by and among SunCal Marblehead Heartland Master LLC, SunCal Marblehead, LLC, and SunCal Heartland, LLC, as borrowers, and Lehman ALI, as agent and sole lender, pursuant to which the lender(s) thereunder made loans in the maximum aggregate principal amount of approximately $316 million.

6. The Involuntary Debtors' Financing is secured by, among other things, first priority deeds of trust on the Projects, which include certain real estate development projects, together with all rights, remedies, privileges and easements appurtenant thereto and all other real and personal, tangible and intangible, property related thereto. The Projects include the real estate developments known as Northlake, Oak Valley Champions, Marblehead, Heartland, Delta Coves, Palm Springs Village, Oak Knoll and Del Amo.

B. **The SunCal Bankruptcy**

7. After the commencement of the Debtors' chapter 11 cases, the SunCal Debtors commenced cases under chapter 11 of the Bankruptcy Code in California Bankruptcy

Court. Following the commencement of the SunCal Involuntary Debtors' Cases, Steven Speier was appointed as the SunCal Trustee to administer such cases. The Lehman Lenders filed proofs of claim against the SunCal Involuntary Debtors in respect of the Involuntary Debtors' Financing having an aggregate outstanding amount in excess of $1.1 billion. Numerous additional claims have been asserted by third parties against the SunCal Involuntary Debtors. Certain of such third party claims are secured by surety bonds issued by Arch or by Bond Safeguard. The aggregate value of the SunCal Involuntary Debtors' assets is significantly less than the aggregate amount of the Lehman Creditors' claims arising from the Involuntary Debtors' Financing. Based on appraised values contained in appraisals obtained by the Lehman Lenders in early 2009, the SunCal Involuntary Debtors own the majority of the SunCal Debtors' assets.

8.     The SunCal Trustee (acting on behalf of the SunCal Involuntary Debtors) and the SunCal Voluntary Debtors commenced the Adversary Proceeding in their chapter 11 cases seeking, among other things, to subordinate all of the claims and liens of the Lehman Lenders arising from the Financing to the claims of all unsecured creditors against all of the SunCal Debtors. The Lehman Lenders dispute each of the claims asserted against them in the Adversary Proceeding. I believe that the Lehman Lenders have valid defenses to each claim. However, I further believe that litigating these claims would be expensive and subject to the vagaries and risk of litigation, and until such litigation is resolved, there will be a stalemate spanning two different bankruptcy courts as to how to deal with the Projects.

9.     On September 21, 2010, the SunCal Voluntary Debtors filed *Notice of Motion and Motion for an Order (1) Imposing a Discretionary Stay Suspending All Matters and Proceedings Filed or Being Pursued by the Lehman Entities until All Allegedly Applicable Lehman Entities' Automatic Stays in the SunCal Debtors' Chapter 11 Cases Are Lifted, (2)*

*Extending the Limitations Period under 11 U.S.C. § 546(a) and (3) Confirming that 11 U.S.C. § 108(c) Automatically Extends the Period of Time for the Commencement of Certain Actions; Memorandum of Points and Authorities* with the California Bankruptcy Court.  By their motion, the SunCal Voluntary Debtors seek an order deferring consideration of the Joint Plan until the Debtors stipulate to lift the automatic stay with respect to the SunCal chapter 11 cases.  The hearing on such motion has been scheduled for October 29, 2010.

C. **The SunCal Involuntary Settlement Should Be Approved**

10. The salient terms of the SunCal Involuntary Settlement, as reflected in the Joint Plan, are set forth in paragraph 18 of the Motion.

11. I believe that the SunCal Involuntary Settlement is a fair and reasonable compromise, and its approval is in the best interests of Debtors' estates.  The SunCal Involuntary Settlement provides for (i) the conveyance of the Projects to one or more entities designated by the Lehman Creditors, free and clear of all liens and encumbrances (except the existing deeds of trust in favor of the Lehman Creditors and other liens and encumbrances acceptable to the Lehman Creditors) pursuant to section 363 of the Bankruptcy Code; (ii) the payment by the Lehman Creditors of settlement payments in respect of administrative expenses and allowed claims and payment of post-confirmation expenses; (iii) the withdrawal by the SunCal Trustee and the SunCal Involuntary Debtors of all of their claims in the Adversary Proceeding, with prejudice, against all defendants; and (iv) a full release to be given by the SunCal Trustee, the SunCal Involuntary Debtors and each non-priority, unsecured creditor receiving the full settlement payment being offered to other creditors in the same class as that creditor, to the Lehman Creditors and the other defendants in the Adversary Proceeding.  In exchange, the Lehman Creditors will provide the Lehman Plan Funding, the payment of a certain percentage of

allowed claims and plan confirmation expenses in the SunCal Involuntary Debtor Cases. As described in the Motion, the Lehman Creditors have the right, in their discretion, not to consummate the Joint Plan if the amount of the Lehman Plan Funding exceeds $45 million. To the extent the Lehman Plan Funding does exceed $45 million, the Debtors will consult with the Creditors' Committee prior to determining whether to consummate the Joint Plan.

12. I believe that approval of the SunCal Involuntary Settlement will save LCPI and LBHI's estates significant administrative expenses, will eliminate the risk associated with litigation of the SunCal Involuntary Debtors' claims asserted in the Adversary Proceeding, and will substantially preserve the Lehman Creditors' secured claims in the SunCal Involuntary Debtor Cases. Moreover, the SunCal Involuntary Settlement provides an acceptable mechanism for certain direct or indirect subsidiaries of LBHI and/or one or more of the Lehman Creditors to take title to the Projects.

13. I believe that the Joint Plan, and the SunCal Involuntary Settlement embodied therein, provides the best framework for globally resolving the numerous disputes by and among the Lehman Creditors, the SunCal Trustee and the SunCal Involuntary Debtors, including the SunCal Involuntary Debtors' claims in the Adversary Proceeding. As previously stated, while I believe that the Lehman Lenders have valid defenses to each of the SunCal Involuntary Debtors' claims, in order to prevail over such claims, I believe that the Lehman Lenders would be required to engage in expensive and protracted litigation with the SunCal Trustee with an uncertain result. Additionally, absent the SunCal Involuntary Settlement, it would be costly and difficult for the Lehman Creditors to be able to recover the Projects or their proceeds in the foreseeable future. I believe that the concessions made by the Lehman Creditors

under the SunCal Involuntary Settlement are reasonable in light of the benefits derived therefrom.

14. Based on the foregoing and the arguments made in the Motion, I believe that the Joint Plan and the SunCal Involuntary Settlement embodied therein are reasonable and in the best interests of the Debtors and their estates and creditors. Accordingly, the SunCal Involuntary Settlement should be approved.

15. I declare under the penalty of perjury that the foregoing is true and correct and to the best of my knowledge.

Dated: October 19, 2010
       New York, New York

                                              /s/ F. Robert Brusco
                                              F. Robert Brusco