McCARTHY, JOHNSON & MILLER, L.C.
RAPHAEL SHANNON,
Cal. State Bar No. 83850 (Admission *pro hac* pending)
LORI A. NORD, ESQ.,
Cal. State Bar No. 87993(Admission *pro hac* pending)
ANA PEREZ HALLMON, ESQ.,
Cal. State Bar No. 253309 (Admission *pro hac* pending)
595 Market Street, Suite 2200
San Francisco, CA  94105
Telephone:  (415) 882-2992
Facsimile:   (415) 882-2999
E-mail: rshannon@mjmlaw.us
         lnord@mjmlaw.us
         ahallmon@mjmlaw.us

Attorneys for California Winery Workers'
Pension Trust Fund

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re LEHMAN BROTHERS HOLDING INC., *et al.*

                                Debtors.

------------------------------------------------------------x

Case No. 08-13555-JMP
(Jointly Administered)

**RESPONSE OF CALIFORNIA WINERY WORKERS' PENSION TRUST FUND TO DEBTORS' FORTIETH OMNIBUS OBJECTIONS TO CLAIMS (LATE FILED CLAIMS), OBJECTION TO DISALLOWANCE /EXPUNGEMENT OF CLAIM NO. 44972**

The California Winery Workers' Pension Trust Fund ("Trust Fund"), through their counsel, submit this objection to the Debtors' Fortieth Omnibus Objection to Claims (Late Filed Claims), and states as follows:

1.    On September 15, 2010, Lehman Brothers Holdings, Inc. ("LBHI") filed a petition

for relief under chapter 11 of the United States Bankruptcy Code in this Court. Subsequently, several of LBHI's affiliaties, including Lehman Brother Special Financing ("LBSF") (collectively, the "Debtors"), also filed for relief under chapter 11. The Debtors' petitions were consolidated and have been jointly administered as *In re Lehman Brothers Holding Inc., et al.*, Case No. 08-13555-JMP. A disclosure statement for a plan of reorganization has not yet been approved.

2.     Debtors moved for an order disallowing and expunging the proof of claim filed by the Trust Fund, Claim Number 44972, in the amount of $187,838.58 (the "Claim") on the grounds that it was filed after the September 22, 2009 bar date established by the Court. The Trust Fund disagrees that the Claim was filed late. In the alternative, in the event the Claim is determined to have been filed late, the Trust Fund's filing three days after the bar date constitutes "excusable neglect" under Fed. R. Bank. P. 9006(b)(1), and its claim should be deemed timely under *Pioneer v. Investment Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380. 123 L.Ed.2d 74, 113 S.Ct. 1489 (1993)("Pioneer"). Because the Trust Fund's delay in filing the Claim was justified, there was no prejudice to the debtors, the length of the delay was *de minimis*, and the Trust Fund acted in good faith, the Court should allow the Claim

**I.     BACKGROUND**

3.     The Trust Fund is an employee pension benefit plan established under the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*, as well as a Taft-Hartley Trust Fund managed by a Joint Board of Trustees, who are representatives of the participating unions or employers. The Trust Fund's assets are held and invested to provide retirement benefits to its participants and beneficiaries, including approximately 5,900 California winery workers. The Board of Trustees acts on behalf of the Trust Fund for the benefit of participants and beneficiaries of the

Trust Fund. The Trust Fund does not have any employees. Thus, the Trust Fund relies on and hires third-party-service providers to run the day-to-day administration of the Trust Fund. The Board of Trustees only meets three times a year to handle and discuss Trust Fund business.

4. The Trust Fund retained Union Bank, formerly known as Union Bank of California, as the Corporate Co-Trustee of the Trust Fund and the custodian of the Trust Fund's assets. Union Bank was the custodian of all of the Trust Fund's assets. Union Bank normally files proofs of claim for assets for which it serves as custodian. As such, Union Bank agreed to file the proof of claim at issue for the Trust Fund and collect the appropriate documentation.

5. On September 22, 2010, after 5:00p.m., P.S.T., Trust Fund's counsel was informed for the first time that Union Bank would not file the proof of claim. By the time that Trust Fund's counsel was informed that a proof of claim had not been filed, the bar date of September 22, 2010, 5:00p.m., E.T., had already passed. Trust Fund counsel worked diligently to prepare the proof of claim and collect the appropriate documentation. The documentation for the claim was not in possession of Trust Fund's counsel or the Trust Fund's third-party administrator. Thus, Trust Fund counsel needed time to collect the documentation.

6. On September 24, 2009, the Trust Fund mailed via an over-night delivery service, a proof of claim for $93,688.37. This proof of claim is attached hereto as Exhibit A. The proof of claim was received by the Bankruptcy Court on September 25, 2009, only three days after the bar date. (Exh. A.) The Trust Fund filed with the proof of claim a cover letter explaining the tardy submission of the claim. (Exh. A.) The acknowledgment of receipt of the proof of claim by Epiq Systems is attached hereto as Exhibit B. The Bankruptcy Court assigned this as claim number 36757. (Exh. A.)

