Crumbie Law Group
280 Trumbull Street, 21st Floor
Hartford, CT 06103
Tel: (860) 725-0025
Fax: (860) 760-0308
John Rose, Jr.
Heidi Hamilton
Attorneys for Claimant, Julian Iragorri

FILED
U.S. BANKRUPTCY COURT
2010 OCT 18 P 2: 47
S.D. OF N.Y.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In Re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC, *et al.*, | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

## RESPONSE TO DEBTOR'S FORTIETH OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)

Claimant, Julian Iragorri, by his attorneys Crumbie Law Group, LLC, respectfully submits this memorandum in response and opposition to the Fortieth Omnibus Objection to Claims (Late Filed Claims) filed by Debtor Lehman Brothers Holdings, Inc.

### I.    FACTS

As set forth in the accompanying affidavit:

Mr. Iragorri was employed by Debtor Lehman Brothers for eight years, until Lehman Brothers filed for bankruptcy in 2008. During Mr. Iragorri's employment, he purchased warrants and securities. As part of his compensation, he was also paid with stock options which were considered deferred compensation. After Lehman Brothers filed for bankruptcy in 2008, Barclays bought the Lehman Brothers operation in the United States. Mr. Iragorri now works for Barclay's Wealth.

As of the date of the Lehman bankruptcy filing, Mr. Iragorri had warrants he had purchased from Lehman while an employee and he also had securities from Lehman which were part of his compensation. As of about April, 2009, Mr. Iragorri began to receive an inordinate number of documents related to the

1

bankruptcy, which purported to direct him to do things or not to do things relative to any claims he might have against the Debtor. He received paperwork/notices that said he need not file a proof of claim if he had securities or warrants of Lehman Brothers. [See Exhibit A, Notice of Deadlines for filing Proofs of Claims, p. 2]. He received paperwork that directed him to act in a certain way in terms of filing a claim or claims by the "General Bar Date" [September 22, 2009] if his claim was applicable to "general claims against Debtors." He received paperwork that told him that the applicable date for filing a claim or claims was November 2, 2009, if his claim was based on securities, being the so called "Program Securities Bar Date," which was related, he was told, to securities "included in the Lehman Program Securities List."

However, Mr. Iragorri never received a notice or paperwork that told him what to do if he had securities that were an integral part of his wages – being deferred compensation to him, being payment for work that he had already performed in good faith for his previous employer which was now in bankruptcy.

Mr. Iragorri did file three (3) Proofs of Claim related to his warrants. Although Debtor's counsel initially objected to those claims for failure to include the specific debtor, that objection has been waived. These Proofs of Claims were timely filed.

As for his deferred compensation/securities claim, Mr. Iragorri was at sea as to what he was to do, based on the mixed messages in the notices/information that he received. If the deferred compensation was comprised of securities, was he required to file at all? If the claim was for "wages," should he file as a "general claim against Debtors" by September 22, 2009, or for claims based on securities, which had a Bar Date of November 2, 2009?

After starting his new job at Barclays Wealth, Mr. Iragorri had conversations with former Lehman Brother colleagues. He learned that some former Lehman Brothers colleagues had filed claims based on securities which were part of their compensation. Mr. Iragorri prepared his own claim dated September 21, 2010 [attached as Exhibit B] which he did not file by the September 22, 2009 date for "general claims" because of his uncertainty as to whether or not his was a claim based on securities. He

2

referenced the claim as being for "Wages, salaries and compensation." He did not check any place on the form in the box titled "Secured Claim." He did not consult an attorney.

Mr. Iragorri then hand-delivered the claim to Epiq Bankruptcy Solutions, along with an attachment titled "Executive Compensation Summary/Julian Iragorri...Data as of September 12, 2008/Prepared on November 6, 2009 [See Exhibit A]. Months later, on or about September 13, 2010, Mr. Iragorri received notice that the Debtors by their "Fortieth Omnibus Objection to Claims" had included his claim for disallowance and dismissal based on untimely filing.

**II.    ARGUMENT**

Bankruptcy Rule 9006(b) provides, in relevant part:

> [W]hen an act is required or allowed to be done at or within a specified period...by order of court, the court for cause shown may at any time in its discretion...(2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

Fed. Bankr. R. 9006(b)(1).

