UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                                   :
In re                                              :   Chapter 11 Case No.
                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,           :   08-13555 (JMP)
                                                   :
                    Debtors.                       :   (Jointly Administered)
                                                   :
                                                   :
---------------------------------------------------------------x

<u>NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM</u>

TO ALL PERSONS AND ENTITIES WITH
CLAIMS AGAINST THE DEBTOR LISTED BELOW:

PLEASE TAKE NOTICE THAT, on July 2, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Lehman Brothers Holdings Inc. and certain of its affiliates, as debtors and debtors in possession in the above referenced chapter 11 cases (collectively, the "Debtors"), entered an order (the "Bar Date Order") establishing **September 22, 2009, at 5:00 p.m. (prevailing Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("Proof of Claim") based on prepetition claims against the Debtors (the "Bar Date"). The Bar Date Order, the Bar Date and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to the applicable Commencement Date (the "Commencement Date"), the date on which the Debtors commenced their case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), as set forth in Schedule A hereto.

**If you have any questions with respect to this Notice, please feel free to contact the Debtors' court-approved claims agent Epiq Bankruptcy Solutions, LLC ("Epiq") at (866)-879-0688.**

**A CLAIMANT SHOULD CONSULT AN ATTORNEY IF THE CLAIMANT HAS ANY QUESTIONS, INCLUDING WHETHER SUCH CLAIMANT SHOULD FILE A PROOF OF CLAIM. PLEASE NOTE THAT EPIQ IS NOT PERMITTED TO GIVE LEGAL ADVICE.**

**Some parties are required to file a Proof of Claim in order to preserve their claim against the Debtors. Other parties are not required to file a Proof of Claim in order to preserve their claim against the Debtors. The following is a summary explanation of each.**

1.      WHO MUST FILE A PROOF OF CLAIM

You MUST file a **Proof of Claim** to share in the Debtors' estates if you have a claim that arose prior to the applicable Commencement Date, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before the applicable Commencement Date, may give rise to claims against the Debtors that must be filed by the Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated prior to the applicable Commencement Date. Pursuant to section 101(5) of the Bankruptcy Code and as used herein, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

2.    **WHO NEED <u>NOT</u> FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(1)    Your claim is listed on the Schedules and (i) is <u>not</u> described as "disputed," "contingent," or "unliquidated," and (ii) you do <u>not</u> dispute the amount, priority or nature of the claim set forth in the Schedules;

(2)    Your claim has been paid in full by the Debtors;

(3)    You hold an interest in the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies;

(4)    You hold a claim that has been allowed by an order of this Court entered on or before the Bar Date;

(5)    You hold a claim for which a separate deadline is fixed by this Court;

(6)    You hold a claim for which you have already properly filed a Proof of Claim with the Clerk of the Court or Debtors' court-approved claims agent, Epiq, against the Debtors utilizing a claim form which substantially conforms to the Proof of Claim Form; **provided, however**, any holder that has filed a Proof of Claim based on a Derivative Contract (as defined below) or a Guarantee (as defined below) on or prior to the Bar Date, is required to amend such Proof of Claim to conform to the procedures set forth in this Motion for the filing of Proofs of Claims based on Derivative Contracts and Guarantee;

(7)    You hold a claim solely against (i) Lehman Brothers Inc. or (ii) any other entity affiliated with the Debtors that is involved in a bankruptcy or insolvency proceeding or similar proceeding, in foreign jurisdiction; **provided, however**, if such claim is based on an obligation guaranteed by a Debtor, the holder of such claim must file a Proof of Claim on or before the Bar Date;

(8)    You hold a security listed on the Master List of Securities available on the Debtors' website http://www.lehman-docket.com (the "<u>Master List of Securities</u>") due to the fact that the indenture trustee for such securities will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities); **provided, however**, that security holders who wish to assert claims against the Debtors arising out of or relating to the sale, issuance, or distribution of a security, must file Proofs of Claim on or before the Bar Date, unless another exception identified herein applies; and

(9)    You are an entity included on the Exempt Entities List available on the Debtors' website http://www.lehman-docket.com (the "<u>Exempt Entities List</u>") and any subsidiary for which the entity on the Exempt Entities List owns at least a fifty percent equity interest in such subsidiary, <u>specifically excluding</u> any subsidiary that is in a bankruptcy, insolvency or similar proceeding in a foreign jurisdiction and Lehman Brothers Inc.

If your claim falls within any of the above categories, your rights as the holder of such claim will be preserved without you filing of a Proof of Claim. Any other person or entity (including, without limitation, each individual, partnership, joint venture, corporation, estate, trust or governmental entity) that has a claim against a Debtor must file a Proof of Claim, as described herein, before the Bar Date.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE THAT YOU HAVE A CLAIM.  MANY PARTIES ARE REQUIRED TO BE SERVED WITH THIS NOTICE AND IT IS REQUIRED TO REACH A BROAD AUDIENCE OF POTENTIAL CLAIMANTS.**

---

**SPECIAL NOTE TO HOLDERS OF LEHMAN SECURITIES**

Holders of securities are **NOT** required to file a proof of claim on account of their ownership if, and only if, such security is listed on the Debtors' Master List of Securities because such security was issued under an indenture pursuant to which an indenture trustee will file a global proof of claim on behalf of all holders of securities issued thereunder; (Wilmington Trust Company, US Bank National Association, and the indenture trustee for each of the other securities included on the Master List of Securities, each will each file a global proof(s) of claim on behalf of all holders of securities for which it is identified as Indenture Trustee on the Master List of Securities). The Master List of Securities is available for review at http://www.lehman-docket.com. The list is fully searchable by code (CUSIP or ISIN) or by security description.

If you do not see your security listed on the Master List of Securities and you have a question about the Master List of Securities, please download the form entitled "Inquiry Regarding Security Not on Master List of Securities," and complete and return it as directed on the form prior to August 5, 2009.

Inquiries will be investigated, and within 15 days of the Debtors receipt of such inquiry, either the security will either be added to the Master List of Securities (if appropriate) or, if you have provided contact information, you will be notified that the security is not being added to the Master List of Securities and given further information.

The Master List of Securities shall be finalized on August 20, 2009 and not subject to further change.

A Proof of Claim form is being included with the Bar Date Notices being served on holders of LBHI securities other than to holders of securities that are on the Master List of Securities.

**IF YOU BELIEVE YOU HAVE A CLAIM AGAINST LBHI OTHER THAN ON ACCOUNT OF YOUR LEHMAN SECURITIES OWNERSHIP, YOU MUST FILE A PROOF OF CLAIM FORM, AS DIRECTED IN THIS BAR DATE NOTICE. A COPY OF THE PROOF OF CLAIM FORM IS AVAILABLE AT HTTP://WWW.LEHMAN-DOCKET.COM.**

---

3.     **EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

        Any person or entity that holds a claim arising from the rejection of an executory contract or unexpired lease must file a Proof of Claim based on such rejection by the later of (i) the Bar Date, and (ii) the date which is forty-five (45) days following the effective date of such rejection or be forever barred from doing so.

4.     **WHEN AND WHERE TO FILE**

        All Proofs of Claim must be filed so as to be **actually received** on or before the Bar Date at the following address:

If by overnight mail, to:

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

If by first-class mail, to:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5286
New York, New York  10150-5076

If by hand delivery, to:

Epiq Bankruptcy Solutions, LLC
Attn: Lehman Brothers Holdings Claims Processing
757 Third Avenue, 3rd Floor
New York, New York 10017

        or

Clerk of the United States Bankruptcy Court
Attn: Lehman Brothers Holdings Claims Processing
One Bowling Green
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by Epiq or the Court on or before the Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

In the event the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated or undetermined, (b) change the amount of a claim reflected therein, or (c) add a claim that was not listed on the Schedules or remove a claim that was listed on the Schedules, then, and in such event, the Debtors will notify the affected claimant be notified of such amendment and be granted thirty (30) days from the date of such notification within which to file a claim or be forever barred from doing so.

5.    **WHAT TO FILE**

        If you file a Proof of Claim, your filed Proof of Claim must: (i) be written the English language; (ii) be denominated in the lawful currency of the United States; (iii) conform substantially with the form attached to this notice (the "Proof of Claim Form"); (iv) state the name and case number of the specific Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why documentation is not available; and (vii) be signed by the claimant or by an authorized agent of the claimant.

If you are asserting a claim against more than one Debtor or have claims against different Debtors, a separate Proof of Claim must be filed with respect to each such Debtor.

