**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :        **08-13555 (JMP)**
                                                    :
            **Debtors.**                            :        **(Jointly Administered)**
                                                    :
----------------------------------------------------------------------x

**STIPULATION, AGREEMENT AND ORDER GRANTING**
**CAPITAL ONE, N.A. LIMITED RELIEF FROM THE AUTOMATIC STAY**

Lehman Brothers Holdings Inc. ("LBHI") and Capital One, N.A. ("Capital One,"

together with LBHI, the "Parties"), by and through their respective counsel, hereby enter into this

Stipulation, Agreement and Order (this "Stipulation") and represent and agree as follows:

**RECITALS**

A.      On September 15, 2008 and periodically thereafter (as applicable, the "Petition Date"),

LBHI and certain of its subsidiaries (collectively, the "Debtors") commenced in this Court voluntary

cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors are

authorized to continue to operate their businesses and manage their properties as debtors in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

B.      Capital One, as successor by merger to North Fork Bank ("North Fork"), is the owner

and holder of (i) a certain loan in the original principal amount of $24,100,000 (the "First Mortgage

Loan") made to New Central Avenue LLC (the "Borrower") evidenced by a First Mortgage Note, dated

July 12, 2007, made by Borrower in favor of Capital One in the original principal amount of $24,100,000

(as amended, restated, supplemented or otherwise modified from time to time, the "First Mortgage

Note"), and secured by a mortgage lien on certain premises located in the County of Nassau, Village of

Lawrence and State of New York and known as 260 Central Avenue, Lawrence, New York (the

"Premises") pursuant to a First Mortgage, dated July 12, 2007, made by the Borrower in favor of Capital

One, in the original principal amount of $24,100,000 (as amended, restated, supplemented or otherwise modified from time to time, the "First Mortgage"); (ii) a certain loan in the original principal amount of $43,100,000 (the "Building Loan") made to the Borrower evidenced by a Building Loan Mortgage Note, dated July 12, 2007, made by Borrower in favor of Capital One in the original principal amount of $43,100,000 (as amended, restated, supplemented or otherwise modified from time to time, the "Building Loan Mortgage Note"), and secured by a mortgage lien on the Premises pursuant to a Building Loan Mortgage, dated July 12, 2007, made by the Borrower in favor of Capital One, in the original principal amount of $43,100,000 (as amended, restated, supplemented or otherwise modified from time to time, the "Building Loan Mortgage"); and (iii) a certain loan in the original principal amount of $9,200,000 (the "Project Loan," and together with the First Mortgage Loan and the Building Loan, the "Senior Loan") made to the Borrower evidenced by a Project Loan Mortgage Note, dated July 12, 2007, made by Borrower in favor of Capital One in the original principal amount of $9,200,000 (as amended, restated, supplemented or otherwise modified from time to time, the "Project Loan Mortgage Note," and together with the First Mortgage Note and the Building Loan Mortgage Note, the "Senior Notes"), and secured by a mortgage lien on the Premises pursuant to a Project Loan Mortgage, dated July 12, 2007, made by the Borrower in favor of Capital One, in the original principal amount of $9,200,000 (as amended, restated, supplemented or otherwise modified from time to time, the "Project Loan Mortgage," and together with the First Mortgage and the Building Loan Mortgage, the "Senior Mortgages").  The Senior Notes and the Senior Mortgages, together with all documents, instruments and agreements executed in connection with, or related to, the Senior Loan, are collectively referred to in this Stipulation as the "Senior Loan Documents."  The Senior Loan is secured by (i) the Premises and (ii) all other collateral given as security for the Senior Loan pursuant to the Senior Loan Documents (collectively, the "Senior Collateral"). Capital One funded $24,100,000 of the First Mortgage Loan and $900,000 of the Project Loan before the Borrower's alleged default under the Senior Loan Documents.

C.        Pursuant to that certain Mezzanine Construction Loan Agreement, dated as of January 24, 2008, between New Central Avenue I (the "Mezzanine Borrower") and LBHI (the "Mezzanine Loan Agreement"), LBHI is the owner and holder of a loan to the Mezzanine Borrower in the original principal

2

amount of up to $7,137,257 (the "Mezzanine Loan").  The Mezzanine Loan is evidenced by that certain

Secured Promissory Note dated as of January 24, 2008, made by the Mezzanine Borrower in favor of

LBHI in the amount of up to $7,137,257 (the "Mezzanine Note") and is secured by (i) the Pledge

Agreements (as defined in the Mezzanine Loan Agreement) and (ii) that certain Subordinate Mortgage,

Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated January 24, 2008, which

mortgage is subordinate to the Senior Mortgages (the "Subordinate Mortgage").  The Mezzanine Note

and the Subordinate Mortgage, together with all documents, instruments and agreements executed in

connection with, or related to, the Mezzanine Loan, are collectively referred to in this Stipulation as the

"Mezannine Loan Documents."  LBHI funded $5,349,967 of the $7,137,257 before the Mezzanine Loan

matured on July 24, 2008.

