CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone:  (212) 878-8000
Facsimile:  (212) 878-8375
Jennifer C. DeMarco
Jennifer B. Premisler

*Attorney for Astrea LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : Case No. 08-13555 (JMP) |
| | : |
| | : |
| Debtors. | : (Jointly Administered) |

-------------------------------------------------------------------x

**RESPONSE OF ASTREA LLC TO DEBTORS' FIFTY-SIXTH**
**OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

Astrea LLC ("Astrea"), by and through their undersigned counsel, submits this

response ("Response") to the Debtors' Fifty-Sixth Omnibus Objection to Claims (Valued

Derivative Claims) [Docket No.11613], dated September 24, 2010 (the "Objection").  In support

of its Response, Astrea respectfully states as follows:

**BACKGROUND**

1.      On July 11, 2006, Astrea and Lehman Brothers Special Financing Inc. ("LBSF",

together with Astrea, the "Parties") entered into an ISDA Master Agreement that governs the

terms of certain swap transactions entered into between the Parties (together with the appurtenant

Schedule dated as of the same date,[1] the "ISDA Master").  The Parties entered into two transactions under the ISDA Master evidenced by two confirmations: one dated July 21, 2006 in relation to amounts denominated in euros and the other dated July 24, 2006 in relation to amounts denominated in U.S. dollars (such confirmations together with the ISDA Master, the "Agreement").[2]

2.        Lehman Brothers Holdings Inc. ("LBHI") was designated as a Credit Support Provider in relation to LBSF, and LBHI issued a guarantee dated July 11, 2006 in relation to LBSF's obligations under the Agreement as a Credit Support Document (the "Credit Support Document").  The Agreement provides that, in the event that LBHI ceased to be in compliance with one or more of the minimum rating requirements set forth therein (each a "Required Rating"), LBSF is required to, inter alia, activate the mark-to-market collateral arrangements set out in the Credit Support Document and post collateral in accordance with, inter alia, the Agreement and such Credit Support Document.

3.        On July 17, 2008, LBHI ceased to be in compliance with a Required Rating.  As required pursuant to the Credit Support Document, LBSF transferred to HSBC Corporate Trustee Company (UK) Limited as Trustee of the Declaration of Trust (the "Trustee") cash in the amount of not less than $1,760,000 (the "Posted Collateral") as specified in that certain Declaration of Trust dated August 15, 2008 entered into among LBHI, Lehman Brothers International (Europe) ("LBIE") and the Trustee (the "Declaration of Trust") and governed under English law.  Astrea is

---

[1]   Capitalized terms not defined herein shall have the meaning ascribed to them in the ISDA Master and the Declaration of Trust, as applicable.

[2]   In accordance with the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated as of April 19, 2010, all of the information and documentation submitted by Astrea in connection with the Claims (as defined herein) and Questionnaires (as defined herein) are part of the record and incorporated herein.  Astrea is not required to submit them in connection with this Response.

a beneficiary of the Declaration of Trust.  Under English law, legal title in the Posted Collateral

vests with the Trust for disposition in accordance with the Declaration of Trust.

4.       Pursuant to the Declaration of Trust, in the event that the Agreement is terminated

and LBSF owes a Settlement Amount to Astrea, upon receipt of notification from Astrea of such

termination, LBIE is required to calculate the Beneficial Entitlement, as that term is defined in

the Declaration of Trust, with respect to the Posted Collateral and notify the Trustee of such

amount together with Astrea's payment details and, upon receipt of such notification from LBIE,

the Trustee is required to transfer such amount to Astrea.

5.       On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of

title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the

Southern District of New York (the "Court").  On October 3, 2008, LBSF commenced a

voluntary case in this Court under the Bankruptcy Code.  These chapter 11 cases, as well as the

chapter 11 cases of certain affiliates of LBHI (such affiliates together with LBHI and LBSF, the

"Debtors"), have been consolidated for procedural purposes only and are being jointly

administered pursuant to the Federal Rules of Bankruptcy Procedure.

6.       The LBHI chapter 11 filing constituted an Event of Default under Section

5(a)(vii) of the ISDA Master.  On September 16, 2008, Astrea exercised its rights under Section

6(a) of the ISDA Master and designated September 18, 2008 as the Early Termination Date.

Additionally, by notices dated September 17, 2008 and delivered to LBSF, LBIE and LBHI

Astrea requested that LBIE calculate the Beneficial Entitlement amount with respect to the

Posted Collateral in accordance with the Declaration of Trust, notify the Trustee of such amount

and direct the Trustee to transfer such amount to Astrea.

