**Hearing Date and Time: November 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: November 10, 2010 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                          :
In re                                     :     Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :     08-13555 (JMP)
                                          :
                    Debtors.              :     (Jointly Administered)
                                          :
-----------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION, PURSUANT TO
SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER
MODIFYING THE AUTOMATIC STAY TO ALLOW ADVANCEMENT
UNDER (I) 2007-2008 DIRECTORS AND OFFICERS INSURANCE POLICIES
BY ZURICH AMERCIAN INSURANCE COMPANY, ACE BERMUDA INSURANCE
LTD. AND ST. PAUL MERCURY INSURANCE COMPANY, AND (II) 2008-2009
DIRECTORS AND OFFICERS INSURANCE POLICIES BY XL SPECIALTY
INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases (together, the "Debtors") for relief from the automatic stay, to the extent applicable, to

permit certain of the Debtors' insurers of directors' and officers' liability to make payment of

covered defense costs, advancement of covered defense costs or both incurred by the Debtors'

current and former officers, directors, and employees that have been named as defendants in

various legal proceedings, all as more fully described in the Motion, will be held before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court"), on **November 17, 2010 at 10:00 a.m. (Prevailing**

**Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn:  Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United

States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street,

21st Floor, New York, New York 10004, Attn:  Tracy Hope Davis, Esq., Andy Velez-Rivera,

Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq. and Linda Riffkin, Esq.; (iv) Milbank,

Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:

Dennis F. Dunne, Esq., Evan Fleck, Esq. and Dennis O'Donnell, Esq., attorneys for the official

committee of unsecured creditors appointed in these cases; (v) Troutman Sanders LLP, 401 9th

Street, N.W., Suite 1000, Washington, D.C. 20004-2134, Attn: Gary V. Dixon, Esq., Stacey L.

McGraw, Esq. and Meredith E. Werner, Esq., attorneys for XL Specialty Insurance Co.; (vi)

DLA Piper US LLP, 1251 Avenue of the Americas, New York, New York 10020-1104, Attn: Stephen P. Davidson, Esq. and Miles D. Norton, Esq., attorneys for Federal Insurance Co., (vii) Bailey Cavalieri LLC, One Columbus, 10 West Broad St., Suite 2100, Columbus, Ohio 43215-3422, Attn: Thomas E. Geyer, Esq. and Robert Eblin, Esq., attorneys for Zurich American Insurance Co., (vii) Walker Wilcox Matousek LLP, 225 W. Washington St., Chicago, Illinois 60606, Attn: James Huberty, Esq. and William Zeller, Esq., attorneys for ACE Bermuda Insurance Ltd., and (viii) Bailey Cavalieri LLC, One Columbus, 10 West Broad St., Suite 2100, Columbus, Ohio 43215-3422, Attn: Thomas E. Geyer, Esq. and Robert Eblin, Esq., attorneys for St. Paul Mercury Insurance Co., so as to be so filed and received by no later than **November 10, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  October 27, 2010
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
: 
**In re**                                         :        **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
: 
**Debtors.**             :        **(Jointly Administered)**
: 
----------------------------------------------------------------x

**DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY
CODE, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW
ADVANCEMENT UNDER (I) 2007-2008 DIRECTORS AND OFFICERS INSURANCE
POLICIES BY ZURICH AMERCIAN INSURANCE COMPANY, ACE BERMUDA
INSURANCE LTD. AND ST. PAUL MERCURY INSURANCE COMPANY, AND (II)
2008-2009 DIRECTORS AND OFFICERS INSURANCE POLICIES BY XL SPECIALTY
INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this Motion and respectfully

represent:

**Preliminary Statement**

1.        On three prior occasions, the Debtors have sought and obtained orders

modifying the automatic stay provided for under section 362(a) of title 11 of the United States

Code (the "Bankruptcy Code"), to the extent applicable, to remove any impediments to payment by certain of the Debtors' primary and excess insurers of directors' and officers' liability of defense costs and fees that current or former directors, officers and employees of the Debtors were incurring as defendants in ongoing federal securities lawsuits and regulatory and other actions and investigations.[1]  By this Motion, the Debtors seek the entry of a similar form of order granting relief from the automatic stay with respect to (i) Zurich American Insurance Company ("Zurich"), ACE Bermuda Insurance Ltd. ("ACE") and St. Paul Mercury Insurance Co. ("St. Paul"), the fifth, sixth and seventh excess insurers, respectively, under the Debtors' 2007-2008 directors and officers liability insurance program (the "2007-2008 D&O Policies"), and (ii) XL Specialty Insurance Company ("XL") and Federal Insurance Company ("Chubb"), the primary and first excess insurers under the Debtors' 2008-2009 directors and officers liability insurance program (the "2008-2009 D&O Policies," together with the 2007-2008 D&O Policies, the "D&O Policies").[2]

