# **EXHIBIT C**

# **(ACE 2007-2008 EXCESS POLICY)**

US_ACTIVE:\43530682\07\58399.0003



# ACE BERMUDA INSURANCE LTD.

## EXCESS DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

THIS IS A CLAIMS MADE POLICY. Except as otherwise provided herein, this policy covers only Claims first made against the Insureds during the Policy Period. PLEASE READ THIS POLICY CAREFULLY.

### DECLARATIONS

Policy No.: LEHM-11742D

Item 1.    Insured Company: Lehman Brothers Holdings Inc.
Principal Address: 1301 Avenue of the Americas
New York, NY 10019
U.S.A.

Item 2.    Schedule of Underlying Policies:

| Carrier | Policy No. | Policy Period | Limits | Attachment |
|---|---|---|---|---|
| XL Specialty | ELU097792-07 | 5/16/2007-5/16/2008 | $20M | $10,000,000 |
| Federal Ins. Co. | 7043-0876 | 5/16/2007-5/16/2008 | $15M | Underlying |
| Cont. Cas. Co. | 267996454 | 5/16/2007-5/16/2008 | $10M | Underlying |
| Lloyds | B0509QA016907 | 5/16/2007-5/16/2008 | $10M | Underlying |
| US Specialty | 24-MGU-07-A14479 | 5/16/2007-5/16/2008 | $15M | Underlying |
| Zurich American | DOC 7995104 09 | 5/16/2007-5/16/2008 | $15M | Underlying |

Retention under Primary Policy: $10,000,000

Item 3.    Followed Policy:    Insurer: XL Specialty
Policy No.: ELU097792-07

Item 4.    Policy Period:    From 12:01 A.M.    May 16, 2007
To 12:01 A.M.    May 16, 2008
Local Time at the address shown in Item 1.

ACE D&O 03/00                         i

Item 5.   Aggregate Limit of Liability: **$25,000,000** each Policy Year for all Loss paid on behalf of all Insureds arising from all Claims first made during such Policy Year.

Item 6.   One Year Premium:   **Gross Premium:**   $891,000
                              **Commission:**      $  44,550
                              **Net Premium:**     $846,450

Three Year Premium: **N/A**
(Prepaid)

Discovery Period Premium: **150%** of the Policy Period Premium.

Item 7.   Currency: **United States Dollars**

Item 8.   Insurer:   ACE Bermuda Insurance Ltd.
                     ACE Global Headquarters
                     17 Woodbourne Avenue
                     Hamilton HM 08 Bermuda
                     Fax: (441)295-5221

Countersigned at Hamilton, Bermuda on the 25th day of July, 2007.

_[signature]_                                                    _[signature]_
Executive Vice President                                         Authorised Representative

THESE DECLARATIONS, TOGETHER WITH THE COMPLETED AND SIGNED APPLICATION AND THE POLICY FORM ATTACHED HERETO, CONSTITUTE THE INSURANCE POLICY.

I. INSURING CLAUSE

In consideration of the payment of the premium and in reliance upon all statements made in the application form including the information furnished in connection therewith, and subject to all terms, conditions, exclusions and limitations of this policy, the Insurer agrees to provide insurance coverage to the Insured Persons and, if applicable, the Insured Company in accordance with the terms, conditions, exclusions and limitations of the Followed Policy.

II. LIMIT OF LIABILITY

A. It is expressly agreed that liability for any covered Loss with respect to Claims first made in each Policy Year shall attach to the Insurer only after the insurers of the Underlying Policies, the Insured Company and/or the Insured Persons shall have paid, in the applicable legal currency, the full amount of the Underlying Limit for such Policy Year. The Insurer shall then be liable to pay only covered Loss in excess of such Underlying Limit up to its Aggregate Limit of Liability as set forth in Item 5 of the Declarations, which shall be the maximum aggregate liability of the Insurer under this policy with respect to all Claims first made in each Policy Year against all Insured Persons irrespective of the time of payment by the Insurer.

B. Multiple Claims based upon or arising out of the same, repeated, interrelated or causally connected Wrongful Acts, whether made against the same or different Insured Persons, shall be deemed to be a single Claim first made in the earliest Policy Year in which the first of such multiple Claims is made against any Insured Person; the Aggregate Limit of Liability shall apply only once to such multiple Claims.

C. In the event and only in the event of the reduction or exhaustion of the Underlying Limit by reason of the insurers of the Underlying Policies, the Insured Company and/or the Insured Persons paying, in the applicable legal currency, Loss otherwise covered hereunder, this policy shall: (i) in the event of reduction, pay excess of the reduced Underlying Limit, and (ii) in the event of exhaustion, continue in force as primary insurance; provided always that in the latter event this policy shall only pay excess of the retention applicable to the primary insurance as set forth in Item 2 of the Declarations, which retention shall be applied to any subsequent Loss in the same manner as specified in such primary insurance.

D. Notwithstanding any of the terms of this policy which might be construed otherwise, this policy shall drop down only in the event of reduction or exhaustion of the Underlying Limit and shall not drop down for any other reason including, but not limited to, uncollectibility (in whole or in part) of any underlying insurance. The risk of uncollectibility of such underlying insurance (in whole or in part) whether because of financial impairment or insolvency of an underlying insurer or for any other reason, is expressly retained by the Insured Persons and the Insured Company and is not in any way or under any circumstances insured or assumed by the Insurer.

III. UNDERLYING INSURANCE

A. This policy is subject to the same warranties, terms, conditions, exclusions and limitations (except as regards the premium, the amount and limits of liability, the policy period and except as otherwise provided herein) as are contained in or as may be added to the

ACE D&O 03/00                                    1

        Followed Policy and to the extent coverage is further limited or restricted thereby, to any other Underlying Policies. In no event shall this policy grant broader coverage than would be provided by any of the Underlying Policies.

    B.    It is a condition of this policy that the Underlying Policies shall be maintained in full effect with solvent insurers during the policy period listed in Item 2 of the Declarations except for any reduction or exhaustion of the aggregate limits contained therein by reason of Loss paid thereunder (as provided for in Section II (C) above). If the Underlying Policies are not so maintained, the Insurer shall not be liable under this policy to a greater extent than it would have been had such Underlying Policies been so maintained.

    C.    If during the Policy Period or any discovery period the terms, conditions, exclusions or limitations of the Followed Policy are changed in any manner, the Insured Company or the Insured Persons shall as a condition precedent to their rights under this policy give to the Insurer written notice of the full particulars thereof as soon as practicable but in no event later than 30 days following the effective date of such change. This policy shall become subject to any such changes upon the effective date of the changes in the Followed Policy, provided that the Insured Company shall pay any additional premium reasonably required by the Insurer for such changes.

    D.    As a condition precedent to their rights under this policy, the Insured Company or the Insured Persons shall give to the Insurer as soon as practicable written notice and the full particulars of (i) the exhaustion of the aggregate limit of liability of any Underlying Policy, (ii) any Underlying Policy not being maintained in full effect during the Policy Period, or (iii) an insurer of any Underlying Policy becoming subject to a receivership, liquidation, dissolution, rehabilitation or similar proceeding or being taken over by any regulatory authority.

IV.    GENERAL CONDITIONS

    A.    Discovery Period: If the Insurer or the Insured Company fails or refuses to renew or cancels this policy, the Insured Company or the Insured Persons shall have the right, upon payment of an additional premium as set forth in Item 6 of the Declarations, to elect an extension of the coverage granted by this policy, but only for Claims for any Wrongful Act committed, attempted or allegedly committed or attempted prior to the effective date of such nonrenewal, cancellation or termination. Any such election shall be made in writing to the Insurer in the time and manner and for the discovery period stated in the Followed Policy. If the elected discovery period constitutes a separate Policy Year as provided in Section V(F), the Aggregate Limit of Liability as set forth in Item 5 of the Declarations shall be reinstated with respect to such discovery period and shall be the maximum aggregate liability of the Insurer under this policy with respect to all Claims first made in such discovery period. Otherwise, the Aggregate Limit of Liability shall not be reinstated with respect to such discovery period but shall be a continuation of the Aggregate Limit of Liability applicable to the immediately preceding Policy Year. The offer of renewal terms and conditions or premiums different from those in effect prior to renewal shall not constitute refusal to renew.

    B.    Application of Recoveries: All recoveries or payments recovered or received subsequent to a Loss settlement under this policy shall be applied as if recovered or received prior to such settlement and all necessary adjustments shall then be made between the Insured

ACE D&O 03/00

2

Company or the Insured Person and the Insurer, provided always that the foregoing shall not affect the time when Loss under this policy shall be payable.

C. Notice: All notices under any provisions of this policy shall be in writing and given by prepaid express courier or electronic service properly addressed to the appropriate party at the respective address as shown in the Declarations. Notice so given shall be deemed to be received and effective upon actual receipt thereof or one day following the date the notice is sent, whichever is earlier. Notice to the Insurer of any Claim or circumstance shall be directed to the attention of the Insurer's Claims Department. All other notices to the Insurer shall be directed to the attention of the Insurer's Underwriting Department.

D. Cooperation: The Insured Company and the Insured Persons shall give the Insurer such information and cooperation as it may reasonably require.

E. Premium: The premium under this policy is a flat premium and is not subject to adjustment except as otherwise provided herein. The premium shall be paid to the Insurer at its address as shown in the Declarations.

F. Cancellation Clause: This policy may be cancelled by the Insured Company at any time by written notice or surrender of this policy to the Insurer. This policy may also be cancelled by, or on behalf of, the Insurer by giving written notice to the Insured Company, at the address shown in the Declarations, stating when, not less than the notice period set forth in the Followed Policy for cancellation by the insurer, the cancellation shall become effective. This policy shall terminate at the date and hour specified in such notice. If this policy shall be cancelled by the Insured Company, the Insurer shall retain the customary short rate proportion of premium hereon. If this policy shall be cancelled by or on behalf of the Insurer, the Insurer shall retain the pro-rata proportion of the premium hereon. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

G. Changes and Assignment: Notice to or knowledge possessed by any person shall not effect waiver or change in any part of this policy or estop the Insurer from asserting any right under the terms of this policy. The terms of this policy shall not be waived or changed, and no assignment of any interest under this policy shall bind the Insurer, except as provided by endorsement issued to form a part hereof, signed by the Insurer or its authorized representative.

H. Arbitration:

(a) Any dispute, controversy or claim arising out of or relating to this policy or the breach, termination or invalidity thereof shall be finally and fully determined in London, England under the provisions of the Arbitration Acts of 1950, 1975, 1979 and 1996, and/or any statutory modifications or amendments thereto, for the time being in force, by a Board composed of t hree arbitrators to be selected for each controversy as follows:

Any party may, in the event of a dispute, controversy or claim, notify the other party or parties to such dispute, controversy or claim of its desire to arbitrate the matter, and at the time of such notification the party desiring arbitration shall notify the other party or parties of the name of the arbitrator selected by it. The other party who has been so notified shall

ACE D&O 03/00          3

        within thirty (30) calendar days thereafter select an arbitrator and notify the party desiring arbitration of the name of such second arbitrator. If the party notified of a desire for arbitration shall fail or refuse to nominate the second arbitrator within thirty (30) calendar days following the receipt of such notification, the party who first served notice of a desire to arbitrate will, within an additional period of thirty (30) calendar days, apply to a judge of the High Court of Justice of England and Wales for the appointment of a second arbitrator and in such a case the arbitrator appointed by such a judge shall be deemed to have been nominated by the party or parties who failed to select the second arbitrator. The two arbitrators, chosen as above provided, shall within thirty (30) calendar days after the appointment of the second arbitrator choose a third arbitrator. In the event of the failure of the first two arbitrators to agree on a third arbitrator within said thirty (30) calendar day period, either of the parties may within a period of thirty (30) calendar days thereafter, after notice to the other party or parties, apply to a judge of the High Court of Justice of England and Wales for the appointment of a third arbitrator and in such case the person so appointed shall be deemed and shall act as a third arbitrator. Upon acceptance of the appointment by said third arbitrator, the Board of Arbitration for the controversy in question shall then be deemed fixed. All claims, demands, denials of claims and notices pursuant to this Condition H shall be given in accordance with Condition C above.

(b)     The Board of Arbitration shall fix, by a notice in writing to the parties involved, a reasonable time and place for the hearing and may prescribe reasonable rules and regulations governing the course and conduct of the arbitration proceeding, including, without limitation, discovery by the parties.

(c)     The Board of Arbitration shall, within ninety (90) calendar days following the conclusion of the hearing, render its decision on the matter or matters in controversy in writing and shall cause a copy thereof to be served on all the parties thereto. In case the Board of Arbitration fails to reach a unanimous decision, the decision of the majority of the members of said Board shall be deemed to be the decision of the Board and the same shall be final and binding on the parties thereto. Such decision shall be a complete defense to any attempted appeal or litigation of such decision in the absence of fraud or collusion. Without limiting the foregoing, the parties waive any right to appeal, and/or seek collateral review of the decision of the Board of Arbitration by any court or other body to the fullest extent permitted by applicable law.

(d)     Any order as to the costs of arbitration shall be in the sole discretion of the Board of Arbitration, who may direct to whom and by whom and in what manner the costs, shall be paid.

(e)     The Insurer and the Insureds agree that in the event that claims for indemnity or contribution are asserted in any action or proceeding against the Insurer by any of the Insureds' other insurers in any jurisdiction or forum other than that set forth in this Condition H, the Insureds will in good faith take all reasonable steps requested by the Insurer to assist the Insurer in obtaining a dismissal of these claims (other than on the merits) and will, without limitation, undertake to the court or other tribunal to reduce any judgment or award against such other

insurers to the extent that the court or tribunal determines that the insurer would have been liable to such insurers for indemnity or contribution pursuant to this policy. The Insureds shall be entitled to assert claims against the Insurer for coverage under this policy, including, without limitation, for amounts by which the Insureds reduced its judgment against such other insurers in respect of such claims for indemnity or contribution, in an arbitration between the Insurer and the insureds pursuant to this Condition H which arbitration may take place before, concurrently with and/or after the action or proceeding involving such other insurers; provided, however, that the Insurer in such arbitration in respect of such reduction of any judgment shall be entitled to raise any defenses under this policy and any other defenses (other than jurisdictional defenses) as it would have been entitled to raise in the action or proceeding with such insurers. No determination in any such action or proceeding involving such other insurers shall have collateral estoppel, res judicata or other issue preclusion or estoppel effect against the Insurer in such arbitration, irrespective of whether or not the Insurer remained a party to such action or proceeding.

I. Governing Law and Interpretation: This policy, and any dispute, controversy or claim arising out of or relating to this policy, shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, except insofar as such laws: (i) may prohibit payment hereunder in respect of punitive damages; (ii) pertain to the procurement, issuance, delivery, renewal, nonrenewal or cancellation of policies of insurance or the regulation under New York Insurance Law, or regulations issued by the Insurance Department of the State of New York pursuant thereto, applying to insurers doing insurance business within the State of New York or as respects risks or insureds situated in the State of New York; or (iii) are inconsistent with any provisions of this policy.

Notwithstanding anything herein to the contrary, the provisions, stipulations, exclusions and conditions of this policy are to be construed in an evenhanded fashion as between the parties. Without limitation, where the language of this policy is deemed to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant provisions, stipulations, exclusions and conditions (without regard to authorship of the language, without any presumption or arbitrary interpretation or construction in favor of either the Insureds or the Insurer, without reference to the "reasonable expectations" of either thereof or to contra proferentem and without reference to parol or other extrinsic evidence). To the extent that New York law is inapplicable by virtue of any exception or proviso enumerated above or otherwise, and as respects any arbitration procedure pursuant to this Condition H, the internal laws of England and Wales shall apply.

J. Headings: The descriptions in the headings and sub-headings of this policy are inserted solely for convenience and do not constitute any part of the terms or conditions hereof.

K. Currency: The premiums and any Loss under this policy are payable in the currency set forth in Item 7 of the Declarations. If judgment is rendered, settlement is denominated or another element of Loss is stated in a currency other than the currency set forth in Item 7 of the Declarations, payment under this policy shall be made in the currency set forth in Item 7 of the Declarations at the rate of exchange prevailing on the date the final judgment is rendered, the amount of the settlement is agreed upon or the other element of Loss is due, respectively.

ACE D&O 03/00

5

V. DEFINITIONS

   A. The terms "Claim" and "Wrongful Act" have the same meanings in this policy as are attributed to them in the Followed Policy. The terms "Insurer", "Followed Policy", "Underlying Policies", "Policy Period" and "Aggregate Limit of Liability" have the meanings attributed to them in the Declarations.

   B. The term "Insured Persons" means (i) those directors, officers and other individuals insured by the Followed Policy, and (ii) if and to the extent the Followed Policy and this policy afford coverage for claims against any Insured Company, such Insured Company.

   C. The term "Insured Company" means the entity named in Item 1 of the Declarations and any subsidiaries or affiliates thereof insured by the Followed Policy.

   D. The term "Insureds" means the Insured Persons and the Insured Company.

   E. The term "Loss" has the same meaning in this policy as is attributed to it in the Followed Policy, except that punitive damages are included within "Loss" to the extent such damages are legally insurable under the internal laws of England and Wales, notwithstanding anything to the contrary in the Followed Policy.

   F. The term "Policy Year" means the period of one year following the inception of this policy or any anniversary, or, if the time between inception or any anniversary and the termination of this policy is less than one year, the lesser period. If the discovery period hereunder is exercised as a result of the cancellation of or refusal to renew this policy by the Insurer, such period shall be considered a separate Policy Year. If the discovery period is otherwise exercised, such period shall be part of the last Policy Year and not an additional period.

   G. The term "Underlying Limit" means an amount equal to the aggregate of all limits of liability as set forth in Item 2 of the Declarations for all Underlying Policies, plus the uninsured retention, if any, applicable to the primary insurance as set forth in Item 2 of the Declarations.



ADDITIONAL/RETURN PREMIUM: $ NIL

## SECURITIES ALLOCATION ENDORSEMENT

In consideration of the payment of the premium, it is hereby understood and agreed that if in any Claim the Insureds who are afforded coverage for such Claim incur Loss jointly with others (including Insureds) who are not afforded coverage for such Claim, or incur an amount consisting of both Loss covered by this Policy and Loss not covered by this Policy because such Claim includes both covered and uncovered matters, then such amount shall be allocated between covered Loss and uncovered Loss as follows:

(a) With respect to any such allocation between Insured Persons and the Corporation in a Securities Claim, **100%** of such amount shall be allocated to Loss incurred by Insured Persons and the remaining percentage of such amount shall be allocated to uninsured loss incurred by the Corporation. Such predetermined allocation shall be final and binding on the Insureds and the Insurer.

(b) With respect to any other required allocation, such amount shall be allocated between covered Loss and uncovered Loss based on the relative legal and financial exposures of the parties to such covered and uncovered matters, and in the event of a settlement, also based on the relative benefit to the parties from settlement of such covered and uncovered matters.

Nothing herein shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of this policy, except as expressly stated herein. This endorsement is part of such policy and incorporated herein.

The effective date of this endorsement is **May 16, 2007**
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy No. **LEHM-11742D**
of ACE BERMUDA INSURANCE LTD.

Issued to: **Lehman Brothers Holdings Inc.**

End No.  1                                                                                   Date of Issue: **July 25, 2007**

Executive Vice President                                                           Authorised Representative



ADDITIONAL/RETURN PREMIUM: $ NIL

## UNDERLYING POLICY INSOLVENCY DIC

It is agreed that notwithstanding anything in this Policy to the contrary:

1. If an insurer of an Underlying Policy ("Insolvent Insurer") fails or refuses to pay a covered Loss solely because such insurer is financially insolvent, then coverage otherwise afforded under this Policy for Non-Indemnifiable Loss incurred by Insured Persons shall drop down and attach to the Insurer to the extent that the Underlying Policies do not pay such Loss solely due to the financial insolvency of the Insolvent Insurer. This endorsement does not increase the Insurer's maximum aggregate liability under this Policy, as set forth in Item 5 of the Declarations.

2. For purposes of this Endorsement, Non-Indemnifiable Loss means Loss otherwise covered under this Policy which is incurred by Insured Persons and for which the Insured Company is neither permitted nor required to indemnify or is financially unable to indemnify due to the Insured Company's insolvency.

Nothing herein shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of this policy, except as expressly stated herein. This endorsement is part of such policy and incorporated herein.

The effective date of this endorsement is **May 16, 2007**
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy No. **LEHM-11742D**
of ACE BERMUDA INSURANCE LTD.

Issued to: **Lehman Brothers Holdings Inc.**

End No.  2                                                                Date of Issue:  **July 25, 2007**

Executive Vice President                                         Authorised Representative

**ADDITIONAL/RETURN PREMIUM: $ NIL**

## FOLLOW FORM ENDORSEMENT

In consideration of the premium charged, it is agreed that in the event of any conflict between the provisions of this Policy and the terms and conditions of the Primary Policy, then the terms and conditions of the Primary Policy shall control, except with regard to premium, limit of liability, retention or attachment point, and the Pending & Prior Litigation Exclusion date, and in no event shall the coverage provided under this Policy be more broad than the coverage under the Primary Policy or any Underlying Insurance.

It is further understood and agreed that in any case where this Policy contains any provision which is not referenced in the terms and conditions of the Primary Policy, then the provisions of this Policy shall prevail.

The title and any headings in this endorsement/rider are solely for convenience and form no part of the terms and conditions of coverage.

Nothing herein shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of this policy, except as expressly stated herein. This endorsement is part of such policy and incorporated herein.

The effective date of this endorsement is **May 16, 2007**
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy No. **LEHM-11742D**
of ACE BERMUDA INSURANCE LTD.

Issued to: **Lehman Brothers Holdings Inc.**

End No. **3**

Date of Issue: **July 25, 2007**

Executive Vice President

Authorised Representative



ADDITIONAL/RETURN PREMIUM: $ NIL

## ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT

In consideration of the payment of the premium, it is hereby understood and agreed that the following Section is added to the policy:

VI. NON-ACCUMULATION OF LIMITS

If any loss arising from a claim made against any Insured, as covered by the Primary Policy under Endorsement #12, OUTSIDE DIRECTORSHIP ENDORSEMENT (hereinafter "ODL Claim"), is covered under any other valid policy(ies) issued by any member company of the Chubb Group of Insurance Companies, then the total amount the Company shall pay under all such policies for all covered loss an account of such claim shall not exceed the combined aggregate Limit of Liability of $25,000,000.

Further, and solely with respect to an ODL Claim, this Policy shall recognize any payment made by Lehman Brothers Holdings, Inc. in excess of all payments made by XL Specialty Insurance Company for loss arising from a claim made against any Insured which is covered by any member of the XL Capital family of companies under any policy and the Primary Policy for Lehman Brothers Holdings, Inc., as being part of the Underlying Limit with respect to an ODL Claim.

Nothing in this Section shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

Nothing herein shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of this policy, except as expressly stated herein. This endorsement is part of such policy and incorporated herein.

The effective date of this endorsement is **May 16, 2007**
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy No. **LEHM-11742D**
of ACE BERMUDA INSURANCE LTD.

Issued to: **Lehman Brothers Holdings Inc.**

End No.  4                                                                 Date of Issue: **July 25, 2007**

Executive Vice President                                              Authorised Representative



ADDITIONAL/RETURN PREMIUM: $ NIL

In consideration of the payment of the premium, it is hereby understood and agreed that Endorsement No. 4 is deleted in its entirety and replaced as follows:

**ODL NON-ACCUMULATION OF LIMITS AND RECOGNITION OF INSURED PARTICIPATION ENDORSEMENT**

In consideration of the payment of the premium, it is hereby understood and agreed that the following Section is added to the policy:

VI.  NON-ACCUMULATION OF LIMITS

If any loss arising from a claim made against any Insured, as covered by the Primary Policy under endorsement #27, AMEND INSURED PERSON ENDORSEMENT, including any revisions or amendments made to endorsement #27, (hereinafter "ODL Claim"), is covered under any other valid and collectible policy(ies) issued by any member company of ACE Group of Insurance Companies, then the total amount the Insurer shall pay under all such policies for all covered loss an account of such claim shall not exceed the combined aggregate Limit of liability of $25,000,000.

Further, and solely with respect to an ODL Claim, the Underlying Limit shall be deemed to be depleted or exhausted as a result of the issuers of the Underlying Insurance or any of the member companies of the issuers of the Underlying Insurance, and/or the Insured(s), paying loss covered under the Underlying Insurance.

Nothing in this Section shall be construed as increasing the respective Limits of Liability beyond the amount stated in each of the respective policies.

Nothing herein shall be held to vary, alter, waive or extend any of the terms, conditions, exclusions or limitations of this policy, except as expressly stated herein. This endorsement is part of such policy and incorporated herein.

The effective date of this endorsement is **May 16, 2007**
All other terms and conditions remain unchanged.
This endorsement is attached to and made a part of Policy No. **LEHM-11742D**
of ACE BERMUDA INSURANCE LTD.

Issued to: **Lehman Brothers Holdings Inc.**

End No.  5                                                               Date of Issue: **August 22, 2007**

Executive Vice President                                                  Authorised Representative