WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
: 
LEHMAN BROTHERS HOLDINGS INC., *et al.*, : 08-13555 (JMP)
: 
Debtors. : (Jointly Administered)
: 
: 
------------------------------------------------------------------x

# DECLARATION OF ROBERT HERSHAN IN SUPPORT OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363(b)(1) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO IMPLEMENT THE 2011 DERIVATIVES EMPLOYEE INCENTIVE PROGRAM

Pursuant to 28 U.S.C. § 1746, I, Robert Hershan, declare:

1. I am over the age of 18 years and make these statements of my own personal knowledge, my review of the business records of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated chapter 11 debtors (the "Debtors"), and/or my consultation with employees of the Debtors. If called to testify, I could testify to the truth of the matters set forth herein.

2. I submit this declaration in support of the Debtors' motion (the "Motion"), Pursuant to Sections 105(a) and 363(b)(1) of the Bankruptcy Code and Bankruptcy Rule 6004, for Authorization to Implement the 2011 Derivatives Employee Incentive Program.[1]

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

US_ACTIVE:\43518137\04\58399.0003

3. I am a Managing Director with Alvarez and Marsal. I was assigned to the Lehman matter on September 17, 2008. My primary areas of responsibility include managing all post-petition employment related matters of the Debtors and also managing a portfolio of the Debtors' derivatives transactions with counterparties that are special purpose entities. I have participated in the development of the 2011 Incentive Plan and the Motion. I was also one of the primary representatives for the Debtors in the development and implementation of the 2010 Incentive Plan that was approved by the Court in December 2009.

LAMCO

4. Pursuant to the authority granted by the Court to establish the LAMCO Entities, the members of the Derivatives Workforce were transferred to the LAMCO Entities on or about May 1, 2010. The members of the Derivatives Workforce continue to provide the same services and perform the same functions for the Debtors as they did prior to such transfer. The Debtors will be funding payments under the 2011 Incentive Plan to such LAMCO employees.

The Substantial Efforts of the Derivatives Workforce

5. The 2011 Incentive Plan was developed by the Debtors primarily to maintain the momentum and the success the Debtors have realized in the ongoing wind down of the Debtors' derivatives businesses. Through the efforts of the Derivatives Workforce, as of August 31, 2010, the Debtors have recovered $2.5 billion in cash in 2010, bringing the total amount of cash recovered by the Debtors on account of their derivatives assets since September 15, 2008 to more than $11 billion. It is the opinion of the most senior members of the Debtors' management that the Derivatives Workforce has far exceeded expectations and the collective performance of the Derivatives Workforce has been exceptional.

6. Notwithstanding the tremendous efforts and achievements of the Derivatives Workforce, the Debtors will continue to require substantial efforts from the Derivatives Workforce in 2011 to continue to review and reconcile the more than 8,000 derivatives and derivatives guarantee claims filed against the Debtors asserting more than $75 billion in amounts due from the Debtors as well as to continue to implement the Debtors' strategies to monetize the value of the Debtors' "in the money" Derivatives Contracts. The wind down of the Debtors' derivatives businesses will have a significant impact on recoveries to creditors. The Debtors estimate that approximately 150 full term employees and approximately 25 part term employees will be required to assist the Debtors wind down their derivatives businesses in 2011.

7. On a day-to-day basis, among other things, the Derivatives Workforce gathers and collates trade data, determines and reconciles trade values, engages with counterparties to negotiate and recover payments or collateral, and reconciles derivatives claims against the Debtors. Given the unique nature of Lehman's derivative unwind activities, the Derivatives Workforce is being asked to perform and undertake tasks that are not normally performed in the derivatives marketplace. The Debtors do not believe that there are comparable entities either in or out of bankruptcy that are engaged in the unwind of a derivatives portfolio of the size and scale of the Debtors. Derivatives-related assets are the most significant assets of certain of the Debtors' estates. Accordingly, the Derivatives Workforce is subject to exceptional demands, complexities and pressures.

8. To perform these extremely complex tasks in an efficient fashion, the Debtors require the expertise of highly qualified individuals with in-depth knowledge of Lehman's pre-petition business and counterparties. Currently, approximately 60% of the Derivatives Workforce is made up of Lehman legacy employees and 80% of the workforce has been

assisting the Debtors unwind their derivatives business for more than 12 months. These individuals have significant institutional knowledge and Lehman process knowledge, which would make replacing them very difficult. The loss of key individuals with knowledge of the Debtors' derivatives assets and developed counterparty relationships causes delay and frustrates the Debtors' goals and objectives of maximizing the value of their derivatives businesses. As a result of, among other things, the 2010 Incentive Plan, the Debtors and the LAMCO Entities have been able to reduce employee attrition and the inefficiencies and delays associated therewith. The Debtors and the LAMCO Entities must be able to provide competitive compensation packages to the Derivatives Workforce so that the Debtors' goals of maximizing recoveries to creditors are not jeopardized or delayed.

<u>Development of the 2011 Incentive Plan</u>

9. The description of the 2011 Incentive Plan set forth in the Motion is true and accurate. The Debtors have carefully selected the benchmarks set by the 2011 Incentive Plan, which have been reviewed by the Creditors' Committee and its professionals, and believe that they are reasonably calculated to achieve the desired result of maximizing value for creditors. The Debtors have set the benchmarks based upon their experience in these cases, the progress made to date, a review of their derivatives portfolio, including counterparties and risks associated with litigation, and an assessment of the size, qualification and performance to date of the Derivatives Workforce. The Debtors also considered, to the extent relevant, certain market information. The Debtors believe that the 2011 Incentive Plan will enable them and the LAMCO Entities to compete with the compensation and prospect of long-term employment offered by their competitors within the constraints of the Bankruptcy Code.

10. The 2011 Incentive Plan is constructed on the same principles as the 2010 Incentive Plan, which has been very successful in accomplishing the Debtors' goals for their derivatives businesses. Like the 2010 Incentive Plan, the 2011 Incentive Plan is designed to motivate and reward members of the Derivatives Workforce for their services to the Debtors that result in direct benefit to their stakeholders through recovery on, or preservation of, the Debtors' derivatives assets and mitigation of derivatives claims against the Debtors.

11. The criteria for contributions to the Incentive Pool under the 2011 Incentive Plan are largely the same criteria as the 2010 Incentive Plan. The Debtors have made certain modifications to the 2011 Incentive Plan to reflect the evolution of these cases. For example, the Debtors recognize that the focus of the Derivatives Workforce in 2011 on reviewing and reconciling derivatives claims is expected to increase. Accordingly, the contribution to the Incentive Pool for claims mitigation has been increased from 20 basis points to 30 basis points for claims mitigated in excess of $10 billion to further motivate the Derivatives Workforce. The adjustments in contributions to the Incentive Pool recognize the Debtors' shift in focus and are also intended to simplify the mechanics of the 2011 Incentive Plan.

12. The modifications do not, however, alter the underlying premise of the 2010 Incentive Plan: to motivate and reward the Derivatives Workforce for value created or preserved on account of the Debtors' derivatives assets and claims. No payments will be made unless the specified performance metrics are satisfied. The Debtors believe that the total cost of the 2011 Incentive Plan – up to $15 million in the aggregate – is reasonable and appropriate in the context and size of the Debtors' cases.

No Participation by "Insiders"

13.  None of the employees that are eligible for participation in the 2011 Incentive Plan are officers, directors or persons in control of the Debtors. There are four individuals (the "Individuals"), including one of the Derivatives Co-Heads, who nominally were "officers" of certain of the Debtors at the time the 2010 Incentive Plan was approved by the Court. In connection with the transfer of the Derivatives Workforce to the LAMCO Entities, however, such Individuals are no longer "officers" of the Debtors. These Individuals, who generally have the same responsibilities as they did at the time the Court approved their participation in the 2010 Incentive Plan, will be eligible for participation in the 2011 Incentive Plan.

14.  None of the employees that are eligible for participation in the 2011 Incentive plan, including the Individuals, have extensive control over the Debtors or the LAMCO Entities that would afford them the opportunity for self-dealing in any respect. As explained in the Motion, no employee made any decisions with respect to his or her maximum 2011 Incentive Payment and will have no ability to control or influence his or her actual 2011 Incentive Payment. The Creditors' Committee must consent to the maximum and actual allocations of all participants under the 2011 Incentive Plan, including these Individuals (such consent not to be unreasonably withheld). The Creditors' Committee has been apprised of, and has no objection to, these four individuals being eligible to participate in the 2011 Incentive Plan.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 27th day of October 2010.

/s/ Robert Hershan
Robert Hershan