**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No. 08-13555 |
| Ch-11 LEHMAN BROTHERS HOLDINGS, INC. | Chapter 11 |
| Debtor | |

### NOTICE OF TRANSFER OF CLAIM
### PURSUANT TO RULE 3001(e)

PLEASE TAKE NOTICE that any and all claims of the company Ponte da Barca, S.L., of Spanish nationality, domiciled for these purposes at C/ Lugar Atios, N°112. Noalla-Sanxenxo (Pontevedra) (Spain) and bearer of companies registration number B-36517241 ("Assignor") that are scheduled by the Debtor(s) and or filed as an original or amended Proof of Claim against the Debtor(s), including but not limited to the following:

| Proof of Claim Amount | Proof of Claim No. |
|---|---|
| $212,625 | 0000060348 |

have been transferred and assigned to Caja de Ahorros de Vigo, Ourense y Pontevedra ("Assignee"). The signature of Assignor on this document is evidence of the transfer of the claims and all rights thereto.

Assignor hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Assignee herein as the valid owner of the Claim. You are hereby requested to make all future payments and distributions, and to give all notices and other communications, in respect of the Claim to the Assignee.

ASSIGNEE: Caja de Ahorros de Vigo,
Ourense y Pontevedra
(Caixa Nova)

Address:    Avda. García Barbon 1-3
36201, Vigo, Galicia
Spain

Signature:
Name:
Title:
Date:        Mª Victoria Vázquez Sacristán
Subdirectora General

ASSIGNOR:   Ponte da Barca, S.L.

Address:    Attn: Mr. Manuel Pérez
Rodriguez
C/ Lugar Atios, N°112, 36970,
Noalla- Sanxenxo (Pontevedra) (Spain)

Signature:
Name:        MANUEL PEREZ RODRIGUEZ
Title:        ADMINISTRADOR
Date:        21.09. 2010

DOC ID-11099487.2

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **LEHMAN SECURITIES PROGRAMS<br>PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
|---|---|

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)      0000060348

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

*THIS SPACE IS FOR COURT USE ONLY*

---

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

**PONTE DA BARCA, S.L.**
Address:        García Barbón, 1 -7ª
                36201 Vigo (Spain)
Attention:      Mr. Luis Piñeiro Santos

(Please see Section 7 of the Attachment for full Contact details)

Telephone number: +34 (0) 986828341   Email Address:   lpineiro@caixanova.com

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:         Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

---

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim: $ [....] (see Attachment)         (Required)     212,625 USD

☒ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

International Securities Identification Number (ISIN):    See Attachment    (Required)    XS0282208718

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:
[...] (see Attachment)    6060307        (Required)

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:
[...] (see Attachment)    96287        (Required)

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

FOR COURT USE ONLY

**FILED / RECEIVED**

OCT 3 0 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date.<br>16/10/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.    Mr.              Manuel Pérez Rodríguez |
|---|---|

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Lehman Brothers Holdings Inc., *et al.*<br><br>Debtors | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

## ATTACHMENT TO PROOF OF CLAIM OF PONTE DA BARCA, S.L.

PONTE DA BARCA, S.L. ("Claimant") submits this attachment to the proof of claim

(the "Claim") against Lehman Brothers Holdings Inc. ("LBHI").

### PONTE DA BARCA, S.L.'S CLAIM

1. The Claimant submits this Claim with respect to certain securities guaranteed by LBHI

and as set forth on the Lehman Programs Securities list posted by LBHI on July 17,

2009 in accordance with the Bar Order. Such Lehman Programs Securities include:

| ISIN | BLOCKING NUMBER | PARTICIPANT ACCOUNT NUMBER | PRINCIPAL AMOUNT OF ISSUE HELD (EUR) | CLAIM AMOUNT (USD) |
|---|---|---|---|---|
| XS0282208718 | 6060307 | 96287 | 150,000 | 212,625.00 |
| **TOTAL** | | | | 212,625.00 (1) |

(1) Or such other amount as may be determined in accordance with the terms of the
applicable documentation and subject to applicable law.

**RESERVATION OF RIGHTS**

2.  Claimant expressly reserves the right to amend or supplement this Claim at any time, in any respect and for any reason, including but not limited to, for the purposes of (a) fixing, increasing, or amending the amounts referred to herein, and (b) adding or amending documents and other information and further describing the claims. Claimant does not waive any right to amounts due for any claim asserted herein by not stating a specific amount due for any such claim at this time, and Claimant reserves the right to amend or supplement this proof of claim, if Claimant should deem it necessary or appropriate, to assert and state an amount for any such claim.

3.  This Claim is made without prejudice to the filing by Claimant and any related entities of additional proofs of claim for any additional claims against LBHI and its affiliated debtors (the "Debtors") and non-debtor entities affiliated with the Debtors of any kind or nature, including, without limitation, claims for administrative expenses, additional interest, late charges, and related costs and expenses, and any and all other charges and obligations reserved under the applicable documents and other transaction documents, and claims for reimbursement in amounts that are not fully ascertainable.

4.  The filing of this Claim is not intended to be and shall not be deemed to be or construed as a waiver or release of any right to claim specific assets; any rights of setoff, recoupment, or counterclaim; or any other right, rights of action, causes of action, or claims, whether existing now or hereinafter arising, that Claimant has or may have against LBHI, its affiliated entities or any other person, or persons, and Claimant expressly reserves all such rights.

5.  Nothing herein modifies, alters, amends and/or waives any right Claimant may have under applicable law or any agreement or understanding to assert and recover from

LBHI, its affiliated entities or any other person or persons, upon rights, claims, and monies.

6. In executing and filing this claim, Claimant does not submit itself to the jurisdiction of this Court for any other purpose than with respect to this Claim. This Claim is not intended to be, and shall not be construed as (i) an election of remedies, (ii) a waiver of any past, present or future defaults, or (iii) a waiver or limitation of any rights remedies, claims or interests of Claimant.

## NOTICES

7. All notices, communications and distributions with respect to this Claim should be sent to:

**Luis Piñeiro Santos**
**Address:**     **García Barbón, 1 - 7°**
                 **36201 Vigo (Spain)**
**Telephone:**   **+34 986 828216**
**Attention:**   **Mr. Luis Piñeiro Santos**

With a copy to:

Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
Telephone:    (212) 878-8000
Attention:    Jennifer C. DeMarco, Esq.
              David A. Sullivan, Esq.

## BREAKDOWN OF CLAIM

8. See Annex.

## ANNEX

### BREAKDOWN OF CLAIM: ISIN XS0282208718

The Claimant invested EUR 150,000 purchasing 150 notes issued by Lehman Brothers Treasury Co. B.V. on 22 January 2007 with ISIN code number XS0282208718 and whose maturity date was established to take place on 9 February 2010.

The Notes were issued under the "*US$ 60,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus A.G.*" dated 9 August 2006   (the "**Program**"). The terms and conditions to be applied to this issuing are those appearing in the Program (the "**Terms and Conditions**").

According to the final terms dated 29 March 2007 (the "**Final Terms**") there is a final redemption amount to be paid on 9 February 2010 and which should be calculated by the Calculation Agent according to a formula attached to the Final Terms as an Annex.

The Final Terms also establish an early redemption amount (according to clause 8 (f) (*Early Redemption Amounts*) and clause 10 (a) (vi)) to be paid if an event of default occurs:

"*In respect of each Note, an amount in the Specified Currency equal to the fair market value of such Note (disregarding credit risk of the Issuer) (which value shall be less the proportion attributable to that Note of the reasonable cost to the Issuer of unwinding any related hedging arrangements) on such day as is selected by the Calculation Agent in its sole and absolute discretion (provided that such day is not more than 15 days before the date fixed for redemption of the Note).*"

The Calculation Agent was, in turn, Lehman Brothers International Europe, now in insolvency and unable to perform its role.

Thus, until such situation is solved for the time being our claim is for the principal invested. Since the "*Global notes pertaining to debtors' schedules and statements*" released by the United States Bankruptcy Court of the Southern District of New York set out on its section 7 that "otherwise indicated, all amounts are reflected in U.S. dollars" we have calculated the principal amount in U.S. dollars according to the average dollar-euro exchange rate as of 15 September 2008, published by the Federal Reserve Bank of New York on the website http://www.ny.frb.org/markets/foreignex.html (EUR = 1,4175

USD)  and we have also calculated in Euros the additional interest  just as established in the Terms and

Conditions (and then in U.S. dollars according to the mentioned exchange rate).

**Principal amount in U.S. dollars:**

EUR 150,000 x USD 1,4175 = USD 212,625.00





-----ELEVACIÓN A PÚBLICO DE ACUERDOS SOCIALES -----

NÚMERO: TRESCIENTOS VEINTICUATRO. ----------------

En O GROVE, mi residencia, a tres de marzo de dos

mil seis. ---------------------------------------

Ante mí, **JOSÉ MARÍA GARCÍA PEDRAZA**, Notario del

Ilustre Colegio Notarial de Galicia, ------------

-------------------COMPARECEN: -------------------

Los cónyuges **DON MANUEL PÉREZ RODRÍGUEZ y DOÑA**

**AMELIA POMBO MÉNDEZ**, mayores de edad, casados en

régimen de gananciales, vecinos de Sanxenxo

(Pontevedra), con domicilio en la parroquia de

Noalla, lugar de Aios, número 112 y, con DNI/NIF

números    35.413.960-D    y    35.414.129-V,

respectivamente. ---------------------------------

Y, **DON SERAFÍN MEIRA RODIÑO**, mayor de edad, casado,

vecino de Poio (Pontevedra), con domicilio en la

parroquia de San Juan de Poio, lugar de Bouza,

número 16 y, con DNI/NIF número 35.233.926-L.- ----

**INTERVIENEN** en su propio nombre, excepto el **Sr.**

**Meira Rodiño**, que lo hace en nombre y





---------CONSTITUCIÓN DE SOCIEDAD LIMITADA --------

NÚMERO: CIENTO CUARENTA Y CUATRO.- ---------------

EN O GROVE, mi residencia, a dos de febrero de dos

mil seis. -------------------------------------

Ante mí, JOSÉ MARÍA GARCÍA PEDRAZA, Notario del

Ilustre Colegio Notarial de Galicia, -------------

--------------------COMPARECEN: ------------------

Los cónyuges DON MANUEL PÉREZ RODRÍGUEZ y DOÑA

AMELIA POMBO MÉNDEZ, mayores de edad, casados en

régimen de gananciales, vecinos de Sanxenxo

(Pontevedra), con domicilio en la parroquia de

Noalla, lugar de Aios, número 112 y, con DNI/NIF

números      35.413.960-D      y      35.414.129-V,

respectivamente. ---------------------------------

Como Administrador Único: ------------------------

DON SERAFÍN MEIRA RODIÑO, mayor de edad, casado,

vecino de Poio (Pontevedra), con domicilio en la

parroquia de San Juan de Poio, lugar de Bouza,

número 16 y, con DNI/NIF número 35.233.926-L.- ----

Y, como testigos: --------------------------------

**DON JOSÉ LUIS FILGUEIRA SÁNCHEZ**, mayor de edad, soltero, vecino de Sanxenxo, con domicilio en la parroquia de Portonovo, Avenida de La Marina, número 20, y con DNI/NIF número 35.317.346-H. ----
**DON JOSÉ MARÍA MOURELOS MUÑIZ**, mayor de edad, casado, vecino de O Grove, con domicilio en la calle Baleares, número 10-1°D, y con DNI/NIF número 35.420.333-B. ------------------------------------
Son todos de nacionalidad española. --------------
**INTERVIENEN** en su propio nombre y derecho.— -------
Identifico a los comparecientes por las fotografías y firmas que aparecen en sus documentos de identidad que me exhiben y sus circunstancias personales constan de sus propias manifestaciones, excepto a don Serafín Meiro Rodiño, a quien identifico a través de las manifestaciones de conocimiento realizadas por los testigos antedichos, a quienes conozco y juzgo idóneos para intervenir en este acto. ------------------------
Los juzgo, tal como intervienen, con la capacidad legal necesaria para el otorgamiento de esta ESCRITURA, a cuyo fin, -----------------------------
-----------------O T O R G A N: -----------------
**PRIMERO.-** DON MANUEL PÉREZ RODRÍGUEZ y DOÑA AMELIA





POMBO MÉNDEZ **CONSTITUYEN** una sociedad mercantil limitada, de nacionalidad española, denominada **"PONTE DA BARCA, SOCIEDAD LIMITADA"**, la cual se regirá por las disposiciones legales aplicables en cada momento y por los Estatutos de la Sociedad que se recogen en el otorgan SÉPTIMO. -----------------

**SEGUNDO.- CAPITAL SOCIAL Y PARTICIPACIONES.** ------ El capital social es de **TRES MIL DIEZ EUROS** (3.010), representado por **TRES MIL DIEZ** (3.010) participaciones sociales, de **UN EURO** (1,00), de valor nominal cada una de ellas, numeradas correlativamente del UNO al TRES MIL DIEZ (1-3.010), ambos inclusive, y queda asumido y desembolsado, en la siguiente forma: -------------

**ASUNCIÓN:** -------------------------------------------- **DON MANUEL PÉREZ RODRÍGUEZ**, asume **MIL QUINIENTAS CINCO** (1.505) participaciones sociales, las números uno al **mil quinientos cinco** (1-1.505), ambos incluidos, por un valor nominal de MIL QUINIENTOS CINCO EUROS (1.505,00). ---------------------------

DOÑA AMELIA POMBO MÉNDEZ, asume MIL QUINIENTAS CINCO (1.505) participaciones sociales, las números mil quinientos seis al tres mil diez (1.506-3.010), ambos incluidos, por un valor nominal de MIL QUINIENTOS CINCO EUROS (1.505,00). ---------------

DESEMBOLSO: ---------------------------------
El desembolso del importe de las participaciones se ha hecho en metálico, quedando depositado en la cuenta abierta a la Sociedad en formación, tal como resultan de certificación expedida por la Entidad depositaria, que queda incorporada a esta escritura, como documento unido. ------------------

TERCERO.- El nombre de esta Sociedad no es usado por ninguna otra como me acredita con el oportuno certificado del Registro Mercantil Central, que me exhiben y dejo unido a esta matriz. --------------

CUARTO.- Se consigna de forma expresa la prohibición de ocupar o ejercer cargos en la Compañía a las personas que la Ley 12/1995 de 11 de Mayo, declara incompatibles. --------------------

QUINTO.- ÓRGANO DE ADMINISTRACIÓN.- Se encomienda la gestión y representación de la Sociedad a UN ADMINISTRADOR ÚNICO, designando para tal cargo a DON SERAFÍN MEIRA RODIÑO. ------------------------

urbanístico. -------------------------------

El objeto social podrá desarrollarse bien directamente por la propia sociedad, bien indirectamente mediante la participación en el capital de otras sociedades o en comunidades o agrupaciones de cualquier tipo siempre que tales otras sociedades, comunidades o agrupaciones tengan un objeto social idéntico o análogo al de esta Sociedad. ----------------------------------------

**ARTÍCULO 3.- DOMICILIO.-** Se fija en el lugar de Bouza, número 16, parroquia San Juan de Poio, en el término municipal de Poio, provincia de Pontevedra. Por acuerdo del Órgano de Administración, podrá trasladarse dentro de la misma población donde se halle establecido. ------------------------------

De igual modo podrán ser creadas, suprimidas, o trasladadas las sucursales, agencias o delegaciones que el desarrollo de la actividad social haga necesarias o convenientes, tanto en territorio nacional como extranjero. ------------------------

**ARTÍCULO 4.- DURACIÓN.-** La Sociedad tendrá duración indefinida y comenzará sus operaciones el día del otorgamiento de la Escritura de Constitución. ----
--------------------**CAPÍTULO II** --------------------





El nombrado acepta el cargo, manifestando no estar incurso en ninguna incompatibilidad legal y de forma expresa en las que se consignan en el art. 58 de la Ley de Sociedades de Responsabilidad Limitada, y en la Ley 12/1995 de 11 de Mayo. ----

**SEXTO.-** El Administrador, aún no inscrita la Sociedad, podrá ejercitar sus facultades desde la fecha estatutaria de inicio de las actividades sociales dentro de su esfera de actuación, prevista en los Estatutos y en las disposiciones legales. --

**SÉPTIMO.- ESTATUTOS DE LA SOCIEDAD.** --------------

--------------------CAPÍTULO I --------------------

ARTÍCULO 1.- DENOMINACIÓN.- "PONTE DA BARCA, SOCIEDAD LIMITADA". ---------------------------

ARTÍCULO 2.- OBJETO.- La sociedad tendrá por objeto las actividades de: ------------------------------

a) Inversión mobiliaria e inmobiliaria. --------

b) La promoción, construcción, compraventa, intermediación y, en general, cualquier actividad de tipo inmobiliario y





**CAPITAL    SOCIAL    Y    TRANSMISIÓN    DE    LAS**

**PARTICIPACIONES.** ------------------------------------

**ARTÍCULO 5.- CAPITAL SOCIAL.-** El capital social es

de **TRES MIL DIEZ EUROS** (3.010,00), totalmente

desembolsado  y  dividido  en  **TRES    MIL    DIEZ**

**PARTICIPACIONES SOCIALES (3.010)**, de **UN EURO** (1,00)

de   valor   nominal   cada   una,   numeradas

correlativamente desde la unidad. ----------------

Hasta la inscripción de la Sociedad o, en su caso,

del acuerdo de aumento del capital en el Registro

Mercantil,    no    podrán    transmitirse    las

participaciones sociales. ------------------------

**ARTÍCULO    6.-    TRANSMISIÓN    DE    PARTICIPACIONES**

**SOCIALES.-** ----------------------------------------

A) TRANSMISIÓN ENTRE VIVOS.- ----------------------

A.1) Los  socios  podrán  transmitir  con  entera

libertad todas o algunas de sus participaciones

sociales por acto entre vivos a título oneroso o

gratuito en favor de su cónyuge, ascendientes o

descendientes, sean o no socios. ------------------

A.2) En todos los demás casos la transmisión de las participaciones sociales se someterá a las siguientes normas: ----------------------------

a) El socio que se proponga transmitir su participación o participaciones deberá comunicarlo por escrito, por carta certificada con acuse de recibo o personalmente por instancia por duplicado, dirigida a los administradores, haciendo constar el número y características de las participaciones que pretende transmitir, la identidad del adquirente y el precio y demás condiciones de la transmisión. -- Los administradores acusarán recibo o devolverán el duplicado de la instancia debidamente sellado, con la fecha de la comunicación. --------------------

b) En el plazo de diez días los administradores comunicarán a los demás socios la oferta de venta del socio que pretende enajenar, con las condiciones comunicadas, para que puedan ejercitar el derecho de adquisición preferente en un plazo de quince días a contar desde el recibo de la notificación. ----------------------------

Si son varios los socios que pretendan ejercitar el citado derecho de adquisición preferente, se distribuirán las participaciones entre todos ellos





a prorrata de su participación en el capital social. -------------------------------------------

c) Transcurrido el plazo de quince días sin que ninguno de los socios ejercitara el derecho a que se refiere el apartado anterior, los administradores, durante un nuevo plazo de quince días, podrán designar a un tercero para adquirir dichas participaciones y, en última instancia, la Sociedad podrá adquirir las participaciones ofrecidas para amortizarlas, previo acuerdo de reducción del capital social en un nuevo plazo de quince días a contar desde la expiración del anterior. ---------------------------------------

d) Si alguno de los socios, tercero designado por los administradores o la Sociedad pretendieran ejercitar el derecho de adquisición preferente, los administradores lo comunicarán, por conducto notarial, al socio ofertante en el plazo máximo de dos meses, a contar desde la comunicación a los mismos administradores, y la escritura pública de

transmisión deberá otorgarse dentro de los quince días siguientes. ---------------------------------
La oferta de venta será vinculante para el socio oferante durante el plazo de dos meses, a contar desde la recepción de la comunicación por los administradores. Transcurrido este plazo sin que los administradores le hubieran comunicado la identidad del adquirente o adquirentes, quedará libre para realizar la transmisión en las condiciones comunicadas. De igual libertad gozará cuando se le hubiese comunicado la identidad del adquirente o adquirentes y hubieran transcurrido quince días sin otorgar la escritura pública de transmisión. ---------------------------------
En estos supuestos el socio deberá otorgar la escritura de transmisión en la forma comunicada en el plazo de tres meses, a contar desde la expiración del plazo de dos meses, o de dos meses y quince días, según los casos a que se refiere el párrafo anterior. Transcurrido este plazo, la venta requerirá nueva oferta a la Sociedad. ------------
f) El valor de las participaciones será entregado por el socio o socios adquirentes en el momento de otorgarse la escritura de transmisión. ----------





g) Si la transmisión proyectada fuese por título oneroso o gratuito distinto de la compraventa, el precio se fijará por acuerdo de las partes y, en su defecto, se estará al valor real de las participaciones fijado por el auditor de cuentas de la Sociedad, y si no estuviera obligada a la verificación de cuentas, por el auditor que nombre el Registrador Mercantil del domicilio social. ---

B) TRANSMISIÓN MORTIS CAUSA.- --------------------

La adquisición de alguna participación social por sucesión hereditaria confiere al heredero o legatarío la condición de socio, siempre que sea cónyuge, ascendiente o descendiente del socio causante. -----------------------------------

En los demás casos habrá un derecho de adquisición preferente a favor de los demás socios de las participaciones del socio fallecido, por el valor real que tuvieren el día del fallecimiento del socio, cuyo precio se pagará al contado. La valoración se regirá por lo dispuesto en el

Artículo 100 de la Ley de Sociedades de Responsabilidad Limitada, y el derecho de adquisición habrá de ejercitarse en el plazo máximo de tres meses a contar desde la comunicación a la Sociedad de la adquisición hereditaria. ----------
También podrá ejercitarse dicho derecho de adquisición preferente desde el momento que la Sociedad tenga conocimiento del fallecimiento, mediante comunicación dirigida al domicilio del socio fallecido. ------------------------------
C) COMUNICACIÓN DE LAS TRANSMISIONES.- ----------
En todo caso, la adquisición por cualquier título de participaciones sociales deberá ser comunicada por escrito al Órgano de Administración de la Sociedad, indicando la identificación completa del nuevo socio. Sin este requisito el adquirente no podrá pretender el ejercicio de los derechos de socio. --------------------------------------------
La transmisión de las participaciones con infracción de las normas anteriores no producirán efecto frente a la Sociedad. No obstante lo cual, podrán ser objeto de convalidación por acuerdo unánime de todos los socios en junta general. -----
D) DOCUMENTACIÓN DE LAS TRANSMISIONES.- ----------





La transmisión de las participaciones sociales y la constitución del derecho real de prenda sobre ellas se formalizará en documento público. Los restantes gravámenes deberán constar en escritura pública. -

E) LIBRO REGISTRO DE SOCIOS.- --------------------

La Sociedad llevará un Libro Registro de socios en el que se harán constar la titularidad originaria y las sucesivas transmisiones, voluntarias o forzosas, de las participaciones sociales, así como la constitución de derechos reales y otros gravámenes sobre las mismas. --------------------

Cualquier socio podrá consultar este Libro Registro, que estará a cargo del Órgano de Administración. ---------------------------------

Los socios y los titulares de derechos reales o de gravámenes sobre las participaciones sociales, tienen derecho a obtener certificación de las participaciones, derechos o gravámenes registrados a su nombre. Tales certificaciones no suplen al documento público que sirva de título de propiedad.

--------------------CAPÍTULO III --------------------

DEL GOBIERNO DE LA SOCIEDAD. ----------------------

ARTÍCULO 7.- DE LA JUNTA GENERAL.- ----------------

Los socios, reunidos en Junta General, decidirán
por la mayoría prevista en el artículo 53 de la Ley
de Sociedades de Responsabilidad Limitada, los
asuntos propios de su competencia. ----------------

Cada participación social concede a su titular el
derecho a emitir un voto ------------------------

ARTÍCULO 8.- CONVOCATORIA.- La convocatoria de las
Juntas generales se hará por el Órgano de
Administración, por iniciativa propia o a petición
de un número de socios que representen el cinco por
ciento del capital social, con quince días de
antelación a la fecha en que han de celebrarse. --
Cuando la convocatoria se haga a petición de socios
deberá ser convocada dentro del mes siguiente a la
fecha en que se hubiere requerido notarialmente a
los administradores para convocarla, incluyendo
necesariamente en el orden del día los asuntos que
hubieran sido objeto de solicitud. ---------------
Las citaciones a los socios se harán al domicilio
que figura en el Libro Registro, por escrito y
duplicado, debiendo los socios al recibirlas





devolver firmado el ejemplar duplicado o, en su defecto, por acta notarial. -----------------------

En todo caso, la convocatoria expresará el nombre de la Sociedad, el nombre de la persona que realice la comunicación, la fecha y hora de la reunión, así como el orden del día en el que figurarán los asuntos a tratar. --------------------------------

No obstante, la Junta se entenderá convocada y quedará validamente constituida para tratar cualquier asunto siempre que esté, presente o representado, todo el capital social y los asistentes acepten por unanimidad la celebración de la Junta. -------------------------------------

ARTÍCULO 9.- REPRESENTACIÓN.- Todo socio podrá hacerse representar en la Junta General por medio de otro socio, cónyuge, ascendientes o descendientes. La representación será a medio de poder notarial o por simple carta, pero en este último caso sólo tendrá valor para el acto para el que haya sido concedida la representación, sin que

se pueda utilizar en futuras Juntas. -------------

ARTÍCULO 10.- LIBRO DE ACTAS.- Los acuerdos
sociales se extenderán en el correspondiente libro
de actas, que incluirá necesariamente lista de
asistentes y deberá ser aprobada por la propia
Junta al final de la reunión o, en su defecto,
dentro de los quince días siguientes por el
Presidente de la Junta y dos socios interventores.
Las certificaciones de dicho libro serán expedidas
por el administrador con facultades certificantes.

ARTÍCULO 11.- ÓRGANO DE ADMINISTRACIÓN.- La gestión
y representación de la sociedad se podrá confiar a
un administrador único, a varios administradores
que actúen solidaria o conjuntamente, o a un
Consejo de Administración. ----------------------
Corresponde a la Junta General la facultad de optar
alternativamente por cualquiera de ellos, sin
necesidad de modificación estatutaria. En todo
caso, el acuerdo de modificación del modo de
organización de la administración de la Sociedad se
consignará en escritura pública y se inscribirá en
el Registro Mercantil. --------------------------
El Administrador percibirá una retribución por su
dedicación en concepto de sueldo. Esta retribución





será fijada para cada ejercicio por acuerdo de la Junta General, conforme al art. 66.3 de la Ley de Sociedades de Responsabilidad Limitada, y será revisada anualmente en función de la evolución del Índice de Precios al Consumo (I.P.C.). ------------

La duración del cargo de Administrador será indefinida, salvo que en el acuerdo de su nombramiento se determine otra cosa. -------------

**ARTÍCULO 12.- DEL CONSEJO DE ADMINISTRACIÓN.-** -----

Cuando la gestión y representación de la Sociedad se confíe a un Consejo de Administración, éste estará formado por un número mínimo de tres miembros y por un máximo de doce. ----------------

El Consejo de Administración podrá delegar todas o parte de sus facultades, legalmente delegables, en cualquiera de sus miembros y otorgar los apoderamientos que considere convenientes. -------

El Consejo quedará validamente constituido cuando concurran a la reunión, presentes o representados por otro Consejero, la mitad más uno de sus

miembros. La representación se conferirá mediante carta dirigida al Presidente. Los acuerdos se adoptarán por mayoría absoluta de los asistentes a la reunión, que deberá ser convocada por el Presidente o quien haga sus veces. La votación por escrito y sin sesión será válida si ningún Consejero se opone a ello. Las discusiones y acuerdos del Consejo de Administración se llevarán a un libro de actas que serán firmadas por el Presidente y por el Secretario. En caso de empate decidirá el voto personal del Presidente. El Consejo se reunirá siempre que lo soliciten dos de sus miembros o lo acuerde el Presidente. Los consejeros serán convocados mediante carta certificada con acuse de recibo, dirigida a la dirección de cada consejero o a la que a estos efectos conste en los archivos de la sociedad, o bien mediante telecopia dirigida al número de fax señalado por cada consejero, en todo caso con siete días de antelación, como mínimo, a la fecha prevista para la reunión. ------------------------ El Consejo, si no lo hubiera hecho la Junta al tiempo de la elección de los Consejeros, designará de su seno un Presidente y un Secretario y, en su





caso, un Vicepresidente y un Vicesecretario que, respectivamente, sustituirán al Presidente y al Secretario en los casos de imposibilidad de éstos.

El Secretario y el Vicesecretario podrán no ser Consejeros, en cuyo caso tendrán voz pero no voto y, a efectos de los límites establecidos, no se contarán para determinar el número de miembros del Consejo. El Secretario y, en su caso, el Vicesecretario que no sean Consejeros tendrán, no obstante, facultad para certificar y elevar a públicos acuerdos sociales. ----------------------

ARTÍCULO   13.-   FACULTADES   DEL   ÓRGANO   DE ADMINISTRACIÓN.- ---------------------------------

La representación de la Sociedad, en juicio y fuera de él, corresponde al Órgano de Administración, teniendo facultades, lo más ampliamente entendidas, para contratar en general, realizar toda clase de actos y negocios, obligacionales o dispositivos, de administración ordinaria o extraordinaria y de riguroso dominio, respecto a toda clase de bienes,

muebles, inmuebles, dinero, valores mobiliarios y efectos de comercio, sin más excepción que la de aquellos asuntos que sean competencia de otros órganos o no estén incluidos en el objeto social. - A título enunciativo, y no limitativo, se enumeran las siguientes facultades: ----------------------
a) Consentir y realizar compras, ventas, permutas, transacciones, cesiones, opciones, arriendos, subarriendos y otras cualesquiera adquisiciones y enajenaciones de bienes muebles e inmuebles, establecer, ejercitar, renunciar derechos de tanteo, retracto, y acciones y condiciones suspensivas, resolutorias y rescisorias. Realizar toda clase de actos hipotecarios, agrupaciones, segregaciones, divisiones de fincas. ------------
b) Aceptar, ratificar, posponer, o subrogar, dividir, ampliar y reducir, constituir y cancelar, total o parcialmente, hipotecas, censos, servidumbres, fianzas, incluso en la Caja General de Depósitos, embargos, anotaciones preventivas y otros gravámenes y obligaciones de cualquier naturaleza y renunciar a toda clase de privilegios y acciones mediante pago. ----------------------
c) Comparecer en nombre de la sociedad ante la





Administración Pública y sus distintas esferas Central, Autonómica, Local o Institucional, realizando cobros, promoviendo reclamaciones y, en general, realizando cualquier otro acto que exija el desenvolvimiento normal o excepcional de la Sociedad. ------------------------------------

d) Realizar toda clase de actos procesales, administrativos o notariales, cualesquiera que sean los Tribunales, Juzgados, Organismos, Corporaciones o Autoridades, ejercitando recursos de casación, revisión, injusticia notoria y cualesquiera extraordinarios actos, ante quienes haya de ejercitarse pudiendo nombrar Abogados, Procuradores o Gestores. ------------------------------------

e) Llevar la firma y actuar en nombre de la Sociedad en toda clase de operaciones bancarias, abriendo y cerrando cuentas corrientes, disponiendo de ellas, interviniendo en letras de cambio como librador, aceptante, avalista, endosante, endosatario o tenedor de las mismas; abrir

créditos, con o sin garantía, y cancelarlos; hacer transferencias de fondos, rentas, créditos o valores, usando cualquier procedimiento de giro o movimiento de dinero; aprobar saldos de cuentas, finiquitos, constituir o retirar depósitos, etc, todo ello realizable tanto con el Banco de España y la Banca Oficial, como con entidades bancarias privadas y cualesquiera organismos de la Administración del Estado y Comunidades Autónomas.

f) Conferir toda clase de poderes con las facultades que determinen. ----------------------

La enumeración de las facultades comprendidas en los párrafos anteriores, no tiene carácter limitativo y deja subsistentes en toda su amplitud las disposiciones del párrafo primero del presente artículo. -----------------------------------------------

--------------------CAPÍTULO IV --------------------

**EJERCICIO SOCIAL Y DISPOSICIONES ECONÓMICAS.-** -----

**ARTÍCULO 14.-** ----------------------------------------

A) El ejercicio social se terminará y cerrará el treinta y uno de Diciembre de cada año. ----------

B) El Órgano de Administración deberá llevar los libros sociales y los de contabilidad y redactar las cuentas anuales y el informe de gestión con





arreglo a lo previsto en la Ley. -----------------

C) Las cuentas anuales y el informe de gestión deberán ser firmados por todos los miembros del Órgano de Administración. Si faltara la firma de alguno de ellos se indicará así en cada uno de los documentos en que falte con expresión de la causa.

D) Cuando con arreglo a la Ley la Sociedad no esté obligada a someter sus cuentas a verificación por un Auditor, los socios que representen al menos el cinco por ciento del capital social podrán solicitar, con arreglo a la Ley, el nombramiento de un Auditor que efectúe la revisión de las cuentas de un ejercicio, siempre que no hayan transcurrido tres meses desde la fecha de su cierre. ----------

Los gastos de esta auditoría serán satisfechos por la Sociedad. ----------------------------------

E) Con los requisitos previstos en la Ley y en estos Estatutos, para la modificación de los mismos podrá acordarse en Junta General la obligatoriedad de que la Sociedad someta sus cuentas anuales, de

forma sistemática, a la revisión de auditores de cuentas aunque la Ley no lo exija. Con los mismos requisitos podrá acordarse la supresión de esta obligación asumida voluntariamente. --------------

F) A partir de la convocatoria de la Junta General cualquier socio podrá obtener de la Sociedad, de forma inmediata y gratuita, los documentos que han de ser sometidos a la aprobación de la misma, el informe de gestión y el informe de los auditores de cuentas, en su caso. En la convocatoria se hará expresión de este derecho. -----------------------

Durante el mismo plazo, el socio o socios que representen al menos el cinco por ciento del capital social podrán examinar, en el domicilio social, los documentos que sirvan de soporte y de antecedente a las cuentas anuales. ----------------

G) Los beneficios líquidos obtenidos después de detraer impuestos y reservas legales o voluntarias se distribuirá entre los socios en la proporción correspondiente a sus respectivas participaciones sociales. ----------------------------------------

H) Dentro del mes siguiente a la aprobación de las cuentas anuales se presentará, para su depósito en el Registro Mercantil del domicilio social,