Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

5   - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   LEHMAN BROTHERS HOLDINGS INC., et al.

9            Debtors.

10  - - - - - - - - - - - - - - - - - - - - - -x

11  In the Matter of:

12

13  LEHMAN BROTHERS INC.

14            Debtor.

15  - - - - - - - - - - - - - - - - - - - - - -x

16            United States Bankruptcy Court

17            One Bowling Green

18            New York, New York

19

20            October 20, 2010

21            10:06 AM

22

23  B E F O R E:

24  HON. JAMES M. PECK

25  U.S. BANKRUPTCY JUDGE

Page 2

1

2    HEARING re Motion of Capital One, N.A. for Relief from the

3    Automatic Stay

4

5    HEARING re Motion of Alpine Bank for Relief from the Automatic

6    Stay

7

8    HEARING re Motion of Lehman Brothers Special Financing Inc. for

9    Enforcement of the Automatic Stay and for Sanctions for

10   Violation of the ADR Procedures Order

11

12   HEARING re Motion of Debtors for Authorization and Approval of

13   the Global Settlement Among the Debtors and the Ambac Settling

14   Parties

15

16   HEARING re Motion of the Debtors for Authority to Enter into

17   Settlement with SunCal Trustee on Behalf of SunCal Involuntary

18   Debtors

19

20   HEARING re Debtors' Motion for Approval of a Settlement

21   Agreement Among LBSF, LBHI, and Societe Generale, New York

22   Branch and Certain Related Relief

23

24   HEARING re Debtors' Motion to Stay Avoidance Actions and Grant

25   Certain Related Relief

Page 3

1

2     HEARING re Lehman Brothers Special Financing Inc.'s Motion for

3     Expedited Discovery Pursuant to Bankruptcy Rules 7026 and 9014

4

5     SECURITIES INVESTOR PROTECTION CORPORATION PROCEEDINGS:

6     HEARING re Motion of Newport Global Opportunities Fund (Master)

7     L.P. and Newport Global Opportunities Fund L.P. for Entry of an

8     Order Authorizing Newport to File Under Seal the Motion for

9     Leave to Conduct Rule 2004 Discovery and Certain Exhibits

10    Thereto

11

12    HEARING re Motion of Newport Global Opportunities Fund (Master)

13    L.P. and Newport Global Opportunities Fund L.P. for Leave to

14    Conduct Rule 2004 Discovery

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 4

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES LLP

4          Attorneys for Debtors and Debtors-in-Possession

5          767 Fifth Avenue

6          New York, NY 10153

7

8   BY:   HARVEY R. MILLER, ESQ.

9          JACQUELINE MARCUS, ESQ.

10          ERIC J. PETERMAN, ESQ.

11

12   WEIL, GOTSHAL & MANGES LLP

13          Attorneys for Debtors and Debtors-in-Possession

14          700 Louisiana

15          Suite 1600

16          Houston, TX 77002

17

18   BY:   ALFREDO R. PEREZ, ESQ.

19

20

21

22

23

24

25

Page 5

1

2   WEIL, GOTSHAL & MANGES LLP

3          Attorneys for Debtors

4          1300 Eye Street NW

5          Suite 900

6          Washington, DC 20005

7

8   BY:    RALPH I. MILLER, ESQ.

9          HOLLY E. LOISEAU, ESQ.

10

11  WEIL, GOTSHAL & MANGES LLP

12          Attorneys for Debtors

13          1395 Brickell Avenue

14          Suite 1200

15          Miami, FL 33131

16

17  BY:    EDWARD MCCARTHY, ESQ.

18          EDWARD SOTO, ESQ.

19          (TELEPHONICALLY)

20

21

22

23

24

25

Page 6

1

2      JONES DAY

3            Attorneys for the Debtors Lehman Brothers Holdings Inc.

4             and Lehman Brothers Special Financing

5            222 East 41st Street

6            New York, NY 10017

7

8      BY:   AVIVA W. SISITSKY, ESQ.

9            JAYANT W. TAMBE, ESQ.

10

11     STUTMAN, TREISTER & BLATT

12            Attorneys for Lehman Brothers Holdings, Inc.

13            1901 Avenue of the Stars

14            12th Floor

15            Los Angeles, CA 90067

16

17     BY:   MICHAEL NEUMEISTER, ESQ.

18            MARINA FINEMAN, ESQ.

19            JEFFREY H. DAVIDSON, ESQ.

20            (TELEPHONICALLY)

21

22

23

24

25

Page 7

1

2   HUGHES HUBBARD & REED LLP

3        Attorneys for Movant, James W. Giddens, SIPA Trustee

4        One Battery Park Plaza

5        New York, NY 10004

6

7   BY:   JEFFREY S. MARGOLIN, ESQ.

8        DAVID WILTENBURG, ESQ.

9

10  MILBANK, TWEED, HADLEY & MCCLOY LLP

11       Attorneys for the Official Committee of Unsecured

12        Creditors

13       One Chase Manhattan Plaza

14       New York, NY 10005

15

16  BY:   DENNIS C. O'DONNELL, JR.

17       DENNIS F. DUNNE, ESQ.

18

19

20

21

22

23

24

25

Page 8

1

2    MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         International Square Building

6         1850 K Street, NW

7         Washington, DC 20006

8

9    BY:   ADRIAN C. AZER, ESQ.

10

11   QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP

12         Conflicts Counsel for Committee

13         865 South Figueroa Street

14         10th Floor

15         Los Angeles, CA 90017

16

17   BY:   ERIC D. WINSTON, ESQ.

18

19   UNITED STATES DEPARTMENT OF JUSTICE

20         Office of the United States Trustee

21         33 Whitehall Street

22         Suite 2100

23         New York, NY 10004

24

25   BY:   ANDREW D. VELEZ-RIVERA, ESQ.

Page 9

```
 1
 2    ALSTON & BIRD LLP
 3         Attorneys for Bank of America, as Libra Trusted
 4         90 Park Avenue
 5         New York, NY 10016
 6
 7    BY:   MICHAEL E. JOHNSON, ESQ.
 8
 9    BECKER, GLYNN, MELAMED & MUFFLY LLP
10         Attorneys for Alpine Bank
11         299 Park Avenue
12         New York, NY 10171
13
14    BY:   ALEC P. OSTROW, ESQ.
15
16    BOIES SCHILLER & FLEXNER LLP
17         Attorneys for BnP Paribas London Branch
18         333 Main Street
19         Armonk, NY 10504
20
21    BY:   MOTTY SHULMAN, ESQ.
22
23
24
25
```

1

2    BROWN RUDNICK LLP

3         Attorneys for Loreley Financing (Jersey) Nos. 8, 15 and

4          24 Limited

5         Seven Times Square

6         New York, NY 10036

7

8    BY:   ANDREW S. DASH, ESQ.

9         DAVID J. MOLTON, ESQ.

10

11   BROWN RUDNICK LLP

12        Attorneys for Loreley Financing (Jersey) Nos. 8, 15 and

13         24 Limited

14        One Financial Center

15        Boston, MA 02111

16

17   BY:   BENJAMIN R. CHAPMAN, ESQ.

18        ANGELO THALASSINOS, ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25

Page 11

```
 1

 2    CHAPMAN AND CUTLER LLP

 3         Attorneys for U.S. Bank, National Association, as Trustee

 4         111 West Monroe Street

 5         Chicago, IL 60603

 6

 7    BY:   FRANKLIN H. TOP, III, ESQ.

 8         RICHARD DOWNEY, ESQ.

 9         JAMES HEISER, ESQ. (TELEPHONICALLY)

10

11    DEWEY & LEBOEUF, LLP

12         Attorneys for Ambac Settling Parties

13         One Embarcadero Center

14         Suite 400

15         San Francisco, CA 94111

16

17    BY:   BENNETT G. YOUNG, ESQ.

18

19    DEWEY & LEBOEUF, LLP

20         Attorneys for Ambac Settling Parties

21         1301 Avenue of the Americas

22         New York, NY 10019

23

24    BY:   JEFFREY CHUBAK, ESQ.

25
```

Page 12

1

2     FOLEY & LARDNER LLP

3          Attorneys for Wisconsin Commissioner of Insurance

4          Verex Plaza

5          150 East Gilman Street

6          Madison, WI 53703

7

8     BY:   MICHAEL B. VAN SICKLEN, ESQ.

9          (TELEPHONICALLY)

10

11    KUTAK ROCK LLP

12          Attorneys for Nebraska Investment Finance Authority

13          The Omaha Building

14          1650 Farnam Street

15          Omaha, NE 68102

16

17    BY:   BRUCE A. WILSON, ESQ.

18

19    LOWENSTEIN SANDLER P.C.

20          Attorneys for Liberty View

21          65 Livingston Avenue

22          Roseland, NJ 07068

23

24    BY:   SEAN QUIGLEY, ESQ.

25

Page 13

1

2    MAYER BROWN LLP

3         Attorneys for Societe Generale and Canadian Imperial Bank

4          of Commerce

5         1675 Broadway

6         New York, NY 10019

7

8    BY:   STEVEN WOLOWITZ, ESQ.

9         BRIAN TRUST, ESQ.

10

11

12   NIXON PEABODY LLP

13        Attorneys for Deutsche Bank National Trust Co.

14        100 Summer Street

15        Boston, MA 02110

16

17   BY:   RICHARD C. PEDONE, ESQ.

18

19   REED SMITH LLP

20        Attorneys for Bank of New York Mellon Trust Company,

21         N.A., as Indenture Trustee

22        599 Lexington Avenue

23        New York, NY 10022

24

25   BY:   ERIC A. SCHAFFER, ESQ.

Page 14

1

2     SEWARD & KISSEL LLP

3          One Batter Park Plaza

4          New York, NY 10004

5

6     BY:   JUSTIN L. SHEARER, ESQ.

7          JOHN ASHMEAD, ESQ.

8

9     THOMAS PIETRANTNIO, P.C.

10          Attorneys for Interface Cable

11          334 Main Street

12          Port Washington, NY 11050

13

14     BY:   THOMAS PIETRANTONIO, ESQ.

15

16     WHITE & CASE LLP

17          Attorneys for Ad Hoc Committee of Lehman Brothers

18           Creditors

19          1155 Avenue of the Americas

20          New York, NY 10036

21

22     BY:   J. CHRISTOPHER SHORE

23

24

25

Page 15

1

2    WILLKIE FARR & GALLAGHER LLP

3         Attorneys for Natixis Financial Products LLC

4         787 Seventh Avenue

5         New York, NY 10019

6

7    BY:   MELANIE GROSSMAN, ESQ.

8

9    WOLLMUTH MAHER & DEUTSCH LLP

10        Proposed Counsel for the Debtors, Adversary 10-03547

11        500 Fifth Avenue

12        New York, NY 10110

13

14   BY:   PAUL R. DEFILIPPO, ESQ.

15         WILLIAM A. MAHER, ESQ.

16

17

18

19

20

21

22

23

24

25

```
 1                     P R O C E E D I N G S

 2              THE CLERK:  All rise.

 3              THE COURT:  Be seated, please.  Good morning.  Good

 4     morning, Mr. Miller.

 5              MR. HARVEY MILLER:  Good morning, Your Honor.  Harvey

 6     Miller, Weil Gotshal & Manges on behalf of the debtors.  This

 7     is an omnibus hearing, Your Honor, in the Lehman cases.

 8     Referring to the agenda, Your Honor, we have a number of

 9     uncontested matters.  Items 1 and 2, which are motions by

10     Capital One, N.A. and a motion by Alpine Bank for modification

11     of the automatic stay.  These have been resolved, Your Honor.

12     There are no appearances by the moving parties.  We've been

13     authorized to represent to the Court that it's been resolved.

14     Stipulations are in the process of being prepared and will be

15     submitted to the Court either this afternoon or tomorrow.

16              THE COURT:  I see Mr. Ostrow standing.  I don't know

17     if he's standing for either of these matters or if, for some

18     reason, he needed to stretch.

19              MR. OSTROW:  Good morning, Your Honor.  Alec Ostrow

20     from Becker, Glynn, Melamed & Muffly for Alpine Bank.  I don't

21     disagree with what Mr. Miller said.  I'm just here, Your Honor,

22     because we are very close to resolving the matter.  We have the

23     debtors' attention and I don't want to lose it.  If we can't

24     get to final resolution, I'd like the opportunity to bring this

25     back up on very short notice.  That's all.
```

Page 17

1              THE COURT:  Okay.  You've said what you've said.  I'm

2      not commenting further.

3              MR. HARVEY MILLER:  It will be resolved, Your Honor.

4              THE COURT:  I expect so.

5              MR. OSTROW:  Thank you.

6              MR. HARVEY MILLER:  Your Honor, number 3 is a motion

7      by Lehman Brothers Special Financing Inc. to enforce the

8      automatic stay and for sanctions for violations of the ADR

9      procedures order.  The respondents, Your Honor, PT Mobile-8,

10     which is in Indonesia, has taken the position Your Honor has no

11     jurisdiction over it.  And we're moving forward, Your Honor.

12     There's a declaration by my associate, Holly Loiseau who is

13     here in court if Your Honor would like some further information

14     as to this motion.

15             THE COURT:  I looked pretty carefully at this.  Are

16     one of the issues of service or this is just a situation where

17     the Mobile-8 entity in Indonesia is thumbing its nose that

18     everything that goes on in this court?

19             MR. HARVEY MILLER:  Your Honor, may I introduce Ms.

20     Loiseau?  She is (indiscernible) in this matter.

21             THE COURT:  Fine.  Yes.  Welcome.

22             MS. LOISEAU:  Good morning, Your Honor.  Holly Loiseau

23     for the debtors.  Yes, Your Honor.  What has occurred with this

24     case is that the PT Mobile-8 was involved with the ADR

25     procedures process.  And they responded to the notice.  We held

Page 18

```
 1   three additional settlement conferences with them by phone.

 2   And then they refused to respond to the court-appointed

 3   mediator for mediation.  And then, on September 10th, the

 4   debtor received a copy of the complaint that had been filed

 5   apparently in May of 2010 in the Jakarta court.  The

 6   counterparty here was in full knowledge of the debtor's

 7   bankruptcy case because they had been participating in the ADR

 8   procedures process.

 9          In addition, we have delivered notice of this motion

10   by e-mail, facsimile and by overnight mail.  We also delivered

11   a letter before we filed the motion saying that the Jakarta

12   action that they had filed was in violation of the automatic

13   stay and asking that they withdraw it immediately because it

14   was in violation of the stay.  The counterparty -- their

15   counsel refused to accept hand-delivery of that letter on

16   several occasions.  We had obtained local counsel on behalf of

17   the debtors in Jakarta who are very familiar with this

18   particular counsel for the counterparty and they refused to

19   accept service of that letter.

20          THE COURT:  Okay.  Based upon your representations,

21   there seems to be no doubt that Mobile-8 has actual notice of

22   the bankruptcy, participated to some extent in the ADR

23   procedures and, presumably by design, decided to ignore the

24   authority of the bankruptcy court and to take steps to protect

25   itself under local law.  I have no further questions of you.  I
```

1    understand the situation.

2             MS. LOISEAU:  Thank you, Your Honor.

3             THE COURT:  This is, at this point, an uncontested

4    motion of Lehman Brothers Special Financing to enforce the

5    automatic stay and for sanctions.  It's unopposed and the

6    motion will be granted.  What happens thereafter, I leave to

7    the debtors.

8             MS. LOISEAU:  Thank you, Your Honor.

9             THE COURT:  What will happen at this point?

10            MS. LOISEAU:  Well, Your Honor, the debtors have filed

11   an adversary proceeding as well with respect to the amounts

12   that are owed by this counterparty which is approximately 4.6

13   million dollars plus interest.  And the debtors will proceed

14   with whatever avenues they -- are available to them to try to

15   enforce that judgment and to recover the amounts payable to the

16   estate.

17            THE COURT:  And I take it that you're taking

18   appropriate steps in Jakarta with local counsel to pursue all

19   remedies.

20            MS. LOISEAU:  What we have done is our first move was

21   to come to this court which we believe is the appropriate court

22   to decide all matters with respect to claims against the

23   debtor.  And -- but we have retained local counsel to advise us

24   on the procedures and the process there --

25            THE COURT:  Okay.

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 20 of 83

Page 20

 1          MS. LOISEAU:  -- and what impact this judgment might

 2     have -- a judgment from this Court would have.

 3          THE COURT:  All right.  Fine.  Good luck.

 4          MS. LOISEAU:  Thank you.

 5          MR. HARVEY MILLER:  If Your Honor please, for the

 6     fourth uncontested matter, Jones Day appears on behalf of the

 7     debtor.

 8        (Pause)

 9          MS. SISITSKY:  Good morning, Your Honor.  Aviva

10     Sisitsky of Jones Day for the debtors on the uncontested matter

11     of the motion by Lehman Brothers Holdings and its affiliated

12     debtors for authorization and approval for the settlement

13     agreement with Ambac Assurance Corporation and certain related

14     Ambac entities.

15          The global settlement agreement as described din the

16     motion provides that Ambac will be withdrawing all sixty of its

17     proofs of claim filed in the debtors' Chapter 11 cases which

18     relate to complex residential mortgage-backed securities

19     transactions and which, in the aggregate, exceeds 6.1 billion

20     dollars.

21          The global settlement agreement also provides for a

22     general release by each party of the other party and certain

23     related entities and resolves the issues involved in three

24     contested credit derivative contracts in which Ambac provided

25     financial guaranty insurance contracts.

Page 21

1          Your Honor, the motion and accompanying declaration of

2     Daniel Ehrmann was filed on October 5th.  No objections have

3     been filed and none received as of this morning.  Proper notice

4     was provided in accordance with the claim settlement procedures

5     established by this Court in its March 31st, 2010 order.  And

6     the affidavit of service has also been filed.  The creditors'

7     committee also supports this motion, Your Honor, and the global

8     settlement agreement.

9          Two points on the motion, if I may quickly.  The

10    parties reached final documentation and execution of the global

11    settlement agreement subsequent to the October 5th filing of

12    the motion.  Upon execution of the global settlement agreement,

13    the parties mutually agreed to add signatories to both sides.

14    The motion which summarizes in detail the salient terms of the

15    global settlement remains unchanged.  This is a technical

16    point, Your Honor.  Accordingly, there are now thirteen Ambac

17    related entities that are signatories and all of the Lehman

18    debtors are also signatories.

19          We had conducted an investigation by reviewing the

20    debtors' schedules and have spoken to our client and consent

21    that there are no claims by these additional debtor schedules.

22    Thus, we are here today on behalf of all the debtors asking for

23    Your Honor's approval of the global settlement agreements to

24    which they all are now parties.

25          We've amended the proposed order to reflect this

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 22 of 83

Page 22

1   technical change.  And if I may approach, I'm happy to hand up

2   the proposed order along with the blackline.

3         THE COURT:  Yes.  You may approach.

4      (Pause)

5         MS. SISITSKY:  I also wanted to mention that the

6   global settlement agreement, Your Honor, is subject to two

7   approvals:  Your Honor's approval and the approval of the

8   circuit court of Dane County of Wisconsin or the rehabilitation

9   court in which Ambac is engaged in their rehabilitation

10  proceeding.  The global settlement agreement provides that the

11  settlement becomes effective upon the approval of both Courts.

12  We should have participating by telephone counsel for Ambac

13  parties and counsel for the Office of the Commissioner of

14  Insurance.  That's my understanding that they were planning on

15  participating by phone.  And they can explain the process in

16  the rehabilitation court for getting the approval and that

17  prosecution of the plan of rehabilitation filed in the Ambac's

18  rehabilitation proceedings on October 8th would not affect the

19  global settlement agreement.

20        THE COURT:  Let's take a moment and find out if

21  anyone's on the phone from Wisconsin who wishes to speak up to

22  this issue.

23        MR. VAN SICKLEN (TELEPHONICALLY):  Yes, Your Honor.

24  My name is Mike van Sicklen.  I'm a partner at the law firm of

25  Foley & Lardner.  I'm appearing telephonically this morning

Page 23

1     from Madison, Wisconsin.  We represent the Wisconsin

2     Commissioner of Insurance both as the regulator of Ambac

3     Assurance Corporation and as a court-appointed rehabilitator of

4     the segregated account of Ambac Assurance.  Are you able to

5     hear me okay, Your Honor?

6             THE COURT:  Loud and clear, thank you.

7             MR. VAN SICKLEN:  Okay.  Just three very brief points.

8     The commissioner here in Wisconsin supports approval both in

9     your court and in our court of the global settlement agreement.

10    We think it makes imminent sense.  It avoids protracted

11    litigation with very uncertain outcomes of both sides.  It's a

12    mutual release.

13            Secondly, we have filed already earlier this week a

14    parallel application for approval with our Wisconsin

15    rehabilitation court of the agreement.  It's set for a hearing

16    here in Wisconsin on November 5th with a prior deadline for

17    filing any objections.  If none are received, we will ask Dane

18    County Circuit Court to approve our entry through the

19    commissioner into the settlement on October 31st.  There was a

20    reference by counsel for Lehman Brothers a minute ago about our

21    pending plan for confirmation, the rehabilitation that we've

22    promulgated on behalf of the commissioner.  We do not think

23    that how that process unfolds at confirmation will alter or

24    impair the effectiveness of the global settlement being entered

25    into by the commissioner or Ambac both of which are

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 24 of 83

Page 24

1    signatories.

2         So I'm happy to field any questions you have, Your

3    Honor.  But we're anticipating a smooth approval process at

4    this hearing.

5         THE COURT:  Okay.  Thank you.

6         MR. YOUNG (TELEPHONICALLY):  Your Honor, this is

7    Bennett Young of Dewey & LeBoeuf in San Francisco.  I represent

8    Ambac Assurance Corporation and its affiliates.  And I agree

9    with the statements that Mr. van Sicklen has just made

10   regarding the (indiscernible).  I just wanted to note my

11   appearance for Your Honor.

12        THE COURT:  All right.  Thank you very much.  This may

13   be a good time to hear from counsel for the committee to the

14   extent that there's any comment to be made on this.  Or if you

15   don't need to speak, you don't have to, but it seems like a

16   logical time since we're hearing from other parties.

17        MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,

18   Tweed, Hadley & McCloy on behalf of the committee.  Not much to

19   say, Your Honor.  We agree.  We support the settlement.  It was

20   evaluated by both our derivative subcommittee and the full

21   committee and we believe that it's a good settlement for the

22   debtors.

23        THE COURT:  Okay.  Fine.

24        MS. SISITSKY:  One last thing, Your Honor.  Attached

25   to the motion is Mr. Ehrmann's written declaration which could

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 25

1    be treated as his testimony for hearing if Your Honor wishes.

2    Otherwise, I'm happy to proffer his testimony.

3            THE COURT:  You can do it but I've seen the

4    declaration on the record and this not only uncontested but

5    seems to be broadly supported by parties in interest.  And the

6    fact that it has been reviewed by the creditors' committee and

7    found acceptable is also very helpful.  It's obviously a

8    settlement that benefits both this estate and the Ambac

9    rehabilitation that was the cause of (indiscernible) endorsing

10   it on both sides.  And I accept the declaration that has been

11   filed as the functional equivalent of Mr. Ehrmann's testimony.

12           MS. SISITSKY:  Thank you, Your Honor.  And then I

13   think we're prepared to rest on our papers at this point and we

14   ask this Court to approve the motion and enter the proposed

15   order.

16           THE COURT:  I approve and I will enter the order.

17           MS. SISITSKY:  Thank you.

18           THE COURT:  One thing before I hear from Mr. Perez and

19   before you leave.  The order that was handed up doesn't have a

20   disk attached so that if you have another disk maybe we can

21   allow Weil Gotshal to act as the (indiscernible) but at counsel

22   table so that I can then (indiscernible).  Thank you.

23           MS. SISITSKY:  Thank you, sir.

24           MR. PEREZ:  Good morning, Your Honor.  Alfredo Perez

25   on behalf of the debtors.  Your Honor, I'm here on the only

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 26 of 83

Page 26

```
 1    group of SunCal cases that I haven't been here on before.
 2    There was the matters that we were here on the last time which
 3    we called the Core I matters.  The Court approved the
 4    settlement that was -- there's a motion to approve the
 5    settlement agreement in the SunCal cases scheduled for late
 6    December.  There is a hearing on the disclosure statement in
 7    that case scheduled for early December.  Then there are the
 8    SunCal voluntary cases which were the subject of several
 9    hearings in this court.  Those are on appeal to the Second
10    Circuit.  Judge -- one of the -- Judge Cabranes expedited the
11    appeal so our brief is due next week and the matter is set to
12    be argued at the beginning of December.
13         Your Honor, with respect to these cases, which we call
14    the involuntary cases or the trustee cases, the debtor has
15    entered into a settlement agreement that will be incorporated
16    into a plan.  The total debt with respect to these cases is
17    about a billion one.  There are six loans but I think there are
18    seven properties that are actually covered by the loans, Your
19    Honor.
20         In essence, the settlement agreement would provide for
21    (a)the conveyance of the property to Lehman entities; (b)the
22    funding of a plan by the Lehman entities which -- and the plan
23    basically has two components.  One is the expenses and one is
24    the payment of creditors.  The creditors will be paid on a
25    sliding scale depending on what time they incurred their debt
```

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 27 of 83

Page 27

1    or whether they're secured.  And then third, a full release of

2    all of the parties from all of the underlying litigation.

3            Your Honor, this has been the subject of very, very

4    lengthy extensive negotiations.  The motion papers that we

5    filed set forth, in essence, the general terms of the

6    agreement.  But on October 4th, attached to a notice under my

7    signature, we actually filed the actual plan and disclosure

8    statement that was filed both in the involuntary case.  And

9    then subject to a much earlier order of this Court, we filed

10   the upgrade of the plan in the voluntary cases, really not

11   related to this motion today.

12           Your Honor, we did receive one response.  It wasn't an

13   objection -- from counsel for the SunCal voluntary debtors, Mr.

14   O'Keefe.  I don't see him in the courtroom.  It's possible he's

15   on the phone but I don't know whether he is or not.

16           THE COURT:  Let's find out.  Mr. O'Keefe, are you

17   anywhere to be heard?  Apparently, he's not on the line.

18           MR. PEREZ:  Okay.  Thank you, Your Honor.  And

19   basically, he raised two points.  One, he wanted to make sure

20   that our settlement agreement was subject to the approval of

21   the plan in the SunCal cases which, of course, it was.  It said

22   it in there.  We filed a brief response saying that it was.

23   And second, he wanted some additional language in the order

24   making sure that there was no prejudgment as to the

25   jurisdiction of the California court which we've included in

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 28

1    the order.

2         We filed yesterday a very, very short declaration from

3    Mr. Brusco.  For all intents and purposes, Your Honor, the

4    matter is really not contested because I think we've addressed

5    the two issues that he raised.  And they really weren't an

6    objection but were more by means of clarification.  So unless

7    the Court has any questions, we would request entry of the

8    order.

9         THE COURT:  I don't have any questions in respect of

10   the matter before me.  But I do have a question as it relates

11   to the continued controversy with the plaintiffs represented by

12   Mr. O'Keefe and the degree to which that represents a threat to

13   the successful conclusion of the cases that are the subject of

14   the separate settlement agreements that I have already approved

15   and that I'm about to approve.

16        MR. PEREZ:  Your Honor, I think that -- just by way of

17   background.  There is a pending appeal in the Second Circuit on

18   Your Honor's two orders that were affirmed by Judge Hall.

19   There is the appeal in the Ninth Circuit with respect to the

20   order -- the back order.  There is a second appeal pending at

21   the BAP with respect to the proofs of claim that were filed by

22   Lehman.  There is currently a motion which has been briefed --

23   we referenced it in the footnote -- that has not been decided

24   or I don't even believe has been argued in which the SunCal

25   voluntary debtors are seeking to stay everything until relief

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 29 of 83

Page 29

1    from stay is obtained in these cases.  And then there are

2    plans.  They have filed a plan with respect to all voluntary

3    and involuntary debtors.  And we have filed a plan with respect

4    to all voluntary and involuntary debtors.

5            So, Your Honor, not being the person directly involved

6    with it, I think that there is a significant possibility that

7    there might be some interference, if you will, as a result of

8    the controversy with the SunCal voluntary debtors.

9            THE COURT:  Are any conversations underway or

10   contemplated that might bring about a global resolution of all

11   issues in the cases?

12           MR. PEREZ:  Your Honor, there have been conversations

13   that have gone on between Mr. Pachulski and Mr. Soto and

14   counsel for Mr. Couchot, Mr. O'Keefe's partner.  There have

15   been conversations that have gone on from time to time with

16   respect to resolving portions of the matter, with respect to

17   solving things a little bit more generally.  But to my

18   knowledge, there are no what I would refer to current ongoing

19   global discussions.  But there are certainly discussions very

20   frequently with respect to particular issues and sometimes more

21   global aspects.

22           THE COURT:  Okay.  Thank you for that.  I've looked at

23   Mr. Brusco's declaration and this is essentially uncontested

24   now.  And unless someone wishes to be heard on the subject, I'm

25   prepared to approve this.

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 30 of 83

Page 30

 1              MR. O'DONNELL:  Your Honor, Dennis O'Donnell again

 2      from Milbank for the official committee.  We did file

 3      statements for this one, Your Honor, as we have in the past.

 4      SunCal is something we've been following very closely.  Our FAs

 5      are heavily involved in the business decisions being made here.

 6      And notwithstanding the status of potential issues that

 7      confront getting this approved as part of the plan, we believe

 8      that the settlement set forth in the motion is a good

 9      settlement again and it should be approved by the Court.

10              THE COURT:  Fine.  I'm approving it.

11              MR. PEREZ:  Thank you, Your Honor.  May I be excused?

12              THE COURT:  Yes.

13              MR. PEREZ:  Thank you.

14          (Pause)

15              THE COURT:  Good morning, Mr. Miller.

16              MR. RALPH MILLER:  Good morning, Your Honor.  I'm

17      Ralph Miller from Weil Gotshal & Manges here for Lehman

18      Brothers Holdings Inc. known as LBHI and Lehman Brothers

19      Special Financing Inc. known as LBSF.  On the approval hearing

20      for a settlement with Societe Generale and disputes arising

21      from transactions known as Libra and MKP Vela -- I'm going to

22      refer to Societe Generale as SG.  First, I'm pleased to report

23      that we have resolved the last of the two objections this

24      morning in discussions with Mr. Eric Schaffer.  So there are no

25      objections to this motion pending.  But I do need to take a

Page 31

1    moment to explain the basis for resolving these objections and

2    some changes to the order, if I may, Your Honor.

3            THE COURT:   Sure.

4            MR. RALPH MILLER:   May I approach, Your Honor, to

5    provide a couple of copies of the revised order to the Court?

6            THE COURT:   You may approach.

7        (Pause)

8            MR. RALPH MILLER:   There are two (indiscernible).

9    We'll talk about one, (indiscernible) motion.

10           Your Honor, after months of intense negotiations with

11   SG, the creditors' committee and LBSF have achieved a

12   settlement that will bring at least 425 million dollars of net

13   value into the LBSF estate.  And the preserves claims of LBSF

14   that could bring in an additional approximately seventy-two

15   million dollars.  Two limited objections were filed with the

16   settlement, one by the Libra trustee, which is Bank of America,

17   and one by the MKP Vela trustee which is the Bank of New York

18   Mellon Trust Company.  Through negotiations yesterday and this

19   morning, those objections were resolved.  The order I have

20   passed up is redlined to reflect the changes made last night.

21   And it has a handwritten edition that was negotiated this

22   morning which I'd like to read into the record.  Our proposal,

23   if it's acceptable to the Court, is for us to bring the Court a

24   corrected version this afternoon that reflects all of these

25   changes rolled into the order.

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 32 of 83

Page 32

1          THE COURT:  Yes.  That's fine.

2          MR. RALPH MILLER:  The changes, Your Honor, all have

3    to do essentially with the future of the matter and it may make

4    sense if I take just a moment to explain to the Court what is

5    being resolved and what is not being resolved by the

6    settlement.

7          The Court's already aware of the structure of the

8    Libra transaction because it was the subject of an evidentiary

9    hearing concerning a letter agreement with Deutsche Bank that

10   dealt with a possible assumption of the Libra deal by Deutsche

11   Bank and because cross-motions for summary judgment were argued

12   but not yet decided concerning a purported determination of the

13   Libra transaction.  Fortunately, the transaction documents and

14   the MKP Vela transaction are, for all material purposes,

15   virtually identical to those in Libra.

16         For the record, let me explain briefly what the parts

17   of the transaction are that are being settled and what remains

18   open.  As the Court will recall from Libra, these transactions

19   have certain basic components.  First, there is a special

20   purpose entity that is created for each transaction.  Those

21   were called Libra CDO Limited, in the case of the Libra

22   transaction; MKP Vela CDO, Ltd. for that transaction.

23         Assets were put into these special purpose vehicles

24   through the sale of notes and the special purpose vehicles

25   entered into credit default swap agreements in October and

Page 33

1    November of 2006 with LBSF that gave credit protection to LBSF

2    keyed primarily to the performance of certain mortgage pools.

3    As we all know, mortgages did not perform well between 2006 and

4    2008.  So the amount that would have been due to LBSF at the

5    time of the LBSF filing for protection in October of 2008 was

6    very large and was expected to increase.  The Court may recall

7    that a document called a "Green sledge declaration" was

8    presented to the Court in the hearing on the letter agreement

9    with Deutsche Bank which estimated the value of payments

10   expected under the Libra credit default swap agreement alone

11   would exceed 800 million dollars.

12           In addition to money raised through notes, these

13   special purpose vehicles also had a second source of funding

14   known as the senior swap agreement which was provided by SG for

15   both transactions.  LBSF contends that the purported

16   terminations of these transactions in October of 2008 were

17   invalid because they did not comply with certain requirements

18   in the documents for the termination procedures.  If these

19   transactions were not properly terminated, SG would be exposed

20   to payment of many hundreds of millions of dollars.  The assets

21   left in the special purpose entities would also be subject to

22   depletion if the transactions are not properly terminated.

23           As explained in detail in the motion, the settlement

24   agreement and the order, this settlement covers the exposure of

25   SG on its senior swap.  While preserving the right of LBSF and

Page 34

1    SG as assignee of LBSF to recover the assets that remain in the

2    transaction.  Most of the changes, Your Honor, have to do with

3    the possibility of this -- what's referred to as future

4    litigation and how that is being dealt with in the order and

5    the agreement.

6         At this point, Your Honor, I'd like to yield to Mr.

7    Eric Winston, counsel for the official committee of unsecured

8    creditors for an explanation of the committee's position.  And

9    then I believe Mr. Steven Wolowitz wants to explain the

10   position of SG on the (indiscernible) briefly.  And that will

11   conclude the presentations for the motion unless the Court has

12   questions.

13        I do want to actually -- I have one more thing.  I do

14   want to read from, if I might, into the record, this

15   handwritten change.

16        THE COURT:  All right.

17        MR. RALPH MILLER:  -- is being made.  The handwritten

18   change, Your Honor, is on the last paragraph of the order.  And

19   since I believe all of that last paragraph is new since the

20   filed version, I'll read it all in context if I may briefly.

21   It's titled "Reservation of Rights with Respect to Future

22   Litigation".  "Nothing set forth in this order shall impair or

23   affect any rights, claims or defenses of the other Libra

24   parties with respect to the Libra termination claim or the

25   Libra priority claim or any of the rights, claims or defenses

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 35 of 83

Page 35

1    of the other Vela parties with respect to the Vela termination

2    claim or the Vela priority claim" -- and this is the

3    handwritten edition -- "or any other rights, claims or defenses

4    of the other Libra parties or the other Vela parties in any

5    litigation that the debtors or SG may bring related to the

6    distribution of the remaining Libra assets or the remaining

7    Vela assets."  I should note that there are some capitalized

8    terms here which are defined in the order or the attached

9    settlement agreement.

10        (Pause)

11        MR. RALPH MILLER:  I'm sorry.  I believe I read in a

12    word that was crossed out, Your Honor.  The word "may" was

13    crossed out in this document.  But we will correct it.  Okay.

14    I'm sorry.  That phrase should be "that the debtors or SG bring

15    related to the distribution", Your Honor.

16        And now, Mr. Winston.

17        MR. WINSTON:  Good morning, Your Honor.  Eric Winston

18    of Quinn Emanuel Urquhart & Sullivan on behalf of the

19    creditors' committee.  The committee supports the settlement

20    and requests that the Court grant the motion.  By virtue of the

21    settlement, the debtors' estate will obtain 370 million dollars

22    in cash within a very short period of time with a guaranty of

23    an additional seventy-five million dollars.  This comes with a

24    consensual resolution with Societe Generale which would

25    otherwise be expected to vigorously contest, as they have

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 36 of 83

Page 36

1   already the termination claim.  In addition, the settlement

2   allows the estate the opportunity to recover up to

3   approximately seventy-two million dollars, as Mr. Miller

4   described.  Thus, the potential benefit to the estate is in

5   excess of a half a billion dollars.

6         The committee intervened in the Libra litigation last

7   year, participated in the summary judgment proceedings.  And

8   the committee's counsel, financial advisors and members have

9   been involved in lengthy negotiation with the debtors and

10  Societe Generale.  The product of this experience has resulted

11  in a settlement and the committee believes that the settlement

12  is in the best interest of the estates and general unsecured

13  creditors.

14        Unless Your Honor has any questions, that's the extent

15  of my presentation (indiscernible).

16        THE COURT:  Thank you.

17        MR. WINSTON:  Thank you.

18        MR. WOLOWITZ:  Good morning, Your Honor.  Steven

19  Wolowitz for Societe Generale.  Your Honor, SG supports and

20  agrees to the changes to the settlement agreement and the

21  proposed order and the conforming changes to the exhibits that

22  the debtors and the objecting parties have agreed to.  That's

23  the only statement for the record.

24        THE COURT:  It's a very brief statement.  I accept

25  that as a model for others to follow.

Page 37

1          MR. RALPH MILLER:  Your Honor, the statement of Mr.

2    Wolowitz reminds me that we do need to clarify for the record

3    that in addition to some changes in the order, there have been

4    changes agreed to in the settlement agreement and some of the

5    implementing documents.  And those will also be reflected in

6    the final to be given to the Court this afternoon.

7          THE COURT:  Okay.  I have a couple of questions, Mr.

8    Miller.  And, really, it doesn't go to approving the settlement

9    which is now a consensual settlement that clearly offers

10   substantial benefits to the estate.  So as to that, there's no

11   issue.

12          I have a pure question about case administration.  I

13   have currently pending cross-motions for summary judgment that

14   I have happily disregarded for the past, I think, nine months.

15   And I may be wrong as to the exact time period.  But I was

16   first notified by counsel quite a while ago that because

17   settlement discussions were proceeding and the parties were

18   making significant progress that I might put my pencil down in

19   respect of the pending summary judgment decision.  I now see

20   that the issue of effective termination remains an open issue

21   or at least as it relates to certain aspects of the settlement.

22   To what extent, if at all -- and I think the answer is no but

23   if the answer is yes, I need to know.  To what extent, if at

24   all, do the parties expect that the termination issue will be

25   resolved in the context of pending motions for summary

Page 38

1    judgment?  I think the answer is it won't be.  But if the

2    answer is it will, what, if anything, more is expected of the

3    Court other than simply rendering a decision?

4              MR. RALPH MILLER:  Your Honor, first of all, nothing

5    more is expected of the Court on those pending motions at this

6    time.  Let me explain very briefly how the debtors --

7              THE COURT:  I think the "at this time" clause is a

8    problem.

9              MR. RALPH MILLER:  Well, let me explain how the

10   debtors see this moving forward.  The debtors are always

11   anxious to try to work by cooperation and agreement if they

12   possibly can.  After this resolution, the debtors hope that we

13   will be able to develop a dialogue with the other parties which

14   includes the trustees and the noteholders or their

15   representatives.  There is some difficulty, Your Honor, in

16   these transactions actually finding all the noteholders and

17   determining who can speak for them.  If we're able to achieve

18   that, our goal obviously would be to see if there's some sort

19   of consensual resolution which would mean that there will be

20   nothing the Court would ever have to decide.  If there's not a

21   consensual resolution, the termination issue is somewhat

22   different between Libra and MKP Vela.  So if Libra were

23   resolved by agreement then these summary judgment motions would

24   clearly become essentially moot.  If Vela has to be heard,

25   there will need to be new -- probably discovery and some

Page 39

1    motions because there is a discovery issue in Vela that may

2    have to be resolved or may not.  It might be resolved by

3    agreement.

4          There is a remote possibility which I believe is

5    unlikely that the other parties might agree to go ahead and

6    basically adopt by reference the pleadings that were filed by

7    SG and ask the Court to reactivate the pending motions for

8    summary judgment.  I think in that case, we would treat them as

9    a new filing for summary judgment but we probably would prefer

10   not to have all the papers discarded in the unlikely event that

11   that happens.  If that occurred, essentially the same issues

12   that have already argued and presented would simply be

13   presented to the Court on that issue.  But that would require

14   agreement of other parties and they would have to be convinced

15   that the arguments they want to make are arguments that have

16   already been made by SG.  So in that regard, I think our

17   request would be please don't discard your files.  Please do

18   treat these motions as inoperative at this point and we --

19          THE COURT:  Did you say inoperative?

20          MR. RALPH MILLER:  Inoperative, yes, Your Honor.  And

21   if you wish to remove them in some administrative way from the

22   docket, that's fine.  But in full disclosure, we really believe

23   those issues were well framed.  The debtors feel strongly that

24   we were entitled to summary judgment.  We feel that still, like

25   we're not able to settle, we're going to be brining that issue

Page 40

1    back to the Court in very much the same form that you've

2    already seen.  And then, of course, we would not like for the

3    Court to have to reinvent any wheels if that issue does not get

4    resolved by agreement.

5          THE COURT:  For docket control purposes, I rather wish

6    that we could come up with a way for this to be removed from

7    the docket without prejudice so that it could be restarted at

8    some point in the future only because I have to track pending

9    matters that aren't resolved.

10         MR. RALPH MILLER:  Your Honor, I think we will need to

11   confer briefly with all the parties who have interest in the

12   (indiscernible).  Certainly, that makes sense to remove it for

13   administrative purposes so it's no longer being tracked.  And

14   it's certainly not in our view anything that would be

15   appropriate to be decided until the other parties who may want

16   to weigh in get a chance to decide what position they want to

17   take.

18         THE COURT:  Okay.  My next question was to the Vela

19   matter which I didn't learn about until the summary judgment

20   motion was filed.  I may have learned about Vela in the context

21   of Libra but I don't remember knowing about it.  And what's not

22   clear to me is what if the litigation with respect to Vela

23   which as been described weakly in the moving papers will be

24   brought or is that simply a reservation of rights to bring that

25   litigation?

Page 41

1           MR. RALPH MILLER:  Your Honor, there's a tolling

2    agreement involving Vela that tolls avoidance actions, ipso

3    facto claims and also would toll this termination claim.  And

4    we actually believe the termination claim doesn't need to be

5    tolled because there's no statute of limitations issue in the

6    contract claim.

7           So whether the Vela case even needs to be brought

8    would be a result of these discussions we hope to be able to

9    have.  I do understand that the Vela noteholders are somewhat

10   more available and accessible than the Libra noteholders have

11   been.  We understand that, we don't have details, that more of

12   them have been in contact with the trustee.  So we're somewhat

13   optimistic that we may be able to move more rapidly toward a

14   consensual agreement if that's possible in Vela.  And, of

15   course, there is a remote possibility, Your Honor, that the

16   parties might agree to an alternative dispute resolution

17   proceeding of some kind.  We don't think that's necessary, of

18   course, but that is another option.

19          While all those are proceeding, since there is a

20   tolling agreement, our intention would be not to put another

21   case on the Court's docket.  And if a case did come onto the

22   Court's docket, it would be focused on the issues that the

23   parties felt needed to be brought to the Court for decision.

24          THE COURT:  Okay.  Now, with some trepidation, I'm

25   going to mention something because it goes to docket control.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 42

1   When I learned that there was a settlement that was being

2   documented in the context of the Libra case, I withheld the

3   issuance of a certain decision in Harrier and Ballyrock.  That

4   decision is, for all practical purposes, ready to issue.  The

5   principle reason that I withheld issuing my decision is that I

6   did not want any aspect of that decision to affect what I

7   understood to be sensitive ongoing negotiations in Libra.  I

8   intend to issue that decision.  It's just a question of when.

9          MR. RALPH MILLER:  Well, Your Honor, I'm well aware of

10  those overlapping issues.  The same sensitive issues are now

11  part of the negotiations with remaining parties in these

12  transactions.  And I think sometimes uncertainty is beneficial

13  in negotiations.  Sometimes it's not.  So obviously, we

14  don't -- well, it's the Court's decision on what you want to

15  do.  But in our view, the same sensitive issues are still being

16  discussed.  And the Court may recall -- and this is sort of a

17  technical issue -- that the senior swap was written so that it

18  did not cover termination payments.  The SG settlement

19  essentially reflects only the issues related to the inadequacy

20  of the termination mechanism.  It does not reflect one way or

21  another the value of what's called the priority claims.  And

22  those claims involve the ipso facto doctrine the Court has

23  already dealt with in part in the NY Sapphire decision of

24  January 25th.  They also involve certain avoidance actions that

25  have recently been filed that are essentially alternative

Page 43

```
 1    rights to recovery in the event that those are interpreted in

 2    certain ways.  The Ballyrock and Harrier decisions have impact

 3    on some of those same issues particularly under New York law.

 4    And for that reason, this settlement really leaves all of those

 5    issues on the table and open and for discussion.  And this

 6    settlement does not reflect any valuation or interaction with

 7    those issues one way or another.  So the uncertainty remains

 8    and our hope would be that we can have some discussions in the

 9    present environment and try to see what comes from that.

10          THE COURT:  Well, to the extent uncertainty is

11    helpful, I'm going to keep things uncertain for a while longer

12    but not much longer.  And you have sixty days of uncertainty.

13    I hope you can use it wisely.

14          MR. RALPH MILLER:  Thank you, Your Honor.  Mr.

15    Schaffer, I think, wanted to --

16          MR. WOLOWITZ:  I'm sorry.  Could I just -- before Mr.

17    Schaffer, Your Honor -- Steve Wolowitz for SG.

18          THE COURT:  Yes, Mr. Wolowitz?

19          MR. WOLOWITZ:  Just --

20          THE COURT:  I just complimented you on brevity.

21          MR. WOLOWITZ:  I hope I'll be equally brief this time.

22    One slight modification to what Mr. Miller said with respect to

23    the pending Libra adversary proceeding.  SG, of course, if the

24    settlement agreement is approved, would be dismissed from that

25    action.
```

1           THE COURT:  Yes, of course.

2           MR. SCHAFFER:  Hopefully just as brief.

3           THE COURT:  Mr. Schaffer?

4           MR. SCHAFFER:  Your Honor, Eric Schaffer for the Bank

5    of New York Mellon Trust Company, trustee on the MKP Vela.  In

6    our limited objection, we expressed our concerns that the

7    settlement not bind parties in any promised but not yet issued

8    future litigation.  The amendment to the order as has been

9    presented to the Court addresses our concern.

10          THE COURT:  Fine.  I'm pleased to hear that.  Is there

11   anyone else who wishes to be heard at this point?

12          MR. JOHNSON:  Yes, Your Honor.  Good morning, Your

13   Honor.  Michael Johnson from Alston & Bird on behalf of Bank of

14   America as the Libra trustee.  Your Honor, I just wanted to

15   address briefly some of the issues that have just been

16   discussed the pending motions in respect of termination of the

17   Libra swap.  Just to clarify something that Mr. Miller said, my

18   client and the Libra CDO are actually parties to the pending

19   transaction.  And I do not have any authority from my client as

20   of today here and now to stand down on those motions.  In light

21   of the concerns that Your Honor has expressed about the Court's

22   docket and the statements Mr. Miller just made about a desire

23   to have negotiations to see whether those motions can be

24   resolved, I'm prepared to go back to my client and talk about

25   those things.  But I just wanted to clarify today for the

Page 45

1    record, Your Honor, that right here right now I don't have any

2    authority to consent to withdrawing those motions on behalf of

3    my clients even on a without prejudice basis.  But again, I

4    will go back and talk to my clients about that and talk to Mr.

5    Miller about it as well.

6        THE COURT:  Okay.  Thank you for that.  I'll ask one

7    more time.  Is there anyone else who wishes to be heard on this

8    at this point?  Apparently not.

9        The motion for approval of the settlement is granted

10   in accordance with the form of order that has been handed

11   portions of which are handwritten and the handwritten portions

12   have been read into the record by Mr. Miller.  I'm pleased that

13   the parties have been able to reach what appears to be a very

14   favorable settlement from the estates' perspective.  One of the

15   aspects of the Libra case, and I gather Vela is comparable,

16   that may not be apparent from the relevant presentation today

17   is that the transactions that underlie the settlement are of a

18   rather complexity that is beyond that of (indiscernible).  It's

19   extraordinarily very hard to understand third party track.  And

20   the arguments made by both LBSF and SG in connection with the

21   summary judgment motion were extraordinarily well presented.

22   And the issues are issues of first impression and hopefully the

23   parties will agree to settlements in the other matters

24   including Vela.  It is apparent to me as noted in the motion

25   papers that any resolution of this in Court is one that will

Page 46

1   not stop here and it will involve levels of appeal and expense

2   and ongoing risk.  And so for that reason, I am delighted to

3   approve the settlement and recognize that it represents an

4   extraordinary effort by the lawyers and other advisors who have

5   worked to develop I think a very sound resolution to this

6   ongoing dispute.  And for that reason, I approve it.

7           MR. RALPH MILLER:  Thank you, Judge.

8           THE COURT:  Mr. Miller?

9           MR. HARVEY MILLER:  Harvey Miller again.

10          THE COURT:  Oh.  If anyone wishes to be excused in

11   connection with this matter or other matters that we've heard,

12   you can leave.

13      (Pause)

14          MR. HARVEY MILLER:  I was about to say off the record,

15   Your Honor.  It's not often I can follow my father to

16   (indiscernible).

17          THE COURT:  Okay.  I'm the only one that laughed,

18   though.

19      (Pause)

20          MR. HARVEY MILLER:  If Your Honor please, this is item

21   7 on the agenda today.  It's the debtors' motion pursuant to

22   Section 105(a) of the Bankruptcy Code to stay prosecution of

23   avoidance actions as proposed in the motion and to extend the

24   time to serve summonses and complaints and to file the

25   avoidance actions.

Page 47

1          Your Honor, in the context of the size and complexity

2     of the bankruptcy cases in the Lehman enterprise and the

3     thousands of transactions that have to be analyzed amidst the

4     many other complex and difficult tasks that the debtors have

5     had to undertake, the statute of limitations prescribed by

6     Section 546(a) do not present an adequate period of time to do

7     all the diligence and investigation that would normally occur

8     in connection with the prosecution of avoidance actions under

9     the Bankruptcy Code or otherwise.

10          As a result, the debtors worked with the -- closely

11     with the creditors' committee in an effort to preserve every

12     potentially collectible asset of the debtors and not to incur

13     unnecessary expenses of litigation and therefore undertook a

14     major effort to persuade potential defendants to enter into

15     agreements tolling the application of the statute of

16     limitations.  That effort was largely successful and there have

17     been over 230 tolling agreements that have been agreed to and

18     executed covering hundreds of potential defendants.

19          However, for lack of time, logistical problems and, in

20     some cases, positions asserted by potential defendants, the

21     debtors were compelled to commence approximately fifty-eight

22     adversary proceedings prior to the expiration of the statute of

23     limitations.  These adversary proceedings were commenced to

24     assure that no potential real claim would be lost because of

25     the expiration of the statute of limitations.

Page 48

1          Diligence as to all potential claims is ongoing.  It

2     is the debtors' intention to the extent feasible to avoid

3     substantial litigation with the attending costs and

4     expenditures of time that would be involved in such litigation

5     by seeking to resolve claims in a more expeditious manner and

6     thereby promote judicial economy.

7          The requested stay would be in the best interest of

8     all parties and the administration of the cases.  Indeed, after

9     further diligence and where appropriate, Your Honor, and

10    warranted, the debtors may discontinue the assertion of

11    avoidance claims.  To effectuate that intention and consistent

12    with the precedent in this circuit and elsewhere, the debtors

13    have made the instant motion.  The debtors propose that the

14    stay of prosecution be for an indefinite period but subject to

15    the right of any avoidance action defendant for cause shown to

16    move before the Court to vacate or modify the stay.  The

17    debtors would also have the right to terminate the stay should

18    they deem it appropriate to move forward with the prosecution

19    of any avoidance action.

20          In addition, as to the five avoidance actions, the

21    debtors request an extension of time within which to complete

22    service of process upon the main defendants pursuant to Rule

23    4(m) of the Federal Rules of Civil Procedure as incorporated

24    into the bankruptcy rules.  The debtors request that a sixty

25    day extension beyond the normal 120-day service period

Page 49

1    specified in Rule 4(m).  A stay of time to complete service is

2    necessary as there are a number of transferees whose identities

3    are not readily available to the debtors.  They are noteholders

4    who received distributions made by the debtor to their

5    indenture trustee that were thereafter distributed to the

6    individual noteholders.  The debtors need additional time and

7    perhaps third party discovery to identify such noteholders and

8    to complete service.

9            In (indiscernible), Your Honor, this is a simple

10   motion.  It seeks a practical solution to a situation which is

11   inherent in cases of size and complexity of these cases.  Many

12   of the potential defendants agreed by entering into the tolling

13   agreements that have been executed and agreed to.

14           In connection with the fifty-eight adversary

15   proceedings commenced, only eight of the main defendants have

16   objected to the motion.  The remaining defendants did not

17   object.  And of the eight objections, Your Honor, two are

18   limited objections.  The objections of Deutsche Bank and

19   Canadian Imperial Bank of Commerce are limited objections

20   seeking a specific limitation on the stay in number of days.

21           The granting of the stay is provident and will result

22   in no prejudice to any of the adversary parties.  All rights

23   are reserved.  And a lapse of any time caused by the stay will

24   not be used to the disadvantage of any avoidance action

25   defendants.  As noted, any avoidance action defendant may seek

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 50 of 83

Page 50

1    to modify or vacate the stay for cause shown.  There is no

2    intention to prejudice any party but rather provide the

3    opportunity to promote judicial economy and, at the same time,

4    explore more expedient means to resolve these cases.

5           There can be no dispute, Your Honor, that the granting

6    of the motion is within the sound discretion of the Court.  The

7    Court has the inherent power to issue such a stay and we have

8    cited the authorities in our submission papers.  And as Your

9    Honor is undoubtedly aware, in cases before the bankruptcy

10   court in this district, in the Delphi Corporation case and in

11   the Enron case, Judges Drain and Gonzales did extend the

12   prosecution -- did stay the prosecution of cases.  In the

13   Delphi case, there were more than 780 cases which were

14   stayed -- prosecution was stayed for over seventeen months and,

15   similarly, for extended periods in the Enron case.

16          Debtors filed a reply to the objections, Your Honor, a

17   rather extensive reply which dealt with the general contentions

18   of the objectors and some specific contentions of the

19   objectors.  I can go through that but I imagine Your Honor

20   would like to hear from the objectors.

21          THE COURT:  I would.  And I've also read the papers.

22          MR. HARVEY MILLER:  Thank you, Your Honor.  So I will

23   turn over to the objectors.  I assume the creditors'

24   committee -- you may want to hear from them now or after.

25          THE COURT:  Does the committee wish to wait or do you

Page 51

1    want to jump on now?

2         MR. O'DONNELL:  I think we can state our position now,

3    Your Honor.  Your Honor, Dennis O'Donnell again from Milbank

4    for the official committee of unsecured creditors.  We filed a

5    statement in support of this motion, Your Honor.  As Mr. Miller

6    indicated, we worked closely with the debtors and in terms of

7    the whole avoidance action process.  We intended to

8    (indiscernible) the order as modified (indiscernible) our right

9    to participate and to assure, essentially, that these actions

10   are prosecuted with all of the appropriate (indiscernible)

11   turns out to be the right action to take.  We believe that of

12   all the objections are adequately addressed by the provision in

13   the order that permits a defendant to come to this Court for

14   good cause shown to seek relief.  All of the objections are

15   variations on the theme of it's too long or we'll be

16   prejudiced.  If, in fact, there is a long delay or if there is

17   prejudice to be shown, they can come to the Court and ask the

18   Court for a relief from the stay.

19        So for that reason, we believe that those objections

20   should be overruled and the stay granted as requested.

21        THE COURT:  Okay.  I guess I'll hear from the

22   objectors one at a time.  I can't tell how many ways you're

23   here representing objecting parties but I'll take them in no

24   particular order.  Whoever gets to the podium first.

25        (Pause)

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 52 of 83

Page 52

1           MR. TOP:  Good morning, Your Honor.  Frank Top of

2    Chapman & Cutler representing U.S. Bank, National Association,

3    as the trustee in a lot of these things -- transactions.  And

4    again, we filed papers in connection with this and

5    (indiscernible) to support (indiscernible).  So I'm not going

6    to dwell too much on things that we've already said in our

7    papers.  Just to point out that, really, the burden is upon

8    them to demonstrate the need for a stay.  And I don't doubt the

9    fact that these are very, very complex transactions and there's

10   a lot of adversary proceedings and the like.  Nonetheless, the

11   defendants in these also have rights that need to get these

12   proceedings moving as well.

13           THE COURT:  Well, how are the defendants' rights

14   adversely affected by the stay when there's the ability for

15   caution to obtain relief?

16           MR. TOP:  Well, because, first of all, to the extent

17   that a particular defendant is going to move the Court to do

18   so, it's going to be one particular defendant in what might be

19   a proceeding that has hundreds of defendants.  I think one of

20   those -- one of the adversary proceedings names at least ninety

21   noteholders and eight or nine different trustees and the like.

22           The stay may actually have an impact on -- from a

23   practical perspective, in terms of identifying witnesses and

24   things like that, people change jobs and the like.  It also may

25   have an affect on statutes of limitations.  I'm not sure but to

Page 53

1   the extent that that's a concern for some people particularly

2   where they have further distributed the money to somebody else,

3   I think that needs to be taken into consideration.

4          And that whole notion that we can come in and ask the

5   Court for some relief from the stay really puts the burden on

6   us, on the defendants, in order to show --

7          THE COURT:  Absolutely.

8          MR. TOP:  Yeah.

9          THE COURT:  Absolutely.

10         MR. TOP:  But that's not where the burden --

11         THE COURT:  What's wrong with that?

12         MR. TOP:  -- is under the law.

13         THE COURT:  But what's wrong with that?

14         MR. TOP:  Because the likelihood -- and I have no idea

15  how this will play out but it seems unlikely if only one

16  defendant is seeking relief from the stay that that would be

17  granted in the context of a much bigger case.  It would be much

18  harder to show cause.  I have no idea one way or the other.

19  But that -- again, that's putting the burden on us where if you

20  just put a limited amount of time on a particular stay and the

21  debtors need more time, they can file a paper, too, to say,

22  look, we're coming up on our six months or four months or

23  whatever the Court decides is an appropriate period of time.

24  They can come before the Court and say, look, we need some

25  additional time to do x, y or z.

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 54 of 83

Page 54

1          THE COURT:  So is your principle concern that the stay

2     as requested is indefinite in duration and what you're really

3     seeking is a time limited stay?  Is that your issue?

4          MR. TOP:  I think that's part of it.  But I also think

5     their ability just to say the stay is off unilaterally is also

6     inappropriate and that it creates again a different leverage

7     point as we try to negotiate resolutions in all these

8     particular transactions.  I think it ought to be a mutual stay.

9     And what I would suggest is forget about the stay but why not

10    put together a scheduling order with respect to these

11    transactions which takes into account all of the debtors'

12    needs.  They can -- if they feel they need six months in order

13    to put together a list of all the defendants and serve papers

14    and things like that, that's certainly something that people

15    can talk about.  But at least, if we have a scheduling order

16    that sets forth all the dates when things are going to be due,

17    when answers need to be submitted, when third party

18    defendants -- or when defendants can submit discovery and the

19    like to the debtors that's fair, that could all be put together

20    in some kind of a scheduling order that isn't necessarily

21    written in stone but at least that all parties in the

22    proceedings know exactly what to expect.

23          And so, with that, Your Honor, that's -- I'll leave it

24    to other objectors.  Thank you.

25          THE COURT:  Okay.  Thank you.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 55

1              MR. PIETRANTONIO:  Good morning, Your Honor.  Thomas

2       Pietrantonio on behalf of Interface Cable.  The objection of

3       Interface Cable is geared more towards this indefiniteness of

4       the stay, the length of the stay, Your Honor.  Our concern is

5       the preservation, the (indiscernible) and the preservation of

6       evidence.  Two years plus have already gone by.  We don't know

7       from the proposed order what the plans are for the -- when an

8       ADR type of format will be put in place, when the matters will

9       go forward, what access we'll have to relevant evidence.  It's

10      really the indefiniteness of time as counsel just said.

11              THE COURT:  Okay.

12              MR. PIETRANTONIO:  Thank you, Your Honor.

13              MR. PEDONE:  Good morning, Your Honor.  Richard Pedone

14      on behalf of Deutsche Bank Trust Company America as indenture

15      trustee.  We did not object to a stay entering but we do object

16      to the unlimited nature and duration of the stay as well as the

17      shifting of burdens.  We would agree with a 120-day stay with

18      the parties either coming back by consent or the debtors

19      establishing cause for the stay to continue.  That's what

20      Congress intended when they established the statute of

21      limitations.  So again, it's an objection to the shifting of

22      the burdens and the indefinite timetable.  Thank you.

23              THE COURT:  You're saying this is an issue of

24      congressional intent?

25              MR. PEDONE:  I believe when statutes of limitations

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 56 of 83

Page 56

1    were established, Congress did have an intent that litigation

2    proceed not that it be stayed indefinitely.

3            THE COURT:  Well, the litigation has commenced so the

4    statute's really not an issue.

5            MR. PEDONE:  Not if it's stayed for all purposes, Your

6    Honor.  I believe that's not the equivalent of actually

7    commencing --

8            THE COURT:  Well, I read the -- proscribed by Weil

9    Gotshal in response to the objections and agree with the

10   position expressed by Weil Gotshal and (indiscernible) think

11   it's (indiscernible) attributed to that as well.  The statute

12   as proposed has already served its purpose.  Parties understand

13   now precisely the nature of the claims being asserted.  And

14   you're on notice.  You can preserve your evidence.  You can do

15   whatever is necessary to protect yourself.  The only thing

16   that's happening is a period during which everybody is

17   (indiscernible) including the defendants.

18           MR. PEDONE:  Which is why we agree with the stay for a

19   definite period of time.

20           THE COURT:  I'm simply (indiscernible) with your

21   notion this is somehow congressionally sanctioned.

22           MR. PEDONE:  I accept that.

23           THE COURT:  Your objection is not congressionally

24   sanctioned in my view.

25           MR. PEDONE:  I respectfully restate my position, Your

Page 57

1    Honor.  Thank you.

2            THE COURT:  Okay.  Fine.

3            MR. DASH:  Good morning, Your Honor.  Andrew Dash,

4    Brown Rudnick, on behalf of Loreley Financing (Jersey) Nos. 8,

5    15 and 24 Limited.  We join in the concern expressed by other

6    objecting counsel as to the indefinite nature of the proposed

7    stay and the unilateral ability of the debtors to declare the

8    stay lifted without any application notice to waive it.  Your

9    Honor, it provides them with an advantage in a negotiation.

10           We also object --

11           THE COURT:  What would you suggest would be the right

12   way for the stay to come to an end?

13           MR. DASH:  Well, Your Honor, if the applicants -- if

14   the objectors are to be required -- if the defendants are to be

15   required to come to the court on cause shown, obtain a lifting

16   of the stay from Your Honor, the debtors should be obligated

17   to, on notice, explain why they think the stay should be lifted

18   and appear at a hearing and allow other parties to address that

19   issue at that time.

20           In addition, Your Honor, I would suggest that it may

21   be -- if Your Honor is inclined to grant the stay, it may be

22   appropriate under these circumstances to ask the debtors to

23   provide periodic reports on the status of their diligence, the

24   status of their negotiations efforts so that the defendants can

25   understand where the debtors are in their process rather than

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 58 of 83

Page 58

1    waiting for some unknown time in the future to commence the

2    litigation.  We would think a thirty or sixty-day interval

3    would be appropriate in that regard.

4              THE COURT:  Okay.

5              MR. DASH:  Thank you, Your Honor.

6         (Pause)

7              MR. SHULMAN:  Good morning, Your Honor.  Motty Shulman

8    of Boies Schiller & Flexner on behalf of BnP Paribas London

9    branch.  Our objection is slightly different than all the other

10   objectors because our case is different.  We're here as a

11   defendant.  The debtor is a defendant in our matter.  Unlike

12   all the other avoidance actions where the debtor came, filed

13   lawsuits on the eve of the statute of limitations, our lawsuit

14   was commenced about a month prior by the trustee of our

15   facility, of our bank.  We remain as a defendant; the debtor

16   remains as a defendant.  Subsequently, the debtor filed a

17   counterclaim naming the facility as a counter -- as an

18   interpleader defendant.  This is not a situation where there's

19   nobody losing money, there's nobody being prejudiced because

20   the defendant has the money.  The plaintiff simply needs a

21   little more time.

22              We have millions of dollars that are being tied up by

23   virtue of the pending litigation.  The debtor comes in now and

24   says let's put this on an indefinite stay.  Our money is being

25   tied up.  We are prejudiced by the stay.  In fact, the debtor

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 59 of 83

Page 59

1    recognizes it's prejudice.  In response to U.S. Bank's

2    objection, the debtor recognizes the distinction and in a reply

3    makes a distinction between a plaintiff seeking a stay which

4    the debtor says -- it cites law saying the Court should give

5    weight to it and a defendant who's coming in and seeking a

6    stay.  The defendant who's coming in and seeking a stay or

7    objecting to a stay is giving less deference because there is

8    much less prejudice.

9          We object to the stay not so much in terms of the

10    limitations of the stay or the time or the other objections

11    that were raised by the other parties, but we are asking that

12    we simply be taken out from the list of Schedule A on the

13    actions that are subject to the stay because we are differently

14    situated.

15          THE COURT:  Let me ask you this.  My understanding of

16    the stay that's being proposed here is that it's not everybody

17    standing around with their hands in their pockets.  It's people

18    simply not litigating but being permitted to engage in

19    consensual resolutions if those are possible.

20          he adversary docket in these cases was an extensive

21    docket even before the fifty-eight cases were commenced last

22    month.  And many of those cases have been pending for very long

23    periods of time at no fault of the Court and no fault of the

24    parties.  It's just the nature of litigation as you know.

25    You're not getting as many (indiscernible) anyway.  How are you

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 60 of 83

Page 60

1    really prejudiced?

2         MR. SHULMAN:  Well --

3         THE COURT:  Because the only you get the money quickly

4    is if you reach some kind of an agreement that resolves the

5    interpleader because parties are acting like matured bond

6    notes.

7         MR. SHULMAN:  This is not a situation where there has

8    been a lawsuit filed and now we need to take a stay and pause

9    simply to engage in settlement negotiations.  Before the

10   lawsuit was filed, the parties engaged in settlement

11   negotiations.  Those settlement negotiations apparently were

12   unsuccessful.  But --

13        THE COURT:  Maybe it's time for ADR?

14        MR. SHULMAN:  We proposed to the debtor that we take a

15   sixty-day stay for ADR.  We have the same stipulation with

16   regard to an overcollateralization of escrow.  We did propose

17   that.  The debtor has rejected that.  We're amenable to

18   settlement negotiations.  What we are objecting to is the

19   debtor, who is a defendant over here, simply hijacking the

20   litigation to the plaintiff is giving the right to litigate in

21   the matter that they choose.  And it's different than all the

22   other fifty-seven avoidance actions that the debtor has filed.

23   All the other fifty-seven actions are actions where the debtor

24   comes in and filed a lawsuit.  The defendant still has the

25   money.  We don't have the money.  We're a defendant  over here.

Page 61

 1   The debtor's a defendant over here and does not deserve the

 2   deference that's given to a plaintiff by seeking a stay.

 3           THE COURT:  All right.  I understand your position.

 4           MR. SHULMAN:  Thank you.

 5           MS. GROSSMAN:  Good morning, Your Honor.  Melanie

 6   Grossman of Willkie, Farr and Gallagher on behalf of Natixis

 7   Financial Products, LLC.  I just wanted to note my appearance

 8   for the record, but we joined in the papers filed by the BnP

 9   and I don't have anything to add to counsel's arguments.

10           THE COURT:  Okay.

11           MS. GROSSMAN:  Thank you.

12           MR. TRUST:  Good morning, Your Honor.  Brian Trust,

13   counsel to Canadian Imperial Bank of Commerce.  This is with

14   respect to the transaction; it's a synthetic CD I'll refer to

15   in the pages as Pixus (ph.).  And CIBC or Canadian Imperial

16   Bank of Commerce holds the class A1 note issued by Pixus which

17   similar to (indiscernible), the CEO issuer in that transaction.

18           You know, first and foremost, we certainly hope for a

19   trial date.  CIBC generally supports the debtors' request for a

20   litigation stay, like the rationale for the filing of avoidance

21   actions and we certainly understand and appreciate the debtors'

22   desire for the stay as stated on the record today as

23   (indiscernible) in the moving papers.

24           CIBC obviously has several board constituents

25   including its regulated stake holders and some disclosure

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 62 of 83

Page 62

1    requirements.  The primary focus of what we'd like to suggest

2    the Court consider really relate to achieving a modest balance

3    by focusing on some rational, reasonable but limited end date.

4         Not -- nothing that is either too short, nothing

5    obviously that would go out too, too far as well, but we would

6    just suggest that the order be entered and the Court consider

7    putting some reasonable end date in the order for the purpose

8    of allowing the parties to take stock of where they are, to

9    allow the parties as well as the Court and all of the parties

10   in interest to understand where we are in the stake process.

11        It strikes us that this is a, I'd say, a minor burden

12   that would be placed upon the debtors to actually have to go

13   back after some reasonable period of time.  And just to be

14   clear, I'm not talking about three or six months, but some

15   reasonable period of time given the quantum of the lawsuits

16   filed to in fact move the Court to raise supplemental extension

17   and give parties in interest an opportunity at that point in

18   time to consider what their rights are as opposed to an all-

19   the-time obligation for, you know, cause shown.  Because facts

20   change, circumstances change and it's impossible to -- they

21   have these litigations with them play out (sic).

22        So from CIBC's perspective, we are only focused on the

23   tenor and we thing that the minor adjustment of the reasonable

24   time with the debtors would be in everyone's interest and

25   certainly preserve the interest of the estate, as well.

Page 63

1          Thank you, Your Honor.

2          THE COURT:  Okay.  Thank you, Mr. Trust.

3     (Indiscernible) --

4          MR. WILSON:  Your Honor, this is Bruce Wilson of Kutak

5     Rock appearing telephonically on behalf of Nebraska Investment

6     Finance Authority.

7          THE COURT:  Okay.

8          MR. WILSON:  We're the last objector, I think, to the

9     motion.  And we believe we're material and different than the

10    other objectors in one respect and that is in our circumstance,

11    the debtors have committed -- it has been alleged that an

12    individual or former employee of the debtors have (sic)

13    committed actual fraud.  And in that context we believe that

14    internal discovery and mediation would be insufficient because

15    we may need sworn statements -- just doing depositions, we may

16    need (indiscernible).  There's currently no talking

17    preservation requirement in place.

18          So, for the reason that we believe there's been an

19    alleged actual fraud, nothing in these circumstances would

20    compel our case with an -- except if we were -- except if we

21    were staying to proceed.

22          Now, we also believe we're getting prejudice because

23    we filed the claim that the debtor owed the Nebraska Investment

24    Finance Authority a certain sum and they allege that we owe the

25    debtors a certain sum plus interest.  And we believe interest

Page 64

1    is accruing and we don't believe the debtors should both file a

2    claim against our claim and as for a stay, all interest is

3    accruing.

4            THE COURT:  That's your position?

5            MR. WILSON:  yes, Your Honor.  We believe that because

6    the -- primarily, the allegation is actual fraud.  But we don't

7    believe that the parties should sit back and really do nothing

8    and, you know, in terms of (indiscernible) mediation, really

9    amounts to, in our view, an insufficient measures (sic) to

10   protect and preserve evidence and to move forward.

11           THE COURT:  Okay.  I've heard you.

12           Are there any other objectors on the (indiscernible)?

13           MR. MILLER:  I counted eight, Your Honor, and they

14   were all identified.

15           THE COURT:  All right.  Have you been counting?  I

16   haven't.  Mr. Miller, do you want to respond?

17           MR. MILLER:  Very briefly, Your Honor.  First, I'm a

18   little confused, Your Honor, by Nebraska, because in their

19   papers, they basically say mediation should be ordered to

20   proceed immediately.  And if not successful, the stay should be

21   lifted.  I think the position announced by the gentleman on the

22   phone is different from that.

23           But more importantly, Your Honor asked a key question.

24   How are any of the defendants prejudiced, particularly in light

25   of the fact, as Your Honor pointed out, adversary proceedings

Page 65

1    by their nature take a long time -- nobody's fault in

2    connection with that.  And we're talking about, Your Honor, 445

3    names defendants in the 58 actions.  And when we are able to

4    identify the note holders in some of these transactions, that

5    number may multiply by two times.  So we may be talking about

6    1,000 defendants.

7              And the objective of the stay motion, Your Honor, is

8    to avoid proceedings in this courtroom.  As Your Honor pointed

9    out, there's no intention to sit around and just let time

10   expire.  The effort is going to be to try and find an expedient

11   means, maybe alternative dispute resolution, to resolve these

12   claims.

13             In addition, there is further diligence that has to be

14   done with respect to all of the claims, Your Honor.  It would

15   be, in our view, Your Honor, in the interest of judicial

16   economy, to avoid having constant proceedings before Your Honor

17   about discovery, about timings and schedules.  The concept of

18   having scheduling orders for all of these matters, Your Honor,

19   would tie you up, I think, for weeks.  And would be

20   unnecessary, particularly if we can resolve this in another and

21   easier fashion.

22             So we have 445 named defendants; we have over 230

23   towing (ph.) agreements covering hundreds of defendants.  So

24   what we're talking about, Your Honor, essentially is well over

25   1,000 defendants.  In terms of preservation, all the records

Page 66

1    are being preserved.  There is no substantive relief here that

2    would in any way affect the rights of any of the defendants.

3            The two limited objections, Your Honor, basically

4    say -- all they ask Your Honor to do is fix a time limitation.

5    Given the scope and the complexity of all of these

6    transactions, they're not simple vendor preferences, Your

7    Honor.  They're very complex situations in some of the

8    situations, and some of them, frankly, are novel and have to be

9    discussed among the parties.

10            This gives us the opportunity to search out a method

11    to deal with all of these claims, and in the context that

12    there's no prejudice to anybody.  Insofar as the debtors' right

13    to go forward, these are the debtors' claims.  It's sort of

14    weird in my experience, Your Honor, for the defendants to

15    object to lack of prosecution of a plaintiff's action.  These

16    are plaintiff's claims, clearly within the (indiscernible)

17    discretion of the Court.

18            So we would ask that Your Honor grant this motion.

19    The objectors are protected; they can come to court if there's

20    cause to modify the stay, if we're not making progress.  And,

21    Your Honor, I would commit at every state of the estate or

22    every omnibus hearing, we could give Your Honor a report as to

23    where we stand in connection with avoidance actions.  So in

24    that context, Your Honor, I don't believe there's any prejudice

25    and so request that the order be entered, Your Honor.

08-13555-mg    Doc 12420    Filed 10/27/10    Entered 10/28/10 14:58:56    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 67 of 83

Page 67

 1            THE COURT:  All right.  Thank you, Mr. Miller.

 2            I receive monthly reports from Mr. Miller's partner,

 3     Peter Vimberger (ph.) concerning the progress of the ADR

 4     program, which is currently underway in these cases.  And those

 5     letter reports are uniformly encouraging.

 6            One of the modest achievements of this bankruptcy case

 7     has been dedication of resources outside of the Bankruptcy

 8     Court to dispute resolution.  And without going into specifics,

 9     I am satisfied that the ADR program is working extremely well.

10            My understanding of the motion for a stay is that ADR

11     mediation, conversation between the debtors and defendants in

12     these adversary proceedings will be taking place during the

13     period of the request in (indiscernible).  I've reviewed the

14     objections to the stay and the response to those objection

15     filed by the debtors and I am satisfied that a stay is

16     absolutely desirable here and in the best interests, actually,

17     of all parties.

18            The only real issue may be complaints of individual

19     defendants, (indiscernible) being one, that somehow the stay

20     shouldn't apply to them.  I'm not carving anybody out today.

21     I'm going to enter an order that will apply to all defendants

22     in all other avoidance action adversary proceedings.  But I

23     note that to the extent that any party, whether it's a party

24     represented by Boies, Schiller or (Indiscernible) or any other

25     party for that matter, that is in a position to articulate

Page 68

1    distinguishing characteristics that would suggest that the

2    imposition of the stay as to that party or parties is

3    inappropriate or prejudicial.

4         The order permits the filing of appropriate motion

5    papers in the hearing to consider, in effect, relief from the

6    stay.  And in fact, something not particularly (indiscernible)

7    from the firm, motions for stay relief that are heard and

8    considered by bankruptcy courts every day of the week.

9         I am concerned, however, about the completely open-

10   ended nature of the stay and I note that my colleague Judge

11   Drain with Adelphi cases has entered a number of orders as

12   relating to the impositions of a stay.  And I note that many of

13   the objectors have directly or indirectly raised some questions

14   as to having a stay that doesn't have an end date.

15        Independent of those objections, I had some concern

16   about a stay that doesn't have an end date.  And so the

17   question becomes, what should the end date be?  Three or four

18   months is too short, a year is too long.  And something in

19   between there may not be (indiscernible) but it will be part of

20   the order.

21        I'm going to impose a nine-month period with the

22   understanding that within the nine-month period, there will be

23   active discussions between the debtors and the defendants.

24   There may be possible claims resolutions and presumably, an ADR

25   program that will take place within the period of time after

Page 69

1   there has been sufficient active sharing of information that

2   allows for a meaningful ADR process to proceed.

3           The only thing really that the stay is doing is

4   looping the unnecessary pursuit of hostilities in this court.

5   I heard the reference to doing this by means of a scheduling

6   order and candidly, that's what I do in every one of the

7   adversary cases on my docket.  One of them, and you may know

8   which case I'm talking about, involved the scheduling order

9   that calls for a trial date in March of 2012.  That's a

10  scheduling order that demonstrates that litigation takes a long

11  time and as a result, it's a scheduling order that doesn't

12  answer the question before the Court.

13          As Mr. Miller both stated and implied, the Court has a

14  responsibility here to manage the docket.  And the docket in

15  these extraordinarily complex cases, I believe, is unique.  It

16  is unique not only in respect of the subject matter that is

17  being presented for adjudication on this morning's hearing in

18  connection with Alegra (ph.) settlement demonstrates the

19  extraordinary complexity of many of the transactions that are

20  at issue in the various litigations that are pending on the

21  adversary docket.  But it also demonstrates that parties need

22  time in order to understand the strengths and weaknesses of

23  their positions and to accommodate one another in reference to

24  the actual risks the parties face.

25          I'm entering an order in the form presented with the

Page 70

1  understanding that it will be a nine-month duration for the

2  stay.  I do have some concern as to the unilateral ability of

3  the debtors to, in effect, declare that the stay is no longer

4  in effect.

5          I'm going to leave that provision in with the

6  understanding that the debtors' ability to do that will be for

7  good cause.  And provided that there is good cause shown, and

8  I'm confident that the debtors will be in a position to do

9  that, I see no particular reason for the Court to be a

10 gatekeeper for a stay that is designed to benefit, in this

11 instance, the plaintiff.

12         Those are my comments.  The motion is granted.

13         MR. MILLER:  Thank you, Your Honor.

14         THE COURT:  If anyone wishes to be excused now, you

15 may be excused in reference to --

16         MR. MILLER:  Yes, Your Honor --

17         THE COURT:  -- (indiscernible) docket.

18         MR. MILLER:  -- item 8 is the (Indiscernible)

19 representing (indiscernible).

20         THE COURT:  We have one of the matter relating to

21 expedited discovery.

22         MR. DEFILIPPO:  Yes, Your Honor.

23         Good morning, Your Honor.  Paul DeFilippo, proposed

24 counsel for the debtors, adversary 10-03547.  This is a slight

25 exception to the stay, Your Honor, just to prove in this action

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 71 of 83

Page 71

1    there were forty-seven transactions and there's -- the

2    collateral has been distributed.  It involves the ipso factor

3    doctrine Your Honor ruled on in BNY.  We seek limited expedited

4    discovery to identify the note holders who were the ultimate

5    recipients of that collateral.  That information is not

6    currently in the debtors' possession.  We think that shows

7    cause for the issuance of an order permitting expedited

8    discovery.

9         We've received two objections; we believe we've

10   resolved them with an amended order that was provided to Your

11   Honor in which the objectors have proved which resolves their

12   desire to have copies of the discovery served on them as well

13   as the information received and addresses confidentiality

14   issues.

15        We have one change to make to the order if Your Honor

16   is prepared to grant the motion to resolve an issue by the

17   committee that goes to the committee not being required to pay

18   for the documents when they are provided to the committee.

19        THE COURT:  So it sounds as if it's all consensual at

20   this point.

21        MR. DEFILIPPO:  I believe so, Your Honor, yes.

22        THE COURT:  Let's just confirm that that's true.  Is

23   it all consensual at this point?

24        UNIDENTIFIED SPEAKER:  Yes, Your Honor, on behalf of

25   the committee.

Page 72

1          MR. DOWNEY:  Your Honor, Richard Downey for Deutsche

2     Bank and our concerns were addressed.

3          MR. TOP:  Good morning, Your Honor.  Frank Top from

4     Chapman and Cutler on behalf of US Bank National Association

5     and I can confirm that we're fine with the Court

6     (indiscernible).

7          THE COURT:  Okay, that was easy.  I'll enter it on

8     consent.

9          MR. DEFILIPPO:  Thank you, Your Honor.

10         THE COURT:  Now we're down to the SIPC --

11         MR. WILTENBURG:  Yes, Your Honor.

12         THE COURT:  -- agenda.  Everyone who was involved in

13     the first part of this morning's calendar who wishes to be

14     excused may leave.

15         (Pause)

16         MR. WILTENBURG:  Your Honor, David Wiltenburg, Hughes,

17     Hubbard and Reed on behalf of the SIPC trustee.

18         On today's calendar there are two related items.  The

19     principal item is the motion of Newport Global for permission

20     to take 2004 discovery.  And there's a related motion by

21     Newport to seal certain aspects of that motion.

22         And as today started, I think all parties were

23     prepared to go forward with argument on the motion.  Indeed,

24     Mr. Caputo is here from SIPC, prepared to make comments and Mr.

25     Kobak was prepared to put the motion into a larger context

Page 73

1    about which you'll hear more next week.

2         However, in discussions this morning, we have -- the

3    parties have been able to reach an accommodation that results

4    in adjournment of the motion without date.

5         THE COURT:  Okay.

6         MR. WILTENBURG:  And I'm prepared to answer any

7    questions the Court may have on that.  But, the result is that

8    we don't need to address the principal motion.  It may be that

9    as a technical matter the sealing motion is still on the table.

10        The sealing motion related to certain exhibits and

11   information related to the motion.  The trustee -- again, it is

12   Newport's motion; the trustee has not opposed it.

13        THE COURT:  I looked at Newport's motion and I saw

14   that Exhibit I was under seal.  I've never seen Exhibit I.  I

15   also noted that there was a paragraph that had a number of

16   blackline provisions redacted out; I've never seen the full

17   motion.  It doesn't matter, I assume and because I was able to

18   get to the essence of the motion, I have no official need to

19   see it, but I would like to see the document that I haven't

20   been able to see.

21        MR. WILTENBURG:  Your Honor, we'll arrange for a

22   courtesy --

23        THE COURT:  Mr. Molton's here, I think he's getting up

24   to tell me I can get the document.

25        MR. MOLTON:  Good morning, Your Honor.  David Molton

08-13555-mg   Doc 12420   Filed 10/27/10   Entered 10/28/10 14:58:56   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 74 of 83

Page 74

1    for the two Newport movants from Brown Rudnick.

2          We apologize that Your Honor did not get the

3    unredacted copy.  We will get those to you today.

4          THE COURT:  It's possible that they came to chambers.

5    I was preparing my (indiscernible) --

6          MR. MOLTON:  All right.

7          THE COURT:  -- so I was looking at the document and

8    (indiscernible) system.

9          MR. MOLTON:  And I don't think the redactions were of

10   a great extent in the document, so --

11         THE COURT:  No.

12         MR. MOLTON:  So, yeah, I just want to confirm with

13   what Mr. Wiltenburg said we did meet at his offices this

14   morning and I'm pleased to announce that we resolved the

15   matter.  So the motion would be, you know, adjourned without

16   date and we'll get documentation to Your Honor.  We'd

17   appreciate it if Your Honor would grant the sealing order for

18   the limited amount of confidential information that the SIPA

19   trustee had provided us.

20         THE COURT:  Yes, that's granted (indiscernible).

21         MR. MOLTON:  Thank you.  And that's -- unless Your

22   Honor has any other questions, I'm done for today.

23         THE COURT:  Great.  You're excused.

24         MR. MOLTON:  Thank you.

25         MR. WILTENBURG:  Your Honor, I think that's the end of

LEHMAN BROTHERS HOLDINGS INC., et al.

1    the calendar for today.  So --

2         THE COURT:  I do have some questions for you, then.

3    As I reviewed the 2004 motion presented by Newport and the

4    trustee's response, I viewed the arguments to be less about

5    discovery and more about a timely disposition of the claim

6    determination in respect of any other position (indiscernible)

7    claimed customer of LBI and the intricacies of the relationship

8    with LBI and LBIE claim, the allocation of that claim and

9    matters of (indiscernible).  And so what I'm interested in

10   knowing, although I don't need to hear anything that is not yet

11   ready for primetime, is whether the parties have had any

12   meaningful discussions about the timing for disposing of the

13   principal issues and dispute between parties.

14        MR. WILTENBURG:  Your Honor, that has been approached

15   in a couple of ways.  As the Court may recall, there was

16   initiative last March on behalf of a group of parties including

17   Newport and others similarly situated claimants whose -- who

18   have claims through LBIE.  And at that time, we opposed the

19   idea of setting that litigation in motion right then because

20   the -- at the time, there was an intensive effort between the

21   LBI estate's professionals and the LBIE estate's professionals

22   to reconcile and to see whether the two enemies did indeed, as

23   in theory they -- in the ideal world they would have kind of

24   mirror image accounts of -- so that the books and records would

25   match and the extent of the customer claim would be fixed.

1          That effort resulted in allowance by the trustee of

2     the LBIE omn -- what's called the LBIE omnibus claim.  That is

3     the portion of LBIE's claim that is asserted on behalf of LBIE

4     customers; that's -- the terminology for that is the omnibus

5     claim.  And it was allowed in mid-September in an amount

6     exceeding six billion dollars.

7          However, the reconciliation effort is not at an end.

8     In the great mass of information underlying that six billion-

9     plus dollars in allowed claim, there are many transactions --

10    part of the uncertainty results in the mismatch between the

11    LBIE filing date which is September 15 and the LBI filing date

12    which is September 19.  And it continues to be a project for

13    the professionals to sort out what happened during that

14    peculiar period of time.

15         So, that reconciliation is -- has made great progress

16    but is not at an end.  And so in deference to the continuing

17    discussions, the trustee agreed to extend LBIE's time to object

18    to that partial allowance by an additional ninety days.  And so

19    a lot has been but the parties, that is LBIE and LBI, are not

20    at the end of the road in getting to the point of knowing what

21    they agree on exactly and knowing what they disagree on

22    exactly.

23         And until that -- those two things are known, we

24    continue to feel that it would be premature to put litigation

25    in motion regarding the LBIE claimants.  Because if it turns

1    out that there's a match between what LBIE is claiming against

2    LBI, on the one hand, and what the claimant is claiming against

3    kind of a Lehman enterprise on the other hand, it will be

4    unnecessary in those cases to address the question of whether

5    these claimants are independently customers of LBI, because

6    they're -- in effect, their derivative customer status will

7    come to the same thing from the point of view of an LBI-allowed

8    claim.

9            And so, that has been our thinking in terms of where

10   this category of disputed claims would be slotted into, you

11   know, a broader schedule covering many categories of disputed

12   claims.  About which Mr. Kobak will make further remarks at the

13   hearing next Thursday.

14           THE COURT:  What do you estimate is the time you're

15   (indiscernible) getting to that result?

16           MR. WILTENBURG:  Well, the parties picked ninety days

17   as kind of a benchmark for that from the determination date

18   which I believe was September 16.  If the professionals tell us

19   they think it's productive to extend beyond that, if -- it

20   could occur, I guess we would hope that any extension beyond

21   that would not, you know, take us to the, you know, too far

22   down the road.

23           THE COURT:  Okay.  Apparently my question made Mr.

24   Molton want to get up.

25           MR. MOLTON:  I didn't expect to have to get up again,

Page 78

1    Your Honor, but I do want to say that what -- I know Mr.

2    Wiltenburg has his position on this.  We dispute many parts of

3    it; that's going to be left for another day in front of Your

4    Honor.  Clearly, I think, on behalf of all the prime brokerage

5    customers who have no alleged LBI connections, we'd like that

6    heard sooner than later.

7         We believe that the legal issues, as Your Honor

8    focused on, are not necessarily dependent on the reconciliation

9    per se and the exact line items in the various accounts.  And I

10   think Your Honor suggested that you may have recognized that.

11        And another point that I have to dispute because we're

12   not here to argue it, but it just -- lest silence be construed

13   as assent, we disagree that if the reconciliation matches, it's

14   an apples to apples situation.  Clearly what happens overseas

15   in London and how involved my client and the other prime

16   brokerage get treated under the administrator's proposed scheme

17   or plan or what have you, may leave us much worse off in terms

18   of having our property being treated as part of the general

19   unsecured ball (ph.) and not in a preferred matter, as it is as

20   a SIPA customer, having to share it not only with other

21   customers of LBIE but also vendors and other general unsecured

22   creditors.

23        So, clearly, from our position, we don't agree with

24   Mr. Wiltenburg that it's an apples to apples and if there's a

25   pure reconciliation it doesn't make a difference.  The

Page 79

1    customer, I'm sure Your Honor knows since I was here two years

2    ago in front of Your Honor when this began on this issue and

3    Your Honor gave me a hard time then on the 2004 motion.  I

4    think the twenty-four months has made a little bit --

5              THE COURT:  I was planning on giving you a hard time

6    again.

7              MR. MOLTON:  I'm sure you were, Judge.  We actually

8    got a call from Mr. Wiltenburg yesterday and we were able to

9    resolve it today.  I knew -- I know that you -- but in any

10   event, you know, we believe that the customer issue for these

11   prime brokerage customers is extremely important; is one that

12   can be heard and decided upon relatively promptly.  And we

13   would urge the trustee to tee it up and let it go.  Indeed,

14   when we talked, we had meetings with the ad hoc group last

15   March, maybe it was January through March.  We were actually

16   encouraged to create proposed stipulated facts and questions of

17   law that would form the basis of a, you know, of a hearing to

18   expedite the process.

19             That, unfortunately, went nowhere as I think that the

20   trustee continued to put its weight on finding a protocol with

21   LBIE, which at this point, as Your Honor had read the papers,

22   we don't believe is ever going to occur.

23             So, I just needed to say that in light of what Mr.

24   Wiltenburg said.  So, thank you, Your Honor.

25             THE COURT:  Okay.  What we've just heard is just

Page 80

1    colloquy on the part of both the trustee and Newport in

2    response to a question that I'm sorry I asked.

3              We've got -- is there anything new for today?

4              MR. MOLTON:  Your Honor, I think not.

5              THE COURT:  Okay.  We'll adjourn until the 2 o'clock

6    adversary block out (ph).

7         (Whereupon these proceedings were concluded at 11:48 a.m.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 81

I N D E X

R U L I N G S

| DESCRIPTION | PAGE | LINE |
|---|---|---|
| Motion by Lehman Brothers Special Financing | 20 | 6 |
| to enforce automatic stay and for sanctions | | |
| granted | | |
| Motion by Lehman Brothers Holdings and its | 26 | 16 |
| affiliated debtors for authorization and approval | | |
| for the settlement agreement with Ambac Assurance | | |
| Corporation and certain related Ambac entities | | |
| Granted | | |
| Motion of the debtors for authority to enter | 31 | 10 |
| into settlement with SunCal trustee on behalf | | |
| of SunCal involuntary debtors granted | | |
| | 46 | 10 |
| Debtors' motion for approval of a settlement | 47 | 6 |
| agreement among LBSF, LBHI, and Societe | | |
| Generale granted | | |

Page 82

```
 1

 2                        I N D E X, cont'd

 3

 4                        R U L I N G S

 5      DESCRIPTION                              PAGE    LINE

 6      Debtors' motion to stay prosecution of    71      12

 7      avoidance actions and to extend the time

 8      to serve summonses and complaints and to

 9      file avoidance actions granted for

10      nine-month duration

11      Motion for expedited discovery granted on  73       7

12      consent

13      Newport motion to file under seal motion   75      20

14      for leave to conduct Rule 2004 discovery

15      and certain exhibits thereto granted

16

17

18

19

20

21

22

23

24

25
```

Page 83

```
 1

 2                    C E R T I F I C A T I O N

 3

 4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

 5    true and accurate record of the proceedings.

 6

 7    _____

 8    LISA BAR-LEIB

 9    AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17    Date:  October 21, 2010

18

19

20

21

22

23

24

25
```