08-13555-smg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-10317-GBD    Document 12    Filed 02/11/10    Page 1 of 28
Pg 1 of 28

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                                                    :
FIRSTBANK PUERTO RICO,                              :
                                                    :          09 Civ. 10317 (GBD)
                         Plaintiff,                 :
                                                    :
              - against -                           :
                                                    :
BARCLAYS CAPITAL INC.,                              :
                                                    :
                         Defendant.                 :
                                                    :
------------------------------------------------------------------------ X


# MEMORANDUM OF LAW OF BARCLAYS CAPITAL INC.
# IN SUPPORT OF MOTION TO DISMISS


CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Barclays Capital Inc.

Of Counsel:

    Lindsee P. Granfield
    Boaz S. Morag

08-13555-smg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16337-GBD   Document 12   Filed 02/11/10   Page 2 of 28
Pg 2 of 28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ....................................................................................... 1

THE COMPLAINT ........................................................................................................ 3

LEGAL STANDARD....................................................................................................... 8

ARGUMENT ................................................................................................................. 10

POINT I

THE SALE ORDER PRECLUDES THIS LAWSUIT ..................................................... 10

POINT II

THE U.C.C. BARS FIRSTBANK'S TORT AND EQUITABLE CLAIMS..................... 13

     A.    FirstBank Has Failed To Plead Facts Establishing
           Knowledge Of An Adverse Claim Under Section
           8-105(a)(1) Of The U.C.C. .................................................................. 17

     B.    FirstBank Has Failed To Plead Facts Establishing
           Any Duty To Investigate Under Section 8-105(a)(3)
           Of The U.C.C. ................................................................................... 18

     C.    FirstBank Has Failed To Plead Facts Establishing
           Any Awareness And Deliberate Avoidance Under
           Section 8-105(a)(2) Of The U.C.C. .................................................... 19

POINT III

FIRSTBANK HAS NO CONTRACT CLAIMS AGAINST BARCLAYS
BECAUSE BARCLAYS HAS NOT ASSUMED ANY OF THE
CONTRACTS AT ISSUE .............................................................................................. 21

CONCLUSION.............................................................................................................. 23

08-13555-smg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16347-GBD   Document 12   Filed 02/17/10   Page 3 of 28
Pg 3 of 28

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

N.Y. U.C.C. § 8-102(a)(1) ............................................................................................. 14

N.Y. U.C.C. § 8-105(a) ............................................................................................. 15-16

N.Y. U.C.C. § 8-502 cmt. 3 ............................................................................................. 13-14

N.Y. U.C.C. § 8-503 cmt. 3 ............................................................................................. 18-19

N.Y. U.C.C. § 8-510(a) ............................................................................................. 14-15

**Cases**

Ark Bryant Park Corp. v. Bryant Park Restoration Corp.,
285 A.D.2d 143, 730 N.Y.S.2d 48 (1st Dep't 2001) ........................................................ 22

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) .................................................................................................... 8-9

B.H. Papasan v. Allain,
478 U.S. 265 (1986) ......................................................................................................... 19

Bay Harbour Mgmt., L.C. v. Lehman Bros. Holdings Inc.
(In re Lehman Bros. Holdings, Inc.),
415 B.R. 77 (S.D.N.Y. 2009) .................................................................................... passim

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ...................................................................................... 8, 17, 19

Benzman v. Whitman,
523 F.3d 119 (2d Cir. 2008) ............................................................................................... 8

Chambers v. Time Warner, Inc.,
282 F.3d 147 (2d Cir. 2002) ............................................................................................... 9

Chase v. Chase (In re Chase),
392 B.R. 72 (Bankr. S.D.N.Y. 2008) .................................................................................. 9

Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs,
No. 08 Civ. 6279 (GBD), 2009 WL 3053736 (S.D.N.Y. Sept. 24, 2009) ......................... 8

Cohen v. Army Moral Support Fund (In re Bevill, Bresler &
Schulman Asset Mgmt. Corp.),
67 B.R. 557 (D.N.J. 1986) ............................................................................................... 20

08-13555-smg Doc 12435-21 Filed 10/28/10 Entered 10/28/10 18:51:06 doc 12
Case 1:09-cv-16347-GBD Document 12 Filed 04/14/10 Page 4 of 28
Pg 4 of 28

**Page(s)**

Dow Jones & Co. v. Int'l Sec. Exch., Inc.,
451 F.3d 295 (2d Cir. 2006).................................................................. 9, 19

Enron Corp. v. Springfield Assocs. (In re Enron Corp.),
379 B.R. 425 (S.D.N.Y. 2007)............................................................... 13

GAC Enters., Inc. v. Medaglia (In re Medaglia),
52 F.3d 451 (2d Cir. 1995)................................................................... 12

Gekas v. Pipin (In re Met-L-Wood Corp.),
861 F.2d 1012 (7th Cir. 1988) ............................................................. 13

Hamilton v. Beretta U.S.A. Corp.,
96 N.Y.2d 222, 727 N.Y.S.2d 7 (2001) ................................................ 21

Jonas v. Resolution Trust Corp. (In re Comark),
971 F.2d 322 (9th Cir. 1992) ............................................................... 20

Licensing by Paolo, Inc. v. Sinatra (In re Gucci),
105 F.3d 837 (2d Cir. 1997)................................................................. 11

Licensing by Paolo, Inc. v. Sinatra (In re Gucci),
126 F.3d 380 (2d Cir. 1997)................................................................. 12

Mastafa v. Australian Wheat Bd. Ltd.,
No. 07 Civ 7955 (GEL), 2008 WL 4378443 (S.D.N.Y. Sept. 25, 2008).......... 17

Morgan Stanley & Co. v. J.P. Morgan Chase Bank, N.A.,
645 F. Supp. 2d 248 (S.D.N.Y. 2009).................................................... 9

Mullane v. Cent. Hanover Bank & Trust Co.,
339 U.S. 306 (1950)............................................................................ 12

Panther Partners, Inc. v. Ikanos Commc'ns, Inc.,
538 F. Supp. 2d 662 (S.D.N.Y. 2008).................................................... 17

Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp.,
266 B.R. 575 (S.D.N.Y. 2001)............................................................. 13

Photopaint Techs., LLC v. Smartlens Corp.,
335 F.3d 152 (2d Cir. 2003)................................................................. 22

Saunders v. AOL Time Warner, Inc.,
18 A.D.3d 216, 794 N.Y.S.2d 342 (1st Dep't 2005) ............................. 15

08-13555-smg Doc 12435-21 Filed 10/28/10 Entered 10/28/10 18:51:06 doc 12
Case 1:09-cv-10337-GBD Document 12 Filed 02/11/10 Page 5 of 28
Pg 5 of 28

**Page(s)**

SEC v. Credit Bancorp, Ltd.,
279 F. Supp. 2d 247 (S.D.N.Y. 2003), aff'd, 386 F.3d 438 (2d Cir. 2004)........................  18

SEC v. Credit Bancorp, Ltd.,
386 F.3d 438 (2d Cir. 2004)...............................................................................  16

SEC v. Siebel Sys., Inc.,
384 F. Supp. 2d 694 (S.D.N.Y. 2005)...................................................................  9

Stone v. Williams,
970 F.2d 1043 (2d Cir. 1992)..............................................................................  15

Taussig v. Clipper Group, L.P.,
13 A.D.3d 166, 787 N.Y.S.2d 10 (1st Dep't 2004) ...............................................  22

Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP,
629 F. Supp. 2d 259 (S.D.N.Y. 2007),
aff'd, No. 08 Civ. 2010, 2009 WL 3259560 (2d Cir. Oct. 13, 2009) ................................  8

Yak v. Bank Brussels Lambert,
252 F.3d 127 (2d Cir. 2001)..............................................................................  9

**Other Authorities**

James Steven Rogers, Policy Perspectives on Revised U.C.C. Article 8,
43 UCLA L. Rev. 1431 (1996) ...............................................................................  13-14

Jeanne L. Schroeder, A Repo Opera: How Criimi Mae Got Repos Backwards,
76 Am. Bankr. L.J. 565 (2002) ...........................................................................  20

iv

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-10347-GBD    Document 12    Filed 02/11/10    Page 6 of 28
Pg 6 of 28

Defendant Barclays Capital Inc. ("Barclays") submits this memorandum of law in support of its motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the Complaint (the "Complaint") filed by plaintiff FirstBank Puerto Rico ("FirstBank").

## PRELIMINARY STATEMENT

FirstBank complains that Lehman Brothers Special Financing Inc. ("LBSFI"), its counterparty to a swap agreement, failed to return to FirstBank the mortgage-backed securities (the "Securities") that FirstBank had posted as collateral with LBSFI. The fact that LBSFI may be in default on its contractual obligations to FirstBank coupled with the allegation that the Securities were sold to Barclays does not give FirstBank a claim against Barclays. This is so because according to FirstBank's own Complaint – as confirmed by the documents incorporated by reference therein[1] – in the transaction (the "Sale Transaction") in which Barclays is alleged to have acquired the Securities from LBSFI affiliates Lehman Brothers Holdings Inc. ("LBHI") (the ultimate Lehman Brothers parent entity) and Lehman Brothers Inc. ("LBI") (the Lehman broker/dealer), those entities represented and warranted they were authorized to transfer the Securities to Barclays and the bankruptcy court that approved the Sale Transaction likewise found that LBHI and LBI "are the sole and lawful owners" of the allegedly transferred Securities.

This action concerns certain Securities that Barclays allegedly acquired, in good faith, as part of a portfolio of securities from LBI in September 2008, when LBI and related

---

[1] The Complaint makes reference to numerous documents, none of which is attached to it. At pages 9-10, infra, we identify those documents incorporated by reference into the Complaint and which may therefore be considered by the Court in ruling on this motion to dismiss pursuant to Rule 12(b)(6). Each of the incorporated documents referenced in this memorandum of law is attached as an exhibit to the Declaration of Amy Chung, dated February 11, 2010 ("Chung Decl.") submitted herewith. Unless otherwise noted, all referenced exhibits are attached to the Chung Declaration.

08-13555-smg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16337-GBD   Document 12   Filed 02/17/10   Page 7 of 28
Pg 7 of 28

entities "crumbled during a period of extraordinary distress in the U.S. financial markets" and

ultimately declared bankruptcy under chapter 11.  <u>Bay Harbour Mgmt., L.C. v. Lehman Bros.</u>

<u>Holdings Inc. (In re Lehman Bros. Holdings, Inc.)</u>, 415 B.R. 77, 79 (S.D.N.Y. 2009); <u>see</u> Compl.

¶¶ 9, 17, 23, 66.  FirstBank alleges that the Securities were being held by LBI as LBSFI's

custodial agent.  Compl. ¶¶ 6, 9, 19-20.  In short, FirstBank argues that the Securities did not

belong to LBI and should not have been sold to Barclays.[2]

        FirstBank's attempt to recover from Barclays the value of the Securities (at the

time of delivery) as well as monetary damages arising from Barclays' good faith acquisition of

the Securities must be rejected for at least three dispositive and incurable reasons.  <u>First</u>, these

claims against Barclays are barred by the bankruptcy court's Order Under 11 U.S.C. §§ 105(a),

363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and

Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and

(B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated

September 19, 2008 (the "Sale Order") (Ex. B),[3] which this Court has affirmed.[4]  <u>See</u> <u>Bay</u>

---

[2]      Although FirstBank's factual allegation that the Securities were transferred from LBI to Barclays, <u>see</u> Compl. ¶¶ 64-66, must be accepted as true for purposes of this motion to dismiss, Barclays does not concede that FirstBank's Securities were among those transferred to it.  Indeed, the September 25, 2009 letter from Barclays' counsel on which FirstBank relies in paragraph 66 of the Complaint for the allegation that "[Barclays] confirmed that it had, in fact, received the [Securities] from LBI but claimed, <u>inter alia</u>, that it had purchased the [Securities] out of bankruptcy pursuant to the Purchase Agreement and Sale Order," <u>id.</u>, does not support the allegation.  <u>See</u> Letter from Boaz S. Morag to Lawrence Odell at 1 (Sept. 25, 2009) (Ex. A).  Instead, the letter, which noted that FirstBank had not identified the securities at issue and that Barclays "accordingly [did] not know which securities are at issue," simply "assum[ed], <u>arguendo</u>, that any securities that FirstBank contends were part of the collateral it posted shared the same cusip as securities transferred to Barclays under the repurchase transaction (the 'Repo') with LBI in September 2008 (and that such collateral was even traceable to the Repo)."  <u>Id.</u>

[3]      The Sale Order was entered on September 20, 2008.  <u>See</u> <u>Bay Harbour</u>, 415 B.R. at 82.

[4]      On September 15, 2009, LBHI, the Trustee of LBI and the LBHI Creditors' Committee filed motions pursuant to Rule 60 as incorporated into Bankruptcy Rule 9024, seeking various forms of relief

08-13555-smg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-10437-GBD    Document 12    Filed 02/17/10    Page 8 of 28
Pg 8 of 28

Harbour, 415 B.R. at 86. If Barclays did acquire the Securities, it was through a court-approved

sale in which Barclays was found to be a good faith purchaser that acquired all assets free and

clear of all claims.

Second, the Securities are security entitlements under Article 8 of the Uniform

Commercial Code (the "U.C.C."), which protects purchasers of security entitlements from

lawsuits if they did not have notice of an adverse claim. Under the Supreme Court's landmark

decisions in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal,

129 S. Ct. 1937 (2009), FirstBank must plead facts – not just legal conclusions – establishing

such notice. However, FirstBank does not and cannot allege the necessary facts regarding

Barclays' state of knowledge of FirstBank's claimed interest in the Securities. Indeed, its own

factual allegations establish that it was impossible for anyone to have known of FirstBank's

adverse claim as of the time the alleged transfer of the Securities took place on or before

September 22, 2008.

Third, to the extent that FirstBank is claiming that Barclays assumed its swap

contract with LBSFI, this allegation is demonstrably false based on the terms of the Sale Order

and other documents of which this Court may take judicial notice. As a stranger to the

FirstBank-LBSFI contract, Barclays may not be held liable for any breach of that contract by

LBSFI.

## THE COMPLAINT

According to the Complaint, FirstBank and LBSFI are parties to an International

Swap Dealers Association Master Agreement, dated as of January 16, 1997 (the "ISDA

---

with respect to the Sale Order. These motions have been opposed by Barclays and will be heard initially
on April 9, 2010. To the extent that an evidentiary hearing is required, one has been scheduled for the
weeks of April 26 or May 3, 2010. The Sale Order currently is in full force and effect.

08-13555-smg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-10437-GBD   Document 12   Filed 04/14/10   Page 9 of 28
Pg 9 of 28

Agreement"), which "required FirstBank to post collateral with LBSF[I]."  Compl. ¶¶ 6, 8.  To

satisfy this requirement, FirstBank delivered the Securities to LBSFI, but nonetheless allegedly

"held title to the [Securities]" at all relevant times.  Id. ¶¶ 9, 11, 22.  LBI purportedly acted as

LBSFI's "custodial agent for the purpose of physically holding the [Securities]" and was holding

the Securities when it "filed for protection under Chapter 11 of the United States Bankruptcy

Code" on or about September 15, 2008.  Id. ¶¶ 20, 23-24, 37.[5]  LBSFI followed in filing a

Chapter 11 petition on or about October 3, 2008.  Id. ¶ 17.

        FirstBank contends that it was due to receive a scheduled net cash settlement (i.e.,

a payment of cash, not the return of any particular securities) on or about September 15, 2008,

which LBSFI did not make.  Compl. ¶ 14.  FirstBank then delivered a notice of termination of

the ISDA Agreement on September 24, 2008 (the "Notice of Termination").  Id. ¶ 15.  The

Notice of Termination specified that LBSFI's failure "to deliver payment to FirstBank Puerto

Rico on or before the third Local Business Day after notice of failure to pay the scheduled net

cash settlement was given to [LBSFI] in accordance with Section 6(a) of the ISDA Agreement

… constitute[d] an Event of Default under Section 5(a)(i) of the ISDA Agreement."  Letter from

Víctor Barreras to Adriana León/Allyson Carine (Sept. 24, 2008) (Ex. C).  The Notice of

Termination also designated September 26, 2008 as the Early Termination Date, which allegedly

"entitled FirstBank to the immediate return of all of the [Securities]."  Compl. ¶ 16.

        However, FirstBank avers that LBI transferred the Securities, along with a large

portfolio of other securities, to Barclays in a repurchase transaction (the "Repo").  See Compl.

¶ 45.  At the same time as the Repo, Barclays, LBI, and LBHI were negotiating a transaction by

---

[5]     The Court may take judicial notice that the entity that filed for bankruptcy on September 15, 2008
was LBHI.  LBI, a member of the Securities Investor Protection Corporation ("SIPC"), was placed into
liquidation by SIPC on September 19, 2008.  See Bay Harbour, 415 B.R. at 79 & n.1.

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-16399-GBD    Document 12    Filed 02/10/10    Page 10 of 28
Pg 10 of 28

which Barclays would acquire certain assets of LBI (the "Purchased Assets"). This transaction

was memorialized in an Asset Purchase Agreement, dated as of September 16, 2008 (the "APA")

(Ex. D), as subsequently amended.

        In Section 5.2 of the APA, LBI represented and warranted that it "ha[d] all

requisite power, authority and legal capacity" to enter into the transaction. <u>Id.</u> (Ex. D). In

Section 5.4, it represented and warranted that:

> [o]ther than the real property subject to the Transferred Real
> Property Leases, intellectual property licensed to [LBI] and the
> personal property subject to personal property leases, <u>[LBI] owns
> (directly or indirectly) each of the Purchased Assets, and
> [Barclays] will be vested with good and exclusive title to such
> Purchased Assets, free and clear of all Liens,</u> other than Permitted
> Exceptions, to the fullest extent permissible under Section 363(f)
> of the Bankruptcy Code.

<u>Id.</u> (emphasis added).

        The APA was subsequently amended and clarified by a clarification letter dated

as of September 20, 2008 (the "Clarification Letter Agreement"), which specifically provided

that the rights and obligations of the parties under the Repo, including LBI's right to repurchase

the securities it had already transferred as of September 20, 2008, would terminate, and all

securities held by Barclays under the Repo would be deemed part of the Purchased Assets. <u>See</u>

Clarification Letter Agreement ¶¶ 1(a)(ii), 13 (Ex. E).[6] The Clarification Letter also confirmed

that the Purchased Assets were not to include the "assets of Subsidiaries of LBHI (other than

assets of LBI)." <u>Id.</u> ¶ 1(a).

------

[6]    The Sale Order and the APA have been approved in the LBI SIPC proceeding as well, where the
Sale Order has been incorporated by reference. <u>See</u> Order Approving, And Incorporating By Reference
For The Purposes Of This Proceeding, An Order Authorizing The Sale Of Purchased Assets And Other
Relief In The Lehman Brothers Holdings, Inc. Chapter 11 Proceeding, dated September 19, 2008 (Ex. F).
<u>See infra</u>, pages 9-10, for why this document may be considered.

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16397-GBD   Document 14   Filed 02/40/10   Page 11 of 28
Pg 11 of 28

On September 20, 2008, the bankruptcy court approved the Sale Transaction, including the retention of the Securities by Barclays, in an order providing that Barclays would "take title to and possession of the Purchased Assets" at closing "free and clear of all Interests of any kind or nature whatsoever[.]"  Sale Order ¶ 4 (Ex. B); see also id. ¶ N (finding that "the Debtors and LBI are the sole and lawful owners of the Purchased Assets" and that "[t]he transfer of the Purchased Assets to the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all Liens, claims, … or interests of any kind or nature whatsoever").  The bankruptcy court also found that Barclays was "a good faith Purchaser" and had "proceeded in good faith in all respects in connection with this proceeding."  Id. ¶ K.[7]  The transaction closed on September 22, 2008, see Bay Harbour, 415 B.R. at 83, two days before FirstBank delivered its Notice of Termination demanding return of the Securities.

Although the Complaint alleges that, "[a]t all times relevant hereto, FirstBank held title to the [Securities]," id. ¶ 11,[8] the U.C.C. requires FirstBank to demonstrate Barclays' notice of FirstBank's alleged adverse claim to the Securities.  FirstBank's sole attempt to satisfy this requirement is the conclusory assertion that Barclays "knew or reasonably should have known, following an exercise of ordinary due diligence, that the [Securities] in the possession of

---

[7]     On March 13, 2009, this Court affirmed the Sale Order.  Bay Harbour, 415 B.R. at 86.

[8]     It should be noted that the Credit Support Annex to the Schedule to the ISDA Agreement (the "Credit Support Annex") provides that LBSFI, as a secured party, had the right to "sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of, or otherwise use in its business any Posted Collateral it holds, free from any claim or right of any nature whatsoever of the Pledgor including any equity or right of redemption by the Pledgor."  Id. ¶ 6(c)(i) (Ex. G); see also id. ¶ 13(g)(ii) ("The provisions of Paragraph 6(c) will apply to Party A [i.e., LBSFI] and Party B [i.e., FirstBank].").

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-10497-GBD    Document 14    Filed 02/10/10    Page 12 of 28
Pg 12 of 28

LBI as custodial agent at the time of its bankruptcy filing belonged to FirstBank, and [were] not an asset of LBSF[I] or LBI." Id. ¶ 26; see id. ¶ 71 ("[Barclays] knew or should have known upon receipt of the [Securities] that the [Securities were] not and should not have been included in the assets delivered pursuant to the Sale Order because the [Securities were] not the property of the bankrupt estate, but rather, belonged to FirstBank."); see also id. ¶¶ 80, 84-86. FirstBank pleads no facts concerning Barclays' purported knowledge, but argues:

> [B]ecause of (i) the expedited nature of the underlying transaction, (ii) the fact that many people on the LBHI/LBI side of the transaction were themselves traumatized and in shock over the loss of their livelihoods, and (iii) other unprecedented circumstances attendant to this extraordinary transaction, once assets were finally delivered to [Barclays], [Barclays] needed to inspect what it received to assure that assets not transferred pursuant to the Sale Agreement were not included – mistakenly or otherwise – in the assets delivered to [Barclays].

Id. ¶ 41.

On December 21, 2009, FirstBank sued Barclays – but no Lehman entity – claiming that the Securities belong to it and not to Barclays, notwithstanding the Repo and the subsequent court-approved sale.[9] The Complaint alleges the following six claims for relief, for which it seeks monetary damages exceeding $62 million:

- Unjust enrichment (id. ¶¶ 70-75);

- Constructive trust/accounting (id. ¶¶ 76-82);

- Negligence (id. ¶¶ 83-91);

---

[9]  FirstBank's Complaint invoked diversity of citizenship as the basis of this Court's subject matter jurisdiction. By letter to the Court dated February 9, 2010, Barclays explained why this action also implicates bankruptcy jurisdiction under 28 U.S.C. § 1334, and asked that this Court refer this action to the United States Bankruptcy Court for the Southern District of New York, where the bankruptcy and SIPC liquidation proceedings of LBHI and LBI, respectively, are pending. Another copy of that letter is attached as Exhibit H to the Chung Declaration.

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-10375-GBD    Document 10    Filed 02/10/10    Page 13 of 28
Pg 13 of 28

- Breach of contract/duty to return (<u>id.</u> ¶¶ 92-99);

- Conversion (<u>id.</u> ¶¶ 100-05); and

- Breach of contract/failure to perform (<u>id.</u> ¶¶ 106-11).

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough "facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. It is not sufficient that the complaint aver facts that are "merely consistent with a defendant's liability." <u>Iqbal</u>, 129 S. Ct. at 1949 (internal quotation marks and citation omitted). Nor is it enough for a complaint's factual allegations solely to raise the specter that the defendant is liable. <u>Twombly</u>, 550 U.S. at 555. Instead, the complaint must advance sufficient factual allegations to "nudge[] [its] claims across the line from conceivable to plausible." <u>Id.</u> at 570; <u>see also</u> <u>Benzman v. Whitman</u>, 523 F.3d 119, 129 (2d Cir. 2008) (applying <u>Twombly</u> and holding that "a bare allegation that the head of a Government agency … knew that her statements were false and 'knowingly' issued false press releases is not plausible in the absence of some supporting facts"); <u>Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs</u>, No. 08 Civ. 6279 (GBD), 2009 WL 3053736, at *1 (S.D.N.Y. Sept. 24, 2009) (Daniels, J.).

In assessing the plausibility of a claim for relief, courts "must accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor." <u>Trautenberg v. Paul, Weiss, Rifkind, Wharton & Garrison LLP</u>, 629 F. Supp. 2d 259, 262 (S.D.N.Y. 2007) (Daniels, J.) (internal quotation marks and citation omitted), <u>aff'd</u>, No. 08 Civ. 2010, 2009 WL 3259560 (2d Cir. Oct. 13, 2009). However, they should reject "labels and conclusions" or "naked assertion[s] devoid of further factual enhancement." <u>Iqbal</u>, 129 S. Ct. at 1949 (internal quotation marks omitted). Likewise, "a formulaic recitation of the elements of

8

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-10459-GBD   Document 6   Filed 02/10/10   Page 14 of 28
Pg 14 of 28

a cause of action will not do." Twombly, 550 U.S. at 555; Dow Jones & Co. v. Int'l Sec. Exch., Inc., 451 F.3d 295, 307-08 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.") (internal quotation marks and citation omitted). Accordingly, the Court should begin its analysis by identifying any conclusory allegations not entitled to the presumption of truth and eliminating them. See Iqbal, 129 S. Ct. at 1950; Morgan Stanley & Co. v. J.P. Morgan Chase Bank, N.A., 645 F. Supp. 2d 248, 254 (S.D.N.Y. 2009). Then the Court should determine whether the remaining factual allegations state a plausible claim for relief. Iqbal, 129 S. Ct. at 1949-50.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6) this Court may consider the allegations of the Complaint as well as documents that are (i) incorporated by reference into the Complaint or (ii) integral to the Complaint. See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002); Yak v. Bank Brussels Lambert, 252 F.3d 127, 130-31 (2d Cir. 2001); see also SEC v. Siebel Sys., Inc., 384 F. Supp. 2d 694, 700 (S.D.N.Y. 2005) (Daniels, J.) ("A plaintiff cannot prevent the Court from examining their contents simply by failing to attach the documents to the complaint, or even by failing to explicitly cite to them in the complaint."). Furthermore, the Court may consider matters that may be taken on judicial notice in evaluating a motion to dismiss, including "prior pleadings, orders, judgments, and other items appearing in the Court's records of prior litigation that is closely related to the case sub judice." Chase v. Chase (In re Chase), 392 B.R. 72, 80 (Bankr. S.D.N.Y. 2008) (internal quotation marks and citation omitted).

Here, the documents that are incorporated by reference within the Complaint, and/or subject to judicial notice, include:

- Credit Support Annex (see Compl. ¶¶ 12-13, 16, 21; see also supra note 8);

9

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-10575-GBD   Document 12   Filed 02/10/10   Page 15 of 28
Pg 15 of 28

- Letter from Víctor Barreras to Adriana León/Allyson Carine (Sept. 24, 2008) (see Compl. ¶ 15);

- APA (see Compl. ¶¶ 33, 46);

- Clarification Letter Agreement (see Compl. ¶ 33);

- Sale Order (see Compl. ¶ 38);

- Order Approving, And Incorporating By Reference For The Purposes Of This Proceeding, An Order Authorizing The Sale Of Purchased Assets And Other Relief In The Lehman Brothers Holdings, Inc. Chapter 11 Proceeding (Sept. 19, 2008); and

- Letter from Boaz S. Morag to Lawrence Odell (Sept. 25, 2009) (Compl. ¶ 66).

Applying the appropriate pleading standards to the allegations of the Complaint as construed in light of the documents properly before the Court, Barclays' motion to dismiss should be granted.

## **ARGUMENT**

### **POINT I**

### **THE SALE ORDER PRECLUDES THIS LAWSUIT**

Each and every claim asserted in the Complaint is barred by the terms of the Sale Order. To the extent that the CUSIPs[10] of FirstBank's Securities are among the CUSIPs of those securities that were transferred to Barclays under the Repo, see supra note 2, Barclays purchased the Securities free and clear of all claims under the Sale Order, which approved the APA as clarified by the Clarification Letter Agreement. FirstBank's allegation that the Securities were "never an asset of 'Seller' as defined in the Purchase Agreement" and accordingly were not part

---

[10]     CUSIPs are nine-character alphanumeric identifiers distributed by the Committee on Uniform Securities Identification Procedures to identify individual securities and facilitate the clearing and settlement of trades.

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16379-GBD   Document 12   Filed 02/10/10   Page 16 of 28
Pg 16 of 28

of the Purchased Assets, Compl. ¶ 39, ignores both the findings of this Court and the bankruptcy

court and the law entitling Barclays to protection against lawsuits such as this one.

        Barclays bargained for and obtained not only a representation and warranty from

LBHI and LBI, as Sellers, that they owned and had the power to convey the assets being

transferred to Barclays, but also an explicit finding by the bankruptcy court to this effect.  <u>See</u>

Sale Order ¶ N (Ex. B).  In approving the Sale, this Court and the bankruptcy court specifically

found that Barclays was a good faith purchaser and purchased all the Purchased Assets

(including the Securities if they were among the securities conveyed in the Repo) free and clear

of all claims – including the claims asserted here by FirstBank.  <u>See id.</u> ¶ K (Barclays "is a good

faith Purchaser of the Purchased Assets within the meaning of Bankruptcy Code section 363(m)

and is, therefore, entitled to all of the protections afforded thereby.  [Barclays] has proceeded in

good faith in all respects in connection with this proceeding."); <u>id.</u> ¶ N ("The transfer of the

Purchased Assets to [Barclays] under the Purchase Agreement will be a legal, valid and effective

transfer of the Purchased Assets … free and clear of all Liens, claims … or interests of any kind

or nature whatsoever[.]"); <u>see also</u> <u>Bay Harbour</u>, 415 B.R. at 84 (affirming "bankruptcy court's

determination of Barclays's good faith status").

        If LBI's representation was false, FirstBank may have a cause of action against

LBI as well as LBSFI, but that does not vitiate the rulings in the Sale Order confirming Barclays'

receipt of the Purchased Assets free and clear of all claims.  <u>See</u> <u>Licensing by Paolo, Inc. v.

Sinatra (In re Gucci)</u>, 105 F.3d 837, 840 (2d Cir. 1997) (noting that court reviewing sale order

"may neither reverse nor modify the judicially-authorized sale if the entity that purchased or

leased the property did so in good faith and if no stay was granted").

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-16347-GBD    Document 12    Filed 02/10/10    Page 17 of 28
Pg 17 of 28

The Sale Order enjoined any party claiming an interest in the Purchased Assets (including the Securities) from asserting, prosecuting or otherwise pursuing claims against Barclays.[11]  Sale Order ¶ 7 (Ex. B).  Finality in bankruptcy sales and protecting the purchaser from subsequent litigation promote a key objective of bankruptcy law – maximizing the purchase price of assets for the benefit of the estate and its creditors.  Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) (affirming good faith purchaser determination and rendering other issues on appeal moot under Section 363(m) of Bankruptcy Code).  In fact, the bankruptcy court specifically found that Barclays would not have entered into the APA without the protection that the assets would be transferred free and clear of claims.  Sale Order ¶ O (Ex. B).

As for FirstBank's suggestion that its "due process" rights may have been violated in the approval of the Sale Transaction, Compl. ¶ 68, due process requires only "notice reasonably calculated, under all the circumstances, … with due regard for the practicalities and peculiarities of the case."  Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also GAC Enters., Inc. v. Medaglia (In re Medaglia), 52 F.3d 451, 455 (2d Cir. 1995) (applying Mullane in bankruptcy context).  FirstBank, like all other creditors, had the opportunity to appear at the sale hearing, where the bankruptcy court, working within the reality that the value of the debtors' assets was deteriorating as each moment passed, explicitly addressed the notice requirement.  See Sale Order ¶ C (Ex. B) (finding that adequate and sufficient notice was given in light of exigent circumstances); id. ¶ F (finding that there was reasonable opportunity to object and be heard with respect to proposed Sale in light of exigent

---

[11]    Barclays reserves its rights to seek a contempt finding and damages for its costs in connection with this proceeding.

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16397-GBD   Document 12   Filed 02/40/10   Page 18 of 28
Pg 18 of 28

circumstances). Moreover, this Court has already held that the bankruptcy court "appropriately considered and resolved due process interests throughout the sale process." Bay Harbour, 415 B.R. at 85 n.7.

Thus, FirstBank has no due process objection to the enforcement of the Sale Order, which prohibits its claims against Barclays. See, e.g., Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 583 (S.D.N.Y. 2001) (holding that creditor was bound by order limiting value of its claims absent actual notice where notice provided was reasonable under circumstances); see also Gekas v. Pipin (In re Met-L-Wood Corp.), 861 F.2d 1012, 1017 (7th Cir. 1988) (sale under Section 363 of the Bankruptcy Code "transfers property rights, and property rights are rights good against the world, not just against parties to a judgment or persons with notice of the proceeding"). Accordingly, the Sale Order bars each of FirstBank's claims.

## POINT II

## THE U.C.C. BARS FIRSTBANK'S TORT AND EQUITABLE CLAIMS

Each of FirstBank's claims that Barclays received the Securities improperly and is liable for their return to FirstBank plus damages (Claims 1-3, 5) is precluded by the U.C.C. As a threshold matter, it should be noted that a seller of a financial asset (unlike the seller of a painting or a house) may convey better title in the property than he himself has. See Enron Corp. v. Springfield Assocs. (In re Enron Corp.), 379 B.R. 425, 436 & n.58 (S.D.N.Y. 2007) (noting that purchaser does not stand in shoes of seller and thus can obtain more than seller had in transactions governed by Article 8 of the U.C.C.).[12] Thus, even in the case of stolen bonds, "[i]f

---

[12]       [T]he general rule of nemo dat [qui non habet] has never been thought appropriate for investment securities. Rather, a principle of finality has long been a fundamental policy of the commercial law of investment securities. The finality principle dictates that once a securities transfer

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-16347-GBD    Document 12    Filed 02/10/10    Page 19 of 28
Pg 19 of 28

Creditor did not have notice of Owner's claim, Section 8-502 <u>precludes</u> any action by Owner against Creditor, whether framed in constructive trust or other theory." N.Y. U.C.C. § 8-502 cmt. 3 (emphasis added). Accordingly, the allegation that LBI was not entitled to transfer the Securities posted as collateral with LBSFI, Compl. ¶¶ 24, 39, even if true, is irrelevant under Article 8 to the issue of Barclays' liability for receiving a security entitlement for which it paid value.

Under Article 8 of the U.C.C., an "adverse claim" encompasses "a claim that a claimant has <u>a property interest</u> in a financial asset and that it is a violation of the rights of the claimant for another person to hold, transfer, or deal with the financial asset," N.Y. U.C.C. § 8-102(a)(1) (emphasis added), not a mere contractual right to the return of securities bearing the same CUSIP as that of the securities the claimant had posted as collateral. Assuming <u>arguendo</u> that FirstBank had title to the Securities and therefore that neither LBSFI nor LBI was permitted to transfer the Securities to anyone, a claim against Barclays would still be barred by Section 8-510(a) of the U.C.C.:

> [A]n action based on an adverse claim to a financial asset or security entitlement, whether framed in <u>conversion</u>, replevin, <u>constructive trust</u>, equitable lien, <u>or other theory</u>, <u>may not be asserted</u> against a person who purchases a security entitlement, or an interest therein, from an entitlement holder if the purchaser <u>gives value</u>, <u>does not have notice of the adverse claim</u>, and <u>obtains control</u>.

---

has been implemented by the appropriate formal mechanism, the transfer of the property interest is final. To state the point in slightly different terms, once a purchaser has acquired a property interest in a security by a transfer implemented through the appropriate formal mechanism, <u>that purchaser's acquisition of the property interest cannot be unsettled on the basis of an assertion that the transferor acted wrongfully in transferring the securities to the purchaser</u>.

James Steven Rogers, <u>Policy Perspectives on Revised U.C.C. Article 8</u>, 43 UCLA L. Rev. 1431, 1462 (1996) (emphasis added).

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-10347-GBD   Document 12   Filed 02/10/10   Page 20 of 28
Pg 20 of 28

Id. (emphasis added).

By virtue of the Repo and the Sale Order, Barclays plainly "gave value" for the Purchased Assets, and FirstBank does not dispute that Barclays has "obtain[ed] control" for purposes of the first and third elements of Section 8-510(a).  See Sale Order ¶ 19 (Ex. B) ("The consideration provided by the Purchaser to the Debtors and LBI pursuant to the Purchase Agreement for its purchase of the Debtors' interest in the Purchased Assets constitutes reasonably equivalent value and fair consideration under [applicable law]."); cf. Bay Harbour, 415 B.R. at 84 (affirming "bankruptcy court's determination of Barclays's good faith status").

Absent the requisite notice, Section 8-510(a) bars FirstBank from asserting any of the tort or equitable claims or remedies, however styled, that are alleged as Claims 1 (unjust enrichment), 2 (constructive trust/accounting),[13] 3 (negligence), and 5 (conversion) of the Complaint.  See N.Y. U.C.C. § 8-510(a) (precluding any action "whether framed in conversion, replevin, constructive trust, equitable lien, or other theory") (emphasis added).

FirstBank fails to plead any facts in the Complaint to support an inference that Barclays had notice of any adverse claim concerning the Securities, thus mandating dismissal of Claims 1-3 and 5.  Section 8-105(a) of the U.C.C. specifies three limited circumstances that confer notice of an adverse claim on a purchaser of a security entitlement:

---

[13]     With respect to FirstBank's second claim for relief, which seeks a constructive trust/accounting on the Securities, Compl. ¶¶ 81-82, the U.C.C. explicitly precludes a "constructive trust," whether as a cause of action or remedy.  It is worth noting that, in New York, a constructive trust is merely a remedy upon the successful prosecution of some other cause of action:  "A constructive trust is a remedial device imposed in favor of one entitled to property that is wrongfully withheld or where to allow the present holder to retain the property would result in unjust enrichment."  Stone v. Williams, 970 F.2d 1043, 1051 (2d Cir. 1992).  FirstBank has "no cause of action for an accounting" against Barclays because it has not alleged "a confidential or fiduciary relationship" between itself and Barclays.  Saunders v. AOL Time Warner, Inc., 18 A.D.3d 216, 217, 794 N.Y.S.2d 342, 344 (1st Dep't 2005).  In any event, FirstBank's constructive trust/accounting claim is barred by the U.C.C.

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-16399-GBD    Document 10    Filed 02/40/10    Page 1 of 28
Pg 21 of 28

> (1) the person knows of the adverse claim;
>
> (2) the person is aware of facts sufficient to indicate that there is a
> significant probability that the adverse claim exists and
> deliberately avoids information that would establish the existence
> of the adverse claim; or
>
> (3) the person has a duty, imposed by statute or regulation, to
> investigate whether an adverse claim exists, and the investigation
> so required would establish the existence of the adverse claim.

Id.  "Simply being aware of another party's property interest is not sufficient to establish notice

of an adverse claim; rather, '[t]he transferee must be aware that the transfer violates the other

party's property interest.'"  SEC v. Credit Bancorp, Ltd., 386 F.3d 438, 448 (2d Cir. 2004)

(quoting U.C.C. § 8-105 cmt. 2).

FirstBank has made no attempt to satisfy the U.C.C.'s pleading requirement.  It

alleges neither facts to establish notice of FirstBank's claimed property right in the Securities nor

any facts (even if relevant) regarding LBI's lack of authority to transfer the Securities.

As to FirstBank's claimed property interest in the Securities, as noted above,

FirstBank did not terminate the ISDA Agreement and demand the return of the Securities until

September 24, 2008, two days after the closing of the Sale Transaction and after the Repo was

completed.  As of the date of the Repo, the only information available to anyone at LBSFI or

LBI (even if, contrary to the law and facts, such knowledge could be imputed to Barclays) was

that FirstBank had made a claim for breach of contract for failure to timely pay a "net cash

settlement" as of September 15.  By its own admission, FirstBank did not terminate its contract

with LBSFI and assert a property right in the Securities it had voluntarily delivered to LBSFI as

collateral until September 24, 2008 at the earliest.  Until that date, the only claim FirstBank had

asserted against LBSFI was a claim for cash not timely paid as of September 15, not a claim to a

property interest in a securities entitlement.  Thus, as of the date of the Repo, it was not possible

16

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-10379-GBD   Document 14   Filed 02/10/10   Page 22 of 28
Pg 22 of 28

for Barclays to have had notice of FirstBank's adverse claim, as FirstBank did not put anyone on notice of that claim until September 24.

As to Barclays' notice that LBI was not authorized to transfer collateral posted with LBSFI, FirstBank still fails to plead any facts that would establish the requisite notice as provided for in Section 8-105(a) of the U.C.C., even if notice that LBI was not entitled to transfer collateral posted with LBSFI could be equated with knowledge of FirstBank's property interest in the Securities.

### A.    FirstBank Has Failed To Plead Facts Establishing Knowledge Of An Adverse Claim Under Section 8-105(a)(1) Of The U.C.C.

FirstBank alleges only that Barclays "knew … following an exercise of ordinary due diligence, that the [Securities] in the possession of LBI as custodial agent at the time of its bankruptcy filing belonged to FirstBank, and [were] not an asset of LBSF[I] or LBI." Compl. ¶ 26.  This "formulaic recitation of the elements of a cause of action" is inadequate pleading under Twombly, 550 U.S. at 555.  See Mastafa v. Australian Wheat Bd. Ltd., No. 07 Civ. 7955 (GEL), 2008 WL 4378443, at *5 (S.D.N.Y. Sept. 25, 2008) (dismissing claim for aiding and abetting, which requires actual knowledge, because plaintiffs' allegation that bank "'knowingly provided knowing practical assistance'" was "nothing more than a 'formulaic recitation' … [that was] not sufficient by itself to make the claim for relief 'plausible'") (quoting Twombly, 127 S. Ct. at 1964-65); Panther Partners, Inc. v. Ikanos Commc'ns, Inc., 538 F. Supp. 2d 662, 669-70 (S.D.N.Y. 2008) (plaintiff's "pleading with 20/20 hindsight" in securities litigation failed to state claim where "allegations with regard to what [issuer] knew, and when they knew it, lack[ed] the specificity and detail needed to rise above the 'speculative' level and into the realm of a 'plausible' pleading") (quoting Twombly, 127 S. Ct. at 1965).  FirstBank then undermines its own allegation of actual knowledge by acknowledging that the scope of Barclays' due

17

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-10375-GBD   Document 12   Filed 02/10/10   Page 23 of 28
Pg 23 of 28

diligence, owing to exigent circumstances and not to anyone's fault, was severely limited.

Compl. ¶ 32 (alleging that Barclays agreed "to acquire assets of LBI … literally one day after the

LBI Bankruptcy was filed").  Moreover, FirstBank does not allege how Barclays knew from this

limited due diligence that FirstBank specifically owned securities with "a par value of

approximately $62 million at the end of September 2008," id. ¶ 10, when the terms of the

transaction involved the assumption of "billions of dollars in liabilities" and the payment of

"over $1 billion in cash" for hundreds of securities.  Bay Harbour, 415 B.R. at 81.

      Under U.C.C. § 8-105(a)(1), FirstBank would have to allege that the Barclays

employees who worked on the Repo had actual knowledge of LBI's purported lack of authority

to transfer the Securities, which FirstBank has not done and cannot do.  See SEC v. Credit

Bancorp, Ltd., 279 F. Supp. 2d 247, 266 (S.D.N.Y. 2003) (for purposes of determining whether

defendant had notice of adverse claim, "the relevant parties are 'the officers or agents who

conducted [the] purchase transaction'") (quoting U.C.C. § 8-105 cmt. 4), aff'd, 386 F.3d 438

(2d Cir. 2004); see also id. at 263 (noting that "[k]nowledge is defined [for purposes of U.C.C.

§ 8-105(a)(1)] … as actual knowledge") (quoting U.C.C. § 8-105 cmt. 3).

    **B.**    **FirstBank Has Failed To Plead Facts Establishing Any Duty
To Investigate Under Section 8-105(a)(3) Of The U.C.C.**

      FirstBank's alternative allegation that Barclays "reasonably should have known

that … [it] needed to inspect what it received to assure that assets not transferred pursuant to the

Sale Agreement were not included – mistakenly or otherwise – in the assets delivered to

[Barclays]," Compl. ¶ 41, similarly fails.  FirstBank pleads no statute or regulation requiring

Barclays to perform due diligence that could yield the requisite knowledge to satisfy U.C.C.

§ 8-105(a)(3).  And neither the U.C.C. nor any other statute imposes a duty of investigation on a

purchaser of securities.  To the contrary, the comments to the U.C.C. note that  "[r]ather than

18

imposing duties to investigate, the general policy of the commercial law of the securities holding

and transfer system has been to eliminate legal rules that might induce participants to conduct

investigations of the authority of persons transferring securities on behalf of others for fear that

they might be held liable for participating in a wrongful transfer."  N.Y. U.C.C. § 8-503 cmt. 3.

Moreover, Barclays bargained for and obtained a specific representation by LBI that LBI owned,

"directly or indirectly[,] each of the Purchased Assets," APA § 5.4 (Ex. D), thereby undermining

any contention that Barclays was unconcerned with LBI's right and ability to convey the

Purchased Assets.  Finally, Barclays sought and obtained a finding by the bankruptcy court to the

same effect.  See Sale Order ¶ N (Ex. B).

### C.    FirstBank Has Failed To Plead Facts Establishing Any Awareness And Deliberate Avoidance Under Section 8-105(a)(2) Of The U.C.C.

FirstBank's "knew or should have known" allegation also does not plead any facts

that plausibly establish that Barclays was "aware of facts sufficient to indicate that there is a

significant probability that the adverse claim exists and deliberately avoid[ed] information that

would establish the existence of the adverse claim" so as to provide notice of an adverse claim

under Section 8-105(a)(2).  There is no allegation of specific facts to make such a claim plausible

on its face and, thus, the claim is precisely the sort of "conclusory allegation[] unsupported by

factual assertions" that "fails even the liberal standard of Rule 12(b)(6)," pre-Twombly.  Dow

Jones, 451 F.3d at 307 (internal quotation marks and citations omitted); see also B.H. Papasan v.

Allain, 478 U.S. 265, 286 (1986) (courts deciding motions to dismiss "are not bound to accept as

true a legal conclusion couched as a factual allegation").  It certainly does not "nudge[]

[FirstBank's] claims across the line from conceivable to plausible," as required under Twombly.

550 U.S. at 570.

19

08-13555-mjc    Doc 12435-31    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-16397-GBD    Document 12    Filed 02/10/10    Page 25 of 28
Pg 25 of 28

Finally, it is worth noting that the Securities at issue were transferred to Barclays as part of a repurchase agreement, and that such agreements provide a critical source of credit in the United States, "averag[ing] several hundred billion dollars a day." Jonas v. Resolution Trust Corp. (In re Comark), 971 F.2d 322, 325 (9th Cir. 1992); Jeanne L. Schroeder, A Repo Opera: How Criimi Mae Got Repos Backwards, 76 Am. Bankr. L.J. 565, 570 (2002) (repo market has "a daily volume of hundreds of billions of dollars") (emphasis in original).  As noted, no diligence is required by statute or regulation for transactions in this vast market, which "are frequently of short duration, often overnight." Cohen v. Army Moral Support Fund (In re Bevill, Bresler & Schulman Asset Mgmt. Corp.), 67 B.R. 557, 607 (D.N.J. 1986).  FirstBank offers no basis as to how Barclays could have conducted diligence as to every one of the hundreds of securities transferred under the Repo and reviewed the documentation in LBI's files concerning those securities in a day's time, which is the only way that the ISDA Agreement might have been discovered.  The Sale Transaction was extraordinary in terms of its sheer size and the severe time constraints under which the parties, as well as the bankruptcy court, had to operate.  Were FirstBank's conclusory and barebones allegations deemed adequate to create an issue of fact as to the purchaser's notice of an adverse claim, the threat of having to engage in discovery and the possibility of being held liable for an adverse claim under these circumstances would likely bring the market to a halt.  There is neither the time nor the opportunity to perform the type of due diligence FirstBank would demand on each of the hundreds of thousands of CUSIPs involved in repurchase transactions daily.

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16397-GBD   Document 12   Filed 02/10/10   Page 26 of 28
Pg 26 of 28

Accordingly, however framed, each of FirstBank's causes of action for recovery in tort (Claims 1-3 and 5) is precluded under the U.C.C.[14]

## POINT III

### FIRSTBANK HAS NO CONTRACT CLAIMS AGAINST BARCLAYS BECAUSE BARCLAYS HAS NOT ASSUMED ANY OF THE CONTRACTS AT ISSUE

FirstBank acknowledges that "[Barclays] denied any obligations to FirstBank under or in connection with the Swaps Agreement or otherwise." Compl ¶ 47. FirstBank is not in contractual privity with Barclays and therefore (even in the absence of the Sale Order provision barring the pursuit of claims against Barclays) has no contractual claim against Barclays.

The provisions of the APA and the Clarification Letter Agreement make plain that Barclays did not assume any liabilities attaching to the ISDA Agreement between FirstBank and LBSFI. The Clarification Letter Agreement expressly identifies contracts such as the ISDA Agreement between FirstBank and LBSFI as "Excluded Contract[s]," Clarification Letter Agreement ¶ 21 (Ex. E), for the purpose of the APA provision that Barclays would not assume any liabilities arising out of "Excluded Contracts." APA §§ 2.4(a), 1.1(a) (Ex. D) (providing that Barclays would not assume liabilities respecting "Contracts that are not Purchased Contracts" and defining "Excluded Contracts" as those that are not "Purchased Contracts"); see also Sale

---

[14]     With respect to FirstBank's third claim for relief for negligence, Compl. ¶¶ 83-91, FirstBank asserts that Barclays owed it the duty "to inspect all assets delivered purportedly pursuant to the Sales Order to assure that no assets belonging to others were included within the assets delivered, mistakenly or otherwise, and to then return all such assets to their rightful owners." Id. ¶ 87. As noted above, see supra pages 18-19, there is no such duty that has been legally recognized, which is an independent ground for dismissing the negligence claim. Cf. Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 232, 727 N.Y.S.2d 7, 12 (2001) (noting that "[t]he threshold question in any negligence action is: does defendant owe a legally recognized duty of care to plaintiff?").

21

08-13555-mg   Doc 12435-21   Filed 10/28/10   Entered 10/28/10 18:51:06   doc 12
Case 1:09-cv-16399-GBD   Document 12   Filed 02/10/10   Page 27 of 28
Pg 27 of 28

Order ¶ S (Ex. B) (immunizing Barclays from claims against LBI relating to Purchased Assets except insofar as APA provides to contrary).

It is beyond cavil that "the interpretation of an unambiguous contract is a question of law for the court, and the provisions of the contract delineating the rights of the parties prevail over the allegations set forth in a complaint."  Ark Bryant Park Corp. v. Bryant Park Restoration Corp., 285 A.D.2d 143, 150, 730 N.Y.S.2d 48, 54 (1st Dep't 2001).  Thus, where the terms of a contract are unambiguous, it is appropriate for a court to render judgment as a matter of law, notwithstanding any contradictory averments or assertions the parties may advance during litigation.  Photopaint Techs., LLC v. Smartlens Corp., 335 F.3d 152, 160 (2d Cir. 2003); Taussig v. Clipper Group, L.P., 13 A.D.3d 166, 166-67, 787 N.Y.S.2d 10, 11 (1st Dep't 2004).

Because the unambiguous provisions of the APA and the Clarification Letter Agreement make evident that Barclays did not assume any liabilities attaching to the ISDA Agreement, FirstBank cannot maintain an action for breach of the ISDA Agreement against Barclays.  Thus, FirstBank's Claims 4 and 6 should be dismissed.

08-13555-mg    Doc 12435-21    Filed 10/28/10    Entered 10/28/10 18:51:06    doc 12
Case 1:09-cv-16397-GBD    Document 12    Filed 02/11/10    Page 28 of 28
Pg 28 of 28

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: New York, New York
       February 11, 2010

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____ /s/ Lindsee P. Granfield_____
       Lindsee P. Granfield
       Boaz S. Morag

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Barclays Capital Inc.