# Exhibit D
# Part 4 of 4

i

(c) On or after the Closing, Purchaser shall, or shall cause its Subsidiaries to, pay each Transferred Employee an annual bonus ("08 Annual Bonuses"), in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary) and reflected on the financial schedule delivered to Purchaser on September 16, 2008 and initialed by an officer of each of Holdings and Purchaser (the "Accrued 08 FY Liability"). Such 08 Annual Bonuses shall be awarded on or before March 15, 2009 in such forms and proportions as are consistent with Purchaser's customary practices, so that the aggregate amount awarded shall equal the Accrued 08 FY Liability. Any amounts that would have been allocated in respect of any Transferred Employee who voluntarily terminates employment before such award is made shall instead be allocated among the remaining Transferred Employees (who include, for this purpose, those Transferred Employees who are terminated without cause by Purchaser or its affiliates prior to the time the awards are made) (collectively, the "Remaining Transferred Employees"). However, the Accrued 08 FY Liability shall be reduced if, prior to the time such awards are made, both (x) 10% of the Transferred Employees have voluntarily terminated their employment with the Purchaser and (y) such terminated Transferred Employees would have been expected to receive at least 10% of the 08 Annual Bonuses had no such Transferred Employee's employment in fact terminated. In that case, Purchaser may adjust the Accrued 08 FY Liability proportionately from its initial level, in the same proportion as the reduction in Transferred Employees below 90% of the initial number of Transferred Employees compared to 90% of the initial number of Transferred Employees, in a good faith and reasonably equitable manner to account for the Transferred Employees to whom 08 Annual Bonuses will not be payable, and thereby to reduce the aggregate 08 Annual Bonuses. Any such reduction shall take into account the length of service, seniority within the Business and contribution of the Remaining Transferred Employees, relative to the allocation of the Accrued 08 FY Liability, in accordance with the principles enumerated herein.

## ARTICLE X

## CONDITIONS TO CLOSING

10.1 Conditions Precedent to Obligations of Purchaser. The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):

(a) Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by it prior to the Closing Date, and Purchaser shall have received a certificate signed by an authorized officer of Seller, dated the Closing Date, to the forgoing effect;

i

(b) at least 70% of the U.S. and Canadian Persons identified by Seller and reasonably accepted by Purchaser, acting in good faith, not later than two Business Days after the date hereof as the targeted population are actively employed in the Business immediately prior to the Closing and as to whom management of Seller has made a good faith assessment that they will continue in employment with the Business as of the Closing Date;

(c) the Bankruptcy Court shall have entered a final order permitting Seller to sell the premises at 745 Seventh Avenue, New York, New York to Purchaser;

(d) the mortgage in favor of the Seller's Affiliate with respect to the premises at 745 Seventh Avenue, New York, New York shall have been fully repaid and extinguished;

(e) Seller shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in Section 4.2;

(f) Purchaser shall have obtained confirmation from the SEC and CFTC that Purchaser will be eligible, following the Closing, to compute its net capital under Appendix E to SEC Rule 15c3-1 and adjusted net capital in accordance with the provisions of CFTC Rule 1.17(c)(6);

(g) Purchaser shall have obtained from the SEC confirmation reasonably satisfactory to Purchaser regarding (i) the transition period during which Purchaser will be permitted to come into compliance with the consolidated holding company supervisory framework applicable to ultimate holding companies that have a principal regulator under SEC Rule 15c3-1e and g, and (ii) the scope of the deference to be extended by the SEC to the Federal Reserve and/or the home country consolidated supervisor of Purchaser's ultimate parent company in connection with the SEC's administration of the framework described in clause (i) of this subsection 10.1(g); and

(h) the Sellers headquarters building at 745 Seventh Avenue, New York, New York shall be substantially habitable.

10.2 Conditions Precedent to Obligations of Seller. The obligations of Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by Seller in whole or in part to the extent permitted by applicable Law):

(a) Purchaser shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Purchaser on or prior to the Closing Date, and Seller shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the foregoing effect; and

i

(b) Purchaser shall have delivered, or caused to be delivered, to Seller all of the items set forth in Section 4.3.

10.3 Conditions Precedent to Obligations of Purchaser and Seller. The respective obligations of Purchaser and Seller to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser and Seller in whole or in part to the extent permitted by applicable Law):

(a) there shall not be in effect any Order by a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(b) the Bankruptcy Court shall have entered the Breakup Fee and Competing Bid Order, in form and substance reasonably acceptable to Seller and Purchaser;

(c) the Bankruptcy Court shall have entered the Sale Order and any stay period applicable to the Sale Order shall have expired or shall have been waived by the Bankruptcy Court;

(d) LBI shall have commenced a case under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court; and

(e) Purchaser shall have obtained regulatory approval under the HSR Act and all other material regulatory, self-regulatory, exchange, clearing organization and governmental approvals, authorizations, waivers and/or licenses required to conduct the transferred Business following the Closing substantially in the manner as it was conducted immediately prior to the Closing and, after giving effect to the Closing (subject to such exceptions as shall not, in the aggregate, be material).

10.4 Frustration of Closing Conditions. Neither Seller nor Purchaser may rely on the failure of any condition set forth in Section 10.1, 10.2 or 10.3, as the case may be, if such failure was caused by such party's failure to comply with any provision of this Agreement.

ARTICLE XI

[RESERVED]

ARTICLE XII

TAXES

12.1 Transfer Taxes. Purchaser shall be responsible for (and shall indemnify and hold harmless Seller and its directors, officers, employees, Affiliates, agents,

successors and permitted assigns against) any sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or taxes or governmental charges (including any interest and penalty thereon) payable in connection with the transactions contemplated by this Agreement ("Transfer Taxes"). Seller shall, however, seek to include in the Sales Order a provision that provides that the transfer of the Purchased Assets shall be free and clear of any stamp or similar taxes under Bankruptcy Code Section 1146(c). Seller and Purchaser shall cooperate and otherwise take commercially reasonable efforts to obtain any available refunds for Transfer Taxes.

12.2 Prorations. Seller and Purchaser shall enter into customary prorations for the Purchased Assets as of the Closing.

12.3 Purchase Price Allocation. Seller and Purchaser shall allocate the purchase price (including the Assumed Liabilities) among the Purchased Assets as specified in Schedule 12.3 and, in accordance with such allocation, Purchaser shall prepare and deliver to Seller copies of Form 8594 and any required exhibits thereto (the "Asset Acquisition Statement"). Purchaser shall prepare and deliver to Seller from time to time revised copies of the Asset Acquisition Statement (the "Revised Statements") so as to report any matters on the Asset Acquisition Statement that need updating (including purchase price adjustments, if any) consistent with the agreed upon allocation. The purchase price for the Purchased Assets shall be allocated in accordance with the Asset Acquisition Statement or, if applicable, the last Revised Statements, provided by Purchaser to Seller, and all income Tax Returns and reports filed by Purchaser and Seller shall be prepared consistently with such allocation.

12.4 Adjustment to Purchase Price. The parties agree that any payment made under this Article XII shall be treated by such parties as an adjustment to the Purchase Price.

## ARTICLE XIII

## MISCELLANEOUS

13.1 Expenses. Except as otherwise provided in this Agreement, each of Seller and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

13.2 Injunctive Relief. Damages at law may be an inadequate remedy for the breach of any of the covenants, promises and agreements contained in this Agreement, and, accordingly, any party hereto shall be entitled to injunctive relief with respect to any such breach, including without limitation specific performance of such covenants, promises or agreements or an order enjoining a party from any threatened, or from the continuation of any actual, breach of the covenants, promises or agreements contained in

i

this Agreement. The rights set forth in this Section 13.2 shall be in addition to any other rights which a Party may have at law or in equity pursuant to this Agreement.

13.3 Submission to Jurisdiction; Consent to Service of Process.

(a) Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 13.7 hereof; provided, however, that if the Bankruptcy Case has closed, the parties agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b) Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of Section 13.7.

13.4 Waiver of Right to Trial by Jury. Each party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

13.5 Entire Agreement; Amendments and Waivers. This Agreement (including the schedules and exhibits hereto), the transition services agreements, the Dip Facility, the Interim Support and Cooperation Agreement, Master Repurchase Agreement and the Confidentiality Agreement represent the entire understanding and agreement between the parties hereto with respect to the subject matter hereof. This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought. No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this

i

Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach. No failure on the part of any party to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other right, power or remedy. All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

13.6 Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State.

13.7 Notices. All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

If to Seller, to:

Lehman Brothers Holdings Inc.
745 Seventh Avenue
New York, NY 10019
Facsimile: (646) 758-4226
Attention: Steven Berkenfeld, Esq.

i

With a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Facsimile: (212) 310-8007
Attention: Thomas Roberts
Michael Lubowitz

and a copy (which shall not constitute notice) to:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Facsimile: (212) 455-2502
Attention: John Finley
Andrew Keller

If to Purchaser, to:

Barclays Capital Inc.
200 Park Avenue
New York, NY 10166
Facsimile: (212) 412-7519
Attention: Jonathan Hughes, Esq.

With a copy to:

Cleary Gottlieb Steen & Hamilton LLP
One Liberty Plaza
New York, NY 10006
Facsimile: (212) 225-3999
Attention: Victor I. Lewkow
David Leinwand
Duane McLaughlin

and

Sullivan & Cromwell LLP
125 Broad St.
New York, NY 10004
Facsimile: (212) 558-3580
Attention: Mitchell S. Eitel
Jay Clayton

i

13.8 Severability. If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

13.9 Binding Effect; Assignment. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except as provided below. No assignment of this Agreement or of any rights or obligations hereunder may be made by either Seller or Purchaser (by operation of law or otherwise) without the prior written consent of the other parties hereto and any attempted assignment without the required consents shall be void, provided that Purchaser shall be entitled to assign its rights and obligations in whole or in part to its Affiliates or to designate its rights to acquire any assets hereunder to its Affiliates. No assignment of any obligations hereunder shall relieve the parties hereto of any such obligations. Upon any such permitted assignment, the references in this Agreement to Purchaser shall also apply to any such assignee unless the context otherwise requires.

13.10 Non-Recourse. No past, present or future director, officer, employee, incorporator, member, partner or equityholder of Seller shall have any liability for any obligations or liabilities of Seller under this Agreement or the Seller Documents of or for any claim based on, in respect of, or by reason of, the transactions contemplated hereby and thereby.

13.11 Counterparts. This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

13.12 Scope of Purchased Assets. This Agreement is not intended to convey and does not convey assets and liabilities from the non-U.S. and non-Canadian operations of Seller.

[*signature page follows*]

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

LEHMAN BROTHERS HOLDINGS INC.

By: ______________________
Name: Steven Berkenfeld
Title: Vice President

LEHMAN BROTHERS INC.

By: ______________________
Name: Steven Berkenfeld
Title: Managing Director

LB 745 LLC

By: ______________________
Name:
Title:

BARCLAYS CAPITAL INC.

By: ______________________
Name: Gerard LaRocca
Title: Chief Executive Officer

# Schedule 1 - Excluded Real Estate Assets

**New York**
1301 Avenue of the Americas - 7th Floor
1271 Avenue of the Americas
399 Park Avenue
605 Third Avenue
85 Tenth Avenue

**New Jersey**
Jersey City - 101 Hudson St.
Livingston - 2 Peachtree Hill Road (Co-location)
Florham Park - 230 Park Avenue
Hoboken - 111 River Street (Sublease)

**Branches**
Atlanta - 3414 Peachtree Road
Calgary - 150 Sixth Avenue, Suite 3370 - PetroCanada
Columbia - Little Patuxent Parkway (NB)
Dallas - 200 Crescent Court
Dallas - 325 N. St. Paul Street (former Crossroads)
Greenwich - 8 Sound Shore Drive
Houston - 600 Travis Street
Los Angeles - 10880 Wilshire Blvd.
Menlo Park - 3000 Sand Hill Road
Miami - 1111 Brickell Avenue - Barclay's Financial Center
Newport Beach - 680 Newport Center Dr, Suite150
Palm Beach - 450 Royal Palm Way (License agreement for 1,704 on 6th floor)
Philadelphia - 1735 Market Street - Mellon Bank Center
Tampa - 401 East Jackson Street, 24th flr (NB)
Wilmington - 1000 West Street - Brandywine Building (LBB)

**South America Branches**
Buenos Aires - Av. Leandro N. Alem 855 - Torre Alem Plaza
Mexico City - Av. Paseo de la Reforma 265 Col. Cuauhtemoc
Montevideo - Ricon 477

## Schedule 2 - Included Real Estate Assets

| City | St | Location | Lease Legal Entity | Lease Expiration | Square Footage Total | Square Footage Acquisition | Square Footage LB | Seats Total | Seats Acquisition | Seats LB | Occupancy Total | Occupancy Acquisition | Occupancy LB | CRE Assets Total | CRE Assets Acquisition | CRE Assets LB | IT Assets Total | IT Assets Acquisition | IT Assets LB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Boston | MA | 125 High Street | Lehman Brothers Holdings Inc. | 09/30/16 | 45,429 | 23,264 | 22,165 | 231 | 126 | 105 | 2,744,537 | 1,405,451 | 1,339,086 | 5,979,795 | 3,062,195 | 2,917,600 | 387,780 | 198,579 | 189,202 |
| Chicago | IL | 190 South LaSalle Street | Lehman Brothers Holdings Inc. | 12/31/20 | 132,392 | 66,093 | 66,299 | 622 | 283 | 339 | 6,758,459 | 3,373,971 | 3,384,487 | 9,754,612 | 4,894,895 | 4,860,717 | 1,938,970 | 970,994 | 967,977 |
| Columbus | OH | 2600 Corporate Exchange Drive | Lehman Brothers Inc. | 12/31/08 | 1,452 | 1,452 | | 2 | 2 | | 38,800 | 38,800 | | 4,561 | 4,561 | | 935 | 935 | |
| Cranford | NJ | 27 Commerce Drive | Lehman Brothers Holdings Inc. | Owned | 103,000 | 103,000 | | 43 | 43 | | 17,806,716 | 17,806,716 | | 81,346,287 | 81,346,287 | | 71,058,888 | 71,058,888 | |
| Houston | TX | 4700 W Sam Houston (Eagle) | Lehman Brothers Holdings Inc. | 03/31/18 | 31,971 | 31,971 | | 222 | 222 | | 1,992,411 | 1,992,411 | | 4,025,543 | 4,025,543 | | 827,655 | 827,655 | |
| Jersey City | NJ | 70 Hudson Street | Lehman Brothers Holdings Inc. | 05/31/16 | 409,272 | 409,272 | - | 2,303 | 2,303 | | 26,351,317 | 26,351,317 | - | 12,227,842 | 12,227,842 | | 6,144,818 | 6,144,818 | |
| Los Angeles | CA | 10250 Constellation Boulevard | Lehman Brothers Holdings Inc. | 04/30/17 | 42,940 | 21,666 | 21,274 | 192 | 79 | 113 | 2,800,203 | 1,412,883 | 1,387,320 | 3,931,820 | 1,983,857 | 1,947,963 | 381,176 | 192,328 | 188,848 |
| Menlo Park | CA | 155 Linfield Drive | Lehman Brothers Inc. | 04/30/10 | 23,479 | 23,479 | - | 124 | 124 | | 3,363,948 | 3,363,948 | - | 1,339,931 | 1,339,931 | | 67,963 | 67,963 | |
| New York | NY | 1301 Avenue of the Americas | Lehman Brothers Holdings Inc. | 12/31/20 | 475,918 | 475,918 | | 2,868 | 2,868 | | 41,699,976 | 41,699,976 | | 85,820,893 | 85,820,893 | | 9,101,999 | 9,101,999 | |
| New York | NY | 745 Seventh Avenue | LB 745 LLC | Owned | 1,049,811 | 1,049,811 | - | 6,032 | 6,032 | | 81,184,460 | 81,184,460 | - | 588,974,861 | 588,974,861 | | 40,387,832 | 40,387,832 | |
| New York | NY | 45 Broadway | Lehman Brothers Inc. | 01/20/12 | 3,279 | 3,279 | | 17 | 17 | | 140,807 | 140,807 | | 121,747 | 121,747 | | 24,810 | 24,810 | |
| Piscataway | NJ | 30 & 40 Corporate Place South | Lehman Brothers Holdings Inc. | 10/09/25 | 466,151 | 466,151 | | 130 | 130 | | 28,737,605 | 28,737,605 | | 206,305,558 | 206,305,558 | | 48,146,008 | 48,146,008 | |
| Puerto Rico | PR | 270 Avenue Munoz Rivera | Lehman Brothers Inc. | 06/30/12 | 2,234 | 2,234 | - | 7 | 7 | | 95,797 | 95,797 | - | 18,728 | 18,728 | | 5,855 | 5,855 | |
| Salt Lake City | UT | 4001 South 700 East | Lehman Brothers Holdings Inc. | 11/30/11 | 4,706 | 4,706 | | 26 | 26 | | 117,157 | 117,157 | | 140,133 | 140,133 | | 126,280 | 126,280 | |
| San Diego | CA | 1450 Frazee Road | Lehman Brothers Holdings Inc. | 01/31/10 | 2,866 | 2,866 | | 7 | 7 | | 90,551 | 90,551 | | 59,325 | 59,325 | | 63,754 | 63,754 | |
| San Francisco | CA | 555 California Street | Lehman Brothers Inc. | 09/30/11 | 60,766 | 30,915 | 29,851 | 335 | 109 | 226 | 7,397,131 | 5,031,644 | 2,365,487 | 4,404,767 | 2,240,947 | 2,163,820 | 1,105,951 | 562,658 | 543,293 |
| Sao Paulo | BRA | Faria Lima Sq | Lehman Brothers Do Brasil LTDA | 01/31/12 | 9,442 | 9,442 | | 64 | 64 | | 1,196,756 | 1,196,756 | | 1,662,987 | 1,662,987 | | 1,833,204 | 1,833,204 | |
| Seattle | WA | 701 Fifth Avenue | Lehman Brothers Inc. | 03/31/10 | 3,991 | 3,991 | | 9 | 9 | | 155,750 | 155,750 | | 20,408 | 20,408 | | 1,505 | 1,505 | |
| Toronto | CAN | 161 Bay Street | Lehman Brothers Canada, Inc. | 11/30/11 | 5,275 | 5,275 | | 25 | 25 | | 574,464 | 574,464 | | - | - | | 910 | 910 | |
| Washington | DC | 2001 K Street | Lehman Brothers Holdings Inc. | 12/30/15 | 10,478 | 10,478 | - | 35 | 35 | | 753,646 | 753,646 | - | 22,945 | 22,945 | | 18,293 | 18,293 | |
| New York | NY | 780 Third Avenue | Townsend Analytics, L.T.D. | 08/31/17 | 7,671 | 7,671 | | 40 | 40 | | 594,000 | 594,000 | | tbd | | | tbd | | |
| | | Total | | | 1,961,921 | 1,822,333 | 139,589 | 13,597 | 12,814 | 783 | 230,360,063 | 221,883,672 | 8,476,300 | 1,006,062,742 | 994,163,642 | 11,899,100 | 181,624,508 | 179,735,368 | 1,889,320 |