**Exhibit G
1 of 2**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————x
                                                    :
In re                                               :    Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*             :    08-13555 (JMP)
                                                    :
       Debtors.                                     :    (Jointly Administered)
                                                    :
———————————————————————————x

### ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004 AND 6006 AUTHORIZING AND APPROVING (A) THE SALE OF PURCHASED ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS AND (B) ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Upon the motion, dated September 17, 2008 (the "Motion"),[1] of Lehman Brothers Holdings, Inc. ("LBHI") and LB 745 LLC ("LB 745"), as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman") for orders pursuant to 11 U.S.C. §§ 105, 363, 364(c)(1) and 365 and Fed. R. Bankr. P. (the "Bankruptcy Rules") 2002, 6004, 6006 and 9014 (A) scheduling a final sale hearing (the "Sale Hearing") with respect to that certain Asset Purchase Agreement, dated September 16, 2008, among the Debtors, Lehman Brothers Inc. ("LBI" and, collectively with the Debtors, the "Seller") and Barclays Capital, Inc. (the "Purchaser"), collectively with that First Amendment Clarifying Asset Purchase Agreement dated September 19, 2008 and that letter agreement clarifying and supplementing the Asset Purchase Agreement dated September 20, 2008 (as same may be subsequently modified or amended or clarified, the "Purchase Agreement"); (B) establishing sales procedures; (C) approving a break-up fee; and (D) authorizing and approving the sale of

---

[1] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Agreement.

certain of the Seller's assets (the "Purchased Assets") free and clear of all liens, claims, encumbrances and interests and the assumption and assignment of certain prepetition executory contracts and unexpired leases (the "Contracts") relating to the Purchased Assets to the Purchaser or the Successful Bidder(s); and upon the Court's consideration of the Motion and the record of the Sale Hearing held on September 19, 2008 with respect to the Motion, including the testimony and evidence admitted at the Hearing; and after due deliberation thereon, and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

A. **Jurisdiction and Venue**. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

B. **Statutory Predicates**. The statutory predicates for the relief sought in the Motion are Bankruptcy Code sections 105(a), 363, and 365, Bankruptcy Rules 2002, 6004, 6006 and 9008 and the applicable Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").

C. **Notice**. As evidenced by the affidavits of service filed with this Court and based upon the representations of counsel at the Sale Hearing and as approved under the Order (I) Approving the Break-Up Fee and Expense Reimbursement, (II) Certain Matters Relating to Competing Bids, If Any, (III) Approving the Form and Manner of Sale Notices and (IV) Setting the Sale Hearing Date in Connection with the Sale of Certain of the Sellers' Assets (the "Break-Up Fee and Competing Bids Order"): (i) in light of the exigent circumstances of these cases and the wasting nature of the Sellers' assets, due, proper, timely, adequate and sufficient notice of the Motion, the Sale Hearing and the transactions set forth in the Purchase Agreement (the "Sale"),

2

including the assumption and assignment of the Contracts and Cure Amounts with respect thereto, has been provided in accordance with Bankruptcy Code sections 105(a), 363 and 365, Bankruptcy Rules 2002, 6004, 6006 and 9008 and the Local Rules; (ii) it appearing that no other or further notice need be provided; (iii) such notice was and is good, sufficient and appropriate under the circumstances of the Debtors' chapter 11 cases; (iv) good cause exists to shorten the applicable notice periods in Bankruptcy Rules 2002, 6004, and 6006 and the applicable notice periods in the Local Rules, and (iv) no other or further notice of the Motion, the Sale Hearing or the Sale (including the assumption and assignment of the Contracts), is or shall be required.

    D.    **Irreparable Harm.**    The Debtors' estates will suffer immediate and irreparable harm if the relief requested in the Motion is not granted on an expedited basis consistent with the provisions set forth herein and the Purchase Agreement, particularly given the wasting nature of the Purchased Assets.

    E.    **LBI.**    LBI is the subject of a proceeding under the Securities Investors Protection Act of 1970 ("SIPA") which was filed on September 19, 2008. The Purchase Agreement provides for the sale of certain of LBI's assets to the Purchaser. The effectiveness of this Order is conditioned upon the entry of an order in LBI's SIPA proceeding which, to the extent applicable, has the same material terms as this Order and is otherwise in form and substance reasonably satisfactory to the Purchaser. As part of that transfer, the Depository Trust Clearing Corporation ("DTCC") informed the Purchaser and LBI on Wednesday, September 17, 2008, that the Purchaser would be required to assume the liabilities associated with the accounts maintained by LBI at the DTCC and its subsidiaries -- The Depository Trust Company ("DTC"), the National Securities Clearing Corporation ("NSCC"), and the Fixed Income Clearing Corporation ("FICC") – in their entirety and irrespective of whether the assets or liabilities in a

3

particular account were the subject of the Purchase Agreement or were owned by LBI or an affiliate of LBI. The Purchaser agreed to do so upon the terms and conditions specified in the Purchase Agreement, as amended.

F. **Opportunity to Object**. A reasonable opportunity to object and to be heard with respect to the proposed Sale, the Motion and the relief requested therein has been given, in light of the exigent circumstances in these cases, to all interested persons and entities, including the following: (i) the Office of the United States Trustee, (ii) counsel for the Purchaser, (iii) counsel for the Official Committee of Unsecured Creditors (the "Committee"), (iv) the Company's thirty largest creditors, (iv) Rock-Forty-Ninth LLC, (v) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Purchased Assets, (vi) all non-Debtor parties to Contracts that will be assumed on the Closing Date (the "Closing Date Contracts"), (vii) the United States Attorney's office, (viii) the United States Department of Justice, the Securities and Exchange Commission, (ix) the Securities Investor Protection Corporation, (x) the Internal Revenue Service, (xi) all persons, if any, who have filed objections to the Sale Motion; and (xiii) all persons who have filed a notice of appearance in the chapter 11 cases.

G. **Corporate Authority**. The Debtors (i) have full corporate power and authority to execute the Purchase Agreement and all other documents contemplated thereby and the Debtors' sale of the Assets has been duly and validly authorized by all necessary corporate action, (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Purchase Agreement, (iii) have taken all corporate action necessary to authorize and approve the Purchase Agreement and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly

4

provided for in the Purchase Agreement, are required for the Debtors to consummate such transactions.

H.   **Sale in Best Interests**. Good and sufficient reasons for approval of the Purchase Agreement and the Sale have been articulated, and the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

I.   **Business Justification**. The Debtors have demonstrated both (i) good, sufficient and sound business purposes and justifications and (ii) compelling circumstances for the Sale other than in the ordinary course of business under Bankruptcy Code section 363(b) before, and outside of, a plan of reorganization in that, among other things, the immediate consummation of the Sale with the Purchaser is necessary and appropriate to maximize the value of the Debtors' estates, particularly given the wasting nature of the Purchased Assets. Entry of an order approving the Purchase Agreement and all the provisions thereof is a necessary condition precedent to the Purchaser's consummation of the transactions set forth in the Purchase Agreement.

J.   **Arm's-Length Sale**. The Purchase Agreement was negotiated, proposed and entered into by the Sellers and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. The Purchaser is not an "insider" of the Debtors, as that term is defined in Bankruptcy Code section 101(31). Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

K.   **Good Faith Purchaser**. The Purchaser is a good faith Purchaser of the Purchased Assets within the meaning of Bankruptcy Code section 363(m) and is, therefore,

5

entitled to all of the protections afforded thereby. The Purchaser has proceeded in good faith in all respects in connection with this proceeding.

L.  **Highest and Best Offer**. The Purchase Agreement constitutes the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Purchase Agreement constitutes the highest and best offer for the Purchased Assets constitutes a valid and sound exercise of the Debtors' business judgment.

M.  **Consideration**. The consideration constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia. The Purchase Agreement represents a fair and reasonable offer to purchase the Purchased Assets under the circumstances of these chapter 11 cases. No other person or entity or group of entities, other than the Purchaser, has offered to purchase the Purchased Assets for an amount that would give greater economic value to the Debtors' estates. Approval of the Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their creditors and all other parties in interest.

N.  **Free and Clear**. Except to the extent that certain intellectual property rights may be owned by entities other than the Seller, the Debtors and LBI are the sole and lawful owners of the Purchased Assets. The transfer of the Purchased Assets to the Purchaser under the Purchase Agreement will be a legal, valid, and effective transfer of the Purchased Assets, and vests or will vest the Purchaser with all right, title, and interest of the Debtors to the

Purchased Assets free and clear of all Liens, claims (as defined in section 101(5) of the Bankruptcy Code) (including, without limitation, successor liability claims), encumbrances, obligations, liabilities, contractual commitments, rights of first refusal or interests of any kind or nature whatsoever (collectively, the "Interests"), including, but not limited to, (i) those that purport to give to any party a right or option to effect any forfeiture, modification or termination of the Debtors' interests in the Purchased Assets, or any similar rights or (ii) those relating to taxes arising under or out of, in connection with, or in any way relating to the operation of the Debtors' business prior to the Closing Date. For avoidance of doubt, all Interests shall attach to the proceeds ultimately attributable to the property against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto. Further, the assumption and assignment of any Closing Date Contracts is likewise free and clear of all Interests. Notwithstanding the foregoing, as of the Closing Date, all obligations to The Options Clearing Corporation ("OCC") with respect to Purchased Assets that are within the possession or control of OCC shall have been assigned to the Purchaser, and the Purchaser shall have assumed all of such obligations including, without limitation, all obligations with respect to short option positions, futures contracts, and stock loan or borrow positions that are transferred to the accounts of Purchaser at OCC as of the Closing Date in accordance with the Purchase Agreement. From and after the Closing Date, all securities, cash, collateral and other property transferred to accounts of the Purchaser at OCC shall be subject to all rights of OCC therein in accordance with the By-Laws and Rules of OCC including, without limitation, the security interests and setoff rights of OCC with respect thereto.

7

O.  **Free and Clear Findings Needed by Purchaser.** The Purchaser asserts that it would not have entered into the Purchase Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) to the Purchaser and the assumption and assignment of the Contracts to the Purchaser was not free and clear of all Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the Interests.

P.  **No Liability Findings Needed by Purchaser.** Purchaser asserts that it will not consummate the transactions contemplated by the Purchase Agreement unless the Purchase Agreement specifically provides, and the Bankruptcy Court specifically orders, that none of Purchaser or its affiliates, members or shareholders or the Purchased Assets will have any liability whatsoever with respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Interest or Excluded Liability.

Q.  **Satisfaction of 363(f) Standards.** The Sellers may sell the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) free and clear of any Interests of any kind or nature whatsoever because in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied. The person or entity with any Interest in the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller): (i) has, subject to the terms and conditions of this Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money

8

satisfaction of such Interest; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code. Those holders of Interests who did not object to the Motion are deemed, subject to the terms of this Order, to have consented pursuant to Bankruptcy Code section 363(f)(2). All holders of Interests are adequately protected by having their Interests attach to the proceeds ultimately attributable to the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) against or in which such Interests are asserted, subject to the terms of such Interests, with the same validity, force and effect, and in the same order of priority, which such Interests now have against the Purchased Assets or their proceeds, subject to any rights, claims and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

   R. **No Fraudulent Transfer.** The Purchase Agreement was not entered into for the purpose of hindering, delaying or defrauding creditors of Seller under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither Debtors nor Purchaser is entering into the transactions contemplated by the Purchase Agreement fraudulently for the purpose of such statutory and common law fraudulent conveyance and fraudulent transfer claims.

   S. **No Successor Liability.** Except for the Assumed Liabilities, the transfer of the Purchased Assets (except to the extent that certain intellectual property rights may be owned by entities other than the Seller) to the Purchaser under the Purchase Agreement shall not result in (i) the Purchaser having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or (ii) the Purchaser having any liability or responsibility to the Debtors except as is expressly set forth in the Purchase Agreement. Without limiting the effect or scope of the foregoing, to the fullest extent permitted by law, the transfer of the

9

Purchased Assets(except to the extent that certain intellectual property rights may be owned by entities other than the Seller) from the Debtors to the Purchaser does not and will not subject the Purchaser or its affiliates, successors or assigns or their respective properties (including the Purchased Assets) to any liability for claims (as that term is defined in section 101(5) of the Bankruptcy Code) against the Debtors or the Debtors' interests in such Purchased Assets by reason of such transfer under the laws of the United States or any state, territory or possession thereof applicable to such transactions, including, without limitation, any successor liability.

T.  **Cure/Adequate Assurance**. The assumption and assignment of the Contracts pursuant to the terms of this Order is integral to the Purchase Agreement and is in the best interests of the Debtors and their estates, creditors and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors. The Debtors have: (i) to the extent necessary, cured or provided adequate assurance of cure, of any default existing prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. §§ 365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Closing Date Contracts, within the meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A). The Purchaser's promise to pay the Cure Amounts (as defined below) and to perform the obligations under the Closing Date Contracts after the Closing Date shall constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1)(C) and 365(f)(2)(B). Any objections to the assumption and assignment of any of the Closing Date Contracts to the Purchaser are hereby overruled. Any objections to the Cure Amounts (as defined below) are resolved as set forth herein. All counterparties to Closing Date Contracts shall have until

10

October 3, 2008 (the "Cure Amount Objection Deadline") to file an objection to the cure amounts of their respective Closing Date Contracts (including as to the identity of such contracts) identified on http: //chapter11.epiqsystems.com/Lehman (the "Website") (the "Cure Amounts"). To the extent that any counterparty does not object to its Cure Amount by the Cure Amount Objection Deadline, such counterparty is deemed to have consented to such Cure Amounts and the assignments of their respective Closing Date Contracts to the Purchaser. To the extent any objections to Cure Amounts are timely filed, the Debtors, Purchaser and the counterparty shall meet and confer in good faith to attempt resolve any such objection without Court intervention. If the objecting party and the Purchaser determine that the objection cannot be resolved without judicial intervention, then such dispute will be determined by the Court upon written application by either party on 20 (twenty) days notice, with any response due to such an application 15 (fifteen) days after such application is filed. The Purchaser shall pay any Cure Amount as soon as reasonably practicable after (i) the date on which the contracting counterparty consents in writing to the Cure Amount, (ii) the date on which the counterparty is deemed to have consented, or (iii) the date on which the Court enters an order determining the Cure Amount after the notice and hearing procedure set forth above. The procedures with respect to assumption, assignment and cure of the Contracts that are the subject of the Purchaser's designation rights (the "Designated Contracts") will be set forth in one or more separate orders of the Court which will be entered at a later date or dates.

    U.    **Prompt Consummation.** The Sale must be approved and consummated promptly in order to preserve the viability of the businesses subject to the sale as going concerns, to maximize the value of the estates. Time is of the essence in consummating the Sale.