# *EXHIBIT K*

# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470
(212) 225-2000
FACSIMILE (212) 225-3999
WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS
LONDON · MOSCOW · FRANKFURT · COLOGNE
ROME · MILAN · HONG KONG · BEIJING

Writer's Direct Dial: (212) 225-2894
E-Mail: bmorag@cgsh.com

September 25, 2009

**VIA FACSIMILE & FEDEX**

Lawrence Odell, Esq.
Executive Vice President and General Counsel
FirstBank Puerto Rico
1519 Ponce de León Ave.; Stop 23
PO Box 9146
San Juan, PR 00908-0146

Re: FirstBank Puerto Rico Letter of September 17, 2009

Dear Mr. Odell:

Your letter dated September 17, 2009 addressed to the General Counsel's Office of Barclays Capital Inc. ("Barclays") has been referred to me for a response. I note that Barclays received the letter via FedEx on September 21, 2009, one day after your deadline of September 20, 2009 for a response.

You have alleged that FirstBank Puerto Rico ("FirstBank") entered into a Master Swap Agreement with Lehman Brothers Special Financing, Inc. ("LBSF") and delivered, as collateral for FirstBank's obligations under the Master Swap Agreement, certain securities to an account of Lehman Brothers Inc. ("LBI") at JPMorgan Chase Bank. Although you apparently intended to list those securities "on the attachment to [your] letter," there was no attachment, and we accordingly do not know which securities are at issue.

Nonetheless, even assuming, arguendo, that any securities that FirstBank contends were part of the collateral it posted shared the same cusip as securities transferred to Barclays under the repurchase transaction (the "Repo") with LBI in September 2008 (and that such collateral was even traceable to the Repo), Barclays' position is as follows:

Lawrence Odell, Esq., p. 2

First, because a copy of the Master Swap Agreement was not attached to your letter, we have no way to review the substance of FirstBank's underlying claim against LBSF.

Second, the Asset Purchase Agreement dated as of September 16, 2008 contains a general representation by Lehman Brothers Holdings Inc. ("LBHI") and LBI that, "[e]xcept for such authorization as is required by the Bankruptcy Court," they had "all requisite power, authority and legal capacity to execute and deliver this Agreement[,] ... to perform their respective obligations hereunder ... and to consummate the transactions contemplated hereby." Id. § 5.2. Barclays relied upon this representation in contracting with LBHI and LBI and in entering into the Repo; it entered into no contract with LBSF.

Third, under the court order approving the sale (the "Sale Order"), Barclays was a good faith purchaser that purchased securities from LBI free and clear of all claims. Sale Order at 5-8 & ¶ 4. The Sale Order also enjoined any party claiming an interest in the assets that Barclays purchased from LBI from asserting, prosecuting or otherwise pursuing claims against Barclays. Id. ¶ 7.

Fourth, irrespective of the Sale Order, applicable New York law would bar any claim against Barclays. See New York Uniform Commercial Code ("U.C.C.") § 8-510(a) ("[A]n action based on an adverse claim to a financial asset or security entitlement, whether framed in conversion, replevin, constructive trust, equitable lien, or other theory, may not be asserted against a person who purchases a security entitlement, or an interest therein, from an entitlement holder if the purchaser gives value, does not have notice of the adverse claim, and obtains control.") (emphasis added). It is uncontested that Barclays purchased all securities from LBI for value and obtained control over them; furthermore, Barclays had no notice of an adverse claim as required under Section 8-105(a) of the U.C.C.

Sincerely,

Boaz S. Morag

cc: Jonathan Hughes, Esq., Barclays Capital Inc.
    Jason White, Esq., Barclays Capital Inc.