UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
                                            :

FIRSTBANK PUERTO RICO,               :

                                            :      09 Civ. 10317 (GBD)

                     Plaintiff,              :

                    - against -             :

BARCLAYS CAPITAL INC.,               :

                     Defendant.           :

------------------------------------------------------------------- X

# REPLY MEMORANDUM OF LAW OF BARCLAYS CAPITAL INC.
## IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

                                          CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                          One Liberty Plaza
                                          New York, New York 10006
                                          (212) 225-2000

                                          Attorneys for Barclays Capital Inc.

Of Counsel:

    Lindsee P. Granfield
    Boaz S. Morag

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 3 |

POINT I

ALL SECURITIES TRANSFERRED TO BARCLAYS WERE PURCHASED ASSETS AND THUS COVERED BY THE SALE ORDER, WHICH PRECLUDES THIS LAWSUIT ............ 3

POINT II

UNDER THE U.C.C., FIRSTBANK HAS NO CLAIM AGAINST BARCLAYS ............ 5

POINT III

FIRSTBANK HAS ABANDONED ITS CONSTRUCTIVE TRUST / ACCOUNTING AND NEGLIGENCE CLAIMS ............ 8

POINT IV

FIRSTBANK HAS NO CONTRACT CLAIMS BECAUSE BARCLAYS DID NOT ASSUME ANY LIABILITIES RELATED TO THE ISDA AGREEMENT ............ 8

POINT V

THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE ............ 10

CONCLUSION ............ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

11 U.S.C. § 363(f) .................................................................................................... 9

Fed. R. Civ. P. 12(b)(6) ............................................................................................ 1

N.Y. U.C.C. § 8-102(a)(7) ....................................................................................... 6

N.Y. U.C.C. § 8-502 cmt. 3 ..................................................................................... 2

N.Y. U.C.C. § 8-503(e) ............................................................................................ 6

N.Y. U.C.C. § 8-510(a) ......................................................................................... 6-9

**Cases**

Al Perry Enters., Inc. v. Appalachian Fuels, LLC,
503 F.3d 538 (6th Cir. 2007) ................................................................................... 9

Ashcroft v. Iqbal,
129 S. Ct. 1937 (2009) ............................................................................................. 2

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ................................................................................................. 2

Lachmar v. Trunkline LNG Co.,
753 F.2d 8 (2d Cir. 1985) ........................................................................................ 9

Pani v. Empire Blue Cross Blue Shield,
152 F.3d 67 (2d Cir. 1998) ..................................................................................... 10

Rohn Padmore, Inc. v. LC Play Inc.,
___ F. Supp. 2d ___, 2010 WL 93109 (S.D.N.Y. Jan. 11, 2010) ............................ 8

Rojas v. Iannatto,
No. 01 Civ. 9131 (NRB), 2003 WL 169798 (S.D.N.Y. Jan. 24, 2003) ................... 8

**Other Authorities**

James Steven Rogers, Policy Perspectives on Revised U.C.C. Article 8,
43 UCLA L. Rev. 1431 (1996) ................................................................................ 6

Barclays Capital Inc. ("Barclays") respectfully submits this reply memorandum of law in further support of its motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

FirstBank Puerto Rico ("FirstBank") filed this action because it alleges that LBHI and LBI (the "Sellers") transferred to Barclays as part of the Sale Transaction securities that FirstBank had posted as collateral with LBSFI (the "Securities") and that the Sellers, according to FirstBank, had no right to sell. It cannot be disputed, however, that the Sellers represented and warranted, and the bankruptcy court found in a Sale Order affirmed by this Court, that the Sellers owned and had the power to convey each security that was conveyed to Barclays. In that same order, the bankruptcy court found that Barclays acted in good faith and gave adequate value for the securities that it acquired.[2] FirstBank nonetheless speculates that the inclusion by the Sellers of the Securities among the assets sold to Barclays was the product of "mistake, accident or impropriety" on their part,[3] as no LBSFI assets were supposed to be included among

---

[1] Unless otherwise indicated, terms have the definitions set forth in Barclays' opening brief in support of its motion to dismiss, dated February 11, 2010 ("Def. Br.").

[2] This Court may take judicial notice of the fact that the bankruptcy court entered an order on January 16, 2009, directing the appointment of an examiner in the Lehman bankruptcy proceedings to investigate, inter alia, "[w]hether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008 . . . ." Order Directing Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code at 4, dated January 16, 2009. A copy of the bankruptcy court's order is attached as Exhibit A to the Declaration of Ari D. MacKinnon, dated April 15, 2010 ("MacKinnon Decl."), and submitted herewith. The Court may take further notice that an unredacted version of the Report of Examiner Anton R. Valukas in satisfaction of the order appointing him was filed with the bankruptcy court on March 11, 2010, as Docket Entry 7531 in Chapter 11 Case No. 08-13555 (JMP). A copy of the docket sheet entry is attached as Exhibit B to the MacKinnon Decl.

[3] Mem. of Law of FirstBank Puerto Rico in Opp'n to Def.'s Mot. to Dismiss 16, dated March 26, 2010 ("Pl. Br.").

the Purchased Assets. The issue before the Court on this motion to dismiss, therefore, is whether Barclays bears any legal risk arising out of any such purported "mistake, accident or impropriety" by the Sellers in including the Securities among the thousands of securities received by Barclays in the Sale Transaction. The answer to that question, both under the terms of the Sale Order and as a matter of law under Article 8 of the U.C.C., is clearly no.

First, in arguing that the Securities were LBSFI assets and, thus, were not "Purchased Assets" transferred to Barclays free and clear, FirstBank ignores the terms of the Asset Purchase Agreement and the Clarification Letter Agreement on which it relies. Those transaction documents provide that the definition of "Purchased Assets" includes every security listed on Schedules A and B to the Clarification Letter Agreement, which schedules list by CUSIP thousands of securities that Barclays received or was supposed to have received under the Sale Transaction. Thus, each security on Schedule A or B is a Purchased Asset.

Second, FirstBank's argument fails to overcome Article 8 of the U.C.C. FirstBank concedes by its silence that it can allege no facts under the pleading standard imposed by Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), that would establish that Barclays was on notice of FirstBank's alleged adverse claim to the Securities. Simply asserting, as FirstBank does, that Barclays did not give value for the Securities because they were not intended to be Purchased Assets or were not believed by LBSFI to have been transferred to Barclays, does not and cannot eliminate the protections for third-party purchasers erected by Article 8. LBI could have stolen the Securities and sold them to Barclays, and Barclays would have no liability unless FirstBank could prove Barclays' notice of its adverse claim. See N.Y. U.C.C. § 8-502 cmt. 3. A fortiori, if a security allegedly is mistakenly included in a bulk sale of thousands of other securities, the buyer is protected.

The Complaint states no cause of action and should be dismissed with prejudice.

## ARGUMENT

### POINT I

**ALL SECURITIES TRANSFERRED TO BARCLAYS WERE PURCHASED ASSETS AND THUS COVERED BY THE SALE ORDER, WHICH PRECLUDES THIS LAWSUIT**

FirstBank does not deny that the Sale Order bars any claims by third parties relating to Barclays' acquisition of the Purchased Assets.  See Pl. Br. 15, 18; Def. Br. 11-12.  FirstBank contends, however, that the Securities did not fit the definition of "Purchased Assets" in that they allegedly were assets of a subsidiary of LBHI other than LBI and, accordingly, the Sale Order did not authorize the transfer of the Securities to Barclays.  Pl. Br. 15-18.  This argument rests on an incomplete reading of the Clarification Letter Agreement.

FirstBank twice quotes Paragraph 1(a) of the Clarification Letter Agreement:

> [t]he Purchased Assets means (i) all of the assets of Seller used primarily in the Business or necessary for the operation of the Business (in each case, excluding the Excluded Assets) and (ii) none of the assets of Subsidiaries of LBHI (other than assets of LBI) <u>except as otherwise specifically provided in the Agreement [i.e., the Asset Purchase Agreement] or this Letter</u>.

Pl. Br. 7, 12 (quoting Clarification Letter Agreement ¶ 1(a) (attached as Exhibit F to the Declaration of Daniel S. Weinberger, dated March 26, 2010 ("Weinberger Decl.")) (emphasis modified)).  FirstBank, however, ignores the text that immediately follows, which provides that the Purchased Assets include "(A) the securities owned by LBI and transferred to Purchaser or its Affiliates under the Barclays Repurchase Agreement . . . <u>as specified on Schedule A</u> previously delivered by Seller and accepted by Purchaser, (B) such securities and other assets held in LBI's 'clearance boxes' as of the time of the Closing, which at the close of business on September 21, 2008 were <u>as specified on Schedule B</u> previously delivered by Seller and accepted

3

by Purchaser . . . ." Clarification Letter Agreement ¶ 1(a)(ii) (Weinberger Decl. Ex. F). In other words, the Purchased Assets expressly include all securities listed on Schedule A or B.

Schedules A and B to the Clarification Letter Agreement were filed with the bankruptcy court in December 2008 under an order permitting access to them by parties-in-interest upon execution of a confidentiality agreement, and they were filed again in unredacted form on April 5, 2010, facts of which this Court may take judicial notice.[4] FirstBank's complaint in this Court tellingly fails to identify the $62 million in securities it is suing Barclays to recover, but the Court may again take judicial notice of a motion FirstBank filed in the bankruptcy court seeking discovery with respect to a list it attached to its motion of 23 unique CUSIPs with a par value as of September 2008 of $62 million that it claims to have posted as collateral with LBSFI,[5] and which are the basis of this action against Barclays.

A review of Schedule A, the securities received by Barclays under Paragraph 1(a)(ii)(A) of the Clarification Letter Agreement, highlighted to show any matches with FirstBank's list of posted collateral (MacKinnon Decl. Ex. I), reveals that nineteen of the twenty-three unique CUSIPs identified by FirstBank as its collateral (MacKinnon Decl. Ex. H) appear on Schedule A. Even assuming that the securities on Schedule A received by Barclays whose CUSIP and par value match the CUSIP and par value on FirstBank's collateral list are in fact the

---

[4] See Order Authorizing the Debtors and Barclays Capital Inc. to File Under Seal Certain Schedules to the Purchase Agreement, dated December 17, 2008 (MacKinnon Decl. Ex. C); Schedule A and B to Clarifying Letter Agreement (filed under seal) (MacKinnon Decl. Ex. D); Reply Memorandum Of Barclays Capital Inc. In Further Support Of Motion Of Barclays Capital Inc. To Enforce The Sale Order And Secure Delivery Of All Undelivered Assets, dated April 5, 2010 (MacKinnon Decl. Ex. E); Schedules A and B to the Clarification Letter Agreement (MacKinnon Decl. Ex. F).

[5] See Notice of Hearing on Motion of FirstBank Puerto Rico Pursuant to Fed. R. Bankr. P. 2004(A) for Limited Discovery from Debtors Lehman Brothers Special Financing Inc. and Lehman Brothers Holdings Inc., dated July 24, 2009 (MacKinnon Decl. Ex. G); FirstBank's List of Collateral (MacKinnon Decl. Ex. H).

4

securities posted by FirstBank with LBSFI (as opposed to securities of the same CUSIP owned by LBI unrelated in any way to FirstBank), by the terms of the Clarification Letter Agreement, Barclays obtained free and clear title to all the securities listed on Schedule A.  See Clarification Letter Agreement ¶ 1(a)(ii)(A); Def. Br. 11-12 (citing bankruptcy court's finding that Barclays was good faith purchaser and purchased free and clear of all claims).  The remaining four of the twenty-three CUSIPs on FirstBank's collateral list are not found on either Schedule A or Schedule B, and therefore, there is no plausible reason to believe they have been transferred to Barclays.  Accordingly, to the extent that FirstBank's collateral was in fact transferred to Barclays, those securities are listed on Schedule A, are therefore Purchased Assets, and thus are subject to the Sale Order's ruling that Barclays acquired them free and clear of all claims.[6]

## POINT II

### UNDER THE U.C.C., FIRSTBANK HAS NO CLAIM AGAINST BARCLAYS

FirstBank attempts an end-run around the U.C.C. by contending, without support, that "Barclays cannot have greater rights under the U.C.C. than the APA gave it by contract."  Pl. Br. 3; see also id. at 23 ("Barclays could not obtain a different interest in the [Securities] than the transferor had itself.").  But as Barclays demonstrated in its opening brief, the finality principle precludes the assertion of a claim against purchasers of securities entitlements that lack notice of

---

[6]    The bankruptcy court found, and this Court agreed, that it had provided adequate notice of the Sale Transaction to interested parties.  Def. Br. 12-13 (citing findings in Sale Order and district court's approval of same).  FirstBank does not quibble with the bankruptcy court's finding that it provided adequate notice, but argues that the finding applies only with respect to the sale of Purchased Assets.  Pl. Br. 18-19.  As set forth supra, however, to the extent that the Securities were transferred to Barclays, they were Purchased Assets.  Thus, FirstBank essentially has conceded the adequacy of the notice provided by the bankruptcy court.  Further, putting aside whether FirstBank was a "creditor" of any Lehman entity, FirstBank does not dispute that it had the opportunity to appear at the bankruptcy court hearing regarding the Sale Transaction.  Under these circumstances, FirstBank possessed the requisite notice and opportunity to be heard, and thus, it has no basis to claim that its due process rights were infringed.

5

the adverse claim, gave value, and obtained control. See Def. Br. 14 (citing N.Y. U.C.C. § 8-510(a)).[7] Thus, a seller of a financial asset – even one who has stolen that property – may convey better title than he himself has. See id. at 13-14 & n.12 (citing Enron Corp. v. Springfield Assocs. (In re Enron Corp.), 379 B.R. 425, 436 & n.58 (S.D.N.Y. 2007), and N.Y. U.C.C. § 8-502 cmt. 3); see also James Steven Rogers, Policy Perspectives on Revised U.C.C. Article 8, 43 UCLA L. Rev. 1431, 1462 (1996) ("[T]he general rule of nemo dat has never been thought appropriate for investment securities. . . . [O]nce a purchaser has acquired a property interest in a security by a transfer implemented through the appropriate formal mechanism, that purchaser's acquisition of the property interest cannot be unsettled on the basis of an assertion that the transferor acted wrongfully in transferring the securities to the purchaser.").

Because it cannot, FirstBank does not even attempt to counter Barclays' argument that it did not have, and could not have had, notice of an adverse claim concerning the Securities. See Def. Br. 15-20. Indeed, FirstBank confirms that it did not even make a demand on LBSFI for return of the Securities until after the closing of the Sale Transaction, rendering it impossible

---

[7] In arguing that "Barclays [was] mistaken to rely upon Section 8-510 in the first place," Pl. Br. 20 n.15, FirstBank itself makes the mistake of presuming to be an "entitlement holder" vis-à-vis LBI. FirstBank's allegation that it "held title to the [Securities]," Compl. ¶ 11, is not enough; it must plead that it was "identified in the records of a securities intermediary as the person having a security entitlement against the securities intermediary." N.Y. U.C.C. § 8-102(a)(7). Assuming arguendo that LBI was the securities intermediary and not also an entitlement holder itself (as it would be if it held the Securities at a securities intermediary higher up the chain), the entitlement holder would have been LBSFI as LBI's customer. Section 8-503 therefore would apply to the LBSFI-LBI relationship, but not to FirstBank's ISDA relationship with LBSFI, or its relationship (if any) with LBI. In short, Barclays correctly relied on Section 8-510 in its opening brief.

This dispute is in any event of no moment because – as FirstBank concedes – Section 8-503(e) offers at least the same protection to a purchaser for value as does Section 8-510(a). Pl. Br. 21 n.15. Indeed, Section 8-503(e) offers greater protection because it includes a collusion element, whereby a plaintiff entitlement holder (which FirstBank is not) must allege that the transferee "act[ed] in collusion with the securities intermediary in violating the securities intermediary's obligations under Section 8-504." N.Y. U.C.C. § 8-503(e). FirstBank has made no such allegation.

for Barclays to have been on notice of an adverse claim to the Securities by FirstBank. See Pl. Br. 5. FirstBank's failure to plead facts that plausibly support the inference that Barclays had notice of its adverse claim is fatal to the entire Complaint.

Instead, FirstBank relies on its "mistake, accident or impropriety" theory to contend that "Barclays does not qualify as a 'purchaser' and likewise did not 'give value' for the [Securities]" for purposes of Article 8 of the U.C.C. Pl. Br. 20. Neither of these contentions holds water. First, as established above, the Securities that Barclays acquired that were listed on Schedules A and B were Purchased Assets and, thus, Barclays was a "purchaser." Second, as FirstBank itself recognizes, Barclays "paid billions of dollars for Purchased Assets under the APA." Pl. Br. 23. Because Barclays gave value to the Sellers in exchange for, inter alia, the securities listed on Schedules A and B, its acquisition benefits from the protections of the U.C.C. Specifically, U.C.C. § 8-510(a) immunizes Barclays from any risk of mistake or inadvertence concerning the Sellers' right to transfer such securities.[8] As there is no plausible basis for concluding that Barclays received the Securities gratuitously, each of FirstBank's causes of action for recovery in tort (Claims 1-3 and 5) is precluded by the U.C.C.[9]

---

[8] FirstBank also argues that the Securities "could not have been purchased by Barclays from LBI" because the ISDA Agreement with LBSFI was listed as an "asset" in LBSFI's bankruptcy schedules after the closing of the APA. See Pl. Br. 21. Setting aside FirstBank's elision of the difference between the ISDA Agreement and the Securities, this argument provides no aid to FirstBank's cause. First, if FirstBank means to say that LBSFI retained possession of the Securities and they were never in fact transferred to Barclays, then Barclays plainly cannot be held liable for misappropriating the Securities and this suit must fail. Second, LBSFI did not list the ISDA Agreement as an "asset," as FirstBank claims, but, rather, it listed the Agreement on Schedule G of executory contracts and unexpired leases. See Summary of Schedules (listing approximately $ 48.5 billion worth of assets on Schedules A and B); Schedule G at 121 (Weinberger Decl. Ex. I). Third, the Global Notes Pertaining to Debtors' First Amended Schedules and Statements specifies that the inclusion of a particular "agreement on Schedule G does not constitute an admission that such . . . agreement is an executory contract, was in effect on the applicable Petition Date, or is valid or enforceable." Id. at 7 (Weinberger Decl. Ex. I).

[9] FirstBank attempts to manufacture an "issue of fact," noting that it is not clear whether LBSFI possessed the contractual right to convey the Securities, or whether LBSFI in fact exercised that right. Pl.

7

## POINT III

### FIRSTBANK HAS ABANDONED ITS CONSTRUCTIVE TRUST /ACCOUNTING AND NEGLIGENCE CLAIMS

In its opposition brief, FirstBank failed to address Barclays' arguments that the constructive trust/accounting and negligence claims must be dismissed. See Def. Br. 15 n.13, 21 n.14. Accordingly, the Court should deem these claims to be abandoned and dismiss them. See Rohn Padmore, Inc. v. LC Play Inc., ___ F. Supp. 2d ___, ___, 2010 WL 93109, at *3 (S.D.N.Y. Jan. 11, 2010) ("'Where one party fails to respond to an opposing party's argument that its claim must be dismissed, courts may exercise their discretion and deem the claim abandoned.'") (citation omitted); Rojas v. Iannatto, No. 01 Civ. 9131 (NRB), 2003 WL 169798, at *3 n.5 (S.D.N.Y. Jan. 24, 2003) (plaintiff who "fail[ed] to address [an] issue in his brief . . . [had] abandoned the argument" and summary judgment granted to defendants on that issue).

## POINT IV

### FIRSTBANK HAS NO CONTRACT CLAIMS BECAUSE BARCLAYS DID NOT ASSUME ANY LIABILITIES RELATED TO THE ISDA AGREEMENT

As explained in Barclays' opening brief, the unambiguous terms of the APA and the Clarification Letter Agreement make plain that Barclays did not assume any liabilities attaching to interest rate swap agreements such as the ISDA Agreement. See Def. Br. 21-22 (citing Clarification Letter Agreement ¶ 21; APA §§ 2.4(a), 1.1(a)). Furthermore, the Complaint's failure to allege that Barclays expressly assumed liabilities on the ISDA Agreement

---

Br. 13 n.10. This attempt must fail. As an initial matter, there is no doubt but that LBSFI possessed the legal right to transfer the Securities. See Def. Br. 6 n.8 (citing Credit Support Annex ¶ 6(c)(i) (Weinberger Decl. Ex. B)). Moreover, it is irrelevant whether LBSFI ever in fact exercised that right. Under U.C.C. § 8-510(a), all that matters is that Barclays purchased the Securities without notice of FirstBank's supposed adverse claim, a proposition that is incontrovertible given the Complaint's allegations.

8

is fatal to its contract claims under New York law.  See Lachmar v. Trunkline LNG Co., 753 F.2d 8, 9-10 (2d Cir. 1985) ("[T]he assignee of rights under a bilateral contract is not bound to perform the assignor's duties under the contract unless he expressly assumes to do so."); see also Al Perry Enters., Inc. v. Appalachian Fuels, LLC, 503 F.3d 538, 543-44 (6th Cir. 2007) (holding that purchaser of assets in bankruptcy acquired only those contractual obligations that it expressly assumed, and did not assume any obligations on other contracts related to the subject matter purchased).

FirstBank now contends, however, that Barclays could not have purchased the Securities without assuming the obligations of the ISDA Agreement because those obligations somehow were inseparable from the Securities.  Pl. Br. 24-25.  FirstBank's contention finds no support in applicable law.  To begin with, Section 8-510(a) (as well as Section 8-503(e), if it were applicable) of the U.C.C. provides that a purchaser for value acquires an unencumbered ownership interest in a securities entitlement regardless of the nature and quality of the seller's ownership interest (if any) in that entitlement, provided that the purchaser does not have notice of any adverse claim.  Id.  Here, if as FirstBank claims, Barclays received the Securities, it did so as a purchaser for value, free and clear of obligations, if any, such as those imposed by FirstBank's ISDA Agreement with LBSFI.  Id.; see also Def. Br. 16-19.

Furthermore, Section 363(f) of the Bankruptcy Code authorizes a bankruptcy court to order the sale of encumbered assets and to provide that the purchaser take such assets free and clear of any interests of any kind or nature whatsoever.  11 U.S.C. § 363(f).  That is precisely what occurred here.  See Sale Order ¶ 4 (Weinberger Decl. Ex. G).  By entering the Sale Order, the bankruptcy court approved the Sale Transaction's decoupling of the Securities from any obligations imposed by the ISDA Agreement.  In sum, Barclays did not assume any

9

obligations related to the ISDA Agreement and need not have done so in order to be deemed the holder of the Securities free and clear from any lien, encumbrance, or other obligation.

## POINT V

## THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE

In its opposition, FirstBank did not request leave to amend in the event the Court found the Complaint deficient. Nor did FirstBank proffer any new facts in its opposition that, if included in an amended pleading, would render its claims legally sufficient. Under these circumstances, the Court should dismiss the Complaint without leave to replead. See Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 76 (2d Cir. 1998) (where plaintiff "never requested leave to amend from the district court, and on appeal he has made no showing that he would be able to amend his complaint in a manner that would survive dismissal" district court dismissal without granting leave is affirmed).

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated: New York, New York
April 15, 2010

                                      Respectfully submitted,

                                      CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                      By:      /s/ Lindsee P. Granfield
                                             Lindsee P. Granfield
                                             Boaz S. Morag

                                      One Liberty Plaza
                                      New York, New York 10006
                                      (212) 225-2000

                                      Attorneys for Barclays Capital Inc.