UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

FIRSTBANK PUERTO RICO,

                    Plaintiff,

                - against -

BARCLAYS CAPITAL INC.,

                   Defendant.

------------------------------------------------------------------------ X

        09 Civ. 10317 (GBD)

## MEMORANDUM OF LAW OF BARCLAYS CAPITAL INC. IN SUPPORT OF ITS MOTION TO REFER THIS ACTION TO THE BANKRUPTCY COURT

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Barclays Capital Inc.

Of Counsel:

    Lindsee P. Granfield
    Boaz S. Morag

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 4

LEGAL STANDARD...................................................................................................... 5

ARGUMENT.................................................................................................................... 7

POINT I

THIS LITIGATION SHOULD BE REFERRED TO THE
BANKRUPTCY COURT BECAUSE IT IS A CORE
PROCEEDING THAT ARISES IN THE SALE ORDER ................................................. 7

POINT II

THIS LITIGATION SHOULD BE REFERRED TO THE
BANKRUPTCY COURT BECAUSE IT IS RELATED TO
THE LEHMAN BANKRUPTCY PROCEEDINGS .......................................................... 11

    A.    This Litigation Is Related to the Lehman
          Bankruptcy Proceedings Because Barclays
          Possesses Substantial Indemnification
          Claims Against LBI and LBHI ................................................................... 12

    B.    Efficiency Considerations Further Support
          Referral of This Litigation .......................................................................... 14

    C.    Referral Is Warranted Even If FirstBank Is
          Entitled to a Jury Trial ............................................................................... 16

CONCLUSION................................................................................................................. 18

## TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

28 U.S.C. § 157(a) ........................................................................................................... 5

28 U.S.C. § 157(b)(1) ...................................................................................................... 5

28 U.S.C. § 157(b)(2) ...................................................................................................... 7

28 U.S.C. § 157(b)(3) ...................................................................................................... 7

28 U.S.C. § 157(c)(1)....................................................................................................... 5, 14

**Cases**

Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.),
02 Civ. 8495 (GBD), 2003 WL 21297258 (S.D.N.Y. June 4, 2003).................................. 7, 17

Allegheny Univ. of Health Scis. v. Nat'l Union of Hosp. & Health Employees
(In re Allegheny Health, Educ. & Research Found.),
383 F.3d 169 (3d Cir. 2004)............................................................................................... 7-8, 10

Allegheny Univ. of Health Scis. v. Williams
(In re Allegheny Health, Educ. & Research Found.),
233 B.R. 671 (Bankr. W.D. Pa. 1999) ............................................................................... 13

Alliance Commc'ns Group, Inc. v. N. Telecom, Inc.,
65 B.R. 581 (S.D.N.Y. 1986).............................................................................................. 5-6, 13

Apex Inv. Assocs., Inc. v. TJX Cos.,
121 B.R. 522 (N.D. Ill. 1990) ............................................................................................ 6

Bankr. Servs., Inc. v. Ernst & Young (In re CBI Holding Co.),
529 F.3d 432 (2d Cir. 2008)................................................................................................ 7

Ben Cooper, Inc. v. Ins. Co. of Penn. (In re Ben Cooper, Inc.),
896 F.2d 1394 (2d Cir. 1990).............................................................................................. 7, 16

C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave. P'Ship),
177 B.R. 760 (N.D.N.Y. 1995)........................................................................................... 6

Delcon Constr. Corp. v. Bd. of Educ. of City of Yonkers,
299 B.R. 60 (S.D.N.Y. 2003).............................................................................................. 13

**Page(s)**

Geron v. Schulman (In re Manshul Constr. Corp.),
225 B.R. 41 (Bankr. S.D.N.Y. 1998)................................................................... 11

Gucci v. Gucci,
No. 96 Civ. 8216 (JSR), 1997 WL 122838 (S.D.N.Y. Mar. 16, 1997) ............... 14, 15, 17

Gulf States Exploration Co. v. Manville Forest Prods. Corp.
(In re Manville Prods. Corp.),
896 F.2d 1384 (2d Cir. 1990).............................................................................. 7

Hassett v. BancOhio Nat'l Bank (In re CIS Corp.),
172 B.R. 748 (S.D.N.Y. 1994).............................................................................. 17

Hickox v. Leeward Isles Resorts, Ltd.,
224 B.R. 533 (S.D.N.Y. 1998)...............................................................................13, 14, 15

Hunnicutt Co. v. TJX Co. (In re Ames Dep't Stores, Inc.),
190 B.R. 157 (S.D.N.Y. 1995).............................................................................. 15, 17

IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat),
338 B.R. 574 (Bankr. S.D.N.Y. 2005)..................................................................11-12, 13

In re Portrait Corp. of Am., Inc.,
406 B.R. 637 (Bankr. S.D.N.Y. 2009)................................................................... 11

Int'l Fidelity Ins. Co. v. Kerley,
94 Civ. 0071-C, 1995 WL 245613 (W.D. Va. Apr. 12, 1995) ............................. 6

Jam. Shipping Co. v. Orient Shipping Rotterdam, B.V.
(In re Millenium Seacarriers, Inc.),
458 F.3d 92 (2d Cir. 2006)................................................................................... 7, 10-11

Johns-Manville Corp. v. Asbestos Litig. Group
(In re Johns-Manville Corp.),
40 B.R. 219 (S.D.N.Y. 1984)................................................................................ 16

Kavowras v. N.Y. Times Co.,
328 F.3d 50 (2d Cir. 2003).................................................................................... 2

Keenan v. D.H. Blair & Co.,
838 F. Supp. 82 (S.D.N.Y. 1993).......................................................................... 12

Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.),
136 B.R. 59 (S.D.N.Y. 1992)................................................................................ 17

Page(s)

Lindsey v. O'Brien, Tanski, Tanzer, & Young Health Care
Providers of Conn. (In re Dow Corning Corp.),
86 F.3d 482 (6th Cir. 1996) ................................................................................................   12

Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
304 F.3d 223 (2d Cir. 2002)..............................................................................................   7, 8, 10

ML Media Partners, LP v. Century/ML Cable Venture
(In re Adelphia Commc'ns Corp.),
285 B.R. 127 (Bankr. S.D.N.Y. 2002)...............................................................................   13

Mt. McKinley Ins. Co. v. Corning Inc.,
399 F.3d 436 (2d Cir. 2005)..............................................................................................   10

N.Y. City Employees' Ret. Sys. v. Ebbers
(In re WorldCom, Inc. Sec. Litig.),
293 B.R. 308 (S.D.N.Y. 2003)...........................................................................................   11, 13

O'Connell v. Terranova (In re Adelphi Inst., Inc.),
112 B.R. 534 (S.D.N.Y. 1990)...........................................................................................   6, 15, 17

Official Comm. of Unsecured Creditors of
Verestar, Inc. v. Am. Tower Corp.,
No. 05 Civ. 6268 (RPP), 2005 WL 3455775 (S.D.N.Y. Dec. 15, 2005)............................   13-14

Orion Pictures Corp. v. Showtime Networks, Inc.
(In re Orion Pictures Corp.),
4 F.3d 1095 (2d Cir. 1993)................................................................................................   17

Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.,
132 B.R. 4 (S.D.N.Y. 1991)..............................................................................................   5, 13

Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),
980 F.2d 110 (2d Cir. 1992)..............................................................................................   11

Savoy Senior Hous. Corp. v. TRBC Ministries, LLC,
401 B.R. 589 (S.D.N.Y. 2009)...........................................................................................   6

Sterling Vision, Inc. v. Sterling Optical Corp.
(In re Sterling Optical Corp.),
302 B.R. 792 (Bankr. S.D.N.Y. 2003)...............................................................................   8, 11

Time Warner Cable of N.Y. City v. M.D. Elecs., Inc.,
101 F.3d 278 (2d Cir. 1996)..............................................................................................   16

iv

Page(s)

Travelers Indem. Co. v. Bailey,
129 S. Ct. 2195 (2009) ........................................................................................................ 11

Wedtech Corp. v. Banco Popular de P.R. (In re Wedtech Corp.),
94 B.R. 293 (S.D.N.Y. 1988) .............................................................................................. 6

WorldCom Network Servs., Inc. v. Al-Khatib,
No. 96 Civ. 4492 (RLC), 1998 WL 23254 (S.D.N.Y. Jan. 22, 1998) ................................ 13, 14, 15

**Other Authorities**

Standing Order M-61 Referring to Bankruptcy Judges for the
Southern District of New York Any and All Proceedings
Under Title 11, dated July 10, 1984 (Ward, Acting C.J.) ..................................................... 5

Defendant Barclays Capital Inc. ("Barclays") respectfully submits this
memorandum of law in support of its motion to refer this action to the United States Bankruptcy
Court for the Southern District of New York (the "Bankruptcy Court") pursuant to 28 U.S.C.
§ 157(a) and Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of
New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.).

### PRELIMINARY STATEMENT

After extensive oral argument on Barclays' motion to dismiss and after this Court
had the opportunity to study the allegations of the Complaint, the Court concluded that the
"dispositive" question in this case is whether the securities posted by plaintiff FirstBank Puerto
Rico ("FirstBank") as collateral and allegedly transferred to Barclays (the "Securities") were
"Purchased Assets" within the meaning of the Asset Purchase Agreement, dated as of
September 16, 2008 (the "APA"),[1] the clarification letter dated as of September 20, 2008 (the
"Clarification Letter Agreement") (Ex. B), and the Sale Order (Ex. C).[2] See Mot. to Dismiss
Hr'g Tr. ("Tr.") 97, Apr. 29, 2010 (Ex. E). As the Court summarized the parties' conflicting
positions: "you're arguing you purchased these assets, they're arguing you didn't purchase the
assets." Id. at 14 (Ex. E). The "critical point is whether or not . . . there really is some genuine

---

[1]     The APA is attached as Exhibit A to the Declaration of Ari D. MacKinnon, dated May 28, 2010
("MacKinnon Decl."). All other exhibits referenced herein are appended to the MacKinnon Decl., unless
otherwise noted.

[2]     The term, "Sale Order," refers to the Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal
Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of
Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of
Executory Contracts and Unexpired Leases, dated September 19, 2008, and entered as Item 258 in
Docket No. 08-13555 (JMP). The Sale Order and the APA have been approved in the SIPC liquidation
proceeding of Lehman Brothers Inc., where the Sale Order has been incorporated by reference. See Order
Approving, and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the
Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings, Inc. Chapter 11 Proceeding,
dated September 19, 2008 (Ex. D).

dispute, as to whether these assets were, in fact, included in the assets that were purchased." Id. at 13-14 (Ex. E).

Having framed the "dispositive" issue and the "critical point" as one requiring an interpretation of the APA, the Clarification Letter Agreement and the Sale Order, the Court now confronts the question whether this dispute invokes the jurisdiction of the Bankruptcy Court that oversaw the sale transaction, approved the APA and Clarification Letter Agreement, and entered the Sale Order effectuating the free-and-clear sale of Purchased Assets to Barclays. The agreement in question and the Sale Order confirm without any doubt that the issue in this case "arises in" the Sale Order or at a minimum is "related to" the administration of the chapter 11 proceedings of Lehman Brothers Holdings Inc. ("LBHI") and the SIPC liquidation of Lehman Brothers Inc. ("LBI") (collectively, the "Lehman Bankruptcy Proceedings").

The APA expressly states that the Bankruptcy Court "shall retain exclusive jurisdiction to enforce the terms of [the APA] and to decide any claims or disputes which may arise or result from, or be connected with, [the APA] . . . ." APA § 13.3(a) (Ex. A). The Sale Order adopts this language, affirming that the Bankruptcy Court retains jurisdiction to "interpret, implement, and enforce the terms and provisions of [the Sale Order]." Sale Order ¶ 20 (Ex. C). For its part, FirstBank has submitted to the Bankruptcy Court's jurisdiction by filing a claim in the SIPC liquidation of LBI,[3] and by seeking other relief in the chapter 11 proceedings of LBHI.[4] Under these circumstances, this case "arises in" the Sale Order.

---

[3]     See Form 10-K of First Bancorp. ("2009 Form 10-K") 119, filed on March 2, 2010 (Ex. F). The Court may take judicial notice of the fact of this SEC filing. Kavowras v. N.Y. Times Co., 328 F.3d 50, 57 (2d Cir. 2003).

[4]     See Notice of Hearing on Motion of FirstBank Puerto Rico Pursuant to Fed. R. Bankr. P. 2004(A) for Limited Discovery from Debtors Lehman Brothers Special Financing Inc. and Lehman Brothers Holdings Inc., dated July 24, 2009 ("Rule 2004(A) Notice") (Ex. G).

Moreover, this case is "related to" the Lehman Bankruptcy Proceedings because, in the event that Barclays is held liable to FirstBank, Barclays would possess substantial indemnification claims against LBHI and LBI for violating the express warranty of good title set forth in Section 5.4 of the APA. It goes without saying that the assertion of a post-petition claim for breach of a post-petition contract against a chapter 11 debtor would inevitably affect the administration of the estate, thereby satisfying the liberal standard in this Circuit and elsewhere for establishing "related to" bankruptcy jurisdiction.

Not only does the Bankruptcy Court have jurisdiction over this case, but also considerations of efficiency weigh heavily in favor of referring this case to the Bankruptcy Court. All parties to the APA are contractually bound to that agreement's provision that "any and all proceedings related to [any claims under the APA] shall be filed and maintained only in the Bankruptcy Court." APA § 13.3(a) (emphasis added) (Ex. A). Hence, the only forum in which this case may be resolved in its entirety, thereby avoiding the necessity of multiple proceedings, is the Bankruptcy Court. Furthermore, the Bankruptcy Court is intimately familiar with the terms of the APA, the Clarification Letter Agreement, and its own Sale Order. Also, the Bankruptcy Court currently has before it other matters raising related issues as to the definition of Purchased Assets. Thus, the Bankruptcy Court is well versed in the subject matter of this litigation. Moreover, FirstBank has indicated its wish to pursue discovery of the circumstances under which the Securities traveled from Lehman Brothers Special Financing Inc. ("LBSFI") to LBI, and from LBI to Barclays. See, e.g., Tr. 57, 62 (Ex. E). These Lehman entities currently are subject to the Bankruptcy Court's jurisdiction. Under these circumstances, the interest of judicial economy supports referral to the Bankruptcy Court.

3

In short, because (as this Court ruled at oral argument) this case requires an

interpretation and application of the Sale Order and because it will conceivably affect the

administration of the Lehman Bankruptcy Proceedings, it should be referred to the Bankruptcy

Court.

## BACKGROUND

FirstBank alleges that it posted the Securities with LBSFI as collateral for its

obligations under an International Swap Dealers Association Master Agreement (the "ISDA

Agreement"). Compl. ¶¶ 6, 8. LBSFI purportedly transferred the Securities to LBI so that LBI

would act as custodian of the collateral. Id. ¶ 20. FirstBank avers that LBI held the Securities on

or about September 15, 2008. Id. ¶ 23. FirstBank further alleges that LBI, without authority to

do so, transferred the Securities to Barclays as part of a sale transaction approved by the

Bankruptcy Court on September 19, 2008, but that the Securities were not, and were not intended

to be, included among the Purchased Assets transferred to Barclays in that transaction, and yet

were somehow otherwise conveyed to Barclays. Id. ¶¶ 39, 43, 45.

On December 21, 2009, FirstBank brought this suit against Barclays, demanding

damages in excess of $62 million arising out of the allegedly wrongful transfer of the Securities

to Barclays. By letter dated February 9, 2010, Barclays requested that the Court refer this suit to

the Bankruptcy Court. See Letter from Lindsee P. Granfield, dated February 9, 2010 (Ex. H).

FirstBank opposed Barclays' referral request, arguing in part that the request should be made by

formal motion. See Letter from Jeffrey A. Mitchell, dated February 16, 2010 (Ex. I). On

February 11, 2010, Barclays moved to dismiss the Complaint in its entirety on the grounds, inter

alia, that the Sale Order and the Uniform Commercial Code barred FirstBank's claims. See

Mem. of Law of Barclays Capital Inc. in Supp. Mot. to Dismiss, dated February 11, 2010

(D.I. 12). In an order entered on May 3, 2010, the Court granted Barclays' motion to dismiss

4

FirstBank's negligence and breach-of-contract claims, but allowed the unjust enrichment,
constructive trust / accounting, and conversion claims to proceed for the reasons stated on the
record at the April 29, 2010 oral argument.  The Court also reserved judgment on the question
whether this matter should be referred to the Bankruptcy Court.  See Tr. 103-07 (Ex. E).

## LEGAL STANDARD

Under 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases
under title 11 and any or all proceedings arising under title 11 or arising in or related to a case
under title 11 shall be referred to the bankruptcy judges for the district."  Id.  Parallel provisions
of the United States Code vest jurisdiction in bankruptcy courts to hear "core proceedings . . .
arising in a case under title 11," id. § 157(b)(1) (emphasis added), and proceedings that are "not a
core proceeding but that [are] otherwise related to a case under title 11," id. § 157(c)(1)
(emphasis added).[5]  The Southern District of New York has exercised the full measure of its
statutory authority by issuing a standing order that refers both "arising in" and "related to" cases
to the Bankruptcy Court.  See Standing Order M-61.

This District's Standing Order and 28 U.S.C. § 157(a) adopt the non-discretionary
policy of referring all matters implicating bankruptcy jurisdiction to the Bankruptcy Court.
Indeed, "referral to the bankruptcy court is automatic if the [case] fall[s] within the terms of the
[Standing] Order and if the bankruptcy court has jurisdiction over the matter."  Pan Am. World
Airways, Inc. v. Evergreen Int'l Airlines, Inc., 132 B.R. 4, 7 (S.D.N.Y. 1991); see Alliance

---

[5]      Where a bankruptcy court exercises jurisdiction over a core proceeding arising in a chapter 11
case, it may enter all "appropriate orders and judgments," that is, it may finally dispose of the matter.
28 U.S.C. § 157(b)(1).  Where it exercises jurisdiction over related litigation, a bankruptcy court may take
all actions up to the point of entry of a final judgment, but it must "submit proposed findings of fact and
conclusions of law to the district court" for that court's final determination.  Id. § 157(c)(1).

Commc'ns Group, Inc. v. N. Telecom, Inc., 65 B.R. 581, 585 (S.D.N.Y. 1986) ("Referral to the
bankruptcy court . . . is immediate and automatic.").

    This is true not only for cases removed to federal court from state court as to
which bankruptcy jurisdiction may provide the only basis for federal jurisdiction, but also for
those cases filed originally in federal court based on diversity or federal question jurisdiction.
Thus, for example, in Savoy Senior Housing Corp. v. TRBC Ministries, LLC, 401 B.R. 589
(S.D.N.Y. 2009), the district court referred a diversity action to the Bankruptcy Court because
the lawsuit was "inextricably intertwined with the prior bankruptcy proceeding." Id. at 596; see
Wedtech Corp. v. Banco Popular de P.R. (In re Wedtech Corp.), 94 B.R. 293, 294, 297
(S.D.N.Y. 1988); see also Int'l Fidelity Ins. Co. v. Kerley, 94 Civ. 0071-C, 1995 WL 245613,
at *1, *5 (W.D. Va. Apr. 12, 1995); C-TC 9th Ave. P'ship v. Norton Co. (In re C-TC 9th Ave.
P'Ship), 177 B.R. 760, 766 (N.D.N.Y. 1995); Apex Inv. Assocs., Inc. v. TJX Cos., 121 B.R. 522,
524, 527 (N.D. Ill. 1990).

    Likewise, in O'Connell v. Terranova (In re Adelphi Institute, Inc.), 112 B.R. 534
(S.D.N.Y. 1990), the court determined that referral to the Bankruptcy Court was appropriate
even though the case was brought under the Racketeer Influenced and Corrupt Organization
statute and, therefore, there was a non-bankruptcy basis for federal jurisdiction. Id. at 539.
Thus, the mere fact that by happenstance the citizenship of Barclays and FirstBank provide a
basis for diversity jurisdiction should not affect the Court's referral calculus. Where, as here,
there is "core" or "related to" bankruptcy jurisdiction, the policy of this District and the purpose
of Section 157(a) are to refer such cases to the Bankruptcy Court, even if they could otherwise
remain in the district court on the basis of diversity.

## ARGUMENT

### POINT I

**THIS LITIGATION SHOULD BE REFERRED TO THE BANKRUPTCY COURT
BECAUSE IT IS A CORE PROCEEDING THAT ARISES IN THE SALE ORDER**

"Arising in" jurisdiction under 28 U.S.C. § 157(b)(1) extends to core proceedings

that are "unique to or uniquely affected by the bankruptcy proceedings, or directly affect a core

bankruptcy function." Adelphia Commc'ns Corp. v. Rigas (In re Adelphia Commc'ns Corp.),

02 Civ. 8495 (GBD), 2003 WL 21297258, at *2 (S.D.N.Y. June 4, 2003) (citing Luan Inv. S.E.

v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 229 (2d Cir. 2002)).  In

determining whether a matter is a core proceeding arising in a case under title 11, "[t]he relevant

inquiry is whether the nature of th[e] adversary proceeding, rather than the state or federal basis

for the claim, falls within the core of federal bankruptcy power." Gulf States Exploration Co. v.

Manville Forest Prods. Corp. (In re Manville Prods. Corp.), 896 F.2d 1384, 1389 (2d Cir. 1990);

Ben Cooper, Inc. v. Ins. Co. of Penn. (In re Ben Cooper, Inc.), 896 F.2d 1394, 1399 (2d Cir.

1990); see 28 U.S.C. § 157(b)(3).  Section 157(b)(2) sets forth a non-exhaustive list of such

proceedings, including "orders approving the sale of [the estate's] property," id. § 157(b)(2)(N),

and "other proceedings affecting the liquidation of the assets of the estate," id. § 157(b)(2)(O).

The Second Circuit has directed that the items enumerated in Section 157(b)(2) should be given

the broadest construction consistent with the constitutional confines of bankruptcy court

jurisdiction.  See Bankr. Servs., Inc. v. Ernst & Young (In re CBI Holding Co.), 529 F.3d 432,

460 (2d Cir. 2008); In re Petrie Retail, 304 F.3d at 229.  Thus, matters turning on the

construction or enforcement of bankruptcy court sale orders generally constitute core

proceedings arising in a case under title 11.  Jam. Shipping Co. v. Orient Shipping Rotterdam,

B.V. (In re Millenium Seacarriers, Inc.), 458 F.3d 92, 95 (2d Cir. 2006); Allegheny Univ. of

7

Health Scis. v. Nat'l Union of Hosp. & Health Employees (In re Allegheny Health, Educ.
& Research Found.), 383 F.3d 169, 176 (3d Cir. 2004); In re Petrie Retail, 304 F.3d at 229-30;
Sterling Vision, Inc. v. Sterling Optical Corp. (In re Sterling Optical Corp.), 302 B.R. 792, 801
(Bankr. S.D.N.Y. 2003).

   Here, the construction and enforcement of the Sale Order lie at the very heart of
FirstBank's claims against Barclays. FirstBank has conceded that the Sale Order bars any claims
by third parties relating to Barclays' acquisition of the "Purchased Assets," as that term is used in
the APA, the Clarification Letter Agreement, and the Sale Order. See Mem. of Law of FirstBank
Puerto Rico in Opp'n to Def.'s Mot. to Dismiss 15, 18, dated March 26, 2010 (D.I. 16).
FirstBank maintains, however, that the Securities were not "Purchased Assets." See Compl.
¶¶ 39, 44, 50, 51. In light of these averments, the Court concluded during oral argument that the
dispositive factual question in this case is whether the Securities were "Purchased Assets," a
question that this Court found it was unable to resolve on the face of the allegations of the
Complaint. See Tr. 13-14, 97-98 (Ex E). Therefore, the proper resolution of this case would
require the Court to interpret the transaction documents and the Sale Order to determine whether
each of the Securities was (1) transferred to Barclays at all,[6] (2) transferred to Barclays and
within the scope of the definition of "Purchased Assets," or (3) transferred to Barclays, but not
among the "Purchased Assets." The terms of the transaction documents and the Sale Order
commit these questions to the jurisdiction of the Bankruptcy Court.

   As noted above, under the APA the Bankruptcy Court was to "retain exclusive
jurisdiction to enforce the terms of [the APA] and to decide any claims or disputes which may

---

[6]  FirstBank acknowledges that not all of the Securities were transferred to Barclays. See
2009 Form 10-K, at 118-19 ("[S]hortly before the filing of the Lehman bankruptcy proceedings, [LBI]
had provided instructions to have most of the securities transferred to Barclay's [sic] Capital in New
York.") (emphasis added) (Ex. F).

arise or result from, or be connected with, [the APA] . . . ."  APA § 13.3(a) (Ex. A).  The

Bankruptcy Court adopted this provision in the Sale Order, pursuant to which it retained

jurisdiction to "interpret, implement, and enforce the terms and provisions of [the Sale Order],"

in order, among other things, to "protect [Barclays] against any Interests in or Claims against

[LBHI and LBI] or the Purchased Assets . . . ."  Sale Order ¶ 20 (Ex. C).

               Furthermore, the Bankruptcy Court currently has under consideration questions

relating to the construction of the term "Purchased Assets."  In particular, the Bankruptcy Court

entered an order on January 16, 2009, directing the appointment of an examiner to investigate,

inter alia, "[w]hether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were

transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was

approved by order of the Bankruptcy Court entered September 20, 2008 . . . ."  Order Directing

Appointment of an Examiner Pursuant to Section 1104(c)(2) of the Bankruptcy Code 4, dated

January 16, 2009 (Ex. J).  The Examiner's Report, originally submitted on March 11, 2010,[7] and

filed in unredacted form on April 14, 2010,[8] dedicates over 150 of its 2200 pages to the question

whether assets of any LBHI affiliates other than LBI were transferred to Barclays and ultimately

answers that question in the negative, with the exception of certain minor non-securities assets

not relevant to this case.  See Examiner's Report Volume 5, at 1961-2103 (Ex. K).

---

[7]     See Report of Anton R. Valukas, Examiner, 08-13555 (JMP) (D.I. 7531).

[8]     See Notice of Filing Unredacted Volume 5 of Examiner's Report ("Examiner's Report Volume
5"), 08-13555 (JMP) (D.I. 8307) (Ex. K).

9

In addition, FirstBank plainly has submitted to the Bankruptcy Court's
jurisdiction, filing a claim in the SIPC liquidation of LBI,[9] and seeking discovery in the chapter
11 proceedings of LBHI and LBSFI.[10]

Under these circumstances, this case is a core proceeding arising in the Sale
Order. Presented with a similar scenario involving a dispute between two non-debtors that had
appeared in the bankruptcy court, the Second Circuit held that their dispute "uniquely affected
and was uniquely affected by core bankruptcy functions because the dispute . . . was based on
rights established in the sale order, the plan consummation motion sought enforcement of a pre-
existing injunction issued in the bankruptcy court's sale order, and the dispute involved an issue
already before the bankruptcy court as part of its consideration of [one party's] claim against the
estate." In re Petrie Retail, 304 F.3d at 231; see also Mt. McKinley Ins. Co. v. Corning Inc.,
399 F.3d 436, 449 (2d Cir. 2005) ("In Petrie, we held that core jurisdiction existed over a dispute
between entities that had been involved in a reorganization proceeding (albeit not as debtors)
over interpretation of the bankruptcy court's sale order.").

Similarly, in a suit brought by the buyer of chapter 11 debtors' assets against a
non-debtor, the Third Circuit held that the suit affected the bankruptcy court's core bankruptcy
functions because the resolution of the issue in dispute required the court to interpret and enforce
the bankruptcy court's sale order. See In re Allegheny Health, 383 F.3d at 176. Actions, such as
this one, that "turn[] on the terms of the Sale Order, amount[] to a request that the bankruptcy
court enforce that order," and therefore, constitute core proceedings. In re Millenium

---

[9]     See 2009 Form 10-K, at 119 ("Additionally, the Corporation continues to pursue its claim filed in
January 2009 in the proceedings under the Securities [Investor] Protection Act with regard to Lehman
Brothers Incorporated in Bankruptcy Court, Southern District of New York.") (Ex. F).

[10]    See Rule 2004(A) Notice (Ex. G).

10

Seacarriers, 458 F.3d at 95; see In re Portrait Corp. of Am., Inc., 406 B.R. 637, 641 (Bankr.

S.D.N.Y. 2009) (holding in dispute between two non-debtors that court had core jurisdiction "to

interpret and enforce the Sale Order"); In re Sterling Optical, 302 B.R. at 806 (holding that

matter was core proceeding because it involved construction of sale order); see also Travelers

Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009) ("[T]he Bankruptcy Court plainly had

jurisdiction to interpret and enforce its own prior orders."). Consequently, this litigation arises in

the Lehman Bankruptcy Proceedings and should be referred to the Bankruptcy Court.

**POINT II**

**THIS LITIGATION SHOULD BE REFERRED
TO THE BANKRUPTCY COURT BECAUSE IT IS
RELATED TO THE LEHMAN BANKRUPTCY PROCEEDINGS**

To the extent that this litigation does not arise in the Lehman Bankruptcy

Proceedings, it at a minimum relates to those proceedings and, therefore, should be referred to

the Bankruptcy Court on that basis. "Related to" jurisdiction is defined broadly to include any

litigation whose "outcome might have any conceivable effect on the bankrupt estate." Publicker

Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d Cir. 1992)

(internal quotation marks and citation omitted). A dispute between non-debtors has a

conceivable effect on the bankrupt estate if the dispute would "affect how much property is

available for distribution to the creditors of a bankruptcy estate or the allocation of property

among such creditors, or if the outcome could alter the debtor's rights and liabilities." Geron v.

Schulman (In re Manshul Constr. Corp.), 225 B.R. 41, 45 (Bankr. S.D.N.Y. 1998). Thus, if a

suit between non-debtors would give rise to reasonable or colorable third-party claims against

the debtor, the suit is "related to" the debtor's bankruptcy proceedings. See, e.g., N.Y. City

Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 293 B.R. 308, 318-24

(S.D.N.Y. 2003) (collecting cases); IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re

11

Amanat), 338 B.R. 574, 579-80 (Bankr. S.D.N.Y. 2005) (collecting cases); <u>see also</u> <u>Lindsey v.</u>

<u>O'Brien, Tanski, Tanzer, & Young Health Care Providers of Conn. (In re Dow Corning Corp.)</u>,

86 F.3d 482, 490-94 (6th Cir. 1996).

### A.     This Litigation Is Related to the Lehman Bankruptcy
Proceedings Because Barclays Possesses Substantial
Indemnification Claims Against LBI and LBHI

There is no doubt but that this litigation is related to the Lehman Bankruptcy

Proceedings because Barclays possesses substantial claims for indemnification that it may pursue

by way of impleader against Lehman entities. In particular, Barclays bargained for and obtained

a representation and warranty from LBHI and LBI that they "own[ed] (directly or indirectly)

each of the Purchased Assets, and [Barclays] will be vested with good and exclusive title to such

Purchased Assets, free and clear of all Liens, other than Permitted Exceptions, to the fullest

extent permissible under Section 363(f) of the Bankruptcy Code." APA § 5.4 (Ex. A). Because

the Bankruptcy Court found that Barclays would not have entered into the APA without this

warranty of good title, <u>see</u> Sale Order ¶ O (Ex. C), Section 5.4 of the APA constitutes an express

warranty, the breach of which would give rise to liability. <u>See</u> <u>Keenan v. D.H. Blair & Co.</u>,

838 F. Supp. 82, 90 (S.D.N.Y. 1993) (an "express warranty arises when a seller directly affirms

the quality or condition of the stock, provided that such affirmation tends to induce the buyer's

purchase, and the buyer purchases relying upon it"). FirstBank avers that LBI did not have title

to the Securities so it could not properly transfer them. Compl. ¶¶ 24, 37. Barclays contests

liability to FirstBank under any theory. The Court has already observed, however, that it cannot

preclude the possibility that, were Barclays to be adjudged liable, it may well have a claim

against LBI or LBHI, <u>see</u> Tr. 105-06 (Ex. E), based on breach of the representation that LBI and

LBHI had the authority to convey the securities they delivered to Barclays free and clear of all

competing claims.

The case law demonstrates that the possibility of such breach-of-warranty

indemnification claims against LBI and LBHI gives rise to bankruptcy court jurisdiction. See

Allegheny Univ. of Health Scis. v. Williams (In re Allegheny Health, Educ. & Research Found.),

233 B.R. 671, 679 (Bankr. W.D. Pa. 1999) (holding that court possessed jurisdiction over suit

between non-debtors because party's allegation that debtors breached warranty of good title

might give rise to claims for indemnity against debtors). Although Barclays' indemnification

claims are contingent on the entry of judgment in favor of FirstBank, such claims may have a

conceivable effect on the Lehman Bankruptcy Proceedings and, thus, this litigation is related to

such proceedings. See, e.g., In re WorldCom, Inc. Sec. Litig., 293 B.R. at 323-24 (holding that

contingent indemnification claims against debtor give rise to bankruptcy court jurisdiction where

there is a reasonable basis for such claims); In re Amanat, 338 B.R. at 579-80 (similar); see also

ML Media Partners, LP v. Century/ML Cable Venture (In re Adelphia Commc'ns Corp.), 285

B.R. 127, 140 (Bankr. S.D.N.Y. 2002) (holding that litigation is related to bankruptcy

proceeding if it may have negative or positive consequences for the bankrupt estate).

Accordingly, Standing Order M-61 mandates referral of this litigation to the Bankruptcy Court.

See Delcon Constr. Corp. v. Bd. of Educ. of City of Yonkers, 299 B.R. 60, 61 (S.D.N.Y. 2003)

("[Standing] Order requires referral to the bankruptcy court if the pending case falls within [its]

terms . . . and if the bankruptcy court has jurisdiction over the matter."); Hickox v. Leeward Isles

Resorts, Ltd., 224 B.R. 533, 539 (S.D.N.Y. 1998) (similar); WorldCom Network Servs., Inc. v.

Al-Khatib, No. 96 Civ. 4492 (RLC), 1998 WL 23254, at *2 (S.D.N.Y. Jan. 22, 1998) (similar);

Pan Am. World Airways, 132 B.R. at 6 (similar); Alliance Commc'ns Group, 65 B.R. at 585

(similar); see also Official Comm. of Unsecured Creditors of Verestar, Inc. v. Am. Tower Corp.,

No. 05 Civ. 6268 (RPP), 2005 WL 3455775, at *2-3 (S.D.N.Y. Dec. 15, 2005) (noting that "all

13

proceedings related to a case under title 11 are referred to the bankruptcy judges for this district,"

holding that Section 157 "requires the core and non-core decision to be made in the first instance

by the Bankruptcy Court," and imposing Rule 11 sanctions on plaintiffs for filing related

proceedings in district court).

**B.    Efficiency Considerations Further Support Referral of This Litigation**

Despite the mandatory language of Standing Order M-61, some courts in this

District have considered efficiency concerns in ruling upon motions to refer "related to"

litigation to the Bankruptcy Court. See, e.g., Worldcom Network Servs., 1998 WL 23254, at *4;

Hickox, 224 B.R. at 539. Although a bankruptcy court's determinations on dispositive issues in

a "related to" proceeding are subject to de novo review in the district court, see 28 U.S.C.

§ 157(c)(1), that consideration is not dispositive of the efficiency analysis, for otherwise

bankruptcy courts never would hear "related to" matters. See Hickox, 224 B.R. at 540 (quoting

Hunnicutt Co. v. TJX Co. (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 163 (S.D.N.Y. 1995)).

To the contrary, a bankruptcy court's familiarity with the subject matter underlying "related to"

litigation often provides that court with a better vantage point for evaluating the issues raised by

the litigation. See id. at 539-40.

In fact, "the interests of judicial economy" weigh decidedly in favor of referral to

a bankruptcy court that already has "extensive knowledge of the complex underlying transactions

and occurrences." Gucci v. Gucci, No 96 Civ. 8216 (JSR), 1997 WL 122838, at *1 (S.D.N.Y.

Mar. 16, 1997) (internal quotation marks and citation omitted); see WorldCom Network Servs.,

1998 WL 23254, at *4 (finding referral appropriate in part because bankruptcy court possessed

greater familiarity with underlying subject matter). Referral under such circumstances gives the

district court the benefit of the bankruptcy court's "intimate familiarity with the related

proceedings" in the event that the parties seek de novo review. Gucci, 1997 WL 122838, at *1;

14

see Hickox, 224 B.R. at 539-40; In re Ames Dep't Stores, 190 B.R. at 163.  This Court has
recognized the importance of efficiency considerations, suggesting that it might be appropriate to
consult the Bankruptcy Court regarding the most effective and expeditious resolution of this
litigation.  See Tr. 103-04 (Ex. E).

            Here, the Bankruptcy Court is well acquainted with the subject matter underlying
this litigation, including the workings of the transaction documents and its own Sale Order.
Further, the Bankruptcy Court currently is considering disputes over the scope of the term,
"Purchased Assets," and has received the Examiner's Report, which delves deeply into this issue.
Therefore, the Bankruptcy Court is in the best position to address efficiently the questions raised
by this litigation.  See WorldCom Network Servs., 1998 WL 23254, at *4 (the "bankruptcy court
is familiar with the facts underlying this dispute and . . . is in a better position than this court to
assess the issues," in part because bankruptcy court had presided over similar litigation and had
appointed examiner to investigate similar facts); see also Gucci, 1997 WL 122838, at *1; In re
Adelphi Inst., 112 B.R. at 539.

            Further, under the terms of the APA, Barclays may not assert its third-party
claims against LBI and LBHI in any forum other than in the Bankruptcy Court.  APA § 13.3(a)
(Ex. A).  Because the only forum in which this dispute can be adjudicated in its entirety is the
Bankruptcy Court, referral serves the interest of judicial economy by avoiding a multiplication of
judicial proceedings.  Moreover, FirstBank intends to seek discovery of the manner in which the
Securities traveled from LBSFI to LBI to Barclays, see, e.g., Tr. 57, 62 (Ex. E), and in order to
defend itself Barclays will likely also require discovery from LBSFI and LBI, as well as from
LBHI and potentially from the Examiner, because they probably possess relevant information
regarding the travel of the Securities, and regarding the holder of any of the Securities that

                                                15

Barclays did not receive. Barclays and FirstBank may be forced to litigate the propriety and

scope of any such discovery before the Bankruptcy Court. See Time Warner Cable of N.Y. City

v. M.D. Elecs., Inc., 101 F.3d 278, 282 (2d Cir. 1996) (directing plaintiff to request lift of

bankruptcy court stay in order to obtain discovery from debtor); Johns-Manville Corp. v.

Asbestos Litig. Group (In re Johns-Manville Corp.), 40 B.R. 219, 226 (S.D.N.Y. 1984)

(bankruptcy court properly stayed discovery requests propounded to debtor as a third-party

witness under 11 U.S.C. § 105). The Bankruptcy Court is ideally positioned to efficiently

manage any discovery that may be required without interfering unnecessarily with the Lehman

Bankruptcy Proceedings. In particular, the Bankruptcy Court is familiar with the assets in LBI's

possession at the time of its SIPC liquidation, and with the manner in which those assets were

disposed of. The Examiner and its financial adviser also have devoted substantial time and

financial resources to these issues. The fact that discovery-related litigation involving LBI or

LBSFI would be conducted before the Bankruptcy Court is further reason to refer this action to

the Bankruptcy Court, as proceedings in this Court invariably would be delayed were it

necessary to await the discovery rulings of the Bankruptcy Court. Efficiency considerations thus

weigh strongly in favor of referral to the Bankruptcy Court even if this case is only "related to"

the Lehman Bankruptcy Proceedings.

## C.    Referral Is Warranted Even If FirstBank Is Entitled to a Jury Trial

FirstBank's request for a jury trial is no impediment to the referral of this

litigation in the event that it is only related to the Lehman Bankruptcy Proceedings.[11] Assuming

arguendo that any trial would be held before a jury, the Court nonetheless should refer this

---

[11]    If the Court agrees that this action is a core proceeding arising in the Sale Order, then the
Bankruptcy Court would be empowered to conduct any jury trial that occurred. See In re Ben Cooper,
896 F.2d at 1403.

16

matter to the Bankruptcy Court for pretrial proceedings because that court currently is considering the subject matter underlying this litigation, this case may be disposed of by motion before trial, and, in any event, the mere possibility that an action may ultimately be tried is no hindrance to referral.  In re Adelphia Commc'ns, 2003 WL 21297258, at *3 (motion to withdraw reference based on asserted right to jury trial was premature, in that bankruptcy court still could oversee pretrial proceedings); In re Ames Dep't Stores, 190 B.R. at 163 & n.2 (similar); Gucci, 1997 WL 122838, at *1 (similar); Hassett v. BancOhio Nat'l Bank (In re CIS Corp.), 172 B.R. 748, 763-64 (S.D.N.Y. 1994) (similar); Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kenai Corp.), 136 B.R. 59, 61 (S.D.N.Y. 1992) (similar); In re Adelphi Inst., 112 B.R. at 539 (similar); see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1101-02 (2d Cir. 1993) (holding that bankruptcy court may conduct pretrial proceedings in "related to" matters to be tried by jury, especially if bankruptcy court possesses familiarity with underlying subject matter).  Indeed, given the very limited nature of the factual questions at issue here, see Tr. 100-01 (Ex. E), this case seems especially amenable to resolution on a pretrial motion.

17

## CONCLUSION

For the reasons set forth above, we respectfully request under 28 U.S.C. § 157(a)

and Standing Order M-61 that this litigation be referred to the Bankruptcy Court.

Dated: New York, New York
      May 28, 2010

Respectfully submitted,

CLEARY GOTTLIEB STEEN & HAMILTON LLP

By: _____
    Lindsee P. Granfield
    Boaz S. Morag

One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Barclays Capital Inc.