**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

FIRSTBANK PUERTO RICO,

                    Plaintiff,

       -against-

BARCLAYS CAPITAL, INC.,

                 Defendant.

Civil Action No. 09 Civ. 10317 (GBD)

---

## MEMORANDUM OF LAW OF FIRSTBANK PUERTO RICO IN OPPOSITION TO DEFENDANT'S MOTION TO REFER THIS ACTION TO THE BANKRUPTCY COURT

---

**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, New York 10019-3701
(212) 613-2000
*Attorneys for FirstBank Puerto Rico*

Of Counsel:

Jeffrey A. Mitchell, Esq.
Daniel S. Weinberger, Esq.

#1541769 v1
109459-67363

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

PRELIMINARY STATEMENT ..............................................................................................1

FACTS RELEVANT TO THIS MOTION...............................................................................2

    A.    The Securities at Issue Were Never Property of The Lehman Estate.........2

    B.    Barclays Did Not Purchase Assets that Were Not Property of the
Lehman Estate .........................................................................................2

    C.    There are No Comparable Matters Before The Bankruptcy Court.............5

    D.    The District Court Has Jurisdiction to Resolve This Case ........................7

LEGAL STANDARD ..............................................................................................................7

ARGUMENT...........................................................................................................................9

POINT I    THIS MATTER IS NOT A CORE PROCEEDING BECAUSE IT
IS AN ACTION UNDER STATE COMMON LAW BETWEEN
TWO NON-DEBTORS OVER PROPERTY THAT NEVER
BELONGED TO THE LEHMAN BANKRUPTCY ESTATE.................9

    A.    There Is No Reason to Interpret the Sale Order because the
Collateral Was Never Property of the Lehman Bankrupt Estate ..............11

    B.    The Language of the Asset Purchase Agreement Confirms that
Assets that Were Not Property of the Lehman Bankruptcy Estate
Were Not Covered by the Bankruptcy Court Sale Order ..........................17

POINT II    THIS MATTER IS NOT A REFERABLE NON-CORE
PROCEEDING BECAUSE IT IS NOT RELATED TO THE
LEHMAN BANKRUPTCY PROCEEDINGS ..........................................18

    A.    This Matter is Not Related to the Lehman Bankruptcy Proceedings
Because Barclays Has No Legitimate Indemnification Claims
Against LBI and LBHI, and Even if it Did, Those Potential Claims
Are Too Speculative To Have Any Conceivable Effect On the
Bankrupt Estate .......................................................................................19

    B.    FirstBank Did Not Submit to the Bankruptcy Court's Jurisdiction
by Filing a Claim in the SIPC Liquidation of LBI ...................................21

    C.    Efficiency Considerations Counsel Against Referral To the
Bankruptcy Court.....................................................................................22

CONCLUSION........................................................................................................................25

#1541769 v1
109459-67363

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Crowell v. Benson*,
   285 U.S. 22 (1932)......................................................................................................8

*Eastern Equip. & Servs. Corp.*,
   236 F.3d 117 (2d Cir. 2001) .....................................................................................16

*Ex parte Bakelite Corp.*,
   279 U.S. 438 (1929)....................................................................................................8

*Granfinanciera, S.A. v. Nordberg*,
   492 U.S. 33 (1989)....................................................................................................22

*Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest*
   *Prods. Corp.)*,
   896 F.2d 1384 (2d Cir. 1990) ...................................................................................10

*Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*,
   172 B.R. 748 (S.D.N.Y. 1994) ..............................................................9, 10, 11, 23

*In re Brown*,
   734 F.2d 119 (2d Cir. 1984) .....................................................................................14

*In re Edwards*,
   962 F.2d 641 (7th Cir. 1992) ....................................................................................17

*In re Federal-Mogul Global, Inc.*,
   300 F.3d 368 (3d Cir. 2002) .....................................................................................21

*In re FedPak Systems, Inc.*,
   80 F.3d 207 (7th Cir. 1996) ......................................................................................21

*In re Hopkins Corp.*,
   76 B.R. 612 (Bankr. S.D. Ohio 1987) ......................................................................14

*In re Murchison*,
   54 B.R. 721 (Bankr. N.D. Tex. 1985).......................................................................14

*In re Orion Pictures Corp.*,
   4 F.3d 1095 (2d Cir 1993) ..................................................................................23, 24

*In re S.G. Phillips Constructors, Inc.*,
   45 F.3d 702 (2d Cir. 1995) .......................................................................................22

#1541769 v1
109459-67363

*In re Signal Hill-Liberia Ave. Ltd. P'ship*,
189 B.R. 648 (Bankr. E.D. Va. 1995) ................................................................14

*In re Varat Enterprises, Inc.*,
81 F.3d 1310 (4th Cir. 1996) ............................................................................14

*In re Wood*,
825 F.2d 90 (5th Cir. 1987) ..............................................................................10

*Int'l Ass'n of Mechanists & Aerospace Workers, AFL-CIO v. Eastern Air Lines*,
121 B.R. 428 (S.D.N.Y. 1990) .......................................................................9, 23

*Langenkamp v. Culp*,
498 U.S. 42 (1990) ............................................................................................22

*Luan Inv., S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
304 F.3d 223 (2d Cir. 2002) ...........................................................................8, 9

*Montello Oil Corp. Cities Serv. Co. v. Marin Motor Oil, Inc. (In re Marin Motor Oil Inc.)*,
740 F.2d 220 (3d Cir. 1984) ..............................................................................16

*Murray v. McGraw (In re Bell & Beckwith)*,
821 F.2d 333 (6th Cir. 1987) .............................................................................16

*Musso v. Ostashko (In re Ostashko)*,
333 B.R. 625 (S.D.N.Y. 2005), 468 F.3d 99 (2d Cir. 2006) ................................12

*Nelson v. Welch & Crane (In re Repository Techs., Inc.)*,
601 F.3d 710 (7th Cir. 2010) .............................................................................16

*Northern Pipeline Constr. Co. v. Marathon Pipeline Co.*,
458 U.S. 50 (1982) ..............................................................................................7

*Old Stone Bank v. Tycon I Bldg. Ltd. Partnership*,
946 F.2d 271 (4th Cir. 1991) .............................................................................14

*Pacor, Inc. v. Higgins (In re Pacor, Inc.)*,
743 F.2d 984 (3d Cir. 1984) ...................................................................19, 20, 21

*Parklane Hosiery Co., Inc. v. Shore*,
439 U.S. 322 (1979) ...........................................................................................20

*Pennsylvania Gen. Ins. Co. v. Austin Powder Co.*,
68 N.Y.2d 465 (1986) .........................................................................................20

*Publicker Indus. Inc. v. United States (In re Cuyahago Equip. Corp.)*,
980 F.2d 110 (2d Cir. 1992) .........................................................................19, 20

#1541769 v1
109459-67363

*Rednel Tower, Ltd. v. New York State Dep't of Health (In re Riverside Nursing Home)*,
144 B.R. 951 (S.D.N.Y. 1992) ............................................................9, 10

*Rutherford Hosp., Inc. v. RNH Partnership*,
168 F.3d 693 (4th Cir. 1999) ...............................................................14

*Tenet Healthcare Corp. v. Williams (In re Allegheny Health, Educ. & Research Found.)*,
233 B.R. 671 (Bankr. W.D. Pa. 1999) ...................................................17

*Terry Oilfield Supply Co. v. American Sec. Bank, N.A.*,
195 B.R. 66 (S.D. Tex. 1996) ...............................................................14

*Things Remembered Inc. v. Petrarca*,
516 U.S. 124 (1995)..............................................................................19

*TM Patents, LP v. Int'l Bus. Machs. Corp.*,
121 F. Supp. 2d 349 (S.D.N.Y 2000) ....................................................13

*TransAmerica Fin. Life Ins. Co. v. Merrill Lynch & Co., Inc.*,
302 B.R. 620 (N.D. Iowa 2003)............................................................20

*United States Lines, Inc. v. Am. Steamship Owners Mut. Protection & Indemnity Assoc.,
Inc. (In re United States Lines, Inc.)*,
197 F.3d 631 (2d Cir. 1999) ................................................................10

*United States v. Mendoza*,
464 U.S. 154 (1984)..............................................................................20

*United States v. Ustica*,
847 F.2d 42 (2d Cir. 1988) ...................................................................20

*Wersbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*,
147 B.R. 317 (S.D.N.Y. 1992) ..............................................................12

*Whitehead v. Shattuck*,
138 U.S. 146 (1891)...............................................................................23

*Worldcom Network Servs., Inc. v. Wael Al-Khatib*,
No. 96 Civ. 4492, 1998 U.S. Dist. LEXIS 427 (S.D.N.Y. Jan. 22, 1998)................................23

#1541769 v1
109459-67363

## STATUTES

11 U.S.C. § 363(b) ................................................................................................................3, 13

11 U.S.C. § 363(c) .....................................................................................................................4

11 U.S.C. § 363(c)(2) ..............................................................................................................13

11 U.S.C. § 545(a)(1) ..............................................................................................................13

11 U.S.C. §§ 105(a) ...................................................................................................................1

28 U.S.C. § 1332 ....................................................................................................................1, 8

28 U.S.C. § 1447(d) .................................................................................................................19

28 U.S.C. § 157 ..........................................................................................................................8

28 U.S.C. § 157(a) .....................................................................................................................9

28 U.S.C. § 157(b)(1) .................................................................................................................9

28 U.S.C. § 157(c)(1) ...........................................................................................................9, 23

28 U.S.C. § 157(d) ...................................................................................................................23

#1541769 v1
109459-67363

## PRELIMINARY STATEMENT

This is a diversity action brought by plaintiff FirstBank Puerto Rico ("FirstBank") pursuant to 28 U.S.C. § 1332.  The Complaint seeks the return of securities posted by FirstBank as collateral (the "Collateral") with Lehman Brothers Special Financing, Inc. ("LBSF") to secure certain obligations under an International Swap Dealers Association Master Agreement between the parties (the "Swaps Agreement").  That Collateral is now in the possession of defendant Barclays Capital, Inc. ("Barclays").  Barclays defends by claiming *it* now owns the FirstBank securities because it purchased them — not from FirstBank, but rather from Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Brothers, Inc. ("LBI") (collectively, LBHI and LBI are referred to as "Lehman").  Barclays claims that this purported purchase was approved in a bankruptcy court Sale Order,[1] and that Barclays now qualifies as *a bona fide* purchaser under Article 8 of the Uniform Commercial Code.  Barclays seeks referral of this case to the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), primarily because, it argues, the claims of FirstBank are related to that Bankruptcy Court Sale Order and, more generally, to the administration of the Lehman bankruptcy estate.

Barclays' motion is based upon the simplistic premise that because Barclays received possession of the underlying securities from Lehman, any claim that concerns those securities must go to the Bankruptcy Court.  However, Barclays ignores that the Lehman estate has no interest whatsoever in the outcome of this case.  Upon the conclusion of the action, the securities at issue will either stay with Barclays or be returned to FirstBank.  Nor does resolution of this

---

[1] The "Sale Order" refers to the Order Under 11 U.S.C. §§ 105(a), 363, and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006 Authorizing and Approving (A) The Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, dated September 19, 2008, and entered as Item 258 in Docket No. 08-13555 (JMP).  The Sale Order is attached as Exhibit C to the Declaration of Ari D. MacKinnon in support of Barclays' Motion to Refer this Action to the Bankruptcy Court, dated May 28, 2010 ("MacKinnon Decl.").

action require review of the Sale Order or any decisions of the Bankruptcy Court, as Barclays has presented no evidence to suggest that the Collateral was ever property of the Lehman estate. And, while Barclays asserts that it might attempt to pursue indemnification claims against Lehman entities at some point in the future, such speculative claims are not a basis for referral of a case to bankruptcy court. In sum, Barclay's motion is a request that the Bankruptcy Court be appointed to referee a dispute between two non-debtors where the outcome will have no effect on the estate being administered. On the facts alleged, this Court should not defer.

## FACTS RELEVANT TO THIS MOTION

### A.    The Securities at Issue Were Never Property of The Lehman Estate

The Complaint here alleges that "at all times relevant" to this case, "FirstBank held title" to the underlying securities (Compl. ¶11), and at the time of the Lehman bankruptcy filing, no relevant Lehman entity had an "ownership interest in or other right to claim title to the Collateral" (*id.* ¶24). Barclays offers no proof to the contrary in support of its motion to refer, effectively conceding that the Collateral belonged to FirstBank as of the moment that Lehman filed for bankruptcy protection on September 15, 2008. Nothing that happened after filing changed that fact.

### B.    Barclays Did Not Purchase Assets that Were Not Property of the Lehman Estate

Barclays alleges that FirstBank's securities were included in the asset purchase it made from Lehman, and as a result, "construction and enforcement of the Sale Order lie at the very heart of FirstBank's claims against Barclays" because "the Sale Order bars any claims by third parties relating to Barclays' acquisition of the 'Purchased Assets,' as that term is used in the

- 2 -

APA,[2] the Clarification Letter Agreement,[3] and the Sale Order." Barclays' Mem. in Supp. of Mot. to Refer Action to Bankruptcy Court ("Def.'s Mem.") at 8. According to Barclays:

> . . . the proper resolution of this case would require the Court to interpret the transaction documents and the Sale Order to determine whether each of the Securities was (1) transferred to Barclays at all, (2) transferred to Barclays and within the scope of the definition of "Purchased Assets," or (3) transferred to Barclays, but not among the "Purchased Assets."

*Id.*

Barclays' argument starts from the false premise that the Collateral could have been included in its transaction with the Lehman estate. In fact, the Collateral could not have been included because a trustee's authority to sell assets is limited by Section 363(b) of the Bankruptcy Code to "property of the estate."[4] The Complaint here alleges that the FirstBank securities were not owned by Lehman, but rather, were delivered to a Lehman affiliate (LBSF) as collateral for FirstBank's obligations under the Swaps Agreement, and later delivered to LBI as custodial agent for safekeeping. Compl. ¶20. Barclays does not dispute that allegation.[5] Moreover, monthly account statements delivered by LBSF to FirstBank establish that the underlying securities were owned by FirstBank up to and through August 29, 2008, and were

---

[2] The term "APA" refers to the Asset Purchase Agreement, dated as of September 16, 2008, which is attached as Exhibit A to the MacKinnon Declaration. The "APA" also may be referred to as the "Asset Purchase Agreement."

[3] The term "Clarification Letter Agreement" refers to the clarification letter dated as of September 20, 2008, which is attached as Exhibit B to the MacKinnon Declaration.

[4] Section 363(b) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, ***property of the estate*** . . . ." 11 U.S.C. § 363(b) (emphasis added).

[5] Barclays answered paragraph 20 of the Complaint by alleging that it lacked "knowledge or information sufficient to form a belief as to the truth of the allegations," presumably because "FirstBank has refused to identify the CUSIP number and par value of each of the securities allegedly comprising the Collateral." Answer ¶ 20. However, at oral argument on its Motion to Dismiss, Barclays claimed that $56-million of the $62-million of FirstBank Collateral was accounted for as having been delivered to it by Lehman. *See* Mot. to Dismiss Hr'g Tr. ("Tr.") 17:2-19:19 (Apr. 29, 2010), attached as Exhibit E to the MacKinnon Declaration. Barclays' basis for pleading a "lack of knowledge or information" about the securities at issue is therefore unclear.

#1541769 v1
109459-67363

still being held by LBSF only as collateral.  *See* September 1, 2008 Derivatives - MTM
Statement from LBSF to FirstBank ("September 1, 2008 MTM Statement") at 1, 5.[6]

Barclays has offered no evidence that LBSF transferred its security interest, or any other
property interest in the Collateral, to Lehman (either LBI or LBHI) between August 29, 2008 and
September 15, 2008 (the date that LBHI filed for bankruptcy) or September 19, 2008 (the date
that LBI was placed into liquidation by the Securities Investor Protection Corporation ("SIPC")),
or any date thereafter.  Furthermore, Barclays' moving papers offer no proof – because there is
none – that the Lehman trustee ever sought permission from the Bankruptcy Court pursuant to
Bankruptcy Code §363(c) to foreclose on the Collateral posted by FirstBank before closing with
Barclays.[7]

If Barclays has evidence that the Collateral was nevertheless owned by the Lehman estate
when its asset purchase closed, such evidence should have been presented with the moving
papers.  Similarly, if Barclays had proof that either it or the bankruptcy trustee intended to define
"Purchased Assets" in the APA in such a way as to intentionally try to transfer title to assets that
were not *property of the estate*, or that a portion of the purchase price under the APA was
specifically allocated to the FirstBank Collateral, such proof should have been presented to the
Court.[8]  Since it was not, Barclays' only remaining argument can be that the Collateral was
delivered by mistake but Barclays should nevertheless be allowed to keep it — an argument that

---

[6] The September 1, 2008 MTM Statement is attached as Exhibit A to the Declaration of Daniel S. Weinberger in
Support of FirstBank's Opposition to Barclays' Motion to Refer this Action to Bankruptcy Court, dated June 30,
2010 ("Weinberger Decl.").  Because Lehman filed for bankruptcy on September 15, 2008, the September 1, 2008
MTM Statement was the last monthly account statement that FirstBank received from Lehman.  FirstBank also
demanded that LBSF return the Collateral before it filed for bankruptcy on October 3, 2008.  Compl. ¶15.

[7] A "trustee may not use, sell, or lease" that Collateral "unless – (A) each entity that has an interest in such cash
collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with
the provisions of this section.  11 U.S.C. § 363(c).

[8] Barclays has admitted having received $56-million of the FirstBank Collateral.  Tr. 19:1-8.

#1541769 v1
109459-67363

raises no issues within the purview of the Bankruptcy Court.

Accordingly, on the record on this Motion, the Court should take the following facts as true:

  a. The Collateral was the property of FirstBank up to and including the moment Lehman filed for bankruptcy;

  b. No application was made in the Bankruptcy Court by Lehman after the bankruptcy filing for permission to foreclose upon or to otherwise take title to the Collateral before it was delivered to Barclays;[9] and

  c. The trustee had no authority under the Bankruptcy Code to dispose of assets that did not belong to the debtor.

## C. There are No Comparable Matters Before The Bankruptcy Court

Barclays implies that the issues raised by this case are currently being heard by the Bankruptcy Court in other contexts, and that an examiner was even appointed in one such matter to investigate "'[w]hether assets of any LBHI affiliates were transferred to Barclays Capital, Inc. . . .'" Def.'s Mem. at 9.  Upon receipt of those papers, FirstBank asked Barclays to elaborate:

> To the extent Barclays is a party to any such matter, we ask that you provide a brief description of the issue over the "scope of the term 'Purchased Assets'" that is being resolved by the Court in such matter since your papers infer that this issue is the same as the one before the Court in the above-referenced case. . . .

Letter from Jeffrey A. Mitchell to Boaz S. Morag, dated June 1, 2010 (Weinberger Decl. Ex. B).

In its response, Barclays backtracked and said it "did not imply that the other matters involved the 'same' issue as in dispute in this action, only that they raise issues requiring the interpretation of the scope of Purchased Assets under the Purchase Agreement (comprising the APA, First Amendment to the APA and Clarification Letter Agreement) and Sale Order."  Letter from Boaz S. Morag to Jeffrey A. Mitchell, dated June 4, 2010 (Weinberger Decl. Ex. C).  Thus,

---

[9] Paragraph 32 of the Complaint alleges that ". . . [Barclays] made an agreement to acquire assets of LBI on September 16, 2008, literally one day after the LBI Bankruptcy was filed," so there was no time to even make such an application before the Asset Purchase Agreement was made.

#1541769 v1
109459-67363

Barclays has admitted that the discrete issues before the Court here are not currently before the Bankruptcy Court.

The Examiner's Report alluded to by Barclays (a portion of which is provided as Exhibit K to the MacKinnon Declaration) also does not report on any claims that compare to those of FirstBank.  *See* Report of Anton R. Valukas, Examiner ("Examiner's Report"), 08-13555 (JMP) (D.I. 7531).  The Examiner's Report says that its express purpose was to determine whether "assets of any LBHI Affiliates were transferred to Barclays in connection with the sale transaction."  Notice of Filing Unredacted Volume 5 of Examiner's Report at 1963, No. 08-13555 (JMP) (D.I. 8307) (MacKinnon Decl. Ex. K).  Whether assets belonging to LBHI's affiliates were included in the sale to Barclays (the Examiner found that some were) is a different issue than whether Barclays is wrongly in possession of assets belonging to FirstBank.

More importantly, the Examiner's Report concludes that "[a]s of September 12, 2008, 795 of the CUSIPs listed on Schedules A and B and 22 of the CUSIPs listed on Annex A (817 total CUSIPs) did not exist on GFS [Global Funding System]," Examiner's Report at 2025 (MacKinnon Decl. Ex. K), which was the reporting system maintained by Lehman.  The report goes on to say "the information provided was inconclusive for determining the ownership of the 817 CUSIPs." *Id.* at 2028.  It also notes that the Examiner did not look into that issue further because "[t]he securities bearing these 817 CUSIPs that are not included in the September 12, 2009 GFS data set comprise a relatively small subset of the securities transferred to Barclays ($695.8 million in par value) which represents less than 2 percent of the par value of all the CUSIPs transferred to Barclays." *Id.* at 2029-30.  Certainly one reason why $695.8 million of securities might be unaccounted for in the Lehman system may be because they were owned by counterparties like FirstBank, which posted them as collateral.  Regardless, the Complaint

- 6 -

#1541769 v1
109459-67363

alleges that FirstBank owns the Collateral, not a Lehman affiliate, a claim that is expressly

beyond the scope of what the Examiner investigated and upon which he reported.

### D.     The District Court Has Jurisdiction to Resolve This Case

Barclays concedes that the District Court has jurisdiction to hear this case.  Tr. 4:10-11

(MacKinnon Decl. Ex. E) ("Your Honor, there is no question that you have jurisdiction over this

matter.").  There is diversity citizenship, neither of the parties before this Court is in bankruptcy,

and the claims asserted all derive from New York state common law and not the Bankruptcy

Code.  Likewise, this Court has already expressed an inclination to keep this case, rather than

transfer.  At the conclusion of oral argument on Barclays' motion to dismiss, the Court said:

> Well I intend – I think you should assume, unless I give an order otherwise, that
> this case is going to move forward efficiently here.  If I make a different decision
> that it should go to the bankruptcy court that's one thing, but I think given the
> posture that we are at now, I'm going to proceed under the assumption that it's
> going to be here unless I transfer it, and you should be prepared to move forward.

*Id.* at 107:15-22.  Nothing contained in the motion by Barclays should cause the Court to change

that preliminary assessment.  Accordingly, Barclays' motion to transfer to the Bankruptcy Court

should be denied.

## LEGAL STANDARD

Article III of the United States Constitution provides that "The judicial power of the

United States, shall be vested in one Supreme Court, and in such inferior Courts as the Congress

may from time to time ordain and establish."  Art. III, § 1.  "The inexorable command of this

provision is clear and definite: The judicial power of the United States must be exercised by

courts having the attributes prescribed in Art. III," including that the judges shall enjoy life

tenure and protection from salary diminution.  *Northern Pipeline Constr. Co. v. Marathon

Pipeline Co.*, 458 U.S. 50, 58-59 (1982).  The judicial power extends to, *inter alia*, "all cases, in

law or equity, . . . between citizens of different states."  Art. III, § 2.  Congress codified Article

- 7 -

III district court jurisdiction over cases involving diversity of citizenship in 28 U.S.C. § 1332, which provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . (1) citizens of different states."

In contrast, because the bankruptcy courts were created by an act of Congress under Article I, their jurisdiction to adjudicate disputes is constitutionally limited to those matters involving "public rights."  458 U.S. at 68.  "The public-rights doctrine is grounded in a historically recognized distinction between matters that could be conclusively determined by the Executive and Legislative Branches and matters that are 'inherently . . . judicial.'"  *Id.* (quoting *Ex parte Bakelite Corp.*, 279 U.S. 438, 458 (1929)). Matters involving public rights "must at a minimum arise 'between the government and others.'"  *Id.* at 69 (quoting *Ex parte Bakelite Corp.*, 279 U.S. at 451).  "In contrast, 'the liability of one individual to another under the law as defined,' is a matter of private rights. . . . Only controversies in the former category may be removed from Art. III courts and delegated to legislative courts . . . for their determination."  *Id.* at 69-70 (quoting *Crowell v. Benson*, 285 U.S. 22, 50, 51 (1932)).  "Private-rights disputes, on the other hand, lie at the core of the historically recognized judicial power."  *Id.* at 70.  Thus, while Article I bankruptcy courts have limited jurisdiction to resolve bankruptcy cases, "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights. . . . The former may well be a 'public right,' but the latter obviously is not."  *Id.* at 71.

In order to satisfy the constitutional requirements of Article III, Congress codified a statutory scheme that divides claims in bankruptcy proceedings into two principal categories: "core" and "non-core."  *See* 28 U.S.C. § 157; *Luan Inv., S.E. v. Franklin 145 Corp. (In re Petrie*

- 8 -

#1541769 v1
109459-67363

*Retail, Inc.)*, 304 F.3d 223, 228-29 (2d Cir. 2002).  Under 28 U.S.C. § 157(a), "[e]ach district

court may provide that any or all cases under title 11 and any or all proceedings arising under

title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy court."

A "core" proceeding is one which arises under title 11 or arises in a case under title 11.  *Id.* §

157(b)(1); *Rednel Tower, Ltd. v. New York State Dep't of Health (In re Riverside Nursing

Home)*, 144 B.R. 951, 955 (S.D.N.Y. 1992).

      Bankruptcy courts have jurisdiction to adjudicate and render final orders and judgments

in "core" proceedings.  28 U.S.C. § 157(b)(1); *In re Petrie Retail*, 304 F.3d at 228.  Bankruptcy

courts also may hear matters which are "non-core" but are otherwise "related to" a bankruptcy

case.  *See* 28 U.S.C. § 157(c)(1).  In these "non-core" matters, bankruptcy courts may issue

findings of fact and conclusions of law, but are not empowered to issue final orders or

judgments.  *See id.*; *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.)*, 172 B.R. 748, 754-55

(S.D.N.Y. 1994).  If a bankruptcy court issues factual findings or legal conclusions in a non-core

matter, the district court must review them *de novo.  See* 28 U.S.C. § 157(c)(1); *see also Int'l

Ass'n of Mechanists & Aerospace Workers, AFL-CIO v. Eastern Air Lines*, 121 B.R. 428, 432

n.5 (S.D.N.Y. 1990), *aff'd* 923 F.2d 26 (2d Cir. 1991).

## ARGUMENT

### POINT I

#### THIS MATTER IS NOT A CORE PROCEEDING BECAUSE IT IS AN ACTION UNDER STATE COMMON LAW BETWEEN TWO NON-DEBTORS OVER PROPERTY THAT NEVER BELONGED TO THE LEHMAN BANKRUPTCY ESTATE

      "Core" proceedings are (i) those which arise "under title 11" (*e.g.* – petition for

bankruptcy), or (ii) which are brought within such proceedings.  28 U.S.C. § 157(b)(1); *In re

Riverside Nursing Home*, 144 B.R. at 955.  At issue here on this motion is a diversity case in

- 9 -

#1541769 v1
109459-67363

which FirstBank asserts claims under New York law against Barclays, a non-debtor, for

conversion, unjust enrichment and imposition of a constructive trust, none of which arise under

title 11.  Moreover, since the underlying assets never belonged to Lehman in the first place, the

claims against Barclays could not properly have been brought by FirstBank *within* the Lehman

bankruptcy.  "Such an action arises under state law, and is independent and outside the reach of

the bankruptcy process."  *In re CIS Corp.*, 172 B.R. at 756.

To determine whether state law claims should be resolved in bankruptcy court, "the

relevant analysis is whether the nature of [the] adversary proceeding, rather than the state or

federal basis for the claim, falls within the core of the federal bankruptcy power."  *Gulf States

Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d

1384, 1389 (2d Cir. 1990).  "Proceedings can be core by virtue of their nature if either (1) the

type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, . . . or (2) the

proceedings directly affect a core bankruptcy function."  *United States Lines, Inc. v. Am.

Steamship Owners Mut. Protection & Indemnity Assoc., Inc. (In re United States Lines, Inc.)*,

197 F.3d 631, 637 (2d Cir. 1999) (internal citations omitted).   In other words, "[a] matter arises

in a case under title 11 if it is a proceeding that, by its nature, could only arise in a bankruptcy

case and has no existence outside of the bankruptcy."  *In re Riverside Nursing Home*, 144 B.R. at

955; *see also In re CIS Corp.*, 172 B.R. at 755 ("It is generally accepted that a core proceeding is

one which 'invokes a substantive right provided by title 11 or [] is a proceeding that, by its

nature, could arise only in the context of a bankruptcy case.'") (quoting *In re Wood*, 825 F.2d 90,

97 (5th Cir. 1987)) (alteration in original).

This is not such a case.  By its very nature, FirstBank's suit involves no substantive rights

created by title 11 nor does it assert claims that could "arise only in the context of a bankruptcy."

- 10 -

#1541769 v1
109459-67363

FirstBank alleges and has offered evidence in the form of account statements that show Lehman never owned the securities which comprise the Collateral before it filed for bankruptcy. Moreover, no application was ever made by the trustee to foreclose upon or otherwise take title to FirstBank's Collateral, let alone before the asset sale to Barclays closed. If as FirstBank alleges, Lehman never owned the securities, then they were not transferred pursuant to the APA and Sale Order, and whatever value Barclays paid, it was not for the Collateral. As such, FirstBank's claims against Barclays manifestly have "an existence outside of the bankruptcy," their resolution is not uniquely affected by the bankruptcy proceedings, and they do not concern a core bankruptcy function. Rather, this is a dispute between two non-debtors which is governed by state law and which is "to determine disputed ownership in property." *In re CIS Corp.*, 172 B.R. at 756 (holding that even where, unlike here, the dispute is between the actual *debtor* and a non-debtor over ownership to property, "[a] resolution of the dispute surrounding ownership of the property must . . . be made in the debtor's favor before any traditional bankruptcy action, such as turnover of the property to the estate, may be undertaken").

Accordingly, this is not a "core" bankruptcy proceeding, and the Bankruptcy Court lacks constitutional jurisdiction to issue final orders respecting its outcome.

## A. There Is No Reason to Interpret the Sale Order because the Collateral Was Never Property of the Lehman Bankrupt Estate

Barclays argues that construction of the Bankruptcy Court's Sale Order is necessary to resolve this case. It bases that claim on the following statement made by the Court at oral argument on its Motion to Dismiss:

> [The c]ritical point is whether or not . . . there really is some genuine dispute, as to whether [the securities at issue here] were, in fact, included in the assets that were purchased."

- 11 -

#1541769 v1
109459-67363

Tr. 13:24-14:2 (MacKinnon Decl. Ex. E). Barclays therefore assumes that an "interpretation of the APA, the Clarification Letter Agreement and the Sale Order" (Def.'s Mem. at 2) is essential because "the construction and enforcement of the Sale Order lie at the very heart of FirstBank's claims against Barclays" (Def.'s Mem. at 8).

That is not true. In fact, the Court need not even consider – let alone interpret – the Sale Order (or the APA or Clarification Letter Agreement) to resolve FirstBank's claims. Documentary evidence conclusively establishes that the underlying securities not only belonged to FirstBank up to the moment Lehman filed for bankruptcy, but also, no application was ever made to the Bankruptcy Court under §363(c) of the Bankruptcy Code to foreclose upon that Collateral before the sale to Barclays was made. Barclays cannot, and indeed does not, argue that the trustee "intended" to sell assets that did not belong to Lehman, or that Barclays itself ever "intended" to acquire title to property that did not belong to the bankrupt estate. It should be a simple matter then to determine whether, as FirstBank alleges, the Collateral was not an asset of Lehman at the time of the sale to Barclays, in which event, it should be returned. Such a result would be consistent with both the law and the intent of the contracting parties, Lehman and Barclays.

Neither the bankruptcy court nor a trustee has "power over property that is not part of the bankruptcy estate." *Musso v. Ostashko (In re Ostashko)*, 333 B.R. 625, 635 (S.D.N.Y. 2005), *vacated and remanded on other grounds*, 468 F.3d 99 (2d Cir. 2006); *see also Wersbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 147 B.R. 317, 322 (S.D.N.Y. 1992) ("Because the bond is not part of the bankrupt estate, the trustee, regardless of intent, did not have the authority to enter into a settlement agreement [to distribute the proceeds of that bond]. As a result, the bankruptcy court did not have the authority to enter a final order regarding the

- 12 -

#1541769 v1
109459-67363

stipulation of settlement."). The Bankruptcy Code provides that the trustee may only dispose of

"property of the estate" after "notice and a hearing." 11 U.S.C. § 363(b). The Sale Order could

not have approved nor confirmed a sale of the Collateral to Barclays for the simple reason that it

was not *property of the Lehman bankruptcy estate.* The Complaint alleges that "[a]t all relevant

times hereto, FirstBank held title to the Collateral" (Compl. ¶ 11), and as of the time of the

Lehman bankruptcy petition on September 15, 2008, LBI "did not have any (i) ownership

interest in or other right to claim title to the Collateral or (ii) [a] security interest in the

Collateral" (*id.* ¶ 24), allegations supported by evidence. *See* September 1, 2008 MTM

Statement (Weinberger Decl. Ex. A). Barclays has offered no proof to the contrary along with

its motion here.[10] Thus, the Court can presume that as of the date Lehman filed for bankruptcy,

and then through and including the moment when the APA was executed and the Sale Order

entered, the Collateral was not "property of the estate."

In an analogous case, IBM challenged in this Court patent ownership claimed by a party

pursuant to an agreement and bankruptcy court sale order. *TM Patents, LP v. Int'l Bus. Machs.

Corp.*, 121 F. Supp. 2d 349, 351 (S.D.N.Y 2000) (McMahon, J.). The court pertinently

observed:

> The general principles are not disputed. Under the Bankruptcy Code, a debtor's
> estate consists of, *inter alia*, "all legal or equitable interests of the debtor in
> property as of the commencement of the case." 11 U.S.C. § 545(a)(1). The filing
> of a bankruptcy case does not, and cannot, give a debtor or its creditors greater

---

[10] Even though LBSF had transferred custody (but not title) of its security interest to LBI before the bankruptcy, once LBI entered into liquidation on September 19, 2008, the Lehman bankruptcy trustee would have been required to obtain FirstBank's consent or obtain permission from the Bankruptcy Court, after notice and a hearing, before it could foreclose on the Collateral and take ownership of the underlying securities (thus permitting it to transfer full title to those securities to Barclays). *See* 11 U.S.C. § 363(c)(2). Pursuant to § 363(c)(2), "[t]he trustee may not use, sell, or lease cash collateral . . . unless— (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section." "Cash collateral" includes "securities . . . in which the estate and an entity other than the estate have an interest." *Id.* § 363(a). The Lehman trustee never obtained FirstBank's consent, nor is there any evidence in the record that Lehman obtained permission from the Bankruptcy Court to foreclose on FirstBank's Collateral.

#1541769 v1
109459-67363

rights in property than the debtor had prior to bankruptcy.  *See In re Brown*, 734
F.2d 119, 124 (2d Cir. 1984) (nonetheless affirming debtor's entitlement to avoid
creditor's lien and enjoy exemption under bankruptcy Code); *Old Stone Bank v.
Tycon I Bldg. Ltd. Partnership*, 946 F.2d 271, 276 (4th Cir. 1991).  As a result,
the Bankruptcy Court's jurisdiction "does not extend to property that is not part of
a debtor's estate," *Rutherford Hosp., Inc. v. RNH Partnership*, 168 F.3d 693, 699
(4th Cir. 1999), and even a confirmed bankruptcy plan "cannot furnish anyone
rights to what was not property of the debtor's estate." *Terry Oilfield Supply Co.
v. American Sec. Bank, N.A.*, 195 B.R. 66, 73 (S.D. Tex. 1996).  Thus, the
Bankruptcy Court could not have passed title to the *'773 patent* if Thinking
Machines [the debtor] had no title to pass.

IBM contends that no attempt was actually made in the bankruptcy proceeding to
transfer any rights in Thinking Machines' patents beyond those the debtor
actually owned.  IBM is correct.  The First Amended Joint Plan of Reorganization
transferred only "the Debtor's right title and interest in and to . . . patents and
patent applications of the Debtor" . . . , while the Collateral Patent Assignment
assigned "all of Assignor's right, title and interest" in the patents to TM Creditors.
. . . IBM observes, correctly, that nothing in the "free and clear" language quoted
above from the Final Judgment of the Bankruptcy Court is inconsistent with that,
or expands on the inherent limitation of the Plan and the Collateral Assignment --
namely, that they convey and/or assign *whatever interest the Debtor has, and
nothing more*.

121 F. Supp. 2d at 361 (internal citations to record omitted).

Similarly, in a declaratory judgment suit where a party claimed ownership of a

"certificate of need" to operate a nursing home after it purportedly acquired the certificate (along

with two leases) out of bankruptcy, the Court of Appeals for the Fourth Circuit found that such a

certificate was not transferred because it was not property of the estate.  *Rutherford Hosp., Inc. v.

RNH Partnership*, 168 F.3d 693, 699 (4th Cir. 1999).  The Court said:

While it is of course true that a bankruptcy court's order of confirmation "is
treated as a final judgment with *res judicata* effect," *In re Varat Enterprises, Inc.*,
81 F.3d 1310, 1315 (4th Cir. 1996), a bankruptcy court's jurisdiction does not
extend to property that is not part of a debtor's estate.  *See, e.g., In re Signal Hill-
Liberia Ave. Ltd. P'ship.*, 189 B.R. 648, 652 (Bankr. E.D. Va. 1995) (citing
cases); *In re Murchison*, 54 B.R. 721, 727 (Bankr. N.D. Tex. 1985) (citing cases).
. . . Even if we were to agree with Rutherford that an owner of property
mistakenly sold as part of a debtor's estate may, under certain circumstances, be
estopped from claiming damages for the sale of that property, *see, e.g., In re
Hopkins Corp.*, 76 B.R. 612, 614-15 (Bankr. S.D. Ohio 1987), the fact remains
that the certificate of need that Rutherford now claims it owns was not even in

- 14 -

existence at the time of the 1988 bankruptcy sale, let alone part of ISO's estate, and therefore could not have been conveyed to Rutherford, mistakenly or otherwise.

168 F.3d at 699 (footnote omitted).[11]

There can be no proof that Barclays or Lehman intended that the APA and/or Sale Order would effectively transfer assets that did not belong to Lehman. Indeed, counsel for Barclays represented just the opposite at oral argument on the Motion to Dismiss when he said, "[i]t is the case, and we don't deny it, that the intention was that only assets, the only securities, sold to Barclays would be those that LBI, in fact, owned and had the power to convey." Tr. 14:24-15:3. The Examiner's Report submitted with Barclays' motion confirms this point, as the Examiner states: "The Court did not authorize the transfer of non-debtor assets to Barclays." Examiner's Report at 1961.

Significantly, § 363(b) of the Bankruptcy Code only permits a debtor to sell assets that are "property of the estate." To the extent Barclays may argue that the *bona fide* purchaser provisions in Article 8 of the New York Uniform Commercial Code nevertheless allowed Lehman to convey better title in the Collateral than it held, such a claim would be preempted by the express provisions of the Bankruptcy Code. Indeed, since the Collateral did not belong to

---

[11] *Rutherford* is particularly instructive on the issue of jurisdiction because it is, like the present case, purely a dispute between two non-debtors over ownership of property that was conveyed by a bankrupt estate pursuant to an asset purchase agreement and bankruptcy court sale order. 168 F.3d at 697-99. Specifically, after having purchased the certificate of need from the debtor which had no ownership interest in, and therefore no power to convey, that certificate, Rutherford brought suit in the United States District Court for the Western District of North Carolina – and *not in the bankruptcy court that issued the sale order* – seeking a declaratory judgment that RNH (the actual owner of the rights to the certificate) "is forever barred from asserting that [Rutherford] does not own all right, title and interest in the . . . Certificate of Need or equivalent authorization, free and clear of all liens, claims and interests of [RNH] or any other party." *Id.* at 697 (alterations in original) (internal quotation marks and citation to the record omitted). The district court in North Carolina properly adjudicated that property dispute. The only difference between that case and the present one is that here, FirstBank, a non-party to the APA, has filed suit for return of its property, whereas in *Rutherford*, the plaintiff was a party to the purchase agreement. Thus, FirstBank's relation to the Lehman bankruptcy court proceeding is, if anything, far more attenuated than the plaintiff's relation to the bankruptcy proceedings in *Rutherford*.

- 15 -

#1541769 v1
109459-67363

Lehman, FirstBank was entitled by § 363(c) of the Bankruptcy Code to prior notice and an
opportunity to be heard before its ownership interest in the Collateral could be taken.  Any claim
that title could pass without such notice pursuant to Article 8 of the U.C.C. would be preempted.
*See Murray v. McGraw (In re Bell & Beckwith)*, 821 F.2d 333, 337 (6th Cir. 1987) (recognizing
that Article 8 of the U.C.C. may be applied in the context of a securities transaction  with a
debtor "except insofar as federal bankruptcy or securities law preempts it"); *Montello Oil Corp.
Cities Serv. Co. v. Marin Motor Oil, Inc. (In re Marin Motor Oil Inc.)*, 740 F.2d 220, 223 (3d
Cir. 1984) (noting that "the U.C.C. is a state statute and would be preempted by a contrary
federal statute"); *cf. Eastern Equip. & Servs. Corp.*, 236 F.3d 117, 121 (2d Cir. 2001) (holding
that "federal Bankruptcy Code preempts any state law claims for a violation of the automatic
stay"); *Nelson v. Welch & Crane (In re Repository Techs., Inc.)*, 601 F.3d 710, 723 (7th Cir.
2010) (explaining that "the bankruptcy statutes have significant preemptive force").

There is also no proof that Barclays allocated any portion of the purchase price to each of
the securities that comprised the Collateral, which further belies any serious claim that any
consideration was paid for them specifically.  What is left, then, is an amount paid by Barclays
for "property of the estate," which the Collateral clearly was not.  Since no consideration was
paid for property that belonged to FirstBank, there is no consideration to support the transfer of
the Collateral to Barclays.  The Court need not interpret the Sale Order – or even the Asset
Purchase Agreement or the Clarification Letter Agreement, for that matter – to reach that
conclusion.

Moreover, even where assets were once property of a bankrupt estate (which the
Collateral was not), the bankruptcy court's jurisdiction ends once transfer of those assets is
completed.  It is axiomatic that a bankruptcy court lacks jurisdiction to determine rights to

- 16 -

#1541769 v1
109459-67363

property that is no longer part of the bankrupt estate. *See In re Edwards*, 962 F.2d 641, 643 (7th Cir. 1992). In *Edwards*, a case in which a non-debtor complainant sought a "determination of its right to property that had passed outside th[e bankruptcy] court's control when the property was sold free and clear of all liens," the Seventh Circuit held that "[s]ince the property was no longer part of the bankrupt estate and since a determination of rights to it would not affect any dispute by creditors over property that was part of the bankrupt estate, the bankruptcy court has no jurisdiction to determine rights to the property." *Id.*; *see also Tenet Healthcare Corp. v. Williams (In re Allegheny Health, Educ. & Research Found.)*, 233 B.R. 671, 679 (Bankr. W.D. Pa. 1999) (holding that a bankruptcy court only has "jurisdiction over property of a debtor or a debtor's bankruptcy estate" and such "jurisdiction does not follow the property, but rather, it lapses when the property leaves . . . [a] debtor's estate") (alterations in original). The same holds true here.

The Collateral was delivered to Barclays by Lehman, so no matter what, it is no longer part of the bankrupt estate. Lehman also has no claim to it, as this dispute is only between Barclays and FirstBank. The Bankruptcy Court therefore lacks "core" jurisdiction here.

**B.      The Language of the Asset Purchase Agreement Confirms that Assets that Were Not Property of the Lehman Bankruptcy Estate Were Not Covered by the Bankruptcy Court Sale Order**

The plain language of the APA and the Clarification Letter Agreement confirms that, consistent with the Bankruptcy Code, the parties did not purport to include assets that were not "property of the estate." The Clarification Letter Agreement provides that "[t]he Purchased Assets means (i) all of the assets of Seller [LBI and LBHI] used primarily in the Business (in each case excluding the Excluded Assets) and (ii) *none of the assets of Subsidiaries of LBHI (other than assets of LBI)*." Clarification Letter Agmt. ¶ 1(a) (emphasis added) (MacKinnon Decl. Ex. B). The Clarification Letter Agreement further provides:

- 17 -

#1541769 v1
109459-67363

> "Purchased Assets shall include . . . (A) the securities owned by LBI and
> transferred to Purchaser or its Affiliates under the Barclays Repurchase
> Agreement . . . as specified on Schedule A . . . *; provided, that no securities*
> *owned by LBHI or any Subsidiary of LBHI (other than LBI) and other than as*
> *specified in the [APA] . . . are Purchased Assets.*"

*Id.* ¶ 1(a)(ii) (emphasis added).  Thus, the Clarification Letter Agreement clearly states that even
with respect to assets listed on Schedule A (which, according to Barclays, includes the
Collateral),[12] only those assets owned by LBI qualify as "Purchased Assets".[13]  From the
language of the Clarification Letter Agreement itself then, there can be no doubt the parties
intended the Asset Purchase Agreement was to only cover assets owned by the bankrupt estate,
consistent with the Bankruptcy Code.[14]  Barclays cannot claim otherwise here.

## POINT II

### THIS MATTER IS NOT A REFERABLE NON-CORE PROCEEDING BECAUSE IT IS NOT RELATED TO THE LEHMAN BANKRUPTCY PROCEEDINGS

This case also does not qualify as being "related to" the Lehman bankruptcy proceedings.

FirstBank's state law claims "lie at the core of the historically recognized [Art. III] judicial

---

[12] *See* Exs. F & I to the Decl. of Ari D. MacKinnon in Further Support of Barclays' Motion to Dismiss the
Complaint, dated Apr. 15, 2010.

[13] In a different case, Barclays has read ¶ 1(a) of the Clarification Letter Agreement in precisely this manner.  *See*
Reply Mem. of Barclays Capital Inc. in Further Support of Mot. of Barclays to Enforce Sale Order & Secure
Delivery of All Undelivered Assets ¶¶ 14-15 (D.I. 8076 in *In re Lehman Brothers Holdings Inc.*, No. 08-13555
(JMP) (Bankr. S.D.N.Y. Apr. 5, 2010)) (attached as Exhibit E to the Declaration of Ari D. MacKinnon in Further
Support of Barclays' Motion to Dismiss the Complaint, dated Apr. 15, 2010).  In arguing that Section 1(a)(ii)(B)
entitles Barclays to the securities in LBI's "clearance boxes," Barclays asserted there:

> [it] is not arguing that all assets in the LBI accounts must be transferred; rather, the Clarification
> Letter [Agreement] provides that all assets in the clearance boxes that were *owned by LBI* would
> be transferred. . . . In other words, the Clarification Letter [Agreement] provides that the assets
> "held in LBI 's 'clearance boxes'" are Purchased Assets, *except that it makes clear that assets*
> *owned by LBHI, other Lehman affiliates, or* <u>customers</u> *are not Purchased Assets.*

*Id.* (emphasis in original except bold italics/underline).

[14] The Sale Order includes nothing that bears upon this analysis.  It says nothing more than that it authorizes and
approves the sale of the "Purchased Assets" free and clear of all liens or other adverse claims.  Sale Order ¶ N
(MacKinnon Decl. Ex. C).

- 18 -

#1541769 v1
109459-67363

power." *Marathon,* 458 U.S. at 70. In conformity with the constitutional limitations on the

power of non-Art. III courts to adjudicate matters involving private rights, "related to" or "non-

core" jurisdiction of bankruptcy courts extends only to proceedings whose "outcome might have

any conceivable effect on the bankrupt estate." *Publicker Indus. Inc. v. United States (In re

Cuyahago Equip. Corp.)*, 980 F.2d 110, 114 (2d Cir. 1992); *see also Pacor, Inc. v. Higgins (In re

Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir. 1984), *overruled on other grounds by Things

Remembered Inc. v. Petrarca*, 516 U.S. 124 (1995) (overruling *Pacor* with respect to its holding

that the prohibition against review of a remand order in 28 U.S.C. § 1447(d) does not apply to a

bankruptcy case).

A.     **This Matter is Not Related to the Lehman Bankruptcy Proceedings Because
       Barclays Has No Legitimate Indemnification Claims Against LBI and LBHI, and
       Even if it Did, Those Potential Claims Are Too Speculative To Have Any
       Conceivable Effect On the Bankrupt Estate**

       This case will not affect property of the Lehman estate because it is a dispute between

two non-debtors over which one of them is entitled to certain assets. Nevertheless, Barclays

argues that it is "related to the Lehman Bankruptcy Proceedings because [Barclays] possesses

substantial claims for indemnification that it may pursue by way of impleader against Lehman

entities." Def.'s Mem. at 12. Barclays claims that it "bargained for and obtained a

representation and warranty from LBHI and LBI that they 'own[ed] (directly or indirectly) each

of the Purchased Assets, and [Barclays] will be vested with good and exclusive title to such

Purchased Assets, free and clear of all Liens . . . to the fullest extent permissible under Section

363(f) of the Bankruptcy Code.'" *Id.* (quoting APA § 5.4 (MacKinnon Decl. Ex. A)). This

argument cannot withstand scrutiny. First, if "Purchased Assets" did not include the Collateral

because it was not "property of the estate," then Barclays received no representation from

#1541769 v1
109459-67363

Lehman as it alleges, and has no right to indemnification.[15]  Second, under New York law, a

claim for indemnification does not ripen until a party has suffered a loss, so threats of

indemnification now are premature.  *Pennsylvania Gen. Ins. Co. v. Austin Powder Co.*, 68

N.Y.2d 465, 471 (1986).  Lastly, if Barclays were to prevail, there obviously would be no claim

against Lehman at all.

A theoretical possibility of an indemnification claim in the future does not establish the

"conceivable effect" necessary to impose "related to" bankruptcy court jurisdiction.  *See In re*

*Pacor*, 743 F.2d at 995.  In *In re Pacor*, the leading appellate opinion on "related to"

jurisdiction[16] based upon "conceivable effect" – adopted in the Second Circuit and elsewhere[17] –

the Third Circuit held that a potential third-party indemnification claim against a debtor in a suit

between two non-debtors was not enough to establish "related to" jurisdiction.  *In re* Pacor, 743

F.2d at 995.  The court explained:

> At best, [the primary action between the two non-debtors] is a mere precursor to
> the potential third party claim for indemnification by [the defendant] against [the
> debtor].  Yet the outcome of the [primary action] would in no way bind [the
> debtor], in that it could not determine any rights, liabilities, or course of action of
> the debtor.  Since [the debtor] is not a party to the [primary action between the
> two non-debtors], it could not be bound by *res judicata* or *collateral estoppel*. . . .
> Even if the [primary] dispute is resolved in favor of [the plaintiff] (thereby
> keeping open the possibility of a third party claim), [the debtor] would still be
> able to relitigate any issue, or adopt any position, in response to a subsequent
> claim by [the defendant].  Thus, the bankruptcy estate could not be affected in any

---

[15] If the Court reaches the conclusion described above, then Barclays may also be estopped from relitigating this issue with Lehman.  "Defensive use of collateral estoppel occurs when a defendant seeks to prevent a plaintiff from relitigating an issue the plaintiff has previously litigated unsuccessfully in another action against the same or a different party."  *United States v. Mendoza*, 464 U.S. 154, 159 n.4 (1984).  Mutuality of parties is not a requirement for the use of defensive collateral estoppel.  *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326-31 (1979).  "Nonmutual collateral estoppel refers to the situation in which one party is barred from relitigating an issue decided in a previous proceeding, where the parties were not the same in the prior proceeding."  *United States v. Ustica*, 847 F.2d 42, 49 n.14 (2d Cir. 1988).  That would be the situation presented under Barclays' hypothetical third-party indemnification claim.

[16] *See TransAmerica Fin. Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 302 B.R. 620, 625 (N.D. Iowa 2003).

[17] *See In re Cuyahago Equip. Corp.*, 980 F.2d at 114.

#1541769 v1
109459-67363

way until the [defendant-debtor] third party action is actually brought and tried.

*Id.*[18]

Similarly, in *TransAmerica Financial Life Insurance Company v. Merrill Lynch & Co.,*

*Inc.*, a case between two non-debtors in which the defendant also had a theoretical

indemnification claim against the debtor if it lost, the court explained:

> Defendants . . . argue that "related to" jurisdiction exists here because Defendants
> have indemnification and contribution rights against Enron arising out of
> Plaintiffs' claims.  The Court finds that even though indemnification and
> contribution claims against Enron are conceivable in the future, they have not yet
> accrued and would require another lawsuit before they could have an impact on
> Enron's bankruptcy proceeding.  The current action is only a precursor to the
> potential contribution claim. *See, e.g., Pacor*, 743 F.2d at 995.  Speculative,
> theoretical claims are not sufficient to show "related to" bankruptcy jurisdiction.
> *See In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 380 (3d Cir. 2002) ("related
> to bankruptcy jurisdiction will not extend to a dispute between non-debtors unless
> that dispute, by itself, creates at least the logical possibility that the estate will be
> affected"); *In re FedPak Systems, Inc.*, 80 F.3d 207, 214 (7th Cir. 1996) ("related
> to" language is to be interpreted broadly; it is primarily intended to encompass
> actions by and against the debtor that, but for the bankruptcy, would be ordinary
> stand-alone lawsuits between the debtor and others).

302 B.R. at 626.  Barclays' threat to someday seek to assert an indemnification claim against

Lehman if it ripens does not establish "related to" jurisdiction now.

**B.    FirstBank Did Not Submit to the Bankruptcy Court's Jurisdiction by Filing a Claim
in the SIPC Liquidation of LBI**

Barclays also argues, without citing to any authority, that "FirstBank has submitted to the

Bankruptcy Court's jurisdiction by filing a claim in the SIPC liquidation of LBI, and by seeking

other relief in the chapter 11 proceedings of LBHI."  Def.'s Mem. at 2.  However, the submission

---

[18] In *Allegheny Health*, a case which Barclays relies upon for its indemnification argument, the bankruptcy court
explicitly distinguished its facts from those in *Pacor*.  233 B.R. at 679-80.  The court explained that, unlike the
contingent indemnification claim in *Pacor*, the debtors in *Allegheny Health* "agreed and contractually bound
themselves to 'indemnify, defend[,] and hold harmless'" the purchasers from any adverse claim relating to title to
the assets purchased from the bankrupt estate.  *Id.* at 679.  Hence, in *Allegheny Health*, the purchaser's right to
indemnification was automatic, whereas in the present matter, as in *Pacor*, there is no such broad contractual right to
automatic indemnification.  As *Pacor* clearly demonstrates, a contingent future indemnification claim is too
attenuated to establish "related to" jurisdiction.

- 21 -

#1541769 v1
109459-67363

of a proof of claim to protect rights as a potential creditor does not change the character of a

separate action against a non-debtor.  The court in *TransAmerica*, *supra*, when faced with the

same argument Barclays makes here, explained:

> Defendants contend bankruptcy "related to" jurisdiction exists here because
> Plaintiffs seek to recover the same alleged losses in this case and in the Enron
> bankruptcy case.  In this case, Enron is not named as a party.  Defendants attempt
> to show a relation to the Enron bankruptcy by pointing out that certain of the
> Plaintiffs have filed proofs of claims in the Enron bankruptcy case.  Defendants
> contend that this participation in and filing of proofs of claims in the Enron
> bankruptcy proceeding constitutes the requisite "related to" jurisdiction because
> an award in this lawsuit will reduce their claims in bankruptcy court, such that
> recovery in bankruptcy court would reduce the award of damages here.  The
> Court disagrees.  The present action is brought by a non-debtor against non-
> debtors.  A recovery by Plaintiffs will not directly affect Enron's bankruptcy
> estate.

302 B.R. at 625-26.  The fact that FirstBank filed a proof of claim in the SIPC liquidation is not

sufficient to establish "non-core" jurisdiction. [19]

## C.     Efficiency Considerations Counsel Against Referral To the Bankruptcy Court

Even if there was a basis upon which the Court could find "related to" jurisdiction here,

efficiency considerations would nevertheless justify the retention of jurisdiction by the District

Court.  Although a Court has no discretion to refer a case that is neither a core proceeding nor

"related to" a bankruptcy proceeding, the Court of Appeals for the Second Circuit has recognized

that a district court does have the inherent discretion to retain "related to" matters where

efficiency considerations favor doing so.  In *In re Orion Pictures Corp.*, the Court of Appeals

emphasized that in deciding whether to withdraw a reference to a bankruptcy court, a district

court "should weigh questions of efficient use of judicial resources, delay and costs to the

---

[19] There are cases that hold that the filing of suit against a debtor as well as third parties in bankruptcy court may
preclude independent actions against the third parties, *see, e.g.*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-
59 (1989); *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990); *In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 707
(2d Cir. 1995), but those cases are inapposite.  FirstBank has not filed a separate suit against LBI or LBHI that
relates to its claim in the SIPC liquidation of LBI, but rather has filed an independent suit only against Barclays.

#1541769 v1
109459-67363

parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other

related factors."  4 F.3d 1095, 1101-02 (2d Cir 1993).[20]  These factors weigh heavily in favor of

this Court retaining jurisdiction here.

First, in "non-core" matters, a bankruptcy court may issue findings of fact and

conclusions of law, but is not empowered to issue final orders or judgments.  *See* 28 U.S.C. §

157(c)(1); *In re CIS Corp.*, 172 B.R. at 754-55.  Rather, the bankruptcy court's determinations in

"related to" proceedings are subject to mandatory *de novo* review by the district court.  *See* 28

U.S.C. § 157(c)(1); *see also Eastern Air Lines*, 121 B.R. at 432 n.5.  This favors retention of

jurisdiction here.  *See In re Orion Pictures*, 4 F.3d at 1101 (explaining that "the fact that a

bankruptcy court's determination on non-core matters is subject to *de novo* review by the district

court could lead the latter to conclude that in a given case unnecessary costs could be avoided by

a single proceeding in the district court"); *see also In re CIS Corp.*, 172 B.R. at 755 ("The fact

that an adversary proceeding concerns non-core matters for which the right to a jury trial is

available is sufficient cause for discretionary withdrawal of reference under § 157(d).").

FirstBank also has demanded trial by jury.  "It is basic law that actions for the recovery of

property, even where title to the property is disputed, are actions traditionally at law affording

the right to a jury trial."  *In re CIS Corp.*, 172 B.R. at 762; *see also Whitehead v. Shattuck*, 138

U.S. 146, 151 (1891) ("The right which in this case the plaintiff wishes to assert is his title to

---

[20] Barclays claims that pursuant to Standing Order M-61, dated July 10, 1984, "[t]he Southern District of New York
has exercised the full measure of its statutory authority by" referring "both 'arising in' and 'related to' cases to the
Bankruptcy Court."  Def.'s Mem. at 5.  Yet, as Barclays concedes, *see* Def.'s Mem. at 14, several courts in this
District have exercised discretion in deciding whether to refer cases even where they may have been "related" to a
bankruptcy court proceeding.  *See, e.g., Worldcom Network Servs., Inc. v. Wael Al-Khatib*, No. 96 Civ. 4492, 1998
U.S. Dist. LEXIS 427, at *10-11 (S.D.N.Y. Jan. 22, 1998).  Moreover, the Second Circuit's decision in *In re Orion
Pictures Corp*, 4 F.3d at 1101, leaves no doubt that the district court may withdraw a reference to the bankruptcy
court under 28 U.S.C. § 157(d) based upon such considerations, and it would be illogical to conclude that a court
should not consider the same discretionary factors when determining whether or not to make a referral in the first
place.

#1541769 v1
109459-67363

certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury."). The Court of Appeals for the Second Circuit has held that the Constitution prohibits bankruptcy courts from conducting jury trials of non-core matters. *See In re Orion Pictures*, 4 F.3d at 1101.

Moreover, this Court has already reviewed and considered extensive briefing by the parties, and in the process, become educated about and developed a "clear understanding of the parties' positions." Tr. 97:9-11. That the Bankruptcy Court may also be familiar with the Asset Purchase Agreement and the Sale Order in other contexts does not make it "well acquainted with the subject matter underlying *this* litigation." Def.'s Mem. at 15 (emphasis added). Indeed, none of the matters currently before the Bankruptcy Court concern competing claims of title to assets between non-debtors, like this one. For example, the motions of LBHI and Barclays concerning the APA and the Sale Order are direct claims by the debtor where the benefit of the claims will be to the estate, and the parties to the action are in privity of contract with each other. In addition, the pending motions in the Bankruptcy Court deal with different issues under the APA, having no bearing on this case. Indeed, an issue being considered in those motions is whether the APA may be limited or superseded by the terms of a letter between the Depository Trust & Clearing Corporation ("DTCC"), Barclays and the Lehman trustee.[21] That DTCC letter has no bearing whatsoever on FirstBank's claims against Barclays here.

The other "related" case to which Lehman refers, *see* Def.'s Mem. at 3, is *Evergreen Solar, Inc. v. Barclays PLC*, Adv. Proc. No. 08-01633 (JMP). *See* Letter from Boaz S. Morag to Jeffrey A. Mitchell, dated June 4, 2010 (Weinberger Decl. Ex. C). That case concerns claims

---

[21] *See* Reply Mem. of Barclays Capital Inc. in Further Support of Mot. of Barclays to Enforce Sale Order & Secure Delivery of All Undelivered Assets (D.I. 8076 in *In re Lehman Brothers Holdings Inc.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Apr. 5, 2010)) (attached as Exhibit E to the Declaration of Ari D. MacKinnon in Further Support of Barclays' Motion to Dismiss the Complaint, dated Apr. 15, 2010).

#1541769 v1
109459-67363

directly against the debtors,[22] and has nothing to do with FirstBank's Collateral or the facts at

issue here.  The progress of that matter (*or lack thereof* – a motion to dismiss has been pending

since January of 2009) does not suggest that any efficiencies would be gained by having

FirstBank's claims considered along with it.

Ultimately, as Barclays knows, referral of this case to the Bankruptcy Court would delay

resolution of FirstBank's claims because they would get needlessly intertwined with other more

complicated matters which actually concern the administration of the Lehman bankruptcy estate.

That is not a reason to refer this case to the Bankruptcy Court.  To the contrary, it is a compelling

reason for this Court to retain jurisdiction over FirstBank's claims against Barclays.

## **CONCLUSION**

For the foregoing reason, FirstBank respectfully requests that the Court deny Barclays'

Motion to Refer this Action to the Bankruptcy Court.


Dated: New York, New York
       June 30, 2010

                                        Respectfully submitted,

                                        GIBBONS P.C.


                                        By:  /s/ Jeffrey A. Mitchell
                                            Jeffrey A. Mitchell
                                            Daniel S. Weinberger
                                            *Attorneys for FirstBank Puerto Rico*
                                            One Pennsylvania Plaza, 37th Floor
                                            New York, New York 10119
                                            Tel.: (212) 613-2000
                                            Fax: (212) 554-9696

---

[22] *See* Verified Am. Compl., dated December 12, 2008 (D.I. 22 in *Evergreen Solar, Inc. v. Barclays PLC*, Adv. Proc.
No. 08-01633 (JMP) (Bankr. S.D.N.Y.)) (attached as Exhibit D to the Weinberger Decl.).

#1541769 v1
109459-67363