UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X
              :
FIRSTBANK PUERTO RICO,            :
              :    09 Civ. 10317 (GBD)
        Plaintiff,             :
              :
        - against -            :
              :
BARCLAYS CAPITAL INC.,            :
              :
        Defendant.          :
              :
------------------------------------------------------------------------ X

**REPLY MEMORANDUM OF LAW OF BARCLAYS
CAPITAL INC. IN FURTHER SUPPORT OF
ITS MOTION TO REFER THIS ACTION TO THE BANKRUPTCY COURT**

                                        CLEARY GOTTLIEB STEEN & HAMILTON LLP
                                        One Liberty Plaza
                                        New York, New York 10006
                                        (212) 225-2000

                                        Attorneys for Barclays Capital Inc.

Of Counsel:

    Lindsee P. Granfield
    Boaz S. Morag

# **TABLE OF CONTENTS**

|  | Page |
|---|---:|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| ARGUMENT | 2 |
| POINT I | |
| THIS CASE ARISES IN THE LEHMAN BANKRUPTCY PROCEEDINGS | 2 |
|     A. This Court Already Has Determined That This Case Turns On The Construction Of The Sale Order And Transaction Documents | 2 |
|     B. The Court Should Decline FirstBank's Invitation To Opine Whether The Securities Were Property Of The Lehman Estates | 4 |
| POINT II | |
| THIS LITIGATION IS RELATED TO THE LEHMAN BANKRUPTCY PROCEEDINGS | 8 |
|     A. Barclays' Substantial Indemnification Claims Give Rise To Related To Jurisdiction | 8 |
|     B. Efficiency Considerations Support Referral | 9 |
| CONCLUSION | 10 |

# TABLE OF AUTHORITIES

**Page(s)**

**Rules and Statutes**

| | |
|---|---|
| 11 U.S.C. § 362(a)(3) | 5 |
| 11 U.S.C. § 362(d)(2)(A) | 5-6 |
| 11 U.S.C. § 362(g)(1) | 5-6 |
| 11 U.S.C. § 362(p)(2) | 6 |
| 28 U.S.C. § 157(a) | 4, 10 |
| 28 U.S.C. § 157(b)(1) | 4 |

**Cases**

| | |
|---|---|
| IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat), 338 B.R. 574 (Bankr. S.D.N.Y. 2005) | 9 |
| Jam. Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.), 458 F.3d 92 (2d Cir. 2006) | 4 |
| Knopfler v. Schraiber (In re Schraiber), 97 B.R. 937 (Bankr. N.D. Ill. 1989) | 5 |
| Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380 (2d Cir. 1997) | 5 |
| Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383 (5th Cir. 2010) | 9 |
| Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223 (2d Cir. 2002) | 4 |
| Musso v. Ostashko 468 F.3d 99 (2d Cir. 2006) | 6 |
| N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 293 B.R. 308 (S.D.N.Y. 2003) | 9 |
| Rutherford Hosp., Inc. v. RNH P'Ship, 168 F.3d 693 (4th Cir. 1999) | 6-7 |

TM Patents, L.P. v. Int'l Bus. Machs., Inc.,
121 F. Supp. 2d 349 (S.D.N.Y. 2000) .................................................................................. 6

Travelers Indem. Co. v. Bailey,
129 S. Ct. 2195 (2009) ........................................................................................................... 4

Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.,
147 B.R. 317 (S.D.N.Y. 1992) .............................................................................................. 6

Williams v. McGreevey (In re Touch Am. Holdings, Inc.),
401 B.R. 107 (Bankr. D. Del. 2009) ..................................................................................... 5

Barclays Capital Inc. ("Barclays") respectfully submits this reply memorandum of law in further support of its motion to refer this action to the Bankruptcy Court.[1]

## PRELIMINARY STATEMENT

The question on this motion is whether the Bankruptcy Court should resolve the "dispositive" issue, as identified by Your Honor. Specifically, should the Bankruptcy Court that shepherded the Sale Transaction and retained jurisdiction to resolve all disputes about its Sale Order determine the "dispositive," factual question of whether the securities in dispute "were purchased assets that were agreed to be sold and were, in fact, included in the assets that were approved by the [B]ankruptcy [C]ourt"?[2] As framed by this Court, the resolution of this case requires the interpretation of the transaction documents and the Sale Order to determine whether LBHI, LBI, and Barclays intended that the twenty CUSIPs at issue be included on Schedule A to the Clarification Letter Agreement as "Purchased Assets." Thus, this case "arises in" the Sale Order and should be referred to the Bankruptcy Court as a core bankruptcy proceeding.

Further, if FirstBank prevails, Barclays will have to part with over $50 million of securities from the larger portfolio of securities that LBI transferred to it in exchange for $45 billion in cash from Barclays.[3] That loss would give rise to an indemnification claim by Barclays against the Lehman debtors that necessarily is "related to" the administration of the Lehman estates, and for that reason as well, this case should be referred to the Bankruptcy Court,

---

[1] Unless otherwise indicated, terms have the definitions set forth in Barclays' opening brief in support of its motion to refer, dated May 28, 2010 ("Def. Br.").

[2] Tr. at 97 (Declaration of Ari D. MacKinnon ("MacKinnon Decl.") Ex. A). Unless otherwise noted, all referenced exhibits are appended to the MacKinnon Decl.

[3] See Examiner's Report at 2165-67 (noting that Barclays agreed to pay and actually paid $45 billion in Repo transaction) (Ex. B); see also Clarification Letter Agreement ¶ 13 (indicating that securities LBI initially transferred as part of the Repo transaction became Purchased Assets, and terminating Barclays' obligation to return such securities and LBI's obligation to return $45 billion in cash) (Ex. C).

where FirstBank's claims and Barclays' indemnification claim can be resolved in a single proceeding.

In response, FirstBank seeks to divert attention away from the factual issue that Your Honor identified and FirstBank accepted as "dispositive" during oral argument on April 29, 2010. See Tr. at 105 ("based upon [Y]our Honor's decision today . . . the claim in the case is . . . was this a purchased asset") (Ex. A). In particular, FirstBank asks this Court to conclude as a matter of law that the Securities were never property of the LBHI or LBI estates and therefore could not have been Purchased Assets. There is no basis for such a conclusion. Regardless, FirstBank invites this Court to decide what constituted property of the Lehman estates by asking it to apply the Bankruptcy Code, e.g., 11 U.S.C. §§ 105(a), 363(b), 363(c), 363(c)(2) and 545(a)(1), while simultaneously asserting that the Bankruptcy Court has no role in this case. See Mem. of FirstBank in Opp'n to Mot. to Refer ("Pl. Br.") at 1, 3, 4 & 13. The Bankruptcy Court plainly has jurisdiction over this case – whether the dispositive issue is as framed by the Court or as argued by FirstBank – and this matter should be referred to that court under Standing Order M-61.

## ARGUMENT

## POINT I

## THIS CASE ARISES IN THE LEHMAN BANKRUPTCY PROCEEDINGS

**A.  This Court Already Has Determined That This Case Turns On The Construction Of The Sale Order And Transaction Documents**

This Court already has concluded that the "critical" and "dispositive" issue in this case is whether LBI transferred the twenty CUSIPs that match the Securities[4] intentionally as

---

[4]   Barclays does not concede that FirstBank's collateral has been transferred to it. Because of the fungibility of securities bearing a given CUSIP, to the extent that Barclays received securities sharing the

2

part of the Purchased Assets or by mistake. Determining the intent of the parties to the Sale Transaction requires an examination of the APA, as clarified by the Clarification Letter Agreement and Schedule A thereto. Barclays' position is that the thousands of securities listed on Schedule A were subject to review by Lehman and several drafts before they were filed with the Bankruptcy Court[5] and that all the CUSIPs listed on Schedule A, including the twenty securities whose CUSIPs are claimed by FirstBank, are "Purchased Assets." See Clarification Letter Agreement ¶ 1(a)(ii)(A) (Ex. C).[6] FirstBank, a stranger to the Sale Transaction and its documentation, reads the Clarification Letter Agreement, contrary to its plain terms, to limit the scope of the securities listed on Schedule A that are Purchased Assets to those that LBI owned and had the power to convey. Pl. Br. at 17-18. FirstBank is wrong, but for purposes of this motion, even FirstBank's position necessitates an interpretation of the transaction documents and the Sale Order approving them. The Bankruptcy Court indisputably had core jurisdiction to enter the Sale Order and any disputes requiring an interpretation of that order and its underlying transaction documents "arise in" the Sale Order and are within the core jurisdiction of the

---

same CUSIPs as FirstBank's Securities, such securities may not have been the exact securities that FirstBank alleges it originally transferred to a Lehman entity.

[5] See Examiner's Report at 2000-01 (indicating that "a number of days elapsed after the sale closing during which Barclays, the SIPA Trustee and the Debtors continued to negotiate and reconcile precisely which securities had been transferred to Barclays as part of the sale . . . [and] finally settled upon the securities that were supposed to comprise Schedule A") (Ex. B).

[6] FirstBank suggests that Barclays has adopted a different reading of the Clarification Letter Agreement in the Rule 60 proceedings currently pending before the Bankruptcy Court. See Pl. Br. at 18 n.13. That suggestion is based on a truncated reading of Barclays' position. Read in context, Barclays simply was arguing that with respect to the "clearance box" assets that were listed on Schedule B but not delivered in their entirety, Barclays' claim to undelivered securities was limited to those owned by LBI, as the "clearance box" at times contained customer securities and affiliate securities. See Reply Mem. Law of Barclays Capital Inc. in Further Supp. of Mot. of Barclays to Enforce Sale Order & Secure Delivery of All Undelivered Assets ¶¶ 14-15 (Ex. D).

3

Bankruptcy Court.  Travelers Indem. Co. v. Bailey, 129 S. Ct. 2195, 2205 (2009) ("[T]he Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").

FirstBank fails to address, let alone distinguish, the numerous decisions from the Second Circuit and elsewhere cited in Barclays' opening brief that hold that a dispute turning on the interpretation or construction of a bankruptcy court sale order "aris[es] in . . . a case under title 11," 28 U.S.C. § 157(a), and is thus within the core jurisdiction of the bankruptcy court, id. § 157(b)(1).  E.g., Jam. Shipping Co. v. Orient Shipping Rotterdam, B.V. (In re Millenium Seacarriers, Inc.), 458 F.3d 92, 95 (2d Cir. 2006) (actions that "turn[] on the terms of the Sale Order, amount[] to a request that the bankruptcy court enforce that order," and therefore, constitute core proceedings); Luan Inv. S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 231 (2d Cir. 2002) (dispute "uniquely affected and was uniquely affected by core bankruptcy functions because the dispute . . . was based on rights established in the sale order . . . .").  See Def. Br. at 7-8 (citing additional cases).  The need to ascertain whether the Securities are Purchased Assets within the meaning of the Sale Order commits this dispute to the core jurisdiction of the Bankruptcy Court.

**B.      The Court Should Decline FirstBank's Invitation To Opine Whether The Securities Were Property Of The Lehman Estates**

Conceding by its silence that the motion to refer would have to be granted if the "dispositive" issue in this case is as Your Honor framed it, FirstBank tries to change the subject. Although FirstBank previously accepted that the dispositive factual issue is whether the Securities "[were] a purchased asset," Tr. at 105 (Ex. A), it now insists that the critical issue in this case is whether the Securities ever were property of the Lehman estates.  FirstBank is wrong that the "property" issue is dispositive, yet in making this argument it confirms that this case should be referred to the Bankruptcy Court.

4

Whether the Securities were property of the LBI estate when it allegedly transferred twenty of them to Barclays is hardly dispositive of anything. If the transferred Securities are Purchased Assets, then even if they were not property of the LBI estate, the Sale Order protects Barclays and precludes FirstBank's claims. See Sale Order ¶¶ N, S, 4 (Ex. E); see also Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 392 (2d Cir. 1997) (whether certain property was "part of the estate and whether the bankruptcy court erroneously authorized the sale of property outside the scope of that estate are questions that are now moot" under § 363(m) of the Bankruptcy Code because sale was not stayed). Further, absent notice to Barclays of FirstBank's adverse claim – which FirstBank does not even adequately plead – section 8-510(a) of the U.C.C. precludes any argument that LBI did not have the authority to transfer the Securities. See Mem. in Supp. of Barclays' Mot. to Dismiss at 15-20 (D.I. 12). Thus, the Court was correct when it observed that the "dispositive" issue is whether the Securities are Purchased Assets, not whether they were property of the LBI estate.

In any event, FirstBank's "property of the estate" argument merely reinforces the jurisdiction of the Bankruptcy Court over this case. Whether an asset is "property of the estate" is quintessentially a question falling within the core jurisdiction of the Bankruptcy Court. See Williams v. McGreevey (In re Touch Am. Holdings, Inc.), 401 B.R. 107, 117 (Bankr. D. Del. 2009) (collecting cases); Knopfler v. Schraiber (In re Schraiber), 97 B.R. 937, 939-40 (Bankr. N.D. Ill. 1989) (same). The Bankruptcy Code establishes a presumption that a debtor who possesses property is the owner of that property by erecting an automatic stay of "any act to obtain possession of property of the estate or of property from the estate." 11 U.S.C. § 362(a)(3) (emphasis added). After a bankruptcy is commenced, the bankruptcy court may lift the stay if "the party requesting . . . relief [from the stay]" satisfies the "burden of proof on the issue of the

5

debtor's equity in [the] property." Id. §§ 362(d)(2)(A), 362(g)(1); see also id. § 363(p)(2) (providing that "the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest"). Thus, LBI presumptively had an interest in the Securities and FirstBank has the burden of negating that presumption.

In asserting that LBI had no interest in the Securities, FirstBank asks this Court to rely on provisions of the Bankruptcy Code whose application is within the core jurisdiction of the Bankruptcy Court. See Pl. Br. at 1, 3, 4 & 13 (invoking §§ 105(a), 363(b), 363(c), 363(c)(2) and 545(a)(1) of the Bankruptcy Code). Although FirstBank cites a handful of cases noting that the bankruptcy court has no jurisdiction over property that is not part of a debtor's estate, Pl. Br. at 12-15, these decisions support referral to the Bankruptcy Court for it to determine whether the Securities belonged to the Lehman estates. Indeed, in two of FirstBank's cases, the bankruptcy court was the one that determined the status of the property at issue in the first instance. See Musso v. Ostashko, 468 F.3d 99, 109 (2d Cir. 2006) (district court erred in overturning bankruptcy court's determination as to ownership of contested property);[7] Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd., 147 B.R. 317, 322 (S.D.N.Y. 1992) (upholding on clear-error review bankruptcy court's finding that certain assets were not part of the bankrupt estate). In the other two cases cited by FirstBank, the ownership question arose after the bankruptcy proceedings had closed, leaving the bankruptcy court no opportunity to opine on the matter. See TM Patents, L.P. v. Int'l Bus. Machs., Inc., 121 F. Supp. 2d 349, 361 (S.D.N.Y. 2000) (acknowledging that "the Bankruptcy Court had jurisdiction to resolve disputes over the debtor's ownership to any particular estate asset," but holding that parties had not requested that Bankruptcy Court decide ownership issue); see also Rutherford Hosp., Inc. v.

---

[7] FirstBank cites the district court's opinion, which was overturned by the Second Circuit. See Pl. Br. at 12 (citing Musso v. Ostashko (In re Ostashko), 333 B.R. 625, 636 (E.D.N.Y. 2005)).

6

RNH P'Ship, 168 F.3d 693, 700 (4th Cir. 1999) (upholding district court's finding in declaratory judgment action brought eight years after bankruptcy sale that estate did not own certificate of need to operate nursing home). To assert that the Securities were not property of the LBI estate is to raise an issue at the heart of the Bankruptcy Court's core jurisdiction, which the Bankruptcy Court may resolve in the pending Lehman Bankruptcy Proceedings if necessary to this case.

Finally, even if this Court were to delve into LBI's rights in the Securities, it should decline FirstBank's invitation to find that the Securities never were property of any Lehman estate.[8] There is ample evidence in the record in this case[9] showing that the Securities were property of the LBI estate when it allegedly transferred them to Barclays on September 18, 2008:

- LBI warranted that it owned twenty securities sharing the same CUSIPs as the Securities by placing them on Schedule A and transferring them to Barclays.

- FirstBank does not deny that the ISDA Agreement permitted LBSFI without prior notice to "sell, pledge, rehypothecate, assign, invest, use, commingle or otherwise dispose of, or otherwise use in its business any Posted Collateral it holds, free from any claim or right of any nature whatsoever of the Pledgor including any equity or right of redemption by the Pledgor."[10]

---

[8]  As an initial matter, FirstBank does not prove its point with evidence; instead it pretends that the Court continues to be bound to accept the truth of the allegations of the complaint, Pl. Br. at 5, even though this is not a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and even though Barclays has filed an Answer controverting all of FirstBank's material allegations. See Def. Answer ¶¶ 11, 20, 24, 25, 35-37, 39, 43, 51 (D.I. 26) (denying or lacking knowledge, which operates as a denial under Federal Rule of Civil Procedure 8(b)(5)). FirstBank also tries to foist on Barclays the burden of "presenting evidence" on this motion, as if Barclays were moving for summary judgment, Pl. Br. at 2, 4, when the only issue is which court should adjudicate FirstBank's claims.

[9]  Barclays' Notice of Motion makes clear that its motion to refer rests upon "all attached exhibits, the accompanying Memorandum of Law, the pleadings, prior hearing transcripts, and all other papers in this case." See Notice of Motion to Refer this Action to Bankruptcy Court, dated May 28, 2010, at 1 (D.I. 29). For ease of reference, all cited documents are exhibited to the MacKinnon Decl. See supra note 2.

[10]  Credit Support Annex to the Schedule to the ISDA Agreement ¶ 6(c)(i) (Ex. F); see also id. ¶ 13(g)(ii) ("The provisions of Paragraph 6(c) will apply to Party A [i.e., LBSFI] and Party B [i.e., FirstBank]."). See Mem. of FirstBank in Opp'n to Mot. to Dismiss at 13 n.10 (D.I. 16) (whether LBSFI in fact rehypothecated the collateral is an issue of fact).

7

- The mere fact that the account statement from LBSFI (Declaration of Daniel S. Weinberger ("Weinberger Decl.") Ex. A) identifies the Securities as FirstBank's collateral does not mean that LBSFI had not exercised its contractual right, pursuant to the ISDA Agreement, to dispose of the Securities, including by transfer to LBI.[11]

- FirstBank's actions are diametrically contrary to its litigation position. For a year after September 2008 FirstBank claims it understood its Securities were with LBSFI, yet it made no application to the Bankruptcy Court to have its property returned to it. Even today, FirstBank has made no such application with respect to those of its Securities that are not on Schedule A. If no Lehman entity had any rights in FirstBank's collateral – as FirstBank asks this Court to find – FirstBank would have made that motion and gotten its Securities back long ago.

The law and the facts simply do not support FirstBank's position.

## POINT II

## THIS LITIGATION IS RELATED TO THE LEHMAN BANKRUPTCY PROCEEDINGS

### A.  Barclays' Substantial Indemnification Claims Give Rise To Related To Jurisdiction

If Barclays is adjudged liable to deliver to FirstBank more than $50 million worth of securities, then Barclays would possess substantial indemnification claims against LBHI and LBI. Barclays paid $45 billion to LBI for the pool of securities that included 20 securities with CUSIPs matching FirstBank's Securities, valued by FirstBank at more than $50 million. Regardless of whether LBI had the power to convey these securities to Barclays, LBI certainly believed it did and intended to include the $50 million value in the pool of what it provided Barclays in exchange for $45 billion. If FirstBank were to prevail on its claims, Barclays would be left $50 million short and would possess indemnification claims against LBHI or LBI.

FirstBank contends that Barclays' indemnification claims are overly speculative because, under New York law, such claims do not ripen until Barclays has suffered a loss. Pl. Br. at 20. FirstBank further argues that a theoretical possibility of an indemnification claim in the future cannot give rise to "related to" jurisdiction. Id. (citing Pacor, Inc. v. Higgins (In re

---

[11]  See supra note 10.

8

Pacor, Inc.), 743 F.2d 984, 995 (3d Cir. 1984)). This line of argumentation is a non-starter because, as Barclays clarified in its opening brief, see Def. Br. at 13, contingent indemnification claims create "related to" jurisdiction in this Circuit so long as there is a reasonable basis for such claims. See N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.), 293 B.R. 308, 323-24 (S.D.N.Y. 2003); IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat), 338 B.R. 574, 579-80 (Bankr. S.D.N.Y. 2005). FirstBank has presented no authority from this District or Circuit to contradict the authorities Barclays cited and has ignored persuasive cases from other jurisdictions as well. See In re WorldCom, Inc. Sec. Litig., 293 B.R. at 318-24 (collecting cases for position that "related to" jurisdiction arises if there is a reasonable basis for indemnification claims against debtor); see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010) (rejecting plaintiffs' contention that "related to" jurisdiction arises only if claims for indemnification already have accrued).

This Court previously observed that it could not dismiss the possibility that Barclays would possess viable third-party claims against Lehman entities in the event that FirstBank prevailed on its suit. Tr. at 105-06 (Ex. A). FirstBank has offered nothing to warrant the Court's alteration of its prior assessment of this issue.

B.    **Efficiency Considerations Support Referral**

FirstBank also contends that efficiency considerations counsel against referral, largely because (1) this case is a non-core matter so the Bankruptcy Court's determinations would be subject to de novo review and (2) FirstBank has requested a jury trial. Pl. Br. at 23. This is a "core" matter as there is "arising in" jurisdiction, which renders all of FirstBank's efficiency points academic. Even if the claims gave rise only to "related to" jurisdiction, however, the factors cited by FirstBank are present in every case in which the plaintiff has requested a jury trial. As Barclays set forward in its opening brief, there are countless cases in

9

which bankruptcy courts handle pretrial proceedings in non-core matters in which a jury trial has been requested. See Def. Br. at 13-14, 17 (collecting cases). FirstBank has not bothered to address these decisions, nor has it offered any response to Barclays' contention that this matter may be resolved in its entirety only if it is referred to the Bankruptcy Court because Barclays may assert its indemnification claims only in that court. Id. at 15-16. FirstBank's suggestion that referral would delay the progress of this case is rank speculation. See Pl. Br. at 25.

Moreover, FirstBank minimizes the extent to which the Bankruptcy Court presently is considering similar matters that provide it with substantial insight into the issues at dispute. In Evergreen Solar, Inc. v. Barclays PLC, Adv. Proc. No. 08-01633 (JMP), the plaintiff has sued Barclays in the Bankruptcy Court, alleging that as part of the Sale Transaction LBI conveyed to Barclays certain securities that LBI had no right to transfer because they were held only as part of a share-lending agreement. See Verified Am. Compl. ¶¶ 15, 25 (Bankr. S.D.N.Y. Oct. 20, 2008) (D.I. 1) (Weinberger Decl. Ex. D). FirstBank brushes this case aside, indicating that it involves claims also brought against the debtor and has nothing to do with FirstBank's Securities. Pl. Br. at 24-25. But the preclusive effect of the Sale Order and the provisions of Article 8 of the U.C.C. are central issues in the Evergreen Solar case just as they are in this case.

As presently framed by this Court, this case essentially turns on whether the Sale Order includes the Securities among the Purchased Assets. The Bankruptcy Court is the proper forum and is in the best position to expeditiously resolve that question.

## CONCLUSION

Under 28 U.S.C. § 157(a) and Standing Order M-61, this litigation should be referred to the Bankruptcy Court.

Dated: New York, New York
      July 16, 2010

                      Respectfully submitted,

                      CLEARY GOTTLIEB STEEN & HAMILTON LLP

                      By:     /s/ Lindsee P. Granfield
                            Lindsee P. Granfield
                            Boaz S. Morag

                      One Liberty Plaza
                      New York, New York 10006
                      (212) 225-2000

                      Attorneys for Barclays Capital Inc.