WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                      :

In re                              :     **Chapter 11 Case No.**
                                        :

**LEHMAN BROTHERS HOLDINGS INC., *et al.*,**   :     **08-13555 (JMP)**
                                        :

                  **Debtors.**        :     **(Jointly Administered)**
                                        :

-------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION PURSUANT**
**TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULE 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT**
**BETWEEN LB SOMERSET LLC, LB PREFERRED SOMERSET LLC, KBIA SOMERSET**
**INVESTMENTS, LLC, KBIA PREFERRED, LLC, FALLS OF NEUSE INVESTMENTS, LLC,**
**SOMERSET PROPERTIES SPE, LLC, SOMERSET ASSOCIATES, LLC, AND KEVIN WILK**

        PLEASE TAKE NOTICE that a hearing on the annexed Motion of LB Somerset
LLC ("LB Somerset") and LB Preferred Somerset LLC ("LB Preferred," and together with LB
Somerset, the "Lehman Somerset Debtors") pursuant sections 105(a), 363 and 365 of title 11 of
the United States Code and rule 9019 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules") for approval of a settlement agreement between the Lehman Somerset
Debtors on the one hand and KBIA Somerset Investments, LLC, KBIA Preferred, LLC, Falls Of
Neuse Investments, LLC, Somerset Properties SPE, LLC, Somerset Associates, LLC, and Kevin
Wilk (collectively, the "FNI Parties") on the other, all as more fully described in the Motion, will
be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United
States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling
Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 15, 2010, 2010 at**
**10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

        PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall
be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy
Court for the Southern District of New York, shall set forth the name of the objecting party, the
basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court
electronically in accordance with General Order M-242 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman, Esq., attorneys for the Lehman Somerset Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) Rabinowitz, Lubetkin & Tully, L.L.C., 293 Eisenhower Parkway, Suite 100, Livingston, New Jersey 07039, Attn: Jonathan I. Rabinowitz, Esq., attorneys for the FNI Parties; and (vi) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **November 15, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: October 28, 2010
New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
In re                                                  :        Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :        08-13555 (JMP)
:
Debtors.                                  :        **(Jointly Administered)**
:
-------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT**
**BETWEEN LB SOMERSET LLC, LB PREFERRED SOMERSET LLC, KBIA SOMERSET**
**INVESTMENTS, LLC, KBIA PREFERRED, LLC, FALLS OF NEUSE INVESTMENTS, LLC,**
**SOMERSET PROPERTIES SPE, LLC, SOMERSET ASSOCIATES, LLC, AND KEVIN WILK**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

LB Somerset LLC ("LB Somerset") and LB Preferred Somerset LLC ("LB

Preferred," together with LB Somerset, the "Lehman Somerset Debtors," and collectively with

their affiliated debtors in the above captioned chapter 11 cases, the "Debtors") file this Motion,

pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "Bankruptcy

Code") and rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

and respectfully represent:

**Background**

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries, including the Lehman Somerset Debtors, commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code.

3.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Jurisdiction**

4.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Preliminary Statement**

5.      The Lehman Somerset Debtors were established in 2007 to hold the Lehman enterprise's interest in three tracts of improved commercial real property in Raleigh, North Carolina (the "Properties").  The Properties have not provided the Lehman Somerset

Debtors with the expected return on their investment.  Instead, the Lehman Somerset Debtors'

have been in near constant conflict with their joint venture partner regarding the funding and

management of the Properties.  These disputes have resulted in litigation, diminution of the value

of the Properties, and are a factor in a threatened foreclosure by LNR Partners, Inc. ("LNR").  In

order to mitigate their losses with respect to the Properties, cut off further liability with respect

thereto, and ensure some recovery for their estates, the Lehman Somerset Debtors seek

authorization to enter into that certain settlement agreement (the "Settlement Agreement"), a

copy of which is attached hereto as Exhibit A.[1]  The Lehman Somerset Debtors have determined,

in the exercise of their sound business judgment, that the transactions set forth in the Settlement

Agreement are in the best interests of their respective estates and should be approved.

### Relief Requested

6.    The Lehman Somerset Debtors seek authorization, pursuant to sections

105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9019, to enter into the

Settlement Agreement and execute the transactions contemplated therein.  As part of the

Settlement Agreement, the Lehman Somerset Debtors will sell and assign their respective

interests in an entity named Somerset Associates, LLC ("Somerset Associates") to KBIA

Somerset Investments, LLC and KBIA Preferred, LLC (together, the "Somerset Assignees") free

and clear of all liens, claims, and encumbrances.[2]

---

[1] Prior to the return date of this Motion, the parties to the Settlement Agreement will exchange executed copies of the Settlement Agreement.

[2] The Somerset Assignees are special purpose entities established by Wilk (as defined below) for the purpose of assuming the Lehman Somerset Debtors' respective membership interests in Somerset Associates.

## The Properties

7.      The Properties, which are located at 4401-4407 Bland Road ("Somerset Center"), 4505 Falls of Neuse Road ("Somerset Place"), and 4515 Falls of Neuse Road ("Somerset Park"), are comprised of six office buildings and an associated parking facility.  An entity called Somerset Properties SPE, LLC ("Somerset SPE") is the direct owner of the Properties.  Somerset Associates, which is a joint venture between the Lehman Somerset Debtors and an unaffiliated third party named Falls of Neuse Investments, LLC ("FNI,"), is the sole member of Somerset SPE.  Kevin Wilk ("Wilk," together with Somerset Associates, FNI, Somerset SPE and the Somerset Assignees, the "FNI Parties") is the principal of FNI.



8.      CSFB 2001-CP4 Bland Road, LLC ("CSFB") holds certain notes and mortgages that encumber the Properties (the "Loans").  Approximately $29,500,000 remained outstanding on the Loans as of June 30, 2010.[3]   LNR has been appointed special servicer of the Loans.[4]

---

[3] These amounts do not include accrued interest and administrative fees.

[4] The Loans were originated by Column Financial, Inc., assigned to Wells Fargo Bank Minnesota, N.A., (whose successor by merger is Wells Fargo Bank, N.A., as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2001-CP4), and further assigned to CSFB.

## The Disputes, Litigation, and the Potential Foreclosure

9.      From the outset, the Lehman Somerset Debtors and FNI have been involved in numerous disputes regarding their respective obligations under the LLC Agreement. These disputes centered around FNI's management of Somerset Associates and certain capital contributions purportedly due to Somerset Associates from LB Preferred.[5]  As a result of such disputes, on or about October 30, 2009, FNI, individually and on behalf of Somerset Associates, commenced an action in the Court of Chancery of the State of Delaware against the Lehman Somerset Debtors (the "Delaware Litigation").  The Delaware Litigation was stayed by the filing of the Lehman Somerset Debtors' chapter 11 cases on December 21, 2009.

10.     The FNI Parties have filed claims against LBHI and the Somerset Debtors (collectively, the "Somerset Claims") based alleged wrongdoing in connection with the Lehman Somerset Debtors' obligations under the LLC Agreement.  The Somerset Claims include the following:

| Claim Number | Debtor | Amount |
| --- | --- | --- |
| 25935 | LBHI | $4,690,609.00 |
| 66925 (Amends Claims No. 25935) | LBHI | $7,534,687.10 |
| 66609 | LB Preferred | $7,534,687.10 |
| 66610 | LB Somerset | $7,534,687.10 |

11.     On or about June 30, 2010, Somerset SPE received a notice from LNR notifying Somerset SPE that the Loans were in default and that LNR, on behalf of CSFB, intended to foreclose on the Properties.  If LNR is successful, Somerset Associates would likely be rendered valueless because its only significant asset is its membership interest in Somerset

---

[5] Prior to the Commencement Date, the Lehman Somerset Debtors made capital contributions to Somerset Associates in the aggregate amount of approximately $17,500,000.  Pursuant to the LLC Agreement, LB Preferred has received approximately $465,000 in mandatory preferred returns from Somerset Associates and retains approximately $4,500,000 in future funding obligations.

SPE and Somerset SPE's only valuable asserts are its interests in the Properties. Accordingly,

creditors of the Lehman Somerset Debtors would likely be deprived of any meaningful recovery

since the Lehman Somerset Debtors' only assets are their membership interests in Somerset

Associates.[6]

### The Settlement Agreement[7]

12.    In light of these issues, the Lehman Somerset Debtors have carefully

reviewed their options with respect to their membership interests in Somerset Associates and

determined, in the exercise of their sound business judgment, that investing additional capital in

Somerset Associates (LB Preferred retains approximately $4,500,000 in future funding

obligations) is not in the best interests of their estates and creditors. The business relationship

between the Lehman Somerset Debtors and the FNI Parties is non-functional. Indeed, the

Delaware Litigation is merely the most public manifestation of a long series of disputes between

the FNI Parties and the Lehman Somerset Debtors. Further, given the current state of the

commercial real estate market in Raleigh, the Lehman Somerset Debtors believe that the

Properties will have a difficult time generating sufficient revenue to service the Loans, much less

provide a meaningful return on the Lehman Somerset Debtors' investment within the time frame

of these chapter 11 cases. Additionally, the Lehman Somerset Debtors believe that (i) resolving

their disputes with the FNI Parties, and / or (ii) contesting the foreclosure by LNR through

litigation would require an investment of resources that is disproportionate to the likely recovery

value of the Properties.

---

[6] Excluding claims, causes of action, and other contingent assets.

[7] The terms listed below are provided as a summary of the terms of the Settlement Agreement. In the case of an inconsistency between the terms set forth in this summary and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

13.    In light of these considerations, the Lehman Somerset Debtors determined

that their best option was a negotiated withdrawal from Somerset Associates.  Following

extensive arm's length negotiations, the Lehman Somerset Debtors and the FNI Parties agreed on

the terms of the Settlement Agreement.  As discussed in greater detail below, the Settlement

Agreement falls well within the range of reasonableness and is in the best interests of the

Lehman Somerset Debtors and their creditors and should be approved.

14.    The Settlement Agreement includes, *inter alia*, the following salient

terms:

| | |
|---|---|
| ***Transfer of Membership Interests*** | The Lehman Somerset Debtors will sell and assign all of their right, title and interest in and to Somerset Associates and the LLC Agreement, including their obligations with respect thereto, to the Somerset Assignees.  In consideration thereof,  the Somerset Assignees will pay the Lehman Somerset Debtors $150,000.00 in the aggregate. |
| | The Somerset Assignees agree to assume all of the Lehman Somerset Debtors' right, title and interest in and to Somerset Associates and the LLC Agreement, including the $4,500,000 in future funding obligations. The Somerset Assignees specifically agree, without limitation, to assume the obligations of the Lehman Somerset Debtors to cure any and all defaults or events of default of the Lehman Somerset Debtors under the LLC Agreement. |
| | The Lehman Somerset Debtors will resign and withdraw from, and cease to be members of, Somerset Associates and are released from all liabilities and obligations under the LLC Agreement. |
| ***Dismissal of Litigation*** | The FNI Parties will file a stipulation and a proposed order dismissing the Delaware Litigation. |
| ***Withdrawal of Proofs of Claims*** | Somerset Associates and Somerset Properties will withdraw the Somerset Claims and any other claims that they may have filed in the Debtors' chapter 11 cases. |
| ***Releases*** | The FNI Parties, on behalf of themselves and their affiliates, will provide the Lehman Somerset Debtors, LBHI, and certain other parties with a broad release of any claims, causes of action and obligations arising out of or related to Somerset Associates, the LLC Agreement, the Property, the Loans, the Delaware Litigation, and certain other matters.  The |

Lehman Somerset Debtors and certain of their affiliates will provide similar releases to the FNI Parties.

### The Settlement Agreement is in the Best Interests of the Debtors' Estates

15.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization."  *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

16.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness.  *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the

estate." *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

17.    While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134 B.R. at 496. "[T]he bankruptcy judge does not have to decide the numerous questions of law and fact. . . . The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

18.    The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other."). Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

19.     The Settlement Agreement satisfies the standard for approval.  The Lehman Somerset Debtors have engaged in a fulsome analysis of the Properties, the Loans, and their rights and obligations under the LLC Agreement and have determined that the transactions set forth in the Settlement Agreement represent the best prospect for ensuring a recovery for their estates and creditors.  This conclusion is based on the following factors:

- The condition of the real estate market in Raleigh is such that, even if the Lehman Somerset Debtors were to invest additional capital into Somerset Associates and resolve the alleged defaults under the Loans, it would be many years before the proceeds of a sale of the Lehman Somerset Debtors' membership interests in Somerset Associates would be expected to result in a meaningful return to their estates and creditors.

- Any such sale could be complicated by the transfer restrictions contained in the LLC Agreement.

- Resolution of the disputes between the Lehman Somerset Debtors and the FNI Parties is likely to involve significant litigation which would be expensive, time consuming, and subject to uncertainty.

- LNR is in the process of foreclosing on the Properties, and contesting this foreclosure would also involve expense and considerable uncertainty.

20.     The Settlement Agreement, on the other hand, avoids additional litigation with the FNI Parties and LNR, mitigates the Lehman Somerset Debtors' losses with respect to Somerset Associates and the Properties, relieves LB Preferred of approximately $4,500,000 in future funding obligations, and provides for a certain return for the Lehman Somerset Debtors' estates and creditors.  Further, the Settlement Agreement is the result of extensive good faith, arm's-length negotiations among parties that were represented by competent and experienced professionals.  Accordingly, entry into the Settlement Agreement is a sound exercise of the Lehman Somerset Debtors' business judgment, is in the best interests of their estates and creditors, and should be approved.

**The Sale and Assignment of the Lehman Somerset Debtors' interests Somerset**
**Associates and the LLC Agreement Represents a Sound Exercise of their Business Judgment**

21.     Ample authority exists under section 363 of the Bankruptcy Code for

approval of the sale of the Lehman Somerset Debtors' membership interests in Somerset

Associates pursuant to the Settlement Agreement.  Section 363 of the Bankruptcy Code provides,

in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the

ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Courts in the Second

Circuit and others, in applying this section have required that this determination be based upon

the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141, 144-45

(2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the

evidence presented a good business reason to grant such application); *Comm. of Equity Sec.*

*Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

22.     Similarly, the standard for approval of a transaction under section 365 of

the Bankruptcy Code is based on the business judgment of the debtor.  Section 365(a) provides,

in relevant part, that a debtor in possession, "subject to the court's approval, may assume or

reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  In

determining whether an executory contract or unexpired lease should be assumed, courts apply

the "business judgment" test.  *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion*

*Pictures*), 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Richmond Leasing Co. v. Capital Bank,*

*N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the

administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's

provision for private control of administration of the estate, and threaten the court's ability to

control a case impartially"); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("The

decision to assume or reject an executory contract is within the sound business judgment of the

debtor-in-possession. . . .").  Under this test, a court should approve the assumption of a contract

under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound

business judgment in determining that assumption of an agreement is in the best interests of its

estate.  *See, e.g.*, *In re Child World, Inc.*, 142 B.R. 87, 89-90 (Bankr. S.D.N.Y. 1992).

        23.    The Lehman Somerset Debtors' sale and assignment of the LLC

Agreement is a material aspect of the Settlement Agreement and, as described above, will

provide significant benefits to the Lehman Somerset Debtors' estates and creditors.  As such, it is

a reasonable exercise of the Somerset Debtors' business judgment and should be approved.

        24.    Additionally, the FNI Parties have agreed to cure defaults under the LLC

Agreement and provide adequate assurance of future performance as required by sections

365(b)(1) and 365(f)(2), respectively, of the Bankruptcy Code.  Following consummation of the

transactions set forth in the Settlement Agreement, Wilk will control both Somerset Associates

and the Somerset Assignees.  He can thereafter direct Somerset Associates to withdraw its

requests for capital contributions or cause the Somerset Assignees to fund such capital

contributions, which will address the Lehman Somerset Debtors' alleged defaults.  He will also

be able to ensure that, going forward, the Somerset Assignees comply with their obligations

under the LLC Agreement.

**Transfer Free and Clear of Liens, Claims, Encumbrances, and Interests**

        25.    Lehman Somerset Debtors have conducted a fulsome lien search and have

not identified any liens on their membership interests in Somerset Associates.  Accordingly, it is

appropriate for their membership interests in Somerset Associates to be transferred to the

Somerset Assignees free and clear of liens, claims, encumbrances, and interests pursuant to

section 363(f) of the Bankruptcy Code.  To the extent that any party asserts a lien, claim,

encumbrance, or interest prior to the objection deadline established in connection with this

Motion, such lien, claim, encumbrance, or interest may attached to the net sale proceeds of the Settlement Agreement, subject to any defenses that the Lehman Somerset Debtors may have with respect thereto. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the Court's power to sell property free and clear of liens has long been recognized); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale….").

26.    Moreover, any party that may hold a lien on the Lehman Somerset Debtors' membership interests in Somerset Associates (and the Debtors are not aware of any such lien) could be compelled to accept a monetary satisfaction of such interest, satisfying section 363(f)(5) of the Bankruptcy Code. Thus, the Lehman Somerset Debtors request that the transfer of their membership interests in Somerset Associates to the Somerset Assignee be free and clear of all liens, claims, encumbrances, and interests.

## Relief Under Bankruptcy Rule 6004(h)

27.    Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). Waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h) will allow the Lehman Somerset Debtors to finalize the transactions set forth in the Settlement Agreement in a timely manner and will provide each of their respective estates with certainty regarding the disposal of their interests in Somerset Associates.

The Lehman Somerset Debtors respectfully request that any order approving the relief requesting herein be effective immediately by waiving the 14-day stay.

## Notice

28.     No trustee has been appointed in these chapter 11 cases.  The Lehman Somerset Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases; and (vii) all parties who have filed claims in the Somerset Debtors' chapter 11 cases.  The Lehman Somerset Debtors submit that no other or further notice need be provided.

29.     No previous request for the relief sought herein has been made by the Lehman Somerset Debtors to this or any other court.

WHEREFORE the Lehman Somerset Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as is just.

Dated:  October 28, 2010
        New York, New York

                                /s/ Shai Y Waisman
                                Shai Y Waisman
                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Debtors
                                and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                    :
In re                                               :     **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :     **08-13555 (JMP)**
                                                    :
                              Debtors.              :     **(Jointly Administered)**
                                                    :
------------------------------------------------------------------x

**ORDER PURSUANT TO**
**SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT**
**BETWEEN LB SOMERSET LLC, LB PREFERRED SOMERSET LLC, KBIA SOMERSET**
**INVESTMENTS, LLC, KBIA PREFERRED, LLC, FALLS OF NEUSE INVESTMENTS, LLC,**
**SOMERSET PROPERTIES SPE, LLC, SOMERSET ASSOCIATES, LLC, AND KEVIN WILK**

Upon the Motion,[1] dated October 28, 2010, of LB Somerset LLC and LB

Preferred Somerset LLC (together, the "Lehman Somerset Debtors") and their affiliated debtors

in the above-referenced chapter 11 cases, as debtors and debtors in possession, pursuant to

sections 105(a), 363 and 365 of title 11 of the Bankruptcy Code and rule 9019 of the Bankruptcy

Rules for authorization to enter into the Settlement Agreement with the FNI Parties, all as more

fully described in the Motion; and the Court having jurisdiction to consider the Motion and the

relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order

M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set forth in

---

[1]       Capitalized terms used but not defined in this Order have the meanings ascribed to them in the
Motion.

the second amended order entered June 17, 2010 governing case management and administrative

procedures [Docket No. 9635] to (i) the United States Trustee for the Southern District of New

York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities

and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for

the Southern District of New York; (vi) all parties who have filed claims in the Somerset

Debtors' chapter 11 cases; and (vii) all parties who have requested notice in these chapter 11

cases, and it appearing that no other or further notice need be provided; and a hearing (the

"Hearing") having been held to consider the relief requested in the Motion and the Objection;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of  the Lehman Somerset Debtors, their respective estates and creditors, and all parties

in interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

**FURTHER FOUND AND DETERMINED** that:

1.      **Consideration**. The consideration received by all parties to the Settlement

Agreement constitutes reasonably equivalent value or fair consideration, as the case may be (as

those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent

Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the

Bankruptcy Code and under the laws of the United States, any state, territory, possession or the

District of Columbia.  The transactions set forth in the Settlement Agreement also represent a fair

and reasonable exchange under the circumstances of these chapter 11 cases.  Approval of the

Motion and the Settlement Agreement and the consummation of the transactions contemplated

thereby is in the best interests of the Lehman Somerset Debtors, their creditors and all other

parties in interest.

2.        **No Fraudulent Transfer**. The Settlement Agreement was not entered into

for the purpose of hindering, delaying or defrauding creditors of either the Lehman Somerset

Debtors or the FNI Parties under the Bankruptcy Code and under the laws of the United States,

any state, territory, possession, or the District of Columbia.  Neither Lehman Somerset Debtors

nor the FNI Parties entered into the transactions contemplated by the Settlement Agreement

fraudulently for the purpose of such statutory and common law fraudulent conveyance and

fraudulent transfer claims.

3.        **Cure/Adequate Assurance**. The assumption and assignment of the

LLC Agreement pursuant to the terms of this Order is integral to the Settlement Agreement and

is in the best interests of the Lehman Somerset Debtors and their estates, creditors and all other

parties in interest, and represents the reasonable exercise of sound and prudent business

judgment by the Lehman Somerset Debtors.  The Lehman Somerset Debtors have: (i) to the

extent necessary, cured or provided adequate assurance of cure, of any default existing prior to

the date hereof with respect to the LLC Agreement, within the meaning of 11 U.S.C. §§

365(b)(1)(A) and 365(f)(2)(A), and (ii) to the extent necessary, provided compensation or

adequate assurance of compensation to any party for any actual pecuniary loss to such party

resulting from a default prior to the date hereof with respect to the LLC Agreement, within the

meaning of 11 U.S.C. § 365(b)(1)(B) and 365(f)(2)(A). The FNI Parties' promise to resolve the

Lehman Somerset Debtors' alleged defaults including through waiver or forbearance and to

perform the Lehman Somerset Debtors' obligations under the LLC Agreement which shall

constitute adequate assurance of future performance within the meaning of 11 U.S.C. §§

365(b)(1)(C) and 365(f)(2)(B).

**NOW, THEREFORE, IT IS**:

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to sections 105(a), 363 and 365 of the Bankruptcy

Code and Bankruptcy Rule 9019, the Lehman Somerset Debtors' entry into the Settlement

Agreement is approved; and it is further

ORDERED that, pursuant to sections 105(a), 363 and 365 of the Bankruptcy

Code, the Lehman Somerset Debtors are authorized, but not required, to sell, assume and assign

their membership interests in Somerset Associates and the LLC Agreement to the Somerset

Assignees pursuant to the Settlement Agreement; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the transfer

of the Lehman Somerset Debtors' membership interests in Somerset Associates to the Somerset

Assignees shall be free and clear of any and all liens, claims and encumbrances, with such timely

asserted liens, claims and encumbrances (if any) to attach to the proceeds of such transfer with

the same force, effect, and priority as such liens, claims and encumbrances have on such

interests, as appropriate, subject to the rights and defenses of the Lehman Somerset Debtors and

any party in interest with respect thereto; and it is further

ORDERED that the Lehman Somerset Debtors are authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents and papers and to

take any and all actions reasonably necessary or appropriate to consummate the Settlement

Agreement and perform any and all obligations contemplated therein; and it is further

ORDERED that any and all claims of the FNI Parties, including but not limited to

the Somerset Claims, against LBHI, the Lehman Somerset Debtors, or any of their debtor or non-

debtor affiliates, shall be waived and expunged from the claims register with prejudice; and it is further

       ORDERED that, pursuant to Bankruptcy Rule 6004(h), the terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

       ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

       ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: _____, 2010
      New York, New York


                      _____
                      UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

**(Settlement Agreement)**

US_ACTIVE:\43462901\04\58399.0003

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT (the "Settlement Agreement")**, made and entered into this ___ day of October, 2010, by and among **SOMERSET ASSOCIATES, LLC**, a Delaware limited liability company ("**Somerset Associates**"), **SOMERSET PROPERTIES SPE, LLC**, a Delaware limited liability company ("**Somerset Properties**"), **FALLS OF NEUSE INVESTMENTS, LLC**, a Delaware limited liability company ("**FNI**"), **KBIA SOMERSET INVESTMENTS, LLC**, a Delaware limited liability company ("**LB Assignee**"), **KBIA PREFERRED, LLC**, a Delaware limited liability company ("**LB Preferred Assignee**"; and together with LB Assignee, collectively, "**Assignees**"), **MW HOLDINGS, LLC**, a Delaware limited liability company ("**MW Holdings**"), and **KEVIN WILK**, an individual residing in the State of North Carolina ("**Wilk**"; together with FNI, Somerset Associates, Assignees, Somerset Properties and MW Holdings, the "**FNI Parties**"), **LB SOMERSET LLC**, a Delaware limited liability company ("**LB**"), **LB PREFERRED SOMERSET LLC**, a Delaware limited liability company ("**LB Preferred**," together with LB, the "**LB Members**").

## STATEMENT OF BACKGROUND

FNI and the LB Members are all of the members of Somerset Associates, and Somerset Associates is the sole member of Somerset Properties.  Somerset Properties is the owner of certain real property known as Somerset Center, located at 4401-4407 Bland Road; Somerset Place, located at 4505 Falls of Neuse Road; and Somerset Park, located at 4515 Falls of Neuse Road, all of which are located in Raleigh, Wake County, North Carolina.

FNI and the LB Members formed Somerset Associates pursuant to that certain Limited Liability Company Agreement, dated as of November 1, 2007 (the "**Operating Agreement**"). Certain disputes arose among the parties regarding the obligations of FNI and the LB Members under the Operating Agreement, and, as a result of such disputes, on or about October 30, 2009, FNI, individually and derivatively on behalf of the Company, commenced an action in the Court of Chancery of the State of Delaware (the "**Court**") against the LB Members (the "**Litigation**"). The Litigation has been stayed by the commencement of the Lehman Bankruptcy Proceeding (as defined below).

Lehman Brothers Holdings Inc., a Delaware corporation and the indirect owner of beneficial interests in the LB Members ("**LBHI**," and together with the FNI Parties and the LB Members, the "**Parties**"), filed a voluntary petition under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") on September 15, 2008, in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Case No. 08-13555 (JMP) (the "**LBHI Bankruptcy Proceeding**").  Subsequently, on December 21, 2009, the LB Members filed voluntary petitions under chapter 11 of the Bankruptcy Code in the Bankruptcy Court, Case No. 09-17503 and Case No. 09-17505 (together with the LBHI Bankruptcy Proceeding, collectively, the "**Lehman Bankruptcy Proceedings**").  The Lehman Bankruptcy Proceedings have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

Somerset Associates filed certain Proofs of Claim in the Lehman Bankruptcy Proceedings against LBHI and the LB Members, alleging certain claims (the "**Somerset Associate Bankruptcy Claims**") arising under the Operating Agreement.[1]

On September 2, 2010, the LB members filed a motion pursuant to section 1121(d) of the Bankruptcy Code, requesting second extensions of exclusive periods for the filing of and solicitation of acceptances for chapter 11 plans (the "**Motion**"). [Docket No. 11171]. On September 15, 2010, Somerset Associates and Somerset Properties filed an objection (the "**Objection**") to the Motion. [Docket No. 11333]. The hearing on the Motion and the Objection has been adjourned while the Parties seek a consensual resolution of the issues described above.

The Parties have reached agreement to settle, *inter alia*, the outstanding disputes and issues related to the Operating Agreement, the Litigation, the Somerset Associates Bankruptcy Claims, and the Objection, as set forth herein.

## STATEMENT OF AGREEMENT

**NOW THEREFORE**, for and in consideration of the mutual covenants and agreements herein set forth, and other good and valuable considerations, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby covenant and agree as follows:

1.     **Defined Terms**. Except as otherwise expressly defined herein, all capitalized terms utilized herein shall have the respective meanings provided with respect to such terms in the Operating Agreement.

2.     **Effectiveness.** Unless otherwise agreed in writing by LBHI and the LB Members, this Settlement Agreement shall not be binding on or enforceable against LBHI and the LB Members prior to (a) the entry of a final order ("**Order**") by the Bankruptcy Court approving the terms of this Settlement Agreement under sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9019, (b) the entry of the final Dismissal Order (as hereinafter defined) by the Court, as provided in Section 4, below, (c) compliance by Somerset Associates and Somerset Properties with all of their obligations under Section 4, below, and (d) delivery to LBHI and the LB Members of copies of such entity documents (certified by Wilk as true, correct and complete), consents of members, good standing certificates in all relevant jurisdictions, and such other documents as are satisfactory to LBHI and the LB Members in their sole discretion, authorizing each of the FNI Parties to consummate the transactions contemplated in this Settlement Agreement in accordance with the terms hereof and designating those persons authorized to execute and deliver this Settlement Agreement and all other documents to be executed by any of the FNI Parties. The Order shall not become final until (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or

---

[1]     The Somerset Bankruptcy Claims include, but are not limited to, the claims that have been assigned the following proof of claim numbers in the Lehman Bankruptcy Proceeding: 66609, 66610, 25935, and 66925.

rehearing thereof has been sought, such order(s) or judgment(s) of the court shall have been affirmed by the highest court to which such order(s) was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order(s), and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired (the date upon which the Order becomes final and the other conditions set forth in clauses (b), (c) and (d) of this Section 2, above, have been satisfied is hereinafter referred to as the "**Effective Date**"); provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule may be filed relating to such order(s) shall not cause such order(s) to not be the Order.  In the event that the Effective Date does not occur on or before December 30, 2010 (the "**Closing Deadline**"), (x) nothing contained in this Settlement Agreement shall be deemed to be a waiver of any claims or an admission of liability by any Party hereto, and (y) this Settlement Agreement shall be null and void and all rights of the Parties prior to this Settlement Agreement shall be preserved.

3.    **Transfer of Membership Interests; Resignation and Withdrawal**.

(a)    Contemporaneously with the execution and delivery of this Agreement, Assignees shall pay to the LB Members by wire transfer of immediately available federal funds the sum of $150,000.00 in the aggregate, in consideration for the transfer by the LB Members to Assignees of their respective Membership Interests and the resignation and withdrawal by the LB Members as Members in Somerset Associates.  Such payment may be allocated between the LB Members in any manner elected by the LB Members in their sole discretion.  Such payment will be held by the LB Members in a segregated account until the Effective Date.  If the Effective Date does not occur on or before the Closing Deadline and this Settlement Agreement becomes null and void pursuant to Section 2, above, the LB Members shall return such funds to the Assignees by wire transfer of immediately available federal funds.

(b)    To evidence such transfer, resignation and withdrawal, LB Members, Assignees, Somerset Associates and FNI shall, contemporaneously with the execution hereof, execute and deliver that certain Resignation, Withdrawal, Assignment and Assumption Agreement in the form attached hereto as **Exhibit A** and incorporated herein (the "**Assignment and Assumption Agreement**").  Pursuant to the Assignment and Assumption Agreement, LB Members shall make certain representations and warranties regarding the Membership Interests, as more particularly set forth therein.

4.    **Dismissal of Litigation with Prejudice; Withdrawal of Proofs of Claim; Withdrawal of Objection**.  Within two (2) business days after the entry of the final Order, FNI, Somerset Associates and LB Members shall file a stipulation and order of dismissal with the Court, in the form attached hereto as **Exhibit B** and incorporated herein (the "**Dismissal Order**"), providing for the dismissal with prejudice of the Litigation.  In addition, within two (2) business days after the entry by the Court of the final Dismissal Order, Somerset Associates and Somerset Properties, as applicable, shall (i) file the Withdrawals of Claims in the Lehman Bankruptcy Proceedings, in the form attached hereto as **Exhibit C** and incorporated herein, for the purpose of withdrawing and waiving the Somerset Associate Bankruptcy Claims; and (ii) withdraw the Objection with prejudice.

3

5.      **Release by FNI Parties**.

(a)      Each of the FNI Parties, for themselves and for each of their past, present and future agents, partners, members and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their respective past, present and future officers, agents, employees, servants, shareholders and attorneys (as well as their respective predecessors, successors and assigns) (collectively, the "**FNI Releasing Parties**"), for and in consideration of the execution and delivery of this Agreement, and for other good and valuable consideration paid to the FNI Releasing Parties, the receipt and sufficiency of which are hereby acknowledged, does hereby forever release, waive, remise, acquit and discharge each of the LB Members, PAMI LLC, a Delaware limited liability company, Property Asset Management Inc., a Delaware corporation, Lehman Brothers Holdings Inc., a Delaware corporation, TriMont Real Estate Advisors, Inc., a Georgia corporation, and any and all of their respective divisions, subsidiaries, predecessors, parents, affiliates, members, shareholders, partners, and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders, members, partners, servicers and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**LB Released Parties**") of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special, punitive or otherwise), judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen at the present time and whether based on contract, tort, statute or other legal or equitable theory of recovery which the FNI Releasing Parties, or any of them, now have, ever had or hereafter can, shall or may have or which may hereafter arise against one or more of the LB Released Parties for or by reason of any claims arising or accruing at any time on or prior to the date hereof or hereafter in connection with, arising out of, or in any way relating, directly or indirectly, to: (a) the Operating Agreement, or any obligation thereunder, including, without limitation, any obligations or liabilities arising by reason of any breach or alleged breach by the LB Members of any obligation to contribute capital or to make loans to Somerset Associates, or of any fiduciary duty or obligation of the LB Members under the Operating Agreement or under applicable law or in equity, (b) the Business Property, including without limitation, any matters relating to the construction, development, ownership, operation or leasing of any portion of the Business Property, (c) the Membership Interests of the LB Members, (d) any rents, deposits (including security and purchase deposits) or other income from any portion of the Business Property, (e) the Senior Loan, and any document, instrument or agreement evidencing, securing or otherwise relating to the Senior Loan, including, without limitation, those two (2) certain Note and Deed of Trust Assumption Agreements, dated as of November 1, 2007, among Wells Fargo Bank, N.A., and Successor By Merger to Wells Fargo Bank Minnesota, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass Through Certificates, Series 2001 CP-4, Somerset Office Partners, LLC and Somerset Properties, relating to the Senior Loans (the "**Senior Loan Assumption Agreements**"), (f) the Litigation, or any claims alleged therein, (g) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among any of the FNI Releasing Parties and any of the LB Released Parties relating to any of the foregoing, or any

4

portion thereof, (h) the Lehman Bankruptcy Proceedings, or any claims alleged therein, or (i) any matters arising out of or in any way relating to any of the foregoing; specifically excluding, however, any rights or obligations of the LB Members under this Agreement or any documents, instruments or agreements executed in connection with the transactions contemplated by this Agreement, including, without limitation, the Assignment and Assumption Agreement (collectively, the "**FNI Released Claims**").  Without limiting the generality of the foregoing, the FNI Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the LB Released Parties, or any of them, including, without limitation, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any of the LB Released Parties, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing.

(b)     Without limiting the generality of the foregoing, the FNI Releasing Parties expressly release any and all past and present FNI Released Claims, which the FNI Releasing Parties, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Agreement, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

(c)     The FNI Releasing Parties further expressly warrant and represent that neither the FNI Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any FNI Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered.  FNI Releasing Parties hereby agree to indemnify and to hold harmless the LB Released Parties against any claim, contention, demand, cause of action, obligation, damage and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer or purported assignment or transfer.

(d)     The FNI Releasing Parties expressly warrant and represent that in executing and entering into this Agreement, the FNI Releasing Parties are not relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Agreement.  The FNI Releasing Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein or in this Agreement may turn out hereafter to be other than, different from, or contrary to the facts now known to it or believed by it to be true.  Nevertheless, the FNI Releasing Parties intend by this Agreement, and with the advice of independently selected counsel, to release fully, finally and forever the FNI Released Claims and agree that this Agreement shall be effective in all respects

5

notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

(e)    The FNI Releasing Parties understand and agree that any FNI Released Claims the FNI Releasing Parties may have against any LB Released Party are in dispute and that the FNI Releasing Parties are entering into this Agreement for the purpose of settling such disputes by compromise in order to avoid litigation and to buy peace.  The FNI Releasing Parties hereby agree not to bring, or assist in bringing, any FNI Released Claims, and the FNI Releasing Parties further agree that this Agreement is, will constitute, and may be pleaded as, a bar to any such FNI Released Claims.  Neither the execution nor delivery of this Agreement by any LB Released Party nor the payment of any consideration by any person incident to this Agreement is an admission of any wrongdoing whatsoever on the part of any LB Released Party.  Each of the FNI Releasing Parties for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the LB Released Parties from and against all loss, cost, liability, damage and expense (including attorneys' fees and expenses) incurred by the LB Released Parties or any of them in connection with, arising out of or in any way relating to any breach by the FNI Releasing Parties, or any of them, of the covenants and agreements set forth in this Agreement.

(f)    FNI Releasing Parties hereby further agree to indemnify and to hold harmless Property Asset Management Inc., a Delaware corporation and an affiliate of the LB Members, and the other LB Released Parties from and against any claim, contention, demand, cause of action, obligation, damage and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with (i) the Senior Loan Assumption Agreements, including, without limitation, the Joinder by and Agreement of New Indemnitor attached thereto; (ii) the transfer of the Membership Interests to Assignees pursuant to the Assignment and Assumption Agreement, or any transaction or action contemplated thereby, and (iii) any action taken by LB Released Parties in connection with Somerset Associates in good faith.  The claims indemnified under this Section 5(f) specifically include, without limitation, any claims by any member of FNI, or any member, shareholder or partner of any such member, or any other direct or indirect owner of any beneficial interest in any such member.  Property Asset Management Inc. and the other LB Released Parties shall be third party beneficiaries of the provisions of this Agreement.

6.    **Release by LB Members**.

(a)    Each of the LB Members, for themselves and for each of their past, present and future agents, partners, members and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their respective past, present and future officers, agents, employees, servants, shareholders and attorneys (as well as their respective predecessors, successors and assigns) (collectively, the "**LB Releasing Parties**"), for and in consideration of the execution and delivery of this Agreement, and for other good and valuable consideration paid to the LB Releasing Parties, the receipt and sufficiency of which are hereby acknowledged, does hereby forever release, waive, remise, acquit and discharge each of the FNI Parties, and any and all of their respective divisions, subsidiaries, predecessors, parents,

6

affiliates, members, shareholders, partners, and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their past, present and future directors, trustees, fiduciaries, administrators, officers, agents, employees, servants, shareholders, members, partners and attorneys (as well as their predecessors, successors and assigns) (collectively, the "**FNI Released Parties**") of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special, punitive or otherwise), judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen at the present time and whether based on contract, tort, statute or other legal or equitable theory of recovery which the LB Releasing Parties, or any of them, now have, ever had or hereafter can, shall or may have or which may hereafter arise against one or more of the FNI Released Parties for or by reason of any claims arising or accruing at any time on or prior to the date hereof or hereafter in connection with, arising out of, or in any way relating, directly or indirectly, to: (a) the Operating Agreement, or any obligation thereunder, (b) the Business Property, including without limitation, any matters relating to the construction, development, ownership, operation or leasing of any portion of the Business Property, (c) the Membership Interests of the LB Members, (d) any rents, deposits (including security and purchase deposits) or other income from any portion of the Business Property, (e) the Senior Loan, and any document, instrument or agreement evidencing, securing or otherwise relating to the Senior Loan, including, without limitation, the Senior Loan Assumption Agreements, (f) the Litigation, or any claims alleged therein, (g) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings among any of the LB Releasing Parties and any of the FNI Released Parties relating to any of the foregoing, or any portion thereof, (h) the Lehman Bankruptcy Proceedings, or any claims alleged therein, or (i) any matters arising out of or in any way relating to any of the foregoing; specifically excluding, however, any rights or obligations of the FNI Parties under this Agreement or any documents, instruments or agreements executed in connection with the transactions contemplated by this Agreement, including, without limitation, the Assignment and Assumption Agreement (collectively, the "**LB Released Claims**").  Without limiting the generality of the foregoing, the LB Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the FNI Released Parties, or any of them, including, without limitation, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any of the FNI Released Parties, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing.

        (b)      Without limiting the generality of the foregoing, the LB Releasing Parties expressly release any and all past and present LB Released Claims, which the LB Releasing Parties, or any of them, do not know of or suspect to exist in their favor, whether through

ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Agreement, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

(c)     The LB Releasing Parties further expressly warrant and represent that neither the LB Released Claims nor any part of any interest in any claim, contention, demand, or cause of action relating to any LB Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered.  The LB Releasing Parties hereby agree to indemnify and to hold harmless the FNI Released Parties against any claim, contention, demand, cause of action, obligation, damage and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer or purported assignment or transfer.

(d)     The LB Releasing Parties expressly warrant and represent that in executing and entering into this Agreement, the LB Releasing Parties are not relying upon and have not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Agreement.  The LB Releasing Parties understand and expressly assume the risk that any fact not recited, contained or embodied herein or in this Agreement may turn out hereafter to be other than, different from, or contrary to the facts now known to it or believed by it to be true.  Nevertheless, the LB Releasing Parties intend by this Agreement, and with the advice of independently selected counsel, to release fully, finally and forever the LB Released Claims and agree that this Agreement shall be effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

(e)     The LB Releasing Parties understand and agree that any LB Released Claims the LB Releasing Parties may have against any FNI Released Party are in dispute and that the LB Releasing Parties are entering into this Agreement for the purpose of settling such disputes by compromise in order to avoid litigation and to buy peace.  The LB Releasing Parties hereby agree not to bring, or assist in bringing, any LB Released Claims, and the LB Releasing Parties further agree that this Agreement is, will constitute, and may be pleaded as, a bar to any such LB Released Claims.  Neither the execution nor delivery of this Agreement by any FNI Released Party nor the payment of any consideration by any person incident to this Agreement is an admission of any wrongdoing whatsoever on the part of any FNI Released Party.  Each of the LB Releasing Parties for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the FNI Released Parties from and against all loss, cost, liability, damage and expense (including attorneys' fees and expenses) incurred by the FNI Released Parties or any of them in connection with, arising out of or in any way relating to any breach by the LB Releasing Parties, or any of them, of the covenants and agreements set forth in this Agreement.

7.     **Entire Agreement; Amendments**.  This Agreement shall constitute the entire understanding of the parties with respect to the transactions contemplated hereunder.  Each of the parties acknowledge and affirm that no other party, nor any agent or attorney of any other party,

has made any promise, representation, or warranty whatsoever, express or implied, and not contained herein, concerning the subject matter hereof to induce the party to execute or authorize the execution of this Agreement.  Each party hereby acknowledges and promises that it has not executed or authorized the execution of this Agreement in reliance upon any such promise, representation or warranty not contained herein. The parties expressly disclaim reliance on any information, statements, representations, or warranties regarding the subject matter of this Agreement other than the terms of this Agreement.  This Agreement may not be amended except by an instrument in writing signed on behalf of each of the parties.

8.      **Further Assurances**. From and after the date hereof, each party shall, at any time and from time to time, make, execute and deliver, or cause to be made, executed and delivered, such instruments, agreements, consents and assurances and take or cause to be taken all such actions as may reasonably be requested by the other party for the effectual consummation and confirmation of this Agreement and the transactions contemplated hereby.

9.      **Expenses**.  Except as otherwise provided herein, each party shall pay its own expenses incident to the negotiation, preparation, and carrying out of this Agreement, including all fees and expenses of its counsel for all activities of such counsel.

10.     **Headings**.  The headings contained in this Agreement are for reference purposes only and shall not affect in any manner the meaning or interpretation of this Agreement.

11.     **Severability**. If any term, provision, covenant or restriction of this Agreement is determined by a court of competent jurisdiction or other authority to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party hereto. Upon such a determination, the parties hereto shall negotiate in good faith to modify this Agreement so as to affect the original intent of the parties as closely as possible in an acceptable manner so that the transactions contemplated hereby may be consummated as originally contemplated to the fullest extent possible.

12.     **Counterparts**.  This Agreement may be executed by facsimile and in multiple counterparts, all of which shall be considered one and the same instrument and shall become effective when all counterparts have been signed by each party hereto and delivered to the other parties hereto, it being understood that all parties need not sign the same counterpart.

13.     **Successors and Assigns**.  The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns; provided that each party hereto shall not assign, delegate or transfer any of its rights or obligations hereunder without the written consent of the other parties hereto.

14.     **Governing Law and Disputes**. This agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the application of New York's conflict of law principles.  Without limiting any party's right to appeal any order of the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this agreement and to decide any claims or disputes which

may arise or result from, or be connected with, this agreement, any breach or default hereunder, or the transactions contemplated hereby; provided, however, that if the Bankruptcy Court does not have or abstains from exercising such jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereto agree to irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum.  Process in any such suit, action or proceeding may be served on any party hereto anywhere in the world, whether within or without the jurisdiction of any such court as provided for in the Notice section of this Agreement.

15.    **Notices**.  Any notice which a party is required or may desire to give the other shall be in writing and shall be sent by personal delivery or by mail (either [i] by United States registered or certified mail, return receipt requested, postage prepaid, or [ii] by Federal Express or similar generally recognized overnight carrier regularly providing proof of delivery), addressed as follows (subject to the right of a party to designate a different address for itself by notice similarly given at least five (5) days in advance):

To LB Parties:

LB Somerset LLC
c/o Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 38th Floor
New York, New York 10020
Attention:  Joelle Halperin, Esq.


and

LB Somerset LLC
1271 Avenue of the Americas, 38th Floor
New York, New York 10020
Attention:  David Zackowitz

With Copies To:

Weil Gotshal & Manges LLP
767 5th Avenue
New York, New York 10153
Attention: Shai Y. Waisman, Esq.

And

Clyde E. Click, Esq.
3475 Piedmont Road, N.E.

10

Suite 1910
Atlanta, Georgia 30305

and

TriMont Real Estate Advisors, Inc.
Monarch Tower
3424 Peachtree Road NE, Suite 2200
Atlanta, Georgia 30326
Attention:  Mr. J. Gregory Winchester

To FNI Parties:

Somerset Associates, LLC
c/o MRG Management Company
4515 Falls of Neuse Road, Suite 100
Raleigh, NC 27609
Attn: Kevin Wilk

With Copies To:

Jonathan I. Rabinowitz, Esq.
Rabinowitz, Lubetkin & tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, NJ 07039

and

Ed Gaskins, Esq.
Everett, Gaskins, Hancock & Stevens
127 W. Hargett Street, Suite 600
Raleigh, NC 27601


Any notice so given by mail shall be deemed to have been given as of the date of delivery (whether accepted or refused) established by U.S. Post Office return receipt or the overnight carrier's proof of delivery, as the case may be.  Any such notice not so given shall be deemed given upon actual receipt of the same by the party to whom the same is to be given.  Notices may be given by the attorneys for any party hereto, by facsimile transmission, and shall be deemed given upon the actual receipt of the same by the individual to which they are addressed, and shall be promptly followed by a hard copy notice by mail as provided above.

16.  **Specific Enforcement**.  The parties agree that money damages would not be a sufficient remedy for any breach of this Agreement because of the difficulty of ascertaining the amount of damage that will be suffered in connection therewith, that the non-breaching parties would suffer irreparable harm in the event any provision of this Agreement is not performed in accordance with its specific terms or were otherwise breached and that the non-breaching parties

shall be entitled to equitable relief (including injunction and specific performance) as a remedy for any material breach or to prevent any material breach of this Agreement. Such remedies shall not be deemed to be exclusive remedies for a breach or anticipatory breach of this Agreement, but shall be in addition to all other remedies available at law or equity.

17.    **Prevailing Party Right To Fees and Costs**. The prevailing party in any action to enforce the terms of this Agreement will be entitled to recover its costs (including reasonable attorneys' fees and expenses).

18.    **Rules of Construction**. The parties hereto acknowledge that they have been represented by counsel during the negotiation, preparation and execution of this Agreement and, therefore, waive the application of any Law, holding or rule of construction providing that ambiguities in an agreement or other document will be construed against the party drafting such agreement or document.

19.    **Waiver of Trial by Jury**. THE PARTIES HEREBY IRREVOCABLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT. THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT. IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

20.    **Confidentiality**. No party hereto will disclose or permit the disclosure of any of the terms of this Agreement or of any other confidential, non-public or proprietary information relating to the subject matter hereof (collectively, "**Confidential Information**"), provided that such disclosure may be made (i) to any person who is a partner, officer, director or employee of such party or an affiliate of such party, counsel to or accountants of such party or an affiliate of such party solely for their use in connection with this transaction, (ii) with the prior consent of the other party hereto, (iii) pursuant to a subpoena or order issued by a court, arbitrator or governmental body, agency or official, or otherwise as required by applicable law, and (iv) as required in connection with the Lehman Bankruptcy Proceedings.

21.    **Interpretation**. Words used in the singular shall include the plural, and vice-versa, and any gender shall be deemed to include the other. Whenever the words "including", "include" or "includes" are used in this Agreement, they should be interpreted in a non-exclusive manner. The captions and headings of the Sections of this Agreement are for convenience of reference only, and shall not be deemed to define or limit the provisions hereof. Except as otherwise indicated, all Exhibit and Section references in this Agreement shall be deemed to refer to the Exhibits and Sections in this Agreement.

22.    **Third Party Beneficiaries**. Except as otherwise expressly provided in this Agreement, the parties hereto do not intend by any provision of this Agreement to confer any right, remedy or benefit upon any third party (express or implied), and no third party shall be entitled to enforce or otherwise shall acquire any right, remedy or benefit by reason of any provision of this Agreement.

**IN WITNESS WHEREOF**, the duly authorized signatories of the parties hereto have executed and delivered this Agreement as of the day and year first above written.

**LB SOMERSET LLC**, a Delaware limited liability company

By:    PAMI LLC, a Delaware limited liability company, its managing member

By:    _____
            Authorized Signatory

**LB PREFERRED SOMERSET LLC**, a Delaware limited liability company

By:    PAMI LLC, a Delaware limited liability company, its managing member

By:    _____
            Authorized Signatory

Signature Page Settlement Agreement Somerset Associates Deal ID # _____

[No further text on this page]

13

**FALLS OF NEUSE INVESTMENTS, LLC**, a
Delaware limited liability company

By:    MW Holdings, LLC, a Delaware limited
liability company, its managing member


By:    _____
Kevin J. Wilk, Its Managing Member


**MW HOLDINGS, LLC**, a Delaware limited
liability company, its managing member


By:    _____
Kevin J. Wilk, Its Managing Member


**SOMERSET PROPERTIES SPE, LLC**, a
Delaware limited liability company

By:    Somerset Associates, LLC, a Delaware
limited liability company, its sole member

By:    Falls of Neuse Investments, LLC, a
Delaware limited liability company, its
managing member

By:    MW Holdings, LLC, a Delaware
limited liability company, its
managing member


By:    _____
Kevin J. Wilk, Its Managing
Member


[No further text on this page]


14

**SOMERSET ASSOCIATES, LLC**, a Delaware limited liability company

By:    Falls of Neuse Investments, LLC, a Delaware limited liability company, its managing member

      By:    MW Holdings, LLC, a Delaware limited liability company, its managing member


      By:    _____
             Kevin J. Wilk, Its Managing Member



_____
Kevin Wilk, Individually


**LB ASSIGNEE:**

**KBIA SOMERSET INVESTMENTS, LLC**, a Delaware limited liability company


By:    _____
     Name:
     Title:


**LB PREFERRED ASSIGNEE:**

**KBIA PREFERRED, LLC**, a Delaware limited liability company


By:    _____
     Name:
     Title:

15

## JOINDER

Except as otherwise expressly defined herein, capitalized terms utilized in this Joinder shall have the respective meanings provided with respect to such terms in the Agreement to which it is attached (the "**Agreement**"). Each and all of the obligations of each of the Releasors under this Joinder shall be several and not joint, and no Releasor shall have any obligation or liability under this Joinder for any representation, warranty or covenant of any other Releasor under this Joinder or of any party under the Agreement.

The undersigned, Lehman Brothers Holdings Inc., Property Asset Management Inc., PAMI, LLC and TriMont Real Estate Advisors, Inc. ("**Releasors**"), which are not parties to the Agreement, shall be beneficiaries of the provisions of Section 5 of the Agreement, pursuant to which the FNI parties provide certain releases and other covenants and agreements for the benefit of Releasors. Releasors shall be entitled to enforce the terms of said Section 5 each in their own name.

Releasors do hereby further agree, severally and not jointly, as follows:

1.      Each of Releasors, for themselves and for each of their past, present and future agents, partners, members and other direct or indirect related entities (whether or not such entities are wholly-owned) and each of their respective past, present and future officers, agents, employees, servants, shareholders and attorneys (as well as their respective predecessors, successors and assigns), for and in consideration of the execution and delivery of the Agreement, and for other good and valuable consideration paid to Releasors, the receipt and sufficiency of which are hereby acknowledged, does hereby forever release, waive, remise, acquit and discharge each of the FNI Released Parties of and from all manner of actions, causes of action, claims, claims of usury, suits, bonds, bills, covenants, controversies, agreements, promises, trespasses, damages (whether general, special, punitive or otherwise), judgments, executions, demands, indebtedness (either as principal obligor or as surety or other accommodation party), liabilities, obligations, costs, expenses, losses, attorneys' fees and expenses (whether or not litigation is commenced), liens and indemnities of every kind and nature whatsoever, whether fixed or contingent, known or unknown, suspected or unsuspected, foreseen or unforeseen at the present time and whether based on contract, tort, statute or other legal or equitable theory of recovery which Releasors, or any of them, now have, ever had or hereafter can, shall or may have or which may hereafter arise against one or more of the FNI Released Parties for or by reason of any claims arising or accruing at any time on or prior to the date hereof or hereafter in connection with, arising out of, or in any way relating, directly or indirectly, to: (a) the Operating Agreement, or any obligation thereunder, (b) the Business Property, including without limitation, any matters relating to the construction, development, ownership, operation or leasing of any portion of the Business Property, (c) the Membership Interests of the LB Members, (d) any rents, deposits (including security and purchase deposits) or other income from any portion of the Business Property, (e) the Senior Loan, and any document, instrument or agreement evidencing, securing or otherwise relating to the Senior Loan, including, without limitation, the Senior Loan Assumption Agreements, (f) the Litigation, or any claims alleged therein, (g) any matters pertaining to any of the discussions, communications, correspondence, negotiations or dealings

among any of Releasors and any of the FNI Released Parties relating to any of the foregoing, or any portion thereof, (h) the Lehman Bankruptcy Proceedings, or any claims alleged therein, or (i) any matters arising out of or in any way relating to any of the foregoing; specifically excluding, however, any rights or obligations of the FNI Parties under the Agreement or any documents, instruments or agreements executed in connection with the transactions contemplated by the Agreement, including, without limitation, the Assignment and Assumption Agreement (collectively, the "**Released Claims**").  Without limiting the generality of the foregoing, the Released Claims shall include, without limitation, any loss, liability, expense and/or detriment, of any kind or character, in any way arising out of, connected with, or resulting from the acts or omissions of the FNI Released Parties, or any of them, including, without limitation, any breach of fiduciary duty, breach of any duty of fair dealing, breach of confidence, any cause of action or defenses based on the negligence of any of the FNI Released Parties, breach of funding commitment, undue influence, duress, economic coercion, conflict of interest, negligence, bad faith, malpractice, violations of the Racketeer Influenced and Corrupt Organizations Act, intentional or negligent infliction of mental distress, tortious interference with contractual relations, tortious interference with corporate governance or prospective business advantage, breach of contract, fraud, mistake, deceptive trade practices, libel, slander, conspiracy, fraudulent conveyance, or any claim for wrongfully taking any action in connection with the foregoing.

2.      Without limiting the generality of the foregoing, Releasors expressly release any and all past and present Released Claims, which Releasors, or any of them, do not know of or suspect to exist in their favor, whether through ignorance, oversight, error, negligence or otherwise, and which, if known, would materially affect their decision to enter into this Joinder, and to this end they and each of them, to the extent permitted by law waive all rights under any statutory provision purporting to limit the scope or effect of a general release, whether due to lack of knowledge or otherwise.

3.      Each Releasor expressly warrants and represents, each for itself, severally and not jointly with any other Releasor, that neither such Releasor nor any portion of any interest in any claim, contention, demand, or cause of action relating to any Released Claim or any portion of any recovery or settlement has been sold, granted, transferred, assigned or encumbered.  Each Releasor, each for itself, severally and not jointly with any other Releasor, hereby agrees to indemnify and to hold harmless the FNI Released Parties against any claim, contention, demand, cause of action, obligation, damage and liability of any nature, character or description whatsoever, including the payment of attorneys' fees (including allocated costs incurred by internal counsel) and costs actually incurred, whether or not litigation is commenced, which may be based upon or which may arise out of or in connection with any such assignment or transfer or purported assignment or transfer with respect to any Released Claim released by such Releasor.

4.      Each Releasor, severally and not jointly with any other Releasor, expressly warrants and represents that in executing and entering into this Joinder, such Releasor is not relying upon and has not relied upon any representation, promise or statement made by anyone which is not recited, contained or embodied in this Joinder.  Each Releasor understands and expressly assumes the risk that any fact not recited, contained or embodied herein or in this Joinder may turn out hereafter to be other than, different from, or contrary to the facts now known to it or believed by it to be true.  Nevertheless, each Releasor intends by this Joinder, and with the advice of independently selected counsel, to release fully, finally and forever the

Released Claims and agrees that this Joinder shall be effective in all respects notwithstanding any such difference in facts, and shall not be subject to termination, modification or rescission by reason of any such difference in facts.

5.      Each Releasor understands and agrees that any Released Claims Releasors may have against any FNI Released Party are in dispute and that such Releasor is entering into this Joinder for the purpose of settling such disputes by compromise in order to avoid litigation and to buy peace.  Each Releasor hereby agrees not to bring, or assist in bringing, any Released Claims, and each Releasor further agrees that this Joinder is, will constitute, and may be pleaded as, a bar to any such Released Claims.  Neither the execution nor delivery of this Joinder by any FNI Released Party nor the payment of any consideration by any person incident to this Joinder is an admission of any wrongdoing whatsoever on the part of any FNI Released Party.  Each of Releasors (other than LBHI) for itself and for anyone claiming by, through or under it, hereby agrees to defend, protect, indemnify and hold harmless any and all of the FNI Released Parties from and against all loss, cost, liability, damage and expense (including attorneys' fees and expenses) incurred by the FNI Released Parties or any of them in connection with, arising out of or in any way relating to any breach by such Releasor of the covenants and agreements set forth in this Joinder.


**PROPERTY ASSET MANAGEMENT INC.**, a Delaware corporation


By:      _____
         Authorized Signatory


**PAMI LLC**, a Delaware limited liability company


By:      _____
         Authorized Signatory


**TRIMONT REAL ESTATE ADVISORS INC.**, a Georgia corporation


By:      _____
         Title:


Signature Page Joinder to Settlement Agreement Somerset Associates Deal ID # _____

**LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, as debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Authorized Signatory

Signature Page Joinder to Settlement Agreement Somerset Associates Deal ID # _____

4

## **EXHIBIT A**

**(Form of Resignation, Withdrawal, Assignment and Assumption Agreement)**

## RESIGNATION, WITHDRAWAL, ASSIGNMENT AND ASSUMPTION AGREEMENT

**THIS RESIGNATION, WITHDRAWAL, ASSIGNMENT AND ASSUMPTION AGREEMENT** (this "**Agreement**") is made and entered into as of the ___ day of _____, 2010 (the "**Effective Date**"), by **SOMERSET ASSOCIATES, LLC**, a Delaware limited liability company ("**Somerset Associates**"), **FALLS OF NEUSE INVESTMENTS, LLC**, a Delaware limited liability company ("**FNI**"), **KBIA SOMERSET INVESTMENTS, LLC**, a Delaware limited liability company ("**LB Assignee**"), **KBIA PREFERRED, LLC**, a Delaware limited liability company ("**LB Preferred Assignee**"; and LB Assignee and LB Preferred Assignee, collectively, the "**Assignees**"; and Somerset Associates, FNI, LB Somerset Assignee and LB Somerset Preferred Assignee, collectively, the "**FNI Parties**"), **LB SOMERSET LLC**, a Delaware limited liability company ("**LB**"), and **LB PREFERRED SOMERSET LLC**, a Delaware limited liability company ("**LB Preferred**"; and LB and LB Preferred, collectively, the "**LB Members**").

**WHEREAS**, Somerset Associates was formed pursuant to that certain Limited Liability Company Agreement, dated as of November 1, 2007, among FNI and the LB Members (the "**Operating Agreement**"); and

**WHEREAS**, FNI and the LB Members are all of the members of Somerset Associates; and

**WHEREAS**, certain disputes have arisen between the parties regarding their respective rights and obligations under the Operating Agreement, and, in order to settle and resolve all such disputes, the parties have entered into that certain Settlement Agreement, dated as of _____, 2010 (the "**Settlement Agreement**"), providing for, among other things, the transfer by the LB Members of their respective membership interests in and the resignation and withdrawal of the LB Members as members in Somerset Associates; and

**WHEREAS**, Assignees have agreed to accept such assignment and to assume all of the LB Members' obligations under the Operating Agreement upon the terms and conditions set forth herein;

**NOW THEREFORE**, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the parties hereto hereby agree as follows:

1. <u>Definitions</u>. Capitalized terms used and not defined herein shall have the meanings ascribed to thereto in the Settlement Agreement.

2. <u>Transfer of LB Membership Interest; Assumption; Indemnity</u>. LB hereby unconditionally and irrevocably assigns, transfers, and conveys to LB Assignee, effective as of the Effective Date, without recourse, representation or warranty, except as set forth herein, LB's right, title and interest in and to the Membership Interest owned by it (the "**LB Membership Interest**") and the obligations of LB under the Operating Agreement. LB Assignee hereby accepts the LB Membership Interest as of the Effective Date and assumes all covenants,

conditions and obligations required to be kept, performed and fulfilled by LB with respect to the LB Membership Interest under the Operating Agreement and the Delaware Limited Liability Company Act, as amended from time to time (the "**Act**"), including specifically, without limitation, the obligation of LB to cure any and all defaults or events of default of LB under the Operating Agreement or the Act.  LB Assignee agrees that it will not cause the removal of FNI as the Administrative Managing Member (as defined in the Operating Agreement) pursuant to the provisions of Section 5.6 of the Operating Agreement, and that it will not cause a change in the status of FNI pursuant to the provisions of Section 5.7 of the Operating Agreement.  LB Assignee hereby agrees to indemnify, defend and hold harmless LB from and against all claims, losses, costs, expenses (including, but not limited to, reasonable attorney's fees and expenses) and liabilities or damages arising from or relating to the LB Membership Interest including, without limitation, any liabilities or damages arising from or relating to Section 5.6 or 5.7 of the Operating Agreement or the violation by the LB Assignee of its obligations under the preceding sentence.

3.    <u>Transfer of LB Preferred Membership Interest; Assumption; Indemnity</u>.  LB Preferred hereby unconditionally and irrevocably assigns, transfers, and conveys to LB Preferred Assignee, effective as of the Effective Date, without recourse, representation or warranty, except as set forth herein, LB Preferred's right, title and interest in and to the Membership Interest owned by it (the "**LB Preferred Membership Interest**") and the obligations of LB Preferred under the Operating Agreement.  LB Preferred Assignee hereby accepts the LB Preferred Membership Interest as of the Effective Date and assumes all covenants, conditions and obligations required to be kept, performed and fulfilled by LB Preferred with respect to the LB Preferred Membership Interest under the Operating Agreement and the Act, including specifically, without limitation, the obligation of LB Preferred to cure any and all defaults or events of default of LB Preferred under the Operating Agreement or the Act.  LB Preferred Assignee agrees that it will not cause the removal of FNI as the Administrative Managing Member (as defined in the Operating Agreement) pursuant to the provisions of Section 5.6 of the Operating Agreement, and that it will not cause a change in the status of FNI pursuant to the provisions of Section 5.7 of the Operating Agreement.  LB Preferred Assignee hereby agrees to indemnify, defend and hold harmless LB Preferred from and against all claims, losses, costs, expenses (including, but not limited to, reasonable attorney's fees and expenses) and liabilities or damages arising from or relating to the LB Preferred Membership Interest including, without limitation, any liabilities or damages arising from or relating to Section 5.6 or 5.7 of the Operating Agreement or the violation by the LB Preferred Assignee of its obligations under the preceding sentence.

4.    <u>Satisfaction or Waiver of Other Requirements</u>.  FNI and Somerset Associates agree that any and all applicable requirements of the Operating Agreement relating to any transfer of the Membership Interests pursuant to this Agreement, including, without limitation, any applicable requirements contained in Article 9 of the Operating Agreement, have been or are deemed to be satisfied or waived.

5.    <u>Resignation and Withdrawal</u>.  The LB Members hereby resign and withdraw from, and cease to be Members of, Somerset Associates as of the Effective Date.  It is the express intention of the parties that the resignation and withdrawal of the LB Members set forth

herein shall be deemed to be and constitute both the "withdrawal" provided for in Section 9.7(d) of the Operating Agreement and the "resignation" provided for under the Act.  The parties hereby modify and amend the LLC Agreement solely to the extent, if any, necessary to recognize and permit such resignation and withdrawal.   The LB Members are hereby released from all liabilities and obligations under the Operating Agreement and the Act, whether arising or accruing before or from and after the date hereof, including, without limitation, any obligations or liabilities arising by reason of any breach or alleged breach by the LB Members of any fiduciary duty or obligation of the LB Members under the Operating Agreement or under applicable law or in equity.  Nothing contained herein shall be deemed or construed to limit, modify, amend, supersede or otherwise affect the terms and provisions of the Settlement Agreement, including, without limitation, the mutual releases set forth therein.

6.      Representations and Warranties of FNI Parties. Each of the FNI Parties represent and warrant, with respect to itself, severally and not jointly, that (a) it has full power and authority and has taken all actions necessary to execute and deliver this Assignment and to fulfill its obligations hereunder and to consummate the transactions contemplated hereby, and (b) this Assignment has been duly executed and delivered by such FNI Party.

7.      Representations and Warranties of LB Members. Each of the LB Members represents and warrants, with respect to itself and with respect to its Membership Interest, severally and not jointly, that (a) it is the sole legal and beneficial owner of the Membership Interest transferred by it hereunder, (b) it has not previously assigned, sold, pledged, hypothecated or transferred such Membership Interest in whole or part, (c) its title to such Membership Interest, and the aforesaid assignment, transfer and conveyance of such Membership Interest to Assignees, is free and clear of any liens, claims, security interest, rights of first refusal, options, liabilities and encumbrances of any kind whatsoever (other than the rights waived pursuant to this Agreement and any interest of the holder of the Senior Loan), (d) it has full power and authority and has taken all actions necessary to execute and deliver this Assignment and to fulfill its obligations hereunder and to consummate the transactions contemplated hereby and (e) this Assignment has been duly executed and delivered by such LB Member.  LB Members hereby expressly disclaim any and all other representations, warranties, covenants and agreements expressed or implied, including, without limitation, any representations or warranties set forth in the Operating Agreement, other than the representations and warranties set forth in this Section 7.

8.      Entire Agreement.  Except as otherwise expressly provided herein and in the Settlement Agreement and the documents and agreements entered into as provided therein, this Agreement sets forth the entire understanding of the parties relating to the subject matter hereof and supersedes all prior agreements and understanding, both written and oral, among or between any of the parties relating to the subject matter hereof.

9.      Counterparts.  This Agreement may be executed and delivered (including by facsimile or other form of electronic transmission) in one or more counterparts, and by the different parties hereto in separate counterparts, each of which when executed shall be deemed to be an original but all of which taken together shall constitute one and the same agreement.

10.     <u>Governing Law and Disputes</u>. This agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to the application of New York's conflict of law principles.  Without limiting any party's right to appeal any order of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this agreement and to decide any claims or disputes which may arise or result from, or be connected with, this agreement, any breach or default hereunder, or the transactions contemplated hereby; provided, however, that if the Bankruptcy Court does not have or abstains from exercising such jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereto agree to irrevocably waive, to the fullest extent permitted by law, any objection that they may now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such court or that any such suit, action or proceeding brought in any such court has been brought in an inconvenient forum. Process in any such suit, action or proceeding may be served on any party hereto anywhere in the world, whether within or without the jurisdiction of any such court as provided for in the Notice section of this Agreement.

11.     **<u>Waiver of Trial by Jury</u>**.  THE PARTIES HEREBY IRREVOCABLY WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF THIS AGREEMENT.  THIS WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THIS AGREEMENT.  IN THE EVENT OF LITIGATION, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**IN WITNESS WHEREOF**, the parties have executed this Resignation, Withdrawal, Assignment and Assumption Agreement as of the date first above written.

**FALLS OF NEUSE INVESTMENTS, LLC**, a Delaware limited liability company

By:     MW Holdings, LLC, a Delaware limited liability company, its managing member

By:     _____
        Kevin J. Wilk, Its Managing Member

**SOMERSET ASSOCIATES, LLC**, a Delaware limited liability company

4

By:    Falls of Neuse Investments, LLC, a
Delaware limited liability company, its
managing member

By:    MW Holdings, LLC, a Delaware
limited liability company, its
managing member

By:  _____
Kevin J. Wilk, Its Managing Member

**LB ASSIGNEE:**

**KBIA SOMERSET INVESTMENTS, LLC**, a
Delaware limited liability company

By:  _____
      Name:
      Title:

**LB PREFERRED ASSIGNEE:**

**KBIA PREFERRED, LLC**, a Delaware limited
liability company

By:  _____
      Name:
      Title:

**[NO FURTHER TEXT ON THIS PAGE]**

**LB SOMERSET LLC**, a Delaware limited liability company

By:    PAMI LLC, a Delaware limited liability company, its managing member

By:    _____
       Authorized Signatory

**LB PREFERRED SOMERSET LLC**, a Delaware limited liability company

By:    PAMI LLC, a Delaware limited liability company, its managing member

By:    _____
       Authorized Signatory

Signature Page Resignation, Withdrawal, Assignment and Assumption Agreement Somerset Associates Deal ID # _____

**<u>EXHIBIT B</u>**
**(Form of Stipulation of Dismissal With Prejudice)**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| FALLS OF NEUSE INVESTMENTS, LLC,<br>individually and derivatively, on behalf of<br>SOMERSET ASSOCIATES LLC,<br><br>    Plaintiff,<br>  v.<br><br>LB PREFERRED SOMERSET LLC and LB<br>SOMERSET LLC,<br><br>    Defendants,<br>  and<br><br>SOMERSET ASSOCIATES LLC,<br><br>    Nominal Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No.  5034-VCL |

## STIPULATION AND ORDER OF DISMISSAL

IT IS HEREBY STIPULATED AND AGREED, by and between the parties, through their undersigned counsel, that the above captioned action is hereby dismissed with prejudice pursuant to Court of Chancery Rule 41(a)(1)(ii), and that each party shall bear its own costs.

_____

Jeffrey S. Goddess (DSBA No. 630)
Rosenthal, Monhait & Goddess, P.A.
Suite 1401, 919 Market Street
P.O. Box 1070
Wilmington, DE 19899-1070
(302) 656-4433
*Attorneys for Plaintiff*


_____

Brock E. Czeschin (DSBA No. 3938)
Richard P. Rollo (DSBA No. 3994)
Meredith M. Stewart (DSBA No. 4960)
Richards, Layton & Finger, P.A.
920 N. King Street
Wilmington, DE  19801
(302) 651-7700
*Attorneys for Defendants*


Dated: November __, 2010



SO ORDERED this ____ day of _____, 2010.



_____
Vice Chancellor

[Letterhead]

_____, 2010

The Honorable J. Travis Laster
Vice Chancellor
Court of Chancery
New Castle County Courthouse
500 N. King Street
Wilmington, DE 19801

      Re:    *Falls of Neuse Investments, LLC v. LB Preferred Somerset LLC, et al.*,
                      C.A No. 5034-VCL (Del. Ch.)

Dear Vice Chancellor Laster:

      I am pleased to report that the parties have recently entered into a Settlement Agreement with respect to the claims in this matter, and that such Settlement Agreement has been approved by Order of the United States Bankruptcy Court for the Southern District of New York, dated _____, 2010.

      As Your Honor may recall, this action was stayed pursuant to Bankruptcy Code § 362 when defendants LB Preferred Somerset LLC and LB Somerset LLC (the "LB Defendants") filed for relief under Chapter 11 of the United States Bankruptcy Code on December 21, 2009. Subsequent to the bankruptcy filings, the parties successfully negotiated a settlement of their disputes.  In summary, the Settlement Agreement provides, among other things, for (1) a transfer by the LB Defendants of all of their limited liability company interests in Somerset Associates LLC to an affiliate of the plaintiff, (2) the payment to the LB Defendants in consideration for such transfer in the amount of $150,000.00, (3) complete mutual releases of all claims relating to Somerset Associates and the real property owned by its subsidiaries, (4) withdrawal by the LB Defendants as members in Somerset Associates, (5) dismissal of this action with prejudice, and (6) withdrawal of certain proofs of claim made by plaintiff and/or certain of its affiliates in the bankruptcy cases of the LB Defendants (Case No. 09-17503 and Case No. 09-17505) and in the bankruptcy case of Lehman Brothers Holdings Inc. (Case No. 08-13555), also pending in the United States Bankruptcy Court for the Southern District of New York.  A copy of the Settlement Agreement is enclosed.

      Pursuant to the Settlement Agreement, we are filing herewith our Stipulation and [Proposed] Order of Dismissal of this action.  Although this action was filed, in part, as a derivative action on behalf of Somerset Associates LLC, we respectfully submit that notice of the settlement is not necessary as all of the members of Somerset Associates LLC have agreed to and are parties to the Settlement Agreement.

We respectfully request that the Court enter the proposed Order at its earliest convenience.  Of course, to the extent the Court has any questions with respect to this matter, counsel are available at the Court's request.


Respectfully,


Jeffrey S. Goddess, Esq. (DSBA No. 630)

Cc:     Register in Chancery

## **EXHIBIT C**

**(Notice of Withdrawal of Bankruptcy Claims)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------------x

## WITHDRAWAL OF CLAIM

| | |
|---|---|
| Debtor Name and Case Number: | Lehman Brothers Holdings Inc. (Case No. 08-13555) |
| Creditor Name and Address: | Somerset Associates, LLC<br>c/o Jonathan I. Rabinowitz, Esq.<br>Rabinowitz, Lubetkin & Tully, LLC<br>293 Eisenhower Parkway, Suite 100<br>Livingston, New Jersey  07039 |
| Claim Number (if known): | 25935 |
| Date Claim Filed: | September 21, 2009 |
| Total Amount of Claim Filed: | $4,690,609.00 |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor.  I hereby withdraw the above-referenced claim and authorize the Debtors' claims and noticing agent to file and reflect this withdrawal on the official claims register for the above-referenced Debtor.

| | |
|---|---|
| Signature: | Title: |
| Printed Name: | Dated: |

## DEFINITIONS

*Debtor*
The person, corporation or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*
A creditor is any person, corporation, or other entity to which the debtor owed a debt.

*Proof of Claim*
A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).

### ITEMS TO BE COMPLETED ON THIS WITHDRAWAL OF CLAIM

*Name of Debtor and Case Number:*
Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number.  A list of the Debtors and their cases numbers is provided below.

| | | | | | |
|---|---|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | 08-13904 | Lehman Scottish Finance L.P. |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | 08-13664 | PAMI Statler Arms LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | 08-13902 | Lehman Brothers Financial Products Inc. |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-17331 | Merit, LLC |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | 09-17503 | LB Somerset LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | 09-17505 | LB Preferred Somerset LLC |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | | |

*Information about Creditor:*
Complete the section giving the name and address of the creditor that was listed on the previously filed Proof of Claim form.

*Information identifying the Claim that is to be withdrawn:*
Complete the section giving the court claim number, date claim was filed and total amount of claim filed to help identify the claim that is to be withdrawn.

**Sign and print the name and title, if any, of the creditor or other person authorized to file this withdrawal of claim (attach copy of power of attorney, if any).**

**THIS FORM MUST BE SENT TO EPIQ BANKRUPTCY SOLUTIONS LLC, THE DEBTORS' AUTHORIZED CLAIMS AND NOTICING AGENT AT:**

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
-----------------------------------------------------------------------x

## WITHDRAWAL OF CLAIM

| | |
|---|---|
| Debtor Name and Case Number: | LB Preferred Somerset LLC (Case No. 09-17505) |
| Creditor Name and Address: | Somerset Associates, LLC<br>c/o Jonathan I. Rabinowitz, Esq.<br>Rabinowitz, Lubetkin & Tully, LLC<br>293 Eisenhower Parkway, Suite 100<br>Livingston, New Jersey  07039 |
| Claim Number (if known): | 66609 |
| Date Claim Filed: | May 13, 2010 |
| Total Amount of Claim Filed: | $7,534,687.10 |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor.  I hereby withdraw the above-referenced claim and authorize the Debtors' claims and noticing agent to file and reflect this withdrawal on the official claims register for the above-referenced Debtor.

| | |
|---|---|
| Signature: | Title: |
| Printed Name: | Dated: |

## DEFINITIONS

*Debtor*

The person, corporation or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*

A creditor is any person, corporation, or other entity to which the debtor owed a debt.

*Proof of Claim*

A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).

## ITEMS TO BE COMPLETED ON THIS WITHDRAWAL OF CLAIM

*Name of Debtor and Case Number:*

Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number. A list of the Debtors and their cases numbers is provided below.

| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | 08-13904 | Lehman Scottish Finance L.P. |
|---|---|---|---|---|---|
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | 08-13664 | PAMI Statler Arms LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | 08-13902 | Lehman Brothers Financial Products Inc. |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-17331 | Merit, LLC |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | 09-17503 | LB Somerset LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | 09-17505 | LB Preferred Somerset LLC |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | | |

*Information about Creditor:*

Complete the section giving the name and address of the creditor that was listed on the previously filed Proof of Claim form.

*Information identifying the Claim that is to be withdrawn:*

Complete the section giving the court claim number, date claim was filed and total amount of claim filed to help identify the claim that is to be withdrawn.

**Sign and print the name and title, if any, of the creditor or other person authorized to file this withdrawal of claim (attach copy of power of attorney, if any).**

**THIS FORM MUST BE SENT TO EPIQ BANKRUPTCY SOLUTIONS LLC, THE DEBTORS' AUTHORIZED CLAIMS AND NOTICING AGENT AT:**

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------------x

## WITHDRAWAL OF CLAIM

| | |
|---|---|
| Debtor Name and Case Number: | LB Somerset LLC (Case No. 09-17503) |
| Creditor Name and Address: | Somerset Associates, LLC<br>c/o Jonathan I. Rabinowitz, Esq.<br>Rabinowitz, Lubetkin & Tully, LLC<br>293 Eisenhower Parkway, Suite 100<br>Livingston, New Jersey  07039 |
| Claim Number (if known): | 66610 |
| Date Claim Filed: | May 13, 2010 |
| Total Amount of Claim Filed: | $7,534,687.10 |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor.  I hereby withdraw the above-referenced claim and authorize the Debtors' claims and noticing agent to file and reflect this withdrawal on the official claims register for the above-referenced Debtor.

| | |
|---|---|
| Signature: | Title: |
| Printed Name: | Dated: |

## DEFINITIONS

*Debtor*
The person, corporation or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*
A creditor is any person, corporation, or other entity to which the debtor owed a debt.

*Proof of Claim*
A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).

## ITEMS TO BE COMPLETED ON THIS WITHDRAWAL OF CLAIM

*Name of Debtor and Case Number:*
Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number.  A list of the Debtors and their cases numbers is provided below.

| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | 08-13904 | Lehman Scottish Finance L.P. |
|---|---|---|---|---|---|
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | 08-13664 | PAMI Statler Arms LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | 08-13902 | Lehman Brothers Financial Products Inc. |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-17331 | Merit, LLC |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | 09-17503 | LB Somerset LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | 09-17505 | LB Preferred Somerset LLC |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | | |

*Information about Creditor:*
Complete the section giving the name and address of the creditor that was listed on the previously filed Proof of Claim form.

*Information identifying the Claim that is to be withdrawn:*
Complete the section giving the court claim number, date claim was filed and total amount of claim filed to help identify the claim that is to be withdrawn.

**Sign and print the name and title, if any, of the creditor or other person authorized to file this withdrawal of claim (attach copy of power of attorney, if any).**

**THIS FORM MUST BE SENT TO EPIQ BANKRUPTCY SOLUTIONS LLC, THE DEBTORS' AUTHORIZED CLAIMS AND NOTICING AGENT AT:**

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

------------------------------------------------------------------------x

## WITHDRAWAL OF CLAIM

| | |
|---|---|
| Debtor Name and Case Number: | Lehman Brothers Holdings Inc. (Case No. 08-13555) |
| Creditor Name and Address: | Somerset Associates, LLC<br>c/o Jonathan I. Rabinowitz, Esq.<br>Rabinowitz, Lubetkin & Tully, LLC<br>293 Eisenhower Parkway, Suite 100<br>Livingston, New Jersey  07039 |
| Claim Number (if known): | 66925 |
| Date Claim Filed: | July 8, 2010 |
| Total Amount of Claim Filed: | $7,534,687.10 |

I, the undersigned, am the above-referenced creditor, or an authorized signatory for the above-referenced creditor.  I hereby withdraw the above-referenced claim and authorize the Debtors' claims and noticing agent to file and reflect this withdrawal on the official claims register for the above-referenced Debtor.

| | |
|---|---|
| Signature: | Title: |
| Printed Name: | Dated: |

## DEFINITIONS

*Debtor*
The person, corporation or other entity that has filed a bankruptcy case is called the debtor.

*Creditor*
A creditor is any person, corporation, or other entity to which the debtor owed a debt.

*Proof of Claim*
A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the debtor owed a creditor (the amount of the creditor's claim).

### ITEMS TO BE COMPLETED ON THIS WITHDRAWAL OF CLAIM

*Name of Debtor and Case Number:*
Fill in the name of the debtor in the bankruptcy case, and the bankruptcy case number.  A list of the Debtors and their cases numbers is provided below.

| | | | | | |
|---|---|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | 08-13904 | Lehman Scottish Finance L.P. |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | 08-13664 | PAMI Statler Arms LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | 08-13902 | Lehman Brothers Financial Products Inc. |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | 09-17331 | Merit, LLC |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | 09-17503 | LB Somerset LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | 09-17505 | LB Preferred Somerset LLC |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | | |

*Information about Creditor:*
Complete the section giving the name and address of the creditor that was listed on the previously filed Proof of Claim form.

*Information identifying the Claim that is to be withdrawn:*
Complete the section giving the court claim number, date claim was filed and total amount of claim filed to help identify the claim that is to be withdrawn.

**Sign and print the name and title, if any, of the creditor or other person authorized to file this withdrawal of claim (attach copy of power of attorney, if any).**

**THIS FORM MUST BE SENT TO EPIQ BANKRUPTCY SOLUTIONS LLC, THE DEBTORS' AUTHORIZED CLAIMS AND NOTICING AGENT AT:**

**Epiq Bankruptcy Solutions, LLC**
**Attn: Lehman Brothers Holdings**
**757 Third Avenue, 3rd Floor**
**New York, New York 10017**