WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                             :
                                                                  :  **Chapter 11 Case No.**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                      :  **08-13555 (JMP)**
                                                                  :
                         Debtors.                                 :  **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363
OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY
PROCEDURE 6004 AND 9019 FOR AUTHORIZATION TO MODIFY CERTAIN
TERMS OF THE RESTRUCTURING OF THE ARCHSTONE CREDIT FACILITIES**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc.,

("LCPI"), Luxembourg Residential Properties Loan Finance S.a.r.l ("Luxco") and their affiliated

debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), submit this motion (the

"Motion"), and respectfully represent:

**Preliminary Statement**

1.    On May 25, 2010, the Court approved a restructuring (the

"Restructuring") of the investments made in Archstone-Smith Trust (together with its affiliates,

"Archstone") by certain of the Debtors and their affiliates, affiliates of Bank of America ("Bank

of America") and affiliates of Barclays Capital Real Estate Inc. ("Barclays") pursuant to the *Order Granting the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004 and 9019 for Authorization to Restructure Certain Terms of the Archstone Credit Facilities* [Docket No. 9229] (the "Restructuring Order"). The key terms of the Restructuring involved, among other things, the conversion of financing provided to Archstone by the Debtors' affiliates, Bank of America and Barclays (collectively, the "Co-Sponsors") in the principal amount of approximately $5.2 billion, plus accrued interest, to classes of new equity interests entitled to a preferred return (the "New Equity Interests"). The Debtors and the Co-Sponsors are still negotiating the Restructuring and, therefore, its terms are not yet final.[1] Since entry of the Restructuring Order, however, the Debtors have made significant progress toward finalizing the Restructuring for the benefit of their estates. The Debtors file this Motion in order to apprise the Court of such developments, including a modification to the terms of the Restructuring that principally involves the conversion of additional preexisting debt in Archstone to a new class of New Equity Interests. The Debtors fully expect to consummate the transactions contemplated under the Restructuring as soon as is practical upon approval of this Motion.

**Background**

2.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries filed with this Court voluntary petitions under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LCPI and Luxco commenced their voluntary cases under Chapter 11 of

---

[1] A definitive agreement on the terms of the Restructuring will require final approval by Barclays and Bank of America, and the Debtors will not proceed with the Restructuring without such final approval by Barclays and Bank of America.

the Bankruptcy Code on October 5, 2008 and January 7, 2009, respectively.  The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. On September 17, 2008, the United States Trustee for the Southern District of New York ( "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code ( "Creditors' Committee").

4. On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Nos. 8330 and 8332].

### Lehman's Business

5. Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

6. Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Transaction Background**

7.  In 2007, certain of the Debtors and their non-Debtor affiliates made certain equity investments and loans in connection with the leveraged buyout of a publicly-traded real estate investment trust known as Archstone. Through their non-Debtor affiliates, the Debtors currently hold approximately 47% of the common equity interests in Archstone. Barclays and Bank of America collectively hold approximately 47% of such interests. In total, affiliates of Lehman, Bank of America and Barclays invested approximately $4.8 billion in the aggregate into the common equity of Archstone, with approximately $2.4 billion attributable to the Debtors' indirect interests. In connection with the acquisition of Archstone, the Co-Sponsors provided secured financing to Archstone that consisted of certain term loans, revolving loans, a development loan and mezzanine loans (the "Acquisition Financing"). As of September 30, 2010, LCPI, Luxco and their affiliates collectively held a beneficial interest in the Acquisition Financing provided to Archstone in the aggregate principal amount of approximately $2.6 billion, inclusive of certain corporate loans made to Archstone (the "Cutoff Period Loans") in the aggregate principal amount of approximately $65 million. The other Co-Sponsors hold, in the aggregate, approximately $3.0 billion of such secured debt, based on principal amount, including the Cutoff Period Loans in the aggregate principal amount of approximately $172 million. In March 2009, the Co-Sponsors committed an additional $485 million, plus available letters of credit, as new priority financing (the "Priority Financing") to provide Archstone with customary operating liquidity. The majority of the Acquisition Financing and the Priority Financing was extended by the Co-Sponsors to an Archstone entity ("Archstone Borrower") and guaranteed by Archstone Borrower's direct and indirect parents. As a result, such debt is primarily secured by the equity value of Archstone Borrower's assets rather than specific properties.

**The Restructuring**

8.      The key terms of the Restructuring approved by the Court were (i) the conversion of the Acquisition Financing in the principal amount of approximately $5.2 billion, plus accrued interest, to classes of the New Equity Interests (the "Equity Conversion"), (ii) the conversion of the Priority Financing to a new revolving credit facility with an extended maturity date, and (iii) extensions of the maturity dates of the portions of the Acquisition Financing that are not converted to preferred equity.  The original terms of the Restructuring provided that approximately $2.4 billion of $2.5 billion, by principal amount, of the Acquisition Financing (excluding the Cutoff Period Loans) beneficially held by LCPI or its affiliates, plus accrued interest, will be converted to New Equity Interests as part of the Equity Conversion.  The Equity Conversion involves multiple tranches of debt, each to be converted to New Equity Interests.  The New Equity Interests will have preferred returns substantially consistent with the existing interest rates of the applicable Acquisition Financing subject to the Equity Conversion (the "Converted Loans"), but with no set redemption date.  The New Equity Interests are structured to accrue dividends with no requirement to pay such dividends current.  The Debtors will beneficially own the same percentage of New Equity Interests as the percentages of their current interests in the Converted Loans.  The priority of the New Equity Interests is intended to maintain the existing priority of the Converted Loans and, as a result, remain senior to existing preferred equity interests in Archstone.

9.      The terms of the Restructuring, as approved by the Court, contemplated the conversion of Acquisition Financing in the aggregate principal amount of $5.2 billion, plus accrued interest, to New Equity Interests.  Such terms also contemplated that the Cutoff Period Loans, which have an aggregate principal amount of $237 million, would have remained

outstanding as a new fully-funded term loan (the "Post-Conversion Term Loan").  The Debtors and their affiliates would have held interests in the Post-Conversion Term Loan in the same amount they currently hold in the Cutoff Period Loans, approximately $65 million based on the aggregate principal amount of such loans.  The Post-Conversion Term Loan would not have amortized prior to maturity, and payments of accrued interest due thereunder would not have been capitalized until maturity.  Additionally, the Priority Financing, plus certain outstanding letters of credit, would have been converted into a new revolving credit facility in the maximum principal amount of approximately $596 million (the "Post-Conversion Revolver" and together with the Post-Conversion Term Loan, the "Post-Conversion Facilities").

### The Modified Terms of the Restructuring

10.    As a result of further negotiations, the Debtors wish to modify certain terms of the Restructuring.[2]  The principal change to the terms of the Restructuring is that the Cutoff Period Loans will be converted into New Equity Interests[3] as part of the Equity

---

[2] With respect to the Post-Conversion Revolver, the original terms of the Restructuring contemplated a revolving credit facility with up to two tranches.  However, as noted in the motion to approve the Restructuring, the Co-Sponsors had the discretion to agree upon the amount of one of such tranches.  Pursuant to the modified terms of the Restructuring, the Post-Conversion Revolver will now be a single-tranche or multi-tranche revolving credit facility, in the discretion of the Co-Sponsors in the same aggregate maximum principal amount as originally contemplated.  The Post-Conversion Revolver is substantively consistent with the terms of the Restructuring as originally described to the Court by the Debtors.

The original terms of the Restructuring also contemplated that, with respect to certain asset sales and other extraordinary events undertaken by Archstone, mandatory prepayments of debt owing to the Co-Sponsors were to be applied first to prepay outstanding loans under the Post-Conversion Revolver until paid in full, and among other prepayment provisions, last to prepay the outstanding loans under the Post-Conversion Term Loan.  The Debtors contemplate that, subject to the agreement of Barclays and Bank of America, the payment waterfall governing the application of mandatory prepayments from asset sales and certain other events may be modified, such that other credit exposure of the Co-Sponsors (for example, letters of credit via cash collateralization) will be reduced prior to reducing the entire amount of the Post-Conversion Revolver.  This modification, however, should have no substantive economic effect on the Debtors.

[3] The New Equity Interests will be issued in Archstone Enterprise LP (formerly known as Archstone Multifamily Junior Mezz Borrower LP) ("Enterprise").  Enterprise will, in turn, receive new equity interests entitled to a preferred return in Archstone Property Holdings LLC (formerly known as The Lakes Holdings, LLC) ("Property Holdings"), an affiliate of Archstone.  Pursuant to the Restructuring, Property Holdings will own the majority of the assets currently held by Archstone.  The original terms of the Restructuring contemplated that Enterprise would be

Conversion instead of into the Post-Conversion Term Loan, further reducing Archstone's debt levels.

## Relief Requested

11.  By this Motion, the Debtors seek authorization, pursuant to sections 105 and 363(b)(1) of title 11 of the Bankruptcy Code and Bankruptcy Rules 6004(h) and 9019, to modify the terms of the Restructuring, as set forth herein and consummate all transactions contemplated thereby.

## The Modified Terms of the Restructuring Meet The Legal Standard Established Under Rule 9019 and is in the Best Interests of the Estate

12.  Because the Restructuring contemplates the compromise of outstanding debt extended under the Acquisition Financing and the Priority Financing, the Debtors sought and obtained relief from the Court under Bankruptcy Rule 9019.  For the same reasons that the original terms of the Restructuring are in the best interests of the Debtors' estates, the modified terms of the Restructuring are more beneficial to the interests of the Debtors' estates and should be approved under Bankruptcy Rule 9019. Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).  Bankruptcy Rule 9019 empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles*

---

the managing member of Property Holdings.  The Debtors contemplate that Enterprise or one of its affiliates, as agreed to by the Co-Sponsors, will be the managing member of Property Holdings, and the Co-Sponsors may have the right to remove and replace the managing member.  This modification, however, should have no substantive negative effect on the Debtors.

*St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).  A decision to accept or reject a compromise or settlement is within the sound discretion of the Court.  *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also* 9 COLLIER ON BANKRUPTCY ¶ 9019.02 (15th ed. rev. 2001).  The settlement need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness."  *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization."  *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939).

13.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, . . . and [ ] in the best interest of the estate."  *In re Best Products Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).  While a court must evaluate "all . . . factors relevant to a full and fair assessment of the wisdom of the proposed compromise," *TMT Trailer Ferry*, 390 U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being settled, or conduct a full independent investigation.  *Drexel Burnham Lambert Group*, 134 B.R. at 505.  "The bankruptcy judge does not have to decide the numerous questions of law and

fact. . . . The court need only canvass the settlement to determine whether it is within the acceptable range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

14. The court may give weight to the "informed judgments of the . . . debtor-in-possession and their counsel that a compromise is fair and equitable, and consider the competency and experience of counsel who support the compromise." *Drexel Burnham Lambert Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *accord In re Ashford Hotels, Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other.") (internal citations omitted).

15. Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427. Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

16. Based on the Debtors' determination that the Restructuring provides the best framework for preserving and maximizing the prospects of a recovery of their sizeable debt and equity investments in Archstone, the Court approved the Restructuring. The terms of the Restructuring are intended to reduce the leverage of the capital structure of Archstone by approximately $5.2 billion. Notably, once effectuated, the Restructuring, as modified, will further reduce the leverage of the capital structure of Archstone by an additional amount of approximately $237 million for a total reduction of approximately $5.4 billion by effect of the

Equity Conversion. Additionally, the modified Restructuring (i) will further provide the Debtors with the benefit of enhanced terms governing the provisions of the Post-Conversion Facilities, as compared to those of the existing Acquisition Financing facilities; (ii) through such deleveraging and enhanced economics, is anticipated to further maximize the value of the Post-Conversion Financing; (iii) further improves Archstone's capital structure to potentially attract new third-party debt and equity; and (iv) is expected to further minimize the need for additional capital infusions from the Co-Sponsors by reducing the accrual and payment of interest. Additionally, by substantially improving Archstone's balance sheet and liquidity position, the Restructuring, as modified, is anticipated to enhance market perception of the financial condition of Archstone, as a premier real estate owner, operator, acquirer and developer.

17. The Equity Conversion, as previously approved by the Court, involved the conversion of debt held by the Debtors and their affiliates in the principal amount of approximately $2.4 billion. Under the modified terms of the Restructuring, the principal amount of debt held by the Debtors and their affiliates that will be converted to New Equity Interests will increase by approximately $65 million to a total of approximately $2.5 billion. Although under the modified terms of the Restructuring the holders of the New Equity Interests would relinquish their secured debt positions with respect to the Cutoff Period Loans in exchange for preferred equity positions, recovery of the amounts owing under such loans is expected to be facilitated by further deleveraging Archstone's balance sheet through the modifications to the Restructuring set forth herein. While the Cutoff Period Loans will no longer be secured debt after the Restructuring, the priority of the New Equity Interests is intended to maintain the existing priority of such loans relative to the interests of other creditors of and holders of equity in Archstone. Indeed, because the majority of the Acquisition Financing and the Priority Financing

was extended by the Co-Sponsors to Archstone Borrower and guaranteed by its direct and indirect parents, the Cutoff Period Loans were primarily secured by the equity value of Archstone Borrower's assets rather than specific properties.

18. The modified terms of the Restructuring are the product of a protracted, good-faith, arms'-length negotiation process. The negotiation of the Restructuring was still ongoing upon entry of the Restructuring Order. However, continued negotiations have led to the modified terms of the Restructuring, which remain substantially similar to the terms approved in the Restructuring Order. The parties to such negotiations, each represented by competent counsel, have participated in numerous meetings and negotiations. For all of the foregoing reasons, the modified terms of the Restructuring meet the requirements of Bankruptcy Rule 9019, is in the best interests of the Debtors' estates, and should be approved.

### The Modification of the Terms of the Restructuring is an Appropriate Exercise of the Debtors' Business Judgment

19. In the Restructuring Order, the Court ruled that the Restructuring is an appropriate exercise of the Debtors' business judgment. For the same reasons, the modified terms of the Restructuring should be approved. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition, or other use of a debtor's assets, courts in the Second Circuit, in applying this section, have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v.*

*Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).  Section 105 of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

20. It is generally understood that "[when] the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is a strong presumption that "'the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.  *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

21. For the reasons set forth above, approval of the modified terms of the Restructuring is in the best interests of the Debtors' estates.  The Restructuring, as modified, is necessary, in the Debtors' judgment, to allow the Debtors to maximize the prospect of a recovery on their investments in Archstone.  In light of the direct and indirect benefits inuring to the Debtors and their estates and creditors pursuant to the modified terms of the Restructuring, entry into the Restructuring, as modified as set forth herein is a proper exercise of the Debtors' business judgment and should be approved.

### Further Modifications

22. While the principal terms of the Restructuring have been finalized, in the process of documenting the Restructuring, it may become necessary to make further

modification to certain terms of the Restructuring. The Debtors respectfully request authority to further modify the terms of the Restructuring, so long as, upon consultation with the Creditors' Committee, the Debtors determine that such modifications have no materially negative effect on the Debtors' claims or interests with respect to Archstone as modified by the order approving this Motion and the Restructuring.

### Relief Under Bankruptcy Rule 6004(h)

23. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(h). In addition to the Acquisition Financing and the Priority Financing, financing commitments were provided to certain of Archstone's subsidiaries through loan facilities made by third-party lenders. If the transactions contemplated by the Restructuring are not consummated prior to November 30, 2010, Archstone may face uncertainty regarding the interest rate payable by Archstone under such third-party financing and/or hedging costs with respect to such third-party financing, a substantial portion of which would have to be funded by the Debtors and their affiliates. Moreover, the Restructuring was approved by the Court on May 25, 2010, and the proposed modifications are immaterial in the context of the overall value of the transaction and are beneficial to the Debtors. As a result, the Debtors believe it is in the best interests of their estates for the Debtors to be in a position to approve and consummate the Restructuring, as modified by the terms set forth herein, prior to November 30, 2010 so that Archstone is in a position to consummate the Restructuring and thereby avoid the potential for such hedging costs and interest rate uncertainty. Accordingly, the Debtors respectfully request that any order approving the Restructuring be effective immediately by waiving the 14-day stay.

**Notice**

24. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the amended order entered on June 17, 2010 governing case management and administrative procedures [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for Archstone; (vii) the attorneys for Bank of America and (viii) the attorneys for Barclays. The Debtors submit that no other or further notice need be provided.

25. No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: November 2, 2010
      New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x
                                                                :
In re                                                           :    Chapter 11 Case No.
                                                                :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                        :    08-13555 (JMP)
                                                                :
                         Debtors.                               :    (Jointly Administered)
                                                                :
                                                                :
------------------------------------------------------------------x

**ORDER GRANTING THE DEBTORS' MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 6004 AND 9019 FOR AUTHORIZATION TO MODIFY CERTAIN TERMS OF THE RESTRUCTURING OF THE ARCHSTONE CREDIT FACILITIES**

Upon the motion (the "Motion"),[1] of Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc. ("LCPI"), Luxembourg Residential Properties Loan Finance S.a.r.l and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to modify the terms of the restructuring (the "Restructuring") of certain documents (together with all collateral agreements and other documentation entered in connection with the transactions contemplated thereby, the "Transaction Documents") evidencing financing extended to Archstone Smith-Trust and/or its affiliates (collectively, "Archstone") pursuant to the *Order Granting the Debtors' Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 6004 and 9019 for Authorization to Restructure Certain Terms of the Archstone Credit*, dated May 25, 2010

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

[Docket No. 9229] (the "Restructuring Order"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered June 17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors (the "Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) counsel to Archstone; (vii) counsel to Bank of America, N.A.; and (viii) counsel to Barclays Capital, Inc., and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefore, it is

       ORDERED that the Motion is granted; and it is further

       ORDERED that the objections to the Motion, if any, that have not otherwise been withdrawn or resolved are overruled; and it is further

       ORDERED that, pursuant to Bankruptcy Rule 9019 and sections 105(a) and 363(b) of the Bankruptcy Code, the modified terms of the Restructuring as set forth in the

Motion (the "<u>Modified Restructuring</u>") is hereby approved and the Debtors: (i) are duly authorized to consummate any and all of the transactions contemplated thereby, (ii) are duly authorized to execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers (including, without limitation, the execution and delivery of one or more restated documents, agreements modifying or amending the Transaction Documents, successor agency agreements, security agreements, pledge agreements, control agreements, mortgages and financing statements) that may be necessary or appropriate to consummate each of the component transactions contemplated by the Modified Restructuring; and (iii) shall have the right in connection with and following consummation of the transactions contemplated by the Modified Restructuring to vote and make all determinations and take all other actions under each Transaction Document as modified consistent in all material respects with the terms of the Modified Restructuring, it being understood that nothing in this Order shall prejudice the right of LCPI to assign, in accordance with the terms of the Transaction Documents consistent in all material respects with the terms of the Term Sheet (as defined in the Restructuring Order) as modified as set forth in the Motion, any portion of its loans and commitments to, or equity interests in, Archstone, any borrower under the Transaction Documents, or their affiliates, it being further understood that any actions described in this paragraph taken by the Debtors or their affiliates (a) need not be taken simultaneously and may be taken as part of separate consecutive transactions and (b) may be taken without the necessity of any further court proceedings or approval or any consent of any third party, and shall be conclusive and binding in all respects on all parties in interest in these cases; provided, however, that for the avoidance of doubt, the Debtors are authorized and not directed to take the actions set forth in this paragraph; and it is further

ORDERED that, notwithstanding the provisions of the Restructuring Order or this Order, the Transaction Documents may be further modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court, *provided* that, in each case, upon consultation with the Creditors' Committee, the Debtors determine that such modification, amendment or supplement has no materially negative effect on the Debtors' claims or interests with respect to Archstone as modified by this Order and the Restructuring; and it is further

ORDERED that this Order shall be binding upon and shall govern the acts of all entities, including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental units, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, contract, or the duties of their office to accept, acknowledge, assent or consent to, file, register, record or release any documents or instruments with respect to any Transaction Document and consummation of the transactions contemplated by the Modified Restructuring; and it is further

ORDERED that (i) any and all rights to, interests in or liens against the Acquisition Financing currently held by Woodlands Commercial Bank or Aurora Bank FSB (the "Old Collateral") shall attach to and be deemed of continuing force and effect with respect to the New Equity Interests to which such Old Collateral is converted pursuant to the Modified Restructuring, upon the same terms and conditions as would have applied with respect to the Old Collateral, (ii) this Order shall be deemed to create valid, enforceable, first priority perfected security interests in the New Equity Interests in each case to the extent, but only to the extent, an existing valid, enforceable, first priority perfected security interest exists in the Old Collateral

converted to such New Equity Interests pursuant to the Modified Restructuring and (iii) the Debtors shall cooperate with Woodlands Commercial Bank and Aurora Bank FSB to execute any documents or instruments as reasonably requested by Woodlands Commercial Bank and Aurora Bank FSB to effectuate such security interests, subject to the limitations set forth herein; <u>provided</u>, <u>however</u>, that Woodlands Commercial Bank, Aurora Bank FSB, the Debtors and all other Lehman entities shall each be deemed to have exactly the same rights, remedies, claims, positions, causes of action and defenses with respect to the New Equity Interests as existed with respect to the Old Collateral prior to the Restructuring; and it is further

ORDERED that, notwithstanding anything to the contrary in this Order, (i) neither Woodlands Commercial Bank nor Aurora Bank FSB shall be bound by any arguments, statements, assumptions, findings or determinations regarding the value of the Old Collateral or the New Equity Interests that are made during the hearing in respect of the Motion or that may be set forth in this Order and (ii) the rights of Woodlands Commercial Bank and Aurora Bank FSB to assert at any time that they are entitled to additional collateral (either pursuant to their respective contractual agreements with the Debtors or pursuant to the right of secured creditors to adequate protection), and the Debtors' right to oppose any such assertion (including any assertion by Woodlands Commercial Bank or Aurora Bank FSB of its status as a secured creditor) are fully preserved; and it is further

ORDERED that, except as expressly provided in the Motion or this Order, nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing and shall not be stayed pursuant to Bankruptcy Rule 6004; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: November __, 2010
    New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE