B 210A (Form 210A) (12/09)

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re **Lehman Brothers Holdings Inc.**                    Case No. **08-13555 (JMP)**

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

**ILLIQUIDX LTD**                               **CITIGROUP GLOBAL MARKETS INC.**
Name of Transferee                               Name of Transferor

Name and Address where notices to transferee      Court Claim # (if known): **62783**
should be sent:                                   Total Amount of Claim Filed:
                                                  USD $ 7,619,741.00 plus all accrued interest,
                                                  fees and recoveries due.
                                                  Amount of Claim Transferred:
                                                  USD $ 7,619,741.00 plus all accrued interest,
                                                  fees and recoveries due.
                                                  ISIN/CUSIP: XS0302118632; XS0326823324;
                                                  XS0329878770

**Celestino Amore**
**Managing Director**                             Date Claim Filed: November 2, 2009
**Illiquidx Ltd**
**107-111 Fleet Street**
**London EC4A 2AB, UK**
**Phone: +44 207 936 9309**
**Email: amore@illiquidx.com**                    Phone:
                                                  Last four Digits of Acct #:

Name and Address where transferee payments
should be sent (if different from above):

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____          Date:  November 3, 2010
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

**Form 210B (12/09)**

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re **Lehman Brothers Holdings Inc.**                    **Case No. 08-13555 (JMP)**

## NOTICE OF TRANSFER OF CLAIM
## OTHER THAN FOR SECURITY

Claim No. **62783** was filed or deemed filed under 11 U.S.C. § 1111(a) in this case by the
alleged transferor. As evidence of the transfer of that claim, the transferee filed a Transfer of Claim
Other than for Security in the clerk's office of this court on **November 3, 2010**

| | |
|---|---|
| **CITIGROUP GLOBAL MARKETS INC.** | **ILLIQUIDIX LTD** |
| Name of Alleged Transferor | Name of Transferee |

| | |
|---|---|
| Address of Alleged Transferor: | Address of Transferee: |
| **390 Greenwich St.,** | **Illiquidx Ltd** |
| **Fourth Floor** | **107-111 Fleet Street** |
| **New York, NY 10013** | **London EC4A 2AB** |
| **USA** | **United Kingdom** |

~~DEADLINE TO OBJECT TO TRANSFER~~

The alleged transferor of the claim is hereby notified that objections must be filed with the court
within twenty-one (21) days of the mailing of this notice. If no objection is timely received by the
court, the transferee will be substituted as the original claimant without further order of the court.

Date:_____                    _____
                                   CLERK OF THE COURT

## AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
## LEHMAN PROGRAM SECURITY

TO:     THE DEBTOR AND THE BANKRUPTCY COURT

1.      For value received, the adequacy and sufficiency of which are hereby acknowledged, **CITIGROUP GLOBAL MARKETS INC.** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **Illiquidx Ltd** the ("Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the applicable percentage specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to Proof of Claim Number **62783** filed by or on behalf of Seller's **predecessor in interest** (the "Proof of Claim") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto.

2.      Seller hereby represents and warrants to Purchaser that:  (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors; and (g) as of the date of this Agreement, the Purchased Securities have not been accelerated.

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims.  Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim.  Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller.  Seller

hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.    Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.    Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.    Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 28th day of October 2010.

CITIGROUP GLOBAL MARKETS INC

By _____
Name: Rohit Bansal
Title: Managing Director

390 Greenwich Street, 4th Floor
New York, NY 10013

Illiquidx Ltd

By _____
Name: Celestino _____
Title: Managing Director

107-111 Fleet Street
London EC4A 2AB
UNITED KINGDOM

Schedule 1

Transferred Claims

Purchased Claim

100.00% = US$1,923,625.00 of XS0302118632 claim of US$1,923,625.00; US$2,848,058.00 of XS0326823324 claim of US$2,848,058.00; and US$2,848,058.00 of XS0329878770 claim of US$2,848,058.00 (the outstanding amount of the Proof of Claim as of October 27, 2010) plus all accrued interest, fees and recoveries due..

Lehman Programs Securities to which Transfer Relates

| Description of Security | ISIN/CUSIP | Issuer | Guarantor | Claim Amount (Notional Amount plus Accrued Interest) | Coupon | Maturity |
|---|---|---|---|---|---|---|
| Lehman Brothers Treasury Co. B.V. Issue of JPY200,000,000 REIT Index-Linked Notes due May 30, 2017 unconditionally and irrevocably guaranteed by Lehman Brothers Holdings Inc. under the US$ 100,000,000,000 Euro Medium-Term Note Program | XS0302118632 | Lehman Brothers Treasury Co. BV | Lehman Brothers Holdings Inc. | JPY200,000,000 Notional Amount plus JPY2,625,000 Accrued Interest = JPY202,625,000 (US$ 1,923,625 @0.009493523) plus interest, fees and recoveries due | Fixed-Rate and determined in accordance with the formula | May 30, 2017 |

| Description | ISIN | Issuer | Guarantor | Amount | Interest | Maturity |
|---|---|---|---|---|---|---|
| Lehman Brothers Treasury Co. B.V. Issue of JPY300,000,000 Index-Linked Notes due October 23, 2017 unconditionally and irrevocably guaranteed by Lehman Brothers Holdings Inc. under the US$ 100,000,000,000 Euro Medium-Term Note Program | XS0326823324 | Lehman Brothers Treasury Co. BV | Lehman Brothers Holdings Inc. | JPY300,000,000 (US$ 2,848,058 @0.009493527) plus all accrued interest, fees and recoveries due | Index-Linked Interest | October 23, 2017 |
| Lehman Brothers Treasury Co. B.V. Issue of JPY300,000,000 Index-Linked Notes due November 16, 2022 unconditionally and irrevocably guaranteed by Lehman Brothers Holdings Inc. under the US$ 100,000,000,000 Euro Medium-Term Note Program | XS0329878770 | Lehman Brothers Treasury Co. BV | Lehman Brothers Holdings Inc. | JPY300,000,000 (US$ 2,848,058 @0.009493527) plus all accrued interest, fees and recoveries due | Index-Linked Interest | November 16, 2022 |

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **LEHMAN SECURITIES PROGRAMS PROOF OF CLAIM** |
|---|---|

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)   0000062783 |
|---|---|---|

**Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009**

---

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor) Lehman Brothers International (Europe) (in administration)
25 Bank Street
London
E14 5LE
United Kingdom
Attn: Steven Anthony Pearson
See attached for additional contact information

Telephone number: see attached  Email Address: see attached

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

---

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number: _____  Email Address: _____

---

1.   Provide the total amount of your claim based on Lehman Programs Securities.  Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008.  The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim: $ _see attached_____ (Required)

☒   Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2.   Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates.  If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN):** see attached          (Required)

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim.  You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf).  If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:** see attached

(Required)

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim.  You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf).  Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:** 97816 EUROCLEAR

(Required)

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

FOR COURT USE ONLY

**FILED / RECEIVED**

**NOV 0 2 2009**

EPIQ BANKRUPTCY SOLUTIONS, LLC

---

| Date.<br>10/29/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. (signature)  Administrator (acting as agent and without personal liability) |
|---|---|

Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571

MICHAEL JOHN ANDREW JERVIS
Administrator (acting as agent and without personal liability)

**ATTACHMENT TO LEHMAN PROGRAMS SECURITIES CLAIM**
**OF LEHMAN BROTHERS INTERNATIONAL (EUROPE) (IN ADMINISTRATION)**

1.     Lehman Brothers International (Europe) (in administration) (including all of its international branches, "**LBIE**"), acting through one of Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann or Anthony Victor Lomas (together, the "**Administrators**" and each an "**Administrator**") as agents for LBIE and without personal liability, hereby files this Lehman Programs Securities (as defined in the Bar Date Order dated July 2, 2009, "**LPS**") omnibus claim (the "**LPS Omnibus Claim**") against Lehman Brothers Holdings Inc. ("**LBHI**" and, together with its direct and indirect subsidiaries, the "**Lehman Group**"), case number 08-13555 (JMP) (the "**Bankruptcy Proceeding**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"). LBIE files this LPS Omnibus Claim in connection with the LPS bar date for the purpose of preserving the rights of its clients (which term, for the avoidance of doubt, means in this LPS Omnibus Claim, LBIE's own clients and the clients of LBIE's affiliates) on whose behalf this LPS Omnibus Claim is made under title 11 of the United States Code (the "**Bankruptcy Code**"). This LPS Omnibus Claim, including, without limitation, each of the values identified herein and in any supporting workpapers attached hereto, has been calculated to the best of the Administrators' knowledge in reliance on LBIE's books and records as of the date of this filing and as qualified in every respect as set forth in greater detail herein. LBIE reserves the right to supplement, amend or correct the claim population and each claim value or value placeholder reported in this LPS Omnibus Claim.

### I.     BACKGROUND

2.     LBIE (an unlimited company incorporated in England and Wales with registered number 02538254) was the principal trading company of the Lehman Group in Europe. LBIE's business involved the global provision of a wide range of financial services and products, including trading and broking, equity and fixed income instruments and financial derivatives on behalf of its clients and itself. LBHI was the parent holding company in the United States of the Lehman Group, which provided a wide array of financial services in equity and fixed income sales, trading and research, investment banking, asset management, private investment management and private equity. LBHI and LBIE functioned as part of an integrated, international financial group whose businesses were closely intertwined.

3.     On September 15, 2008, LBIE was placed into administration by order of the High Court of England and Wales (the "**Administration Date**"). On the same date, LBHI filed for bankruptcy protection in the Bankruptcy Court pursuant to chapter 11 of the Bankruptcy Code (the "**Filing Date**").

### II.     DESCRIPTION OF LPS OMNIBUS CLAIM

4.     LBIE asserts and reserves the rights of its clients, whose holdings are identified in the supporting workpapers attached hereto, under the Bankruptcy Code, and other applicable law, with respect to their claims, whether or not such clients have independently filed a claim on their own behalf in the Bankruptcy Proceeding. LBIE has identified the LPS holdings reflected in the attached schedule (the "**LPS Holdings**") by comparing its own books and records against the LPS list dated July 17, 2009 (as amended on September 23, 2009) provided by LBHI on its website (the "**LPS List**"). LBIE has custody of the LPS Holdings, each of which are guaranteed by LBHI. LBIE holds the LPS Holdings for its clients and/or for clients of its affiliates. LBIE estimates that the aggregate amount owing by LBHI to LBIE's clients in connection with Account Number 97816 at EUROCLEAR, subject in

all respects to the reservation of rights and the further discussion as set forth herein, is not less than USD 2,084,741,055 (the "**Valuation**") as displayed in the schedule attached hereto.

5.     With respect to bonds, the Valuation has been calculated as the nominal position multiplied by a factor of one multiplied by accrued interest where applicable and then converted to a USD equivalent using the appropriate exchange rate from Lehman Group systems as at September 15, 2008. Where applicable and/or where possible, the accrued interest has been calculated from the last coupon payment date to September 15, 2008, but due to limited access to the requisite Lehman Group systems post-September 15, 2008, such calculations have been based on alternative sources of information, which are still in the process of being validated.

### III.     RESERVATION OF RIGHTS

6.     The relationship between LBIE and other members of the Lehman Group, including LBHI, was extremely complex. The relationship became more complex upon and after the Administration Date because, among other reasons, the regular maintenance and functioning of the IT systems and resources on which LBIE relied to monitor and record its security and custody positions effectively ceased on the Administration Date. Further, due to the global separation of the Lehman Group since September 15, 2008, there are differences between the internal data platforms and IT systems that various members of the Lehman Group, including LBHI, may continue to use versus the IT systems and resources that LBIE may continue to use. These practical complexities, together with difficulties surrounding the evaluation and interpretation of the underlying contractual documentation and electronic records of the LPS Omnibus Claim, require substantial resources and expertise to analyze and overcome. This lack of access to full books and records, all systems, and requisite personnel impacts LBIE and other members of the Lehman Group alike.

7.     This LPS Omnibus Claim is necessarily being filed in reliance on the Administrators' best understanding of LBIE's books and records as of the date of this filing. The Administrators have only had access to LBIE's books and records since the Administration Date. LBIE reserves all rights to update, revise and supplement the data supporting this LPS Omnibus Claim, including with respect to, but not limited to, the valuation of securities as described herein, as LBIE continues to reconcile its books and records with LBHI and other members of the Lehman Group as applicable. LBIE's clients do not waive any right to amounts due for the LPS Omnibus Claim asserted herein by not stating a specific amount due for any such claims at this time.

8.     This LPS Omnibus Claim has been made for and on behalf of LBIE's clients. To the extent that new or better information becomes available which indicates that one, some or all of the LPS Holdings are in fact held by LBIE for itself, LBIE reserves all of its rights with respect to such LPS Holdings, and will amend the relevant LPS Claim(s) filed by LBIE and/or this LPS Omnibus Claim accordingly.

9.     Valuations have been performed using the best data reasonably available in the period before the Bar Date. Valuations are subject to change should more or better data become available with respect to the following non-exhaustive list of valuation components: (i) despite best efforts to ascertain the complete set of depot settlement data with respect to failed and pending trades, such data is unavailable to LBIE as certain of such data is in the control of other custodians, some of which may confront the same systems and personnel problems that LBIE currently faces; (ii) corporate actions and events and coupons payable data prior to September 15, 2008 are not included due to the need to correct underlying system data before calculating their impact; (iii) LBIE's access to and visibility of information pertaining to the movement of securities post-September 12, 2008 has been

substantially hindered if not terminated completely; (iv) certain pricing factors, including but not limited to inflation indices and multi-currency bonds; (v) with respect to warrant securities that were difficult to value, LBIE has not yet ascribed a value to each such warrant security for the purpose of estimating the amount of the claim in relation thereto; (vi) with respect to securities that have embedded derivatives that effect the principal payout, LBIE is not currently able to compute the impact of the default of the issuer of the security given the complexity and burdensome nature of such exercise; and (vii) other variables.

10.    Moreover, except as otherwise noted herein or in the exhibits hereto, the securities positions reflect depot positions per LBIE's records as of September 12, 2008. LBIE explicitly reserves its right to supplement, amend or revise the LPS Omnibus Claim to reflect valuations as more information becomes available.

11.    Populations of LPS have been reflected in the attached schedule using the best data reasonably available in the period before the Bar Date. Populations are subject to change should more or better data become available with respect to the following non-exhaustive list of factors affecting populations: (i) certain custodian information about transactions is unavailable to LBIE as well as other members of the Lehman Group; (ii) the process of reconciliation with LBHI, other members of the Lehman Group, other custodians, street-side counterparties, and clients is still ongoing and may result in additions to or decreases from the populations of LPS, which may include certain positions about which LBIE has received queries from certain affiliates, but with respect to which no reconciliation has yet been completed; (iii) trades were mis-booked during the pre-administration period and can only be identified and rectified after intensive manual investigation; and (iv) other factors.

12.    LBHI is the guarantor of all LPS, and it is LBHI's books and records that would reflect any and all offerings of foreign Lehman paper that should have been included in the LPS List. LBIE is not in a position to ensure that the LPS List is complete. While LBIE reviewed its books and records for any LPS-qualifying securities that it purchased or holds, and made additions to the LPS List before it was finalized by LBHI, as discussed throughout this LPS Omnibus Claim, LBIE's access to all systems and records is limited. Accordingly, LBIE reserves all rights of its clients to, among other things, supplement this LPS Omnibus Claim should new LPS-qualifying securities not included in the LPS List be discovered after the date of this filing.

13.    The claims not denominated in USD have been converted to USD for the purpose of this submission. In general, LBIE has relied on exchange rates taken from Lehman Group systems as at September 15, 2008. Ultimately, LBIE reserves its clients' rights as to the appropriate foreign exchange rates upon which to base any of its clients' claims.

14.    LBIE hereby asserts on behalf of its clients a claim for interest and other costs including but not limited to attorneys' fees and/or other professional fees on the constituent parts of the LPS Omnibus Claim where appropriate and expressly reserves the right to amend the LPS Omnibus Claim accordingly.

15.    As per the Bar Date Order dated July 2, 2009, LBIE has not attached any documentation supporting the LPS Omnibus Claim other than the attached schedule. LBIE will use its reasonable efforts to make relevant contracts, agreements and other information pertinent to the LPS Omnibus Claim available upon reasonable request by LBHI in a manner and time to be agreed by the parties.

16.    To the extent that any portion of the LPS Omnibus Claim is entitled to administrative priority status under section 507 of the Bankruptcy Code, LBIE claims such priority status to the maximum amount allowed by law on behalf of its clients. The filing of this LPS Omnibus Claim shall in no way be deemed a waiver of LBIE's right to assert on behalf if its clients that any or all of the amounts owed to LBIE's clients by LBHI are entitled to administrative priority status.

17.    LBIE's clients reserve the right to assert any basis for recovery of cash, securities or other assets from LBHI under any legal or equitable theory including, without limitation, indemnification, breach of fiduciary duty, unjust enrichment, conversion, constructive trust, return of property otherwise not properly within LBHI's bankruptcy estate, treatment in accordance with the regulations of the Financial Services Authority or other potentially applicable US or non-US laws and regulation or other priority treatment with respect to each of the claims asserted herein.

18.    LBIE does not waive any right or rights of action that LBIE's clients have or may have against LBHI's estate or any other entity. LBIE reserves any and all rights its clients have or may have with respect to any other agreements that may exist between LBIE's clients and LBHI, including without limitation, any rights of setoff, recoupment or netting. Nothing herein shall be deemed a waiver by LBIE's clients of any of their rights and remedies in connection with such agreements.

19.    By filing this LPS Omnibus Claim, LBIE does not submit itself or its clients to the jurisdiction of the Bankruptcy Court or any other U.S. court or tribunal for any purpose other than with respect to this LPS Omnibus Claim. Where U.S. jurisdiction does exist with respect to this LPS Omnibus  Claim, LBIE does not waive or release its rights to, on behalf of its clients, (i) withdraw the reference or (ii) a jury trial with respect to the subject matter of this LPS Omnibus Claim, any objection thereto or other proceeding that may be commenced in this case against or otherwise involving LBIE. By filing this LPS Omnibus Claim, neither LBIE nor its clients waive any of their rights and remedies against any other person or entity who may be liable for all or part of the claims set forth herein, whether another affiliate of LBHI, or an assignee, separate guarantor or otherwise. LBIE and its clients reserve all rights to assert (i) any claim, defense, offset or other right against any party, including but not limited to LBHI or any of its affiliated debtors or non-debtors, in a foreign jurisdiction, including but not limited to claims based on U.S. and U.K. or other foreign law, and (ii) any claims, defenses, offsets or other rights available to them under U.S. or any other jurisdiction's law in the event LBHI asserts counterclaims or affirmative claims against LBIE or its clients in the Bankruptcy Court. Furthermore, LBIE asserts that any counterclaim or affirmative claim by LBHI against LBIE or its clients must be asserted in its applicable foreign proceeding, whether in the U.K. or in another foreign jurisdiction, and LBIE and its clients reserve the right to assert therein any claim, defense, offset or other right that may be asserted in such U.K. or other foreign proceeding. LBIE and its clients further reserve all rights to assert that, under principles of equity or comity or otherwise, a court other than the Bankruptcy Court would be the appropriate forum in which to hear and decide any matter in connection with this LPS Omnibus Claim.

20.    This LPS Omnibus Claim is not intended to be and shall not be construed as (a) an election of remedies; (b) a waiver of any defaults; or (c) a waiver or limitation of any rights, remedies, claims or interests of LBIE and/or LBIE's clients.

21.    LBIE reserves the right to replace, amend or supplement this LPS Omnibus Claim at any time and in any respect, including, without limitation, for the purpose of (a) setting forth or changing the basis of the claims described herein and (b) providing further description or evidence of such claims.

4

In the event that any order of the Bankruptcy Court is entered into which effects: (i) a recharacterization or subordination of claims, including without limitation, this LPS Omnibus Claim; (ii) substantive consolidation of some or all of the LBHI affiliated debtors with any of their affiliates; or (iii) any other similar remedy, the rights of LBIE to file additional proofs of claim or amended proofs of claim against LBHI or any of its affiliates on behalf of LBIE's clients is specifically reserved. This LPS Omnibus Claim is submitted without prejudice to any of LBIE's rights or those of its clients in all respects.

22.    The Administrators have signed this LPS Omnibus Claim as agents for and on behalf of LBIE and neither they, their firm, partners, employees, agents, advisers or representatives shall incur any personal liability whatsoever in respect of, or in relation to, this LPS Omnibus Claim. The exclusion of liability set out in this paragraph shall arise and continue notwithstanding the termination of the agency of the Administrators and shall operate as a waiver of any claims in tort as well as under the laws of contract.

## IV.    NOTICES

23.    Notices regarding this LPS Omnibus Claim should be sent to

Lehman Brothers International (Europe) (in administration)
25 Bank Street
London
E14 5LE
United Kingdom
Attn: Steven Anthony Pearson as Joint Administrator of Lehman Brothers International (Europe)

*and*

PricewaterhouseCoopers LLP
Plumtree Court
London
EC4A 4HT
United Kingdom
Attn: Steven Anthony Pearson

*with a copy to:*

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Attn: Titia Holtz
     Kiah Beverly-Graham
Phone: (212) 903-9000

Lehman Paper held in account 97816 EUROCLEAR

| International Securities Identification Number (ISIN) | Blocking Reference | Depository Account Number | Instrument type | Position | Currency | Valuation - Underlying Currency Amount | FX Rate at 15/09/2008 | Valuation - USD Equivalent | Includes Coupon Interest Accrual |
|---|---|---|---|---|---|---|---|---|---|
| XS0349071010 | 6045281 | 97816/ DCS | 5,000,000 | USD | 125,000,007 | 1.0000 | 1,165,467 | Yes |
| XS0349300372 | 6045282 | 97816/ floating | 5,000,000 | JPY | 5,000,000 | 1.0000 | 5,000,000 | |
| XS0349835015 | 6045285 | 97816/ DCS | 100,000,000 | USD | 5,000,000 | 0.0095 | 100,000,000 | |
| XS0357355073 | 6045827 | 97816/ DCS | 5,000,000 | USD | 200,000 | 0.0095 | 1,868,704 | |
| XS0357184064 | 6045827 | 97816/ DCS | 100,000,000 | NZD | 550,000,000 | 0.6571 | 4,746,700 | |
| XS0357184700 | 6046021 | 97816/ DCS | 100,000,000 | NZD | 100,000,000 | 0.6571 | 948,252 | |
| XS0357314569 | 6046023 | 97816/ floating | 5,000,000 | NZD | 7,000,000 | 0.0095 | 664,352 | |
| XS0358134790 | 6046027 | 97816/ floating | 100,000,000 | NZD | 1,000,000,000 | 0.0095 | 8,493,521 | |
| XS0358134873 | 6046030 | 97816/ fixed | 100,000,000 | JPY | 1,000,000,000 | 0.0095 | 8,136,897 | |
| XS0358599444 | 6046038 | 97816/ floating | 100,000,000 | JPY | 7,000,000 | 0.0095 | 948,352 | |
| XS0358599014 | 6046039 | 97816/ floating | 5,000,000 | JPY | 7,000,000 | 0.0095 | 948,352 | Yes |
| XS0358700090 | 6046112 | 97816/ DCS | 5,000,000 | USD | 7,000,000 | 0.6571 | 4,599,700 | |
| XS0359702582 | 6046115 | 97816/ DCS | 100,000,000 | NZD | 7,000,000 | 0.6571 | 4,599,700 | |
| XS0359786719 | 6046165 | 97816/ floating | 8,000,000 | AUD | 10,000,000 | 1.0000 | 10,000,000 | |
| XS0361292574 | 6046169 | 97816/ floating | 7,000,000 | AUD | 7,000,000 | 0.0095 | 948,352 | |
| XS0361295924 | 6046171 | 97816/ DCS | 7,000,000 | AUD | 200,000,000 | 1.0000 | 21,853,510 | |
| XS0361764848 | 6046173 | 97816/ floating | 10,000,000 | JPY | 10,000,000 | 0.0095 | 1,868,704 | |
| XS0367234700 | 6046015 | 97816/ DCS | 200,000,000 | JPY | 10,000,000 | 0.0095 | 948,352 | |
| XS0367239425 | 6046024 | 97816/ DCS | 10,000,000 | JPY | 7,000,000 | 0.0095 | 948,352 | |
| XS0367274774 | 6046601 | 97816/ floating | 7,000,000 | AUD | 200,000,000 | 0.6571 | 4,599,700 | |
| XS0367294021 | 6046605 | 97816/ floating | 250,000,000 | NZD | 7,000,000 | 0.6571 | 4,599,700 | |
| XS0367497924 | 6046607 | 97816/ fixed | 7,000,000 | AUD | 7,000,000 | 0.0095 | 948,352 | |
| XS0367974361 | 6046609 | 97816/ DCS | 200,000,000 | NZD | 8,000,000 | 0.6571 | 6,452,000 | |
| XS0368117083 | 6046700 | 97816/ floating | 7,000,000 | AUD | 7,000,000 | 0.0095 | 5,843,750 | |
| XS0368141274 | 6046701 | 97816/ floating | 10,000,000 | JPY | 7,000,000 | 0.0095 | 5,843,750 | |
| XS0368307996 | 6046701 | 97816/ DCS | 7,000,000 | AUD | 7,000,000 | 0.6063 | 5,843,750 | |
| XS0369360279 | 6046702 | 97816/ floating | 7,000,000 | AUD | 10,000,000 | 0.0095 | 5,843,750 | |
| XS0369360790 | 6046704 | 97816/ floating | 7,000,000 | JPY | 100,000,000 | 0.6063 | 1,868,704 | |
| XS0369366279 | 6046705 | 97816/ floating | 7,000,000 | JPY | 100,000,000 | 0.0095 | 948,352 | |
| XS0369500981 | 6046790 | 97816/ DCS | 200,000,000 | JPY | 200,000,000 | 0.0095 | 1,868,704 | |
| XS0369511924 | 6046791 | 97816/ floating | 100,000,000 | AUD | 7,000,000 | 0.6063 | 5,843,750 | Yes |
| XS0369500906 | 6046792 | 97816/ floating | 180,000,000 | JPY | 120,000,000 | 0.0095 | 1,138,022 | |
| XS0369627009 | 6046793 | 97816/ fixed | 5,000,000 | USD | 5,000,000 | 1.0000 | 5,000,000 | |
| XS0369677141 | 6046794 | 97816/ floating | 7,000,000 | NZD | 7,000,000 | 0.6571 | 4,599,700 | Yes |
| XS0369677785 | 6046795 | 97816/ floating | 7,000,000 | AUD | 7,000,000 | 0.6063 | 4,246,700 | |
| XS0369685759 | 6046796 | 97816/ floating | 7,000,000 | AUD | 7,000,000 | 0.6063 | 4,246,700 | |
| XS0369691938 | 6046797 | 97816/ DCS | 7,000,000 | JPY | 113,962,360 | 0.0095 | 1,081,338 | |
| XS0369693140 | 6046798 | 97816/ floating | 7,000,000 | AUD | 7,000,000 | 0.6063 | 4,246,700 | |
| XS0369605140 | 6046700 | 97816/ DCS | 5,000,000 | USD | 5,000,000 | 1.0000 | 5,000,000 | |
| XS0354220954 | 6046762 | 97816/ floating | 1,500,000,000 | JPY | 10,000,000 | 0.0095 | 5,843,750 | |
| XS0354409200 | 6046763 | 97816/ floating | 150,000,000 | JPY | 3,027,650 | 0.0095 | 84,411 | |
| XS0354662934 | 6046764 | 97816/ fixed | 5,000,000 | USD | 440,000,000 | 1.0000 | 3,027,650 | |
| XS0353516823 | 6046765 | 97816/ floating | 3,000,000 | USD | 10,000,000 | 1.0000 | 4,771,148 | |
| XS0352200101 | 6046766 | 97816/ floating | 440,000,000 | JPY | 100,000,000 | 0.0095 | 948,352 | |
| XS0353290101 | 6046772 | 97816/ floating | 150,000,000 | JPY | 100,000,000 | 0.0095 | 948,352 | |
| XS0353190913 | 6046778 | 97816/ floating | 100,000,000 | JPY | 100,000,000 | 0.0095 | 948,352 | |
| XS0352997924 | 6046779 | 97816/ floating | 100,000,000 | JPY | 100,000,000 | 0.0095 | 948,352 | |
| XS0351883579 | 6046780 | 97816/ floating | 100,000,000 | JPY | 100,000,000 | 0.0095 | 948,352 | |
| XS0351550904 | 6046781 | 97816/ floating | 7,000,000 | AUD | 7,000,000 | 0.6063 | 5,843,750 | |

| International Securities Identification Number (ISIN) | Blocking Reference | Depository Account Number | Instrument type | Position | Currency | Valuation - Underlying Currency Amount | FX Rate at 15/09/2008 | Valuation - USD Equivalent | Includes Coupon Interest Accrual |
|---|---|---|---|---|---|---|---|---|---|

| International Securities Identification Number (ISIN) | Blocking Reference | Depository Account Number | Instrument type | Position | Currency | Valuation - Underlying Currency Amount | FX Rate at 15/09/2008 | Valuation - USD Equivalent | Includes Coupon Interest Accrual |
|---|---|---|---|---|---|---|---|---|---|

| International Securities Identification Number (ISIN) | Blocking Reference | Depository Account Number | Instrument type | Position | Currency | Valuation - Underlying Currency Amount | FX Rate at 15/09/2008 | Valuation - USD Equivalent | Includes Coupon Interest Accrual |
|---|---|---|---|---|---|---|---|---|---|

| International Securities Identification Number (ISIN) | Blocking Reference | Depository Account Number | Instrument type | Position | Currency | Valuation - Underlying Currency Amount | FX Rate at 15/09/2008 | Valuation - USD Equivalent | Includes Coupon Interest Accrual |
|---|---|---|---|---|---|---|---|---|---|
| XS0292845107 | 6045030 | | 978/E Floating | 173,000,000 | JPY | 173,485,000 | 0.0095 | 974,278 | Yes |
| XS0269092931 | 6045031 | | 978/E Floating | 7,000,000 | JPY | 7,000,000 | 0.0095 | 5,843,759 | |
| XS0292844022 | 6045032 | | 978/E DCS | 7,000,000 | AUD | 7,000,000 | 0.8003 | 648,932 | |
| XS0292014053 | 6045024 | | 978/E Floating | 130,000,000 | JPY | 123,305,467 | 0.0095 | 1,170,814 | Yes |
| XS0292217198 | 6045025 | | 978/E Floating | 50,000,000 | JPY | 51,911,111 | 0.0095 | 492,819 | Yes |
| XS0292187012 | 6045526 | | 978/E Floating | 50,000,000 | JPY | 50,154,147 | 0.0095 | 476,766,147 | Yes |
| XS0292089084 | 6045525 | | 978/E Floating | 100,000,000 | JPY | 100,000,000 | 0.0095 | 946,352 | Yes |
| XS0292883847 | 6045521 | | 978/E Floating | 90,000,000 | JPY | 90,000,000 | 0.0095 | 854,417 | |
| XS0292633848 | 6045520 | | 978/E Floating | 50,000,000 | JPY | 50,000,000 | 0.0095 | 474,676 | |
| XS0292557144 | 6045517 | | 978/E Floating | 300,000,000 | JPY | 334,555,000 | 0.0095 | 3,214,051 | Yes |
| XS0280517 | 6045520 | | 978/E Floating | 3,000,000 | USD | 3,000,000 | 1.0000 | 3,000,000 | |
| XS0279730435 | 6045519 | | 978/E Floating | 410,000,000 | JPY | 410,000,000 | 0.0095 | 3,891,543 | Yes |
| XS0278197832 | 6045518 | | 978/E Floating | 100,000,000 | JPY | 102,655,556 | 0.0095 | 977,411 | Yes |
| XS0278262608 | 6045516 | | 978/E Floating | 150,000,000 | JPY | 50,000,000 | 0.0095 | 445,321 | Yes |
| XS0277148285 | 6045515 | | 978/E Floating | 300,000 | EUR | 300,000 | 1.4184 | 425,520 | |
| XS0278201717 | 6045514 | | 978/E Floating | 1,000,000,000 | JPY | 1,000,000,000 | 0.0095 | 9,463,521 | Yes |
| XS0277969717 | 6045513 | | 978/E Floating | 7,000,000 | AUD | 7,000,000 | 0.8003 | 5,643,759 | Yes |
| XS0287388053 | 6045512 | | 978/E Floating | 100,000,000 | JPY | 100,782,633 | 0.0095 | 1,004,375 | Yes |
| XS0282824683 | 6045511 | | 978/E Floating | 200,000,000 | JPY | 200,000,000 | 0.0095 | 1,896,704 | |
| XS0280551209 | 6045510 | | 978/E Floating | 100,000,000 | JPY | 101,408,333 | 0.0095 | 962,722 | Yes |
| XS0280513674 | 6045509 | | 978/E Floating | 50,000,000 | JPY | 50,861,556 | 0.0095 | 472,406 | Yes |
| XS0280541309 | 6045507 | | 978/E DCS | 5,000,000 | AUD | 5,000,000 | 1.4184 | 472,459 | Yes |
| XS0282538574 | 6045506 | | 978/E DCS | 18,000,000 | EUR | 16,500,000 | 1.4184 | 23,403,600 | |
| XS0280815374 | 6045505 | | 978/E DCS | 3,000,000 | EUR | 3,000,000 | 1.4184 | 4,031,250 | |
| XS0280818247 | 6045504 | | 978/E DCS | 3,000,000 | AUD | 5,000,000 | 0.8003 | 4,031,250 | |
| XS0285532810 | 6045503 | | 978/E Floating | 5,000,000 | AUD | 5,000,000 | 0.8003 | 4,031,250 | |
| XS0280730352 | 6045502 | | 978/E DCS | 10,000,000 | USD | 10,000,000 | 1.0000 | 10,000,000 | |
| XS0280739057 | 6045501 | | 978/E Floating | 1,000,000,000 | JPY | 1,000,000,000 | 0.0095 | 10,672,531 | |
| XS0282523110 | 6045500 | | 978/E Floating | 5,000,000 | JPY | 5,000,000 | 0.8003 | 4,403,531 | |
| XS0274320143 | 6045499 | | 978/E Floating | 10,000,000 | USD | 10,000,000 | 1.0000 | 10,000,000 | |
| XS0224456509 | 6045498 | | 978/E Fixed | 10,000,000 | USD | 10,000,000 | 1.0000 | 10,000,000 | |
| XS0224454302 | 6045493 | | 978/E DCS | 3,000,000 | USD | 3,000,000 | 1.4184 | 13,474,800 | |
| XS0221592199 | 6045492 | | 978/E Floating | 9,500,000 | EUR | 9,500,000 | 1.4184 | 851,433 | |
| XS0191862729 | 6045462 | | 978/E Fixed | 550,000 | USD | 550,000 | 1.4184 | 656,417 | Yes |
| XS0211698027 | 6045497 | | 978/E Floating | 10,000,000 | EUR | 190,591,467 | 1.4184 | 939,241 | |
| XS0210917598 | 6045458 | | 978/E Floating | 3,300,000 | EUR | 3,300,000 | 1.4184 | 4,536,860 | |
| XS0197019342 | 6045457 | | 978/E Floating | 1,000,000 | USD | 1,048,500 | 1.0000 | 1,048,500 | |
| | 6045456 | | 978/E DCS | 8,600,000 | USD | 8,600,000 | 1.0000 | 8,600,000 | |
| | 6045049 | | 978/E Floating | 4,250,000 | EUR | 4,250,000 | 1.4184 | 6,042,384 | |
| | 6045467 | | 978/E Floating | 500,000,000 | JPY | 500,000,000 | 0.0095 | 4,745,760 | |

Grand Total: 7,234,474,055

Where possible, accrued interest has been calculated for Fixed and Floating Rate Notes. In some instances this has not been possible due to lack of information at the time of submission.
LBIE reserves all rights with respect to all valuations including as to accrued interest.

H
A
N
D

D
E
L
I
V
E
R
Y

FILED / RECEIVED

NOV 0 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

TP

RECEIVED BY:

DATE

1:56pm

TIME

**EXECUTION COPY**

FINAL TERMS dated May 24, 2007

**LEHMAN BROTHERS TREASURY CO. B.V.**
*(incorporated with limited liability in The Netherlands and*
*having its statutory domicile in Amsterdam)*
**Issue of JPY Tokyo Exchange REIT Index Linked Redemption Notes due May 30, 2017**
**unconditionally and irrevocably guaranteed by**
**LEHMAN BROTHERS HOLDINGS INC.**
**under the U.S.$60,000,000,000**
**Euro Medium-Term Note Program**

**PART A – CONTRACTUAL TERMS**

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated 9 August 2006 and the Base Prospectus Supplements dated 29 August 2006, 6 September 2006, 26 September 2006 and 17 October 2006, which together constitute a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "Prospectus Directive"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with such Base Prospectus as so supplemented. Full information on the Issuer and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus.

**Information Concerning Investment Risk**

**Noteholders and prospective purchasers of Notes should ensure that they understand the nature of the Notes and the extent of their exposure to risk and that they consider the suitability of the Notes as an investment in the light of their own circumstances and financial condition. The price performance of the Index (as defined below) may affect the nature and value of the investment return on the Notes. Also, a relatively small movement in the value of the Index could result in a disproportionately large movement in the value of the Notes. Noteholders and prospective purchasers of Notes should conduct their own investigations and, in deciding whether or not to purchase Notes, prospective purchasers should form their own views of the merits of an investment related to the Index based upon such investigations and not in reliance on any information given in these Final Terms.**

**Given the highly specialised nature of these Notes, the Issuer, the Guarantor and the Dealer consider that they are only suitable for highly sophisticated investors who are able to determine themselves the risk of an investment linked to an Index.**

**Consequently, if you are not an investor who falls within the description above you should not consider purchasing these Notes without taking detailed advice from a specialised professional adviser.**

| | | | |
|---|---|---|---|
| 1. | (i) | Issuer: | Lehman Brothers Treasury Co. B.V. |
| | (ii) | Guarantor: | Lehman Brothers Holdings Inc. |
| 2. | | Series Number | 7273 |
| 3. | | Specified Currency or Currencies: | Japanese Yen ("JPY") |
| 4. | | Aggregate Nominal Amount: | JPY200,000,000 |

- 1 -

| | | | |
|---|---|---|---|
| 5. | Issue Price: | | 100 per cent. of the Aggregate Nominal Amount |
| 6. | Specified Denomination(s): | | JPY100,000,000 |
| 7. | (i) | Issue Date: | May 29, 2007 |
| | (ii) | Interest Commencement Date (if different from the Issue Date): | May 30, 2007 |
| 8. | Maturity Date: | | May 30, 2017 |
| 9. | Interest Basis: | | Fixed Rate and determined in accordance with the formula |
| | | | (further particulars specified below) |
| 10. | Redemption/Payment Basis: | | Redemption at Par |
| 11. | Change of Interest or Redemption/Payment Basis: | | As described in Annex |
| 12. | Put/Call Options: | | Not Applicable |
| 13. | (i) | Status of the Notes: | Senior Notes |
| | (ii) | Status of the Guarantee: | Senior Guarantee |
| 14. | Method of distribution: | | Non-syndicated |

**PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE**

| | | | |
|---|---|---|---|
| 15. | **Fixed Rate Note Provisions** | | Applicable (to the first Interest Payment Date only) |
| | (i) | Fixed Rate(s) of Interest: | 4.50 per cent. Fixed Rate per annum from the Interest Commencement Date to the first Interest Payment Date. |
| | (ii) | Interest Payment Date(s): | November 30, 2007 |
| | (iii) | Fixed Coupon Amount(s): | JPY 2,250,000 per specified denomination for the period from the Interest Commencement Date to the first Interest Payment Date. |
| | (iv) | Fixed Day Count Fraction: | 30/360 |
| | (v) | Broken Amount(s): | Not Applicable |
| | (vi) | Other terms relating to the method of calculating interest for Fixed Rate Notes: | Not Applicable |

- 2 -

| | | | |
|---|---|---|---|
| (vii) | Business Day Convention: | | Modified Following Business Day Convention |
| | | | The Business Day Convention applies to and adjusts the Interest Payment Date for the purposes of payment only and does not adjust the Interest Payment Date for the purposes of determining the Interest Period and the calculation of the relevant Interest Amount. |
| 16. | **Floating Rate Note Provisions** | | Not Applicable |
| 17. | **Zero Coupon Note Provisions** | | Not Applicable |
| 18. | **Index-Linked Interest Note/Other Variable-Linked Interest Note Provisions** | | Applicable (to the second and subsequent Interest Payment Dates) |
| | (i) | Index/Formula/other variable: | For the second Interest Payment Date onwards, |
| | | | 13.0% x (REITn / 2,591.66 ) − 10.0% p.a which shall be rounded to the nearest JPY and shall not less than 0.1 %. |
| | | | "REITn" means the official closing price of the Index on the preceding Valuation Date. |
| | (ii) | Calculation Agent responsible for calculating the interest due: | Lehman Brothers International (Europe) |
| | (iii) | Provisions for determining Coupon where calculated by reference to Index and/or Formula and/or other variable: | As described in the Annex |
| | (iv) | Determination Date(s): | As described in the Annex |
| | (v) | Provisions for determining Coupon where calculation by reference to Index and/or Formula and/or other variable is impossible or impracticable or otherwise disrupted: | As described in the Annex |
| | (vi) | Interest Period(s)/Interest Payment Dates: | On the 30th of May and November in each year up to and including the Maturity Date commencing on the second Interest Payment Date. |

N TSEREIT/Issue Date: May 29, 2007 /Series No. 7273 /GID3052878

| | | | |
|---|---|---|---|
| (vii) | Business Day Convention: | | Modified Following Business Day Convention |
| | | | The Business Day Convention applies to and adjusts the Interest Payment Date for the purposes of payment only and does not adjust the Interest Payment Date for the purposes of determining the Interest Period and the calculation of the relevant Interest Amount. |
| (viii) | Additional Business Centre(s) (Condition 3(b)(B)): | | Not Applicable |
| (ix) | Minimum Interest Rate for interest accrual only (Condition 3(b) (B)): | | Not Applicable |
| (x) | Maximum Interest Rate: | | Not Applicable |
| (xi) | Interest Determination Date(s): | | As described in Annex |
| (xii) | Day Count Fraction: | | 30/360 |
| (xiii) | Name and address of Calculation Agent, if any, responsible for calculating the principal and/or interest due: | | Lehman Brothers International (Europe) |

| | | |
|---|---|---|
| 19. | **Dual Currency Note Provisions** | Not Applicable |

**PROVISIONS RELATING TO REDEMPTION**

| | | |
|---|---|---|
| 20. | **Call Option** | Not Applicable |
| 21. | **Put Option** | Not Applicable |
| 22. | **Final Redemption Amount of each Note** | JPY100,000,000 per Note of JPY100,000,000 Specified Denomination |
| 23. | **Early Redemption Amount of each Note**<br>Early Redemption Amount(s) of each Note payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in the Conditions): | In respect of each Note, an amount in the Specified Currency equal to the fair market value of such Note (disregarding credit risk of the Issuer) (which value shall be less the proportion attributable to that Note of the reasonable cost to the Issuer of unwinding any related hedging arrangements) on such day as is selected by the Calculation Agent in its sole and absolute discretion (provided that such day is not more than 15 days before the date fixed for redemption of the Note)<br><br>For the avoidance of doubt, no accrued interest shall be payable upon redemption of the Notes for taxation reasons or on event of default. |

N TSEREIT/Issue Date: May 29, 2007 /Series No. 7273 /GID3052878

**GENERAL PROVISIONS APPLICABLE TO THE NOTES**

24. Form of Notes:      Interests in a temporary global Note in bearer form are exchangeable for interests in a permanent global Note in bearer form.

25. Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature):      Not Applicable

26. Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment:      Not Applicable

27. Details relating to Instalment Notes: Instalment Amounts and Instalment Dates:      Not Applicable

28. Details relating to Extendible Notes:      Not Applicable

29. Details relating to Renewable Notes:      Not Applicable

30. Redenomination, renominalisation and reconventioning provisions:      Not Applicable

31. Consolidation provisions:      Not Applicable

32. Other final terms:

     1. Lehman Brothers International (Europe) (the "**Calculation Agent**") shall be solely responsible for the determination and calculation of any and all determinations, calculations or valuations in accordance with the terms of this Note. The determinations of the Calculation Agent shall be conclusive and binding. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation, all costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of its functions, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.

     2. See Annex

N TSEREIT/Issue Date: May 29, 2007 /Series No. 7273 /GID3052878

**DISTRIBUTION**

33.  (i)  If syndicated, names and addresses of Managers and underwriting commitments:   Not Applicable

     (ii)  Date of Subscription Agreement:   Not Applicable

     (iii)  Stabilizing Manager (if any):   Not Applicable

34.  If non-syndicated, name of Dealer:   Lehman Brothers International (Europe)

35.  Selling restrictions:

     (i)  Netherlands Selling Restrictions:   The Netherlands selling restrictions set out in the "Subscription of Sale" section of the Base Prospectus shall apply

     (ii)  Additional Selling Restrictions:   In addition to the selling restrictions contained in the Base Prospectus, the Dealer represents and agrees that it has not transferred, and will not transfer, any of the Notes to any person other than a non-resident (as defined in the Foreign Exchange and Foreign Trade Law of Japan) except in the case that all outstanding Notes are transferred to a single person. No disclosure has been made with respect to the Notes under the Securities and Exchange Law of Japan.

**RESPONSIBILITY**

The Issuer accepts responsibility for the information contained in these Final Terms and declares that, having taken all reasonable care to ensure that such is the case, the information contained in these Final Terms is, to the best of its knowledge, in accordance with the facts and contains no omission likely to affect the import of such information.

The information relating to the Index contained in these Final Terms has been extracted from information published by the Tokyo Stock Exchange  The Issuer confirms that such information has been accurately reproduced and that, so far as it is aware, and is able to ascertain from information published by the Tokyo Stock Exchange, no facts have been omitted which would render the reproduced information inaccurate or misleading.

Signed on behalf of the Issuer:

By: 
Duly authorized

N TSEREIT/Issue Date: May 29, 2007 /Series No. 7273 /GID3052878

## PART B – OTHER INFORMATION

1.  **LISTING**                                       Not Applicable

2.  **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

    Save as discussed in "Subscription and Sale", so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer.

3.  **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES**

                                                      Not Applicable

4.  **YIELD (Fixed Rate Notes only)**                 Not Applicable

5.  **HISTORIC INTEREST RATES (Floating Rate Notes only)**

                                                      Not Applicable

6.  **PERFORMANCE OF INDEX/FORMULA/OTHER VARIABLE, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS AND OTHER INFORMATION CONCERNING THE UNDERLYING (Index-linked or other variable Linked Notes only)**

    See the Annex to the Final Terms

    Details on historical prices of the Index can be found on the Tokyo Stock Exchange website: http://www.tse.or.jp

    The Issuer does not intend to provide post issuance information.


The Tokyo Stock Exchange REIT Index

As Tokyo Stock Exchange, Inc. (TSE) previously announced in January 2003, TSE will begin calculation and publication of the Tokyo Stock Exchange REIT Index from April 1, 2003 and will disclose trading activities by type of investors on the J-REIT market from May 2003 (for the previous month's trading activities).

The Tokyo Stock Exchange REIT Index is a capitalization-weighted index based on all REITs listed on the TSE and will provide a comprehensive measure of price changes on the J-REITs market in Japan. As such, this index is expected to be used as a benchmark for evaluating portfolio performance.

The same methodology for the calculation of TOPIX* (Tokyo Stock Price Index) will be used for the Tokyo Stock Exchange REIT Index, and the total return index will also be calculated and published in the same way.

Index data and trading activities by type of investors will be available through TSE's web-site.

7.  **PERFORMANCE OF RATE[S] OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (Dual Currency Notes only)**

                                                      Not Applicable

8.  **OPERATIONAL INFORMATION**

    ISIN Code:                                        XS0302118632

    Common Code:                                      030211863

| | |
|---|---|
| Any clearing system(s) other than Euroclear and Clearstream, Luxembourg and the relevant identification number(s): | Not Applicable |
| Delivery: | Delivery against payment |
| The Aggregate Nominal Amount of Notes issued has been translated into U.S. Dollars at the rate of $1 = JPY 120.363 producing a sum of (for Notes not denominated in U.S. Dollars): | $1,661,640.00 |
| Names and addresses of Additional Paying Agent(s) (if any): | Not Applicable |

- 8 -

**ANNEX**

1.  **Definitions**

For the purposes of this Annex:

"**Calculation Agent**" means Lehman Brothers International (Europe);

"**Closing Price**" means, on any Exchange Business Day, the official closing level of the Index published at the Valuation Time or if there is no published official closing level, it will be determined by the Calculation Agent in its sole discretion;

"**Disrupted Day**" means any Scheduled Trading Day on which a relevant Exchange or any Related Exchange fails to open for trading during its regular trading session or on which a Market Disruption Event has occurred;

"**Early Closure**" means the closure on any Exchange Business Day of the relevant Exchange or any Related Exchange prior to its Scheduled Closing Time unless such earlier closing time is announced by such Exchange or Related Exchanges at least one hour prior to the earlier of (i) the actual closing time for the regular trading session on such Exchanges or Related Exchange on such Exchange Business Day and (ii) the submission deadline for orders to be entered into the Exchange or Related Exchange system for execution at the Valuation Time on such Exchange Business Day;

"**Exchange**" means, in respect of each component security of the Index (each, a "**Component Security**"), the principal stock exchange on which such Component Security is principally traded, as determined by the Calculation Agent;

"**Exchange Business Day**" means any Scheduled Trading Day on which: (i) the Index Sponsor publishes the level of the Index; and (ii) the Related Exchange is open for trading during its regular trading session, notwithstanding the Related Exchange closing prior to its Scheduled Closing Time;

"**Exchange Disruption**" means any event (other than an Early Closure) that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in, or obtain market values for: (i) any Component Security on the Exchange in respect of such Component Security; or (ii) futures or options contracts relating to the Index on the Related Exchange;

"**Final Valuation Date**" means the date that is ten (10) Exchange Business Days before the Maturity Date;

"**Index**" means The Tokyo Stock Exchange REIT Index the which is currently sponsored by the Index Sponsor;

"**Index Sponsor**" means Bloomberg, and/or, as the context requires or permits, any successor sponsor accepted by the Calculation Agent pursuant to section 4 below;

"**Market Disruption Event**" means:

(i) (a)    the occurrence or existence, in respect of any Component Security, of:

(1) a Trading Disruption;

(2) an Exchange Disruption,

- 9 -

in either case in respect of such Component Security and which the Calculation Agent determines is material, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded; OR

(3) an Early Closure in respect of such Component Security; AND

(b) the aggregate of all Component Securities in respect of which a Trading Disruption, an Exchange Disruption or an Early Closure occurs or exists comprises 20 per cent. or more of the level of the Index; OR

(ii) the occurrence or existence, in respect of futures or options contracts relating to the Index, of: (a) a Trading Disruption Event; (b) an Exchange Disruption, which in either case the Calculation Agent determines is material, at any time during the one hour period that ends at the Valuation Time in respect of the Related Exchange; or (c) an Exchange Disruption, in each case in respect of such futures or options contracts.

For the purposes of determining whether a Market Disruption Event exists in respect of a Component Security at any time, if a Market Disruption Event occurs in respect of such Component Security at that time, then the relevant percentage contribution of that Component Security to the level of the Index shall be based on a comparison of (x) the portion of the level of the Index attributable to that Component Security to (y) the overall level of the Index, in each case immediately before that suspension or limitation;

"**TSEREIT**" means the The Tokyo Stock Exchange REIT Index (Bloomberg: TSEREIT Index), a stock index that is Tokyo Stock Exchange to Publish REIT Index and data on trading activities by type of invesors on the J-REIT market and calculated by the relevant Index Sponsor;

"**Related Exchange**" means, any exchange or quotation system on which futures contracts and/or options contracts relating to the Index are traded and any exchange or quotation system where trading has a material effect (as determined by the Calculation Agent) on the overall market for futures or options contracts relating to the Index; and "**Related Exchanges**" mean, as the context requires, such exchanges or quotation systems in respect of the Index;

"**Scheduled Closing Time**" means, in respect of an Exchange or a Related Exchange and a Scheduled Trading Day, the scheduled weekday closing time of such Exchange or Related Exchange on such Scheduled Trading Day, without regard to after hours or any other trading outside of the regular trading session hours;

"**Scheduled Trading Day**" means any day on which: (i) the Index Sponsor is scheduled to publish the level of the Index; and (ii) the Related Exchange is scheduled to be open for trading for its regular trading session;

"**Trading Disruption**" means any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise: (i) relating to any Component Security on the Exchange in respect of such Component Security; or (ii) in futures or options contracts relating to the Index on the Related Exchange;

"**Valuation Date**" means the date that is ten (10) Exchange Business Days before each Interest Payment Date; and

"**Valuation Time**" means: (i) for the purposes of determining whether a Market Disruption Event has occurred: (a) in respect of any Component Security, the Scheduled Closing Time on the Exchange in respect of such Component Security, and (b) in respect of any options contracts or

- 10 -

future contracts on the Index, the close of trading on the Related Exchange; and (ii) in all other circumstances, the time at which the official closing level of the Index is calculated and published by the Index Sponsor.

2.    **Early Redemption**

If, on any Valuation Date from and including November 30, 2007 to and including November 30, 2016, the Closing Price of the Index (excluding the Final Valuation Date) is equal to or above 2,721.24 then each Note will redeem early on the next Interest Payment Date (the "**Mandatory Early Redemption Date**") at 100 per cent of the Issue Price in cash.

3.    **Disrupted Days**

If any Valuation Date is a Disrupted Day, then such Valuation Date shall be the first succeeding Scheduled Trading Day that is not a Disrupted Day, unless there is a Disrupted Day on each of the eight Scheduled Trading Days immediately following the date that, but for the failure to open for trading during its regular trading session or the Market Disruption Event, would have been such Valuation Date. In that case:

(a)    the earlier of that eighth following Scheduled Trading Day and the third weekday (meaning a day other than a Saturday or Sunday) prior to the Mandatory Early Redemption Date or the Maturity Date, as the case may be, shall be deemed to be the relevant Valuation Date notwithstanding it is a Disrupted Day (the "**Deemed Valuation Date**"); and

(b)    the Calculation Agent shall determine its good faith estimate of the level of the Index that would have prevailed but for that Disrupted Day as of the Valuation Time on that Deemed Valuation Date.

In the event that any Valuation Date is postponed due to the occurrence of Disrupted Days, the Interest Payment Date and, in the event of the postponement of the Final Valuation Date, the Maturity Date shall be postponed to the tenth Business Day immediately following the postponed Valuation Date.

4.    **Adjustments to Index**

*4.1 Successor Index*: If the Index is (i) not calculated and announced by the Index Sponsor but is calculated and announced by a successor sponsor acceptable to the Calculation Agent, or (ii) replaced by a successor index using, in the determination of the Calculation Agent, the same or a substantially similar formula for and method of calculation as used in the calculation of the Index, then in each case that index (the "**Successor Index**") will be deemed to be the Index.

*4.2 Index Adjustment Event*: If (i) on or prior to the Final Valuation Date the Index Sponsor announces that it will make a material change in the formula for or the method of calculating the Index or in any other way materially modifies the Index (other than a modification prescribed in that formula or method to maintain the Index in the event of changes in constituent stock and capitalization and other routine events) (an "**Index Modification**") or permanently cancels the Index and no Successor Index exists (an "**Index Cancellation**") or (ii) on any Valuation Date, the Index Sponsor fails to calculate and announce the Index (an "**Index Disruption**" and together with an Index Modification and an Index Cancellation, each an "**Index Adjustment Event**"), then the Calculation Agent shall determine if such Index Adjustment Event has a material effect on the Notes and, if so, shall make its determination for the purposes of calculating the Early Redemption Amount or the Final Redemption Amount using, in lieu of a published level for the Index, the level for the Index as at that Valuation Date as determined by the Calculation Agent in accordance with the formula for and method of calculating the Index last in effect prior to the change, failure or

- 11 -

cancellation, but using only those securities that comprised the Index immediately prior to that Index Adjustment Event.

### 5. Correction of Index

In the event that any price or level published on the Exchange or by the Index Sponsor and which is utilized for any calculation or determination made under the provisions of these Final Terms or the Conditions is subsequently corrected and the correction is published by the Exchange or the Index Sponsor within one Settlement Cycle after the original publication, the Calculation Agent will determine the amount that is payable as a result of that correction, and, to the extent necessary, will adjust the provisions of these Final Terms or the Conditions to account for such correction, provided that any correction effected and published after Deemed Valuation Date shall be ignored.

For the purposes of this section 6 the following terms shall have the following respective meanings:

"**Clearance System**" means, in respect of the Index at any time, the domestic clearance system customarily used for settling trades in shares underlying the Index at that time;

"**Clearance System Business Day**" means, in respect of a Clearance System, any day on which such Clearance System is (or but for the occurrence of a Settlement Disruption Event, would have been) open for the acceptance and execution of settlement instructions;

"**Settlement Cycle**" means the period of Clearance System Business Days following a trade in the shares underlying the Index on the Exchange in which settlement will customarily occur according to the rules of such Exchange (or if there are multiple Exchanges in respect of the Index, the longest such period); and

"**Settlement Disruption Event**" means an event beyond the control of the Issuer as a result of which the relevant Clearing System cannot clear the transfer of shares underlying the Index.

### 6. Notification of Early Redemption Amount, Final Redemption Amount, Disrupted Days

*6.1    Notice to Issuer:*  As soon as reasonably practicable after calculating or otherwise determining the Early Redemption Amount or the Final Redemption Amount, as the case may be, the Calculation Agent shall give notice of the relevant amount to the Issuer.

*6.2    Notice of Disrupted Day:*  The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the existence or occurrence of a Disrupted Day on any day which but for such Disrupted Day would have been any Valuation Date.

*6.3    Notice to Noteholders:*  Adjustments in accordance with the foregoing paragraphs shall be calculated by the Calculation Agent, shall be notified to the Noteholders in accordance with Condition 15 (*Notices*) and shall be (in the absence of manifest error) binding on all parties concerned. However, Noteholders should be aware that there may be, necessarily, some delay between the time at which any of the above events occur and the time at which it is reported to Noteholders.

### 7. The Calculation Agent

*7.1*    The Calculation Agent shall have no responsibility to Noteholders for good faith errors or omissions in its calculations and determinations as provided in the Terms and Conditions except such as may result from its own wilful default, gross negligence or bad faith.  The calculations and

N TSEREIT/Issue Date: May 29, 2007 /Series No. 7273 /GID3052878

determinations of the Calculation Agent shall be made in accordance with the Terms and Conditions (having regard in each case to the criteria stipulated herein and where relevant on the basis of information provided to or obtained by employees or officers of the Calculation Agent responsible for making the relevant calculation or determination) and shall, in the absence of manifest error, be final, conclusive and binding on the Noteholders. Noteholders shall not be entitled to make any claim against the Calculation Agent, the Issuer or the Guarantor in the case where the Index Sponsor shall have made any error, omission or other incorrect statement in connection with the calculation and public announcement of the Index.

7.2    Nothing contained herein shall prevent the Calculation Agent from dealing in these Notes or from entering into any related transactions, including without limitation any swap or hedging transactions, with the Issuer (or any of its affiliates) or any holder of Notes (or any of its affiliates).

N TSEREIT/Issue Date: May 29, 2007 /Series No. 7273 /GID3052878

**EXECUTION COPY**

Final Terms dated October 18, 2007

**LEHMAN BROTHERS TREASURY CO. B.V.**
*(incorporated with limited liability in The Netherlands and
having its statutory domicile in Amsterdam)*
Issue of JPY 300,000,000 Index Linked Notes due October 23, 2017
**unconditionally and irrevocably guaranteed by**
**LEHMAN BROTHERS HOLDINGS INC.**
**under the U.S.$100,000,000,000**
**Euro Medium-Term Note Program**

The Base Prospectus referred to below (as completed by these Final Terms) has been prepared on the basis that, except as provided in sub-paragraph (ii) below, any offer of Notes in any Member State of the European Economic Area which has implemented the Prospectus Directive (2003/71/EC) (each, a "Relevant Member State") will be made pursuant to an exemption under the Prospectus Directive, as implemented in that Relevant Member State, from the requirement to publish a prospectus for offers of the Notes. Accordingly any person making or intending to make an offer of the Notes may only do so:

(i)     in circumstances in which no obligation arises for the Issuer or any Dealer to publish a prospectus pursuant to Article 3 of the Prospectus Directive or supplement a prospectus pursuant to Article 16 of the Prospectus Directive, in each case, in relation to such offer; or

(ii)    in those Public Offer Jurisdictions mentioned in Paragraph 35 of Part A below, provided such person is one of the persons mentioned in Paragraph 35 of Part A below and that such offer is made during the Offer Period specified for such purpose therein.

Neither the Issuer, the Guarantor nor any Dealer has authorised, nor do they authorise, the making of any offer of Notes in any other circumstances.

**PART A – CONTRACTUAL TERMS**

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated July 24, 2007, the supplemental Prospectus No. 1 dated September 20, 2007 and the supplemental Prospectus No. 2 dated October 15, 2007, which together constitute a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the **"Prospectus Directive"**). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus as so supplemented.

Full information on the Issuer, the Guarantor and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus.

**Information Concerning Investment Risk**

Noteholders and prospective purchasers of Notes should ensure that they understand the nature of the Notes and the extent of their exposure to risk and that they consider the suitability of the Notes as an investment in the light of their own circumstances and financial condition. Noteholders and prospective purchasers of Notes should conduct their own investigations and, in deciding whether or not to purchase Notes, prospective purchasers should form their own views of the merits of an investment in the Notes based upon such investigations and not in reliance on any information given in these Final Terms.

Given the highly specialised nature of these Notes, the Issuer, and the Guarantor and the Dealer consider that they are only suitable for highly sophisticated investors who are able to determine themselves the risk of an investment in the Notes.

Consequently, if you are not an investor who falls within the description above you should not consider purchasing these Notes without taking detailed advice from a specialised professional adviser.

- 1 -

1.   (i)    Issuer:                                          Lehman Brothers Treasury Co. B.V.

     (ii)   Guarantor:                                       Lehman Brothers Holdings Inc.

2.   Series Number:                                          8674

3.   Specified Currency or Currencies:                       Japanese Yen ("JPY")

4.   Aggregate Nominal Amount:                               JPY 300,000,000

5.   Issue Price:                                            100 per cent. of the Aggregate Nominal Amount

6.   (i) Specified Denomination (s):                         JPY 100,000,000

     (ii) Calculation Amount:                                Specified Denomination

7.   (i)    Issue Date:                                      October 22, 2007

     (ii)   Interest Commencement Date:                      October 23, 2007

8.   Maturity Date:                                          October 23, 2017, subject to adjustment in accordance
                                                             with the Modified Following Business Day Convention

9.   Interest Basis:                                         Index-Linked Interest
                                                             (further particulars specified below)

10.  Redemption/Payment Basis:                               Redemption at par

11.  Change of Interest or Redemption/Payment               As determined in accordance with the formula specified
     Basis:                                                  below

12.  Put/Call Options:                                       Issuer Call
                                                             (further particulars specified below)

13.  (i)    Status of the Note:                              Senior Notes

     (ii)   Status of the Guarantee:                         Senior Guarantee

14.  Method of distribution:                                 Non-syndicated

**PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE**

15.  **Fixed Rate Note Provisions**                          Not Applicable

16.  **Floating Rate Note Provisions**                       Not Applicable

17.  **Zero Coupon Note Provisions**                         Not Applicable

18.  **Index-Linked Interest Note Provisions**               Applicable

     (i)    Index/Formula/other variable:                    See the Appendix.

     (ii)   Name and address of Calculation Agent,           Lehman Brothers Special Financing Inc.
            if any, responsible for calculating the
            principal and/or interest due:

- 2 -

*10yr JPY Callable Range Accrual/Issue Date: October 22, 2007/Series 8674/GID3416992*

|      |         |                                                                                                                                                                              |                                                                                                                                                                                                                                 |
|------|---------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|      | (iii)   | Provisions for determining Coupon where calculated by reference to Index and/or Formula and/or other variable:                                                                | Not Applicable                                                                                                                                                                                                                  |
|      | (iv)    | Provisions for determining Coupon where calculation by reference to Index and/or Formula and/or other variable is impossible or impracticable or otherwise disrupted:         | Not Applicable                                                                                                                                                                                                                  |
|      | (v)     | Interest Period(s)/Interest Payment Dates:                                                                                                                                    | April 23 and October 23 in each year from and including April 23, 2008 to and including the Maturity Date (each, an "**Interest Payment Date**"), adjusted in accordance with the Modified Following Business Day Convention       |
|      | (vi)    | Business Day Convention:                                                                                                                                                      | Modified Following Business Day Convention                                                                                                                                                                                       |
|      | (vii)   | Additional Business Centre(s) (Condition 3(b)(B)):                                                                                                                            | Not Applicable                                                                                                                                                                                                                  |
|      | (viii)  | Minimum Interest Rate for interest accrual only (Condition 3(b)(B)):                                                                                                          | Zero per cent.                                                                                                                                                                                                                  |
|      | (ix)    | Maximum Interest Rate:                                                                                                                                                        | Not Applicable                                                                                                                                                                                                                  |
|      | (x)     | Interest Determination Date(s):                                                                                                                                               | See the Appendix.                                                                                                                                                                                                               |
|      | (xi)    | Day Count Fraction:                                                                                                                                                           | 30/360                                                                                                                                                                                                                           |
|      | (xii)   | Option to defer interest payments:                                                                                                                                           | Not Applicable                                                                                                                                                                                                                  |
| 19.  | **Dual Currency Note Provisions** |                                                                                                                                                    | Not Applicable                                                                                                                                                                                                                  |

**PROVISIONS RELATING TO REDEMPTION**

|      |         |                                                                                       |                                                                                                        |
|------|---------|---------------------------------------------------------------------------------------|--------------------------------------------------------------------------------------------------------|
| 20.  | **Call Option** |                                                                               | Applicable                                                                                             |
|      | (i)     | Optional Redemption Date(s) (Call):                                                    | Any Interest Payment Date from and including October 23, 2008 to and including April 23, 2017           |
|      | (ii)    | Optional Redemption Amount of each Note (Call) and method, if any, of calculation of such amount(s): | JPY 100,000,000 per Calculation Amount                                                                  |
|      | (iii)   | If redeemable in part:                                                                |                                                                                                        |
|      |         | (a)   Minimum Redemption Amount:                                                      | Not Applicable                                                                                         |
|      |         | (b)   Higher Redemption Amount:                                                       | Not Applicable                                                                                         |
|      | (iv)    | Notice period (if other than as set out in the Conditions):                           | Not less than 10 (ten) Business Days prior to the Optional Redemption Date                              |

- 3 -

| 21. | Put Option | Not Applicable |
|---|---|---|
| 22. | Final Redemption Amount of each Note: | JPY100,000,000 per Calculation Amount |
| 23. | Early Redemption Amount of each Note | |

Early Redemption Amount(s) of per Calculation Amount payable on redemption for taxation reasons or on event or default and/or the method of calculating the same (if required or if different from that set out in the Conditions): An amount equal to the Nominal Amount of each Note on such day as is selected by the Calculation Agent in its sole and absolute discretion (provided that such day is not more than 15 days before the date fixed for redemption of the Note), less the reasonable cost to the Issuer of unwinding any related hedging arrangements or other instruments of any type whatsoever, all as calculated by the Calculation Agent in its sole and absolute discretion.

**GENERAL PROVISIONS APPLICABLE TO THE NOTES**

| 24. | Form of Note: | Bearer Form. Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form. Interests in a permanent global Note will be exchangeable for definitive Notes in bearer form in the limited circumstances described in the permanent global Note. |
|---|---|---|
| | New Global Note Form: | Not Applicable |
| 25. | Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature): | Not Applicable |
| 26. | Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment: | Not Applicable |
| 27. | Details relating to Instalment Notes: Instalment Amounts and Instalment Dates: | Not Applicable |
| 28. | Details relating to Extendible Notes: | Not Applicable |
| 29. | Consolidation provisions: | Not Applicable |
| 30. | Other terms or special conditions: | Lehman Brothers Special Financing Inc. (the "Calculation Agent") shall be solely responsible for the determination and calculation of any and all determinations, calculations or valuations in accordance with the terms of the Notes. The determinations of the Calculation Agent shall be conclusive and binding. The Calculation Agent shall |

- 4 -

not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation, all costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of its functions, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.

**DISTRIBUTION**

| | | | |
|---|---|---|---|
| 31. | (i) | If syndicated, names of Managers: | Not Applicable |
| | (ii) | Date of Syndicated Trade Agreement: | Not Applicable |
| | (iii) | Stabilising Manager (if any): | Not Applicable |
| 32. | | If non-syndicated, name and address of Dealer: | Lehman Brothers International (Europe) 25 Bank Street, London E14 5LE |
| 33. | | Total commissions and concessions: | The Issue Price herein is not an expression of the market value of the Notes and the initial placement of the Notes by the dealer appointed under the Programme may have been executed at prices above or below such Issue Price to reflect prevailing market conditions. |
| 34. | | Selling restrictions: | |
| | (i) | Additional Selling Restrictions: | None |
| 35 | | Non-exempt Offer | Not Applicable |

**PURPOSE OF FINAL TERMS**

These Final Terms comprise the final terms of the Notes described herein pursuant to the U.S.$100,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.

**RESPONSIBILITY**

The Issuer and the Guarantor accept responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer:

By: _____

    Duly authorised

- 5 -

10yr JPY Callable Range Accrual/Issue Date: October 22, 2007/Series 8674/GID3416992

## PART B – OTHER INFORMATION

1.  **LISTING**

    (i)    Listing:                     None

    (ii)   Admission to Trading:        Not Applicable

2.  **RATINGS**

    Ratings:                            The Program has been rated:
                                        **Standard & Poor's**
                                        Senior Debt (Long term)    A+
                                        Subordinated debt          A
                                        Senior Debt (Short term)   A-1

                                        An obligation rated 'A' is somewhat more
                                        susceptible to the adverse effects of changes in
                                        circumstances and economic conditions than
                                        obligations in higher-rated categories. However,
                                        the obligor's capacity to meet its financial
                                        commitment on the obligation is still strong.
                                        Negative means that a rating may be lowered.
                                        The addition of a plus (+) sign shows relative
                                        standing within the major rating categories.

                                        A short-term obligation rated 'A-1' is rated in
                                        the highest category by Standard & Poor's. The
                                        obligor's capacity to meet its financial
                                        commitment on the obligation is strong.

                                        **Moodys**
                                        Senior Debt (Long term)    A1
                                        Subordinated debt          A2
                                        Debt ratings (Short term)  Prime-1

                                        Obligations rated A are considered upper-
                                        medium grade and are subject to low credit risk.
                                        The modifier 1 indicates that the obligation
                                        ranks in the higher end of its generic rating
                                        category and the modifier 2 indicates a mid-
                                        range ranking.

                                        Issuers (or supporting institutions) rated Prime-
                                        1 have a superior ability to repay short-term
                                        debt obligations.

                                        **Fitch**
                                        Senior Debt (Long term)    AA-
                                        Subordinated debt          A+
                                        Senior Debt (Short term)   F1+
                                        **AA-**
                                        Very high credit quality. 'AA' ratings denote
                                        expectations of very low credit risk. They
                                        indicate very strong capacity for payment of
                                        financial commitments. This capacity is not
                                        significantly vulnerable to foreseeable events.
                                        The modifier "-" denotes relative status within
                                        this rating category.

- 6 -

A+

High credit quality. 'A' ratings denote expectations of low credit risk. The capacity for payment of financial commitments is considered strong. This capacity may, nevertheless, be more vulnerable to changes in circumstances or in economic conditions than is the case for higher ratings. The modifier "+" denotes relative status within this rating category.

F1+

Highest credit quality. Indicates the strongest capacity for timely payment of financial commitments; the added "+" denotes any exceptionally strong credit feature.

3. **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

Save as discussed in the section headed "Subscription and Sale" in the Base Prospectus, so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer.

4. **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES**

Not Applicable

5. **YIELD (Fixed Rate Notes only)**

Indication of yield                                    Not Applicable

6. **HISTORIC INTEREST RATES (Floating Rate Notes only)**

Not Applicable

7. **PERFORMANCE OF INDEX/FORMULA/OTHER VARIABLE, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS AND OTHER INFORMATION CONCERNING THE UNDERLYING (Index-Linked or other variable Linked Notes only)**

Details of past performance and the volatility of 6M JPY LIBOR and 6M JPY $LIBOR_{REF}$ (as defined in the Appendix) may be obtained from Reuters.

8. **PERFORMANCE OF RATES OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (Dual Currency Notes only)**

Not Applicable

9. **OPERATIONAL INFORMATION**

ISIN Code:                                    XS0326823324

Common Code:                                  032682332

- 7 -

*10yr JPY Callable Range Accrual/Issue Date: October 22, 2007/Series 8674/GID3416992*

|  |  |
|---|---|
| New Global Note intended to be held in a manner which would allow Eurosystem eligibility: | Not Applicable |
| Any clearing system(s) other than Euroclear and Clearstream, Luxembourg and the relevant identification number(s): | Not Applicable |
| Delivery: | Delivery against payment |
| Names and addresses of Additional Paying Agent(s) (if any): | Not Applicable |
| The Aggregate Nominal Amount of Notes issued has been translated into USD at the rate of JPY117.653 = $1  producing a sum of (for Notes not denominated in U.S. Dollars) | $2,549,871.00 |

10.    **TERMS AND CONDITIONS OF THE OFFER**

Not Applicable

- 8 -

## APPENDIX

The Notes shall bear interest from and including the Interest Commencement Date to but excluding the Maturity Date, payable quarterly in arrear.  In respect of each Calculation Amount and each Interest Period, the interest amount shall be determined by the Calculation Agent on the relevant Interest Determination Date to be an amount equal to the product of:

(i)     JPY100,000,000; and

(ii)    the Rate of Interest,

divided by 2.

"**Rate of Interest**" means an amount in JPY (which shall be rounded to the nearest whole JPY, with one-half JPY being rounded upwards) determined by the Calculation Agent in its sole and absolute discretion in accordance with the following formula:

$$(6M\ JPY\ LIBOR + 1.40\%) \times Index\ Ratio$$

subject to a minimum of zero;

Where:

"**6M JPY LIBOR**" means, in respect of an Interest Period, the rate for deposits in JPY for a period of 6 months, which appears daily on the Reuters Screen Page 3750 (or any successor to that page) as of 11:00 a.m., London time, on the day that is 2 London and Tokyo Business Days prior to the first day of such Interest Period (the "**6M JPY LIBOR Determination Date**").

PROVIDED THAT, if on any 6M JPY LIBOR Determination Date the Calculation Agent determines in its sole and absolute discretion that 6M JPY LIBOR:

(i)     does not appear on the relevant Screen Page (or any successor to that page); or

(ii)    for any other reason, are unavailable or cannot reasonably be calculated, in each case as at the relevant time then, on such day, the:

6M JPY LIBOR will be the rates determined by the Calculation Agent as the "JPY-LIBOR Reference Banks" as defined in Section 7.1(j)(iii) of the Annex (June 2000 Version) to the ISDA Definitions with a "Designated Maturity" of six months. For the purpose of determining JPY-LIBOR Reference Banks, the ISDA Definitions shall be amended so that each reference to "Reset Date" and "on the day that is two London Banking Days preceding that Reset Date" shall be replaced and superseded with "relevant day" and "on that day", respectively.

"**Index Ratio**" means, in respect of an Interest Period, the number of calendar days during such Interest Period in which $6M\ JPY\ LIBOR_{REF}$ is:

(i)     greater than or equal to 0.00 per cent.; and

(ii)    less than or equal to 2.50 per cent.,

divided by the total number of calendar days in such Interest Period.

- 9 -

"6M JPY LIBOR$_{REF}$" means:

(i)     for each day from and including the first day of an Interest Period to but excluding the relevant Rate Cut Off Date, the rate for deposits in JPY for a period of 6 months, which appears daily on the Reuters Screen Page 3750 (or any successor to that page) as of 11:00 a.m., London time, on such day (or if such day is not a London and Tokyo Business Day the immediately preceding London and Tokyo Business Day); and

(ii)     for each day from and including the Rate Cut Off Date to but excluding the relevant Interest Payment Date, the rate for deposits in JPY for a period of 6 months, which appears daily on the Reuters Screen Page 3750 (or any successor to that page) as of 11:00 a.m., London time, on such Rate Cut Off Date,

as determined by the Calculation Agent in its sole and absolute discretion.

PROVIDED THAT, if on a relevant day the Calculation Agent determines in its sole and absolute discretion that 6M JPY LIBOR$_{REF}$:

(iii)     does not appear on the relevant Screen Page (or any successor to that page); or

(iv)     for any other reason, are unavailable or cannot reasonably be calculated, in each case as at the relevant time then, on such day, the:

6M JPY LIBOR$_{REF}$ will be the rates determined by the Calculation Agent as the "JPY-LIBOR Reference Banks" as defined in Section 7.1(j)(iii) of the Annex (June 2000 Version) to the ISDA Definitions with a "Designated Maturity" of six months. For the purpose of determining JPY-LIBOR Reference Banks, the ISDA Definitions shall be amended so that each reference to "Reset Date" and "on the day that is two London Banking Days preceding that Reset Date" shall be replaced and superseded with "relevant day" and "on that day", respectively.

"**Business Day**" means a day (other than a Saturday or Sunday) on which commercial banks and foreign exchange markets settle payments and are open for general business in London and Tokyo.

"**Interest Determination Date**" means the Rate Cut Off Date.

"**Interest Period**" means each period from and including one Interest Payment Date, or the Issue Date in respect of the first Interest Period, to but excluding the next Interest Payment Date; provided, however, that for the purposes of the calculation of the amount of interest due on each Interest Payment Date, there shall be no adjustment in accordance with the Modified Following Business Day Convention.

"**Rate Cut Off Date**" means, in relation to an Interest Period, the day that is 5 (five) London and Tokyo Business Days prior to the relevant Interest Payment Date.

- 10 -

**EXECUTION COPY**

Final Terms dated November 15, 2007

**LEHMAN BROTHERS TREASURY CO. B.V.**
*(incorporated with limited liability in The Netherlands and
having its statutory domicile in Amsterdam)*
**Issue of JPY300,000,000 Index-Linked Notes due November 16, 2022
unconditionally and irrevocably guaranteed by
LEHMAN BROTHERS HOLDINGS INC.
under the U.S.$100,000,000,000
Euro Medium-Term Note Program**

The Base Prospectus referred to below (as completed by these Final Terms) has been prepared on the basis that, except as provided in sub-paragraph (ii) below, any offer of Notes in any Member State of the European Economic Area which has implemented the Prospectus Directive (2003/71/EC) (each, a "Relevant Member State") will be made pursuant to an exemption under the Prospectus Directive, as implemented in that Relevant Member State, from the requirement to publish a prospectus for offers of the Notes. Accordingly any person making or intending to make an offer of the Notes may only do so:

(i)     in circumstances in which no obligation arises for the Issuer or any Dealer to publish a prospectus pursuant to Article 3 of the Prospectus Directive or supplement a prospectus pursuant to Article 16 of the Prospectus Directive, in each case, in relation to such offer; or

(ii)    in those Public Offer Jurisdictions mentioned in Paragraph 35 of Part A below, provided such person is one of the persons mentioned in Paragraph 35 of Part A below and that such offer is made during the Offer Period specified for such purpose therein.

Neither the Issuer, the Guarantor nor any Dealer has authorised, nor do they authorise, the making of any offer of Notes in any other circumstances.

**PART A – CONTRACTUAL TERMS**

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated July 24, 2007 the supplemental Prospectus No. 1 dated September 20, 2007 and the supplemental Prospectus No. 2 dated October 15, 2007, which together constitute a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "**Prospectus Directive**"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus as so supplemented.

**Information Concerning Investment Risk**

**Noteholders and prospective purchasers of Notes should ensure that they understand the nature of the Notes and the extent of their exposure to risk and that they consider the suitability of the Notes as an investment in the light of their own circumstances and financial condition. Noteholders and prospective purchasers of Notes should conduct their own investigations and, in deciding whether or not to purchase Notes, prospective purchasers should form their own views of the merits of an investment in the Notes based upon such investigations and not in reliance on any information given in these Final Terms.**

**Given the highly specialised nature of these Notes, the Issuer, and the Guarantor and the Dealer consider that they are only suitable for highly sophisticated investors who are able to determine themselves the risk of an investment in the Notes.**

**Consequently, if you are not an investor who falls within the description above you should not consider purchasing these Notes without taking detailed advice from a specialised professional adviser.**

1.    (i)    Issuer:                    Lehman Brothers Treasury Co. B.V.

       (ii)   Guarantor:               Lehman Brothers Holdings Inc.

| | | | |
|---|---|---|---|
| 2. | Series Number: | | 8808 |
| 3. | Specified Currency or Currencies: | | Japanese Yen (**"JPY"**) |
| 4. | Aggregate Nominal Amount: | | JPY 300,000,000 |
| 5. | Issue Price: | | 100 per cent. of the Aggregate Nominal Amount |
| 6. | (i) Specified Denomination(s): | | JPY 100,000,000 |
| | (ii) Calculation Amount: | | Specified Denomination |
| 7. | (i) | Issue Date: | November 15, 2007 |
| | (ii) | Interest Commencement Date: | November 16, 2007 |
| 8. | Maturity Date: | | November 16, 2022 |
| 9. | Interest Basis: | | Other (Fixed Rate and Index-Linked Interest) (further particulars specified below) |
| 10. | Redemption/Payment Basis: | | Other (Index-Linked). |
| | | | (further particulars specified below) |
| 11. | Change of Interest or Redemption/Payment Basis: | | For the period from and including the Interest Commencement Date to but excluding November 16, 2008 (the **"Fixed Rate Period"**), the Notes shall bear interest at the Fixed Rate. |
| | | | For the period from and including November 16, 2008 to but excluding November 16, 2022 (the **"Index-Linked Rate Period"**), the Notes shall bear interest at the Index-Linked Interest Rate. |
| 12. | Put/Call Options: | | Applicable. |
| 13. | (i) | Status of the Note: | Senior Notes |
| | (ii) | Status of the Guarantee: | Senior Guarantee |
| 14. | Method of distribution: | | Non-syndicated |

**PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE**

| | | | |
|---|---|---|---|
| 15. | **Fixed Rate Note Provisions** | | Applicable in respect of the Fixed Rate Period |
| | (i) | Fixed Rate of Interest: | 3.00 per cent. per annum payable in arrear |
| | (ii) | Interest Payment Date(s): | May 16, 2008 and November 16, 2008, provided however that for the purposes of the calculation of the amount of interest due on each Interest Payment Date, there shall be no adjustment in accordance with the Modified Following Business Day Convention. |
| | (iii) | Fixed Coupon Amount: | JPY 1,500,000 per Calculation Amount |
| | (iv) | Fixed Day Count Fraction: | 30/360 |
| | (v) | Broken Amount(s): | Not Applicable |
| | (vi) | Other terms relating to the method of calculating interest for Fixed Rate Notes: | Not Applicable |
| | (vii) | Business Day Convention: | Modified Following Business Day Convention |
| | (viii) | Option to defer interest payments: | Not Applicable |

| | | |
|---|---|---|
| 16. | **Floating Rate Note Provisions** | Not Applicable |
| 17. | **Zero Coupon Note Provisions** | Not Applicable |
| 18. | **Index-Linked Interest Note Provisions** | Applicable in respect of the Index-Linked Rate Period |
| | (i) Index/Formula: | See Appendix |
| | (ii) Name and address of Calculation Agent, if any, responsible for calculating the principal and/or interest due: | Lehman Brothers Special Financing Inc. |
| | (iv) Provisions for determining Coupon where calculation by reference to Index and/or Formula and/or other variable is impossible or impracticable or otherwise disrupted: | See Appendix |
| | (v) Interest Period(s)/Interest Payment Dates: | May 16 and November 16 in each year commencing on and including May 16, 2009 to and including the Maturity Date, provided however, that for the purposes of the calculation of the amount of interest due on each Interest Payment Date, there shall be no adjustment in accordance with the Modified Following Business Day Convention. |
| | (vi) Business Day Convention: | Modified Following Business Day Convention |
| | (vii) Additional Business Centre(s) (Condition 3(b)(B)): | New York |
| | (viii) Minimum Interest Rate for interest accrual only (Condition 3(b)(B)): | Zero per cent. |
| | (ix) Maximum Interest Rate: | Not Applicable |
| | (x) Interest Determination Date(s): | Two (2) Business Days prior to the first day of each Calculation Period |
| | (xi) Day Count Fraction: | 30/360 |
| | (xii) Option to defer interest payments: | Not Applicable |
| 19. | **Dual Currency Note Provisions** | Not Applicable |

**PROVISIONS RELATING TO REDEMPTION**

| | | |
|---|---|---|
| 20. | **Call Option** | Applicable |
| | (i) Optional Redemption Date(s)(Call): | On each Interest Payment Dates during the period from and including November 16, 2009 to and including May 16, 2022. |
| | (ii) Optional Redemption Amount(s) of each Note (Call) and method, if any, of calculation of such amount(s): | JPY 100,000,000 per Calculation Amount |
| | (iii) If redeemable in part: | |
| | (a) Minimum Redemption Amount | Not Applicable |

|  |  |  |
|---|---|---|
| | (b)    High Redemption Amount: | Not Applicable |
| | (iv) Notice period (if other than as set out in the Conditions): | No less than ten (10) Business Days preceding the relevant Optional Redemption Date by 3:00 p.m., Tokyo Time |
| 21. | **Put Option** | Not Applicable |
| 22. | **Final Redemption Amount of each Note:** | If the Notes have not been redeemed in full pursuant to the Early Redemption below or Call Option (as defined above), in each case on or prior to the Interest Payment Date scheduled to fall in May 2022, each Note shall be redeemed on the Maturity Date at an amount equal to 100 per cent of Calculation Amount. |
| 23. | **Early Redemption Amount of each Note** | |
| | Early Redemption Amount(s) per Calculation Amount payable on redemption for taxation reasons or on event or default and/or the method of calculating the same (if required or if different from that set out in the Conditions): | An amount equal to the Nominal Amount of each Note on such day as is selected by the Calculation Agent in its sole and absolute discretion (provided that such day is not more than 15 days before the date fixed for redemption of the Note), less the reasonable cost to the Issuer of unwinding any related hedging arrangements or other instruments of any type whatsoever, all as calculated by the Calculation Agent in its sole and absolute discretion. |

### GENERAL PROVISIONS APPLICABLE TO THE NOTES

|  |  |  |
|---|---|---|
| 24. | Form of Note: | Interests in a temporary global Note in bearer form are exchangeable for interests in a permanent global Note in bearer form |
| 25. | Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature): | Not Applicable |
| 26. | Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment: | Not Applicable |
| 27. | Details relating to Instalment Notes: | Not Applicable |
| | Instalment Amounts and Instalment Dates: | |
| 28. | Details relating to Extendible Notes: | Not Applicable |
| 29. | Consolidation provisions: | Not Applicable |
| 30. | Other terms or special conditions: | Lehman Brothers Special Financing Inc. (the "**Calculation Agent**") shall be solely responsible for the determination and calculation of any and all determinations, calculations or valuations in accordance with the terms of the Notes. The determinations of the Calculation Agent shall be conclusive and binding. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation, all costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its |

appointment or the exercise of its functions, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.

## DISTRIBUTION

| | | | |
|---|---|---|---|
| 31. | (i) | If syndicated, names of Managers: | Not Applicable |
| | (ii) | Date of Syndicated Trade Agreement: | Not Applicable |
| | (iii) | Stabilising Manager (if any): | Not Applicable |
| | (iii) | Stabilising Manager (if any): | Not Applicable |
| 32. | | If non-syndicated, name of Dealer: | Lehman Brothers International (Europe) |
| 33. | | Commissions and concessions: | The Issue Price herein is not an expression of the market value of the Notes and the initial placement of the Notes by the dealer appointed under the Programme may have been executed at prices above or below such Issue Price to reflect prevailing market conditions. |
| 34. | | Selling restrictions: | |
| | (i) | Netherlands Selling Restrictions: | Paragraph 1(iv) of The Netherlands selling restrictions set out in the "Subscription and Sale" section of the Information Memorandum shall apply. |
| | (ii) | Additional Selling Restrictions: | Not Applicable |
| 35. | | Non-exempt Offer | Not Applicable |

## PURPOSE OF FINAL TERMS

These Final Terms comprise the final terms of the Notes described herein pursuant to the U.S.$100,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.

## RESPONSIBILITY

The Issuer and the Guarantor accept responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer:

By:  _____
        Duly authorised

Issue Date: November 15, 2007/Series No.8808 /GID: 3443773

5

## PART B – OTHER INFORMATION

1. **LISTING**

   (i)   Listing:              None

   (ii)   Admission to Trading:      Not Applicable

2. **RATINGS**

   Ratings:

   The Program has been rated:

   **Standard & Poor's**
   Senior Debt (Long term)   A+
   Subordinated debt         A
   Senior Debt (Short term)   A-1

   An obligation rated 'A' is somewhat more susceptible to the adverse effects of changes in circumstances and economic conditions than obligations in higher-rated categories. However, the obligor's capacity to meet its financial commitment on the obligation is still strong. Negative means that a rating may be lowered. The addition of a plus (+) sign shows relative standing within the major rating categories.

   A short-term obligation rated 'A-1' is rated in the highest category by Standard & Poor's. The obligor's capacity to meet its financial commitment on the obligation is strong.

   **Moodys**
   Senior Debt (Long term)    A1
   Subordinated debt          A2
   Debt ratings (Short term)  Prime-1

   Obligations rated A are considered upper-medium grade and are subject to low credit risk. The modifier 1 indicates that the obligation ranks in the higher end of its generic rating category and the modifier 2 indicates a mid-range ranking.

   Issuers (or supporting institutions) rated Prime-1 have a superior ability to repay short-term debt obligations.

   **Fitch**
   Senior Debt (Long term)   AA-
   Subordinated debt         A+
   Senior Debt (Short term)   F1+

   **AA-**
   Very high credit quality. 'AA' ratings denote expectations of very low credit risk. They indicate very strong capacity for payment of financial commitments. This capacity is not significantly vulnerable to foreseeable events. The modifier "-" denotes relative status within this rating category.

   **A+**
   High credit quality. 'A' ratings denote expectations of low credit risk. The capacity for payment of financial

commitments is considered strong. This capacity may, nevertheless, be more vulnerable to changes in circumstances or in economic conditions than is the case for higher ratings. The modifier "+" denotes relative status within this rating category.

**F1+**
Highest credit quality. Indicates the strongest capacity for timely payment of financial commitments; the added "+" denotes any exceptionally strong credit feature.

| | | |
|---|---|---|
| 3. | **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER** | Save as discussed in the section headed "Subscription and Sale" in the Base Prospectus, so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer. |
| 4. | **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES** | Not Applicable. |
| 5. | **YIELD (Fixed Rate Notes Only)** | Not Applicable. |
| 6. | **HISTORIC INTEREST RATES** | Not Applicable. |
| 7. | **PERFORMANCE OF INDEX/FORMULA/OTHER VARIABLE, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS AND OTHER INFORMATION CONCERNING THE UNDERLYING (Index-linked or other variable Linked Notes only)** | Details of past performance of FXn (as defined in the Appendix) may be obtained from Reuters. The Issuer does not intend to provide post-issuance information. |
| 8. | **PERFORMANCE OF RATES OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (DUAL CURRENCY NOTES ONLY)** | Not Applicable. |
| 9. | **OPERATIONAL INFORMATION** | |
| | ISIN Code: | XS0329878770 |
| | Common Code: | 0329878770 |
| | Any clearing system(s) other than Euroclear and Clearstream, Luxembourg and the relevant identification number(s): | Not Applicable |
| | Delivery: | Delivery against payment |
| | Names and addresses of Additional Paying Agent(s) (if any): | Not Applicable |
| | The Aggregate Nominal Amount of Notes issued has been translated into USD at the rate of 1 USD = JPY | $2,609,354.00 |

*Issue Date: November 15, 2007/Series No.8808 /GID: 3443773*

7

114.971 producing a sum of (for Notes
not denominated in U.S. Dollars)

Issue Date: November 15, 2007/Series No.8808 /GID: 3443773

8

# APPENDIX

**Index/Formula:**

For each Note, the Interest Amount in respect of each Interest Period falling in the Index-Linked Rate Interest Period shall be determined by the Calculation Agent in its sole and absolute discretion to be an amount equal to the product of:

(i) JPY100,000,000; and

(ii) the FXn Amount,

divided by 2.


**"FXn Amount"** means an amount in JPY (which shall be rounded to the nearest whole JPY, with one-half JPY being rounded upward) determined by the Calculation Agent in its sole and absolute discretion in accordance with the following formula:

$$9.50\% \times (FXn / 105.20) - 6.50\%$$

subject to a minimum of zero,

where:

**"FXn"** means the mid JPY/USD spot foreign exchange rate (expressed as the number of JPY per one USD) which appears on Reuters Screen JPNU Page under the column "DLR" (or such other page as may replace that page on that service) (the **"FXn Screen Page"**) as at 3:00 p.m. Tokyo time, on the day that is two (2) Business Days prior to each Interest Payment Date (the **"FXn Determination Date"**). In the event that FXn and/or the FXn Screen Page is not published or is unavailable on the FXn Determination Date, the Calculation Agent will in its sole and absolute discretion request five (5) leading reference banks in the Tokyo interbank market for their market quotations for the mid JPY/USD spot foreign exchange rate (expressed as the number of JPY per one USD) at approximately 3:00 p.m. Tokyo time on such date. If five (5) quotations are provided as requested, then FXn shall be calculated by eliminating the highest and lowest quotations and taking the arithmetic mean of the remaining quotations. If only four (4) such quotations are provided, then FXn shall be the arithmetic mean of such quotations without regard to the highest and lowest quotations. If fewer than four (4) quotations, but at least two (2) quotations are provided, then FXn shall be the arithmetic mean of all the quotations provided. If only one (1) quotation is provided, then the Calculation Agent may determine that such quotation shall be FXn. If no quotations are provided, or if the Calculation Agent determines in its sole and absolute discretion that no suitable reference bank is available, then the Calculation Agent will determine FXn in its sole and absolute discretion.