Hearing Date and Time: November 17, 2010 at 10:00 a.m (Prevailing Eastern Time)
Objection Date and Time: November 10, 2010 at 4:00 p.m (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                                :
In re                                           :    Chapter 11 Case No.
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :    08-13555 (JMP)
                                                :
                        Debtors.                :    (Jointly Administered)
                                                :
-------------------------------------------------------------------x
```

**NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105
AND 364 OF THE BANKRUPTCY CODE FOR AUTHORIZATION
TO GRANT FIRST PRIORITY LIENS IN COLLATERAL POSTED IN
CONNECTION WITH FOREIGN EXCHANGE HEDGING TRANSACTIONS**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion"), of Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors"), pursuant to sections 105 and 364 of title 11 of the United States Code for authorization to grant first priority liens in collateral posted in connection with certain foreign exchange hedging transactions entered into by the Debtors, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **November 17, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;

(ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R. Fife, attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) any person or entity with a particularized interest in the Motion, so as to be so filed and received no later than **November 10, 2010 at 4:00 p.m. (prevailing Eastern Time)**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 3, 2010
      New York, New York

                                              /s/ Lori R. Fife
                                              Lori R. Fife

                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York 10153
                                              Telephone: (212) 310-8000
                                              Facsimile: (212) 310-8007

                                              Attorneys for Debtors
                                              and Debtors in Possession

**Hearing Date and Time: November 17, 2010 at 10:00 a.m (Prevailing Eastern Time)**
**Objection Date and Time: November 10, 2010 at 4:00 p.m (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
-----------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105
AND 364 OF THE BANKRUPTCY CODE FOR AUTHORIZATION
TO GRANT FIRST PRIORITY LIENS IN COLLATERAL POSTED
IN CONNECTION WITH FOREIGN EXCHANGE HEDGING TRANSACTIONS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), respectfully represent:

**Preliminary Statement**

1. Prior to the commencement of the Debtors' chapter 11 cases, the Debtors entered into a variety of commercial loan, real estate, and private equity and principal investment transactions involving international assets (as further defined below, the "Foreign Assets"). Such transactions are denominated in foreign currencies and entitle the Debtors to receive future payment in foreign currencies. The Debtors must exchange such currencies for United States

US_ACTIVE:\43492678\07\58399.0003

Dollars at the prevailing applicable exchange rate when dealing with receivable collections in connection with such transactions. As a result, the Debtors face the risk that the exchange rate for such currency will change unfavorably before the Debtors receive and exchange such currency. The Debtors' estimate that their total exposure to such foreign exchange risk in connection with the Foreign Assets is, as of June 30, 2010, approximately $1.8 billion. Accordingly, the Debtors seek authority to enter into hedging transactions ("<u>FX Hedging Transactions</u>") to hedge against the loss of value from fluctuations in foreign exchange rates of all or a portion of such exposure to foreign exchange risk. In connection with the FX Hedging Transactions, each applicable Debtor will be required to post cash, property or other collateral for the benefit of its hedging counterparty. Each applicable Debtor will also grant a first priority lien to the hedging counterparty for collateral posted to secure the FX Hedging Transactions. In light of the need to hedge against foreign currency exchange risk, the Debtors believe that the ability to enter into FX Hedging Transactions is in the best interests of their estates and creditors, and, accordingly the Motion should be granted.

## **Relief Requested**

2.  By this motion, the Debtors seek authorization, pursuant to sections 105(a) and 364(c)(2) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), to enter into FX Hedging Transactions and grant first priority liens to hedging counterparties in cash, securities, and other collateral to enable the Debtors to reduce the risk associated with fluctuations in currency exchange rates that could cause the value of the Debtors' interests in the Foreign Assets to deteriorate.

**Background**

3.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries filed with this Court voluntary petitions under Chapter 11 of the Bankruptcy Code. On October 5, 2008, Lehman Commercial Paper Inc. ("LCPI") commenced its voluntary case under the Bankruptcy Code. The Debtors' Chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.  On September 17, 2008, the United States Trustee for the Southern District of New York ( "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code ( "Creditors' Committee").

5.  On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Nos. 8330 and 8332].

**Lehman's Business**

6.  Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

7.  Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these Chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications filed on September 15, 2008 [Docket No. 2].

**Jurisdiction**

8.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**The Need for FX Hedging Transactions**

9.  As of the Commencement Date, the Debtors were party to numerous international transactions involving (i) residential mortgage loans, equity interests or related investments therein, and other real estate assets (collectively, "Real Estate Assets"), (ii) commercial lending ("Commercial Loans"), and (iii) equity and fixed-income direct investments in corporations and general partner and limited partner interests in asset managers and related funds ("Private Equity/Principal Investments" and, together with Real Estate Assets and Commercial Loans, the "Foreign Assets"). The Debtors' interests in the Foreign Assets constitute significant assets of their estates. The Debtors estimate that, as of June 30, 2010, LCPI and LBHI held interests in Foreign Assets that are capable of being hedged with aggregate mark-to-market values of approximately $1.3 billion and approximately $500 million, respectively. LBHI and LCPI collectively hold interests in Foreign Assets with an aggregate estimated mark-to-market value of approximately $1.8 billion as of June 30, 2010.

10. The Foreign Assets involve transactions that are denominated in foreign currencies and entitle the Debtors to receive future payment in foreign currencies, including, but not limited to, British Pounds Sterling, Euros, Canadian Dollars, and Swedish Kronas. As a result, the values of the Foreign Assets are subject to volatility in the foreign currency exchange markets. While the Debtors continue to hold interests in the Foreign Assets, they bear the risk that movements in the currency markets could change the market value of the Foreign Assets and affect the ultimate recoveries to the Debtors' estates in respect thereof. To attempt to mitigate

such risk and further preserve the value of the Foreign Assets, the Debtors intend to enter into FX Hedging Transactions. Pursuant to the FX Hedging Transactions, the Debtors will be required to post cash, securities, and other collateral (the "Collateral") in an amount that is equal to a percentage of the value of each FX Hedging Transaction. The applicable Debtor will also be required to grant a first priority lien in such Collateral to secure such its performance obligations to the hedging counterparty under the FX Hedging Transactions.

11.    In each case, the Collateral requirements will be driven by industry standards that take into consideration the type of transaction and the credit risk associated with a debtor as a counterparty. No Debtor will enter into an FX Hedging Transaction unless the applicable counterparty agrees that the Collateral posted in respect of such FX Hedging Transaction cannot and will not be used to setoff any other prepetition claims that such counterparty may have against the applicable Debtor. In addition, each Debtor counterparty to an FX Hedging Transaction will use only its own assets to post as Collateral and will not become liable for the obligations of the FX Hedging Transactions of its affiliate Debtors. Following the disposition of Foreign Assets, the Debtor holding an interest in such assets will accordingly reduce the aggregate notional amount of the FX Hedging Transactions to correspond to the reduction of the value of its Foreign Assets.

**FX Hedging Protocol**

12.    On March 11, 2009, this Court entered the Order Pursuant to Sections 105 and 364 of the Bankruptcy Code Authorizing the Debtors to Grant First Priority Liens in Cash Collateral Posted in Connection with the Hedging Transactions the Debtors Enter Into Through Certain Futures and Prime Brokerage Accounts [Docket No. 3047] (the "Derivatives Hedging Order"), which authorized the Debtors to hedge the risk associated with market fluctuations that

could effect the value of prepetition derivative contracts. On July 16, 2009, the Court entered the Order Pursuant to Sections 105 and 364 of the Bankruptcy Code Authorizing the Debtors to Grant First Priority Liens in Collateral Posted in Connection with Certain Hedging Transactions [Docket No. 4423] (the "Residential Hedging Order"), which authorized the Debtors to enter into hedging transactions in connection with residential real estate transactions. The Court has also approved hedging transactions to hedge against the risk associated with fluctuations in foreign exchange rates in connection with the sale of certain asset-backed securities managed by Neuberger Berman Fixed Income LLC pursuant to the Order Granting LBHI's Motion for Authorization, Pursuant to Sections 105, 363 and 364 of the Bankruptcy Code, to Sell Certain Asset Backed-Securities and Related Relief [Docket No. 6659] (the "ABS Hedging Order"). The Debtors propose a set of procedures with respect to FX Hedging Transactions (the "FX Hedging Protocol") that are based upon those that were approved in the Derivatives Hedging Order, the Residential Hedging Order and the ABS Hedging Order. Specifically, the Debtors propose:

- All proposed FX Hedging Transactions will be reviewed by an approval committee (the "FX Hedging Transactions Committee") established by the Debtors, consisting of certain of the Debtors' representatives and advisors, as selected by the Debtors. The financial advisors to the Creditors' Committee (the "Advisors") will receive notice of, and may attend, all meetings of the FX Hedging Transactions Committee (each an "FX Hedging Transactions Meeting") and will have access to the personnel of the Debtors involved with the proposed FX Hedging Transactions;

- With respect to all proposed FX Hedging Transactions, the Debtors will provide, as soon as practicable, but not later than three (3) Business Days[1] prior to any FX Hedging Transactions Meeting regarding the approval of an FX Hedging Transaction, (i) e-mail

---

[1] A "Business Day" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

notification to the Advisors of such meeting, which e-mail must contain the material terms of the proposed FX Hedging Transaction and (ii) an information package (the "Information Package") that will consist of (a) a list of the applicable Foreign Assets with mark-to-market values to be hedged and (b) appropriate and customary risk measurement information calculated using standard market conventions;

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is greater than $100,000,000 only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before such FX Hedging Transaction is scheduled to be executed or within two (2) Business Days after an FX Hedging Transactions Meeting during which such FX Hedging Transaction was approved or (ii) upon Court approval;

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is $100,000,000 or less only (i) if (a) the Advisors receive email notification of the FX Hedging Transaction, which will include the material terms of the approved FX Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the FX Hedging Transactions Meeting during which the proposed FX Hedging Transaction was discussed and approved, and (c) the Advisors do not object within six (6) business hours, herein defined as the hours between 9:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) on Business Days, of and after receipt of e-mail notification of the FX Hedging Transactions Committee's approval of such FX Hedging Transaction or (ii) upon Court approval;

- After the approval of a proposed FX Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if a Debtor's original strategy is changed or determined to be inappropriate with respect to a particular FX Hedging Transaction, the Advisors may commence a review of such FX Hedging Transaction at the FX Hedging Transactions Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of FX Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such FX Hedging Transactions, and (iii) an estimate of the mark-to-market of the corresponding Foreign Assets at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to the Hedging Protocol and may seek to amend such upon Court approval.

**Basis for Relief Requested**

13. Section 364(c) of the Bankruptcy Code provides, among other things, that if a debtor is unable to obtain unsecured credit allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code, the court may authorize the debtor to incur debt secured by a lien on property of the estate that is not otherwise subject to a lien. 11 U.S.C. § 364(c)(2).

14. After the Debtors enter into the FX Hedging Transactions, the Debtors propose to grant each of the various counterparties to such transactions a perfected first priority lien in the Collateral pursuant to section 364(c)(2) of the Bankruptcy Code. Provided that a debtor's business judgment does not run afoul of the provisions of and policies underlying the Bankruptcy Code, courts grant a debtor considerable deference in exercising its sound business judgment. *See, e.g., Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1089 (4th Cir. 1986); *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) ("[C]ases consistently reflect that the court's discretion under section 364 is to be utilized on grounds that permit reasonable business judgment to be exercised so long as the financing agreement does not contain terms that leverage the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to benefit a party-in-interest."). *See also In re Funding Sys. Asset Mgmt. Corp.*, 72 B.R. 87, 88 (Bankr. W.D. Pa. 1987); *In re Simasko Prod. Co.*, 47 B.R. 444, 449 (Bankr. D. Colo. 1985); *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981).

15. The Debtors have determined that the ability to enter into the FX Hedging Transactions is only available by posting Collateral. The FX Hedging Transactions are in the

best interests of the Debtors' estates and creditors because the hedging will reduce or eliminate the risk associated with fluctuations in currency exchange rates that could cause the value of the Debtors' interests in the Foreign Assets to deteriorate.

16. The Debtors cannot engage in the necessary FX Hedging Transactions without granting first priority liens on the Collateral because hedging counterparties will not enter into and will not accept the risk associated with the such transactions on an unsecured basis.[2] The FX Hedging Transactions are not being utilized as investment vehicles but only as a means to continue the hedging practices the Debtors engaged in prior to the Commencement Date. Further, the Debtors will not enter into any FX Hedging Transactions unless the applicable counterparty agrees that the Collateral posted in respect of such FX Hedging Transaction cannot be used to setoff any other prepetition or postpetition claims that such counterparty (or its affiliates) may have against the Debtors.

17. Accordingly, pursuant to section 364(c)(2) of the Bankruptcy Code, entering into the FX Hedging Transactions is in the best interests of the Debtors, their estates, and the stakeholders in these cases, and the Motion should be approved.

**Notice**

18. No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other parties

---

[2] This type of hedging motion is not subject to the requirements of Bankruptcy Rule 4001(c). The disclosures prescribed by Bankruptcy Rule 4001(c) are intended to aid the Court and other parties in interest by providing a summary of the material terms of lengthy and complex loan agreements. The Debtors seek to enter into standard forward and option agreements, not complex loan agreements. The information herein provides the Court and parties in interest with sufficient information regarding the scope of relief requested and the basis to approve the same.

entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

19. No previous request for the specific relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: November 3, 2010
   New York, New York

           /s/ Lori R. Fife
           Lori R. Fife

           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone: (212) 310-8000
           Facsimile: (212) 310-8007

           Attorneys for Debtors
           and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                  :

In re                                             :       Chapter 11 Case No.

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :       08-13555 (JMP)

               Debtors.                  :       (Jointly Administered)

------------------------------------------------------------------x

# ORDER PURSUANT TO SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS TO GRANT FIRST PRIORITY LIENS IN COLLATERAL POSTED IN CONNECTION WITH FOREIGN EXCHANGE HEDGING TRANSACTIONS

Upon the motion (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"), pursuant to sections 105 and 364 of the Bankruptcy Code, for authorization to grant first priority liens in cash, securities, and other collateral (the "Collateral") posted in connection with foreign exchange hedging transactions (the "FX Hedging Transactions"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper notice of the Motion having been provided to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Creditors' Committee (the "Creditors'

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]; and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors, subject to the terms of the agreements documenting the applicable FX Hedging Transactions, are hereby authorized to enter into FX Hedging Transactions and to post cash, securities or other collateral ("Collateral") for the benefit of hedging counterparties in connection with Hedging Transactions; and it is further

ORDERED that the Debtors are authorized to grant hedging counterparties to any FX Hedging Transaction first priority liens in the collateral posted by the applicable Debtor in respect of any such FX Hedging Transaction; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents and take such other actions as may be necessary or appropriate to implement and effectuate the FX Hedging Transactions in the manner set forth herein, including but not limited to the delivery of the Collateral and granting of first priority liens on the Collateral; and it is further

ORDERED that the Debtor counterparty to an FX Hedging Transaction will use only is own assets to post Collateral and shall not be liable for the obligations of the FX Hedging Transactions of its affiliate Debtors; and it is further

ORDERED that the Debtors shall not post Collateral that exceeds industry standards as adjusted for a debtor in possession; and it is further

ORDERED that:

- All proposed FX Hedging Transactions will be reviewed by an approval committee (the "FX Hedging Transactions Committee") established by the Debtors, consisting of certain of the Debtors' representatives and advisors, as selected by the Debtors. The financial advisors to the Creditors' Committee (the "Advisors") will receive notice of, and may attend, all meetings of the FX Hedging Transactions Committee (each an "FX Hedging Transactions Meeting") and will have access to the personnel of the Debtors involved with the proposed FX Hedging Transactions;

- With respect to all proposed FX Hedging Transactions, the Debtors will provide, as soon as practicable, but not later than three (3) Business Days[2] prior to any FX Hedging Transactions Meeting regarding the approval of an FX Hedging Transaction, (i) e-mail notification to the Advisors of such meeting, which e-mail must contain the material terms of the proposed FX Hedging Transaction and (ii) an information package (the "Information Package") that will consist of (a) a list of the applicable Foreign Assets with mark-to-market values to be hedged and (b) appropriate and customary risk measurement information calculated using standard market conventions;

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is greater than $100,000,000 only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before such FX Hedging Transaction is scheduled to be executed or within two (2) Business Days after an FX Hedging Transactions Meeting during which such FX Hedging Transaction was approved or (ii) upon Court approval;

---

[2] A "Business Day" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

3

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is $100,000,000 or less only (i) if (a) the Advisors receive email notification of the FX Hedging Transaction, which will include the material terms of the approved FX Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the FX Hedging Transactions Meeting during which the proposed FX Hedging Transaction was discussed and approved, and (c) the Advisors do not object within six (6) business hours, herein defined as the hours between 9:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) on Business Days, of and after receipt of e-mail notification of the FX Hedging Transactions Committee's approval of such FX Hedging Transaction or (ii) upon Court approval;

- After the approval of a proposed FX Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if a Debtor's original strategy is changed or determined to be inappropriate with respect to a particular FX Hedging Transaction, the Advisors may commence a review of such FX Hedging Transaction at the FX Hedging Transactions Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of FX Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such FX Hedging Transactions, and (iii) an estimate of the mark-to-market value of the corresponding Foreign Assets at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to this protocol and may seek to amend such upon Court approval; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Foreign Assets; and it is further

4

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment consummated in the manner set forth herein.

Dated: November __, 2010
       New York, New York

                                              UNITED STATES BANKRUPTCY JUDGE

5