Hearing Date: November 17, 2010 at 10:00 a.m.

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
:
In re: : Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., et al., : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
------------------------------------------------------------------ x

**STATEMENT OF OFFICIAL COMMITTEE OF UNSECURED
CREDITORS IN SUPPORT OF DEBTORS' MOTION PURSUANT TO
SECTIONS 105(a) AND 363(b)(1) OF THE BANKRUPTCY CODE AND
BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO IMPLEMENT
THE 2011 DERIVATIVES EMPLOYEE INCENTIVE PROGRAM**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of Lehman Brothers Holdings Inc. ("LBHI") and each of its affiliated debtors in possession (collectively, the "Debtors"), hereby files this statement in support of the Debtors' motion, dated October 27, 2010 [Docket No. 12370] (the "Motion"), pursuant to sections 105(a) and 363(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure, for authorization to implement a derivatives employee incentive plan for 2011 (the "2011 Incentive Plan"), and respectfully states as follows:

**BACKGROUND**

1. On November 25, 2009, the Debtors filed a motion [Docket No. 5952] (the "<u>2010 Motion</u>") for authorization to implement a derivatives employee incentive plan for 2010 (the "<u>2010 Incentive Plan</u>"), supported by the declaration of Robert Hershan filed on December 8, 2009 [Docket No. 6078]. The Committee filed a statement in support of the 2010 Motion on November 30, 2009 [Docket No. 5982]. After a December 16, 2009 hearing, the Court approved the 2010 Motion, authorizing the 2010 Incentive Plan, by order of December 17, 2009 [Docket No. 6298].

2. Following extensive discussions with the Committee and its advisors, the Debtors filed the Motion, whereby they request: (i) authorization to implement the 2011 Incentive Plan to the extent that it is not in the ordinary course of the Debtors' business, and (ii) approval of administrative expense priority of payment rights under the 2011 Incentive Plan.

**STATEMENT**

3. When reviewing requests for bonuses and incentive plans, the Committee starts from the proposition that chapter 11 cases generally, and this case in particular, should not present an opportunity for parties to enrich themselves at the expense of unsecured creditors. The principal goal of the Committee is to maximize recoveries to unsecured creditors. By definition, requests such as the 2011 Incentive Plan increase the administrative costs of the estate. As a result, the Committee approaches such programs with skepticism and will only support them if they have been carefully calibrated to motivate employees to take actions that will ultimately enhance recoveries to unsecured creditors. In this instance, after much deliberation and negotiation with the Debtors, the Committee believes that it has agreed with the Debtors to an incentive program that strikes an appropriate balance.

4. The 2011 Incentive Plan embodies a targeted program to incentivize the team of professionals who are working to maximize the value of the Debtors' portfolio of Derivative Contracts. More specifically, the 2011 Incentive Plan provides for a maximum additional $15 million Incentive Pool[1] for eligible employees, calculated based upon the total value recovered or preserved by the Debtors' Derivatives Workforce through December 31, 2011. Contributions to the Incentive Pool will be based upon percentages of (i) cash collections, (ii) preservation of value of live trades through hedging or active management of the derivatives portfolio, (iii) counterparty settlement offers, and (iv) mitigation of claims. While individual allocations are discretionary, based upon certain factors and subject to individual caps, a minimum of 75% of the amounts earned in the Incentive Pool will be distributed to the Derivatives Workforce.

5. The 2011 Incentive Plan will have the secondary benefits of (i) allowing the Debtors to retain highly qualified individuals, with in-depth knowledge of Lehman's derivatives business and counterparties; and (ii) providing a further incentive for such individuals to maximize value from the management and liquidation of Lehman's complex derivatives portfolio. While all of the Debtors' employees are beneficiaries of the retention and recruitment program that was authorized pursuant to the Court's November 21, 2008 order [Docket No. 1662], the original program by itself has not consistently provided sufficient incentive to enable the Debtors to compete with the compensation and prospect of long-term employment offered by the growing number of competitors that seek professionals with derivatives expertise.

---

[1]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

6. Based upon its careful consideration of the issues and its active role in crafting the 2011 Incentive Plan, the Committee believes that the relief requested in the Motion will provide an appropriate financial incentive to encourage exemplary performance by, and allow the Debtors to retain, professionals who are essential to the Debtors' value maximization efforts. Accordingly, the Committee supports the relief requested in the Motion.

7. The 2011 Incentive Plan is the product of a collaborative process. The Committee is acutely aware of the risks attendant to losing key employees with the sophistication and specialized knowledge of the Debtors' derivative assets necessary to analyze and reconcile trade data and to effectively manage and negotiate claims for and against the estates, as well as with the relationships required to engage with derivatives counterparties, all of which are necessary to preserve value for the Debtors' estates. Having come to the conclusion that continuing the 2010 Incentive Plan through 2011 is necessary and appropriate under the circumstances of these cases, the Committee worked with the Debtors to develop the Debtors' proposal for the 2011 Incentive Plan.

8. The 2011 Incentive Plan provides the Committee with considerable oversight authority, which it will exercise to ensure that the program is implemented in a manner that balances its objectives with a particular view to minimizing the administrative costs to the estates. To that end, as set forth in the Motion, the Committee's consent is required for a number of key determinations under the 2011 Incentive Plan (not to be unreasonably withheld), including: (i) the maximum amount paid to each participant, see Motion ¶¶ 25 & 26; (ii) calculation of the value of certain assets contributed to the Incentive Pool, see id. at ¶¶ 30, 33-35, taking into account cash collections, Realizable Asset Value, and counterparty settlement

4

offers; and (iii) Claims Mitigation, based on reductions in the dollar values of derivatives claims as a result of the efforts of the derivatives team, see id. at ¶ 36.

9. The Committee shares the Debtors' view that the 2011 Incentive Plan represents a sound exercise of the Debtors' business judgment. The 2011 Incentive Plan will create benefits that outweigh both its costs and the amounts that would otherwise be incurred to hire and train new employees with limited familiarity with the relevant products. The Committee believes that economic motivation and retention of employees with the knowledge required to perform the formidable tasks assigned to them is in the interests of the Debtors' estates and all of their unsecured creditors.

### **Bankruptcy Code Section 503(c)(1) Is Not Applicable**

10. The Committee shares the Debtors' view that the heightened evidentiary requirements for the approval of payments made to insiders for the purpose of inducing them to remain in the Debtors' employ are not applicable to the approval of the 2011 Incentive Plan.[2] In particular, the Debtors have submitted that no officer, director, or person in control of the Debtors will participate in the 2011 Incentive Plan. The Debtors have also confirmed to the Committee that, while certain members of the Derivatives Workforce who were formerly considered nominal "officers" of the Debtors will participate in the 2011 Incentive Plan, such individuals will participate as employees (and not officers) of the LAMCO Entities and will not have discretionary authority as to their own allocations under the 2011 Incentive Plan. Such

---

[2] See 11 U.S.C. § 503(c)(1) ("there shall neither be allowed nor paid – (1) a transfer made to, or an obligation incurred for the benefit of, an insider of the debtor for the purpose of inducing such person to remain with the debtor's business…"); id. at § 503(c)(3) ("other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefits of, officers, managers or consultants hired after the date of the filing of the petition.").

allocations are also subject to the Committee's approval (not to be unreasonably withheld). Furthermore, the Committee is satisfied that the 2011 Incentive Plan is not a retention plan within the contemplation of section 503(c)(1) of the Bankruptcy Code, but rather is incentivizing in nature. The 2011 Incentive Plan is intended to reward members of the Derivatives Workforce based upon their performance. See In re Nellson Nutraceutical, Inc., 369 B.R. 787, 802-03 (Bankr. D. Del. 2007) (employee incentive plan for payment of bonuses to senior management was approved by bankruptcy court as complying with requirements of Section 503(c), where incentive plan established aspirational goals early in year that were reviewed in light of performance at end of year).

        11.      Thus, the 2011 Incentive Plan is not the type of retention plan to which section 503(c)(1) applies. See, e.g., In re Pilgrim's Pride Corp., 401 B.R. 229, 235 (Bankr. N.D. Tex. 2009) (section 503(c)(1) "is directed at so-called key employee retention programs"); In re Global Home Products, LLC, 369 B.R. 778, 787 (Bankr. D. Del. 2007) (section 503(c) inapplicable where plan was incentive plan, and not retention plan, consistent with ordinary course of business); In re Dana Corp., 358 B.R. 567, 571 (Bankr. S.D.N.Y. 2006) (concluding that "incentivizing plans with *some* components that arguably have a retentive effect do not necessarily violate section 503(c)" (emphasis in original)).

        12.      While the 2011 Incentive Plan may promote continued employment with the Debtors, courts have recognized that this is a common consequence of incentive plans and not prohibited under section 503(c)(1) as an ancillary effect. The Committee is satisfied that the purpose of the plan is not to retain employees or any officers but to maximize recoveries for the Debtors and their creditors. In re Journal Register Co., 407 B.R. 520, 536, 538 (Bankr. S.D.N.Y. 2009) (court approved employee incentive plan provided for in confirmed chapter 11 plan as not

violative of section 503(c) because its purpose was not retention of key employees); Global Home, 369 B.R. at 786 (finding debtors' compensation plans to be "primarily incentivizing and only coincidentally retentive"); Dana Corp., 358 B.R. at 571 (a retentive effect does not necessarily violate section 503(c)).

13.  The Committee has reviewed the metrics of the 2011 Incentive Plan and is satisfied that amounts payable under the 2011 Incentive Plan are appropriately linked to the value created or preserved by such employees. The Committee is also satisfied that all members of the Derivatives Workforce will be treated on the same terms and that no such member will make decisions with respect to his or her own allocations under the 2011 Incentive Plan. Finally, as noted above, the Committee retains approval rights with respect to individual allocation amounts under the 2011 Incentive Plan.

## The Requirements of Bankruptcy Code Section 503(c)(3), to the Extent Applicable, Are Satisfied

14.  The Committee shares the Debtors' view that the requirements of section 503(c)(3), to the extent such requirements are applicable to the 2011 Incentive Plan, are satisfied. Transfers made to employees, including officers, outside of the ordinary course have been judged by some courts under a business judgment standard. See, e.g., Dana Corp., 358 B.R. at 576 (holding that the "test in section 503(c)(3) appears to be no more stringent a test than the one courts must apply in approving any administrative expense under section 503(b)(1)(A) . . . an actual, necessary cost or expense of preserving the estate"). Other courts review the propriety of such transfers based on a review of all facts and circumstances of the case. See, e.g., Pilgrim's Pride Corp., 401 B.R. at 236 (court must make its own determination that transaction will serve interests of creditors and estates); In re CEP Holdings, LLC, 2006 WL 3422665, *3 (Bankr. N.D. Ohio 2006) (facts and circumstances include "whether the potential plan recipient had significant

input into the negotiation of the plan (including the amount of additional compensation that the employee would receive under the plan)"). The expertise of each member of the Derivatives Workforce is necessary for the Debtors to maximize the value of their derivatives assets in light of the complexity and number of the estates' Derivative Contracts.

## **CONCLUSION**

15. For all of the foregoing reasons, the Committee respectfully requests that the Court grant the Motion and such other relief as it deems just.

Dated:   New York, New York
         November 5, 2010

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, NY 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., et al.