**Objection Deadline: November 22, 2010 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time (Only if Objection Filed): December 1, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                    :
In re                                                               :   **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :   **08-13555 (JMP)**
                                                                    :
                                      Debtors.   :   **(Jointly Administered)**
-------------------------------------------------------------------x

### NOTICE OF DEBTORS' MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 FOR APPROVAL OF THE SALE OF LEHMAN BROTHERS SPECIAL FINANCING INC.'S INTEREST IN A NOTE AND ITS EQUITY IN LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Special Financing Inc. ("LBSF" and together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors"), pursuant to sections 105 and 363 of title 11 of the United States Code and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for approval of the sale of its interest in a note and its equity in Libro Companhia Securitizadora de Créditos Financeiros, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December 1, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the Chambers of the Honorable

James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq., and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received by no later than **November 22, 2010 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that any party wishing to make a **Superior Proposal, as such term is defined in the Note and Equity Purchase Agreement attached as <u>Exhibit A</u> to the Motion, must deliver such Superior Proposals to the Debtors so that it is actually received on or before the Objection Deadline. Superior Proposals must be addressed to :**

| | |
|---|---|
| **Alvarez & Marsal**<br>**Rua Surubim, 577 – 9th Floor**<br>**04571-050 – São Paulo – SP – Brazil**<br>**Attn: Mr. Luis de Lucio**<br>**(ldelucio@alvarezandmarsal.com)** | **Lehman Brothers Holdings Inc.**<br>**1271 Avenue of the Americas, 40th Floor**<br>**New York, NY 10020**<br>**Attn: Mr. Daniel Ehrmann**<br>**(dehrmann@alvarezandmarsal.com)** |
| **Weil, Gotshal & Manges LLP**<br>**767 Fifth Avenue**<br>**New York, New York 10153**<br>**Attn: Richard P. Krasnow, Esq.**<br>**(richard.krasnow@weil.com)** | **Weil, Gotshal & Manges LLP**<br>**767 Fifth Avenue**<br>**New York, New York 10153**<br>**Attn: Christopher K. Aidun, Esq.**<br>**(christopher.aidun@weil.com)** |

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 8, 2010
     New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                        :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.* | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT**
**TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY**
**CODE AND BANKRUPTCY RULE 6004 FOR APPROVAL OF THE SALE OF**
**LEHMAN BROTHERS SPECIAL FINANCING INC.'S INTEREST IN A NOTE AND ITS**
**EQUITY IN LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

           Lehman Brothers Special Financing Inc. ("LBSF") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors in possession (together, the "Debtors" and,

collectively with certain of their non-debtor affiliates, "Lehman"), file this Motion and

respectfully represent:

**Preliminary Statement**

           1.     LBSF and its non-debtor affiliate LB I Group Inc. ("LB I Group") own all

of the outstanding equity of Libro Companhia Securitizadors de Creditos Financeiros ("Libro").

Libro is a Brazilian entity that was formed for the purpose of investing in fixed income and

distressed assets in Brazil.

2.     LBSF and LB I Group also own certain notes issued by Libro.  The outstanding principal balance of the note held by LBSF is approximately R6,510,700 (approximately $3,829,800), and the outstanding principal balance of the note held by LB I Group is approximately R21,652,800 (approximately $12,737,000).[1]

3.     Following the Commencement Date (as defined below), the Debtors determined to wind-down their South American operations and, with respect to Libro, shifted their focus from the identification of fixed income and distressed asset investment opportunities to the realization of value for LBSF and LB I Group from their debt and equity investments. Following a fulsome analysis of their options, the Debtors concluded that the best strategy was a sale of LBSF's and LB I Group's interests in Libro.

4.     The Debtors then embarked on an exhaustive marketing process lasting more than one year and involving the solicitation of offers from more than 25 Brazilian and non-Brazilian entities.  As described in greater detail below, this process eventually resulted in a proposed sale of LBSF's and LB I Group's debt and equity interests in Libro to Jive Investments Holding Ltd. ("JIH") pursuant to that certain Note and Equity Purchase Agreement (the "Purchase Agreement"), dated November 1, 2010, a copy of which is attached hereto as Exhibit A.

5.     Pursuant to the Purchase Agreement, LBSF and LB I Group propose to sell their debt and equity interests in Libro to JIH in exchange for an aggregate gross purchase price of R27,000,000 (approximately $15,882,400).  Of that amount, approximately R6,241,700 (approximately $3,671,600), subject to certain adjustments, will be payable by JIH to LBSF

---

[1] Amounts set forth in said notes and in the Purchase Agreement (as defined below) are denominated in Brazilian Reais ("R").  For the convenience of the Court, conversions of said amounts to U.S. dollars are provided herein based on the rate of exchange published by the Brazilian Central Bank as of November 1, 2010, which is approximately 1.7 reais to 1 U.S. dollar.

directly and an additional R15,047,200 (approximately $9,063,100), subject to certain

adjustments, will be payable by LB I Group from its share of the Purchase Price (as defined

below) to LBSF as a result of a reallocation agreement heretofore approved by the Court.[2]  As a

result of these transactions, LBSF's gross recovery from its debt and equity interests in Libro

will be approximately R21,288,900 (approximately $12,522,900), subject to certain adjustments.

For the reasons set forth below, the Debtors believe that the proposed transactions will maximize

LBSF's realization of value from its investment in Libro, and accordingly, are in the best

interests of LBSF's estate and creditors and should be approved.

### Background

6.       Commencing on September 15, 2008 and periodically thereafter, the

Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United

States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for

procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to

operate their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

7.       On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

---

[2] On December 17, 2009, the Court entered an order approving the waiver by LBSF of certain interest
payments from Libro due under the BMG Note (as defined below) (the "Interest Waiver Order").
[Docket No. 6295].  LB I Group also waived certain interest payments from Libro due under the ABN
Note.  The transactions authorized in the Interest Waiver Order allowed Libro to reduce its contingent tax
liabilities, thereby increasing its value to potential purchasers.  The Interest Waiver Order also authorized
LBSF to enter into an equalization agreement with LB I Group to ensure that the waiver of interest
payments did not alter the respective values of LBSF's and LB I Group's interests in Libro and the Notes
(the "Equalization Agreement").

8.    On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

9.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

The Examiner filed its report with the Court on March 11, 2010 [Docket No. 7531].

10.    On April 14, 2010, the Debtors filed their revised joint chapter 11 plan

[Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to

section 1125 of the Bankruptcy Code [Docket No. 8332].

11.    Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Jurisdiction

12.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

13.    The Debtors respectfully request entry of an order pursuant to sections

105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 (i) authorizing, approving

and ratifying LBSF's entry into the Purchase Agreement, (ii) authorizing LBSF to consummate

the transactions contemplated therein; and (iii) authorizing LBSF to pay its share of the Break-up

Fee (as defined below) if the Court authorizes and approves an Alternative Transaction (as defined below).

## Libro

14.     The Purchase Agreement contemplates the sale of LBSF's equity interest in Libro (the "LBSF Equity") and its interest in a promissory note issued by Libro and dated March 16, 2010 in the original principal amount of approximately R9,510,730 (approximately $5,594,550) (the "BMG Note"). The outstanding principal balance on the BMG Note as of November 1, 2010 was approximately R6,510,700 (approximately $3,829,800). The Purchase Agreement also provides for the sale of LB I Group's equity interest in Libro (the "LB I Group Equity," and together with the LBSF Equity, the "Equity") and a promissory note issued by Libro and dated March 16, 2010 in the original principal amount of approximately R46,652,830 (approximately $27,442,840) (the "ABN Note," together with the BMG Note, the "Notes"). The outstanding principal balance on the ABN Note as of November 1, 2010 was approximately R21,652,800 (approximately $12,737,000).

15.     As set forth in the declaration of Luis Felipe de Lucio, Jr. (the "de Lucio Declaration"), a managing director of Alvarez & Marsal North America LLC (A&M), Libro currently has no employees and no ongoing business.[3] *See* de Lucio Dec. ¶ 5. As of October 30, 2010, its only assets were three portfolios of fixed income and distressed assets, approximately R31,167,000 (approximately $18,334,000) in cash on hand, and real property with an estimated recovery value of approximately R7,337,500 (approximately $4,316,175). *See* de Lucio Dec. ¶ 5. The portfolios consist of (i) a portfolio of corporate non-performing loans with an outstanding principal balance of approximately R726,000,000 (approximately $427,000,000) (the "ABN

---

[3] A copy of the de Lucio Declaration is attached hereto as Exhibit B.

Portfolio"); (ii) a portfolio of performing social security-benefit-deductible loans with an

outstanding balance of R4,628,400 (approximately $2,722,600) (the "BMG Portfolio"); and (iii)

a portfolio of distressed assets with an unpaid principal balance (for non-performing assets) /

outstanding value (for performing assets) of approximately R$85,427,000 (approximately

$50,250,000) (the "Distressed Asset Portfolio," and together with the ABN Portfolio and the

BMG Portfolio, the "Portfolios").[4]  *See* de Lucio Dec. ¶ 5.

       16.     Libro's principal liabilities,[5] as of October 31, 2010, were the principal

and interest outstanding on the Notes, totaling approximately R64,128,900 (approximately

$37,722,900), contingent withholding tax liabilities in the amount of approximately R27,854,500

(approximately $16,385,000), and contingent litigation liabilities related to counterclaims for

attorneys' fees arising from Libro's collection efforts with respect to the ABN Portfolio.[6]  *See* de

Lucio Dec. ¶ 6.

       17.     The ABN Portfolio and the BMG Portfolio were purchased with the

proceeds from the ABN Note and the BMG Note, respectively, and are credit linked such that the

proceeds from each of the ABN Portfolio and the BMG Portfolio are earmarked for repayment of

their related Notes.  The Distressed Asset Portfolio was transferred to Libro from an affiliate

---

[4] The preceding valuations are as of October 31, 2010.

[5] Nothing contained herein shall be construed as an acknowledgement of the validity or amount of any particular liability, other than the Notes, and the Debtors and Libro reserve the right to contest the validity or amount of any of Libro's liabilities, other than the Notes, for any reason.

[6] Due to the early stage of some proceedings and to the generality of some of the claims, it is impossible to estimate the amount of contingent litigation liabilities with any degree of precision.

called Fundo de Investimento Multimercado Credito Privado Navigator Investimento No

Exterior ("Fundo") pursuant to the winding up of Fundo's businesses.[7]

18.     As set forth above, Libro is burdened by contingent tax and litigation

liabilities and continues to accrue significant administrative expenses in connection with the

management of the Portfolios.  These expenses include payments to third party servicers, legal

fees incurred in connection with Libro's collection efforts with respect to the Portfolios, and

amounts that are or may be due to the Brazilian Federal Revenue Service (Secretaria da Receita

Federal, "SRF") with respect to which Libro's officers (who are employees of Alvarez & Marsal

Brasil Ltda) and shareholders potentially could have personal liability.  *See* de Lucio Dec. ¶ 8.

### Sale of the Notes and the Equity

19.     Following the Commencement Date, LBSF has been engaged in the

process of deploying its assets for the benefit of its estate and creditors.  As part of that process,

LBSF and LB I Group (the "Sellers") carefully evaluated their options with respect to the Notes

and the Equity and ultimately determined that a sale offered the best prospect for maximizing

value.  *See* de Lucio Dec. ¶¶ 7-11.  This determination was primarily based on the administrative

challenges attendant to selling Libro's assets piecemeal and the fact the Portfolios are wasting

assets: as collections are made with respect to the loans contained therein, the value of the

Portfolios decreases with the remaining balance of loans skewing increasingly towards loans that

are subject to significant litigation or that are otherwise uncollectible.  *See* de Lucio Dec. ¶¶ 9-

10.  Assuming that Libro does not acquire additional assets, LBSF anticipates that the sum of the

contingent liabilities associated with the litigation involving Libro's collection efforts with

---

[7] On October 5, 2008, the Debtors mistakenly filed a chapter 11 case for Fundo based on inaccurate
information indicating that Fundo was a Delaware entity.  Fundo's chapter 11 case was dismissed on
February 24, 2009 [Docket No. 2913].

respect to amounts due under the loans that comprise the ABN Portfolio and the Distressed Asset

Portfolio, and the taxes that may be due to the SRF with respect to the Notes, will eventually

exceed the likely collection value of the assets contained in the Portfolios.  Pursuant to Brazilian

law, Libro would then have to be placed into an insolvency proceeding with the possibility of

personal liability for its officers and shareholders for Libro's unpaid taxes.  *See* de Lucio Dec. ¶¶

8, 10-11.

20.     Accordingly, the Sellers have been actively seeking a sale transaction for

the Notes and the Equity while the remaining loans contained in the Portfolio retain sufficient

value to entice a potential purchaser to assume the liabilities associated therewith.  Following an

unsuccessful attempt to enlist a stalking horse bidder, the Sellers initiated a marketing and sale

process in June 2010.  *See* de Lucio Dec. ¶¶ 12-14.  Pursuant to that process, the Sellers

distributed promotional materials to 25 Brazilian and non-Brazilian financial institutions

describing Libro and its assets and inviting such parties to enter into standard non-disclosure

agreements.  *See* de Lucio Dec. ¶ 13.  During July and August, 2010, five potential purchasers

entered into non-disclosure agreements with the Debtors (the "Potential Purchasers").  *See* de

Lucio Dec. ¶ 13.  Each of the Potential Purchasers was given access to a data room established

by the Sellers to facilitate the sale process.  *See* de Lucio Dec. ¶ 13.  The Potential Purchasers

were encouraged to submit non-binding indicative bids by September 30, 2010.  *See* de Lucio

Dec. ¶ 15.  During the month of September, the Sellers held one-on-one conferences calls with

each of the Potential Purchasers to discuss Libro, the Notes and the Portfolios.  *See* de Lucio

Dec. ¶ 15.  The Sellers also hosted a webcast presentation by the servicer of the ABN Portfolio to

provide additional detail.  *See* de Lucio Dec. ¶ 15.

21.     In spite of the apparent interest of the Potential Purchasers, only JIH and one other party submitted indicative offers.  *See* de Lucio Dec. ¶ 16.  The Sellers carefully reviewed the indicative offers and determined that JIH's offer was superior because it provided for a higher sale price and less onerous indemnity obligations.  *See* de Lucio Dec. ¶ 16-18.  The other bidder, which was a U.S. company, declined the opportunity to improve the sale price or the indemnity provisions of its bid.  *See* de Lucio Dec. ¶ 17.  As set forth in the de Lucio Declaration and the Declaration of Daniel Ehrmann (the "Ehrmann Declaration"), a managing director of A&M and a Vice President of LBSF, the Sellers believe that JIH's offer, which has been memorialized in the Purchase Agreement, is the highest and best offer for the Notes and the Equity.[8]  *See* de Lucio Dec. ¶ 20; Ehrmann Dec ¶ 3.

## The Purchase Agreement

22.     Subsequent to the Sellers' acceptance of JIH's offer, they engaged JIH in negotiations with respect to the terms of the proposed transaction using a template of an agreement prepared by the Sellers.  These negotiations culminated in the execution of the Purchase Agreement which, save for the pricing terms and the Break-up Fee (as defined below), reflects in all material respects the terms set forth in that template.  The salient terms of the Purchase Agreement are as follows:[9]

---

[8] A copy of the Ehrman Declaration is attached hereto as Exhibit C.

[9] The following summary is qualified entirely by the terms of the Purchase Agreement.  To the extent there are any inconsistencies between the description of the Purchase Agreement contained herein and the terms and conditions of the Purchase Agreement, the terms of the Purchase Agreement shall control.

| | |
|---|---|
| ***Purchase and Sale of the Notes and the Equity*** [10] | JIH will purchase from Sellers and Sellers will sell to JIH all of Sellers' right, title and interest in the Notes, certain related agreements, and the Equity.  The LBSF Equity and the BMG Note will be conveyed to JIH free and clear of all liens, claims, encumbrances and interests.<br><br>The aggregate consideration for the Equity, the Notes, and the related agreements consists of (i) a payment of approximately R27.000.000,00 (approximately $15,882,400) (the "Purchase Price"), and (ii) the assumption by JIH of all obligations and Liabilities of each of the Sellers with respect to and under their respective Notes.<br><br>Taking into account the reallocation of the Purchase Price between LBSF and LB I Group as required under the Equalization Agreement, approximately R21,288,900 (approximately $12,522,900) of the Purchase Price, subject to certain adjustments, will be payable to LBSF. |
| ***Break-up Fee*** | If JIH terminates the Purchase Agreement because the Sale Order is not entered by December 7, 2010, or the Sellers terminate the Purchase Agreement because (i) they receive a Superior Proposal, (ii) the Bankruptcy Court approves a similar offer or a Superior Proposal, and (iii) Sellers consummate the transactions contemplated in such offer or proposal, then, subject to entry of the Break-up Fee Order, Sellers will pay JIH 2% of the Purchase Price, plus interest at the SELIC Rate [11] from the date of execution of the Purchase Agreement (the "Break-up Fee") - approximately R540,000 (approximately $317,600), plus the Expense Reimbursement (as defined below), which is capped at $50,000. |
| ***Escrow*** | The Sellers will cause approximately R2,700,000 (approximately $1,588,200) of the Purchase Price to be placed in escrow (the "Indemnity Escrow Funds").  Any payment Sellers are obligated to make pursuant to the indemnification provisions contained in the Purchase Agreement will be paid exclusively from the Indemnity Escrowed Funds, and the Sellers will have no liability or obligation to indemnify JIH other than from the Indemnity Escrowed Funds. |

[10] Capitalized terms used herein but not defined herein shall have the meaning ascribed to such terms in the Purchase Agreement.

[11] The SELIC Rate is the target overnight rate of the Brazilian Special Settlement and Custody System and is 10.75% per annum.

| | |
|---|---|
| | Subject to unresolved claims, the Escrow Agent will release the remaining Indemnity Escrowed Funds to LBSF after a period of one year. |
| *Indemnification* | For a period of one year from the Closing Date, Sellers agree to indemnify JIH, solely from the Indemnity Escrow Funds and subject to the limitations described herein, from certain Losses based on (i) the breach of representations, warranties, covenants, or other agreements of the Sellers; (ii) certain litigation against Libro in connection with any Legal Proceeding relating to the ABN Portfolio (collectively, the "ABN Litigation") in an amount equal to 50% of such cumulative Losses actually suffered by JIH resulting from all ABN Litigation to the extent such Losses are in excess of R100,000; and (iii) certain related fees and expenses.<br><br>Claims for indemnification are limited (i) with respect to any individual claim for Losses, unless and until such Losses claimed exceed R50,000 ($29,400) (the "De Minimis Amount"); and (ii) unless and until the amount of indemnified Losses suffered by JIH exceed, in the aggregate, R200,000 ($117,700) (the "Deductible") disregarding any individual claim that does not exceed the De Minimis Amount, and then only to the extent that such Losses exceed the Deductible. |
| *Expense Reimbursement* | In the event the Closing has not occurred by March 31, 2011 (other than as a result of Purchaser's breach), the Sellers will reimburse JIH of its reasonable and documented out of pocket expenses incurred in connection with the negotiation and entering into of the Purchase Agreement (including counsel and advisory fees and expenses and travel expenses), limited to $50,000 (the "Expense Reimbursement").<br><br>The Expense Reimbursement and the Break-up Fee, as applicable, will be allocated between the Sellers consistent with the allocation of the Purchase Price described above. |
| *Fiduciary Out* | Sellers may terminate the Purchase Agreement (the "Fiduciary Out"), subject to payment of the Break-up Fee and the Expense Reimbursement, if they receive a Superior Proposal from a third party and JIH does not make a Qualifying Topping Bid of at least $500,000 (such third-party transaction, an "Alternative Transaction"). |

| | |
|---|---|
| ***Transition Services*** | Sellers agree to make certain employees of Lehman and its advisors who are responsible for managing Libro available for consultation and assistance after the Closing Date for a period of 90 days at no additional cost to JIH. |

## The Proposed Sale is an Appropriate
## Exercise of the Debtors' Business Judgment and Should be Approved

23.    Ample authority exists for approval of LBSF's entry into the Purchase Agreement.  Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Committee of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

24.    Moreover, Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  Courts often allow a chapter 11 debtor to sell assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale is permissible pursuant to section 363(b) of the Bankruptcy Code.  *See, e.g., In re Loral Space & Communications Ltd., et al.*, Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Sep. 30, 2005); *In re International Wire Group, Inc., et al.*, Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. June 10, 2004); *Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.)*, 233 B.R. 619 (D.P.R. 1999) (upholding the bankruptcy court's approval of a private sale

conducted by a chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving a private sale of a chapter 11 debtor's assets where the standards of section 363(b) were met).

25.    The Sellers have engaged in an exhaustive marketing and sale process that balanced the necessity of providing a fulsome opportunity for the Potential Purchasers to assess the proposed transaction, with the Sellers' need to conclude the process in an expeditious manner. Each of the Potential Purchases was given equal access to the information contained in the data room, an opportunity to raise specific questions with the Debtors' employees and the servicer of the ABN Portfolio, and encouraged to submit non-binding indicative bids. *See* de Lucio Dec. ¶¶ 13, 15. Only two bids were received, and the Sellers choose the JIH Bid based on its quantifiable superiority. *See* de Lucio Dec. ¶¶ 16-17. As a result, the Sellers believe all potential, qualified bidders were afforded the opportunity to bid on the Notes and Equity and that the purchase price is fair and reasonable. *See* de Lucio Dec. ¶ 20; Ehrmann Dec. ¶ 3.

26.    Further, by bargaining for the Fiduciary Out, the Sellers have retained flexibility to the extent that another interested party makes an offer that is materially superior prior to the closing of the Purchase Agreement. For all of these reasons, the Debtors believe that the transactions set forth in the Purchase Agreement are both reasonable and in the best interests of LBSF, its estate, and its creditors. LBSF's entry into the Purchase Agreement, therefore, should be approved pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

### Superior Proposals

27.    The Fiduciary Out allows the Sellers to terminate the Purchase Agreement, subject to payment of the Break-up Fee and the Expense Reimbursement, if they

receive a Superior Proposal from a third party and JIH does not make a Qualifying Topping Bid

of at least $500,000.  At minimum, a Superior Proposal must be a binding offer and must, in the

Sellers' reasonable discretion, constitute a higher and better offer for the Notes, the Equity, and

the related agreements in light of the necessity for payment to JIH of the Break-up Fee and the

Expense Reimbursement should Sellers terminate the Purchase Agreement in favor of an

Alternative Transaction.  As set forth in the notice of the Motion prefixed hereto, in order to be

considered a Superior Proposal, binding offers must be received by the Sellers on or before

November 22, 2010, the deadline for filing objections to the Motion, at the following addresses:

| | |
|---|---|
| **Alvarez & Marsal**<br>**Rua Surubim, 577 – 9th Floor**<br>**04571-050 – São Paulo – SP – Brazil**<br>**Attn:  Mr. Luis de Lucio**<br>(**ldelucio@alvarezandmarsal.com**) | **Lehman Brothers Holdings Inc.**<br>**1271 Avenue of the Americas, 40th Floor**<br>**New York, NY 10020**<br>**Attn:  Mr. Daniel Ehrmann**<br>(**dehrmann@alvarezandmarsal.com**) |
| **Weil, Gotshal & Manges LLP**<br>**767 Fifth Avenue**<br>**New York, New York 10153**<br>**Attn:  Richard P. Krasnow, Esq.**<br>(**richard.krasnow@weil.com**) | **Weil, Gotshal & Manges LLP**<br>**767 Fifth Avenue**<br>**New York, New York 10153**<br>**Attn:  Christopher K. Aidun, Esq.**<br>(**christopher.aidun@weil.com**) |

## The Break-Up Fee.

28.     In order to compensate JIH for the time it invested in conducting the

necessary due diligence and negotiating the terms and conditions of the Purchase Agreement and

the other risks it incurred as the initial bidder for the Notes and the Equity, including with respect

to the Fiduciary Out, the Purchase Agreement provides that the Sellers will pay JIH $50,000

pursuant to the Expense Reimbursement and the Break-up Fee of approximately R540,000

(approximately $317,650), if

    i.    JIH terminates the Purchase Agreement because the Sale Order is not entered by
December 7, 2010, or Sellers terminate the Purchase Agreement because they receive
a Superior Proposal and JIH does not counter with a Qualifying Topping Bid; and

ii.    the Bankruptcy Court approves a similar offer or a Superior Proposal, and Sellers consummate the transactions contemplated by such Superior Proposal.

29.    The Sellers and JIH negotiated the Break-Up Fee provision with the understanding that, given the sales process described above that preceded the Sellers' acceptance of JIH's offer, any transaction that the Sellers enter into with a third party under the circumstances described above likely would have been facilitated by the existence of the Purchase Agreement.  *See* de Lucio Dec. ¶¶ 19-20.

30.    The approval of break-up fees and other forms of bidding protections in connection with the sale of assets pursuant to section 363 of the Bankruptcy Code have become an established practice in chapter 11 cases.  A debtor obtains significant value from being able to secure a bid from which any other potential offers can be evaluated.  The potential to be outbid by other bidders, however, presents risks and uncertainties to such "first bidders."  Accordingly, courts recognize the potential for breakup fees to encourage potential bidders to invest the requisite time, money, and effort to negotiate with a debtor and perform the necessary due diligence attendant to the acquisition of a debtor's assets, despite the inherent risks and uncertainties of the chapter 11 process.  *See, e.g., In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentives may "be legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted).

31.    The Break-Up Fee serves as a material inducement for JIH to enter into the Purchase Agreement, notwithstanding the substantial time and expense involved, by providing JIH with reasonable protection for the commitment to dedicate its resources to effectuating the transaction and to forgo other investment opportunities while the Court considers issues surrounding the Purchase Agreement.  *See, e.g., In re Integrated Resources Inc.*, 135 B.R.

746, 750-51 (Bankr. S.D.N.Y.), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992), *app. dismissed*, 3 F.3d 49

(2d Cir. 1993) ("Absent a break-up fee, bidders are often reluctant to make the first bid for fear

that it will be shopped around and 'topped' by an entity relying on the initial offeror's due

diligence.").

       32.     In the context of asset sales, courts in the Southern District of New York

often approve break-up fees in bankruptcy cases where warranted and consistent with market

practices. *See, e.g., Official Committee of Subordinated Bondholders v. Integrated Resources,*

*Inc. (In re Integrated Resources, Inc.)*, 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d

49 (2d Cir. 1993).  Specifically, courts in the Southern District of New York have held that

break-up fees should be approved as long as (i) the relationship between the parties is not tainted

by self-dealing, (ii) the fee does not hamper bidding, and (iii) the amount of the fee is reasonable

in relation to the size of the transaction.  *Id.* at 657.  Bankruptcy courts apply these standards

based on the "business judgment" of the Debtors, where the Court does not second-guess the

business decisions made by the debtors as long as the process is fair and not tainted by self-

dealing and other impropriety. *See In re Global Crossing Ltd.*, 295 B.R. 726, 744 (Bankr.

S.D.N.Y. 2003) ("[N]o litigant has seriously argued the inapplicability of the business judgment

test, and if any such argument had been made, the Court would be compelled ... to reject it.").

       33.     For the reasons discussed above, the Break-Up Fee, representing

approximately 2% of the Purchase Price, meets this "business judgment" standard because it

secures a firm offer for the Notes and the Equity from JIH, an unrelated third party, and sets a

floor for any potential negotiations with any other interested parties.  LBSF understands that the

neither JIH nor its principals have any connection to Lehman, including the Sellers.  *See* de

Lucio Dec. ¶ 16.  Moreover, the Break-Up Fee bears a reasonable relationship to the transaction

and is well within the range of what is customary for transactions in the bankruptcy context –
including in a prior sale of certain of the Debtors' assets. *See, e.g.*, *In re Lehman Brothers
Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Oct. 22, 2008) (Docket No. 1175)
(break-up fee of $52.5 million); *In re Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y.
July 18, 2007) (Docket No. 8856) (break-up fee of $82.5 million or approximately 3.24%); *In re
Delphi Corp.*, Case No. 05-44481 (RDD) (Bankr. S.D.N.Y. Dec. 18, 2006) (Docket No. 6589)
(break-up fee of $100 million or approximately 2.94%); *In re Allegiance Telecom, Inc.*, Case No.
03-13057 (RDD) (Bankr. S.D.N.Y. Dec. 18, 2003) (Docket No. 867) (2.8% break-up fee); *In re
GST Telecom, Inc.*, Case No. 00-1982 (GMS) (Bankr. D. Del. May 23, 2000) (Docket No. 154)
(3% break-up fee in $450 million sale).

34.     Because the Break-Up Fee was entered into as a result of an arm's-length
transaction after months of analysis and good faith negotiations by the Sellers and JIH, and is
necessary to secure JIH's commitment to enter into a valuable transaction for LBSF, it satisfies
this Court's "business judgment" test and should be approved even if the Court ultimately
approves an Alternative Transaction instead of the Purchase Agreement.

### Sale of the BMG Note and the LBSF Equity Free
### and Clear of Liens, Claims, Encumbrances, and Interests

35.     Although LBSF is unaware of any lien, claim, encumbrance or interest in
or on the BMG Note or the LBSF Equity, it is appropriate for the BMG Note and the LBSF
Equity to be sold to JIH free and clear of liens, claims, encumbrances, and interests pursuant to
section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances, or interests to
attach to the net sale proceeds of the BMG Note and the LBSF Equity.[12]  *See MacArthur Co. v.*

---

[12] As the ABN Note and the LB I Group Equity are property of a non-debtor, and thus not subject to
transfer pursuant to section 363(b) of the Bankruptcy Code, the relief sought with respect to section
363(f) does not apply to the ABN Note and the LB I Group Equity.  The Debtors understand that LB I

*Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the Court's power to sell property free and clear of liens has long been recognized); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale….").

36.    Moreover, any party that does hold a lien, claim, encumbrance, or interest will be adequately protected by attachment to the net sale proceeds of the LBSF Equity and the BMG Note, subject to any claims and defenses LBSF may possess with respect thereto. *See In re Circus Time, Inc.*, 5 B.R. at 7. Moreover, any party that may hold a lien on the LBSF Equity or the BMG Note (and LBSF is not aware of any such party) could be compelled to accept a monetary satisfaction of such interests, satisfying section 363(f)(5) of the Bankruptcy Code. Thus, sale of the LBSF Equity and the BMG Note free and clear of liens, claims, encumbrances, and interests will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code. Accordingly, the LBSF Equity and the BMG Note are to be transferred to JIH free and clear of all liens, claims, encumbrances, and interests, with any such liens, claims, encumbrances, and interests to attach to the net sale proceeds of the LBSF Equity and the BMG Note.

**Good Faith Purchasers**

37.    Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good faith purchaser. Section 363(m) provides,

---

Group is also unaware of any liens, claim, encumbrances, or interests of third parties in the ABN Note or the LB I Group Equity.

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

38.      Here, the terms and conditions of the sale of the Notes and the Equity to JIH were negotiated among unrelated parties at arm's-length and in good faith. *See* de Lucio Dec. ¶ 16. Accordingly, LBSF requests the Court determine that JIH is acting in good faith and entitled to the protections afforded to good faith purchasers under section 363(m) of the Bankruptcy Code.

### Relief Under Bankruptcy Rule 6004(g)

39.      Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." FED. R. BANKR. P. 6004(g).

40.      JIH has informed the Sellers that, for tax planning reasons, it is imperative that the transactions set forth in the Purchase Agreement close prior to year end. Accordingly, LBSF requests a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h) allowing the order approving its entry into the Purchase Agreement to be effective immediately.

### Notice

41.      No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) JIH , and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

42.    No previous request for the relief sought herein has been made to this or

any other court.

WHEREFORE, LBSF respectfully requests that the Court grant the relief

requested and such other and further relief as is just.

Dated:  November 8, 2010
        New York, New York

                        /s/ Richard P. Krasnow
                        Richard P. Krasnow
                        WEIL, GOTSHAL & MANGES LLP
                        767 Fifth Avenue
                        New York, New York 10153
                        Telephone: (212) 310-8000
                        Facsimile: (212) 310-8007

                        Attorneys for Debtors
                        and Debtors in Possession

**Exhibit A**
**(Purchase Agreement)**

**EXECUTION COPY**

NOTE AND EQUITY PURCHASE AGREEMENT

among

JIVE INVESTMENTS HOLDING LTD.,

LEHMAN BROTHERS SPECIAL FINANCING INC.,

LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS,

AND

LB I GROUP INC.

————————

Dated as of November 1st, 2010

# TABLE OF CONTENTS

**Page**

Article I        DEFINITIONS ........................................................................ 2
  1.1    Certain Definitions ...................................................................... 2
  1.2    Terms Defined Elsewhere in this Agreement ........................................ 7
  1.3    Other Definitional and Interpretive Matters ......................................... 8
Article II       PURCHASE AND SALE OF THE NOTES AND EQUITY;
                 ASSUMPTION OF LIABILITIES .............................................. 9
  2.1    Purchase and Sale of the Notes ...................................................... 9
  2.2    Assumption of Liabilities .............................................................. 9
  2.3    Purchase and Sale of the Transferred Equity Interest ........................... 10
  2.4    Further Conveyances and Assumptions ............................................ 10
  2.5    Bulk Sales Laws ...................................................................... 10
Article III      CONSIDERATION ............................................................. 10
  3.1    Consideration .......................................................................... 10
  3.2    Purchase Price Deposit ............................................................. 10
  3.3    Payment of Purchase Price.......................................................... 11
Article IV       CLOSING AND TERMINATION............................................ 12
  4.1    Closing Date............................................................................ 12
  4.2    Deliveries by Sellers ................................................................. 12
  4.3    Deliveries by Purchaser ............................................................. 13
  4.4    Termination of Agreement........................................................... 13
  4.5    Procedure Upon Termination........................................................ 14
  4.6    Effect of Termination................................................................. 14
Article V        REPRESENTATIONS AND WARRANTIES OF SELLERS................ 15
  5.1    Organization and Good Standing.................................................... 15
  5.2    Transferred Equity Interests Ownership ........................................... 15
  5.3    Authorization of Agreement ........................................................ 15
  5.4    Title to Notes.......................................................................... 16
  5.5    Notes, Note Purchase Agreements and Equalization Agreement............ 16
  5.6    No Other Representations or Warranties; Schedules............................. 16

i

**TABLE OF CONTENTS**
**(continued)**

Page

| | | |
|---|---|---|
| Article VI | REPRESENTATIONS AND WARRANTIES OF THE COMPANY | 17 |
| 6.1 | Organization and Good Standing | 17 |
| 6.2 | Capital Stock | 17 |
| 6.3 | Authorization of Agreement | 18 |
| 6.4 | Balance Sheet | 18 |
| 6.5 | Investments | 18 |
| 6.6 | Employees | 19 |
| 6.7 | No Other Representations or Warranties; Schedules | 19 |
| Article VII | REPRESENTATIONS AND WARRANTIES OF PURCHASER | 19 |
| 7.1 | Organization and Good Standing | 19 |
| 7.2 | Authorization of Agreement | 20 |
| 7.3 | Conflicts; Consents of Third Parties | 20 |
| 7.4 | Financial Advisors | 20 |
| 7.5 | Financial Capability | 21 |
| 7.6 | Condition of the Business | 21 |
| Article VIII | BANKRUPTCY COURT MATTERS | 22 |
| 8.1 | Bankruptcy Court Filings | 22 |
| Article IX | COVENANTS | 22 |
| 9.1 | Access to Information | 22 |
| 9.2 | Conduct of the Business Pending the Closing | 22 |
| 9.3 | Consents | 24 |
| 9.4 | Further Assurances | 24 |
| 9.5 | Confidentiality | 24 |
| 9.6 | Preservation of Records | 26 |
| 9.7 | Publicity | 26 |
| 9.8 | Use of Name | 27 |
| 9.9 | Supplementation and Amendment of Schedules | 27 |
| Article X | CONDITIONS TO CLOSING | 27 |
| 10.1 | Conditions Precedent to Obligations of Purchaser | 27 |

ii

**TABLE OF CONTENTS**
**(continued)**

Page

| | | |
|---|---|---|
| 10.2 | Conditions Precedent to Obligations of Sellers | 28 |
| 10.3 | Conditions Precedent to Obligations of Purchaser and Sellers | 28 |
| 10.4 | Frustration of Closing Conditions | 29 |
| Article XI | SURVIVAL AND INDEMNIFICATION | 29 |
| 11.1 | Survival of Representations and Warranties | 29 |
| 11.2 | Indemnification by Sellers | 29 |
| 11.3 | Indemnification by Purchaser | 30 |
| 11.4 | Indemnification Procedures | 31 |
| 11.5 | Certain Limitations on Indemnification | 33 |
| 11.6 | Calculation of Losses | 33 |
| 11.7 | Tax Treatment of Indemnity Payments | 34 |
| 11.8 | No Consequential Damages | 34 |
| 11.9 | Exclusive Remedy | 34 |
| 11.10 | Indemnity Escrow | 34 |
| Article XII | TAXES | 35 |
| 12.1 | Transfer Taxes | 35 |
| 12.2 | Purchase Price Allocation | 35 |
| 12.3 | Tax Returns | 35 |
| 12.4 | 338 Election | 35 |
| Article XIII | MISCELLANEOUS | 36 |
| 13.1 | Expenses | 36 |
| 13.2 | Specific Performance; Injunctive Relief | 36 |
| 13.3 | Submission to Jurisdiction; Consent to Service of Process | 36 |
| 13.4 | Waiver of Right to Trial by Jury | 37 |
| 13.5 | Entire Agreement; Amendments and Waivers | 37 |
| 13.6 | Governing Law | 37 |
| 13.7 | Notices | 37 |
| 13.8 | Seller Representative | 38 |
| 13.9 | Severability | 40 |

**TABLE OF CONTENTS**
**(continued)**

**Page**

13.10  Binding Effect; Assignment ..................................................................... 40

13.11  Non-Recourse ........................................................................................... 40

13.12  Language ................................................................................................... 40

13.13  Counterparts ............................................................................................. 40

NOTE AND EQUITY PURCHASE AGREEMENT

NOTE AND EQUITY PURCHASE AGREEMENT, dated as of November 1st, 2010 (this "Agreement"), is by and among:

(a)    JIVE INVESTMENTS HOLDING LTD, a company duly organized and existing in accordance with the laws of the British Virgin Island, with its principal office located at Nerine Chambers, P.O. Box 905, Road Town, Tortola, British Virgin Islands, duly represented in accordance with its organizational documents currently in force ("Purchaser");

(b)    **LEHMAN BROTHERS SPECIAL FINANCING INC.**, a corporation duly organized and validly existing under the laws of Delaware, United States of America, duly represented in accordance with its organizational documents as currently in force ("LBSF");

(c)    **LB I GROUP INC.**, a corporation duly organized and validly existing under the laws of Delaware, United States of America, duly represented in accordance with its organizational documents as currently in force ("LB1" and, collectively with LBSF, "Sellers" and each, a "Seller"); and

(d)    **LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS**, a company organized and validly existing under the laws of Brazil, with head office in the City of São Paulo, State of São Paulo, at Rua Quintana, nº 887, 3º andar, conjuntos 33 e 34, Brooklin Novo, enrolled with the Federal Taxpayers' Registry (CNPJ) No. 08.351.432/0001-59, duly represented in accordance with its organizational documents as currently in force (the "Company").

W I T N E S S E T H:

WHEREAS, Sellers own the Transferred Equity Interests and the Notes;

WHEREAS, LBSF is a debtor-in-possession under title 11, of the United States Code, 11 U.S.C. § 101 et seq. (the "Bankruptcy Code"), and filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008, in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (Case No. (08-13888)) (the "Chapter 11 Case");

WHEREAS, the Sellers desire to sell, transfer and assign to Purchaser or its designated Affiliate or Affiliates, and Purchaser desires to (or cause its designated Affiliate or Affiliates to) purchase, acquire and assume from Sellers, and upon the terms and conditions hereinafter set forth and, as to LBSF, pursuant to section 363 of the Bankruptcy Code, the Notes, the Note Purchase Agreements, the Equalization Agreement, the Transferred Equity Interests and the Assumed Liabilities, subject to the receipt and acceptance by Sellers of higher and better offers, and Bankruptcy Court approval in respect of LBSF, all as more specifically provided herein; and

WHEREAS, certain terms used in this Agreement are defined in Section 1.1;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

ARTICLE I

DEFINITIONS

1.1    Certain Definitions.

(a)    For purposes of this Agreement, the following terms shall have the meanings specified in this Section 1.1:

"ABN Note" means the promissory note dated March 16, 2010, in the amount of R$46,652,832.00, issued by the Company to LB 1.  The ABN Note is the most recent promissory note issued in a series of such promissory notes (each issued successively in exchange for the other culminating in the ABN Note), the first of which was issued to finance the acquisition of the ABN Portfolio.

"ABN Note Purchase Agreement" means the Amended and Restated Note Purchase Agreement, dated December 17, 2009 (as amended on December 18, 2009 and March 16, 2010), between the Company and LB1 in respect of the ABN Note.

"ABN Portfolio" means a portfolio of non-performing loans acquired by the Company from Banco ABN AMRO Real S.A., ABN AMRO Arrendamento Mercantil S.A., Banco Sudameris Brasil S.A., Banco Comercial de Investimento Sudameris S.A., Sudameris Arrendamento Mercantil S.A. and Banco de Pernambuco S.A. – BANDEPE.

"Affiliate" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, or is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by contract or otherwise.

"Break-up Fee" has the meaning set forth in Section 4.6 of this Agreement.

"Break-up Fee Order" means an order of the Bankruptcy Court in form and substance reasonably acceptable to Purchaser and LBSF approving the terms and payment of the Break-up Fee in accordance with Section 4.6 of this Agreement.

"BMG Note" means the promissory note dated March 16, 2010, in the amount of R$9,510,732.40, issued by the Company to LBSF.  The BMG Note is the most recent promissory note issued in a series of such promissory notes (each issued

2

successively in exchange for the other culminating in the BMG Note), the first of which was issued to finance the acquisition of the BMG Portfolio.

"BMG Note Purchase Agreement" means that certain Amended and Restated Note Purchase Agreement, dated December 17, 2009 (as amended on December 18, 2009 and March 16, 2010), between the Company and LBSF in respect of the BMG Note.

"BMG Portfolio" means a portfolio of loans acquired by the Company from Banco BMG S/A.

"Business Day" means any day of the year on which national banking institutions in São Paulo, Brazil, and New York City, United States, are open to the public for conducting business and are not required or authorized to close.

"Cash Balance" means, as of the Closing Date, the amount of cash and cash equivalents held by the Company available to make the payments required pursuant to Sections 3.2(a) and (b) on such date.

"Code" means the Internal Revenue Code of 1986, as amended.

"Contract" means any written contract, indenture, note, bond, lease or other agreement.

"Distribution" shall mean (i) any payment in respect of the Notes, whether of interest or principal; (ii) any dividend; (iii) interest on shareholders' equity; or (iv) any amounts paid in connection with the redemption, repurchase or cancellation of the Transferred Equity Interests.

"Dollar Equivalent" of any amount means, at the time of determination thereof, (a) if such amount is expressed in U.S. dollars, such amount, (b) if such amount is expressed in Brazilian Reais, the equivalent of such amount in U.S. dollars determined by using the rate of exchange published by the Brazilian Central Bank under the heading "dólar EUA (PTAX - Venda)" on its website (www.bcb.gov.br) on the Business Day immediately preceding the date of determination.

"Equalization Agreement" means that certain agreement, dated March 16, 2010, between LB 1 and LBSF relating to the equalization of certain distributions in connection with the Notes, LB1 Shares and LBSF Shares.

"Escrow Agent" means the escrow agent designated under the Indemnity Escrow Agreement.

"GAAP" means generally accepted accounting principles consistently applied in Brazil in effect on the date on which the relevant financial statements are prepared or, in any other context contemplated in this Agreement, the date on which such principles are applied.

3

"<u>Governmental Body</u>" means any government or governmental or regulatory body thereof, or political subdivision thereof, whether foreign, federal, state, or local, or any agency, instrumentality or authority thereof, or any court or arbitrator (public or private).

"<u>Indebtedness</u>" of any Person means, without duplication, (i) the principal of and premium (if any) in respect of (A) indebtedness of such Person for money borrowed and (B) indebtedness evidenced by notes, debentures, bonds or other similar instruments for the payment of which such Person is responsible or liable; (ii) all obligations of such Person issued or assumed as the deferred purchase price of property, all conditional sale obligations of such Person and all obligations of such Person under any title retention agreement (but excluding trade accounts payable and other accrued current liabilities arising in the Ordinary Course of Business); (iii) all obligations of such Person under leases required to be capitalized in accordance with GAAP; (iv) all obligations of such Person for the reimbursement of any obligor on any letter of credit, banker's acceptance or similar credit transaction; (v) all obligations of the type referred to in clauses (i) through (iv) of any Persons for the payment of which such Person is responsible or liable, directly or indirectly, as obligor, guarantor, surety or otherwise, including guarantees of such obligations; and (vi) all obligations of the type referred to in clauses (i) through (v) of other Persons secured by any Lien on any property or asset of such Person (whether or not such obligation is assumed by such Person).

"<u>Indemnity Escrow Agreement</u>" means the Indemnity Escrow Agreement to be dated as of the Closing Date by and among Seller Representative, Purchaser and the Escrow Agent in the form to be agreed upon by Purchaser and Seller Representative prior to Closing.

"<u>Indemnity Escrow Amount</u>" means the Dollar Equivalent of the sum of R$2.700.000,00.

"<u>Indemnity Escrowed Funds</u>" means the Indemnity Escrow Amount together with all interest or income actually earned thereon pursuant to the Indemnity Escrow Agreement.

"<u>IRS</u>" means the Internal Revenue Service.

"<u>Law</u>" means any national, state, local or foreign law, statute, code, ordinance, rule or regulation.

"<u>LB1 Shares</u>" shall mean 98,347,168 common registered shares, without par value, of the Company, held beneficially and of record by LB 1.

"<u>LBSF Shares</u>" shall mean 22,781,000 common registered shares, without par value, of the Company, held beneficially and of record by LBSF.

"<u>Legal Proceeding</u>" means any judicial, administrative or arbitral actions, suits, proceedings (public or private) or claims or any proceedings by or before a Governmental Body.

4

"Liability" means any debt, liability or obligation (whether direct or indirect, known or unknown, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), and including all costs and expenses relating thereto.

"Lien" means any lien, encumbrance, pledge, mortgage, deed of trust, security interest, claim, lease, charge, option, right of first refusal, easement, servitude, proxy, voting trust or agreement, transfer restriction under any shareholder or similar agreement or encumbrance.

"Loan Portfolio" means the ABN Portfolio, the BMG Portfolio, the Navigator Portfolio and all related actions in the ownership, management and liquidation of such investments, including, without limitation, any litigation, regulatory proceedings, insolvency proceedings, restructuring, recapitalization, realization (including receipt of property in satisfaction of claims or debt) and actions incidental thereto, and all agreements, instruments, documents, commitments and understandings relating thereto.

"Material Adverse Effect" means (x) a material adverse effect on the business, assets, properties, results of operations or financial condition of Sellers and the Company (taken as a whole), or (y) a material adverse effect on the ability of Sellers or the Company to consummate the transactions contemplated by this Agreement or perform their obligations under this Agreement, other than an effect resulting from any one or more of the following:  (i) the effect of any change in the United States, Brazilian or foreign economies or securities or financial markets in general; (ii) the effect of any change that generally affects any industry in which any Seller or the Company operates; (iii) the effect of any change arising in connection with earthquakes, hostilities, acts of war, sabotage or terrorism or military actions or any escalation or worsening of any such hostilities, acts of war, sabotage or terrorism or military actions existing or underway as of the date hereof; (iv) the effect of any action taken by Purchaser or its Affiliates with respect to the transactions contemplated hereby, including by their respective employees; (v) any matter of which Purchaser is aware of on or prior to the date hereof; (vi) the effect of any changes in applicable Laws or accounting rules; (vii) any effect resulting from the public announcement of this Agreement, compliance with terms of this Agreement or the consummation of the transactions contemplated by this Agreement; or (viii) any effect resulting from the filing of the Chapter 11 Case and reasonably anticipated effects thereof.

"Navigator Portfolio" means the credit rights listed in Section 6(b)(ii) of the ABN Note Purchase Agreement which were acquired by the Company from Fundo de Investirnento Multimercado Credito Privado Navigator lnvestimento no Exterior, a Brazilian investment fund wholly owned by LBSF.

"Note Purchase Agreements" means the ABN Note Purchase Agreement and the BMG Note Purchase Agreement.

"Order" means any order, injunction, judgment, decree, ruling, writ, assessment or arbitration award of a Governmental Body.

"Ordinary Course of Business" means the ordinary and usual course of normal day to day operations of the business of the Company through the date hereof consistent with past practice, including the business of the Company relating to the Loan Portfolio.

"Permits" means any approvals, authorizations, consents, licenses, permits or certificates of a Governmental Body.

"Permitted Exceptions" means (i) statutory liens for current Taxes, assessments or other governmental charges not yet delinquent or the amount or validity of which is being contested in good faith by appropriate proceedings provided an appropriate reserve is established therefor; (ii) mechanics', carriers', workers', repairers' and similar Liens arising or incurred in the Ordinary Course of Business; and (iii) such other imperfections in title, charges, easements, restrictions and encumbrances which would not result in a Material Adverse Effect.

"Person" means any individual, corporation, limited liability company, partnership, firm, joint venture, association, joint-stock company, trust, unincorporated organization, Governmental Body or other entity.

"Qualifying Topping Bid" means, with respect to any Superior Proposal, an offer by Purchaser to complete the transactions provided herein on the same terms as such Superior Proposal plus U.S. $500,000 additional cash consideration.

"R$" means Brazilian Reais.

"Sale Motion" means the motion or motions of LBSF seeking approval and entry of the Sale Order.

"Sale Order" means an order or orders of the Bankruptcy Court in form and substance reasonably acceptable to Purchaser and LBSF approving this Agreement and all of the terms and conditions hereof, and approving and authorizing LBSF to consummate the transactions contemplated hereby.  Without limiting the generality of the foregoing, such order shall find and provide, among other things, that (i) the BMG Note, the BMG Note Purchase Agreement, LBSF's interest in the Equalization Agreement and the LBSF Shares sold to Purchaser pursuant to this Agreement shall be transferred to Purchaser free and clear of all Liens (other than Permitted Exceptions, and Liens created by Purchaser, such Liens to attach to the proceeds payable to Sellers pursuant to this Agreement); (ii) Purchaser has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code; (iii) this Agreement was negotiated, proposed and entered into by the parties hereto without collusion, in good faith and from arm's length bargaining positions; (iv) the Bankruptcy Court shall retain jurisdiction to resolve any controversy or claim arising out of or relating to this Agreement, or the breach hereof as provided in Section 13.3 hereof; and (v) this Agreement and the transactions contemplated hereby, including the payment of the Break-up Fee, may be specifically enforced against and shall be binding upon, and not subject to rejection or avoidance by, LBSF or any chapter 7 or chapter 11 trustee of LBSF.

6

"SELIC Rate" shall mean, on any date, the target overnight rate of the Special Settlement and Custody System (*Sistema Especial de Liquidação e Custódia – SELIC*), as published by the Brazilian Central Bank under heading "Taxa Selic – Meta" in its website (www.bcb.gov.br) on such date.

"Superior Proposal" means a proposal to acquire the Transferred Equity Interests, the Notes, the Note Purchase Agreements and the Equalization Agreement which the Sellers determine, in their reasonable discretion, constitutes a higher and better offer than (i) the terms of the transaction provided herein, or (ii) if made after Purchaser has made a Qualifying Topping Bid, the terms provided in such Qualifying Topping Bid, by an amount greater than U.S. $500,000 plus the Break-up Fee.

"Tax Authority" means any United States, Brazilian or other national, state or local government, or agency, instrumentality or employee thereof, charged with the administration of any law or regulation relating to Taxes.

"Taxes" means (i) all United States, Brazilian or other national, state or local taxes, charges or other assessments, including, without limitation, all net income, gross receipts, capital, sales, use, *ad valorem*, value added, transfer, franchise, profits, inventory, capital stock, license, withholding, payroll, employment, social security, unemployment, excise, severance, stamp, occupation, property and estimated taxes, and (ii) all interest, penalties, fines, additions to tax or additional amounts imposed by any taxing authority in connection with any item described in clause (i).

"Tax Return" means all returns, declarations, reports, estimates, information returns and statements required to be filed in respect of any Taxes.

"Transferred Equity Interests" means the LB1 Shares and the LBSF Shares.

"U.S.$" means United States Dollars.

1.2     Terms Defined Elsewhere in this Agreement.  For purposes of this Agreement, the following terms have meanings set forth in the sections indicated:

| Term | Section |
| --- | --- |
| ABN Cumulative Losses | 11.2(a) |
| ABN Litigation | 11.2(a) |
| Agreement | Recitals |
| Alternative Transaction | 4.4(h) |
| Asset Acquisition Statement | 12.2 |
| Asset Price | 3.1 |
| Assumed Liabilities | 2.2 |
| Balance Sheet | 6.4 |
| Bankruptcy Code | Recitals |
| Bankruptcy Court | Recitals |
| Bankruptcy Exception | 5.5 |

7

| Term | Section |
|------|---------|
| Cap | 11.5(iii) |
| Cash Balance | 3.1 |
| Chapter 11 Case | Recitals |
| Closing | 4.1 |
| Closing Date | 4.1 |
| Company | Recitals |
| Company Documents | 6.3 |
| Confidential Information | 9.5(a) |
| Confidentiality Agreement | 9.5(a) |
| Continuing Officers | 9.10 |
| Cutoff Date | 6.4 |
| Deductible | 11.5(ii) |
| De Minimis Amount | 11.5(i) |
| Expenses | 11.2(a) |
| Indemnification Claim | 11.4 |
| LB1 | Recitals |
| LBSF | Recitals |
| Losses | 11.2(a)(i) |
| Notes | 2.1 |
| Purchase Price | 3.1 |
| Purchaser | Recitals |
| Purchaser Documents | 7.2 |
| Revised Statements | 12.2 |
| Sellers | Recitals |
| Seller Documents | 5.3 |
| Seller Marks | 9.8 |
| Seller Representative | 13.8 |
| Tax benefit | 11.6 |
| Termination Date | 4.4(a) |
| Transfer Taxes | 12.1 |
| Unresolved Claims | 11.10 |

### 1.3   Other Definitional and Interpretive Matters

(a)   Unless otherwise expressly provided, for purposes of this Agreement, the following rules of interpretation shall apply:

Calculation of Time Period.  In this Agreement, in the computation of periods of time from a specified date to a later specified date, the word "from" means "from and including" and the words "to" and "until" each mean "to but excluding" and the word "through" means "to and including."  When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a non-Business Day, the period in question shall end on the next succeeding Business Day.

8

Conversion of Foreign Currencies.  Seller Representative shall determine the Dollar Equivalent of any amount as required hereby, and a determination thereof by Seller Representative shall be conclusive, absent manifest error.  Seller Representative may determine or redetermine the Dollar Equivalent of any amount on any date either in its own discretion or upon the written request of Purchaser.  Subject to any express requirement in this Agreement, Seller Representative may set up appropriate rounding off mechanisms or otherwise round-off amounts hereunder to the nearest higher or lower amount in whole U.S. dollar or cent or whole Brazilian Real or centavo to ensure amounts owing by any party hereunder or that otherwise need to be calculated or converted hereunder are expressed in whole U.S. dollar or in whole cent or in whole Brazilian Real or in whole centavo, as may be necessary or appropriate.

Exhibits/Schedules.  All Exhibits and Schedules annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.  Any matter or item disclosed on one schedule shall be deemed to have been disclosed on each other schedule.  Any capitalized terms used in any Schedule or Exhibit but not otherwise defined therein shall be defined as set forth in this Agreement.

Gender and Number.  Any reference in this Agreement to gender shall include all genders, and words imparting the singular number only shall include the plural and vice versa.

Headings.  The provision of a Table of Contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in construing or interpreting this Agreement.  All references in this Agreement to any "Section" are to the corresponding Section of this Agreement unless otherwise specified.

Herein.  The words such as "herein," "hereinafter," "hereof," and "hereunder" refer to this Agreement as a whole and not merely to a subdivision in which such words appear unless the context otherwise requires.

Including.  The word "including" or any variation thereof means "including, without limitation" and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.

(b)    The parties hereto have participated jointly in the negotiation and drafting of this Agreement and, in the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as jointly drafted by the parties hereto and no presumption or burden of proof shall arise favoring or disfavoring any party by virtue of the authorship of any provision of this Agreement.

9

ARTICLE II

PURCHASE AND SALE OF THE NOTES AND EQUITY; ASSUMPTION OF
LIABILITIES

2.1     Purchase and Sale of the Notes.  On the terms and subject to the
conditions set forth in this Agreement and the Sale Order, as applicable, at the Closing,
Purchaser shall purchase, acquire and accept from LBSF and LB1, and LBSF and LB1
shall sell, transfer, assign, convey and deliver to Purchaser all of LBSF's right, title and
interest in, to and under the BMG Note, and all of LB1's right, title and interest in, to and
under the ABN Note (collectively, the "Notes"), the respective Note Purchase
Agreements and their respective interests in the Equalization Agreement.

2.2     Assumption of Liabilities.  On the terms and subject to the
conditions set forth in this Agreement, at the Closing, Purchaser shall assume, effective
as of the Closing, and shall timely perform and discharge in accordance with their
respective terms, all obligations and Liabilities of each of LBSF and LB1 with respect to
and under its respective Note and Note Purchase Agreement, and its respective interest in
the Equalization Agreement (collectively, the "Assumed Liabilities").

2.3     Purchase and Sale of the Transferred Equity Interest.  On the terms
and subject to the conditions set forth in this Agreement and the Sale Order, as
applicable, at the Closing, each Seller shall sell, convey, assign, transfer and deliver to
Purchaser and Purchaser shall purchase, acquire and accept from such Seller, all of such
Seller's right, title and interest in and to the Transferred Equity Interests, free and clear of
all Liens.  At or prior to the Closing, each Seller will execute and deliver to Purchaser all
documents required to transfer and vest good and valid title in and to the Transferred
Equity Interests to Purchaser in accordance with the terms of this Agreement.

2.4     Further Conveyances and Assumptions.  From time to time
following the Closing, Sellers and Purchaser shall, and shall cause their respective
Affiliates to, execute, acknowledge and deliver all such further conveyances, notices,
assumptions, releases and acquittances and such other instruments, and shall take such
further actions, as may be reasonably necessary or appropriate to assure fully to
Purchaser and its respective successors or assigns, all of the properties, rights, titles,
interests, estates, remedies, powers and privileges intended to be conveyed to Purchaser
under this Agreement and the Seller Documents and to assure fully to Sellers and its
Affiliates and their successors and assigns, the assumption of the liabilities and
obligations intended to be assumed by Purchaser under this Agreement and the Seller
Documents, and to otherwise make effective the transactions contemplated hereby and
thereby.

2.5     Bulk Sales Laws.  Purchaser hereby waives compliance by Sellers
with the requirements and provisions of any "bulk-transfer" Laws of any jurisdiction that
may otherwise be applicable with respect to the sale and transfer of any or all of the
Transferred Equity Interests, the Notes, the Note Purchase Agreements and the
Equalization Agreement to Purchaser.

10

ARTICLE III

CONSIDERATION

3.1     Consideration.  The aggregate consideration for the Transferred Equity Interests, the Notes, the Note Purchase Agreements and the Equalization Agreement shall be (a) an amount in cash equal to the Dollar Equivalent as of the Closing Date of (i) R$27.000.000,00 (the "Asset Price"), *adjusted by* (ii) the SELIC Rate from the date of this Agreement until payment in full (the "Purchase Price"), and (b) the assumption of the Assumed Liabilities.

3.2     Payment of Purchase Price.

(a)     On the Closing Date, and immediately prior to the assignment of the Notes to Purchaser, the Company shall prepay to Sellers, by wire transfer of immediately available funds into the accounts designated by Seller Representative, that amount of principal under the Notes equal to the Purchase Price (less the Indemnity Escrow Amount), allocated to each Note as set forth in Schedule 3.2(a).

(b)     On the Closing Date, and immediately prior to the assignment of the Notes to Purchaser, the Company shall prepay to Sellers, by wire transfer of immediately available funds into the accounts designated by Seller Representative, that amount of principal under the Notes equal to the Indemnity Escrow Amount, allocated to each Note as set forth in Schedule 3.2(a).

(c)     Immediately upon receipt of the Indemnity Escrow Amount pursuant to Section 3.2(b), Seller shall deliver to the Escrow Agent under the Indemnity Escrow Agreement, by wire transfer of immediately available funds, the Indemnity Escrow Amount.

(d)     For the avoidance of doubt, the prepayment, by the Company, of the amounts of principal under the Notes set forth in Sections 3.2(a) and 3.2(b) shall satisfy Purchaser's obligation to pay the Purchase Price.

(e)     All payments made in connection with the transactions contemplated by this Agreement shall be made free and clear of and without reduction or liability for or on account of any Taxes; provided that if the Company shall be required by Law to deduct any Taxes from such payments, then (i) the Company shall make such deductions or payments (in which case, a certified copy of the withholding Tax receipt (DARF) shall be delivered by the Company to Seller Representative upon request as promptly as available after payment thereof in accordance with applicable Law), (ii) the Company shall timely pay the full amount deducted to the relevant Governmental Body in accordance with applicable Law and (iii) the Company shall deliver to Seller Representative evidence of such payment within ninety (90) days thereof.  The withholding income tax shall be calculated by the person designated as the withholding agent by Law and shall be informed by the Company to Seller Representative and Purchaser and such calculation shall be conclusive absent manifest error.

11

ARTICLE IV

CLOSING AND TERMINATION

4.1    <u>Closing Date</u>.  Subject to the satisfaction of the conditions set forth in <u>Sections 10.1</u>, <u>10.2</u> and <u>10.3</u> hereof (or the waiver thereof by the party entitled to waive that condition), the closing of the purchase and sale of the Notes, the Note Purchase Agreements, the Equalization Agreement and the Transferred Equity Interests and the assumption of the Assumed Liabilities provided for in <u>Article II</u> hereof (the "<u>Closing</u>") shall take place at the offices of the Company at 10:00 a.m. (Sao Paulo time) in no event later than three (3) Business Days following satisfaction or waiver of the conditions set forth in <u>Article X</u> (other than conditions that by their nature are to be satisfied at the Closing, but subject to the satisfaction or waiver of such conditions), unless another time or date, or both, are agreed to in writing by the parties hereto.  The date on which the Closing shall be held is referred to in this Agreement as the "<u>Closing Date</u>."  Unless otherwise agreed by the parties in writing, subject to payment of the Purchase Price, the Closing shall be deemed effective and all right, title and interest of Sellers to be acquired by Purchaser hereunder shall be considered to have passed to Purchaser as of 12:01 a.m. (New York City time) on the Closing Date.

4.2    <u>Deliveries by Sellers</u>.  At the Closing, Sellers shall deliver to Purchaser:

(a)    an assignment and assumption agreement to transfer the ABN Note, the ABN Note Purchase Agreement and its interest in the Equalization Agreement in the form agreed by Purchaser and Seller Representative, duly executed by LB1;

(b)    an assignment and assumption agreement to transfer the BMG Note, the BMG Note Purchase Agreement and its interest in the Equalization Agreement in the form agreed by Purchaser and Seller Representative, duly executed by LBSF;

(c)    any and all documents required for the disclosure and registration of the assignment of the Notes before the Brazilian Central Bank;

(d)    the officer's certificate required to be delivered pursuant to <u>Sections 10.1(a)</u> and <u>10.1(b)</u>;

(e)    the Share Transfer Registry Book (*Livro de Registro de Transferência de Ações Nominativas*) of the Company, duly executed so as to effect the transfer of the Transferred Equity Interests to the Purchaser, and all books and records and corporate documents of the Company, including the Share Registry Book (*Livro de Registro de Ações Nominativas*) evidencing the registration of all Transferred Equity Interests in the name of the Purchaser;

(f)    the original Notes;

12

(g)     the Indemnity Escrow Agreement duly executed by the Seller Representative; and

(h)     all other instruments and documents of conveyance and transfer, in form and substance reasonably acceptable to Purchaser, as may be necessary to convey the Transferred Equity Interests and the Notes to Purchaser.

4.3     Deliveries by Purchaser.  At the Closing, Purchaser shall deliver to Sellers:

(a)     an assignment and assumption agreement to transfer the ABN Note, the ABN Note Purchase Agreement and LB1's interest in the Equalization Agreement in the form agreed by Purchaser and Seller Representative, duly executed by Purchaser;

(b)     an assignment and assumption agreement to transfer the BMG Note, the BMG Note Purchase Agreement and LBSF's interest in the Equalization Agreement in the form agreed by Purchaser and Seller Representative, duly executed by Purchaser;

(c)     the officer's certificate required to be delivered pursuant to Sections 10.2(a) and 10.2(b);

(d)     the Indemnity Escrow Agreement duly executed by the Purchaser; and

(e)     such other documents, instruments and certificates as Sellers may reasonably request.

4.4     Deliveries by the Company.  At the Closing, the Company shall deliver to Sellers and Purchaser evidence, in the form of a wire transfer confirmation, of prepayment of the amounts of principal under the Notes set forth in Sections 3.2(a) and 3.2(b).

4.5     Termination of Agreement.  This Agreement may be terminated prior to the Closing as follows:

(a)     by Purchaser or Seller Representative, if the Closing shall not have occurred by the close of business on December 20, 2010 (the "Termination Date"); provided, further, that if the Closing shall not have occurred on or before the Termination Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by Purchaser, then Purchaser may not terminate this Agreement pursuant to this Section 4.4(a), and if the Closing shall not have occurred on or before the Termination Date due to a material breach of any representations, warranties, covenants or agreements contained in this Agreement by a Seller, then Seller Representative may not terminate this Agreement pursuant to this Section 4.4(a);

(b)     by mutual written consent of Seller Representative and Purchaser;

(c)     by Purchaser, if any of the conditions to the obligations of Purchaser set forth in <u>Sections 10.1</u> and <u>10.3</u> shall have become incapable of fulfillment other than as a result of a breach by Purchaser of any covenant or agreement contained in this Agreement, and such condition is not waived by Purchaser;

(d)     by Seller Representative, if any condition to the obligations of Sellers set forth in <u>Sections 10.2</u> and <u>10.3</u> shall have become incapable of fulfillment other than as a result of a breach by a Seller of any covenant or agreement contained in this Agreement, and such condition is not waived by Seller Representative;

(e)     by Purchaser, if there shall be a breach by a Seller of any representation or warranty, or any covenant or agreement contained in this Agreement which would result in a failure of a condition set forth in <u>Section 10.1</u> or <u>10.3</u> and which breach cannot be cured or has not been cured by the earlier of (i) twenty (20) Business Days after the giving of written notice by Purchaser to Seller Representative of such breach and (ii) the Termination Date;

(f)     by Seller Representative, if there shall be a breach by Purchaser of any representation or warranty, or any covenant or agreement contained in this Agreement which would result in a failure of a condition set forth in <u>Section 10.2</u> or <u>10.3</u> and which breach cannot be cured or has not been cured by the earlier of (i) twenty (20) Business Days after the giving of written notice by Seller Representative to Purchaser of such breach and (ii) the Termination Date;

(g)     by Seller Representative or Purchaser if there shall be in effect a final nonappealable Order of a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby;

(h)     by Purchaser or Seller Representative, if the Bankruptcy Court shall fail to enter the Sale Order by December 7, 2010; or

(i)     by the Seller Representative if, prior to entry of a Sale Order, the Sellers receive one or more Superior Proposals unless, within two Business Days of Purchaser's receipt of notice from the Seller Representative of the most recent Superior Proposal, Purchaser makes a Qualifying Topping Bid; <u>provided</u> that, if a Superior Proposal is submitted less than five Business Days before the Bankruptcy Court hearing to consider LBSF's Sale Motion, Seller Representative shall have the right to shorten the time period for Purchaser to submit a Qualifying Topping Bid, including by scheduling an auction with respect to the transactions contemplated herein.

4.6     <u>Break-up Fee</u>.  If this Agreement is terminated by Purchaser pursuant to <u>Section 4.5(h)</u> or by the Seller Representative pursuant to <u>Section 4.5(i)</u> and the Bankruptcy Court approves a similar offer or a Superior Proposal, and Sellers consummate the transactions contemplated in such offer or proposal, then, subject to

14

entry of the Break-up Fee Order, Sellers shall pay Purchaser, by wire transfer in immediately available funds into an account designated by Purchaser, a termination fee (the "Break-up Fee") equal to 2% of the Asset Price adjusted by the SELIC Rate from the date of this Agreement until the date of the payment of the Break-up Fee.

4.7    Procedure Upon Termination.  In the event of termination and abandonment by Purchaser or Seller Representative, or both, pursuant to Section 4.4 hereof, written notice thereof shall forthwith be given to the other party or parties, and this Agreement shall terminate, and the purchase of the Transferred Equity Interests, the Notes, the Note Purchase Agreements and the Equalization Agreement hereunder shall be abandoned, without further action by Purchaser or Sellers.  If this Agreement is terminated as provided herein each party shall redeliver all documents, work papers and other material of any other party relating to the transactions contemplated hereby, whether so obtained before or after the execution hereof, to the party furnishing the same.

4.8    Effect of Termination.

(a)    In the event that this Agreement is validly terminated as provided herein, then each of the parties hereto shall be relieved of its duties and obligations arising under this Agreement after the date of such termination and, subject to Section 4.6 and Section 13.2, such termination shall be without liability to Purchaser or any Seller; provided, however, that the obligations of the parties hereto set forth in Article XIII hereof shall survive any such termination and shall be enforceable hereunder.

(b)    Nothing in this Section 4.8 shall relieve Purchaser or any Seller of any liability for a breach of this Agreement prior to the date of termination; provided that Sellers' liability hereunder, in the event of termination, for any and all such breaches (including attorneys' fees) shall be limited to the Break-up Fee and the Reimbursed Expenses.

(c)    The Confidentiality Agreement shall survive any termination of this Agreement and nothing in this Section 4.8 shall relieve Purchaser or Sellers of their obligations under the Confidentiality Agreement.

4.9     <u>Qualifying Topping Bid</u>.  In the event that Purchaser makes a Qualifying Topping Bid that is not subjected to a Superior Proposal on higher and better terms prior to entry of the Sale Order, or which is the highest and best bid in any auction held as described in <u>Section 4.5(i)</u>, then the Sellers shall accept the terms of such Qualifying Topping Bid and the parties hereto shall complete the transactions herein in accordance with the terms of this Agreement, as modified by the new terms set forth in such Qualifying Topping Bid.

ARTICLE V

REPRESENTATIONS AND WARRANTIES OF SELLERS

Each Seller hereby severally represents and warrants as to itself that:

5.1     <u>Organization and Good Standing</u>.  Such Seller is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware, United States of America and has all requisite corporate power and authority to own, lease and operate its properties and to carry on its business as now conducted. Such Seller is duly qualified or authorized to do business as a foreign corporation and is in good standing under the laws of each jurisdiction in which it owns or leases real property and each other jurisdiction in which the conduct of its business or the ownership of its properties requires such qualification or authorization, except where the failure to be so qualified, authorized or in good standing would not have a Material Adverse Effect.

5.2     <u>Transferred Equity Interests Ownership</u>.  Each Seller is the record and beneficial owner of the outstanding equity interests of the Company specified on <u>Schedule 5.2</u> hereof.  Each Seller has good title to such Transferred Equity Interests, free and clear of all Liens, subject to Permitted Exceptions.  There are no agreements or understandings to which a Seller is a party with respect to the capital stock of the Company.

5.3     <u>Authorization of Agreement</u>.  Except for such authorization as is required by the Bankruptcy Court (as hereinafter provided for) as to LBSF, such Seller has all requisite power, authority and legal capacity to execute and deliver this Agreement and such Seller has all requisite power, authority and legal capacity to execute and deliver each other agreement, document, or instrument or certificate contemplated by this Agreement or to be executed by such Seller in connection with the consummation of the transactions contemplated by this Agreement (the "<u>Seller Documents</u>"), to perform its obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Seller Documents and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of such Seller. This Agreement has been, and each of the Seller Documents will be at or prior to the Closing, duly and validly executed and delivered by such Seller to the extent it is a party thereto and (assuming the due authorization, execution and delivery by the other parties hereto and thereto, and the entry of the Sale Order) this Agreement constitutes, and each of the Seller Documents when so executed and delivered will constitute, legal, valid and

16

binding obligations of such Seller, enforceable against such Seller in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

5.4    Title to Notes.  LB1 owns the ABN Note and LBSF owns the BMG Note, free and clear of all Liens, other than Permitted Exceptions, and as to the BMG Note, to the fullest extent permissible under section 363(f) of the Bankruptcy Code, Purchaser will be vested with good title to such Notes, free and clear of all Liens.  The Notes are registered with the Module Registry of Financial Transaction (*Módulo Registro de Operação Financeira – ROF*) of the Data System of the Central Bank of Brazil as set forth on Schedule 5.4.

5.5    Notes, Note Purchase Agreements and Equalization Agreement.  Copies of the Notes, Note Purchase Agreements and Equalization Agreement heretofore delivered to Purchaser are true and correct copies of the originals thereof and constitute the entire agreement between the parties thereto about each of such Notes, Note Purchase Agreements and Equalization Agreement.  The Notes, Note Purchase Agreements and Equalization Agreement are valid, binding, in full force and effect and duly enforceable against by Sellers, as applicable, subject to, in the case of enforceability, applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally and general equitable principles, regardless of whether such enforceability is considered in a proceeding of law or at equity (the "Bankruptcy Exception").  No Seller is in breach of any obligation under the Notes, Note Purchase Agreements and Equalization Agreement.

5.6    No Other Representations or Warranties; Schedules.  Except for the representations and warranties contained in this Article V and Article VI (as modified by the Schedules hereto), no Seller, the Company or any other Person makes any other express or implied representation or warranty with respect to the Transferred Equity Interests, the Company, Sellers, the Notes, the Note Purchase Agreements, the Equalization Agreement, the Assumed Liabilities or the transactions contemplated by this Agreement, and each Seller disclaims any other representations or warranties, whether made by any Seller, any Affiliate of any Seller or any of their respective officers, directors, employees, agents or representatives.  Except for the representations and warranties contained in Article V and Article VI hereof (as modified by the Schedules hereto), each Seller (i) expressly disclaims and negates any representation or warranty, expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Transferred Equity Interests, the Notes, the Note Purchase Agreements, the Equalization Agreement, the Company and the assets and Liabilities of the Company and (ii) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Purchaser or its Affiliates or representatives (including any opinion, information, projection, or advice that may have been or may be provided to Purchaser by any director, officer, employee, agent, consultant, or representative of any Seller or any

17

of such Seller's Affiliates).  Sellers make no representations or warranties to Purchaser regarding the probable success or profitability of the Company.  The disclosure of any matter or item in any Schedule hereto shall not be deemed to constitute an acknowledgment that any such matter is required to be disclosed or is material or that such matter would result in a Material Adverse Effect.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES OF THE COMPANY

The Company hereby represents and warrants that:

6.1    Organization and Good Standing.  The Company is a corporation (*sociedade anônima*), duly organized, validly existing and in good standing under the laws of Brazil and has all requisite company or other power and authority and all necessary governmental approvals to own, lease and operate its properties and to carry on its business as now conducted, except where the failure to be so qualified, authorized or in good standing would not have a Material Adverse Effect.

6.2    Capital Stock.  Except for the Transferred Equity Interests, there are no outstanding shares or quotas of the capital stock of the Company.  There are no agreements or understandings to which the Company is a party with respect to the capital stock of the Company.  All the Transferred Equity Interests are duly authorized, validly issued, fully paid and non-assessable.  None of the Transferred Equity Interests was issued in violation of any preemptive right as set forth in the Brazilian Civil Code.  There are no existing options, warrants, calls, pre-emptive rights, subscriptions, convertible securities or other rights, agreements, arrangements or commitments of any character, relating to the capital stock of the Company, obligating the Company to issue, transfer or sell or cause to be issued, transferred or sold any shares of its capital stock of, or other equity interest in, the Company or securities convertible into or exchangeable for such shares or equity interests, or obligating the Company to grant, extend or enter into any such option, warrant, call, subscription or other right, agreement, arrangement or commitment.  There are no outstanding obligations of the Company to repurchase, redeem or otherwise acquire any Transferred Equity Interests or to provide funds to, or make any investment (in the form of a loan, capital contribution or otherwise) in, any other Person.  Upon consummation of the transactions contemplated by this Agreement and execution of the Share Transfer Registry Book (*Livro de Registro de Transferência de Ações Nominativas*) and the Share Registry Book (*Livro de Registro de Ações Nominativas*) of the Company evidencing the registration of all Transferred Equity Interests in the name of the Purchaser, Purchaser will own all the issued and outstanding capital stock of the Company free and clear of all Liens.

6.3    Authorization of Agreement.  Except for such authorization as is required by the Bankruptcy Court (as hereinafter provided for), the Company has all requisite power, authority and legal capacity to execute and deliver this Agreement and the Company has all requisite power, authority and legal capacity to execute and deliver each other agreement, document, or instrument or certificate contemplated by this

18

Agreement or to be executed by the Company in connection with the consummation of the transactions contemplated by this Agreement (the "Company Documents"), to perform its respective obligations hereunder and thereunder and to consummate the transactions contemplated hereby and thereby.  The execution and delivery of this Agreement and the Company Documents and the consummation of the transactions contemplated hereby and thereby have been duly authorized by all requisite corporate action on the part of the Company.  This Agreement has been, and each of the Company Documents will be at or prior to the Closing, duly and validly executed and delivered by the Company to the extent it is a party thereto and (assuming the due authorization, execution and delivery by the other parties hereto and thereto, and the entry of the Sale Order) this Agreement constitutes, and each of the Company Documents when so executed and delivered will constitute, legal, valid and binding obligations of the Company, enforceable against the Company, in accordance with their respective terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

6.4    Balance Sheet.  The Company has delivered to Purchaser copies of the unaudited consolidated balance sheet of the Company as at August 31, 2010 (such unaudited statement, including the related notes and schedules thereto, are referred to herein as the "Balance Sheet").  The Balance Sheet has been prepared in accordance with GAAP and presents fairly in all material respects the consolidated financial position of the Company as at the date indicated therein, subject to normal year-end adjustments and the absence of complete notes.

For the purposes hereof, August 31, 2010 is referred to as the "Cutoff Date."

6.5    Investments.  100% of Sellers' investment in the Transferred Equity Interests is duly registered before the Central Bank of Brazil as a foreign investment pursuant to Law No. 4,131/62, as amended.

6.6    Employees.  The Company has no employees as of the date hereof.

6.7    No Other Representations or Warranties; Schedules.  Except for the representations and warranties contained in this Article VI and Article V hereof (as modified by the Schedules hereto), no Seller, the Company or any other Person makes any other express or implied representation or warranty with respect to the Transferred Equity Interests, the Company, Sellers, the Notes, the Note Purchase Agreements, the Equalization Agreement, the Assumed Liabilities or the transactions contemplated by this Agreement, and the Company disclaims any other representations or warranties, whether made by any Seller, any Affiliate of the Company or any of their respective officers, directors, employees, agents or representatives.  Except for the representations and warranties contained in Article V or Article VI hereof (as modified by the Schedules hereto), the Company (i) expressly disclaims and negates any representation or warranty,

expressed or implied, at common law, by statute, or otherwise, relating to the condition of the Transferred Equity Interests, the Notes, the Note Purchase Agreements, the Equalization Agreement, the Company and the assets and Liabilities of the Company and (ii) disclaims all liability and responsibility for any representation, warranty, projection, forecast, statement, or information made, communicated, or furnished (orally or in writing) to Purchaser or its Affiliates or representatives (including any opinion, information, projection, or advice that may have been or may be provided to Purchaser by any director, officer, employee, agent, consultant, or representative of the Company or any of the Company's Affiliates).  The Company makes no representations or warranties to Purchaser regarding the probable success or profitability of the Company.  The disclosure of any matter or item in any Schedule hereto shall not be deemed to constitute an acknowledgment that any such matter is required to be disclosed or is material or that such matter would result in a Material Adverse Effect.

## ARTICLE VII

## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Sellers that:

7.1    <u>Organization and Good Standing</u>.  Purchaser[1] is duly organized, validly existing and in good standing under the laws of Brazil and has all requisite corporate or other power and authority and all necessary approvals to own, lease and operate its properties and to carry on its business as now conducted.  Purchaser is duly qualified or authorized to do business as a foreign company and is in good standing under the laws of each jurisdiction in which it owns or leases real property and each other jurisdiction in which the conduct of its business or the ownership of its properties requires such qualification or authorization, except where the failure to be so qualified, authorized or in good standing would not have a material adverse effect.

7.2    <u>Authorization of Agreement</u>.  Purchaser has full corporate or other power and authority to execute and deliver this Agreement and each other agreement, document, instrument or certificate contemplated by this Agreement or to be executed by Purchaser in connection with the consummation of the transactions contemplated hereby and thereby (the "<u>Purchaser Documents</u>"), and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance by Purchaser of this Agreement and each Purchaser Document have been duly authorized by all necessary corporate or other action on behalf of Purchaser.  This Agreement has been, and each Purchaser Document will be at or prior to the Closing, duly executed and delivered by Purchaser and (assuming the due authorization, execution and delivery by the other parties hereto and thereto) this Agreement constitutes, and each Purchaser Document when so executed and delivered will constitute, the legal, valid and binding obligations of Purchaser, enforceable against Purchaser in accordance with their

---

[1] ***Note***:  If Purchaser has a guarantor as discussed in Footnote 1 above, the conforming representations and warranties with respect to such guarantor should be made.

respective terms, subject to applicable bankruptcy, insolvency, liquidation, reorganization, moratorium and similar laws affecting creditors' rights and remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity).

       7.3     Conflicts; Consents of Third Parties.

       (a)     None of the execution and delivery by Purchaser of this Agreement or the Purchaser Documents, the consummation of the transactions contemplated hereby or thereby, or the compliance by Purchaser with any of the provisions hereof or thereof will conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or give rise to a right of termination or cancellation under any provision of (i) the certificate of incorporation and by-laws or comparable governing documents of Purchaser, (ii) any Contract or Permit to which Purchaser is a party or by which Purchaser or its properties or assets are bound or (iii) any Order of any Governmental Body applicable to Purchaser or by which any of the properties or assets of Purchaser are bound or (iv) any applicable Law.

       (b)     No consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Body is required on the part of Purchaser in connection with the execution and delivery of this Agreement or the Purchaser Documents, the compliance by Purchaser with any of the provisions hereof or thereof, the consummation of the transactions contemplated hereby or thereby or the taking by Purchaser of any other action contemplated hereby or thereby, or for Purchaser to conduct the business of the Company.

       7.4     Financial Advisors.  No Person has acted, directly or indirectly, as a broker, finder or financial advisor for Purchaser in connection with the transactions contemplated by this Agreement or, to the extent any Person has acted acted, directly or indirectly, as a broker, finder or financial advisor for Purchaser in connection with the transactions contemplated by this Agreement, no such Person is entitled to any fee or commission or like payment in respect thereof other than from the Purchaser.

       7.5     Capability.  Purchaser (i) has, and at the Closing will have, sufficient financial and other capability necessary to acquire ownership and control of the Company, to manage the Company and to provide personnel to fill the statutory offices of the Company at Closing, (ii) has, and at the Closing will have, the resources and capabilities (financial or otherwise) to perform its obligations hereunder, and (iii) has not incurred any obligation, commitment, restriction or Liability of any kind, which would impair or adversely affect such resources and capabilities.

ARTICLE VIII

BANKRUPTCY COURT MATTERS

8.1    Bankruptcy Court Filings.  As promptly as reasonably practicable following the execution of this Agreement, LBSF shall file with the Bankruptcy Court the Sale Motion seeking entry of the Sale Order.  Purchaser agrees that it will promptly take such actions as are reasonably requested by LBSF to assist in obtaining entry of the Sale Order, a finding of and adequate assurance of future performance by Purchaser, including furnishing affidavits or other documents or information for filing with the Bankruptcy Court for the purposes, among others, of providing necessary assurances of performance by Purchaser under this Agreement and demonstrating that Purchaser is a "good faith" purchaser under section 363(m) of the Bankruptcy Code.  Purchaser shall not, without the prior written consent of LBSF, file, join in, or otherwise support in any manner whatsoever any motion or other pleading relating to the sale of the Transferred Equity Interests, the Notes, the Note Purchase Agreements and the Equalization Agreement hereunder.

ARTICLE IX

COVENANTS

9.1    Access to Information.  Each Seller and the Company agrees that, prior to the Closing Date, Purchaser shall be entitled, through its officers, employees and representatives (including, without limitation, its legal advisors and accountants), to make such investigation of the properties, businesses and operations of the Company and such examination of the books and records of the Company, the Notes, the Note Purchase Agreements, the Equalization Agreement and the Assumed Liabilities as it reasonably requests and to make extracts and copies of such books and records.  Any such investigation and examination shall be conducted during regular business hours upon reasonable advance notice and under reasonable circumstances and shall be subject to restrictions under applicable Law.  Each Seller shall cause the officers, employees, consultants, agents, accountants, attorneys and other representatives of such Seller and the Company to cooperate with Purchaser and Purchaser's representatives in connection with such investigation and examination, and Purchaser and its representatives shall cooperate with such Seller and its representatives and shall use their reasonable efforts to minimize any disruption to the business of the Company and Sellers.  Notwithstanding anything herein to the contrary, no such investigation or examination shall be permitted to the extent that it would require any Seller or the Company to disclose information subject to attorney-client privilege or conflict with any confidentiality obligations to which such Seller or the Company, as applicable, is bound.

9.2    Conduct of the Business Pending the Closing.

(a)    Prior to the Closing, except (1) as required by applicable Law, (2) as otherwise expressly contemplated by this Agreement or (3) with the prior written

22

consent of Purchaser (which consent shall not be unreasonably withheld, delayed or conditioned), the Company shall:

(i)    conduct its business only in the Ordinary Course of Business;

(ii)    conduct its business, in all material aspects, in compliance with all applicable Laws; and

(iii)    use its commercially reasonable efforts to preserve the present business operations, organization and goodwill of the Company.

(b)    Except (1) as set forth on Schedule 9.2(b), (2) as required by applicable Law, (3) as otherwise contemplated by this Agreement or (4) with the prior written consent of Purchaser (which consent shall not be unreasonably withheld, delayed or conditioned), the Company shall not:

(i)    other than in the Ordinary Course of Business of the extension of the consulting agreement disclosed in Schedule 9.2(b)(iii) on its current terms, (A) grant any unusual or extraordinary bonus, benefit or other direct or indirect compensation to any director, or (B) enter into any employment, deferred compensation, severance, consulting, non-competition or similar agreement (or amend any such agreement) to which the Company is a party or involving a director of the Company;

(ii)    make or rescind any material election relating to Taxes, settle or compromise any claim, action, suit, litigation, proceeding, arbitration, investigation, audit or controversy relating to Taxes, or except as may be required by applicable Law or GAAP, make any material change to any of its methods of accounting or methods of reporting income or deductions for Tax or accounting practice or policy from those employed in the preparation of its most recent Tax Returns;

(iii)    subject any of the Transferred Equity Interests, the Notes, the Note Purchase Agreements and the Equalization Agreement to any Lien, except for Permitted Exceptions;

(iv)    other than in connection with the administration of the Loan Portfolio, sell, assign, license, transfer, convey, lease or otherwise dispose of any material assets of the Company (except pursuant to an existing Contract for fair consideration in the Ordinary Course of Business or for the purpose of disposing of obsolete or worthless assets);

(v)    other than in connection with the administration of the Loan Portfolio, acquire an interest in any Person or acquire a substantial portion of the assets or business of any Person or any division or line of business thereof, or otherwise acquire any material assets;

23

(vi)     other than in connection with the administration of the Loan Portfolio, enter into any material contracts, transactions, agreements or arrangements (whether written or oral) or amend, renew or terminate any existing agreement with third parties;

(vii)     cancel or compromise any material debt or claim or waive or release any material right of Sellers or the Company, in each case, under the Notes, the Note Purchase Agreements or the Equalization Agreement;

(viii)     enter into any commitment for capital expenditures;

(ix)     change or modify in any material respect its credit, collection or payment policies, procedures or practices, including acceleration of collections or receivables (whether or not past due) or fail to pay or delay payment of payables or other liabilities;

(x)     except for recurring expenses and expenses appearing in the expense budget set forth on Schedule 9.2(b)(x), pay any expenses in excess of R$60,000;

(xi)     other than in connection with the administration of the Loan Portfolio, settle or compromise any claim, action, dispute, or pending or threatened Legal Proceeding;

(xii)     issue any shares, notes, bonds, warrants or other securities, or any option, warrant or other right to acquire the same, of the Company; redeem any of the capital stock of the Company or declare, make or pay any dividends or distributions (whether in cash, securities or other property) to the holders of capital stock of the Company or otherwise; or

(xiii)     agree to do anything prohibited by this Section 9.2.

9.3     Consents.  Each party hereto shall use its commercially reasonable efforts to obtain and deliver to the other parties hereto at the earliest practicable date all consents and approvals required to consummate the transactions contemplated by this Agreement, including, without limitation, with respect to LBSF, the Sale Order; provided, however, that Sellers shall not be obligated to pay any consideration therefor to any third party from whom consent or approval is requested or to initiate any litigation or Legal Proceedings to obtain any such consent or approval or to appeal a denied Sale Order.

9.4     Further Assurances.  Each of Sellers and Purchaser shall use its commercially reasonable efforts to (i) take all actions necessary or appropriate to consummate the transactions contemplated by this Agreement and (ii) cause the fulfillment at the earliest practicable date of all of the conditions to their respective obligations to consummate the transactions contemplated by this Agreement.  Sellers further covenant and agree to use all commercially reasonable efforts, sought in good

24

faith, to have the Bankruptcy Court approve any Sale Order, in the absence of a Superior Proposal, and the Break-up Fee Order, if there is a Superior Proposal.

9.5     Confidentiality.

(a)     Purchaser acknowledges that the Confidential Information provided to it in connection with this Agreement, including under Section 9.1, is subject to the terms of the confidentiality agreements between the Company and Jive Investments Holding Inc. (or its predecessor entities or affiliates) dated October 10, 2010 (the "Confidentiality Agreement"), the terms of which are incorporated herein by reference. In connection with this Agreement and the transactions contemplated hereunder, the Sellers and their Affiliates and Representatives have made, and may continue to make, available to Purchaser certain information concerning the Sellers and the Company that is non-public, confidential or proprietary.  In consideration for and as a condition to such information being furnished to Purchaser, Purchaser agrees to treat any information concerning the Sellers and the Company (whether prepared by a Seller, the Company, their advisors or otherwise and irrespective of the form of communication) that is furnished to Purchaser by or on behalf of the Sellers or the Company pursuant hereto or pursuant to the Confidentiality Agreement (collectively referred to as the "Confidential Information") as confidential in accordance with this Section 9.5, and to take or abstain from taking certain other actions hereinafter set forth.  For purposes of this Agreement, the term "Confidential Information" shall be deemed to include all notes, analyses, compilations, forecasts, studies, interpretations or other documents or materials prepared by you which contain, reflect or are based upon, in whole or in part, such information furnished to you pursuant hereto.  The term "Confidential Information" does not include information which (i) is or becomes generally available to the public other than as a result of a disclosure by you in breach hereof or (ii) becomes available to you on a non-confidential basis from a source other than any Seller or any of its Representatives, provided that such source is not known by you, after reasonable investigation, to be bound by a contractual, legal or fiduciary obligation of confidentiality to the Sellers or any other party with respect to such information.  For purposes hereof, "Representatives" shall mean a party's Affiliates, directors, members, officers, employees, agents and advisors (including, without limitation, attorneys, accountants, consultants and financial advisors).

(b)     Purchaser hereby agrees that it shall use the Confidential Information solely for the purposes of the transactions contemplated by this Agreement and for no other purpose, that the Confidential Information will be kept confidential by it and that it will not disclose any of the Confidential Information to any third parties without the Seller Representative's prior written consent, which consent may be withheld in the Seller Representative's sole discretion.  In the event of the receipt of such consent, prior to the disclosure of any Confidential Information, the applicable third parties shall be obligated to agree in writing to be bound by the terms of a confidentiality agreement with terms no less restrictive than those in this Section 9.5.

(c)     In the event that Purchaser is requested or required (by deposition, interrogatories, requests for information or documents in legal or

administrative proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Confidential Information, Purchaser shall provide Seller Representative with prompt written notice of any such request or requirement so that the Seller Representative may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Section 9.5.  If, in the absence of a timely protective order or other remedy or the receipt of a waiver by Seller Representative, Purchaser is nonetheless legally compelled to disclose Confidential Information or else stand liable for contempt or suffer other censure or penalty, Purchaser may, without liability hereunder, disclose only that portion of the Confidential Information which such counsel advises Purchaser is legally required to be disclosed, provided that Purchaser shall exercise its reasonable commercial efforts, at Seller's expense, to preserve the confidentiality of the Confidential Information, including, without limitation, by reasonably cooperating with the Seller Representative to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded the Confidential Information.

(d)     Effective upon, and only upon, the Closing Date, the Confidentiality Agreement and Purchaser's obligations pursuant to this Section 9.5 shall terminate with respect to information relating solely to the Company or otherwise included in the Notes, the Note Purchase Agreements and the Equalization Agreement provided, however, that Purchaser acknowledges that any and all other Confidential Information provided to it by any Seller, the Company or their Representatives concerning any Seller and its Subsidiaries (other than the Company) shall remain subject to the terms and conditions of this Section 9.5 after the Closing Date, for a period of 2 years.

(e)     Purchaser acknowledges that this Agreement, the Schedules and other matters related thereto will be filed in the Case.

9.6     Preservation of Records.  Sellers, the Company and Purchaser agree that each of them shall preserve and keep the records held by it or its Affiliates in respect of periods including or ending prior to the Closing and relating to the Company and the Notes until December 31, 2017 and shall make such records and personnel available to the other as may be reasonably required by such party in connection with, among other things, for the preparation of financial statements, regulatory filings or Tax Returns of the Company and the Sellers (including, without limitation, filing of IRS Form 5471) in respect of periods including or ending prior to the Closing, and any insurance claims by, Legal Proceedings or tax audits against or governmental investigations of any Seller or Purchaser or any of their Affiliates or in order to enable any Seller or Purchaser to comply with their respective obligations under this Agreement and each other agreement, document or instrument contemplated hereby or thereby.  In the event any Seller or Purchaser wishes to destroy such records before or after that time, such party shall first give ninety (90) days prior written notice to the other and such other party shall have the right at its option and expense, upon prior written notice given to such party within such ninety (90) day period, to take possession of the records within one hundred and eighty (180) days after the date of such notice.

9.7    Publicity.  Purchaser shall not issue any press release or public announcement concerning this Agreement or the transactions contemplated hereby without obtaining the prior written approval of the Seller Representative, which approval will not be unreasonably withheld, delayed or conditioned, unless, based on the advice of outside legal counsel, disclosure is otherwise required by applicable Law or by the applicable rules of any stock exchange on which Purchaser lists securities, provided that the party intending to make such release shall use its best efforts consistent with such applicable Law or Bankruptcy Court requirement to consult with Seller Representative with respect to the text thereof.

9.8    Use of Name.  Each of Purchaser and the Company agree that it shall as of the Closing, cease to make any use of the name "Lehman, or Lehman Brothers, Libro" or any service marks, trademarks, trade names, identifying symbols, logos, emblems, signs or insignia related thereto or containing or comprising the foregoing, including any name or mark confusingly similar thereto (collectively, the "Seller Marks"), and (ii) immediately after the Closing, cease to hold itself out as having any affiliation with any Seller or any of its Affiliates.  In furtherance thereof, as promptly as practicable but in no event later than ninety (90) days following the Closing Date, Purchaser shall remove, strike over or otherwise obliterate all Seller Marks from all materials including, without limitation, any vehicles, business cards, schedules, stationery, packaging materials, displays, signs, promotional materials, manuals, forms, computer software and other materials.

9.9    Supplementation and Amendment of Schedules.  Sellers may, at their option, include in the Schedules items that are not material in order to avoid any misunderstanding, and such inclusion, or any references to dollar amounts, shall not be deemed to be an acknowledgement or representation that such items are material, to establish any standard of materiality or to define further the meaning of such terms for purposes of this Agreement.  Information disclosed in the Schedules shall constitute a disclosure for all purposes under this Agreement notwithstanding any reference to a specific section, and all such information shall be deemed to qualify the entire Agreement and not just such section.  From time to time prior to the Closing, Sellers shall have the right to supplement or amend the Schedules with respect to any matter hereafter arising or discovered after the delivery of the Schedules pursuant to this Agreement.  No such supplement or amendment shall have any effect on the satisfaction of the condition to closing set forth in Section 10.1(a), provided, however, if the closing shall occur, then Purchaser shall be deemed to have waived any right or claim pursuant to the terms of this Agreement or otherwise, including pursuant to Article XI hereof, with respect to any and all matters disclosed pursuant to any such supplement or amendment at or prior to the Closing.

9.10    Statutory Officers.  Purchaser shall take all such steps as are necessary to install its designees as statutory officers of the Company as promptly as practical following the Closing, but in no event later than thirty (30) days after the Closing Date.  Pending the assumption of such offices by Purchaser's designees, the individuals continuing in such offices on and after the Closing Date (the "Continuing Officers") are hereby authorized by Purchaser to do all things and carry out all acts

27

required to discharge their duties to the Company and the Purchaser hereby agrees to indemnify each Continuing Officer against, and hold each Continuing Officer harmless from, any and all Losses incurred or suffered as a result of the holding of such offices or the performance of all such duties.  Purchaser shall promptly upon request advance all costs of defense any such Continuing Officer may incur as a result of any claim relating to his continuation as an officer of the Company after the Closing.

      9.11  <u>Transition Services</u>.  In addition to, and not in limitation of <u>Section 9.10</u>, Sellers and the Company shall make the representatives of the Company from Alvarez & Marsal who are responsible for managing the Company (including any outside consultants directly involved in the management of the Company) available for consultation and assistance after the Closing Date for a period of ninety (90) days at no additional cost.

ARTICLE X

CONDITIONS TO CLOSING

      10.1  <u>Conditions Precedent to Obligations of Purchaser</u>.  The obligation of Purchaser to consummate the transactions contemplated by this Agreement is subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser in whole or in part to the extent permitted by applicable Law):

      (a)      the representations and warranties of Sellers set forth in this Agreement shall be true and correct at and as of the Closing, except to the extent such representations and warranties expressly relate to an earlier date (in which case such representations and warranties shall be true and correct on and as of such earlier date); <u>provided</u>, <u>however</u>, that in the event of a breach of a representation or warranty, the condition set forth in this <u>Section 10.1(a)</u> shall be deemed satisfied unless the effect of all such breaches of representations and warranties taken together result in a Material Adverse Effect, and Purchaser shall have received a certificate signed by an authorized officer of Seller Representative, dated the Closing Date, to the foregoing effect;

      (b)      each Seller shall have performed and complied in all material respects with all obligations and agreements required in this Agreement to be performed or complied with by it prior to the Closing Date, and Purchaser shall have received a certificate signed by an authorized officer of Seller Representative, dated the Closing Date, to the forgoing effect;

      (c)      the Cash Balances on the Closing Date shall be greater than the Purchase Price;

      (d)      no Distributions shall have occurred since June 1, 2010;

      (e)      there shall exist no restrictions on the Company's ability to repay the amounts owed to the Sellers under the Notes; and

28

(f)      each Seller shall have delivered, or caused to be delivered, to Purchaser all of the items set forth in <u>Section 4.2</u>.

10.2   <u>Conditions Precedent to Obligations of Sellers</u>.  The obligations of Sellers to consummate the transactions contemplated by this Agreement are subject to the fulfillment, prior to or on the Closing Date, of each of the following conditions (any or all of which may be waived by Seller Representative in whole or in part to the extent permitted by applicable Law):

(a)      the representations and warranties of Purchaser set forth in this Agreement qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, at and as of the Closing Date as though made on the Closing Date, except to the extent such representations and warranties relate to an earlier date (in which case such representations and warranties qualified as to materiality shall be true and correct, and those not so qualified shall be true and correct in all material respects, on and as of such earlier date), and Seller Representative shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the foregoing effect;

(b)      Purchaser shall have performed and complied in all material respects with all obligations and agreements required by this Agreement to be performed or complied with by Purchaser on or prior to the Closing Date, and Seller Representative shall have received a certificate signed by an authorized officer of Purchaser, dated the Closing Date, to the foregoing effect; and

(c)      Purchaser shall have delivered, or caused to be delivered, to Seller Representative all of the items set forth in <u>Section 4.3</u>.

10.3   <u>Conditions Precedent to Obligations of Purchaser and Sellers</u>.  The respective obligations of Purchaser and Sellers to consummate the transactions contemplated by this Agreement are subject to the fulfillment, on or prior to the Closing Date, of each of the following conditions (any or all of which may be waived by Purchaser and Seller Representative in whole or in part to the extent permitted by applicable Law):

(a)      there shall not be in effect any Order by a Governmental Body of competent jurisdiction restraining, enjoining or otherwise prohibiting the consummation of the transactions contemplated hereby; and

(b)      the Bankruptcy Court shall have entered the Sale Order in form and substance reasonably satisfactory to LBSF and Purchaser and any stay period applicable to the Sale Order shall have expired or shall have been waived by the Bankruptcy Court.

10.4   <u>Frustration of Closing Conditions</u>.  Neither Sellers nor Purchaser may rely on the failure of any condition set forth in <u>Section 10.1</u>, <u>10.2</u> or <u>10.3</u>, as the case may be, if such failure was caused by such party's failure to comply with any provision of this Agreement.

ARTICLE XI

SURVIVAL AND INDEMNIFICATION

11.1    <u>Survival of Representations and Warranties</u>.  The representations and warranties of the parties contained in <u>Article V</u>, <u>Article VI</u> and <u>Article VII</u> of this Agreement shall survive Closing Date through and including the first anniversary of the Closing Date; <u>provided</u>, <u>however</u>, that any obligations to indemnify and hold harmless shall not terminate with respect to any Losses as to which the Person to be indemnified shall have given notice to the indemnifying party in accordance with <u>Section 13.7</u> before the first anniversary of the Closing Date; <u>provided</u>, further, that the covenants and agreements set forth in this Agreement shall survive in accordance with their respective terms.

11.2    <u>Indemnification by Sellers</u>.

(a)    Subject to <u>Sections 9.9</u>, <u>11.1</u> and <u>11.4(a)</u> hereof, each Seller hereby agrees to indemnify and hold Purchaser and its directors, officers, employees, Affiliates, agents, successors and permitted assigns harmless from and against:

(i)    any and all losses, liabilities, obligations, damages, costs and expenses (individually, a "<u>Loss</u>" and, collectively, "<u>Losses</u>") actually suffered by Purchaser prior to the first anniversary of the Closing Date, based upon, attributable to or resulting from the breach of any representation or warranty of such Seller set forth in <u>Article V</u> hereof, or any representation or warranty contained in any certificate delivered by or on behalf of Seller Representative pursuant to this Agreement;

(ii)    any and all Losses actually suffered by Purchaser prior to the first anniversary of the Closing Date, based upon, attributable to or resulting from the breach of any covenant or other agreement on the part of such Seller under this Agreement;

(iii)    any and all Losses (but not for costs or expenses) actually suffered by Purchaser prior to the first anniversary of the Closing Date, resulting from any and all litigation against the Company in connection with any Legal Proceeding relating to the ABN Portfolio set forth on <u>Schedule 11.2(a)(iii)</u> (collectively, the "<u>ABN Litigation</u>") in an amount equal to 50% (fifty percent) of such cumulative Losses actually suffered by Purchaser resulting from all ABN Litigation to the extent such Losses are in excess of R$100,000 (such indemnified amount, "<u>ABN Cumulative Losses</u>"); and

(iv)    any and all assessments, costs, penalties and expenses, including attorneys' and other professionals' fees and disbursements (collectively, "<u>Expenses</u>") incident to the foregoing except any Expenses incident or related to <u>Section 11.2(a)(iii)</u>.

30

(b)    Purchaser acknowledges and agrees that, other than with respect to Section 11.2(a)(iii), Sellers shall not have any liability under any provision of this Agreement for any Loss to the extent that such Loss relates to action taken by Purchaser or any other Person (other than a Seller in breach of this Agreement) after the Closing Date.  Purchaser shall take and shall cause its Affiliates to take all reasonable steps to mitigate any Loss upon becoming aware of any event which would reasonably be expected to, or does, give rise thereto, including incurring costs only to the minimum extent necessary to remedy the breach or Legal Proceeding which gives rise to the Loss.

(c)    Notwithstanding anything herein to the contrary, any Person making an Indemnification Claim must give notice to the indemnifying party of any such Indemnification Claim in writing in reasonable detail prior to the expiration of the first anniversary of the Closing Date.  Any Indemnification Claim not made on or prior to that date will be irrevocably and unconditionally released and waived.  Purchaser acknowledges and agrees that Sellers shall not have any liability under any provision of this Agreement, and shall have no obligation to indemnify Purchaser, for Loss resulting from Legal Proceedings which are not set forth on Schedule 11.2(a)(iii).

(d)    No representation or warranty of a Seller contained herein shall be deemed untrue or incorrect, and such Seller shall not be deemed to have breached a representation or warranty, as a consequence of the existence of any fact, circumstance or event of which (a) is disclosed in response to another representation or warranty contained in this Agreement or (b) Purchaser is aware of as of the Closing Date.

11.3    Indemnification by Purchaser.

(a)    Subject to Sections 11.1 and 11.4(a), Purchaser hereby agrees to indemnify and hold each Seller and its Affiliates, agents, successors and permitted assigns harmless from and against:

(i)    any and all Losses actually suffered by a Seller prior to the first anniversary of the Closing Date based upon, attributable to or resulting from the breach of any representation or warranty of Purchaser set forth in Article VII hereof, or any representation or warranty contained in any certificate delivered by or on behalf of Purchaser pursuant to this Agreement;

(ii)    any and all Losses actually suffered by a Seller prior to the first anniversary of the Closing Date based upon, attributable to or resulting from the breach of any covenant or other agreement on the part of Purchaser under this Agreement;

(iii)    any and all Losses actually suffered by a Seller prior to the first anniversary of the Closing Date based upon or arising directly out of any Assumed Liability; and

(iv)    any and all Expenses incident to the foregoing.

31

(b)     Each Seller shall take and cause its Affiliates to take all reasonable steps to mitigate any Loss upon becoming aware of any event which would reasonably be expected to, or does, give rise thereto, including incurring costs only to the minimum extent necessary to remedy the breach which gives rise to the Loss.

(c)     Notwithstanding anything herein to the contrary, any Person making an Indemnification Claim under Section 11.3(a)(i) must give notice to the indemnifying party of any such Indemnification Claim in writing in reasonable detail prior to the expiration of the first anniversary of the Closing Date.  Any indemnification claim not made on or prior to that date will be irrevocably and unconditionally released and waived.

11.4    <u>Indemnification Procedures</u>.

(a)     In the event that any Legal Proceedings shall be instituted or that any claim or demand shall be asserted by any Person not a party hereto in respect of which payment may be sought under <u>Sections 11.2</u> and <u>11.3</u> hereof (regardless of the limitations set forth in <u>Section 11.5</u>) (an "<u>Indemnification Claim</u>"), the indemnified party shall reasonably and promptly cause written notice of the assertion of any Indemnification Claim of which it has knowledge which is covered by this indemnity to be forwarded to the indemnifying party.  Notwithstanding anything herein to the contrary, any Person making an Indemnification Claim under this <u>Section 11.4(a)(i)</u> must give notice to the indemnifying party of any such Indemnification Claim in writing in reasonable detail prior to the expiration of the first anniversary of the Closing Date.  Any Indemnification Claim not made on or prior to that date will be irrevocably and unconditionally released and waived.

(b)     The indemnifying party shall have the right to be represented by counsel of its choice, which must be reasonably satisfactory to the indemnified party, and to defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder.  Such representation shall be at the indemnifying party's sole option and expense, but any such expense shall be paid from the Indemnity Escrowed Funds and reduce the Cap by the amount paid.  If the indemnifying party elects to defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, it shall within thirty (30) days (or sooner, if the nature of the Indemnification Claim so requires) notify the indemnified party of its intent to do so.  If the indemnifying party elects not to defend against, negotiate, settle or otherwise deal with any Indemnification Claim which relates to any Losses indemnified against hereunder, the indemnified party may defend against, negotiate, settle or otherwise deal with such Indemnification Claim.  If the indemnifying party shall assume the defense of any Indemnification Claim, the indemnified party may participate, at his or its own expense, in the defense of such Indemnification Claim; <u>provided</u>, <u>however</u>, that, if such indemnifying party is a Seller, such Seller shall promptly be reimbursed for the costs of such defense from the Indemnity Escrowed Funds; <u>provided</u>, <u>further</u>, such indemnified party shall be entitled to participate in any such defense with separate counsel at the expense of the indemnifying party if (i) so requested by the indemnifying party to

32

participate or (ii) in the reasonable opinion of counsel to the indemnified party a conflict or potential conflict exists between the indemnified party and the indemnifying party that would make such separate representation advisable; and provided, further, that the indemnifying party shall not be required to pay for more than one such counsel for all indemnified parties in connection with any Indemnification Claim.  The parties hereto agree to cooperate, on a commercially reasonable basis, with each other in connection with the defense, negotiation or settlement of any such Indemnification Claim.  Notwithstanding anything in this Section 11.4 to the contrary, neither the indemnifying party nor the indemnified party shall, without the written consent of the other party, settle or compromise any Indemnification Claim or permit a default or consent to entry of any judgment unless the claimant and such party provide to such other party an unqualified release from all liability in respect of the Indemnification Claim.

(c)    Notwithstanding the foregoing, if a settlement offer solely for money damages is made by the applicable third party claimant, and the indemnifying party notifies the indemnified party in writing of the indemnifying party's willingness to accept the settlement offer and, subject to the applicable limitations of Sections 11.5 and 11.6, pay the amount called for by such offer, and the indemnified party declines to accept such offer, the indemnified party may continue to contest such Indemnification Claim, free of any participation by the indemnifying party, and the amount of any ultimate liability with respect to such Indemnification Claim that the indemnifying party has an obligation to pay hereunder shall be limited to the lesser of (A) the amount of the settlement offer that the indemnified party declined to accept plus the Losses of the indemnified party relating to such Indemnification Claim through the date of its rejection of the settlement offer or (B) the aggregate Losses of the indemnified party with respect to such Indemnification Claim.  If the indemnifying party makes any payment on any Indemnification Claim, the indemnifying party shall be subrogated, to the extent of such payment, to all rights and remedies of the indemnified party to any insurance benefits or other claims of the indemnified party with respect to such Indemnification Claim.

(d)    After any final decision, judgment or award shall have been rendered by a Governmental Body of competent jurisdiction and the expiration of the time in which to appeal therefrom, or a settlement shall have been consummated, or the indemnified party and the indemnifying party shall have arrived at a mutually binding agreement with respect to an Indemnification Claim hereunder, the indemnified party shall forward to the indemnifying party notice of any sums due and owing by the indemnifying party pursuant to this Agreement with respect to such matter.

11.5    Certain Limitations on Indemnification.  Notwithstanding anything herein to the contrary, an indemnifying party shall not have any liability under Section 11.2(a) or 11.3(a), as applicable:

(i)    with respect to any individual claim for Losses, unless and until such Losses claimed exceed R$50,000 (the "De Minimis Amount");

(ii)    unless and until the amount of indemnified Losses suffered by the Purchaser, on the one hand, or Sellers, on the other hand, exceed, in the

33

aggregate R$200,000 (the "Deductible"), disregarding any individual claim that does not exceed the De Minimis Amount, and then only to the extent that such Losses exceed the Deductible;

(iii)    with respect to the liability of Sellers, for any portion of aggregate Losses referenced in Sections 11.2(a)(i), (ii) and (iv) and for ABN Cumulative Losses referenced in Section 11.2(a)(iii) in the aggregate in excess of R$2,700,000 (the "Cap") payable solely out of the Indemnity Escrowed Funds; and

(iv)    with respect to the liability of Purchaser, for any Losses in excess of the Cap.

11.6    Calculation of Losses.

(a)    The amount of any Losses for which indemnification is provided under this Article XI shall be net of any amounts actually recovered or recoverable by the indemnified party under insurance policies or otherwise with respect to such Losses (net of any Tax or expenses incurred in connection with such recovery).

(b)    If the amount of any Loss for which indemnification is provided under this Article XI gives rise to a realizable Tax benefit (as defined below) to the indemnified party making the Indemnification Claim, then the Indemnification Claim shall be (i) increased to take account of any net Tax cost incurred by the indemnified party arising from the receipt of indemnity payments hereunder (grossed up for such increase) and (ii) reduced to take account of any net Tax benefit realized by the indemnified party arising from the incurrence or payment of any such Loss. To the extent such Indemnification Claim does not give rise to a realizable Tax benefit, if the amount with respect to which any Indemnification Claim is made gives rise to a subsequently realized Tax benefit to the indemnified party that made the Indemnification Claim, such indemnified party shall refund to the indemnifying party the amount of such Tax benefit (with and including any gross-up payment made pursuant to this Section 11.6 with respect to such Tax benefit) when, as and if realized (it being understood that such indemnified party shall use its reasonable efforts to realize such Tax benefit). For purposes of this Section 11.6, a "Tax benefit" means an amount by which the Tax liability of the party (or group of corporations including the party) is actually reduced (including by deduction, reduction of income by virtue of increased tax basis or otherwise, entitlement to refund, credit or otherwise) plus any related interest received from the relevant taxing authority. In computing the amount of any such Tax cost or Tax benefit, the indemnified party shall be deemed to recognize all other items of income, gain, loss, deduction or credit before recognizing any item arising from the receipt of any indemnity payment hereunder or the incurrence or payment of any indemnified Loss.

11.7    Tax Treatment of Indemnity Payments. Sellers and Purchaser agree to treat any indemnity payment made pursuant to this Article XI as an adjustment to the Purchase Price for national, state, local and foreign income tax purposes.

34

11.8    No Consequential Damages.  Notwithstanding anything to the contrary elsewhere in this Agreement, no party shall, in any event, be liable to any other Person for any consequential, incidental, indirect, special, moral or punitive damages of such other Person, including loss of future revenue, income or profits, diminution of value or loss of business reputation or opportunity relating to the breach or alleged breach hereof (provided that such limitation with respect to lost profits shall not limit Seller's right to recover contract damages in connection with Purchaser's failure to close in violation of this Agreement).

11.9    Exclusive Remedy.  Subject to Section 13.2 hereof, the sole and exclusive remedy of Sellers and Purchaser for any breach or inaccuracy, or alleged breach or inaccuracy, of any representation, warranty, covenant or agreement made by Sellers or Purchaser shall be indemnification in accordance with this Article XI.  In furtherance of the foregoing, the parties hereby waive, to the fullest extent permitted by applicable Law, any and all other rights, claims and causes of action (including rights of contributions, if any) known or unknown, foreseen or unforeseen, which exist or may arise in the future, that it may have against any Seller or any of its Affiliates, or Purchaser or any of its Affiliates, as the case may be, arising under or based upon any federal, state or local Law (including any such Law relating to environmental matters or arising under or based upon any securities Law, common Law or otherwise).

11.10    Indemnity Escrow.  On the Closing Date, Purchaser shall pay to the Escrow Agent, in immediately available funds, to the account designated by the Escrow Agent, the Indemnity Escrow Amount, in accordance with the terms of this Agreement and the Indemnity Escrow Agreement.  Any payment Sellers are obligated to make to any Purchaser Indemnified Parties pursuant to this Article X shall be paid exclusively from the Indemnity Escrowed Funds, and Sellers shall have no liability under this Agreement and shall have no obligation to indemnify Purchaser other than from the Indemnity Escrowed funds.  On the first anniversary of the Closing Date, the Escrow Agent shall release the Indemnity Escrowed Funds (to the extent not utilized to pay Purchaser for any indemnification claim) to Seller Representative, except that the Escrow Agent shall retain an amount equal to the amount of claims for indemnification under this Article XI asserted prior to such first anniversary but not yet resolved ("Unresolved Claims").  The Indemnity Escrowed Funds retained for Unresolved Claims shall be released by the Escrow Agent (to the extent not utilized to pay Purchaser for any such claims resolved in favor of Purchaser) upon their resolution in accordance with this Article XI and the Indemnity Escrow Agreement.  The costs related to the maintenance of the Indemnity Escrow shall be paid out of the Indemnity Escrow Amount.

ARTICLE XII

TAXES

12.1    Transfer Taxes.  Each Party shall be responsible (and shall indemnify and hold harmless each other Party and its directors, officers, employees, Affiliates, agents, successors and permitted assigns against) for any sales, use, stamp, documentary stamp, filing, recording, transfer or similar fees or taxes or governmental

35

charges (including any interest and penalty thereon) payable attributable to it by Law in connection with the transactions contemplated by this Agreement ("Transfer Taxes"). . Sellers and Purchaser shall cooperate and consult with each other prior to filing any Tax Returns in respect of Transfer Taxes.

12.2    Purchase Price Allocation.  Sellers and Purchaser shall allocate the purchase price (including the Assumed Liabilities) among the Transferred Equity Interests, the Notes, the Note Purchase Agreements and the Equalization Agreement as specified in Schedule 12.2 (the "Asset Acquisition Statement").  Purchaser shall prepare and deliver to Seller Representative from time to time revised copies of the Asset Acquisition Statement (the "Revised Statements") so as to report any matters on the Asset Acquisition Statement that need updating (including purchase price adjustments, if any) consistent with the agreed upon allocation.  The purchase price for the Transferred Equity Interests, the Notes, the Note Purchase Agreements and the Equalization Agreement shall be allocated in accordance with the Asset Acquisition Statement or, if applicable, the last Revised Statements, provided by Purchaser to Sellers, and all income Tax Returns and reports filed by Purchaser and Sellers shall be prepared consistently with such allocation.

12.3    Tax Returns.  Following the Closing, Purchaser shall cause to be timely filed all Tax Returns required to be filed by the Company and pay or cause to be paid all Taxes shown due thereon.

12.4    338 Election.  Purchaser shall not make an election under section 338(g) of the Code in connection with its acquisition of the Transferred Equity Interests without the prior written consent of Sellers, which can be withheld at Sellers' sole discretion.

ARTICLE XIII

MISCELLANEOUS

13.1    Condition of the Business.  Notwithstanding anything contained in this Agreement to the contrary, Purchaser acknowledges and agrees that no Seller nor the Company is making any representations or warranties whatsoever, express or implied, beyond those expressly given by Sellers in Article V or by the Company in Article VI hereof (as modified by the Schedules hereto as supplemented or amended), as the case may be, and Purchaser acknowledges and agrees that, except for the representations and warranties contained therein, the Transferred Equity Interests, the Notes, the Note Purchase Agreements, the Equalization Agreement and, indirectly, the assets and Liabilities of the Company are being transferred on a "where is" and, as to condition, "as is" basis.  Any claims Purchaser may have for breach of representation or warranty by any Seller shall be based solely on the representations and warranties of Sellers set forth in Article V hereof (as modified by the Schedules hereto as supplemented or amended). Purchaser further acknowledges and agrees that no Seller nor any of its Affiliates nor the Company nor any other Person has made any representation or warranty, express or implied, as to the accuracy or completeness of any information regarding any Seller, the

36

Transferred Equity Interests, the Notes, the Note Purchase Agreements, the Equalization Agreement, the Company or the transactions contemplated by this Agreement not expressly set forth in this Agreement, and no Seller nor any of its Affiliates or any other Person will have or be subject to any liability to Purchaser or any other Person resulting from the distribution to Purchaser or its representatives or Purchaser's use of, any such information, including any confidential memoranda distributed on behalf of any Seller relating to the Company, the Transferred Equity Interests, the Notes, the Note Purchase Agreements, the Equalization Agreement or any assets or Liabilities of the Company or other publications or data room information provided to Purchaser or its representatives, or any other document or information in any form provided to Purchaser or its representatives in connection with the sale of Transferred Equity Interests, the Notes, the Note Purchase Agreements, the Equalization Agreement and, indirectly, any assets and Liabilities of the Company and the transactions contemplated hereby. Purchaser acknowledges that it has conducted to its satisfaction, its own independent investigation of the Company, the assets and Liabilities of the Company, the Transferred Equity Interests, the Notes and the Note Purchase Agreements, the Equalization Agreement, and, in making the determination to proceed with the transactions contemplated by this Agreement, Purchaser has relied on the results of its own independent investigation.

13.2    <u>Expenses</u>.

(a)    Except as otherwise provided in this Agreement, each of Seller and Purchaser shall bear its own expenses incurred in connection with the negotiation and execution of this Agreement and each other agreement, document and instrument contemplated by this Agreement and the consummation of the transactions contemplated hereby and thereby.

(b)    In the event the Closing has not occurred by March 31, 2011 (other than as a result of a breach, by Purchaser, of its obligations hereunder), Sellers shall reimburse Purchaser of its reasonable and documented out of pocket expenses incurred in connection with the negotiation and entering into of this Agreement and the transactions contemplated hereunder (including counsel and advisory fees and expenses and travel expenses), limited to USD50,000 (or its equivalent in other currencies).

13.3    <u>Specific Performance; Injunctive Relief</u>.  Each party hereto agrees that irreparable damage would occur to such party in the event that any of the provisions of this Agreement are not performed by the other parties in accordance with their specific terms or are otherwise breached and that money damages would not be an adequate remedy.  It is accordingly agreed that each party shall be entitled to (and each other party hereby consents to) an injunction or injunctions to prevent breaches of this Agreement by the other parties and to enforce specifically the terms and provisions of this Agreement in the Bankruptcy Court without bond or other security being required, this being in addition to any other remedy to which they are entitled at law or in equity.

13.4    <u>Submission to Jurisdiction; Consent to Service of Process</u>.

(a)    Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereto hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in <u>Section 13.7</u> hereof; <u>provided</u>, <u>however</u>, that if the Bankruptcy Court does not have or abstains from exercising such jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereto hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

(b)    Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by delivery of a copy thereof in accordance with the provisions of <u>Section 13.7</u>.

13.5    <u>Waiver of Right to Trial by Jury</u>.  Each party to this Agreement waives any right to trial by jury in any action, matter or proceeding regarding this Agreement or any provision hereof.

13.6    <u>Entire Agreement; Amendments and Waivers</u>.  This Agreement (including the schedules and exhibits hereto) and the Confidentiality Agreement represent the entire understanding and agreement between the parties hereto with respect to the subject matter hereof.  This Agreement can be amended, supplemented or changed, and any provision hereof can be waived, only by written instrument making specific reference to this Agreement signed by the party against whom enforcement of any such amendment, supplement, modification or waiver is sought.  No action taken pursuant to this Agreement, including without limitation, any investigation by or on behalf of any party hereto, shall be deemed to constitute a waiver by the party taking such action of compliance with any representation, warranty, covenant or agreement contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a further or continuing waiver of such breach or as a waiver of any other or subsequent breach.  No failure on the part of any party hereto to exercise, and no delay in exercising, any right, power or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of such right, power or remedy by such party preclude any other or further exercise thereof or the exercise of any other

right, power or remedy.  All remedies hereunder are cumulative and are not exclusive of any other remedies provided by law.

      13.7   <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made and performed in such State.  Solely for the purposes of Article 9, §2 of Brazilian Decree-Law No 4,657 of September 4, 1942 , LBSF and LB1 are the offerors (*proponentes*, in Portuguese) in respect of this Agreement.

      13.8   <u>Notices</u>.  All notices and other communications under this Agreement shall be in writing and shall be deemed given (i) when delivered personally by hand (with written confirmation of receipt), (ii) when sent by facsimile (with written confirmation of transmission) or (iii) one business day following the day sent by overnight courier (with written confirmation of receipt), in each case at the following addresses and facsimile numbers (or to such other address or facsimile number as a party may have specified by notice given to the other party pursuant to this provision):

      If to Sellers, to:

      Alvarez & Marsal
      Attn.:  Mr. Luis de Lucio
      Rua Quintana, 887 - 3rd floor - suite 33
      04569-011 - São Paulo – SP
      E-mail:  <u>Ldelucio@alvarezandmarsal.com</u>

      With a copy to:

      Lehman Brothers Holdings Inc.
      Attn.:  Mr. Daniel Ehrmann
      1271 Avenue of the Americas, 40th Floor,
      New York, NY 10020
      E-mail:  <u>Dehrmann@alvarezandmarsal.com</u>

      With a copy (which shall not constitute notice) to:

      Weil, Gotshal & Manges LLP
      767 Fifth Avenue
      New York, NY 10153
      Facsimile:  (212) 310-8007
      Attn:   Richard P. Krasnow
      E-mail:  <u>richard.krasnow@weil.com</u>
      Attn:  Christopher Aidun
      E-mail:  christopher.aidun@weil.com

If to Purchaser, to:

Jive Investments Holding Ltd.
Nerine Chambers, P.O. Box 905,
Road Town, Tortola, British Virgin Islands.
Attention:  Alexandre Marques
E-mail: am@jiveinvestments.com

With a copy (which shall not constitute notice) to:

Neointelligence Corporate Advice
Av. Brigadeiro Faria Lima, 1.485, 18º andar, Torre Norte
CEP 01452-002 - São Paulo, SP
Brazil
Attention:  Guilherme Cruz
E-mail: gcruz@neointelligence.com.br

13.9    Seller Representative.

(a)    Each Seller hereby irrevocably appoints LBSF ("Seller Representative") as such Seller's representative, attorney-in-fact and agent, with full power of substitution to act in the name, place and stead of such Seller with respect to the transfer of such Seller's Shares to the Company in accordance with the terms and provisions of this Agreement and to act on behalf of such Seller in any amendment of or litigation or arbitration involving this Agreement and or the Indemnity Escrow Agreement to do or refrain from doing all such further acts and things, and to execute all such documents, as such Seller Representative shall deem necessary or appropriate in conjunction with any of the transactions contemplated by this Agreement and the Indemnity Escrow Agreement, including, without limitation, the power:

(i)    to take all action necessary or desirable in connection with the waiver of any condition to the obligations of Sellers to consummate the transactions contemplated by this Agreement or the Indemnity Escrow Agreement;

(ii)    to negotiate, execute and deliver all ancillary agreements, statements, certificates, statements, notices, approvals, extensions, waivers, undertakings, amendments and other documents required or permitted to given in connection with the consummation of the transactions contemplated by this Agreement or the Indemnity Escrow Agreement (it being understood that such Seller shall execute and deliver any such documents which Seller Representative agrees to execute);

(iii)    to terminate this Agreement if Sellers are entitled to do so;

(iv)    to give and receive all notices and communications to be given or received under this Agreement or the Indemnity Escrow Agreement and

40

to receive service of process in connection with the any claims under this Agreement or the Indemnity Escrow Agreement, including service of process in connection with arbitration; and

(v)    to take all actions which under this Agreement or the Indemnity Escrow Agreement may be taken by Sellers and to do or refrain from doing any further act or deed on behalf of Sellers which Seller Representative deems necessary or appropriate in his sole discretion relating to the subject matter of this Agreement as fully and completely as such Seller could do if personally present.

(b)    Seller Representative will not be liable for any act taken or omitted by it as permitted under this Agreement or the Indemnity Escrow Agreement, except if such act is taken or omitted in bad faith or by willful misconduct.  Seller Representative will also be fully protected in relying upon any written notice, demand, certificate or document that it in good faith believes to be genuine (including facsimiles thereof).

(c)    Sellers agree, severally but not jointly, to indemnify Seller Representative for, and to hold Seller Representative harmless against, any loss, liability or expense incurred without willful misconduct or bad faith on the part of Seller Representative, arising out of or in connection with Seller Representative's carrying out it duties under this Agreement and the Indemnity Escrow Agreement, including costs and expenses of successfully defending Seller Representative against any claim of liability with respect thereto.  Seller Representative may consult with counsel of its own choice and will have full and complete authorization and protection for any action taken and suffered by it in good faith and in accordance with the opinion of such counsel.

If LBSF becomes unable to serve as Seller Representative, LB1, or such other Person or Persons as may be designated by a majority of Sellers, shall succeed as Seller Representative.

13.10    Severability.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any law or public policy, all other terms or provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party.  Upon such determination that any term or other provision is invalid, illegal, or incapable of being enforced, the parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the parties as closely as possible in an acceptable manner in order that the transactions contemplated hereby are consummated as originally contemplated to the greatest extent possible.

13.11    Binding Effect; Assignment.  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.  Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any Person or entity not a party to this Agreement except

as provided below.  No assignment of this Agreement or of any rights or obligations hereunder may be made by any Seller or Purchaser (by operation of law or otherwise) without the prior written consent of the other parties hereto and any attempted assignment without the required consents shall be void; provided that Purchaser may freely assign its rights hereunder prior to the Closing Date to any of its Affiliates without any prior written consent of Sellers.  No assignment of any rights or obligations hereunder shall relieve the parties hereto of any such obligations.  Upon any such permitted assignment, the references in this Agreement to Purchaser shall also apply to any such assignee unless the context otherwise requires.

13.12   Non-Recourse.  No past, present or future director, officer, employee, incorporator, member, partner or equityholder of any Seller shall have any liability for any obligations or liabilities of such Seller under this Agreement or the Seller Documents of or for any claim based on, in respect of, or by reason of, the transactions contemplated hereby and thereby.

13.13   Language.  In the event of any discrepancy, inconsistency or ambiguity between the English language and Portuguese versions of this Agreement, the English language version shall govern.

13.14   Counterparts.  This Agreement may be executed in one or more counterparts, each of which will be deemed to be an original copy of this Agreement and all of which, when taken together, will be deemed to constitute one and the same agreement.

*[Signature Page Follows]*

Signature Page to Note and Equity Purchase Agreement *executed on November 1st, 2010, 2010, by and among Jive Investments Holding Ltd., Lehman Brothers Special Financing Inc., Libro Holdings I Inc., LB I Group Inc. and Libro Companhia Securitizadora de Créditos Financeiros.*

THE COMPANY

LIBRO COMPANHIA
SECURITIZADORA DE CRÉDITOS
FINANCEIROS

By: _____
    Name: Luis de Lucio
    Title: Officer (*diretor*)

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective officers thereunto duly authorized, as of the date first written above.

SELLER[2]

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____

Name: Daniel Jason Ehrmann
Title: Vice President

STATE OF            )
                    )
COUNTY OF           )

On this ___th day of _____, 2010, before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, personally appeared _____, to me known, who, being by me duly sworn, did depose and say that he/she is the _____ of LEHMAN BROTHERS SPECIAL FINANCING INC., the corporation described in and that executed the foregoing instrument, and that he/she signed his/her name thereto under authority of the board of directors, or its equivalent, of said corporation.

WITNESS my hand and seal hereto affixed the day and year first above written.

NOTARY PUBLIC in and for
The State of
My Commission expires:

_____

[2] *Note*: Signatures signed outside of Brazil must be notarized and consularized.

Signature Page to Note and Equity Purchase Agreement *executed on November 1st, 2010, 2010, by and among Jive Investments Holding Ltd., Lehman Brothers Special Financing Inc., LB I Group Inc. and Libro Companhia Securitizadora de Créditos Financeiros.*

<u>SELLER</u>

LB I GROUP INC.

By: _____

Name: Daniel Jason Ehrmann

Title: Vice President

STATE OF          )
                           )
COUNTY OF      )

On this ___th day of _____, 2010, before me, the undersigned, a Notary Public in and for the State of _____, duly commissioned and sworn, personally appeared _____, to me known, who, being by me duly sworn, did depose and say that he/she is the _____ of LB I GROUP INC., the corporation described in and that executed the foregoing instrument, and that he/she signed his/her name thereto under authority of the board of directors, or its equivalent, of said corporation.

WITNESS my hand and seal hereto affixed the day and year first above written.

NOTARY PUBLIC in and for
The State of
My Commission expires:

Signature Page to Note and Equity Purchase Agreement *executed on November 1st, 2010, 2010, by and among Jive Investments Holding Ltd., Lehman Brothers Special Financing Inc., LB I Group Inc. and Libro Companhia Securitizadora de Créditos Financeiros.*

PURCHASER

JIVE INVESTMENTS HOLDING LTD.

By: _____
    Name: Alexandre Marques
    Title: Manager and Authorized Signatory

**Schedule 3.2(a) –Purchase Price Allocation**

| Note | Principal (in BRL) | Allocation |
|------|-------------------|------------|
| LBSF | 6.510.732,4 | 23,1% |
| LB I Group | 21.652.832,0 | 76,9% |
| | **28.163.564,4** | **100%** |

**Schedule 5.2 – Equity**

| Shareholder | Number of Shares | Issuance Price (in BRL) | Allocation |
|---|---|---|---|
| LBSF | 22.781.000 | 22.781.000 | 18,8% |
| LB I Group | 98.347.168 | 98.347.168 | 81,2% |
| | **121.128.168** | **121.128.168** | **100%** |

2

**Schedule 5.4 – ROF Registrations**

**LBSF Note**

| ROF Code | Dated from | Comments |
| --- | --- | --- |
| TA449351 | 8/february/2008 | Payment Schedule modified in 29/apr/2009, 8/july/2009, 21/july/2009, 31/july/2009, 9/oct/2009 e 4/jan/2010 |
| TA527764 | 6/january/2010 | |
| TA531184 | 22/february/2010 | |
| TA536870 | 6/april/2010 | Modified in 7/5/2010 (amortization Schedule reflects the principal payment on this date) |

**LB I Group Note**

| ROF Code | Dated from | Comments |
| --- | --- | --- |
| TA411540 | 5/february/2007 | Modified in 16/july/2010 (amortization Schedule reflects the principal payment on 27/jan/2009) |
| TA527656 | 5/january/2007 | |
| TA530682 | 22/february/2010 | |
| TA536845 | 6/april/2010 | Modified in 7/may/2010 (amortization Schedule reflects the principal payment on this date) |

3

4

**Schedule 9.2(b)**

**(i) –Consulting Agreements**

'General Services Agreeement', between the Company and Tarco Consultoria e Serviços S.C. Ltda. ME, dated of April 17, 2010, and any extensions, and 'General Services Agreeement' – between the Company and Grive Serviços Ltda. EPP, dated of May 17,2009, and any extensions.

**Schedule 9.2(b)(x) – Libro Monthly Expenses**

Libro Monthly Expenses (in BRL)

| | Fixed |
|---|---|
| **Accounting Services** | |
| PwC | 37,789 |
| | |
| **Consulting Services** | |
| Grive/Tarco | Monthly 66.000 + Quarterly 88.000 |
| Rural Monitoramentos | 6,000 |
| | |
| **Citibank Fees (annual)** | 50,000 |
| | |
| **Lawyers** | |
| NPL | |
| Fixed Fees | |
| Albuquerque Pinto Advogados | 1,800 |
| Andrade e Câmara Adv. | 700 |
| Correa da Costa | 4,000 |
| Castro Barros | 15,000 |
| Espinela e Graça | 1,500 |
| Mena Barreto & Arman Advogados | 1,500 |
| | |
| Distressed | |
| Ramos & Zuanon Adv | 10,000 |
| Buranello Passos Adv. | 10,000 |
| Demarest Almeida | 20,000 |
| Moraes & Pitombo | 7,500 |

| | Variables |
|---|---|
| **G&A** | aprox. 40.000 monthly |
| | |
| **Servicer** | |
| | 14% of net collections + 0.14% of UPB + Litigation |
| Recovery (quarterly) | Success, per contract |
| | |
| **Publicity** | |
| M Saraiva | 5,000 |
| | |
| **Lawyers** | |
| Payment of lawyer is a % of collections related to credits, per existing contracts | |
| | |
| | |
| **Taxes** | |
| PIS/ COFINS | Libro: 4,65% of net revenues |
| | Third parties: % of invoice value, per law |
| IRPJ/ CSLL (annual) | Libro: 34% of applicable net income |
| | Third parties: 1,5% of invoice value |
| IRRF | Inter-company notes: 15% of interest payment, plus |
| | gross up |
| IOF | Libro: 0,38% of exchange operation and funds withdraw |

7

**Schedule 11.2(a)(iii) – Litigation**

| # | Nome do Devedor | Tipo e Nº | Vara e Comarca | Estágio Atual | | Data |
|---|---|---|---|---|---|---|
| | **Geral** | | | | | |
| 1 | Chapecó Companhia Industrial de Alimentos | Habilitação de Crédito 018.03.015.471-2 | 3ª Vara Cível da Comarca de Chapecó/SC | Há sentença definitiva reconhecendo o crédito quirografário no valor de R$ 42.394.995,14 | Arruda Alvim e Thereza Alvim Advocacia e Consultoria Jurídica S/C | 23/3/2010 |
| | | Pedido de Restituição de Importâncias  018.04.002.256-8 | | A dívida  foi considerada quirografária pelo Juiz de primeiro grau de jurisdição, por entender qye os adiantamentos são simples contratos de empréstimo.. Há apelação no  Tribunal de Justiça de Santa Catarina,pendente de julgamento. | | |
| | | Execução 2003.035.340-8 | 8a. Vara Cível da Comarca de São Paulo/SP | Suspensas em razão da falência | | |
| | | Cautelar de Arresto 2003.042.550-6 | 8a. Vara Cível da Comarca de São Paulo/SP | | | |
| | | Execução 2003.036076-5 | 17a. Vara Cível Comarca de São Paulo/SP | | | |
| | | Cautelar de Arresto 2003.042549-2 | 17a. Vara Cível Comarca de São Paulo/SP | | | |
| | | Sustação de Protesto 018.03.014736-8 e Ordinária018.03.015471-2 | 3a Vara Cível da Comarca de Chapecó | Sustação procedente e ordinária improcedente. Após transito em julgado, terá inicio a execução da sentença. Na sustação a condenação da Libro é por volta de R$ 1.300,00 (um mil reais). Será tentada obtenção de compensação | | |
| | | Execução 018.03.01557-7 | 3a. Vara Cível da Comarca de Chapecó | Suspensa em razão da falência | Henrique G. Schroeder Advogados Associados | |

8

| 2 | National Olímpia Comércio Importação Exportação Ltda. | Execução Número : 000.1999.005037-8 | 33a Vara Cível do Foro Central da Capital | Após desarquivar os autos, pleiteamos a desconsideração da personalidade jurídica da Trebborre, para que fossem atingidos os bens de seus sócios - Ruby King Investment Ltda. e Eliyahu Grinbom. Contudo, o Juiz proferiu decisão determinando uma tentativa de penhora nos ativos financeiros dos executados antes da desconsideração da personalidade jurídica. Diante do insucesso da medida, foi proferido despacho para que indicássemos o CPF dos sócios do executado. Peticionamos, informando que não há CPF (uma empresa é sediada em paraíso fiscal e o outro é israelense de passagem no Brasil). Indicamos, então, o CPF do procurador e do administrador, ambos brasileiros, requerendo que a penhora on line fosse estendida a eles. Em 30/9/2009, foi deferido este requerimento. Feita a pesquisa sobre a existência de ativos financeiros nos nomes dos administradores, o resultado foi negativo. Sendo assim, os autos aguardam no arquivo para nossa manifestação. | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
| | | Execução Número : 000.1999.005038-6 | 26a Vara Cível do Foro Central da Capital | O processo ainda está na fase de busca de bens da executada. Não há avalistas neste caso. Bens não encontrados. Processo aguardando provocação. | | |
| | | Execução Número : 000.1999.005036-0 | 6a Vara Cível do Foro Central da Capital | O processo ainda está na fase de busca de bens da executada. Não há avalistas neste caso. Houve citação por edital da executada e aguarda-se a abertura de prazo para nos manifestarmos. Penhora: Não há. Próximas providências: Seguir mesmo procedimento dos demais. Requerer desconsideração da personalidade jurídica da empresa, para tentar alcançar administrador e procurador. | | |
| | | Execução Número 000.98.942.366-9 | 21a Vara Cível do Foro Central da Capital | Foi pleiteada a penhora sobre as marcas "Cougar", que foram alienadas em fraude à execução para a empresa Sondai. A penhora foi deferida, o que levou à Sondai a ajuizar Embargos de Terceiro (vide abaixo). Paralelamente, foi pleiteada a penhora sobre as quotas sociais da empresa National Olímpia Industrial da Amazônia de titularidade da Trebore. Contudo, esse pedido ainda não foi apreciado. Penhorados os direitos de uso sobre as marcas "Cougar", "Cougar Boy" e "Cougar Game"; Próximas providências: Aguardar decisão do juiz sobre os efeitos com que será recebida a apelação dos Embargos de Terceiro, para decisão sobre providências de execução sobre as marcas. Ademais, provocar decisão do juiz sobre pedido de penhora das quotas da empresa National Olímpia Industrial da Amazônia. | | |

| 3 | Cooperativa Mista de Pesca Nipo Brasileira | **CRÉDITO LIQUIDADO** | | | **CRÉDITO LIQUIDADO** | |
|---|---|---|---|---|---|---|
| 4 | Companhia Americana Industrial de Ônibus do Norte (CAIO) | Ação de Execução Proc.nº99.935885-5 (antigo nº976/99) | 37ª.Vara Cível do Foro Central da Capital | Nosso pedido de reconhecimento de fraude à execução foi deferido em julgamento de gravo de instrumento , e consequente procederemos a penhora dos bens: 1) Terreno de marinha, n º 06 da quadra "I" do Loteamento Jardim Passo da Barreta, bairro de Boa Viagem, em Recife-PE, matrícula n º 7.034 do 1º Registro Geral de Imóveis da Comarca do Recife-PE; 2) Terreno da marinha, n º 07 da quadra "I" do Loteamento Jardim Passo da Barreta, bairro da Boa Viagem, em Recife-PE, matrícula n º 7.035 do 1º Registro Geral de Imóveis da Comarca do Recife-PE; 3) Casa n º 903, situada na Avenida Conselheiro Aguiar, bairro do Pina, em Recife-PE, matrícula n º 48.665 do 1º Registro Geral de Imóveis da Comarca do Recife-PE; 4) Lote de terreno próprio n º 06-A, resultante do desmembramento dos lotes de terreno n º 06 e 07, da quadra IX, do Loteamento Jardim Mauricéia, situados a Rua Jamaica, bairro da Imbiribeira, em Recife-PE, matrícula n º 47.484 do 1º Registro Geral de Imóveis da Comarca do Recife-PE; 5) Apartamento n º 1101 do Edifício Maria Luciana, situado na Avenida Boa Viagem, n º 2784, bairro de Boa Viagem, em Recife-PE, matrícula n º 51.632 do 1º Registro Geral de Imóveis da Comarca do Recife-PE, o qual foi indeferido. | Espinela e Graça Advogados | 8/12/2009 |
| | | FALÊNCIA – Processo .nº 661/99 | 3ª.Vara Cível da Comarca de Botucatu. | O pedido de habilitação foi feito em 11/01/2001, todos os contratos acima como créditos quirografários. Houve um erro em não destacar a Cédula de Crédito Comercial com Garantia Real, pedimos a reclassificação e obtivemos êxito: LIBRO COMPANHIA SECURATIZADORA DE CREDITOS FINANCEROS X MASSA FALIDA DA COMPANHIA AMERICANA INDUSTRIAL DE ONIBUS CAIO - Ante o exposto, JULGO PROCEDENTE O PEDIDO e o faço para reclassificar o crédito da Autora, no valor de R$ 3.593.534,36, na classificação de "crédito de natureza real". Custas a cargo das partes, indevida a condenação nos honorários, por analogia com a habilitação de crédito. Declaro extinto o processo, com resolução de mérito, com base no art. 269, inc. II, do CPC. Defiro o oportuno apensamento, conforme requerido pelo douto Síndico (fls. 134). P. R. I Botucatu, 31 de julho de 2009. ALFREDO GEHRING CARDOSO FALCHI FONSECA Juiz de Direito | | |
| 5 | Companhia Americana Industrial (CAIO) | FALÊNCIA – Processo .nº 661/99 | 3ª.Vara Cível da Comarca de Botucatu. | Falência (antiga lei) em fase de pagamento de passivos trabalhistas. Havia discussão judicial acerca do valor do crédito da LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS. Fizemos acordo pelo crédito no valor de R$ 6.027.790,25 | Espinela e Graça Advogados | 8/12/2009 |

| 6 | Indústria de Produtos Alimentícios Cory | Recuperação Judicial nº 2352/2005 | 11ª Vara Cível da Comarca de Ribeirão Preto | Cumprimento dos pagamentos previstos no plano de recuperação judicial. | Salles Advocacia | 8/12/2009 |
| | | Ação Ordinária com Pedido de Antecipação de Tutela nº 1.883/2003 | | Foi determinada a exibição de documentos pelo BSB, porém a agência que detinha o crédito não nos enviou até o momento. Trata-se de documento que comprove a origem do crédito questionado, ou seja, produto do pagamento de duplicatas descontadas. A discussão cinge-se a saber se o referido valor foi ou não abatido do montante habilitado na recuperação judicial. A Cory não aceitou em hipótese alguma desistir da ação ordinária, mesmo transigindo com a Libro sobre os créditos com garantia de alienação fiduciária. Oferecemos a desistência da execução contra os avalistas (sócios) como contrapartida, mas nem assim aceitaram o acordo. Atualmente, o processo encontra-se em fase de discussão sobre o laudo pericial e busca de documentação remanescente necessária para conclusão da perícia. | | |
| | | Execução por Quantia Certa contra Devedor Solvente | | Busca de bens que possam garantir a dívida exequenda. Indicamos alguns poucos bens que não são significativos em relação ao montante do débito, porém há discussão se eles podem ou não serem penhorados. Além disso, tentamos descobrir outros bens que possam efetivamente garantir a dívida. | | |
| 7 | GG Presentes Ltda. | Monitória  nº 3.290/2003 | 3ª Vara Cível da Comarca de São José dos Campos | Aguardando julgamento da apelação apresentada pela GG Presentes. | Perez de Rezende - Advocacia | 8/12/2009 |
| | | Recuperação Judicial nº 1.229/2003 | 4ª Vara Cível da Comarca de São José dos Campos | Aprovação do plano de recuperação judicial - primeiros pagamentos ocorreram no início de 2009. | | |
| 8 | Limasa S.A. | Execução de Título Extrajudicial nº 583.00.2009.176935-0 | 32ª Vara Cível do Foro Central da Comarca de São Paulo | Citados os executados Armando Santa Maria, Raul Maselli, e Antonio Maselli, estando pendente a citação da empresa.Os executados já citados, opuseram embargos, os quais já impugnamos. | Espinela e Graça Advogados | 8/12/2009 |
| | | Execução nº 583.00.1999.052109-9 | 14ª Vara Cível do Foro Central da Comarca de São Paulo | Esta execução  está supensa pelos Embargos, opostos ainda na vigência da lei antiga, e houve a realização de perícia requerida pelos embargantes para suposta apuração de cobrança indevida de juros. Assim, apresentado o Laudo pelo Perito, nós concordamos com suas conclusões e apresentamos parecer elaborado pelo nosso assistente técnico (Sr. Paulo). Os embargantes impugnaram o Laudo solicitando reenvio ao Perito para novos esclarecimentos. O juiz determinou nova intimação das partes para encerrar a instrução e proferir sentença. | | |
| | | Execução Contra Devedor Solvente nº 564.01.1998.029364-3 | 5ª Vara Cível da Comarca de São Bernardo do Campo | Tendo em vista a citação do executado Armando Santa Maria, requeremos a penhora on-line de seus ativos financeiros. Paralelamente, tendo em vista a Limasa S/A e o Antonio Maselli ainda não terem sido citados, requeremos a expedição de ofício à DRF, bem como demais órgãos e empresas de telefonia, para tentativa de localização de seus atuais endereços. Foi deferida a expedição desses ofícios em dezembro de 2009, porém, como nesse ínterim eles embargaram a execução da 32ª, requeremos suas citações. | | |

| 9 | Predimar Distribuidora Farmacêutica Ltda. | Processo de execução nº 583.00.1999.073014-2 | 7ª Vara Cível do foro Central da Comarca da Capital- SP | Após pesquisas realizadas nas juntas comerciais de SP e RJ não foi identificada nenhuma participação societária dos devedores. Autos arquivados por falta de bens. Identificaremos outras possíveis pesquisas de modo a identificar algum patrimônio dos devedores ainda existente. | Espinela e Graça Advogados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 10 | USINA MASSAUASSU S/A | Execução nº 001.1988.021227-7 | 4ª Vara Cível da Comarca do Recife-PE | Em fase de penhora no rosto dos autos da execução por título judicial proposta pela Usina Massauassu em face da União Federal, Proc. nº 1999.34.00.019801-0, da 6ª Vara Federal, da Seção Judiciária do Distrito Federal. | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
| | | Execução nº 001.1990.023419-0 | 1ª Vara Cível da Comarca do Recife-PE | Foi registrada a penhora de R$ 13.846.972,47 no rosto dos autos da Execução por Título Judicial proposta pela Usina Massauassu em face da União Federal, Proc. nº 1999.34.00.019801-0, da 6ª Vara Federal, da Seção Judiciária do Distrito Federal. | | |
| | | Execução nº 001.1990.023249-9 | 1ª Vara Cível da Comarca do Recife-PE | Em fase de penhora no rosto dos autos da execução por título judicial proposta pela Usina Massauassu em face da União Federal, Proc. nº 1999.34.00.019801-0, da 6ª Vara Federal, da Seção Judiciária do Distrito Federal. | | |
| | | Busca e Apreensão nº 001.1990.031038-4 | 3ª Vara Cível da Comarca do Recife-PE | Ação suspensa pelo julgamento das seguintes ações contrárias:<br>- Ação Declaratória de Nulidade de Cláusula Contratual, Proc. nº 001.1990029375-7,<br>- Medida Cautelar Inominada, Proc. nº 001.1990.026695-4; ambas propostas por Usina Massauassu S/A em face do Bandepe. | | |
| | | Execução nº 001.1990.023421-1 | 2ª Vara Cível da Comarca do Recife-PE | Os autos foram extraviados, inicmos um processo judicial de restauração. | | |
| | | Execução nº 001.1990.023248-0 | 10ª Vara Cível da Comarca do Recife-PE | Em fase de penhora no rosto dos autos da execução por título judicial proposta pela Usina Massauassu em face da União Federal, Proc. nº 1999.34.00.019801-0, da 6ª Vara Federal, da Seção Judiciária do Distrito Federal. | | |
| 11 | BHM Empreendimentos e Construções S.A. | Execução Contra Devedor Solvente nº 2.237/1996 | 6ª Vara Cível da Comarca de Campinas | Foi apresentado laudo pericial contábil, por perito judicial nomeado pelo Juízo, cuja conclusão do demonstrativo de débito, informa o valor de R$ 2.183.310,30 em 31/05/2008.<br>Intimados a nos manifestar sobre o referido laudo, juntamos laudo pericial contábil divergente, cujo valor do débito encontrado corresponde a R$ 4.810.442,81, em 31/07/2008.<br>Os autos retornaram ao perito para esclarecimentos. | Gilberto Carvalho de Oliveira | 8/12/2009 |
| | | Execução de Título Extrajudicial nº 389/1998 | 1ª Vara Cível da Comarca de Campinas | Suspenso - falência da empresa e falta de bens. | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 12 | Associação de Ensino de Marília Ltda. | Execução 1408/2001 | Apensada à Ação Ordinária movida pela UNIMAR em trâmite perante a 6a.Vara Cível da Comarca de São Paulo/SP | Suspensa até julgamento da ação contra | Luis Henrique da Silva | 23/3/2010 |
| | | Execução 2001.000296-8 controle 1432 | 2a. Vara Cível da Comarca de Marília/SP | Penhroado o imóvel objeto da Matrícula 2295 - 1º CRI de Marília. Feito sobrestado até julgamento da ação ordinária movida pela UNIMAR (contra) | | |
| | | Execução 2001.000297-0 Controle 1915/2005 | 5a. Vara Cível da Comarca de Marília/SP | Feito sobrestado até julgamento da ação ordinária movida pela UNIMAR (contra) | | |
| | | Ordinária Revisional 000.02.196370-3 | 6a. Vara Cível da Comarca de São Paulo?SP | A ação suspendeu as execuções. O perito apurou débito do Banco para a UNIMAR de R$ 4.208.26,81 em ago/2001. Arguída suspeição do perito e requerida nva perícia. Ainda não julgada. | | |
| 13 | Tai-Chi Turismo Ltda. | Execução 1998.032292-7 | 2a. Vara Cível da Comarca de Santo. André/SP | Penhorados os imóveis hipotecados. Embargos julgados parcialmente procedentes para exclusão de capitalização de juros. Banco condenado a pagar hons. de 40% de 20% do valor da causa (R$ 4.731.372,76).Os bens foram arrecadados pelo Fisco e estão indisponíveis. | Castro, Barros, Sobral, Gomes Advogados | 8/12/2009 |
| | | Execução 998.830904-8 | 9a. Vara Cível da Comarca de São Paulo/SP | Penhorados os imóveis hipotecados. Embargos improcedentes. Os bens foram arrecadados pelo Fisco e estão indisponíveis. | | |
| | | Execução 1998.830905-0 | 38a. Vara Cível da Comarca de São Paulo/SP | Penhorados os imóveis hipotecados. Embargos improcedentes. Os bens foram arrecadados pelo Fisco e estão indisponíveis. A esposa do garantidor Chiu Ping Loh interpôs embargos de terceiro (Processo 2004.022141-4 38a. VC), que está pendente de julgamento. | | |
| | | Ordinária de cobrança 1999.007142-9 | 7a. Vara cível da Comarca de Santo André/SP | Ação julgada procedente. Recursos improvidos. Tentativa de penhora "on line" restou negativa. Remetido ofício à à DRF e outros órgãos públicos para pesquisa de bens. | | |
| | | Ação de Prestação de Contas nº 2003.000351-4 | 2a. Vara Cível de Santo André/SP | Julgada procedente a primeira fase. Tai-Chi apresentou contas, com crédito de R$ 77.982.419,89. Banco apresentou contas com saldo a seu favor de R$ 9.350.000,00. Será feita perícia. Honorários do perito oficial arbitrados provisoriamente em R$ 28.000,00 | | |

| 14 | Usina Estreliana Ltda. | Execução - Processo N.º 00191029876-0 | 8.ª Vara Cível da Comarca de Recife – PE | Os autos despareceram do Judiciário, o advogado responsável pediu a instauração de procedimento administrativo para apuração de responsabilidade e aplicação das respectivas sanções, bem como a restauração dos autos. | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
|----|------------------------|----------------------------------------|------------------------------------------|---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|--------------------------------------------------|-----------|
| 15 | Xtal Fibercore Brasil S.A. | Processo de execução nº 114.01.2003.048864-6 | 3ª Varta Cível da Comarca de Campinas-SP | Ação julgada improcedente em 1ª instância. Aguardamos julgamento de recurso de apelação pelo TJ/SP. | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
| 16 | Poliplast S.A | EXECUÇÃO N.º 19997011689-6 | 1ª VARA CÍVEL DA COMARCA DE ANANINDEUA/PA | Processo Arquivado em Cartório. Solicitamos o desarquivamento. | Estamos substituindo | 8/12/2009 |
| | | EXECUÇÃO Nº 1999.109377-9 | 18ª VARA CÍVEL DA COMARCA DE BELEM/PA | A ação foi extinta sem julgamento do mérito, por sentença que acolheu o argumento de irregularidade na representação processual do banco. O Banco interpôs recurso de Apelação contra a sentença, que aguarda julgamento. | | |
| | | EXECUÇÃO Nº 199810104239 | 2ª VARA CÍVEL DA COMARCA DE BELEM/PA | Aguardando o Juiz se manifestar sobre o pedido de alteração do pólo ativo da ação do Banco pela Libro em virtude da Cessão. Devedores citados, mas não há penhora nos autos. | | |
| 17 | ABC Administração Assessoria e Participações | Execução – Proc. 1998.108210-2 | 19ª.Vara Cível da Comarca de Belém | Requeremos a penhora de um imóvel em ananindeua de propriedade de Zilda Oliveira Carrilho (esposa do devedor Adalberto barbosa Carrilho). O Juiz deferiu e expediu-se Carta Precatória. Distribuímos a Carta Precatória em Ananindeua. | Estamos substituindo | 8/12/2009 |
| | | AÇÃO DE DEPÓSITO Nº 1999.1.009376-9 | 19ª.Vara Cível da Comarca de Belém | Em 12/02/2010 a ação foi julgada procedente, condenando o réu ao pagamento da quantia de R$ 20.544,24 em favor do autor. aguarda-se interposição de recurso ou trânsito em julgado. | | |
| 18 | Santa Maria Cia. Nacional de Aplicações | Execução Contra Devedor Solvente Fundado em Título Executivo Extrajudicial nº 02498.041970-9 | Belo Horizonte | As decisões de primeiro e segundo grau deram provimento à execução do Banco. No entanto, ainda aguardamos decisão do STJ quanto ao índice de juros a ser aplicado ao caso concreto. | Guimarães e Tofallini Advogados Associados S/C | 8/12/2009 |

| 19 | Pessoa de Melo Indústria e Comércio | Ação de Busca e Apreensão no. 001.1992.077957-4 | 12a Vara Cível da Comarca de Recife | Foi deferida a liminar, sendo cumprido o mandado de busca, todavia os bens ficaram na empresa, devido a uma suspensão da liminar dada em 23.09.93, decisão esta que foi agravada. Autos conclusos desde 2004. Atualmente com a determinação do CNJ de julga todas as ações anteriores a 2005, deveremos ter uma decisão em breve. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Ação de Execução no. 001.1992.077961-2 | 5a Vara Cível da Comarca de Recife | Temos mandado de penhora registrado sobre os direitos creditórios de 4870 que a Pessoa de Mello tem contra a União Federal, no valor de R$ 20.284.697,88 | | |
| | | Ação de Execução no. 001.1992.077959-0 | 8a Vara Cível da Comarca de Recife. | Solicitamos mandado de penhora, já deferido, em fase de expedição já em nome da Libro, para penhorar os direitos creditórios de 4870 que a Pessoa de Mello tem contra a União Federal | | |
| 20 | Agicam Agro Indústria de Camaratuba | Ação de Execução no. 001.1991.0179-8 | 5ª.Vara Cível da Comarca de Recife | Recentemente trocamos de advogado neste caso e o novo está solicitando um auto de penhora, semelhante ao caso Pessoa de Mello para registro em Brasília, na ação em que a Agicam possui direitos creditórios. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| 21 | Acaia Exportação e Importação Ltda. | Ação Cautelar de Arresto – Proc. 643/00 | 1ª. Vara Cível da Comarca do Espírito Santo do Pinhal - SP | A empresa teve a falência decretada. Nosso crédito foi habilitado como ACC, porém o processo encontra-se em fase de arrecadação de bens para posterior avaliação judicial. Estamos providenciando nova pesquisa de bens em nome dos garantidores nos respectivos endereços localizados no SERASA. | Celso de Lima Buzzoni | 8/12/2009 |

15

| 22 | Cantareira Distribuidora de Veículos | Processo de execução nº 583.00.1999.006956-5 | 40ª Vara Cível do Foro Central da Comarca da Capital-SP | Processo arquivado, por falta de bens | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
|---|---|---|---|---|---|---|
| | | Processo de execução nº 583.01.1999.117580-5 | 2ª Vara Cível do Foro Regional de Santana | O processo de execução foi convertido em monitória. Aguarda-se a citação dos réus. | | |
| | | Processo de execução nº 583.01.1999.117581-8 | 1ª Vara Cível do Foro Regional de Santana | Processo arquivado, por falta de bens | | |
| | | Processo de falência nº 583.00.1999.010122-2 | 23ª Vara Cível do Foro Central da Comarca da Capital- SP | Temos um crédito habilitado no valor de R$ 3.728.173,21 | | |
| | | Processo de execução nº 583.01.2000.006555-8 | 2ª Vara Cível do Foro Regional de Santana | Processo arquivado, por falta de bens | | |
| | | Ação possessória nº 583.01.1999.137099-3 | 6ª Vara Cível do Foro Regional de Santana | Processo arquivado, por falta de bens | | |
| | | Ação monitória nº 583.00.1999.028827-7 | 20ª Vara Cível do Foro Central da Comarca da Capital-SP | Processo arquivado por falta de bens | | |
| 23 | Brasinca Industrial S.A.(SPSCS Industrial S.A.) | Monitória nº 583.00.2000.635135-2 | 24ª Vara Cível do Foro Central da Comarca de São Paulo | Iniciamos a execução provisória no final de 2009. A liquidação deverá ser realizada por arbitramento e foi nomeado o Sr. Arles Denapoli como perito (indicamos o Sr. Alexandre Dib como assistente técnico). Houve apresentação de quesitos por ambas as partes e nós impugnamos os quesitos deles. O Juiz disse que analisaria essas questões apenas depois da perícia. Apresentamos embargos de declaração, os quais foram acolhidos, determinando-se o início da perícia nos termos que pedimos. | Ferro, Castro, Neves, Daltro & Gomide Advogados | 8/12/2009 |
| | | Ação de Obrigação de Fazer 583.00.2007.239403-2 | 14ª Vara Cível do Foro Central da Comarca de São Paulo | Apresentamos contestação. Estamos aguardando a publicação do despacho determinando a especificação de provas. | | |
| 24 | Alumbras Alumínio do Brasil Indústria e Comércio Ltda. | Ação Monitória no. 2005.209.0066216-1 | 5a. Vara Cível da Comarca de Belford Roxo | Aguardando julgamento TJRJ | Sayão e Sanches Advogados Associados | 8/12/2009 |
| | | Ação de Execução - no. 2005.209.008842-3 | 3a. Vara Cível do Foro Regional da Barra da Tijuca - RJ | Aguardando julgamento de embargos à execução - Processo Nº 0000350-94.2007.8.19.0209 | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 25 | Irmãos Ribeiro | Execução 875/03 | 3a Vara Cível da Comarca de Campinas | Realizada a penhora sobre lotes de terras totalmente desonerados ( 107) localizados em Poços de Caldas. Avaliaremos a conveniência para realização da penhora sobre outros bens já onerados. Quanto aos imóveis de Espirito Santo do Pinhal, o cartorio apresentou exigência para registro das penhoras. Houve contatos dos advs. da parte contrária para tentar celebrar um acordo, sendo a oferta irrisória frente ao débito atualizado. Nova reunião conjunta está marcada para final de março. | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
| 26 | Upa-Umbuzeiro Participações | Execução no. 001.1994.016115 0 | 11a Vara Cível da Comarca de Recife PE | Os devedores foram citados por edital em Novembro de 2007, apresentaram contestação e o processo está aguardando julgamento | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
| 27 | Construtora Rodrigues Sá Ltda. | Execução Contra Devedor Solvente n° 2.332/1996 | 4ª Vara Cível da Comarca de São José dos Campos | Avaliação do imóvel hipotecado e penhorado | Celso de Lima Buzzoni | 8/12/2009 |
| 28 | Suarez Incorporações Ltda. | Execução Contra Devedor Solvente n° 140.99.637155-4 | 17ª Vara Cível da Comarca de Salvador | Processo arquivado | Oliveira e Leite Advogados | 8/12/2009 |
| 29 | Icatu Comércio e Exportação | Execução 215/02 | 3a Vara Cível da Comarca de Campinas | Foi firmado acordo em Junho 2008 pelo pagamento de R$ 870.000, parcelados e corrigidos, sendo: R$ 50.000 de entrada e 41 parcelas de R$ 20.000, em andamento. | Celso de Lima Buzzoni | 8/12/2009 |
| 30 | Suape Textil S.A. | Recuperação Judicial nº 210.2007.006265-6 | Segunda Vara Cível da Comarca do Cabo de Santo Agostinho/PE | Os créditos da Libro foram devidamente habilitados. Pelo Banco América do Sul, o crédito foi habilitado como quirografário no valor de R$ 1.379.388,12 e pelo BANDEPE, como "credores classe II", pelo valor de R$ 4.823.423,16. | Eduardo Meira Lins<br><br>Laurindo de Albuquerque S/C | 8/12/2009 |
| 31 | Show pla Brasil Ltda. | Busca e Apreensão 1999.9491014 | 34a. Vara Cível da Comarca de São Paulo/SP | Feita a busca mas não a apreensão. Máquinas deixadas em depósito com empregados da devedora. Houve várias substituições de depositário e atualmente as máquinas estão desaparecidas. | Guedes Nunes, Oliveira e Roquim Sociedade de Advogados | 8/12/2009 |
| | | Execução 1999.00753-7 | 23a. Vara Cível da Comarca de São Paulo/SP | Empresa citada; penhoradas máquinas. Exceção de incompetência e embargos rejeitados. Autos suspensos em razão da falência | | |
| | | Execução 1999.004923-5 | 13a. Vara Cível da Comarca de São Paulo/SP | Empresa citada; penhoradas máquinas. Exceção de incompetência e embargos rejeitados. Autos suspensos em razão da falência | | |
| | | Execução 012.10.58389-2 | 4a. Vara Cível da Comarca de Manaus/AM | Show pla citada mas não encontrados bens penhoráveis. Ofícios à DRF e outros restaram negativos. Requerida a inclusão dos sócios no polo passivo. Aguardando decisão. | | |

| 32 | Verde Mar Veículos S.A. | Execução - 222.1995.000215-0 | 3ª Vara Cível da Comarca de Jaboatão dos Guararapes-PE | Embargos à execução julgados procedentes. Em sede de recurso de apelação, o Tribunal de Justiça anulou a sentença e determinou o prosseguimento do feito executivo. Interposto Recurso Especial pela Verde Mar, o qual aguarda julgamento no STJ. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| | | Execução - 222.1995.000170-6 | 1ª Vara Cível da Comarca de Jaboatão dos Guararapes-PE | Opostos embargos à execução, os quais não foram localizados pelo cartório. O processo foi redistribuído por perda de competência de matéria. | | |
| | | Execução nº 001.1995.053076-0 | 8ª Vara Cível da Comarca de Recife-PE | Ante o fechamento da empresa, restaram infrutíferas as tentativas de citação dos executados. Acreditamos que o crédito esteja prescrito. | | |
| 33 | Tateno Comércio de Auto Peças Ltda. | Execução nº 1999.207.596-9 | 4a. Vara Cível do Foro Regional Jabaquara | O imóvel penhorado foi arrecadado na falência da Petrofort | Advocacia Luis Henrique da Silva | 23/3/2010 |
| | | | | Firmada em set/2008 Promessa de Cessão Parcial do Crédito. Processo prosseguirá apenas com garantia do imóvel da Mateo Bei/SP | | |
| | | Execução nº 1998.830906-3 | 24a. Vara Cível da Comarca de São Paulo/SP | Firmada em set/2008 a Cessão integral desse crédito | | |
| 34 | Iguaçu Celulose Papel S.A. | Processo de execução nº 583.00.1998.827367-9 | 38ª Vara cível do Foro Central da Comarca da Capital | Celebrado acordo entre as partes. | Pereira Alves Advogados Associados | 8/12/2009 |
| | | Ação monitória nº 01/2004 | 2ª Vara Cível da Comarca de São José dos Pinhais | Celebrado acordo entre as partes | | |
| 35 | Nordica Veículos Ltda. | Processo de execução nº 558/1999 | 9ª Vara Cível da Comarca de Curitiba-PR | Celebrado acordo entre as partes | Pereira Alves Advogados Associados | |
| 36 | Transimaribo Ltda. | Ação de Reintegração de Posse nº 428/2001 | 11ª Vara Cível da Comarca de Curitiba-PR | Celebrado acordo entre as partes | Guimarães e Advogados Associados | |

| 37 | CCO Empreendimentos Imobiliários Ltda. | Execução por Título Executivo Extrajudicial n° 583.00.1996.922552-9 | 14ª Vara Cível do Foro Central da Comarca de São Paulo | O processo recentemente retornou do Tribunal de Justiça de São Paulo. No entanto, como não foram localizados bens para execução, não conseguimos prosseguir com o processo. | Freitas e Barbosa Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 38 | CCO Construtora Centro Oeste Ltda. | Execução por Título Executivo Extrajudicial n° 583.00.1996.815685-9 | 27ª Vara Cível do Foro Central da Comarca de São Paulo | Execução encontra-se suspensa para julgamento dos Embargos à Execução. | Freitas e Barbosa Advogados Associados | 8/12/2009 |
| 39 | Unipark | Ação de Execução - nº 000.96.705071-9 | 26a.Vara Cível do Fôro Central de São Paulo | Em fase de registro de penhora em lotes na praia da Baleia SP. Os lotes não tem liquidez pois estão localizados em área de mata atlântica nativa. | Celso de Lima Buzzoni | 8/12/2009 |
| | | Execução nº 583.00.1996.932138-5 | 21a. Vara Cível do Fôro Central de São Paulo | **CRÉDITO CEDIDO** | | |
| | | Execução nº 1996.633870-9 | 22a.Vara Cível do Fôro Central de São Paulo | **CRÉDITO CEDIDO** | | |
| 40 | Município de São Lourenço da Mata (Camaragibe) | Ação revisional de contratos 97.05.05799-0 | 5ª Vara Federal de Recife | Após apresentação de conta de liquidação, o juiz determinou a intimação pessoal das Municipalidades, CEF e Bandepe. Todos foram intimados. Aguarda-se a juntada das manifestações. | Guedes Nunes, Oliveira e Roquim Sociedade de Advogados | 8/12/2009 |
| 41 | Olvepar Paraná S.A. Indústria | Ação Monitória Processo 3/2001 atual 2134/2008 Código 15031 | 1a. Vara Especializada em Direito Bancário da Comarca de Cuiabá/MT | Aguardando julgamento ou determinação de prova pericial | Freitas e Barbosa Advogados Associados | |
| | | Pedido de Restituição de Importâncias | Vara Especializada em Falências e Concordatas da Comarca de Cuiabá/MT | STJ confirmou o direito de restituição à Libro. Decisão transitada em julgado. Feita petição requerendo o pagamento de R$ 16 mm. Autos com o juiz para decisão | | 23/3/2010 |
| 42 | Olvepar da Amazônia S.A. Indústria e Comércio | **A OLVEPAR PARANÁ S.A. INDÚSTRIA E A OLVEPAR DA AMAZÔNICA S.A. INDÚSTRIA E COMÉRCIO SÃO A MESMA EMPRESA ATUALMENTE DENOMINADA OLVEPAR S.A. INDÚSTRIA E COMÉRCIO.** | | | | Freitas e Barbosa Advogados Associados | |

| 43 | Lar S.A. Empreendimentos e Participações | Processo de execução nº 372/1999 | 10ª Vara Cível da Comarca de Curitiba-PR | Fase de execução de honorários advocatícios. Aguardando despacho do juiz quanto a concordância do exeqüente – Dr. Iguacemir Gonálves Franco – dando por liquidado o seu crédito. Existe um saldo depositado nos autos de R$ 27.510,89, o qual acreditamos será liberado para ao Banco. | Guimarães & Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 44 | Companhia de Veículos | Prccesso de execução nº 125/1999 | 20ª Vara Cível da Comarca de Curitiba-PR | Fase de depósito de honorários periciais a a fim de elaborar os cálculos de liquidação da sentença. Valor habitrado dos honorários é de R$ 2.600,00.  A quantia foi depositada pela Libro, aguarda-se conclusão da perícia. Os autos foram retirados em carga pelo perito, Sr. Ronald W. Junior, em 24.02.2010. | Guimarães & Advogados Associados | 8/12/2009 |
| 45 | Indústrias Químicas Carbomafra | Processo de execução nº 124/1999 | 2ª Vara Cível da Comarca de Curitiba-PR | A execução está suspensa, em face da falencia da devedora, competindo à Libro promover a habilitação de seu credito junto ao juizo falimentar. Os autos foram arquivados em 20.07.2009. | Guimarães & Advogados Associados | 8/12/2009 |
| | | Processo de execução nº 127/1999 | 4ª Vara Cível da Comarca de Curitiba-PR | Processo arquivado em 29.07.2009, perdemos parcialmente em 1ª instância e em 2ª instância não foi reconhecido título executivo extrajdicial | | |
| 46 | Agro Industrial Irmãos Zulli Ltda. | Execução 2238/1999 - código 5772

Execução Processo 7956/19 - código 8448 | 3a. Vara Cível da Comarca de Varzea Grande/MT

1a. Vara Cível da Comarca de Varzea Grande/MT | Crédito cedito. | Zampiere e Campos Advogados Associados | 23/3/2010 |
| 47 | Oliveira Costa Ltda. | Execução - 16928/1996 | 5ª Vara Cível da Comarca de São Luis-MA | Processo suspenso/arquivado por falta de bens | DV Consultores e Advogados | 8/12/2009 |

21

| 48 | CBP Central Brasileira Comércio e Indústria de Papéis Ltda. | Ação Monitória Processo 200300525677 | 3a. Vara Cível da Comarca de Goiani/GO | Processo suspenso (na fase de produção de provas) em razão de ação revional movida pela devedora | Oliveira e Lopes Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| | | Ação revisional e de manutenção de posse movida pela devedora  2003.01389831 controle 1305/03 | 3a. Vara Cível da Comarca de Goiani/GO | Julgada improcedente em maio/2008.  Em fase de recurso. | Alves Teixeira & Advogados Associados Ordinária: Felsberg Advogados | |
| | | Execução 200301271601 | 10a. Vara Cível da Comarca de Goiania/GO | Penhorado um galpão para cargas em Goiania com 393 m2. Em fase de reforço de penhora sobre o apto. em SP | Oliveira e Lopes Advogados Associados | |
| 49 | Equipe Distribuidora de Medicamentos Comércio e Representação Ltda. | Falência 879/2002 | 4ª VARA CÍVEL DA COMARCA DE LONDRINA/PR | Somos quirografários e a situação da falência é a seguinte: Os bens recuperados atingem, mais ou menos, R$ 10MM, As indenizações trabalhistas atingem, mais ou menos, R$ 4MM, Os pedidos de devoluções de mercadorias, por compras efetuadas em datas próximas da data da concordata, já transformados em devolução em dinheiro e já com determinação do STJ, atingem, mais ou menos, R$20MM, Os impostos devidos nas três esferas (federal, estadual e municipal), atingem, mais ou menos, R$100MM, O Síndico vai ratear 60% do valor recuperado para os pedidos de devoluções de mercadorias e vai ratear 40% do valor recuperado para as indenizações trabalhistas. Nosso crédito é, portanto, irrecuperável. | Dietrich e Marinho Advogados Associados | 8/12/2009 |
| 50 | Destilaria Gameleira | Ação de Execução nº 001.1995.079982-4 | 17ª Vara Cível da Comarca de Recife | Em decorrência da liquidação do Banco Mercantil de Pernambuco, (devedora pertence ao mesmo Grupo Econômico) todos os bens foram indisponibilizados pela Justiça, inclusive dos avalistas. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Ação de Execução nº 001.1996.067592-3 | 16ª Vara Cível da Comarca de Recife | Em decorrência da liquidação do Banco Mercantil de Pernambuco, (devedora pertence ao mesmo Grupo Econômico) todos os bens foram indisponibilizados pela Justiça, inclusive dos avalistas. Os autos não estão sendo localizados no Judiciário, talvez teremos que iniciar um novo processo de restauração. | | |
| | | Ação de Execução nº 583.00.1995.736366-9 | 19ª Vara Cível do Foro Central de São Paulo - SP | Em decorrência da liquidação do Banco Mercantil de Pernambuco, (devedora pertence ao mesmo Grupo Econômico) todos os bens foram indisponibilizados pela Justiça, inclusive dos avalistas. Existe uma concordata em Porto Alegre do Norte, porém está sujeita a mesma restrição por conta do processo de liquidação do BC | | |

| 51 | Noraco S.A. Indústria e Comércio | Ação de Execução no. 001.1996.016433-3 | 5a Vara Cível da Comarca de Recife - PE | Em decorrência da liquidação do Banco Mercantil de Pernambuco, (devedora pertence ao mesmo Grupo Econômico) todos os bens foram indisponibilizados pela Justiça, inclusive dos avalistas. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Ação de Execução no. 001.1995.093590-6 | 15a Vara Cível da Comarca de Recife - PE | | | |
| 52 | Companhia Geral de Melhoramentos em Pernambuco | Concordata nº001.1995.064852-4 | 18a. Vara Cível da Comarca de Recife PE | Crédito habilitado na concordata como quirografário. Ainda não foram feitos pagamentos | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| 53 | Companhia Agropecuária Vale do Ribeirão | Ação de execução nº 001.1996.016431-7 | 9ª.Vara Cível de Recife | Em decorrência da liquidação do Banco Mercantil de Pernambuco, (devedora pertence ao mesmo Grupo Econômico) todos os bens foram indisponibilizados pela Justiça, inclusive dos avalistas. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| 54 | Mercantil de Empreendimentos e Participações | Ação de Execução no. 001.1995.084632-6 | 17a Vara Cível da Comarca de Recife | Os devedores foram citados e foi requerida a expedição de ofício à Receita Federal visando encontrar bens dos executados passíveis de penhora. Houve, posteriormente petição dos advogados pugnando pela suspensão da ação face à indisponibilidade dos bens dos executados em decorrência da liquidação do Banco Mercantil de Pernambuco, (devedora pertence ao mesmo Grupo Econômico) todos os bens foram indisponibilizados pela Justiça, inclusive dos avalistas. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Ação de Execução no. 001.1995.083871-4 | 16a Vara Cível da Comarca de Recife | O processo havia sido extinto por "inépcia da parte exeqüente", porém, foram interpostos embargos de declaração, com efeito modificativo, o qual foi acolhido, prosseguindo-se assim com a execução, | | |
| | | Concordata Preventiva No. 001.1995.064851-6 | 18a Vara Cível da Comarca de Recife | Somos credores quirografários e não há previsão para recebimento, existem credores preferenciais: créditos trabalhistas e créditos com garantia real; ainda assim, os bens dos executados estão indisponíveis em decorrência da liquidação do Banco Mercantil de Pernambuco, (devedora pertence ao mesmo Grupo Econômico) todos os bens foram indisponibilizados pela Justiça, inclusive dos avalistas. | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 55 | Plagon Plásticos do Nordeste S.A. | Ação de Busca e apreensão - 001.2000.017170-1 | 13ª Vara Cível de Recife-PE | andamento da ação suspenso em virtude de ação revisional  001.1998.018278-7 | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Ação de Busca e Apreensão - 001.2000.016881-6 | 13ª Vara Cível de Recife-PE | andamento da ação suspenso em virtude de ação revisional  001.1998.018278-8 | | |
| | | Execução - 001.2000.020979-2 | 13ª Vara Cível de Recife-PE | andamento da ação suspenso em virtude de ação revisional  001.1998.018278-9 | | |
| | | Ação de Busca e Apreensão - 0965/ 1998 | 13ª Vara Cível de Recife-PE | andamento da ação suspenso em virtude de ação revisional  001.1998.018278-10 | | |
| | | Ação de Busca e Apreensão - 15332/ 2000 | 13ª Vara Cível de Recife-PE | andamento da ação suspenso em virtude de ação revisional  001.1998.018278-11 | | |
| | | Ação revisional - 001.1998.018278-7 | 13ª Vara Cível de Recife-PE | deverá ser determinada a realização de perícia contábil | | |
| | | Ação de Busca e Apreensão - 001.2001.017456-8 | 9ª Vara Cível de Recife-PE | andamento da ação suspenso em virtude de ação revisional  001.1998.018278-11 | | |
| 56 | Mastec Brasil S.A. | Processo de falência nº 000.04.052396-9 | 7ª Vara Cível do Foro Central da Comarca da Captial- SP | Habilitamos crédito pelo valor de R$ 6.213.070,25, contudo o juízo decidiu a impugnação do Banco Sudameris Brasil no valor de R$ 4.675.000,00, como quirografário. A habilitação de crédito não teve recurso e o incidente está arquivado. Tal crédito aguarda o desfecho da Falência para ser pago. | Celso de Lima Buzzoni | 8/12/2009 |
| 57 | Olvebra Industrial | Execução no. 052/1.04.0001153-8 | 1a Vara Cível da Comarca de Eldorado do Sul – Rio Grande do Sul | Na execução temos penhora de imóvel onde era o parque industrial da empresa. A avaliação judicial do bem está em fase final, porém não levaremos o bem à hasta púlbica, pois ele tem valor de R$ 890 mil e possui mais de 30 milhões em dívidas tributárias e fiscais. | SNS Advogados | 8/12/2009 |
| 58 | Olvebra S.A. | **CRÉDITO INEXISTENTE, FOI UMA OPERAÇÃO DE CAUÇÃO DO ABN QUE NÃO FOI UTILIZADA** | | | Silveira & Lacerda, Andreazza & Erpen | 8/12/2009 |

| 59 | Henisa Hidroeletromecância Empresa Nacional de Instalações Ltda. | Processo de execução nº 583.00.1998.738296-0 | 22ª Vara Cível do Foro Central da Comarca da Capital- SP | Havíamos obtido êxito em primeira instância, porém o Tribunal de Justiça reformou tal decisão, invertendo o ônus da sucumbência . Dessa forma o advogado da outra parte está executando seus honorários. Interpusémos recurso da decisão que havia determinado a penhora do valor executado. Negou-se provimento ao Agravo de Instrumento que interpusémos, bem como aos embargos de declaração. Estamos aguardando a publicação dessa decisão. Provavelmente, assim que isso ocorrer, a outra parte efetivará a penhora do dinheiro. | Pinheiro Guimarães Advogados | 8/12/2009 |
| | | Ação Monitória nº 583.00.2009.195257-8 | 37ª Vara Cível do Foro Central da Comarca da Capital-SP | Formulamos pedido de antecipação de tutela para compensar nosso crédito com o débito de honorários da execução. Foi negado tal pedido e interpusémos Agravo de Instrumento, o qual também foi rejeitado pelo TJ. Os réus foram citados e apresentaram embargos monitórios, suspendendo a ação. Em decisão publicada em 18.03, fomos intimados a impugnar os embargos no prazo de 15 dias. Além disso, apresentamos pedido de arresto (nos próprios autos) dos bens dos bens dos réus que localizamos (sítios no interior de SP). O Juízo indeferiu esse pedido em 16.03, em decisão ainda não publicada. Interporemos agravo dessa decisão. | | |
| | | Processo de falência nº 583.00.1998.724336-5 | 10ª Vara Cível do Foro Central da Comarca da Capital- SP | Crédito habilitado no valor de R$ 2.111.035,32 em nome do Banco ABN. A falência está em fase de tentativa de venda dos bens da massa – designada perícia para avaliação. Aaguardando os próximos atos da massa falida. | | |
| | | Processo de execução nº 583.00.1999.070601-3 | 4ª Vara Cível do Foro Central da Comarca da Capital-SP | Neste processo, fomos condenados a pagar uma sucumbência de R$ 250.000,00, aproximadamente para o advogado do executado, mas atualmente o advogado ainda não conseguiu levantar o dinheiro depositado em juízo por conta de um agravo de instrumento( nº 7.288317-7- 18ª Câmara de Direito Privado) interposto por ele mesmo, requerendo ao juiz que quem pagasse fosse o Banco Sudameris e não a Libro, o TJ acatou tal pedido e entendeu que a Libro não é parte, e foi ela quem fez o depósito. O advogado levantou os honorários e o processo foi arquivado. | | |

| | | | | | |
|---|---|---|---|---|---|
| 60 | Henipack Comércio de Plásticos Ltda. | Processo de execução nº 583.02.1999.195077-2 | 3ª Vara Cível do Foro Regional de Santo Amaro- SP | processo arquivado | Péres de Souza Advogados | 8/12/2009 |
| | | Processo de execução nº 583.00.1998.034953-7 | 11ª Vara Cível do Foro Central da Comarca da Capital-SP | O nosso advogado requereu a mudança de ação de execução para monitória por economia processual e riscos de sucumbência. Contudo, o juiz não aceitou tal modificação, o nosso advogado Agravou e conseguiu a reversão da decisão no TJ. Fase de especificação de provas. | | |
| | | Processo de falência nº 583.00.2005.093898-1 | 10ª Vara Cível do Foro Central da Comarca da Capital- SP | Aguardando os próximos atos da massa falida | | |
| 61 | Cooperativa Vinícola Aurora Ltda. | NÃO HÁ PROCESSO LEGAL. Os pagamentos previstos no instrumento de confissão de dívida estão sendo realizados em favor dos credores, na proporção dos respectivos créditos. | | | NÃO HÁ ADVOGADO | 8/12/2009 |
| 62 | Santa Cruz S.A. Administração Mercantil e Industrial | Execução no. 583.00.1997.719084-7 | 12a.Vara Cível do Fôro Central de São Paulo | A execução prossegue somente contra os garantidores, um deles faleceu. Tivemos acesso a informações do inventário, porém os bens relacionados são apenas alguns automóveis antigos, linhas telefônicas e outros objetos de valor desprezível. | Advocacia Luis Henrique da Silva | 8/12/2009 |
| | | Execução no. 583.00.1997.719083-6 | 27a.Vara Cível do Fôro Central de São Paulo | O imóvel de moradia de um dos garantidores foi dado em hipoteca e avaliado por R$ 416.000. Os filhos deste depositaram em juízo este valor que será levantado em breve pela Libro | | |
| 63 | Biscayne Comercial Ltda. | Habilitsação de crédito em falência 31955/0000 | 4ª Vara de Falências de Curitiba | Houve sentença homologando parcialmente o crédito habilitado, determinando a inclusão no quadro de credores pelo valor de R$ 7.498.438,40. Segundo advogado do caso, a falência não terá patrimônio para a satisfação do crédito. Mediante novas pesquisas, tentaremos levantar situação patrimonial do garantidor. | Pereira Alves Advogados Associados | 8/12/2009 |

| 64 | Calçados Ortopé S.A. | Execução  10200000371 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | Lessa & Pilla Advogados | 8/12/2009 |
|---|---|---|---|---|---|---|
| | | Execução  10200000363 | 1ª Vara Cível da Comarda de Gramado-RS | aguardando cumprimento de carta precatória em PB | | |
| | | Execução  10200000312 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000401 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200037364 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000274 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200037887 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000037 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000150 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000380 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000088 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200039642 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspensão para a localização de bens para penhora | | |
| | | Execução  10200000258 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000282 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000304 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000290 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000320 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000398 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000223 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |
| | | Execução  10200000240 | 1ª Vara Cível da Comarda de Gramado-RS | processo suspenso aguardando cumprimento de carta precatória | | |

| 65 | Indústria Cerâmica da Amazônia S.A. Inca | Execução no. 1999.100.9380-4 | 16a Vara Cível da Comarca de Belém - PA | Os processos estão arquivados e a empresa faliu | Roboredo Advogados | 8/12/2009 |
| | | Falência no. 1999.1.01172-0 | 12a Vara Cível da Comarca de Belém - PA | | | |
| 66 | Irmãos Tonelli & Cia. Ltda. | Execução de Título Extrajudicial nº 510/98 | 2ª Vara Cível da Comcar de Londrina | Processo suspenso por falta de bens | Shiroko Numata e Advogados S/C Ltda. | 8/12/2009 |
| | | Execução de Título Extrajudicial nº 537/98 | 9ª Vara Cível da Comarca de Londrina | Processo suspenso por falta de bens | Shiroko Numata e Advogados S/C Ltda. | |
| | | Execução nº 703/97 | 8ª Vara Cível da Comarca de Londrina | Processo suspenso por falta de bens | Zanetti e Zambrim Advogados Associados | |
| | | Execução nº 638/97 | 4ª Vara Cível da Comarca de Londrina | Processo suspenso por falta de bens | Zanetti e Zambrim Advogados Associados | |
| | | Execução nº 658/97 | 10ª Vara Cível da Comarca de Londrina | Processo suspenso por falta de bens | Zanetti e Zambrim Advogados Associados | |
| 67 | Musical São Paulo Comércio de Instrumentos Musicais Ltda. | Execução nº 583.00.1998.931606-9 | 23ª Vara Cível do Foro Central de SP | Solicitaremos a desistência de tal processo, uma vez que, além de não haver bens nem garantias que possibilitem recuperação do crédito, o processo ainda estava fadado à improcedência e ao pagamento de sucumbência pela Libro - uma vez que seria aplicada a Súmula nº 233, do STJ. | Péres de Souza Advogados | 8/12/2009 |
| | | Execução nº 583.00.1998.931607-5 | 2ª Vara Cível do Foro Central de SP | Processo extinto. Solicitamos a desistência de tal processo, uma vez que, além de não haver bens nem garantias que possibilitem recuperação do crédito, o processo ainda estava fadado à improcedência e ao pagamento de sucumbência pela Libro - uma vez que seria aplicada a Súmula nº 233, do STJ. | | |
| 68 | MSP Comércio de Instrumentos Musicais Ltda. | Não localizado processo | Não localizado processo | Não localizado processo | NÃO HÁ ADVOGADO | 8/12/2009 |

29

| | | | | | | |
|---|---|---|---|---|---|---|
| 69 | Reiplas Indústria e Comércio de Material Elétrico Ltda. | Recuperação Judicial nº 583.00.2005.011760-2 | 2ª Vara de Falências e Recuperação Judicial do Foro Central da Comarca de São Paulo | Cumprimento do plano de recuperação judicial. As 2 primeiras parcelas foram pagas. | Péres de Souza Advogados | 23/3/2010 |
| | | Execução Hipotecária nº 583.00.2005.034200-2 | 41ª Vara Cível do Foro Central da Comarca de São Paulo | Aguardando decisão do Tribunal de Justiça. | | |
| | | Execução Hipotecária nº 583.00.2005.034201-0 | 11ª Vara Cível do Foro Central da Comarca de São Paulo | Os Executados recorreram da decisão de primeiro grau e estamos aguardando decisão do Tribunal de Justiça. | | |
| | | Obrigação de Fazer nº 060.01.2006.009277-9 | 4ª Vara Cível da Comarca de Barueri | Citação dos co-réus Carla e Carlos por edital. | | |
| 70 | Cemape Transportes | Ação Monitória nº 001.08.210.205-0 | 1a. Vara Cível da Comarca de Manaus/AM | Autos suspensos até julgamento da ação revisional movida pela empresa | Guedes Nunes, Oliveira e Roquim Sociedade de Advogados | 8/12/2009 |
| 71 | Navezon Linhas Internas da Amazonia S.A. | Execução 012.10.14269-1 | 2a.Vara Cível da Comarca de Manaus/AM | Ação julgada extinta em razão da Súmula 233 do STJ. Requerido o desentranhamento dos documentos . Nova ação deverá aguardar o desfecho da ação revional movida pela devedora | Guedes Nunes, Oliveira e Roquim Sociedade de Advogados | 8/12/2009 |
| 72 | Asfaltos Califórnia | **PUT BACK** | | | | |
| 73 | Serrarias Campos de Palmas S.A. | Execução nº 594/2009 | 18ª Vara Cível de Curitiba | apresentada defesa dos devedores, a qual foi impugnada pela Libro. Juiz designou audiência de conciliação para 13.4.2010 | Guimarães & Advogados Associados | 8/12/2009 |
| | | não há processo judicial | | | | |
| | | Execução nº 584/2009 | 15ª Vara Cível de Curitiba | ajuizada a execução, foi apresentada defesa e réplica pelo. Aguarda-se pronunciamento do juiz. | | |
| 74 | Associação Evangélica Beneficente de Campinas | **CRÉDITO LIQUIDADO** | | | **CRÉDITO LIQUIDADO** | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 75 | Yara Hanna Comércio e Indústria | Ação Monitória nº 24030202857 | 1ª Vara Cível da Comarca de Vitória | realizada audiência de conciliação, autos com o juiz para proferir despacho | Arnaldo Arruda da Silveira | 8/12/2009 |
| | | Ação Monitória nº 24030202816 | 5ª Vara Cível da Comarca de Vitória | Sentença julgou procedente nossa ação, condenando a Yara Hanna ao pagamento de R$ 1.027.487,34, acrescido de custas e atualização monetária. Interposto recurso pela empresa que, após respondido, foi remetido ao TJ/ES. Foi designada pauta para julgamento do recurso em 30.3.2010. | | |
| 76 | Nikkor Industrial S.A. | Execução nº 583.00.2000.646125-5 | 34ª Vara Cível do Foro Central da Comarca de São Paulo | Embargos à execução julgados extintos. Expedida carta precatória para avaliação e praceamento do imóvel hipotecado/penhorado. | Marcelo Ferreira Lima Advogados Associados | 8/12/2009 |
| | | Execução nº 262/1999 | 1ª Vara Cível da Comarca de Apucarana/PR | O imóvel penhorado foi levado à praça por diversas vezes, sem que houvesse licitantes. O processo encontra-se suspenso no aguardo de julgamento da ação de prestação de contas. | José Carlos Sabatke Sabóia | |
| | | Ação de Prestação de Contas nº 185/2003 | 1ª Vara Cível da Comarca de Apucarana/PR | Ação julgada procedente para declarar a nulidade da cláusula contratual que fixa juros remuneratórios superiores a 12% a.a. As partes interpuseram recursos de apelação, os quais aguardam julgamento no Tribunal de Justiça. | Dietrich e Marinho Advogados Associados | |
| 77 | Cia Norpa Industrial | Falência nº 706/1988 | 4ª Vara Cível da Comarca de Maringá/PR | A falência está na fase final de pagamento dos credores. Todos os bens foram arrecadados e parte dos credores foram pagos. | Luiz Eduardo Volpato | 8/12/2009 |
| 78 | Recrusul | RECUPERAÇÃO JUDICIAL - nº 1060000410-0 | 1ª Vara Judicial da Comarca de Sapucaia do Sul/RS | O plano contemplava o pagamento em 9 parcelas, sendo a primeira em 30.12.07, no valor de R$ 411.000.00.  A primeira parcela venceu e  a empresa não teve condições de pagar, tentou repactuar o plano em assembléia, nós votamos contra, mas foi aprovado. O primeiro pagamento se deu em 30.12.08, no valor aprox. de R$ 547.000,00. O valor da parcela de 2007 foi distribuído para as demais parcelas. Os pagamentos anuais terminarão em 2015. Em 14.12.2009, recebemos o valor de R$ 580.107,59. | Lessa & Pilla Advogados | 8/12/2009 |

| 79 | Frigotel Frigorífico Três Lagoas Ltda. | NÃO HÁ PROCESSO | | | NÃO HÁ ADVOGADO | 8/12/2009 |
|---|---|---|---|---|---|---|
| 80 | Soletur Sol Agência de Viagens e Turismo Ltda. | Habilitação de crédito 2004.001. 096768-7 | 2ª Vara Empresarial do Rio de Janeiro-RJ | Ações procedentes. Processos arquivados. | Escritório de Advocacia Sergio Bermudes | 8/12/2009 |
| | | Habilitação de crédito 2006.001.148614-4 | 2ª Vara Empresarial do Rio de Janeiro-RJ | | | |
| | | Falência 2001.001.124359-5 | 2ª Vara Empresarial do Rio de Janeiro-RJ | Os créditos da Libro foram habilitados como quirogrários, no valor de R$ 2.996.302,26. | | |
| | | Ação monitória 2003.209.008173-3 | 1ª Vara Cível do Rio de Janeiro-RJ | Ações julgadas procedentes, para constituir títulos executivos em favor da Libro contra o garantidor solidário. Em sede de recurso de apelação, o Tribunal de Justiça manteve a sentença. O réu interpôs recurso especial, o qual aguarda julgamento no STJ. Iremos dar início na execução provisória da sentença. | | |
| | | Ação monitória 2003.209.008175-7 | 1ª Vara Cível do Rio de Janeiro-RJ | | | |
| | | Pedido de restituição 2004.001.127660-1 | 2ª Vara Empresarial do Rio de Janeiro-RJ | Ação julgada procedente, condenando a Massa Falida a devolver ao Banco três impressoras de cheques. Processo arquivado. | | |
| 81 | Comércio e Representação Santa Mônica Ltda. | Execução 023.99.015088-0 | Vara de Direito Bancário da Comarca de Florianópolis/SC | Celebrado novo acordo entre a Libro e Bubmac mediante a cessão integral do crédito restante. Acordo integralmente cumprido. | Renata Bulgarelli & Sandrini Advogados Associados | 8/12/2009 |
| | | Execução 023.99.017217-4 | Vara de Direito Bancário da Comarca de Florianópolis/SC | | | |
| 82 | Encol S.A. Engenharia Comércio e Indústria | Falência nº 9900803528-1916 | 1ª Vara de Falências, Concordatas e Insolvência Civil da Comarca de Goiânia | Decisão sobre habilitação de crédito. | Alves e Teixeira Advogados Associados | 8/12/2009 |
| 83 | Avel Apolinário Santo André Veículos S.A. | Execução Contra Devedor Solvente nº 583.00.2001.000106-5 | 35ª Vara Cível do Foro Central da Comarca de São Paulo | Processo arquivado, por falta de bens | Leme, Gomes, Heer e Carvalho Advocacia | 8/12/2009 |
| 84 | Avel Apolinário Rudge Veículos Ltda. | Execução Contra Devedor Solvente nº 583.00.2000.648512-0 | 4ª Vara Cível do Foro Central da Comarca de São Paulo | Processo arquivado, por falta de bens | Leme, Gomes, Heer e Carvalho Advocacia | 8/12/2009 |

| | | | | | |
|---|---|---|---|---|---|
| 85 | Tirreno Veículos Ltda. | Processo de execução nº 583.00.562905-5 | 28ª Vara cível do Foro Central da Comarca da Capital- SP | Processo arquivado, por falta de bens | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
| | | Processo de execução nº 583.01.2000.040374-2 | 1ª Vara Cível do Foro Regional de Santanal da Comarca da Capital-SP | Processo arquivado, por falta de bens | | |
| | | Processo de execução nº 583.01.1999.120114-9 | 7ª Vara Cível do Foro Regional de Santana | Processo arquivado, por falta de bens | | |
| | | Processo de execução nº 583.01.1999.106190-0 | 5ª Vara Cível do Foro Regional de Santanal da Comarca da Capital-SP | Processo arquivado, por falta de bens | | |
| | | Ação Monitória nº 583.01.1999.128480-9 | 2ª Vara Cível do Foro Regional de Santanal da Comarca da Capital-SP | Com o trânsito em julgado, os réus foram intimados para o pagamento do débito, porém ainda não se manifestaram. | | |
| | | Processo de falência nº 583.00.2000.587788-4 | 5ª Vara Cível do Foro Central da Comarca da Capital-SP | Proferida sentença encerrando a falência, ante a inexistência de bens da empresa. Contra essa decisão, foi interposto recurso de apelação. Apesar do recurso, as chances de localizar bens da Tirreno e receber pela venda desses bens é remota. | | |
| 86 | Layff Kosmetic Ltda. | Execução - 070106141991-0 | 1ª Vara Cível de Uberaba-MG | aguarda cumprimento de precatória de citação | Ivan Mercêdo Moreira e Advogados S/C | 8/12/2009 |
| | | Monitória - 070106142035-5 | 1ª Vara Cível de Uberaba-MG | recurso de apelação do Banco provida. Autos baixram à primeira instância. Aguarda cumprimento da precatória | | |
| | | Monitória - 070106141989-4 | 5ª Vara Cível de Uberaba-MG | Arquivado por falta de bens | | |
| | | Monitória - 070106141990-2 | 3ª Vara Cível de Uberaba-MG | aguarda cumprimento de precatória para citação | | |
| | | Ação de restituição - 070106141987-8 | Vara de Falências de Uberaba-MG | foi proferida sentença, julgando extinta a ação, por inércia da parte autora. Houve recurso de apelação e os autos encontram-se no TJMG | | |
| 87 | GKW Fredenhagen S.A. | Processo de execução nº 583.00.2002.183554-3 | 19ª Vara Cível do Foro Central da Comarca da Capital | processo com andamento suspenso em razão de efeito suspensivo conferido em recurso de agravo de instrumento. | Advocacia Luis Henrique da Silva | 8/12/2009 |
| | | Processo de execução nº 583.00. 2002.208678-5 | 19ª Vara Cívrl do Foro Central da Comarca da Capital | Processo suspenso por força de uma medida cautelar que conseguiu efeito suspensivo ao recurso de apelação. | | |
| | | Processo de execução nº 564.01.1999.007887-6 | 2ª Vara Cível da Comarca de São Bernardo do Campo=SP | Concluída a produção de provas, aguarda-se eventual abertura de prazo para apresentação de memoriais ou caso será sentenciado . | | |

| 88 | Mayrink Veiga e Cia.Ltda. | Execução 1996.001.044697-2 | 38ª Vara Cível do Rio de Janeiro-RJ | Requeremos a penhora online das contas bancárias e aplicações financeiras dos devedores. Solicitamos pesquisa de bens em nome da empresa e dos garantidores. | Piereck de Sá Advogados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 89 | Etedisa Agro-Industrial | Execução 1.05.0075726-0 | 5ª Vara Cível da Comarca de Caxias do Sul | Processo arquivado | Lessa & Pilla Advogados | 8/12/2009 |
| 90 | Lousano Indústria de Condutores Elétricos Ltda. | Ação de Execução no. 1998.335284-9 | 2a Vara Cível do Foro Regional do Tatuapé SP | As execuções estavam suspensas pela aprovação do plano de recuperação judicial da empresa a qual os credores estão sujeitos. Porém com a decretação da falência, pedimos o prosseguimento do feito. | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
| | | Ação de Execução no. 583.07.1998.316721-3 | 3a Vara Cível do Foro Regional de Itaquera SP | As execuções estavam suspensas pela aprovação do plano de recuperação judicial da empresa a qual os credores estão sujeitos. Porém com a decretação da falência, pedimos o prosseguimento do feito. | | |
| 91 | P G Fomento Mercantil | | | | | |
| 92 | Medic S.A. Medicina Especializada Indústria e Comércio | Processo de Execução nº 583.00.1998.831712-2 | 32ª Vara Cível da Comarca da Capital-SP | Ante a decretação da falência da Medic, desistimos da ação em relação à empresa e iremos prosseguir apenas contra os garantidores. Localizamos um imóvel de titularidade do garantidor (50% da propriedade) e iremos indicá-lo à penhora. | Advocacia Luis Henrique da Silva | 8/12/2009 |
| | | Processo de Execução nº 583.00.1998.828412-0 | 32ª Vara Cível da Comarca da Capital-SP | | | |
| | | Processo de Execução nº 583.00.1998.828411-8 | 32ª Vara Cível da Comarca da Capital-SP | | | |
| | | Falência nº nº 2009.160514-2 | 2ª Vara de Falências e Recuperações Judiciais da Comarca da Capital- SP | A Medic ajuizou ação de autofalência e, em 17.07.2009, foi decretada a falência da empresa e publicada a relação de credores, na qual consta o crédito da Libro como quirográfario no valor de R$ 2.801.487,55. | | |
| 93 | Cambuci S.A. | Ação de Execução 000.02.024264-6 | 11ª.Vara Cível do Foro Central de São Paulo | Foi pedida a carta de setença para avaliação das garantias, processo está vindo do TJ para a 1a. Instância após julgamento. A avaliação já está sendo feita, nomeamos a Equity como peritos assistentes e nomeamos quisitos. | Espinela e Graça Advogados | 8/12/2009 |
| 94 | AFC Comércio e Representações | Execução no. 001.01.007486-5 | 6ª. Vara Cível da Comarca de Maceió AL | Foi feita citação por edital dos devedores, porém não foram localizados bens passíveis de penhora | Denarcy Souza e Silva | 8/12/2009 |

| 95 | Liderbrás Logística | Ação Ordinária com Pedido de Tutela Antecipada no. 1999.207.002523-9 | 2a Vara Cível da Ilha do Governador RJ | É uma ação contra o banco, houve acordo judicial, não cumprido. Pedimos execução de sentença, com base no art. 475J CPC para penhora e posterior pedido de avaliação e adjudicação dos imóveis hipotecados | Escritório de Advocacia Sergio Bermudes | 8/12/2009 |
|----|---------------------|----------------------------------------------------------------------|----------------------------------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|------------------------------------------|-----------|
| 96 | Agro Industrial e Comercial Exportadora de Chá Agrochá Ltda. | Execução de Título Extrajudicial nº 583.00.1998.835048-0 | 12ª Vara Cível do Foro Central da Comarca de São Paulo | Foi reiniciada a execução, na qual, em razão do crédito da presente execução também estar habilitado no processo em trâmite perante à 7ª Vara Cível do Fórum Central, a mesma encontra-se sem andamento. | Espinela e Graça Advogados | 8/12/2009 |
| | | Execução de Título Extrajudicial nº 583.00.1998.835058-3 | 7ª Vara Cível do Foro Central da Comarca de São Paulo | Não houve a expedição da Carta de Adjudicação do imóvel (matrícula n.º 776), em razão dos embargos à adjudicação opostos pelos executados. Apresentaremos impugnação acerca desses embargos, a fim de dar continuidade na adjudicação do bem. Após decisão que rejeitou os embargos, aguarda-se expedição da Carta de Adjudicação. | Espinela e Graça Advogados | |
| | | Execução de Título Extrajudicial nº 583.00.1998.835047-7 | 5ª Vara Cível do Foro Central da Comarca de São Paulo | Foi reiniciada a execução, na qual, em razão do crédito da presente execução também estar habilitado no processo em trâmite perante à 7ª Vara Cível do Fórum Central, a mesma encontra-se sem andamento. | Espinela e Graça Advogados | |
| | | Execução de Título Extrajudicial nº 495.01.1999.001067-0 | 3ª Vara Judicial da Comarca de Registro | Processo extinto. | NÃO HÁ ADVOGADO | |
| | | Execução de Título Extrajudicial nº 583.00.1999.065533-4 | 17ª Vara Cível do Foro Central da Comarca de São Paulo | Processo em fase de execução de honorários de sucumbência contra o Banco. | Penachin e Nascimento Advogados | |
| | | Execução de Título Extrajudicial nº 495.01.1999.001069-5 | 2ª Vara Judicial da Comarca de Registro | Após o ajuizamento da ação, os executados opuseram embargos à execução, tendo estes sido julgados procedentes para determinar a extinção da execução. O exequente, a época, o Banco América do Sul interpôs recurso de apelação, ao qual foi dado provimento para reformar a sentença de 1º grau, mantendo-se o prosseguimento da execução. Os executados interpuseram recurso especial, ao qual foi negado provimento. Posteriormente, foi reiniciada a execução, na qual, em razão do crédito da presente execução também estar habilitado no processo em trâmite perante à 7ª Vara Cível do Fórum Central, a mesma encontra-se sem andamento. | Espinela e Graça Advogados | |
| | | Execução de Título Extrajudicial nº 583.00.1999.065532-1 | 19ª Vara Cível do Foro Central da Comarca de São Paulo | Arquivado. | Espinela e Graça Advogados | |

| | | | | | |
|---|---|---|---|---|---|
| 97 | Tectelcom Técnica em Telecomunicações Ltda. | Execução 1974/03 | 2a. Vara Cível da Comarca de são José dos Campos/SP | Penhorado material de informática. Embargos improcedentes. Estão sendo oficiados DRF e outros órgãos para apuraração de bens dos sócios. | Perez de Rezende - Advocacia | 8/12/2009 |
| | | Busca e Apreensão 1571/2001 | 4a. Vara Cível da Comarca de são José dos Campos/SP | Ação esteve suspensa em razão de ação revisional movida pela devedora. Aguarda-se diligência de apreensão. | | |
| | | Habilitação de Crédito na Recupração Judicial nº 915/06/03 | 1a. Vara Cível da Comarca de São José dos Campos/SP | Habilitação julgada retardatária. Aguarda-se julgamento do recurso | | |
| 98 | Industria e Comércio de Molas Ltda. | Execução 001.1996.004.798-1 | 9ª Vara Cível de Recife-PE | Processo arquivado, por falta de bens | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Execução 001.1998.002164-3 | 19ª Vara Cível de Recife-PE | Aguarda-se o julgamento dos embargos à execução nº 2000.019886-3. | | |
| | | Execução 001.1996.004796-5 | 12ª Vara Cível de Recife-PE | Processo extinto, ante a aplicação da Súmula 233 STJ (ausência de título executivo). | | |
| | | Execução 001.1998.002233-2 | 9ª Vara Cível de Recife-PE | Processo arquivado, por falta de bens | | |
| | | Busca e apreensão 001. 1996.092.238-6 | 12ª Vara Cível de Recife-PE | Aguarda-se a expedição de mandado de constatação para a avaliação dos maquinários. | | |
| 99 | Fatras Faria Transportes e Serviços Ltda. | Execução nº 140.99.674796-4 | 24ª Vara Cível da Comarca de Salvador/BA | Concedida liminar, todavia os veículos não foram encontrados em poder da arrendatária. Processo suspenso/arquivado. | Edilberto Benjamin Santos e Mota S/C Advocacia e Consultoria Empresarial | 8/12/2009 |
| | | Busca e Apreensão nº 140.99.672010-2 | 12ª Vara Cível da Comarca de Salvador/BA | Processo suspenso/arquivado, em razão de acordo celebrado com o Sudameris anteriormente à cessão do crédito. | | |
| | | Execução nº 140.99.674070-4 | 21ª Vara Cível da Comarca de Salvador/BA | Concedida liminar, todavia os veículos não foram encontrados em poder da arrendatária. Processo suspenso/arquivado. | | |
| | | Reintegração de Posse nº 140.99.680714-9 | 19ª Vara Cível da Comarca de Salvador/BA | Concedida liminar, todavia os veículos não foram encontrados em poder da arrendatária. Processo suspenso/arquivado. | | |
| | | Reintegração de Posse nº 140.99.680711-5 | 22ª Vara Cível da Comarca de Salvador/BA | Ação julgada procedente para determinar o cumprimento do mandado de reintegração de posse dos veículos, bem como para deferir a remessa dos autos ao Ministério Público para oferecimento da denúncia de desalienação fraudulenta. A ré interpôs recurso de apelação, o qual aguarda julgamento no Tribunal de Justiça. | | |
| | | Reintegração de Posse nº 140.99.680712-3 | 13ª Vara Cível da Comarca de Salvador/BA | Concedida liminar, todavia o mandado foi cumprido negativamente e os bens não foram localizados. | | |
| | | Busca e Apreensão nº 140.99.674068-8 | 24ª Vara Cível da Comarca de Salvador/BA | Processo redistribuído a umas das varas de relação de consumo. | | |
| | | Reintegração de Posse nº 140.99.680713-1 | 1ª Vara Cível da Comarca de Salvador/BA | Processo suspenso/arquivado, em razão de acordo celebrado com o Sudameris anteriormente à cessão do crédito. | | |
| | | Reintegração de Posse nº 140.99.680710-7 | 20ª Vara Cível da Comarca de Salvador/BA | Concedida liminar, todavia os veículos não foram encontrados em poder da arrendatária. Processo suspenso/arquivado. | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 100 | Alteza Comércio Indústria de Alimentos Ltda. | Execução - 2000.0113.5511-6 | 12ª Vara Cível da Comarca de Fortaleza-CE | Aguarda julgamento dos embargos à execução | Wagner Barreira Advogados Associados | 8/12/2009 |
| 101 | EMF Comércio Exportação e Importação Ltda. | Execução 180.01.2001.0029403 | 2a. Vara Cível de Espírito Santo do Pinhal/SP | Embargos julgados procedentes. Aguardando julgamento do Recurso Especial | Penachin e Nascimento Advogados Associados | 8/12/2009 |
| | | Sustação de Protesto e Ordinária 034.903.003544-9 movida pela devedora para anular os contratos de câmbio de compra | 1a. Vara Cível da Comarca de Jacutinga/MG | Aguardando julgamento | | |
| 102 | ASR Telecomunicações | Processo de execução nº 583.00.1996.215412-9 | 37ª Vara Cível do Foro Central da Comarca da Capital-SP | arquivado | S.S. Queique Advogados S/C | 8/12/2009 |
| | | Processo de falência nº 583.00.1996.721454-2 | 25ª Vara Cível do Foro Central da Comarca da Capital=SP | Aguardando os próximos atos da massa falida. | | |
| 103 | Comercial Reunidas Futoyata Ltda. | Processo de falência nº 583.00.1996.629208-9 | 23ª Vara Cível do Foro Central da Comarca da Capital- SP | O processo encontra-se arquivado, ante a ausência de bens da massa falida. | Advocacia Luis Henrique da Silva | 8/12/2009 |
| | | Processo de execução nº 583.009.1996.357928-9 | 1ª Vara Cível do Foro Regional da Vila Prudente da Comarca da Capital-SP | Processo arquivado, por falta de bens | | |
| 104 | Agro Comercial Fumageira S.A. | Processo de execução nº 140.96.505418-6 | 10ª Vara Cível da Comarca de Salvador-BA | | Edilberto Benjamin Santos e Mota S/C Advocacia e Consultoria Empresarial | 8/12/2009 |
| | | Processo de execução nº 140.99.666680-0 | 10ª Vara Cível do Comarca de Salvador-BA | | | |
| | | Processo de execução nº 140.96.505431-9 | 7ª Vara Cível da Comarca de Salvador-BA | | | |
| | | Processo de falência nº367805-2/2004 | Vara Cível de Cruz das Almas | | | |
| | | Ação possessória nº 14096510405-6 | 8ª Vara Cível da Comarca de Salvador-BA | | | |

| | | | | | |
|---|---|---|---|---|---|
| 105 | Indústria Frigorífica Norte de Minas Ltda. | Execução - 02404257704-9 | 3ª Vara Cível de Belo Horizonte | o juiz extinguiu a execução por entender que o pedido de substituição processual deveria ter sido feito por emenda à inicial (tendo em vista ainda não haver citação). | Leopoldo Souza Lima Matto (Benício de Paiva Esc. Advocacia) | 8/12/2009 |
| | | Execução- 02403988375-6 | 23ª Vara Cível de Belo Horizonte | fase de investigação de bens. Requeremos penhora on line. | | |
| | | Execução - 02403988379-8 | 31ª Vara Cível de Belo Horizonte | deferida a expedição de ofícios para que a Receita forneça a última declaração de IR dos executados. | | |
| | | Execução - 02403988380-6 | 21ª Vara Cível de Belo Horizonte | Peticionamos requerendo o reconhecimento do grupo econômico e a expedição de mandado de penhora | | |
| | | Execução - 02403988378-0 | 9ª Vara Cível de Belo Horizonte | aguarda-se novas informações sobre endereços dos executados. Requeremos penhora dop faturamento da empresa. | | |
| | | Ação ordinária - 02403988377-2 | 1ª Vara Cível de Belo Horizonte | O TJ manteve a sentença e a Indústria apresentou Resp, que foi inadmitido. Fase de Agravo de Despacho denegatório. | | |
| | | Ação ordinária - 02403988376-4 | 16ª Vara Cível de Belo Horizonte | arquivado por falta de bens | | |
| | | Ação ordinária - 02403988374-9 | 22ª Vara Cível de Belo Horizonte | fase de apresentação do laudo pericial | | |
| | | Ação ordinária - 02403988371-5 | 12ª Vara Cível de Belo Horizonte | O TJ manteve a sentença e a Indústria apresentou Resp, que foi inadmitido. Fase de Agravo de Despacho denegatório. | | |
| | | Ação ordinária - 02403988370-7 | 25ª Vara Cível de Belo Horizonte | Carta Precatória expedida para a comarca de TEOFILO OTONI para citação | | |
| | | Ação Revisional de Cláusulas - 02403937821-1 | 19ª Vara Cível de Belo Horizonte | o recurso de apelação interposto pela Indústria não foi recebido , pelo que foram interpostos Recursos Especial e Extraoridnário da decisão. | | |
| 106 | Ceramarte | Concordata preventiva nº 055.04.001888-6 | Vara Cível da Comarca de Rio Negrinho SC (única) | A empresa não tem cumprido as suas obrigações na concordata e existem grandes chances de ser decretada a sua falência. | Dietrich e Marinho Advogados Associados | 8/12/2009 |

| | | | | | |
|---|---|---|---|---|---|
| 107 | La Platense Decorações Ltda. | Execução - 544.01.1999.011077-0 | 3ª Vara Cível da Comarca de Santo André-SP | arquivado por falta de bens | Silva Mello Advogados Associados | 8/12/2009 |
| | | Execução - 544.01.1999.011078-5 | 2ª Vara Cível da Comarca de Santo André-SP | arquivado por falta de bens | | |
| | | Execução - 544.01.1999.002931-2 | 1ª Vara Cível da Comarca de Santo André-SP | arquivado por falta de bens | | |
| | | Execução - 554.01.2001.025803 | 6ª Vara Cível da Comarca de Santo André-SP | arquivado por falta de bens | | |
| | | Execução - 554.01.2000.014551-7 | 7ª Vara Cível da Comarca de Santo André-SP | O valor de aprox. R$ 246.000,00 já foi transferido para a Libro em nov/09. As parcelas restantes (10) foram transferidas para uma conta judicial de Sto. André. Apresentamos requerimento para expedição de guia de levantamento. O pedido foi deferido e o depósito deverá ser realizado em favor da Libro até meados de abril/10. | | |
| | | Execução - 554.01.1999.012356-1 | 9ª Vara Cível da Comarca de Santo André-SP | Realizada avaliação dos imóveis pelo perito judicial, apresentamos quesitos suplementares que ainda aguardam manifestação do expert. | | |
| | | Execução - 554.01.1999.013193-7 | 7ª Vara Cível da Comarca de Santo André-SP | arquivado por falta de bens | | |
| 108 | Rodoamérica Transportadora | Execução 99.020917-8 | 29ª.Vara Cível do Foro Central de São Paulo | O processo foi extinto e arquivado, solicitamos desarquivamento a fim de estudar as possibilidades de se prosseguir com o andamento do feito | Ecclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
| | | Execução nº 1998.623729-5 | 38ª.Vara Cível do Foro Central de São Paulo | Nestes autos, há a penhora recaindo sobre o imóvel matriculado sob o nº 1.534, do 18º Cartório de Registro de Imóveis da Capital, do qual a Libro também é credora hipotecária. No entanto, a penhora efetivada nos autos deu-se somente depois que outras penhoras (de terceiros particulares e débitos fiscais) foram inseridas sobre o imóvel. | | |
| | | AÇÃO DE REINTEGRAÇÃO DE POSSE no.583.00.1998.623732-0 | 34ª.Vara Cível do Foro Central de São Paulo | Há um despacho determinando a expedição de mandado de constatação dos bens, requerido pelo advogado contratado. | | |
| | | Excução no. 98.624050-9 | 34ª.Vara Cível do Foro Central de São Paulo | O processo foi arquivado por falta de andamento, solicitamos desarquivamento | | |
| 109 | Translatin Trade Ltda. | | | | | |

| 110 | Itafarma Importação e Exportação Ltda. | Execução de Título Extrajudicial nº 152.01.2006.000699-3 | 2ª Vara Judicial da Comarca de Cotia | Aguardando cumprimento da carta precatória para intimação dos executados da penhora do imóvel. | Gastaldello, Turco, Barros e Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| | | Monitória nº 152.01.2006.000697-8 | 2ª Vara Judicial da Comarca de Cotia | A ação foi julgada procedente janeiro de 2008. No entanto, os devedores apelaram e o feito aguarda julgamento do Tribunal de Justiça. | | |
| | | Monitória nº 152.01.2006.000698-0 | 3ª Vara Judicial da Comarca de Cotia | Em setembro de 2008 foi protocolizada petição reiterando o pedido formulado consistente na intimação dos réus para efetuarem o pagamento do débito, no prazo de 15 dias, sob pena de multa e continuamos aguardando tal manifestação do juízo | | |
| | | Ação de Reintegração de Posse com Pedido de Concessão de Liminar nº 152.01.2006.002014-4 | 1ª Vara Judicial da Comarca de Cotia | Apesar de deferida a liminar de reintegração de posse, foi juntado aos autos mandado negativo. Distribuída carta precatória no Setor de Unificação aos 07.07.2008. Restou negativa. Foi requerido o desentranhamento do mandado para reintegração do bem em Caucaia do Alto - SP. Estamos aguardando manifestação do juízo | | |
| | | Ação de Reintegração de Posse com Pedido de Concessão de Liminar nº 152.01.2006.002013-1 | 1ª Vara Judicial da Comarca de Cotia | Apesar de ter sido deferida a liminar de reintegração de posse, restou negativa a reintegração do bem. Foi requerido o desentranhamento do mandado para reintegração em Cotia e a expedição de carta precatória à Anapolis. Posteriormente, foi requerida a reintegração do na Capital - SP., através de carta precatória. Certidão negativa foi exarada na Carta Prectória expedida à Capital - SP. Assim, foi requerido o desentranhamento do mandado para cumprimento em Cotia e certidão negativa exarada na Carta Prectória expedida à Capital - SP. Estamos aguardando o desentranhamento do mandado para reintegração do bem em Cotia. | | |
| | | Ação de Reintegração de Posse com Pedido de Concessão de Liminar nº 152.01.2006.002012-9 | 3ª Vara Judicial da Comarca de Cotia | Apesar de deferida a liminar de reintegração de posse, restou negativa a reintegração dos bens, sendo informado que os mesmos estão em Anápolis - GO. Foi expedida e distribuída carta precatória à Anapolis, que restou negativa. Foi requerida a reintegração dos bens em São Paulo e Caucaia do Alto - o mandado desentranhado para cumprimento em Caucaia do Alto restou negativo. A carta precatória expedida à São Paulo restou negativa. Atualmente, o processo está em fase de localização de novo endereço da ré | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 111 | Bauruauto Veículos e Peças Ltda. | Processo de execução nº 071.01.1996.003514-0 | 5ª Vara Cível da Comarca de Bauru-SP | Processo sentenciado, tendo sido reconhecida a prescrição do direito de ação do credor. Apresentados embargos de declaração pelos devedores. | Castro, Barros, Sobral, Gomes Advogados | 8/12/2009 |
| | | Processo de execução nº 071.01.1996.005540-0 | 3ª Vara Cível da Comarca de Bauru-SP | Processo sentenciado, tendo sido reconhecida a prescrição do direito de ação do credor. | Olival Mizziara | |
| 112 | Edel Empresa de Engenharia S.A. | Processo de falência nº 583.00.2000.563386-9 | 15ª Vara Cível do Foro Central da Comarca da Capital- SP | Apresentamos requerimento para que o nosso credito, antes reconhecido como quirografário, fosse reconhecido como crédito com garantia real. O síndico concordou com o pedido e o MP não apresentou nenhuma oposição. Aguarda-se pronunciamento do juiz. | Espinela e Graça Advogados | 8/12/2009 |
| 113 | Empresa São Paulo Ltda. | Execução no. 226.1999.0050949 | 2a. Vara Cível da Comarca de Olinda PE | Execução pendente de julgamento de embargos | Eduardo Meira Lins | 8/12/2009 |
| | | Reintegração de Posse no. 226.201.003022-2 | 6a. Vara Cível da Comarca de Olinda PE | julgada improcedente a ação de reintegração de posse, e, ao mesmo tempo, procedente em parte a reconvenção da Empresa São Paulo, para declarar a nulidade de disposição que permita a cobrança da comissão de permanência com correção monetária, e determinar a devolução simples do valor pelo excesso praticado no contrato. | | |
| 114 | S.A. Brasileira de Indústria Ótica - Sábio | Execução 001.1988.016503-1 | 4ª Vara Cível da Comarca de Recife-PE | Aguarda-se a citação dos demais réus. | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
| | | Execução 001.1992.082787-0 | 12ª Vara Cível da Comarca de Recife-PE | Aguarda-se o cumprimento do mandado de penhora de imóveis e lotes de terra. | | |
| 115 | ML Atacadista Distribuidor Ltda. | Execução 1998.835056-9 | 23a. Vara Cível da Comarca de São Paulo/SP | Registrando Carta de Arrematação dos imóveis hipotecados e penhorados. | Internos da Recovery | 23/3/2010 |
| 116 | OGF Transportes Ltda. | Não consta ação movida pelo Banco | | | NÃO HÁ ADVOGADO | 8/12/2009 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 117 | Bergamo Companhia Industrial | Ação de Execução no. 224.01.2005.024490-5 | 3ª.Vara Cível da Comarca de Guarulhos | Peticionamos pela penhora on line dos devedores, que foi indeferido pelo Juízo. Prossegue a execução e busca de bens | Celso de Lima Buzzoni | 8/12/2009 |
| | | Ação de Busca e Apreensão nº 2004.025580-3 | 5ª.Vara Cível da Comarca de Guarulhos | O processo foi julgado procedente em 1a. Instância, porém os devedores entraram com recurso no TJ SP. | Penachin e Nascimento Advogados Associados | |
| 118 | Refrigerantes Vedete | **CRÉDITO LIQUIDADO** | | | | |
| 119 | Central Momesso de Distribuição | **CRÉDITO LIQUIDADO** | | | | |
| 120 | Momesso Distribuidora | **CRÉDITO LIQUIDADO** | | | | |
| 121 | Miki Máquinas e Componentes Eletromecânicos Ltda. | Execução nº 583.00.1999.040085-9 | 20ª Vara Cível do Foro Central da Comarca de São Paulo | Foram penhorados 2 lotes de terra dos devedores, localizados em SP, avaliados em R$ 165.000.  Foi designada hasta pública para a alienação dos bens (a 1ª ocorrerá em 26.03.2010) | Advocacia Luis Henrique da Silva | 8/12/2009 |
| | | Execução por Quantia Certa contra Devedor Solvente nº 1618/99 | 1ª Vara Cível da Comarca de Diadema | Arquivado por falta de bens. Por se tratar de uma Execução de Contrato de Abertura de Crédito, sujeito portanto a uma sucumbência pela Súmula nº 233, do STJ, decidimos manter o processo arquivado, para tentar evitar eventual condenação em sucumbência. | | |
| | | Ação Ordinária de Cobrança nº 779/99 | 3ª Vara Cível da Comarca de Diadema | Trata-se de ação monitória convertida em ordinária de cobrança, na qual foram efetuadas diligências com citação apenas do co-réu Suguetiro, restando negativa as diligências para citação de Vera e Edison. Com relação a empresa MIKI, a mesma foi excluída da lide ante a sua quebra, já homologada. Foram expedidos ofícios para SERASA, SCPC, DRF, INSS, sendo apresentado mais dois endereços, sendo que essas diligências tabém restarm negativas. Assim, as citações dos co-réus foram realizadas por EDITAL. Nomeado curador especial, foi apresentado defesa por negativa geral e apresentada réplica - quanto ao réu citado pessoalmente, foi certificado o decurso de prazo para defesa. | | |

| 122 | CHJ Incorporadora e Construtora | Execução nº 583.00.2002.147536-3 | 25ª.Vara Cível do Foro Central de São Paulo | Após o deferimento do pedido de vista, requeremos a adjudicação do apartamento localizado em Campos do Jordão, matrícula n.º 17.290. Em razão do erro material contido no laudo pericial, o juiz intimou o perito, bem como parte contrária para esclarecimento e manifestação. Após os executados requererem a elaboração de um novo laudo, protocolamos petição esclarecendo que não há necessidade do mesmo, mas sim, apenas um esclarecimento por parte do perito. | Espinela e Graça | 8/12/2009 |
| | | Execução no. nº000.02.139910-7 | 6ª.Vara Cível do Foro Central de São Paulo | Requerida a conversão do arresto dos bens em penhora. Aguardando decisão acerca do referido pedido. | | |
| 123 | Citicomp Engenharia | Execução nº 583.00.2002.127634-0 | 10ª Vara Cível do Foro Central da Capital – SP | Após o desarquivamento do processo, requeremos a citação dos executados através de edital, bem como a conversão do arresto de bens em penhora. Pedido deferido pelo juiz. Após a publicação do edital, aguarda-se a expedição de ofício a Defensoria Pública, para indicação de advogado dativo. | Espinela e Graça | 8/12/2009 |
| 124 | Patropi Administração de Estacionamentos | Execução nº 583.00.2002.147536-3 | 25ª.Vara Cível do Foro Central de São Paulo | Após o deferimento do pedido de vista, requeremos a adjudicação do apartamento localizado em Campos do Jordão, matrícula n.º 17.290. Em razão do erro material contido no laudo pericial, o juiz intimou o perito, bem como parte contrária para esclarecimento e manifestação. Após os executados requererem a elaboração de um novo laudo, protocolamos petição esclarecendo que não há necessidade do mesmo, mas sim, apenas um esclarecimento por parte do perito. | Espinela e Graça | 8/12/2009 |
| 125 | ACBR Computadores Ltda. | Recuperação judicial nº 068.01.2005.013598-1 | 6ª Vara Cível da Comarca de Barueri-SP | Aguardando os atos da recuperação judicial | Péres de Souza Advogados | 8/12/2009 |
| | | Processo de Execução nº 068.01.2006.007214-8 | 1ª Vara Cível da Comarca de Barueri-SP | Aguardando cumprimento deordem de penhora on line | | |
| | | Carta Precatória nº 286.01.2008.007002-4 | 2ª Vara Cível da Comarca de Itu-SP | Arrematamos o sítio no leilão trabalhista | | |
| 126 | Cooperativa Mista Agropecuária Witmarsun | Processo de execução nº 60/1999 | Vara Cível de Palmeira-PR | Recurso de apelação do Banco provido integralmente e recurso de apelação da devedora provido em parte (limitação dos juros). Apresentados embargos de declaração pela Cooperativa. | Dietrich e Marinho Advogados Associados | 8/12/2009 |
| | | Processo de Execução 188/2002 | Vara Cível de Palmeira - PR | Aguarda julgamento de recurso de apelação interposto pela Devedora | Luiz Fernando Brusamolin | |

| 127 | Interlagos Siderurgia Ltda. | Monitória n° 0024.01.080.869-9 | 31ª Vara Cível da Comarca de Belo Horizonte | Os processos encontram-se suspensos aguardando o cumprimento do acordo. | Ivan Mercêdo Moreira e Advogados S/C | 8/12/2009 |
| | | Execução por Quantia Certa contra Devedor Solvente n° 0024.01.551229-6 | 33ª Vara Cível da Comarca de Belo Horizonte | | Guimarães e Tofallini Advogados Associados S/C | |
| 128 | Akaishi Empreendimentos Imobiliários Ltda. | Execução nº 583.00.2001.337123-1 | 28ª Vara Cível do Foro Central da Comarca de São Paulo | Processo arquivado desde março de 2007, uma vez que não foram localizados bens para execução. | Penachin e Nascimento Advogados | 8/12/2009 |
| | | Execução Por Quantia Certa Contra Devedor Solvente nº 583.00.2001.337122-0 | 26ª Vara Cível do Foro Central da Comarca de São Paulo | Aguardando publicação de edital para conversão de arresto em penhora de quatro apartamentos so Edifício Piazza di Siena em Penha da França. Nas declarações de renda da Akaishi e dos sócios constavam apenas imóvel familiar. Apartamentos arrestados constam em nome da Akaishi no CRI da Penha. | | |
| | | Ação de Reintegração de Posse nº 583.00.2001.068229- | 13ª Vara Cível da Comarca de São Paulo | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| | | Execução nº 583.00.1996.918651-6 | 35ª Vara Cível do Foro Central da Capital – SP | Concluímos a arrematação e venda de uma das porpriedades hipotecadas, agora prosseguiremos a execução buscando recuperar as demais garantias | Celso de Lima Buzzoni | |
| 129 | Grupo Agropecuário Maristela Ltda. | Execução no. 166/97 | Vara Cível da Comarca de Laranjal Paulista (única) | Requerida a continuação da execução pelo saldo de R$ 753.136,23 (setecentos e cinqüenta e três mil, cento e trinta e seis reais, e vinte e três centavos), bem como a penhora do imóvel "UMA ÁREA DE TERRAS identificada como Gleba 3, situada no imóvel rural denominado Sítio Taquarantã da Matas, também conhecido por 'Matas do Taquarantã' ou ainda 'Graminha'. Tendo em vista as exigências do C.R.I. de Conchas foi expedida nova certidão para registro da penhora, bem como carta precatória para avaliação do bem. Aguardando avaliação bem como registro da penhora. | Espinela e Graça Advogados | 8/12/2009 |
| | | Ação de Busca e Apreensão, 130/97 | Vara Cível da Comarca de Laranjal Paulista (única) | Requerida a continuação da ação, com o pedido de que os devedores apresentem os bens em Juízo, ou o seu equivalente em dinheiro, sob pena de prisão civil. O juiz determinou que seja aguardado o julgamento do recurso especial, em razão da medida cautelar ajuizada no STJ, na qual foi concedido efeito suspensivo ao referido recurso. Aguardando julgamento do recurso especial, para que possamos dar prosseguimento no processo. | | |
| | | Execução no. 164/97 | Vara Cível da Comarca de Laranjal Paulista (única) | Requerida expedição de ofício a Delegacia da Receita Federal, para tentativa de localização de novos bens passíveis de penhora. Aguardando resposta. | | |
| | | Ação de Busca e Apreensão Nº 131/97 | Vara Cível da Comarca de Laranjal Paulista (única) | Em 16/05/2005 as partes celebraram acordo: Débito atualizado no valor de R$230.000,00 foi reduzido para acordo no valor de R$50.000,00. Os honorários do advogado foram reduzidos de R$50.000,00 para o valor de R$10.000,00, para fechamento do acordo.Acordo homologado em 20/05/2005. Caso liquidado. Nada mais a receber. | | |
| | | Ação de Reintegração de Posse Nº 116/97 | Vara Cível da Comarca de Laranjal Paulista (única) | Ação foi julgada improcendente em primeira instância, houve recurso pendente de julgamento | | |

| 130 | Inpromar S.A. Indústria Produtos do Mar | Execução no. 222.1995.0007810 | 2a Vara Cível da Comarca de Jaboatão dos Guararapes - Pernambuco | Houve a penhora dos barcos garantia, sendo interpostos embargos à execução, que ainda não foram julgados. Houve pedido de expedição de ofício para a Capitania dos Portos na tentativa de encontrar os barcos, não obtendo êxito. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 131 | Fornasa S.A. | Processo de execução nº 405.01.1999.000352-5 | 7ª Vara Cível da Comarca de Osasco | Tentou-se a penhora sobre o valor dos aluguéres pagos por conta da locação das instalações da empresa, porém sem êxito até o momento. | Espinela e Graça Advogados | 8/12/2009 |
| 132 | Kwikasair Cargas Expressas S.A. | Habilitação de Crédito na Falência - 2005.078141-7 | 1a. Vara de Falências e Recuperações Judiciais da Comarca de São Paulo/SP | Falência em fase de arrecadação de ativos | Penachin e Nascimento Advogados Associados | 8/12/2009 |
|  |  |  |  | Devedora sendo notificada extra-judicialmente na pessoa do síndico a proceder a devolução |  |  |
| 133 | Duarte Chaves Companhia | Execução nº 1998.195725-2 | 4ª Cível do Foro Regional de Santo Amaro - SP | Em razão da penhora dos imóveis, pleiteamos a expedição de mandado de averbação, bem como avaliação dos imóveis. Foram expedidos os mandados de averbação. Providenciamos o encaminhamento dos mandados de averbação nos respectivos cartórios de registro de imóveis. | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
|  |  | Execução nº 583.00.1998.630404-0 | 37ª Vara Cível do Foro Central de São Paulo | A Execução foi extinta por força de sentença proferida nos Embargos à Execução, em razão da Execução ser lastreada em contrato de abertura de crédito em conta-corrente. O Banco Real (Libro) foi condenado ao pagamento de R$ 3.000,00 a título de verbas de sucumbência. Os executados interpuseram Recurso de Apelação a fim de majorar o valor dos honorários. Foi deferida a substituição do pólo ativo para a Libro figurar como exequente. Os autos foram remetidos para o Tribunal de Justiça para julgamento do recurso de apelação, que discute os honorários (pedem aumento de R$ 3 mil para 20% do valor da causa (aprox. R$ 80 mil). Já no Tribunal de Justiça, foi realizada uma audiência para tentativa de conciliação com relação unicamente ao objeto do recurso (valor dos honorários). |  |  |
| 134 | Quorum Distribuidora | Execução 583.04.1998.630403-8 | 3ª Vara Cível do Foro Regional da Lapa, Comarca de São Paulo – SP | Os Executados apresentaram Embargos à Execução, acolhidos parcialmente para reduzir a multa contratual e excluir a capitalização dos juros. Contra essa decisão foi interposto recurso, negado pelo Tribunal de Justiça. Em 03/12/2008 foi publicado o acórdão. Aguarda-se o retorno dos autos para primeiro grau. Penhora: Imóvel matriculado sob o nº 5.929 no Cartório de Registro de Imóveis de Cavalcante/GO. | Eclissato, Fleury, Caverni e Albino Neto Advogados |  |

| 135 | CNA - Comercial Ltda. | Execução por Título Executivo Extrajudicial nº 0024.98.021021-5 | 11ª Vara Cível da Comarca de Belo Horizonte | Processo suspenso por falta de bens. | José Ornelas Advocacia | 8/12/2009 |
|---|---|---|---|---|---|---|
| | | Execução por Título Executivo Extrajudicial nº 0024.98.047766-5 | 25ª Vara Cível da Comarca de Belo Horizonte | Pesquisa de bens. | Guimarães e Tofallini Advogados Associados S/C | |
| 136 | Jequitaia Tecidos Ltda. | Execução nº 140.99.675748-4 | 14ª Vara Cível da Comarca de Salvador | Foi expedida carta precatória para a Comarca de Jequié para citação dos avalistas. Foram nomeados títulos da dívida agrária à penhora e requerida expedição de carta precatória para penhora de bens (não localizados) | Carole Carvalho da Silva | 8/12/2009 |
| | | Execução nº 140.99.675749-2 | 14ª Vara Cível da Comarca de Salvador | A penhora foi formalizada e foram interpostos Embargos, os quais foram julgados improcedentes. O Recurso Extraordinário não foi admitido e o agravo de instrumento não foi acolhido. Foram interpostos Embargos pelo avalista e foram julgados improcedentes. Houve requerimento de carta precatória para avaliação e praça à Comarca de Itagiba - BA. Em maio de 2008 a carta precatória foi devolvida negativa. | | |
| | | Execução nº 779965-7/2000 | 6ª Vara Cível da Comarca de Salvador | | | |
| | | Ordinária nº 675074-1/2005 | 2ª Vara Cível da Comarca de Jequié | | | |
| | | Concordata Preventiva nº 1005403-1/2006 | 2ª Vara Cível da Comarca de Jequié | | | |
| 137 | Agrimasa - Agroindustrial Irmãos Almeida | não há ação judical promovida pelo Banco, apenas ação declaratória contrária | | | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| 138 | Supermercado Kofu Ltda. | Execução de Cédula de Credito Comercial nº 583.05.1997.264284-7 | 3ª Vara Cível do Foro Regional V - São Miguel Paulista, da Comarca de São Paulo | PROCESSO EXTINTO | Lacerda e Franze Advogados Associados | 8/12/2009 |

| 139 | Liberdade Agroindustrial Ltda. | Ação Ordinária de Cobrança no. 001.1991.055708-0 | 8a Vara Cível da Comarca de Recife | Os autos foram extraviados e restaurados. Foi realizada audiência de conciliação. A ré postulou perícia para apuração do saldo devedor. O perito foi nomeado e o laudo elaborado. Foi dado vista às partes, sendo que ambas discordaram do laudo produzido. O juiz em 1ª instância sentenciou pela extinção do processo e condenou a Libro ao pagamento de 15% em sucumbência, em valores atuais, aproximadamente R$ 1MM. O TJPE confirmou a sentença em decisão monocrática, interpusemos recurso especial e extraordinário, os quais foram negados. Iniciou-se a execução dos honorários, faremos o depósito judicial de aproximadamente R$ 1MM e estamos dando um imóvel em garantia do valor controverso. | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
| --- | --- | --- | --- | --- | --- | --- |
| | | Ação Ordinária de Cobrança no. 001.1991.055707-2 | 12a Vara Cível da Comarca de Recife | As partes foram citadas, apresentaram contestação, e houve réplica. Atualmente os autos encontram-se conclusos para julgamento. | | |
| | | Ação Ordinária de Cobrança no. 001.1991.03969-1 | 3a Vara Cível da Comarca de Recife | A Ação de Cobrança foi julgada procedente (28.11.01), sendo estabelecido na sentença que o pagamento englobaria o valor cobrado, acrescido de juros legais de mora e correção monetária unificada desde a propositura da ação. Houve recurso de apelação, reformando a sentença confirmando que o Bandepe aplicou comissão de permanência no cálculo e condenando o autor ao pagam,ento de R$ 30.000 em honorários (81717-8 – 03.04.02). Processo aguardando decisão sobre embargos de declaração. O imóvel rural Dois Braços é alvo de desapropriação por parte do INCRA. | | |
| | | Ação de Busca e Apreensão no. 001.1991.026340-0 | 3a Vara Cível da Comarca de Recife | Houve sentença julgando procedente em parte os pleitos do Banco (16.06.98), sendo que houve apelação da ré, com recurso adesivo do banco (52113 5), a qual também foi provida em parte. Sendo assim, foram interpostos Recursos Especial e Extraordinário em 06.05.02, sendo que ao Recurso Extraordinário do Banco foi dado seguimento e ao Recurso Especial foi negado segmento em 24.08.04, sendo interposto Agravo de Instrumento (639081) dessa decisão, tendo sido ao final negado provimento em 29.08.05. Os recursos estão em fase de julgamento. | | |
| | | Ação de Execução no. 001.1991.004062-2 | 6a Vara Cível da Comarca de Recife | Foi tentada a penhora do Parque Industrial. A Inexport apresentou em juízo documentação na qual comprova ser credora da Liberdade Agroindustrial, motivo pelo qual não há pagamento de aluguéis. Seguimos questionando tal relação comercial entre as empresas. | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 140 | IBG International Brandgroup do Brasil Ltda. | Processo de falência nº 583.00.2002.146468-0 | 23ª Vara do Foro Central da Comarca da Capital-SP | Aguardando os próximos atos da massa falida | Advocacia Luis Henrique da Silva | 8/12/2009 |
| 141 | Algodoeira Universo Ltda. | **CRÉDITO LIQUIDADO** | | | **CRÉDITO LIQUIDADO** | |
| 142 | Francesca Indústria e Comércio de Calçados Ltda. | **CRÉDITO LIQUIDADO** | | | **CRÉDITO LIQUIDADO** | |
| 143 | S.A. Moinho da Bahia | Execução nº 140.97.583473-4 | 15ª Vara Cível da Comarca de Salvador | Aguarda-se a republicação de edital para praceamento de imóvel garantido por hipoteca | Edilberto Benjamin Santos e Mota S/C Advocacia e Consultoria Empresarial | 8/12/2009 |
| 144 | Petroxim Distribuidora | Processo de execução nº 679/2004 | 14ª Vara Cível da Comarca de Curitiba-PR | Os autos foram encaminhados à 14ªVC e apensados à ação revisional 16/2001 | Dietrich e Marinho Advogados Associados | 8/12/2009 |
| | | Processo de execução nº 24793/00 | 13ª Vara Cível da Comarca de Curitiba-PR | Os autos foram encaminhados à 14ªVC e apensados à ação revisional 16/2001 | | |
| | | Processo de execução nº 656/2002 | 15ª Vara Cível da Comarca de Curitiba-PR | Processo arquivado por falta de bens, artigo 791, III do CPC | | |
| | | Processo de cobrança nº 608/2002 | 14ª Vara Cível da Comarca de Curitiba-PR | Os autos foram encaminhados à 14ªVC e apensados à ação revisional 16/2001 | | |
| | | Processo de cobrança nº 54/2001 | 18ª Vara Cível da Comarca de Curitiba-PR | Os autos foram encaminhados à 14ªVC e apensados à ação revisional 16/2001 | | |
| 145 | Takiplan Pinheiros Construtora S.A. | Pedido de falência 583.00.1996.932590 | 13ª Vara Cível de São Paulo | arquivado | Marcelo Ferreira Lima Advogados Associados | 8/12/2009 |
| 146 | The River Incorporações Imobiliárias Ltda. | Execução por Quantia Certa contra Devedor Solvente nº 583.00.1999.055792-6 | 39ª Vara Cível do Foro Central da Comarca de São Paulo | Os imóveis foram adjudicados no processo. Estamos aguardando expedição da carta de adjudicação. | Leme, Gomes, Heer e Carvalho Advocacia | 8/12/2009 |
| | | Ação Ordinária com Pedido de Antecipação de Tutela nº 583.00.1998.026536-4 | 23ª Vara Cível do Foro Central da Comarca de São Paulo | Processo extinto - pedido improcedente - fase de execução de honorários. | Lacerda e Franze Advogados | |

| | | | | | |
|---|---|---|---|---|---|
| | | AÇÃO MONITÓRIA N.º 001.2004.039866-9 | 30ª VARA CÍVEL DA COMARCA DE RECIFE/PE | Pela inércia do devedor, conseguimos constituir o título executivo. Executaremos a sentença com base no art. 475J CPC | | |
| 147 | Usina Treze de Maio | EXECUÇÃO N.º 90.000562 | 2ª VARA FEDERAL DA SEÇÃO JUDICIÁRIA DE PERNAMBUCO | Foram efetuadas penhoras de diversos imóveis, mas há decisão judicial mantendo apenas a penhora efetuada sobre o imóvel em que fica o parque industrial da executada, porém há Embargos de Terceiro julgados procedentes referentes a imóveis que integram o Engenho Bom Destino, onde fica o parque industrial, validando aquisições ocorridas em reclamações trabalhistas. Essas decisões se baseiam, em suma, no fato das aquisições terem ocorrido por meio de acordo celebrado na Justiça do Trabalho com a administradora judicial de Usina, que foi indicada pelo próprio Banco. (Processos nºs 2003.83.00.023713-0, 2003.83.00.023715-3, 2003.83.00.023662-8, 2003.83.00.023661-6 e 2003.83.00.023660-4 – 2ª Vara Federal da Seção Judiciária de Pernambuco). O Banco interpôs recursos de Apelação contra as decisões, que aguardam julgamento. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| 148 | Regina Agroindustrial S.A. (former Granja Regina S.A.) | Execução - 2000.0090.3216-0 | 6ª Vara Cível da Comarca de Fortaleza | Aguarda-se julgamento dos embargos à execução | Santiago Advogados Associados | 8/12/2009 |
| 149 | Sul Fabril S.A. | Execução - 008.99.015558-4 | 2ª Vara Cível de Blumenau-SC | Os executados alegaram que o bem penhorado nesses autos seria pertencente aos bens da Massa Falida. Portanto, a fim de evitar posterior alegação de nulidade dos atos expropriatórios, e para possibilitar melhor análise da competência, o juízo abriu vista dos autos ao Ministério Público para manifestar se há interesse da massa falida no aludido imóvel. | Fornari e Schenkel Advogados Associados S/CFornari e Schenkel Advogados Associados S/C | 8/12/2009 |
| | | Falência/Habilitação de crédito - 008.05.002859-3 | 2ª Vara Cível de Blumenau-SC | Aguarda-se o julgamento do recurso de apelação. | | |
| 150 | Gran Via Veículos e Peças Ltda. | Execução 1999.0024644-1 | 1a. Vara Cível da Comarca de Barueri/SP | Conj.comercial e garagem avaliados judicialmente em R$ 198.775,00 . Venda judicial feita em nov/2007 pelo valor de R$ 181.000,00. Aguardando manifestação do sindico | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
| 151 | Ava Industrial S.A. | Execução nº 167 2004.001.051673-2 | 21ª Vara Cível da Comarca do Rio de | aguarda julgamento de recurso de apelação | Teixeira Trino Advogados | 8/12/2009 |
| 152 | Di Graniti Ltda. | Execução no. 1999.008003-0 | 13a. Vara Cível da Comarca de Recife PE | aguarda-se a citação - devedores não localizados. | Albuquerque Pinto Advogados | 8/12/2009 |

| 153 | Distribuidora de Veículos Itaipu Ltda. | Execução 19996.718706-9 | 25a. Vara Cível da Comarca de São Paulo/SP | Oficiada DRFe outros òrgãos para apuração de bens dos devedoresE | Espinela e Graça Advogados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 154 | Distribuidora de Bebidas Sulandré Ltda. | Execução 1996.718707 | 5a. Vara Cível da Comarca de São Paulo/SP | Ação julgada extinta: Súmula 233 e falta de demonstrativo para a Cédula. Anulada as hipotecas por falta de procuração válida. | Internos da Recovery | 8/12/2009 |
| 155 | Belanor Pedras Ornamentais Ltda. | NÃO HÁ PROCESSO LEGAL | | | NÃO HÁ ADVOGADO | 8/12/2009 |
| 156 | R.S.A. Comércio e Indústria | Processo de execução nº 583.00.1997.724855-4 | 21ª Vara Cível do Foro Central da Comarca da Capital-SP | Diante de risco de sucumbência, celebramos acordo nesse processo. | Heraldo Ruiz e Eduardo Ganymedes Advogados Associados | 8/12/2009 |
| | | Processo de execução nº 583.09.1999.359583-0 | 1ª Vara Cível do Foro Regional da Vila Prudente | Processos arquivados | Espinela e Graça Advogados | |
| | | Processo de execução nº 583.010.1999.379783-7 | 1ª Vara Cível do Foro Regional do Ipiranga | Processos arquivados | | |
| | | Processo de execução nº 583.00.1999.097861-3 | 37ª Vara Cível do Foro Central da Comarca da Capital-SP | Processos arquivados | | |
| 157 | Aguar Irrigação Localizada | Execução nº 001.1991.041345-3 | 11ª Vara Cível de Recife-PE | Processo suspenso/arquivado, pois nem todos os réus foram localizados para citação. | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Execução nº 001.1991.041464-6 | 3ª Vara Cível de Recife-PE | Carta precatória devolvida negativa. | | |
| | | Busca e Apreensão 001.1991.041346-1 | 7ª Vara Cível de Recife-PE | Proferida sentença de improcedência. Cumprimos espontaneamente a condenação. Processo arquivado em 12.02.2010. | | |

| | | | | | |
|---|---|---|---|---|---|
| 158 | Dismalt Distribuidora de Bebidas Ltda. | Processo de cobrança nº 224.01.1999.010804-3 | 6ª Vara Cível da Comarca de Guarulhos-SP | Despacho proferido a respeito do imóvel arrestadp que não está acostado aos autos. O juiz solicitou que o nosso advogado informasse sobre tal arresto. | Gastadello, Turco, Barros e Advogados Associados | 8/12/2009 |
| | | Notificação Judicial nº 224.01.1997.029466-1 | 8ª Vara Cível da Comarca de Guarulhos- SP | | | |
| | | Processo de execução nº 224.01.1997.045517-1 | 3ª Vara Cível da Comarca de Guarulhos-SP | Aguardando informações sobre o síndico da falência | | |
| | | Processo de falência nº 224.01.1997.003851-7 | 5ª Vara Cível da Comarca de Guarulhos-SP | Aguardando os próximos atos da massa falida | | |
| 159 | Saibrita Mineração e Construção Ltda. | ação de cobrança 064.03.003197-8 | 2ª Vara Cível de São José- SC | aguarda julgamento de recurso de apelação | JB Oliveira Consultoria e Assessoria Jurídica S/C | 8/12/2009 |
| | | ação monitória 064.02.012392-6 | 1ª Vara Cível de São José-SC | aguarda julgamento de recurso de apelação | Saulo Santos | |
| 160 | Malhas Emerson | Processo de execução nº 008.96.006163-3 | 5ª Vara Cível da Comarca de Blumenau | Aguarda julgamento dos embargos à execução n. 008.06.001036-0, ofertados pela Massa falida de Malhas Emerson Ltda | Fornari e Schenkel Advogados Associados S/C | 8/12/2009 |
| | | Processo de execução nº 008.96.010278-0 | 4ª Vara Cível da Comarca de Blumenau | Aguarda julgamento dos embargos à execução | | |
| 161 | Figueiredo Conde Instalações | Execução 001.1995.039686-0 | 12ª Vara Cível de Recife/PE | Ação julgada improcedente, ante a aplicação da Súmula 233 STJ (ausência de título executivo). Autos em fase de cumprimento da sentença (execução de honorários). | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | Falência 001.1995.035322-2 | 18ª Vara Cível de Recife/PE | O nosso crédito está habilitado no valor de aproximadamente 2 milhões de reais. | | |
| 162 | Interclínicas Planos de Saúde S.A. | Falência nº 100.08.242862-6 | 2ª Vara de Falências e Recuperações Judiciais do Foro Central da Comarca de São Paulo | Análise das habilitações de crédito | Penachin e Nascimento Advogados Associados | 8/12/2009 |

| | | | | | |
|---|---|---|---|---|---|
| 163 | Santin S.A. Indústria Metalúrgica | Processo de execução nº 451.01.2005.033161-3 | 6ª Vara Cível da Comarca de Piracicaba-SP | Requerido ao juiz ofício para a DRF, mas sem êxito. A execução foi suspensa, nos termos do artigo 791,III do CPC, em 22.04.2009. | Berroca e Curbage Advocacia | 8/12/2009 |
| | | Processo de execução nº 451.01.2005.018745-9 | 6ª Vara Cível da Comarca de Piracicaba-SP | Processo arquivado por falta de bens, de acordo com o artigo 791, III do CPC, em 4.08.2008. | | |
| | | Processo de Falência nº 451.01.2004.005745-8 | 3ª Vara Cível da Comarca de Piracicaba-SP | Não temos crédito habilitado. | | |
| 164 | Avic Alimentos Selecionados S.A. | execução  001.1995.066633-6 | 5ª Vara Cível de Recife-PE | suspenso em razão de decretação de falência da empresa | Albuquerque Pinto Advogados Associados | 8/12/2009 |
| | | execução  001.1998.003625-0 | 19ª Vara Cível de Recife-PE | Devedores não localizados. | | |
| | | execução 205.1995.000052-4 | 2ª Vara Cível de Belo Jardim-PE | Devedores não localizados. Aguarda-se citação dos devedores | | |
| 165 | Pergran Pernambuco Granitos Indústria, Comércio e Exportação | **CRÉDITO LIQUIDADO** | | | **CRÉDITO LIQUIDADO** | |
| 166 | Serrano Inc. Plan. | Processo de execução nº 583.00.1993.524604-9 | 27ª Vara Cível do Foro Central da Comarca da Capital-SP | Aguardando expedição de guia de levantamento. | Advocacia Luis Henrique da Silva | 8/12/2009 |
| 167 | Brincon Granitos Ltda. | Busca e Apreensão no. 001.1998.046885-0 | 13a Vara Cível da Comarca de Recife | o Bandepe foi condenado a pagar a quantia de 10% (dez por cento) sobre o valor da causa, ou seja, R$ 223.748.40 à título de honorários sucumbenciais, a serem corrigidos até a data do pagamento. E encontra-se em risco eminente de ser condenado no pagamento de multa de 50% (cinqüenta por cento) do valor dos bens apreendidos, avaliados em aproximadamente R$ 1.500.000,00, caso os mesmos já tenham sido alienados; bem como, de ser condenado em arcar com os gastos relativos à reinstalação dos ditos bens apreendidos | Albuquerque Pinto Advogados Associados | 8/12/2009 |

| | | | | | |
|---|---|---|---|---|---|
| 168 | Ocean Tropical Creações Ltda. | Execução nº 583.00.1999.047372-4 | 37ª Vara Cível do Foro Central da Comarca da Capital- SP | Processo arquivado, por falta de bens | Espinela e Graça Advogados | 8/12/2009 |
| | | Execução nº 583.00.1999.060523-0 | 34ª Vara Cível do Foro Central da Comarca da Capital- SP | Processo arquivado, por falta de bens | | |
| | | Execução nº 583.11.1999.462084-5 | 1ª Vara Cível do Foro Regional de Pinheiros da Comarca da Capital-SP | Processo arquivado, por falta de bens | | |
| | | Ação Monitória nº 583.00.1999.930200-0 | 22ª Vara Cível do Foro Central da Comarca da Capital- SP | Processo arquivado, por falta de bens | | |
| 169 | Campanário Construções e Incorporações Ltda. | Execução de Crédito Hipotecário nº 301/1997 | 19ª Vara Cível do Foro Central da Comarca da Capital- SP | Suspensa em virtude da falência da empresa. | Clito Fornaciari | 8/12/2009 |
| | | Falência nº 583.00.1996.932710-3 | 31ª Vara Cível do Foro Central da Comarca da Capital- SP | Houve habilitação do crédito da Libro, no valor de R$ 3.183.501,18 - classificado como crédito hipotecário e R$ 2.609.299,05 - classificado como crédito quirografário. No entanto, tal cenário não é otimista, já que nosso advogado externo sinalizou que os bens arrecadados não serão suficientes para pagamento nem mesmo dos créditos preferenciais. | | |
| 170 | Mundus Estruturas | Execução - 98.001.093771-6 | 43ª Vara Cível da Comarca do Rio de Janeiro-RJ | prosseguimento da execução | Sayão e Sanches Advogados Associados | 8/12/2009 |
| 171 | Alpi ABC Distribuidora de Veículos Ltda. | Processo de falência nº 564.01.2000.009156-4/000002-000 | 9ª Vara Cível da Comarca de São Bernardo Campo-SP | Temos crédito habilitado no valor de 3.190.885,25, porém a falência está encerrada por falta de bens. | Gastaldello, Turco, Barros e Advogados Associados | 8/12/2009 |
| | | Processo de execução nº 564.01.1996.011672-9 | 8ª Vara Cível da Comarca de São Bernardo do Campo-SP | Ante a não localização de bens, foi requerida a suspensão do processo nos termos do artigo 791, III do CPC. Processo atualmente arquivado. | | |
| | | Processo de execução nº 564.01.1996.014862-0 | 9ª Vara Cível da Comarca de São Bernardo Campo-SP | Ante a não localização de bens, foi requerida a suspensão do processo nos termos do artigo 791, III do CPC. Processo atualmente arquivado. | | |
| 172 | Imperial Diesel S.A. Veículos Peças e Acessórios | Execução - 001996087184-6 | 6ª Vara Cível de Recife-PE | penhora de imóveis localizados em Recife | Péres de Souza Advogados | 8/12/2009 |

| 174 | Casa Mantiqueira Ltda. | ação de prestação de contas 583.00.2003.059914-7 | 10ª Vara Cível de São Paulo- SP | diante do não pagamento dos honorários periciais, o juiz decretou a preclusão da prova requerida pela Casa Mantiqueira. | Penachin e Nascimento Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 175 | Ultramóveis Industrial Ltda. | Execução de Título Extrajudicial nº 1326/1995 | 21ª Vara Cível da Comarca de Curitiba/PR | Embargos à execução julgados procedentes. Em sede de recurso de apelação, o Tribunal de Justiça reformou integralmente a decisão, possibilitando o prosseguimento do feito executivo. Iniciada a fase de liquidação da sentença. | Lemes & Lemes Advogados Associados S/C | 8/12/2009 |
| 176 | Ultrafrio Refrigeração Ltda. | Execução de Título Extrajudicial nº 711/1997 | 4ª Vara Cível da Comarca de Curitiba/PR | Os Embargos à Execução foram julgados improcedentes, tendo a decisão transitado em julgado. No entanto, os processos estão suspensos em virtude da falência da empresa e da ausência de bens penhoráveis. | Guimarães e Advogados Associados | 8/12/2009 |
| | | Execução de Título Extrajudicial nº 709/1997 | 4ª Vara Cível da Comarca de Curitiba/PR | | | |
| | | Execução de Título Extrajudicial nº 1226/1997 | 4ª Vara Cível da Comarca de Curitiba/PR | | | |
| 177 | Superfine Mecano Peças Indústria Geral Ltda. | Processo de falência nº 583.00.1996.529056-9 | 8ª Vara Cível do Foro Central da Comarca da Capital | Crédito habilitadocomo quirografário na falência no valor de R$ 1.356.133,15 | S.S. Queique Advogados S/C | 8/12/2009 |
| | | Ação Monitória nº 583.02.2002.015574-5 | 7ª Vara Cível do Foro Regional de Santo Amaro-SP | Processo julgado extinto, pois as 22 notas promissórias no valor de R$ 482.332,13 estavam prescritas. | | |
| 178 | Companhia Agro Industrial Nossa Senhora do Carmo | Execução no. 1990.001708-3 | 11a. Vara Cível da Comarca de Recife PE | Houve penhora no rosto dos autos de ação da Usina contra a União Federal, créditos de 4870, em Outubro de 2005 no valor de R$ 179.171. Posteriormente houve extravio dos autos, procedemos a restauração judicial, que encontra-se em fase de prazo npara contestação dos devedores. | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
| 179 | Cooperativa dos Produtores de Açúcar e Álcool de Pernambuco Ltda. | Execução no. 1998.021485-7 | 7a. Vara Cível da Comarca de Recife PE | Houve penhora no rosto dos autos de ação da Usina contra a União Federal, créditos de 4870, em Outubro de 2005 no valor de R$ 5.267.596 | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
| | | Execução no. 1998.001888-0 | 11a. Vara Cível da Comarca de Recife PE | Houve penhora no rosto dos autos de ação da Usina contra a União Federal no valor de R$ 3.752.788 | | |
| 180 | Distribuidora de Bebidas Guarulhense | Execução nº 006.96.275580-9 | 2ª Vara Cível do Foro Regional da Penha da Comarca de SP. | Efetuada a penhora dos imóveis dos garantidores que serão levados à avaliação posteriormente a citação do último garantidorpendente. | Péres de Souza Advogados | 8/12/2009 |

| | | | | | |
|---|---|---|---|---|---|
| 181 | Autel S.A. Telecomunicações | Ação de Busca e Apreensão nº 000.02.193439-8 | 6ª Vara Cível do Foro Regional de Santo Amaro | Processo arquivado | Celso de Lima Buzzoni | 8/12/2009 |
| | | Ação de Busca e Apreensão nº 000.02.019172-5 | | Processo extinto - fase de execução de honorários sucumbenciais. | | |
| 182 | Usina Salgado S.A. | Execução no. 001.1997.042936 4 | 6ª. Vara Cível da Comarca de Recife PE | Os autos encontram-se conclusos para julgamento de embargos do devedor em primeira instância. Os autos desapareceram em Março de 2006 e foram localizados em Janeiro de 2008, dando andamento ao feito. | Laurindo de Albuquerque S/C Advogados Associados | 8/12/2009 |
| 183 | Engexplo Desmonte A Explosivos Ltda. | **CRÉDITO LIQUIDADO** | | | **CRÉDITO LIQUIDADO** | |
| 184 | Serpa Comércio e Indústria de Pescados Ltda. | Habilitação de crédito na falência nº 4455/95 | 1a. Vara Cível da Comarca de Itajaí/SC | Crédito cedido em outubro/2008 | Maurílio Matias Paulo Advogados Associados | 8/12/2009 |
| | | Execução 95.001398-0 | 3a. Vara Cível da Comarca de Itajaí/SC | Extinto em razão da Súmula 233 do STJ | | |
| | | Execução | 40a. Vara Cível da Comarca de São | Arquivado. Os bens penhorados foram arrecadados na falência | | |
| | | Habilitação de crédito na falência nº 4455/95 | 1a. Vara Cível da Comarca de Itajaí/SC | Crédito habilitado na falência como quirografário | | |
| | | Habilitação de crédito na falência nº 4455/95 | 1a. Vara Cível da Comarca de Itajaí/SC | Crédito habilitado na falência como quirografário | | |
| 185 | Diamantina Construções | ação monitória nº 968/2003 | 17ª Vara Cível de Curitiba-PR | O processo está em fase de especificação de provas, aguardando designação de audiência de conciliação. | Guimarães e Advogados Associados | 8/12/2009 |
| | | processo de falência nº 305/1994 | 2ª Vara Cível da Comarca de Curitiba- | Temos crédito habilitado como quirografário no valor de CR$ 96.513.599,68. | | |
| 186 | Amapá do Sul S.A. Indústria da Borracha | ação revisional 10500640319; busca e apreensão | 4ª Vara Cível de Novo Hamburgo-RS | processo principal aguarda conclusão das provas, permanecendo suspensas estas demandas | Lessa & Pilla Advogados | 8/12/2009 |
| | | busca e apreensão 10500647453; ordinária | 4ª Vara Cível de Novo Hamburgo-RS | processo principal aguarda conclusão das provas | | |
| | | ação revisional 105.0033911-5; busca e apreensão | 4ª Vara Cível de São Leopoldo-RS | aguardando julgamento de recurso de apelação | | |
| 187 | Cintra Comércio de Metais Ltda. | **PUT BACK** | | | | |

| 188 | Exportadora Princesa do Sul Ltda. | Execução - 583.00.1996.544356-4 | 22ª Vara Cível de São Paulo-SP | Processo suspenso em razão de agravo de instrumento interposto pela devedora. Recurso julgado em novembro/09. Negado provimento. O processo será retomado com a alienação das cotas sociais da empresa Café Bom Dia. | Deccache Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 189 | Frigorífico Rochedo Ltda. | Execução nº 010/1.05.0008808-2 (nº antigo 1001353580) | 6ª Vara Cível da Comarca de Caxias do Sul | A substituição da Libro no pólo ativo da demanda, como cessionária do crédito, foi obstada por recurso dos devedores. Apesar do trânsito em julgado da questão, há a possibilidade da substituição ser alcançada, caso os devedores sejam notificados pessoalmente da cessão de crédito. Requeremos o pedido de desconsideração inversa de Nestor Perini e conseguimos penhorar ações da Lupatech para garantir o juízo. Estamos aguardando o julgamento de agarvo de instrumento dos devedores no sentido de reverter tal penhora. | Castro, Barros, Sobral, Gomes Advogados | 8/12/2009 |
| 190 | Frigorífico Perini S.A. | Ação de Execução nº 010/1.05.0038147-2 (nº antigo 1001584168) | 6ª Vara Cível da Comarca de Caxias do Sul | Protocolamos petição em resposta ao despacho acima, requerendo o reconhecimento de fraude à execução por Cezar Luiz Perini em virtude das doações realizadas por ele em favor do filho (Felipe Perini), constantes de sua declaração de Imposto de Renda.Foi proferida decisão reconhecendo a fraude à execução, para tornar sem efeito a doação feita por Cezar Luiz Perini em favor de Felipe Perini e determinar a penhora on line das contas de Felipe Perini.Foi anexado aos autos o resultado da pesquisa do BacenJud (penhora on line). O valor bloqueado foi: R$ 1.498.244,66 em 22/09/09. Após, o juiz determinou que o MP se manifestasse. | | |
| | | Execução nº 010.1.05.0002080-1 (nº antigo 1001587229) | 1ª Vara Cível da Comarca de Caxias do Sul | Protocolamos e despachamos petição requerendo o prosseguimento da execução para a realização de atos executivos, a substituição processual do Banco América do Sul pela Libro (com a juntada de acórdão recente, proferido pelo TJRS que determinou a permanência da Libro no pólo ativo da execução nº 1001400209) e a realização de penhora portas a dentro na residência dos executados. A petição encontra-se pendente de análise do juiz. | | |
| 191 | Frigoverdi S.A. | Ação de Execução nº 010.1.05.0037929-0 (nº antigo 1001400209), | 6ªVC de Caxias do Sul – RS | Foi realizada a penhora de veículos (Jaguar e Kia Sportage, no valor aprox. de R$ 80.000,00 e R$ 20.000,00 respectivamente). Foram anexados aos autos os mandados de intimação de penhora dos veículos pertencentes aos Executados. Através de contato com o Oficial de Justiça responsável pela diligência fomos informados que as diligências foram negativas, portanto em breve seremos intimados para falar sobre isso. Devemos formular pedido de intimação por hora certa. | | |
| | | Falência – processo nº 155/00 | Vara Especializada de Falência e Concordata da Comarca de Cuiabá. | Os créditos do banco figuram no quadro geral de credores, porém são créditos quirografários de difícil recuperação. | | |

| 192 | Servicomp | Execução nº 008.98.018534-0 | 1ª Vara Cível da Comarca de Blumenau/SC | Processo arquivado, por falta de bens. Empresa encerrou irregularmente suas atividades, não existem garantias nem patrimônio em seu nome nem em nome da garantidora, cujo paradeiro é desconhecido. Crédito irrecuperável. | Dietrich e Marinho Advogados Associados | 8/12/2009 |
|---|---|---|---|---|---|---|
| 193 | Cloroetil Solventes | Processo de execução nº 583.00.1997.637673-2 | 15ª Vara Cível do Foro Central da Comarca da Capital-SP | Conseguimos penhorar um bem imóvel em nome da empresa. O processo está em fase de avaliação juidicial deste bem. | Advocacia Luis Henrique da Silva | 8/12/2009 |
| 194 | Runner S.A. | Ação Monitória nº 000.03.150971-1 | 39ª Vara Cível do Foro Central da Comarca da Capital- SP | Ação conexa à ação revisional nº 583.00.2003.107299-2 , em trâmite na 39ª Vara Cível do Foro Central da Comarca da Capital-SP. | Celso de Lima Buzzoni | 8/12/2009 |
| | | Ação revisional nº 583.00.2003.107299-2 | 39ª Vara Cível do Foro Central da Comarca da Capital- SP | Ação julgada parcialmente procedente para declarar a rescisão do contrato, condenando a ré ao pagamento do valor de R$ 1.836.532,15. Contra essa decisão, a ré interpôs recurso de apelação, o qual aguarda julgamento no Tribunal de Justiça. | | |
| 196 | Sasse Alimentos Ltda. | Busca e Apreensão nº 036.06.009928-9 | Vara da Fazenda da Comarca de Jaraguá do Sul/SC | Aguarda-se manifestação do autor com relação à notícia de cessão de crédito do Banco ABN para a Libro. | Henrique G. Schroeder Advogados Associados | 8/12/2009 |
| | | Execução nº 036.05.004053-2 | 2ª Vara Cível da Comarca de Jaraguá do Sul/SC | Processo arquivado, por falta de bens. | | |
| | | Ordinária de Cobrança nº 036.06.001037-7 | 2ª Vara Cível da Comarca de Jaraguá do Sul/SC | Ação julgada extinta, sem análise do mérito (ilegitimidade passiva). Contra essa decisão, a Libro interpôs recurso de apelação, o qual aguarda julgamento no Tribunal de Justiça. | | |
| | | Concordata Preventiva nº 036.02.004296-0 | Vara da Fazenda da Comarca de Jaraguá do Sul/SC | Conforme informações do advogado externo, nosso crédito é quirografário e há muitos créditos preferenciais, o que inviabiliza o recebimento deste crédito pela concordata. | | |
| 197 | Cooperativa Agrícola Cotia | Pedido de Restituição de Importâncias 1680/99 R - 04 | 4a. Vara Cível da Comarca de Mogi das Cruzes/SP | Julgado improcedente. Aguardando julgamento da apelação no TJ | Freitas e Barbosa Advogados Associados | 8/12/2009 |
| | | Execução 1994.453541-9 | 4a. Vara Cível do Foro Reguional Pinheiros a Comarca de São Paulo/SP | Arquivado por insuficiência de bens penhoráveis | | |

| | | | | | |
|---|---|---|---|---|---|
| 198 | Badra S.A. | Execução de Título Extrajudicial - Processo nº 583.00.1996.502867-7 | 23ª Vara Cível do Foro Central da Comarca de São Paulo | Não foram localizados bens e o processo foi suspenso | Celso de Lima Buzzoni | 8/12/2009 |
| | | Execução de Título Extrajudicial - Processo nº 583.00.1995.911544-0 | 1ª Vara Cível do Foro Central da Comarca de São Paulo | Processo suspenso por 30 dias para tentativa de localização de bens | | |
| | | Execução de Título Extrajudicial - Processo nº 583.00.1995.912180-0 | 11ª Vara Cível do Foro Central da Comarca de São Paulo | Suspensa por falta de bens. | | |
| | | Concordata nº 583.00.1995.634536 | 23ª Vara Cível do Foro Central da Comarca de São Paulo | O Banco, antes da cessão do crédito, já recebeu mais de R$ 2MM nos autos da concordata. Pelos bens que existem, as chances de a Libro receber pela concordata são mínimas. | | |
| 199 | Laticínios Suíço Holandês Ltda. | Processo de execução nº 583.00.2008.201281-2 | 29ª Vara Cível do Foro Central da Comarca da Capital-SP | Devedores citados, houve apresentação de exceção de incompetencia e incidente de falsidade documental. Foi interposto agravo de instrumento nos autos que rejeitaram a exceção. | Advocacia Luis Henrique da Silva | 8/12/2009 |
| | | Processo de execução nº 583.00.2008.159195-0 | 29ª Vara Cível do Foro Central da Comarca da Capital-SP | Penhora do faturamento da empresa deferido (30%). Aguarda-se intimação do diretor financeiro. Deferida a expedição de carta precatória para Itatiba. | | |
| 200 | Usina Ouricuri | AÇÃO MONITÓRIA Nº 001.97.010181-4 | 5.ª VARA CÍVEL DA COMARCA DE MACEIÓ - AL | Foi quebrado o sigilo fiscal dos réus e o advogado terceirizado requereu a penhora dos bens encontrados nas declarações de Imposto de Renda. Aguarda decisão do Juiz, estando os autos conclusos | Escritório Quintella | 8/12/2009 |
| 201 | Transportadora Guarany Ltda. | Não temos ações contra a empresa, somente a empresa tinha ações contra a Libro | Cuiabá-MT | Ações existintas | MH Flores | 8/12/2009 |
| 202 | Senior Grupo Empresarial Ltda. | NÃO HÁ PROCESSO | | | NÃO HÁ ADVOGADO | 8/12/2009 |
| 203 | Frigodema Frigorífico Diadema Ltda. | NÃO HÁ PROCESSO LEGAL | | | NÃO HÁ ADVOGADO | 8/12/2009 |

| 204 | Polyenka Ltda. | Execução nº 583.00.2008.159433-7 | 32ª Vara Cível do Foro Central da Comarca de São Paulo | Avaliação dos bens | Penachin e Nascimento Advogados | 23/3/2010 |
|---|---|---|---|---|---|---|
| | | Recuperação Judicial nº 1.226/2006 | 2ª Vara Cível da Comarca de Americana | Leilão dos bens | Pinheiro Guimarães Advogados | |
| 205 | Itasider-Usina Siderúrgica Itaminas S.A. | Execução 024.94003445-7 | 10a. Vara Cível da Comarca de Belo Horizonte/MG | Penhorados o ferro gusa e o sinter feed. Embargos julgados improcedentes. Feita avaliação do sinter feed e marcado leilão.Constatou-se que o bem não existia nas especificações penhoradas. Bco. Ajuizou ação de depósito e perdeu. Não há regular nomeação de depositário judicial, ainda. | Deccache Advogados Associados | 23/3/2010 |
| | | Execução 024.93.066.292-9 | 26a. Vara Cível da Comarca de Belo Horizonte/MG | Penhoradas duas áreas de terras em Sete Lagoas: Matrícula 13.626 com 27,8810 hectares e Matrícula 17.833 com 108,7310 herctares. Penhora regularizada em jan/2008. Devdora embargou. Em fase de perícia contábil. | | |
| 206 | Esportebrás S/C Ltda. | Ação de reintegração de posse nº 583.00.2003.105163-0 | 1ª Vara Cível do Foro Central da Comarca da Capital- SP | Ação julgada procedente, para declarar a rescisão do contrato e condenar a ré ao pagamento de R$ 64.422,21. Contra essa decisão, a ré interpôs recurso de apelação, o qual aguarda julgamento no Tribunal de Justiça. | Penachin e Nascimento Advogados Associados | 8/12/2009 |
| 207 | Pilot Indústria e Comércio de Calçados Ltda. | Ação de Restituição no. 001/1.05.0333323-2 | VARA DE FALÊNCIAS E CONCORDATAS DO FORO CENTRAL DA COMARCA DE PORTO ALEGRE/RS | Os créditos eram de ACC´s, porém todas as restituições pendiam de julgamento há 9 anos. A massa tinha poucos bens a arrecadar e surgiu a oportunidade de um acordo com o síndico. As bases do acordo eram o reconhecimento dos créditos como restituintes, o imediato pagamento de R$ 2MM em janeiro de 2008, condicionados à liquidação do crédito da Francesca (grupo) e parte do pagamento destiando a Pilot e R$ 3MM a receber quando da venda dos demais ativos, mas seremos os primeiros a receber, respeitando a preferência do nosso crédito. | S.N.S - Silva Noronha & Santos Advogados | 8/12/2009 |

| 208 | Algodoeira Atibaia Ltda. | Ação Cautelar e Ação Declaratória (2008.011617-0 | 2ª Vara Cível da Comarca de Atibaia-SP | Apresentada contestação pela Libro | Eclissato, Fleury, Caverni e Albino Neto Advogados | 8/12/2009 |
|---|---|---|---|---|---|---|
| | | | 36ª Vara Cível de São Paulo | Expedidas cartas precatórias para citação dos devedores | | |
| 210 | Santo André Participações e Empreendimentos S.A. | Monitória nº 583.00.2000.648511-1 | 15ª Vara Cível do Foro Central da Comarca de São Paulo | Processo extinto, com sentença transitada em julgado. | Leme, Gomes, Heer e Carvalho Advocacia | 8/12/2009 |
| 211 | Irmãos Thá S.A. Construções e Comércio | Execução de Título Extrajudicial nº 35.164/2009 | 12ª Vara Cível da Comarca de Curitiba | Após a apresentação de Embargos à Execução, foi celebrado acordo de pagamentos, razão pela qual o processo encontra-se suspenso, aguardando-se o cumprimento dos pagamentos. | Guimarães e Advogados Associados | 8/12/2009 |

**Schedule 12.2  – Asset Acquisition Statement**

The Asset Price shall be allocated as follows:

| Asset Price Allocation | Notes | Equity | Total |
|---|---|---|---|
| LB1 | 777,004.43 | 21,110,088.68 | *21,887,093.10* |
| LBSF | 222,995.57 | 4,889,911.32 | *5,112,906.90* |
| **Total** | **1,000,000.00** | **26,000,000.00** | ***27,000,000.00*** |

The final Purchase Price shall be allocated as set forth above, pro-rata to the amounts allocated to each asset.

**Exhibit B**
**(de Lucio Declaration)**

US_ACTIVE:\43259411\12\58399.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                         :

**In re**                                :          **Chapter 11 Case No.**
                                           :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,     :          **08-13555 (JMP)**
                                           :

                         **Debtors.**         :          **(Jointly Administered)**
                                           :
----------------------------------------------------------------x

**DECLARATION OF LUIS FELIPE DE LUCIO IN SUPPORT OF DEBTORS'**
**MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY**
**CODE AND BANKRUPTCY RULE 6004 FOR APPROVAL OF THE SALE OF**
**LEHMAN BROTHERS SPECIAL FINANCING INC.'S INTEREST IN A NOTE AND ITS**
**EQUITY IN LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS**

         Luis Felipe de Lucio, Jr. hereby declares under penalty of perjury pursuant to

section 1746 of title 28 of the United States Code:

         1.        I am over 18 years of age and I can testify to the following facts based on

my personal knowledge, my review of the business records of Libro Companhia Securitizadora

de Créditos Financeiros ("Libro"), and/or my consultation with, among others, employees of

Lehman Brothers Holdings Inc. ("LBHI"), LBHI's subsidiaries, A&M[1] and Alvarez & Marsal

Brazil Ltda ("A&M Brazil").  I submit this Declaration in support of the *Debtors' Motion*

*Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for*

*Approval of the Sale of Lehman Brothers Special Financing Inc.'s Interest in a Note and its*

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

*Equity in Libro* (the "Motion").  If called to testify, I could testify to the truth of the matters set forth herein.

2.      I am a graduate of the University of Maryland (Bachelor in Economics) and of the American University in Washington, D.C. (M.B.A).  I have 24 years of professional experience in the financial services and consulting industries.  These include serving as a senior advisor with Darby Overseas Investments Ltd., a venture capital and private equity private investment firm, and as a senior member of Ernst & Young's Corporate Finance Group, based in both the U.S. and Latin America, where I oversaw the firm's Corporate Finance practice from Sao Paulo, Brazil.  I was also a commercial banker at a predecessor of Bank of America in the U.S. for five years.

3.      In 2003, I joined A&M as a managing director with responsibility for Latin America.  Following the Commencement Date, I was appointed head of the A&M Brazil team responsible for stabilizing, managing and liquidating Lehman's South American assets.

4.      My responsibilities include (i) oversight over day-to-day management of Lehman's South American subsidiaries; (ii) approval of material collection strategies for the ABN Portfolio and the Distressed Asset Portfolio; and (iii) formulation and management of strategies for realizing value from Lehman's other South American assets.  In that respect, I have been intimately involved in the sale process described below.

5.      I understand that Libro was originally formed to hold certain of Lehman's investments in fixed income and distressed assets in Brazil.  It currently has no employees and its only assets, as of October 31, 2010, were three portfolios of fixed income and distressed assets, approximately R31,167,000 (approximately $18,334,000) in cash on hand, and real property with

an estimated recovery value of approximately R7,337,500 (approximately $4,316,175).[2]  As of

October 31, 2010, the portfolios consisted of (i) a portfolio of corporate non-performing loans

with an outstanding principal balance of R726,000,000 (approximately $427,000,000); (ii) a

portfolio of performing social security-benefit-deductible loans with an outstanding balance of

R4,628,400 (approximately $2,722,600); and (iii) a portfolio of distressed assets with an unpaid

principal balance (for non-performing assets) / outstanding value (for performing assets) of

R$85,427,000 (approximately $50,250,000).

6.      Libro's principal liabilities,[3] as of October 31, 2010, were the principal

and interest outstanding on the Notes, totaling approximately R64,128,900 (approximately

$37,722,900), contingent withholding tax liabilities in the amount of approximately R27,854,500

(approximately $16,385,000), and contingent litigation liabilities related to counterclaims for

attorneys' fees arising from Libro's collection efforts with respect to the ABN Portfolio.[4]

7.      In developing a strategy for monetizing the Sellers' investment in Libro,

A&M Brazil considered three disposition scenarios: (i) an entity sale; (ii) a sale of assets

followed by liquidation; and (iii) continued operation of Libro until collection costs exceeded

expenses and cash flows became negative, at which point Libro would be placed into an

insolvency proceeding in Brazil.

---

[2] Amounts set forth herein are denominated in Brazilian Reais ("R").  For the convenience of the Court, conversions to U.S. dollars are provided based on the rate of exchange published by the Brazilian Central Bank as of November 1, 2010, which is approximately 1.7 reais to 1 U.S. dollar.

[3] Nothing contained herein shall be construed as an acknowledgement of the validity or amount of any particular liability, other than the Notes, and the Debtors and Libro reserve the right to contest the validity or amount of any of Libro's liabilities, other than the Notes, for any reason.

[4] Due to the early stage of some proceedings and to the generality of some of the claims, it is impossible to estimate the amount of contingent litigation liabilities with any degree of precision.

8.      This last option was discarded as being inconsistent with the timeframe of the Debtors' chapter 11 cases, as collection proceedings in Brazil frequently extend for 10 years or more, and are unduly risky for Libro's officers and the Sellers, as officers and shareholders potentially could be personally liable for the unpaid taxes of entities in insolvency proceedings.

9.      With respect to an asset sale, A&M Brazil identified two principal difficulties:  first, in order to sell or assign the ABN Portfolio and/or Distressed Asset Portfolio on a piecemeal basis, each of the actions that Libro has commenced to collect amounts due under the loans that comprise the ABN Portfolio and the Distressed Asset Portfolio would have to be transferred to the purchaser.  Such transfers represent a significant challenge because Libro would be required to (i) provide each counterparty with notice, (ii) petition each court in which a proceeding is pending for leave to transfer the litigation, and (iii) address the likely objections raised by counterparties in connection therewith.

10.      Second, as discussed below, Libro has significant contingent tax and litigation liabilities.  Consequently, there is a risk that if Libro were to sell its assets and use the proceeds to repay intercompany debt and make distributions to LBSF and LB I Group, such payments and distributions could be subject to challenge in the event Libro became insolvent as a result of such contingencies.

11.      Based on these issues, it was determined that a sale of the Notes and the Equity in a single transaction represented the best option to recover value from Libro.  This was consistent with A&M Brazil's internal valuation models, which showed that the potential recoveries to LBSF and LB I Group would be highest in an entity sale.  This course of action was discussed with and approved by Mr. Daniel Ehrmann, a managing director of A&M who is

overseeing the disposition of the Debtors' foreign assets.  The Creditors' Committee's

representatives were also kept apprised of the strategy discussions throughout the process.

12.    In order to implement this strategy, on or about April 15, 2010, the Sellers

entered into a non-binding letter-agreement with Banco BTG Pactual S.A. ("BTG") pursuant to

which BTG agreed to act as "stalking horse" bidder for the sale of the Notes and the Equity,

subject to due diligence and confirmation.

13.    In parallel, on June 16, 2010, A&M Brazil distributed promotional

materials to 25 parties who had previously expressed interest in Libro (the "Interested Parties").[5]

The promotional materials contained a description of Libro and its assets and invited potential

bidders to enter into a standard non-disclosure agreement as a prerequisite to participating in the

sale process for the Notes and the Equity.  Five parties signed non-disclosure agreements during

July and August 2010 (the "Potential Purchasers") and were given access to a virtual data room

(the "Data Room") containing all relevant information regarding Libro.

14.    BTG ultimately withdrew from the sale process leaving the Sellers without

a stalking horse bidder.  Shortly thereafter, the Sellers decided that the course of action most

likely to maximize the Sellers' recoveries from the Notes and the Equity, notwithstanding BTG's

withdrawal, was to proceed with the sale process without a stalking horse bidder.

15.    On August 20, 2010, the Sellers informed the Potential Purchasers of the

formal launch of the competitive sale process.  During the month of September, A&M Brazil

held one-on-one conference calls with each of the Potential Purchasers to review Libro's

businesses and its assets and affairs.  The Sellers also hosted a webcast presentation by the

servicer of the ABN Portfolio.  Indicative offers were due on September 30.

---

[5] A list of the Interested Parties is attached hereto as Exhibit 1.

16.    Only two of the Potential Purchasers submitted indicative offers, one from a New York-based firm (the "Other Bidder") for R23,000,000 (approximately $13,529,400), and one for R26,000,000 (approximately $15,294,100) from Jive Investments Holding Ltd. ("JIH"). To the best of my knowledge, neither JIH nor any of its principals has any connection with Lehman. A&M Brazil contacted the other Potential Purchasers and all confirmed they were not interested in submitting indicative offers.

17.    A&M Brazil held individual meetings with JIH and the Other Bidder to discuss their offers and attempt to improve them. As a result of this process, JIH agreed to increase its purchase price to R27,000,000 ($15,882,400). This was confirmed in a binding offer dated October 24, 2010. The Other Bidder declined to improve its original offer or to present a binding offer.

18.    After further discussion with the Creditors' Committees' representatives, the Sellers agreed to accept JIH's offer and the Purchase Agreement was executed on November 1, 2010.

19.    During the negotiations of the Purchase Agreement, JIH indicated that the Break-up Fee and the Expense Reimbursement were material elements of the Purchase Agreement and that JIH was unwilling to enter into the Purchase Agreement at the negotiated price without the protection provided in connection therewith.

20.    Following my review of the Purchase Agreement, and my discussions with employees of A&M, A&M Brazil and LBSF's advisors, I believe that the transactions set forth in the Purchase Agreement, including the Break-up Fee and the Expense Reimbursement, represent a reasonable exercise of LBSF's business judgment and are in the best interests of LBSF's estate and creditors. Further, I believe that, in the event that the Court approves an

Alternative Transaction, payment of the Break-up Fee to JIH will nevertheless be justified because of the assistance that JIH's firm offer likely played in the Sellers' negotiation of a Superior Proposal.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 8th day of November 2010.

/s/ Luis Felipe de Lucio, Jr.
Luis Felipe de Lucio, Jr.

**Exhibit 1**
**(Interested Parties)**

| |
|---|
| Advent |
| Alsis Funds |
| Arion Capital |
| Arrowgrass Capital Partners LLP |
| Banco Tricury |
| Barclays |
| BTIG |
| Carval Investors Consultoria Financeira |
| Credit Suisse |
| Deutsche Bank |
| DGF Investimentos |
| Eliott Management Corporation |
| Global Securities Advisors LLC |
| GMG Investment Advisors, LLC |
| Goldman Sachs |
| Itau BBA |
| Jive Investments Holding Ltd. |
| JPMorgan Chase |
| Marathon |
| McQuarie |
| Merrill Lynch/BofA |
| Och-Ziff |
| Polo Capital |
| Rio de Janeiro Capital Partners |
| Vision Brazil |

**<u>Exhibit C</u>**
**(Ehrmann Declaration)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                              :

**In re**                          :      **Chapter 11 Case No.**

                             :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :      **08-13555 (JMP)**

                             :

               **Debtors.**      :      **(Jointly Administered)**

                             :
-------------------------------------------------------------------x

**DECLARATION OF DANIEL EHRMANN IN SUPPORT OF DEBTORS'
MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULE 6004 FOR APPROVAL OF THE SALE OF
LEHMAN BROTHERS SPECIAL FINANCING INC.'S INTEREST IN A NOTE AND ITS
EQUITY IN LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS**

          Daniel Ehrmann hereby declares under penalty of perjury pursuant to

section 1746 of title 28 of the United States Code:

          1.      I am over the age of 18 years and make these statements of my

own personal knowledge, my review of the business records of Libro Companhia

Securitizadors de Creditos Financeiros ("Libro"), and/or my consultation with employees

of Lehman Brothers Holdings Inc. ("LBHI"), LBHI's subsidiaries, A&M and Alvarez &

Marsal Brasil Ltda. ("A&M Brazil").[1]  I submit this Declaration in support of the

*Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and*

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

*Bankruptcy Rule 6004 for Approval of the Sale of Lehman Brothers Special Financing*

*Inc.'s Interest in a Note and its Equity in Libro* (the "<u>Motion</u>").  If called to testify, I

could testify to the truth of the matters set forth herein.

2.       I am a Managing Director with A&M and a Vice President of

LBSF.  I was assigned to the Lehman matter in September 2008.  My primary areas of

responsibility include managing all of the Debtors' international and foreign matters and

managing and overseeing the Debtors' derivative transactions.  In that capacity, I am

responsible for supervising the collection and disposition of all of Lehman's Brazilian

assets.  In consultation with Mr. de Lucio and certain employees of A&M Brazil, I have

become generally familiar with Libro's businesses and capital structure.  The efforts of

Mr. de Lucio and A&M Brazil with respect to the sale of the Notes and the Equity,

including the marketing process and the negotiation of the Purchase Agreement, have

occurred with my approval and under my supervision.

3.       I have reviewed the Purchase Agreement, the Motion, and the de

Lucio Declaration and consulted with various employees of A&M, A&M Brazil, and

counsel to the Debtors with respect thereto.  For the reasons set forth in the Motion, I

believe that the decision to sell the Notes and the Equity to JIH pursuant to the Purchase

Agreement is a reasonable and prudent exercise of LBSF's business judgment.  Further,

based on, and with reference to, the factual basis set forth in the Motion and the de Lucio

Declaration, and for the reasons set forth therein, I believe that the Purchase Agreement

was negotiated at arm's length and in good faith and that the Purchase Agreement,

including payment of the Break-up Fee and the Expense Reimbursement if applicable, is

in the best interests of LBSF, its estate and creditors.

I declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct to the best of my knowledge.

Executed on this 8th day of November 2010.

/s/ Daniel Ehrmann
Daniel Ehrmann

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
|   |   |
|---|---|
| In re | : |
|   | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : |
|   | : |
| Debtors. | : |
|   | : |

: Chapter 11 Case No.

: 08-13555 (JMP)

: (Jointly Administered)

----------------------------------------------------------------x

### ORDER PURSUANT TO PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004 AUTHORIZING DEBTORS TO SELL LEHMAN BROTHERS SPECIAL FINANCING INC.'S INTEREST IN A NOTE AND ITS EQUITY IN LIBRO COMPANHIA SECURITIZADORA DE CRÉDITOS FINANCEIROS

Upon the motion, dated November 8, 2010 (the "Motion"),[1] of Lehman Brothers

Special Financing Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11

cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections

105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and rule 6004 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization and

approval of LBSF's entry into the Purchase Agreement, all as more fully described in the

Motion, the de Lucio Declaration and the Ehrmann Declaration;[2] the filed objections, if any, to

the Motion (the "Objections"); the record of the hearing held on December 1, 2010 to consider

the relief requested in the Motion; and the Court having jurisdiction to consider the Motion and

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

---

[1] Capitalized terms that are used but not defined in this Order have the meanings ascribed to them in the Motion.

[2] If the Court approves an Alternative Transaction, the Order approving such Alternative Transaction will provide for the approval of LBSF's participation in the payment of the Break-up Fee and the Expense Reimbursement to Jive Investments Holding Ltd. ("JIH").

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to (i) the U.S. Trustee; (ii) the attorneys for the

Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other

parties entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635], and it appearing that no other or further notice need be provided; and

the Court having found and determined that the relief sought in the Motion is in the best interests

of LBSF, its estate and creditors, and all parties in interest and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor,

THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:

1.      **Arm's-Length Sale**.  The Purchase Agreement was negotiated, proposed

and entered into by the Sellers and JIH without collusion, in good faith and from arm's-length

bargaining positions.  Neither the Sellers nor JIH have engaged in any conduct that would cause

or permit the Purchase Agreement to be avoided under Bankruptcy Code section 363(n).

Specifically, JIH has not acted in a collusive manner with any person and the purchase price was

not controlled by any agreement among the Potential Purchasers.

2.      **Good Faith Purchaser**.  JIH is a good faith purchaser of the Notes and

the Equity within the meaning of Bankruptcy Code section 363(m) and is, therefore, entitled to

all of the protections afforded thereby.  JIH has proceeded in good faith in all respects in connection with this proceeding.

3.      **Highest and Best Offer**. The Purchase Agreement constitutes the highest and best offer for the Notes and the Equity, and will provide a greater recovery for LBSF's estate than would be provided by any other available alternative.  LBSF's determination that the Purchase Agreement constitutes the highest and best offer for the Notes and the Equity constitutes a valid and sound exercise of LBSF's business judgment.

4.      **Consideration**. The consideration constitutes reasonably equivalent value or fair consideration, as the case may be (as those terms are defined in each of the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act and section 548 of the Bankruptcy Code), and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.  The Purchase Agreement represents a fair and reasonable offer to purchase the Notes and the Equity under the circumstances of these chapter 11 cases.  No other person or entity or group of entities, other than JIH, has offered to purchase the Notes and the Equity for an amount that would give greater economic value to LBSF's estate.  Approval of the Motion and the Purchase Agreement and the consummation of the transactions contemplated thereby is in the best interests of LBSF, its creditors and all other parties in interest.

5.      **Free and Clear**.  The transfer of the LBSF Equity and the BMG Note to JIH under the Purchase Agreement will be a legal, valid, and effective transfer of the LBSF Equity and the BMG Note, and vests or will vest JIH with all right, title, and interest of LBSF to the LBSF Equity and the BMG Note free and clear of all liens, claims, encumbrances, or interests ("<u>Interests</u>").  For the avoidance of doubt, all Interests shall attach to the proceeds

ultimately attributable to the LBSF Equity and the BMG Note, subject to the terms of such

Interests, with the same validity, force and effect, and in the same order of priority, which such

Interests now have against the LBSF Equity and the BMG Note or their respective proceeds,

subject to any rights, claims and defenses that LBSF may possess with respect thereto.

**NOW, THEREFORE, IT IS:**

ORDERED that the Objections, if any, are overruled and the Motion is

GRANTED; and it is further

ORDERED that, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code

and Bankruptcy Rule 6004, the Purchase Agreement, the terms and conditions set forth therein,

and the transactions contemplated thereby are approved and LBSF is authorized, but not

directed, to consummate all such transactions, including but not limited to, the sale of the BMG

Note and the LBSF Equity to JIH; and it is further

ORDERED that, pursuant to section 363(f) of the Bankruptcy Code, the sale of

the BMG Note and the LBSF Equity to JIH (the "Sale") shall be free and clear of any and all

liens, claims, encumbrances or interests, with such liens, claims, encumbrances or interests (if

any) to attach to the proceeds of the Sale with the same force, effect, and priority as such liens,

claims, encumbrances or interests have on the BMG Note and the LBSF Equity, as appropriate,

subject to the rights and defenses of LBSF and any party in interest with respect thereto; and it is

further

ORDERED that JIH is granted the protections provided to a good faith purchaser

under section 363(m) of the Bankruptcy Code; and it is further

ORDERED that the Purchase Agreement and the transactions contemplated

therein may be specifically enforced against and shall be binding upon, and not subject to

rejection or avoidance by, LBSF or any trustee subsequently appointed under chapter 7 or

chapter 11 of the Bankruptcy Code; and it is further

ORDERED that LBSF is authorized to execute and deliver such assignments,

conveyances, and other documents, and instruments of transfer and to take such other actions as

may be reasonably necessary to consummate the Sale; and it is further

ORDERED that, pursuant to Bankruptcy Rule 6004(h), the terms of this Order

shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that that this Court shall retain jurisdiction to interpret and enforce this

Order.

Dated:  _____, 2010
            New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE