EXECUTION COPY

# UNITED STATES BANKRUPTCY COURT
## Southern District Of New York

In re Lehman Brothers Holdings Inc., Case No. 08-13555 (JMP)

### PARTIAL TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Name of Transferee: Farallon Capital Partners, L.P.

Name of Transferor: JPMorgan Chase Bank, N.A.

Name and Address where notices to transferee should be sent:

Farallon Capital Partners, L.P.
c/o Farallon Capital Management, L.L.C.
One Maritime Plaza, Suite 2100
San Francisco, CA 94111

Court Claim # (if known): 67146 (as such claim number amends the previously filed proofs of claim 33006 and 66383)

Amount of Claim as filed: $519,057,796.15

Amount of Claim Transferred: $31,245,082.48

Date Claim Filed: amended claim filed on 10/25/10 and 03/11/2010, original claim filed on 09/22/2009

Phone: +1 415-421-2132

Debtor: Lehman Brothers Holdings Inc.

Last Four Digits of Acct #:

Name and Address where transferee payments should be sent (if different from above):

Phone: 212-552-1038

Last Four Digits of Acct #:

Phone:

Last Four Digits of Acct #:

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____     Date: 11-1-2010
    Transferee/Transferee's Agent

## AGREEMENT
## AND EVIDENCE OF TRANSFER OF CLAIM

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    (A)    For value received, the adequacy and sufficiency of which are hereby acknowledged, JPMorgan Chase Bank, N.A. (the "Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Farallon Capital Partners, L.P. (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided 100% interest to the extent relating to Seller's record and beneficial ownership in the securities (each, a "Purchased Security") specified in Schedules 1-2 attached hereto (each, a "Purchased Claim"), (b) all Seller's right, title and interest in and to Proof of Claim Number 67146 (as such claim number amends the previously filed proofs of claim 33006 and 66383) (the "Proof of Claim") filed by Frank Russell Company ("Prior Seller") against Lehman Brothers Holdings Inc. (the "Debtor") in the proceedings for reorganization of Debtor (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) but only to the extent related to each Purchased Claim, (c) all rights and benefits of Seller to the extent relating to each Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to each Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way each Purchased Claim, whether under a plan of reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever that Seller may have, whether against the Debtor or any other party, arising out of or in connection with each Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to each Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the Agreement and Evidence of Transfer of Claim dated November 1, 2010 (the "Prior Agreement") between Prior Seller and Seller, together with the transfer agreements, if any, under which Seller, Prior Seller or any other prior seller acquired the rights and obligations underlying or constituting a part of each Purchased Claim, and (d) any and all proceeds of any of the foregoing to the extent relating to each Purchased Claim (all of the foregoing, collectively, as described in clauses (a), (b), (c) and (d), the "Transferred Claims").

(B)    (1)    Purchaser shall pay for the Transferred Claims as follows: (i) on the date hereof (the "Initial Closing Date"), Purchaser shall pay Seller the initial purchase price ("Initial Purchase Price") equal to (x) $26,165,168.48 (the "Immediate Claim Amount") multiplied by (y) the purchase rate (the "Purchase Rate") agreed between Seller and Purchaser in a separate communication by and between Seller and Purchaser dated as of the date hereof; and (ii) on the fifth (5th) business day following the date on which the Purchased Claims become an Allowed Claim (as such term is defined in the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors, dated April 14, 2010 (Docket No. 8330) as may be altered, amended or modified (the "Plan")), that is no longer subject to becoming a Disputed Claim under the Plan, in an aggregate amount in excess of the Immediate Claim Amount and of the same type or class as the Immediate Claim Amount in the Proceedings (the "Additional Allowed Claim Amount"), Purchaser shall pay to Seller an additional purchase price (the "Additional Purchase Price") equal to (x) the Additional Allowed Claim Amount multiplied by (z) the Purchase Rate, and Seller shall pay to Prior Seller the Additional Purchase Price under the Prior Agreement. For the avoidance of doubt, in the event, and to the extent, that any portion of the Additional Claim Amount (as defined below) does not become an Allowed Claim (the "Disallowed Additional Claim Amount"), Purchaser shall have no obligation to pay for any such Disallowed Additional Claim Amount and the terms "Purchased Security", "Purchased Claim" and "Transferred Claims" shall not include such Disallowed Additional Claim Amount for purposes of this Agreement, and the provisions in Paragraph 2 hereof shall be inapplicable to the Disallowed Additional Claim Amount and the Proof of Claim as and to the extent the Proof of Claim relates to the Disallowed Additional Claim Amount. As used herein, "Additional Claim Amount" means that portion of the Purchased Securities covered by the Proof of Claim in excess of the Immediate Claim Amount.

(2)   In the event, and to the extent, that any portion of the Additional Claim Amount becomes an Allowed Claim in a type or class different than the Immediate Claim Amount (the "Recharacterized Claim"), (i) Purchaser shall effect (or shall use commercially reasonable efforts to cause any further direct or indirect transferee or assignee of Purchaser of the Recharacterized Claim (a "Purchaser Transferee")) to effect a transfer of the Recharacterized Claim to Prior Seller (or, in the alternative, to Seller for further transfer to Prior Seller), and (ii) in connection therewith shall make (or shall use commercially reasonable efforts to cause any Purchaser Transferee to make) to Seller, and to or for the benefit of Prior Seller, as "Purchaser" the representations and warranties (with Purchaser (or any such Purchaser Transferee) as "Seller") set forth in clauses (b) (but in the case of such clause (b) subject to such title as was received by Purchaser from Seller), (c), (d) (however, in the case of such clause (d), the exercise by Purchaser of its rights under Section 3(B) of this Agreement shall not be deemed to give rise to a breach of clause (d), and subject to substituting the words "Recharacterized Claim" for the words "Immediate Claim Amount" contained in such representation) and (f) of the first paragraph of Paragraph 2 hereof. In the event that Purchaser (or any such Purchaser Transferee) shall receive any payments, distributions or proceeds in respect of the Recharacterized Claim, Purchaser shall or shall use commercially reasonable efforts to cause any such Purchaser Transferee, as applicable, to promptly (but in any event no later than three (3) business days) remit to Prior Seller (or, in the alternative, to Seller for further remittance to Prior Seller) any payments, distributions or proceeds received by Purchaser or Purchaser Transferee, as applicable, in respect of the Recharacterized Claim. Purchaser agrees (and it shall be a condition of any further transfer to any such Purchaser Transferee that such Purchaser Transferee shall agree) that any further assignment of the Purchased Claims shall contain the provisions of this Paragraph 1(B)(2), including without limitation a commitment by any such Purchaser Transferee to make the representations and warranties set forth above.

2.   Seller hereby represents and warrants to Purchaser that: (w) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer of Claim ("Agreement"); (x) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less in payments or distributions or less favorable treatment than other claims of the same class or type as claims comprising the Immediate Claim Amount; (y) Seller has provided to Purchaser a true and complete copy of the Prior Agreement and, to the same extent provided to Seller by Prior Seller in connection with the Prior Agreement, all other prior agreements under which Prior Seller or any other prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim; and (z) no payment or distribution has been received by or on behalf of Seller in full or partial satisfaction of the Transferred Claims.

Seller hereby further represents and warrants to Purchaser that, in each case assuming the truth and accuracy of the representations of Prior Seller in the Prior Agreement: (a) the Proof of Claim was duly and timely filed by Prior Seller in accordance with the Court's order setting the deadline for filing proofs of claim and the applicable procedures set forth in that certain Order pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (Dkt. No. 4271); (b) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (c) Prior Seller is duly authorized and empowered to execute and perform its obligations under the Prior Agreement; (d) Prior Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less in payments or distributions or less favorable treatment than other claims of the same class or type as claims comprising the Immediate Claim Amount; (e) the Proof of Claim includes each Purchased Claim specified in Schedules 1-2 attached hereto; (f) no payment or distribution has been received by or on behalf of Prior Seller in full or partial satisfaction of the Transferred Claims; and (g) the aggregate unpaid principal amount of the Purchased Securities is not less than $326,512,000.00; provided, however, that, subject to the representations and warranties contained in the Prior Agreement, Prior Seller makes no representation or warranty as to the distributions that may ultimately be paid by Debtor in respect of the Purchased Claims. Until such time as the Additional Claim Amount becomes the Additional Allowed Claim Amount, and as

provided in the Prior Agreement, Prior Seller's representations and warranties solely with respect to the Additional Claim Amount shall be limited to those set forth in clauses (b), (c), (d) and (f) in Paragraph 2 of the Prior Agreement (subject to the proviso set forth at the end of paragraph 2(g) of the Prior Agreement). At such time as the Additional Claim Amount becomes the Additional Allowed Claim Amount and the Additional Purchase Price in respect thereof has been paid, all representations and warranties contained herein shall apply for all purposes hereunder.

Seller represents and warrants to Purchaser, and Purchaser, by its acceptance of this Agreement and the payment of the Initial Purchase Price, represents and warrants to Seller, that (i) it is a sophisticated buyer or seller (as the case may be) with respect to the Transferred Claims, (ii) it has, or has access to, such information as it deems appropriate under the circumstances concerning, among other things, the business and financial condition of the Debtor to make an informed decision regarding the Transferred Claims, and (iii) it has independently and without reliance on the other party hereto, and based on such information as it has deemed appropriate, made its own analysis and decision to enter into this Agreement, except that each of Seller and Purchaser has relied upon the express representations and warranties made by the other party hereto in this Paragraph 2. Each of Seller and Purchaser acknowledges that the other has not given it any investment advice or opinion on whether this Agreement is prudent. Purchaser has not relied, and will not rely, on Seller to furnish or make available any documents or other information regarding the credit, affairs, financial condition or business of the Debtor. Each of Seller and Purchaser acknowledges that (i) the other currently may have, and later may come into possession of, information regarding the Transferred Claims that is not known to it and that may be material to a decision to enter into this Agreement ("Excluded Information"), (ii) it has determined to enter into this Agreement notwithstanding its lack of knowledge of the Excluded Information, and (iii) the other party hereto shall have no liability to it, and it hereby, to the extent permitted by law, waives and releases any claims it may have against the other of Seller and Purchaser, with respect to the nondisclosure of the Excluded Information; provided, however, that each party's Excluded Information shall not and does not affect the truth or accuracy of such party's representations or warranties in this Agreement. Each of Seller and Purchaser further acknowledge that the consideration being paid by Purchaser hereunder may differ both in kind and amount from the amount ultimately distributed with respect to the Purchased Claims pursuant to any plan or reorganization which is confirmed for the Debtor.

    3.  (A) Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Seller acknowledges and understands that Purchaser may file a copy of this Agreement with the Court, and hereby stipulates that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing the Debtor, the Court and all other interested parties that all further notices relating to the Transferred Claims, and all payments or distributions of money or property in respect of the Transferred Claims, shall be delivered or made to the Purchaser; provided, however that the Purchaser shall promptly provide notice to the Seller upon entry of such order.

    (B) In the event Purchaser or Seller receives notice of an objection, dispute, action, proceeding or litigation, including, without limitation, the filing of or service of a subpoena relating to the Purchased Claims (each, a "Dispute"), Purchaser or Seller, as applicable, shall promptly provide written notice to the other party and to Prior Seller of the foregoing (the "Dispute Notice"). As provided in the Prior Agreement, upon the occurrence of the initial Dispute (the "Initial Dispute"), Prior Seller is authorized to defend against and resolve the Initial Dispute (the "Seller Defense Authority"), provided however that upon the earlier to occur of either (i) the one-hundredth (100th) day after the Dispute Notice related to the Initial Dispute (the "Initial Dispute Notice"), (ii) the date on which Prior Seller advises Seller under the Prior Agreement that Prior Seller does not intend to exercise the Seller Defense Authority, or (iii) the date distributions are first made to creditors of the Debtor in the Proceedings holding claims against the Debtor of the same type or class as the Purchased Claims, then, upon Seller's receipt of written instructions from

the Majority Holders (as defined below) electing, in their sole discretion, to terminate the Seller Defense Authority, then Seller shall promptly thereafter notify Prior Seller that such Seller Defense Authority is so terminated. As provided in the Prior Agreement, upon the receipt by Prior Seller of the Initial Dispute Notice, Prior Seller shall promptly (but in any event no later than five (5) business days after such notice) provide written notice to Seller (which notice Seller shall promptly forward to Purchaser) as to whether Prior Seller intends to exercise the Seller Defense Authority. The "Majority Holders" means the then current holders (including, as the case may be, Seller) of more than 50% of the aggregate Immediate Claim Amount (as such term is defined in the Prior Agreement) (together with, if and to the extent applicable, any Additional Allowed Claim Amount (as such term is defined in the Prior Agreement)) of the claims then outstanding in respect of which such action is to be taken.

4. All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account as Purchaser may designate in writing to Seller against payment by Purchaser of the Initial Purchase Price. This Agreement supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of the relevant clearing system with respect to the purchase and sale of each Purchased Security.

6. Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim. Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions, notices or proceeds received by Seller in respect of the Transferred Claims to Purchaser.

7. Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

[Continued on following page]

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this **1** day of November 2010.

| JPMorgan Chase Bank, N.A. | Farallon Capital Partners, L.P. |
|---|---|
| By: *[signature]* | By: |
| Name: Peter Schoepe | Name: |
| Title: Authorized Signatory | Title: |
| Address: JP Morgan Chase Bank, N.A.<br>Mail Code: NY1-A436<br>Once Chase Manhattan Plaza<br>Floor 26<br>New York, New York 10005<br>ATTN: Susan McNamara | Address: _____<br>_____<br>_____ |

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this _1_ day of November 2010.

| JPMorgan Chase Bank, N.A. | Farallon Capital Partners, L.P. |
|---|---|
| By: | By: *(signature)* |
| Name: | Name: Rajiv A. Patel |
| Title: | Title: Managing Member |
| Address: JP Morgan Chase Bank, N.A.<br>Mail Code: NY1-A436<br>Once Chase Manhattan Plaza<br>Floor 26<br>New York, New York 10005<br>ATTN: Susan McNamara | Address: One Maritime Plaza<br>21st Floor<br>San Francisco, CA 94111 |

Schedule 1

**Purchased Claim**

$6,019,119.48 of $519,057,796.15 (the outstanding amount of the Proof of Claim as of November 1, 2010).

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Accrued Amount (as of Proof of Claim Filing Date) |
|---|---|---|---|---|---|---|
| Commercial Paper, issued 02/13/2008 | 52525KAB8 | Lehman Brothers Holdings Inc. | $6,004,291.00 | 2.875% (which Prior Seller assumes to have been the last rate set under the Security). | 03/11/2009 | $6,019,119.48 |

Schedule 2

**Purchased Claim**

$25,225,963.00 of $519,057,796.15 (the outstanding amount of the Proof of Claim as of November 1, 2010).

| Description of Security | ISIN/CUSIP | Issuer | Principal/Notional Amount | Coupon | Maturity | Accrued Amount (as of Proof of Claim Filing Date) |
|---|---|---|---|---|---|---|
| Commercial Paper | 52525MJF6 | Lehman Brothers Holdings Inc. | $25,225,963.00 | 0% | 09/15/2008 | $25,225,963.00 |