**Hearing Date and Time: November 17, 2010 at 10 a.m. (Prevailing Eastern Time)**

Edward J. Kirk
Theresa M. Biedermann
CLYDE & CO US LLP
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 710-3900
Facsimile: (212) 710-3950

*Attorneys for Certain Underwriters at Lloyd's, London and Companies*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re
LEHMAN BROTHERS HOLDINGS INC., *et al.*,

Debtor

Chapter 11
Case No. 08-13555 (JMP)
(Jointly Administered)

**CERTAIN UNDERWRITERS AT LLOYD'S' AND COMPANIES' RESPONSE TO MOTION OF LAWRENCE FOGARAZZO, ET AL. PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW ADVANCEMENT UNDER INSURANCE POLICY BY LLOYD'S OF LONDON**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT....1

BACKGROUND....2

ARGUMENT....6

A. The Policies and Their Proceeds are Subject to the Stay....6

B. The Fogarazzo Plaintiffs Have Not Shown Cause to Lift the Automatic Stay....7

1. Lifting the Stay Would Not Result in Any Resolution of the Purported Issues Because the Fogarazzo Plaintiffs Lack Standing to Bring Claims Under the Policies....9

a. The Fogarazzo Plaintiffs Have No Rights Under the Policies....9

b. The Fogarazzo Plaintiffs Would Not Be Entitled to Greater Rights than the Actual Parties to the Policies....10

2. Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation Support Denial of the Motion....11

3. The Balance of Harms....13

CONCLUSION....13

# TABLE OF AUTHORITIES

## CASES

*In re Allied Digital Tech. Corp.*,
306 B.R. 505 (Bankr. D. Del. 2004) ....6, 7

*BAII Banking Corp. v. UPG, Inc.*,
985 F.2d 685 (2d Cir. 1993) ....10

*Belardo v. Fulmont Mut. Ins. Co.*,
271 A.D.2d 837, 706 N.Y.S.2d 499 (3d Dep't 2000) ....12

*Continental Cas. Co. v. Employers Ins. Co. of Wausau*,
60 A.D.3d 128, 871 N.Y.S.2d 48 (1st Dep't 2008) ....10

*In re Curtis*,
40 B.R. 795 (Bankr. D. Utah 1984) ....8

*Dunning v. Leavitt*,
85 N.Y. 30 (1881) ....10

*In re First Cent. Fin. Corp.*,
238 B.R. 9 (Bankr. E.D.N.Y. 1999) ....7

*In re Louisiana World Exposition, Inc.*,
832 F.2d 1391 (5th Cir. 1987). ....7

*Rocanova v. Equitable Life Assur. Socy.*,
83 N.Y.2d 603, 634 N.E.2d 940 (1994) ....12

*Scotts Co., LLC v. Ace Indem. Ins. Co.*,
51 A.D.3d 445, 858 N.Y.S.2d 121 (1st Dep't 2008) ....12

*In re Sonnax Industries, Inc.*,
907 F.2d 1280 (2d Cir. 1990) ....7, 8

*In re Touloumis*,
170 B.R. 825 (Bankr. S.D.N.Y. 1994) ....8

## STATUTES

11 U.S.C. § 362....7, 8

## SECONDARY AUTHORITY

Glen Banks, New York Contract Law 298 (2006) ....9

Restatement (Second) of Contracts § 309 (1981) ....10

TO THE HONORABLE JUDGE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Those Underwriters at Lloyd's, London and Companies ("Underwriters") subscribing to Primary and Excess Combined Financial Institutions Comprehensive Crime and Professional Indemnity Policy Nos. 509/QA529399 and QA529499 (the "Policies") issued to Lehman Brothers Holdings, Inc. ("LBHI" or the "Debtor") hereby submit this response to the *Motion of Lawrence Fogarazzo, et al. Pursuant to Section 362 of the Bankruptcy Code for Relief From Automatic Stay to Allow Advancement Under Insurance Policy By Lloyd's of London (Lloyd's)* [Docket No. 10279] (the "Motion"), and in support hereof, respectfully represent:

**PRELIMINARY STATEMENT**

1. The Motion should be denied because the Fogarazzo Plaintiffs have not and cannot satisfy their burden to show cause to lift or modify the automatic stay under § 362 of the Bankruptcy Code in order to seek coverage under the Policies.

2. Underwriters adopt and incorporate by reference the arguments set forth in ¶¶ 1-7 of LBHI's Response to the Motion as if set forth in full herein. Specifically, Underwriters adopt LBHI's arguments that the Motion should be denied because: (i) relief from the automatic stay would be both futile and academic because the Fogarazzo Action is currently stayed against LBI, which is the defendant in the Fogarazzo Action, and the Fogarazzo Plaintiffs have not sought relief from the stay in the LBI SIPA Proceeding; and (ii) the Fogarazzo Plaintiffs have not satisfied their burden to demonstrate cause to lift the stay in the LBHI Bankruptcy.

3. Underwriters respectfully submit this memorandum in further support of their opposition to the Fogarazzo Plaintiffs' request to lift the automatic stay to allow advancement under the Policies. As set forth below, there is no support for the Fogarazzo Plaintiffs' position that the stay should be lifted because the Policies and their proceeds are not assets of the bankruptcy estate. In addition, the Fogarazzo Plaintiffs cannot demonstrate cause to lift the stay

in view of the factors considered by the Second Circuit to make such a determination. Specifically, lifting the bankruptcy stay would not result in any resolution of the purported issues regarding coverage under the Policies for the Fogarazzo Action because the Fogarazzo Plaintiffs do not have standing to seek coverage under the Policies, the Insureds agreed to terminate the Policies and released Underwriters from further liability, and there has not been a judgment or settlement in the Fogarazzo Action that might trigger coverage under the Policies. Additionally, the interests of judicial economy and expeditious and economical resolution of litigation support the denial of the Motion because lifting the stay against LBI in the Fogarazzo Action would require LBI and LBHI to expend resources responding to the allegations of the Fogarazzo Action and related coverage litigation.

## BACKGROUND

### A. The Policies

#### 1. The Primary Policy

4. Underwriters issued Primary Combined Financial Institutions Comprehensive Crime and Professional Indemnity Policy No. QA529399 (the "Primary Policy") to LBHI and its subsidiaries, including LBI, effective for the period January 31, 1999 to January 31, 2003 (the "Policy Period").

5. The Primary Policy provided a limit of liability of $100 million in the aggregate subject to a deductible of $2.5 million for each and every loss under Section One and $25 million each and every Claim under Section Two.

#### 2. The Excess Policy

6. Underwriters also issued Excess Combined Financial Institutions Comprehensive Crime and Professional Indemnity Policy No. QA529499 (the "Excess Policy", together with the

Primary Policy, the "Policies") to LBHI and its subsidiaries, including LBI, effective for the Policy Period.

7. The Excess Policy provided a limit of liability of $100 million in the aggregate excess of $100 million in underlying limits.

**B. <u>The Research Analyst Matters</u>**

8. Beginning in 2002, a group of regulatory authorities, including the Securities and Exchange Commission (the "SEC"), investigated the research analyst practices of LBI and other investments banks, including Goldman Sachs & Co. ("Goldman Sachs") and Morgan Stanley & Co. ("Morgan Stanley") (the "Regulatory Investigations"). The Regulatory Investigations examined whether stock recommendations by research analysts at LBI and other investment banks were tainted or influenced by an effort to earn investment banking fees, and whether research analysts were subject to related conflicts of interest.

9. On April 28, 2003, in connection with the Regulatory Investigations, the SEC and other regulators announced a final settlement with LBI and nine other investment banks in which the banks agreed to pay a total of $1.4 billion in penalties and disgorgement, as well as funding for investor education and the provision of independent research (the "Research Analyst Settlement"). LBI agreed to pay a total of $80 million in the Research Analyst Settlement.

10. Following the Research Analyst Settlement, various civil actions were filed against LBI and other investment banks based on allegations of research analyst conflicts of interest. On July 15, 2003, a securities class action styled *Fogarazzo, et al. v. Lehman Brothers, Inc., et al.* (the "Fogarazzo Action") was filed in the U.S. District Court for the Southern District of New York against LBI on behalf of all investors who purchased RSL Communications, Inc. ("RSL") common stock between April 30, 1999 and December 29, 2000. The complaint in the Fogarazzo Action was later amended to add Goldman Sachs and Morgan Stanley as defendants.

11. The Fogarazzo Action alleged that LBI, Goldman Sachs and Morgan Stanley (the "Banks") issued false and misleading research reports pertaining to RSL. Specifically, the plaintiffs contended that the defendants' analyst reports were fraudulently optimistic due to conflicts of interest between the research and investment banking departments of the Banks. The complaint asserted claims under § 10(b) of the Securities and Exchange Act of 1934 and SEC Rule 10b-5, and sought class certification, unspecified compensatory damages, attorneys' fees and costs.

12. On October 10, 2008, counsel for LBI filed a notice of the order commencing liquidation as to LBI and advised the court that the automatic stay provisions of § 362(a) of the Bankruptcy Code operate as a stay of the Fogarazzo Action against LBI. The stay has not been modified to allow the Fogarazzo Plaintiffs to proceed against LBI in the Fogarazzo Action.

13. Following the stay of the Fogarazzo Action against LBI, the Fogarazzo Plaintiffs apparently engaged in significant discovery and obtained class certification with respect to their claims against Goldman Sachs and Morgan Stanley. On September 27, 2010, the court entered an order preliminarily approving a settlement between the Fogarazzo Plaintiffs and Goldman Sachs and Morgan Stanley, which the parties apparently executed on August 23, 2010. There has not been a judgment against LBI and LBI has not entered into a settlement in the Fogarazzo Action.

C. **<u>LBI's Claims and the Termination of the Policies</u>**

14. By letters dated November 6, 2002 and May 13, 2003, LBI provided notice under the Policies of the Regulatory Investigations and the Research Analyst Settlement. Thereafter, the Insured provided notice of the Fogarazzo Action under the Policies. In addition to the Fogarazzo Action and the Regulatory Investigations, LBI reported several other lawsuits alleging that LBI issued false and misleading analyst reports (collectively, the "Research Analyst

Matters"). LBI and LBHI also noticed several other significant claims under the Policies that were not related to the Research Analyst Matters.

15. In 2004, the Insureds and Underwriters agreed that the Policies were terminated after payments towards multiple large claims, including the Fogarazzo Action, and LBHI, LBI and the other Insureds fully released Underwriters from further liability under the Policies.

**D. <u>The LBI Liquidation and LBHI Bankruptcy</u>**

16. On September 15, 2008, LBHI filed a voluntary petition for Chapter 11 bankruptcy in the U.S. District Court for the Southern District of New York (the "LBHI Bankruptcy").

17. On September 19, 2008, the U.S. District Court for the Southern District of New York entered an order commencing liquidation of LBI and granting the application of the Securities Investor Protection Corporation ("SIPC") for issuance of a protective decree adjudicating that the customers of LBI are in need of protection under the Securities Investor Protection Act of 1970 ("SIPA"). The Court ordered the liquidation of LBI pursuant to SIPA (the "LBI SIPA Proceeding").

18. On July 19, 2010, approximately six years after the Insureds agreed to terminate the Policies and fully released Underwriters from further liability under the Policies, and almost two years after the commencement of the LBHI Bankruptcy and LBI SIPA Proceeding, the Fogarazzo Plaintiffs filed the Motion seeking relief from the automatic stay in the LBHI Bankruptcy to pursue coverage under the Policies regarding claims against LBI in the Fogarazzo Action.

19. By letter dated September 8, 2010, LBHI asked the Fogarazzo Plaintiffs' counsel to withdraw the Motion. The letter noted that the Fogarazzo Action is against LBI, that LBHI no longer controls LBI, and that the Fogarazzo Action is stayed against LBI pursuant to the

automatic stay extant in the LBI SIPA Proceeding, which is a separate liquidation proceeding under SIPA. LBHI also advised that it has determined that the Policies were terminated in 2004 and that there are no remaining proceeds available for distribution to the claimants. (LBHI Response, ¶ 4). The Fogarazzo Plaintiffs have not withdrawn the Motion.

## ARGUMENT

20. Underwriters adopt and incorporate by reference the arguments set forth in ¶¶ 1-7 of LBHI's Response to the Motion as if set forth in full herein and provide below additional reasons why the Motion should be denied.

### A. The Policies and Their Proceeds are Subject to the Stay

21. The Motion argues that while insurance policies covering a debtor are assets of the bankruptcy estate and covered by the automatic stay, the proceeds of the Policies are not assets of the Estate and are not subject to the stay. According to the Fogarazzo Plaintiffs, policy proceeds are not assets of a bankruptcy estate where the policy provides for payment only to a third party or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative.

22. Whether the proceeds of a liability insurance policy are property of a bankruptcy estate usually depends on who qualifies as an insured under the liability insurance policy and whether an insured that is not in bankruptcy seeks coverage under the policy. *In re Allied Digital Tech. Corp.*, 306 B.R. 505, 511 (Bankr. D. Del. 2004) (noting that direct coverage to the debtor under the policies was no longer a basis for treating the proceeds as property of the estate because all of the covered securities claims that could be brought against the debtor had already been adjudicated and/or were barred by the applicable statute of limitations). Where a debtor's liability insurance policy provides direct coverage to the debtor only, courts have found that the proceeds are property of the estate because the proceeds are payable to the debtor. *Id.* at 512.

On the other hand, when insured directors and officers who are not subject to the bankruptcy stay also seek coverage under a policy, courts may find that the proceeds are not property of the estate and lift the stay with respect to the insured directors and officers. *Id.* at 509-10; *see also In re Louisiana World Exposition, Inc.*, 832 F.2d 1391, 1400 (5th Cir. 1987).

23. The cases cited by the Fogarazzo Plaintiffs are distinguishable from the present circumstances because they involved policies that provided entity coverage to the debtor, as well as coverage to individual directors and officers who qualified as insureds but were not subject to the bankruptcy stay. *In re First Cent. Fin. Corp.*, 238 B.R. 9, 17-18 (Bankr. E.D.N.Y. 1999) (finding that entity coverage in the policy, which provided the debtor with protection from securities claims, was not a sufficient predicate to transform policy proceeds into estate property where no securities claims had been filed against the debtor that would implicate the narrow scope of the policy's entity coverage, and the trustee did not assert that any action was imminent or likely). Here, the Fogarazzo Action for which the Fogarazzo Plaintiffs would seek coverage is against LBI, which is a bankrupt entity subject to the automatic stay, and not directors or officers of LBHI or LBI who might qualify as Insureds under the Policies but are not subject to the bankruptcy stay. The Fogarazzo Plaintiffs are not Insureds under the Policies and would not be entitled to coverage as third-party beneficiaries as explained below.

24. Therefore, the automatic stay should not be lifted with respect to the Policies on the grounds that the proceeds of the Policies are not assets of the Estate.

## B. <u>The Fogarazzo Plaintiffs Have Not Shown Cause to Lift the Automatic Stay</u>

25. Pursuant to § 362(d) of the Bankruptcy Code, a court may grant relief from the stay "for cause." 11 U.S.C. § 362(d)(1).

26. In determining whether cause has been shown to grant relief from the automatic stay, courts in the Second Circuit follow the seminal decision of *In re Sonnax Industries, Inc.*,

907 F.2d 1280, 1285-86 (2d Cir. 1990), which outlined twelve factors to be considered when deciding whether to lift the automatic stay.[1]

27. Only those *Sonnax* factors relevant to a particular case should be considered and the court need not assign them equal weight. *In re Touloumis,* 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994). Further, the moving party bears the initial burden to demonstrate that cause exists for lifting the stay under the *Sonnax* factors. 11 U.S.C. § 362(d)(1); *Sonnax,* 907 F.2d at 1285. If the movant fails to make an initial showing of cause, the court should deny relief without requiring any showing from the debtor that it is entitled to protection. *Id.*

28. The Fogarazzo Plaintiffs have failed to make any showing as to why the bankruptcy stay should be lifted with respect to the Policies. As noted in LBHI's Response, the Motion does not reference any of the *Sonnax* factors or make any attempt to demonstrate cause for relief from the automatic stay. On that basis alone, the Motion should be denied.

29. Further, consideration of the following three *Sonnax* factors relevant to this case demonstrates that the Fogarazzo Plaintiffs cannot show cause to lift the stay: (i) whether relief would result in a partial or complete resolution of the issues; (ii) the interests of judicial economy and the expeditious and economical resolution of litigation; and (iii) the impact of the stay on the parties and the balance of harms.

[1] Specifically, the twelve *Sonnax* factors are: (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms. *Id.* (*citing In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984)).

### 1. Lifting the Stay Would Not Result in Any Resolution of the Purported Issues Because the Fogarazzo Plaintiffs Lack Standing to Bring Claims Under the Policies

30. The Motion fails to demonstrate that lifting the stay would resolve any of the purported issues regarding coverage under the Policies for the Fogarazzo Action. The Fogarazzo Plaintiffs have no standing to make a claim or any right to coverage under the Policies. Further, although the Motion attempts to argue the merits of the Fogarazzo Action against LBI, the litigation was stayed against LBI in 2008 and there has not been a judgment or settlement against LBI in the Fogarazzo Action that might trigger coverage under the Policies. Therefore, lifting the bankruptcy stay would not result in a resolution of the purported issues regarding coverage under the Policies for the Fogarazzo Action.

#### *a. The Fogarazzo Plaintiffs Have No Rights Under the Policies*

31. It is black letter law that absent privity or "a contractual relationship between two parties, one party generally cannot enforce the contract or seek a contract remedy against the other." Glen Banks, New York Contract Law 298 (2006). With respect to third-party beneficiaries of a contract, "an intended third-party beneficiary will be found where a third party has a right to receive the promised performance and the circumstances indicate that the promisee intended to give the third party the benefit of the promised performance." *Id.* at 304.

32. The Policies are indemnity insurance policies that provide that Underwriters will pay on behalf of the Insureds Loss incurred as a result of any Claim against an Insured for a Wrongful Act by the Insureds. The Fogarazzo Plaintiffs are not Insureds under the Policies, nor do the Policies indicate that Underwriters conferred any rights under the Policies to third-party beneficiaries. As a result, the Fogarazzo Plaintiffs would not have the right to seek coverage under the Policies if the stay was lifted.

***b. The Fogarazzo Plaintiffs Would Not Be Entitled to Greater Rights than the Actual Parties to the Policies***

33. Even if the Fogarazzo Plaintiffs could seek coverage under the Policies, it is well established that a third-party beneficiary possesses no greater right to enforce a contract than the actual parties to the contract. *BAII Banking Corp. v. UPG, Inc.*, 985 F.2d 685, 697 (2d Cir. 1993) (citing Restatement (Second) of Contracts § 309 (1981)); *Continental Cas. Co. v. Employers Ins. Co. of Wausau*, 60 A.D.3d 128, 871 N.Y.S.2d 48 (1st Dep't 2008) (holding that the rights of an injured claimant against the insurer were no greater than those of the insured). A third-party beneficiary's rights under a contract are subject to the same defenses as the rights of the promisee. *Id.*; *see also Dunning v. Leavitt,* 85 N.Y. 30, 35 (1881) (finding that "it would be contrary to justice or good sense to hold that [a third-party beneficiary] should acquire a better right against the promisor than the promisee himself had.").

34. Over six years before the Fogarazzo Plaintiffs filed the Motion and four years before LBHI's bankruptcy, LBHI, LBI and the other Insureds agreed to terminate the Policies and released Underwriters from any other obligations under the Policies, including specifically with respect to the Fogarazzo Action. LBHI has advised the Fogarazzo Plaintiffs that the Policies were terminated in 2004 and that there are no remaining proceeds under the Policies. (LBHI's Response, ¶ 4). Third-party beneficiaries cannot have greater rights under the Policies than the actual parties. Therefore, even if the Fogarazzo Plaintiffs qualified as third-party beneficiaries, they could not obtain coverage under the Policies as the actual parties terminated the Policies and Underwriters were released from further liability.

**2. Interests of Judicial Economy and Expeditious and Economical Resolution of Litigation Support Denial of the Motion**

35. The interests of judicial economy and the expeditious and economical resolution of litigation also warrant denial of the Fogarazzo Plaintiffs' attempt to lift the stay. As discussed above, the Fogarazzo Action was stayed as to LBI in September 2008. Following LBI's bankruptcy and the stay, the remaining parties to the Fogarazzo Action engaged in substantial discovery, the court granted the Fogarazzo Plaintiffs' renewed motion for class certification with respect to Goldman Sachs and Morgan Stanley, and the Fogarazzo Plaintiffs agreed to a settlement with Goldman Sachs and Morgan Stanley. The Fogarazzo Plaintiffs have not completed discovery, obtained class certification, or obtained a judgment or settlement against LBI in the Fogarazzo Action.

36. If the court granted the Motion and lifted the stay with respect to the Policies, the Fogarazzo Plaintiffs would be required to prove their claims against LBI and engage in further discovery against LBI before making a claim under the Policies. In order to obtain coverage under the Policies, the Fogarazzo Plaintiffs will be required to prove LBI's liability in the Fogarazzo Action and LBI's conduct giving rise to any such liability would determine whether coverage could be available under the Policies. This is not a case where Underwriters, the non-debtor, would be independently liable to the Fogarazzo Plaintiffs. LBI, and not its insurers, is the true party at interest in the Fogarazzo Action, and therefore LBHI and LBI would be required to respond to and defend the allegations of the Fogarazzo Action, contravening the purpose of the automatic stay. Moreover, LBHI and LBI may be obligated to indemnify Underwriters with respect to any judgment or defense costs incurred by Underwriters. Therefore, lifting the automatic stay would likely require LBHI and LBI to expend substantial funds and resources responding to discovery and the Fogarazzo Plaintiffs' other efforts to prove their claims and establish coverage for the Fogarazzo Action.

37. Further, New York public policy favors the enforcement of settlement agreements, and New York courts give effect to the intent of the parties indicated by a settlement and release absent evidence that the release was procured by duress, fraud, illegality or mutual mistake. *Rocanova v. Equitable Life Assur. Socy.*, 83 N.Y.2d 603, 616, 634 N.E.2d 940 (1994) (release against insurer enforced where insured failed to establish any of the traditional bases for setting aside a release, including duress, illegality, fraud, or mutual mistake); *Scotts Co., LLC v. Ace Indem. Ins. Co.*, 51 A.D.3d 445, 858 N.Y.S.2d 121 (1st Dep't 2008) (dismissing plaintiff's suit to rescind the settlement agreement with insurers as the agreement and release was entered into by two sophisticated parties, and there was no evidence of deception or high pressure tactics, no fine print in the unambiguous agreement, nor any disparity between plaintiff and defendants in experience or bargaining power); *Belardo v. Fulmont Mut. Ins. Co.*, 271 A.D.2d 837, 838, 706 N.Y.S.2d 499, 500 (3d Dep't 2000) (affirming insurer's motion for summary judgment dismissing plaintiff's claim as the "language of the release [was] clear" and "effect must be given to the intent of the parties as indicated by the language employed.").

38. In 2004, LBHI, LBI and the other Insureds agreed to terminate the Policies and released Underwriters from further liability under the Policies. If the Motion is granted, the Fogarazzo Plaintiffs would be allowed to disregard an enforceable settlement and release entered into more than four years before the bankruptcy to which the Fogarazzo Plaintiffs were not parties and relating to Policies under which they have no standing. This would result in the reopening of the long dormant claims against LBI in the Fogarazzo Action as well as coverage litigation against Underwriters despite the termination of the Policies and the Insureds' release of Underwriters from further liability under the Policies. Therefore, the Motion should be denied in the interests of judicial economy and expeditious and economical resolution of litigation.

**3. The Balance of Harms**

39. As discussed above, the Estate would suffer substantial prejudice if relief from the bankruptcy stay against LBHI is granted because the Debtor's resources may be diverted by unnecessary litigation. In addition, LBHI may be required to indemnify Underwriters for any judgment that may be rendered against Underwriters as well as Underwriters' defense costs. Therefore, lifting the stay to allow the Fogarazzo Plaintiffs to pursue coverage under the Policies may significantly affect both the reorganization effort and assets of LBHI and LBI, and would likely result in substantial and unnecessary hardship to LBHI and LBI.

40. As the Fogarazzo Plaintiffs have not and cannot meet their burden to show cause as to why the stay should be lifted with regard to the Policies, the Motion should be denied.

## CONCLUSION

WHEREFORE Underwriters respectfully request that the Court deny the Motion and grant Underwriters such other and further relief as is just.

Dated: November 10, 2010
New York, New York

Respectfully submitted,

Edward J. Kirk
Theresa M. Biedermann
CLYDE & CO US LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
Phone: (212) 710-3900
Fax: (212) 710-3950

*Attorneys for Certain Underwriters at Lloyd's, London and Companies*

**AFFIDAVIT OF SERVICE**

STATE OF NEW YORK )
: ss.:
COUNTY OF NEW YORK )

Marianne Corsetti, being duly sworn, deposes and says that deponent is not a party of this action, is over 18 years of age and resides in Bronx, New York. That on November 10, 2010 deponent served the within **CERTAIN UNDERWRITERS AT LLOYD'S' AND COMPANIES' RESPONSE TO MOTION OF LAWRENCE FOGARAZZO, ET AL. PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW ADVANCEMENT UNDER INSURANCE POLICY BY LLOYD'S OF LONDON** upon via regular mail and ECF:

Curtis V. Trinko
Law Office of Curtis V. Trinko, LLP
16 West 46th Street, 7th Floor
New York, New York 10036
Telephone: (212) 490-9550
Attorneys for Lawrence Fogarazzo, et al.

Richard P. Krasnow
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Attorneys for Debtors and Debtors in Possession

The address(es) designated by said attorney(s) for that purpose by depositing a true copy thereof enclosed in a post-paid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States Post Office within the State of New York.

Marianne Corsetti

Sworn to before me this
10th day of November, 2009

Notary Public

PATRICIA A. DONNELLY
Notary Public, State of New York
No. 01DO5087441
Qualified in New York County
Commission Expires Nov. 30, 2013