UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                                                   :     Chapter 11 Case No.
                                                                             :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :     08-13555 (JMP)
                                                                             :
Debtors.                                                            :     (Jointly Administered)
------------------------------------------------------------------x

**MEMORANDUM DECISION GRANTING DEBTORS' OBJECTION TO
CLAIMS 33550, 33551, 33552, 35121 AND 35430 OF WILLIAM KUNTZ III**

APPEARANCES:

WEIL, GOTSHAL & MANGES LLP
*Attorneys for Debtors and Debtors-in-Possession*
767 Fifth Avenue
New York, NY 10153

    Shai Y. Waisman, Esq.
    Penny P. Reid, Esq.
    Mark Bernstein, Esq.

WILLIAM A. KUNTZ
*Pro Se*
India Street
P.O. Box 1801
Nantucket Island, MA 02554-1801

JAMES M. PECK
United States Bankruptcy Judge

*Background*

       Approximately 66,000 proofs of claim were filed in the Lehman cases by the bar date, but that number is being reduced over time by means of objections to claims. Orderly and fair bankruptcy administration requires that improper or deficient claims within the class of timely filed claims should be eliminated so as not to unfairly dilute distributions to those creditors with valid claims.  With this objective in mind, counsel

has been prosecuting a series of omnibus objections to claims[1] along with other more targeted objections as part of a well-coordinated effort to manage the very large pool of claims in these cases and to toss out those claims that do not qualify for purposes of distribution. This is an ambitious undertaking that will continue for some time.

One such claim objection dated September 15, 2010 (the "Kuntz Objection") has been filed by Lehman Commercial Paper Inc ("LCPI") and affiliated debtors (together with LCPI, the "Debtors") with respect to Claim Nos. 33550, 33551, 33552, 35121 and 35430 (collectively, the "Kuntz Claims") filed by William Kuntz III ("Mr. Kuntz") against certain of the Debtors. The Debtors have focused a great deal of attention on Mr. Kuntz and appear quite determined to knock out the Kuntz Claims. Given the relatively small dollar amounts involved, the motivation here cannot be purely economic, and the Court perceives that the Debtors wish to silence Mr. Kuntz who has been more active in the Lehman cases than any other individual creditor.[2] The level of that activity is hard to explain and is disproportionate to his monetary stake.

Mr. Kuntz has attended many if not most monthly omnibus hearings over the past two years and repeatedly has interposed objections to motions filed by the Debtors in these cases. These objections, numbering approximately eighteen, have served as a platform for Mr. Kuntz to express critical observations regarding the wisdom of various business decisions proposed by the Debtors with the support of the Official Committee of Unsecured Creditors. Mr. Kuntz is a seasoned *pro se* litigation veteran who seems to

---

[1] At present, 68 omnibus objections have been filed by the Debtors.

[2] To date, Mr. Kuntz has made approximately fifty filings in these cases, including approximately eighteen objections.

2

relish coming to court to articulate provocative positions and to take issue with the retained professionals.

His standing as a creditor has been suspect for some time and was first challenged by the Debtors over two years ago when Mr. Kuntz brought a motion for relief from stay to pursue remedies relating to the Kuntz Claims.[3] In his pleadings and frequent court appearances, Mr. Kuntz has been outspoken in offering his mostly unflattering views regarding the work of the retained professionals and their high hourly billing rates. It is quite apparent that there is no love lost between Mr. Kuntz and Weil Gotshal & Manges, Debtors' lead bankruptcy counsel, and equally obvious that Mr. Kuntz's propensity to raise questions and to litigate has been a complicating factor that has added to the length of certain hearings.[4] No doubt these activities have also caused inconvenience and perhaps some annoyance to Debtors' counsel and have been a source of some

---

[3] In his motion for relief from stay Mr. Kuntz alleged that he holds a claim against the Debtors arising from his status as a creditor in the 1995 bankruptcy of Grand Union Capital Corporation, an entity unrelated to any of the Debtors in these cases. *See* Motion for Relief from Stay (ECF Doc. #271) (the "Stay Motion"). Specifically, Mr. Kuntz argued that the automatic stay should be lifted to allow him to pursue his claims against the Debtors based upon the theory of a constructive trust in certain escrowed funds allegedly transferred to the Debtors by Grand Union Capital Corporation in repayment of a loan. Stay Motion ¶ 16. The Stay Motion was denied by order of this Court dated October 16, 2008 (ECF Doc. # 1094).

[4] *See, e.g.*, Transcript of H'rg Debtors' Motion Pursuant to Section 363 of the Bankruptcy Code for an Order (i) Allowing LCPI to Acquire Certain Loans through a Joint Venture and (ii) Authorizing LCPI and LBHI to Provide Gap Funding through a Term Loan, Revolver, and Preferred Equity Investment 45:5-48:12, Aug. 18, 2010, ECF Doc. # 10938; *see also* Transcript of H'rg Debtors' Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure and Section 363 of the Bankruptcy Code, for Approval of (I) A Settlement Agreement between the Debtors and Aurora Bank FSB Regarding the Master Forward Agreement and Other Matters and (II) Certain Other Related Relief, Including Authorization of (A) Certain Debtors to Make Capital Transfers, (B) LBHI to Enter into a Capital Maintenance Agreement, and (C) LBHI to Extend the Duration of the Amended Repurchase Agreement and Financing Facility 74:8-80:10, Sept. 22, 2010, ECF Doc. # 12227.

3

incremental administrative expenses. The Debtors now seek to knock out all of Mr. Kuntz's remaining proofs of claim.[5]

Mr. Kuntz relies on his own unsubstantiated personal beliefs in asserting that he has claims[6] against LCPI based on occurrences in the Delaware and New Jersey bankruptcy cases of Grand Union Capital Corporation and The Grand Union Company[7] (collectively, "Grand Union"). The connection that Mr. Kuntz attempts to make between the Grand Union cases and the Debtors' cases is an obscure one that appears to be based on the theory that LCPI, as a lender to Grand Union, received payments from Grand Union that included proceeds of funds that had been segregated in an escrow account for the benefit of the holders of Grand Union zero coupon notes. Mr. Kuntz alleges that he

---

[5] Mr. Kuntz has filed a total of eleven unsecured claims in these cases, all of which he asserts are entitled to priority treatment due to either fraud or fraud/conversion. Six of such claims were the subject of omnibus claims objections by the Debtors and were expunged as amended and superseded claims by previous orders of this Court. *See* Order Granting Debtors' Fourth Omnibus Objection to Claims (Amended and Superseded Claims), March 25, 2010, ECF Doc. # 7828; Order Granting Debtors' Sixth Omnibus Objection to Claims (Amended and Superseded Claims), May 25, 2010, ECF Doc. # 9234; Order Granting Debtors' Fourteenth Omnibus Objection to Claims (Amended and Superseded Claims), July 1, 2010, ECF Doc. # 9990. Of Mr. Kuntz's remaining five claims, the Debtors seek by the Kuntz Objection to expunge Claim Nos. 35121 and 35430 as superseded claims (the "Superseded Claims"). Mr. Kuntz has not objected to the disallowance of the Superseded Claims. As such, only three claims remain in dispute: Claim Nos. 33550, 33551, and 33552.

[6] The term "claim" is defined at Section 101(5)(A) of the Bankruptcy Code as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured."

[7] The Grand Union Company filed a voluntary chapter 11 petition in the Bankruptcy Court for the District of Delaware on January 25, 1995, Case No. 95-00084 (PJW). Subsequently, an involuntary petition was filed against Grand Union Capital Corporation in the Bankruptcy Court for the District of Delaware, Case No. 95-00130. Thereafter, The Grand Union Company filed a second voluntary chapter 11 case in the United States Bankruptcy Court for the District of New Jersey on June 24, 1998, Case No. 98-27912 (NLW), and a third voluntary chapter 11 case in the United States Bankruptcy Court for the District of New Jersey on October 3, 2000, Case No. 00-39613.

4

was a holder of these notes. He has verbalized a theory of liability based on the notes that is difficult to follow.

In essence, Mr. Kuntz alleges that funds in which he had an interest ended up being diverted to LCPI during The Grand Union Company's third chapter 11 case. He does not specify what if any duty was owed to him by LCPI or in what manner any such duty was breached. During argument, however, he did contend on several occasions that his claims were predicated on an alleged violation of the Martin Act, New York's Blue Sky Law. The Martin Act authorizes the New York State Attorney General to investigate and enjoin fraudulent practices in the marketing or sale of securities from or within New York.[8] Mr. Kuntz did not state what LCPI did to violate that law or how he had standing to pursue remedies against LCPI or others based on that law.[9] The Kuntz Claims themselves are quite obviously devoid of any documentary support and fail to state facts that show how anything that occurred in the Grand Union cases would give Mr. Kuntz a right to payment from LCPI or any other Lehman entity. Because the Kuntz Claims are

---

[8] *See* N.Y. Gen. Bus. Law §§ 352-353 (Consol. 2010).

[9] In fact, since 1987 New York courts have generally held that "there is no private right of action under the Martin Act and that the Attorney General's enforcement rights are exclusive." *Pro Bono Invs., Inc. v. Gerry*, No. 03 Civ. 4347 (JGK), 2005 U.S. Dist. LEXIS 22348, *54 (S.D.N.Y. Sep. 30, 2005)(citation omitted). Moreover, "[m]ost New York courts have further held that the [Martin] Act precludes a private right of action for common law claims the subject matter of which is covered by the Martin Act." *Id*. (collecting cases). Recently, however, in denying a motion to dismiss a complaint alleging violations of federal securities laws, as well as common law tort, contract and quasi-contract claims based upon the argument that the Martin Act preempts private common law causes of action for fraud, the Southern District of New York found that the New York Court of Appeals "would hold that the Martin Act does not preclude state common law causes of action that do not derive from or rely upon the Martin Act to establish a required element of the claim." *Anwar v. Fairfield Greenwich Ltd.*, 09 Civ. 0118 (VM), 2010 U.S. Dist. LEXIS 78425, *61 (S.D.N.Y. Jul. 29, 2010). Nevertheless, even under the *Anwar* decision, it appears that Mr. Kuntz would still be precluded from bringing a private action for alleged violations of the Martin Act.

5

so lacking in supporting evidence and logical linkage to the Debtors' cases, they are not entitled to any presumption that they are *prima facie* valid, and the burden of proof has shifted to Mr. Kuntz.

At the hearing on the Kuntz Objection that took place on October 27, 2010, Mr. Kuntz recognized that he now has the burden to prove these claims, but he also acknowledged that, with the exception of possibly being able to produce copies of certain zero coupon notes issued by Grand Union Capital Corporation evidencing an investment in Grand Union debt, he is unable to offer any documents showing that the Debtors have done anything that conceivably would expose the Debtors to transferee liability or make them legally responsible for any losses related to Mr. Kuntz's Grand Union investments. Despite this missing evidence, Mr. Kuntz requested the opportunity to call witnesses[10] and to conduct an evidentiary hearing in an effort to establish that LCPI should be found liable to him for its conduct as a lender to Grand Union. Alternatively, he suggested that issues relating to his investment in Grand Union and the asserted liability of LCPI to compensate him for losses in connection with that investment might be more conveniently addressed in the District of New Jersey before Bankruptcy Judge Winfield who presided over the Grand Union cases in that jurisdiction.[11]

---

[10] Mr. Kuntz filed a notice under Local Rule 9014-2 of his intention to call four witnesses (two bankruptcy lawyers – Jeff Tannenbaum and Paul Basta – who appear to have worked on the Grand Union bankruptcy cases, and John Gutfreund and Warren Buffet in their capacity as former senior officers of Solomon Brothers.

[11] To state the obvious, this Court is the only forum empowered to hear and determine the Kuntz Objection and other objections to proofs of claim filed against the Debtors. There are no proceedings before Judge Winfield that relate, directly or indirectly, to the Kuntz Claims, and it would be improper to involve another court in this contested matter. Moreover, both of the Grand Union bankruptcy cases that were pending before Judge Winfield have been closed.

*Discussion*

The central procedural inquiry here is whether the Kuntz Claims are sufficiently plausible on their face that Mr. Kuntz should be allowed to call witnesses – including Warren Buffet – that he believes will provide helpful testimony. He wants to invite these witnesses (not subpoena them; he submits that they will come to court voluntarily if they are gentlemen) to attend a hearing possibly enabling him to develop a record of evidence that he believes will tend to prove his theory of liability – a theory that is based on the allegedly improper payment to LCPI of escrowed funds in the Grand Union cases.

Having considered the Kuntz Claims, the Kuntz Objection, pleadings filed by the Debtors and Mr. Kuntz and statements made by Mr. Kuntz at the hearing on October 27, the Court is satisfied that the witnesses identified by Mr. Kuntz are highly unlikely to have anything to offer that will be relevant to the Kuntz Claims. Mr. Kuntz has failed to make any credible offer of proof as to what these proposed witnesses may know about LCPI's role in the Grand Union cases, the anticipated nature of their testimony or as to how this evidence may tend to prove that the Kuntz Objection should not be granted. Given the implausibility of Mr. Kuntz's theory of liability and the tenuous connection that these witnesses (particularly Mssrs. Gutfreund and Buffet) have to the subject matter of the Kuntz Claims, it would be both wasteful and unduly burdensome to the Court, the Debtors and the witnesses themselves to conduct such an evidentiary hearing.

Additionally, based upon Mr. Kuntz's statement that LCPI's alleged liability is grounded merely on his belief that he has a claim, and not in any credible evidence, and upon review of the extensive papers filed by LCPI explaining the background and circumstances of the Grand Union cases, the Court concludes that there is no provable

7

nexus between Mr. Kuntz's investments in Grand Union and the Kuntz Claims against the Debtors. The Kuntz Claims are founded on pure speculation, and such speculation, without more, does not constitute sufficient cause to defeat the Kuntz Objection.

A claimant's belief as to a possible theory of liability does not make that theory plausible and is not enough to overcome an objection to a claim. Here, because the claim is not *prima facie* valid, Mr. Kuntz as claimant must establish the validity of the claim. *See Helliwell v. George R. Burrows, Inc. (In re George R. Burrows, Inc.)*, 156 F.2d 640, 641 (2d Cir. 1946) ("[A]s soon as the trustee introduced any substantial evidence in opposition the claimants needed to establish by a preponderance of all the evidence that the claims as filed were based on facts which entitled the claimants to their allowance under the law. The burden of over-all proof was then on the claimants"); *Best Payphones, Inc. v. Verizon N.Y., Inc. (In re Best Payphones, Inc.)*, Case Nos. 01-B-15472 (SMB), 05 Civ. 6531 (GEL), and 05 Civ. 10793 (GEL), 2006 U.S. Dist. LEXIS 10297, *9 (S.D.N.Y. Mar. 14, 2006); *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000); *In re Chain*, 255 B.R. 278, 281 (Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988); *See also Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). Mr. Kuntz is unable to meet this well-established burden. He has no documents to support his claim and he has not made a sufficient showing that the testimony to be elicited is likely to support his beliefs

8

regarding LCPI or that any grounds exist to authorize what would amount to an open-ended fishing expedition.

After giving Mr. Kuntz every opportunity to explain himself at the hearing on October 27 and every benefit of the doubt as to the probative value of evidence that might be presented through witnesses called by Mr. Kuntz, the Court is unable to discern any merit whatsoever to Mr. Kuntz's theory of liability and concludes that he should not even be permitted to try to establish the validity of his claim by calling witnesses such as Warren Buffet who are obvious strangers to the facts.[12] Moreover, the burden to come forward with credible evidence is not satisfied by simply calling witnesses with the hope that they might say something that could be helpful. Claimants, at a minimum, need to be able to give an understandable offer of proof indicating that some evidence actually exists (not simply may exist) to establish a claim's validity.[13] Mr. Kuntz's burden is a particularly heavy one because the Kuntz Claims are not based on any clearly identifiable relationship with the Debtors. Mr. Kuntz needs to show some nexus of causation

---

[12] *See Morgan v. Manhattan Woods Gulf Club, Inc.*, 192 B.R. 80, 84 (S.D.N.Y. 1996)(holding that Bankruptcy Code section 502 and Bankruptcy Rule 3007 do not as a matter of law require an evidentiary hearing with respect to the disallowance of a proof of claim because Bankruptcy Rule 9014, which governs contested matters such as claim objections, makes applicable Bankruptcy Rule 7056 and allows for the court to decide such matters using a summary judgment standard of review).

[13] *See, e.g. In re Rockefeller Ctr. Props.*, 241 B.R. at 829 (denying claimant's request for further discovery under Fed. R. Civ. P. 56(f) where court found that claimant was "speculating that additional discovery will turn up evidence of mistake or fraud, and therefore [sought] to conduct an extensive and expensive fishing expedition to substantiate a mere hunch."); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994)(rejecting request for further discovery where party argued that "it should be allowed to find out if it has a claim."); *MCI WorldCom Commc'ns v. HSG/ATN, Inc. (In re Worldcom, Inc.)*, 361 B.R. 697, 715 (Bankr. S.D.N.Y. 2007) (holding that "the mere expectation of potentially developing further evidence is not sufficient" to grant a request for additional discovery)(citation omitted).

9

between his status as a Grand Union creditor and his asserted right to payment from the Debtors. Simply invoking the Martin Act proves nothing and is insufficient.

*Conclusion*

Proceedings to test the validity of the Kuntz Claims must be kept within rational boundaries and requesting a hearing is not equivalent to showing that proof exists with respect to the validity of a claim. Mr. Kuntz has failed to explain how he intends to prove his claim, and the Court does not consider it plausible that Mr. Kuntz can establish any causal connection between his claims in Grand Union and his claims against the Debtors or that he can carry his burden by a preponderance of the evidence. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1954, 173 L.Ed.2d 868 (2009) ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). To permit the hearing proposed by Mr. Kuntz in the context of these cases would be unnecessary, unreasonable and, in the Court's view, vexatious. Because of the absence of credible evidence to support the Kuntz Claims, the Kuntz Objection is granted and Claim Nos. 33550, 33551, 33552, 35121 and 35430 should be and hereby are disallowed.

IT IS SO ORDERED.

Dated: New York, New York
November 10, 2010

                                  *s/ James M. Peck*
                                  Honorable James M. Peck
                                  United States Bankruptcy Judge