SUTHERLAND ASBILL & BRENNAN LLP
Mark D. Sherrill (*pro hac vice*)
1275 Pennsylvania Avenue, NW
Washington, DC  20004
(202) 383-0100

*Counsel for Tenor Opportunity Master Fund, Ltd.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| **LEHMAN BROTHERS HOLDING INC.,** | § | Case No. 08-13555 (JMP) |
| | § | |
| **Debtor.** | § | |

**RESPONSE OF TENOR OPPORTUNITY MASTER FUND, LTD.**
**TO DEBTORS' SIXTY-THIRD OMNIBUS OBJECTION**
**TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

Tenor Opportunity Master Fund, Ltd. ("Tenor") files this Response to the *Debtors' Sixty-Third Omnibus Objection to Claims (Valued Derivative Claims)* (the "Claim Objection"), and states as follows:

**Background**

1.    Tenor is a hedge fund based in the Cayman Islands.

2.    Tenor entered into that certain ISDA Master Agreement (the "LBSF Master Agreement") with Lehman Brothers Special Financing Inc. ("LBSF"), dated October 30, 2006. A copy of the LBSF Master Agreement is attached as Exhibit A.  LBSF's parent, Lehman Brothers Holdings Inc. ("LBHI," and collectively with its debtor affiliates, the "Debtors"), provided a guaranty of LBSF's payment obligations under the LBSF Master Agreement and served as the Credit Support Provider.

10083826.2

3. Under the LBSF Master Agreement, Tenor and LBSF entered into a number of individual swap transactions. At the time of the Petition Date (as defined below), the parties had eleven active credit default swaps (the "LBSF Transactions").

4. More specifically, the following transactions were active under the LBSF Master Agreement as of the Petition Date:

| *Issuer* | *Spread* | *Maturity* | *Position* | *Value* |
|---|---|---|---|---|
| AMR | 5.00% | 3/20/2009 | 1,000,000 | 69,250 |
| Continental Airlines | 5.05% | 9/20/2012 | 2,000,000 | 732,311 |
| Chiquita | 3.00% | 9/20/2012 | (2,500,000) | (59,917) |
| Computer Science | 0.48% | 9/20/2012 | 4,000,000 | 40,907 |
| Ford Motor Co. | 2.75% | 6/20/2009 | (3,000,000) | (214,733) |
| Ford Motor Credit | 3.55% | 9/20/2012 | 3,000,000 | 898,567 |
| Hertz Corp. | 1.23% | 6/20/2011 | (5,000,000) | (506,967) |
| Southwest Airlines | 0.48% | 9/20/2012 | (10,000,000) | (333,267) |
| Southwest Airlines | 0.96% | 9/20/2017 | 10,000,000 | 851,533 |
| UAL Corp. | 5.00% | 6/5/2008 | 1,000,000 | 97,494 |
| UAL Corp. | 5.00% | 6/1/2008 | 1,000,000 | 98,328 |

5. In addition, as of the Petition Date, LBSF held $775,000 (the "Posted Collateral") in cash that Tenor had posted as collateral pursuant to the LBSF Master Agreement.

6. Separate from the LBSF Master Agreement, Tenor also entered into that certain ISDA Master Agreement (the "LBIE Master Agreement" and collectively with the LBSF Master Agreement, the "Master Agreements") dated June 25, 2008 with Lehman Brothers International (Europe) Ltd. ("LBIE"). A copy of the LBIE Master Agreement is attached as <u>Exhibit B</u>. As with the LBSF Master Agreement, LBHI acted as Credit Support provider under the LBIE Master Agreement, and accordingly provided Tenor with a guaranty of LBIE's payment obligations. As of the Petition Date, LBIE and Tenor had one outstanding transaction (the "LBIE Transaction" and collectively with the LBSF Transactions, the "Transactions") under the LBIE Master Agreement.

10083826.2

2

7.      On September 15, 2008 (the "Petition Date"), LBHI filed its voluntary petition for relief under chapter 11 of the U.S. Bankruptcy Code. Also on September 15, 2008, LBIE was placed into administration pursuant to the applicable English insolvency laws. On October 3, 2008, LBSF filed its own voluntary petition under the Bankruptcy Code.

8.      Because LBHI served as Credit Support Provider under the Master Agreements, the LBHI bankruptcy filing constituted an Event of Default under Section 5(a)(vii) of each of the Master Agreements.

9.      Exercising its rights under (*inter alia*) section 560 of the Bankruptcy Code and Section 6(a) of the LBSF Master Agreement, Tenor provided LBSF with its notice of termination (the "LBSF Termination Notice") of the LBSF Master Agreement on September 15, 2008. A copy of the LBSF Termination Notice is attached as <u>Exhibit C</u>. The LBSF Termination Notice established September 15, 2008 as the Early Termination Date of the LBSF Master Agreement.

10.     Pursuant to Section 6(a) of the LBIE Master Agreement, Tenor provided LBIE with its notice of termination (the "LBIE Termination Notice") of the LBIE Master Agreement on September 15, 2008. A copy of the LBIE Termination Notice is attached as <u>Exhibit D</u>. The LBIE Termination Notice established September 15, 2008 as the Early Termination Date of the LBIE Master Agreement

11.     Pursuant to Section 6(d) of the Master Agreements, on September 26, 2008, Tenor provided LBSF and LBIE with its calculations of the termination payment owed by LBSF (the "LBSF Valuation Letter"), and by LBIE (the "LBIE Valuation Letter" and collectively with the LBSF Valuation Letter, the "Valuation Letters"). A copy of the LBSF Valuation Letter is attached as <u>Exhibit E</u> and a copy of the LBIE Valuation Letter is attached as <u>Exhibit F</u>.

12.     As reflected in the LBSF Valuation Letter, the amount owed by LBSF was $1,415,400 (the "LBSF Termination Payment Amount"), which included the return of the Posted Collateral.  Pursuant to Paragraph 8(b) of the Credit Support Annex to the Master Agreement, LBSF was obligated to return all Posted Collateral upon the declaration of an Early Termination Date as a result of an Event of Default.

13.     The LBIE Valuation Letter reflected that the amount owed by LBIE to Tenor, net of posted collateral, was $129,604 (the "LBIE Termination Payment Amount" and collectively with the LBSF Termination Payment Amount, the "Termination Payment Amounts")

14.     On September 21, 2009, Tenor filed proof of claim number 24542 ("Claim 24542").  Claim 24542 asserts a general unsecured claim against LBSF in the amount of $1,420,079.80 – *i.e.*, the LBSF Termination Payment Amount.

15.     Also on September 21, 2009, Tenor filed proof of claim number 24544 ("Claim 24544" and collectively with Claim 24542, the "Claims").  Claim 24544 asserts a general unsecured claim against LBHI in the amount of $1,549,683.80 – *i.e.*, the LBSF Termination Payment Amount plus the LBIE Termination Payment Amount.

16.     On October 13, 2010, the Debtors filed the instant Claim Objection.  In the Claim Objection, the Debtors assert that the amounts asserted in the Claims "are greater than the fair, accurate and reasonable values determined by the Debtors."  Claim Objection, ¶ 2. The Claim Objection proposes to allow the claims in the significantly reduced amount of $758,565.39.

**Response and Legal Authorities**

17.     Tenor disputes the Debtors' assertions in the Claim Objection, and re-asserts that the proper amount of Claim 24542 is $1,420,079.80, and the proper amount of Claim 24544 is $1,549,683.80.  Accordingly, the Claim Objection should be overruled with regard to the Claims.

18.     Each of the Master Agreements provides: "On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculation on its part, if any, contemplated by Section 6(e) [the provision related to payments upon early termination] and will provide to the other party a statement … showing, in reasonable detail, such calculations." Master Agreements, § 6(d)(i).

19.     In the Schedules to the Master Agreements, the parties selected a "Loss" methodology of calculating the amount due following an Early Termination Date. Under the Loss methodology, the non-defaulting party "determines in good faith… its total losses and costs (or gain…) in connection with [the] Agreement." *See* Master Agreement, § 14. "Loss includes losses and costs (or gains) in respect of any payment or delivery required to have been made … on or before the relevant Early Termination Date and not made." *Id.*

20.     Tenor has complied with the foregoing contractual requirements. With regard to each of the Master Agreements, it has calculated, in good faith, the amount of its gains and losses for each transaction. The Termination Payment Amounts represent the aggregate, separated by Lehman counterparty, of those gains and losses.

21.     Moreover, the Debtors have not carried their burden of proof with regard to the Claims. "The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. The debtor must introduce evidence to rebut the claim's presumptive validity." *In re Harford Sands Inc.*, 372 F.3d 637, 640 (4th Cir. 2004) (internal citations omitted). *See also In re Spiegel, Inc.*, 2007 WL 2456626, *15 n.6 (S.D.N.Y. Aug. 22, 2007).

22.     The Claim Objection, however, contains nothing but cursory statements of disagreement. Although the Claim Objection is ten pages long, the only portions that approach any substantive criticism of the relevant claims are variations of the statement: "the amounts listed on the proofs of claim are greater than the fair, accurate and reasonable values determined by the Debtors." Claim Objection, ¶ 2. *See also* Claim Objection, ¶¶ 11 ("the amounts listed on the proofs of claim are greater than the fair, accurate and reasonable values determined by the Debtors"); 13 ("the asserted claim amount is greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors").

23.     The Debtors' repetition of cursory statements does not make those statements true, nor does it transform those cursory statements into the introduction of evidence. Fundamental principles of bankruptcy law require the Debtors to introduce admissible evidence to overcome the prima facie validity of a claim and to shift the burden of proof back to the claimant. "Mere denial of [a] claim's validity or amount is not sufficient to rebut prima facie effect of [the] proof of claim." Hon. Barry Russell, Bankruptcy Evidence Manual, § 301.13(3) (West Group, 1999) (citing *In re O'Connor*, 153 F.3d 258 (5th Cir. 1998); *In re Brown*, 221 B.R. 46 (Bankr. S.D. Ga. 1998); *In re Narragansett Clothing Co.*, 143 B.R. 582, 583 (Bankr. D.R.I. 1992)).

24.     To the extent necessary, Tenor requests a full evidentiary hearing pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the proper amount of the Claims.

WHEREFORE, Tenor respectfully requests that the Court (a) overrule the Claim Objection as it pertains to the Claims, (b) allow the Claims in the amounts asserted therein, and (c) grant Tenor such further relief as the Court deems just.

Dated: November 11, 2010
       Washington, DC

                SUTHERLAND ASBILL & BRENNAN LLP

                By: /s/ Mark D. Sherrill

                Mark D. Sherrill (*pro hac vice*)
                1275 Pennsylvania Avenue, NW
                Washington, DC 20004
                Tel: (202) 383-0100
                Fax: (202) 637-3593

                COUNSEL FOR TENOR OPPORTUNITY
                MASTER FUND, LTD.