WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                            :
In re                                       :        **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**
                                            :
                        **Debtors.**        :        **(Jointly Administered)**
                                            :
-------------------------------------------------------------------x

**NOTICE OF MOTION FOR AUTHORIZATION,**
**PURSUANT TO SECTIONS 363 AND 365 OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY  RULE 6006, TO**
**ASSUME AND ASSIGN INTEREST RATE SWAP AGREEMENTS**
**WITH CERTAIN TRUST COUNTERPARTIES, INCLUDING**
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE**
**TRUSTEE, AND TO ENTER INTO NEW INTEREST RATE SWAP AGREEMENTS**

PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman

Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Financial Products Inc.

("LBFP" and, together with LBSF and Lehman Brothers Holdings Inc. and its affiliated debtors

in the above referenced chapter 11 cases, the "Debtors") for authorization to assume and assign

interest rate swap agreements with certain trust counterparties and to enter into new interest rate

swap agreements, all as more fully described in the Motion, will be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New

York 10004 (the "Bankruptcy Court"), on **December 15, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Lori R. Fife, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Wilbur F. Foster, Jr., Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) Harbourview CDO III Limited, c/o Deutsche Bank (Cayman Limited), P.O. Box 1894 GT, Elizabeth Square, George Town, Grand Cayman, Cayman Islands, British West Indies; (vi) Harbourview CDO III Funding Corp., c/o Puglisi & Associates, 850 Library Avenue, Suite 204, Newark, Delaware 19711, Attn:  Donald Puglisi,

Esq.; (vii) Harbourview CDO III, Ltd., c/o Deutsche Bank Trust Company Americas, 1761 East

St. Andrew Place; Santa Ana, California 92705; (viii) HarbourView Asset Management

Corporation, c/o Brown Brothers Harriman & Co., 6801 S. Tucson Way, Suite 100, Centennial,

Colorado 80112; (ix) First Franklin Mortgage Loan Trust 2006-FF8, c/o National City Home

Loan Services, Inc., 150 Allegheny Center, Locator 47-23-501, Pittsburg, Pennsylvania 15212-

5356, Attention:  Investor Reporting Manager; (x) Deutsche Bank National Trust Company,

1761 East St. Andrew Place, Santa Ana, California 92705, Attn:  Trust Administration –

GC06Z8; (xi) First Franklin Mortgage Loan Trust 2006-FF8, c/o Financial Asset Securities

Corp., 600 Steamboat Road, Greenwich, Connecticut 06830, Attn:  Legal; (xii) Impac Mortgage

Holdings, Inc., 1401 Dove Street, Newport Beach, California 92660, Attn:  General Counsel;

(xiii) Master Servicer, Impac Funding Corporation, 1401 Dove Street, Newport Beach,

California 92660, Attn:  General Counsel; (xiv) Deutsche Bank National Trust Company, 1761

East St. Andrew Place, Santa Ana, California 92705, Attn:  Corporate Trust, Impac Secured

Assets Corp. Series 2006-3 (IM06S3); (xv) Impac Secured Assets Corp., 1401 Dove Street,

Newport Beach, California 92660, Attn:  General Counsel; (xvi) Impac Funding Corporation,

19500 Jamboree Road, Irvine, California 92612, Attn:  General Counsel; (xvii) Deutsche Bank

National Trust Company, 1761 East St. Andrew Place, Santa Ana, California 92705, Attn:

Corporate Trust, Impac Secured Assets Corp. Series 2007-3 (IM07S3); (xiii) Moody's Investors

Service, Inc., 7 World Trade Center, 250 Greenwich Street, New York, New York  10007; (xix)

Standard & Poor's Rating Services, 55 Water Street, 40th Floor, New York, New York 10041-

0003, Attn:  Structured Finance Department; (xx) Fitch, Inc., One State Street Plaza, New York,

New York 10004, Attn: Asset-Backed Group; (xxi) Dominion Bond Rating Service, One

Exchange Plaza, 55 Broadway, 15th Floor, New York, New York 10066; (xxii) Nixon Peabody

LLP, 100 Summer Street, Boston, Massachusetts 02110, Attn: Richard C. Pedone, Esq. and

Amanda D. Darwin, Esq., attorneys for Deutsche Bank Trust Company Americas and Deutsche

Bank National Trust Company; and (xxiii) Ashurst LLP, Times Square Tower, 7 Times Square,

New York, New York 10036, Attn: Scott Faga, Esq. and Nicole Skalla, Esq., attorneys for 1271

SwapCo Ltd; and for Deutsche Bank AG, New York Branch, so as to be so filed and received by

no later than **December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection

Deadline").

        PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

        PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 11, 2010
      New York, New York

                           /s/ Lori R. Fife
                           Lori R. Fife

                           WEIL, GOTSHAL & MANGES LLP
                           767 Fifth Avenue
                           New York, New York 10153
                           Telephone: (212) 310-8000
                           Facsimile: (212) 310-8007

                           Attorneys for Debtors
                           and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue

New York, New York 10153

Telephone: (212) 310-8000

Facsimile: (212) 310-8007

Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | **Chapter 11 Case No.** |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |

------------------------------------------------------------------x

**MOTION FOR AUTHORIZATION,**
**PURSUANT TO SECTIONS 363 AND 365 OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 6006, TO**
**ASSUME AND ASSIGN INTEREST RATE SWAP AGREEMENTS**
**WITH CERTAIN TRUST COUNTERPARTIES, INCLUDING**
**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE**
**TRUSTEE, AND TO ENTER INTO NEW INTEREST RATE SWAP AGREEMENTS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers

Financial Products Inc. ("LBFP"), as debtors and debtors in possession (together with Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11

cases, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this

Motion and respectfully represent:

## Background

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531].

5.      On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 7572]. On April 14, 2010, the Debtors filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their

revised joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

6.    This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Preliminary Statement[1]

7.    LBSF and LBFP seek authority to enter into certain transactions that will maximize recoveries from "in the money" interest rate swap agreements to which they are party with certain issuers, trusts or special purpose vehicles, as they have been unable to identify parties willing to purchase their "in the money" swap agreements for fair market value.  Either, Deutsche Bank National Trust Company or Deutsche Bank Trust Company Americas (formerly known as Bankers Trust Company of California, N.A.) serves as trustee, indenture trustee, or supplemental interest trust trustee (when acting in such capacity, the "Trustee") with respect to certain trusts, issuers, or special purpose vehicles (collectively, the "Trusts").  LBSF or LBFP, as applicable, entered into certain swap agreements (the "Swap Agreements") listed on Exhibit A attached to the proposed order with Trusts, or other parties acting on behalf of each of the respective Trusts (the "Trust Counterparties").  Despite the fact that LBSF and LBFP have been owed amounts based on such Swap Agreements since the Commencement Date, the Trusts have not made the payments due to LBSF or LBFP under the terms of the Swap Agreements.

8.    Pursuant to the proposed transactions LBSF and LBFP will assume and assign the Swap Agreements to 1271 SwapCo Ltd. and enter into new swap agreements with

---

[1] All capitalized terms used in this Preliminary Statement but not defined herein shall have the meanings set forth later in the Motion.

1271 SwapCo Ltd. and interest rate cap agreements with Deutsche Bank AG, New York Branch, which taken together, will replicate for LBSF and LBFP the same economic benefits and risks that exist under the current Swap Agreements.  Upon the consummation of the proposed transactions, the Trust Counterparties will pay to LBSF and LBFP, in the aggregate, $100,152,815.07 and $7,712,971.55, respectively, representing the net total of unpaid amounts under the Swap Agreements (or in the case of the Swap Agreement with First Franklin Mortgage Loan Trust 2006-FF8, the amount of collateral that will be returned to LBSF).[2]  The proposed transactions will also have the effect of curing any existing events of default under the terms of the Swap Agreements, and will provide the Trust Counterparties with a credit-worthy counterparty and place the Trust Counterparties in the economic position they would have been in had the Debtors' bankruptcy not occurred.  A detailed description of the proposed transactions is annexed hereto as Exhibit 1.

9.    Accordingly, entry into the proposed transactions is in the best interest of the estates of LBSF and LBFP each of which has exercised sound business judgment in determining to enter into such transactions.  The Debtors have worked closely with the advisors to the Creditors' Committee in connection with the Proposed Transactions.

### Relief Requested

10.    LBSF and LBFP seek authorization, but not direction, pursuant to sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 6006, to:

---

[2] A portion of this amount represents the return of collateral that LBSF posted to the Trust Counterparty in connection with the Swap Agreement with First Franklin Mortgage Loan Trust 2006-FF8.  With respect to the Swap Agreement with First Franklin Mortgage Loan Trust 2006-FF8, First Franklin Mortgage Loan Trust 2006-FF8 does not owe LBSF any scheduled payments under the terms of the Swap Agreement as of the date of this Motion.  The amount included on Schedule B to the proposed order represents the amount of collateral that First Franklin Mortgage Loan Trust 2006-FF8 would return to LBSF upon the assumption and assignment of that Swap Agreement.

(a)    assume and assign their respective interests in the interest rate Swap Agreements set forth on Exhibit A annexed to the proposed order (the "Proposed Order"), free and clear of all liens claims and interests to 1271 SwapCo. Ltd. ("1271 SwapCo"), a Cayman Islands limited liability company, the payment obligations of which will be guaranteed by Deutsche Bank AG, New York Branch ("Deutsche Bank AG"), substantially on the terms and conditions identified in this Motion; and

(b)    (i) enter into interest rate swap agreements with 1271 SwapCo and interest rate cap agreements with Deutsche Bank AG which, taken together, replicate for LBSF and LBFP the economic benefits and risks that currently exist under the Swap Agreements, and perform all obligations thereunder and (ii) pay Deutsche Bank AG a fee for entering into such transactions.

11.    LBSF and LBFP also request that (i) upon assumption of the Swap Agreements, and immediately prior to assignment to 1271 SwapCo, each Trust (other than First Franklin Mortgage Loan Trust 2006-FF8) should be required to pay to LBSF and LBFP, as applicable, payments owed but not made to LBSF and LBFP in the amounts set forth on Exhibit B annexed to the Proposed Order, plus interest in the amounts agreed to by the parties and (ii) immediately upon the assignment of the Swap Agreements with First Franklin Mortgage Loan Trust 2006-FF8 ("First Franklin"), First Franklin should be required to return to LBSF all collateral posted by LBSF to First Franklin.

12.    To immediately capture the value of the transactions and avoid irreparable harm to their estates, LBSF and LBFP request that the Court waive the fourteen-day stay under Bankruptcy Rule 6006(d) and direct that the order granting the relief requested shall be effective immediately.

## The Swap Agreements

13.    In the ordinary course of their businesses prior to the Commencement Date, the Debtors were active participants in the swap markets and entered into various types of swap agreements, including interest rate swaps.  LBSF is party to one or more Swap Agreements

with four of the Trust Counterparties and LBFP is party to one or more Swap Agreements with

one of the Trust Counterparties.  Generally, under the Swap Agreements, LBSF or LBFP has an

obligation to pay to the Trust Counterparties a floating interest rate, based on either one-month

USD-LIBOR-BBA ("One Month LIBOR") or three-month USD-LIBOR-BBA ("Three Month

LIBOR"), plus a specified spread on a specified notional amount.  Each Trust Counterparty has

the obligation to pay to either LBSF or LBFP a fixed rate of interest on the same notional

amount.  LBHI guaranteed LBSF's obligations under each Swap Agreement.  LBHI did not

guarantee LBFP's obligations under the Swap Agreements to which LBFP is a party.[3]

**Events Related to the Swap Agreement Subsequent to the Commencement Date**

*1.  The Trusts Have Not Yet Made Periodic Payments Due Under the Swap Agreements*

          14.     Due to low prevailing One Month LIBOR and Three Month LIBOR rates

since the Commencement Date, LBSF and LBFP have generally been "in the money" and each

Trust Counterparty has generally been a net obligor under its respective transactions.  As a result,

generally, on each payment date specified in the Swap Agreements, the Trust Counterparties

were obligated to make a net payment to LBSF or LBFP.  Since the Commencement Date,

however, other than with respect to First Franklin, the Trust Counterparties have not made

payments under the Swap Agreements, and instead have escrowed or otherwise set aside such

payments.  As of the date hereof, the Trust Counterparties owe LBSF or LBFP net payments in

the amount set forth on Exhibit B annexed to the Proposed Order.  With respect to the Swap

Agreement with First Franklin, First Franklin does not owe LBSF any scheduled payments under

the Swap Agreement as of the date of this Motion.  The amount included on Schedule B to the

---

[3] The descriptions of the Swap Agreements are provided for summary purposes only.  To the extent that the
descriptions of the Swap Agreements in this Motion conflict with the terms of a particular Swap Agreement, the
terms of such Swap Agreement shall control.

proposed order represents the amount of collateral that First Franklin would return to LBSF upon the assumption and assignment of that Swap Agreement.

15.    The Trustee has asserted that some of the Swap Agreements provide that upon an event of a default by the Debtors, the Debtors' right to payment is either modified or eliminated.  In addition, with respect to each Trust, the indenture or other transaction document governing the issuance of securities provides that if an event of default has occurred and is in existence under the applicable Swap Agreement and LBSF or LBFP is the defaulting party, and the Trust Counterparty terminates such Swap Agreement, then the termination payments payable to LBSF and LBFP have a lower priority than payments to other parties, including security holders, which would effectively leave no assets to make the payments to LBSF or LBFP.  The Debtors have contested the enforceability of such provisions against the Debtors in other transactions.  However, as a result of these provisions, among other reasons, the Trustee has been unwilling to distribute amounts held in the Trusts.

16.    While this Court has held that provisions similar to the provisions contained in the governing documents for each Trust that modify the priority of the payments due pursuant to the Swap Agreement are unenforceable,  *See, LBSF v. BNY Corp. Tr. Serv*., 422 B.R. 407 (Bankr. S.D.N.Y. 2010), the facts and circumstances of each structured finance transaction are unique.  The Debtors do not believe that the Trust Counterparties still retain the right to terminate the Swap Agreements based upon the event of default caused by the chapter 11 filings of LBHI, LBSF and LBFP.  To the extent that the Trust Counterparties decide at any time prior to the maturity and settlement of their Swap Agreement to seek to terminate the Swap Agreements and enforce the indenture provisions, LBSF and LBFP would be forced to expend time and resources to litigate such matters.  While the Debtors expect the Bankruptcy Court's

ruling in *LBSF v. BNY Corp. Tr. Serv*. to be affirmed by the District Court, the appeal of such ruling is currently pending.

17.     The commencement of the chapter 11 cases by LBHI, LBSF and LBFP constituted events of default under the Swap Agreements.  As of the date of this Motion, none of the Trust Counterparties has terminated, or attempted to terminate, the Swap Agreements due to such events of default.

18.     Section 2(e) of each Swap Agreement provides that "a party that defaults in the performance of any payment obligation will . . . be required to pay interest (before as well as after judgment) on the overdue amount to the other party on demand . . . for the period from (and including) the original due date for payment to (but excluding) the date of actual payment, at the Default Rate" (as that term is defined in the Agreement).  Thus, LBSF and LBFP are entitled to receive interest in the amount agreed to by the parties.

*2.  Assignment of Swap Agreements*

19.     Since the Commencement Date, the Debtors have sought to monetize their "in the money" swap agreements in various ways, including by assuming and assigning the agreements.  However, the Debtors have found that in most cases, parties have not been willing to purchase "in the money" swap agreements from the Debtors for amounts at or close to the fair market value of such agreements.  The Debtors have determined that larger recoveries can be realized by retaining the economics of the "in the money" swap agreements and collecting the scheduled payments required under the terms of the swap agreements, rather than selling them at steep discounts.

3. *The Proofs of Claim and The Adversary Proceeding*

20.     On September 18, 2009, the Trustee filed Proof of Claim Nos. 18510, 18512, 18487, 18488, 18489, 18490, 18533, 18534 and 43695 (collectively, the "Trustee Claims") on behalf of the holder of the respective securities issued by the Trusts. The Trustee Claims relate to claims arising against the Debtors under the Swap Agreements.  Certain other parties may also have filed claims against the Debtors based on the securities issued by the Trusts or the Swap Agreements.

21.     On October 1, 2010, the Debtors filed an adversary proceeding, Adv. P. No. 10-03809 (the "Swap Agreement Adversary Proceeding"), against the Trustee and certain of the Trust Counterparties (collectively, the "Swap Defendants") alleging, among other things, that the Swap Defendants were the recipients of avoidable transfers relating to certain of the Swap Agreements.

**The Proposed Transaction**

22.     The proposed transactions will (i) enable LBSF and LBFP to receive significant cash payments from each of the Trust Counterparties upon the entry of the Proposed Order, (ii) cure the defaults in existence under the Swap Agreements, (iii) provide the Trust Counterparties with a credit-worthy counterparty to their Swap Agreements, (iv) alleviate the risks that exist from the continued events of default under the Swap Agreements, which will enable the Debtors to prudently hedge their exposures, and (v) maximize the value of the Swap Agreements for the estates of LBSF and LBFP.  The salient terms of the proposed transactions (the "Proposed Transactions") are described below and include:[4]

---

[4] A diagram and detailed description of the Proposed Transactions is annexed hereto as Exhibit 1.

**Assumption and Assignment of the Swap Agreements to 1271 SwapCo**

- <u>Proposed Transactions</u>.  LBSF and LBFP shall assume, assign and transfer all of their respective rights and interests in the Swap Agreements to 1271 SwapCo.  Deutsche Bank AG shall provide a guarantee to the Trust Counterparties of all payment obligations of 1271 SwapCo to the Trust Counterparties under the Swap Agreements.  Upon such assignment, LBSF and LBFP shall be released of any and all obligations under the Swap Agreements.  To effect the assumption and assignment, the Trust Counterparties, 1271 SwapCo and LBSF or LBFP, as applicable, will enter into novation agreements.

- <u>1271 SwapCo</u>.  1271 SwapCo is a recently formed Cayman Islands limited liability company, established solely for the purpose of entering into swap transactions as an intermediary between the Debtors and their current swap counterparties.  LBSF holds all of the residual economic interest in 1271 SwapCo.

- <u>Outstanding Payments</u>.  Upon assumption of the Swap Agreements, but immediately prior to, and as a condition precedent to, the assignment to 1271 SwapCo, each Trust Counterparty shall pay to LBSF or LBFP, as applicable, the Net Amounts Due to LBSF and LBFP as set forth on Exhibit B annexed to the Proposed Order (plus interest in the amount agreed to by the parties) reflecting the net payments owed to LBSF or LBFP as of the expected date of assignments, or in the case of First Franklin, the amount of collateral posted by LBSF.

- <u>Cure Payments</u>.  LBSF and LBFP shall cure the missed payments to the Trust Counterparties under their respective Swap Agreements by allowing the Trusts to net or set off the Cure Payment set forth on Exhibit B annexed to the Proposed Order from the outstanding payments owed to LBSF or LBFP under the Swap Agreement.  Prior to, and as a condition precedent to, the assignment of the Swap Agreements, the Debtors, the Creditors' Committee and the Trust Counterparties will agree on reasonable and documented fees and expenses due to the Trust Counterparties under the terms of the Swap Agreements.

- <u>LBHI Guarantee</u>.  LBHI's obligations under the Swap Agreements, including but not limited to its role as guarantor and/or credit support provider, are not being assumed.  The LBHI guarantee of each Swap Agreement will be cancelled.

- <u>Section 365(k)</u>.  Pursuant to section 365(k), neither LBSF nor LBFP shall have any further obligations under the Swap Agreements following the consummation of the Proposed Transactions.

## Entry Into New Swap Agreements

- New Swap Agreements.  LBSF shall enter into new interest rate swap agreements with 1271 SwapCo and interest rate cap agreements with Deutsche Bank AG (the "New Swap Agreements"), which taken together, replicate for LBSF the economic benefits and risks that exist under the current Swap Agreements.[5]

- LBFP's New Swap Agreement.  Since LBFP is not party to an ISDA Master Agreement with 1271 SwapCo, LBFP is unable to enter into a transaction directly with 1271 SwapCo.  As a result, LBSF will enter into the New Swap Agreement with 1271 SwapCo that will provide to LBSF the economic benefits and risks of LBFP's current Swap Agreement with Harbourview CDO III Ltd. (the "Harbourview New Swap Agreement").  LBSF will then enter into another New Swap Agreement with LBFP that will effectively transfer the benefits and risks of the Harbourview New Swap Agreement to LBFP.

- Intermediation Fee.  LBSF and LBFP (indirectly through LBSF) will pay Deutsche Bank AG a fee for entering into these transactions and enabling LBSF and LBFP to obtain the benefits thereof.  The fee (the "Fee") for each transaction will be a market rate approved by the Creditors' Committee.

### The Assumption, Assignment, and Sale of the
### Agreement is a Sound Exercise of LBSF's and LBFP's Business Judgment

23.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  In determining whether an executory contract or unexpired lease should be assumed, courts apply the "business judgment" test.  *Orion Pictures Corp. v. Showtime Networks, Inc.* (*In re Orion Pictures*), 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of

---

[5] Pursuant to the authority granted under the Court's *Order Pursuant to Sections 105 and 364 of the Bankruptcy Code Authorizing the Debtors to Grant First Priority Liens in Cash Collateral Posted in Connection With the Hedging Transactions the Debtors Enter Into Through Certain Futures and Prime Brokerage Accounts* [Docket No. 3047], the Debtors have entered into certain agreements to hedge a portion of their exposure under the Swap Agreements.

administration of the estate, and threaten the court's ability to control a case impartially"); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("The decision to assume or reject an executory contract is within the sound business judgment of the debtor-in-possession. . . ."). Under this test, a court should approve the assumption of a contract under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate. *See, e.g.*, *In re Child World, Inc.*, 142 B.R. 87, 89-90 (Bankr. S.D.N.Y. 1992).

24.     LBSF's and LBFP's assumption and assignment of the Swap Agreements represents a sound exercise of their business judgment that should be approved. By assuming and assigning the Swap Agreements, LBSF and LBFP will immediately receive cash in the amount of $100,152,815.07 and $7,712,971.55, respectively, in aggregate net payments owed by the Trust Counterparties (plus interest in the amount agreed to by the parties), or the return of collateral, for the benefit of their creditors. In addition, LBSF (and LBFP indirectly) will become party to the New Swap Agreements with 1271 SwapCo and Deutsche Bank AG that are "in the money" to the same extent as the current Swap Agreements. The Proposed Transactions would not however eliminate all risk to estates of LBSF and LBFP from such Swap Agreements. To the extent, One Month LIBOR or Three Month LIBOR rates increase following the Proposed Transactions, the value of the New Swap Agreements to LBSF and LBFP would decrease. Pursuant to the terms of the New Swap Agreements, LBSF and LBFP would have substantially the same economic risks they have under the current Swap Agreements. These transactions enable LBSF and LBFP to maximize their potential for future recoveries under the Swap Agreements.

25.     The assumption and assignment to 1271 SwapCo also cures the existing events of default under the Swap Agreements and relieves LBSF's and LBFP's estates of the risk and attendant costs if the Trustee or the Trust Counterparties seek to terminate the Swap Agreements and enforce certain provisions contained in the indentures that would modify the rights of LBSF and LBFP to payments from the Trusts.  While the Debtors believe that the Trusts no longer are entitled to terminate the Swap Agreements based on the chapter 11 filings, and consistent with the Court's ruling in *LBSF v. BNY Corp. Tr. Serv.,* provisions modifying the priority of payments are unenforceable against the Debtors, nothing prevents the Trustee or the Trust Counterparty from arguing that the facts and circumstances of these situations differ from those ruled on by the Court and therefore a different result is appropriate.  Such risks have made it difficult for the Debtors to determine and enter into proper hedging agreements necessary to fully protect the Debtors against movements in interest rates.  While the Debtors have hedged a portion of their risk under the Swap Agreements, eliminating existing events of default under the Debtors' Swap Agreements would remove such risks and would enable the Debtors to effectively and prudently hedge their interest rate exposures under the Swap Agreements.

26.     In short, through the Proposed Transactions, LBSF and LBFP receive an immediate cash payment from the Trust Counterparties and retain the economic benefits of the Swap Agreements while, at the same time, relieving their estates of the risk that the Trustee or the Trust Counterparties will seek to terminate the Swap Agreements and enforce the provisions that modify the priority of payments and make payments to other parties prior to making payments to LBSF and LBFP.  The assumption and assignment of each Swap Agreement represents a reasonable exercise of LBSF's and LBFP's business judgment, is in the best interests of their estates and creditors, and should be approved.

**LBSF and LBFP Will Cure Their Monetary Defaults Upon**
**Assumption But Do Not Need to Cure *Ipso Facto* Defaults Under the Agreement**

27.    Section 365(b) of the Bankruptcy Code establishes certain conditions that

must be satisfied prior to the assumption of an executory contract if the contract contains a

default:

> (b)(1) If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will
> > promptly cure, such default…
> >
> > (B) compensates, or provides adequate assurance that the trustee will
> > promptly compensate, a party other than the debtor to such contract or
> > lease, for any actual pecuniary loss to such party resulting from such
> > default; and
> >
> > (C) provides adequate assurance of future performance under such
> > contract or lease.

11 U.S.C. § 365(b)(1).

28.    Certain defaults, however, need not be cured and do not require the debtor

to provide adequate assurance of future performance.  Specifically, section 365(b)(2) provides an

exception to the requirements of section 365(b)(1) for certain defaults:

> (2) Paragraph (1) of this subsection does not apply to a default that is a
> breach of a provision relating to—
>
> > (A) the insolvency or financial condition of the debtor at any time
> > before the closing of the case;
> >
> > (B) the commencement of a case under this title; [or]
> >
> > (C) the appointment of or taking possession by a trustee in a case
> > under this title or a custodian before such commencement…

11 U.S.C. § 365(b)(2).  The purpose of section 365(b)(2) is to ensure that "the requirements of

section 365(b)(1) do not apply to defaults triggered by provisions relating to the insolvency or

financial condition of the debtor, the commencement of a Chapter 11 case, or the appointment of

a trustee in the case or a custodian before the case." *L.R.S.C. Co. v. Rickel Home Cents., Inc. (In re Rickel Home Centers)*, 209 F.3d 291, 298 (3d Cir. 2000).

29.     The only events of default under the Swap Agreements that need to be cured by LBSF and LBFP to satisfy section 365(b) of the Bankruptcy Code are the payment defaults.  Subsequent to their respective Commencement Dates, LBSF and LBFP did not make certain payments to the Trust Counterparties under the Swap Agreements that they were obligated to make under the terms of the Swap Agreements.  In addition, the Trust Counterparties have incurred fees and expenses in connection with enforcing their rights under, and protecting their interests in, the Swap Agreements.  LBSF and LBFP propose that upon assumption of the Swap Agreements, they will promptly cure their missed payments to each Trust Counterparty by permitting each Trust Counterparty to net or set off this missed payment from the payments owed by the Trust Counterparties to LBSF or LBFP, as applicable.

30.     The other events of default that may be asserted by the Trust Counterparties are the commencement of the chapter 11 cases by LBHI and either LBSF or LBFP.  Pursuant to section 365(b)(2), however, LBSF and LBFP do not need to cure such defaults because they are unenforceable *ipso facto* provisions that are based upon the commencement of a case under the Bankruptcy Code.  *See Summit Inv. and Dev. Corp. v. LeRoux (In re LeRoux)*, 69 F.3d 608, 610 (1st Cir. 1995); *In re Texaco Inc.*, 73 B.R. 960, 965 (Bankr. S.D.N.Y. 1987) (holding that counterparty could not accelerate notes because such right was only triggered upon a bankruptcy default clause, which was void pursuant to section 365(e)(1)); s*ee also In re Ernie Haire Ford, Inc.*, 403 B.R. 750, 759 (Bankr. M.D. Fla. 2009) (holding that counterparty's enforcement of right to terminate contract at will was unenforceable under section 365(e)(1) where the sole basis for termination was the debtor's bankruptcy filing).

### Adequate Assurance of Future Performance by the Assignee Has Been Provided

31.     Pursuant to 365(f)(2) of the Bankruptcy Code, the trustee may only assign an executory contract if "adequate assurance of future performance by the assignee of such contract or lease is provided." 11 U.S.C. § 365(f)(2).  Under section 365(f)(2), the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *Carlisle Homes, Inc. v. Arrari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (internal citations omitted); *see also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (explaining that adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent).  Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygraph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance of future performance is present when prospective assignee of lease has financial resources and expressed willingness to devote sufficient funding to business to give it strong likelihood of succeeding; chief determinant of adequate assurance is whether rent will be paid).

32.     All of the payment obligations of 1271 SwapCo under each Swap Agreement will be fully and unconditionally guaranteed by Deutsche Bank AG.  Deutsche Bank AG is a large financial institution with extensive experience in managing and trading in derivatives transactions of this size and scope.  Deutsche Bank AG also has more than sufficient financial capability to satisfy any and all obligations that may arise under the Swap Agreements, thus enabling the Swap Agreements with the Trust Counterparties to continue unimpeded.  At all times from April 24, 2001 through April 30, 2007, the period in which LBSF and LBFP entered into the Swap Agreements, LBHI's credit ratings were at least: (i) "A2" (long-term) and "P1" (short-term) from Moody's Investor Services, and "A" (long-term) and "A-1" (short-term) from

Standard & Poor's.  Currently, Deutsche Bank AG's credit ratings are:  "Aa3" (long-term) and "P1" (short-term) from Moody's Investor Services, and "A+" (long-term) and "A-1" (short-term) from Standard and Poor's.  As such, there can be no serious dispute that Deutsche Bank AG is an appropriate, creditworthy counterparty.  As a result, each Trust Counterparty has adequate assurance of future performance by the assignee.

### The Assignment of the Swap Agreements Should Be Free and Clear of Liens and Claims

33.    The assignment of the Swap Agreements to 1271 SwapCo should be free and clear of any and all liens, claims, encumbrances and other interests in accordance with section 363(f) of the Bankruptcy Code.   A debtor may sell property of its estate free and clear of any interest in such property if one of the conditions in section 363(f)(1) – (5) is satisfied.  *See* 11 U.S.C. § 365(f); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition.); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.)*, 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the court's power to sell property free and clear of liens has long been recognized); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale.").

34.    The Debtors are not aware of any parties that have any liens, claims, encumbrances, or interests in the Swap Agreements.  To the extent that any party asserts a lien, claim, encumbrance or other interest in any Swap Agreement, subject to any claims and defenses the Debtors may possess with respect thereto, such party's interests will be adequately protected because the Debtors will be able to satisfy one or more of the conditions set forth in section

363(f).  Thus, the sale of the Swap Agreements free and clear of liens, claims, encumbrances, and interests will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code.

### A Private Sale Is Appropriate Under the Circumstances

35.    Bankruptcy Rule 6004(f)(1) provides that "[a]ll sales not in the ordinary course of business may be by private sale or by public auction."  In accordance with this bankruptcy rule, courts allow a chapter 11 debtor to sell or assign assets outside the ordinary course of business by private sale when the debtor demonstrates that the sale or assignment is permissible.  *See, e.g., In re Loral Space & Commc'ns Ltd.*, Ch. 11 Case No. 03-41710 (RDD) (Bankr. S.D.N.Y. Sep. 30, 2005) (Docket No. 2393); *In re Int'l Wire Group, Inc.,* Ch. 11 Case No. 04-11991 (BRL) (Bankr. S.D.N.Y. June 10, 2004) (Docket No. 176); *Palermo v. Pritam Realty, Inc. (In re Pritam Reality, Inc.),* 233 B.R. 619 (D.P.R. 1999) (upholding bankruptcy court's approval of private sale conducted by chapter 11 debtor); *In re Wieboldt Stores, Inc.*, 92 B.R. 309 (N.D. Ill. 1988) (affirming right of chapter 11 debtor to transfer assets by private sale); *In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998) (approving private sale of chapter 11 debtor's assets).

36.    Since the Commencement Date, the Debtors have been unable to sell swap agreements similar to the Swap Agreements at or near their fair market value as a result of certain discounts applied by market participants to the Debtors' swap agreements.  The Debtors have successfully used transactions similar to the Proposed Transactions to monetize their "in the money" derivative positions and to increase expected recoveries from these positions.  Prior to such transactions, the Debtors and their representatives had extensive conversations with participants in the derivatives market regarding participating in transactions like the Proposed Transactions.  The Fee that the Debtors would pay to Deutsche Bank AG in connection with the Proposed Transactions is consistent with the fees that are being charged in the market for similar

transactions by parties acting as intermediaries in swap transactions.   The Debtors have

determined that the Proposed Transactions would yield a higher return to the estates of LBSF

and LBFP than public auction of the Swap Agreements.

### Entry Into the New Swap Agreements and Payment of the Fee to Deutsche Bank AG Are an Exercise of Sound Business Judgment by the Debtors and Meet the Standard Under Section 363 of the Bankruptcy Code

37.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee,

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  Id. § 363(b)(1).  When considering a transaction outside the ordinary

course of business, courts in the Second Circuit, and others, require that such transaction be

based upon the sound business judgment of the debtor.  *Comm. of Equity Sec. Holders v. Lionel

Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*,

973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton

State Bank v. Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional

Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d

1223, 1226 (5th Cir. 1986).

38.     It is generally understood that "[w]here the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville

Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is

a strong presumption that "the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company."  *In

re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

39.     LBSF's and LBFP's entry into the New Swap Agreements is in the best interests of their respective estates and creditors.  The New Swap Agreements replicate for LBSF and LBFP the economic benefits and risks that exist under the current Swap Agreements, but have the advantage of not having any existing events of defaults.  As a result, the risk of the Trust Counterparty terminating the Swap Agreements and seeking to modify LBSF's and LBFP's rights to payments from the Trust Counterparties, has significantly been mitigated.   The New Swap Agreements, like the current Swap Agreements, will be "in the money" to LBSF and LBFP at the time of execution.  Significantly, the New Swap Agreements are an integral part of the Proposed Transactions which will result in LBSF and LBFP being paid $100,152,815.07 and $7,712,971.55, respectively, in aggregate net payments, upon the consummation of the Proposed Transactions representing due and unpaid amounts and the return of collateral.

40.     The Proposed Transactions, however, do not eliminate all of the risk to LBSF's and LBFP's estates of the Swap Agreements.  The value of the New Swap Agreements, and the payments LBSF and LBFP (indirectly) would be required to make pursuant to the new Swap Agreements are tied to the One Month LIBOR or Three Month LIBOR rates.   Under the New Swap Agreements, LBSF and LBFP would be entitled to receive payments based on a fixed rate of interest.  To the extent that the One Month LIBOR or Three Month LIBOR rates dramatically increase after the entry into the New Swap Agreements, LBSF could be obligated to make net payments under the New Swap Agreements.  Since the New Swap Agreements would be post-petition obligations of LBSF and LBFP, any claim to such net payments (to the extent they exist) could be entitled to priority status under section 503(b) of the Bankruptcy Code.

41.     Notwithstanding such risks, it is LBSF's and LBFP's business judgment that entering into the New Swap Agreements is in the best interest of their respective estates. LBSF and LBFP have determined that the risk of LBSF or LBFP having to make net payments under the New Swap Agreements on payment dates in the future is small compared to the benefits that LBSF and LBFP are likely to receive pursuant to the New Swap Agreements.  In addition, entry into the New Swap Agreements is an integral part of the Proposed Transactions, which will result in the Trusts paying to LBSF and LBFP due and unpaid amounts in cash prior to the assignment of the Swap Agreements.  Without the assumption and assignment of the Swap Agreements, the Trust Counterparties would not have agreed to pay such amounts to LBSF and LBFP at this time.  The Proposed Transactions provide the Trust Counterparties with a credit-worthy counterparty and cures various existing events of default under the Swap Agreements.

42.     The Proposed Transactions provide that LBSF and LBFP will pay Deutsche Bank AG the Fee.  The Fee is necessary to compensate Deutsche Bank AG for entering into certain of the New Swap Agreements.  The Fee paid to Deutsche Bank AG is small in comparison to the benefit that the Proposed Transactions confer upon LBSF's and LBFP's estates.  Further, based on transactions that the Debtors have entered into since the Commencement Date, the Fee required by Deutsche Bank AG in order to enter into the Proposed Transactions is reasonable, and in line with fees charged by other market participants for such similar transactions.

43.     Based on the foregoing, LBSF and LBFP respectfully submit that the entry into the New Swap Agreements and the payment of the Fee are an exercise of their sound business judgment.

## Notice

44.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) each Trust, each Trust Counterparty and the Trustee for each Trust; (vii) Harbourview Asset Management Corporation; (viii) Impac Holdings, Inc., (ix) Impac Funding Corporation, (x) Impac Secured Assets Corp., (xi) Moody's Investors Service, Inc., (xii) Fitch, Inc., (xiii) Standard & Poor's Rating Services Inc., (xiv) Dominion Bond Rating Service, (xv) 1271 SwapCo; (xvi) Deutsche Bank AG; and (xvii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

45.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court find that (i) all of the requirements of sections 363 and 365 of the Bankruptcy Code have been met, (ii) LBSF and LBFP are duly authorized to assume and assign their respective interests in each Swap Agreement to 1271 SwapCo, (iii) upon assumption, but immediately prior to assignment, each Trust Counterparty is required to pay to LBSF or LBFP, as applicable, the amounts owed to such party under the Swap Agreements in the amounts set forth on Exhibit B annexed to the Proposed Order, plus applicable interest (in the amount agreed to by the parties), (v) LBSF and LBFP are duly authorized to enter into the New Swap Agreements with 1271 SwapCo and Deutsche Bank AG and to pay Deutsche Bank AG the Fee, and (vi) grant LBSF and LBFP such other and further relief as it deems just and proper.

Dated:  November 11, 2010
        New York, New York

                                        /s/ Lori R. Fife
                                        Lori R. Fife

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

### Exhibit 1

### Diagram/Description of Proposed Transaction

## PRIOR TO THE PROPOSED TRANSACTIONS:



## PROPOSED TRANSACTIONS:

- LBSF assumes and assigns the Swap Agreements to 1271 SwapCo.  LBHI's guarantee is cancelled.

- Deutsche Bank AG guarantees all payment obligations of 1271 SwapCo under the current Swap Agreements with the Trust Counterparties to provide the Trust Counterparties adequate assurance of future performance by 1271 SwapCo.

- LBSF enters into a new swap agreement with 1271 SwapCo whereby 1271 SwapCo will pay all amounts to LBSF that it receives from the Trust Counterparties and LBSF will pay an upfront amount to 1271 SwapCo for entering into such new agreement.

- LBSF enters into cap agreements with Deutsche Bank AG pursuant to which Deutsche Bank AG will make an upfront payment to LBSF and LBSF will pay to Deutsche Bank AG specified amounts to the extent that the Floating Rate exceeds the fixed rate set forth in the current swap agreements and LBSF will post the collateral required pursuant to an existing ISDA Master Agreement with Deutsche Bank AG.

- Deutsche Bank AG will enter into a new agreement with 1271 SwapCo whereby Deutsche Bank AG will pay to 1271 SwapCo specified amounts to the extent that the Floating Rate exceeds the fixed rate set forth in the current swap agreements, and 1271 SwapCo will pay an upfront amount to Deutsche Bank AG.

- LBSF will pay Deutsche Bank AG a fee for entering into these transactions.

## FOLLOWING THE PROPOSED TRANSCTIONS:



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                  :

In re                           :      **Chapter 11 Case No.**

                                  :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :      **08-13555 (JMP)**

                                  :

                **Debtors.**       :      **(Jointly Administered)**

                                  :

------------------------------------------------------------------x

**ORDER AUTHORIZING LBSF AND
LBFP, PURSUANT TO SECTIONS 363 AND
365 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULE 6006, TO ASSUME AND ASSIGN INTEREST RATE
SWAP AGREEMENTS WITH CERTAIN TRUST COUNTERPARTIES,
INCLUDING DEUTSCHE BANK NATIONAL TRUST COMPANY, AS INDENTURE
TRUSTEE, AND TO ENTER INTO NEW INTEREST RATE SWAP AGREEMENTS**

Upon the motion, dated November 11, 2010 (the "Motion"), of Lehman Brothers

Special Financing Inc. (the "LBSF") and Lehman Brothers Financial Products Inc. ("LBFP") as

debtors and as debtors in possession (collectively with Lehman Brothers Holdings Inc. ("LBHI")

and its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors" and, together

with their non-debtor affiliates, "Lehman"), pursuant to sections 363 and 365 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for authorization to assume and assign their interests in the

Swap Agreements[1] with certain Trust Counterparties to 1271 SwapCo and to enter into New

Swap Agreements, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Docket No. 9635]; and a hearing

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBSF and LBFP, their

estates and creditors, and all parties in interest and that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is

> ORDERED that the Motion is granted; and it is further

> ORDERED that, pursuant to sections 363(b)(1), 363(f) and 365(f) of the

Bankruptcy Code, LBSF and LBFP are hereby authorized to assume and assign their respective

interests in the Swap Agreements to 1271 SwapCo substantially on the terms and conditions

identified in the Motion and upon the assignment to 1271 SwapCo shall be the counterparty to

each Trust Counterparty for their respective Swap Agreement from and after the consummation

and effectiveness of the Proposed Transactions; and it is further

> ORDERED that upon assumption of each Swap Agreement, LBSF and LBFP

shall promptly cure the existing payment defaults under their respective Swap Agreements by

allowing each Trust Counterparty to deduct (i) the Cure Payment in the amount set forth on

Exhibit B annexed hereto and (ii) amounts representing reasonable and documented fees and

expenses owed to the Trust Counterparties under the terms of the Swap Agreements in an

amount agreed to by the Trust Counterparties, the Debtors and the Creditors' Committee, from

payments due to LBSF or LBFP as provided hereinafter; *provided, however,* that with respect to

LBSF, LBFP, LBHI or any of their affiliates, any defaults that may arise because of a condition

of the kind specified in section 365(b)(2) of the Bankruptcy Code ("*Ipso Facto* Defaults") are not

subject to the requirements under section 365(b)(1) of the Bankruptcy Code; and it is further

ORDERED that upon the cure of the defaults provided in the preceding paragraph

and the assignment of the Swap Agreements, each Trust Counterparty and the Trustee is forever

barred, estopped, and permanently enjoined from (i) asserting against LBSF, LBFP or 1271

SwapCo, or the property of either of them, any default existing as of the assignment of such

Swap Agreement, or against 1271 SwapCo, any counterclaim, defense, setoff or any other

interest asserted or assertable against the Debtors; and (ii) imposing or charging against 1271

SwapCo or its affiliates any accelerations, assignment fees, increases or any other fees as a result

of the Debtors' assumption and assignments to 1271 SwapCo of such Swap Agreement; and it is

further

ORDERED that upon assumption, but immediately prior to the assignment of the

Swap Agreements, each Trust Counterparty shall perform its obligations to make payments or

return collateral to LBSF or LBFP, as applicable, under the applicable Swap Agreement, without

regard to any alleged existing defaults or *Ipso Facto* Defaults, including, but not limited to,

making all payments that were owed to LBSF or LBFP, as applicable, in the amounts set forth on

Exhibit B annexed hereto less (i) the Cure Payment (plus interest in the amount agreed to by the

parties) and (ii) amounts representing reasonable and documented fees and expenses owed to the

Trust Counterparties under the terms of the Swap Agreements in an amount agreed to by the

Trust Counterparties, the Debtors and the Creditors' Committee; and it is further

ORDERED that nothing herein shall constitute an assumption of any obligations

by LBHI; and it is further

ORDERED that, upon the assumption and assignment of the Swap Agreements, LBSF and LBFP, as applicable, shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, of all further obligations under the Swap Agreements; and it is further

ORDERED that upon the assumption and assignment of the Swap Agreements, the Debtors shall release the Trustee from all claims, causes of action, liabilities and other obligations existing or occurring prior to the Commencement Date and arising under or related to the Swap Agreements or Trusts; and it is further

ORDERED that upon the assignment of the Swap Agreements, no default shall exist under any Swap Agreement and any provision in any Swap Agreement that purports to prohibit or condition the assignment of such Swap Agreement or allows a Trust Counterparty to terminate, recapture, impose any penalty or condition on renewal or extension, or modify any term or condition upon such assignment, constitutes an unenforceable anti-assignment provision that is void and of no force and effect; and it is further

ORDERED that pursuant to section 363(f) of the Bankruptcy Code,  1271 SwapCo shall take title to and possession of LBSF's and LBFP's interest in each Swap Agreement free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever; and it is further

ORDERED that, pursuant to section 363 of the Bankruptcy Code, LBSF and LBFP are authorized and empowered to enter into the New Swap Agreements and are authorized, but not directed, to execute, deliver, implement, and perform any and all obligations, instruments, documents and papers, and to take all corporate and other actions that may be necessary or appropriate to consummate all of the transactions contemplated by the Proposed

Transactions without the necessity or requirement of further court proceedings or approval; and it is further

ORDERED that, pursuant to section 363 of the Bankruptcy Code, LBSF and LBFP are authorized and empowered to pay the Fee to Deutsche Bank AG in connection with the assumption and assignment of the Swap Agreements and the entry into the New Swap Agreements; and it is further

ORDERED that upon the assumption and assignment of the Swap Agreements as provided for above, the Swap Agreement Adversary Proceeding shall be dismissed, with prejudice, against the Swap Defendants solely to the extent that such Swap Agreement Adversary Proceeding relates to any transfers or payments made or received pursuant to the Swap Agreements; and it is further

ORDERED that upon the assumption of the Swap Agreements and the cure of any defaults thereunder, the Trustee Claims are hereby deemed satisfied and expunged and Epiq Bankruptcy Solutions LLC, the Court-approved claims agent, is authorized to modify the claims register to reflect that the Trustee Claims have been expunged; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that the requirements of Bankruptcy Rule 6006(d) are hereby waived and this Order shall be effective immediately upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated:  December __, 2010
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

## Exhibit A

### Swap Agreements

1.     The 1992 ISDA Master Agreement, the Schedule to the Master Agreement and the Credit Support Annex, each dated as of September 29, 2006, between Lehman Brothers Special Financing Inc. and Deutsche Bank National Trust Company, not in its individual capacity, but solely as Supplemental Interest Trust Trustee with respect to the Supplemental Interest Trust relating to IMPAC Secured Assets Trust 2006-3, Mortgage Pass-Through Certificates Series 2006-3, and all Confirmations entered into between these parties under this Master Agreement

2.     The 1992 ISDA Master Agreement, the Schedule to the Master Agreement and the Credit Support Annex, each dated as of April 30, 2007, between Lehman Brothers Special Financing Inc. and Deutsche Bank National Trust Company, not in its individual capacity, but solely as Supplemental Interest Trust Trustee with respect to the Supplemental Interest Trust relating to IMPAC Secured Assets Trust 2007-3, Mortgage Pass-Through Certificates Series 2007-3, and all Confirmations entered into between these parties under this Master Agreement

3.     The 1992 ISDA Master Agreement, the Schedule to the Master Agreement and the Credit Support Annex, each dated as of June 21, 2006, between Lehman Brothers Special Financing Inc. and Deutsche Bank National Trust Company, not in its individual capacity, but solely as Cap Trustee with respect to the Cap Trust relating to First Franklin Mortgage Loan Trust 2006-FF8, Asset Backed Certificates, Series 2006-FF8, and all Confirmations entered into between these parties under this Master Agreement

4.     The 1992 ISDA Master Agreement, the Schedule to the Master Agreement, each dated as of June 29, 2006, between Lehman Brothers Special Financing Inc. and Deutsche Bank National Trust Company, not in its individual capacity, but solely as Cap Trustee with respect to the Cap Trust relating to First Franklin Mortgage Loan Trust 2006-FF8, Asset Backed Certificates, Series 2006-FF8, and all Confirmations entered into between these parties under this Master Agreement

5.     The 1992 ISDA Master Agreement, the Schedule to the Master Agreement, each dated April 24, 2001, between Lehman Brothers Financial Products Inc. and Harbourview CDO III, Limited, the confirmation thereunder dated April 24, 2001, identified as "INTEREST RATE HEDGE TRANSACTION" and the confirmation thereunder dated April 24, 2001, identified as "CAP TRANSACTION"

**Exhibit B**

| Trust | Unpaid Amount Due from Trust to LBSF or LBFP | Cure Payment | Net Payment due to LBSF or LBFP |
|---|---|---|---|
| IMPAC Secured Assets Trust 2006-3 | $89,292,857.50 | $14,245,202.34 | $75,047,655.16 |
| IMPAC Secured Assets Trust 2007-3 | $21,893,023.26 | $3,961,023.38 | $17,931,999.88 |
| First Franklin Mortgage Loan Trust 2006-FF8 | $7,173,160.03[1] | $0 | $7,173,160.03 |
| Harbourview CDO III Limited | $9,279,262.19 | $1,566,290.64 | $7,712,971.55 |

---

[1] Represents the amount of collateral that will be returned to LBSF upon the assumption and assignment of the Swap Agreement.