WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    08-13555 (JMP)
                                        :
                        Debtors.        :    (Jointly Administered)
-----------------------------------------------------------------x
```

**CERTIFICATE OF NO OBJECTION**
**UNDER 28 U.S.C. § 1746 REGARDING DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105 AND 364 OF THE BANKRUPTCY CODE FOR AUTHORIZATION**
**TO GRANT FIRST PRIORITY LIENS IN COLLATERAL POSTED IN**
**CONNECTION WITH FOREIGN EXCHANGE HEDGING TRANSACTIONS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Pursuant to 28 U.S.C. § 1746, and in accordance with this Court's case

management procedures set forth in the Second Amended Order Pursuant to Section 105(a) of

the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and

Case Management Procedures [Docket No. 9635], dated, June 17, 2010 (the "Second Amended

Case Management Order"), the undersigned hereby certifies as follows:

1. On November 3, 2010, Lehman Brothers Holdings Inc. and its affiliated

debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together,

the "Debtors"), filed a motion pursuant to sections 105 and 364 of title 11 of the United States

Code (the "Bankruptcy Code"), for authorization to grant first priority liens in cash, securities,

and other collateral posted in connection with foreign exchange hedging transactions [Docket No. 12529] (the "Motion").

2.       The Debtors have served notice of this Motion on (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors appointed in these cases (the "Creditors' Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the Second Amended Case Management Order.

3.       In accordance with the Second Amended Case Management Order, November 10, 2010 at 4:00 p.m. (Prevailing Eastern Time) was established as the deadline for parties to object or file a response to the Motion (the "Objection Deadline").  The Second Amended Case Management Order provides that pleadings may be granted without a hearing, provided that no objections have been filed prior to the Objection Deadline and the attorney for the entity who filed the pleading complies with the relevant procedural and notice requirements.

4.       No objections or other responsive pleadings to the Motion have been filed with the Court on the docket of the above-referenced cases in accordance with the procedures set forth in the Second Amended Case Management Order, nor has any objection or other responsive pleading been served on Debtors' counsel.

5.       Accordingly, for the reasons set forth in the Motion, the Debtors respectfully request that the proposed Order, annexed hereto as Exhibit A be entered in accordance with the procedures described in the Second Amended Case Management Order.  A blackline of the Proposed Order reflecting the changes made to the order submitted with the

Motion is annexed hereto as <u>Exhibit B</u> and reflects the incorporation of certain comments

provided to the Debtors by the Creditors' Committee.

I declare that the foregoing is true and correct.

Dated:  November 15, 2010
New York, New York

/s/ Lori R. Fife
Lori R. Fife

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

**(Proposed Order)**

US_ACTIVE:\43558008\01\58399.0003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                   :

**In re**                               :        **Chapter 11 Case No.**

                                   :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :       **08-13555 (JMP)**

                                   :

                   **Debtors.**         :        **(Jointly Administered)**

                                   :

                                   :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105 AND 364**
**OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS**
**TO GRANT FIRST PRIORITY LIENS IN COLLATERAL POSTED**
**IN CONNECTION WITH FOREIGN EXCHANGE HEDGING TRANSACTIONS**

Upon the motion (the "<u>Motion</u>"),[1] of Lehman Brothers Holdings Inc. ("<u>LBHI</u>")

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-

possession (collectively, the "<u>Debtors</u>" and, together with their non-debtor affiliates, "<u>Lehman</u>"),

pursuant to sections 105 and 364 of the Bankruptcy Code, for authorization to grant first priority

liens in cash, securities, and other collateral (the "<u>Collateral</u>") posted in connection with foreign

exchange hedging transactions (the "<u>FX Hedging Transactions</u>"), all as more fully described in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper

notice of the Motion having been provided to (i) the United States Trustee for the Southern

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

District of New York; (ii) the attorneys for the Official Creditors' Committee (the "Creditors'

Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; and (vi) all other parties

entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635]; and it appearing that no other or further notice need be provided; and a

hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates and creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors, subject to the terms of the agreements documenting

the applicable FX Hedging Transactions, are hereby authorized to enter into FX Hedging

Transactions and to post cash, securities or other collateral ("Collateral") for the benefit of

hedging counterparties in connection with Hedging Transactions; and it is further

ORDERED that the Debtors are authorized to grant hedging counterparties to any

FX Hedging Transaction first priority liens in the collateral posted by the applicable Debtor in

respect of any such FX Hedging Transaction; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all

instruments and documents and take such other actions as may be necessary or appropriate to

implement and effectuate the FX Hedging Transactions in the manner set forth  herein, including

but not limited to the delivery of the Collateral and granting of first priority liens on the Collateral; and it is further

ORDERED that the Debtor counterparty to an FX Hedging Transaction will use only is own assets to post Collateral and shall not be liable for the obligations of the FX Hedging Transactions of its affiliate Debtors; and it is further

ORDERED that the Debtors shall not post Collateral that exceeds industry standards as adjusted for a debtor in possession; and it is further

ORDERED that:

- All proposed FX Hedging Transactions will be reviewed by an approval committee (the "FX Hedging Transactions Committee") established by the Debtors, consisting of certain of the Debtors' representatives and advisors, as selected by the Debtors. The financial advisors to the Creditors' Committee (the "Advisors") will receive notice of, and may attend, all meetings of the FX Hedging Transactions Committee (each an "FX Hedging Transactions Meeting") and will have access to the personnel of the Debtors involved with the proposed FX Hedging Transactions;

- With respect to all proposed FX Hedging Transactions, the Debtors will provide, as soon as practicable, but not later than two (2) Business Days[2] prior to any FX Hedging Transactions Meeting regarding the approval of an FX Hedging Transaction, (i) e-mail notification to the Advisors of such meeting, by way of notification to John Siris at FTI Consulting, Inc. (john.siris@fticonsulting.com) and Kinga Elo at Houlihan, Lokey, Howard & Zukin Capital, Inc. (kelo@hl.com) (or such other parties as mutually agreed by the Creditors' Committee and the Debtors), which e-mail must contain the material terms of the proposed FX Hedging Transaction and (ii) an information package (the "Information Package") that will consist of (a) a list of the applicable Foreign Assets with mark-to-market values to be hedged and (b) appropriate and customary risk measurement information calculated using standard market conventions;

---

[2] A "Business Day" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

3

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is greater than $75,000,000 only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before such FX Hedging Transaction is scheduled to be executed or within two (2) Business Days after an FX Hedging Transactions Meeting during which such FX Hedging Transaction was approved or (ii) upon Court approval;

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is $75,000,000 or less only (i) if (a) the Advisors receive email notification of the FX Hedging Transaction, which will include the material terms of the approved FX Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the FX Hedging Transactions Meeting during which the proposed FX Hedging Transaction was discussed and approved, and (c) the Advisors do not object within three (3) Business Days, of and after receipt of e-mail notification of the FX Hedging Transactions Committee's approval of such FX Hedging Transaction or (ii) upon Court approval;

- After the approval of a proposed FX Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if a Debtor's original strategy is changed or determined to be inappropriate with respect to a particular FX Hedging Transaction, the Advisors may commence a review of such FX Hedging Transaction at the FX Hedging Transactions Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of FX Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such FX Hedging Transactions, and (iii) an estimate of the mark-to-market value of the corresponding Foreign Assets at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to this protocol and may seek to amend such upon Court approval; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the

Debtors, including, but not limited to, the right to seek further, other, or different relief regarding

the Foreign Assets; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order and/or

the terms of any assumption and assignment consummated in the manner set forth herein.


Dated:  November __, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

**(Blackline of Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                        :

In re                       :      **Chapter 11 Case No.**

                        :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,  :      **08-13555 (JMP)**

                        :

            **Debtors.**      :      **(Jointly Administered)**

                        :

                        :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105 AND 364**
**OF THE BANKRUPTCY CODE AUTHORIZING THE DEBTORS**
**TO GRANT FIRST PRIORITY LIENS IN COLLATERAL POSTED**
**IN CONNECTION WITH FOREIGN EXCHANGE HEDGING TRANSACTIONS**

Upon the motion (the "Motion"),[1] of Lehman Brothers Holdings Inc. ("LBHI")

and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-

possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman"),

pursuant to sections 105 and 364 of the Bankruptcy Code, for authorization to grant first priority

liens in cash, securities, and other collateral (the "Collateral") posted in connection with foreign

exchange hedging transactions (the "FX Hedging Transactions"), all as more fully described in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and due and proper

notice of the Motion having been provided to (i) the United States Trustee for the Southern

District of New York; (ii) the attorneys for the Official Creditors' Committee (the "Creditors'

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

Committee"); (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]; and it appearing that no other or further notice need be provided; and a hearing (the "Hearing") having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that the Debtors, subject to the terms of the agreements documenting the applicable FX Hedging Transactions, are hereby authorized to enter into FX Hedging Transactions and to post cash, securities or other collateral ("Collateral") for the benefit of hedging counterparties in connection with Hedging Transactions; and it is further

ORDERED that the Debtors are authorized to grant hedging counterparties to any FX Hedging Transaction first priority liens in the collateral posted by the applicable Debtor in respect of any such FX Hedging Transaction; and it is further

ORDERED that the Debtors are hereby authorized to execute and deliver all instruments and documents and take such other actions as may be necessary or appropriate to implement and effectuate the FX Hedging Transactions in the manner set forth  herein, including but not limited to the delivery of the Collateral and granting of first priority liens on the Collateral; and it is further

2

ORDERED that the Debtor counterparty to an FX Hedging Transaction will use only is own assets to post Collateral and shall not be liable for the obligations of the FX Hedging Transactions of its affiliate Debtors; and it is further

ORDERED that the Debtors shall not post Collateral that exceeds industry standards as adjusted for a debtor in possession; and it is further

ORDERED that:

- All proposed FX Hedging Transactions will be reviewed by an approval committee (the "<u>FX Hedging Transactions Committee</u>") established by the Debtors, consisting of certain of the Debtors' representatives and advisors, as selected by the Debtors.  The financial advisors to the Creditors' Committee (the "<u>Advisors</u>") will receive notice of, and may attend, all meetings of the FX Hedging Transactions Committee (each an "<u>FX Hedging Transactions Meeting</u>") and will have access to the personnel of the Debtors involved with the proposed FX Hedging Transactions;

- With respect to all proposed FX Hedging Transactions, the Debtors will provide, as soon as practicable, but not later than ~~three  (3) Business  Days~~[2]two (2) Business Days[2] prior to any FX Hedging Transactions Meeting regarding the approval of an FX Hedging Transaction, (i) e-mail notification to the Advisors of such meeting, by way of notification to John Siris at FTI Consulting, Inc. (john.siris@fticonsulting.com) and Kinga Elo at Houlihan, Lokey, Howard & Zukin Capital, Inc. (kelo@hl.com) (or such other parties as mutually agreed by the Creditors' Committee and the Debtors), which e-mail must contain the material terms of the proposed FX Hedging Transaction and (ii) an information package (the "<u>Information Package</u>") that will consist of (a) a list of the applicable Foreign Assets with mark-to-market values to be hedged and (b) appropriate and customary risk measurement information calculated using standard market conventions;

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is greater than $~~100,000,000~~75,000,000 only if (i) the Creditors' Committee, a subcommittee, or other designee thereof consents one (1) Business Day before such FX Hedging Transaction is scheduled to

---

[2] A "<u>Business Day</u>" means any calendar day other than (i) a Saturday, Sunday or "legal holiday" as defined in Federal Rule of Bankruptcy Procedure 9006(a), or (ii) a day on which banks in New York are permitted to be closed.

be executed or within two (2) Business Days after an FX Hedging Transactions Meeting during which such FX Hedging Transaction was approved or (ii) upon Court approval;

- The Debtors may enter into a proposed FX Hedging Transaction for which the mark-to-market value of the Foreign Asset to be hedged is $~~100,000,000~~75,000,000 or less only (i) if (a) the Advisors receive email notification of the FX Hedging Transaction, which will include the material terms of the approved FX Hedging Transaction, (b) at least one (1) member of the Advisors attended the portion of the FX Hedging Transactions Meeting during which the proposed FX Hedging Transaction was discussed and approved, and (c) the Advisors do not object within ~~six~~three ~~(6) business hours, herein defined as the hours between 9:00 a.m. and 5:00 p.m. (Prevailing Eastern Time) on~~3) Business Days, of and after receipt of e-mail notification of the FX Hedging Transactions Committee's approval of such FX Hedging Transaction or (ii) upon Court approval;

- After the approval of a proposed FX Hedging Transaction, any further maintenance of such hedge by the Debtors will not require further approval by the Creditors' Committee or any designated subcommittee thereof or other designee; *provided*, *however*, if a Debtor's original strategy is changed or determined to be inappropriate with respect to a particular FX Hedging Transaction, the Advisors may commence a review of such FX Hedging Transaction at the FX Hedging Transactions Meeting occurring on the next Business Day;

- The Debtors will provide updates regarding (i) the number of FX Hedging Transactions that have been executed, (ii) the value of the collateral posted in connection with such FX Hedging Transactions, and (iii) an estimate of the mark-to-market value of the corresponding Foreign Assets at least once every three (3) months either during (a) the Debtors' periodic case conferences to the Court, (b) presentations made to the Creditors' Committee that are made public, or (c) other presentations made available to all parties in interest; and

- The Debtors and the Creditors' Committee reserve all rights and remedies with respect to this protocol and may seek to amend such upon Court approval; and it is further

ORDERED that entry of this Order is without prejudice to the rights of the Debtors, including, but not limited to, the right to seek further, other, or different relief regarding the Foreign Assets; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order and/or

the terms of any assumption and assignment consummated in the manner set forth herein.


Dated:  November __, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE