309 101st Street
Brooklyn, New York 11209

November 08, 2010

Honorable James M. Peck
One Bowling Green
Courtroom 601
New York, NY 10004

Weil Gotshal & Manges LLP
767 5th Avenue
Attn: Shai Waisman, Esq.
New York, NY 10153

US Trustee for the Southern District of NY
33 Whitehall Street
21st Floor
Attn: Andy Velez-Rivera, Paul Schwartzberg, Brian Masumoto, Linda Riffkin, Tracy Hope Davis, Esq's
New York, N.Y. 1004

Milbank, Tweet, Hadley & McCloy LLP
Attn: Dennis F. Dunne, Dennis O'Donnell, Evan Fleck, Esq.'s
1 Chase Manhattan Plaza, NY, NY 10005

Re: Claim Number: 10630

To whom it may concern:

Attached please find:

1) Copy of Claim to be disallowed, claim number 10630
2) Supporting Documentation (please note we were advised to state the reason for our original claim as "reclaimation", not sure what that means, but attached is all that I feel that Lehman owes me, not as a debt, but for services rendered.


1) the remainder of negotiated severance from 09/19/08 to 05/03/09. 33 weeks at $3,423.00

2) Total stock awarded as part of my Salary, 383 shares, market value at time of lay off: $160,000.

3) Severance was renegotiated via Beranbaum, Menkien, Ben-Asher & Berman LLP to include medical coverage at age 55. at the time of this negotiation, the equivalent medical coverage if paid privately would be approximately $800.00, x 10 years, not taking in the high cost of ever increasing medical coverage, that I now have to pay for out of pocket. TBD.

I feel that the above costs are not a bad debt, but should be considered as part of Lehman obligation to me for almost 30 years of service. Nothing mentioned was up for consideration, they are givens,

Thank you,

Julianne Salvatore

@ 2:10 pm

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                          :      Chapter 11 Case No.
LEHMAN BROTHERS HOLDINGS INC., *et al.*,       :      08-13555 (JMP)
                Debtors.                       :      (Jointly Administered)
                                               :
------------------------------------------------------------x

LBH OMNI58 10-13-2010 (MERGE2,TXNUM2) 4000057314 MAIL ID *** 0035611655 *** BSIUSE: 192

SALVATORE, JULIANNE
309 101ST STREET
BROOKLYN, NY 11209-8203

Reclamation

**THIS IS A NOTICE REGARDING YOUR CLAIM(S). YOU MUST READ IT
AND TAKE ACTION IF YOU DISAGREE WITH THE OBJECTION.**

**IF YOU HAVE ANY QUESTIONS ABOUT THIS NOTICE OR THE OBJECTION,
PLEASE CONTACT DEBTORS' COUNSEL, ERIK ENCARNACION, ESQ., AT 214-746-7700.**

**NOTICE OF HEARING ON DEBTORS' FIFTY-EIGHTH
OMNIBUS OBJECTION TO CLAIMS (NO SUPPORTING DOCUMENTATION CLAIMS)**

| CLAIM TO BE DISALLOWED & EXPUNGED | |
|---|---|
| **Creditor Name and Address:**<br>SALVATORE, JULIANNE<br>309 101ST STREET<br>BROOKLYN, NY 11209-8203 | **Claim Number:** 10630 |
| | **Date Filed:** 9/8/2009 |
| | **Debtor:** No Case |
| | **Classification and Amount:** UNSECURED: $ 776,889.00 |

PLEASE TAKE NOTICE that, on October 13, 2010, Lehman Brothers Holdings Inc. and certain of its affiliates (collectively, the "Debtors") filed their Fifty-Eighth Omnibus Objection to Claims (No Supporting Documentation Claims) (the "Objection") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").[1]

The Objection requests that the Bankruptcy Court expunge, reduce, reclassify, and/or disallow your claim listed above under CLAIM TO BE DISALLOWED & EXPUNGED on the ground that said claim violates the Bankruptcy Court's July 2, 2009 order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271], as it does not include supporting documentation or an explanation as to why such documentation is unavailable. **Any claim that the Bankruptcy Court expunges and disallows will be treated as if it had not been filed and you will not be entitled to any distribution on account thereof.**

If you do NOT oppose the disallowance, expungement, reduction or reclassification of your claim listed above under CLAIM TO BE DISALLOWED & EXPUNGED, then you do NOT need to file a written response to the Objection and you do NOT need to appear at the hearing.

If you DO oppose the disallowance, expungement, reduction or reclassification of your claim listed above under CLAIM TO BE DISALLOWED & EXPUNGED, then you MUST file with the Court and serve on the parties listed below a written response to the Objection that is received on or before 4:00 p.m. Prevailing Eastern Time on November 15, 2010 (the "Response Deadline").

---

[1] A list of the Debtors, along with the last four digits of each Debtor's federal tax identification number, is available on the Debtors' website at http://www.lehman-docket.com.

Lehman Brothers Inc.
15 Seventh Avenue
New York, NY 10019-6801

| | | |
|---|---|---|
| Pay Group: | BWS-BiWeekly Non Exempt Employ | Business Unit: IT |
| Pay Begin Date: | 09/07/2008 | Advice #: 4308065 |
| Pay End Date: | 09/20/2008 | Advice Date: 09/19/2008 |

Julianne Salvatore
309 101st Street
Brooklyn, NY 11209

MAIL    LBI BWS IT
27711    70HUDSONOG 4308065

Julianne Salvatore
309 101st Street
Brooklyn, NY 11209

| TAX DATA: | Federal | NY State |
|---|---|---|
| Marital Status: | Single | Single |
| Allowances: | 1 | 1 |
| Addl. Pct.: | | |
| Addl. Amt.: | | |

Employee ID: 10014761
Department: 27711-Network Data Implement
Location: 70 Hudson Street - 6th Floor
Pay Rate: $89,000.00 Annual
SSN: XXX-XX-1081

### HOURS AND EARNINGS

| Description | Begin Date | End Date | Rate | Current Hours | Current Earnings | YTD Hours | YTD Earnings |
|---|---|---|---|---|---|---|---|
| LB Spc Sal | | | 42.788461 | 80.00 | 3,423.08 | 760.00 | 32,519.26 |
| Reg Salary | | | | | 0.00 | 560.00 | 17,723.09 |
| O.T. @1.5 | | | | | 0.00 | 244.00 | 15,618.55 |
| Retro OT | | | | | 0.00 | | 91.79 |
| RetroSalCh | | | | | 0.00 | | 230.77 |
| Bonus 2007 | | | | | 0.00 | | 2,884.00 |
| PTO Offset | | | | | 0.00 | 48.00- | 2,046.16 |
| Sick Time | | | | | 0.00 | 8.00 | 342.31 |
| VacationTm | | | | | 0.00 | 40.00 | 1,703.85 |
| 07 RSU Bon | | | | | 0.00 | | 2,116.00 |
| LBNoticePy | | | | | 0.00 | 160.00 | 14,719.23 |
| **Total:** | | | | | **3,423.08** | | **83,786.69** |

### TAXES

| Description | Current | YTD |
|---|---|---|
| Federal Tax | 636.29 | 16,544.22 |
| Medicare Tax | 47.99 | 1,185.87 |
| Social Security Tax | 205.18 | 5,070.61 |
| NJ Vol Dis/EE | 0.00 | 66.01 |
| NJ Unempl EE | 0.00 | 105.95 |
| NJ NJ HCSF | 0.00 | 0.00 |
| NJ NJ WDPF | 0.00 | 6.93 |
| NJ NJ SWAF | 0.00 | 4.85 |
| NJ Tax | 150.39 | 3,940.60 |
| NY Tax | 40.01 | 910.99 |
| NY NEW YORK Tax | 113.18 | 2,795.24 |
| **Total:** | **1,193.04** | **30,631.27** |

### BEFORE TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Pre-Tax Medical | 26.50 | 477.00 |
| Pre-Tax Dental | 4.00 | 72.00 |
| FSA Healthcare | 83.33 | 1,499.99 |
| TDSP 401(k) | 0.00 | 2,306.62 |
| **Total:** | **113.83** | **4,355.61** |

### AFTER TAX DEDUCTIONS

| Description | Current | YTD |
|---|---|---|
| Credit Union | 1,550.00 | 28,709.21 |
| Voluntary AD&D Ins | 0.00 | 0.45 |
| Net DDPS | 0.00 | 966.05 |
| Supple LTD Ins | 0.00 | 55.29 |
| **Total:** | **1,550.00** | **29,731.00** |

### TAXABLE BENEFITS

| Description | Current | YTD |
|---|---|---|
| Basic Life Ins-MetLif* | 0.00 | 46.26 |
| * Taxable | 0.00 | 0.00 |

*09.19.08 - 05.23.09*

| | TOTAL GROSS | FED TAXABLE GROSS | TOTAL TAXES | TOTAL DEDUCTIONS | NET PAY |
|---|---|---|---|---|---|
| Current: | 3,423.08 | 3,309.25 | 1,193.04 | 1,663.83 | 566.21 |
| YTD: | 83,786.69 | 79,477.34 | 30,631.27 | 34,086.61 | 19,068.81 |

MESSAGE:

### NET PAY DISTRIBUTION
Advice #000000004308065    566.21

# LEHMAN BROTHERS

Lehman Brothers Inc.
745 Seventh Avenue
New York, NY 10019-6801

Date: 09/19/2008

Advice No. 4308065

**Deposit Amount: $566.21**

To The
Account(s) Of

**JULIANNE SALVATORE**
309 101st Street
Brooklyn, NY 11209

### DIRECT DEPOSIT DISTRIBUTION

| Account Type | Account Number | Deposit Amount |
|---|---|---|
| Savings | 61941103 | $566.21 |
| **Total:** | | **$566.21** |

# NON-NEGOTIABLE

## Personal Award Summary

Americas|Europe|UK|Asia|Canada|Japan|South America

Equity Award Program · RSU Vesting Schedule · Option Exercise Schedule · FAQ · Personal Award S

### Equity Award Summary for Julianne Salvatore

#### RESTRICTED STOCK UNITS ("RSUs")

| Grant Date | Description | Grant Price | Value of the Equity Award at Grant | Shares Granted | Dividend Reinvestment Earned* | Total Outstanding | Shares Vested | Shares Issue |
|---|---|---|---|---|---|---|---|---|
| Nov 30, 2005 | Principal | $94.5000 | $1,219 | 12.90 | 0.02 | 12.92 | 0.00 | 0 |
| Nov 30, 2005 | Discount | $94.5000 | $406 | 4.30 | 0.01 | 4.31 | 0.00 | 0 |
| Dec 09, 2004 | Principal | $64.3500 | $1,219 | 18.94 | 0.18 | 19.12 | 0.00 | 0 |
| Dec 09, 2004 | Discount | $64.3500 | $406 | 6.31 | 0.05 | 6.36 | 0.00 | 0 |
| Dec 10, 2003 | Principal | $53.5400 | $1,151 | 21.50 | 0.39 | 21.89 | 21.89 | 0 |
| Dec 10, 2003 | Discount | $53.5400 | $384 | 7.17 | 0.08 | 7.25 | 0.00 | 0 |
| Dec 03, 2001 | Principal | $47.5500 | $192 | 4.03 | 0.17 | 4.20 | 4.20 | 0 |
| Dec 03, 2001 | Discount | $47.5500 | $64 | 1.34 | 0.00 | 1.34 | 0.00 | 0 |
| Sep 20, 2001 | Principal | $34.9800 | $654 | 18.71 | 0.58 | 19.29 | 19.29 | 0 |
| Sep 20, 2001 | Discount | $34.9800 | $218 | 6.23 | 0.06 | 6.29 | 0.00 | 0 |
| Nov 30, 2000 | Principal | $39.6500 | $1,396 | 35.20 | 1.44 | 0.00 | 0.00 | 36 |
| Nov 30, 2000 | Discount | $39.6500 | $349 | 8.80 | 0.09 | 0.00 | 0.00 | 8 |
| Nov 30, 1999 | Principal | $30.5500 | $566 | 18.54 | 0.71 | 0.00 | 0.00 | 19 |
| Nov 30, 1999 | Discount | $30.5500 | $142 | 4.64 | 0.01 | 0.00 | 0.00 | 4 |
| Dec 14, 1998 | Principal | $16.3500 | $199 | 12.16 | 0.44 | 0.00 | 0.00 | 12 |
| Dec 14, 1998 | Discount | $16.3500 | $50 | 3.04 | 0.00 | 0.00 | 0.00 | 3 |
| Nov 30, 1998 | Principal | $13.7000 | $317 | 23.16 | 0.80 | 0.00 | 0.00 | 23 |
| Nov 30, 1998 | Discount | $13.7000 | $79 | 5.78 | 0.00 | 0.00 | 0.00 | 5 |
| Nov 30, 1997 | Discount | $19.4250 | $117 | 6.00 | 0.00 | 0.00 | 0.00 | 6 |
| Nov 30, 1997 | Principal | $19.4250 | $493 | 25.40 | 0.86 | 0.00 | 0.00 | 26 |
| Jul 01, 1996 | Principal | $9.7500 | $449 | 46.00 | 1.63 | 0.00 | 0.00 | 47 |
| Jul 01, 1996 | Discount | $9.7500 | $117 | 12.00 | 0.42 | 0.00 | 0.00 | 12 |
| Jul 01, 1995 | Principal | $7.9000 | $442 | 56.00 | 2.32 | 0.00 | 0.00 | 58 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Jul 01, 1995 | Discount | $7.9000 | | $111 | 14.00 | 0.60 | 0.00 | 0.00 14 |
| Jul 01, 1994 | Principal | $6.0000 | | $600 | 100.00 | 3.50 | 0.00 | 0.00 103 |
| Total | | | | $11,340 | 472.15 | 14.36 | 103.06 | 45.47 383 |

### TOTAL EQUITY

The total outstanding number indicated above reflects the changes in your equity position (e.g., dividend reinvestment or stoc that may have occurred to date.

\* Until your outstanding shares convert to common stock, if dividends are declared, you will receive dividend equivalents. You equivalents will be automatically reinvested as additional shares. The additional shares you receive as dividend equivalents a the same conditions as the underlying shares to which they relate.

\*\* The market value is calculated by multiplying the number of shares outstanding by the indicated stock price. Please note th market price is based on a delayed feed from Financial Times. (6:00 PM EST on 03 April 2006)

Refer to the Award Documents page to obtain copies of the plan documents that govern your 2001 - 2005 awards. To obtain documents related to awards granted prior to 2001, please contact the Compensation Department at 212-526-8346 or at Compensation@lehman.com.

*The Equity Award Program section of LehmanLive describes significant features of the Lehman Brothers Equity Award Program for 2005 ar years. This summary is for information purposes only and it is not intended to replace the award agreement or other official plan document any conflict between the plan documents (including, but not limited to, the Restricted Stock Award Agreement, the Employee Incentive Plan Employee Incentive Plan Prospectus) and the information in the Equity Award Program section of LehmanLive, the plan documents will gov*

Berenbaum Menken Ben-Asher & Bierman LLP
80 Pine Street - 32nd floor
New York, NY 10005

Ms. Julianne Salvatore
309 101st Street
Brooklyn NY 11209

May 14, 2008

In Reference To:   Salvatore and Lehman Bros.
Invoice    991253

### Professional Services

|  | Hrs/Rate | Amount |
|---|---|---|
| 4/25/2008 Telephone call with opposing Attorney; telephone call with client | 0.40<br>200.00/hr | 80.00 |
| 4/29/2008 Telephone call with opposing Attorney | 0.20<br>200.00/hr | 40.00 |
| 4/30/2008 Telephone calls with opposing Attorney; telephone call with client re settlement | 0.40<br>200.00/hr | 80.00 |
| 5/1/2008 Telephone call with client; draft email to opposing atty re health benefits | 0.50<br>200.00/hr | 100.00 |
| 5/6/2008 Phone call from client | 0.20<br>200.00/hr | 40.00 |
| 5/7/2008 Draft letter to counsel with faxed agreement | 0.10<br>200.00/hr | 20.00 |
| 5/14/2008 Draft letter to counsel with original agreement attached | 0.10<br>200.00/hr | 20.00 |
| For professional services rendered | 1.90 | $380.00 |
| Previous balance |  | $1,100.00 |
| Balance due |  | $1,480.00 |

March 14, 2008

Julie Salvatore
309 101st Street
Brooklyn, NY 11209

RE: Salvatore/Lehman Bros.

Dear Julie:

As we discussed, I am writing to set out the terms under which our firm can represent you in connection with negotiating a settlement agreement arising out of your employment with Lehman Bros. ("employer").

If you have any questions at all, feel free to call me. If the terms of the retainer are agreeable to you, please date and sign it and fax/return it to me, along with your check for $1,400.

1. **Legal Services To Be Provided**. You agree that Beranbaum Menken Ben-Asher & Bierman LLP ("we" or "the Firm") will represent you in an effort to engage in settlement negotiations with your former employer and obtain a favorable settlement of your potential legal claims against them.

Our representation of you is limited to contacting your former employer and attempting to negotiate a settlement of your interests. The legal services we will provide include all consultations, negotiations, meetings with you or with adversaries, legal research and factual investigation, drafting of correspondence, telephone conversations, preparation for meetings, and other related work, to properly represent you in this matter.

2. **No Duty to Sue**. Under this agreement, we will have no duty to institute a lawsuit, or other proceeding on your behalf. We will only represent you and protect your legal rights by attempting to negotiate a prompt settlement of your interests. If an agreement with your former employer regarding the terms of a negotiated settlement of your interests is not reached, then this agreement will be deemed terminated.

If you then want us to represent you in any legal proceedings regarding your claims, by filing legal papers with an administrative agency or by bringing a lawsuit in court, we will discuss the merits and costs of proceeding on those claims. If we then agree to represent you in such a lawsuit or administrative proceeding, an additional retainer agreement would be agreed to and signed, setting the terms of and fees for that representation.

3. **Legal Fees**.

a) <u>Reduced hourly fees</u>: There is a reduced hourly fee for all legal work performed under this retainer agreement. Although the normal fee for my services is $425 per hour, you have chosen to have us represent you on a modified contingency arrangement, which includes a reduced hourly fee and a contingent fee, as described below.

The reduced hourly fee for my services, and the other partners and associates in the firm, is $200 per hour, and you agree to pay this fee. Please note that payment of these hourly fees is <u>not</u> contingent upon the outcome of your case. I will deduct these hourly fees from the advance retainer fee of $1,400 as I work on your case, and I will provide you with records of the time spent on your case and the deductions made from the retainer fee.

b) <u>Additional Contingent Legal Fees</u>. In addition, you agree that in addition to the above legal fees, in the event that we recover money or benefits for you, you will pay an additional contingent legal fee. The contingent fee will be <u>twenty per cent</u> of the "recovery" over and above what has been offered to you by your employer, if anything. The "recovery" is the sum recovered and paid to you by your former employer, including gross back or future pay, severance pay, pension contributions, insurance benefits and premiums, bonuses, damages for pain, suffering or emotional distress, other compensatory or punitive damages, the increased value of a pension, and any other payments or damages, in cash or in kind. The "recovery" is calculated based on gross, pre-tax settlement dollars.

4. <u>Costs and disbursements.</u> In addition to the contingent fees described above, you agree to reimburse to us our out-of-pocket costs and disbursements in your case, which may include investigator fees, expert fees, messenger services, expedited mail service, and any other necessary expenses. Of course, we will consult with you and obtain your consent before involving an investigator or expert in your case. I will either deduct these costs and disbursements from the advance retainer fee or bill you separately for these expenses. I do not expect that expenses in this case will be greater than $100.

5. <u>Commencement of Work and Retainer fee.</u> I will begin work on your case when I receive a signed copy of this retainer agreement, along with a check for advance fees in the amount of $1,400. I will deduct the reduced hourly fees under this agreement from the advance retainer fee, and may also deduct the costs and disbursements in your case. If this advance retainer is exhausted, I may ask you to supplement it with an additional advance, and you agree to promptly do that.

Of course, if at the end of our representation of you, there are monies in your trust account with us which are not due for fees or costs, we will return those funds to you.

6. <u>Cooperation/Withdrawal</u>. You agree that you will cooperate fully with me in my handling of your case and truthfully provide all information known or available to you, which may aid me in representing you, as I request it.

You agree that we may withdraw from representing you if you do not cooperate with my policy in handling your case, if we cannot agree on to how to handle your case, or if you do not timely pay the fees, costs or disbursements for your case. Of course, you may terminate our

representation of you at any time.

7. **Our obligations to you:** I will provide conscientious, competent and diligent services for you. At all times I will seek to achieve solutions that are fair and reasonable for you. I will keep you informed at all times as to the status of your case and as to the courses of action which I am taking and recommending. Of course, I cannot and will not settle your case without thoroughly discussing with you all offers made by your former employer, the options you have regarding settlement and strategy, and the advantages and disadvantages of those options.

8. **No guarantee:** Because of the uncertainty of legal proceedings, the interpretation of and changes in the law and many unknown factors, attorneys cannot and do not warrant, predict or guarantee results, or the final outcome of any matter.

9. **Entire Agreement.** This is the entire agreement between us. It may only be modified by a writing which we both sign. By signing this letter, you indicate that you have read it, fully understand it, and agree to its terms. Your signature also indicates that I have answered all of your questions and fully explained this agreement to your satisfaction.

If the terms of this agreement are fully satisfactory to you, please date and sign it and return it to me, along with your check in the amount of $1,400.

I look forward to working with you. If you have any questions at all, or if you are not comfortable with anything in this agreement, feel free to call me.

Sincerely yours,

Bruce E. Menken

I have read the above retainer agreement, and understand and agree to it.

Dated: March 14, 2008.

_____
Julie Salvatore

# LEHMAN BROTHERS

DEBBIE COHEN
SENIOR VICE PRESIDENT

March 11, 2008
*(revised April 30, 2008)*

Julianne Salvatore
309 101st Street
Brooklyn, NY 11209

Dear Julianne:

This is an agreement and release concerning your separation from employment by Lehman Brothers. If you sign and comply with this agreement, you will receive the payments and benefits discussed below.

**Effective Dates, Payments and Benefits**

1. Today will be the last day that you are expected to report to work.

2. Provided you sign and comply with this agreement, you are eligible to continue to receive your base salary and benefits coverage ("salary continuation") through the earlier of May 23, 2009 or the date on which you become actively employed with another firm (the "separation date"), as follows:

   a. You will continue to receive salary continuation through May 10, 2008 (the "notice period").

   b. Immediately after the notice period and in lieu of a lump sum separation payment consisting of 52 weeks of severance pay and two weeks of unused vacation pay, you will continue to receive salary continuation through May 23, 2009.

   Salary continuation will be paid on a biweekly basis at your current biweekly base salary rate, in accordance with the Firm's regular payroll practices. While you are on salary continuation, you will be eligible to continue your benefits coverage under the terms of our plans. All payments will be subject to withholding, payroll taxes and other applicable deductions.

3. You will receive a special separation payment in the amount of $3,000, less withholding, payroll taxes and any other applicable deductions, payable within 4 weeks of your separation date.

4. Lehman Brothers has retained Lee Hecht Harrison to provide you with outplacement counseling services. These services are designed to assist you with counseling on resume writing, interviewing skills, networking techniques, and a job search campaign. We encourage you to take advantage of these services in order to ensure a smooth career transition. To sign up, please call Sahsa Hohri at (866) 949-3325

5. You and your covered dependents, pursuant to the COBRA law, may be eligible to continue health insurance coverage for up to 18 months from your separation date, at your own expense. You may also convert your basic and supplemental life insurances to individual policies at that time at your own expense. Your right to continue or convert coverage (including COBRA coverage) after your separation date will be governed by the terms of our plans.

6. You will be eligible to apply for the Retiree Healthcare Program as of May 2, 2013. Please contact Lehman's HR Services Center at (212) 526-2363 to enroll in this program. In accordance with the provisions of Lehman's Medical Plans, should you become eligible for another employer-sponsored



LEHMAN BROTHERS INC.
1301 AVENUE OF THE AMERICAS, NEW YORK, NY 10019
(212) 320-6204

KL3 2655336.1

Julianne Salvatore
page 2

group medical plan, you must temporarily defer your participation in the Retiree Healthcare Program. This deferment will continue until such time as you are no longer eligible for another employer-sponsored group medical plan. At that time, you may be reinstated into the Retiree Healthcare Program.

7. Your rights to benefits under any employee benefits plans will be determined in accordance with the terms of such plans. Our employee benefits plans may be modified or terminated at any time.

8. Should you become employed by another firm as an employee, consultant or independent contractor at any time while you are on salary continuation, you are obligated to inform the Firm so that you can be terminated from the Firm's payroll at that time. This date will become your separation date for purposes of this agreement. As of this separation date, your salary and benefits coverage continuation will end. Provided you have signed and complied with this agreement, you will receive a lump sum payment representing the remainder of the payments described in paragraph 2, plus the payment described in paragraph 3, payable within 4 weeks of your separation date.

9. Should you be rehired by Lehman or any of its subsidiaries or affiliates as an employee, consultant or independent contractor at any time through your separation date you will no longer be eligible to receive the remainder of the payments described in paragraph 2 and the full payment described in paragraph 3.

9. As you are aware, for certain of your outstanding and unvested restricted stock unit awards ('RSUs') granted to you in connection with the Lehman Brothers Equity Award Program, you are expressly required to execute a release agreement as a condition of 'involuntary termination without cause' treatment under those awards. If you sign and comply with this separation agreement, you will satisfy the release requirement applicable to such awards.

**Complete Release**

You agree to forever release Lehman Brothers Inc., any of its affiliated companies, past and present parents, subsidiaries, divisions and present and former employees, officers, directors, successors and assigns from all claims you may now have based on your employment with any Lehman affiliate or the separation of that employment, to the maximum extent permitted by law. This includes a release, to the maximum extent permitted by law, of any rights or claims you may have under: the Age Discrimination Employment Act, which generally prohibits age discrimination in employment; Title VII of the Civil Rights Act of 1964, which generally prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act, which generally prohibits paying men and women unequal pay for equal work; the Americans with Disabilities Act, which generally prohibits discrimination on the basis of disability; the Employee Retirement Income Security Act of 1974, which governs the provision of pension and welfare benefits; the Conscientious Employee Protection Act, which generally prohibits retaliation due to an employee's whistle blowing-related activities; section 194 of the New York Labor Law, which generally prohibits paying men and women unequal pay for equal work; and all other federal, state or local laws prohibiting employment discrimination. This also includes a release by you of any claims for wrongful discharge, any compensation claims, or any other claims under any statute, rule, regulation, or under the common law. This release covers both claims that you know about and those you may not know about, including but not limited to the claims concerning your employment that were raised in the letter dated April 1, 2008 from John A. Beranbaum to Thomas A. Russo.

KL3 2655336.1

Julianne Salvatore
page 3

**Non-disclosure Provisions**

You agree not to disclose to anyone except your immediate family, accountant, and lawyer any information relating to the subject matter or existence of this agreement, including the dollar amount set forth, except to the extent required by legal process. Any disclosure to your immediate family, accountant or lawyer shall be made only upon their agreement not to disclose these terms to another person. Notwithstanding the foregoing, the parties may disclose to any and all persons, without limitation of any kind, the tax treatment and tax structure of the transaction and all materials of any kind (including opinions or other tax analyses) that are provided to either party relating to such tax treatment.

**Firm Property**

You agree that all proprietary or confidential information concerning Lehman, its business or customers which you learned while an employee is and shall remain the exclusive property of Lehman. You agree not to disclose any such information to others outside of Lehman or use such information for your own benefit, without Lehman's written consent. You further agree to return to Lehman any and all Lehman property that you may possess within one week after your last day of active employment.

**Registration**

If you are currently registered with Lehman, your registration will cease as of your last day of active employment. Once you join another firm, you should immediately contact the new firm's Registration Department to transfer your registrations, as the transfer does not occur automatically. Your new firm should have you complete a new U-4 form.

**Disparaging Remarks**

You agree to avoid making any disparaging remarks now, and at any time in the future, which could be detrimental in any way to Lehman or to individual directors or employees of Lehman, provided that this shall not restrict your ability to respond to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process.

**Future Cooperation**

You agree to reasonably cooperate with Lehman, its financial and legal advisors and/or government officials in connection with any business matters in which you were involved or any claims, investigations, administrative proceedings or lawsuits which relate to your Lehman employment. Related travel and accommodation expenses will be reimbursed in accordance with Lehman's standard policies.

**Arbitration**

Any controversy arising out of or relating to this agreement shall be submitted to arbitration pursuant to the constitution and rules of the Financial Industry Regulatory Authority (FINRA).

**Consultation with Attorney**

You have been advised to consult with an attorney concerning this agreement and acknowledge that you have had ample opportunity to do so before signing.

NLJ 8653330.1

Julianne Salvatore
page 4

**Employment Inquiries**

It is the Firm's policy to provide only limited information to non-Lehman individuals or organizations. The Work Number, the vendor retained to provide this information, will disclose dates of employment and your last job title. Requestors can access the verification system online at www.theworknumber.com or by calling 800-367-5690. Requestors will need your Social Security number in order to verify your employment information for a nominal fee. This shall not restrict Lehman's ability to provide complete information with respect to your employment when expected to do so under applicable regulatory requirements.

**Entire Agreement**

This agreement constitutes the entire agreement between the parties and cannot be altered except in writing signed by both parties. The terms of this agreement supersede any other oral or written arrangement between you and the Firm with respect to your employment or the separation of your employment by the Firm including but not limited to any entitlements you may have under the Firm's severance policy. Both parties acknowledge that no representations were made to induce execution of this agreement, which are not expressly contained in this agreement.

**Successorship; Controlling Law**

This agreement will be binding on Lehman and its successors and assigns and will also be binding on you, your heirs, administrators, executors and assigns. This agreement will be construed under the substantive law of the State of New Jersey, without regard to conflict of law principles.

**Separation Program**

You acknowledge that the separation payments and benefits recited in this agreement are being offered to you as part of a separation program (the "Program") offered to certain employees whose employment is being terminated. The Program is described in Appendix A, which is attached to this agreement. The provisions of Appendix A are incorporated into this agreement and considered a part of this agreement.

**Separation Booklet**

You acknowledge that you have received and reviewed a copy of the Firm's booklet, "Guide to Leaving Lehman Brothers."

**Period for Review and Consideration of Agreement**

You have been given a period of forty-five (45) days from the date of this letter to review and consider this agreement before signing it. You may use as much of this forty-five (45) day period as you wish prior to signing. If you have not signed and returned this agreement to Karen Coviello, Lehman Brothers Inc., 1301 Sixth Avenue, New York, NY 10019 by that date, you will not be eligible to receive the payments and benefits described in this agreement.

**Employee's Rights to Revoke Agreement**

You may revoke this agreement within seven (7) days of your signing it. Revocation can be made by delivering a written notice of revocation to Karen Coviello at the address noted above. If you revoke this agreement it shall not be effective or enforceable and you will not receive the payments described in this agreement.

KL3 2833336.1

Julianne Salvatore
page 5

    You acknowledge that you have read this agreement, understand it and are voluntarily entering into it.

LEHMAN BROTHERS INC.

*D Cohen*

Debbie Cohen

_____
Julianne Salvatore

_____
Date

KL3 2655336.1