Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA)

5   - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matters of:

7

8   LEHMAN BROTHERS HOLDINGS INC., et al.

9

10           Debtors.

11  - - - - - - - - - - - - - - - - - - - - - -x

12  LEHMAN BROTHERS INC.,

13

14           Debtor.

15  - - - - - - - - - - - - - - - - - - - - - -x

16           United States Bankruptcy Court

17           One Bowling Green

18           New York, New York

19

20           November 17, 2010

21           10:05 AM

22

23  B E F O R E:

24  HON. JAMES M. PECK

25  U.S. BANKRUPTCY JUDGE

Page 2

1

2    HEARING re Debtors' Motion for Authorization to Modify Certain

3    Terms of the Restructuring of the Archstone Credit Facilities

4

5    HEARING re Debtors' Presentment of Stipulation, Agreement and

6    Order Granting State Street Bank and Trust Co. Limited Relief

7    from the Automatic Stay

8

9    HEARING re Motion of Carolyn Fogarazzo, et al. for Relief from

10   the Automatic Stay

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

Page 3

```
 1

 2    A P P E A R A N C E S :

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for Debtors and Debtors-in-Possession

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:   JACQUELINE MARCUS, ESQ.

 9          DAMON P. MEYER, ESQ.

10          SUNNY SINGH, ESQ.

11          BRENNAN HACKETT, ESQ.

12

13    STUTMAN, TREISTER & BLATT

14         Attorneys for Lehman Brothers Holdings, Inc.

15         1901 Avenue of the Stars

16         12th Floor

17         Los Angeles, CA 90067

18

19    BY:   JEFFREY H. DAVIDSON, ESQ.

20          MICHAEL NEUMEISTER, ESQ.

21          MARINA FINEMAN, ESQ.

22          (TELEPHONICALLY)

23

24

25
```

Page 4

```
 1

 2    HUGHES HUBBARD & REED LLP

 3          Attorneys for the SIPA Trustee

 4          One Battery Park Plaza

 5          New York, NY 10004

 6

 7    BY:   JEFFREY S. MARGOLIN, ESQ.

 8          SARAH L. CAVE, ESQ.

 9

10    MILBANK, TWEED, HADLEY & MCCLOY LLP

11          Attorneys for the Official Committee of Unsecured

12           Creditors

13          One Chase Manhattan Plaza

14          New York, NY 10005

15

16    BY:   DENNIS C. O'DONNELL, JR.

17          MATTHEW KANTOR, ESQ.

18

19    U.S. DEPARTMENT OF JUSTICE

20          Office of the United States Trustee

21          33 Whitehall Street

22          21st Floor

23          New York, NY 10004

24

25    BY:   ELISABETTA G. GASPARINI, TRIAL ATTORNEY
```

Page 5

1

2   MARK L. LUBELSKY AND ASSOCIATES

3         Attorneys for LH 1440 L.L.C.

4         123 West 18th Street

5         Eighth Floor

6         New York, NY 10011

7

8   BY:   MARK L. LUBELSKY, ESQ.

9

10   BINGHAM MCCUTCHEN LLP

11         Attorneys for State Street Bank & Trust Co.

12         One Federal Street

13         Boston, MA 02110

14

15   BY:   ANDREW C. PHELAN, ESQ.

16

17   LAW OFFICES OF CURTIS V. TRINKO, LLP

18         Attorneys for the Fogarazzo Plaintiffs

19         16 West 46th Street

20         7th Floor

21         New York, NY 10036

22

23   BY:   CURTIS V. TRINKO, ESQ.

24

25

Page 6

1

2    CLYDE & CO US LLP

3          Attorneys for Certain Underwriters at Lloyd's, London &

4           Companies

5          405 Lexington Avenue

6          New York, NY 10174

7

8    BY:   EDWARD J. KIRK, ESQ.

9

10   BROWN RUDNICK LLP

11         Attorneys for the Ad Hoc Group of Creditors

12         One Financial Center

13         Boston, MA 02111

14

15   BY:   ANGELO THALASSINOS, ESQ.

16         (TELEPHONICALLY)

17

18   CHAPMAN & CUTLER LLP

19         Attorneys for US Bank

20         111 West Monroe Street

21         Chicago, IL 60603

22

23   BY:   FRANKLIN H. TOP III, ESQ.

24         JAMES HEISER, ESQ.

25         (TELEPHONICALLY)

Page 7

1                        P R O C E E D I N G S

2              THE CLERK:  All rise.

3              THE COURT:  Be seated, please.  Good morning.

4              MS. MARCUS:  Good morning, Your Honor.  Jacqueline

5     Marcus, Weil Gotshal & Manges, on behalf of Lehman Brothers

6     Holdings Inc. and its affiliated debtors.  The first item on

7     the agenda this morning, Your Honor, is the debtors' motion for

8     authorization to modify certain terms of the restructuring of

9     the Archstone credit facilities, docket number 12475.

10             Your Honor, as you're probably aware, this is our

11    third time before you with respect to the Archstone

12    restructuring.  We were here in January 2009 when we got what

13    we have described as the initial modification order which

14    permitted LCPI and the co-sponsors to provide an additional 485

15    million in priority financing to Archstone and to extend

16    certain maturity dates.

17             We were before you again in May 2009 when we sought

18    approval of the comprehensive restructuring which provided for

19    a conversion of approximately 2.5 billion of LCPI debt to

20    preferred equity interest, the conversion of the 485 million in

21    priority financing to a new revolving credit facility and the

22    extension of certain maturity dates.

23             At the time we got approval of the comprehensive

24    restructuring, we did not yet have agreement on the final terms

25    of the deal and at the hearing, the Court expressed some

Page 8

1    discomfort with that fact and directed us to err on the side of

2    caution if there were further changes to the terms of the

3    restructuring.  It is in large part due to the Court's

4    admonition that we are here before you again today seeking

5    approval of further modifications to the terms that we laid out

6    for the Court and other parties in interest in May.  We have

7    made a substantial amount of progress in the negotiations since

8    May and we are close to finalizing the terms of the Archstone

9    restructuring.

10            The changes to the terms of the restructuring are

11    summarized in the motion and are as follows:  first and most

12    importantly, the amount of indebtedness that will be converted

13    to preferred equity interest will be increased by 237 million

14    dollars, sixty-five million of which is attributable to LCPI.

15    The other changes are less significant.  The post-conversion

16    revolver will be a single tranche or a multi-tranche facility

17    in the discretion of the co-sponsors instead of a two=tranche

18    originally contemplated.  And the third change is that there is

19    increased flexibility regarding which entity will be the

20    managing member of Archstone Property Holdings LLC.  It is

21    currently contemplating that Archstone Enterprise LP or one of

22    its affiliates, as agreed by the co-sponsors, will be the

23    managing member.  And the managing member will be subject to

24    removal by the co-sponsors.

25            The debtors have filed a declaration of Jeffrey Fitts

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 9 of 47

Page 9

1    in support of the motion.  Mr. Fitz, who is present in court

2    today, is a managing director of Alvarez & Marsal and is the

3    co-head of Lehman's real estate group.  As set forth in his

4    declaration, Mr. Fitts believes that the modifications to the

5    restructuring are in the debtors' best interest and provide the

6    best framework for protecting and maximizing the value of the

7    debtors' interests -- investments in Archstone.  The changes

8    provide for further de-leveraging of Archstone and, in Mr.

9    Fitts' opinion, are immaterial in the context of the overall

10   restructuring.

11         Although, as indicated, we may have made substantial

12   progress since May 25th in finalizing the terms of the

13   restructuring, the parties have not yet completed all of the

14   documentation related to the restructuring.  In order to avoid

15   having to burden this Court again with further motions

16   regarding this matter, the proposed order approving the motion

17   provides, and I quote, "notwithstanding the provisions of the

18   Restructuring Order or this Order, the Transaction Documents

19   may be further modified, amended or supplemented by the parties

20   thereto in accordance with the terms thereof without further

21   order of the Court, provided that, in each case, the Debtors

22   determine, with consent from the Creditors' Committee, that

23   such modification, amendment or supplement has no materially

24   negative effect on the Debtors' claims or interests with

25   respect to Archstone as modified by this Order and the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 10

1    Restructuring."

2            As indicated in the certificate of no objection we

3    filed with respect to the motion, no objections to the motion

4    have been filed.  And the creditors' committee has filed a

5    statement in support of the motion.  Accordingly, based on the

6    motion and the evidentiary support provided by the Fitts

7    declaration, the debtors request that unless the Court has any

8    questions, the Court enter the proposed order.

9            THE COURT:  I have a couple of questions.

10           MS. MARCUS:  Sure.

11           THE COURT:  One relates to how close we really are to

12   the finish line and what kinds of changes are contemplated or

13   foreseeable.  And another has to do with why we're here on an

14   interim step as opposed to coming in to court when everything

15   is absolutely done and you can have one last opportunity for

16   all parties in interest to understand the terms of the

17   transaction and for the Court to have a full and adequate

18   opportunity to review the transaction.

19           MS. MARCUS:  Sure.

20           THE COURT:  Two questions.

21           MS. MARCUS:  Sure.  I'll take them in the order that

22   you presented them, Your Honor.  First, in terms of how close

23   we are to the finish line, I've been advised that we are very

24   close, that the parties currently contemplate a closing by the

25   current drop dead date which is December 6th, so a little past

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 11 of 47

Page 11

 1    the November 30th date we had indicated earlier, and that the

 2    nature of things that remain open are in the nature of, and I'm

 3    quoting here, "nits".  Mr. Fitts has advised me that he doesn't

 4    expect that the transaction will be final until we're actually

 5    at the table signing documents but that all of the substantive

 6    terms have been agreed to.

 7            As to your second question, the reason that we're her

 8    is because the parties had originally set a drop dead date of

 9    November 30 and I believe that both Lehman and the other

10    sponsors believe that because of interest rate concerns, it's

11    especially essential that this deal close as soon as possible,

12    and definitely, definitely by December 31.

13            THE COURT:  I'd like to hear from the creditors'

14    committee on this.

15            MS. MARCUS:  Your Honor, before you do that, just one

16    more thing.  We did make a couple of changes to the proposed

17    order after we filed it with the court partly in response to

18    the creditors' committee's comments.  And if it's okay with

19    you, I'd like to hand it up to you.

20            THE COURT:  Please do.  Thank you.

21            MR. O'DONNELL:  Good morning, Your Honor.  Dennis

22    O'Donnell, Milbank, Tweed, Hadley & McCloy on behalf of the

23    official creditors' committee.  Your Honor, on the Archstone

24    transaction and the overall restructuring itself is we

25    indicated back in May the committee has spent a long time

Page 12

1    looking at and evaluating the original restructuring and

2    looking again at the proposed modifications here which, from

3    our perspective, were always in the mix, something that wasn't

4    agreed to back in May but we knew it might come to this and we

5    had already looked at the possibility of these loans being

6    included in the mix.  So we think that the addition of the

7    additional loans in terms of the cutoff loans being also

8    converted is immaterial from our perspective.

9            THE COURT:  When you say you're in the mix, are you --

10    you're in the mix as an observer?

11            MR. O'DONNELL:  We're in the mix as an observer but

12    with full -- I mean, we have a team from FTI that has weekly

13    meetings with the debtors to discuss all real estate issues and

14    this issue in particular.  Archstone, in particular, was the

15    subject of perhaps four or five different meetings between the

16    FAs and -- between A&M and FTI and four or five different

17    subcommittee meetings to discuss the various aspects.  There

18    was a lot of back and forth on the overall concept of the

19    conversion here and whether it could be done in a way that was

20    effective and whether the benefits offset any detriment here.

21    That goes back to May.

22            In terms of revisiting it with respect to the most

23    recent modifications, again, that was an issue that was fully

24    discussed with the FAs in both the initially and weekly

25    meetings and thereafter and other meetings.  And they conduct

08-13555-mg    Doc 12934    Filed 11/18/10    Entered 11/19/10 15:50:15    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 13 of 47

Page 13

1    their own independent analysis of all aspects of this

2    transaction including the most recent modification.

3            I'm not sure in terms of if the question is are we at

4    the negotiating table, the answer is no.  But we're getting

5    real time updates from the negotiating table.  There are

6    different levels of cooperation and interaction in this case

7    amongst A&M and the committee's professionals.  On the real

8    estate side and particularly with respect to this transaction,

9    I would term the level of cooperation to be extraordinary.  And

10   nothing has gotten done without our full buy-in.  They've made

11   both A&M and Lehman professionals available to us to answer any

12   of the questions that we had and based on that have gotten

13   comfortable with the transaction as presented.

14           THE COURT:  Okay.  Thank you.  Let me just take a

15   moment to look at the blackline unless you would like to

16   emphasize changes for the record.

17           MS. MARCUS:  I think the most important one is on page

18   4.  The other ones were really immaterial.  One had to do with

19   who was provided with notice and the other was a typographical

20   error.  But on page 4 is the one that we made in response to

21   the committee's comments which changes "consultation with the

22   creditors' committee" to "consent from the creditors'

23   committee".  It's page 4 of the blackline, the first full

24   paragraph.

25           THE COURT:  I see it.  Thank you.

1      This is an uncontested matter and so, in a sense, this

2    should be as much of a layup as the matters that were removed

3    from the calendar because no objections were lodged.  I would

4    note that some of those matters are actually matters that

5    appear to be of great public interest because they involve the

6    advancement of proceeds under officers and directors liability

7    policy, something that the financial press seems to take a

8    great interest in.  But incredibly, not a single party in

9    interest cared to object so that's been removed from the

10   calendar.

11      This item involving Archstone is similarly a highly

12   visible issue of great public interest and it's, in part, for

13   that reason and because the record is clear from hearing to

14   hearing that this is a moving target that I took the position

15   last time that there would be no changes to this restructuring

16   without a further opportunity for notice and hearing.

17      I accept the representation that somebody used the

18   term "nits" -- I'm not sure who that was -- to describe the

19   nature of the remaining issues that have to be resolved before

20   this restructuring transaction can be finalized.  I accept that

21   representation with this admonition.  I leave it to the

22   professionals, including the creditors' committee, to decide

23   whether or not it's not just a nit but an infestation of nits.

24   And if that occurs -- and in the aggregate, we're talking about

25   changes that are worthy of public attention.  In that instance,

08-13555-mg    Doc 12934    Filed 11/18/10    Entered 11/19/10 15:50:15    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 15 of 47

Page 15

1    you should be guided by the same caution that brought you here

2    today and should be renoticing, perhaps on an expedited

3    schedule, for approval the changes to the transaction that have

4    occurred from today to the date of closing.

5            I also note that this is all happening, I understand,

6    with the utmost of good faith and with the extraordinary

7    cooperation mostly between financial advisors for the debtors'

8    estates and for the creditors' committee which is not the same

9    as a public airing of these issues.  I recognize that

10   negotiations cannot be conducted effectively in a fishbowl but

11   the results of those negotiations deserve disclosure.  For that

12   reason, regardless of whether or not a hearing is required, I

13   believe that some form of public notice should occur prior to

14   or immediately after closing that would give parties who are

15   following this case an opportunity to understand how, if at

16   all, the transaction has changed from today to the date of

17   closing.

18           MS. MARCUS:  Do you have any suggestions, Your Honor,

19   for what form that public notice should take?

20           THE COURT:  No.  I assume that a notice filed on the

21   ECF system which seems to work for notices of hearings and

22   other notices in the case or notices on your website would

23   suffice.

24           MS. MARCUS:  Okay.  Thank you, Your Honor.

25           THE COURT:  I'm not suggesting streaming video.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 16

1        MS. MARCUS:  Would you like us to revise the proposed

2   order to request your request or is the transcript sufficient?

3        THE COURT:  The transcript is sufficient.  I'll simply

4   so order this part of the transcript.

5        MS. MARCUS:  Thank you, Your Honor.  The next item on

6   the agenda will be handled by my colleague, Damon Meyer.

7        THE COURT:  Okay.

8        MR. MEYER:  Good morning, Your Honor.  For the record,

9   Damon Meyer from Weil Gotshal on behalf of the debtors.  Your

10  Honor, on October 25th, we filed a -- on notice of presentment

11  a stipulation.  It's docket number 12281.  It's between Lehman

12  Brothers Holdings Inc. and Lehman Commercial Paper Inc., on the

13  one hand, and State Street Bank and Trust Company, on the other

14  hand.  The stipulation is for the -- to modify the automatic

15  stay for the limited purpose of allowing State Street to

16  exercise remedies with respect to a senior secured loan.  There

17  was one objection received to the stipulation.  It was from the

18  equity holders for the underlying property.  It's LH 1440

19  L.L.C.  Your Honor, I can address the merits of the stipulation

20  or if you would like to hear from the objecting parties first,

21  we can proceed that way.

22        THE COURT:  Why don't you address the merits of the

23  stipulation?  I'll then hear the objection and I'll hear from

24  State Street.

25        MR. MEYER:  Certainly, Your Honor.  We believe the

Page 17

1   stipulation is in the best interest of the estate.  This Court

2   has found that Lehman's interest in the property is a junior

3   secured interest to State Street's senior secured interest.

4   The stipulation is for the limited purpose of modifying the

5   stay to allow State Street to exercise remedies with respect to

6   its senior interests.  The stipulation will allow Lehman to

7   avoid having to spend the time and resources dealing with this

8   junior interest while, at the same time, any funds that are

9   recovered by State Street on account of its senior interest in

10  excess to the senior interest and the cost of the recovery

11  would be remitted to Lehman on account of their junior

12  interest.

13          THE COURT:  Does the automatic stay apply here at all?

14          MR. MEYER:  Your Honor, I guess that's questionable.

15  Right now, it's an issue as to the underlying property holders

16  have appealed the decisions to who owns the underlying junior

17  loans.  I suppose, Your Honor, if the underlying junior loans

18  are owned by Lehman, which we believe they are, State Street

19  believes they are and I believe this Court has found, then it's

20  -- I believe the automatic stay would apply because State

21  Street would be exercising remedies that could affect property

22  of the estate.

23          THE COURT:  But not as to the acquisition loan.

24          MR. MEYER:  But not as to the acquisition loan, that's

25  correct, Your Honor.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 18

1          THE COURT:  And no one takes the position that the

2     automatic stay applies as to the acquisition loan?

3          MR. MEYER:  Solely as it relates to the acquisition

4     loan, that's correct, Your Honor.

5          THE COURT:  All right.  Thank you.  I'll hear the

6     objection.

7          MR. LUBELSKY:  Thank you, Your Honor.  Good morning.

8     Mark Lubelsky for LH 1440.  As an initial matter, in what

9     manner is the stipulation in the best interest of Lehman?

10    State Street's own reply makes it clear that Lehman receives

11    absolutely nothing from this stipulation.  I believe State

12    Street's reply puts the value of the acquisition loan currently

13    at sixteen million dollars.  And State Street's reply makes it

14    clear than any expected recovery is substantially less than

15    that.  I believe State Street values the underlying asset

16    somewhere between five and six million dollars.  LH 1440 values

17    it substantially lower.  This -- if this is in Lehman's best

18    interest because of some potential access recovery, that's,

19    according to State Street's own papers, completely illusory.

20    There is no --

21         THE COURT:  Can you ask you a question unrelated to

22    your argument but related to something that you presented to me

23    informally in correspondence earlier this year?  You advised

24    that under the terms of the financing arrangements, the

25    individual investors in LH 1440 were exposed to recourse

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 19 of 47

Page 19

1    liability if action were taken to contest efforts by the

2    holders of the loan to exercise remedies or to deal with the

3    property at maturity of the loan facility.  You're here

4    objecting to a stipulation which is designed to, among other

5    things, facilitate State Street as holder of the acquisition

6    loan's efforts to seek remedies at state law coupled with a

7    spillover of value to the debtors' estates to the extent there

8    is any value that may spill over.  If you're able to comment on

9    this, to what extent is your present activity in derogation of

10   limitations within the underlying loan documents?  And to what

11   extent, if at all, does it expose investors to potential

12   personal liability?

13        (Pause)

14        MR. LUBELSKY:  I'd be hesitant to comment upon that on

15   the record but it's certainly in our interpretation that this

16   act does not trigger recourse liability, that here, we are

17   merely objecting to a lifting of the automatic stay and not

18   contesting the foreclosure in any manner.  If the automatic

19   stay is lifted, the overwhelming odds are we would not even put

20   in an answer put in an answer to the foreclosure proceeding for

21   fear of triggering recourse liability.

22        There is, however, the appeal to the district court.

23   Certainly, if it went well for LH 1440 would reset the parties'

24   relationship such that State Street couldn't actually foreclose

25   because there would be a tryable issue of fact as to whether or

08-13555-mg    Doc 12934    Filed 11/18/10    Entered 11/19/10 15:50:15    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 20 of 47

Page 20

```
 1    not State Street was the prior breaching party and whether or

 2    not State Street had substantial liability to LH 1440.  So this

 3    act, we certainly believe, does not trigger recourse but

 4    certainly, just about anything beyond this act, I would be

 5    scared of.

 6              THE COURT:  All right.  So whether you're right or

 7    not, you think you're at the threshold and you haven't crossed

 8    it?

 9              MR. LUBELSKY:  That would be a fair way to put it,

10    Your Honor.

11              THE COURT:  All right.  As I read your objection, it

12    seemed to be mostly about priority of the acquisition loan

13    relative to the other two loans.

14              MR. LUBELSKY:  Your Honor, that was amended and we

15    withdrew that portion of the objection.

16              THE COURT:  Oh.  Okay.  Then what's your objection

17    really about now?

18              MR. LUBELSKY:  It's really -- having read the reply

19    papers, one is this provides absolutely no benefit to Lehman

20    whatsoever under, really, any interpretation of events.  And

21    two would be, just the appeal has been fully briefed before

22    Judge Swain.  The State Street's rights and responsibilities

23    would potentially be substantially different if that appeal was

24    successful with regard to LH 1440 than as they are today.  And

25    since LH 1440 really has no ability to contest a foreclosure
```

Page 21

 1    proceeding whatsoever because of the Bad Boy Act's clauses, not

 2    necessarily because of the facts, lifting the stay at this time

 3    would really leave Lighthouse without any practical remedy even

 4    if they did later prevail upon the appeal.

 5            THE COURT:  Okay.

 6            MR. LUBELSKY:  Thank you, Your Honor.

 7            THE COURT:  I'll hear from State Street.

 8            MR. PHELAN:  Good morning, Your Honor.  Andy Phelan on

 9    behalf of State Street.  What the borrower's response to the

10    Court's question has revealed is they're trying to do

11    indirectly what they cannot do directly and seek through a stay

12    here or a nonlifting of the stay here to enjoin the foreclosure

13    proceeding that State Street is considering.  We should get

14    back to the basics of the Court's first question to Lehman's

15    counsel which is should the -- is there even an automatic stay

16    here.  And really, as to the acquisition loan, there is not.

17    The only Lehman interest, which is the purpose of the stay to

18    begin with, is if there is some recovery for Lehman in the

19    foreclosure proceedings.  The stipulation addresses that

20    concern to Lehman's satisfaction and clearly, and it states

21    that in the enforcement proceedings if there is any recovery

22    beyond what is owed to State Street, it will be remitted to

23    Lehman.  So the basis -- the foundation for there to be a stay

24    does not exist to begin with.  And to the extent that there is

25    a tangential or indirect effect on Lehman property, it is

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 22 of 47

Page 22

1    addressed.

2            The appeal that 1440 Story has taken -- and the Court

3    is very familiar having twice gone through a complaint, an

4    amended complaint, motion to dismiss and then a renewed motion

5    to dismiss.  The effort there is to make State Street

6    responsible for two loans that it never acquired.  The appeal

7    is irrelevant to the lifting of the stay for two reasons

8    because it doesn't matter really which way the appeal turns

9    out.  If 1440 Story loses the appeal then there should not have

10   been a stay to begin with but there's no bar to lifting the

11   stay.  Even if 1440 Story were to prevail on the appeal, which

12   is to establish that there is a disputed issue of fact as to

13   whether Lehman sold to State Street both the building loan and

14   the project loan, that would come back to this Court on remand.

15   And I want the Court to assume that even if that was within the

16   jurisdiction of this Court to hear that State Street borrower

17   dispute, even if the Court were to find that those loans were

18   acquired by State Street then LH 1440 Story has proven too

19   much.  It has proven that there should not have been a stay to

20   begin with as to that property.  So the appeal itself, the

21   pendency of the appeal, is irrelevant to the issue as to

22   whether the Court should lift the stay or not.

23           The fact that it is fully briefed also is irrelevant.

24   It is pending before Judge Swain.  We don't have a hearing

25   date.  We don't know for sure whether there will be a hearing.

Page 23

1    But State Street has now held this loan for over two years.

2         THE COURT:  What's happening on December 3rd before

3    Judge Swain?

4         MR. PHELAN:  On December 3rd is a status conference, a

5    scheduling conference.  And counsel contacted chambers about

6    that through Mr. Lubelsky.  And Mr. Lubelsky indicated in a

7    communication to us, and he can correct me if I have this

8    wrong, but that is not being transformed into a hearing and the

9    Court may not even have a hearing on the appeal.

10        THE COURT:  Okay.

11        MR. PHELAN:  So we're still waiting to see what

12   happens there.  But irregardless of the result of that, it

13   should not affect the lifting of the stay.  And the Court

14   should also keep in mind that while that may be -- even

15   assuming that there was a hearing on the appeal, on December

16   3rd, we still have the issue of an appeal, potential appeal,

17   for the Second Circuit which would delay things even farther

18   when there shouldn't have been a stay to begin with.  And we

19   have the fact that State Street now is exercising its rights in

20   protecting the property, is paying for taxes, for example, on

21   the property while this appeal is pending.  There is no basis

22   for an automatic stay.  Lehman's property interest is

23   protected.  When 1440 Story lost on the motion to dismiss, it

24   did not move for a stay pending appeal.  It did not post a

25   bond.  So it is not entitled to the relief that it is seeking

Page 24

```
 1    even assuming that the Court had jurisdiction over the

 2    acquisition loan.

 3            So for all these reasons, the Court should grant the

 4    stipulation and reject the objection that 1440 Story has

 5    raised.

 6            THE COURT:  Okay.  Anything more from the debtor?

 7            MR. MEYER:  Your Honor, the one thing I would like to

 8    address is 1440's assertion that there was no benefit to the

 9    estate from the stipulation.  Your Honor, just because we have

10    a junior interest, there are costs and time and professional

11    fees associated with dealing with every aspect of this estate.

12    And to the extent that we can limit those, that is one of the

13    benefits to the estates.  And as Mr. Phelan said, of course,

14    our rights are protected through the stipulation.  To the

15    extent value does reach down to Lehman's interest.

16            THE COURT:  Okay.  Thanks.  As the parties have noted,

17    the Court is very familiar with this dispute.  There was a

18    certain irony in comments made by counsel for LH 1440 in

19    response to my question concerning the recourse liability

20    associated with the so-called "Bad Boy" guaranty associated

21    with this property.  In effect, once State Street proceeds with

22    foreclosure remedies in connection with the acquisition loan,

23    this will turn out to be an uncontested foreclosure because it

24    would be economic suicide for the investors to contest.  That's

25    not really before me.  That's just economic reality.  So the
```

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 25 of 47

Page 25

1   objection lodged by LH 1440 to the current stipulation granting

2   limited relief from the automatic stay is, in effect, the best

3   means by which LH 1440 can protect the property without, at the

4   same time, exposing individual investors to personal liability.

5        When a stipulation is examined for what it says and

6   does, it's a really benign instrument.  All it's really doing

7   is saying that to the extent the stay applies, State Street can

8   proceed in respect of the acquisition loan and benefit the

9   estate in connection with the other loans that are junior to

10   the acquisition loan.  The objection by LH 1440, which has

11   changed form a little bit during the course of today's

12   argument, is that there's really no benefit to the estate and

13   that, in any event, we should give the district court an

14   opportunity to pay appropriate attention to the pending appeal.

15   As to the no benefit to the estate contention, debtors' counsel

16   has persuasively argued that there is some benefit even in

17   avoiding the costs and expenses of having to deal with this

18   anymore plus the possible contingency, although I think it's

19   highly remote, of economics that may flow to the junior holders

20   following foreclosure.  The statements, which I don't take as

21   evidence but simply as random indications of value, would

22   suggest that the property is worth substantially less than the

23   loan and so I doubt very much than anything is going to flow to

24   the debtors' estate as a junior holder of the other loans.  But

25   notwithstanding that, there is a statement made of benefit to

Page 26

1    the estate which I accept.

2         As to the pendency of the appeal of my order from this

3    past summer granting State Street's motion to dismiss the

4    amended complaint, I would be loathe to do anything here that

5    would undermine or collaterally attack in any fashion the

6    district court's ability to effectively grant relief in

7    connection with the appeal.  But based upon my understanding of

8    the procedural record and upon review of State Street's reply

9    papers that were submitted very recently, it appears that

10   there's nothing about the pending stipulation that will

11   materially impact or perhaps impact at all the proceedings

12   before Judge Swain.  Either Judge Swain will affirm my

13   dismissal of the amended complaint or she will find fault with

14   what I did and either do that in a manner that doesn't lead to

15   remand or do that in a manner that does lead to remand.  But

16   regardless of that outcome, that then becomes an active

17   litigation not against the debtors' estates but against State

18   Street in connection with claim liability relating to the

19   overall loan transaction.

20        For that reason, I'm unable to see any reason not to

21   approve the stipulation and agree that, to some extent at

22   least, what LH 1440 is seeking to do here is to cantilever the

23   automatic stay out in its direction and for its benefit.  The

24   stay is not intended to benefit LH 1440.  It benefits solely

25   the debtor.  And the debtor has concluded that to the extent

Page 27

```
 1    the stay applies at all, and that's a debatable proposition,

 2    that they're consenting to limited relief.  For that reason,

 3    the objection is overruled and the stipulation will be

 4    approved.

 5             MR. MEYER:  Thank you, Your Honor.  The next matter on

 6    the agenda is going to be handled by my colleague, Sunny Singh.

 7             MR. SINGH:  Good morning, Your Honor.  Sunny Singh,

 8    Weil Gotshal & Manges on behalf of the debtors.  Your Honor,

 9    the next item on the agenda is the motion for relief from the

10    automatic stay by the Fogarazzo plaintiffs.  And I'll turn the

11    podium over to the movants first to present their motion.

12        (Pause)

13             MR. TRINKO:  I'm coming, Your Honor.

14        (Pause)

15             MR. TRINKO:  Your Honor, I'm Curtis Trinko.  I'm

16    counsel for the movants who have made a motion for advancement

17    against an insurance policy by modifying the automatic stay.

18    With regard to the underlying claims, they're from a lawsuit

19    pending before Judge Scheindlin in the Southern District of New

20    York.  It's a securities fraud matter that was brought against

21    three investment banks, Morgan Stanley, Goldman Sachs and

22    Lehman Brothers, in 2003.

23             We have just recently reached a partial settlement

24    with Morgan Stanley and with Goldman Sachs.  We are seeking to

25    proceed against insurance policies that were designated by
```

08-13555-mg    Doc 12934    Filed 11/18/10    Entered 11/19/10 15:50:15    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 28 of 47

Page 28

1   Lehman Brothers Inc. as covering the claims in the underlying

2   lawsuit.  They were part of initial disclosure that was filed

3   in August of 2004.  Also, we know that timely notice of the

4   claims were made to the insurance company.  Based upon that, we

5   believe that we have the status as third party beneficiary in

6   this suit.

7          As you probably noted from our motion papers, we took

8   pains to describe our entitlement to relief against Lehman

9   Brothers in the underlying lawsuit in terms of the document

10  production that was made before the automatic stay was imposed.

11  There was full document discovery.  After the stay was imposed,

12  we proceeded against Goldman Sachs and Morgan Stanley with

13  regard to depositions.  We had fifteen merits depositions.  We

14  also took the experts that they proffered in preparation for a

15  motion for summary judgment.  And we also had our expert

16  deposed.

17         We seek this relief because this is the only

18  alternative that we have at this point is to go against these

19  liability policies and to seek a recovery.  In the

20  underlying -- is it possible I can get some water?

21         THE COURT:  You want to drink the Court's water?

22         MR. TRINKO:  Absolutely, Your Honor.

23         THE COURT:  Sure.  We can get you a glass of water.

24  Just stay there.

25         MR. TRINKO:  Thank you.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 29

 1              In 2002, Your Honor --

 2              THE COURT:  That's the first time incidentally that

 3    request has ever been made.

 4              MR. TRINKO:  Really?

 5              THE COURT:  Yes.  You're the first person to ever ask

 6    to drink our water.

 7         (Pause)

 8              MR. TRINKO:  Thank you.  In 2002, Your Honor, there

 9    were proceedings brought against the various investment banks

10    one of them being Lehman Brothers Inc.

11              THE COURT:  I read the papers --

12              MR. TRINKO:  Okay.

13              THE COURT:  -- and I'm generally familiar with the --

14              MR. TRINKO:  The analyst proceeding.

15              THE COURT:  No.  I understand that this relates to

16    RSL.  I understand that you had lots of discovery.  I read your

17    papers and that you have a partial settlement.  I'm not

18    understanding why you're spending the time to do this here now.

19    And it's also not entirely clear to me why, if, in fact, this

20    underlying policy was terminated and releases exchanged, you

21    consider it to be worth your time to be seeking stay relief.

22    Or, if it's true, how you could be entitled to stay relief.

23    That's one question.

24              Another question is the cart before the horse

25    question.  You're seeking relief from the automatic stay in the

Page 30

1    LBHI bankruptcy case as it relates to claims that were

2    presented many years ago in district court against Lehman

3    Brothers Inc.  Lehman Brothers Inc. is a party to a SIPA

4    liquidation proceeding which is actually part of my regular

5    omnibus docket.  But no motion for relief from stay has been

6    brought in the SIPA case.  Instead, you're seeking relief from

7    stay in what I view as a highly questionable manner in this

8    case.  So I'd like to give you an opportunity not to talk about

9    what a good case you might have but why you're entitled to stay

10   relief here.

11           MR. TRINKO:  Yes, Your Honor.  We had discussions with

12   both Weil Gotshal and Hughes Hubbard with regard to where the

13   motion should have been brought.  Since the insurance policies

14   were issued to Holdings and covering their subsidiaries, it was

15   believed that this would be the most appropriate forum rather

16   than the liquidation proceedings regarding LBI.  I don't

17   profess to be a bankruptcy expert on that issue, Your Honor,

18   but we did raise it and it was decided among counsel that this

19   would be most appropriate.  So that's why we chose the Holdings

20   proceeding to go in.  We certainly can also file it in the

21   liquidation proceeding if Your Honor would feel that's more

22   appropriate.

23           THE COURT:  Well, I have no idea what the right

24   approach is and I don't practice law anymore.  So you'd have to

25   do that on your own.

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 31 of 47

Page 31

1          MR. TRINKO:  Yes.

2          THE COURT:  But it seems to me that in the ordinary

3     course of relief from stay litigation, having the rights to

4     pursue claims against an insurance policy is not even halfway

5     there because the rights as to the insurance policy are

6     derivative whatever rights you have against the insured.

7          MR. TRINKO:  Well, Your Honor, I thought long and hard

8     about that.  Obviously, if it were so that one had to get a

9     judgment against the party before one could proceed against the

10    insurance company, all litigation in America would grind to a

11    halt.

12         THE COURT:  I don't think that's true.  I think you

13    just stated too much.  All litigation would not grind to a

14    halt.  Maybe plaintiffs' litigation would.

15         MR. TRINKO:  Plaintiffs' litigation, okay, Your Honor.

16         THE COURT:  The issue is how you pursue a claim

17    against insurance proceeds as to a policy that, at least it has

18    been represented to the Court, is no longer in full force and

19    effect; and, secondly, how you're able to deal with that policy

20    without going at least through LBI.

21         MR. TRINKO:  Your Honor, as to the first issue, there

22    were representations made that was -- the first time we heard

23    these representations were in August of this year, Your Honor,

24    that the policies had been terminated and releases issued in

25    the year 2004.  As I indicated, in August of 2004, initial

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 32 of 47

Page 32

1  disclosures were served by Paul Weiss on behalf of LBI and

2  indicated there that the insurance policy was the appropriate

3  avenue of recovery if we obtained relief against LBI.

4       We have requested on numerous occasions for

5  documentation or some backup to these assertions that there

6  were policy terminations and releases.  We have received

7  nothing.  We haven't even received the excess policy which we

8  requested because we were only given the primary policy.  And

9  so that, we're not even sure if these terminations and releases

10  in fact exist or if, in fact, are possessed by Weil Gotshal

11  and/or Hughes Hubbard.

12       It also, Your Honor -- in thirty-five years

13  experience, I've never seen an investment bank do this with

14  regard to its coverage and go naked.  There is no reason that

15  would be done other than some kind of transaction that

16  benefited individuals rather than the institution.  And that

17  may be a reason why documents are not forthcoming.  But the

18  fact is, Your Honor, that there could be no termination made

19  with regard to terminations or releases on these policies

20  without some form of evidence being presented that they, in

21  fact, exist and, in fact, are appropriate and viable and, if

22  not, then procured by fraud or something else.

23       We have third party beneficiary rights.  The insurance

24  company was on notice of that.  And regardless of that fact,

25  they supposedly went forward and terminated the policy with

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 33 of 47

Page 33

 1    existing proceeds still available.

 2            THE COURT:  I believe it is disputed that you have

 3    third part beneficiary rights if I read correctly what Lloyds

 4    said in their papers.

 5            MR. TRINKO:  I acknowledge that, Your Honor.

 6            THE COURT:  Okay.

 7            MR. TRINKO:  I'm giving my side of the story.

 8            THE COURT:  You're welcome to do -- that's why you're

 9    here.  We believe that we do have third party beneficiary

10    rights and that it's appropriate for us to advance against the

11    policy.  We have no other option with regard to claims against

12    LBI.

13            We did file -- and there was a mistake in the

14    unofficial -- or the official creditors' committee's

15    submission.  We did file proofs of claim in a timely manner

16    both against Holdings and LBI.  But as Your Honor knows,

17    shareholders are the lowest priority.  And after doing this

18    dozens of times, we've never recovered in a bankruptcy

19    proceeding through a proof of claim.  But we did file them,

20    Your Honor.

21            THE COURT:  Wait.  You're not pursuing this on behalf

22    of shareholders of LBI or shareholders of --

23            MR. TRINKO:  No, we're not, Your Honor.

24            THE COURT:  -- LBHI.  You're pursuing this on behalf

25    of investors in RSL, isn't that right?

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 34 of 47

Page 34

1          MR. TRINKO:  Yes, Your Honor.

2          THE COURT:  Okay.  And you're saying that on behalf of

3     investors in RSL, the class represented by Lawrence --

4          MR. TRINKO:  Lawrence Fogarazzo --

5          THE COURT:  Fogarazzo --

6          MR. TRINKO:  -- Carolyn Fogarazzo --

7          THE COURT:  -- and others that you have filed proofs

8     of claim in both the LBI and in the LBHI cases?

9          MR. TRINKO:  Yes, I have, Your Honor.

10         THE COURT:  All right.

11         MR. TRINKO:  Now, with regard to these insurance

12    policies, we believe they cover these types of claims.  They

13    were procured by Lehman for their protection against claims,

14    such as securities fraud, to cover employees of Lehman.

15         THE COURT:  Okay.  I --

16         MR. TRINKO:  It's not a directors and officers

17    liability policy.

18         THE COURT:  I don't -- I understand the word crime is

19    in the policy name.  The focus here has to be why you're

20    entitled to stay relief under the Sonnax standard, something

21    that you belatedly address in your reply papers.  You've

22    already said you're not a bankruptcy practitioner.  The focus

23    here, however, has to be Sonnax not whether or not you are

24    sympathetic as a plaintiffs' lawyer.

25         MR. TRINKO:  They focused on three of the Sonnax

Page 35

```
 1   factors, Your Honor.  We felt that in our reply papers we

 2   adequately responded to those by showing that there's no

 3   judicial economy to be garnered from a denial of our relief

 4   because we're seeking to go solely against the insurance

 5   policy.  We're not meaning to involve LBI or Holdings in this

 6   process.  And that, at this point, perhaps we would ask for

 7   documents with regard to these terminations of releases.  But

 8   there really are few depositions that need to be taken.  They

 9   know who the people are because we made deposition notices in

10   the underlying proceeding before they went into bankruptcy.

11            THE COURT:  Let me ask you a question.  If you were

12   satisfied based upon a review subject to any appropriate

13   confidentiality restrictions that might be requested of

14   documents demonstrating that the policy as to which you seek to

15   obtain potential recovery in fact was terminated some number of

16   years ago and that releases were exchanged in connection with a

17   transaction that's not subject to credible challenge, do you go

18   away?

19            MR. TRINKO:  If those documents were produced to us

20   and with the caveat that it was an appropriate corporate

21   transaction at the time, it was not for some personal benefit

22   but it was for the benefit of LBI, and we reviewed those

23   documents in confidence, I would be willing to stipulate to a

24   dismissal of our proceeding of that event.

25            THE COURT:  When you say a dismissal of your
```

Page 36

1    proceeding, are you talking about the litigation against LBI

2    which has not been settled currently pending before Judge

3    Scheindlin?

4            MR. TRINKO:  All the way through, Your Honor, yes.

5            THE COURT:  All right.  Let me find out from counsel

6    for the underwriters whether or not this can be resolved with

7    some targeted cooperative discovery.

8            MR. KIRK:  Good morning, Your Honor.  Edward Kirk from

9    Clyde & Co. for Underwriters at Lloyds & Companies.  Your

10   Honor, these policies -- I think you understand the issues

11   quite well.  These policies were issued in 1999 to Lehman

12   Brothers Holdings Inc. and its subsidiaries and certain

13   employees and officers of the company with respect to claims

14   for coverage related to professional liability acts, et cetera.

15   But the important thing with regard to the policies is that

16   they're indemnity policies.  And there's nothing in the

17   policies that indicate at all that any third party would be a

18   beneficiary under the policies.  In fact, the policies would

19   indemnify Lehman Brother and those identified as insureds for

20   certain losses and defense costs.  But there's no obligation by

21   Underwriters to make any payment directed to plaintiffs or

22   anything in that nature.  And certainly, the Fogarazzo

23   plaintiffs and any other third party plaintiffs are not

24   identified in the policies and there's no indication at all

25   that these are anything other than indemnity policies.  So they

08-13555-mg   Doc 12934   Filed 11/18/10   Entered 11/19/10 15:50:15   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 37 of 47

Page 37

1    do not have standing as third party beneficiaries.

2         The other important point to take away, and it's quite

3    simple, is that even if they were third party beneficiaries,

4    they have absolutely no further rights under the policies than

5    the insureds would.  And here, it's not disputed by the

6    insureds themselves that the policies were, in fact, terminated

7    and a full release was provided to Underwriters in 2004.  This

8    was six years ago.  Now the plaintiffs have come forward two

9    years after Lehman Brothers went into bankruptcy and the stay

10   was put in place.  And they're now asking for the Court to lift

11   the stay so that they can determine whether or not they can get

12   further proceeds with respect to Lehman Brothers.  But what

13   they're trying to do is essentially get around a release -- a

14   settlement agreement and release entered into between two

15   parties relating to that they have no affiliation relating to

16   policies that they're not parties to.

17        So they have absolutely no standing at all under the

18   policies and have absolutely no right to lift the stay.  And

19   any lifting of the stay here would be futile and academic as

20   Lehman Brothers just pointed out.

21        THE COURT:  Okay.  But about this discovery that I

22   mentioned before you stood up, I recognize your legal position

23   which is that these plaintiffs have no direct standing as third

24   party beneficiaries to be seeking anything from you.

25        MR. KIRK:  That's correct.

Page 38

1          THE COURT:  But I also recognize that there is the

2     potential for litigation to proliferate here.  It could go

3     away, too, for that matter, but it could also proliferate in

4     the sense of a motion for stay relief in the LBI case, an

5     appeal from an adverse determination of this Court concerning

6     the request for stay relief.  And this can become vexatious.

7     My question to you is whether, as a means to allow this to go

8     away quietly, Underwriters would provide information to

9     plaintiffs' counsel that would prove the point made in the

10    papers filed in connection with this pending contested matter,

11    namely, that there's no insurance in effect any longer and that

12    there hasn't been insurance in effect for six years.

13         MR. KIRK:  Your Honor, just to explain, the settlement

14    of the policies related to other claims involving other

15    parties.  We also have a confidentiality provision in those

16    agreements and there is some concern that providing those

17    releases to the plaintiffs --

18         THE COURT:  That's what redacting is for.

19         MR. KIRK:  Okay.  I think we might be able to agree to

20    it if we could redact certain portions of it.  And I think we

21    would be willing to show them the release which would confirm

22    that, in fact, we did get a full release and that the release

23    was specific to the Fogarazzo action among others.

24         THE COURT:  Okay.

25         MR. KIRK:  We could agree to that.

1          THE COURT:  So it's --

2          MR. KIRK:  -- although I have to note that I am

3     somewhat concerned that providing those releases to the

4     plaintiffs would actually encourage them to continue on with

5     their proliferation of litigation and result in more

6     unnecessary motion practice.  He's already indicated that he

7     may go away but only if he considers the settlement to be a

8     proper corporate transaction.  So I see a real risk there, Your

9     Honor.

10         THE COURT:  Well, at some point, if it isn't

11    productive, lawyers tend to go away.  I suggest that the --

12    first of all, I want to hear from counsel for LBI on this, too.

13    I recognize that LBI did not file any papers; at least I didn't

14    see any.  But I'd be interested in knowing whether the trustee

15    in the LBI SIPA proceeding has any position whatsoever to

16    express in connection with the pending motion for stay relief.

17         MS. CAVE:  Good morning, Your Honor.  Sarah Cave from

18    Hughes Hubbard on behalf of the SIPA trustee.  And as far as

19    our position on the motion, I think we have -- our interests

20    are aligned with the LBHI debtors in terms of wanting to

21    resolve this as efficiently as possible.  If the Underwriters

22    and the LBHI debtors are amenable to the proposal that Your

23    Honor had regarding providing the limited amount of discovery

24    regarding the redacted releases, we would have no objection to

25    that.  As Mr. Trinko said, he has filed on behalf of the

Page 40

1    plaintiffs whom he represents.  He's filed a claim in the LBI

2    proceeding.  And to the extent that he is entitled to any

3    recovery on that with respect to those claims, it will be dealt

4    in the course of our claims process.

5         The stay is in effect as to the litigation in front of

6    Judge Scheindlin.  We have no -- we don't contemplate any --

7    seeking to litigate that proceeding at any time soon.  And I

8    would just also note that we've been dealing with Mr. Trinko

9    for a number of months.  He initially tried to re -- in our

10   view, sort of get around the stay by refiling his securities

11   complaint as an adversary proceeding --

12        THE COURT:  Can I stop you for one second?  I'm

13   talking now to the people who are on CourtCall.  I don't know

14   who you are but please mute your phones.  You're coming through

15   on our loudspeakers.  I'm sorry.

16        MS. CAVE:  That's okay.  So Mr. Trinko had refiled his

17   complaint as a purported adversary proceeding and we

18   immediately dealt with Mr. Trinko in terms of pointing out to

19   him how that was not a proper adversary proceeding.  And

20   ultimately, after a number of months, Mr. Trinko did withdraw

21   that adversary complaint.  But it's our view that certainly Mr.

22   Trinko has been tenacious as far as attempting to recover on

23   behalf of his clients.  But the fact is that LBI is in

24   bankruptcy and he has filed a proof of claim in our proceeding

25   and it will be dealt with in due course in that regard.

Page 41

1          THE COURT:  To the extent that what we're dealing with

2     here is an indemnity policy and accepting for a moment the

3     assertion made by Underwriter's counsel that there are no third

4     party beneficiary rights to pursue, what would the trustee's

5     position be in the event that Mr. Trinko, on behalf of his

6     class, were to seek relief from the automatic stay in the LBI

7     case to pursue litigation before Judge Scheindlin solely in

8     respect of available insurance policy proceeds, if any?

9          MS. CAVE:  Well, I would need to discuss that with my

10    colleagues.  As Your Honor is aware from other situations in

11    this case, we have agreed to limited lifting of the stay.  To

12    the extent that the only relief that's being sought is as to

13    the policies, to the extent that the insurers are the ones who

14    are covering the defense costs of that, so with the caveat that

15    assuming that it would proceed along the lines with which we

16    have done this in similar situations, as long as there is not

17    going to be any additional imposition on the LBI estate from

18    such relief, I think we would consider that in all

19    reasonableness.

20         THE COURT:  Okay.  Thank you.  I think this is

21    probably more complicated than it needs to be and that while I

22    recognize that it is possible that Mr. Trinko, who has been

23    described as tenacious -- you might as well accept that as a

24    compliment.  I'm not sure that it's intended as such --

25         MR. TRINKO:  I will, Your Honor.

Page 42

1          THE COURT:  Okay.  That he may or may not go away as a

2     thorn in the side of the parties in this proceeding.  But it

3     seems to me that it is reasonable for him to at least be in a

4     position to exercise duties owed to his client class to assure

5     himself that what has been represented in the papers filed to

6     date in fact is true.  That's not to say that anybody would say

7     anything in papers filed that wouldn't be true.  But I think

8     the saying is trust but verify.  And I believe that it makes

9     some sense for Mr. Trinko to gain access within an appropriate

10    setting of confidentiality to those documents that would

11    support the contention of Underwriters that the applicable

12    insurance policy, in fact, has been terminated and that

13    releases have been exchanged.

14          So I'm going to deny the pending motion for stay

15    relief without prejudice with the understanding that the

16    parties will work cooperatively with one another to provide Mr.

17    Trinko with such documentation as he might reasonably need in

18    order to determine that coverage no longer exists.  I presume

19    that Mr. Trinko will be reasonable upon reviewing such

20    documents.  I'm assuming that there are narrow credible

21    challenges to be made to such documentation that he'll be able

22    to assure himself and, ultimately, his client class that

23    pursuing claims in the litigation in order to get insurance

24    proceeds would be a waste of time.  If he has a different point

25    of view, he's obviously free to assert that.

Page 43

1          MR. TRINKO:  Your Honor, I certainly think that's a

2    reasonable suggestion.  I would just be somewhat concerned,

3    though, about the level of redaction that would be undertaken.

4    If we have a confidentiality stipulation, there's virtually no

5    need for redaction.  I have looked at --

6          THE COURT:  Well, I'm not getting into that level of

7    detail.  We're now talking about something that's entirely

8    unrelated to your motion.  And you're anticipating a problem

9    that may never exist.

10         MR. TRINKO:  Okay.

11         THE COURT:  If it becomes a problem, I suppose that's

12   something that you can discuss with counsel.  I'll tell you,

13   however, that discovery disputes relating to redaction are

14   unlikely to get my attention.

15         MR. TRINKO:  Okay.  But I really appreciate the

16   Court's suggestion as far as a way of resolving this matter.

17   And we will cooperate in good faith with counsel to provide a

18   process for documents to be provided to us for our review --

19         THE COURT:  Okay.

20         MR. TRINKO:  -- on this issue.

21         THE COURT:  Fine.  Very good.

22         MR. TRINKO:  Thank you, Your Honor.

23         THE COURT:  And I would ask that debtors' counsel

24   submit an order in reference to this particular motion for stay

25   relief that reflects the statements made on the record today.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 44

1          MR. MEYER:  Yes, Your Honor.

2          MS. MARCUS:  Your Honor, that brings us to the end of

3     the LBHI part of the calendar.  There's nothing else.

4          THE COURT:  Before we move on, I just wanted to

5     express a preference of the Court for the next omnibus hearing

6     or perhaps the one after the next omnibus hearing depending

7     upon what makes the most sense.  And that has to do with the

8     plan process.  Today's omnibus hearing is noticeably lacking in

9     any matters that provide any illumination at all as to how this

10    case is progressing on an overall basis.  We're approaching the

11    end of the year.  And I am mindful of the statements made by

12    Mr. Marsal at the state of the estate report on September 22 in

13    which he suggested, aspirationally, no doubt, that a plan might

14    be forthcoming to be confirmed before the end of the first

15    quarter of 2011.  I'd like to know what progress is being made,

16    what problems, if any, exist with respect to the successful

17    formulation of a consensual plan and what, if any, protocols of

18    communication among and between creditor constituencies that

19    are not presently in place may be necessary or appropriate to

20    facilitate the plan process.  I'm not saying that needs to

21    happen in December.  And I'm not trying to ruin anybody's

22    holidays.  But I do think that some progress report of a public

23    nature is appropriate.

24          MS. MARCUS:  That's fine, Your Honor.  And I'll

25    consult with my colleagues as to whether the December hearing

Page 45

1    is the right time or we should do it in the hearing after that.

2              THE COURT:  Fine.  Thank you.

3              MS. MARCUS:  Thank you, Your Honor.  I think that

4    concludes our hearing for today.

5              THE COURT:  Is there anything on the LBI case?

6              MR. MARGOLIN:  No, Your Honor.  We filed a --

7              THE COURT:  Certificate of no objection?

8              MR. MARGOLIN:  -- certificate of no objection.

9              THE COURT:  Okay.  We're adjourned then until 2:00 for

10   the adversary docket.

11        (Whereupon these proceedings were concluded at 11:14 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 46

1

2                                  I N D E X

3

4                               R U L I N G S

5    DESCRIPTION                                    PAGE      LINE

6    Debtors' motion for authorization to modify     14         2

7    certain terms of the restructuring of the

8    Archstone credit facilities granted as

9    Uncontested; transcript so ordered as to        16         4

10   Court's direction to parties to provide

11   public notice of changes to transaction between

12   date of hearing and closing

13   Stipulation between LHBI and State Street Bank   27         4

14   and Trust Co. granting State Street relief

15   from the automatic stay approved and objection

16   of LH 1440 L.L.C. overruled

17   Motion by Fogarazzo plaintiffs' for relief       42        14

18   from the automatic stay denied without

19   prejudice

20

21

22

23

24

25

Page 47

1

2                     C E R T I F I C A T I O N

3

4     I, Lisa Bar-Leib, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7     _____

8     LISA BAR-LEIB

9     AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17    Date:  November 18, 2010

18

19

20

21

22

23

24

25