Jacob H. Stillman, Solicitor
Katharine B. Gresham, Assistant General Counsel
Mark Pennington, Assistant General Counsel
Dimple Gupta, Attorney
U.S. Securities and Exchange Commission
100 F Street, NE
Washington, DC 20549-8030B
202-551-5005 (Gupta)

Alistaire Bambach
Patricia Schrage
U.S. Securities and Exchange Commission
3 World Financial Center
New York, NY 10281
(212) 336-0163

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT NEW YORK**

_____
                                    )
In re                               )
                                    )    Chapter 11 Case. No.
LEHMAN BROTHERS HOLDINGS, INC. et al.)   08-13555 (JMP)
                                    )    (Jointly Administered)
           Debtors.                 )
_____ )


_____
                                    )
In re                               )
                                    )
LEHMAN BROTHERS INC.,               )    Case No. 08-01420 (JMP) SIPA
                                    )
           Debtor.                  )
_____ )


**POST-TRIAL BRIEF OF THE SECURITIES AND EXCHANGE COMMISSION**

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS .................................................... i

TABLE OF AUTHORITIES .................................................. ii

INTEREST OF THE COMMISSION ............................................ 1

ISSUES ADDRESSED ...................................................... 1

BACKGROUND ............................................................ 2

ARGUMENT .............................................................. 3

    A.    Rule 15c3-3 Requires Broker-Dealers to Maintain a "Special Reserve Bank Account for the Exclusive Benefit of Customers" in the Event the Broker-Dealer Fails ..................................... 3

    B.    Rule 15c3-3 Continues to Apply to a Broker-Dealer After It Is Placed in SIPA Liquidation. ................................................. 5

    C.    Transferring $769 Million in Securities Held in LBI's Reserve Bank Account Would Violate Rule 15c3-3 If the Transfer Would Increase the Deficiency in the Account, and LBI Would Not Have Sufficient Funds to Satisfy All Claims of the Remaining Customers. ........ 8

    D.    Transferring $507 Million in Assets Listed as a Debit Item in LBI's Rule 15c3-3 Customer Reserve Calculation Would Cause a Violation of the Rule If the Transfer Would Increase the Deficiency in the Account, and LBI Would Not Have Sufficient Funds to Satisfy All Claims of the Remaining Customers. ......................... 9

CONCLUSION ........................................................... 13

# **TABLE OF AUTHORITIES**

**PAGE**

Securities Exchange Act of 1934, 15 U.S.C. 78a, et seq. . . . . . . . . . . . . . . . . . . . . 1

    Section 15(a)(1), 15 U.S.C. 78o(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
    Section 15(c)(3), 15 U.S.C. 78o(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5, 6

Securities Investor Protection Act of 1970, 15 U.S.C. 78aaa, et seq. . . . . . 1,3,5,7

    Section 8(d), 15 U.S.C. 78fff-2(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Section 8(e), 15 U.S.C. 78fff-2(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Section 9(f), 15 U.S.C. 78fff-3(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Rules Under the Securities Exchange Act of 1934, 17 C.F.R. 240.0-1, et seq.

    Rule 15c3-3 (Customer Protection Rule), 17 C.F.R. 240.15c3-3 . . . 1, 2,3,4
                                                                                                               *passim*
    Rule 15c3-3a, 17 C.F.R. 240.15c3-3a . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 11
    Rule 15c3-3(e)(1), 17 C.F.R. 240.15c3-3(e)(1) . . . . . . . . . . . . . . . . . 4, 8, 12
    Rule 15c3-3(e)(2), 17 C.F.R. 240.15c3-3(e)(2) . . . . . . . . . . . . . . . . . . . 8, 12
    Rule 15c3-3(g), 17 C.F.R. 240.15c3-3(g) . . . . . . . . . . . . . . . . . . . . . . . . 8, 9
    Rule 15b6-1(b), 17 C.F.R. 240.15b6-1(b) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Legislative History

    H.R. Rep. No. 91-1613 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Miscellaneous

Amendments To Financial Responsibility Rules for Broker Dealers,
  Exchange Act Rel. No. 55431 (Mar. 9, 2007),
  72 Fed. Reg. 12862 (Mar. 19, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Customer Protection Rule, Exchange Act Rel. No. 22499
  (Oct. 3, 1985), 50 Fed. Reg. 41337 (Oct. 10, 1985) . . . . . . . . . . . . . . . . . . . 10

# TABLE OF AUTHORITIES

**PAGE**

Customers' Securities and Funds, Exchange Act Rel. No. 9622
  (May 31, 1972), 37 Fed. Reg. 11687 (June 10, 1972) . . . . . . . . . . . . . . . . . . . . . . 4

Net Capital Requirements for Brokers and Dealers; Amended Rules, Exchange
  Act Rel. No. 18417 (Jan. 13, 1982), 47 Fed. Reg. 3512 (Jan. 25, 1982) . . . . . . 10

Options Clearing Corporation Bylaws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Rule 15c3-3 Reserve Requirements for Margin Related to Security Futures
Products, Exchange Act Rel. No. 50295(Aug. 31, 2004),
  69 Fed. Reg. 54185 (Sept. 7, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# INTEREST OF THE COMMISSION

The Securities and Exchange Commission is a party to cases under the Securities Investor Protection Act of 1970 (SIPA). It has a strong interest in ensuring that its broker-dealer Customer Protection Rule, Rule 15c3-3, promulgated under the Securities Exchange Act of 1934, is properly interpreted and its customer-protection objectives are carried out, and in particular that assets held in the Special Reserve Bank Account for the Exclusive Benefit of Customers, a well as other assets held for the benefit of customers, required by Rule 15c3-3 are properly administered in the event a broker-dealer is liquidated. The parties' briefs in this SIPA case present conflicting interpretations of that Rule with respect to the Reserve Bank Account. Consequently, in order to aid this Court's decision, the Commission submits its interpretation of relevant aspects of the Rule.

# ISSUES ADDRESSED

1. Whether transferring $769 million in securities held in the Special Reserve Bank Account for the Exclusive Benefit of Customers of debtor Lehman Brothers Inc. (LBI) would violate Rule 15c3-3, 17 C.F.R. 240.15c3-3, if the transfer would increase the deficiency in the account, and LBI would not have sufficient funds to satisfy all claims of the remaining customers.

2. Whether transferring $507 million in assets listed as a debit item in the

Rule 15c3-3 customer reserve calculation would cause a violation of the Rule if the transfer would increase the deficiency in the Reserve Bank Account, and LBI would not have sufficient funds to satisfy all claims of the remaining customers.

## BACKGROUND

The parties disagree as to whether the Purchase Agreement approved by this Court requires the transfer of certain assets from LBI to Barclays Capital, Inc. (Barclays), and whether the transfers would violate Rule 15c3-3.[1] Included in the assets as to which there is a dispute are:

- $769 million in securities maintained in LBI's Reserve Bank Account pursuant to Rule 15c3-3; and

- $507 million in cash and securities held as margin for customer transactions at the Options Clearing Corporation (OCC), which LBI included as a debit item when calculating the amount required to be held in its Reserve Bank Account pursuant to Rule 15c3-3a, 17 C.F.R. 240.15c3-3a.

According to the Trustee, if these disputed assets are transferred to Barclays, the deficiency in LBI's Reserve Bank Account would be increased by these withdrawals, and LBI would not have sufficient funds to satisfy all claims of the customers whose accounts were not transferred out of the LBI estate.

---

[1] The Commission addresses only the operation of Rule 15c3-3, and does not address any other issues raised by the parties, including factual questions or the interpretation of the Purchase Agreement.

# ARGUMENT

The parties dispute the application of Rule 15c3-3 to the transfer of certain assets deposited in, or listed as a debit item in, LBI's Reserve Bank Account, and the Commission wishes to explain to the Court its interpretation of that Rule with respect to the transfer of the disputed assets.

### A. Rule 15c3-3 Requires Broker-Dealers to Maintain a "Special Reserve Bank Account for the Exclusive Benefit of Customers" in the Event the Broker-Dealer Fails.

In response to the brokerage-firm failures of the late 1960s, in which many customers were either unable to recover assets or did so only after substantial delays, Congress enacted SIPA, 15 U.S.C. 78aaa et seq., to protect customers in the event a broker-dealer is liquidated. SIPA amended Section 15(c)(3) of the Securities Exchange Act of 1934, 15 U.S.C. 78o(c)(3), to provide explicit authority for the Commission "to promulgate rules with respect to the financial responsibility and related business practices of broker-dealers including, but not limited to, the acceptance of custody and use of customers' securities, and the carrying and use of customers' deposits or credit balances." H.R. Rep. No. 91-1613, at 13 (1970).

The Commission promulgated Rule 15c3-3, the Customer Protection Rule, which requires a broker-dealer, in essence, to segregate customer funds and fully-

paid and excess margin securities held by the firm for the accounts of the customers. If a brokerage firm is in compliance with Rule 15c3-3, it should be able to return customer property in the event it encounters financial difficulties. This arrangement gives customers confidence that if they leave their assets with a broker-dealer, those assets will be returned to them in the event the firm fails.

In particular, Rule 15c3-3 requires every broker-dealer to maintain a "Special Reserve Bank Account for the Exclusive Benefit of Customers" that shall include "at all times" a net amount of cash and/or qualified securities that together with the other protections outlined in Rule 15c3-3 are designed to allow a firm to promptly return customer property. *See* Rule 15c3-3(e)(1), 17 C.F.R. 240.15c3-3(e)(1).

The Rule 15c3-3 customer Reserve Bank Account and the Rule's requirements for the safeguarding of customer securities "are designed to protect customer assets in the event a firm requires liquidation." Customers' Securities and Funds, Exchange Act Release No. 9622, 37 Fed. Reg. 11687, 11687 (June 10, 1972). The Commission has explained: "The intent of the rule is to require a broker-dealer to hold customer assets in a manner that enables their prompt return in the event of an insolvency, which, in turn, increases the ability of the firm to wind down in an orderly self-liquidation and, thereby avoid the need for a

proceeding under the Securities Investor Protection Act of 1970." Amendments To Financial Responsibility Rules for Broker-Dealers, Exchange Act Rel. No. 55431 (Mar. 9, 2007), 72 Fed. Reg. 12862, 12862 (Mar. 19, 2007). Generally, in the event of a SIPA liquidation, the assets required to be segregated under Rule 15c3-3 become "customer property" under SIPA that is distributed to persons with accounts at the brokerage firm to satisfy their claims for the securities and funds that are or should be in those accounts.

### B. Rule 15c3-3 Continues to Apply to a Broker-Dealer After It Is Placed in SIPA Liquidation.

Section 15(c)(3) of the Exchange Act forbids a broker-dealer to "effect any transaction in * * * any security * * * in contravention of" Commission rules "with respect to the financial responsibility and related practices of brokers and dealers." In order to carry out the requirements of SIPA, Trustees must effect securities transactions–including purchasing securities to satisfy customer claims for missing securities, SIPA Section 8(d), 15 U.S.C. 78fff-2(d), and closing out open securities contracts, SIPA Section 8(e), 15 U.S.C. 78fff-2(e). The LBI Trustee is continuing to resolve claims for securities and close out transactions. *See* Dkt. No. 3842, Trustee's Fourth Interim Report for the Period May 11, 2010 Through October 26, 2010, at 6-18.

But a brokerage firm can only engage in securities transactions if it is registered with the Commission, Exchange Act (Section 15(a)(1), 15 U.S.C. 78o(a)(1)), and a firm registered with the Commission must comply with all Commission rules concerning "the financial responsibility and related practices of brokers and dealers"–which includes Rule 15c3-3. *See* Exchange Act Section 15(c)(3). The Commission can prevent a brokerage firm from withdrawing its registration. Exchange Act Rule 15b6-1(b), 17 C.F.R. 240.15b6-1(b). Indeed, the transactions Barclays seeks to compel–transfer of securities from the Reserve Bank Account and LBI's customer margin account at OCC–require that LBI be a registered broker-dealer. LBI remains a registered broker-dealer and, accordingly, cannot make withdrawals from its Reserve Bank Account except for the benefit of customers.

The fact that, in connection with the transfer of certain customer accounts from LBI to other broker-dealers, the Trustee also transferred assets without regard to whether or not there was a deficiency in the Reserve Bank Account does not mean that the Trustee could now transfer assets from the Reserve Bank Account to Barclays for Barclays's own use. When the Trustee transferred customer accounts to solvent broker-dealers pursuant to his authority under SIPA Section 9(f), 15 U.S.C. 78fff-3(f), these broker-dealers also assumed LBI's

obligations to those customers. The transfer of customer assets completed the transfer of the accounts. *See* Dkt. No. 2305, Statement of the U.S. Securities and Exchange Commission in Support of Trustee's Motion for Approval of the Trustee's Completion of Account Transfers for the Benefit of Customers. In contrast, transferring the assets at issue here to Barclays would be the transfer to a non-customer of assets that the law requires broker-dealers to segregate for the benefit of customers so that customer claims can be promptly satisfied by the broker-dealer.

Further, the Trustee's transfers of assets to other solvent broker-dealers did not directly benefit the receiving broker-dealers because those broker-dealers also assumed matching obligations to customers. The proposed transfer to Barclays of assets required to be held under Rule 15c3-3, on the other hand, would be for Barclay's proprietary benefit while there are unsatisfied customer claims, and would be inconsistent with Rule 15c3-3's and SIPA's purpose of protecting customers in the event of firm failure.

Finally, holding that Rule 15c3-3 ceases to apply upon commencement of a liquidation proceeding would undermine the purpose of the Reserve Bank Account to ensure that there are sufficient funds to make customers whole "in the event of an insolvency." Exchange Act Rel. No. 55431, 72 Fed. Reg. at 12862. It

would make little sense to terminate the protection of the Customer Protection Rule when customers need it most–when the brokerage firm fails.

### C. Transferring $769 Million in Securities Held in LBI's Reserve Bank Account Would Violate Rule 15c3-3 If the Transfer Would Increase the Deficiency in the Account, and LBI Would Not Have Sufficient Funds to Satisfy All Claims of the Remaining Customers.

Rule 15c3-3 provides several safeguards to ensure that the brokerage firm is setting aside adequate assets in its Reserve Bank Account. For example, the broker may not withdraw assets from its Reserve Bank Account unless it performs a computation showing that after the withdrawal, the Reserve Bank Account will still contain the minimum required funds. Rule 15c3-3(g), 17 C.F.R. 240.15c3-3(g).

According to the Trustee, if he transfers $769 million from the Reserve Bank Account, the original deficiency in the Reserve Bank Account will be increased, and there are not sufficient assets outside of the Reserve Bank Account to make up for the resulting shortfall. Assuming this is correct, transferring $769 million of assets to Barclays would violate two requirements under Rule 15c3-3. First, the transfer would violate the requirement that the Reserve Bank Account contain sufficient funds "at all times." Rule 15c3-3(e)(1), (2), 17 C.F.R. 240.15c3-3(e)(1), (2). Second, the transfer would violate the requirement that assets may be

withdrawn from the Reserve Bank Account only if they constitute a surplus over the required minimum balance. Rule 15c3-3(g).

> **D.  Transferring $507 Million in Assets Listed as a Debit Item in LBI's Rule 15c3-3 Customer Reserve Calculation Would Cause a Violation of the Rule If the Transfer Would Increase the Deficiency in the Reserve Bank Account, and LBI Would Not Have Sufficient Funds to Satisfy All Claims of the Remaining Customers**.

Rule 15c3-3 allows customer assets held by the broker-dealer to be used to finance certain customer-related transactions, and to be held in specified accounts for that purpose; holding the assets in these other accounts provides protections for customers similar to those provided by segregating them in the Reserve Bank Account. To the extent the assets are not being used for a purpose specified in the Rule, the broker-dealer must deposit an amount equal to the value of the assets in the Reserve Bank Account for the protection of customers. Consequently, transferring a customer asset being held in another account without making an equivalent deposit in the Special Reserve Account can result in a deficiency in the Reserve Bank Account.

Specifically, Commission Rule 15c3-3a provides the "Reserve Formula" that a broker must follow when calculating the minimum required balance for its Reserve Bank Account. Generally, the Reserve Formula requires a broker-dealer

to calculate the amount it owes its customers and the amount of funds generated through the use of customer securities (called credits), and compare this amount to the debit items, which include money owed by customers (*e.g.*, from margin lending) and certain other customer-related receivables, including required margin posted to certain clearing agencies as a consequence of customer securities transactions. If credits exceed debits, the broker-dealer must deposit the net amount in the Reserve Bank Account. *See* Rule 15c3-3 Reserve Requirements for Margin Related to Security Futures Products, Exchange Act Rel. No. 50295 (Aug. 31, 2004), 69 Fed. Reg. 54185, 54185 (Sept. 7, 2004).

Customers are not harmed by the fact that the debit items are not held in the Reserve Bank Account because "the debit items in the Reserve Formula," such as the assets in a clearing agency margin account, "can be liquidated at or near their contract values," and these assets "will be sufficient to satisfy all customer-related liabilities." *See* Net Capital Requirements for Brokers and Dealers; Amended Rules, Exchange Act. Rel. No. 18417 (Jan. 13, 1982), 47 Fed. Reg. 3512, 3513 (Jan. 25, 1982); *accord* Customer Protection Rule, Exchange Act Release No. 22499 (Oct. 3, 1985), 50 Fed. Reg. 41337, 41337 (Oct. 10, 1985).

According to the Trustee, LBI, when calculating the minimum balance for the Reserve Bank Account, counted as a debit $507 million held as margin at the

OCC for all option contracts written or purchased in customer accounts, thus reducing the total amount it deposited in its Reserve Bank Account. (Dkt. No. 2847, Trustee's Memorandum in Further Support of His Motion for Relief ¶ 62); Rule 15c3-3a, item 13 (listing customer margin at the OCC as a debit item). This $507 million was cash and securities deposited with the OCC by LBI as margin for customer options transactions, and was held in a customer account (as opposed to an LBI proprietary account) at OCC.[2] Once these assets were no longer needed as margin for customer transactions, OCC would have been required to return them to the LBI estate even if there had been a shortfall in LBI's proprietary account at OCC.[3]

The Trustee states that transfers of this $507 million will increase the shortfall in the Reserve Bank Account. In that event, the customers remaining at LBI will be deprived of the value of the margin deposits that had passed through LBI and been deposited in the OCC customer margin account. If, as the Trustee states, the estate does not have additional funds to make up the shortfall (Dkt. No. 2847, Trustee's Memorandum in Further Support of His Motion for Relief ¶ 63), the protections that Rule 15c3-3 was intended to provide – and that customers rely

---

[2] See OCC Bylaws, Article VI, Sections 3(a) and (e).

[3] See OCC Bylaws Article I, Sections R(7) and (8).

on when depositing cash and securities with broker-dealers – will not be available, and the transfer of the $507 million debit item will cause a violation of Rule 15c3-3's requirement that the Reserve Bank Account contain sufficient funds "at all times." Rule 15c3-3(e)(1), (2).

## CONCLUSION

For these reasons, transferring $769 million in securities held in LBI's Reserve Bank Account would violate Rule 15c3-3, and transferring $507 million in assets listed as a debit item in the Rule 15c3-3 customer reserve calculation would cause a violation of the Rule, if the transfers would increase the deficiency in the account, and LBI would not have sufficient funds to satisfy all claims of the remaining customers.

                          Respectfully submitted,

                          By: /s/ Patricia Schrage
                          Patricia Schrage (PS 1753)
                          U.S. Securities and Exchange Commission
                          3 World Financial Center
                          New York, NY 10281
                          (212) 336-0163

                          Jacob H. Stillman, Solicitor
                          Katharine B. Gresham, Assistant General Counsel
                          Mark Pennington, Assistant General Counsel
                          Dimple Gupta, Attorney
                          U.S. Securities and Exchange Commission
                          100 F Street, N.E.
                          Washington, D.C. 20549-8030B

Of Counsel:                202-551-5005 (Gupta)
Alistaire Bambach

November 22, 2010