B 210A (Form 210A) (12/09)

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re **Lehman Brothers Holdings Inc.**                                    Case No. **08-13555**

### TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| | |
|---|---|
| **ILLIQUIDX LTD** | **SWISS ASSET & RISK MANAGEMENT AG** |
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee should be sent:

Court Claim # (if known): **48858**
Total Amount of Claim Filed:
USD $ 1,420,100.00
Amount of Claim Transferred:
$ 1,420,100.00 (equivalent to 1,000,000.00 Euro)
ISIN/CUSIP: XS0318943791
Date Claim Filed: November 2, 2009

**Celestino Amore**
**Managing Director**
**Illiquidx Ltd**
**107-111 Fleet Street**
**London EC4A 2AB, UK**
**Phone: +44 207 936 9309**
**Email: amore@illiquidx.com**

Name and Address where transferee payments should be sent (if different from above):

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:_____        Date:  November 22, 2010
    Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

Form 210B (12/09)

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re **Lehman Brothers Holdings Inc.**                    **Case No. 08-13555**

## NOTICE OF TRANSFER OF CLAIM
## OTHER THAN FOR SECURITY

Claim No. **48858** was filed or deemed filed under 11 U.S.C. § 1111(a) in this case by the
alleged transferor. As evidence of the transfer of that claim, the transferee filed a Transfer of Claim
Other than for Security in the clerk's office of this court on **November 22, 2010.**

**SWISS ASSET & RISK MANAGEMENT AG**          **ILLIQUIDX LTD**
Name of Alleged Transferor                    Name of Transferee


Address of Alleged Transferor:                Address of Transferee:

**Swiss Asset & Risk Management AG**          **Illiquidx Ltd**
**Bahnhofstrasse 4**                          **107-111 Fleet Street**
**6431 Schwyz**                               **London EC4A 2AB**
**Switzerland**                               **United Kingdom**


~~DEADLINE TO OBJECT TO TRANSFER~~
The alleged transferor of the claim is hereby notified that objections must be filed with the court
within twenty-one (21) days of the mailing of this notice. If no objection is timely received by the
court, the transferee will be substituted as the original claimant without further order of the court.


Date:_____                    _____
                                  CLERK OF THE COURT

## AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
## LEHMAN PROGRAM SECURITY

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    For value received, the adequacy and sufficiency of which are hereby acknowledged, **Swiss Asset & Risk Management AG** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **IlliquidX Ltd** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the nominal amount specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to Proof of Claim Number 48858 filed by or on behalf of Seller (the "Proof of Claim") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim and any and all of Seller's right, title and interest in, to and under any right or remedy of Seller or any prior seller against any prior seller in respect of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 (as "Lehman Programs Securities to which Transfer Relates") attached hereto together with all rights and claims of the Seller against the issuer of each Purchased Security in respect thereof.

2.    Seller hereby represents and warrants to Purchaser that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; and (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors; and (g) as of the date hereof, amounts due and owing by Lehman Brothers Treasury Co. B.V. as issuer in respect of each Purchased Security have not been accelerated.

3.    Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges

and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.      Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.      Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.      This Agreement and Evidence of Transfer of Claim is subject to successful completion by the Purchaser on the date hereof of an on-sale by the Purchaser of the Transferred Claims and the Purchased Securities (the "Subsequent Sale") to be executed with a third party purchaser ("Subsequent Purchaser"). In the event that such Subsequent Purchase is not successfully completed on the date hereof (including receipt by the Purchaser from the Subsequent Purchaser of the full purchase price for such Subsequent Purchase for value on the date hereof), the Transferred Claims and the Purchased Securities shall be returned to the Seller and the purchase obligations of the Purchaser (including, without limitation, any obligation to pay purchase price) under this Agreement and Evidence of Transfer of Claim shall be cancelled accordingly.

8.      Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 17th day of November 2010.

Swiss Asset & Risk Management AG                          Illiquidx Ltd

By: _____    _____        By: _____
Name: _____   _____         Name: Celestino Amore
Title: _____    _____         Title: Managing Director

Bahnofstrasse 4                                          107-111 Fleet Street
6431 Schwyz                                              London EC4A 2AB
SWITZERLAND                                              UNITED KINGDOM

Schedule 1

**Transferred Claims**

**Purchased Claim**

100% of EUR1,000,000,00 which is the equivalent of $1,420,100.00 (the outstanding amount of ISIN/CUSIP XS0318943791 as described in the Proof of Claim as of 17th November, 2010), plus all accrued interest, fees and other recoveries due.

**Lehman Programs Securities to which Transfer Relates**

| Description of Security | ISIN/CUSIP | Issuer | Guarantor | Principal/Notional Amount | Coupon | Maturity | U.S. $ Amount claimed in Proof of Claim with respect to Lehman Programs Securities to which Transfer relates |
|---|---|---|---|---|---|---|---|
| Issue of EUR2,000,000 FX-Linked Notes due March 2010 Guaranteed by Lehman Brothers Holdings Inc. under the U.S.$100,000,00 0,000 Euro Medium-Term Note Program | XS0318943791 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | 100% of the ISIN/CUSIP XS0318943791 under the Proof of Claim, which is EUR1,000,000 (which is equivalent of USD $1,420,100 ), plus all accrued interest, fees and recoveries due. | Not applicable | 14th of March 2010 | EUR1,000,000 (which is equivalent of USD $1,420,100) (using an exchange rate of EUR/USD = 1,4201), plus all accrued interest, fees and recoveries due. |

**United States Bankruptcy Court/Southern District of New York**

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: | Chapter 11 |
| Lehman Brothers Holdings Inc., et al., Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

## LEHMAN SECURITIES PROGRAMS PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000048858

THIS SPACE IS FOR COURT USE ONLY

---

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Swiss Asset & Risk Management AG
Bahnhofstrasse 4
6431 Schwyz
Switzerland

Telephone number: +41 41 817 90 50    Email Address: info@swiar.ch

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number: _____    Email Address: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

---

**1.** Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim: $ 1'420'100.—    **(Required)**

☐ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

**2.** Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN):** XS0318943791    **(Required)**

**3.** Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:**

CA95380    **(Required)**

**4.** Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:**

Clearstream Luxembourg A/c 83320    **(Required)**

**5. Consent to Euroclear Bank, Clearstream Bank or Other Depository:** By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

FOR COURT USE ONLY
**FILED / RECEIVED**

OCT 27 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date. 15 Oct 2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

**SWI/\R**
Swiss Asset & Risk Management AG

for information:
Pascal Huelin
Phone: 041 817 70 50
Email: pascal.huelin@swiar.ch

**Registered Mail**
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076
U.S.A.

Schwyz, 16. October 2009

---

☐ for your information    ☐ as discussed         ☐ kindly complete

☒ for your file           ☒ for your signature   ☒ kindly return

☐ kindly acknowledge      ☐ for your action      ☐ for your comment
   receipt
☐                         ☐

---

**Claim Forms**

Dear Sir or Madam,

Please find attached seven claim forms for Lehman. Kindly confirm receipt by returning a copy of each, duly signed. We have enclosed a return envelope (as we cannot get US stamps here, we couldn't send you a stamped self-addressed envelope).

Yours sincerely,

**Swiss Asset & Risk Management AG**

Pascal Huelin          Manfred Villiger
Director               Director




20.10.89   005.00

CH-6430
Schwyz

729768

R Suisse
BP-LET

DIEPOST



CH-6430 Schwyz
Taxe erhoben:
taxe perçue:   9 c 80

9.80

RECEIVED
OCT 27 2009

**Execution Copy**

Final Terms dated 14 September 2007

## LEHMAN BROTHERS TREASURY CO. B.V.

### Issue of EUR 2,000,000 FX-Linked Notes due March 2010
### Guaranteed by Lehman Brothers Holdings Inc.
### under the U.S.$100,000,000,000
### Euro Medium-Term Note Program

The Base Prospectus referred to below (as completed by these Final Terms) has been prepared on the basis that, except as provided in sub-paragraph (ii) below, any offer of Notes in any Member State of the European Economic Area which has implemented the Prospectus Directive (2003/71/EC) (each, a "**Relevant Member State**") will be made pursuant to an exemption under the Prospectus Directive, as implemented in that Relevant Member State, from the requirement to publish a prospectus for offers of the Notes. Accordingly any person making or intending to make an offer of the Notes may only do so:

(i)        in circumstances in which no obligation arises for the Issuer or any Dealer to publish a prospectus pursuant to Article 3 of the Prospectus Directive or supplement a prospectus pursuant to Article 16 of the Prospectus Directive, in each case, in relation to such offer; or

(ii)       in those Public Offer Jurisdictions mentioned in Paragraph 35 of Part A below, provided such person is one of the persons mentioned in Paragraph 35 of Part A below and that such offer is made during the Offer Period specified for such purpose therein.

Neither the Issuer, the Guarantor nor any Dealer has authorised, nor do they authorise, the making of any offer of Notes in any other circumstances.

## PART A – CONTRACTUAL TERMS

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated July 24, 2007 which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "*Prospectus Directive*"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with such Base Prospectus.

There are significant risks associated with the notes described above including, but not limited to interest rate risk, price risk, liquidity risk, redemption risk, and credit risk. Especially, investors in the Notes are exposed to the risks of changes in the foreign exchange rates and interest rates to which the Reference Currencies (being the Euro); the volatility in the currency pair (being Euros and U.S. Dollars), as well as the credit risk of the Issuer and the Guarantor and accordingly the Notes may fall due for redemption at a value substantially below the return which could be earned on other investments.

Investors should consult their own financial, legal, accounting, and tax advisors about the risks associated with an investment in these notes, the appropriate tools to analyze that investment, and the suitability of that investment in each investor's particular circumstances. No investor

**Execution Copy**

should purchase the notes described above unless that investor understands and has sufficient financial resources to bear the price, market, liquidity, structure, redemption, and other risks associated with an investment in these notes.

Full information on the Issuer and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus.

| | | |
|---|---|---|
| 1. | (i) Issuer: | Lehman Brothers Treasury Co. B.V. |
| | (ii) Guarantor: | Lehman Brothers Holdings Inc. |
| 2. | (i) Series Number: | 8238 |
| | (ii) Tranche Number: | 1 |
| 3. | Specified Currency or Currencies: | Euro ("**EUR**") |
| 4. | Aggregate Nominal Amount: | |
| | (i) Series: | EUR 2,000,000 |
| | (ii) Tranche: | EUR 2,000,000 |
| 5. | Issue Price: | 100 per cent. of the Aggregate Nominal Amount (fees have been paid in relation to the distribution of the Notes). |
| 6. | Specified Denomination(s) and Units | |
| | (i) Specified Denomination(s): | EUR 1,000 |
| | (ii) Calculation Amount: | Specified Denomination (EUR 1,000) |
| | (iii) Trading in Units: | Not Applicable |
| 7. | (i) Issue Date: | 14 September 2007 |
| | (ii) Interest Commencement Date: | Not Applicable |
| 8. | Maturity Date: | 14 March 2010 |
| 9. | Interest Basis: | Not Applicable |
| 10. | Redemption/Payment Basis: | The Redemption Amount payable on redemption is linked to a Reference Exchange Rate, as specified in Part C |
| 11. | Change of Interest or Redemption/Payment Basis: | Not Applicable |
| 12. | Put/Call Options: | Not Applicable |
| 13. | (i) Status of the Notes: | Senior Notes |

Execution Copy

| | (ii) Status of the Guarantee: | Senior Guarantee |
|---|---|---|
| 14. | Method of distribution: | Non-syndicated |

## PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE

| 15. | **Fixed Rate Note Provisions** | Not Applicable |
|---|---|---|
| 16. | **Floating Rate Note Provisions** | Not Applicable |
| 17. | **Zero Coupon Note Provisions** | Not Applicable |
| 18. | **Index-Linked Interest Note/Other Variable-Linked Interest Note Provisions** | Not Applicable |
| 19. | **Dual Currency Note Provisions** | Not Applicable |

## PROVISIONS RELATING TO REDEMPTION

| 20. | **Call Option** | Not Applicable |
|---|---|---|
| 21. | **Put Option** | Not Applicable |
| 22. | **Final Redemption Amount of each Note:** | |
| | In cases where the Final Redemption Amount is Index-Linked or other variable-linked | |

| | (i) | Index/Formula/variable: | As specified in Part C |
|---|---|---|---|
| | (ii) | Calculation Agent responsible for determining the Final Redemption Amount | Lehman Brothers International (Europe) |
| | (iii) | Provisions for determining Final Redemption Amount where calculated by reference to Index and/or Formula and/or other variable: | As specified in Part C |
| | (iv) | Provisions for determining Final Redemption Amount where calculation by reference to Index and/or Formula and/or other variable is impossible or impracticable or otherwise disrupted: | As specified in Part C |
| | (v) | Payment Date: | As specified in Part C |
| | (vi) | Minimum Final Redemption Amount: | 100% of Specified Denomination as specified in Part C |

3

Execution Copy

|  |  |  |  |
|---|---|---|---|
| (vii) | Maximum Final Redemption Amount: | Not Applicable |

**23.** **Early Redemption Amount of each Note**

Early Redemption Amount(s) per Calculation Amount payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in the Conditions):

Early redemption for taxation reasons: in respect of each Note, an amount calculated by the Calculation Agent, acting in good faith and a commercially reasonable manner, as the market value of the Notes (disregarding credit risk of the Issuer) determined after taking into account any Unwind Costs in respect of such Note, together with any interest accrued but unpaid, on such day as is selected by the Calculation Agent in its sole and absolute discretion provided that there shall be no amount payable on account of accrued interest in case of early redemption of the Notes for taxation reasons or on event of default (on a date other than an Interest Payment Date).

"**Unwind Costs**" mean an amount equal to the greater of:

(a) the EUR value of any transfer or stamp tax cost, any early redemption or termination cost, if any, payable by the Issuer and/or Calculation Agent, as determined by the Calculation Agent, in its sole and absolute discretion, in relation to any swap agreement, financing arrangement or other hedging transaction entered into by, or on behalf of, the Calculation Agent or the Issuer in relation to the issuance of the Notes; and

(b) zero.

Early redemption on event of default: in respect of each Note, an amount equal to par, there shall be no amount payable on account of accrued interest in case of early redemption of the Notes for taxation reasons or on event of default (on a date other than an Interest Payment Date).

**GENERAL PROVISIONS APPLICABLE TO THE NOTES**

**24.** Form of Notes:

Bearer form. Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form. Interests in a permanent global Note will be exchangeable for definitive Notes in bearer form in the limited circumstances described in

4

|  |  | the permanent global Note. |
|---|---|---|
|  | New Global Note Form: | Not Applicable |

| 25. | Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature): | Not Applicable |
|---|---|---|
| 26. | Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment: | Not Applicable |
| 27. | Details relating to Instalment Notes: Instalment Amounts and Instalment Dates: | Not Applicable |
| 28. | Details relating to Extendible Notes: | Not Applicable |
| 29. | Consolidation provisions: | The provisions in Condition 18 (Further Issues of Notes) apply |
| 30. | Other final terms: | As specified in Part C |

**DISTRIBUTION**

| 31. | (i) | If syndicated, names and addresses of Managers and underwriting commitments: | Not Applicable |
|---|---|---|---|
|  | (ii) | Date of Syndicated Trade Agreement: | Not Applicable |
|  | (iii) | Stabilizing Manager (if any): | Not Applicable |
| 32. |  | If non-syndicated, name and address of Dealer: | Lehman Brothers International (Europe) 25 Bank Street, London, E14 5LE |
| 33. |  | Total commission and concession: | Not Applicable |
| 34. |  | Selling restrictions: |  |
|  | (i) | Additional Selling Restrictions: | **European Prospectus Directive Selling Restriction:** As of the date hereof the Notes have not been approved by any competent authority for the purposes of making a non-exempt public offer in any EEA member state which has implemented the "Prospectus Directive" and as such, until such time as a |

5

**Execution Copy**

prospectus has been published, must only be offered within such states in circumstances which do not require the publication of a prospectus pursuant to Article 3 of the Prospectus Directive. These circumstances may include:

(1) Offers to Qualified Investors (as defined in the Prospectus Directive); or

(2) Offers of Notes where the minimum consideration per separate offer is at least Euro 50,000

35.  Non-exempt Offer:                 Not Applicable

**Execution Copy**

## PURPOSE OF FINAL TERMS

These Final Terms comprise the final terms required for issue of the Notes described herein pursuant to the U.S.$100,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.

## RESPONSIBILITY

The Issuer accepts responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer:

By: ................................................................
     Duly authorised

Series 8238

Execution Copy

## PART B – OTHER INFORMATION

1.  **LISTING**

    (i)     Listing:                          None

    (ii)    Admission to Trading:             Not Applicable

    (iii)   Cost of admission to trading      Not Applicable

2.  **RATINGS**

    Ratings:                                  The Program has been rated:

                                              **Standard & Poor's**

                                              Senior Debt (Long term)     A+

                                              Subordinated debt           A

                                              Senior Debt (Short term)    A-1

                                              An obligation rated 'A' is somewhat more susceptible to the adverse effects of changes in circumstances and economic conditions than obligations in higher-rated categories. However, the obligor's capacity to meet its financial commitment on the obligation is still strong. Negative means that a rating may be lowered. The addition of a plus (+) sign shows relative standing within the major rating categories.

                                              A short-term obligation rated 'A-1' is rated in the highest category by Standard & Poor's. The obligor's capacity to meet its financial commitment on the obligation is strong.

                                              **Moodys**

                                              Senior Debt (Long term)     A1

                                              Subordinated debt           A2

                                              Debt ratings (Short term)   Prime-1

                                              Obligations rated A are considered upper-medium grade and are subject to low credit risk. The modifier 1 indicates that the obligation ranks in the higher end of its generic rating category and the modifier 2 indicates a mid-range ranking.

8

Execution Copy

Issuers (or supporting institutions) rated Prime-1 have a superior ability to repay short-term debt obligations.

**Fitch**

Senior Debt (Long term)  AA-

Subordinated debt  A+

Senior Debt (Short term)  F1+

**AA-**

Very high credit quality. 'AA' ratings denote expectations of very low credit risk. They indicate very strong capacity for payment of financial commitments. This capacity is not significantly vulnerable to foreseeable events. The modifier "-" denotes relative status within this rating category.

**A+**

High credit quality. 'A' ratings denote expectations of low credit risk. The capacity for payment of financial commitments is considered strong. This capacity may, nevertheless, be more vulnerable to changes in circumstances or in economic conditions than is the case for higher ratings. The modifier "+" denotes relative status within this rating category.

**F1+**

Highest credit quality. Indicates the strongest capacity for timely payment of financial commitments; the added "+" denotes any exceptionally strong credit feature.

3.    **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

"Save as discussed in "Subscription and Sale", so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer."

4.    **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES**

Execution Copy

|   (i) | Reasons for the offer: | The net proceeds from each issue of Notes will be used for the general corporate purposes of the Group. |
|---|---|---|
| (ii) | Estimated net proceeds: | EUR 2,000,000 |
| (iii) | Estimated total expenses: | Not Applicable |

5. **YIELD (Fixed Rate Notes only)**

   Indication of yield:                          Not Applicable

6. **HISTORIC INTEREST RATES (Floating Rate Notes only)**

   Not Applicable

7. **PERFORMANCE OF INDEX/ FORMULA/ OTHER VARIABLE, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS AND OTHER INFORMATION CONCERNING THE UNDERLYING (Index-linked or other variable Linked Notes only)**

   Not Applicable

8. **PERFORMANCE OF RATE[S] OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (Dual Currency Notes only)**

   Not Applicable

9. **OPERATIONAL INFORMATION**

   | ISIN Code: | XS0318943791 |
   |---|---|
   | Common Code: | 031894379 |
   | CUSIP No.: | Not Applicable |
   | New Global Note intended to be held in a manner which would allow Eurosystem eligibility: | Not Applicable |
   | Any clearing system(s) other than Euroclear and Clearstream, Luxembourg and the relevant identification number(s): | Valoren: 3372605 |
   | Delivery: | Delivery against payment |
   | The Aggregate Nominal Amount of Notes issued has been translated into U.S. Dollars at the rate of EUR 0.73767 =$1 producing a sum of (for Notes not denominated in U.S. Dollars): | $2,711,239.44 |

10

**Execution Copy**

|  | Names and addresses of Additional Paying Agent(s) (if any): | Not Applicable |
|---|---|---|
| 10. | **TERMS AND CONDITIONS OF THE OFFER** | Not Applicable |

### PART C- OTHER APPLICABLE TERMS

1. **FINAL REDEMPTION AMOUNT**

If the Notes have not previously been redeemed, or purchased and cancelled in accordance with the Conditions (as supplemented and amended herein), the Issuer shall redeem the Notes on the Maturity Date (provided that such day is a Business Day, subject to adjustment in accordance with the Business Day Convention) at the Final Redemption Amount in respect of each Note (of the Specified Denomination) which shall be an amount in EUR equal to the Specified Denomination of each Note plus the Additional Amount, if any, as determined by the Calculation Agent.

Where:

**"Additional Amount"** means, with respect to each Note of the Specified Denomination, a single EUR amount, as determined by the Calculation Agent, on the Maturity Date in accordance with the following formula:

$$SD * Max (Strike / Settlement Rate - 1; 0)$$

where:

**"SD"** means, in respect of each Note, the Specified Denomination (being EUR 1,000).

**"Max"** followed by brackets means whichever is the greater of the amounts separated by a semi-colon inside those brackets.

**"Strike"** means, 155.00.

**"Settlement Rate"** means, for the Reference Currency, the Reference Exchange Rate on the Valuation Date, according to the applicable Settlement Rate Option, as determined by the Calculation Agent in good faith and in a commercially reasonable manner (including but not limited to making such adjustments as are necessary to published quoting conventions, and/or implying the Reference Exchange Rate from one or more Settlement Rate Option in relation to a single Reference Currency).

**"Reference Exchange Rate"** means, the spot exchange rate for the Reference Currency quoted against the Euro (**"EUR"**), expressed as a number of JPY currency units per EUR 1.

**"Settlement Rate Option"** means, in respect of the Reference Currency, the spot rate for a Valuation Date will be the Japanese Yen/Euro official fixing rate, expressed as the amount of Japanese Yen per one EUR which appears on Reuters Screen ECB37 to the right of the caption "JPY" at approximately 2:15 p.m., Central European time, on that Valuation Date.

2. **CERTAIN OTHER DEFINITIONS**

The following words and expressions have the following meanings:

12

Execution Copy

"**Business Day**" means, any day on which the Trans-European Automated Real-Time Gross Settlement Express Transfer (TARGET) System is open.

"**Business Day Convention**" means, Modified Following Business Day Convention.

"**Reference Currency**" means, Japanese Yen ("**JPY**").

"**Valuation Date**" means, 24 February 2010, provided that such day is a Business Day, otherwise the Valuation Date shall be the immediately preceding Business Day.

3.    **MARKET DISRUPTION EVENTS**

"**Disruption Event**" means, as determined by the Calculation Agent in good faith:

(A)    the occurrence and/or existence of an event on any day that has the effect of preventing, delaying or making impossible:

(i)    the conversion of the Reference Currency (x) into EUR and/or USD as appropriate through customary legal channels; or (y) at a rate at least as favourable as the rate for domestic institutions located in the country for which such Reference Currency is the lawful currency (such jurisdiction with respect to such Reference Currency, the "**Reference Currency Jurisdiction**"); or

(ii)    the delivery of: (x) EUR and/or USD as appropriate from accounts inside the Reference Currency Jurisdiction to accounts outside that Reference Currency Jurisdiction; or (y) of the Reference Currency between accounts inside the Reference Currency Jurisdiction or to a party that is a non-resident of Reference Currency Jurisdiction;

(B)    the occurrence of any event causing the Settlement Rate specified in any Settlement Rate Option to be split into dual or multiple currency exchange rates;

(C)    the occurrence of an event that results in no Settlement Rate being available for the Reference Currency, or the occurrence of an event that generally makes it impossible to obtain the Settlement Rate for the Reference Currency on the relevant Valuation Date or either of the two Business Days immediately following such Valuation Date; or

(D)    the occurrence and/or existence of any event (other than those set forth in (A) – (C) above) with respect to the Reference Currency that prevents, delays or makes impossible:    (x) the Calculation Agent's ability to calculate the Additional Amount; (y) the Issuer's fulfilment of its obligations under the Notes; or (z) the ability of the Issuer or any of its affiliates through which it hedges its position under the Notes to hedge such position or to unwind all or a material portion of such hedge.

4.    **FALLBACK PROVISIONS**

13

Execution Copy

If, on the Valuation Date, a Disruption Event occurs with respect to the Reference Currency (each a "**Disrupted Reference Currency**"), then the Calculation Agent, acting in good faith and a commercially reasonable manner, shall determine the relevant Settlement Rate with respect to such Disrupted Reference Currency and the corresponding Additional Amount.

5.    **RESPONSIBILITY**

None of the Calculation Agent and the Issuer shall have responsibility to holders of the Notes for good faith errors or omissions in the Calculation Agent's calculations and determinations as provided in the Conditions, whether caused by negligence or otherwise. The calculations and determinations of the Calculation Agent shall be made in accordance with the Conditions (having regard in each case to the criteria stipulated herein and where relevant on the basis of information provided to or obtained by employees or officers of the Calculation Agent responsible for making the relevant calculation or determination) and shall, in the absence of manifest error, be final, conclusive and binding on the holders of the Notes.  Holders of the Notes shall not be entitled to make any claim against the Calculation Agent or the Issuer.