WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger
Richard L. Levine
Meredith B. Parenti

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                  :
In re                                             :     **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,      :     **08-13555 (JMP)**
                                                  :
                       **Debtors.**               :     **(Jointly Administered)**
                                                  :
-------------------------------------------------------------------x

**DEBTORS' NOTICE OF MOTION PURSUANT TO SECTION 105(a) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) FOR AUTHORIZATION
AND APPROVAL OF THE SETTLEMENT BETWEEN LEHMAN BROTHERS
FINANCIAL PRODUCTS INC., MADISON AVENUE STRUCTURED FINANCE CDO I,
LTD., MADISON AVENUE STRUCTURED FINANCE CDO I, CORP., METLIFE
INVESTMENT ADVISORS COMPANY LLC, AND
U.S. BANK NATIONAL ASSOCIATION**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of

November [  ], 2010 (the "Motion"), of debtor Lehman Brothers Financial Products Inc.

("LBFP") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors in possession (together, the "Debtors"), pursuant to section 105(a) of title 11 of the

United States Code and section 9019 of the Federal Rules of Bankruptcy Procedure for

authorization and approval of the settlement between LBFP and Madison Avenue Structured

Finance CDO I, Ltd., Madison Avenue Structured Finance CDO I, Corp., MetLife Investment

Advisors Company LLC, and U.S. Bank National Association, as more fully described in the

Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on **December 15, 2010 at 10:00 a.m. (Prevailing Eastern Time)** (the "<u>Hearing</u>").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, and shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard L. Levine, Esq., attorneys for the Debtor; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and Tracy Hope Davis, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, (v) Quinn Emanuel Urquhart & Sullivan, LLP, 51 Madison Avenue, 22nd Floor, New York, New York 10010, Attn: Eric Winston, Esq. and Scott Shelley,

Esq. (vi) Chapman and Cutler LLP, 111 West Monroe Street, Chicago, IL 60603, Attn: James E.

Spiotto, Esq., Ann E. Acker, Esq., and Franklin H. Top, III, Esq., attorneys for U.S. Bank

National Association, as Trustee and (vii) Bingham McCutchen LLP, 399 Park Avenue, New

York, NY 10022, Attn: Joshua Dorchak, Esq. and Kenneth A. Kopelman, Esq., attorneys for

MetLife Investment Advisors Company, LLC, as collateral manager, so as to be so filed and

received no later than **December 8, 2010 at 4:00 p.m. (prevailing Eastern Time) (the**

**"Objection Deadline")**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: New York, New York
         November 23, 2010

/s/ Richard L. Levine
Peter Gruenberger
Richard L. Levine
Meredith B. Parenti

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Peter Gruenberger
Richard L. Levine
Meredith B. Parenti

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------------x
                                                  :
**In re**                                         :    **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*      :    **08-13555 (JMP)**
                                                  :
                              **Debtors.**        :    **(Jointly Administered)**
                                                  :
---------------------------------------------------------------------x

**MOTION OF THE DEBTORS PURSUANT TO SECTION 105(a) OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) FOR AUTHORIZATION**
**AND APPROVAL OF THE SETTLEMENT BETWEEN LEHMAN BROTHERS**
**FINANCIAL PRODUCTS INC., MADISON AVENUE STRUCTURED FINANCE CDO I,**
**LTD., MADISON AVENUE STRUCTURED FINANCE CDO I, CORP., METLIFE**
**INVESTMENT ADVISORS COMPANY LLC, AND**
**U.S. BANK NATIONAL ASSOCIATION**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

         Debtor Lehman Brothers Financial Products Inc. ("LBFP") and its affiliated

debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession, submit

this motion (the "Motion") and respectfully represent:

### Relief Requested

         1.       By this Motion, pursuant to Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors seek authority to enter into a

Settlement Agreement (as defined below) with Madison Avenue Structured Finance CDO I, Ltd. and Madison Avenue Structured Finance CDO I, Corp., as "Issuers" (collectively, "Madison Ave." or the "Issuers"), U.S. Bank National Association, as "Trustee" ("US Bank"), and MetLife Investment Advisors Company, LLC, as "Collateral Manager" ("MetLife") (LBFP, Madison Ave., US Bank, and MetLife are each referred to as "Party" and collectively as the "Parties").

### Background

2.    Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and certain of its subsidiaries, including LBFP, (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to section 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

4.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

5.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and, by order dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the

Examiner.  On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531].

6.      On September 17, 2009, the Court entered the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts [Docket No. 5207] (the "ADR Procedures Order").

7.      On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 7572].  On April 14, 2010, the Debtors filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

8.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

9.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman has been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.

10.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**The ADR Process**

11.     On February 24, 2010, LBFP served an ADR notice on the Parties under the ADR Procedures Order.  On April 12, 2010, MetLife and US Bank served their responses, and LBFP served its reply on April 27, 2010.  On October 21, 2010, LBFP, MetLife, US Bank, and the Creditors' Committee engaged in mediation pursuant to the ADR Procedures Order, resulting in the settlement described below.

**The Adversary Proceeding**

12.     On September 14, 2010, LBFP filed an adversary proceeding against US Bank and Madison Ave. to challenge various provisions (the "Modification Provisions") in governing transaction documents with respect to certain derivatives transactions (the "Derivative Transactions"), the application of which were conditioned on the commencement of LBFP's bankruptcy case, that would operate so as to allegedly deprive LBFP of a valuable property interest by (a) eliminating LBFP's contractual right to senior payment priority ("Senior Payment Priority"), (b) replacing such Senior Payment Priority with junior payment priority ("Junior Payment Priority"), and (c) transferring Senior Payment Priority to or for the benefit of certain noteholders (the "Noteholders") who otherwise would have only Junior Payment Priority, resulting in certain circumstances in the elimination of LBFP's right to payment altogether. Adversary Proc. No. 10-3543 (JMP) (the "Adversary Proceeding").  The transactions at issue here are described in further detail in LBFP's complaint filed in the Adversary Proceeding.

13.     In the Adversary Proceeding, LBFP seeks a declaratory judgment that the Modification Provisions constitute unenforceable *ipso facto* clauses that inappropriately modify a debtor's interest in property in violation of sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.  LBFP also seeks a declaratory judgment that effecting the Modification Provisions

violates the automatic stay under section 362(a)(3) of the Bankruptcy Code because it involves an improper exercise of control over property of LBFP's estate.  In the alternative, LBFP seeks a declaratory judgment that, if the Modification Provisions ultimately are found to be enforceable in whole or in part, they constituted either (a) a preferential transfer of an interest of LBFP in property that may be avoided under section 547 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBFP's estate under section 551 of the Bankruptcy Code; (b) a constructive fraudulent transfer of an interest of LBFP in property that may be avoided under section 548(a)(1)(B) of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBFP's estate under section 551 of the Bankruptcy Code; or (c) an unauthorized postpetition transfer of property of LBFP's estate that may be avoided under section 549 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of LBFP's estate under section 551 of the Bankruptcy Code.

14.    On October 20, 2010, the Court granted Debtors' motion to stay avoidance actions, including the Adversary Proceeding, for nine months so that, *inter alia*, parties could attempt to consensually resolve their disputes and enter into settlement agreements [Docket No. 12199].

## The Settlement

15.    On October 21, 2010, LBFP, MetLife, and US Bank engaged in mediation pursuant to the Court's ADR Procedures Order and reached a settlement of the claims asserted by LBFP in the ADR Notice and of the Adversary Proceeding (the "Settlement"), the terms of which are reflected in a termination agreement (the "Settlement Agreement") that is annexed hereto (with the settlement payment amount redacted in the filed version) as Exhibit A.  The

Creditors' Committee participated in the mediation and is fully informed of the terms of the settlement. Entry of an order in the form annexed hereto as Exhibit B by this Court is a condition precedent to the effectiveness of the Settlement.

16.    Although LBFP believes its claims against Madison Avenue are valid, LBFP has determined in its business judgment that the terms of the Settlement make entry into the Settlement in the best economic interest of its estate. Absent consummation of the Settlement, the Parties would proceed with litigation, which could include time-consuming and expensive legal proceedings and multiple potential appeals. The Settlement will enable LBFP to avoid spending significant amounts of its limited resources and the Debtors believe it will likely maximize recoveries for creditors.

## The Settlement

17.    Upon the entry of an order that becomes final approving this Motion, the Settlement Agreement will be effective, including the following salient terms:

- a payment by Madison Ave. to LBFP in the amount of $[ ] (the "Settlement Payment").[1]

- the Parties will exchange a mutual release of all claims related to the Transactions and the Adversary Proceeding.

- upon approval by the Court of this Motion, the Debtors will file a motion to dismiss the Adversary Proceeding with prejudice.

- each party will bear its own costs and expenses relating to the ADR process (except as provided in paragraph 15 of the ADR Procedures Order), the Adversary Proceeding and the Settlement Agreement.

---

[1] In keeping with the confidentiality provisions of paragraph 13 of the ADR Procedures Order, and due to the Parties' mutual desire to keep the settlement amount confidential, it is redacted from the publicly filed version of this Motion but the unredacted Motion containing the settlement amount will be presented to the Court, the U.S. Trustee, and the Creditors' Committee, and will be distributed by US Bank to Madison Avenue's Noteholders.

18.     The Creditors' Committee has consented to the terms of the Settlement Agreement.

## The Controlling Legal Standard

19.     Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement." FED. R. BANKR. P. 9019(a).  Before granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate. *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira (In re 47-49 Charles St., Inc.)*, 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).

20.     The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness."  *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

21.     While a court must "evaluate . . . all . . . factors relevant to a fair and full assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699 F.2d at 608, or conduct a full independent investigation.  *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991).  "[T]he bankruptcy judge does not have to

decide the numerous questions of law and fact. . . .  The court need only canvass the settlement to determine whether it is within the accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

22.    The court may give weight to the informed judgment of the debtor that a compromise is fair and equitable.  *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993); *In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but only that I test his choice for reasonableness . . . .  If the Trustee chooses one of two reasonable choices, I must approve that choice, even if, all things being equal, I would have selected the other").

23.    Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs*, 156 B.R. at 427.  Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

### The Settlement Should Be Approved and the Motion Granted

24.    LBFP believes that the Settlement is fair, equitable, and in the best interests of its estate.  *See Anderson*, 390 U.S. at 424.  First, the settlement will result in a substantial payment to LBFP's estate.  Second, LBFP has determined, in the exercise of its business judgment, that such payment will adequately compensate the estate for the value of its claims relating to the Transactions.  Third, the Settlement will avoid future disputes and litigation concerning the Transactions because the parties have agreed to release one another from claims thereunder.  Thus, the Settlement Agreement will allow LBFP to capture significant value for its

estate, while avoiding the costs and uncertainties associated with litigation. In addition, the Creditors' Committee was consulted with regard to and consented to the amount sought in the ADR Notice, participated in the Mediation, and supports the reasonableness of the settlement. The Debtors therefore submit that the Settlement falls well above the lowest point in the range of reasonableness.

25.    The Debtors, US Bank as Trustee, and MetLife also seek to have the settlement binding on all Noteholders. US Bank as Trustee is providing notice of the resolution and the Settlement Agreement to all registered holders, and all other holders who have identified themselves to US Bank as Trustee in accordance with their standard procedures with respect to notices, advising Noteholders of the filing of this Motion and of their respective opportunity to object thereto.

26.    Absent approval of the Settlement, LBFP will incur costly legal fees and endure the distraction and risk of litigation, which could take months, if not years, including the possibility of multiple appeals. Furthermore, the Settlement allows LBFP to avoid the risk that it would not prevail in the Adversary Proceeding and that its Junior Payment Priority would be effective. The Settlement enables LBFP to receive a cash payment now, rather than no payment at all under Junior Payment Priority.

27.    For these reasons, the Court should approve the Settlement and grant the Motion pursuant to Bankruptcy Rule 9019.

28.    The terms of the Settlement discussed in this Motion are within the parameters set forth in Bankruptcy Rule 9019, are within the Court's authority under section 105(a) of the Bankruptcy Code, and are in the best interests of LBFP, its estate, its creditors, and all parties in interest.

## Notice

29.     No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; (vi) the attorneys for US

Bank; (vii) the attorneys for MetLife; and (viii) all other parties entitled to notice in accordance

with the procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for these cases [Docket No. 9635].  The Debtors

submit that no other or further notice need be provided.

30.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  New York, New York
        November 23, 2010

/s/ Richard L. Levine
Peter Gruenberger
Richard L. Levine
Meredith B. Parenti
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT A

## (TERMINATION AGREEMENT)

# TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of [ENTER DATE] by and among Madison Avenue Structured Finance CDO I Ltd., Madison Avenue Structured Finance CDO I, Corp. (together with Madison Avenue Structured Finance CDO I, Ltd., the "Counterparty"), Lehman Brothers Financial Products Inc. ("Lehman"), U.S. Bank National Association ("US Bank"), as trustee, and MetLife Investment Advisors Company, LLC, as collateral manager ("MetLife") (each of the foregoing a "Party" and collectively the "Parties").

RECITALS:

WHEREAS, the Parties entered into one or more transactions (each a "Transaction" and, together, the "Transactions") that were governed by a 1992 ISDA Master Agreement, dated as of December 5, 2001, and related schedules, documents, and confirmations (collectively, the "Agreement Documents").

WHEREAS, commencing on September 15, 2008 and thereafter, Lehman Brothers Holdings Inc. ("Holdings") and certain of its affiliates, including Lehman, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each then-open Transaction under the Agreement Documents as of November 12, 2008.

WHEREAS, on December 16, 2008, the court having jurisdiction over the Bankruptcy Cases (the "Bankruptcy Court") entered an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption or Assignment of Prepetition Derivative Contracts (the "Order").

WHEREAS, on September 17, 2009, the Court entered the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts (the "ADR Procedures Order").

WHEREAS, on September 14, 2010, LBFP filed Adversary Proceeding No. 10-03543 (JMP) (the "Adversary Proceeding") to challenge certain contractual provisions in the indenture governing the Counterparty's debt issuances and related matters (the "Indenture") as unenforceable *ipso facto* clauses or as avoidable, preferential, or fraudulent transfers in violation of the Bankruptcy Code.

WHEREAS, as of the date hereof, the Parties have agreed to resolve all claims between them relating to the Counterparty in exchange for a cash payment to Lehman in the amount of $[  ] (the "Settlement Amount") and the other provisions of this Termination Agreement.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which consideration is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    <u>Payment</u>.  Counterparty or US Bank, as Trustee, on behalf of Counterparty shall pay the Settlement Amount, without deduction, set-off or counterclaim, to Lehman on or before five (5) business days after the Effective Date using the wire instructions set forth on Schedule A.

Section 2.    <u>Release</u>.  In consideration of each other Party's execution of this Termination Agreement and the terms hereof, including the payment of the Settlement Amount to Lehman without deduction, set-off or counterclaim, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "<u>Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, obligations, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have, or now has or claims to have presently or at any future date, arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.

Section 3.    <u>Withdrawal of Claims</u>.  Counterparty and US Bank, as Trustee, agree that, promptly after the Effective Date, they will withdraw any filed Proofs of Claim and the related Derivative Questionnaires (in each case, as defined in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "<u>Bar Date Order</u>") entered in the Bankruptcy Cases on July 2, 2009) in respect of the Agreement Documents against Lehman, Holdings and any other Debtor (as defined in the Bar Date Order).

Section 4.    <u>Dismissal of Adversary Proceeding</u>.  Lehman agrees that, within 30 days after the Effective Date, it will file a motion to dismiss the Adversary Proceeding with prejudice;

Section 5.    <u>Representations</u>.  Each Party represents and warrants to each other Party that (i) subject to the entry of an Order by the Bankruptcy Court, in form substantially similar to the proposed order attached as Ex. A to this Termination Agreement, approving this Termination Agreement, the execution, delivery, and performance by such Party of this Termination Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) if the Bankruptcy Court approves the Termination Agreement but enters an Order that differs substantially from the proposed order in Ex. A, each

Party will make a good faith effort to reach agreement that the Order entered is satisfactory and sufficient to enter into this Termination Agreement, (iii) this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iv) it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Termination Agreement, (v) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters voluntarily and of its own choice and not under coercion or duress, (vi) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vii) it has no expectation that any of the other Parties will disclose facts material to the Agreement Documents or this Termination Agreement, and (viii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into the Termination Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement. These representations and warranties shall survive the execution of this Termination Agreement indefinitely without regard to statutes of limitations.

Section 6.    Execution in Counterparts. This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 7.    Effectiveness. The Parties agree that the effectiveness of this Termination Agreement is subject (i) to the entry of an order ("Order") by the Bankruptcy Court, in form substantially similar to the proposed order attached as Ex. A to this Termination Agreement, approving the terms of this Termination Agreement under Rule 9019 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), which Order becomes final ten (10) days after its entry if no appeal is filed or upon dismissal of any such appeal or the affirmance of the Order on appeal with no further opportunity to appeal (the "Effective Date"); or (ii) agreement in writing by all of the Parties that an Order entered by the Bankruptcy Court approving this Termination Agreement that differs substantially from the proposed order in Ex. A is satisfactory and sufficient to enter into this Termination Agreement. Each Party agrees that it will make a good faith effort to obtain the approval of this Termination Agreement by the Bankruptcy Court and any appellate court under Bankruptcy Rule 9019.

Section 8.    Governing Law. This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Termination Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 9.    <u>Special Provision for Unknown Claims.</u>  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 2.  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

Section 10.    <u>Confidentiality.</u>  Counterparty, US Bank, and MetLife shall not disclose the Settlement Amount ("<u>Confidential Information</u>") to any person other than their respective directors, officers, employees, counsel and other advisors, and the Counterparty's noteholders (hereinafter, collectively, the "<u>Related Parties</u>") (it being understood that Counterparty, US Bank, and MetLife shall ensure that such Related Parties will be informed in advance of the confidential nature of the Confidential Information and will be advised that the Confidential Information is confidential, that Noteholders should maintain the confidentiality of the Confidential Information, and that the Confidential Information is subject to the ADR Procedures Order), except as may be required by law, including but not limited to as may be required by United States federal securities and bankruptcy laws.  The Parties agree that the motion filed with the Bankruptcy Court requesting the Order as stipulated herein shall include a copy of this Termination Agreement from which the Settlement Amount shall be redacted and that the Parties shall endeavor to keep the Settlement Amount out of the public record.

If Counterparty, US Bank, MetLife, or any Related Party becomes legally obligated (whether by court or regulatory order or otherwise), other than due to compliance with United States federal securities or bankruptcy laws, to disclose any of the Confidential Information, Counterparty, US Bank, MetLife, or such Related Party, as the case may be, will promptly provide Lehman, if permitted by law, with notice of such proposed disclosure so that Lehman may seek a protective order or other appropriate remedy.  If such a protective order or other protective remedy is not obtained, Counterparty, US Bank, MetLife, or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and Counterparty, US Bank, MetLife, or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

Section 11.    <u>Successors and Assigns.</u>  The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 12.    <u>Amendment</u>.  This Termination Agreement may only be amended, modified, superseded or canceled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived, only by an instrument in writing signed by each of the Parties.

Section 13.    <u>Entire Agreement</u>.  This Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 14.    <u>Execution by Trustee</u>.  US Bank is executing this Agreement solely in its capacity as Trustee and not in its individual capacity.  None of US Bank or MetLife or their respective officers, directors, shareholders or agents shall be liable for any claim, liability, or obligation arising out of this Termination Agreement except to cause the payment of the Settlement Amount by or on behalf of Counterparty.

Section 15.    <u>Settlement Not an Admission of Liability</u>.  It is understood that this settlement is not an admission of any fact, violation of law or liability, but is in compromise of disputed claims, and is not to be construed as an admission of any fact, violation of law or liability on the part of each of the Parties, all of which are expressly denied.  It is further understood that the payment made by Counterparty or US Bank, as Trustee on behalf of the Counterparty is performed in compromise of disputed claims between the Parties, and shall not be construed as an admission of any fact, violation of law, or liability on the part of any of US Bank, individually or as Trustee, MetLife, or the Counterparty who each expressly denies such fact, violation of law, or liability.  This Agreement, or any of the terms hereof, or any negotiations or proceedings in connection herewith, or any performance or forbearance hereunder, shall have no precedential effect in any other transaction between the Debtors and US Bank, individually or as Trustee, and this Agreement shall not be offered or received in evidence or used in any proceeding against any Party, or used in any proceeding, or otherwise, for any purpose whatsoever except with respect to the effectuation and enforcement of this Agreement.

Section 16.    <u>Construction</u>.  This Termination Agreement has been negotiated by the Parties and their respective legal counsel and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

MADISON AVENUE STRUCTURED FINANCE
CDO I, LTD.
By: MetLife Investment Advisors Company, LLC
its Collateral Manager, not in its individual capacity
but solely as Collateral Manager


By: /s/ Jason Valentino
Name: Jason Valentino
Title: Director

MADISON AVENUE STRUCTURED FINANCE
CDO I, CORP.
By: MetLife Investment Advisors Company, LLC
its Collateral Manager, not in its individual capacity
but solely as Collateral Manager


By: /s/ Jason Valentino_____
Name: Jason Valentino
Title: Director


U.S. BANK NATIONAL ASSOCIATION, not in
its individual capacity but solely as Trustee for the
Madison Avenue Structured Finance CDO I Ltd.
and Madison Avenue Structured Finance CDO I,
Corp.


By: /s/ Pamela J. Weider_____
Name: Pamela J. Weider
Title: Vice President

METLIFE INVESTMENT ADVISORS
COMPANY, LLC as collateral manager, and not in
its individual capacity


By: /s/ Jason Valentino_____
Name: Jason Valentino
Title: Director

LEHMAN BROTHERS FINANCIAL PRODUCTS
INC.


By: /s/ Daniel Ehrmann
Name: Daniel Ehrmann
Title: Vice President

**<u>EXHIBIT B</u>**

**(PROPOSED ORDER)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
|  |  |
| --- | --- |
|  | : |
| **In re** | :     **Chapter 11 Case No.** |
|  | : |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | :     **08-13555 (JMP)** |
|  | : |
| **Debtors.** | :     **(Jointly Administered)** |
|  | : |
|  | : |

-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) AUTHORIZING AND APPROVING THE SETTLEMENT BETWEEN LEHMAN BROTHERS FINANCIAL PRODUCTS INC., MADISON AVENUE STRUCTURED FINANCE CDO I, LTD., MADISON AVENUE STRUCTURED FINANCE CDO I, CORP., METLIFE INVESTMENT ADVISORS COMPANY LLC, AND U.S. BANK NATIONAL ASSOCIATION**

Upon the motion, dated November __, 2010 (the "<u>Motion</u>"), of debtor Lehman Brothers Financial Products Inc. ("<u>LBFP</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "<u>Debtors</u>" and, together with their non-debtor affiliates, "<u>Lehman</u>"), pursuant to section 105 of chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for an order authorizing and approving a settlement on the terms set forth in the Settlement Agreement,[2] as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and the Settlement having been negotiated pursuant to the Court's Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts [Docket No. 5207]; and due and proper notice of the Motion having been provided to (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi), the attorneys for US Bank; (vii) the attorneys for MetLife; and (viii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]; [and an objection to the Motion having been filed by [ ], dated [ ] [ ], [ ] (the "Objection[s]")]; and the Court having found that US Bank as Trustee provided reasonable notice to holders of Notes and a hearing (the "Hearing") having been held to consider the relief requested in the Motion and the Objection; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, holders of Notes, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 105 of the Bankruptcy Code and Bankruptcy Rule 9019, the Settlement is approved; and it is further

ORDERED that LBFP is authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate the Settlement, including entering into the Settlement Agreement, and perform any and all obligations contemplated therein; and it is further

ORDERED that all holders of Notes issued by Madison Avenue Structured Finance CDO I Ltd., are bound by, and are deemed to have consented to, the terms of this Order and the Settlement Agreement and are deemed to have directed and instructed U.S. Bank as Trustee to execute and perform the Settlement Agreement. Having found the compromises set forth in the Settlement Agreement to be fair and reasonable, the Court finds no bona fide basis for any claims or actions against the Debtors, US Bank, as Trustee or in its individual capacity, MetLife or the Issuers of the Notes  and neither the Debtors, US Bank as Trustee or in its individual capacity, MetLife nor the Issuers and their respective legal counsel and/or financial advisors shall have any liability for any claims, demands, suits, actions or causes of action arising out of the participation in the negotiation and implementation of the Settlement Agreement. Noteholders, shall be forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing claims in any way related to the matters which are the subject of the Settlement Agreement against the Debtors, US Bank as Trustee or in any capacity, MetLife or the Issuers.

ORDERED that the terms of this Order shall be immediately effective and enforceable upon its entry; it is further

ORDERED that the notice of the Settlement Agreement and Motion to Noteholders, is good and sufficient notice; and it is further

ORDERED that this Court retains jurisdiction to enforce the Settlement and any disputes arising thereunder.

Dated: New York, New York
      December __, 2010

_____
UNITED STATES BANKRUPTCY JUDGE