Hearing Date:  December 15, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline:  December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                                  :
In re                                                             :    **Chapter 11**
                                                                  :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**   :    **Case No. 08-13555 (JMP)**
                                                                  :
                          Debtors.                                :    **(Jointly Administered)**
                                                                  :
------------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**AND LEHMAN COMMERCIAL PAPER, INC. PURSUANT TO**
**SECTION 363 OF THE BANKRUPTCY CODE AND RULE 9019(a)**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT**
**WITH RESPECT TO HERITAGE FIELDS PROPERTY AND**
**TO CONSUMMATE TRANSACTIONS IN CONNECTION THEREWITH**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the

"Motion") of Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper

Inc. ("LCPI"), as debtors and debtors in possession (together with their affiliated debtors

in the above-referenced chapter 11 cases, collectively, the "Debtors") for an order

pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") and

Rule 9019(a) of the Federal Rules of Bankruptcy Procedures authorizing LBHI and LCPI

to enter into a settlement agreement with respect to the Heritage Fields Project, will be

held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United

States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One

Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **December

15, 2010 at 10:00 a.m. (prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the

Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of

the Bankruptcy Court for the Southern District of New York, shall set forth the name of

the objecting party, the basis for the objection and the specific grounds thereof, shall be

filed with the Bankruptcy Court electronically in accordance with General Order M-242

(which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk,

preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-

based word processing format (with two hard copies delivered directly to Chambers), and

shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling

Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP,

767 Fifth Avenue, New York, New York 10153, Attn:  Alfredo R. Perez, Esq., counsel to

the Debtors; (iii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Andy Velez-

Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., Linda Riffkin, Esq., and

Tracy Hope Davis; Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., counsel to the official committee of unsecured

creditors appointed in these cases, (v) Kaye Scholer LLP, 425 Park Avenue, New York,

New York 10022, Attn: Steve Gliatta, Esq., counsel to the Heritage Fields El Toro LLC

and related parties; (vi) Allen & Overy LLP, 1221 Avenue of the Americas, New York, New York 10020, Attn: John Kibler, Esq. and David Broderick, Esq., counsel to PCCP, LLC and related parties; (vii) Bingham McCutchen LLP, 399 Park Avenue, New York, New York 10022, Attn: Kenneth G. Lore, Esq., counsel to State Street Bank and Trust Company and related parties, (viii) SNR Denton, 1221 Avenue of the Americas, New York, New York 10020, Attn: Walter G. Van Dorn, Esq. and D. Farrington Yates, Esq., counsel to Lehman Brothers Bankhaus AG; and (ix) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than December 8, 2010 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: November 23, 2010
      Houston, Texas

    /s/ Alfredo R. Pérez
    Alfredo R. Pérez
    WEIL, GOTSHAL & MANGES LLP
    700 Louisiana Street, Suite 1600
    Houston, Texas 77002
    Telephone: (713) 546-5000
    Facsimile: (713) 224-9511

    Attorneys for Debtors
    and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                         **:**

**In re**                                 **:**               **Chapter 11 Case No.**

                                           **:**

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   **:**         **08-13555 (JMP)**

                                           **:**

                         **Debtors.**         **:**         **(Jointly Administered)**

                                           **:**

------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**AND LEHMAN COMMERCIAL PAPER, INC. PURSUANT**
**TO SECTION 363 OF THE BANKRUPTCY CODE AND**
**RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**
**FOR AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT**
**WITH RESPECT TO HERITAGE FIELDS PROPERTY AND**
**TO CONSUMMATE TRANSACTIONS IN CONNECTION THEREWITH**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper,

Inc. ("LCPI"), as debtors and debtors in possession (together with their affiliated debtors

in the above-referenced chapter 11 cases, the "Debtors" and, collectively with their non-

debtor affiliates, "Lehman"), move for authority to enter into a settlement agreement

related to the Heritage Fields Project (as defined herein), and respectfully represent:

## Relief Requested

1.        By this Motion, pursuant to section 363 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 9019(a) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), LBHI and LCPI seek authority to enter

into a settlement agreement (together with its related documents and exhibits, the

"Settlement Agreement") related to the Heritage Fields Project, which contemplates

LBHI receiving, on account of its interest in the Heritage Fields Project, a discounted pay

off in the amount of $125 million, as well as repayment of a $28 million[1] participation

interest plus interest and a residual cash-flow participation.  Following completion of the

transactions set forth in the Settlement Agreement, Lehman will no longer have any

interest in the Heritage Fields Project (other than a cash-flow participation) and State

Street Bank and Trust Company ("State Street") will be the lender to the Heritage Fields

Project.  The Debtors are still in the process of finalizing the form of the Settlement

Agreement, as such, a summary of the pertinent terms of the Settlement Agreement is

provided herein and the Debtors will file a copy of the Settlement Agreement prior to the

Objection Deadline.

2.        On June 22, 2010, LBHI filed its *Motion of Lehman Brothers*

*Holdings Inc. Pursuant to Section 363 of the Bankruptcy Code and Rule 9019(a) of the*

*Federal Rules of Bankruptcy Procedure for Authority to Enter into Settlement Related to,*

*and Assign Interest in Heritage fields Property and to Purchase Participation Interests*

*Related Thereto* (the "Superseded Motion") [Docket No. 9739].  Due to the large number

---

[1] As discussed in more detail herein, LBHI is authorized to purchase up to a $32 million participation
interest, and expects to purchase the entire amount prior to closing.  The full amount (plus interest) will be
repaid pursuant to the Settlement Agreement.

of parties to the Settlement Agreement, the parties were unable to finalize all aspects of the settlement prior to the hearing and, as a result, LBHI withdrew the motion.[2]  The relief requested herein supersedes, in all respects, the relief requested in the Superseded Motion.

## **Jurisdiction**

3.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Background**

4.     Commencing on September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

---

[2] See Notice of Withdrawal, dated September 17, 2010 [Docket No. 11459].

6.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner issued a report at his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

8.      On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Now. 8330 and 8332].

### Lehman's Business

9.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

10.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Heritage Fields Background

**A.**     **The Heritage Fields Project**

11.     Heritage Fields El Toro LLC ("Heritage") is the owner of Heritage Fields (the "Heritage Fields Project"), a 3,723-acre masterplan development in Irvine, California. On June 26, 2007, El Toro LLC ("El Toro"), at the time, a wholly-owned subsidiary of LBREM REIT Holdings, LLC ("LBREM REIT"),[3] entered into a mortgage loan agreement with Heritage pursuant to which El Toro agreed to loan up to $775 million to Heritage (the "Mortgage Loan").

12.     On June 26, 2007, a portion of the Mortgage Loan was participated to Lehman ALI, Inc. ("ALI") in the amount of $650 million (the "Original Participation"), with the balance and title to the Mortgage Loan remaining with El Toro.[4] Thereafter, LBHI and LCPI assert that a portion of the Original Participation was further participated to Lehman Brothers Bankhaus AG ("Bankhaus," and the participation to Bankhaus, the "Bankhaus Interest") and a portion of the Original Participation was sold to State Street for approximately $200 million (the "State Street Interest") pursuant to a Master Repurchase Agreement between LCPI and State Street (the "Master Repurchase Agreement").

13.     On or around May 27, 2008, the Original Participation was terminated pursuant to a termination agreement by and between El Toro and ALI and

---

[3] At the time, LBREM REIT was a non-debtor Lehman affiliate; it is no longer under the control of Lehman.

[4] LBHI and LCPI assert that as a result of certain intercompany repo transactions, on or around April 24, 2008, LCPI became the holder of a portion of the Original Participation, which was later transferred to State Street, as set forth below.

replaced with a secured corporate loan in the maximum principal amount of $650 million

(the "Corporate Loan").  LBHI is the lender under the Corporate Loan.  The Corporate

Loan is secured by certain membership interests pledged by LBREM REIT in El Toro.

On May 27, 2008, REPE LBREM LLC ("REPE LBREM"), an affiliate of LBHI,

acquired the B Note portion of the Corporate Loan, thereby obtaining a co-lending

interest in the Corporate Loan in the amount of $262,500,000.

14.    On November 19, 2008, State Street filed an adversary proceeding

against Lehman captioned *State Street Bank and Trust Company v. Lehman Commercial

Paper, Inc.*, Adv. Proc. No. 08-01743 (the "Adversary Proceeding"), which asserted,

among other things, ownership in certain assets, including the State Street Interest.

15.    On September 22, 2009, LBREM REIT and El Toro filed certain

proofs of claim (the "Proofs of Claim") in the Debtors' chapter 11 cases asserting, among

other things, inequitable conduct by LBHI with respect to the conversion of the Original

Participation into the Corporate Loan.  In the Proofs of Claim, LBREM REIT and El

Toro specifically reserved the right to, among other things, bring against LBHI, without

limitation, any claims and causes of actions, including, but not limited to, claims for

breach of fiduciary duties and self-dealing, as well as any right to seek any and all

remedies, including, but not limited to, rescission of the Corporate Loan.

16.    On December 11, 2009, certain of LBHI's wholly owned non-

debtor subsidiaries transferred their general partnership interests in Lehman Brothers

Real Estate Mezzanine Partners, L.P. ("LBREM") and Lehman Brothers Real Estate

Mezzanine Partners II, L.P. and the related funds to PCCP, LLC ("PCCP") and certain of

9

its affiliates (the "LBREM Transfer").  As a result of the LBREM Transfer, PCCP

acquired indirect management control of LBREM REIT.

17.    Pursuant to that certain Settlement Agreement dated December 15,

2009 and the *Order Pursuant to Section 105 and 363 of the Bankruptcy Code and*

*Federal Rules of Bankruptcy Procedure 9019 Authorizing and Approving of a Settlement*

*Agreement with the Insolvency Administrator of Lehman Brothers Bankhaus AG (in*

*Insolvenz)*, entered by this Court on January 14, 2010 [Docket No. 6665], Bankhaus sold

the Bankhaus Interest to LBHI.  As such, LBHI is the sole owner of the Bankhaus

Interest.

### B.    The Participation Interests

18.    On December 9, 2009, LBHI, pursuant to the *Order Pursuant to*

*Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019(a)*

*Establishing Procedures to (i) Restructure, (ii) Make New or Additional Debt or Equity*

*Investments in, and/or (iii) Enter into Settlements and Compromises in Connection with*

*Existing Real Estate Investments*, entered by this Court on November 23, 2009 (the

"Restructuring Procedures Order") [Docket No.5912] and El Toro entered into that

certain Participation Agreement (the "First LBHI Participation Agreement") pursuant to

which El Toro sold to LBHI a participation in the Mortgage Loan in an amount of

$3,551,203.23 (the "Initial Participation Interest").  The funds were used for working

capital needs of the Heritage Fields Project.

19.    On January 15, 2010, LBHI, pursuant to the Restructuring

Procedures Order and El Toro entered into that certain Amended and Restated

Participation Agreement, which amended, restated and superseded in its entirety the First

LBHI Participation Agreement (the "Amended LBHI Participation Agreement"),

pursuant to which LBHI agreed to purchase from El Toro additional participation

interests (together with the Initial Participation Interest, the "Additional Participation

Interests" and each, an "Additional Participation Interest") in the Mortgage Loan, up to

an aggregate amount, including the Initial Participation Interest, of $20 million, which, on

July 8, 2010, was increased to $24.5 million.  On August 18, 2010, the Court entered an

Order approving the increase of this amount to $32 million.[5]  The purchases of the

Additional Participation Interests are based on the critical funding needs of the Heritage

Fields Project.  As of the date hereof, the outstanding principal balance of all Additional

Participation Interests (the "Additional Participation Balance") is approximately $28

million.  LBHI expects to purchase the entire $32 million in Additional Participation

Interests prior to closing.  Pursuant to the terms of the Settlement Agreement, all of the

Additional Participation Interests will be repaid, with interest, upon the closing of the

Settlement Agreement.

### Entry Into the Settlement Agreement Is in the Best Interests of LBHI and LCPI

### A.  The Terms of the Settlement Agreement

20.     In order to settle all disputes among LBHI, LCPI, State Street,

Heritage, REPE LBREM, LBREM REIT, El Toro and the other parties (collectively, the

"Parties") to the Settlement Agreement, LBHI and LCPI seek authority to enter into the

---

[5] *Order Pursuant to Section 363 of the Bankruptcy Code and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure Authorizing LBHI to Amend Participation Agreements and to Purchase Participation Interests Related Thereto* [Docket 10873].

Settlement Agreement according to terms substantially similar to those set forth below.[6]

Upon consummation of the transactions set forth in the Settlement Agreement, State Street will be the lender to the Heritage Fields Project and neither El Toro nor LBHI will have any debt or equity interest in the Heritage Fields Project (other than a cash flow participation, described herein), whether as the direct mortgage lender, a loan participant or holder of the Corporate Loan.  The transactions contemplated by Settlement Agreement that are applicable to LBHI or LCPI are summarized below:[7]

a.  **REPE LBREM Assignment to LBHI**:  REPE LBREM shall assign to LBHI all of REPE LBREM's right, title and interest in the B Note under the Corporate Loan (the "REPE LBREM Assignment");

b.  **Assignment of Corporate Loan to State Street**: Immediately following the REPE LBREM Assignment, LBHI shall assign to State Street a direct 44.13% interest (the "SS Repo Interest") in the Corporate Loan (the "LBHI Corporate Loan Assignment");[8]

c.  **Termination of Corporate Loan**:  Immediately following the LBHI Corporate Loan Assignment, the Parties shall enter into a Termination of Corporate Loan pursuant to which the Parties shall agree that, in exchange for the consideration described in item (d) below, the Corporate Loan shall be deemed paid in full and terminated and of no further force or effect.

---

[6] The Debtors are still in the process of finalizing the form of the Settlement Agreement, however a copy of the Settlement Agreement will be filed prior to the Objection Deadline.

[7] The terms listed below in the below subparagraphs are provided only as a summary of the terms of the Settlement Agreement.  In the case of an inconsistency between the terms set forth in the summary and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.  Any term used but not defined herein shall have the meaning ascribed to such term in the Settlement Agreement.

[8] The purpose of this assignment is for State Street to hold an interest in the Corporate Loan in an amount proportionate to the State Street Interest in the Mortgage Loan, which it received pursuant to the Master Repurchase Agreement.

d.    **Grant of Participation Interests**: Simultaneously with the termination of the Corporate Loan, and in exchange for their respective interests in the Corporate Loan, State Street, LBHI and El Toro shall enter into a Reinstated Participation Agreement (the "Reinstated Participation Agreement") pursuant to which El Toro shall grant to (1) LBHI a $250,000,000 (plus interest thereon) participation interest in the Mortgage Loan (the "LBHI Participation Interest"; and together with the Additional Participation Interests, the "LBHI Reinstated Participation Interest") and (2) State Street a $197,470,189 (plus interest thereon) participation interest in the Mortgage Loan (the "State Street Reinstated Participation Interest" and, together with the LBHI Reinstated Participation Interest the "Reinstated Participation Interest");

e.    **Consideration**:  Immediately following the execution of the Reinstated Participation Agreement and in partial satisfaction of its obligations pursuant to the Mortgage Loan, (i) Heritage shall pay to LBHI $125,000,000 plus the Additional Participation Balance and interest accrued thereon (the "Lehman Discounted Pay-Off Amount") in full satisfaction and pay-off of the LBHI Reinstated Participation Interest and (ii) Heritage shall provide LBHI or its designee with an option for a cash flow participation (the "Lehman Option" and, together with the Lehman Discounted Pay-Off Amount, the "Lehman Discounted Pay-Off").

f.    **Lehman Assignment to State Street**: Following the Lehman Discounted Pay-Off, (i) each of LBHI, LCPI, ALI and REPE LBREM shall quitclaim its respective remaining right, title and interest in the Mortgage Loan (other than the LBHI Reinstated Participation Interest) to State Street or its assignee on an "as is/where is" basis and without representation, recourse or warranty of any kind whatsoever (the "Lehman Assignment");

21.    In addition, the Settlement Agreement contemplates that LBHI grant certain indemnifications, which are summarized below.  The Settlement Agreement provides for indemnifications from State Street and certain PCCP entities for the benefit of Lehman that correspond to the indemnifications in subparagraphs (a) and (c), below.

a.      LBHI shall indemnify, defend and hold harmless each of the SS Parties and PCCP Parties from and against all damages (excluding punitive damages), losses, liabilities, suits, actions, claims, demands and reasonable expenses and costs of every kind and nature incurred by, or asserted or imposed against (including, without limitation, payment of reasonable attorneys' fees) any such Party resulting from (i) any claims made by any party that the SS Repo Interest was not duly and properly assigned to State Street free and clear of all liens, claims or encumbrances pursuant to the LBHI Corporate Loan Assignment and (ii) any claims made by any Party that the LBHI Reinstated Participation Interest was not fully paid, satisfied and terminated and of no further force or effect as of the Closing.

b.      LBHI shall indemnify, defend and hold harmless each of the SS Parties and the PCCP Parties from and against reasonable expenses and costs of every kind and nature incurred by, or asserted or imposed against (including, without limitation, payment of reasonable attorneys' fees) any such Party in responding to any subpoena or other discovery request propounded by or on behalf of LBHI and/or any of its Affiliates, including, without limitation, Bankhaus, with respect to the Heritage Fields Transaction (the "Heritage Fields Discovery Request") provided that: (A) with respect to the indemnity provided to the PCCP Parties only (i) none of the PCCP Parties or any Affiliate of any of them initiated  the suit or action giving rise to the Heritage Fields Discovery Request and (ii) the suit or action does not otherwise directly or proximately result from a breach or violation by any of the PCCP Parties of any of their respective obligations under the Settlement Documents; and (B) with respect to the indemnity provided to State Street only, (i) none of the SS Parties or any Affiliate of any of them initiated the suit or action giving rise to the Heritage Fields Discovery Request, and (ii) the suit or action does not otherwise directly or proximately result from a breach or violation by any of the SS Parties of any of their respective obligations under the Settlement Documents.

c.      LBHI shall indemnify, defend and hold harmless each of the SS Parties and the PCCP Parties from and against all damages (excluding punitive damages), losses, liabilities, suits, actions, claims, demands and reasonable expenses

and costs of every kind and nature incurred by, or asserted or imposed against (including, without limitation, payment of reasonable attorneys' fees) the SS Parties or the PCCP Parties resulting from any claim by or through any Lehman Party (as defined in the Settlement Agreement) (other than a party claiming by or through any SS Party, PCCP Party or Heritage) contrary to certain acknowledgments of the Lehman Parties set forth in the Settlement Agreement (with respect to right and title of the Reinstated Participation Interest).[9]

d. LBHI would be entitled to all customary rights to defend any claim giving rise to the indemnification obligations set forth above.

22. As part of the overall settlement, State Street and Heritage are entering into amended mortgage loan documents, pursuant to which State Street would agree to make additional advances to Heritage subject to the terms of such documents. The Debtors are not party to these negotiations and in the event State Street and Heritage are unable to reach an agreement, the Settlement Agreement will not close.

**B. Rule 9019 Requires that the Settlements are Within the Acceptable Range of Reasonableness**

23. Rule 9019 of the Bankruptcy Rules governs the procedural requirements to be followed before a compromise or settlement may be approved.

---

[9] The acknowledgments provide, generally, (a) that each of the SS Parties, the Lehman Parties and the PCCP Parties acknowledges, confirms and agrees prior to the consummation of the Assignments, neither it nor any party claiming by, through or under it has any right, title, interest, lien, claim, encumbrance, participation or option, in each case whether direct or indirect, in or to the Lehman Interests, the PCCP Interests, the SS Interests, the SS Repo Interest or otherwise with respect to the Mortgage Loan, the Original Participation Interest, the Corporate Loan or the Reinstated Participation Interest, except for (1) the PCCP Interests as to the PCCP Parties, (2) the Lehman Interests as to the Lehman Parties and (3) the SS Interests as to the SS Parties; and (b) that each of the Lehman Parties and PCCP Parties acknowledges, confirms and agrees that immediately upon consummation of the Assignments, and from and after Closing neither it nor any party claiming by, through or under it shall have any right, title, interest, lien, claim, encumbrance, participation or option, in each case whether direct or indirect, in or to the Mortgage Loan, the Original Participation Interest or the Reinstated Participation Interest (provided that neither the Lehman Option nor the PCCP Cash-Flow Participation shall for the purposes of the foregoing be considered an interest in the Mortgage Loan, the Original Participation Interest or the Reinstated Participation Interest).

Bankruptcy Rule 9019 provides, in pertinent part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.), 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fisher v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); In re Ionosphere Clubs, Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. Drexel Burnham Lambert Group, 134 B.R. at 505; see also 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor, but must not "fall below the lowest point in the range of reasonableness." Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983); In re Spielfogel, 211 B.R. 133, 143-44 (Bankr. E.D.N.Y. 1997). Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." TMT Trailer Ferry, 390 U.S. at 424 (quoting Case v. Los Angeles Lumber Prods. Co., 308 U.S. 106, 130 (1939).

24.     The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court. Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994). Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements." In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46

(Bankr. S.D.N.Y. 1998). However, the analysis must focus on the question of whether a

particular compromise is "fair and equitable, . . . and [ ] in the best interest of the estate."

In re Best Products Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations

omitted).

        25.      While a court must evaluate "all . . . factors relevant to a full and

fair assessment of the wisdom of the proposed compromise," TMT Trailer Ferry, 390

U.S. at 424, a court need not conduct a "mini-trial" of the merits of the claims being

settled, or conduct a full independent investigation. Drexel Burnham Lambert Group,

134 B.R. at 505. "The bankruptcy judge does not have to decide the numerous questions

of law and fact. . . . The court need only canvass the settlement to determine whether it is

within the acceptable range of reasonableness." Nellis, 165 B.R. at 123 (internal citations

omitted).

        26.      The court may give weight to the "informed judgments of the . . .

debtor-in-possession and their counsel that a compromise is fair and equitable, and

consider the competency and experience of counsel who support the compromise."

Drexel Burnham Lambert Group, 134 B.R. at 505 (internal citations omitted); see also In

re Purofied Down Prods. Corp., 150 B.R. 519, 522-23 (S.D.N.Y. 1993); accord In re

Ashford Hotels, Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998) ("Significantly, that test

does not contemplate that I substitute my judgment for the Trustee's, but only that I test

his choice for reasonableness. . . . If the Trustee chooses one of two reasonable choices, I

must approve that choice, even if, all things being equal, I would have selected the

other.") (internal citations omitted).

27.    Significantly, there is no requirement that "the value of the compromise . . . be dollar-for-dollar the equivalent of the claim." Ionosphere Clubs, Inc., 156 B.R. at 427.  Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."  Id. at 427-28 (quoting City of Detroit v. Grinnell Corp., 495 F.2d 448, 455 n.2 (2nd Cir. 1974)).

### C.  Section 363 Requires that Receiving the Discounted Pay-Off on Account of LBHI'S Interest in the Mortgage Loan Is An Exercise of Sound Business Judgment of the Debtors

28.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  Id. § 363(b)(1).  When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor.  Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983); accord In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); In re Martin, 91 F.3d 389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In Re Schipper), 933 F.2d 513, 515 (7th Cir. 1991)); Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986).

29.    It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  In re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business

justification exists, there is a strong presumption that "the directors of a corporation acted

on an informed basis, in good faith and in the honest belief that the action taken was in

the best interests of the company."  In re Integrated Res., Inc., 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal

dismissed, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to

parties opposing the proposed exercise of a debtor's business judgment. Id. (citing

Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

### D.  Entry into the Settlement Agreement and the Sale of LBHI's Interest in the Mortgage Loan as Contemplated Thereby Meets the Standards for Approval under Rule 9019(a) and Section 363

30.    LBHI's and LCPI's entry into the Settlement Agreement is in the

best interests of their respective estates and creditors.  The transactions set forth in the

Settlement Agreement settle the disputes related to the Heritage Fields Project and

provide LBHI with a discounted pay-off of its interest in the Mortgage Loan and full

payment (including interest) of the Additional Participation Balance, as well as a residual

cash-flow participation.  The end result of these transactions is that Lehman will no

longer have any interest in the Heritage Fields Project (other than the cash-flow

participation) and State Street will be the sole lender to the Heritage Fields Project.  In

doing so, the Settlement Agreement releases LBHI and LCPI from the costs, liabilities

and uncertainties associated with the Adversary Proceeding and the Proofs of Claim, and

provides LBHI with a significant recovery on account of its interests in the Heritage

Fields Project.[10]

---

[10] As set forth in the Settlement Agreement, the settlement will result in the withdrawal of the Proofs of Claim.  In addition, State Street will dismiss all claims asserted by State Street in the Adversary Proceeding to the extent, but only to the extent, such claims relate solely to the Heritage Fields Transaction (the

31.    Additionally, Lehman's retention of its interest in the Heritage Fields Project could result in no recovery for the estate. The Heritage Fields Project continues to have substantial costs associated with it which need to be funded. As such, in order to realize any profit on account of its investment, LBHI would have to continue to fund these costs, which would amount to a significant investment. Furthermore, even if LBHI were to continue to fund, it would be a substantial period of time before LBHI would be able to recover any profit on account of its debt investment with respect to the Heritage Fields Project. Entry into the Settlement Agreement and consummation of the transactions set forth therein will relieve LBHI from this funding burden and enable LBHI to realize significant recovery on account of its debt investment in the Heritage Fields Project.

32.    The negotiation of the Settlement Agreement between LBHI, LCPI, State Street, LBREM REIT, El Toro, PCCP and Heritage, as well as the other parties to the Heritage Fields Restructuring, has been in good faith and at arms'-length, and releases LBHI and LCPI from costs, liabilities and uncertainties associated with the Adversary Proceeding and the Proofs of Claim.

**E.    Sale of LBHI's and LCPI's Interests in the Mortgage Loan and/or The Corporate Loan Should Be Free and Clear of Liens, Claims, Encumbrances and Interests Pursuant to Section 363(f)**

---

"Dismissal"). The settlement, however, will not affect any claim that State Street may have for any deficiency under the Master Repurchase Agreement ("Deficiency Claim"), and all Parties reserve all of their rights, claims and defenses with respect to any such Deficiency Claim. State Street will not be required to withdraw any documents filed in connection with any Deficiency Claim as a result of the Dismissal.

33.     As set forth above, although Settlement Agreement contemplates a number of transactions, the result of the settlement is, essentially, the sale, by LBHI and LCPI of their remaining debt investment in the Heritage Fields Project to State Street. This transfer of interests should be free and clear of all liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code. Specifically, there are two individual transactions pursuant to which the Debtors are transferring interests in the Heritage Fields Project: (i) the LBHI Corporate Loan Assignment and (ii) the Lehman Assignment.

34.     Although the Debtors do not believe that any other party has an interest in their debt investment with respect to the Mortgage Loan or Corporate Loan held by Lehman, to ensure that the Settlement Agreement results in the full transfer of all of the Debtors' debt investment in the Heritage Fields Project, the LBHI Corporate Loan Assignment and the Lehman Assignment (with respect to any portion being transferred by a Debtor) should be pursuant to 363(f), with any, with any liens, claims, encumbrances and other interests attaching to the proceeds of the sale.

35.     Pursuant to section 363(f) of the Bankruptcy Code, a debtor may sell property of its estate "free and clear of any interest in such property of an entity other than the estate" if applicable non-bankruptcy law permits sale of such property free and clear of such interest, if such entity consents, if such interest is a lien an the price at which such property is to be sold is greater than the aggregate value of all liens on such property, if such interest is in bona fide dispute, or if such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. 11 U.S.C. § 363(f)(1)-(5).

36.     With respect to any party asserting a lien, claim, encumbrance or other interest against the Debtors' debt investment with respect to in the Heritage Fields Project, the Debtors anticipate that they will be able to satisfy one or more of the conditions set forth in section 363(f).  Thus, the LBHI Corporate Loan Assignment and the Lehman Assignment satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code.

## Reservation of Rights

37.     The Debtors request that, except as expressly provided herein or in the Settlement Agreement, nothing contained herein be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or remedies of LBHI or LCPI, or that any of the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable law, including against each other or third parties. Additionally, the LBHI and LCPI seek authorization to execute such further documents necessary to reflect this reservation of rights.

## Notice

38.     The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Bankhaus; (vii) the Borrower Parties (as defined in the Settlement Agreement); (viii) the PCCP Parties (as defined in the

Settlement Agreement); (ix) the State Street Parties (as defined in the Settlement

Agreement); and (x) all parties who have requested notice in these chapter 11 cases.  The

Debtors submit that no other or further notice need be provided.

39.     No previous request for the relief sought herein has been made by

the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the

relief requested herein and such other and further relief as is just.

Dated:  November 23, 2010
        Houston, Texas

          /s/ Alfredo R. Pérez
         Alfredo R. Pérez

         WEIL, GOTSHAL & MANGES LLP
         700 Louisiana, Suite 1600
         Houston, TX 77002
         Telephone: (713) 546-5040
         Facsimile: (713) 224-9511

         Attorneys for Debtors
         and Debtors in Possession

**<u>Annex A</u>**

**(Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*        :        **08-13555 (JMP)**
                                                    :
                        **Debtors.**                :        **(Jointly Administered)**
                                                    :
-------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AND RULE 9019(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING LBHI AND LCPI TO ENTER INTO SETTLEMENT RELATED TO HERITAGE FIELDS PROPERTY AND TO CONSUMMATE TRANSACTIONS IN CONNECTION THEREWITH

Upon the motion, dated [DATE], 2010 (the "Motion"),[1] of Lehman

Brothers Holdings Inc. ("LBHI") and Lehman Commercial Paper Inc. ("LCPI"), as

debtors in possession (together with their affiliated debtors in the above-referenced

chapter 11 cases, the "Debtors"), for an order pursuant to section 363 of title 11 of the

United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") authorizing LBHI and LCPI to enter

into the Settlement Agreement related to the Heritage Fields Project and to consummate

transactions in connection therewith, all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] Capitalized terms used, but not defined herein shall have the meaning ascribed to such term in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided in accordance with the

procedures set forth in the amended order entered February 13, 2009 governing case

management and administrative procedures [Docket No. 2837]; and the Court having

found and determined that the relief sought in the Motion is in the best interests of LBHI

and LCPI, their respective estates and creditors, and all parties in interest and that the

legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that all objections, if any, to the Motion and the relief

requested therein that have not been withdrawn, waived, or settled, and all reservations of

rights included therein, are denied and overruled on the merits with prejudice; and it is

further

ORDERED that, pursuant to Bankruptcy Rule 9019 LBHI and LCPI is

authorized and empowered to enter into the Settlement Agreement, and are authorized,

but not directed, to execute, deliver, implement, and perform any and all obligations,

instruments, documents and papers, and to take all corporate and other actions that may

be necessary or appropriate to consummate all of the transactions contemplated by the

Settlement Agreement without the necessity or requirement of further court proceedings

or approval; and it is further

ORDERED that, pursuant to Bankruptcy Code section 363, LBHI and

LCPI are authorized to receive a discounted payoff for and to transfer their interests in

the Heritage Fields Project, as contemplated by the Settlement Agreement; and it is

further

ORDERED that, pursuant to Bankruptcy Code section 363(f), the LBHI

Corporate Loan Assignment and the Lehman Assignment (with respect to any portion

being transferred by a Debtor) shall be a transfer to State Street free and clear of all liens,

claims, encumbrances and interests of any kind or nature whatsoever, with all such liens,

claims, encumbrances and interests attaching to the proceeds ultimately attributable to the

property against or in which such liens, claims, encumbrances and interests are asserted,

subject to the terms of such liens, claims, encumbrances and interests, with the same

validity, force and effect, and in the same order of priority, which such liens, claims,

encumbrances and interests now have against such property or its proceeds, subject to

any rights, claims and defenses the Debtors or their estates, as applicable, may possess

with respect thereto; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

ORDERED that, except as expressly provided herein, in the Motion or in

the Settlement Agreement, nothing contained herein shall be deemed to be a waiver or

the relinquishment of any rights, claims, interests, obligations, benefits or remedies of

LBHI or LCPI or that the Debtors may have or choose to assert on behalf of their

respective estates under any provision of the Bankruptcy Code or any applicable non-

bankruptcy law, including against each other or third parties, and the Debtors are herby

authorized and directed to execute such further documents to evidence these reservations;

and it is further

3

ORDERED that the Settlement Agreement and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto, in a writing signed by such parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order.

Dated: _____, 2010
        New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE