## TRANSFER OF CLAIM AGREEMENT

**ASSIGNOR:**                     BlueBay Funds acting on behalf of its sub-fund,
                                 BlueBay High Yield Bond Fund

**ASSIGNEE:**                     **UBS AG, Stamford Branch**


This Agreement is dated November 17, 2010.

## AGREEMENT

1.        Definitions and Construction.  For purposes of this Agreement, each of the following terms shall have the meaning ascribed to it:

"Administration" means the process pursuant to the Administration order made on the Petition Date by the High Court of Justice, Chancery Division, Companies Court, London appointing A.V. Lomas and others of PricewaterhouseCoopers as joint administrators (the "Administrators") of the Debtor and any subsequent liquidation of the Debtor by one or more liquidators (such liquidators also referred to as the "Administrators"), in each case under the Insolvency Act.

"Bankruptcy Case" means In re: Lehman Brothers Holdings Inc., et al., Case Number 08-13555 (JMP) (Jointly Administered).

"Bankruptcy Code" means Title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq.

"Bankruptcy Court" means United States Bankruptcy Court for the Southern District of New York.

"Bar Date Order" shall mean that certain Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, entered in the Bankruptcy Case on July 2, 2009.

"Benefit Plan" means an "employee benefit plan" (as defined in ERISA) that is subject to Title I of ERISA, a "plan" as defined in Section 4975 of the Internal Revenue Code of 1986, (as amended, and the rules and regulations promulgated under it) or any entity whose assets include (for purposes of ERISA Section 3(42) or otherwise for purposes of Title I of ERISA or Section 4975 of the Code) the assets of any such "employee benefit plan" or "plan."

"Business Day" means a day (other than a Saturday or Sunday) on which banks are open for general business in New York City, New York.

"Claim" means all claims arising from the ISDA and the GMRA.

"Claim Amount" means an amount in respect of the claims arising from the ISDA of $1,746,584.83 (or, with respect to the Debtor, an equivalent amount upon a currency conversion

by the Debtor as required by English law) and an amount in respect of the claims arising from the GMRA of $633,884.42 in the case of the claim against the Guarantor and €434,210.83 in the case of the claim against the Debtor (or, with respect to the Debtor, an equivalent amount upon a currency conversion by the Debtor as required by English law).

"Claim Objection" means any proceeding (including, without limitation, a proceeding initiated by the filing of a motion, objection, demand letter, or pleading) that could, if successful, result in (a) all or any part of the Claim becoming subject to any Impairment; or (b) all or any part of the Claim not being enforceable against the Debtor or the Guarantor or any of their affiliates, not being allowed by the Bankruptcy Court or becoming rejected in whole or in part by the Administrators.

"Companies Act" means the Companies Act 2006, as amended, enacted in the United Kingdom.

"Consensual Approach" means the consensual procedure regarding the treatment of unsecured creditors' claims described and defined in the June 16, 2010 report entitled "Creditor Update: Resolution of Unsecured Creditor Claims – 16/06/2010" issued by PricewaterhouseCoopers, in its capacity as Joint Administrator of Debtor.

"CRA" means the Claim Resolution Agreement with an effective date of 29 December 2009 entered into between Lehman Brothers International (Europe) (in Administration) and each Signatory (as defined in the CRA);

"Debtor" means Lehman Brothers International (Europe) (in Administration).

"Disallowance" means, any of the following: (a) all or any part of the Claim is or becomes subject to any Impairment; (b) all or any part of the Claim is not enforceable against the Debtor or the Guarantor, or is not allowed by the Bankruptcy Court or is rejected in whole or in part by the Administrators; (c) all or any part of the Claim becomes subject to a Claim Objection; (d) all or any part of the Claim is unliquidated or contingent or listed in an amount less than the Claim Amount; or (e) distribution is made on all or any part of the Claim at a lesser rate or in a delayed timeframe compared to distributions on other claims against the Debtor or the Guarantor, as the case may be.

"Effective Date" means the date on which the conditions precedent set forth in Sections 4 and 5 are satisfied.

"Excluded Securities Distribution" means a distribution made by the Debtor or the Guarantor or any of their agents or successors or affiliates on account of any Excluded Claim that is in the form of securities.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended, and the rules and regulations promulgated under it.

"Evidence of Transfer of Claim" means the notice that the Assignor has assigned all its rights, title, benefit and interest in and to the LBHI Claim to the Assignee substantially in the form annexed hereto as Exhibit A.

HY01/UBS

"Excluded Information" means information with respect to the Transferred Claim Rights, the Debtor, the Guarantor or their affiliates, the Administration, the Bankruptcy Case and/or any state or federal regulatory review concerning the Debtor or the Guarantor that may be material to a decision to sell or purchase the Transferred Claim Rights, including but not limited to information that Assignee may receive as a member of the LBHI Committee.

"General Guarantee" means the Unanimous Written Consent of the Executive Committee of the Board of Directors of the Guarantor, dated as of June 9, 2005 pursuant to which the Guarantor fully guaranteed the payment of all liabilities, obligations and commitments of the Debtor.

"GMRA" means the Global Master Repurchase Agreement dated as of May 6, 2004 between the Assignor and the Debtor, as amended and supplemented from time to time, including all related schedules, annexes, exhibits and other agreements.

"Guarantor" means Lehman Brothers Holdings Inc.

"Impairment" means (a) the Claim or any part thereof or any other part of the Transferred Claim Rights is subject to a counterclaim, defense or claim (including but not limited to any actual or alleged undervalue, preference or fraudulent conveyance claim (including, without limitation, under Sections 178, 238, 239 or 423 of the Insolvency Act)) or right of set-off, reduction, recoupment, disgorgement, impairment, avoidance, disallowance, rejection, disclaim or subordination by the Debtor, the Guarantor or any other entity (including without limitation by any state or federal governmental agency or commission) or the Administrators, (b) distributions to be made in respect of the Claim or any part thereof are subject to any of the foregoing, or (c) there is or will be any challenge to the validity or effectiveness of the ISDA and the GMRA (whether in whole or in part) or the obligations of the Debtor or the Guarantor to pay the Claim, including but not limited to challenges pursuant to contractual or tort actions or (d) if the Assignee is not substituted for the Assignor as the record holder or owner of the Transferred Claim Rights.

"Insolvency Act" means the Insolvency Act 1986, as amended, enacted in the United Kingdom.

"Insolvency Rules" means the insolvency rules promulgated under the Insolvency Act 1986, as amended, enacted in the United Kingdom.

"Interest Rate" means LIBOR plus 3.00%.

"ISDA" means that certain ISDA Master Agreement dated as of July 7, 2006 between Debtor and Assignor together with the Schedule and Credit Support Annex thereto (as amended and supplemented from time to time) and any other related agreements.

"LBHI Claim" means all claims against the Guarantor arising from the ISDA and GMRA, including pursuant to the General Guarantee and the Swap Guarantee.

"LBIE Claim" means all claims against the Debtor arising from the ISDA and GMRA.

-3-

"LBHI Committee" means the Official Committee of Unsecured Creditors for the Bankruptcy Case.

"LIBOR" means for any day, the British Bankers' Association Interest Settlement Rate for the relevant currency for a period of one month displayed on the appropriate page of the Reuters screen. If the appropriate page is replaced or service ceases to be available the Assignee, acting reasonably, may specify another page or service displaying the appropriate rate.

"Liens" means any liens, claims, security interests or encumbrances or other adverse claim against title.

"Notice" means the notice that the Assignor has assigned all its rights, title, benefit and interest in and to the LBIE Claim to the Assignee substantially in the form annexed hereto as Exhibit B.

"Overnight Interest" means for any day, the British Bankers' Association Interest Settlement Rate for the relevant currency for a period of one day displayed on the appropriate page of the Reuters screen. If the appropriate page is replaced or service ceases to be available the Assignee, acting reasonably, may specify another page or service displaying the appropriate rate.

"Petition Date" means September 15, 2008.

"Plan" means the chapter 11 plan covering Lehman Brothers Holdings Inc. as a debtor, that is confirmed by the Bankruptcy Court and for which the effective date of such plan has occurred.

"Proof of Claim" means a proof of claim (which shall be construed to include any and all multiple proofs of claim filed in the Bankruptcy Case and any amendments and supplements thereof) in respect of the LBHI Claim.

"Proof of Debt" means a proof of claim (which shall be construed to include any and all multiple proofs of claim filed with the Administration and any amendments and supplements thereof) in respect of the LBIE Claim in the amount of each applicable LBIE Claim.

"PTEs" means the prohibited transaction class exemptions issued by the United States Department of Labor.

"Purchase Price" means $1,017,650.60.

"Questionnaires" means, with respect to each LBHI Claim, the questionnaires filed in the Bankruptcy Case.

"Securities Distribution" means a distribution made by the Debtor or the Guarantor or any of their agents or successors or affiliates on account of the Claim that is in the form of securities.

"Supporting Claim Documents" means (a) any documents, notices, agreements, bills, invoices, stipulations, data, calculations or materials necessary or required or advisable for the Assignor to assert and maintain its claims pursuant to the ISDA, GMRA, the Swap Guarantee and

-4-

General Guarantee (only insofar as it relates to the Claim), each as set out at Exhibit C, and (b) orders (whether now existing or hereafter arising) of any court made at the request of the Administrators or of the Bankruptcy Court, that evidence, create and/or give rise to or affect in any material way the Claim that has been received by the Assignor.

"Swap Guarantee" means the guarantee dated July 26, 2006 in favor of the Assignor from the Guarantor given as credit support for ISDA.

"Transferred Claim Rights" is given the meaning ascribed to it in Section 2 of this Agreement.

In this Agreement a reference to a provision of law is a reference to that provision as extended, applied, amended or re-enacted and includes any subordinate legislation.

2.      Assignment. On the Effective Date, the Assignor hereby irrevocably sells, conveys, transfers and assigns to the Assignee, for good and valid consideration, all of the Assignor's right, title, benefit and interest in and to, or arising under or in connection with the claim for payment or delivery (or equitable remedy if any) (and including but not limited to any "claim" of the Assignor as such term is defined in Section 101(5) of the Bankruptcy Code) of the Assignor in respect of the Claim including: (i) pursuant to the ISDA, GMRA, the Swap Guarantee General Guarantee (only insofar as it relates to the Claim), any Proof of Claim, the Proof of Debt, any Questionnaires, the Supporting Claim Documents, (ii) all rights to receive any cash, principal, interest, fees, expenses, damages, penalties and/or other amounts in respect of or in connection with the Claim, the Supporting Claim Documents, including without limitation, any securities, instruments and/or other property or distributions made by the Debtor or the Guarantor or their affiliates in respect of the Claim under or pursuant to any plan of reorganization or liquidation in the Administration or the Bankruptcy Case or otherwise, (iii) any and all claims, or causes of action against either the Debtor or the Guarantor and/or their respective affiliates and subsidiaries, any guarantor or third party and/or voting and other rights and benefits arising under or relating to any of the foregoing, (iv) the Assignor's claim against the Debtor or Debtor's affiliates in relation to any dividends or other cash distributions arising out of or derived from certain securities held by Debtor or its affiliates on behalf of Assignor (whether the securities have subsequently been returned by the Debtor or any of its affiliates to Assignor or otherwise) in connection with the ISDA and/or the GMRA, (v) any and all proceeds of any of the foregoing. All of the foregoing rights described in the preceding sentence are hereinafter collectively referred to as the "Transferred Claim Rights". The Transferred Claim Rights shall not include any obligation or liability, contingent or otherwise, of the Assignor and shall not include any claim, right, title, benefit, interest in or entitlement to any amount due to Assignor other than those arising under the Transferred Claim Rights (such claims the "Excluded Claims"). For the avoidance of doubt, Excluded Claims shall include any entitlements by the Assignor to pre-Administration client money not originating from or arising out of the ISDA and/or the GMRA and any other secured or unsecured claims arising out of or in connection with such entitlements that do not originate from or arise out of the ISDA and/or the GMRA.

3.      Payment of Purchase Price. The consideration payable by the Assignee to the Assignor for the Transferred Claim Rights, the receipt and sufficiency of which is hereby

acknowledged by the Assignor, is the Purchase Price. On the Effective Date, Assignee shall pay, for same day value, the Purchase Price to Assignor by wire transfer to Assignor's account on Schedule I.

If either Claim is irreversibly allowed or recognized in an amount in excess of the relevant Claim Amount, Assignee shall purchase all of such excess for a price equal to the amount of such excess multiplied by the relevant purchase rate and such excess shall be deemed to be part of the Transferred Claim Rights for all purposes in this Agreement. The relevant purchase rate for the LBHI Claim is 16.5% and the relevant purchase rate for the LBIE Claim is 26.25%.

    4.    Conditions Precedent for Assignee. Assignee's obligation to pay the Purchase Price to Assignor and its right to acquire the Transferred Claim Rights on the Effective Date shall be subject to the conditions that:

    (a)    Assignor's representations and warranties in this Agreement shall be true and correct on the Effective Date;

    (b)    Assignor shall have complied in all material respects with all covenants required by this Agreement to be complied with by it on or before the Effective Date; and

    (c)    Assignee shall have received (A) this Agreement duly executed on behalf of Assignor; (B) the Evidence of Transfer of Claim in the form attached hereto as Exhibit A, duly executed on behalf of Assignor, to be filed with the Bankruptcy Court; (C) the Notice to the Debtor in the form attached hereto as Exhibit B; and (D) the documents listed in Exhibit C.

    5.    Conditions Precedent for Assignor. Assignor's obligation to sell, transfer, assign, grant, and convey the Transferred Claim Rights to Assignee on the Effective Date and Assignor's right to payment of the Purchase Price shall be subject to the conditions that:

    (a)    Assignee's representations and warranties in this Agreement shall have been true and correct on the Effective Date;

    (b)    Assignee shall have complied in all material respects with all covenants required by this Agreement to be complied with by it on or before the Effective Date; and

    (c)    Assignor shall have received this Agreement duly executed on behalf of Assignee.

    6.    Assignor Representation – Proof of Claim. The Assignor hereby represents, warrants and covenants to the Assignee, as of the Effective Date, that

    (a)    (i) the Proof of Claim and Questionnaires with respect to each LBHI Claim was duly and timely filed in the Bankruptcy Case in accordance with the Bar Date Order; and (ii) the Proof of Claim and Questionnaires with respect to each LBHI Claim has not been revoked, withdrawn, amended or modified, and no right thereunder has been waived or modified in any way except as notified in writing to Assignee prior to the date hereof, and all statements in such Proofs of

-6-

HY01/UBS

Claim and Questionnaires are true and correct as of the date hereof; and (iii) except for the Proofs of Claim and Questionnaires, no proofs of claim, questionnaires or notices of claim in respect of the Claims have been or will be filed by or on behalf of Assignor in the Bankruptcy Case or any related proceeding without the prior written consent or direction of Assignee; and

(b)    The Proofs of Debt with respect to each LBIE Claim were duly and timely filed on September 14, 2010, which date is before the applicable bar date set by the Administration, and (ii) the Proofs of Debt have not been revoked, withdrawn, amended or modified, and no right thereunder has been waived or modified in any way except as notified in writing (including by electronic mail or other electronic media) to the Assignee prior to the date hereof, and all statements in each Proof of Debt are true and correct as of the date hereof, and (iii) except for the Proofs of Debt, no proofs of claim or notices of claim in respect of the Debtor in relation to the Claim has been or will be filed by or on behalf of Assignor in the Administration or any other proceeding without the prior written consent of Assignee;

(c)    From and after the Effective Date, the Assignor acknowledges and agrees that the Assignee shall be deemed to be the owner of the Claim and any related Proof of Claim and Proof of Debt and shall be entitled to exercise all rights, title, benefit and interest in or arising in connection with the Claim and any related Proof of Claim and Proof of Debt and shall be entitled to identify itself as the owner of the Claim and any related Proof of Claim and Proof of Debt on the records of the Bankruptcy Court. For the avoidance of doubt, the Assignee acknowledges that it shall have no rights, title, benefit or interest in any proof of debt or proof of claim in relation to the Excluded Claims.

7.    Assignor Representations.    The Assignor hereby represents and warrants to the Assignee, as of the Effective Date, that:

(a)    Assignor has been assigned a GAC reference in respect of its LBIE Claims which is 1243928 and has filed Proof of Claim No. 20093.

(b)    Assignor has not acceded to the CRA or the Consensual Approach, in each case with respect to the Claim only, and irrevocably undertakes and commits that it will not accede to the CRA or the Consensual Approach, in each case with respect to the Claim only. For the avoidance of doubt, this does not affect Assignor's discretion to accede to the CRA or Consensual Approach in relation to any other claim or entitlement of whatever form not comprised in or arising out of the Claim, and Assignor is under no obligation to verify whether or not such action would impact in any way Assignee's ability to accede to the CRA or the Consensual Approach (or refrain from acceding to either) with respect to the Claim or affect the Transferred Claim Rights. Notwithstanding anything to the contrary, Assignor shall not accede, and has not acceded, to the CRA or Consensual Approach prior to the later of the execution of this Agreement and the electronic submission of the Evidence of Transfer of Claim and the Notice (or, in the case of non-electronic submission (which shall be by courier), after the execution, submission to and receipt by the Bankruptcy Court and the Debtor as evidenced by means customary for the relevant courier service (i.e., executed or stamped waybill or the like);

(c)    the Assignor has full power and authority to execute and perform all of its

-7-

obligations under this Agreement, the Evidence of Transfer of Claim and the Notice, and to sell and transfer the Transferred Claim Rights to Assignor and perform its obligations hereunder without the consent of any person or entity;

(d)    this Agreement constitutes a valid, legal and binding agreement of the Assignor, enforceable against the Assignor in accordance with its terms (subject to applicable bankruptcy, reorganisation, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application) and each of the Evidence of Transfer of Claim and the Notice constitutes a valid, legal and binding agreement of the Assignor, enforceable against the Assignor in accordance with its terms (subject to applicable bankruptcy, reorganisation, insolvency, moratorium or similar laws affecting creditors' rights generally and subject, as to enforceability, to equitable principles of general application);

(e)    (i) the Assignor is the sole and original owner of and has good legal and beneficial title to the Claim and the related Transferred Claim Rights; (ii) such Claim and the related Transferred Claim Rights are not subject to any Liens; and (iii) the Assignor has not previously sold, factored, pledged, subordinated, encumbered, participated or assigned all or any of the Claim to a third party, and will not do any of the foregoing (except as provided herein) and Assignor owns no other interest with respect to the Debtor regarding the Claim;

(f)    the Assignor has not previously received payment or other transfers in respect of the Transferred Rights in whole or in part, has received no notice of any such payments or other transfers, and is not aware of any reason for a reduction in the Claim Amount;

(g)    neither the execution, delivery or performance of this Agreement, the Evidence of Transfer of Claim or the Notice, nor consummation of the transactions contemplated hereby or thereby, will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting the Assignor or any of its assets or properties or the Transferred Claim Rights;

(h)    except as required by Rule 11.11 of the Insolvency Rules and Section 136 of the United Kingdom Law of Property Act 1925 and as prescribed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, no consent of, registration with, or approval of, or any other action by, any relevant person or entity (including any state or federal regulatory agency or commission) is or will be required for the Assignor to execute, deliver, and perform its obligations under, this Agreement, the Evidence of Transfer of Claim or the Notice, or for the assignment contemplated herein to become effective, and no consent of, registration with, or approval of, or any other action by, any relevant person or entity (including any state or federal regulatory agency or commission) is or will be required for the Assignor to execute, deliver, and perform its obligations under, this Agreement;

(i)    no objections have been made or threatened with respect to the Claim, any part thereof, or to any other part of the Transferred Claim Rights relating thereto, and there is no pending action or suit arising out of the Claim or assigned rights to recover amounts from Assignor for which Assignor has received service of process or of which Assignor has received written notice or is aware of, including, without limitation, any suit based on any acts or omissions by Assignor relating to its role as a creditor of the Debtor and the Guarantor;

HY01/UBS

(j)     Assignor did not hold on the Petition Date, any collateral or funds or property of or owe any amounts or property to the Debtor or the Guarantor or any of their affiliates that would affect the Claim, other than as disclosed in writing or by electronic mail or other electronic media to the Assignee prior to the date hereof; and neither the Assignor nor any of its affiliates has effected or received, and shall not receive or accept, the benefit or loss of any set-off against the Debtor, the Guarantor or any of their affiliates that would affect the Claim, which has not already been included in the relevant Proof of Debt or Proof of Claim, and which has been provided to Assignee;

(k)     Neither the Assignor nor any of its affiliates has effected or received, and neither the Assignor nor any of its affiliates shall effect or receive, the benefit or loss of any set-off against the Debtor, the Guarantor or any of their affiliates that would affect the Claim and no such rights of set-off have been threatened;

(l)     the Assignor is not and has not been at any time "connected" with the Debtor or the Guarantor as such term is used in the Insolvency Act or the Companies Act and the Assignor has not had any relationship with the Debtor or the Guarantor that would result in the Assignee being treated in a manner otherwise than pari passu with other unsecured, non-preferential, creditors of the Debtor or the Guarantor under any insolvency laws of England;

(m)     the Assignor is not an insider of the Debtor or the Guarantor or any of their affiliates within the meaning of Section 101(31) of the Bankruptcy Code, and is not now or has ever been a member of any creditors' committee appointed in the Bankruptcy Case;

(n)     the Assignor (i) is an "accredited investor", as such term is defined in Rule 501 of the Securities Act of 1933, 15 U.S.C. §§77a et seq., as amended, and the rules and regulations promulgated under it, (ii) is aware that the consideration received herein for the sale of the Transferred Claim Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization or liquidation confirmed by a court at the request of the Bankruptcy Court or as proposed by the Administrators, or a court supervised liquidation, in the Bankruptcy Case, (iii) has adequate information concerning the business and financial condition of the Debtor and the Guarantor and the status of the Administration and the Bankruptcy Case to make an informed decision regarding the sale of the Transferred Claim Rights, (iv) has independently and without reliance upon the Assignee, and based on such information as the Assignor has deemed appropriate, made its own analysis and decision to enter into this Agreement;  (v) is a sophisticated seller; and (vi) acknowledges that Assignee is a member of the LBHI Committee and in connection therewith may be in receipt of material information unavailable to other parties, including Assignor;

(o)     (i) the Assignor has delivered true, correct and complete copies of the Supporting Claim Documents; (ii) all of the Supporting Claim Documents (other than (x) any publicly available information accessed through the website maintained by the Administrators related to the Administration (http://www.pwc.co.uk/eng/issues/lehman_updates.html), (y) any publicly available information accessed through the website maintained in connection with the LBHI proceeding (http://www.lehman-docket.com/) by the claims agent for the LBHI Proceeding; or (z) information actually obtained by the Assignee (other than through the documents delivered or disclosures made by the Assignor, including through direct dialogue and interaction with the Administrators)) are listed on Exhibit C hereto; (iii) the information contained in each of the

-9-

Supporting Claim Documents, including those listed on Exhibit C hereto, is true and complete in all material respects; (iv) other than such documents listed in Exhibit C hereto and other than (x) any publicly available information accessed through the website maintained by the Administrators related to the Administration (http://www.pwc.co.uk/eng/issues/lehman_updates.html), (y) any publicly available information accessed through the website maintained in connection with the LBHI proceeding (http://www.lehman-docket.com/) by the claims agent for the LBHI Proceeding; or (z) information actually obtained by the Assignee (other than through the documents delivered or disclosures made by the Assignor,including through direct dialogue and interaction with the Administrators)), except in the case of (x), (y) and/or (z), to the extent such information makes reference to any of the Claim or to Seller, there are no other agreements, documents, trade confirmations, correspondence or court papers or other information affecting the Claim; and (vi) the Assignor has not amended, modified, waived or supplemented the Supporting Claim Documents, including those listed on Exhibit C hereto, (other than as notified in writing (including by electronic mail or other electronic media) to the Assignee prior to the date hereof) and shall not amend, modify, waive or supplement such documents without the prior written consent of Assignee;

        (p)    neither the Assignor nor any of its affiliates have engaged or will engage in any acts or conduct, or have made any omissions or will make (to the extent it has knowledge) any omission (other than in connection with activities or omissions in accordance with and pursuant to a direct instruction from Assignee under this Agreement) that will result in the equitable subordination of the Transferred Claim Rights, or a less favorable recovery, payments, distributions or treatment with respect to the Transferred Claim Rights, relative to the treatment received by other creditors generally holding any other general unsecured unsubordinated claim against the Debtor and the Guarantor (as the case may be). For the avoidance of doubt, the Assignor shall not be liable to the Assignee if any actions it takes solely with respect to the Excluded Claims (after the execution of this Agreement and the electronic submission to the Bankruptcy Court and the Debtor of the Evidence of Transfer of Claim and Notice, respectively (or, in the case of non-electronic submission (which shall be by courier), after the execution, submission to and receipt by the Bankruptcy Court and the Debtor as evidenced by means customary for the relevant courier service (i.e., executed or stamped waybill or the like)) has an adverse effect on the Transferred Claim Rights;

        (q)    the Assignor has (i) performed and discharged in full all of its obligations affecting the Claim to the Debtor and Guarantor and their affiliates, including any obligations under ISDA and the GMRA or otherwise and (ii) delivered the relevant Supporting Claim Documents to the Debtor and the Guarantor and their affiliates, if applicable, in accordance with the ISDA and the GMRA, including the Swap Guarantee and General Guarantee;

        (r)    no proceedings are pending against or, to the best of its knowledge, threatened against the Assignor or any of its affiliates before any relevant governmental authority that will adversely affect the Claim, the Transferred Claim Rights or any action to be taken by the Assignor under this Agreement, the Evidence of Transfer of Claim or the Notice;

        (s)    either (i) no interest in the Claim is being sold by or on behalf of one or more Benefit Plans or (ii) the transaction exemption set out in one or more PTEs is applicable with respect to the sale of the Claim;

-10-

HY01/UBS

(t)     no broker, finder or other entity acting under the authority of the Assignor or any of its affiliates is entitled to any broker's commission or other fee in connection with the transaction for which the Assignee could be responsible;

(u)     the Guarantor has not delivered any termination notice under the Swap Guarantee;

(v)     the Assignor is not, and never has been, "insolvent" within the meaning of Section 1 201(23) of the New York Uniform Commercial Code or within the meaning of Section 101(32) of the Bankruptcy Code.

(w)     neither the Assignor nor any person or entity acting on its behalf have entered into and will enter into any agreements or instruments with respect to the Transferred Claim Rights other than this Agreement.

(x)     the Assignor is, with respect to the Claim, a swap participant within the meaning of Section 101(53C) of the Bankruptcy Code.

(y)     the Assignor has not subordinated or agreed to subordinate all or any portion of the Claim to any other unsecured obligation of the Debtor or Guarantor or any of their affiliates including, without limitation, any unsecured deficiency claim asserted by a secured creditor, nor is there any agreement subordinating the Claim with respect to any other unsecured, non-priority, non-administrative claim against the Debtor or the Guarantor or any of their affiliates.

(z)     Each Claim is a valid claim in the full Claim Amount against each of the Debtor and the Guarantor (except to the extent a reduction in the Claim Amount is due to (i) the quotations used and the valuations of the mark-to-market on the ISDA or the GMRA, as the case may be, on any of the trades outstanding at the time the ISDA or the GMRA, as the case may be, was terminated in accordance with the terms of the ISDA or the GMRA, as the case may be, or (ii) any currency conversion carried out by the Debtor in relation to the Claim Amount, unless such quotations, valuations and conversions were based upon wilfull misconduct, intentional fraud or collusion on the part of the Assignor) and is an undisputed and non-contingent claim based on amounts owed to Assignor by each of the Debtor (pursuant to the ISDA  and the GMRA) and the Guarantor (pursuant to the General Guarantee and the Swap Guarantee);

(aa)     the Assignor is aware that Assignee may resell the Transferred Claim Rights or any portion thereof at a profit, and acknowledges that Assignor has no claim thereto;

(bb)     the Transferred Claim Rights are not subject to any claim or right of setoff, recoupment, avoidance, subordination or preference actions, are not subject to disallowance on the grounds that the indebtedness that gives rise to the Claims is not due and owing and there are no legal or equitable defenses, or objections that have been or, to the knowledge of the Assignor, may be asserted by or on behalf of Debtor or any other party that may reduce the Claim Amounts or the assigned rights or affect the validity or enforceability of the Transferred Claim Rights.

(cc)     It is aware that the Purchase Price may differ from the amount ultimately distributed, allowed or admitted with respect to the Claim. It represents that it has adequate

-11-

HY01/UBS

information concerning the business and financial condition of the Debtor and the Guarantor and the status of the insolvency proceedings of the Debtor and the Guarantor to make an informed decision regarding the sale of the Transferred Claim Rights and that it has independently and without reliance on the other party, based on such information as it has deemed appropriate (including information available from the Administrators), made its own analysis and decision to enter into this Agreement.

8.    Assignee Representations. The Assignee hereby further represents and warrants to the Assignor, as of the Effective Date, that:

(a)    it is duly authorized and empowered to execute and perform this Agreement, the Evidence of Transfer of Claim and the Notice;

(b)    each of this Agreement and the Evidence of Transfer of Claim constitute a valid, legal and binding agreement of the Assignee, enforceable against the Assignee in accordance with its respective terms;

(c)    neither the execution, delivery or performance of this Agreement, the Evidence of Transfer of Claim nor the Notice nor consummation of the transactions contemplated hereby will violate or contravene any law, rule, regulation, order, agreement, or instrument affecting it;

(d)    except as required by Rule 11.11 of the Insolvency Rules and Section 136 of the United Kingdom Law of Property Act 1925 and as prescribed by Rule 3001 of the Federal Rules of Bankruptcy Procedure, no consent of, registration with, or approval of, or any other action by, any relevant person or entity (including any state or federal regulatory agency or commission) is or will be required for it to execute, deliver, and perform its obligations under, this Agreement, the Evidence of Transfer of Claim or the Notice, or for the assignment contemplated herein to become effective;

(e)    either (i) no interest in the Claim is being acquired by or on behalf of an entity that is, or at any time while the Claim held thereby will be, one or more Benefit Plans or (ii) the transaction exemption set out in one or more PTEs is applicable with respect to the purchase and holding of the Claim and the exercise of the Assignee's rights thereunder; and

(f)    the Assignee (i) is an "accredited investor", as such term is defined in Rule 501 of the Securities Act of 1933, 15 U.S.C. §§77a et seq., as amended, and the rules and regulations promulgated under it, (ii) is aware that the consideration received herein for the purchase of the Transferred Claim Rights may differ both in kind and amount from any distributions made pursuant to any plan of reorganization or liquidation confirmed by a court at the request of the Bankruptcy Court or as proposed by the Administrators, or a court supervised liquidation, in the Bankruptcy Case, (iii) has adequate information concerning the business and financial condition of the Debtor and the Guarantor and the status of the Administration and the Bankruptcy Case to make an informed decision regarding the purchase of the Transferred Claim Rights, and (iv) has independently and without reliance upon the Assignor, and based on such information as the Assignee has deemed appropriate, made its own analysis and decision to enter into this Agreement.

-12-

(g) It is aware that the Purchase Price may differ from the amount ultimately distributed, allowed or admitted with respect to the Claim. It represents that it has adequate information concerning the business and financial condition of the Debtor and the Guarantor and the status of the insolvency proceedings of the Debtor and the Guarantor to make an informed decision regarding the purchase of the Transferred Claim Rights and that it has independently and without reliance on the other party, based on such information as it has deemed appropriate (including information available from the Administrators), made its own analysis and decision to enter into this Agreement.

9.      Information Acknowledgement. Each party hereby acknowledges that (a) the other currently may have, and later may come into possession of, Excluded Information not known to the other and Assignor acknowledges that Assignee is a member of the LBHI Committee and in connection therewith certain employees of Assignee may be in receipt of material information unavailable to other parties, including Assignor, (b) each party has determined to sell or purchase the Transferred Claim Rights notwithstanding its lack of knowledge of the Excluded Information including, in the case of Assignor, information that certain employees of Assignee may have as a member of the LBHI Committee, and (c) neither party shall have any liability to the other, and each party waives and releases any claims that it might have against the other or any indemnitee thereof whether under applicable securities laws (if any) or otherwise, with respect to the nondisclosure of the Excluded Information in connection with the transactions contemplated hereby provided, however, that nothing in this paragraph shall limit, contradict or render untrue any representation or warranty made by the Assignor in Sections 6 and 7 or the Assignee in Section 8.

10.      Distributions and Notices. From and after the Effective Date, the Assignor shall remit to the Assignee, any payments and/or other distributions it receives solely in respect of the Transferred Claim Rights paid with respect to the Transferred Claim Rights and shall deliver to the Assignee any notices or other documents delivered to the Assignor in relation to the Transferred Claim Rights. The Assignor shall accept the same on behalf of the Assignee, and will hold any payments and/or distributions on behalf of and in trust for the Assignee to the extent that it is not prohibited by law from such acceptance, and will deliver same forthwith to the Assignee and in any event within five (5) Business Days of the Assignor's Knowing Receipt (as defined below) thereof in the same form received, with the endorsement of the Assignor where reasonably necessary or appropriate, provided that in the event Assignor is prohibited from accepting payments and/or distributions by law, it shall refuse such payments and/or distributions immediately, provide notice with reasonable detail to Assignee as soon as practicable, and in any event no later than the close of the business day on which the payment and/or distribution was made, and shall immediately instruct the party that made such payment and/or distribution to make such payment and/or distribution directly to the Assignee. If the Assignor fails to remit any such payments and/or other distributions that it receives within five (5) Business Days of its actual receipt thereof, then Assignor shall pay interest on such unpaid amounts from the date of its Knowing Receipt thereof to the date of payment to the Assignee at a rate per annum equal to the Interest Rate. To the extent that any Securities Distribution is issued in the name of the Assignor, then within five (5) Business Days of the Knowing Receipt of such Securities Distribution by or for the account of the Assignor, the Assignor shall take whatever steps are reasonably necessary to have such Securities Distribution reissued to or the ownership thereof promptly transferred to the Assignee. Should all or any portion of the

-13-

HY01/UBS

distributions and/or Securities Distributions on account of the Transferred Claim Rights actually received, directly or indirectly, by the Assignor not be assignable by Assignor to Assignee, then Assignor shall grant to Assignee a participation interest in the Transferred Claim Rights or such distributions or Securities Distributions, in accordance with applicable law.

From and after the Effective Date, the Assignee shall remit to the Assignor any payments and/or other distributions actually received by Assignee or by the third party to whom Assignee transfers the Transferred Claim Rights (the "Transferee") solely in respect of the Excluded Claims; provided that in the event Assignee is prohibited from accepting any such payments and/or distributions by law, it shall refuse such payments and/or distributions immediately, provide notice with reasonable detail to Assignor as soon as practicable, and in any event no later than the close of the business day on which the payment and/or distribution was made, and shall immediately instruct the the Administration to make such payment and/or distribution directly to the Assignor. If the Assignee fails to remit to the Assignor any payments and/or other distributions that it or the Transferee actually receives in respect of the Excluded Claims within two (2) Business Days of the date after its Knowing Receipt of the payment or distribution , then Assignee shall pay interest on such unpaid amounts from the date of its receipt thereof to the date of payment to the Assignor at a rate per annum equal to the Interest Rate. To the extent that any Excluded Securities Distribution is issued in the name of the Assignee, then within five (5) Business Days after the Knowing Receipt of such Excluded Securities Distribution by or for the account of the Assignee and the receipt of the Notice, the Assignee shall take whatever steps are reasonably necessary to have such Excluded Securities Distribution reissued to or the ownership thereof promptly transferred to the Assignor. Should all or any portion of any Excluded Securities Distributions on account of any Excluded Claim actually received by the Assignee not be assignable by Assignee to Assignor, then Assignee shall grant to Assignor a participation interest in such Excluded Securities Distributions, in accordance with applicable law Assignor shall not have any rights against such Transferee and shall only have rights against Assignee.

For purposes of the foregoing "Knowing Receipt" means that the recipient of the payment or distribution becomes aware, as part of its reconciliation process (whether as a result of its normal processes or as a result of an inquiry from the other party hereto, from a Debtor or otherwise), that the monies or securities in question are property of the other party hereto.

11.    Notices and Voting. Assignor agrees to take any vote, action or decision in respect of the Transferred Claim Rights in cases in which Assignor rather than the Assignee is entitled to vote, act or decide in a timely manner and solely in accordance with Assignee's instructions, and to take such further action with respect to the Transferred Claim Rights in the Administration and Bankruptcy Case as Assignee may from time to time reasonably request.

12.    Assignor's Further Actions. The Assignor hereby covenants and agrees that, from and after the Effective Date: (a) the Assignor shall not engage in any act or conduct that will to its knowledge result in the Disallowance of the Transferred Claim Rights or any distributions and/or payments made in respect thereof, or make any omission (provided that to the extent that Assignor has delivered all notices in compliance with Section 10 herein, Assignor shall be liable only to the extent instructed or not instructed by Assignee) that will result in the Disallowance of the Transferred Claim Rights or any distributions and/or payments made in respect thereof; and (b) the

-14-

Assignor shall execute and deliver, or cause to be executed and delivered, all such instruments and documents (including any invoices, bills or other supporting documents evidencing the Claim), and take all such action (including submitting, amending or supplementing the Proofs of Claim) as the Assignee may reasonably request (provided that the Assignee or the relevant Transferee shall not make such request unless it has used its commercially reasonable efforts to do such acts first and has reasonably determined that the Assignee or the relevant Transferee is prohibited by the Administration from taking all such actions, or it would be impracticable or severely and disproportionately difficult for it to do so in either case in comparison with the Assignor) in order to effectuate the intent and purposes of, and to carry out the terms of this Agreement, including with respect to any defense of the Claim as described herein or voting with respect to the Claim, and to cause the Assignee to become the legal and beneficial owner of the Transferred Claim Rights. For the avoidance of doubt, the Assignor shall not be liable to the Assignee if any actions it takes solely with respect to the Excluded Claims after the execution of this Agreement and the electronic submission of the Evidence of Transfer of Claim and Notice , respectively (or, in the case of non-electronic submission (which shall be by courier), after the execution, submission to and receipt by the Bankruptcy Court and the Debtor as evidenced by means customary for the relevant courier service (i.e., executed or stamped waybill or the like), has an adverse effect on the Transferred Claim Rights.

13.    Assignee's Rights in Claim.

(a)    The Assignee shall have no obligation to prove, defend, or take any affirmative action with respect to proving the validity or amount of the Claim. The Assignor's obligations under this Agreement shall not be limited in any way by the Assignee's actions or inactions to obtain the allowance or enforce the Claim except that the Assignor shall have no obligation to obtain the allowance or enforce the Claim after the date of the Evidence of Transfer of Claims if such actions can be taken by the Assignee or any Transferee unless the Assignee or the relevant Transferee has used its commercially reasonable efforts to obtain the allowance or enforce the Claim first and has reasonably determined (upon consultation with the Assignor) that it would be impracticable or severly and disproportionately difficult for it to do so in comparison with Assignor. In such case the Assignor shall take such action as the Assignee may reasonably request in order to prove or defend the Claim.

(b)    The Assignee and the Assignor acknowledge and agree that the Assignee is not assuming, and the Assignee shall not be responsible for, any liabilities or obligations of the Assignor to the Debtor or the Guarantor or to any other person, whether arising hereunder or otherwise.

(c)    Except as otherwise provided in Sections 7, 10, 11, 12, 13, 14 and 15 of this Agreement, the Assignor shall have no obligation to prove, defend, or take any affirmative action with respect to the Claim.

14.    Defense of Claim; Rights of Parties. (a) Assignor hereby irrevocably appoints Assignee as its true and lawful attorney in fact solely with respect to the Transferred Claim Rights, and authorizes Assignee to act in Assignor's name, place and stead, to demand, sue for, settle, compromise and recover all such amounts which are, or may hereafter become due and payable for,

-15-

or on account of the Transferred Claim Rights herein assigned and to take all action with respect to the Transferred Claim Rights. Assignor hereby grants unto Assignee full authority to do all things necessary to enforce the Transferred Claim Rights and Assignor's rights thereunder. Assignor agrees that the powers granted in this Section are discretionary in nature and exercisable at the sole option of Assignee. If Assignee, in its sole discretion, assumes control of the defense and/or settlement of the Claim, Assignor shall use commercially reasonable efforts to cooperate and assist with Assignee and provide Assignee with whatever assistance is reasonably requested by Assignee.

(b)    Assignor shall not compromise or settle the Transferred Claim Rights or change any aspect of the Claim without the prior written consent of Assignee, and shall consult with Assignee regarding actions with respect to the Transferred Claim Rights. In performing any of its obligations under this Section and in otherwise complying with its obligations under this Agreement, Assignor hereby covenants and agrees to act commercially reasonably at all times and to act pursuant to Assignee's instructions where Assignor is reasonably requested to do so by Assignee, including preparing and filing notices, instruments and documents to cause the Assignee to be the legal and beneficial owner of the Transferred Claim Rights.

15.    Indemnities. Each of Assignor, on the one hand, and Assignee, on the other, agrees to indemnify the other party and its officers, directors, employees, agents, partners, affiliates and controlling persons (collectively "Related Persons") from losses, claims, damages and liabilities in the nature of normal contract damages as incurred and reasonable legal fees and costs of enforcing this Agreement ("Loss"), that result from, arise out of or relate to any breach of Assignor's or Assignee's (as applicable) representations, warranties, covenants or obligations under this Agreement. The Assignee and the Assignor further agree to indemnify the other party and its Related Persons from any Loss which results from, arises out of or relates to any obligation to disgorge to or to reimburse or pay any person for any payments, property or collateral received or applied by that party under or in connection with the Claim or the Excluded Claims, as applicable. Assignee agrees that its damages for a breach of any representation under Section 7 herein shall be limited to its Purchase Price, all reasonable legal fees and costs and Overnight Interest on such amounts, calculated from the date of this Agreement and compounded daily until the date of payment.

16.    Notices.

(a)    All payments and deliveries of cash, securities or other amounts to be paid, made and/or delivered under or pursuant to this Agreement, shall be paid, made and/or delivered, as the case may be, in accordance with the parties' instructions as set out on Schedule I hereto.

(b)    All communications between the Assignee and the Assignor, or notices or other information sent under this Agreement shall be in writing, hand-delivered or sent by overnight courier or telecopier, and addressed to the relevant party at its address or facsimile number specified above, or at such other address or facsimile number as such party may request in writing, shall be effective upon receipt and will be deemed to be given as follows: (i) if delivered in person, at time of delivery; (ii) if couriered, one day after being dispatched in a correctly addressed envelope; (iii) if by fax, when received in legible form; and (iv) if by email when received in legible form.

-16-

(c)     The Notice will be deemed to be given as follows: (i) if delivered in person (A) to an address outside of the UK, at the time of delivery, and (B) to an address within the UK and such address is the last known place of such person's business, at time of delivery; (ii) if sent by registered post, at the time at which the registered letter would be delivered in the ordinary course of business; (ii) if couriered, upon delivery confirmation from such courier of the recipient's receipt thereof; (iv) if by fax, when received in legible form; and (v) if by email when received in legible form.

17.    Miscellaneous.

(a)     This Agreement, together with any exhibits hereto, constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings or representations pertaining to the subject matter hereof, whether oral or written.  There are no warranties, representations or other agreements between the parties in connection with the subject matter hereof except as specifically and expressly set out herein.  All representations, warranties, covenants and agreements contained herein shall survive the execution and delivery of this Agreement and the purchase and sale of the Claim.  This Agreement may be signed in counterparts (including via facsimile), each of which shall be an original and all of which taken together shall constitute one agreement.  No amendment of any provision of this Agreement shall be effective unless it is in writing and signed by the parties and no waiver of any provision of this Agreement, nor consent to any departure by either party from it, shall be effective unless it is in writing and signed by the affected party, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

(b)     This Agreement shall inure to the benefit of, be binding upon and shall be enforceable by the parties hereto.  The Assignee may sell, assign, transfer, convey and/or participate all or any  portion of the Transferred Claim Rights and its rights and obligations under this Agreement without the consent of or notice to the Assignor.  Assignor may not assign or delegate any of its rights or obligations under this Agreement without the consent of the Assignee.

(c)     Neither party shall be deemed to have drafted or to be the drafter of this Agreement and this Agreement shall be interpreted as though drafted jointly by the parties hereto.

(d)     THIS AGREEMENT, THE EVIDENCE OF TRANSFER OF CLAIM AND THE NOTICE SHALL BE CONSTRUED AND THE OBLIGATIONS OF THE PARTIES SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT GIVING EFFECT TO ANY CHOICE OF LAW PRINCIPLES THAT WOULD REQUIRE THE APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION). THE ASSIGNOR AND THE ASSIGNEE CONSENT TO THE EXCLUSIVE JURISDICTION OF THE FEDERAL AND STATE COURTS IN THE STATE OF NEW YORK.

(e)     THE ASSIGNOR HEREBY WAIVES ANY NOTICE OR HEARING REQUIREMENT IMPOSED UNDER THE BANKRUPTCY CODE OR THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (INCLUDING, BUT NOT LIMITED TO, RULE 3001 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE), AND CONSENTS TO THE SUBSTITUTION OF THE ASSIGNEE FOR THE ASSIGNOR FOR ALL PURPOSES IN THE

-17-

HY01/UBS

CASE IN CONNECTION WITH THE TRANSFERRED CLAIM RIGHTS, INCLUDING, WITHOUT LIMITATION, FOR VOTING AND DISTRIBUTION PURPOSES WITH RESPECT TO THE CLAIM.

(f)     THE PARTIES HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT THAT THEY MAY HAVE TO TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION, OR IN ANY LEGAL PROCEEDING, DIRECTLY OR INDIRECTLY BASED UPON OR ARISING OUT OF THIS AGREEMENT OR THE TRANSACTION (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY).   EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF THE OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION.

(g)     A person who is not a party to this Agreement may not enforce any of the terms of this Agreement under the United Kingdom Contracts (Rights of Third Parties) Act 1999 or otherwise except as provided herein.

18.   Disclosure.

(a)     each party agrees that, without the prior consent of the other party, it shall not disclose the contents of this Agreement (including Purchase Price) or the Supporting Claim Documents to any entity, except that any party may make any such disclosure (i) if required to do so by any law, court, regulation, subpoena or other legal process, (ii) to any governmental authority or self-regulatory entity having or asserting jurisdiction over it, (iii) if its attorneys advise it that it has a legal obligation to do so or that failure to do so may result in it incurring a liability to any other entity or sanctions that may be imposed by any governmental authority, (iv) to its respective affiliates and the directors, officers, employees, agents, advisors, counsel and auditors of such party and of such party's affiliates, or (v) as set forth in Exhibits A and B hereto . In addition to the disclosures permitted by the preceding sentence Assignee, may disclose the contents of this Agreement (other than the Purchase Price) and the Supporting Claim Documents to the Debtor, the Guarantor and any of their affiliates.

(b)     the Assignee may disclose (i) the contents of this Agreement (but not the contents of the Purchase Price) and the Supporting Claim Documents and (ii) any failure by the Assignor to pay amounts when due, in each case to any proposed transferee, assignee, participant, or other entity proposing to enter into contractual relations with the Assignee in respect of the Transferred Claim Rights or any part of them, provided, however, that such proposed transferee, assignee, participant or other entity will be bound by the substantially similar non-disclosure requirements as is the Assignee pursuant to this Agreement.

HY01/UBS

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement by their duly authorized representatives as of the date first written above.

**BLUEBAY ASSET MANAGEMENT PLC acting as agent for BLUEBAY FUNDS ACTING ON BEHALF OF ITS SUB-FUND, BLUEBAY HIGH YIELD BOND FUND**

By: _____

    Name:  **Lucien Orlovius**
    Title:  Director


**UBS AG, STAMFORD BRANCH
By: UBS SECURITIES, LLC, as agent**

By: _____

    Name:
    Title:

## SCHEDULE I

### PARTIES' CONTACT INFORMATION AND PAYMENT INSTRUCTIONS

**The Assignor:**

c/o BlueBay Asset Management plc
77 Grosvenor Street
London W1K 3JR
Attention: Spencer Woodward
Email.: swoodward@bluebayinvest.com
Telephone No.: +442073893633


**USD CASH Instructions:**
**Intermediary: CITIUS33XXX**

**Beneficiary: BBHCUS33**

**Account: 09250276**

**ABA: 021000089**

**FFC: 6000459**


**The Assignee:**

677 Washington Boulevard
Stamford CT 06901
Attention:  Michael Cerniglia
Email.: michael.cerniglia@ubs.com
Telephone No.: +1 203 719 4009

**USD CASH Instructions:**

| | |
|---|---|
| **Pay to:** | UBS AG, Stamford Branch |
| **Method of Payment:** | *If Fed Funds use:* ABA No. 026 007 993 |
| | *If CHIPS use:* CHIPS ABA No. 0799 |
| **For Credit to:** | *House Account No.* 101-WA-860565-018 |
| **Reference:** | BlueBay HY01 |
| **Attention of:** | Banking Product |

Services
Michael Cerniglia

## EXHIBIT A  FORM OF EVIDENCE OF TRANSFER OF CLAIM

**TO:**    Lehman Brothers Holdings Inc. as the Guarantor (for the purposes of this Notice the
"<u>Debtor</u>") and the Bankruptcy Court (as defined below).

For value received, the adequacy and sufficiency of which are hereby acknowledged,
BlueBay Funds acting on behalf of its sub-fund, BlueBay High Yield Bond Fund ("<u>Assignor</u>")
unconditionally and irrevocably hereby sells, transfers and assigns to UBS AG, Stamford Branch (the
"<u>Assignee</u>") pursuant to a Transfer of Claim Agreement dated November 17, 2010 between the
Assignor and the Assignee, all right, title, interest, claims and causes of action in and to, or arising
under or in connection with (i) a proof of claim no. 20093 against Lehman Brothers Holdings Inc. as
Debtor, one of the debtors-in-possession in the chapter 11 reorganization case entitled, In re Lehman
Brothers Holdings Inc., et al., Chapter 11 Case Number 08-13555 (JMP) (Jointly Administered),
pending in the United States Bankruptcy Court for the Southern District of New York (the
"<u>Bankruptcy Court</u>") , (ii) a general unsecured claim (as such term is defined in Section 101(5) of
the U.S. Bankruptcy Code) against the Debtor arising under the Unanimous Written Consent of the
Executive Committee of the Board of Directors of the Debtor, dated as of June 9, 2005 with respect
to the the ISDA Master Agreement dated 7/7/2006 between Lehman Brothers International (Europe)
and the Assignor and related documents (the "<u>ISDA</u>) and the GMRA (as defined below)only (the
"<u>General Guarantee Claim</u>" and together with  the ISDA Guarantee Claim (as defined below), andthe
proofs of claim described in clause (i), the "<u>Claims</u>") pursuant to which the Debtor fully guaranteed
the payment of all liabilities, obligations and commitments of the Debtor relating to the ISDA  and
the Global Master Repurchase Agreement (GMRA) dated as of May 6, 2004 between the Assignor
and Lehman Brothers International (Europe) and documents related thereto. For the avoidance of
doubt, the assignment does not relate to any claims other than those originating from or arising out of
the ISDA and/or the GMRA. Amounts owed by the Debtor to the Assignor solely in connection with
claims that do not arise from or originate out of the ISDA and/or the GMRA, shall be paid directly to
the Assignor, and any communication solely in respect of claims not originating from or arising out
of the ISDA  and/or the GMRA (including, for the avoidance of doubt, any pre-administration client
money claims ) shall continue to be sent exclusively to the Assignor or its authorized agents.

The Assignor hereby waives any objection to the transfer of the Claims to the Assignee on
the books and records of the Debtor and the Bankruptcy Court, and hereby waives to the fullest
extent permitted by law any notice or right to a hearing as may be prescribed by Rule 3001 of the
Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or
applicable law. The Assignor acknowledges and understands, and hereby stipulates, that an order of
the Bankruptcy Court may be entered without further notice to the Assignor transferring to the
Assignee the Claims and recognizing the Assignee as the sole owner and holder of the Claims. The
Assignor further directs the Debtor, the Bankruptcy Court and all other interested parties that all
further notices relating to the Claims, and all payments or distributions of money or property in
respect of the Claims, shall be delivered or made to the Assignee.

Assignee's information is as follows:

677 Washington Boulevard
Stamford CT 06901
Attention:  Michael Cerniglia
Email.: michael.cerniglia@ubs.com

Telephone No.: +1 203 719 4009

IN WITNESS WHEREOF, this EVIDENCE OF TRANSFER OF CLAIM IS EXECUTED THIS
_____ day of ____, 2010

**ASSIGNOR:**

**BlueBay Asset Management plc acting as
agent for** BlueBay Funds acting on behalf of
its sub-fund, BlueBay High Yield Bond Fund

**ASSIGNEE:**

**UBS AG, Stamford Branch
By: UBS Securities, LLC, as agent**

By:_____

     Name:

     Title:

By: _____

     Name:

     Title:

## EXHIBIT B NOTICE

TO:    Lehman Brothers International (Europe) (in Administration)
       c/o PricewaterhouseCoopers
       25 Bank Street,
       London,
       E14 5LE

Date:  As of November 17, 2010

      Transfer of Claim Agreement dated November 17, 2010 between BlueBay Funds acting on behalf of its sub-fund, BlueBay High Yield Bond Fund (the "Assignor") and UBS AG, Stamford Branch (the "Assignee") under which various claims against Lehman Brothers International (Europe) (in Administration) (the "Debtor") were transferred (the "Assignment Agreement").

      This letter constitutes notice to you that under the Assignment Agreement the Assignor has assigned to the Assignee has unconditionally and irrevocably sold, transferred and assigned to UBS AG, Stamford Branch (the "Assignee") pursuant to a Transfer of Claim Agreement dated November 17, 2010 between the Assignor and the Assignee, all right, title, interest, claims and causes of action in and to, or arising under or in connection with  (i)an ISDA Master Agreement dated 7/7/2006 between Lehman Brothers International (Europe) and the Assignor and related documents (the "ISDA)and (ii) a Global Master Repurchase Agreement dated as of May 6, 2004 between the Assignor and the Debtor and documents related thereto (the GMRA). For the avoidance of doubt, amounts owed by the Debtor to the Assignor that are not in connection with the ISDA  and the GMRA(including without limitation any pre-administration client money claims) shall be paid directly to the Assignor, and any communications that are solely in relation to any claims other than those arising under the ISDA  and the GMRAshall continue to be sent exclusively to the Assignor or its authorized agents.

      The Assignor hereby waives any objection to the transfer of the Claim to the Assignee on the books and records of the Debtor.  The Assignor acknowledges and understands, and hereby requests the Administrators to change its records without further notice to the Assignor transferring to the Assignee the Claim and recognising the Assignee as the sole owner and holder of the Claim. The Assignor further directs the Administrators and all other interested parties that all further notices relating to the Claim, and all payments or distributions of money or property in respect of the Claim, shall be delivered or made to the Assignee.

      Assignee's information and wire instructions are as follows:

677 Washington Boulevard
Stamford CT 06901
Attention:  Michael Cerniglia
Email.: michael.cerniglia@ubs.com
Telephone No.: +1 203 719 4009

**USD CASH Instructions:**
      **Pay to:**      UBS AG, Stamford

Branch

| | |
|---|---|
| **Method of Payment:** | *If Fed Funds use:*<br>ABA No. 026 007 993 |
| | *If CHIPS use:*<br>CHIPS ABA No. 0799 |
| **For Credit to:** | *House Account No.*<br>101-WA-860565-018 |
| **Reference:** | BlueBay HY01 |
| **Attention of:** | Banking Product<br>Services<br>Michael Cerniglia |

Please acknowledge this letter by signing and returning the attached acknowledgement to the Assignee.

**ASSIGNOR:**                                  **ASSIGNEE:**

**BlueBay Asset Management plc acting as**     **UBS AG, Stamford Branch**
**agent for** BlueBay Funds acting on behalf of   **By: UBS Securities, LLC, as agent**
its sub-fund, BlueBay High Yield Bond Fund

By: _____          By: _____
    Name:                                              Name:
    Title:                                             Title:

**Form of Acknowledgement of Notice of Assignment**

To:     UBS AG, Stamford Branch (the "<u>Assignee</u>")

From: The Joint Administrators of Lehman Brothers International (Europe)
        c/o PricewaterhouseCoopers
        25 Bank Street
        London E14 5LE

Dear Sirs:

<u>Lehman Brothers International (Europe)</u>

1.      We acknowledge receipt of the notice of assignment between BlueBay Funds acting on
        behalf of its sub-fund, BlueBay High Yield Bond Fund (the "<u>Assignor</u>") and the Assignee
        dated as of November 17, 2010 (the "<u>Notice</u>").

2.      Terms defined in the Notice shall bear the same meanings when used herein.

Yours faithfully,


.........................................
The Joint Administrators of Lehman Brothers International (Europe)

## **EXHIBIT C**

### **SUPPORTING CLAIM DOCUMENTS AND PROOF OF CLAIM**

All documents contained in the CD Rom under the name "Files.rar" sent by Assignor to Assignee.

## EXHIBIT D

## RULE 272(3) OF THE INSOLVENCY RULES 1986

A proof of claim must:

(a)    be made out by, or under the direction of, the creditor and signed by him or a person authorised in that behalf; and

(b)    state the following matters:

(i)    the creditor's name and address;

(ii)    the total amount of his claim as at the date on which the company entered administration, less any payments that have been made to him after that date in respect of his claim and any adjustment by way of set-off in accordance with Rule 2.85 of the Insolvency Rules;

(iii)    whether or not the claim includes outstanding uncapitalised interest;

(iv)    whether or not the claim includes value added tax;

(v)    whether the whole or any part of the debt falls within any, and if so, which categories of preferential debts under section 386;

(vi)    particulars of how and when the debt was incurred by the company;

(vii)    particulars of any security held, the date on which it was given and the value which the creditor puts on it;

(viii)    details of any reservation of title in respect of goods to which the debt refers; and

(ix)    the name, address and authority of the person signing the proof (if other than the creditor himself).