DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
Arnold Gulkowitz, Esq.
Shaya M. Berger, Esq.

Hearing Date: December 15, 2010 at 10:00 a.m.
Objection Deadline: December 8, 2010 at 4:00 p.m.

Attorneys for Party-In-Interest Edgewood Management LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
In re                                                         :   Chapter 11
                                                              :
LEHMAN BROTHERS HOLDINGS INC., et al.                         :   Case No. 08-13555 (JMP)
                                                              :
                Debtors.                                      :   (Jointly Administered)
                                                              :
------------------------------------------------------------- X

## MOTION OF EDGEWOOD MANAGEMENT LLC PURSUANT TO 11 U.S.C. §§105 AND 541 FOR AN ORDER DIRECTING LEHMAN BROTHERS HOLDINGS INC. TO RELEASE AND RETURN NON-ESTATE PROPERTY

Edgewood Management LLC ("Edgewood"), on behalf of its client Edgewood Growth Fund ("EGF"), makes this motion (the "Motion") for an order directing Lehman Brothers Holdings Inc. ("Lehman"), a debtor herein, to release and return $505,936.13 of EGF's cash that is not part of Lehman's estate and is being held as an open item in a Lehman bank account at Bank of America. In support of the Motion, Edgewood states as follows:

### Background

1.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the ("Commencement Date"), Lehman and certain of its subsidiaries (the "Debtors") commenced with this Court voluntary cases under the Bankruptcy Code. The Debtors'

DOCSNY-430870v3

chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§1107(a) and 1108.

2. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. §1102 (the "Creditors' Committee").

3. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

4. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531].

5. On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant to 11 U.S.C. §1121 [Docket No. 7572]. On April 14, 2010, the Debtors filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to 11 U.S.C. §1125 [Docket No. 8332].

### Jurisdiction

6. This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C § 157(b).

2

DOCSNY-430870v3

## The Parties

7.  Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States. For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

8.  Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

9.  Edgewood is an investment advisory firm located in New York, New York. Edgewood, on behalf of its client EGF, engaged in certain financial transactions involving Lehman and LBI prior to the Commencement Date, including the Vestas Trade (as defined below) that led to the events that precipitated this Motion. Affidavit of Raymond Jaeger in Support of the Motion of Edgewood Management LLC, dated November 24, 2010, attached as Exhibit A ("Jaeger Affidavit") at ¶3.

## The Vestas Trade

10. On July 29, 2008, Edgewood and LBI agreed that LBI would sell 3,928 shares of stock of Vestas Wind Systems (the "Vestas Shares") that Edgewood was holding for EGF for $505,936.13 (the "Vestas Trade"). The Vestas Trade was scheduled to settle on August 1, 2008. Jaeger Affidavit at ¶4.

11. On August 1, 2008, EGF's custodian bank, US Bank, delivered the Vestas

3

Shares to Lehman's clearing account at Bank of America.[1] Jaeger Affidavit at ¶5.

12. On that same date, Edgewood instructed Lehman to send the $505,936.13 sales proceeds to an EGF subscription account at UMB Bank. Jaeger Affidavit at ¶6. Although the account was an EGF account, the instructions were incorrect because the sales proceeds should have gone to the EGF custodian account at US Bank. Id.

13. On August 5, 2008, Lehman wired $505,936.13 from its Bank of America account to EGF's UMB Bank account (the "First Wire"), as it was instructed to do. Jaeger Affidavit at ¶7.

14. UMB Bank was not expecting a wire into EGF's account and, without any subscription instructions, could not determine how to appropriately apply the First Wire. Accordingly, on August 7, 2008, UMB Bank rejected the First Wire and sent it back to Lehman's Bank of America account. Jaeger Affidavit at ¶8.

15. Lehman on the other hand, knowing it was obligated to deliver $505,936.13 to EGF as part of the Vestas Trade, rejected UMB Bank's rejection of the wire and wired $505,936.13 to EGF's UMB Bank account on August 13, 2008 (the "EGF Cash"). Jaeger Affidavit at ¶9. UMB Bank retained the EGF Cash on behalf of EGF and began investigating how to apply it. Id.

16. Subsequently, Edgewood realized that the EGF Cash was held by EGF's

---

[1] Unknown to Edgewood, US Bank also mistakenly delivered $505,936.13 of EGF's cash together with the shares to the Lehman's Bank of America clearing account (the "Returned Cash"). As part of the Vestas Trade, however, Lehman was required to give cash to EGF, not receive cash from EGF. Lehman eventually realized the error and on August 8, 2008, Lehman sent the Returned Cash from its Bank of America account back to EGF's US Bank account.

subscription bank, UMB Bank, and not its custodian bank, US Bank. Jaeger Affidavit at ¶10. To rectify this error, in an e-mail dated August 19, 2008 at 3:50 P.M., Julie Pandolfi, a trader at Edgewood, expressly asked Carmine Rullo, a trader at Lehman that assisted in the execution of the Vestas Trade on behalf of Lehman, to "recall the wire" and accept the EGF Cash back from UMB Bank in order to "send the funds using the instructions Janice [Heldt of US Bank] provided." See E-mail chain from August 18, 2008 through August 27, 2008, attached as Exhibit B, at p. 4; Jaeger Affidavit at ¶10.

17. Accordingly, Lehman was expressly asked to accept the EGF Cash for the sole purpose of wiring it into EGF's custodian account at US Bank and Lehman was not authorized to use the EGF Cash for any other purpose. Jaeger Affidavit at ¶11.

18. Lehman accepted the terms for receiving the EGF Cash from UMB Bank and specifically acknowledged that it would only accept the EGF Cash in order to transfer it to Edgewood's custodian account at US Bank. See Exhibit B at p.4-5 (e-mail dated August 19, 2008 at 4:26 P.M. in which Rullo, after acknowledging EGF Cash is currently residing in EGF's UMB Bank account, requests authorization from Edgewood for Lehman to "recall that wire [referring to the EGF Cash] and instead send the funds to USB"); id. at p. 1 (e-mail dated August 27, 2008 at 9:35 A.M., in which Rullo stated "[w]e are trying to recall the funds [referring to the EGF Cash] as we speak. Hope to have the funds into us today, and then we can send wire to you asap"). See also Jaeger Affidavit at ¶12.

19. On Friday, September 12, 2008, UMB Bank wired the EGF Cash to Lehman's Bank of America account. Jaeger Affidavit at ¶13. There was not enough time, however, before the close of business for Lehman to wire the EGF Cash into EGF's US Bank

custodian account. Id.

20. On the very next business day, Monday, September 15, 2008, Lehman filed for bankruptcy and all its bank accounts, including the Bank of America account holding the EGF Cash, were frozen. As a result, the EGF Cash was never wired to EGF's US Bank custodian account – despite the fact that UMB Bank wired the EGF Cash to Lehman only for that purpose.

21. Since September 12, 2008, the EGF Cash has been located in Lehman's Bank of America account, account number 6550-1-61536. Jaeger Affidavit at ¶14. The EGF Cash is not only traceable to that specific account, but it is kept as an open and identifiable item. See E-mail chain from February 17, 2009 through March 2, 2009, attached as Exhibit C, at p. 2 (e-mail from Alex Crepeauto to Jay Ernst dated February 27, 2009 at 9:47 A.M. stating "[w]e have tracked this – the money [referring to the EGF Cash] has been identified as an open item on a bank account belonging to Lehman Brothers Holdings . . .").

## Basis For Relief

22. Section 105(a) of the Bankruptcy Code provides that "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 541(b) of the Bankruptcy Code provides that "[p]roperty of the estate does not include [] any power that the debtor may exercise solely for the benefit of an entity other than the debtor" and subsection (d) provides that "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such

property that the debtor does not hold." 11 U.S.C. §541(b)(1) and (d).

23. Given that the equitable interest in the EGF Cash lies solely with EGF, the EGF Cash is not at this time, nor was it at the Commencement Date, property of the Debtors. Accordingly, it is both necessary and appropriate to approve and direct the release of the EGF Cash to EGF in the manner directed by Edgewood.

24. Specifically, the EGF Cash is not property of the Debtors' estates and should be returned to EGF because Lehman has no legal or equitable title to the EGF Cash other than title as a trustee under an express or constructive trust. It is well settled that "when the debtor is in possession of property impressed with an express, constructive, resulting or statutory trust whose validity is recognized under the terms of the Code, the estate will generally hold such property subject to the outstanding interest of the beneficiaries. The assets held in trust will thus normally not be available to the debtor or the debtor's creditors." 3 Alan N. Resnick & Henry J. Sommer, Collier Bankruptcy Manual ¶541.12[1] (Matthew Bender 3rd ed. rev. 2010).

25. Moreover, this Court has expressly preserved claims, held by any party, that funds held in Lehman's Bank of America account number 6550-1-61536 are subject to an express or constructive Trust. See Final Order Signed on 11/6/2008 (A) Authorizing the Debtors to (i) Continue Using Existing Centralized Cash Management System, as Modified, (ii) Honor Certain Prepetition Obligations Related to the Use of the Cash Management System, and (iii) Maintain Existing Bank Accounts and Business Forms; and (B) Extending the Debtors' Time to Comply with Section 345(b) of the Bankruptcy Code; [Docket No. 1416]; Order signed on 3/11/2009, Pursuant to Section 345(b) of the Bankruptcy Code, Authorizing Debtors to (I) Maintain, Close, and Open New Bank Accounts Located at Unauthorized Depositories and Bank

Accounts Located at United States Trustee Authorized Depositories, (II) Implement Investment Guidelines, and (III) to the Extent Necessary a Waiver of Section 345(b) of the Bankruptcy Code. [Docket No. 3048].

### Express Trust

26. Although "Section 541(a)(1) of the Bankruptcy Code provides a broad definition of property of the estate . . . the question of whether a debtor has a beneficial interest in property of the estate is determined by referring to applicable state law." In re The Brunswick Hosp. Ctr., Inc., 156 B.R. 896, 900 (E.D.N.Y. 1993). Property held by a debtor as a trustee under the terms of an express trust under applicable state law is not considered property of the estate. Kaufman v. Chalk & Vermilion Fine Arts, LLC, 31 Fed. Appx. 206, 208 (2d Cir. 2002) ("[a] host of cases dealing with trusts establish that where a bankruptcy estate holds property in trust for another, and the trust res is clearly established, the sole action that the estate can take is to transfer the trust corpus to its beneficial owner") (citations omitted); see also Brunswick Hosp. Ctr., Inc., 156 B.R. at 900; In re College Bound, 172 B.R. 399 (Bankr. S.D. Fla. 1994).

27. The Second Circuit has explained that under New York law,[2] an express trust exists where there is

> (1) a designated beneficiary, (2) a designated trustee, who is not the same person as the beneficiary, (3) a clearly identifiable res, and (4) the delivery of the res by the settlor to the trustee with the intent of vesting legal title in the trustee. []A trust may be created orally or in writing, and no particular form of words is necessary. Further, a trust may emerge by implication from the acts or words

---

[2] Both Edgewood and Lehman were located in New York when the EGF Cash was transferred from EGF's subscription/redemption account at UMB Bank to Lehman, and the instructions regarding the transfer were made to Lehman in New York. Accordingly, New York law applies. PlasmaNet Inc. v. Phase2Median, Inc. (In re Phase2Median Inc.), Case No. 01-14020 (ALG), 2002 Bankr. Lexis 1457 at *17 n.5 (Bankr. S.D.N.Y December 20, 2002).

8

> of the person creating it, so long as the intent to create such an
> implied trust arises as a necessary inference from unequivocal
> evidence.

<u>Aguadas Chasidei Chabad of United States v. Gourary</u>, 833 F.2d 431, 434 (2d Cir. 1987) (citations omitted).

28. In this case, the facts demonstrate that the EGF Cash is being held in a valid express trust. First, Lehman was designated as a trustee when it was asked to receive the EGF Cash from UMB Bank. <u>See</u> Jaeger Affidavit at ¶10; <u>Exhibit B</u>. Second, EGF was designated as the beneficiary, as Lehman acknowledged it would receive the EGF Cash for the sole purpose of transferring it to EGF's custodian account at US Bank. <u>See</u> Jaeger Affidavit at ¶12; <u>Exhibit B</u>. Third, the EGF Cash was, and still is, an identifiable res. <u>See</u> Jaeger Affidavit at ¶14; <u>Exhibit C</u>. Finally, the EGF Cash was in fact delivered to Lehman on September 12, 2008, for the sole purpose of Lehman transferring it to EGF's custodian account at US Bank pursuant to Edgewood's instructions. Jaeger Affidavit at ¶13.

29. Courts in this District have held that where, like here, the evidence demonstrates that specific funds were delivered to a party to be used for the specific purpose of benefiting another party and could not be used for any other purpose, a valid trust is created. <u>Buchbinder v. Bowen</u>, 709 F. Supp. 389, 393 (S.D.N.Y. 1989) (valid trust created where transferor delivered $3,000 to transferee pursuant to an oral agreement that transferee would only use the money to find transferor's boyfriend's heir); <u>see also</u> <u>Aguadas Chasidei Chabad</u>, 833 F.2d at 437 (holding that library collection did not belong to defendant but was given to plaintiff as trustee of an express trust where "the circumstances surrounding the manner in which the library was assembled, the actions of Rabbi Schneersohn's heirs, and the events following the Rebbe's death fully support . . . the district court's finding beyond a reasonable doubt of Rabbi

9

Schneersohn's unequivocal intent to convey the library to plaintiff as trustee . . .").

30. Because the EGF Cash was given to Lehman to hold as trustee of an express trust, the EGF Cash is not property of the estate and should be released and returned to EGF pursuant to Edgewood's instructions – as was always intended. 11 U.S.C. §541 (b) and (d); Kaufman, 31 Fed. Appx. at 208 (holding that plaintiff's artwork held by a debtor on consignment was held in trust for the benefit of the plaintiff and did not become part of the debtor's estate); College Bound, 172 B.R. at 404 (holding 401(k) contributions by debtor's employees deemed to be held in trust and not property of the debtor's estate); Brunswick Hosp., 156 B.R. at 903 (holding funds were not property of the debtor's estate when the debtor "transferred legal title to all property in the Trust Fund to the Trustee [and] the Trust Agreement and the Rules provide that the corpus of the Trust Fund could be used to pay medical malpractice claims only . . .").

**Constructive Trust**

31. Even if an express trust was not established, the EGF Cash is not property of the Debtors' estates because of the existence of a valid constructive trust. Property held by a debtor in constructive trust for a specific beneficiary is also not considered property of the debtor's estate. In re Howard's Appliance Corp., 874 F.2d 88, (2d Cir. N.Y. 1989) ("[w]here the debtor's conduct gives rise to the imposition of a constructive trust, so that the debtor holds only bare legal title to the property, subject to a duty to reconvey it to the rightful owner, the estate will generally hold the property subject to the same restrictions") (quotation omitted); see also Sommer v. Vermont Real Estate Investment Trust (In re Vermont Real Estate Investment Trust), 25 B.R. 813 (Bankr. D.Vt. 1982); Claybrook v. Consolidate Foods, Inc. (In re Bake-Line Group, LLC), 359 B.R. 566 (Bankr. D. Del. 2007).

32. "Under New York Law . . . a constructive trust arises against a person who, by fraud (actual or constructive), duress, abuse of confidence or any form of unconscionable conduct, obtains or holds the legal right to property which in equity and in good conscience he ought not to hold." PlasmaNet Inc. v. Phase2Median, Inc. (In re Phase2Median Inc.), Case No. 01-14020 (ALG), 2002 Bankr. Lexis 1457 at *15-16 (Bankr. S.D.N.Y December 20, 2002) (citations omitted). As the Second Circuit has explained, while generally the elements of a constructive Trust under New York law are "(1) a confidential or fiduciary relation, (2) a promise, (3) a transfer in reliance thereon and (4) unjust enrichment[,] New York Courts do not insist that a constructive trust must fit within the framework of these elements. What the New York courts do insist upon is a showing that property is held under circumstances that render unconscionable and inequitable the continued holding of the property and that the remedy is essential to prevent unjust enrichment." Counihan v. Allstate Ins. Co., 194 F.3d 357, 362 (2d Cir. N.Y. 1999) (citations omitted). Thus, for example, a fiduciary relationship is not necessary for the establishment of a constructive trust. Id.; see also Sommer, 25 B.R. at 817.

33. In a bankruptcy case, the court determines whether the debtor has been unjustly enriched by unconscionably retaining another party's property so much so as to warrant the establishment of a constructive trust by considering whether the debtor's other innocent creditors were similarly wronged. PlasmaNet, 2002 Lexis 1457 at *35-36 (denying creditor's constructive trust claim because the debtor had a material amount of other clients that were similarly hurt and the putative beneficiary of the alleged constructive trust did not suffer "a separate wrong . . . of such magnitude that it would be 'unconscionable and inequitable' for the Debtor's other . . . clients to share in the funds").

34. In the instant case, Lehman accepted the EGF Cash on the eve of its

11

bankruptcy filing, which Lehman knew was EGF's, not Lehman's, property. Jaeger Affidavit at ¶13. Additionally, Lehman understood that it was receiving the EGF Cash solely to transfer it to EGF's custodian account at US Bank. See Jaeger Affidavit at ¶12; Exhibits B. Lehman, however, must have also known that it would be unable to do so because it was imminently filing for bankruptcy, whereupon all its bank accounts would be frozen. This is the type of unjust enrichment by a debtor that courts have found to be unconscionable and inequitable, thereby justifying a finding of a constructive trust. Sommer, 25 B.R. at 816-817 (holding that money delivered by plaintiff to debtor in order to purchase debtor's securities that was received before, but deposited after, the debtor suspended all such transactions was not property of the debtor's estate and instead was held in constructive trust because "it is reasonable to assume that [plaintiff] would not have remitted the two checks to [the debtor] had he known [the debtor] would have been unable to accept his order"); Koci v. Freehling (In re Bengal Trading Corp.), 12 B.R. 695, 696 (Bankr. S.D. Fla. 1981) (holding that funds wired by plaintiff to the debtor to purchase commodities after debtor had suspended trading activities were not customer property under 11 U.S.C. §761); Anderson v. Stephens, 875 F.2d 76, 81 (4th Cir. 1989) (investors' checks deposited by a futures investment group after the Commodity Future Trading Commission froze all of the investment group's trading activities was held in constructive trust and could not be a part of a pro rata distribution to all of the investment group's creditors).

35. Moreover, Edgewood's claim on behalf of EGF is not like an ordinary Lehman customer claim, which is generally based on a customer not having been paid in connection with a financial transaction. Rather, Edgewood's claim is that five weeks after Lehman already made a payment into an EGF bank account pursuant to Edgewood's instructions in order to close the Vestas Trade, Edgewood directed that EGF's own money be transferred to

12

Lehman – unknowingly on the eve of Lehman's bankruptcy filing – for the sole purpose of Lehman transferring it back to another EGF bank account. See Jaeger Affidavit at ¶¶5-9. Thus, the unconscionable and inequitable wrong committed against EGF is distinct from the harm caused to other Lehman customers and justifies the establishment of a constructive trust. See Bake-Line Group, 359 B.R. at 576 (holding that debtor that cashed a check intended for a third party held the funds in a constructive trust for the benefit of the third party and the funds would not become property of the debtor's estate because the third party "was different from all of the Debtor's creditors"); Chemical Bank v. United States Lines (S.A.) Inc.,(In re McLean Industries, Inc.), 132 B.R. 271, 287 (Bankr. S.D.N.Y. 1991) (holding that a constructive trust for the benefit of the debtor's lender was appropriate because "the Debtor, its estate and the unsecured creditors [] were never the intended beneficiaries of the insurance" proceeds at issue, only the lender was); Cf. PlasmaNet, 2002 Lexis 1457 at *35-36.

### Notice

36. Notice has been served of this Motion in accordance with the procedures set forth in the order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the attorneys for the Debtors (ii) the U.S. Trustee; (iii) the attorneys for the Creditors' Committee; (iv) all parties who have requested notice in these chapter 11 cases. Edgewood submits that no other or further notice need be provided.

37. No previous request for the relief sought herein has been made by Edgewood to this or any other court.

WHEREFORE Edgewood respectfully requests that the Court grant the relief requested herein and (i) declare the EGF Cash to be EGF's property and not property of the Debtors' estates; (ii) approve and direct the release of the EGF Cash to EGF in the manner directed by Edgewood; and (iii) grant such other and further relief as is just and proper.

DATED: November 29, 2010
New York, New York

DICKSTEIN SHAPIRO LLP

By: /s/ Shaya M. Berger
Arnold Gulkowitz,
Shaya M. Berger
1633 Broadway
New York, New York 10019
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Party-In-Interest
Edgewood Management LLC