WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050
William A. Maher
Paul R. DeFilippo

Special Counsel for the Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

————————————————————————————x
                                                          :
                                                          :          Chapter 11
                                                          :
In re:                                                    :
                                                          :          Case No. 08-13555 (JMP)
LEHMAN BROTHERS HOLDINGS INC., *et al.*    :
                                                          :
                    Debtors.                         :
————————————————————————————x
                                                          :
LEHMAN BROTHERS SPECIAL FINANCING INC.,   :
                                                          :
                    Plaintiff,                       :
                                                          :
-against-                                             :          Adversary Proceeding
                                                          :          No.: _____ (JMP)
BANK OF AMERICA, NATIONAL ASSOCIATION,   :
CEAGO ABS CDO 2007-1, LTD., CEAGO ABS CDO   :
2007-1, LLC and LONG ISLAND INTERNATIONAL   :
LTD.,                                                   :
                                                          :
                    Defendants.                      :
                                                          :
————————————————————————————x

## **COMPLAINT**

Lehman Brothers Special Financing Inc. ("LBSF" or "Plaintiff"), a debtor and

debtor in possession in the above-captioned jointly administered case of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in possession (collectively, the "Debtors," and

together with its non-debtor affiliates, "Lehman"), by and through undersigned counsel, brings

this Complaint against Bank of America, National Association (referred to herein as "Bank of

America" or the "Trustee"), Ceago ABS CDO 2007-1, Ltd. (the "Issuer"), Ceago ABS CDO

2007-1, LLC (the "Co-Issuer"), and Long Island International Ltd. ("LII" or the "Controlling

Noteholder").

## NATURE OF THE ACTION

1.      Plaintiff LBSF files this adversary proceeding to prevent certain

unenforceable *ipso facto* clauses from improperly modifying LBSF's right to priority of payment

with respect to approximately $150 million in collateral in connection with a collateralized debt

obligation transaction called Ceago ABS CDO 2007-1 ("Ceago Transaction" or the "Ceago

Note").

2.      LBSF is party to certain derivative swap transactions with the Issuer in

connection with the Ceago Transaction (the "Swap Agreements").  LBHI is LBSF's credit

support provider and guarantor under the Swap Agreements.  With respect to certain of the Swap

Agreements, the transaction documents for the Ceago Transaction (i) require the Trustee on

behalf of the Issuer to maintain collateral in a separate account to secure the Issuer's payment

obligations to LBSF (the "Synthetic Counterparty Collateral") and (ii) provide that LBSF has a

priority right of payment with respect to the Synthetic Counterparty Collateral.  The transaction

documents further provide that, with respect to the Issuers' obligations under the Swap

Agreements, LBSF will have a priority payment right to the general collateral held by the

Trustee on behalf of the Issuer (the "CDO Collateral") that, among other things, secures payment

of principal and interest to the holders of notes issued by the Issuer (the "Noteholders").  Thus,

the transaction documents generally require the Trustee to make termination payments owed to

2

LBSF under the Swap Agreements prior to disbursing interest and principal payments to the Noteholders in the Ceago Transaction ("Senior Payment Priority").

3.    The governing indenture, however, also contains a provision that the Trustee and the Controlling Noteholder contend (upon information and belief) eliminates altogether LBSF's priority lien with respect to the Synthetic Counterparty Collateral in instances where LBSF is the "Defaulting Party" (as defined in the Swap Agreements) (the "Lien Provision").  The indenture includes a further provision that modifies LBSF's Senior Payment Priority with respect to the CDO Collateral held by the Trustee, making such right junior to the payment rights of the Noteholders in instances where LBSF was the "Defaulting Party" (as defined in the Swap Agreements) (the "Flip Provision" and, together with the Lien Provision, the "Priority Modification Provisions").  The Swap Agreements expressly provide that the filing of a bankruptcy petition by LBSF (or LBHI) is an Event of Default under which LBSF becomes the "Defaulting Party."

4.    As a result of certain post-petition actions taken by the Trustee, the Controlling Noteholder can direct the Trustee to terminate the Swap Agreements and liquidate the collateral held by the Trustee and, upon information and belief, the Controlling Noteholder contends that it can exercise that power without LBSF's consent.  In that event, the Trustee would declare LBSF the Defaulting Party and, based upon the Priority Modification Provisions, distribute to the Noteholders (including the Controlling Noteholder) the Synthetic Counterparty Collateral and CDO Collateral that otherwise would have been due and owing to LBSF.  LBSF's resulting loss of its Senior Payment Priority position by operation of the Priority Modification Provisions would cost the bankruptcy estate and its creditors approximately $150 million.

Accordingly, in order to protect LBSF's valuable rights and interests in the Swap Agreements, the Court should grant the relief requested herein.

5.      In a prior adversary proceeding in this consolidated Chapter 11 case, the Court held that substantially similar priority modification provisions were unenforceable *ipso facto* clauses under Sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code and that any attempt to enforce such provisions would violate the automatic stay triggered by LBSF's bankruptcy filing:

> LBHI commenced a case that entitled LBSF, consistent with the statutory language, fairly read, to claim the protections of the *ipso facto* provisions of the Bankruptcy Code because its ultimate corporate parent and credit support provider at a time of extraordinary panic in the global markets, had filed a case under the Bankruptcy Code.
>
> The Court finds that the provisions in the Transaction Documents purporting to modify LBSF's right to priority distribution solely as a result of a chapter 11 filing constitute unenforceable *ipso facto* clauses. Moreover, any attempt to enforce such provisions would violate the automatic stay . . . . because it would deprive LBSF and its creditors of a valuable property interest.

*Lehman Bros. Special Financing, Inc. v. BNY Corp. Trustee Svcs., Ltd.,* 422 B.R. 407, 420-21 (Bankr. S.D.N.Y 2010) (Peck, J.) ("*LBSF v. BNY*").  The Court further held that the priority modification provisions do not fall within the limited "safe harbor" for *ipso facto* clauses in Swap Agreements pursuant to section 560 of the Bankruptcy Code because, among other reasons, the safe harbor applies only to "the liquidation, termination or acceleration" of Swap Agreements or the "offset or net out" of the parties' positions and does not apply to modifications of a debtor's payment rights.  *Id.* at 421.

6.      Thus, consistent with the Court's prior ruling, LBSF is entitled to a declaration that the Priority Modification Provisions are unenforceable *ipso facto* clauses and the

attempted application of those provisions by the Trustee and distribution of collateral to the Noteholders would violate the automatic stay.

7.      For purposes of alternative pleading, even if the Priority Modification Provisions were enforceable in whole or in part, to the extent those provisions were effective ***before*** the commencement of LBSF's bankruptcy case, the modification of LBSF's priority interest constituted either (a) a preferential transfer of an interest of LBSF in property that may be avoided under section 547 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of the estate under section 551 of the Bankruptcy Code, or (b) a constructive fraudulent transfer of an interest of LBSF in property that may be avoided under section 548(a)(1)(B) of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of the estate under section 551 of the Bankruptcy Code.  To the extent that the Priority Modification Provisions were effective ***after*** the commencement of LBSF's bankruptcy case, the modification of LBSF's priority interest constituted an unauthorized postpetition transfer of property of LBSF's estate that may be avoided under section 549 of the Bankruptcy Code, recovered under section 550 of the Bankruptcy Code, and preserved for the benefit of the estate under section 551 of the Bankruptcy Code.

## PARTIES

8.      Plaintiff LBSF is a Delaware corporation with its current principal business address at 1271 Sixth Avenue, 40th Floor, New York, New York 10020.

9.      Defendant Bank of America is a national banking association organized under the laws of the United States with its principal place of business at 100 North Tryon Street, Charlotte, North Carolina 28202.  Bank of America is also the successor in interest to LaSalle Bank National Association.

5

10.     Defendant Ceago ABS CDO 2007-1, Ltd., is an exempted company with limited liability organized under the laws of the Cayman Islands with its principal place of business c/o Deutsche Bank (Cayman) Limited, P.O. Box 1984, Boundary Hall, Cricket Square, Grand Cayman, KY1-1104, Cayman Islands.

11.     Defendant Ceago ABS CDO 2007-1, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business at Deutsche International Corporate Services (Delaware) LLC, 1011 Centre Road, Suite 200, Wilmington, Delaware 19805.

12.     Defendant Long Island International Ltd. is a private limited company organized under the laws of the United Kingdom with its principal place of business at 1 Churchill Place, Poplar, London E14 5HP.

## JURISDICTION AND VENUE

13.     The Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. §§ 157, 1334.  This is a "core proceeding" under 28 U.S.C. § 157(b).

14.     Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

15.     The statutory prerequisites for the relief requested herein are sections 105(a), 547, 548(a)(1)(B), 549(a), 550, and 551 of the Bankruptcy Code, section 2201 of Title 28 of the United States Code, Federal Rule of Civil Procedure 57, and Rules 7001 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

16.     Lehman was formerly the fourth largest investment bank in the United States.  For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide.  Lehman's headquarters in New York and regional headquarters in London and

Tokyo were complemented by a network of offices in North America, Europe, the Middle East, Latin America, and the Asia Pacific region.

17.    Plaintiff's and LBHI's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

18.    Plaintiff and LBHI are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

19.    In connection with the Ceago Transaction, the Issuer issued series of notes pursuant to an indenture (the "Indenture"), in order to raise funds with which to acquire assets. The Indenture and Swap Agreements are hereinafter referred to as the "Transaction Documents." The Trustee serves pursuant to the Transaction Documents.

20.    The Issuer and LBSF are parties to the Swap Agreements in connection with the Ceago Transaction.

21.    LBSF's interest in the Swap Agreements is extremely valuable and its positions are worth approximately $150 million.

22.    The Trustee, or an agent for one of the other Defendants, hold for the benefit of (among others) LBSF and the Noteholders the CDO Collateral or proceeds from the CDO Collateral, which secures the Issuer's payment obligations both to LBSF and to the Noteholders.  Pursuant to both the Swap Agreements and Indenture, the Trustee also holds the Synthetic Counterparty Collateral for the benefit of LBSF in a separate, segregated collateral account to secure the Issuer's payment obligations to LBSF.  LBSF's recourse for payment of its claims against the Issuer is limited to the Synthetic Counterparty Collateral and the CDO

7

Collateral.  The Noteholders' recourse for payment of claims against the Issuer is limited to the

CDO Collateral.  LBSF's and the Noteholders' respective payment priorities for their claims

against the Issuer in the event of a termination of the Ceago Transaction and/or the Swap

Agreements are to be enforced and realized through the distribution of the Synthetic

Counterparty Collateral or its proceeds or the CDO Collateral or its proceeds.

23.     On September 15 and October 3, 2008, respectively, LBHI and Plaintiff

filed voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code.  Under

the Swap Agreements, the commencement of a case under the Bankruptcy Code by either LBSF

or its Credit Support Provider, LBHI, constituted an Event of Default under the Swap

Agreements with respect to LBSF.

24.     On October 27, 2008, the Trustee issued a notice of an Event of Default

under the Indenture resulting from a failure by the Issuer to satisfy an over-collateralization test.

This Event of Default constituted a "Control Event" under the Indenture.  As a result of the

occurrence of a Control Event under the Indenture, the Controlling Noteholder is entitled to

direct a liquidation of the Collateral and terminate the Swap Agreements without the consent of

LBSF if the Lien Provision is triggered.

25.     Under the Transaction Documents, the bankruptcy filing of Plaintiff or

LBHI as its Credit Support Provider falls within the definition of an "Event of Default" with

respect to Plaintiff.  Until the Priority Modification Provisions are triggered, Plaintiff has Senior

Payment Priority for its claims to both the Synthetic Counterparty Collateral and, if the Synthetic

Counterparty Collateral is insufficient, the CDO Collateral under the Transaction Documents.

But upon triggering the Priority Modification Provisions, the application of which is conditioned

upon either Plaintiff's or LBHI's bankruptcy filing, the payment priority is altered.  If applicable

to LBSF and enforceable, the Lien Provision would eliminate altogether LBSF's Senior Payment

Priority with respect to the Synthetic Counterparty Collateral, transferring the Senior Payment

Priority to or for the benefit of the Noteholders.[1]  Similarly, if enforceable, the Flip Provision

would transfer LBSF's Senior Payment Priority with respect to the CDO Collateral to or for the

benefit of the Noteholders.  This effect of the Lien Provision and the Flip Provision is referred to

hereafter in this Complaint as the "Payment Priority Exchange."

26.    To the extent the Priority Modification Provisions are applicable and are

triggered here, it is solely as the result of LBSF's or LBHI's bankruptcy filing.  Accordingly, the

Payment Modification Provisions are *ipso facto* clauses that are unenforceable under Sections

365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code.

27.    Moreover, effecting the Payment Priority Exchange pursuant to the

Priority Modification Provisions would violate the automatic stay under section 362(a)(3) of the

Bankruptcy Code because it involves an improper exercise of control over property of LBSF's

estate.  As such, LBSF seeks a declaratory judgment that such provisions violate the automatic

stay.

28.    If the Payment Priority Exchange is not invalidated under the *ipso facto*

doctrine, as LBSF believes it should be, then the Priority Modification Provisions work as an

intercreditor agreement between LBSF and the Noteholders in connection with their respective

claims against the Issuer.  If enforceable, the Priority Modification Provisions would obligate

LBSF, in contractually specified circumstances, to transfer its interest in particular property – the

right to Senior Payment Priority – to or for the benefit of the Noteholders (including the

_____

[1]    The Lien Provision, as written, applies only to payments to "other" swap counterparties, and not LBSF.
Plaintiff expressly reserves its right to amend this Complaint to challenge the applicability of the Lien Provision
to LBSF under the current circumstances.

Controlling Noteholder), thereby enhancing the Noteholders' ability to recover on their claims

against the Issuer.  The Payment Priority Exchange would thus cause LBSF to part with a

valuable property interest – its contractual right to Senior Payment Priority – by giving it to or

for the benefit of the Noteholders.  LBSF's parting with that interest would constitute an

avoidable "transfer" under section 101(54) of the Bankruptcy Code.

        29.     If enforceable, the Priority Modification Provisions operate as a covenant

by LBSF that, upon the occurrence of specified events, LBSF will pledge some of its property to,

or for the benefit of the Noteholders (including the Controlling Noteholder), to further secure the

Noteholders' claims against the Issuer.  Just as such a covenant would give the Noteholders a

contractual right to obtain property from LBSF through such a pledge, the Priority Modification

Provisions, if enforceable, would give the Noteholders a contractual right to obtain property from

LBSF through the Payment Priority Exchange.  And just as LBSF would satisfy its contractual

obligation to the Noteholders under such a covenant by delivering property to, or for the benefit

of, the Noteholders, through such a pledge if the Priority Modification Provisions are found to be

enforceable, LBSF would, through the Payment Priority Exchange, satisfy its contractual

obligation to the Noteholders to give Senior Payment Priority to, or for the benefit of, the

Noteholders.  Even if the Priority Modification Provisions might be read to effectuate the

Payment Priority Exchange automatically rather than through some action by LBSF, this does

not change the fact that the Payment Priority Exchange constitutes a transfer of an interest of

LBSF in property to or for the benefit of the Noteholders that satisfies an existing contractual

obligation of LBSF to the Noteholders to make such transfer.

        30.     Alternatively, if the Payment Priority Exchange is not effected pursuant to,

and in satisfaction of, an existing contractual obligation of LBSF, then any operation of the

Payment Priority Exchange would be a gratuitous transfer of a property interest by LBSF for which LBSF received no value in exchange.

31.    If the Priority Modification Provisions are enforced, then the Trustee would be required to effectuate the Payment Priority Exchange in violation of the Bankruptcy Code.

32.    On September 14, 2010, LBSF and the Trustee entered into a Tolling Agreement tolling the running of any statute of limitations with respect to any claims or causes of action arising out of the Indenture or the Swap Agreements (the "Tolling Agreement").  The Tolling Agreement was subject to termination by either LBSF or the Trustee effective 30 days following written notice of such termination.  LBSF gave notice to the Trustee terminating the Tolling Agreement on October 29, 2010.

33.    All conditions precedent to suit have been performed, have occurred, or have been waived.

## COUNT I

*(Provisions Modifying Plaintiff's Payment Priority as a Result*
*of the Bankruptcy Filings Are Unenforceable Ipso Facto Clauses)*

34.    LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

35.    At the time of the LBHI and LBSF bankruptcy filings, the parties' respective obligations under the Transaction Documents were continuing and the performance of obligations under the Swap Agreements and Transaction Documents remain outstanding.

11

36.     Accordingly, the Swap Agreements and Transaction Documents are executory contracts and subject to the protections of Sections 365(e) and 541(c)(1)(B) of the Bankruptcy Code.

37.     The Priority Modification Provisions that purport to effect the Payment Priority Exchange as a result of LBHI's or LBSF's bankruptcy filing constitute unenforceable *ipso facto* clauses that violate sections 365(e)(1) and 541(c)(1) of the Bankruptcy Code.

38.     The Bankruptcy Code protects debtors from being penalized for filing a chapter 11 case, notwithstanding any contractual provisions or applicable law that would have that effect.  Section 365(e)(1) of the Bankruptcy Code provides that:

> [n]otwithstanding a provision in an executory contract . . .  an executory contract . . . of the debtor may not be terminated **or modified**, and any right or obligation under such contract or lease may not be terminated **or modified**, at any time after the commencement of the case solely because of a provision in such contract . . . that is conditioned on . . . the commencement of a case under this title . . . .

11 U.S.C. § 365(e)(1) (emphasis added).

39.     Similarly, section 541(c)(1) recognizes that a debtor's interest in property:

> becomes property of the estate  . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law . . . that is conditioned on . . . the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1).

40.     Because the Priority Modification Provisions (a) become operative after the commencement of LBHI's or LBSF's bankruptcy case, (b) effect the Payment Priority Exchange solely because of "the commencement of a case" under the Bankruptcy Code, and (c)

deprive LBSF of Senior Payment Priority, the provisions are unenforceable *ipso facto* clauses.
*See* 11 U.S.C. §§ 365(e)(1), 541(c)(1).

41.     The Court should declare that the Priority Modification Provisions and the
corresponding Payment Priority Exchange are unenforceable pursuant to sections 365(e)(1) and
541(c)(1)(B) of the Bankruptcy Code.

42.     There is an actual controversy between the parties on this issue because,
upon information and belief, the Trustee and the Controlling Noteholder contend that the
Transaction Documents require the Payment Priority Exchange in violation of the Bankruptcy
Code, and Defendants have not agreed to waive or disregard such Payment Priority Exchange.

43.     Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001,
LBSF requests that the Court enter a declaratory judgment that (a) the Priority Modification
Provisions are unenforceable *ipso facto* clauses pursuant to sections 365(e)(1) and 541(c)(1)(B)
of the Bankruptcy Code, and that (b) LBSF is entitled to Senior Payment Priority.

## COUNT II

### *(Provisions Modifying Plaintiff's Payment Priority as a Result of the Bankruptcy Filings Violate the Automatic Stay)*

44.     LBSF repeats, realleges, and incorporates by reference the allegations
contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of
action.

45.     Section 362(a) of the Bankruptcy Code provides, in relevant part, that the
filing of a petition under Title 11 of the Bankruptcy Code "operates as a stay, applicable to all
entities, of -- . . . (3) any act to obtain possession of property of the estate or of property from the
estate or to exercise control over property of the estate . . .." 11 U.S.C. § 362(a)(3).

13

46.     At the time LBSF commenced its case under the Bankruptcy Code, its right to Senior Payment Priority constituted a substantial asset of the estate.  Any action to exercise control over LBSF's Senior Payment Priority, including any action to effect the Payment Priority Exchange, would be, therefore, subject to, and in violation of, the automatic stay, provided under section 362(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 362(a)(3).

47.     Further, the Payment Priority Exchange improperly seeks to take property of LBSF because of its or LBHI's bankruptcy filing.  Property of a debtor becomes property of the estate, "notwithstanding any provision in an agreement . . . that is conditioned . . . on the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property."  11 U.S.C. § 541(c)(1).  Effecting the Payment Priority Exchange would modify LBSF's Senior Payment Priority, and thus cause LBSF to forfeit an interest in property because of "the commencement of a case under this title."  This violates the automatic stay provided under section 362(a).

48.     There is an actual controversy between the parties on this issue because, upon information and belief, the Trustee and the Controlling Noteholder contend that the Transaction Documents require the Payment Priority Exchange in violation of the Bankruptcy Code, and Defendants have not agreed to waive or disregard such Payment Priority Exchange.

49.     Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, LBSF requests that this Court enter a declaratory judgment that all actions to enforce the Payment Priority Exchange constitute willful violations of the automatic stay under section 362(a)(3) of the Bankruptcy Code and are void *ab initio*.

## ALTERNATIVE COUNT III

*(Prepetition Payment Priority Exchange Constitutes
Avoidable Transfer Under Section 547 of the Bankruptcy Code)*

50.    Section 547(b) of the Bankruptcy Code provides that "any transfer of an interest of the debtor in property" may be subject to avoidance as a preference if the transfer is made: "(1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) . . . while the debtor was insolvent; (4) . . . on or within 90 days before the date of the filing of the petition . . .; and (5) that enables such creditor to receive more than such creditor would receive if – (A) the case were a case under chapter 7 of this title; (B) the transfer had not been made; and (C) such creditor received payment of such debt to the extent provided for by the provisions of this title."  11 U.S.C. § 547(b).

51.    Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on September 15, 2008 – as Credit Support Provider to LBSF under the Swap Agreements – constituted an Event of Default under the Swap Agreements with respect to LBSF.

52.    If the Payment Priority Exchange is found to be effective, it would cause LBSF to transfer to or for the benefit of the Trustee, the Noteholders, and/or the other Noteholders, an interest of LBSF in property – its right to Senior Payment Priority.

53.    To the extent that the Payment Priority Exchange may be found to (a) have taken effect *before* LBSF's petition date, (b) be enforceable, and (c) have been effected pursuant to an existing contractual obligation of LBSF, it is avoidable as a preferential transfer pursuant to section 547 of the Bankruptcy Code.

54.    If the provisions that govern the Payment Priority Exchange are found to be enforceable, they would effect a transfer of LBSF's right to Senior Payment Priority to or for the benefit of the Trustee, the Controlling Noteholder, and/or the other Noteholders, who,

pursuant to their contractual rights, would, under those narrow circumstances, have been creditors of LBSF.

55.     Under the circumstances described in this alternative Count, the transfer of LBSF's right to Senior Payment Priority would be on account of an antecedent debt, consisting of LBSF's contractual obligation, in specified circumstances, to transfer its right to Senior Payment Priority to or for the benefit of the Trustee, the Controlling Noteholder and/or the other Noteholders.

56.     Under these circumstances, any transfer would have been made no earlier than September 15, 2008 – within the 90 days preceding LBSF's bankruptcy filing – while LBSF was insolvent.

57.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it would allow the Trustee, the Controlling Noteholder and/or the other Noteholders to receive more than they would have otherwise received if the case were a case under chapter 7 of this title and the transfer effected by the Payment Priority Exchange had not been made.

58.     If the Payment Priority Exchange is found to be enforceable and to have operated as described in this alternative Count, it was a preferential transfer of LBSF's property interest – its Senior Payment Priority – to or for the benefit of the Trustee, the Controlling Noteholder and/or the other Noteholders, which LBSF may avoid pursuant to section 547(b) of the Bankruptcy Code and which LBSF may recover from the Trustee, the Controlling Noteholder and/or the other Noteholders, as the initial transferees of LBSF's said property interest, pursuant to section 550(a)(1) of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.

59.     In this alternative Count, LBSF asserts its right to avoid the Payment Priority Exchange and to recover and preserve, for the benefit of its estate, the Senior Payment Priority from all initial transferees and from any and all immediate and/or mediate transferees of such initial transferees.

## ALTERNATIVE COUNT IV

*(Prepetition Payment Priority Exchange Constitutes*
*Avoidable Transfer Under Section 548 of the Bankruptcy Code)*

60.     LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

61.     Section 548(a)(1)(B) of the Bankruptcy Code provides that a transfer of a debtor's interest in property, made within two years before the commencement of the debtor's bankruptcy case, may be avoided as constructively fraudulent if the debtor (a) "received less than reasonably equivalent value in exchange for such transfer" and (b) (i) "was insolvent on the date that such transfer was made . . . or became insolvent as a result of such transfer or obligation," (ii) "was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital," or (iii) "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured."  11 U.S.C. § 548(a)(1)(B)(i)-(ii).

62.     Pursuant to the Transaction Documents, the bankruptcy filing of LBHI on September 15, 2008 – as Credit Support Provider to Plaintiff – constituted an Event of Default with respect to Plaintiff.

17

63.     Assuming that the Payment Priority Exchange is effective, it would cause Plaintiff to transfer to or for the benefit of the Trustee, the Controlling Noteholder and/or the other Noteholders an interest of Plaintiff in property – its right to Senior Payment Priority.

64.     The Payment Priority Exchange, assuming it is enforceable, would effect a transfer of Plaintiff's right to Senior Payment Priority to or for the benefit of the Trustee, the Controlling Noteholder and/or the other Noteholders.

65.     The Payment Priority Exchange, assuming it is enforceable, and to the extent that the Payment Priority Exchange is not found to have been effected pursuant to, and in satisfaction of, an existing contractual obligation of Plaintiff, it would have been done gratuitously, and therefore, in exchange for less than reasonably equivalent value.

66.     The Payment Priority Exchange, assuming it is enforceable and operated as described in this Count, would have occurred when Plaintiff was, or thereby became, insolvent, or left with unreasonably small capital, or intending or believing that it would incur debts that would be beyond its ability to pay as such debts matured.

67.     Therefore, the Payment Priority Exchange, assuming it is enforceable and operated as described in this Count, was a constructive fraudulent transfer of Plaintiff's property interest – its Senior Payment Priority – to or for the benefit of the Noteholders, which Plaintiff may avoid pursuant to section 548(a)(1)(B) of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.

## ALTERNATIVE COUNT V

### *(Postpetition Payment Priority Exchange Constitutes*
*Avoidable Transfer Under Section 549 of the Bankruptcy Code)*

68.    LBSF repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though fully set forth in this cause of action.

69.    Section 549(a) of the Bankruptcy Code provides that any transfer of property of a debtor's estate that occurs (a) "after commencement of the case," and (b) without authorization under the Bankruptcy Code or by the Court, may be avoided.  11 U.S.C. § 549(a).

70.    The Payment Priority Exchange, assuming it is enforceable and was effected ***after*** the commencement of Plaintiff's bankruptcy case, caused Plaintiff to transfer to or for the benefit of the Trustee, the Controlling Noteholder and/or the other Noteholders a property interest of Plaintiff's estate – its right to Senior Payment Priority.

71.    Any such transfer was not authorized under the Bankruptcy Code or by the Court.  In the alternative, any purported right to such transfer would have to be asserted as a claim through the normal claims procedures.

72.    The Payment Priority Exchange, assuming it is enforceable and operated as described in this Count, was an unauthorized postpetition transfer of property of Plaintiff's estate – its Senior Payment Priority – to or for the benefit of the Trustee, the Controlling Noteholder and/or the other Noteholders which Plaintiff may avoid pursuant to section 549 of the Bankruptcy Code, recover pursuant to section 550 of the Bankruptcy Code, and preserve for the benefit of its estate pursuant to section 551 of the Bankruptcy Code.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following

relief:

A.    For declaratory relief and final declaratory judgment that the Payment

Priority Exchange improperly modified LBSF's Senior Payment Priority

as a result of a bankruptcy filing, and, as such, the Priority Modification

Provisions constitute unenforceable *ipso facto* clauses that violate 11

U.S.C. §§ 365(e)(1) and 541(c)(1) and that LBSF is entitled to Senior

Payment Priority;

B.    For preliminary declaratory relief and final declaratory judgment that any

action to enforce the Payment Priority Exchange as a result of a

bankruptcy filing violates the automatic stay under 11 U.S.C. § 362(a) and

is void *ab initio*;

C.    Alternatively, for a judgment that the Payment Priority Exchange was a

preferential transfer to or for the benefit of the Trustee, the Controlling

Noteholder and/or the other Noteholders that is avoidable pursuant to

section 547 of the Bankruptcy Code, and, pursuant to sections 550 and 551

of the Bankruptcy Code, Plaintiff is entitled to recover and preserve Senior

Payment Priority for the benefit of its estate;

D.    In the further alternative, for a judgment that the Payment Priority

Exchange was a constructive fraudulent transfer to or for the benefit of the

Trustee, the Controlling Noteholder and/or the other Noteholders that is

avoidable pursuant to section 548 of the Bankruptcy Code, and, pursuant

20

to sections 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to recover and preserve Senior Payment Priority for the benefit of its estate;

E.  In the further alternative, for a judgment that the Payment Priority Exchange was an unauthorized postpetition transfer to or for the benefit of the Trustee, the Controlling Noteholder and/or the other Noteholders that is avoidable pursuant to section 549(a) of the Bankruptcy Code, and, pursuant to sections 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to recover and preserve Senior Payment Priority for the benefit of its estate; and

F.  Any such other and further relief as the Court deems just and proper, including costs and attorneys' fees.

Respectfully submitted,

By: _____/s/_____
William A. Maher
Paul R DeFilippo
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Telephone: (212) 382-3300
Facsimile: (212) 382-0050

Special Counsel for the Debtors
and Debtors In Possession

Dated:    New York, New York
November 29, 2010