B 210A (Form 210A) (12/09)

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re **Lehman Brothers Holdings Inc.**                    Case No. **08-13555**

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

**ILLIQUIDX LTD**                              **Caja de Ahorros de Vigo, Ourense y Pontevedra**
Name of Transferee                            Name of Transferor

Name and Address where notices to transferee        Court Claim # (if known): **60353**
should be sent:                                     Total Amount of Claim Filed:
                                                    USD $ 3,047,625.00 (equivalent to 2,150,000.00
                                                    Euros) plus all fees & interest
                                                    Amount of Claim Transferred:
                                                    USD $ 3,047,625.00 (equivalent to 2,150,000.00
                                                    Euros) plus all fees & interest
                                                    ISIN/CUSIP: XS0284314571
**Galina Alabatchka**                               Date Claim Filed: October 30, 2009
**Managing Director**
**Illiquidx Ltd**
**107-111 Fleet Street**
**London EC4A 2AB, UK**
**Phone: +44 207 936 9309**
**Email: amore@illiquidx.com**

Name and Address where transferee payments
should be sent (if different from above):

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By:_____                    Date:  November 30, 2010
        Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

Form 210B (12/09)

# IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re **Lehman Brothers Holdings Inc.**                    **Case No. 08-13555**

## NOTICE OF TRANSFER OF CLAIM
## OTHER THAN FOR SECURITY

Claim No. **60353** was filed or deemed filed under 11 U.S.C. § 1111(a) in this case by the alleged transferor. As evidence of the transfer of that claim, the transferee filed a Transfer of Claim Other than for Security in the clerk's office of this court on **November 30, 2010**

**Caja de Ahorros de Vigo, Ourense y Pontevedra**       **ILLIQUIDX LTD**
Name of Alleged Transferor                                Name of Transferee


Address of Alleged Transferor:                            Address of Transferee:

**Avda. Garcia Barbon 1-3**                              **Illiquidx Ltd**
**36201, Vigo, Garcia**                                  **107-111 Fleet Street**
**Spain**                                                **London EC4A 2AB**
**Attn: Victoria Vazquez Sacristan**                     **United Kingdom**


~~DEADLINE TO OBJECT TO TRANSFER~~

The alleged transferor of the claim is hereby notified that objections must be filed with the court within twenty-one (21) days of the mailing of this notice. If no objection is timely received by the court, the transferee will be substituted as the original claimant without further order of the court.


Date:_____                    _____
                                    CLERK OF THE COURT

**AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY**

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

1.    For value received, the adequacy and sufficiency of which are hereby acknowledged, **Caja de Ahorros de Vigo, Ourense y Pontevedra** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **IlliquidX Ltd** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the nominal amount specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to Proof of Claim Number 60353 acquired by or on behalf of Seller (the "Proof of Claim") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim and any and all of Seller's right, title and interest in, to and under any right or remedy of Seller or any prior seller against any prior seller in respect of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) all rights and benefits of Seller the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 (as "Lehman Programs Securities to which Transfer Relates") attached hereto together with all rights and claims of the Seller against the issuer of each Purchased Security in respect thereof.

2.    Seller hereby represents and warrants to Purchaser that:  (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; and (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors.

3.    Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims.  Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim.  Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller

transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.    All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.    Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.    Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.    Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 30th day of November 2010.

Caja de Ahorros de Vigo, Ourense y Pontevedra          Illiquidx Ltd

By:_____               By:_____
Name:                                             Name: Celestino Amore
Title:                                            Title: Managing Director

Avenida García Barbon 1-3                          107-111 Fleet Street
36201, Vigo, Galicia                               London EC4A 2AB
Spain                                              UNITED KINGDOM




Schedule 1

**Transferred Claims**

**Purchased Claim**

100% of EUR2,150,00.00 which is the equivalent of $3,047,625 (the outstanding amount of ISIN/CUSIP XS0284314571 as described in the Proof of Claim as of 30th November, 2010), plus all accrued interest, fees and other recoveries due.

**Lehman Programs Securities to which Transfer Relates**

| Description of Security | ISIN/CUSIP | Issuer | Guarantor | Principal/Notional Amount | Coupon | Maturity | U.S. $ Amount claimed in Proof of Claim with respect to Lehman Programs Securities to which Transfer relates |
|---|---|---|---|---|---|---|---|
| Issue of EUR2,150,000 Index-Linked Notes due February 2010 unconditionally and irrevocably Guaranteed by Lehman Brothers Holdings Inc. | XS0284314571 | Lehman Brothers Treasury Co. B.V. | Lehman Brothers Holdings Inc. | 100% of the ISIN/CUSIP XS0284314571 under the Proof of Claim, which is EUR2,150,00.00 (which is equivalent of USD $3,047,625), plus all accrued interest, fees and recoveries due. | Not applicable | 1st of February 2010 | EUR2,150,00.00 (which is equivalent of USD $3,047,625) (using an exchange rate of EUR/USD = 1.4175), plus all accrued interest, fees and recoveries due. |

¡Error! Nombre desconocido de propiedad de documento.¡Error! Nombre desconocido de propiedad de documento.¡Error! Nombre desconocido de propiedad de documento.

¡Error! Nombre desconocido de propiedad de documento.

**EXHIBIT D**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Ch-11 LEHMAN BROTHERS HOLDINGS, INC.<br><br>Debtor | Case No. 08-13555<br><br>Chapter 11 |

### NOTICE OF TRANSFER OF CLAIM
### PURSUANT TO RULE 3001(e)

PLEASE TAKE NOTICE that any and all claims of Mr. Benito Vázquez Fernández, of Spanish nationality, domiciled for these purposes at Barco de Valdeorras, Casaio-Somoza- Carballeda, Orense (Spain) and bearer of Spanish identity card number 10010437-D ("Assignor") that are scheduled by the Debtor(s) and or filed as an original or amended Proof of Claim against the Debtor(s), including but not limited to the following:

| Proof of Claim<br>Amount | Proof of Claim<br>No. |
|---|---|
| $3,047,625 | 0000060353 |

have been transferred and assigned to Caja de Ahorros de Vigo, Ourense y Pontevedra ("Assignee"). The signature of Assignor on this document is evidence of the transfer of the claims and all rights thereto.

Assignor hereby waives any notice or hearing requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing this Assignment as an unconditional assignment and the Assignee herein as the valid owner of the Claim. You are hereby requested to make all future payments and distributions, and to give all notices and other communications, in respect of the Claim to the Assignee.

ASSIGNEE: Caja de Ahorros de Vigo,
                    Ourense y Pontevedra
                    (Caixa Nova)

Address:    Avda. García Barbon 1-3
                    36201, Vigo, Galicia
                    Spain

Signature:

Name:       Caixanova

Title:         Mª Victoria Vázquez _____
                    Subdirectora General

Date:

ASSIGNOR: Mr. Benito Vázquez Fernández.

Address:    Attn: Mr. Benito Vázquez Fernández
                    Barco de Valdeorras, Casaio-Somoza-
                    Carballeda, s/n
                    32337, Orense, Galicia
                    Spain

Signature:

Name:       BENITO VAZQUEZ FERNANDEZ

Title:

Date:        23-09-10

DOC ID-11099487.2

*United States Bankruptcy Court/Southern District of New York*

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

## LEHMAN SECURITIES PROGRAMS
## PROOF OF CLAIM

| In Re: | Chapter 11 |
|---|---|
| Lehman Brothers Holdings Inc., et al., Debtors. | Case No. 08-13555 (JMP) (Jointly Administered) |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000060353

**Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009**

| | |
|---|---|
| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor) <br><br> **BENITO VAZQUEZ FERNANDEZ** <br> **Address:** García Barbón, 1 -7ª <br> 36201 Vigo (Spain) <br> **Attention:** Mr. Luis Piñeiro Santos <br> (please see section 7 of the Attachment for full contact details) <br> Telephone number: 34 (0) 986828341   Email Address:   lpineiro@caixanova.com | ☐ Check this box to indicate that this claim amends a previously filed claim. <br><br> Court Claim Number: _____ <br> *(if known)* <br><br> Filed on: _____ |
| Name and address where payment should be sent (if different from above) <br><br><br> Telephone number: _____   Email Address: _____ | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim: $ [...](see Attachment)                    (Required)   **3,047,625 USD**

☒   Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

International Securities Identification Number (ISIN):   **See Attachment**   (Required)   **XS0284314571**

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:

[...] (see Attachment)   **6060310**   (Required)

4. Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:
[...] (see Attachment)   **96287**   (Required)

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

**FOR COURT USE ONLY**

FILED / RECEIVED

OCT 3 0 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: <br><br> 16/10/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. <br><br> Mr. BENITO VAZQUEZ FERNANDEZ |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

In re:

Lehman Brothers Holdings Inc., *et al.*

                     Debtors

Chapter 11

Case No. 08-13555 (JMP)

Jointly Administered

## ATTACHMENT TO PROOF OF CLAIM OF BENITO VAZQUEZ FERNANDEZ

BENITO VAZQUEZ FERNANDEZ ("Claimant") submits this attachment to the proof of claim (the "Claim") against Lehman Brothers Holdings Inc. ("LBHI").

## CLAIM

1. The Claimant submits this Claim with respect to certain securities guaranteed by LBHI and as set forth on the Lehman Programs Securities list posted by LBHI on July 17, 2009 in accordance with the Bar Order. Such Lehman Programs Securities include:

| ISIN | BLOCKING NUMBER | PARTICIPANT ACCOUNT NUMBER | PRINCIPAL AMOUNT OF ISSUE HELD (EUR) | CLAIM AMOUNT (USD) |
|------|------|------|------|------|
| XS0284314571 | 6060310 | 96287 | 2,150,000,000 | 3,047,625 |
| **TOTAL** | | | | 3,047,625 (1) |

(1) Or such other amount as may be determined in accordance with the terms of the applicable documentation and subject to applicable law.

## RESERVATION OF RIGHTS

2.  Claimant expressly reserves the right to amend or supplement this Claim at any time, in any respect and for any reason, including but not limited to, for the purposes of (a) fixing, increasing, or amending the amounts referred to herein, and (b) adding or amending documents and other information and further describing the claims. Claimant does not waive any right to amounts due for any claim asserted herein by not stating a specific amount due for any such claim at this time, and Claimant reserves the right to amend or supplement this proof of claim, if Claimant should deem it necessary or appropriate, to assert and state an amount for any such claim.

3.  This Claim is made without prejudice to the filing by Claimant and any related entities of additional proofs of claim for any additional claims against LBHI and its affiliated debtors (the "Debtors") and non-debtor entities affiliated with the Debtors of any kind or nature, including, without limitation, claims for administrative expenses, additional interest, late charges, and related costs and expenses, and any and all other charges and obligations reserved under the applicable documents and other transaction documents, and claims for reimbursement in amounts that are not fully ascertainable. .

4.  The filing of this Claim is not intended to be and shall not be deemed to be or construed as a waiver or release of any right to claim specific assets; any rights of setoff, recoupment, or counterclaim; or any other right, rights of action, causes of action, or claims, whether existing now or hereinafter arising, that Claimant has or may have against LBHI, its affiliated entities or any other person, or persons, and Claimant expressly reserves all such rights.

5.  Nothing herein modifies, alters, amends and/or waives any right Claimant may have under applicable law or any agreement or understanding to assert and recover from

LBHI, its affiliated entities or any other person or persons, upon rights, claims, and monies.

6. In executing and filing this claim, Claimant does not submit itself to the jurisdiction of this Court for any other purpose than with respect to this Claim. This Claim is not intended to be, and shall not be construed as (i) an election of remedies, (ii) a waiver of any past, present or future defaults, or (iii) a waiver or limitation of any rights remedies, claims or interests of Claimant.

## NOTICES

7. All notices, communications and distributions with respect to this Claim should be sent to:

**Luis Piñeiro Santos**
**Address:**    **García Barbón, 1 - 7°**
              **36201 Vigo (Spain)**
**Telephone:**  **+34 986 828216**
**Attention:**  **Mr. Luis Piñeiro Santos**

With a copy to:

Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
Telephone:   (212) 878-8000
Attention:   Jennifer C. DeMarco, Esq.
            David A. Sullivan, Esq.

## BREAKDOWN OF CLAIM

8.  See Annex.

## ANNEX

### BREAKDOWN OF CLAIM: ISIN XS0284314571

The Claimant invested EUR 2,150,000 purchasing 2,150 notes issued by Lehman Brothers Treasury Co. B.V. on 18 January 2007 with ISIN code number XS0284314571 and whose maturity date was established to take place on 1 February 2010.

The Notes have been issued under the "*US$ 60,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus A.G.*" dated 9 August 2006 (the "**Program**"). The terms and conditions to be applied to this issuing are those appearing in the Program (the "**Terms and Conditions**").

According to the final terms dated 30 March 2007 (the "**Final Terms**") there is a final redemption amount to be paid on 1 February 2010 and which should be calculated by the Calculation Agent according to a formula attached to the Final Terms as an Annex.

The Final Terms also establish an early redemption amount (according to clause 8 (f) (*Early Redemption Amounts*) and clause 10 (a) (vi)) to be paid if an event of default occurs:

"*In respect of each Note, an amount in the Specified Currency equal to the fair market value of such Note (disregarding credit risk of the Issuer) (which value shall be less the proportion attributable to that Note of the reasonable cost to the Issuer of unwinding any related hedging arrangements) on such day as is selected by the Calculation Agent in its sole and absolute discretion (provided that such day is not more than 15 days before the date fixed for redemption of the Note).*"

The Calculation Agent was, in turn, Lehman Brothers International Europe, now in insolvency and unable to perform its role.

Thus, until such situation is solved for the time being our claim is for the principal invested. Since the "*Global notes pertaining to debtors' schedules and statements*" released by the United States Bankruptcy Court of the Southern District of New York set out on its section 7 that "otherwise indicated, all amounts are reflected in U.S. dollars" we have calculated the principal amount in U.S. dollars according to the average dollar-euro exchange rate as of 15 September 2008, published by the Federal Reserve Bank of New York on the website http://www.ny.frb.org/markets/foreignex.html (EUR = 1,4175

USD)  and we have also calculated in Euros the additional interest  just as established in the Terms and Conditions (and then in U.S. dollars according to the mentioned exchange rate).

**Principal amount in U.S. dollars:**

EUR 2,150,000  x USD 1,4175 = USD 3,047,625

H
A
N
D

D
E
L
I
V
E
R
Y

_____TP_____
RECEIVED BY:

____10-30-09____
DATE

____4:52ᵃᵐ____
TIME

**SECURITIES NOTE dated 30 March 2007**

*This Securities Note has been prepared for the purposes of listing the Notes on the Official List and admitting the Notes to trading on the regulated market of the Irish Stock Exchange and for updating the disclosure set out in the document containing the same terms and conditions as herein dated 1 February 2007.*

**LEHMAN BROTHERS TREASURY CO. B.V.**
*(incorporated with limited liability in The Netherlands and having its statutory domicile in Amsterdam)*
**Series 6024 - Issue of EUR 2,150,000 Index-Linked Notes
due February 2010 relating to the Dow Jones Eurostoxx 50**
unconditionally and irrevocably guaranteed by
**LEHMAN BROTHERS HOLDINGS INC.**
*(incorporated in the State of Delaware)*

This document has been approved by the Irish Financial Services Regulatory Authority (the "**IFSRA**"), which is the Irish competent authority for the purposes of Directive 2003/71/EC (the "**Prospectus Directive**") as implemented in Ireland by the Prospectus (Directive 2003/71/EC) Regulations 2005 (the "**Irish Prospectus Regulations**"), as a securities note (the "**Securities Note**") issued in compliance with the Prospectus Directive and the Irish Prospectus Regulations for the purpose of providing information concerning the Notes described herein. This Securities Note together with the program registration document dated 9 August 2006 (the "**Registration Document**") and the summary note dated 30 March 2007 (the "**Summary Note**") constitutes a prospectus (the "**Prospectus**") for the purposes of the Prospectus Directive and the Irish Prospectus Regulations in respect of the Notes described herein.

Terms used herein shall be deemed to be defined as such for the purposes of the Terms and Conditions of the Notes (the "**Conditions**") set forth on pages 54 to 95 of the Base Prospectus dated 9 August 2006 as supplemented on 29 August 2006, 6 September 2006, 26 September 2006, 16 October 2006 and 19 December 2006, 6 February 2007, 14 February 2007 and 16 March 2007 (the "**Base Prospectus**") issued in connection with the U.S.$60,000,000,000 Euro Medium-Term Note Program (the "**Program**") of Lehman Brothers Holdings Inc. ("**LBHI**"), Lehman Brothers Treasury Co. B.V. ("**LBTCBV**") and Lehman Brothers Bankhaus AG ("**LBB**"), which are incorporated into, and form part of, this Securities Note. Full information on the Issuer and the offer of the Notes is only available on the basis of the combination of the Registration Document (including all information incorporated by reference therein), this Securities Note (including all information incorporated by reference herein) and the Summary Note. The Registration Document, this Securities Note and the Summary Note are available for viewing at the Issuer's registered office, at the Dealer and at the Irish Paying Agent and copies may be obtained from the Dealer.

Application has been made to the Irish Financial Services Regulatory Authority, as competent authority under Directive 2003/71/EC, for the Securities Note and the Summary Note to be approved.

1

Application has been made to the Irish Stock Exchange for the Notes to be admitted to the Official List and trading on its regulated market.

No assurance can be given as to whether or not or when such application for listing/admission to trading will be granted.

## TABLE OF CONTENTS

Risk Factors ........................................................................................................................... 4

Important Notices ................................................................................................................. 8

Information Incorporated by Reference ............................................................................. 10

Terms and Conditions of The Notes .................................................................................. 12

Annex ................................................................................................................................. 18

### Risk Factors

Prospective investors of Notes should carefully consider the following information in conjunction with other information contained in this Securities Note and the Base Prospectus before purchasing the Notes. The attention of prospective investors is drawn to pages 14 to 25 of the Registration Document, headed "Risk Factors".

This Securities Note however cannot disclose all of the risks and other significant aspects of the Notes and investment decisions should not be made solely on the basis of these risk factors since the information contained herein cannot serve as a substitute for independent individual advice which is tailored to the requirements, investment objectives, experience, knowledge and circumstances of a prospective investor.

Each prospective investor of Notes should consider carefully whether the Notes are suitable for it in the light of its circumstances and financial position and in view of the complexity and risks inherent in the Notes. Prospective investors of Notes should be experienced with respect to derivatives, particularly options and options transactions. Furthermore, prospective investors of Notes should understand the risks of transactions involving the Notes and should reach an investment decision only after careful consideration of the suitability of the Notes in light of their particular financial circumstances and after consultation with their own legal, tax, accountancy and other professional advisers. No person should deal in the Notes unless that person understands fully the nature of the relevant transaction. Such transaction is suitable only for, and should be made only by, an investor who has no need for liquidity and understands and can afford the financial and other risks of this transaction.

*Issue Price*

The Issue Price in respect of the Notes may not be an accurate reflection of the market value of such Notes as at the Issue Date. The price at which the Notes may be sold in secondary market transactions may be lower than the Issue Price. In particular, the Issue Price in respect of the Notes may take into account the distribution fee payable to any appointed distributor of the Notes with respect to the offer and sale of the Notes.

*Factors Affecting the Index*

Prospective investors of Notes should be familiar with investments in global capital markets and with indices generally. The level of an index is based on the value of the assets comprised in such index although prospective investors should note that the level of the Index at any time will not include the reinvestment of the yield on the assets comprised in the Index. Prospective investors should understand that global economic, financial and political developments, among other things, may have a material effect on the value of the assets comprising the Index and/or the performance of the Index.

Prospective investors should also note that dividends paid to holders of the assets comprised in the Index will not be paid to the Issuer or to the Noteholders. The return on the Notes will thus not reflect any dividends which would be paid to investors that have made a direct investment in the assets comprised in the Index. Consequently, the return on the Notes may be less than the return from a direct investment in the assets comprised in the Index.

4

*Investing in the Notes is not the same as investing in a Component Security*

Prospective investors should be aware that the market value of the Notes may not have a direct relationship with the prevailing level of the Index or price of component securities comprised in the Index (each, a "**Component Security**"), in that changes in the prevailing level of the Index or price of the Component Securities will not necessarily result in a comparable change in the market value of the Notes.

*Secondary market and liquidity for the Notes*

There can be no assurance as to how any Notes will trade in the secondary market, whether there will be a secondary market or, if a secondary market exists, whether such market will be sustainable or liquid or illiquid.

The liquidity of the Notes may also be affected by restrictions, if any, on offers and sales of the Notes in some jurisdictions. In any case, due to the relative complexity and lower liquidity of the Notes if compared to more conventional financial instruments such as shares, comparatively larger spreads between bid and ask quotes should be expected.

*The Notes may be redeemed prior to maturity*

In the event that the Issuer or the Guarantor would be obliged to increase the amounts payable in respect of any Notes due to any withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or on behalf of The Netherlands or the USA, as the case may be, or any political subdivision thereof or any authority therein or thereof having power to tax, the Issuer may redeem all outstanding Notes in accordance with the Terms and Conditions.

*Early Redemption Amount*

In the event of an early redemption for taxation reasons or in an event of default (as described in Item 23 of the Terms and Conditions of the Notes) as determined by the Calculation Agent (as described in the Annex), the Issuer may cancel the Notes and, if permitted by applicable law, pay the holder of each Note the Early Redemption Amount. The amount payable will be calculated by reference to the fair market value of the Notes as determined by the Calculation Agent in its sole and absolute discretion and may be reduced by an amount referable to the cost to the Issuer of unwinding any related hedging arrangements as determined by the Calculation Agent. Investors of Notes should understand that such Early Redemption Amount may be less than the Issue Price of the Notes or the amount the investor has paid for the Notes and may even be nil.

In the event of early redemption, a Note holder may not be able to reinvest the redemption proceeds in a comparable security and receive a return on investment which is as high as that of the Notes. The Issuer is not liable for any disadvantage a Note holder may incur in respect of the new investment or non-investment of its capital.

*Potential conflicts of interest*

The Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries may, from time to time, engage in purchase, sale or other transactions involving the Index or a

5

Component Security or related derivatives for their proprietary accounts and/or for accounts under their management and/or for clients. Such transactions may have a positive or negative effect on the level of the Index and consequently on the value of the Notes. In addition, the Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries may, from time to time, act in other capacities with regard to the Notes (such as in an agency capacity and/or as the calculation agent) and may issue or participate in the issue of other competing financial instruments in respect of the Index or Component Securities and the introduction of such competing financial instruments may affect the value of the Notes. The Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries owe no duty or responsibility to any Noteholder (or any other party) to avoid such conflicts.

In connection with the offering of the Notes, the Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries may enter into one or more hedging transactions with respect to the Index or Component Securities or related derivatives. In connection with such hedging or with respect to proprietary or other trading activities by the Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries, the Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries may enter into transactions in relation to the Index, Component Securities or related derivatives which may affect the market price, liquidity or value of the Notes and which could be deemed to be adverse to the interests of the relevant Noteholders.

Such transactions could present certain conflicts of interest with the interest of Noteholders and may affect the value of the Notes. The Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries owe no duty or responsibility to any Noteholder (or any other party) to avoid such conflicts.

*Risk-excluding or risk-limiting transactions*

Prospective investors may not rely upon being able to enter into transactions, which may exclude or limit loss exposure to the Notes during the term of the Notes. The possibility of entering into risk-excluding or risk-limiting transactions depends in particular on market conditions and the relevant underlying circumstances. Noteholders may be able to enter into such transactions only at an unfavourable market price resulting in an additional loss for such Noteholders.

Prospective investors intending to purchase Notes to hedge the market risk associated with investing in the Component Security should be aware of the difficulties associated therewith. For example, the value of the Notes may not exactly correlate with the value of the Component Security.

*Determinations by the Calculation Agent*

The Calculation Agent has certain discretions to determine whether certain events as further set out in the Annex have occurred. Prospective investors should be aware that any determination made by the Calculation Agent may have an adverse effect on the value of the Notes. For example, the Calculation Agent may determine that a Market Disruption Event has occurred or exists at a relevant time which may affect the determination of the level of the Index on a relevant Scheduled Trading Day and/or may delay settlement in respect of the Notes. Any such

discretion exercised by, or any calculation made by, the Calculation Agent (in the absence of manifest error) shall be binding.

*Adjustments*

The Calculation Agent may adjust the terms of the Notes in the case of a Market Disruption Event, an Index Adjustment Event and/or such other similar adjustment or extraordinary event pursuant to terms as set out in the Annex to is Securities Note. Such adjustment may have an adverse impact on the value of the Notes. Any such discretion exercised by, or any calculation made by the Calculation Agent (in the absence of manifest error) shall be binding.

*Creditworthiness of the Issuer and Guarantor*

Any person who purchases the Notes is relying upon the creditworthiness of the Issuer and the Guarantor and has no rights against any other person. The Notes constitute general, unsecured, unsubordinated, contractual obligations of the Issuer and of no other person. The Notes rank pari passu among themselves.

**Important Notices**

In this Securities Note, references to the "Group" are to LBHI and its direct and indirect subsidiaries (which include LBTCBV and LBB).

The Dealer has not independently verified the information contained in the Prospectus. Accordingly, no representation, warranty or undertaking (express or implied) is made and no responsibility or liability is accepted by the Dealer as to the accuracy or completeness at any time of the Prospectus or any supplement hereto.

No person is authorized to give any information or to make any representations other than those contained in this Securities Note in connection with the offering or sale of the Notes and, if given or made, such information or representations must not be relied upon as having been authorized by the Issuer, the Guarantor or the Dealer. None of the Prospectus, any supplement, any other financial statements or any further information supplied in connection with the Notes is intended to provide the basis of any credit or other evaluation and should not be considered as a recommendation or a statement of opinion, or a report of either of those things, by the Issuer, the Guarantor or the Dealer that any recipient of the Prospectus, any supplement, any other financial statements or any further information supplied in connection with the Notes should purchase any of the Notes. Each investor contemplating purchasing Notes should make its own independent investigation of the financial condition and affairs, and its own appraisal of the creditworthiness of, the Issuer, the Guarantor and the Group. None of the Prospectus, any supplement, any other financial statements or any further information supplied in connection with the Notes constitutes an offer or invitation by or on behalf of any of the Issuer, the Guarantor or the Dealer to any person to subscribe for, or to purchase, any of the Notes.

The delivery of the Securities Note does not at any time imply that the information contained herein or in the Registration Document concerning the Issuer, the Guarantor or the Group is correct at any time subsequent to the date hereof or that any supplement, any other financial statements or any further information supplied in connection with the Notes is correct as of any time subsequent to the date indicated in the document containing the same. The Dealer expressly does not undertake to review the financial condition or affairs of the Issuer, the Guarantor or the Group during the life of the Notes. Investors should review, *inter alia*, the most recent consolidated financial statements of the Guarantor and the unconsolidated financial statements of the Issuer when deciding whether or not to purchase the Notes.

The distribution of the Prospectus and the offering, sale and delivery of the Notes in certain jurisdictions may be restricted by law. Persons into whose possession the Prospectus comes are required by the Issuer, the Guarantor and the Dealer to inform themselves about and to observe those restrictions. See "Subscription and Sale" of the Base Prospectus dated 9 August 2006 (the "**Base Prospectus**") issued in connection with the U.S.$60,000,000,000 Euro Medium-Term Note Program (the "**Program**") of LBHI, LBTCBV and LBB, incorporated by reference in the Registration Document.

**THE NOTES HAVE NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"), OR THE SECURITIES LAWS OF ANY STATE IN THE UNITED STATES, AND ARE SUBJECT TO U.S. TAX LAW REQUIREMENTS. THE NOTES MAY NOT**

8

**BE OFFERED, SOLD OR DELIVERED AT ANY TIME, DIRECTLY OR INDIRECTLY, WITHIN THE UNITED STATES OR TO OR FOR THE ACCOUNT OF U.S. PERSONS (AS DEFINED IN EITHER REGULATION S UNDER THE SECURITIES ACT OR THE UNITED STATES INTERNAL REVENUE CODE OF 1986, AS AMENDED).**

**IN MAKING AN INVESTMENT DECISION, INVESTORS MUST RELY ON THEIR OWN EXAMINATION OF THE ISSUER, THE GUARANTOR AND THE TERMS OF THE OFFERING, INCLUDING THE MERITS AND RISKS INVOLVED. THESE NOTES HAVE NOT BEEN RECOMMENDED BY ANY UNITED STATES FEDERAL OR STATE SECURITIES COMMISSION OR REGULATORY AUTHORITY. FURTHERMORE, THE FOREGOING AUTHORITIES HAVE NOT CONFIRMED THE ACCURACY OR DETERMINED THE ADEQUACY OF THIS DOCUMENT. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

The Notes are one of a series to be issued pursuant to the Amended and Restated Fiscal Agency Agreement dated 9 August 2006 (as amended, supplemented or replaced from time to time) between, amongst others, LBHI, LBTCBV, LBB, JPMorgan Chase Bank, N.A. as fiscal agent, as registrar and as principal paying agent and AIB/BNY Fund Management (Ireland) Limited as paying agent. The Notes have the benefit of a deed of covenant dated 9 August 2006 (as amended, supplemented or replaced from time to time), executed by LBHI, LBTCBV and LBB and a deed of guarantee dated 9 August 2006 (as amended, supplemented or replaced from time to time) of the Guarantor as to, *inter alia*, the payment of principal and interest, if any, in respect thereof.

9

**Information incorporated by reference**

Terms used herein but not otherwise defined shall have the meanings given to them in the Base Prospectus.

The following information contained in the Base Prospectus shall be deemed to be incorporated into and form part of this Securities Note. Page references are to pages in the Base Prospectus.

|  | Page Reference |
|---|---|
| The section entitled "Terms and Conditions of the Notes" | 54 to 95 |
| The section entitled "Lehman Brothers Holdings Inc." | 101-102 |
| The section entitled "Summary Financial Information of Lehman Brothers Holdings Inc." | 103-104 |
| The section entitled "Lehman Brothers Treasury Co. B.V." | 105 |
| The section entitled "Summary Financial Information of Lehman Brothers Treasury Co. B.V." | 106-107 |
| The section entitled "United States Taxation" | 112 to 124 |
| The section entitled "Netherlands Taxation" | 124 to 125 |
| The section entitled "German Taxation" | 125 to 127 |
| The section entitled "Subscription and Sale" | 132 to 140 |
| The fourth paragraph of the section entitled "General Information" | 141 |

The following documents have been filed with the Irish Stock Exchange and shall be deemed to be incorporated by reference herein in its entirety.

1. the quarterly report for the quarter ended 31 August 2006 pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 of LBHI filed with the Securities and Exchange Commission on Form 10-Q;

2. the current report dated 14 December 2006 for the quarter ended 30 November 2006 pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 of LBHI filed with the Securities and Exchange Commission on Form 8-K annexing a press release with respect to the earnings of LBHI;

3. the current report dated 14 March 2007 pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 of LBHI filed with the Securities and Exchange Commission on Form 8-K exhibiting LBHI's press release with respect to its earnings for its most recently completed fiscal quarter and related attachments; and

4. the annual report for the fiscal year ended 30 November 2006 pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 of LBHI filed with the Securities and Exchange Commission on Form 10-K including the audited consolidated and unconsolidated financial statements of LBHI.

Any information not listed in the cross-reference table above but included in the documents incorporated by reference is either not relevant for the investor or covered elsewhere in the Prospectus.

The Issuer will provide, without charge, to each person to whom a copy of this Securities Note has been delivered, upon the oral or written request of such person, a copy of any or all of the documents which or portions of which are incorporated herein by reference. Written or oral requests for such documents should be directed to the Issuer at its office specified in the Registration Document. In addition, such documents will be available for viewing at the registered office of the Issuer at Atrium Strawinskylaan 3105, 1077 ZX Amsterdam, The Netherlands, the Dealer and the Irish Paying Agent in Dublin during usual business hours on any weekday (Saturdays and public holidays excepted).

11

## PART A – TERMS AND CONDITIONS OF THE NOTES

The terms and conditions of the Notes (the "**Terms and Conditions**") are the Conditions as set out on pages 54 to 95 of the Base Prospectus, which are hereby incorporated by reference into, and form part of, this Securities Note, as supplemented, amended, varied and/or replaced as specified below. Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth on pages 54 to 95 of the Base Prospectus.

| | | |
|---|---|---|
| 1. | (i) Issuer: | Lehman Brothers Treasury Co B.V. |
| | (ii) Guarantor: | Lehman Brothers Holdings Inc. |
| 2. | (i) Series Number: | 6024 |
| | (ii) Tranche Number: | 1 |
| 3. | Specified Currency or Currencies: | Euro ("**EUR**") |
| 4. | Aggregate Nominal Amount: | |
| | (i) Series: | EUR 2,150,000 |
| | (ii) Tranche: | EUR 2,150,000 |
| 5. | Issue Price: | 100.00 per cent. of the Aggregate Nominal Amount |
| 6. | Specified Denominations: | EUR 1,000 |
| 7. | (i) Issue Date: | 1 February 2007 |
| | (ii) Interest Commencement Date: | Not Applicable |
| 8. | Maturity Date: | 1 February 2010, subject to adjustment in accordance with the Modified Following Business Day Convention |
| 9. | Interest Basis: | Not Applicable |
| 10. | Redemption/Payment Basis: | As described in the Annex |
| 11. | Change of Interest or Redemption/Payment Basis: | Not Applicable |
| 12. | Put/Call Options: | Not Applicable |
| 13. | (i) Status of the Notes: | Senior Notes |
| | (ii) Status of the Guarantee: | Senior Guarantee |
| 14. | Method of distribution: | Non-syndicated |

**PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE**

12

| | | |
|---|---|---|
| 15. | Fixed Rate Note Provisions | Applicable |
| | (i) Fixed Rate of Interest: | 5.00 per cent. |
| | (ii) Interest Payment Date(s): | 1 February 2008 |
| | (iii) Fixed Coupon Amount: | EUR 50.00 per Note of EUR 1,000 Specified Denomination |
| | (iv) Fixed Day Count Fraction: | Not Applicable |
| | (v) Broken Amount(s): | Not Applicable |
| | (vi) Other terms relating to the method of calculating interest for Fixed Rate Notes: | Not Applicable |
| | (vii) Business Day Convention: | Modified Following Business Day Convention |
| 16. | Floating Rate Note Provisions | Not Applicable |
| 17. | Zero Coupon Note Provisions | Not Applicable |
| 18. | Index-Linked Interest Note/other variable-linked interest Note Provisions | Not Applicable |
| 19. | Dual Currency Note Provisions | Not Applicable |

**PROVISIONS RELATING TO REDEMPTION**

| | | |
|---|---|---|
| 20. | Call Option | Not Applicable |
| 21. | Put Option | Not Applicable |
| 22. | Final Redemption Amount of each Note: | As described in the Annex |
| 23. | Early Redemption Amount of each Note | |
| | Early Redemption Amount(s) of each Note payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in the Conditions): | In respect of each Note, an amount in the Specified Currency equal to the fair market value of such Note (disregarding credit risk of the Issuer) (which value shall be less the proportion attributable to that Note of the reasonable cost to the Issuer of unwinding any related hedging arrangements) on such day as is selected by the Calculation Agent in its sole and absolute discretion (provided that such day is not more than 15 days before the date fixed for redemption of the Note) |

**GENERAL PROVISIONS APPLICABLE TO THE NOTES**

| | | |
|---|---|---|
| 24. | Form of Notes: | Bearer Form |

13

|  |  |
|---|---|
|  | Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form |
|  | Interests in a permanent global Note will be exchangeable for definitive Notes in bearer form in the limited circumstances described in the permanent global Note. |
| 25. Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature): | Not Applicable |
| 26. Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment: | Not Applicable |
| 27. Details relating to Instalment Notes and Instalment Dates: | Not Applicable |
| 28. Details relating to Extendible Notes: | Not Applicable |
| 29. Details relating to Renewable Notes: | Not Applicable |
| 30. Redenomination, renominalisation and reconventioning provisions: | Not Applicable |
| 31. Consolidation provisions: | The provisions in Condition 18 (*Further Issues of Notes*) apply |
| 32. Other final terms: | As described in the Annex |
| 33. Governing Law: | English law (the Guarantee governed by New York law) |

**DISTRIBUTION**

| 34. (i) If syndicated, names and addresses of Managers and underwriting commitments: | Not Applicable |
|---|---|
| (ii) Date of Subscription Agreement: | Not Applicable |
| (iii) Stabilizing Manager(s) (if any): | Not Applicable |
| 35. If non-syndicated, name and address of Dealer: | Lehman Brothers International (Europe) 25 Bank Street |

London E14 5LE

36. Total commission and concession:                Not Applicable

37. Selling restrictions:

    (i)   Netherlands Selling Restrictions:      Not Applicable

    (ii)  Additional Selling Restrictions:       Not Applicable

**RESPONSIBILITY**

The Issuer accepts responsibility for the information contained in this Securities Note and declares that, having taken all reasonable care to ensure that such is the case, the information contained in this Securities Note is, to the best of its knowledge, in accordance with the facts and contains no omission likely to affect the import of such information.

The information relating to the Index contained in this Securities Note has been extracted from information publicly available at http://www.stoxx.com.

The Issuer confirms that such information has been accurately reproduced and that, so far as it is aware, and is able to ascertain from publicly available information, no facts have been omitted which would render the reproduced information inaccurate or misleading. The Issuer accepts responsibility as to the correct reproduction of such information, but no further or other responsibility (express or implied) is accepted by the Issuer in respect of such information.

15

## PART B – OTHER INFORMATION

1. **LISTING**

   (i) Listing:                Application will be made to the Irish Stock Exchange
                               for listing of the Notes on the Official List of the Irish
                               Stock Exchange

   (ii) Admission to trading:  Application will be made to the Irish Stock Exchange
                               for admission to trading on the regulated market (as
                               such term is defined in Council Directive 93/22/EEC)
                               of the Irish Stock Exchange

2. **RATINGS**

   Not Applicable

3. **NOTIFICATION**

   Not Applicable

4. **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

   Save as discussed in the section headed "Subscription and Sale" on pages 132-140 of the Base Prospectus, so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer.

5. **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES**

   Not Applicable

6. **YIELD (Fixed Rate Notes Only)**

   Not Applicable

7. **HISTORIC INTEREST RATES**

   Not Applicable

8. **PERFORMANCE OF INDEX/FORMULA/other variable, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS and other information concerning the underlying (INDEX-LINKED OR OTHER VARIABLE - LINKED NOTES ONLY)**

   See the Annex.

   Details on historical levels of the Index can be found on www.stoxx.com

   The Issuer does not intend to provide post issuance information regarding the Index.

9.    **PERFORMANCE OF RATES OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (DUAL CURRENCY NOTES ONLY)**

     Not Applicable

10.    **OPERATIONAL INFORMATION**

| | |
|---|---|
| ISIN Code: | XS0284314571 |
| Common Code: | 028431457 |
| Any clearing system(s) other than Euroclear Bank S.A./N.V. and Clearstream Banking Societe Anonyme and the relevant identification number(s): | Valoren: 2890779 |
| Delivery: | Delivery against payment |
| The Aggregate Nominal Amount of Notes issued has been translated into U.S. Dollars at the rate of USD 1.00 = EUR 0.7730 producing a sum of: | USD 2,781,371.28 |
| Names and addresses of Additional Paying Agent(s) (if any): | Not Applicable |

17

## ANNEX

1. **Final Redemption Amount of each Note**

Unless previously redeemed or purchased and cancelled, and subject to the terms herein, each Note shall be redeemed on the Maturity Date at a Final Redemption Amount ("**FRA**") in the Specified Currency determined by the Calculation Agent on the Valuation Date in accordance with the following:

$$SD \times \left( CP + Min\left\{ 20\%; 70\% x Max\left[ \frac{(FP - IP)}{IP}; 0 \right] \right\} \right)$$

"**CP**" means 100.00%;

"**FP**" means the Index Level on the Valuation Date, as determined by the Calculation Agent;

"**IP**" means the Index Level on 31 January 2007, as determined by the Calculation Agent;

"**Max**" followed by a series of numbers inside brackets separated by a ";"means whichever is the greater of these numbers inside those brackets;

"**Min**" followed by a series of numbers inside brackets separated by a ";" means whichever is the smaller of these numbers inside those brackets; and

"**SD**" means the Specified Denomination of each Note.

2. **Definitions**

In these Final Terms (including this Annex), the following expressions have the following meanings:

"**Calculation Agent**" means Lehman Brothers International (Europe), 25 Bank Street, London E14 5LE;

"**Disrupted Day**" means any Scheduled Trading Day on which: (i) the Index Sponsor fails to publish the level of the Index; (ii) the Related Exchange fails to open for trading during its regular trading session; or (iii) a Market Disruption Event has occurred;

"**Early Closure**" means the closure on any Exchange Business Day of the Exchange in respect of any Component Security or the Related Exchange prior to its Scheduled Closing Time unless, such earlier closing is announced by such Exchange or Related Exchange (as the case may be) at least one hour prior to the earlier of: (i) the actual closing time for the regular trading session on such Exchange or Related Exchange (as the case may be) on such Exchange Business Day; and (ii) the submission deadline for

18

orders to be entered into the Exchange or Related Exchange system for execution at the relevant Valuation Time on such Exchange Business Day;

"**Exchange**" means, in respect of each component security of the Index (each, a "**Component Security**"), the principal stock exchange on which such Component Security is principally traded, as determined by the Calculation Agent;

"**Exchange Business Day**" means any Scheduled Trading Day on which: (i) the Index Sponsor publishes the level of the Index; and (ii) the Related Exchange is open for trading during its regular trading session, notwithstanding the Related Exchange closing prior to its Scheduled Closing Time;

"**Exchange Disruption**" means any event (other than an Early Closure) that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general to effect transactions in, or obtain market values for: (i) any Component Security on the Exchange in respect of such Component Security; or (ii) futures or options contracts relating to the Index on the Related Exchange;

"**Index**" means the Dow Jones EURO STOXX 50 (Bloomberg: SX5E), a stock index that is composed of 50 selected stocks which is currently compiled and calculated by the Index Sponsor

"**Index Level**" means, in relation to any Scheduled Trading Day, the level of the Index, as calculated and announced by the Index Sponsor at the Valuation Time on such day;

"**Index Sponsor**" means the Stoxx Limited and/or, as the context requires or permits, any successor sponsor accepted by the Calculation Agent pursuant to section 4 below;

"**Market Disruption Event**" means:

(i)   (a)   the occurrence or existence, in respect of any Component Security, of:

        (1) a Trading Disruption;

        (2) an Exchange Disruption,

        in either case in respect of such Component Security and which the Calculation Agent determines is material and where the level of the Index is to be determined at the Valuation Time, at any time during the one hour period that ends at the relevant Valuation Time in respect of the Exchange on which such Component Security is principally traded; OR

        (3) an Early Closure in respect of such Component Security; AND

   (b)   the aggregate of all Component Securities in respect of which a Trading Disruption, an Exchange Disruption or an Early Closure occurs or exists comprises 20 per cent. or more of the level of the Index; OR

(ii)   the occurrence or existence, in respect of futures or options contracts relating to the Index, of: (a) a Trading Disruption Event; (b) an Exchange Disruption, which in

either case the Calculation Agent determines is material, at any time during the one hour period that ends at the Valuation Time in respect of the Related Exchange; or (c) an Early Closure, in each case in respect of such futures or options contracts.

For the purposes of determining whether a Market Disruption Event exists in respect of a Component Security at any time, if a Market Disruption Event occurs in respect of such Component Security at that time, then the relevant percentage contribution of that Component Security to the level of the Index shall be based on a comparison of (x) the portion of the level of the Index attributable to that Component Security to (y) the overall level of the Index, in each case immediately before that suspension or limitation;

"**Related Exchange**" means Eurex;

"**Scheduled Closing Time**" means, in respect of an Exchange or a Related Exchange and a Scheduled Trading Day, the scheduled weekday closing time of such Exchange or Related Exchange on such Scheduled Trading Day, without regard to after hours or any other trading outside of the regular trading session hours;

"**Scheduled Trading Day**" means any day on which: (i) the Index Sponsor is scheduled to publish the level of the Index; and (ii) the Related Exchange is scheduled to be open for trading for its regular trading session;

"**Trade Date**" means 18 January 2007;

"**Trading Disruption**" means any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise: (i) relating to any Component Security on the Exchange in respect of such Component Security; or (ii) in futures or options contracts relating to the Index on the Related Exchange;

"**Valuation Date**" means subject as provided in section 3 of this Annex (*Disrupted Days*) 27 January 2010, provided, however, that if such day is not a Scheduled Trading Day then the Valuation Date shall be the first succeeding day which is a Scheduled Trading Day; and

"**Valuation Time**" means: (i) for the purposes of determining whether a Market Disruption Event has occurred: (a) in respect of any Component Security, the Scheduled Closing Time on the Exchange in respect of such Component Security, and (b) in respect of any options contracts or future contracts on the Index, the close of trading on the Related Exchange; and (ii) in all other circumstances, the time at which the official closing level of the Index is calculated and published by the Index Sponsor.

3.    **Disrupted Days**

If the Valuation Date is a Disrupted Day, then the Valuation Date shall be the first succeeding Scheduled Trading Day that is not a Disrupted Day, unless there is a Disrupted Day on each of the eight Scheduled Trading Days immediately following the date that, but for the failure to open for trading during its regular trading session or the Market Disruption Event, would have been such Valuation Date.

In that case:

(a) the earlier of that eight following Scheduled Trading Day and the third weekday (meaning a day other than a Saturday or Sunday) prior to the Maturity Date, shall be deemed to be the Valuation Date notwithstanding it is a Disrupted Day (the "**Deemed Valuation Date**"); and

(b) the Calculation Agent shall determine its good faith estimate of the level of the Index that would have prevailed but for that Disrupted Day as of the Valuation Time on that Deemed Valuation Date.

4.    **Adjustments to Index**

4.1    *Successor Index*:  If the Index is (i) not calculated and announced by the Index Sponsor but is calculated and announced by a successor sponsor acceptable to the Calculation Agent, or (ii) replaced by a successor index using, in the determination of the Calculation Agent, the same or a substantially similar formula for and method of calculation as used in the calculation of that Index, then in each case that index (the "**Successor Index**") will be deemed to be the Index.

4.2    *Index Adjustment Event*:  If (i) on or prior to the Valuation Date, the Index Sponsor announces that it will make a material change in the formula for or the method of calculating the Index or in any other way materially modifies the Index (other than a modification prescribed in that formula or method to maintain the Index in the event of changes in constituent stock and capitalization and other routine events) (an "**Index Modification**") or permanently cancels the Index and no Successor Index exists (an "**Index Cancellation**") or (ii) on the Valuation Date, the Index Sponsor fails to calculate and announce the Index Level (an "**Index Disruption**" and together with an Index Modification and an Index Cancellation, each an "**Index Adjustment Event**"), then the Calculation Agent shall determine if such Index Adjustment Event has a material effect on the Notes and, if so, shall make its determination for the purposes of calculating the Early Redemption Amount or the Final Redemption Amount, as the case may be, using, in lieu of a published level for the Index, the level for the Index as at the Valuation Date, as determined by the Calculation Agent in accordance with the formula for and method of calculating the Index last in effect prior to the change, failure or cancellation, but using only those securities that comprised the Index immediately prior to that Index Adjustment Event.

5.    **Correction of Index**

In the event that any price or level published on the Exchange or by the Index Sponsor and which is utilized for any calculation or determination made under the provisions of these Final Terms or the Terms and Conditions of the Notes is subsequently corrected and the correction is published by the Exchange or the Index Sponsor within one Settlement Cycle after the original publication, the Calculation Agent will determine the amount that is payable or deliverable as a result of that correction, and, to the extent necessary, will adjust the provisions of these Final Terms or the Conditions to account for such correction, provided that any correction effected and published after the third

21

weekday (meaning any day of the week except Saturday and Sunday) before the Maturity Date shall be ignored.

For the purposes of this section 5 the following terms shall have the following respective meanings:

"**Clearance System**" means, in respect of the Index at any time, the domestic clearance system customarily used for settling trades in shares underlying the Index at that time;

"**Clearance System Business Day**" means, in respect of a Clearance System, any day on which such Clearance System is (or but for the occurrence of a Settlement Disruption Event, would have been) open for the acceptance and execution of settlement instructions;

"**Settlement Cycle**" means, in respect of the Index, the period of Clearance System Business Days following a trade in the shares underlying the Index on the Exchange in which settlement will customarily occur according to the rules of such Exchange (or if there are multiple Exchanges in respect of an Index, the longest such period); and

"**Settlement Disruption Event**" means, in respect of the Index, an event beyond the control of the Issuer as a result of which the relevant Clearing System cannot clear the transfer of shares underlying the Index.

6.      **Notification of Early Redemption Amount, Final Redemption Amount and Disrupted Days**

6.1     *Notice to Issuer:*  As soon as reasonably practicable after calculating or otherwise determining the Early Redemption Amount or the Final Redemption Amount, as the case may be, the Calculation Agent shall give notice of the relevant amount to the Issuer.

6.2     *Notice of Disrupted Day:*  The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the existence or occurrence of a Disrupted Day on the day which but for such Disrupted Day would have been the Valuation Date.

6.3     *Notice to Noteholders:*  Adjustments in accordance with the foregoing sections shall be calculated by the Calculation Agent, shall be notified to the Noteholders in accordance with Condition 15 (*Notices*) and shall be (in the absence of manifest error) binding on all parties concerned. However, Noteholders should be aware that there may be, necessarily, some delay between the time at which any of the above events occur and the time at which it is reported to Noteholders.

7.      **The Calculation Agent**

The Calculation Agent shall have no responsibility to Noteholders for good faith errors or omissions in its calculations and determinations as provided in the Terms and Conditions except such as may result from its own wilful default, gross negligence or bad faith.  The calculations and determinations of the Calculation Agent shall be made in accordance with the Terms and Conditions (having regard in each case to the criteria stipulated herein and where relevant on the basis of information provided to or obtained

22

by employees or officers of the Calculation Agent responsible for making the relevant calculation or determination) and shall, in the absence of manifest error, be final, conclusive and binding on the Noteholders. Noteholders shall not be entitled to make any claim against the Calculation Agent, the Issuer or the Guarantor in the case where the Index Sponsor shall have made any error, omission or other incorrect statement in connection with the calculation and public announcement of the Index.

Nothing contained herein shall prevent the Calculation Agent from dealing in these Notes or from entering into any related transactions, including without limitation any swap or hedging transactions, with the Issuer (or any of its affiliates) or any holder of Notes (or any of its affiliates).

8.    **Index Disclaimer**

THE DOW JONES EUROSTOXX 50 AND THE RELATED TRADEMARKS HAVE BEEN LICENSED FOR USE BY LEHMAN BROTHERS. THE NOTES ARE NOT SPONSORED OR PROMOTED BY STOXX LIMITED OR DOW JONES COMPANY INC.

STOXX AND DOW JONES HAVE NO RELATIONSHIP TO LEHMAN BROTHERS, OTHER THAN THE LICENSING OF THE DOW JONES EURO STOXX 50 AND THE RELATED TRADE MARKS FOR USE IN CONNECTION WITH THE NOTES.

STOXX AND DOW JONES DO **NOT**:

- SPONSOR, ENDORSE, SELL OR PROMOTE THE NOTES;

- RECOMMEND THAT ANY PERSON INVEST IN THE NOTES OR ANY OTHER SECURITIES;

- HAVE ANY RESPONSIBILITY OR LIABILITY FOR OR MAKE ANY DECISIONS ABOUT THE TIMING, AMOUNT OR PRICING OF THE NOTES;

- HAVE ANY RESPONSIBILITY OR LIABILITY FOR THE ADMINISTRATION, MANAGEMENT OR MARKETING OF THE NOTES;

- CONSIDER THE NEEDS OF THE NOTES OR THE OWNERS OF THE NOTES IN DETERMINING, COMPOSING OR CALCULATING THE DOW JONES EURO STOXX 50 OR HAVE ANY OBLIGATION TO DO SO.

STOXX AND DOW JONES WILL NOT HAVE ANY LIABILITY IN CONNECTION WITH THE NOTES. SPECIFICALLY:

STOXX AND DOW JONES DO NOT MAKE ANY WARRANTY, EXPRESS OR IMPLIED AND DISCLAIM ANY AND ALL WARRANTY ABOUT:

- THE RESULTS TO BE OBTAINED BY THE NOTES, THE OWNER OF THE NOTES OR ANY OTHER PERSON IN CONNECTION WITH THE USE OF THE DOW JONES EURO STOXX 50 AND THE DATA INCLUDED IN THE DOW JONES EURO STOXX 50;

- THE ACCURACY OR COMPLETENESS OF THE DOW JONES EURO STOXX 50 AND ITS DATA;

23

- THE MERCHANTABILITY AND THE FITNESS FOR A PARTICULAR PURPOSE OR USE OF THE DOW JONES EURO STOXX 50 AND ITS DATA;

- STOXX AND DOW JONES WILL HAVE NO LIABILITY FOR ANY ERRORS, OMISSIONS OR INTERRUPTIONS IN THE DOW JONES EURO STOXX 50 OR ITS DATA;

- UNDER NO CIRCUMSTANCES WILL STOXX OR DOW JONES BE LIABLE FOR ANY LOST PROFITS OR INDIRECT, PUNITIVE, SPECIAL OR CONSEQUENTIAL DAMAGES OR LOSSES, EVEN IF STOXX OR DOW JONES KNOWS THAT THEY MIGHT OCCUR.

THE LICENSING AGREEMENT BETWEEN THE ISSUER AND STOXX IS SOLELY FOR THEIR BENEFIT AND NOT FOR THE BENEFIT OF THE OWNERS OF THE NOTES OR ANY OTHER THIRD PARTIES.

**PRINCIPAL PLACE OF BUSINESS OF LBHI**

**Lehman Brothers Holdings Inc.**
745 Seventh Avenue
New York, New York 10019
USA

**REGISTERED OFFICE OF LBTCBV**

**Lehman Brothers Treasury Co. B.V.**
Atrium Strawinskylaan 3105
1077 ZX Amsterdam
The Netherlands

**DEALER**

**Lehman Brothers International (Europe)**
25 Bank Street
London E14 5LE
England

**FISCAL AGENT AND PRINCIPAL PAYING AGENT**

**JPMorgan Chase Bank, N.A.**
Trinity Tower
9 Thomas More Street
London E1W 1YT
England

**IRISH PAYING AGENT**

**AIB/BNY Fund Management (Ireland) Limited**
Guild House, Guild Street
Dublin 1
Ireland