WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                                   :
**In re**                                                          :        **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,   :        **08-13555 (JMP)**
                                                                   :
                                        **Debtors.**               :        **(Jointly Administered)**
                                                                   :
--------------------------------------------------------------------x

**NOTICE OF FILING OF SETTLEMENT AGREEMENT RELATED**
**TO MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**AND LEHMAN COMMERCIAL PAPER, INC. PURSUANT**
**TO SECTION 363 OF THE BANKRUPTCY CODE AND RULE 9019(a)**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORITY TO ENTER INTO SETTLEMENT AGREEMENT**
**WITH RESPECT TO HERITAGE FIELDS PROPERTY AND**
**TO CONSUMMATE TRANSACTIONS IN CONNECTION THEREWITH**

          In connection with the hearing to be held on December 15, 2010 at 10:00 a.m.

with respect to *Motion of Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc.*

*pursuant to  Section 363 of the Bankruptcy Code and Rule 9019(a) of the Federal Rules of*

*Bankruptcy Procedure for Authority to Enter into Settlement Agreement with Respect to Heritage*

*Fields Property and to Consummate Transactions in Connection Therewith* [Docket No. 12997]

(the "Heritage Motion"), Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc., as

debtors and debtors in possession in the above-referenced chapter 11 cases, hereby file a copy of

the Settlement Agreement referenced and defined in the Heritage Motion.  A copy of the

Settlement Agreement is attached hereto as <u>Exhibit A</u>.

Dated:  December 1, 2010
        New York, New York

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

# **EXHIBIT A**

DRAFT 12/01/10

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (this "**Agreement**") is made as of _____, 2010 (the "**Closing Date**") by and among LEHMAN BROTHERS HOLDINGS INC., a Delaware corporation ("**LBHI**"), LEHMAN COMMERCIAL PAPER INC., a New York corporation ("**LCPI**"), LEHMAN ALI INC., a Delaware corporation ("**ALI**"), REPE LBREM LLC, a Delaware limited liability company ("**REPE LBREM**"; and together with LBHI, LCPI, and ALI, collectively, the "**Lehman Parties**", or individually a "**Lehman Party**"), HERITAGE FIELDS EL TORO, LLC, a Delaware limited liability company (the "**Mortgage Borrower**"), LENNAR CORPORATION, a Delaware corporation ("**Lennar Guarantor**"), LNR HERITAGE FIELDS, LLC, a California limited liability company ("**LNR Guarantor**"; and together with the Lennar Guarantor and Mortgage Borrower, the "**Borrower Parties**", or individually a "**Borrower Party**"), EL TORO LLC, a Delaware limited liability company ("**Mortgage Lender**"), LBREM REIT HOLDINGS LLC, a Delaware limited liability company ("**LBREM REIT**"; and together with Mortgage Lender, the "**PCCP Loan Parties**"), PCCP, LLC, a Delaware limited liability company ("**PCCP**"; and together with Mortgage Lender and LBREM REIT, the "**PCCP Parties**", or individually a "**PCCP Party**"), PCCP MEZZANINE RECOVERY PARTNERS I, L.P., a Delaware limited partnership (formerly known as "Lehman Brothers Real Estate Mezzanine Partners, L.P.") ("**PCCP Mezzanine**"), STATE STREET BANK AND TRUST COMPANY, a Commonwealth of Massachusetts state chartered trust company ("**State Street**") and **[SS Assignee]**, a **[Delaware]** limited liability company ("**SS Assignee**"; and together with State Street, the "**SS Parties**", or individually a "**SS Party**"; and the SS Parties, together with the Lehman Parties, the Borrower Parties, the PCCP Parties and PCCP Mezzanine, the "**Parties**" and each a "**Party**"). The Parties other than the Borrower Parties are sometimes collectively referred to herein as the "**Lender Parties**" and individually as a "**Lender Party**."

## RECITALS:

A.    Mortgage Lender made a mortgage loan (the "**Mortgage Loan**") in the principal amount of $775,000,000 to Mortgage Borrower with respect to the project commonly referred to as Heritage Fields (the "**Project**") pursuant to that certain Second Amended and Restated Loan Agreement dated as of June 26, 2007, by and between Mortgage Lender and Mortgage Borrower (as amended prior to the Closing Date, the "**Mortgage Loan Agreement**"), which Mortgage Loan is evidenced by a promissory note and various other loan documents (as amended prior to the Closing Date and together with the Mortgage Loan Agreement, the "**Mortgage Loan Documents**").

B.    ALI purchased a $650,000,000 participation interest in the Mortgage Loan (the "**Original Participation Interest**") pursuant to that certain Loan Participation Agreement by and between Mortgage Lender and ALI dated December 21, 2005, as amended. ALI asserts that it subsequently subparticipated a portion of the Original Participation Interest (the "**Bankhaus Interest**") to Lehman Brothers Bankhaus AG ("**Bankhaus**") pursuant to that certain Master Participation Agreement dated as of November 10, 1999 (as amended, the "**Master Participation Agreement**"). In addition, subsequently, ALI asserts that it transferred a portion of the Original Participation Interest to LCPI (the "**LCPI Interest**") pursuant to that certain Master Repurchase Agreement dated as of December 4, 1997, as amended.

C.      State Street asserts that it acquired certain rights in the Original Participation Interest pursuant to that certain Master Repurchase Agreement dated as of May 1, 2007 by and between State Street and LCPI (the "**SS MRA**" and the transactions evidenced by the SS MRA, the "**SS Repo**").

D.      On May 27, 2008, the Original Participation Interest was purportedly terminated pursuant to that certain Termination of Loan Participation by and between Mortgage Lender and ALI dated as of May 27, 2008 (the "**Original Participation Termination**").

E.      Contemporaneously with the Original Participation Termination, LBHI, as agent on behalf of itself and certain other lenders, and LBREM REIT, as borrower, entered into that certain Loan Agreement dated as of May 27, 2008 (as amended, the "**Corporate Loan Agreement**"; and together with the other documents evidencing and/or securing the Corporate Loan, the "**Corporate Loan Documents**") pursuant to which LBHI made a $650,000,000 corporate loan to LBREM REIT (the "**Corporate Loan**").  Pursuant to that certain Co-Lending Agreement dated as of May 27, 2008 and a certain assignment agreement of even date therewith, REPE LBREM acquired the B Note (as defined in the Corporate Loan Agreement) under the Corporate Loan in the principal amount of $262,500,000.

F.      LBREM REIT is the sole member of Mortgage Lender.

G.      On January 15, 2010, LBHI purchased a participation interest (the "**2010 Participation Interest**") in the amount of up to $20,000,000 in the Mortgage Loan pursuant to that certain Amended and Restated Participation Agreement by and between LBHI and Mortgage Lender (as amended, the "**2010 Participation Agreement**"), which 2010 Participation Interest was thereafter increased to an amount of up to $32,000,000 (the "**Maximum 2010 Participation Amount**").

H.      On February 4, 2010, LBHI acquired the Bankhaus Interest pursuant to that certain Assignment and Assumption Agreement dated as of February 4, 2010 made by and between Bankhaus and LBHI (the "**Bankhaus Assignment**").

I.      The Parties desire to settle various claims against one another and their respective Affiliates with respect to the Mortgage Loan and the Corporate Loan and the transactions described above (the "**Disputes**," but subject to Section 24(d) with respect to the MRA Damages Claim defined therein) and to enter into this Agreement and the other Settlement Documents (as defined below) to effectuate the full and final settlement of all such claims (the "**Settlement**").

J.      The United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") has issued a final order with respect to certain of the transactions contemplated hereby, a copy of which is attached hereto as <u>Exhibit A</u> (the "**Approval Order**"), which Approval Order provides for the Chapter 11 debtors' obligations under this Agreement to survive the effectiveness of any Chapter 11 Plan.

**NOW, THEREFORE**, for and in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto hereby agree as follows:

2

1.  <u>Definitions</u>.  Unless otherwise defined herein, all capitalized terms used herein shall have the meanings given to them in <u>Exhibit B</u> attached hereto.

2.  <u>Incorporation of Recitals</u>.  Each of the Recitals set forth above is hereby incorporated by reference and is binding on those specific Parties to which such Recital refers just as if recited at length herein.

3.  <u>Settlement</u>.  In complete and final settlement of the Disputes, each of the Parties hereby agrees to enter into the following transactions and agreements applicable to such Parties, all of which shall be done contemporaneously (subject to the order and sequencing set forth herein) with the execution of this Agreement:

(a)  REPE LBREM shall enter into an assignment agreement (the "**REPE LBREM Assignment Agreement**") in favor of LBHI in the form attached hereto as <u>Exhibit C</u> in order to transfer to LBHI all of REPE LBREM's right, title and interest in the Corporate Loan, including, without limitation, the B Note (the "**REPE LBREM Assignment**");

(b)  Immediately following the execution of the REPE LBREM Assignment Agreement, LBHI shall enter into an assignment agreement (the "**LBHI Corporate Loan Assignment**") in favor of State Street in the form attached hereto as <u>Exhibit D</u> in order to transfer to State Street a direct 44.13% interest in the Corporate Loan (and each of the three (3) promissory notes evidencing the Corporate Loan) (collectively, the "**SS Repo Interest**");

(c)  Immediately following execution of the LBHI Corporate Loan Assignment, (i) State Street, LBHI and Mortgage Lender shall enter into a Reinstated Participation Agreement (the "**Reinstated Participation Agreement**") in the form attached hereto as <u>Exhibit F</u> pursuant to which such Parties shall agree that, in exchange for the consideration described in item (ii) below, the Corporate Loan shall be paid in full and terminated and of no further force or effect (the "**Corporate Loan Termination**") and (ii) simultaneously therewith, and in exchange for their respective interests in the Corporate Loan, Mortgage Lender shall grant to (1) LBHI a $250,000,000 (plus interest thereon) participation interest in the Mortgage Loan (the "**LBHI Reinstated Participation Interest**" and (2) State Street a $197,470,189 (plus interest thereon) participation interest in the Mortgage Loan (the "**State Street Reinstated Participation Interest**") (collectively, the "**Participation Reinstatement Transaction**"; and the LBHI Reinstated Participation Interest and the State Street Reinstated Participation Interest, collectively the "**Reinstated Participation Interest**");

(d)  Immediately following the execution of the Reinstated Participation Agreement and in partial satisfaction of its obligations with respect to the Mortgage Loan (and in full repayment of the LBHI Reinstated Participation Interest and the 2010 Participation Interest), (A) (i) Mortgage Borrower shall pay to LBHI the Lehman Discounted Pay-Off Amount (which payment shall be deemed to reduce the outstanding balance of the Mortgage Loan, as such balance exists prior to the Mortgage Loan Reduction (as defined below)) and (ii) Mortgage Borrower and LBHI or a designee of LBHI as selected by LBHI in its sole discretion shall enter into an Option for Cash Flow Participation Agreement (LBHI) (the "**Lehman Option Agreement**") in the form attached hereto as <u>Exhibit G</u> (the "**Lehman Option**") (clauses (A)(i) and (ii), collectively, the "**Lehman Discounted Pay-Off**"), and (B) (i) Mortgage Borrower shall

(1) pay to Mortgage Lender $16,555,257.50 to further reduce the outstanding balance of the Mortgage Loan, as such balance exists prior to the Mortgage Loan Reduction, and (2) authorize the release to Mortgage Lender of the amount of the remaining real estate tax rebate proceeds currently held by or on behalf of Mortgage Lender (and any and all right, title or interest therein) with respect to the Project in the approximate amount of $4,659,474.68 (together with any interest thereon) (collectively, the "**PCCP Pay-Down Amount**"), which release shall be applied to and thereby further reduce the outstanding balance of the Mortgage Loan, as such balance exists prior to the Mortgage Loan Reduction; and (ii) Mortgage Borrower and Mortgage Lender shall enter into a Cash Flow Participation Agreement (PCCP) (the "**PCCP Cash Flow Participation Agreement**") in the form attached hereto as Exhibit H (the "**PCCP Cash Flow Participation**") (clauses (B)(i) and (ii), collectively, the "**PCCP Pay-Down**").

(e)    Immediately following the Lehman Discounted Pay-Off and the PCCP Pay-Down, Mortgage Lender and Mortgage Borrower shall (i) reduce (without any payments being made by the Borrower Parties other than as set forth in the preceding paragraph (d)) the face amount of the Mortgage Loan to a maximum principal amount of $[**388 million**] and the outstanding principal balance of the Mortgage Loan to $[**208 million**] (collectively, the "**Mortgage Loan Reduction**") and (ii) enter into a Mortgage Loan Reduction Statement in the form attached hereto as Exhibit I (the "**Mortgage Loan Reduction Statement**");

(f)    Immediately following the Mortgage Loan Reduction, each of the Lehman Parties shall enter into an Assignment of Secondary Lehman Interest in the form attached hereto as Exhibit J quitclaiming its respective right, title and interest in the Secondary Lehman Interest to SS Assignee on an "as is/where is" basis and without representation, recourse or warranty of any kind whatsoever (the "**Lehman Assignment**");

(g)    Immediately following the Mortgage Loan Reduction, SS Assignee shall pay to Mortgage Lender an amount equal to $100,000 (the "**Transfer Consideration**"), and in exchange for the Transfer Consideration, Mortgage Lender shall enter into an Assignment of PCCP Interests in the form attached hereto as Exhibit K, assigning to SS Assignee all of Mortgage Lender's right, title and interest in the PCCP Interests (as modified by the Mortgage Loan Reduction) (the "**PCCP Assignment**" and together with the Lehman Assignment, collectively, the "**Assignments**") on an "as is/where is" basis, and without representation, warranty or recourse, except that the PCCP Loan Parties and PCCP Mezzanine shall provide the indemnifications set forth in Section 21 below;

(h)    Prior to the Mortgage Loan Restructure (as defined below) State Street shall assign all of its right, title and interest in the State Street Reinstated Participation Interest to SS Assignee pursuant to an Assignment (State Street) in the form attached hereto as Exhibit L;

(i)    Immediately following the Assignments (and the assignment referenced in Section 3(h) above), Mortgage Borrower and SS Assignee shall restructure the Mortgage Loan (the "**Mortgage Loan Restructure**") pursuant to certain amended mortgage loan documents as agreed upon between Mortgage Borrower and SS Assignee and executed and delivered as of the Closing Date (collectively, the "**Amended Mortgage Loan Documents**").

(j)    Mortgage Borrower and [**SS Designee**] as part of the Mortgage Loan Restructure shall enter into an Alternate Additional Interest Option Agreement (the "**State Street Option Agreement**"); and

(k)    Lehman Parties, PCCP Parties, SS Parties and Borrower Parties shall enter into a Waiver and Release Agreement in the form attached hereto as <u>Exhibit T</u>.

All of the Parties acknowledge that it is the intention that after giving effect to all of the transactions described in the foregoing provisions of this Section 3 other than the Mortgage Loan Restructure, SS Assignee shall be the sole owner and holder of 100% of all legal and beneficial ownership interests in the Mortgage Loan, free and clear of all liens, claims and encumbrances, provided that such acknowledgment is not intended to and does not limit or expand any representations, warranties or indemnifications of the Parties contained elsewhere in this Agreement or in any of the other Settlement Documents.

4.    <u>Settlement Documents</u>.  In addition to the documents and instruments described in Section 3 above, simultaneously with the execution of this Agreement, the applicable Parties shall enter into, execute and deliver the documents listed in <u>Exhibit P</u> attached hereto (collectively, with this Agreement and the documents listed in Section 3 hereof, but excluding the Amended Mortgage Loan Documents and the State Street Option Agreement, the "**Settlement Documents**").

5.    <u>Representations and Warranties of LBHI</u>.  LBHI hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)    LBHI is a corporation formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)    the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by LBHI:

(i)    is not precluded by, and shall not violate (1) to the knowledge of LBHI, any provision of any existing law, statute, rule or regulation of the jurisdiction in which LBHI is organized or in any other place where LBHI is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against LBHI, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, articles of incorporation, by-laws or any other agreement or contract of any kind, or other documents affecting LBHI, except to the extent any such violation would not have a material adverse effect on LBHI's ability to enter into and perform its obligations under this

Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)      shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which LBHI is a party or by which it is bound, or to which it or any portion of its property or assets is subject except to the extent any such breach or default would not have a material adverse effect on LBHI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)      to the knowledge of LBHI, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on LBHI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)      LBHI is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)      to the knowledge of LBHI, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which LBHI is a party are fair and equitable to LBHI; and

(e)      LBHI has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

6.      <u>Representations and Warranties of LCPI</u>.  LCPI hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)      LCPI is a corporation formed under and governed by the laws of the State of New York and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)      the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by LCPI:

(i)      is not precluded by, and shall not violate (1) to the knowledge of LCPI, any provision of any existing law, statute, rule or regulation of the jurisdiction in which LCPI is organized or in any other place where LCPI is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department,

commission, board, bureau, agency or instrumentality against LCPI, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, articles of incorporation, by-laws or any other agreement or contract of any kind, or other documents affecting LCPI, except to the extent any such violation would not have a material adverse effect on LCPI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)        shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which LCPI is a party or by which it is bound, or to which it or any portion of its property or assets is subject, except to the extent any such breach or default would not have a material adverse effect on LCPI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)        to the knowledge of LCPI, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on LCPI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)        LCPI is not legally obligated to enter into this Agreement or any of the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)        to the knowledge of LCPI, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which LCPI is a party are fair and equitable to LCPI; and

(e)        LCPI has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

7.        <u>Representations and Warranties of ALI</u>.  ALI hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)        ALI is a corporation formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)        the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by ALI:

(i)      is not precluded by, and shall not violate (1) to the knowledge of ALI, any provision of any existing law, statute, rule or regulation of the jurisdiction in which ALI is organized or in any other place where ALI is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against ALI, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, articles of incorporation, by-laws or any other agreement or contract of any kind, or other documents affecting ALI, except to the extent any such violation would not have a material adverse effect on ALI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)      shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which ALI is a party or by which it is bound, or to which it or any portion of its property or assets is subject, except to the extent any such breach to default would not have a material adverse effect on ALI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)      to the knowledge of ALI, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on ALI's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)      ALI is not legally obligated to enter into this Agreement or any other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)      to the knowledge of ALI, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which ALI is a party are fair and equitable to ALI; and

(e)      ALI has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

8.      <u>Representations and Warranties of REPE LBREM</u>.      REPE LBREM hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)      REPE LBREM is a limited liability company formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution,

delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)    the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by REPE LBREM:

(i)    is not precluded by, and shall not violate (1) to the knowledge of REPE LBREM, any provision of any existing law, statute, rule or regulation of the jurisdiction in which REPE LBREM is organized or in any other place where REPE LBREM is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against REPE LBREM, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting REPE LBREM, except to the extent any such violation would not have a material adverse effect on REPE LBREM's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)    shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which REPE LBREM is a party or by which it is bound, or to which it or any portion of its property or assets is subject, except to the extent any such breach or default would not have a material adverse effect on REPE LBREM's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)    to the knowledge of REPE LBREM, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on REPE LBREM's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)    REPE LBREM is not legally obligated to enter into this Agreement or any other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)    to the knowledge of REPE LBREM, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which REPE LBREM is a party are fair and equitable to REPE LBREM; and

(e)    REPE LBREM has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

9.    <u>Representations and Warranties of Mortgage Borrower</u>. Mortgage Borrower hereby represents and warrants to the other Parties hereto (upon which representations and

warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)    Mortgage Borrower is a limited liability company formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)    the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by Mortgage Borrower:

(i)    is not precluded by, and shall not violate (1) to the knowledge of Mortgage Borrower, any provision of any existing law, statute, rule or regulation of the jurisdiction in which the Mortgage Borrower is organized or in any other place where the Mortgage Borrower is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against the Mortgage Borrower, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting the Mortgage Borrower, except to the extent any such violation would not have a material adverse effect on Mortgage Borrower's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)    shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which Mortgage Borrower is a party or by which it is bound, or to which it or any portion of its property or assets is subject, except to the extent any such breach or default would not have a material adverse effect on Mortgage Borrower's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)    to the knowledge of Mortgage Borrower, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on Mortgage Borrower's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)    Mortgage Borrower is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)    to the knowledge of Mortgage Borrower, Mortgage Borrower, on the one hand, and the Lender Parties, on the other hand, have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this

Agreement and the other Settlement Documents to which Mortgage Borrower is a party are fair and equitable to Mortgage Borrower; and

(e)       Mortgage Borrower has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

10.    <u>Representations and Warranties of Lennar Guarantor</u>.  Lennar Guarantor hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)       Lennar Guarantor is a corporation formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)       the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by Lennar Guarantor:

(i)       is not precluded by, and shall not violate (1) to the knowledge of Lennar Guarantor, any provision of any existing law, statute, rule or regulation of the jurisdiction in which Lennar Guarantor is organized or in any other place where Lennar Guarantor is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against Lennar Guarantor, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, articles of incorporation, by-laws or any other agreement or contract of any kind, or other documents affecting Lennar Guarantor, except to the extent any such violation would not have a material adverse effect on Lennar Guarantor's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)      shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which Lennar Guarantor is a party or by which it is bound, or to which it or any portion of its property or assets is subject, except to the extent any such breach or default would not have a material adverse effect on Lennar Guarantor's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)     to the knowledge of Lennar Guarantor, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on Lennar Guarantor's ability to enter into and perform its

obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)    Lennar Guarantor is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)    to the knowledge of Lennar Guarantor, Lennar Guarantor, on the one hand, and the Lender Parties, on the other hand, have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which Lennar Guarantor is a party are fair and equitable to Lennar Guarantor; and

(e)    Lennar Guarantor has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

11.    <u>Representations and Warranties of LNR Guarantor</u>.  LNR Guarantor hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)    LNR Guarantor is a limited liability company formed under and governed by the laws of the State of California and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)    the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by LNR Guarantor:

(i)    is not precluded by, and shall not violate (1) to the knowledge of LNR Guarantor, any provision of any existing law, statute, rule or regulation of the jurisdiction in which LNR Guarantor is organized or in any other place where LNR Guarantor is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against LNR Guarantor, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, articles of incorporation, by-laws or any other agreement or contract of any kind, or other documents affecting LNR Guarantor, except to the extent any such violation would not have a material adverse effect on LNR Guarantor's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)    shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which LNR Guarantor is a party or by which it is bound, or to which it or any portion of its property or assets is subject, except to the extent any such breach or default would not have a material adverse effect on LNR

Guarantor's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)    to the knowledge of LNR Guarantor, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on LNR Guarantor's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)    LNR Guarantor is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)    to the knowledge of LNR Guarantor, LNR Guarantor, on the one hand, and the Lender Parties, on the other hand, have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement, the other Settlement Documents to which LNR Guarantor is a party are fair and equitable to LNR Guarantor; and

(e)    LNR Guarantor has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

12.    <u>Representations and Warranties of Mortgage Lender</u>.  Mortgage Lender hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)    Mortgage Lender is a limited liability company formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)    the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by Mortgage Lender:

(i)    is not precluded by, and shall not violate (1) to the knowledge of Mortgage Lender, any provision of any existing law, statute, rule or regulation of the jurisdiction in which the Mortgage Lender is organized or in any other place where the Mortgage Lender is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against the Mortgage Lender, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting the Mortgage Lender; except to the extent any such violation

would not have a material adverse effect on Mortgage Lender's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)     shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which Mortgage Lender is a party or by which it is bound, or to which it or any portion of its property or assets is subject, except to the extent any such breach or default would not have a material adverse effect on Mortgage Lender's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)     to the knowledge of Mortgage Lender, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on Mortgage Lender's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)     Mortgage Lender is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)     to the knowledge of Mortgage Lender, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which Mortgage Lender is a party are fair and equitable to Mortgage Lender; and

(e)     Mortgage Lender has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

13.     Representations and Warranties of LBREM REIT.     LBREM REIT hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)     LBREM REIT is a limited liability company formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)     the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by LBREM REIT:

(i)     is not precluded by, and shall not violate (1) to the knowledge of the LBREM REIT, any provision of any existing law, statute, rule or regulation of the

14

jurisdiction in which LBREM REIT is organized or in any other place where LBREM REIT is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against LBREM REIT, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting LBREM REIT, except to the extent any such violation would not have a material adverse effect on LBREM REIT's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)    shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which LBREM REIT is a party or by which LBREM REIT is bound, or to which LBREM REIT or any portion of any property or assets of LBREM REIT is subject, except to the extent any such breach or default would not have a material adverse effect on LBREM REIT's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)    to the knowledge of LBREM REIT, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on LBREM REIT's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)    LBREM REIT is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)    to the knowledge of LBREM REIT, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which LBREM REIT it is a party are fair and equitable to LBREM REIT; and

(e)    LBREM REIT has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

14.    <u>Representations and Warranties of PCCP</u>.  PCCP hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement and the other Settlement Documents), that:

(a)    PCCP is a limited liability company formed  under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and

performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)     the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by PCCP:

(i)     is not precluded by, and shall not violate (1) to the knowledge of PCCP, any provision of any existing law, statute, rule or regulation of the jurisdiction in which PCCP is organized or in any other place where PCCP is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against PCCP, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting PCCP, except to the extent any such violation would not have a material adverse effect on PCCP's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)    shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which PCCP is a party or by which PCCP is bound, or to which PCCP or any portion of any property or assets of PCCP is subject, except to the extent any such breach or default would not have a material adverse effect on PCCP's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)   to the knowledge of PCCP, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on PCCP's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)     PCCP is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)     to the knowledge of PCCP, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which PCCP is a party are fair and equitable to PCCP; and

(e)     PCCP has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

15.     <u>Representations and Warranties of PCCP Mezzanine</u>.  PCCP Mezzanine hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties are relying in entering into this Agreement), that:

(a)      PCCP Mezzanine is a limited partnership formed under and governed by the laws of the State of Delaware and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)      the execution, delivery and performance of this Agreement and the other Settlement Documents to which it is a party by PCCP Mezzanine:

(i)      is not precluded by, and shall not violate (1) to the knowledge of PCCP Mezzanine, any provision of any existing law, statute, rule or regulation of the jurisdiction in which PCCP Mezzanine is organized or in any other place where PCCP Mezzanine is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against PCCP Mezzanine, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting PCCP Mezzanine, except to the extent any such violation would not have a material adverse effect on PCCP Mezzanine's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)      shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which PCCP Mezzanine is a party or by which PCCP Mezzanine is bound, or to which PCCP Mezzanine or any portion of any property or assets of PCCP Mezzanine is subject, except to the extent any such breach or default would not have a material adverse effect on PCCP Mezzanine's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)      to the knowledge of PCCP Mezzanine, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on PCCP Mezzanine's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)      PCCP Mezzanine is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)      to the knowledge of PCCP Mezzanine, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which PCCP Mezzanine is a party are fair and equitable to PCCP Mezzanine; and

US_ACTIVE:\43543733\09\73683.1016
A/73551865.8

(e)    PCCP Mezzanine has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

16.    <u>Representations and Warranties of State Street</u>.  State Street hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties hereto are relying in entering into this Agreement and the other Settlement Documents), that:

(a)    State Street is a Commonwealth of Massachusetts state chartered trust company governed by the laws of the Commonwealth of Massachusetts and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents and the Amended Mortgage Loan Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents and Amended Mortgage Loan Documents to which it is a party;

(b)    the execution, delivery and performance of this Agreement and the other Settlement Documents and Amended Mortgage Loan Documents to which it is a party by State Street:

(i)    is not precluded by, and shall not violate (1) to the knowledge of State Street, any provision of any existing law, statute, rule or regulation of the jurisdiction in which State Street is organized or in any other place where State Street is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against State Street, or (3) any provisions of any charter, bylaws, limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting State Street, except to the extent any such violation would not have a material adverse effect on State Street's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)    shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which State Street is a party or by which State Street is bound, or to which State Street or any portion of any property or assets of State Street is subject, except to the extent any such breach or default would not have a material adverse effect on State Street's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)    to the knowledge of State Street, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on State Street's ability to enter into and perform its obligations under this

Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)     State Street is not legally obligated to enter into this Agreement or the other Settlement Documents to which it is a party but chooses to do so of its own free will;

(d)     to the knowledge of State Street, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which State Street is a party are fair and equitable to State Street; and

(e)     State Street has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

17.     <u>Representations and Warranties of SS Assignee</u>.  SS Assignee hereby represents and warrants to the other Parties hereto (upon which representations and warranties the other Parties hereto are relying in entering into this Agreement and the other Settlement Documents), that:

(a)     SS Assignee is a limited liability company formed under and governed by the laws of the State of **[Delaware]** and has the full power and authority to make, deliver, enter into, and perform the terms and conditions of this Agreement and the other Settlement Documents to which it is party and has taken all necessary action to authorize the execution, delivery and performance of the terms and conditions of this Agreement and the other Settlement Documents to which it is a party;

(b)     the execution, delivery and performance of this Agreement and the other Settlement Documents and Amended Mortgage Loan Documents to which it is a party by SS Assignee:

(i)     is not precluded by, and shall not violate (1) to the knowledge of SS Assignee, any provision of any existing law, statute, rule or regulation of the jurisdiction in which SS Assignee is organized or in any other place where SS Assignee is doing business, or of the United States of America, or of any other jurisdictions, or of any agency or instrumentality of any of them, (2) any judgment, order, decree, writ or injunction of any court or governmental department, commission, board, bureau, agency or instrumentality against SS Assignee, or (3) any provisions of any limited liability company agreement, partnership agreement, trust agreement, shareholders agreement, any other agreement or contract of any kind, or other documents affecting SS Assignee, except to the extent any such violation would not have a material adverse effect on SS Assignee's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(ii)     shall not result in a breach of, or default under, any agreement, mortgage, contract, undertaking or other instrument or document to which SS Assignee is a party or by which SS Assignee is bound, or to which SS Assignee or any portion of any property or assets of SS Assignee is subject, except to the extent any such breach or default would not have a

material adverse effect on SS Assignee's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby; and

(iii)    to the knowledge of SS Assignee, does not require the authorization, approval, license or consent of or registration, qualification or filing with any person or governmental authority in order to consummate the transactions described herein, except for the Approval Order and except to the extent the failure to obtain the same would not have a material adverse effect on SS Assignee's ability to enter into and perform its obligations under this Agreement and the other Settlement Documents and the transactions contemplated hereby and thereby;

(c)    SS Assignee is not legally obligated to enter into this Agreement or the other Settlement Documents and Amended Mortgage Loan Documents to which it is a party but chooses to do so of its own free will;

(d)    to the knowledge of SS Assignee, the Parties have pursued a course of fair dealing with one another in lieu of the exercise of legal remedies available to them and the terms of this Agreement and the other Settlement Documents to which SS Assignee is a party are fair and equitable to SS Assignee; and

(e)    SS Assignee has been represented by counsel of its choosing in connection with the negotiation, execution and delivery of this Agreement and all other Settlement Documents to which it is a party.

18.    <u>Certain Acknowledgements, Confirmations and Agreements of the Parties</u>.

(a)    Each of the Lender Parties hereby acknowledges, confirms and agrees that, to the extent the Original Participation Interest was not properly terminated pursuant to the Original Participation Termination, the Original Participation Interest is hereby deemed terminated, cancelled, and of no further force or effect; and, accordingly, all Lender Parties hereby fully and unconditionally release any and all rights, title, interest, or claims, if any, held by such Party in the Original Participation Interest

(b)    Each of the Lender Parties hereto acknowledges, confirms and agrees that, upon the execution of the Corporate Loan Termination, the Corporate Loan shall be deemed paid in full, terminated, cancelled and or no further force or effect.

(c)    Each of the Lender Parties hereby acknowledges, confirms and agrees upon the payment of the Lehman Discounted Pay-Off Amount to LBHI and receipt of the Lehman Option by LBHI, the LBHI Reinstated Participation Interest and the 2010 Participation Interest shall be deemed fully paid, satisfied, terminated and of no further force or effect.  In addition, each of the Parties hereby acknowledges, confirms and agrees that the Lehman Discounted Pay-Off Amount shall be paid directly by Mortgage Borrower to LBHI notwithstanding that Mortgage Borrower and LBHI are not in privity with respect to the LBHI Reinstated Participation Interest or the 2010 Participation Interest and that such payment shall be deemed a payment by Mortgage Borrower under the Mortgage Loan to reduce the outstanding balance thereof.

(d)     The Lehman Parties, the Borrower Parties and the SS Parties hereby consent to the Mortgage Loan Reduction.  The Lehman Parties and SS Parties hereby consent to the PCCP Assignment.  The consents provided by the applicable Parties pursuant to this Section 18(d) shall collectively hereinafter be referred to as the "**Transfer Consents**".

(e)     Each of the Parties hereby acknowledges, confirms and agrees that, upon the consummation of the Mortgage Loan Reduction, the outstanding principal balance of the Mortgage Loan shall be $[**208 million**].

(f)     Each of the Borrower Parties, PCCP Parties and the SS Parties hereby acknowledges, confirms and agrees that such Party shall not have any claim against any of the Lehman Parties, any of their respective Affiliates, or any of the successors and/or assigns of any of the Lehman Parties or any of their respective Affiliates, arising from the Original Participation Termination  (each Lender Party acknowledging that Borrower Parties were not parties to the Original Participation Termination or any documents purporting to effectuate the same) unless and to the extent a third-party (other than any of the Non-Lehman Interest Holders) asserts an interest in the Lehman Interests or the Corporate Loan, and except with respect to the MRA Damages Claim defined in Section 24(d).

(g)     Each of the Parties hereby acknowledges, confirms and agrees that from and after Closing: (i) the Lehman Parties will have no obligations (including, without limitation, funding obligations) with respect to any of the Lehman Interests or the Mortgage Loan (except for any obligations that may arise out of the MRA Damages Claim defined in Section 24(d)); (ii) the PCCP Parties and PCCP Mezzanine will have no further obligations (including, without limitation, funding obligations) with respect to any of the PCCP Interests or the Mortgage Loan; and (iii) any funding or other obligations of any SS Party with respect to any of the interests assigned to any SS Party shall be only as set forth in the Amended Mortgage Loan Documents from and after the Closing.

(h)     Each of the SS Parties, the Lehman Parties and the PCCP Parties hereby acknowledges, confirms and agrees that immediately following the completion of the Participation Reinstatement Transaction and Corporate Loan Termination, but immediately prior to the consummation of the Assignments, neither it nor any party claiming by, through or under it has any right, title, interest, lien, claim, encumbrance, participation or option, in each case whether direct or indirect, in or to the Lehman Interests, the PCCP Interests, the SS Interests, the SS Repo Interest or otherwise with respect to the Mortgage Loan, the Original Participation Interest, the Corporate Loan, the 2010 Participation Interest or the Reinstated Participation Interest, except for (1) the PCCP Interests as to the PCCP Parties, (2) the Lehman Interests as to the Lehman Parties and (3) the SS Interests as to the SS Parties.

(i)     Each of the Lehman Parties and PCCP Parties hereby acknowledges, confirms and agrees that immediately upon consummation of the Assignments and from and after Closing neither it nor any party claiming by, through or under it shall have any right, title, interest, lien, claim, encumbrance, participation or option, in each case whether direct or indirect, in or to the Mortgage Loan, the Original Participation Interest, the 2010 Participation Interest or the Reinstated Participation Interest (provided that neither the Lehman Option nor the PCCP Cash-Flow Participation shall for the purposes of the foregoing be considered an interest in the

Mortgage Loan, the Original Participation Interest, the 2010 Participation Interest, or the Reinstated Participation Interest).

(j)     Each of the Parties hereby acknowledges, confirms and agrees that, following the Closing, (i) SS Assignee's obligations in connection with all rights assigned to it in connection with the transactions consummated at the Closing shall be limited to those set forth in the Amended Mortgage Loan Documents, and (ii) Borrower Parties' obligations in connection with the Mortgage Loan shall be limited, as to each Borrower Party, to those set forth in the Amended Mortgage Loan Documents to which such Borrower Party is a party.

19.     <u>Certain Tax and Other Matters</u>.

(a)     The applicable Lender Parties agree for all purposes (including tax purposes) (i) to treat the transfer of the Reinstated Participation Interest to the respective transferees as a sale of such interests in exchange for the satisfaction in full of the Corporate Loan, (ii) to treat the Lehman Discounted Pay-Off as a discounted pay-off of the portion of the Mortgage Loan represented by the Leman Interests in exchange for the Lehman Discounted Pay-Off Amount and the Lehman Option, (iii) to treat the Mortgage Loan Reduction as a discounted pay-down of the PCCP Interests in exchange for the PCCP Pay-Down Amount and the PCCP Cash-Flow Participation, (iv) to treat the PCCP Assignment as an assignment of the PCCP Interests in exchange for the Transfer Consideration and (v) not to take any position inconsistent with the preceding clauses (i) through (iv), inclusive (including on any tax return or in any tax audit), unless otherwise required by applicable law.

(b)     The applicable Borrower Parties agree for all purposes (including tax purposes) (i) to treat the Lehman Discounted Pay-Off, the PCCP Paydown and the Mortgage Loan Reduction, collectively, as a discounted pay-off of a portion of the Mortgage Loan, (ii) not to take any position inconsistent with the preceding <u>clause (i)</u> (including on any tax return or in any tax audit), unless otherwise required by applicable law.

20.     <u>LBHI Indemnification of the SS Parties and PCCP Parties</u>.

(a)     LBHI hereby agrees to indemnify, defend and hold harmless each of the SS Parties and PCCP Parties and their respective Affiliates, officers, directors, agents, representatives and employees from and against all damages (excluding punitive damages), losses, liabilities, suits, actions, claims, demands and reasonable expenses and costs of every kind and nature (including, without limitation, payment of reasonable attorneys' fees) incurred by, or asserted or imposed against any such Party resulting from (i) any claims made by any party that the SS Repo Interest was not duly and properly assigned to State Street free and clear of all liens, claims or encumbrances pursuant to the LBHI Corporate Loan Assignment and (ii) any claims made by any party that the LBHI Reinstated Participation Interest and 2010 Participation Interest was not fully paid, satisfied and terminated and of no further force or effect as of the Closing.

LBHI further hereby agrees to indemnify, defend and hold harmless each of the SS Parties and the PCCP Parties and their respective Affiliates, officers, directors, agents, representatives and employees from and against all reasonable expenses and costs of every kind

and nature incurred by, or asserted or imposed against (including, without limitation, payment of reasonable attorneys' fees) any such Party in responding to any subpoena or other discovery request propounded by or on behalf of LBHI and/or any of its Affiliates, including, without limitation, Bankhaus, with respect to the Heritage Fields Transaction (the "**Heritage Fields Discovery Request**") provided that: (A) with respect to the indemnity provided to the PCCP Parties only (i) none of the PCCP Parties or any Affiliate of any of them initiated the suit or action giving rise to the Heritage Fields Discovery Request and (ii) the suit or action does not otherwise directly or proximately result from a breach or violation by any of the PCCP Parties of any of their respective obligations under this Agreement or the other Settlement Documents; and (B) with respect to the indemnity provided to State Street only, (i) none of the SS Parties or any Affiliate of any of them initiated the suit or action giving rise to the Heritage Fields Discovery Request, and (ii) the suit or action does not otherwise directly or proximately result from a breach or violation by any of the SS Parties of any of their respective obligations under this Agreement or the other Settlement Documents.

LBHI further hereby agrees to indemnify, defend and hold harmless each of the SS Parties and the PCCP Parties and their respective Affiliates, officers, directors, agents, representatives and employees from and against all damages (excluding punitive damages), losses, liabilities, suits, actions, claims, demands and reasonable expenses and costs of every kind and nature incurred by, or asserted or imposed against (including, without limitation, payment of reasonable attorneys' fees) the SS Parties or the PCCP Parties resulting from any claim by or through any Lehman Party (other than a party claiming by or through any SS Party, PCCP Party, or Mortgage Borrower or any of their respective Affiliates, successors or assigns) contrary to the acknowledgments of the Lehman Parties set forth in Section 18(h) and 18(i) above.

(b)    LBHI shall have the right, but not the obligation, to defend with counsel of its own choosing, at its sole cost and expense, any suit, action or proceeding brought against any SS Party or PCCP Party or any of their respective Affiliates, officers, directors, agents, representatives and employees in connection with any of the matters indemnified against in the foregoing subsection (a), provided that no decision by LBHI not to so defend any such suit, action or proceeding shall in any way diminish LBHI's indemnification obligations set forth in this Section 20. Each SS Party and PCCP Party shall give LBHI timely notice of, and forward to LBHI every demand, notice, summons or other process received with respect to, any claim or legal proceedings within the purview hereof, but the failure of any SS Party or PCCP Party to give such notice shall not affect its right to indemnification hereunder (unless such failure has prejudiced the ability of LBHI to defend or make claim regarding any such proceeding). The persons or entities so indemnified may also concurrently retain separate counsel at its own cost and expense in connection with such actions, suits or proceedings and shall have the right to participate in the investigation and defense thereof, provided that LBHI shall pay the reasonable fees and expenses of such separate counsel if (i) the applicable SS Party or PCCP Party reasonably determines (provided that acting on advice of counsel shall be deemed reasonable) that a conflict exists between the interests of such SS Party or PCCP Party and the interests of LBHI, (ii) LBHI is not defending such action, suit or proceeding, or (iii) such separate counsel is engaged with the approval of LBHI. Any party seeking indemnification hereunder agrees that it shall cooperate with LBHI in the defense of any suit, action or proceeding by LBHI pursuant to this Section 20(b) and shall make its relevant records available to LBHI with respect to any such

defense except to the extent it shall reasonably determine (provided that a determination made on advice of counsel shall be deemed reasonable) that making all or any portion of such relevant records would constitute a waiver and/or result in the loss of the attorney-client privilege or the attorney work-product privilege between such party and its legal counsel.

(c)     Notwithstanding anything to the contrary in this Section 20, no party seeking indemnification pursuant to Section 20(a) hereunder shall be entitled to such indemnification under any circumstance if it has entered into any written settlement or compromise with respect the applicable suit, action of proceeding without the prior written consent of LBHI. In addition, if a bona fide settlement offer is made with respect to any such action, suit or proceeding and LBHI desires to accept and agree to the offer, LBHI will give written notice to the party seeking indemnification hereunder to that effect ("**LBHI Settlement Notice**"). If the settlement offer described in the LBHI Settlement Notice (1) includes a full, unconditional release of the party seeking indemnification, (2) does not have any material adverse effect on such party, (3) requires no payment or liability by such party and (4) such party fails to consent to the settlement offer within the LBHI Settlement Response Period (as defined below) or rejects the settlement offer, then such party shall thereafter be solely responsible for continuing the defense in question at its own cost and expense and without indemnification by LBHI in excess of the amount of such settlement offer set forth in the LBHI Settlement Notice. As used above, the term "**LBHI Settlement Response Period**" shall mean ten (10) business days after receipt of the LBHI Settlement Notice, provided that each SS Party and PCCP Party shall in its sole discretion be entitled to extend the initial ten business-day period by one additional ten business-day period, provided further that if within such original or additional ten business-day period any SS Party or PCCP Party requests information regarding the proposed settlement offer that is not contained within the LBHI Settlement Notice and which such party reasonably believes (provided that acting on advice of counsel shall be deemed reasonable) is relevant in determining whether to accept the settlement offer, then the LBHI Settlement Response Period (including the aforementioned extension thereof) for such party shall commence again from the date such party has been provided with such information.

21.     PCCP Loan Parties and PCCP Mezzanine Indemnification of the SS Parties and the Lehman Parties.

(a)     The PCCP Loan Parties and PCCP Mezzanine hereby agree to jointly and severally indemnify, defend and hold harmless each of the SS Parties and the Lehman Parties and their respective Affiliates, officers, directors, agents, representatives and employees from and against all damages (excluding punitive damages), losses, liabilities, suits, actions, claims, demands and reasonable expenses and costs of every kind and nature (including, without limitation, payment of reasonable attorneys' fees) incurred by, or asserted or imposed against any such Party resulting from (A) (i) any claims made by any party that any PCCP Party prior to Closing sold, pledged, assigned or transferred any direct or indirect interest in the Mortgage Loan to any party other than a Lehman Party or State Street (with respect to the State Street Reinstated Participation Interest) and (ii) any claims made by any party that Mortgage Lender immediately prior to the creation of the Original Participation Interest did not own the entirety of the interests in the Mortgage Loan, free and clear of any and all rights or direct or indirect interests, participations, liens, claims, offsets, restrictions, security interests or other encumbrances and (B) simultaneously with or following the consummation of the Lehman

Assignment, REPE LBREM Assignment, LBHI Corporate Loan Assignment, PCCP Assignment, Corporate Loan Termination, Participation Reinstatement Transaction, Lehman Discounted Pay-Off, PCCP Pay-Down and receipt of the Transfer Consents and Transfer Consideration (i) any claims made by any party that Mortgage Lender did not have full right, power and authority to assign the Mortgage Loan to SS Assignee, (ii) any claims made by any party that the assignment of the Mortgage Loan to SS Assignee was not free and clear of any rights or direct or indirect interests, participations, liens, claims, offsets, restrictions, security interests or other encumbrances of any other person or entity, except for the State Street Reinstated Participation Interest or any interest transferred to the SS Assignee pursuant to the Lehman Assignment, (iii) any claims by any party that any person other than the PCCP Parties has any continuing interest in the PCCP Interests, (iv) any claim made by any party that the PCCP Assignment was not duly authorized, executed and delivered to the SS Assignee, (v) any claims made by any party that Mortgage Lender did not have full right, power and authority to convey to State Street the State Street Reinstated Participation Interest and any claim by any party that Mortgage Lender has not duly conveyed the State Street Reinstated Participation Interest to State Street free and clear of any and all liens, claims or encumbrances, (vi) any claims made by any party by or through a PCCP Party that the PCCP Interests have not been duly and properly assigned to the SS Assignee pursuant to the PCCP Assignment, or that they don't constitute all of the direct or indirect interests of the PCCP Parties, and (vii) any claims made by any party arising out of or related (either directly or indirectly) to any transfer, assignment or encumbrance made prior to or as of the Closing (other than any transfer, assignment or encumbrance described within the definition of, or which comprises a part of, the Heritage Fields Transaction or the Participation Reinstatement Transaction) of any direct or indirect interest in the Mortgage Loan by any PCCP Party, any successors and/or assigns thereof, or any party claiming or taking by or through any PCCP Party or any of the respective successors and/or assigns of any PCCP Party to any person or entity.

The PCCP Loan Parties and PCCP Mezzanine further hereby agree to jointly and severally indemnify, defend and hold harmless each of the SS Parties and the Lehman Parties and their respective Affiliates, officers, directors, agents, representatives and employees from and against all damages (excluding punitive damages), losses, liabilities, suits, actions, claims, demands and reasonable expenses and costs of every kind and nature incurred by, or asserted or imposed against (including, without limitation, payment of reasonable attorneys' fees) the SS Parties or the Lehman Parties resulting from any claim by or through any PCCP Party (other than a party claiming by or through any SS Party, Lehman Party or Borrower Party or any of their respective Affiliates, successors or assigns) contrary to the acknowledgments of the PCCP Parties set forth in Section 18(h) and 18(i) above.

(b)     The PCCP Loan Parties and PCCP Mezzanine shall jointly but not severally have the right, but not the obligation, to defend with counsel of their own choosing, at their sole cost and expense, any suit, action or proceeding brought against any SS Party or Lehman Party or any of their respective Affiliates, officers, directors, agents, representatives and employees in connection with any of the matters indemnified against in the foregoing subsection (a), provided that no decision by PCCP Loan Parties or PCCP Mezzanine not to so defend any such suit, action or proceeding shall in any way diminish their respective indemnification obligations set forth in this Section 21. Each SS Party and Lehman Party shall give the PCCP Loan Parties and PCCP Mezzanine timely notice of, and forward to the PCCP Loan Parties and

PCCP Mezzanine every demand, notice, summons or other process received with respect to, any claim or legal proceedings within the purview hereof, but the failure of any SS Party or Lehman Party to give such notice shall not affect its right to indemnification hereunder (unless such failure has prejudiced the ability of the PCCP Loan Parties and PCCP Mezzanine to defend or make claim regarding any such proceeding). The persons or entities so indemnified may also concurrently retain separate counsel at its own cost and expense in connection with such actions, suits or proceedings and shall have the right to participate in the investigation and defense thereof, provided that the PCCP Loan Parties and PCCP Mezzanine shall pay the reasonable fees and expenses of such separate counsel if (i) the applicable SS Party or Lehman Party reasonably determines (provided that acting on advice of counsel shall be deemed reasonable) that a conflict exists between the interests of such SS Party or Lehman Party and the interests of the PCCP Loan Parties and PCCP Mezzanine, (ii) PCCP Loan Parties and PCCP Mezzanine are not defending such action, suit or proceeding, or (iii) such separate counsel is engaged with the approval of the PCCP Loan Parties and PCCP Mezzanine. Any party seeking indemnification hereunder agrees that it shall cooperate with the PCCP Loan Parties and PCCP Mezzanine in the defense of any suit, action or proceeding by the PCCP Loan Parties and PCCP Mezzanine pursuant to this Section 21(b) and shall make its relevant records available to the PCCP Loan Parties and PCCP Mezzanine with respect to any such defense except to the extent it shall reasonably determine (provided that a determination made on advice of counsel shall be deemed reasonable) that making all or any portion of such relevant records would constitute a waiver and/or result in the loss of the attorney-client privilege or the attorney work-product privilege between such party and its legal counsel.

(c)    Notwithstanding anything to the contrary in this Section 21, no party seeking indemnification pursuant to Section 21(a) hereunder shall be entitled to such indemnification under any circumstance if it has entered into any written settlement or compromise with respect the applicable suit, action of proceeding  without the prior written consent of the PCCP Loan Parties and PCCP Mezzanine. In addition, if a bona fide settlement offer is made with respect to any such action, suit or proceeding and the PCCP Loan Parties and PCCP Mezzanine desire to accept and agree to the offer, the PCCP Loan Parties and PCCP Mezzanine will give written notice to the party seeking indemnification hereunder to that effect ("**PCCP Settlement Notice**"). If the settlement offer described in the PCCP Settlement Notice (1) includes a full, unconditional release of the party seeking indemnification, (2) does not have any material adverse effect on such party, (3) requires no payment or liability by such party and (4) such party fails to consent to the settlement offer within the PCCP Settlement Response Period (as defined below) or rejects the settlement offer, then such party shall thereafter be solely responsible for continuing the defense in question at its own cost and expense and without indemnification by the PCCP Loan Parties and PCCP Mezzanine in excess of the amount of such settlement offer set forth in the PCCP Settlement Notice. As used above, the term "**PCCP Settlement Response Period**" shall mean ten (10) business days after receipt of the PCCP Settlement Notice, provided that each SS Party and Lehman Party shall in its sole discretion be entitled to extend the initial ten business-day period by one additional ten business-day period, provided further that if within such original or additional ten business-day period any SS Party or Lehman Party requests information regarding the proposed settlement offer that is not contained within the PCCP Settlement Notice and which such party reasonably believes (provided that acting on advice of counsel shall be deemed reasonable) is relevant in determining whether to accept the settlement offer, then the PCCP Settlement Response Period (including the

aforementioned extension thereof) for such party shall commence again from the date such party has been provided with such information.

       22.    <u>State Street Indemnification of the PCCP Parties and the Lehman Parties</u>.

       (a)    State Street hereby agrees to indemnify, defend and hold harmless each of the Lehman Parties and the PCCP Parties and their respective Affiliates, officers, directors, agents, representatives and employees from and against all damages (excluding punitive damages), losses, liabilities, suits, actions, claims, demands and reasonable costs and expenses (including, without limitation, reasonable attorneys' fees) incurred by the Lehman Parties or the PCCP Parties resulting from any claim by or through any SS Party (other than a party claiming by or through any Lehman Party, PCCP Party, or Mortgage Borrower or any of their respective Affiliates, successors or assigns) contrary to the acknowledgments of the SS Parties set forth in Section 18(h) above.

       (b)    State Street shall have the right, but not the obligation, to defend with counsel of its own choosing, at its sole cost and expense, any suit, action or proceeding brought against any Lehman Party or PCCP Party or any of their respective Affiliates, officers, directors, agents, representatives and employees in connection with any of the matters indemnified against in the foregoing subsection (a), provided that no decision by State Street not to so defend any such suit, action or proceeding shall in any way diminish State Street's indemnification obligations set forth in this Section 22. Each Lehman Party and PCCP Party shall give State Street timely notice of, and forward to State Street every demand, notice, summons or other process received with respect to, any claim or legal proceedings within the purview hereof, but the failure of any Lehman Party or PCCP Party to give such notice shall not affect its right to indemnification hereunder (unless such failure has prejudiced the ability of State Street to defend or make claim regarding any such proceeding). The persons or entities so indemnified may also concurrently retain separate counsel at its own cost and expense in connection with such actions, suits or proceedings and shall have the right to participate in the investigation and defense thereof, provided that State Street shall pay the reasonable fees and expenses of such separate counsel if (i) the applicable PCCP Party or Lehman Party reasonably determines (provided that acting on advice of counsel shall be deemed reasonable) that a conflict exists between the interests of such PCCP Party or Lehman Party and the interests of State Street, (ii) State Street is not defending such suit, action or proceeding, or (iii) such separate counsel is engaged with the approval of State Street. Any party seeking indemnification hereunder agrees that it shall cooperate with State Street in the defense of the suit, action or proceeding in question by State Street hereunder and shall make its relevant records available to State Street with respect to any such defense except to the extent it shall reasonably determine (provided that a determination made on advice of counsel shall be deemed reasonable) that making all or any portion of such relevant records would constitute a waiver and/or result in the loss of the attorney-client privilege or the attorney work-product privilege between such party and its legal counsel.

       (c)    Notwithstanding anything to the contrary in this Section 22, no party seeking indemnification pursuant to Section 22(a) hereunder shall be entitled to such indemnification under any circumstance if it has entered into any written settlement or compromise with respect the applicable suit, action of proceeding  without the prior written consent of State Street. In addition, if a bona fide settlement offer is made with respect to any

such action, suit or proceeding and State Street desires to accept and agree to the offer, State Street will give written notice to the party seeking indemnification hereunder to that effect ("**SS Settlement Notice**").  If the proposed settlement described in the SS Settlement Notice (1) includes a full, unconditional release of the party seeking indemnification, (2) does not have any material adverse effect on such party, (3) requires no payment or liability by such party and (4) such party fails to consent to the settlement offer within the SS Settlement Response Period (as defined below) or rejects the settlement offer, then such party shall thereafter be solely responsible for continuing the defense in question at its own cost and expense and without indemnification by State Street in excess of the amount of such settlement offer set forth in the SS Settlement Notice.  As used above, the term "**SS Settlement Response Period**" shall mean ten (10) business days after receipt of the SS Settlement Notice, provided that each Lehman Party and PCCP Party shall in its sole discretion be entitled to extend the initial ten business-day period by one additional ten business-day period, provided further that if within such original or additional ten business-day period any Lehman Party or PCCP Party requests information regarding the proposed settlement offer that is not contained within the SS Settlement Notice and which such party reasonably believes (provided that acting on advice of counsel shall be deemed reasonable) is relevant in determining whether to accept the settlement offer, then the SS Settlement Response Period (including the aforementioned extension thereof) for such party shall commence again from the date such party has been provided with such information.

23.    Closing.  The closing of the transactions contemplated by this Agreement and the other Settlement Documents (the "**Closing**") shall take place  on the Closing Date at the offices of Bingham McCutchen LLP, 399 Park Avenue, New York, New York 10022 or at such other place as is mutually agreed upon by the Parties hereto.

24.    Proofs of Claim.

(a)    Each of the Borrower Parties represents and warrants that there are no proofs of claim filed by or on behalf of such Borrower Party or by or on behalf of such Borrower Party's Affiliates in the Bankruptcy Cases (as hereinafter defined) with respect to the Heritage Fields Transaction.

(b)    The PCCP Parties represent and warrant that other than the proofs of claims listed on Exhibit Q attached hereto (the "**PCCP Proofs of Claim**"), there are no proofs of claim filed by or on behalf of any of them or by or on behalf of any of their respective Affiliates in the Bankruptcy Cases with respect to the Heritage Fields Transaction.  Simultaneously herewith, the PCCP Parties have delivered to the Lehman Parties dismissals of each of the PCCP Proofs of Claim (the "**Proof of Claim Dismissals**") in the forms attached hereto as Composite Exhibit R.  The PCCP Parties hereby authorize the Lehman Parties to file the Proof of Claim Dismissals in the Bankruptcy Cases immediately after the execution and delivery of this Agreement and the other Settlement Documents.

(c)    Each of the Borrower Parties hereby agrees to execute any additional documents which may be reasonably requested by a Lehman Party and otherwise necessary or required to cause the withdrawal of any and all proofs of claim filed by or on behalf of such Borrower Party or by or on behalf of any of such Borrower Party's Affiliates relating to the Heritage Fields Transaction in the Bankruptcy Cases.  Each of the PCCP Parties hereby agrees to

execute any additional documents which may be reasonably requested by a Lehman Party and otherwise necessary or required to cause the withdrawal of any and all proofs of claim filed by or on behalf of any of such PCCP Party or by or on behalf of any of such PCCP Party's Affiliates relating to the Heritage Fields Transaction in the Bankruptcy Cases.

(d)    Nothing in this Agreement or the other Settlement Documents or otherwise in connection with the transactions contemplated hereby (a) affects any claim that State Street may have under the SS MRA which is indicated in (i) that certain proof of claim identified by proof of claim number 32695 filed on September 22, 2009 by State Street against LCPI or (ii) that certain proof of claim identified by proof of claim number 32697 filed on September 22, 2009 by State Street against LBHI with respect to LBHI's guaranty of LCPI's obligations under the SS MRA (collectively, the "**MRA Damages Claim**") or (b) can be used by any party as evidence in connection with the MRA Damages Claim.  Notwithstanding the foregoing, the Lehman Parties and SS Parties confirm that State Street received its interests in the Original Participation Interest and Corporate Loan pursuant to the SS MRA and agree not to take any position inconsistent therewith (including on any tax return or in any tax audit), unless otherwise required by applicable law.  In addition, notwithstanding anything to the contrary in this Agreement, the Lehman Parties and SS Parties agree that for purposes of the SS MRA and the MRA Damages Claim, the assignment of a direct interest in the Corporate Loan pursuant to the LBHI Corporate Loan Assignment shall be treated as an assignment from LCPI to State Street.  In addition, notwithstanding anything to the contrary in this Agreement, but subject to this Section 24(d), the execution, delivery and performance of this Agreement and the other Settlement Documents by the applicable Parties hereto, and the transactions contemplated hereby and thereby, shall be without prejudice to, and shall not in any manner affect, the Parties' rights, claims, positions and/or defenses with respect to the MRA Damages Claim.

25.    State Street Adversary Proceeding.  Simultaneously with the execution of this Agreement State Street and its counsel have delivered to LCPI a partial dismissal of the adversary proceeding captioned *State Street Bank and Trust Company v. Lehman Commercial Paper, Inc., Adv. Proc. No. 08-01743* (the "**SS Adversary**") in the form attached hereto as Exhibit S in order to dismiss with prejudice all claims under the SS Adversary to the extent they relate to the Heritage Fields Transaction (the "**Adversary Dismissal**").  State Street hereby authorizes LCPI to file the Adversary Dismissal with the Bankruptcy Court immediately after the execution of this Agreement.  Notwithstanding the foregoing, the transactions contemplated hereby shall not in any way affect any Party's rights, claims or defenses with respect to the MRA Damages Claim, and State Street shall not be required to withdraw, or cause the withdrawal of, any documents filed in connection with the MRA Damages Claim as a result of the Adversary Dismissal.

26.    Cash Flow Agreement Representations.

(a)    LBHI hereby represents and warrants that it has, contemporaneously with the execution and delivery of this Agreement, delivered a true, correct and complete copy of the Lehman Option Agreement to State Street and PCCP.

(b)      PCCP hereby represents and warrants that it has, contemporaneously with the execution and delivery of this Agreement, delivered a true, correct and complete copy of the PCCP Cash Flow Participation Agreement to LBHI and State Street.

27.      <u>Survival</u>.   This Agreement shall survive the Closing and the execution and delivery of this Agreement, the other Settlement Documents and the Amended Mortgage Loan Documents.

28.      <u>Costs and Expenses</u>.   Each Party shall pay its own costs and expenses, including, without limitation, any attorneys' fees incurred in connection with the transactions contemplated hereunder, provided that this section is without prejudice to Borrower Parties' obligation, to the extent set forth in the Amended Mortgage Loan Documents, to pay or reimburse SS Parties for attorneys' fees.

29.      <u>Notices</u>.   All claims, notices, demands, instructions, objections and other communications required or permitted hereunder (each, a "**Notice**") shall be in writing and shall be deemed to be delivered (i) on the date of actual delivery when personally delivered or (ii) on five days after delivery if sent by United States mail, postage prepaid, certified mail, return receipt requested, or (iii) if sent by a nationally recognized overnight courier service, on the next following date (provided that courtesy copies of notices delivered via any of the methods above may be sent by email or facsimile), when addressed to the parties as follows:

| | |
|---|---|
| If to LBHI: | Lehman Brothers Holdings Inc.<br>1271 Avenue of the Americas, 38th Floor<br>New York, NY 10020<br>Attention:  Phil Cyburt<br>Telephone:  (646) 285-9055<br>Fax:  _____<br>Email:  pcyburt@amcapitalre.com |
| with a copy to: | Weil, Gotshal, & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attention:  W. Michael Bond<br>Telephone:  (212) 310-8035<br>Fax:  (212) 310-8077<br>Email:  michael.bond@weil.com |
| If to LCPI: | Lehman Commercial Paper Inc.<br>1271 Avenue of the Americas, 38th Floor<br>New York, NY 10020<br>Attention:  Phil Cyburt<br>Telephone:  (646) 285-9055<br>Fax:  _____<br>Email:  pcyburt@amcapitalre.com |

with a copy to:      Weil, Gotshal, & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention:  W. Michael Bond
Telephone:  (212) 310-8035
Fax:  (212) 310-8077
Email:  michael.bond@weil.com

If to ALI:      Lehman ALI Inc.
1271 Avenue of the Americas, 38th Floor
New York, NY 10020
Attention:  Phil Cyburt
Telephone:  (646) 285-9055
Fax:  _____
Email:  pcyburt@amcapitalre.com

with a copy to:      Weil, Gotshal, & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention:  W. Michael Bond
Telephone:  (212) 310-8035
Fax:  (212) 310-8077
Email:  michael.bond@weil.com

If to REPE LBREM:  REPE LBREM LLC
1271 Avenue of the Americas, 38th Floor
New York, NY 10020
Attention:  Phil Cyburt
Telephone:  (646) 285-9055
Fax:  _____
Email:  pcyburt@amcapitalre.com

with a copy to:      Weil, Gotshal, & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attention:  W. Michael Bond
Telephone:  (212) 310-8035
Fax:  (212) 310-8077
Email:  michael.bond@weil.com

If to Mortgage
Borrower:

Heritage Fields El Toro LLC
c/o Five Point Communities
25 Enterprise, Suite 400
Aliso Viejo, CA 92656
Attention:  Emile Haddad, Chief Executive Officer
Telephone: (949) 349-8077
Fax: _____
Email: emile.haddad@fivepointcommunities.com

with a copy to:

Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
Attention:  Steve Gliatta
Telephone:  (212) 836-8618
Fax:  (212) 836-6448
Email:  sgliatta@kayescholer.com

Kaye Scholer LLP
425 Park Avenue
New York, NY 10022
Attention:  Michael Damast
Telephone:  (212) 836-7377
Fax:  (212) 836-8689
Email:  mdamast@kayescholer.com

If to Lennar
Guarantor:

Lennar Corporation
25 Enterprise, Suite 500
Aliso Viejo, California 92656
Attention:  Jon Jaffe
Telephone:  (949) 349-8076
Fax: _____
Email:  jon.jaffe@lennar.com

with a copy to:

LNR Heritage Fields, LLC
c/o LNR Property LLC
4350 Von Karman Ave., Suite 300
Newport Beach CA 92660
Attn: J. Patrick Galvin, Esq.
          CPG General Counsel
Fax: _____
Email: _____

with a copy to:

LNR Property LLC

1601 Washington Avenue, Suite 800
Miami Beach Florida 33139
Attn: James Whitlow, Esq.
        General Counsel
Fax: _____
Email: _____

If to Mortgage
Lender:

El Toro LLC
c/o PCCP, LLC
222 North Sepulveda Boulevard
Suite 2222
El Segundo, California 90245
Attention:  Nick Colonna
Telephone:  (310) 414-7870
Fax:  (310) 414-9505
Email:  ncolonna@pccpllc.com

with copies to:

PCCP, LLC
222 North Sepulveda Boulevard
Suite 2222
El Segundo, California 90245
Attention:  Legal Notices
Telephone:  _____
Fax:  (310) 414-7872
Email:  _____

and:

PCCP, LLC
280 Park Avenue, 35th Floor
New York, NY 10017
Attention: John A. Prete
Telephone: (646) 308-2109
Fax: (646) 834-4758
Email: jprete@pccpllc.com

US_ACTIVE:\43543733\09\73683.1016
A/73551865.8

and:                        Allen & Overy LLP
                            1221 Avenue of the Americas
                            New York, New York 10020
                            Attention:  David Broderick, Esq.
                            Telephone:  (212) 610-6304
                            Fax:  (212) 610-6399
                            Email: david.broderick@allenovery.com

If to LBREM REIT:           LBREM REIT Holdings LLC
                            c/o PCCP, LLC
                            222 North Sepulveda Boulevard
                            Suite 2222
                            El Segundo, California 90245
                            Attention:  Nick Colonna
                            Telephone:  (310) 414-7870
                            Fax:  _____
                            Email:  ncolonna@pccpllc.com

with copies to:             PCCP, LLC
                            222 North Sepulveda Boulevard
                            Suite 2222
                            El Segundo, California 90245
                            Attention:  Legal Notices
                            Telephone:  _____
                            Fax:  (310) 414-7872
                            Email:  _____

and:                        PCCP, LLC
                            280 Park Avenue, 35th Floor
                            New York, NY 10017
                            Attention: John A. Prete
                            Telephone: (646) 308-2109
                            Fax: (646) 834-4758
                            Email: jprete@pccpllc.com

and:                        Allen & Overy LLP
                            1221 Avenue of the Americas
                            New York, New York 10020
                            Attention:  David Broderick, Esq.
                            Telephone:  (212) 610-6304
                            Fax:  (212) 610-6399
                            Email: david.broderick@allenovery.com

If to PCCP:              PCCP, LLC
                        222 North Sepulveda Boulevard
                        Suite 2222
                        El Segundo, California 90245
                        Attention:  Nick Colonna
                        Telephone:  (310) 414-7870
                        Fax:  _____
                        Email:  ncolonna@pccpllc.com


with copies to:         PCCP, LLC
                        222 North Sepulveda Boulevard
                        Suite 2222
                        El Segundo, California 90245
                        Attention:  Legal Notices
                        Telephone:  _____
                        Fax:  (310) 414-7872
                        Email:  _____


and:                    PCCP, LLC
                        280 Park Avenue, 35th Floor
                        New York, NY 10017
                        Attention: John A. Prete
                        Telephone: (646) 308-2109
                        Fax: (646) 834-4758
                        Email: jprete@pccpllc.com


and:                    Allen & Overy LLP
                        1221 Avenue of the Americas
                        New York, New York 10020
                        Attention:  David Broderick, Esq.
                        Telephone:  (212) 610-6304
                        Fax:  (212) 610-6399
                        Email: david.broderick@allenovery.com


If to PCCP
Mezzanine:              PCCP Mezzanine Recovery Partners I, L.P
                        c/o PCCP, LLC
                        222 North Sepulveda Boulevard
                        Suite 2222
                        El Segundo, California 90245
                        Attention:  Nick Colonna
                        Telephone:  (310) 414-7870
                        Fax:  _____
                        Email:  ncolonna@pccpllc.com

with copies to:       PCCP, LLC
222 North Sepulveda Boulevard
Suite 2222
El Segundo, California 90245
Attention:  Legal Notices
Telephone:  _____
Fax:  (310) 414-7872
Email:  _____

and:            PCCP, LLC
280 Park Avenue, 35th Floor
New York, NY 10017
Attention: John A. Prete
Telephone: (646) 308-2109
Fax: (646) 834-4758
Email: jprete@pccpllc.com

and:            Allen & Overy LLP
1221 Avenue of the Americas
New York, New York 10020
Attention:  David Broderick, Esq.
Telephone:  (212) 610-6304
Fax:  (212) 610-6399
Email: david.broderick@allenovery.com

If to State Street:    State Street Bank and Trust Company
One Lincoln Street
Boston, Massachusetts  02111
Attention:  Paul Selian
Telephone:  (617) 664-0374
Fax:  (617) 664-2637
Email:  pjselian@statestreet.com

with copies to:       State Street Bank and Trust Company
Copley Place, Tower 1, Floor 2
100 Huntington Avenue
Boston, Massachusetts  02116
Attention:  Bruce M. Denneen
Telephone:  (617) 937-9865
Fax:  (617) 664-5650
Email:  bmdenneen@statestreet.com

and

Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C.  200006
Attention:  Kenneth G. Lore, Esq.
Telephone:  (202) 373-6281
Fax:  (202) 373-6001
Email:  klore@bingham.com

If to SS Assignee:     **[SS Assignee]**
c/o State Street Bank and Trust Company
One Lincoln Street
Boston, Massachusetts  02111
Attention:  Paul Selian
Telephone:  (617) 664-0374
Fax:  (617) 664-2637
Email:  pjselian@statestreet.com

with a copies to:     State Street Bank and Trust Company
Copley Place, Tower 1, Floor 2
100 Huntington Avenue
Boston, Massachusetts  02116
Attention:  Bruce M. Denneen
Telephone:  (617) 937-9865
Fax:  (617) 664-5650
Email:  bmdenneen@statestreet.com

and

Bingham McCutchen LLP
2020 K Street, N.W.
Washington, D.C.  200006
Attention:  Kenneth G. Lore, Esq.
Telephone:  (202) 373-6281
Fax:  (202) 373-6001
Email:  klore@bingham.com

The failure or refusal of any Party to accept delivery of any Notice shall constitute, and be deemed to be, valid delivery of such Notice for purposes of this Agreement.  Any Party may change the person and/or address to which notice or other communications are to be sent to it hereunder by giving written notice of any such change to all of the other Parties hereto in the manner provided herein for the giving of notice.  If any Party fails or refuses to properly notify the other parties of a change of address, then a Notice sent to such Party's prior address shall constitute, and be deemed to be, valid delivery of such Notice for purposes of this Agreement.

30.     <u>No Admission of Liability</u>.  Each Party agrees that the other Parties do not admit any allegations made against them in any claims, charges, causes or action, complaints, grievances or controversies, including the allegations made in the PCCP Proofs of Claim and the

SS Adversary. Each Party further acknowledges that the other Parties vigorously deny any liability as to the Disputes. This Agreement and the other Settlement Documents are being entered into solely to avoid the substantial expense and inconvenience of litigation. Nothing contained in this Agreement or the other Settlement Documents, nor any acts taken hereunder or thereunder, shall be deemed or construed as an admission of liability of any violation of any applicable law, ordinance, order, regulation, or constitution or any kind.

31.    <u>Miscellaneous</u>.

(a)    THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT REGARD TO THE CONFLICTS-OF-LAWS PRINCIPLES THEREOF.

(b)    This Agreement may be executed in one or more counterparts, each of which when so executed and delivered shall be an original, but all of which taken together shall constitute but one and the same original. Any counterpart delivered by PDF shall be fully effective as if manually signed and delivered.

(c)    Paragraph or section headings and captions in this Agreement are included herein for convenience and reference only and shall not constitute a part of this Agreement for any other purpose or be given any substantive effect.

(d)    Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

(e)    **EACH PARTY HERETO HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY AND ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF, OR OTHERWISE RELATING TO (WHETHER IN CONTRACT OR IN TORT) THIS AGREEMENT, THE OTHER SETTLEMENT DOCUMENTS, THE AMENDED MORTGAGE LOAN DOCUMENTS OR ANY OTHER DOCUMENT OR INSTRUMENT NOW OR HEREAFTER EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR THEREWITH.**

(f)    **SUBJECT TO THE FOLLOWING PARAGRAPH OF THIS SECTION 31(F), EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF NEW YORK SITTING IN NEW YORK COUNTY OR ANY FEDERAL DISTRICT COURT OF THE UNITED STATES OF AMERICA SITTING IN THE SOUTHERN DISTRICT OF NEW YORK (EACH, A "NEW YORK COURT") OVER ANY ACTION, SUIT OR PROCEEDING ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OF THE OTHER SETTLEMENT DOCUMENTS, AND SUCH PARTY HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS RELATING TO SUCH SUITS, ACTIONS OR PROCEEDINGS MAY BE BROUGHT, HEARD AND DETERMINED IN**

SUCH NEW YORK COURT.   EACH PARTY HERETO (I) WAIVES (A) ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING IN ANY SUCH NEW YORK COURT AND (B) ANY RIGHT TO ASSERT THAT SUCH SUIT, ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT FORUM AND (II) AGREES NOT TO PLEAD OR CLAIM THE SAME. EACH PARTY HERETO AGREES THAT ANY FINAL JUDGMENT IN ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

NOTWITHSTANDING THE FOREGOING, WITH RESPECT TO ANY ACTION, SUIT OR PROCEEDING AGAINST ANY LEHMAN PARTY ARISING OUT OF OR RELATED TO THIS AGREEMENT OR ANY OF THE OTHER SETTLEMENT DOCUMENTS, EACH PARTY HERETO HEREBY IRREVOCABLY SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE BANKRUPTCY COURT, AND SUCH PARTY HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS RELATING TO SUCH SUITS, ACTIONS OR PROCEEDINGS SHALL BE BROUGHT, HEARD AND DETERMINED IN SUCH COURT. NOTWITHSTANDING THE FOREGOING, EACH PARTY FURTHER AGREES AND CONFIRMS THAT, IF THE BANKRUPTCY COURT ABSTAINS FROM EXERCISING JURISDICTION WITH RESPECT TO ANY SUCH SUIT, ACTION OR PROCEEDING, ANY NEW YORK COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ANY SUCH SUIT, ACTION OR PROCEEDING, AND SUCH PARTY HEREBY IRREVOCABLY AGREES THAT ALL CLAIMS RELATING TO SUCH SUITS, ACTIONS OR PROCEEDINGS MAY BE BROUGHT, HEARD AND DETERMINED IN ANY SUCH NEW YORK COURT. EACH PARTY HERETO (I) WAIVES (A) ANY OBJECTION THAT IT MAY NOW OR HEREAFTER HAVE TO THE VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING IN THE BANKRUPTCY COURT, OR TO THE EXTENT THE BANKRUPTCY COURT ABSTAINS FROM EXERCISING JURISDICTION, ANY NEW YORK COURT, AND (B) ANY RIGHT TO ASSERT THAT SUCH SUIT, ACTION OR PROCEEDING WAS BROUGHT IN AN INCONVENIENT FORUM AND (II) AGREES NOT TO PLEAD OR CLAIM THE SAME. EACH PARTY HERETO AGREES THAT ANY FINAL JUDGMENT IN ANY SUCH SUIT, ACTION OR PROCEEDING SHALL BE CONCLUSIVE AND MAY BE ENFORCED IN OTHER JURISDICTIONS BY SUIT ON THE JUDGMENT OR IN ANY OTHER MANNER PROVIDED BY LAW.

(g)   The covenants, representations and warranties contained in this Agreement shall survive the consummation of all transactions contemplated by this Agreement and this Agreement shall bind and benefit the Parties hereto and their respective permitted successors and assigns.   The covenants, representations and warranties contained in this Agreement are solely for the benefit of the Parties and nothing contained in this Agreement shall be deemed to confer upon anyone other than the Parties hereto any right to insist upon or to enforce the performance or observance of any of the obligations contained in this Agreement. There are no third party beneficiaries to this Agreement other than as expressly stated herein, including, without limitation, any person entitled to an indemnification by any Party hereto.

(h)    At any time and from time to time, upon the written request of any Party, each of the other Parties hereto, at each such requesting Party's sole expense, will promptly and duly execute and deliver such further instruments and documents and take such further action as such requesting Party may reasonably request and which are reasonably necessary in order to effect the intents and purposes of this Agreement as stated herein.

(i)    None of the terms or provisions of this Agreement may be waived, amended, supplemented or otherwise modified except by a written instrument executed by each of the Parties hereto.  No waiver by a Party of any breach of any covenant, representation, condition or agreement contained herein shall operate as a waiver of such covenant, representation, condition or agreement itself, or of any subsequent breach thereof.

(j)    Except as specifically stated otherwise herein, and with respect to the Borrower Parties and the SS Parties, except as set forth in the Amended Mortgage Loan Documents, this Agreement and its Exhibits and the other Settlement Documents set forth the entire understanding of the Parties relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by this Agreement and its Exhibits, the other Settlement Documents and the Amended Mortgage Loan Documents.  This Agreement may not be modified, amended, waived or supplemented except as provided herein.  As between the Borrower Parties and the SS Parties, in the event of any inconsistency or conflict between the terms of the Amended Mortgage Loan Documents, on the one hand, or, this Agreement and/or any of its Exhibits and/or any of the other Settlement Documents, on the other hand, the terms and provisions set forth in the Amended Mortgage Loan Documents shall control.

(k)    References to "Lehman Parties" in this Agreement shall mean each, any and all Lehman Parties.  References to "PCCP Loan Parties" in this Agreement shall mean each, any and all PCCP Loan Parties.  References to "PCCP Parties" in this Agreement shall mean each, any and all PCCP Parties.  References to "SS Parties" in this Agreement shall mean each, any and all SS Parties.  References to "Borrower Parties" in this Agreement shall mean each, any and all Borrower Parties, unless the context clearly indicates otherwise.

(l)    Neither this Agreement nor any Settlement Document nor any uncertainty or ambiguity herein or therein shall be construed or resolved against any Party hereto by virtue of the fact that this Agreement or any other Settlement Document or provision hereof or thereof has originated with such Party as drafter.  This Agreement and the other Settlement Documents shall therefore be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the Parties hereto and thereto.

(m)    The execution of this Agreement by State Street and/or SS Assignee shall not be deemed to be a waiver of the rights and remedies of the SS Parties under the Amended Mortgage Loan Documents with respect to any default or event of default by any of Borrower Parties that may occur after the Closing Date.  The execution of this Agreement by SS Assignee and Borrower Parties shall not be deemed a waiver of any of their respective rights or remedies under any Amended Mortgage Loan Documents.

(n)    To the extent any Party commences an action or proceeding with respect to this Agreement or any other Settlement Document, the non-prevailing Party to any such action

or proceeding shall be liable for all costs and expenses of the prevailing Party, including, without limitation, all reasonable attorneys' costs, expenses and fees.

**[balance of page is intentionally blank]**

**IN WITNESS WHEREOF**, the Parties have executed and delivered this Agreement as of the day and year first above written.

**LEHMAN BROTHERS HOLDINGS INC.**, a Delaware corporation, as debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: _____
Title: _____

**LEHMAN COMMERCIAL PAPER INC.**, a New York corporation, as debtor and debtor in possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

By: _____
Name: _____
Title: _____

**LEHMAN ALI INC.**, a Delaware corporation

By: _____
Name: _____
Title: _____

**REPE LBREM, LLC**, a Delaware limited liability company

By: _____
Name: _____
Title: _____

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGES]**

**HERITAGE FIELDS EL TORO, LLC**, a Delaware limited liability company

By:    Heritage Fields LLC, a Delaware limited liability company, its sole member

        By:    Lennar-LNR Heritage Fields, LLC, a Delaware limited liability company, its Administrative Member

        By:    Lennar Homes of California, Inc., a California corporation, its Managing Member

            By:_____
            Name:  Graham Jones
            Title:  Vice President

        By:    _____

            By: _____
            Name:_____
            Title: _____

**LENNAR CORPORATION**, a Delaware corporation

By: _____
Name:_____
Title: _____

**LNR HERITAGE FIELDS, LLC**, a California limited liability company

By: _____
Name:_____
Title: _____

**EL TORO LLC**, a Delaware limited liability company

By: _____
Name:_____

Title: _____

**[SIGNATURES CONTINUE ON THE FOLLOWING PAGE]**

**LBREM REIT HOLDINGS LLC**, a Delaware limited liability company

By: _____
Name:_____
Title: _____


**PCCP, LLC**, a Delaware limited liability company

By: _____
Name:_____
Title: _____


**PCCP MEZZANINE RECOVERY PARTNERS I, L.P.**, a Delaware limited partnership

By: _____
Name:_____
Title: _____


**STATE STREET BANK AND TRUST COMPANY**, a Commonwealth of Massachusetts state-chartered trust company

By: _____
Name:_____
Title: _____


**[SS ASSIGNEE]**, a **[Delaware]** limited liability company

By: _____
Name:_____
Title: _____

# EXHIBIT A

**Approval Order**

**[to be attached]**

## EXHIBIT B

### Definitions

"**2010 Participation Outstanding Balance**" shall mean an amount equal to $[_____], which amount consists of outstanding principal in the amount of $[_____] and accrued but unpaid interest in the amount of $[_____].

"**Affiliate**" shall mean, as to any person or entity, any other person or entity which directly or indirectly controls, is controlled by or is under common control with such person or entity or (ii) owns more than ten percent (10%) of the voting securities of such person or entity; provided, however, for the avoidance of doubt, none of the PCCP Parties and/or PCCP Mezzanine shall be deemed to be an Affiliate of any of the Lehman Parties and none of the Lehman Parties shall be deemed to be an Affiliate of any of the PCCP Parties and/or PCCP Mezzanine, in each case for purposes hereof.   For purposes of this Agreement, "control" (together with the correlative meanings of "controlled by" and "under common control with") means, when used with respect to any specified person, the ability, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise, to direct or cause the direction of, alone or in concert with others, the management and policies of a person (including by being a general partner, a managing member, a manager, an officer or a director of the person in question).

"**Bankruptcy Cases**" shall mean the cases of LBHI and LCPI and certain of their Affiliates under title 11 of the United States Code, which are being jointly administered in the Bankruptcy Court under Case No. 08-13555 (JMP).

"**Cash Flow Agreements**" shall mean, collectively, the Lehman Option Agreement, the State Street Option Agreement and the PCCP Cash Flow Participation Agreement.

"**Chapter 11 Plan**" shall mean the plan approved under the chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP) which provides for the manner in which claims of the applicable creditors thereunder will be paid in whole or in part by the debtors thereunder.

"**Heritage Fields Transaction**" shall mean, collectively, the transactions described in Recitals A through H, inclusive, of this Agreement with respect to the Mortgage Loan, the Corporate Loan, the Original Participation Transaction, the SS Repo and the 2010 Participation Agreement, and, by way of clarification, such defined term does not include the Settlement being effectuated by this Agreement and the other Settlement Documents.

"**Lehman Discounted Payoff Amount**" shall mean an amount equal to (a) $125,000,000 plus (b) the 2010 Participation Outstanding Balance.

"**Lehman Interests**" shall mean, collectively, all right, title and interest in and to (i) the LBHI Reinstated Participation Interest, (ii) the 2010 Participation Interest and (ii) the Secondary Lehman Interest.

"**Non-Lehman Interest Holders**" shall mean the collective reference to (i) the Borrower Parties, (ii) the PCCP Parties, (iii) the SS Parties, (iv) any of the respective Affiliates of any of the Borrower Parties, PCCP Parties or SS Parties, or (v) any successor, transferee or assign, or any party claiming by or through, any of the Borrower Parties, PCCP Parties, SS Parties or any of the respective Affiliates of any of the Borrower Parties, PCCP Parties or SS Parties.

"**PCCP Interests**" shall mean any and all right, title and interest in and to the Mortgage Loan other than the Reinstated Participation Interest and the 2010 Participation Interest.

"**Secondary Lehman Interest**" shall mean, as to any Lehman Party, any right, title and interest, if any, held by such Lehman Party in or to the Mortgage Loan or the Corporate Loan other than the LBHI Reinstated Participation Interest and the 2010 Participation Interest.

"**SS Interests**" shall mean the State Street Reinstated Participation Interest.

# EXHIBIT C

**REPE LBREM Assignment Agreement**

**[to be attached]**

## EXHIBIT D

**LBHI Corporate Loan Assignment**

**[to be attached]**

## EXHIBIT E

**Reserved**

## **EXHIBIT F**

**Reinstated Participation Agreement**

**[to be attached]**

# **EXHIBIT G**

**Lehman Option Agreement**

**[to be attached]**

# EXHIBIT H

**PCCP Cash Flow Participation Agreement**

**[to be attached]**

## EXHIBIT I

**Mortgage Loan Reduction Statement**

**[to be attached]**

## EXHIBIT J

**Lehman Assignment**

**[to be attached]**

# **EXHIBIT K**

**PCCP Assignment**

**[to be attached]**

# **EXHIBIT L**

**Assignment (State Street)**

**[to be attached]**

# **<u>EXHIBIT M</u>**

## **Reserved**

# **EXHIBIT N**

## **Reserved**

# EXHIBIT O

**State Street Option Agreement**

**[to be attached]**

## EXHIBIT P

**Settlement Documents**
**(all documents dated as of _____, 2010, unless otherwise indicated)**

REPE LBREM Assignment Agreement from REPE LBREM to LBHI.

LBHI Corporate Loan Assignment from LBHI to State Street.

Corporate Loan Termination by and among Lehman Parties, PCCP Parties, SS Parties and Borrower Parties.

Mortgage Loan Reduction Statement by and among Mortgage Lender and Mortgage Borrower.

Reinstated Participation Agreement by and among PCCP Parties, State Street and LBHI.

Lehman Assignment from LBHI, ALI, LCPI and REPE LBREM to SS Assignee.

Waiver and Release Agreement by and among LBHI, LCPI, ALI, REPE LBREM, Mortgage Lender LBREM REIT, State Street, SS Assignee, Mortgage Borrower, Lennar Guarantor and LNR Guarantor.

PCCP Assignment from Mortgage Lender to SS Assignee.

Assignment of Deed of Trust made by El Toro LLC to **[SS Assignee]**.

Allonge Endorsement made by El Toro LLC to **[SS Assignee]**.

Assignment of Assignment of Leases and Rents made by El Toro LLC to **[SS Assignee]**.

UCC-3 assignments from El Toro LLC to **[SS Assignee]**.

Option for Cash Flow Participation Agreement by and between Mortgage Borrower and **[Lehman Designee]**.

Cash Flow Participation Agreement by and between Mortgage Borrower and El Toro LLC.

**[additional documents to be added]**

# EXHIBIT Q

**List of PCCP Proofs of Claim**

**[to be attached]**

# EXHIBIT R

**Proof of Claim Dismissals**

**[to be attached]**

## **EXHIBIT S**

**Adversary Dismissal**

**[to be attached]**

# EXHIBIT T

## Waiver and Release

US_ACTIVE:\43543733\09\73683.1016
A/73551865.8