**RESPONSE DEADLINE: December 6, 2010 at 4:00 p.m. (Eastern Time)**
**HEARING DATE AND TIME: December 22, 2010 at 10:00 a.m. (Eastern Time)**

SCHULTE ROTH & ZABEL LLP
Attorneys for Castlerigg Master Investments Ltd.
Lawrence V. Gelber
919 Third Avenue
New York, New York 10022
Telephone: (212) 756-2000
Facsimile: (212) 593-5955

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC., *et al.*,** | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

## RESPONSE OF CASTLERIGG MASTER INVESTMENTS LTD.
## TO DEBTORS' SIXTY-SEVENTH OMNIBUS OBJECTION TO CLAIMS
## (VALUED DERIVATIVE CLAIMS)

Sandell Asset Management Corp., as an authorized signatory and on behalf of Castlerigg Master Investments Ltd. ("Castlerigg"), submits this response (the "Response") to the objection of the debtors in the above-referenced chapter 11 cases (the "Debtors") to Castlerigg's duly and timely-filed proof of claim (the "Claim")[1] contained in the Debtors' Sixty-Seventh Omnibus Objection to Claims (Valued Derivative Claims) (the "Objection"). In support of its Claim and Response to the Objection, Castlerigg represents as follows:

---

[1] Castlerigg filed proof of claim number 27310 on September 22, 2009. A copy of the Claim is attached hereto as Exhibit A.

### Background

1.      Lehman Brothers Holdings Inc. ("LBHI") filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Court") on September 15, 2008 (the "Petition Date").  Lehman Brothers Special Financing Inc. ("LBSF") filed a petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008.

2.      On July 2, 2009, the Court entered an order (the "Bar Date Order"), which established September 22, 2009 at 5:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the last date and time for filing proofs of claim in LBSF's or LBHI's bankruptcy cases.

3.      In accordance with the requirements set forth in the Bar Date Order, Castlerigg filed the Claim against LBSF in the amount of $13,904,506 (the "Claim Amount") on the Bar Date and timely completed the online Derivative Questionnaire, including uploading all required information and documentation.

4.      On November 3, 2010, the Debtors filed the Objection, by which the Debtors seek to reduce and allow the Claim to and in the amount of $9,055,734.84 (the "Reduced Claim Amount").  The Debtors, however, did not assert any substantive basis for the Reduced Claim Amount.  Nor have they provided Castlerigg or the Court any evidence to substantiate the Reduced Claim Amount.  As such, Castlerigg files this Response in reply to the Objection.

### Basis for Relief

5.      As a preliminary matter, the Court should overrule the Debtors' Objection to the Claim because the Debtors have failed to rebut Castlerigg's prima facie evidence of a valid claim.  Even if the Court were to somehow find that the Debtors have satisfied their rebuttal

burden, the Objection should be overruled because Castlerigg has adduced sufficient admissible evidence to substantiate allowance of the Claim in the Claim Amount.

**A.**    **The Debtors Have Failed to Rebut the Validity of the Claim**

6.    "The burden of proof for claims . . . rests on different parties at different times." In re Allegheny International, Inc., 954 F.2d 167, 173 (3d Cir. 1992). The claimant has the initial burden and "must allege facts sufficient to support the claim. If the averments in his filed claim meet this standard of sufficiency, it is 'prima facie' valid." Id. (citing In re Holm, 931 F.2d 620, 623 (9th Cir. 1991)). The burden then shifts to the claim objector: "It is well settled that the party objecting to a proof of claim has the burden of coming forward with sufficient evidence rebutting the validity of a properly filed proof of claim." In re King, 305 B.R. 152, 162 (Bankr. S.D.N.Y. 2004) (emphasis in original) (internal citation omitted). If the objector carries this burden, the burden then shifts back to the claimant, who "must prove by a preponderance of the evidence that under applicable law the claim should be allowed. In re Oneida Ltd, 400 B.R. 384 (Bankr. S.D.N.Y. 2009) (citing Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15 (2000)).

7.    Here, Castlerigg clearly satisfied its initial burden by (a) timely and properly filing its proof of claim, including an addendum describing in detail the basis of its claim, (b) completing the online Derivative Questionnaire, and (c) uploading all supporting documentation as required by the Bar Date Order (collectively, the "Castlerigg Submissions"). In the Castlerigg Submissions, Castlerigg alleged facts sufficient to support the Claim and, thus, has established that the Claim's prima facie validity.

8.    The Debtors, on the other hand, have failed to meet their burden of providing sufficient evidence to rebut the prima facie validity of the Claim. In the Objection, the Debtors merely make the generic statement that they "have developed and currently utilize a

thorough, multi-step process to review claims filed against the Debtors and based on a Derivatives Contract . . . in order to determine the fair, accurate, and reasonable value of such claims" for settlement purposes. <u>Objection</u> at 6. This process allegedly includes (i) reviewing the documents filed by claimants; (ii) reconciling posted collateral and any cash payments already received, made or missed; and (iii) reviewing the claimant's calculations used to value the claim and supporting evidence. <u>Id.</u> at 7. The Debtors then simply listed in an exhibit the Reduced Claim Amount stating generally in the Objection that "a fair, accurate, and reasonable valuation of [each claim that is subject of the Objection] is less than that reflected on the proof of claim submitted by claimant." <u>Id.</u> at 8.

9. The internal, behind-closed-doors process and the Debtors' entirely conclusory statements regarding "reasonable valuation," without more, are not sufficient to rebut the prima facie validity of the Claim. Not only have the Debtors failed to assert <u>any</u> substantive argument specific to Castlerigg's Claim that might support the Reduced Claim Amount, but so too they have provided <u>neither</u> documentation nor details of any nature evidencing how they arrived at their "reasonable valuation." At a minimum, the Debtors should be required to provide Castlerigg and the Court with the specific documentation on which they relied to calculate the purported Reduced Claim Amount. The Debtors' failure to do so renders the Objection insufficient to rebut the prima facie validity of the Claim.

**B.    Castlerigg Has Provided Evidence That
the Claim Should Be Allowed in the Claim Amount**

10. Even if the Court were to find that the Debtors have rebutted the prima facie validity of Castlerigg's Claim, Castlerigg previously has submitted evidence that the Claim should be allowed in the Claim Amount.

11.     As detailed in the Castlerigg Submissions, the Claim is based on a 1992 ISDA Master Agreement dated as of July 25, 2003 (the "Master Agreement"), by and between Castlerigg and LBSF, as amended and supplemented by (i) a schedule (the "Schedule") and (ii) a credit support annex to the Schedule (the "Credit Support Annex," and collectively with the Master Agreement and the Schedule, the "ISDA Agreement"). Part 4(g) of the Schedule defines the "Credit Support Provider" under the ISDA Agreement as LBHI. Section 5(a)(vii)(4) of the Master Agreement, in turn, provides that the bankruptcy of the Credit Support Provider is an event of default under the ISDA Agreement. An event of default thus occurred under the ISDA Agreement when LBHI filed a bankruptcy petition on the Petition Date.

12.     Section 6(a) of the Master Agreement provides that if an event of default occurs, the non-defaulting party may notify the defaulting party that it is terminating all outstanding transactions. After the Petition Date, Castlerigg delivered to LBSF in accordance with the ISDA Agreement, a notice of early termination designating September 15, 2008 as the "Early Termination Date" in respect of all outstanding transactions and terminating the ISDA Agreement (the "Early Termination Notice").[2] Castlerigg accordingly terminated all outstanding transactions and the ISDA Agreement as of the Early Termination Date.

13.     Pursuant to Section 6(d)(i) of the Master Agreement, on September 30, 2008, Castlerigg delivered to LBSF a Statement of Calculations (the "Statement of Calculations")[3] showing, in reasonable detail, its calculations, and specifying the amount payable by LBSF to Castlerigg. As described in the Statement of Calculations, LBSF was and remains indebted to Castlerigg under the ISDA Agreement in the aggregate amount of $13,900,856 (the "Early Termination Amount") based on the Market Quotation method, and for those transactions

---

[2] A copy of the Early Termination Notice is attached hereto as Exhibit B.

[3] A copy of the Calculation Notice is attached hereto as Exhibit C.

where Market Quotation could not be determined, Loss, in accordance with the ISDA Agreement.

14.    More specifically, Castlerigg used the Market Quotation method for eight positions. Castlerigg included a description of each position, the quantity, the names of and market quotes from at least three reference market makers, and the resulting market quotation determined consistent with the definition of "Market Quotation" set forth in the ISDA Agreement. The Master Agreement defers to Castlerigg's records and calculations with respect to Market Quotation.[4]

15.    In accordance with the ISDA Agreement, in situations in which Market Quotation could not be determined, Castlerigg used the Loss method to value its positions. The Master Agreement defines Loss as the "amount that party reasonably determines in good faith to be . . . in connection with this Agreement . . . ." Master Agreement at 15. The Statement of Calculations reflects Castlerigg's good faith determination of twenty positions for which it could not obtain the requisite number of market quotes.    To value those Loss positions, Castlerigg used a combination of market quotations from reference market makers and Castlerigg's own institutional knowledge of the markets and these specific instruments to derive those positions' prices on the Termination Date. Taken together with the Market Quotation valuations discussed above, Castlerigg determined that the aggregate amount of $39,323,856 was due and payable by LBSF with respect to all of Castlerigg's terminated positions (the "Settlement Amount").

16.    Offsetting the Settlement Amount is the collateral that Castlerigg held as of the Early Termination Date.    For the purposes of determining the value of the collateral,

---

[4] The Master Agreement expressly provides that "[i]n the absence of written confirmation from the source of a quotation obtained in determining a Market Quotation, the records of the party obtaining such quotation will be conclusive evidence of the existence and accuracy of such quotation." Master Agreement at § 6(d)(i) (emphasis added).

Castlerigg relied on the Lehman Brothers MTM statement dated as of September 11, 2008, the most recent valuation statement provided by LBSF before the Petition Date (the "MTM Statement").[5] The MTM Statement reflects that Castlerigg held collateral valued at $25,423,000 (the "Collateral Value").

17.    Additionally, Section 11 of the Master Agreement provides that the defaulting party will indemnify the other party for and against all reasonable out-of-pocket expenses, including legal fees, incurred by the other party by reason of enforcement and protection of its rights under the ISDA Agreement.    In the Claim, Castlerigg seeks reimbursement of $3,650 legal fees and expenses ("Legal Fees") incurred in connection with the early termination of the outstanding transactions and preparation of the Claim as of the Bar Date.

18.    Accordingly, as of the Bar Date, LBSF owed Castlerigg the Claim Amount of no less than $13,904,506, comprised of the Settlement Amount and the Legal Fees, offset by the Collateral Value.    Castlerigg has complied with all requirements of the ISDA Agreement with respect to delivery of the Early Termination Notice, the Statement of Calculations, and the valuation methodologies it employed to calculate the amount due and payable by LBSF.    Moreover, Castlerigg timely and properly filed the Claim and otherwise complied with all Bar Date Order requirements.    As such, even if the burden of proof shifts back to Castlerigg, Castlerigg submits that it has shown by a preponderance of evidence that the Claim should be allowed in the Claim Amount.

### Conclusion

19.    The Debtors have filed an omnibus claim objection that only vaguely and in general terms describes the Debtors' in-house process for reviewing and valuing claims --

---

[5] A copy of the MTM Statement is attached hereto as Exhibit D.

7

without providing any supporting documentation with respect to specific claims, such as Castlerigg's Claim. The Debtors' failure to rebut the prima facie validity of the Claim in and of itself mandates that the Court overrule the Objection.

20.    Moreover, Castlerigg has provided all required and relevant information related to the Claim and has described in great detail how it determined the Claim Amount. Castlerigg has thus shown by a preponderance of evidence that the Claim is valid and should be an allowed general unsecured claim in the Claim Amount.

21.    While Castlerigg is aware of the administrative burden on the Debtors' estates and the need for judicial economy in these cases that leads to the filing of omnibus claims objections, the desire for economy should not vitiate Castlerigg's statutory rights as a creditor. The Debtors' simplistic objection to a complex claim, such as Castlerigg's Claim, is insufficient without more, even in the context of these large cases.

**WHEREFORE**, Castlerigg respectfully requests that this Court (i) overrule the Objection as it relates to the Claim; (ii) allow the Claim as a general unsecured claim in the Claim Amount; and (iii) grant other and further relief as is just.

Dated:    New York, New York
            December 3, 2010

**CASTLERIGG MASTER INVESTMENTS LTD.**

**BY: SANDELL ASSET MANAGEMENT CORP.**

/s/ Laura Strache
**By: Laura Strache**
**Title: Managing Director**

# EXHIBIT A

Castlerigg's Proof of Claim

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re:  Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11  Case No. 08-13555 (JMP)  (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held  **Lehman Brothers Special Financing Inc.** | Case No./Case No.  **08-13888** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000027310

**THIS SPACE IS FOR COURT USE ONLY**

| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)  Castlerigg Master Investments Ltd.  c/o Sandell Asset Management Corp.  40 West 57th Street, 26th Floor  New York, NY  10019    Telephone number: 212-603-5775   Email Address: legal@sandellmgmt.com | ☐ Check this box to indicate that this claim amends a previously filed claim.  **Court Claim Number:** _____  (*If known*)  Filed on: _____ |
|---|---|
| Name and address where payment should be sent (if different from above)    Telephone number:   Email Address: | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.  ☐ Check this box if you are the debtor or trustee in this case. |

**1.   Amount of Claim as of Date Case Filed: $** no less than $13,904,506

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

***IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.   Basis for Claim:** see attached
     (See instruction #2 on reverse side.)

**3.   Last four digits of any number by which creditor identifies debtor:** _____
     **3a. Debtor may have scheduled account as:** _____
     (See instruction #3a on reverse side.)

**4.   Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____   Basis for perfection: _____
**Amount of Secured Claim: $_____   Amount Unsecured: $_____**

**6.   Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
     (See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (*See definition of "redacted" on reverse side.*) If the documents are voluminous, attach a summary.
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

**Amount entitled to priority:**

$_____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:  9/22/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  Laura Straehle, Managing Director of Sandell Asset Mgmt. Corp., as Inv. mgr. to |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Castlerigg Master Investmts Ltd.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

## ATTACHMENT TO PROOF OF CLAIM OF CASTLERIGG MASTER INVESTMENTS LTD. AGAINST LEHMAN BROTHERS SPECIAL FINANCING, INC.

The undersigned, having an office at 40 West 57th Street, 26th Floor, New York, NY 10019, is an authorized signatory of CASTLERIGG MASTER INVESTMENTS LTD. ("Castlerigg") and is duly authorized to execute and submit this claim (the "Claim") on Castlerigg's behalf. In support of the Claim, Castlerigg represents as follows:

### Background

ISDA Agreement

1.     Castlerigg and Lehman Brothers Special Financing Inc. ("LBSF") entered into a 1992 ISDA Master Agreement (Multicurrency-Cross Border), dated as of July 25, 2003 (the "Master Agreement"), as amended and supplemented by (i) a schedule (the "Schedule"), and (ii) a credit support annex to the Schedule (the "Credit Support Annex," and collectively with the Master Agreement and the Schedule, the "ISDA Agreement").

2.     Under Paragraph 2 of the Credit Support Annex, each of LBSF and Castlerigg pledged to the other counterparty, as security for all of its present and future obligations under the ISDA Agreement, a first priority continuing security interest in, lien on and right of Set-off (as defined in the ISDA Agreement) against all Posted Collateral (as such term is defined in the ISDA Agreement) transferred to or received from the other.

3.     Lehman Brothers Holdings Inc. ("LBHI") executed a guarantee (the "Guarantee") in favor of Castlerigg as additional credit support in connection with the ISDA Agreement. Under the Guarantee, LBHI unconditionally guaranteed to Castlerigg "the due and punctual payment of all amounts payable by LBSF in connection with each Transaction, as defined in the Guarantee, when and as LBSF's obligations thereunder shall become due and payable in accordance with the terms of the ISDA Agreement." Guarantee, ¶ (a). LBHI further agreed to pay or cause to be paid any amount owed to Castlerigg under the Guarantee upon written demand when and as it becomes due and payable. Id. The Guarantee is a guarantee of payment, not a guarantee of collection. Id. at ¶ (b).

Bankruptcy Cases

4.     LBHI filed a petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on September 15, 2008 (the "Petition Date"). LBSF filed a petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008.

5.     On July 2, 2009, the Bankruptcy Court entered an order (the "Bar Date Order"), setting September 22, 2009 at 5:00 p.m. (prevailing Eastern Time) (the "Bar Date") as the last date and time for filing proofs of claim in LBSF's or LBHI's bankruptcy cases. Castlerigg asserts this Claim pursuant to the Bar Date Order.

## Basis of Claim

6.     Part 4(g) of the Schedule defines the "Credit Support Provider" under the ISDA Agreement as LBHI. Section 5(a)(vii)(4) of the Master Agreement, in turn, provides that the bankruptcy of the Credit Support Provider is an event of default under the ISDA Agreement. An event of default thus occurred under the ISDA Agreement when LBHI filed a bankruptcy petition on the Petition Date.

2

7.    Section 6(a) of the Master Agreement provides that if an event of default

occurs, the non-defaulting party may notify the defaulting party that it is terminating all

outstanding Transactions. After the Petition Date, Castlerigg delivered to LBSF in accordance

with the ISDA Agreement a notice of early termination designating September 15, 2008, as the

"Early Termination Date" in respect of all outstanding Transactions and terminating the ISDA

Agreement (the "Early Termination Notice"). Castlerigg accordingly terminated all outstanding

transactions and the ISDA Agreement as of the Early Termination Date.

8.    Castlerigg delivered to LBSF a Statement of Calculations (the

"Calculation Statement") on September 30, 2008, notifying LBSF of the amount due to

Castlerigg under the ISDA Agreement. As described in the Calculation Statement, LBSF was

and remains indebted to Castlerigg under the ISDA Agreement in the amount of $13,900,856

(the "Early Termination Amount") based on the Market Quotation method, and for those

transactions where Market Quotation could not be determined, Loss, in accordance with the

ISDA.

9.    Section 11 of the Master Agreement provides that the defaulting party

"will, on demand, indemnify and hold harmless the other party for and against all reasonable out-

of-pocket expenses, including legal fees and Stamp Tax (as defined in the Master Agreement),

incurred by such other party by reason of the enforcement and protection of its rights under this

Agreement or any Credit Support Document to which the Defaulting Party is a party or by reason

of the early termination of any Transaction, including, but not limited to, costs of collection."

Castlerigg has incurred an estimated $3,650 in legal fees and expenses to date in connection with

the early termination of the Transactions and preparation of this Claim (the "Legal Expenses",

3

and together with the Early Termination Amount, the "Claim Amount"). The total Claim Amount is no less than $13,904,506.

10.    As of the date of the filing of this Claim, Castlerigg has received no payment on account of any portion of the Claim Amount and related costs from LBSF. Castlerigg accordingly asserts this Claim against LBSF under the ISDA Agreement for the full Claim Amount (in addition to asserting a similar claim under the Guarantee against LBHI, which claim is the subject of a separate proof of claim) and related costs, including any as yet unliquidated legal fees and expenses incurred by Castlerigg in excess of the Legal Expenses.

11.    The Claim is evidenced by various documents and instruments, including (without limitation) the ISDA Agreement, the Guarantee, the Early Termination Notice, the Calculation Statement, and all other information and documents, which Castlerigg will electronically upload upon online completion of the derivative questionnaire in accordance with the Bar Date Order. Castlerigg reserves the right to attach, produce, and/or rely upon additional documents supporting its Claim or additional documents that may become available after further investigation or discovery.

12.    No judgment has been rendered on account of the Claim.

13.    The amounts of any payment on the Claim has been credited and deducted for the purpose of making this Claim.

14.    The Claim is filed as an unsecured claim.

15.    All notices and distributions in respect of the Claim should be forwarded to:

CASTLERIGG MASTER INVESTMENTS LTD.

c/o Sandell Asset Management Corp.

40 West 57th Street, 26th Floor

New York, NY 10019

Attention: Legal Department

16.     This proof of claim is filed to protect Castlerigg from forfeiture of its claims by reason of a Bar Date. The filing of this proof of claim is not and should not be construed to be: (a) a waiver or release of the rights of Castlerigg against any other entity or person liable for all or part of any claim described herein; (b) a waiver of the right to seek to have the reference withdrawn or contest the Court's jurisdiction with respect to the subject matter of these claims, any objection or other proceeding commenced with respect thereto, or any other proceeding commenced in this case against or otherwise involving Castlerigg; (c) a waiver of any right to the subordination, in favor of Castlerigg, of indebtedness or liens held by creditors of LBSF, LBHI, or any affiliated debtor; or (d) an election of choice of law or remedy that waives or otherwise affects any other remedy of Castlerigg.

17.     Castlerigg reserves the right, in accordance with Court orders and procedures to amend, modify and/or supplement this Claim, and/or file additional claims from time to time as may be necessary or appropriate.

18.     The filing of this Claim shall not constitute a concession or admission by Castlerigg of any liability or the existence or veracity of any facts with respect to any claim that has been or may be asserted against Castlerigg by third parties.

19.     Nothing contained herein shall limit the rights of Castlerigg from commencing any proceeding or taking any action concerning its claims or any lien or security interest to the extent permitted by the Bankruptcy Code or applicable non-bankruptcy law.

Dated: New York, New York
        September 22, 2009

**CASTLERIGG MASTER INVESTMENTS LTD.**

**BY: SANDELL ASSET MANAGEMENT CORP.**

By: _Laura Straube_
Title: _Managing Director_

**ADMIN ONE**

737078

**H
A
N
D**

**D
E
L
I
V
E
R
Y**

**FILED / RECEIVED**

**SEP 2 2 2009**

**EPIQ BANKRUPTCY SOLUTIONS, LLC**

RECEIVED BY: _____    DATE _____    4:24 _____
                                                                                              TIME

# EXHIBIT B

Early Termination Notice

# SANDELL ⑤ ASSET MANAGEMENT

## CASTLERIGG INVESTMENTS

September 15, 2008

Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Inc.
745 Seventh Avenue, 28th Floor
New York, NY 10019

Attn: Documentation Manager

### NOTICE OF EARLY TERMINATION

*S. WHITAKER*

*SEP 15 PM 8:10*

Re: ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("Counterparty") and Castlerigg Master Investments Ltd. (the "Fund"), dated July 25, 2003 (the "Agreement"). Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

This letter serves as notice of the designation of an Early Termination Date effective as of September 15, 2008 pursuant to Sections 5(a)(vii) and 6(a) of the Agreement. The Fund, on or as soon as reasonably practicable following the Early Termination Date, will notify Counterparty of the amount due under the Agreement.

Castlerigg Master Investments Ltd.
By: Sandell Asset Management Corp.

By: _____
Name: Tim O'Brien
Title: Chief Financial Officer

# EXHIBIT C

Calculation Notice

# SANDELL ⑤ ASSET MANAGEMENT

## CASTLERIGG INVESTMENTS

September 30, 2008

**VIA HAND DELIVERY**

Lehman Brothers Special Financing Inc.
c/o Lehman Brothers Inc.
745 Seventh Avenue, 28th Floor
New York, NY 10019

*S. WHITAKER*

Attn: Documentation Manager

## NOTICE OF CALCULATIONS

Re: ISDA Master Agreement between Lehman Brothers Special Financing Inc. ("Counterparty") and Castlerigg Master Investments Ltd. (the "Fund"), dated July 25, 2003 (the "Agreement").

Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

This letter serves as the Fund's notice of calculations and statement of payments on early termination pursuant to Section 6(d)(i) of the Agreement. In its determination of the early termination amount, the Fund has performed all calculations pursuant to Section 6(e) of the Agreement and has exercised its rights of set-off against the collateral held by the Fund and has arrived at the following statement:

| | |
|---|---|
| Settlement Amount Due Fund: | $39,323,856 |
| Collateral Held by Fund being set-off: | $25,423,000 |
| **Total Amount Due Fund:** | **$13,900,856** |

Detailed calculations and backup for market quotations are provided as Exhibit A hereto. All amounts hereunder are due and payable in accordance with Section 6(d)(ii) of the Agreement.



Page 2


Amounts to be paid by Counterparty under this notice shall be sent to Fund's account as follows:

Citibank, N.A.
ABA: 021 000 089
A/C: J.P. Morgan Clearing Corp
A/C#: 092-53186
FFC: Castlerigg Master Investments Ltd.
FFC: 1020707426


Castlerigg Master Investments Ltd.
By: Sandell Asset Management Corp.

By: _____
Name: Tim O'Brien
Title: Chief Financial Officer

EXHIBIT A
STATEMENT OF CALCULATIONS
as of September 15, 2008

## MARKET QUOTATIONS

| DESCRIPTION OF POSITION | POSITION QUANTITY | MARKET QUOTES | REFERENCE MARKET MAKERS | RESULTING MARKET QUOTATION | (DUE to FUND) DUE by FUND |
|---|---|---|---|---|---|
| MBIA_18.3_9/20/13_LEHM | (5,000,000) | BIDS 29 | Citigroup Global Mkts. | 29 | $ 1,450,000 |
| | | 28 | Deutsche Bank Securities | | |
| | | 31 | UBS Securities LLC | | |
| RRD_168.5_9/20/13_LEH | 10,000,000 | OFFERS 185 | JPMorgan Securities | 185 | $ (71,252) |
| | | 190 | Merrill Lynch | | |
| | | 183 | RBS Greenwich Capital | | |
| SHW_100_9/20/13_LEH | 10,000,000 | OFFERS 102 | Credit Suisse Securities | 102 | $ (8,708) |
| | | 110 | Deutsche Bank Securities | | |
| | | 100 | RBS Greenwich Capital | | |
| CMBX.NA.AAA.4 .35-LEHM2 | (20,000,000) | OFFERS 207 | Credit Suisse Securities | 207 | $ (2,351,445) |
| | | 195 | Goldman Sachs & Co. | | |
| | | 210 | Merrill Lynch | | |
| CMBX.NA.AAA.4 .35-LEHM | (30,000,000) | OFFERS 207 | Credit Suisse Securities | 207 | $ (3,527,168) |
| | | 195 | Goldman Sachs & Co. | | |
| | | 210 | Merrill Lynch | | |
| GCI_237_9/20/13_LEH | 10,000,000 | OFFERS 390 | Bank of America Securities | 390 | $ (613,025) |
| | | 390 | JPMorgan Securities | | |
| | | 390 | Merrill Lynch | | |
| | | 385 | RBS Greenwich Capital | | |
| NYT_246_9/20/13_LEH | 10,000,000 | OFFERS 430 | Bank of America Securities | 430 | $ (726,042) |
| | | 425 | JPMorgan Securities | | |
| | | 430 | Merrill Lynch | | |
| | | 430 | RBS Greenwich Capital | | |
| NYT_337_9/20/13_LEH | 5,000,000 | OFFERS 430 | Bank of America Securities | 430 | $ (183,181) |
| | | 425 | JPMorgan Securities | | |
| | | 430 | Merrill Lynch | | |
| | | 430 | RBS Greenwich Capital | | |

## LOSS

| DESCRIPTION OF POSITION | POSITION QUANTITY | LOSS MARK | (DUE to FUND) DUE by FUND |
|---|---|---|---|
| CLARKCO_46_3/20/18_LEMH | 10,000,000 | 120.00 | $ (550,931) |
| CLARKCO_68_9/20/13_LEH | 10,000,000 | 120.00 | $ (401,688) |
| CLARKCO_77_9/20/13_LEH | 5,000,000 | 120.00 | $ (95,825) |
| CLARKCO2_46_3/20/18_LEHM | 10,000,000 | 120.00 | $ (550,931) |
| HOUSTON_33_3/20/18_LEHM | 10,000,000 | 85.00 | $ (351,778) |
| PSVEN_207.5_6/20/09_LEHM | 20,000,000 | 890.00 | $ (984,928) |
| SANDIEGO_61_3/20/18_LEHM | 10,000,000 | 130.00 | $ (509,958) |
| SANDIEGO_63_3/20/18_LEHM | 10,000,000 | 130.00 | $ (495,166) |
| ICE_170.5_9/20/13_LEH | 10,000,000 | 330.00 | $ (654,368) |
| UAL_UF 50_9/20/13_LEH | (2,000,000) | 43.00 | $ 860,000 |
| ZAR 168 6/20/13_LEHM | 10,000,000 | 200.00 | $ (133,712) |
| ABX.HE.AAA.07-2 .76% LEH 1 | (50,000,000) | 45.00 | $ (27,500,000) |
| ABX.HE.PAAA.07-2 .76 LEH | 10,000,000 | 54.50 | $ 4,550,000 |
| ABX.HE.AAA.07-2 .76% LEH 2 | (10,000,000) | 45.00 | $ (5,500,000) |
| CTL_180.5_9/20/13_LEH | 20,000,000 | 195.00 | $ (124,546) |
| EXPE_299_9/20/13_LEH | 5,000,000 | 340.00 | $ (83,411) |
| EXPE_332_12/20/13_LEH | 10,000,000 | 340.00 | $ (33,085) |
| L_295_9/20/13_LEH | 5,000,000 | 540.00 | $ (463,538) |
| LEVI_650_9/20/13_LEH | (5,000,000) | 665.00 | $ 26,185 |
| CDX.NA.IG.10 6/20/13_LEH | 20,000,000 | 191.00 | $ (295,356) |
| | | SETTLEMENT AMOUNT | $ (39,323,856) |

# EXHIBIT D

MTM Statement

# LEHMAN BROTHERS

## DERIVATIVES - MTM STATEMENT

TO:    CASTLERIGG MASTER INVESTMENTS LTD

A/C # :    10139SCMML

PHONE:    David Unger

FAX:

EMAIL:    anthony@sandelImgmt.com;khartz@sandellmgmt.com;emahoney@s
andellmgmt.com;rnsanders@sandellmgmt.com;valuations@sandellmgmt.com;criz
zo@sandellmgmt.com;vigolnikov@sandellmgmt.com;

DATE:    12-Sep-2008

COB VALUATION DATE:    11-Sep-2008

REPORTING CCY:    USD

FROM:    LEHMAN BROTHERS SPECIAL FINANCING INC.

PHONE:    ROGER BENSON

PHONE:    212-526-2170

FAX:    917-522-0252

EMAIL:    cvg@lehman.com

*POSITIVE NUMBERS = DUE TO LEHMAN/COLLATERAL HELD BY LEHMAN*
*NEGATIVE NUMBERS = DUE TO YOU/COLLATERAL HELD BY YOU*

The below estimated value[s] are as of the date indicated and do not represent actual bids or offers by Lehman Brothers. There can be no assurance that actual trades could be completed at such value[s]. Unless otherwise specified, the below valuations represent mid-market valuations. Mid-market values attempt to approximate the current economic value of a given position using prices and rates at the average of the bid and offer for the respective underlying asset(s) or reference rate(s). Discussions of trade values in general, and Indicative or firm price quotations and actual trade prices in particular, may vary significantly from these written estimated values as a result of various factors, which may include (but are not limited to) prevailing credit spreads, market liquidity, position size, transaction and financing costs, hedging costs and risks and use of capital and profit.

These estimates may not be representative of any theoretical or actual internal valuations employed by us for our own purposes, may vary during the course of any particular day and may vary significantly from the estimates or quotations that would be given by another dealer. You should consult with your own accounting or other advisors as to the adequacy of this information for your purposes. As a condition for providing these estimates, you agree that Lehman Brothers makes no representation and shall have no liability in any way arising there from to you or any other entity for any loss or damage, direct or indirect, arising from the use of this information.

| MTM Summary | | Independent Requirement Summary | |
|---|---|---|---|
| Default Swaps Total | (32,589,807) | Portfolio Independent Requirement | 2,375,000 |
| **TOTAL:** | **(32,589,807)** | Deal Specific Independent Requirement | - |
| | | **TOTAL:** | **2,375,000** |

| GID | RMS ID | Product Type | Ticker | Trade Date | Maturity Date | Buy / Sell | CCY | Notional Amount CCY | Indicative Spread | MTM (USD) |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Default Swaps | | | | | |
| 20238773 | 20238773 | DEFAULTS | ABX_HE_AAA072 | 14-May-2008 | 25-Jan-2038 | S | USD | 10,000,000 | | (5,110,411) |
| 20260841 | 20260841 | DEFAULTS | MBIA | 03-Jun-2008 | 20-Sep-2013 | B | USD | 5,000,000 | 0.1355 | 1,180,183 |
| 20262740 | 20262740 | DEFAULTS | GCI | 05-Jun-2008 | 20-Sep-2013 | S | USD | 10,000,000 | 0.0370 | (475,903) |
| 20262741 | 20262741 | DEFAULTS | NYT | 05-Jun-2008 | 20-Sep-2013 | S | USD | 10,000,000 | 0.0430 | (654,226) |
| 20276061 | 20276061 | DEFAULTS | NYT | 16-Jun-2008 | 10-Sep-2008 | S | USD | | | (583,369) |
| 20276138 | 20276138 | DEFAULTS | L | 16-Jun-2008 | 20-Sep-2013 | S | USD | 5,000,000 | 0.0495 | (356,389) |
| 20297501 | 20297501 | DEFAULTS | SHW | 15-Jul-2008 | 20-Sep-2013 | S | USD | 10,000,000 | 0.0088 | 70,239 |
| 20301091 | 20301091 | DEFAULTS | NYT | 16-Jul-2008 | 20-Sep-2013 | S | USD | 5,000,000 | 0.0430 | (188,092) |
| 20303107 | 20303107 | DEFAULTS | ABX_HE_AAA072 | 17-Jul-2008 | 25-Jan-2038 | S | USD | 50,000,000 | 0.0715 | (25,552,056) |
| 20309035 | 20309035 | DEFAULTS | FDC | 21-Jul-2008 | 20-Sep-2013 | B | USD | 5,000,000 | 0.0640 | 23,210 |
| 20318190 | 20318190 | DEFAULTS | LEVI | 31-Jul-2008 | 20-Sep-2013 | B | USD | 5,000,000 | 0.0191 | (56,711) |
| 20326163 | 20326163 | DEFAULTS | CTL | 06-Aug-2008 | 20-Sep-2013 | B | USD | 20,000,000 | 0.0191 | (55,672) |
| 20326154 | 20326154 | DEFAULTS | RRD | 06-Aug-2008 | 20-Sep-2013 | S | USD | 10,000,000 | 0.0179 | (29,200) |
| 20329030 | 20329030 | DEFAULTS | UAUA | 11-Aug-2008 | 20-Sep-2013 | B | USD | 2,000,000 | 0.2498 | 911,102 |
| 20331225 | 20331225 | DEFAULTS | EXPE | 14-Aug-2008 | 20-Sep-2013 | S | USD | 5,000,000 | 0.0320 | (32,081) |
| 20350073 | 20350073 | DEFAULTS | CDX_IG_0613 | 08-Sep-2008 | 20-Jun-2013 | B | USD | 20,000,000 | 0.0146 | (148,050) |
| 20350386 | 20350386 | DEFAULTS | CMBX_NA_AAA_4 | 08-Sep-2008 | 17-Feb-2051 | S | USD | 20,000,000 | | (1,610,432) |
| 20350387 | 20350387 | DEFAULTS | CMBX_NA_AAA_4 | 08-Sep-2008 | 17-Feb-2051 | S | USD | 20,000,000 | | (1,610,432) |
| 20350861 | 20350861 | DEFAULTS | EXPE | 09-Sep-2008 | 20-Dec-2013 | S | USD | 10,000,000 | 0.0320 | 53,687 |
| 25051144 | 25051144 | DEFAULTS | SOAF | 29-May-2008 | 20-Jun-2013 | S | USD | 10,000,000 | 0.0189 | (41,559) |
| 25057274 | 25057274 | DEFAULTS | ICELND | 18-Jun-2008 | 20-Sep-2013 | S | USD | 10,000,000 | 0.0240 | (254,001) |
| 3071765 | 3071765 | DEFAULTS | PDVSA | 23-May-2007 | 20-Sep-2009 | B | USD | 20,000,000 | 0.0624 | (525,789) |
| 3576578 | 3576578 | DEFAULTS | TX_HOU_MUNI | 14-Jan-2008 | 20-Mar-2018 | S | USD | 10,000,000 | 0.0030 | 31,306 |
| 3576593 | 3576593 | DEFAULTS | SDCA_MUNI | 14-Jan-2008 | 20-Mar-2018 | S | USD | 10,000,000 | 0.0106 | (274,647) |
| 3576659 | 3576659 | DEFAULTS | NV_CLKC_MUNI | 14-Jan-2008 | 20-Mar-2018 | S | USD | 10,000,000 | 0.0089 | (275,111) |
| 3580256 | 3580256 | DEFAULTS | SDCA_MUNI | 15-Jan-2008 | 20-Mar-2018 | S | USD | 10,000,000 | 0.0106 | (281,307) |
| 3580354 | 3580354 | DEFAULTS | NV_CLKC_MUNI | 15-Jan-2008 | 20-Mar-2018 | S | USD | 10,000,000 | 0.0089 | (275,111) |
| 3704953 | 3704953 | DEFAULTS | CMBX_NA_AAA_4 | 10-Mar-2008 | 17-Feb-2051 | S | USD | 10,000,000 | | (805,216) |
| 3831501 | 3831501 | DEFAULTS | ABX_HE_PENAAA07 | 14-May-2008 | 25-Jan-2038 | B | USD | 10,000,000 | | 4,467,411 |
| 3967563 | 3967563 | DEFAULTS | NV_CLKC_MUNI | 18-Jul-2008 | 20-Sep-2018 | S | USD | 10,000,000 | 0.0089 | (133,760) |
| 3997601 | 3997601 | DEFAULTS | NV_CLKC_MUNI | 06-Aug-2008 | 20-Sep-2018 | S | USD | 5,000,000 | 0.0089 | (37,440) |
| DEFAULT SWAPS TOTAL: | | | | | | | | | | (32,589,807) |

## Deal - Specific Breakdown (Scheduled)

| GID | RMS ID | Trade Date | Effective Date | Maturity Date | Notional CCY | Notional Amount CCY | Independent Requirement Percent | Independent Requirement (USD) |
|---|---|---|---|---|---|---|---|---|
| 20260841 | 20260841 | 03-Jun-2008 | 04-Jun-2008 | 20-Sep-2013 | USD | 5,000,000 | 15.00 | 750,000 |
| 20318190 | 20318190 | 31-Jul-2008 | 01-Aug-2008 | 20-Sep-2013 | USD | 5,000,000 | 8.50 | 425,000 |
| 20329030 | 20329030 | 11-Aug-2008 | 12-Aug-2008 | 20-Sep-2013 | USD | 2,000,000 | 15.00 | 300,000 |
| 3831501 | 3831501 | 14-May-2008 | 14-May-2008 | 25-Jan-2008 | USD | 10,000,000 | 5.00 | 500,000 |
| 20350073 | 20350073 | 08-Sep-2008 | 21-Mar-2008 | 20-Jun-2013 | USD | 20,000,000 | 2.00 | 400,000 |

DEAL-SPECIFIC BREAKDOWN TOTAL: 2,375,000

## Collateral Data

| Deal ID | Coll Type | Security ID | Security Description | Maturity Date | CCY | Dirty Price | Quantity | Market Value (USD) |
|---|---|---|---|---|---|---|---|---|
| | IND | USD | UNITED STATES DOLLARS | | USD | 0.00 | 744,000 | 744,000 |
| | VAR | USD | UNITED STATES DOLLARS | | USD | 0.00 | (28,167,000) | (26,167,000) |

COLLATERAL DATA TOTAL: (25,423,000)