KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
Iskender H. Catto (IC 4364)

*Counsel to Venoco, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                               :
In re                                                          :    Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,    :    Case No. 08-13555 (JMP)
                                                               :
              Debtors.                                  :    Jointly Administered
                                                               :
---------------------------------------------------------------x

**RESPONSE OF VENOCO, INC. TO DEBTORS' SIXTY-SEVENTH
OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

Venoco, Inc. ("Venoco") files this response to the *Debtors' Sixty-Seventh Omnibus Objection to Claims (Valued Derivative Claims)* [Docket No. 12533] (the "Claims Objection"), and respectfully states as follows:

**BACKGROUND**

1.  Venoco entered into that certain ISDA Master Agreement (the "Master Agreement") and schedule thereto (the "Schedule") with Lehman Brothers Commodity Services, Inc. ("LBCS"), each dated as of January 12, 2007. True and correct copies of the Master Agreement and Schedule are attached hereto as **Exhibit A** and **Exhibit B**, respectively. Contemporaneously therewith, LBCS's corporate parent, Lehman Brothers Holdings, Inc. ("LBHI"), guaranteed LBCS's obligations under the Master Agreement pursuant to a guarantee

(the "Guarantee") dated as of January 12, 2007. A true and correct copy of the Guarantee is attached hereto as **Exhibit C**.

2. On September 15, 2008 (the "Petition Date"), LBHI and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 the United States Code (the "Bankruptcy Code"). LBHI's bankruptcy filing constituted an Event of Default under section 5(a)(vii) of the Master Agreement because LBHI served as a Credit Support Provider under the Master Agreement.

3. Exercising its rights under section 560 of the Bankruptcy Code and sections 6(a)-(b) of the Master Agreement, Venoco provided notice of its early termination of the Master Agreement (the "Early Termination Letter") to LCBS on September 18, 2008. A true and correct copy of the Early Termination Letter is attached hereto as **Exhibit D**. Pursuant to the Early Termination Letter, Venoco advised LBCS that Venoco had elected to terminate all then-outstanding Transactions (as that term is defined in the Master Agreement), effective as of September 18, 2008 (the "Early Termination Date"). In addition, the Early Termination Letter specifically listed the Transactions that were being terminated for the avoidance of doubt.

4. On October 2, 2008, Venoco provided LBCS with its calculations of the early termination payments owed by LBCS (the "Valuation Letter") pursuant to section 6(d) of the Master Agreement. A true and correct copy of the Valuation Letter is attached hereto as **Exhibit E**. Specifically, the Valuation Letter set forth that the net amount due to Venoco as a result of the early termination was $1,168,108.00 and Venoco requested immediate payment of that amount. Venoco subsequently determined that the amounts set forth in the Valuation Letter should be revised to $710,506.00 and used that amount in its POCs (as defined herein).

5. On July 2, 2009, this Court entered the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* [Docket No. 4271] (the "Bar Date Order") setting September 22, 2009, as the deadline for filing proofs of claim against the Debtors.  In addition, the Bar Date Order provided that "each holder of a claim against a Debtor based on amounts owed pursuant to any Derivative Contract must . . . complete the electronic Derivative Questionnaire [and] electronically upload supporting documentation on the website . . . ." Bar Date Order at 7.  The Bar Date Order further provided that "each holder of a claim against a Debtor based on [a Guarantee] must . . .  complete the electronic Guarantee Questionnaire [and] electronically upload supporting documentation and evidence of the underlying claim amount on the website . . . ." Id.  The Bar Date Order established October 22, 2009, as the deadline for filing the Derivative Questionnaire and the Guarantee Questionnaire. Id.

6. On May 15, 2009, Venoco filed proof of claim number 4479 ("POC 4479") asserting a general unsecured claim of $710,506.00 against LBCS representing early termination payments due and owing to Venoco as of the Early Termination Date pursuant to the Master Agreement and the Schedule and proof of claim number 4480 ("POC 4480," and together with POC 4479, the "POCs") asserting a general unsecured claim against LBHI for the same amount (pursuant to the Guarantee).

7. On October 22, 2009, Venoco completed and filed the Derivative Questionnaire in connection with POC 4479 and the Guarantee Questionnaire (together with the Derivative Questionnaire, the "Questionnaires") in connection with POC 4480.

3

8. On November 3, 2010, the Debtors filed the Claims Objection. In the Claims Objection, the Debtors assert that the amounts set forth in the POCs "are greater than the fair, accurate, and reasonable values determined by the Debtors." Claims Objection at ¶2. The Claims Objection proposes to allow Venoco's claims, each in the significantly reduced amount of $133,585.17.

**RESPONSE**

9. Venoco disputes the Debtors' assertions in the Claims Objection, and re-asserts that the proper amount of the Claims is $710,506.00. Accordingly, the Claim Objection should be overruled with regard to the POCs.

10. The Master Agreement provides: "On or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculation on its part, if any, contemplated by Section 6(e) [the provision related to payments upon early termination] and will provide to the other party a statement . . . showing, in reasonable detail, such calculations." Ex. A, § 6(d)(i).

11. In the Schedule, the parties selected a "Loss" methodology of calculating the amount due following an Early Termination Date. Under the Loss methodology, the non-defaulting party "determines in good faith . . . its total losses and costs (or gain . . .) in connection with [the] Agreement." Id. at § 14.

12. Venoco has complied with the foregoing contractual requirements. It has calculated, in good faith, the amount of its loss in connection with the early termination of the Transactions under the Master Agreement.

13. In addition, Venoco has complied with the myriad requirements of this Court in timely filing the POCs, timely submitting the Questionnaires, as well as providing all supporting documentation in accordance with the Bar Date Order.

14.  Pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." See also In re DJK Residential LLC, 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009); In re Hess, 404 B.R. 747, 750 (Bankr. S.D.N.Y. 2009). The POCs, therefore, are prima facie evidence of the validity and amount of Venoco's claims. Accordingly, the Debtors, who now seek to object to the POCs, must produce "sufficient evidence" to negate the proof of claim's prima facie validity. In re Adelphia Commc'ns Corp., Case No. 02-41729, 2007 WL 601452 at *5 (Bankr. S.D.N.Y. Feb. 20, 2007); see also J.P. Morgan Sec's, Inc. v. Spiegel Creditor Trust (In re Spiegel, Inc.), Case Nos. 03-11540, 06-CV-13477, 2007 WL 2456626 at *15 n.6 (S.D.N.Y. Aug. 22, 2007).

15.  The Debtors have failed to meet this burden in their Claims Objection. Indeed, the mere act of filing a claims objection is insufficient to "deprive the proof of claim of presumptive validity unless the objection is supported by *substantial evidence*." Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir. 1993) (emphasis in original); Wright v. Holm (In re Holm), 931 F.2d 620, 623 (9th Cir. 1991) ("[a] proof of claim is some evidence as to its validity and amount . . . [and] is strong enough to carry over a mere formal objection without more."); Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.), Case No. 98 Civ. 4990, 1999 WL 178788 at *4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim.") (emphasis in original). Sufficient evidence is evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. See In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); DJK, 416 B.R. at 104, Spiegal, 2007 WL 2456626 at *15. The Claims Objection is not supported by any evidence whatsoever. To the

5

contrary, the Claims Objection includes only cursory and conclusory statements of disagreement. In fact, the only portions that approach even substantive criticism of Venoco's claims are variations of the statement "the amounts listed on the proofs of claim are greater than the fair, accurate and reasonable values determined by the Debtors." Claims Objection at ¶2; see also id. at ¶¶ 11, 13. Even taking into consideration the additional "Permitted Grounds" for omnibus claims objections in the Court's *Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objection Procedures*, dated January 14, 2010 [Docket No. 6664], the Debtors have failed to provide the Court with any justification for requesting the reduction of Venoco's claim, let alone any documentary support for such reduction. The Debtors simply have not met their burden of production to overcome the prima facie validity of Venoco's claims at this point in time, and the Claims Objection should be overruled with respect to Venoco's POCs.

## **RESERVATION OF RIGHTS**

16. Venoco hereby reserves the right to supplement and/or amend its response to the Claims Objection at any time to the extent it deems appropriate. Venoco also reserves the right to request a full evidentiary hearing with respect to the POCs and the Claims Objection (and all accompanying procedural rights and protections) pursuant to Bankruptcy Rule 9014(e) and Rule 9014-2 of the Local Rules of Bankruptcy Procedure for the Southern District of New York.

*[Remainder of page intentionally left blank.]*

WHEREFORE, Venoco respectfully requests that the Court (a) overrule the Claims Objection as it pertains to the POCs, (b) allow the POCs in the amounts asserted therein, and (c) grant Venoco such further relief as the Court deems just and appropriate.

Dated: December 3, 2010　　　　　　　　　　*/s/ Iskender H. Catto*
New York, New York　　　　　　　　　　　　Iskender H. Catto (IC 4364)
　　　　　　　　　　　　　　　　　　　　　KIRKLAND & ELLIS LLP
　　　　　　　　　　　　　　　　　　　　　601 Lexington Avenue
　　　　　　　　　　　　　　　　　　　　　New York, New York  10022
　　　　　　　　　　　　　　　　　　　　　Telephone:  (212) 446-4800
　　　　　　　　　　　　　　　　　　　　　Facsimile:   (212) 446-4900

　　　　　　　　　　　　　　　　　　　　　*Counsel to Venoco, Inc.*