Hearing Date and Time: December 22, 2010 at 10:00 a.m. (EST)

ALSTON & BIRD LLP

Karl Geercken
William Sugden (admitted *pro hac vice*)
90 Park Avenue
New York, New York, 10016-1387
Telephone: (212) 210-9400
Facsimile: (212) 210-9444

*Counsel to Aozora Bank, Ltd.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
| | |
|---|---|
| In re : | Chapter 11 |
| : | |
| Lehman Brothers Holdings Inc., *et al.*, : | Case No. 08-13555 (JMP) |
| : | |
| Debtors. : | (Jointly Administered) |

-------------------------------------------------------x

**RESPONSE OF AOZORA BANK, LTD. TO THE DEBTORS' SIXTY-SEVENTH
OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

Aozora Bank, Ltd. ("Aozora") submits this response (the "Response") to the Debtors' Sixty-Seventh Omnibus Objection to Claims (Valued Derivative Claims) (Docket No. 12533; the "Omnibus Objection"). In support of the Response, Aozora respectfully submits as follows:

**Preliminary Statement**

Aozora properly and timely filed two proofs of claim (as defined further below, the "Aozora Derivative Claims") each in the amount of $23,559,819.67 against Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Brothers Special Financing, Inc. ("LBSF"); in doing so, it fully complied with the requirements of the appropriate Derivative and Guarantee Questionnaires (defined below). The Omnibus Objection seeks to reduce the allowed amounts of Aozora's claims by more than $6.7 million because, the

Debtors assert, the properly filed claims "are greater than the fair, accurate, and reasonable values determined by the Debtors." (*See* Omnibus Objection ¶¶ 2, 11, 13, 14, 16.)  No further justification is set forth and no evidence is provided to support the Omnibus Objection.  Aozora, on the other hand, has submitted substantial information substantiating the Aozora Derivative Claims in its proofs of claim and the Derivative and Guarantee Questionnaires.  The Debtors' bare assertions in the Omnibus Objection are insufficient to overcome the presumption that the properly and timely filed Aozora Derivative Claims are deemed allowed pursuant to Rule 3001(f) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Based upon the record currently available, there is no basis upon which to reduce the Aozora Derivatives Claims as requested in the Omnibus Objection.  Accordingly, the Court should deny the Omnibus Objection with respect to the Aozora Derivative Claims.

A hearing is currently scheduled for December 22, 2010 on the Omnibus Objection.  Aozora requests that, if the Debtors proceed on the Omnibus Objection with respect to the Aozora Derivative Claims, any such hearing be limited by the scope of the Omnibus Objection itself.  If the Debtors intend to raise further or additional bases for reducing the amount of the Aozora Derivatives Claims (for example, by way of a reply in further support of the Omnibus Objection), the December 22 hearing should be continued so as to Aozora to permit Aozora a fair and appropriate opportunity to respond to such additional or further positions.

**Procedural Background**

1. On September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries (collectively, the "Debtors") commenced voluntary cases under chapter

11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. LBSF is one of LBHI's subsidiaries that commenced a case before this Court.

2. On September 16, 2008, the Court entered an order authorizing the Debtors to employ Epiq Bankruptcy Solutions, LLC ("Epiq") as their claims and noticing agent. (Docket No. 50.)

3. On July 2, 2009, the Court entered an order setting forth procedures for filing proofs of claim in these chapter 11 cases (the "Bar Date Order"). Among other things, the Bar Date Order:

    a. established September 22, 2009, at 5:00 p.m. (EST) as deadline to file proofs of claim (the "Bar Date") (*see* Bar Date Order at 2);

    b. provided that "each holder of a claim against a Debtor based on amounts owed pursuant to any Derivative Contract must . . . on or before October 22, 2009, at 5:00 p.m. (prevailing Eastern Time) (the "Questionnaire Deadline") . . . complete the electronic Derivative Questionnaire . . . [and] electronically upload supporting documentation on the website . . ." (*id.* at 7); and

    c. provided that "each holder of a claim against a Debtor based on amounts owed pursuant to a promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance (a "Guarantee") must . . . on or before the Questionnaire Deadline . . . complete the electronic Guarantee Questionnaire . . . [and] electronically upload supporting documentation and evidence of the underlying claim amount on the website . . ." (*id.* at 7-8).

4. Pursuant to the Bar Date Order, on September 16, 2009, Aozora timely submitted to Epiq a completed and executed proof of claim asserting a claim (the "Derivative Claim") in the amount of $23,559,819.67 plus all other fees, expenses, and interest allowed under applicable law against LBSF based on a Derivative Contract.[1]

---

[1] The term "Derivative Contract" has the meaning ascribed to it in the Bar Date Order.

Epiq assigned claim number 13907 to the proof of claim evidencing the Derivative Claim. A true and correct copy this proof of claim is submitted herewith as Exhibit A.

5.  Pursuant to the Bar Date Order, on September 16, 2009, Aozora timely submitted to Epiq a completed and executed proof of claim asserting a claim (the "Guarantee Claim" and together with the Derivative Claim, the "Aozora Derivative Claims") in the amount of $23,559,819.67 plus all other fees, expenses, and interest allowed under applicable law against LBHI based on LBHI's Guarantee of the Derivative Claim. Epiq assigned claim number 15627 to the proof of claim evidencing the Guarantee Claim. A true and correct copy this proof of claim is submitted herewith as Exhibit B.

6.  Pursuant to the Bar Date Order, on October 20, 2009, with respect to the Derivative Claim, Aozora completed the electronic Derivative Questionnaire[2] and submitted it and all requested supporting documentation via http://www.lehman-claims.com.

7.  Pursuant to the Bar Date Order, on October 20, 2009, with respect to the Guarantee Claim, Aozora completed the electronic Guarantee Questionnaire[3] and

---

[2]    The term "Derivative Questionnaire" has the meaning ascribed to it in the Bar Date Order. Aozora is not, at this time, attaching a copy of its properly filed Derivative Questionnaire to this Response. The Debtors are already in possession of Aozora's Derivative Questionnaire. Aozora will introduce a true and correct copy of its Derivative Questionnaire into evidence at any evidentiary hearing on the Omnibus Objection. The Debtors' make no assertion in the Omnibus Objection that Aozora did not properly and timely file its Derivative Questionnaire.

[3]    The term "Guarantee Questionnaire" has the meaning ascribed to it in the Bar Date Order. Aozora is not, at this time, attaching a copy of its properly filed Guarantee Questionnaire to this Response. The Debtors are already in possession of Aozora's Guarantee Questionnaire. Aozora will introduce a true and correct copy of its Guarantee Questionnaire into evidence at any evidentiary hearing on the Omnibus Objection. The Debtors' make no assertion in the Omnibus Objection that Aozora did not properly and

submitted it and all requested supporting documentation via http://www.lehman-claims.com.

## Response

8. The Court should deny the Omnibus Objection with respect to the Aozora Derivative Claims in all respects for either of two reasons. First, the Omnibus Objection is insufficient as a matter of law to overcome the presumption of validity afforded to the Aozora Derivative Claims by Bankruptcy Rule 3001(f). Second, the record amply supports allowing the Aozora Derivative Claims in their full filed amounts.

A. <u>The Omnibus Objection is insufficient as a matter of law.</u>

9. Bankruptcy Rule 3001(f) provides, "A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f).

10. To overcome this prima facie evidence, the objector must present "sufficient evidence." *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) (quoting *In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987)) *see also In re Spiegel, Inc.*, No. 03-11540, 2007 WL 2456626, at *15 n.16 (Bankr. S.D.N.Y. Aug. 22, 2007) (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)).

11. This evidence must be "'equal in force to the prima face case'" and must, if believed, "'refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny*, 954 F.2d at 173-74)).

---

timely file its Guarantee Questionnaire.

12.     A mere objection is not sufficient to rebut the claimant's prima facie evidence. *See Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, No. 98-4990, 1999 WL 178788, at *3-4 (S.D.N.Y. March 31, 1999) ("To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim.") (collecting cases).

13.     The Debtors provide no evidence to support the Omnibus Objection. Furthermore, the Debtors do not describe in any detail, or any specificity whatsoever, the basis for their assertion that the Aozora Derivatives Claims are "greater than the fair, accurate, and reasonable values determined by the Debtors." This is insufficient to rebut the presumption of validity afforded to the Aozora Derivative Claims by Bankruptcy Rule 3001(f). Accordingly, the Omnibus Objection should be denied with respect to the Aozora Derivative Claims because the Debtors have failed to carry the burden imposed on them by the Bankruptcy Rules.

B.      <u>The Aozora Derivative Claims are appropriate and consistent with the calculations required under the parties' operative documents.</u>[4]

14.     Aozora and LBSF were parties to a 1992 ISDA Master Agreement (including the Schedule thereto, as supplemented by the ISDA Credit Support Annex) dated as of April 21, 2003 (the "<u>Master Agreement</u>").

15.     LBHI executed a Guarantee of Lehman Brothers Holdings Inc., dated April 21, 2003, pursuant to which LBHI unconditionally guaranteed to Aozora payment of all amounts payable by LBSF under the Master Agreement (the "<u>Guarantee</u>").

16.     Pursuant to section 5(a)(vii) of the Master Agreement, LBHI's bankruptcy filing was an Event of Default. On September 16, 2008, pursuant to section 6(a) of the

---

[4] The Debtors are in possession of all documents described in this Response. At any evidentiary hearing on the Omnibus Objection, Aozora will submit all documents referred to in this Response, among others, into evidence.

- 6 -

Master Agreement, Aozora sent LBSF by hand delivery and facsimile transmission a notice of termination of all Transactions effective as of September 17, 2008; that date thereby constituted the Early Termination Date pursuant to the Master Agreement. Substantially contemporaneously therewith, Aozora also sent LBHI by hand delivery and facsimile transmission a notice of termination of all Transactions under the Master Agreement.

17. In the Schedule to the Master Agreement, the parties agreed that, for purposes of calculating the Early Termination Payment, the "Market Quotation" and "Second Method" would apply. The Master Agreement provides that, upon termination due to an Event of Default,

> an amount will be payable equal to (A) the sum of the Settlement Amount (determined by the ***Non-defaulting Party*** [Aozora])[5] in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party. If that amount is a positive number, the Defaulting Party will pay it to the Non-defaulting Party . . . .

(Master Agreement § 6(e)(i)(3) (emphasis added)).[6]

18. The Master Agreement defines the Settlement Amount, in part, as "such party's Loss … for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation cannot be determined or would not (in the reasonable belief of the party making the determination) produce a commercially reasonable result."

---

[5] As the Non-defaulting Party, Aozora is entitled to determine the Settlement Amount.

[6] Aozora and LBSF did not designate the payment measure or the payment method in the Schedule to the Master Agreement, and thus the "Market Quotation" measure and the "Second Method" apply by default. (Master Agreement § 6(e).)

19. "Loss" is in turn defined, in part, as:

> [T]he Termination Currency Equivalent of an amount that party reasonably determined in good faith to be its total loss or costs . . . in connection with [the] Agreement . . . including any loss of bargain, cost of funding or, at the election of such party but without duplication, loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position.

(Master Agreement § 14.)

20. In addition, the Master Agreement provides as follows:

> Prior to the occurrence or effective designation of an Early Termination Date in respect of the relevant Transaction, a party that defaults in the performance of any payment obligation will, to the extent permitted by law and subject to Section 6(c), be required to pay interest (before as well as after judgment) on the overdue amount to the other party on demand in the same currency as such overdue amount, for the period from (and including) the original due date for payment to (but excluding) the date of actual payment, at the Default Rate. Such interest will be calculated on the basis of daily compounding and the actual number of days elapsed.

(Master Agreement § 2(e).)

21. "'Default Rate' means a rate per annum equal to the cost (without proof or evidence of any actual cost) to the relevant payee (as certified by it) if it were to fund or of funding the relevant amount plus 1% per annum." (Master Agreement § 14.) Thus, as of the date on which Aozora submitted proofs of claim related to the Derivative Claim and the Guarantee Claim, Aozora was owed Default Interest totaling $10,160.40. Default Interest continues to accrue at the Default Rate, and Aozora reserves its rights to supplement the Aozora Claims accordingly.

22. Furthermore, the Master Agreement provides as follows:

> A Defaulting Party will, on demand, indemnify and hold harmless the other party for and against all reasonable out-

- 8 -

>of-pocket expenses, including legal fees and Stamp Tax, incurred by such other party by reason of the enforcement and protection of its rights under this Agreement or any Credit Support Document to which the Defaulting Party is a party or by reason of the early termination of any Transaction, including, but not limited to, costs of collection.

(Master Agreement § 11.)

23. By letter dated September 22, 2008, Aozora sent LBSF a "Notice of Early Termination Amount" (the "<u>Termination Amount Notice</u>"). The Termination Amount Notice sets forth in detail the basis for Aozora's claims against LBSF under the Master Agreement. The Termination Amount Notice informed LBSF that Aozora was required to rely upon the Loss Method to calculate its damages because it could not obtain Market Quotations. It further detailed the names of the eight market makers from whom Aozora requested market quotations and explains that none of these market makers provided market quotations. It then provided trade level detail for Aozora's calculated Loss including hedge costs, and calculated the Early Termination Payment (net of collateral against which Aozora offset) at $23,327,695.98 (based upon the then-applicable yen to dollar exchange rate).

24. Thereafter, as detailed above, Aozora filed the Aozora Derivatives Claims in accordance with the Bar Date Order. The Aozora Derivatives Claims provide for a total claim amount against LBSF (and LBHI under the Guarantee) of $23,559,819.67. Similarly, Aozora timely and fully complied with the requirement to complete the Derivative Questionnaire and the Guarantee Questionnaire. The difference between the calculated amount of the Early Termination Payment and the filed claim includes certain unpaid interest amounts and legal fees that may be properly included, as detailed above. Aozora has continued to incur legal fees and related expenses in connection with

- 9 -

enforcing and protecting its rights under the Master Agreement in these cases, and Aozora intends to supplement the amount of fees and expenses requested in the Aozora Derivative Claims accordingly, including the fees and costs it incurs related to responding to the Omnibus Objection.

25. Accordingly, based on the foregoing, under the Master Agreement, LBSF owes Aozora $23,559,819.67 plus all other fees, expenses, and interest allowable under applicable law, as of the date the Derivative Claim was filed. Since LBSF has not paid Aozora any of these amounts, under the Guarantee, LBHI owes Aozora $23,559,819.67 plus all other fees, expenses, and interest allowable under applicable law, as of the date the Guarantee Claim was filed. These are the correct amounts for the Aozora Claims, and the Debtors have provided no evidence whatsoever to the contrary.

26. In light of the foregoing, the Omnibus Objection should be denied in all respects in regard to the Aozora Derivative Claims because (i) it is deficient as a matter of law in that it fails to identify, let alone establish, any basis for any reduction of the Aozora Claims, and (ii) the amounts requested in the Aozora Derivative Claims (a) are fully supported by the Master Agreement and the other relevant governing documents and (b) have been submitted in accordance with the Bankruptcy Rules and all other applicable Orders in these Cases.

**WHEREFORE**, Aozora respectfully requests that the Court deny the Omnibus Objection with respect to the Aozora Claims and grant such other relief as it deems just and proper.

Respectfully submitted this 6th day of December 2010.

        ALSTON & BIRD LLP

By:   /s/ William Sugden
      Karl Geercken
      William Sugden (admitted *pro hac vice*)
      90 Park Avenue
      New York, New York, 10016-1387
      Telephone: (212) 210-9400
      Facsimile: (212) 210-9444

*Counsel to Aozora Bank, Ltd.*