Hearing Date: December 22, 2010 at 10:00 a.m. (Eastern Time)
Response Deadline: December 6, 2010 at 4:00 p.m. (Eastern Time)

**FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP**
One New York Plaza
New York, NY 10004
Telephone: 212-859-8000
Facsimile: 212-859-4000
Shannon Nagle, Esq.
Richard Tisdale, Esq.
*Counsel for Commonwealth Bank of Australia*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                              :
**In re**                                                     :   **Chapter 11 Case No.**
                                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                  :   **08-13555 (JMP)**
                                                              :
                          Debtors.                            :   **(Jointly Administered)**
-------------------------------------------------------------x

**RESPONSE TO DEBTORS' SIXTY-SEVENTH OMNIBUS OBJECTION TO
CLAIMS (VALUED DERIVATIVE CLAIMS) [Docket 12533]**

Commonwealth Bank of Australia (the "Claimant"), by and through its undersigned counsel, hereby submits this response (the "Response") to the Debtors' Sixty-Seventh Omnibus Objection to Claims (Valued Derivative Claims) (the "Objection") [Docket 12533] and in support thereof states as follows:[1]

**Background**

1.    The Claimant and Lehman Brothers Commercial Corporation ("LBCC") are each party to an International Swaps and Derivatives Association, Inc. 1992 Master Agreement, dated as of July 28, 2006 (as amended, restated, modified and/or supplemented from time to time and together with all schedules and exhibits thereto, and the LBCC Confirmations (as defined below)

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Master Agreements, which are attached as exhibits to the Proofs of Claim.

entered into in connection therewith, the "LBCC Master Agreement"). The Claimant and LBCC are also parties to certain transactions governed by the LBCC Master Agreement, the economic terms of which are set forth in related written confirmations (as amended, restated, modified and/or supplemented from time to time and together with all schedules and exhibits thereto, the "LBCC Confirmations"). Lehman Brothers Holdings Inc. ("LBHI") unconditionally guaranteed the obligations of LBCC under the LBCC Master Agreement pursuant to that certain guarantee (the "LBCC Guarantee"), dated August 15, 2006.

2. The Claimant and Lehman Brothers Special Financing Inc. ("LBSF") are each party to an International Swaps and Derivatives Association, Inc. 1992 Master Agreement, dated as of July 28, 2006 (as amended, restated, modified and/or supplemented from time to time and together with all schedules and exhibits thereto, and the LBSF Confirmations (as defined below) entered into in connection therewith, the "LBSF Master Agreement," and together with the LBCC Master Agreement, the "Master Agreements"). The Claimant and LBSF are also parties to certain transactions governed by the LBSF Master Agreement, the economic terms of which are set forth in related written confirmations (as amended, restated, modified and/or supplemented from time to time and together with all schedules and exhibits thereto, the "LBSF Confirmations"). LBHI unconditionally guaranteed the obligations of LBSF under the LBSF Master Agreement pursuant to that certain Guarantee (the "LBSF Guarantee," and together with the LBCC Guarantee, the "Guarantees"), dated July 31, 2006.

3. On September 15, 2008, LBHI filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4. In response to LBHI's chapter 11 filing, the Claimant transmitted notices (the "Termination Notices") to each of LBCC and LBSF on September 15, 2008 that (i) specified that

2

an Event of Default under Section 5(a)(vii) of the respective Master Agreements (i.e., the bankruptcy of LBHI as Credit Support Provider) had occurred, and (ii) designated September 15, 2008 as the Early Termination Date under each Master Agreement for all outstanding transactions pursuant to Section 6(a) of the respective Master Agreements.

5. On October 3 and October 5, 2008, respectively, LBSF and LBCC filed voluntary petitions under chapter 11 of the Bankruptcy Code. LBSF's and LBCC's cases have been administratively consolidated with the chapter 11 cases of LBHI and its other debtor affiliates.

6. On December 2, 2008, the Claimant sent LBCC and LBSF the statements of the calculations contemplated by Section 6(e) and required by Section 6(d)(i) of the Master Agreements (the "Section 6(d)(i) Statements") together with supporting data upon which it relied to determine the Early Termination Amounts under each Master Agreement.

7. On September 17, 2009, the Claimant timely filed proofs of claim against LBCC (assigned Claim No. 14796) and LBHI as guarantor (assigned Claim No. 14797) (together, the "LBCC Proofs of Claim") in respect of the LBCC Master Agreement and the LBCC Guarantee, respectively, that asserted claims of $2,980,498.92 against LBCC (the "LBCC Primary Claim") and $2,976,468.18 against LBHI (the "LBCC Guarantee Claim," and together with the LBCC Primary Claim, the "LBCC Claims"), plus, as part of each of the LBCC Claims, subsequently accruing interest and incurred expenses under the LBCC Master Agreement.

8. On September 17, 2009, the Claimant timely filed proofs of claim against LBSF (assigned Claim No. 14798) and LBHI as guarantor (assigned Claim No. 14799) (together, the "LBSF Proofs of Claim, and together with the LBCC Proofs of Claim, the "Proofs of Claim") in respect of the LBSF Master Agreement and the LBSF Guarantee, respectively, that asserted claims for $38,986,539,54 against LBSF (the "LBSF Primary Claim") and $38,938,357.70

3

against LBHI (the "LBSF Guarantee Claim," and together with the LBSF Primary Claim, the "LBSF Claims," and together with the LBCC Claims, the "Claims"), plus, as part of each of the LBSF Claims, subsequently accruing interest and incurred expenses under the LBSF Master Agreement.

9. The Proofs of Claim were accompanied by, among other things, copies of the respective Master Agreements, Guarantees, Termination Notices, Section 6(d)(i) Statements, schedules of Early Termination Amount calculations, and schedules of interest calculation. Later, these same documents, together with other detailed data, all having been formatted according to the Debtors' specifications, were uploaded to the website of the Debtors' claims agent as required by order of this Court, dated July 2, 2009 [Docket No. 4271], in respect of claims based on amounts owed pursuant to any derivative contract or guarantee thereof.

10. Since that time, the Claimant has provided further information to LBSF and LBHI as requested.

11. By the Objection, the Debtors seek to reduce the Claims and classify each Claim as unsecured. The Objection summarily states that the amounts listed on the Proofs of Claim are "greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records" and that the classifications are "improperly identified as secured, administrative expenses or priority claims . . . ." Objection at ¶¶ 2, 11, 13. The Objection proposes to allow the reclassified Claims in significantly reduced amounts. The Debtors do not, however, address the Master Agreements, the Guarantees, the Section 6(d)(1) Statements or any of the related documents or other detailed information provided to them, state how the value calculated by the Claimant is flawed, or provide any data in support of their own figures. Instead, the Debtors merely set forth a generic

4

description of the process they purportedly utilized to review claims based on derivative contracts across multiple creditors. Reference to specific facts about Claimant's Claims is entirely absent, as are any arguments to refute the merits of the Claims as filed.

## **Argument**

12. A properly filed proof of claim establishes *prima facie* evidence of the validity and amount of the claim.[2]  Fed. R. Bankr. P. 3001(f).

13. The objecting party has the burden of presenting sufficient evidence to overcome the *prima facie* validity of a properly filed claim. *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *see also In re Greene*, 71 B.R. 104, 106 (Bankr. S.D.N.Y. 1987) (stating that the *prima facie* validity of a properly filed claim "compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case."). In this context, courts have described sufficient evidence as "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (quoting *In re Allegheny Int'l, Inc.* 954 F.2d 167, 173-74 (3d Cir. 1992)); *In re Spiegel, Inc.*, Case Nos. 03-11540 (BRL), 06-cv-13447 (CM), 2007 WL 2456626, at *15 n.6 (S.D.N.Y. Aug. 22, 2007) (evidence must refute at least one allegations essential to the claim's legal sufficiency); *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (evidence must be equal in force to the *prima facie* case). "Mere objections," without more, do not constitute sufficient evidence and are insufficient to refute the *prima facie* validity of a properly filed claim. *In re Make Meat Corp.*, Case No. 98-cv-4990 (HB), 1999 WL 178788, at *3-4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim.").

---

[2] The Debtors do not contend that Commonwealth Bank of Australia's Proofs of Claim were improperly filed.

14. In this case, the Debtors failed to provide *any* evidence to rebut the *prima facie* validity of the Claims. Indeed, the Debtors have produced no information or data at all to support why the Claims should be reclassified or how the Debtors' "Modified Claim Amounts" (as defined in the Objection) were calculated, relying instead on the repetition of unsubstantiated assertions that the amounts listed in the Proofs of Claim are "greater than the fair, accurate, and reasonable values determined by the Debtors" and the Claims should be reclassified because they "improperly assert secured, administrative expenses or priority claims . . . ." Objection at ¶¶ 2, 11, 13. As a substitute for the detail necessary to rebut the *prima facie* validity of the Claims, the Objection merely describes a general process that was purportedly used to reach the amounts the Debtors suggest are appropriate. To the extent that the Objection pertains to the Claimant's Claims, it should accordingly be denied.

15. The Objection, which is substantive rather than procedural in nature, reserves a purported right to make additional objections to the Claims. The Debtors should not be permitted to make any further objections to the Claims. The proposed order submitted with the Objection would have the effect of allowing the Claims in the Modified Claim Amounts that the Debtors assert "properly reflect[s] the fair, accurate, and reasonable valuation of these claims." Objection at ¶ 16. The Debtors should not be permitted, therefore, to later argue that new figures, lower than the Modified Claim Amounts, are accurate merely because the Claimant has opposed the Objection and maintained its view of the correct figures – a view actually supported with evidence and detailed explanation – as set forth in the Proofs of Claim.

16. Moreover, the Claimant has complied with all the requirements of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and this Court's orders. It has honored the Debtors' requests for further information since filing the Proofs of Claim and uploading

6

information with the Debtors' claims agent, at each stage incurring substantial new costs. It will now suffer the additional costs of responding to this Objection, which fails to address any of the evidence, information or calculations provided or offer any new evidence to rebut what has been presented. The Objection should therefore be denied with prejudice to further objection and the Claims should be allowed as classified and in the amounts set forth in the Proofs of Claim, including interest and all fees, costs and expenses incurred by the Claimant in connection with the Objection, as provided for in the Master Agreements. *See Ogle v. Fidelity & Deposit Co. of Md.*, 586 F.3d 143, 147 (2d Cir. 2009) (holding that an unsecured claim for post-petition fees, authorized by a valid pre-petition contract, is allowable under section 502(b) of the Bankruptcy Code and is deemed to have arisen pre-petition); *see also Travelers Casualty & Surety Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443 (2007).

17.     The Claimant reserves its right to file a supplemental and/or amended responses to the Objection should it deem it necessary to do so.

WHEREFORE, the Claimant respectfully requests that the Court deny the Objection as it pertains to the Claims with prejudice to this Objection and any future objections, enter an order allowing each of the Claims as classified and in the amounts set forth in the Proofs of Claim plus all subsequent costs incurred by the Claimant in enforcing the Claims, and such further relief as the Court deems appropriate and just.

8

Dated: December 6, 2010
      New York, New York

Respectfully submitted,

FRIED, FRANK, HARRIS, SHRIVER
  & JACOBSON LLP

By: /s/ Shannon Nagle
Shannon Nagle, Esq.
Richard Tisdale, Esq.
One New York Plaza
New York, NY 10004
Tel.: 212-859-8000
Facsimile: 212-859-4000

*Counsel for Commonwealth Bank of Australia*