B 210A (Form 210A) (12/09)

# UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF NEW YORK

In re Lehman Brothers Special Financing, Debtor,                    Case No. 08-13888

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

**Western Asset US Core Plus Bond Fund**
Name of Transferee

**Legg Mason Western Asset US Core Plus Bond Fund**
Name of Transferor

Name and Address where notices to transferee should be sent:
Western Asset Management Company
Attn:Legal Dept / W-2462
385 E. Colorado Blvd
Pasadena, CA 91101

Court Claim # (if known): (unknown)
Amount of Claim: $79,404.85
Date Claim Filed: 10/20/2009

Phone: 626-844-9400
Last Four Digits of Acct #: W-2462

Phone: 626-844-9400
Last Four Digits of Acct. #: W-1308

Name and Address where transferee payments should be sent (if different from above):
**David Fritz, as Relationship Manager**
BNY Mellon GIS
8800 Tinicum Blvd.
Philadelphia, Pennsylvania 19153
Phone: 215-749-3063
Last Four Digits of Acct #: W-2462

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____                    Date: 12/3/2010
        Name of Transferee/Transferee's Agent

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 Y.S.C. §§ 152 & 3571.

566570.2/9999-00999

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
DATED DECEMBER 3, 2010

TO:    THE DEBTOR AND THE BANKRUPTCY COURT

       1.       For value received, the adequacy and sufficiency of which are hereby acknowledged, Western Asset US Core Plus Bond Fund (c/o Western Asset Management Company, Attn: Legal Dept W-1308, 385 E. Colorado Blvd., Pasadena, CA, 91101) ("Transferor") hereby unconditionally and irrevocably transfers and assigns to Legg Mason Western Asset US Core Plus Bond Fund ("Transferee"), and Transferee hereby agrees to accept, as of the date hereof, (a) an undivided interest in $79,404.85 (the "Claim") in Transferor's right, title and interest in and to the Proof of Claim, attached hereto, dated October 20, 2009 filed by Transferor (the "Proof of Claim") against Lehman Brothers Special Financing. debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13888 (the "Debtor"); (b) all rights and benefits of Transferor relating to the Claim, including without limitation (i) any right to receive cash, securities, instruments, principal, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Claim, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), accounts, accounts receivable, voting rights and other rights and benefits of any nature whatsoever, lawsuits or causes of action of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Claim, (iv) any and all of Transferor's right, title and interest in, to and under the transfer agreements, if any, under which Transferor or any prior seller acquired the rights and obligations underlying or constituting a part of the Claim, but only to the extent related to the Claim, and (v) all rights, in, to and under any collateral or guarantees related to the Proof of Claim; and (c) all proceeds of any kind of the foregoing, including, without limitation, all cash, securities or other property distributed or payable on account of, or exchanged in return for, any of the foregoing (collectively, the "Transferred Claims").

       2.       Transferor hereby represents and warrants to Transferee that: (a) the Proof of Claim was duly and timely filed to preserve rights as a "Customer Claim" in accordance with the Order of the Bankruptcy Court establishing the deadline for filing proofs of claim; (b) Transferor owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Transferor or against Transferor; (c) Transferor is duly organized and validly existing under the laws of its jurisdiction of organization, in good standing under such laws, and has full power and authority to execute and perform its obligations under this Agreement and Evidence of Transfer of Claim; (d) Transferor has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Transferee receiving in respect of the Transferred Claims proportionately less in payments or distributions or less favorable treatment than other unsecured creditors; (e) Transferor has provided to Transferee true and correct copies of (i) the Proof of Claim, and (ii) the Federal Express receipt evidencing the timely delivery of the Proof of Claim to the Court; (f) no objection to the Proof of Claim or other Transferred Claims has been made and there are no offsets or defenses that have been or may be asserted by or on behalf of any party to reduce the amount of the Transferred Claims or to reduce the value of the Claim as compared to other general unsecured claims; (g) the aggregate principal amount of the Claim is not less than $192,781.25, and no payment or other distribution has been received by or on behalf of Transferor in full or partial satisfaction of the Claim; and (h) Transferor has not received any notice that the Transferred Claims are void or voidable or subject to any disallowance, reduction, impairment or objection of any kind.

       3.       Transferor hereby waives any objection to the transfer of the Transferred Claims to Transferee on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of

Transferor by Transferee for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Transferee agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Transferor acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Transferor transferring to Transferee the Transferred Claims, recognizing Transferee as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Transferee.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Transferee shall be entitled to transfer its rights hereunder without any notice to or the consent of Transferor. Each of Transferor and Transferee hereby agrees to indemnify, defend and hold the other party, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Transferor's or Transferee's, as applicable, breach of its representations and warranties made herein.

5.      Transferor and Transferee agree that no purchase money is due in connection with the transfer of the Claim. The transfer of the Claim is pursuant to a larger in kind transaction between the Parties. Transferor shall hold any distributions received in respect of the Transferred Claims in trust for Transferee and Transferor shall promptly (but in any event no later than three (3) business days from the date of this Agreement) remit any payments, distributions or proceeds received by Transferor in respect of the Transferred Claims to Transferee.

6.      Transferor shall not compromise or settle the Transferred Claims or change the Transferred Claims amount without the prior written consent of Transferee. Each of Transferor and Transferee agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer of Claim, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.      Transferor's and Transferee's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Transferor and Transferee each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

592351.1/9999-00999

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 3rd day of December, 2010.

**Western Asset US Core Plus Bond Fund**

By: _____
Name: Brian C. Berberian
Title: Manager, Securities Operations

c/o Western Asset Management Company, Attn: Legal Dept W-1308, 385 E. Colorado Blvd., Pasadena, CA, 91101)

**Legg Mason Western Asset US Core Plus Bond Fund**

By: _____
Name:    W. Stephen Venable, Jr.
Title:    Attorney

c/o Western Asset Management Company, Attn: Legal Dept W-2462, 385 E. Colorado Blvd., Pasadena, CA, 91101)

592351.1/9999-00999



October 3, 2008

**By: Courier and Certified Mail**  — 7007 0220 0004 4742 4818
Lehman Brothers Special Financing Inc.
745 Seventh Avenue, 28th Floor
New York, New York 10019
<u>Attention</u>:  Transaction Management
Facsimile No.: (646) 836-0609
Telephone No.: (646) 836-2200

Ladies and Gentlemen:

Reference is made to the ISDA Master Agreement, as amended from time to time, (the "Master
Agreement") dated as of July 19, 2001 between Lehman Brothers Special Financing Inc. ("Party A")
and each counterparty listed on Exhibit A attached thereto, severally and not jointly ("Party B"), acting
by and through Western Asset Management Company (the "Investment Adviser").

On September 15, 2008, the Investment Adviser delivered, on behalf of each Party B, a Notice of
Default, designating September 15, 2008 as the Early Termination Date in respect of all Transactions
outstanding or otherwise not fully paid as of such date under the Master Agreement (the
"Transactions").  The relevant Event of Default with respect to Party A has occurred pursuant to
Section 5(a)(vii) of the Master Agreement (Events of Default and Termination Events – Bankruptcy),
as amended by Part 1, Clause (f) of the Schedule to the Master Agreement, and is continuing.  A copy
of the Notice of Default is enclosed for your reference.

**We hereby demand immediate payment from Party A of all amounts due and payable by Party
A pursuant to Section 6(e) of the Master Agreement in respect of Transactions with each Party B
listed on Annex A attached hereto.**  On Annex A, please find the Loss amount owed by Party A to
each listed Party B set forth next to such Party B's name.  Calculations were made according to the
Second Method and Loss, in accordance with Section 6(e) of the Master Agreement and Part 1, Clause
(j) of the Schedule to the Master Agreement.  The Loss amount has been determined by calculating a
replacement value for the terminated trade either through replacing the trade in the market or obtaining
a comparable market quote.  For all Party Bs, the Loss amounts have been aggregated, net of collateral.
The Loss amounts listed on Annex B hereto are due and payable immediately.

**Demand for Return of Posted Collateral:** Additionally, pursuant to Paragraph 8 of the Credit
Support Annex to the Schedule to the Master Agreement, you are hereby instructed to return
immediately to Party B, in accordance with the instructions contained on Annex B, any and all Posted
Collateral, including any and all accrued interest, posted under the Master Agreement by Party B to
Party A, together with any Distributions or Interest Amounts in respect thereof.

Party B hereby reserves all rights, in its discretion, to avail itself at any time of any other remedy provided for in the Master Agreement, the Guarantee, or otherwise under law, including without limitation, the sale at any time or from time to time of any or all collateral posted by Party A and held by Party B or on its behalf or for its account.

All terms not otherwise defined herein shall have the meaning assigned to them in the Master Agreement or the Guarantee.

Sincerely,

EACH COUNTERPARTY LISTED ON EXHIBIT A TO THE MASTER AGREEMENT, severally and not jointly, acting by and through WESTERN ASSET MANAGEMENT COMPANY, solely in its capacity as Investment Manager and Agent for each such party.

By:  Western Asset Management Company

By:

**W. Stephen Venable, Jr.**
Manager, US Legal and Corporate Affairs

## ANNEX A

**Early Termination Payments**



ANNEX A
Amounts owed to Party B by Lehman Brothers Special Financing, Inc.

| Account | Legal Account Name | Unwind NPV Lehman | Account-Owned Coll | Broker-Owned Collateral | Interest on Collateral | Amount Owed by: Lehman |
|---|---|---|---|---|---|---|
| 1398 | WA US Core Plus Bond Fund | (155,194.99) | 350,000.00 | | 1,478.69 | 158,274.83 |

## ANNEX B

### Collateral Demand Instructions

11283515_1.DOC

| Asset Type | Trade Date | Broker ID | Account # | Original Face | Interest on Collateral | Total Collateral Interest | Base Ccy |
|---|---|---|---|---|---|---|---|
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 654 | 400,000.00 | 1,721.57 | 401,721.57 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 701 | 200,000.00 | 860.78 | 200,860.78 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 705 | 550,000.00 | 2,367.14 | 552,367.14 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 708 | 350,000.00 | 1,478.89 | 351,478.89 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 775 | 1,400,000.00 | 3,602.69 | 1,403,602.69 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 857 | 850,000.00 | 3,658.32 | 853,658.32 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 911 | 750,000.00 | 3,227.97 | 753,227.97 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 923 | 650,000.00 | 1,542.47 | 651,542.47 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 968 | 1,250,000.00 | 5,379.88 | 1,255,379.88 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 993 | 400,000.00 | 1,008.64 | 401,008.64 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1055 | 3,650,000.00 | 15,326.14 | 3,665,326.14 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1087 | 1,300,000.00 | 1,718.10 | 1,301,718.10 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1082 | 8,900,000.00 | 37,278.46 | 8,937,278.49 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1144 | 550,000.00 | 1,167.36 | 551,167.36 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1151 | 300,000.00 | 1,267.56 | 301,267.56 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1177 | 300,000.00 | 1,291.18 | 301,291.18 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1179 | 50,000.00 | 211.24 | 50,211.24 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1182 | 250,000.00 | 1,075.96 | 251,075.96 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1207 | 350,000.00 | 1,506.37 | 351,506.37 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1213 | 1,860,000.00 | 7,793.25 | 1,867,793.25 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1240 | 600,000.00 | 2,582.33 | 602,582.33 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1257 | 1,100,000.00 | 3,775.95 | 1,103,775.95 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1268 | 50,000.00 | 211.24 | 50,211.24 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1281 | 1,750,000.00 | 12,088.43 | 1,762,088.43 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1297 | 300,000.00 | 899.50 | 300,899.50 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1308 | 350,000.00 | 1,478.89 | 351,478.89 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1311 | 1,800,000.00 | 7,747.02 | 1,807,747.02 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1319 | 1,000,000.00 | 2,687.52 | 1,002,687.52 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1322 | 750,000.00 | 3,227.97 | 753,227.97 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1352 | 300,000.00 | 7,288.25 | 307,288.25 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1384 | 550,000.00 | 2,367.14 | 552,367.14 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1389 | 260,000.00 | 1,119.03 | 261,119.03 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1371 | 51,000,000.00 | 88,189.40 | 51,088,189.40 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1376 | 4,450,000.00 | 18,060.50 | 4,468,060.50 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1384 | 400,000.00 | 1,690.09 | 401,690.09 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1412 | 50,000.00 | 211.24 | 50,211.24 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1415 | 2,700,000.00 | 11,620.52 | 2,711,620.52 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1419 | 450,000.00 | 1,901.58 | 451,901.58 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1434 | 150,000.00 | 645.67 | 150,645.67 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1448 | 150,000.00 | 645.67 | 150,645.67 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1464 | 500,000.00 | 2,151.94 | 502,151.94 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1471 | 100,000.00 | 422.52 | 100,422.52 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1487 | 250,000.00 | 1,075.96 | 251,075.96 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1494 | 600,000.00 | 2,582.33 | 602,582.33 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1531 | 250,000.00 | 1,075.96 | 251,075.96 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1547 | 600,000.00 | 1,370.23 | 601,370.23 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1558 | 600,000.00 | 2,535.20 | 602,535.20 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1601 | 8,700,000.00 | 31,865.21 | 8,731,865.21 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1607 | 250,000.00 | 1,075.96 | 251,075.96 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1619 | 450,000.00 | 1,901.58 | 451,901.58 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1621 | 400,000.00 | 1,721.57 | 401,721.57 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1622 | 150,000.00 | 3,232.88 | 153,232.88 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1627 | 300,000.00 | 756.46 | 300,756.46 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1636 | 6,100,000.00 | 0.00 | 6,100,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1647 | 600,000.00 | 0.00 | 600,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1650 | 550,000.00 | 2,582.33 | 552,582.33 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1675 | 500,000.00 | 0.00 | 500,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1676 | 100,000.00 | 2,151.94 | 102,151.94 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1687 | 550,000.00 | 0.00 | 550,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1690 | 300,000.00 | 0.00 | 300,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1699 | 300,000.00 | 0.00 | 300,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1734 | 2,550,000.00 | 0.00 | 2,550,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1745 | 300,000.00 | 0.00 | 300,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1755 | 300,000.00 | 0.00 | 300,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1765 | 850,000.00 | 0.00 | 850,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1779 | 650,000.00 | 0.00 | 650,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1796 | 300,000.00 | 0.00 | 300,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1883 | 350,000.00 | 0.00 | 350,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1889 | 500,000.00 | 0.00 | 500,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1911 | 50,000.00 | 0.00 | 50,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1915 | 700,000.00 | 0.00 | 700,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1929 | 1,800,000.00 | 0.00 | 1,800,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1931 | 300,000.00 | 0.00 | 300,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1948 | 50,000.00 | 0.00 | 50,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1978 | 500,000.00 | 0.00 | 500,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 1982 | 950,000.00 | 0.00 | 850,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 2584 | 1,250,000.00 | 0.00 | 1,250,000.00 | USD |
| CASH | 9/15/2008 | LEHMAN BROTHERS INC | 2623 | 750,000.00 | 0.00 | 750,000.00 | USD |

## CLAIM FORM FILING CONFIRMATION

Your claim form was successfully filed on 10/20/2009 at 6:33 PM Central. Please print this page as proof of your filing.

---

**Western Asset US Core Plus Bond Fund**
**c/o Western Asset Management Company**
**ATTN: Legal Dept W-1308**
**385 E. Colorado Blvd**
**Pasadena, CA 91101 United States**

Name of Debtor

Lehman Brothers Special Financing Inc. (08-13888)

Please identify the counterparties, guarantor and/or credit support provider to the derivative contract.

Lehman Brothers Special Financing with Lehman Brothers Holdings Inc. as Guarantor and Credit Support Provider.

Have you entered into a termination agreement with the Debtors establishing the agreed upon amounts due in respect of derivative contracts?

Selected: No

Have the derivative contracts matured or been terminated?

Selected: Yes

| Item | Amount due to Debtor | Amount due from Debtor |
|---|---|---|
| Transaction Valuations | $432,833.26 | $239,729.20 |
| Unpaid Amounts | $0.00 | $0.00 |
| Collateral | $0.00 | $350,000.00 |
| Interest | $0.00 | $1,478.89 |
| Other costs | $0.00 | $0.00 |
| **DERIVATIVE CLAIM AMOUNT** | | $158,374.83 |

Provide the derivative claim amount by supplying each line item included in the calculation thereof.

Documentation of Transactions: Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim.

**Documents**
Lehman Holdings Gurantee.pdf
1308 ISDA Amendment.pdf
Lehman Full ISDA_Schedule_CSA.pdf

10/20/2009 4:33 PM

Documentation of Transactions: Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim.

We have uploaded the Master ISDA entered into by Lehman Brothers Special Financing Inc. and certain accounts managed by Western Asset Management Company dated July 19, 2001. The Schedule and Credit Support Annex to the Master ISDA are also uploaded. We have also uploaded the Guarantee provided by LBHI in connection with the Master ISDA. Finally, we have uploaded an amendment to the ISDA showing the excerpt from Exhibit A to the ISDA listing the Creditor as a party to the Master ISDA. This amendment has been redacted to remove references to all Identifying information of other clients of Western Asset Management Company.

**Documents**
Lehman Holdings Gurantee.pdf
1308 ISDA Amendment.pdf
Lehman Full ISDA_Schedule_CSA.pdf

Termination Notice: Please provide a copy of the termination notice, including evidence supporting delivery date of the termination notice.

**Documents**
1308 termination letter.pdf

Termination Notice: Please provide a copy of the termination notice, including evidence supporting delivery date of the termination notice.

We have uploaded the Termination Notice delivered by hand on September 15, 2008. The first page of the Termination Notice is stamped and signed by the mailroom recipient at the Debtor's headquarters. We have marked the list of transactions terminated to more easily identify the transactions of the Creditor.

**Documents**
1308 termination letter.pdf

Valuation Statement: Please provide a copy of the valuation statement. Please identify any collateral that has been posted by any party in connection with the transactions and any claims of set-off against other transactions reflected in the claim.

**Documents**
1308 Calculation Letter.pdf

Valuation Statement: Please provide a copy of the valuation statement. Please identify any collateral that has been posted by any party in connection with the transactions and any claims of set-off against other transactions reflected in the claim.

We have uploaded the Calculation Letter delivered to LBSF in connection with the terminated transactions of the Creditor. The Calculation Letter has been redacted to remove any Identifying information of other clients of Western Asset Management Company.

**Documents**
1308 Calculation Letter.pdf

Individual Trade Level Detail: Please provide with respect to each transaction (i) the valuation date (to the extent not included in your valuation statement) and value and (ii) details for the purpose of identifying and reconciling each

transaction (e.g. including, as applicable, trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, factor and original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call or put, cap or floor, effective date, and maturity date. (For the avoidance of doubt, you are not required to submit each and every one of the foregoing)). Please provide this information in Microsoft Excel format.

**Documents**
1308-Trade Details.xls

Individual Trade Level Detail: Please provide with respect to each transaction (i) the valuation date (to the extent not included in your valuation statement) and value and (ii) details for the purpose of identifying and reconciling each transaction (e.g. including, as applicable, trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, factor and original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call or put, cap or floor, effective date, and maturity date. (For the avoidance of doubt, you are not required to submit each and every one of the foregoing)). Please provide this information in Microsoft Excel format.

We have uploaded trade level detail for trades entered into by the Creditor with LBSF.

**Documents**
1308-Trade Details.xls

ISDA Master Agreements Specifying Market Quotation Methodology: If not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

Selected: No

ISDA Master Agreements Specifying Loss Methodology: To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

Selected: Yes
The Master ISDA provides for Loss and the Second Method for calculating termination amounts. Western Asset Management Company, on behalf of the Creditor, calculated Loss by either obtaining quotes in the open market, replacing exposure for the terminated trades and using the replacement value, or modeling the transaction price as of the termination date. In each case details of the termination value is included in the trade level detail previously included in the questionnaire.

ISDA Master Agreements Specifying Close-Out Amount Methodology: To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-

Selected: No

makers or other persons (i.e. name of institution) concerning the transactions.

ISDA Master Agreements Specifying Any Other Methodology: To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

Selected: No

Non-ISDA Master Agreements: To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

Selected: No

Replacement Transactions: If you replaced a terminated transaction with a transaction with the same economic terms as the terminated transaction, provide documentation evidencing such replacement transaction and the quotation(s) used, including specifying any cash (or other consideration) paid or received by or to any person to replace the transactions, the name of each entity that effectuated a replacement and when any such transactions were effected.

Selected: No

Collateral: Please provide CUSIP/ISIN for collateral listed, if applicable, or other information that reasonably identifies collateral reflected in the claim calculation and the valuation of such collateral. Please provide this information in Microsoft Excel format.

**Documents**
1308-Collateral Figures.xls

Collateral: Please provide CUSIP/ISIN for collateral listed, if applicable, or other information that reasonably identifies collateral reflected in the claim calculation and the valuation of such collateral. Please provide this information in Microsoft Excel format.

We have uploaded data with regard to the amount of collateral posted in connection with the derivative transactions.

**Documents**
1308-Collateral Figures.xls

If claim includes interest charges, please provide calculation in Microsoft Excel format of interest including principal amount, interest rate, term and assumptions.

10/20/2009 4:33 PM

**Documents**

1308-Payment Fails.xls

If claim includes interest charges, please provide
calculation in Microsoft Excel format of interest
including principal amount, interest rate, term
and assumptions.

Please refer to Columns F and G and additional tabs for backup
details.

**Documents**

1308-Payment Fails.xls

10/20/2009 4:33 PM

https://www.lehman-claims.com/secure/confirmation.aspx

**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 10/20/2009 at 6:33 PM Central. Please print this page as proof of your filing.

Western Asset US Core Plus Bond Fund
c/o Western Asset Management Company
ATTN: Legal Dept W-1308
385 E. Colorado Blvd
Pasadena, CA 91101 United States

| | |
|---|---|
| Name of Debtor, or other entity, against which you have a direct claim (the "Obligor") | Lehman Brothers Special Financing Inc. (08-13888) |
| If such Obligor is in a bankruptcy or insolvency proceeding, administration, receivership, conservatorship, liquidation or similar proceeding (and is not a Debtor in these chapter 11 cases), please provide the proof of claim and any attachments thereto filed against such Obligor or describe the claim against such Obligor if a proof of claim has not yet been filed. | |

Documents
1308.pdf

| | |
|---|---|
| List the agreement(s) under which your claim arises against the Obligor and, unless you have uploaded information in compliance with question 4a of the Derivative Questionnaire, provide documentation evidencing your claim and supporting the calculation of the claim amount. | "Master ISDA dated July 19, 2001 by and between Lehman Brothers Special Financing Inc. and the Creditor (acting through Western Asset Management Company as its investment manager and agent)." |
| Amount of claim against Obligor | $158,374.83 |
| Name of Debtor that guarantees the payment/obligations of the Obligor against which you have a direct claim (the "Guarantor"): | Lehman Brothers Holdings Inc. (08-13555) |
| Amount of claim against the Guarantor | $158,374.83 |

1 of 1                                                                                       10/20/2009 4:33 PM

# AMENDMENT AGREEMENT

**AMENDMENT AGREEMENT** (the "Amendment") dated as of June 27, 2008 to the ISDA Master Agreement dated as of July 19, 2001 and as amended from time to time between **LEHMAN BROTHERS SPECIAL FINANCING INC.** ("Party A") and **EACH COUNTERPARTY LISTED ON EXHIBIT A ATTACHED HERETO**, severally and not jointly ("Party B"), acting by and through **WESTERN ASSET MANAGEMENT COMPANY**, a corporation organized under the law of California as agent and investment advisor ("Investment Advisor")

## WITNESSETH

WHEREAS, Party A and Party B have entered into an ISDA Master Agreement dated as of July 19, 2001 (the "Master Agreement"); and

WHEREAS, Party A and Party B may enter into transaction with each other; and

WHEREAS, Party A and Party B desire to amend the Master Agreement and to have the Master Agreement, as amended herein, govern the rights and obligations of Party A and Party B with respect to each and every Transaction which is (a) outstanding on the date hereof, and (b) entered into on or after the date hereof,

NOW, THEREFORE, in consideration of the mutual agreements herein contained, and for other valuable consideration, Party A and Party B hereby acknowledge and agree as follows:

1.    Certain Definitions.  Unless otherwise defined herein, capitalized terms used herein have the meanings specified in or pursuant to the Master Agreement.

2.    Exhibit A to the Master Agreement is to be deleted in its entirety and replaced with Exhibit A as attached hereto.

3.    Except as specifically amended hereby, all of the terms and conditions of the Master Agreement shall remain unaffected and shall continue to be in full force and effect and shall be binding upon the parties in accordance with their respective terms.

4.    Each of the parties hereby represents and warrants that:

(a)    the representation and warranties contained in the Master Agreement are true on and as of the date hereof as if made by the party on and as of said date, and

(b)    the execution, delivery and performance of this Amendment are within the party's corporate power and have been duly authorized by all necessary corporate action, and this Amendment constitutes the legal, valid and binding obligation of the party in accordance with its terms.

wamco amendment 06 27 08

5. This Amendment may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

6. This Amendment shall be construed in accordance with and be governed by the laws of the State of New York (without reference to choice of law doctrine).

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed by their respective officers or authorized representatives as of the day and year first above written.

LEHMAN BROTHERS SPECIAL
FINANCING INC.

EACH COUNTERPARTY LISTED ON
EXHIBIT A ATTACHED HERETO,
SEVERALLY AND NOT JOINTLY
('Party B"), by WESTERN ASSET
MANAGEMENT COMPANY, solely in
its capacity as
Investment Advisor and agent for each
such party and not in its individual
corporate capacity ("Investment Advisor")

*(Party A)*

*(Party B)*

By: _____

By: _____

Name:

Name:

Title:

Title: W. Stephen Venable, Jr.
Manager, US Legal and Corporate Affairs

Date:

Date: 7-14-08

wamco amendment 06 27 08

5.  This Amendment may be executed in any number of counterparts and by the different parties hereto on separate counterparts, each of which when so executed and delivered shall be an original, but all of which shall together constitute one and the same instrument.

6.  This Amendment shall be construed in accordance with and be governed by the laws of the State of New York (without reference to choice of law doctrine).

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed by their respective officers or authorized representatives as of the day and year first above written.

LEHMAN BROTHERS SPECIAL
FINANCING INC.

EACH COUNTERPARTY LISTED ON EXHIBIT A ATTACHED HERETO, SEVERALLY AND NOT JOINTLY ("Party B"), by WESTERN ASSET MANAGEMENT COMPANY, solely in its capacity as Investment Advisor and agent for each such party and not in its individual corporate capacity ("Investment Advisor") (Party B)

(Party A)

By: _____

Name:   Allyson M. Carine
Title:   Authorized Signatory
Date:

By: _____

Name:
Title:
Date:



| Fund | Acct # | Account Type | AUM As of 8/22/02 |
|------|--------|--------------|-------------------|
| WA US Core Plus Bond Fund | 1308 | Commingled Assets | 40 mm |



# WESTERN ASSET

September 15, 2008

By: Courier and Facsimile
Lehman Brothers Special Financing Inc.
745 Seventh Avenue, 28th Floor
New York, New York 10019
Attention: Transaction Management
Facsimile No.: (626) 836-0609
Telephone No.: (626) 836-2200

S. WHITAKER
S. Whitaker

Ladies and Gentlemen:

Pursuant to Section 6(a) of the ISDA Master Agreement (the "Master Agreement") dated as of
July 19, 2001, as amended from time to time, between Lehman Brothers Special Financing Inc.
("Party A") and Each Counterparty Listed on Exhibit A Attached Thereto, severally and not
jointly ("Party B"), acting by and through Western Asset Management Company (the
"Investment Adviser"), the Investment Adviser hereby designates September 15, 2008 as the
Early Termination Date in respect of all Transactions outstanding or otherwise not fully paid as
of such date under the Master Agreement (the "Transactions"). The relevant Event of Default
with respect to Party A has occurred pursuant to Section 5(a)(vii) of the Master Agreement
(Events of Default and Termination Events – Bankruptcy), as amended by Part 1, Clause (h) of
the Schedule to the Master Agreement, and is continuing.

A complete list of Transactions is attached hereto as Annex A.

**Demand Under Section 6(e).** Calculation of the Early Termination Payment will be made
according to the Second Method and Loss, in accordance with Section 6(e) of the Master
Agreement, as amended by Part I, Clause (j) of the Schedule to the Master Agreement. We will
deliver these calculations shortly, upon such delivery such amounts shall be due and payable
immediately.

**Demand for Return of Posted Collateral:** Additionally, pursuant to Paragraph 8 of the Credit
Support Annex to the Schedule to the Master Agreement, you are hereby instructed to return
immediately to Party B, in accordance with the instructions contained on Annex B, any and all
Posted Collateral, including all Independent Amounts, posted under the Master Agreement by
Party B to Party A, together with any Distributions or Interest Amounts in respect thereof.

Party B hereby reserves all rights, in its discretion, to avail itself at any time of any other remedy
provided for in the Master Agreement, the Guarantee or otherwise under law, including without
limitation, the sale at any time or from time to time of any or all collateral posted by Party A and
held by Party B or on its behalf or for its account.

*Western Asset Management Company*
385 East Colorado Blvd. Pasadena, CA 91101 • Tel: (626) 844-9400 • Fax: (626) 844-9450

All terms not otherwise defined herein shall have the meaning assigned to them in the Master Agreement or the Guarantee.

Sincerely,

EACH COUNTERPARTY LISTED ON EXHIBIT A TO THE MASTER AGREEMENT, severally and not jointly, acting by and through WESTERN ASSET MANAGEMENT COMPANY, solely in its capacity as Investment Manager and Agent for each such party.

By:  Western Asset Management Company

By: _____

cc:      By: Certified Mail
         Lehman Brothers Special Financing Inc.
         745 Seventh Avenue, 28th Floor
         New York, New York 10019
         Attention:  Transaction Management
         Facsimile No.:  (646) 836-0609
         Telephone No.:  (646) 836-2200

1283515_1.DOC

Sep-15-2008  09:39am   From-WESTERN ASSET                    626 844 4012        T-782  P.003     F-849

ANNEX A

**Transactions**

| | | | | |
|---|---|---|---|---|
| 1264 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -130,000 USD | 8/17/2020 IRS |
| 1266 0WR084395 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |
| 1266 0WR065475 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |
| 1266 0WR055954 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1266 0WR066552 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1266 0WR068693 CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 12/20/2012 CREDIT |
| 1266 0WR069212 CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 400,000 USD | 12/20/2012 CREDIT |
| 1266 0WR077892 CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 400,000 USD | 5/25/2046 CREDIT_RMBS |
| 1266 0WR077975 CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 97,433 USD | 7/25/2045 CREDIT_RMBS |
| 1266 0WR078452 CDS-CDX.NA.IG.10 HVOL.9 @ 140 bps 4.6 Yr | LEHMAN BROTHERS INC (PAS) | 1,000,000 USD | 12/20/2012 CREDIT |
| 1266 0WR123280 IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 4,300,000 USD | 6/16/2012 IRS |
| 1266 0WP123316 IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -1,050,000 USD | 6/18/2020 IRS |
| 1266 0WR123390 IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 2,150,000 USD | 6/17/2012 IRS |
| 1266 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -520,000 USD | 8/17/2020 IRS |
| 1277 0WR077892 CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 500,000 USD | 5/25/2046 CREDIT_RMBS |
| 1277 0WR077975 CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 97,433 USD | 7/25/2045 CREDIT_RMBS |
| 1277 0WR123280 IR Swap 4.865% Fixed | LEHMAN BROTHERS INC (PAS) | 3,230,000 USD | 6/16/2012 IRS |
| 1277 0WP123316 IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -750,000 USD | 6/16/2020 IRS |
| 1277 0WR123390 IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 1,610,000 USD | 6/17/2012 IRS |
| 1277 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -385,000 USD | 6/17/2020 IRS |
| 1276 0WR077892 CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 700,000 USD | 5/25/2046 CREDIT_RMBS |
| 1278 0WR077975 CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 97,433 USD | 7/25/2045 CREDIT_RMBS |
| 1276 0WR123290 IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 4,190,000 USD | 6/16/2012 IRS |
| 1278 0WP123316 IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -1,020,000 USD | 6/16/2020 IRS |
| 1278 0WR123390 IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 2,100,000 USD | 6/17/2012 IRS |
| 1276 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -510,000 USD | 6/17/2020 IRS |
| 1281 0WR008266 CDS-CDX.NA.HY.3 B @ 400 bps 5 yrs | LEHMAN BROTHERS INC (PAS) | 572,724 USD | 12/20/2009 CREDIT |
| 1281 0WR022138 CDS-GM @ 840 bps 5 yrs | LEHMAN BROTHERS INC (PAS) | 1,200,000 USD | 12/20/2010 CREDIT |
| 1281 0WR084395 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 500,000 USD | 6/20/2012 CREDIT |
| 1281 0WR065475 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 1,100,000 USD | 6/20/2012 CREDIT |
| 1281 0WR055954 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 1,100,000 USD | 6/20/2012 CREDIT |
| 1281 0WR066552 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 2,400,000 USD | 6/20/2012 CREDIT |
| 1281 0WR068693 CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 900,000 USD | 12/20/2012 CREDIT |
| 1281 0WR069212 CDS-CDX.NA.IG HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 1,100,000 USD | 12/20/2012 CREDIT |
| 1281 0WR077892 CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 1,800,000 USD | 5/25/2046 CREDIT_RMBS |
| 1281 0WR077975 CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 389,832 USD | 7/25/2045 CREDIT_RMBS |
| 1281 0WR078452 CDS-CDX.NA.IG HVOL.9 @ 140 bps 4.6 Yr | LEHMAN BROTHERS INC (PAS) | 2,800,000 USD | 12/20/2012 CREDIT |
| 1281 0WP060013 CDS-CDX.NA.IG.10 @ 155 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | -24,500,000 USD | 6/20/2013 CREDIT |
| 1281 0WR123290 IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 12,380,000 USD | 6/16/2012 IRS |
| 1281 0WP123316 IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -3,020,000 USD | 6/16/2020 IRS |
| 1281 0WR123390 IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 6,190,000 USD | 6/17/2012 IRS |
| 1281 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -1,510,000 USD | 6/17/2020 IRS |
| 1285 0WR123280 IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 3,690,000 USD | 6/16/2012 IRS |
| 1285 0WP123316 IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -900,000 USD | 6/16/2020 IRS |
| 1285 0WR123390 IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 1,850,000 USD | 6/17/2012 IRS |
| 1285 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -450,000 USD | 6/17/2020 IRS |
| 1285 0WR022138 CDS-GM @ 840 bps 5 yrs | LEHMAN BROTHERS INC (PAS) | 100,000 USD | 12/20/2010 CREDIT |
| 1285 0WR084395 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 100,000 USD | 6/20/2012 CREDIT |
| 1285 0WR065475 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |
| 1285 0WR055954 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |
| 1285 0WR066552 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1285 0WR068693 CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 12/20/2012 CREDIT |
| 1285 0WR069212 CDS-CDX.NA.IG HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 12/20/2012 CREDIT |
| 1285 0WR077892 CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 5/25/2046 CREDIT_RMBS |
| 1285 0WR077975 CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 97,433 USD | 7/25/2045 CREDIT_RMBS |
| 1285 0WR078452 CDS-CDX.NA.IG HVOL.9 @ 140 bps 4.6 Yr | LEHMAN BROTHERS INC (PAS) | 400,000 USD | 12/20/2012 CREDIT |
| 1285 0WP060013 CDS-CDX.NA.IG.10 @ 155 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | -1,500,000 USD | 6/20/2013 CREDIT |
| 1285 0WR123280 IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 2,090,000 USD | 6/16/2012 IRS |
| 1285 0WP123316 IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -510,000 USD | 6/16/2020 IRS |
| 1285 0WR123390 IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 1,050,000 USD | 6/17/2012 IRS |
| 1285 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -260,000 USD | 6/17/2020 IRS |
| 1297 0WR008265 CDS-CDX.NA.HY.3 B @ 400 bps 6 yrs | LEHMAN BROTHERS INC (PAS) | 95,454 USD | 12/20/2009 CREDIT |
| 1297 0WR009499 CDS-CDX.NA.HY.3 B @ 400 bps 6 yrs | LEHMAN BROTHERS INC (PAS) | 190,908 USD | 12/20/2009 CREDIT |
| 1297 0WR005594 CDS-CDX.NA.HY.3 B @ 400 bps 6 yrs | LEHMAN BROTHERS INC (PAS) | 190,908 USD | 12/20/2009 CREDIT |
| 1297 0WR022138 CDS-GM @ 840 bps 5 yrs | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 12/20/2010 CREDIT |
| 1297 0WR084395 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |
| 1297 0WR065475 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1297 0WR055954 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1297 0WR066552 CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 700,000 USD | 6/20/2012 CREDIT |
| 1297 0WR068693 CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 12/20/2012 CREDIT |
| 1297 0WR069212 CDS-CDX.NA.IG HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 12/20/2012 CREDIT |
| 1297 0WR077892 CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 5/25/2046 CREDIT_RMBS |
| 1297 0WR077975 CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 682,380 USD | 7/25/2045 CREDIT_RMBS |
| 1297 0WR078452 CDS-CDX.NA.IG HVOL.9 @ 140 bps 4.6 Yr | LEHMAN BROTHERS INC (PAS) | 800,000 USD | 12/20/2012 CREDIT |
| 1297 0WR123290 IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 2,790,000 USD | 6/16/2012 IRS |
| 1297 0WP123316 IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -680,000 USD | 6/16/2020 IRS |
| 1297 0WR123390 IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 1,390,000 USD | 6/17/2012 IRS |
| 1297 0WP123433 IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -340,000 USD | 6/17/2020 IRS |
| 1308 0WR014473 CDS-DJ CDX.NA.IG HVOL.4 @ 90 bps 5 yrs | LEHMAN BROTHERS INC (PAS) | 600,000 USD | 6/20/2010 CREDIT |
| 1308 0WR077892 CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 600,000 USD | 5/25/2046 CREDIT_RMBS |



✳

| | | | | |
|---|---|---|---|---|
| 1308 0WR07797S | CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 282,448 USD | 7/25/2045 CREDIT_RMBS |
| 1308 0WR129290 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 7,150,000 USD | 6/18/2012 IRS |
| 1308 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -1,740,000 USD | 6/10/2020 IRS |
| 1308 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 3,570,000 USD | 6/17/2012 IRS |
| 1308 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -870,000 USD | 6/17/2020 IRS |
| 1309 0WR022138 | CDS-GM @ 840 bps 5 yrs | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 12/20/2010 CREDIT |
| 1309 0WR05439S | CDS-CDX.NA.IG.HVOL.8 @ 78 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 100,000 USD | 6/20/2012 CREDIT |
| 1309 0WR05647S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |
| 1309 0WR06595z | CDS-CDX.NA.IG.HVOL.8 @ 76 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |
| 1309 0WR06850z | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 500,000 USD | 6/20/2012 CREDIT |
| 1309 0WR06899z | CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 12/20/2012 CREDIT |
| 1309 0WR09212 | CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 12/20/2012 CREDIT |
| 1309 0WR07762 | CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 5/25/2046 CREDIT_RMBS |
| 1309 0WR07707S | CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 97,433 USD | 7/25/2045 CREDIT_RMBS |
| 1309 0WR07845S | CDS-CDX.NA.IG HVOL.9 @ 140 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 400,000 USD | 12/20/2012 CREDIT |
| 1309 0WP06001S | CDS-CDX.NA.IG.10 @ 155 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | -3,400,000 USD | 6/20/2013 CREDIT |
| 1309 0WR123290 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 2,700,000 USD | 6/18/2020 IRS |
| 1309 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -680,000 USD | 6/18/2020 IRS |
| 1309 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 1,350,000 USD | 6/17/2012 IRS |
| 1309 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -330,000 USD | 6/17/2020 IRS |
| 1311 0WR06439S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 500,000 USD | 6/20/2012 CREDIT |
| 1311 0WR06847S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 1,100,000 USD | 6/20/2012 CREDIT |
| 1311 0WR06595z | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 1,100,000 USD | 6/20/2012 CREDIT |
| 1311 0WR06850z | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 2,400,000 USD | 6/20/2012 CREDIT |
| 1311 0WR06890S | CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 900,000 USD | 12/20/2012 CREDIT |
| 1311 0WR09212 | CDS-CDX.NA.IG HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 1,100,000 USD | 12/20/2012 CREDIT |
| 1311 0WR07782 | CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 1,900,000 USD | 5/25/2046 CREDIT_RMBS |
| 1311 0WR07797S | CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 369,832 USD | 7/25/2045 CREDIT_RMBS |
| 1311 0WR07845z | CDS-CDX.NA.IG HVOL.9 @ 140 bps 4.5 Yr | LEHMAN BROTHERS INC (PAS) | 2,600,000 USD | 12/20/2012 CREDIT |
| 1311 0WP06001S | CDS-CDX.NA.IG.10 @ 155 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | -33,400,000 USD | 6/20/2013 CREDIT |
| 1311 0WR123290 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 12,150,000 USD | 6/18/2012 IRS |
| 1311 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -2,960,000 USD | 6/18/2020 IRS |
| 1311 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 6,080,000 USD | 6/17/2012 IRS |
| 1311 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -1,480,000 USD | 6/17/2020 IRS |
| 1312 0WP07995T | CDS-CDX.NA.IG.10 @ 155 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | -6,500,000 USD | 6/20/2013 CREDIT |
| 1312 0WR123290 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 1,270,000 USD | 6/10/2012 IRS |
| 1312 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -310,000 USD | 6/18/2020 IRS |
| 1312 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 640,000 USD | 6/17/2012 IRS |
| 1312 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -160,000 USD | 6/17/2020 IRS |
| 1319 0WR022138 | CDS-GM @ 840 bps 5 yrs | LEHMAN BROTHERS INC (PAS) | 500,000 USD | 12/20/2010 CREDIT |
| 1319 0WR05439S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1319 0WR05647S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 600,000 USD | 6/20/2012 CREDIT |
| 1319 0WR06595z | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 700,000 USD | 6/20/2012 CREDIT |
| 1319 0WR06852z | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 1,400,000 USD | 6/20/2012 CREDIT |
| 1319 0WR06899S | CDS-CDX.NA.IG.HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 500,000 USD | 12/20/2012 CREDIT |
| 1319 0WR09212 | CDS-CDX.NA.IG HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 700,000 USD | 12/20/2012 CREDIT |
| 1319 0WR07762 | CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 700,000 USD | 5/25/2046 CREDIT_RMBS |
| 1319 0WR07707S | CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 282,448 USD | 7/25/2045 CREDIT_RMBS |
| 1319 0WR07845z | CDS-CDX.NA.IG HVOL.9 @ 140 bps 4.5 Yr | LEHMAN BROTHERS INC (PAS) | 1,800,000 USD | 12/20/2012 CREDIT |
| 1319 0WP06001S | CDS-CDX.NA.IG.10 @ 155 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | -7,200,000 USD | 6/20/2013 CREDIT |
| 1319 0WR123290 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 6,390,000 USD | 6/18/2012 IRS |
| 1319 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -2,050,000 USD | 6/18/2020 IRS |
| 1319 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | -4,190,000 USD | 6/17/2012 IRS |
| 1319 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -1,020,000 USD | 6/17/2020 IRS |
| 1322 0WR07762 | CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 2,500,000 USD | 5/25/2046 CREDIT_RMBS |
| 1322 0WR07707S | CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 974,829 USD | 7/25/2045 CREDIT_RMBS |
| 1322 0WR123290 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 30,270,000 USD | 6/18/2012 IRS |
| 1322 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -7,360,000 USD | 6/18/2020 IRS |
| 1322 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 15,140,000 USD | 6/17/2012 IRS |
| 1322 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -3,690,000 USD | 6/17/2020 IRS |
| 1326 0WR129200 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 1,950,000 USD | 6/18/2012 IRS |
| 1326 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -380,000 USD | 6/18/2020 IRS |
| 1326 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 770,000 USD | 6/17/2012 IRS |
| 1326 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -100,000 USD | 6/17/2020 IRS |
| 1332 0WR05439S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 100,000 USD | 6/20/2012 CREDIT |
| 1332 0WR06847S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1332 0WR06595z | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 6/20/2012 CREDIT |
| 1332 0WR06852z | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.7 Yr | LEHMAN BROTHERS INC (PAS) | 600,000 USD | 6/20/2012 CREDIT |
| 1332 0WR06850S | CDS-CDX.NA.IG.HVOL.8 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 12/20/2012 CREDIT |
| 1332 0WR09212 | CDS-CDX.NA.IG HVOL.9 @ 140 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 12/20/2012 CREDIT |
| 1332 0WR07862 | CDS-ABX @ 11 bps 38.2 Yr VTG# 06-2 | LEHMAN BROTHERS INC (PAS) | 300,000 USD | 5/25/2046 CREDIT_RMBS |
| 1332 0WR07707S | CDS-ABX @ 18 bps 37.4 Yr VTG# 06-1 | LEHMAN BROTHERS INC (PAS) | 97,433 USD | 7/25/2045 CREDIT_RMBS |
| 1332 0WR07845z | CDS-CDX.NA.IG HVOL.9 @ 140 bps 4.5 Yr | LEHMAN BROTHERS INC (PAS) | 800,000 USD | 12/20/2012 CREDIT |
| 1332 0WP06001S | CDS-CDX.NA.IG.10 @ 155 bps 5.2 Yr | LEHMAN BROTHERS INC (PAS) | -4,600,000 USD | 6/20/2013 CREDIT |
| 1332 0WR123290 | IR Swap 4.95% Fixed | LEHMAN BROTHERS INC (PAS) | 3,130,000 USD | 6/18/2012 IRS |
| 1332 0WP123316 | IR Swap 5.247% Fixed | LEHMAN BROTHERS INC (PAS) | -780,000 USD | 6/18/2020 IRS |
| 1332 0WR123399 | IR Swap 5.14% Fixed | LEHMAN BROTHERS INC (PAS) | 1,570,000 USD | 6/17/2012 IRS |
| 1332 0WP123433 | IR Swap 5.32875% Fixed | LEHMAN BROTHERS INC (PAS) | -380,000 USD | 6/17/2020 IRS |
| 1339 0WR05439S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 100,000 USD | 6/20/2012 CREDIT |
| 1339 0WR05647S | CDS-CDX.NA.IG.HVOL.8 @ 75 bps 4.8 Yr | LEHMAN BROTHERS INC (PAS) | 200,000 USD | 6/20/2012 CREDIT |

| Account | Tran Trade Broker Description | Tran Code | Security Number | Security Description (Short) | Coupon Rate | Bond Maturity Date |
|---|---|---|---|---|---|---|
| 1308 | Lehman Brothers | RBCOVR | 0WP014475 | CRED DEF SWAP PAY | 0.000000000 | 06/20/2010 |
| 1308 | Lehman Brothers | RBCOVR | 0WP077894 | CDS-ABX @ 11 BPS 38.2 YR | 0.000000000 | 05/25/2046 |
| 1308 | Lehman Brothers | RBCOVR | 0WP077977 | CDS-ABX @ 18 BPS 37.4 YR | 0.000000000 | 07/25/2045 |
| 1308 | Lehman Brothers | RBCOVR | 0WP123292 | LEH INT RATE SWAP PAY FWD | 0.000000000 | 06/16/2012 |
| 1308 | Lehman Brothers | RBCOVR | 0WP123318 | LEH INT RATE SWAP PAY FWD | 0.000000000 | 06/16/2020 |
| 1308 | Lehman Brothers | RBCOVR | 0WP123391 | LEH INT RATE SWAP PAY | 0.000000000 | 06/17/2012 |
| 1308 | Lehman Brothers | RBCOVR | 0WP123433 | LEH INT RATE SWAP PAY FWD | 0.000000000 | 06/17/2020 |
| 1308 | Lehman Brothers | RBSELL | 0WR014473 | CRED DEF SWAP REC | 0.900000000 | 06/20/2010 |
| 1308 | Lehman Brothers | RBSELL | 0WR077892 | CDS-ABX @ 11 BPS 38.2 YR | 0.110000000 | 05/25/2046 |
| 1308 | Lehman Brothers | RBSELL | 0WR077975 | CDS-ABX @ 18 BPS 37.4 YR | 0.180000000 | 07/25/2045 |
| 1308 | Lehman Brothers | RBSELL | 0WR123290 | LEH INT RATE SWAP REC FWD | 0.000000000 | 06/16/2012 |
| 1308 | Lehman Brothers | RBSELL | 0WR123316 | LEH INT RATE SWAP REC FWD | 0.000000000 | 06/16/2020 |
| 1308 | Lehman Brothers | RBSELL | 0WR123399 | LEH INT RATE SWAP REC | 0.000000000 | 06/17/2012 |
| 1308 | Lehman Brothers | RBSELL | 0WR123431 | LEH INT RATE SWAP REC FWD | 0.000000000 | 06/17/2020 |

| Price | Shares/Par | Principal | Income | Total Principal + Income | Issue Date | Combined cusips | Swap Type |
|---|---|---|---|---|---|---|---|
| 100.000000 | 800,000,000.0000 | -800,000,000.00 | 0.00 | -800,000,000.00 | 05/11/2005 | 0WP014475/0WR014473 | DJ.CDX |
| 100.000000 | 800,000,000.0000 | -800,000,000.00 | 0.00 | -800,000,000.00 | 02/25/2008 | 0WP077894/0WR077892 | ABS CDS |
| 100.000000 | 292,448.7600 | -292,448.76 | 0.00 | -292,448.76 | 02/25/2008 | 0WP077977/0WR077975 | ABS CDS |
| 95.397828 | 7,150,000,000.0000 | -6,820,944.68 | 0.00 | -6,820,944.68 | | 0WP123292/0WR123290 | IRS - Forward Starting |
| 100.068817 | 1,740,000,000.0000 | -1,741,197.42 | 0.00 | -1,741,197.42 | 06/16/2010 | 0WP123318/0WR123316 | IRS - Forward Starting |
| 95.828010 | 3,570,000,000.0000 | -3,421,059.94 | 0.00 | -3,421,059.94 | | 0WP123391/0WR123399 | IRS - Forward Starting |
| 101.029909 | 870,000,000.0000 | -878,960.21 | 0.00 | -878,960.21 | 06/17/2010 | 0WP123433/0WR123431 | IRS - Forward Starting |
| 104.817464 | -800,000,000.0000 | 838,539.71 | 1,760.00 | 840,299.71 | 03/21/2005 | 0WP014475/0WR014473 | DJ.CDX |
| 65.979834 | -800,000,000.0000 | 527,838.67 | 215.11 | 528,053.78 | 02/25/2008 | 0WP077894/0WR077892 | ABS CDS |
| 88.749998 | -292,448.7600 | 259,548.27 | 30.71 | 259,578.98 | 02/25/2008 | 0WP077977/0WR077975 | ABS CDS |
| 97.142813 | -7,150,000,000.0000 | 6,945,711.15 | 0.00 | 6,945,711.15 | 06/16/2010 | 0WP123292/0WR123290 | IRS - Forward Starting |
| 95.373067 | -1,740,000,000.0000 | 1,659,491.36 | 0.00 | 1,659,491.36 | | 0WP123318/0WR123316 | IRS - Forward Starting |
| 97.919411 | -3,570,000,000.0000 | 3,495,722.96 | 0.00 | 3,495,722.96 | 06/17/2010 | 0WP123391/0WR123399 | IRS - Forward Starting |
| 95.706783 | -870,000,000.0000 | 832,649.01 | 0.00 | 832,649.01 | | 0WP123433/0WR123431 | IRS - Forward Starting |

| Account | Payment Fails | Swap CUSIP | Value Date | Notes | IOC | Notes |
|---------|---------------|------------|------------|-------|-----|-------|
| 1308 | | | | | $ 1,478.89 | (See Attached tabs) |

| Account | Account Name | Account-Owned Collateral | Broker-Owned Collateral (mtm) |
|---------|--------------|--------------------------|-------------------------------|
| 1308 | Western Asset US Core Plus Bond Fund | 350,000.00 | |

# LEHMAN BROTHERS

### TERMINATION AGREEMENT

This Termination Agreement (the "Termination Agreement") is made and entered into as of the 30th day of September 2010, by and among each counterparty listed on Exhibit A attached hereto, severally and not jointly ("Counterparty"), acting by and through Western Asset Management Company as agent and investment adviser ("Investment Adviser"), Lehman Brothers Special Financing Inc. ("Lehman") and Lehman Brothers Holdings Inc. ("Holdings"), as credit support provider of Lehman (each of the foregoing a "Party" and collectively the "Parties").

## RECITALS:

WHEREAS, Counterparty acting by and through Investment Adviser has entered into one or more transactions with Lehman (each a "Transaction" and, together, the "Transactions") that were governed by an ISDA Master Agreement, dated as of July 19, 2001, which included certain schedules, documents, confirmations and a guaranty of the obligations of Lehman by Holdings (collectively, the "Agreement Documents").

WHEREAS, commencing on September 15, 2008 and thereafter, Holdings and certain of its affiliates, including Lehman, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (collectively, the "Bankruptcy Cases").

WHEREAS, the Parties wish to terminate and/or acknowledge the termination of each Transaction under the Agreement Documents as of September 15, 2008.

WHEREAS, on December 16, 2008 the court having jurisdiction over the Bankruptcy Cases (the "Bankruptcy Court") entered an Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts (the "December Order").

WHEREAS, as of the date hereof, the Parties have agreed a settlement amount in favor of Counterparty in the amount of (i) the Lehman Allowed Claim (as defined herein) in respect of the claims against Lehman arising under the Agreement Documents and (ii) the Holdings Allowed Claim (as defined herein) in respect of the claims against Holdings arising under the Agreement Documents.

NOW, THEREFORE, in consideration of the recitals set forth above and promises made herein, the receipt and sufficiency of which is hereby acknowledged, the Parties hereto agree as follows:

Section 1.    Allowance of General Unsecured Claim. In consideration of the termination of the Transactions under the Agreement Documents by Counterparty, Lehman and Holdings hereby agree that Counterparty shall have a single aggregate nonpriority general unsecured claim against Lehman in the fixed amount set forth for Counterparty on Exhibit A hereto (the "Lehman Allowed Claim") and a single aggregate nonpriority general unsecured claim against Holdings in the fixed amount set forth for Counterparty on Exhibit A hereto (the "Holdings Allowed Claim" and, together with the Lehman Allowed Claim, the "Allowed Claims") in full and complete satisfaction of all claims of Counterparty against Lehman, Holdings and any other debtor (each, an "Other Debtor") in the Bankruptcy Cases under or in connection with the Agreement Documents and the Transactions thereunder; provided, however, that the aggregate recovery of Counterparty in respect of the Allowed Claims shall not exceed the Lehman Allowed Claim. In order to reflect the entry into this Termination Agreement, the Parties hereto acknowledge and agree that (i) Lehman may object through a filing with the Bankruptcy Court to any proofs of claim filed against Lehman in relation to the Agreement Documents or the Transactions that are greater than the Lehman Allowed Claim or are unliquidated in nature and allow such claim at the amount

of the Lehman Allowed Claim, (ii) Holdings may object through a filing with the Bankruptcy Court to any proofs of claim filed against Holdings in relation to the Agreement Documents or the Transactions that are greater than the Holdings Allowed Claim or are unliquidated in nature and allow such claim at the amount of the Holdings Allowed Claim and (iii) each Other Debtor may object through a filing with the Bankruptcy Court to any proofs of claim filed against such Other Debtor in relation to the Agreement Documents or the Transactions that are not Allowed Claims or are unliquidated in nature. Pending the filing of such objections, such proofs of claim and related Derivative Questionnaires and/or Guarantee Questionnaire shall be deemed so amended. Counterparty agrees not to challenge or object to such objections when filed.

Section 2.    Release. In consideration of each other Party's execution of this Termination Agreement and the Allowed Claims, each Party on behalf of itself and any other party, person or entity claiming under or through it, hereby generally releases, discharges and acquits each other Party, and its respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, advisory affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature, and character whatsoever, other than the Allowed Claims and the rights and obligations of the Parties set forth under this Termination Agreement, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date, against any Released Party arising under or related to the Agreement Documents or the Transactions thereunder, their negotiation, execution, performance, any breaches thereof, or their termination.

Section 3.    Representations. Each Party represents and warrants to each other Party that (i) the execution, delivery and performance by such Party of this Termination Agreement are within the powers of such Party and have been duly authorized by all necessary action on the part of such Party, (ii) this Termination Agreement has been duly executed and delivered by such Party and constitutes a valid and binding obligation of such Party, enforceable against such Party in accordance with the terms hereof, (iii) it is not relying upon any statements, understandings, representations, expectations or agreements other than those expressly set forth in this Termination Agreement, (iv) it has had the opportunity to be represented and advised by legal counsel in connection with this Termination Agreement, which it enters into voluntarily and of its own choice and not under coercion or duress, (v) it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel, (vi) it has no expectation that any of the other Parties will disclose facts material to the Agreement Documents or this Termination Agreement, (vii) it reaffirms each of its representations set forth in Part 2 of the Schedule, which are incorporated herein by reference, and (viii) it knowingly waives any and all claims that this Termination Agreement was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Termination Agreement based upon presently existing facts, known or unknown. Additionally, Lehman and Holdings represent and warrant to Counterparty that this Termination Agreement is being entered into in accordance with the terms of the December Order and Counterparty reaffirms each of its representations set forth in Section 5(h) of the Schedule, which are incorporated herein by reference. The Parties agree and stipulate that each Party is relying upon the representations and warranties in this Section in entering into the Termination Agreement. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Termination Agreement. These representations and warranties shall survive the execution of this Termination Agreement indefinitely without regard to statutes of limitations.

- 2 -

Section 4.    Representation and Agreement of Investment Adviser. Investment Adviser (i) represents and warrants that it has full power and legal authority, power of attorney, or both, to execute this Termination Agreement on behalf of and to bind Counterparty; and (ii) reaffirms each of its representations set forth in Section 5(i) of the Schedule, which are incorporated herein by reference.

Section 5.    Setoff. Counterparty agrees that it will not, nor will Counterparty permit any affiliate or third party to set-off, recoup, appropriate, or otherwise apply any deposits (general, special, time or demand, provisional or final) in any currency, or any other credits, indebtedness or claims, in any currency, whether direct or indirect, absolute or contingent, matured or unmatured, that are held or owing by Counterparty or any third party or affiliate against the Allowed Claims and Counterparty hereby irrevocably and unconditionally waives any and all rights to do so, whether such rights arise by virtue of contract or law.

Section 6.    Indemnification. Counterparty shall indemnify, defend, and hold harmless Lehman and Holdings, their respective directors, officers, agents, employees, successors and assigns with respect to any and all claims, damages, judgments, actions, and causes of action, including all reasonable costs, expenses and attorneys' fees incurred in the defense of any and all claims, arising out of and/or in relation to any actual or alleged breach of this Termination Agreement by Counterparty or any of its successors or assigns. Notwithstanding the foregoing, Lehman's and Holdings' total recourse for the satisfaction of any claim against or obligation of Counterparty under this Agreement shall be only against the assets of Counterparty then under management by the Investment Adviser.

Section 7.    Execution in Counterparts. This Termination Agreement may be executed in any number of counterparts and by different Parties in separate counterparts, each of which when so executed and delivered shall be deemed to be an original and all of which taken together shall constitute but one and the same instrument. Delivery of an executed counterpart of a signature page by facsimile or PDF transmission shall be as effective as delivery of a manually executed counterpart.

Section 8.    Effectiveness. This Termination Agreement shall become effective upon execution hereof by each of the Parties. The Transactions that are not already terminated according to their terms will terminate as of the effective date of this Termination Agreement.

Section 9.    Governing Law/Jurisdiction. This Termination Agreement will be construed and enforced in accordance with, and the rights of the Parties shall be governed by, the laws of the State of New York (including Section 5-1401 of the New York General Obligations Law), without regard to conflicts of laws principles that would require the application of the law of another jurisdiction. The Bankruptcy Court shall have exclusive jurisdiction over any action or proceeding with respect to this Termination Agreement and each Party agrees to submit to such jurisdiction and to waive any defense based on the location or jurisdiction of such court.

Section 10.    Special Provision for Unknown Claims. All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 2. Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

- 3 -

Section 11.      Confidentiality.  No Party shall disclose this Termination Agreement or any of its terms, including the Allowed Claims ("Confidential Information"), to any person other than to its directors, officers, employees, advisory affiliates, counsel, accountants, auditors and other advisors and, with respect to Lehman and Holdings, the Bankruptcy Court, the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., Et. Al and their advisors, and, with respect to Counterparty, any potential assignees (provided that, prior to any disclosure, such potential assignees have executed with Counterparty a confidentiality agreement the terms of which are no less restrictive than the terms of this Confidentiality provision) (hereinafter, collectively, the "Related Parties"), in each case who need to know such information solely for the purpose of effecting this Termination Agreement or complying with such Party's obligations, or, in the case of a potential assignee, solely for the purpose of effecting an assignment of the Allowed Claims (each Party shall ensure that its Related Parties will be informed in advance of the confidential nature of the Confidential Information and will be directed to maintain the confidentiality of such Confidential Information and such Party shall be responsible if any such Related Party fails to comply with such confidentiality obligations), except as may be required by law, including but not limited to as may be required by United States federal or state securities and bankruptcy laws, legal process, rule, regulation or as requested by a regulatory authority. Each Party agrees that, when it enters into a confidentiality agreement with respect to Confidential Information, it shall promptly provide the other Party with a copy of said agreement.

If a Party or any of its related Parties becomes legally obligated (whether by court or regulatory order or otherwise), other than due to compliance with United States federal or state securities or bankruptcy laws, or in connection with regulatory examinations, to disclose any of the Confidential Information, such Party will promptly provide the other Party, if permitted by law, with notice of such proposed disclosure so that the other Party may seek, at its cost, a protective order or other appropriate remedy. If such a protective order or other protective remedy is not obtained, the Party or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and such Party or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

Section 12.      Successors and Assigns.  The provisions of this Termination Agreement will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

Section 13.      Amendment.     This Termination Agreement may be amended, modified, superseded or canceled, and any of the terms, covenants, representations, warranties or conditions hereof may be waived only by an instrument in writing signed by each of the Parties.

Section 14.      Entire Agreement.  This Termination Agreement constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

Section 15.      Construction.  This Termination Agreement has been negotiated by the Parties and their respective legal counsel, and legal or equitable principles that might require the construction of this Termination Agreement or any of its provisions against the Party responsible for drafting this Termination Agreement will not apply in any construction or interpretation of this Termination Agreement.

*[Signature pages follow]*

- 4 -

# LEHMAN BROTHERS

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:
Name: Daniel Ehrmann
Title: Vice President

LEHMAN BROTHERS HOLDINGS INC.

By:
Name: Daniel Ehrmann
Title: Senior Vice President

WESTERN ASSET MANAGEMENT COMPANY in its individual corporate capacity solely with respect to Sections 3 and 12 hereof

By: _____
Name:
Title:

WESTERN ASSET MANAGEMENT COMPANY as agent and investment adviser on behalf of each Counterparty listed on Exhibit A hereto

By: _____
Name:
Title:

5

# LEHMAN BROTHERS

IN WITNESS WHEREOF, the undersigned have executed, or have caused to be executed, this Termination Agreement on the date first written above.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:
Title:

LEHMAN BROTHERS HOLDINGS INC.

By: _____
Name:
Title:

WESTERN ASSET MANAGEMENT COMPANY in its individual corporate capacity solely with respect to Sections 3 and 12 hereof

By: _____
Name: W. Stephen Venable Jr.
Title: Manager US Legal Affairs

WESTERN ASSET MANAGEMENT COMPANY as agent and investment adviser on behalf of each Counterparty listed on Exhibit A hereto

By: _____
Name: W. Stephen Venable, Jr.
Title: Manager US Legal Affairs

5

## EXHIBIT A

| 1308 | Western Asset US Core Plus Bond Fund | 0906021308LBSF | $79,404.85 | $79,404.85 |
|------|--------------------------------------|----------------|------------|------------|

## CERTIFICATE OF INCUMBENCY AND SIGNATURE

I, Madeline L. Shapiro, a duly elected, qualified and acting Assistant Secretary of Lehman Brothers Special Financing Inc., a Delaware corporation (the "Corporation"), do hereby certify that the person listed below holds the title in the Corporation indicated opposite his name on the date hereof and that the signature appearing opposite his name is a genuine signature of such person.

| Name | Title | Signature |
|------|-------|-----------|
| Daniel Ehrmann | Vice President | |

IN WITNESS WHEREOF, I have hereunto set my hand this 14th day of July, 2010.

Name: Madeline L. Shapiro
Title: Assistant Secretary

## CERTIFICATE OF INCUMBENCY AND SIGNATURE

I, Madeline L. Shapiro, a duly elected, qualified and acting Assistant Secretary of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby certify that the person listed below holds the title in the Corporation indicated opposite his name on the date hereof and that the signature appearing opposite his name is a genuine signature of such person.

| Name | Title | Signature |
|------|-------|-----------|
| Daniel Ehrmann | Senior Vice President | |

IN WITNESS WHEREOF, I have hereunto set my hand this 14th day of July, 2010.

Name: Madeline L. Shapiro
Title:  Assistant Secretary

# WESTERN ASSET

July 1, 2010

To Whom It May Concern:

With respect to contracts the Company may enter into, the following persons are authorized to sign on behalf of the Company.

| Name | Title | Specimen Signature | Telephone |
|------|-------|--------------------|-----------|
| Bruce D. Alberts | Chief Financial Officer | | (626) 844-9477 |
| Geoff C. Blaisdell | Head of Information Technology | | (626) 844-9727 |
| Kevin W. Brennan | Manager, Fund Treasury | | (626) 844-9700 |
| Brett B. Canon | Director of Risk Management and Operations | | (626) 844-9505 |
| Kevin Ehrlich | Manager, Regulatory Affairs | | (626) 844-9407 |
| James J. Flick | Director of Client Service and Marketing | | (626) 844-9652 |
| Daniel E. Giddings | Manager, International Legal and Compliance | | (626) 844-9486 |
| Ronald R. Galles | Head of Corporate Finance - US | | 626-844-9459 |
| Timothy B. Hagerty | Head of Investment Support | | (626) 844-9782 |
| Ilene S. Harker | Head of Enterprise Risk | | (626) 844-9410 |
| Sandra M. Helm | Human Resources | | (626) 844-5457 |
| James W. Hirschmann | President and Chief Executive Officer | | (626) 844-9515 |
| Gavin L. James | Director of Portfolio Operations | | (626) 844-9536 |

| Name | Title | Specimen Signature | 2 Telephone |
|---|---|---|---|
| S. Kenneth Leech | Chief Investment Officer Emeritus | | (626) 844-9630 |
| Dennis J. McNamara | Head of U.S. Generalists | | (626) 844-9636 |
| Rodolphe S. Otter | Head of International Client Service and Marketing | | (626) 844-4858 |
| Charles A. Ruys de Perez | General Counsel; Head of Legal and Compliance | | (626) 817-5134 |
| Stephen A. Walsh | Chief Investment Officer | | (626) 844-9650 |
| Paul M. White | Head of Human Resources | | (626) 844-9468 |
| Michael A. Van Raaphorst | Client Service Executive | | (212) 601-6211 |
| W. Stephen Venable | Manager, U.S. Legal | | (626) 844-9456 |
| Kenneth Winston | Chief Risk Officer | | (626) 844-9734 |
| Michael B. Zelouf | Director, International Business | | 011-44-207-426-3040 |
| Barbara L. Ziegler | Head of Client Service and Marketing Support | | (626) 844-9576 |

You may fully rely on the instructions of any one of these parties until notified to the contrary.

Sincerely,

Charles A. Ruys de Perez
General Counsel and Secretary