# EXHIBIT D

MANAGING DIRECTOR EQUITY AWARD PROGRAM

# AGREEMENT EVIDENCING A GRANT OF RESTRICTED STOCK UNITS

*Investment Representatives*



# LEHMAN BROTHERS

**1. GRANT OF UNITS.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") Employee Incentive Plan (the "Plan"), you are hereby granted, as of November 30, 2005 (the "Date of Grant"), the number of Restricted Stock Units ("Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of Units may be adjusted pursuant to Paragraph 8 below).

In the event of your Termination prior to November 30, 2005, the number of Units you were awarded was based on the appropriate portion of your production-based compensation accrued for your 2005 equity award through the date of your Termination, in accordance with Holdings' standard formula for the payout of equity-based compensation for employees at your level.

**2. ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

**3. VESTING.** Subject to Paragraph 4, units awarded to you hereunder shall become vested in accordance with the following vesting schedule

- Half of the Principal Units (35% of the total award) shall become vested on November 30, 2008.
- The remaining half of the Principal Units and all of the Discount Units (65% of the total award) shall become vested on November 30, 2010.

**4. ENTITLEMENT TO RECEIVE COMMON STOCK.**

**(a) General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each Unit which you hold on November 30, 2010 (the "Maturity Date") and you shall be entitled to receive freely transferable Shares of Common Stock as soon as practicable after the Maturity Date, but no later than December 31, 2010.

**(b) Effect of Detrimental Activity.** Notwithstanding any other provision of this Agreement if you engage in Detrimental Activity at any time prior to the Share Payment Date, all Units held by you shall be forfeited and canceled.

**(c) Occurrence of Death, Disability.** In the event of the occurrence of your death or Disability, all outstanding Units held by you shall become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

**(d) Voluntary Termination with Competitive Activity.** In the event of your voluntary Termination with Competitive Activity, (i) all Discount Units shall be forfeited and canceled, (ii) if such Termination occurs prior to November 30, 2008, all Principal Units shall be forfeited and canceled and (iii) if such Termination occurs on or subsequent to November 30, 2008, you shall be entitled to receive freely transferable shares of Common Stock for half of the Principal Units (35% of the total award).

**(e) Voluntary Termination without Competitive Activity.** In the event of your voluntary Termination without Competitive Activity, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or a Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full

Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all Discount Units, provided you do not engage in Competitive Activity prior to the Share Payment Date. In the event of Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply.

**(f) Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all Principal Units and Discount Units shall be forfeited and canceled.

**(g) Involuntary Termination without Cause.** In the event of your involuntary Termination without Cause, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all the Discount Units.

**(h) Retirement.** Notwithstanding the foregoing provisions of Paragraphs 4(d), (e) and (g), in the event of your Retirement and provided you do not engage in Competitive Activity or Detrimental Activity, you shall be entitled to receive freely transferable shares of Common Stock for all Principal Units and Discount Units on the 30th day following your Retirement. In the event of a voluntary Termination, if you engage in Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply as of the date of your Retirement, and you shall forfeit Units in accordance with such provision or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares received in excess of those which you would have received under Paragraph 4(d). In any case, if you engage in Detrimental Activity prior to the Share Payment Date, you shall forfeit all Units held by you or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares you received under this Agreement.

**(i) Occurrence of Death or Disability following Termination.** Notwithstanding the foregoing provisions of Paragraph 4(d), (e), (f) and (g), in the event of the occurrence of your death or Disability following a Termination described in Paragraph 4(e) or (g) hereof, all outstanding Units held by you shall at that time become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

Any shares that become payable pursuant to this Paragraph 4 (other than Paragraph 4(h) or (i)) shall be issued to you on the Share Payment Date, subject to the application of Paragraph 4(b). Any remaining Units that are not payable pursuant to the provisions of Paragraph 4(d)-(i) shall be canceled by Holdings.

**(j) Affidavit.** In the event of your Termination, you may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit as required may cause you to forfeit all Units held by you at that time or, in the event of Retirement, to repay to Holdings the full gross amounts or shares you received under this Agreement.

**5. DIVIDEND EQUIVALENTS.** With respect to each dividend or distribution paid or made on Common Stock to holders of record, you shall be credited with a number of additional Units equal in value to such dividend or distribution as of the date of such dividend or distribution, subject to Paragraph 8. Such additional Units shall vest and become payable at the same time as the Units to which they are attributable.

**6. LIMITATION ON OBLIGATIONS.** Holdings' and any Subsidiary's obligation with respect to the Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Subsidiary become obligated to pay cash in respect of such obligation. If the date on which shares with respect to Units are to be issued or delivered to you falls on a non-business or non-trading day, such shares shall be delivered on the immediately succeeding trading day. Whenever shares with respect to Units are required to be delivered on the 30th day following a specific triggering event, and such 30th day falls within the same tax year as the triggering event, the delivery may be made earlier, at the discretion of Holdings.

**7. NON-ASSIGNMENT.** Units may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

**8. EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the date you receive shares with respect to the Units, the number and kind of shares of Common Stock which may be issued with respect to Units shall be adjusted so as to reflect such change.

**9. CHANGE IN CONTROL.** Except as set forth below, upon the occurrence of a Change in Control without the prior approval of a majority of the independent members of the Incumbent Board, your Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be issued. Except as set forth below, upon the occurrence of a Change in Control with the prior approval of a majority of the independent members of the Incumbent Board, you shall receive in the same form of consideration as that received by shareholders generally, the lesser of (a) the undiscounted market value (at the time of grant) of the shares of Common Stock underlying your outstanding Units or (b) the price paid by an acquirer for such shares of Common Stock, and the excess, if any, of the price paid by an acquirer over such undiscounted market value shall be deferred for the shorter of (x) two years following such Change in Control or (y) the term of any remaining restrictions (the "Deferred Period"), but your Units shall remain otherwise subject to all issuance restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any Units, in which case you would only be issued Common Stock or receive the undiscounted market value in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such Units upon successful completion of a Change in Control.

**10. AMENDMENT.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions).

**11. BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with

the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

**12. NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of Units shall not confer on you any right to be retained in the employ of Holdings or a Subsidiary, or to receive subsequent Units or other awards under the Plan. The right of Holdings or any Subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any Subsidiary and you is specifically reserved.

**13. APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

**14. WITHHOLDING / DEDUCTIONS.** Holdings shall have the right to deduct applicable taxes from all amounts payable to you. It shall be a condition to the obligation of Holdings to issue shares of Common Stock hereunder (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may withhold shares of Common Stock and / or related dividend equivalents to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Subsidiary.

**15. CODE SECTION 409A.** It is intended that none of the Units or payments otherwise due hereunder shall be deferred, accelerated, extended, paid out or modified in a manner that would result in the imposition upon you of an additional tax under Section 409A of the Code; provided that neither Holdings nor any of its employees or representatives shall have any liability to you with respect to any such taxes. In the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, payments hereunder may not be made at the time contemplated by the terms of this Agreement or the Plan, as the case may be, without causing you to be subject to taxation under Section 409A of the Code, Holdings will make such payment on the first day that would not result in your incurring any tax liability under Section 409A of the Code.

**ANNEX A: DEFINITIONS**

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment

contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer.

"**Change in Capitalization**" means the occurrence of a circumstance described in Section 14 of the Plan.

"**Committee**" shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

"**Competitive Activity**" means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its Subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its Subsidiaries, as determined in the sole discretion of an Appropriate Officer.

"**Detrimental Activity**" means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

"**Disability**" means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

"**Discount Units**" shall mean the number of Units (and any dividend equivalents related thereto) related to the 30% discount upon issuance of the award.

"**Full Career Termination**" means a Termination when (i) a person has at least 20 years of service or (ii) a person meets all of the following criteria: (x) the person's age plus years of service with Holdings or any Subsidiary equals at least 65, (y) the person is at least 45 years old, and (z) the person has at least 10 years of service with Holdings or any Subsidiary.

"**Principal Units**" shall mean the number of Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award (70% of the total number of units awarded).

©2005 Lehman Brothers. All Rights Reserved.

"**Retirement**" means a Termination when the person's age plus years of service with Holdings or any Subsidiary equals at least 65, provided that (i) the person is at least 65 years old and has at least 5 years of service or (ii) the person is at least 55 years old and has at least 10 years of service.

"**Share Payment Date**" means the earlier of (a) the Maturity Date or (b) the 30th day after the completion of the fiscal quarter following the one-year anniversary of termination of employment.

"**Termination**" means the end of active employment with Holdings or a Subsidiary. The characterization of the circumstances of Termination is determined in the sole discretion of an Appropriate Officer.

**4**

## 2005 **MANAGING DIRECTOR** EQUITY AWARD PROGRAM

# AGREEMENT EVIDENCING A GRANT OF RESTRICTED STOCK UNITS

*Investment Representatives*



## LEHMAN BROTHERS

**1. GRANT OF UNITS.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") Employee Incentive Plan (the "Plan"), you are hereby granted, as of November 30, 2005 (the "Date of Grant"), the number of Restricted Stock Units ("Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of Units may be adjusted pursuant to Paragraph 8 below).

In the event of your Termination prior to November 30, 2005, the number of Units you were awarded was based on the appropriate portion of your production-based compensation accrued for your 2005 equity award through the date of your Termination, in accordance with Holdings' standard formula for the payout of equity-based compensation for employees at your level.

**2. ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

**3. VESTING.** Subject to Paragraph 4, units awarded to you hereunder shall become vested in accordance with the following vesting schedule

- Half of the Principal Units (35% of the total award) shall become vested on November 30, 2008.
- The remaining half of the Principal Units and all of the Discount Units (65% of the total award) shall become vested on November 30, 2010.

**4. ENTITLEMENT TO RECEIVE COMMON STOCK.**

**(a) General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each Unit which you hold on November 30, 2010 (the "Maturity Date") and you shall be entitled to receive freely transferable Shares of Common Stock as soon as practicable after the Maturity Date, but no later than December 31, 2010.

**(b) Effect of Detrimental Activity.** Notwithstanding any other provision of this Agreement if you engage in Detrimental Activity at any time prior to the Share Payment Date, all Units held by you shall be forfeited and canceled.

**(c) Occurrence of Death, Disability.** In the event of the occurrence of your death or Disability, all outstanding Units held by you shall become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

**(d) Voluntary Termination with Competitive Activity.** In the event of your voluntary Termination with Competitive Activity, (i) all Discount Units shall be forfeited and canceled, (ii) if such Termination occurs prior to November 30, 2008, all Principal Units shall be forfeited and canceled and (iii) if such Termination occurs on or subsequent to November 30, 2008, you shall be entitled to receive freely transferable shares of Common Stock for half of the Principal Units (35% of the total award).

**(e) Voluntary Termination without Competitive Activity.**
In the event of your voluntary Termination without Competitive Activity, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or a Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full

Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all Discount Units, provided you do not engage in Competitive Activity prior to the Share Payment Date. In the event of Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply.

**(f) Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all Principal Units and Discount Units shall be forfeited and canceled.

**(g) Involuntary Termination without Cause.** In the event of your involuntary Termination without Cause, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all the Discount Units.

**(h) Retirement.** Notwithstanding the foregoing provisions of Paragraphs 4(d), (e) and (g), in the event of your Retirement and provided you do not engage in Competitive Activity or Detrimental Activity, you shall be entitled to receive freely transferable shares of Common Stock for all Principal Units and Discount Units on the 30th day following your Retirement. In the event of a voluntary Termination, if you engage in Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply as of the date of your Retirement, and you shall forfeit Units in accordance with such provision or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares received in excess of those which you would have received under Paragraph 4(d). In any case, if you engage in Detrimental Activity prior to the Share Payment Date, you shall forfeit all Units held by you or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares you received under this Agreement.

**(i) Occurrence of Death or Disability following Termination.** Notwithstanding the foregoing provisions of Paragraph 4(d), (e), (f) and (g), in the event of the occurrence of your death or Disability following a Termination described in Paragraph 4(e) or (g) hereof, all outstanding Units held by you shall at that time become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

Any shares that become payable pursuant to this Paragraph 4 (other than Paragraph 4(h) or (i)) shall be issued to you on the Share Payment Date, subject to the application of Paragraph 4(b). Any remaining Units that are not payable pursuant to the provisions of Paragraph 4(d)-(i) shall be canceled by Holdings.

**(j) Affidavit.** In the event of your Termination, you may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit as required may cause you to forfeit all Units held by you at that time or, in the event of Retirement, to repay to Holdings the full gross amounts or shares you received under this Agreement.

**5. DIVIDEND EQUIVALENTS.** With respect to each dividend or distribution paid or made on Common Stock to holders of record, you shall be credited with a number of additional Units equal in value to such dividend or distribution as of the date of such dividend or distribution, subject to Paragraph 8. Such additional Units shall vest and become payable at the same time as the Units to which they are attributable.

**6. LIMITATION ON OBLIGATIONS.** Holdings' and any Subsidiary's obligation with respect to the Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Subsidiary become obligated to pay cash in respect of such obligation. If the date on which shares with respect to Units are to be issued or delivered to you falls on a non-business or non-trading day, such shares shall be delivered on the immediately succeeding trading day. Whenever shares with respect to Units are required to be delivered on the 30th day following a specific triggering event, and such 30th day falls within the same tax year as the triggering event, the delivery may be made earlier, at the discretion of Holdings.

**7. NON-ASSIGNMENT.** Units may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

**8. EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the date you receive shares with respect to the Units, the number and kind of shares of Common Stock which may be issued with respect to Units shall be adjusted so as to reflect such change.

**9. CHANGE IN CONTROL.** Except as set forth below, upon the occurrence of a Change in Control without the prior approval of a majority of the independent members of the Incumbent Board, your Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be issued. Except as set forth below, upon the occurrence of a Change in Control with the prior approval of a majority of the independent members of the Incumbent Board, you shall receive in the same form of consideration as that received by shareholders generally, the lesser of (a) the undiscounted market value (at the time of grant) of the shares of Common Stock underlying your outstanding Units or (b) the price paid by an acquirer for such shares of Common Stock, and the excess, if any, of the price paid by an acquirer over such undiscounted market value shall be deferred for the shorter of (x) two years following such Change in Control or (y) the term of any remaining restrictions (the "Deferred Period"), but your Units shall remain otherwise subject to all issuance restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any Units, in which case you would only be issued Common Stock or receive the undiscounted market value in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such Units upon successful completion of a Change in Control.

**10. AMENDMENT.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions).

**11. BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with

the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

**12. NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of Units shall not confer on you any right to be retained in the employ of Holdings or a Subsidiary, or to receive subsequent Units or other awards under the Plan. The right of Holdings or any Subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any Subsidiary and you is specifically reserved.

**13. APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

**14. WITHHOLDING / DEDUCTIONS.** Holdings shall have the right to deduct applicable taxes from all amounts payable to you. It shall be a condition to the obligation of Holdings to issue shares of Common Stock hereunder (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may withhold shares of Common Stock and / or related dividend equivalents to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Subsidiary.

**15. CODE SECTION 409A.** It is intended that none of the Units or payments otherwise due hereunder shall be deferred, accelerated, extended, paid out or modified in a manner that would result in the imposition upon you of an additional tax under Section 409A of the Code; provided that neither Holdings nor any of its employees or representatives shall have any liability to you with respect to any such taxes. In the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, payments hereunder may not be made at the time contemplated by the terms of this Agreement or the Plan, as the case may be, without causing you to be subject to taxation under Section 409A of the Code, Holdings will make such payment on the first day that would not result in your incurring any tax liability under Section 409A of the Code.

**ANNEX A: DEFINITIONS**

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment

3

contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer.

**"Change in Capitalization"** means the occurrence of a circumstance described in Section 14 of the Plan.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its Subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its Subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

**"Discount Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the 30% discount upon issuance of the award.

**"Full Career Termination"** means a Termination when (i) a person has at least 20 years of service or (ii) a person meets all of the following criteria: (x) the person's age plus years of service with Holdings or any Subsidiary equals at least 65, (y) the person is at least 45 years old, and (z) the person has at least 10 years of service with Holdings or any Subsidiary.

**"Principal Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award (70% of the total number of units awarded).

**"Retirement"** means a Termination when the person's age plus years of service with Holdings or any Subsidiary equals at least 65, provided that (i) the person is at least 65 years old and has at least 5 years of service or (ii) the person is at least 55 years old and has at least 10 years of service.

**"Share Payment Date"** means the earlier of (a) the Maturity Date or (b) the 30th day after the completion of the fiscal quarter following the one-year anniversary of termination of employment.

**"Termination"** means the end of active employment with Holdings or a Subsidiary. The characterization of the circumstances of Termination is determined in the sole discretion of an Appropriate Officer.

**4**

©2005 Lehman Brothers. All Rights Reserved.

## 2005 **MANAGING DIRECTOR** EQUITY AWARD PROGRAM

# AGREEMENT EVIDENCING A GRANT OF RESTRICTED STOCK UNITS



# LEHMAN BROTHERS

**1. GRANT OF UNITS.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") Employee Incentive Plan (the "Plan"), you are hereby granted, as of November 30, 2005 (the "Date of Grant"), the number of Restricted Stock Units ("Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of Units may be adjusted pursuant to Paragraph 8 below).

**2. ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

**3. VESTING.** Subject to Paragraph 4, units awarded to you hereunder shall become vested in accordance with the following vesting schedule

- Half of the Principal Units (35% of the total award) shall become vested on November 30, 2008.
- The remaining half of the Principal Units and all of the Discount Units (65% of the total award) shall become vested on November 30, 2010.

**4. ENTITLEMENT TO RECEIVE COMMON STOCK.**

**(a) General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each Unit which you hold on November 30, 2010 (the "Maturity Date") and you shall be entitled to receive freely transferable Shares of Common Stock as soon as practicable after the Maturity Date, but no later than December 31, 2010.

**(b) Effect of Detrimental Activity.** Notwithstanding any other provision of this Agreement, if you engage in Detrimental Activity at any time prior to the Share Payment Date, all Units held by you shall be forfeited and canceled.

**(c) Occurrence of Death, Disability.** In the event of the occurrence of your death or Disability, on or after January 31, 2006, all outstanding Units held by you shall become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

**(d) Effect of Termination.** In the event of your Termination for any reason or notification of Termination prior to January 31, 2006, all Units held by you shall be forfeited and cancelled. In the event of any Termination not described in the preceding sentence, the following rules shall apply:

**(i) Voluntary Termination with Competitive Activity.** In the event of your voluntary Termination with Competitive Activity, (i) all Discount Units shall be forfeited and canceled, (ii) if such Termination occurs prior to November 30, 2008, all Principal Units shall be forfeited and canceled and (iii) if such Termination occurs on or subsequent to November 30, 2008, you shall be entitled to receive freely transferable shares of Common Stock for half of the Principal Units (35% of the total award).

**(ii) Voluntary Termination without Competitive Activity.** In the event of your voluntary Termination without Competitive Activity, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or a Subsidiary after November 30,

2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all Discount Units, provided you do not engage in Competitive Activity prior to the Share Payment Date. In the event of Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d)(i) shall apply.

**(iii) Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all Principal Units and Discount Units shall be forfeited and canceled.

**(iv) Involuntary Termination without Cause.** In the event of your involuntary Termination without Cause, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all the Discount Units.

**(v) Retirement.** Notwithstanding the foregoing provisions of Paragraphs 4(d)(i), (ii), and (iv), in the event of your Retirement and provided you do not engage in Competitive Activity or Detrimental Activity, you shall be entitled to receive freely transferable shares of Common Stock for all Principal Units and Discount Units on the 30th day following your Retirement. In the event of a voluntary Termination, if you engage in Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d)(i) shall apply as of the date of your Retirement, and you shall forfeit Units in accordance with such provision or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares received in excess of those which you would have received under Paragraph 4(d)(i). In any case, if you engage in Detrimental Activity prior to the Share Payment Date, you shall forfeit all Units held by you or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares you received under this Agreement.

**(vi) Occurrence of Death or Disability following Termination.** Notwithstanding the foregoing provisions of Paragraph 4(d)(i), (ii), (iii) and (iv) in the event of the occurrence of your death or Disability following a Termination described in Paragraph 4(d)(ii) or (iv) hereof, all outstanding Units held by you shall at that time become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

Any shares that become payable pursuant to this Paragraph 4(d) (other than Paragraph 4(d)(v) or (vi)) shall be issued to you on the Share Payment Date, subject to the application of Paragraph 4(b). Any remaining Units that are not payable pursuant to the provisions of Paragraph 4(d) shall be canceled by Holdings.

**(e) Affidavit.** In the event of your Termination on or after January 31, 2006, you may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit as required may cause you to forfeit all Units held by you at that time or, in the event of Retirement, to repay to Holdings the full gross amounts or shares you received under this Agreement.

**5. DIVIDEND EQUIVALENTS.** With respect to each dividend or distribution paid or made on Common Stock to holders of record on or after January 31, 2006, you shall be credited with a number of additional Units equal in value to such dividend or distribution as of the date of such dividend or distribution, subject to Paragraph 8. Such additional Units shall vest and become payable at the same time as the Units to which they are attributable.

**6. LIMITATION ON OBLIGATIONS.** Holdings' and any Subsidiary's obligation with respect to the Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Subsidiary become obligated to pay cash in respect of such obligation. If the date on which shares with respect to Units are to be issued or delivered to you falls on a non-business or non-trading day, such shares shall be delivered on the immediately succeeding trading day. Whenever shares with respect to Units are required to be delivered on the 30th day following a specific triggering event, and such 30th day falls within the same tax year as the triggering event, the delivery may be made earlier, at the discretion of Holdings.

**7. NON-ASSIGNMENT.** Units may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

**8. EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the date you receive shares with respect to the Units, the number and kind of shares of Common Stock which may be issued with respect to Units shall be adjusted so as to reflect such change.

**9. CHANGE IN CONTROL.** Except as set forth below, upon the occurrence of a Change in Control without the prior approval of a majority of the independent members of the Incumbent Board, your Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be issued. Except as set forth below, upon the occurrence of a Change in Control with the prior approval of a majority of the independent members of the Incumbent Board, you shall receive in the same form of consideration as that received by shareholders generally, the lesser of (a) the undiscounted market value (at the time of grant) of the shares of Common Stock underlying your outstanding Units or (b) the price paid by an acquirer for such shares of Common Stock, and the excess, if any, of the price paid by an acquirer over such undiscounted market value shall be deferred for the shorter of (x) two years following such Change in Control or (y) the term of any remaining restrictions (the "Deferred Period"), but your Units shall remain otherwise subject to all issuance restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any Units, in which case you would only be issued Common Stock or receive the undiscounted market value in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such Units upon successful completion of a Change in Control.

**10. AMENDMENT.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions).

**11. BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with

the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

**12. NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of Units shall not confer on you any right to be retained in the employ of Holdings or a Subsidiary, or to receive subsequent Units or other awards under the Plan. The right of Holdings or any Subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any Subsidiary and you is specifically reserved.

**13. APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

**14. WITHHOLDING / DEDUCTIONS.** Holdings shall have the right to deduct applicable taxes from all amounts payable to you. It shall be a condition to the obligation of Holdings to issue shares of Common Stock hereunder (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may withhold shares of Common Stock and / or related dividend equivalents to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Subsidiary.

**15. CODE SECTION 409A.** It is intended that none of the Units or payments otherwise due hereunder shall be deferred, accelerated, extended, paid out or modified in a manner that would result in the imposition upon you of an additional tax under Section 409A of the Code; provided that neither Holdings nor any of its employees or representatives shall have any liability to you with respect to any such taxes. In the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, payments hereunder may not be made at the time contemplated by the terms of this Agreement or the Plan, as the case may be, without causing you to be subject to taxation under Section 409A of the Code, Holdings will make such payment on the first day that would not result in your incurring any tax liability under Section 409A of the Code.

**ANNEX A: DEFINITIONS**

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment

3

contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer.

**"Change in Capitalization"** means the occurrence of a circumstance described in Section 14 of the Plan.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its Subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its Subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

**"Discount Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the 30% discount upon issuance of the award.

**"Full Career Termination"** means a Termination when (i) a person has at least 20 years of service or (ii) a person meets all of the following criteria: (x) the person's age plus years of service with Holdings or any Subsidiary equals at least 65, (y) the person is at least 45 years old, and (z) the person has at least 10 years of service with Holdings or any Subsidiary.

**"Principal Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award (70% of the total number of units awarded).

**"Retirement"** means a Termination when the person's age plus years of service with Holdings or any Subsidiary equals at least 65, provided that (i) the person is at least 65 years old and has at least 5 years of service or (ii) the person is at least 55 years old and has at least 10 years of service.

**"Share Payment Date"** means the earlier of (a) the Maturity Date or (b) the 30th day after the completion of the fiscal quarter following the one-year anniversary of termination of employment.

**"Termination"** means the end of active employment with Holdings or a Subsidiary. The characterization of the circumstances of Termination is determined in the sole discretion of an Appropriate Officer.

©2005 Lehman Brothers. All Rights Reserved.

**4**

## 2005 EQUITY AWARD PROGRAM

# AGREEMENT EVIDENCING A GRANT OF RESTRICTED STOCK UNITS

*Investment Representatives*



# LEHMAN BROTHERS

**1.  GRANT OF UNITS.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") Employee Incentive Plan (the "Plan"), you are hereby granted, as of November 30, 2005 (the "Date of Grant"), the number of Restricted Stock Units ("Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of Units may be adjusted pursuant to Paragraph 8 below).

In the event of your Termination prior to November 30, 2005, the number of Units you were awarded was based on the appropriate portion of your production-based compensation accrued for your 2005 equity award through the date of your Termination, in accordance with Holdings' standard formula for the payout of equity-based compensation for employees at your level.

**2.  ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

**3.  VESTING.** Subject to Paragraph 4, units awarded to you hereunder shall become vested in accordance with the following vesting schedule

■ The Principal Units (75% of the total award) shall become vested on November 30, 2007.

■ The Discount Units (25% of the total award) shall become vested on November 30, 2010.

**4.  ENTITLEMENT TO RECEIVE COMMON STOCK.**

**(a)  General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each Unit which you hold on November 30, 2010 (the "Maturity Date") and you shall be entitled to receive freely transferable Shares of Common Stock as soon as practicable after the Maturity Date, but no later than December 31, 2010.

**(b)  Effect of Detrimental Activity.** Notwithstanding any other provision of this Agreement if you engage in Detrimental Activity at any time prior to the Share Payment Date, all Units held by you shall be forfeited and canceled.

**(c)  Occurrence of Death, Disability.** In the event of the occurrence of your death or Disability, all outstanding Units held by you shall become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

**(d)  Voluntary Termination with Competitive Activity.** In the event of your voluntary Termination with Competitive Activity, (i) all Discount Units shall be forfeited and canceled, (ii) if such Termination occurs prior to November 30, 2007, all Principal Units shall be forfeited and canceled and (iii) if such Termination occurs on or subsequent to November 30, 2007, you shall be entitled to receive freely transferable shares of Common Stock for the Principal Units.

**(e)  Voluntary Termination without Competitive Activity.**
In the event of your voluntary Termination without Competitive Activity, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or a Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all Discount Units, provided you do not engage in Competitive Activity prior to the Share Payment Date. In the event of Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply.

**(f)  Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all Principal Units and Discount Units shall be forfeited and canceled.

**(g)  Involuntary Termination without Cause.** In the event of your involuntary Termination without Cause, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all the Discount Units.

**(h)  Retirement.** Notwithstanding the foregoing provisions of Paragraphs 4(d), (e) and (g), in the event of your Retirement and provided you do not engage in Competitive Activity or Detrimental Activity, you shall be entitled to receive freely transferable shares of Common Stock for all Principal Units and Discount Units on the 30th day following your Retirement. In the event of a voluntary Termination, if you engage in Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply as of the date of your Retirement, and you shall forfeit Units in accordance with such provision or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares received in excess of those which you would have received under Paragraph 4(d). In any case, if you engage in Detrimental Activity prior to the Share Payment Date, you shall forfeit all Units held by you or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares you received under this Agreement.

**(i)  Occurrence of Death or Disability following Termination.** Notwithstanding the foregoing provisions of Paragraph 4(d), (e), (f) and (g), in the event of the occurrence of your death or Disability following a Termination described in Paragraph 4(e) or (g) hereof, all outstanding Units held by you shall at that time become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

Any shares that become payable pursuant to this Paragraph 4 (other than Paragraph 4(h) or (i)) shall be issued to you on the Share Payment Date, subject to the application of Paragraph 4(b). Any remaining Units that are not payable pursuant to the provisions of Paragraph 4(d)-(i) shall be canceled by Holdings.

**(j)  Affidavit.** In the event of your Termination, you may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit as required may cause you to forfeit all Units held by you at that time or, in the event of Retirement, to repay to Holdings the full gross amounts or shares you received under this Agreement.

5.  **DIVIDEND EQUIVALENTS.** With respect to each dividend or distribution paid or made on Common Stock to holders of record, you shall be credited with a number of additional Units equal in value to such dividend or distribution as of the date of such dividend or distribution, subject to Paragraph 8. Such additional Units shall vest and become payable at the same time as the Units to which they are attributable.

6.  **LIMITATION ON OBLIGATIONS.** Holdings' and any Subsidiary's obligation with respect to the Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Subsidiary become obligated to pay cash in respect of such obligation. If the date on which shares with respect to Units are to be issued or delivered to you falls on a non-business or non-trading day, such shares shall be delivered on the immediately succeeding trading day.  Whenever shares with respect to Units are required to be delivered on the 30th day following a specific triggering event, and such 30th day falls within the same tax year as the triggering event, the delivery may be made earlier, at the discretion of Holdings.

7.  **NON-ASSIGNMENT.** Units may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

8.  **EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the date you receive shares with respect to the Units, the number and kind of shares of Common Stock which may be issued with respect to Units shall be adjusted so as to reflect such change.

9.  **CHANGE IN CONTROL.** Except as set forth below, upon the occurrence of a Change in Control without the prior approval of a majority of the independent members of the Incumbent Board, your Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be issued. Except as set forth below, upon the occurrence of a Change in Control with the prior approval of a majority of the independent members of the Incumbent Board, you shall receive in the same form of consideration as that received by shareholders generally, the lesser of (a) the undiscounted market value (at the time of grant) of the shares of Common Stock underlying your outstanding Units or (b) the price paid by an acquirer for such shares of Common Stock, and the excess, if any, of the price paid by an acquirer over such undiscounted market value shall be deferred for the shorter of (x) two years following such Change in Control or (y) the term of any remaining restrictions (the "Deferred Period"), but your Units shall remain otherwise subject to all issuance restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any Units, in which case you would only be issued Common Stock or receive the undiscounted market value in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such Units upon successful completion of a Change in Control.

10.  **AMENDMENT.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions).

11.  **BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with

the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

12.  **NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of Units shall not confer on you any right to be retained in the employ of Holdings or a Subsidiary, or to receive subsequent Units or other awards under the Plan. The right of Holdings or any Subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any Subsidiary and you is specifically reserved.

13.  **APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

14.  **WITHHOLDING / DEDUCTIONS.** Holdings shall have the right to deduct applicable taxes from all amounts payable to you. It shall be a condition to the obligation of Holdings to issue shares of Common Stock hereunder that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may withhold shares of Common Stock and / or related dividend equivalents to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Subsidiary.

15. **CODE SECTION 409A.** It is intended that none of the Units or payments otherwise due hereunder shall be deferred, accelerated, extended, paid out or modified in a manner that would result in the imposition upon you of an additional tax under Section 409A of the Code; provided that neither Holdings nor any of its employees or representatives shall have any liability to you with respect to any such taxes.  In the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, payments hereunder may not be made at the time contemplated by the terms of this Agreement or the Plan, as the case may be, without causing you to be subject to taxation under Section 409A of the Code, Holdings will make such payment on the first day that would not result in your incurring any tax liability under Section 409A of the Code.

### ANNEX A: DEFINITIONS

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment

contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer.

**"Change in Capitalization"** means the occurrence of a circumstance described in Section 14 of the Plan.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its Subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its Subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

**"Discount Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the 25% discount upon issuance of the award.

**"Full Career Termination"** means a Termination when (i) a person has at least 20 years of service or (ii) a person meets all of the following criteria: (x) the person's age plus years of service with Holdings or any Subsidiary equals at least 65, (y) the person is at least 45 years old, and (z) the person has at least 10 years of service with Holdings or any Subsidiary.

**"Principal Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award (75% of the total number of units awarded).

**"Retirement"** means a Termination when the person's age plus years of service with Holdings or any Subsidiary equals at least 65, provided that (i) the person is at least 65 years old and has at least 5 years of service or (ii) the person is at least 55 years old and has at least 10 years of service.

**"Share Payment Date"** means the earlier of (a) the Maturity Date or (b) the 30th day after the completion of the fiscal quarter following the one-year anniversary of termination of employment.

**"Termination"** means the end of active employment with Holdings or a Subsidiary. The characterization of the circumstances of Termination is determined in the sole discretion of an Appropriate Officer.

**4**

©2005 Lehman Brothers. All Rights Reserved.

## 2005 EQUITY AWARD PROGRAM

# AGREEMENT EVIDENCING A GRANT OF RESTRICTED STOCK UNITS

*Investment Representatives*



# LEHMAN BROTHERS

**1. GRANT OF UNITS.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") Employee Incentive Plan (the "Plan"), you are hereby granted, as of November 30, 2005 (the "Date of Grant"), the number of Restricted Stock Units ("Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of Units may be adjusted pursuant to Paragraph 8 below).

In the event of your Termination prior to November 30, 2005, the number of Units you were awarded was based on the appropriate portion of your production-based compensation accrued for your 2005 equity award through the date of your Termination, in accordance with Holdings' standard formula for the payout of equity-based compensation for employees at your level.

**2. ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

**3. VESTING.** Subject to Paragraph 4, units awarded to you hereunder shall become vested in accordance with the following vesting schedule

■ The Principal Units (75% of the total award) shall become vested on November 30, 2007.

■ The Discount Units (25% of the total award) shall become vested on November 30, 2010.

**4. ENTITLEMENT TO RECEIVE COMMON STOCK.**

**(a) General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each Unit which you hold on November 30, 2010 (the "Maturity Date") and you shall be entitled to receive freely transferable Shares of Common Stock as soon as practicable after the Maturity Date, but no later than December 31, 2010.

**(b) Effect of Detrimental Activity.** Notwithstanding any other provision of this Agreement if you engage in Detrimental Activity at any time prior to the Share Payment Date, all Units held by you shall be forfeited and canceled.

**(c) Occurrence of Death, Disability.** In the event of the occurrence of your death or Disability, all outstanding Units held by you shall become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

**(d) Voluntary Termination with Competitive Activity.** In the event of your voluntary Termination with Competitive Activity, (i) all Discount Units shall be forfeited and canceled, (ii) if such Termination occurs prior to November 30, 2007, all Principal Units shall be forfeited and canceled and (iii) if such Termination occurs on or subsequent to November 30, 2007, you shall be entitled to receive freely transferable shares of Common Stock for the Principal Units.

**(e) Voluntary Termination without Competitive Activity.** In the event of your voluntary Termination without Competitive Activity, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or a Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all Discount Units, provided you do not engage in Competitive Activity prior to the Share Payment Date. In the event of Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply.

**(f) Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all Principal Units and Discount Units shall be forfeited and canceled.

**(g) Involuntary Termination without Cause.** In the event of your involuntary Termination without Cause, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or Subsidiary after November 30, 2005 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive freely transferable shares of Common Stock for all the Discount Units.

**(h) Retirement.** Notwithstanding the foregoing provisions of Paragraphs 4(d), (e) and (g), in the event of your Retirement and provided you do not engage in Competitive Activity or Detrimental Activity, you shall be entitled to receive freely transferable shares of Common Stock for all Principal Units and Discount Units on the 30th day following your Retirement. In the event of a voluntary Termination, if you engage in Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(d) shall apply as of the date of your Retirement, and you shall forfeit Units in accordance with such provision or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares received in excess of those which you would have received under Paragraph 4(d). In any case, if you engage in Detrimental Activity prior to the Share Payment Date, you shall forfeit all Units held by you or, if you have already received shares with respect to such Units, you shall be obligated to repay to Holdings the full gross amounts or shares you received under this Agreement.

**(i) Occurrence of Death or Disability following Termination.** Notwithstanding the foregoing provisions of Paragraph 4(d), (e), (f) and (g), in the event of the occurrence of your death or Disability following a Termination described in Paragraph 4(e) or (g) hereof, all outstanding Units held by you shall at that time become immediately payable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

Any shares that become payable pursuant to this Paragraph 4 (other than Paragraph 4(h) or (i)) shall be issued to you on the Share Payment Date, subject to the application of Paragraph 4(b). Any remaining Units that are not payable pursuant to the provisions of Paragraph 4(d)-(i) shall be canceled by Holdings.

**(j) Affidavit.** In the event of your Termination, you may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit as required may cause you to forfeit all Units held by you at that time or, in the event of Retirement, to repay to Holdings the full gross amounts or shares you received under this Agreement.

**5. DIVIDEND EQUIVALENTS.** With respect to each dividend or distribution paid or made on Common Stock to holders of record, you shall be credited with a number of additional Units equal in value to such dividend or distribution as of the date of such dividend or distribution, subject to Paragraph 8. Such additional Units shall vest and become payable at the same time as the Units to which they are attributable.

**6. LIMITATION ON OBLIGATIONS.** Holdings' and any Subsidiary's obligation with respect to the Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Subsidiary become obligated to pay cash in respect of such obligation. If the date on which shares with respect to Units are to be issued or delivered to you falls on a non-business or non-trading day, such shares shall be delivered on the immediately succeeding trading day.  Whenever shares with respect to Units are required to be delivered on the 30th day following a specific triggering event, and such 30th day falls within the same tax year as the triggering event, the delivery may be made earlier, at the discretion of Holdings.

**7. NON-ASSIGNMENT.** Units may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

**8. EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the date you receive shares with respect to the Units, the number and kind of shares of Common Stock which may be issued with respect to Units shall be adjusted so as to reflect such change.

**9. CHANGE IN CONTROL.** Except as set forth below, upon the occurrence of a Change in Control without the prior approval of a majority of the independent members of the Incumbent Board, your Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be issued. Except as set forth below, upon the occurrence of a Change in Control with the prior approval of a majority of the independent members of the Incumbent Board, you shall receive in the same form of consideration as that received by shareholders generally, the lesser of (a) the undiscounted market value (at the time of grant) of the shares of Common Stock underlying your outstanding Units or (b) the price paid by an acquirer for such shares of Common Stock, and the excess, if any, of the price paid by an acquirer over such undiscounted market value shall be deferred for the shorter of (x) two years following such Change in Control or (y) the term of any remaining restrictions (the "Deferred Period"), but your Units shall remain otherwise subject to all issuance restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any Units, in which case you would only be issued Common Stock or receive the undiscounted market value in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such Units upon successful completion of a Change in Control.

**10. AMENDMENT.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions).

**11. BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

**12. NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of Units shall not confer on you any right to be retained in the employ of Holdings or a Subsidiary, or to receive subsequent Units or other awards under the Plan. The right of Holdings or any Subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any Subsidiary and you is specifically reserved.

**13. APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

**14. WITHHOLDING / DEDUCTIONS.** Holdings shall have the right to deduct applicable taxes from all amounts payable to you. It shall be a condition to the obligation of Holdings to issue shares of Common Stock hereunder that (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may withhold shares of Common Stock and / or related dividend equivalents to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Subsidiary.

**15. CODE SECTION 409A.** It is intended that none of the Units or payments otherwise due hereunder shall be deferred, accelerated, extended, paid out or modified in a manner that would result in the imposition upon you of an additional tax under Section 409A of the Code; provided that neither Holdings nor any of its employees or representatives shall have any liability to you with respect to any such taxes.  In the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, payments hereunder may not be made at the time contemplated by the terms of this Agreement or the Plan, as the case may be, without causing you to be subject to taxation under Section 409A of the Code, Holdings will make such payment on the first day that would not result in your incurring any tax liability under Section 409A of the Code.

**ANNEX A: DEFINITIONS**

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment

3

contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer.

**"Change in Capitalization"** means the occurrence of a circumstance described in Section 14 of the Plan.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its Subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its Subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

**"Discount Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the 25% discount upon issuance of the award.

**"Full Career Termination"** means a Termination when (i) a person has at least 20 years of service or (ii) a person meets all of the following criteria: (x) the person's age plus years of service with Holdings or any Subsidiary equals at least 65, (y) the person is at least 45 years old, and (z) the person has at least 10 years of service with Holdings or any Subsidiary.

**"Principal Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award (75% of the total number of units awarded).

**"Retirement"** means a Termination when the person's age plus years of service with Holdings or any Subsidiary equals at least 65, provided that (i) the person is at least 65 years old and has at least 5 years of service or (ii) the person is at least 55 years old and has at least 10 years of service.

**"Share Payment Date"** means the earlier of (a) the Maturity Date or (b) the 30th day after the completion of the fiscal quarter following the one-year anniversary of termination of employment.

**"Termination"** means the end of active employment with Holdings or a Subsidiary. The characterization of the circumstances of Termination is determined in the sole discretion of an Appropriate Officer.

**4**

©2005 Lehman Brothers. All Rights Reserved.