# EXHIBIT E

# LEHMAN BROTHERS

## AWARD STATEMENT[1]

«Name»

### SPECIAL CONTINGENT STOCK AWARD[2] ("SPECIAL CSAs") GRANT

Grant Date : On or about November 30, 2006

\# of Special CSAs to be Granted : «CSAs»

Your Special CSAs will be subject to certain conditions through the following dates:

| Period Subject to Full Conditions | Percentage of Award | Share Issuance Date |
|---|---|---|
| through November 30, 2009 | 50% | November 30, 2011 |
| through November 30, 2010 | 50% | November 30, 2011 |

In addition, all Special CSAs are subject to Limited Conditions through the Share Issuance Date.

### Conditions

Special CSAs subject to **Full Conditions** will be forfeited if your employment with the Firm terminates for any reason other than Death or Disability.

Special CSAs subject to **Limited Conditions** will be forfeited if you engage in Detrimental Activity[3] or if your employment with the Firm is terminated involuntarily with Cause.

### Termination Provisions

**Death or Disability**: Conditions on Special CSAs will lapse and shares of Lehman Brothers common stock will be issued immediately.

**All Other Termination Events**: Special CSAs still subject to Full Conditions at the time of termination will be forfeited. Special CSAs still subject to Limited Conditions at the time of termination will be issued on the Share Issuance Date, provided you do not engage in Detrimental Activity through that date.

With the exception of the pricing, conditions, and termination provisions outlined above, your Special CSA award will be granted in accordance with the terms and conditions of the 2006 Lehman Brothers Equity Award Program for employees at your level.

---

[1] Nothing contained in this Award Statement obligates the Firm to employ you in any capacity whatsoever or prohibits or restricts the Firm from terminating your employment at any time or for any reason whatsoever, in accordance with applicable Firm policy and law. The Firm may withhold from any amounts payable under this Award Statement such taxes as may be required to be withheld pursuant to any applicable law or regulation.

[2] Each CSA represents the conditional right to receive one share of Lehman Brothers common stock five years after the grant date, on November 30, 2011. You can consider the CSAs as shares of Lehman Brothers common stock that the Firm holds on your behalf. CSAs cannot be sold, traded, pledged or transferred for that five-year period. Dividend equivalents accrue quarterly on your CSAs and are reinvested as additional CSAs, without a discount. Dividend reinvestment CSAs are subject to the same conditions and forfeiture provisions as the underlying CSAs to which they relate. The Firm retains the discretion to change this dividend policy at any time to pay in cash rather than deliverable in CSAs. Dividends will not accrue on stock option awards.

[3] "Detrimental Activity" means at any time (i) using information received during a person's employment with Holdings or any Group Company relating to the business affairs of Holdings or any Group Company or their clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any Group Company to terminate employment with any the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, any Group Company, or any of their employees (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation or goodwill of Holdings or any Group Company, in each case as determined in the sole discretion of an Appropriate Officer.

# LEHMAN BROTHERS
## DECEMBER 8, 2006 PERFORMANCE-BASED CSAs
## SUMMARY OF AWARD PROVISIONS[1]
### ROGER B. NAGIOFF

NUMBER OF RSUS:   27,819

DISCOUNTED PRICE:   $53.92 (Based on December 8, 2006 closing price of $77.03)

VALUE:   Value of award: $1.5 million ($2.14 million including 30% discount)

PERFORMANCE REQUIREMENT:   Fiscal 2007 ROE[2] must be greater than or equal to 10%, otherwise the award is cancelled.

VESTING/ISSUANCE SCHEDULE:   Conditions[3] will lapse and CSAs shall convert to stock on November 30, 2011.

Conditions will lapse and stock issuance will be accelerated in one-third increments if and when the Company's closing stock price exceeds $100.00, $108.00 and $116.00 for five consecutive trading days, but in no event will shares be issued earlier than one-third of the total award on November 30, 2007, 2008 and 2009. Accelerated CSAs shall convert to Common Stock and be issued to you 30 days after the payment dates.

TERMINATION PROVISIONS:

| Termination Reason | Status of Award |
|---|---|
| Voluntary Termination | All CSAs subject to Full Conditions shall be forfeited and cancelled. |
| Involuntary Termination with Cause | All CSAs subject to Full Conditions shall be forfeited and cancelled |
| Involuntary Termination without Cause | If termination occurs after November 30, 2007, all Conditions on CSAs shall lapse and shares will be immediately issued on the earlier of the applicable Payment Dates or March 15 of the year following the calendar year of termination provided that you do not engage in Detrimental Activity[4] through that date. |
| Select Government Service[5] | Conditions on all CSAs shall lapse and shares will be issued 30 days following the termination date or earlier as required by applicable law or governmental regulation as a condition for Select Government Service. |
| Termination by Reason of Death or Disability[6] | Conditions on all CSAs shall immediately lapse and shares will be issued to you or your estate 30 days following the termination date. |

---

[1] In the event of any conflict between the plan documents (including, but not limited to, the Performance-Based RSU Award Agreement, the 2005 Stock Incentive Plan, and the 2005 Stock Incentive Plan Prospectus) and the information in this statement, the plan documents will govern.
[2] ROE excluding extraordinary items.
[3] CSAs which are subject to "Full Conditions" are forfeited if the award recipient's employment with the Firm terminates or if the award recipient engages in Detrimental Activity. CSAs which are subject to "Limited Conditions" are forfeited if the award recipient engages in Detrimental Activity.
[4] "Detrimental Activity" means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of the Committee.
[5] "Select Government Service" as defined in award agreement.
[6] "Disability" means a disability under both the Lehman Brothers Long-Term Disability Insurance Plan and the Social Security Act.

2008 EQUITY AWARD PROGRAM

# AGREEMENT EVIDENCING A GRANT OF RESTRICTED STOCK UNITS



# LEHMAN BROTHERS

1. **GRANT OF UNITS.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") 2005 Stock Incentive Plan (the "Plan"), you are hereby granted, as of December 8, 2006 (the "Date of Grant"), the number of Restricted Stock Units ("2006 Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of 2006 Units may be adjusted pursuant to Paragraph 8 below). A portion of your 2006 Units are classified as either "Principal Units" or "Discount Units" each as defined in the glossary attached hereto. If you are classified by Holdings or its subsidiaries as a "production-based employee" for the Company's 2006 fiscal year ended November 30, 2006 ("Production-Based Employee"), in the event of your Termination prior to November 30, 2006, the number of 2006 Units you were awarded was based on the appropriate portion of your production-based compensation accrued for your 2006 equity award through the date of your Termination, in accordance with Holdings' standard formula for the payout of equity-based compensation for employees at your level.

2. **ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

3. **VESTING.** Subject to Paragraph 4, 2006 Units awarded to you hereunder shall become vested in accordance with the vesting schedule applicable to you as described under the term "Vesting Schedule" in the glossary attached hereto.

4. **ENTITLEMENT TO RECEIVE COMMON STOCK.**

   (a) **General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each 2006 Unit that has become vested which you hold on November 30, 2011 (the "Share Payment Date") and which has not otherwise been terminated pursuant to the terms and conditions hereof. In such case, you shall be entitled to receive freely transferable Shares of Common Stock as soon as practicable after the Share Payment Date, but no later than December 31, 2011.

   (b) **Effect of Detrimental Activity.** Notwithstanding any other provision of this Agreement if you engage in Detrimental Activity at any time prior to the date on which delivery of shares of Common Stock in respect of your 2006 Units is called for hereunder, all 2006 Units held by you, whether or not vested, shall be terminated, forfeited, cancelled, and you shall have no further right to any shares of Common Stock relating thereto.

   (c) **Occurrence of Death, Disability While You Are Employed** Without limiting Paragraphs 4(b), 4(d)(ii), 7, 9, 14 and 15, in the event of the occurrence of your death or Disability while you are employed with Holdings or any Affiliate shares of Common Stock underlying all of your then outstanding 2006 Units held by you shall become immediately deliverable, and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock, provided, however, if you are not classified as a Production-Based Employee, the foregoing shall only apply if your death or Disability occurs on or after January 31, 2007.

   (d) **Effect of Termination.** Except if you are a Production-Based Employee, and subject to Paragraph 9 hereof, in the event of your Termination for any reason or notification of Termination prior to January 31, 2007, all 2006 Units held by you shall be forfeited and cancelled. In the event of any Termination not described in the preceding sentence (including, without limitation, if you are a Production-Based Employee), the following rules shall apply:

   (i) **Voluntary Termination.** Except as otherwise provided for in Paragraph 4(d)(iv) or 4(d)(v) hereof, and subject to Paragraph 9 hereof, in the event of your voluntary Termination all then outstanding unvested 2006 Units shall be terminated, forfeited and be cancelled, and you shall have no further right to any shares of Common Stock relating thereto. All other terms and conditions of this Agreement and the Plan shall continue to apply to any 2006 Units not so terminated.

   (ii) **Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all 2006 Units, whether or not vested, shall be terminated, forfeited and cancelled, and you shall have no further right to any shares of Common Stock relating thereto.

   (iii) **Involuntary Termination without Cause.** Except as provided in Paragraphs 4(c), 4(d)(iv) 4(d)(v), and 9, and subject to Paragraphs 4(b), 7, 14 and 15, in the event of your involuntary Termination without Cause, you shall be entitled to receive freely transferable shares of Common Stock with respect to any then outstanding 2006 Principal Units as soon as practicable after the Share Payment Date, but no later than December 31, 2011, provided however, that your entitlement to receive freely transferable shares of Common Stock with respect to such unvested outstanding 2006 Principal Units is expressly conditioned on your timely execution of a release in such form as may be required by Holdings or any Subsidiary and in accordance with Holdings' (or any Subsidiary's) policies and procedures then in effect, but all then outstanding unvested 2006 Discount Units shall be terminated, forfeited and cancelled, and you shall have no further right to any shares of Common Stock relating thereto.

   (iv) **Full Career Termination.** Notwithstanding the foregoing provisions of Paragraphs 4(d)(i) and (iii), but without limiting the application of Paragraphs 4(b), 4(d)(ii), 4(d)(v), 7, 9, 14 and 15, in the event your voluntary Termination occurs at a time when you satisfy the definition of Full Career Termination, you shall become vested in all of your then outstanding 2006 Units and shares of Common Stock relating thereto shall be delivered as soon as practicable after the Share Payment Date, but no later than December 31, 2011. An express condition of your 2006 Units becoming vested and shares of Common Stock underlying such 2006 Units becoming deliverable pursuant to the immediately preceding sentence is that you not engage in Competitive Activity through and including the end of the Company's fiscal quarter following the one year anniversary of such Termination. Notwithstanding the foregoing provisions of Paragraphs 4(d)(i) and (iii), but without limiting the application of Paragraphs 4(b), 4(d)(ii),

2

4(d)(v), 7, 9, 14 and 15, in the event your involuntary Termination without Cause occurs at a time when you satisfy the definition of Full Career Termination, you shall become vested in all then outstanding 2006 Units, and shares of Common Stock relating thereto shall be delivered as soon as practicable after the Share Payment Date, but no later than December 31, 2011.

(v) **Occurrence of Death or Disability following Termination.** Without limiting the applicability of Paragraphs 4(c), 7, 9, 14 and 15 hereof and notwithstanding the foregoing provisions of Paragraph 4(d)(i), (iii) and (iv) in the event of the occurrence of your death or Disability following a Termination, all outstanding 2006 Units held by you that were vested at or by reason of your Termination shall at that time become immediately deliverable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock, provided, however, if you are not classified as a Production Based Employee, the foregoing shall only apply if your death or Disability occurs on or after January 31, 2007.

Any shares of Common Stock that become deliverable pursuant to this Paragraph 4(d) (other than Paragraph 4(d)(v) shall be delivered to you as soon as practicable after the Share Payment Date, but no later than December 31, 2011, subject to the application of Paragraphs 4(b), 9, and 15. Any remaining 2006 Units that are not deliverable pursuant to the provisions of Paragraph 4(d) or otherwise under this Agreement or the Plan shall be terminated, forfeited and be cancelled by Holdings, and you shall have no further right to any shares of Common Stock relating thereto.

For purposes of this Agreement, Holdings and/or the Committee, as applicable, shall determine in its sole discretion whether or not your Termination is voluntary, involuntary, or with or without Cause, whether or not you have engaged in Detrimental Activity, or whether or not you meet the definition of Disability or Full Career Termination.

(e) **Affidavit.** You may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit as required may cause you to forfeit all 2006 Units held by you at that time or, to repay to Holdings the full gross amounts or shares you received under this Agreement as may be applicable.

5. **DIVIDEND EQUIVALENTS.** With respect to each dividend or distribution paid or made on Common Stock to holders of record on or after the date of grant of your 2006 Units, with respect to each then outstanding 2006 Unit you then hold, you shall be credited with a number of additional 2006 Units equal in value to such dividend or distribution as of the date of such dividend or distribution, subject to Paragraph 8. Such additional 2006 Units shall vest and become deliverable at the same time and subject to the same conditions as the 2006 Units to which they correspond; provided however, in the event you are not classified as a Production Based Employee, no such additional 2006 Units shall be granted to you in respect of any such dividend or distribution paid or made on Common Stock to holders of record on any date prior to January 31, 2007.

6. **LIMITATION ON OBLIGATIONS.** Holdings' and any Subsidiary's obligation with respect to the 2006 Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Subsidiary become obligated to pay cash in respect of such obligation. If the date on which shares of Common Stock with respect to 2006 Units are to be delivered to you falls on a non-business or non-trading day, such shares shall be delivered on the immediately succeeding trading day. Whenever shares with respect to 2006 Units are required to be delivered on the 30th day following a specific triggering event, and such 30th day falls within the same tax year as the triggering event, the delivery may be made earlier, at the discretion of Holdings.

7. **NON-ASSIGNMENT.** 2006 Units may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to deliver any shares of Common Stock hereunder shall terminate.

8. **EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the date you receive shares with respect to the 2006 Units, the number and kind of shares of Common Stock which may be delivered with respect to 2006 Units shall be adjusted so as to reflect such change.

9. **CHANGE IN CONTROL.** Except as set forth below, upon the occurrence of a Change in Control without the prior approval of a majority of the independent members of the Incumbent Board, your 2006 Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be delivered. Except as set forth below, upon the occurrence of a Change in Control with the prior approval of a majority of the independent members of the Incumbent Board, you shall receive in the same form of consideration as that received by shareholders generally, the lesser of (a) the "undiscounted market value" (at the time of grant) of the shares of Common Stock underlying your outstanding 2006 Units (i.e., the fair market value of your 2006 Units determined on the date of grant) or (b) the price paid by an acquirer for such shares of Common Stock, and the excess, if any, of the price paid by an acquirer over such "undiscounted market value" shall be deferred for the shorter of (x) two years following such Change in Control or (y) the term of any remaining restrictions (the "Deferred Period"), but your 2006 Units shall remain otherwise subject to all delivery restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any 2006 Units, in which case you would only be delivered shares of Common Stock or receive the "undiscounted market value" in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such 2006 Units upon successful completion of a Change in Control.

10. **AMENDMENT.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions), including, without limitation, in order to satisfy applicable requirements of Sections 162(m) and Section 409A of the Code, as

3

amended from time to time, (whether or not your rights are adversely affected).

**11. BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

**12. NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of 2006 Units shall not confer on you any right to be retained in the employ of Holdings or a Subsidiary, or to receive subsequent units or other awards under the Plan. The right of Holdings or any Subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any Subsidiary and you is specifically reserved.

**13. APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

**14. WITHHOLDING / DEDUCTIONS.** Holdings shall have the right to deduct applicable taxes from all amounts payable to you. It shall be a condition to the obligation of Holdings to deliver shares of Common Stock hereunder (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the delivery of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may withhold shares of Common Stock and / or related dividend equivalents to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Subsidiary.

**15. CODE SECTION 409A.** It is intended that none of the 2006 Units or payments otherwise due hereunder shall be deferred, accelerated, extended, paid out or modified in a manner that would result in the imposition upon you of an additional tax under Section 409A of the Code; provided that neither Holdings nor any of its employees or representatives shall have any liability to you with respect to any such taxes. In the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, payments hereunder may not be made at the time contemplated by the terms of this Agreement or the Plan, as the case may be, without causing you to be subject to taxation under Section 409A of the Code, Holdings will make such payment on the first day that would not result in your incurring any tax liability under Section 409A of the Code.

**ANNEX A: DEFINITIONS**

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer. For avoidance of doubt, for purposes of the preceding sentence, a material breach of an employment contract or violation of policies would include, as applicable, the employee's violation of any policy or employment agreement relating to the obligation to provide advance notice of resignation from Holdings or any subsidiary.

**"Change in Capitalization"** means the occurrence of a circumstance described in Section 14 of the Plan.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its Subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its Subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any

4

activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

"**Disability**" means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

"**Discount Units**" shall mean the number of 2006 Units (and any dividend equivalents related thereto that are not Principal Units. If you were a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2006, thirty percent (30%) of your 2006 Units as of the date of grant will be Discount Units. If you are an employee other than a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2006, twenty-five percent (25%) of your 2006 Units as of the date of grant will be Discount Units.

"**Full Career Termination**" means a Termination when (i) a person has at least 20 years of service, (ii) the person is at least 45 years old, and the person has at least 10 years of service; or (iii) a person meets all of the following criteria: (a) the person is at least 50 years old, and (b) the person has at least 5 years of service.

"**Principal Units**" shall mean the number of 2006 Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award. If you were a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2006, seventy percent (70%) of your 2006 Units as of the date of grant will be Principal Units. If you are an employee other than a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2006, seventy-five percent (75%) of your 2006 Units as of the date of grant will be Principal Units.

"**Share Payment Date**" means November 30, 2011.

"**Termination**" means the end of active employment with Holdings or a Subsidiary. The characterization of the circumstances of Termination is determined in the sole discretion of an Appropriate Officer.

"**Vesting Schedule**" means the schedule below that is applicable to you, pursuant to which your 2006 Units are scheduled to vest subject to the terms and conditions of Paragraph 3 and the other terms and conditions of the Agreement:

(a) If you were a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2006 your 2006 Units are scheduled to vest as follows:

| | |
|---|---|
| Principal Units: | 50% on November 30, 2009; 50% on November 30, 2011 |
| Discount Units: | 100% on November 30, 2011. |

(b) If you were an employee of Holdings or any Subsidiary other than a Managing Director for the fiscal year ended November 30, 2006 your 2006 Units are scheduled to vest as follows:

| | |
|---|---|
| Principal Units: | 100% on November 30, 2008 |
| Discount Units: | 100% on November 30, 2011. |

©2006 Lehman Brothers. All Rights Reserved.

# LEHMAN BROTHERS

## AWARD STATEMENT[1]

«Name»

### SPECIAL CONTINGENT STOCK AWARD[2] ("SPECIAL CSAs") GRANT

Grant Date :   On or about November 30, 2006

\# of Special CSAs to be Granted :   «CSAs»

Your Special CSAs will be subject to certain conditions through the following dates:

| Period Subject to Full Conditions | Percentage of Award | Share Issuance Date |
|---|---|---|
| through November 30, 2009 | 50% | November 30, 2011 |
| through November 30, 2010 | 50% | November 30, 2011 |

In addition, all Special CSAs are subject to Limited Conditions through the Share Issuance Date.

### Conditions

Special CSAs subject to **Full Conditions** will be forfeited if your employment with the Firm terminates for any reason other than Death or Disability.

Special CSAs subject to **Limited Conditions** will be forfeited if you engage in Detrimental Activity[3] or if your employment with the Firm is terminated involuntarily with Cause.

### Termination Provisions

**Death or Disability**: Conditions on Special CSAs will lapse and shares of Lehman Brothers common stock will be issued immediately.

**All Other Termination Events**: Special CSAs still subject to Full Conditions at the time of termination will be forfeited. Special CSAs still subject to Limited Conditions at the time of termination will be issued on the Share Issuance Date, provided you do not engage in Detrimental Activity through that date.

With the exception of the pricing, conditions, and termination provisions outlined above, your Special CSA award will be granted in accordance with the terms and conditions of the 2006 Lehman Brothers Equity Award Program for employees at your level.

---

[1] Nothing contained in this Award Statement obligates the Firm to employ you in any capacity whatsoever or prohibits or restricts the Firm from terminating your employment at any time or for any reason whatsoever, in accordance with applicable Firm policy and law. The Firm may withhold from any amounts payable under this Award Statement such taxes as may be required to be withheld pursuant to any applicable law or regulation.

[2] Each CSA represents the conditional right to receive one share of Lehman Brothers common stock five years after the grant date, on November 30, 2011. You can consider the CSAs as shares of Lehman Brothers common stock that the Firm holds on your behalf. CSAs cannot be sold, traded, pledged or transferred for that five-year period. Dividend equivalents accrue quarterly on your CSAs and are reinvested as additional CSAs, without a discount. Dividend reinvestment CSAs are subject to the same conditions and forfeiture provisions as the underlying CSAs to which they relate. The Firm retains the discretion to change this dividend policy at any time to pay in cash rather than deliverable in CSAs. Dividends will not accrue on stock option awards.

[3] "Detrimental Activity" means at any time (i) using information received during a person's employment with Holdings or any Group Company relating to the business affairs of Holdings or any Group Company or their clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any Group Company to terminate employment with any the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, any Group Company, or any of their employees (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation or goodwill of Holdings or any Group Company, in each case as determined in the sole discretion of an Appropriate Officer.