# EXHIBIT F

# LEHMAN BROTHERS

## DECEMBER 7, 2007 EXECUTIVE COMMITTEE CSAs
## SUMMARY OF AWARD PROVISIONS[1]
## ROGER B. NAGIOFF

NUMBER OF CSAs: 292,601.68

DISCOUNTED PRICE: $44.43 (Based on December 7, 2007 closing price of $63.47)

AWARD VALUE: $13.0 million ($18.6 million including 30% discount)

AWARD CONDITIONS: Full Conditions[2] on CSAs will lapse in the amount of 20% of the CSAs on November 30, 2008, 20% on November 30, 2009, and 60% on November 30, 2010. CSAs will remain subject to Limited Conditions through November 30, 2012.

DELIVERY DATE: Limited Conditions on CSAs will lapse and shares will be delivered on November 30, 2012.

TERMINATION PROVISIONS:

| Termination Reason | Status of Award |
|---|---|
| Voluntary Termination | All CSAs subject to Full Conditions are forfeited and cancelled. Any CSAs subject to Limited Conditions will convert to shares of common stock and be delivered on November 30, 2012, provided that you do not engage in Detrimental Activity[3] through that date. |
| Involuntary Termination with Cause[4] | All CSAs are forfeited and cancelled. |
| Involuntary Termination without Cause | Full Conditions on all Principal CSAs shall immediately lapse. If termination occurs on or after November 30, 2008, Full Conditions on all Discount CSAs shall immediately lapse. If termination occurs before November 30, 2008, all Discount CSAs shall be forfeited and cancelled. All CSAs will be issued on November 30, 2012 provided that you do not engage in Detrimental Activity[2] through that date. |
| Government Service, Death or Disability[5] | Conditions on all CSAs shall immediately lapse and shares will be delivered 30 days following the termination date. |

[1] This document is informational only. All terms and conditions of this CSA award are subject to the applicable controlling plan documents, including but not limited to the applicable award agreement, the 2005 Stock Incentive Plan and the 2005 Stock Incentive Plan Prospectus. In the event of any conflict between the plan documents and the information in this document, the plan documents will govern.

[2] CSAs which are subject to "Full Conditions" are forfeited if the award recipient's employment with the Firm terminates or if the award recipient engages in Detrimental Activity. CSAs which are subject to "Limited Conditions" are forfeited if the award recipient engages in Detrimental Activity.

[3] "Detrimental Activity" means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of the Committee.

[4] "Cause" means a material breach by a person of an employment contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of the Committee.

[5] "Disability" means a disability under both the Lehman Brothers Long-Term Disability Insurance Plan and the Social Security Act.

2007 PERFORMANCE-BASED CONTINGENT STOCK AWARD

LETTER EVIDENCING A GRANT OF
PERFORMANCE-BASED CONTINGENT STOCK AWARDS

1. **GRANT OF CSAs.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") 2005 Stock Incentive Plan (the "Plan"), you are hereby granted, as of December 8, 2006 (the "Date of Grant"), the number of Contingent Stock Awards ("CSAs") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of CSAs may be adjusted pursuant to Paragraph 8 below).

2. **ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

3. **CONDITIONS.** Subject to Paragraph 4 and Paragraph 9, CSAs awarded to you hereunder shall become unconditional in accordance with the following criteria:

(a) The award will be cancelled if the Company's Fiscal 2007 ROE is below 10%.

(b) The CSAs shall be subject to the Full Conditions through the Share Payment Date and shall become unconditional on the Share Payment Date, provided the award is not otherwise cancelled pursuant to Paragraph 3(a) hereof.

(c) Notwithstanding Paragraph 3(b), but without limiting Paragraph 3(a), 33.3% of the CSAs shall require your satisfaction of the Limited Conditions only (but not the Full Conditions) if and when the closing stock price of a share of Common Stock as reported by the New York Stock Exchange has exceeded $100.00 for a period of five consecutive trading days, but not earlier than November 30, 2007, and only if you have remained actively Employed with the Company and/or any Group Company through November 30, 2007; an additional 33.3% of the CSAs shall require your satisfaction of the Limited Conditions only (but not the Full Conditions) if and when the closing stock price of a share of Common Stock as reported by the New York Stock Exchange has exceeded $108.00 for a period of five consecutive trading days, but not earlier than November 30, 2008, and only if you have remained actively Employed with the Company and/or any Group Company through November 30, 2008; and an additional 33.3% of the CSAs shall require your satisfaction of the Limited Conditions only (but not the Full Conditions) if and when the closing stock price of a share of Common Stock as reported by the New York Stock Exchange has exceeded $116.00 for a period of five consecutive trading days, but not earlier than November 30, 2009, and only if you have remained actively Employed with the Company and/or or any Group Company through November 30, 2009 (each of the prices specified above being referred to as "Target Prices" and each of the alternative entitlement dates being referred to as "Alternate Entitlement Dates").

4. **ENTITLEMENT TO RECEIVE COMMON STOCK.**

(a) General Rule. The CSAs awarded to you that become unconditional under this Letter shall convert to Common Stock and be issued to you on the earlier of (i) 30 days after the

applicable Alternate Entitlement Date under Paragraph 3(c) or (ii) the Share Payment Date, subject to the remaining provisions of this Paragraph 4 and Paragraph 9.

(b) Effect of Detrimental Activity. Notwithstanding any other provision of this Letter, if prior to the date on which delivery of shares of Common Stock is called for hereunder you engage in Detrimental Activity, all unissued CSAs shall be immediately forfeited and cancelled.

(c) Effect of Termination. In the event of your Termination for any reason or notification of Termination prior to November 30, 2007, all CSAs shall be forfeited and cancelled. In the event of any Termination not described in the preceding sentence, but without limiting Paragraph 4(b), the following rules shall apply:

(i) Voluntary Termination . In the event of your voluntary Termination prior to the Share Payment Date, all unissued CSAs, other than those that are subject only to Limited Conditions (but not Full Conditions) pursuant to Paragraph 3(c) hereof, shall be forfeited and cancelled, provided if such voluntary Termination occurs after any CSA is subject only to Limited Conditions (but not Full Conditions) pursuant to Paragraph 3(c) but prior to the date on which Common Stock would be delivered pursuant to Paragraph 4(a)(i), any such CSA shall be forfeited and cancelled only in the event of a Termination with Competitive Activity; and provided further that, in the case of voluntary Termination for Select Governmental Service all CSAs shall become immediately unconditional, and such CSAs shall be converted to Common Stock and be issued to you 30 days following the Termination Date or, if earlier the date(s) required by applicable law or governmental regulation as a condition for your Select Governmental Service.

(ii) Involuntary Termination with Cause. In the event of your involuntary Termination with Cause, all unissued CSAs shall be immediately forfeited and cancelled.

(iii) Involuntary Termination without Cause. In the event of your involuntary Termination without Cause, all CSAs shall become immediately unconditional; provided however, that in the event of your involuntary Termination without Cause on or prior to November 30, 2007, all unissued CSAs, other than those subject only to Limited Conditions (but not Full Conditions) pursuant to Paragraph 3(c) shall be forfeited and cancelled. Without limiting Paragraph 4(a)(i) as applied to any CSA which ceases to be subject to Full Conditions but which continues to remain subject solely to Limited Conditions pursuant to Paragraph 3(c), in the event of any involuntary Termination pursuant to which your CSAs become immediately unconditional by reason of the immediately preceding sentence , any such CSAs shall convert to Common Stock and be issued to you on the earlier of (a) the Share Payment Date(s), or (b) the March 15 of the year following the calendar year of your Termination.

(iv) Termination Due to Death or Disability. In the event of your Termination due to death or Termination due to Disability, all CSAs shall become immediately unconditional and shares of Common Stock in respect thereof shall be delivered to you or your estate 30 days following the Termination date.

Notwithstanding any other provisions of this Letter, if any payment otherwise due hereunder would have the effect of making you subject to the tax imposed by Code Section 409A(a)(1), such payment shall be postponed until the earliest date upon which the payment could be made without subjecting you to such tax. Any remaining CSAs that are not payable pursuant to the provisions of Paragraph 4(c) shall be forfeited and cancelled.

(d) Affidavit. In the event of your Termination on or after November 30, 2007, you may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit within 60 days may cause you to forfeit all CSAs held by you at that time.

**5. DIVIDEND EQUIVALENTS.** With respect to each regular cash dividend or distribution paid or made on Common Stock to holders of record on or after December 8, 2006, the number of CSAs granted to you hereunder shall, as of such dividend payment date, be increased by a number of CSAs equal to: (a) the product of (i) the number of CSAs held by you as of the related dividend record date, multiplied by (ii) the per share amount of any cash dividend (or, in the case of any dividend payable in whole or in part other than in cash, the per share value of such dividend, as determined in good faith by the Committee), divided by (b) the Fair Market Value of a share of Common Stock on the payment date of such dividend. Such additional CSAs shall become unconditional and payable at the same time as the CSAs to which they are attributable.

**6. LIMITATION ON OBLIGATIONS.** Holdings' and any Group Company's obligation with respect to the CSAs granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Group Company become obligated to pay cash in respect of such obligation.

**7. NON-ASSIGNMENT.** CSAs may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

**8. EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the Share Payment Date, the number and kind of shares of Common Stock which may be issued with respect to CSAs, and the Target Price(s), shall be adjusted so as to reflect such change.

**9. CHANGE IN CONTROL.** Following the occurrence of a Change in Control, 33.3% of your CSAs shall become unconditional and issued to you in equal installments on November 30, 2007, 2008 and 2009 without regard to Paragraph 3(a), but subject to your continued active service with Holdings or a Group Company through each such date, unless your CSAs otherwise become unconditional and distributable pursuant to Paragraph 4 prior to the dates described in this sentence, in which case your CSAs will be issued to you pursuant to such Paragraph.

**10. TREATMENT IN BANKRUPTCY.** (a) If you are an employee of Holdings, Holdings agrees to deliver, and (b) if you are an employee of a Group Company, Holdings agrees to deliver to (or at the direction of) such Group Company, shares of Common Stock on the date when such shares are due to be delivered under this Letter in satisfaction of each CSA granted to you hereunder. If you are an employee of a Group Company, Holdings' obligation in clause (b) of the preceding sentence is created expressly for the benefit of you, and you shall have the full right to enforce Holdings' obligation to deliver Common Stock as if such obligation were made directly in favor of you. All of your claims arising from, in connection with, or in any way relating to, any failure of Holdings to deliver to you, or to a Group Company for delivery by such Group Company to you, shares of Common Stock on the date when such shares are due to be delivered under this Letter in satisfaction of each CSA granted to you shall be deemed, in the event of a bankruptcy of Holdings, to be claims for damages arising from the purchase or sale of Common Stock of Holdings, within the meaning of section 510(b) of the Bankruptcy

Code and shall have in such bankruptcy the same priority as, and no greater priority than, common stock interests in Holdings.

**11. AMENDMENT.** The terms of this Letter may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate, provided, however, that no such amendment shall, without your consent, diminish your rights under this Letter.

**12. BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with the construction, administration, interpretation or effect of the Plan or this Letter shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

**13. NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of CSAs shall not confer on you any right to be retained in the employ of Holdings or a Group Company, or to receive subsequent CSAs or other awards under the Plan. The right of Holdings or any Group Company to terminate your employment with it at any time or as otherwise provided by any Letter between Holdings or any Group Company and you is specifically reserved.

**14. APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Letter, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

**15. WITHHOLDING/DEDUCTIONS.** Holdings shall have the right to deduct applicable statutory withholding taxes from all amounts payable to you. It shall be a condition to the obligation of Holdings to issue shares of Common Stock hereunder (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock (including, without limitation, by instructing the Company to withhold a portion of the shares of Common Stock otherwise deliverable to you in respect of your CSAs) such amount as may be required by law for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may refuse to issue shares of Common Stock and/or related dividend equivalents or take any other action it deems necessary to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Group Company.

DEFINITIONS

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment contract between the person and Holdings or any Group Company, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Group Company, willful misconduct, dishonesty related to the business and affairs of Holdings or any Group Company, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of the person's duties, solicitation of employees of Holdings or any Group Company to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Group Company including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Group Company or such other circumstances as may be determined in the sole discretion of an Appropriate Office. For avoidance of doubt, for purposes of the preceding sentence, a material breach of an employment contract or violation of policies would include, as applicable, the employee's violation of any policy or employment agreement relating to the obligation to provide advance notice of resignation from Holdings or any Group Company.

**"Change in Capitalization"** means the occurrence of a circumstance described in Section 14(a) of the Plan.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any Group Company or affiliates on the date of termination of a person's employment with Holdings and any Group Company, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any Group Company relating to the business affairs of Holdings or any Group Company , affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any Group Company or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, any Group Company or any of their respective affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or any Group Company or their respective affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and the Social Security Act.

"**Full Conditions**" means, except as otherwise provided in Paragraphs 3(c), 4 or 9, (i) being actively employed by the Company or any Group Company through the Share Payment Date, (ii) not engaging in any act constituting Detrimental Activity prior to the Share Payment Date and (iii) complying with Paragraph 7 hereof. .

**"Group"** means Holdings and all its Subsidiaries and Affiliates.

**"Group Company"** shall mean any entity within the Group. Holdings and/or the Committee, as applicable, shall determine in its sole discretion whether or not an entity is or is not a "Group Company" for purposes of any provision of this Agreement.

**"Limited Conditions"** means, except as otherwise provided in Paragraphs 4 or 9 (i) not engaging in any act constituting Detrimental Activity prior to the Share Payment Date and (ii) complying with Paragraph 7 hereof **"ROE"** means fiscal year 2007 return on average common stockholders' equity excluding extraordinary items or changes in accounting principles as reported in the Company's fiscal 2007 Annual Report.

**"Select Governmental Service"** means:

1. Any elected office at the Federal or State executive or legislative level;
2. Any Executive branch position which is either at the Cabinet level or which directly reports to a Cabinet official or to the President;
3. Ambassador or Consul General, or senior policy making function reporting directly to Ambassador or Consul General;
4. Executive officer of a self regulatory organization, or Chairman, Commissioner or executive officer of a federal regulatory agency, or senior policy official reporting directly to any such individuals;
5. Member of Board of Governors of any Federal Reserve Bank, or any senior policy maker reporting directly to any such individual; and
6. Any position determined by the Committee to involve duties or authority that are similar to those positions described in any of items (1) through (5) above.

**"Share Payment Date(s)"** means November 30, 2011.

**"Termination"** means the end of your active service with Holdings or a Group Company. The reason for your Termination for purposes of this Letter shall be as determined in the sole discretion of the Committee.

# LEHMAN BROTHERS

## DECEMBER 7, 2007 EXECUTIVE COMMITTEE RSUs SUMMARY OF AWARD PROVISIONS[1]

### THEODORE P. JANULIS

NUMBER OF RSUs: 112,539.11

DISCOUNTED PRICE: $44.43 (Based on December 7, 2007 closing price of $63.47)

AWARD VALUE: $5.0 million ($7.1 million including 30% discount)

VESTING SCHEDULE: RSUs will vest 20% on November 30, 2008, 20% on November 30, 2009, and 60% on November 30, 2010.

DELIVERY DATE: Shares in respect to vested RSUs will be delivered on November 30, 2012.

TERMINATION PROVISIONS:

| Termination Reason | Status of Award |
|---|---|
| Voluntary Termination | All unvested RSUs are forfeited and cancelled. Any vested RSUs will convert to shares of common stock and be delivered on November 30, 2012, provided that you do not engage in Detrimental Activity[2] through that date. |
| Involuntary Termination with Cause[3] | All RSUs, vested or unvested, are forfeited and cancelled. |
| Involuntary Termination without Cause | All Principal RSUs shall become immediately vested. If termination occurs on or after November 30, 2008, all Discount RSUs shall become immediately vested. If termination occurs before November 30, 2008, all Discount RSUs shall be forfeited and cancelled. All vested RSUs will be issued on November 30, 2012 provided that you do not engage in Detrimental Activity[2] through that date. |
| Government Service, Death or Disability[4] | All RSUs shall become immediately vested and shares will be delivered 30 days following the termination date. |

[1] This document is informational only. All terms and conditions of this RSU award are subject to the applicable controlling plan documents, including but not limited to the applicable award agreement, the 2005 Stock Incentive Plan and the 2005 Stock Incentive Plan Prospectus. In the event of any conflict between the plan documents and the information in this document, the plan documents will govern.

[2] "Detrimental Activity" means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of the Committee.

[3] "Cause" means a material breach by a person of an employment contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of the Committee.

[4] "Disability" means a disability under both the Lehman Brothers Long-Term Disability Insurance Plan and the Social Security Act.



# 2007 EQUITY AWARD PROGRAM

LIFE @ LEHMAN

YOUR BENEFITS AND LIFE BALANCE

Agreement Evidencing A Grant of
Restricted Stock Units

LEHMAN BROTHERS

**1. GRANT OF UNITS.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") 2005 Stock Incentive Plan (the "Plan"), you are hereby granted, as of December 7, 2007 (the "Date of Grant"), the number of Restricted Stock Units ("2007 Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of 2007 Units may be adjusted pursuant to Paragraph 8 below). A portion of your 2007 Units are classified as either "Principal Units" or "Discount Units" each as defined in the glossary attached hereto. If you are classified by Holdings or its subsidiaries as a "production-based employee" for the Company's 2007 fiscal year ended November 30, 2007 ("Production-Based Employee"), in the event of your Termination prior to November 30, 2007, the number of 2007 Units you were awarded was based on the appropriate portion of your production-based compensation accrued for your 2007 equity award through the date of your Termination, in accordance with Holdings' standard formula for the payout of equity-based compensation for employees at your level.

**2. ADDITIONAL DOCUMENTS; DEFINITIONS.** You have been provided with a copy of the Plan, which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

**3. VESTING.** Subject to Paragraph 4, 2007 Units awarded to you hereunder shall become vested in accordance with the following vesting schedule

(a) If you were a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2007 your 2007 Units are scheduled to vest as follows:

Principal Units: 50% on November 30, 2010; 50% on November 30, 2012

Discount Units: 100% on November 30, 2012.

(b) If you were an employee of Holdings or any Subsidiary other than a Managing Director for the fiscal year ended November 30, 2007 your 2007 Units are scheduled to vest as follows:

Principal Units: 100% on November 30, 2009
Discount Units: 100% on November 30, 2012.

**4. ENTITLEMENT TO RECEIVE COMMON STOCK.**

**(a) General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each 2007 Unit that has become vested which you hold on November 30, 2012 (the "Share Payment Date") and which has not otherwise been terminated pursuant to the terms and conditions hereof. In such case, you shall be entitled to receive freely transferable Shares of Common Stock as soon as practicable after the Share Payment Date, but no later than December 31, 2012.

**(b) Effect of Detrimental Activity.** Notwithstanding any other provision of this Agreement if you engage in Detrimental Activity at any time prior to the date on which delivery of shares of Common Stock in respect of your 2007 Units is called for hereunder, all 2007 Units held by you, whether or not vested, shall be terminated, forfeited, and cancelled, and you shall have no further right to any shares of Common Stock relating thereto.

**(c) Occurrence of Death, Disability While You Are Employed.** Without limiting Paragraphs 4(b), 4(d)(ii), 4(e), 7, 9, 14 and 15, in the event of the occurrence of your death or Disability while you are employed with Holdings or any Affiliate, shares of Common Stock underlying all of your then outstanding 2007 Units held by you shall become immediately deliverable, and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

**(d) Effect of Termination.** Notwithstanding Paragraph 3 hereof, in the event of any Termination the following rules shall apply:

**(i) Voluntary Termination.** Except as otherwise provided for in Paragraph 4(d)(iv) or 4(d)(v) hereof, and subject to Paragraph 9 hereof, in the event of your voluntary Termination all then outstanding unvested 2007 Units shall be terminated, forfeited and be cancelled, and you shall have no further right to any shares of Common Stock relating thereto. All other terms and conditions of this Agreement and the Plan shall continue to apply to any 2007 Units not so terminated.

**(ii) Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all 2007 Units, whether or not vested, shall be terminated, forfeited and cancelled, and you shall have no further right to any shares of Common Stock relating thereto.

**(iii) Involuntary Termination without Cause.** Except as provided in Paragraphs 4(c), 4(d)(iv) 4(d)(v), and 9, and subject to Paragraphs 4(b), 4(e), 7, 14 and 15, in the event of your involuntary Termination without Cause, you shall be entitled to receive freely transferable shares of Common Stock with respect to any then outstanding 2007 Principal Units as soon as practicable after the Share Payment Date, but no later than December 31, 2012, provided however, that your entitlement to receive freely transferable shares of Common Stock with respect to such unvested outstanding 2007 Principal Units is expressly conditioned on your timely execution of a release in such form as may be required by Holdings or any Subsidiary and in accordance with Holdings' (or any Subsidiary's) policies and procedures then in effect. All then outstanding unvested 2007 Discount Units shall be terminated, forfeited and cancelled, and you shall have no further right to any shares of Common Stock relating thereto.

**(iv) Full Career Termination.** Notwithstanding the foregoing provisions of Paragraphs 4(d)(i) and (iii), but without limiting the application of Paragraphs 4(b), 4(d)(ii), 4(d)(v), 4(e) 7, 9, 14 and 15, in the event your voluntary Termination occurs at a time when you satisfy the definition of Full Career Termination, you shall become vested in all of your then outstanding 2007 Units and shares of Common Stock relating thereto shall be delivered as soon as practicable after the Share Payment Date, but no later than December 31, 2012. An express condition of your 2007 Units becoming vested and shares of Common Stock underlying such 2007 Units becoming deliverable pursuant to the immediately preceding sentence is that you not engage in Competitive Activity through and

including the end of the Company's fiscal quarter following the one year anniversary of such Termination. Notwithstanding the foregoing provisions of Paragraphs 4(d)(i) and (iii), but without limiting the application of Paragraphs 4(b), 4(d)(ii), 4(d)(v), 4(e) 7, 9, 14 and 15, in the event your involuntary Termination without Cause occurs at a time when you satisfy the definition of Full Career Termination, you shall become vested in all then outstanding 2007 Units, and shares of Common Stock relating thereto shall be delivered as soon as practicable after the Share Payment Date, but no later than December 31, 2012.

(v) **Occurrence of Death or Disability following Termination.** Without limiting the applicability of Paragraphs 4(b), 4(e), 7, 9, 14 and 15 hereof and notwithstanding the foregoing provisions of Paragraph 4(d)(i), (iii), and (iv) in the event of the occurrence of your death or Disability following a Termination, all outstanding 2007 Units held by you that were vested at or by reason of your Termination shall at that time become immediately deliverable and you shall, on the 30th day thereafter, receive freely transferable shares of Common Stock.

Any shares of Common Stock that become deliverable pursuant to this Paragraph 4(d) (other than Paragraph 4(d)(v)) shall be delivered to you as soon as practicable after the Share Payment Date, but no later than December 31, 2012, subject to the application of Paragraphs 4(b), 9, and 15. Any remaining 2007 Units that are not deliverable pursuant to the provisions of Paragraph 4(d) or otherwise under this Agreement or the Plan shall be terminated, forfeited and be cancelled by Holdings, and you shall have no further right to any shares of Common Stock relating thereto.

For purposes of this Agreement, Holdings and/or the Committee, as applicable, shall determine in its sole discretion whether or not your Termination is voluntary, involuntary, or with or without Cause, whether or not you have engaged in Detrimental Activity, or whether or not you meet the definition of Disability or Full Career Termination.

(e) **Affidavit.** You may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit as required may cause you to forfeit all 2007 Units held by you at that time or, to repay to Holdings the full gross amounts or shares you received under this Agreement as may be applicable.

**5. DIVIDEND EQUIVALENTS.** With respect to each dividend or distribution paid or made on Common Stock to holders of record on or after the date of grant of your 2007 Units, with respect to each then outstanding 2007 Unit you then hold, you shall be credited with a number of additional 2007 Units equal in value to such dividend or distribution as of the date of such dividend or distribution, subject to Paragraph 8. Such additional 2007 Units shall vest and become deliverable at the same time and subject to the same conditions as the 2007 Units to which they correspond

**6. LIMITATION ON OBLIGATIONS.** Holdings' and any Subsidiary's obligation with respect to the 2007 Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any Subsidiary become obligated to pay cash in respect of such obligation. If the date on which shares of Common Stock with respect to 2007 Units are to be delivered to you falls on a non-business or non-trading day such shares shall be delivered on the immediately succeeding trading day (i.e., when shares trade regular way on the New York Stock Exchange). Whenever shares with respect to 2007 Units are required to be delivered on the 30th day following a specific triggering event, and such 30th day falls within the same tax year as the triggering event, the delivery may be made earlier, at the discretion of Holdings.

**7. NON-ASSIGNMENT.** 2007 Units may not be sold, assigned, transferred, pledged, hypothecated, or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to deliver any shares of Common Stock hereunder shall terminate.

**8. EQUITABLE ADJUSTMENT.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the date you receive shares with respect to the 2007 Units, the number and kind of shares of Common Stock which may be delivered with respect to 2007 Units shall be adjusted so as to reflect such change.

**9. CHANGE IN CONTROL.**

(a) **Vesting of Units Following a Change in Control.** Following a Change in Control, except to the extent that (i) you are entitled to earlier vesting pursuant to Paragraphs 3 and 4 or (ii) your 2007 Units are forfeited pursuant to Paragraph 4 due to your engaging in Detrimental Activity, Termination with Cause or voluntary Termination, all of your then outstanding 2007 Units shall vest upon the later of (x) 18 months following such Change in Control or (y) a date determined by the Committee that is within 15 days of November 30 of the Fiscal Year following the Fiscal Year in which the Change in Control occurs (such later date, the "Change in Control Vesting Date"). Additionally, all of your 2007 Units (including Principal and Discount Units) shall become immediately vested in the event of your involuntary Termination without Cause following the Change in Control but prior to the Change in Control Vesting Date.

(b) **Delivery of Common Stock Following a Change in Control.** Following a Change in Control, except to the extent that (i) you are entitled to receive earlier delivery of shares of Common Stock pursuant to Paragraph 4 or (ii) your 2007 Units are forfeited pursuant to Paragraph 4 due to your engaging in Detrimental Activity, Termination with Cause or voluntary Termination or by reason of Paragraphs 7 or 14, you shall receive shares of Common Stock in respect of your then outstanding 2007 Units on the Change in Control Vesting Date; provided, however, that in the event of your Termination for any reason other than due to death or Disability following the Change in Control but prior to the Change in Control Vesting Date, you shall receive shares of Common Stock in respect of your then vested 2007 Units upon the earlier of (x) the last day

of the fiscal quarter that ends after the first anniversary of the date of your Termination or (y) the Change in Control Vesting Date.

For purposes of this Paragraph 9, the term "Fiscal Year" shall refer to the fiscal year of Holdings.

**10. AMENDMENT.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions), including, without limitation, in order to satisfy applicable requirements of Sections 162(m) and Section 409A of the Code, as amended from time to time, (whether or not your rights are adversely affected).

**11. BINDING ACTIONS.** Any action taken or decision made by the Committee or its designees arising out of or in connection with the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

**12. NO RIGHT TO CONTINUED EMPLOYMENT.** The grant of 2007 Units shall not confer on you any right to be retained in the employ of Holdings or a Subsidiary, or to receive subsequent units or other awards under the Plan. The right of Holdings or any Subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any Subsidiary and you is specifically reserved.

**13. APPLICABLE LAW.** The validity, construction, interpretation, administration, and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

**14. WITHHOLDING / DEDUCTIONS.** Holdings shall have the right to deduct applicable taxes from all amounts payable to you arising as a result of the grant, vesting or payment hereunder. It shall be a condition to the obligation of Holdings to deliver shares of Common Stock hereunder (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, either in the form of cash or freely transferable shares of Common Stock such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold or satisfy any taxes required by law which are incurred by reason of or are otherwise due as a result of the grant, vesting or the delivery of such shares of Common Stock, and (b) that where determined necessary or appropriate by the Firm in its sole discretion, you direct the sale of any shares of Common Stock delivered in respect of any 2007 Units to satisfy any such amounts in Paragraph 14(a) hereof, and (c) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant or vesting of the 2007 Units or delivery of shares of Common Stock hereunder. If the amount requested for the purpose of satisfying the withholding or other tax obligation is not paid, you hereby direct Holdings to withhold shares of Common Stock and / or related dividend equivalents and to otherwise sell shares of Common Stock delivered hereunder in order to fulfill any such obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the minimum statutory withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any Subsidiary; provided, however, that no such right to deduct or offset shall arise or otherwise be deemed to arise until the date upon which shares of Common Stock are deliverable hereunder.

**15. CODE SECTION 409A.** It is intended that none of the 2007 Units or payments otherwise due hereunder shall be deferred, accelerated, extended, paid out or modified in a manner that would result in the imposition upon you of an additional tax under Section 409A of the Code; provided that neither Holdings nor any of its employees or representatives shall have any liability to you with respect to any such taxes. In the event that it is reasonably determined by the Committee that, as a result of Section 409A of the Code, payments hereunder may not be made at the time contemplated by the terms of this Agreement or the Plan, as the case may be, without causing you to be subject to taxation under Section 409A of the Code, Holdings will make such payment on the first day that would not result in your incurring any tax liability under Section 409A of the Code. If you are a "specified employee" (within the meaning of Section 409A(a)(2)(B)(i) of the Code), payments and/or deliveries of shares of Common Stock that are linked to the date of your separation from service shall not be made prior to the date which is six (6) months after the date of your separation from service Holdings and its affiliates, determined in accordance with Section 409A of the Code and the regulations promulgated thereunder.

## ANNEX A: DEFINITIONS

**"Appropriate Officer"** means the Chief Executive Officer or Chief Operating Officer of Holdings (or their respective designees).

**"Cause"** means a material breach by a person of an employment contract between the person and Holdings or any Subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any Subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any Subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any Subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any Subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any Subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer. For avoidance of doubt, for purposes of the preceding sentence, a material breach of an employment contract or violation of policies would include, as applicable, the employee's

violation of any policy or employment agreement relating to the obligation to provide advance notice of resignation from Holdings or any subsidiary.

**"Change in Capitalization"** means the occurrence of a circumstance described in Section 14 of the Plan.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its Subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its Subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any of its Subsidiaries relating to the business affairs of Holdings or any of its Subsidiaries, affiliates or clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its Subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its Subsidiaries or affiliates, or any of their affiliates (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation, or goodwill of Holdings or its Subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

**"Discount Units"** shall mean the number of 2007 Units (and any dividend equivalents related thereto that are not Principal Units. If you were a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2007, thirty percent (30%) of your 2007 Units as of the date of grant will be Discount Units. If you are an employee other than a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2007, twenty-five percent (25%) of your 2007 Units as of the date of grant will be Discount Units.

**"Full Career Termination"** means a Termination when (i) a person has at least 20 years of service, (ii) the person is at least 45 years old, and the person has at least 10 years of service; or (iii) the person is at least 50 years old, and the person has at least 5 years of service.

**"Principal Units"** shall mean the number of 2007 Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award. If you were a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2007, seventy percent (70%) of your 2007 Units as of the date of grant will be Principal Units. If you are an employee other than a Managing Director of Holdings or any Subsidiary for the fiscal year ended November 30, 2007, seventy-five percent (75%) of your 2007 Units as of the date of grant will be Principal Units.

**"Share Payment Date"** means November 30, 2012.

**"Termination"** means the end of active employment with Holdings or a Subsidiary. The characterization of the circumstances of Termination is determined in the sole discretion of an Appropriate Officer.

©2007 Lehman Brothers. All Rights Reserved.

# LEHMAN BROTHERS

## 2007 SPECIAL RESTRICTED STOCK UNITS ("SPECIAL MD RSUs")
## PERSONAL AWARD STATEMENT[1]
## «FIRST_NAME» «LAST_NAME»

| | | |
|---|---|---|
| **Grant Date** | December 7, 2007 | |
| **Grant Price** | Market Price:<br>Discounted Grant Price: | $63.47<br>$44.43 |
| **Amount of 2007 Total Compensation in Special MD RSUs[2]** | | **$«Special_Equity»** |
| **Number of Special MD RSUs Granted** | Principal portion (70%):<br>Discount portion (30%):<br>Total | «Principal»<br>«Discount»<br>«Total» |
| **Vesting Schedule** | 100% of Special MD RSUs (principal and discount) vests on November 30, 2009, provided the employee remains actively employed with the Firm through that date. | |
| **Share Payment Date** | Shares in respect of vested Special MD RSUs will be delivered on November 30, 2012 (the "Share Payment Date"). | |

**TERMINATION PROVISIONS[3]**

| | |
|---|---|
| **Voluntary Termination** | All unvested Special MD RSUs are forfeited. Any vested Special MD RSUs convert to shares of common stock and are delivered on the Share Payment Date, provided the employee does not engage in Detrimental Activity through that date. |
| **Involuntary Termination without Cause** | 100% of the principal portion of Special MD RSUs vests (subject to the execution of a Firm-standard release agreement). Unvested discount portion is forfeited. Shares are delivered on the Share Payment Date, provided the employee does not engage in Detrimental Activity through that date. |
| **Involuntary Termination with Cause** | Participants forfeit 100% of both the principal and discount portions of Special MD RSUs (including any vested portions). |
| **Termination due to Death or Disability** | 100% of principal and discount portions immediately vest, and shares are delivered 30 days following the termination date. |

[1] This document is informational only. All terms and conditions of the 2007 Special Equity Award for Select MDs are subject to the applicable controlling plan documents, including but not limited to the applicable award agreement (to be finalized in early 2008), the 2005 Stock Incentive Plan and the 2005 Stock Incentive Plan Prospectus. In the event of any conflict between the plan documents and the information in this document, the plan documents will govern. Capitalized terms not otherwise defined above have the meaning assigned to them in the 2007 Equity Award Program. Unless otherwise provided herein, the terms and conditions of the 2007 Equity Award Program will otherwise apply to these 2007 Special Equity Awards for Select MDs.

[2] Calculated as 12% of 2007 Total Compensation (including diversity awards) of **$«LB_TC_Stk_»**. This amount is in addition to amounts awarded under the 2007 Equity Award Program for Managing Directors.

[3] Note that this award has no full career provisions for employees whose employment terminates prior to the scheduled vesting date(s).

# LEHMAN BROTHERS

## PERSONAL AWARD STATEMENT
## FOR
## First Last

The following award information is in accordance with the terms and conditions of the Lehman Brothers Equity Award Program approved by the Compensation and Benefits Committee of the Board of Directors.

**SPECIAL RESTRICTED STOCK UNIT [1] ("RSU") AWARD**

| | |
|---|---|
| Grant Date : | January 30, 2007 |
| Restricted Stock Units (RSUs) Granted : | 308.87 |
| Closing Stock Price on Grant Date : | $80.94 |
| Market Value of Restricted Stock Units : | $25,000 |

Your RSUs will vest and convert to shares of common stock on the following dates:

| Vest Date | Share Issuance Date |
|---|---|
| Awards will vest ratably in five equal installments: 20% on January 30th of 2008, 2009, 2010, 2011, 2012 | Awards will be issued ratably in five equal installments: 20% on January 30th of 2008, 2009, 2010, 2011, 2012 |

**Termination Provisions**

Involuntary Termination with Cause[2]: All RSUs will be immediately forfeited upon termination.

Death, Disability, or Involuntary Termination without Cause: RSUs will immediately vest and shares of Lehman Brothers common stock will be issued on the 30th day following the termination date, provided the participant does not engage in Detrimental Activity[3] through that date.

Voluntary Termination Events: Unvested RSUs will be forfeited upon termination.

(1) Each Restricted Stock Unit ("RSU") represents the conditional right to receive one share of Lehman Brothers common stock upon the Share Issuance Date, assuming continued employment with the Firm. On the Share Issuance Date, the restriction period will end, and you will be entitled to receive one share of Lehman Brothers common stock for each vested RSU you hold at that time. Once your RSUs convert to common stock, they become freely tradable. The RSUs cannot be sold, transferred or pledged before conversion.

Dividend equivalents accrue quarterly on your RSUs and are reinvested as additional RSUs. Dividend reinvestment RSUs are subject to the same vesting and forfeiture provisions as the underlying RSUs to which they relate. The Firm retains the right to change its dividend policy at any time.

(2) "Cause" means a material breach by a person of an employement contract between the person and Holdings or any subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any subsidiary, including but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any subsidiary, or such other circumstances as may be determined in the sole discretion of the Chief Executive Officer or Chief Operating Officer of Lehman Brothers Holdings Inc. (or their respective designees)

(3) "Detrimental Activity" means (i) using information received during a person's employment with Holdings or any of its subsidiaries related to the business affairs of Holdings or any of its subsidiaries, affiliates or their clients, in breach of such person's undertaking to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any of its subsidiaries or affiliates to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; (iii) directly or indirectly making any statement that is, or could be, disparaging of Holdings, its subsidiaries or affiliates, or any of their employees (except as necessary to respond truthfully to any inquiry from applicable regulatory authorities or to provide information pursuant to legal process); or (iv) directly or indirectly engaging in any activity that is, or could be, substantially injurious to the financial condition, reputation or goodwill of Holdings or its subsidiaries or affiliates, in each case as determined in the sole discretion of the Chief Executive Officer or Chief Operating Officer of Lehman Brothers Holdings Inc. (or their respective designees).

Note: This statement is intended to provide you with a summary of your award. This award statement does not create an employment contract or any employment rights and is not a guarantee or promise of employment of any kind. Nothing in this award statement shall affect, interfere with, or limit in any way, the right of the Firm, in its sole discretion, to terminate an employee's employment for any reason, with or without cause at any time. Nor shall the existence of this award statement confer upon any employee any right to continue in the employment of the Firm. All terms and conditions of the award are subject to the applicable controlling plan documents, including but not limited to the 2005 Stock Incentive Plan and the 2005 Stock Incentive Plan Prospectus.