**Hearing Date and Time:  December 15, 2010 at 10:00 a.m. (Eastern)**

NIXON PEABODY LLP
Christopher M. Desiderio
David H. Lee
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000
and
Amanda D. Darwin
Richard C. Pedone (admitted *pro hac vice*)
100 Summer Street
Boston, MA  02110
Telephone:  (617) 345-1000

*Counsel to Deutsche Bank Trust Company Americas*
*and Deutsche Bank National Trust Company,*
*each in their roles as Trustee, Indenture Trustee, Supplemental Interest Trust Trustee*
*and in other related fiduciary capacities*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., <u>et al.</u>, ) | |
| ) | Case No. 08-13555 (JMP) |
| Debtors. ) | |
| ) | Jointly Administered |
| ) | |

**OBJECTION OF DEUTSCHE BANK TRUST**
**COMPANY AMERICAS AND DEUTSCHE BANK NATIONAL TRUST**
**COMPANY TO DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE**
**BANKRUPTCY CODE AND GENERAL ORDER M-390 FOR AUTHORIZATION TO**
**IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**
**FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES**
<u>**TRANSACTIONS WITH SPECIAL PURPOSE VEHICLE COUNTERPARTIES**</u>

Deutsche Bank Trust Company Americas and Deutsche Bank National Trust Company

(the "<u>Trustees</u>"), each as Trustee, Indenture Trustee, Supplemental Interest Trust Trustee, and in

their other related fiduciary capacities for various trusts and other transactions, file this objection

(the "<u>Objection</u>") to the above-captioned debtors' (the "<u>Debtors</u>") Motion Pursuant to Section

105(a) of the Bankruptcy Code and General Order M-390, for Authorization to Implement

13263985

Alternative Dispute Resolution ("ADR") Procedures for Affirmative Claims of the Debtors

under Derivatives Contracts Involving Transactions with Special Purpose Vehicle Counterparties

(the "Motion").[1]  In support of this Objection, the Trustees state as follows:

### PRELIMINARY STATEMENT

1.      The Motion must be denied because the procedures proposed therein (the

"Proposed Procedures") require SPV Derivative Counterparties, including the Trustees, to take

unauthorized actions or face possible sanctions.  While it may be prudent to amend the current

ADR procedures to address the concerns raised by the Debtors, as well as other issues involving

the settlement of disputes between the Debtors and Special Purpose Vehicle Counterparties, the

Proposed Procedures will not achieve the Debtors' goals.  In fact, the Proposed Procedures will

prove counterproductive and will, in all likelihood, lead to a waste of judicial resources.  The

Trustees articulate their concerns with the Proposed Procedures as parties to current litigation

with the Debtors involving numerous transactions with disputed amounts totaling more than

three hundred million dollars in the aggregate.  The Trustees desire to resolve all outstanding

issues without the need for wasteful litigation.

2.      The Proposed Procedures require each SPV Derivative Counterparty to "identify

and designate . . . a person with complete settlement authority."  Motion, ¶16.  Under the terms

of documents governing the relevant transactions involving the Trustees (the "Trust

Documents"), settlements may require the approval of a specified number or class of

Noteholders.  Under the Trust Documents and related derivative contracts, no one person has

"complete settlement authority".  Further, the neither the derivative contracts or related Trust

---

[1]      Capitalized terms used, but not defined herein, shall have the meanings given to such terms in the Motion.

Documents give SPV Derivative Counterparties and/or the Trustees[2] authority to create a

"person with complete settlement authority" out of thin air by "designation" or otherwise.

Finally in some cases, settlement authority under the derivative contracts and Trust Documents is

unclear.

       3.     Noteholder voting and approval rights are material contractual protections, which

are necessary to protect the parties holding the economic interest in these structured transactions.

The Proposed Procedures inappropriately threaten sanctions against SPV Derivative

Counterparties simply because they are unable to designate non-existent persons with authority.

As detailed below, it would be far more productive, and cost-efficient, for the Debtors to make a

good-faith effort to engage Noteholders in any ADR process.  In addition, as detailed below, at

the same time that the ADR Procedures are revised, procedures governing the approval of

settlements with special purposes vehicles should be established.

## BACKGROUND

### A.    The Nature of the Transactions

       4.     The Trustees act in various capacities that are specifically provided for by the

Trust Documents with respect to various trusts and transactions (the "Structured Transactions").

Often, these transactions involve the issuance of notes or other securities (collectively, the

"Notes") to noteholders or certificateholders (collectively, "Noteholders") by a special purpose

vehicle or trust (the "Issuer").

       5.     Each Structured Transaction involves one or more derivative contracts between a

Lehman entity (the "Lehman Derivative Counterparty") and a counterparty related to a special

purpose vehicle or trust (e.g., a "SPV Derivative Counterparty" as defined in the Motion).  It

---

[2]     In some transactions the Trustee is the SPV Derivative Counterparty, while in others, the Trustee and the SPV Derivative Counterparty are two distinct entities.

should be noted that in some Structured Transactions the SPV Derivative Counterparty and the

Issuer are separate distinct legal entities.

6.      In all cases involving the Trustees, the Noteholders are the parties with the real

economic interests at stake in each Structured Transaction and the Noteholders are the parties

that will reap the benefits, or suffer the burdens, relating to any amounts that may be owed by, or

owed to, the Lehman Derivative Counterparties.  Typically, the Trustees do not have any

underlying economic interest in the Structured Transactions and act solely in administrative

capacities as set forth in the Trust Documents.

**B.      The Initial ADR Order**

7.      On July 20, 2009, the Debtors filed the *Motion Pursuant to Section 105(a) of the*

*Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute*

*Resolution Procedures for Affirmative Claims of Debtors Under Derivative Contracts* (the

"Initial ADR Motion")[Dkt. No. 4453] seeking, among other things, the approval of alternative

dispute resolution procedures with respect to the Debtors' derivatives-related claims.  The Initial

ADR Motion drew more than fifty objections.[3]

8.      At that time, the Trustees, among other parties, expressed concerns with respect to

their lack of authority to settle the relevant claims in the absence of Noteholders' consent.

Recognizing these concerns, as well as the need to notify Noteholders whose interests would be

affected, the order entered by the Court (the "Initial ADR Order") [Docket No. 5207] provides

that to the extent a derivative counterparty is a trustee, indenture trustee, or other fiduciary who

---

[3]      *Debtors Omnibus Responses to Objections to the Derivative ADR Motion* [Docket No. 56] (Noting that, as
of August 24, 2009, no less than 56 objections remained unresolved and the Debtors had circulated or filed 4
versions of the proposed order); *Notice of Final Post-Hearing Proposed Order Approving the Derivative ADR
Motion*, filed on September 14, 2009 [Docket No. 5132].

lacks the authority under the governing documents to participate in ADR and settle the relevant

claims:

> [Such trustee] shall contact the holders for which it acts as [trustee] through the clearing systems or when possible by a direct written communication that: (v) advises such holders that the Debtors dispute holders' claims; (w) transmits to them the applicable Derivatives ADR Notice; (x) invites them to participate in the Derivatives ADR Procedures as an alternative to litigation; (y) encourages them to communicate directly with the Debtors; and (z) offers to take holders' direction in accordance with the governing documents to participate in the Derivatives ADR Procedures on behalf of such directing holders.

In taking the foregoing steps, a trustee is required to "make commercially reasonable efforts to

act as promptly as possible under the prevailing circumstances." Initial ADR Order ¶ 5(b).

### **OBJECTION**

**A.      It is Impossible to Create a Single Entity With Authority to Settle if the Governing Documents do not Provide for the Designation of Such Entity**

9.      The Debtors argue that the Court is authorized to approve the proposed SPV ADR

Procedures pursuant to the "broad, equitable powers available to the Court" under section 105(a)

of the Bankruptcy Code. Motion ¶ 24. However, to the extent the Trust Documents or

derivative contracts require a specified number or class of Noteholders to approve any settlement

of the relevant disputes, neither section 105(a) nor any other provisions of the Bankruptcy Code,

allows the Court or the Debtors to unilaterally alter the terms of such agreements.

10.      In many cases, the SPV Derivative Counterparty or the Trustees, as applicable, do

not have authority to enter into settlements without Noteholder approval, or to magically create a

single person with "complete settlement authority" to approve such a settlement. *See In re Delta*

*Air Lines, Inc.*, 370 B.R. 537, 548 (trustee can only settle "at the behest of a majority of the

Bondholders"); *Elliott Assoc. v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 70-71 (2d

Cir. 1988) (An indenture trustee's rights and obligations are "exclusively defined in the terms of

the indenture agreement"); *Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg.*

*Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993) ("[S]ection 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties.").

11.     No provision of the Bankruptcy Code authorizes the alteration of the explicit terms of the Trust Documents or the sanction of an SPV Derivative Counterparty and/or Trustee for complying with those provisions.  Even if such authority existed, the United States constitution would only permit such modifications of substantial contract rights <u>after</u> the impacted Noteholders were made party to the litigation or were otherwise afforded appropriate due process protections.  *See, e.g.*, *Memphis Light, Gas and Water Div. v. Craft*, 436 U.S. 1, 11 (1978) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); *In re Britt*, 199 B.R. 1000, 1010 (Bankr. N.D. Ala. 1996) ("In order to determine the rights of parties with respect to interests in property,  the bankruptcy court must comply with due process").[4]

**B.    A Pending Adversary Proceedings Does Not Change SPV Derivative Counterparties', the Trustees', or the Noteholders' Duties and Rights**

12.     The Debtors argue that this Court is authorized to require the SPV Derivative Counterparties to make Settlement Participation Designations because the Debtors will have commenced adversary proceedings against the SPV Derivative Counterparties.  Therefore, the Debtors argue, the Court has authority to order mediation of the adversary proceedings and

---

[4]     While the Debtors have served a fairly exhaustive list of parties, it is not clear that all current Noteholders have been served with notice of the Motion.  Nor is it clear what steps were taken to determine the identity and contact information for the Noteholders whose economic and legal interests are directly impacted by this Motion.

- 6 -

"require attendance by party representatives having authority to settle the disputes." *See* Motion, ¶ 26 - 28.

13.     While the Court has the authority to order mediation, it does not have the power to approve the SPV ADR Procedures as currently contemplated.  A "party representative" can not be given more settlement authority than they are granted pursuant to the governing Trust Documents or derivatives contract.  Further, the Trustees, as SPV Counterparties in some instances, are not aware of authority that would allow them to designate a "representative" and give such representative "the authority to settle the disputes" in disregard of the Noteholders' voting and approval rights simply because an adversary proceeding is pending.  In all cases, no matter how difficult it may be, ADR procedures must be adapted to the contractual realities of the structured transaction documents.

### C.     The Relief Sought by the Debtors Does Not Promote Judicial Economy

14.     By requiring SPV Derivative Counterparties, such as the Trustees, to act outside of their authority and in defiance of the derivative contracts and Trust Documents, or face the threat of sanctions, the Proposed Procedures are not only unreasonable, but they are counter-productive.  SPV Derivative Counterparties, in an effort to avoid sanctions, will be forced to seek judicial intervention or will have to litigate issues related to their authority under the Trust Documents before being able to enter into any settlements.  Such litigation, which may take place in forums other than the Bankruptcy Court, will result in a waste of judicial resources and will be a distraction for the Debtors, this Court, and all parties-in-interest.

### D.     The Debtors Seek to Amend the Initial ADR Order, Which Was the Result of Good Faith Negotiations

15.     As discussed above, dozens of parties responded to the Initial ADR Motion and engaged the Debtors in discussions that resulted in the various provisions contained in the final

version of the Initial ADR Order. Now, without consulting the parties that negotiated in good faith in July 2009, the Debtors unilaterally seek to amend the procedures. Such unilateral action is wasteful and counterproductive and therefore, the relief sought in the Motion should be denied.

### E.    Noteholders Should Be Provided With Proper Procedural Protections

16.    Paragraph 5(b) to the Initial ADR Order provides for notification of Noteholders for a very good reason: the Noteholders are the parties with actual economic stake in the disputes. Furthermore, in many cases, Noteholders control the authority to settle such disputes pursuant to voting and other procedures set forth in the Trust Documents. Accordingly, the proper and efficient resolution of the disputes (whether via ligation, negotiation, or ADR) requires the involvement of the Noteholders.

17.    While negotiating an agreement with multiple interested parties with respect to each Structured Transaction may not be as convenient as negotiating with one party, such negotiations are quite common in chapter 11 cases.

18.    Given the complexity of the Structured Transactions, and the need for final and binding settlements, to the extent that the Court enters any order with respect to the Motion, or otherwise governing ADR with SPV Counterparties, such procedures should require that the Debtors involve the Noteholders.

19.    Specifically, instead of requiring SPV Derivative Counterparties to make unauthorized designations, any order approving such procedures should provide for the following:

> a.    The Debtor shall be required to serve a copy of the ADR Derivative Package upon all parties whose rights are to be affected by the outcome of the ADR proceeding, including, but not limited to, each applicable Noteholder and each applicable SPV Derivative Counterparty.

b.     To the extent that any settlement is reached after commencement of an ADR proceeding, the Debtors shall move for approval of such settlement pursuant to Bankruptcy Rule 9019 and 11 U.S.C. § 105, and provide notice of such motion to all parties whose rights are to be affected by the outcome of the ADR proceeding, including, but not limited to, each applicable Noteholder and each applicable SPV Derivative Counterparty.[5] The type of notice to be afforded to Noteholders and the protections provided to SPV Derivative Counterparties and Trustees shall be among the issues to be resolved in the ADR proceeding.

c.     Notwithstanding the foregoing, to the extent that an SPV Derivative Counterparty, after reviewing applicable transaction documents, determines, in its sole discretion, that an adversary proceeding must be commenced against Noteholders (and/or other parties whose interest may be affected) by the Debtors in order to provide proper notice to such parties, the Debtors shall commence an adversary proceeding against such parties.[6]

d.     Any order approving a settlement shall estop and permanently enjoin Noteholders from asserting, prosecuting, or otherwise pursuing claims in any way related to the matters that are the subject of the settlement against parties to the settlement, including any SPV Derivative Counterparty and Trustee.[7]

e.     The Debtors shall indemnify other parties to the settlement, such as SPV Derivative Counterparties and the Trustee, to the extent any Noteholder or any other party assert claims that their due process rights were disregarded or circumvented.

Without such protections the Trustees and other SPV Derivative Counterparties, will be forced to choose between potential sanctions from this Court or potential lawsuits from Noteholders. Neither of these alternatives is acceptable nor necessary.

---

[5]    *See e.g., Debtors' Motion for Approval of a Settlement Among Lehman Brothers Special Financing Inc., BNY Corporate Trustee Services Limited, Perpetual Trustee Company Limited, and Others, Relating to Certain Swap Transactions with Saphir Finance Public Limited Company* [Docket No. 13051].

[6]    *See e.g.*, *Lehman Brothers Special Financing Inc. v. Bank of America National Association et al*, Case No. 10-03547-JMP (Bankr. S.D.N.Y.)

[7]    *See e.g.*, Exhibit B to *Motion of the Debtors Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019(b) for Authorization and Approval of the Settlement Between Lehman Brothers Financial Products Inc., Madison Avenue Structured Finance CDO I, Ltd., Madison Avenue Structured Finance CDO I, Corp., Metlife Investment Advisors Company LLC, and U.S. Bank National Association* [Docket No. 12996].

## CONCLUSION

Wherefore, the Trustees request that this Court: (i) deny the SPV ADR Motion; (ii) order

that the Debtors engage in good-faith negotiations with the Trustees to establish appropriate

ADR and settlement procedures; and (iii) grant such further relief to as is just and appropriate.


Dated:  New York, New York
        December 8, 2010

                                Respectfully Submitted,


                                By:  /s/ Christopher M. Desiderio
                                Christopher M. Desiderio
                                David H. Lee
                                NIXON PEABODY LLP
                                437 Madison Avenue
                                New York, NY 10022
                                Telephone: (212) 940-3000
                                Facsimile: (212) 940-3111

                                and

                                Amanda D. Darwin
                                Richard C. Pedone (admitted *pro hac vice*)
                                NIXON PEABODY LLP
                                100 Summer Street
                                Boston, MA  02110
                                Telephone: (617) 345-1000

                                *Counsel to Deutsche Bank Trust Company Americas, and
                                Deutsche Bank National Trust Company, each in their roles
                                as Trustee, Indenture Trustee, Supplemental Interest Trust
                                Trustee and in other related fiduciary roles*