# SCHEDULE
to the
## Master Agreement

dated as of June 22, 2007

between

**LEHMAN BROTHERS SPECIAL FINANCING INC. ("Party A")**,
a corporation organized under the laws of the State of Delaware,

and

**WHITE MARLIN CDO 2007-1 LTD. ('Party B")**,
a segregated portfolio company with limited liability incorporated under
the laws of the Cayman Islands

*All terms used and not otherwise defined are given the meaning ascribed to them in the Indenture, dated as of June 22, 2007, among Party B, as Issuer,* **White Marlin CDO 2007-1 Corp.**, *as Co-Issuer and U.S. Bank National Association, as Trustee (together, the "Indenture").*

**Part 1. Termination Provisions**

In this Agreement:

(a)   **"Specified Entity"** means in relation to Party A for the purpose of:

| | |
|---|---|
| Section 5(a)(v) | Not applicable. |
| Section 5(a)(vi) | Not applicable. |
| Section 5(a)(vii) | Not applicable. |
| Section 5(b)(iv) | Not applicable. |

and in relation to Party B for the purpose of:

| | |
|---|---|
| Section 5(a)(v) | Not applicable. |
| Section 5(a)(vi) | Not applicable. |
| Section 5(a)(vii) | Not applicable. |
| Section 5(b)(iv) | Not applicable. |

(b)   **"Specified Transaction"** will have the meaning specified in Section 14 of this Agreement.

(c)   **Payments on Early Termination.** If an Early Termination Date is designated hereunder, Market Quotation and Second Method shall be used to calculate any

1

    termination payment owing by either party in respect of such Early Termination Date. If an Early Termination Date is designated and any termination payment is owed by Party B, such termination payment shall be paid on the first Payment Date on or after the Early Termination Date in accordance with the Priority of Payments set forth in the Indenture.

(d)    The following shall be specified as an "Additional Termination Event" pursuant to Section 5(b)(v):

    (i)    **Event of Default Under the Indenture.** An Event of Default under the Indenture has occurred and is continuing and the Trustee has proceeded to liquidate the Collateral, or the Notes are redeemed on any Payment Date prior to the Maturity Date, and in each case such acceleration or redemption, as applicable, is no longer capable of being rescinded or revoked. For the purpose of this Additional Termination Event (1) subject to the last sentence of this Part 1(d)(i) the Affected Party shall be Party B, (2) all Transactions shall be Affected Transactions, and (3) any amount payable in respect of such event shall be payable on the immediately following Payment Date. Party A shall be the Affected Party if the Event of Default was directly and exclusively caused by a Failure to Pay by Party A pursuant to this Agreement that was not cured by Party A

    (ii)    **Failure to Post Collateral by Party A**. On any day, Party A fails to post the required Credit Swap Posted Amount and such failure is not cured for a period of 10 Business Days after written notice by Party B. For the purpose of this Additional Termination Event, Party A shall be the Affected Party.

    (iii)    **Supplemental Indentures without Party A's Prior Written Consent.** Party B enters into a supplemental indenture or other modification to the Indenture that could reasonably be expected to have a material adverse effect on Party A without at least ten (10) Business Days' prior notice to Party A and the prior written consent of Party A. With respect to the above Additional Termination Event, Party B shall be the sole Affected Party.

    (iv)    **Return of Collateral.** Party B fails to return any excess Credit Swap Posted Amount within 15 days following any applicable notice. For the purpose of this Additional Termination Event, Party B shall be the sold Affected Party.

    (v)    **Optional or Tax Redemption.** The occurrence of any Optional Redemption or Tax Redemption or other prepayment in full or repayment in full of all Notes outstanding occurs (or any notice is given to that effect and such redemption or other prepayment or repayment is not capable of being rescinded).

2

(e) The provisions of Section 5(a) (as modified by (c) above) and Section 5(b) (as modified by (d) above) in the manner set forth above) will apply to Party A and to Party B as follows:

| Section 5(a) | | Party A | Party B |
|---|---|---|---|
| (i) | "Failure to Pay or Deliver" | Applicable. | Applicable. |
| (ii) | "Breach of Agreement" | Applicable. | Not Applicable. |
| (iii) | "Credit Support Default" | Applicable. | Not Applicable. |
| (iv) | "Misrepresentation" | Applicable. | Not Applicable. |
| (v) | "Default under Specified Transaction" | Applicable. | Not Applicable. |
| (vi) | "Cross Default" | Not Applicable. | Not Applicable. |
| (vii) | "Bankruptcy" | Applicable. | Applicable. |
| (viii) | "Merger Without Assumption" | Not Applicable. | Not Applicable. |

Provided that clause (2) of the **"Bankruptcy"** provision of Section 5(a)(vii) will not apply to Party B.

| Section 5(b) | | Party A | Party B |
|---|---|---|---|
| (i) | "Illegality" | Applicable. | Applicable. |
| (ii) | "Tax Event" | Applicable. | Applicable. |
| (iii) | "Tax Event Upon Merger" | Applicable. | Not Applicable. |
| (iv) | "Credit Event Upon Merger" | Applicable. | Not Applicable. |
| (v) | "Additional Termination Event" | Applicable. | Applicable. |

(f) "**Termination Currency**" means United States Dollars ("USD").

(g) **Failure to Pay or Deliver.** Section 5(a)(i) is hereby amended by deleting the words "on or before the third Local Business Day after notice of such failure is given to the party" and substituting therefore "in the case of any such failure by Party A, on or before the fifth Local Business Day after notice of such failure is given to Party A, or in the case of any such failure by Party B, on or before the third Local Business Day after notice of such failure is given to Party B."

**Part 2. Tax Representations.**

(A) **Payer Tax Representations**. For the purpose of Section 3(e) of this Agreement, Party A and Party B will each make the following representation:

It is not required by any applicable law, as modified by the practice of any relevant governmental revenue authority, of any Relevant Jurisdiction to make any deduction or withholding for or on account of any Tax from any payment (other than interest under Sections 2(e), 6(d)(ii) or 6(e) of this Agreement) to be made by it to the other party under this Agreement. In making this representation, it may rely on (i) the accuracy of any representation made by the other party pursuant to Section 3(f) of this Agreement, (ii) the satisfaction of the agreement of the other party contained in Section 4(a)(i) or 4(a)(iii) of this Agreement and the accuracy and effectiveness of any document provided by the

3

  other party pursuant to Section 4(a)(i) or 4(a)(iii) of this Agreement; and (iii) the satisfaction of the agreement of the other party contained in Section 4(d) of this Agreement; *provided* that it shall not be a breach of this representation where reliance is placed on clause (ii) and the other party does not deliver a form or document under Section 4(a)(iii) by reason of material prejudice to its legal or commercial position.

(b)  **Payee Tax Representations**. For the purpose of Section 3(f) of this Agreement, Party A and Party B make the following representations:

 (i)  The following representation applies to Party A:

  Party A is a corporation organized under the laws of the State of Delaware.

 (ii)  The following representations apply to Party B:

  (A)  Party B is an exempted company with limited liability duly organized under the laws of the Cayman Islands, and is properly classified as a corporation for United States federal income tax purposes.

  (B)  Party B is (i) a "non-U.S. branch of a foreign person" as that term is used in Section 1.1441-4(a)(3)(ii) of the United States Treasury Regulations and (ii) a "foreign person" as that term is used in Section 1.6041-4(a)(4) of the United States Treasury Regulations.

  (C)  Each payment received or to be received by Party B in connection with this Agreement will not be effectively connected with its conduct of a trade or business in the United States.

  (D)  Tax Representations in Confirmations. For purposes of Sections 2(d)(i)(4) and 3(f), any payee tax representation specified in a Confirmation under this Agreement shall be deemed to be specified in this Schedule.

**Part 3. Agreement to Deliver Documents**

For the purpose of Sections 4(a)(i) and (ii) of this Agreement, each party agrees to deliver the following documents, as applicable:

(a)  Tax forms, documents or certificates to be delivered are:

| Party required to deliver document | Form/Document/Certificate | Date by which to be Delivered |
|---|---|---|
| Party B | A correct, complete and executed U.S. Internal Revenue Service Form W-8IBEN (or any successor thereto), including | (i) Before the first payment date under this Agreement, (ii) before December 31 of each third succeeding calendar year, |

4

| **Party required to deliver document** | **Form/Document/Certificate** | **Date by which to be Delivered** |
|---|---|---|
| | appropriate attachments. | (iii) promptly upon reasonable demand by Party A, and<br>(iv) promptly upon learning that any such Form previously provided by Party B has become obsolete or incorrect. |

(b)   Other documents to be delivered are:

| **Party required to deliver document** | **Form/Document/ Certificate** | **Date by which to be Delivered** | **Covered by Section 3(d)** |
|---|---|---|---|
| Party A | An opinion of counsel to Party A substantially in the form of Exhibit B to this Schedule. | Upon execution of this Agreement. | No |
| Party A | An incumbency certificate with respect to the signatory of this Agreement. | Upon execution of this Agreement. | Yes |
| Party A | A guarantee of Lehman Brothers Holdings Inc. ("Holdings") substantially in the form of Exhibit D to this Schedule. | Upon execution of this Agreement. | No |
| Party B | An opinion of counsel to Party B substantially in the form of Exhibit C to this Schedule. | Upon execution of this Agreement. | No |
| Party B | An incumbency certificate with respect to the signatory of this Agreement. | Upon execution of this Agreement. | Yes |

5

| Party required to deliver document | Form/Document/ Certificate | Date by which to be Delivered | Covered by Section 3(d) |
|---|---|---|---|
| Party B | A copy of the resolution or resolutions (the "Authorizing Resolution") of the Board of Directors of Party B, certified by a secretary, or an assistant secretary of Party B, pursuant to which Party B is authorized to enter into this Agreement and each Transaction entered into under this Agreement. | Upon execution of this Agreement (unless an Authorizing Resolution has previously been furnished by Party B to Party A) and, with respect to each Transaction not covered by a previously furnished Authorizing Resolution, within five Business Days of the Trade Date. | Yes |
| Party B | A copy of all reports provided by Party B to the Noteholders or Rating Agencies under the Indenture. | On the date that any such report is required to be provided to either the Noteholders or Rating Agencies under the Indenture. | Yes |
| Party B | A certified copy of the Indenture and each amendment thereof. | Upon execution of this Agreement and on the date of each amendment thereof. | Yes |
| Party B | Copy of the letter of acceptance of Party B's Process Agent. | Upon execution of this Agreement. | No |

(c)    [Reserved].

**Part 4.  Miscellaneous**

(a)    **Addresses for Notices**.  For the purpose of Section 12(a):

6

Address for notices or communications to **Party A**:

| | |
|---|---|
| Address: | Lehman Brothers Special Financing Inc. |
| | c/o Lehman Brothers Inc. |
| | Collateralized Debt Obligation |
| | 745 Seventh Avenue |
| | New York, NY 10019 |
| Attention: | Documentation Manager |
| Telephone: | (212) 526-5410 |
| Facsimile: | (212) 885-9476 |

With copies to:

| | |
|---|---|
| Address: | Lehman Brothers Inc. |
| | 745 Seventh Avenue |
| | New York, NY 10019 |
| Attention: | Structured Products Transaction Management Group/Jonathan Lai |
| Telephone: | (212) 526-0806 |
| Fax: | (212) 652-0556 |

Address for notices or communications to **Party B**:

| | |
|---|---|
| Address: | WHITE MARLIN CDO 2007-1 LTD. |
| | c/o Maples Finance Limited |
| | P.O. Box 1093 GT |
| | Queensgate House, |
| | South Church Street, Grand Cayman |
| | Cayman Islands |

| | |
|---|---|
| Attention: | The Directors |
| Facsimile No.: | (345) 945-7100 |
| For all purposes. | |

Address for notices or communications to maples and Calder:

| | |
|---|---|
| Address: | Maples & Calder |
| | P.O. Box 309 GT |
| | Ugland House |
| | South Church Street |
| | Grand Cayman, Cayman Islands |
| | British West Indies |

| | |
|---|---|
| Attention: | Dale Crowley |
| Telephone: | (345) 949-8066 |
| Facsimile No.: | (345) 949-8080 |

Address for notices or communications to Standard & Poor's Investments Services:

7

      Address:    Standard & Poor's Ratings Services
                        55 Water Street, 41st Floor
                        New York, New York 10041-0003
      Attention:  "scdo_surveillance@sandp.com"

(b) **Process Agent**. For the purpose of Section 13(c) of this Agreement:

Party A appoints as its Process Agent:    Not applicable.

Party B appoints as its Process Agent:    CT Corporation
                                                             111 Eighth Avenue
                                                             New York, NY 10011
                                                             Ref: White Marlin CDO Ltd.

(c) **Offices**. The provisions of Section 10(a) will apply to this Agreement.

(d) **Multibranch Party**. For the purpose of Section 10(c) of this Agreement:

Party A is not a Multibranch Party.

Party B is not a Multibranch Party.

(e) **Calculation Agent**. The Calculation Agent is Party A.

(f) **Credit Support Document**. Details of any Credit Support Document:

In the case of Party A, a guarantee (the "Swap Guarantee") of Party A's obligations hereunder substantially in the form of Exhibit D attached to this Schedule. Any amendment, modification or waiver shall require, prior to its effectiveness, a Rating Agency Confirmation with respect to such amendment, modification or waiver.

In the case of Party B: Not Applicable.

(g) **Credit Support Provider**.

Credit Support Provider means in relation to Party A: Holdings.

Credit Support Provider means in relation to Party B: Not Applicable.

(h) **Governing Law**. This Agreement will be governed by and construed in accordance with the laws of the State of New York including all matters of construction, validity and performance (including Sections 5-1401 and 5-1402 of the New York General Obligations Law but excluding all other choice-of-law and conflicts-of-law rules).

(i) **Netting of Payments**. Section 2(c)(ii) will apply to all transactions, provided, however, that any amount owed by Party A shall not be netted against any termination payment owed to Party A if Party A is the sole Affected Party or the Defaulting Party with respect to an Early Termination Date.

(j)     "**Affiliate**" will have the meaning specified in Section 14 of this Agreement, provided, however, that (i) with respect to Party A, such definition shall be understood to exclude Lehman Brothers Derivative Products Inc. and Lehman Brothers Financial Products Inc. and (ii) with respect to Party B, the Co-Issuer shall be the only Affiliate.

(k)     **Jurisdiction**. Section 13(b) is hereby amended by: (i) deleting in the second line of subparagraph (i) thereof the word "non-"; and (ii) deleting the final paragraph thereof.

(l)     **Set-Off.** Set-Off does not apply to either Party A or Party B.

**Part 5. Other Provisions**

(a)     **Confirmation.** Each Confirmation supplements, forms part of, and will be read and construed as one with the Agreement. A form of Confirmation is set forth as Exhibit A hereto.

(b)     **Representations**. Section 3 is hereby amended by adding the following additional Subsections:

   (i)     **No Agency**. It is entering into this Agreement, each Transaction, and any other documentation relating to this Agreement or any Transaction as principal (and not as agents or in any capacity, fiduciary or otherwise).

   (ii)     **Eligible Contract Participant**. It is an "eligible contract participant" as that term is defined in the Commodity Exchange Act, as amended.

   (iii)     **No Reliance**. It is acting for its own account, and it has made its own independent decisions to enter into that Transaction and as to whether that Transaction is appropriate or proper for it based upon its own judgment and upon advice from such advisers as it has deemed necessary. It is not relying on any communication (written or oral) of the other party as investment advice or as a recommendation to enter into that Transaction; it being understood that information and explanations related to the terms and conditions of a Transaction shall not be considered investment advice or a recommendation to enter into that Transaction. No communications (written or oral) received from the other party shall be deemed to be an assurance or guarantee as to the expected results of that Transaction.

   (iv)     **Assessment and Understanding**. It is capable of assessing the merits of and understanding (on its own behalf or through independent professional advice), and understands and accepts, the terms, conditions and risks of that Transaction. It is also capable of assuming, and assumes, the risks of that Transaction.

   (v)     **Status of Parties.** The other party is not acting as a fiduciary for or an adviser to it in respect of that Transaction.

9

(c) **No Bankruptcy Petition**. Party A irrevocably and unconditionally agrees that it will not, for a period of one year and one day following the payment in full of all the Notes issued pursuant to the Indenture, invoke or cause Party B to invoke the process of any governmental authority for the purpose of commencing or sustaining a case (whether voluntary or involuntary) against Party B under any bankruptcy, reorganization arrangement, insolvency, moratorium, liquidation or similar law or proceeding or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of Party B or any substantial part of its property or ordering the winding-up or liquidation of the affairs of Party B; provided that this provision shall not restrict or prohibit Party A from joining any other person, including, without limitation the Trustee, in any bankruptcy, reorganization, arrangement, insolvency, moratorium or liquidation proceedings already commenced or other analogous proceedings already commenced under applicable laws.

(d) **Transfer**. Section 7 is hereby amended by: (i) adding the words "(which consent may not be unreasonably withheld)" after the words "consent" on the second line thereof, (ii) adding the words "(and notice of the transferee to)" after the word "of" on the third line thereof, and (iii) adding the words "(subject to providing written notice of the transferee to the other party)" after the word "transfer" on the fourth and seventh line thereof. No transfer or assignment by Party A or Party B of its rights and obligations hereunder may be made if such transfer or assignment would have a materially adverse effect on the rights or interests of the Noteholders, unless a Rating Agency Confirmation is received with respect to such transfer. Notwithstanding anything to the contrary in Section 7 of this Agreement, Party A may assign its rights and obligations under this Agreement, in whole and not in part, to any Affiliate of Holdings effective upon delivery to Party B of the guarantee by Holdings, in favor of Party B, of the obligations of such Affiliate such guarantee to be substantially the same as the guarantee of the obligations of the transferor then in effect (in which case the parties will provide notice to the Rating Agencies).

(e) **Amendments to Section 9 of this Agreement.** Section 9(b) of this Agreement is hereby amended by adding the following after the word "system" in the last line thereof:

"; provided, however, notwithstanding anything to the contrary in Section (b) of this Agreement, that no amendment, modification or waiver in respect of this Agreement will be effective if such amendment, modification or waiver would have a materially adverse effect on the rights or interests of the Noteholders, unless the Rating Agencies shall receive prior written notice of all such amendments, modifications or waivers; provided, further, that each such amendment, modification or waiver shall require, prior to its effectiveness, a Rating Agency Confirmation with respect to such amendments, modifications or waivers."

(f) **Definitions.** Reference is made to the 2000 ISDA Definitions (the "ISDA Definitions") published by the International Swaps and Derivatives Association, Inc., which are hereby incorporated by reference. For these purposes, all references in the ISDA Definitions to a "Business Day" shall be deemed references to a Local Business Day

10

under this Agreement. In the event of any inconsistency between the provisions of this Agreement and the ISDA Definitions the provisions of this Agreement shall prevail. Any definitions included or incorporated by reference in a Confirmation shall prevail over the provisions of this Agreement, and the ISDA Definitions, for the purpose of the relevant Transaction.

(g) **Waiver of Trial by Jury**. Insofar as is permitted by law, each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Agreement or any Transaction, and acknowledges that this waiver is a material inducement to the other party's entering into this Agreement and each Transaction hereunder.

(h) **Indenture.** Without providing ten (10) days' prior written notice to Party A and obtaining the prior written consent of Party A, Party B will not enter into any indenture supplemental to the Indenture or any other instrument that would amend, modify or change the Indenture, if such supplemental indenture, amendment, modification or change would, in Party A's reasonable judgment, have a materially adverse effect on the interests of Party A hereunder or under the Indenture. Party B will furnish to Party A a copy of each proposed and each executed supplemental indenture to the Indenture and copies of any related Rating Agency Confirmation in accordance with the terms of the Indenture.

(i) **Limited Recourse**. Notwithstanding anything in this Agreement and any Confirmation hereunder to the contrary, all amounts payable or expressed to be payable by Party B on, under or in respect of its obligations and liabilities under this Agreement and any Confirmation hereunder shall be recoverable only from and to the extent of sums in respect of, or calculated by reference to, the Collateral that are received by Party B pursuant to the terms and conditions thereof and the proceeds of any realization of enforcement of any Collateral, subject in any case to the Priority of Payments set out in the Indenture.  Upon final realization of such sums and proceeds, neither Party A nor any person acting on its behalf shall be entitled to take any further steps against Party B to recover any sums due but still unpaid and all claims in respect of such sums due but still unpaid shall be extinguished. No recourse shall be had for the payment of any amounts owing in respect of this Agreement against any officer, director, employee, stockholder, preference shareholder or incorporator of Party B.

(j) **No Gross Up.** Notwithstanding anything to the contrary in the Agreement, including Section 2(d) of the Master Agreement, no Tax shall be an Indemnifiable Tax with respect to payments made by Party A and therefore Party A shall have no obligation to pay an additional amount otherwise required under Section 2(d)(i)(4) of the Master Agreement.

(k) **Excise Tax Resulting From Change in Law.** All references in Section 2(d) to deduction or withholding for or on account of any Tax shall include the payment of any excise tax, including any excise tax imposed on Party A as a result of a Change in Tax Law, in respect of payments under this Agreement.  For avoidance of doubt, in the event that any excise tax is imposed on Party A as a result of a Change in Tax Law, any

11

payment to which Party B is otherwise entitled under this Agreement shall be reduced by the amount of the excise tax and the excise tax shall not be an Indemnifiable Tax.

"*Change in Tax Law*" means the enactment, promulgation, execution or ratification of, or any change in or amendment to, any law, treaty, rule or regulation (or in the application or interpretation of any law, treaty, rule or regulation whether by official or informal means) that occurs on or after the date on which this Transaction is entered into."

(l) **Notices**. For the purposes of subsections (iii) and (v) of Section 12(a), the date of receipt shall be presumed to be the date sent if sent on a Local Business Day or, if not sent on a Local Business Day, the date of receipt shall be presumed to be the first Local Business Day following the date sent.

(m) **Service of Process**. The penultimate sentence of Section 13(c) shall be amended by adding the following language at the end thereof: "if permitted in the jurisdiction where the proceedings are initiated and in the jurisdiction where service is to be made."

(n) **Accuracy of Specified Information**. Section 3(d) is hereby amended by adding in the third line thereof after the word "respect" and before the period the words "or, in the case of audited or unaudited financial statements or balance sheets, a fair presentation of the financial condition of the relevant person."

(o) **Non-Confidential.** Notwithstanding anything to the contrary contained in this Agreement, all persons may disclose to any and all persons, without limitations of any kind, the U.S. federal, state or local tax treatment of any Transaction, any fact that may be relevant to understanding the U.S. federal, state or local tax treatment of any Transaction, and all materials of any kind (including opinions or other tax analyses) relating to such U.S. federal, state or local tax treatment, other than the name of the parties or any other person named herein, or information that would permit identification of the parties or such other persons, and any pricing terms or other nonpublic business or financial information that is unrelated to the U.S. federal, state or local tax treatment of the Transaction to the taxpayer and is not relevant to understanding the U.S. federal, state or local tax treatment of the Transaction to the taxpayer.

(p) **Additional Representations of Party B.** Party B represents to Party A in accordance with Section 3 of the Agreement (which representations will be deemed to be repeated by Party B at all times until termination of this Agreement) that:

(i) **Approved Credit Swap Counterparty.** Party A is a Credit Swap Counterparty under the Indenture.

(ii) **Secured Party.** Party A is a Secured Party under the Indenture.

(iii) **Constitutional Documents.** Party B is in compliance, in all material respects, with its constitutional documents (including, but not limited to, the Indenture, as amended from time-to-time, and any and all resolutions, investment policies,

12

guidelines, procedures or restrictions), and each Transaction contemplated hereunder is and will be an authorized and permitted transaction thereunder.

(iv) **Third-Party Beneficiary.** Party A shall be an express third-party beneficiary of the Indenture.

(v) **Compliance with Laws.** Party B is in compliance, in all respects, with all applicable laws, rules, regulations, interpretations, guidelines, procedures, and policies of applicable regulatory authorities affecting Party B, this Agreement, the Transactions, or the performance of Party B's obligations hereunder.

(vi) **Arms'-Length Transaction.** Party B acknowledges and agrees that Party A has had and will have no involvement in and, accordingly Party A accepts no responsibility for: (i) the selection of any person performing services for or acting on behalf of Party B; (ii) the selection of Party A as the Credit Default Swap Counterparty; (iii) the terms of the Notes; (iv) the preparation of or passing on the disclosure and other information contained in any offering circular or similar document for the Notes, the Indenture, or any other agreements or documents used by Party B or any other party in connection with the marketing and sale of the Notes; (v) the ongoing operations and administration of Party B, including the furnishing of any information to Party B which is not specifically required under this Agreement; or (vi) any other aspect of Party B's existence.

(q) **No Violation or Conflict Representation**. Section 3(a)(iii) is hereby amended by inserting in the second line thereof after the words "constitutional documents" and before the words ", any order or judgment" the phrase "(including, but not limited to, the Indenture, as amended, and any and all resolutions, investment policies, guidelines, procedures or restrictions)"; provided that such amendment shall be applicable only with respect to the Representations of Party B.

(r) **Severability**. If any term, provision, covenant or condition of this Agreement, or the application thereof to any party or circumstance, shall be held to be invalid or unenforceable (in whole or in part) for any reason, the remaining terms, provisions, covenants and conditions hereof shall continue in full force and effect as if this Agreement had been executed with the invalid or unenforceable portion eliminated, so long as this Agreement as so modified continues to express, without material change, the original intentions of the parties as to the subject matter of this Agreement and the deletion of such portion of this Agreement will not substantially impair the respective benefits or expectations of the parties to this Agreement; provided, however, that this severability provision shall not be applicable if any provision of Section 2, 5, 6 or 13 (or any definition or provision in Section 14 to the extent it relates to, or is used in or connection with any such Section) shall be held to be invalid or unenforceable.

(s) **General Conditions**. Section 2(a)(iii) is hereby amended by (X) inserting in the third line thereof after the words "and is continuing, (2)" and before the words "the condition precedent" the following phrase "the condition precedent that no Additional Termination Event has occurred and is continuing with respect to which the other party

13

        is an Affected Party and with respect to which all outstanding Transactions are Affected Transactions, (3)" and (Y) delete the symbol "(3)" before the words "each other applicable condition" and substitute the symbol "(4)" in lieu thereof.

(t)    **Collateral Requirement**. As of the date of this Agreement, the aggregate of amounts available through the Specific Investment Instrument, the Specific Investment Proceeds Account, the Class A CDS Reserve Account and the undrawn Class A Commitments is sufficient to cover the aggregate notional amount of all synthetic securities for which Party A is the Credit Default Swap Counterparty. For purposes of this Part 5(t), the amounts available through the Specific Investment Instrument, the Specific Investment Proceeds Account and the Class A CDS Reserve Account shall be deemed to be the par value of each account.

The parties executing this Schedule have executed the Master Agreement and have agreed to the contents of this Schedule.

| **LEHMAN BROTHERS SPECIAL FINANCING INC.** | **WHITE MARLIN CDO 2007-1 LTD.** |
|---|---|
| *Party A* | *Party B* |

By: _____    By: _____
Name:                                                     Name:
Title:                                                       Title:

15

The parties executing this Schedule have executed the Master Agreement and have agreed to the contents of this Schedule.

| **LEHMAN BROTHERS SPECIAL FINANCING INC.** *Party A* | **WHITE MARLIN CDO 2007-1 LTD.** *Party B* |
|---|---|
| By: _____ <br> Name: <br> Title: | By: _____*[signature]*_____ <br> Name:  Donald J. Puglisi <br> Title:  Attorney-in-Fact |