EXECUTION COPY

STANDARD TERMS FOR
TRUST AGREEMENTS

between

LEHMAN BROTHERS INC.,
as Depositor

and

U.S. BANK NATIONAL ASSOCIATION,
as Trustee

for

RESTRUCTURED ASSET CERTIFICATES WITH ENHANCED RETURNS,
SERIES A CERTIFICATES

Dated as of November 16, 2006

# TABLE OF CONTENTS

Page

## ARTICLE I DEFINITIONS AND INTERPRETATION

| | | |
|---|---|---|
| Section 1.01. | Definitions. | 2 |
| Section 1.02. | Other Definitional Provisions. | 9 |
| Section 1.03. | Integration of Standard Terms and Series Trust Agreement. | 10 |

## ARTICLE II

### DEPOSIT OF UNDERLYING SECURITIES AND INITIAL AMOUNT; REPRESENTATIONS AND WARRANTIES OF THE DEPOSITOR AND TRUSTEE; CERTIFICATES

| | | |
|---|---|---|
| Section 2.01. | Deposit of Underlying Securities, Initial Amount and Related Matters; Representations and Warranties of the Depositor. | 10 |
| Section 2.02. | Reserved. | 12 |
| Section 2.03. | Acceptance by Trustee; Representations and Warranties of the Trustee. | 12 |
| Section 2.04. | Forms and Denominations of the Certificates. | 13 |
| Section 2.05. | Delivery of Certificates; Destruction of Certificates. | 14 |
| Section 2.06. | Registration of Transfer and Exchange of Certificates. | 14 |
| Section 2.07. | Mutilated, Destroyed, Lost or Stolen Certificates. | 17 |
| Section 2.08. | Persons Deemed Owners of Certificates. | 17 |
| Section 2.09. | Conditions to Initial Execution and Delivery of Certificates. | 18 |
| Section 2.10. | Transfer Restrictions. | 18 |
| Section 2.11. | Additional Certificates. | 20 |
| Section 2.12. | Reserved. | 21 |
| Section 2.13. | Limitation of Powers and Duties. | 21 |

## ARTICLE III

### RIGHTS OF CERTIFICATEHOLDERS; ADMINISTRATION OF TRUST ACCOUNT

| | | |
|---|---|---|
| Section 3.01. | Rights of Certificateholders. | 22 |
| Section 3.02. | Establishment and Maintenance of Trust Account. | 22 |
| Section 3.03. | Collection of Payments on Underlying Securities. | 23 |
| Section 3.04. | Liquidation of the Underlying Securities. | 24 |
| Section 3.05. | Distribution of Payment of Principal, Interest, Dividends and Premium Received on Underlying Securities and Swap Receipt Amount. | 24 |
| Section 3.06. | Office for Distributions, etc.; Manner of Distribution on Certificates; Reports to Certificateholders. | 25 |

i

Section 3.07.    Voting Rights. ................................................................................26
Section 3.08.    Payments of Taxes and Other Governmental Charges; Grant of Security
Interest..........................................................................................27
Section 3.09.    Filing Proofs, Certificates and Other Information. .........................................28
Section 3.10.    Covenant Not to Consent to Certain Underlying Security Matters. ................29
Section 3.11.    Termination of Interest Accrual.........................................................29
Section 3.12.    No Release. ...............................................................................29

## ARTICLE IV

### DELIVERY OR LIQUIDATION OF UNDERLYING SECURITIES UPON REQUEST

Section 4.01.    Partial Unwind of Underlying Securities.........................................................29
Section 4.02.    [RESERVED]. ............................................................................31
Section 4.03.    Manner of Delivering Underlying Securities.................................................31
Section 4.04.    Limitations on Delivery of Underlying Securities...........................................33

## ARTICLE V

### THE TRUSTEE; THE DEPOSITOR AND THE MARKET AGENT

Section 5.01.    No Liability of the Trustee or the Depositor with Respect to the Underlying
Securities; Certificateholder to Proceed Directly Against the Issuers. ............33
Section 5.02.    Maintenance of Offices and Agencies by the Trustee. ....................................34
Section 5.03.    Prevention or Delay in Performance by the Trustee or the Depositor.............34
Section 5.04.    Obligations of the Trustee and the Depositor. ................................................34
Section 5.05.    Eligibility Requirements for Trustee. .............................................................35
Section 5.06.    Resignation and Removal of the Trustee; Appointment of Successor Trustee.36
Section 5.07.    Indemnification by the Depositor of the Trustee; Contribution......................37
Section 5.08.    Charges and Expenses.................................................................................38
Section 5.09.    Agency Not Created.....................................................................................38
Section 5.10.    Market Agent. .............................................................................................38
Section 5.11.    Merger or Consolidation of, or Assumption of the Obligations of, the
Depositor......................................................................................................39
Section 5.12.    Trustee's Fees; Ordinary Expenses; Extraordinary Expenses. .......................40

## ARTICLE VI

### AMENDMENT AND TERMINATION

Section 6.01.    Amendment of Trust Agreement. ..................................................................41
Section 6.02.    Amendment of Other Documents. ................................................................42
Section 6.03.    Dissolution, Winding Up and Termination....................................................43

ii

## ARTICLE VII

## MISCELLANEOUS

Section 7.01.    Counterparts. ...................................................................................................45
Section 7.02.    Exclusive Benefit of Parties and Certificateholders; Effective Date. ..............45
Section 7.03.    Invalidity of Provisions.....................................................................................45
Section 7.04.    Notices. .............................................................................................................46
Section 7.05.    GOVERNING LAW..........................................................................................47
Section 7.06.    Headings. ..........................................................................................................47
Section 7.07.    Annual Statements. ...........................................................................................47
Section 7.08.    Intention of the Parties......................................................................................47
Section 7.09.    Assignment. ......................................................................................................49
Section 7.10.    Further Assurances............................................................................................49
Section 7.11.    No Waiver; Cumulative Remedies. ..................................................................49
Section 7.12.    Actions by Certificateholders. .........................................................................49
Section 7.13.    Merger and Integration. ....................................................................................50
Section 7.14.    Nonpetition Agreement.....................................................................................50
Section 7.15.    No Recourse.......................................................................................................50
Section 7.16.    Distribution of Underlying Securities................................................................51

APPENDICES

Appendix A:   FORM OF OPINION OF DEPOSITOR'S COUNSEL

Appendix B:   FORM OF MARKET AGENT AGREEMENT

Appendix C:   FORM OF CERTIFICATE OF DEPOSITOR

Appendix D:   FORM OF OPINION

Appendix E:   FORM OF SWAP SCHEDULE AND CONFIRMATION

Appendix F:   FORM OF PARTIAL UNWIND AGREEMENT

Appendix G:   FORM OF TRUST CERTIFICATE

STANDARD TERMS FOR TRUST AGREEMENTS

STANDARD TERMS FOR TRUST AGREEMENTS, dated as of November 16, 2006 (the "Standard Terms"), by and between LEHMAN BROTHERS INC., as Depositor, and U.S. BANK NATIONAL ASSOCIATION, as Trustee.

W I T N E S S E T H :

WHEREAS, the Depositor desires to create from time to time one or more Trusts by executing and delivering with respect to each such Trust a Series Trust Agreement by and between the Depositor and the Trustee, which Series Trust Agreement shall incorporate the Standard Terms (as the same may be modified by the terms of the Series Trust Agreement related to such Trust);

WHEREAS, from time to time with respect to the creation of a Trust, the Depositor shall deposit the Initial Amount and/or the Initial Underlying Securities into the Trust;

WHEREAS, the Depositor may, from time to time, deposit or cause to be deposited into or sold to the Trust Additional Underlying Securities on or prior to the related Additional Certificates Closing Date;

WHEREAS, from time to time with respect to the creation of a Trust, the Depositor desires to direct the Trustee, acting on behalf of the Trust pursuant to this Trust Agreement, to enter into one or more Swap Agreements between the Trust and the Swap Counterparty;

WHEREAS, in connection with the creation of the Trust, it is desired to provide for the delivery of certain Certificates evidencing undivided interests in the Trust;

WHEREAS, each of the parties hereto represents that it is duly authorized to enter into this Trust Agreement and that its obligations hereunder are binding and enforceable and not in conflict with its articles of incorporation, bylaws or other organic documents or applicable laws, regulations or agreements by which it is bound and which, in the case of the Trustee, govern its trust powers; and

WHEREAS, in evidence of the acceptance by the Trustee of the trust to be created from time to time by this Trust Agreement, the Trustee has joined in the execution of the Standard Terms and will join in the execution of the Series Trust Agreement with respect to the Trust;

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants expressed herein, it is hereby agreed by and between the Depositor and the Trustee as follows:

# ARTICLE I

## DEFINITIONS AND INTERPRETATION

Section 1.01.     <u>Definitions</u>.

The following definitions shall for all purposes, unless otherwise clearly indicated, apply to the respective terms used in this Trust Agreement:

"<u>Additional Certificates</u>" shall mean any Certificates issued from time to time on any Additional Certificates Closing Date pursuant to the terms of this Trust Agreement.

"<u>Additional Certificates Closing Date</u>" shall mean any date the Trust issues Additional Certificates.

"<u>Additional Termination Event</u>" shall have the meaning specified in the Series Trust Agreement.

"<u>Additional Termination Event Date</u>" shall have the meaning specified in the Series Trust Agreement.

"<u>Additional Underlying Securities</u>" shall mean the additional Underlying Securities deposited with the Trustee on or prior to any related Additional Certificates Closing Date.

"<u>Affiliate</u>" shall mean, in relation to any Person, any entity controlled, directly or indirectly, by the Person, any entity that controls, directly or indirectly, the Person or any entity directly or indirectly under common control with the Person.  For this purpose, "control" of any entity or Person means ownership of a majority of the voting power of the entity or Person.

"<u>Applicable Grace Period</u>" shall mean (i) with respect to the payment of interest on any Certificate Distribution Date occurring on or prior to the Final Scheduled Distribution Date, (x) any applicable grace period specified under the terms of the Swap Agreement with respect to Swap Receipt Amounts, if any, or (y) the applicable grace period specified under the terms of the Underlying Securities, as applicable; and (ii) with respect to the payment of principal on the Final Scheduled Distribution Date, the applicable grace period specified under the terms of the Underlying Securities.

"<u>Authorized Denominations</u>" shall mean the Minimum Authorized Denomination specified in the Series Trust Agreement in which Certificates may be issued, and integral multiples thereof (except that a single Certificate may be delivered in an amount that is greater than the Minimum Authorized Denomination and that is not an integral multiple thereof).

"<u>Beneficial Owner</u>" shall mean, with respect to Certificates held through a Depository, the beneficial owner of a Certificate.  For purposes only of Section 7.12, the Trustee shall treat a Person who claims to be a beneficial owner of a Certificate as a "Beneficial Owner" within the meaning of the Series Trust Agreement only if such Person has first delivered to the

2

Trustee, (i) a certificate or other writing executed by such Person stating the full name and address of such Person, the Certificate Principal Amount of the Certificate with respect to which such Person claims to be the Beneficial Owner, and the participant in the Depository ("such Person's Participant") through which such Person holds its beneficial ownership interest in the Certificates and (ii) a certificate or other writing executed by such Person's Participant confirming that such Person's Participant holds on its own books and records Certificates for the account of such Beneficial Owner and identifying the Certificate Principal Amount held for such Beneficial Owner.

"Business Day" shall mean any day, other than a Saturday and Sunday, that is neither a legal holiday nor a day on which banking institutions in New York, New York or the place of payment in respect of the Underlying Securities are authorized or required by law or regulation to be closed.

"Calculation Agent" shall have the meaning specified in the Series Trust Agreement.

"Certificate" shall mean a Certificate in definitive, fully registered form executed by the Trustee, in accordance with Section 2.04 hereof, substantially in the form provided in the Series Trust Agreement.

"Certificate Distribution Date" shall mean such dates as are specified in the Series Trust Agreement and the Final Scheduled Distribution Date, subject to Section 3.05(a) herein.

"Certificate Principal Amount" shall mean, with respect to an outstanding Certificate, as determined at any time, the maximum amount that the Holder thereof is entitled to receive as distributions allocable to principal payments on the Underlying Securities. The Certificate Principal Amount, if any, of any class within a given series (other than those classes, if any, specified in the related Series Trust Agreement), as of any date of determination, shall be equal to the aggregate initial Certificate Principal Amount thereof less the sum of (i) all amounts allocable to prior distributions made to such class in respect to principal of the Underlying Securities, (ii) any reductions attributable to Certificates surrendered in exchange for Underlying Securities, as and to the extent provided in the applicable Series Trust Agreement and (iii) any reductions in the Certificate Principal Amount thereof deemed to have occurred in connection with allocations of expenses of the Trust, if any, only to the extent specified in the applicable Series Trust Agreement, each as allocated to such class pursuant to such Series Trust Agreement.

"Certificate Register" shall have the meaning specified therefor in subsection 2.06(b) hereof.

"Certificateholder" or "Holder" shall mean the Person in whose name a Certificate is registered in the Certificate Register, and may include the Trustee, the Depositor, the Swap Counterparty and the Swap Guarantor, if any.

"Clearing Agency" shall mean, unless otherwise specified in the Series Trust Agreement, an organization registered as a "clearing agency" pursuant to Section 17A of the Exchange Act.

3

"Closing Date" shall mean the date specified in the Series Trust Agreement on which initial execution and delivery of the Certificates is scheduled to occur.

"Code" means the Internal Revenue Code of 1986, as amended.

"Corporate Trust Office" shall mean the office of the Trustee specified for purposes of this Trust Agreement, which office at the date of execution of this Trust Agreement (unless otherwise specified in the Series Trust Agreement) is located at the address specified in subsection 7.04(b).

"Definitive Certificate" shall have the meaning set forth in subsection 2.06(e) hereof.

"Depositor" shall mean Lehman Brothers Inc., and its respective successors and assigns.

"Depository" shall mean, with respect to Certificates issuable in whole or in part in the form of one or more Global Certificates, a Clearing Agency that is designated to act as Depository for such Global Certificates as contemplated by Section 2.06 hereof.

"Eligible Investments" shall have the meaning set forth in the Series Trust Agreement.

"ERISA" means the Employee Retirement Income Security Act of 1974, as amended.

"Exchange Act" shall mean the Securities Exchange Act of 1934, as amended.

"Extraordinary Expenses" shall mean any and all costs, expenses or liabilities arising out of the establishment, existence or administration of the Trust, other than (i) Ordinary Expenses, (ii) Necessary Third Party Expenses and (iii) costs and expenses payable by a particular Certificateholder, the Trustee or the Depositor pursuant to this Trust Agreement.

"Final Scheduled Distribution Date" shall have the meaning set forth in the Series Trust Agreement.

"Fitch" shall mean Fitch Ratings and any successors thereto.

"Global Certificate" shall mean a Certificate that (i) evidences all or part of the Certificate, (ii) the beneficial ownership of which is evidenced by book entries on the ledger or accounts of the Depository where such Certificate is held and (iii) bears the legend set forth in Section 2.04 (or such legend as may be specified in the Series Trust Agreement as contemplated by Section 2.04 for such Certificates).

"Initial Accrued Interest" shall mean, with respect to each Underlying Security, the amount of interest, if any, which accrued thereon from the Underlying Security Payment Date of such Underlying Security next preceding the deposit of such Underlying Security hereunder (or, in the event that such Underlying Security Payment Date is the first Underlying

4

Security Payment Date to occur after the original issuance of such Underlying Security, from the issue date thereof) to, but excluding, the Closing Date.

"Initial Amount" shall have the meaning set forth in the Series Trust Agreement.

"Initial Underlying Securities" shall mean the issue or issues, series and maturity or maturities of debt securities or other instruments or obligations described in Appendix A to the Series Trust Agreement and issued by the Issuer or Issuers identified in such Appendix A.

"Interest Distribution Amount" shall mean, with respect to a Certificate Distribution Date and an Underlying Security, unless otherwise specified in the Series Trust Agreement, (a) the portion of the interest received by the Trust on such Underlying Security on the Underlying Security Payment Date immediately preceding or on such Certificate Distribution Date plus (b) the Swap Receipt Amount, if any, minus (c) the Swap Distribution Amount, if any, which in each case shall be distributable to the Certificateholders as specified in the Series Trust Agreement.

"Investment Company Act" shall mean the Investment Company Act of 1940, as amended.

"Investor Letter" shall have the meaning set forth in subsection 2.10(b) hereof.

"Issuer" shall mean, with respect to an Underlying Security, the issuer thereof (including, if applicable, the guarantor of the Underlying Security) as identified in Appendix A to the Series Trust Agreement.

"Liquidation Proceeds" shall mean the proceeds received by the Trust from the Market Agent upon the liquidation of the Underlying Securities pursuant to Section 3.04 hereof.

"Market Agent" shall mean the market agent or market agents appointed pursuant to Section 5.10 hereof, and its or their successors or assigns.

"Market Agent Agreement" shall mean the Market Agent Agreement, dated as of the Closing Date, between the Trust and the Market Agent, the form of which is attached hereto as Appendix B, and any similar agreement with a successor Market Agent, in each case as from time to time amended or supplemented.

"Minimum Authorized Denomination" shall have the meaning set forth in the Series Trust Agreement.

"Minimum Rating" shall have the meaning specified in the Series Trust Agreement.

"Minimum Wire Denomination" shall have the meaning specified in the Series Trust Agreement, and if not so specified, shall have the same meaning as "Minimum Authorized Denomination."

"Moody's" shall mean Moody's Investors Service, Inc. and any successors thereto.

"Necessary Third Party Expenses" shall mean the reasonable and customary costs and expenses of the Trust's or Trustee's counsel, accountants and other experts for ordinary or routine consultation or advice in connection with the establishment, administration and termination of the Trust and the preparation of tax returns of the Trust (it being understood that if an audit is performed by the Trust's or Trustee's accountants, the costs and expenses associated with such audit shall be deemed to be Extraordinary Expenses, *provided* that no audit shall be undertaken without the prior written consent of the Depositor and the payment of such expenses shall be subject to Section 5.12); *provided,* that all such costs and expenses shall be billed when incurred by the Trust or the Trustee and shall be paid by the Depositor and not from the Trust Property.

"Notional Amount" shall mean, as of any date of calculation, the aggregate Notional Amounts in respect of the Swap Counterparty for such date set forth in the Swap Agreement, as adjusted from time to time in accordance with the terms of such Swap Agreement; provided, however, such Notional Amount shall at all times equal the aggregate principal balance of the Certificates.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel for the Trust, the Trustee or the Depositor.

"Optional Redemption" shall have the meaning specified in the Series Trust Agreement

"Optional Termination Amount" shall mean, in connection with the execution of the Partial Unwind Agreement, the principal amount of Underlying Securities evidenced by a Certificateholder's Certificate with respect to which such agreement is related.

"Ordinary Expenses" shall mean the Trustee's fees and expenses for its services as Trustee relating to:  (i) the costs and expenses of preparing, sending or receiving various reports, statements, notices, and filings with respect to tax matters affecting the Trust; and (ii) any custodial fees or other fees and expenses associated with holding the Underlying Securities; provided, that, any costs and expenses associated with (a) Underlying Securities consisting of securities issued by more than one issuer, or (b) Underlying Securities held through a foreign clearing system, in each such case shall be agreed to by the Depositor and the Trustee on or prior to the Closing Date and shall be included in the Trustee Fee.

"Partial Unwind Agreement" shall mean an agreement between a Certificateholder and the Swap Counterparty, and subject to countersignature by the Trustee on behalf of the trust, the form of which is attached hereto as Appendix F.

"Partial Unwind Amount" shall mean the dollar amount (which shall be at least $5,000,000) specified in the related Partial Unwind Agreement, which dollar amount corresponds to the principal amount of the Certificates to be delivered to the Trustee.

"Partial Unwind Date" shall have the meaning set forth in Section 4.01 hereof.

6

"<u>Person</u>" shall mean an individual, a partnership, a corporation, a limited liability company, a business trust or other entity.  The term "corporation" for the purposes of the preceding sentence shall mean a corporation, joint stock company, business trust or other similar association.

"<u>Plan</u>" shall have the meaning set forth in subsection 2.10(b)(ii) hereof.

"<u>Prime</u>" means the prime rate of interest charged by the Trustee in its individual capacity for bank loans.

"<u>Principal Distribution Amount</u>" shall mean, unless specified in the Series Trust Agreement, with respect to a Certificate Distribution Date amounts received by the Trust in respect of principal or premium, if any, on the Underlying Securities which shall be distributable to the Certificateholders as specified in the Series Trust Agreement.

"<u>Qualified Institutional Buyer</u>" shall mean a "qualified institutional buyer," as defined in Rule 144A under the Securities Act.

"<u>Rating Agency</u>" shall have the meaning specified in the Series Trust Agreement.

"<u>Record Date</u>" shall have the meaning specified in the Series Trust Agreement.

"<u>Registrar</u>" shall have the meaning set forth in Section 2.06(b) hereof.

"<u>Responsible Officer</u>" shall mean, when used with respect to the Trustee, any officer in its corporate trust department with direct responsibility for the administration of this Trust Agreement.

"<u>Rule 144A</u>" shall mean Rule 144A under the Securities Act.

"<u>Sale Procedures</u>" shall mean, in connection with any sale of the Underlying Securities, the Market Agent will, on behalf of the Trust, sell such Underlying Securities to the highest of not less than three solicited bidders for such Underlying Securities, which bidders will not include Lehman Brothers Inc., the Trustee, the Swap Counterparty, or any of their respective affiliates ("<u>Parties to the Trust</u>"); *provided*, *however*, that at least three of the solicited bidders will be financial institutions which (a) are independent of each of the Parties to the Trust, (b) are "qualified institutional buyers" within the meaning of Rule 144A under the Securities Act and (c) deal in assets of the same type as the Underlying Securities.  In the sole judgment of the Market Agent, bids may be evaluated on the basis of bids for all or a portion of the Underlying Securities being sold or valued or any other basis selected in good faith by the Market Agent.

"<u>S&P</u>" shall mean Standard & Poor's, a division of The McGraw-Hill Companies, Inc. and any successor thereto.

"<u>Scheduled Underlying Security Payment Date</u>" shall mean, with respect to an Underlying Security, each date specified in Appendix A to the Series Trust Agreement as a date on which interest, principal and/or redemption premium is scheduled, as of the Closing Date, to

USActive 5720089.8

be payable by or on behalf of the Issuer on such Underlying Security in accordance with its terms.

"Secretary of State" means the Secretary of State of the State of New York.

"Securities Act" shall mean the Securities Act of 1933, as amended.

"Series Trust Agreement" shall mean the Series Trust Agreement by and between the Depositor and the Trustee creating the Trust.

"Swap Agreement" shall, unless otherwise specified in the Series Trust Agreement, mean each ISDA Master Agreement dated as of the Closing Date by and between the Trust and a Swap Counterparty, the form of the Schedule to which is attached hereto as Appendix E, as the same may be amended or supplemented by Confirmations from time to time as provided herein and therein.

"Swap Counterparty" shall be each entity specified as such in the Series Trust Agreement, and any permitted assignee or transferee, and any successor thereto.

"Swap Distribution Amount" shall mean all amounts then due and owing to the Swap Counterparty pursuant to the Swap Agreements, other than Swap Termination Payments.

"Swap Guarantee" shall mean, unless otherwise specified in the Series Trust Agreement, the Guarantee issued by the Swap Guarantor in favor of the Trust substantially in the form attached as Exhibit D to the Swap Agreement.

"Swap Guarantor" shall, if applicable, be specified in the Series Trust Agreement, and any permitted assignee or transferee, and any successor thereto.

"Swap Receipt Amount" shall mean all amounts then due and owing to the Trust pursuant to the Swap Agreement, other than Swap Termination Payments.

"Swap Termination Payment" means any amounts payable by a Swap Counterparty to the Trust, or by the Trust to a Swap Counterparty, pursuant to Section 6(e) of a Swap Agreement.

"Transferred Assets" shall have the meaning set forth in Section 7.08.

"Trust" shall mean the trust established with the Trustee by this Trust Agreement.

"Trust Account" shall mean the account established by the Trustee with respect to the Underlying Securities pursuant to Section 3.02.

"Trust Agreement" shall mean, collectively, the Series Trust Agreement with respect to the Trust and the Standard Terms (as incorporated into, and modified by, such Series Trust Agreement), as the same may be amended or supplemented from time to time as provided herein.

"Trustee" shall mean U.S. Bank National Association, and any successor as Trustee hereunder, not in its individual capacity, but solely as Trustee.

"Trustee Fee" shall have the meaning specified in the Series Trust Agreement.

"Trust Property" shall mean, unless otherwise specified in the Series Trust, the principal assets of the Trust, which include (i) the ownership interest in, and the right to receive interest and principal payments on, the Underlying Securities and (ii) the rights of the Trust under the Swap Agreement (which rights will be subject to the Trust's obligations to the Swap Counterparty under such Swap Agreement).

"Underlying Securities Default" shall mean, with respect to the Underlying Securities described in Appendix A to the Series Trust Agreement, unless otherwise specified in the Series Trust Agreement, the occurrence or existence of an event of default in respect of the Underlying Securities which arises out of, and is related to, the occurrence of an event of bankruptcy, insolvency, receivership, or similar event with respect to the issuer of such Underlying Securities.

"Underlying Security" or "Underlying Securities" shall mean, collectively, the Initial Underlying Securities and the Additional Underlying Securities.

"Underlying Security Payment Date" shall mean any date on which amounts are received in respect of interest, cash dividends or principal on the Underlying Securities.

"United States Person" means (i) a citizen or resident of the United States or any State thereof, (ii) a corporation, partnership or other business entity created or organized in or under the laws of the United States or any State thereof (including the District of Columbia), (iii) an estate the income of which is subject to United States federal income taxation regardless of its source, or (iv) a trust if a court within the United States is able to exercise primary supervision over its administration, and one or more United States persons have the authority to control all of its substantial decisions, all for U.S. federal income tax purposes.

"Voting Rights" shall have the meaning set forth in Section 3.07(a) hereof.

Section 1.02.        Other Definitional Provisions.

(a) All references herein to "this Trust Agreement," and to "Articles," "Sections" and other subdivisions hereof are to the corresponding Articles, Sections or subdivisions of the Series Trust Agreement and the Standard Terms, as incorporated into and modified by the Series Trust Agreement; and the words "herein," "hereof," "hereunder" and other words of similar import refer to the Series Trust Agreement and the Standard Terms, as incorporated into and modified by the Series Trust Agreement, as a whole and not to any particular Article, Section or subdivision of the Series Trust Agreement or the Standard Terms.

(b) The headings or titles of the several Articles and Sections hereof, and any table of contents appended to copies hereof, shall be solely for convenience of reference and shall not affect the meaning, construction or effect of this Trust Agreement.

9

(c) All terms defined in this Trust Agreement shall have the defined meaning when used in any certificate or other documents made or delivered pursuant hereto unless otherwise defined therein.

(d) As used herein, and in any certificate or other document made or delivered pursuant hereto or thereto, accounting terms not defined in Section 1.01 or the Series Trust Agreement, and accounting terms partly defined in Section 1.01 or the Series Trust Agreement to the extent not defined, shall have the respective meanings given to them under generally accepted accounting principles in effect on the date hereof. To the extent that the definitions of accounting terms are inconsistent with the meanings of such terms under generally accepted accounting principles, the definitions contained herein shall control.

Section 1.03.    Integration of Standard Terms and Series Trust Agreement.

The Standard Terms shall not be effective with respect to any Underlying Security or Certificate (or otherwise) unless the Depositor and the Trustee shall have each executed and delivered the Series Trust Agreement related to such Underlying Security or Certificate, it being the intent of the parties that the execution and delivery of the Standard Terms shall be solely for the purpose of establishing the provisions that may be incorporated from time to time with respect to a Trust, as such provisions may be modified by the Series Trust Agreement executed and delivered in respect of such Trust.

# ARTICLE II

## DEPOSIT OF UNDERLYING SECURITIES AND INITIAL AMOUNT; REPRESENTATIONS AND WARRANTIES OF THE DEPOSITOR AND TRUSTEE; CERTIFICATES

Section 2.01.    Deposit of Underlying Securities, Initial Amount and Related Matters; Representations and Warranties of the Depositor.

(a) In connection with the execution and delivery of the Series Trust Agreement, the Depositor either (i) hereby assigns or causes to be assigned the Initial Underlying Securities identified in Appendix A to the Series Trust Agreement with the Trustee for the benefit of the Certificateholders and the Swap Counterparty, if applicable, and hereby sells, transfers and assigns to the Trustee for the benefit of such Certificateholders and the Swap Counterparty, if applicable, without recourse, all of its right, title and interest existing as of the Closing Date in and to such Underlying Securities, all moneys due and to become due with respect thereto and all proceeds thereof, excluding, however, Initial Accrued Interest with respect to each such Initial Underlying Security, and/or (ii) hereby deposits the Initial Amount in immediately available funds with the Trustee which shall be used by the Trustee, on behalf of the Trust, to acquire the Underlying Securities as specified in the Series Trust Agreement.

(b) In connection with such deposit, the Depositor has, on or prior to the Closing Date, either (i) delivered the applicable Underlying Securities to the Trustee, together with all necessary endorsements and guaranties of signature satisfactory to the Trustee, respectively, or (ii) delivered such Underlying Securities to a Clearing Agency, in which event (A) the Trustee

10

has accepted delivery of such Underlying Securities through such Clearing Agency, and (B) such Underlying Securities have been credited to a trust account of the Trustee or its authorized agent and the Trustee shall have the right to hold and maintain such Underlying Securities on deposit with such Clearing Agency for all purposes of this Trust Agreement.

(c) In the case of the delivery of Underlying Securities to the Trustee, in accordance with Section 2.01(a) hereof, the Depositor shall be deemed thereby to represent and warrant to the Trustee that:

(i)      the Depositor is duly authorized to so deliver such Underlying Securities;

(ii)     the Underlying Securities so delivered are genuine;

(iii)    the Depositor has no knowledge of any lien, pledge, encumbrance, right, charge, or other security interest on the Underlying Securities and that at the time of delivery thereof such Underlying Securities are free and clear of any lien, pledge, encumbrance, right, charge, claim in favor of the Depositor or other security interest;

(iv)     such delivery is irrevocable and free of any continuing claim by the Depositor except such as the Depositor may have as a Certificateholder;

(v)      the Depositor is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware;

(vi)     the execution and delivery of the Trust Agreement by the Depositor and its performance of and compliance with the terms thereof will not violate the Depositor's certificate of incorporation or by-laws, or constitute a default (or an event which, with notice or lapse of time, or both, would constitute a default) under, or result in the breach or acceleration of, any material contract, agreement or other instrument to which the Depositor is a party or by which the Depositor or any of its assets is bound; and

(vii)    the Depositor has the full power and authority to enter into and consummate all transactions contemplated by the Trust Agreement, has duly authorized the execution, delivery and performance of the Trust Agreement and has duly executed and delivered the Trust Agreement.  The Trust Agreement, upon its execution and delivery by the Depositor and assuming due authorization, execution and delivery by the Trustee, will constitute a valid, legal and binding obligation of the Depositor, enforceable against it in accordance with the terms thereof, except as such enforcement may be limited by bankruptcy, insolvency, reorganization, receivership, moratorium or other laws relating to or affecting the rights of creditors generally, and by general equity principles (regardless of whether such enforcement is considered in a proceeding in equity or at law).

The Depositor shall further be deemed by such delivery to have made the representations that, to the best of its knowledge, no default or event of default with respect to

11

any of the Underlying Securities has occurred and is continuing. Such representations and warranties shall survive the delivery of such Underlying Securities and the Certificates in respect thereof.

In the case of each delivery of an Initial Amount to the Trustee, the Depositor shall be deemed thereby to represent and warrant to the Trustee to the terms of paragraphs (c)(v), (vi) and (vii) above.

Section 2.02.    <u>Reserved</u>.

Section 2.03.    <u>Acceptance by Trustee; Representations and Warranties of the Trustee</u>.

The Trustee hereby undertakes to perform its obligations set forth herein. The Trustee hereby declares that it will hold and maintain all Underlying Securities delivered to it pursuant to subsection 2.01(b) in the Trust Account, in trust for the benefit of the Certificateholders. In the case of each receipt of Underlying Securities or an Initial Amount by the Trustee, the Trustee shall be deemed thereby to represent and warrant to the Depositor that:

(i)    the Trustee is duly organized, validly existing and in good standing under the laws of its jurisdiction of incorporation or association;

(ii)    the Trustee has full power, authority and right to execute, deliver and perform its duties and obligations under the Trust Agreement, and has taken all necessary action to authorize the execution, delivery and performance by it of the Trust Agreement;

(iii)    the execution and delivery of the Trust Agreement by the Trustee and its performance of and compliance with the terms of the Trust Agreement will not violate the Trustee's certificate of incorporation, association or other constituent documents or by-laws or constitute a default under, or result in the breach or acceleration of, any material contract, material agreement or other material instrument to which the Trustee is a party or which may be applicable to the Trustee or any of its assets;

(iv)    as of the Closing Date, the Trust Agreement has been duly executed and delivered by the Trustee and, assuming due authorization, execution and delivery by the other parties hereto, constitutes the legal, valid and binding obligation of the Trustee, enforceable in accordance with its terms, except as enforcement may be limited by the applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the rights of creditors generally and general principles of equity;

(v)    the Trustee is not in violation, and the execution and delivery of the Trust Agreement by the Trustee and its performance and compliance with the terms thereof will not constitute a violation, of any order or decree of any court or any order or regulation of any federal, state, municipal or governmental agency having jurisdiction over the Trustee or its properties, which violation would

reasonably be expected to have a material adverse effect on the condition (financial or otherwise) or operations of the Trustee or its properties or on the performance of its duties hereunder;

(vi)    there are no actions or proceedings against, or investigations of, the Trustee pending, or, to the knowledge of the Trustee, threatened, before any court, administrative agency or other tribunal (A) that could reasonably be expected to prohibit its entering into the Trust Agreement, (B) seeking to prevent the issuance of the Certificates contemplated by the Trust Agreement or (C) that could reasonably affect the performance by the Trustee of its obligations under, or the validity or enforceability against the Trustee of, the Trust Agreement; and

(vii)    no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by the Trustee of, or compliance by the Trustee with, the Trust Agreement, or for the consummation of the transactions contemplated by the Trust Agreement, except for such consents, approvals, authorizations and orders, if any, that have been obtained prior to the Closing Date.

The representations and warranties of the Trustee set forth in this Section 2.03 shall survive the receipt of the Underlying Securities by the Trustee and shall survive the delivery of the Trust Agreement by the Trustee to the Depositor.

Section 2.04.    <u>Forms and Denominations of the Certificates</u>.

Each series of Certificates (in either global or physical form, as the case may be) shall be issued in one or more classes of Certificates in fully registered form, as specified in the related Series Trust Agreement.  Certificates shall be substantially in one of the form(s) set forth in Appendix G hereto.  The Depositor shall provide the Trustee with Certificates for inspection and execution and shall pay all costs and expenses related thereto.  Each Certificate shall be executed on behalf of the Trust by the Trustee, not in its individual capacity, but solely as Trustee, by one of its authorized signatories.  The signature of any of these officers on each Certificate shall be manual.

Any Certificate bearing the manual signature of an individual who was the proper officer of the Trustee at the time of execution of such Certificate shall not become invalid, notwithstanding that such individual has ceased to hold such office prior to the delivery of such Certificate or did not hold such office at the date of such Certificate.

No Certificate shall be entitled to any benefit under this Agreement or be valid or obligatory for any purpose unless such Certificate shall have been executed on behalf of the Trust by the Trustee, not in its individual capacity, but solely as Trustee, by one of its authorized signatories, and such signature upon any Certificate shall be conclusive evidence, and the only evidence, that such Certificate has been delivered hereunder and is entitled to the benefits of this Trust Agreement.  All Certificates shall be dated the date of their execution, except that the Certificates initially issued by a Trust shall be dated the Closing Date.

The Certificates shall be issued only in Authorized Denominations.

13

Certificates may be endorsed with or have incorporated in the text thereof such legends or recitals not inconsistent with the provisions of this Trust Agreement as may be required by the Trustee or the Depository or required to comply with any applicable law or regulation. The Depositor shall furnish the Trustee with all information necessary for the completion of any legend required, in the opinion of counsel to the Depositor, to maintain or preserve the exemption from registration under the Securities Act of any offering of Certificates. The Depositor shall perform or cause to be performed any information reporting to the Internal Revenue Service which may be required in connection with the delivery of the Certificates.

Unless otherwise specified as contemplated by this Section 2.04 for the Certificates evidenced thereby, in addition to any other legend relating to transfer restrictions, every Global Certificate delivered hereunder shall bear a legend in substantially the following form:

THIS CERTIFICATE IS A GLOBAL CERTIFICATE WITHIN THE MEANING OF THE TRUST AGREEMENT HEREINAFTER REFERRED TO AND IS REGISTERED IN THE NAME OF A DEPOSITORY OR A NOMINEE THEREOF. THIS CERTIFICATE MAY NOT BE EXCHANGED IN WHOLE OR IN PART FOR A CERTIFICATE REGISTERED, AND NO TRANSFER OF THIS CERTIFICATE IN WHOLE OR IN PART MAY BE REGISTERED, IN THE NAME OF ANY PERSON OTHER THAN SUCH DEPOSITORY OR A NOMINEE THEREOF, EXCEPT IN THE LIMITED CIRCUMSTANCES DESCRIBED IN THE TRUST AGREEMENT.

Section 2.05.        Delivery of Certificates; Destruction of Certificates.

(a) Contemporaneously with the transfer and delivery of the Underlying Securities to the Trustee pursuant to Section 2.01 and subject to satisfaction of the conditions of Section 2.09, the Trustee shall on the Closing Date execute and deliver the Certificates on behalf of the Trust upon the order of the Depositor.

(b) A reasonable time prior to the delivery of Underlying Securities to the Trustee, the Depositor shall furnish the Trustee with written instructions as to the names and addresses in which the Certificates evidencing such Underlying Securities shall initially be registered, the Authorized Denominations in which such Certificates shall initially be delivered, the Closing Date, and such other information (including taxpayer identification number and facsimile number) as may be requested by the Trustee in connection with the preparation and delivery of such Certificates.

(c) All Certificates surrendered to the Trustee shall be canceled by the Trustee. The Trustee is authorized to destroy Certificates so canceled.

Section 2.06.        Registration of Transfer and Exchange of Certificates.

(a) The Trust will maintain in the Borough of Manhattan, The City of New York, an office or offices or agency or agencies where Certificates may be surrendered for registration of transfer or exchange. All transfers of Certificates are subject to the restrictions set forth in Section 2.10 hereof.

14

(b) The Trust shall keep or cause to be kept a register for such Certificates (herein called a "Certificate Register") at the office or agency of the Trust to be maintained in accordance with the provisions of subsection 2.06(a) in which, subject to such reasonable regulations as it may prescribe, the Trust shall provide for the registration of such Certificates and of transfers of such Certificates. The Certificate Register shall be in written form or capable of being converted into written form within a reasonable time. The Trustee is hereby appointed the registrar (in such capacity, the "Registrar") for purposes of registering the Certificates and transfers of the Certificates as herein provided.

Upon surrender for registration of transfer of any Certificate at the office or agency to be maintained in accordance with the provisions of subsection 2.06(a) and upon satisfaction of the conditions of Section 2.10, the Trustee shall execute, in the name of the designated transferee or transferees, one or more Certificates representing the same aggregate denomination and bearing a number not contemporaneously outstanding.

At the option of the Certificateholder, Certificates may be exchanged for other Certificates representing the same aggregate denomination and bearing a number not contemporaneously outstanding upon surrender of the Certificates to be exchanged at the office of the Trust to be maintained in accordance with the provisions of subsection 2.06(a). Whenever any Certificates are so surrendered for exchange, the Trustee shall execute, on behalf of the Trust, the Certificates which the Certificateholder making the exchange is entitled to receive.

The Trustee shall not be required to register the transfer of or exchange any Certificate if it shall have received notice of redemption in whole of all the Underlying Securities underlying such Certificate.

Every Certificate presented or surrendered for registration of transfer or for exchange shall be duly endorsed, or be accompanied by a written instrument or instruments of transfer in form satisfactory to the Trustee duly executed by the Certificateholder thereof or by the duly authorized legal representative of such Certificateholder or by an attorney for such Certificateholder duly authorized in writing, such signature to be guaranteed by an "eligible guarantor institution" meeting the requirements of the Trustee, which requirements include membership or participation in the Security Transfer Agent Medallion Program ("STAMP") or such other "signature guarantee program" as may be determined by the Trustee in addition to, or in substitution for, STAMP, all in accordance with the Exchange Act.

No service charge shall be made for any registration of transfer or exchange of Certificates, but the Trustee may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any registration of transfer or exchange of Certificates.

(c) The surrender for registration of transfer or exchange of outstanding Certificates or the withdrawal of any Underlying Securities evidenced by Certificates may be suspended if any such suspension is deemed necessary or advisable by the Trustee at any time or from time to time because of any requirement of law or of any government or governmental body or commission, or under any provision of this Trust Agreement.

15

(d)    The provisions of paragraphs (i), (ii), (iii) and (iv) below shall apply only to Global Certificates:

(i)    Each Global Certificate delivered under the Series Trust Agreement shall be registered in the name of the Depository designated for such Global Certificate or a nominee thereof and delivered to such Depository or a nominee thereof or custodian therefor, and each such Global Certificate shall constitute a single Certificate for all purposes of the Series Trust Agreement.

(ii)    Notwithstanding any other provision in the Trust Agreement, no Global Certificate may be exchanged in whole or in part for Certificates registered, and no transfer of a Global Certificate in whole or in part may be registered, in the name of any Person other than the Depository for such Global Certificate or a nominee thereof unless (A) such Depository (i) has notified the Trustee that it is unwilling or unable to continue as Depository for such Global Certificate or (ii) has ceased to be a Clearing Agency, or (B) there shall exist such circumstances, if any, in addition to or in lieu of the foregoing as have been specified for this purpose in the Series Trust Agreement.

(iii)    Subject to paragraph (ii) above, any exchange of a Global Certificate for other Certificates may be made in whole or in part, and all Certificates issued in exchange for a Global Certificate or any portion thereof shall be registered in such names, as the Depository for such Global Certificate shall direct.

(iv)    Every Certificate delivered upon registration of transfer of, or in exchange for or in lieu of, a Global Certificate or any portion thereof, whether pursuant to this Section or otherwise, shall be delivered in the form of, and shall be, a Global Certificate, unless such Certificate is registered in the name of a Person other than the Depository for such Global Certificate or a nominee thereof.

If (i) the Depository shall notify a Responsible Officer of the Trustee that it is unwilling or unable to continue as depository for the Global Certificates or the Depository shall notify a Responsible Officer of the Trustee that it has ceased to be a Clearing Agency and, in each case, a successor depository so registered is not appointed by the Trustee within 90 days of any such notice or (ii) if specified in the related Series Trust Agreement, a Beneficial Owner of a Global Certificate of a particular Class shall notify a Responsible Officer of the Trustee in writing that it wishes to exchange all or part of its beneficial interest in such Global Certificate to a definitive, fully registered Certificate (a "Definitive Certificate") registered in the name of such Beneficial Owner or its nominee, then, upon receipt by the Trustee of any such notice under clauses (i) and (ii) above, the Trustee shall instruct the Depository to endorse the Global Certificate to reflect a reduction of the aggregate principal amount thereof by the aggregate principal amount of the beneficial interest thereof to be exchanged and, concurrently with such reduction, the Trustee shall execute and deliver to such Beneficial Owner (at the address specified in the order received by the Trustee) a registered Definitive Certificate in an aggregate principal amount equal to the amount of the reduction of the Global Certificate. Definitive Certificates may be exchanged for another Definitive Certificate or registered for transfer only in

16

accordance with such procedures as are substantially consistent with the provisions of Section 2.06 and as may be from time to time adopted by the Trust and the Trustee.

Any time that the Certificates are to be issued in the form of Definitive Certificates, the Depositor agrees to supply the Trustee with a reasonable supply of Definitive Certificates and the Trustee agrees to hold such Definitive Certificates in safekeeping until executed and delivered pursuant to the terms of this Agreement.

Unless otherwise specified in the related Series Trust Agreement, neither the Registrar nor the Trustee shall be required to issue, register the transfer of or exchange any Definitive Certificate during a period of 15 days preceding the due date of any expected distribution on the Certificates.

Section 2.07.    <u>Mutilated, Destroyed, Lost or Stolen Certificates</u>.

If any mutilated Certificate is surrendered to the Trustee, the Trustee shall execute and deliver on behalf of the Trust in exchange therefor a new Certificate or new Certificates, as the case may be, representing a like aggregate denomination of Certificates and bearing a number not contemporaneously outstanding.

If there shall be delivered to the Trustee (i) evidence to its satisfaction of the destruction, loss or theft of any Certificate and (ii) such security or indemnity as may be required by the Trustee to save the Trust, the Trustee and any agent of the Trust or Trustee harmless, then, in the absence of notice to the Trustee that such Certificate has been acquired by a protected purchaser, the Trustee shall execute and deliver on behalf of the Trust, in lieu of any such destroyed, lost or stolen Certificate, a Certificate representing a like aggregate denomination of Certificates and bearing a number not contemporaneously outstanding.

Upon the issuance of any Certificate pursuant to this Section 2.07, the Trustee may require the payment by the Certificateholder of the Certificate mutilated, destroyed, lost or stolen of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses, including counsel fees, of the Depositor and the Trustee, and in addition a further sum not exceeding fifteen dollars for each Certificate so issued in substitution.

Every Certificate issued pursuant to this Section 2.07 in lieu of any destroyed, lost or stolen Certificate shall constitute an original additional contractual obligation, whether or not the destroyed, lost or stolen Certificate shall be at any time enforceable by anyone, and shall be entitled to all the benefits of this Trust Agreement.

Section 2.08.    <u>Persons Deemed Owners of Certificates</u>.

Prior to due presentation of a Certificate for registration of transfer, the Trustee and any agent of the Trustee may treat the Person in whose name such Certificate is registered as the Certificateholder of such Certificate for the purpose of receiving payments pursuant to Section 3.06 and for all other purposes whatsoever (including, without limitation, exercising the rights of a Certificateholder under this Trust Agreement), and neither the Trustee nor any agent of the Trustee shall be affected by any notice to the contrary.

17

Section 2.09.     <u>Conditions to Initial Execution and Delivery of Certificates</u>.

The initial execution and delivery of the Certificates on the Closing Date shall be subject to the satisfaction of the following conditions on or prior to such Closing Date:  (i) the Depositor shall have delivered to the Trustee the related Initial Underlying Securities (and/or, if specified in the Series Trust Agreement, the Initial Amount) into the Trust Account in accordance with Section 2.01 hereof; (ii) the Trustee shall have received an Opinion of Counsel to the Depositor, addressed to the Trustee, substantially in the form of Appendix A; (iii) the Trustee shall have received a fully executed copy of each Swap Agreement, together with all documents and opinions required to be delivered to the Trust upon execution thereof pursuant to the terms thereof; (iv) the Market Agent shall have delivered an acknowledgment that no additional fees and expenses are owed by the Trust for the performance of its duties under the Market Agent Agreement, (v) the Depositor has delivered written instructions to the Trustee, on behalf of the Trust, directing the Trustee, on behalf of the Trust, to enter into and perform any obligations required under each Swap Agreement and the Market Agent Agreement; and (vi) the Depositor shall have delivered to the Trustee a certificate signed by an authorized officer of the Depositor certifying that all of the requirements of this Section 2.09 have been satisfied.

Section 2.10.     <u>Transfer Restrictions</u>.

(a) The Certificates will not be registered under the Securities Act, or the "blue sky" or securities laws of any state.  Notwithstanding any provision herein to the contrary, no transfer of a Certificate may be made except pursuant to a valid exemption from the registration requirements of the Securities Act and such state laws.  The Certificates may not be owned or held by, or transferred to, any Person unless such Person is a Qualified Institutional Buyer.

(b) No Certificateholder shall be permitted to transfer its Certificate, nor shall the Trustee register any such transfer, unless the Trustee has received an investor letter (an "<u>Investor Letter</u>") acceptable to the Depositor from the prospective purchaser, including among other things:

(i)     confirming that (A) it is a Qualified Institutional Buyer, specifying the provision of Rule 144A pursuant to which it qualifies as a Qualified Institutional Buyer, and attaching evidence thereof; (B) it is a "Qualified Purchaser" as defined in Section 2(a)(51) of the Investment Company Act; (C) it is not (<u>1</u>) a dealer described in Rule 144A(a)(1)(ii) that owns and invests on a discretionary basis less than U.S. $25,000,000 in securities of issuers that are not affiliated with the dealer, (<u>2</u>) a partnership, common trust fund, special trust, pension fund, retirement plan or other entity in which the partners, beneficiaries, beneficial owners or participants, as the case may be, may designate the particular investments to be made or the allocation thereof; (<u>3</u>) an investment company excepted from the Investment Company Act pursuant to Section 3(c)(1) or Section 3(c)(7) thereof (or a foreign investment company under Section 7(d) thereof relying on Section 3(c)(1) or Section 3(c)(7) thereof with respect to its U.S. holders) and formed on or prior to April 30, 1996, that has not received the consent of each of its beneficial owners with respect to its treatment as a qualified purchaser in the manner required by section 2(a)(51)(c) of the Investment

18

Company Act and the rules thereunder or (4) an entity that will have invested more than 40% of its assets in the Securities of the Trust subsequent to the purchase of its beneficial interest in the Certificates; (D) it was not formed for the purpose of investing in the Certificates; (E) it will hold at least the Minimum Authorized Denomination of the Certificates; (F) it will provide notice of applicable transfer restrictions to any subsequent transferee; (G) it is purchasing for its own account or for the accounts (as to each of such account it exercises sole investment discretion) of one or more other persons each of whom meets all of the requirements of clauses (A) through (G); and (H) it agrees it will not reoffer, resell, pledge or otherwise transfer the Certificates or any interest therein to any person except to a person that meets all of the requirements of clauses (A) through (G) and that agrees not to subsequently transfer the Certificates or any interest therein except in accordance with this clause (H);

(ii)    stating that either (a) such purchaser is not, and is not using the assets of, an employee benefit plan subject to section 406 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or a plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (THE "CODE") or a plan or employee benefit plan that is subject to any federal, state or local law that is materially similar to the provisions of Section 406 of ERISA or Section 4975 of the Code or an entity whose underlying property includes plan assets by reason of investment in the entity by such a plan or employee benefit plan, or (b) (i) such purchaser's purchase, holding and disposition of a Certificate or beneficial interest therein will not result in a prohibited transaction under Section 406 OF ERISA or Section 4975 of the Code or any materially similar provisions of other law (a) due to the application of prohibited transaction exemption ("PTE") 84-14, PTE 90-1, PTE 91-38, PTE 95-60, OR PTE 96-23 (or a materially similar exemption under other applicable law), or (b) because the fiduciary causing the plan or employee benefit plan to acquire and hold the Certificates has made a determination that (1) the plan or employee benefit plan is paying no more than, and is receiving no less than, adequate consideration in connection with the acquisition and holding of the certificates and (2) no Party To The Trust (as defined below) exercises any discretionary authority or control or renders investment advice with respect to the assets of the plan or employee benefit plan involved in the acquisition and holding of the Certificates, (II) none of the Depositor, the Trustee, the Swap Counterparty, the Swap Guarantor, Lehman Brothers Inc., nor any of their respective affiliates ("Parties to the Trust") is a "Fiduciary" (within the meaning of Section 3(21) of ERISA) of the purchaser with respect to or by reason of such purchaser's acquisition, disposition or holding of a certificate or beneficial interest therein and no information provided to the purchaser by any party to the trust has formed a primary basis for any investment decision by such purchaser in connection with a Certificate or beneficial interest therein and the transactions contemplated therewith, and (iii) such purchaser's investment in the Certificate and the transactions contemplated therein comply with ERISA, the Code and other applicable law; and (c) such purchaser will not reoffer, resell, pledge or otherwise transfer a Certificate or any beneficial interest therein to any person except to a person that meets all of the

19

requirements of clauses (a) or (b) and who will not subsequently transfer a Certificate or beneficial interest therein except in accordance with this clause (c). any transfer in violation of the foregoing will be of no force and effect, will be void ab initio, and will not operate to transfer any rights to the purchaser, notwithstanding any instructions to the contrary. Any plan fiduciary acquiring Certificates shall also represent (and will be deemed to represent) that it is eligible to purchase the Certificates and that under the general fiduciary standards of prudence and diversification, an investment in the Certificates is appropriate for the plan, taking into account the overall investment policy of the plan, the composition of the plan's investment portfolio, and the risks and return characteristics of the Certificates;

(iii)    confirming that it constitutes an "eligible contract participant" as such term is defined in Section 1a(12) of the Commodity Exchange Act, 7 U.S.C. § 1a(12); and

(iv)    confirming that neither the Depositor, the Trustee, the Swap Counterparty, the Swap Guarantor, Lehman Brothers Inc. nor any of their respective affiliates has investment authority or renders investment advice with respect to the assets being used by it to purchase the Certificates; and

(v)    if it is acquiring such Certificate on behalf of more than one beneficial owner, confirming (1) on behalf of each such beneficial owner each of the matters set forth in the foregoing subparagraphs and (2) that each such beneficial owner will own not less than a Minimum Authorized Denomination of Certificates.

(c) Any transferee of a beneficial interest in a Global Certificate shall be deemed to represent that the conditions set forth in subsection 2.10(b) are met with respect to such transfer.

Section 2.11.    <u>Additional Certificates</u>.

Unless otherwise specified in the Series Trust Agreement, at any time prior to the Final Scheduled Distribution Date, the Trust may issue Additional Certificates under this Trust Agreement, subject to the satisfaction, in each case, of the following conditions:

(a)    The Depositor shall deposit with the Trust, on or prior to the related Additional Certificates Closing Date, Additional Underlying Securities in an amount such that the principal amount of Additional Certificates issued on such Additional Certificates Closing Date is not in excess of one hundred percent (100.00%) of the principal amount of the Additional Underlying Securities.

(b)    The terms of any Additional Certificates shall be substantially similar to those of previously issued Certificates, and the Additional Certificates shall rank pari passu in all respects with previously issued Certificates of the same class; *provided, however*, that:

20

(i)    the Additional Certificates may have such distinguishing serial designations in the titles thereof as may be deemed advisable by the Depositor and consented to by the Trustee and references to the Additional Certificates shall be construed accordingly;

(ii)    the Additional Certificates may be issued at such prices as may be determined by the Depositor in its sole discretion; and

(iii)    unless otherwise specified in the Series Trust Agreement, distributions on any Additional Certificates shall be made in accordance with the distributions on the Certificates and payments of interest and principal, if any, shall be payable commencing on the first Distribution Date following the related Additional Certificates Closing Date.

(c) The terms of the Additional Underlying Securities shall be the same as those of the Initial Underlying Securities deposited into the Trust on the Closing Date.

(d) Any Additional Certificates to be issued pursuant to this Section 2.11 shall be executed by the Trust and delivered to the Trustee for authentication and thereupon the same shall be executed and delivered by the Trustee upon the Depositor's written request (substantially in the form of Appendix C attached hereto) upon compliance with Section 2.09 herein; *provided, however*, that the Opinion of Counsel delivered pursuant to Section 2.09 herein shall be substantially in the form of Appendix D attached hereto and confirm the conclusions of the Opinion of Counsel of the Depositor delivered on the Closing Date.

(e) Notwithstanding anything herein to the contrary, the consent of the Certificateholders shall not be required for the issuance of Additional Certificates in accordance with this Section 2.11; *provided*, however, that each Rating Agency rating such Certificates shall provide written confirmation that the then current rating of the Certificates shall not be reduced or withdrawn as a result of the issuance of such Additional Certificates.

(f) Any other conditions as specified in the Series Trust Agreement shall have been satisfied.

Section 2.12.    Reserved.

Section 2.13.    Limitation of Powers and Duties.

The Trust shall have the power to and is constituted solely for the purposes of:

(i)    acquiring and holding the Underlying Securities and Eligible Investments, if any;

(ii)    entering into and performing its obligations under the Swap Agreement, the Market Agent Agreement, if any, and the other documents relating to the issuance of the Certificates;

21

   (iii) issuing the Certificates and selling, transferring or exchanging the Certificates;

   (iv) holding, managing and distributing any property, including the Initial Amount, if any, of the Trust pursuant to the Trust Agreement;

   (v) performing its obligations under the Trust Agreement;

   (vi) engaging in those activities, including entering into agreements, that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith; and

   (vii) subject to compliance with the Trust Agreement, engaging in such other activities as may be required in connection with conservation of the property of the Trust, the making of distributions to the Certificateholders and the consummation of the transactions contemplated by the Trust Agreement, the Swap Agreement, the Market Agent Agreement (if any) and the other documents pertaining to the Certificates.

The Trust shall not engage in any activity other than in connection with the foregoing.

## ARTICLE III

## RIGHTS OF CERTIFICATEHOLDERS; ADMINISTRATION OF TRUST ACCOUNT

   Section 3.01. <u>Rights of Certificateholders</u>.

   The Certificates shall represent in the aggregate all right, title and interest in and to the Initial Amount (if any), the related Underlying Securities, all moneys due and to become due with respect thereto, the Swap Receipt Amounts, Swap Termination Payments, if any, payable to the Trust, all amounts held in the Trust Account, and all proceeds thereof. The Certificates shall represent the right to receive, subject to any right specified in the Series Trust Agreement of the Trustee to receive amounts in respect of Extraordinary Expenses, (a) all applicable Interest Distribution Amounts and Principal Distribution Amounts from payments made on the Underlying Securities and any Eligible Investments, (b) any other amounts distributed as payable in respect of the Underlying Securities and (c) all Swap Receipt Amounts, and the other rights set forth in this Trust Agreement.

   Section 3.02. <u>Establishment and Maintenance of Trust Account</u>.

   The Trustee shall establish and maintain for the benefit of the Certificateholders a separate account bearing a designation clearly indicating that the funds and assets deposited therein are held in trust for the benefit of such Certificateholders (the "<u>Trust Account</u>"). The Trust Account shall at all times be maintained as a segregated trust account identified separate and apart from the general assets of the Trustee and all other accounts, funds and property of or

in the possession of the Trustee.  Unless otherwise specified in the Series Trust Agreement, the funds of the Trust Account shall be non-interest bearing.

The Trust Account shall be an account that is either (i) an account or accounts maintained with a federal or state chartered depository institution or trust company the short-term and long-term unsecured debt obligations of which (or, in the case of a depository institution or trust company that is the principal subsidiary of a holding company, the short-term and long-term unsecured debt obligations of such holding company) have a rating at least equal to the Minimum Rating, at the time any amounts are held in deposit therein, (ii) an account or accounts the deposits in which are fully insured by the Federal Deposit Insurance Corporation or any successor agency or (iii) a trust account or accounts maintained as a segregated account or as segregated accounts and held by the Trustee in its Corporate Trust Office in trust for the benefit of the Certificateholders.  The Trustee may establish any sub-accounts of the Trust Account as may be specified herein or in the Series Trust Agreement.  The Underlying Securities and any moneys held in the Trust Account shall not at any time be commingled with any other assets or property held by the Trustee.  The Trustee at all times shall maintain accurate records reflecting each transaction in such Trust Account, or otherwise, in connection with the Certificates and the Underlying Securities.  The Trustee shall have no power or authority to assign, transfer, pledge, set-off or otherwise dispose of any property of the Trust, or any interest therein, except as provided hereunder or as required by law.

The Trust Account shall be under the sole dominion and control of the Trustee for the benefit of the Certificateholders and the Swap Counterparty to the extent described herein.  To the extent not otherwise specified herein, the Trustee shall deposit, or cause to be deposited, in the Trust Account all amounts collected with respect to the Underlying Securities, the Eligible Investments and the Swap Agreement and proceeds thereof.  It is understood and agreed that any payments in the nature of prepayment or redemption penalties, late payment charges, reinvestment income or assumption fees which may be received by the Trustee shall be deposited by the Trustee in the Trust Account and shall not be retained by the Trustee for its own account.

If, at any time, the Trustee discovers that the Trust Account has ceased to meet any of the conditions specified in this Section 3.02, the Trustee shall within five Business Days establish a new Trust Account meeting the conditions specified in this Section 3.02 and transfer any cash and any investments on deposit in the Trust Account.

Section 3.03.    Collection of Payments on Underlying Securities.

(a) The Trustee shall apply all amounts received by it and representing the principal or redemption price of, premium, if any, and interest on or cash dividends declared on the Underlying Securities, Liquidation Proceeds (if any) and Swap Receipt Amounts in the manner provided in this Article III; provided, however, if such amounts are received by the Trustee after 3:00 p.m. (New York City time), then such amounts may be applied in the manner set forth under Section 3.05 herein on the next succeeding Business Day.  Not later than the close of business on the Business Day on which the Trustee receives such amounts in the form of immediately available funds, the Trustee shall credit or deposit such amounts to the Trust Account.

USActive 5720089.8

(b) The Trustee shall duly present for payment, whether at maturity or upon redemption, each of the Underlying Securities in accordance with their respective terms and shall apply any payments received in accordance with this Article III.

Section 3.04.    <u>Liquidation of the Underlying Securities</u>.

If specified in the Series Trust Agreement, the Trustee shall in certain circumstances specified in the Series Trust Agreement direct the Market Agent to sell the Underlying Securities in compliance with the Sale Procedures and to deposit the Liquidation Proceeds therefrom into the Trust Account pursuant to Section 3.03(a) hereof.

Section 3.05.    <u>Distribution of Payment of Principal, Interest, Dividends and Premium Received on Underlying Securities and Swap Receipt Amount</u>.

(a) Except as otherwise provided in the Series Trust Agreement, on each Certificate Distribution Date, the Trustee shall withdraw or debit and pay or apply funds from the Trust Account (to the extent funds are available) in the following amounts in the order of priority specified below (*provided*, that failure to make any distribution on any Certificate Distribution Date shall constitute an event of default with respect to the Certificates only to the extent such failure continues for longer than the Applicable Grace Period):

(i)    The Swap Distribution Amount (and any Swap Termination Payments payable to a Swap Counterparty as a result of the termination of a Swap Agreement or any transaction thereunder, but excluding any Swap Termination Payments payable as a result of the termination of the Swap Agreement or any transaction thereunder, in which the Swap Counterparty is the "Defaulting Party" or the sole "Affected Party") shall be paid, first from interest paid on each class of Underlying Securities in the Trust and, to the extent the amount of such interest is not sufficient to pay in full the Swap Distribution Amount, from amounts other than interest paid on such Underlying Securities (including any Liquidation Proceeds received from the sale of the Underlying Securities in accordance with Section 3.04 hereof), to each Swap Counterparty in accordance with the related Swap Agreement and the Series Trust Agreement.

(ii)    Subject to Sections 5.12 and Section 5.13, an amount equal to the sum of all Extraordinary Expenses unpaid as of such Certificate Distribution Date shall be paid to the Trustee.

(iii)    The Principal Distribution Amount shall be paid to the Certificateholders in accordance with Section 3.06.

(iv)    The Interest Distribution Amount (net of amounts payable under clause (i) above) shall be paid to the Certificateholders in accordance with Section 3.06.

(v)    The payment to the Swap Counterparty of any Swap Termination Payments that remain unpaid as a result of the application of the first parenthetical of clause (i) above.

24

(vi)    Unless otherwise specified in the Series Trust Agreement, all remaining amounts shall be paid to the Swap Counerparty.

(b) All distributions on the Certificates and all payments of the Swap Distribution Amount shall be payable only to the extent the Trustee shall have actually received the applicable payments in respect of the principal of and premium, if any, and interest and cash dividends on the Underlying Securities underlying the Certificates and the Swap Receipt Amount, and no provision of this Trust Agreement shall be deemed to create any obligation on the part of the Trustee or the Depositor to make any such distributions from any other source.

(c) Each Interest Distribution Amount, Principal Distribution Amount and any Swap Termination Payment payable to the Trust shall be allocated among the Certificateholders pro rata, in the proportion that the denomination of each Certificate bears to the aggregate denomination of all Certificates.

(d) Except as provided in this subsection (d) and in the Series Trust Agreement, the priority of distributions as between any Swap Counterparty and the Certificateholders shall be determined ratably based on all amounts owed, respectively, to each such parties hereunder and under the related Swap Agreement; provided, however, that in the event of the termination of this Agreement as a result of an Underlying Securities Default hereunder, Swap Termination Payments owed to any Swap Counterparty will be senior in priority of payments to amounts owing to Certificateholders.

Section 3.06.        Office for Distributions, etc.; Manner of Distribution on Certificates; Reports to Certificateholders.

(a) Amounts payable in respect of Certificates pursuant to Section 3.05 shall be distributed by the Trustee to the Certificateholders of record on the Record Date for such Certificate Distribution Date by check sent by first class mail, postage prepaid, to the address of each such Certificateholder as it appears on the Certificate Register or, if the Certificates are held by a Depository, payment of such amounts shall be made to the Depository, which shall credit the relevant Persons' accounts at such Depository on the applicable Certificate Distribution Dates.

Notwithstanding the foregoing paragraph, with respect to a Certificateholder of Certificates not held in a Depository and having an aggregate denomination at least equal to the Minimum Wire Denomination, such payment shall be made by wire transfer of immediately available funds to the account designated by such Certificateholder in a written request received by the Trustee not later than 10 days prior to such Certificate Distribution Date; provided that if a wire transfer cannot be made for any reason, payment shall be made by check.  The Trustee shall not be required to send federal funds wires until any corresponding payments which were not same day funds when received by it have become same day funds.

The Trustee shall round down any such payment to the nearest whole cent.

(b) Unless specified otherwise in a Series Trust Agreement, notwithstanding Section 3.06(a) hereof, the final distribution on any Certificate, whether on the Final Scheduled

USActive 5720089.8

Distribution Date or otherwise, shall only be made upon presentation and surrender of such Certificates at the Corporate Trust Office.

(c) In the event that funds are disbursed to the Trustee in respect of book-entry Underlying Securities by the Clearing Agency or other institution in respect thereof before its receipt of funds from the Issuers thereof, and such Clearing Agency or other institution does not receive actual payment from such Issuers and demands reimbursement from the Trustee, the Trustee is authorized, in turn, to demand reimbursement from Certificateholders who received payments.

(d) On each Certificate Distribution Date, the Trustee shall forward or cause to be forwarded to the Depositor, to each Certificateholder (with a copy to any advisor designated in writing to the Trustee by such Certificateholder), and to each Rating Agency rating such series of Certificates a statement setting forth (i) the amount received by the Trustee as of the last such statement in respect of principal, interest, dividends and premium on each of the Underlying Securities and Swap Receipt Amounts, (ii) the Interest Distribution Amount and the Principal Distribution Amount for such date (each expressed in terms of the Minimum Authorized Denomination or such other amount specified therein), (iii) the Swap Distribution Amount for such date, (iv) if the Underlying Securities are debt securities, the outstanding principal balance of each of such Underlying Securities as of such date, (v) amounts distributed to the Trustee in respect of Ordinary Expenses or Extraordinary Expenses, if any and (vi) any other information, if any, relating to payments or amounts paid or owing on the Certificates, that the Trustee shall determine to be material with respect to the Certificates.

Section 3.07.    <u>Voting Rights</u>.

(a) Within five Business Days after receipt of actual notice by a Responsible Officer of the Trustee of any meeting of, or other occasion for the exercise of voting rights or the giving of consents ("<u>Voting Rights</u>") by, owners of any of the Underlying Securities, the Trustee shall give notice to the Certificateholders and the Swap Counterparty setting forth (i) such information as is contained in such notice to owners of Underlying Securities, (ii) a statement that the Certificateholders will be entitled, subject to any applicable provision of law and any applicable provisions of such Underlying Securities (and to the extent of the voting rights allocated to the Certificateholders pursuant to subsection 3.07(b)), to instruct the Trustee as to the exercise of voting rights, if any, pertaining to such Underlying Securities and (iii) a statement as to the manner in which instructions may be given to the Trustee to give a discretionary proxy to a person designated in the notice received by the Trustee.  Such notice shall be given by the Trustee to the Certificateholders of record on such record date.  Upon the written request of the applicable Certificateholder, received on or before the date established by the Trustee for such purpose, the Trustee shall endeavor, insofar as practicable and permitted under any applicable provision of law and any applicable provision of or governing the Underlying Securities, to vote in accordance with any nondiscretionary instruction set forth in such written request (in each case to the extent of the voting rights allocated pursuant to subsection 3.07(b) to such Certificateholder).  The Trustee shall not vote except as specifically authorized and directed in written instructions from the applicable Certificateholder entitled to give such instructions.  However, if under the terms of the Underlying Securities, voting rights may not be allocated on a <u>pro rata</u> basis pursuant to subsection 3.07(b), the Trustee shall vote in accordance with the

26

instructions of a majority of the Certificateholders (based upon percentage interests) only if the Trustee has received an Opinion of Counsel to the effect that such vote will not adversely affect the federal income tax consequences to the Trust and to the Certificateholders and, in the absence of such an Opinion of Counsel, the Trustee shall not vote with respect to the Underlying Securities.

(b) The voting rights allocable to the owners of the Underlying Securities pursuant to the terms thereof shall be allocated among the Certificateholders pro rata, in the proportion that the denomination of each Certificate bears to the aggregate denomination of all Certificates.

(c) All voting rights exercisable in respect of any matter will be allocated, *pro rata*, among the Certificateholders.  If, for any reason, all voting rights in respect of any matter cannot be allocated, *pro rata*, among the Certificateholders, no Certificateholder will be entitled to vote on that matter.

(d) All votes must be made by a United States Person that is a beneficial owner of a Certificate or by a United States Person acting as irrevocable agent with discretionary powers for the beneficial owner of a Certificate that is not a United States Person.  Certificateholders that are not United States Persons must irrevocably appoint a United States Person with discretionary powers to act as their agent with respect to consents and other votes.

(e) Notwithstanding anything to the contrary herein or in the Series Trust Agreement, a Trustee which is a Certificateholder, a Depositor which is a Certificateholder, and a Swap Counterparty which is a Certificateholder shall abstain from exercising any voting rights (as such term is defined in subsection 3.07(a) herein); *provided, however*, that if the Trustee, Depositor, or Swap Counterparty is the holder of 100% of the outstanding Certificates, then the Trustee, Depositor, or Swap Counterparty as Certificateholder shall have any applicable voting rights.

Section 3.08.    Payments of Taxes and Other Governmental Charges; Grant of Security Interest.

(a) The Trustee shall request, and Certificateholders shall provide, all appropriate tax certifications and forms  necessary to enable the Trust or its agents, to determine their duties and liabilities with respect to any taxes or other charges that they may be required to pay, deduct or withhold in respect of the Certificates under any present or future law or regulation of the United States or any present or future law or regulation of any political subdivision thereof or taxing authority therein or to comply with any reporting or other requirements under any law or regulation, and to pay, deduct or withhold any such taxes or charges and remit them to the relevant taxing authorities as required under law.  Such certification shall take the form of a correct, complete and executed U.S. Internal Revenue Service Form W-8BEN, W-8ECI, W-8IMY, or W-9 (or any successors thereto), including appropriate attachments, as applicable, that identifies such Certificateholder.  Each Certificateholder agrees to provide any certification requested pursuant to this paragraph and to update or replace such form or certification in accordance with its terms or its subsequent amendments.

27

(b) If such forms are not provided or if any tax or other governmental charge shall otherwise become payable by or on behalf of the Trustee or the Trust, including any tax or governmental charge required to be withheld from any payment made by the Trustee or the Trust under the provisions of any applicable law or regulation with respect to any Underlying Securities or the Certificates, such tax or governmental charge shall be payable by the applicable Certificateholders and may be withheld by the Trustee. The Depositor and the Trustee shall have the right to refuse the surrender, registration of transfer or exchange of any Certificate with respect to which such tax or other governmental charge shall be payable until such payment shall have been made by the Certificateholder.

(c) The Trust shall prepare (or cause to be prepared) all federal, state and local tax and information returns and reports required to be filed by or in respect of each Trust and the Trustee shall (solely in its capacity as Trustee and without incurring any personal liability for doing the same) sign such returns, or any other information, statements or schedules that require the Trustee's signature, and the Trust shall file, on a timely basis, such returns and such of the above information, or any other information, statements or schedules, as may be required under applicable tax laws. In this regard, the Trust shall, to the extent required to do so, prepare (or cause to be prepared) and the Trust shall furnish (or cause to be furnished) to each Certificateholder and to the Internal Revenue Service and state and local taxing authorities, as applicable, such information, forms and reports as may be required by applicable law.

Section 3.09.        Filing Proofs, Certificates and Other Information.

(a) Any Certificateholder presenting Certificates for surrender or registration of transfer or exchange or for withdrawal of any Underlying Security evidenced thereby may be required to file such proof of residence, or other matters of information, to execute such certificates and to make such representations and warranties and such assurances including a signature guaranty, as the Trustee may reasonably deem necessary or proper. The Trustee may withhold the delivery or delay the surrender of or registration of transfer or exchange of any Certificate or the withdrawal of any Underlying Security evidenced thereby until such proof or other information is filed, such certificates are executed or such representations and warranties are made.

(b) So long as any of the Certificates are "restricted securities" within the meaning of Rule 144(a)(3) under the Securities Act, the Trustee shall, unless the Trust becomes subject to and complies with the registration provisions of Section 13 or Section 15(d) of the Exchange Act, provide to any Certificateholder or to any prospective purchaser of Certificates designated by a Certificateholder upon the request of such Certificateholder or prospective purchaser, the information required to be provided by Rule 144A(d)(4), as amended, under the Securities Act in a format reasonably practicable to the Trustee (it being understood that the Depositor shall provide the Trustee with (i) such information insofar as it relates to the Underlying Securities and the Issuer(s) and that any failure to deliver or delay in the delivery by the Trustee of any such information not so received from the Depositor shall not constitute a breach of this Trust Agreement, and (ii) all balance sheets and profit and loss statements of the Trust).

28

Section 3.10.    <u>Covenant Not to Consent to Certain Underlying Security Matters</u>.

By accepting delivery of a Certificate, whether upon original issuance or subsequent transfer, exchange or replacement thereof, and without regard to whether ownership is beneficial or otherwise, each Certificateholder agrees so long as it is an owner of such Certificate that any consent (i) to any conversion of the timing of payment of, or the method or rate of accruing, interest on any Underlying Securities underlying the Certificates held by such Certificateholder or (ii) to any redemption or prepayment of the Underlying Securities underlying the Certificates held by such Certificateholder, shall require the consent of 100% of the Certificateholders.  The Trustee shall not grant any consent solicited from the owners of the Underlying Securities underlying the Certificates with respect to the matters set forth in this Section, unless 100% of the Certificateholders shall have granted such consent, nor shall it accept or take any action in respect of any consent, proxy or instructions received from any Certificateholder in contravention of the provisions of this Section.

Section 3.11.    <u>Termination of Interest Accrual</u>.

To the extent monies are deposited with, and held in trust by, the Trustee for the payment of all amounts due with respect to a Certificate or any portion thereof subject to payment upon the Final Scheduled Distribution Date, such Certificate (or portion thereof) shall accrue no further interest and shall no longer be deemed outstanding for purposes of this Agreement and the rights of the Holder thereof shall be restricted to payment, from amounts as held by the Trustee, of the amounts then owing in respect of such Certificate (or portion thereof).

Section 3.12.    <u>No Release</u>.

Except as expressly provided herein, the Trustee shall not dispose of, liquidate or otherwise release from the Trust, the Underlying Securities.

## ARTICLE IV

## DELIVERY OR LIQUIDATION OF UNDERLYING SECURITIES UPON REQUEST

Section 4.01.    <u>Partial Unwind of Underlying Securities</u>.

(a) Subject to any further conditions or modifications specified in the Series Trust Agreement, at the request of the Certificateholder which has been a registered Certificateholder for at least six calendar months and subject to agreement by the two parties as to the termination payment owed under the Swap Agreement, the Swap Counterparty shall enter into a Partial Unwind Agreement with such Certificateholder.  In the event a Certificateholder and the Swap Counterparty enter into and deliver to the Trustee a Partial Unwind Agreement, specifying a date (the "<u>Partial Unwind Date</u>"), which is at least five Business Days thereafter, on which the Certificateholder and the Swap Counterparty propose that the actions referred to in the fourth succeeding sentence would occur, the Trustee may, subject to the provisions in the Series Trust Agreement, in its sole discretion (but shall not be obligated to) countersign such Partial Unwind Agreement; <u>provided</u>, <u>however</u>, no Certificateholder will be permitted to enter into a Partial

29

Unwind Agreement more frequently than once in any six month calendar period and each Partial Unwind Agreement shall be in a minimum amount of $5,000,000 (or such other amount as may be specified in the Series Trust Agreement). Any such Partial Unwind Agreement shall (a) specify a Partial Unwind Date which is on or before the next succeeding Certificate Distribution Date (so that no Certificate Distribution Date falls between the date such Partial Unwind Agreement (as executed by a Certificateholder and the Swap Counterparty) is delivered to the Trustee and a Certificate Distribution Date) and (b) if the assets of the Trust includes more than one class of Underlying Securities, allocate the Partial Unwind Amount to the Swap Agreement and the Underlying Securities, and recite that a termination payment has been agreed upon; provided, however, that if allocation of the Partial Unwind Amount to the Underlying Securities in accordance with clause (b) would result in an allocation of an amount to a particular class of Underlying Securities which is not an integral multiple of $1,000, the allocation in such Partial Unwind Agreement shall be adjusted such that the Certificateholder shall have a continuing beneficial interest in the Trust with respect to the residual portion of any allocation of an amount to the particular class(es) of Underlying Securities that is not an integral multiple of $1,000. In addition, in determining whether to countersign a Partial Unwind Agreement, the Trustee may rely on a certification of the Market Agent, which the Market Agent shall provide, as to whether entering into and giving effect to such Partial Unwind Agreement (a) will expose the Trust to any liability or expense or (b) have an adverse impact on or consequence for the Trust including (x) the treatment of the Certificates and the Trust for Federal income tax purposes (as specified in the Series Trust Agreement), or (y) under the Investment Company Act, ERISA or the Code or (c) would adversely affect in any material respect the interests of any Certificateholder (other than the Certificateholder that is party to such Partial Unwind Agreement). The Trustee shall also be entitled to receive an Opinion of Counsel with respect to the foregoing legal matters and the cost of such Opinion of Counsel shall be borne by the Certificateholder seeking the Partial Unwind Agreement. In order to give effect to the provisions of a Partial Unwind Agreement which the Trustee has elected to countersign, the Trustee shall, effective on such Partial Unwind Date and upon confirmation to the Trustee from the Swap Counterparty that such Certificateholder has paid to the Swap Counterparty with respect to each affected swap transaction any breakage or termination payment due under the related Swap Agreement in connection with the partial termination provided for in the Partial Unwind Agreement, deliver to such Certificateholder, against tender by such Certificateholder or its nominee of a Certificate having a principal balance equal to the Partial Unwind Amount, either Underlying Securities having a principal amount equal to the Partial Unwind Amount (allocated, if the Trust Property includes more than one class of Underlying Securities, among the classes as provided in the Partial Unwind Agreement) or the cash proceeds from the sale by the Market Agent on behalf of such Certificateholder of such Underlying Securities (as specified in the Partial Unwind Agreement) plus any breakage or termination payment payable by the Swap Counterparty in connection with the partial termination provided for in the Partial Unwind Agreement. Failure by the Trustee to execute and deliver to such Certificateholder and Swap Counterparty a Partial Unwind Agreement by not later than the second Business Day before the proposed Partial Unwind Date shall be deemed to constitute notice by the Trustee that it has elected not to countersign such Partial Unwind Agreement. In the event that the Trustee elects not to countersign a Partial Unwind Agreement, the Trust shall continue as if no Partial Unwind Agreement had been tendered to the Trustee for countersignature. The execution by such Certificateholder and the Swap Counterparty of such Partial Unwind Agreement, taken together

30

with the countersignature by the Trustee of such Partial Unwind Agreement, shall be deemed to constitute an amendment to this Trust Agreement under subsection 6.01(a) and, accordingly, shall not require the consent of any Certificateholder other than the Certificateholder that is party to the Partial Unwind Agreement. If, however, the Partial Unwind Agreement would adversely affect in any material respect the interests of any Certificateholder (other than the Certificateholder that is party to such Partial Unwind Agreement) or the Depositor, then such Partial Unwind Agreement may be executed and countersigned only in accordance with subsection 6.01(b). The execution and implementation of a Partial Unwind Agreement with respect to a particular Certificateholder shall not affect the rights of any other Certificateholder under this Trust Agreement. In the event the Trustee elects to countersign a Partial Unwind Agreement, the Trustee shall notify each Rating Agency rating such series of Certificates of such partial unwind of Underlying Securities.

(b) Notwithstanding any provisions of subsection 4.01(a) to the contrary, if the Depositor or any Affiliate thereof is a Certificateholder or the Beneficial Owner of a Certificate represented by a Global Certificate, the Depositor or any such Affiliate may, at any time, deliver to the Trustee a partial Unwind Agreement, specifying a Partial Unwind Date and a Partial Unwind Amount (which amount may be less than $5,000,000) applicable to such Partial Unwind Agreement; provided, however, the Depositor or any such Affiliate will not be permitted to enter into a Partial Unwind Agreement pursuant to this subsection 4.01(b) more frequently than once in any three month calendar period without concurrently delivering an Opinion of Counsel to the Trustee to the effect that the Trust will not be required to register as an "investment company" under the Investment Company Act as a result of the execution and delivery of such Partial Unwind Agreement. The Trustee shall countersign any Partial Unwind Agreement delivered by the Depositor or any Affiliate thereof pursuant to this subsection 4.01(b) subject only to receipt by a Responsible Officer of the Trustee of (x) written direction from the Depositor to execute and deliver such Partial Unwind Agreement (y) any Opinion of Counsel required by the immediately preceding sentence.

(c) Notwithstanding any provisions of Section 4.01 to the contrary, and subject to any restrictions or conditions specified in the Series Trust Agreement, in the event the Trust is relying on the exception from registration provided for in Section 3(c)(7) of the Investment Company Act and the Certificates are offered only to "Qualified Purchasers" as defined in Section 2(a)(51) of the Investment Company Act, the restrictions specified in this Section 4.01(a) and Section 4.01(b) relating to (i) the frequency a Certificateholder is permitted to enter into a Partial Unwind Agreement and (ii) ensuring the Trust will not be required to register as an "investment company" as a result of the execution and delivery of such Partial Unwind Agreement shall not apply to the Certificateholders.

Section 4.02.        [RESERVED].

Section 4.03.        Manner of Delivering Underlying Securities.

(a) Certificates with respect to which a Partial Unwind Agreement or Additional Termination Event relates shall be delivered to the Trustee on the Partial Unwind Date or the Additional Termination Event Date, as applicable. Each such Certificate not so delivered shall be deemed delivered on the books of the Trustee on the Partial Unwind Date or the Additional

31

Termination Event Date, as applicable. With respect to each Certificate deemed delivered to the Trustee, the Trustee shall make any required payments on such Partial Unwind Date or Additional Termination Event Date to the applicable Certificateholder listed on the Certificate Register. Upon such delivery, the Trustee shall cancel the Certificates and deliver a new Certificate in an amount equal to the proportionate interest in the remaining Underlying Securities in the Trust.

(b) If the Underlying Securities underlying the Certificates with respect to which a Partial Unwind Agreement or Additional Termination Event shall have occurred are held by the Trustee in certificated form, the Trustee shall, if necessary, request the registrar for such Underlying Securities to deliver to the Trustee in certificated form in appropriate denominations the Underlying Securities evidenced by the Certificates so surrendered for withdrawal and, if the requested Underlying Securities are received within a reasonable time, the Trustee shall deliver such Underlying Securities to such Certificateholder without unreasonable delay. If the requested certificated Underlying Securities are not received within a reasonable time, the Trustee shall re-deliver the surrendered Certificates to such Certificateholder; provided, however, the Trustee shall continue to seek to obtain the requested certificated Underlying Securities and shall not re-deliver the surrendered Certificates, if the Certificateholder so requests and directs the Trustee.

If the Underlying Securities underlying the Certificates with respect to which a Partial Unwind Agreement or Additional Termination Event shall have occurred are held by the Trustee in book-entry form, the Trustee shall arrange for beneficial ownership thereof to be transferred to the Certificateholder of such Certificates, or its designee, on the records of the Clearing Agency with which the certificate evidencing such Underlying Security is on deposit.

(c) Delivery of Underlying Securities in certificated form and re-delivery of any Certificate pursuant to paragraph (b) above shall be made by the Trustee at its Corporate Trust Office in New York City, except that, at the written request, risk and expense of the Certificateholder surrendering such Certificates and for the account of the Certificateholder thereof, such delivery may be made at such other place as may be designated by such Certificateholder and reasonably agreed to by the Trustee.

(d) Upon delivery by the Trustee of any Underlying Security to a Certificateholder pursuant to this Section 4.03, such Underlying Security and the surrendered Certificate shall cease to be entitled to the benefit of this Trust Agreement for all purposes of this Trust Agreement (unless it should happen again to be deposited with the Trustee by the Depositor pursuant to Section 2.01 hereof) and the Trustee shall have no further obligation to such Certificateholder with respect thereto.

(e) The Certificateholder who surrenders Certificates to the Trustee as provided herein in return for the Underlying Securities (whether in certificated form or by book-entry) may not thereafter redeposit such Underlying Securities with the Trustee and receive the benefit of this Trust Agreement.

32

Section 4.04.    Limitations on Delivery of Underlying Securities.

As a condition precedent to the delivery of Underlying Securities to a Certificateholder, the Trustee may require payment by such Certificateholder of a sum sufficient for reimbursement of any tax or other governmental charge with respect thereto and the costs of delivery to any office other than the Trustee's designated office in New York City.

## ARTICLE V

## THE TRUSTEE; THE DEPOSITOR AND THE MARKET AGENT

Section 5.01.    No Liability of the Trustee or the Depositor with Respect to the Underlying Securities; Certificateholder to Proceed Directly Against the Issuers.

(a) The sole obligor with respect to any Underlying Security is the Issuer thereof. Neither the Depositor nor the Trustee shall have any obligation on or with respect to the Underlying Securities except as provided in this Section 5.01 with respect to the Trustee; and their respective obligations with respect to Certificates shall be solely as set forth in this Trust Agreement.

(b) Certificateholders are beneficial owners of the right to receive principal payments, interest payments, dividends and premiums, if any, to which such Certificates relate and, as such, will have the right following an event of default with respect to any Underlying Security to proceed directly against the Issuer.  Such Certificateholders are not required to join other Certificateholders, the Depositor or the Trustee in order to proceed against the Issuer.

(c) In addition to the duties of the Trustee set forth in subsection 4.02(h) hereof, in connection with any default under any Underlying Security or the Swap Agreement, the Trustee shall take such action against the issuer or obligor of such Underlying Security or the Swap Counterparty, as applicable, as the Certificateholders representing not less than 100% of the Certificates then outstanding shall so instruct the Trustee in writing; provided, however, that the Trustee must be satisfied that it will have adequate security or indemnity for any costs, expenses and liabilities that may be incurred in connection with taking any such action.

(d) Neither the Depositor nor the Trustee is authorized to proceed against the Issuer of any Underlying Security in the event of a default or to assert the rights and privileges of Certificateholders and neither has any duty in respect thereof.

(e) Neither the Depositor nor the Trustee (except as provided in subsection 5.12(e) hereof) shall be under any obligation whatsoever to appear in, prosecute or defend any action, suit or other proceeding in respect of Underlying Securities or the Certificates.

(f) Notwithstanding the foregoing the Trustee may withhold from any Certificateholder any delivery of Underlying Securities, or payments thereon, until all Swap Termination Payments due to the Trustee from such Certificateholder with respect to such Underlying Securities have been paid.

33

Section 5.02.    <u>Maintenance of Offices and Agencies by the Trustee.</u>

Until termination of this Trust Agreement in accordance with its terms, the Trustee shall maintain (a) facilities in the Borough of Manhattan, City of New York, State of New York, for the execution and delivery, payment, surrender and registration of transfer and exchange of Certificates and withdrawal of Underlying Securities evidenced by the Certificates, all in accordance with the provisions of this Trust Agreement, and (b) such other agents, if any, according to the terms and conditions as the Trustee and the Depositor may agree from time to time.

Section 5.03.    <u>Prevention or Delay in Performance by the Trustee or the Depositor.</u>

Neither the Trustee nor the Depositor shall incur any liability to any Certificateholder of any Certificate, if by reason of any provision of any present or future law, or regulation thereunder, or any governmental authority, or by any reason of any act of God or war or other circumstance beyond the control of the relevant party, the Trustee or the Depositor shall be prevented or forbidden from doing or performing any act or thing which the terms of this Trust Agreement provide shall be done or performed; and neither the Trustee nor the Depositor shall incur any liability to any Certificateholder of a Certificate by reason of any non-performance or delay, caused as aforesaid, in the performance of any act or thing which the terms of this Trust Agreement provide shall or may be done or performed, or by reason of any exercise of, or failure to exercise, any discretion provided for in this Trust Agreement.

Section 5.04.    <u>Obligations of the Trustee and the Depositor.</u>

(a) Neither the Trustee nor the Depositor assumes any obligation or shall be subject to any liability under this Trust Agreement to Holders of Certificates, other than by reason of willful misconduct, bad faith or negligence, in the case of the Trustee, in the performance of such duties as are specifically set forth in this Trust Agreement.  Neither the Trustee nor the Depositor shall be under any obligation to take any action hereunder which may tend to involve it in any expense or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it.

(b) Neither the Trustee nor the Depositor shall be liable to any Certificateholder of any Certificate for any action or non-action by it in reliance upon the advice of or information from legal counsel, accountants, any Certificateholder of a Certificate or any other Person believed by it in good faith to be competent to give such advice or information, including, without limitation, the Calculation Agent, the Market Agent or the other party to this Agreement. The Trustee and the Depositor may each rely and shall each be protected in acting upon any written notice, request, direction or other document believed by it to be genuine and to have been signed or presented by the proper party or parties.

(c) The Trustee agrees to reimburse the Depositor for legal costs and expenses incurred in connection with any action or proceeding by the Depositor against the Trustee for recovery of any losses, claims, damages and expenses determined in a final, non-appealable judgment of a court of competent jurisdiction to be due and owing to the Depositor and to have

34

resulted directly from the negligence, bad faith or willful misconduct of the Trustee in the performance of its duties hereunder. No Clearing Agency or registrar with which Underlying Securities are maintained shall be an agent of the Trustee for purposes of the Trust Agreement. The Trustee may own and deal in obligations of the same issue and maturity as the Underlying Securities and in Certificates.

(d) The Trustee shall at all times maintain a fidelity bond in reasonable form and amount to protect against loss due to dishonest or fraudulent actions of its employees in connection with its obligations hereunder.

(e) Except as provided in subsection 5.12(e), the Trustee shall not take any action which, in the Trustee's opinion (based on the facts then available to the Trustee), would or might cause the Trust or the Trustee to incur costs, expenses or liabilities that constitute Extraordinary Expenses.

(f) None of the Trustee, the Depositor, the Swap Counterparty, the Swap Guarantor nor any of their respective affiliates shall be liable to any Certificateholder, the Trust or any other Person for any loss (including non-realization of any profit or gain in the event that the Trustee is required to sell Eligible Investments in accordance with the terms of this Trust Agreement or in the event that the Trustee does not invest such amounts in those Eligible Investments yielding the highest return) resulting from any such investment or sale in accordance with this Trust Agreement, whether by depreciation in value or otherwise.

Section 5.05.    Eligibility Requirements for Trustee.

The Trustee shall at all times be a bank or trust company which is not an affiliate of the Depositor (but may have normal banking relationships with the Depositor and its respective affiliates) organized and doing business under the laws of any state or the United States, authorized under such laws to exercise corporate trust powers, the combined capital and surplus of which is at least $50,000,000 and the long-term debt obligations of which are rated in one of the four highest categories assigned to long-term debt obligations by S&P and Moody's, and which is subject to supervision or examination by federal or state authority. If such corporation or association publishes reports of conditions at least annually, pursuant to law or the requirements of the aforesaid supervising or examining authority, then for the purposes of this Section the combined capital and surplus of such corporation or association shall be deemed to be its combined capital and surplus as set forth in its most recent report of conditions so published. The Trustee shall at all times satisfy the requirements for a trustee under Section 26(a)(1) of the Investment Company Act and shall not be affiliated (within the meaning of Rule 405 under the Securities Act) with the Depositor or the Trust, or any Person involved in the organization or operation of the Trust or the Depositor. In the event that at any time the Trustee shall cease to be eligible in accordance with the provisions of this Section, the Trustee shall resign immediately in the manner and with the effect specified in Section 5.06.

Section 5.06.       Resignation and Removal of the Trustee; Appointment of Successor Trustee.

(a) The Trustee may at any time resign as Trustee hereunder by written notice of its election so to do, delivered to the Depositor, and such resignation shall take effect upon the appointment of a successor Trustee and its acceptance of such appointment as hereinafter provided; provided, however, that in the event of such resignation, the Depositor and the Trustee shall negotiate in good faith concerning any prepaid but unaccrued fees. The Depositor may at any time remove the Trustee as Trustee hereunder by written notice of its election to do so, delivered to the Trustee in the manner provided in Section 7.04 hereof, and such removal shall take effect upon the appointment of the successor trustee and its acceptance of such appointment as provided in Section 5.06(c); provided, however, that in the event of such removal, the Depositor shall negotiate in good faith with the Trustee in order to agree regarding payment of the termination costs of the Trustee resulting from such removal. Upon the designation of a successor Trustee, following either resignation or removal of the Trustee, the Trustee shall deliver to the successor Trustee all records relating to the Certificates in the form and manner then maintained by the Trustee, which shall include a hard copy thereof upon written request of the successor Trustee.

(b) If at any time the Trustee shall become incapable of acting or shall be adjudged a bankrupt or insolvent, or a receiver of the Trustee or of its property shall be appointed, or any public officer shall take charge or control of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, the Depositor shall petition any court of competent jurisdiction for the removal of the Trustee and the appointment of a successor Trustee. In the event the Trustee resigns or is removed pursuant to this Section 5.06(b), the Trustee shall reimburse the Depositor for any fees or charges previously paid to the Trustee in respect of duties not yet performed under this Trust Agreement which remain to be performed by a successor Trustee.

(c) In case at any time the Trustee acting hereunder notifies the Depositor that it elects to resign or the Depositor notifies the Trustee that it elects to remove the Trustee as Trustee, the Depositor shall (with the consent of the Swap Counterparty, which consent shall not be unreasonably withheld), within 90 days after the delivery of the notice of resignation or removal, appoint a successor Trustee, which shall satisfy the requirements for a trustee under Section 5.05. If no successor Trustee has been appointed within 90 days after the Trustee has given written notice of its election to resign or the Depositor has given written notice to the Trustee of its election to remove the Trustee, as the case may be, the Trustee may petition, at the Depositor's expense, any court of competent jurisdiction for the appointment of a successor Trustee. Every successor Trustee shall execute and deliver to its predecessor and to the Depositor an instrument in writing accepting its appointment hereunder, and thereupon such successor Trustee, without any further act or deed, shall become fully vested with all the rights, powers, duties and obligations of its predecessor and for all purposes shall be the Trustee under this Trust Agreement, and such predecessor, upon payment of all sums due it and on the written request of the Depositor, shall execute and deliver an instrument transferring to such successor all rights, obligations and powers of such predecessor hereunder, and shall duly assign, transfer and deliver all right, title and interest in the Underlying Securities and parts thereof to such successor. Any successor Trustee shall promptly give notice of its appointment to each Rating

36

Agency then rating the Certificates and to the Certificateholders for which it is successor Trustee in the manner provided in Section 7.04 hereof.

(d) Any corporation into or with which the Trustee may be merged, consolidated or converted or any bank or trust company which acquires all or substantially all of the Trustee's corporate trust business shall be the successor of such Trustee without the execution or filing of any document or any further act.

Section 5.07.        Indemnification by the Depositor of the Trustee; Contribution.

(a) The Depositor agrees, to the extent the Trustee is not reimbursed pursuant to Section 5.12(e) hereof, to indemnify the Trustee against, and hold it harmless from, any loss, expense or liability incurred in connection with any legal action relating to this Trust Agreement or any Certificate or the performance of agreements executed by the Trustee in its capacity as Trustee, except for any liability (i) that constitutes a specific liability of the Trustee under this Trust Agreement or (ii) incurred by reason of acts of negligence, bad faith or willful misfeasance on the part of the Trustee or its agents in performing their respective obligations hereunder or by reason of reckless disregard of the Trustee's obligations and duties hereunder or as a result of a breach of the Trustee's obligations and duties hereunder.

(b) If the indemnification provided for in the preceding paragraph is invalid or unenforceable in accordance with its terms, then the Depositor shall contribute to the amount paid or payable by the Trustee as a result of such liability in such proportion as is appropriate to reflect the relative benefits received by the Depositor and the Swap Counterparty (so long as the Swap Counterparty is an affiliate of the Depositor) on one hand and the Trustee as Trustee on the other hand.  For this purpose (i) the benefits received by the Depositor shall be the aggregate amount received by it upon the sale of such Certificates, less the costs and expenses of such sale, including the cost of acquisition of the Underlying Securities or parts thereof evidenced thereby, (ii) the benefits received by the Swap Counterparty shall be determined in accordance with the Swap Agreement, and (iii) the benefits received by the Trustee as Trustee shall be the aggregate amount of fees received by it as Trustee, less costs and expenses incurred by it as Trustee in relation to such Certificates.  If, however, the allocation provided by the immediately preceding two sentences is not permitted by applicable law, then the Depositor shall contribute to such amount paid or payable by the Trustee in such proportion as is appropriate to reflect not only such relative benefits but also the relative fault of the Depositor on the one hand and the Trustee on the other in connection with the actions or omissions which resulted in such liability, as well as any other relevant equitable considerations.

(c) In case any claim shall be made or action brought against the Trustee for any reason for which indemnity may be sought against the Depositor as provided above, the Trustee shall promptly notify the Depositor in writing setting forth the particulars of such claim or action and the Depositor may assume the defense thereof.  In the event that the Depositor assumes the defense, the Trustee shall have the right to retain separate counsel in any such action but shall bear the fees and expenses of such counsel unless (i) the Depositor shall have specifically authorized the retaining of such counsel or (ii) the parties to such suit include the Trustee and the Depositor, and the Trustee has been advised in writing by such counsel that one or more legal defenses may be available to it which may not be available to the Depositor, in which case the

USActive 5720089.8

Depositor shall not be entitled to assume the defense of such suit notwithstanding its obligation to bear the reasonable fees and expenses of such counsel.

(d) The term "liability," as used in this Section 5.07, shall include any losses, claims, damages, expenses (including without limitation the Trustee's reasonable costs and expenses) in defending itself against any losses, claims or investigations of any nature whatsoever.

(e) The obligations of the Depositor under this Section 5.07 shall be in addition to any liability which the Depositor may otherwise have and shall extend, upon the same terms and conditions, to each officer and director of the Trustee, and to each Person, if any, who controls the Trustee within the meaning of the Exchange Act.

(f) Notwithstanding anything to the contrary contained in this Section 5.07, the Depositor shall not be liable for settlement of any such claim by the Trustee entered into without the prior written consent of the Depositor, which consent shall not be unreasonably withheld.

(g) The provisions of this Section 5.07 shall survive the resignation or removal of the Trustee, the termination of this Trust Agreement and the payment and discharge of the Trust's obligations under and in respect of the Certificates, each Swap Agreement and the Market Agent Agreement.

Section 5.08.    Charges and Expenses.

Except as otherwise expressly provided in this Trust Agreement, no amounts in the nature of fees and charges shall be payable by or withheld from the Trust, the Depositor or any other Person.  There shall be no recourse and there shall not constitute a claim to the Trust or the property of the Trust for all or any part of any fees or charges payable to any Person.

Section 5.09.    Agency Not Created.

This Trust Agreement shall not constitute any Clearing Agency, any Issuer, or any trustee, custodian or registrar for any Issuer, an agent of the Trustee.

Section 5.10.    Market Agent.

If specified in the Series Trust Agreement, on the Closing Date, the Trust shall enter into a Market Agent Agreement with the Market Agent as the initial Market Agent in the form of Appendix B hereto.  The Market Agent shall serve as such under the terms and provisions hereof and of the Market Agent Agreement.  The Market Agent, including any successor appointed pursuant hereto, shall be a member of the National Association of Securities Dealers, Inc., have capitalization of at least $25,000,000, and be authorized by law to perform all the duties imposed upon it by this Trust Agreement and the Market Agent Agreement.  The Market Agent may be removed at any time by the Trustee, acting on behalf of the Trust at the direction of the Depositor; provided, that such removal shall not take effect until the appointment of a successor Market Agent.  The Market Agent may resign upon 30 days' written notice delivered to the Trust.  Upon the removal or resignation of the Market Agent, as applicable, the

38

Trustee on behalf of the Trust shall, at the direction of the Depositor, enter into a new Market Agent Agreement with the successor Market Agent.

Section 5.11.    <u>Merger or Consolidation of, or Assumption of the Obligations of, the Depositor</u>.

Nothing in this Trust Agreement shall prevent any consolidation or merger of the Depositor with or into any other corporation, or any consolidation or merger of any other corporation with or into the Depositor or any sale or transfer of all or substantially all of the property and assets of the Depositor to any other Person lawfully entitled to acquire the same; <u>provided</u>, <u>however</u>, that, so long as Certificates are outstanding hereunder, the Depositor covenants and agrees that any such consolidation, merger, sale or transfer shall be upon the condition that the due and punctual performance and observance of all the terms, covenants and conditions of this Trust Agreement to be kept or performed by the Depositor shall be assumed by the Person (if other than the Depositor) formed by or resulting from any such consolidation or merger, or which shall have received the transfer of all or substantially all of the property and assets of the Depositor, just as fully and effectually as if such successor Person had been the original party of the first part hereto; and in the event of any such sale or transfer a predecessor Depositor may be dissolved, wound up and liquidated at any time thereafter.

USActive 5720089.8

Section 5.12.        Trustee's Fees; Ordinary Expenses; Extraordinary Expenses.

(a) The applicable Series Trust Agreement shall specify the amount and circumstances of the Trustee's compensation and the source thereof.

(b) (i)   Unless otherwise specified in the Series Trust Agreement, the Trustee shall pay all Ordinary Expenses and the Trustee shall have no claim for payment of Ordinary Expenses from any other source, including, without limitation, the Depositor.

(ii) Unless otherwise specified in the Series Trust Agreement, the Trustee shall be paid by the Depositor an amount to cover any Necessary Third Party Expenses incurred by the Trustee in the administration of the Trust.

(c) [RESERVED].

(d) Subject to subsection 5.12(e) and Section 5.13, all Extraordinary Expenses, to the extent not paid by a third party, are, and shall be, obligations of the Trust and when due and payable shall be satisfied solely by the Trust.

(e) The Trustee shall not take any action, including appearing in, instituting or conducting any action or suit hereunder or in relation hereto which is not indemnifiable under Section 5.07 hereof, which, in the Trustee's opinion, would or might cause it to incur Extraordinary Expenses unless (i) the Trustee has been instructed to do so by Certificateholders representing not less than 100% of the Certificates then outstanding, and (ii) the Trustee is satisfied that it will have adequate security or indemnity in respect of such Extraordinary Expenses which are approved by the Certificateholders pursuant to clause (i).  Extraordinary Expenses incurred shall be reimbursed directly by Certificateholders representing not less than 100% of the Certificates then outstanding unless the related Series Trust Agreement provides that the Trustee will be indemnified for Extraordinary Expenses out of the assets of the Trust. The Trustee, if it so consents (which consent may be withheld in its absolute discretion), may pay Extraordinary Expenses approved pursuant to clause (i) above on behalf of the Trust.  In such case, the Trustee will be indemnified for such paid Extraordinary Expenses, plus reimbursement for cost of funds at a rate equal to Prime flat for the period for which such payment was outstanding, either by the Certificateholders or from the assets of the Trust, as set forth in the second sentence of this subsection 5.12(e); provided, however, that where the Series Trust Agreement provides for indemnification of Trustee out of the assets of the Trust, if the Trustee determines (in its sole judgment) at any time that the assets of the Trust do not provide sufficient indemnity for the Trustee in respect of any amounts it shall advance for Extraordinary Expenses, the Trustee will provide written notice thereof to the Certificateholders and the Depositor, in which case the Trustee will not advance any amounts in respect of Extraordinary Expenses (or take any action which may cause it to incur Extraordinary Expenses) until another arrangement for the reimbursement of Extraordinary Expenses has been agreed to by the Trustee in its absolute discretion.  The Trustee is entitled to recover any payments made in respect of Extraordinary Expenses prior to the Certificateholders receiving payments from the Trust.

USActive 5720089.8

# ARTICLE VI

# AMENDMENT AND TERMINATION

Section 6.01.        Amendment of Trust Agreement.

(a) The form of the Certificates and any provisions of the Trust Agreement may at any time and from time to time be amended or supplemented by a writing executed by the Depositor and the Trustee, with the consent of the Swap Counterparty, whose consent shall not be unreasonably withheld, and the Trustee shall, without the consent of any Certificateholder and subject to written confirmation from each Rating Agency rating such Certificates that such amendment or supplement will not result in a downgrade or withdrawal of the rating assigned to the Certificates, execute any such writing at the request of the Depositor:  (i) in connection with the registration of Certificates or any offering of Certificates under the Securities Act, as amended, and the qualification of the Trust Agreement under the Trust Indenture Act of 1939, as amended, (ii) in connection with the qualification of the Certificates or the Trust Account for the applicable exemption from the Investment Company Act, (iii) to ensure that the Certificates and the Trust will have the treatment for federal income tax purposes specified in the Series Trust Agreement, (iv) in connection with the appointment of a successor Trustee hereunder, (v) to cure any ambiguity in, or to correct or supplement any provision of, the Trust Agreement which may be inconsistent with any other provision of the Trust Agreement or to otherwise cure any defect in the Trust Agreement, or (vi) to effect any Partial Unwind Agreement pursuant to Section 4.01 hereof.

(b) In the event the Trustee receives any other request for approval of any amendment or supplement of the Trust Agreement, the Trustee shall forthwith mail a notice thereof to the Depositor and to each Certificateholder of record as of such date and shall request from the Depositor and the Certificateholders instructions as to whether or not to execute such amendment or supplement.  Upon the instructions of Certificateholders evidencing more than 66-2/3% fractional undivided interests in the Trust (excluding the interests of any Certificateholder who is Trustee, Depositor, Swap Counterparty or Swap Guarantor or any Affiliate of the Trustee, the Depositor, the Swap Counterparty or Swap Guarantor), the Trustee shall enter into such amendment or supplement of the Trust Agreement so long as such amendment or supplement does not reduce in any manner the amount of, or accelerate or delay the timing of, distributions on any Certificate; *provided*, *however*, that subject to the conditions set forth in Section 6.01(c) herein, any amendment or supplement under this subsection 6.01 (b) to which 100% of the then outstanding Certificateholders have provided their written consent shall be valid, effective and binding upon the Certificateholders.

(c) As a condition to entering into any amendment or supplement of the Trust Agreement pursuant to this Section 6.01, (i) there shall be delivered to the Trustee (A) unless 100% of the then outstanding Certificateholders have consented to any such amendment or supplement, an Opinion of Counsel to the Depositor to the effect that such amendment or supplement will not (x) result in the withdrawal of, or modification of the conclusions of, any opinion delivered by such counsel in connection with the Certificates, and (y) adversely affect the federal income tax consequences to the Trust and the non-consenting Certificateholders, (B) the written consent of the Depositor and (C) the written consent of the Swap Counterparty;

41

and (ii) written notice shall be given to each Rating Agency rating such series of Certificates and such Rating Agencies have confirmed in writing that such action will not result in a reduction or withdrawal of the then current rating of the Certificates.

(d) Every Certificateholder at the time any such amendment or supplement so becomes effective, and each transferee thereof, shall be bound by the Trust Agreement as so amended or supplemented.

(e) Promptly after the execution of any such amendment or supplement, the Trustee shall furnish a copy thereof to each Certificateholder.  It shall not be necessary for the consent of Certificateholders under this Section 6.01 to approve the particular form of any proposed amendment or supplement, but it shall be sufficient if such consent shall approve the substance thereof.  The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Certificateholders shall be subject to such reasonable regulations as the Trustee may prescribe, in addition to any regulations prescribed under the Trust Agreement.

(f)  Notwithstanding anything to the contrary, the Trustee shall not be required to execute or consent to any amendment, supplement or waiver which adversely affects the rights, duties, immunities or indemnities of the Trustee.

Section 6.02.        Amendment of Other Documents.

(a) The Trustee on behalf of the Trust shall, at the request of the Depositor, consent to any amendment, waiver, substitution or other modification of the Market Agent Agreement (subject to the consent of the Swap Counterparty, whose consent shall not be unreasonably withheld), the Swap Agreement, or any other document in connection with the Certificates with respect to which the Trustee has the right of such consent, so long as the Trustee determines in a manner consistent with this Section 6.02 that such amendment, waiver, substitution or other modification will not adversely affect in any respect the interests of the Certificateholders; *provided, however,* that no such amendment, waiver, substitution or other modification will be permitted unless the Rating Agencies have confirmed in writing that such action will not result in a reduction or withdrawal of the then current rating of the Certificates.

(b) Any amendment, waiver, substitution or other modification of the Market Agent Agreement, the Swap Agreement, or any other document in connection with the Certificates with respect to which the Trustee has the right of such consent shall be conclusively presumed for purposes of subsection 6.02(a) to not adversely affect the interests of the Certificateholders, so long as (i) the Trustee has received the written consent of Certificateholders evidencing more than 66-2/3% fractional undivided interests in the Trust (excluding the interests of any Certificateholder who is Trustee, Depositor, Swap Counterparty or any Affiliate of the Trustee, the Depositor, or the Swap Counterparty) and (ii) such amendment, waiver, substitution or other modification does not reduce in any manner the amount of, or delay the timing of, distributions on any Certificate.

(c) In the event the Trustee receives any other request for consent to any amendment, waiver, substitution or other modification of the Market Agent Agreement, the Swap Agreement, or any other document in connection with the Certificates with respect to

42

which the Trustee has the right of consent, the Trustee shall forthwith mail a notice thereof to each Certificateholder of record as of such date and to the Depositor and shall request from the Certificateholders instructions as to whether or not to execute such consent.  Upon the written instructions of Certificateholders evidencing 100% fractional undivided interests in the Trust, the Trustee shall execute such consent or such other related documents as necessary or desirable.

(d) As a condition to giving consent to any amendment, waiver, substitution or other modification of the Market Agent Agreement, the Swap Agreement, or any other document in connection with the Certificates with respect to which the Trustee has the right of consent, (i) there shall be delivered to the Trustee: (A) unless 100% of the then outstanding Certificateholders have consented to any such amendment, waiver, substitution or other modification, an Opinion of Counsel to the Depositor, the Swap Counterparty, the Market Agent, or such other party as the Trustee shall deem appropriate to the effect that such amendment, waiver, substitution or other modification will not result in the withdrawal of, or modification of the conclusions of, any opinion delivered by such counsel at the time of initial execution of the Trust Agreement, the Market Agent Agreement, the Swap Agreement or such other document, (B) the written consent of the Depositor; and (ii) written notice shall be given to each Rating Agency rating such series of Certificates and written confirmation shall be provided by each such Rating Agency that such amendment, waiver, substitution or other modification will not result in a reduction or withdrawal of the then current rating of the Certificates.

(e) Promptly after the execution of any such amendment, waiver, substitution or other modification, the Trustee shall furnish a copy thereof to each Certificateholder.  It shall not be necessary for the consent of Certificateholders under this Section 6.02 to approve the particular form of any proposed amendment, waiver, substitution or other modification, but it shall be sufficient if such consent shall approve the substance thereof.  The manner of obtaining such consents and of evidencing the authorization of the execution thereof by Certificateholders shall be subject to such reasonable regulations as the Trustee may prescribe, in addition to any regulations prescribed under the Trust Agreement.

(f) Notwithstanding anything herein to the contrary, the consent of the Certificateholders shall not be required and an Opinion of Counsel shall not be required for any amendment, waiver, substitution or modification to cure any ambiguity in, or to correct any inconsistency or defect in any provision of the Swap Agreement or the Market Agent Agreement; provided, however, that (i) such action shall not adversely affect in any respect the interests of any Certificateholder or the Swap Counterparty, as evidenced by an officer's certificate of the Depositor; and (ii) each Rating Agency rating the Certificates has confirmed that such amendment will not result in a reduction or withdrawal of the then current rating of the Certificates.

Section 6.03.        Dissolution, Winding Up and Termination.

(a) Unless otherwise specified in the Series Trust Agreement, this Trust Agreement, and the trust established hereunder, shall terminate upon the earliest to occur of any of the following events:

43

(i)      the day that is 21 years after the "Timing Date," being the date of the death of the last survivor of the descendants of Joseph P. Kennedy, former United States Ambassador to the Court of St. James and father of John F. Kennedy, former U.S. President, living on the date of effectiveness of the Trust Agreement and the date of issuance of the Certificates;

(ii)      [Reserved];

(iii)      payment in full of the entire outstanding principal amount of the Certificates;

(iv)      an Optional Redemption, if specified in the Series Trust Agreement, occurs which results in the redemption of the entire outstanding principal amount of the Certificates;

(v)      the delivery of all of the Underlying Securities to the Certificateholders or their designees in accordance with Article IV; or

(vi)      the designation of an Early Termination Date under the Swap Agreement or Swap Agreements in respect of which the entire Notional Amount thereof is reduced to zero; *provided* that if the Swap Counterparty is the "Defaulting Party" or the sole "Affected Party" (each as defined in the Swap Agreement) in respect of such Early Termination Date, the events set forth in this Section 6.03(a)(vi) shall only constitute a termination event in respect of the Trust on the date on which 100% of Certificateholders direct the Trustee to direct the Market Agent to liquidate the Underlying Securities.

(b) If on any date of termination of this Trust Agreement, any amounts payable hereunder, including Swap Termination Payments and Extraordinary Expenses, shall not have been paid in full, the Trustee shall pay such amounts in accordance with the terms hereof upon such termination.  If amounts then held by the Trustee are insufficient to pay such amounts in full, the Trustee shall make arrangements with the Market Agent for the sale, in accordance with the Sale Procedures, of a principal amount of the Underlying Securities, if any, then held by the Trustee and otherwise required to be delivered to Certificateholders on such termination date (the amount of the liquidation price to be at the risk of the Certificateholders and without recourse to the Trustee) sufficient to make such payments, apply the proceeds derived to such payments, pay the balance, if any, of such proceeds to the Certificateholders and deliver the remainder of such Underlying Securities to the Certificateholders.  Notwithstanding anything to the contrary in this Trust Agreement, the application of proceeds of the Underlying Securities pursuant to this paragraph shall fully discharge and satisfy the obligations of the Trust payable upon termination of this Trust Agreement, and none of the Trust, the Trustee or the Depositor shall be liable for any deficiency in the amount otherwise payable hereunder.

(c) If on any date of termination of this Trust Agreement, any amounts payable by the Swap Counterparty pursuant to the Swap Agreement shall not have been paid in full, the Trustee shall make arrangements with each Certificateholder on whose behalf the Trustee has taken any action pursuant to subsection 4.02(h).

USActive 5720089.8

(d) Upon the completion of winding up of the Trust, the Trust shall terminate.

(e) If any Certificates shall not be surrendered for payment upon termination of this Trust Agreement, the Trustee shall not perform any further acts under this Trust Agreement with respect thereto, except that the Trustee as a custodian shall hold remaining Underlying Securities and the proceeds of any payment thereon, without liability for interest, for the benefit of the Certificateholders which have not theretofore been surrendered for payment and as to which such proceeds are payable unless otherwise required by applicable law. Upon the disposition of Underlying Securities and proceeds in accordance with the terms of the Trust Agreement, the Depositor shall be discharged from all obligations under this Trust Agreement except for its obligations to the Trustee under Section 5.07 hereof.

## ARTICLE VII

## MISCELLANEOUS

Section 7.01.    Counterparts.

The Standard Terms and the Series Trust Agreement each may be executed in any number of counterparts by the parties thereto on separate counterparts, each of which, when so executed and delivered, shall be deemed an original, but all such counterparts shall together constitute one and the same instrument. Copies of this Trust Agreement, the Swap Agreement and the Market Agent Agreement (if any) shall be filed with the Trustee and shall be open to inspection during business hours at the Trustee's designated office in New York City by any Certificateholder.

Section 7.02.    Exclusive Benefit of Parties and Certificateholders; Effective Date.

This Trust Agreement is for the exclusive benefit of the parties hereto, their respective successors hereunder, and the Certificateholders, and shall not be deemed to give any legal or equitable right, remedy or claim to any other Person whatsoever, except that the Swap Counterparty shall be a third party beneficiary of this Trust Agreement. The Certificateholders shall be beneficiaries of this Trust Agreement and shall be bound by all the terms and conditions hereof and of the Certificates by acceptance of delivery thereof. This Trust Agreement shall become effective as to the Trustee and the Depositor with respect to a particular transaction upon the acceptance by the Trustee of a Series Trust Agreement and the receipt by the Trustee of the Underlying Securities deposited in connection therewith.

Section 7.03.    Invalidity of Provisions.

In case any one or more of the provisions contained in this Trust Agreement, including any Series Trust Agreement, or contained in the Certificates should be or become invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein or therein shall in no way be affected, prejudiced or disturbed thereby.

45

Section 7.04.    Notices.

(a) Any and all notices to be given to the Depositor shall be deemed to have been duly given if sent by facsimile transmission to the Depositor at 745 Seventh Avenue, New York, New York 10019, Attention:  Fixed Income Structured Credit Trading, through facsimile transmission number (201) 524-2080, telephone confirmation number (212) 526-6575.  The Depositor may change this information by written notice to the Trustee.

(b) Any and all notices to be given to the Trustee shall be deemed to have been duly given if sent by facsimile transmission to the Trustee at 100 Wall Street, 16th Floor, Attention: David Kolibachuk and Marlene Fahey, facsimile transmission number (212) 509-3384 or (212) 809-5459, telephone confirmation number (212) 361-2459 or (212) 361-2510.  The Trustee may change this information by notice to the Depositor.

(c) Any and all notices to be given to the Swap Counterparty shall be deemed to have been duly given if sent by facsimile transmission to the Swap Counterparty at the address specified in the Swap Agreement, or, otherwise, at Ops/Corp Services Department, Attention: Fixed Income Structured Credit Trading, telephone confirmation number (212) 526-6575.  The Swap Counterparty may change this information by notice to the Depositor.

(d) Any notice required or permitted to be given to a Certificateholder of a Certificate shall be deemed to have been duly given if (i) sent by facsimile transmission to such Certificateholder at the facsimile transmission number provided by such Certificateholder to the Registrar, if such Certificateholder has provided such information to the Registrar, or (ii) such notice is mailed by first class mail, postage prepaid, to the address of the Certificateholder as shown in the Certificate Register.  A notice shall be conclusively deemed to have been duly given to the Certificateholder if so given within the time period prescribed by this Trust Agreement regardless of whether such Person receives such notice.

(e) Any and all notices to be given to Moody's shall be deemed to have been duly given if sent by facsimile transmission to Moody's at Moody's Investors Service, Inc., 99 Church Street, New York, New York 10007, Attention:  CBO/CLO Monitoring Department, facsimile transmission number (212) 553-0355, telephone confirmation number (212) 553-1494.  Moody's may change this information by notice to the Depositor.

(f) Any and all notices to be given to S&P shall be deemed to have been duly given if sent by facsimile transmission to Standard & Poor's Rating Services at 55 Water Street, New York, New York  10041, Attention:  Structured Finance Surveillance Group, facsimile transmission number (212) 438-2662, telephone confirmation number (212) 438-2556.  S&P may change this information by notice to the Depositor.

(g) Any and all notices to be given to Fitch shall be deemed to have been duly given if sent by facsimile transmission to Fitch at Fitch, Inc. at One State Street Plaza, New York, New York  10004, Attention:  ABS Group Surveillance, facsimile transmission number (212) 480-4438, telephone confirmation number (212) 908-0500.  Fitch may change this information by notice to the Depositor.

Section 7.05.        GOVERNING LAW.

THIS TRUST AGREEMENT AND THE CERTIFICATES SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED WITHIN THE STATE OF NEW YORK AND WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAWS PROVISIONS THEREOF.

Section 7.06.        Headings.

The headings of articles and sections in the Trust Agreement and in the form of the Certificates set forth in the Appendices hereto have been inserted for convenience only and are not to be regarded as a part of this Trust Agreement or to have any bearing upon the meaning or interpretation of any provision contained herein or in the Certificates.

Section 7.07.        Annual Statements.

After the end of each calendar year, the Trustee shall deliver to each Person who was a Certificateholder at any time during such calendar year (with a copy to any advisor designated in writing to the Trustee by such Certificateholder) and to the Depositor a report, as to the aggregate of the Interest Distribution Amount and Principal Distribution Amount on each of the Underlying Securities, as well as the net amount paid to or received from the Swap Counterparty for such calendar year, or, in the event that such Person was a Certificateholder for only a portion of such calendar year, for the applicable portion of such year.  The Trustee shall prepare (or cause to be prepared), and shall be solely responsible for the preparation of, all federal, New York State and New York City tax and information returns and reports required to be filed by or in respect of the Trust and the Trustee shall sign such returns, or any other information, statements or schedules, and the Trustee shall file, on a timely basis, such returns and such of the above information, or any other information, statements or schedules, as may be required under applicable tax laws.  In this regard, the Trustee shall, to the extent required to do so, prepare (or cause to be prepared) and the Trustee shall furnish (or cause to be furnished) to each person that is a partner in the Trust for federal income tax purposes and to the Internal Revenue Service and state and local taxing authorities, as applicable, such information, forms and reports as may be required by applicable law.

Section 7.08.        Intention of the Parties.

It is the express intent of the Depositor and the Trustee that the purchase of the Underlying Securities by the Trustee on behalf of the Trust for the benefit of the Certificateholders as provided in Section 2.01 hereof be, and be construed as, an absolute sale of the Underlying Securities.  It is, further, not the intention of the parties that such conveyance be deemed a pledge of the Underlying Securities by any entity to the Trustee for the benefit of the Certificateholders.  However, in the event that, notwithstanding the intent of the parties, the Underlying Securities are held to be the property of some other entity, or if for any other reason this Trust Agreement is held or deemed not to be an absolute sale of the Underlying Securities, then (i) this Trust Agreement shall also be deemed to be a security agreement within the meaning of Articles 8 and 9 of the Uniform Commercial Code; (ii) the conveyance provided for in Section

47

2.01 hereof shall be deemed to be a grant to the Trustee for the benefit of the Certificateholders of a security interest in, and such entity hereby grants to the Trustee for the benefit of the Certificateholders a security interest in, all of such entity's right, title and interest, whether now owned or hereafter acquired, in and to:

I     All accounts, contract rights, instruments, documents, general intangibles, money, deposit accounts, certificates of deposit, chattel paper, certificated and uncertificated securities, security entitlements and investment property consisting of, arising from or relating to (1) the Underlying Securities and all distributions and proceeds with respect thereto payable on and after the Closing Date, excluding the Initial Accrued Interest with respect to each Underlying Security; (2) the Trust Account established pursuant to this Trust Agreement and (3) Swap Receipt Amounts;

II     All accounts, contract rights, general intangibles, chattel paper, documents, instruments, certificated and uncertificated securities, security entitlements and investment property and other rights arising from or by virtue of the disposition of, collections with respect to, or claims against other Persons with respect to, all or any part of the collateral described in (I) above; and

III     All cash and non-cash proceeds of, and distributions with respect to, the property described in (I) and (II) above;

(collectively, the "Transferred Assets"); (iii) the delivery to, possession by and/or control of the Trustee for the benefit of the Certificateholders of the Underlying Securities and such other goods, accounts, contract rights, general intangibles, letters of credit, advances of credit, instruments, money, documents, chattel paper, certificated or uncertificated securities, security entitlements or investment property shall be deemed to be "possession by the secured party," or possession by a purchaser or a Person designated by him or her, and the Trustee shall credit such property to the Certificateholders on its books and records, and the Trustee shall otherwise be acting as agent for the Certificateholders for purposes of perfecting the security interest pursuant to Sections 9-305 and 9-115 of the Uniform Commercial Code; and (iv) notifications to Persons holding such property, and acknowledgments, certificates or confirmations from Persons holding such property, shall be deemed notifications to, or acknowledgments, certificates or confirmations from, securities intermediaries, bailees or agents (as applicable) of the Trustee for the benefit of the Certificateholders for the purpose of perfecting such security interest under applicable law.  The Depositor and, at the written direction of the Depositor, the Trustee for the benefit of the Certificateholders shall, to the extent consistent with this Trust Agreement, take such actions as may be necessary to ensure that, if this Trust Agreement were deemed to create a security interest in the Transferred Assets, such security interest would be deemed to be a perfected security interest of first priority (on parity with the security interest in favor of the Swap Counterparty) under applicable law and will be maintained as such throughout the term of this Trust Agreement.

USActive 5720089.8

Section 7.09.        <u>Assignment</u>.

Notwithstanding anything to the contrary contained herein, except as provided in Section 5.11 and this Section 7.09, this Trust Agreement may not be assigned by any Depositor without the prior consent of 100% of the Certificateholders, the Swap Counterparty and the Trustee and without giving notice to each Rating Agency rating such series of Certificates.

The Depositor shall have the right to transfer and assign all of its rights, duties, obligations and liabilities under this Trust Agreement with respect to the Certificates to an affiliate of the Depositor; <u>provided</u>, <u>however</u>, that such transfer and assignment shall be upon the condition that the due and punctual performance and observance of all the terms and conditions of this Trust Agreement to be performed by the Depositor shall, by an agreement supplemental hereto be assumed by such affiliate just as fully and effectually as if such affiliate had been the original party of the first part to this Trust Agreement.

Section 7.10.        <u>Further Assurances</u>.

The Depositor agrees to do and perform, from time to time, any and all acts and to execute any and all further instruments required or reasonably requested by the Trustee more fully to effect the purposes of this Trust Agreement.

Section 7.11.        <u>No Waiver; Cumulative Remedies</u>.

No failure to exercise and no delay in exercising, on the part of the Trustee or the Certificateholders, any right, remedy, power or privilege hereunder, shall operate as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power or privilege.  The rights, remedies, powers and privileges herein provided are cumulative and not exhaustive of any rights, remedies, powers and privileges provided by law.

Section 7.12.        <u>Actions by Certificateholders</u>.

(a) Wherever in this Trust Agreement a provision is made that an action may be taken or a notice, demand or instruction given by Certificateholders or Beneficial Owners, such action, notice or instruction may be taken or given by any Certificateholder or Beneficial Owner.

(b) Each Certificateholder or Beneficial Owner shall have the right to assert any rights and privileges of a Certificateholder or Beneficial Owner, and shall have the right to proceed directly and individually against any Person to enforce any remedies hereunder and shall not be required to act in concert with any other Certificateholder or Beneficial Owner or any other Person.

(c) Any request, demand, authorization, direction, notice, consent, waiver or other act by a Certificateholder or Beneficial Owner of a Certificate shall bind such Certificateholder or Beneficial Owner and every subsequent Certificateholder or Beneficial Owner of such Certificate or any Certificate issued upon the registration of transfer thereof or in exchange therefor or in lieu thereof in respect of anything done, suffered or omitted to be done by the

49

Certificateholder or Beneficial Owner or the Trustee in reliance thereon, whether or not notation of such action is made upon such Certificate.

Section 7.13.    Merger and Integration.

Except as specifically stated otherwise herein, the Standard Terms and the Series Trust Agreement set forth the entire understanding of the parties relating to the subject matter hereof, and all prior understandings, written or oral, are superseded by the Standard Terms and the Series Trust Agreement.  Neither the Standard Terms nor the Series Trust Agreement may be modified, amended, waived or supplemented except as provided herein.

Section 7.14.    Nonpetition Agreement.

Notwithstanding any prior termination of this Agreement, neither the Depositor nor the Trustee shall, prior to the date which is one year and one day (or the then applicable preference period under applicable Federal or state bankruptcy, insolvency or similar law) after the final payment of any Certificates, petition or otherwise invoke the process of any governmental authority for the purpose of commencing or sustaining a case against the Trust under any Federal or state bankruptcy, insolvency or similar law or appointing a receiver, liquidator, assignee, trustee, custodian, sequestrator or other similar official of the Trust or any substantial part of its property or ordering the winding up or liquidation of the affairs of the Trust.

Section 7.15.    No Recourse.

(a) Each Certificateholder by accepting a Certificate acknowledges that such Certificateholder's Certificates represent beneficial interests in the Trust only and do not represent interests in or obligations of the Depositor, the Trustee, the Swap Counterparty or any Affiliate thereof and no recourse may be had against such parties or their assets, except as may be expressly set forth or contemplated in this Trust Agreement, the Certificates, the Swap Agreement,  or any other documents relating thereto.

(b) No recourse may be taken directly or indirectly, with respect to the obligations of the Trust or the Trustee on the Certificates or under this Trust Agreement or any certificate or other writing delivered in connection herewith or therewith, against:

(i)    the Trustee in its individual capacity;

(ii)    the Trust or any owner of a beneficial interest in the Trust; or

(iii)    any partner, owner, beneficiary, agent, officer, director, employee or agent of the Trustee in its individual capacity, any holder of a beneficial interest in the Trust or the Trustee or of any successor or assign of the Trustee in its individual capacity, except as any such Person may have expressly agreed (it being understood that the Trustee has no such obligations in its individual capacity).

Section 7.16.    <u>Distribution of Underlying Securities</u>.

If the Trustee is required, pursuant to the Series Trust Agreement, to distribute the Underlying Securities in kind to the Certificateholders and, as a result of minimum denomination requirements or transfer restrictions applicable to the Underlying Securities with which a Certificateholder cannot comply, the Trustee is unable to distribute such Underlying Securities on a *pro rata* basis, the Trustee shall direct the Market Agent to sell, in accordance with the Sale Procedures, such minimum principal amount of Underlying Securities as is necessary to enable such Underlying Securities, together with the proceeds received from the sale of any portion thereof, to be so distributed.

IN WITNESS WHEREOF, the parties hereto have caused the Standard Terms for Trust Agreements to be duly executed by their respective authorized officers as of the date first written above.

LEHMAN BROTHERS INC., as Depositor

By: _____

Name: _____

Title: _____

U.S. BANK NATIONAL ASSOCIATION,
    as Trustee

By: _____

Name: _____

Title: _____

[RACERS 2006-15-A Standard Terms for Trust Agreements]

IN WITNESS WHEREOF, the parties hereto have caused the Standard Terms for Trust Agreements to be duly executed by their respective authorized officers as of the date first written above.

LEHMAN BROTHERS INC., as Depositor

By:_____

    Name:_____

    Title:_____

U.S. BANK NATIONAL ASSOCIATION,
    as Trustee

By: _____

    Name: ___David J. Kolibachuk___

    Title: ___Vice President___

[RACERS 2006-15-A Standard Terms for Trust Agreements]

**Appendix A
to Standard Terms**

FORM OF OPINION OF DEPOSITOR'S COUNSEL

USActive 5720089.8

**Appendix B**
**to Standard Terms**

<u>FORM OF MARKET AGENT AGREEMENT</u>

**Appendix C
to Standard Terms**

<u>FORM OF CERTIFICATE OF DEPOSITOR</u>

Officer's Certificate

Reference is made to that certain Series Trust Agreement dated as November 16, 2006 (the "<u>Series Trust Agreement</u>") between Lehman Brothers Inc. (the "<u>Depositor</u>") and U.S. Bank National Association, as Trustee (the "<u>Trustee</u>"), which will supplement and incorporate the Standard Terms for Trust Agreements of even date therewith (the "<u>Standard Terms</u>" and collectively with the Series Trust Agreement, the "<u>Trust Agreement</u>").  Capitalized terms used but not defined herein shall have the meaning specified in the Trust Agreement.

(a)     Pursuant to Section 2.11(d) of the Standard Terms, the Depositor hereby certifies that the Depositor has duly authorized the execution of the Additional Certificates by the Trust and the authentication and delivery of the Additional Certificates by the Trustee; and

(b)     Pursuant to Section 2.09 of the Standard Terms, the Depositor hereby directs the Trustee to authenticate Additional Certificates in the name of _____ in the aggregate principal amount of U.S. $_____ and to deliver such Additional Certificates in accordance with the delivery instructions received from The Depository Trust Company.

Dated: _____

LEHMAN BROTHERS INC.,
     as Depositor

By:_____
     Name:
     Title:

C-1

## FORM OF CROSS-RECEIPT

Reference is made to that certain Series Trust Agreement dated as of November 16, 2006 (the "Series Trust Agreement") between Lehman Brothers Inc. (the "Depositor") and U.S. Bank National Association, as Trustee (the "Trustee"), which will supplement and incorporate the Standard Terms for Trust Agreements of even date therewith (the "Standard Terms" and collectively with the Series Trust Agreement, the "Trust Agreement"). Capitalized terms used but not defined herein shall have the meaning specified in the Trust Agreement.

The Trustee hereby acknowledges receipt of the Additional Underlying Securities in the aggregate principal amount of $_____ transferred by the Depositor pursuant to the Trust Agreement.

Dated: _____

U.S. BANK NATIONAL ASSOCIATION, not in its individual capacity but solely as Trustee

By:_____
    Name:
    Title:

The Depositor hereby acknowledges receipt of the Additional Certificates in the aggregate principal amount of $_____ from the Trustee.

Dated: _____

LEHMAN BROTHERS INC.,
    as Depositor

By:_____
    Name:
    Title:

C-2

**Appendix D**
**to Standard Terms**

FORM OF OPINION

[Letterhead]

_____  ___ , 200__

To The Persons Listed on the Attached Schedule A

    Re:    Restructured Asset Certificates with Enhanced Returns,
           Series 2006-15-A Trust

        We are rendering this opinion pursuant to Section 2.11(d) of the Standard Terms for Trust Agreements, dated as of November 16, 2006 (the "Standard Terms") between Lehman Brothers Inc. (the "Depositor") and U.S. Bank National Association, as Trustee (the "Trustee"), which is supplemented by the Series Trust Agreement of even date therewith (the "Series Trust Agreement" and, collectively with the Standard Terms, the "Trust Agreement") pursuant to which the Trust will issue additional Certificates in the aggregate principal amount of $_____. Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Trust Agreement.

        In rendering the opinions expressed below, we have examined and relied upon originals or copies, certified or otherwise identified to our satisfaction of such documents, agreements and instruments as we have deemed necessary or appropriate as a basis for rendering such opinions. In addition, we have assumed, without independent verification, the genuineness of all signatures, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as copies or specimens, the authenticity of the originals of such documents submitted to us as copies or specimens and the accuracy of the matters set forth in the documents we reviewed.

        Based on the foregoing, and subject to the limitations, qualifications and assumptions set forth herein and in the Closing Opinion (as defined below), we are of the opinion that:

1.    The execution and delivery of the Additional Certificates will not result in the withdrawal of, or modification of the conclusions of, our opinion dated November 16, 2006 (the "Closing Opinion") delivered in connection with the closing of the transactions contemplated by the Trust Agreement; and

USActive 5720089.8

2.      The execution and delivery of the Additional Certificates will not have a material adverse affect on the U.S. federal income tax characterization of the Trust or the on the U.S. federal income tax treatment of any beneficial owners of Certificates at the time of issuance, as described in the "—Certain U.S. Federal Income Tax Considerations" section of the Supplement for the Certificates.

The opinions expressed herein are subject to the following additional qualifications that in connection with our opinion in paragraph 8 of the Closing Opinion, with your approval, we have assumed that the undertakings contained in the Standard Terms for Trust Agreements dated November 16, 2006, between the Depositor and the Trustee relating to the Additional Certificates and restrictions regarding investors that are eligible to purchase the Certificates set forth in the private placement memorandum and related supplement thereto, each dated November 16, 2006 (collectively, the "Private Placement Memorandum"), will be complied with, and we have relied upon representations, certificates and agreements by the Depositor as to matters relating to the transaction and other securities transactions of the Trust, the absence of a general solicitation or advertising, and the measures taken to assure that purchasers are not underwriters within the meaning of Section 2(11) of the Securities Act.

We have rendered the opinions expressed herein based on facts and circumstances existing, and applicable laws, rules, regulations, court decisions, and governmental and regulatory authority determinations in effect, on the date hereof.  We assume no obligation to update or supplement this letter to reflect any facts, circumstances, laws, rules, or regulations, or any changes thereto, or any court or other authority or body decisions or governmental or regulatory authority determinations which may hereafter occur or come to our attention.

This letter was not intended or written for use, and cannot be used, for the purpose of avoiding U.S. federal, state, or local tax penalties.  This letter was written to support the promotion or marketing of the transaction addressed in this letter.  Each taxpayer should seek advice based on the taxpayer's particular circumstances from an independent tax advisor.

We are furnishing this opinion to you solely for your benefit in connection with the transactions referred to herein.  This letter is not to be relied upon, used, circulated, quoted or otherwise referred to by any person or for any other purpose without our express written consent. Nevertheless, you may disclose to any and all persons, without limitation of any kind, the U.S. federal, state and local income tax treatment of the Issuer and the Notes, any fact that may be relevant to understanding the U.S. federal, state and local income tax treatment of the Issuer and the Notes, and all materials of any kind (including this opinion letter and any other opinions or other tax analyses) relating to such U.S. federal, state and local tax treatment.

Very truly yours,

SCHEDULE A

Lehman Brothers Inc.
745 Seventh Avenue
New York, New York  10019

U.S. Bank National Association
100 Wall Street
16th Floor
New York, New York  10005

[SWAP COUNTERPARTY]

[RATING AGENCIES]

D-3

**Appendix E
to Standard Terms**

<u>FORM OF SWAP SCHEDULE AND CONFIRMATION</u>

E-1

**Appendix F**
**to Standard Terms**

<u>FORM OF PARTIAL UNWIND AGREEMENT</u>

USActive 5720089.8

**Appendix G
to Standard Terms**

<u>FORM OF TRUST CERTIFICATE</u>

USActive 5720089.8