IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DVI, INC., | ) | Case Nos. 03-12656 through |
| DVI FINANCIAL SERVICES INC. and | ) | 03-12658 (MJW) |
| DVI BUSINESS CREDIT CORPORATION, | ) | |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | Related Doc. 1117 |
| | ) | |

**ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE
BANKRUPTCY CODE AND FEDERAL RULE OF BANKRUPTCY
PROCEDURE 9019 APPROVING (I) THE DEBTORS' ASSUMPTION
AND ASSIGNMENT OF CERTAIN CONTRIBUTION AND SERVICING
AGREEMENTS, AS MODIFIED, AND (II) A SETTLEMENT
AGREEMENT BETWEEN DEBTORS, EACH RECEIVABLES
CORPORATION, EACH ISSUER, U.S. BANK NATIONAL
ASSOCIATION, AS TRUSTEE, THE AD HOC COMMITTEE OF
NOTEHOLDERS AND LYON FINANCIAL SERVICES, INC. D/B/A US
BANCORP PORTFOLIO SERVICES**

This matter coming on to be heard on the Motion of the Debtors and Debtors-in-Possession for Order Pursuant to Sections 105 and 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 Approving (i) the Debtors' Assumption and Assignment of Certain Contribution and Servicing Agreements, as Modified, and (ii) a Settlement Agreement Between Debtors, U.S. Bank National Association, as Trustee, each Receivables Corporation, each Issuer, the Ad Hoc Committee of Noteholders and Lyon Financial Services, Inc. d/b/a US Bancorp Portfolio Services (the "Motion") filed by the above-captioned debtors and debtors-in-possession (the "Debtors"); the Court having reviewed the Motion and the Settlement Agreement (attached hereto as <u>Exhibit A</u> and incorporated herein by reference, the "Settlement

CH\655362.10

Agreement")[1] and having heard the statements of counsel in support of the relief requested therein at the hearing conducted on ~~January~~ February \_\_, 2004 (the "Hearing"); the Court finding that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), (c) the compromise and settlement set forth in the Settlement Agreement is fair and reasonable and in the best interest of the Debtors' estates; the Court finding that notice of the Motion given by the Debtors was sufficient under the circumstances; and the Court being fully advised in the premises and having determined that the legal and factual bases set forth in the Motion and at the Hearing on the Motion establish just cause for the relief herein granted;

IT IS HEREBY ORDERED THAT:

1. The Motion shall be, and hereby is, GRANTED.

2. Pursuant to 11 U.S.C. § 105(a) and Rule 9019(a) of the Federal Rules of Bankruptcy Procedure, the Settlement Agreement and the compromises and releases embodied therein are hereby approved as fair, adequate and reasonable under all of the circumstances, to the Noteholders, Securitization Trusts, the Debtors and their bankruptcy estates and the Settlement Related Parties (as hereinafter defined). The Settlement Agreement is determined by this Court to be a fair, prudent and reasonable result for all Noteholders, and is in the best interest of all Noteholders, the Securitization Trusts, the Debtors and the Settlement Related Parties. The Debtors and the Settlement Related Parties have acted reasonably and prudently in seeking this Order.

---

[1] Capitalized terms not otherwise defined in this Order shall have the meanings ascribed to them in the Settlement Agreement.

2

CH\655362.10

3.  Effective automatically on the Closing Date, the amendments to the Contribution and Servicing Agreements and the Indentures set forth in Exhibit B to the Settlement Agreement shall be, and hereby are, approved notwithstanding the amendment requirements set forth in the respective Contribution and Servicing Agreements and Indentures.

4.  The Debtors are hereby authorized in accordance with 11 U.S.C. §§ 105(a) and 365 to (a) assume and assign to the Successor Servicer, effective upon the Closing Date, the Contribution and Servicing Agreements (as amended by and in accordance with the Settlement Agreement) free and clear of all interests of any kind or nature whatsoever, and (b) execute and deliver to the Successor Servicer such documents or other instruments as may be necessary to assign and transfer the Contribution and Servicing Agreements to the Successor Servicer.

5.  Upon the Closing Date, the Contribution and Servicing Agreements shall be transferred to, and, except to the extent amended by the Settlement Agreement, remain in full force and effect in accordance with their respective terms (as amended by the Settlement Agreement), notwithstanding any provision in any such Contribution and Servicing Agreement or Indenture (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, except as specifically provided in the Settlement Agreement, DVIFS shall, pursuant to 11 U.S.C. § 365(k), be relieved from any further liability with respect to the Contribution and Servicing Agreements after such assignment to and assumption by the Successor Servicer.

6.  By entering into the Settlement Agreement, the Debtors and the Successor Servicer, as applicable, have (i) cured, or have provided adequate assurance of cure of, any and all defaults under all of the Contribution and Servicing Agreements, within the meaning of 11 U.S.C. § 365(b)(1)(A), (ii) provided compensation or adequate assurance of compensation to the

3

Trustee and any other party for any actual pecuniary loss to such party resulting from any and all defaults under all of the Contribution and Servicing Agreements, within the meaning of 11 U.S.C. § 365(b)(1)(B), and (iii) provided adequate assurance of future performance of and under the Contribution and Servicing Agreements (as modified by the Settlement Agreement), within the meaning of 11 U.S.C. § 365(b)(1)(C). All pre-petition and post-petition defaults or other obligations of the Debtors under the Contribution and Servicing Agreements arising or accruing prior to the Closing Date of the Settlement Agreement shall be deemed cured upon the Closing Date; *provided*, that an Amortization Event shall be continuing under and as defined in the Indentures, as set forth in paragraph 10(b) of the Settlement Agreement.

7. Effective upon the Closing Date, the releases set forth in the Settlement Agreement shall be, and hereby are, approved. Except for the obligations of the Debtors and Successor Servicer under the Settlement Agreement, each non-Debtor party to each Contribution and Servicing Agreement (it being expressly understood that the Objecting Parties (as hereinafter defined) are not parties to the Contribution and Servicing Agreements) hereby is forever barred, estopped, and permanently enjoined from asserting against the Debtors or the Successor Servicer, or their property, successors or assigns, any right, claim or cause of action released in the Settlement Agreement, including, without limitation, any default by any Debtor existing as of the date of the entry of this Order or, against the Successor Servicer, any counterclaim, defense, setoff or any other claim asserted or assertable against the Debtors.

8. All of the Noteholders are bound by, and are deemed to have consented to, the terms of this Order and the Settlement Agreement and are deemed to have directed and instructed the Trustee to execute and perform under the Settlement Agreement, including, without limitation, the amendments of the Contribution and Servicing Agreements and the

4

CH\655362.10

the Noteholders hereby approves the Compromises and releases of Indentures set forth in the Settlement Agreement. The parties to the Contribution and Servicing Agreements and Indentures are directed to perform their obligations thereunder as amended by the Settlement Agreement, and to pay from the Successor Servicer Reserve Accounts the fees and expenses of the Successor Servicer required to be paid from such accounts under the Settlement Agreement. Having found the compromises and releases set forth in the Settlement Agreement to be fair and reasonable, the Court ~~finds no bona fide basis for~~ any actions or claims by the Noteholders ~~against~~ against one another the Debtors, the Trustee, the Successor Servicer, the DIP Lenders, the Ad Hoc Committee of Noteholders (the "Ad Hoc Committee" and, together with the Trustee, the Successor Servicer and the DIP Lenders, collectively, the "Settlement Related Parties") and the Debtors' and the Settlement Related Parties' financial and/or legal advisors or as a result of this Order and the terms hereof. ~~None of the Debtors or the Settlement Related Parties (or the Debtors' and the Settlement Related Parties' financial and/or legal advisors) shall have any liability for any claims, demands, suits, actions or causes of action by reason of any facts, events, acts, conduct or omissions~~ arising out of participation in the negotiation and implementation of this Order or the matters resolved hereby or by the Settlement Agreement. The Noteholders shall be and are forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing against the Debtors and the Settlement Related Parties (and the Debtors' or the Settlement Related Parties' financial and/or legal advisors), their property, their successors and assigns or their affiliates any claims relating in any way to the Securitization Trusts prior to the date hereof, any modifications to servicing agreements and protocol, or any other matter which in any way is the subject of this Order, except as otherwise specifically set forth in the Settlement Agreement.

CH\655362.10

9.  The Motion of U.S. Bank National Association as Trustee to Lift the Automatic Stay to Terminate Certain Equipment Contract Contribution and Servicing Agreements or in the Alternative to Compel the Debtors to Assume or Reject Certain Contribution and Servicing Agreements (Docket No. 625) and the Addendum to the Motion of U.S. Bank National Association as Trustee to Lift the Automatic Stay to Terminate Certain Equipment Contract Contribution and Servicing Agreements or in the Alternative to Compel the Debtors to Assume or Reject Certain Contribution and Servicing Agreements (Docket No. 740) are moot and are deemed withdrawn.

10. The Motion of the Official Committee of Unsecured Creditors for Leave to Commence Action on Behalf of the Debtors' Estates Against U.S. Bank National Association and Other Defendants Effective Nunc Pro Tunc to November 4, 2003 (Docket No. 737) is moot and is deemed withdrawn with prejudice.

11. The Objection of U.S. Bank National Association to the Motion of Debtors and Debtors-In-Possession for Order Pursuant to Sections 105 and 365 of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 9019 Approving (I) the Debtors' Assumption and Assignment of Certain Contribution and Servicing Agreements, as Modified, and (II) A Settlement Agreement Among the Debtors, U.S. Bank National Association, as Trustee, and Various Other Parties filed January 27, 2004 [Docket No. 1243] has been resolved pursuant to the terms of the stipulation attached hereto as Exhibit A, the terms of which are incorporated herein, and the Objection is deemed withdrawn.

12. The security interest or ownership interest of the Trustee in and to the individual Contracts owned by the Securitization Trusts, and the security interest of the Trustee in and to the Equipment supporting such Contracts and owned by the Receivables Corporations,

to the extent [such interest exists and is] not already perfected by virtue of prior filings with an appropriate governmental agency, shall be deemed to be perfected by virtue of this Order without any further filing or action being required to be taken by any party, in each case as set forth in the Settlement Agreement, and the interests of DVIFS and the Successor Servicer in such Contracts and Equipment shall be as set forth in the Settlement Agreement; provided, however, that notwithstanding anything in the Settlement Agreement to the contrary, any unperfected security interest perfected hereby shall be subject and subordinate to [any constructive or asserted or held, and] any prior, valid, perfected and unavoidable Lien of any other Person [that is claim, whether asserted or ultimately determined or]. For purposes of this Order, "Lien" shall mean any interest in property securing an obligation owed to, or a claim by, a Person, whether such interest is based on the common law, statute, or contract, and including a security interest, charge, claim, or lien arising from a mortgage, deed of trust, encumbrance, pledge, hypothecation, assignment, deposit arrangement, agreement, security agreement, conditional sale or trust receipt or a lease, consignment or bailment for security purposes.

13.  Notwithstanding anything in the Settlement Agreement or this Order to the Contrary, (A) if DVIFS, DVI Business Credit Corporation, or any Affiliate (other than the Issuers or the Receivables Corporations) of DVI Business Credit Corporation owned or had an interest in, on August 25, 2003, any note, payment obligation, credit agreement or other evidence of indedbtedness or payment obligation of any Obligor on any Contract (other than any interest in any such Contract included in any Securitization), then, upon written request by the Debtors, (i) the accounts receivable of each such Obligor shall be free and clear of any lien of the Trustee, each Issuer and each Receivables Corporation, (ii) the Successor Servicer shall have a power of attorney to file UCC-3 financing statements or execute any other document necessary to evidence that the Trustee does not have any such lien and (iii) the Successor Servicer shall file

[Nothing in this Order shall effect the right of any Debtor or Nonconsenting Party to challenge any lien perfected hereunder in the future, whether such Debtor's or Nonconsenting Party's lien is perfected or not.]

CH\655362.10

all necessary papers and take any such other acts necessary to release any such lien and (B) if none of DVIFS, DVIBC or any Affiliate (other than the Issuers or the Receivables Corporations) of DVIBC owned or had an interest in, on August 25, 2003, any note, payment obligation, credit agreement or other evidence of indebtedness or payment obligation of any Obligor on any Contract (other than any interest in any Contract included in any Securitization), then DVIFS shall assign to the Trustee, on behalf of the Noteholders and Swap Providers, any security interest in assets of such Obligor, including any security interest in accounts receivable of such Obligor, then held by DVIFS.

14. All of the obligations of the Debtors under the Settlement Agreement shall constitute administrative expenses under sections 503(b)(1)(A) and 507(a)(1) of the Bankruptcy Code.

15. To the extent necessary, the automatic stay imposed by section 362(a) of the Bankruptcy Code, and any other applicable provision of the Bankruptcy Code, is deemed modified to permit the parties to fulfill and enforce the terms of the Settlement Agreement.

16. The stay of orders authorizing the use, sale or lease of property as provided in Bankruptcy Rules 6004(g) shall not apply to this Order, and this Order is immediately effective and enforceable.

17. The provisions of this Order shall be binding on the Debtors and their respective estates, creditors, successors, assigns and representatives (including, without limitation, any trustee hereinafter appointed as representative of the estate of any of the Debtors, or any other representative who qualifies in a case under the Bankruptcy Code or in connection with any other similar state or federal proceedings). The terms and conditions of this Order and any actions taken pursuant thereto shall survive the filing of any subsequent case or proceedings

CH\655362.10

for any of the Debtors or the entry of any order in the case of any of the Debtors confirming a plan of reorganization, dismissing any such case, converting any such case to any other chapter under the Bankruptcy Code, withdrawing the reference of any such case from this Court or abstaining from handling any such case.

18. The Court shall (i) pursuant to 28 U.S.C. § 157(b), retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation and enforcement of this Order and/or the Settlement Agreement and (ii) pursuant to 28 U.S.C. §§ 157(b) and (c), retain maximum jurisdiction permitted under applicable law over claims brought by DVIFS as subservicer for enforcement of payment obligations owing by the Obligors or liens granted by the Obligors, in each case under and in respect of the Contracts (the "Enforcement Claims"); provided, that nothing set forth in this Order shall be deemed a finding that this Court has or does not have jurisdiction with respect to any Enforcement Claim; and provided, further, that nothing in this Order shall be deemed to hold that this Court has personal or subject matter jurisdiction over the Securitizations or their assets except to the extent necessary to effectuate the transactions set forth in the Settlement Agreement.

19. This Order shall constitute findings of facts and conclusions of law and shall take effect and be fully enforceable upon all parties in interest for all purposes immediately upon entry hereof.

20. Nothing in this Order or the transactions [or releases] contemplated hereby shall be deemed to (a) adversely affect the rights, claims (including constructive trust claims), defenses or causes of action of the parties objecting [to the Motion] (the "Objecting Parties") against the Debtors, the Trustee, the Securitization Trusts, the Issuers, or the Receivables Corporations or (b)



[Handwritten annotations: "in law or equity"; "or any Person in its capacity as underwriters, Deloitte + Touche L.P., the rating agencies, or any former or present director, officer or employee of DuT, Inc."]

CH\655362.10

adversely affect the rights, claims, defenses or causes of action of the Debtors, the Trustee, the Securitization Trusts, the Issuers, or the Receivables Corporations or any other Person against the Objecting Parties.

21. Nothing in this Order or the Settlement Agreement is or shall be deemed a release by (i) the Debtors of their rights, claims, defenses or causes of action against their present or former directors, officers or employees or (ii) the Securitization Trusts of their rights, claims, defenses or causes of action against their present or former directors, officers or employees.

22. To the extent of any inconsistency between this Order and the Settlement Agreement, this Order shall govern.

Dated: February 3, 2004
Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE

23. The "Noteholders" do not include the purchasers or holders of the 9 7/8% Senior Notes issued by DVI, Inc. in such capacity.

24. The Debtors shall set aside $200,000 of the proceeds of the Settlement Agreement in a segregated account for payment to maintenance providers who obtain entry of a final order that they are entitled to a constructive trust over some or all of such funds; provided that such claims for constructive trust must be filed with the Court within 30 days of service of this order on such parties.

10