REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)

*Counsel to The Bank of New York Mellon,
The Bank of New York Mellon Trust Company,
N.A., and BNY Corporate Trustee Services
Limited, in their representative capacities*

Objections Due: December 8, 2010 at 4:00 p.m.
Hearing: December 15, 2010 at 10:00 a.m.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------- X
                                                                  :
In re                                                             :   **Chapter 11**
                                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                          :   **Case No. 08-13555 (JMP)**
                                                                  :   **(Jointly Administered)**
                                        Debtors.                  :
                                                                  :   *Refers to Dkt. No. 13009*
                                                                  :
----------------------------------------------------------------- X

**OBJECTION OF THE BANK OF NEW YORK MELLON, THE BANK OF
NEW YORK MELLON TRUST COMPANY, N.A. AND BNY CORPORATE TRUSTEE
SERVICES LIMITED TO DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF
THE BANKRUPTCY CODE AND GENERAL ORDER M-390 FOR AUTHORIZATION
TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR
AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVE CONTRACTS
WITH SPECIAL PURPOSE VEHICLE COUNTERPARTIES**

The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A.,

and any affiliate thereof, through its Corporate Trust Department, and BNY Corporate Trustee

Services Limited, each as trustee, indenture trustee, agent, or in its other representative capacity

(collectively, the "<u>Trustee</u>") for the holders (the "<u>Holders</u>") of certain notes, certificates, bonds,

or other interests (collectively, the "<u>Notes</u>") issued by certain issuers pursuant to structures

created by the Debtors or their affiliates that have entered into derivative contracts with one or more Debtors, objects to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-390 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors under Derivative Contracts with Special Purpose Vehicle Counterparties (the "Motion") [Dkt No. 13009].[1]

I.  **PRELIMINARY STATEMENT**

1.  Although the Debtors state that the proposed SPV Derivatives ADR Procedures "do not materially differ from the Derivatives ADR Procedures that were heavily negotiated and approved by the Court," Motion ¶19, the Debtors propose major changes with regard to the treatment of SPV Trustees. As discussed below, the Debtors are seeking relief from the "heavily negotiated" Derivatives ADR Order in derogation of the legal and Court-approved rights of SPV Trustees.

2.  The SPV Trustees typically are not counterparties to the Derivative Transactions that lay at the heart of the Debtors' Motion. *See* Motion ¶15. Beyond holding collateral, the SPV Trustees exercise only the limited authority accorded them by the governing documents. The existing Derivatives ADR Procedures recognize that SPV Trustees (referred to as "Indenture Trustees" in the Derivatives ADR Order) cannot exercise authority beyond that given them in the documents governing their relationships with their Holders.[2]

3.  The Derivatives ADR Order similarly recognizes that SPV Trustees typically have no economic interest in the Derivative Contracts and, accordingly, no authority to act on

---

[1]  Capitalized terms not defined in this Objection have the meanings assigned to such terms in the Motion.

[2]  Derivative ADR Order ¶3.c at 3. The Derivative ADR Order was entered on September 17, 2009 [Dkt. No. 5207] in response to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors under Derivative Contracts, dated July 20, 2009 [Docket No. 4453] (the "Original Motion").

behalf of or otherwise bind Holders absent their consent and direction. For that reason, the Derivatives ADR Order contains explicit procedures that apply to SPV Trustees without "Authority."[3] These provisions require that the SPV Trustee assist the Debtor in providing notice of the ADR Procedures to Holders by delivering notices to various clearing systems, but explicitly provide that the SPV Trustee is not otherwise required to participate in the mediation sessions.

4. These provisions of the Derivatives ADR Order were among those "heavily negotiated," in order to resolve pending objections. *See* Motion ¶19 at 8. The negotiations were undertaken at the urging of this Court (*see*, Transcript of hearing dated August 26, 2009 (hereinafter, "Aug 26, 2009 Tr.") at p. 48, ll. 10-22) precisely because this Court sought to avoid implementing procedures that would create, rather than avoid, docket-clogging litigation. *Id.* at p. 43, l.14 – p. 44, l.1.[4]

5. The Debtors recognize that in some instances SPV Trustees have not participated in ADR under the existing Derivatives ADR Order because "they lack the authority to act in such a situation on behalf of the SPV Derivatives Counterparty itself." Motion ¶15 at 6. Implicit in the Debtors' admitted "difficulties … finding appropriate counterparties with which to discuss settlement," Motion ¶14, is their recognition that SPV Trustees have no authority to negotiate.

6. The Debtors' proposed response is to eliminate the negotiated resolution and revisit the issue of how the Court can compel an SPV "Trustee without Authority" to participate in negotiations. While the Debtors claim that they "seek to establish the SPV Derivatives ADR

---

[3] As used in the Derivative ADR Order, the capitalized term "Authority" refers to "authority to participate and to settle the Derivatives ADR Dispute covered by the Derivatives ADR Notice on behalf of holders." Derivative ADR Order ¶ 5(b) at 5.

[4] Relevant pages of the August 26, 2009 Transcript are attached to this Objection.

Procedures to require mandatory participation by each of the SPV Derivative Counterparties," Motion ¶16, the targets of the Motion are not limited to the actual counterparties. To the contrary, the new procedures proposed in the Motion would eliminate provisions that recognize the limited role and authority of SPV Trustees and create new obligations, forcing SPV Trustees to participate in ADR proceedings in situations where they have no authority and without regard for the participation of their Holders. A process without the actual economic stakeholders, based on participation by SPV Trustees without Authority, would be a sham.

7. There is no basis to impose this change on the existing ADR procedures. The Debtors structured the Trustee Transactions (as defined below) and, whatever frustration may be motivating the Debtors' desire to force more Holders to participate in ADR procedures, the Debtors cannot escape limitations inherent in the underlying transactions as structured by the Debtors.

## II.   FACTUAL BACKGROUND

### A.   The Trustee Transactions

8. The Trustee performs certain defined administrative functions for the benefit of the Holders of debt instruments issued by a trust, special purpose vehicle, or other issuer (each an "Issuer") and other parties in interest in hundreds of transactions (collectively, the "Trustee Transactions") that were structured by the Debtors and their affiliates.[5] The Trustee Transactions often include a swap or repurchase agreement pursuant to which the Issuer is the Derivatives Counterparty to a Derivative Contract with one of the Debtors. The obligations of the Issuer generally are limited to the trust assets, and the Holders are beneficial parties in interest.

---

[5]   A detailed description of the hundreds of Trustee Transactions at issue is much too voluminous for this Objection; therefore, the Trustee provides a general description of the Trustee Transactions.

- 4 -

9. As a general rule, the transaction documents require the Trustee to serve relevant notices on Holders and to solicit Holders' direction in connection with the exercise of their contractual rights. In most instances, however, neither the Debtors nor the Trustee regularly maintain a register identifying the beneficial Holders because the Notes are traded in the financial markets and the Holders typically hold through "street names." The Trustee communicates with the Holders through clearing systems in the United States and Europe including the Depository Trust Clearing Corporation, Euroclear System, and Clearstream Banking S.A. (collectively, the "<u>Clearing Systems</u>"), which Clearing Systems are the registered owners of the Notes and are responsible for holding, clearing, and settling transactions.

10. The notice periods and required forms of notice vary among Trustee Transactions. In certain cases, a Holders' meeting must be called within a particular timeframe before action may be voted upon, and then an additional notice and solicitation must occur. The percentage of Holders required to direct the Trustee's actions varies among transactions. As a general rule, the Trustee is entitled to indemnification from the directing Holders before taking any action.

**B.    The Original Motion**

11. On July 20, 2009, the Debtors filed the Original Motion seeking entry of an order authorizing the Debtors to implement the Derivatives ADR Procedures to resolve "affirmative claims" against Derivatives Counterparties to derivatives contracts. The Trustee objected to the Original Motion [Dkt. Nos. 4589, 4596, 4941], *inter alia*, on the basis that the Trustee could not be compelled to mediate the rights of Holders when the Trustee, in the absence of direction, has no legal authority to settle or compromise their claims.

12. The Debtors' omnibus response [Dkt. No. 4903] to the many objections to the Original Motion ignored the substantive issue raised by the Trustee. Far from recognizing the

limits of the Trustee's authority, the Debtors sought to require the Trustee to participate in ADR proceedings even where the Trustee had no authority to enter into meaningful negotiations. At the August 26, 2009 hearing on the Original Motion, the Debtors' counsel argued that the issue of authority should be deferred because it could be raised after the Debtors commenced a mediation. Debtors stated: "And if necessary, that party or trustee always has recourse, ultimately, to seek withdrawal from mediation, by application to the Court for cause shown …." Aug 26, 2009 Tr. at p.36, ll. 17-20. Also, *id*. at p. 40, ll. 4-7 ("The same for an indenture trustee who says I don't have settlement authority. Well, that may be right, it may not. I don't know, when there are hundreds of indenture trusts here ….").

13. This Court rejected the Debtors' original proposal as impractical:

> [The Trustee argues] that an indenture trustee lacks the power to participate in a meaningful way in a mediation, and that without guidance from real counterparties with economics, that they are, in effect, being forced into a wasteful process which they presumably will seek, even if these procedures are approved over their objection, to opt out of. I presume they will do that by filing a motion seeking – I'm not proposing they do this, by the way, but I'm simply identifying something that might be done – filing a motion or some other pleading that would say we can't participate in a meaningful way in these procedures, and we ask that we not be bound by the order, or we seek reconsideration of the order, or we seek exclusion from the ambit of the order.
>
> \*   \*   \*
>
> I think that there is the risk that in coming up with an order which is acknowledged to being imperfect by everyone involved, that we run the risk of creating problems that could be avoided if we spend some more time thinking about ways around those problems in advance.

Aug 26, 2009 Tr. at 48, ll. 11-22; 49, ll. 5-10.

14. At the Court's urging, the Debtor negotiated with the Trustee and other SPV Trustees to modify the proposed procedures. Those negotiations resulted in the revised procedures embodied in the Derivatives ADR Order, a keystone of which is a delineation of

procedures applicable to SPV Trustees with Authority and those applicable to SPV Trustees without Authority.

### B.    The Debtors' New SPV Derivatives Motion

15.    Although the Debtors state that "the SPV Derivatives ADR Procedures do not modify any participation obligations of SPV Trustees as set forth in the current Derivatives ADR Order," Motion ¶23, the Debtors' blacklined comparison of the Derivatives ADR Order and the proposed SPV Derivatives Order shows that the two differ substantially in their treatment of SPV Trustees.  *See*, Motion, Exhibit B.

16.    The proposed SPV Derivatives Order eliminates the concept of a SPV Trustee "who lacks Authority," found in paragraph 5.b.ii. of the Derivatives ADR Order.  That provision of the Derivatives ADR Order provides that when "the [SPV] Trustee lacks Authority via the governing documents" it must contact the Holders for which it acts as SPV Trustee either through the clearing systems or when possible by a direct written communication. *Id.* at 5.  Only a SPV Trustee "with Authority" is required to participate in the mediation proceedings. Derivatives ADR Order ¶ 5.b.i. at 5.  *See also,* Derivatives ADR Order ¶s 5.a., 8, 9, 12 (all addressing participation by a SPV Trustee "with Authority").

17.    Paragraph 5 of the proposed SPV Derivatives Order is titled "Participation Mandatory."  Under this new paragraph, a SPV Trustee that is served with an ADR Package "must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the SPV Derivatives ADR Procedures specified below for all SPV Derivatives ADR Disputes covered by such SPV Derivatives ADR Package." Proposed Order at ¶5.a.

18.  Paragraph 7 of the Order, entitled "Notice/Response Stage," provides that the Trustee must respond within 75 days of service of an ADR notice. Proposed Order ¶7.b. A trustee may only accept or deny the demand; it has no option to assert a lack of authority. *Id*. Failure to respond may subject a SPV Trustee to sanctions, including an order or judgment for recovery of amounts demanded by the Debtors." *See* Proposed Order ¶11.b (setting forth sanctions against SPV Trustees).

## IV.  OBJECTIONS

19.  The Trustee objects to the Motion on the bases that (a), where the Trustee has no authority to compromise the rights of its Holders, it cannot be compelled to participate in ADR proceedings, and (b) the Debtors' ability to use discovery to locate and engage Holders directly makes participation by Trustees without Authority unnecessary.

### A.  Trustees Without Authority Cannot Be Compelled To Participate in ADR Proceedings.

20.  By the Debtors' own account, the existing Derivatives ADR Procedures have been a success. Motion ¶12. Paradoxically then, the Debtors complain that "the majority of SPV Trustees have not actively participated in the Derivatives ADR Procedures under the existing Derivatives ADR Order on the purported grounds that they lack the authority to act in such a situation on behalf of the SPV Derivatives Counterparty itself." Motion ¶15 at 6.

21.  Since the Debtors were the architects of these transactions, the limited role and authority of the SPV Trustees comes as no surprise. The governing documents typically give the SPV Trustees control of collateral. Only if directed by Holders in strict accordance with the governing documents do they take on a larger role.

22. As a general rule, the right of each Holder to receive principal and interest cannot be impaired by the trustee without the Holder's consent.[6] Even in the bankruptcy context, a trustee may not settle dissenting holders' claims without direction from a majority of the holders.[7] In those instances in which the Issuers are debtors, any settlement may require 100% Holder approval.

23. The Debtors cannot now use what is characterized as a procedural motion to modify the fundamental contractual relationship of the parties for the administrative convenience of the Debtors. The Bankruptcy Code provides no authority to rewrite the Trustee Transactions documents to grant authority that the Trustee lacks under those documents.[8] The documents governing the Trustee Transactions documents must be enforced as a matter of basic contact law.[9]

---

[6] *See, e.g., In re Bd. of Directors of Multicanal S.A.*, 307 B.R. 384, 388 (Bankr. S.D.N.Y. 2004); *UPIC & Co. v. Kinder-Care Learning Ctrs., Inc.*, 793 F.Supp. 448, 452 (S.D.N.Y. 1992).

[7] *See In re Delta Air Lines, Inc.*, 370 B.R. 537, 548 (Bankr. S.D.N.Y. 2007), *aff'd*, 374 B.R. 516, 528 (S.D.N.Y. 2007 (trustee can only settle "at the behest of a majority of the Bondholders"), *aff'd*, *Ad Hoc Comm. of Kenton County Bondholders v. Delta Air Lines, Inc.*, 309 Fed.Appx. 455 (2d Cir. Feb 9, 2009), *petition for certiorari filed* (July 22, 2009) (No. 09-104).

[8] *See In re Continental Airlines Corp.*, 907 F.2d 1500, 1509 (5th Cir. 1990) (precluding substantive modifications of labor agreement); *Official Unsecured Creditors' Comm. v. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993) ("[S]ection 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties."); *In re DeMert & Dougherty, Inc.*, 227 B.R. 508, 517 (Bankr. N.D.Ill. 1998) (Court may not rewrite the terms of an asset purchase agreement."). *See also In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142 (2d Cir. 2005) (quoting *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003)).

[9] *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 618 F.Supp.2d 280, 291 (S.D.N.Y. 2009) ("It is a well-established rule in this Circuit that the 'interpretation of Indenture provisions is a matter of basic contract law.'") (quoting *Jamie Sec. Co. v. The Limited, Inc.*, 880 F.2d 1572, 1576 (2d Cir. 1989)); *see generally McMahan & Co. v. Warehouse Entertain., Inc.*, 65 F.3d 1044, 1051 (2d Cir. 1995) (enforcing obligation to indemnify indenture trustee under no-action clause); *Friedman v. Chesapeake & Ohio Ry. Co.*, 261 F.Supp. 728, 731 (S.D.N.Y. 1966) (describing indemnification requirement in no-action clause as "plainly reasonable"), *aff'd, Friedman v. Chesapeake & O. Ry. Co.*, 395 F.2d 663 (2d Cir. 1968), *cert. denied*, 393 U.S. 1016 (1969).

24. Accordingly, there is no legal or contractual basis to impose upon the Trustee an obligation to participate in a mediation process where it lacks legal and contractual authority to compromise the Holders' claims. The Debtors offer no explanation as to how mediation could work when one of the parties lacks authority to negotiate. To the extent the Debtors seek to compel the Trustee to participate in mediation, the Motion must be denied.

**B.     Compelling Participation By SPV Trustees Is Unnecessary.**

25. Compelling SPV Trustees to participate in ADR is unnecessary because the Debtors can use appropriate discovery to locate holders. Indeed, the Proposed Order has provisions for such discovery. Proposed Order at ¶5.b.iv. at 9. Where the Debtors can use discovery to determine the economic stakeholders – the parties with actual authority to make economic decisions as part of the ADR process – forcing the SPV Trustees to participate can serve no useful purpose.

26. The Debtors have been engaged in exactly this discovery in one or more of the adversary proceedings initiated in September 2010. For example, in Lehman Brothers Special Financing, Inc. v. Bank of America, N.A., *et al.*, Adv. Pro. No. 10-03547 (Bankr. S.D. N.Y. filed Sept. 14, 2010), the Debtors served the trustee defendants with requests for production of documents and notices of deposition in which the Debtors seek information regarding the names of actual and beneficial Holders. The Debtors also served a subpoena on The Depository Trust & Clearing Corporation seeking testimony and documents relating to Holders' identities. The existence of this discovery undercuts any argument for seeking to compel participation by SPV Trustees who have no authority to compromise holders' rights.

27. The Trustee's only objection with regard to the discovery provisions of the Proposed Order relates to the time within which to respond to discovery requests. The proposed Order, as drafted, requires SPV Trustees to respond to discovery requests within ten days of

- 10 -

receipt. Proposed Order ¶5.b.iv. The Trustee submits that, in dealing with complicated transactions involving multiple parties, thirty days is more reasonable.

## V.     CONCLUSION

28.     The ADR process is supposed to "provide a mechanism for the Debtors to negotiate with SPV Derivatives Decisionmakers." Motion at ¶ 16. Compelling participation by a SPV Trustee without Authority will not further this goal. The Debtors recognize that they need someone with "complete settlement authority to negotiate all disputed amounts and issues on behalf of the SPV Derivatives Counterparty," Motion ¶ 16, and a SPV Trustee without Authority cannot fill that role.

29.     Additionally, attempts to force SPV Trustees to participate where they lack the ability to have meaningful negotiations are unnecessary because the Debtors can identify through discovery.

30.     For the foregoing reasons stated, the proposed procedures relating to SPV Trustees should not be approved.

US_ACTIVE-105073548.2-600318-60036

WHEREFORE, the Trustee objects to the Motion and respectfully requests that this Court deny the Motion to the extent that the Debtors seek to modify treatment of SPV Trustees in the Derivatives ADR Order.

Dated: December 8, 2010
      New York, New York

Respectfully Submitted,

By: */s/ Eric A. Schaffer*
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)
599 Lexington Avenue
New York, NY 10022
Tel:  (212) 521-5400
Fax:  (212) 521-5450

*Counsel to The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A. and BNY Corporate Trustee Services Limited, in their representative capacities*

TO:

Chambers of Honorable James J. Peck
One Bowling Green, Courtroom 601
New York, New York 10004

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention:   Richard W. Slack
             Ralph I. Miller
             Peter Gruenberger

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attention:   Andy Velez-Rivera
             Paul Schwartzberg
             Brian Masumoto
             Linda Riffkin
             Tracy Hope Davis

Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005
Attention:   Dennis F. Dunne
             Dennis O'Donnell
             Evan Fleck, Esq.