Hearing Date and Time: December 15, 2010 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: December 8, 2010 at 4:00 p.m. (Prevailing Eastern Time)

James H.M. Sprayregen, P.C.
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

- and -

Andrew R. McGaan, P.C.
David R. Seligman, P.C.
KIRKLAND & ELLIS LLP
300 North LaSalle Drive
Chicago, Illinois  60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200

Counsel to Lehman Brothers Australia Limited

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.,* | Case No. 08-13555 (JMP) |
| Debtors. | Jointly Administered |
| | **Ref. Docket No.:  13051** |

**LIMITED OBJECTION OF LIQUIDATORS OF LEHMAN BROTHERS AUSTRALIA LIMITED TO DEBTORS' MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT AMONG LEHMAN BROTHERS SPECIAL FINANCING INC., BNY CORPORATE TRUSTEE SERVICES LIMITED, PERPETUAL TRUSTEE COMPANY LIMITED, AND OTHERS, RELATING TO CERTAIN SWAP TRANSACTIONS WITH SAPHIR FINANCE PUBLIC LIMITED COMPANY**

Stephen Parbery and Neil Singleton, not individually, but as the court appointed liquidators (the "Liquidators") of Lehman Brothers Australia Limited ("LB Australia") hereby file this limited objection (the "Limited Objection") to the Debtors' Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for Approval of a Settlement (the "Settlement Agreement") Among Lehman Brothers Special Financing Inc. ("LBSF"), BNY

K&E 18093061

Corporate Trustee Services Limited ("BNY"), Perpetual Trustee Company Limited ("Perpetual"), and Others, Relating to Certain Swap Transactions with Saphir Finance Public Limited Company ("Saphir") (the "Settlement Motion") [Docket No. 13051] and respectfully states as follows:[1]

## INTRODUCTION

1. By this Objection, the Liquidators only object to the Motion to the extent that it could be interpreted to bind the Liquidators or preclude them from bringing an action against the Debtors in connection with the Liquidators' holdings in certain notes issued under the Dante Programme. As discussed below, the Liquidators have not been a party to any litigation with the Debtors in this Court and would be materially prejudiced if the Debtors were allowed to argue that the Summary Judgment Order or any order granting the Settlement Motion had such preclusive effect on the Liquidators. Accordingly, the Liquidators only ask that this Court include clarifying language in the Settlement Agreement and in any order granting the Settlement Motion as set forth below.

## BACKGROUND

**A.    The Liquidators' Holdings in the Dante Programme**

2. On October 10, 2002, BNY, as trustee, entered into a Principal Trust Deed dated October 10, 2002, with Dante Finance Public Limited Company establishing a multi-issuer secured obligation program (as amended and restated from time to time, the "Dante Programme"). In connection therewith, certain special purpose entities, including Saphir, a special purpose entity incorporated in Ireland, issued various series of credit-linked synthetic portfolio notes to investors. LB Australia is a holder of certain notes ("LB Australia's Notes") in

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Motion.

2

various series within the Dante Programme that are not within the Mahogany Notes Series I or Mahogany Notes Series II held by Perpetual (the "Mahogany Notes") that are the subject of the Settlement Agreement.[2] The performance of LB Australia's Notes are linked to various credit-default swap transactions that were executed in connection with the issuance of those Notes between LBSF and various special purpose vehicles, with Lehman Brothers Holdings Inc. ("LBHI") as guarantor of LBSF's obligations thereunder.

### B. LBHI Files for Bankruptcy

3. On September 15, 2008, LBHI and certain of its subsidiaries (collectively, and together with all subsequent debtors, the "Debtors") commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). LBSF subsequently filed its voluntary petition on October 3, 2008.

### C. The Liquidators

4. On October 2, 2009, the Liquidators were appointed liquidators of LB Australia by the Federal Court of Australia. As such, the Liquidators are fiduciaries of the LB Australia estate, are subject to the jurisdiction of the Australian court, and are charged with the duty to administer the LB Australia estate for the benefit of its creditors. Since their appointment, the Liquidators have been doing just that.

5. The Liquidators have filed proofs of claim against LBSF, LBHI, and Lehman Brothers, Inc. totaling approximately $1,311,423,115 plus unliquidated amounts.

### D. The Flip Clause Litigation

6. As the Court is well aware, there has been pending both before this Court and various courts in the United Kingdom various legal proceedings with respect to the

---

[2] LB Australia also holds certain notes, related to the Mahogany Notes, where Perpetual is the trustee.

3

enforceability of certain "flip clauses" contained in various Dante Programme transactional documents governing the disposition of collateral upon the unwinding of the credit default swaps issued in connection with the Dante Programme. In the United Kingdom, both Perpetual and the Belmont Park noteholders, holders of notes in various series within the Dante Programme (the "Belmont Park Noteholders"), commenced legal proceedings in the High Court of Justice Chancery Division in London against BNY to require BNY to distribute certain collateral pursuant to the priority schemes set forth in their respective transaction documents. LBSF subsequently intervened in those proceedings. After hearing the two proceedings together, the High Court ruled in favor of Perpetual and the Belmont Park Noteholders. On August 17, 2009, LBSF filed a notice of appeal of the High Court's judgment. On November 6, 2009, the English Court of Appeal issued a judgment affirming the High Court's judgment. On March 31, 2010, the United Kingdom Supreme Court agreed to hear LBSF's appeal. A hearing is scheduled for March 2011.

7. In the United States, on May 20, 2009, LBSF filed a complaint against, among others, BNY as indenture trustee related to the interpretation of those same flip clause provisions, Adv. No. 09-01242 (JMP) (the "Mahogany Notes Adversary Proceeding"). On July 19, 2010, the Court ruled in favor of LBSF and entered the Summary Judgment Order which was subsequently appealed by BNY. On September 20, 2010, the United States District Court for the Southern District of New York granted BNY's motion for leave to appeal the Summary Judgment Order (the "U.S. Appeal"). Before the District Court could hear the merits of the U.S. Appeal, LBSF, BNY, Perpetual, as the sole noteholder of the Mahogany Notes, and certain other parties reached a settlement and requested that the District Court issue a stay of the U.S. Appeal

pending court approval of that settlement. On November 19, 2010, the District Court issued a 90 day stay of the U.S. Appeal.

8.      Meanwhile, on September 14, 2010, LBSF commenced an adversary proceeding against, among others, BNY as indenture trustee and various special purpose vehicles that issued notes (other than the Mahogany Notes) under the Dante Programme, seeking a declaration that the provisions modifying LBSF's payment priority as a result of the Debtors' bankruptcy filings are unenforceable ipso facto clauses or alternatively are avoidable transfers under the Bankruptcy Code (the "September 14 Adversary Proceeding"). On October 20, 2010, the Court entered an order staying the September 14 Adversary Proceeding, along with a number of other adversary proceedings, for nine months.

### E. The Settlement

9.      On or about November 19, 2010, LBSF, BNY, Saphir, Perpetual and others entered into the proposed Settlement Agreement, which provides that, among other things, the Mahogany Notes will be redeemed, the disputed collateral securing the various obligations underlying the Mahogany Notes will be liquidated and divided among the various parties in confidential percentages, and the parties will exchange mutual releases of all claims related to such notes. In addition, the Settlement Agreement requires that, upon the settlement's effective date, LBSF shall, jointly with BNY, move to have the U.S. Appeal dismissed with prejudice. Further, upon dismissal of the U.S. Appeal, Perpetual shall make an application to the English High Court to have the UK High Court Proceedings dismissed with no order as to costs (and LBSF shall withdraw its notice of appeal). The Debtors now seek to approve the Settlement Agreement through the Settlement Motion.

K&E 18093061

**ARGUMENT**

    A.    **The Court Should Make Clear that the Settlement and the Summary Judgment Order Will Have No Effect on any Noteholders other than the Mahogany Noteholders**

    10.    The Liquidators are not aware of the most important terms of the Settlement Agreement's provisions – i.e., the split of the collateral between the Debtors and Perpetual – because those provisions were filed under seal. Thus, the Liquidators have no information to realistically support or object to the substance of the Settlement Agreement. However, the Liquidators do object to the Settlement Agreement to the extent that it purports to bind BNY (as trustee for notes other than the Mahogany Notes), LB Australia, or the Liquidators, or otherwise preclude them in any way (under doctrines of issue preclusion, claim preclusion, or otherwise) from asserting any claims or defenses that they may have in connection with LB Australia's Note holdings. The Liquidators do not believe that, for example, the Debtors could assert, upon the Settlement Agreement's approval and the dismissal of the U.S. Appeal, that the Summary Judgment Order is binding on the non-Mahogany noteholders under the doctrines of issue or claim preclusion, especially given the reservation of rights in Section 4.5(ii) of the Settlement Agreement, and given the fact that LB Australia is not a party to the Adversary Proceeding and BNY is only a party in its capacity as trustee for the two series of the Mahogany Notes and no other series in the Dante Programme. However, upon information and belief, other holders of non-Mahogany Notes have sought clarification from counsel to the Debtors that the Debtors will not assert that, upon dismissal of the U.S. Appeal, the Summary Judgment Order has any preclusive effect on non-Mahogany noteholders. Upon information and belief, counsel to the Debtors, however, has declined to clarify its intent with respect to the use of the Summary Judgment Order. Therefore, out of an abundance of caution and in accordance with their fiduciary duties to protect the estate of LB Australia, the Liquidators file this Limited Objection.

11. It is axiomatic that an entity not party to an adversary proceeding is not collaterally estopped by the judgment in such adversary proceeding. See In re Chorney, 277 B.R. 477, 489 (Bankr. W.D.N.Y. 2002) (finding that collateral estoppel did not apply to prevent CNA, an insurer, from litigating a claim against the bankruptcy trustee even though similar claims had already been litigated against a different debtor in a prior bankruptcy case because the bankruptcy trustee was not a party to the cases previously litigated); Zois v. Cooper, 268 B.R. 890, 893 (Bankr. S.D.N.Y. 2001) (finding that "due process dictates that collateral estoppel cannot be used against a person who did not have a fair opportunity to litigate an issue decided in a previous proceeding" and that for collateral estoppel to apply, "there must have been a full and fair opportunity to litigate the decision" and "the decision in the prior action must be identical to and decisive of the issue in the instant case"); In re Ames Dept. Stores, Inc., No. 01-42217, 2006 WL 2400107, at *18 (Bankr. S.D.N.Y. June 6, 2006) (quoting Zois, 288 B.R. at 893) (the issue "in the prior action must be identical to and decisive of the issue in the instant action").

12. Similarly, courts in the Second Circuit have consistently held that an entity not party to an adversary proceeding is not barred by the doctrine of res judicata with respect to the judgment in the adversary proceeding. See In re Teltronics Servs., Inc., 18 B.R. 705, 706 (Bankr. E.D.N.Y. 1982) (finding that the "[o]peration of res judicata requires identity of parties" and when "creditors presently represented by the trustee were not parties to the original action, nor were their interests represented therein . . . they [could not] be bound by the dismissal of the action"); In re Worldcom, Inc., 401 B.R. 637, 651 (Bankr. S.D.N.Y. 2009) (citing Teltronics, 18 B.R. at 706).

13. Here, BNY, as trustee for the non-Mahogany Notes, LB Australia, and the Liquidators are not parties to the Mahogany Notes Adversary Proceeding and therefore cannot be

7

bound by the Summary Judgment Order upon dismissal of the U.S. Appeal under the doctrines of issue or claim preclusion.  Nonetheless, the Liquidators raise this Limited Objection to protect against any assertion to the contrary by the Debtors, especially now that the Debtors have commenced the separate September 14 Adversary Proceeding, which essentially seeks a similar declaration with respect to the non-enforceability of the flip clause in the transactional documents underlying the non-Mahogany Notes.  The Liquidators would be severely prejudiced if the Debtors assert in the September 14 Adversary Proceeding or other litigation (or otherwise) that the Summary Judgment Order (upon dismissal of the U.S. Appeal) is binding on any non-Mahogany noteholders, even though the non-Mahogany noteholders did not participate in, and were not parties to, the Mahogany Notes Adversary Proceeding.  Although Section 4.5(ii) of the Settlement purports to reserve the rights of "any holders of notes in the Dante Program (other than the Notes)," given the Debtors' refusal to provide appropriate clarification, the Liquidators believe that express protective language should be added to the Settlement Agreement.

14. Therefore, the Liquidators respectfully request that, in the event that the Court approves the Settlement Motion, sections 4.5(ii) and 16.1 of the Settlement Agreement be amended as follows (modifications shown in bold underline) and that a similar paragraphs be added to any order granting the Settlement Motion:

- <u>Section 4.5(ii) of the Settlement Agreement</u>:

    (ii) nothing in this Deed shall alter, impair, improve or affect the rights of any holders of notes in the Programme (other than the Notes) to assert, the validity of the provisions of the documents relating to such notes (or to defend any challenge to the validity of those provisions) in any proceedings brought in the United States Bankruptcy Court or in any other Court and such rights (if any) of all such holders of notes (and the Trustee, to the extent it acts as trustee for the holders of such notes) are reserved in full (the "**Reserved Rights**") provided always that nothing in this Deed shall constitute any sort of acknowledgement or recognition on behalf of LBSF or the Debtors or any other Party that any of the holders of such notes can make any valid claim or defence in respect of such Reserved

8

Rights **(other than a claim that the Adversary Proceeding Order or an order authorizing this Deed is binding on such holders under the doctrines of issue or claim preclusion)**.

- <u>Section 16.1 of the Settlement Agreement:</u>

Save as set out in **Clause 4.5 with respect to the Adversary Proceeding Order and** Clause 16.2 (*Rights of Third Parties*), no person other than a Party to this Deed shall have any right (whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise) to enforce or enjoy the benefit of any term of this Deed.

## **RESERVATION OF RIGHTS**

15.     The Liquidators expressly reserve, and do not waive, any of their rights, defenses, limitations and/or exclusions in connection with LB Australia's Notes, applicable law or otherwise, in any appropriate forum.

K&E 18093061

WHEREFORE, the Liquidators respectfully request that, in the event the Court approves the Settlement Motion, the Court modify the Settlement Agreement and any order granting the Settlement Motion as set forth herein.

| | |
|---|---|
| New York, New York<br>Dated:  December 8, 2010 | /s/ *James H.M. Sprayregen*<br>James H.M. Sprayregen, P.C.<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, New York  10022-4611<br>Telephone:    (212) 446-4800<br>Facsimile:     (212) 446-4900<br><br>- and -<br><br>Andrew R. McGaan, P.C.<br>David R. Seligman P.C.<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, Illinois 60654<br>Telephone:    (312) 862-2000<br>Facsimile:     (312) 862-2200<br><br>Counsel to Lehman Brothers Australia Limited |