**Hearing Date and Time:  December 15, 2010 at 10:00 a.m. (Eastern)**

NIXON PEABODY LLP
Mark N. Berman
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000

*Counsel to Wellington Management Company, LLP*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————
In re:                                                        )
                                                                   )          Chapter 11
LEHMAN BROTHERS HOLDINGS, INC., et al.,  )
                                                                   )          Case No. 08-13555 (JMP)
                     Debtors.                              )
                                                                   )          Jointly Administered
——————————————————————)

**LIMITED OBJECTION OF WELLINGTON MANAGEMENT COMPANY, LLP TO
DEBTORS' MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY
CODE AND GENERAL ORDER M-390 FOR AUTHORIZATION
TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION PROCEDURES
FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES
TRANSACTIONS WITH SPECIAL PURPOSE VEHICLE COUNTERPARTIES**

Wellington Management Company, LLP ("Wellington") submits this limited objection

(the "Objection") to the above-captioned debtors and debtors-in-possession's (collectively

referred to as "Debtors") Motion Pursuant to Section 105(a) of the Bankruptcy Code and General

Order M-390, for Authorization to Implement Alternative Dispute Resolution Procedures for

Affirmative Claims of the Debtors under Derivatives Contracts Involving Transactions with

Special Purpose Vehicle Counterparties (the "SPV ADR Motion")[1], and it support thereof, states

as follows:

---
[1]    Capitalized terms used, but not defined herein, shall have the meanings given to such terms in the Motion.

## PRELIMINARY STATEMENT

Wellington does not oppose the concept of an alternative dispute resolution ("ADR")
process being applied to disputes between the Debtors and special purpose vehicle ("SPV")
counterparties. However, the proposed ADR process and the form of order presented by the
Debtors will continue the confusion that has existed since the initial ADR order entered by this
Court in these cases regarding the appropriate parties that can be compelled to be involved in the
ADR process for an SPV. Wellington believes that the confusion should be halted.
Accordingly, for the purpose of resolving potential ambiguity, Wellington has filed this Limited
Objection.

## INTRODUCTION

### The Liberty Square CDO Transactions

1.      In March of 2001, Lehman Brothers Financial Products Inc. (the "LBFP"), and
Liberty Square CDO I, Limited, a special purpose company incorporated under the laws of the
Cayman Islands (the "CDO I Issuer"), entered into that certain ISDA Master Agreement, dated
as of March 14, 2001, (together with any schedules, confirmations and credit support annexes,
being collectively referred to herein as the "CDO I Hedge Agreement").[2] Wellington is not a
party to the CDO I Hedge Agreement.

2.      In May of 2001, LBFP and Liberty Square CDO II, Limited, a special purpose company
incorporated under the laws of the Cayman Islands (the "CDO II Issuer"), entered into that
certain ISDA Master Agreement dated as of May 8, 2001, (together with any schedules,
confirmations and credit support annexes, being collectively referred to herein as the "CDO II

---

[2]      Pursuant to that certain indenture dated as of March 14, 2001 (the "CDO I Indenture"), the CDO I Issuer
assigned the CDO I Hedge Agreement to The Bank of New York Mellon Trust Company, National
Association, successor in interest to The Chase Manhattan Bank (the "CDO I Trustee"). Wellington is not a
party to the CDO I Indenture.

Hedge Agreement").[3] Wellington is not a party to the CDO II Hedge Agreement. The CDO I

Hedge Agreement and the CDO II Hedge Agreements are together the "Hedge Agreements".

Lehman Brothers Holdings, Inc. ("LBHI" and, collectively with LBFP, the " Debtors") acted as a

credit support provider by providing a guarantee of its subsidiaries' obligations in both hedge

transactions.

3.    On or about March 14, 2001 and May 8, 2001, respectively,  Wellington entered

into a certain investment advisory agreement (each an "Investment Advisory Agreement";

together the "Advisory Agreements") with the CDO I Issuer and CDO II Issuer, respectively,

pursuant to which Wellington agreed to provide the CDO I Issuer and CDO II Issuer,

respectively, with certain management and advisory services, as limited by the terms and

provisions contained in the applicable Advisory Agreement.

4.    On October 5 and September 15, 2008, respectively, LBFP and LBHI filed

voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the

"Bankruptcy Code").

5.    Under the Hedge Agreements, the commencement of a case under the Bankruptcy

Code by either LBFP or LBHI is an Event of Default (as defined therein).  Consequently,

Wellington, in its capacity as Investment Advisor (as defined in the Investment Advisory

Agreements), on behalf of the applicable issuer, and pursuant to specific authority to do so

contained in the Investment Advisory Agreements, by letters dated October 22, 2008, designated

---

[3]    Pursuant to that certain indenture dated as of May 8, 2001 (the "CDO II Indenture"), the CDO II Issuer
(together with the CDO I Issuer, the "Issuers") assigned the CDO II Hedge Agreement to The Bank of New
York Mellon Trust Company, National Association, successor in interest to The Chase Manhattan Bank (the
"CDO II Trustee") (together with the CDO I Trustee, the "Trustees"). Wellington is not a party to the CDO II
Indenture. The CDO I Indenture and the CDO II Indenture will collectively be referred to herein as the
"Indentures".

such date as the Early Termination Date and terminated the Hedge Agreements.  Pursuant to its

obligations under the Investment Advisory Agreements, Wellington thereafter provided the

termination calculations in accordance with the Hedge Agreements.

       6.      On July 20, 2009, the Debtors filed their first motion (the "<u>Initial Motion</u>") to

establish ADR and settlement procedures with respect to disputes ("<u>Derivatives Disputes</u>")

arising from a multitude of derivatives contracts between various Lehman entities and their

counterparties, such as the Adversary Proceeding.  This Court authorized the ADR procedure by

its order (the "<u>Initial ADR Order</u>") entered on September 17, 2009.

       7.      On April 23, 2010, the Debtors issued ADR Notice No. 159 to certain "Derivative

Counterparties and Related Parties" including the CDO I Issuer, the CDO II Issuer, the CDO I

Trustee, the CDO II Trustee and Wellington.  In the ADR Notice, the Debtors raise two primary

issues.  First, they dispute the enforceability of certain provisions of the Indentures, referred to

by the Debtors as the "flip provisions".  Second, the Debtors make a settlement demand in

connection with the termination payments.

       8.      Since the Debtors issuance of ADR Notice 159, Wellington has repeatedly

notified the Debtors that as Investment Advisor to the Issuers, Wellington has no authority to

resolve the disputes identified in ADR Notice 159 and likewise has no authority or power to

designate a single person to appear in the ADR process on behalf of the Issuers, the Trustees or

Noteholders.  In response, Debtors' counsel advised Wellington that Debtors consider

Wellington a transaction "fiduciary", within the meaning of paragraph 3 of the Initial ADR

Order, and that as a result, Wellington is subject to the Initial ADR Order and the Debtors' ADR

procedures.  Wellington is not, in fact, a fiduciary in connection with the financing arrangements

relating to the Hedge Agreements, within the meaning of the Initial ADR Order, or otherwise.

9.      On or about September 14, 2010, LBFP filed an adversary proceeding (the "<u>Adversary Proceeding</u>"), naming the Trustee, the Issuers, Liberty Square CDO I, Corp., Liberty Square CDO II, Corp., *but not Wellington*, as defendants, in connection with the termination of the Hedge Agreements.  The Adversary Proceeding has been stayed by order of this Court entered at the request of the Debtors.

10.      The Debtors have now filed the SPV ADR Motion in which they represent that they are unable to identify the appropriate parties with authority to fully resolve the Derivatives Disputes pursuant to the Initial ADR Order.  <u>See</u> SPV ADR Motion at 5.  On that basis, the Debtors now ask this Court, *inter alia*, to compel recipients of so-called SPV Derivatives ADR Packages, to identify and designate a person or entity with complete "settlement authority" (in respect of various Derivatives Disputes) under threat of significant sanctions.

11.      Unlike the Initial ADR Order, the Proposed SPV ADR Order accompanying the SPV ADR Motion identifies only: (i) "SPV Derivatives Counterparties", (ii) "SPV Trustees" and (iii) "Noteholders" as recipients of an SPV Derivatives ADR Package that are subject to the Proposed SPV ADR Order.  <u>See</u> <u>e.g.</u>, Proposed SPV ADR Order at 4.  As such, based on the plain language of the Proposed SPV ADR Order, Wellington is not subject to the Proposed SPV ADR Order and the ADR procedures therein.  This is as it should be.  However, given that the current Proposed SPV ADR Order preserves the Debtors' ability to arbitrarily "opt back into" the Initial ADR Order, Wellington submits this Limited Objection, to ensure that Wellington is not improperly subjected to the Debtors' ADR procedures.  The ADR procedures will burden Wellington with costs that it should not be required to bear and force Wellington to incur the risk of sanctions for failing to take actions that Wellington has neither the authority, nor the ability, to take.

## LIMITED OBJECTION

12.     The Proposed SPV ADR Order includes a reference to "SPV Derivatives Counterparty" but does not otherwise define the term.  Wellington believes that reference should be understood to include only the person or entity with whom the Debtor contracted, i.e. the actual signatories to the Hedge Agreements.  However, Wellington's past disagreements with the Debtors inform it to request that the Proposed SPV ADR Order clearly define the term "SPV Derivatives Counterparty" and prohibit the Debtors from deeming Wellington to be included within the meaning of the term "SPV Derivatives Counterparty", thereby causing Wellington to become subject to the Proposed SPV ADR Order.

13.     In addition, Wellington believes that having two possible paths for an ADR process involving SPVs is unnecessary and continues the very confusion that has lead the Debtors to file the SPV ADR Motion.  Accordingly, Wellington objects to that portion of the Proposed SPV ADR Order that allows the Debtors to elect to continue operating under the Initial ADR Order (which Debtors' counsel contends would apply to Wellington).[4]

14.     Without the requested relief,  Wellington may be subject to the ADR procedures even though Wellington is not a contracting counterparty to the Hedge Agreements, or the Indentures, and has no economic stake in the dispute.  Wellington does not have the power or authority under the Investment Advisory Agreements or Indentures to settle the Adversary Proceeding and/or the disputes raised by ADR Notice No. 159.  As a result, Wellington  should not be deemed an SPV Derivatives Counterparty or otherwise subjected to the Debtors' ADR

---

[4]     Should the relief being requested by Wellington in this Limited Objection not be granted, Wellington hereby reserves all of its rights in connection with the Proposed SPV ADR Order, including, without limitation, the right to challenge to the substance and constitutionality of the ADR procedures for SPVs proposed therein and to otherwise supplement or amend the arguments and authorities cited in this Limited Objection.

proceedings. There is simply no legal basis for the Debtors to compel Wellington to undertake settlement obligations that Wellington has not contracted to provide, and has no authority to perform. In re SPM Mfg. Corp., 984 F.2d 1305, 1311 (1st Cir. 1993) ("[S]ection 105(a) [does not] authorize courts to create substantive rights that are otherwise unavailable under the Code, or to expand the contractual obligations of parties."); In re Island Helicopters, Inc., 211 B.R. 453, 464 (Bankr. E.D.N.Y. 1997) ("The filing of a bankruptcy does not expand the debtor's rights against others more than they exist at the commencement of a case").

15.    The Debtors' apparent solution to tagging the wrong party with an SPV Derivatives ADR Package and related settlement obligations is to require the wrongfully served party, under threat of draconian sanctions, to review the applicable trust documents and to undertake a legal determination (with the attendant risks and legal costs of doing so) as to whether any party has "complete settlement authority" in respect of a Derivatives Dispute. Incredibly, under the Proposed SPV ADR Order, a responding party's actual or legal inability to provide a Settlement Participation Designation *that includes a required statement that the Authorized Designee has agreed to participate in the SPV Derivatives Procedures* is sanctionable. See Motion at 5. This is patently unfair to Wellington, which does not have the authority or the means to identify an entity with complete settlement authority, let alone to secure such entity's agreement to participate in the Debtors' ADR process.

16.    The Court must not permit the Debtors to accomplish their settlement agenda "by any means necessary" – including disregarding the substantive rights of real parties in interest and imposing *ultra vires* contractual obligations upon third parties such as Wellington. Furthermore, the Debtors should not be permitted to further confuse the ADR protocol and render it uncertain, by having the unilateral ability to arbitrarily operate under either the Initial

- 8 -

ADR Order or the Proposed SPV ADR Order. If the Debtors' SPV ADR Order is approved, all

parties in any way involved with the SPVs at issue should be entitled to rely upon it, without

reversion to prior orders.

### **PRAYER FOR RELIEF**

WHEREFORE, Wellington requests that this Court: (i) require the Debtors to modify the

Proposed SPV ADR Order to clarify that Wellington is not subject to the Debtors' SPV ADR

procedures,  (ii) include in the Proposed SPV ADR Order a provision that directs that, with

respect to any dispute that is the subject of the SPV ADR Motion, the Proposed SPV ADR Order

shall supercede the Initial ADR Order in all respects and without exception and (iii) grant

Wellington such further relief as the Court deems just appropriate.


Dated: New York, New York
          December 8, 2010

Respectfully Submitted,


By:  /s/ Mark N. Berman
Mark N. Berman
NIXON PEABODY LLP
437 Madison Avenue
New York, NY 10022
Telephone: (212) 940-3000
Facsimile: (212) 940-3111

*Counsel to Wellington Management Company, LLP*