Andrew K. Glenn (AG-9934)
Matthew B. Stein (MS-0062)
KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE LEHMAN BROTHERS HOLDINGS INC., *et al.* <br><br> Debtors. | Chapter 11 <br> Case No. 08-13555 (JMP) |

**LIMITED OBJECTION OF THE BELMONT NOTEHOLDERS TO THE DEBTORS' MOTION PURSUANT TO RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF A SETTLEMENT AMONG LEHMAN BROTHERS SPECIAL FINANCING INC., BNY CORPORATE TRUSTEE SERVICES LIMITED, PERPETUAL TRUSTEE COMPANY LIMITED, AND OTHERS, RELATING TO CERTAIN SWAP TRANSACTIONS WITH SAPHIR FINANCE PUBLIC LIMITED COMPANY**

The Belmont Noteholders, holders of notes issued under the Dante Finance PLC Multi-Issuer Secured Obligation Programme (collectively, the "Belmont Noteholders"),[1] by and through their undersigned counsel, hereby file this limited objection (the "Limited Objection") to the *Debtors' Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure for*

---

[1] The Belmont Noteholders are: Belmont Park Investments Pty Ltd; Ambulance Victoria; Fire and Emergency Services Superannuation Board; Armidale Dumaresq Shire Council; Belreef Holdings Pty Ltd; Broken Hill City Council; Catholic Church Insurances Limited; CCI Investment Management Limited; City of Swan; Clough Superannuation Pty Limited; Eurobodalla Shire Council; G & F Yukich Superannuation Pty Ltd; Gippsland Secured Investments Ltd; G.James Australia Pty Ltd; G.James Superannuation Pty Ltd; Gosford City Council; Guyra Shire Council; Indian Pacific Limited; Lifeplan Friendly Society Limited; Newcastle City Council; Orient Holdings Pty Ltd; Panorama Ridge Pty Ltd; Parkes Shire Council; Sashimi Investments Pty Ltd; Southern Finance Limited; Statewide Secured Investments Ltd; The Cootharinga Society of North Queensland; and Wingecarribee Shire Council. The Belmont Noteholders hold notes issued in the following Series under the Dante Programme: Saphir Finance plc Series 2004-4, Beryl Finance Limited Series 2007-7, Beryl Finance Limited Series 2008-6, Beryl Finance Limited Series 2008-14, Zircon Finance Limited Series 2007-1 Tranche A, Zircon Finance Limited Series 2007-1 Tranche B, Zircon Finance Limited Series 2007-3, Zircon Finance Limited Series 2007-9 Tranche A and Zircon Finance Limited Series 2007-9 Tranche B (collectively, the "Belmont Series"). The outstanding notes under the Belmont Series have a total face value of AUD 250,230,000 of which the Belmont Noteholders own notes with a face value of approximately AUD 104,620,000.

*Approval of a Settlement Among Lehman Brothers Special Financing Inc., BNY Corporate Trustee Services Limited, Perpetual Trustee Company Limited, and Others, Relating to Certain Swap Transactions With Saphir Finance Public Limited Company*, dated November 24, 2010 [Bankr. Dkt. No. 13051] (the "Perpetual Settlement Motion"), and respectfully represent as follows:

## PRELIMINARY STATEMENT

Through this Limited Objection, the Belmont Noteholders seek to preserve their rights against the risk that approval of the Perpetual Settlement Motion could preclude other parties, including the Belmont Noteholders, from litigating the same underlying legal issues in adversary proceedings that LBSF has already commenced (and stayed) in the Bankruptcy Court. BNY, the trustee for the Perpetual notes issued as part of the Dante Programme (as defined below), is one of the parties to the proposed settlement. BNY also serves as trustee for those Belmont notes also issued as part of the Dante Programme, and has been named as a defendant in at least one of the above-referenced adversary proceedings. While the Belmont Noteholders believe that BNY is acting in different representative capacities and no preclusive effect on them should attach, there remains the risk that BNY's support for the settlement and dismissal of the pending appeal potentially will subject the Belmont Noteholders to the preclusive effect of res judicata and collateral estoppel. To avoid litigation over this issue, the Belmont Noteholders asked for written confirmation from counsel to the Debtors that the settlement would not have such a preclusive effect, but the Debtors refused to provide such confirmation.

Accordingly, the Belmont Noteholders seek approval of language to any order approving the Perpetual Settlement Motion, clarifying that neither this settlement nor any other order entered in connection with this adversary proceeing will have a preclusive effect on the

2

Belmont Noteholders.

## FACTUAL BACKGROUND

1.  The transaction underlying the Perpetual Settlement Motion concerns synthetic collateralized debt obligations and related credit default swaps that were designed and marketed by LBSF and other Lehman entities. LBSF's ultimate parent is Lehman Brothers Holdings Inc. ("LBHI"). Under the documents governing the CDOs and swap transactions (the "Transaction Documents"), there were two alternative priorities that could apply to determine who, out of LBSF and noteholders, had priority to recover amounts owed to them by the issuer of the CDO (who was also the swap counterparty to LBSF) from the collateral held for the relevant series. In most circumstances, Swap Counterparty Priority applied. *See, e.g.,* Glenn Decl., Ex. 1 (Supplemental Trust Deed and Drawdown Agreement in respect of Zircon Finance Limited Series 2007-1, dated March 20, 2007 (the "Supplemental Trust Deed") ¶ 5.5). The Transaction Documents, however, provided that if "an Event of Default (as defined in the Swap Agreement) occurs under the Swap Agreement and the Swap Counterparty is the Defaulting Party (as defined in the Swap Agreement)" -- including a bankruptcy filing by *either* LBSF or LBHI -- then Noteholder Priority (as defined below) applied. As set forth below, the Court held that the Priority Clauses applying Noteholder Priority were invalid.

### A.  The Structure of the Transactions.

2.  In 2002, LBSF's English affiliate, Lehman Brothers International (Europe) ("LBIE"), arranged a multi-issuer secured obligation product (the "Dante Programme") which was used by Lehman entities to issue various series of synthetic collateralized debt obligations, or "CDOs." *See* Glenn Decl., Ex. 2 (Principal Trust Deed, dated October 10, 2002 (the "Principal Trust Deed")). As part of the Dante Programme, LBIE created special-purpose entities –

3

including Saphir Finance Public Limited Co. ("Saphir"), Beryl Finance Limited ("Beryl") and Zircon Finance Limited ("Zircon") (each an "Issuer") to issue multiple series of synthetic CDO notes. *See* Glenn Decl., Ex. 3 (Deed of Accession, dated July 18, 2008), Ex. 4 (Deed of Accession, dated July 29, 2008). While the Perpetual Appeal (as defined below) involves two such series of notes issued by Saphir (the "Perpetual Series") and held by Perpetual Trustee Company Limited ("Perpetual"), the Belmont Noteholders hold notes in other series issued by Saphir, Beryl and Zircon under the Dante Programme on substantially the same transactional documentation.

3. As an integral part of each series, the relevant Issuer and LBSF entered into a credit default swap. *See* Glenn Decl., Ex. 5 (Series Prospectus, Zircon Finance Limited Series 2007-1, dated March 20, 2007 ("Series Prospectus") at Annex 3). The swap agreement incorporates the terms of the relevant trust deeds and confirms that the parties are "bound by the[ir] terms." *See* Glenn Decl., Ex. 6 (Schedule to the Master Agreement, dated October 10, 2002 ("ISDA Schedule") at Part 5(g)). Under the swap agreement, LBHI was LBSF's guarantor and credit support provider. LBHI, however, was not a noteholder, swap counterparty or otherwise a creditor of the relevant Issuer.

4. For each series of notes, the Issuer's obligations to the noteholders (under the notes) and to LBSF (under the related swap agreement) are secured by collateral. *See, e.g.,* Glenn Decl., Ex. 2 (Principal Trust Deed ¶ 5). Acting as trustee, BNY holds the collateral for each series for the benefit of the relevant Issuer's various secured creditors for that series, including LBSF and the noteholders for the relevant series (i.e. Perpetual in the Perpetual Series and the Belmont Noteholders in the Belmont Series). *See* Glenn Decl., Ex. 1 (Supplemental Trust Deed ¶ 5.3). The core issue in the Perpetual Appeal is over the enforceability of the

4

Noteholder Priority. *See Brief of Appellant BNY Corporate Trustee Services Ltd.* [App. Dkt. No. __], at 1-5. This same issue applies to the Belmont Noteholders because the documents governing the Belmont Series contain substantially the same terms and have the same Priority Clauses. *See* Glenn Decl., Ex. 1 (Supplemental Trust Deed ¶ 5.5); Glenn Decl., Ex. 5 (Series Prospectus at 44).

5.  Two types of priority govern the right to the net collateral: "Swap Counterparty Priority" (under which LSBF is entitled to priority over the noteholders) and "Noteholder Priority" (under which the noteholders are entitled to priority over LBSF). *See, e.g.,* Glenn Decl., Ex. 1 (Supplemental Trust Deed ¶ 5.5). The Transaction Documents state that if no event of default has occurred under the swap where LBSF is the "Defaulting Party", Swap Counterparty Priority applies, except that if such an event of default has occurred, Noteholder Priority applies. *See, e.g., id.* Critically, and as stated above and affirmed by the English Courts, commencement of a bankruptcy case by either LBHI or LBSF constitutes an event of default under the Transaction Documents that automatically triggers Noteholder Priority. *See* Glenn Decl., Ex. 7 (ISDA Master Agreement, dated October 10, 2002 (the "ISDA Master Agreement") ¶ 5(a)(vii)).

B.  **LBHI and LBSF Bankruptcy Filings**

6.  On September 15, 2008, LBHI filed a petition for relief under Chapter 11 of the Bankruptcy Code. Eighteen days later, on October 3, 2008, LBSF filed its own Chapter 11 petition. Each filing constituted a separate and independent event of default under the relevant swaps for which LBSF is the "Defaulting Party." Each filing would have been sufficient automatically to trigger the operation of Noteholder Priority in the collateral, which, in the circumstances was triggered on September 15, 2008. Each filing also entitled the relevant Issuer to terminate the relevant swap agreement. On December 1, 2008, Saphir exercised its right to

5

early termination of the swap with respect to the Perpetual Series. The Issuers exercised their rights to early termination of the swaps with respect to the Belmont Series in early 2009.[2]

### C. Perpetual And Belmont Noteholders Commence Proceedings in England To Enforce Their Senior Rights to the Collateral.

7. The Transaction Documents are governed by English law, and the parties submitted to the jurisdiction of the English courts therein. *See* Glenn Decl., Ex. 2 (Principal Trust Deed ¶¶ 20.1, 20.2); Glenn Decl., Ex. 1 (Supplemental Trust Deed ¶¶ 13.1, 13.2); Glenn Decl., Ex. 7 (ISDA Master Agreement ¶¶ 13(a), 13(b)). Accordingly, on May 13, 2009, Perpetual commenced an action in the High Court of Justice in the United Kingdom (the "High Court") seeking to require BNY to distribute the collateral in respect of the Perpetual Series pursuant to Noteholder Priority in accordance with the Transaction Documentation. In a separate action, on June 9, 2009 the Belmont Noteholders commenced an action in the High Court seeking the same relief in respect of the Belmont Series. *See* Glenn Decl., Ex. 8 (Claim Form, dated June 9, 2009, *Belmont Park Inv. Pty Ltd & Others v. BNY Corp. Trustee Servs. Ltd.* (Claim No. HC09C01931)). The two proceedings were subsequently heard together, and LBSF was permitted to intervene to argue that Swap Counterparty Priority applied because the Priority Clauses were invalid as a matter of English law. Glenn Decl. Ex. 9 (Order, dated June 19, 2009, *Belmont Park Inv. Pty Ltd & Others v. BNY Corp. Trustee Servs. Ltd.*).

8. By a judgment issued on July 28, 2009, the High Court ruled in favor of Perpetual and the Belmont Noteholders. *See* Glenn Decl., Ex. 10 (*Perpetual Tr. Co. Ltd. v. BNY Corp. Tr. Servs. Ltd.*, [2009] EWHC 1912). The court found as a matter of English law: (i) that separate events of default under the relevant swaps for which LBSF was the Defaulting Party had occurred on September 15, 2008 and October 3, 2008; (ii) that the Priority Clauses were valid,

---

[2] Notice of termination of the swaps were provided in late 2008 and early 2009 with the Early Termination Dates for the swaps falling being between 2 January 2009 and 17 April 2009.

6

effective and enforceable as a matter of English law; and (iii) that, in any event, Noteholder Priority had been triggered automatically when LBHI filed its Chapter 11 petition on September 15, 2008. The High Court expressly rejected LBSF's arguments that the Priority Clauses were invalid under English law and that LBSF's subsequent bankruptcy filing had any effect on the parties' rights. *See id.* ¶¶ 43-46, 49, 54-55.

9. By a judgment issued on November 6, 2009, the English Court of Appeal dismissed LBSF's appeal in respect of items (ii) and (iii) in the paragraph above and affirmed the High Court's ruling. It agreed (i) that the Priority Clauses were valid, effective and enforceable as a matter of English law; and (ii) that, in any event, LBHI's Chapter 11 filing was a "triggering event" for the application of Noteholder Priority and that this occurred "automatically" "some 18 days before LBSF filed for chapter 11." *See* Glenn Decl., Ex. 11 (*Perpetual Tr. Co. Ltd. v. BNY Corporate Tr. Servs. Ltd.*, [2009] EWCA (Civ) 1160) at ¶¶ 69, 74.

10. On March 31, 2010, the Supreme Court of the United Kingdom granted LBSF permission to appeal; the appeal is set for March 2011 and that court is not expected to rule until later in 2011.

**D.   LBSF Files Its Adversary Proceeding Against BNY.**

11. After intervening in the English proceedings, LBSF filed an adversary proceeding against BNY (the "Perpetual Adversary Proceeding") in the Bankruptcy Court. Glenn Decl., Ex. 12 (Complaint, *Lehman Brothers Special Financing Inc. v. BNY Corporate Trustee Services, Ltd.*, Adv. Pro. No. 09-01242 (JMP)). LBSF's complaint sought, among other claims, a declaratory judgment that (i) the Priority Clauses are unenforceable *ipso facto* clauses under Sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code and (ii) giving effect to the Priority Clauses would contravene the automatic stay provisions in Section 362(a) of the Bankruptcy

7

Code. *Id.* at 11-12. The Perpetual Adversary Proceeding was commenced against only BNY as trustee for the Perpetual notes even though BNY also was the trustee for other note series under the Dante Programme (including, but not limited to, the Belmont Series). *See, e.g.,* Glenn Decl., Ex. 2 (Principal Trust Deed).

### E.  This Court Rules In Favor of LBSF.

12.  On January 25, 2010, this Court ruled for LBSF (the "Bankruptcy Opinion"). The Court issued a published decision that it described as "unprecedented" and "break[ing] new ground" and that it anticipated would be "controversial." *Lehman Bros. Special Fin. Inc. v. BNY Corporate Tr. Servs. Ltd.,* 422 B.R. 407, 422 (Bankr. S.D.N.Y. 2010). The Court acknowledged that English law governs the Transaction Documents and that the English courts already had "authoritatively . . . interpreted the Transaction Documents." *Id.* at 416. Nevertheless, the Court declared that the English court's rulings were "inconsistent with the structure of the Transaction Documents" and rejected Noteholder Priority. *Id.* at 418.

13.  On July 19, 2010, the Court entered an order embodying its Memorandum Decision (the "July 2010 Order"), granting summary judgment to LBSF and denying summary judgment to BNY. An appeal followed (the "Perpetual Appeal").

### F.  Dante Litigation Proceedings and the Proposed Settlement.

14.  On October 20, 2010, the Court issued an *Order Staying Avoidance Actions and Granting Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(a)(1)* [Bankr. Court Docket No. 12199], which stayed numerous adversary proceedings (the "Dante Litigation Proceedings"), including *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.* (Adv. Pro. No. 10-03545 (JMP)) (the "Belmont Adversary Proceeding"). BNY, as trustee for the Belmont Series (among others) is a

named defendant, and the issue of the enforceability of the priority clause in the Belmont Series is the central issue of the Belmont Adversary Proceeding.

15. On November 17, 2010, the parties to this action filed a *Joint Motion of Appellees Lehman Brothers Special Financing Inc. and the Official Committee of Unsecured Creditors to Stay Appeal Pending Final Settlement* [App. Dkt. No. __] (the "Appellate Stay Motion") seeking to stay the Perpetual Appeal. Further, on November 24, 2010, LBSF filed a *Motion Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedures for Approval of a Settlement Among Lehman Brothers Special Financing Inc., BNY Corporate Trustee Services Limited, Perpetual Trustee Company Limited and Others, Relating to Certain Swap Transactions With Saphir Finance Public Limited Company* [Bankr. Ct. Dkt. No. 13051] (the "Perpetual Settlement Motion"). The Perpetual Settlement Motion seeks approval of two agreements: (i) the Termination and Settlement Agreement (the "Termination and Settlement Agreement") and (ii) the Settlement Payment Deed (the "Payment Deed" and together with the Termination and Settlement Agreement, the "Settlement"). Once approved, the terms of the Settlement oblige BNY to move jointly with LBSF to dismiss the Perpetual Adversary Proceeding and Perpetual Appeal with prejudice.

16. The Termination and Settlement Agreement specifically provides that "no person other than a Party to this Deed shall have any right . . . to enforce or enjoy the benefit of any term of this Deed". Glenn Decl., Ex. 13 (Termination and Settlement Agreement ¶ 16.1). Further, the agreement specifically preserves the rights of the Debtors with respect to the other series of notes in the Dante Programme, providing that "that nothing in this Deed shall constitute any sort of acknowledgement or recgonition on behalf of LBSF or the Debtors or any other Party that any of the holders of such notes can make any valid claim or defence in respect of such Reserved

9

Rights." *Id.* at ¶ 4.5.

### G. The Belmont Noteholders Seek Assurances That The Settlement Will Not Prejudice Their Litigation Rights.

17. On November 24, 2010, counsel to the Belmont Noteholders sent a letter to LBSF's counsel to express their "concern[] with the potential implications that the [Proposed Settlement] may have on [their] interests. Specifically, the Belmont Noteholders are troubled by the possibility that the Debtors will assert that the [Bankruptcy Opinion] will have a preclusive effect on the Dante Litigation Proceedings and litigation in England based upon res judicata, collateral estoppel and other similar doctrines." *See* Glenn Decl., Ex. 14 (Letter, dated November 24, 2010, from A. Glenn to R. Miller). The letter sought confirmation that LBSF would not use res judicata or collateral estoppel to preclude BNY or the Belmont Noteholders from litigating the issues decided in the Bankruptcy Court's opinion.

18. On December 1, 2010, LBSF's counsel responded that "LBSF declines to provide any confirmation as to its position regarding the preclusive effect of [the Bankruptcy Opinion]." *See* Glenn Decl., Ex. 15 (Letter, dated December 1, 2010, from R. Miller to A. Glenn (the "Miller Letter")).

19. Concurrently with the filing of this Limited Objection, the Belmont Noteholders are filing a Motion to Intervene in the Perpetual Appeal.

### LIMITED OBJECTION

20. The Settlement unnecessarily subjects the Belmont Noteholders and all other similarly situated parties to the risk that the Bankruptcy Opinion will have a preclusive effect upon the pending Dante Litigation Proceedings, including the Belmont Adversary Proceeding, once the Perpetual Appeal is dismissed.

21. This risk is derived from the fact that the Transactional Documents and the

underlying legal issues at stake in the Perpetual Litigation are substantially similar to the Transactional Documents and legal issues that are the subject of the Dante Litigation Proceedings. Inflating this risk is the fact that one of the settling parties, BNY, in its capacity as the trustee for the two series of notes at issue in the Perpetual Litigation, is also the trustee for all of the remaining series of notes issued as part of the Dante Programme. Thus, the Belmont Noteholders face a significant risk that the Bankruptcy Opinion would have a preclusive effect upon the Belmont Adversary Proceeding that would be detrimental to the Belmont Noteholders and their interest in asserting the applicability of Noteholder Priority.

22. Despite efforts of the Belmont Noteholders to assuage their concerns and avoid filing this Limited Objection, LBSF has refused to confirm that the dismissal of the Perpetual Appeal will not have a preclusive effect on the Belmont Noteholders under principles of res judicata and collateral estoppel. *See* Glenn Decl., Ex. 15 (Miller Letter).

23. If the Perpetual Appeal is dismissed without the Belmont Noteholders' involvement, there is the serious potential that the Belmont Noteholders may be exposed to the risks of res judicata, collateral estoppel, stare decisis and evidentiary prejudice. Such a risk mandates the instant objection.

24. This risk outweighs the Belmont Noteholders own belief that BNY, as trustee for the notes held by Perpetual, is acting in an entirely different capacity than BNY, as trustee for the notes held by the Belmont Noteholders, despite the fact that BNY was appointed trustee under all series of notes issued under the Dante Programme pursuant to the same Principal Trust Deed. A determination by the Court binding on LBSF and BNY that the Bankruptcy Court opinion binds BNY only in its capacity as trustee for the Perpetual series and does not bind either BNY, as trustee for the Belmont series, or the noteholders for the Belmont series would eliminate the risk

of the preclusive effect of the Bankruptcy Opinion. *See, e.g.,* Restatement of the Law, Second, Judgments § 36(2) ("A party appearing in an action in one capacity, individual or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in a subsequent action in which he appears in another capacity."). While the Belmont Noteholders believe that BNY is acting in a different capacity, the present risk compels this present objection.

25. The Settlement, in its current form, does not adequately protect this risk. Section 4.5 of the Termination and Settlement Agreement provides that

> [t]he obligations and releases contained in this Deed (and the termination of any agreements or documents) relate only to the Notes, the Swap Transactions and the agreements and other arrangements related thereto (including the Transaction Documents) and do not affect any Party's rights and obligations with respect to any other series in the Programme or any other agreement or arrangement entered into between the Parties. For the avoidance of doubt, (i) nothing in this Clause 4 (Termination and Release) shall relase a Party from its obligations under this Deed and (ii) nothing in this Deed shall alter, impair, improve or affect the rights of any holders of notes in the Programme (other than the Notes) to assert the validity of the provisions of the documents relating to such notes (or to defend any challenge to the validity of those provisions) in any proceedings brought in the United States Bankruptcy Court or in any other Court and such rights (if any) of all such holders of notes (and the Trustee, to the extent it acts as trutee for the holders of such notes) are reserved in full (the "Reserved Rights")

Glenn Decl., Ex. 13 (Termination and Settlement Agreement ¶ 4.5).

26. While the Settlement affirmatively states that nothing in the Termination and Settlement Agreement affects any other party's rights and obligations with respect to any other series in the Dante Programme, the agreement also provides that "no person other than a Party to this Deed shall have the right . . . to enforce or enjoy the benefit of any term of this Deed." Glenn Decl., Ex. 13 (Termination and Settlement Agreement ¶ 16.1).

27. Accordingly, the Settlement provides no comfort to the Belmont Noteholders as

12

they are unable to avail themselves of any language in the Settlement that might benefit them.

28. It is also questionable whether the Settlement even sufficiently protects against the risk that the Bankruptcy Court Opinion (rather than the Settlement) could preclude the Belmont Noteholders and BNY from adequately protecting their contractual rights. While paragraph 4.5 of the Termination and Settlement Agreement refers to "the obligations and releases contained in this Deed," there is no protection against the preclusive use of the Bankruptcy Court Opinion. Glenn Decl., Ex. 13 (Termination and Settlement Agreement ¶ 4.5).

29. To the contrary, the Settlement provides that "nothing in this Deed shall alter, impair, improve or affect the rights of any holders of notes in the Programme (other than the Notes) to assert the validity of the provisions of the documents relating to such notes (or to defend any challenge to the validity of those provisions)." *Id.* Potentially, this preserves the right of LBSF to assert that the Bankruptcy Court opinion precludes BNY from asserting the same legal position that it unsucccessfully argued before the Court in the Perpetual Adversary Proceeeding and unduly jeopardizes the rights of the Belmont Noteholders.

**WHEREFORE**, the Belmont Noteholders respectfully request entry of an order (i) denying the relief sought in the Perpetual Settlement Motion, and (ii) granting the Belmont Noteholders such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 8, 2010

                                      Respectfully submitted,

                                      KASOWITZ, BENSON, TORRES
                                      & FRIEDMAN LLP

                                      By   */s/ Andrew K. Glenn*
                                           Andrew K. Glenn
                                           Matthew B. Stein
                                           1633 Broadway
                                           New York, NY  10019
                                           (212) 506-1700

                                      *Counsel to the Belmont Noteholders*