# EXHIBIT 6

# Schedule
# to the
# Master Agreement

dated as of 10 October 2002
as Amended and Restated on 18 July 2008

between

**Lehman Brothers
Special Financing Inc.
("Party A")**

and

**Dante Finance Public Limited
Company
("Party B")**

## Part 1
## Termination Provisions

In this Agreement:

(a) **Specified Entity.** means in relation to Party A, none; and in relation to Party B, none.

(b) **Credit Support Default.** The "Credit Support Default" provision (Section 5(a)(iii)) will not apply to Party A or to Party B.

(c) **Default under Specified Transaction.** "Specified Transaction" is not applicable to Party A or Party B for any purpose and the "Default under Specified Transaction" provision (Section 5(a)(v)) shall accordingly not apply to Party A or to Party B.

(d) **Cross Default.** The "Cross Default" provision (Section 5(a)(vi)) shall not apply to Party A or Party B.

(e) **Bankruptcy.** The "Bankruptcy" provision (Section 5(a)(vii)) shall apply to Party A and to Party B, but with respect to Party B shall be amended as follows:

   (i) Section 5(a)(vii)(3) shall take effect with the words "other than any assignment in respect of the Mortgaged Property in favour of the Trustee pursuant to the Trust Deed" added at the end thereof;

   (ii) Section 5(a)(vii)(6) and (7) shall take effect with the words "assets on which the liabilities of Party B under the relevant Transaction are secured pursuant to the Trust Deed" substituted for "all or substantially all its assets"; and

   (iii) Section 5(a)(vii)(8) and (9) shall take effect with reference to the other clauses of Section 5(a)(vii) as so amended.

(f) **Merger Without Assumption.** The "Merger Without Assumption" provision (Section 5(a)(viii)) will apply to Party A and Party B.

(g) **Credit Event Upon Merger.** The "Credit Event Upon Merger" provision (Section 5(b)(iv)) will not apply to either Party.

(h) **Automatic Early Termination.** The "Automatic Early Termination" provision of Section 6(a) will not apply to either Party A or Party B.

(i) **Payments on Early Termination.** For the purpose of Section 6(e):

   (i) Second Method will apply; and

(ii)    Market Quotation will apply.

(j)    **Termination Currency.** "Termination Currency" means the currency selected by the Non-defaulting Party or the party which is not the Affected Party, as the case may be, or where there is more than one Affected Party the currency determined by Party A. However, the Termination Currency shall be U.S dollars or one of the currencies in which payments are required to be made in respect of Transactions. If the currency selected is not freely available the Termination Currency shall be U.S. dollars.

(k)    **Additional Termination Event.** None.

(l)    **Separate Agreements.** Section 1(c) shall be deleted and replaced with the following:

"Notwithstanding anything to the contrary in this Agreement, each Transaction is entered into on the basis that the provisions of this Agreement are incorporated by reference into the Confirmation relating to that Transaction so that this Agreement and each Confirmation entered into in relation to the same Series of Notes shall form a single agreement with respect to the Transactions documented by such Confirmations. It is understood that the parties would not enter into any Transaction except on the foregoing terms. References to this "Agreement" mean, with respect to a Transaction entered into in relation to a Series of Notes, this document together with the Confirmation or Confirmations, as the case may be, relating to that Transaction (or, where there is more than one Transaction entered into in relation to the same Series of Notes, those Transactions)."

## Part 2
## Tax Representations

(a) **Payer Tax Representations.** For the purpose of Section 3(e), each of Party A and Party B makes the following representation:

It is not required by any applicable law, as modified by the practice of any relevant governmental revenue authority, of any Relevant Jurisdiction to make any deduction or withholding for or on account of any Tax from any payment (other than interest under Section 2(e), 6(d)(ii) or 6(e)) to be made by it to the other party under this Agreement. In making this representation, it may rely on:

(i) the accuracy of any representations made by the other party pursuant to Section 3(f);

(ii) the satisfaction of the agreement of the other party contained in Section 4(a)(i) or 4(a)(iii) and the accuracy and effectiveness of any document provided by the other party pursuant to Section 4(a)(i) or 4(a)(iii); and

(iii) the satisfaction of the agreement of the other party contained in Section 4(d);

provided that it shall not be a breach of this representation where reliance is placed on (ii) above, and the other party does not deliver a form or document under Section 4(a)(iii) by reason of material prejudice to its legal or commercial position.

(b) **Payee Tax Representations.** For the purpose of Section 3(f),

(i) Party A makes no Payee Tax Representations;

(ii) Party B makes no Payee Tax Representations.

## Part 3
## Agreement to Deliver Documents

Each party agrees to deliver the following documents as applicable:

(a) For the purpose of Section 4(a)(i), tax forms, documents or certificates to be delivered are:

| Party required to deliver document | Form/Document/ Certificate | Date by which to be delivered | Covered by Section 3(d) Representation |
|---|---|---|---|
| Not applicable | Not applicable | Not applicable | Not applicable |

(b) For the purpose of Section 4(a)(ii), other documents to be delivered are:

| Party required to deliver document | Form/Document/ Certificate | Date by which to be delivered | Covered by Section 3(d) Representation |
|---|---|---|---|
| Party A and Party B | Evidence reasonably satisfactory to the other party as to the names, true signatures and authority of the officers or officials signing this Agreement or any Confirmation on its behalf | Upon execution of this Agreement and, if requested, upon execution of any Confirmation | Yes |
| Party B | A certified copy of Party B's Memorandum and Articles of Association, any Credit Support Document, a copy of the Board Minutes of Party B approving the relevant Transaction and a copy of an opinion from the Irish legal advisers to Party B in respect of Party B in form and substance satisfactory to Party A | On or prior to the Effective Date in respect of the relevant Transaction | Yes |
| Party B | A certified copy of the Trust Deed and the Agency Agreement and a copy of the Base Prospectus | Upon execution of this Agreement | Yes |

## Part 4
## Miscellaneous

(a) **Addresses for Notices.** For the purpose of Section 12(a):

    (i) Address for notices or communications to Party A:

| | |
|---|---|
| Address: | Lehman Brothers Special Financing Inc.<br>Suite 400<br>Wilmington<br>Delaware 19808, U.S.A. |

with a copy to:

| | |
|---|---|
| Address: | Lehman Brothers International (Europe)<br>25 Bank Street<br>London, E14 5LE |
| Attn: | General Counsel |
| Fax: | +44 20 7067 8388 |

    (ii) Address for notices or communications to Party B:

| | |
|---|---|
| Address: | Dante Finance Public Limited Company<br>AIB International Centre<br>International Financial Services Centre<br>Dublin 1<br>Ireland |

with a copy to:

| | |
|---|---|
| Address: | McCann FitzGerald<br>Riverside One<br>Sir John Rogerson's Quay<br>Dublin 2<br>Ireland |
| Attn: | Fergus Gillen |

(b) **Process Agent.** For the purpose of Section 13(c):

Party A appoints as its Process Agent Lehman Brothers International (Europe) at its office at 25 Bank Street, London, E14 5LE.

Party B appoints as its Process Agent Lehman Brothers International (Europe) at its office at 25 Bank Street, London, E14 5LE.

(c) **Offices.** The provisions of Section 10(a) will apply to Party A but will not apply to Party B.

(d) **Multibranch Party.** For the purpose of Section 10(c):

A09527883

- 25 -

Party A is not a Multibranch Party.

Party B is not a Multibranch Party.

(e) **Notices.** Section 12(a) shall be amended by deleting from the second and third lines thereof the words "(except that a notice or other communication under Section 5 or 6 may not be given by facsimile or electronic messaging system)".

(f) **Calculation Agent.** The Calculation Agent is Party A unless otherwise agreed in a Confirmation in relation to the relevant Transaction.

(g) **Credit Support Document.** Details of any Credit Support Document:

Party A: To be specified, where relevant, in the Confirmation for the relevant Transaction.

Party B: To be specified, where relevant, in the Confirmation for the relevant Transaction.

(h) **Credit Support Provider.**

Credit Support Provider means in relation to Party A: To be specified, where relevant, in the Confirmation for the relevant Transaction.

Credit Support Provider means in relation to Party B: To be specified, where relevant, in the Confirmation for the relevant Transaction.

(i) **Governing Law.** This Agreement will be governed by and construed in accordance with English law.

(j) **Affiliate.** For the purposes of this Agreement, the parties shall be deemed to have no Affiliates.

(k) **Payment Netting.** Section 2(c)(ii) shall not apply to all Transactions.

## Part 5
## Other Provisions

(a) **Additional Definitions.** Terms defined in the principal trust deed dated 10 October 2002 as amended and restated on 18 July 2008 and as further amended and updated from time to time (the "Trust Deed") between Party B and BNY Corporate Trustee Services Limited (the "Trustee") shall have the same meanings in this Agreement and any Confirmation between the Parties unless otherwise defined herein or therein.

(b) **Representations as to Trust Deed.** There shall be inserted after the words "this Agreement" where they appear in the first, second and fourth lines of Section 3(a)(ii), and where they appear in the first line of Section 3(a)(v), the words "and the Trust Deed" and there shall be inserted after the words "this Agreement" where they last appear in the third line of Section 3(a)(ii) and where they appear in the second line of Section 3(a)(iv), the words "or the Trust Deed".

(c) **Additional Representations as to the Securities.** There shall be inserted in Section 3 after paragraph (f) the following additional paragraph:

"(g) Party B represents that it is the beneficial owner (subject to the charge created by the Trust Deed) of all Securities and it has taken all steps necessary or advisable to create and perfect the security interests required to be created pursuant to the Trust Deed in the Mortgaged Property (including the Securities) (as defined in the Trust Deed), and such security interests have been validly created and perfected. Party B further represents that, except for the security interest in favour of the Holders (as defined in the Trust Deed) and Party A, no person has or will have any right, title, claim or interest (by way of lien, mortgage, pledge, charge, security interest or other encumbrance, or otherwise) in, against, or to the Mortgaged Property.".

(d) **Enforcement.** Only the Trustee may enforce the rights of Party A against Party B, whether the same arise under general law, the Trust Deed or otherwise, and Party A shall not be entitled to proceed directly against Party B unless the Trustee, having become bound to proceed in accordance with the terms of the Trust Deed, fails or neglects to do so.

(e) **Independent Reliance.** Except as provided in Section 3 of this Agreement, Party A and Party B each represents to the other that it is entering into this Agreement and will enter into the relevant Transaction in reliance upon such tax, accounting, regulatory, legal, and financial advice as it deems necessary and not upon any view expressed by the other.

(f) **Change of Account.** Section 2(b) of this Agreement is hereby amended by the addition of the following after the word "delivery" in the first line thereof:

"to another account in the same legal and tax jurisdiction as the original account".

(g) **Limited Recourse.** In relation to each Transaction, each party confirms that it is bound by the terms of the Trust Deed and that the terms of such Trust Deed prevail to the extent they conflict with terms relating to such Transaction. Party A agrees that its recourse against Party B in respect of the relevant Transaction is limited to the assets on which the liabilities of Party B under the relevant Transaction are secured pursuant to the Trust Deed and that its right to enforce the Security created by Party B over those assets is limited as provided in the Trust Deed. If the net proceeds of realisation of the Security are insufficient to meet all claims secured thereon, the obligations of Party B in respect thereof will be limited to such net proceeds and accordingly no debt shall be owed by Party B in respect of any shortfall remaining after realisation of the Security and application of the proceeds in accordance with the Trust Deed. Party A agrees that it shall not be entitled to take any further steps against Party B to recover any such shortfall. Without limiting the foregoing, Party A shall not be entitled to

institute, or join with any other person in bringing, instituting or joining, insolvency proceedings (whether court based or otherwise) in relation to Party B, except as provided in the Trust Deed.

(h) **Transfer in certain events**

    (i) With respect only to transfers by Party A:

    Section 7 is hereby amended by: (1) adding in the third line thereof after the word "party," the words "and the Trustee"; and (2) adding in the second line of subparagraph (a) thereof after the words "assets to," the words "or reorganisation, incorporation, reincorporation, reconstitution, or reformation into or as,"

    (ii) With respect only to transfers by Party B:

    Section 7 shall be deleted and replaced with the following:

    "Subject to Section 6(b)(ii), neither this Agreement nor any interest or obligation in or under this Agreement may be transferred (whether by way of security or otherwise) by Party B, except as otherwise contemplated in the Trust Deed.

    Any purported transfer that is not in compliance with this Section will be void.".

    (iii) There shall be added to the end of the first paragraph of Section 6(b)(ii) the following sentence:

    "If Party B is the Affected Party it may procure the substitution as principal obligor under this Agreement of a company incorporated in another jurisdiction approved by Party A and the Trustee so that such Termination Event ceases to exist."

    (iv) With respect to both Party A and Party B, transfer will only take place if the relevant rating agencies (if any) have confirmed in writing that the outstanding rating of Notes comprising any rated Series will not be adversely affected.

(i) **No Gross Up.** Neither Party A nor Party B will in any circumstances be required to pay additional amounts in respect of any Indemnifiable Tax, or be under any obligation to pay to the other any amount in respect of any liability of such other for or on account of any Tax, and accordingly Section 2(d)(i)(4) and Section 2(d)(ii) of the Agreement shall not apply to the Transaction.

(j) **Tax Event.** The "Tax Event" provisions (Section 5(b)(ii)) will apply to Party A and Party B amended as follows:

    (i) There shall be inserted in place of the words "the party (which will be the Affected Party) will, or there is a substantial likelihood that it will" on the fourth line of Section 5(b)(ii) the words "a party (which will be the Affected Party) would (but for the provisions of Part 5(i) of the Schedule) or there is a substantial likelihood that a party (which will be the Affected Party) would (but for the provisions of Part 5(i) of the Schedule)"; and in place of the words "be required" on the fifth line of Section 5(b)(ii) the following words: "(but for the provisions of Part 5(i) of the Schedule) be required".

    (ii) The "Tax Event Upon Merger" provision (Section 5(b)(iii)) will apply to Party A and Party B, as amended by inserting in place of the word "will" in the second line thereof the words "would (but for the provisions of Part 5(i) of the Schedule)".

    (iii) Section 6(b)(ii), third paragraph will be replaced by the following:

    "Any such transfer by a party under this Section 6(b)(ii) will be subject to and conditional upon (a) the prior written consent of (i) the other party, which consent will not be withheld if such other party's policies in effect at such time would permit it to enter into

transactions with the transferee on the terms proposed and (ii) the Trustee; and (b) the confirmation of the relevant rating agency that the rating of the Notes will not be adversely affected."

(iv) In addition, the following provision shall be inserted as Section 6(b)(v):

"(v) Transfer to Avoid Tax Event. If a Tax Event or a Tax Event Upon Merger occurs with respect to Party A or Party B, Party A shall, unless specified otherwise in the Base Prospectus, Series Prospectus or Final Terms in respect of the relevant Transaction, have the right to require Party B:

(i) to transfer all of its interests and obligations under this Agreement and the relevant Transaction, together with its interests and obligations under the Securities, the Notes, the Programme Agreement, the Trust Deed and the Agency Agreement to another entity, whether or not in the same tax jurisdiction as Party B, which would not have any obligation to withhold or deduct (if Party B is or would be required to make such deduction or withholding) or to which Party A would (but for Part 5(i) of the Schedule) be entitled to make payments free from the relevant deduction or withholding (if Party A is or would otherwise be required to make such withholding or deduction), subject to obtaining the prior written consent of the Trustee; or

(ii) to transfer its residence for tax purposes to another jurisdiction, subject to obtaining the prior written consent of the Trustee.

If Party B is unable to transfer its interests to another party or to transfer its tax residence in accordance with the preceding provisions prior to the 30th day following the date of imposition of such withholding taxes or, if earlier, the 10th day prior to the first day on which either party would otherwise be required to make a payment net of withholding taxes, Party A may, notwithstanding Section 6(b)(iv), designate a day not earlier than such day as an Early Termination Date in respect of the Transaction.".

(k) **Set-off.** Section 6(e) shall be amended to delete the third sentence of the initial paragraph and include the following new Section 6(e)(vi):

"Notwithstanding any right to Set-off, counterclaim or withhold payment between Party A on the one hand, and Party B on the other, whether now or hereafter in existence, each party agrees that all payments required to be made by it under any Transaction shall be made without Set-off, withholding or counterclaim and that it shall not withhold payment or delivery under any Transaction in respect of any default by the other party under any agreement or any amount relating to any agreement between the other party on the one hand and it on the other.".

In witness whereof the parties have executed this Agreement on the respective dates specified below with effect from the date specified on the front cover of this Agreement.

| LEHMAN BROTHERS SPECIAL FINANCING INC. | DANTE FINANCE PUBLIC LIMITED COMPANY |
|---|---|
| By: | By: |
| Name: | Name: |
| Title: | Title: |
| Date: | Date: |

A09527883

- 29 -