# EXHIBIT 12

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Peter Gruenberger

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:                                                         :   Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., *et al.*                        :   Case No. 08-13555 (JMP)
                                                               :
                              Debtors.                         :
                                                               :
---------------------------------------------------------------x

LEHMAN BROTHERS SPECIAL FINANCING INC.         :

                              Plaintiff,                       :

-against-                                                      :   Adversary Proceeding
                                                               :   No.: 09-_____ (JMP)
BNY CORPORATE TRUSTEE SERVICES LIMITED
                                                               :
                              Defendant.
                                                               :
---------------------------------------------------------------x

## COMPLAINT

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF"), a debtor and debtor in possession in the above-captioned jointly administered chapter 11 case of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors," and collectively with its

nondebtor affiliates "Lehman"), by and through undersigned counsel, hereby brings this Complaint for declaratory judgment against BNY Corporate Trustee Services Limited ("Defendant" or "BNY").

PRELIMINARY STATEMENT

1. LBSF files this adversary proceeding to prevent certain unenforceable *ipso facto* clauses from improperly modifying LBSF's right to priority of payments under certain swap agreements solely because it filed a chapter 11 bankruptcy case. Under at least two transactions in a series of swap agreements known as the "Dante program," LBSF would be subordinated beneath noteholders solely because of its bankruptcy filing. The two transactions, Saphir Finance Public Limited Company Series 2006-5 and 2004-11, provide for modification of LBSF's priority of payment rights when an "Event of Default" has occurred. The agreements expressly include the filing of a bankruptcy petition as an Event of Default. Therefore, as a direct result of its bankruptcy filing, LBSF's right to payment priority is in imminent danger of being modified, with the resulting loss of approximately AUD $90 million (or USD $70 million) to the bankruptcy estate and its creditors. The Court should declare that these provisions constitute unenforceable *ipso facto* clauses that inappropriately effect a modification of a debtor's interest in a contract because of a bankruptcy filing in violation of 11 U.S.C. §§ 365(e)(1) and 541(c)(1)(B).

2. The provisions do not fall within the limited "safe-harbor" for *ipso facto* clauses in swap agreements contained in 11 U.S.C. § 560 because that provision only protects "the liquidation, termination, or acceleration" of swap agreements or the "offset or net out" of the parties' positions under the agreements. The modification of LBSF's priority of payments as a result of its bankruptcy filing does not constitute a "liquidation, termination, or acceleration" of

the agreement, and nor is it an "offset or net out" of the parties' positions. Rather, by changing LBSF's priority of payments, the clause improperly modifies LBSF's rights under the contracts solely because of its bankruptcy filing, which §§ 365(e)(1) and 541(c)(1)(B) expressly forbid.

3.    Modification of LBSF's payment priority also violates the automatic stay under 11 U.S.C. § 362(a)(3) because it improperly exercises control over the property of LBSF's estate.

4.    LBSF is seeking declaratory relief to prevent BNY, as Trustee under the transactions, from modifying LBSF's payment priority in accordance with the unenforceable *ipso facto* clauses, and to prevent a violation of the automatic stay.

## PARTIES

5.    Plaintiff LBSF is a Delaware corporation with its former principal business address at 745 Seventh Avenue, New York, NY 10019 and its current principal business address at 1271 Avenue of the Americas, 46th Floor, New York, NY 10020.

6.    Upon information and belief, Defendant BNY is a company organized under English law with its principal office in London. It has submitted to the jurisdiction of this Court by entering a notice of appearance and participating in proceedings before this Court, including by filing an objection to the Debtors' motion to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts. Dkt. 1728, 1892. BNY is an affiliate of Bank of New York Mellon, a Delaware corporation with its principal place of business in New York, NY.

## JURISDICTION AND VENUE

7.    The Court has subject-matter jurisdiction over this proceeding under 28 U.S.C. §§ 157, 1334. This is a "core proceeding" under 28 U.S.C. § 157(b).

8.    Venue is proper under 28 U.S.C. §§ 157(a), 1408, and 1409.

9. The statutory prerequisites for the relief requested herein are sections 105(a), 362(a)(3), 365(e)(1), 541(c)(1)(B), and 560 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"), section 2201 of Title 28 of the United States Code, Federal Rule of Civil Procedure 57, and Rules 7001 and 9006 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

10. Lehman was formerly the fourth largest investment bank in the United States. For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients, and individuals worldwide. Lehman's headquarters in New York and regional headquarters in London and Tokyo were complemented by a network of offices in North America, Europe, the Middle East, Latin America, and the Asia Pacific region.

11. Commencing on September 15, 2008, LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. LBSF commenced its case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 3, 2008. LBHI's and LBSF's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).

12. LBSF and LBHI are authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

13. BNY entered into a Principal Trust Deed dated October 10, 2002 as amended and restated on July 18, 2008, with Dante Finance Public Limited Company ("Dante") pursuant to which a multi-issuer secured obligation program (the "Dante Program") was established. Ex. A

(Principal Trust Deed). Under the program, Dante issued secured Notes (the "Notes") to borrow, buy, sell or enter into other secured obligations, including swaps. BNY serves as Trustee under the program.[1] Ex. A at 1. One of the Issuers of Notes under the Dante program was Saphir Finance Public Limited Company ("Saphir"), an Irish corporation that issued the relevant Notes in this case, credit-linked synthetic portfolio notes that are tied to the credit-default swap transactions in the Saphir 2004-11 and Saphir 2006-5 transactions. Ex. B §§ 1.1, 1.3 (Saphir 2004-11 Supp. Trust Deed); Ex. C §§ 1.1, 1.3 (Saphir 2006-5 Supp. Trust Deed) (collectively, the agreements underlying the Saphir 2004-11 and Saphir 2006-5 transactions are referred to as the "Transaction Documents").[2] LBSF is the swap counterparty ("Swap Counterparty") under the transactions. Ex. B at 1 (Saphir 2004-11 Supp. Trust Deed); Ex. C at 1 (Saphir 2006-5 Supp. Trust Deed).

14. Under the ISDA Master Agreement & Schedule, the bankruptcy filing of any party is defined as an "Event of Default." Ex. D § 5(a)(vii) (ISDA Master Agreement). Ordinarily, absent any Event of Default by LBSF, "Swap Counterparty Priority" applies, which provides that LBSF receives any payments before noteholders. Ex. A § 6.2(i) (Principal Trust Deed); Ex. A Schedule 2, Pt. C § 4(b)(i) (Principal Trust Deed). However, upon an Event of Default by LBSF, such as its bankruptcy filing, the Supplemental Trust Deed and Drawdown

---

[1] BNY acquired J.P. Morgan Corporate Trustee Services Limited and succeeded it as Trustee under the Supplemental Trust Deeds. *See* Ex. A (Principal Trust Deed); Ex. B (Saphir 2004-11 Supp. Trust Deed); Ex. C (Saphir 2006-5 Supp. Trust Deed).

[2] The various Transaction Documents provide that they are governed by English law and that disputes "may be brought in [English] courts," but also specify that this provision "shall not limit the right of any of [the parties] to take Proceedings in any other court of competent jurisdiction nor shall the taking of Proceedings in any one or more jurisdictions preclude the taking of Proceedings in any other jurisdiction (whether concurrently or not)." Ex. C §§ 14.1, 14.2 (Saphir 2006-5 Supp. Trust Deed); Ex. B §§ 14.1, 14.2 (Saphir 2004-11 Supp. Trust Deed); Ex. A §§ 20.1, 20.2 (Principal Trust Deed).

Agreements applicable to the Transaction Documents provide that LBSF's payment priority would change from "Swap Counterparty Priority" to "Noteholder Priority." Ex. B § 5.5 (Saphir 2004-11 Supp. Trust Deed); Ex. C § 5.5.1 (Saphir 2006-5 Supp. Trust Deed). Under Noteholder Priority, LBSF is effectively subordinated so that it would receive payments, if any, after payments are made to noteholders. Ex. A § 6.2(iii) (Principal Trust Deed); Ex. A Schedule 2, Pt. C § 4(b)(iii) (Principal Trust Deed).[3]

15. In addition, modification of the Early Redemption Amount under Condition 44 of the Terms and Conditions of the Notes detrimentally affects LBSF and further effectuates an inappropriate subordination of LBSF in the Event of Default by LBSF. Ex. C at Schedule 2, Terms & Conditions of the Notes, Condition 44; *see also* Ex. A, Schedule 2, Pt. C § 6(g) (defining Early Redemption Amount).

16. Together, the Transaction Documents have the effect of providing that the payment priority LBSF otherwise receives under the Transaction Documents will be modified so that LBSF will be paid out in a lower priority to payments made to the noteholders solely as a result of its bankruptcy filing.

17. After LBSF's bankruptcy filing, counsel for the Debtors sent a letter on November 25, 2008 to the Bank of New York Mellon Trust Company, National Association, and the Bank of New York Mellon notifying them that (a) any actions with respect to transactions in which BNY serves as trustee may be subject to the automatic stay provisions of 11 U.S.C. § 362,

---

[3] The Terms and Conditions of the Notes, contained in Schedule 2 Part C of the Principal Trust Deed and Schedule 2 to the Supplemental Trust Deed of the Saphir 2006-5 transaction, also provide for the same modification of LBSF's payment priority. Ex. A Schedule 2, Pt. C § 4(b)(i), (iii) (Principal Trust Deed); Ex. C at Schedule 2, Terms & Conditions of the Notes, Condition 38 (Saphir 2006-5 Supp. Trust Deed).

and (b) any provisions purporting to subordinate any amounts payable to LBSF would be unenforceable and unlawful. Ex. E (Nov. 25, 2008 Letter from L. Fife to BNY Mellon).

18. On December 1, 2008, Saphir, as issuer of the Notes, sent putative notices to LBSF stating that LBSF's filing of its bankruptcy petition constituted an Event of Default under the ISDA Master Agreement and designating December 1, 2008 as the early termination date under that agreement. Ex. F (Saphir 2006-5 Termination Notice); Ex. G (Saphir 2004-11 Termination Notice). No distributions under the Transaction Documents have occurred since Saphir sent its notices. Because the parties continue to have unperformed obligations under them, the Transaction Documents were and remain existing executory contracts.

19. On May 13, 2009, Perpetual Trustee Company Limited, an Australian noteholder under the Transaction Documents, in an effort to seek control of the Debtors' property but circumvent the proper forum—this Bankruptcy Court—filed a claim in the High Court of Justice Chancery Division, Royal Courts of Justice, in London seeking an order that BNY must pay it in accordance with Noteholder Priority under the Principal Trust Deed. Ex. H (Perpetual Claim).

20. If LBSF's right to payment priority is modified as a result of its bankruptcy filing, and Noteholder Priority is applied, LBSF would receive no payments given that amounts that would be due to Noteholders would exceed available funds. The resulting loss to LBSF's bankruptcy estate and its creditors would be approximately AUD $50 million (or USD $39 million) for the Saphir 2004-11 transaction and approximately AUD $40 million (or USD $31 million) for the Saphir 2006-5 transaction. The total loss to the estate under both transactions would be AUD $90 million (or USD $70 million).

21. LBSF files this complaint seeking a declaration that these provisions modifying LBSF's payment priority solely because of the commencement of its bankruptcy case are

unenforceable *ipso facto* clauses and that any action to enforce these provisions violates the automatic stay.

### COUNT I
*(Declaratory Judgment—Provisions Modifying LBSF's Payment Priority as a Result of Its Bankruptcy Filing Are Unenforceable Ipso Facto Clauses)*

22.  LBSF repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter fully set forth at length.

23.  The provisions in the Transaction Documents modifying LBSF's right to priority of payment under the Transaction Documents as a result of its bankruptcy filing constitute unenforceable *ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and 541(c)(1)(B).

24.  The Bankruptcy Code protects debtors from being penalized for filing a chapter 11 case, notwithstanding any contractual provisions or applicable law that would have that effect. Under § 365(e)(1), the Bankruptcy Code provides that

> [n]otwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated *or modified*, and any right or obligation under such contract or lease may not be terminated *or modified*, at any time after the commencement of the case solely because of a provision in such contract or lease that is conditioned on— . . . (B) the commencement of a case under this title . . . .

11 U.S.C. § 365(e)(1) (emphases added).

25.  Similarly, § 541(c)(1) recognizes that a debtor's interest in property:

> becomes property of the estate . . . notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law— . . . (B) that is conditioned on . . . the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

11 U.S.C. § 541(c)(1).

26.  Because the provisions in the Transaction Documents (a) condition LBSF's payment priority solely on "the commencement of a case" under the Bankruptcy Code, (b)

operate after LBSF's commencement date, and (c) modify LBSF's property interest in the right to receive payments under the agreements' otherwise applicable Swap Counterparty Priority, the provisions are unenforceable *ipso facto* clauses. *See* 11 U.S.C. §§ 365(e)(1), 541(c)(1)(B).

27.  On their face, the provisions in the Transaction Documents also inappropriately "effect[ ] or give[ ] an option to effect a forfeiture, modification, or termination of the debtor's interest in property" solely as a result of "the commencement of a case under [Title 11]" in violation of 11 U.S.C. §§ 365(e)(1) and 541(c)(1)(B).

28.  The provisions do not fall within the limited "safe-harbor" for *ipso facto* clauses in swap agreements, because section 560 of the Bankruptcy Code protects only "[t]he exercise of any contractual right of any swap participant or financial participant to cause the liquidation, termination, or acceleration of one or more swap agreements because of [the filing of a bankruptcy case]" or the "offset or net out [of] any termination values or payment amounts." 11 U.S.C. § 560. The *modification* of LBSF's payment priority solely as a result of its bankruptcy filing does not constitute a "liquidation, termination, or acceleration" of the agreement, nor is it an "offset or net out" of the parties' positions under those agreements. Rather, by changing LBSF's payment priority and subordinating LBSF to noteholders, the clause improperly modifies LBSF's property interest solely as a result of its bankruptcy filing, which is not within the safe harbor of section 560 but is clearly impermissible under sections 365(e)(1) and 541(c)(1)(B).

29.  The Court should declare that the provisions in the Swap Agreement modifying LBSF's payment priority are unenforceable pursuant to sections 365(e)(1) and 541(c)(1)(B).

30.  There is an actual controversy between the parties on this issue because the Transaction Documents require BNY to modify LBSF's payment priority in violation of the

Bankruptcy Code, and noteholders are actively seeking to enforce these provisions in an incorrect forum to the detriment of the estate and its creditors.

31. Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, LBSF requests that this Court enter a declaratory judgment that the provisions in the Swap Agreement modifying LBSF's payment priority constitute unenforceable *ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and 541(c)(1)(B) and that LBSF is entitled to payment under Swap Counterparty Priority.

## COUNT II
*(Declaratory Judgment—Provisions Modifying LBSF's Payment Priority as a Result of Its Bankruptcy Filing Violate the Automatic Stay)*

32. LBSF repeats and realleges each and every allegation set forth in the preceding paragraphs with the same force and effect as if hereinafter fully set forth at length.

33. The provisions modifying LBSF's payment priority as a result of its bankruptcy filing are not only unenforceable *ipso facto* clauses, but any action to enforce those provisions also violates the automatic stay under 11 U.S.C. § 362(a). Any action to exercise control over assets of LBSF's estate is subject to the automatic stay upon the commencement of a case under the Bankruptcy Code. LBSF's rights to payments under the Transaction Documents are substantial assets of the estate, and any action by a party to exercise control over those assets is subject to the automatic stay. *See* 11 U.S.C. § 362(a).

34. Further, the provisions improperly seek to take property of LBSF because of its bankruptcy filing. Property of a debtor becomes property of the estate, "notwithstanding any provision in an agreement . . . (B) that is conditioned . . . on the commencement of a case under this title . . . and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property." 11 U.S.C. § 541(c)(1). By modifying LBSF's payment priority, its property interests are being forfeited because of "the commencement of a case under

this title." This violates not only sections 541(c)(1)(B) and 365(e)(1), but also the automatic stay in section 362(a).

35.  There is an actual controversy between the parties on this issue because the Transaction Documents require BNY to modify LBSF's payment priority in violation of the Bankruptcy Code, and noteholders are actively seeking to enforce these provisions in an incorrect forum to the detriment of the bankruptcy estate and its creditors.

36.  Accordingly, pursuant to 28 U.S.C. § 2201 and Bankruptcy Rule 7001, LBSF requests that this Court enter a declaratory judgment that any modification of LBSF's payment priority under the Transaction Documents constitutes a willful violation of the automatic stay under section 362(a)(3).

### PRAYER FOR RELIEF[4]

WHEREFORE, LBSF respectfully requests that the Court grant the following relief:

A.  For declaratory judgment that the provisions in the Transaction Documents modifying LBSF's right to priority of payments under the Transaction Documents as a result of its bankruptcy filing constitute unenforceable *ipso facto* clauses that violate 11 U.S.C. §§ 365(e)(1) and 541(c)(1)(B) and that LBSF is entitled to payment under Swap Counterparty Priority.

B.  For declaratory judgment that any action to enforce the provisions in the Transaction Documents modifying LBSF's right to priority of payments

---

[4] LBSF reserves the right to amend the complaint to state additional causes of action for damages including, without limitation, automatic-stay violations.

under the Transaction Documents as a result of its bankruptcy filing violates the automatic stay under 11 U.S.C. § 362(a).

C. And for such other relief as the Court deems just and proper, including costs and attorneys' fees.

Respectfully submitted,

/s/ Ralph I. Miller
Ralph I. Miller
Peter Gruenberger
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Dated: New York, New York
May 20, 2009