# EXHIBIT 13

THE CONTENTS OF THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**EXECUTION VERSION**

___ NOVEMBER 2010

## TERMINATION AND SETTLEMENT AGREEMENT
in respect of the Swap Transactions and the related
Series 2004-11 AUD 75,000,000 Synthetic Portfolio Notes due 2011 and
Series 2006-05 AUD 50,000,000 Synthetic Portfolio Notes due 2011
each issued by Saphir Finance Public Limited Company

between

**LEHMAN BROTHERS SPECIAL FINANCING INC.**
("LBSF")

**SAPHIR FINANCE PUBLIC LIMITED COMPANY**
(the "Issuer")

**BNY CORPORATE TRUSTEE SERVICES LIMITED**
(formerly J.P. Morgan Corporate Trustee Services Limited)
(the "Trustee")

**THE BANK OF NEW YORK MELLON, LONDON BRANCH**
(as successor to JPMorgan Chase Bank, N.A., London Branch)
(the "Issuing and Paying Agent" and "Custodian")

**THE BANK OF NEW YORK MELLON (IRELAND) LIMITED**
(formerly BNY Financial Services plc as successor to J.P. Morgan Bank (Ireland) plc)
(the "Paying Agent")

**PERPETUAL TRUSTEE COMPANY LIMITED**
(the "Noteholder")

**LEHMAN BROTHERS HOLDINGS INC.**
(the "Credit Support Provider")

**LBHI ESTATES LTD**
(the "Disposal Agent")

# WEIL, GOTSHAL & MANGES

One South Place   London   EC2M 2WG
Tel: +44 (0) 20 7903 1000   Fax: +44 (0) 20 7903 0990

www.weil.com

## TABLE OF CONTENTS

Page

1    DEFINITIONS AND INTERPRETATION ................................................................. 4

2    CONDITIONS PRECEDENT AND EFFECTIVE DATE ...................................... 11

3    WITHDRAWAL OF PROCEEDINGS ...................................................................... 12

4    TERMINATION AND RELEASE ............................................................................. 14

5    SETTLEMENT SUMS ................................................................................................ 17

6    PAYMENTS .................................................................................................................. 18

7    ACCOUNT DETAILS ................................................................................................. 20

8    NO SET-OFF ................................................................................................................ 20

9    REPRESENTATIONS AND WARRANTIES ......................................................... 21

10   AUTHORISATION AND RELEASE OF SECURITY ........................................... 22

11   HOLD HARMLESS ..................................................................................................... 23

12   ENTIRE AGREEMENT .............................................................................................. 24

13   CONFIDENTIALITY ................................................................................................. 24

14   NOTICES ...................................................................................................................... 26

15   COUNTERPARTS ....................................................................................................... 28

16   RIGHTS OF THIRD PARTIES .................................................................................. 28

17   GENERAL .................................................................................................................... 28

18   GOVERNING LAW AND JURISDICTION ........................................................... 29

SCHEDULE 1   2004-11 Confirmation ............................................................................. 30

SCHEDULE 2   2006-05 Confirmation ............................................................................. 31

SCHEDULE 3   Series Costs ................................................................................................ 32

SCHEDULE 4   2004-11 Guarantee .................................................................................... 33

SCHEDULE 5   2006-05 Guarantee .................................................................................... 34

SCHEDULE 6   Sale Procedures ......................................................................................... 35

SCHEDULE 7   Form of Extraordinary Resolution ......................................................... 38

EXECUTION .......................................................................................................................... 39

i

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**THIS AGREEMENT** is made as a deed on ___ November 2010 (this "**Deed**") between the following parties:

(1)  **LEHMAN BROTHERS SPECIAL FINANCING INC.** a corporation formed in the State of Delaware, United States of America and whose principal place of business is at 1271 Avenue of the Americas, 40th Floor, New York, NY 10020, United States of America ("**LBSF**");

(2)  **SAPHIR FINANCE PUBLIC LIMITED COMPANY** a public limited company incorporated in Ireland whose registered office is at AIB International Centre, International Financial Services Centre, Dublin 1, Ireland (the "**Issuer**");

(3)  **BNY CORPORATE TRUSTEE SERVICES LIMITED (formerly J.P. Morgan Corporate Trustee Services Limited)** in its capacity as trustee under the Trust Deeds (as defined below) (the "**Trustee**");

(4)  **THE BANK OF NEW YORK MELLON, LONDON BRANCH (as successor to JPMorgan Chase Bank, N.A., London Branch)** in its capacity as issuing and paying agent and custodian under the Trust Deeds (the "**Issuing and Paying Agent**" and the "**Custodian**", respectively);

(5)  **THE BANK OF NEW YORK MELLON (IRELAND) LIMITED (formerly BNY Financial Services plc as successor to J.P. Morgan Bank (Ireland) plc)** in its capacity as the paying agent under the Trust Deeds (the "**Paying Agent**" and together with the Issuing and Paying Agent and the Custodian, the "**Agents**");

(6)  **PERPETUAL TRUSTEE COMPANY LIMITED** a limited company incorporated in the Commonwealth of Australia with company number ABN 42 000 001 007 whose registered office is at Level 12 Angel Place, 123 Pitt Street Sydney, New South Wales, Australia (the "**Noteholder**");

(7)  **LEHMAN BROTHERS HOLDINGS INC.** a corporation formed in the State of Delaware, United States of America and whose principal place of business is at 1271 Avenue of the Americas, 40th Floor, New York, NY 10020, United States of America (the "**Credit Support Provider**"); and

(8)  **LBHI ESTATES LTD** a private company incorporated in England and Wales whose registered office is at c/o Puxon Murray LLP, 1 Royal Exchange Avenue, London EC3V 3LT, UK in its capacity as disposal agent pursuant to Clause 4.1 (*Sale of Collateral*) (the "**Disposal Agent**"),

each a "**Party**" and together the "**Parties**".

**WHEREAS**

(A)  Commencing on 15 September 2008 and thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates, including LBSF, each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**" and the "**Bankruptcy Cases**").

(B)  On 16 December 2008, the court having jurisdiction over the Bankruptcy Cases (the "**Bankruptcy Court**") entered an order pursuant to Sections 105 and 365 of the

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

Bankruptcy Code to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts.

(C)    Pursuant to an order of the High Court of Justice in England and Wales dated 3 April 2007 with effect from 19 May 2007 (the "**Court Order**") all rights and obligations of JPMorgan Chase Bank, N.A., London Branch in any capacity in relation to all documents entered into in connection with the Programme (as defined below) (including all the existing series of notes) were transferred to The Bank of New York (now known as The Bank of New York Mellon), in the manner and to the extent provided in the Court Order.

(D)    Dante Finance Public Limited Company ("**Dante**") and the Trustee are parties to a principal trust deed dated 10 October 2002, as amended and restated from time to time, to which the Issuer has acceded pursuant to: (i) a deed of accession dated 9 April 2003 (in respect of the 2004-11 Notes) (the "**2004-11 Accession Deed**"); and a deed of accession dated 22 July 2005 (in respect of the 2006-05 Notes) (the "**2006-05 Accession Deed**" and, together with the 2004-11 Accession Deed, the "**Accession Deeds**"), establishing a programme (the "**Programme**") for the issuance from time to time of secured notes (the principal trust deed dated 10 October 2002, as amended and restated from time to time, as acceded to by the Issuer pursuant to the Accession Deeds, the "**Principal Trust Deed**"). Pursuant to clause 2.7 of the Principal Trust Deed, the Issuer has authorised and issued: (a) its Series 2004-11 AUD 75,000,000 Synthetic Portfolio Notes due 2011 (the "**2004-11 Notes**"); and (b) its Series 2006-05 Synthetic Portfolio Notes due 2011 extendable up to 2016 (the "**2006-05 Notes**" and, together with the 2004-11 Notes, the "**Notes**") each as constituted and secured by the relevant Supplemental Trust Deed.

(E)    LBSF and the Issuer entered into two swap transactions (described more particularly in Recitals (G) and (H) below) governed by an ISDA Master Agreement and Schedule to the ISDA Master Agreement dated as of 10 October 2002 as amended and restated (the "**Master Agreement**") between LBSF and Dante to which the Issuer has acceded under the Accession Deeds.

(F)    LBSF and the Issuer also entered into a credit support annex to the Master Agreement in connection with each of the 2004-11 Notes and the 2006-05 Notes (together, the "**Credit Support Annexes**") and a guarantee of LBSF's obligations in respect of each of the Swap Transactions was provided by the Credit Support Provider pursuant to the Credit Support Documents.

(G)    LBSF and the Issuer entered into a credit derivative transaction pursuant to the Master Agreement relating to the 2004-11 Notes with a trade date of 9 December 2004, an effective date of 10 December 2004 and a scheduled termination date of 10 December 2011 (the "**2004-11 Swap Transaction**") as evidenced by a confirmation dated 10 December 2004, a copy of which is attached in Schedule 1 (*2004-11 Confirmation*) (the "**2004-11 Confirmation**").

(H)    LBSF and the Issuer also entered into a credit derivative transaction pursuant to the Master Agreement relating to the 2006-05 Notes with reference number 538204L, an effective date of 17 March 2006 and a scheduled termination date of 17 March 2011 (the "**2006-05 Swap Transaction**" and, together with the 2004-11 Swap Transaction, the "**Swap Transactions**") as evidenced by a confirmation dated 17 March 2006, a

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

copy of which is attached in Schedule 2 (*2006-05 Confirmation*) (the "**2006-05 Confirmation**" and, together with the 2004-11 Confirmation, the "**Confirmations**").

(I)    In connection with the Swap Transactions and the Notes, the Noteholder, LBSF and the Trustee are parties to an action before: (a) the High Court of Justice Chancery Division claim number HC09C01612 (the "**UK High Court Proceedings**"); (b) the Court of Appeal with appeal number A3/2009/1794 (the "**Court of Appeal Proceedings**"); and (c) the Supreme Court of the United Kingdom with appeal number UKSC 2009/0221 (the "**UK Supreme Court Proceedings**" and, together with both of the UK High Court Proceedings and the Court of Appeal Proceedings, the "**UK Proceedings**").

(J)    Furthermore, and also in connection with the Swap Transactions and the Notes, LBSF, the Committee and the Trustee are parties to (a) an adversary proceeding before the United States Bankruptcy Court Southern District of New York, Adv. Proc. No. 09-01242 (JMP) (the "**US Bankruptcy Court Proceedings**"); and (b) a bankruptcy appeal before the United States District Court Southern District of New York, Case No. M47 (the "**District Court Proceedings**" and, together with the US Bankruptcy Court Proceedings, the "**US Proceedings**").

(K)    LBSF and the Noteholder have jointly instructed the Settlement Payment Agent pursuant to the Settlement Payment Deed (as defined below) (the terms of which are confidential between the parties thereto), whereby the Settlement Payment Agent has agreed, among other things, to receive the Termination and Redemption Payments otherwise due to each of LBSF and to the Noteholder from the Issuer in connection with the sale of the Securities Collateral, the redemption of the Notes and the termination of the Swap Transactions.

(L)    Pursuant to two letters, each dated 1 December 2008 headed "Form of Early Termination Notice", the Issuer designated 1 December 2008 as the Early Termination Date in respect of each of the Swap Transactions.

(M)    Notwithstanding the terms of the Swap Documents, LBSF and the Issuer wish to acknowledge the termination of the Swap Transactions, to terminate the Swap Documents and the Trust Deeds and wish to settle fully and finally all matters arising in respect of the UK Proceedings and the US Proceedings (all with effect from and including the Actual Payment Date) and to confirm the terms of the settlement of the Swap Transactions, in consideration of the promises made herein and, more particularly, of the payment by the Issuer to the Settlement Payment Agent of the Termination and Redemption Payments (each as defined below).

(N)    The Issuer is entering into this Deed on the direction of the Noteholder pursuant to an extraordinary resolution substantially in the form attached at Schedule 7 (*Form of Extraordinary Resolution*) (the "**Extraordinary Resolution**"), and with the agreement of LBSF.

(O)    The Trustee is entering into this Deed at the request of LBSF and on the direction of the Noteholder acting pursuant to the Extraordinary Resolution.

**IT IS AGREED** as follows

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

## 1    DEFINITIONS AND INTERPRETATION

1.1    In this Deed:

"**Accession Deeds**" has the meaning given to such term in Recital (D).

"**Actual Payment Date**" means the date on which the payments referred to in Clause 6.2 (*Payments*) are paid by or on behalf of the Issuer in accordance with the terms of this Deed (and, if paid on more than one day, then on the day on which the last such payment is made).

"**Affiliates**" means (a) in the case of a Party, other than the Noteholder, LBSF, the Disposal Agent and the Credit Support Provider, a subsidiary or associated company of that Party or entity in any way related to that Party; (b) in the case of the Noteholder, any Related Body Corporate; and (c) in the case of LBSF, the Disposal Agent and the Credit Support Provider:

    **(i)**    save with respect to the Credit Support Provider, Lehman Brothers Holdings Inc.;

    **(ii)**    a subsidiary or associated entity of Lehman Brothers Holdings Inc. subject, from time to time, to U.S. chapter 11 bankruptcy proceedings (each such subsidiary or associated entity, a "**Related Entity**"); or

    **(iii)**    any other entity under the direct or indirect control or management of either LBSF, Lehman Brothers Holdings Inc., or a Related Entity.

"**AUD**" means the lawful currency of the Commonwealth of Australia from time to time.

"**Australian Court**" means the Supreme Court of New South Wales, Australia.

"**Australian Court Confirmation**" has the meaning given to such term in Clause 2.1 (*Australian Court Advice*).

"**Bankruptcy Cases**" has the meaning given to such term in Recital (A).

"**Bankruptcy Code**" has the meaning given to such term in Recital (A).

"**Bankruptcy Court**" has the meaning given to such term in Recital (B).

"**Business Day**" means a day other than a Saturday, Sunday or recognised public holiday in England and Wales, the United States of America or Australia, on which the majority of large deposit banks in London are open for business.

"**Cash Amount**" means the 2004-11 Cash Amount and the 2006-05 Cash Amount.

"**Committee**" means the court-sanctioned official committee of unsecured creditors representing the creditors of LBSF (amongst other affiliated entities).

"**Conditions**" means the terms and conditions of the Notes.

"**Conditions Precedent**" means (a) (unless the District Court Proceedings have already been stayed as at the date of this Deed) the receipt by LBSF of a Fax Receipt in respect of the US Stay Confirmation (as sent to each of the Trustee and the Noteholder in accordance with

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

Clause 2.3 (*Stay of US Proceedings*)); (b) the receipt by LBSF of the Australian Court Confirmation; and (c) the receipt by LBSF of a Fax Receipt in respect of the notification given pursuant to Clause 2.2 (*US Bankruptcy Court Authority*) in respect of the LBSF Authorisation Confirmation (sent to each of the Trustee and Noteholder pursuant to Clause 2.2 (*US Bankruptcy Court Authority*)), each in accordance with the terms of this Deed.

"**Confidential Information**" has the meaning given to such term in Clause 13.1 (*Confidentiality*).

"**Confirmations**" has the meaning given to such term in Recital (H).

"**Court Order**" has the meaning given to such term in Recital (C).

"**Court of Appeal Proceedings**" has the meaning given to such term in Recital (I).

"**Credit Support Annexes**" has the meaning given to such term in Recital (F).

"**Credit Support Documents**" means the 2004-11 Guarantee and the 2006-05 Guarantee.

"**Credit Support Provider**" means Lehman Brothers Holdings Inc. a corporation formed in the State of Delaware, United States of America and whose principal place of business is located at 1271 Avenue of the Americas, 40th Floor, New York, NY 10020, United States of America.

"**CSA Cash Collateral**" means the 2004-11 CSA Cash Collateral and the 2006-05 CSA Cash Collateral.

"**Dante**" has the meaning given to such term in Recital (D).

"**District Court Proceedings**" has the meaning given to such term in Recital (J).

"**Effective Date**" has the meaning given to such term in Clause 2.4 (*Effective Date*).

"**Euro**", "**€**" or "**EUR**" means the lawful currency and composite monetary unit of the European Union.

"**Extraordinary Resolution**" has the meaning set out in Recital (N).

"**Fax Receipt**" has the meaning given to such term in Clause 14.8 (*Notices*).

"**GBP**" or "**£**" means the lawful currency of the United Kingdom, from time to time.

"**Information**" has the meaning given to such term in Clause 11.1 (*Hold Harmless*).

"**Issuer Contingency**" means the amount listed as being the Issuer Contingency in the schedule of Series Costs which is provided to LBSF and the Noteholder pursuant to Clause 6.1 (*Payments*).

"**Issuer Contingency Account**" has the meaning given to such term in Clause 6.8(a) (*Payments*)

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

"**Issuer Excess Contingency**" means the amount (if any) of the Issuer Contingency which, as at the Issuer Final Determination Date, has not been actually incurred by the Issuer or its advisors.

"**Issuer Final Determination Date**" means the date on which the Issuer notifies the Trustee and the Noteholder that it has finally determined that no further costs are likely to be incurred in relation to the Notes. The Issuer agrees that it will review at regular intervals following the Actual Payment Date whether it is appropriate to make such determination and will use reasonable efforts to make the notification expeditiously after such determination. The Issuer Final Determination Date shall occur no later than the Third Anniversary unless the Issuer provides written notice to the Trustee and to the Noteholder prior to the Third Anniversary of circumstances which, in the reasonable opinion of the Issuer may give rise to further costs being incurred in relation to the Notes after the Third Anniversary, in which case the Issuer Final Determination Date shall occur no later than the date six (6) years from the date of this Deed.

"**LBSF Authorisation Confirmation**" has the meaning given to such term in Clause 2.2 (*US Bankruptcy Court Authority*).

"**Mahogany I Notes**" has the meaning given to such term in Clause 11.5 (*Hold Harmless*).

"**Mahogany II Notes**" has the meaning given to such term in Clause 11.5 (*Hold Harmless*).

"**Master Agreement**" has the meaning given to such term in Recital (E).

"**Mortgaged Property**" means both the 2004-11 Mortgaged Property and the 2006-05 Mortgaged Property.

"**Motion to Stay**" has the meaning given to such term in Clause 2.3 (*Stay of US Proceedings*).

"**Notes**" has the meaning given to such term in Recital (D).

"**Party**" and "**Parties**" have the meaning given to such terms at the beginning of this Deed.

"**Payment Instruction Notice**" means the notice served by either of LBSF or the Noteholder pursuant to Clause 3.3 (*Payment Instruction Notice*) which confirms to the recipients thereof that each of the US Proceedings and the UK Proceedings have been withdrawn and the Sale Amounts have been received and instructs the Issuer to expeditiously make the payments set out in Clause 6.2 (*Payments*).

"**Principal Trust Deed**" has the meaning given to such term in Recital (D).

"**Programme**" has the meaning given to such term in Recital (D).

"**Related Body Corporate**" has the meaning given to that such term in section 50 of the Corporations Act 2001 (Cth) (as understood in accordance with the laws of New South Wales, Australia).

"**Related Entity**" has the meaning given to such term in the definition of Affiliates.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

"**Related Party**" and "**Related Parties**" have the meanings given to such terms in Clause 13.1 (*Confidentiality*).

"**Released Party**" has the meaning given to such term in Clause 4.3(a) (*Release*) and "**Released Parties**" shall be construed accordingly.

"**Reserved Rights**" has the meaning given to such term in Clause 4.5 (*Outstanding Transactions*).

"**Sale Amounts**" means both of the 2004-11 Sale Amount and the 2006-05 Sale Amount.

"**Sale Procedures**" mean the sale procedures as set out in Schedule 6 (*Sale Procedures*) which shall apply separately in respect of the sale of each of the 2004-11 Securities Collateral and the 2006-05 Securities Collateral.

"**Securities Collateral**" means both of the 2004-11 Securities Collateral and the 2006-05 Securities Collateral.

"**Series Costs**" means the costs properly incurred in connection with the Notes or this Deed or any of the transactions contemplated by this Deed, by the Trustee, and any relevant agent under the Notes, the Issuer and their respective advisers.

"**Settlement Payment Agent**" means Henry Davis York lawyers, 44 Martin Place, Sydney, NSW 2000 Australia.

"**Settlement Payment Deed**" means the settlement and payment deed dated on or about the date of this Deed made amongst LBSF, the Noteholder and the Settlement Payment Agent (the terms of which are confidential between the parties thereto).

"**Supplemental Trust Deeds**" means both of the 2004-11 STDD Agreement and the 2006-05 STDD Agreement.

"**Swap Documents**" means the Confirmations and, so far as incorporated into the Confirmations, the Master Agreement, together with the Credit Support Annexes and the Credit Support Documents.

"**Swap Transactions**" has the meaning given to such term in Recital (H).

"**Termination and Redemption Payments**" means both of the 2004-11 Termination and Redemption Payments and the 2006-05 Termination and Redemption Payments.

"**Third Anniversary**" means the date which falls three (3) years from the date of this Deed.

"**Transaction Documents**" means the Trust Deeds, the Swap Documents, the Notes and any other transaction document to the extent that such transaction document relates to the Notes or to the Swap Transactions.

"**Trust Deeds**" means both of the 2004-11 Trust Deed and the 2006-05 Trust Deed.

"**Trustee Contingency**" means the amount listed as being the Trustee Contingency in the schedule of Series Costs which is provided to LBSF and the Noteholder pursuant to Clause 6.1 (*Payments*).

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

"**Trustee Excess Contingency**" means the amount (if any) of the Trustee Contingency which, as at the Trustee Final Determination Date, has not been actually incurred by the Trustee or any relevant Agent or their respective advisers under the Notes.

"**Trustee Final Determination Date**" means the date on which the Trustee notifies the Issuer and the Noteholder that it has finally determined that no further costs are likely to be incurred in relation to the Notes. The Trustee agrees that it will review at regular intervals following the Actual Payment Date whether it is appropriate to make such determination and will use reasonable efforts to make the notification expeditiously after such determination. The Trustee Final Determination Date shall occur no later than the Third Anniversary unless the Trustee provides written notice to the Noteholder prior to the Third Anniversary of circumstances which, in the reasonable opinion of the party giving the notice may give rise to further costs being incurred in relation to the Notes after the Third Anniversary, in which case the Trustee Final Determination Date shall occur no later than the date 6 years from the date of this Deed.

"**Unpaid Series Costs**" means both of the 2004-11 Unpaid Series Costs and the 2006-05 Unpaid Series Costs.

"**UK High Court Withdrawal Confirmation**" means the confirmation provided in accordance with Clause 14 (*Notices*) by the Noteholder to each of LBSF and the Trustee confirming that the UK High Court Proceedings have been dismissed pursuant to Clause 3.2(b) (*Withdrawal of the UK Proceedings*).

"**UK High Court Proceedings**" has the meaning given to such term in Recital (I).

"**UK Proceedings**" has the meaning given to such term in Recital (I).

"**UK Supreme Court Proceedings**" has the meaning given to such term in Recital (I).

"**UK Supreme Court Withdrawal Confirmation**" means the confirmation provided in accordance with Clause 14 (*Notices*) by LBSF to each of the Noteholder and Trustee confirming that the notice of appeal before the UK Supreme Court has been withdrawn pursuant to Clause 3.2(a) (*Withdrawal of the UK Proceedings*).

"**US Appeal Withdrawal Confirmation**" means the confirmation provided in accordance with Clause 14 (*Notices*) by the Trustee to each of the Noteholder and LBSF confirming that the District Court Proceedings have been dismissed pursuant to Clause 3.1(b) (*Dismissal of the US Proceedings*).

"**US Bankruptcy Court Proceedings**" has the meaning given to such term in Recital (J).

"**US Bankruptcy Court Withdrawal Confirmation**" means the confirmation provided in accordance with Clause 14 (*Notices*) by LBSF to each of the Noteholder and the Trustee confirming that the US Bankruptcy Court Proceedings have been dismissed pursuant to Clause 3.1(a) (*Dismissal of the US Proceedings*).

"**US Proceedings**" has the meaning given to such term in Recital (J).

"**US Stay Confirmation**" means the confirmation provided in accordance with Clause 14 (*Notices*) by LBSF to each of the Trustee and the Noteholder confirming that the District Court Proceedings have been stayed pursuant to Clause 2.3(a) (*Stay of the US Proceedings*).

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

"**Winning Bid**" and "**Winning Bidder**" have the meanings given to such terms in paragraph 5 of the Sale Procedures.

"**Withdrawal Date**" means the later of (a) the withdrawal of the UK High Court Proceedings and (b) the dismissal of the District Court Proceedings.

"**2004-11 Accession Deed**" has the meaning given to such term in Recital (D).

"**2004-11 Cash Amount**" means the cash amount standing to the credit of those of the Issuer's bank accounts that relate to the 2004-11 Notes, including, without limitation, the 2004-11 CSA Cash Collateral.

"**2004-11 Confirmation**" has the meaning given to such term in Recital (G).

"**2004-11 CSA Cash Collateral**" means AUD 43,884.20 (plus any interest accrued thereon between 12 November 2010 and the Actual Payment Date), being the cash amount standing to the credit of those of the Issuer's bank accounts that relate to the Credit Support Annex relating to the 2004-11 Swap Transaction.

"**2004-11 Guarantee**" means the guarantee provided by the Credit Support Provider in favour of the Issuer relating to the 2004-11 Swap Transaction, a copy of which is attached in Schedule 4 (*2004-11 Guarantee*).

"**2004-11 Mortgaged Property**" has the meaning given to such term in the 2004-11 STDD Agreement.

"**2004-11 Notes**" has the meaning given to such term in Recital (D).

"**2004-11 Sale Amount**" means the aggregate amount(s) received from the Winning Bidder(s) in respect of the Winning Bid(s) for the 2004-11 Securities Collateral pursuant to the Sale Procedures.

"**2004-11 Securities Collateral**" means AUD 75,000,000 floating rate notes issued by Australia and New Zealand Banking Group Limited (ISIN: XS0208078732) maturing 10 December 2011.

"**2004-11 STDD Agreement**" means the supplemental trust deed and drawdown agreement dated 10 December 2004 between, inter alios, the Trustee, the Issuer and LBSF constituting the 2004-11 Notes.

"**2004-11 Swap Transaction**" has the meaning given to such term in Recital (G).

"**2004-11 Termination and Redemption Payments**" means the 2004-11 Cash Amount plus the 2004-11 Sale Amount minus the 2004-11 Unpaid Series Costs.

"**2004-11 Trust Deed**" means the 2004-11 STDD Agreement and, so far as incorporated into the 2004-11 STDD Agreement, the Principal Trust Deed.

"**2004-11 Unpaid Series Costs**" means all Series Costs excluding those which have been paid as at the date of this Deed attributed to the 2004-11 Notes.

"**2006-05 Accession Deed**" has the meaning given to such term in Recital (D).

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

"**2006-05 Cash Amount**" means the cash amount standing to the credit of those of the Issuer's bank accounts that relate to the 2006-05 Notes, including, without limitation, the 2006-5 CSA Cash Collateral.

"**2006-05 Confirmation**" has the meaning given to such term in Recital (H).

"**2006-05 CSA Cash Collateral**" means AUD 301,732.51 (plus any interest accrued thereon between 12 November 2010 and the Actual Payment Date), being the cash amount standing to the credit of those of the Issuer's bank accounts that relate to the Credit Support Annex relating to the 2006-5 Swap Transaction.

"**2006-05 Guarantee**" means the guarantee provided by the Credit Support Provider in favour of the Issuer relating to the 2006-05 Swap Transaction, a copy of which is attached in Schedule 5 (*2006-05 Guarantee*).

"**2006-05 Mortgaged Property**" has the meaning given to such term in the 2006-05 STDD Agreement.

"**2006-05 Notes**" has the meaning given to such term in Recital (D).

"**2006-05 Sale Amount**" means the aggregate amount(s) received from the Winning Bidder(s) in respect of the Winning Bid(s) for the 2006-05 Securities Collateral pursuant to the Sale Procedures.

"**2006-05 Securities Collateral**" means AUD 50,000,000 floating rate notes issued by The Royal Bank of Scotland PLC (ISIN: XS0247983058) maturing in 2011 extendable up to 17 March 2016.

"**2006-05 STDD Agreement**" means the supplemental trust deed and drawdown agreement dated 17 March 2006 between, inter alios, the Trustee, the Issuer and LBSF constituting the 2006-05 Notes.

"**2006-05 Swap Transaction**" has the meaning given to such term in Recital (H).

"**2006-05 Termination and Redemption Payments**" means the 2006-05 Cash Amount plus the 2006-05 Sale Amount minus the 2006-05 Unpaid Series Costs.

"**2006-05 Trust Deed**" means the 2006-05 STDD Agreement and, so far as incorporated into the 2006-05 STDD Agreement, the Principal Trust Deed

"**2006-05 Unpaid Series Costs**" means all Series Costs excluding those which have been paid as at the date of this Deed attributed to the 2006-05 Notes.

1.2    Terms used but not defined herein shall have the meanings given to them in the Swap Documents and/or the Trust Deeds.

1.3    Wording denoting the singular shall include the plural and vice versa; and the words "include" and "including" shall be construed without limitation.

1.4    All references in this Deed to any corporate body, company or firm shall include the successors in title or assigns from time to time.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**1.5**    The headings and sub-headings in this Deed are inserted for convenience only and do not affect its interpretation.

**1.6**    Unless the context otherwise requires, a reference to a Clause or Schedule is a reference to a clause of, or schedule to, this Deed.

**1.7**    For the avoidance of doubt, references to the Trust Deeds in this Deed (including, without limitation, any references to their respective termination), shall be construed as referring to each of: (a) the 2004-11 STDD Agreement and, only so far as incorporated therein, the Principal Trust Deed; and (b) the 2006-05 STDD Agreement and, only so far as incorporated therein, the Principal Trust Deed. Nothing in this Deed shall be construed to mean that the Principal Trust Deed is terminated with respect to any other series in the Programme.

## 2    CONDITIONS PRECEDENT AND EFFECTIVE DATE

### 2.1    Australian Court Advice

The Noteholder shall forthwith upon execution by the Parties of this Deed, apply to the Australian Court for judicial advice pursuant to the Trustee Act 1925 (NSW) (to be construed in accordance with the laws of New South Wales, Australia), substantially to the effect that its entry into and performance of its obligations under this Deed and the Settlement Payment Deed are a proper exercise of its powers and duties (such advice to be in form and substance satisfactory to the Noteholder acting reasonably). If the Noteholder has obtained the advice so applied for from the Australian Court in accordance with this Clause 2.1, it shall expeditiously notify each of the Trustee and LBSF that the necessary court advice has been obtained (the "**Australian Court Confirmation**"). If the Noteholder has obtained the advice and, acting reasonably, judges it not to be in form and substance satisfactory to the Noteholder, it shall expeditiously notify (by fax and email) each of the Trustee and LBSF of the reasons why the court advice is not in form and substance satisfactory to it.

### 2.2    US Bankruptcy Court Authority

LBSF shall forthwith upon the execution by the Parties of this Deed, seek an order authorising LBSF to enter into and perform its obligations under this Deed and the Settlement Payment Deed (a final order will constitute the "**LBSF Authorisation Confirmation**"). Once LBSF has obtained the LBSF Authorisation Confirmation, it shall expeditiously notify each of the Trustee and the Noteholder that the necessary court order has been obtained and provide a copy of such order.

### 2.3    Stay of US Proceedings

**(a)**    Unless the District Court Proceedings have already been stayed in which case the US Stay Confirmation will be deemed to have been sent and received, LBSF shall forthwith upon execution by the Parties of this Deed, move to stay the District Court Proceedings for a period of 90 days (the "**Motion to Stay**") and the Trustee, acting on instructions of the Noteholder which are hereby given, agrees not to object or oppose the Motion to Stay. Once LBSF has confirmation from the United States District Court Southern District of New York that the Motion to Stay has been granted, LBSF will expeditiously send the US Stay Confirmation.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**(b)**    Motions for any extension to the stay of the District Court Proceedings shall be made by either the Trustee (upon written request by the Noteholder (with the agreement of LBSF)) or by LBSF (with the agreement of the Noteholder).

**2.4    Effective Date**

**(a)**    LBSF shall forthwith upon satisfaction of the Conditions Precedent, give notice thereof to each of the Issuer, the Trustee, the Noteholder and the Disposal Agent.  If LBSF fails to give such notice within two Business Days after the date on which the Noteholder reasonably believes (based on such information, if any, as may then be available to the Noteholder) the final Condition Precedent to be so satisfied, the Noteholder may give such notice to the Issuer, the Trustee, LBSF and the Disposal Agent, by email and fax (provided that such notice will set out reasonable details of the basis on which the Noteholder considers all Conditions Precedent to have been satisfied).

**(b)**    Other than the provisions of this Clause 2 (*Conditions Precedent and Effective Date*), and Clauses 1, 9, 11, 12, 13, 14, 15, 16, 17, and 18 which all shall take effect on the date hereof, the remaining provisions of this Deed shall take effect immediately upon the date on which there are successful Fax Receipts in respect of the notices to each Party to whom notice is required to be given in accordance with Clause 2.4(a) above (the "**Effective Date**").

**3        WITHDRAWAL OF PROCEEDINGS**

**3.1    Dismissal of the US Proceedings**

**(a)**    LBSF shall, forthwith upon the Effective Date, expeditiously move jointly with the Trustee to have the US Bankruptcy Court Proceedings dismissed with prejudice. Once LBSF has confirmation from the Bankruptcy Court that the US Bankruptcy Court Proceedings have been dismissed with prejudice, LBSF will expeditiously send the US Bankruptcy Court Withdrawal Confirmation.

**(b)**    The Trustee shall, forthwith upon the Effective Date, expeditiously move jointly with LBSF to have the District Court Proceedings dismissed with prejudice.  Once the Trustee has confirmation from the United States District Court for the Southern District of New York that the District Court Proceedings have been dismissed with prejudice, the Trustee will expeditiously send the US Appeal Withdrawal Confirmation.

**3.2    Withdrawal of the UK Proceedings**

**(a)**    LBSF shall, with the consent of the Noteholder which is hereby provided, forthwith upon sending the US Bankruptcy Court Withdrawal Confirmation, withdraw the notice of appeal before the UK Supreme Court.  Pursuant to Rule 34 of the Rules of the Supreme Court 2009, LBSF shall notify the UK Supreme Court of the parties' consent to withdraw the notice of appeal (with no order as to costs), without an oral hearing, subject to the permission of the UK Supreme Court. Once LBSF has confirmation from the UK Supreme Court that the notice of appeal before the UK Supreme Court has been withdrawn, LBSF shall expeditiously send the UK Supreme Court Withdrawal Confirmation.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**(b)**    The Noteholder shall, with the consent of each of LBSF and the Trustee which is hereby provided, forthwith upon receipt of the US Bankruptcy Court Withdrawal Confirmation, make an application to the English High Court for the UK High Court Proceedings to be dismissed with no order as to costs.  Once the Noteholder has confirmation from the UK High Court that the UK High Court Proceedings have been dismissed, the Noteholder will expeditiously send the UK High Court Withdrawal Confirmation.

**3.3    Payment Instruction Notice**

**(a)**    Forthwith upon the occurrence of the last of the following:

   **(i)**     the receipt by LBSF of a Fax Receipt in respect of the US Bankruptcy Court Withdrawal Confirmation (sent by LBSF to each of the Trustee and the Noteholder pursuant to Clause 3.1(a) (*Dismissal of the US Proceedings*));

   **(ii)**    the receipt by LBSF of the US Appeal Withdrawal Confirmation (sent by the Trustee to each of LBSF and the Noteholder pursuant to Clause 3.1(b) (*Dismissal of the US Proceedings*));

   **(iii)**   the receipt by LBSF of a Fax Receipt in respect of the UK Supreme Court Withdrawal Confirmation (sent by LBSF to each of the Trustee and the Noteholder pursuant to Clause 3.2(a) (*Withdrawal of the UK Proceedings*));

   **(iv)**    the receipt by LBSF of the UK High Court Withdrawal Confirmation (sent by the Noteholder to each of the Trustee and LBSF pursuant to Clause 3.2(b) (*Withdrawal of the UK Proceedings*)); and

   **(v)**     the receipt by the Issuer of the Sale Amounts (which is to be confirmed by the Trustee to each of LBSF and the Noteholder expeditiously after receipt of the Sale Amounts by the Issuer),

LBSF shall deliver the Payment Instruction Notice to each of the Issuer, the Trustee and the Noteholder by email and fax.

**(b)**    If LBSF fails to deliver the Payment Instruction Notice in accordance with Clause 3.3(a) above, within two Business Days after the date on which the Noteholder reasonably believes (based on such information, if any, as may then be available to the Noteholder) the final of the items listed in Clause 3.3(a)(i) to (v) above to have occurred, the Noteholder may serve to each of the Issuer, the Trustee and LBSF, the Payment Instruction Notice by email and fax (provided that such notice will set out details of the basis on which the Noteholder believes that the items listed in Clause 3.3(a)(i) to (v) have been satisfied).

**3.4    Opinion of District Court**

Notwithstanding anything to the contrary in this Deed or otherwise and notwithstanding that the Effective Date may have already occurred, to the extent that the District Court issues an opinion on the merits of the appeal in the District Court Proceedings prior to the delivery of the Payment Instruction Notice, this Deed shall terminate and cancel in all respects and all of the rights and obligations created under and/or pursuant to it shall be terminated and released immediately without any further notice or action from any Party save for this Clause 3.4 and

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

the following Clauses: 1 (*Definitions and Interpretation*), 9.8 (*Representations and Warranties*), 11 (*Hold Harmless*), 13 (*Confidentiality*) and 18 (*Governing Law and Jurisdiction*), the provisions of which shall remain binding on all Parties, on the basis that no Party shall have any claim against any of the other Parties under or in connection with this Deed except in relation to a breach by any Party of any of such surviving Clauses. For the avoidance of doubt and without limitation to the generality of the forgoing, none of the releases contained within this Deed shall be effected and each of the Parties shall reserve its rights to challenge or appeal the opinion issued by the District Court in respect of the District Court Proceedings.

## 4    TERMINATION AND RELEASE

### 4.1    Sale of Collateral

(a)    The Issuer hereby appoints LBHI Estates Ltd to act as its Disposal Agent solely in connection with the sale of the Securities Collateral in accordance with the Sale Procedures, and LBHI Estates Ltd hereby accepts such appointment. LBHI Estates Ltd's duties as Disposal Agent shall only extend to arranging a sale of the Securities Collateral in accordance with the Sale Procedures, and LBHI Estates Ltd shall have no liability to any other Party in connection with the sale of the Securities Collateral. Notwithstanding the terms of the Trust Deeds or any other documents in relation to the Notes, none of LBHI Estates Ltd nor any of its Affiliates shall receive any fees, remuneration, commission or any other payment with respect to LBHI Estates Ltd's role as Disposal Agent. In addition, none of LBHI Estates Ltd nor any of its Affiliates shall directly or indirectly purchase the Securities Collateral.

(b)    All Parties hereby agree to the Sale Procedures as set out in Schedule 6 (*Sale Procedures*). The Parties also agree that the Disposal Agent shall initiate the Sale Procedures:

(i)    in respect of the 2004-11 Securities Collateral, two (2) Business Days after the Effective Date; and

(ii)    in respect of the 2006-05 Securities Collateral, five (5) Business Days after the Effective Date,

or on such other Business Day as may be agreed from time to time between the Noteholder, LBSF and the Disposal Agent. If at any time (at least one Business Day in advance of the proposed sale date in accordance with either Clause 4.1(b)(i) or (ii) above), the Noteholder is of the view (acting reasonably) that the market conditions are illiquid or otherwise not conducive to achieving the best price for the sale of the relevant Securities Collateral, the Noteholder may delay the Sale Procedures for a period of up to (but no more than) six (6) weeks and designate such day(s) within that period to conduct the Sale Procedures (subject to agreement with LBSF (such agreement not to be unreasonably withheld or delayed), having given at least one Business Day's notice of the proposed date(s) to the Disposal Agent).

(c)    A Winning Bid submitted to the Disposal Agent in accordance with the Sale Procedures shall be deemed to comply with any obligation arising (where applicable) under rule 11.2 of the Financial Service Authority's Conduct of Business Sourcebook (Best Execution).

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**4.2    The Termination and Redemption Payments and the CSA Cash Collateral**

(a)    Notwithstanding the terms of the Master Agreement and the Confirmations:

(i)    the payment of the Termination and Redemption Payments to the Settlement Payment Agent (acting on behalf of the Noteholder and LBSF) shall be deemed to constitute and satisfy all sums payable to LBSF in connection with any of the Swap Documents, the Notes or the Trust Deeds and in respect of the termination of the Swap Transactions;

(ii)    the payment of the Termination and Redemption Payments to the Settlement Payment Agent (acting on behalf of the Noteholder and LBSF) and the payment of the Issuer Excess Contingency (if any) and the Noteholder Excess Contingency (if any) shall be deemed to constitute and satisfy all sums payable to the Noteholder in connection with any of the Swap Documents, the Notes or the Trust Deeds and in respect of the redemption of the Notes; and

(iii)    no further amounts shall be due or payable or collateral shall be deliverable by LBSF, the Credit Support Provider, the Issuer or the Trustee in connection with either: (X) the Swap Documents and their termination; or (Y) the Notes and their redemption.

(b)    The Issuer (acting in this regard on the instructions of the Noteholder and at the request of LBSF) shall pay the Termination and Redemption Payments to the Settlement Payment Agent in accordance with Clauses 6 (*Payments*), 7 (*Account Details*) and 8 (*No Set-off*).

(c)    LBSF hereby confirms, and the Issuer and Trustee hereby agree (which agreement of the Issuer and the Trustee is solely on the instruction of the Noteholder), that as at the date of this Deed, the CSA Cash Collateral is LBSF's Credit Support Balance pursuant to the Credit Support Annexes.

(d)    The Issuer shall pay the CSA Cash Collateral (as part of the Termination and Redemption Payments) to the Settlement Payment Agent (acting on behalf of the Noteholder and LBSF) in accordance with Clauses 6 (*Payments*), 7 (*Account Details*) and 8 (*No Set-off*). The Issuer covenants that it will comply with paragraph 3(a) of the Credit Support Annexes in paying the CSA Cash Collateral to the Settlement Payment Agent, save to the extent that this paragraph was not complied with when the relevant CSA Cash Collateral was delivered to the Issuer.

(e)    LBSF confirms that payment of the CSA Cash Collateral as set out in Clause 4.2(d) (*The Termination and Redemption Payments and the CSA Cash Collateral*) above shall be in satisfaction of the Issuer's obligation to transfer the Return Amount to LBSF under the terms of the Credit Support Annexes.

**4.3    Release**

(a)    Notwithstanding the terms of the Transaction Documents, in consideration of each other Party's execution of this Deed and conditional upon and with effect from payment to the Settlement Payment Agent of the Termination and Redemption Payments referred to in Clause 6.2 (*Payments*) (without set-off, withholding or

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

counterclaim) in accordance with the terms of this Deed, and subject to Clause 11.4 (*Hold Harmless*), each Party hereby generally and irrevocably releases, discharges and acquits each other Party together with its respective Affiliates and current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, parents, attorneys, successors, predecessors, heirs, personal representatives and assigns (each of the foregoing a "**Released Party**") from: (i) any and all obligations to each other Party with respect to the Transaction Documents and their respective rights against each other thereunder are cancelled (including, without limitation, any rights, liabilities or obligations of the Parties with respect to payments or other obligations due and payable on or prior to the Actual Payment Date); and (ii) without prejudice to (i) above, all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature and character whatsoever whether in law or in equity, whether based on contract (including, without limitation, quasi contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date against each Released Party arising under or related to the Transaction Documents, their negotiation, execution, performance, any payments thereunder, any breaches thereof, or their termination.

(b)     For the avoidance of doubt, nothing herein has the effect of releasing any claim or potential claim which any of: (i) Mahogany Capital Limited ACN 107 882 753 (in Liquidation); (ii) the holders of the Mahogany I Notes; or (iii) the holders of the Mahogany II Notes, may have solely in connection with the sale or marketing of the Notes, the Mahogany I Notes, or the Mahogany II Notes, provided always, that nothing contained in this Deed shall be construed or interpreted as a recognition or acknowledgement by any Party of any of the following: (A) that any Party has any liability in connection with the sale or marketing of the Notes; (B) has ever been connected or involved with the sale or marketing of the Notes; or (C) that any valid claim exists (or has ever existed) against any Party in connection with the sale or marketing of the Notes. For the avoidance of doubt, nothing in this Clause 4.3(b) shall limit or affect the releases of the Trustee provided in this Deed.

(c)     Subject to Clause 4.3(d) below, each Party agrees that (subject to Clause 11.4 (*Hold Harmless*) (i) the Trust Deeds; (ii) the Swap Documents; and (iii) any other Transaction Document (but without prejudice to the ongoing validity of any such Transaction Document to the extent it relates to any other series in the Programme), and all rights and obligations of each Party thereunder, shall be terminated with effect from the Actual Payment Date, and subject to that LBSF hereby agrees that it shall not seek to challenge the validity of the termination of the Swap Transactions, or other Transaction Documents or the redemption of or any payments made in respect of the Notes or seek any other relief in connection with the Transaction Documents other than the termination and the related payments provided herein.

(d)     Solely in respect of each of the Issuer, the Trustee and the Noteholder, the terminations provided for in Clause 4.3(c) above shall not apply to the Trust Deeds and the Transaction Documents in respect of the right and entitlement of the

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

Noteholder, the Trustee and the Issuer to any Trustee Contingency or Issuer Contingency; in such regard only, the Trust Deeds and the Transaction Documents shall terminate upon the Issuer Final Determination Date (with respect to the Issuer Contingency) and the Trustee Final Determination Date (with respect to the Trustee Contingency). To the extent that any such portions of the Trust Deeds and/or the other Transactions Documents conflict with, or are inconsistent with, any of the terms of this Deed, the terms of this Deed shall govern; and in no event shall the Trustee or the Issuer be entitled to any fees during the period from the date of this Deed until the date of any application of any amount of Trustee Contingency or Issuer Contingency.

**4.4     Release of the Credit Support Provider**

For the avoidance of doubt, the Issuer and the Trustee (acting at the express direction of the Noteholder) intend and agree that, with effect from payment to the Settlement Payment Agent of the payments referred to in Clause 6 (*Payments*):

**(a)**     the Credit Support Provider is released and discharged from further obligation with respect to the Swap Documents;

**(b)**     their respective rights against the Credit Support Provider with respect to the Credit Support Documents are cancelled; and

**(c)**     the Credit Support Documents granted by the Credit Support Provider are hereby cancelled.

**4.5     Outstanding Transactions**

The obligations and releases contained in this Deed (and the termination of any agreements or documents) relate only to the Notes, the Swap Transactions and the agreements and other arrangements related thereto (including the Transaction Documents) and do not affect any Party's rights and obligations with respect to any other series in the Programme or any other agreement or arrangement entered into between the Parties. For the avoidance of doubt, (i) nothing in this Clause 4 (Termination and Release) shall release a Party from its obligations under this Deed and (ii) nothing in this Deed shall alter, impair, improve or affect the rights of any holders of notes in the Programme (other than the Notes) to assert the validity of the provisions of the documents relating to such notes (or to defend any challenge to the validity of those provisions) in any proceedings brought in the United States Bankruptcy Court or in any other Court and such rights (if any) of all such holders of notes (and the Trustee, to the extent it acts as trustee for the holders of such notes) are reserved in full (the "**Reserved Rights**") provided always that nothing in this Deed shall constitute any sort of acknowledgement or recognition on behalf of LBSF or the Debtors or any other Party that any of the holders of such notes can make any valid claim or defence in respect of such Reserved Rights.

**5     SETTLEMENT SUMS**

**5.1**     Each Party acknowledges that the amounts set out in this Deed as payable to, or to the Settlement Payment Agent on behalf of, such Party accurately and completely represent the sums to be paid to each of them pursuant to Clause 4.2 (*The Termination and Redemption Payments and the CSA Cash Collateral*) and Clause 6 (*Payments*).

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**5.2**   In particular:

**(a)**   LSBF recognises that the payment of the Termination and Redemption Payments to the Settlement Payment Agent (acting on behalf of the Noteholder and LBSF), shall be in satisfaction of any amounts owed or due to LBSF in connection with the termination of the Swap Transactions and any entitlement LBSF may have pursuant to the Transaction Documents or as a beneficiary of any trust established pursuant to the Transaction Documents, and no other amounts shall be due or payable in connection therewith to LBSF; and

**(b)**   the Noteholder recognises that the payment of the Termination and Redemption Payments to the Settlement Payment Agent (acting on behalf of the Noteholder and LBSF) and the payment of the Trustee Excess Contingency (if any) and the Issuer Excess Contingency (if any), shall be in satisfaction of any amounts owed or due to the Noteholder in connection with the redemption of the Notes and any entitlement the Noteholder may have pursuant to the Transaction Documents or as a beneficiary of any trust established pursuant to the Transaction Documents, and no other amounts shall be due or payable in connection therewith to the Noteholder.

## 6   PAYMENTS

**6.1**   The Parties agree that on or prior to the Actual Payment Date, the Trustee will notify the Noteholder and LBSF of the amounts owing in respect of the Series Costs for each of the 2004-11 Notes and the 2006-05 Notes, each in the form set out in Schedule 3 (*Series Costs*). The Noteholder shall deliver the Notes to the Issuing and Paying Agent upon the earlier to occur of (i) the Noteholder receiving confirmation from the Settlement Payment Agent of its receipt of the Termination and Redemption Payments; and (ii) three Business Days after the Actual Payment Date, as follows:

**(a)**   in the case of the 2004-11 Notes, the Noteholder shall arrange for delivery of the 2004-11 Notes to the Issuer to Euroclear account number 14037 by way of surrender for nil consideration; and

**(b)**   in the case of the 2006-05 Notes, the Noteholder shall direct the custodian holding the 2006-05 Notes to deliver the 2006-05 Notes by recorded international courier to the Issuing and Paying Agent at the address set out in Clause 14.4 (*Notices*) (marked for the attention of Richard Kerry) by way of surrender for nil consideration,

and upon receipt of the relevant Notes, the Issuing and Paying Agent shall promptly cancel the Notes.

**6.2**   Following the receipt by the Issuer of the Payment Instruction Notice, the Parties agree (notwithstanding any other provision to the contrary contained in the Conditions) that the Issuer shall apply the Cash Amount and the Sale Amounts to make, or procure to be made, the following payments and provisions (and, immediately before making such payments, all rights, title and interest of the Issuer in, to and under the Cash Amount and the Sale Amounts (other than the amounts paid to the Trustee in respect of Unpaid Series Costs which are to be paid to the Issuer) shall, notwithstanding Clause 6.7 below, cease and be of no further force or effect):

**(a)**   the Unpaid Series Costs to the Trustee;

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**(b)**    provision for the Issuer Contingency and the Trustee Contingency; and

**(c)**    the Termination and Redemption Payments to the Settlement Payment Agent.

**6.3**    The Issuer shall (to the extent that it has it within its control to do so) use reasonable efforts to, and make any necessary direction to the Agents to, procure that: (i) the payments set out in Clause 6.2 (*Payments*) are made expeditiously following receipt of the Payment Instruction Notice; and (ii) the settlement directions in respect of such payments are given as close in time to each other as is reasonably practicable.

**6.4**    The Trustee shall, to the extent within its powers, pursuant to the direction of the Noteholder and at the request of LBSF, take any actions or make any directions to the Agents reasonably required to procure that the payments set out in Clause 6.2 (*Payments*) are made expeditiously following the receipt of the Payment Instruction Notice pursuant to Clause 3.3 (*Payment Instruction Notice*).

**6.5**    The Noteholder and/or LBSF shall provide to the Trustee and the Issuer (and/or the Agents) such information as the Trustee and the Issuer (and/or the Agents) may reasonably request in order to facilitate such payments.

**6.6**    Neither the Issuer, the Trustee nor any of the Agents shall have any obligation to make such payments on any particular date and nor shall any of them have any liability to any other Party or any other person in connection with any such payment not being made on any particular date provided that the above shall not release the Issuer of its obligations under Clause 6.3 (*Payments*) or the Trustee from its obligations under Clause 6.4 (*Payments*).

**6.7**    The Trustee agrees that the funds in respect of the Trustee Contingency shall be maintained in the Issuer's account held by the Custodian under the control of the Trustee, and that to the extent there is any Trustee Excess Contingency as at the Trustee Final Determination Date, it will notify the Noteholder in writing of the Trustee Excess Contingency and make payment of the Trustee Excess Contingency to the Noteholder in accordance with Clause 7 (*Account Details*). The Trustee agrees that it will use reasonable efforts to procure that the notification and payment of the Trustee Excess Contingency is made expeditiously following the Trustee Final Determination Date.

**6.8**    The Issuer agrees that:

**(a)**    it will request the Custodian to open a new account in the name of the Issuer (under the control of the Trustee) to hold the Issuer Contingency (the "**Issuer Contingency Account**") to be distributed in accordance with this Deed;

**(b)**    it will notify the Custodian, the Trustee and the Noteholder in writing of any costs that have been actually and properly incurred by the Issuer or its advisors and for which the Issuer seeks reimbursement from the sums held in the Issuer Contingency Account; and

**(c)**    if there is any Issuer Excess Contingency as at the Issuer Final Determination Date, it will notify the Custodian, the Trustee and the Noteholder in writing of the Issuer Excess Contingency.

**6.9**    The Custodian is hereby instructed by the Issuer and the Noteholder that:

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

(a) upon receipt of a notice from the Issuer pursuant to Clause 6.8(b) above, the Custodian shall make payment to the Issuer in respect of costs that have been actually and properly incurred from the sums held at that time in the Issuer Contingency Account; and

(b) upon receipt of a notice from the Issuer pursuant to Clause 6.8(c) above, the Custodian shall make payment of the Issuer Excess Contingency to the Noteholder in accordance with Clause 7 (*Account Details*).

**6.10** The Issuer shall use reasonable efforts to procure that the notification and payment of the Issuer Excess Contingency is made expeditiously following the Issuer Final Determination Date.

**6.11** The Parties acknowledge that to the extent that any of the Series Costs are in a currency other than AUD the Trustee shall be entitled to convert those costs into AUD in accordance with clause 9.13 (*Currency Conversion*) of the Principal Trust Deed.

**7    ACCOUNT DETAILS**

(a) Payment of the Termination and Redemption Payments to the Settlement Payment Agent shall be made to the following account:

Henry Davis York Trust Account
Westpac Banking Corporation, Sydney
SWIFT:      WPAC AU2S
BSB:        032-000
A/C:        300-114
Reference:  3117305;

(b) Payment of the Issuer Excess Contingency (if any) and the Trustee Excess Contingency (if any) shall be made to the Noteholder to such account as the Noteholder shall specify.

**8    NO SET-OFF**

The Termination and Redemption Payments payable by the Issuer to the Settlement Payment Agent (acting on behalf of the Noteholder and LBSF) under this Deed shall be calculated and made:

(a) without (and free and clear of any deduction for) any set-off, netting, withholding, combination of accounts or retention in respect of any present or future monies, debts or liabilities owing to the Issuer or incurred by LBSF or any subsidiaries, associated companies or entities which are in any way related to LBSF, or any other party; and

(b) regardless of any right of equity or counterclaim the Issuer may have against LBSF or any subsidiaries, associated companies or any entities in any way related to LBSF, or any other party.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

## 9    REPRESENTATIONS AND WARRANTIES

**9.1**    On the Effective Date and on the Actual Payment Date, each Party, except for the Agents and the Trustee, represents and warrants to the other Parties (except to the Agents) that:

**(a)**    the execution and delivery by it of, and the performance by it of its obligations under, this Deed are within its corporate powers and have been duly authorised by all necessary action and, in the case of LBSF only, this Deed is being entered into in accordance with and pursuant to the LBSF Authorisation Confirmation;

**(b)**    the execution and delivery by it of, and the performance by it of its obligations under, this Deed will not contravene any regulations, provision of applicable law or, the constitutional documents of it, or any agreement or other instrument binding upon itself or affecting it or any of its assets, or any judgment, order or decree of any governmental body, agency or court having jurisdiction over it, and no consent, approval, authorisation or order of, or qualification with, any governmental body or agency is required for the performance by it of its obligations under this Deed and it is not in breach of or in default under any agreement or instrument to which it is a party or which is binding on it or any of its assets or revenues, which breach or default is likely to be material in the context of entering into this Deed; and

**(c)**    when executed and delivered by it and the other Parties, this Deed will constitute valid and legally binding agreements of it, enforceable against it in accordance with its terms.

**9.2**    Each Party, except for the Agents and the Trustee, further represents and warrants to the other Parties (except the Agents) that:

**(a)**    it is not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Deed;

**(b)**    it has had the opportunity to be represented and advised by legal counsel in connection with this Deed, which it enters voluntarily and of its own choice and not under coercion or duress;

**(c)**    it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel; and

**(d)**    it has no expectation that any of the other Parties will disclose facts material to the Swap Documents, the Trust Deed or this Deed.

**9.3**    The Issuer represents and warrants to each of the other Parties (except for the Agents) that:

**(a)**    it is the sole owner of all rights (other than those of LBSF, the Trustee and the Credit Support Provider) under the Swap Documents;

**(b)**    it is duly authorised to compromise all of such rights; and

**(c)**    it has not transferred or assigned any of such rights prior to the date of this Deed, except by way of security pursuant to the Trust Deeds.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**9.4**    LBSF represents and warrants to each of the other Parties (except for the Agents) that it has not assigned or transferred by way of security or otherwise (and will not seek to do so) any of its rights, title, liabilities, obligations or interest under or in connection with the Transaction Documents.

**9.5**    The Noteholder represents that at the date hereof it: (a) is the holder of 100 per cent. in principal amount outstanding of the Notes; (b) has not transferred or otherwise disposed of its interest under the Notes; (c) in the case of the 2004-11 Notes, the Noteholder has blocked its account with the relevant clearing systems; and (d) in the case of the 2006-05 Notes, the Noteholder has not given (and will not give) any instructions to the custodian holding the 2006-05 Notes to transfer the 2006-05 Notes other than as set out in Clause 6.1 (*Payments*). The Noteholder covenants that it will not give directions for the account to be un-blocked until after all payments have been made in accordance with this Deed.

**9.6**    The Noteholder represents and warrants, on each date on which, pursuant to the terms of this Deed, any interest is paid on the Notes, that it is resident for the purposes of tax in the Commonwealth of Australia and is not operating in Ireland through a branch or agency with which the interest payments are connected.

**9.7**    LBSF represents and warrants that, other than the US Proceedings and the UK Proceedings, there are no adversary proceedings or other proceedings brought by LBSF or any of its Affiliates, or to which LBSF or any of its Affiliates is a party, whether or not as part of the Bankruptcy Cases, arising under or related to the Transaction Documents.

**9.8**    Each of the Parties agrees and stipulates that: (i) it shall not assert, or support an assertion by any person or entity, that the Noteholder is subject to the jurisdiction of any court in the United States with respect to the Transaction Documents or this Deed; and (ii) none of the terms and conditions of this Deed, or the actions of any Party in entering into, complying with, or effecting any of the terms hereof, shall be deemed to be, or be treated as, evidence that the Noteholder is subject to such jurisdiction.

**9.9**    The Parties agree and stipulate that each Party (other than the Agents) is relying upon the representations and warranties in this Clause 9 (*Representations and Warranties*) in entering into this Deed. Furthermore, the Parties (other than the Agents) agree that these representations and warranties are a material inducement for entering into this Deed.

## 10    AUTHORISATION AND RELEASE OF SECURITY

**10.1**    The Trustee, on the express direction of the Noteholder and at the request of LBSF, authorises the Issuer to: (a) enter into this Deed (and carry out all acts necessary to give effect to the terms of this Deed) for the purposes of clauses 2.5 (*Payment After a Default*) and/or 5.4 (*Rights of the Issuer*), in each case, to the extent applicable and 7.1.15 (*Restrictions*) of the Principal Trust Deed; and (b) to make the payments set out in Clause 4.2 (*The Termination and Redemption Payments and the CSA Cash Collateral*) and Clause 6 (*Payments*) in accordance with this Deed for the purposes of clause 7.1.15 (*Restrictions*) of the Principal Trust Deed.

**10.2**    All amounts paid by or on behalf of the Issuer pursuant to Clause 6.2 (*Payments*) shall be paid free and clear of all charges and security interests created by the Issuer under the Trust Deeds (including in respect of the Termination and Redemption Payments) and the Trustee, on the express direction of the Noteholder, irrevocably releases, discharges and

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

reassigns to the Issuer any rights relating thereto and all the other amounts assigned to the Trustee pursuant to the Trust Deeds immediately prior to such payments being made to the extent necessary to enable such payments to be so made in accordance with the Trust Deeds.

**10.3**    The Trustee and the Issuer are entering into this Deed at the request and direction of the Noteholder and at the request of LBSF, and in reliance upon their respective representations.    The holdings of the Noteholder have been verified to the Trustee in accordance with the normal practices of the clearing systems.    On such basis, the Trustee confirms that it has all necessary power and authority to enter into this Deed.

## 11    HOLD HARMLESS

**11.1**    To the extent that a Party (except for the Issuer or the Trustee) has received and relied on any information analysis or explanation (the "**Information**") from the Trustee or the Issuer (or any of its advisers) in connection with the steps envisaged by this Deed, each Party (except for the Issuer and the Trustee) agrees that (i) such Information is confidential save for (a) information which becomes generally known to the public, (b) information which is required to be disclosed pursuant to any applicable laws or to any competent governmental or statutory authority or pursuant to rules or regulations of any relevant regulatory, administrative or supervisory body (including, without limitation, any relevant stock exchange or securities council), (c) information which is required to be disclosed pursuant to any legal process issued by or commenced in any court or tribunal, (d) disclosure to a Party's Affiliates, subsidiaries or related corporations, (e) disclosure in confidence to its respective professional advisers or insurers, including, in the case of LBSF, the Committee and their advisers, (f) information which is required to be disclosed to the extent necessary to comply with each of the Parties' obligations under Clauses 2 (*Conditions Precedent and Effective Date*) and 3 (*Withdrawal of Proceedings*), (g) information which is required to be disclosed for the purposes of enforcing this Deed in accordance with its terms, and (h) disclosure to each Party's respective directors, officers and employees, in each case solely for the purpose of effecting this Deed or as reasonably required for internal compliance or reporting purposes (it being understood that such parties will be informed of the confidential nature of the Information); (ii) the person supplying it shall not owe such Party any duty or liability in respect of the Information; (iii) if a Party relies on such information, it does so at its own risk; and (iv) such Party shall not bring, or threaten to bring, any actions, proceedings or claims against the person supplying it or any of its advisers in any way arising out of, or in connection with, the Information.

**11.2**    By executing this Deed and pursuant to the Extraordinary Resolution, the Noteholder, in accordance with the Trust Deeds and other transaction documents in respect of the Notes hereby directs and instructs the Trustee and the Issuer to execute this Deed and to be subject to the rights and obligations contained herein that are applicable to them.

**11.3**    Each of the Parties (other than the Issuer) irrevocably agrees that it will at no time institute or join any person in bringing, instituting or joining, any insolvency or examinership proceedings (whether court-based or otherwise) in relation to the Issuer.   Each Party hereby agrees that its recourse against the Issuer in respect of any claim arising out of or in connection with this Deed or the Transaction Documents be limited to the Mortgaged Property (or the proceeds thereof) and if, having realised the Mortgaged Property (or the proceeds thereof), the Issuer has insufficient funds to discharge any amounts arising from such claim then the relevant Party shall have no further claim against the Issuer in respect of

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

such unpaid amounts and such unpaid amounts shall be deemed discharged in full and extinguished.

**11.4**    Notwithstanding any other provision of this Deed, nothing in this Deed shall restrict or limit the Trustee or the Issuer from any indemnification claim, or benefiting from any hold harmless or protection provisions, set out in the Trust Deeds, any other transaction document relating to the Notes provided that this Clause 11.4 (*Hold Harmless*) shall not apply to any such indemnification claim, hold harmless or protection provisions provided by LBSF, the Credit Support Provider, the Disposal Agent or any of their respective Affiliates.

**11.5**    The Noteholder enters into this Deed in the following capacities and no other capacity: (i) the holder of record of the 2004-11 Notes and the 2006-05 Notes; (ii) note trustee and security trustee in relation to the issue of note by Mahogany Capital Limited and known as the Mahogany Notes Series I (the "**Mahogany I Notes**"); (iii) note trustee and security trustee in relation to the issue of notes by Mahogany Capital Limited and known as the Mahogany Notes Series II (the "**Mahogany II Notes**"). The liability of the Noteholder arising under or in connection with this Deed is limited to, and can be enforced against it only to, the extent to which it can be satisfied out of the property and assets held by the Noteholder for the time being and from time to time in its capacity as trustee for the Mahogany I Notes and for the Mahogany II Notes from which the Noteholder is indemnified for the liability. This limitation of liability applies despite any other provision of this Deed and extends to all liabilities and obligations of the Noteholder  in any way connected with any representation, warranty, conduct, omission, indemnity, agreement or transaction made in or related to this Deed.

## 12    ENTIRE AGREEMENT

**12.1**    This Deed (and, in the case of the Parties to it, the Settlement Payment Deed) constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

**12.2**    Each Party acknowledges that, in entering into this Deed, it is not relying on any statement, representation, assurance or warranty of any person (whether a Party to this Deed or not) other than as expressly set out in this Deed.

**12.3**    Each Party agrees that the only rights and remedies available to it arising out of or in connection with any representation or warranty set out in this Deed shall be damages for breach of contract.

**12.4**    Nothing in this Clause shall limit or exclude liability for fraud.

## 13    CONFIDENTIALITY

**13.1**    Save to the extent necessary to comply with each of the Parties' obligations under Clauses 2 (*Conditions Precedent and Effective Date*) and 3 (*Withdrawal of Proceedings*), each Party undertakes to each other Party that they shall not at any time disclose the contents of this Deed, including the Termination and Redemption Payments ("**Confidential Information**"), to any person except:

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

(a)     each Party's respective directors and officers, in each case who need to know such information solely for the purpose of effecting this Deed or as reasonably required for internal compliance or reporting purposes;

(b)     accountants, auditors, legal or professional advisers, insurers (each of whom are themselves subject to a duty of confidentiality),

(the entities listed at Clauses 13.1(a) and (b) above each being a "**Related Party**" (and together the "**Related Parties**"), it being understood that such Related Parties will each be informed of the confidential nature of the Confidential Information and will be requested to maintain the confidentiality of such Confidential Information);

(c)     in the case of LBSF, the Committee and their advisers;

(d)     other Parties to this Deed;

(e)     as may be required by law, including but not limited to, as may be required by the United States federal securities and bankruptcy laws;

(f)     as may be required: (i) in connection with the amendment or withdrawal of any proof of claim in the bankruptcy of LBSF or the Credit Support Provider; (ii) by any applicable listing rule or listing law; or (iii) pursuant to the authority of a court, administrative tribunal, arbitration panel, regulatory or supervisory body and/or their duly appointed representatives; or

(g)     to the extent necessary to enforce the terms of this Deed.

**13.2**    Each Party further undertakes that any communication of Confidential Information shall include a prominent legend to the effect that the Confidential Information shall be treated as confidential and may not be subject to onward distribution.

**13.3**    Each Party (other than LBSF, the Trustee and the Agents) agrees that, when it enters into a confidentiality agreement with respect to Confidential Information, it shall promptly provide LBSF a copy of said agreement.

**13.4**    If any Party (other than LBSF, the Trustee and the Agents) or any Related Party (of any Party other than LBSF, the Trustee or the Agents) becomes legally obligated (whether by court or regulatory order or otherwise), other than due to disclosure by such Party or Related Party which is permitted by Clause 13.1 above, to disclose any of the Confidential Information, such Party or such Related Party will promptly endeavour to provide LBSF if permitted by law, with prompt notice of such proposed disclosure so that LBSF may seek a protective order or other appropriate remedy. If such a protective order or other protective remedy is not obtained, such Party or such Related Party, as the case may be, will disclose only that portion of the Confidential Information which is legally required, in the opinion of its own counsel, and such Party or such Related Party, as the case may be, will exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

**13.5**    For the avoidance of doubt, Confidential Information is not intended to cover information which is already in the public domain (provided that any such information did not enter the public domain by way of breach of this Deed).

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**13.6**    Notwithstanding any other provision of this Clause 13 (*Confidentiality*) none of the Trustee or the Issuer shall be obliged to do, or refrain from doing, anything which would cause it to breach its obligations under the Trust Deeds.

## 14    NOTICES

Any communication by any Party to another in relation to this Deed may be sent by fax, pre-paid post or delivered personally to the address set out below or to such other address as a Party may stipulate, except for any notices required to be sent under Clause 2 (*Conditions Precedent and Effective Date*) or Clause 3 (*Withdrawal of Proceedings*) which shall be sent by email and fax only (with delivery by fax being the effective delivery when delivered in accordance with Clause 14.8 (*Notices*)):

**14.1**    LBSF

c/o Lehman Brothers Holdings Inc.
1271 Avenue of the Americas, 40th Floor
New York, NY 10020 USA
Attention: Derivatives Legal
Fax: +1 646-285-9701
Email: derivativeslegal-london@lamcollc.co.uk, Andrew.Weber@lamcollc.co.uk, Locke.Mcmurray@lamcollc.com and Adrian.Elliott@lamcollc.co.uk

and

c/o LAMCO Services Ltd
6th Floor
111 Old Broad Street
London EC2N 1FP
Attention: Derivatives Legal
Fax: +44(0) 20 7492 3008

**14.2**    The Issuer

Saphir Finance Public Limited Company
AIB International Centre
International Financial Services Centre
Dublin 1
Ireland
Attention: The Directors
Fax: +353 1 874 3050
Email: edwina.c.fogarty@aib.ie and fergus.gillen@mccannfitzgerald.ie

**14.3**    The Trustee

BNY Corporate Trustee Services Limited
One Canada Square
London
E14 5AL
Attention: Corporate Trust Administration
Fax: +44 20 7964 2530

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

Email: dagemea@bnymellon.com

**14.4**   The Issuing and Paying Agent and the Custodian

The Bank of New York Mellon, London Branch
One Canada Square
London
E14 5AL
Attention: Corporate Trust Administration
Fax: +44 20 7964 2530

**14.5**   The Paying Agent

The Bank of New York Mellon (Ireland) Limited
Guild House
Guild Street, Dublin 2
Ireland
Attention: Corporate Trust Administration
Fax: +44 20 7964 2530

**14.6**   The Noteholder

Perpetual Trustee Company Limited
Level 12 Angel Place
123 Pitt Street, Sydney
New South Wales
Australia
Attention: Group Executive, Corporate Trust
Fax: +61 (2) 8256 1401
Email: chris.green@perpetual.com

**14.7**   The Disposal Agent

LBHI Estates Ltd
c/o LAMCO Services Ltd
6th Floor
111 Old Broad Street
London EC2N 1FP
Attention: Derivatives Legal
Fax: +44(0) 20 7492 3008
Email: derivativeslegal-london@lamcollc.co.uk, Andrew.Weber@lamcollc.co.uk,
Locke.Mcmurray@lamcollc.com and Adrian.Elliott@lamcollc.co.uk

**14.8**   Communications by post will be deemed served two days (but if to another country,
seven days) after posting.  Communications by fax will be deemed served when transmission
has been completed and a transmission confirmation has been obtained by the sender (a "**Fax
Receipt**").

**14.9**   If a Party is notified that its email address or fax number set out above is incorrect, or
otherwise becomes aware of such an error, it shall forthwith correct such details by notice via
fax and, save for the Agents, email to each other Party.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

## 15    COUNTERPARTS

This Deed may be executed and delivered in counterparts (including by fax transmission or in Adobe™ Portable Document Format (PDF) sent by electronic mail), each of which when executed and delivered shall constitute an original of this Deed, but all of the counterparts shall together constitute the same Deed.

## 16    RIGHTS OF THIRD PARTIES

**16.1**    Save as set out in Clause 16.2 (*Rights of Third Parties*), no person other than a Party to this Deed shall have any right (whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise) to enforce or enjoy the benefit of any term of this Deed.

**16.2**    The provisions of Clause 4.3 (*Release*) is intended to benefit each Released Party, and may be enforced (subject to the remaining terms of this Deed) by the relevant Released Party, as applicable, as if it were a Party.

## 17    GENERAL

**17.1**    The provisions of this Deed will be binding upon and inure to the benefit of the Parties and their respective successors and assigns.

**17.2**    No variation to this Deed shall be effective unless in writing and signed on behalf of each of the Parties. For the avoidance of doubt, no consent of a Released Party shall be required in respect of any variation.

**17.3**    The waiver by any of the Parties of any breach of this Deed shall not be deemed a waiver of any other prior or subsequent breach of this Deed. No waiver of any right under this Deed shall be effective unless it is in writing and signed by the Party waiving such right.

**17.4**    If any term or provision in this Deed (other than the obligation to make the payments specified in Clause 6 (*Payments*) and other than Clause 3.4 (*Opinion of District Court*)) shall be held to be invalid, illegal or unenforceable, in whole or in part, in any respect under the law of any jurisdiction, the validity, legality and enforceability of any such provision in every other respect and of the remaining provisions contained in this Deed shall not be in any way impaired thereby, it being intended that all of the rights and privileges of the Parties shall be enforceable to the fullest extent permitted by law. Upon such determination that any term or other provision is invalid, illegal or unenforceable, the Parties shall negotiate in good faith to modify this Deed so as to effect the original intent of the Parties as closely as possible in an acceptable manner so that the transactions contemplated by this Deed are consummated as originally understood to the greatest extent possible.

**17.5**    Each of the Parties named below confirms that it has irrevocably and unconditionally appointed the person named opposite its name below as its agent to accept service of process on its behalf in England in respect of any proceedings arising out of or in connection with this Deed. Such service shall be deemed to be validly made notwithstanding that such person shall not notify any Party thereof. Nothing in this Clause shall affect the right to serve process in any other manner permitted by law.

| Party | Agent |
|---|---|
| The Issuer | McCann FitzGerald, St Michael's House, 1 George Yard, Lombard |

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

|  | Street, London EC3V 9DE |
| LBSF | LAMCO Services Ltd, 6th Floor, 111 Old Broad Street, London EC2N 1FP |

## 18     GOVERNING LAW AND JURISDICTION

**18.1**    This Deed and any non-contractual obligations arising out of or in connection with it shall be governed by and construed in accordance with English law.

**18.2**    The Parties irrevocably agree that the courts of England are to have exclusive jurisdiction to settle any dispute which may arise out of or in connection with this Deed. The Parties irrevocably submit to the jurisdiction of those courts and waive any objection to proceedings in any such court on the ground of venue or on the ground that the proceedings have been brought in an inconvenient forum, or on the grounds that the proceedings are subject to LBSF's automatic stay under the Bankruptcy Code or otherwise.

This Deed has been entered into and delivered as a Deed on the date stated at the beginning of this Deed.

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

## EXECUTION

**EXECUTED AND DELIVERED AS A DEED BY**                    )
**LEHMAN BROTHERS SPECIAL FINANCING INC.**                )
(as "**LBSF**")                                           )
By:                                                       )

Signature:                                                )


**EXECUTED AND DELIVERED AS A DEED BY**                    )
**LEHMAN BROTHERS HOLDINGS INC.**                         )
(as the "**Credit Support Provider**")                    )
By:                                                       )

Signature:                                                )


**SIGNED, SEALED AND DELIVERED AS A DEED BY**              )
**PERPETUAL TRUSTEE COMPANY LIMITED**                     )
(as the "**Noteholder**")                                 )
by its attorney under Power of Attorney dated             )

Signature of attorney:                                    )

Print name:                                               )

In the presence of:                                       )
Signature of Witness:                                     )

Name of Witness:                                          )

Address of Witness:                                       )


**EXECUTED AND DELIVERED AS A DEED BY**                    )
**BNY CORPORATE TRUSTEE SERVICES LIMITED**                )
(as the "**Trustee**")                                    )

By:                                                       )

Signature:                                                )

By:                                                       )

Signature:                                                )

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**EXECUTED AND DELIVERED AS A DEED BY**                    )
**THE BANK OF NEW YORK MELLON, LONDON BRANCH**)
(as the "**Issuing and Paying Agent**")                        )

By:                                                        )

Signature:                                                )

By:                                                        )

Signature:                                                )


**EXECUTED AND DELIVERED AS A DEED BY**                    )
**THE BANK OF NEW YORK MELLON, LONDON BRANCH**)
(as the "**Custodian**")                                      )

By:                                                        )

Signature:                                                )

By:                                                        )

Signature:                                                )


**SIGNED AND DELIVERED AS A DEED**                        )
**for and on behalf of**                                      )
**THE BANK OF NEW YORK MELLON (IRELAND) LIMITED** )
(as the "**Paying Agent**")                                  )
acting by its duly authorised attorney:

Title:  Attorney-in-Fact                                    )

Name:                                                      )

In the presence of:                                        )
Signature of Witness:                                      )

Name of Witness:                                           )

Address of Witness:                                        )

Occupation of Witness:                                     )

THE CONTENTS OF THIS DEED CONSTITUTES CONFIDENTIAL INFORMATION
AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**SIGNED AND DELIVERED AS A DEED BY**                )

Signature of attorney:                                               )

Name of attorney:                                                    )

as attorney for **SAPHIR PUBLIC LIMITED COMPANY**
(as the "**Issuer**")

In the presence of:                                                   )

Signature of Witness:                                              )

Name of Witness:                                                    )

Address of Witness:    c/o Riverside One                    )
                                    Sir John Rogerson's Quay        )
                                    Dublin 2, Ireland                      )


**EXECUTED AND DELIVERED AS A DEED BY**        )
**LBHI ESTATES LTD**                                           )
(as the "**Disposal Agent**")                                   )

By:                                                                         )

Signature:                                                              )


In the presence of:                                                  )
Signature of Witness:                                             )

Name of Witness:                                                    )

Address of Witness:                                                )