CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Andrew P. Brozman
Sara M. Tapinekis

*Counsel to Crédit Agricole Corporate and Investment Bank*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
In re                                                         :
                                                              :  Chapter 11
LEHMAN BROTHERS HOLDINGS, INC., *et al.*,                     :
                                                              :  Case No. 08-13555 (JMP)
Debtors.                                                      :
                                                              :  (Jointly Administered)
---------------------------------------------------------------------x

**CREDIT AGRICOLE CORPORATE AND INVESTMENT BANK'S
OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND GENERAL ORDER M-390 FOR
AUTHORIZATION TO IMPLEMENT ALTERNATIVE DISPUTE RESOLUTION
PROCEDURES FOR AFFIRMATIVE CLAIMS OF DEBTORS UNDER DERIVATIVES
TRANSACTIONS WITH SPECIAL PURPOSE VEHICLE COUNTERPARTIES**

Crédit Agricole Corporate and Investment Bank, *f/k/a* Calyon ("CACIB"), by and through its undersigned counsel, respectfully submits this objection (the "Objection") to the Debtors' Motion Pursuant To Section 105(a) Of The Bankruptcy Code And General Order M-390 For Authorization To Implement Alternative Dispute Resolution Procedures For Affirmative Claims Of Debtors Under Derivatives Transactions With Special Purpose Vehicle Counterparties, dated November 24, 2010 (the "SPV ADR Motion"). In support of its Objection, CACIB respectfully states as follows.

**PRELIMINARY STATEMENT**

The Debtors by the SPV ADR Motion seek to implement alternative dispute resolution procedures, which as currently proposed would require this Court to enter an order that would alter rights between and among non-debtor third parties. Such an exercise of authority goes well beyond even the most far reaching powers of this Court.

Specifically, the procedures that the Debtors seek to implement would require the SPV Derivatives Counterparty[1] (the issuer of notes held by the Noteholders listed as defendants in the Pending Actions) to designate a representative with "complete settlement authority" to negotiate all disputed amounts and issues with respect to the claims set forth in the Pending Actions, even though the SPV Derivatives Counterparty is contractually or otherwise restrained in its authority to take such actions with respect to or on behalf of the Noteholders. Yet, absent the timely designation of a party with that authority, the SPV Derivatives Counterparty (and the SPV Trustees and the Noteholders) face potential sanctions including the entry of an order or judgment for the recovery of amounts demanded by the Debtors.

The Debtors make the Motion, even though, as the Motion and the complaints themselves describe, the SPV Derivatives Counterparties have no economic stake in the transactions at issue. Instead, in many cases it is the Noteholders that are the real parties in interest with the actual economic stake in the litigations. Moreover, the relevant indenture agreements, which generally are among only the non-debtor parties to the transaction (the issuers, trustees and Noteholders), do not contemplate or authorize any person, including the issuer or the indenture trustee, to enter into such negotiations on behalf of the Noteholders or to designate a third party to act on their

---

[1] Capitalized terms used but not defined herein shall have the meaning given them in the SPV ADR Motion.

behalf.[2]  Indeed, the transaction documents afford a third party no capacity to bind the non-debtors to any course of action, let alone to an agreement affecting Noteholder rights in collateral.  Accordingly, CACIB respectfully submits that the Court lacks the power, under section 105(a) of the Bankruptcy Code or otherwise to impose or vary the contractual terms among non-debtor parties.

Further, the procedures contemplated by the SPV ADR Motion deny CACIB its rights to due process.  Although any putative settlement authored by a party designated by the SPV Derivatives Counterparty would likely require approval of this Court under Bankruptcy Rule 9019, the opportunity to be heard in opposition to the settlement is insufficient to afford the due process rights to which any Noteholder otherwise would be entitled.  In effect, the unauthorized settlement designee would be in a position to bind a Noteholder defendant in the Pending Actions to a settlement which, for example, could vitiate its rights in the collateral established under the Indenture, by the Debtors showing no more than that the settlement is within the lowest realm of the range of reasonableness.  *See Six West Retail Acquisition, Inc. v. Loews Cineplex Entm't Corp.*, 286 B.R. 239, 248 (S.D.N.Y. 2002) (quoting *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.1983)).  This procedural standard contrasts poorly to the rights to which the Noteholder would be entitled in adjudicating its liability in the Pending Actions and beyond the capacity of any person to settle a Pending Action in a manner that would bind the Noteholder absent its consent.

Ironically, the SPV ADR Motion's procedures would effect an end run around the very class action designation procedures which the Court is asked to approve in certain of the Pending Actions.  As discussed below, LBSF, as the plaintiff, seeks the certification of a defendant class

---

[2]  In certain cases, the transaction documents would prohibit the very actions contemplated by the SPV ADR Motion.  (*See, e.g.,* the Pyxis Indenture, discussed in paragraphs 10 and 11 below.)

under, among other provisions, Rule 23(b)(3) of the Federal Rules of Civil Procedure ("Federal Rules").[3] Even assuming a class appropriately is certified in accordance with Federal Rule 23(a) as LBSF requests, Federal Rule 23(c), however, specifically preserves the right of a potential class member to "opt out" of the class action. In contrast, the procedures of the SPV ADR Motion, even if otherwise proper, would vitiate that opt out right and effectively create a "certified" class both without having satisfied Federal Rule 23(a) and by stripping the "class member" of its rights under Federal Rule 23(c).

CACIB additionally opposes the SPV ADR Motion to the extent it seeks to cloak in secrecy any prospective settlement without first having satisfied the requirements of Bankruptcy Rule 9018. Of course, we voice no objection to the sealing of confidential or proprietary information on a case-by-case basis that might be revealed by a settlement motion. But the presumption in favor of non-disclosure is contrary to the transparency required of bankruptcy proceedings and offends the provisions of Bankruptcy Rule 9018.

Accordingly, for the reasons more fully set forth below, CACIB respectfully requests that this Court grant CACIB's Objection and deny the relief sought in the SPV ADR Motion.

## BACKGROUND FACTS

1.    On September 15, 2008 and at various dates thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates, including, but not limited to, Lehman Brothers Special Financing Inc. ("LBSF" and together its affiliated chapter 11 debtors, the "Debtors") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

---

[3]   Federal Rule 23 is made applicable by Rule 7023 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.    CACIB is a commercial and investment bank domiciled in France and conducting business in the United States, among other places, through a branch office.

3.    By Complaint dated September 14, 2010 (the "Complaint"), LBSF commenced an action against various indenture trustees, special-purpose entities (acting as issuers of the concerned notes and swap counterparty to LBSF) and Noteholders to recover funds paid to the Noteholders in connection with various collateralized debt obligations (the "BofA Action"). *See LBSF v. Bank of America Nat'l Assn. et. al (Adv. Pro. No. 10-03547 (JMP))*.[4]

4.    The Complaint names CACIB as a Noteholder defendant in connection with the Pyxis transaction, which involves, *inter alia*, Pyxis ABS CDO 2007-1 Ltd. ("Pyxis") as swap counterparty and issuer of several series of notes (the "Pyxis Notes") and Bank of America National Association (as successor in interest to LaSalle Bank National Association) as the indenture trustee ("BofA" or the "Pyxis Trustee") with respect to the Pyxis Notes (the "Pyxis Transaction").

5.    In the Complaint, LBSF seeks to recover distributions made to the Pyxis Noteholders on a number of grounds, chief among which is LBSF's contention that the clause contained in the Pyxis Transaction documents that modifies LBSF's senior payment priority, making such right junior to the payment rights of the Pyxis Noteholders in instances where LBSF was the "Defaulting Party" (as defined in the swap agreement) (the "Priority Modification Provision") is an unenforceable *ipso facto* clause under sections 365(e)(1) and 541(c)(1)(B) of the Bankruptcy Code.

6.    The Pyxis Notes are governed by an indenture agreement among Pyxis, as issuer,

---

[4] As of the date of this Objection, CACIB has not been served with the Complaint.

Pyxis ABS CDO 2007-1 LLC, as co-issuer and BofA, as trustee, dated as of March 6, 2007 (the "Pyxis Indenture").  A copy of the Pyxis Indenture is attached as Exhibit A to the Declaration of Sara Tapinekis in support of this Objection (the "Tapinekis Decl.") filed contemporaneously herewith.

7.     On October 20, 2010, this Court entered an order staying a number of pending adversary proceedings, including the BofA Action, until July 20, 2011.  *See* Order Staying Avoidance Actions and Granting Certain Related Relief Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 7004(A)(1) [Docket No. 12199].

## OBJECTIONS

### A.     *The Court Lacks the Power to Grant the Relief Sought in the SPV ADR Motion*

8.     Pursuant to the SPV ADR Motion, the Debtors seek authorization to implement mandatory alternative dispute resolution procedures which, *inter alia*, would require a SPV Derivatives Counterparty to designate a third party "with complete settlement authority" to participate in mediation and "negotiate all disputed amounts" in connection with the Pending Actions (including the BofA Action) on behalf of the SPV Derivatives Counterparty.  *See* SPV ADR Motion, ¶ 16.

9.     The allegations set forth in the Complaint derive from disputes concerning the priority of payments between the Noteholders with respect to the Pyxis Notes and LBSF with respect to termination amounts under the derivative agreement.  However, the SPV Derivatives Counterparty is not the economic stakeholder in that dispute and has no right or authority to resolve the matters at issue: rights with respect to the underlying collateral or issues with respect to distributions made to the Noteholders by the Pyxis Trustee.  Because the SPV Derivatives

ADR Procedures contemplate the designation of an Authorized Designee by the SPV Derivatives Counterparty to address matters at issue in the BofA Action, the procedures are both practically unworkable and beyond the power of the Court to impose in derogation of the terms of the Pyxis Indenture.

10. To the extent that the issuer (*i.e.* the SPV Derivatives Counterparty) would seek to designate the Pyxis Trustee or any Noteholder as the Authorized Designee with authority to settle, such designation would be prohibited by the terms of the Pyxis Indenture, which sets forth the rights of Pyxis (as issuer), the Pyxis Trustee and the Pyxis Noteholders. The only basis upon which a person could hold the authority to act on behalf of the Pyxis Noteholders would be through the Pyxis Indenture. Yet, the Pyxis Indenture does not provide the Pyxis Trustee, Pyxis or any Pyxis Noteholder the authority to negotiate the disputed amounts and issues in the BofA Action on behalf of the Noteholders.

11. Section 6.1(a) of the Pyxis Indenture, which sets forth the duties and responsibilities of the Trustee, does not contemplate the Pyxis Trustee acting in such capacity. The Pyxis Indenture provides that "the Trustee undertakes to perform such duties *and only such duties*, as are specifically set forth in this Indenture, and no implied covenants or obligations shall be read into this Indenture against the Trustee." *See* Tapinekis Decl., Exhibit A at §6.1(a)(i) (emphasis added). Inasmuch as the Pyxis Indenture nowhere else empowers the Pyxis Trustee to do so, the Pyxis Trustee does not have the authority to negotiate or resolve the matters set forth in the Complaint.[5] Additionally, in situations in which the collateral has been liquidated and distributed, the SPV Trustees' responsibilities and interests, if any, are even more attenuated.

---

[5] Modifications to the Pyxis Indenture to permit the Pyxis Trustee to act in such a manner on behalf of the Noteholders would require the consent of each holder of each outstanding note of each class. *See* Tapinekis Decl., Exhibit A at §§8.2(a)(c), 8.2(d) (requiring unanimous Noteholder consent to amend the indenture in a

12. The SPV Derivative ADR Procedures, to the extent they are premised upon the requirement to designate a party with authority to act on behalf of the SPV Trustee or the Noteholders, would require this Court illegitimately to expand its power to interpret, modify or vitiate the contractual rights among non-debtor third parties. Although section 105(a) provides a bankruptcy court with the equitable power to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code, such equitable powers "must and can only be exercised within the confines of the Bankruptcy Code." *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart Convenience Stores, Inc.)*, 351 F.3d 86, 91-92 (2d Cir. 2003) (quoting *FDIC v. Colonial Realty Co.,* 966 F.2d 57, 59 (2d Cir. 1992) (quoting *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 99 L. Ed.2d 169 (1988))). Section 105(a) does not "authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *Dairy Mart*, 351 F.2d at 92 (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986)).

13. The equitable power conferred on a bankruptcy court under section 105(a) "is the power to exercise equity in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 97 (2d Cir. 2010) (quoting *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 92) (emphasis in original). Thus, "an exercise of section 105(a) power must be tied to another Bankruptcy Code section and not merely to a general bankruptcy concept or

---

way that would impair or adversely affect the collateral pledged under the indenture or deprive any Noteholder of the security afforded under the indenture).

Indeed, were the Pyxis Trustee to purport or be compelled by the SPV ADR procedures to act without authority, its conduct would vitiate any indemnity rights it might otherwise possess under the Pyxis Indenture.

objective." *Solow v. Kalikow (In re Kalikow)*, 602 F.3d at 97 (quoting *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 92) (emphasis in original).

14.    Because Pyxis lacks authority to designate a third party to negotiate on behalf of the Pyxis Noteholders under contracts entered into by the non-debtor parties to the Pyxis Transaction, and because the Debtors have failed to establish any basis under the Bankruptcy Code for expanding, creating, or vitiating substantive rights of the non-debtor parties, the relief sought by the SPV ADR Motion strays way beyond the proper contours of this Court's powers to grant.

### B.    *The Relief Sought in the SPV ADR Procedures Motion Would Deprive CACIB of Due Process*

15.    The SPV Derivative ADR Procedures quite advertently seek to skirt the due process rights to which any defendant in an adversary proceeding otherwise would be entitled. In this regard, we do not quarrel with the authority of this Court to direct parties in an adversary proceeding to *non-binding* mediation.  Nor do we at this time argue that the Court lacks subject matter jurisdiction over the Pending Actions.[6]  CACIB, however, takes issue with the power of the Court to: (1) permit the conferral of authority on a party with no otherwise ostensible right to act on behalf of and purport to bind CACIB; and (2) approve procedures that would purport to bind CACIB to a settlement under the minimal standards of Bankruptcy Rule 9019 when it would have the right under Federal Rule 23(c) to opt out of a class settlement or, if no class were certified, to wield the right to control its own settlement or lack thereof.

16.    In the BofA Action, LBSF takes the position that the defendants should be

---

[6]    CACIB explicitly preserves, and intends no waiver of, all rights and defenses related to and arising in connection with the BoA Action.

certified into a defendant class pursuant to Federal Rule 23.[7]  Quite apart from whether this legal assertion is correct, there are only two possible resolutions to the request for certification – a class is certified or it is not.  But, in either case, the entitlement of a Pyxis Noteholder to due process of law is meant to be preserved.[8]

17. If the Court were to determine that a class is appropriate under Federal Rule 23(a), and certified a class pursuant to Federal Rule 23(b)(3), it necessarily will have determined that the requisites of Federal Rule 23(a) have been satisfied.  (Of course, among those requisites is the finding that the defenses of a representative party are typical of the class and the finding that such representative adequately will protect the interests of the class.  We leave open for a future discussion whether a representative with no economic stake in the litigation can satisfy the requirements of Federal Rule 23(a)(3) and (4).)  Federal Rule 23(c) requires that a defendant identified as a potential class member be given notice and an opportunity to opt out of the class.  In other words, Federal Rule 23(c) explicitly gives each Federal Rule 23(b)(3) potential class member the right and opportunity to control its own litigation fate, for better or for worse.  A court-approved settlement of the litigation by a class representative in that circumstance would not bind the opt out party.  In contrast, the potential impact of the adoption of the SPV Derivative ADR Procedures effectively would do just that by converting the right to a judicial determination

---

[7]   Federal Rule 23(a) provides that one or more members of a class may sue or be sued as representative parties on behalf of all members *only if*:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis added).

[8]   This is not the appropriate medium to address the merits of the request for class certification.  CACIB intends to respond to that request in due course in the context of the BofA Action and intends here no waiver of its right to do so.

of the claims against a Noteholder to the far lesser option of a Noteholder objection to the approval of a settlement (which will bind it) under the minimal standards of Bankruptcy Rule 9019.

18.     Of course, if a class is not certified, the issue of imposing a settlement upon an individual defendant becomes moot, leaving each defendant free to pursue its own defense.

19.     As presently contemplated, the combination of the approval of the SPV Derivative ADR Procedures and the approval of a settlement in accordance with the Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivatives Contracts, dated December 16, 2008 [Docket No. 2257], the Order Approving Consensual Assumption and Assignment of Prepetition Derivatives Contracts, dated January 28, 2009 [Docket No. 21667] and other orders entered in the Debtors bankruptcy cases permitting settlements, would deprive CACIB of fundamental rights.  Absent a significant modification of the process, assuming it otherwise would be possible to do so, the SPV Derivatives ADR Procedures should not be approved.

### C.     *The Procedures Should Require Appropriate Disclosure*

20.     It has been, and should remain, the hallmark of bankruptcy cases in the United States that transparency is a necessary element to effect an equitable adjustment of legal rights embodied in a reorganization.  Necessarily, the default in favor of transparency is not boundless. However, transparency should not be sacrificed capriciously.  Indeed, the Bankruptcy Rules specifically contemplate the limits of this breach of the principle of transparency, but only in circumscribed circumstances – those set forth in Bankruptcy Rule 9018.  From the SPV ADR Motion, it does not appear that LBSF seriously has sought to justify its request that the material terms of a settlement should be shielded from disclosure.  Absent a basis to satisfy the

requirements for protecting information from disclosure, and an effort to tailor the non-disclosure narrowly to protect confidential or proprietary information, the blanket grant of secrecy should not be afforded.

## CONCLUSION

WHEREFORE, CACIB respectfully requests that this Court deny the SPV ADR Motion in its current form for the reasons set forth herein.[9]

Dated: New York, New York
December 8, 2010

Respectfully submitted,

__/s/ Andrew P. Brozman_____
Andrew P. Brozman
Sara M. Tapinekis
CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, NY 10019
Tel: (212) 878-8000
Fax: (212) 878-8375

*Counsel to Crédit Agricole Corporate and Investment Bank*

---

[9] CACIB reserves the right to join in objections that might be filed by other parties in interest.