**Hearing Date and Time: December 15, 2010 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                         :

In re                        :        Chapter 11
                         :

**LEHMAN BROTHERS HOLDINGS INC., et al.,**  :    **Case No. 08-13555 (JMP)**
                         :

          **Debtors.**      :    **(Jointly Administered)**
                         :
------------------------------------------------------------------x

**LEHMAN BROTHERS HOLDINGS INC.'S RESPONSE TO**
**MOTION OF PRUDENCE WALTZ FOR RELIEF FROM STAY AND AN ORDER**
**DIRECTING THE ABANDONMENT OF CLAIMS AGAINST THE REAL PROPERTY**
**COMMONLY KNOWN AS 844-846 WEST 57TH STREET, LOS ANGELES, CALIFORNIA**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors," and together with their non-debtor affiliates, "Lehman"), submit this response to the motion (the "Motion") filed by Prudence Waltz ("Ms. Waltz") for relief from stay and an order directing the abandonment of claims against the real property commonly known as 844-846 West 57th Street, Los Angeles, California (the "Property")  [Docket Nos. 12780, 12781, 12784, 12788], and respectfully represent:

**Preliminary Statement**

        1.      While the Motion contains demands for a litany of relief, and is accompanied by voluminous exhibits, it is, in essence, a simple request for relief from the

automatic stay pursuant to section 362(d)(2)(A) of title 11 of the United States Code

("Bankruptcy Code").  That request, however, is fatally flawed because, as the United States

District Court for the Southern District of New York (the "District Court") recently observed,

section "'362(d)(2) is aimed at protecting a creditor's right to foreclose, *not* a creditor's right to

pursue any form of litigation against the debtor in another court.'"  *Lawrence v. Motors*

*Liquidation Co. (In re Motors Liquidation Co.)*, 2010 WL 4630327 *3 (S.D.N.Y.) (quoting *In re*

*Northwest Airlines Corp.*, 2006 WL 2583647 *3 n.2 (Bankr. S.D.N.Y. 2006).  Ms. Waltz is not a

creditor seeking to foreclose and thus is not entitled to relief from the automatic stay pursuant to

section 362(d)(2)(A).

       2.      The remaining relief sought in the Motion is similarly flawed, either

because it fails to meet the required standard set forth in the Bankruptcy Code (the demand that

LBHI abandon and relinquish any claims or causes of action related to the Property) or because it

is procedurally improper (the demand for (i) declarations and determinations that neither LBHI

nor any of its subsidiaries or affiliates has an interest in the Property or that the automatic stay is

not applicable to Ms. Waltz's prosecution of the State Court Action (as defined below), and (ii)

costs and attorneys' fees).

       3.      Notwithstanding the Motion's patent failure to establish Ms. Waltz'

entitlement to relief from the automatic stay, the Debtors believe that continuation of the State

Court Action may be the most efficient mechanism for resolving their dispute with Ms. Waltz.

This conclusion is based on several unusual factors that are present in this matter including the

following: (i) LBHI's title insurance company is funding LBHI's defense costs, (ii) the issues

have been partially briefed, and some limited discovery has already occurred, and (iii) the

dispute involves issues of California's substantive property law.  Accordingly, the Debtors do

not object to limited relief from the automatic stay to resume the State Court Action.

### Background

4.     The State Court Action involves a dispute between Ms. Waltz and a

number of other parties, including LBHI, over ownership of the Property.  Based on the

information that the Debtors have been able to collect to date, Ms. Waltz caused a grant deed to

be recorded on January 27, 2006 transferring title to the Property to an individual named

Samantha Hill.  Ms. Hill further transferred the property to an individual named Janelle M. Baird

on August 23, 2006.  Ms. Baird obtained a loan from BNC Mortgage Inc ("BNC").[1] in the

amount of $456,000 (the "BNC Loan").  The BNC Loan was secured by a deed of trust which

was recorded on August 23, 2006.  The BNC Loan was thereafter assigned to Lehman Brothers

Bank FSB (n/k/a Aurora Bank FSB) ("LBB") on September 22, 2006 and then from LBB to

LBHI on November 30, 2006.  On the same day, LBHI transferred its interest in the BNC Loan

to its subsidiary Structured Asset Security Company ("SASCO"),[2] which sold the BNC Loan

into a securitization trust called Structured Asset Securities Corporation Mortgage Loan Trust

Mortgage Pass-Through Certificates Series 2006-BC4 ("SASCO 2006-BC4").  Thereafter, the

BNC Loan went into default and Aurora Loan Services LLC ("ALS"), a wholly owned, indirect

subsidiary of LBHI, was assigned the servicing rights.  A notice of default was recorded on

February 13, 2007 and a notice of trustee's sale was recorded on May 24, 2007.  On June 14,

---

[1] BNC, which is an indirect subsidiary of LBHI and a debtor in these chapter 11 cases, was originally organized under the laws of Delaware as a corporation under the name "BNC Mortgage, Inc."  On or about January 13, 1998, BNC changed its corporate form from a corporation to a limited liability company under the name "BNC Mortgage LLC."  BNC is still referred to as "BNC Mortgage Inc." in those states in which it is registered to conduct business under its former name.

[2] SASCO is also a debtor in these chapter 11 cases.

2007, ALS obtained title to the Property on behalf of the securitization trust via a trustee's deed upon sale.[3]  Pursuant to the SASCO 2006-BC4 Trust Agreement, dated November 1, 2006, LBHI was required to repurchase the BNC Loan as a result of the default thereunder.  On March 31, 2008, LBHI complied with its repurchase obligation by repurchasing the Property (since the BNC Loan had already been foreclosed) from ALS, which had been holding the Property on behalf of the securitization trust.

5.    On or about July 12, 2007, Ms. Waltz commenced an action (the "State Court Action") in the Superior Court for the State of California, County of Los Angeles (the "Superior Court") against certain individual and corporate defendants, including ALS.  The State Court Action generally involves claims by Ms. Waltz for cancellation of fraudulent deed and restitution of real property.  In particular, Ms. Waltz claims that the deed that evidenced her transfer of the Property to Ms. Hill was fraudulent and that all of the subsequent transfers are therefore void.

6.    On October 26, 2010, the Debtors' local counsel notified the Superior Court of LBHI's interest in the Property and the Superior Court stayed the State Court Action pending resolution of LBHI's chapter 11 case.

7.    Ms. Waltz filed a petition for writ of mandate with the Court of Appeal for the State of California, Second Appellate District (the "Court of Appeal") on November 1, 2010 seeking to annul the Superior Court's decision to stay the State Court Proceeding and other related relief.  The Court of Appeal denied Ms. Waltz's petition for writ of mandate by order dated November 9, 2010.

---

[3] ALS may still hold record title to the Property as agent and for the benefit of LBHI since, as servicer, it was the party that obtained the trustee's deed upon sale.  As described herein and as set forth in the declaration of Daniel Glanz (the "Glanz Declaration"), attached hereto as Exhibit A, LBHI reacquired the Property from ALS on March 31, 2008.

### Ms. Waltz is Not Entitled to Relief From
### the Automatic Stay Pursuant to Section 362(d)(2)(A)

8.     Section 362 of the Bankruptcy Code provides, in relevant part, that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . ." 11 U.S.C. § 362(a)(3).

9.     The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." *Mid-Atlantic Natl'l Bank v. New Jersey Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986). It provides a debtor with a "'breathing spell' from the collection process." See, *e.g.*, *Eastern Refractories Co. Inc. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998). "The principal purpose of the automatic stay of acts against property of the estate … is to preserve that property for distribution or use in reorganization of the debtor." *Official Creditors' Comm. of Unsecured Creditors v. PSS S.S. Co., Inc. (In re Prudential Lines, Inc.)*, 114 B.R. 27, 29 (Bankr. S.D.N.Y. 1989). The automatic stay "is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization." *Fidelity Mortgage Inv. v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d Cir. 1976). Indeed, "[t]he automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding." *In re AP Indus.*, 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990). The automatic stay "is effective immediately upon the filing of the petition, and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994); *see also, Dalton v. New Commodore Cruise Lines Ltd.*, 2004 WL 344035 *3 (S.D.N.Y. 2002). Further, "since the bankruptcy stay is

automatic, '[t]he action is void even where the acting party had no actual notice of the stay.'"

*Hearst Magazines v. Stephen L. Geller, Inc.*, 2009 WL 812039 *1 (S.D.N.Y.) (quoting *Dalton v.*

*New Commodore Cruise Lines Ltd.*, 2004 WL 344035 *3 (S.D.N.Y. 2002).

      10.     Section 362(d) of the Bankruptcy Code sets forth the circumstances under

which parties in interest may be entitled to relief from the automatic stay.  While parties in

interest who are not secured creditors generally avail themselves of section 362(d)(1), which

provides for relief from the automatic stay for "cause," the Motion specifically seeks relief under

section 362(d)(2)(A), which provides:

> On request of a party in interest and after notice and a hearing, the court shall
> grant relief from the stay provided under subsection (a) of this section, such as by
> terminating, annulling, modifying, or conditioning such stay –
>> (2) with respect to a stay of an act against property under subsection (a) of
>> this section, if –
>>> (A) the debtor does not have an equity in such property; and
>>> (B) such property is not necessary to an effective reorganization.

11 U.S.C. §362(d)(2)(A).

      11.     By its plain language, section 362(d)(2) only applies when the movant is

seeking relief from "a stay of an act *against property*."  11 U.S.C.§ 362(d)(2) (emphasis added).

The law is clear that section 362(d)(2) is only intended to provide a basis for stay relief where a

movant is attempting to enforce a security interest in a debtor's property, such as by repossessing

or foreclosing on the property.  *See, e.g.*, *Lawrence*, 2010 WL 4630327 *3; *Dale Funding Corp.*

*v. Garner (In re Garner)*, 18 B.R. 369, 370 (S.D.N.Y. 1982) ("The Legislative Statements

following 11 U.S.C. § 362 state in the most general terms that § 362(d)(2) 'is intended to solve

the problem of real property mortgage foreclosures of property where the bankruptcy petition is

filed on the eve of foreclosure.'"); *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 312 (Bankr.

S.D.N.Y. 2001) (granting relief from stay under section 362(d)(2) to permit mortgage holder to

foreclose on mortgage encumbering warehouse owned by debtor).  Conversely, section 362(d)(1), which provides for lifting the stay "for cause," is the applicable provision for lifting the stay to proceed with litigation.  *See Sonnax Indus., Inc. v. Tri Component Prods. Corp.* (*In re Sonnax Indus., Inc.*), 907 F.2d 1280, 1285 (2d Cir. 1990) ("Because the instant case concerns a stay of a judicial proceeding, only Section 362(d)(1) is applicable.").

12.    Ms. Waltz is not attempting to enforce a security interest in the Property. In fact, the subject of the State Court litigation is whether Ms. Waltz has any interest at all in the Property.  This scenario is similar to the facts in *Lawrence* where the Appellant argued that the debtor lacked any equity in a pension plan (based upon the existence of certain anti-alienation and anti-assignment provisions) and that he was, therefore, entitled to relief from the automatic stay pursuant to section 362(d)(2) to proceed in a separate action against the debtor and the pension plan.  *Lawrence*, 2010 WL *2-3.  In its analysis of section 362(d)(2), the District Court explained that  "'362(d)(2) is aimed at protecting a creditor's right to foreclose, *not* a creditor's right to pursue any form of litigation against the debtor in another court,'" *Id.* at *3 (quoting *Northwest Airlines*, 2006 WL 2583647 *3 n.2), and found that "[s]ince Appellant's ERISA action is not an action to enforce a secured interest in real property, Section 362(d)(2) does not apply." *Lawrence*, 2010 WL *3.

13.    Since the Motion is not seeking relief from the automatic stay to enforce a secured interest in real property, the great weight of authority in this district provides that section 362(d)(2) is inapplicable and, therefore, Ms. Waltz's request for relief from the stay pursuant to section 362(d)(2) should be denied.

**Ms. Waltz Does Not and Cannot Satisfy the
Standard Set Forth in Section 554(b) of the Bankruptcy Code**

14.      Ms. Waltz's demand that LBHI abandon and relinquish any claims or

causes of action related to the Property is similarly unavailing.  Section 554(b) of the Bankruptcy

Code provides:

> On request of a party in interest and after notice and a hearing, the court may
> order the trustee to abandon any property of the estate that is burdensome to the
> estate or that is of inconsequential value and benefit to the estate.

11 U.S.C. §554(b).

As the movant, Ms. Waltz has the burden of proof to establish that the Property

and LBHI's causes of action related thereto are burdensome or of inconsequential value to its

estate.  *See In re Pilz Compact Disc, Inc.*, 229 B.R. 630, 635 (Bankr. E.D. Penn. 1999).  The

Motion does not address this standard, likely because the facts do not warrant such a finding.  As

set forth in the Glanz Declaration, LBHI holds title to the Property, which has been valued at

approximately $137,000.[4]  LBHI, therefore, has a valuable interest in the Property, the

abandonment of which would be detrimental to LBHI's estate and its creditors.  While the

ultimate value of the Property to LBHI's estate may be contingent on the outcome of the dispute

with Waltz, there is simply no basis for abandoning such interest before such dispute has been

finally determined.  Further, even if LBHI does not prevail against Waltz, its estate would retain

valuable claims against LBHI's title insurance company and LBHI's predecessors in interest in

the Property.  In sum, LBHI's claims and causes of action relating to the Property are valuable

assets and their abandonment would reduce the value of LBHI's estate with no corresponding

benefit to its creditors or other parties in interest.  Accordingly, Ms. Waltz's request for an order

---

[4] This estimate of the value of the Property is based on information obtained nearly one year ago.  It is
likely that the value of the Property has decreased modestly since that time due to maintenance issues and
the national decline in the residential real estate market.

directing LBHI to abandon its claims and causes of action related to the Property should be denied.

### The Motion is Procedurally Deficient

15.     The remaining relief requested in the Motion, which includes demands for (i) a declaration and determination that neither LBHI nor any of its subsidiaries or affiliates has an interest in the Property; (ii) payment by LBHI of Ms. Waltz costs and attorneys' fees; (iii) a declaration and determination that the automatic stay is not applicable to the State Court Action (collectively, the "Remaining Matters") is procedurally improper because, pursuant to rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), such relief must be brought through an adversary proceeding.  Further, as the Court's determination of each of these issues would inevitably require testimony from witnesses and development of a significant factual record, scheduling the Remaining Matters for argument at an initial hearing is improper under rule 9014-2 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules").[5]

16.     Bankruptcy Rule 7001 and Local Rule 9014-2 protect important interests of the Debtors and other parties in interest.  Namely, they provide procedural safeguards ensuring that parties have a fair opportunity to marshal evidence in support of their own arguments and, if necessary, conduct discovery with respect to their opponent's evidence.  This process provides parties with an opportunity to assess the relative merits of their respective arguments and is thought to promote fairness and encourage settlement.  Accordingly, Ms. Waltz should not be permitted to circumvent Bankruptcy Rule 7001 and Local Rule 9014-2 by

---

[5] Local Rule 9014-2 governs first scheduled hearings and provides that "[t]he first scheduled hearing in a contested matter will not be an evidentiary hearing at which witnesses may testify" unless certain circumstances not relevant to the current matter are present.

asserting claims that should be the subject of adversary proceedings as appendages to a motion for relief from the automatic stay.

17.    Each of the Remaining Matters falls within Bankruptcy Rule 7001 because it involves Ms. Waltz's efforts to recover money or property, obtain equitable relief, or obtain a declaratory judgment with respect to same.[6]  Accordingly, in order to obtain such relief, Bankruptcy Rule 7001 requires that Ms. Waltz commence an adversary proceeding against LBHI.  *See, e.g., In re Lawler*, 75 B.R. 979 (Bankr. N.D. Tex. 1987) (requiring an adversary proceeding to be brought in order to recover money judgment on a claim for legal malpractice while objecting to law firm's claim); *Hancock Bank v. Jefferson*, 73 B.R. 183 (S.D. Miss. 1986) (finding that an adversary proceeding was the proper avenue to assert a claim against a bank in alleging fraud in procuring its deed of trust); *In re Sun Belt Elec. Constructors*, Inc., 56 B.R. 686 (Bankr. N.D. Ga. 1986) (ruling that a motion to enforce a contract that included a request for injunctive or equitable relief must be brought by adversary proceeding); and *In re La Boucherie Bernard, Inc.*, 55 B.R. 23 (Bankr. D.C. 1985) (recognizing that the exceptions under Rule 7001(1) are to be strictly construed, thereby requiring the filing of an adversary proceeding to recover money or property).

18.    Perhaps anticipating these issues, Local Rule 9014-2 provides that "[t]he first scheduled hearing in a contested matter will not be an evidentiary hearing at which witnesses may testify" unless certain requirements that are not relevant to the current matter have been met.  As discussed above, resolution of the issues of whether (i) LBHI or any of its

---

[6] Bankruptcy Rule 7001 provides
         The following are adversary proceedings:
                  (1) a proceeding to recover money or property . . . .
                  (7) a proceeding to obtain an injunction or other equitable relief . . . .
                  (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing.
FED. R. BANKR. P. 7001(1), (7), (9).

subsidiaries or affiliates has an interest in the Property, (ii) Ms. Waltz's costs and attorneys' fees should be borne by LBHI's estate and its creditors, and (iii) the automatic stay is applicable to the State Court Action, which is derivative of the question of whether LBHI has an interest in the Property, will necessarily require the development of a significant factual record, including the opportunity for the Debtors to present their own witnesses and cross examine Ms. Waltz. Accordingly, litigating the Remaining Matters at the initial hearing on the Motion would be procedurally improper and should not be countenanced.

### The Debtors Are Willing to Consent to Limited Relief from the Automatic Stay Pursuant to Section 362(d)(1) of the Bankruptcy Code

19.    While the Motion only requested relief from the automatic stay pursuant to section 362(d)(2) which, as discussed above, is not applicable to the pending matter, the Debtors are willing, and have informed counsel for Ms. Waltz that they are willing, to consent to relief from the stay pursuant to section 362(d)(1) of the Bankruptcy Code for the limited purpose of allowing the State Court Litigation to resume.  Section 362(d)(1) of the Bankruptcy Code provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).

20.    Because section 362(d)(1) does not define "cause," courts determine what constitutes cause based on the totality of the circumstances.  *In re Wilson*, 116 F.3d 87, 90 (3d Cir. 1997).  *Sonnax* is the seminal case in the Second Circuit with respect to relief from the automatic stay for cause.  In *Sonnax*, the Second Circuit catalogued twelve factors (the "*Sonnax Factors*") to be considered and balanced when deciding whether the Automatic Stay should be

lifted.[7]  Not all of the factors are relevant in every case, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999), and a court need not assign equal weight to each factor.  *In re Keene Corporation*, 171 B.R. 180, 183 (Bankr.S.D.N.Y.1994).

21.     Ms. Waltz has failed to establish that she is entitled to relief from the automatic stay pursuant to sections 362(d)(1) or (2), or even cited the *Sonnax* Factors. Nevertheless, the Debtors acknowledge that, in the unusual circumstances of the pending dispute, certain of the *Sonnax* Factors may weigh in favor of granting limited relief from the automatic to allow the State Court Litigation to resume.  In particular:

- While the Superior Court is not a "specialized tribunal," it is already familiar with the dispute between Ms. Waltz and LBHI, and is likely to have experience with similar issues arising out of California's substantive property law.

- LBHI's title insurance company is currently funding LBHI's litigation expenses in the State Court Action.  Accordingly, resolving the disputes with Waltz in the State Court Action is likely to be far less costly to LBHI's estate than would be the case if the matter was litigated in an adversary proceeding before this Court.[8]

---

[7] The *Sonnax* Factors are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

[8]  The Debtors understand that First American Title Insurance Company, their title insurance company, is defending them under a reservation of rights.  It is therefore possible that LBHI will ultimately be responsible for the expenses of the State Court Litigation.

■  The State Court Action has already been partially briefed and the parties have already engaged in limited discovery.  Resolution of the matter, therefore, is likely to be less time consuming via the State Court Action than it would be in a new adversary proceeding.

Accordingly, lifting the automatic stay for the limited purpose of allowing the State Court Action to resume may be justified.

### <u>Conclusion</u>

22.    For the reasons described above, the Debtors respectfully request that the relief requested in the Motion be denied and the automatic stay be lifted for the limited purpose of allowing the State Court Action to resume.

Dated:    December 10, 2010
          New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**
**(Declaration of Daniel Glanz)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                                   :
**In re**                                                          :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                       :    **08-13555 (JMP)**
                                                                   :
                                          **Debtors.**             :    **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

<u>**DECLARATION OF DANIEL GLANZ IN SUPPORT OF**
**LEHMAN BROTHERS HOLDINGS INC.'S RESPONSE TO**
**MOTION OF PRUDENCE WALTZ FOR RELIEF FROM STAY AND AN ORDER**
**DIRECTING THE ABANDONMENT OF CLAIMS AGAINST THE REAL PROPERTY**
**COMMONLY KNOWN AS 844-846 WEST 57TH STREET, LOS ANGELES, CALIFORNIA**</u>

Daniel Glanz hereby declares under penalty of perjury pursuant to section 1746 of

title 28 of the United States Code:

1.      I am over 18 years of age and I can testify to the following facts based on

my personal knowledge, my review of the business records of LBHI,[1] and/or my consultation

with employees of LBHI's subsidiaries.  I submit this Declaration in support of LBHI's response

to the motion of Prudence Waltz for relief from stay and an order directing the abandonment of

claims against the real property commonly known as 844-846 West 57th Street, Los Angeles,

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Objection (as
defined below).

California (the "Objection").  If called to testify, I could testify to the truth of the matters set forth herein.

2.      I am currently employed by  LAMCO LLC ("LAMCO"), a wholly owned subsidiary of LBHI.  I have been a LAMCO employee for approximately 8 months.  My title is Vice President and my responsibilities include portfolio management.  As portfolio manager, I oversee the disposition of LBHI's residential real estate assets.  I also use and consult on the contents of Lehman's whole loan tracking database.

3.      Prior to my time at LAMCO, I worked at LBHI.  I started at LBHI in September 2001.  At LBHI, I was a Vice President and project manager.  From 2007 to the time of LBHI's bankruptcy, my primary responsibility at LBHI was running the whole loan tracking group.

4.      At LBHI, I assisted in designing and implementing various components of the whole loan tracking system and, thereafter, was in charge of managing the system.  This system, consisting of a software application and a database, shows loan ownership throughout the life of a loan while it is owned by LBHI or one of its wholly-owned subsidiaries, LBB or ALS, and also shows the transfer of a loan out of or into the Lehman entities.

5.      The whole loan tracking system had two components – a database where the raw data is stored and a web based application that allowed users to input and review information.  As a transaction occurred, a user would enter the relevant information.  Other users would be able to review data additions or updates before they were saved to the database.  Individuals in Lehman's middle office group were responsible for inputting information into the whole loan tracking system.  The Lehman trading desk communicated the relevant price when a loan was bought or sold.

6.     For every transaction there was a minimum set of required data fields. Each data field contained limits and constraints.  The database would validate those fields if they were within acceptable ranges for the fields.

7.     The whole loan tracking system had a series of internal controls to ensure all the information contained in the database was accurate.  The system was regularly reconciled with Lehman's other databases, including the RAMP and MTS databases which contained loan transfer and other loan information, and a group of Lehman employees was responsible for addressing any variances that were identified in that reconciliation.  In addition, the whole loan tracking system was reconciled with the loan custodians who held loan documents on Lehman's behalf.  Because of these controls, whole loan tracking was the single source of loan ownership and transfer information that was regularly relied upon by Lehman employees in the course of their regularly conducted business.

8.     After LBHI filed for bankruptcy, the system was shut down.  At that time a snapshot was taken of the database and now there is a read-only copy of that data from whole loan tracking.  The system itself no longer exists and instead the information has been frozen in time. Thus, the information exists for historical research only.  I currently maintain the snapshot of the whole loan tracking system as it existed at the time of the bankruptcy and, as detailed herein, I am aware of and familiar with the information that populates the system.

9.     As such I am the custodian of records for the whole loan tracking system at LBHI.  I am authorized to authenticate the attached whole loan tracking records, attached hereto as Exhibit 1.

10.     Under FED. R. EVID. 803(6) or 902(11), as applicable, I certify that the records attached as Exhibit 1 to this declaration are business records of the regularly conducted activity of LBHI and I am a records custodian qualified to authenticate these records.

11.     I certify that these records attached hereto as Exhibit 1 were made at or near the time of the occurrence of the of the matters set forth in the records by a person with knowledge of those matters or from information transmitted by a person with knowledge of those matters.

12.     I certify that these records were kept in the course of regularly conducted business activity at LBHI.

13.     I also certify that the records were made by the regularly conducted activity as a regular practice of LBHI.

14.     Based on my knowledge of and familiarity with the business records attached here to as Exhibit A, I offer the following explanation of Exhibit 1.

15.     The whole loan tracking data shows the loan ownership history of a particular loan.  The first column represents the loan number.  The second column shows the date of various data entries in the whole loan tracking system.  The third column is the price.  The fourth column shows whether the given record represents a buy or sell transaction, indicated by a "B" or "S" respectively.  The fifth column shows the buyer and the sixth column shows the seller.

16.     The price is always relative to the unpaid principal balance of the loan at that point in time.  Thus it is a percentage relative to the unpaid principal balance.  Stated another way, if one multiplies the price as a percentage times the unpaid principal balance of the loan, the answer yields the amount paid for the loan.

17.     Where there are multiple entries on the same day without a change in price or ownership, those entries simply represent an updated entry in LBHI's system.  There could be other information in the system that was being updated which caused the updated entry.  This information appears elsewhere in the database and is not contained on Exhibit 1.  Exhibit 1 shows the information as detailed in paragraph 15, above.

18.     Exhibit 1 tracks the progression of the BNC Loan among Lehman Entities. As set forth on Exhibit 1, on September 22, 2006, the BNC Loan was assigned from BNC to LBB, and then, on November 30, 2006, from LBB to LBHI.  The same day, LBHI assigned the BNC Loan to SASCO,[2] which then sold the BNC Loan into a securitization trust called SASCO 2006-BC4.  On March 31, 2008, LBHI reacquired the BNC Loan from ALS,[3] which, I understand, had been assigned servicing rights to the BNC Loan from SASCO 2006-BC4 following a default thereunder and, as set forth on Exhibit 2, had foreclosed on the Property on June 14, 2007.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 10th day of December 2010.

/s/ Daniel Glanz
Daniel Glanz

---

[2] Lehman's general practice was to transfer loans to SASCO, which would then deposit them into the relevant securitization trust.  LBHI generally did not directly transfer loans into securitization trusts.

[3] Since ALS obtained title to the Property through a trustee's deed upon sale on June 14, 2007, LBHI technically repurchased the Property, not the BNC Loan, but the whole loan tracking system does not distinguish between these two property interests.

**<u>Exhibit 1</u>**
**(LBHI's Business Records)**

| Loan Id | Timestamp | Price | Transaction | Buyer | Seller | address | city | state | zip_code |
|---|---|---|---|---|---|---|---|---|---|
| 122231756 | 5/15/08 11:52 | 100 | B | LEHMAN BROTHERS HOLDINGS | LEHMAN BROTHERS HOLDINGS | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 5/15/08 11:51 | 100 | S | LEHMAN BROTHERS HOLDINGS | LEHMAN BROTHERS HOLDINGS | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 3/31/08 17:21 | 100 | B | LEHMAN BROTHERS HOLDINGS | AURORA LOAN SERVICES LLC | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 11/30/06 19:25 | 103.536 | S | SASCO 2006-BC4 | STRUCTURED ASSET SECURITY CORP. | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 11/30/06 19:25 | 103.536 | B | STRUCTURED ASSET SECURITY CORP. | LEHMAN BROTHERS HOLDINGS | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 11/30/06 19:25 | 103.536 | S | STRUCTURED ASSET SECURITY CORP. | LEHMAN BROTHERS HOLDINGS | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 11/30/06 19:24 | 102.09583 | B | LEHMAN BROTHERS HOLDINGS | LEHMAN BROTHERS BANK | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 11/30/06 19:23 | 102.09583 | S | LEHMAN BROTHERS HOLDINGS | LEHMAN BROTHERS BANK | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 11/10/06 17:21 | 101.12 | B | LEHMAN BROTHERS BANK | LEHMAN BROTHERS BANK | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 11/10/06 17:21 | 101.12 | S | LEHMAN BROTHERS BANK | LEHMAN BROTHERS BANK | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |
| 122231756 | 9/22/06 14:10 | 102.09583 | B | LEHMAN BROTHERS BANK | BNC | 844-846 W 57TH ST | LOS ANGELES | CA | 90037 |

**<u>Exhibit 2</u>**
**(Trustee's Deed Upon Sale)**




**This page is part of your document - DO NOT DISCARD**



| | |
|---|---|
| **20071599432** | **Pages: 003** |

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**07/05/07 AT 08:00AM**

Fee: 10.00
Tax: 0.00
Other: 0.00
Total: 10.00

**Title Company**

**TITLE(S) :**    **DEED**



L E A D   S H E E T



**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**



   **THIS FORM IS NOT TO BE DUPLICATED**   

07/05/07

**20071599432**

Recording requested by:

When recorded mail to:

Aurora Loan Services
601 Fifth Avenue
Scottsbluff, NE 69361

Forward tax statements to the address given above

---

Space above this line for recorders use

TS # 047-12773                Order # 30057783                Loan # 0122231756

# Trustee's Deed Upon Sale

A.P.N.: **5001-014-011**

The undersigned grantor declares:
The grantee herein WAS the foreclosing beneficiary.
The amount of the unpaid debt together with costs was:      **$488,514.19**
The amount paid by the grantee at the trustee sale was:      **$488,514.19**
The documentary transfer tax is:                            None
Said property is in the City of:  LOS ANGELES, County of Los Angeles

**LANDAMERICA DEFAULT SERVICES,** as Trustee, (whereas so designated in the Deed of Trust hereunder more particularly described or as duly appointed Trustee) does hereby **GRANT** and **CONVEY** to **AURORA LOAN SERVICES**

(herein called Grantee) but without covenant or warranty, expressed or implied, all right title and interest conveyed to and now held by it as Trustee under the Deed of Trust in and to the property situated in the county of  **Los Angeles**, State of California, described as follows:

**THE NORTH 113.25 FEET LOT 382, AS SHOWN ON THE MAP ENTITLED, "BURCK'S GOLDEN TRACT", FILED FOR RECORD IN BOOK 10 OF MAPS, PAGE 26.**

RECITALS:

This conveyance is made pursuant to the powers conferred upon Trustee by that certain Deed of Trust dated **8/11/2006**, executed by **JANELLE MARIA BAIRD A SINGLE WOMAN** as Trustor, recorded on **8/23/2006**, instrument number **061878371,** Book , Page  Official Records in the Office of the Recorder of **Los Angeles** County, California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Page 1

Trustee's Deed Upon Sale
Page 2

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the Recorder of said County.

All requirements of law regarding the mailing of copies of notices or the publication of a copy of the Notice of Default or the personal delivery of the copy of the Notice of Default and the posting and publication of copies of the Notice of Sale have been complied with.

Said property was sold by said Trustee at public auction on **6/14/2007** at the place named in the Notice of Sale, in the County of **Los Angeles,** California, in which the property is situated.  Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said trustee the amount being **$488,514.19** in lawful money of the United States, or by the satisfaction, pro tanto, of the obligations then secured by said Deed of Trust.

Date: **6/29/2007**                              **LANDAMERICA DEFAULT SERVICES**

By: _____

Tina Suihkonen, Assistant Secretary

State of California

County of Orange

On **6/29/2007** before me, Nora E. Heredia, Notary Public, personally appeared **Tina Suihkonen** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same and his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____

Nora E. Heredia, Notary Public

NORA E. HEREDIA
COMM. # 1717515
NOTARY PUBLIC-CALIFORNIA
COUNTY OF ORANGE
MY COMM. EXP. JAN. 16, 2011

THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE
USED FOR THAT PURPOSE.