JONES DAY
David L. Carden
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Robert L. Thomson
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
-------------------------------------------------------------------x

**SIXTH INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES FOR THE**
**PERIOD FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

| | |
|---|---|
| Name of Applicant: | Jones Day |
| | |
| Authorized to Provide Professional Services to: | Lehman Brothers Holdings Inc. and its affiliated debtors |

Name of Applicant:                                    <u>Jones Day</u>

Date of Retention Order:                              <u>February 25, 2009
(effective *nunc pro tunc* to the
Engagement Dates, as defined in the
Retention Application (as such term is
defined below))</u>[1]

Period for Which Compensation and Reimbursement are    <u>June 1, 2010 to
Sought                                                September 30, 2010</u>

Amount of Professional Fees Sought as Actual,          <u>$11,570,294.70</u>
Reasonable, and Necessary:

Amount of Expense Reimbursement Sought as Actual,      <u>$369,641.54</u>
Reasonable, and Necessary:

Total Amount Sought:                                  <u>$11,939,936.24</u>

This is an/a:      <u>X</u> Interim    ___ Final Application.

Total Amount Received for this Application:            <u>$9,625,877.30</u>

Total Amount Received for All Prior Applications:      <u>$33,725,487.94</u>

Aggregate Amount Paid to Date:                        <u>$43,351,365.24</u>

**<u>Total Compensation and Expenses
Previously Requested and Awarded:</u>**

| Dated | Filed | Period Covered | Requested Fees | Requested Expenses | Approved Fees[2] | Approved Expenses |
|-------|-------|----------------|----------------|--------------------|-----------------|-------------------|
| 04/09/09 | 04/09/09 | 09/18/08 – 01/31/09 | $1,258,056.00 | $10,425.76 | $1,258,056.00 | $10,425.76 |
| 08/14/09 | 08/14/09 | 02/01/09 – 05/31/09 | $4,119,794.00 | $130,667.42 | $4,095,167.00 | $127,483.94 |
| 12/15/09 | 12/15/09 | 06/01/09 – 09/30/09 | $8,787,718.20 | $413,222.52 | $8,613,937.88 | $305,416.91 |
| 05/10/10 | 05/10/10 | 10/01/09 – 01/31/10 | $9,143,140.60 | $266,470.81 | $8,534,767.56 | $199,731.20 |
| 08/16/10 | 08/16/10 | 02/01/10 – 05/31/10 | $12,923,783.60 | $361,090.19 | Not yet determined. | Not yet determined. |

---

[1] Jones Day's retention was subsequently expanded by various supplemental retention orders entered by the Court.

[2] The "Approved Fees" do not include certain of those fees ("<u>Disputed Fees</u>") in respect of which the Fee Committee (as defined below) has raised certain objections, which objections are disputed by Jones Day. Jones Day and the Fee Committee have agreed to defer presenting the Disputed Fees to this Court for ruling until the hearing on Jones Day's final fee application in these cases.

## COMPENSATION PERIOD

## JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|------|------|------|---------------------------|--------------------------|
| **Partner** | | | | |
| AVIVA WARTER SISITSKY | 1997 | 700 | 829.40 | 580,580.00 |
| BRETT BARRAGATE | 1996 | 725 | 20.80 | 15,080.00 |
| CARL BLACK | 1998 | 650 | 220.50 | 143,325.00 |
| CHRISTINE KIM | 1989 | 925 | 528.80 | 489,140.00 |
| CHRISTOPHER AHERN | 1992 | 675 | 18.30 | 12,352.50 |
| CHUNG-PING LIU | 1996 | 450 | 24.50 | 11,025.00 |
| CORINNE BALL | 1979 | 950 | 405.70 | 385,415.00 |
| DAVID CARDEN | 1976 | 925 | 70.30 | 65,027.50 |
| DAVID HEIMAN | 1971 | 900 | 1.00 | 900.00 |
| EDWARD NALBANTIAN | 1983 | 880 | 105.20 | 92,576.00 |
| ELIZABETH EVANS | 1990 | 825 | 3.60 | 2,970.00 |
| ERIC SEDLAK | 1984 | 675 | 57.30 | 38,677.50 |
| GLENN ARDEN | 1986 | 775 | 271.80 | 210,645.00 |
| GREGORY GORDON | 1980 | 825 | 3.50 | 2,887.50 |
| HERMAN YIP | 1997 | 700 | 8.40 | 5,880.00 |
| IAIN SEOW | 1993 | 700 | 45.90 | 32,130.00 |
| JANE RUE WITTSTEIN | 1985 | 750 | 3.30 | 2,475.00 |
| JAYANT TAMBE | 1992 | 775 | 728.20 | 564,355.00 |
| JEREMY COLE | 1999 | 550 | 36.50 | 20,075.00 |
| JOEL TELPNER | 1984 | 825 | 159.80 | 131,835.00 |
| LEE COFFEY | 1992 | 1075 | 0.70 | 752.50 |
| LEE RUSSO | 1980 | 700 | 17.70 | 12,390.00 |
| LISA LAUKITIS | 1999 | 725 | 33.00 | 23,925.00 |
| MARIANNE CHAO | 1989 | 475 | 0.80 | 380.00 |
| MARK SISITSKY | 1971 | 800 | 21.60 | 17,280.00 |
| MICHAEL BROWN | 1993 | 1075 | 0.80 | 860.00 |
| PETER BENVENUTTI | 1974 | 800 | 120.70 | 96,560.00 |
| PHILIP HOSER | 1982 | 675 | 47.30 | 31,927.50 |
| RICHARD ENGMAN | 1997 | 775 | 132.10 | 102,377.50 |
| RIKA SATO | 1992 | 600 | 24.60 | 14,760.00 |
| ROBERT GAFFEY | 1982 | 825 | 798.10 | 658,432.50 |
| ROBERT MICHELETTO | 1988 | 800 | 53.70 | 42,960.00 |
| ROBERT THOMSON | 1979 | 800 | 0.50 | 400.00 |
| SEVAN OGULLUK | 1999 | 650 | 61.20 | 39,780.00 |
| SIMON POWELL | 1989 | 850 | 32.00 | 27,200.00 |
| TODD GEREMIA | 1999 | 700 | 102.20 | 71,540.00 |

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|
| TONI-ANN CITERA | 1996 | 725 | 196.70 | 142,607.50 |
| TRACY SCHAFFER | 2001 | 650 | 603.10 | 392,015.00 |
| TRACY STRATFORD | 1998 | 525 | 4.00 | 2,100.00 |
| VANESSA SPIRO | 1989 | 775 | 212.20 | 164,455.00 |
| WARREN NACHLIS | 1997 | 750 | 5.50 | 4,125.00 |
| WEYINMI POPO | 1996 | 575 | 1.50 | 862.50 |
| WILLIAM BRYSON | 1985 | 575 | 17.90 | 10,292.50 |
| WILLIAM HINE | 1996 | 700 | 652.10 | 456,470.00 |
| YUICHIRO MORI | 1993 | 600 | 5.20 | 3,120.00 |
| **Partner Total:** | | | **6,688.00** | **5,124,923.50** |
| | | | | |
| **Counsel** | | | | |
| DEEPAK REDDY | 1998 | 700 | 13.10 | 9,170.00 |
| PETER CROSBY IV | 1984 | 575 | 111.20 | 63,940.00 |
| SCOTT FRIEDMAN | 1998 | 625 | 7.00 | 4,375.00 |
| **Counsel Total:** | | | **131.30** | **77,485.00** |
| | | | | |
| **Of Counsel** | | | | |
| AMY KHO | 2002 | 840 | 92.50 | 77,700.00 |
| ELEANOR LAM | 1994 | 550 | 5.90 | 3,245.00 |
| ELIZABETH TERRITT | 1998 | 840 | 19.20 | 16,128.00 |
| FAY NG | 1997 | 600 | -5.00 | -3,000.00 |
| STEVEN FLEMING | 1994 | 550 | 143.60 | 78,980.00 |
| **Of Counsel Total:** | | | **256.20** | **173,053.00** |
| | | | | |
| **Associate** | | | | |
| ABHISHEK BAPNA | 2009 | 325 | 133.60 | 43,420.00 |
| ADAM BLOOM | 2008 | 350 | 8.00 | 2,800.00 |
| ALEXANDER MCBRIDE | 2007 | 375 | 139.80 | 52,425.00 |
| ALEXANDER VAN VOORHEES | 2006 | 400 | 11.00 | 4,400.00 |
| ANNA CUTFIELD | 2008 | 480 | 5.50 | 2,640.00 |
| BENJAMIN ROSENBLUM | 2005 | 550 | 402.40 | 221,320.00 |
| BRANDON MORRIS | 2009 | 325 | 12.70 | 4,127.50 |
| BRIDGET CRAWFORD | 2009 | 350 | 741.10 | 259,385.00 |
| BRONSON BIGELOW | 2004 | 500 | 95.00 | 47,500.00 |
| CHIAHENG SEETOO | 2007 | 225 | 2.50 | 562.50 |
| CHRISTINE HOHL | 2010 | 224 | 57.80 | 12,947.20 |
| CLAIRE WELLS | 2009 | 325 | 16.80 | 5,460.00 |
| DANIEL CULHANE | 2009 | 325 | 258.80 | 84,110.00 |
| DAVID JOHNSTON | 2007 | 540 | 0.90 | 486.00 |

| **Name** | **Year** | **Rate** | **Compensation Period Hours** | **Compensation Period Fees** |
|---|---|---|---|---|
| DAVID MARKS | 2009 | 325 | 421.80 | 137,085.00 |
| EDWARD MARSHBAUM | 2008 | 275 | 0.70 | 192.50 |
| ELIZABETH GREENBERG | 2009 | 325 | 294.50 | 95,712.50 |
| EMILY LAM | 1998 | 500 | 8.00 | 4,000.00 |
| EMILY POSNER | 2008 | 350 | 6.50 | 2,275.00 |
| EMILY ROMANINSKY | 2004 | 475 | 14.70 | 6,982.50 |
| EMMA SHELSTON | 2010 | 250 | 51.90 | 12,975.00 |
| ERI UERKWITZ | 2007 | 375 | 193.00 | 72,375.00 |
| ERIC STEPHENS | 2009 | 325 | 735.20 | 238,940.00 |
| GEORGE SPENCER | 2008 | 375 | 106.90 | 40,087.50 |
| GRACE YANG | 2009 | 325 | 19.30 | 6,272.50 |
| HEATHER THOMPSON | 2005 | 450 | 321.60 | 144,720.00 |
| HIROKO HOSONO | 1998 | 500 | 11.40 | 5,700.00 |
| HIROYUKI YOSHIOKA | 2007 | 300 | 0.20 | 60.00 |
| JAMES DOUGLAS | 1997 | 275 | 8.80 | 2,420.00 |
| JAMES GOLDFARB | 2001 | 550 | 274.20 | 150,810.00 |
| JASON COVER | 2006 | 500 | 211.40 | 105,700.00 |
| JENNIFER DEL MEDICO | 2006 | 450 | 196.40 | 88,380.00 |
| JEREMY KEENAN | 2006 | 400 | 0.30 | 120.00 |
| JESSICA LIN | 2004 | 350 | 2.80 | 980.00 |
| JOHN MCMAHON | 2008 | 350 | 630.70 | 220,745.00 |
| JONATHAN GOREN | 2009 | 325 | 6.90 | 2,242.50 |
| JORDAN SCHWARTZ | 2009 | 325 | 216.00 | 70,200.00 |
| JOSEPH TILLER | 2006 | 450 | 14.40 | 6,480.00 |
| JULIAN LIN | 1999 | 475 | -16.00 | -7,600.00 |
| JUSTINA CHAN | 1996 | 525 | 26.00 | 13,650.00 |
| KAMILLA MAMEDOVA | 2008 | 350 | 43.90 | 15,365.00 |
| KELLY CARRERO | 2004 | 500 | 844.20 | 422,100.00 |
| KELLY MARINO | 2006 | 325 | 100.90 | 32,792.50 |
| LAIRD NELSON | 2009 | 325 | 24.50 | 7,962.50 |
| LAUREN BUONOME | 2009 | 325 | 10.80 | 3,510.00 |
| LEE POLLACK | 2006 | 400 | 280.90 | 112,360.00 |
| LESLIE DUBECK | 2007 | 375 | 67.00 | 25,125.00 |
| MAHESH PARLIKAD | 2008 | 350 | 5.40 | 1,890.00 |
| MATTHEW CHOW | 2009 | 325 | 226.10 | 73,482.50 |
| MICHAEL DAILEY | 2009 | 325 | 741.20 | 240,890.00 |
| MICHAEL FLUHR | 2006 | 400 | 8.30 | 3,320.00 |
| MICHAEL SILBERFARB | 2005 | 475 | 193.60 | 91,960.00 |
| MICHAEL THAYER | 2009 | 325 | 374.10 | 121,582.50 |
| MICHELLE HERMAN | 2003 | 500 | 9.00 | 4,500.00 |

| Name | Year | Rate | Compensation Period Hours | Compensation Period Fees |
|---|---|---|---|---|
| MING WEI LO | 1997 | 375 | 33.60 | 12,600.00 |
| MIRIAM REZNIK | 2009 | 350 | 210.60 | 73,710.00 |
| MIYUKA NISHI | 1997 | 530 | 70.70 | 37,471.00 |
| MU-YUAN CHEN | 2008 | 350 | 5.10 | 1,785.00 |
| NATHAN LEBIODA | 2006 | 500 | 326.40 | 163,200.00 |
| NICHOLAS DAVIES | 2007 | 540 | 7.10 | 3,834.00 |
| NICOLE SANDLER | 2008 | 475 | 1.90 | 902.50 |
| NIDHI YADAVA | 2008 | 350 | 105.50 | 36,925.00 |
| OWEN THOMAS | 2009 | 275 | 1.20 | 330.00 |
| PAUL GREEN | 2008 | 350 | 857.60 | 300,160.00 |
| PETER BRABANT | 2004 | 375 | 235.50 | 88,312.50 |
| PETER WILKINSON | 2007 | 430 | 625.10 | 268,793.00 |
| RAJEEV MUTTREJA | 2005 | 350 | 12.40 | 4,340.00 |
| RICHA SINGH | 2008 | 224 | 2.00 | 448.00 |
| ROBERT ASHLEY | 2006 | 400 | 10.80 | 4,320.00 |
| ROSS BARR | 2004 | 625 | 78.40 | 49,000.00 |
| SARAH LIEBER | 2003 | 500 | 471.10 | 235,550.00 |
| SATARUPA CHAKRAVORTTY | 2006 | 565 | 12.80 | 7,232.00 |
| SATOSHI YAMABE | 2009 | 270 | 65.90 | 17,793.00 |
| SCOTT GRIFFIN | 2000 | 675 | 580.50 | 391,837.50 |
| SCOTT LYNE | 2001 | 550 | 24.20 | 13,310.00 |
| SEAN MURPHY | 2008 | 350 | 21.50 | 7,525.00 |
| STELA TIPI | 2005 | 475 | 179.00 | 85,025.00 |
| SUSAN TURK | 2008 | 350 | 758.20 | 265,370.00 |
| TETSUYA FUNO | 2008 | 285 | 66.20 | 18,867.00 |
| TIMOTHY HOFFMANN | 2003 | 525 | 10.30 | 5,407.50 |
| TIMOTHY NESTLER | 2006 | 400 | 10.60 | 4,240.00 |
| XOCHITL STROHBEHN | 2009 | 325 | 7.50 | 2,437.50 |
| YASUNOBU TAKATAMA | 2007 | 300 | 60.00 | 18,000.00 |
| **Associate Total:** | | | **13,425.10** | **5,438,653.70** |
| | | | | |
| **Senior Staff Attorney** | | | | |
| JENNY LEE | 1985 | 550 | 5.80 | 3,190.00 |
| **Senior Staff Attorney Total:** | | | 5.80 | 3,190.00 |
| | | | | |
| **Staff Attorney** | | | | |
| CINDY CHIEN | 2005 | 200 | 64.60 | 12,920.00 |
| LYNNE FISCHER | 1996 | 275 | 343.00 | 94,325.00 |
| MAXIME GUINDO | 2006 | 375 | 21.50 | 8,062.50 |
| **Staff Attorney Total:** | | | **429.10** | **115,307.50** |

| **Name** | **Year** | **Rate** | **Compensation Period Hours** | **Compensation Period Fees** |
|---|---|---|---|---|
| | | | | |
| **Paraprofessional** | | | | |
| ANDRE RAY | N/A | 250 | 8.00 | 2,000.00 |
| ANDREW SAMUELSON | N/A | 250 | 148.50 | 37,125.00 |
| BRETT STONE | N/A | 275 | 41.70 | 11,467.50 |
| CARISSA CHAN | N/A | 250 | 120.00 | 30,000.00 |
| CHESTER HUI | N/A | 250 | 2.50 | 625.00 |
| CHRISTOPHER CHUNG | N/A | 250 | 12.00 | 3,000.00 |
| CHRISTOPHER RATHBONE | N/A | 240 | 3.50 | 840.00 |
| DANIEL YI | N/A | 250 | 14.30 | 3,575.00 |
| EDITH HO | N/A | 250 | 219.80 | 54,950.00 |
| EVA LAM | N/A | 225 | 2.90 | 652.50 |
| FLORENCE NG | N/A | 250 | 12.40 | 3,100.00 |
| HIROKO NAKAO | N/A | 230 | 5.50 | 1,265.00 |
| JANIS TREANOR | N/A | 275 | 13.20 | 3,630.00 |
| JI UNG KIM | N/A | 275 | 605.00 | 166,375.00 |
| JULIE CHU | N/A | 330 | 6.70 | 2,211.00 |
| KEVIN ENGLERT | N/A | 175 | 542.70 | 94,972.50 |
| KRISTY POSCH | N/A | 225 | 7.60 | 1,710.00 |
| MANAMI KETRING | N/A | 250 | 8.10 | 2,025.00 |
| MARGOT BEACH | N/A | 250 | 11.30 | 2,825.00 |
| MARIANA ZHONG | N/A | 175 | 7.50 | 1,312.50 |
| MARILYN KATZ | N/A | 175 | 14.90 | 2,607.50 |
| MARILYN MARACIC | N/A | 275 | 3.50 | 962.50 |
| MARY HEMANN | N/A | 200 | 24.40 | 4,880.00 |
| MATTHEW LATZMAN | N/A | 250 | 357.40 | 89,350.00 |
| NUBIA CABRERA | N/A | 275 | 2.50 | 687.50 |
| ROGER LOK | N/A | 180 | 10.20 | 1,836.00 |
| RUTH GRANT | N/A | 250 | 5.00 | 1,250.00 |
| SANDY FAN | N/A | 230 | 3.00 | 690.00 |
| SHIRL WONG | N/A | 275 | 3.80 | 1,045.00 |
| STEPHEN FERRY | N/A | 250 | 428.60 | 107,150.00 |
| THOMAS BARRY | N/A | 250 | 9.30 | 2,325.00 |
| VALERIE DUNCAN | N/A | 225 | 1.50 | 337.50 |
| VICKY BANSON | N/A | 225 | 4.00 | 900.00 |
| **Paraprofessional Total:** | | | **2,661.30** | **637,682.00** |
| | | | | |
| **Grand Total** | | | **23,596.80** | **11,570,294.70** |

JONES DAY
David L. Carden
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Robert L. Thomson
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel to Debtors In Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------------x

**SIXTH INTERIM APPLICATION OF JONES DAY,**
**SPECIAL COUNSEL TO THE DEBTORS AND DEBTORS IN POSSESSION,**
**SEEKING ALLOWANCE AND PAYMENT OF INTERIM COMPENSATION AND**
**REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES FOR THE**
**PERIOD FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Jones Day, special counsel for Lehman Brothers Holdings Inc. and its

affiliated debtors in the above-captioned chapter 11 cases (collectively, the "Debtors"),

submits this sixth interim application (the "Application") seeking (a) allowance of

compensation for professional services rendered by Jones Day to the Debtors in the amount

of $11,570,294.70, and (b) reimbursement of actual and necessary charges and disbursements incurred by Jones Day in the rendition of required professional services on behalf of the Debtors in the amount of $369,641.54[3], in each case for the period from June 1, 2010 through September 30, 2010 (the "Compensation Period") pursuant to section 330(a) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines"), General Order M-151, Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases (the "Local Guidelines"), and the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(b) Establishing Procedures for Interim Monthly Compensation of Professionals, entered in these cases on June 25, 2009  (the "Interim Compensation Order").  In support of this Application, Jones Day respectfully represents as follows.

## **Background**

1.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and the other Debtors commenced with the United States Bankruptcy Court of the Southern District of New York (the "Court") voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

---

[3] Such amounts reflect voluntary reductions made by Jones Day in the aggregate amount of $168,420.70 on account of fees and expense incurred during the Compensation Period.

HKI-254863v4

2.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate. On January 19, 2009, the U.S. Trustee appointed an examiner (the "Examiner") and on January 20, 2009, the Court approved the U.S. Trustee's appointment of the Examiner.

4.     On May 26, 2009, the Court appointed a fee committee (the "Fee Committee"), and approved a protocol to govern the review and payment of fees and reimbursement of expenses of professionals retained by the Debtors' estates (the "Fee Protocol"). The Fee Committee was authorized to perform the duties described in the Fee Protocol, including, among others, implementing procedures to effectively monitor the fees of the Retained Professionals (as defined in the Fee Protocol) and reducing inefficiency by establishing measures to avoid duplication of effort, overstaffing, the rendering of unnecessary services, and the incurrence of excessive or inappropriate expenses by Retained Professionals. Since its appointment, the Fee Committee has intermittently issued guidelines with respect to the fees and expenses of the Retained Professionals (the "Fee Committee Guidelines", together with the UST Guidelines, the Local Guidelines and the Interim Compensation Order, the "Guidelines").

5.     On April 14, 2010, the Debtors filed a revised joint chapter 11 plan and disclosure statement [Docket Nos. 8330 and 8332].

HKI-254863v4

**Jurisdiction and Venue**

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Relief Requested**

7.      Pursuant to this Application, Jones Day seeks allowance of the following: (a) compensation for professional services rendered during the Compensation Period in the aggregate amount of $11,570,294.70; and (b) reimbursement of expenses incurred in connection with such services in the aggregate amount of $369,641.54.

8.      During the Compensation Period, Jones Day attorneys and paraprofessionals expended a total of 23,596.80 hours for which compensation is requested.

9.      Prefixed to this Application is the cover sheet required by the UST Guidelines, which includes a schedule setting forth the names of all Jones Day professionals and paraprofessionals who have performed services for which compensation is sought, the person's position in the firm, and the year in which each attorney was first admitted to practice law.  In addition, the schedule sets forth for each person (a) the hourly rate during the Compensation Period, (b) the total hours billed for which compensation is sought, and (c) the total compensation for such hours.

10.     Annexed hereto as Exhibit "A" is a summary of the services rendered by Jones Day for which compensation is sought by project category.  Annexed hereto as Exhibit "B" is a listing of the detailed time entries of Jones Day professionals and paraprofessionals with respect to the compensation requested.[4]  Annexed hereto as Exhibit

---

[4]   Due to the voluminous nature of such documents, Jones Day's detailed time and expense records (Exhibits B and D hereto) are not being filed herewith, but, consistent with the Interim Compensation Order, are being provided to the Court and the Notice Parties (as defined herein).  The Notice Parties have previously received such records under the Interim Compensation Order.

"C" is a summary of the types of expenses for which reimbursement is sought. Annexed hereto as Exhibit "D" is a detailed itemization of such expenses.[4] Annexed hereto as Exhibit "E" is a chart, per the UST Guidelines and Fee Committee Guidelines, listing (a) all hearings/ outside meetings/ depositions, etc. attended by more than one Jones Day timekeeper; (b) all Jones Day timekeepers at such event; and (c) the reasons why all such timekeepers' attendance at such hearings/ outside meetings/ depositions was necessary. Annexed hereto as Exhibit "F" is the certification of Robert W. Gaffey with respect to the Application pursuant to the Local Guidelines.

### Jones Day's Retention

11.    On February 4, 2009, the Debtors filed their Application Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code and Rule 2014 of the Bankruptcy Rules for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtor, *nunc pro tunc* to the Engagement Dates (Docket No. 2725) (the "Retention Application").

12.    On February 25, 2009, the Court entered the Amended Order Pursuant to Sections 327(e) and 328(a) of the Bankruptcy Code Authorizing the Employment and Retention of Jones Day as Special Counsel to the Debtors, *nunc pro tunc* to the Engagement Dates (Docket No. 2925) (the "Retention Order").

13.    During the period of May 2009 through June 2010, the Court entered five further orders granting additional supplemental retention applications under which Jones Day's scope of retention was subsequently expanded.

14.    On November 8, 2010, the Debtors filed their Notice of Presentment of Sixth Supplemental Application of the Debtors Pursuant to Section 327(e) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure for Authorization to Employ and Retain Jones Day as Special Counsel to the Debtors, Nunc Pro Tunc to the Engagement Dates (Docket No. 12593) (the "Sixth Supplemental Retention Application").

15.     On November 30, 2010, the Court entered an Order granting the Sixth Supplemental Retention Application (Docket No. 13100) (the "Sixth Supplemental Retention Order").  Under the Sixth Supplemental Retention Order, Jones Day's scope of retention was expanded to include (a) the representation of Clarks Summit II, LLC, a wholly-owned non-Debtor subsidiary of Debtor Lehman Commercial Paper Inc., in connection with the sale of aircraft bearing manufacturer's serial numbers 7086 and 7024 owned by Clarks Summit II, LLC, (b) matters relating to causes of action under chapter 5 of the Bankruptcy Code falling outside the scope of Jones Day's previously Court-approved retention, as requested by the Debtors and agreed to by Jones Day, which the Debtors' primary restructuring counsel is unable to assist them with due to conflict or other reasons, (c) matters relating to the investigation and, if appropriate, pursuit of derivatives or structured product related causes of action derivatively on behalf of LBI, as requested by the Debtors and agreed to by Jones Day, and (d) matters in connection with the representation of LBHI with respect to issues relating to the administration of LB UK RE Holdings Limited.

### Payments Received by Jones Day in Accordance with the Interim Compensation Order

16.     On June 25, 2009, the Court entered the Interim Compensation Order, which superseded the amended order dated March 13, 2009 in its entirety.  Pursuant to the Interim Compensation Order, the Court established procedures for the Debtors' payment of interim compensation and reimbursement of expenses of professionals retained in these chapter 11 cases.

17.     During the Compensation Period, Jones Day served a notice of monthly fee and expense invoice for each monthly period from June 1, 2010 through September 30, 2010 (collectively, the "Monthly Statements").  Because no objections were filed to any of the Monthly Statements, the Debtors made the following payments to Jones

6

Day in respect of certain of the Monthly Statements, pursuant to the Interim Compensation

Order:

| Periods | Fees Requested | Expenses Requested | Payment Dates | Payment Amount[5] |
|---|---|---|---|---|
| June 2010 | $2,890,149.60 | $137,881.29 | August 20 2010 | $2,450,000.97 |
| July 2010 | $2,579,202.60 | $79,158.07 | September 24, 2010 | $2,142,520.15 |
| August  2010 | $3,043,099.50 | $55,003.01 | October 19, 2010 | $2,489,482.61 |
| September 2010 | $3,057,843.00 | $97,599.17 | November 19, 2010 | $2,543,873.57 |

## Summary of Services Rendered by Jones Day

18.    Below is a summary of the major activities performed during the Compensation Period by Jones Day professionals and paraprofessionals in assisting the Debtors with their chapter 11 cases and other restructuring-related activities, categorized by region.[6] More detailed descriptions of the services rendered by Jones Day are included in the Monthly Statements and Exhibit B hereto.  In accordance with the UST Guidelines, a summary of the hours and amounts billed during the Compensation Period by each timekeeper, as well as each timekeeper's position, hourly rate and, if applicable, the year in which each timekeeper was first licensed to practice law, is set out in the cover sheet prefixed to this Application.

19.    During the Compensation Period, Jones Day professionals and paraprofessionals assisted the Debtors in relation to a multitude of issues arising in the Asia

---

[5] Payments were made on account of 80% of fees and 100% of expenses requested.

[6] Categorizing the various services provided to the Debtors by Jones Day by region was previously approved by both the Debtors and the Fee Committee.

Pacific region, Australia, England, Hong Kong, Japan, the Philippines, Taiwan, Thailand and the United States as a consequence of the Debtors' chapter 11 cases in the United States, including anticipated litigation, securities, insolvency, commercial, real estate and any and all other related issues as more specifically set out below.

20.    In addition, Jones Day professionals represented the Debtors in litigation to recover money damages which has been pending in the U.S. Bankruptcy Court in San Francisco since 2003, involving chapter 11 debtors Central European Industrial Development Company and The Kontrabecki Group LP, and their former principal, John Kontrabecki.

### Asia Pacific

21.    During the Compensation Period, Jones Day professionals and paraprofessionals attended to numerous case administration tasks and commercial issues arising from the restructuring of various entities across the Asia Pacific region and globally. Such tasks included liaising and coordinating across a number of Jones Day's offices in various jurisdictions, compiling and filing of Monthly Statements, preparing Jones Day's Fifth Interim Fee Application, responding to the Fee Committee's questions and requests and dealing with conflict and similar issues arising from time to time and other issues as more specifically set forth below.

### Australia

22.    During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Australia included assisting and advising the Debtors with respect to insolvency proceedings in relation to Lehman Brothers Australia Limited (In Liquidation) ("LBA").  Such services included meeting with the liquidators of LBA, assisting and advising the Debtors in relation to settlement options proposed by the liquidators of LBA for claims against LBA and non-Australian Lehman entities, and negotiating agreement on

costs orders of proceedings in the Federal Court of Australia and High Court of Australia. Jones Day professionals and paraprofessionals also advised the Debtors in relation to protecting the Debtors' rights under a gold price swap agreement (and other associated transaction documents) and entering into a settlement agreement with an Australian company, including advising on the Debtors' rights and obligations under such documents.

*Hong Kong*

23.     Jones Day was retained in December 2009 to advise LBOP on the issuance of 7% exchangeable notes in the aggregate principal amount of $9.75 million due 2011, exchangeable into shares held by LBOP in a Taiwanese company, which were issued together with a call option, right of first refusal and security for the notes (collectively, the "Transactions"). During the Compensation Period, Jones Day professionals and paraprofessionals advised the Debtors on issues including the exchange of notes, exercise of the call option and sale of its remaining interests, drafted, reviewed, negotiated and analyzed the various transactional documentation required for the Transactions and advised on, prepared and coordinated the logistics and other arrangements required to be undertaken by all relevant parties to the Transactions in various overseas jurisdictions such as Taiwan, Bermuda, the British Virgin Islands and Samoa. During the Compensation Period, Jones Day also handled closing and post-closing issues arising out of the Transactions.

*Japan*

24.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Japan were attributed predominantly to Lehman Brothers Special Finance ("LBSF") and LBHI. Such services included conducting legal research on civil rehabilitation law, drafting memoranda in relation to reorganization and licensing matters, preparing and filing various documents with the local court, translating various documents from Japanese into English and vice-versa, assisting the Debtors and other

9

United States-based Lehman entities in Japan in asserting claims in the Japanese Civil Rehabilitation proceedings of Lehman Brothers Japan KK ("LBJ"), Lehman Brothers Commercial Mortgage KK ("LBCM") and Sunrise Finance KK ("Sunrise"). During the Compensation Period, Jones Day professionals also advised (i) the Debtors and other United States-based Lehman entities in Japan on the contents of the proposed rehabilitation plans of LBJ, LBCM and Sunrise and associated approval and voting procedures, (ii) LBSF on the settlement of derivatives claims involving LBJ and other counterparties, and (iii) the Debtors on operational matters associated with the winding down of operations in Japan.

25.    During the Compensation Period, Jones Day professionals and paraprofessionals advised L.B.C. YK, L.B.A. YK and LB Capital Corporation III on the disposal strategy concerning a number of portfolios of non-performing loans and other foreclosed assets in Japan. Jones Day liaised with local counsel and other professionals regarding Japanese legal and commercial issues and assisted in the drafting of the relevant transaction documents.

*Korea*

26.    During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Korea focused on the disposal of Maewha K-Star Co., Ltd.'s ("Maewha") KRW55 billion senior loan via an auction process in Korea, which included the reviewing of relevant loan and security documents, advising Maewha on its disposal strategy, liaising with local counsel in Korea and the drafting of relevant transaction documents related thereto.

27.    Jones Day professionals also advised GKI Development Co., Ltd. on various workout and bankruptcy issues in relation to its involuntary bankruptcy.

*Philippines*

28.     During the Compensation Period, Jones Day professionals and paraprofessionals reviewed and analyzed rehabilitation plans, court orders and other relevant documents in connection with the exit strategy concerning LBHI's interests in certain non-performing loan portfolios in the Philippines. Jones Day was involved in the drafting of and finalizing the relevant transaction documents related thereto.

*Taiwan*

29.     During the Compensation Period, the services rendered by Jones Day professionals and paraprofessionals in Taiwan were attributed to TL I Asset Management Company Limited, TL II Asset Management Company Limited and TL III Asset Management Company Limited.  Such services included advising Lehman entities with respect to the disposal and liquidation of assets and repayment of debts, drafting letters, agreements and other correspondence and documents with or to banks, creditors, debtors and governmental authorities, attending to matters relating to mortgage foreclosure and default disputes with banks and debtors, litigation, and translating various documents from English into Chinese and vice versa, as well as representing Lehman entities in negotiations with various third parties and in respect of changes to the corporate registrations as required.

30.     Particularly, Jones Day has assisted TL III to claim compensation against its contractual parties in Yilan development project, and to negotiate with its largest creditor bank, Hua-Nan Bank, in relation to the disposal of Yilan investment during the past few months.

*Thailand*

31.     The services rendered by Jones Day professionals and paraprofessionals in Thailand during the Compensation Period included assisting LBHI and its subsidiaries in managing LBHI's Thailand real estate and other assets.  This involved

11

advising LBHI and its subsidiaries on investment, financing issues and disposal strategies – in particular, a number of assets are currently in the process of being auctioned. With respect to disposal strategy and implementation of the sales process, Jones Day has drafted all key transaction documents and has been an integral part of the team from the inception of the sales process.

32.     Jones Day has researched the financing structures for a number of LBHI's assets in Thailand, in particular reviewing the extent to which security has been granted over LBHI assets as a result of its debt obligations.

33.     Jones Day liaised with local counsel and other professionals on Thai legal and tax issues affecting the LBHI asset portfolio in Thailand and advised on compliance issues with regard to Thai laws on financing and resulting security issues as well as providing general bankruptcy and insolvency advice.

*London*

34.     In September 2009, Jones Day professionals in London were retained to advise the Debtors on derivatives documentation matters arising from the occurrence of credit events with respect to various "Reference Obligations" referenced in credit derivatives and synthetic CDO documentation to which the Debtors are party, including the exercise or performance of their respective rights and obligations under such documentation.

35.     During the Compensation Period, Jones Day advised the Debtors on various valuation issues under five separate credit derivative transactions. Jones Day reviewed and analyzed the documentation for these transactions and the subsequent service of Credit Event Notices, Notice of Termination and Statements of Calculation by counterparties on the Debtors. Jones Day further provided advice to the Debtors, as well as draft correspondence to counterparties regarding the basis of valuation of sums due to Debtors under the transaction documentation.

HKI-254863v4

36.     Jones Day reviewed and analyzed the documentation for certain CDO structures and the related swap transaction and provided advice to the Debtors regarding potential rights of termination and recovery arising from marked to market trigger events in the financing structure.  Jones Day developed a proposed strategy for effecting a termination in the context of the documentation and a potential judicial challenge.

37.     During the Compensation Period, Jones Day also advised on the termination and settlement of derivatives transactions involving the Debtors related to a series of fifteen securitization structures.  Jones Day reviewed and analyzed the transaction documents and prepared and negotiated settlement agreements with the Debtors' counterparties with respect to each securitization structure.

38.     Jones Day also advised on the termination of a derivative transaction against a non-performing counterparty.  Jones Day is assisting the Debtors to recover amounts owed to them by the counterparty through foreign court proceedings.

*New York*

*Barclays*

39.     During the Compensation Period, Jones Day continued its representation as special counsel to the Debtors to pursue claims or other remedies arising from the Asset Purchase Agreement between Debtors and Barclays executed September 16, 2008, and approved by the Court by order entered September 20, 2008 (the "Sale Order").

40.     In September 2009, after the conclusion of Bankruptcy Rule 2004 discovery, Jones Day filed an adversary complaint and an extensive motion in the United States Bankruptcy Court for the Southern District of New York under Federal Rule 60(b) seeking significant relief from certain aspects of the Sale Order regarding the sale of Debtors' New York North American broker dealer business to Barclays on the grounds that material aspects of the sale transaction were not properly disclosed to the Court.  The trial of the Rule

13

60(b) proceedings continued in substantial part during the Compensation Period. Jones Day took a lead role in the trial, questioning multiple witnesses, introducing hundreds of documents into evidence, arguing trial-related motions before the Court and otherwise addressing issues that arose during trial. Jones Day engaged in extensive preparation for trial and trial-related motions that involved additional depositions, a continuing review of documents, assembling of trial exhibits, drafting witness outlines, designating deposition testimony, drafting motion papers, and preparing witnesses for trial.

*Derivatives*

41.     During the Compensation Period, Jones Day has continued to advise the Debtors with regard to certain derivative transactions with Prudential Global, Inc. This matter is currently in litigation before the Court.

42.     During the Compensation Period, Jones Day has continued to advise the Debtors concerning a gold price hedge with Norton Gold Fields Ltd ("Norton"). At the start of the Compensation Period, this matter was in litigation before the Court. In June of 2010, Jones Day prepared a mediation strategy and attended a mediation of behalf of the Debtors. In July and August of 2010, Jones Day negotiated a settlement on behalf of the Debtors. At the end of August of 2010, the Debtors and Norton finalized settlement and the Debtors withdrew their Motion to Compel.[7]

43.     During the Compensation Period, Jones Day continued to advise the Debtors regarding transactions under three separate ISDA Master Agreements between the Debtors and Nomura entities including valuation issues pertaining to Icelandic bank Reference Entities. During the previous Compensation Period, Jones Day drafted and filed

---

[7] As part of the Norton settlement, Norton agreed to reimburse the Debtors for all of Jones Day's fees related to the Norton matter from September 3, 2010 on. Although Jones Day has invoiced the Debtors' estates for such fees, will continue to do so until the mater has concluded, and hereby seeks approval for such fees by this Application, Jones Day has assisted the Debtors in their efforts to seek reimbursement from Norton for all such post-September 2, 2010 fees pursuant to the settlement.

adversary complaints and claim objections against Nomura International and Nomura
Securities, a claim objection against Nomura GFP, and motion to consolidate proceedings
against the three Nomura entities.   This matter is currently in litigation before the Court.   In
June and July of 2010, Jones Day drafted and served initial discovery requests on Nomura
International, Nomura Securities, and Nomura GFP.   In July of 2010, Jones Day began
collecting and reviewing documents from the Debtors.   In July of 2010, Jones Day also
drafted and negotiated a discovery order and engaged experts in this matter.   In August of
2010, the parties executed and filed the discovery protective order and Jones Day collected
and reviewed documents from Barclays.   In August of 2010, Jones Day also represented the
Debtors in a hearing on their motion to consolidate the proceedings against the three Nomura
entities, and the Court granted this Motion.   In September of 2010, Jones Day negotiated a
discovery scope agreement on behalf of the Debtors and continued to review relevant
discovery in this matter.

44.     In addition to the foregoing litigation matters, during the
Compensation Period, Jones Day represented the Debtors in alternative dispute resolution
proceedings with two derivative counterparties.   With regard to these matters, Jones Day
crafted and implemented strategy reflecting the Debtors' position.

45.     In addition to the foregoing alternative dispute resolution matters,
during the Compensation Period, Jones Day continued to counsel the Debtors concerning
various derivatives and other complex structured products entered into with multiple
counterparties including interest rate swaps, credit default swaps, total return swaps, foreign
currency swaps, multi-currency cross border swaps, accelerated share repurchase transactions
and other financial products.   With regard to these matters, Jones Day analyzed relevant
transaction documents and communications and conducted a broad range of research relating
to all aspects of relevant state and federal laws.   Jones Day also continues to advise the

Debtors on derivatives of issues pertaining to collateral and margin posting, valuation and reconciliation, as well as unique provisions specific to counter-party swaps.

46.    With regard to a number of these derivatives transactions, Jones Day drafted and served pre-litigation discovery on counter-parties as well as relevant third parties. During the Compensation Period, Jones Day received and reviewed document productions responsive to these requests.  Jones Day continues to review such document productions and craft pre-litigation and litigation strategy with respect to additional counterparties of the Debtors.

*Barclays v. Lehman Funds*

47.    During the Compensation Period, Jones Day continued to represent Debtors in two lawsuits filed by Barclays Capital Inc. ("Barclays") against various real estate and private equity funds that are (or, at the time of the allegations, were) affiliates and/or subsidiaries of the Debtors.  Barclays alleged non-payment of placement fees to the Private Investment Management group, a former division of Lehman acquired by Barclays post-petition.  Barclays initially filed these actions in New York State Court, but during the previous Compensation Period, Jones Day removed these actions to the Southern District of New York and persuaded the assigned judges to refer the actions to the Court.  At the beginning of June 2010, Jones Day conducted research and drafted an opposition in anticipation of Barclays' motion to remand the actions to New York State Court, due later that month.  On June 15, 2010, Barclays voluntarily dismissed both lawsuits without prejudice.

*Greenbrier*

48.    During the Compensation Period, Jones Day continued to advise the Debtors in connection with the work out and restructuring of certain loans and investments involving Greenbrier Minerals LLC ("Greenbrier").  Services rendered by Jones Day professionals  included,  among  others,  advising  the  Debtors  in  relation  to  Lehman

16

Commercial Paper Inc. ("LCPI"), particularly, as it relates to LCPI's (i) litigation strategy in connection with its enforcement of the automatic stay against Greenbrier; (ii) exercise of foreclosure remedies under its credit agreement with certain affiliates of Greenbrier in connection with various defaults existing under the agreement; and (iii) settlement strategy and sharing arrangement relating to a potential sale of Greenbrier's assets. Jones Day professionals also participated in numerous teleconferences with counsel for Greenbrier relating to the settlement of the parties' disputes and the sharing arrangement.

49.    In addition to performing the above-mentioned services for the Debtors, Jones Day professionals conducted extensive research and prepared and prosecuted various pleadings in connection with LCPI's motion to enforce the stay and Greenbrier's opposition to such relief.

*Chicago Mercantile Exchange*

50.    During the Compensation Period, Jones Day professionals examined the facts and legal issues surrounding the close out of certain Lehman positions on the Chicago Mercantile Exchange ("CME") shortly before the bankruptcy filing.  Services rendered included review of pertinent documents, research regarding potential claims and standing to assert such claims, communications with the SIPA Trustee for LBI concerning his dealings with the CME in regard to such potential claims, and commenting on a tolling agreement reached between CME and the SIPA Trustee.

***San Francisco***

51.    The history of the San Francisco – Kontrabecki Matter, which remains pending in the U.S. Bankruptcy Court in San Francisco has been summarized in prior applications.

52.    In October 2009, the Court granted a motion by defendant John Kontrabecki for partial summary judgment to exclude the primary element of the Debtors'

economic damages.  Jones Day prepared, and filed on November 17, 2009 a motion for reconsideration of the partial summary judgment.  The Court denied the motion for reconsideration on March 31, 2010.

53.    Following denial of the motion for reconsideration, the Debtors and John Kontrabecki jointly requested, and the court ordered, a judicial settlement conference before a Magistrate Judge, and that all litigation be suspended during the course of the settlement conference proceedings.

54.    During the Compensation Period, Jones Day prepared and filed two extensive settlement conference statements and a voluminous appendix of the record as directed by the settlement judge, and prepared for and attended one settlement conference session in late September.  In a subsequent settlement conference session held after the Compensation Period, a full settlement of all disputes was negotiated.  The essential terms of the settlement provide for full mutual releases, and for LBHI neither to receive nor pay any settlement amounts.

55.    Approval of various aspects of the settlement by the bankruptcy court in San Francisco is required.  A request for such approval is pending, and a ruling is anticipated during December 2010.

## Expenses Incurred by Jones Day

56.    Section 330 of the Bankruptcy Code authorizes "reimbursement for actual, necessary expenses" incurred by professionals employed under section 327 of the Bankruptcy Code.  Accordingly, Jones Day seeks reimbursement for expenses incurred in rendering services to the Debtors during the Compensation Period.  The total amount of the expenses is $369,641.54 for the Compensation Period, as summarized in the attached Exhibit "C" and detailed in the attached Exhibit "D".

57.    In accordance with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Guidelines, Jones Day maintains the following policies with respect to expenses for which reimbursement is sought herein:

(a)    No amortization of the cost of any investment, equipment, or capital outlay is included in the expenses.  In addition, for those items or services that Jones Day purchased or contracted from a third party (such as outside copy services), Jones Day seeks reimbursement only for the exact amount billed to Jones Day by the third party vendor and paid by Jones Day to the third party vendor.

(b)    Black and white photocopying by Jones Day was charged at 10 cents per page.[8]  Color photocopying by Jones Day was charged at 50 cents per page.  To the extent practicable, Jones Day utilized less expensive outside copying services.

(d)    Telecopying by Jones Day was charged to the Debtors at the cost of the long distance call required to send the facsimile.  The firm did not impose any charge to the Debtors for local facsimiles, inbound facsimiles, interoffice facsimiles or facsimiles costing less than $1.00.

(e)    Meal charges incurred during travel charged to the Debtors for Jones Day personnel were limited to $40 per person.

(f)    Working meals and overtime meals for Jones Day personnel working past 8:00 p.m. were limited to $20 per person.

(g)    Coach airfares charged to the Debtors for Jones Day personnel were associated with out of town travel, meetings with the Debtors or other parties in these chapter 11 cases.

---

[8] As disclosed and agreed to by the Fee Committee, Jones Day charges the Debtors at cost for duplication charges for obtaining court records at the Tokyo District Court.

HKI-254863v4

(h)     Taxi fares for overtime travel home after 8:00 p.m. were limited to $100.

(i)     Fees for hotel accommodation charged to the Debtors for Jones Day personnel were not in excess of $500 per night.

(j)     No staff overtime, word processing, proofreading charges or other "overhead" have been charged to the Debtors.

## The Requested Compensation Should Be Allowed

58.     Section 330 of the Bankruptcy Code provides that the Court may award a professional person employed under section 327 or 1103 of the Bankruptcy Code:

(A)     reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

(B)     reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a)(1).  Section 330(a)(3)(A) further provides the following standards for the Court's review of a fee application:

In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

HKI-254863v4

11 U.S.C. § 330(a)(3)(A).

59.     Jones Day respectfully submits that it has satisfied the requirements for the allowance of the compensation and reimbursement of expenses sought herein.  The services described above, at the time they were provided, were necessary and beneficial to the administration of the Debtors' chapter 11 cases.  Jones Day's services were consistently performed in a timely manner, commensurate with the complexity of the issues facing the Debtors and the nature and importance of the problems, issues, and tasks.  Furthermore, the compensation sought by Jones Day is reasonable because it is based on the customary compensation charged by comparably skilled practitioners outside of bankruptcy. Accordingly, approval of the compensation sought herein is warranted.

### Statements of Jones Day Pursuant to Bankruptcy Rule 2016(a)

60.     Pursuant to the Interim Compensation Order, Jones Day has submitted the Monthly Statements to (a) the Debtors, (b) counsel to the Debtors, Weil, Gotshal & Manges, LLP, (c) counsel to Creditors' Committee, Milbank, Tweed, Hadley & McCloy LLP, (d) the U.S. Trustee, (e) the Fee Committee, and (f) BrownGreer PLC (collectively the "Notice Parties"), during the Compensation Period with respect to the Debtors' chapter 11 cases, as follows: (a) from June 1, 2010 through June 30, 2010 – fees of $2,890,149.60 and expenses of $137,881.29; (b) from July 1, 2010 through July 31, 2010 – fees of $2,579,202.60 and expenses of $79,158.07; (c) from August 1, 2010 through August 31, 2010 – fees of $3,043,099.50 and expenses of $55,003.01; and (d) from September 1, 2010 through September 30, 2010 – fees of $3,057,843.00 and expenses of $97,599.17.[9]

61.     In total, therefore, Jones Day has submitted Monthly Statements for fees of $11,570,294.70 and expenses of $369,641.54 during the Compensation Period.

---

[9] Please refer to paragraph 17 hereof for a further explanation of the fees included in each of the above described Monthly Statements.

HKI-254863v4

62.     Jones Day has received such payment from the Debtors relating to fees and expenses in the Monthly Statements on account of services provided during the Compensation Period as described in paragraph 17 above.

63.     No agreement or understanding exists between Jones Day and any third person for the sharing of compensation, except as allowed by section 504(b) of the Bankruptcy Code and Bankruptcy Rule 2016 with respect to the sharing of compensation between and among partners of Jones Day.  All of the services for which compensation is sought in this Application were rendered at the request of, and solely on behalf of, the Debtors, and not at the request of, or on behalf of, any other person or entity.

64.     Prior to the filing of this Application, Jones Day received no objections to any of the Monthly Statements provided under the Interim Compensation Order from the Debtors, the Fee Committee or any one else.

## **Notice**

65.     Notice of this Application and its exhibits will be given to (a) the Debtors; (b) counsel to the Debtors; (c) the U.S. Trustee; (d) counsel to the Committee; (e) the Fee Committee; and (f) as requested by the Fee Committee, BrownGreer PLC.  Jones Day respectfully submits that no other or further notice is required.


WHEREFORE, Jones Day respectfully requests that the Court (a) enter an order allowing interim compensation of $11,570,294.70 to Jones Day for professional services rendered as special counsel for the Debtor during the Compensation Period, plus reimbursement of actual and necessary charges and disbursements incurred in the sum of $369,641.54 in connection with Jones Day's services during the Compensation Period; (b) authorize and direct the Debtors to pay to Jones Day any and all unpaid, invoiced amounts

HKI-254863v4

for the Compensation Period; and (c) grant to Jones Day such other and further relief as the

Court may deem proper.


Dated:  December 14, 2010
       New York, New York

               /s/  Ross S. Barr
               David L. Carden
               Robert W. Gaffey
               Ross S. Barr
               JONES DAY
               222 East 41st Street
               New York, New York 10017-6702
               Telephone:  (222) 326 3939
               Facsimile:  (212) 755 7306

               Robert L. Thomson
               JONES DAY
               29th Floor, Edinburgh Tower
               The Landmark
               15 Queen's Road Central
               Hong Kong
               Telephone: (852) 2526 6895
               Facsimile: (852) 2868 5871

               SPECIAL COUNSEL TO THE DEBTORS
               IN POSSESSION

HKI-254863v4

**SUMMARY OF SERVICES BY PROJECT CATEGORY FOR SERVICES RENDERED
BY JONES DAY ON BEHALF OF THE DEBTORS
FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

| Project Category | Total Hours by Project | Total Fees by Project (USD) |
|---|---|---|
| Asia Pacific | 3,204.70 | 1,503,393.50 |
| London | 328.70 | 226,696.20 |
| New York | 19,789.80 | 9,668,237.50 |
| San Francisco | 273.60 | 171,967.50 |
| **Total** | **23,596.80** | **11,570,294.70** |

## CURRENT FEE PERIOD: JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010

Case No.: 08-13555 (JMP)

Case Name: In re LEHMAN BROTHERS HOLDINGS INC., *et al.*, Debtors.

| APPLICANT | DATE/DOCUMENT NO. OF APPLICATION | FEES REQUESTED | FEES AWARDED | EXPENSES REQUESTED | EXPENSES AWARDED |
|---|---|---|---|---|---|
| Jones Day | December 14, 2010 | $11,570,294.70 | [          ] | $369,641.54 | [          ] |

HKI-254855v1

**EXHIBIT "B"**

**SERVED ON NOTICE PARTIES UNDER INTERIM COMPENSATION ORDER**

EXHIBIT "C"

**ACTUAL AND NECESSARY DISBURSEMENTS INCURRED**
**BY JONES DAY ON BEHALF OF THE DEBTORS**
**FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

| Disbursement Description | Amount Billed (USD) |
|---|---:|
| Agents Fee | 4,411.79 |
| Airfare | 6,900.15 |
| Binding | 235.00 |
| Calling card charges | 17.11 |
| Color duplication charges | 283.50 |
| Communication charges | 634.82 |
| Computerized research services | 916.00 |
| Conference Charges | 3,972.25 |
| Courier services | 2,717.92 |
| Court costs | 3,695.28 |
| Court reporter fees | 129,181.35 |
| Docket copy charges | 2.08 |
| Duplication charges | 22,860.61 |
| Federal Express charges | 493.76 |
| Filing fees and related | 5.13 |
| Food and beverage expenses | 1,655.29 |
| General internal charges | 36.00 |
| Graphics and photography charges | 11,578.38 |
| Hotel charges | 9,710.86 |
| Late Work Meal | 492.70 |
| Late Work Parking | 80.00 |
| Late Work Taxi | 4,079.99 |
| Lexis search fees | 19,925.80 |
| Litigation expenses | 1,296.25 |
| Local Authority Search Fee | 46.73 |
| Local food and beverage expense | 6,572.13 |
| Local parking charges | 8.75 |
| Local taxi charges | 4,120.70 |
| Long distance charges | 7,252.91 |
| Meeting room and charges | 816.66 |
| Mileage expenses | 9.20 |
| Miscellaneous expenses | 1,235.38 |
| Parking expenses | 528.00 |
| Postage charges | 42.22 |
| Printing charges | 33,620.28 |
| Research fees | 876.45 |

| **Disbursement Description** | **Amount Billed (USD)** |
|---|---:|
| Taxi Fare | 6,034.65 |
| Toll charges | 153.00 |
| Train Fare | 38.46 |
| Travel - other costs | 25.14 |
| United Parcel Service charges | 987.94 |
| Video and electronic expenses | 7,825.56 |
| Westlaw search fees | 74,265.36 |
| | |
| **Total Disbursements** | **369,641.54** |

- 2 -

**EXHIBIT "D"**

**SERVED ON NOTICE PARTIES UNDER INTERIM COMPENSATION ORDER**

**EXHIBIT E**

**Multiple Timekeepers Attending Same Hearing/Outside Meeting/Deposition (6th Interim Fee Application)**

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| William Bryson<br>Cindy Chien | 6/2/10 | (TL III) Meetings with client, JD team and HNB re various issues | Meeting between Hua Nan Commercial Bank ("HNB") and client regarding possible strategies for the resolution of various assets held by TLIII in Taiwan.<br><br>**Bryson: senior lawyer in charge of the Lehman matters in Taiwan, negotiated strategies regarding resolution of various assets held by TLIII.**<br><br>**Chien: most junior member of JD team; took minutes of the proceedings and facilitated communication with HNB attendees, none of whom are native English speakers.** |
| Bridget Crawford<br>Michael Dailey<br>Robert Gaffey<br>Tracey Schaffer<br>Eric Stephens | 6/14/10 | Participate in trial regarding submission of deposition testimony in the trial record | **Gaffey: lead counsel.**<br><br>**Schaffer: Second seat to Gaffey; responsibility for dealing with opposing counsel at Barclays on various evidence issues and disputes.**<br><br>**Dailey: responsible for tracking all materials offered and admitted into the record.**<br><br>**Crawford: in attendance to ensure all materials were organized and available as needed in the courtroom and workrooms.**<br><br>**Stephens: the associate principally responsible for organizing all deposition designations.** |

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| James Goldfarb<br>Elizabeth Greenberg<br>Vanessa Spiro<br>Jayant Tambe<br>Heather Thompson | 6/16/10 | (L) Meeting with client L. Brandman, I. Wolk, C. Searl, D. Cash, S. Heaydon, J. Tambe, E. Greenberg to prepare for mediation | **This was a meeting to prepare for a mediation of a substantial derivatives dispute.**<br><br>**Tambe: the lead lawyer on all derivatives matters. Goldfarb: day-to-day responsibility for this counterparty.**<br><br>**Spiro and Thompson: corporate lawyers who advised on structuring of a potential settlement.**<br><br>**Greenberg: junior lawyer responsible for documents.** |
| Kelly Carrero<br>Michael Daily<br>John McMahon | 6/16/10 | Richard Landreman deposition | **Carrero took the deposition. McMahon was responsible for collecting and organizing documents and subject areas for the witness, a Barclays PCG employee responsible for valuing billions of dollars of collateral transferred from Lehman to Barclays. Dailey was responsible for several subject areas pertinent to the witness. The assistance of both was necessary for this deposition of a key Barclays witness.** |
| Kelly Carrero<br>Michael Dailey | 6/17/10 | Washtell deposition | **Carrero took the deposition. Dailey was responsible for collecting and organizing documents and subject areas for the witness, a Barclays PCG employee responsible for valuing billions of dollars of collateral transferred from Lehman to Barclays.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|----------------------------------|
| James Goldfarb<br>Elizabeth Greenberg<br>Jayant Tambe | 6/21/10 | (L) Mediation with counterparty | This was an all day mediation of a substantial derivatives dispute.<br><br>Tambe: lead lawyer on derivatives matters and led this mediation.<br>Goldfarb: attended to address key legal and factual issues.<br><br>Greenberg: assisted with documents. |
| David Carden<br>Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Jennifer Del Medico<br>Robert Gaffey<br>William Hine<br>Benjamin Rosenblum<br>Tracy Schaffer | 6/21/10 | Day 11 of Evidentiary Hearing | Marsal & Diamond (Part 1)<br><br>Gaffey: lead counsel. Direct examination of Marsal and Diamond.<br><br>Schaffer: Gaffey's second seat for all witness examinations; coordinating with associates to ensure materials were available as needed both on direct and cross and to consult on strategy issues as to each witness.<br><br>Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.<br><br>Del Medico: senior associate in charge of supervising all support in activity in work room and courtroom<br><br>Tambe: principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Had advice and background necessary to Marsal and Diamond examinations. |

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| | | | **Carrero: Senior associate with principal responsibilities for valuation case in general.**<br><br>**Hine: One of four principal members of the trial team.  In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed.**<br><br>**Crawford: Associate with principal responsibility for Diamond and Marsal facts and files.  Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.**<br><br>**Carden: Provided advice and interface with client.**<br><br>**Rosenblum: Provided necessary bankruptcy-related advice.**<br><br>**Ferry: Demonstratives and electronic trial support.** |
| James Goldfarb Elizabeth Greenberg | 6/22/10 | (L) Mediation | **Mediation was a culmination of a year-long stand off to resolved a $100mm swap agreement.**<br><br>**Goldfarb: support Jay Tambe in preparing for the substantive aspects of the mediation.**<br><br>**Greenberg:  provide substantive and administrative support to effectively serve the client.** |

- 4 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Kelly Carrero<br>Michael Dailey<br>Stephen Ferry<br>Robert Gaffey<br>William Hine<br>Tracey Schaffer<br>Benjamin Rosenblum<br>Jayant Tambe | 6/25/10 | Day 13 of evidentiary hearing | Despins<br><br>**Gaffey: lead counsel.**<br><br>**Schaffer: Gaffey's second seat for all witness examinations; responsibility for tracking issues regarding Trustee.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Tambe: principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Had advice and background necessary to Despins examination.**<br><br>**Carrero: Senior associate with principal responsibilities for valuation case in general; background on issues relating to Trustee's case, pertinent to Despins testimony**<br><br>**Hine: One of four principal members of the trial team. In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed.**<br><br>**Rosenblum: Provided necessary bankruptcy-related advice.**<br><br>**Ferry: Demonstratives and electronic trial support.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Kelly Carrero Michael Dailey Jayant Tambe | 6/30/10 | S. Teague deposition | **Tambe took the deposition. Carrero was responsible for collecting and organizing documents and subject areas for the witness, a Barclays PCG employee responsible for valuing billions of dollars of collateral transferred from Lehman to Barclays. Dailey was responsible for several subject areas pertinent to the witness. The assistance of both was necessary for this deposition of a key Barclays witness.** |
| Richard Engman Scott Griffin | 7/6/10 | Telephonic hearing in connection with Greenbrier emergency motion | **R. Engman - Partner responsible for arguing opposition to Greenbrier's emergency motion to continue during telephonic hearing.**<br><br>**S. Griffin - Senior associate with knowledge of background facts regarding Greenbrier's emergency motion to continue and responsible for assisting R. Engman in preparation for telephonic hearing.** |
| Christine Kim Peter Wilkinson | 7/6/10 | (TMF) Attend debriefing regarding meeting with SL | **Christine Kim, partner, and Peter Wilkinson, associate, from Jones Day attended a debriefing meeting with the senior lender. Kim was the lead attorney responsible for high-level strategy and negotiations. Wilkinson was responsible for the drafting of the transaction documents. The attendance of both Kim and Wilkinson at the meeting was necessary.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| James Goldfarb<br>Heather Thompson | 7/12/10 | (L) Attend and participate in negotiations with client, counterparty, UCC and Jones Day team regarding transaction details | **Thompson: participated as a transactional attorney in a settlement discussion concerning how, from a transaction perspective, the structured settlement payment would be memorialized in writing. She brought to bear transactional competency to the table.**<br><br>**Goldfarb: provided the institutional knowledge and litigation aspects of the matter.** |
| Corinne Ball<br>Richard Engman<br>Scott Griffin<br>Jordan Schwartz | 7/14/10 | Court hearing in connection with Greebrier and motion to enforce automatic stay | **C. Ball - Lead attorney on Greenbrier.**<br><br>**R. Engman - Argued stay motion.**<br><br>**S. Griffin - Senior associate with knowledge of background facts and research regarding arguments in support of motion to enforce the automatic stay and counter-arguments to Greenbrier's opposition to the stay motion, and responsible for assisting R. Engman in preparation for hearing on the stay motion.**<br><br>**J. Schwartz- assisted with research and identifying exhibits for hearing/argument.** |
| Jayant Tambe<br>Aviva Warter Sisitsky | 7/15/10 | (K) settlement meeting with counterparty and client | **This was a settlement meeting on a large derivatives counterparty.**<br><br>**Tambe: the lead lawyer on all derivatives matters**<br><br>**Sisitsky: the lawyer with day-to-day responsibility for this counterparty.** |

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Jayant Tambe<br>Kelly Carrero<br>Paul Green | 8/18/10 | J. Olvany meeting/expert witness prep | **Tambe did the direct examination of Olvany.  Carrero was Tambe's second seat for direct examination of Olvany with principal responsibilities for valuation case in general.  Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' corporate bond expert.  The assistance of both was necessary for the presentation of a key expert.** |
| Jayant Tambe<br>Kelly Carrero<br>Paul Green | 8/19/10 | J. Olvany meeting/expert witness prep | **Tambe did the direct examination of Olvany.  Carrero was Tambe's second seat for direct examination of Olvany with principal responsibilities for valuation case in general.  Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' corporate bond expert.  The assistance of both was necessary for the presentation of a key expert.** |
| Robert Gaffey<br>Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Jennifer Del Medico<br>Stephen Ferry<br>Bart Green<br>William Hine<br>John McMahon<br>Benjamin Rosenblum<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe | 8/23/10 | Shapiro and Ullman examinations | **Gaffey: lead counsel. Cross-examination of Shapiro.**<br><br>**Schaffer: Gaffey's second seat for all witness examinations; coordinating with associates to ensure materials were available as needed both on direct and cross and to consult on strategy issues as to each witness.**<br><br>**Dailey: responsible for tracking  all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Del Medico: senior associate in charge of supervising all support in activity in work room and courtroom**<br><br>**Tambe: principal member of the trial team, with witness** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| | | | **responsibilities and main responsibility for valuation case. Had advice and background necessary to Shapiro examination.**<br><br>**Carrero: Senior associate with principal responsibilities for valuation case in general. Background on issues relating to Trustee's case, pertinent to Ullman testimony**<br><br>**Hine: One of four principal members of the trial team. In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed.**<br><br>**Crawford: Associate with principal responsibility for Shapiro facts and files. Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.**<br><br>**Green, McMahon + Stephens: responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.**<br><br>**Ferry: Demonstratives and electronic trial support.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Robert Gaffey<br>Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Jennifer Del Medico<br>Stephen Ferry<br>Bart Green<br>William Hine<br>Benjamin Rosenblum<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe<br>Susan Turk | 8/24/10 | Exall and Rosen examinations | **Gaffey: lead counsel.**<br><br>**Hine: Cross-examination of Exall.**<br><br>**Schaffer: First seat for Rosen.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Del Medico: senior associate in charge of supervising all support in activity in work room and courtroom. Associate with principal responsibility for Rosen facts and files.**<br><br>**Tambe: principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Had advice and background necessary to Exall and Rosen examinations.**<br><br>**Carrero: Senior associate with principal responsibilities for valuation case in general. Background on issues relating to Trustee's case.**<br><br>**Green: Associate with principal responsibility for Exall facts and files. Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.**<br><br>**Crawford, Stephens + Turk: responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.**<br><br>**Rosenblum: Bankruptcy advice.**<br><br>**Ferry: Demonstratives and electronic trial support.** |

NYI-4331711v5

- 10 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Robert Gaffey<br>Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Jennifer Del Medico<br>Stephen Ferry<br>Bart Green<br>Benjamin Rosenblum<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe<br>Susan Turk | 8/25/10 | King examination | **Gaffey: lead counsel.**<br><br>**Tambe: Cross-examination of King.  Principal member of the trial team, with witness responsibilities and main responsibility for valuation case.**<br><br>**Carrero: Tambe's second seat.  Senior associate with principal responsibilities for valuation case in general.**<br><br>**Schaffer: Gaffey's second seat for all witness examinations; coordinating with associates to ensure materials were available as needed both on direct and cross and to consult on strategy issues as to each witness.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Del Medico: senior associate in charge of supervising all support in activity in work room and courtroom**<br><br>**Hine: One of four principal members of the trial team.  In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed.**<br><br>**Green: Associate with principal responsibility for King facts and files.  Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|----------------------------------|
| | | | **Crawford, Stephens + Turk:** responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.<br><br>**Rosenblum:** Provided necessary bankruptcy-related advice.<br><br>**Ferry:** Demonstratives and electronic trial support. |
| Robert Gaffey<br>Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Jennifer Del Medico<br>Stephen Ferry<br>Bart Green<br>William Hine<br>John McMahon<br>Benjamin Rosenblum<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe | 8/27/10 | Klein examination | **Gaffey:** lead counsel.  Cross-examination of Klein.<br><br>**Schaffer:** Gaffey's second seat for all witness examinations; coordinating with associates to ensure materials were available as needed both on direct and cross and to consult on strategy issues as to each witness.<br><br>**Hine:** One of four principal members of the trial team.  In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed.<br><br>**Tambe:** Principal member of the trial team, with witness responsibilities and main responsibility for valuation case.  Had advice and background necessary to Klein examination.<br><br>**Carrero:** Senior associate with principal responsibilities for valuation case in general.<br><br>**Dailey:** responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits |

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| | | | for document history, foundation, etc.<br><br>**Del Medico: senior associate in charge of supervising all support in activity in work room and courtroom**<br><br>**Crawford: Associate with principal responsibility for Klein facts and files.  Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.**<br><br>**Green, McMahon + Stephens: responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.**<br><br>**Rosenblum: Provided necessary bankruptcy-related advice.**<br><br>**Ferry: Demonstratives and electronic trial support.** |
| Kelly Carrero<br>Paul Green<br>Jayant Tambe | 8/30/10 | Meeting re prep of experts Garvey and Zmijewski | **Tambe did the direct examinations of Garvey and Zmijewski.  Carrero was Tambe's second seat with principal responsibilities for valuation case in general. Green was responsible for collecting and organizing documents and subject areas for the witnesses, two of Movants' experts.  The assistance of both was necessary for the presentation of two key experts.** |

- 13 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Michael Dailey<br>Robert Gaffey<br>Stephen Ferry<br>Benjamin Rosenblum | 8/30/10 | Testimony of Elizabeth James | **Gaffey: lead counsel.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Rosenblum: Provided necessary bankruptcy-related advice.**<br><br>**Ferry: Demonstratives and electronic trial support.** |
| Robert Gaffey<br>Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Stephen Ferry<br>William Hine<br>John McMahon<br>Benjamin Rosenblum<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe | 8/31/10 | Examination of Lewkow, Romain | **Gaffey: lead counsel. Cross-examination of Lewkow.**<br><br>**Schaffer: Gaffey's second seat for all witness examinations; coordinating with associates to ensure materials were available as needed both on direct and cross and to consult on strategy issues as to each witness.**<br><br>**Hine: One of four principal members of the trial team. In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed.**<br><br>**Tambe: Principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Had advice and background necessary to Lewkow examination. On deck for Romain examination.**<br><br>**Carrero: Senior associate with principal responsibilities for valuation case in general. Tambe's second chair for all witnesses.** |

- 14 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| | | | **Dailey:** responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.<br><br>**Crawford:** Associate with principal responsibility for Klein facts and files. Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.<br><br>**McMahon & Stephens:** responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.<br><br>**Rosenblum:** Provided necessary bankruptcy-related advice.<br><br>**Ferry:** Demonstratives and electronic trial support. |
| Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Stephen Ferry<br>Robert Gaffey<br>Paul Green<br>William Hine<br>Benjamin Rosenblum<br>Jayant Tambe<br>Susan Turk | 9/2/10 | Cross-examination of G. Romain | **Gaffey:** lead counsel.<br><br>**Tambe:** Cross-examination of Romain. Principal member of the trial team, with witness responsibilities and main responsibility for valuation case.<br><br>**Carrero:** Tambe's second seat. Senior associate with principal responsibilities for valuation case in general.<br><br>**Schaffer:** Gaffey's second seat for all witness examinations; coordinating with associates to ensure materials were available as needed both on direct and cross and to consult |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| | | | on strategy issues as to each witness. |
| | | | **Dailey:** responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc. |
| | | | **Del Medico:** senior associate in charge of supervising all support in activity in work room and courtroom |
| | | | **Hine:** One of four principal members of the trial team. In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed. |
| | | | **Green:** Associate with principal responsibility for Romain facts and files. Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits. |
| | | | **Crawford, Stephens & Turk:** responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team. |
| | | | **Rosenblum:** Provided necessary bankruptcy-related advice. |
| | | | **Ferry:** Demonstratives and electronic trial support. |
| Kelly Carrero Bridget Crawford Michael Dailey | 9/7/10 | Examination of S. Leventhal | **Gaffey:** lead counsel. Cross-examination of Leventhal. **Schaffer:** Gaffey's second seat for all witness examinations; |

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Stephen Ferry<br>Robert Gaffey<br>Paul Green<br>William Hine<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe | | | **coordinating with associates to ensure materials were available as needed both on direct and cross and to consult on strategy issues as to each witness.**<br><br>**Hine: One of four principal members of the trial team. In addition to having witness responsibilities, Hine was responsible for developing post trial submissions as trial progressed.**<br><br>**Tambe: Principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Had advice and background necessary to Leventhal examination.**<br><br>**Carrero: Senior associate with principal responsibilities for valuation case in general.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Crawford: Associate with principal responsibility for Leventhal facts and files. Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.**<br><br>**Green & Stephens: responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| | | | **Ferry: Demonstratives and electronic trial support.** |
| Peter Brabant Philip Hoser | 9/8/10 | (LBHI) Meeting with PPB, Minter Ellison, P Hoser and C Catt regarding tax structure of Lehman Australia entities | **Hoser: negotiated the terms of a potential proposal with Minter Ellison regarding the operations of Lehman Australia entities.** **Brabant: prepared relevant documentation throughout the course of the meeting for discussion.** |
| Jeremy Cole Kelly Marino | 9/9/10 | (Z) Counterparty hearing on motions opposing temporary injunction. | **Cole: responsible for strategy and had a more detailed understanding of the history between the client and the counterparty.** **Marino: the more junior lawyer, was responsible for taking detailed notes and prepared a memo summarizing the hearing.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Stephen Ferry<br>Robert Gaffey<br>Paul Green<br>John McMahon<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe | 9/10/10 | Daubert argument | **This was a hearing to present arguments on the motions in limine to exclude the experts.**<br><br>**Gaffey: lead counsel.**<br><br>**Tambe: presented arguments. Principal member of the trial team, with witness responsibilities and main responsibility for valuation case.**<br><br>**Carrero: Tambe's second seat. Senior associate with principal responsibilities for valuation case in general, including expert issues.**<br><br>**Schaffer: Principal member of the trial team; responsibility for dealing with opposing counsel at Barclays on various evidence issues and disputes.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Green: Associate with principal responsibility for facts and files on experts.**<br><br>**Crawford, McMahon + Stephens: responsible for evidence review and response to issues that arose at hearing.**<br><br>**Ferry: Demonstratives and electronic trial support**. |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Paul Green<br>Jayant Tambe | 9/13/10 | Meeting with J. Olvany | **Tambe did the direct examination of Olvany. Carrero was Tambe's second seat. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' corporate bond expert. The assistance of both was necessary for the presentation of a key expert.** |
| Paul Green<br>Jayant Tambe | 9/13/10 | Meeting with J. Schwaba | **Tambe did the direct examination of Schwaba. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' municipal bond expert.** |
| Paul Green<br>Jayant Tambe | 9/17/10 | Meeting with M. Zmijewski | **Tambe did the direct examination of Zmijewski. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' lead expert.** |
| Kelly Carrero<br>Paul Green | 9/17/10 | Meeting with J. Garvey | **Carrero did the direct examination of Garvey. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' accounting expert.** |
| Robert Gaffey<br>Paul Green | 9/18/10 | Meeting with J. Schneider | **Gaffey did the direct examination of Schneider. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' repo custodial lending expert.** |
| Paul Green<br>Jayant Tambe | 9/18/10 | Meeting with M. Zmijewski | **Tambe did the direct examination of Zmijewski. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' lead expert.** |

- 20 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Kelly Carrero<br>Paul Green | 9/18/10 | Meeting with J. Garvey | **Carrero was Tambe's second seat for the direct examination of Garvey.  Green was  responsible for collecting and organizing documents and subject areas for the witness, Movants' accounting expert.** |
| Paul Green<br>Jayant Tambe | 9/19/10 | Meeting with M. Zmijewski | **Tambe did the direct examination of Zmijewski.  Green was  responsible for collecting and organizing documents and subject areas for the witness, Movants' lead expert.** |
| Paul Green<br>Jayant Tambe | 9/19/10 | Meeting with J. Garvey | **Tambe did the direct examination of Garvey.  Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' accounting expert.** |

- 21 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|------|------|-----------------------------------|--------------------------------|
| Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Kevin Englert<br>Stephen Ferry<br>Robert Gaffey<br>Paul Green<br>Tracy Schaffer<br>Eric Stephens<br>Jayant Tambe | 9/20/10 | M. Zmijewski and J. Garvey examinations | **Gaffey: lead counsel.**<br><br>**Tambe: Principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Direct examination of Zmijewski and Garvey.**<br><br>**Carrero: Tambe's second seat for direct examinations of Zmijewski and Garvey. Senior associate with principal responsibilities for valuation case in general.**<br><br>**Green: Associate with principal responsibility for Zmijewski and Garvey facts and files. Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Crawford: associate in charge of supervising all support activity in work room and courtroom**<br><br>**Stephens: responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.**<br><br>**Englert: Paralegal with tasks necessary for organizing trial workroom.**<br><br>**Ferry: Demonstratives and electronic trial support.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Kelly Carrero<br>Bridget Crawford<br>Michael Dailey<br>Stephen Ferry<br>Robert Gaffey<br>Paul Green<br>John McMahon<br>Eric Stephens<br>Jayant Tambe | 9/21/10 | M. Zmijewski, J. Garvey, and J. Schneider examinations | **Gaffey: lead counsel.  Direct examination of Schneider.**<br><br>**Green: second seat to Gaffey for direct examination of Schneider.  Also assisted as needed with exhibits and mid examination questions for Zmijewski and Garvey requiring review of databases and exhibits.**<br><br>**Tambe: Principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Direct examination of Zmijewski and Garvey.**<br><br>**Carrero: Tambe's second seat for direct examinations of Zmijewski and Garvey.  Senior associate with principal responsibilities for valuation case in general.**<br><br>**Dailey: responsible for tracking  all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Crawford:  associate in charge of supervising all support activity in work room and courtroom**<br><br>**Stephens + McMahon: responsible for evidence review and response to issues that arose on cross of witnesses as well as coordination with office team.**<br><br>**Ferry: Demonstratives and electronic trial support.** |

- 23 -

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Kelly Carrero<br>Paul Green | 9/24/10 | Meeting with expert, M. Slattery | **Carrero was Tambe's second seat for the direct examination of Slattery with principal responsibilities for valuation case in general. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' treasuries, agencies, mortgage, and structured product expert.** |
| Paul Green<br>Jayant Tambe | 9/24/10 | Meeting with J. Schwaba | **Tambe did the direct examination of Schwaba. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' municipal bond expert.** |
| Robert Gaffey<br>Paul Green | 9/26/10 | Meeting with J. Schwaba | **Gaffey is lead counsel. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' municipal bond expert.** |
| Kelly Carrero<br>Paul Green | 9/26/10 | Meeting with expert, M. Slattery | **Carrero was Tambe's second seat for the direct examination of Slattery with principal responsibilities for valuation case in general. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' treasuries, agencies, mortgage, and structured product expert.** |
| Robert Gaffey<br>Paul Green | 9/27/10 | Meeting with J. Schwaba | **Gaffey is lead counsel. Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' municipal bond expert.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| Paul Green Jayant Tambe | 9/27/10 | Meeting with expert, M. Slattery | **Tambe did the direct examination of Slattery.  Green was responsible for collecting and organizing documents and subject areas for the witness, Movants' treasuries, agencies, mortgage, and structured product expert.** |
| Stephen Ferry Robert Gaffey | 9/28/10 | Fogarty Testimony | **Gaffey:  lead counsel.**<br><br>**Ferry: Demonstratives and electronic trial support.** |
| Kelly Carrero Michael Dailey Robert Gaffey Paul Green Benjamin Rosenblum | 9/29/10 | Coles and Schwaba examinations | **Gaffey:  lead counsel.**<br><br>**Tambe: Principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Direct examination of Schwaba.**<br><br>**Carrero:  Tambe's second seat for direct examination of Slattery.  Senior associate with principal responsibilities for valuation case in general.**<br><br>**Green: Associate with principal responsibility for Schwaba facts and files. Also assisted as needed with exhibits and mid examination questions requiring review of databases and exhibits.**<br><br>**Dailey: responsible for tracking  all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Rosenblum: Provided necessary bankruptcy-related advice.** |

NYI-4331711v5

| Name | Date | Hearing/Outside Meeting/Deposition | Reason for Multiple Timekeepers |
|---|---|---|---|
| | | | **Ferry: Demonstratives and electronic trial support.** |
| Kelly Carrero<br>Michael Dailey<br>Robert Gaffey | 9/30/10 | Slattery expert witness testimony | **Gaffey: lead counsel**<br><br>**Tambe: Principal member of the trial team, with witness responsibilities and main responsibility for valuation case. Direct examination of Slattery.**<br><br>**Carrero: Tambe's second seat for direct examination of Slattery. Senior associate with principal responsibilities for valuation case in general.**<br><br>**Dailey: responsible for tracking all exhibits offered and admitted in evidence and cross checking Barclays exhibits for document history, foundation, etc.**<br><br>**Ferry: Demonstratives and electronic trial support.** |

NYI-4331711v5

**EXHIBIT "F"**

JONES DAY
David L. Carden
Robert W. Gaffey
Ross S. Barr
222 East 41st Street
New York, New York 10017
Telephone: (212) 326-3939
Facsimile: (212) 755-7306

-and-

JONES DAY
Robert L. Thomson
29th Floor, Edinburgh Tower
The Landmark
15 Queen's Road Central
Hong Kong
Telephone: (852) 2526-6895
Facsimile: (852) 2868-5871

Special Counsel for the Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                    :        Chapter 11 Case No.
                                         :
LEHMAN BROTHERS HOLDINGS INC., et al.,   :        08-13555 (JMP)
                                         :
                    Debtors.             :        (Jointly Administered)
                                         :
-------------------------------------------------------------------x
```

## CERTIFICATION OF ROBERT W. GAFFEY

I, Robert W. Gaffey, certify as follows:

       1.    I am a partner in the law firm of Jones Day.  I submit this certification with respect to the application (the "Application")[1] of Jones Day, special counsel for the debtors in possession in the above-captioned cases (the "Debtors"), for allowance of compensation for

---

[1]    Unless otherwise defined herein, all capitalized terms used herein shall have the meanings set forth in the Application.

HKI-255871v1

professional services rendered, and reimbursement of actual and necessary expenses incurred, for the period from June 1, 2010 through September 30, 2010.

2.       I make this certification in accordance with General Order M-151, the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the United States Bankruptcy Court for the Southern District of New York on April 19, 1995 (the "Local Guidelines").

3.       In connection therewith, I hereby certify that

(a)      I have read the Application;

(b)      to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the Application fall within the Local Guidelines and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") except as specifically noted therein;

(c)      except to the extent that fees or disbursements are prohibited by the Local Guidelines or the UST Guidelines, the fees and disbursements sought are billed at rates customarily employed by Jones Day and generally accepted by Jones Day's clients; and

(d)      in providing a reimbursable service, Jones Day does not make a profit on that service, whether the service is performed by Jones Day in house or through a third party.

Dated:  December 14, 2010                         Respectfully submitted,
        New York, New York
                                                 /s/ Robert W. Gaffey
                                                 Robert W. Gaffey
                                                 JONES DAY
                                                 222 East 41st Street
                                                 New York, New York 10017
                                                 Telephone: (212) 326-3939
                                                 Facsimile: (212) 755-7306

                                                 SPECIAL COUNSEL FOR THE DEBTORS IN
                                                 POSSESSION

- 2 -

HKI-255871v1