WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re : Chapter 11 Case No.
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : 08-13555 (JMP)
:
Debtors. : (Jointly Administered)
:
:
------------------------------------------------------------x

**DECLARATION OF JEFFREY FITTS**
**IN SUPPORT OF DEBTORS' MOTION PURSUANT TO**
**SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND**
**BANKRUPTCY RULE 9019 FOR APPROVAL OF SETTLEMENT AGREEMENT**
**BETWEEN LB SOMERSET LLC, LB PREFERRED SOMERSET LLC, KBIA SOMERSET**
**INVESTMENTS, LLC, KBIA PREFERRED, LLC, FALLS OF NEUSE INVESTMENTS, LLC,**
**SOMERSET PROPERTIES SPE, LLC, SOMERSET ASSOCIATES, LLC, AND KEVIN WILK**

I, Jeffrey Fitts, do hereby declare and depose that the following is true to the best of

my knowledge, information, and belief:

1.    I am a Managing Director with Alvarez & Marsal Real Estate Advisory Services

("A&M"). I submit this declaration in support of the *Debtors' Motion Pursuant to Sections 105(a),*

*363 And 365 of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of Settlement Agreement*

*Between LB Somerset LLC, LB Preferred Somerset LLC, KBIA Somerset Investments, LLC, KBIA*

*Preferred, LLC, Falls Of Neuse Investments, LLC, Somerset Properties SPE, LLC, Somerset Associates,*

*LLC, And Kevin Wilk* (the "Motion") [Docket No. 12439] filed on October 28, 2010.

US_ACTIVE:\43580939\04\58399.0003

2. I have more than 19 years of experience in assisting insolvent and troubled companies, with a focus on operational and financial restructuring efforts. Prior to joining A&M, I was a Managing Director with GE Commercial Finance ("GE"), where I led GE's Distressed Debt and Alternative Investment Group and managed complex distressed credits. Before joining GE, I was with the Corporate Workout Division (IRM) of Citicorp, where I spent three years managing investment grade and middle market corporate workouts. I began my career in 1990 as a workout officer and, later, an asset manager with Citicorp Real Estate, where I managed more than $1 billion of office, retail, and industrial projects. I received a bachelor's degree from the University of Delaware in 1988.

3. I was assigned to the representation of Lehman in September 2008. I currently serve as the Co-Head of Lehman's real estate group (the "Real Estate Group"). My primary responsibility as Co-Head of the Real Estate Group is day-to-day management and oversight of Lehman's real estate portfolio, including management and oversight of the real estate, real estate finance and related activities that are the subject of the Motion and this Declaration. As Co-Head of the Real Estate Group, I oversee a number of Lehman employees who have been actively involved in finalizing the terms of the transactions described in this Declaration and in the Motion. If called to testify at the December 15, 2010 hearing on the Motion, the following would be my direct testimony.

4. It is my business judgment that entry into the Settlement Agreement and consummation of the transactions set forth therein is in the best interests of the Lehman Somerset Debtors[1] and each of their respective estates. As set fort in the Motion, the Properties are comprised of six office buildings and an associated parking facility. Title to the Properties is

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

held by an entity called Somerset Properties SPE LLC ("Somerset SPE").  Somerset Associates, LLC ("Somerset Associates"), which is a joint venture between the Lehman Somerset Debtors and an unaffiliated third party called Falls of Neuse Investments. LLC ("FNI"), is the sole member of Somerset SPE.

5. The Lehman Somerset Debtors and FNI have been involved in numerous disputes regarding their respective obligations with respect to Somerset Associates.  These disputes centered around FNI's management of Somerset Associates and certain capital contributions purportedly due to Somerset Associates from LB Preferred.  As a result of such disputes, on or about October 30, 2009, FNI, individually and on behalf of Somerset Associates, commenced the Delaware Litigation, which was stayed by the filing of the Lehman Somerset Debtors' chapter 11 cases.

6. CSFB 2001-CP4 Bland Road, LLC ("CSFB"), an unaffiliated third party, holds certain Loans that encumber the Properties.  Approximately $29,500,000 remained outstanding on the Loans as of June 30, 2010.  An unaffiliated third party called LNR has been appointed special servicer of the Loans and, on or about June 30, 2010, LNR notified Somerset SPE that the Loans were in default and that LNR, on behalf of CSFB, intended to foreclose on the Properties (the "Foreclosure").

7. Subsequent to the filing of the Motion, on November 8, 2010, Somerset SPE filed a petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of North Carolina [Case No. 10-09210] (the "Somerset SPE Bankruptcy").  The Somerset SPE Bankruptcy stayed the Foreclosure.

8. The Debtors have engaged in a fulsome review of their options with respect to the Lehman Somerset Debtors, including the expense of pursuing each option and the likelihood of

success. The Debtors believe that, based on assumptions with respect to certain variables including occupancy, lease rates, overhead and other factors that affect the Properties' ability to generate revenue, the amounts due under the Loans may equal or exceed the value of the Properties.

9. The apparent limited equity in the Properties, in combination with the uncertainties surrounding the Delaware Litigation and the Foreclosure convinced the Lehman Somerset Debtors that their best option would likely be to pursue a transaction that the FNI Parties presented to them pursuant to which the Lehman Somerset Debtors would transfer their interests in Somerset Associates to the FNI Parties in exchange for a small payment, certain releases, and other considerations.

10. To the best of my knowledge and belief, the Settlement Agreement was negotiated at arm's-length and in good faith by unrelated parties who each were represented by competent counsel.

11. Following the filing of the Motion, the Lehman Somerset Debtors and their professionals have had calls with the Creditors' Committee's professionals to review the transaction and, on December 13, 2010, the Creditors' Committee filed a statement in support of the relief requested in the Motion [Docket No. 13404].

12. While the Settlement Agreement provides for a modest monetary recovery for the Lehman Somerset Debtors, it is my belief that it is in the best interests of the Lehman Somerset Debtors and their estates for the following reasons:

- If the Foreclosure is successful, any residual equity that Somerset SPE had in the Properties will be destroyed and the Lehman Somerset Debtors will be unable to recover any value from their investment in Somerset Associates.

- The issues that formed the basis for the Delaware Litigation have not been resolved and would have to be addressed before the Lehman Somerset Debtors were able to recover any value from Somerset Associates.

- The commencement of the Somerset SPE Bankruptcy adds another significant impediment to the Lehman Somerset Debtors' ability to recover any value from their investment in Somerset Associates.

- The time and expense attendant to litigation with respect to the Foreclosure, the Delaware Litigation, and the Somerset SPE Bankruptcy is not justified given that the amounts due under the Loans likely exceeds the value of the Properties.

13. In light of these factors, I believe that entering into the Settlement Agreement is a reasonable exercise of the Lehman Somerset Debtors' business judgment and is in the best interests of their estates and their creditors. The Settlement Agreement will enable the Debtors to avoid the expense and uncertainty of litigation with respect to the Delaware Litigation, the Foreclosure and the Somerset SPE Bankruptcy, will relieve LB Preferred of approximately $4,500,000 in potential future funding obligations, will eliminate over $22 million in claims filed against the Lehman Somerset Debtors and LBHI, and will provide for a modest return for the Lehman Somerset Debtors' estates and remaining creditors. Accordingly, the Settlement Agreement should be approved.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 14th day of December 2010.

/s/ Jeffrey Fitts
Jeffrey Fitts