Hearing Date: To Be Determined
Objection Deadline: To Be Determined

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone:  (312) 222-9350
Facsimile:  (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------------x
                                                    :
In re                                               :         Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,              :         Case No. 08-13555 (JMP)
                                                    :
                          Debtors.                  :         (Jointly Administered)
----------------------------------------------------------------------x

**SIXTH INTERIM FEE APPLICATION OF THE EXAMINER AND**
**JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION**
**FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES**

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

| | |
|---|---|
| Name of Applicant: | Anton R. Valukas (the "Examiner") and Jenner & Block LLP |
| Period for which Compensation and Reimbursement is Sought: | June 1, 2010 to July 12, 2010[1] |
| Authorized to Provide Professional Services to: | Anton R. Valukas, Examiner |
| Date of Notice of Appointment: | January 19, 2009 |
| Date of Retention (Jenner & Block): | February 11, 2009, *nunc pro tunc* January 19, 2009 |

| | | |
|---|---|---|
| Amount of Compensation and Expense Reimbursement Sought As Actual, Reasonable and Necessary: | Fees Requested: | $114,663.15[2] |
| | Expenses Requested: | $10,057.12 |
| Prior Amounts Requested: | Fees Previously Requested: | $51,770,504.46[3] |
| | Fees Previously Awarded: | $47,198,403.05[4] |
| | Expenses Previously Requested: | $7,948,798.36 |
| | Expenses Previously Awarded: | $7,305,265.14 |

---

[1] Although this interim fee period covers June 1, 2010 through September 30, 2010, in this Sixth Interim Fee Application, the Examiner and Jenner & Block seek Court approval for compensation and reimbursement only for June 1, 2010 through July 12, 2010. Pursuant to Paragraph 4 of the Order Discharging Examiner and Granting Related Relief [Docket No. 10169], after the entry of that Order, the Examiner and Jenner & Block are required to submit fee applications only for fees and expenses that exceed $150,000 in any month.

[2] This reflects a 10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed because of the significant public interest associated with the Examiner's duties and responsibilities. This total also reflects the Examiner's and Jenner & Block's voluntary reduction of half their non-working travel time, as well as other time that they have voluntarily written off or not billed.

[3] The Examiner and Jenner & Block submitted previous fee and expense reimbursement requests in their First Interim Fee Application, covering the period January 19, 2009 to January 31, 2009, their Second Interim Fee Application, covering the period February 1, 2009 to May 31, 2009, their Third Interim Fee Application, covering the period June 1, 2009 to September 30, 2009, their Fourth Interim Fee Application, covering the period October 1, 2010 to January 31, 2010, and their Fifth Interim Fee Application covering February 1, 2010 to May 31, 2010. [Docket Nos. 3319, 4808, 6188, 8404, 10779].

[4] The Examiner's and Jenner & Block's Fifth Interim Fee Application remains subject to the Court's review and approval.

Summary of Time Recorded in Connection With Rendering
Services to the Examiner for June 1, 2010 - July 12, 2010

### ATTORNEYS

| Position | Name | Admitted to Practice | Rate[5] | Time | Amount |
|---|---|---|---|---|---|
| Partner | Anton R. Valukas | 1968 | 975 | 11.1 | $10,822.50 |
| Partner | Robert L. Byman | 1970 | 850 | 49.7 | $42,245.00 |
| Partner | Heather D. McArn | 1992 | 575 | 7.9 | $4,542.50 |
| Partner | Daniel R. Murray | 1970 | 850 | 15.5 | $13,175.00 |
| Partner | Patrick J. Trostle | 1992 | 750 | 4.1 | $3,075.00 |
| **Partner Total** | | | | **88.3** | **$73,860.00** |
| Associate | Matthew R. Devine | 2004 | 510 | 4.3 | $2,193.00 |
| Associate | Michael J. Kelly | 2006 | 445 | 26.5 | $11,792.50 |
| Associate | Andrew J. Olejnik | 2004 | 510 | 59.4 | $30,294.00 |
| **Associate Total** | | | | **90.2** | **$44,279.50** |
| **Total Attorney Time** | | | | **178.5** | **$118,139.50** |
| **Less 10% Reduction** | | | | | **($11,813.95)** |
| **Total Attorney Time at Reduced Rate** | | | | | **$106,325.55** |
| **Blended Hourly Rate for Attorneys** | | | | | **$595.66** |

### PARAPROFESSIONALS

| Position | Name | Rate[6] | Time | Amount |
|---|---|---|---|---|
| Senior Paralegal | Michael H. Matlock | 275 | 36.9 | $10,147.50 |
| Senior Paralegal | Christopher R. Ward | 255 | 19.8 | $5,049.00 |
| Technology Ass't | Zulaikha Master | 275 | 1.2 | $330.00 |
| **Total Paraprofessional Time** | | | **57.9** | **$15,526.50** |
| **Less 10% Reduction** | | | | **($1,552.65)** |
| **Total Paraprofessional Time at Reduced Rate** | | | | **$13,973.85** |

---

[5] These rates do not reflect the 10% reduction in the standard hourly rates.  The 10% reduction is applied to the Total Attorney Time Amount.

[6] These rates do not reflect the 10% reduction in the standard hourly rates.  The 10% reduction is applied to the Total Paraprofessional Time Amount.

08-13555-mg    Doc 13462    Filed 12/14/10    Entered 12/14/10 15:26:31    Main Document
Pg 4 of 23


| | |
|---|---|
| **Total Amount for Services Rendered (Attorneys and Paraprofessionals)** | **$133,666.00** |
| **Less 10% Reduction** | **($13,366.60)** |
| **Total Amount for Services Rendered, including 10% Reduction (Attorneys and Paraprofessionals)** | **$120,299.40** |
| **Less 50% Non-Working Travel Time** | **($5,636.25)** |
| **Total Amount of Fees Requested for Services Rendered (June 1, 2010 - July 12, 2010)** | **$114,663.15** |

iii

**Hearing Date: To Be Determined**
**Objection Deadline: To Be Determined**

JENNER & BLOCK LLP
919 Third Avenue, 37th Floor
New York, New York 10022-3908
Telephone: (212) 891-1600
Facsimile: (212) 891-1699
Patrick J. Trostle
Heather D. McArn

353 North Clark Street
Chicago, Illinois 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484
Robert L. Byman (Admitted *Pro Hac Vice*)
Daniel R. Murray (Admitted *Pro Hac Vice*)

Attorneys for the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., <u>et al.</u>, | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

-----------------------------------------------------------------------x

### SIXTH INTERIM FEE APPLICATION OF THE EXAMINER AND JENNER & BLOCK LLP FOR ALLOWANCE OF COMPENSATION <u>FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES</u>

**TO THE HONORABLE JAMES M PECK**
**UNITED STATES BANKRUPTCY JUDGE**

Anton R. Valukas, the Examiner (the "<u>Examiner</u>") appointed for Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors (collectively, the "<u>Debtors</u>") in the above-

captioned bankruptcy cases, and Jenner & Block LLP ("<u>Jenner & Block</u>"), counsel to the

Examiner, by this sixth interim fee application (the "<u>Sixth Interim Application</u>") pursuant to

sections 330(a) and 331 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Rule

2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seek (i) interim allowance and payment of reasonable compensation for actual and necessary professional services performed by the Examiner and Jenner & Block in the aggregate amount of $114,663.15 for the period from June 1, 2010 through and including July 12, 2010 (the "Compensation Period");[7] and (ii) reimbursement of actual, reasonable and necessary expenses in the aggregate amount of $10,057.12, incurred during the Compensation Period.

To aid this Court in analyzing the Sixth Interim Application, the Examiner and Jenner & Block have divided it into four parts. Part I provides a brief background of the Debtors' cases and the Examiner's appointment. Part II provides an overview of the Sixth Interim Application. Part III provides a description of the work performed by the Examiner and Jenner & Block during the Compensation Period, by category, as well as how the Examiner and Jenner & Block calculated this compensation request. Finally, Part IV explains why this compensation request should be allowed.

## I. Background

1.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its direct and indirect subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

---

[7] As noted on the Summary Sheet above, although this interim fee period covers June 1, 2010 through September 30, 2010, in this Sixth Interim Fee Application, the Examiner and Jenner & Block seek Court approval for compensation and reimbursement only for June 1, 2010 through July 12, 2010. Pursuant to Paragraph 4 of the Order Discharging Examiner and Granting Related Relief [Docket No. 10169], after the entry of that Order, the Examiner and Jenner & Block are required to submit fee applications only for fees and expenses that exceed $150,000 in any month.

Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

4.      On January 16, 2009, the Court entered an order (the "Examiner Order") directing the appointment of an examiner, pursuant to 11 U.S.C. § 1104(c)(2), to investigate, *inter alia*, various transfers and transactions by the Debtors and their affiliates, claims that certain Debtors may have against LBHI, and the events that immediately preceded the commencement of the LBHI chapter 11 case (collectively, the "Investigation"). Examiner Order at ¶ 2 [Docket No. 2569]. The Examiner Order also directed the examiner to "perform the duties specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court orders otherwise." Id. at ¶ 3.

5.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the chapter 11 cases, subject to Court approval, and filed her notice of such appointment. [Docket No. 2570]. On January 20, 2009, the U.S. Trustee filed her application for an Order of this Court approving the appointment of Anton R. Valukas as examiner in the chapter 11 cases. [Docket No. 2571]. On January 20, 2009, this Court entered an order approving the appointment by the U.S. Trustee of Anton R. Valukas as Examiner (the "Examiner") in the chapter 11 cases. [Docket No. 2583]. On January 23, 2009, the Examiner filed his Application to Employ Jenner

3

& Block LLP as Counsel to the Examiner.  [Docket No. 2627].  On February 11, 2009, this

Court entered the Order Authorizing the Examiner to Retain and Employ Jenner & Block LLP as

his Counsel *nunc pro tunc* as of January 19, 2009.  [Docket No. 2803].[8]

 6. On February 13, 2009, the Examiner filed an application to retain Duff & Phelps,

LLC as his financial advisor.  [Docket No. 2825].  The Court approved the application on

February 25, 2009.  [Docket No. 2924].  On April 29, May 15, and June 30, the Examiner filed

applications to retain contract attorneys to perform specific document review tasks.  [Docket

Nos. 3457, 3582, 4239].[9]  The applications were approved by the Court on May 15, June 3, and

July 16, respectively.  [Docket Nos. 3577, 2750, 4428].

 7. On June 25, 2009, the Court entered the Third Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals.  [Docket No. 4165].

 8. On February 8, 2010, the Examiner filed with the Court under seal the Report of

Examiner Anton R. Valukas (the "Report"), pursuant to the Court's Order Authorizing the

Examiner to File the Examiner's Report Under Seal.  [Docket No. 7024].  On March 11, 2010,

the Examiner publicly filed a partially redacted version of the Report [Docket No. 7531], and

substituted an unredacted version of the Report with the Court under seal pursuant to the

---

[8] On May 28, 2009, November 6, 2009, April 9, 2010, and November 12, 2010, Jenner & Block filed supplemental declarations disclosing connections with certain creditors and other parties-in-interest. [Docket Nos. 3676, 5752, 8198, 12718].

[9] On July 8, 2009, the Examiner filed 10 additional affidavits of disinterestedness in connection with his third application to retain contract attorneys.  [Docket No. 4296].

Bankruptcy Court's Order dated March 11, 2010.  [Docket No. 7530].  On April 14, 2010, the

Examiner filed an unredacted version of Volume 5 of the Report.  [Docket No. 8307].

9.    On March 15, 2010, the Debtors filed the Joint Chapter 11 Plan of Lehman

Brothers Holdings Inc. and Its Affiliated Debtors.  [Docket No. 7572].  On April 14, 2010, the

Debtors filed a revised Joint Chapter 11 Plan [Docket No. 8330] and a Disclosure Statement for

Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to

Section 1125 of the Bankruptcy Code.  [Docket No. 8332].

10.    On July 13, 2010, the Court entered an Order Discharging Examiner and Granting

Related Relief (the "Discharge Order").  [Docket No. 10169].  The Discharge Order terminated

the appointment of the Examiner and discharged the Examiner and his professionals "from any

further obligations, duties, or responsibilities except as otherwise set forth in [the Discharge

Order]."  Among other things, the Discharge Order permits the Examiner and his professionals to

continue to provide cooperation to various parties involved in these chapter 11 cases, and permits

the Examiner and his professionals to be reimbursed by the Debtors for fees and expenses

without further order of the Court, unless such fees and expenses exceed $150,000 in a particular

month, in which case the Examiner and his professionals are required to file a fee application.

## II.  Sixth Interim Application

11.    The Examiner and Jenner & Block have prepared this Sixth Interim Application

in accordance with the Administrative Order Re: Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated

November 25, 2009 (the "Amended SDNY Guidelines"), and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330 promulgated by the United States Department of Justice dated January

30, 1996 (the "UST Guidelines" and together with the Amended SDNY Guidelines, the

"Guidelines").  Pursuant to the Amended SDNY Guidelines, a certification regarding compliance with such guidelines is attached hereto as Exhibit A.

12.      The Examiner and Jenner & Block also have prepared their time and expense entries to comply with suggested guidelines proposed by the Fee Committee.[10]  Jenner & Block is prepared to provide additional information to the Fee Committee with respect to any comments or questions the Fee Committee may have with respect to any disbursements or time entry descriptions for the period covered by this Sixth Interim Application.

13.      The Examiner and Jenner & Block seek interim allowance herein of reasonable compensation for actual and necessary professional services rendered by and to the Examiner during the Compensation Period, in the aggregate amount of $114,663.15 and for reimbursement of actual, reasonable and necessary expenses incurred during the Compensation Period in connection with the rendition of such services in the aggregate amount of $10,057.12.

14.      The fees sought by this Sixth Interim Application reflect an aggregate of 236.4 hours of attorney and paraprofessional time spent and recorded in performing services by and for the Examiner during the Compensation Period.  This aggregate amount does not include time that might be construed as duplicative or otherwise not beneficial to the Examiner's Investigation.  Of the aggregate time expended during the Compensation Period, 88.3 recorded hours were expended by partners, 90.2 recorded hours were expended by associates, and 57.9 recorded hours were expended by paraprofessionals.  During the Compensation Period, the Examiner's and Jenner & Block's hourly billing rates for attorneys working on these matters

---

[10] On May 26, 2009, the Court entered an Order Appointing a Fee Committee and Approving a Fee Application Protocol [Docket No. 3651].  On August 3, 2009, September 10, 2009, December 14, 2009, March 10, 2010, April 9, 2010 and August 20, 2010, the Fee Committee filed reports pertaining to the first, second, third and fourth interim fee applications.  [Docket Nos. 4655, 5104, 6165, 7498, 8209, 10947].

ranged from $445.00 to $975.00 per hour before applying the agreed upon 10% rate reduction. Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $595.66.

15.    Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

16.    Pursuant to the Guidelines, annexed hereto as <u>Exhibit B</u> is a schedule setting forth all Jenner & Block professionals and paraprofessionals who have performed services for the Examiner during the Compensation Period for which the Examiner and Jenner & Block are seeking reimbursement, the position in which each such individual is employed by Jenner & Block, the hourly billing rate charged for services performed by such individual, the aggregate number of hours expended in this matter and fees billed therefore, and as to attorneys, the year in which the attorney was first licensed to practice law.

17.    Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit C</u> is a summary by project matter of the fees generated by the services performed during the Compensation Period and, for each separate project matter, a list of each person providing services on the project, a statement of the number of hours spent, and the amount of compensation requested for each person on the project.

18.    Annexed hereto as <u>Exhibit D</u> is a schedule specifying the categories of expenses for which the Examiner and Jenner & Block are seeking reimbursement and the total amount for each such expense category; <u>Exhibit D</u> also includes a table that provides additional detail regarding each of the disbursement expenses for contract attorney wages during the Compensation Period.  <u>Exhibit E</u> contains a detailed list of all expenses for which the Examiner

and Jenner & Block seek reimbursement. This schedule has been adjusted for and does not reflect certain expenses incurred by the Examiner and Jenner & Block for which it will not be seeking reimbursement.

19.     The Examiner and Jenner & Block maintain detailed records of the time spent by all attorneys and paraprofessionals in connection with the representation of the Examiner. Detailed time records are annexed hereto as Exhibit F.

20.     The fees charged by the Examiner and Jenner & Block in these cases reflect an agreed upon 10% reduction from standard hourly rates because of the significant public interest associated with the Examiner's duties and responsibilities. The fees are otherwise billed in accordance with Jenner & Block's general existing billing rates and procedures in effect during the Compensation Period. The rates the Examiner and Jenner & Block charge for the services rendered by its professionals and paraprofessionals to the Examiner are the rates charged by the Examiner and the firm for professional and paraprofessional services rendered in comparable matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in a competitive national legal market in cases other than cases under title 11.

21.     All of the services for which interim compensation is sought were rendered by or to the Examiner solely in furtherance of his duties and functions as Examiner and not on behalf of any individual creditor or other person.

22.     The Examiner and Jenner & Block have not entered into any agreement, express or implied, with any other party for the purpose of fixing or sharing fees or other compensation to be paid for professional services rendered in these cases.

23.    The Examiner and Jenner & Block have not shared, nor agreed to share (a) any compensation they have received or may receive with another party or person, other than with the members, counsel and associates of the firm, or (b) any compensation another person or party has received or may receive.  No promises have been received by the Examiner or Jenner & Block as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

24.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Sixth Interim Application, the Examiner and Jenner & Block reserve the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## III.  Summary of Professional Compensation and Reimbursement of Expenses Requested

25.    As reported in the First Interim Fee Application, immediately following the Examiner's appointment, the Examiner[11] performed a wide variety of tasks in connection with the Investigation.  These included, among other things:  (a) assembling publicly available materials; (b) meeting and conferring with various parties to develop a work plan and to coordinate to avoid duplication of effort; (c) coordinating with agencies of the U.S. Government; (d) contacting examiners in other complex matters for assistance in developing an efficient work plan; (e) entering into stipulations with the Debtors and the Creditors' Committee to obtain access to documents and other materials; (f) filing a Rule 2004 motion that requested omnibus

_____

[11] Except as otherwise noted, references to steps taken by the Examiner include both the Examiner and Jenner & Block.

authority to issue subpoenas, including document requests, upon witnesses;[12] and (g) establishing

a depository to collect documents, transcripts, and other materials.

26.    As reported in the Second Interim Fee Application, the Examiner continued the

Investigation by:  (a) finalizing and transmitting the Examiner's Preliminary Work Plan to the

Court and parties-in-interest; (b) meeting with the Examiner's financial advisor, Duff & Phelps,[13]

to coordinate the Investigation; (c) conferring with the Debtors, the Creditors' Committee, and

other parties involved in the case to eliminate duplication and to make the work product being

generated useful to other parties in the future; (d) meeting with professionals at Alvarez &

Marsal to ascertain what data and documents were available, how the data and documents could

be accessed, and what analysis had already been performed; (e) entering into stipulations with

various parties; and (f) communicating with the Office of the United States Trustee, the SIPA

Trustee, and agencies of the U.S. Government.

27.    The Examiner also:  (a) collaborated with the Debtors and other parties involved

in the Investigation to begin the process of collecting, managing, and reviewing documents;

(b) obtained authority from the Court to retain contract attorneys to perform document review;

(c) commenced witness interviews in early February;[14] (d) held a weekly meeting with team

leaders to coordinate the investigation, maximize efficiency, avoid duplication, and draw on the

expertise and experience of his professionals; and (e) prepared factual and legal memoranda as

information was discovered during the course of the Investigation.

_____

[12] The Court granted the 2004 Motion on February 11, 2009.  [Docket No. 2804].

[13] On February 13, 2009, the Examiner filed an application to retain Duff & Phelps, LLC as his financial
advisor.  [Docket No. 2825].  The Court approved the application on February 25, 2009.  [Docket No.
2924].

[14] From February 2009 through May 2009, the Examiner conducted 69 interviews.

28.     As reported in the Third Interim Fee Application, many of these activities continued from June through September 2009 as the Examiner's Investigation advanced. Specifically, the Examiner:  (a) remained in communication with parties involved in the case, including the U.S. Government, to eliminate duplication of effort, to make the work product being generated useful to other parties in the future, and to obtain documents relevant to the Investigation; (b) collected and reviewed millions of pages of documents; (c) entered into court-approved confidentiality stipulations regarding documents with several parties; and (d) managed "claw-back" requests and other privilege related issues arising in connection with the Examiner's document review.

29.     Also as reported in the Third Interim Fee Application, the Examiner: (a) conducted 123 witness interviews;[15] (b) prepared outlines and work plans for drafting sections of the Examiner's final Report; (c) began drafting sections of the final Report; (d) worked with Duff & Phelps to identify analyses necessary for the Report; (e) identified public domain materials that related to the Investigation; (f) tracked witness, interview, and document information so as to coordinate among team members; (g) conducted legal research on potential claims to be analyzed as required by the Examiner Order; and (h) continued to hold a weekly team leaders meeting to coordinate the Investigation.

30.     As reported in the Fourth Interim Fee Application, many of these activities continued from October 2009 through January 2010 as the Examiner completed his Investigation and prepared his Report, including (a) conducting an additional 151 witness interviews; (b) tracking witness, interview, and document information; (c) pursuing, collecting, and

_____

[15] These numbers include depositions taken by other parties which the Examiner participated in or attended.

reviewing documents and public domain materials relating to the Investigation; (d) entering into additional, court-approved confidentiality stipulations with various parties; (e) managing privilege related issues arising in the connection with the Examiner's document review; (f) analyzing evidence and legal research regarding potential claims to be reported on; (g) finalizing the substance of the Examiner's Report; and (h) integrating the various sections of the Report.

31.    As reported in the Fifth Interim Fee Application, the Examiner finalized his Report and filed it with the Court under seal on February 8, 2010.  On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report [Docket No. 7531], and, on April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report [Docket No. 8307].  The Examiner also (a) communicated with various parties in interest regarding the Report, including the Debtors, the SIPA Trustee, the U.S. Trustee, and the U.S. Government; (b) communicated with various third parties regarding confidentiality and privilege issues; (c) took steps to preserve the document and data repositories utilized by the Examiner during the course of his Investigation; and (d) prepared and negotiated proposed orders to make the Report publicly available and to terminate the Examiner's appointment.

32.    During this Compensation Period, the Examiner's work principally related to the preparation and negotiation of the Examiner Discharge Order and responding to the Fee Committee regarding Jenner & Block's Fourth Interim Fee Application.  On June 2, the Examiner filed the Examiner's Motion for Order Discharging Examiner and Grating Related Relief (the "Discharge Motion").  [Docket No. 9361].  On June 16, the Court held a hearing on the Examiner's Discharge Motion.  Thereafter, the Examiner communicated with the Debtors and other parties in interest regarding the form of an order approving the Examiner's discharge.

Following those communications, an agreed upon form of order was submitted to the Court, and the Court entered the Discharge Order on July 13, 2010.

### A.    Specific Project Matters

33.    As noted above, Exhibit C is a summary by project matter of the fees generated during the Compensation Period.  The following are descriptions of the project matters and their necessity and benefit to the estate.  The descriptions include a statement of the aggregate number of hours spent and fees charged for each matter after applying the 10% reduction.  The persons providing services on each project matter are listed on Exhibit C.

### B.    Examiner

34.    During the Compensation Period, the Examiner expended 6.1 hours, at an aggregate charge of $5,352.75, on matters relating to (i) communicating and meeting with various parties and the U.S. Government regarding the Report and Investigation, and (ii) preparing for and attending a Court hearing regarding the Examiner Discharge Order.[16]

### C.    Court Hearings

35.    During the Compensation Period, Jenner & Block expended 3.3 hours, at an aggregate charge of $2,202.75, attending a Court hearing regarding the Examiner's Discharge Order.

### D.    General Bankruptcy Matters and Research

36.    During the Compensation Period, Jenner & Block expended 51.1 hours, at an aggregate charge of $33,354.00, relating to the preparation and negotiation of the Examiner Discharge Order and to the motion to approve the same.

_____

[16] The Examiner's non-working travel time is not included in this matter, but is billed under "Non-Working Travel Time" so that the 50% reduction could be applied to such time.

### E.   Communications and Meetings with Parties in Interest

37.     In the Examiner Order, the Court directed the Debtors, the Debtors' affiliates and subsidiaries, the Creditors' Committee, the SIPA Trustee, and their respective representatives "to cooperate with the Examiner in conjunction with the performance of any of the Examiner's duties and the Investigation" and "to coordinate with the Examiner to avoid unnecessary interference with, or duplication of, the Investigation."  Examiner Order, ¶ 4.  The Court also ordered the Examiner to "cooperate fully with any governmental agencies" and to "follow a protocol to be established with the governmental agencies for the sharing of information…."  Examiner Order, ¶ 8.  During the Compensation Period, Jenner & Block expended 14.3 hours, at an aggregate charge of $9,381.60 relating to communications with the Debtors, the U.S. Government, and other interested parties regarding the Examiner's Discharge Order and the Report.

### F.   Non-Working Travel Time

38.     This matter includes time entries related to non-working travel time spent by the Examiner and Jenner & Block attorneys to participate in a court hearing during the Compensation Period.  During the Compensation Period, the Examiner and Jenner & Block expended 14.0 hours, at an aggregate charge of $11,272.50 for non-working traveling time.  However, the Examiner and Jenner & Block are voluntarily reducing their bill for these fees and are seeking compensation only for one-half of these fees, or $5,636.25.

### G.   Document Management and Review

39.     A critical piece of the Examiner's Investigation and Report preparation related to the collection and processing of a vast volume of documents and information that was in the possession of various parties in interest.  During the Compensation Period, Jenner & Block expended 17.9 hours, at an aggregate charge of $6,984.00, with respect to document and data

14

management and review, which included reviewing documents to determine the applicable

confidentiality stipulations in response to communications and requests from the Debtors, the

U.S. Government, and other parties in interest.

### H.     Billing and Fee Applications

40.     This matter relates to the preparation of monthly fee statements, fee applications,

and responses to the Fee Committee.  In particular, during the Compensation Period, Jenner &

Block worked on analyzing time and expense entries for the fifth interim fee application and

eventual final fee application.  Jenner & Block also analyzed the Fee Committee's report on

Jenner & Block's Fourth Interim Fee Application and prepared detailed responses to that report.

During the Compensation Period, Jenner & Block expended 128.6 hours, at an aggregate charge

of $50,910.30, on billing and fee application matters.  As a percentage of the fees requested in

this interim fee application, this amount is greatly disproportionate because (i) the overall fees

for the current Compensation Period (the denominator of the equation) were much lower than

prior periods since the Examiner's work was largely complete; and (ii) the billing and fee

application work performed during the current Compensation Period (the numerator of the

equation) did not decrease proportionately because it related to a prior period when the

Examiner's and Jenner & Block's work was much more extensive.  Over the course of the

Examiner's appointment and Jenner & Block's engagement, from January 19, 2009 through July

12, 2010, the fees for billing and fee application matters have amounted to 1.65% of the total

fees requested.

### I.     Consultation with Financial Advisors

41.     During the Compensation Period, Jenner & Block expended 1.1 hours, at an

aggregate charge of $841.50, on matters relating to communications with Duff & Phelps

regarding the Debtors' request for cooperation and the Fee Committee's report regarding Duff &

Phelps' fee and expense requests.

## IV.  The Requested Compensation Should Be Allowed

42.     The foregoing professional services performed by the Examiner and Jenner &

Block were necessary and appropriate to the Examiner's administration of his duties in the

above-referenced chapter 11 cases and were in the best interests of the Examiner, the Debtors'

estates, and other parties in interest.  Compensation for the foregoing services as requested is

commensurate with the complexity, importance, and nature of the problems, issues, or tasks

involved.  Jenner & Block has taken significant efforts to ensure that the professional services

were performed expeditiously, in an efficient manner, and without duplication of effort.

43.     In preparing this Sixth Interim Application, the Examiner and Jenner & Block

calculated the amount of time spent by each attorney and paraprofessional in performing actual

and necessary legal services for the Examiner and the Investigation.  That data came directly

from computerized records that are kept for each Jenner & Block client.  Individual time entries

are maintained on written daily logs, personal computer hard drives or the firm's central

computer network.  All time entries and expenses are uploaded into the billing system, which

then produces draft client billing memoranda and invoices.  Jenner & Block attorneys have

reviewed and edited the draft invoices and billing memoranda for errors prior to their

submission.

44.     The rates used in this Sixth Interim Application are the customary and usual rates

which the Examiner and Jenner & Block charge clients on matters of this type, subject to the

10% reduction in standard hourly rates to which the Examiner and Jenner & Block have agreed

because of the significant public interest associated with the Examiner's duties and

responsibilities.  In addition, the disbursements for which the Examiner and Jenner & Block seek

reimbursement are the customary and usual expenses for which the Examiner and Jenner &

Block seek reimbursement from their clients.  Jenner & Block charges 10 cents per page for

duplicating.  Jenner & Block does not charge its clients for facsimiles, domestic and long

distance telephone (other than while traveling), and certain overtime expenses, and takes those

expenses into account in its overhead.  Jenner & Block does not include charges for postage,

messenger services, duplicating and computerized legal research in its overhead because it is

fairer to clients who use less of these services to have these expenses billed separately.

According to its outside auditors these charges fairly approximate the firm's actual costs and do

not result in undue revenue for the firm.  The firm's hourly rates used for this Sixth Interim

Application do not compensate the firm for such expenses.

45.    Section 331 of the Bankruptcy Code provides for interim compensation of

professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation for

actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11

U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation

and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an
> Examiner, trustee under Chapter 11, or professional person, the court should
> consider the nature, the extent, and the value of such services, taking into account
> all relevant factors, including
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration
>        of, or beneficial at the time at which the service was
>        rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

46.     In the instant case, the Examiner and Jenner & Block respectfully submit that the services for which they seek compensation in this Sixth Interim Application were, at the time rendered, believed to be necessary for and beneficial to the Examiner and the Investigation.  The Examiner and Jenner & Block further submit that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided by and to the Examiner; and, the Examiner has been given the opportunity to review this application and has approved the requested amount.

47.     The services rendered by the Examiner and Jenner & Block were consistently performed in a timely manner commensurate with the complexity, importance, and nature of the issues involved.  Accordingly, approval of the interim compensation sought herein for the Compensation Period is warranted.

48.     This Sixth Interim Application includes citations to the applicable authorities and does not raise any novel issues of law.  The Examiner and Jenner & Block reserve the right to file a brief in reply to any objection to this Sixth Interim Application.

49.     To the extent applicable, the Examiner and Jenner & Block further request that the Court waive for cause shown any Guideline requirement not met by this Sixth Interim Application.

50.     No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE the Examiner and Jenner & Block respectfully request: (i) allowance and payment of compensation for professional services rendered during the Compensation Period in the amount of $114,633.15; and (ii) reimbursement for actual and necessary expenses the Examiner and Jenner & Block incurred during the Compensation Period in the amount of $10,057.12; and (iii) that the Court grant the Examiner and Jenner & Block such other and further relief as is just.

Dated: December 14, 2010
New York, New York

                              Respectfully submitted,

                              By: /s/ *Patrick J. Trostle*
                                  Patrick J. Trostle

                              JENNER & BLOCK LLP
                              919 Third Avenue, 37th Floor
                              New York, New York 10022-3908
                              Telephone:  (212) 891-1600
                              Facsimile:  (212) 891-1699
                              Patrick J. Trostle
                              Heather D. McArn

                              353 North Clark Street
                              Chicago, Illinois 60654-3456
                              Telephone:  (312) 222-9350
                              Facsimile:  (312) 527-0484
                              Robert L. Byman (Admitted *Pro Hac Vice*)
                              Daniel R. Murray (Admitted *Pro Hac Vice*)

                              Attorneys for the Examiner