**Hearing Date: To Be Determined**
**Objection Deadline: To Be Determined**

DUFF & PHELPS LLC
55 East 52nd Street
New York, New York 10055

300 Headquarters Plaza
East Tower, 12th Floor
Morristown, NJ 07960
Allen M. Pfeiffer

Financial Advisors to the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| | : | |
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

**FIFTH INTERIM FEE APPLICATION OF DUFF & PHELPS LLC, AS FINANCIAL ADVISORS TO THE EXAMINER, ANTON R. VALUKAS, FOR INTERIM ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED FROM JUNE 1, 2010 THROUGH JULY 12, 2010**

**FOR SIXTH INTERIM APPLICATION PERIOD.**

1

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

| | |
|---|---|
| Name of Applicant: | Duff & Phelps LLC |
| Period for which Compensation and Reimbursement is Sought: | June 1, 2010 through July 12, 2010 |
| Authorized to Provide Professional Services to: | Anton R. Valukas (the "Examiner") |
| Date of Notice of Appointment (Examiner): | January 19, 2009 |
| Date of Retention (Duff & Phelps): | February 25, 2009, *nunc pro tunc* February 6, 2009 |

| | | |
|---|---|---|
| Amount of Compensation and Expense Reimbursement Sought As Actual, Reasonable and Necessary: | Fees Requested:[1] | $55,009.35 |
| | Expenses Requested: | $0.00 |
| Prior Amounts Requested: | Fees Previously Requested: | $42,717,111.54 |
| | Fees Previously Awarded: | $41,114,091.93[2] |
| | Expenses Previously Requested: | $806,075.90 |
| | Expenses Previously Awarded: | $775,498.05[3] |

---

[1] This reflects an agreed 10% reduction in standard hourly rates because of the significant public interest associated with the Examiner's duties and responsibilities.

[2] Duff & Phelps' Fourth Interim Fee Application remains subject to the Court's review and approval.

[3] Duff & Phelps' Fourth Interim Fee Application remains subject to the Court's review and approval.

Summary of Time Recorded From June 1, 2010 - July 12, 2010
For Services Provided by Duff & Phelps

| Professional | Rate | Hours | Fees | Discounted Fees |
|---|---|---|---|---|
| **Managing Director** | | | | |
| Paul Marcus | $835.00 | 12.4 | $10,354.00 | $9,318.60 |
| Allen Pfeiffer | $835.00 | 2.5 | $2,087.50 | $1,878.75 |
| Michael Vitti | $835.00 | 2.5 | $2,087.50 | $1,878.75 |
| **Managing Director Total** | | **17.4** | **$14,529.00** | **$13,076.10** |
| **Director** | | | | |
| Jaime Dalmeida | $750.00 | 5.0 | $3,750.00 | $3,375.00 |
| TC Fleming | $750.00 | 7.5 | $5,625.00 | $5,062.50 |
| **Managing Director Total** | | **12.5** | **$9,375.00** | **$8,437.50** |
| **Vice President** | | | | |
| Seth Fliegler | $595.00 | 2.3 | $1,368.50 | $1,231.65 |
| William Hrycay | $595.00 | 20.5 | $12,197.50 | $10,977.75 |
| Joe Leiwant | $595.00 | 18.5 | $11,007.50 | $9,906.75 |
| Joseph Thompson | $595.00 | 15.2 | $9,044.00 | $8,139.60 |
| **Vice President Total** | | **56.5** | **$33,617.50** | **$30,255.75** |
| **Senior Associate** | | | | |
| Aditya Darbari | $450.00 | 4.3 | $1,935.00 | $1,741.50 |
| Zain Saeed | $450.00 | 2.4 | $1,080.00 | $972.00 |
| Vivek Thaker | $450.00 | 1.3 | $585.00 | $526.50 |
| **Senior Associate Total** | | **8.0** | **$3,600.00** | **$3,240.00** |
| **Grand Total** | | **94.4** | **$61,121.50** | **$55,009.35** |
| | Less: 50% of Non-Working Travel | | | - |
| | **Duff & Phelps' Adjusted Fees** | | | **$55,009.35** |
| | Blended Hourly Rate for Professionals | | | 582.73 |

DUFF & PHELPS LLC
55 East 52nd Street
New York, New York 10055

300 Headquarters Plaza
East Tower, 12th Floor
Morristown, NJ 07960
Allen M. Pfeiffer

Financial Advisors to the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
-----------------------------------------------------------------x

**FIFTH[4] INTERIM FEE APPLICATION OF DUFF & PHELPS, LLC, AS FINANCIAL
ADVISORS TO THE EXAMINER, ANTON R. VALUKAS, FOR INTERIM
ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND
REIMBURSEMENT OF EXPENSES INCURRED FROM
<u>JUNE 1, 2010 THROUGH JULY 12, 2010</u>[5]**


**<u>FOR SIXTH INTERIM APPLICATION PERIOD.</u>**

---

[4] Although this is the Sixth Interim period for this case, this is the Fifth Interim Fee Application that Duff & Phelps is filing.

[5] Although this interim fee period covers June 1, 2010 through September 30, 2010, in this Sixth Interim Fee Period, Duff & Phelps seeks Court approval for compensation and reimbursement only for June 1, 2010 through July 12, 2010. Pursuant to Paragraph 4 of the Order Discharging Examiner and Granting Related Relief [Docket No. 10169], after the entry of that Order, Duff & Phelps is required to submit fee applications only for fees and expenses that exceed $150,000 in any month.

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Duff & Phelps, LLC[6] ("Duff & Phelps" or the "Applicant"), financial advisors to the

Examiner in the above-captioned matter, Anton R. Valukas (the "Examiner"), in support of its

Fifth Interim Application (the "Fifth Interim Application") for allowance of compensation for

professional services rendered and reimbursement of expenses incurred from June 1, 2010

through July 12, 2010 (the "Sixth Application Period"), respectfully represents:

## PRELIMINARY STATEMENT

1.      By this Fifth Interim Application, and pursuant to sections 330 and 331 of

Title 11 of the United States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules"), Duff & Phelps requests that this Court

authorize: (a) interim allowance and payment of reasonable compensation for actual and

necessary professional services performed by Duff & Phelps in the aggregate amount of

$55,009.35 for the period of June 1, 2010 through and including July 12, 2010 (the "Compensation

Period")[7,8].

2.      This Court has jurisdiction over this Fifth Interim Application pursuant to

28 U.S.C. §§ 157 and 1334.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

---

[6] On February 25, 2009, Order Authorizing the Examiner to Retain and Employ Duff & Phelps LLC as his Financial Advisors *Nunc Pro Tunc* as of February 6, 2009 ("February 25th Order") was entered by this Court in accordance with the Bankruptcy Rule 2016 and based on the Declaration of Allen M. Pfeiffer dated February 11, 2009.  See Docket No 2924 (Order) and Docket No 2825 Exhibit B (AP Decl).  In accordance with the February 25th Order, the Examiner retained Duff & Phelps LLC as financial advisor to assist the Examiner by Duff & Phelps' Letter of Engagement dated February 6, 2009 ("D&P Letter of Engagement").  See Docket No 2825 Exhibit C.

[7] Duff & Phelps incurred no expenses during the Compensation Period.

[8] The Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals entered on June 25, 2009 requires this Application, covering the four month period of June 1, 2010 through and including September 30, 2010, be submitted within 75 days of September 30, 2010 or on or before December 14, 2010.

3.     To aid this Court in its review and analysis, the Fifth Interim Application is set forth in four parts.  Part I provides a brief background of the matter and Duff & Phelps' retention.  Part II provides an overview of the Fifth Interim Application.  Part III provides a description of the work performed by Duff & Phelps during the Compensation Period, by category, as well as how Duff & Phelps calculated the request for compensation for professional services rendered and reimbursement of expenses.  Finally, Part IV explains why this compensation request should be allowed.

## I.     BACKGROUND

4.     On September 15, 2008, and periodically thereafter (as applicable, the "Commencement Date"), Lehman Brothers Holdings Inc. ("LBHI") and certain of its direct and indirect subsidiaries (collectively, the "Debtors") commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

5.     On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.     On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPA Trustee") is administering LBI's estate.

7.     On January 16, 2009, the Court entered an order (the "Examiner Order") directing the appointment of an examiner, pursuant to 11 U.S.C. § 1104(c)(2), to investigate,

*inter alia*, various transfers and transactions by the Debtors and their affiliates, claims that

certain Debtors may have against LBHI, and the events that immediately preceded the

commencement of the LBHI chapter 11 case (collectively, the "Investigation").  Examiner Order

at ¶ 2 [Docket No. 2569].  The Examiner Order also directed the examiner to "perform the duties

specified in sections 1106(a)(3) and (4) of the Bankruptcy Code, except to the extent the Court

orders otherwise." Id. at ¶ 3.

   8. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

Examiner in the chapter 11 cases, subject to Court approval, and filed notice of such

appointment.  [Docket No. 2570].  On January 20, 2009, the U.S. Trustee filed an application for

an Order of this Court approving the appointment of Anton R. Valukas as examiner in the

chapter 11 cases. [Docket No. 2571].  On January 20, 2009, this Court entered an order

approving the appointment by the U.S. Trustee of Anton R. Valukas as Examiner in the

chapter 11 cases. [Docket No. 2583].

   9. On February 13, 2009, the Examiner filed an Application to authorize the

Retention and Employment of Duff & Phelps LLC Financial Advisors to the Examiner. [Docket

No. 2825]. On February 25, 2009, this Court entered the Order Authorizing the Examiner to

Retain and Employ Duff & Phelps LLC as his Financial Advisors *nunc pro tunc* as of

February 6, 2009 (the "February 25th Order"). [Docket No. 2924].  By Duff & Phelps' Letter of

Engagement dated February 6, 2009, the Examiner retained Duff & Phelps, LLC as financial

advisor to assist the Examiner in accordance with the February 25th Order.  See Docket No.

2825 Exhibit C.

   10. On June 25, 2009, the Court entered the Third Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals. [Docket No. 4165].

11.    On February 8, 2010, the Examiner filed with the Court under seal the Report of Examiner Anton R. Valukas (the "Report"), pursuant to the Court's Order Authorizing the Examiner to File the Examiner's Report Under Seal [Docket No. 7024]. On March 11, 2010, the Examiner publicly filed a partially redacted version of the Report, [Docket No. 7531], and substituted an unredacted version of the Report with the Court under seal pursuant to the Bankruptcy Court's Order dated March 11, 2010. [Docket No. 7530]. On April 14, 2010, the Examiner filed an unredacted version of Volume 5 of the Report. [Docket No. 8307].

12.    On March 15, 2010, the Debtors filed the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors. [Docket No. 7572]. On April 14, 2010, the Debtors filed a revised Joint Chapter 11 Plan [Docket No. 8330] and a Disclosure Statement for Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code. [Docket No. 8332].

13.    On July 13, 2010, the Court entered an Order Discharging Examiner and Granting Related Relief (the "Discharge Order"). [Docket No. 10169]. The Discharge Order terminated the appointment of the Examiner and discharged the Examiner and his professionals "from any further obligations, duties, or responsibilities except as otherwise set forth in [the Discharge Order]." Among other things, the Discharge Order permits the Examiner and his professionals to continue to provide cooperation to various parties involved in these chapter 11 cases.

## II.    FIFTH INTERIM APPLICATION FOR THE SIXTH INTERIM APPLICATION PERIOD

14.    Duff & Phelps has prepared this Fifth Interim Application for the Sixth Interim Application Period in accordance with the Administrative Order Re: Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated November 25, 2009 (the "Amended SDNY Guidelines"), and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States Department of Justice dated January 30, 1996 (the "UST Guidelines" and collectively with the Amended SDNY Guidelines, the "Guidelines"). Pursuant to the Amended SDNY Guidelines, a certification regarding compliance with such guidelines is attached hereto as Exhibit A.

15.    Duff & Phelps has prepared its time and expense entries to comply with suggested guidelines proposed by the Fee Committee.[9]  Duff & Phelps is prepared to provide additional information to the Fee Committee with respect to any comments or questions the Fee Committee may have with respect to any disbursements or time entry descriptions for the period covered by this Fifth Interim Application.

16.    Duff & Phelps seeks interim allowance herein of reasonable compensation for actual and necessary financial advisory services rendered to the Examiner during the Compensation Period, in the aggregate amount of $55,009.35.

17.    The fees sought by this Fifth Interim Application reflect an aggregate of 94.4 hours of professional time spent and recorded in performing services for the Examiner

---

[9] On May 26, 2009, the Court entered an Order Appointing a Fee Committee and Approving a Fee Application Protocol (the "Fee Committee Order") [Docket No. 3651).  On August 3, 2009, September 10, 2009, December 14, 2009, March 10, 2010, April 9, 2010, and August 20, 2010, the Fee Committee filed reports pertaining to the first, second, and third interim fee applications.  [Docket Nos. 4655, 5104, 6165, 7498, 8209, 10947].

during the Compensation Period. This aggregate amount does not include time that might be construed as duplicative or otherwise not beneficial to the Examiner's Investigation.  In addition, for the duration of the Application period, Duff & Phelps eliminated all time spent by administrative and research analyst staff, transitory professionals, and executive management of Duff & Phelps.

18.     Of the aggregate time expended during the Compensation Period, 17.4 recorded hours were expended by managing directors, 12.5 recorded hours were expended by directors, 56.5 recorded hours were expended by vice presidents, and 8.0 recorded hours were expended by senior associates.

19.     The fees charged by Duff & Phelps in this matter reflect a voluntary, agreed upon 10% reduction from standard hourly rates because of the significant public interest associated with the Examiner's duties and responsibilities.  The fees are otherwise billed in accordance with Duff & Phelps' procedures in effect during the Compensation Period.

20.     During the Compensation Period, Duff & Phelps' hourly billing rates for professionals working on these matters ranged from $450.00 to $835.00 per hour[10] before applying the agreed upon 10% rate reduction, or $405.00 to $751.50 per hour after applying the reduction.  Allowance of compensation in the amount requested would result in a blended hourly billing rate of $582.73.

21.     Such rates are reasonable based on the customary compensation charged by comparably skilled professionals in comparable non-bankruptcy cases in a competitive national financial advisory services market.

---

[10] Duff & Phelps' standard hourly rates set forth in the letter of engagement range from $120 to $920 per hour. Consistent with the engagement letter and the retention application, as of April 1, 2009, Duff & Phelps' standard hourly rates were adjusted, resulting in a range of $125 to $955 per hour.

22.     Pursuant to the Guidelines, annexed hereto as Exhibit C is a schedule
setting forth all Duff & Phelps professionals who have performed services for the Examiner
during the Compensation Period for which Duff & Phelps is seeking reimbursement, the position
in which each such professional is employed by Duff & Phelps, the hourly billing rate charged
for services performed by such professional and the aggregate number of hours expended in this
matter and fees billed therefore.

23.     Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a
summary by project matter of the fees generated by the services performed during the
Compensation Period, and, annexed hereto as Exhibit D for each separate project matter, a list of
each professional providing services on the project matter, a statement of the number of hours
spent and the amount of compensation requested for each professional on the project matter.

24.     Duff & Phelps maintains detailed records of the time spent by all
professionals, and the expenses incurred by them, in connection with their responsibilities to the
Examiner.  Annexed hereto as Exhibit E are detailed time records of the time spent by all
professionals in connection with work performed on behalf of the Examiner.

25.     All of the services for which interim compensation is sought were
rendered to the Examiner solely in furtherance of his duties and functions as Examiner and not
on behalf of any individual creditor or other person.

26.     Except for subcontractors hired by Duff & Phelps upon and with approval
by the Examiner, Duff & Phelps has not entered into any agreement, express or implied, with
any other party for the purpose of fixing or sharing fees or other compensation to be paid for
professional services rendered in these cases.

27.     Duff & Phelps has not shared, nor agreed to share (a) any compensation it has received or may receive with another party or person, other than subcontractors hired by Duff & Phelps upon and with approval by the Examiner, or (b) any compensation another person or party has received or may receive.  No promises have been received by Duff & Phelps as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

28.     To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Compensation Period, but were not processed prior to the preparation of this Fifth Interim Application, Duff & Phelps reserves the right to request additional compensation for such services and reimbursement of such expenses in a future application.

## III.    SUMMARY OF SERVICES RENDERED

29.    Duff & Phelps' Letter of Engagement, in conjunction with the

February 25th Order and the Application, set forth the terms and conditions of Duff & Phelps'

retention to advise and assist the Examiner as requested in his investigation directed by this

Court and specified in the Examiner Order.  Examiner Order at ¶ 2 [Docket No. 2569].

The Examiner Order required the Examiner to investigate, *inter alia*:

- Whether LBCC or any other entity that currently is an LBHI chapter 11

debtor subsidiary or affiliate ("LBHI Affiliate(s)") has any administrative claims

against LBHI resulting from LBHI's cash sweeps of cash balances, if any, from

September 15, 2008, the commencement date of LBHI's chapter 11 case, through

the date that such *applicabl*e LBHI affiliate commenced its chapter 11 case

(herein referred to as "Task 1");

- All voluntary and involuntary transfers to, and transactions with, affiliates,

insiders and creditors of LBCC or its affiliates, in respect of foreign exchange

transactions and other assets that were in the possession or control of LBHI

Affiliates at any time commencing on September 15, 2008 through the day that

each LBHI Affiliate commenced its chapter 11 case (herein referred to as

"Task 2");

- Whether any LBHI Affiliate has colorable claims against LBHI for

potentially insider preferences arising under the Bankruptcy Code or state law

(herein referred to as "Task 3");

• Whether any LBHI Affiliate has colorable claims against LBHI or any other entities for potentially voidable transfers or incurrences of debt, under the Bankruptcy Code or otherwise applicable law (herein referred to as "Task 4");

• Whether there are more colorable claims for breach of fiduciary duties and/or aiding or abetting any such breaches against the officers and directors of LBCC and/or other Debtors arising in connection with the financial condition of the Lehman enterprise prior to the commencement of the LBHI chapter 11 case on September 15, 2008 (herein referred to as "Task 5");

• Whether assets of any LBHI Affiliates (other than Lehman Brothers, Inc.) were transferred to Barclays Capital Inc. as a result of the sale to Barclays Capital Inc. that was approved by order of the Bankruptcy Court entered September 20, 2008, and whether consequences to any LBHI Affiliate as a result of the consummation of the transaction created colorable causes of action that inure to the benefit of the creditors of such LBHI subsidiary or affiliate (herein referred to as "Task 6");

• The inter-company accounts and transfers among LBHI and its direct and indirect subsidiaries, including but not limited to: LBI, LBIE, Lehman Brothers Special Finance ("LBSF") and LBCC, during the 30-day period preceding the commencement of the chapter 11 cases by each debtor on September 15, 2008 or thereafter or such longer period as the Examiner deems relevant to the Investigation (herein referred to as "Task 7");

• The transactions and transfers, including but not limited to the pledging or granting of collateral security interest among the debtors and the pre-chapter 11

14

lenders and/or financial participants including but not limited to, JPMorgan

Chase, Citigroup, Inc., Bank of America, the Federal Reserve Bank of New York

and others (herein referred to as "Task 8");

- • The transfer of the capital stock of certain subsidiaries of LBI on or about

September 19, 2008 to Lehman ALI Inc. (herein referred to as "Task 9"); and

- • The events that occurred from September 4, 2008 through September 15,

2008 or prior thereto that may have resulted in commencement of the LBHI

chapter 11 case (herein referred to as "Task 10").

Examiner Order, ¶ 2.

30.    During the Compensation Period, Duff & Phelps performed a wide variety

of tasks in connection with the Investigation.  During this period, Duff & Phelps' work

principally related to providing assistance to the Debtors by disseminating information to

Alvarez & Marsal[11].  In addition, Duff & Phelps incurred time responding to the Fee Committee

regarding Duff & Phelps' Fourth Interim Fee Application.  Duff & Phelps provided assistance to

Alvarez & Marsal pursuant to the directive to share information in order to avoid unnecessary

duplication of efforts.

31.    As noted, Exhibit B is a summary by project matters of the fees generated

during the Compensation Period.  The following are descriptions of the project matters and their

necessity and benefit to the estate.  The descriptions include a statement of the aggregate number

of hours spent and fees charged for each matter after applying the 10% reduction.  The persons

providing services on each project matter are listed on Exhibit D.

---

[11] Alvarez & Marsal is currently serving as financial advisors to the Debtors.

## A. Examiner Issues

32.    During the Fifth Interim Period, Duff & Phelps incurred time responding to follow-up requests and inquiries regarding analyses conducted during the course of the Examiner's investigation.  During that time, Duff & Phelps professionals met with representatives of the debtors and their attorneys, as well as with Jenner & Block attorneys to discuss the type of assistance that would be requested as well as the process by which assistance would be requested and provided.  Duff & Phelps professionals also conducted several teleconferences with representatives of the debtors to discuss various areas of analysis which were reported on by the Examiner.

33.    During this Compensation Period, Duff & Phelps continued to provide assistance to the Debtors and its representatives.  Duff & Phelps professionals incurred time working on behalf of the Examiner on issues that can generally be cast into three categories. Professionals (i) reviewed workpapers related to certain sections of the Examiner's report to refamiliarize themselves with the material as several months had passed since the report was issued; (ii) participated in discussions with Alvarez & Marsal re: analyses that were considered and described in the Examiner's report and (iii) provided information to Alvarez & Marsal that was requested during the course of discussions.  Analyses that were discussed included: (a) valuation or Archstone positions; (b) valuation of commercial real estate positions; (c) valuation of residential mortgage positions; (d) capital adequacy and liquidity analyses; e) liquidity pool; and (g) LBHI solvency

34.    During the Compensation Period, Duff & Phelps expended 83.6 hours, at an aggregate charge of $49,182.75, on matters relating to Examiner Issues.

## B.  Firm's Own Billing/Fee Applications

35.     This matter relates to internal case administration and the preparation of monthly fee statements and fee applications, and it included (a) review and preparation of Duff & Phelps' monthly fee statement for May 2010; and (b) preparation of detailed responses to the Fee Committee in response to its report on Duff & Phelps' Fourth Interim Fee Application.

36.     During the compensation period, Duff & Phelps' time and fees incurred in this matter represent 10.6% of the fees being requested for the current Compensation Period.[12] This percentage is higher than in past periods primarily because Duff & Phelps' work on behalf of the Examiner was substantially complete, causing total fees for the period to be substantially lower than in prior periods.  Further, almost 90% of the fees being requested in this matter relate to the preparation of detailed responses to the Fee Committee in response to its report on Duff & Phelps' Fourth Interim Fee Application.  The remaining 10%, or $632.25,  was incurred preparing Duff & Phelps' monthly fee statement for May 2010.  The time incurred preparing that statement represents just 1.1% of the total fees being requested by this application.[13]

37.     During the Compensation Period, Duff & Phelps expended 10.8 hours, at an aggregate charge of $5,771.50, on the Firm's Own Billing/Fee Applications matters.

## C.  Other Matters

38.     During the Compensation Period, Duff & Phelps did not bill for any time spent by professionals working on items related to any other Matters.

---

[12] $5,826.60 divided by $55,009.35 equals 10.6%.

[13] $632.25 divided by $55,009.35 equals 1.1%

## IV.    DUFF & PHELPS' REQUESTED COMPENSATION SHOULD BE

## ALLOWED

39.    The foregoing professional services performed by Duff & Phelps were necessary and appropriate to the Examiner's administration of his duties in the above-referenced chapter 11 cases and were in the best interests of the Examiner, the Debtors' estates, and other parties in interest. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

40.    Duff & Phelps has taken significant efforts to ensure that the professional services were performed with diligence, in an efficient manner, and without duplication of effort. Accordingly, when possible, Duff & Phelps delegated tasks to lower cost professionals or, for discrete matters, to professionals with specialized expertise in the particular task at issue. While that approach may have required intra-office conferences or involved individual professionals who spent only a few hours on the matter at hand, the net result was enhanced cost efficiency.

41.    In preparing this Fifth Interim Application, Duff & Phelps calculated the amount of time spent by each professional in performing actual and necessary advisory services to the Examiner and Counsel to the Examiner in the conduct of the Investigation. That data came directly from computerized records that are kept specifically for this engagement. Individual time entries are maintained on written daily logs and are input directly into the billing system.  All time entries and expenses are uploaded into the billing system, which then produces

draft spreadsheets of time and expenses.  Duff & Phelps professionals have reviewed and edited

the draft spreadsheets for errors prior to their submission.

      42.     The rates used in this Fifth Interim Application are the customary and

usual rates which Duff & Phelps charges clients on matters of this type, subject to the 10%

reduction in standard hourly rates to which Duff & Phelps has agreed because of the significant

public interest associated with the Examiner's duties and responsibilities.  In addition, the

disbursements for which Duff & Phelps seeks reimbursement are the customary and usual

expenses for which the Duff & Phelps seeks reimbursement from their clients.  Duff & Phelps

does not charge its clients for facsimiles, postage, duplicating and computerized research,

domestic and long distance telephone (other than while traveling), and certain overtime expenses,

and takes those expenses into account in its overhead.  The hourly rates applied in this Fifth

Interim Application do not compensate the firm for such expenses.

      43.     Section 331 of the Bankruptcy Code provides for interim compensation

of professionals and incorporates the substantive standards of section 330 to govern the Court's

award of such compensation.  11 U.S.C. § 331.  Section 330 provides that a court may award a

professional employed under section 327 of the Bankruptcy Code "reasonable compensation

for actual necessary services rendered . . . and reimbursement for actual, necessary expenses."

11 U.S.C. § 330(a)(1). Section 330 also sets forth the criteria for the award of such

compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to an
> Examiner, trustee under Chapter 11, or professional person, the court should
> consider the nature, the extent, and the value of such services, taking into account
> all relevant factors, including
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;

    (C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

       44.     Duff & Phelps respectfully submits that the services for which it seeks compensation in this Fifth Interim Application were, at the time rendered, believed to be necessary and beneficial to the Examiner and the Investigation. Duff & Phelps further submits that the compensation requested herein is reasonable in light of the nature, extent, and value of such services provided to the Examiner and Counsel to the Examiner. The Examiner has been given the opportunity to review this application and has approved the requested amount.

       45.     The services rendered by Duff & Phelps were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved. During the course of the Examiner's investigation, Duff & Phelps took numerous steps to ensure the services were rendered in the most efficient, cost-effective manner. Such steps include (a) establishing several cross-functional teams, such as the project management, the data and document management and the valuation coordination ("VCT") teams to minimize overlap of activity among the functional teams; (b) focusing on the tasks deemed most beneficial to the

investigation by taking top-down view of each of the major issues to readily identify areas that warranted greater scrutiny, and thereafter conferring with the Examiner and Counsel to the Examiner to again focus on only those tasks/deliverables they directed Duff & Phelps to continue to focus upon; (c) establishing weekly team leader calls both internally and externally between Duff & Phelps' team leaders and the respective team leader(s) at Counsel for the Examiner; (d) leveraging off of work already performed by others, including Counsel to the Examiner, Alvarez, Barclays, Deloitte, Ernst & Young, Houlihan, Lokey, Howard & Zukin and Gifford Fong Associates; (e) primarily analyzing data and issues that have not yet been the focus of other investigations, the results of which we expect has and will continue to benefit other parties; (f) refraining in all but a select few instances from performing first level review of any document productions by coordinating efforts with Counsel for the Examiner who have, along with contract attorneys, performed most first level reviews, and instead, efforts have been focused on reviewing only those documents which have been flagged either as "Hot" or "for Duff review"; and (g) to the extent we perform first level review of a document production, junior analyst reviewers knowledgeable about the needs of each area of the investigation are assigned that can readily identify relevant documents and communicate such findings with the appropriate teams.

46.     Based upon the foregoing, it is respectfully submitted that approval of the interim compensation sought herein for the Compensation Period is warranted.

47.     To the extent applicable, Duff & Phelps further requests that the Court waive for cause shown any Guideline requirement not met by this Fifth Interim Application.

48.     No previous application for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE Duff & Phelps respectfully requests: (i) allowance and payment of compensation for professional services rendered during the Compensation Period in the amount of $55,009.35; and (ii) that the Court grant Duff & Phelps such other and further relief as is just.


Dated: December 14, 2010


Respectfully submitted,

DUFF & PHELPS, LLC
By:    Allen M. Pfeiffer
        Managing Director
        DUFF & PHELPS, LLC
        300 Headquarters Plaza
        12th Floor
        Morristown, NJ  07960
        (973) 775-8260

**<u>EXHIBIT A</u>**

Declaration of Allen M. Pfeiffer dated December 14, 2010

DUFF & PHELPS LLC
55 East 52nd Street
New York, New York 10055

300 Headquarters Plaza
East Tower, 12th Floor
Morristown, NJ 07960
Allen M. Pfeiffer

Financial Advisors to the Examiner

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
|  | : |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| LEHMAN BROTHERS HOLDINGS INC., et al., | : | Case No. 08-13555 (JMP) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
-------------------------------------------------------------------x

**CERTIFICATION UNDER GUIDELINES FOR FEES AND
DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF
FIFTH INTERIM FEE APPLICATION OF DUFF & PHELPS, LLC
FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES**

**FOR SIXTH INTERIM APPLICATION PERIOD.**

I, Allen M. Pfeiffer, hereby certify that:

1.      I am a managing director of Duff & Phelps, LLC ("Duff & Phelps"), financial

advisors to Anton R. Valukas, the Examiner (the "Examiner") appointed for Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors") in the above-

captioned bankruptcy cases.

2.      I have been designated by Duff & Phelps with responsibility in this case

for ensuring that the Fifth Interim Application of Duff & Phelps for the Sixth Interim

Application Period, dated (the "Fifth Interim Application") for interim payment of

compensation and reimbursement of expenses for the period commencing June 1, 2010 through

July 12, 2010 (the "Compensation Period") complies with the Administrative Order Re:

Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New

York Bankruptcy Cases dated November 25, 2009 (the "Amended SDNY Guidelines"), and the

United States Trustee Guidelines for Reviewing Applications for Compensation and

Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States

Department of Justice dated January 30, 1996 (the "UST Guidelines" and collectively with the

Amended SDNY Guidelines, the "Guidelines"). In respect of Section B.l of the Amended SDNY

Guidelines, I certify that:

a.    I have read the Fifth Interim Application;

b.    To the best of my knowledge, information, and belief formed
      after reasonable inquiry, the fees and disbursements sought in
      the Interim Application fall within the Guidelines;

c.    The fees and disbursements sought are billed at rates in
      accordance with practices customarily employed by Duff &
      Phelps and generally accepted by Duff & Phelps' clients; and

d.    In providing a reimbursable service, Duff & Phelps does not
      make a profit on that service, whether the service is performed by
      Duff & Phelps in-house or through a third party.

3.    In respect of Section B.2 of the Amended Guidelines, I certify that

Duff & Phelps has advised the Examiner on a regular basis of the fees and expenses incurred by

Duff & Phelps and has provided the Examiner with a statement of Duff & Phelps' fees and

disbursements prior to the filing of this Fifth Interim Application.  To the extent necessary,

Duff & Phelps seeks a partial waiver of Section B.2 of the Amended SDNY Guidelines, to the

extent that the Court's Second Amended Order Pursuant to Sections 105(a) and 331 of the

Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly

Compensation and Reimbursement of Expenses of Professionals [Docket No. 3102] modifies

the Amended SDNY Guidelines requirement that "the trustee, and, in chapter 11 cases, the chair

of each official committee and the debtor have all been provided not later than 20 days after the end of each month with a statement of fees and disbursements accrued during such month."

       4.       In respect of Section B.3 of the Local Guidelines, I certify that the Examiner has been provided with a copy of the Fifth Interim Application; and, to the extent necessary, Duff & Phelps seeks a partial waiver of the requirement in Section B.3 of the Amended SDNY Guidelines that "the trustee, and, in a chapter 11 case, the chair of each official committee and the debtor have all been provided with a copy of the relevant fee application at least 10 days before the date set by the court or any applicable rules for filing fee applications."

Dated:  December 14, 2010

_____
Allen M. Pfeiffer

## **EXHIBIT B**

Summary of time and fees recorded from June 1, 2010- July 12, 2010

# DUFF & PHELPS

Summary of Time Recorded From June 1, 2010 - July 12, 2010

For Services Provided by Duff & Phelps

| Matter Number | Matter | Hours | Fees |
|---|---|---|---|
| 4500 | Examiner Issues | 83.6 | $54,647.50 |
| 4600 | Firm's Own Billing/Fee Applications | 10.8 | $6,474.00 |
| | **Total for June 1, 2010 - July 12, 2010** | **94.4** | **$61,121.50** |
| | Less: 10% Voluntary Reduction | | ($6,112.15) |
| | Duff & Phelps' Adjusted Fees | | $55,009.35 |
| | Blended Hourly Rate | | $582.73 |

Exhibit B - Page 1

## **EXHIBIT C**

Schedule of Professionals

# DUFF & PHELPS

Summary of Time Recorded From June 1, 2010 - July 12, 2010

For Services Provided by Duff & Phelps

| Professional | Rate | Hours | Fees | Discounted Fees |
|---|---|---|---|---|
| **Managing Director** | | | | |
| Paul Marcus | $835.00 | 12.4 | $10,354.00 | $9,318.60 |
| Allen Pfeiffer | $835.00 | 2.5 | $2,087.50 | $1,878.75 |
| Michael Vitti | $835.00 | 2.5 | $2,087.50 | $1,878.75 |
| **Managing Director Total** | | **17.4** | **$14,529.00** | **$13,076.10** |
| **Director** | | | | |
| Jaime Dalmeida | $750.00 | 5.0 | $3,750.00 | $3,375.00 |
| TC Fleming | $750.00 | 7.5 | $5,625.00 | $5,062.50 |
| **Managing Director Total** | | **12.5** | **$9,375.00** | **$8,437.50** |
| **Vice President** | | | | |
| Seth Fliegler | $595.00 | 2.3 | $1,368.50 | $1,231.65 |
| William Hrycay | $595.00 | 20.5 | $12,197.50 | $10,977.75 |
| Joe Leiwant | $595.00 | 18.5 | $11,007.50 | $9,906.75 |
| Joseph Thompson | $595.00 | 15.2 | $9,044.00 | $8,139.60 |
| **Vice President Total** | | **56.5** | **$33,617.50** | **$30,255.75** |
| **Senior Associate** | | | | |
| Aditya Darbari | $450.00 | 4.3 | $1,935.00 | $1,741.50 |
| Zain Saeed | $450.00 | 2.4 | $1,080.00 | $972.00 |
| Vivek Thaker | $450.00 | 1.3 | $585.00 | $526.50 |
| **Senior Associate Total** | | **8.0** | **$3,600.00** | **$3,240.00** |
| **Grand Total** | | **94.4** | **$61,121.50** | **$55,009.35** |
| | Less: 50% of Non-Working Travel | | | - |
| | **Duff & Phelps' Adjusted Fees** | | | **$55,009.35** |
| | Blended Hourly Rate for Professionals | | | 582.73 |

Exhibit C - Page 1

## **EXHIBIT D**

Summary by Project Matter

DUFF&PHELPS

Summary of Time Recorded From June 1, 2010 - July 12, 2010
For Services Provided to the Lehman Examiner

| Matter | Hours | Fees |
|---|---|---|
| **Case Administration** | | |
| A. Pfeiffer | 0.2 | $167.00 |
| J. Leiwant | 10.6 | $6,307.00 |
| **Case Administration Total** | **10.8** | **$6,474.00** |
| **Examiner Issues** | | |
| A. Darbari | 4.3 | $1,935.00 |
| A. Pfeiffer | 2.3 | $1,920.50 |
| J. Dalmeida | 5.0 | $3,750.00 |
| J. Leiwant | 7.9 | $4,700.50 |
| J. Thompson | 15.2 | $9,044.00 |
| M. Vitti | 2.5 | $2,087.50 |
| P. Marcus | 12.4 | $10,354.00 |
| S. Fliegler | 2.3 | $1,368.50 |
| TC. Fleming | 7.5 | $5,625.00 |
| V. Thaker | 1.3 | $585.00 |
| W. Hrycay | 20.5 | $12,197.50 |
| Z. Saeed | 2.4 | $1,080.00 |
| **Examiner Issues Total** | **83.6** | **$54,647.50** |
| **Total For All Matters** | **94.4** | **$61,121.50** |

## __EXHIBIT E__

Detailed records of the time spent by all professionals between June 1, 2010- July 12, 2010  in connection with their responsibilities to the Examiner

DUFF&PHELPS

Matter #4500: Examiner Issues

| Date | Professional | Description | Time | Fee |
|------|-------------|-------------|------|-----|
| June 1 | J. Dalmeida | Analyzed RWI/RBMS report for items which are relevant to Alvarez. | 1.8 | $1,350.00 |
| June 1 | J. Dalmeida | Attended call with J. Stiklorius, P. Ramesh re: RWL/RMBS report. | 0.7 | $525.00 |
| June 1 | A. Darbari | Analyzed the supporting data for the Commercial Real Estate section of the Report in preparaton for call with Alvarez & Marsal regarding A&M questions. | 3.2 | $1,440.00 |
| June 1 | TC. Fleming | Attended an external call with J. Thompson and various personnel from Alvarez & Marsal on the topic of the Lehman liquidity pool. | 0.4 | $300.00 |
| June 1 | TC. Fleming | Attended an internal call with J. Thompson debriefing on the A&M call. | 0.2 | $150.00 |
| June 1 | TC. Fleming | Analyzed Examiner's report for potential data supplied by Alvarez & Marsal. | 2.1 | $1,575.00 |
| June 1 | P. Marcus | Analyzed documents and report re: Residential Whole Loans and RMBS to determine information which would be responsive to Alvarez requests. | 1.4 | $1,169.00 |
| June 1 | P. Marcus | Attended call with A&M re: Residential Whole Loans and RMBS. | 0.7 | $584.50 |
| June 1 | J. Thompson | Attended an external call with T. Fleming and various personnel from Alvarez & Marsal on the topic of the Lehman liquidity pool. | 0.4 | $238.00 |
| June 1 | J. Thompson | Attended an internal call with T. Fleming to determine what follow-up work needs to be accomplished following the A&M call. | 0.2 | $119.00 |
| June 1 | J. Thompson | Analyzed Examiner's report for potential data that was supplied by Alvarez & Marsal. | 2.8 | $1,666.00 |
| June 2 | J. Dalmeida | Attended call with M. Vitti, Z. Saeed debrief on Archstone valuation. | 0.1 | $75.00 |
| June 2 | J. Dalmeida | Attended call with M. Vitti, Z. Saeed, J. Stiklorius, re: Archstone valuation. | 1.3 | $975.00 |
| June 2 | TC. Fleming | Attended an internal call with J. Thompson and J. Leiwant debriefing on the A&M call. | 0.4 | $300.00 |
| June 2 | S. Fliegler | Attended call with J. Leiwant, P. Marcus and W. Hyrcay re: capital adequacy and liquidity analyses. | 0.5 | $297.50 |
| June 2 | W. Hrycay | Attended phone call with J. Leiwant, S. Fliegler and others,regarding capital adequacy analyses related to Alvarez. | 0.5 | $297.50 |
| June 2 | W. Hrycay | Met with P. Marcus regarding capital adequacy analyses for Alvarez. | 0.1 | $59.50 |
| June 2 | W. Hrycay | Created document for Alvarez which summarizes key liquidity files. | 3.2 | $1,904.00 |
| June 2 | W. Hrycay | Analyzed documents related to liquidity analyses for production to Alvarez. | 1.9 | $1,130.50 |
| June 2 | J. Leiwant | Attended call with P. Marcus et al re: capital adequacy analyses. | 0.5 | $297.50 |
| June 2 | J. Leiwant | Attended call with S. Fliegler, P. Marcus and W. Hyrcay re: capital adequacy and liquidity analyses. | 0.5 | $297.50 |
| June 2 | P. Marcus | Attended call with J. Leiwant et al re: capital adequacy analyses. | 0.5 | $417.50 |
| June 2 | A. Pfeiffer | Attended partial call with J. Stiklorius, A&M, re: Archstone. | 0.7 | $584.50 |
| June 2 | Z. Saeed | Attended call with M. Vitti, J. D'Almeida and A&M personal regarding the Archstone investment. | 1.3 | $585.00 |
| June 2 | J. Thompson | Attended an internal call with T. Fleming and J. Leiwant follow up work required following the A&M call. | 0.4 | $238.00 |

DUFF&PHELPS

Matter #4500: Examiner Issues

| Date | Professional | Description | Time | Fee |
|------|-------------|-------------|------|-----|
| June 2 | M. Vitti | Attended call with J. D'Almeida, Z. Saeed debrief on Archstone valuation. | 0.1 | $83.50 |
| June 2 | M. Vitti | Attended call with J. D'Almeida, Z. Saeed, J. Stiklorius, re: Archstone valuation. | 1.3 | $1,085.50 |
| June 3 | J. Dalmeida | Attended call with M. Vitti, Z. Saeed, J. Stiklorius, re: PTG and Commercial valuation. | 1.1 | $825.00 |
| June 3 | A. Darbari | Attended a call with M. Vitti, P. Marcus, and A&M regarding the Commercial Real Estate analyses. | 1.1 | $495.00 |
| June 3 | P. Marcus | Analyzed documents and report re: commercial real estate book assets to determine information which would be responsive to Alvarez requests. | 1.8 | $1,503.00 |
| June 3 | P. Marcus | Attended call with A&M re: commercial real estate book assets and PTG portfolio. | 1.1 | $918.50 |
| June 3 | A. Pfeiffer | Attended partial call on PTG with J. Stiklorius of Alvarez. | 0.6 | $501.00 |
| June 3 | Z. Saeed | Attended call with M. Vitti, J. D'Almeida and A&M personal regarding Commercial real estate and PTG investments. | 1.1 | $495.00 |
| June 3 | V. Thaker | Attended conference call with M. Vitti and Alvarez & Marsal representatives to discuss Commercial Real Estate and PTG valuation section. | 1.3 | $585.00 |
| June 3 | M. Vitti | Attended call with J. Almeida, Z. Saeed, J. Stiklorius, re: PTG and Commercial valuation. | 1.1 | $918.50 |
| June 7 | TC. Fleming | Analyzed documents related to the Lehman liquidity pool per A&M request. | 1.1 | $825.00 |
| June 7 | W. Hrycay | Edited document for Alvarez which summarizes key liquidity files. | 0.6 | $357.00 |
| June 7 | W. Hrycay | Drafted email to M. Hankin regarding liquidity files for Alvarez. | 0.4 | $238.00 |
| June 7 | P. Marcus | Analyzed documents and report re: capital adequacy to determine information which would be responsive to Alvarez requests. | 0.8 | $668.00 |
| June 7 | J. Thompson | Analyzed documents related to the Lehman liquidity pool per A&M request. | 0.9 | $535.50 |
| June 8 | TC. Fleming | Analyzed documents related to the Lehman liquidity pool per A&M request. | 2.2 | $1,650.00 |
| June 8 | S. Fliegler | Attended call with P. Marcus and W. Hrycay re: files and data to be provided to Alvarez & Marsal regarding capital adequacy and liquidity. | 0.3 | $178.50 |
| June 8 | W. Hrycay | Attended phone call with J. Leiwant, P. Marcus and M. Hankin regarding liquidity documents for Alvarez. | 0.2 | $119.00 |
| June 8 | W. Hrycay | Attended phone call with J. Leiwant regarding documents for Alvarez. | 0.2 | $119.00 |
| June 8 | W. Hrycay | Edited summary detail document related to the production of liquidity documents for Alvarez. | 1.5 | $892.50 |
| June 8 | W. Hrycay | Analyzed documents in order to determine the most appropriate files to send in response to inquiries from Alvarez. | 3.9 | $2,320.50 |
| June 8 | J. Leiwant | Attended call with M. Hankin, P. Marcus and W. Hrycay re: liquidity documents and data that we may send to Alvarez (0.2); Attended phone call with W. Hrycay, re: the same (0.2). | 0.4 | $238.00 |
| June 8 | J. Leiwant | Attended phone call with P. Marcus, re: liquidity documents for Alvarez. | 0.2 | $119.00 |
| June 8 | J. Leiwant | Reviewed liquidity documents for Alvarez. | 0.2 | $119.00 |
| June 8 | J. Leiwant | Attended phone call with K. Sullivan and J. Sciametta from A&M, re: LBHI solvency analysis. | 0.8 | $476.00 |

DUFF&PHELPS

Matter #4500: Examiner Issues

| Date | Professional | Description | Time | Fee |
|------|-------------|-------------|------|-----|
| June 8 | P. Marcus | Attended call with J. Leiwant and W. Hrycay re: capital adequacy analyses. | 0.2 | $167.00 |
| June 8 | P. Marcus | Analyzed spreadsheets and analysis re: capital adequacy to determine information which would be responsive to Alvarez requests. | 1.6 | $1,336.00 |
| June 8 | P. Marcus | Attended call with S. Fliegler and W. Hrycay re: capital adequacy. | 0.3 | $250.50 |
| June 8 | P. Marcus | Attended call with M. Hankin re: capital adequacy analysis. | 0.2 | $167.00 |
| June 8 | J. Thompson | Analyzed documents related to the Lehman liquidity pool per A&M request. | 2.4 | $1,428.00 |
| June 9 | W. Hrycay | Analyzed documents in order to determine the most appropriate files to send in response to inquiries from Alvarez. | 1.3 | $773.50 |
| June 9 | P. Marcus | Analyzed spreadsheets, analysis and examiner report re: capital adequacy to determine information which would be responsive to Alvarez requests. | 2.1 | $1,753.50 |
| June 10 | TC. Fleming | Analyzed documents related to the Lehman liquidity pool per A&M request. | 1.1 | $825.00 |
| June 10 | W. Hrycay | Attended meeting with P. Marcus, to review document production and summary document. | 0.3 | $178.50 |
| June 10 | W. Hrycay | Prepared for call with Alvarez regarding liquidity analyses and files. | 1.8 | $1,071.00 |
| June 10 | W. Hrycay | Attended phone call with Alvarez regarding liquidity analyses and files. | 1.4 | $833.00 |
| June 10 | W. Hrycay | Anlayzed and sent additional liquidity documents to Alvarez in response to issues raised on phone call. | 2.6 | $1,547.00 |
| June 10 | J. Leiwant | Responded to Alvarez requests by sending documents discussed on calls (0.2); drafted emails to J. Thompson and TC Fleming re: liquidity pool analyses (0.1). | 0.3 | $178.50 |
| June 10 | J. Leiwant | Attended phone call with J. Thompson, re: documents related to Liquidity Pool analysis. | 0.1 | $59.50 |
| June 10 | J. Leiwant | Attended phone call with P. Marcus, re: open items arising out of call with Alvarez. | 0.3 | $178.50 |
| June 10 | J. Leiwant | Attended phone call with K. Sullivan, J. Sciametta and others from Alvarez and P. Marcus and W. Hrycay, re: liquidity analyses performed for the Examiner. | 1.4 | $833.00 |
| June 10 | P. Marcus | Attended meeting with W. Hrycay re: review of summary document and files to send in response to A&M capital adequacy call. | 0.3 | $250.50 |
| June 10 | P. Marcus | Attended call with A&M et al re:capital adequacy. | 1.4 | $1,169.00 |
| June 10 | J. Thompson | Analyzed documents related to the Lehman liquidity pool per A&M request. | 1.9 | $1,130.50 |
| June 10 | J. Thompson | Created a subset of files which were responsive to Alvarez & Marsal requests. | 1.0 | $595.00 |
| June 11 | W. Hrycay | Anlayzed and sent additional liquidity documents to Alvarez in response to issues raised on 6/10 phone call. | 0.6 | $357.00 |
| June 11 | J. Thompson | Analyzed documents related to the Lehman liquidity pool per A&M request. | 2.1 | $1,249.50 |
| June 14 | J. Leiwant | Attended phone call with J. Thompson, re: documents related to Liquidity Pool analysis. | 0.3 | $178.50 |
| June 14 | J. Thompson | Attended an internal call with J. Leiwant discussing A&M requests. | 0.3 | $178.50 |
| June 15 | J. Leiwant | Attended meeting with A. Pfeiffer re: status of work with Alvarez. | 0.3 | $178.50 |

DUFF & PHELPS

Matter #4500: Examiner Issues

| Date | Professional | Description | Time | Fee |
|---|---|---|---|---|
| June 15 | J. Leiwant | Attended phone call with J. Pimbley re: liquidity pool analyses (0.1); attended phone call with J. Thompson and J. Pimbley, re: the same (0.2). | 0.3 | $178.50 |
| June 15 | J. Leiwant | Attended phone call with J. Sciametta, re: adequate capital analyses (0.1); attended phone call with S. Fliegler re: J. Sciametta questions (0.1); attended phone call with A. Taddei re: J. Sciametta questions (0.2). | 0.4 | $238.00 |
| June 15 | J. Leiwant | Attended two phone calls with J. Thompson re: liquidity pool documents (0.2 and 0.4). | 0.6 | $357.00 |
| June 15 | A. Pfeiffer | Attended meeting with J. Leiwant re: status of work with Alvarez. | 0.3 | $250.50 |
| June 15 | J. Thompson | Attended an internal call with J. Leiwant discussing A&M request. | 0.4 | $238.00 |
| June 15 | J. Thompson | Attended an internal call with J. Leiwant and J. Pimbley discussing A&M request. | 0.2 | $119.00 |
| June 15 | J. Thompson | Created an additional subset of files which were responsive to Alvarez & Marsal requests. | 2.2 | $1,309.00 |
| June 16 | S. Fliegler | Analyzed documents and models regarding regulatory risk-weighted assets to determine information which would be responsive to Alvarez requests. | 1.5 | $892.50 |
| June 16 | J. Leiwant | Attended phone call with J. Sciametta, re: open requests from Alvarez re: liquidity pool and capital adequacy analyses. | 0.2 | $119.00 |
| June 16 | J. Leiwant | Attended phone call with A. Taddei, re: risk weighted assets and risk adjusted metrics. | 0.3 | $178.50 |
| June 16 | A. Pfeiffer | Reviewed Lehman liquidity pool information. | 0.7 | $584.50 |
| June 17 | J. Leiwant | Attended phone call with J. Sciametta re: market value test and updates on open questions and issues. | 0.3 | $178.50 |
| June 22 | J. Leiwant | Attended phone call with K. Sullivan and J. Sciametta from Alvarez, re: LBHI solvency. | 0.5 | $297.50 |
| **Total for Matter #4500: Examiner Issues** | | | 83.6 | $54,647.50 |
| | | Less 10% Discount | | ($5,464.75) |
| | | Discounted Fees for: Examiner Issues | | $49,182.75 |

DUFF&PHELPS

Matter #4600: Firm's Own Billing/Fee Applications

| Date | Professional | Description | Time | Fee |
|------|-------------|-------------|------|-----|
| June 28 | J. Leiwant | Prepared monthly fee application for May | 0.6 | $357.00 |
| June 29 | J. Leiwant | Prepared monthly fee application for May | 0.3 | $178.50 |
| June 29 | A. Pfeiffer | Reviewed Lehman invoice for May. | 0.2 | $167.00 |
| July 1 | J. Leiwant | Prepared responses to fee committee (9,5) and sent to Feinberg Rozen (0.2). | 9.7 | $5,771.50 |
| Total for Matter #4600: Firm's Own Billing/Fee Applications | | | 10.8 | $6,474.00 |
| | | Less 10% Discount | | ($647.40) |
| | | Discounted Fees for: Firm's Own Billing/Fee Applications | | $5,826.60 |