QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
In re:                                                  :    Chapter 11 Case
                                                        :
LEHMAN BROTHERS HOLDINGS INC.,                          :    No. 08-13555 (JMP)
<u>et al.</u>                                           :
                                                        :    Jointly Administered
                              Debtors.                  :
------------------------------------------------------- x

## <u>SUMMARY SHEET</u>

| | |
|---|---|
| **Name and Role of Applicant** | Quinn Emanuel Urquhart & Sullivan, LLP |
| **Authorized to Provide professional services to:** | The Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al</u>. |
| **Date of Retention** | October 21, 2008, (*Nunc pro tunc* to September 15, 2008) |
| **Compensation Period** | June 1, 2010 through September 30, 2010 |
| **Fees Incurred for Counsel** | $3,187,890.63 |
| **Expenses Incurred** | $259,395.28 |
| **Prior Interim Applications Filed** | This is the Sixth Interim Fee Application Filed by Quinn Emanuel Urquhart & Sullivan, LLP |
| **Blended Hourly Rate for Fees Incurred during Compensation Period** | $515.42 |
| **Blended Hourly Rate for Fees Incurred during Compensation Period (Attorneys Only)** | $532.97 |

**Schedule 1**[1]

**Hours, Rate and Fees for Services Rendered during the Sixth Interim Fee Period.**

| TIME KEEPER | INTIALS | POSITION | RATE | HOURS TOTALS | FEES TOTAL |
|---|---|---|---|---|---|
| John B. Quinn | JBQ | Partner | 950 | 30.40 | 28,880.00 |
| John B. Quinn | JBQ | Partner | 995 | 2.30 | 2,288.50 |
| Daniel P. Cunningham | DPC | Partner | 950 | 39.50 | 37,525.00 |
| Daniel P. Cunningham | DPC | Partner | 995 | 22.60 | 22,487.00 |
| Kathleen Sullivan | KMS | Partner | 950 | 5.80 | 5,510.00 |
| Faith Gay | FG | Partner | 950 | 9.60 | 9,120.00 |
| Andrew J. Rossman | AJR | Partner | 820 | 98.50 | 80,770.00 |
| Andrew J. Rossman | AJR | Partner | 885 | 9.70 | 8,584.50 |
| Susheel Kirpalani | SK2 | Partner | 820 | 51.00 | 41,820.00 |
| Kevin S. Reed | KSR | Partner | 775 | 1.40 | 1,085.00 |
| James C. Tecce | JCT | Partner | 775 | 566.40 | 438,960.00 |
| James C. Tecce | JCT | Partner | 850 | 197.20 | 167,620.00 |
| Eric D. Winston | EDW | Partner | 740 | 113.90 | 84,286.00 |
| Eric D. Winston | EDW | Partner | 825 | 39.60 | 32,670.00 |
| Erica Taggart | ET | Partner | 660 | 309.70 | 204,402.00 |
| Erica Taggart | ET | Partner | 750 | 151.70 | 113,775.00 |
| Scott C. Shelley | SCS | Counsel | 650 | 71.90 | 46,735.00 |
| Scott C. Shelley | SCS | Counsel | 700 | 0.50 | 350.00 |
| Eric M. Kay | EMK | Counsel | 650 | 397.00 | 258,050.00 |
| Eric M. Kay | EMK | Counsel | 700 | 160.40 | 112,280.00 |
| Matthew S. Warren | MSW | Associate | 590 | 31.90 | 18,821.00 |
| Kristin Madigan | KJM | Associate | 595 | 106.40 | 63,308.00 |
| Christopher D. Kercher | CDK | Associate | 430 | 153.10 | 65,833.00 |
| Christopher D. Kercher | CDK | Associate | 595 | 31.90 | 18,980.50 |
| Robert K. Dakis | RKD | Associate | 430 | 520.10 | 223,643.00 |
| Robert K. Dakis | RKD | Associate | 595 | 203.60 | 121,142.00 |
| Jeanine Zalduendo | JMZ | Associate | 410 | 9.00 | 3,690.00 |
| Deborah Shin | DXS | Attorney | 410 | 1.50 | 615.00 |
| Tyler G. Whitmer | TGW | Associate | 400 | 445.80 | 178,320.00 |
| Tyler G. Whitmer | TGW | Associate | 535 | 198.20 | 106,037.00 |
| Marc A. Palladino | MAP | Associate | 400 | 52.90 | 21,160.00 |
| Thomas O'Brien | TOB | Associate | 400 | 49.00 | 19,600.00 |

---

[1]    The titles and hourly rates listed above are reflective of the current status, and may have changed during the interim period. Each calendar year, it is Quinn Emanuel's policy to raise the hourly rates for its attorneys. These rate increases are made in respect of all clients (bankruptcy and non-bankruptcy). Quinn Emanuel typically raises its rates in September, which coincides with the start date for its incoming class of junior lawyers. The September rate increase is Quinn Emanuel's only yearly increase (i.e., absent special circumstances Quinn Emanuel does not make any other rate changes until September of the following year).

| TIME KEEPER | INTIALS | POSITION | RATE | HOURS TOTALS | FEES TOTAL |
|---|---|---|---|---|---|
| Katherine A. Macfarlan | KM1 | Associate | 400 | 75.30 | 30,120.00 |
| Katherine A. Macfarlan | KM1 | Associate | 535 | 27.20 | 14,552.00 |
| Matthew R. Scheck | MS3 | Associate | 390 | 12.60 | 4,914.00 |
| Matthew R. Scheck | MS3 | Associate | 495 | 86.60 | 42,867.00 |
| Katherine A. Scherling | KS | Associate | 460 | 8.40 | 3,864.00 |
| Olga M. Urbieta | OMU | Associate | 380 | 496.50 | 188,670.00 |
| Olga M. Urbieta | OMU | Associate | 460 | 150.40 | 69,184.00 |
| Jeffrey L. Benner | JLB | Associate | 370 | 7.40 | 2,738.00 |
| Lance Yang | LYX | Associate | 380 | 0.90 | 342.00 |
| Justin Brownstone | JBX | Associate | 370 | 68.30 | 25,271.00 |
| Justin Brownstone | JBX | Associate | 430 | 40.90 | 17,587.00 |
| Cash Rowden | CR | Attorney | 320 | 136.80 | 43,776.00 |
| Stephen Chiu | SC1 | Attorney | 320 | 2.60 | 832.00 |
| Heather Nolan | HN | Attorney | 320 | 75.40 | 24,128.00 |
| John Volpe | JV1 | Attorney | 320 | 0.70 | 224.00 |
| Christopher Clark | CC4 | Attorney | 320 | 519.80 | 166,336.00 |
| SoYun Roe | SR1 | Attorney | 320 | 406.80 | 130,176.00 |
| Christopher Kulawik | CKX | Law Clerk | 295 | 50.10 | 14,779.50 |
| Ben Odell | BOX | Law Clerk | 320 | 150.20 | 48,064.00 |
| Kate Lydon | KLX | Law Clerk | 320 | 0.90 | 288.00 |
| Serafina Shishkova | SSX | Law Clerk | 320 | 7.70 | 2,464.00 |
| Roy Nelson | RN | Managing Clerk | 280 | 7.20 | 2,016.00 |
| Mario Gutierrez | MG | Paralegal | 250 | 35.80 | 8,950.00 |
| Megan Kerr | MK2 | Paralegal | 250 | 1.30 | 325.00 |
| Martine Lacroix | ML4 | Paralegal | 250 | 28.80 | 7,200.00 |
| Joan Collopy | JC | Paralegal | 250 | 24.60 | 6,150.00 |
| Joan Collopy | JC | Paralegal | 270 | 133.20 | 35,964.00 |
| Jonathan Land | JL | Lit Support | 365 | 0.60 | 219.00 |
| Jonathan Espinosa | JE | Lit Support | 250 | 0.60 | 150.00 |
| Danny Rose | DR | Lit Support | 150 | 0.80 | 120.00 |
| Raul Vasquez | RV2 | Lit Support | 150 | 6.30 | 945.00 |
| Patricia Chew | PC4 | Lit Support | 150 | 1.10 | 165.00 |
| Linda Jovel | LJ | Lit Support | 150 | 0.60 | 90.00 |
| Jacob Cisneros | JC2 | Lit Support | 150 | 0.30 | 45.00 |
| Hilary Quatinetz | HQ | Lit Support | 150 | 11.20 | 1,680.00 |
| Tim Chatham | TC1 | Lit Support | 150 | 1.80 | 270.00 |

| | | | | | |
|---|---|---|---|---|---|
| **TOTAL** | | | | **6662.20** | **3,433,813.00** |
| (1% cap for 4600 Firm's Own Billing/Fee Applications) | | | | | **($245,922.37)** |
| **GRAND TOTAL** | | | | | **$3,187,890.63** |

**Schedule 2**

**Hours and Fees for the Sixth Interim Compensation Period As Rendered By Category**

| DESCRIPTION | TOTALS |
|---|---|
| 100 General Case Administration | 8,800.00 |
| 400 Hearings and Court Communications | 217,215.50 |
| 500 Non-Working Travel | 41,495.50 |
| 800 Unsecured Creditors Issues/Meetings/Communication | 83,991.50 |
| 2500 Derivatives/SWAP Agreement Issues | 248,256.00 |
| 3700 Non-Derivative Claims Reconciliation | 25,010.00 |
| 3900 Non-Derivative Adversary Proceedings | 2,522,343.00 |
| 4600 Firm's Own Billing/Fee Applications | 280,260.50 |
| 4700 Firm's Own Retention Issues | 6,208.50 |
| 4800 Third Party Retention/Fee Application/Other | 232.5 |
| **TOTAL:** | **$3,433,813.00** |
| (1% cap for 4600 Firm's Own Billing/Fee Applications) | **($245,922.37)** |
| **GRAND TOTAL** | **$3,187,890.63** |

**Schedule 3**

| DESCRIPTION | TOTALS |
|---|---|
| Air travel | 14,394.49 |
| Color printing | 574.50 |
| Court Fees | 25.00 |
| Deposition preparation meal | 229.03 |
| Deposition and trial transcripts (58)[2] | 123,764.39 |
| Digital Prints | 6,515.21 |
| Document Reproduction (e.g., scanning, printing and photocopying) | 19,015.80 |
| Equipment/software | 3,165.00 |
| Express mail | 828.88 |
| Hosting per GB | 12,440.00 |
| Hotel | 3,534.87 |
| Iconect Licensing Fee | 2,137.74 |
| Late  Night Working Meals | 168.78 |
| Local Meals | 55.11 |
| Local travel | 1,884.99 |
| Meals during travel | 163.97 |
| Media Create/Dup (per unit) | 1,271.50 |
| Messenger | 1,095.73 |
| Miscellaneous (court connection fees, supplies needed for hearing, library fees) | 2,671.74 |
| OCR | 0.45 |
| Off-site document services (e.g., binding, hole punching, supplies) | 10,565.21 |
| Online Research | 35,601.54 |
| Other Lit Support Services (outside litigation technician services) | 3,187.04 |
| Outside Document Reproduction | 53.80 |
| Outside velobind | 33.00 |
| Parking | 818.12 |
| Postage | 35.50 |
| Professional services (e.g., Pacer, Courtroom set-up) | 9,021.69 |
| Scanning | 175.20 |
| Telecopier        0.24 / pg | 28.80 |

---

[2] Quinn Emanuel is seeking reimbursement for costs relating to 58 deposition and trial transcripts.  The vast majority of these transcripts relate to the Barclays litigation.  Quinn Emanuel, along with other counsel in the Barclays litigation, often received transcripts on expedited time frames.  Given the scope and complexity of the Barclays litigation, these transcripts were necessary to Quinn Emanuel's role representing the Committee in the Barclays litigation.

| DESCRIPTION | TOTALS |
|---|---|
| Telephone | **1,540.00** |
| Telephone | **43.20** |
| Video deposition | **4,355.00** |
| **TOTALS** | **259,395.28** |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Susheel Kirpalani (SK8926)
James C. Tecce (JT5910)
Robert K. Dakis (RD0626)

*Special Counsel for the Official*
*Committee Of Unsecured Creditors of*
*Lehman Brothers Holdings Inc., et al.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
In re:                                           :     Chapter 11 Case
                                                 :
LEHMAN BROTHERS HOLDINGS INC.,                   :     No. 08-13555 (JMP)
<u>et al.</u>                                    :
                                                 :     Jointly Administered
                              Debtors.           :
---------------------------------------------------------- x

**SIXTH INTERIM APPLICATION OF QUINN EMANUEL URQUHART & SULLIVAN,
LLP FOR ALLOWANCE OF INTERIM COMPENSATION FOR PROFESSIONAL
SERVICES RENDERED AND EXPENSES INCURRED DURING THE PERIOD
<u>JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010</u>**

Quinn Emanuel Urquhart & Sullivan, LLP ("<u>Quinn Emanuel</u>"), Special Counsel to

the Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., <u>et al.</u> (the

"<u>Committee</u>"), by this application (the "<u>Application</u>"), respectfully moves this Court, pursuant to

sections 330 and 331 of title 11 of the United States Code, §§ 101-1532 (the "<u>Bankruptcy Code</u>"),

and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and the

Amended Administrative Order, pursuant to sections 105(a) and 331 of the Bankruptcy Code

establishing procedures for interim compensation and reimbursement of expenses of

professionals, dated June 25, 2009, (as amended, the "<u>Compensation Order</u>"), for allowance of

interim compensation for professional services rendered in the amount of $3,187,890.63 and

reimbursement of actual, reasonable, and necessary out-of-pocket expenses incurred in the

amount of $259,395.28, during the period beginning June 1, 2010 through and including

September 30, 2010 (the "Fee Period"), and, in support thereof, respectfully represents as follows:

## I.    PRELIMINARY STATEMENT

1.        As special counsel to the Creditors' Committee, Quinn Emanuel is

responsible primarily for investigating and prosecuting claims and causes of action against major

financial institutions that were parties to myriad complex transactions with Lehman, such as

Barclays Capital, Inc., JPMorgan Chase Bank, N.A., and Bank of America, N.A.  The resources

devoted by Quinn Emanuel to these tasks enabled the Committee to substantially advance the

rights of all unsecured creditors.  In one of the most public examples, Quinn Emanuel represented

the Committee in the estates' litigation with Bank of America ("BofA") over BofA's improper

setoff of over $500 million of LBHI's cash.  On November 16, 2010, the Bankruptcy Court issued

a ruling in the estates' litigation with Bank of America granting the Debtors' and the Committee's

motions for summary judgment and awarding the estates $500 million plus interest.  Even in the

context of the largest and most complicated chapter 11 case ever filed, the ruling in the BofA

proceeding materially benefits unsecured creditors.

2.        No less significant than the successful litigation with BofA, Quinn

Emanuel is also responsible for the Committee's representation in the Barclays Rule 60(b)

litigation.  In September 2008, the estates sold substantially all their assets relating to the broker-

dealer business to Barclays Capital, Inc. ("Barclays").  After the sale, the Committee became

involved in extensive discovery from Barclays concerning the transaction which resulted in each

of the Committee, LBHI and the SIPA Trustee (together, the "Movants") filing detailed motions

pursuant to Rule 60(b) of the Federal Rules of Civil Procedure seeking relief from the Sale Order

(the "Rule 60(b) Motions").

        3.        During this Fee Period, Quinn Emanuel attorneys dedicated

substantial resources to conducting the nine-month bench trial on the Committee's Rule 60(b)

motion, which is the most complex and extensive evidentiary hearing conducted in the Lehman

cases to date.  The trial started on April 9, 2010 and continued (non-consecutively) until October

29, 2010.  Indeed, during the Fee Period, the Court conducted 18 days of evidentiary hearings,

consisting of testimony from 24 witnesses.  The Court also took briefing and heard argument on

numerous evidentiary motions.  In addition to the record established at trial, the parties together

introduced more than 2,000 exhibits and hundreds of pages of designated deposition testimony.

Among the many vital tasks performed at trial, Quinn Emanuel attorneys on the Barclays

litigation team examined witnesses, formulated trial strategy, performed research, and managed

the introduction of exhibits and deposition testimony into evidence.  The resources Quinn

Emanuel devoted were necessary to the estates' attempt to preserve their claims to what the

estates argue is a nearly $13 billion windfall to Barclays.

        4.        In addition, Quinn Emanuel was extensively involved in prosecuting

the litigation against JPMorgan Chase Bank, N.A. ("JPMC").  The Committee is a co-plaintiff in

this proceeding.  During this period the parties both initiated fact discovery and dispositive

motion practice.  Quinn Emanuel (i) drafted and served interrogatories on JPMC and (iii) served

eighteen subpoenas on third parties, banks, individuals and government agencies.  Additionally,

during this Fee Period, Plaintiffs (defined below) prepared and filed an amended complaint on

September 15, 2010.  In response to JPMC's motion to dismiss, filed on August 25, 2010, Quinn

Emanuel attorneys spent considerable time performing legal and factual research and formulating

Plaintiffs' response which is due on December 15, 2010.  Moreover, the Committee continues to

work with the estates in coordinating the review of documents produced by the eighty three

parties that have received document subpoenas.

5.     Throughout this Fee Period, Quinn Emanuel attorneys spent a

significant amount of time investigating claims, drafting hundreds of pages of briefs and

memoranda, and participating in numerous derivatives-related meetings and mediations.  As a

direct result of the work of Quinn Emanuel and the Committee and estate's other professionals,

the estates have been awarded $500 million in judgments and have worked to preserve $ billions

more.

6.     Lastly, on matters where Quinn Emanuel represents the Committee

and where the estates are also a party, Quinn Emanuel makes every effort to coordinate its efforts

with estate counsel and avoid unnecessary duplication.

## II.    <u>JURISDICTION AND VENUE</u>

7.     This Court has jurisdiction to hear and determine the Application

pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§

1408 and 1409.  The statutory predicates for the relief sought herein are sections 330 and 331 of

the Bankruptcy Code.  Pursuant to the Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and

amended April 21, 1995 (the "<u>Local Guidelines</u>"), a certification regarding compliance with the

Local Guidelines is attached hereto as Exhibit A.

### III.    GENERAL BACKGROUND

8.          On September 15, 2008, and periodically thereafter (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI"), and certain of its subsidiaries and affiliated entities (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").  Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtors are operating their business and managing their properties as debtors in possession.

9.          On September 17, 2008, the United States Trustee appointed the Committee pursuant to section 1102 of the Bankruptcy Code.

10.          On January 16, 2009, the Court entered an Order directing the appointment of an Examiner pursuant to 11 U.S.C. §§ 1104(c)(1) and (c)(2).  By order dated July 13, 2010, the Examiner was discharged of its duties to investigate, *inter alia*, various transfers and transactions involving the Debtors and their affiliates as well as the events immediately preceding the commencement of the Chapter 11 Cases.

### IV.    RETENTION OF QUINN EMANUEL

11.          On October 21, 2008, the Committee filed its Application Under 11 U.S.C. §§ 328 and 1103 and Fed. R. Bankr. P. 2014 and 5002, for Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel, Nunc Pro Tunc to September 17, 2008 (the "Retention Application").

12.          On November 21, 2008, this Court entered the Final Order Authorizing Retention and Employment of Quinn Emanuel Urquhart Oliver & Hedges, LLP, as Special Counsel to the Official Committee of Unsecured Creditors of Lehman Brothers Holdings

Inc. et al., Nunc Pro Tunc to September 17, 2008 (the "Retention Order"). A true and correct

copy of the Retention Order is attached hereto as Exhibit B.

13.     On October 11, 2008, the Debtors filed a Motion Pursuant to Sections

105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) for Authorization to

Establish Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals (the "Compensation Motion"). The Compensation Motion was granted pursuant to

the Compensation Order.

14.     The Compensation Order established a procedure for, inter alia, the

payment of interim fees and expenses to professionals employed by the Committee on a monthly

basis. Quinn Emanuel, on a monthly basis, has been preparing and serving monthly fee

statements in accordance with the Compensation Order.[1] A copy of the Compensation Order is

attached as Exhibit C.

### V.    MONTHLY FEE STATEMENTS AND QUARTERLY APPLICATIONS

15.     Quinn Emanuel submitted its first quarterly fee application on April

10, 2009 requesting $2,129,413.50 in fees and $41,113.30 in expenses for the period commencing

September 15, 2008 through January 31, 2009.

16.     Quinn Emanuel submitted its second quarterly fee application on

August 14, 2009 requesting $820,579.50 in fees and $28,104.76 in expenses for the period

commencing February 1, 2009 through May 31, 2009.

---

[1]     Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

17.        Quinn Emanuel submitted its third quarterly fee application on December 14, 2009 requesting $2,248,453.00 in fees and $144,241.20 in expenses for the period commencing June 1, 2009 through September 30, 2009.

18.        Quinn Emanuel submitted its fourth quarterly fee application on April 16, 2010 requesting $2,829,628.18 in fees and $191,748.74 in expenses for the period commencing October 1, 2009 through January 31, 2010.

19.        Quinn Emanuel submitted its fifth quarterly fee application on August 16, 2010 requesting $3,480,537.09 in fees and $281,095.21 in expenses for the period commencing February 1, 2010 through May 31, 2010.  A chart summarizing the amounts requested and approved in Quinn Emanuel's prior fee applications is attached hereto as Exhibit G.

20.        This Application is Quinn Emanuel's sixth quarterly fee application and seeks payment of interim compensation and reimbursement of expenses for services rendered to the Committee in amounts that have been invoiced to the Debtors for the period from June 1, 2010 through September 30, 2010.

21.        This Application requests that the Court (a) approve interim fees in the total amount of $3,187,890.63 (including the 20% of such fees "held back"), and reasonable out-of-pocket expenses in the amount of $259,395.28 incurred by Quinn Emanuel for services rendered in the Chapter 11 Cases during the Fee Period and (b) award and order to be paid to Quinn Emanuel the balance of any such fees, costs and expenses that remain unpaid, after deducting interim payments already received by Quinn Emanuel pursuant to the Compensation Order.

22.        During the Fee Period, Quinn Emanuel submitted four monthly fee

statements (the "Monthly Fee Statements").  Through the Monthly Fee Statements, Quinn

Emanuel has requested interim fee compensation in the amount of $2,747,050.40 (representing

80% of the fees billed by Quinn Emanuel from June 1, 2010 through September 30, 2010) and

expenses incurred in the total amount of $259,395.28 (100% of the expenses billed by Quinn

Emanuel from June 1, 2010 through September 30, 2010).  For the period commencing on June 1,

2010 through June 30, 2010, Quinn Emanuel requested payment of $651,547.60 in fees

(representing 80% of the $814,434.50 in fees for that period) and $111,543.92 in expenses.  For

the period commencing on July 1, 2010 through July 31, 2010, Quinn Emanuel requested

payment of $622,210.00 in fees (representing 80% of the $777,762.50 fees for that period) and

$35,869.18 in expenses.  For the period commencing on August 1, 2010 through August 31, 2010,

Quinn Emanuel requested payment of $582,654.00 in fees (representing 80% of the $728,317.50

in fees for that period) and $47,299.58 in expenses.  For the period commencing on September 1,

2010 through September 30, 2010, Quinn Emanuel requested payment of $890,638.80 in fees

(representing 80% of the $1,113,298.50 in fees for that period) and $64,682.60 in expenses.[2]

23.        The fees and expenses requested are reasonable, and all amounts

requested were for actual and necessary services rendered on behalf of the Committee.

24.        Quinn Emanuel has not entered into any agreement, express or

implied, with any other party for the purpose of fixing or sharing fees or other compensation to be

paid for professional services rendered in these cases.  No promises have been received by Quinn

---

[2]        Pursuant to the Compensation Order, if no timely objections are filed to Quinn Emanuel's monthly fee
statements, Quinn Emanuel is paid 80% of its fees and 100% of its expenses.

Emanuel or any member thereof as to compensation in connection with these cases other than in accordance with the provisions of the Bankruptcy Code.

## VI.    SUMMARY OF PROFESSIONAL SERVICES RENDERED

25.        Pursuant to the guidelines promulgated by the United States Trustee, Quinn Emanuel classified all services performed for which compensation is sought into separate categories.  Quinn Emanuel attempted to place the services performed in the category that best relates to the services provided.  However, because certain services may relate to one or more categories, services pertaining to one category may be included in another category.  Schedule 1, attached hereto, lists each timekeeper, his or her respective billing rate, professional information, and the total number of hours expended on this case.  Schedule 2, attached hereto, summarizes the professional and paraprofessional time expended by project category.  Timekeeping entries and Quinn Emanuel invoices provide detailed descriptions of all services rendered by each of these categories.  Exhibit D, attached hereto, contains time entry records broken down in tenths of an hour by project category, based on the U.S. Trustee Guidelines, setting forth a detailed description of services performed by each attorney and paraprofessional on behalf of the Committee.[3]

26.        The following summary is intended only to highlight key services rendered by Quinn Emanuel in certain project billing categories where Quinn Emanuel has expended a considerable number of hours on behalf of the Committee, and is not meant to be a detailed description of all of the work performed.

---

[3]        Due to the volume of the time records and the detailed expense descriptions at issue, these materials are not being filed with the Court, but copies thereof have been delivered to (i) the Court; (ii) the United States Trustee; (iii) counsel for the Debtors; and (iv) the Fee Committee.

### A. General Case Administration (Hours: 35.80; Fees: $8,800.00)

27.    Quinn Emanuel serves as special counsel to the Official Committee of Unsecured Creditors in respect of numerous matters, including various estate litigations against major financial institutions.  As special counsel, Quinn Emanuel also represents the Committee on matters where its main counsel, Milbank Tweed, is conflicted.  To that end, its attorneys must keep abreast of the various pleadings filed in the Chapter 11 Cases and in various adversary proceedings.  Accordingly, during this Fee Period, Quinn Emanuel staff attorneys spent time reviewing pleadings filed each day in the Lehman cases and various adversary proceedings.  In order to create cost savings to the estate, Quinn Emanuel has arranged for a specially trained staff attorney (who bills at a rate lower than a first year associate) to conduct a review and assessment of newly filed pleadings (including, without limitation, whether the pleadings raise issues of concern to the Committee, or were filed in proceedings where the Committee is a party).  These charges are part of Quinn Emanuel's efforts to prosecute valuable estate claims, are integral to the litigation effort, and are an important part of its role as special counsel to the Committee.

### B. Hearings and Court Communications (Hours: 337.00; Fees: $217,215.50)

28.    Throughout the Chapter 11 Cases, Quinn Emanuel attorneys, on behalf of the Committee, have prepared for and attended certain regularly scheduled omnibus hearings where matters being handled by Quinn Emanuel were being presented for consideration, and special scheduled hearings with respect to adversary proceedings where it represents the Committee.  To prepare for these hearings, Quinn Emanuel attorneys often expended considerable time reviewing and analyzing documents, including correspondence and pleadings, and conducting independent legal and factual research.

29.        Quinn Emanuel attorneys also include in "Court Hearings" time spent
in trial, including time spent during the Barclays trial.  Notably, from April 26, 2010 through May
7, 2010, and again on June 21-22, 2010, June 25, 2010, August 23-25, 2010, August 27, 2010,
August 30-31, 2010, September 2, 2010, September 7-8, 2010, September 10, 2010, September
20-21, 2010, September 28-30, 2010, October 4-7, 2010, and October 21, 2010, Quinn Emanuel
attorneys prepared for and attended the bench trial on the Rule 60(b) Motions.  Given the
complexity and significance of the issues involved in the Barclays trial, different attorneys were
present at the hearings on varying days and times in accordance with the needs of the team and
trial.  On certain days, Quinn Emanuel attorneys were required to, among other things, prepare for
direct and cross examination of witnesses and motion practice.  See infra Part VI. C. (Non
Derivative Adversary Proceedings: Barclays Transaction Investigation and Litigation: Trial).

C.        **Non-Derivative Adversary Proceedings (Hours: 4,960.00; Fees: $2,522,343.00)**

30.        Time billed to this category generally relates to litigation that Quinn
Emanuel, as special counsel to the Committee, is pursuing or may pursue against certain entities
in furtherance of the Committee's obligations as a fiduciary for the Debtors' unsecured creditors.
Notably, the majority of the services Quinn Emanuel provides relates to litigation.  For that
reason, most of the time in Quinn Emanuel's application falls into that category.

31.        Bank of America Litigation.  Quinn Emanuel attorneys actively
participated on the Committee's behalf in the litigation between the estates and BofA.  On
January 29, 2010, February 1, 2010 and February 2, 2010, an evidentiary hearing was conducted
regarding BofA's purported right to offset $509 million in a LBHI bank account against amounts
owed by LBHI and Lehman Brothers Special Financing ("LBSF") under certain LBSF derivative
contracts.  Quinn Emanuel represented the Committee, as intervenor, in connection with the BofA

litigation.  At the conclusion of the evidentiary hearing, the Court directed the parties to submit

post-trial briefing.

32.         On November 16, 2010, the Bankruptcy Court issued its decision (the

"BofA Decision") granting a motion for summary judgment filed by LBHI and LBSF and BofA

to return $500 million plus interest to the Debtors, holding that the account at issue "was intended

to function and in practice did function as a segregated account established for the special limited

purpose of securing any indebtedness that might arise on account of intra-day overdrafts."  As

such, BofA's seizure of the collateral violated the automatic stay imposed by section 362 of the

Bankruptcy Code, and BofA was not entitled to setoff the $500 million.  The Court also directed

the parties to schedule a status conference for a further hearing on whether BofA should pay

additional amounts as a result of its violating the automatic stay.

33.         Barclays' Transaction Investigation and Litigation.  On September

15, 2009, Quinn Emanuel filed the Rule 60(b) Motion on the Committee's behalf seeking relief

from the Sale Order dated September 20, 2008 approving the sale of assets related to Lehman

Brothers' North American broker dealer business to Barclays.  The other Movants (i.e., LBHI and

the SIPA Trustee) filed the Rule 60(b) Motions on the same day.  Litigation of the Rule 60(b)

Motions took place on an expedited basis, with a fact discovery cut-off of March 31, 2010 and a

date of April 9, 2010 for opening arguments.

34.         During the Fee Period, Quinn Emanuel attorneys devoted substantial

time to prosecuting the Committee Rule 60(b) Motion and assisting the Movants in prosecuting

the Rule 60(b) Motions.  In particular, Quinn Emanuel attorneys were involved in (i) continuing

motion practice in connection with the Rule 60(b) Motions, (ii) coordinating with the Movants

and Barclays regarding trial preparations, and (iii) participating in 18 days (i.e., June 21-22, 2010,

12

June 25, 2010, August 23-25, 2010, August 27, 2010, August 30-31, 2010, September 2, 2010,

September 7-8, 2010, September 10, 2010, September 20-21, 2010, and September 28-30, 2010)

of evidentiary hearings on the Rule 60(b) Motions.

35.      Trial.  Quinn Emanuel attorneys devoted significant time and effort to

prepare for the 18 trial dates occurring during this Fee Period.  Quinn Emanuel attorneys together

with the other Movants' counsel, spent considerable time coordinating the numerous tasks

involved in preparing for trial as well as general overall trial strategy by email, phone

conferences, and in-person meetings.

36.      Coordination has been key in a case with such complex issues and

with numerous parties.  The Committee also has dedicated considerable time to coordinating tasks

among the three Movants to avoid needless duplication of effort.

37.      On April 26, 2010, the evidentiary hearing regarding the Rule 60(b)

Motions began.  Through the course of the 18 days of evidentiary hearings held during this Fee

Period, the Court took testimony from 24 witnesses.  Quinn Emanuel attorneys participated in the

direct and cross examinations of witnesses.  As discussed above, considerable effort went into

preparing to take testimony from these witnesses, both on direct examinations and cross

examinations.  Witness preparation involved not only an extensive review of the documentary

evidence and deposition testimony, but also the preparation of witness outlines.  Once trial began,

Quinn Emanuel attorneys reviewed the trial transcripts to supplement the witness outlines.

38.      Due to the complex nature of the trial issues, various Quinn Emanuel

attorneys were necessary both in trial preparation and at trial.  Mindful of the resources being

devoted to this important trial, Quinn Emanuel worked to reduce the number of attorneys needed

for each trial day.  Indeed, by the start of Barclays' presentation, in September 2010, Quinn

Emanuel scaled its trial team from eight attorneys down to four. Where possible, Quinn Emanuel

avoided having all four of these core team members at the evidentiary hearing.

    39.        The following list explains the tasks assigned to each attorney present

through the start of the Barclays trial:

| Attorney | Description of Tasks |
|---|---|
| Richard I. Werder, Jr. | Prepared to examine certain witnesses; assisted with trial strategy. |
| Susheel Kirpalani | Prepared to examine certain witnesses; assisted with trial strategy. |
| James C. Tecce | Prepared to argue attorney client and work product issues; witness preparation; assisted with trial strategy. |
| Erica Taggart | Prepared to examine certain witnesses; assisted with trial strategy. |
| Eric M. Kay | Familiar with exhibits, documents and witnesses; assisted with trial strategy. |
| Robert K. Dakis | Most familiar with exhibits produced by Barclays and Debtors; managed process of admitting exhibits into record and objections to Barclays' exhibits; manages process of preparing designations and counter designations; added exhibits; assisted with trial strategy. |
| Tyler G. Whitmer | Most familiar with exhibits produced to Barclays; conducted spot research assignments; assisted with trial strategy. |
| Olga M. Urbieta | Conducted spot research assignments; familiar with exhibits and exhibits list; updated exhibit list; added exhibits. |

    40.        <u>Motions in Limine</u>. In prior fee periods, the Movants prepared

motions in limine in connection with the trial on the Rule 60(b) Motions. Specifically, the

Movants submitted a motion to exclude the trial testimony of Barclays' expert witnesses (the

"<u>Motion to Exclude</u>"). On April 19, 2010, Barclays filed an opposition to the Motion to Exclude.

Barclays also filed its own motion to exclude the trial testimony of Movants' experts (the

"Barclays Exclusion Motion").  By agreement, the Movants' response to Barclays Exclusion

Motion and Movants' reply to Barclays' opposition to the Motion to Exclude was adjourned until

August 2010.

41.        During the Fee Period, Quinn Emanuel attorneys assisted in the

preparation of a response to the Barclays Exclusion Motion and a reply in support of the Motion

to Exclude.  Quinn Emanuel attorneys reviewed drafts of the pleadings and coordinated with

counsel to the Debtors and the SIPA Trustee in the preparation and filing of the responses.

42.        On September 10, 2010, the Court heard argument on the motions in

limine.  Quinn Emanuel attorneys reviewed the motions and coordinated with counsel to the other

Movants in prosecuting the motions.  Ultimately, the court denied the motions in limine, with one

limited exception relating to one of the SIPA Trustee's experts.

43.        Trial Exhibits.  During the Fee Period, Movants continued to make

additions to the list of exhibits in support of the Rule 60 Motions, which required additional

review and coordination among counsel.  That task required a review of the entire case record as

well as the exercise of judgment regarding which documents to seek to admit into evidence.

Altogether, Quinn Emanuel attorneys, together with the other Movants' counsel, compiled and

submitted 962 exhibits for use during trial.  Indeed, effectively moving the Movants' exhibits into

evidence required a coordinated effort by the Debtors, Trustee and Committee counsel.

44.        Further, additional Quinn Emanuel attorneys were responsible for

reviewing and understanding Barclays' exhibit list.  During the Fee Period, Quinn Emanuel

reviewed 1108 exhibits propounded by Barclays in support of its opposition to the Rule 60

Motions.  Quinn Emanuel attorneys analyzed each of Barclays' trial exhibits to determine

applicable objections, if any, and coordinated with the Debtors, Trustee and Committee counsel in

lodging and prosecuting any objections.  This task required Quinn Emanuel attorneys to review the exhibits to which objections were raised and to review both the case record as well as applicable law to prepare for oral argument regarding the admissibility of such exhibits.

45.        Ultimately, in an attempt to minimize the disputes brought before the Court, the Debtors, Trustee and Committee counsel negotiated with Barclays' counsel over the admission of certain exhibits.  These negotiations ultimately lead to four stipulations governing the admission of the majority of the exhibits offered in the Barclays litigation.

46.        <u>Deposition Designations</u>.  Quinn Emanuel attorneys also designated the deposition testimony of various witnesses for use at trial.  In connection with the deposition designations, Quinn Emanuel spent time reviewing all of the Rule 60(b) motions, Barclays' response, as well as, the Movants' Rule 60(b) replies in order to ascertain the scope of the designations.  It was also necessary for Quinn Emanuel attorneys to review the other Movants' deposition designations so as ensure all facts necessary to the Committee's prosecution of the Rule 60(b) Motions were presented through the designations.

47.        Quinn Emanuel attorneys also spent significant time counter-designating the deposition testimony of various witnesses for use at trial.  In connection with the deposition counter-designations, Quinn Emanuel attorneys spent time reviewing Barclays' designations, and the pleadings filed in order to ascertain the scope of the counter-designations. In total, the parties designated and counter-designated 52 deposition transcripts.

48.        <u>JPMorgan Litigation</u>.  On December 2, 2009, the Committee and LBHI co-signed a memorandum (the "<u>Protocol</u>") governing among other things, the joint prosecution of claims against JPMC.  The Protocol provides the Committee, through its counsel Quinn Emanuel, will play a significant role in any litigation involving the prosecution of these

16

claims.  Pursuant to the terms of the Protocol, Quinn Emanuel worked with LBHI's counsel,

Curtis, Mallet-Prevost, Colt & Mosle LLP ("Curtis"), to develop potential claims against JPMC,

conduct the legal and fact research required effectively to plead those claims, and draft an

adversary complaint.

           49.          On May 26, 2010, LBHI and the Committee (the "Plaintiffs") filed an

adversary complaint against JPMC (the "JPMC Complaint"), asserting both common law claims

and avoidance claims to seek the return of billions of dollars in value to the LBHI estate by

invalidating certain guaranties and security agreements entered into in the weeks before LBHI

filed for bankruptcy relief.

           50.          The JPMC complaint identifies the Committee as a plaintiff

intervenor.  Accordingly, Quinn Emanuel attorneys spent time drafting a motion for the

Committee to intervene in the proceedings.  On May 26, 2010, Quinn Emanuel attorneys filed the

motion.  Following negotiations among Quinn Emanuel attorneys and counsel to JPMC, on June

24, 2010, the Court issued an order authorizing the Committee's intervention in the JPMC

litigation for all purposes.

           51.          During this Fee Period, Quinn Emanuel attorneys began the process

of seeking discovery in support of the JPMC Complaint.  Quinn Emanuel drafted document

requests and interrogatories and served them on JPMC.  The Committee also issued and served

eighteen subpoenas on third parties, including banks, individuals and government agencies.

Quinn Emanuel attorneys have spent significant amounts of time meeting and conferring with

counsel for both JPMC and the subpoena recipients regarding the scope of document production

and other discovery.  The Committee has also had to respond to multiple discovery requests from

JPMC (in some instances no less than three separate document demands).  Quinn Emanuel has

managed this process through regular calls with a Committee subgroup dedicated to the task.

52.        Many parties began producing documents during the Fee Period.  In

coordination with the estate and Alvarez & Marsal ("A&M"), Quinn Emanuel has established a

team of contract attorneys – billed directly through the estate – to review documents produced in

the litigation.  This document review team is managed on a daily basis by Quinn Emanuel

attorneys.  As documents are reviewed for factual development, Quinn Emanuel attorneys have

been engaged in a "second tier" review of documents deemed important to the litigation,

incorporating these documents in to memoranda and other work product analyzing the claims in

the adversary proceeding.

53.        Quinn Emanuel attorneys further spent considerable time working

with Curtis to draft pleadings and responses, to coordinate efforts and research, and to determine

the strategy for responding to JPMC's Motion to Dismiss, filed on August 25, 2010.  Quinn

Emanuel has done significant legal research and drafting for the Plaintiffs' opposition to that

motion due December 15, 2010.

54.        On September 15, 2010, the Plaintiffs filed their first amended

complaint.  Quinn Emanuel and Curtis spent a significant amount of time coordinating,

researching and drafting the amended complaint.  JPMC moved to dismiss the amended

complaint on October 19, 2010.

55.        Additionally, Quinn Emanuel has been working with Curtis to

research JPMC's claims against the estate as part of the claim review and reconciliation process.

It has also been working with other counsel and advisors in analyzing JPMC's derivatives claims,

totaling more than $3 billion.

56.        Citibank.  During this Fee Period, the Committee continued its independent investigation of the claims Citibank, N.A. ("Citibank") has asserted against the estate and the contours of Citibank's relationship with Lehman.  Starting in January 2010, the Debtors and Citibank produced documents to the Committee, and Quinn Emanuel attorneys spent a significant amount of time reviewing those documents.  In coordination with the Debtors, Quinn Emanuel attorneys are continuing their investigation into Citibank.

57.        Financial Institutions Investigations.  Section 546(c) of the Bankruptcy Code establishes a two-year deadline for commencing avoidance actions.  The deadline for Lehman to commence avoidance actions expired on September 15, 2010.  During the Fee Period, Quinn Emanuel attorneys spent a significant amount of time conducting investigations regarding certain secured lenders and financial institutions to determine whether the estates would need to commence actions or otherwise take steps to preserve the estates' rights against these lenders.  During this period, Quinn Emanuel attorneys worked closely with the estates' professionals in the analysis of potential claims against such entities.  The investigations entailed: (i) conducting in-depth research, (ii) attending multiple conferences, (iii) performing document review, (iv) drafting memoranda of law regarding potential claims, (v) reviewing filed proofs of claim, and (vi) drafting pleadings relating to these institutions.  Ultimately, as a result of the work of the estate professionals, including Quinn Emanuel, the Debtors filed 65 avoidance actions and obtained over 177 tolling agreements, thereby preserving the Debtors' right to later commence actions where appropriate.  Due to the confidential nature of these investigations and agreements, this Application only discusses this investigation in general terms.

### D.    Nonworking Travel  (Hours: 56.80, Fees: $41,495.50)

58.         Time billed under this category was for the necessary time that Quinn

Emanuel attorneys spent traveling on behalf of the Committee to Committee meetings,

depositions and court hearings.  Given the compressed time and magnitude of the Barclays Rule

60(b) litigation, it was necessary for attorneys outside of Quinn Emanuel's New York office who

are members of the Rule 60(b) Barclays adversary proceeding team to travel to New York to

participate in the ongoing hearings.  As discussed above, the attendance of these attorneys was

necessary to the effective and efficient representation of the Committee.  Thus, time billed during

this Fee Period included cross-country air travel relating to this litigation.[4]  Quinn Emanuel

attorneys also spent time traveling locally to Court, depositions and in-person meetings with the

Debtors and other third parties.

### E.    Quinn Emanuel Fee Applications (Hours: 746.10, Fees: $34,338.13 [5])

59.         Pursuant to the Bankruptcy Code, Local Rules, and the Compensation

Order, Quinn Emanuel prepared and served four monthly fee statements (the "Fee Statements")

for approval and allowance of compensation for actual, reasonable and necessary professional

services rendered, and reimbursement of expenses for actual reasonable and necessary expenses

incurred during those fee periods.  Each Fee Statement contained extensive records of the work

performed by Quinn Emanuel.  Quinn Emanuel attorneys also prepared and served the Fifth

Interim Fee Application during this Fee Period.  Preparing the Fifth Interim Fee Application

involved consolidating Quinn Emanuel's fees and expenses for four monthly fee statements and

---

[4]      The airfare incurred was not billed at business class fares.

[5]      Quinn Emanuel's actual fees incurred for the preparation of fee applications is $280,260.50.  Consistent with the Fee Committee Guidelines, Quinn Emanuel is only seeking 1% of the total fees charged for this period and not the actual fees associated for the preparation of fee applications.  Quinn Emanuel reserves the right to seek the remaining $245,922.37 at a later date.

preparing a detailed narrative in the pleading describing these efforts.  Extensive time was also

spent organizing the time entries and preparing the charts and the summary descriptions of the

work done throughout the Fifth Interim Fee Application.  Lastly, Quinn Emanuel attorneys spent

time reviewing and revising the overall litigation budget and amending Quinn Emanuel's budget

accordingly.

> **F.**      **Derivatives  (Hours: 360.70, Fees: $248,256.00)**

60.      During the Fee Period, Quinn Emanuel attorneys devoted time to

reviewing numerous derivatives transactions to which the Debtors were, or are, parties.  The

Debtors are in the process of reconciling and winding down their considerable derivatives trading

activities.  As part of that function, the Debtors have been regularly informing the Committee of

the status of their efforts in connection with this process.  Quinn Emanuel attorneys devoted time

to diligencing certain of these transactions involving large financial institutions to ensure that the

value for unsecured creditors has been maximized.

61.      The Debtors have challenged whether counterparties had the right to

unilaterally terminate various derivatives transactions as a result of the Debtors' chapter 11

filings.  Given the sheer volume of the Debtors' trading activity, the number of similarly situated

transactions, and the value of such transactions to the estates, the outcome of such challenges can

have substantial effect on the Chapter 11 Cases.  On behalf of the Committee, and working the

Committee's financial advisors, and from time to time, the Debtors' professionals, Quinn

Emanuel attorneys have devoted substantial time examining the issues concerning such

challenges.  Among others, Quinn Emanuel attorneys have provided services on such issues

concerning the following counterparties: Ballyrock, RACERS/Pyxis , Phoenix ADR and

Libra/MKP Vela.

62.        In addition, Quinn Emanuel has provided services to the Committee in connection with the derivatives mediation protocols.  Quinn Emanuel's involvement entailed reviewing documents, engaging in discussions with the Debtors' professionals, making presentations and providing updates to the Committee and derivatives sub-committee, conducting legal research, and developing memoranda regarding the various issues in the litigations.

63.        <u>Libra Adversary Proceeding</u>.  On May 5, 2009, Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") and LBHI filed a complaint for declaratory and injunctive relief against Libra CDO Limited ("<u>Libra</u>"), LaSalle Bank National Association ("<u>LaSalle</u>"), acting in its capacity as trustee under an indenture (the "<u>Indenture</u>") pursuant to which Libra raised capital through the issuance of certain notes, Bank of America (as successor in interest to LaSalle and with LaSalle, the "<u>Trustee</u>"), and Société Générale, New York Branch ("<u>SGNY</u>" and together with Libra and the Trustee, the "<u>Defendants</u>").  The Committee intervened in this action by stipulation and order entered on July 16, 2009 and filed joinders to the Debtors' dispositive motions.

64.        During this Fee Period, Quinn Emanuel attorneys participated in multiple meetings and conferences with Libra counsel, Debtors' counsel and the Committee's financial advisors regarding the status and implications of this adversary proceeding with respect to other issues in the cases.  Moreover, Quinn Emanuel attorneys dedicated significant time discussing issues implicated in this case with the Committee's derivatives sub-committee. Indeed, it was necessary for Quinn Emanuel attorneys to conduct research regarding the implications of this proceeding as well as other legal issues, and draft memoranda regarding the same.

65.       Also during this Fee Period, the parties engaged in settlement

negotiations.  On September 20, 2010, Lehman filed a motion seeking approval of a settlement

with SGNY with respect to the Libra transaction and a similar transaction known as MKP Vela.

The settlement requires SGNY to pay $370 million and guarantee further payment of $75 million.

The settlement does not resolve disputes with the Trustee or with the MKP Vela trustee, and

Lehman, if successful in the litigation, could obtain up to approximately $72.5 million from the

proceeds of assets in Libra and MKP Vela.  The Committee supported the settlement and spent

time not only reviewing the settlement, but also drafting and filing a statement in support on

October 13, 2010.  The Trustee and MKP Vela trustee filed objections to the settlement motion.

The settlement motion was heard by the Bankruptcy Court on October 20, 2010.  On October 21,

2010, the Court entered an order approving the settlement motion.

## VII.    ALLOWANCE OF COMPENSATION

66.       The factors to be considered in awarding attorneys fees as enumerated

in In re First Colonial Corp. of America, 544 F.2d 1291, 1298-99 (5th Cir. 1977), have been

adopted by most courts, including the Bankruptcy Court for the Southern District of New York.

See, e.g., In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 22 n.5 (Bankr. S.D.N.Y.

1991).  Indeed, a majority of the First Colonial factors are now codified in section 330(a)(3). See,

e.g., 3 L. King, et al., Collier on Bankruptcy at ¶ 330.04[3][c] (15th ed. rev 2008).

67.       Section 330(a)(1)(A) of the Bankruptcy Code provides, in pertinent

part, that the Court may award to a professional person, "reasonable compensation for actual,

necessary services rendered." Section 330(a)(3)(A), in turn, provides that:

> In determining the amount of reasonable compensation to be awarded,
> the court shall consider the nature, the extent, and the value of such
> services, taking into account all relevant factors, including –

(A) the time spent on such services;

(B) the rates charged for such services;

(C) whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;

(D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. 11 U.S.C. § 330(a)(3)(A).

68.    The congressional policy expressed above provides for adequate compensation in order to continue to attract qualified and competent professionals to bankruptcy cases.  In re Busy Beaver Bldg. Ctrs., Inc., 19 F.3d 833, 850 (3d Cir. 1994) ("Congress rather clearly intended to provide sufficient economic incentive to lure competent bankruptcy specialists to practice in the bankruptcy courts.") (citation and internal quotation marks omitted); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 18 (Bankr. S.D.N.Y. 1991) ("Congress' objective on requiring that the market, not the Court, establish attorneys' rates was to ensure that bankruptcy cases were staffed by appropriate legal specialists.").  Quinn Emanuel respectfully submits that the consideration of these factors should result in this Court's allowance of the full compensation sought.

A.    **The Time and Labor Required**

69.    The professional services rendered by Quinn Emanuel have required the continuous expenditure of substantial time and effort, under time pressures which sometimes required the performance of services late into the evening and, on a number of occasions, over weekends and holidays.  The services rendered required a high degree of professional competence

24

and expertise in order to be administered with skill and dispatch. During the Compensation

Period, approximately 6662.20 recorded hours were expended by Quinn Emanuel' s partners,

associates, and legal assistants in providing the requested professional services. Quinn Emanuel's

hourly billing rates, as set out in Schedule 1, are computed at the rates Quinn Emanuel regularly

charges its hourly clients.

70.    Each calendar year, it is Quinn Emanuel's policy to raise the hourly

rates for its attorneys. These rate increases are made in respect of all clients (bankruptcy and non-

bankruptcy). Quinn Emanuel typically raises its rates in September, which coincides with the

start date for its incoming class of junior lawyers. The September rate increase is Quinn

Emanuel's only yearly increase (i.e., absent special circumstances Quinn Emanuel does not make

any other rate changes until September of the following year).

**B.**    **The Necessity of The Services and Benefit to the Estate**

71.    These Chapter 11 Cases are generally regarded as among the most

complex and active bankruptcy cases ever filed. Indeed, many of the complex issues regarding

the Debtors' financial contracts are issues of first impression, with far reaching ramifications. As

detailed above, the services Quinn Emanuel provided to the Committee were necessary to

preserve and enhance the value of the Debtors' estates and conferred substantial benefit to the

Debtors' unsecured creditors. Quinn Emanuel's services have furthered and will continue to

further the Committee's obligations as fiduciary for the Debtors' unsecured creditors and will

continue to maximize estate value.

72.    As discussed above, given the significance and complexity of the

Barclays Rule 60(b) Litigation, it was necessary for multiple attorneys to participate in

accelerated discovery and attend the bench trial. The litigation team was leanly staffed and every

25

attorney who attended the bench trial was not present every day or for the entire trial day.  Indeed, attorneys were present only on those dates and at those times where that attorney was necessary for the bench trial.  The attorneys on the litigation team were tasked with crucial tasks such as (i) the examination of certain witnesses, (ii) the formulation of trial strategy, (iii) oral argument of various issues, (iv) knowledge of the exhibits and documentary evidence, (v) spot research assignments, (vi) updating the exhibit list, and (vii) familiarity with witness depositions.  As such, the presence of multiple attorneys at the Barclays bench trial was necessary and proper in order for Quinn Emanuel to properly represent the Committee.

73.      Quinn Emanuel nonetheless made every effort to avoid duplication. On any matter where Quinn Emanuel attorneys works with estate counsel, Quinn Emanuel aims to coordinate efforts and maintain efficiency.

**C.      The Novelty and Difficulty of Issues Presented in the Cases**

74.      Novel and complex issues have arisen in the course of the Chapter 11 Cases, and it can be anticipated that other such issues will be encountered.  In these cases, as in many others in which the firm is involved, Quinn Emanuel's effective advocacy and creative approach to problem solving have helped clarify and resolve difficult issues and will continue to prove beneficial.

**D.      The Experience, Reputation and Ability of the Attorneys**

75.      Quinn Emanuel has extensive experience in the areas of insolvency, workouts and corporate reorganizations.  Quinn Emanuel's services on behalf of the Committee have been rendered in a highly efficient manner by attorneys who have achieved a high degree of expertise in these areas.  The skill and competency of the Quinn Emanuel attorneys who have

represented the Committee have ensured that these cases have been administered in the most efficient and expeditious manner.

## VIII.   DISBURSEMENTS

76.    Quinn Emanuel has incurred a total of $259,395.28 in expenses in connection with representing the Committee during the Sixth Interim Compensation Period. Quinn Emanuel records all expenses incurred in connection with the performance of professional services.  A summary of these expenses and detailed descriptions of these expenses, is annexed hereto as Exhibit E.

77.    In connection with the reimbursement of expenses, Quinn Emanuel's policy is to charge its clients in all areas of practice for expenses, other than fixed and routine overhead expenses, incurred in connection with representing its clients.  The expenses charged to Quinn Emanuel's clients include, among other things, telephone and telecopy toll and other charges, mail and express mail charges, special or hand delivery charges, photocopying charges, out-of-town travel expenses, local transportation expenses, expenses for working meals, computerized research and transcription costs.

78.    Quinn Emanuel charges the Committee for these expenses at rates consistent with those charged to Quinn Emanuel's other bankruptcy clients, which rates are equal to or less than the rates charged by Quinn Emanuel to its non-bankruptcy clients.  Quinn Emanuel seeks reimbursement from the Debtors at the following rates for the following expenses: (a) ten cents ($0.10) per page for photocopying; (b) no charge for incoming facsimiles; and (c) toll charges only for outgoing facsimiles.  In accordance with section 330 of the Bankruptcy Code, the Local Guidelines and with the U.S. Trustee Guidelines, Quinn Emanuel seeks reimbursement only for the actual cost of such expenses to Quinn Emanuel.

79.        In providing or obtaining from third parties services which are reimbursable by clients, Quinn Emanuel does not include in such reimbursable amount any costs of investment, equipment or capital outlay.

80.        Quinn Emanuel regularly charges its non-bankruptcy clients for ordinary business hourly fees and expenses for secretarial, library, word processing and other staff services because such items are not included in the firm's overhead for the purpose of setting the billing rates.  However, Quinn Emanuel is not requesting reimbursement of such expenses in this Application and will not seek reimbursement from the Debtors of such expenses in future applications. Nevertheless, Quinn Emanuel reserves its rights with respect to such expenses until such time as an order is entered regarding its final fee application.

81.        Quinn Emanuel is seeking reimbursement for costs relating to 58 deposition and trial transcripts.  The vast majority of these transcripts relate to the Barclays litigation.  Quinn Emanuel, along with other counsel in the Barclays litigation, often received transcripts on expedited time frames.  Given the scope and complexity of the Barclays litigation, these transcripts were necessary to Quinn Emanuel's role representing the Committee in the Barclays litigation.

82.        Attorneys at Quinn Emanuel have not incurred expenses for luxury accommodations or deluxe meals.  The Application does not seek reimbursement of air travel expenses in excess of coach fares.  Throughout the Sixth Interim Compensation Period, Quinn Emanuel has been keenly aware of cost considerations and has tried to minimize the expenses charged to the Debtors' estates.

## IX.    <u>NOTICE</u>

83.         Notice of this Application, as set forth in the Interim Compensation

Order, has been given to (a) the Debtors, (b) counsel for the Debtors, (c) the Office of the United

States Trustee, (d) Counsel for the Official Committee of Unsecured Creditors, and (e) the

chairperson of the fee committee.

## X.    <u>CONCLUSION</u>

WHEREFORE, Quinn Emanuel respectfully requests the Court to enter an order, conforming to the amounts set forth in Fee Schedule A (1) attached hereto as Exhibit F (a) allowing Quinn Emanuel (i) interim compensation for professional services rendered as counsel for the Committee during the Fee Period in the amount of $3,187,890.63 and (ii) reimbursement of expenses incurred in connection with rendering such services in the aggregate amount of $259,395.28, for a total award of $3,447,285.91; (b) authorizing and directing the Debtors to pay to Quinn Emanuel any and all such amounts less any amounts already received for services rendered and expenses incurred during the Sixth Interim Compensation Period; and (c) granting such further relief as is just.

Dated:  December 14, 2010
      New York, New York

            **QUINN EMANUEL URQUHART
            & SULLIVAN, LLP**

            By:  <u>/s James C. Tecce</u>
                James C. Tecce

            Susheel Kirpalani (SK8926)
            James C. Tecce (JT5910)
            Robert K. Dakis (RD0626)
            51 Madison Avenue, 22nd Floor
            New York, New York 10010
            Telephone No.:  (212) 849-7000
            Facsimile No.:  (212) 849-7100

            *Special Counsel to Official Committee Of
            Unsecured Creditors Of Lehman Brothers
            Holdings Inc., et al.*