WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                                                 :
**In re**                                                        :    **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                     :    **08-13555 (JMP)**
                                                                 :
                                    **Debtors.**                 :    **(Jointly Administered)**
                                                                 :
----------------------------------------------------------------x

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. §§ 330 AND 331**

**SIXTH INTERIM FEE APPLICATION**

Name of Applicant:     **Weil, Gotshal & Manges LLP**

Time Period:           June 1, 2010 through and including September 30, 2010

Role in the Case:      Attorneys for the Debtors and Debtors in Possession

Current Application:   Total Fees Requested:  $42,626,600.50
                       Total Expenses Requested:  $1,043,188.95

Prior Applications[1]:    First Interim Fee Application, filed April 13, 2009 [Docket No. 3343], for the period from September 15, 2008 through and including January 31, 2009
    Total Fees & Expenses Requested:  $55,140,791.25
    Total Fees & Expenses Allowed:  $55,140,197.25

Second Interim Fee Application, filed August 14, 2009 [Docket No. 4825], for the period from February 1, 2009 through and including May 31, 2009
    Total Fees & Expenses Requested:  $46,462,615.85
    Total Fees and Expenses Allowed:  $46,191,429.23

Third Interim Fee Application, filed December 14, 2009 [Docket No. 6205], for the period from June 1, 2009 through and including September 30, 2009
    Total Fees & Expenses Requested:  $46,615,231.42
    Total Fees and Expenses Allowed:  $46,266,463.77

Fourth Interim Fee Application, filed April 16, 2010 [Docket No. 8395], for the period from October 1, 2009 through and including January 31, 2010
    Total Fees & Expenses Requested:  $41,385,606.04
    Total Fees and Expenses Allowed:  $40,252,444.70

Fifth Interim Fee Application, filed August 16, 2010 [Docket No. 10791], for the period from February 1, 2010 through and including May 31, 2010
    Total Fees & Expenses Requested:  $47,819,947.03
    Total Fees and Expenses Allowed:  Pending

---

[1] Weil, Gotshal & Manges LLP has reserved all rights with respect to any fees and expenses that have been requested but not yet allowed.

## SUMMARY SHEET FOR THE SIXTH INTERIM FEE
## APPLICATION OF WEIL, GOTSHAL & MANGES LLP

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Harvey R. Miller | BFR | 1959 | $990.00 | 437.40 | $429,066.00 |
| E. N. Veasey | CORP | 1958 | $990.00 | 16.50 | $16,335.00 |
| Peter Gruenberger | LIT | 1961 | $990.00 | 806.90 | $798,831.00 |
| Richard J. Davis | LIT | 1970 | $950.00 | 8.80 | $8,360.00 |
| Ralph I. Miller | LIT | 1972 | $950.00 | 486.70 | $434,625.00 |
| Richard P. Krasnow | BFR | 1972 | $990.00 | 513.90 | $499,108.50 |
| Gregory D. Hull | LIT | 1973 | $700.00 | 57.30 | $40,110.00 |
| Howard B. Comet | LIT | 1976 | $865.00 | 21.60 | $18,684.00 |
| T. R. Guy | LIT | 1976 | $885.00 | 9.40 | $8,319.00 |
| Edward Soto | LIT | 1978 | $950.00 | 615.30 | $584,535.00 |
| Richard A. Rothman | LIT | 1978 | $990.00 | 9.50 | $9,405.00 |
| Robert L. Messineo | CORP | 1979 | $950.00 | 280.00 | $266,000.00 |
| Alfredo R. Perez | BFR | 1980 | $975.00 | 717.30 | $699,367.50 |
| Peter D. Isakoff | LIT | 1980 | $900.00 | 193.50 | $174,150.00 |
| W. M. Bond | CORP | 1980 | $990.00 | 834.50 | $826,155.00 |
| W. M. Bond | CORP | 1980 | $925.00 | 66.80 | $61,790.00 |
| Christopher K. Aidun | CORP | 1981 | $920.00 | 20.00 | $18,400.00 |
| Mike Francies | CORP | 1981 | $1,000.00 | 27.40 | $27,400.00 |
| Mindy J. Spector | LIT | 1981 | $950.00 | 312.00 | $296,400.00 |
| Jacqueline Marcus | BFR | 1983 | $870.00 | 171.90 | $149,553.00 |
| Stephen A. Radin | LIT | 1983 | $950.00 | 5.70 | $5,415.00 |
| Daniel J. Mette | CORP | 1984 | $865.00 | 157.50 | $136,237.50 |
| Lawrence J. Baer | LIT | 1984 | $720.00 | 7.40 | $5,328.00 |
| Lori R. Fife | BFR | 1984 | $975.00 | 569.60 | $535,860.00 |
| Richard A. Morrison | CORP | 1984 | $885.00 | 846.00 | $748,710.00 |
| Richard A. Morrison | CORP | 1984 | $850.00 | 9.10 | $7,735.00 |
| Richard L. Levine | LIT | 1984 | $885.00 | 258.00 | $220,497.75 |
| Stuart J. Goldring | TAX | 1984 | $990.00 | 87.10 | $86,229.00 |
| Conrad G. Bahlke | CORP | 1985 | $845.00 | 57.70 | $48,418.50 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jonathan D. Polkes | LIT | 1985 | $990.00 | 193.00 | $191,070.00 |
| Andrew N. Norwood | CORP | 1986 | $1,000.00 | 21.60 | $21,600.00 |
| Kam, Michael K. | TAX | 1987 | $900.00 | 8.80 | $7,920.00 |
| Richard W. Slack | LIT | 1987 | $885.00 | 359.20 | $317,892.00 |
| Paul T. Cohn | CORP | 1988 | $865.00 | 14.80 | $12,802.00 |
| Juliet Blanch | LIT | 1988 | $1,000.00 | 226.90 | $226,500.00 |
| Larry J. Gelbfish | TAX | 1988 | $885.00 | 48.00 | $42,480.00 |
| Eric J. Peterman | CORP | 1989 | $900.00 | 427.30 | $384,570.00 |
| Frank P. Nocco | CORP | 1989 | $925.00 | 188.90 | $174,732.50 |
| John B. Strasburger | LIT | 1989 | $845.00 | 316.50 | $237,233.75 |
| Nellie P. Camerik | CORP | 1989 | $845.00 | 712.80 | $599,781.00 |
| Nellie P. Camerik | CORP | 1989 | $790.00 | 1.60 | $1,264.00 |
| Penny P. Reid | LIT | 1989 | $885.00 | 151.30 | $133,900.50 |
| Vernon S. Broderick | LIT | 1989 | $800.00 | 107.80 | $85,920.00 |
| Andrew J. Colao | CORP | 1990 | $845.00 | 51.00 | $43,095.00 |
| Barry Fishley | CORP | 1990 | $960.00 | 31.00 | $29,760.00 |
| Christopher Cox | LIT | 1990 | $845.00 | 194.40 | $164,268.00 |
| Joanne Etherton | TAX | 1990 | $1,000.00 | 303.50 | $303,000.00 |
| Christopher R. Pace | LIT | 1991 | $845.00 | 94.10 | $75,923.25 |
| Craig W. Adas | CORP | 1991 | $900.00 | 30.00 | $27,000.00 |
| Dominic T. McCahill | BFR | 1991 | $1,000.00 | 80.80 | $80,800.00 |
| Michael E. Lubowitz | CORP | 1991 | $950.00 | 43.10 | $40,945.00 |
| Robert N. Chiperfield | CORP | 1991 | $900.00 | 438.00 | $393,750.00 |
| Steven K. Ong | CORP | 1991 | $960.00 | 191.00 | $183,360.00 |
| Yvette Ostolaza | LIT | 1992 | $865.00 | 22.50 | $19,462.50 |
| Rodney D. Miller | CORP | 1993 | $885.00 | 6.40 | $5,664.00 |
| Vance L. Beagles | LIT | 1993 | $845.00 | 169.00 | $123,454.50 |
| Beatriz Azcuy-Diaz | CORP | 1994 | $780.00 | 181.80 | $141,804.00 |
| Emmanuelle Henry | CORP | 1995 | $855.00 | 49.90 | $42,664.50 |
| Holly E. Loiseau | LIT | 1995 | $780.00 | 502.00 | $391,560.00 |
| Peter Vankeulen | LIT | 1995 | $910.00 | 36.60 | $33,306.00 |
| Uwe Hartmann | CORP | 1995 | $835.00 | 126.80 | $105,878.00 |

| NAME OF PROFESSIONAL PARTNERS AND OF COUNSELS: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Y. S. Grossman | CORP | 1995 | $845.00 | 83.20 | $70,304.00 |
| David E. Wohl | CORP | 1996 | $780.00 | 16.70 | $13,026.00 |
| Jeffrey D. Osterman | CORP | 1996 | $845.00 | 50.20 | $42,419.00 |
| Jane E. McDonald | CORP | 1997 | $950.00 | 48.70 | $46,265.00 |
| Anthony J. Albanese | LIT | 1997 | $820.00 | 41.30 | $33,866.00 |
| Matthew Shankland | LIT | 1997 | $1,000.00 | 287.20 | $275,950.00 |
| Robert Frastai | TAX | 1997 | $800.00 | 130.60 | $104,480.00 |
| Shai Y. Waisman | BFR | 1997 | $845.00 | 539.40 | $445,188.25 |
| David R. Fertig | LIT | 1998 | $780.00 | 594.70 | $463,866.00 |
| Arnold Buessemaker | CORP | 1999 | $760.00 | 321.30 | $244,188.00 |
| Joseph J. Basile | CORP | 1999 | $900.00 | 7.80 | $7,020.00 |
| Nancy E. Lynch | CORP | 1999 | $700.00 | 526.50 | $368,550.00 |
| Randi W. Singer | LIT | 1999 | $780.00 | 116.40 | $90,792.00 |
| Yolanda C. Garcia | LIT | 1999 | $760.00 | 53.20 | $40,432.00 |
| Ardith Bronson | LIT | 2000 | $700.00 | 754.60 | $525,245.00 |
| Elisa R. Lemmer | BFR | 2000 | $700.00 | 89.90 | $62,930.00 |
| David Herman | CORP | 2001 | $700.00 | 516.70 | $361,690.00 |
| Robert J. Lemons | BFR | 2001 | $780.00 | 227.80 | $177,684.00 |
| William A. Burck | LIT | 2001 | $760.00 | 49.40 | $37,544.00 |
| Ronit J. Berkovich | BFR | 2002 | $725.00 | 52.30 | $37,917.50 |
| **TOTAL** | | | | **17,443.10** | **$15,253,742.00** |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Christine Howard | LIT | 1975 | $640.00 | 269.50 | $172,224.00 |
| Lynn Bodkin | CORP | 1984 | $695.00 | 144.40 | $100,358.00 |
| Richard I. Ellenbogen | CORP | 1985 | $590.00 | 49.10 | $28,969.00 |
| Alan R. Kusinitz | LIT | 1986 | $695.00 | 30.80 | $21,406.00 |
| Roshelle A. Nagar | CORP | 1989 | $695.00 | 11.20 | $7,784.00 |
| Sally Willcock | LIT | 1989 | $800.00 | 15.20 | $12,160.00 |
| John Butenas | CORP | 1991 | $695.00 | 144.50 | $100,427.50 |
| Ariel Kronman | CORP | 1993 | $700.00 | 317.70 | $222,040.00 |
| Leslie S. Smith | CORP | 1995 | $695.00 | 26.60 | $18,487.00 |
| Elizabeth A. Martialay | CORP | 1996 | $665.00 | 199.60 | $132,734.00 |
| Laura S. Mello | LIT | 1996 | $250.00 | 281.10 | $70,275.00 |
| Meredith Parenti | LIT | 1996 | $695.00 | 549.50 | $380,165.00 |
| Scarlett E. Collings | LIT | 1997 | $695.00 | 866.00 | $594,711.50 |
| Konstantin Hoppe | CORP | 1998 | $580.00 | 265.20 | $153,816.00 |
| David W. Dummer | LIT | 1999 | $695.00 | 219.90 | $151,892.25 |
| Eugene J. Ng | CORP | 1999 | $665.00 | 180.30 | $119,899.50 |
| Gregory S. Silbert | LIT | 1999 | $695.00 | 6.80 | $4,726.00 |
| Melissa Meyrowitz | CORP | 1999 | $695.00 | 73.30 | $50,943.50 |
| Melissa Meyrowitz | CORP | 1999 | $640.00 | 3.20 | $2,048.00 |
| Christy K. Kailis | BFR | 2000 | $840.00 | 452.00 | $379,680.00 |
| Deepak Reddy | CORP | 2000 | $695.00 | 14.80 | $10,286.00 |
| Erin J. Law | LIT | 2000 | $695.00 | 64.90 | $45,105.50 |
| Kian Tauser | TAX | 2000 | $655.00 | 7.40 | $4,847.00 |
| Konrad V. Buchwaldt | CORP | 2000 | $545.00 | 15.80 | $8,611.00 |
| Kristen D. Perrault | LIT | 2000 | $225.00 | 365.60 | $82,260.00 |
| William Primavera | LIT | 2000 | $250.00 | 70.40 | $17,600.00 |
| Andrew R. Swartz | LIT | 2001 | $695.00 | 156.60 | $108,837.00 |
| Andrew R. Swartz | LIT | 2001 | $550.00 | 19.80 | $10,890.00 |
| Astrid N. Sandberg | LIT | 2001 | $695.00 | 40.30 | $28,008.50 |
| David Herman | CORP | 2001 | $640.00 | 49.50 | $31,680.00 |
| Lidija Hubana | LIT | 2001 | $250.00 | 308.60 | $77,150.00 |
| Margarita Platkov | LIT | 2001 | $665.00 | 358.80 | $228,327.75 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Michael Arnott | BFR | 2001 | $800.00 | 12.30 | $9,840.00 |
| Randell J. Gartin | TAX | 2001 | $665.00 | 5.80 | $3,857.00 |
| Ron Ben-Menachem | CORP | 2001 | $630.00 | 30.80 | $19,404.00 |
| Sibylle Schumacher | LIT | 2001 | $580.00 | 16.00 | $9,280.00 |
| Adam M. Schloss | LIT | 2002 | $685.00 | 83.30 | $57,060.50 |
| Arman Kuyumjian | CORP | 2002 | $665.00 | 72.80 | $48,412.00 |
| Charles J. Maples | LIT | 2002 | $800.00 | 465.20 | $372,160.00 |
| Eleanor H. Gilbane | LIT | 2002 | $695.00 | 647.90 | $437,711.00 |
| Jay H. Park Jr. | CORP | 2002 | $595.00 | 80.10 | $47,659.50 |
| Michael Kohl | CORP | 2002 | $655.00 | 5.30 | $3,471.50 |
| Paullette C. Deruelle | LIT | 2002 | $695.00 | 142.30 | $98,898.50 |
| Philipp Gantenberg | CORP | 2002 | $400.00 | 10.70 | $4,280.00 |
| Virginia H. Johnson | LIT | 2002 | $685.00 | 44.00 | $30,140.00 |
| Andrew W. Nelson | CORP | 2003 | $665.00 | 22.30 | $14,829.50 |
| Claire L. Webb | LIT | 2003 | $630.00 | 14.30 | $9,009.00 |
| Denise Alvarez | LIT | 2003 | $685.00 | 296.20 | $202,897.00 |
| Edward McCarthy | LIT | 2003 | $665.00 | 678.50 | $444,951.50 |
| Erin D. Eckols | LIT | 2003 | $665.00 | 374.30 | $246,681.75 |
| Gregory Fennell | CORP | 2003 | $630.00 | 5.10 | $3,213.00 |
| Jean-Christophe David | CORP | 2003 | $690.00 | 128.20 | $88,458.00 |
| Julie T. Friedman | BFR | 2003 | $500.00 | 313.00 | $156,500.00 |
| Justin G. Mapes | CORP | 2003 | $665.00 | 129.30 | $85,984.50 |
| Marisa L. Ferraro | CORP | 2003 | $685.00 | 252.30 | $172,825.50 |
| Marisa L. Ferraro | CORP | 2003 | $610.00 | 9.90 | $6,039.00 |
| Alcira Moncada | LIT | 2004 | $250.00 | 341.20 | $85,300.00 |
| Allen S. Blaustein | LIT | 2004 | $630.00 | 536.10 | $332,073.00 |
| Caroline Hickey Zalka | LIT | 2004 | $595.00 | 210.60 | $125,307.00 |
| Diana M. Eng | LIT | 2004 | $665.00 | 37.50 | $24,937.50 |
| Friederike Schroeder | CORP | 2004 | $400.00 | 12.30 | $4,920.00 |
| Garrett Fail | BFR | 2004 | $665.00 | 848.40 | $549,256.75 |
| Gavin Westerman | CORP | 2004 | $665.00 | 42.00 | $27,930.00 |
| Hannah L. Field | LIT | 2004 | $745.00 | 420.10 | $312,974.50 |
| Heather R. Solow | LIT | 2004 | $665.00 | 49.80 | $33,117.00 |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Hendrik Boss | CORP | 2004 | $470.00 | 274.20 | $128,874.00 |
| Jae Fassam | TAX | 2004 | $640.00 | 482.00 | $308,480.00 |
| Jordan K. Kolar | TAX | 2004 | $665.00 | 121.50 | $77,805.00 |
| Maya M. Grant | CORP | 2004 | $665.00 | 145.70 | $96,890.50 |
| Michael Firestone | LIT | 2004 | $665.00 | 342.20 | $227,130.75 |
| Michelle F. Herman | CORP | 2004 | $665.00 | 117.50 | $78,137.50 |
| Mirella B. Hart | CORP | 2004 | $800.00 | 346.10 | $276,880.00 |
| Nick Flynn | CORP | 2004 | $800.00 | 52.90 | $42,320.00 |
| Robert C. Shmalo | CORP | 2004 | $665.00 | 288.70 | $191,985.50 |
| Robert Konig | CORP | 2004 | $595.00 | 13.90 | $8,270.50 |
| Robert S. Velevis | LIT | 2004 | $630.00 | 237.00 | $142,852.50 |
| Tarra L. Zynda | LIT | 2004 | $630.00 | 58.70 | $36,981.00 |
| Aimee N. Blanchard | LIT | 2005 | $595.00 | 179.60 | $106,862.00 |
| Amber D. Taylor | LIT | 2005 | $595.00 | 181.20 | $107,814.00 |
| Amie Tang | CORP | 2005 | $515.00 | 41.70 | $21,475.50 |
| Andrew J. Chen | CORP | 2005 | $665.00 | 159.70 | $106,200.50 |
| Barry A. Jacobs | CORP | 2005 | $630.00 | 34.70 | $21,861.00 |
| Blandine Davies | BFR | 2005 | $695.00 | 616.30 | $428,328.50 |
| Bronwen R. Pyle | CORP | 2005 | $550.00 | 73.30 | $40,315.00 |
| Daniel J. Venditti | LIT | 2005 | $630.00 | 14.40 | $9,072.00 |
| Gemma Bullmore | LIT | 2005 | $695.00 | 541.00 | $367,828.75 |
| Helen Mungeam | TAX | 2005 | $800.00 | 35.00 | $28,000.00 |
| Hyun K. Kim | CORP | 2005 | $630.00 | 371.70 | $234,171.00 |
| Hyun K. Kim | CORP | 2005 | $395.00 | 170.20 | $67,229.00 |
| Jaime S. Kaplan | LIT | 2005 | $595.00 | 75.30 | $44,803.50 |
| Julie A. Markum | CORP | 2005 | $595.00 | 221.30 | $131,673.50 |
| Kamran A. Khan | LIT | 2005 | $250.00 | 42.60 | $10,650.00 |
| Katy Byatt | CORP | 2005 | $695.00 | 28.10 | $19,529.50 |
| Kevin F. Meade | LIT | 2005 | $630.00 | 515.00 | $324,450.00 |
| Kirsten A. Noethen | CORP | 2005 | $630.00 | 178.80 | $110,659.50 |
| Mark I. Bernstein | BFR | 2005 | $630.00 | 527.40 | $331,947.00 |
| Pejman Razavilar | CORP | 2005 | $665.00 | 533.60 | $354,844.00 |
| Pejman Razavilar | CORP | 2005 | $580.00 | 67.50 | $39,150.00 |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Robert C. Roesch | LIT | 2005 | $595.00 | 89.90 | $53,490.50 |
| Samuel J. Comer | CORP | 2005 | $630.00 | 651.70 | $410,571.00 |
| Stephen G. Vander Stoep | CORP | 2005 | $595.00 | 18.60 | $11,067.00 |
| Thomas E. Feeney | CORP | 2005 | $595.00 | 7.60 | $4,522.00 |
| Alexander W. Ng | LIT | 2006 | $595.00 | 49.00 | $29,155.00 |
| Anne-Sophie Noury | BFR | 2006 | $615.00 | 6.30 | $3,874.50 |
| Benay H. Lizarazu | CORP | 2006 | $695.00 | 269.70 | $187,441.50 |
| Bryant S. York | LIT | 2006 | $595.00 | 223.80 | $133,161.00 |
| Christine T. DiGuglielmo | LIT | 2006 | $665.00 | 37.20 | $24,738.00 |
| Christopher R. Machera | CORP | 2006 | $595.00 | 5.20 | $3,094.00 |
| Damon P. Meyer | BFR | 2006 | $595.00 | 303.80 | $180,076.75 |
| David B. Laibstain | CORP | 2006 | $595.00 | 5.40 | $3,213.00 |
| Emily L. Gold | CORP | 2006 | $595.00 | 316.40 | $188,258.00 |
| Lauren Hoelzer | LIT | 2006 | $550.00 | 145.80 | $80,190.00 |
| Mark Schwed | TAX | 2006 | $630.00 | 45.10 | $28,413.00 |
| Naomi Munz | CORP | 2006 | $695.00 | 38.30 | $26,618.50 |
| Ricardo P. Pellafone | LIT | 2006 | $550.00 | 69.90 | $38,445.00 |
| Romy Richter | CORP | 2006 | $615.00 | 92.00 | $56,580.00 |
| Steven Seltzer | CORP | 2006 | $550.00 | 108.10 | $59,455.00 |
| Tomasz Kulawik | CORP | 2006 | $455.00 | 153.80 | $69,979.00 |
| Aabha Sharma | CORP | 2007 | $550.00 | 12.90 | $7,095.00 |
| Alicia L. Speake | CORP | 2007 | $575.00 | 28.00 | $16,100.00 |
| Aliza Reicher | BFR | 2007 | $515.00 | 49.20 | $25,338.00 |
| Amanjit Arora | BFR | 2007 | $550.00 | 796.00 | $437,800.00 |
| Andrew R. Fox | LIT | 2007 | $575.00 | 229.20 | $131,790.00 |
| Ariane Newell | LIT | 2007 | $515.00 | 97.60 | $50,264.00 |
| Brant D. Kuehn | LIT | 2007 | $550.00 | 10.10 | $5,555.00 |
| Calvin Y. Cheng | LIT | 2007 | $515.00 | 262.40 | $135,136.00 |
| Cassie Waduge | CORP | 2007 | $515.00 | 100.00 | $51,500.00 |
| Christine Doktor | LIT | 2007 | $515.00 | 268.00 | $138,020.00 |
| Eberhard Koch | LIT | 2007 | $400.00 | 74.00 | $29,600.00 |
| Evert J. Christensen | LIT | 2007 | $515.00 | 75.90 | $39,088.50 |
| Jessica Ryan | CORP | 2007 | $550.00 | 77.40 | $42,570.00 |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Jie Yuan | CORP | 2007 | $550.00 | 15.50 | $8,525.00 |
| John T. O'Connor | LIT | 2007 | $515.00 | 487.40 | $251,011.00 |
| Joshua Pohl | TAX | 2007 | $550.00 | 16.90 | $9,295.00 |
| Lara Kuehl | LIT | 2007 | $575.00 | 239.60 | $137,770.00 |
| Manesh J. Shah | BFR | 2007 | $550.00 | 64.70 | $35,585.00 |
| Mark B. Rosen | LIT | 2007 | $515.00 | 174.00 | $89,610.00 |
| Ramon E. Mercedes | CORP | 2007 | $515.00 | 95.50 | $49,182.50 |
| Richard O'Donoghue | LIT | 2007 | $550.00 | 185.30 | $101,915.00 |
| Riti Pancholy | LIT | 2007 | $550.00 | 11.40 | $6,270.00 |
| Sarah M. Decker | LIT | 2007 | $550.00 | 421.50 | $231,825.00 |
| Sunny Singh | BFR | 2007 | $550.00 | 793.10 | $434,830.00 |
| Teresa Brady | LIT | 2007 | $550.00 | 377.70 | $207,735.00 |
| Amanda M. Hendy | BFR | 2008 | $455.00 | 712.30 | $323,891.75 |
| Brandon E. Cherry | CORP | 2008 | $550.00 | 28.00 | $15,400.00 |
| Brandon E. Miller | LIT | 2008 | $515.00 | 280.40 | $144,406.00 |
| Brennan Hackett | BFR | 2008 | $515.00 | 575.70 | $288,580.25 |
| Casey A. Burton | LIT | 2008 | $455.00 | 72.40 | $32,942.00 |
| Cristina Iliescu | CORP | 2008 | $365.00 | 310.00 | $113,150.00 |
| Elizabeth R. Todd | CORP | 2008 | $510.00 | 36.90 | $18,819.00 |
| Emily L. Katz | LIT | 2008 | $515.00 | 89.60 | $46,144.00 |
| Eoghan P. Keenan | CORP | 2008 | $515.00 | 16.80 | $8,652.00 |
| Frank Martire | CORP | 2008 | $515.00 | 37.00 | $19,055.00 |
| Jakub Biernacki | CORP | 2008 | $515.00 | 109.00 | $56,135.00 |
| Jennifer D. Larson | LIT | 2008 | $455.00 | 767.60 | $349,258.00 |
| John A. Goldfinch | CORP | 2008 | $640.00 | 41.90 | $26,816.00 |
| Joonbeom Pae | TAX | 2008 | $515.00 | 8.00 | $4,120.00 |
| Joseph Abadi | CORP | 2008 | $515.00 | 136.40 | $70,246.00 |
| Joyce Du | CORP | 2008 | $300.00 | 10.10 | $3,030.00 |
| June K. Lee | LIT | 2008 | $515.00 | 541.30 | $271,199.00 |
| Kate McGovern | LIT | 2008 | $250.00 | 581.90 | $145,475.00 |
| Kimberleigh Scott | CORP | 2008 | $510.00 | 52.70 | $26,877.00 |
| Kristen L. Depowski | CORP | 2008 | $455.00 | 277.30 | $126,171.50 |
| Lauren L. Zerbinopoulos | LIT | 2008 | $455.00 | 467.30 | $212,621.50 |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Layne S. Behrens | LIT | 2008 | $515.00 | 85.20 | $43,878.00 |
| Maurice Horwitz | BFR | 2008 | $515.00 | 596.50 | $306,682.50 |
| Mavnick B. Nerwal | TAX | 2008 | $510.00 | 5.90 | $3,009.00 |
| Melissa Colon-Bosolet | LIT | 2008 | $515.00 | 7.80 | $4,017.00 |
| Philip Ratner | CORP | 2008 | $515.00 | 49.80 | $25,647.00 |
| Qiong Sun | CORP | 2008 | $550.00 | 121.40 | $66,770.00 |
| RaShawn Woodley | LIT | 2008 | $455.00 | 35.50 | $16,152.50 |
| Richard A. DeCicca | LIT | 2008 | $515.00 | 140.50 | $72,357.50 |
| Richard R. Cook | LIT | 2008 | $515.00 | 91.90 | $47,328.50 |
| Stacey M. Mayer | LIT | 2008 | $455.00 | 204.20 | $92,911.00 |
| Steven B. Stein | CORP | 2008 | $515.00 | 15.40 | $7,931.00 |
| Sujan H. Trivedi | LIT | 2008 | $550.00 | 535.90 | $294,277.50 |
| Sunny J. Thompson | LIT | 2008 | $455.00 | 325.50 | $148,102.50 |
| Susan Fiore | CORP | 2008 | $515.00 | 100.20 | $51,603.00 |
| Thomas R. Lloyd-Jones | TAX | 2008 | $665.00 | 7.70 | $4,427.50 |
| Vigdis Bronder | CORP | 2008 | $515.00 | 33.40 | $17,201.00 |
| Xiaofeng S. Da | CORP | 2008 | $455.00 | 12.70 | $5,778.50 |
| Young Lee | CORP | 2008 | $455.00 | 11.90 | $5,414.50 |
| Adam B. Banks | LIT | 2009 | $455.00 | 174.60 | $79,443.00 |
| Adam J. Feit | CORP | 2009 | $455.00 | 12.60 | $5,733.00 |
| Alexander R. Liroff | CORP | 2009 | $395.00 | 308.50 | $121,857.50 |
| Alicia F. Castro | LIT | 2009 | $395.00 | 128.00 | $50,560.00 |
| Allen T. Yancy | LIT | 2009 | $550.00 | 425.70 | $227,150.00 |
| Allison J. Becker | LIT | 2009 | $455.00 | 67.40 | $30,667.00 |
| Ausra O. Pumputis | LIT | 2009 | $455.00 | 18.00 | $8,190.00 |
| Bambo Obaro | LIT | 2009 | $395.00 | 132.00 | $52,140.00 |
| Brian C. Drozda | CORP | 2009 | $455.00 | 173.60 | $78,988.00 |
| Brianna N. Benfield | LIT | 2009 | $455.00 | 51.60 | $23,478.00 |
| Caroline K. Simons | LIT | 2009 | $455.00 | 404.30 | $182,455.00 |
| Cassie Kimmelman | CORP | 2009 | $455.00 | 55.10 | $25,070.50 |
| Cheri Veit | LIT | 2009 | $455.00 | 6.60 | $3,003.00 |
| Christopher T. Luise | LIT | 2009 | $455.00 | 214.10 | $97,415.50 |
| Consuelo A. Kendall | LIT | 2009 | $455.00 | 32.30 | $14,696.50 |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Daniel S. Klein | LIT | 2009 | $515.00 | 65.60 | $33,784.00 |
| David A. Cohen | CORP | 2009 | $455.00 | 119.40 | $54,327.00 |
| David Keller | CORP | 2009 | $395.00 | 10.80 | $4,266.00 |
| David P. Byeff | LIT | 2009 | $455.00 | 196.00 | $89,180.00 |
| Edward Wu | BFR | 2009 | $395.00 | 309.80 | $122,371.00 |
| Eileen Hren | LIT | 2009 | $395.00 | 308.60 | $121,897.00 |
| Elizabeth M. Velez | LIT | 2009 | $395.00 | 185.30 | $73,193.50 |
| Ellie Boragine | LIT | 2009 | $455.00 | 10.70 | $4,868.50 |
| Eric Kasenetz | BFR | 2009 | $395.00 | 490.50 | $193,747.50 |
| Erica Rutner | LIT | 2009 | $395.00 | 585.00 | $228,902.50 |
| Evgeny Zborovsky | CORP | 2009 | $455.00 | 52.80 | $24,024.00 |
| Hongan N. Tran | LIT | 2009 | $395.00 | 119.70 | $47,281.50 |
| Irini Kalamakis | CORP | 2009 | $515.00 | 13.90 | $7,158.50 |
| Jannelle M. Seales | CORP | 2009 | $515.00 | 66.00 | $33,990.00 |
| Jenna E. Schaeffer | CORP | 2009 | $455.00 | 19.50 | $8,872.50 |
| Jennifer Cheng | CORP | 2009 | $515.00 | 17.50 | $9,012.50 |
| Jennifer M. Nelsen | LIT | 2009 | $515.00 | 375.60 | $193,434.00 |
| Jennifer Sapp | BFR | 2009 | $455.00 | 320.50 | $145,827.50 |
| Justin L. Constant | LIT | 2009 | $395.00 | 18.10 | $7,149.50 |
| Kristen M. Echemendia | LIT | 2009 | $455.00 | 93.00 | $42,315.00 |
| Lee J. Goldberg | BFR | 2009 | $455.00 | 656.30 | $298,389.00 |
| Lisa Bourque | LIT | 2009 | $455.00 | 45.90 | $20,884.50 |
| Mariano Soto | CORP | 2009 | $575.00 | 39.80 | $22,885.00 |
| Matthew Baudler | LIT | 2009 | $455.00 | 16.70 | $7,598.50 |
| Matthew Howatt | LIT | 2009 | $455.00 | 72.90 | $33,169.50 |
| Matthew M. Spritz | LIT | 2009 | $455.00 | 254.50 | $115,797.50 |
| Melanie Conroy | LIT | 2009 | $455.00 | 43.20 | $19,656.00 |
| Nadya Salcedo | LIT | 2009 | $455.00 | 60.20 | $27,391.00 |
| Patricia Astorga | LIT | 2009 | $455.00 | 326.10 | $148,375.50 |
| Peter J. Ibrahim | BFR | 2009 | $455.00 | 6.30 | $2,866.50 |
| Peter J. McRae | CORP | 2009 | $455.00 | 105.40 | $47,957.00 |
| Rodney Miller | LIT | 2009 | $395.00 | 76.90 | $30,375.50 |
| Sandra Y. Fusco | LIT | 2009 | $395.00 | 31.90 | $12,600.50 |

| NAME OF PROFESSIONAL ASSOCIATES: | DEPARTMENT* | YEAR ADMITTED | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|---|
| Stefan Saerbeck | LIT | 2009 | $365.00 | 9.80 | $3,577.00 |
| Tanya Forde-Chandler | CORP | 2009 | $455.00 | 10.10 | $4,595.50 |
| Tashanna B. Pearson | LIT | 2009 | $455.00 | 29.70 | $13,513.50 |
| Thomas M. Kretchmar | CORP | 2009 | $455.00 | 31.00 | $14,105.00 |
| Tracy K. Bookspan | CORP | 2009 | $455.00 | 93.00 | $42,315.00 |
| U-Hyeon Kwon | CORP | 2009 | $550.00 | 55.00 | $30,250.00 |
| William J. Carter | CORP | 2009 | $455.00 | 322.00 | $146,510.00 |
| Zaw Win | BFR | 2009 | $455.00 | 814.20 | $369,687.50 |
| Zohar R. Levy | LIT | 2009 | $455.00 | 145.40 | $66,157.00 |
| Anne K. Castellani | LIT | 2009 | $455.00 | 27.90 | $12,694.50 |
| Abeer Garousha | BFR | 2010 | $455.00 | 267.70 | $121,803.50 |
| Ajit Gokhale | TAX | 2010 | $455.00 | 201.60 | $91,728.00 |
| Andrea Y. Loh | LIT | 2010 | $395.00 | 40.80 | $16,116.00 |
| Brett A. Bush | CORP | 2010 | $455.00 | 67.50 | $30,712.50 |
| Candace Arthur | BFR | 2010 | $395.00 | 617.50 | $243,912.50 |
| Chelsea Rosen | BFR | 2010 | $395.00 | 143.60 | $56,722.00 |
| Elana R. Pollak | LIT | 2010 | $455.00 | 666.50 | $303,257.50 |
| Erik Encarnacion | LIT | 2010 | $550.00 | 32.30 | $17,765.00 |
| Erika del Nido | BFR | 2010 | $395.00 | 657.20 | $259,594.00 |
| Jessica Costa | LIT | 2010 | $395.00 | 419.50 | $165,702.50 |
| Justin C. Lee | CORP | 2010 | $395.00 | 255.10 | $100,764.50 |
| Justin D. Lee | CORP | 2010 | $395.00 | 27.40 | $10,823.00 |
| Justin D. Yi | CORP | 2010 | $395.00 | 27.50 | $10,862.50 |
| Neil H. Vaishnav | LIT | 2010 | $395.00 | 46.00 | $18,170.00 |
| Peter J. Kee | LIT | 2010 | $395.00 | 164.00 | $64,780.00 |
| Sam Limmer | CORP | 2010 | $395.00 | 161.90 | $63,950.50 |
| Shrutee Raina | LIT | 2010 | $395.00 | 303.50 | $119,882.50 |
| Tracy Burgess | CORP | 2010 | $395.00 | 62.70 | $24,766.50 |
| **TOTAL** | | | | **47,159.20** | **$25,412,542.25** |

| NAME OF PROFESSIONAL<br><br>Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| David Brangam | TAX | $290.00 | 164.30 | $47,342.50 |
| Helen Jones | LIT | $250.00 | 6.20 | $1,512.50 |
| James Nierinck | LIT | $250.00 | 243.10 | $60,075.00 |
| Luwisha Neskovic | LIT | $295.00 | 20.60 | $5,150.00 |
| Rachel Ponnusamy | CORP | $250.00 | 200.90 | $50,012.50 |
| Chatterton Julian | LIT | $290.00 | 5.50 | $1,595.00 |
| Christine Gurney | CORP | $290.00 | 78.70 | $22,823.00 |
| David Elphinstone | CORP | $290.00 | 241.60 | $70,064.00 |
| Emily Wapples | CORP | $290.00 | 45.70 | 13,253.00 |
| Christine Shrestha | CORP | $275.00 | 54.10 | $14,877.50 |
| Christopher A. Stauble | BFR | $275.00 | 584.80 | $160,820.00 |
| Kathleen Lee | BFR | $275.00 | 28.10 | $7,727.50 |
| Suzanne Inglis | LIT | $275.00 | 123.10 | $33,852.50 |
| Suzin I. Metz | CORP | $275.00 | 6.80 | $1,870.00 |
| Simran Sandhu | LIT | $270.00 | 31.00 | $8,221.50 |
| Christine Doyle | LIT | $260.00 | 313.00 | $81,380.00 |
| Deidre E. Fuller | LIT | $260.00 | 32.30 | $8,398.00 |
| John A. Ellsworth | CORP | $260.00 | 118.10 | $30,706.00 |
| Jorge Martorell | LSS | $260.00 | 9.00 | $2,340.00 |
| Leason Hoilett | LIT | $260.00 | 42.90 | $11,154.00 |
| Yvonne Washington | LIT | $260.00 | 8.40 | $2,184.00 |
| Emma Robinson | CORP | $255.00 | 51.00 | $12,750.00 |
| Hayley Lund | BFR | $255.00 | 36.50 | $9,125.00 |
| Oliver Prakash-Jenkins | LIT | $255.00 | 32.10 | $7,450.00 |
| Seunghi Ha | LIT | $255.00 | 78.80 | $19,700.00 |
| Erica Rees | CORP | $250.00 | 29.00 | $7,250.00 |
| Lewis Blakey | CORP | $250.00 | 246.10 | $61,525.00 |
| Nancy P. Cade | LIT | $250.00 | 10.20 | $2,550.00 |
| Victoria Burton | CORP | $250.00 | 38.10 | $9,525.00 |
| Barbara Frayle | CORP | $240.00 | 264.50 | $63,480.00 |

* BFR – Business Finance & Restructuring,  C – Corporate,  L – Litigation,  MC –  Managing Clerk,  LSS – Litigation Support Services,  X – Library

| NAME OF PROFESSIONAL<br><br>Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Camille A. George | LIT | $240.00 | 191.90 | $46,056.00 |
| Crystal McCray | LIT | $240.00 | 100.10 | $24,024.00 |
| Flinn Deborah C. | LIT | $240.00 | 12.10 | $2,904.00 |
| Karen A. Joffrion | CORP | $240.00 | 8.20 | $1,968.00 |
| Cheryl Eng-Bendel | LSS | $235.00 | 34.10 | $8,013.50 |
| Kristine Yoda | LSS | $235.00 | 48.40 | $11,374.00 |
| Laura Jewett | LSS | $235.00 | 7.50 | $1,762.50 |
| Cory M. Reynolds | LSS | $230.00 | 42.90 | $9,867.00 |
| Lance Y. Shiroma | CORP | $230.00 | 13.40 | $3,082.00 |
| Sarah B. Roberts | BFR | $230.00 | 123.40 | $28,382.00 |
| Daniel Decker | LIT | $225.00 | 13.10 | $2,947.50 |
| Elizabeth E. Melson | LIT | $225.00 | 11.00 | $2,475.00 |
| Francheska Marquez | CORP | $225.00 | 28.10 | $6,322.50 |
| Karen M. Roche | LIT | $225.00 | 209.50 | $47,137.50 |
| Lori A. Seavey | BFR | $225.00 | 180.50 | $40,612.50 |
| Odalys C. Smith | LIT | $225.00 | 194.60 | $43,785.00 |
| Thai Dang | LSS | $220.00 | 7.40 | $1,628.00 |
| Artur Robin | LSS | $215.00 | 25.80 | $5,547.00 |
| Christine Guthrie | CORP | $215.00 | 11.10 | $2,386.50 |
| Doe Y. Oh | CORP | $215.00 | 15.40 | $3,311.00 |
| Geetinder Gujral | LSS | $215.00 | 17.00 | $3,655.00 |
| George Scopas | LSS | $215.00 | 16.00 | $3,440.00 |
| Gillad Matiteyahu | BFR | $215.00 | 105.90 | $22,768.50 |
| Herbert Chan | LIT | $215.00 | 405.70 | $87,225.50 |
| MaryAnne Bollen | LSS | $215.00 | 30.70 | $6,600.50 |
| Michael Quarry | LSS | $215.00 | 33.70 | $7,245.50 |
| Peter Nudelman | LSS | $215.00 | 11.10 | $2,386.50 |
| Scott Larangeira | LSS | $215.00 | 103.40 | $22,231.00 |
| Tashan Q. Reid | CORP | $215.00 | 20.70 | $4,450.50 |
| Victoria A. Bennett | LIT | $215.00 | 9.50 | $2,042.50 |
| William H. Gordon | LIT | $215.00 | 62.60 | $13,459.00 |

| NAME OF PROFESSIONAL<br><br>Paralegals,<br>Clerks, Library Staff and<br>Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Yovanka Malkovich | LIT | $215.00 | 34.00 | $7,310.00 |
| Lara Calabrese | LSS | $210.00 | 49.70 | $10,437.00 |
| Lauren C. Haiken | LSS | $210.00 | 9.40 | $1,974.00 |
| Martina Boehmfeldt | CORP | $210.00 | 13.90 | $2,919.00 |
| Michael Brien | TAX | $210.00 | 14.00 | $2,940.00 |
| Nicole K. Aliseo | BFR | $210.00 | 110.20 | $23,142.00 |
| Sarah Wade | CORP | $210.00 | 21.40 | $4,494.00 |
| Jorge A. Romero | LSS | $205.00 | 9.40 | $1,927.00 |
| Ann M Scarpa | LIT | $200.00 | 200.80 | $40,160.00 |
| Bill K. Chan | CORP | $200.00 | 31.10 | $6,220.00 |
| Duke Amponsah | BFR | $200.00 | 10.00 | $2,000.00 |
| Julie B. Mukendi | LIT | $200.00 | 12.00 | $2,400.00 |
| Kaitlin C. Prindle | BFR | $200.00 | 34.10 | $6,820.00 |
| Pauline Justice | LIT | $200.00 | 8.30 | $1,660.00 |
| Sean P. Devaney | CORP | $200.00 | 14.60 | $2,920.00 |
| Shelley J. Fortune | LIT | $200.00 | 5.50 | $1,100.00 |
| Yashomati B. Koul | BFR | $200.00 | 179.70 | $35,940.00 |
| Daniel F. McLaughlin | LIB | $195.00 | 8.20 | $1,599.00 |
| Merill Losick | LIB | $195.00 | 8.00 | $1,560.00 |
| Philip Barahona | LIB | $195.00 | 8.20 | $1,599.00 |
| Francene S. Castillero | LIT | $190.00 | 10.30 | $1,957.00 |
| Joseph Hsu | LIT | $190.00 | 24.60 | $4,674.00 |
| Justin Benjamin | LSS | $190.00 | 50.70 | $9,633.00 |
| Michael P. Welby | LSS | $185.00 | 36.40 | $6,734.00 |
| Richard A. Payne | LIT | $185.00 | 115.90 | $21,441.50 |
| Robert Condon | LIT | $185.00 | 274.70 | $50,717.75 |
| Amanda B. Collier | CORP | $180.00 | 5.30 | $954.00 |
| Andrea Wilmer | BFR | $180.00 | 27.00 | $4,500.00 |
| Donald Etienne | BFR | $180.00 | 292.00 | $50,661.00 |
| Genna D. Grossman | CORP | $180.00 | 164.30 | $29,574.00 |
| Jessica Choi | LIT | $180.00 | 13.30 | $2,394.00 |

| NAME OF PROFESSIONAL<br><br>Paralegals, Clerks, Library Staff and Other Non-Legal Staff | DEPARTMENT* | HOURLY RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|---|
| Katharine L. Steigerwald | CORP | $180.00 | 26.80 | $4,824.00 |
| LaSonya R. Stewart | LIT | $180.00 | 13.10 | $2,358.00 |
| Mehta Mona V. | LIT | $180.00 | 15.50 | $2,790.00 |
| Michael Mitrayon | LIT | $180.00 | 17.90 | $3,222.00 |
| Nicole Swaney | LIT | $180.00 | 101.70 | $18,306.00 |
| Sabrina M. Ialuna | LIT | $180.00 | 58.00 | $10,440.00 |
| Mark Ribaudo | MC | $170.00 | 14.40 | $2,448.00 |
| Andrew H. Lyon | BFR | $160.00 | 269.80 | $43,168.00 |
| Andrew Ruoss | LIT | $160.00 | 6.60 | $1,056.00 |
| Antoine Cluzel | CORP | $160.00 | 87.10 | $13,936.00 |
| Caitlin M. McGrath | LIT | $160.00 | 31.50 | $5,040.00 |
| Courtney R. Buchanon | CORP | $160.00 | 16.80 | $2,688.00 |
| Danielle Z. Sawaya | CORP | $160.00 | 56.60 | $9,056.00 |
| Esther M. Englander | LIT | $160.00 | 24.70 | $3,952.00 |
| Jeffrey A. Klein | LIT | $160.00 | 220.20 | $35,232.00 |
| John Badman | CORP | $160.00 | 7.50 | $1,200.00 |
| Matthew Schoenfeld | BFR | $160.00 | 605.90 | $96,944.00 |
| Meredith M. Hassett | LIT | $160.00 | 5.20 | $832.00 |
| Priya K. Ghodasara | BFR | $160.00 | 92.90 | $14,864.00 |
| R.T. Winston Berkman | CORP | $160.00 | 25.80 | $4,128.00 |
| Rachel Shapiro | BFR | $160.00 | 99.90 | $15,984.00 |
| Sherri Bell | LIT | $160.00 | 111.90 | $17,904.00 |
| Trisha Pande | LIT | $160.00 | 33.00 | $5,280.00 |
| Almir Lucevic | MC | $150.00 | 8.00 | $1,200.00 |
| Deidra M. Mulligan | LIB | $140.00 | 8.40 | $1,176.00 |
| Luis Cruz | LIB | $135.00 | 8.30 | $1,120.50 |
| Maximiliano Greco | LIB | $85.00 | 11.80 | $1,003.00 |
| **TOTAL** | | | **9,015.60** | **$1,960,316.25** |

| PROFESSIONALS<br><br>TOTALS: | BLENDED RATE | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|---|
| **Partners and Of Counsel** | $874.48 | 17,443.10 | $15,253,742.00 |
| **Associates** | $538.86 | 47,159.20 | $25,412,542.25 |
| **Paraprofessionals** | $217.43 | 9,015.60 | $1,960,316.25 |
| **Blended Attorney Rate** | **$629.48** | | |
| **Total Fees Incurred** | | **73,617.90** | **$42,626,600.50** |

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                                                        :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    **08-13555 (JMP)**
:
**Debtors.**                                :    **(Jointly Administered)**
:
-------------------------------------------------------------------x

**SIXTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP,
AS ATTORNEYS FOR THE DEBTORS, FOR INTERIM ALLOWANCE
OF COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED FROM JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Weil, Gotshal & Manges LLP ("Weil"), attorneys for Lehman Brothers Holdings

Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors in

possession (together with LBHI, the "Debtors" and, collectively with their non-debtor affiliates,

"Lehman"), for its sixth application, pursuant to sections 330(a) and 331 of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 2016 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for the interim allowance of compensation for professional

services performed by Weil for the period commencing June 1, 2010, through and including

September 30, 2010 (the "Sixth Compensation Period"), and for reimbursement of its actual and

necessary expenses incurred during the Sixth Compensation Period, respectfully represents:

## PRELIMINARY STATEMENT

1.        The significant resources Weil dedicated during the Sixth Compensation

Period yielded tremendous recoveries for the Debtors' estates, preserved the value of some of the

Debtors' most substantial remaining assets, and meaningfully reduced the number and aggregate

value of claims asserted in these cases.  Examples of the services performed and benefits

achieved include:

- Weil negotiated and obtained Court approval of a global settlement agreement with Société Générale, NewYork Branch ("SG") relating to swap transactions with Libra CDO Limited ("Libra") and MKP Vela CDO, Ltd ("Vela").  The settlement enables Lehman Brothers Special Financing Inc. ("LBSF") to recover at least $445 million ($370 million of which has already been received) and maximizes LBSF's opportunity recover up to an additional $72 million.

- Weil negotiated settlements with approximately 13 counterparties in separate alternative dispute resolution ("ADR") proceedings, recovering a total of $80 million of new dollars for the Debtors' estates and creditors, pursuant to an order Weil obtained approving ADR procedures for the Debtors' affirmative claims under their more than 10,000 derivatives contracts (the "Derivatives Contracts").  Through the Sixth Fee Period, Weil's services in connection with the ADR procedures brought in more than $213 million for the Debtors' estates and negotiated settlements with 37 counterparties in ADR matters.

- Weil's multi-disciplinary real estate team continued to devote substantial resources to preserving, restructuring, and disposing of the Debtors' billions of dollars of residential and commercial real estate assets.  This effort required Weil involvement in well over 50 different projects and resulted in the consummation of several significant transactions, as described below in greater detail.

- Weil negotiated and obtained Court approval of global settlement agreements with its regulated subsidiaries, Woodlands Commercial Bank and Aurora Bank FSB (together, the "Banks").  As a result, the Banks were substantially recapitalized and certain significant regulatory restrictions on both institutions' operations were modified.  LBHI's opportunity to recover the Banks' substantial value for the benefit of its creditors was preserved.  The settlements enabled LBHI to avoid approximately $4.7 billion in losses, including those from significant unsecured priority claims that could have been asserted against LBHI.

- Working with the Debtors and the professionals of the Official Committee of Unsecured Creditors (the "Creditors' Committee"), Weil investigated thousands of transactions to

determine whether any payments or transfers of the Debtors' interests in property may be avoided under the Bankruptcy Code.  Weil took necessary action to preserve causes of action of the Debtors by preparing and filing more than 45 adversary proceeding involving more than 250 transactions and securing tolling agreements with respect to more than 3,800 parties, including the vast majority of the Debtors' domestic and foreign affiliates.

- Weil obtained Court orders granting 24 omnibus objections to claims, reducing or disallowing and expunging 4,749 proofs of claim that asserted more than $82 billion (plus unliquidated amounts) against the Debtors.  Weil prepared and filed 38 additional omnibus objections seeking to expunge over 9,000 other claims that asserted more than $45 billion (plus unliquidated amounts) against the Debtors.

2.      As the Debtors' lead bankruptcy attorneys, Weil was responsible for the daily administration of these cases.  During the Sixth Compensation Period, Weil was required to review and in many instances respond to the more than 2,492 motions, notices, applications, objections, briefs, orders, and other pleadings filed in the Debtors' chapter 11 cases to ensure that the interests of the Debtors were adequately represented.  In addition, two new adversary proceedings were commenced by third parties against the Debtors, increasing the total number of adversary proceedings pending during the Sixth Compensation Period to 94 cases (the "Adversary Proceedings").  Weil drafted and filed over 175 motions, objections, replies, applications, stipulations or other pleadings on behalf of the Debtors.  Each of these filings and the 427 filings that Weil reviewed in the SIPA Proceeding (defined below) required careful consideration and substantial resources from Weil.

3.      Weil's services advanced the Debtors' prosecution of these chapter 11 cases.  Having worked with the Debtors in prior compensation periods to formulate, draft and file a chapter 11 plan (the "Plan") and comprehensive disclosure statement ("Disclosure Statement"), Weil dedicated significant resources in the Sixth Compensation Period to assist the Debtors in their efforts to achieve a consensual confirmation process.  In that regard, Weil participated in numerous meetings among the Debtors, the Creditors' Committee and its

professionals, and the Debtors' various domestic creditor constituencies, including ad hoc groups as well as individual creditors. Weil also advised the Debtors throughout ongoing negotiations with their foreign affiliates on potential bilateral compromises. Each negotiation is unique. The compromises vary in their complexity, but are all are intended to resolve issues among the Debtors and their affiliates relating to, among other things, the risk of substantive consolidation and the existence, enforceability, amount, and priority of over $300 billion in asserted intercompany and guarantee claims. As part of the negotiation process, Weil's New York, London, and German offices provided coordinated advice on the overall structure of these complex and interrelated settlements and their relationship to both the Debtors' chapter 11 cases and the affiliates' relevant foreign proceedings. Weil attorneys drafted and advised on the negotiation of thirteen separate term sheets and prepared preliminary drafts of plan-related agreements between the Debtors and certain of their foreign affiliates.

4.      Weil's multidisciplinary teams supported the day-to-day management and strategic long-term administration of the Debtors' diverse assets around the world. Members and associates in Weil's Business Finance & Restructuring, Corporate, Litigation, and Tax Departments worked closely with the Debtors' Real Estate, Private Equity and Principal Investment, Derivatives, Bank, and Loan and Investment teams on transactions across North and South America, Europe and Asia.

5.      Since the commencement of these cases, Weil has coordinated its efforts with the Alvarez and Marsal North America LLC ("A&M"), the Debtors' restructuring advisors, the professionals of the Creditors' Committee, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), the SIPA Trustee (defined below), the Examiner (defined below), the foreign administrators appointed to administer the insolvency

proceedings of the Debtors' foreign affiliates, and a variety of other constituents to ensure that the interests of the Debtors were adequately represented and all of the Debtors' constituents were apprised of major developments.

6.      Weil's efforts to advise and represent the Debtors in all facets of these cases and the affairs of the Lehman enterprise during the Sixth Compensation Period were actual and necessary and of substantial benefit to the estates and their creditors.  In the perspective of the complexity and scale of these cases, Weil's charges for professional services performed and expenses incurred are reasonable under the applicable standards.  Weil respectfully requests that the Court grant this application and allow interim compensation for professional services performed and reimbursement for expenses incurred during the Sixth Compensation Period as requested.

## BACKGROUND

7.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      On October 8, 2008, the Debtors filed an application to employ Weil as their attorneys.  No objections were filed to Weil's retention and, pursuant to an order, dated November 21, 2008 [Docket No. 1660], the Debtors were authorized to retain Weil as their attorneys to render legal services in the prosecution of their chapter 11 cases.  Weil filed affidavits in support of its retention on March 4, 2009 [Docket No. 2985], August 12, 2009

[Docket No. 4779], March 30, 2010 [Docket No. 7904], July 21, 2010 [Docket No. 10358],

September 20, 2010 [Docket No. 11466], and October 26, 2010 [Docket No. 12302].

9.    On September 17, 2008, the U.S. Trustee appointed the Creditors'

Committee pursuant to section 1102 of the Bankruptcy Code.

10.    On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970, as amended ("SIPA") with respect to Lehman

Brothers Inc. ("LBI"). James W. Giddens, Esq. is the trustee (the "SIPA Trustee") appointed to

administer LBI's estate under the SIPA (the "SIPA Proceeding").

11.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner (the "Examiner") and by order, dated January 20, 2009, the Court approved the U.S.

Trustee's appointment of the Examiner. On March 11, 2010, the Examiner issued his report

pursuant to section 1106(b) of the Bankruptcy Code. On July 13, 2010, the Court entered an

order discharging the Examiner and his professionals.

12.    On May 26, 2009, the Court entered an order appointing a fee committee

(the "Fee Committee") and approving a fee protocol (the "Fee Protocol") to make

recommendations with respect to fees and expenses of retained professionals in these cases.

13.    Prior to the Sixth Compensation Period, Weil filed the following

applications for interim allowance of compensation for professional services rendered and

reimbursement of actual and necessary expenses and the Court entered the orders with respect

thereto:

| Applications | Orders |
| --- | --- |
| April 13, 2009 [Docket No. 3343] | August 13, 2009 [Docket No. 4795] |
| August 14, 2009 [Docket No. 4825] | April 9, 2010 [Docket No. 8205]<br>April 9, 2010[Docket No. 8207] |
| December 14, 2009 [Docket No. 6205] | April 9, 2010[Docket No. 8218] |
| April 16, 2010 [Docket No. 8395] | September 7, 2010 [Docket No. 11186] |

| Applications | Orders |
|---|---|
| August 16, 2010 [Docket No. 10791] | Pending |

14.    The Debtors have advised Weil that all quarterly fees due to the U.S.

Trustee during the Sixth Compensation Period have been paid.

15.    Relevant to the Sixth Compensation Period, the Debtors filed monthly

operating reports on July 21, 2010 [Docket No. 10345], August 13, 2010 [Docket No. 10745],

September 17, 2010 [Docket No. 11444], and October 18, 2010 [Docket No. 12082].

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

16.    Weil seeks allowance of interim compensation for professional services

performed during the Sixth Compensation Period in the amount of $42,626,600.50 and for

reimbursement of expenses incurred in connection with the performance of such services in the

amount of $1,043,188.95.  These amounts include certain fees and expenses incurred prior to the

Sixth Compensation Period which were to be, but were not, paid by third parties for which the

Debtors are primarily responsible.[1]  During the Sixth Compensation Period, Weil attorneys and

paraprofessionals expended a total of 73,617.90 hours in connection with the necessary services

performed.  Of the aggregate time expended, 17,443.10 recorded hours were expended by

---

[1] As described in Weil's prior applications, in certain instances, Lehman may be entitled to reimbursement from third parties, or third parties may be obligated to pay Lehman's professionals directly, for legal services provided and expenses incurred in connection therewith.  For example, in many instances, borrowers may be responsible for payment of Lehman's costs and expenses in connection with Lehman's role as a lender or agent.  After consultation and upon agreement with the U.S. Trustee, Weil endeavored to segregate legal fees and expenses that may be subject to payment by third parties, and such fees and expenses are not contained within this Application.  Based upon the agreement with the U.S. Trustee, for each matter in which the Debtors and/or Lehman may be entitled to reimbursement from third parties, Weil has opened, or will open, a new billing account.  Weil has sought and will seek payment from third parties for all applicable fees and expenses charged to these accounts, which will not be subject to any holdback.  Weil has not, and is not required to submit monthly fee statements to the Debtors or Lehman for such matters unless and until such third-parties fail to pay the amounts due, at which point Weil would seek payment from the Debtors, but will reflect amounts charged and payments received on account of such matters, in summary fashion, in interim fee applications.  References to the Sixth Compensation Period made herein shall include prior periods in which Weil incurred fees and expenses with respect to which Weil has not previously sought Court approval.

partners and counsel of Weil, 47,159.20 recorded hours were expended by associates, and

9,015.60 recorded hours were expended by paraprofessionals of Weil.  To the extent that time or

disbursement charges for services performed or disbursements incurred relate to the Sixth

Compensation Period, but are processed subsequent to the preparation of this application, Weil

reserves the right to request additional compensation for such services and reimbursement of

such expenses in a future application.

       17.     This application has been prepared in accordance with the Guidelines for

Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases

adopted by the Court on June 20, 1991 and the Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on

April 19, 1995 (together the "Local Guidelines"), the United States Trustee Guidelines for

Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 adopted on January 30, 1996 (the "UST Guidelines"), and the Second Amended

Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a)

Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of

Professionals [Docket No. 3102] (the "Administrative Order," and together with the Local

Guidelines and the UST Guidelines, the "Guidelines").  Further, Weil has endeavored to comply

with the directions provided by the Fee Committee made in connection with Weil's prior

applications.  Pursuant to the Fee Protocol, the Debtors will provide a copy of this application to

the Fee Committee.

       18.     The fees charged by Weil in these cases are billed in accordance with

Weil's existing billing rates and procedures in effect during the Sixth Compensation Period.  The

rates Weil charges for the services rendered by its professionals and paraprofessionals in these

chapter 11 cases are the same rates Weil charges for professional and paraprofessional services rendered in comparable bankruptcy and non-bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and non-bankruptcy cases in a competitive national legal market.

19.    In the regular course of its business Weil adjusts its billing rates from time to time. The customary hourly rates in Weil's domestic offices during the Sixth Compensation Period were $700 to $990 for members and counsel, $395 to $695 for associates[2] and $160 to $295 for paraprofessionals. Hourly rates in Weil's foreign offices, applicable in these chapter 11 cases, subject to change from time to time, are $745 to $1,000[3] for members, and $365 to $840 for associates.

20.    During the Sixth Compensation Period, Weil billed the Debtors for time expended by attorneys based on hourly rates ranging from $395 to $990 per hour for domestic attorneys and $365 to $1,000 for foreign attorneys. Allowance of compensation in the amount requested would result in a blended hourly billing rate of approximately $629.48 (based on 64,602.30 recorded hours for attorneys at Weil's regular billing rates in effect at the time of the performance of services).

21.    Weil consistently monitors its charges and expenses before and after the submission of monthly fee statements for possible errors or charges that might be inappropriate or otherwise should be reduced. As a result, prior and subsequent to the submission of monthly fee statements for the Sixth Compensation Period, Weil reduced its charges by $539,482.50 and its expenses by $178,805.68, for a total of $718,288.18 in voluntary reductions. Weil will

---

[2] Exclusive of hourly rates for staff attorneys and contract attorneys.

[3] The normal billing rate for certain members in Weil's foreign offices exceeds $1,000, but has been voluntarily capped by Weil at $1,000 for these Chapter 11 Cases.

continue to diligently monitor its charges and expenses and, where appropriate, make appropriate reductions. As of the date hereof, Weil has voluntarily reduced its fees and expenses by $4,928,216.94 in aggregate since the Commencement Date.

22.    In accordance with the Administrative Order, to date, Weil received payments totaling $26,801,894.43 for the Sixth Compensation Period, consisting of $26,002,705.40, representing 80% of the fees, and $799,189.03, representing 100% of the expenses, invoiced for June, July, and August 2010. Weil has not yet received payment for either the fees or the expenses invoiced for September 2010.

23.    There is no agreement or understanding between Weil and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases. Except as explained immediately below, during the Sixth Compensation Period, other than pursuant to the Administrative Order, Weil received no payment and no promises of payment from any source for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

24.    During the Sixth Compensation Period, Weil has received payment in the aggregate of approximately $1,836,430.66, from third parties related to representations of Lehman entities (as described in footnote 1) listed on Exhibit A hereto. Weil may have incurred, but not yet received payment from third parties for additional fees and expenses in connection with these and other matters. To the extent any third party fails to reimburse Weil for such fees or expenses, however, Weil is authorized to seek reimbursement from the Debtors or Lehman in accordance with the Administrative Order.[4]

---

[4] As noted in footnote 1 above, based upon an agreement with the U.S. Trustee, Weil is not required to maintain or provide detailed task codes or billing increments for such engagements.

25.    As of the date hereof, Weil has a remaining credit balance in favor of the

Debtors for future professional services to be performed, and expenses to be incurred, in the

amount of $4,422,608.80.  Weil will file further disclosures to the extent reconciliation of time

and expenses incurred prior to the Commencement Date results in charges to such credit.

26.    Annexed hereto as <u>Exhibit B</u> is a certification regarding compliance with

the Guidelines.

27.    Pursuant to the UST Guidelines, the Summary Sheet filed in connection

with this Application includes a schedule of Weil professionals and paraprofessionals who have

performed services for the Debtors during the Sixth Compensation Period, the capacities in

which each such individual is employed by Weil, the department in which each individual

practices, the hourly billing rate charged by Weil for services performed by such individuals, the

year in which each professional was first licensed to practice law and the aggregate number of

hours expended in this matter and fees billed therefor.

28.    Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of

expenses for which Weil is seeking reimbursement and the total amount for each such expense

category.  An itemized schedule of all such expenses will be provided to the Debtors, the Court,

the attorneys for the Creditors' Committee, the U.S. Trustee, and the Fee Committee.

29.    Annexed hereto as <u>Exhibit D</u>, pursuant to the UST Guidelines, is a

summary of Weil's time records billed during the Sixth Compensation Period using project

categories hereinafter described.  Weil maintains computerized records of the time spent by all

Weil attorneys and paraprofessionals in connection with the prosecution of the Debtors' chapter

11 cases.  Copies of these computerized records will be furnished to the Debtors and, subject to

redaction or modification for the attorney-client privilege where necessary to protect the

Debtors' estates, the Court, the attorneys for the Creditors' Committee, the U.S. Trustee, and the

Fee Committee in the format specified by the UST Guidelines.

### SUMMARY OF SERVICES PERFORMED BY
### WEIL DURING THE SIXTH COMPENSATION PERIOD

30.    More than half of the fees incurred and hours recorded in the Sixth

Compensation Period relate to the protection and maximization of Debtors' derivatives and real

estate assets.  Another approximately ten percent of the fees incurred and hours recorded relate to

reconciliation and reduction of the Debtors' non-derivative claims and the Debtors' participation

in governmental investigations.  Significant time was also dedicated to the preservation and

prosecution of the Debtors' causes of action pursuant to chapter 5 of the Bankruptcy Code.

Descriptions of some of the more significant tasks performed by Weil during the Sixth

Compensation Period are set forth below.

31.    _Derivatives_.  As widely noted, the volume, size and complexity of the

Debtors' Derivative Contracts are unprecedented in the context of chapter 11 cases and will have

an enormous impact on recoveries to creditors in these cases.  As has been the case since the

Commencement Date, during the Sixth Compensation Period, Weil devoted substantial resources

to implementing the Debtors' global strategies to maximize the value of their derivatives assets.

At any one time, Weil's multi-disciplinary derivatives team may be engaged a large number of

research and other derivative-related projects.

32.    During the Sixth Compensation Period in particular, Weil expended

substantial resources to preserve the Court's ruling in the _LBSF v. BNY Corporate Trustee Serv._

_Ltd._ (Adv. Pro. No. 09-01242) adversary proceeding (the "<u>BNY Litigation</u>").  Specifically, Weil

prepared a memorandum of law and presented oral argument to the Court in opposition to

BNY's motion for an order or to reopen and reargue the Court's decision granting summary

judgment to the Debtors.  Weil also filed a memorandum of law opposing BNY's motion for

leave to appeal the Court's interlocutory order granting summary judgment in the BNY

Litigation and has represented the interests of the Debtors in that interlocutory appeal.

Throughout this litigation, Weil has also devoted substantial time and resources so that the

Debtors' interests are adequately represented in the parallel proceeding pending in England in

which noteholders seek to enforce contractual provisions to withhold payments from the Debtors

under English law.  The BNY decision is of great significance to the Debtors because other

counterparties have taken similar legal positions against the Debtors to withhold significant value

from the Debtors.

      33.     Weil devoted significant time and effort during the Sixth Compensation

Period to developing and commencing the Debtors' adversary proceedings based on the ruling in

the BNY Litigation.  Weil attorneys in New York and London reviewed documents in respect of

hundreds of transactions, drafted complaints, conducted legal research, and coordinated with the

Debtors and the Creditors' Committee's professionals to preserve the opportunity to seek to

recover on transaction exceeding several hundreds of millions of dollars.  Weil continues

represent the Debtors in their efforts to investigate transactions where complaints have been filed

or the counterparty has tolled the period for commencement of an avoidance action and, where

appropriate, negotiate consensual resolutions of these matters without the need for litigation.

      34.     Throughout the Sixth Compensation Period, Weil represented the Debtors'

interests in various other disputes, including those related to invalid contract terminations,

counterparties' non-performance, and assertions of rights of setoff.  These issues were raised

both informally, in negotiations, and formally, in pleadings filed with the Court.  As further

described above, one matter that required significant attention and resources of Weil was the

Debtors' motion to approve a global settlement agreement with SG relating to swap transactions with Libra and Vela.  In May 2009, the Debtors commenced an adversary proceeding seeking a determination that the termination of the Libra transaction was invalid and ineffective.  Although an adversary proceeding was not commenced, the Debtors also raised similar challenges to the termination of the Vela transaction.  If the terminations were invalid, then Libra and Vela would have remained obligated to make substantial credit-protection payments to LBSF, and Libra and Vela could have requested funding from SG in accordance with the terms of their respective senior swap agreements.  After months of intense negotiations, the Debtors, with Weil's guidance and advice, reached a settlement of their disputes with SG.  Weil attorneys drafted and were intimately involved in the negotiations on the settlement agreement.  Weil also prepared the motion to approve the settlement.  The settlement resulted in a significant payment to LBSF and preserves the opportunity to recover additional funds for LBSF's creditors.

35.    Weil prepared and served 20 subpoenas on derivative counterparties under Bankruptcy Rule 2004 during the Sixth Compensation Period and negotiated numerous consensual discovery schedules to facilitate the exchange of information and establish parameters for potential settlements.  Weil has and expects to continue to devote substantial resources to maximizing the value of the Debtors' derivatives assets for the benefit of the Debtors' estates.

36.    Real Estate.  As noted above, preserving, restructuring and disposing of the Debtors' interests in real estate continued to be one of Weil's primary tasks during the Sixth Compensation Period.  As one example, Weil negotiated a comprehensive restructuring of Lehman's equity position in connection with the famous Toy Building located at 200 Fifth Avenue in New York City ("200 Fifth").  LBHI initially acquired the property in 2007 through a

joint venture, and LBHI retains approximately 90% of the equity.  In order to protect 200 Fifth

from foreclosure, which would have wiped out LBHI's significant equity investment, the

Debtors entered into a restructure that extended the maturity date of the loans for up to an

additional five years, provided for a new source of funds through two additional loans and

terminated various guarantees from Lehman entities.  The transaction provides the additional

time and capital necessary for LBHI to recover on its substantial equity interest in 200 Fifth and,

at the same time, substantially reduces Lehman's potential liability going forward.

        37.    During Sixth Compensation Period, Weil also represented certain affiliates

of the Debtors with respect to their investment in a large Washington, D.C. portfolio managed by

Tishman Speyer.  Lehman consented to the restructuring and recapitalization of the portfolio and

purchased all of the equity interests in the Bond Building, a historic commercial building located

a half block from the White House.  By entering into the restructure, Lehman avoided having to

invest additional capital in the portfolio and was able to purchase the Bond Building, a valuable

asset, by credit bidding $75 million owed under the Bond Building's mortgage loan in favor of

Lehman.

        38.    Additionally, the Sixth Compensation Period saw substantial progress in

an adversary proceeding (the "Moonlight Proceeding") initiated by Lehman Commercial Paper

Inc. ("LCPI") and LBHI against Moonlight Basin Ranch LP ("Moonlight") to recover amounts

loaned by LBHI and LCPI to Moonlight.  As a result of Weil's efforts, LBHI and LCPI obtained

a favorable ruling on summary judgment with respect to certain of their claims and

counterclaims brought by Moonlight.  Additionally, in an attempt to resolve both the Moonlight

Proceeding and Moonlight's own chapter 11 bankruptcy cases, Weil's attorneys attended

mediation sessions and engaged in settlement negotiations with Moonlight's counsel.  Weil

performed and continues to perform litigation-related work necessary to prevail in the Moonlight

Proceeding, including, but not limited to, conducting discovery, attending hearings, conducting

research, and drafting various motions.

39.     Weil also worked with the Creditors' Committee to create a protocol

governing the Debtors' ability to dispose of certain real estate assets without seeking repeated

Creditor Committee or Court approval.  This protocol increases efficiency and preserve the

estates' resources by removing the timely and expensive process of obtaining Creditors'

Committee and Court approval for dispositions of real estate assets that fall below certain

monetary thresholds.

40.     Claims Resolution.  During the Sixth Compensation Period, Weil devoted

substantial time and effort to assist the Debtors in their analysis of the thousands of claims filed

in these chapter 11 cases and, where appropriate, object to such claims.  The claims objection

process is an enormous undertaking that has required significant dedication by a team of Weil

professionals that coordinates with the Debtors and A&M to process, review, analyze and

identify thousands of claims for objection and to prepare, prosecute and secure orders granting

the Debtors' objections to same.

41.     Weil coordinated its efforts with the Debtors' Court-approved claims and

noticing agent, Epiq Bankruptcy Solutions, LLC, to provide notice to all claimants whose claims

were subject to these objections.  For each omnibus objection, Weil designated a specific

attorney, whose name and contact information was prominently featured on the notice and whom

claimants could contact with any questions or concerns.  A team of Weil attorneys responded to

hundreds of informal inquiries and addressed formal objections of claimants.  Substantial

attorney time and resources were spent responding to claimant inquiries and addressing issues

raised, resulting in a significant reduction in the number of formal responses that were ultimately filed and prosecuted by parties in interest.

42.    Through the Sixth Compensation Period, Weil filed an aggregate total of 56 omnibus objections to claims, objecting to approximately 12,400 claims, seeking to reduce the value of the claims asserted against the Debtors by more than $119 billion plus unliquidated amounts.  The work performed during the Sixth Compensation Period on this issue alone exceeds the scope of the entire claims process in the life of most any chapter 11 case.

43.    <u>SEC Investigations</u>.  During the Sixth Compensation Period, a large team of Weil attorneys was engaged in an ongoing effort to address requests for documents from the Securities and Exchange Commission (the "<u>SEC</u>") and other government agencies.  As of September 1, 2010, the Debtors, with Weil's assistance, had produced over 14 million pages of documents to the SEC and over 262,000 pages of documents to the Financial Crisis Inquiry Commission (the "<u>FCIC</u>").   Weil also worked closely with the Debtors to respond to extensive interrogatories and identify witnesses in response to requests from the FCIC.  The FCIC has announced that it anticipates filing a final report in January 2011.

44.    In order to protect the Debtors' privilege in connection with these document productions, Weil, along with its electronic discovery vendor, processed over 10.5 million individual documents.  Weil attorneys were required to review over 120,000 of those documents that were preliminarily identified as being privileged in order to (i) identify non-privileged responsive documents, (ii) identify documents that need to be withheld or redacted, and (iii) create privilege and redaction logs for each of nearly 100 custodians.

45.    In addition, Weil represented several current and former Lehman employees at SEC depositions.  During the Sixth Compensation Period, Weil attorneys reviewed

documents that were potentially relevant for the depositions of four different witnesses and met

with the witnesses to prepare them for their depositions.  Weil attorneys then defended these

witness at their SEC depositions and summarized the depositions in calls with the Debtor's in-

house counsel.

46.    <u>Avoidance Actions</u>.  The investigation, tolling, and filing of potential

avoidance actions under chapter 5 of the Bankruptcy Code were significant undertakings that

required substantial commitment from Weil during the Sixth Compensation Period.  The size and

of the Debtors' estates and prepetition businesses necessitated a thorough and ongoing

investigation of the Debtors' prepetition transactions to evaluate whether any payments or

transfers of the Debtors' interest in property may be avoided and recovered for the benefit of all

creditors.  In addition to the matters discussed above with respect to the Debtors' Derivative

Contracts, Weil reviewed thousands of transactions with hundreds of counterparties for potential

avoidance as preferential and/or fraudulent transfers.  As part of this review, Weil maintained

consistent communication with both the Debtors and the Creditors Committee's professionals.

Weil also worked collaboratively with the SIPA Trustee on addressing transactions where the

Debtors and LBI had a shared interest.

47.    Weil's review process for avoidance actions involved several steps.  The

Debtors, the Creditors Committee's professionals, and Weil identified prepetition transactions by

the Debtors that could potentially qualify as avoidable transfers.  Weil then analyzed each

transaction under the applicable sections of the Bankruptcy Code and case law.  Generally,

where Weil identified a colorable claim, Weil contacted and negotiated with the potential

defendant in an effort to enter into a tolling agreement so that the parties could conduct further

investigation and analysis and possibly arrive at a consensual resolution to the claim.  As to most

of their affiliates, the Debtors entered into tolling agreements to preserve any claims between

them.  As noted above, in total, Weil assisted the Debtors in their efforts to negotiate and

consummate tolling agreement with over 3,800 entities.  Where tolling agreements were not

obtained, Weil filed more than 45 avoidance actions to preserve the Debtors' avoidance causes

of action which otherwise would have expired under the statutes of limitations periods set forth

in sections 546(a) and 549(d) of the Bankruptcy Code.  To promote the Debtors' efforts to

consensually resolve avoidance claims, Weil also prepared, filed and successfully prosecuted a

motion to stay all of the avoidance actions.

    48. <u>UK Pensions</u>.  Weil was required to devote significant time to respond to

certain actions taken by the United Kingdom's Pensions Regulator ("<u>TPR</u>").  In early June,

LBHI received a warning notice issued by TPR, indicating that a hearing would be held in short

order before TPR's Determinations Panel ("<u>DP</u>"), at which the DP would decide whether to

impose the requirements of a financial support direction ("<u>FSD</u>") on LBHI and a number of its

UK affiliates.  The FSD would require LBHI and such affiliates to propose a plan for providing

financial support to the Lehman Brothers Pension Scheme (the "<u>UK Pension Scheme</u>"), the main

pension plan for Lehman's UK-based employees.  TPR alleged that the UK Pension Scheme had

a shortfall of approximately £148 million.  If a party does not comply with the terms of an FSD,

a contribution notice could be issued and steps could be taken to enforce the debt obligation

created.

    49. TPR gave LBHI an extremely short, three-week timeframe to respond to

allegations that TPR had taken nearly two years to compile.  Weil was compelled to apply for

judicial review of TPR's decision to not extend LBHI's response deadline after a series of

correspondence, teleconferences, and negotiations failed to achieve the result.  Only after, and as

a result of, Weil's application did TPR agree to a consent order extending LBHI's time to make written submissions to the DP.

50.     At the same time Weil was engaged in these due process disputes, Weil was assisting LBHI and certain of its affiliates prepare substantive responses to the warning notice.  Weil identified and engaged a highly-respected Queen's Counsel to deliver submissions to the DP.  Weil's New York and London teams worked closely with the Debtors, A&M's New York and London teams, and Queen's Counsel to formulate the written submissions, collect evidence, and prepare oral arguments for the DP and to prevent possible negative effects of UK proceedings on the Debtors' chapter 11 cases.

51.     Meanwhile, Weil researched, drafted, and filed an emergency motion in the Bankruptcy Court to enforce the automatic stay to prevent precipitous enforcement action from being taken against LBHI's assets in the US and the UK.  With little time before the emergency hearing, Weil successfully negotiated a stipulation with TPR and the UK Pension Protection Fund and the Trustees of the UK Pension Scheme (both claimants against LBHI and parties with enforcement powers in the UK) such that LBHI's interests would be protected, and no action would be taken against LBHI without notice and a further hearing before the Bankruptcy Court.  Weil continues to advise LBHI and certain of its affiliates in their defenses before the UK High Court, Court of Appeal, and Upper Tribunal.

52.     The professional services rendered by Weil during the Sixth Compensation Period, organized in accordance with Weil's project codes, are described below.

a.     Case Administration Issues

(i)   General Case Administration

■    Drafted and obtained Court order amending case management protocols.

(ii)  General Case Strategy Meetings

- Conducted internal meetings, conferences, and teleconferences regarding case strategy, pending issues, business issues, preparation of and responses to various motions and applications, numerous sale transactions of the Debtors and their non-Debtor affiliates, general litigation strategy, governmental and other investigations, corporate governance, inter-company issues, and international issues.

(iii)  Project Monitoring/Court Calendar & Docket Maintenance

- Reviewed, analyzed, monitored and distributed filings in the 23 Debtors' chapter 11 cases, more than 100 adversary proceedings, nine appeals, and numerous non-Bankruptcy Court litigations to appropriate Lehman, A&M, and Weil teams; and
- maintained work-in-progress reports and case calendar and distributed same to Lehman, A&M and Weil teams to ensure coordination and coverage.

(iv)  Hearings and Court Communications

- Prepared for and participated in numerous hearings, including omnibus Bankruptcy Court hearings on June 16, July 14, August 18 and September 15, 2010, and non-omnibus hearings in the Bankruptcy Court and other courts on June 16, 21, 24, 25, 29 and 30, July 14, August 4, 19, 23, 24, 25, 27, 30, and 31, September 1, 7-10, 20, 22, and 28-29, 2010;
- participated in telephonic and in-person conferences with the Bankruptcy Court and other courts;
- coordinated regularly with the Court and parties in interest regarding hearings and agenda items and prepared hearing agenda in accordance with the Bankruptcy Court's orders and requests; and
- prepared summaries of significant pleadings heard at various hearings and distributed same to Lehman, A&M and Weil teams to ensure coordination.

b.  Constituency and Coordination-Related Issues

(i)  Interested Party Communications/Website/Lehman Team Hotline

- Responded to hundreds of telephone and email inquiries from creditors and other parties in interest, including customers, vendors, shareholders, secured and unsecured creditors and potential purchasers of assets regarding Debtors' chapter 11 cases.

(ii)  Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee

- Prepared for and participated in meetings and teleconferences with the Creditors' Committee and its professionals regarding the status of the chapter 11 cases, the Plan and Plan-related issues, potential causes of

action, protocols, various document demands, asset sales, loan restructurings, derivative transactions, inter-company and international issues; and

- participated in meetings with ad hoc groups of creditors and their professionals regarding various issues related to the Debtors' chapter 11 cases including the Plan and Plan-related issues and related discovery requests.

(iii)   Secured Creditors Issues/Meetings/Communications

- Attended to issues, including the negotiation and drafting of amendments and letter agreements related to a collateral disposition agreement between the Debtors and JPMorgan Chase Bank, N.A. ("<u>JPMorgan</u>") pursuant to which JPMorgan's aggregate claim balance was reduced from approximately $7.64 billion to approximately $524 million and LBHI obtained control of billions of dollars of collateral;

(iv)   Equity Holders/Motions/ Hearings/ Communications

- Conducted research, drafted memorandum and participated in internal meetings regarding shareholder issues; and
- drafted letter to U.S. Trustee regarding the appointment of equity committee and participated in meetings regarding same.

(v)   LBI/SIPC Coordination and Issues

- Conducted meetings and teleconferences with the Debtors, A&M, and the SIPC Trustee's professionals to address numerous issues, including reconciling customer claims and non-customer claims of Lehman's foreign and domestic affiliates, claim subordination, postpetition notes and obligations, and potential preference actions;
- analyzed issues relating to intercompany claims and relationships between the Debtors, their non-debtor affiliates, and LBI;
- prepared various agreements for release of securities from LBI and participated in calls with the Debtors and LBI's professionals regarding same; and
- reviewed and monitored case docket for SIPA proceeding.

c.    General Business Operation Issues

(i)   Cash Management

- Participated in conferences and teleconferences with Lehman, A&M, the Creditors' Committee, the U.S. Trustee, the SIPA Trustee and various parties-in-interest regarding Lehman's cash management systems, investment guidelines, intercompany notes, misdirected wire transfers, and conducted legal research and analysis relating to the same; and

- ▪ revised a custody agreement with one of the Debtors' banks and participated in teleconferences regarding same.

(ii)  Insurance Issues

- ▪ Drafted motion and obtained authority to modify the automatic stay to allow advancement under directors and officers insurance policy by Continental Casualty Company, certain underwriters of Lloyd's London and U.S. Specialty Insurance Co., and participated in meetings and teleconferences regarding same; and
- ▪ reviewed and responded to other issues regarding the Debtors' insurance policies and coverage, including directors and officers policies.

(iii)  Employee/ERISA/Benefits/Pension Issues

- ▪ Participated in meetings with the Debtors' and A&M's New York and London teams regarding UK pension issues, including a warning notice issued by the UK Pensions Regulator.  Conducted research, reviewed documents, and drafted memoranda and other documents, including those related to LBHI's application for judicial review of an adverse decision of the Pensions Regulator, witness statements for judicial review proceedings, defenses to the Pension Regulator's claim, and applications before the UK high court;
- ▪ performed research and drafted and filed motion to enforce the automatic stay and an order to show cause with respect to the UK pension proceedings in the Bankruptcy Court; and negotiated and obtained a stipulation and order protecting LBHI's interests from any any action taken against it;
- ▪ drafted motion seeking Bankruptcy Court authorization for the Debtors to implement an incentive program for derivative-related employees in 2011 and engaged in meetings and negotiations with the Debtors and Creditors' Committee's professionals re same;
- ▪ participated in meetings, conducted research and responded to inquiries regarding Debtors' employee-related issues, including, among other matters, voluntary employee beneficiary association benefits and certain employee-related litigation.

(iv)  Customer / Vendor Issues

- ▪ Reviewed and revised various contracts, agreements and related documents for the supply of goods and services to the Debtors.

(v)  Intellectual Property

- ▪ Negotiated, drafted and revised several agreements related to the Debtors' use or service of intellectual property and information technology including non-disclosure agreements, data sharing agreements, transition

service agreements, software licenses and trademark and domain name assignment agreements;

- participated in meetings and addressed issues related to transition services agreement and indemnity letter between LBHI and Lehman Brothers International (Europe) ("LBIE"); and
- attended to issues related to the international affiliate data sharing agreement.

(vi) Tax Issues

- Participated in meetings regarding and prepared Internal Revenue Service (the "IRS") ruling request and pre-submission memorandum in connection with the Debtors' proposed chapter 11 plan; and
- conducted regular conferences and teleconferences with the Debtors, A&M, the Creditors' Committee's professionals, the SIPA Trustee's professionals and others regarding various tax matters, including those relating to certain payments, allocation of tax refunds among affiliates, IRS tax disputes, state and local tax issues, sales tax issues, tax claims, net operating losses, and tax efficient structures for various asset sales and restructurings.

(vii) Corporate Governance

- Attended meetings of LBHI's board of directors, prepared briefing memorandum and drafted and reviewed resolutions and minutes for same;
- conducted research and reviewed and drafted various consents, resolutions, organizational documents, organizational and structure charts for various issues, including asset sales and other corporate transactions, for the Debtors and their various direct and indirect subsidiaries and affiliates and advised their directors and officers regarding same and on issues arising in these chapter 11 cases;
- developed and managed process of obtaining consents of hundreds of the Debtors' foreign, non-debtor affiliates to enter into agreements to toll the statute of limitations on various causes of actions which may be asserted by the Debtors; and
- prepared and filed forms 10-K, 12B-25, 13F and other documents with the United States Securities and Exchange Commission.

(viii) Other General Business Operation Issues

- Advised the Debtors daily on issues relating to their general business operations, including by telephonic and in person meetings, correspondence and memoranda; and
- drafted and reviewed documents in connection with, among other things, the dissolution of certain non-debtor subsidiaries, escrow agreements and accounts, promissory notes and certain repurchase agreements.

(ix)  Intercompany Issues

- Advised the Debtors in the preparation of intercompany promissory notes and related security documents to ensure compliance with the Bankruptcy Court's orders governing cash management and other transactions;
- conducted research, drafted memoranda regarding and participated in conferences and teleconferences with the Debtors, the Creditors Committee's professionals and others regarding intercompany issues including intercompany repurchase agreements, intercompany claims, intercompany transfers, and intercompany guarantees.

d.    Asset Class-Related Issues

(i)  Real Estate Matters

- Organized and participated in regular meetings and teleconferences with Lehman, A&M and various other domestic and international professionals regarding various issues involving Lehman's vast real estate holdings;
- negotiated, drafted and reviewed numerous real estate loan and related restructuring documents and agreements, and prepared Bankruptcy Court motions, where appropriate, for, among others:
  - the modification of the restructuring of the acquisition and priority financing of Archstone, a former publicly traded REIT, that constitutes one of the Debtors largest real estate investments;
  - the restructuring of Lehman's equity position in connection with the Toy Building, an office building located at 200 Fifth Avenue in New York City;
  - a new debt investment in the loan relating to property at 237 Park Avenue in New York City through the purchase of a tranche of senior debt;
  - a settlement regarding a real estate property known as Heritage Fields in Nevada;
  - a settlement and release agreement related to the Debtors' interests in a junior mezzanine loan position that was secured by an office building in Boston, Massachusetts;
  - various complex repurchase transactions, including those with respect to Fenway Capital, LLC and RACERS; and
  - settlements in connection with numerous deed-in-lieu of foreclosure transactions;
- advised and represented the Debtors with respect to complicated issues related to "dueling debtors" (chapter 11 cases of borrowers under various real estate-related loans and agreements with the Debtors), including: Moonlight; Fontainebleau Las Vegas Holdings, LLC; and SCC/Palmdale LLC and its affiliated debtors (the "SunCal Debtors") in which Weil briefed and argued numerous appeals in both the Debtors' chapter 11 cases, including before the United States Court of Appeals for the Second Circuit, and in the bankruptcy cases of the SunCal Debtors;

- drafted pleadings and obtained approval in the Debtors' chapter 11 cases to propose a plan support agreement in connection with the chapter 11 cases of Innkeepers USA Trust and certain of its affiliates (collectively, "Innkeepers");

- assisted the Debtors in negotiating leasing, development and management agreements to be used in connection with an office building in Stamford, Connecticut; and

- conducted legal research and factual due diligence regarding numerous issues including corporate structure, assets and liabilities, tax considerations, employee and transfer considerations, regulatory and other consents required for settlements and sales, transfers and other dispositions of real estate assets;

- prepared disclosure notices to meet reporting requirements set forth in various real estate protocols, including regarding dispositions of real estate assets, restructurings, new real estate investment transactions and regarding the sale or abandonment of *de minimis* assets, and negotiated and drafted a protocol regarding the Debtors' ability to dispose of certain real estate assets without seeking further Creditor Committee or Court approval for transactions falling under certain monetary thresholds.

(ii)  Private Equity

- Advised the Debtors on strategic alternatives with respect to credit facilities, third party agreements, extensions, amendments, and restructurings of certain credit facilities;

- performed extensive diligence on transactions and underlying investments of certain funds and developed structures for possible transactions;

- counseled on potential litigation and negotiated and drafted transaction documents (including transaction and purchase agreements, settlement agreements, trust agreements, consents, transition services agreements), as well as notes, collateral agreements, advisory agreements and partnership agreements on various sales, including a sale by various Lehman affiliates of their interests in Aerovance Inc., and certain follow-on investments made by Lehman Brothers Merchant Banking Partners III L.P. and parallel investment vehicles, including Trilantic, Europe G.P., Silver Lake Credit Fund, L.P., and New Silk Route PE Asia Fund, L.P.;

- conducted diligence, engaged in negotiations, and drafted various documents and pleadings in connection with restructurings and other transactions and consent processes related to Lehman Real Estate Partners, certain European mezzanine loan funds, certain merchant banking funds, and Tradeweb Market LLC.; and

- drafted transactions documents and pleadings and obtained Bankruptcy Court approval of purchase agreement with Citibank N.A. ("Citi") and cost sharing agreement with the SIPA Trustee relating to the transfer of Lehman's residual interests in real estate mortgage investment conduits, relieving Lehman of hundreds of millions of dollars in potential state and federal income tax liabilities for a single payment to Citi of $24 million;

- drafted and negotiated transaction documents and auction procedures with respect to the potential sale of LBSF's interest in a note and its equity in its Brazilian subsidiary Libro Companhia Securitizadora de Créditos Financeiros; and
- counseled the Debtors on Hart-Scott Rodino Act compliance issues in connection with LAMCO LLC and revised related compliance manual.

(iii)    Derivatives/SWAP Agreement Issues (Including Derivatives-Related Adversary Proceedings, Alternative Dispute Resolution, and Claims Reconciliation and Litigation)

- Counseled Debtors regarding and obtained Court approval of their settlement with SG relating to certain swap transactions with Libra and Vela (described above);
- continued representation of Lehman Brothers Commodity Services Inc. in an action in the United Kingdom High Court against Crédit Agricole Corporate and Investment Bank ("CACIB"), seeking payment of €11,622,809.31 due under a letter of credit which CACIB granted in favor of LBCS;
- drafted and served numerous ADR notices, replies and related documents for mediation and participated in settlement conferences and mediations with counterparties;
- drafted and successfully prosecuted several motions authorizing the Debtors' to reject certain derivatives contracts, thereby fixing any damages arising under such contracts;
- analyzed various claims against the Debtors based on derivatives contracts and drafted and filed omnibus objections with respect to certain derivatives claims;
- developed and obtained court approval of ADR procedures with respect to the affirmative claims of the Debtors for monetary recovery arising from certain of their terminated and open prepetition derivatives contracts, including, but not limited to, swap agreements and forward contracts, solely for which a Debtor's claim is equal to or less than $1 million;
- conducted due diligence of derivatives transactions including collateralized debt obligations and swap novations, and negotiated, drafted and reviewed settlement and/or novation agreements regarding Derivatives Contracts and confidentiality agreements related thereto;
- counseled the Debtors regarding jurisdictional issues related to foreign swaps, subordination agreements, valuation issues relating to termination calculations, conflicts of law, safe harbor and set-off issues, nonperforming counterparties, and intercompany trades;
- reviewed and advised on a number of special purpose entity and counterparty derivative settlements and ancillary issues;
- prepared, filed and obtained Court approval of stipulation between LBHI and UBS AG providing for limited relief from the automatic stay to permit UBS AG to exercise its rights with respect to an ISDA master agreement and collateral posted in connection therewith;

- represented the Debtors in connection with proceedings in the Commercial Court of England and Wales relating to: (i) Loan Market Association transaction and (ii) letters of credit and set-off rights in respect of derivative contracts;
- represented the Debtors in the London Court of International Arbitration in respect of derivative contracts; and
- advised the Debtors in relation to stock lending and repurchase agreements.

(iv)    Loans/Investments

- Conducted research, participated in strategy meetings, teleconferences, and negotiations, and drafted various pleadings and agreements regarding Lehman's interests in various loans and investments, including those to borrowers now in their own chapter 11 cases, and those involving third-party litigation and out-of-court restructurings;
- represented LCPI as lender and borrower in the chapter 11 cases of Latshaw Drilling Company, LLC and Latshaw Drilling & Exploration Company (collectively "Latshaw"), including by formulating and filing objections to confirmation of Latshaw's proposed chapter 11 plans and negotiating and drafting the terms of a restructured credit agreement;
- negotiated stipulation between LCPI and Latshaw and obtained an order providing limited relief from the automatic stay in LCPI's chapter 11 case to allow litigation to proceed in the United States Bankruptcy Court for the Northern District of Oklahoma with limited collateral effect on the Debtors' chapter 11 cases;
- conducted and provided discovery in connection with pending litigation over LCPI's claim against Latshaw and Latshaw's counterclaim against LCPI and prepared for and participated in mediation of disputes between LCPI and Latshaw, including participation in meetings and teleconferences and drafting mediation statements and settlement proposals.

(v)    Domestic Bank and Related Regulatory Issues

- Drafted motions and obtained Court approval of the Debtors' global settlement agreements with the Banks (described above);
- prepared motion for and obtained Court authorization for the transfer of certain mortgage servicing rights by LBHI to Aurora Bank FSB in advance of the global settlement agreement;
- negotiated, drafted various documents and memoranda, and conducted legal research and investigation regarding same;
- participated in meetings and conference calls with Bank regulatory counsel, the Creditors' Committee's professionals, and other creditors and parties in interest regarding the same.

e.    International Insolvency Issues

  (i)    International Insolvency Issues

- Monitored and participated in the UK insolvency proceedings (including court hearings) of 20 English companies with PricewaterhouseCoopers LLP as joint administrators and advised with respect to their respective effects on the Debtors' chapter 11 cases;
- counseled the Debtors in their role on the official committee of unsecured creditors in the UK insolvency cases of LBIE, Lehman Brothers Europe Limited, Lehman Brothers Limited, LB UK Re Holdings Limited, and Lehman Brothers Holdings Plc;
- advised the Debtors in relation to filing claims against entities that are subject to English administration proceedings as well as in respect of claims which relate to trust assets;
- represented the Debtors in connection with a number of proceedings in the High Court of England and Wales including those regarding (i) the treatment of "client moneys"; (ii) the ownership of certain assets subject to the "RASCALS" program (Regulation and Administration of Safe Custody And Global Settlement); and (iii) disputes relating Lehman trades under derivative contracts;
- represented the Debtors in litigation in the Cayman Islands in respect of disputes relating to outstanding loans;
- obtained foreign recognition of LBHI's chapter 11 case as the foreign main proceeding in England and Wales under the Cross-border Insolvency Regulations;
- advised the Debtors with respect to issues relating to inter-company side-letters and set-off rights;
- negotiated on behalf of the Debtors with the English administrators on numerous ongoing matters including: (i) the extension of a transitional services agreement, (ii) rent settlement relating to disputed invoices, and (iii) obtaining and preserving information relevant to the Debtors' estates;
- advised the Debtors in respect of (i) possible English insolvency proceedings relating to certain of the Debtors' investments, and (ii) certain construction disputes;
- advised the Debtors in respect of potential exit strategies and their rights and interest as creditors of LB UK Re Holdings Limited;
- assisted the Debtors in relation to dissolving and unwinding a number of partnership structures;
- advised the Debtors on various tax issues including under the English Group Payment Agreement;
- advised the Debtors in respect of the leasehold of 25 Bank Street held by Lehman Brothers Limited;
- represented LBHI in the preparation and submission of filings to BaFin, the German federal financial supervisory authority, under German securities laws and transmission of filings made by current or former Lehman entities under other legal regimes to LBHI for review, in

particular regarding filings to be made as a consequence of securities transactions by Lehman Brothers Bankhaus Aktiengesellschaft I. INS. ("Bankhaus");

▪ represented LCPI in the German insolvency proceedings over the respective assets of Formel Eins Beteiligungs GmbH, Kirch Beteiligungs GmbH & Co. KG, and Taurus Holding GmbH & Co. KG;

▪ represented the Debtors in German insolvency proceedings over the assets of LB Capital GmbH and Bankhaus, including communications with the Bankhaus administrator, review of the administrator's reports, and advised the Debtors with respect to the Debtors' interest in contemplated distribution from Bankhaus' estate;

▪ advised LBHI with regard to claims asserted against LBHI by Deutsche Bundesbank and Bundesverband Deutscher Banken e.V.;

▪ participated in bilateral meetings and assisted in liaising with foreign affiliates on a variety of intercompany issues;

▪ collected and catalogued information regarding status of the Debtors' foreign subsidiaries and investments and communicated with Lehman, A&M and third parties regarding international insolvency proceedings and regulatory matters;

▪ advised Debtors in determining termination dates of inter-company derivative master agreements with Bankhaus and in calculating close-out-netting amounts;

▪ assisted the Debtors in dissolving and liquidating Sadio Neunundachtzigste Vermögensverwaltungs GmbH;

▪ assisted in compliance issues relating to Lehman subsidiaries LB1, LB2 and LB3;

▪ coordinated and monitored the list of authorized signatories, directors and officers and the replacement of directors for various Asian entities; and

▪ advised the Debtors in negotiations for release of dividends from joint venture owed to certain of the Debtors' subsidiaries.

(ii)   Non-Derivative Automatic Stay/Safe Harbor Issues

▪ Obtained Court authorization for LBHI's motion for modification of the automatic stay to allow delivery of acceleration notices to LBHI under EMTN program;

▪ conducted factual and legal research regarding and prepared, filed and obtained Court approval of, among others:

▪ a stipulation between LBHI and Jonathan Keeney providing for relief from the automatic stay with regard to certain real property;

▪ a stipulation and agreement granting Oasis Associates LLC limited relief from the automatic stay;

▪ a stipulation between LCPI and certain SunCal entities granting limited relief from the automatic stay regarding the use of cash collateral;

- - a stipulation between BNC Mortgage LLC and JP Morgan Chase N.A., as Trustee, providing relief from the automatic stay with regard to certain real property; and
  - a stipulation and agreement granting Capital One, N.A. limited relief from the automatic stay;
- prepared LBHI's response to motion of Lawrence Fogarazzo et al. for relief from the automatic stay to allow advancement under insurance policy by Lloyd's of London and participated in meetings and teleconferences regarding same;
- conducted research regarding statue of limitations and laches, automatic stay violations as a result of administrative freezes, and drafted letters to various third parties related to the automatic stay; and
- attended to automatic stay issues related to various state court actions including calls with interested parties and counsel.

(iii) Miscellaneous Asset Sales/363 Issues

- Represented the Debtors in connection with the sale of the assets of the Lehman Brothers Trust Companies to Neuberger Berman, including the negotiation and preparation of various documents, including merger agreement, stockholder and board consents, director and shareholder resolutions, escrow agreement, joinder agreement, closing checklist, certificate of transfer, post-closing services agreement, assumption and assignment agreement, officers' certificate and notice letters; prepared for and participated in closing of transaction and attended to post-closing matters related to same;
- reviewed various documents, including stock purchase agreement, limited waiver and release and stock powers, related to sale of the Debtors' interest in Touchstone Health Partnership, Inc.;
- assisted LCPI and LBHI in connection with the transfer of Bankhaus' participation in two French law mortgage loans in relation to a real estate investment in Marseilles, France to a joint venture owned by LBREP III Europe S.à r.l. SICAR and LCPI and the related modification to the agreements relating to the existing joint venture owned by LBREP III Europe S.à r.l. SICAR and LB LUX RE Holding S.à r.l. (a wholly owned subsidiary of LBHI);
- reviewed and revised amendments to sale and letter agreement related to sale of aircraft;
- participated in meetings and teleconferences regarding issues related to Lehman's artwork and reviewed and analyzed various documents, including notice of abandonment of certain artwork and purchase agreement, related to the purchase of certain artwork;
- prepared, filed and obtained Court approval of the Debtors' motion authorizing the retention of employment of Sotheby's, Inc., as the auction house for the sale of Lehman's artwork;
- attended to various post-closing matters related to sale of Lehman's Investment Management Division;

- attended to issues related to LAMCO, including the creation of new LAMCO subsidiary entity, and reviews and drafting of corporate documents for potential sales and partnership opportunities, including term sheets, master services agreement, consents and non-disclosure agreements;

- prepared, filed and obtained Court approval of motion of LCPI and LBHI for authorization to guarantee payment of the fees and related charges of Lazard Freres & Co., LLC, as investment banker to Lehman Ali, Inc., incurred in connection with the Innkeepers restructuring and participated in meetings regarding same.

(iv)   Non-Derivative Executory Contracts/365 Issues

- Attended to issues related to open trade matters, including the preparation of various documents regarding same;

- obtained court approval of LBHI's motion for authorization to assume and assign certain executory contracts to Aurora Bank FSB;

- participated in teleconferences and meetings with Debtors and opposing counsel regarding motion of Factiva Inc. to compel assumption or rejection of an executory contract and drafted objection to same; and

- researched and drafted memos regarding various issues related to executory contracts, including assumption of license agreements.

(v)   Plan of Reorganization/Plan Confirmation/Plan Implementation

- Participated in meetings and teleconferences with the Debtors, A&M, the Creditors' Committee, foreign administrators, foreign affiliates, the ad hoc group of creditors, and various other creditor groups and their respective professionals regarding plan issues, including various claims against the Debtors;

- conducted research and drafted memoranda, negotiated plan terms sheets, and revised Debtors' plan of reorganization;

- prepared for and participated in meetings with foreign affiliates and Lehman Global Protocol group regarding chapter 11 plan term sheets, term sheets for settlements with foreign affiliates regarding their claims in connection with the Plan, proposals, counter proposals and plan alternatives and reviewed and revised same;

- prepared and filed Debtors' motion requesting second extension of exclusive periods for the filing of and solicitation of acceptances for chapter 11 plans of Merit, LLC, LB Somerset LLC and LM Preferred Somerset LLC and obtained authority for Merit LLC;

- negotiated and drafted nondisclosure agreements and confidentiality agreements for plan diligence with various interested parties; and

- conducted factual and legal research, prepared memoranda, coordinated and managed interviews and document production and review, and facilitated numerous conferences both internally and with the Debtors, A&M, the Creditors' Committee, the ad hoc group creditors, and other

professionals regarding other plan-related issues, including substantive consolidation, subrogation, subordination and setoff related to LBHI guarantee claims, plan support agreement and plan confirmation issues.

(vi)  Disclosure Statement/Solicitation/Voting

- Drafted updates for Debtors' Disclosure Statement and participated in numerous internal meetings and meetings with Debtors and A&M regarding same; and
- participated in calls with creditors regarding the Disclosure Statement and responded to requests regarding same.

(vii)  Non-Derivative Claims Reconciliation, Estimation, Litigation, and Alternative Dispute Resolution and Bar Date Issues

- Participated in internal meetings and teleconferences regarding the claims reconciliation process and responded to communications from claimants regarding Debtors' omnibus claims objections;
- participated in meetings with the Debtors and A&M regarding guarantee claims and reviewed and analyzed same;
- prepared and filed the Debtors' eighteenth through fifty-sixth omnibus objections to proofs of claim and participated in meetings with the Debtors and A&M regarding same and obtained court authorization for the Debtors' tenth through thirty-fourth omnibus objections to proofs of claim and researched issues related to same;
- prepared and filed Debtors reply to (i) limited objection of Wilmington Trust Company, as indenture trustee, to the Debtors' 18th-25th omnibus objections to claims and (ii) limited objection of the Bank of New York Mellon, as indenture trustee, to the Debtors' 25th through 27 the omnibus objection to claims;
- reviewed claims filed in the SIPA proceeding and monitored the LBI claim reconciliation process and participated in telephone and in-person conferences with the SIPA Trustee's professionals regarding same;
- prepared and filed Debtors' objection to proofs of claim filed by William Kuntz III;
- participated in teleconferences with the Debtors and various third parties and participated in internal meetings regarding Lehman Brothers Treasury Co. B.V. structured notes including with respect to valuation, and reviewed documents and memorandum regarding same;
- conducted legal research regarding guarantee claims, excusable neglect, rejection damages, privity of contract, fiduciary duties of shareholders and standing to bring claims, class action issues and subrogation; and
- analyzed claims filed in the international proceedings.

(viii) Other Bankruptcy Motions and Matters

- prepared for and participated in meetings and teleconferences with the Debtors, A&M, the Creditors' Committee and the SIPA Trustee and its professionals, and conducted research and drafted memorandum regarding potential preferences actions, avoidance actions, structured notes, solvency, tolling agreements, Loan Market Association participations and elevations, and other related issues and prepared avoidance actions presentation;

- prepared and sent demand letters to third parties offering settlement of potential avoidance actions or tolling of same;

- prepared and filed 43 complaints against third parties in connection with prepetition transfers to the debtors;

- prepared tolling agreements with various third parties, including foreign and domestic affiliates, in connection with avoidance actions;

- prepared and finalized avoidance claims assignment agreement schedule;

- prepared stipulation and order between LBHI and the SIPA Trustee with respect to joint claims asserted and joint adversary proceedings commenced pursuant to Bankruptcy Code sections 544, 547, 548 and 550 and participated in meetings regarding same;

- prepared Debtors' motion for authorization to grant first priority lien in collateral posted in connection with foreign exchange hedging transactions;

- participated in teleconferences and drafted motion for approval of settlement agreement between LB Somerset LLC, LB Preferred Somerset LLC, KBIA Somerset Investments, LLC, KBIA Preferred, LLC, Falls of Neuse Investments LLC, Somerset Properties SPE, LLC, Somerset Associated, LLC and Kevin Wilk;

- prepared and filed Debtors' motion to stay avoidance actions and related declaration in support of same;

- prepared and filed Debtors' objection to the motion of William Kuntz III for relief pursuant to Rule 60(b) of the Federal Rules of Civil Procedure;

- prepared supplement and second supplement to motion of LBHI and LCPI for authority to transfer funds to Rosslyn LB Syndication Partner LLC and obtained authority for same; and

- prepared, filed and obtained authority for motion of LBHI and LCPI to amend the RACERS transaction documents and terminate certain RACERS transaction documents, prepared and filed response to objection filed by U.S. Bank National Association and reviewed correspondence and participated in meetings regarding same.

f.    Litigation Related Issues

(i)    Non-Derivative Adversary Proceedings Preparation and Litigation

- Obtained authority for LBHI and LCPI to enter into settlement agreement with State Street Bank and Trust Company regarding 340 Madison

Avenue loan, filed revised participation agreement, and drafted stipulation
dismissing 340 Madison Avenue action;

- attended to various issues relating to the following adversary proceedings,
  including the preparation of various documents, preparation for and
  participation in depositions, participation in meetings, teleconferences and
  hearings and prepared summaries of hearings, conducting research, and
  engaging in discovery and document production:
    - LBHI v. Barclays Capital, Inc.;
    - Bank of America, N.A. v. LBSF & LBHI;
    - European Credit Management Limited Relative European Value
      S.A., *et al.* v. LCPI, LBHI v. JPMorgan Chase Bank, N.A.;
    - LH 1440 v. State Street Bank & Trust Company and LBHI; and
    - Federal Home Loan Bank of Pittsburgh v. LBSF *et al.*; and
- participated in teleconferences related to HSBC  Bank USA, N.A.
  ("HSBC") and analyzed issues and researched claims filed by HSBC
  against LBHI.

(ii)   Non-Bankruptcy Litigation

- Reviewed, researched, drafted and analyzed complaints, claims and
  pleadings, conducted document review, and responded to document
  requests in multiple foreign and domestic litigations commenced by and
  against Lehman entities;
- prepared and filed motion to dismiss second amended complaint and reply
  memorandum of law in further support of Defendants' motion to dismiss
  second amended complaint and related exhibits and declaration in Fried, *et
  al.* v. Lehman Brothers Real Estate Associates III, L.P., *et al.* matter and
  participated in meeting and researched issues regarding same;
- prepared brief in support of motion to dismiss plaintiff's second amended
  complaint, defendants' motion for leave to file sur-reply concerning
  plaintiff's motion to amend complaint and sur-reply in opposition to
  plaintiff's motion to amend complaint and defendant's brief regarding
  abstention in the Simeon Moreno v. Property Asset Management, Inc.,
  Mortgage Electronic Registration Systems, Inc., and Litton Loan
  Servicing Limited Partnership matter, and participated in meetings and
  teleconferences and researched issues regarding same;
- prepared and filed memorandum of law in support of defendant
  Appalachian Asset Management Corp.'s motion to dismiss in the Supreme
  Court of New York; and
- prepared reply brief to plaintiff's response to Trilantic's motion to dismiss
  in the McReynolds *et al.* v. Trilantic Capital Partners IV LP f/k/a Lehman
  Brothers Merchant Banking Partners IV L.P. matter and conducted
  research and participated in meetings regarding same.

(iii)  2004 Issues

- Prepared and served 20 notices of subpoenas issued pursuant to an order Weil obtained granting the Debtors authority to issue subpoenas for the production of documents and authorizing the examination of persons and entities; and
- reviewed documents and/or prepared document requests pursuant to Bankruptcy Rule 2004.

(iv)  Appeals

- Prepared brief in opposition to Swedbank's appel of the Court's order granting Debtors' motion to enforce the automatic stay and participated in meetings and conducted research regarding same;
- attended to issues related to LBIE client money appeal including preparation of the joint authorities bundle and submissions for LBIE client monies appeal and participated in teleconferences and conducted research regarding same;
- represented the Debtors as creditors in the chapter 11 cases of the SunCal Debtors with respect to various appeals pending in the district court in the Southern District of New York, the Court of Appeals for the Second Circuit and the 9th Circuit Bankruptcy Appellate Panel and participated in teleconferences and internal meetings, conducted research and prepared various pleadings regarding same; and
- prepared and filed appellee briefs in Santa Fe Partners, LLC v. LBHI and CVI GV F (LUX) Master S.A.R.L. v. LBHI matters pending in the District Court of the Southern District of New York and researched issues related to same.

g.    US Trustee / SEC / DOJ / Examiner Issues

(i)    US Trustee Related Issues

- Conferred and corresponded with U.S. Trustee on numerous issues including request for equity committee;
- reviewed and filed monthly operating reports for May, June, July August and March 2010 supplement, and addressed issues related to same; and
- monitored compliance with the UST Guidelines.

(ii)   SEC / DOJ Issues

- Prepared for and participated in numerous meetings and teleconferences with various governmental and regulatory entities and witnesses for interviews related to governmental and regulatory investigations, and coordinated with A&M regarding same; and
- performed and coordinated document review, collection and production in response to various governmental and regulatory requests and created and reviewed various privilege logs related thereto (described above).

(iii)  Examiner Issues

- Conducted internal meetings and teleconferences regarding various issues related to the production of materials to the Examiner and related negotiations;
- created database and privilege logs, conducted diligence, and prepared (e.g., redaction and review for confidential information) materials for production to the Examiner; and
- participated in teleconferences with the Debtors and other parties in interest and negotiated provisions related to the motion for order discharging Examiner and granting related relief.

h.    Fee-Related Issues

(i)  Firm's Own Billing/Fee Applications

- Prepared and filed Weil's fifth interim application for compensation and reimbursement and prepared monthly fee statements in compliance with the Guidelines; and
- addressed various issues raised by the Fee Committee regarding Weil's fourth interim application for compensation and reimbursement and prepared response to same.

(ii)  Firm's Own Retention Issues

- Prepared and filed Weil's fourth and fifth supplemental affidavit and drafted Weil's sixth supplemental affidavit.

(iii)  Third Party Retention/Fee Application/Other Issues

- Assisted the Debtors in negotiating engagement letters with numerous ordinary course professionals and certain other parties;
- regularly conferred with certain of the more than 195 ordinary course professionals of the Debtors regarding retention procedures and conflicts issues;
- liaised with retained professionals, the Creditors' Committee, the U.S. Trustee, and the Fee Committee regarding guidelines, orders, and Fee Committee protocols established for all professionals retained in these chapter 11 cases;
- prepared, reviewed, and revised applications and obtained Court approval for the retention of (i) Sotheby's, Inc. as its auctioneers, (ii) Paul, Hastings, Janofsky & Walker LLP as special counsel, (iii) Reed Smith, LLP as special counsel, (iv) Mamo-O, Matsuo & Namba, as special counsel, (v), Dechert LLP as special counsel; and (vi) Sonnenschein, Nath & Rosenthal, LLP as special counsel; and
- prepared and filed application to retain (i) MMOR Consulting, Inc. as tax services provider, (ii) supplemental application of the Debtors for authorization to amend the engagement letter between the Debtors and

Lazard Feres & Co. LLC as investment banker to the Debtors, (iii) Wollmuth Maher & Deutsch LLP as special counsel to the Debtors, and (iv) Clyde Click, P.C. as special counsel; and (v) prepared application to retain Samuel T. Freeman as its auction house and MMN as special counsel.

53.    The professional services performed by Weil were actual, necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and their stakeholders.  Compensation for such services as requested is commensurate with the complexity, importance, and nature of the issues and tasks involved.  The professional services were performed expeditiously and efficiently.

54.    The professional services performed by members and associates of Weil were rendered by the Business Finance & Restructuring, Corporate, Litigation, and Tax Departments in numerous offices across three continents.  Weil has a preeminent Business Finance & Restructuring practice and maintains an international reputation for its expertise in financial reorganizations and restructurings of troubled entities, with approximately 90 attorneys that specialize in this area of law.

## ACTUAL AND NECESSARY DISBURSEMENTS OF WEIL

55.    As set forth in Exhibit C hereto, Weil has disbursed $1,043,188.95 as expenses incurred in providing professional services during the Sixth Compensation Period.  These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases.  For example, the novel legal issues invoked by the global scope of the Debtors' businesses and the complex nature of the many financial arrangements they are party to require Weil attorneys to work long hours, engage in numerous long distance and international communications, and perform considerable computerized research in order to effectively prosecute the Debtors' chapter 11 cases.

56.     The time constraints facing the Debtors, along with the sheer magnitude of tasks generated by these cases, have required Weil's attorneys and other employees to devote significant time during the evenings and on weekends to perform legal services on behalf of the Debtors.  Such services were essential to meet deadlines, timely respond to motions and objections, and to satisfy the extraordinary demands of the Debtors' businesses and the administration of these complex chapter 11 cases.

57.     While Weil has not charged the Debtors for any overtime expenses, consistent with firm policy, attorneys and other employees of Weil who worked late into the evenings or on weekends were reimbursed for their reasonable meal costs and their cost for transportation from the office to home.  Weil's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services.  The reimbursement amounts do not exceed those set forth in the U.S. Trustee Guidelines.

58.     With respect to photocopying expenses, Weil's domestic offices charge all of Weil's clients $.10 per page for black-and-white copies.  With respect to facsimile expenses, in compliance with the U.S. Trustee Guidelines, Weil does not charge for facsimile transmissions, other than the cost of long distance facsimiles at applicable toll charge rates, which invariably are less than the $1.25 per page amount permitted by the U.S. Trustee Guidelines.  Each of these categories of expenses does not exceed the maximum rate set by the U.S. Trustee Guidelines.  These charges are intended to cover Weil's direct operating costs, which costs are not incorporated into the Weil hourly billing rates.  Only clients who actually use services of the types set forth in <u>Exhibit C</u> are separately charged for such services.  The effect of

including such expenses as part of the hourly billing rates would impose that cost upon clients who do not require extensive photocopying and other facilities and services. The amount of the standard photocopying charge is intended to allow Weil to cover the related expenses of its photocopying service. A determination of the actual expenses per page for photocopying, however, is dependent on both the volume of copies and the total expenses attributable to photocopying on an annual basis.

59.     In addition, because of the global scope of the Debtors' businesses, frequent long distance and international telephone calls are required. On many occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services. These disbursements are not included in Weil's overhead for the purpose of setting billing rates. Weil has made every effort to minimize its disbursements in these cases. The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

60.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331. Section 330 provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." Id. § 330(a)(1). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –

(A)     the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under [the Bankruptcy Code];

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under [the Bankruptcy Code].

Id. § 330(a)(3).

61.     In the instant case, Weil respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this application were necessary for and beneficial to the Debtors' preservation, the orderly administration of their estates, and the prosecution of their chapter 11 cases.  Weil worked assiduously to anticipate or respond to the Debtors' needs and assist in the Debtors' chapter 11 process.  The professional services were performed expediently and efficiently.  Whenever possible, Weil sought to minimize the costs of its services to the Debtors by utilizing talented junior attorneys and paraprofessionals to handle more routine aspects of case administration.  Groups of the same Weil attorneys were utilized for similar tasks in these cases to minimize the costs of intra-Weil communication and education about the Debtors' circumstances.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Debtors, their estates, and all parties in interest.  Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved.  Furthermore, Weil voluntarily reduced its requests for fees and expenses incurred during the Sixth Compensation Period in the aggregate amount of $718,288.18.  Approval of the

compensation for professional services and reimbursement of expenses sought herein is warranted.

## **CONCLUSION**

62.    Weil respectfully requests the Court allow interim compensation for professional services rendered during the Sixth Compensation Period in the amount of $43,669,789.45, consisting of $42,626,600.50, representing 100% of fees incurred during the Sixth Compensation Period, and reimbursement of $1,043,188.95, representing 100% of actual and necessary expenses incurred during the Sixth Compensation Period, without prejudice to Weil's right to seek additional compensation for services performed and expenses incurred during the Sixth Compensation Period, which were not processed at the time of this application, and (ii) direct payment by the Debtors of the difference between the amounts allowed and the amounts previously paid by the Debtors pursuant to the Administrative Order.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested and such other and further relief as is just.

Dated: December 14, 2010
        New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT A

### (Third Party Representations)

| Lehman Entity Represented | Amount Paid |
|---|---|
| Lehman Commercial Paper Inc. | $35,000.00 |
| Lehman Commercial Paper Inc. | $22,000.00 |
| Lehman Commercial Paper Inc. | $35,000.00 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $144,066.31 |
| Lehman Brothers Holdings Inc, Lehman Commercial Paper Inc., Real Estate Private Equity Inc. and certain of their affiliates | $152,179.00 |
| Subsidiary Of PAMI LLC and Lehman Commercial Paper Inc. | $3,222.50 |
| Subsidiary Of PAMI LLC and Lehman Commercial Paper Inc. | $3,861.23 |
| Subsidiary Of PAMI LLC and Lehman Commercial Paper Inc. | $12,885.60 |
| Subsidiary Of PAMI LLC and Lehman Commercial Paper Inc. | $15,201.50 |
| Subsidiary Of PAMI LLC and Lehman Commercial Paper Inc. | $165,934.77 |
| Subsidiary Of PAMI LLC | $50,395.60 |
| Subsidiary Of PAMI LLC | $83,835.89 |
| Subsidiary Of PAMI LLC | $164,306.93 |
| Subsidiary Of PAMI LLC | $150,487.19 |
| Subsidiary Of PAMI LLC | $150,487.19 |
| Subsidiary Of PAMI LLC | $150,487.20 |
| Lehman Commercial Paper Inc. | $16,125.50 |
| Lehman Commercial Paper Inc. | $45,000.00 |
| Lehman Commercial Paper Inc. | $15,187.65 |
| Lehman Commercial Paper Inc. | $35,191.34 |
| Lehman Commercial Paper Inc. | $32,936.94 |
| Lehman Commercial Paper Inc. | $50,341.00 |
| Lehman Commercial Paper Inc. | $35,356.85 |
| Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc. and Lehman ALI Inc. | $185,987.55 |
| Lehman Commercial Paper Inc. | $10,793.12 |
| Lehman Commercial Paper Inc. | $61,326.30 |
| Lehman Commercial Paper Inc. | $8,833.50 |
| **Total:** | **$1,836,430.66** |

# EXHIBIT B

**(Certification)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re**                                                              :        **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (JMP)**
:
                        **Debtors.**                    :        **(Jointly Administered)**
:
-------------------------------------------------------------------x

## CERTIFICATION UNDER GUIDELINES FOR FEES
## AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT
## OF SIXTH APPLICATION OF WEIL, GOTSHAL & MANGES LLP
## FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES

I, Shai Y. Waisman, hereby certify that:

1.        I am a partner with the applicant firm, Weil, Gotshal & Manges LLP

("Weil"), with responsibility for the chapter 11 cases of Lehman Brothers Holdings Inc. and

certain of its affiliates, as debtors in possession in the above-captioned cases (collectively, the

"Debtors"), in respect of compliance with the Guidelines for Fees and Disbursements for

Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on June

20, 1991 (the "Fee and Disbursement Guidelines") and the Amended Guidelines for Fees and

Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by

the Court on April 19, 1995 (together with the Fee and Disbursement Guidelines, the "Local

Guidelines"), the United States Trustee Guidelines for Reviewing Applications for

Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on

January 30, 1996 (the "U.S. Trustee Guidelines") and the Second Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals

[Docket No. 3102] (the "Administrative Order," and together with the Local Guidelines and the

U.S. Trustee Guidelines, the "Guidelines").

2.       This certification is made in respect of Weil's application, dated

December 14, 2010 (the "Application"), for interim compensation and reimbursement of

expenses for the period commencing June 1, 2010 through and including September 30, 2010

(the "Sixth Compensation Period") in accordance with the Guidelines.

3.       In respect of section A.2 of the Fee and Disbursement Guidelines, I certify

that Weil reviewed the fee application and has approved it.

4.       In respect of section B.1 of the Local Guidelines, I certify that:

    a.       I have read the Application;

    b.       to the best of my knowledge, information, and belief formed after
reasonable inquiry, the fees and disbursements sought fall within
the Local Guidelines;

    c.       the fees and disbursements sought are billed at rates in accordance
with those customarily charged by Weil and generally accepted by
Weil's clients; and

    d.       in providing a reimbursable service, Weil does not make a profit
on that service, whether the service is performed by Weil in-house
or through a third party.

5.       In respect of section B.2 of the Local Guidelines and as required by the

Administrative Order, I certify that Weil has complied with these provisions requiring it to

provide counsel for the statutory committee of unsecured creditors appointed in these cases (the

"Committee") and the Debtors, with a statement of Weil's fees and disbursements accrued

during the previous months, although, due to administrative limitations, such statements were not always provided within the timetables set forth in the Local Guidelines and the Administrative Order.

6.    In respect of section B.3 of the Local Guidelines, I certify that the Debtors, attorneys for the Committee, and the United States Trustee for the Southern District of New York are each being provided with a copy of the Application.

Dated: December 14, 2010
       New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors in Possession

## <u>EXHIBIT C</u>

**<u>EXPENSE SUMMARY BY WEIL, GOTSHAL & MANGES LLP FOR THE
SIXTH INTERIM PERIOD OF JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010</u>**

| EXPENSES | AMOUNTS |
|---|---:|
| Business Meals | $45,334.10 |
| Computerized Research / Other Research | $466,791.53 |
| Consultant / Witness / Deposition Fees | $10,826.30 |
| Corporation Service | $11,576.57 |
| Court / Filing / Regulatory Fees | $26,979.34 |
| Court Reporting | $30,064.46 |
| Duplicating | $234,171.12 |
| E-Discovery Services / Document Scanning and Coding | $6,983.03 |
| Facsimile | $855.00 |
| Messenger / Process Service | $10,764.77 |
| Moving & Storage | $55.75 |
| Outside Temps - Paralegal/Other | $766.25 |
| Periodicals / Online News Monitoring | $1,304.36 |
| Postage and Express Mail | $15,299.31 |
| Telephone | $6,073.24 |
| Translation Fees | $1,526.06 |
| Travel and Transportation | $173,817.76 |
| **Total:** | **$1,043,188.95** |

### EXHIBIT D

## COMPENSATION BY WORK TASK CODE FOR SERVICES
## RENDERED BY WEIL, GOTSHAL & MANGES LLP FOR SIXTH
## INTERIM PERIOD OF JUNE 1, 2010 THROUGH SEPTEMBER 30, 2010

| TASK CODE | DESCRIPTION | HOURS | AMOUNT |
|---|---|---|---|
| 0100 | General Case Administration | 159.50 | $54,315.50 |
| 0200 | General Case Strategy Meetings | 255.20 | $178,763.00 |
| 0300 | Project Monitoring/Court Calendar & Docket Maintenance | 560.40 | $218,016.50 |
| 0400 | Hearings and Court Communications | 640.70 | $271,695.00 |
| 0500 | Non-Working Travel | 745.10 | $269,569.00 |
| 0600 | Interested Party Communications/Website/Lehman Team Hotline | 214.50 | $133,521.50 |
| 0700 | Communications with Debtors | 0.80 | $792.00 |
| 0800 | Unsecured Creditors Issues/Meetings/Communications/Creditors' Committee | 105.10 | $90,522.00 |
| 0900 | Secured Creditors' Issues/Meetings/Communications | 53.10 | $38,185.50 |
| 1000 | Equity Holders/Motions/Hearings/Communications | 64.30 | $30,642.50 |
| 1100 | LBI/SIPC Coordination and Issues | 147.70 | $101,274.50 |
| 1200 | Cash Management | 54.70 | $30,640.50 |
| 1300 | Insurance Issues | 34.70 | $19,270.50 |
| 1400 | Employee/ERISA/Benefits/Pension Issues | 2,228.30 | $1,593,026.00 |
| 1500 | Customer/Vendor Issues | 36.40 | $25,968.50 |
| 1600 | Utility Issues | 0.60 | $372.00 |
| 1700 | Intellectual Property | 90.70 | $63,835.50 |
| 1800 | Tax Issues | 512.10 | $321,895.00 |
| 1900 | Corporate Governance | 498.00 | $190,109.00 |
| 2000 | Other General Business Operation Issues | 73.10 | $43,442.00 |
| 2100 | Intercompany Issues | 150.00 | $96,167.50 |
| 2200 | Data Preservation/Migration | 6.40 | $4,885.00 |
| 2300 | Real Estate Matters | 16,598.00 | $10,252,837.50 |
| 2400 | Private Equity | 1,575.80 | $793,806.00 |

| | | | |
|---|---|---:|---:|
| 2500 | All Derivatives (Adversaries, ADR, Claims, etc.) | 20,825.20 | $13,396,514.00 |
| 2600 | Loans/Investments | 1,974.40 | $1,140,044.00 |
| 2700 | Domestic Bank and Related Regulatory Issues | 388.30 | $305,057.50 |
| 2800 | International Insolvency Issues | 2,080.20 | $1,357,430.00 |
| 2900 | Schedules/Statement of Financial Affairs | 1.10 | $470.00 |
| 3000 | Non-Derivative Automatic Stay/Safe Harbor Issues | 169.90 | $81,926.50 |
| 3100 | Miscellaneous Asset Sales/363 Issues | 1,090.20 | $587,242.50 |
| 3200 | Non-Derivative Executory Contracts/365 Issues | 27.90 | $10,291.00 |
| 3500 | Plan of Reorganization/Plan Confirmation/Plan Implementation | 1,405.00 | $917,433.00 |
| 3600 | Disclosure Statement/Solicitation/Voting | 37.70 | $26,682.50 |
| 3700 | Non-Derivative Claims Reconciliation, Estimation, Litigation and ADR | 3,452.10 | $2,045,640.00 |
| 3800 | Other Bankruptcy Motions and Matters | 3,468.50 | $1,960,029.00 |
| 3900 | Non-Derivative Adversary Proceeding Prep and Litigation | 1,944.20 | $1,034,823.50 |
| 4000 | Non-Bankruptcy Litigation | 2,021.30 | $1,063,881.50 |
| 4100 | 2004 Issues | 231.30 | $112,163.00 |
| 4200 | Appeals | 942.10 | $558,749.00 |
| 4300 | US Trustee Related Issues | 39.80 | $22,334.50 |
| 4400 | SEC/DOJ Issues | 5,065.60 | $1,780,264.00 |
| 4500 | Examiner Issues | 870.70 | $452,809.00 |
| 4600 | Firm's Own Billing/Fee Applications | 1,933.80 | $612,553.00 |
| 4700 | Firm's Own Retention Issues | 96.20 | $23,942.00 |
| 4800 | Third Party Retention/Fee Application/Other Issues | 747.20 | $312,769.00 |
| **Total Disbursements Requested:** | | **73,617.90** | **$42,626,600.50** |