

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
100 F Street, N.E.
Washington, D.C. 20549-8030B

OFFICE OF THE
GENERAL COUNSEL

December 16, 2010

The Honorable James M. Peck
Bankruptcy Judge of the United States
 Bankruptcy Court
U.S. Bankruptcy Court, SDNY
One Bowling Green
New York, NY 10004-1408

Re:   Clarification letter concerning Post-Trial Brief of the Securities and
      Exchange Commission, *In re Lehman Brothers Holdings, Inc*., No. 08-
      13555 (Ch. 11) and *In re Lehman Brothers Inc.*, No. 08-01420 (SIPA)
      (Jointly Adminstered).

Dear Judge Peck:

   In its Post Trial Brief, the Commission offered its interpretation of its Customer Protection Rule, Rule 15c3-3.  In particular, it explained that in its view, transferring to Barclays assets held in the Reserve Bank Account or assets included as a debit item in the reserve calculation, in the event such transfer would increase the deficiency in the account and LBI would not have sufficient funds to satisfy all claims of the remaining customers, would violate or cause a violation of Rule 15c3-3.  In its Memorandum of Law in Response to Post Trial Submissions by the SEC and SIPC, Barclays criticizes the Commission for not stating this understanding until long after the purchase by Barclays of certain LBI assets was concluded.  (Memorandum at 1, 13-14.)  The Commission wishes to submit this clarification letter in response to Barclay's claim; it does not address any other issue in the Memorandum.

   The Commission staff who  were involved in the LBI liquidation at the time of the sale and thereafter consistently stated to the parties that only excess funds in the Reserve Bank Account could be transferred to Barclays.  For instance, this position is reflected in the record by an e-mail between Lehman officials on

September 22, 2008, before the transaction closed, describing a conversation with Commission staff, who cautioned that there could be no withdrawals from the Reserve Bank Account unless there was a calculation showing that there was a surplus in the account after customer claims were met.  See BCI Appendix, Exhibit 279, e-mail from M. Kelly of Lehman to A. Stucchio of Lehman, dated 9/22/2008 1:07:32 AM ("s e c told us we need to do a 15c3 calc for each of the accounts that transfer and those which will not before they are comfortable releasing cushion/surplus to barclays").

     Representatives of Barclays approached the Commission's staff seeking payment of the $769 and $507 million dollars at issue shortly after the transaction was approved.  Consistently with the position taken at the time of sale and also in the Commission's Post Trial Brief, the staff advised Barclays that in the staff's view, it would violate Rule 15c3-3 to release these funds to Barclays unless there was an excess in the account after customer claims were met. See, e.g., BCI Appendix, Exhibit 56, deposition testimony of Alastair Blackwell, managing director of Barclays Capital, Tr. 201, 204, 206-08, 214 (at a meeting with Blackwell shortly after the transaction was approved, Commission staff was not comfortable approving the release of securities from the Reserve Bank Account because it was not clear that there was an excess in the Account, and Blackwell understood that "if there isn't an excess, then I'm not expecting [staff] to release the securities").

                                        Respectfully submitted,

                                        /s/ Jacob H. Stillman

                                        Jacob H. Stillman
                                        Solicitor
                                        202-551-5130

cc:    Christopher K. Kiplok, Esq.
        Hamish Hume, Esq.
        Robert Gaffey, Esq.
        James Tecce, Esq.