**Hearing Date and Time: January 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  January 6, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  |  |
|---|---|
| In re | Chapter 11 Case No. |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | **08-13555 (JMP)** |
| **Debtors.** | **(Jointly Administered)** |

------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION, PURSUANT TO**
**SECTION 362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES**
**9019 AND 4001, FOR AN ORDER (I) MODIFYING THE AUTOMATIC STAY**
**TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS**
**INSURANCE POLICIES AND (II) APPROVING AN AGREEMENT AND RELEASE**

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases (together, the "Debtors") for an Order (i) modifying the automatic stay, to the

extent applicable, to permit the Debtors' third-party insurers to make payments in connection

with a settlement agreement between Northgate Minerals Corporation ("Northgate") and certain

individual defendants, and (ii) authorizing LBHI to enter into and perform a release agreement

with Northgate, all as more fully described in the Motion, will be held before the Honorable

James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court,

Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New

York 10004 (the "Bankruptcy Court"), on **January 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (v) Bailey Cavalieri LLC, One Columbus, 10 West Broad St., Suite 2100, Columbus, Ohio 43215-3422, Attn: Thomas E. Geyer, Esq. and Robert Eblin, Esq., attorneys for Zurich American Insurance Co.; (vi) Wiley Rein, LLP, 1776 K Street NW, Washington DC 20006, Attn: Kimberly M. Melvin, attorneys for U.S. Specialty Insurance Company; (vii) Eiseman Levine Lehrhaupt &

Kakoyiannis, P.C., 805 Third Avenue, 10th Floor, New York, NY 10022, Attn: Eric R. Levine,

attorneys for Northgate; and (viii) any person or entity with a particularized interest in the

Motion, so as to be so filed and received by no later than **January 6, 2011 at 4:00 p.m.**

**(Prevailing Eastern Time)** (the "Objection Deadline").

       PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not

received by the Objection Deadline, the relief requested shall be deemed unopposed, and the

Bankruptcy Court may enter an order granting the relief sought without a hearing.

       PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend

the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: December 17, 2010
     New York, New York

               /s/ Richard P. Krasnow
               Richard P. Krasnow

               WEIL, GOTSHAL & MANGES LLP
               767 Fifth Avenue
               New York, New York 10153
               Telephone: (212) 310-8000
               Facsimile: (212) 310-8007

               Attorneys for Debtors
               and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                 :
In re                                                            :      **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                     :      **08-13555 (JMP)**
                                                                 :
                                        **Debtors.**             :      **(Jointly Administered)**
                                                                 :
-----------------------------------------------------------------x

**DEBTORS' MOTION, PURSUANT TO SECTION 362**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 9019**
**AND 4001, FOR AN ORDER (I) MODIFYING THE AUTOMATIC STAY TO**
**ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS**
**INSURANCE POLICIES AND (II) APPROVING AN AGREEMENT AND RELEASE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and

respectfully represent:

**Preliminary Statement**

        1.     On six prior occasions, the Court has modified the automatic stay provided

for under section 362(a) of title 11 of the United States Code (the "Bankruptcy Code"), to the

extent applicable, to remove any impediments to payment by certain of the Debtors' insurers of

directors and officers coverage of settlement amounts or defense costs or fees that current or former directors, officers, and employees of the Debtors incurred or were incurring as defendants in ongoing lawsuits, arbitration proceedings, regulatory and other investigations.[1] By this Motion, the Debtors seek similar relief to assure U.S. Specialty Insurance Company ("U.S. Specialty") and, to the extent it is obligated to make any payment, Zurich American Insurance Company ("Zurich," and together with U.S. Specialty, the "Insurers"), respectively the Debtors' fourth and fifth level excess insurers under the Debtors' 2007-2008 directors and officers liability insurance program, that they are authorized to make payments in connection with a settlement agreement between Northgate Minerals Corporation ("Northgate") and certain of the Debtors' current or former directors, officers, and employees (the "Individual Defendants") without concern that they are violating the automatic stay.

2.     For Claims[2] made against the Individual Defendants during the period from May 16, 2007 to May 16, 2008 (the "Policy Period"), the Debtors purchased a primary policy from XL Specialty Insurance Company ("XL," and said policy the "2007-2008 Primary D&O Policy") plus additional excess coverage for this period from a number of other carriers of

---

[1] *See* Orders dated March 25, 2009 [Docket No. 3220] (modifying automatic stay to allow advancement of defense costs with respect to XL Specialty Insurance); November 23, 2009 [Docket No. 5906] (modifying the automatic stay to allow advancement of defense costs with respect to Federal Insurance Company); December 17, 2009 [Docket No. 6297] (modifying the automatic stay to allow payment of settlement amounts by XL Specialty Insurance Company and Federal Insurance Company); August 20, 2010 [Docket No. 10945] (modifying the automatic stay to allow advancement of defense costs with respect to Continental Casualty Company, Certain Underwriters at Lloyd's London, and U.S. Specialty Insurance Company); November 18, 2010 [Docket No. 12896] (modifying the automatic stay to allow advancement of defense costs with respect to Zurich American Insurance Company, Ace Bermuda Insurance Ltd., St. Paul Mercury Insurance Company, XL Specialty Insurance Company and Federal Insurance Company); and November 18, 2010 [Docket No. 12895] (modifying the automatic stay to allow payment of settlement amounts by Certain Underwriters at Lloyd's London and London Market Company) (collectively, the "Prior Stay Orders").

[2] Capitalized terms that are used but not otherwise defined herein shall have the meanings ascribed to them in the Policies.

up to $250 million in the aggregate.   The excess policies include policies underwritten by U.S. Specialty (the "U.S. Specialty Policy") and Zurich (the "Zurich Policy," and together with the U.S. Specialty Policy, the "Policies").  The Policies are all "follow form" policies subject to additional independent terms and conditions.  That is, the terms and conditions of the excess coverage are governed by the 2007-2008 Primary D&O Policy, but each excess insurer's obligations are subject to certain additional terms, such as limits of liability, and attach only after all Loss within the respective Limits of Liability of the underlying policies has been paid.  As the fourth and fifth excess insurers for the Policy Period, U.S. Specialty and Zurich provide coverage of $15 million in excess of $55 million and $15 million in excess of $70 million, respectively.

3.    Confirming the Insurers' ability to make settlement payments on behalf of the Individual Defendants is in the best interests of the Debtors' estates and creditors because, *inter alia*, the interests of the Debtors' estates, if any, in the proceeds of the Policies are expressly subordinate to the interest of the Individual Defendants.  Specifically, the Policies provide that the Debtors have a right to the insurance proceeds only after the Individual Defendants are fully reimbursed for any "Loss," including defense costs and settlement payments.  As such, granting the relief requested by this Motion is unlikely to have any adverse effect on the Debtors' estates and creditors.  In addition, pursuant to an agreement and release (the "Release Agreement"), Northgate has agreed to the extinguishment of its claim filed against LBHI in the amount of $304,677,735.31, and to exchange mutual releases with LBHI with respect to all matters relating to such claim.  Accordingly, granting the relief requested herein is in the best interest of the Debtors' estates and creditors.

**Background**

4.        Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.        On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.        On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

7.        On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531].

8.        On April 14, 2010, the Debtors filed their revised joint chapter 11 plan [Docket No. 8330] and disclosure statement for their revised joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 8332].

## Jurisdiction

9.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Lehman's Business

10.    Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Relief Requested

11.    The Debtors seek the entry of an order (i) granting relief from the

automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it

applies, to allow the Insurers to make settlement payments in the aggregate amount of $975,000

(the "Settlement Amount") in connection with the terms of a settlement agreement (the

"Settlement Agreement") between Northgate and certain of the Individual Defendants (together,

the "Parties") as required under the Policies; and (ii) authorizing LBHI to enter into and perform

the Release Agreement, which will result in the extinguishment of the protective proof of claim

Northgate filed against LBHI in respect of its claims that are the subject of the Settlement

Agreement.  Copies of the Settlement Agreement and the Release Agreement are attached hereto

as Exhibits A and B, respectively.  The Debtors further request that the Court waive the

requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested

relief be effective immediately.

## The Debtors' Directors and Officers Liability Insurance Policies

12.     Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and excess directors and officers ("D&O") liability insurance, which provides coverage for the Debtors' current and former officers, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations.

13.     As discussed above, subject to the terms, conditions, limitations and exclusions of the Policies, U.S. Specialty and Zurich cover Loss (defined as settlement payments, defense fees, costs and expenses and judgments, among other things) of $15 million in excess of $55 million and $15 million in excess of $70 million, respectively, incurred as a result of Claims made during the Policy Period for Wrongful Acts allegedly committed by the Individual Defendants in their capacity as directors, officers, and / or employees of LBHI and certain of its subsidiaries.[3]  Coverage under the Side A provision of the Policies is immediately available to the Individual Defendants for any Loss resulting from Claims made under the Policies that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

14.     Furthermore, the Policies contain a "Priority of Payments" provision, which provides that when competing claims for coverage under both Insuring Agreement (A) for non-indemnifiable loss, as described above, and Insuring Agreement (B) are made under the Policies, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ."  *See* Endorsement 22.  Thus, the Policies, by virtue of Insuring Agreement A and the Priority of Payments provision, provide for

---

[3] Copies of the 2007-2008 Primary D&O Policy, the U.S. Specialty Policy, and the Zurich Policy for such period are attached hereto as Exhibits C, D, and E, respectively.

the immediate payment of the Settlement Amount on behalf of the Individual Defendants ahead

of any payment that may be made to the Debtors.

## The Arbitration

15.     Both prior to and after the collapse of the Lehman enterprise in September

2008, various securities actions were commenced against certain current and former officers,

directors and employees of Lehman in both federal and state courts and before various regulatory

agencies.  The Settlement Agreement relates to an arbitration proceeding captioned *Northgate*

*Minerals Corporation v. Lehman Brothers Inc., et al*. [Case No. 08-02235] (the "Arbitration").

The Arbitration involves claims relating to alleged common law and securities law violations by

the Individual Defendants relating to Northgate's investment in certain auction rate securities.

The Arbitration is pending before an Arbitral Tribunal constituted under the rules of the

Financial Industry Regulatory Authority ("FINRA").

16.     LBHI and the other chapter 11 Debtors are not named as respondents in

the Arbitration and are not parties to the Settlement Agreement.  Northgate, however, filed a

protective claim against LBHI in connection with the Arbitration (the "Proof of Claim") [Claim

No. 30593].  As described below, subject to entry of the order approving this Motion and

Northgate's receipt of the Settlement Amount from the Insurers pursuant to the Settlement

Agreement, the Proof of Claim will be will be disallowed with prejudice and expunged from the

claims register pursuant to the Release Agreement.

## The Settlement Agreement

17.    Northgate and the Individual Defendants have agreed to settle all disputes

outstanding between them, including those that are the subject of the Arbitration.  The salient

terms of the Settlement Agreement are as follows:[4]

- The effectiveness of the Settlement Agreement is subject to entry of an order in the Debtors' chapter 11 cases granting relief from the automatic stay, to the extent applicable, to permit the Insurers to pay the Settlement Amount to Northgate as provided in the Settlement Agreement;

- Within 10 business days after entry of a final order by this Court, the Insurers, as applicable, shall pay the Settlement Amount to Northgate from the proceeds of the Policies; and

- Within five business days after receipt of the Settlement Amount, Northgate shall: (1) dismiss the Arbitration with prejudice and (2) release any and all claims against persons Insured under the Policies that:  (i) concern Northgate's LBI account, (ii) Northgate brought in the Arbitration, (iii) relate to any of the Claims asserted or facts alleged in the Arbitration or the subject matter thereof, or (iv) that are based on the defense, settlement, or resolution of the Arbitration, which Claims Northgate ever had, now has, or hereafter may have against any and all Insureds.

## The Release Agreement

18.    In connection with the Settlement Agreement, LBHI and Northgate have

agreed to provide each other with certain mutual releases, including with respect to the Proof of

Claim.  The salient terms of the Release Agreement are as follows:[5]

- The effectiveness of the Release Agreement is subject to entry of an order in the Debtors' chapter 11 approving LBHI's entry into the Release Agreement;

---

[4] To the extent there is an inconsistency between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control.

[5] To the extent there is an inconsistency between this summary and the Release Agreement, the terms of the Release Agreement shall control.

- Upon Northgate's receipt of the Settlement Amount from the Insurers, the Proof of Claim will be disallowed with prejudice and expunged from the claims register; and

- LBHI and Northgate, on behalf of themselves, their agents, employees, principals, professionals, successors and assigns waive and forever release any and all claims, rights, causes of action, right of payment and defenses they may have against each other solely in respect of the matters raised in or related to the Proof of Claim and the Arbitration.

**To the Extent it Applies, Cause Exists to Modify the Automatic
<u>Stay to Authorize the Insurers to make the Settlement Payment</u>**

19.     Pursuant to the Prior Stay Orders, this Court has granted relief that is similar to the relief sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors and Individual Defendants that are governed by the same terms and conditions as the Policies. Accordingly, because cause to modify the automatic stay was found to exist under the Prior Stay Orders, *a fortiori*, such cause exists here as well. If, however, the Debtors must independently demonstrate that such cause exists to allow the Insurers to pay the Settlement Amount, as described below, it is beyond peradventure that such a modification of the automatic stay is warranted.

A.     <u>The Proceeds Are Not Property of the Estate</u>

20.     Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate. It is well-settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code. *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988). However, courts have distinguished between ownership of a *policy* and ownership of the *proceeds* of a policy. While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds

of such policy are not property of the bankruptcy estate.  *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

21.     In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. *See also In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law").

22.     The Policies contain an unambiguous priority of payments endorsement that expressly subordinates any potential rights of the Debtors to proceeds payable under the Policies to the rights of the Individual Defendants.  The priority of payments endorsement is an

enforceable contractual provision and should be upheld for the benefit of the Individual

Defendants as intended.  *See In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11,

2002) [Docket No. 3278] (holding that priority of payment provision was an enforceable

contractual right).[6]

23.    Consistent with the purpose of such policies, the Debtors purchased the

Policies primarily to provide insurance coverage to their officers and directors, including the

Individual Defendants.  *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999)

("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests

and not a vehicle for corporate protection.").  The Debtors' speculative rights to any residual

proceeds, which would be payable only in the event that the Debtors indemnified the Individual

Defendants and which are subject to an express contractual subordination provision, should not

alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B.    Cause Exists to Modify the Automatic Stay, to the Extent
      That it Applies, to Allow Payment of the Settlement Amount.

24.    Even if the proceeds from the Policies are determined to be property of the

estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic

stay to allow for the payment of the Settlement Amount as required under the Policies.  It is not

uncommon for courts to grant stay relief to allow payment of settlement costs to directors and

officers, especially when there is no evidence that direct coverage of the debtor will be

necessary.  *See Allied Digital*, 306 B.R. at 513.

25.    Allowing the Insurers to pay the Settlement Amount will, in fact, benefit

the Debtors' estates.  The Debtors believe that they have an obligation, albeit a pre-chapter 11

---

[6] A copy of the Court's bench ruling in *Enron* is attached hereto at Exhibit F.

obligation, under their by-laws to advance the settlement costs incurred by the Individual

Defendants.

26.    Modifying the automatic stay will not harm the Debtors' estates.  As

explained above, any rights the Debtors have to the proceeds are contractually subordinated to

the rights of the Individual Defendants pursuant to the priority of payments clause.  Further,

pursuant to this Court's *Order Modifying the Automatic Stay to Allow Advancement Under (I)*

*2007-2008 Directors and Officers Insurance Policies by Zurich Amercian Insurance Company,*

*Ace Bermuda Insurance Ltd. And St. Paul Mercury Insurance Company, And (Ii) 2008-2009*

*Directors And Officers Insurance Policies By XL Specialty Insurance Company And Federal*

*Insurance Company* [Docket No. 12896], entered November 18, 2010, the Insurers are already

authorized to advance defense costs to the Individual Defendants in connection with the

Arbitration, which defense costs are expected to equal or exceed the Settlement Amount if the

Arbitration is litigated.

27.    Alternatively, if this Court finds that the Debtors have some interest in the

proceeds of the Policies, the Debtors submit that any such interest is nominal and in any event

cannot be determined until the Individual Defendants' losses have been quantified and paid.

Advancing the Settlement Amount pursuant to the Policies, which represents a *de minimis*

percentage of the Debtors' total outstanding coverage under its primary and excess 2007-2008

D&O Policies, is appropriate.  Accordingly, cause exists to modify the automatic stay pursuant

to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow the Insurers to pay the

Settlement Amount pursuant to the terms of the Settlement Agreement and subject to the terms

of the Policies.

28.    In making this Motion, neither the Debtors, the Individual Defendants, nor the Insurers are waiving any of their respective rights under the Policies or any other insurance policy.  In addition, the Debtors are not seeking a determination of the Insurers' obligation to pay any settlement costs under the Policies.  Rather, the Debtors seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow the Insurers to make payment of the Settlement Amount.

## The Release Agreement Should be Approved

29.    The Release Agreement provides for the elimination of the Proof of Claim, which will reduce the total balance of claims asserted against LBHI by over $300,000,000.  In exchange, LBHI has agreed to waive any claims that it may have against Northgate relating to the Proof of Claim and the Arbitration.  Since LBHI is not a party to the Arbitration, and the conduct that is the subject of the Proof of Claim and the Arbitration relates to parties and claims other than LBHI and the other chapter 11 Debtors – namely LBI – LBHI does not believe it holds any claims in respect of the Arbitration against Northgate.  Therefore, giving a release to Nothgate of any such claims and assuring Northgate that LBHI has not acquired any claims related to the Arbitration, in exchange for the extinguishment of the Proof of Claim, is a reasonable exercise of LBHI's business judgment and in the best interests of its estate.  Accordingly, the Release Agreement should be approved.

## Notice

30.    No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) U.S. Specialty; (vii) Zurich; (viii) Northgate; and (ix) all other parties entitled to notice in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Docket No. 9635].  The Debtors

submit that no other or further notice need be provided.

        WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  December 17, 2010
      New York, New York

                    /s/ Richard P. Krasnow
                    Richard P. Krasnow

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Debtors
                    and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                          :
In re                                                     :        **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (JMP)**
                                                          :
                                   **Debtors.**           :        **(Jointly Administered)**
                                                          :
-------------------------------------------------------------------x

<u>**ORDER GRANTING DEBTORS' MOTION, PURSUANT TO
SECTION 362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES
9019 AND 4001, FOR AN ORDER (I) MODIFYING THE AUTOMATIC STAY
TO ALLOW SETTLEMENT PAYMENT UNDER DIRECTORS AND OFFICERS
INSURANCE POLICIES AND (II) APPROVING AN AGREEMENT AND RELEASE**</u>

Upon the motion, dated December 17, 2010 (the "<u>Motion</u>"), of Lehman Brothers

Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "<u>Debtors</u>"), pursuant to section 362(d) of

title 11 to the United States Code (the "<u>Bankruptcy Code</u>") and Rules 9019 and 4001(a)(3) of the

Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for an order (i) modifying the

automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent applicable, to

allow U.S. Specialty Insurance Company and Zurich American Insurance Company (together,

the "<u>Insurers</u>") to make a settlement payment of $975,000 (the "<u>Settlement Payment</u>") in

connection with the terms of a settlement agreement (the "<u>Settlement Agreement</u>") between

Northgate Minerals Corporation ("<u>Northgate</u>") and the Individual Defendants,[1] a copy of which

is annexed to the Motion as <u>Exhibit A</u>, and (ii) approving LBHI's entry into and performance of

an agreement and release (the "<u>Agreement and Release</u>") between LBHI and Northgate, a copy

of which is annexed to the Motion as <u>Exhibit B</u>, all as more fully described in the Motion; and

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the amended

order entered June 17, 2010 governing case management and administrative procedures [Docket

No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the

attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) all parties who have requested notice in these chapter 11 cases; (vii)

U.S. Specialty Insurance Company; (viii) Zurich American Insurance Company; (ix) Northgate,

and it appearing that no other or further notice need be provided; and a hearing having been held

to consider the relief requested in the Motion; and the Court having found and determined that

the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors,

and all parties in interest and that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code,

the automatic stay, to the extent applicable, is hereby modified to, and without further order of

this Court, allow the Insurers to make the Settlement Payment provided for in the Settlement

Agreement on behalf of the Individual Defendants in accordance with the terms of the Policies; and it is further

ORDERED that the Debtors are authorized to execute all documentation necessary to allow the Insurers to fund the Settlement Payment on behalf of the Individual Defendants pursuant to the Settlement Agreement; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of the Insurers, the Debtors or the Individual Defendants provided for under the terms and conditions of the Policies; and it is further

ORDERED that all parties to the Policies reserve all rights and defenses with respect to the Policies that they would otherwise have; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Policies are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Policies are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

ORDERED that the Agreement and Release is approved; and it is further

ORDERED that, subject to Northgate's receipt of the Settlement Payment, proof of claim number 30593 asserted by Northgate against LBHI (the "Proof of Claim") is disallowed with prejudice, and, after receipt of the Settlement Payment, Northgate shall promptly file a notice on the docket instructing the claims agent to expunge the Proof of Claim from the claims register; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order.

Dated: January __, 2010
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE