# **EXHIBIT A**

**(THE SETTLEMENT AGREEMENT)**

US_ACTIVE:\43552148\06\58399.0003

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into by and between Claimant Northgate Minerals Corporation ("Northgate"), on the one hand, and Individual Respondents Roland Hansalik and Lars Jacobson (together, "Individual Respondents"), on the other hand. Northgate and Individual Respondents are referred to collectively as the "Settling Parties."

This Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all claims that were or could have been brought by Northgate against the Individual Respondents or any other Insured (as defined below). However, notwithstanding any terms or conditions contained herein, this Agreement is not intended to, and does not compromise, limit, waive or prejudice in any way, any claims, rights, and/or defenses that Northgate has against Lehman Brothers Holdings Inc. ("LBHI") or Lehman Brothers Inc. ("LBI", together with LBHI, the "Lehman Entities").

**I.  DEFINITIONS**

As used in this Agreement, the following capitalized terms have the meanings specified below.

1. "Arbitration" means the arbitration proceeding captioned *Northgate Minerals Corporation v. Lehman Brothers Inc., et al.* (Case No. 08-02235), pending before the Financial Regulatory Authority ("FINRA").

2. "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

3. "Chapter 11 Cases" means the voluntary cases commenced in the Bankruptcy Court by LBHI and certain of its subsidiaries under Chapter 11 of Title 11 of the United States Code, Case No. 08-13555 (JMP), *et seq.*

4. "Claims" means any and all claims, demands, rights, liabilities, damages, penalties, costs, losses, indemnities, duties, obligations, rights, causes of action, or suits of any nature (including claims for costs, attorneys' fees or expenses), whether known or unknown, concealed or hidden, fixed or contingent, direct or indirect, anticipated or unanticipated, whether actually asserted or that might have been asserted, whether legal, equitable, contractual, statutory, or any other type, under the federal or state securities laws or under any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside of the United States.

5. "Dismissal Stipulation" is a stipulation of dismissal to be filed with FINRA in the form attached as Exhibit A.

6. "Effective Date" means the date on which Northgate receives the Settlement Amount.

7. "Final Order" means an order by the Bankruptcy Court that is either finally affirmed on appeal, or is no longer subject to appeal and the time

LA1-3111649v4

for any petition for re-argument, appeal or review, by leave, certiorari or otherwise, has expired.

8. "Insured" means the Individual Respondents or any other individuals who are entitled to benefits under any Directors and Officers Liability Insurance (or similar coverage, however titled) issued to LBHI or LBI.

9. "Insurer" means U.S. Specialty Insurance Company or Zurich American Insurance Company. "Insurers" means each of them.

10. "Released Claims" means any and all Claims Northgate had ever had, now has, or hereafter may have against Releasees that: (i) concern Northgate's LBI account, (ii) Northgate brought in the Arbitration, (iii) relate to any of the Claims asserted or facts alleged in the Arbitration or the subject matter thereof, or (iv) are based on the defense, settlement or resolution of the Arbitration.

11. "Releasees" means all Insureds, including the Individual Respondents, together with their past, present, and future attorneys, accountants, agents, insurers (including but not limited to Insurers, together with any of their respective reinsurers), spouses, children, heirs, successors, assigns, trusts, corporations, companies, partnerships, affiliates, and any entity in which they have a controlling interest. The term Releasees shall not include the Lehman Entities.

12. "Releasors" means Northgate and each of its predecessors, successors, affiliates, assignors and assigns, direct or indirect parents, subsidiaries and/or affiliates, and each of their respective directors, officers, employees, agents, representatives and administrators.

13. "Settlement" means the settlement of the Arbitration, as embodied in this Agreement.

14. "Settlement Amount" means nine hundred, seventy-five thousand dollars ($975,000.00).

## II. TERMS OF SETTLEMENT

### A. Payment and Bankruptcy Court Approval

1. The Settlement is subject to the Bankruptcy Court entering an order in the Chapter 11 Cases authorizing relief from the automatic stay, to the extent applicable, to permit Insurer to pay the Settlement Amount to Northgate as provided herein. Should such authorization be withheld, the Agreement and the Settlement will be deprived of all legal effect, and the Settling Parties will be returned to their respective positions as of October 28, 2010.

2. Upon execution of this Agreement by each of the Settling Parties, Individual Respondents shall promptly take all reasonable steps to cause a motion to be filed in the Chapter 11 Cases seeking Bankruptcy Court approval of this Agreement.

3. Upon entry of a Final Order by the Bankruptcy Court, Individual Respondents shall take all reasonable steps to cause Insurer to pay the Settlement Amount to Northgate. Individual Respondents represent and

        warrant that they have consulted with each of Insurers before entering into this Agreement and that Insurers have agreed with Individual Respondents to the terms of this Agreement, including the terms regarding payment of the Settlement Amount.

4. Within ten business days of the Final Order, Insurer shall pay the Settlement Amount to Northgate by wire transfer using the following instructions:

        Beneficiary:
            Northgate Minerals Corporation
            110 Yonge Street, Suite 1601,
            Toronto, Ontario, M5C 1T4 Canada

        Beneficiary bank:
            The Bank of Nova Scotia
            44 King Street West
            Toronto, Ontario, Canada
            M5H 1H1

        Beneficiary Account # 80002 6314317
        Transit No. 80002
        ABA# 026002532
        Swift Code: NOSCCATT

**B. Dismissal of the Arbitration and Expungement**

1. Individual Respondents deny all charges of wrongdoing, violation of law, or liability against them arising out of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Arbitration. Individual Respondents enter into this Agreement solely to eliminate the uncertainties, burden and expense of further litigation. This Agreement shall in no event be construed as or deemed to be evidence of an admission or concession by Individual Respondents with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

2. Within five business days after receipt of the Settlement Amount, Northgate shall promptly take all reasonable steps to have its claims against Individual Respondents in the Arbitration dismissed with prejudice by filing the Dismissal Stipulation with FINRA.

3. Upon execution of the Dismissal Stipulation, it shall be deemed by all parties as if Northgate never asserted any claims against Individual Respondents in the Arbitration.

4. Unless required to by applicable law, or legal process, Northgate covenants to not sue, institute, continue, participate in, cooperate with, facilitate, encourage, or share information in connection with any claim, demand, suit, proceeding, arbitration, mediation, alternative dispute resolution or any action or proceeding in law or equity against Individual Respondents or any other Insured that are in any way relating to or arising from any act, omission or other matter concerning the Released Claims.

LA1-3111649v4                3

      Notwithstanding any terms or condition herein, Northgate expressly reserves all its rights against the Lehman Entities.

5. Northgate will not oppose any action brought pursuant to FINRA Rule 2080 by Individual Respondents, or either of them, before FINRA or a court of competent jurisdiction to obtain expungement of customer dispute information in their record (an "Expungement Action").

### C. Mutual Releases

1. Upon the Effective Date, Releasors shall be deemed to have, and shall have, fully, finally and forever released, relinquished, and discharged all Released Claims against Releasees.

2. Upon the Effective Date, Individual Respondents shall be deemed to have, and shall have, fully, finally, and forever released, relinquished, and discharged Northgate, and all of its past and present officers, employees, agents, attorneys, and representatives, from any and all Claims based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Arbitration, or otherwise related to or arising from any of the Claims asserted or facts alleged in the Arbitration, the subject matter thereof, or Northgate's LBI account.

3. The Settling Parties expressly waive the provisions, rights, and benefits of any statutory provision or common law rule that provides, in sum or substance, that a release does not extend to claims that a releasing party does not know or expect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any of the other parties. Each Settling Party expressly waives the provision of California Civil Code Section 1542, or any other similar, applicable provision of law, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

4. The Settling Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those that any of them or their counsel now knows or believes to be true with respect to the subject matter of the Claims. However, upon the Effective Date, the Settling Parties each shall have expressly, fully, finally, and forever settled and released any and all Claims, whether known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not now existing or coming into existence in the future, without regard to the subsequent discovery or existence of such different or additional facts.

D. **Representations and Warranties**

Each Settling Party represents and warrants as follows:

1. It or he has the full power and authority to enter into this Agreement;

2. Other than the Bankruptcy Court's authorization of the payment of the Settlement Amount as provided for herein, there are no other persons or entities whose consent to or joinder in this Agreement is necessary to make fully effective the provisions of this Agreement;

3. As of the date this Agreement is executed, this Agreement does not and will not interfere with any other agreement to which it or he is a party and, through the Effective Date, it or he will not enter into any agreement the execution and/or performance of which would violate or interfere with this Agreement;

4. As of the date this Agreement is executed, it or he has not transferred or assigned and, through the Effective Date, it or he will not transfer or assign, all or any part of the Claims that are released in this Agreement;

5. As of the date this Agreement is executed, Northgate is unaware of any Claims that: (i) concern Northgate's LBI account, (ii) Northgate brought in the Arbitration, (iii) relate to any of the Claims asserted or facts alleged in the Arbitration or the subject matter thereof, or (iv) are based on the defense, settlement or resolution of the Arbitration other than those it brought in the Arbitration or as are set forth in Exhibit B attached hereto. However, nothing contained in this Agreement, including the disclosure of certain Claims pursuant to this provision, shall be construed to mean that Northgate has compromised, limited, waived and/or prejudiced in any way, any of its claims, rights, defenses and/or offsets against the Lehman Entities.

E. **Miscellaneous Provisions**

1. The Settling Parties agree that the terms of this Agreement were negotiated in good faith on an arms' length basis, and reflect a settlement that was reached voluntarily after consultation with the Settling Parties' own legal counsel.

2. This Agreement constitutes the entire agreement between the Settling Parties on its subject matter, and no representations, warranties or inducements have been made to any Settling Party concerning this Agreement other than the representations, warranties and covenants contained in this Agreement.

3. This Agreement may be amended or modified only by a written instrument signed by or on behalf of all of the Settling Parties.

4. This Agreement shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Settling Party on the ground that the Settling Party or its counsel drafted the Agreement.

5. Each Settling Party shall bear all of his or its own costs, attorneys' fees, and experts' fees incurred in connection with the Arbitration, the

        Settlement and any Expungement Action, subject to any applicable insurance or indemnification.

6. This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of New York without giving effect to any choice of law rules or principles.

7. The Settling Parties intend that each of the provisions in the Agreement be independent and separate provisions, severable and divisible from the other provisions. In the event that any particular provision is deemed to be unenforceable by a court of competent jurisdiction, such provision should be deemed to be severed from this Agreement and all remaining provisions shall remain in full force and effect.

8. Each Settling Party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

9. This Agreement may be signed in counterparts, or duplicate originals, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may be original or may be provided by facsimile or pdf.

10. The person executing this Agreement on behalf of Northgate warrants and represents that he or she is authorized and legally empowered to execute this Agreement on behalf of Northgate.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT NORTHGATE MINERALS CORPORATION**

Dated: November ___, 2010

Name: Jon Douglas
Title: Senior VP + CFO

**INDIVIDUAL RESPONDENTS**

Dated: November ___, 2010

Roland Hansalik

Dated: November ___, 2010

Lars Jacobson

Settlement and any Expungement Action, subject to any applicable insurance or indemnification.

6. This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of New York without giving effect to any choice of law rules or principles.

7. The Settling Parties intend that each of the provisions in the Agreement be independent and separate provisions, severable and divisible from the other provisions. In the event that any particular provision is deemed to be unenforceable by a court of competent jurisdiction, such provision should be deemed to be severed from this Agreement and all remaining provisions shall remain in full force and effect.

8. Each Settling Party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

9. This Agreement may be signed in counterparts, or duplicate originals, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may be original or may be provided by facsimile or pdf.

10. The person executing this Agreement on behalf of Northgate warrants and represents that he or she is authorized and legally empowered to execute this Agreement on behalf of Northgate.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT NORTHGATE MINERALS CORPORATION**

Dated: November ___, 2010

Name:
Title:

**INDIVIDUAL RESPONDENTS**

Dated: November 22, 2010

Roland Hansalik

Dated: November ___, 2010

Lars Jacobson

          Settlement and any Expungement Action, subject to any applicable insurance or indemnification.

6. This Agreement shall be construed and enforced in accordance with, and governed by, the laws of the State of New York without giving effect to any choice of law rules or principles.

7. The Settling Parties intend that each of the provisions in the Agreement be independent and separate provisions, severable and divisible from the other provisions. In the event that any particular provision is deemed to be unenforceable by a court of competent jurisdiction, such provision should be deemed to be severed from this Agreement and all remaining provisions shall remain in full force and effect.

8. Each Settling Party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

9. This Agreement may be signed in counterparts, or duplicate originals, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may be original or may be provided by facsimile or pdf.

10. The person executing this Agreement on behalf of Northgate warrants and represents that he or she is authorized and legally empowered to execute this Agreement on behalf of Northgate.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT NORTHGATE MINERALS CORPORATION**

Dated: November ___, 2010

Name:
Title:

**INDIVIDUAL RESPONDENTS**

Dated: November ___, 2010

Roland Hansalik

Dated: November 22, 2010

Lars Jacobson

## EXHIBIT "A"

FINRA DISPUTE RESOLUTION
-----------------------------------------------------------x
NORTHGATE MINERALS CORPORATION,      :    FINRA No. 08-02235
                                     :
                        Claimant,    :
                                     :
       -against-                     :
                                     :    **STIPULATION OF**
LEHMAN BROTHERS INC.,                :    **DISMISSAL OF ALL**
ROLAND HANSALIK, LARS JACOBSON       :    **CLAIMS AGAINST**
AND RYAN GRASHOW,                    :    <u>**INDIVIDUAL RESPONDENTS**</u>
                                     :
                        Respondents. :
-----------------------------------------------------------x

**WHEREAS,** Northgate Minerals Corporation ("Northgate") filed its Statement of Claim, initiating the above-captioned arbitration, on July 3, 2008, naming as respondents Lehman Brothers Inc. ("Lehman"), Roland Hansalik, Lars Jacobson and Ryan Grashow (the "Arbitration");

**WHEREAS,** the Arbitration was stayed against Respondent Lehman following the Chapter 11 bankruptcy filing of Lehman's parent company, Lehman Brothers Holdings Inc. ("LBHI"), and a number of its subsidiaries or affiliates (S.D.N.Y. Case Nos. 08-13555 JMP, *et seq.*), which includes a proceeding against Lehman commenced under the Securities Investor Protection Act of 1970 (S.D.N.Y. Case No. 08-1420 JMP);

**WHEREAS,** following the stay against Lehman, Northgate decided to proceed against Respondents Roland Hansalik, Lars Jacobson and Ryan Grashow (the "Individual Respondents"), who timely filed their Answer on March 1, 2010;

**WHEREAS,** by stipulation of the parties dated October 14, 2010, Northgate's claims against Respondent Ryan Grashow were dismissed as reflected in email correspondence from FINRA on October 19, 2010;

LAI-3115178v1

WHEREAS, the remaining parties communicated to FINRA by letter from Claimant's counsel on October 20, 2010 that a settlement of the Arbitration had been reached and, by notice from FINRA dated October __, 2010, the two-week hearing scheduled for March 14, 2010 in Seattle, Washington was taken off calendar;

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED**, by and between the undersigned counsel, that all claims asserted against Respondents Roland Hansalik and Lars Jacobson are withdrawn with prejudice and without costs, expenses, or attorneys' fees to any party as against the other; it shall be deemed by all parties as if Claimant Northgate never asserted any claims against these Individual Respondents; and their names shall be deleted from the caption of the Arbitration;

**IT IS FURTHER STIPULATED AND AGREED** that, despite the dismissal of all claims against the Individual Respondents in this Arbitration with prejudice, nothing in this Stipulation or the dismissal of this Arbitration is not intended to, and shall not compromise, limit, waive or prejudice in any way any claims, rights, defenses and/or offsets that Northgate has against Lehman or its parent company LBHI, all of which shall be subject to the terms of the parties' November __, 2010 Settlement Agreement (which shall control in the event of any inconsistency between this Stipulation and the Settlement Agreement);

**ACCORDINGLY**, the parties jointly request that the Arbitral Panel enter an order on the following terms:

1. That, pursuant to FINRA Rule 12700(a), all claims asserted against the Individual Respondents in this Arbitration are dismissed with prejudice, on the terms listed above (and as more fully detailed in the parties' Settlement Agreement);

2.      That the Individual Respondents' names shall be deleted from the caption of the Arbitration;

3.      That, pursuant to FINRA Rule 2080, and upon the request of counsel for the Individual Respondents, a hearing be convened at the convenience of the Arbitral Panel to permit the Individual Respondents to present their request for expungement of the Northgate dispute information from registration records ("Expungement Hearing"); and

4.      That any FINRA-imposed costs or expenses relating to the Arbitration be subject to allocation among the parties by the Arbitral Panel, but any costs, expenses or attorneys fees relating to the Expungement Hearing shall be borne solely by the Individual Respondents.

Dated: November 23, 2010

| EISEMAN LEVINE LEHRHAUPT & KAKOYIANNIS, P.C. | JONES DAY |
|---|---|
| By:_____<br>Eric R. Levine | By:_____<br>Philip E. Cook |
| 805 Third Avenue<br>New York, NY 10022<br>212-752-1000<br>*Attorneys for Northgate Minerals Corporation* | 555 South Flower Street, 50th Floor<br>Los Angeles, CA 90071<br>213-489-3939<br>*Attorneys for Roland Hansalik, Lars Jacobson and Ryan Grashow* |

## EXHIBIT "B"

- Claims filed by Northgate in the action pending in the United States Bankruptcy Court for the Southern District of New York, *Lehman Brothers Holdings Inc.* Case No. 08-13555 (JMP), *et seq.* and all related cases, including, but not limited to, claims filed by Northgate pursuant to the Securities Investor Protection Act in Case No. 08-1420 (JMP) SIPA.