Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 08-13555-jmp

5   - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   LEHMAN BROTHERS HOLDINGS INC., ET AL.,

9

10          Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              December 1, 2010

19              10:07 AM

20

21   B E F O R E:

22   HON. JAMES M. PECK

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2     Hearing re:  Debtors' Motion for Approval of the Sale of Lehman

3     Brothers Special Financing Inc.'s Interest in a Note and its

4     Equity in Libro Companhia Securitizadora de Creditos

5     Financeiros

6

7     Hearing re:  Debtors' Forty-Ninth Omnibus Objection to Claims

8     (Duplicative of Indenture Trustee Claims)

9

10    Hearing re:  Debtors' Fifty-Seventh Omnibus Objection to Claims

11    (Amended and Superseded Claims)

12

13    Hearing re:  Debtors' Fifty-Eighth Omnibus Objection to Claims

14    (No Supporting Documentation Claims)

15

16    Hearing re:  Debtors' Fifty-Ninth Omnibus Objection to Claims

17    (Duplicative of Indenture Trustee Claims)

18

19    Hearing re:  Debtors' Sixty-First Omnibus Objection to Claims

20    (Duplicative of Indenture Trustee Claims)

21

22    Hearing re:  Debtors' Sixty-Second Omnibus Objection to Claims

23    (Settled Derivative Claims)

24

25

Page 3

1

2    Hearing re:  Debtors' Sixty-Third Omnibus Objection to Claims

3    (Valued Derivative Claims)

4

5    Hearing re:  Debtors' Fifty-First Omnibus Objection to Claims

6    (Duplicative of Indenture Trustee Claims)

7

8    Hearing re:  Debtors' Sixtieth Omnibus Objection to Claims

9    (Duplicative of Indenture Trustee Claims)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed by:  Hana Copperman

25

Page 4

```
 1

 2    A P P E A R A N C E S :

 3    WEIL, GOTSHAL & MANGES LLP

 4         Attorneys for Debtors and Debtors-in-Possession

 5         767 Fifth Avenue

 6         New York, NY 10153

 7

 8    BY:   ZAW WIN, ESQ.

 9         RICHARD P. KRASNOW, ESQ.

10         ERIN D. ECKOLS, ESQ.

11

12

13    MILBANK, TWEED, HADLEY & MCCLOY LLP

14         Attorneys for the Official Committee of Unsecured

15          Creditors

16         One Chase Manhattan Plaza

17         New York, NY 10005

18

19    BY:   DENNIS C. O'DONNELL, ESQ.

20         BRADLEY SCOTT FRIEDMAN, ESQ.

21

22

23

24

25
```

Page 5

1

2  U.S. DEPARTMENT OF JUSTICE

3        Office of the United States Trustee

4        33 Whitehall Street

5        21st Floor

6        New York, NY 10004

7

8  BY:   ELISABETTA G. GASPARINI, ESQ.

9

10

11  ALVAREZ & MARSAL AMERICA, LLC

12        600 Lexington Avenue

13        6th Floor

14        New York, NY 10022

15

16  BY:  DANIEL EHRMANN, ESQ.

17

18

19

20

21

22

23

24

25

Page 6

1

2    ALVAREZ & MARSAL

3         São Paulo

4         Ed. Igarassu

5         Rua Surubim, 577 - 9° andar

6         04571-050 São Paulo - SP

7         Brazil

8

9    BY:   LUIS DE LUCIO, ESQ. (TELEPHONICALLY)

10

11

12   STUTMAN, TREISTER & BLATT

13         Attorneys for Elliott

14         1901 Avenue of the Stars

15         12th Floor

16         Los Angeles, CA 90067

17

18   BY:   MICHAEL NEUMEISTER, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 7

1

2    CHAPMAN & CUTLER LLP

3           Attorneys for US Bank

4           111 West Monroe Street

5           Chicago, IL 60603

6

7    BY:   FRANKLIN H. TOP III, ESQ. (TELEPHONICALLY)

8           JAMES HEISER, ESQ. (TELEPHONICALLY)

9

10

11   BAKER & MCKENZIE, LLP

12          Attorneys for Cathay United Bank

13          2300 Trammell Crow Center

14          2001 Ross Avenue

15          Dallas, TX 75201

16

17   BY:   DAVID W. PARHAM, ESQ. (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 8

1

2    LAW OFFICE OF JONATHAN SCHWARTZ

3         Interested Party

4         4640 Admiralty Way

5         Suite 500

6         Marina del Rey, CA 90292

7

8    BY:   JONATHAN SCHWARTZ, ESQ. (TELEPHONICALLY)

9

10

11   ZANE SMITH & ASSOCIATES, LTD.

12        Attorneys for Jeannette Mannix

13        415 North LaSalle Street

14        Suite 300

15        Chicago, IL 60610

16

17   BY:   ZANE SMITH, ESQ. (TELEPHONICALLY)

18

19

20   FARALLON CAPITAL MANAGEMENT, LLC

21        Attorneys for Farallon Capital Management, LLC

22        One Maritime Plaza, Suite 2100

23        San Francisco, CA 94111

24

25   BY:   ANATOLY BUSHLER, ESQ. (TELEPHONICALLY)

Page 9

```
 1

 2    ALSO APPEARING

 3    IN PRO PER/PER SE

 4    (ALL TELEPHONICALLY):

 5    NESTOR E. DE JESUS

 6    GUILHERME FERREIRA

 7    BERNARD MARKOVITZ

 8    DR. KORNELIA NAGY-KOPPANY

 9    WILLIAM VEREKER

10    TIMOTHY B. WILKINSON

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

LEHMAN BROTHERS HOLDINGS INC., ET AL.

1               P R O C E E D I N G S

2          THE COURT:  Be seated, please.  Good morning.

3          MR. WIN:  Good morning, Your Honor.  Zaw Win, Weil,

4     Gotshal & Manges, for Lehman Brothers Holdings Inc. and its

5     affiliated debtors.  The first item on the agenda is the motion

6     of Lehman Brothers Special Financing for approval of the sale

7     of a note and its equity interests in a company called Libro.

8     I'll spare you the full name, because I'm afraid that I won't

9     be able to pronounce the Portuguese aspect of it.

10          The transaction that's the subject of the motion

11     involves the sale by LBSF and its non-debtor affiliate, LB I

12     Group, of two notes and all of the equity in Libro.  Libro is a

13     Brazilian entity that was formed for the purpose of investing

14     in fixed income and distressed assets in Brazil.  The purchase

15     agreement provides for an aggregate purchase price of 27

16     million reais, which is approximately 16 million U.S. dollars.

17     Of that approximately 6.2 million reais, or 3.7 million

18     dollars, would be allocated to LBSF directly, with the

19     remainder allocated to LB I Group.  LB I Group will

20     subsequently transfer approximately 15 million reais, or 9

21     million dollars, to LBSF as a result of a reallocation

22     agreement between those two entities that was previously

23     approved by the Court.  As a result of these transactions

24     LBSF's gross recovery from its debt and equity interests in

25     Libro will be approximately 21 million reais or 12.5 million

Page 11

1    dollars.

2         There's one material provision of the purchase

3    agreement that I'd like to draw the Court's attention to, and

4    that is there's an escrow where LBSF and LB I Group will place

5    approximately 2.7 million reais, or 1.6 million dollars, of the

6    purchase price into escrow for a period of one year, and there

7    is an indemnity provision in the agreement that provides that

8    LBSF and LB I Group will indemnify the purchaser, which is an

9    entity called Jive Investments Holding, with indemnity for

10   certain losses resulting from breaches by the debtors of the

11   reps and warranties in the purchase agreement and, also,

12   certain litigation against Libro.  That indemnity lasts for a

13   period of one year and is limited to the amounts that are in

14   the escrow agreement.

15        The debtors file the declarations of Mr. Luis de Lucio

16   and Mr. Daniel Ehrmann, both managing directors from Alvarez &

17   Marsal, and propose to offer those declarations as evidence of

18   the factual basis of this transaction.  The declarations set

19   forth the marketing process that the debtors engaged in with

20   respect to the sale of the notes and equity.  That marketing

21   process lasted over a year and involved over twenty-six

22   potential purchasers.  The declarations also described the

23   negotiations between Lehman and the purchaser and evidenced the

24   fact that such negotiations were conducted in good faith and at

25   arm's length.

Page 12

1        November 22, 2010 was set as the deadline for parties

2   to file objections or higher and better offers, to the extent

3   that there were any.  The debtors have not received any

4   objections or higher or better offers or any inquiries into

5   this matter, and based on that are confident that the purchase

6   price set forth in the purchase agreement is the highest and

7   best offer for these assets.

8        The debtors also note that they have kept the

9   creditors' committee apprised of the developments with respect

10  to this sale throughout and understand that the committee is

11  generally supportive, although I think that my colleague from

12  Milbank may have a few comments.

13       Accordingly, approval of the transaction is justified,

14  including the findings of fact that are contained in the order

15  relating to the debtors' conduct of the marketing process, the

16  fairness of the consideration, the arm's length nature of the

17  negotiations and the appropriateness of LBSF's sale of these

18  assets free and clear of liens, claims and encumbrances.

19       Does the Court have any questions?

20       THE COURT:  I'm interested in the purchaser, which

21  appears to be a British Virgin Islands entity of unknown

22  background and affiliation.  What do we know about Jive?

23       MR. WIN:  We know that Jive has no relation to the

24  debtors.  Other than that, is there anything in particular that

25  you're interested in, or that the Court is interested in?

08-13555-mg   Doc 13729   Filed 12/02/10   Entered 12/30/10 12:02:59   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 13 of 33

Page 13

1           THE COURT:  Is Jive affiliated with any recognized

2      financial institution in this country or in any other country

3      that we can identify?

4           MR. WIN:  Not to my knowledge.

5           THE COURT:  Do we know the principals of Jive?

6           MR. WIN:  I don't know the principals of Jive offhand.

7      I have been informed that they are not affiliated with the

8      debtors.

9           THE COURT:  Do we know if they are affiliated with any

10     creditor of the debtor or any other entity that's involved in

11     this case?

12          MR. WIN:  I don't, but it's possible that one of the

13     declarants who is on the phone from Colombia with Mr. de Lucio

14     may.  Would the Court care to direct that question to him?

15          MR. DE LUCIO:  Good morning, Your Honor.  This is Luis

16     de Lucio.  We have met with the principals of Jive.  As far as

17     we know in our conversations with him, no, they're not

18     affiliated to any of those entities.

19          THE COURT:  Do we know who they are as individuals?

20          MR. DE LUCIO:  We do know them.  We've met with them.

21     Two of the principals involved in this, one has a private

22     equity background, always with private equity, local Brazil

23     private equities.  The other individual has the various --

24     various companies that do investments and asset management.

25          THE COURT:  Are these Brazilian nationals?

Page 14

1            MR. DE LUCIO:  They are Brazilian nationals.  Yes,

2     they are.

3            THE COURT:  All right.  Okay.  Is there anyone in

4     Court representing Jive?  There's no response.  Is there anyone

5     on the telephone representing Jive?  Again no response.  I'd

6     like to hear from counsel for the creditors' committee

7     concerning the committee's assessment of the transaction.

8            MR. O'DONNELL:  Your Honor, Dennis O'Donnell,

9     Milbank, Tweed, Hadley & McCloy, on behalf of the creditors'

10    committee.  Your Honor, as is often the case when I get up

11    here, I can't tell you that the committee was in the loop on --

12    a long process here.  There's a long process, and you start out

13    evaluating what the options were in terms of whether we wanted

14    to put this into bankruptcy in Brazil, do a managed wind-down,

15    or do a sale.  Ultimately, the conclusion that we concurred

16    with the debtors in that a sale hearing would maximize the

17    value.  That's a decision that was made quite a while ago,

18    probably well over a year, and it's been a long road since

19    then.

20           Now, there has been a very long marketing process in

21    which we were involved.  There was, as I think is recited in

22    Mr. de Lucio's affidavit, another potential purchaser, at a

23    significantly higher price, who did surface midyear, but that

24    purchaser, ultimately, decided not to pursue the transaction.

25    And there has been efforts before and after that to interest

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 15

1    other purchasers, and at this point, based on everything we

2    know, the transaction with Jive appears to be the highest and

3    best offer.

4           We are not, I, personally, am not aware of the

5    connections of Jive to any -- either creditors in this case or

6    the debtors.  I believe Mr. de Lucio has represented that he's

7    not aware of any either.  What we do know is that there is a

8    very small universe of potential purchasers out there, and they

9    have surfaced after all this time as the best possible offer.

10          THE COURT:  Okay.  One of the problems I have with

11   this, and it's not that I'm questioning in any respect the

12   declarations in support of this transaction, is how to compare

13   the amount generated from the sale process with however one

14   might value in some theoretical investment, banker fashion, the

15   assets that are being transferred.  And one question that I

16   have for Alvarez & Marsal representatives, and I see Mr.

17   Ehrmann is in court -- I'm not sure if he's the right person to

18   answer this question -- is what notional value does the debtor

19   ascribe to the assets that are being sold, and is the debtor

20   satisfied that the Jive transaction represents fair value

21   relative to other presently available alternatives for

22   disposition?  I think that's an important question.

23          MR. KRASNOW:  Your Honor, Richard Krasnow.  I believe

24   the declarant can respond to that.  There was an analysis that

25   was undertaken by the debtors to determine whether or not a

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 16

1    disposition of these particular assets, as contemplated by this

2    transaction, would or would not be preferable to simply

3    allowing these assets to wind down, if you will, taking into

4    account potential litigation risks that do exist here because

5    there are collections actions.  These are distressed assets,

6    distressed loans.  There are collections actions which have

7    been brought seeking to recover on them, and, not surprisingly,

8    many a borrower responds to those by ascertaining claims

9    against the lenders.

10        But there was an analysis that was undertaken, and the

11   conclusion, the benchmark, if you will, that the debtors had in

12   looking at all of the proposals that it had received, the one

13   that, perhaps, was higher but, unfortunately, could not close

14   as well as the proposed transaction which is currently before

15   the Court, was whether or not the amounts we would realize here

16   would be higher than the sale wind down if you will, and based

17   on that analysis the conclusion was reached this is, in fact,

18   higher.

19        In terms of alternative transactions, as was pointed

20   out, this has been a year long process. with bids solicited

21   from, but not obtained from, over twenty to thirty potential

22   parties.  There were only three bids, if you will, that were

23   received, one of which we thought would result in a transaction

24   almost a year ago.  That did not happen.  There was a competing

25   bid to the one that's currently before the Court, which was not

1    higher or better than the bid that is currently being

2    considered.  So the kind of analysis that Your Honor has

3    suggested be done, in fact, was done, and if, perhaps, one of

4    the declarants, I'm not sure it would be Mr. Ehrmann, but

5    others on the phone may be in a better position to provide Your

6    Honor with a little more details on the numbers if that's

7    what --

8            THE COURT:  I'm interested in simply the comfort of a

9    representation by one of the managing directors of Alvarez &

10   Marsal that the amount realized through the sale process is, in

11   fact, an amount greater than the perceived notional value of

12   these hard to value assets.  And part of the problem here is

13   this structure is opaque.  At least it's opaque to me, both

14   because the numbers are mostly quoted in reais, because the

15   assets within the pool are hard for me to identify in terms of

16   what they consist of and their realizable value, and it becomes

17   difficult to value what's in a black box.

18           MR. KRASNOW:  Understood.

19           THE COURT:  And these assets are, effectively, assets

20   in a black box, which, I suspect, may have also added

21   challenges to the marketing process, because their parties need

22   to understand how they can actually extract value.

23           MR. KRASNOW:  That, Your Honor, plus the fact that the

24   assets are Brazilian assets.

25           THE COURT:  Some might view that as a plus.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 18

1          MR. KRASNOW:  One might.  One would also need to take

2     into account to the extent that in order to collect on these

3     assets one must pursue remedies within the Brazilian Court

4     System, which is not, as I understand it, a particularly

5     expeditious process, but as to which a Brazilian purchaser is

6     in a much better position to evaluate than a non-Brazilian,

7     which is why, as committee counsel has noted, there was,

8     really, while we looked to potential purchasers not only in

9     Brazil but in the United States the likely candidates were to

10    be Brazilian, but, Your Honor, again, I believe that the -- Mr.

11    de Lucio may be able to respond with more details, but the way,

12    again, the debtors looked at it was not so much the notional

13    value, if you will, but what they believe, based on experience

14    and their knowledge of the portfolio and the issues attendant

15    to them and litigation and tax issues as well, what they

16    believe the realizable value would be on these assets if they

17    had to pursue an alternative task, which, itself, might

18    ultimately have necessitated this particular entity being in a

19    Brazilian proceeding.

20         But, again, Your Honor, if the Court wants a little

21    more details on the numbers I'm --

22         THE COURT:  I'm principally looking for a

23    representation by a party who has examined this in some detail

24    that the amount realized in the sale to Jive is, in fact,

25    superior to that which might be realized through any other

08-13555-mg    Doc 13729    Filed 12/02/10    Entered 12/30/10 12:02:59    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 19 of 33

Page 19

1    available means of disposition.

2         MR. KRASNOW:  Perhaps Mr. de Lucio can respond to Your

3    Honor?

4         MR. DE LUCIO:  I can try to respond to that, Your

5    Honor.  We do believe that the amount realized through this

6    transaction will be superior to other alternatives.

7         THE COURT:  And can you --

8         MR. DE LUCIO:  But, also, we need to take into

9    consideration, as I think Saul has already mentioned, the fact

10   that a big element to the valuation of this portfolio as a

11   whole was the uncertainties of the -- both the tax and labor

12   and legal liabilities that hang over this asset.  In effect,

13   the higher bid earlier in the year gave -- it did fall apart

14   because, through the due diligence, and it was a local

15   Brazilian bank, a significant Brazilian bank, BTG, through the

16   due diligence they realized that the value -- that the

17   indicative price that they had put forth did not compensate for

18   the risk of the contingencies.

19        The way we evaluated this was we look at it in three

20   ways.  We looked at the ABN portfolio, which is a nonperforming

21   loan portfolio, and we did that based on our experience in the

22   market and on looking at whatever information was available as

23   comparable to the market, and we're comfortable that what's on

24   the table -- to have a piece of the portfolio is a fair price.

25        We also looked at the debtor quality credits in there,

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 20

1   and we evaluated that based on a time frame of collections for

2   that and on the cash available.  Of course, we attribute to

3   cash the full face value, and to that we subtract the actual

4   liabilities in the portfolio and an assessment of the

5   uncertainty of the contingent liabilities of the portfolio.

6          So, in effect, we do believe that this is the best

7   price available to us selling the entity.

8          THE COURT:  All right.  Thank you.

9          MR. O'DONNELL:  Your Honor, if I may?  Just to further

10  supplement what's just been said, I mean, the committee's

11  financial advisor, Houlihan, also looked independently at the

12  underlying assets and the enterprise value or equity value here

13  to be sold and concluded that this sale, doing it another way,

14  doing it under managed wind down, could result in a discount of

15  between twenty-seven and sixty-four percent off the sale price

16  we're getting here.  At the low end it's twenty-seven percent,

17  and at the high end a sixty-four percent discount, so based on

18  a fairly detailed, very detailed analysis of the same portfolio

19  independently by the committee's financial advisors we were

20  convinced that what's on the table, the offer for approval, it

21  would yield a significantly better return than any other option

22  here.

23         THE COURT:  Okay.  Thank you.  On the basis of the

24  declarations that I have reviewed as supplemented by the

25  colloquy on the record this morning in response to some of my

Page 21

```
 1    questions, I'm satisfied that the transaction before the Court

 2    in reference to these assets in Brazil represent the highest

 3    and best price for a disposition of these assets.  I am further

 4    satisfied that the creditors' committee has had an ample

 5    opportunity to examine the transaction and to express its

 6    position in support of the transaction, recognizing that there

 7    are a variety of risks associated with alternative means of

 8    monetizing the assets within this pool.  Under the

 9    circumstances I'm prepared to approve this uncontested sale and

10    will enter an appropriate order.

11           MR. WIN:  Thank you, Your Honor.  With Your Honor's

12    permission, can my clients who were only involved in this

13    aspect of the hearing be excused?

14           THE COURT:  Yes.

15           UNIDENTIFIED SPEAKER:  Thank you.  Your Honor, may I

16    just approach and provide the Court --

17           THE COURT:  I think in order to make this an

18    intelligible transcript it's a good thing for you to hand in

19    your card.

20           UNIDENTIFIED SPEAKER:  I did.

21           MR. WIN:  Also, we understand from the purchaser that

22    it has a significant amount of tax planning that it needs to do

23    prior to the end of the year, so the debtors would appreciate

24    it if the Court would consider this issue and enter an

25    appropriate order in the near term, if that's acceptable.
```

08-13555-mg   Doc 13729   Filed 12/02/10   Entered 12/30/10 12:02:59   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 22 of 33

Page 22

1           THE COURT:  I think the tax planning can take place on

2     a schedule unrelated to the timing of entry of the order, but I

3     will certainly enter the order promptly and expect that I'll do

4     that today.

5           MR. WIN:  We appreciate it.  Thank you, Your Honor.

6     My colleague, Erin Eckols, will handle the rest of the hearing.

7           THE COURT:  Fine.

8           MS. ECKOLS:  Good morning, Your Honor.  Erin Eckols

9     with Weil, Gotshal for the debtors.  I will be covering the

10    remainder of the agenda items, which are debtors' omnibus

11    objections 57 through 63, as well as a couple of carryover

12    items for omnibus objections 49 and 51.

13          Your Honor, there is one change to the agenda that I

14    wanted to inform you of.  Agenda item 10, which is omnibus

15    objection number 60 that was listed under contested matters, is

16    now going forward uncontested.  There was one unresolved

17    response listed on the agenda for that omni, that of Ms.

18    Mannix, and counsel for the claimant notified us last night

19    that Ms. Mannix withdraws her objection, and, thus, we are now

20    uncontested on that --

21          THE COURT:  Okay.

22          MS. ECKOLS: -- that particular omni.  In fact, the

23    debtors are proceeding largely uncontested today, as nearly all

24    formal responses have been resolved or adjourned.  Only omnibus

25    objection 51 is proceeding on a contested basis today, and

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 23

1   unless Your Honor has any questions I will proceed with the

2   specific agenda items.

3          THE COURT:  The one question I do have relates to

4   something which is not on the agenda, and that's the twenty-

5   ninth omnibus objection to claims, which, to my understanding,

6   still has an unresolved order.  This is the one that involved a

7   contest with August '86 and a possible withdrawal of that

8   objection or reconsideration of that objection.  I just wanted

9   to bring to your attention, just as an item of housekeeping,

10  that I'm still waiting for an order in respect of the contested

11  matters in the twenty-ninth omni.

12         MS. ECKOLS:  Thank you, Your Honor, and debtors will

13  expeditiously take care of that.

14         THE COURT:  Fine.

15         MS. ECKOLS:  Agenda item number 2, which is omnibus

16  objection 49, Your Honor, this is a carryover item from the

17  November 10th claims hearing at which you granted debtors'

18  omnibus objection 49.  At the time of that hearing the debtors

19  had adjourned their objection as to the claim of Karl Joseph

20  Thoma and his response thereto, so the parties could work on a

21  resolution.  Since the November 10th hearing Mr. Thomas has

22  withdrawn his objection to debtors' 49th omni, and his formal

23  notice of withdrawal is docket entry number 13054.

24         Accordingly, the debtors respectfully request that the

25  Court grant debtors' 49th omnibus objection as to Mr. Thoma's

08-13555-mg   Doc 13729   Filed 12/02/10   Entered 12/30/10 12:02:59   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 24 of 33

Page 24

1   claim.

2         THE COURT:  That objection is granted.

3         MS. ECKOLS:  Moving on to agenda item number 3,

4   omnibus objection 57, this omnibus objection seeks to disallow

5   and expunge claims that were amended and superseded by other

6   claims on the claims register.  It, again, is proceeding

7   uncontested, and, thus, the debtors respectfully request that

8   the Court grant this 57th omnibus objection.

9         THE COURT:  The 57th omnibus objection is granted.

10        MS. ECKOLS:  Agenda item number 4, debtors' 58th

11  omnibus objection to claims, seeks to disallow and expunge

12  claims that violated the bar date orders requirement that

13  claimants provide supporting documentation or an explanation as

14  to why said documentation was not available.  The debtors are

15  proceeding uncontested with respect to that objection, and,

16  thus, the debtors respectfully request that the Court grant

17  omnibus objection number 58.

18        THE COURT:  Omnibus objection number 58 is granted.

19        MS. ECKOLS:  Your Honor, agenda items 5 and 6, which

20  are omnibus objections 59 and 61, I was going to take up

21  together unless Your Honor has an objection to me doing so.

22        THE COURT:  You may take those together.

23        MS. ECKOLS:  Omnibus objections 59 and 61 seek to

24  disallow and expunge claims filed by individual holders of

25  securities that are, in substance, duplicative of the global

Page 25

```
 1    claims filed by the applicable indenture trustee, that would be

 2    Wilmington Trust and/or Bank of New York Mellon, on behalf of

 3    the holders of those same securities.  These two omnis cover

 4    approximately 150 claims, and, as they have done in the past,

 5    the debtors coordinated with the indenture trustees and the

 6    indenture trustees appointed specific attorneys that the

 7    debtors could refer claimants with additional questions to.  As

 8    we are proceeding uncontested, the debtors respectfully request

 9    that the Court grant omnibus objection numbers 59 and 61.

10          THE COURT:  Omnibus objections 59 and 61 are granted.

11          MS. ECKOLS:  Your Honor, agenda item number 7, which

12    is the 62nd omnibus objection to claims, is seeking to reduce

13    certain settled derivative claims by approximately 76.6 million

14    dollars.  These were claims that the parties had reached an

15    agreement with respect to the claim amount, classification,

16    and/or debtor entity that is not reflected on that claimant's

17    proof of claim.  The omnibus objection is seeking to modify

18    those claims to conform to the parties' agreement.  Thus, the

19    debtors respectfully request that the Court grant omnibus

20    objection number 62.

21          THE COURT:  The 62nd omnibus objection is granted.

22          MS. ECKOLS:  Thank you.  Agenda item number 8, which

23    is omnibus objection number 63, this objection seeks to reduce

24    and allow certain derivative claims, and, in certain instances,

25    also seeks to reclassify and/or clarify the debtor counterparty
```

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 26

1    for those claims.  The debtors received responses from four

2    counterparties and adjourned those responses to the January

3    20th hearing so that the parties could try to resolve those

4    claims.  The debtors seek, in their proposed order, to adjourn

5    the hearing date as to each of those counterparties to January

6    20th.

7         The debtors agree to extend the response deadline for

8    three counterparties, with the corresponding adjournment of the

9    hearing date for those.  And debtors, therefore, seek in the

10   proposed order to adjourn the hearing as to one of those

11   counterparties to December 22nd and to adjourn the hearing as

12   to the other two counterparties to January 20th.

13        THE COURT:  So all you're seeking at this point is

14   simply approval of those adjournments, or are you also seeking,

15   as to those that have not responded, any relief?

16        MS. ECKOLS:  That was my next comment.  Seeking your

17   approval of the adjournment and the omnibus objection to the

18   extent it's uncontested.

19        THE COURT:  To the extent it's uncontested the omnibus

20   objection number 63 is granted.

21        MS. ECKOLS:  Thank you, Your Honor.  Moving on to the

22   portion of the agenda that is under contested matters, agenda

23   number 9, which is debtors' omnibus objection number 51, this

24   is a carryover item from omnibus objection 51, which objection

25   was heard and granted at the November 10th claims hearing.

Page 27

1    Today we're proceeding with respect to the claims of Karen

2    Reinike as trustee for the Karen Reinike trust and a response

3    in opposition to omnibus objection 51.  The debtors are seeking

4    to disallow and expunge Ms. Reinike's claim 10587 and 10588 as

5    being duplicative of the global claim filed by Wilmington Trust

6    as indenture trustee.  Again, this was originally set for the

7    November 10 hearing, but the debtors agreed to adjourn in an

8    effort to reach a consensual resolution with Ms. Reinike.

9         The debtors have made substantial efforts to resolve

10   Ms. Reinike's objection, including having several telephone

11   conversations with her, sending Ms. Reinike a copy of the

12   Wilmington Trust claim, showing Ms. Reinike where her CUSIP

13   number is on the Wilmington Trust claim and making sure that

14   Wilmington Trust counsel spoke with her.  However, Ms. Reinike

15   determined that she would like to pursue her objection at

16   today's hearing.  And, Your Honor, Ms. Reinike's opposition to

17   debtors' 51st omnibus objection should be overruled and her

18   claim should be disallowed and expunged.  Ms. Reinike filed two

19   proofs of claim, claim numbers 10587 and 10588, seeking to

20   recover for securities with the CUSIP number 52519FFM8.  That

21   CUSIP belongs to securities that Wilmington Trust is seeking to

22   recover for as an indenture trustee under claim 10082, and that

23   CUSIP is specifically listed on the Wilmington Trust claim.

24        Accordingly, Ms. Reinike's claims are duplicative of

25   the Wilmington Trust claim.  In fact, Ms. Reinike does not

08-13555-mg    Doc 13729    Filed 12/02/10    Entered 12/30/10 12:02:59    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 28 of 33

Page 28

1    dispute that her claims are duplicative of the Wilmington Trust

2    claim, and, in fact, debtors' counsel identified and walked

3    through on the phone with her where that CUSIP was on the

4    Wilmington Trust claim.  Instead, Ms. Reinike's opposition is

5    based on financial hardship.  Financial hardship, however, does

6    not change the fact that her claims are, in fact, duplicative

7    of the Wilmington Trust indenture trustee claim.  Accordingly,

8    the debtors respectfully request that Your Honor overrule Ms.

9    Reinike's response and grant omnibus objection 51 as to her

10   claims.

11         THE COURT:  Is Karen Reinike on the telephone?

12   There's no response.  Apparently she's not on the phone.  Is

13   there anyone representing her interests on the telephone?

14   Again, no response.  Did anybody speak with you about her

15   participation in the hearing?

16         MS. ECKOLS:  When I spoke with Ms. Reinike last week

17   it was my understanding that she was going to be participating

18   telephonically.

19         THE COURT:  I did review Ms. Reinike's handwritten

20   objection, which provides considerable detail as to her

21   personal circumstances and makes clear that she is experiencing

22   both medical and financial hardships at this time, and I'm

23   sorry about that.

24         However, the 51st omnibus objection to claims is based

25   on the duplicative nature of claims that have already been the

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 29

1  subject of an indenture trustee claim, and under the

2  circumstances there's no legally cognizable reason not to grant

3  the 51st omnibus claim objection as it relates to Ms. Reinike's

4  claim, particularly in light of the representations made by

5  counsel that she acknowledges that her claim is duplicative of

6  the Wilmington Trust claim.  Under the circumstances of that

7  acknowledgement and the fact that she's not participating in

8  this hearing by telephone to represent her interests I grant

9  the 51st omnibus objection as it relates to her claim.

10         MS. ECKOLS:  Thank you, Your Honor.  And moving on to

11  agenda item number 10, which is omnibus objection number 60,

12  Your Honor, as I previously mentioned, debtors' 60th omni is

13  now proceeding on an uncontested basis.  It is another

14  objection seeking to disallow and expunge claims on the basis

15  that they are, in substance, duplicative of the global claims

16  filed by the applicable indenture trustee.  The only response

17  received to the 60th omnibus objection was that of Ms. Mannix,

18  and last night Ms. Mannix's counsel informed debtors, via e-

19  mail, that he had confirmed that Ms. Mannix's security was on

20  the applicable Bank of New York Mellon claim and that Ms.

21  Mannix's objection was therefore withdrawn.

22         As omni number 60 is now uncontested, the debtors

23  respectfully request that Your Honor grant debtors' 60th

24  omnibus objection to claims.

25         THE COURT:  The 60th omnibus objection to claims is

1    granted.

2            MS. ECKOLS:  And, Your Honor, that concludes the

3    matters going forward today on the agenda.

4            THE COURT:  All right.  If there's nothing further

5    we're adjourned.

6            MS. ECKOLS:  Thank you, Your Honor.

7            THE COURT:  Thank you.

8        (Whereupon these proceedings were concluded at 10:40 AM)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

```
 1
 2                              I N D E X
 3
 4                              RULINGS
 5                           Page      Line
 6   Granting of Debtors'      21       9
 7   Motion for Approval of
 8   the Sale of LBSF's
 9   Interest in a Note and
10   its Equity in Libro
11   Companhia Securitizadora
12   de Creditos Financeiros
13
14   Granting of Debtors'      24       2
15   49th Omnibus Objection
16   as to Mr. Thoma's Claim
17
18   Granting of Debtors'      24       9
19   57th Omnibus Objection
20   to Claims
21
22   Granting of Debtors'      24      18
23   58th Omnibus Objection
24   to Claims
25
```

Page 32

1

2    Granting of Debtors'        25        10

3    59th and 61st Omnibus

4    Objections to Claims

5

6    Granting of Debtors'        25        21

7    62nd Omnibus Objection

8    to Claims

9

10   Granting of Debtors'        26        20

11   63rd Omnibus Objection

12   to Claims for Uncontested

13   Objections

14

15   Granting of Debtors'        29        8

16   51st Omnibus Objection

17   to Claims for Ms. Reinike's

18   Claim

19

20   Granting of Debtors'        29        25

21   60th Omnibus Objection

22   to Claims

23

24

25

Page 33

1

2                        C E R T I F I C A T I O N

3

4     I, Hana Copperman, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7     Hana                   Digitally signed by Hana Copperman
                             DN: cn=Hana Copperman, o, ou,
                             email=digital1@veritext.com, c=US
8     Copperman              Date: 2010.12.02 16:44:33 -05'00'
      _____

9     Hana Copperman

10    AAERT Certified Electronic Transcriber (CET**D-487)

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17    Date:  December 2, 2010

18

19

20

21

22

23

24

25