REED SMITH LLP
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)

*Counsel to The Bank of New York Mellon,
The Bank of New York Mellon Trust Company,
N.A., and BNY Corporate Trustee Services
Limited, in their representative capacities*

Objections Due: **January 6, 2011 at 4:00 p.m.**
Hearing: **January 13, 2011 at 10:00 a.m.**

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- X
                                                          :
In re                                                     :  **Chapter 11**
                                                          :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                  :  **Case No. 08-13555 (JMP)**
                                                          :  **(Jointly Administered)**
                                           Debtors.       :
                                                          :  *Refers to Dkt. No. 13638*
--------------------------------------------------------- X

**OBJECTION OF THE BANK OF NEW YORK MELLON,
THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A. AND
BNY CORPORATE TRUSTEE SERVICES LIMITED TO DEBTORS'
MOTION PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE
AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE,
FOR ENTRY OF AN ORDER CLARIFYING THE SCOPE OF THE PROCEDURES
FOR THE SETTLEMENT OF PREPETITION DERIVATIVE CONTRACTS**

The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A., and any affiliate thereof, through its Corporate Trust Department, and BNY Corporate Trustee Services Limited, each as trustee, indenture trustee, agent, or in its other representative capacity (collectively, the "Trustee") for the holders (the "Holders") of certain notes, certificates, bonds, or other interests (collectively, the "Notes") issued by certain issuers pursuant to structures

created by the Debtors or their affiliates that have entered into derivative contracts with one or more Debtors, objects to the Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure, for Entry of an Order Clarifying the Scope of the Procedures for the Settlement of Prepetition Derivative Contracts (the "<u>Motion</u>") [Dkt No. 13638].[1]

## I. **<u>PRELIMINARY STATEMENT</u>**

1.     The existing Termination and Settlement Procedures, as established by the Court's December 16, 2008 Derivatives Procedures Order [Dkt. No. 2257] and supplemented thereafter, apply to the Trustee only in connection with settlements to which the Trustee has consented in writing.  Otherwise, the Termination and Settlement Procedures do not apply to the "Remaining Objectors," including the Trustee.  The Trustee has no objection to a true "clarification" that does not alter that scope of the Derivatives Procedures Order, in which case any Order entered by the Court should confirm the existing limitations upon the scope of the Termination and Settlement Procedures.

2.     Whether intentional or not, the proposed order would address unresolved objections to the Derivatives Procedures Order that are scheduled for hearing on June 15, 2011. [Dkt No. 12952].  Without any reference to the unresolved objections or the hearing scheduled for June, the Debtors seek entry of an Order that effectively would overrule those objections by "clarifying that the Termination and Settlement Procedures of the Derivatives Procedures Order authorize the Debtors to (i) terminate and settle any agreements related to Derivatives Contracts, regardless of the identity of the signatories to such agreements …" Motion ¶5 at 5, and expressly

---

[1]     Capitalized terms not defined in this Objection have the meanings assigned to such terms in the Motion.

- 2 -

extends the Procedures to "include trustees, noteholders, certificate holders or any other parties having an interest in a transaction underlying or related to a particular Derivatives Contract." S*ee*, proposed Fifth Supplemental Order at 3. The Trustee objects to the Motion insofar as it seeks either to preempt the June 15, 2011 hearing or prejudge the issues to be heard at that hearing.

3. Insofar as the Motion seeks to alter the scope of the Derivatives Procedures Order, the Trustee objects to proposed modifications that are unwarranted based on experience under the existing Procedures and inconsistent with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or Due Process.

(a)    First, there is no need to modify procedures that have worked extraordinarily well for more than two years. The Motion lauds the Debtors' success in utilizing these procedures to settle "more than 2,900 Derivative Contracts, and [collect] an aggregate amount of approximately $11.3 billion in respect thereof." Motion ¶ 3 at 4. The Debtors' only argument for modification is that this success recently has "become stalled on account of certain parties expressing uncertainty over the applicability of the Derivatives Procedures Order, and the number of counterparties that have required separate Rule 9019 motions to be filed." Motion ¶16 at 8. Tellingly, however, the Debtors identify only two such Rule 9019 motions (*see*, Motion, n.2 at p. 8), one in 2009 and one in 2010.[2]

(b)    Second, in a bankruptcy case where only a few settlements have required a more considered, less streamlined approval process, imposition of a one-size-fits-all

---

[2]    These two motions represent only 0.00069% of the 2900 transactions referenced in the Motion and nothing was "permanently stalled" in those cases (Motion ¶5 at 5), as both settlements were effected promptly in accordance with Rule 9019.

- 3 -

procedure would be inconsistent with the requirement that settlement procedures be tailored to satisfy the demands of Due Process. The history of this case demonstrates that the existing carve-out applicable to the Trustee and the other Remaining Objectors have been extremely useful in ensuring Due Process.

## II. BACKGROUND

4. The Debtors' Motion must be considered in the context of the five orders that have preceded it. The four supplements to the First DPO have served, not to alter the procedures materially, but to fine-tune them. The effect has been to exclude the Trustee and a handful of other similarly situated parties from the Termination and Settlement Procedures except where they consent in connection with a particular settlement. As proof that the current procedures have worked extremely well, the remaining objections to the First DPO have been adjourned for more than two years (with no hearing having been scheduled in well over a year) and motions seeking approval of derivative settlements have been truly rare. Any proposal to clarify or amend these procedures must be considered in light of this history.

### A. The Original Derivatives Procedures Motion and Order

5. On November 13, 2008, the Debtors filed their Original Motion for an order establishing procedures for assumption and assignment of Derivative Contracts and settlement of claims arising from the termination of Derivative Contracts. [Dkt. No. 1498].

6. The Trustee filed its limited objection ("Limited Objection") to the Original Motion on November 28, 2008. [Dkt. No. 1892]. In the Limited Objection, the Trustee argued, *inter alia*, that the proposed procedures would deprive Holders of their fundamental right to Due Process.

7. The issues raised by the Limited Objection were never considered by the Court. At the hearing on December 16, 2008, the Original Motion was adjourned with respect to all

parties who filed objections. The Court then entered the First DPO. [Dkt. No. 2257]. The First DPO left unresolved numerous objections. Rather, the First DPO provided "that the terms of this Order shall not be applicable to any Derivative Contracts in respect of which any of the following parties filed an objection to the Motion," and identified the Trustee as a Remaining Objector to whom the Order did not apply. [Order at 14-15]. With regard to the Remaining Objectors, the Court adjourned the Original Motion to January 14, 2009.

### B. The First Supplemental Order

8. The Limited Objection was not considered at the second hearing on January 14, 2009. At the conclusion of that hearing the Court entered the Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, dated January 15, 2009 [Docket No. 2557] (the "First Supplemental DPO").

9. The First Supplemental DPO made the Procedures applicable to some of the parties that were excluded under the First DPO, but it continued to exclude the Trustee and certain other parties from the Procedures.

10. The Court adjourned the hearing on the remaining objections to January 28, 2009. Since then, the hearing on the remaining objections has been adjourned from time to time, most recently until June 15, 2011. [Dkt. No. 12952].

### C. The Second Supplemental Order

11. On May 13, 2009, plaintiffs in a pending adversary proceeding (the "Wong Plaintiffs") filed a motion in which they sought to be relieved from the Procedures. [Dkt. No. 3565].

12. On September 29, 2009, the Court approved a stipulation between the Debtors and the Wong Plaintiffs that excluded approximately 50 series of so-called "mini-bonds" from

- 5 -

the Procedures. Stipulation and Order Regarding Wong Objection to Derivatives Procedures Orders, dated September 29, 2009 [Dkt. No. 5294].

### D. The Third Supplemental Order

13. On September 29, 2009, pursuant to a written agreement among the Debtors, the Holders of six specific series of Notes, and the Trustee, the Court entered the Third Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts [Dkt. No. 5292] (the "Third Supplemental DPO").

14. The Third Supplemental DPO made the Procedures applicable to six specific series of Notes. This Order stated that, except with regard to these six series, it had no effect on unresolved objections of the Trustee and others. [Third Supplemental DPO at 3].

### E. The Fourth Supplemental Order

15. On October 2, 2009, the Debtors filed their Notice of Presentment of Amended Order Authorizing the Debtors to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts. [Dkt. No. 5327]. On October 16, 2009, this Court entered the Fourth Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts [Dkt. No. 5544] (the "Fourth Supplemental DPO").

16. The Fourth Supplemental DPO created a process whereby Remaining Objectors could be "carved-in" to the Termination and Settlement Procedures where they were parties or expressly consented to a particular termination agreement. In doing so the Court confirmed expressly that, absent such consent, all terms of the First DPO, the First Supplemental DPO, and the Third Supplemental DPO would "continue to apply and remain in full force and effect without modification, except to the extent expressly modified by the terms of [the Fourth

Supplemental] Order." Fourth Supplemental DPO at 4.

17. In accordance with the Fourth Supplemental DPO, the Trustee has entered into numerous consensual settlements.[3] While the Trustee's Due Process and other objections are pending, the Trustee has cooperated with the Debtors in a process whereby settlements can proceed without a Rule 9019 motion and with the Trustee's written consent.

### III. THE PROPOSED MOTION TO CLARIFY

#### A. The Debtors Cannot Use a Motion to Clarify to Modify Existing Procedures or Prejudge Objections Set for Hearing in June.

18. Assuming the Debtors seek only clarification, their proposed order is ambiguous with regard to application of the Procedures to the Trustee and the other Remaining Objectors. The proposed order specifies that the Derivatives Procedure Order authorizes the Debtors to "terminate and settle any agreements related to Derivatives Contracts, regardless of the identity of the signatories to such agreements," and expressly extends the Procedures to any "trustees, noteholders, certificate holders or any other parties having an interest in a transaction." However, in a later paragraph it provides that "all terms of the Derivatives Procedures Order and the Supplemental Orders shall otherwise continue to apply and remain in full force and effect without modification." *See also* Motion ¶17 at 9 ("The Debtors are not seeking any further relief or authority other than that which this Court has already granted pursuant to the Derivatives Procedures Order.") This ambiguity needs to be eliminated and any order entered with regard to

---

[3] To date, the Trustee has participated in settlements relating to 68 of the Dante Series transactions, as well as other settlements relating to other derivative transactions, that did not necessitate a Rule 9019 motion. As noted in the Motion, only two settlements relating to the Dante Series have been the subject of Rule 9019 motions. Additionally, in connection with pending adversary proceedings, the Trustee is party to two stipulations and agreements. *See Lehman Brothers Special Financing Inc. v. U.S. Bank, et al.*, Adversary Case No. 10-03542 [Dkt. No. 7]; *Lehman Brothers Special Financing Inc. v. The Bank of New York Mellon Corporation, et al.*, Adversary Case No. 10-03545 [Dkt. No. 7].

the Motion should clearly provide that the exclusions applicable to the Remaining Objectors are unaffected.

19. As the Debtors observe in their Motion, the current procedures have operated well for more than two years, enabling the Debtors to settle thousands of Derivative Contracts and collect billions of dollars for their estates. While the Trustee has participated in dozens of these settlements, the carve-out for the Remaining Objectors has been an integral part of the success achieved.

20. If the Debtors actually intend to modify the current Procedures to eliminate the carve-out for the Remaining Objectors, the Court must consider the issues raised by all of the Remaining Objectors, not just the Trustee. The Debtors could seek to advance the scheduled hearing on these objections, but they have not done so.

### B. Settlement Procedures Must be Tailored to Ensure Due Process.

21. As set forth in the Limited Objection, the Trustee acts in a representative capacity in hundreds of transactions. Limited Objection ¶1 at 2. The Trustee objected to the application of the Procedures to such transactions, *inter alia*, because of concern that the Procedures could deprive Holders of their fundamental right to Due Process. Limited Objection ¶2 at 2, ¶10 at 6. These Due Process rights could be protected simply by following the procedural requirements of Bankruptcy Rule 9019(a), which requires a motion after notice and a hearing.

22. In the Limited Objection, the Trustee explained that Due Process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of proceedings and afford them an opportunity to present their objections. *See*, Limited Objection ¶10 at 6 and cases cited therein. The revised procedures contemplated by the current Motion would deprive Holders of any notice, let alone notice that complies with minimum constitutional Due Process requirements. *Cf. In re Iridium Operating LLC*, 478 F.3d 452, 461 (2d Cir. 2007) (citation

omitted) (Rule 9019 has a "'clear purpose … to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court.'"); *In re the Leslie Fay Companies, Inc.*, 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) ("Compromises may not be made in bankruptcy absent notice and a hearing and a court order.").

23.   Due Process is at the heart of Rule 9019. *In re Gallegos Research Group, Corp.*, 193 B.R. 577, 584 (Bankr. D. Colo. 1995) ("[D]process is assured only by compliance with Fed.R.Bankr.P. 9019(a) which requires notice to all creditors, the U.S. Trustee and indenture trustees."). The Rule permits approval of settlements "[o]n motion by the trustee and after notice and a hearing." Fed. R. Bankr. P. 9019(a). As defined in the Bankruptcy Code, "after notice and a hearing" means "after (i) such notice as is appropriate in the particular circumstances and (ii) such opportunity for a hearing as is appropriate in the particular circumstances." 11 U.S.C. §102(1). "Bankruptcy Code § 102(1) is founded in fundamental notions of procedural Due Process." *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 721 (1st Cir. 1994) (citations omitted).

24.   The Trustee's concern for Due Process is motivated, not just by concern for its Holders, but also by concern for the Trustee's own position. A settlement might not bind a Holder who did not receive notice or an opportunity to be heard in accordance with Rule 9019, Section 102(1), and the dictates of Due Process. *See, e.g.*, *Saccurato v. Masters (In re Masters Inc.)*, 149 B.R. 289, 292-93 (E.D.N.Y. 1992) (settlement agreement invalid, despite being read into the record in open court, where debtor never complied with notice requirements of Rule 9019(a)). Indeed, a lack of Due Process may render a judgment void. *See, e.g.*, *United Student Aid Funds, Inc. v. Espinosa*, 130 S. Ct. 1367, 1377 (2010) (creditor who received actual notice of the filing and contents of plan cannot argue that confirmation was void on the basis of Due

Process violation); *In re Johns-Manville Corp.*, 600 F.3d 135, 158 (2d Cir. 2010) (third-party permitted to challenge settlement on Due Process grounds where notice of proposed settlement was inadequate).

25. The risk here is that a claimant may attack the validity or binding nature of a settlement based on a claim of inadequate notice or lack of jurisdiction. In *In re Johns-Manville Corp*, *supra*, the Court of Appeals held that bankruptcy court approval of a settlement did not preclude a third party without notice of the settlement from asserting claims against the non-debtor party to the settlement agreement. Indeed, the *in rem* jurisdiction of the bankruptcy court does not provide a basis to determine *in personam* rights and claims as between non-debtors. *Id.* at 153-57. The Trustee cannot assume the risk that, without direction and satisfactory indemnification in accordance with the governing documents, it will be exposed to open-ended, contingent, future claims in an unknown jurisdiction. Neither the Trustee nor the Debtors' estates should be put in a position where they assume the risk of a *post facto* challenge to the validity of a settlement after the trust assets have been fully distributed.

26. Due process does not require that every settlement be the subject of a separate motion and hearing. Indeed, Rule 9019 contemplates that, after hearing and notice, the Court may authorize compromise or settlement of certain classes of controversies "without further hearing or notice." Fed. R. Bankr. P. 9019(b). In every instance, however, there must be such notice and hearing as is appropriate under the circumstances and jurisdiction sufficient to ensure that any order approving a settlement will not leave a party such as the Trustee exposed to future claims absent its expressed consent to the settlement. Due process is a threshold issue raised in many of the objections to the Original Motion, which are now set for hearing in June.

27. For purposes of the Derivatives Procedure Order, the sufficiency of notice may

depend on whether a potential adverse claimant or possible objector is reasonably known. By analogy, the Court in *Chemetron Corp. v. Jones*, 72 F.3d 341 (3d Cir. 1995), in considering whether notice of a claims bar date satisfied the requirements of Due Process, distinguished between "known creditors," who must receive "actual written notice of a debtors' bankruptcy filing and bar claims date," and "unknown creditors," who must receive constructive notice reasonably calculated to apprise them of the bankruptcy case and afford them an opportunity to present any objection. *Chemetron*, 72 F.3d at 346. Similarly, the Court in *Paging Network, Inc. v. Nationwide Paging, Inc. (In re Arch Wireless, Inc.)*, 534 F.3d 76, 83 (1st Cir. 2008), explained:

> For notice purposes, bankruptcy law distinguishes between "known creditors," who are entitled to receive direct notice of each stage in the reorganization proceedings, and "unknown creditors," for whom publication notice is sufficient. *See City of New York v. New York, N.H. & H.R. Co.,* 344 U.S. 293, 296, 73 S.Ct. 299, 97 L.Ed. 333 (1953); *see also Chemetron Corp. v. Jones*, 72 F.3d 341, 345-46 (3d Cir.1995). ….
>
> An "unknown creditor" is one whose "interests are either conjectural or future or, although they could be discovered upon investigation, do not in due course of business come to knowledge [of the debtor]." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 317, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *see also In re XO Commc'ns, Inc.,* 301 B.R. 782, 793 (Bankr. S.D.N.Y. 2003) (describing an "unknown creditor" as one whose claims are "merely conceivable, conjectural or speculative" (internal quotation marks omitted)). A "known creditor," by contrast, is one whose claims and identity are actually known or "reasonably ascertainable" by the debtor. *Tulsa Prof'l Collection Servs. Inc. v. Pope,* 485 U.S. 478, 490, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988). A creditor is "reasonably ascertainable" if its claim can be discovered through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983).

Consistent with this analysis, the Procedures must ensure that, in any proposed settlement involving the Trustee or someone similarly situated, actual notice of the proposed settlement goes to all parties having an interest in or whose rights might be affected by the transaction

which is the subject of the settlement and to any other party who reasonably might be expected to object or who has expressed an objection to the subject settlement.[4]

28. Assuming then that the Debtors seek any modification of the Derivatives Procedure Order, the modification should: (a) confirm that the Remaining Objections are adjourned to June 2011; (b) require that Debtors serve actual notice of any proposed settlement upon all parties having an interest in the transaction which is the subject of the settlement or whose rights might be affected by the proposed settlement and any other party who reasonably might be expected to object or who has expressed any objection to the subject settlement; and (c) confirm that nothing alters the Trustee's right as set forth in the Fourth Supplemental Order to require notice and a hearing, *inter alia*, where it reasonably believes this is necessary to ensure that a settlement is not subject to collateral attack.[5]

---

[4]     The Debtors have recognized that notice and a hearing are appropriate where a proposed settlement may affect the rights of other parties to the underlying transactions. By way of example, the Debtors made a point of actually serving third parties with the Debtors Motion Pursuant to Sections 105(a), 363 and 365 of the Bankruptcy Code and Bankruptcy Rule 9019, for Approval of a Settlement Agreement Among LBSF, LBHI, and Societe Generale, New York Branch and Certain Related Relief. [Dkt. No. 11488]. The Court's Order granting that motion included findings as to the sufficiency of notice and the opportunity to object. *See*, Order Approving Settlement Agreement Among Lehman Brothers Special Financing Inc., Lehman Brothers Holdings Inc., and Société Générale, New York Branch, Relating To Certain Swap Transactions With MKP Vela CBO, Ltd. And Libra CDO Limited And Granting Related Relief, ¶C at 2-3. ("As set forth in the Motion and evidenced by the affidavits of service filed with the Court, due, proper, timely, adequate and sufficient notice of the Motion, the Settlement Agreement, the Libra CDSA Assignment Agreement and the Vela CDSA Assignment Agreement has been provided in accordance with Bankruptcy Rule 2002(a), (l) and (m) and the procedures set forth in the order entered on June 17, 2010 governing case management and administrative procedures for these cases.").[Dkt. No. 12222].

[5]     The Trustee is aware of only one occasion where the Trustee insisted upon a motion under Rule 9019. *See*, Motion of Lehman Brothers Special Financing Inc. and its affiliated debtors pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, for approval of a settlement among the Debtors, BNY Corporate Trustee Services Limited, Perpetual Trustee Company Limited, and others [Dkt. No. 13051]. The Trustee's belief that objections might be filed proved to be well-founded, as two objections were filed. The objections were resolved consensually and the settlement was approved without delay.

US_ACTIVE-105225166.13-600318-60036

WHEREFORE, the Trustee objects to the Motion and respectfully requests that this Court deny the Motion to the extent that the Debtors seek to modify the Derivatives Procedures Order, as supplemented, or alter the Trustee's rights thereunder.

Dated: January 6, 2011
     New York, New York

Respectfully Submitted,

By: */s/ Eric A. Schaffer*
Eric A. Schaffer (ES-6415)
Michael J. Venditto (MV-6715)
599 Lexington Avenue
New York, NY 10022
Tel: (212) 521-5400
Fax: (212) 521-5450

*Counsel to The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A. and BNY Corporate Trustee Services Limited,*
*in their representative capacities*

TO:

Chambers of Honorable James J. Peck
One Bowling Green, Courtroom 601
New York, New York 10004

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Attention:     Jacqueline Marcus

Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, New York 10004
Attention:     Elisabetta G. Gasparini
               Andrea B. Schwartz
               Tracy Hope Davis

Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005
Attention:     Dennis F. Dunne
               Dennis O'Donnell
               Evan Fleck, Esq.