United States Bankruptcy Court
Southern District of New York

In re                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :         Chapter 11   Case No. 08-13555 (JMP)
                        Debtors          :         Jointly Administered
-------------------------------------------------

OBJECTION TO CLAIMS (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS
73RD OMNIBUS
FILED ON 12/7/2010

Gregg Somma, Claimant

PLEASE TAKE NOTICE that from January 1, 2003 to September 15, 2008, Claimant worked as an employee for Debtors. As part of "total compensation," Claimant was compensated in the form of salary, bonus and other forms of eligible compensation. Restricted Stock Units was part of the overall payment for services rendered.

PLEASE TAKE FURTHER NOTICE that Claimant rejects Debtors' position, that ownership of RSUs constitutes an equity interest in LBHI on the following basis:

- According to the Agreement Evidencing A Grant of Restricted Stock Units, section 4. (g) Occurrence of a Bankruptcy Event, Death, or Disability..."in the event...of (i) a Bankruptcy Distribution Event...all outstanding Units held by you shall become issuable and you shall, as soon as practicable thereafter, receive freely transferable shares of Common Stock." [see copies distributed in 2000 & 2001, after which all documents were available on the LehmanLive intranet portal.]
- No shares have been deposited into Claimant's Fidelity account, including those that were 100% vested in 2008, 2009, and 2010.

According to Bebchuk and Fried, in their article, "Paying for Long-Term Performance," University of Pennsylvania Law Review, 2010, Vol. 158, p. 1923, , "When the vesting period ends, the restricted shares 'belong' to the executive and, as in the case of options, executives are generally free to cash them out."

Claimant performed services, to the satisfaction of Debtors, from three to eight years ago. Debtor has not fulfilled its obligation to deliver common stock, as outlined in the Plan documents. Hence, Claimant cannot be an owner, since he cannot sell the shares and requests the cash value of compensation withheld, identified as the Grant Value on the Personal Award Summary attached to Claim number 24373.

Dated:   January 4, 2011
         New York, NY

Gregg Somma
4 Peterson Road
Hillsborough, NJ 08844

Cc:     The Honorable James M. Peck
        Weil, Gotshal & Manges, LLP (Attorneys for the Debtors)
        The Office of the United States Trustee for the Southern District of New York
        Milbank, Tweed, Hadley & McCloy, LLP (Attorneys for the official committee of unsecured creditors)

Attachments:    2001 Lehman Brothers Stock Award Program, Agreement Evidencing a Grant of Restricted Stock Units
                2000 Lehman Brothers Stock Award Program, Agreement Evidencing a Grant of Restricted Stock Units

LehmanLive

LehmanLive 2.0 NEW   About This Content | Profile | Contact Us | Terms Of Use | Logon History | Log Off

**LEHMAN BROTHERS** Lehman

My Favorites          People Finder | Find:          [Keyword] [Search]

Fixed Income   Equities   Investment Banking   Investment Management   Life @ Lehman   Global Homepage   Admin

Equity Award Program   RSUs   CSAs   CEAs   Stock Options   Award Documents   Glossary

**LEHMAN BROTHERS** Lehman

Data as of August 31, 2008                                                                                         10203201 Gregg Somma

AWARDS OUTSTANDING

| Grant Date | Description | Grant Price | Grant Value[2] | Restriction Ends | Units Granted | Dividend Equivalents | Units Delivered | Units Vested[3] | Units Outstanding | Market Value at $0.046[4] |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/01/2008 | July 2008 RSU | $20.9600 | $6,990 | 11/30/2011 | 329.20 | 4.17 | 0.00 | 0.00 | 333.37 | $15 |
| 12/07/2007 | 2007 Firmwide Principal | $47.6000 | $25,875 | 11/30/2012 | 543.59 | 11.19 | 0.00 | 0.00 | 554.78 | $26 |
| 12/07/2007 | 2007 Firmwide Discount | $17.6000 | $6,525 | 11/30/2012 | 181.20 | 3.70 | 0.00 | 0.00 | 184.90 | $9 |
| 12/08/2006 | 2006 Firmwide Principal | $57.7700 | $23,924 | 11/30/2011 | 414.30 | 12.25 | 0.00 | 0.00 | 426.55 | $20 |
| 12/08/2006 | 2006 Firmwide Discount | $57.7700 | $7,975 | 11/30/2011 | 138.11 | 4.15 | 0.00 | 0.00 | 142.26 | $7 |
| 11/30/2005 | 2005 Firmwide Principal | $47.2500 | $14,063 | 11/30/2010 | 297.62 | 10.93 | 0.00 | 308.55 | 308.55 | $14 |
| 11/30/2005 | 2005 Firmwide Discount | $47.2500 | $4,687 | 11/30/2010 | 99.20 | 3.75 | 0.00 | 0.00 | 102.95 | $5 |
| 12/09/2004 | 2004 Firmwide Principal | $32.1750 | $11,625 | 11/30/2009 | 361.30 | 16.22 | 0.00 | 377.52 | 377.52 | $17 |
| 12/09/2004 | 2004 Firmwide Discount | $32.1750 | $3,875 | 11/30/2009 | 120.44 | 5.45 | 0.00 | 0.00 | 125.89 | $6 |
| 12/10/2003 | 2003 Firmwide Principal | $26.7700 | $9,750 | 11/30/2008 | 364.22 | 19.46 | 0.00 | 383.68 | 383.68 | $18 |
| 12/10/2003 | 2003 Firmwide Discount | $26.7700 | $3,250 | 11/30/2008 | 121.40 | 6.60 | 0.00 | 0.00 | 128.00 | $6 |
| **Total** | | | **$120,563** | | **2,970.58** | **97.87** | **0.00** | **1,069.75** | **3,068.45** | **$143** |
| **Total Equity** | | | | | | | | | | **$143** |

[1] Market value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated stock price. The intrinsic value of stock options is calculated by multiplying the number of options outstanding by the difference between the indicated stock price and the option exercise price. Please note that the current market price is based on a delayed 20 minutes feed from Reuters. (03:59 PM EST on January 22, 2009)

[1] Award Units are those equity-based awards other than stock options, i.e. Restricted Stock Units, Conditional Equity Awards or Contingent Stock Awards, as applicable.
[2] Grant Value refers to the value of the underlying Lehman Brothers Holdings Inc. shares at the indicated grant price.
[3] Units Vested refers to that portion of the award that has become vested and/or subject to limited conditions, as determined under the applicable plan documents.

# 2000 Lehman Brothers Stock Award Program

*Agreement Evidencing A Grant of Restricted Stock Units*

LEHMAN BROTHERS

1. **Grant of Units.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") Employee Incentive Plan (the "Plan"), you are hereby granted, as of November 30, 2000 (the "Date of Grant"), the number of Restricted Stock Units ("Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of Units may be adjusted pursuant to Paragraph 8 below).

2. **Additional Documents; Definitions.** Enclosed you will find a copy of the Plan which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

3. **Vesting.** Units awarded to you hereunder shall become vested in accordance with the following vesting schedule:

    The Principal Units (80% of the total award) shall become vested on November 30, 2001.

    The Discount Units (20% of the total award) shall become vested on November 30, 2005.

4. **Entitlement to Receive Common Stock.**

(a) **General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each Unit which you hold on November 30, 2005 (the "Maturity Date"). In the event of your Termination (as defined below) for any reason or notification of termination of employment prior to January 30, 2001, all Units held by you shall be forfeited and canceled. Delivery of Common Stock hereunder shall be made on or as soon as practicable after the Maturity Date, except as specified in Paragraphs 4(b), (c), (d), (e) and (f) below. For purposes of the Stock Award Program, "Termination" means the actual date your employment with Holdings or a subsidiary is terminated.

(b) **Voluntary Termination.** In the event of your voluntary Termination on or after January 30, 2001, all Principal Units shall continue to vest in accordance with Paragraph 3 hereof; *provided, however,* that in the event that you engage in Competitive Activity or Detrimental Activity prior to November 30, 2001, all Principal Units held by you shall be forfeited and canceled. Common Stock for the Principal Units will be payable on the Share Payment Date. In addition, you shall also receive one-fifth of the Discount Units for each full year of employment you complete following November 30, 2000 and before your Termination, provided you do not engage in Competitive Activity or Detrimental Activity prior to the Share Payment Date. Any unvested Units as of the Share Payment Date not received pursuant to this paragraph 4(b) shall be forfeited and canceled.

(c) **Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause (as defined in Annex A) unvested Units held by you shall be forfeited and canceled.

(d) **Involuntary Termination without Cause.** In the event of your involuntary Termination without Cause on or after January 30, 2001, all Principal Units held by you shall continue to vest in accordance with Paragraph 3 hereof; *provided, however,* that in the event that you engage in Detrimental Activity prior to November 30, 2001, all Principal Units held by you shall be forfeited and canceled as of the date of commencement of such activity. Common Stock for the Principal Units will be payable on the Share Payment Date. In addition, you shall also receive one-fifth of the Discount Units for each full year of employment you complete following November 30, 2000 and before your Termination, provided you do not engage in Detrimental Activity prior to the Share Payment Date. Any unvested Units as of the Share Payment Date not received pursuant to this Paragraph 4(d) shall be forfeited and canceled.

(e) **Retirement.** Notwithstanding the provisions of Paragraph 4(b), (c) and (d), in the event of your Retirement, on or after January 30, 2001 and provided you do not engage in Competitive Activity or Detrimental Activity through the first anniversary of your Retirement, the following terms shall apply: (i) all Principal Units shall become immediately payable; (ii) and if your Retirement occurs on or after November 30, 2001, all Discount Units shall immediately become payable. You will receive freely transferable shares of common stock for each payable Unit as soon as practicable after your Retirement. If you engage in Competitive Activity prior to the first anniversary of your Retirement, the provisions specified in Paragraph 4(b) shall apply as of the date you of your Retirement, and you shall be obligated to repay to Holdings the full gross amounts or shares received in excess of those which you would have received under Paragraph 4(b). If you engage in Detrimental Activity prior to the first anniversary of your Retirement, you shall be obligated to repay to Holdings the full gross amounts or shares you received under this Agreement.

(f) **Occurrence of a Bankruptcy Distribution Event, Death or Disability.** Notwithstanding the provisions of Paragraph 4(b), (c) and (d), in the event of the occurrence on or after January 30, 2001 of (i) a Bankruptcy Distribution Event, (ii) your death or Disability, or (iii) your death or Disability following a Termination of employment described in Paragraph 4(b) or (d) hereof, all outstanding Units held by you shall become immediately vested and you shall, as soon as practicable thereafter, receive one share of Common Stock for each Unit which you hold.

(g) **Affidavit.** In the event of your Termination on or after January 30, 2001, you may be requested, from time to time after your Termination, to complete and sign an affidavit with

2

respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit within 60 days will cause you to forfeit any unvested Units held by you at that time.

5. **Dividend Equivalents.** With respect to each dividend or distribution paid or made on Common Stock to holders of record on or after January 30, 2001, you shall be paid cash and/or credited with a number of additional Units comparable in value to such dividend or distribution. Such additional Units shall vest and be payable at the same time as the Units to which they are attributable.

6. **Limitation on Obligations.** Holdings' and any subsidiary's obligation with respect to the Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any subsidiary become obligated to pay cash in respect of such obligation (except for cash paid pursuant to Paragraphs 5 and 9 hereof).

7. **Non-Assignment.** Units may not be sold, assigned, transferred, pledged, hypothecated or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

8. **Equitable Adjustment.** In the event of a Change in Capitalization occurring on or after the Date of Grant specified above and prior to the Maturity Date, the number and kind of shares of Common Stock which may be issued with respect to Units shall be adjusted so as to reflect such change.

9. **Change in Control.** Except as set forth below, upon the occurrence of a Hostile Change in Control, your Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be issued. Except as set forth below, upon the occurrence of a Friendly Change in Control, you shall receive in the same form of consideration as that received by shareholders generally, the undiscounted market value (at the time of grant) for your Units, and the excess of the price paid by an acquirer over such undiscounted market value shall be deferred for the shorter of two years from the date of the Friendly Change in Control or the term of any remaining restrictions (the "Deferred Period"), but your Units shall remain otherwise subject to all issuance restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any Units, in which case you would only be issued Common Stock or receive such undiscounted market value in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such Units upon successful completion of a Change in Control.

10. **Treatment in Bankruptcy.** (a) If you are an employee of Holdings, Holdings agrees to deliver, and (b) if you are an employee of a subsidiary, Holdings agrees to deliver to (or at the direction of) such subsidiary, shares of Common Stock on the date when such shares are due to be delivered under this Agreement in satisfaction of each Unit granted to you hereunder. If you are an employee of a subsidiary, Holdings' obligation in clause (b) of the preceding sentence is created expressly for the benefit of you, and you shall have the full right to enforce Holdings' obligation to deliver Common Stock as if such obligation were made directly in favor of you. All of your claims arising from, in connection with, or in any way relating to, any failure of Holdings to deliver to you, or to a subsidiary for delivery by such subsidiary to you, shares of Common Stock on the date when such shares are due to be delivered under this Agreement in satisfaction of each Unit granted to you shall be deemed, in the event of a bankruptcy of Holdings, to be claims for damages arising from the purchase or sale of Common Stock of Holdings, within the meaning of section 510(b) of the Bankruptcy Code and shall have in such bankruptcy the same priority as, and no greater priority than, common stock interests in Holdings.

11. **Amendment.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions).

12. **Binding Actions.** Any action taken or decision made by the Committee or its designees arising out of or in connection with the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

13. **No Right to Continued Employment.** The grant of Units shall not confer on you any right to be retained in the employ of Holdings or a subsidiary, or to receive subsequent Units or other awards under the Plan. The right of Holdings or any subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any subsidiary and you is specifically reserved.

14. **Applicable Law.** The validity, construction, interpretation, administration and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

15. **Withholding/Deductions.** Holdings shall have the right to deduct from all amounts payable to you, any taxes required by law to be withheld therefrom. It shall be a condition to the obligation of Holdings to vest Units or issue shares of Common Stock hereunder

3

(a) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the vesting of Units or the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may refuse to issue shares of Common Stock and/or related dividend equivalents or take any other action it deems necessary to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any subsidiary.

## Annex A: Definitions

**"Appropriate Officer"** means the Chief Executive Officer or Chief Administrative Officer of Holdings (or their respective designees).

**"Bankruptcy Distribution Event"** means the earlier to occur of (i) the date of, but immediately prior to, distribution to holders of claims and interests upon the substantial consummation of a confirmed plan of reorganization of Holdings in a Chapter 11 case under Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), or (ii) the date of, but immediately prior to, distribution to holders of claims and interests upon the liquidation of Holdings in a Chapter 7 case under the Bankruptcy Code.

**"Cause"** means a material breach by a person of an employment contract between the person and Holdings or any subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any subsidiary, including but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any subsidiary, their affiliates or their clients, in breach of such person's undertakings to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any subsidiary to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; or (iii) any activity deemed to be detrimental to Holdings or any of its subsidiaries or affiliates, in each case as determined in the sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

**"Discount Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the 20% discount upon issuance of the award.

**"Friendly Change in Control"** shall mean any Change in Control which is not a Hostile Change in Control.

**"Hostile Change in Control"** shall mean the occurrence of a Change in Control, without the prior approval of a majority of the independent members of the Incumbent Board.

**"Principal Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award (80% of the total number of units awarded).

**"Retirement"** means a termination of employment which meets the criteria for retirement under Holdings' qualified defined benefit pension plan.

**"Share Payment Date"** means as soon as practicable after the earlier of (a) November 30, 2005 or (b) the completion of the fiscal quarter following the one-year anniversary of termination of employment.

# 2001 Lehman Brothers Stock Award Program

## Agreement Evidencing A Grant of Restricted Stock Units

LEHMAN BROTHERS

1. **Grant of Units.** Pursuant to the Lehman Brothers Holdings Inc. ("Holdings") Employee Incentive Plan (the "Plan"), you are hereby granted, as of September 20, 2001 and December 3, 2001 (the "Dates of Grant"), the number of Restricted Stock Units ("Units") for shares of Holdings' common stock, par value $.10 per share (the "Common Stock"), set forth on the award statement with your name on it delivered to you herewith (which number of Units may be adjusted pursuant to Paragraph 8 below).

2. **Additional Documents; Definitions.** Enclosed you will find a copy of the Plan which is incorporated in this instrument by reference and made a part hereof, and a copy of the Plan prospectus. The Plan and the prospectus should be carefully examined. In the event of any conflict or ambiguity between this instrument and the Plan, the terms of the Plan shall govern. All capitalized terms not defined herein or on Annex A attached hereto shall have the meaning ascribed to such terms under the Plan.

3. **Vesting.** Units awarded to you hereunder shall become vested in accordance with the following vesting schedule:

   The Principal Units (75% of the total award) shall become vested on November 30, 2003.

   The Discount Units (25% of the total award) shall become vested on November 30, 2006.

   Notwithstanding the above, in the event your employment is terminated with Cause or if you engage in Detrimental Activity prior to November 30, 2006, all of your vested and unvested Units will be forfeited and canceled.

4. **Entitlement to Receive Common Stock.**

   (a) **General Rule.** Unless otherwise set forth herein, you shall receive one share of Common Stock for each Unit which you hold on November 30, 2006 (the "Maturity Date"). In the event of your Termination (as defined below) for any reason or notification of termination of employment prior to January 31, 2002 or you engage in Detrimental Activity at any time prior to the Maturity Date, all Units held by you shall be forfeited and canceled. Delivery of Common Stock hereunder shall be made on, or as soon as practicable after, the Maturity Date except as specified in Paragraphs 4(b), (c), (d), (e), (f) and (g) below. For purposes of the Stock Award Program, "Termination" means the actual date your employment with Holdings or a subsidiary is terminated.

   (b) **Voluntary Termination with Competitive Activity.** In the event of your voluntary Termination with Competitive Activity, (i) all Discount Units shall be forfeited, and canceled, (ii) if such Termination occurs prior to November 30, 2003, all Principal Units shall be forfeited and canceled, and (iii) if such Termination occurs on or subsequent to November 30, 2003, you shall be entitled to the Principal Units. Such shares shall be issued to you on the Share Payment Date, provided you do not engage in Detrimental Activity through the Share Payment Date.

   (c) **Voluntary Termination without Competitive Activity.** In the event of your voluntary Termination without Competitive Activity on or after January 31, 2002, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or a subsidiary after November 30, 2001 and before your Termination. However, if your Termination is a Full Career Termination (as defined in Annex A), you will be entitled to receive all the Discount Units. Such shares shall be issued to you on the Share Payment Date, provided you do not engage in Competitive Activity or Detrimental Activity prior to the Share Payment Date. In the event of Competitive Activity prior to the Share Payment Date, the provisions specified in Paragraph 4(b) shall apply. Any Units as of the Share Payment Date not received pursuant to this Paragraph 4(c) shall be forfeited and canceled.

   (d) **Involuntary Termination with Cause.** In the event of your involuntary Termination with Cause, all Principal Units and Discount Units shall be forfeited and canceled.

   (e) **Involuntary Termination without Cause.** In the event of your involuntary Termination without Cause on or after January 31, 2002, you shall be entitled to receive (i) freely transferable shares of Common Stock for the Principal Units and (ii) freely transferable shares of Common Stock equal to 20% of the Discount Units multiplied by each full year of your employment with Holdings or subsidiary after November 30, 2001 and before your Termination. However, if your Termination is a Full Career Termination, you will be entitled to receive all the Discount Units. Such shares shall be issued to you on the Share Payment Date, provided you do not engage in Detrimental Activity prior to the Share Payment Date. Any Units as of the Share Payment Date not received pursuant to this Paragraph 4(e) shall be forfeited and canceled.

   (f) **Retirement.** Notwithstanding the provisions of Paragraphs 4(b), (c), (d) and (e), in the event of your Retirement on or after January 31, 2002 and provided you do not engage in Competitive Activity or Detrimental Activity, all Principal Units and Discount Units shall become immediately payable. You will receive freely transferable shares of common stock for each payable Unit as soon as practicable after your Retirement. If you engage in Competitive Activity, the provisions specified in Paragraph 4(b) shall apply as of the date of your Retirement, and you shall be obligated to repay to Holdings the full gross amounts or shares received in excess of those which you would have received under Paragraph 4(b). If you engage in Detrimental Activity, you shall be obligated to repay to Holdings the full gross amounts or shares you received under this Agreement.

   (g) **Occurrence of a Bankruptcy Distribution Event, Death or Disability.** Notwithstanding the provisions of Paragraphs 4(b), (c), (d) and (e), in the event of the occurrence on or after January 31, 2002 of (i) a Bankruptcy Distribution Event, (ii) your death or

2

Disability, (iii) your death or Disability following a Termination of employment described in Paragraph 4(c) or (e) hereof, all outstanding Units held by you shall become immediately issuable and you shall, as soon as practicable thereafter, receive freely transferable shares of Common Stock.

(h) **Affidavit.** In the event of your Termination on or after January 31, 2002, you may be requested, from time to time after your Termination, to complete and sign an affidavit with respect to Competitive Activity or Detrimental Activity, which includes representations and authorizes Holdings to verify the representations. Any failure on your part to complete, sign and return the affidavit within 60 days may cause you to forfeit all Units held by you at that time.

5. **Dividend Equivalents.** With respect to each dividend or distribution paid or made on Common Stock to holders of record on or after January 31, 2002, you shall be paid cash and/or credited with a number of additional Units comparable in value to such dividend or distribution. Such additional Units shall vest and become payable at the same time as the Units to which they are attributable.

6. **Limitation on Obligations.** Holdings' and any subsidiary's obligation with respect to the Units granted hereunder is limited solely to the delivery to you of shares of Common Stock on the date when such shares are due to be delivered hereunder, and in no way shall Holdings or any subsidiary become obligated to pay cash in respect of such obligation (except for cash paid pursuant to Paragraphs 5 and 9 hereof).

7. **Non-Assignment.** Units may not be sold, assigned, transferred, pledged, hypothecated or otherwise disposed of by you, except by will or the laws of descent and distribution. If you or anyone claiming under or through you attempts to violate this Paragraph 7, such attempted violation shall be null and void and without effect, and Holdings' obligation to issue any Common Stock hereunder shall terminate.

8. **Equitable Adjustment.** In the event of a Change in Capitalization occurring on or after the Dates of Grant specified above and prior to the Maturity Date, the number and kind of shares of Common Stock which may be issued with respect to Units shall be adjusted so as to reflect such change.

9. **Change in Control.** Except as set forth below, upon the occurrence of a Hostile Change in Control, your Units shall vest immediately, the sales restrictions shall lapse and shares of Common Stock shall be issued. Except as set forth below, upon the occurrence of a Friendly Change in Control, you shall receive in the same form of consideration as that received by shareholders generally, the undiscounted market value (at the time of grant) for your Units, and the excess of the price paid by an acquirer over such undiscounted market value shall be deferred for the shorter of two years from the date of the Friendly Change in Control or the term of any remaining restrictions (the "Deferred Period"), but your Units shall remain otherwise subject to all issuance restrictions during the Deferred Period. Neither of the foregoing shall be effective to the extent you have tender or voting rights over shares of Common Stock held in Trust with respect to any Units, in which case you would only be issued Common Stock or receive the undiscounted market value in the same form of consideration as that received by shareholders generally (and after the Deferred Period, the excess price) in respect of such Units upon successful completion of a Change in Control.

10. **Treatment in Bankruptcy.** (a) If you are an employee of Holdings, Holdings agrees to deliver, and (b) if you are an employee of a subsidiary, Holdings agrees to deliver to (or at the direction of) such subsidiary, shares of Common Stock on the date when such shares are due to be delivered under this Agreement in satisfaction of each Unit granted to you hereunder. If you are an employee of a subsidiary, Holdings' obligation in clause (b) of the preceding sentence is created expressly for the benefit of you, and you shall have the full right to enforce Holdings' obligation to deliver Common Stock as if such obligation were made directly in favor of you. All of your claims arising from, in connection with, or in any way relating to, any failure of Holdings to deliver to you, or to a subsidiary for delivery by such subsidiary to you, shares of Common Stock on the date when such shares are due to be delivered under this Agreement in satisfaction of each Unit granted to you shall be deemed, in the event of a bankruptcy of Holdings, to be claims for damages arising from the purchase or sale of Common Stock of Holdings, within the meaning of section 510(b) of the Bankruptcy Code and shall have in such bankruptcy the same priority as, and no greater priority than, common stock interests in Holdings.

11. **Amendment.** The terms of this Agreement may be amended from time to time by the Committee in its sole discretion in any manner that it deems appropriate (including, but not limited to, the acceleration provisions.)

12. **Binding Actions.** Any action taken or decision made by the Committee or its designees arising out of or in connection with the construction, administration, interpretation or effect of the Plan or this Agreement shall lie within its sole and absolute discretion, as the case may be, and shall be final, conclusive and binding on you and all persons claiming under or through you. By accepting this grant or other benefit under the Plan, you and each person claiming under or through you shall be conclusively deemed to have indicated acceptance and ratification of, and consent to, any action taken under the Plan by the Committee or its designees.

13. **No Right to Continued Employment.** The grant of Units shall not confer on you any right to be retained in the employ of Holdings or a subsidiary, or to receive subsequent Units or other awards under the Plan. The right of Holdings or any subsidiary to terminate your employment with it at any time or as otherwise provided by any agreement between Holdings or any subsidiary and you is specifically reserved.

14. **Applicable Law.** The validity, construction, interpretation, administration and effect of the Plan, and of its rules and regulations, and rights relating to the Plan and to this Agreement, shall be governed by the substantive laws, but not the choice of law rules, of the State of Delaware.

3

**15. Withholding/Deductions.** Holdings shall have the right to deduct from all amounts payable to you, any taxes required by law to be withheld therefrom. It shall be a condition to the obligation of Holdings to issue shares of Common Stock hereunder (a) that you (or, in event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) pay to Holdings or its designee, upon its demand, in accordance with the Plan, such amount as may be required for the purpose of satisfying its obligation or the obligation of any other person to withhold any taxes required by law which are incurred by reason of the issuance of such shares of Common Stock, and (b) that you (or, in the event of your death, your estate or any person who acquires the right to this award by bequest or inheritance or otherwise by reason of your death) provide Holdings with any forms, documents or other information reasonably required by Holdings in connection with the grant. If the amount requested for the purpose of satisfying the withholding obligation is not paid, Holdings may refuse to issue shares of Common Stock and/or related dividend equivalents or take any other action it deems necessary to fulfill the withholding obligation. Holdings shall further have the right to deduct from all amounts remaining payable to you after satisfaction of the withholding obligations described above, the amount of any deficit, debt, tax obligation or other liability or obligation of any kind which you may at that time have with respect to Holdings or any subsidiary.

Annex A: Definitions

**"Appropriate Officer"** means the Chief Executive Officer or Chief Administrative Officer of Holdings (or their respective designees).

**"Bankruptcy Distribution Event"** means the earlier to occur of (i) the date of, but immediately prior to, distribution to holders of claims and interests upon the substantial consummation of a confirmed plan of reorganization of Holdings in a Chapter 11 case under Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), or (ii) the date of, but immediately prior to, distribution to holders of claims and interests upon the liquidation of Holdings in a Chapter 7 case under the Bankruptcy Code.

**"Cause"** means a material breach by a person of an employment contract between the person and Holdings or any subsidiary, failure by a person to devote substantially all business time exclusively to the performance of his or her duties for Holdings or any subsidiary, willful misconduct, dishonesty related to the business and affairs of Holdings or any subsidiary, conviction of a felony or of a misdemeanor constituting a statutory disqualification under U.S. securities laws (or failure to contest prosecution for a felony or such a misdemeanor), habitual or gross negligence in the performance of a person's duties, solicitation of employees of Holdings or any subsidiary to work at another company, improper use or disclosure of confidential information, the violation of policies and practices adopted by Holdings or any subsidiary including, but not limited to the Code of Conduct, or a material violation of the conflict of interest, proprietary information or business ethics policies of Holdings or any subsidiary, or such other circumstances as may be determined in the sole discretion of an Appropriate Officer.

**"Committee"** shall mean the Compensation and Benefits Committee of the Incumbent Board (see definition of Change in Control in the Plan).

**"Competitive Activity"** means involvement (whether as an employee, proprietor, consultant or otherwise) with any person or entity (including any company and its affiliates) engaged in any business activity which is materially competitive with any business carried on by Holdings or any of its subsidiaries or affiliates on the date of termination of a person's employment with Holdings and any of its subsidiaries, as determined in the sole discretion of an Appropriate Officer.

**"Detrimental Activity"** means (i) using information received during a person's employment with Holdings or any subsidiary, their affiliates or their clients, in breach of such person's undertakings to keep such information confidential; (ii) directly or indirectly persuading or attempting to persuade, by any means, any employee of Holdings or any subsidiary to terminate employment with any of the foregoing or to breach any of the terms of his or her employment with the foregoing; or (iii) any activity deemed to be detrimental to Holdings or any of its subsidiaries or affiliates, in each case as determined in sole discretion of an Appropriate Officer.

**"Disability"** means a disability under both the Long-Term Disability Insurance Plan and Social Security Act.

**"Discount Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the 25% discount upon issuance of the award.

**"Friendly Change in Control"** shall mean any Change in Control which is not a Hostile Change in Control.

**"Full Career Termination"** means a termination of employment with Holdings or any subsidiary when (i) a person has at least 20 years of service or (ii) a person meets all of the following criteria: (x) the person's age plus years of service with Holdings or any subsidiary equals at least 65, (y) the person is at least 45 years old, and (z) the person has at least 10 years of service with Holdings or any subsidiary.

**"Hostile Change in Control"** shall mean the occurrence of a Change in Control, without the prior approval of a majority of the independent members of the Incumbent Board.

**"Principal Units"** shall mean the number of Units (and any dividend equivalents related thereto) related to the undiscounted base portion of the award (75% of the total number of units awarded).

**"Retirement"** means a termination of employment which meets the criteria for retirement under Holdings' qualified defined benefit pension plan and the agreement by a person not to engage in Competitive Activity or Detrimental Activity through November 30, 2006.

**"Share Payment Date"** means as soon as practicable after the earlier of (a) November 30, 2006 or (b) the completion of the fiscal quarter following the one-year anniversary of termination of employment.