7. Thereafter, on October 21, 2009, the Trust Fund filed an amended proof of claim correcting the amount of the claim submitted for claim number 36757. The amended proof of claim is attached hereto as Exhibit B. The amended proof of claim was received by the Bankruptcy Court on October 22, 2009. (Exh. B.) The Bankruptcy Court assigned this claim a new claim number, No. 44972, even though this claim amended the previously filed claim. (Exh. B.) The acknowledgment of receipt of the proof of claim by Epiq Systems is attached hereto as Exhibit D. Thus, the filing date for this claim is September 25, 2009, and not October 22, 2009.

8. The Claim is based on a derivative contract with LBSF. The transactions were governed by an ISDA Master Agreement ("Master Agreement"), dated March 29, 2007. The Master Agreement included a guarantee by LBHI of LBSF's obligations to the Trust Fund.

9. The transactions were complex and involved multi-step foreign exchange transfers. The transactions required execution after the petition date. Attached hereto as Exhibit E is a true and correct copy of the transaction record. The transactions included a trade date and settlement dates that were postpetition. Pursuant to the transactions and following netting of all amounts awed, LBSF owed the Trust Fund $187,838.58. The Trust Fund timely filed the documentation required for derivative contracts by the October 22, 2009 deadline.

10. On June 15, 2009, the Debtor filed an Amended Schedules of Assets and Liabilities for Lehman Brothers Holding Inc. (Dkt. No. 3918.) The Winery Workers' Pension Trust Fund is listed on Schedule G for executory contacts. The page from the Schedules where the Trust Fund is listed as a holder of an executory contract with Debtor is attached hereto as Exhibit F.

## II.  ARGUMENT

11. Since this claim arises from a postpetition act of the Debtor, the bar date does not

apply to the Claim. Moreover, the executory contract on which the claim is based has not been rejected or assumed by the Debtor. The Debtor is aware of its obligations to the Trust Fund as it was filed in their Amended Schedules of Liabilities and Assets. (Exh. F.) Since the Claim was timely filed, the Debtor's Objection to the Trust Fund's claim should be denied. In the event the claim is determined to not be timely filed, the Court should allow the claim because it was filed late due to excusable neglect.

12. Bankruptcy Rule 9006 governs the admission of proofs of claim filed after a court-ordered bar date. *See Pioneer,* 507 U.S. at 382. In *Pioneer*, the Court noted that "reading Rule 9006(b)(1) inflexibly to exclude every instance of an inadvertent or negligent omission would ignore the most natural meaning of the word 'neglect' and would be at odds with the accepted meaning of that word in analogous contexts." *Id.* at 394-95. Excusable neglect is "not limited to situations where the failure to timely file is due to circumstances beyond the control of the filers." *Id.* at 391. Instead, the Court found that "Congress plainly contemplated that the courts would be permitted, where appropriate, to accept late filings caused by inadvertence, mistake or carelessness." *Id.* at 388.

13. The determination of what constitutes excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances," including "(1) the danger of prejudice to the debtor, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Id.* at 395 (citation omitted). Each of these factors weighs in favor of granting relief to the Trust Fund.

A. <u>No Prejudice to the Debtor</u>

14. Allowing the Claim will not prejudice the Debtors. The Debtors knew of its

obligations to the Trust Fund. In fact, the Debtors included the obligation to the Trust Fund in its Amended Schedule of Liabilities and Assets. (Exh. F.) The Trust Fund timely filed the Questionnaires for derivative contracts and guarantees. The Debtors likely did not begin analyzing the derivative and guarantee claims before the filing of the Questionnaires. Moreover, to date, over a year after the Claim was filed, the Debtors have not yet had a disclosure statement approved, nor have they rejected its contract with the Trust Fund.

15. Under these circumstances, the Court should fund that allowing the Claim would not prejudice the Debtor.

B. The Three Days Delay was De Minimis

16. The three day delay in filing the Claim has not impacted the judicial proceedings. The Order required claimants under the a derivative contract or guarantee to respond to the Questionnaires and submit documentation supporting their claims by the October 22, 2009 Questionnaire deadline. The Questionnaire sought additional details relating to the claims.

17. Clearly, therefore, Debtors did not contemplate having the information necessary to process the derivative and guarantee claims until after the Questionnaire deadline. Thus, even if the Trust Fund submitted the Claim by the bar date, the Debtors still could not have meaningfully determined its merits until Debtors contemplated the Questionnaires and uploaded the required supporting documentation on October 22, 2009.

18. In addition, the Claim is only for $187,838.58. This amount is insignificant compared to the Debtors assets and the total claims filed in this bankruptcy. Allowing the Claim would not have a meaningful effect on the Debtors' assets. Moreover, at the time the Claim was filed, the Debtors did not have either a disclosure statement or a plan of reorganization on file.

Accordingly, the Trust Fund's three-day delay in filing the Claim could not have impacted the bankruptcy proceedings.

C. <u>Reasons for the Delay Justifiable</u>

19. The Trust Fund sought confirmation from Union Bank, that it would file the Claim as the custodian of the assets in question before the bar date. Union Bank confirmed it would file the Claim and would gather the required documentation. Union Bank did not inform the Trust Fund that it would not file the proof of claim until after the bar date. At that point, the Trust Fund diligently sought to collect the required information to file the Claim and did so within two days. The circumstances were beyond the Trust Fund's control as the Trust Fund's third party administrator was not in possession of the documents required to file the claim.

20. Moreover, the Trust Fund relies on third-party service providers to run the day-to-day business of the Trust Fund. It is customary and reasonable for a multiemployer pension trust fund like this one to rely exclusively on third-party-service providers for all functions. As such, when something highly unusual and unique happens, such as the necessity of filing a claim in a bankruptcy proceeding, which would normally be done by an investment manager or by the custodian bank, the Trust Fund has great difficultly achieving coordinated cooperation among its service providers. Even so, the Trust Fund sought assurances from the custodian of the assets, and did not get notice that the Claim would not be filed by that service provider until after the bar date. Accordingly, the resulting delay should be excused.

D. <u>The Trust Fund Acted in Good Faith</u>

21. The Trust Fund at all times acted in good faith with respect to filing the Claim and seeking payment from Debtors. The Trust Fund sought confirmation from Union Bank that the

Claim would be filed in a timely fashion. The Trust Fund did not find out that Union Bank would not file the Claim until after the bar date had passed. Subsequently, the Trust Fund diligently worked to collect the required information to file the Claim. Moreover, the Trust Fund diligently collected the documentation to substantiate its Claim and filed it by the Questionnaire deadline. Accordingly the Court should find the delay in filing the Claim constitutes excusable neglect, especially given the difficulties for a multiemployer pension plan to respond in a coordinated fashion to such an unusual situation.

    E.    <u>The Overall Balance of the Equities Favor Allowing the Claim</u>

22. The Trust Fund is a qualified pension plan providing modest monetary annuity benefits to thousands of retired low-wage workers. A loss of this type is damaging to the Trust Fund, as all of its assets are committed for benefit payments. Given that the Debtors have not been prejudiced by the delay, the de minimis nature of the delay, the justifiable reason for the delay, and the Trust Fund acted in good faith the Court should allow the Claim.

**III.   Conclusion**

23. The Trust Fund respectfully requests that the Court deny the Debtor's Objection to the late-filed Claim of the Trust Fund, and that the Trust Fund's Claim be deemed allowed and for such and other relief that the Court deems just and proper.

Dated: October 15, 2010

San Francisco, California

                                      McCARTHY, JOHNSON & MILLER,
                                      Law Corporation

                                      By: _____
                                             RAPHAEL SHANNON

## DECLARATION OF SERVICE BY FEDEX

I am a citizen of the United States and a resident of the State of California. I am over the age of eighteen years and not a party to the within action. My business address is 595 Market Street, Suite 2200, San Francisco, California 94105.

I am familiar with the practice of McCarthy, Johnson and Miller Law Corporation for collection and processing of correspondence for mailing with FedEx, overnight delivery service.

On October 15, 2010, I served the following document by placing a true copy of each such document for collection and mailing, in the course of ordinary business practice, with other FedEx correspondence of McCarthy, Johnson & Miller Law Corporation, located at 595 Market Street, Suite 2200, San Francisco, CA 94105, enclosed in a sealed envelope with postage fully prepaid, addressed in the manner set forth immediately below this declaration.

Document served:

1. Response of California Winery Workers' Pension Trust Fund to Debtors' Fortieth Omnibus Objections to Claims (Late Filed Claims), Objection to Disallowance /Expungement of Claim No. 44972

2. Exhibits A-F

I declare under penalty of perjury that the foregoing is true and correct.
Dated on October 15, 2010, at San Francisco, California.

Ana Perez Hallmon

Dennis Dunne, Dennis O'Donnell, Evan Fleck
Milbank, Tweed, Hadley & McCoy
1 Chase Manhattan Plaza
New York, NY 10005

Weil, Gotshal & Manges
Attn: Waisman, Shai
767 Fifth Ave.
New York, NY 10153

United States Trustee for the Southern District of New York,
Attn: Andy Velez-Rivera
33 Whitehall Street, 21st Floor,
New York, NY 10004