Thus, a bankruptcy court may allow a proof of claim that is received after the bar date where the claimant's neglect is excusable. The United States Supreme Court has held that a determination of whether to allow a late claim under Rule 9006(b)(1) "is an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, LP 507 U.S. 380, 395 (1993). The Supreme Court set forth the following factors which should be considered in determining whether a claimant's late proof of claim should be allowed:

(1) The danger of prejudice to the debtor;

(2) The length of delay and the potential impact on judicial proceedings;

(3) The reason for the delay, including whether it was in the reasonable control of the movant; and

(4) Whether the movant has acted in good faith.

In the case at bar, an application of the Pioneer factors compels the conclusion that Mr. Iragorri's proof of claim form should be allowed.

3

### A. There is no Danger of Prejudice to the Debtor and the Delay will not Negatively Impact the Judicial Proceedings

There is a complete absence of prejudice here to the Debtors in allowing Mr. Iragorri's Proof of Claim. It is clear that the claims resolution process is far from completed, so it is difficult to see how a short delay in the receipt of Mr. Iragorri's proof would prejudice the Debtor or their creditors. For instance, undersigned counsel has confirmed that the so-called "Omnibus Objections to Claims" process, whereby groups of 500 claims at a time are categorically attacked, is at 50-plus as of this date. Moreover, because no confirmable plan has been finalized, the inclusion of Mr. Iragorri's proof of claim would in no way jeopardize the Debtors' attempt to reorganize. *See, e.g., In re Sacred Heart Hosp of Norristown*, 186 B.R. 891, 897 (Bankr. E.D. Pa. 1995) (finding that because request to file late claim was made prior to confirmation of debtor's liquidating plan, the danger of prejudice to the debtor and a negative impact upon the bankruptcy proceedings was "practically nil"). For similar reasons, the insignificant delay has not had, and will not have, any effect on the administration of the Debtors' cases. *See, e.g., In re Hillsborough Holding Corp.*, 172 B.R. 108, 111 (Bankr. M.D. Fla. 1994) (holding that "with confirmation months away, and the prospect of litigating claims continuing beyond confirmation, granting an extension will not diminish this Court's ability to efficiently administer this Chapter 11").

### B. The Reason for Mr. Iragorri's Delay Was Reasonable

Mr. Iragorri's filing of his Proof of Claim forty-five days after the September 22nd bar date was reasonable because the Notice of Deadlines for Filing Proof of Claims ["Notice"] simply did not provide proper instruction as to how to file a claim for securities associated with deferred income, or whether any filing was even required for claims based on deferred income made up of securities. The Notice provides that claimants should file all "general claims against Debtors" by September 22, 2009, the "General Bar Date," and must file all claims based on securities by November 2, 2009, the "Program Securities Bar Date." The Notice does not provide any information about whether a claim involving securities associated with deferred income ought to be classified as general claims or claims based on securities. *In fact, the Notice makes no mention of securities associated with deferred income whatsoever.* To make things more

4

muddled, the Notice, on page 2, provides a list of claims for which no filing at all is all required, entitled "Who Need Not File a proof of Claim." This section provides, in relevant part:

> You need not file a proof of claim if:
>
> (3) You hold an interest in the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security interest....[See Exhibit A, p. 2].

Undoubtedly, this provision is ambiguous as to whether this includes securities associated with deferred income. The securities that Mr. Irragorri received as deferred income were in the form of stock options. Is a stock associated with deferred income an "interest in the Debtors, which interest is based upon the ownership of common or preferred stock"? Since the Notice does not specifically address how to classify securities associated with deferred income, a reasonable person, could interpret this exemption from filing to include securities associated with deferred income. The Notice simply does not provide clear instruction on how to file a claim [or whether a claim is required] for securities associated with wages. Accordingly, Mr. Iragorri's uncertainty and confusion are understandable and his delayed filing is reasonable.

Counsel for Mr. Iragorri is well aware of the May 20th decision by this Court denying seven claimants' late proofs of claim. The Court found that excusable neglect was not present in the late claims submitted by Pacific Life, Seaport, BEKB, PSERS, Dynegy, Tensor, and Santa Fe ["Seven Claimants"]. These claimants argued that excusable neglect was present based on a miscommunication between their employees or an oversight by their counsel. The court properly found that a miscommunication or an error by the claimant's counsel did not constitute excusable neglect.

Mr. Iragorri's claim is clearly distinguishable from the Seven Claimants. While the Seven Claimants' late filings were based on internal miscommunications or errors on the part of their attorneys, Mr. Irragorri's late claim was caused by confusion as a result of the deficient Notice that failed to adequately instruct him how to file a claim for securities associated with deferred income. No notice or document he received from the Court or from Debtor's counsel addressed how to file such a claim and a non-lawyer unsophisticated in bankruptcy could reasonably interpret the exemptions on page two of the

5

Notice to include securities associated with deferred income, since the securities paid to Mr. Irragori as part of his deferred compensation were in the form of stock options. Indeed, in *Pioneer*, the Supreme Court, in finding excusable neglect and granting a late proof of claim, placed great emphasis on the fact that the notice given to respondents "contained a 'dramatic ambiguity,' which could well have confused 'even persons experienced in bankruptcy.'" *Pioneer* at 386-387.

Moreover, on December 22, 2009, this Court issued an order in the Lehman Brothers Bankruptcy Proceeding permitting two late proof of claims, finding that excusable neglect was present. In this court's May 20th decision denying the Seven Claimants' late claims, this court distinguished those two claims from the Seven Claimants, reasoning:

> **"In both instances where the Court found excusable neglect the claimants consciously endeavored to comply with the Bar Date Order but were justifiably confused as to the application of the General Bar Date or the Program Securities Bar Date due to the circumstances surrounding the Lehman Program Securities List."** *In re Lehman Brothers Holdings, Inc., et al.* **433 B.R. 113 * 127 (2010).**

The same exact "excusable neglect" that this Court found in granting these two late claims is present in Mr. Iragorri's claim and accordingly, this Court should permit Mr. Irragorri's to file his claim which is based on wages he earned. Mr. Iragorri timely filed the three proof of claims for the warrants he purchased by the applicable bar date. However, it is not clear he even had to file those. He did not timely file his claim regarding the securities associated with his wages because he was confused as to the application of the General Bar Date or the Program Securities Bar Date, or whether he was simply exempt from filing based on the nature of his claim. This confusion is based on the Notice and all other documentation that he received that failed to provide any instruction whatsoever on how to file a claim based on securities associated with wages. This Court has already ruled that excusable neglect is present where the claimant is justifiably confused as to the applicability of the bar dates. Since this is the exact basis for Mr. Irragorri's late filing, this Court must also allow this claim to move forward.

6

*In re Zilog, Inc.*, is also instructive.[1] In this case, several employees filed late proofs of claim for bonuses that they were due from Zilog, Inc. *In re Zilog, Inc., et al*, 450 F.3d 996 (2006). They argued in the District Bankruptcy Court that an email from Zilog and an unclear notice from the bankruptcy court caused confusion as to the filing of their proofs of claim in regards to their bonuses owed to them by Zilog. *Id.* The District Court found that this was insufficient to constitute excusable neglect and the employees appealed. *Id.* On appeal, the Ninth Circuit closely analyzed the notice from the bankruptcy court regarding the filing of proofs of claim. The notice provided by the bankruptcy court read as follows:

> "The Bankruptcy Court has set April 19, 2002, as the deadline for filing proofs of claim (the "Bar Date")…If you have a prebankruptcy claim against either Debtor that is not based on the delivery of goods or services to the Debtors in the ordinary course of business, you must file a proof of claim…so that it is received no later than the Bar Date. If you fail to do so, your claim will be discharged." *Id.*, at 1005.

The court reasoned that this notice "muddied the waters," and did not properly instruct the employees as to whether the employees were required to file a proof of claim form for their bonuses. *Id.*, at 1005-1006. The court reasoned:

> "…Assuming, however, that employees did read the notice, they would have learned that no proof of claim had to be filed for any 'pre-bankruptcy claim…based on the delivery of …services to the Debtors in the ordinary course of business.' The phrase 'in the ordinary course of business' is most readily understood as modifying 'delivery of…services to the Debtors,' which immediately precedes it. The women's one-time retention bonuses were based on their performing services for ZILOG, and the services were rendered in the ordinary course of ZILOG's business. ZILOG does not claim that the women were required to perform extraordinary services to earn the bonuses; as best the record reveals, the bonuses were to be paid if the women kept their jobs through the end of the year. Given that the services they rendered to earn the bonuses were exactly the same ones they had been rendering to ZILOG all along, we can easily see how the women, even had they read the notice from the bankruptcy court closely, would have believed there was no need to file proofs of claim to preserve their right to recover the promised bonuses." *Id.*

The court, in finding that excusable neglect was present, went on to state:

> "In *Pioneer* and *Pincay*, sophisticated attorneys were let off the hook after missing filing deadlines. In fact, the Supreme Court in *Pioneer* went as far as to hold that it was an abuse of discretion *not* to find excusable neglect where a versed bankruptcy practitioner missed the bankruptcy court's notice and failed to file a timely proof of claim. By contrast, Corning, Robert and Cleverdon [the employee claimants] were unrepresented by counsel, and the notices sent out by debtors' counsel and the bankruptcy court were, at the very least, ambiguous, and more likely

---

[1] *In re Zilog, Inc., et al*, 450 F.3d 996 (2006) is attached as Exhibit C.

7

affirmatively misleading. It would be very strange indeed to find the neglect in our case inexcusable, when the neglect in *Pioneer* and *Pincay* was found excusable. *Id.*, at 1006.

As in *Zilog*, the Court's Notice in the instant matter could easily lead a reasonable person unsophisticated in bankruptcy, who read the notice closely, to believe that it was not necessary to file a proof of claim for securities associated with earned income. Like the claimants in *Zilog*, Mr. Irragorri was also not represented by counsel.

Lastly, Mr. Iragorri's claim is quite distinguishable from the Seven Claimants because Mr. Iragorri is an individual who was the Debtor's previous loyal employee of eight years – the Seven Claimants are large corporations. Mr. Iragorri is looking to recoup income already earned over the term of his employment and promised to him by Debtor as part of his compensation structure. The Seven Claimants were seeking to recoup investments. Clearly, Mr. Iragorri stands in a different position than the Seven Claimants. This Court should not deprive this long-time Lehman employee of his claim for substantial deferred compensation earned for part of eight years of service to the Debtor.

### C. Mr. Iragorri Acted in Good Faith

Mr. Iragorri clearly acted in good faith. This is a case where Mr. Iragorri's late filing was due to confusion and uncertainty resulting from a Notice that did not adequately provide instruction on how to file a claim concerning securities associated with deferred income, or whether any filing was even required for such claims. When he learned that former Lehman colleagues had filed proofs of claim, he immediately completed the proof of claim and hand delivered it to Epiq Bankruptcy Solutions.

### III. CONCLUSION

For the reasons above, Julian Iragorri opposes the disallowance and expungement of his proof of claim and request this court find his filing to be allowed due to excusable neglect.

CRUMBIE LAW GROUP

By _____
John Rose, Jr.
By _____
Hedi Hamilton  HH 4204
280 Trumbull Street, 21st Floor
Hartford, CT 06103
(860) 725-0025
(860) 760-0308
*Attorneys for Claimant Julian Iragorri*

# AFFIDAVIT OF SERVICE

John Rose, Jr., affirms under penalty of Perjury that:

1. I am over the age of twenty-one years, not a party to this action, and a member of the Crumbie Law Group, LLC law firm, counsel for Claimant Julian Iragorri.

2. On this 18th day of October, I caused a copy of the foregoing Response to Debtor's Fortieth Omnibus Objection to Claims (Late-Filed Claims) to be served on:

## BY HAND

United States Bankruptcy Court for the Southern District of New York
One Bowling Green
New York, New York 10004

The Chambers of the Honorable James M. Peck
Courtroom 601
One Bowling Green
New York, New York 10004

Andy Velez-Rivera, Esq.
Paul Schwartzberg, Esq.
Brian Masumoto, Esq.
Linda Riffkin, Esq.
Tracy Hope Davis, Esq.
The Office of the United States Trustee for the Southern District of New York
33 Whitehall Street, 21st Floor
New York, New York 10004

## BY ELECTRONIC DELIVERY

Shai Waisman, Esq.
Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York, 10153

Dennis F. Dunne, Esq.
Dennis O'Donnell, Esq.
Evan Fleck, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhatten Plaza
New York, New York 10005

*[signature]*
John Rose, Jr.

Sworn to me this 18th day of October, 2010

*[signature]*
Heidi Hamilton, Esq.
Commissioner of the Superior Court