**EXCEPT AS SET FORTH IN THE FOLLOWING THREE PARAGRAPHS, YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, ATTACH A SUMMARY.**

**CLAIMS BASED ON DERIVATIVE CONTRACTS**

**IF YOU FILE A PROOF OF CLAIM BASED ON AMOUNTS OWED PURSUANT TO A DERIVATIVE CONTRACT, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING THE APPROPRIATE BOX ON THE PROOF OF CLAIM AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC DERIVATIVE QUESTIONNAIRE SUBSTANTIALLY IN THE FORM ATTACHED AS EXHIBIT C TO THE BAR DATE ORDER (THE "DERIVATIVE QUESTIONNAIRE") AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE DERIVATIVE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.**

**A "DERIVATIVE CONTRACT" IS A CONTRACT THAT IS ANY OF (I) A "SWAP AGREEMENT" AS SUCH TERM IS DEFINED IN SECTION 101(53B) OF THE BANKRUPTCY CODE OR (II) A "FORWARD CONTRACT" AS SUCH TERM IS DEFINED IN SECTION 101(25) OF THE BANKRUPTCY CODE. A CASH-MARKET PURCHASE OR SALE OF A SECURITY OR LOAN (I.E. ANY PURCHASE OR SALE OF A SECURITY OR LOAN FOR SETTLEMENT WITHIN THE STANDARD SETTLEMENT CYCLE FOR THE RELEVANT MARKET), EXCHANGE-TRADED FUTURE OR OPTION, SECURITIES LOAN TRANSACTION, REPURCHASE AGREEMENT IN RESPECT OF SECURITIES OR LOANS, AND ANY GUARANTEE OR REIMBURSEMENT OBLIGATIONS WHICH WOULD OTHERWISE BE INCLUDED IN THE DEFINITION OF "SWAP AGREEMENT"**

OR "FORWARD CONTRACT" PURSUANT TO THE DEFINITION OF SUCH TERMS IN THE BANKRUPTCY CODE SHALL NOT BE CONSIDERED A DERIVATIVE CONTRACT FOR THE PURPOSES OF THIS DEFINITION NOR SHALL ANY NOTES, BONDS, OR OTHER SECURITIES ISSUED BY THE DEBTORS OR THEIR AFFILIATES (INCLUDING, BUT NOT LIMITED TO, LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS TREASURY CO. B.V., LEHMAN BROTHERS BANKHAUS AG, LEHMAN BROTHERS HOLDINGS PLC, LEHMAN BROTHERS SECURITIES N.V., AND LEHMAN BROTHERS (LUXEMBOURG) EQUITY FINANCE S.A.).

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

CLAIMS BASED ON A DEBTOR'S GUARANTEE

IF YOU FILE A PROOF OF CLAIM BASED ON A GUARANTEE, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING THE APPROPRIATE BOX ON THE PROOF OF CLAIM AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC GUARANTEE QUESTIONNAIRE SUBSTANTIALLY IN THE FORM ATTACHED AS EXHIBIT D TO THE BAR DATE ORDER (THE "GUARANTEE QUESTIONNAIRE") AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION AND EVIDENCE OF THE UNDERLYING CLAIM AMOUNT ON THE WEBSITE (AS REQUIRED IN THE GUARANTEE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.

A "GUARANTEE" IS A PROMISE, REPRESENTATION OR AGREEMENT TO ANSWER FOR THE PAYMENT OF SOME DEBT OR THE PERFORMANCE OF SOME DUTY IN CASE OF THE FAILURE OF ANOTHER PERSON OR ENTITY WHO IS LIABLE IN THE FIRST INSTANCE.

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

CLAIMS BASED ON A DEBTOR'S GUARANTEE OF A DERIVATIVE CONTRACT WITH A NON-DEBTOR

IF YOU FILE A PROOF OF CLAIM BASED ON A DEBTOR'S GUARANTEE OF A DERIVATIVE CONTRACT ENTERED INTO WITH A NON-DEBTOR, YOU MUST: (A) ON OR BEFORE THE BAR DATE, FILL-OUT AND RETURN A PROOF OF CLAIM FORM IN THE SAME MANNER AS ALL OTHER CLAIMANTS INCLUDING CHECKING BOTH BOXES ON THE PROOF OF CLAIM THAT SUCH CLAIM IS BASED ON BOTH A DERIVATIVE CONTRACT AND BASED ON A GUARANTEE AND (B) ON OR BEFORE THE QUESTIONNAIRE DEADLINE, LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC GUARANTEE QUESTIONNAIRE AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE GUARANTEE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM AND LOG ON TO http://www.lehman-claims.com, ENTER THE UNIQUE IDENTIFICATION NUMBER INCLUDED ON THE PROOF OF CLAIM FORM MAILED TO SUCH HOLDER BY THE DEBTORS AND COMPLETE THE ELECTRONIC DERIVATIVE QUESTIONNAIRE AND ELECTRONICALLY UPLOAD SUPPORTING DOCUMENTATION ON THE WEBSITE (AS REQUIRED IN THE DERIVATIVE QUESTIONNAIRE), RATHER THAN ATTACHING SUCH DOCUMENTS TO THE PROOF OF CLAIM FORM.

THE "QUESTIONNAIRE DEADLINE" IS OCTOBER 22, 2009, AT 5:00 PM (PREVAILING EASTERN TIME).

If a holder is required to complete the Derivative Questionnaire or Guarantee Questionnaire, such holder need only submit the documentation required by the applicable Questionnaire by the Questionnaire Deadline and need not submit the documentation required by the applicable Questionnaire with such holder's Proof of Claim by the Bar Date.

If any holder files a Proof of Claim based on a Derivative Contract or a Guarantee which for any reason does not have a Unique ID Number, such holder shall be required to comply with the procedures set forth in the prior two paragraphs, except that instead of entering a Unique ID Number on the website, such holder shall instead indicate on the website that they filed a Proof of Claim that did not have a Unique ID Number.

A holder (or any other party authorized under the Bankruptcy Code and the Bankruptcy Rules to submit a Proof of Claim on behalf of such holder) of a security that is guaranteed by a Debtor shall be required to file a Proof of Claim against such Debtor based on the Guarantee and complete the Guarantee Questionnaire.

Any security that is listed on the Master List of Securities is not a Derivative Contract and the holders of such security are not required to complete the Derivative Questionnaire on account of such security.

The information submitted on the website http://www.lehman-claims.com in respect of Derivative Contracts and Guarantees will not be accessible on the website other than by the party that submitted such information and the Debtors and the Creditors' Committee and their respective advisors and counsel.

The website http://www.lehman-claims.com and the information submitted thereon will remain accessible by the party that submitted such information following the Bar Date and the information submitted on the website will be subject to the same rules and standards as amendments and supplements to proofs of claim.

6.  **CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE BAR DATE OR COMPLETE THE DERIVATIVE QUESTIONNAIRE PRIOR TO THE QUESTIONNAIRE DEADLINE**

   **Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim in accordance with the Bar Date Order on or before the Bar Date, specifically, including filling out the Derivative Questionnaire (if applicable) or the Guarantee Questionnaire (if applicable) and uploading required information to the website http://www.lehman-claims.com (which Derivative Questionnaire or Guarantee Questionnaire shall not be required to be completed until the Questionnaire Deadline), specifying the applicable Debtor and other requirements set forth in the Bar Date Order, for any claim such creditor holds or wishes to assert against the Debtors, will be forever barred, estopped, and enjoined from asserting such claim (and from filing a Proof of Claim with respect to such claim) against the Debtors and their estates, and their property will be forever discharged from any and all indebtedness or liability with respect to such claim, and the holder of such claim shall not be permitted to vote on any chapter 11 plan or participate in any distribution in the Debtors' chapter 11 cases on account of such claim or to receive further notices regarding such claim or with respect to the Debtors' chapter 11 cases.**

7.  **THE DEBTORS' SCHEDULES AND ACCESS THERETO**

   You may be listed as the holder of a claim against the Debtors in the Schedules. Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at http://www.lehman-docket.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov.). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (prevailing Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004.

DATED:    June __, 2009                                    BY ORDER OF THE COURT
          New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
(212) 310-8000
Lori R. Fife
Shai Y. Waisman

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re                                        :       Chapter 11 Case No.
                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,       :       08-13555 (JMP)
                                             :
                        Debtors.             :       (Jointly Administered)
                                             :
---------------------------------------------------------------x
LBH OMNI40 09-13-2010 (MERGE2,TXNUM2) 4000111804 MAIL ID *** 0033298077 *** BSIUSE 252

IRAGORRI, JULIAN
66 NINTH AVENUE, APT 5E
NEW YORK, NY 10011

### THIS IS A NOTICE REGARDING YOUR CLAIM(S). YOU MUST READ IT AND TAKE ACTION IF YOU DISAGREE WITH THE OBJECTION.

### IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR THE OBJECTION, PLEASE CONTACT DEBTORS' COUNSEL, JOHN O'CONNOR, ESQ., AT 214-746-7700.

### NOTICE OF HEARING ON DEBTORS' FORTIETH OMNIBUS OBJECTION TO CLAIMS (LATE-FILED CLAIMS)

| CLAIM TO BE DISALLOWED & EXPUNGED | |
|---|---|
| **Creditor Name and Address:**<br>IRAGORRI, JULIAN<br>66 NINTH AVENUE, APT 5E<br>NEW YORK, NY 10011 | **Claim Number:** 64991<br>**Date Filed:** 11/6/2009<br>**Debtor:** 08-13555<br>**Classification and Amount:** PRIORITY: $ 2,841,142.00 |

PLEASE TAKE NOTICE that, on September 13, 2010, Lehman Brothers Holdings Inc. and certain of its affiliates (collectively, the "Debtors") filed their Fortieth Omnibus Objection to Claims (Late-Filed Claims) (the "Objection") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[1]

The Objection requests that the Bankruptcy Court expunge, reduce, reclassify, and/or disallow your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED on the ground that said claim(s) violate the Bankruptcy Court's July 2, 2009 order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271], as they were filed after the September 22, 2009 bar date. Any claim that the Bankruptcy Court expunges and disallows will be treated as if it had not been filed and you will not be entitled to any distribution on account thereof.

If you do NOT oppose the disallowance, expungement, reduction or reclassification of your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then you do NOT need to file a written response to the Objection and you do NOT need to appear at the hearing.

If you DO oppose the disallowance, expungement, reduction or reclassification of your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then you MUST file with the Court and serve on the parties listed below a

---

[1]    A list of the Debtors, along with the last four digits of each Debtor's federal tax identification number, is available on the Debtors' website at http://www.lehman-docket.com.

written response to the Objection that is received on or before 4:00 p.m. Prevailing Eastern Time on October 18, 2010 (the "Response Deadline").

Your response, if any, must contain at a minimum the following: (i) a caption setting forth the name of the Bankruptcy Court, the names of the Debtors, the case number and the title of the Objection to which the response is directed; (ii) the name of the claimant and description of the basis for the amount of the claim; (iii) a concise statement setting forth the reasons why the claim should not be disallowed, expunged, reduced, or reclassified for the reasons set forth in the Objection, including, but not limited to, the specific factual and legal bases upon which you will rely in opposing the Objection; (iv) all documentation or other evidence of the claim, to the extent not included with the proof of claim previously filed with the Bankruptcy Court or provided to the Debtors in response to the Derivative Questionnaire and/or Guarantee Questionnaire (as defined in the order, dated July 2, 2009, establishing the deadline for filing proofs of claim, approving the form and manner of notice thereof and approving the proof of claim form [Docket No. 4271]), upon which you will rely in opposing the Objection; (v) the address(es) to which the Debtors must return any reply to your response, if different from that presented in the proof of claim; and (vi) the name, address, and telephone number of the person (which may be you or your legal representative) possessing ultimate authority to reconcile, settle, or otherwise resolve the claim on your behalf.

The Bankruptcy Court will consider a response only if the response is timely filed, served, and received. A response will be deemed timely filed, served, and received only if the original response is actually received on or before the Response Deadline by (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Shai Waisman, Esq.); (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.); and (iv) attorneys for the official committee of unsecured creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.)

A hearing will be held on October 27, 2010 to consider the Objection. The hearing will be held at 10:00 a.m. Prevailing Eastern Time in the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, Courtroom 601. If you file a written response to the Objection, you should plan to appear at the hearing. The Debtors, however, reserve the right to continue the hearing on the Objection with respect to your claim(s). If the Debtors do continue the hearing with respect to your claim(s), then the hearing will be held at a later date. If the Debtors do not continue the hearing with respect to your claim(s), then a hearing on the Objection will be conducted on the above date.

If the Bankruptcy Court does NOT disallow, expunge, reduce or reclassify your claim(s) listed above under CLAIM(S) TO BE DISALLOWED & EXPUNGED, then the Debtors have the right to object on other grounds to the claim(s) (or to any other claims you may have filed) at a later date. You will receive a separate notice of any such objections.

You may participate in a hearing telephonically provided that you comply with the Court's instructions (including, without limitation, providing prior written notice to counsel for the Debtors and any statutory committees), which can be found on the Court's website at www.nysb.uscourts.gov.

If you wish to view the complete Objection, you can do so on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the internet at www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov), or for free at http://www.lehman-docket.com. If you would like to request a complete copy of the Objection at the Debtors' expense, please contact the Debtors' approved claims agent Epiq Bankruptcy Solutions, LLC toll-free at 1-866-879-0688.

If you have any questions about this notice or the Objection, please contact Debtors' counsel, John O'Connor, Esq., at 214-746-7700. CLAIMANTS SHOULD NOT CONTACT THE CLERK OF THE BANKRUPTCY COURT TO DISCUSS THE MERITS OF THEIR CLAIMS.

DATED:   September 13, 2010
        New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Shai Y. Waisman
ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al. | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000064991

THIS SPACE IS FOR COURT USE ONLY

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Julian Iragorri
66 Ninth Avenue - 5E
New York, NY 10011

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Telephone number: 917 763 0359     Email Address: julianiragorri@gmail.com

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:          Email Address:

---

1. Amount of Claim as of Date Case Filed: $ 2'841,142

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.* Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. Basis for Claim: Wages, salaries and compensation
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: Employee ID - 4196
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950, earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$ 2'841,142

---

FOR COURT USE ONLY

FILED / RECEIVED

NOV 06 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 9/21/09 | |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

---

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

# ALL TERMS REMAIN SUBJECT TO THE RULING OF THE U.S. BANKRUPTCY COURT***

## LEHMAN BROTHERS
### Executive Compensation Summary
#### Julian Iragorri

Employee ID:    10204196

### AWARD UNITS*

| Grant Date | Plan Description | Units Granted | Dividend Equivalents | Units Vested** | Units Unvested | Units Outstanding | Units Forfeited | Units Not Forfeited |
|---|---|---|---|---|---|---|---|---|
| December 10, 2003 | 2003 SVP Principal | 5,673.88 | 302.79 | 5,976.67 | 0.00 | 5,976.67 | 0.00 | 5,976.67 |
| December 10, 2003 | 2003 SVP Discount | 1,891.30 | 101.00 | 0.00 | 1,992.30 | 1,992.30 | 0.00 | 1,992.30 |
| December 09, 2004 | 2004 MD Principal | 5,035.34 | 226.18 | 2,630.76 | 2,630.76 | 5,261.52 | 0.00 | 5,261.52 |
| December 09, 2004 | 2004 MD Discount | 2,158.00 | 97.00 | 0.00 | 2,255.00 | 2,255.00 | 0.00 | 2,255.00 |
| November 30, 2005 | 2005 MD Principal | 6,317.46 | 231.90 | 0.00 | 6,549.36 | 6,549.36 | 0.00 | 6,549.36 |
| November 30, 2005 | 2005 MD Discount | 2,707.48 | 99.45 | 0.00 | 2,806.93 | 2,806.93 | 0.00 | 2,806.93 |
| December 08, 2006 | 2006 MD Principal | 4,829.38 | 142.90 | 0.00 | 4,972.28 | 4,972.28 | 0.00 | 4,972.28 |
| December 08, 2006 | 2006 MD Discount | 2,069.73 | 61.25 | 0.00 | 2,130.98 | 2,130.98 | 0.00 | 2,130.98 |
| December 07, 2007 | 2007 MD Principal | 1,122.19 | 23.12 | 0.00 | 1,145.31 | 1,145.31 | 0.00 | 1,145.31 |
| December 07, 2007 | 2007 MD Discount | 480.94 | 9.90 | 0.00 | 490.84 | 490.84 | 0.00 | 490.84 |
| December 07, 2007 | 2007 IR MD Principal | 16.51 | 0.35 | 0.00 | 16.86 | 16.86 | 0.00 | 16.86 |
| December 07, 2007 | 2007 IR MD Discount | 7.07 | 0.15 | 0.00 | 7.22 | 7.22 | 0.00 | 7.22 |
| July 01, 2008 | July 2008 IR RSU | 87.78 | 1.11 | 0.00 | 88.89 | 88.89 | 0.00 | 88.89 |
|  |  |  |  |  |  | 33,694.16 | 0.00 | 33,694.16 |

### STOCK OPTIONS

| Grant Date | Description | Exercise Price | Options Granted | Options Outstanding | Options Exercisable | Current Expiration Date | Options Cancelled | Options Not Cancelled |
|---|---|---|---|---|---|---|---|---|
| December 10, 2003 | 2003 SVP Options | $35.6950 | 6,476 | 1,618 | 0 | November 29, 2013 | 0 | 1,618 |
| December 09, 2004 | 2004 MD Options | $42.9000 | 6,872 | 4,468 | 0 | November 29, 2014 | 0 | 4,468 |
|  |  |  |  | 6,086 | 0 |  | 0 | 6,086 |

*Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.

**Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

***AS A RESULT OF LEHMAN BROTHERS HOLDINGS INC.'S BANKRUPTCY FILING, THE TREATMENT OF ALL OUTSTANDING EQUITY AWARDS REMAIN SUBJECT TO SUCH PROCEEDING IN THE U.S. BANKRUPTCY COURT.

Data as of September 12, 2008

Prepared on November 06, 2009

H
A
N
D

D
E
L
I
V
E
R
Y

RECEIVED BY:

DATE

TIME

**LexisNexis®** *Total Research System*

Switch Client | Preferences | Sign Out | [?] Help

My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier | History | ⬆

FOCUS™ Terms [                    ] Search Within [Original Results (1 - 1)] [▼] [Go →] Advanced...

Service: Get by LEXSEE®
Citation: 450 F.3d 996

*450 F.3d 996, *; 2006 U.S. App. LEXIS 14690, **;*
*Bankr. L. Rep. (CCH) P80,626; 46 Bankr. Ct. Dec. 179*

⬆ View Available Briefs and Other Documents Related to this Case

In re: ZILOG, INC.; In re: ZILOG MOD III, INC., Debtors, ZILOG, INC., Plaintiff-Appellee, v. ROSE MARIE CORNING; SELENA ROBERT; MARGIE CLEVERDON, Defendants-Appellants. In re: ZILOG, INC.; In re: ZILOG MOD III, INC., Debtors, ZILOG, INC., Plaintiff-Appellee, v. ROSE MARIE CORNING; SELENA ROBERT; MARGIE CLEVERDON, Defendants-Appellants.

No. 04-15787, No. 04-15794

UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

450 F.3d 996; 2006 U.S. App. LEXIS 14690; Bankr. L. Rep. (CCH) P80,626; 46 Bankr. Ct. Dec. 179; 24 I.E.R. Cas. (BNA) 1121

December 7, 2005, Argued and Submitted, San Francisco, California
June 15, 2006, Filed

**PRIOR HISTORY:** [**1] Appeal from the United States District Court for the Northern District of California. D.C. Nos. CV-03-02704-JF, 02-51144-MM, D.C. Nos. CV-03-02705-JF, 02-5286. Jeremy Fogel, District Judge, Presiding.

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Defendants, female employees who failed to file timely proofs of claims of sex discrimination in a Chapter 11 bankruptcy case, sought review of a judgment from the United States District Court for the Northern District of California affirming the bankruptcy court's summary judgment in favor of plaintiff debtor, the employer, in plaintiff's adversary action seeking a declaration that the claims were barred by the bankruptcy confirmation order.

**OVERVIEW:** Defendants claimed sex discrimination in the payment of retention bonuses. Notwithstanding the 11 U.S.C.S. § 524 (a)(2) discharge injunction, defendants filed a state court action based on plaintiff's failure to pay promised bonuses. After plaintiff filed the adversary proceeding, the parties stipulated to a stay of the state action. The bankruptcy court denied defendants' request to enter the discrimination claims into the bankruptcy proceedings, finding no excusable neglect for the late filing, and it awarded plaintiff attorney fees after holding defendants in contempt under 11 U.S.C.S. § 105(a) for willfully violating the discharge injunction. The court held that the bankruptcy court abused its discretion in discharging the discrimination claims and in declining to excuse defendants' failure to file timely proofs. The record showed a substantial possibility that the claims were not within defendants' fair contemplation until after the confirmation order and that notices sent to defendants by plaintiff's counsel were affirmatively misleading. The bankruptcy court also erred in failing to hold an evidentiary hearing to determine whether defendants had knowledge of the injunction.

**OUTCOME:** The court reversed the bankruptcy court's grant of summary judgment to plaintiff on defendants' sex discrimination claims, the excusable neglect determination, and the award of sanctions. The court remanded to the bankruptcy court to determine when the discrimination claims came within defendants' fair contemplation and to determine whether defendants were aware of the discharge injunction and its applicability to their claims.

**CORE TERMS:** injunction, notice, proofs of claims, confirmation, contempt, bonuses, discrimination claims, email, summary judgment, retention, automatic stay, discharged, pre-petition, excusable neglect, contemplation, bankruptcy code, sex, administrative expense, deadline, reimbursements, reorganization, holders, male, owed, bankruptcy proceedings, willful, claims arising, commencement, disparate, general counsel

**LEXISNEXIS® HEADNOTES** ⊟ Hide

Bankruptcy Law > Claims > General Overview 🖾
Bankruptcy Law > Claims > Types > General Overview 🖾
*HN1* ⬆ The appellate court looks to federal law to determine when a claim arises under the bankruptcy code. In Jensen, the United States Court of Appeals for the Ninth Circuit held that an environmental claim arises under the bankruptcy code once it is within the claimant's "fair contemplation." Jensen has been applied to a range of non-environmental claims. Although the Ninth Circuit has not had occasion to consider whether Jensen's "fair contemplation" test extends to claims of discrimination, it sees no reason why these claims should not be analyzed under Jensen's framework. Therefore, claims of sex discrimination accrue under the bankruptcy code once they are within the claimant's "fair contemplation." *More Like This Headnote* | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Practice & Proceedings > Adversary Proceedings > Judgments & Remedies 🖾
Civil Procedure > Summary Judgment > Evidence 🖾
*HN2* ⬆ In a motion for summary judgment, the court is required to resolve disputed issues of fact in favor of the non-moving party. Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56. *More Like This Headnote* | *Shepardize: Restrict By Headnote*

Bankruptcy Law > Claims > General Overview 🖾

Bankruptcy Law > Claims > Proof > Effects & Procedures 🔍
HN3⬆The determination of whether neglect in the failure to file a timely proof of claim is "excusable" is an equitable one, taking account of all relevant circumstances surrounding the party's omission. Such circumstances include the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, and whether the movant acted in good faith. This list is not exhaustive. More Like This Headnote

Bankruptcy Law > Claims > Proof > Effects & Procedures 🔍
HN4⬆Fed. R. Bankr. P. 9006(b)(1) provides that when an act is required or allowed to be done at or within a specified period by the bankruptcy rules, the court for cause shown may at any time in its discretion, on motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect. More Like This Headnote | Shepardize: Restrict By Headnote

Bankruptcy Law > Case Administration > Administrative Powers > Stays > Remedies > Contempt 🔍
Bankruptcy Law > Discharge & Dischargeability > Effects of Discharge > Protection 🔍
Evidence > Procedural Considerations > Burdens of Proof > Allocation 🔍
Evidence > Procedural Considerations > Burdens of Proof > Clear & Convincing Proof 🔍
HN5⬆11 U.S.C.S. § 524 provides that discharge operates as an injunction against the commencement or continuation of an action to collect, recover or offset any discharged debt as a personal liability of the debtor. 11 U.S.C.S. § 524(a)(2). A party who knowingly violates the discharge injunction can be held in contempt under 11 U.S.C.S. § 105(a). The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the sanctions are justified. The movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction. More Like This Headnote | Shepardize: Restrict By Headnote

Bankruptcy Law > Discharge & Dischargeability > Effects of Discharge > Protection 🔍
Bankruptcy Law > Practice & Proceedings > Contested Matters 🔍
Civil Procedure > Remedies > Injunctions > Contempt 🔍
Evidence > Inferences & Presumptions > Inferences 🔍
HN6⬆A trier of fact can infer knowledge of an automatic stay or discharge injunction from the fact that a creditor knew of the bankruptcy. Such an inference, however, would be a matter of fact, not a presumption implied in law. Knowledge of the injunction under 11 U.S.C.S. § 524, which is a prerequisite to its willful violation, cannot be imputed; it must be found. If the creditors dispute that they had such knowledge, a finding that they knew of the injunction, and thus willfully violated it, can only be made after an evidentiary hearing. More Like This Headnote | Shepardize: Restrict By Headnote

Bankruptcy Law > Discharge & Dischargeability > Effects of Discharge > Protection 🔍
Civil Procedure > Remedies > Injunctions > Contempt 🔍
HN7⬆Only actual knowledge of the discharge injunction under 11 U.S.C.S. § 524 suffices for a finding of contempt. More Like This Headnote | Shepardize: Restrict By Headnote

## ⯆Available Briefs and Other Documents Related to this Case:

U.S. Circuit Court Brief(s)

**COUNSEL:** Eric S. Rossman, Rossman Law Group, PLLC, Boise, Idaho, and Ruth Elin Auerbach, Glassberg, Pollak & Associates, San Francisco, California, for the defendants-appellants.

Richard Levin and Kurt Ramlo, Skadden, Arps, Slate, Meagher & Flom LLP, Los Angeles, California, for the debtors/plaintiff-appellee.

**JUDGES:** Before: Alex Kozinski and Barry G. Silverman, Circuit Judges, and Roger T. Benitez,* District Judge.

• The Honorable Roger T. Benitez, United States District Judge for the Southern District of California, sitting by designation.

**OPINION BY:** KOZINSKI

**OPINION**

[*997] KOZINSKI, Circuit Judge:

This case shows once again why it's important for lawyers representing a bankruptcy debtor to turn square corners.

**Facts**

In June 2001, ZiLOG, Inc. ▾ announced that it would close one of its Idaho plants, effective December 31, 2001. To retain employees through the plant closure, ZiLOG offered certain employees one-time retention bonuses. Rose Marie Corning, Selena Robert and Margie Cleverdon [**2] (collectively, "the women") were among the employees who accepted the offer.

In December 2001, ZiLOG notified the women that it had rescinded the retention bonus agreements because the women would not, after all, lose their jobs at the end of the year. In January 2002, Corning and Robert learned that three male engineers would receive retention bonuses. Corning and Robert claim, however, that [*998] not until "late April or early May, 2002," did they learn that those same three male employees had been paid bonuses even though they were not laid off. Cleverdon claims that she did not learn this until mid-June 2002.

Prior to this time, on February 28, 2002, ZiLOG and a related entity had filed for bankruptcy in the Northern District of California. ZiLOG employees received an email soon afterward from the company's general counsel explaining that they would receive proof of

claim forms from the bankruptcy court. The employees were instructed that "[y]ou need to fill out and return the Proof of Claim form only if you believe that, on February 28, 2002, ZiLOG owed you money other than the wages, benefits and expense reimbursements that you are entitled to as an employee. Otherwise, you do [**3] not need to take any action in connection with the notice that you have received."

Around this same time, the women received a notice from the bankruptcy court explaining that the deadline for filing proofs of claims that had accrued prior to the bankruptcy filing was April 19, 2002. The women did not file proofs of claim prior to the deadline.

The bankruptcy court confirmed ZiLOG's plan of reorganization on April 30 of that year, and the reorganization became effective on May 13. The bankruptcy court's April 30 confirmation order -- mirroring ZiLOG's reorganization plan -- provided that "[o]n the Effective Date, the Debtors shall be discharged of all liability for payment of any Claims incurred before the Effective Date, to the fullest extent provided by Bankruptcy Code § 1141, except that any liability imposed by or assumed under the Plan shall not be discharged." The confirmation order also provided that "July 1, 2002, is the deadline for filing a request for payment of an administrative expense arising from February 28, 2002 through April 30, 2002." The women received written notice of the plan's confirmation.

Pursuant to 11 U.S.C. § 524(a)(2) [**4] , confirmation of a plan "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." Id.; see also id. § 1141(d)(1). Notwithstanding the discharge injunction, the women subsequently filed an action in Idaho state court (the "Idaho action") alleging contract, tort and statutory claims based on ZiLOG's failure to pay the promised retention bonuses. The complaint did not allege sex discrimination.

In response to this filing, ZiLOG initiated an adversary proceeding in the Northern District of California Bankruptcy Court, and sought to enjoin the Idaho action, arguing that those claims had been discharged in bankruptcy. Shortly after commencement of this adversary proceeding, the women and ZiLOG stipulated that the women would stay the Idaho action until the bankruptcy court entered a judgment in the adversary. The bankruptcy court approved this stipulation and it was entered into the record.

Subsequently, the women filed complaints with the Idaho Human Rights Commission and the United States Equal Employment Opportunity Commission. Each [**5] of the verified complaints contained identical statements of fact, alleging that

[s]ometime after December 31, 2001, I learned that I would not be paid the promised retention bonus. That in late April or early May, 2002, I learned that male employees who had signed retention bonus agreements had been paid the retention bonuses and/or rehired within a period of time that Zilog represented [*999] such individuals would not be rehired.

Several months later, the women filed affidavits in the bankruptcy court further detailing their allegations of discrimination. Corning and Robert claimed (consistent with their verified complaints) that they did not learn until "late April or early May, 2002," that the three male engineers who had received retention bonuses would not be laid off. During this same period, Corning and Robert allegedly learned that three male maintenance workers who had been laid off in January 2002 might be returning to ZiLOG but would not have to repay their retention bonuses.

Corning and Robert also claimed to have learned by late April or early May 2002 that a seventh male employee who had been paid a retention bonus was neither terminated nor was asked for a [**6] refund. (This was in contrast to a female employee who had apparently been retained, but was forced to return her bonus.) Finally, in "mid-June 2002," Corning and Robert allegedly learned that an eighth male employee had been rehired without being required to repay his retention bonus.

While Corning and Robert's affidavits to the bankruptcy court were consistent with their verified complaints to the Idaho Human Rights Commission and the EEOC, Cleverdon's was not. In her complaint to the Idaho Human Rights Commission, Cleverdon had alleged that she became aware of disparate treatment in late April or early May 2002. In her later affidavit to the bankruptcy court, however, Cleverdon claimed that she did not become aware of the disparate treatment until "approximately mid-June 2002," when she was informed of such by Corning and Robert.

Subsequently, the women moved to enter their untimely contract, tort and statutory claims into the bankruptcy proceedings under the equitable doctrine of excusable neglect. See Fed. R. Bankr. 9006(b)(1). They also requested payment of their sex discrimination claims as post-petition administrative expenses. [1]

---

### FOOTNOTES

[1] Although not disputed by the parties, we note in passing that a literal reading of 11 U.S.C. § 503(b), governing administrative expenses, might suggest that "[t]o be deemed an administrative expense, the claim must have arisen from a *transaction* with the debtor in possession, and directly and substantially benefitted the estate." *Boeing N. Am., Inc. v. Ybarra (In re Ybarra)*, 424 F.3d 1018, 1025 (9th Cir. 2005) (emphasis added) (footnote omitted). But the Supreme Court has "carved out an exception" by holding that "[i]n the interests of 'fairness to all persons having claims against the insolvent' . . . tort claims arising post-petition [are] 'actual and necessary expenses' of preserving the estate." *Id.* at 1025 n.10 (emphasis added) (quoting *Reading Co. v. Brown*, 391 U.S. 471, 477, 482, 88 S. Ct. 1759, 20 L. Ed. 2d 751 (1968)). Thus, under *Reading* and its progeny, discrimination claims that arise post-petition but pre-confirmation can be filed as administrative expenses against the debtor's estate.

[**7] The bankruptcy court granted summary judgment to ZiLOG, and held all of the women's claims barred by the bankruptcy confirmation order. Applying *California Department of Health Services v. Jensen (In re Jensen)*, 995 F.2d 925 (9th Cir. 1993) (per curiam), which held that a claim arises under the bankruptcy code once it is within the claimant's "fair contemplation," *id.* at 930, the bankruptcy court held that the women's sex discrimination claims "should have been within their fair contemplation as of the effective date of confirmation on May 13, 2002. As preconfirmation claims they are subject to the bankruptcy proceedings." [2] The bankruptcy court also found all of the women's other claims to be within their fair contemplation pre-petition, and thus barred because [*1000] no proofs of claim were filed by the April 19 deadline. The bankruptcy court found no excusable neglect for the late filing of these claims, and held the women in contempt for willfully violating the discharge injunction. ZiLOG was awarded $ 20,000 in attorneys'

fees.

---

**FOOTNOTES**

2 It's unclear why the bankruptcy court looked to May 13 rather than April 30 as the relevant date. *See* pp. 6604-6606 *infra*.

---

**[**8]** The district court affirmed, holding that the bankruptcy court had made "explicit [factual] findings" that, by late April or early May 2002, Corning and Robert were aware that a number of male employees had received retention bonuses while remaining employed at ZiLOG. The district court held that the bankruptcy court's findings were not clearly erroneous, and that "the bankruptcy court did not err in finding that Corning's and Robert's gender discrimination claims were classified appropriately as *pre-petition* and thus barred by the *May 13, 2003* bankruptcy discharge." 3 (Emphasis added.)

---

**FOOTNOTES**

3 Setting aside the fact that the discharge became effective on May 13, 2002, not 2003, we do not understand why the district court described the claims as "pre-petition." The bankruptcy court had determined that the claims arose *pre-discharge*, not pre-petition. As we explain on pages 6604-6606, the bankruptcy court's use of the May 13 effective date, rather than the April 30 confirmation date, as the deadline for the discharge of administrative claims was inconsistent with other portions of its confirmation order. In any event, the district court's description as "pre-petition" of claims that the bankruptcy court had "found" to have arisen in late April or early May 2002 (i.e., at least one-and-a-half months *after* the filing of the bankruptcy petition) is contradicted by the record.

---

**[**9]** The district court described the issue of when Cleverdon's sex discrimination claim arose as "closer." Citing the conflict between Cleverdon's complaint to the Idaho Human Rights Commission and her subsequent affidavit to the bankruptcy court, the district court affirmed the bankruptcy court's grant of summary judgment against Cleverdon: "In light of Cleverdon's *conflicting statements*, this Court cannot conclude that the bankruptcy court's factual determination that Cleverdon's claims were pre-petition [sic] and barred by the confirmation plan on May 13, 2003 [sic] constituted clear error." (Emphasis added.)

The district court also affirmed the sanctions award, holding that "[a]bsent any affirmative act by Defendants to stay or dismiss the Idaho litigation, the bankruptcy court's finding that the continuing Idaho state proceedings were a willful violation of the discharge order was reasonable." 4

---

**FOOTNOTES**

4 This statement is puzzling, given that the bankruptcy court approved a stipulation by the parties staying the Idaho action pending resolution of the adversary bankruptcy proceeding. *See* p. 6600 *supra* and pp. 6619-6620 *infra*.

---

**[**10] Summary Judgment on the Discrimination Claims**

HN15 We look to federal law to determine when a claim arises under the bankruptcy code. *Cool Fuel, Inc. v. Bd. of Equalization (In re Cool Fuel, Inc.)*, 210 F.3d 999, 1006 (9th Cir. 2000). In *Jensen*, we held that an environmental claim arises under the bankruptcy code once it is within the claimant's "fair contemplation." 995 F.2d at 930. *Jensen* has been applied to a range of non-environmental claims. *See, e.g., In re Cool Fuel, Inc.*, 210 F.3d at 1000 (tax claim); *Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46, 53 (B.A.P. 9th Cir. 1997) (negligent construction claim); *Corman v. Morgan (In re Morgan)*, 197 B.R. 892, 898 (N.D. Cal. 1996) (fraud claim).

Although we have not had occasion to consider whether *Jensen's* "fair contemplation" test extends to claims of discrimination, we see no reason why these **[*1001]** claims should not be analyzed under *Jensen's* framework. We therefore agree with the courts below that the women's claims of sex discrimination accrued under the bankruptcy code once they were within the **[**11]** women's "fair contemplation."

The bankruptcy court granted summary judgment to ZiLOG and held that the sex discrimination claims arose pre-discharge. The plan was confirmed on April 30, 2002, and became effective on May 13. The bankruptcy court held that claims arising prior to May 13 were discharged under the plan, even though the April 30 confirmation order only permitted claims arising "from February 28, 2002 through April 30, 2002" to be filed as administrative expenses. Under the bankruptcy court's confirmation order, claims arising from May 1 to May 12 were discharged, even though no provision was made for their presentation and payment.

The issue of which date should be used to bar claims for administrative expenses was raised before the bankruptcy court at the hearing on motions for summary judgment. Counsel for the women objected that, because the July 1 bar date only related to administrative claims that had arisen on or before April 30, the discharge injunction should likewise only bar claims that had accrued through April 30, rather than May 13. As counsel for the women explained: "The problem with using the effective date is that the debtor is trying to vacate any right **[**12]** to payment for claims that it didn't even know existed at the time that one would vote on confirmation of the plan." For reasons not apparent from the record, the bankruptcy court overruled the objection.

Assuming that the bankruptcy court even has the authority to discharge post-confirmation debts, 5 we cannot see how, in this case, the bankruptcy court could have discharged claims arising between the plan's confirmation and effective dates without first allowing for the presentation of such claims. Given the manifest injustice of discharging claims that could not have been filed under the bankruptcy court's April 30 confirmation order, we **[*1002]** hold that only claims against ZiLOG arising on or before April 30 were discharged.

---

**FOOTNOTES**

5 Both the reorganization plan and the bankruptcy court's confirmation order -- in identical language -- discharged ZiLOG "of all

---

liability for payment of any Claims incurred before the Effective Date, to the fullest extent provided by [11 U.S.C. § 1141]."
Section 1141 of the bankruptcy code provides that "[e]xcept as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan . . . discharges the debtor from *any debt* that arose *before the date of such confirmation*." 11 U.S.C. § 1141(d)(1)(A) (emphasis added).

We are uncertain whether post-confirmation debts can in fact be discharged in bankruptcy. The "[e]xcept as otherwise provided" clause in section 1141 can be read in either of two ways. One way would be to read the clause as modifying the words "any debt." Under that reading, all pre-confirmation debts are dischargeable, except as limited by the plan or the code. Alternatively, one could read the "[e]xcept as otherwise provided" clause as modifying the phrase "before the date of such confirmation." Under that reading, even post-confirmation debts could be discharged if that were provided for in the reorganization plan.

We have not located a case addressing which reading is correct. Nor have we found an answer in the statute's legislative history. *See* H. Rept. No. 95-595 to accompany H.R. 8200, 95th Cong., 1st Sess. (1977), at 418. Although we find the first alternative more plausible, we need not decide the matter here. Under either reading, the bankruptcy court's confirmation order failed to provide for the presentation and adjudication of claims arising between April 30 and May 13. Because it would be manifestly unjust to discharge claims that could not have been filed as either pre-petition claims or administrative expenses, we hold that even if the bankruptcy court had the power to discharge post-confirmation claims, the court abused its discretion in discharging the women's discrimination claims here.

**[\*\*13]** Even if the bankruptcy court meant to say that the women's discrimination claims arose prior to the April 30 confirmation order, summary judgment was still unwarranted. Corning and Robert claimed that they became aware by late April or early May 2002 that female ZiLOG employees were subjected to disparate and allegedly discriminatory treatment. *HN2*⌐As this was a motion for summary judgment, the court was required to resolve disputed issues of fact in favor of the women, as the non-moving parties. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); see also Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56.*

Accepting that Corning and Robert's sex discrimination claims arose in late April or early May 2002, there is a substantial possibility that those claims were not within the women's fair contemplation until after the April 30 confirmation order, and thus were outside the bankruptcy process. The bankruptcy court therefore erred in granting summary judgment and finding those claims discharged.

The bankruptcy court's grant of summary judgment to **[\*\*14]** ZiLOG on Cleverdon's sex discrimination claim is even more problematic. Cleverdon claimed in her complaint to the Idaho Human Rights Commission and the EEOC that she learned of the allegedly disparate treatment by late April or early May 2002. Even if this were true, the bankruptcy court's grant of summary judgment must be reversed for the reasons discussed above.

Cleverdon, however, claimed in her subsequent affidavit to the bankruptcy court that she did not learn of the allegedly disparate treatment until mid-June 2002. The date by which Cleverdon's allegedly disparate treatment was within her fair contemplation was therefore in dispute. Taking the facts in the light most favorable to Cleverdon, her discrimination claim did not come within her fair contemplation until one-and-a-half months *after* confirmation of the plan. [6] The bankruptcy court therefore erred in granting summary judgment to ZiLOG on Cleverdon's sex discrimination claim.

---

**FOOTNOTES**

[6] The district court appeared to believe that, because Cleverdon had indicated in her administrative complaint that she learned the facts underlying the discrimination complaint in late April or early May, it was entitled to ignore her declaration in the bankruptcy court that she only learned of these facts in mid-June. But the fact that Cleverdon presented a sworn statement in another proceeding that appears to contradict her sworn statement in this proceeding does not vitiate her sworn statement here. At most, the conflicting statement may be used to impeach her testimony at trial. Confronted with that inconsistency, Cleverdon may be able to reconcile the two statements or otherwise explain away the inconsistency. Or, the trier of fact may resolve the inconsistency in favor of the later statement. These are matters to be resolved at trial, not on summary judgment.

---

**[\*\*15]** The district court then compounded these mistakes by deferring under the clearly erroneous standard of review to these bankruptcy court's "explicit [factual] findings" -- "findings" that the bankruptcy court had no authority to make on a motion for summary judgment. The district court's affirmance of the bankruptcy court's grant of summary judgment was therefore erroneous.

Taking the facts in the light most favorable to the women, there is a substantial possibility with respect to Corning and Robert, and a certainty with respect to Cleverdon, that their discrimination claims arose post-confirmation. We reverse the bankruptcy court's grant of summary judgment on the women's discrimination claims and remand to the bankruptcy court to determine when those claims came within the women's fair contemplation. **[\*1003]** *See Renwick v. Bennett (In re Bennett), 298 F.3d 1059, 1072 (9th Cir. 2002).*

### Excusable Neglect

We next consider whether the bankruptcy court abused its discretion in declining to excuse the women's failure to file timely proofs of claim regarding their retention bonuses. *HN3*⌐The determination of whether neglect is "excusable" is "an equitable one, taking **[\*\*16]** account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395, 113 S. Ct. 1489, 123 L. Ed. 2d 74 (1993).* Such circumstances include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay . . . and whether the movant acted in good faith." *Id.* This list is not exhaustive. *See id.*

On March 11, 2002, the women received the following email from ZiLOG's general counsel:

| Sent: | Monday, March 11, 2002 7:40 PM |
| --- | --- |
| To: | Austin Users; Field Sales Americas; |

| | |
|---|---|
| | Fort Worth Users; Tampa Users; San |
| | Jose Users |
| Cc: | 'rlevin@skadden.com'; |
| | 'pclapp@skadden.com'; |
| | 'tivey@skadden.com'; |
| | 'slubben@skadden.com' |
| Subject: | Proof of Claim |
| Importance: | High |

As you know, we commenced our chapter 11 case on February 28, 2002. *The case will affect only the holders of the company's public debt securities and the current holders of our common and preferred shares.* We expect to conclude the case and emerge from chapter 11 by early May. In the interim, the bankruptcy court **[**17]** has granted the company's motion for permission to pay all amounts owed to employees for salary, wages, expense reimbursements, and vacation, medical, and other benefits as they become due. *We expect that the chapter 11 case will have no effect on you or on our business operations.*

The Federal bankruptcy rules requires [sic]that we provide the broadest possible notice of the case's commencement. For that reason, you will likely all receive in the mail a written notice, together with a Proof of Claim form, from . . . the company's noticing agent. You may receive additional notices about the progress of the case.

*This is nothing to be concerned about.* You need to fill out and return the Proof of Claim form *only if you believe that, on February 28, 2002, ZILOG owed you money other than the wages, benefits and expense reimbursements that you are entitled to as an employee. Otherwise, you do not need to take any action in connection with the notice that you have received.*

I am out of the office until Monday. In my absence, if you have any particular questions, please call Stephen Lubben of Skadden, Arps (213-687-5000).

Cheers,

dmj

Daniel M. Jochnowitz

Vice **[**18]** President and General Counsel

532 Race Street

San Jose, CA 95126

(t) 408-558-8485 (Emphasis added.)

The email was not calculated to inform the women that they needed to file their wage claims with the bankruptcy court. More likely, it would have led them to believe exactly the opposite.

The second sentence of the email states: "The [bankruptcy] case will affect only the holders of the company's public debt securities and the current holders of our common and preferred shares." [7] The clear **[*1004]** import of this language, especially when read by employees who were not lawyers and had no expertise in bankruptcy law, is that the bankruptcy would not affect their rights. The author of the email reinforced this view by concluding the first paragraph with a sentence expressing the company's expectation that "the chapter 11 case *will have no effect on you* or on our business operations." (Emphasis added.)

---

**FOOTNOTES**

7 This statement was plainly incorrect. The bankruptcy affected virtually all pre-petition creditors, in that they were required to file proofs of claim in order to preserve their rights to payment. Presumably, what the company meant to say was that, under the terms of the reorganization plan, all valid general unsecured pre-petition claims would receive 100 on the dollar, assuming proofs of claim were filed with the bankruptcy court. It was only public debt and equity holders whose claims would be impaired.

---

**[**19]** The third paragraph reinforces the idea that the employees need not file claims with the bankruptcy court. Having explained in the second paragraph that the notice was sent only because "[t]he Federal bankruptcy rules requires [sic] that we provide the broadest possible notice of the case's commencement," the third paragraph begins by assuring employees that "[t]his is nothing to be concerned about." *Cf. The Wizard of Oz* (Metro-Goldwyn-Mayer 1939) ("Pay no attention to that man behind the curtain."). Then follows -- buried in the middle of the third paragraph -- the only sentence that gives any hint that some employees may need to file proofs of claim after all: "You need to fill out and return the Proof of Claim form only if you believe that, on February 28, 2002, ZiLOG owed you money other than the wages, benefits and expense reimbursements that you are entitled to as an employee."

Assuming diligent employees made their way past the assurances that they needn't worry about all the legal mumbo-jumbo, it is far from clear that they would have understood they were required to file proofs of claim for monies they believed they were owed as retention bonuses. The bonuses **[**20]** ZiLOG had promised the women were supposed to compensate them for services they had rendered or would be rendering to the company. As such, the bonuses could easily be understood to be "wages, benefits and expense reimbursements that you are entitled to as an employee" -- the type of claims for which no proof of claim needed to be filed. We also

note that the "you need to do X only if Y" construction of the sentence -- giving information by way of negative inference rather than affirmative assertion -- appears designed to deflect attention from, rather than underscore the necessity of, filing proofs of claim. [8]

## FOOTNOTES

[8] The bankruptcy judge, in her oral ruling, concluded that the March 11 email gave the women fair notice because the email "referred to employees' wages, expense reimbursements, vacation, medical, and other benefits *as they become due.*" (Emphasis added.) In the bankruptcy court's view, "[t]hat language clearly projects into the future," whereas "[t]he retention bonuses, if payable to the claimants, were due January 4th, 2002 more than a month before the petition date."

The problem with the bankruptcy court's analysis is twofold. First, it ignores the other parts of the email that speak directly to the necessity of filing a proof of claim. Specifically, the email told employees they need not file claims for wages or other benefits owed to them on February 28, 2002. Contrary to what the bankruptcy court believed, this refers to claims for past services, rather than "project[ing] into the future." Second, the language on which the bankruptcy court relied says nothing about the filing of proofs of claim; rather, it advises employees that "the bankruptcy court has granted the company's motion for permission to pay all amounts owed to employees for salary, wages, expense reimbursements, and vacation, medical, and other benefits as they become due." To someone versed in bankruptcy law, saying that the debtor is authorized by the court to pay certain claims suggests that no proofs need be filed for those claims. But the employees to whom the email was addressed can't be presumed to have understood that connection. A fair reading of the email, using the eyes of an ordinary non-lawyer employee, does not convey the idea that proofs of claim had to be filed for *all* pre-petition claims for employee compensation.

[**21]  [*1005]  Read in its entirety, the email from the general counsel hardly gives fair notice to the women, or to others in their position, that they were required to file proofs of claim to preserve their rights. Rather, the email seems designed to lull the employees into a false sense of security about the need to file claims, and to dissuade them from paying very close attention to any notices sent out by the bankruptcy court. [9]

## FOOTNOTES

[9] It's not as if fair and accurate notice would have been impossible to give. Rather than minimizing the notice from the bankruptcy court as an irrelevant technicality, the general counsel could have encouraged employees to examine it closely and make sure that they had no need to file timely proofs of claim. He could also have encouraged employees who did not understand the notice to seek independent legal advice. The email could also have laid out in plain terms who was required to file proofs of claim using language such as this: "You must file a proof of claim to preserve your rights, unless you are seeking payment only of ordinary salaries, wages, employee benefits and expense reimbursements. If you have any doubt as to whether your claim falls into this excepted category, you should file a proof of claim to preserve your rights or contact a lawyer for guidance." The plainly defective notice was cc'd to *four* of ZiLOG's outside counsel, none of whom sent a corrected notice.

[**22]  The written notice from the bankruptcy court muddied the waters further. That notice stated:

> The Bankruptcy Court has set *April 19, 2002*, as the deadline for filing proofs of claim (the "Bar Date"). . . . *If you have a prebankruptcy claim against either Debtor that is not based on the delivery of goods or services to the Debtors in the ordinary course of business, you must file a proof of claim . . . so that it is received no later than the Bar Date. If you fail to do so, your claim will be discharged.*

> . . . .

> The Plan alters the rights of the holders of ZiLOG's Senior Notes and its equity securities but does not alter the rights of holders of any other class of claims. If the Court confirms the Plan, it will be binding on all holders of claims against and interests in the Debtors.

> . . . .

> Confirmation of the Plan will result in a discharge of claims against the Debtors, which may include all or part of your claim. A discharge means that you may never try to collect the claim from the Debtors, except as provided in the Plan. (First emphasis in original.)

Part of the problem, of course, is that -- having been assured by the general counsel's [**23] email that "[t]his is nothing to be concerned about" -- many employees may not have read the bankruptcy court's notice very carefully, or at all. Assuming, however, that employees did read the notice, they would have learned that no proof of claim had to be filed for any "pre-bankruptcy claim . . . based on the delivery of . . . services to the Debtors in the ordinary course of business." The phrase "in the ordinary course of business" is most readily understood as modifying" delivery of . . . services to the Debtors," which immediately precedes it. The women's one-time retention bonuses *were* based on their performing services for ZiLOG, and the services were rendered in the ordinary course of ZiLOG's business. ZiLOG does not claim that the women were required to perform extraordinary services to earn the bonuses; as best the record reveals, the bonuses were to be paid if the women kept their jobs through the end of the year. Given that the services they rendered to earn the bonuses were exactly the same ones they had been rendering to ZiLOG all along, we can easily see how the women, even had they read [*1006] the notice from the bankruptcy court closely, would have believed there was [**24] no need to file proofs of claim to preserve their right to recover the promised bonuses. [10] Moreover, given the misleading statements in the March 11 email that "the chapter 11 case will have no effect on you" and "[t]his is nothing to be concerned about," we can readily understand why the women may not have parsed the notice from the bankruptcy court more closely or consulted an attorney at that time.

## FOOTNOTES

10 Once again, careful drafting could have avoided the problem. Rather than speaking of compensation for services in the ordinary course of business, the notice might have said something like this: "If you are an employee, you need not file proofs of claim if you believe ZiLOG owes you money only for ordinary wages, salaries and expense reimbursements. If you are in doubt as to whether the monies you claim are owed to you fall into this narrow category, you must file a proof of claim to preserve your rights."

In *Pioneer* -- which, as it happens, was also a bankruptcy case involving a late proof of claim [**25] -- a creditor represented by "an experienced bankruptcy attorney" missed the deadline for filing pre-petition claims because his lawyer overlooked the filing date in the bankruptcy court's notice. 507 U.S. at 384. The bankruptcy court refused to find excusable neglect for the creditor's late filing, and the district court affirmed. *See id.* at 384-86.

The Sixth Circuit reversed the bankruptcy court's refusal to accept the late-filed proofs of claim, and the Supreme Court affirmed. *Id.* at 386-87. In holding that the bankruptcy court abused its discretion, the Supreme Court explained that the standard for excusable neglect

> is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission[, including] .
> . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the
> reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted
> in good faith.

*Id.* at 395.

In *Pincay* v. *Andrews*, 389 F.3d 853 (9th Cir. 2004) (en banc), we applied [**26] *Pioneer* to hold that the district court did not abuse its discretion by finding excusable neglect when a sophisticated law firm missed a filing deadline because of a paralegal's error. *See id.* at 860. Although we did not hold that the district court was *required* to find excusable neglect under those circumstances, we upheld a finding of excusable neglect because we found the evidence *sufficient* to support it. *See id.*

In *Pioneer* and *Pincay*, sophisticated attorneys were let off the hook after missing filing deadlines. In fact, the Supreme Court in *Pioneer* went so far as to hold that it was an abuse of discretion *not* to find excusable neglect where a versed bankruptcy practitioner missed the bankruptcy court's notice and failed to file a timely proof of claim. By contrast, Corning, Robert and Cleverdon were unrepresented by counsel, and the notices sent out by debtor's counsel and the bankruptcy court were, at the very least, ambiguous, and more likely affirmatively misleading. It would be very strange indeed to find the neglect in our case inexcusable, when the neglect in *Pioneer* and *Pincay* was found excusable.

ZiLOG argues that [**27] permitting the late-filing of the women's claims could create a "Material Adverse Change," which could interfere with the effectiveness of the reorganization. Even if this were a "theoretical possibility," as ZiLOG puts it, the bankruptcy court made no finding that [*1007] ZiLOG would suffer any prejudice if the claims were filed late. Based on the record before us, we cannot say that ZiLOG would be prejudiced by the late-filing of the women's claims. *See Pioneer, 507 U.S. at 389*. In any event, to the extent that ZiLOG is prejudiced as a result of its own deficient lawyering, the burden of such errors or malfeasance must be borne by those who caused it, rather than by innocent creditors who were misled thereby.

After *Pioneer* and *Pincay*, we have little difficulty in concluding that the bankruptcy court here abused its discretion in failing to find excusable neglect. *See* HN4 Fed. R. Bankr. 9006(b)(1) ("[W]hen an act is required or allowed to be done at or within a specified period by these rules . . . the court for cause shown may at any time in its discretion. . . on motion made after the expiration of the specified period permit [**28] the act to be done where the failure to act was the result of excusable neglect."). We remand to the bankruptcy court to permit the women to file their pre-petition claims in the bankruptcy proceedings as timely. Similarly, in the event that the women's discrimination claims came within their fair contemplation after the filing of the bankruptcy petition but before its April 30 confirmation order, the bankruptcy court shall permit those claims to be filed as timely administrative expenses. (Of course, if the discrimination claims are found to have accrued after April 30, 2002, the women may pursue those claims outside of the bankruptcy proceedings.)

**Sanctions Award**

HN5 Section 524 of the bankruptcy code provides that discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [discharged] debt as a personal liability of the debtor." 11 U.S.C. § 524 (a)(2). A party who knowingly violates the discharge injunction can be held in contempt under section 105(a) of the bankruptcy code. *See In re Bennett*, 298 F.3d at 1069; *Walls v. Wells Fargo Bank, N.A.*, 276 F.3d 502, 507 (9th Cir. 2002) [**29] (holding that civil contempt is an appropriate remedy for a willful violation of section 524's discharge injunction). In *Bennett*, we noted that the party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the sanctions are justified. We cited with approval the standard adopted by the Eleventh Circuit for violation of the discharge injunction: "[T]he movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction." *Bennett*, 298 F.3d at 1069 (citing *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1390 (11th Cir. 1996)).

It is clear from our cases, and should have been clear to the bankruptcy court, that knowledge of the injunction is a question of fact that can normally be resolved only after an evidentiary hearing. 11 The bankruptcy court, however, decided the contempt motion on a paper record. The court did so after expressing its views about the applicable law in its oral ruling, such as "contempt need not be willful to justify an award of damages," and "[c]ontempt may be established even if the failure [**30] to comply with the Court order was unintentional." The bankruptcy court also seemed to be under the misimpression that knowledge, for purposes of contempt, could be presumed: "While a party can't [*1008] be held in contempt absent knowledge of the injunction, knowledge may be presumed in a case where the defendants received notice of bankruptcy and of confirmation of the debtor's plan of reorganization." The court went on to conclude that "[b]ased on the evidence, it appears that the defendants knew about the bankruptcy case, knew that the plan had been confirmed. That is sufficient for a presumed knowledge of the discharge injunction."

**FOOTNOTES**

11 Of course, where the facts are not in dispute, no hearing need be held. *See, e.g., Knupfer v. Lindblade (In re Dyer)*, 322 F.3d

1178, 1191-92 (9th Cir.2003) (contempt sanctions upheld where creditor admitted having notice of the automatic bankruptcy stay, yet took no steps to remedy his violation of the stay).

It is certainly true that [HN6]a trier of fact [**31] could infer knowledge of an automatic stay or discharge injunction from the fact that a creditor knew of the bankruptcy. Such an inference, however, would be a matter of fact, not a presumption implied in law. Knowledge of the injunction, which is a prerequisite to its willful violation, cannot be imputed; it must be found. If, as here, the creditors dispute that they had such knowledge, a finding that they knew of the injunction, and thus willfully violated it, can only be made after an evidentiary hearing.

We made this point clear, if it was not before, in a case decided after the bankruptcy court entered its contempt order (but before it denied the women's motion to reconsider its finding of contempt). In _Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178 (9th Cir. 2003)_, we dealt with contempt sanctions for violation of the automatic bankruptcy stay by a creditor, represented by counsel, who filed a lien on property of the estate after commencement of the bankruptcy proceedings. See _id. at 1183-84_. In considering whether to uphold the sanctions, we noted that the creditor and his lawyer both knew of the bankruptcy but "may not have been aware [**32] familiar with that particular Code provision [section 362(a) of the bankruptcy code, which imposes an automatic stay]."_Id. at 1191_. While acknowledging that "a party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay" for purposes of awarding damages under _section 362(h)_ of the bankruptcy code, "we hesitate[d] to extend that principle to the contempt context. Generally, a party cannot be held in contempt for violating an injunction absent knowledge of that injunction." _Id. at 1191-92_ (citing _Bennett, 298 F.3d at 1069_, and _Jove Eng'g, Inc. v. IRS, 92 F.3d 1539, 1555 (11th Cir. 1996))_.

As noted, the women here dispute knowing of the discharge injunction. That a competent lawyer should have known about the injunction after diligent inquiry is not dispositive. The creditor's lawyer in _Dyer_ no doubt _should_ have known about the existence of the automatic stay, which he could easily have discovered by doing elementary legal research. Nevertheless, we declined to affirm the contempt sanctions on this basis because the lawyer "may not have been familiar with that particular [**33] Code provision." There is nothing remarkable or surprising about this aspect of _Dyer_; it simply reiterates the well-established proposition that [HN7]only actual knowledge of the discharge injunction suffices for a finding of contempt. [12]

**FOOTNOTES**

12 Although _Dyer_ involved the automatic stay, rather than the discharge injunction, it relied on discharge injunction cases such as _Bennett_ and _Hardy_, and, indeed, we see no material difference between the discharge injunction and the automatic stay for these purposes. A contempt order entered for violation of either is governed by the same standards, namely those applicable to all civil contempt proceedings. See _Dyer, 322 F.3d at 1191-92_ (citing _Fed. R. Civ. P. 65(d)_ for the proposition that an "injunction [is] not binding unless [a] party has actual knowledge of it").

By the time ZiLOG was appealed to the district court, _Dyer_ had been decided and the district court, in fact, relied on it. [**34] Perhaps aware that _Dyer_ undercut the bankruptcy court's rationale for imposition of contempt sanctions, the district court [*1009] relied on an alternative theory for affirming the contempt order. In _Dyer_, we ultimately upheld the contempt sanctions on the ground that, though the creditor may not have known about the automatic stay initially, he became aware of it when he was notified by the trustee, and this created "an affirmative duty to remedy [the] automatic stay violation" by "undo[ing] the recordation process." _Dyer, 322 F.3d at 1192_. Because the failure to cure the violation after notice was undisputed in _Dyer_, we agreed that the violation was willful and upheld the contempt sanctions.

The district court relied on this aspect of _Dyer_ in upholding the bankruptcy court:

> Defendants were charged with knowledge of the stay [sic] [13] no later than August 21, 2002, when ZiLOG served a complaint on Defendants seeking injunctive relief to stop the Idaho state actions. See _In re Dyer, 322 F.3d at 1191_. Defendants' failure to take affirmative action to undo an arguably innocent violation of the automatic stay [sic13] constituted [**35] a willful violation. Absent any affirmative act by Defendants to stay or dismiss the Idaho litigation, the bankruptcy court's finding that the continuing Idaho state proceedings were a willful violation of the discharge order was reasonable. . . . There is nothing in the record to suggest that the bankruptcy court abused its discretion. (Emphasis added.) (Internal citation omitted.)

But the record, in fact, clearly undercuts the district court's conclusion. Specifically, the record contains a stipulation, approved by the bankruptcy court, staying the Idaho state court proceedings.

**FOOTNOTES**

13 We don't understand why the district court discussed the automatic stay. By August 21, 2002, the automatic stay had long since disappeared; it was only the discharge injunction that was relevant. See _11 U.S.C. § 362(c)(2)(C)_ ("[The automatic stay] continues until . . . the time a discharge is granted or denied.").

There remains the question of whether the women and their counsel were, [**36] in fact, unaware of the discharge injunction and its potential applicability to their claims. _Dyer_ relied on the fact that the automatic stay is imposed by statute, rather than court order, and counsel may not have been aware of the statute. See _322 F.3d at 1191-92_. The same is true here; the discharge injunction is imposed by _section 524(a)_ of the bankruptcy code, and we have found no place where it is also embedded in the bankruptcy court's confirmation order. This raises the possibility, as in _Dyer_, that counsel for the women "may not have been familiar with that particular Code provision." _Id. at 1191_.

To say that counsel may not have known of _section 524_ is not the same as saying that he did not know. _Dyer_ had no reason to resolve this uncertainty because it affirmed on another ground. Here, the uncertainty is crucial because there is no evidentiary basis on which to dispose of the contempt claim. On remand, the bankruptcy court should determine whether the women were aware of the discharge injunction and its applicability to their claims. See _Bennett, 298 F.3d at 1069_ (in order to justify sanctions, "the movant

must [**37] prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction"). 14 We vacate the bankruptcy [*1010] court's contempt finding and remand for a determination of willfulness.

FOOTNOTES

14 The willfulness question is clouded to some extent by the deficiencies in the March 11 email and the notice sent out by the bankruptcy court, discussed at length above. See pp. 6608-6614 supra. To be held in contempt, the women must not only have been aware of the discharge injunction, but must also have been aware that the injunction applied to their claims. To the extent that the deficient notices led the women to believe, even unreasonably, that the discharge injunction did not apply to their claims because they were not affected by the bankruptcy, this would preclude a finding of willfulness.

We REVERSE (1) the bankruptcy court's grant of summary judgment to ZiLOG on the women's sex discrimination claims; (2) the bankruptcy court's discharge of the women's [**38] statutory, contract and tort claims; (3) the bankruptcy court's permanent injunction against the women's pursuit of those claims; (4) the bankruptcy court's determination that the women failed to show excusable neglect for not filing those claims on time; and (5) the bankruptcy court's award of sanctions.

We REMAND to the bankruptcy court to conduct proceedings in close conformity with the views expressed in this opinion. On remand, the bankruptcy court should consider whether any fees it may have approved for debtor's counsel should be adjusted in light of our observations. The bankruptcy court should also consider whether costs and attorneys' fees incurred by the women in defending this adversary proceeding, and the appeal there from, should in equity and good conscience, be shifted to ZiLOG and its lawyers.

REVERSED and REMANDED.

Service: Get by LEXSEE®
Citation: 450 F.3d 996
View: Full
Date/Time: Monday, October 18, 2010 - 9:05 AM EDT

* Signal Legend:
● - Warning: Negative treatment is indicated
▣ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
ⓘ - Citation information available
* Click on any Shepard's signal to Shepardize® that case.



My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

LexisNexis®  About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2010 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.