D.      Capital One, as successor to North Fork, and LBHI are parties to that certain Intercreditor

Agreement, dated as of January 24, 2008 (the "Intercreditor Agreement"), pursuant to which certain of

LBHI's rights, title and interests in and under the Mezzanine Loan are subordinated to certain of Capital

One's rights, title and interest in and under the Senior Loan.

E.      Capital One asserts that the Borrower defaulted on the Senior Loan and, accordingly, that

Capital One is entitled to, and may seek to, foreclose on the Senior Collateral.

F.      Pursuant to the Intercreditor Agreement, Capital One is required to provide LBHI with

copies of all notices of default in connection with the Senior Loan, and LBHI has the right, but not the

obligation, to cure any default by the Borrower and the option to purchase the Senior Loan on the terms

set forth therein.  LBHI has not exercised its rights to cure the Borrower's alleged default or exercised its

option to purchase the Senior Loan.

G.      Capital One filed a motion, dated April 16, 2010 (the "Stay Relief Motion"), for an order

modifying the automatic stay pursuant to Section 362(d) of the Bankruptcy Code and Bankruptcy Rule

4001, which Stay Relief Motion has been adjourned from time to time on consent of Capital One and

LBHI and is currently returnable before this Court on October 20, 2010.

H.      In an effort to consensually resolve the Stay Relief Motion and certain issues that have

arisen in connection with Capital One's exercise of its rights and remedies with respect to the Borrower's

3

alleged default in connection with the Senior Loan, the parties hereto have agreed that it is in their best interests to enter into this Stipulation upon the terms and conditions herein.

**NOW, THEREFORE, UPON THE FOREGOING RECITALS, WHICH ARE INCORPORATED AS THOUGH FULLY SET FORTH HEREIN, IT IS HEREBY STIPULATED AND AGREED, BY AND AMONG THE PARTIES, THROUGH THEIR UNDERSIGNED COUNSEL, AND, UPON COURT APPROVAL HEREOF, IT SHALL BE ORDERED THAT:**

1.      This Stipulation shall have no force or effect unless and until approved by the Court (the "Effective Date").

2.      Upon the Effective Date the automatic stay extant pursuant to section 362(a) of the Bankruptcy Code (the "Automatic Stay") shall be modified (a) solely to permit Capital One to exercise its rights, with respect to the Senior Collateral, under the Senior Loan Documents and applicable law, including, without limitation, foreclosure on the Senior Collateral constituting real property and any other Enforcement Action (as defined in the Intercreditor Agreement), as against third parties, including the Borrower and any guarantor of indebtedness under the Senior Loan, and (b) retroactively such that all acts previously taken by Capital One in connection with the exercise of such rights, including without limitation its prior notification to LBHI of the Borrower's default and LBHI's opportunity to exercise its rights in connection therewith, are not deemed to have been in contravention of the Automatic Stay.

3.      In the event that Capital One elects to sell, assign, transfer or otherwise convey (the "Sale") the Senior Loan to a third party (a "Purchaser") that is not affiliated with the Borrower and the Mezzanine Borrower for an amount equal to or less than 75% of the principal balance of the Senior Loan, Capital One shall, (i) prior to the closing date of the Sale (the "Closing Date"), deliver to counsel for LBHI (x) notice of the Closing Date, (y) a representation that such Purchaser has provided Capital One with a representation that it is not affiliated, directly or indirectly, with the Borrower, the Mezzanine Borrower, or any of the principals of the Borrower or the Mezzanine Borrower, and none of the principals of the Borrower or the Mezzanine Borrower has any ownership interest (direct or indirect) in the Purchaser, and (z) a representation that the Sale price is in an amount that is less than or equal to 75% of the principal balance of the Senior Loan, and (ii) within five (5) business days of the Closing Date,

4

transfer an amount equal to $500,000 by one or more wire transfers of immediately available funds (the

"Mezz Loan Payoff") to LBHI.

4.    Upon the receipt by the LBHI of the Mezz Loan Payoff, LBHI shall (i) be deemed to

have (x) terminated the Mezzanine Loan, the Mezzanine Loan Agreement and the other Mezzanine Loan

Documents as well as the Intercreditor Agreement, and (y) released the security interests and liens of

LBHI in the Mezzanine Collateral (as defined in the Intercreditor Agreement) granted thereunder, except

that the foregoing termination shall not apply to, and shall not be deemed a release or termination of any

of the obligations under the Mezzanine Loan Documents, which by the terms of the Mezzanine Loan

Documents expressly survive the termination thereof, and (ii) promptly deliver to the Mezzanine

Borrower UCC-3 termination statements and any other releases, satisfaction or termination

documentation necessary to evidence the satisfaction of the Subordinate Mortgage and the termination of

the Mezzanine Loan, the Mezzanine Loan Agreement, the Pledge Agreement (as defined in the

Intercreditor Agreement) and the other Mezzanine Loan Documents other than any obligations that by the

terms of the Mezzanine Loan Documents expressly survive termination of the Mezzanine Loan.

5.    In the event that Capital One elects to sell, assign, transfer or otherwise convey the Senior

Loan to (i) a third party that is affiliated with the Borrower or the Mezzanine Borrower, or (ii) for an

amount greater than 75% of the principal balance of the Senior Loan (each an "Alternative Sale"), Capital

One shall notify LBHI that it intends to pursue an Alternative Sale and whether such Alternative Sale

relates to (i) or (ii) above and LBHI shall have the option of electing to receive the Mezz Loan Payoff,

under the terms and conditions described above, or retaining its rights under the Mezzanine Loan.  LBHI

shall make such election, and notify Capital One with respect thereto, within three (3) business days of its

receipt of notice of such Alternative Sale.

6.    LBHI is authorized to enter into the transactions described herein pursuant to this Court's

order, entered June 17, 2010, pursuant sections 105(a) and 363(b) of the Bankruptcy Code and

Bankruptcy Rules 6004(h) And 9019(a) for the establishment of procedures to dispose of real estate assets

and modification of the order establishing procedures to (i) restructure, (ii) make new or additional debt

or equity investments in, and/or (iii) enter into settlements and compromises in connection with existing

real estate investments. [Docket No. 9633]

7.      LBHI, through its officer(s) and any other duly designated person, is hereby authorized to

make, execute, file and deliver such statements, instruments, and other documents and to take all other

and further actions that may be required or necessary to memorialize the above described transaction or

for the performance by LBHI of the terms of this Stipulation, and each of the Parties are hereby

authorized to file, register or otherwise record a copy of this Stipulation.

8.      Other than as set forth in Paragraph 2 above, the Automatic Stay remains in full force and

effect including, without limitation, those provisions prohibiting any act to collect, assess, or recover a

claim that arose prior to the respective Petition Date of the respective Debtors, the Debtors' estates and/or

to exercise control over assets or property of the Debtors or the Debtors' estates (as defined in section 541

of the Bankruptcy Code).

9.      Upon the Effective Date, the Stay Relief Motion is settled on the terms set forth in the

Stipulation.

10.     This Stipulation shall be binding upon and shall govern the acts of all entities, including

without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages,

records of deeds, registrars of deeds, administrative agencies, governmental units, secretaries of state,

federal, state and local officials, and all other persons and entities who may be required by operation of

law, contract, or the duties of their office to accept, acknowledge, assent or consent to, file, register,

record or release any documents or instruments with respect to the Senior Collateral and the transactions

effectuated in connection therewith under this Stipulation.

11.     Except as expressly provided herein, nothing in this Stipulation shall constitute or be

construed as (i) an amendment to the documents evidencing or securing the Mezzanine Loan or any

guaranty of the obligations of the Mezzanine Borrower thereunder, or any of the Senior Loan Documents

or the Intercreditor Agreement or a waiver or forgiveness of the Borrower's alleged default in connection

with the Senior Loan or the Mezzanine Borrower's alleged default in connection with the Mezzanine

6

Loan or (ii) an admission as to the validity of any claim of or against any Party, or as a waiver of the rights of any Party to dispute any claim.

12.     LBHI hereby represents and warrants as of the Effective Date, that it owns a one hundred percent (100%) interest in the Mezzanine Loan.

13.     Each person who executes this Stipulation on behalf of a Party represents that he or she is duly authorized to execute this Stipulation on behalf of such Party.

14.     This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

15.     This Stipulation can only be amended or otherwise modified by a signed writing executed by the Parties.

16.     This Stipulation shall be effective immediately upon its entry and shall not be stayed pursuant to Federal Rule of Bankruptcy Procedure 4001(a)(3).

17.     This Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation.

18.     This Stipulation, and its validity, interpretation and legal effect, shall be governed by and shall be interpreted in accordance with the laws of the State of New York, without regard to New York's rules governing conflicts of laws, except to the extent that the Bankruptcy Code applies.

19.     This Stipulation shall be binding on the Parties, the estate of LBHI and their respective

successors or assigns, including any subsequent or successor trustee elected or appointed for LBHI.


Dated: October 25, 2010

**WEIL, GOTSHAL & MANGES LLP**                    **FARRELL FRITZ, P.C.**


 /s/ Shai Y. Waisman                              /s/ Louis A. Scarcella
Shai Y. Waisman                                  Louis A. Scarcella
767 Fifth Avenue                                 Darren A. Pascarella
New York, New York 10153                         1320 RXR Plaza
Telephone: (212) 310-8000                        Uniondale, New York 11556-1320
Facsimile: (212) 310-8007                        Telephone: (516) 227-0700
                                                 Facsimile: (516) 227-0777


Attorneys for Debtors
and Debtors in Possession                        Counsel for Capital One, N.A.



**SO ORDERED:**


Dated:  New York, New York
          October 26, 2010

                             s/ James M. Peck
                            HONORABLE JAMES M. PECK
                            UNITED STATES BANKRUPTCY JUDGE