7.      On November 18, 2008, Astrea delivered calculation statements (the "Calculation Statement") to LBSF, LBIE and LBHI pursuant to Section 6(d)(i) of the ISDA Master.  The Calculation Statement included market quotes given by market-makers as of the Early Termination Date.  The Calculation Statements reflect that LBSF owed Astrea Settlement Amounts with respect to both transactions.  In accordance with the Declaration of Trust, the Calculation Statement also served as notification to LBIE of such amounts and directed the Trustee to transfer such amounts to Astrea.

8.      To date, LBIE has failed to perform including failing to calculation the Beneficial Entitlement under the Declaration of Trust, accordingly, no amounts have been transferred to Astrea pursuant to the Declaration of Trust.  Astrea has a claim against LBSF for the entirety of the Settlement Amounts (and such other amounts as permitted under the Agreement and as set forth in the LBSF Claim).[3]

9.      On July 2, 2009, the Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

10.     Pursuant to the Bar Date Order, on September 22, 2009, Astrea filed a proof of claim against LBSF (the "LBSF Claim") and a proof of claim against LBHI (the "LBHI Claim" and together with the LBSF Claim, the "Claims") with respect to the Settlement Amounts and other amounts (as further described in the Claims and Questionnaires) and on October 20, 2009, Astrea submitted derivative and guarantee questionnaires pursuant to the Bar Date Order (collectively, the "Questionnaires").

---

[3]     Astrea has a secured claim for amounts payable to Astrea under the Agreement and Declaration of Trust to the extent of the Beneficial Entitlement and an unsecured claim for the portion of the LBSF Claim that is in excess of the Beneficial Entitlement.

11.     By its Objection, the Debtors are seeking to reduce both the LBSF Claim and the

LBHI Claim by over 60 percent and to reclassify the LBSF Claim from secured to unsecured.

12.     The Objection summarily states that the claims appearing in the objection "are

greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors

after a review of the supporting documentation provided by the claimants and the Debtors' books

and records" and in certain instances the claims should be reclassified "because the

classifications are improperly identified as secured claims."  Objection at ¶ 13.  The Objection

also sets forth a generic description of the "multi-step process" used by the Debtors to review

claims based on derivative contracts.  However, the Objection fails to identify any basis to

support an objection to the Claims.  The Debtors also have failed to address Astrea's rights to

payment of the Beneficial Entitlement pursuant to the Declaration of Trust.

13.     The Agreement is clear that upon an occurrence of an Event of Default, the Non-

Defaulting Party may declare a Termination Event and designate an Early Termination Date.  In

addition,  the Non-Defaulting Party is entitled to calculate the Settlement Amount and send

notice of same to the Defaulting Party.  The Agreement specifies Market Quotation Second

Method as the calculation method to be employed and in the event that Market Quotation is not

available, Loss methodology can be used alternatively.

## ARGUMENT

**A.     The Applicable Standard**

14.     A properly filed proof of claim is deemed allowed unless a party in interest

objects. 11 U.S.C. §502(a). Section 502(b) provides, in pertinent part, that if an objection to a

claim is made, the court, after notice and a hearing, shall determine the amount of the claim and

shall allow the claim in such amount except to the extent that one of the exceptions enumerated

in section 502(b) applies.  11 U.S.C. §502(b); *In re Rockefeller Center Properties*, 272 B.R. 524,

539 (Bankr. S.D.N.Y. 2000).  A properly filed proof of claim[4] is *prima facie* evidence of the

validity and amount of the claim.  Fed. R. Bankr. P. 3001(f).

15.     Following the establishment of a claim's *prima facie* validity, the burden shifts to

the objector to show "sufficient evidence" to negate such *prima facie* validity.  *In re Adelphia

Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15 (Bankr. S.D.N.Y., Feb.

20, 2007); *J.P. Morgan Sec's., Inc. v. Spiegel Creditor Trust (In re Spiegel, Inc.)*, Case Nos. 03-

11540 (BRL), 06-CV-13477 (CM), 2007 WL 2456626 at * 15 n.6 (S.D.N.Y. Aug. 22, 2007).

Such "sufficient evidence" must be of equal or greater probative force to that of the proof of

claim which, if believed, would refute at least one of the allegations that is essential to the

claim's legal sufficiency.  In *re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (*internal

quotations omitted*) (quoting *In re Allegheny Intern., Inc.* 954 F.2d 167, 173-174 (3d Cir. 1992)

quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)); *In re Spiegel, Inc.*, 2007 WL 2456626 at

*15; *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (evidence must be

of equal force).  "Mere objections" do not constitute "sufficient evidence" and are insufficient to

refute a claimant's *prima facie* evidence.  See *Riverbank, Inc. v. Make Meat Corp. (In re Make

Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999)

("The case law is clear.  To prevail, the objector must affirmatively *produce* evidence to counter

the creditor's claim.").

16.     If the objector overcomes its burden and puts forth such "sufficient evidence" the

burden of going forward shifts back to the claimant and the claimant "is required to meet the

---

4       The Objection does not allege that the Claims were not properly filed.

usual burden of proof to establish the validity of the claim." *In re Adelphia Comm's Corp.*, Case

No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15-16; *In re Oneida Ltd.*, 400 B.R. at 389.

**B.      The Debtors Have Not Put Forth Evidence to Rebut the Claims**

17.      In order for the Debtors to satisfy their burden, the Debtors would have to put

forth sufficient evidence to demonstrate that Astrea failed to calculate the Settlement Amounts in

accordance with the Agreement.  The Debtors did not put forth any "evidence" to rebut the *prima*

*facie* validity of the Claims.  Instead, the Objection summarily asserts that the amounts of the

Claims are "greater than the fair, accurate, and reasonable value of the claim as determined by

the Debtors" and in certain instances the claims should be reclassified "because the

classifications are improperly identified as secured claims."[5]  Objection at ¶ 13.

18.      The Debtors' sole statement with respect to the fairness, reasonableness and

accuracy of the amount of the Claims is conclusory and amounts to, at best, a mere assertion.

The same is true for the assertion that the LBSF Claim should be "reclassified to the

classifications listed under… "*Modified Class*" because the classifications are improperly

identified as secured claims."  Objection at ¶ 13.  The Debtors have not put forth any evidence

(or even any assertion) that would challenge Astrea's interest in the Posted Collateral.

19.      The transactions  at issue are not complex[6] and market quotations from referenced

market makers are the best evidence of value under Market Quotation and/or Loss

methodologies.  The Agreement is clear that the Non-Defaulting Party is the party that is entitled

---

[5]    The Objection also describes the Debtors' purported "thorough, multi-step process to review claims," which in
       general terms is set forth as follows: "collect and review documents… reconcile posted collateral…review
       valuation methodology."  Following the implementation of such process the Debtors apparently sought review
       of the Proposed Settlement Amount from the Settlement Adjudication Committee, as those terms are defined in
       the Objection.  Objection at ¶¶ 13-15.  It is the Debtors' senior management and chief restructuring officer,
       Alverez & Marsal, that make up the "committee".

[6]    The transactions consist of two confirmations with respect to interest rate swaps.

08-13555-mg Doc 12313 Filed 10/27/10 Entered 10/27/10 12:53:54 Main Document
Pg 8 of 9

to calculate Settlement Amounts. LBSF as the Defaulting Party is not entitled pursuant to the Agreement to merely put forth its own Settlement Amount.

20. The Debtors have not met their burden of refuting the Claims which would shift the burden of proving the Claims to Astrea. The burden remains with the Debtors to produce "sufficient evidence" that Astrea's calculations do not comply with the Agreement.

21. Astrea reserves its right to file a supplemental and/or amended response to the Objection shall it deem it necessary. To the extent that an evidentiary hearing is necessary on the merits of Astrea's Claims, Astrea reserves the right to request a full evidentiary hearing pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the basis for the calculation of and amount of the Claims.

WHEREFORE, Astrea respectfully requests that the Bankruptcy Court (i) overrule the Objection as it pertains to Astrea's Claims, and (ii) grant Astrea such further relief as the Bankruptcy Court deems just or, in the alternative, (iii) schedule a Claims Litigation Hearing and permit discovery in connection therewith.

Dated:      New York, New York
            October 27, 2010

                                        CLIFFORD CHANCE US LLP


                                        By: /s/ Jennifer C. DeMarco
                                            Jennifer C. DeMarco
                                            Jennifer B. Premisler

                                            31 West 52nd Street
                                            New York, NY 10019
                                            Tel:  (212) 878-8000
                                            Fax:  (212) 878-8375

*Attorney for Astrea LLC*