2.       For Claims[3] made against the Individual Defendants (defined below) during the period from May 16, 2007 to May 16, 2008 (the "2007-2008 D&O Policy Period"),

---

[1] *See* Orders dated March 25, 2009 [Docket No. 3220] (modifying automatic stay to allow advancement of defense costs with respect to XL Specialty Insurance Co. with respect to the 2007-2008 Policy Period); November 23, 2009 [Docket No. 5906] (modifying the automatic stay to allow advancement of defense costs with respect to Federal Insurance Co. with respect to the 2007-2008 D&O Policy Period); and August 20, 2010 [Docket No. 10945] (modifying the automatic stay to allow advancement of defense costs with respect to Continental Casualty Co., Certain Underwriters at Lloyd's London, and U.S. Specialty Insurance Co. with respect to the 2007-2008 D&O Policy Period) (collectively, the "Prior Stay Orders").  Concurrently herewith, the Debtors are filing a motion for relief from the automatic stay, to the extent applicable, to permit Certain Underwriters at Lloyd's, London to advance $10 million of insurance proceeds for the payment of settlement costs in accordance with a settlement agreement among Alex E. Booth, the Booth Foundation, Inc. and Richard S. Fuld (the "Settlement Advancement Motion").

[2] A copy of the 2007-2008 primary D&O Policy and the Zurich, ACE and St. Paul excess Policies are attached hereto as Exhibits A, B, C and D, respectively.  A copy of the 2008-2009 primary D&O Policy and the Chubb excess Policy are attached hereto as Exhibits E and F, respectively.

[3] Capitalized terms not defined herein shall have the meanings ascribed to them in the applicable Policies.

the Debtors purchased the primary 2007-2008 D&O Policy from XL plus additional excess coverage for this period from a number of other carriers of up to $250 million in the aggregate. The excess policies are all "follow form" policies subject to additional independent terms and conditions. That is, the terms and conditions of the primary 2007-2008 D&O Policy govern the terms and conditions of each of the excess 2007-2008 D&O Policies, except that each excess insurer's obligations are subject to certain additional terms, such as limits of liability, and attach only after all Loss within the respective Limits of Liability of the underlying Policies has been paid.

3.    Similarly, for Claims made against Individual Defendants during the period from May 16, 2008 to May 16, 2011 (the "2008-2009 D&O Policy Period"),[4] the Debtors purchased the primary 2008-2009 D&O Policy from XL plus additional excess coverage for this period from a number of other carriers also of up to $250 million in the aggregate. Similar to the excess 2007-2008 D&O Policies, the excess 2008-2009 D&O Policies generally "follow form" to the primary 2008-2009 D&O Policy subject to certain additional terms, such as limits of liabilities, and are triggered only after all Loss within the underlying layers of coverage has been paid.

4.    As noted above, the Court has entered three Prior Stay Orders modifying the automatic stay to allow for the payment of defense costs and fees by the Debtors' primary and first through fourth excess insurers for the 2007-2008 D&O Policy Period providing coverage of $70 million in the aggregate. In addition, on December 17, 2009, the Court entered an order modifying the automatic stay to permit the payment of settlement amounts by XL and

---

[4] On June 17, 2010, the Court entered an order granting the Debtors' motion for authority to purchase an additional "tail" (or "run-off" period) for the 2008-2009 D&O Policies to extend the period during which notice of Claims may be made under the 2008-2009 D&O Policies through May 16, 2011. *See* Docket No. 9643.

Chubb under the 2007-2008 D&O Policy totaling $1,675,000.  *See* Docket No. 6297.  Due to the continued state of ongoing legal proceedings as well as the settlement payment that will be made if the Court approves the Settlement Advancement Motion, it is anticipated that the proceeds available under those levels of the 2007-2008 D&O Policies for which relief from the automatic stay, to the extent applicable, has been authorized will be exhausted by approximately the end of November 2010.  Accordingly, the individual Insureds will need to look to the fifth, sixth and seventh excess insurers for the 2007-2008 D&O Policy Period for coverage, which was procured pre-petition by the Debtors for the benefit of their directors, officers, and employees.  Collectively, Zurich, ACE and St. Paul provide $55 million in coverage in excess of $70 million for the 2007-2008 D&O Policy Period.[5]

5.     The insurers for the 2008-2009 D&O Policy Period have recognized coverage for certain of the Legal Proceedings (defined below).  Accordingly, the individual Insureds will look to XL and Chubb, the primary and first excess insurers, respectively, for the 2008-2009 D&O Policy Period, for payment of legal bills and costs that have been accruing since approximately May 12, 2009.  Collectively, XL and Chubb provide $35 million in coverage for the 2008-2009 D&O Policy Period.[6]

6.     As with the Prior Stay Orders, the Debtors seek to assure the insurers that are the subject of this Motion that they can make payment of directors and officers coverage of defense costs and fees without concern that, if the automatic stay is otherwise applicable, they are violating the automatic stay.  Granting the relief requested by this Motion is unlikely to have

---

[5] Specifically, Zurich provides coverage of $15 million in excess of $70 million, ACE provides coverage of $25 million in excess of $85 million and St. Paul provides coverage of $15 million in excess of $110 million.

[6] Specifically, XL provides coverage of an initial $20 million and Chubb provides coverage of $15 million in excess of $20 million.

any adverse effect on the Debtors' estates and creditors because the interests of the Debtors, if any, in the proceeds of the D&O Policies is expressly subordinate to the interest of the individual Insureds. Specifically, the applicable insurance policies provide that the Debtors have rights to the insurance proceeds only after the insured individuals are fully reimbursed for any "Loss," including defense costs. In addition, confirming the insurers' ability to pay such defense costs and fees is in the best interests of the Debtors because it will avoid the possible collateral estoppel effect on the Debtors that could result if the individual Insureds' inability to defend themselves were to give rise to judgments and findings that impacted direct claims against the Debtors or to indemnification claims against the Debtors.

### Background

7.     Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

9.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

10.     On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531].

11.     On April 14, 2010, the Debtors filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

12.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

13.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

14.     The Debtors request the entry of an order granting relief from the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow payments and/or advancements by (i) Zurich, ACE and St. Paul for the 2007-2008 D&O Policy Period, and (ii) XL and Chubb for the 2008-2009 D&O Policy Period of Defense Expenses that are, or will become, owing to the Individual Defendants pursuant to the terms of their respective policies.  The Debtors further request that the Court waive the

requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested

relief be effective immediately.

### The Debtors' Directors and Officers Liability Insurance Policies

15.    Pursuant to their advancement and indemnification obligations expressed

in their by-laws and certificate of incorporation, the Debtors purchased primary and excess

directors and officers liability ("D&O") insurance, which provides coverage for the Debtors'

current and former officers, directors, and employees in connection with civil, criminal,

regulatory and other actions and investigations.  As noted above, for Claims made against the

Individual Defendants during the 2007-2008 D&O Policy Period, the Debtors purchased the

primary 2007-2008 D&O Policy and sixteen excess D&O Policies providing, in the aggregate,

$250 million in D&O coverage.  Similarly, for Claims made against the Individual Defendants

during the 2008-2009 D&O Policy Periods, the Debtors purchased the primary 2008-2009 D&O

Policy and seventeen excess D&O Policies providing, in the aggregate, $250 million in D&O

Coverage.  Additionally, the Debtors have received authority to purchase a one-year "tail" or

"run-off" extension of the 2008-2009 D&O Policies, extending the period during which notice of

claims may be made under 2008-2009 D&O Policies from May 16, 2010 through and including

May 16, 2011.  *See* Docket No. 9643.

16.    Subject to their terms, conditions, limitations and exclusions, the 2007-

2008 D&O Policies and the 2008-2009 D&O Policies cover Loss (including Defense Expenses,

settlements and judgments, among other things) incurred as a result of Claims made during the

Policy Period for Wrongful Acts allegedly committed by the Individual Defendants in their

capacity as directors, officers or employees of LBHI and its subsidiaries.  Coverage under

Insuring Agreement (A) for non-indemnifiable loss ("Side A") of the D&O Policies is

immediately available to Insured Persons, which includes certain of the Debtors' present and

former officers, directors, and employees, for any Loss resulting from Claims made under the D&O Policies that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

17.    Furthermore, both the 2007-2008 D&O Policies and the 2008-2009 D&O Policies contain "Priority of Payments" provisions, which provide that when competing claims for coverage under both Side A, as described above, and Insuring Agreement (B) (covering indemnifiable Claims made against present and former officers, directors and employees) are made, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ." *See* 2007-2008 D&O Policies, Endorsement 22; 2008-2009 D&O Policies, Endorsement 11.  Thus, each of the D&O Policies, by virtue of Insuring Agreement A and the Priority of Payments clauses, provides for the immediate payment of the Individual Defendants' Defense Expenses ahead of any payment that may be made to the Debtors.

### The Legal Proceedings

18.    Certain former and current directors, officers, and employees of the Debtors (collectively, the "Individual Defendants") are defendants in one or more of multiple civil actions brought on behalf of purported classes and individuals and/or are within the scope of certain arbitrations or criminal, regulatory or other investigations (collectively, the "Legal Proceedings") described below.  Though Debtors were named as defendants in some of the Legal Proceedings, they are not participating in those proceedings pursuant to the automatic stay.

19.    Both prior to and after the collapse of the Lehman enterprise in September 2008, various securities actions were commenced against certain officers and directors in both federal and state court.  Many of these actions assert, among other claims, violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and sections 11, 12 and 15 of the

Securities Act of 1933 (the "Securities Act"), and arise from various alleged wrongful actions of

certain Individual Defendants in connection with securities issued by LBHI. Most of these

actions have been consolidated at least for pre-trial purposes before the Honorable Lewis Kaplan

in the United States District Court for the Southern District of New York. A second set of

actions alleging violations of sections 11, 12, and 15 of the Securities Act arise from alleged

wrongful actions of certain of the Individual Defendants in connection with the plaintiffs'

purchase of mortgage-backed securities. These actions have been consolidated and are also

before Judge Kaplan. There are additional actions, investigations and arbitrations against certain

Individual Defendants arising out of Lehman-issued securities, auction-rate securities, issues

common to the class actions and other alleged conduct of the Individual Defendants, asserting

claims under the federal securities laws, various state laws and/or common law, and arising from

various allegedly wrongful actions of certain of the Individual Defendants.

      20.    Additionally, both the United States Department of Justice (by and

through the United States Attorney's Offices for the Southern and Eastern Districts of New

York, and for the District of New Jersey) as well as the United States Securities and Exchange

Commission and the New Jersey Bureau of Securities, have commenced formal grand jury and

regulatory investigations concerning the circumstances surrounding the collapse of the Lehman

enterprise and have issued various requests and subpoenas to both the Debtors and various

Individual Defendants.

      21.    In connection with the Legal Proceedings, the Individual Defendants have

incurred and will continue to incur Defense Expenses. Prior to the Commencement Date, in the

ordinary course of business and pursuant to the terms of their by-laws, the Debtors indemnified

and covered their officers and directors for defense costs incurred in legal proceedings.

Subsequent to the Commencement Date, however, the Debtors have been unable to continue to advance defense costs to the Individual Defendants.  That is why the Debtors sought the Prior Stay Orders and why they have filed the Settlement Advancement Motion.  As noted above, however, the existing layers of D&O coverage for which stay relief has been authorized under the 2007-2008 D&O Policies have been, or will shortly become, exhausted.  Thus, the obligations of Zurich, ACE and St. Paul for the 2007-2008 D&O Policy Period will soon be triggered.  Similarly, because XL and Chubb have recognized coverage for certain of the Legal Proceedings for the 2008-2009 D&O Policy Period, the Individual Defendants will be looking to XL and Chubb for payment of their outstanding defenses costs and fees under the 2008-2009 D&O Policies.  Accordingly, the Debtors are seeking the relief requested herein to ensure that the Individual Defendants will continue to have access to funding of additional defense costs under, and consistent with, the terms of the respective policies of these insurers.

**<u>Cause Exists to Grant the Relief Requested</u>**

22.     Pursuant to the Prior Stay Orders, this Court has granted relief that is identical to the relief sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors and Individual Defendants that are governed by the same terms and conditions.  Accordingly, because cause to modify the automatic stay to allow for the advancement of insurance proceeds to pay defense costs was found to exist in the Prior Stay Orders, *a fortiori*, such cause exists here as well.  If, however, the Debtors must independently demonstrate that such cause exists, as described below, it is beyond peradventure that such a modification of the automatic stay is warranted.

A.      The Policy Proceeds Are Not Property of the Estate

23.      Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate.  It is well settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code.  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988).  However, courts have distinguished between ownership of a *policy* and ownership of the *proceeds* of a policy.  While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds of such policy are not property of the bankruptcy estate.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *see In re First Cent. Fin. Corp.*,

238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity

coverage were highly remote and therefore proceeds were not property of estate).

24.    In determining whether proceeds are property of the estate, courts review

the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. *See also In re*

*CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455

(Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must

be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the

pertinent contractual provisions under applicable state law").

25.    Here, the 2007-2008 D&O Policies and the 2008-2009 D&O Policies

contain unambiguous priority of payment provisions that expressly subordinate any potential

rights of the Debtors to proceeds payable under the policies to the rights of the Individual

Defendants.  The priority of payment endorsements are enforceable contractual provisions and

should be upheld for the benefit of the Individual Defendants as intended.  *See In re Enron*

*Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11, 2002) [Docket No. 3278] (holding that

priority of payment provision was an enforceable contractual right).[7]

26.    Consistent with the purpose of such policies, the Debtors purchased the

2007-2008 D&O Policies and 2008-2009 D&O Policies primarily to provide insurance coverage

to their officers and directors, including the Individual Defendants.  *See In re First Cent. Fin.*

*Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O Policy

remains a safeguard of officer and director interests and not a vehicle for corporate protection.").

The Debtors' speculative rights to any residual proceeds, which would be payable only in the

event that the Debtors indemnified the Individual Defendants and which are subject to an express

---

[7] A copy of the Court's bench ruling in *Enron* is attached hereto at Exhibit G.

contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.      Cause Exists to Modify the Automatic Stay, to the Extent
        That it Applies, to Allow Payment of Defense Costs Under the Policies.

        27.     Even if the proceeds of the policies are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow the payment of defense costs under the applicable policies.  It is not uncommon for courts to grant stay relief to allow payment of defense costs or settlement costs to directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary.  *See Allied Digital*, 306 B.R. at 513.

        28.     Allowing the insurers to advance defense costs and fees to the Individual Defendants will, in fact, benefit the Debtors' estates.  The Legal Proceedings are highly complex. If the Individual Defendants are not adequately represented, it is foreseeable that a finding of wrongdoing or liability against the Individual Defendants may be used, or attempted to be used, to judicially prejudice or prosecute claims against the Debtors.  Granting the requested relief will also alleviate the Individual Defendants' concern that they will personally be liable for their own defense costs.

        29.     Additionally, the Debtors believe that they have an obligation under their by-laws to advance the defense costs and fees incurred by the Individual Defendants.  In connection with the Legal Proceedings, the Individual Defendants have and will continue to incur significant defense costs, which, if unsatisfied, may potentially be asserted by some or all of the Individual Defendants against the Debtors' estates.[8]  Consequently, coverage of the

---

[8] Certain of the Individual Defendants have filed protective proofs of claim against the Debtors.

Individual Defendants under the Policies will reduce or eliminate the claims that the Individual

Defendants could assert against the Debtors.

30.    Modifying the automatic stay will not harm the Debtors' estates.  As

explained above, any rights the Debtors have to the proceeds of the D&O Policies are

contractually subordinated to the rights of the Individual Defendants pursuant to the priority of

payments clauses.  In addition, at this time, the Debtors' need for coverage is speculative given

that the Debtors are not making advancements to the Individual Defendants during the chapter 11

cases for their defense costs.

31.    Accordingly, the Debtors respectfully submit that there are no legal

impediments to the direct payment or advancement by the Insurers under their respective D&O

Policies to the Individual Defendants for their costs of defense.  Alternatively, if this Court finds

that the Debtors have some interest in the proceeds of the D&O Policies, the Debtors submit that

any such interest is nominal and in any event cannot be determined until the Individual

Defendants' losses have been quantified and paid.  Advancing the Individual Defendants'

defense costs pursuant to the D&O Policies is necessary to minimize those losses.  Accordingly,

cause exists to modify the automatic stay pursuant to section 362(d) of the Bankruptcy Code, to

the extent it applies, to allow the Zurich, ACE, St. Paul, XL and Chubb to immediately

commence payment of outstanding and ongoing defense costs incurred by the Individual

Defendants pursuant to the terms and conditions of their respective D&O Policies.

32.    In making this motion, the Debtors, the Individual Defendants and the

Insurers are not waiving any of their respective rights under the D&O Policies.  In addition, the

Debtors are not seeking an advance determination of the insurers' obligations to pay any

particular expense or claim of the Individual Defendants.  Rather, the Debtors seek only the entry

of an order modifying the automatic stay, to the extent applicable, to allow these insurers to fulfill their obligations, whatever they may be, to pay Defense Expenses of the Individual Defendants under the terms of the respective D&O Policies, including amounts incurred both pre and post-petition, if and when they arise.

### Waiver of Bankruptcy Rule 4001(a)(3)

33.    To facilitate a smooth transition and avoid any interruption in coverage, the Debtors request that the order granting the Motion be effective immediately.

### Notice

34.    No trustee has been appointed in these cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) attorneys for each of Zurich, Ace, St. Paul, XL and Chubb. The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated:  October 27, 2010
        New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                 :

In re                                      :      **Chapter 11 Case No.**
                                                 :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :      **08-13555 (JMP)**
                                                 :

                       **Debtors.**       :      **(Jointly Administered)**
                                                 :
-------------------------------------------------------------------x

**ORDER GRANTING DEBTORS' MOTION, PURSUANT TO
SECTION 362 OF THE BANKRUPTCY CODE, FOR AN ORDER
MODIFYING THE AUTOMATIC STAY TO ALLOW ADVANCEMENT
UNDER (I) 2007-2008 DIRECTORS AND OFFICERS INSURANCE POLICIES
BY ZURICH AMERCIAN INSURANCE COMPANY, ACE BERMUDA INSURANCE
LTD. AND ST. PAUL MERCURY INSURANCE COMPANY, AND (II) 2008-2009
DIRECTORS AND OFFICERS INSURANCE POLICIES BY XL SPECIALTY
<u>INSURANCE COMPANY AND FEDERAL INSURANCE COMPANY</u>**

          Upon the motion, dated October 27, 2010 (the "<u>Motion</u>"), of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "<u>Debtors</u>" and, together with their non-

debtor affiliates, "<u>Lehman</u>"), pursuant to section 362(d) of title 11 to the United States Code (the

"<u>Bankruptcy Code</u>") and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the

"<u>Bankruptcy Rules</u>"), for an order modifying the automatic stay, to the extent applicable, to

allow (i) Zurich American Insurance Company ("<u>Zurich</u>"), ACE Bermuda Insurance Ltd.

("<u>ACE</u>") and St. Paul Mercury Insurance Co. ("<u>St. Paul</u>," together with Zurich and ACE, the

"<u>2007-2008 Insurers</u>"), the fifth, sixth and seventh excess insurers, respectively, under the

Debtors' 2007-2008 directors' and officers' liability insurance program (such primary policy,

together with each of the applicable excess policies, the "<u>2007-2008 D&O Policies</u>"), and (ii) XL

Specialty Insurance Company ("<u>XL</u>") and Federal Insurance Company ("<u>Chubb</u>"), the primary

and first excess insurers under the Debtors' 2008-2009 directors and officers liability insurance

program (such primary and first excess 2008-2009 policy, together with the 2007-2008 D&O

Policies, the "Policies"), to pay covered defense costs, advance covered defense costs, or both

incurred by the Individual Defendants[1] that have been named as defendants in the Legal

Proceedings, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the second amended order entered June 17, 2010 governing case

management and administrative procedures [Docket No. 9635] to (i) the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; (vi) all parties who have

requested notice in these chapter 11 cases; and, (vii) attorneys for each of Zurich, ACE, St. Paul,

XL and Chubb (collectively, the "Insurers"), and it appearing that no other or further notice need

be provided; and a hearing having been held to consider the relief requested in the Motion; and

the Court having found and determined that the relief sought in the Motion is in the best interests

of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code, the automatic stay, to the extent applicable, is hereby modified to, and without further order of this Court, allow payment of covered defense costs, advancement of covered defense costs, or both from the Insurers to the Individual Defendants pursuant to the terms of their respective Policies; and it is further

ORDERED the Debtors are authorized to execute all documentation necessary to allow the Insurers to pay covered defense costs, advance covered defense costs, or both incurred by the Individual Defendants in the Legal Proceedings; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the Insurers, the Debtors or the Individual Defendants provided for under the terms and conditions of the Policies; and it is further

ORDERED that all parties to the Policies reserve all rights and defenses that they would otherwise have with respect thereto; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that the fourteen-day stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated:  November __, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE