WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard W. Slack
Peter Gruenberger

WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
Ralph I. Miller

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                              :
**In re**                                      :        **Chapter 11 Case No.**
                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**
                                              :
                          **Debtors.**         :        **(Jointly Administered)**
                                              :
                                              :
-------------------------------------------------------------------x

**DEBTORS' OMNIBUS RESPONSE TO OBJECTIONS TO MOTION OF THE**
**DEBTORS PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE**
**AND GENERAL ORDER M-390 FOR AUTHORIZATION TO IMPLEMENT**
**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES FOR AFFIRMATIVE**
**CLAIMS OF DEBTORS UNDER DERIVATIVES TRANSACTIONS WITH**
**SPECIAL PURPOSE VEHICLE COUNTERPARTIES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this omnibus response ("Response") to the objections interposed to the motion, dated November 24, 2010, for an order approving alternative dispute resolution procedures for affirmative claims of Debtors under derivatives contracts with special purpose vehicle counterparties [Docket No. 13009] ("Motion", and the procedures appended thereto the "Proposed Order", as subsequently revised the "SPV Derivatives ADR Procedures") and respectfully represent:

## I.
## Preliminary Statement

1.      The implementation of the proposed SPV Derivatives ADR Procedures is a very important step in allowing the Debtors to resolve a large number of derivative matters, and we expect these procedures to expedite the Debtors' ability to realize substantial value for the benefit of all creditors and minimize the cost to the Debtors' estates.  Although several objections were filed in opposition to the Motion, not one of them challenged the *power* of this Court, pursuant to section 105(a) of the Bankruptcy Code and the Court's General Order M-390 (the "Standing Order"), to order the parties to an existing adversary proceeding to appear at a mediation represented by a person with authority to settle.  This is an unremarkable proposition, and the Debtors ask that the Court exercise its discretion to order the SPV Derivatives ADR Procedures in these cases.

2.      These procedures make sound practical sense as well.  As each of the SPV Derivatives Counterparties is already (or will be) a defendant in a pending adversary proceeding, each will inevitably have to make binding decisions in potentially

protracted litigation, such as whether to file motions to dismiss, whether to produce (or not produce) certain documents, what arguments to press or drop, what experts to retain, and which witnesses to call, among many others. None of the objections to the Proposed Order address the fundamental principle that because the SPV Derivatives Counterparties (as defined in the SPV Derivatives ADR Procedures) are entities that can sue and be sued, and be required to designate a person to speak on their behalf in litigation before the Court, they also can be compelled to designate such a person for the purposes of ADR, mediation, and settlement. Requiring these same parties to discuss settlement promotes judicial efficiency and provides the estate with an avenue to resolve these matters without protracted and expensive litigation.

3.     Even a cursory contrast of settlements achieved recently in two cases, both involving disputes with SPVs over the *ipso facto* impact of "flip" clauses, reveals what can happen when no party steps forward to negotiate with the Debtors. For example, in the BNY/Perpetual matter, no party emerged to negotiate with the Debtors, which resulted in expensive, time consuming litigation lasting over a year and a half, spanning two continents, spawning a litany of briefing that lead to three written decisions, and ultimately three separate appeals before any settlement was ultimately achieved. By contrast, in the Madison Avenue matter, which was resolved through mediation, because the Debtors had someone with whom to negotiate, the dispute was resolved in just a few short months with no court intervention, much less the expense of protracted litigation.

4.     It is also important to clarify at the outset what this order does **not** do: it does not go into the governing documents of any of the many different types of

SPV Derivatives Transactions (as defined in the SPV Derivatives ADR Procedures) to mandate how each SPV Derivatives Counterparty should select a person with authority to conduct ADR, mediation, or settlement on its behalf. In other words, the procedures purposefully avoid any issues that might arise among the SPV Derivatives Counterparty, the SPV Trustee, and/or Noteholders in determining who should represent the SPV in mediation. In this regard, the Proposed Order does not seek to alter any provision of a trust agreement, indenture or other governing document. Thus, in ordering compliance with the SPV Derivatives ADR Procedures, this Court would be acting no differently than a court ordering a closely-held corporation to mediate without regard to whether the board of directors of that corporation were split into factions. At the end of the day, the closely-held corporation will have to work through its intramural issues to appoint a person with authority to mediate. The Proposed Order gives the SPV Derivatives Counterparties an ample 60-day period to resolve any such intramural issues.

5.    In addition, the practical reasons for the entry of the SPV Derivatives ADR Procedures are never seriously disputed. The number and complexity of the Debtors' derivatives contracts are unprecedented for a chapter 11 case. As of the commencement date, the Debtors were party to over 6,000 derivatives contracts relating to over a million transactions. The procedures under the existing Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts, [Docket No. 5207] (the "Derivatives ADR Order") have proved to be a successful and useful mechanism to resolve numerous disputes related to derivatives transactions without the need for intervention by the Court. The Debtors have commenced proceedings under the Derivatives ADR Order by serving 97 ADR Notices

on 122 counterparties as of January 10, 2011. Of these, the Debtors have reached a settlement in 43 matters with 52 counterparties. Significantly, 24 of the 26 matters that have reached the mediation stage of the Derivatives ADR Order and which have been concluded as of the filing of this Response have resulted in a settlement. Through these settlements, the Debtors will have received a total of $355,991,214.85 for their estates.

6.      While the SPV Derivatives Transactions are currently subject to the existing Derivatives ADR Order, as explained in the Motion, the Debtors' experience is that the Derivatives ADR Order does not adequately address the difficulties the Debtors have faced in negotiating settlements of SPV Derivatives Transactions. Except for providing mechanisms for compelling the meaningful participation of the SPV Derivatives Counterparty and its Authorized Designee (as defined in the SPV Derivatives ADR Procedures), the Proposed Order does not differ substantially from the Derivatives ADR Order. Nevertheless, 12 objections to the Motion and Proposed Order were filed (collectively the "Objections", and each an "Objection") two of which have been withdrawn.[1] This relatively small number of objections is striking when considered in light of the breadth of service of the Motion.[2] Only one SPV issuer filed an Objection,[3]

---

[1]    Notice of Withdrawal of Credit Agricole Corporate Investment Bank's Objection ("CACIB") [Docket No. 13326] (Objection), [Docket No. 13859] (Withdrawal); Notice of Withdrawal of Limited Objection of Aviva S.p.A., Aviva Italia Holding S.p.A., Aviva Vita S.p.A., Aviva Life S.p.A., Aviva Italia S.p.A., Aviva Assicurazioni S.p.A., and Aviva Previdenza S.p.A (collectively, "Aviva") [Docket No. 13300] (Objection), [Docket No. 13870] (Withdrawal).

[2]    The Motion was served on parties at over 13,000 physical addresses and approximately 100,000 email addresses. Affidavit of Service Ref. Docket No. 13009 [Docket No. 13172]. Notwithstanding the suggestions raised by one Objection that notice of the Motion was inadequate, the Debtors filed and served the Motion pursuant to the Court's guidelines in paragraph 29 of the Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures (the "CMO") [Docket No. 9635]. *See* U.S. Bank National Association ("U.S. Bank") Objection, p. 14 [Docket No. 13307].

[3]    Ballyrock ABD CDO 2007-1 Limited ("Ballyrock") Objection [Docket No. 13306].

one collateral manager filed an Objection,[4] and there were only four Objections filed by Noteholders (as defined in the SPV Derivatives ADR Procedures), two of which have been withdrawn,[5] and one of which should be disregarded as untimely.[6]  The remaining Objections were filed by SPV Trustees (as defined in the SPV Derivatives ADR Procedures) and reflect the problems that the Debtors have faced in trying to engage in settlement discussions thus far—the SPV Trustees generally refuse to act unless expressly required by the governing indentures and/or trust agreements.

7.      In essence, the Objections dispute the proper roles of the SPV Derivatives Counterparties, the SPV Trustees, and the Noteholders in mediation with the Debtors.  In addition, while some Objections also complain about the purported costs of complying with the SPV Derivatives ADR Procedures, at least one objector goes so far as to take the untenable position (previously rejected by the Court in issuing the Derivatives ADR Order) that the Debtors should bear the costs of its contractual counterparty to comply with the proposed procedures.  While the Debtors appreciate the constructive nature in which some of the Objections were made, many of the Objections misunderstand, or ignore, the fundamental principle that the SPV Derivatives ADR Procedures are designed to promote:  the Debtors are entitled regarding disputes with SPV Derivatives Counterparties both to mediate, and if not successful, *litigate*, with their contractual counterparties—the SPV Derivatives Counterparties.

---

[4]   Wellington Management Company, LLP ("Wellington") Objection [Docket No. 13311].

[5]   Principal Global Investors (Europe) and Principal Global Investors LLC (together "Principal Global") [Docket No. 13367], Minibond Noteholders Objection [Docket No. 13823], and the Aviva and CACIB Objections, which have been withdrawn.

[6]   As addressed further below, the Minibond Noteholders Objection was filed on January 6, 2011, nearly one month after the December 8, 2010 objection deadline.

8.      For the reasons set forth in the Motion and this omnibus Response, the Court should overrule each Objection and authorize the SPV Derivatives ADR Procedures.  Because the SPV Derivatives ADR Procedures have been modified in an attempt to resolve some of the Objections and other attendant issues, a revised proposed order is attached hereto as "Exhibit A" (the "Revised Procedures").[7]    A redline comparing the Proposed Order originally set forth in the Motion to the Revised Procedures is also attached hereto as "Exhibit B."  Additionally, a new redline comparing the Revised Procedures to the original Derivatives ADR Order is attached hereto as "Exhibit C."

## II.
## The SPV Derivatives ADR Procedures are Authorized by and Consistent with Precedent in this District

9.      There can be no credible dispute as to the Court's power to implement the SPV Derivatives ADR Procedures, in particular because the procedures apply only after the commencement of litigation against the SPV Derivatives Counterparty.  Specifically, the SPV Derivatives ADR Procedures are authorized by the Court's inherent power under section 105(a) of the Bankruptcy Code "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).[8]  In addition, the Standing Order expressly provides that:

---

[7]    The Debtors do not specifically address and have not considered any objection, proposal, or commentary made in exhibits attached to an Objection, but not expressly made in the actual Objection. The Debtors reserve the right to respond to any such objections, proposals, or commentary to the extent that the Court deems necessary.  Nevertheless, the Revised Procedures incorporate certain suggestions raised in Exhibit G of the U.S. Bank Objection.

[8]    Section 105(a) of the Bankruptcy Code provides the Court broad authority to fashion appropriate relief. "Bankruptcy jurisdiction, at its core, is *in rem* . . . . [T]he jurisdiction of courts adjudicating rights in the bankrupt estate include[] the power to issue compulsory orders to facilitate the administration and

"The court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee," § 1.1; and "Unless otherwise ordered by the presiding judge, any adversary proceeding, contested matter or other dispute may be referred by the court to mediation." § 1.3.

10.    The basic notion of compelling a party to bring someone with settlement authority to mediation is neither novel nor unexpected.  *See, e.g.*, *In re A.T. Reynolds & Sons, Inc.*, 424 B.R. 76, 89, 92-95 (Bankr. S.D.N.Y. 2010) (explaining that "[w]hile it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis[,]" and sanctioning Wells Fargo, the defendant, and its counsel for failing to follow the Court's order to mediate in good faith and for failing to send a representative with settlement authority to the mediation); *In re Collins & Aikman Corp.*, 376 B.R. 815, 817 (Bankr. E.D. Mich. 2007) (ordering mediation of hundreds of adversary proceedings filed by the debtor and requiring a "representative of each party having full settlement authority" to participate "in facilitative mediation, as scheduled and presided over by the appointed mediator, in good faith and with a view toward reaching a consensual resolution").

11.    Not one of the objectors has challenged the power of this Court to order a litigant, here the SPV Derivatives Counterparty, to mediate and to designate a

---

distribution of the res." *Cent. Va. Comm. College v. Katz*, 546 U.S. 356, 362, 370 (2006) ("[C]ourts adjudicating disputes concerning bankrupts' estates historically have had the power to issue ancillary orders enforcing their *in rem* adjudications."). *See also Adelphia Commc'ns Corp. v. America Channel, LLC (In re Adelphia Commc'ns Corp.)*, 345 B.R. 69, 85 (Bankr. S.D.N.Y. 2006) ("[s]ection 105(a) provides broad equitable power for a Bankruptcy Court to maintain its own jurisdiction and to facilitate the reorganization process.").

person with authority.    Accordingly, the Court can and should authorize the SPV Derivatives ADR Procedures.

### III.
### The Objections Lack Merit and Should be Overruled

12.    The Objections do little more than expose the brick wall that the Debtors have faced when attempting to implement the existing Derivatives ADR Order in transactions involving SPV Derivatives Counterparties.    SPV Derivatives Counterparties—which are the direct contractual counterparties with the Debtors on the swaps at issue—have almost uniformly refused to participate in mediation.  To address these hurdles, the Debtors crafted the SPV Derivatives ADR Procedures, which encourage good-faith, effective negotiation and mediation with the Debtors.  They (i) are balanced and fair; (ii) do not compel any party to settle; and (iii) do not impose any greater burden than what would be faced if the Debtors were to fully litigate with each SPV Derivatives Counterparty and SPV Trustee.  Still, the objectors maintain their unyielding "just say no" stance—a posture the Court should reject.

13.    The Debtors have responded to the Objections as set forth in the thirteen categories itemized below.  In addition to the specific responses, the Noteholders' Objections should be disregarded in their entirety because they lack standing, and finally, the Minibond Noteholders' Objection (defined below), should be overruled because it is premised on a patently false assertion that the Debtors previously agreed not to mediate any disputes related to the transactions in which they claim an interest.

A.    **The Court Should Authorize the SPV Derivatives ADR Procedures and Overrule the Objections on the Merits.**

<u>Objection 1</u>:    Section 105(a) of the Bankruptcy Code does not authorize the Court to modify substantive rights contained in the relevant indentures and/or trust agreements.[9]

14.    <u>Response</u>: These objectors argue that the Court lacks the power to order effective mediation between the Debtors and their contractual counterparties because one or more of the relevant indentures and/or trust agreements do not specifically provide the SPV Derivatives Counterparty or the SPV Trustee with the authority to appoint an Authorized Designee.    The thrust of such objections rests on the faulty premise that the Proposed Order attempts to modify substantive or contractual rights. The argument is a red-herring and misunderstands the limited nature of the Proposed Order; as such, it should be overruled.    The Debtors are not seeking to implicate the governing trust documents or otherwise modify particular contractual rights to support mediation.    Contrary to the Objections, participating in mediation does not alter or impact a single substantive right of the parties.[10]

15.    The objectors not only fail to contend that the Court lacks power to order a litigant to mediate, they also do not contend that the Court lacks power to order a

---

[9]    Deutsche Bank Trust Company Americas and Deutsche Bank National Trust Company (collectively "<u>Deutsche Bank</u>") Objection [Docket No. 13305] ¶¶ 11-14; Ballyrock Objection ¶ 3; U.S. Bank Objection, pp. 9-13; Bank of New York Mellon, the Bank of New York Mellon Trust Company, N.A., and BNY Corporate Trustee Services Limited (collectively "<u>BNY</u>") Objection [Docket No. 13308] ¶¶ 19-23 (objecting that trustees without authority cannot be compelled to participate in ADR process); Wellington Objection [Docket No. 13311] ¶¶ 15-16; HSBC Bank USA, National Association ("<u>HSBC</u>") Objection [Docket No. 13315] ¶ 6; Bank of America, National Association ("<u>Bank of America</u>") Objection [Docket No. 13343] ¶¶ 11, 16; Principal Global Objection ¶ 9.

[10]    Similarly, the concern that "SPV Derivatives Counterparties will be forced to seek judicial intervention or will have to litigate issues related to their authority under Trust Documents before being able to enter into any settlements" misconstrues the purposes of the Motion.    Deutsche Bank Objection ¶ 14.

litigant to bring someone to the mediation for purposes of settlement. Indeed, section 651 of the Judicial Code authorizes district courts to implement alternative dispute resolution procedures, "including adversary proceedings in bankruptcy." 28 U.S.C. § 651. Under this authority, the Southern District of New York entered the Standing Order, which permits the Court to order mediation upon its own motion or upon a motion by any party in interest. Standing Order § 1.1. Additionally, the entire purpose of the mediation is to resolve disputes involving various provisions of the Bankruptcy Code, including without limitation, sections 362 (automatic stay), 365 (executory contracts), 541 (property of the estate), and 547-49 (voidable transfers). None of the cases cited in the Objections limits the Court's broad power to order mediation simply because of one party's private agreements with its own investors. Put differently, one party's own contractual arrangements cannot limit the power of the Court to order mediation. Even if, *arguendo*, a party's governing documents expressly barred that party from engaging in mediation, such contract could not restrict *the power* of the Court to require that parties to a dispute mediate. As such, cases discussing how a trustee's rights and obligations are defined generally are inapplicable and irrelevant to the Court's consideration of the SPV Derivatives ADR Procedures. For instance, Deutsche Bank cites *In re Delta Air Lines, Inc.*, for the proposition that a "trustee can *only* settle 'at the behest of a majority of the Bondholders.'" Deutsche Bank Objection ¶ 10 (emphasis added). However, *Delta* never addressed whether direction by a majority of the bondholders is a general requirement to settlement by a trustee. *See In re Delta Air Lines*, 370 B.R. 537 (Bankr. S.D.N.Y. 2007), *aff'd* 374 B.R. 516. The bankruptcy court in *Delta* merely held that the 100% bondholder consent requirement at issue in that case did *not* prohibit the trustee from entering into a

11

settlement at the direction of 60% (in amount) of the bondholders. *See In re Delta Air Lines*, 370 B.R. at 551. In approving the settlement, the court noted that the Bankruptcy Code "overrides private agreements." *Id.* at 546 (discussing the Debtors' right in bankruptcy to reject an unexpired lease). Accordingly, arguments that the Court's authority is restricted by structured transaction documents are unavailing.

16. Finally, the Court has already acknowledged that it has the authority to order mediation by any procedures it deems appropriate. *See* Aug. 26, 2009 Tr. at 39:5-14 ("I could, on my own, create my own monstrosity. I could simply say there shall be mediation, and it will follow the following format. And it may be the subject of some complaints, but I believe I have the power to do it."). The procedures set forth in the Proposed Order and the Revised Procedures are reasonable, well-designed, and flexible procedures to encourage parties to pending litigation to resolve their dispute, and there can be no doubt the Court has authority to implement them.

> Objection 2: It is not possible for the SPV Derivatives Counterparty to designate *one* person with complete settlement authority.[11]

17. Response: Some SPV Trustees and one SPV Derivatives Counterparty assert that designating one Authorized Designee is not possible for what are essentially logistical reasons: (i) the division of the notes in some transactions into

---

[11] *See* Deutsche Bank Objection ¶¶ 2, 9-10; Ballyrock Objection ¶ 3-4 (asserting that "Ballyrock is not in a position to designate such a person," and that the notice requirement in paragraph 5(b)(iii) of the Proposed Order is also impracticable because "Ballyrock does not have access to the identities of the Noteholders"); U.S. Bank Objection, pp. 15-17 (objecting that the trustee and/or the SPV Derivatives Counterparty do not know who the Noteholders are unless they identify themselves, and in some transactions involving multiple tranches of notes one Authorized Designee is insufficient). *See also* BNY Objection ¶ 9 (noting same lack of Noteholder information); Bank of America Objection ¶ 10 (same, asserted in context of objection to provisions of Proposed Order regarding the notice/response stage); HSBC Objection [Docket No. 13315] ¶ 5 (responsibilities of trustee include "forwarding to Holders notices received from parties in interest" and "following the direction of Holders").

multiple tranches effectively creates an inter-creditor dispute that makes it impossible for one Authorized Designee to represent the interests of each group of Noteholders, and/or (ii) the identities of the Noteholders are unknown.

18.     Regarding the first basis for this objection, the SPV Derivatives Transactions may be complicated, highly sophisticated transactions with contractual relationships between the SPV Derivatives Counterparties, SPV Trustees and Noteholders—but these intramural relationships are beyond the scope of the SPV Derivatives ADR Procedures; the procedures do not purport to compel any particular mechanism for the SPV Derivatives Counterparties to comply with this order to appoint a designee.   The focus of the Authorized Designee requirement is to compel the participation of someone who can settle *on behalf of the SPV Derivatives Counterparty*— not the Noteholders.   As discussed in detail below and as this Court has recognized a number of times in previous orders, the Noteholders are not in privity with the Debtors with respect to the swaps at issue.  The contractual counterparty is the SPV—and it is the SPV Derivatives Counterparty which is the proper party for litigation and settlement. The particular method by which an Authorized Designee is selected and the extent to which the SPV Derivatives Counterparty, through its Authorized Designee, represents the interests of its investors, is beyond the scope of the SPV Derivatives ADR Procedures. Such decisions, which will change depending on the specific transaction, are not appropriate for this order.

19.     The   second   basis   for   objection—that   SPV   Derivatives Counterparties or SPV Trustees are unaware of the identity of all Noteholders in certain circumstances is also meritless because, as noted above as well as in section III(B), *infra*,

it is the SPV Derivatives Counterparty that is the proper party to be negotiating since it is the contractual counterparty to the swap.  Moreover, as noted in the Objections, the SPV Trustee generally has an *obligation* to communicate with the Noteholders in certain circumstances, such as to solicit their direction. *See* BNY Objection ¶ 9.  There is nothing in the SPV Derivatives ADR Procedures that would prevent the SPV Trustee from taking advantage of the existing clearing system communication mechanism in order to obtain approval of an Authorized Designee.  In fact, the Proposed Order is intentionally silent on the manner in which the SPV Derivatives Counterparty designates a person with settlement authority in order to leave that up to the discretion of the SPV Derivatives Counterparty.  SPV Derivatives Counterparties that are concerned about protecting constituents' economic interests in the deal collateral are free to employ whatever procedure best suits a particular transaction.  Nominating an Authorized Designee does not necessarily require that each Noteholder first be identified.  Again, nothing in the Revised Procedures is intended to instruct, alter or change the nature of the governing documents of each transaction among the SPV Derivatives Counterparty, the SPV Trustee, and the Noteholders.

20.    Moreover, complaints by SPV Trustees and/or SPV Derivatives Counterparties regarding the identity of unknown Noteholders are not justified now, over two years after counsel to the Debtors raised awareness of disputes related to termination of derivatives transactions.  *See, e.g.*, November 25, 2008 letter from Lori Fife to The Bank of New York Mellon Trust Company (attached hereto as "Exhibit D"); November 25, 2008 letter from Lori Fife to U.S. Bank Corporate Trust Services – CDO Group (attached hereto as "Exhibit E"), and well over a year after the Court entered the

14

Derivatives ADR Order. Likewise, a process was put in place over a year and a half ago requiring all derivatives counterparties, including SPVs, to file proofs of claim and submit derivatives questionnaires, and a similar amount of time was allotted for the derivatives counterparties to take the steps necessary to communicate with their respective constituents and complete the required paperwork. *See* Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (July 2, 2009) ("Bar Date Order"). The SPV Trustees and/or SPV Derivatives Counterparties have had ample time to organize their affairs, develop protocols for managing these SPV Derivatives Transactions, and communicate with and identify the Noteholders.

> Objection 3:    The SPV Trustee is being required to undertake obligations for which he is not compensated under the governing indentures and/or trust agreements, the costs of which should be borne by the Debtors.[12]

21.    Response:  The SPV Trustee has no greater obligations under the Proposed Order than it does under the existing Derivatives ADR Order. The "new" obligations being proposed herein primarily relate to having the SPV Derivatives Counterparty designate a person with authority to mediate to facilitate settlement discussions. The SPV Derivatives ADR Procedures maintain the same provision as the existing Derivatives ADR Order regarding fees and expenses incurred in complying with

---

[12]    *See* U.S. Bank Objection, pp. 16, 17-18 (trustee "neither currently has the tools or resources to adequately serve in the role as the Authorized Designee," and it "is not required to spend its own funds"); Wellington Objection ¶ 11 (procedures "will burden Wellington with costs that it should not be required to bear"); Bank of America Objection ¶ 8 (including objection to expenditure of funds to comply with service obligation in paragraph 5(b)(iii) of Proposed Order).

the order: "each party to the Mediation shall bear its own counsel fees and other costs" of complying with the procedures. Proposed Order ¶ 14. The Proposed Order is entirely consistent with the original Derivatives ADR Order as it relates to expenses and costs of the ADR process.

22.    These Objections ignore the realities of the Proposed Order, which involve the Debtors filing adversary proceedings against SPV Derivatives Counterparties as a first step. The SPV Trustees are effectively demanding that the Debtors as plaintiffs pay the defendant for the privilege of referring the litigation to mediation. Such an arrangement would amount to fee-shifting, and is violative of the "American rule" against awarding attorneys' fees absent contractual or statutory authorization, or in narrow common law circumstances. *See Travelers Cas. and Sur. Co. of Am. v. Pacific Gas and Elec. Co.*, 549 U.S. 443, 448 (2007); *Jackson v. Oppenheim*, 533 F.2d 826, 831 (2d Cir. 1976). There is no justifiable reason why the SPV Trustees should be provided with an independent financial advisor or valuation expert at the expense of the Debtors and their creditors. *See* U.S. Bank Objection at 18-19. Nothing in the Revised Procedures is intended to address the internal steps taken by parties to the mediations in preparing for negotiations and, therefore, if parties elect to use such services, nothing abrogates that right. However, the Debtors and their creditors should not be asked to pay the expenses of their negotiating counterpart. Such proposals are thinly veiled tactics to raise the Debtors' expected cost of referring the litigation to mediation and threaten to eviscerate one of the primary benefits of mediation—its cost effectiveness.[13]

---

[13]    Similarly, the proposal contained in the Deutsche Bank Objection that the Debtors indemnify other parties to a settlement from certain third party claims is meritless and nothing more than an attempt to unjustifiably shift the potential cost of mediation to the Debtors. Deutsche Bank Objection ¶ 19(e).

23.    In objecting to the costs of complying with the notice provisions contained in paragraph 5(b)(iii) of the Proposed Order, the SPV Trustees ignore that this notice provision will operate to their benefit because greater notice improves the likelihood that all constituents are made aware of the SPV Derivatives Counterparties' need to designate a person with settlement authority.  Moreover, such demands by the SPV Trustees are also contrary to the interests of the Noteholders for whom they serve as fiduciaries.    And as fiduciaries the SPV Trustees already have an obligation to communicate effectively with their respective beneficiaries.    Although the SPV Derivatives ADR Procedures set forth a method and means of communication, they do not require anything new because communication is already an essential part of the SPV Trustees' obligations.  The overall costs to the SPV Derivatives Counterparties and SPV Trustees after fully litigating a dispute will surely overshadow any costs of mediation, and yet the SPV Trustees are attempting to block a procedure for mediation.

> Objection 4:    The Debtors should negotiate directly with the Noteholders, and no participating Noteholder should be bound by action or inaction of other parties.[14]

24.    Response:  This objection is duplicative of an objection to the current Derivatives ADR Order that was overruled by the Court, and the Court should again reject it.  The similarity of the objections is best reflected in BNY's Objection.[15]

---

[14]    Principal Global Objection ¶¶ 10-11; Minibond Noteholders ¶ 11.  See also  U.S. Bank Objection, p. 17 ("Noteholders as a whole need to determine what a reasonable settlement to the Debtors might be," and in some cases "the Authorized Designee ought to consist of the entire group"); BNY Objection ¶¶ 6, 22 (referring to procedures as "[a] process without the actual economic stakeholders," and later noting "any settlement may require 100% Holder approval"); Deutsche Bank Objection ¶ 19.

[15]    Another example is the Minibond Noteholders Objection paragraph 11, which recycles the same argument from paragraph 20 in their objection to the existing Derivatives ADR Order.  See Limited Objection of the Wong Minibond Noteholders to Debtors' Motion Motion Pursuant to Section 105(a) of

BNY raised the exact same argument in connection with the original Derivatives ADR
Order.  Indeed, paragraph 22 of the BNY Objection is identical (including the footnotes)
to paragraph 10 of BNY's Objection to the Debtors' original ADR Procedures Motion, as
are footnotes 9 and 7, respectively.[16]  This is at least the third time BNY has sought to
require Noteholder participation in the resolution of a derivatives transaction involving a
Debtor's SPV Derivatives Counterparty, and just as it has done on prior occasions, the
Court should reject it.[17]

> 25.    Likewise, the suggestion in the BNY Objection that participation
by the SPV Trustee is unnecessary because the Debtors can rely on discovery
mechanisms to identify and then negotiate directly with Noteholders misses two essential
points.  First, such an assertion is premised on the flawed assumption that the Debtors
should  resolve these disputes directly with Noteholders even though Noteholders are not
in contractual privity with the Debtors and have no authority to resolve the disputes
directly with the Debtors.  *See* BNY Objection ¶¶ 25-27.  Second, ADR/mediation exists
to avoid expense, protracted discovery, and over-burdening the Court's resources, none
of which was involved in settling the Madison Avenue dispute.

---

the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivatives Contracts [Docket No. 4616] (Jul. 31, 2009).

[16]   *See* Objection of the Bank of New York Mellon, the Bank of New York Mellon Trust Company, N.A. and BNY Corporate Trustee Services Limited to Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and General Order M-143 for Authorization to Implement Alternative Dispute Resolution Procedures for Affirmative Claims of Debtors Under Derivatives Contracts [Docket No. 4589] (Jul. 31, 2009).

[17]   BNY also unsuccessfully argued that Perpetual, the Noteholder in the *BNY* case, was an indispensable party.  *See* Order Denying Motion to Dismiss, *Lehman Brothers Special Financing, Inc. v. BNY Corp. Trustee Servs. Ltd.*, 08-13555 (JMP), 09-01242 (JMP) [Docket No. 43] (Aug. 12, 2009).  The Court rejected that contention.  *See infra* page 29 for further discussion.

26.    As explained in section III(B) below and in the Motion, negotiation between the Debtors and the Noteholders directly is unworkable and unnecessary.    It would be a waste of the Debtors' estates' resources in most circumstances to try to herd together the various unknown Noteholders or to try to reach piecemeal settlements.    Moreover, the Debtors contracted with the respective SPV Derivatives Counterparties, not the Noteholders.    If a Noteholder wishes to have a direct impact on settlement discussions, it can do so by whatever means are permitted under the internal documents of the particular SPV Derivatives Counterparty.    Regardless of the contention raised in the Objections that the Noteholders are the true economic stakeholders, the Noteholders are mere investors in the Debtors' contractual counterparties.

27.    Similarly, Deutsche Bank's proposal in its Objection to require the Debtors to commence adversary proceedings against Noteholders if the SPV Derivatives Counterparty determines **in its sole discretion** that such an adversary proceeding is warranted is meritless.    *See* Deutsche Bank Objection ¶ 19.    There simply is no legitimate basis upon which the SPV Derivatives Counterparty, in litigation brought by the Debtors, should even think it is empowered to act as if it wore judicial robes.

Objection 5:    Sanctions should be limited to the offending party only.[18]

28.    Response:    The Debtors have clarified in the Revised Procedures that they will not seek Sanctions (as defined in the SPV Derivatives ADR Procedures) against anyone besides the offending party.    For example, in paragraph 5(b)(i) of the

---

[18]    Bank of America Objection ¶ 17; Principal Global Objection ¶ 12.

Revised Procedures, the Debtors have made clear that no entity other than the SPV Derivatives Counterparty is subject to Sanctions for failure to timely serve the Debtors with a Settlement Participation Designation (as defined in the SPV Derivatives ADR Procedures).    Additionally, the Debtors modified the Proposed Order to include more flexibility such that in deciding whether to impose Sanctions, the Court will consider whether Noteholders have been involved in the ADR process, whether the SPV Derivatives Counterparty has any remaining assets to satisfy such an award of Sanctions, and whether the SPV Derivatives Transaction has been completely closed out and all proceeds have been distributed.  *See* Revised Procedures ¶ 12.

29.    To the extent that economic repercussions from a Sanctions award have an effect on an SPV Derivatives Counterparty's security holders or other constituents, such an effect is no different than that to stockholders in a corporation who are affected by sanctions imposed on the corporate entity for various corporate misdeeds. As emphasized above, the Debtors contracted with the SPV Derivatives Counterparty, not the Noteholders, and thus are entitled to engage in mediation discussions with such counterparties.    Accordingly, an SPV Derivatives Counterparty's failure to mediate in good faith with the Debtors should be subject to Sanctions, in a manner that is in the discretion of the Court.

30.    For example, in *In re AT Reynolds & Sons, Inc.*, the Bankruptcy Court for the Southern District of New York sanctioned a bank, Wells Fargo, for failure to participate in a mediation in good faith after the bank was ordered to mediate but sent junior people to the mediation "prepared only to repeat a pre-conceived mantra that indicated that Wells Fargo was not open to any compromise that would involve 'taking a

single dollar out of their pocket.'"   424 B.R. at 80, 90 ("The Court concludes that attendance at a mediation without participation in the discussion and risk analysis that are fundamental practices in mediation constitutes failure to participate in good faith.").  The Proposed Order permits the Debtors to seek Sanctions in similar circumstances against a party that fails to attend or participate in good faith in mediation.  *See* Proposed Order ¶ 11 ("If . . . the Court determines that *a party* has not complied . . . *such party* may be subject to such Sanctions as the Court deems appropriate." (emphasis added)).

31.    Finally, any unwarranted suggestion that the possibility of sanctions will cause the Debtors to overvalue the transaction should be rejected.  The Proposed Order, like the original Derivatives ADR Order, has an express requirement that each Debtor and all other parties participate in good faith.  Proposed Order ¶ 5(a).  This good faith requirement prevents any party to the dispute from seeking recovery of amounts greater than the value of the transaction, and nothing in the Proposed Order or Revised Procedures will *require* an SPV Derivatives Counterparty to settle with the Debtors.  For all these reasons, the Court should overrule these objections.

<div style="margin-left:2em">

Objection 6:    Sanctions should be limited to occasions when the Debtors have proof of bad faith or intentional misconduct by the party against whom sought.[19]

</div>

32.    Response:  As Sanctions may be awarded only following notice and a court hearing, this objection has no merit and seeks only to impose a redundant evidentiary requirement on the Debtors in a sanctions motion.  Importantly, as paragraph 11 of Exhibit B to the Motion illustrates, the Court has already approved substantially similar sanction provisions in the original Derivatives ADR Order, and the Proposed

---

[19]   Bank of America Objection ¶ 17.

Order already contains a good faith requirement: "If, after notice and a hearing, the Court determines that a party has not complied with the SPV Derivatives ADR Procedures in good faith in connection with any SPV Derivatives ADR Dispute, such party may be subject to such Sanctions as the Court deems appropriate[.]" Proposed Order ¶ 11; *see also id.* at ¶ 5(a). There is no reason to doubt that the Court, when presented with a motion for sanctions, will not reasonably weigh the equities and the facts at issue. *See, e.g.*, *Negron v. Woodhull Hosp.*, 173 Fed. Appx. 77, 79 (2d Cir. 2006) (acknowledging that sanctions can be brought against a party for not mediating in good faith, although finding that sanctions were not appropriate under the circumstances); *AT Reynolds*, 424 B.R. at 80, 90 (sanctioning bank for refusing to participate in court-ordered mediation in good faith). This objection is merely an attempt to place additional, unnecessary burdens on the Debtors, and the Court should overrule it.

Objection 7: The availability of Sanctions is generally unfair.[20]

33. Response: As this Court and others in this Circuit have recognized, sanctions are appropriate in certain instances, and their threat serves the legitimate purpose of compelling good faith participation in dispute resolution. *See AT Reynolds*, 424 B.R. at 80, 90. Similar objections were overruled by this Court in entering the original Derivatives ADR Order, and such objections should not be re-hashed at this stage of the proceedings. Additionally, the sanctions provision in the Proposed Order is not unfair and does not favor the Debtors, because any Sanctions award ultimately will be at the Court's discretion, even for the failure to timely designate a person with settlement authority. *See* Proposed Order ¶ 12; *see also id.* ¶ 5(a).

---

[20] Bank of America Objection ¶ 17.

34.     Moreover, in 97 ADR matters initiated by the Debtors with 122 counterparties to date, the Debtors have filed a motion seeking sanctions against only one counterparty, which motion was granted.   *See* Order Granting Motion of Lehman Brothers Special Financing Inc. Pursuant to Section 362 of the Bankruptcy Code for Enforcement of the Automatic Stay and For Sanctions for Violation of the ADR Procedures Order [Docket No. 12201] (Oct. 20, 2010).   Consistent with past precedent, the Debtors remain committed to trying to resolve conflicts without court intervention. For the foregoing reasons, the Court should overrule each objection to the Sanctions provision.

> Objection 8:    The Proposed Order should require that settlements must be approved by a Rule 9019 motion upon adequate notice to all interested parties of the proposed resolution, and give the Noteholders an opportunity to object.[21]

35.     Response:  In the interest of compromise, the Revised Procedures now provide for court approval of settlement reached under the Revised Procedures, at the request of any party to the mediation, using a Rule 9019 process in order to provide additional comfort to SPV Derivatives Counterparties, SPV Trustees, and Noteholders. Revised Procedures ¶ 4.   Under the Revised Procedures, a Rule 9019 motion shall be required where both: (1) a party to the mediation has requested the 9019 procedure in writing; and (2) the settlement has not been consented to by the applicable majority of Noteholders (notwithstanding the fact that the Noteholders lack standing to object to the Motion, as explained in detail below).   Revised Procedures ¶ 4(iv).   Given the Debtors'

---

[21]   Deutsche Bank Objection ¶ 19; U.S. Bank Objection, pp. 20-24.  Additionally, U.S. Bank suggested a carve-out in the confidentiality provisions that clarifies that settlement terms can be provided to the Noteholders (U.S. Bank Ex. G ¶ 12).

legitimate interest in maintaining the confidentiality of any settlement amount, however, the economic terms of any resolution shall be redacted in the 9019 motion and the Court's related order.[22]  *Id.*  While Noteholders are in the first instance entitled under the Revised Procedures to receive a redacted copy of the 9019 motion with notice of the hearing date and objection deadline, Noteholders not served with an SPV Derivatives ADR Package (as defined in the SPV Derivatives ADR Procedures) may also receive an unredacted copy of the 9019 motion after agreeing in writing to maintain the confidentiality of any such information received.[23]  *Id.*  As an additional compromise, the Revised Procedures bar all Noteholders from taking any action against the person selected as the Authorized Designee as a result of the settlement so long as notice is provided to the SPV Trustee and Noteholders pursuant to paragraph 5(b)(iii).  Revised Procedures ¶ 16.

> Objection 9:    The Debtors should not have the option to elect whether the existing Derivatives ADR Order continues to apply.[24]

36.    Response:    There are several ADR matters involving SPV Derivatives Counterparties that are governed by the existing Derivatives ADR Order.

---

[22]    An important element of any mechanism for workable ADR procedures is to keep the results of mediations confidential.  The Debtors have found that when the economic terms of prior settlements with other parties are known by the parties to subsequent mediations, the mediations wander into discussions concerning the appropriateness of using these past settlements as benchmarks instead of focusing on the merits of each dispute.  This often makes settlements less likely.  As a result, the Debtors continue to believe that confidentiality of settlements has and will continue to facilitate more effective settlement negotiations.  Accordingly, the Revised Procedures require the redaction of settlement amounts in connection with 9019 papers.

[23]    Because Noteholders served with an SPV Derivatives ADR Package are already bound by the confidentiality provisions of the SPV Derivatives ADR Procedures, they need not separately agree in writing to maintain confidentiality before received an unredacted copy of the 9019 motion.

[24]    Wellington Objection ¶ 13.

Other than purported "confusion" by Wellington, this Objection fails to set forth any basis for why the Debtors should not be able to maintain the existing ADR procedures for SPV Derivatives Transactions in which the ADR process has already begun. Wellington Objection ¶ 13. The Debtors are entitled to seek relief from the Court in any manner that they deem appropriate. 11 U.S.C. § 1109(b). The ability to maintain the existing ADR procedures is practical in order to not disrupt the few mediations involving SPV Derivatives Transactions in which the existing Derivatives ADR Order is working.

> Objection 10: The definition of SPV should not include investment advisors, such as Wellington.[25]

37. <u>Response</u>: Wellington complains that the term SPV Derivatives Counterparty in the Proposed Order "should be understood to include only the person or entity with whom the Debtor contracted, *i.e.* the actual signatories to the Hedge Agreements." Wellington Objection ¶ 12. The Proposed Order has been modified to make clear that the SPV Derivatives Counterparty is the contracting counterparty to the Debtor. *See* Revised Procedures ¶ 1(b) ("SPV Derivatives Transactions include, but are not limited to, swap agreements and forward contracts with such SPV that has entered into one or more SPV Derivatives Transactions with one or more of the Debtors (the "<u>SPV Derivatives Counterparty</u>")"). However, there are other parties, such as collateral managers and investment advisors, that may be appropriately added to the list of participants to the SPV ADR process, including parties such as Wellington. The flexibility to include advisory parties is essential, and the Revised Procedures make clear

---

[25] Wellington Objection ¶¶ 12, 14.

that the obligations of the SPV Derivatives Counterparty do not apply to other parties, such as investment advisors like Wellington, included in the ADR process.

> Objection 11:  The Proposed Order is not clear with respect to who the required "parties" to mediation are.[26]

38.    Response:  The Revised Procedures have resolved this issue by defining the term "parties" to mean all entities served with the SPV Derivatives ADR Package (as defined in the SPV Derivatives ADR Procedures): "The Debtor, the SPV Derivatives Counterparty, the SPV Trustee, and/or any Noteholder or Advisor served with the SPV Derivatives ADR Package are collectively referred to herein as the 'Parties.'"  Revised Procedures ¶ 2.

> Objection 12:  The deadlines for the SPV Derivatives Counterparty to make required submissions are not long enough.[27]

39.    Response:  This objection is meritless because it ignores the fact that the time frames are no more than what would likely be required if the Debtors proceeded with litigation.    In particular, the 10-day window to identify known Noteholders or, if unknown, the clearing system through which such Noteholders are communicated, is ample time given that the SPV Trustees should have started the process of identifying Noteholders over two years ago, and have been put on notice of the need to identify them at least twice since then.  *See* Derivatives ADR Order; Bar Date Order.  Given this lengthy notice, the time periods in the SPV Derivatives ADR Order are reasonable.

---

[26]  Bank of America Objection ¶ 15.

[27]  BNY Objection ¶ 27 (proposing 30 days instead of 10 days in Proposed Order to identify Noteholders or the clearing system through which such Noteholders are communicated).

40.    Moreover, the Revised Procedures include a knowledge qualifier in paragraph 5(b)(iv):

> Within ten (10) calendar days of receiving written request by a Debtor, the SPV Derivatives Counterparty, and if served with the SPV Derivatives ADR Package, the SPV Trustee, shall provide information to such Debtor sufficient to identify and contact such Noteholders directly if known, and if such information is unknown to the SPV Derivatives Counterparty and SPV Trustee, then the SPV Derivatives Counterparty and SPV Trustee shall provide information sufficient to identify the clearing systems through which such Noteholders are communicated.

41.    Additionally, the SPV Derivatives ADR Procedures, like the existing Derivatives ADR Order, provide that any such deadlines may be modified by the mutual consent of the parties.  Proposed Order ¶ 10.  To the extent the parties feel a modification of deadlines will promote a consensual resolution, it is in both parties' interests to agree to such a modification.  The Debtors are willing to work with particular SPV Derivatives Counterparties and the SPV Trustees on a case-by-case basis where there are extenuating circumstances that would in fairness warrant a reasonable extension of a deadline.  This objection should therefore be overruled.

> Objection 13: Where funds have been distributed to the Noteholders, the Proposed Order ought to provide that neither the SPV Trustee nor the SPV Derivatives Counterparty shall serve as the Authorized Designee.[28]

42.    The SPV Derivatives ADR Procedures are flexible in that they allow for the Debtors to name as parties to a particular ADR not only the SPV Derivatives Counterparty, but also the SPV Trustee and, in appropriate circumstances,

---

[28]    .S. Bank Objection, pp. 24-25.

certain Noteholders.  In "distributed" deals, the Debtors may well decide to include certain Noteholders in the process, but it is the Debtors' view that its contractual counterparty—the SPV Derivatives Counterparty—is likely to be an appropriate person to be represented in almost every mediation.  Moreover, in the event that a designee is not identified in a "distributed" deal and the Debtors seek sanctions under the Proposed Order, the Court will be able to properly consider all factors in deciding upon the appropriate sanction, including whether the deal is one where collateral has already been distributed and the reasons why a designation was not made.  In addition, the Proposed Order does not specify how an Authorized Designee is selected, or limit in any way who may serve as the Authorized Designee.  Nor do the Revised Procedures require the SPV Trustee to serve as the Authorized Designee, although nothing prohibits it from doing so. Because the SPV Derivatives ADR Procedures leave the designation of a person with settlement authority up to the discretion of the SPV Derivatives Counterparty, there is no reason to limit this discretion for distributed deals.  Therefore, this objection should be overruled.

**B.  Additionally, the Court Should Overrule Objections Lodged by Noteholders Because They Lack Standing.**

43.    The SPV Derivatives ADR Procedures provide a mechanism to facilitate settlement discussions between the Debtors and their direct contractual counterparties to the swaps at issue.  These contractual counterparties are the actual defendants in litigation.  Third parties to the contracts between LBSF and the SPV Derivatives Counterparties, such as Noteholders, lack standing to assert the rights of the SPV Derivatives Counterparties and are strangers to the contracts at issue.  Put

differently, the procedures allow the Noteholders to continue to have whatever voice in the mediation is provided by the operative governing documents of the particular SPV Derivatives Counterparty.   But it is both impractical and not a legal imperative for hundreds of Noteholders with differing interests to appear and negotiate on behalf of one SPV Derivatives Counterparty.   And, of course, it is primarily for that reason that the law does not allow third-party investors standing to assert the claims directly against the Debtors.   While section 1109(b) of the Bankruptcy Code permits a "party in interest" to "appear and be heard on any issue in a case under this chapter," the Noteholders are not parties in interest with respect to any dispute between SPV Derivatives Counterparties and the Debtors.   *See In re Refco Inc.*, 505 F.3d 109, 117 (2d Cir. 2007) (holding that investors in an investment company were not a "parties in interest" within the meaning of section 1109 because they could not assert the legal rights of the investment company, a creditor of the debtors and defendant in an adversary proceeding).   The Court has previously rejected arguments that a Noteholder is an indispensable party to litigation involving a dispute with the SPV Derivatives Counterparty and SPV Trustee.   *See* Order Denying Motion to Dismiss, *Lehman Brothers Special Financing, Inc. v. BNY Corp. Trustee Servs. Ltd.*, 08-13555 (JMP), 09-01242 (JMP) [Docket No. 43] (Aug. 12, 2009). Likewise, a Noteholder is neither a necessary nor indispensable party to a mediation involving SPV Derivatives Transactions and does not have standing to object to the Motion.

44.    Similarly, the Court has expressly rejected the argument by the Minibond Noteholders that they are entitled to intervene in a dispute between one of the Debtors and the SPV Derivatives Counterparty.   *See* Order Denying Motion to Intervene,

*Lehman Brothers Special Financing, Inc. v. BNY Corp. Trustee Servs. Ltd.*, 08-13555 (JMP), 09-01242 (JMP) [Docket No. 33] (Jul. 22, 2009). As their "name" suggests, the Minibond Noteholders are holders of "mini-bonds," which were issued by an entity that was a Noteholder to an issuer that contracted with the Debtors. At most, they are a creditor of a creditor of the Debtors. At the hearing on the intervention motion, the Court characterized the nature of the movants' connection to the adversary proceeding as "indirect" and "awfully remote," recognizing that the proper focus of the adversary proceeding was on the debtor and its counterparty, not the Noteholders attempting to intervene. Jul. 15, 2009 Tr. at 172:22-25, 187:2-5, 193:17-19.

45. Consistent with this Court's prior rulings in this chapter 11 case, the Second Circuit has restricted the term "parties in interest," holding that a creditor of a creditor of the debtor does not qualify as a "party in interest." *See In re Refco Inc.*, 505 F.3d at 117; *In re Comcoach Corp.*, 698 F.2d 571, 573-74 (2d Cir. 1983) (affirming denial of mortgagee's motion to lift stay because it was a party in interest under the Bankruptcy Code). The SPV Derivatives Transactions, the only types of transactions to which the proposed SPV Derivatives ADR Procedures apply, are by definition derivatives contracts entered into between one or more of the Debtors and "any special purpose vehicle or special investment vehicle, including but not limited to any structure, vehicle, trust or entity that issued notes or certificates of beneficial interest pursuant to an indenture or trust agreement." Proposed Order, ¶ 1(a). The Noteholders are at most investors or creditors of the defendants in actual or anticipated litigation.[29] As such, they

---

[29] One of the Noteholders objecting to the Motion, Principal Global, did not even specify in which SPV Derivatives Counterparty it holds a note or other beneficial interest, and thus did not set forth any basis for its standing. *See* Principal Global Objection.

are not "parties in interest" under section 1109 of the Bankruptcy Code. *See Refco*, 505 F.3d at 114. This Court is not the appropriate forum in which to resolve Noteholders' disputes that may arise with the SPV Derivatives Counterparty or SPV Trustee. *See generally, id.* at 118 ("Any internal dispute between a creditor and that creditor's investors belongs elsewhere.").[30] Accordingly, because the Noteholders lack standing to object, the Court should reject the Minibond Noteholders' contention[31] that they have standing to object to the Motion and overrule, or disregard entirely, all of the Noteholders' objections to the Motion.[32]

### C.       The Objection By the Minibond Noteholders is Meritless.

46.      As a final matter, the Minibond Noteholers' bizarre accusation that the Debtors are attempting to renege on an agreement with the Minibond Noteholders misrepresents entirely the actual agreement between the parties. *See* Stipulation and Order Regarding Wong Objection to Derivatives Procedures Order ("<u>Stipulation and Order</u>") [Docket No. 5294]. The Stipulation and Order between the Wong plaintiffs and the Debtors addresses the Order to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts [Docket No. 2257] (Dec. 16, 2008)

---

[30]   Nor should Noteholders be permitted to object to the Motion under Bankruptcy Rule 7024 and Federal Rule of Civil Procedure 24, because this Motion is not a part of an adversary proceeding.

[31]   Minibond Noteholders Objection ¶ 9. The Minibond Noteholders' reference to the Amended Complaint in *Ka Kin Wong, et al. v. HSBC Bank USA, N.A.*, Case No. 09-01120-JMP, as setting forth additional bases for standing should be disregarded because the debtors intend to move to dismiss the Amended Complaint in that matter on the grounds, among others, that they lack standing to assert derivative claims. This Court, as affirmed by the District Court, has previously concluded that the Minibond Noteholders lack standing to assert certain direct claims against one of the Debtors. *See Wong v. HSBC USA, Inc.*, Nos. 10 Civ. 0017(WHP), 10 Civ. 0096(WHP), 08-13555(JMP), 2010 WL 3154976 (S.D.N.Y. Aug. 9, 2010).

[32]   For the same reasons, the Court should disregard the allegation raised by Deutsche Bank that the SPV Derivatives ADR Procedures violate Noteholders' Due Process rights. Deutsche Bank Objection ¶ 11.

and the Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts [Docket No. 2558] (Jan. 15, 2009) (collectively, the "Derivatives Procedures Order"); it has nothing to do with the Derivatives ADR Procedures. Specifically, paragraph 2 of the Stipulation and Order makes clear that it is the terms of the *Assumption and Assignment Procedures of the Derivatives Procedures Order* that do not apply to certain transactions, not the Derivatives *ADR* Order. The Stipulation and Order does not carve out termination and settlement procedures, nor does it abridge in any way with whom the Debtors may negotiate or reach a settlement. *See id.*

47.    Not only is the Objection filed by the Minibond Noteholders substantively meritless, it should be stricken entirely as untimely. The objection deadline was December 8, 2010, pursuant to paragraph 32 of the CMO. Although the Minibond Noteholders' Objection was not filed until January 6, 2011, they apparently take the untenable position that it was timely under the CMO because the original hearing date was adjourned. However, nothing in the CMO supports the position that the objection deadline was extended, even though the original hearing date was adjourned. Unless otherwise ordered by the Court, the objection deadline is 7 days before "the applicable hearing date." The applicable hearing date is the date noticed on the Motion, which is the original hearing date. After the objection deadline, the original hearing was adjourned to allow the Debtors an opportunity to try to resolve as many objections as possible, and in fact as discussed above, two of the Objections were withdrawn entirely and several objections were resolved at least in part. But if objection deadlines were automatically extended every time a hearing date was adjourned, the parties would not be able to

adjourn hearings in an effort to try to resolve objections because the movant would continue to be subject to additional objections. The process would never end. Thus, the only way an objection deadline can be extended is "with the consent of the movant or applicant," and such consent was neither sought nor obtained here.

48. As the Court noted when previously faced with a tardy objection on another matter: "[F]rom the perspective of pure judicial administration, . . . case management deadlines must have meaning, . . . because otherwise there is no order ever." Dec. 16, 2008 Tr. at 125:2-5 (overruling an objection as untimely). "Except for the good cause shown, pleading deadlines will be strictly applied." *Id.* at 125:20-21. The Minibond Noteholders offer no excuse for their tardiness, let alone demonstrate good cause. Accordingly, the Minibond Noteholders' Objection should be disregarded in its entirety.

## IV.
## Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court overrule the Objections to the Motion, grant the Motion, authorize the Revised Procedures, and grant such further relief as the Court may deem just and appropriate.

Dated: January 11, 2011
New York, New York

/s Richard W. Slack
Richard W. Slack
Peter Gruenberger

WEIL GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

Ralph I. Miller
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street, N.W.
Suite 900
Washington, D.C. 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940

Attorneys for the Debtors and
Debtors in Possession

## Exhibit A

**Revised Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :        **08-13555 (JMP)**
                                                    :
                                    **Debtors.**    :        **(Jointly Administered)**
                                                    :
                                                    :
------------------------------------------------------------------x

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR
AFFIRMATIVE CLAIMS OF THE DEBTORS UNDER DERIVATIVES
TRANSACTIONS WITH SPECIAL PURPOSE VEHICLE COUNTERPARTIES**

       The following alternative dispute resolution procedures for disputes involving the

Debtors' derivatives transactions that have an SPV (as defined in paragraph 1(a) below)

counterparty (the "SPV Derivatives ADR Procedures") are ORDERED to apply in the chapter 11

cases of Lehman Brothers Holdings, Inc. and certain of its affiliated debtors, as debtors and

debtors in possession in the above-captioned chapter 11 proceedings (collectively, the

"Debtors").  In connection with SPV Derivatives Transactions (as defined below), these SPV

Derivatives Procedures supersede in their entirety, except as specifically provided below, the

Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under

Derivatives Contracts (the "Derivatives ADR Order") [Docket No. 5207].

**FINDINGS**

       On motion of the Debtors (the "Motion"), due and proper notice of which having

been provided to (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the

Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States

Attorney for the Southern District of New York; (vi) all known Derivatives Counterparties and

Trustees, and (vii) all other parties entitled to notice in accordance with the procedures set forth

in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635], the Court FINDS that numerous open and terminated SPV Derivatives Transactions (as defined below), including without limitation derivatives contracts that are "swap agreements" or "forward contracts," in each case, as such term is defined in section 101 of the Bankruptcy Code, exist under which the Debtors and the relevant counterparties and other parties in interest have disputes over their respective legal rights and obligations.   The Court further FINDS that certain common issues exist regarding these contracts, including, among others, questions involving appropriateness of setoff, termination, valuation, computation of termination payments, and notice.   The Court further FINDS that substantial value may be recovered for the Debtors' estates and judicial efficiency can be promoted if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation.   The Court further FINDS that similar proceedings ordered in these and other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

Consistent with General Order #M-390, adopted December 1, 2009, providing for the Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York, and all existing and further amendments thereto (the "Standing Order"), the procedures described below are ORDERED to promote consensual resolution with respect to the SPV Derivatives Transactions (as defined below) between one or more of the Debtors and the SPV counterparty, and to encourage effective communication, consultation, negotiation, and, when necessary, mediation among the affected parties.

1.      <u>SPV Derivatives Transactions</u>.

a.      For the purposes of this Order, "SPV" means any special purpose vehicle or special investment vehicle, including but not limited to any structure, vehicle, trust or entity that issued notes or certificates of beneficial interest pursuant to an indenture or trust agreement and that, for purposes of these SPV Derivatives ADR Procedures, have entered into one or more derivatives contracts with one or more of the Debtors (each, the "<u>SPV Derivatives Transaction</u>" and, collectively, the "<u>SPV Derivatives Transactions</u>").  The SPV Derivatives ADR Procedures shall apply to all SPV Derivatives Transactions where one or more Debtors contend they have the potential for affirmative recovery.

b.      To date, the Debtors have identified several hundred SPV Derivatives Transactions with respect to which there are potential disputes over the amounts that may be owed to one or more Debtors (whether or not an actual lawsuit or adversary proceeding has commenced), and SPV Derivatives Transactions include, but are not limited to, swap agreements and forward contracts with such SPV that has entered into one or more SPV Derivatives Transactions with one or more of the Debtors (the "<u>SPV Derivatives Counterparty</u>"); *provided*, *however*, that the term SPV Derivatives Transactions shall not include any cash-market purchase or sale of a security or loan (*i.e.*, any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans.

c.      The Debtors have filed motions, complaints (including adversary proceedings), and other papers commencing legal process, against, among others, SPV Derivatives Counterparties regarding SPV Derivatives Transactions (collectively, the "<u>Actions</u>") and anticipate initiating legal process against other SPV Derivatives Counterparties.

Specifically, the term "Actions" includes any such motions, complaints (including adversary proceedings), and other papers commencing legal process that already have been filed and those that are subsequently filed.

2.    <u>SPV Derivatives ADR Disputes</u>.  Except to the extent expressly precluded herein, a Debtor may institute an ADR proceeding in connection with any Action that is pending before the Court, including a dispute involving such SPV already involved in alternative dispute resolution ("<u>ADR</u>") with a Debtor, by serving such SPV Derivatives Counterparty, SPV Trustee (as defined below), a Noteholder (as defined below), and/or any investment advisor, collateral manager, or other fiduciary (an "<u>Advisor</u>") with a copy of this Order and the SPV Derivatives ADR Notice (as defined below) (collectively, the "<u>SPV Derivatives ADR Package</u>"); *provided*, *however*, that a Debtor may not serve the SPV Derivatives ADR Package on such SPV Derivatives Counterparty, SPV Trustee, Noteholder, or Advisor unless the Debtor has already commenced an Action or is already involved in ADR related to a particular SPV Derivatives Transaction.    The Debtor, the SPV Derivatives Counterparty, the SPV Trustee, and/or any Noteholder or Advisor served with the SPV Derivatives ADR Package are collectively referred to herein as the "<u>Parties</u>."

a.    Any SPV Derivatives Counterparty or trustee with respect to the SPV Derivatives Transaction (the "<u>SPV Trustee</u>") served with such SPV Derivatives ADR Package may disclose the contents of such SPV Derivatives ADR Package to any person, entity, or special investment vehicle that holds a note or beneficial interest in the SPV Derivatives Counterparty or the SPV Derivatives Transaction generally (such persons or entities collectively referred to as "<u>Noteholders</u>," and each singly as a "<u>Noteholder</u>"); *provided*, *however*, that any such Noteholder not specified as a party to the SPV Derivatives ADR Dispute must, in advance

of receiving such SPV Derivatives ADR Package, agree in writing to abide by the confidentiality provisions in this Order, including paragraph 13, and must agree in writing to maintain the confidentiality of any such information received.

        b.     For the purposes of the SPV Derivatives ADR Procedures, service on or notice to such SPV Derivatives Counterparty, SPV Trustee, Noteholder, or Advisor, as the case may be, can be made by serving that Party and such Party's counsel who has appeared in these cases and/or an Action by (i) hand delivery, (ii) first class mail, (iii) overnight mail, or (iv) email upon consent. Service made in accordance with this paragraph will be deemed adequate service. This paragraph is not intended to limit other methods of proper service upon such SPV Derivatives Counterparty, SPV Trustee, Noteholder, or Advisor.

        c.     Notwithstanding any stay imposed by this Court, any defendant named in an Action must file a notice of appearance within thirty (30) calendar days of service of the SPV Derivatives ADR Package, within which time such defendant shall not file a responsive pleading. Pursuant to Federal Rule of Civil Procedure 41 and Federal Rule of Bankruptcy Procedure 7041, a Debtor has the right to dismiss an Action against such SPV Derivatives Counterparty, SPV Trustee, Noteholder and/or Advisor without prejudice before a responsive pleading therein is filed. Failure to file a notice of appearance within 30 calendar days of service of the SPV Derivatives ADR Package may result in this Court's entry of Sanctions (as defined below) as set forth below, including an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice or an order for a default judgment against the defaulting party; provided, however, that a defendant may alternatively file an appearance with reservation of the right to raise the defense of lack of personal jurisdiction within 30 calendar days of service of the SPV Derivatives ADR Package, consistent with paragraph 5(d) below.

d.      The first filing of a notice of appearance, or an appearance with reservation of the right to raise the defense of lack of personal jurisdiction, in an Action shall immediately and automatically stay such Action pending completion of the SPV Derivatives ADR Procedures through settlement or termination of mediation.  In the case of an Action that was previously stayed, and where such stay was modified for the limited purpose of complying with this Order, such stay will continue in full force and effect upon the first filing of a notice of appearance or limited appearance.

3.      <u>Stay of Actions</u>.  A Debtor may serve the SPV Derivatives ADR Package regardless of whether an Action has been previously stayed by the Court, and any prior stay shall be deemed automatically lifted upon the service on the SPV Derivatives Counterparty of the SPV Derivatives ADR Package solely for the limited purpose of the relevant defendant making an appearance in compliance with paragraph 2 of this Order.  Moreover, nothing contained herein shall be construed as lifting any stay with respect to the Actions other than for the limited purpose of complying with this Order.  Upon service of the SPV Derivatives ADR Package, the corresponding Action (as defined herein), to the extent not previously stayed, will be immediately stayed such that (i) all applicable deadlines (other than those related to completion of service of process) will be indefinitely suspended, (ii) all discovery and pre-trial conferences will not be required or conducted, and (iii) all motion practice and contested hearings or trials will be prohibited; *provided*, *however*, that during such stay, the Debtors may (a) amend the Action complaint, (b) employ the SPV Derivatives ADR Procedures or other procedures to attempt to consensually resolve disputed matters, (c) enter into settlements of the Action, (d) complete service of the Action complaint, (e) seek discovery for the limited purpose of assisting

the Debtors in completing service of the Action complaint, and (f) dismiss an Action in accordance with Bankruptcy Rule 7041.

4.      Settlement of Disputes During the SPV Derivatives ADR Procedures. Nothing contained herein shall prevent the Parties from settling, and the Parties are encouraged to settle, the SPV Derivatives ADR Dispute at any time before, during, or following the designation of the SPV Derivatives ADR Dispute to the SPV Derivatives ADR Procedures by the mutual consent of the Parties; provided, that all SPV Derivatives ADR Disputes settled pursuant to this Order, including terminated, active, and matured SPV Derivatives Transactions and regardless of whether such settlement is reached with a Derivatives Counterparty, SPV Trustee, Noteholder and/or Advisor, shall be settled pursuant to the terms set forth in (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket No. 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667]; (iii) other orders in these bankruptcy cases permitting such settlement; (iv) in the case of settlements which have not been consented to by the applicable majority of Noteholders and upon the written request of any Party, by means of a Bankruptcy Rule 9019 Motion with notice to all Noteholders of the hearing date and objection deadline, provided that the economic terms of the resolution shall be redacted in any such motion and related order and an unredacted copy disclosing the economic terms of the resolution may only be provided to a Noteholder not previously served with the SPV Derivatives ADR Package after such Noteholder agrees in writing to maintain the confidentiality of any such information received and to abide by the confidentiality provisions in this Order; or (v) as otherwise permitted under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

5.    <u>Participation Mandatory</u>.

a.    Unless otherwise provided in a specific order applicable to a particular SPV Derivatives ADR Dispute, after service of the SPV Derivatives ADR Package, compliance with the SPV Derivatives ADR Procedures in this Order is mandatory.  Although no party is required to settle or compromise the SPV Derivatives ADR Dispute, each Debtor serving the SPV Derivatives ADR Package and each SPV Derivatives Counterparty, the SPV Trustee, and any Noteholder and/or Advisor on whom a Debtor elects to serve such SPV Derivatives ADR Package, must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the SPV Derivatives ADR Procedures specified below for all SPV Derivatives ADR Disputes covered by such SPV Derivatives ADR Package.

b.    The SPV Derivatives Counterparty shall, on or before sixty (60) calendar days of service of the SPV Derivatives ADR Package or, in the case of a pending ADR under the Derivatives ADR Order on or before sixty (60) calendar days of notice by the Debtor of an intent to proceed under this Order, identify and designate by written notice (the "<u>Settlement Participation Designation</u>") as provided below to the other Parties to the SPV Derivatives ADR Dispute, a person with complete settlement authority to negotiate all disputed amounts and issues on behalf of the SPV Derivatives Counterparty (the "<u>Authorized Designee</u>").   The SPV Derivatives Counterparty may change the Authorized Designee from time to time during the course of the SPV Derivatives ADR Dispute so long as there remains at all times during the dispute an Authorized Designee.

i.    The Settlement Participation Designation shall include the name and contact information of the person or entity with settlement authority, state that such

person or entity has agreed to participate in the SPV Derivatives ADR Procedures, and state the relationship between the SPV Derivatives Counterparty and such person or entity with settlement authority. Notwithstanding any other provisions regarding Sanctions contained in this Order, if the Debtor does not receive a Settlement Participation Designation from the SPV Derivatives Counterparty within sixty (60) calendar days of the service of the SPV Derivatives ADR Package, or notice of an intent to proceed under this Order in the case of a pending ADR, the Court may, upon motion of the Debtor, impose Sanctions (as defined below) on the SPV Derivatives Counterparty, including but not limited to an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice.

ii.    The SPV Derivatives Counterparty shall send notice of the SPV Derivatives ADR Dispute, the aforementioned requirement to name an Authorized Designee with settlement authority, and the related Action, to all Noteholders in accordance with both the requirements of paragraph 5(b)(iii) below.

iii.    In addition to any method of notice permitted by the relevant Indenture, including but not limited to service through the Depository Trust Company, notice of any SPV Derivatives ADR Dispute and the related Action given in accordance with the methods set forth below in subsections (a)-(b) to the Noteholders, parties to the Master Agreement, the Indenture, and/or the Trust Agreement, and any other persons entitled to such notice in the Bankruptcy Case, constitutes sufficient notice to such persons:

(a)    sending the papers commencing the relevant Action and the SPV Derivatives ADR Package (collectively, the "SPV Adversary Package") to each such person; provided, that in the case of the Noteholders, the SPV Adversary Package shall be sent:

(i)    directly to the original Noteholders (as of the issuance date thereof), as and to the extent listed in the records of the Debtors; and

(ii)    directly to any known current Noteholders; and

(b)    publication of the fact that there exists an ADR proceeding related to this SPV Derivatives Transaction in the Wall Street Journal and the Financial Times for three successive business days.

iv.    Within ten (10) business days of receiving written request by a Debtor, the SPV Derivatives Counterparty, and if served with the SPV Derivatives ADR Package, the SPV Trustee, shall provide information to such Debtor sufficient to identify and contact such Noteholders directly if known, and if such information is unknown to the SPV Derivatives Counterparty and SPV Trustee, then the SPV Derivatives Counterparty and SPV Trustee shall provide information sufficient to identify the clearing systems through which such Noteholders are communicated.

v.    If a Debtor has not timely received a Settlement Participation Designation, a Debtor may at its sole discretion continue its attempts at mediation, terminate the SPV Derivatives ADR Dispute and resume the Action, or stay or terminate the SPV Derivatives ADR Dispute and move for Sanctions, including but not limited to an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice. No actions authorized by this paragraph 5(b)(v) shall be construed as automatically eliminating or modifying the stay of the Action without such Debtor's consent.

vi.    In taking the steps outlined in this paragraph 5, all Parties to the SPV Derivatives ADR Dispute shall make commercially reasonable efforts to act as promptly as possible under the prevailing circumstances.

c.    Nothing contained in this paragraph 5 shall relieve or be construed to relieve any party to the SPV Derivatives ADR Dispute from compliance with this Order.

d.      No rights, remedies, claims or defenses of any SPV Derivatives Counterparty, SPV Trustee, Noteholder, Advisor, or Debtor, acting in good faith compliance with the SPV Derivatives ADR Procedures, shall be impaired, waived or compromised in any further proceedings in these cases should no settlement or compromise result from participation in these SPV Derivatives ADR Procedures.    Participation in the SPV Derivatives ADR Procedures by the SPV Derivatives Counterparty, Authorized Designee, SPV Trustee, Noteholder, or Advisor shall not waive the defense of lack of in personam jurisdiction, if any, which defense shall be preserved.

6.      Nothing contained herein shall prevent the SPV Derivatives Counterparty from asserting in any respect to the SPV Derivatives ADR Notice and elsewhere during the course of such SPV Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a SPV Derivatives Transaction or any other valid defense to a Debtor's demand thereunder.

7.      Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivatives Counterparties.  If the SPV Derivatives Counterparty, SPV Trustee, Noteholder, or Advisor previously has commenced any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of the SPV Derivatives ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim, and to defend or take action in any such other court or proceeding to protect the estate of Debtors, and/or take action in respect of any violation of the automatic stay imposed by section 362 of the Bankruptcy Code, despite the incomplete status of the steps prescribed under the SPV Derivatives ADR Procedures.

## NOTICE/RESPONSE STAGE

8.        <u>Notice/Response</u>.      The initial stage of the SPV Derivatives ADR Procedures will be a notice/response stage, providing the Parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve the SPV Derivatives ADR Dispute on a consensual basis (the "<u>Notice/Response Stage</u>").      The Notice/Response Stage shall include:

a.        <u>SPV Derivatives ADR Notice</u>.      A Debtor shall serve upon the SPV Derivatives Counterparty and, at such Debtor's election, the SPV Trustee and/or Noteholder and/or Advisor (and any attorneys who have appeared in these cases or an Action) a notice containing sufficient information regarding the SPV Derivatives ADR Dispute including the nature of the Debtor's claim, a brief explanation setting forth the basis for the demand and the amount of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Official Unsecured Creditors' Committee (the "<u>Creditors' Committee</u>")), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (the "<u>SPV Derivatives ADR Notice</u>").      Service of a completed SPV Derivatives ADR Notice in the form annexed to this Order as Exhibit "A" shall presumptively be deemed to comply with this Order.      Within 30 calendar days of entry of this Order, a Debtor participating in a pending ADR involving such SPV must elect in writing either to opt out of this Order and continue under the Derivatives ADR Order or to proceed under this Order.      If the Debtor elects to proceed

under this Order, the Debtor shall provide written notice of its election to all Parties to the pending ADR and simultaneously serve an SPV Derivatives ADR Package on the SPV Derivatives Counterparty and, at such Debtor's election, the related SPV Trustee and/or one or more Noteholders.  All deadlines otherwise set forth in this Order will run from the date the Debtor delivers the SPV Derivatives ADR Package.

b.    SPV Derivatives Counterparty's Response to Notice.    The SPV Derivatives Counterparty (or, where also served with the SPV Derivatives ADR Package, the SPV Trustee and/or Noteholder, and/or Advisor, as the case may be) must respond to the SPV Derivatives ADR Notice in writing within 75 calendar days from the date of the receipt of the SPV Derivatives ADR Notice, or in the case of a pending ADR receipt of the Debtor's election to proceed under this Order.   The response options available are as follows (the "Responses"):

i.    Agreeing to Settle the Demand.    If the SPV Derivatives Counterparty (or, where also served with the SPV Derivatives ADR Package, the SPV Trustee and/or Noteholder and/or Advisor) agrees to settle the demand in the SPV Derivatives ADR Notice, it shall state in writing that the offer of settlement in the SPV Derivatives ADR Notice is accepted.  The Parties will then execute a settlement and general release (including a confidentiality provision) and the Debtor shall dismiss the corresponding Action with prejudice upon execution of the release; or

      ii.      <u>Denying the Demand</u>.    The SPV Derivatives Counterparty (or, where also served with the SPV Derivatives ADR Package, the SPV Trustee and/or Noteholder and/or Advisor) may decline to settle for the amount stated in the demand in the SPV Derivatives ADR Notice, in which case such party must include a brief explanation in the Response to the SPV Derivatives ADR Notice setting forth the reason(s) for such denial.  In addition, such party may provide a counteroffer to the demand in the SPV Derivatives ADR Notice.   Service of a completed Response to the SPV Derivatives ADR Notice in the form annexed to this Order as Exhibit "B" shall presumptively be deemed to comply with this Order.

c.      <u>Failure to Respond</u>.   Failure to provide a timely Response to the SPV Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may result, at the option of Debtors, either in an application to the Court (with notice to any applicable SPV Derivatives Counterparty, SPV Trustee, Noteholder, or Advisor that was provided by the Debtor with the SPV Derivatives ADR Package) for Sanctions (as defined below) as set forth below, including an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice, or immediate entry into the mediation stage.

d.      <u>Reply to Response</u>.  The Debtor shall have twenty (20) calendar days from the date of the receipt of the Response to serve a Reply to the Response to

the SPV Derivatives ADR Notice (which Reply shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), in which the Debtor shall (i) modify its demand, (ii) respond to any counteroffer, (iii) provide additional information in support of its demand in the SPV Derivatives ADR Dispute, or (iv) reject any counteroffer in which case the SPV Derivatives ADR Dispute will automatically proceed to the Initial Settlement Conference or Mediation Stage.

9.      <u>Request for Initial Settlement Conference</u>.   At any time prior to the Mediation Stage but after the date upon which a Reply is due from the Debtor, any Party to the SPV Derivatives ADR Dispute may request an initial telephonic settlement conference by written request, to be held within ten (10) calendar days.   Within four (4) business days of a receipt of such a request, the other Parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request.   If an acceptable date cannot be achieved through this process, the Parties shall immediately proceed to the Mediation Stage.   At least one hour shall be reserved for the initial conference to discuss settlement, and during the initial settlement conference a person with authority to negotiate and settle (including in the case of the SPV Derivatives Counterparty, the Authorized Designee) must participate on behalf of each party.   No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, and the

confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if all Parties agree in writing.

## MEDIATION STAGE

10.    <u>Mediation</u>.  SPV Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "<u>Mediation Stage</u>").  The Debtors shall transmit on a rolling basis to the mediators appointed pursuant to paragraph 10(a) hereof sets of SPV Derivatives ADR Notices and any applicable Response(s) and Replies thereto for purposes of allocating specific mediations pursuant to paragraph 10(b)(i) hereof.

a.    <u>Choice of Mediator</u>.  James Freund, David Geronemus, Ralph Mabey, and Jacob Esher are APPOINTED as the mediators for SPV Derivatives ADR Disputes reaching the Mediation Stage.  If any named mediator is not available to serve as mediator, an alternate mediator shall be selected by the Court upon notice to the Debtors, the Creditors' Committee, the Authorized Designee, and if served with the SPV ADR Derivatives Package, the SPV Trustee, Noteholders, and Advisor.

b.    <u>Powers of Mediator</u>.  The mediators shall have the broadest possible discretion consistent with the Standing Order, including (i) the manner of allocating among themselves specific mediations on a fair and equitable basis; and (ii) the ability to consolidate mediations involving the same SPV Derivatives Transaction upon application by such SPV Derivatives Counterparty and consultation with the Debtors.

16

c.  <u>Mediator Contact</u>.  Once a specific mediator has been selected and notice of such selection has been conveyed to the Parties, the mediator or its designee shall contact the Parties to schedule the initial mediation date.

d.  <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the Parties and the mediator.

e.  <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, with service upon the other Parties to the Mediation and upon the Creditors' Committee unless the Mediator has affirmatively required the Parties to serve Mediation Briefs upon each other, the Mediator, and the Creditors' Committee.  Any such Mediation Brief shall be served and filed in accordance with the briefing schedule established by the Mediator.  No Mediation Brief shall be filed with the Court.

f.  <u>Appearance at Mediations</u>.  Pursuant to paragraph 3.2 of the Standing Order, all participants in the mediation for the applicable SPV Derivatives ADR Dispute, must appear in person with a person who has complete authority to negotiate all disputed amounts and issues such that its decisions bind that party.  The Authorized Designee of the SPV Derivatives Counterparty must appear in person at the mediation.  Any willful failure to comply with this requirement in good faith may result in the imposition of Sanctions, as provided below.  The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

g.    <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

## <u>OTHER PROVISIONS</u>

11.    <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the Parties; or (ii) the Bankruptcy Court, for cause shown.

12.    <u>Sanctions for Parties</u>.  Each Debtor and SPV Derivatives Counterparty (or, where also served with the SPV Derivatives ADR Package, the SPV Trustee, Noteholder, and Advisor) must participate in good faith with these SPV Derivatives ADR Procedures with regard to the SPV Derivatives ADR Disputes specified in the applicable SPV Derivatives ADR Notice. If, after notice and a hearing, the Court determines that a party has not complied with the SPV Derivatives ADR Procedures in good faith in connection with any SPV Derivatives ADR Dispute, such party may be subject to such Sanctions as the Court deems appropriate (the "<u>Sanctions</u>").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the SPV Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions.  In ordering Sanctions, the Court shall take into consideration, among other factors, whether for such SPV Derivatives Transaction the assets (or proceeds from the liquidation of such assets) have been distributed, the existing assets of the SPV Derivatives Counterparty, and whether any Noteholder is actively involved in the SPV Derivatives ADR Dispute.  Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions may include, but are not limited to:

a.    <u>Against Debtors</u>:  (i) attorneys' fees incurred with respect to the SPV Derivatives ADR Procedures after the receipt of the SPV Derivatives ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the SPV Derivatives ADR Procedures as to one or more SPV Derivatives Transactions; and/or (iv) dismissing some or all claims asserted by Debtors in the applicable SPV Derivatives ADR Dispute.

b.    <u>Against SPV Derivatives Counterparties, SPV Trustees, Noteholders, or Advisors</u>:  (i) attorneys' fees incurred by the Debtors with respect to the SPV Derivatives ADR Procedures after the sending of a Derivatives ADR Package; (ii) fees and costs of the Mediator; (iii) an award in the SPV Derivatives ADR Dispute in the amount specified in the SPV Derivatives ADR Notice; and/or (iv) an entry of a judgment for the Debtor in the related Action.

c.    <u>Confidentiality of Sanctions Process</u>:  Notwithstanding the confidentiality provisions contained in paragraph 12 of this Order, a motion requesting Sanctions made to the Court may identify the Parties to the subject SPV Derivatives ADR Dispute and describe the conduct giving rise to the request for Sanctions and entitling the moving party to relief, but shall not include any description of any negotiations regarding the SPV Derivatives ADR Dispute that are deemed confidential under the Standing Order, this Order, or any other order of the Court.

13.    <u>Confidentiality</u>.    The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.    No oral or written

statements or arguments made or positions taken by the mediator, the applicable Debtors, SPV Derivatives Counterparties, SPV Trustees, Noteholders, Authorized Designees, Advisors, or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage, may be disclosed by the mediator or any such Parties or their attorneys and advisors to the Court or any third party; *provided, however*, that SPV Trustees may disclose such statements, arguments and positions as may become necessary with their respective Noteholders and advisors subject to these same confidentiality provisions, provided that such Noteholders and their advisors agree to maintain the confidentiality of any such information received.  Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving in such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible.  In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; *provided*, *however*, that consistent with the Derivatives ADR Order, the mediator or a designee shall continue on a monthly basis to report to the Court the status of the mediation efforts but shall not disclose the content thereof, which report shall include the number of SPV Derivatives ADR Notices served on Derivatives Counterparties (including SPV Derivatives Counterparties), the number of settlements reached after mediation, the number of mediations still pending, the number of mediations that have terminated without settlement, and the cumulative dollar amount of settlements reached with Derivatives Counterparties following service of ADR Notices.  Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the SPV Derivatives ADR Procedures including Settlement Conferences and the Mediation Stage.  Additionally, the economic terms, including any settlement amounts, of any particular

settlement reached pursuant to the SPV Derivatives ADR Procedures shall be kept confidential, and such economic terms shall be redacted in any pleadings filed with the Court.

14.    <u>Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights Unaffected</u>.  Unless affirmatively waived, participation in the SPV Derivatives ADR Procedures shall not waive or otherwise modify the right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may exist.  All Parties' rights and defenses to contest the assertion of a jury trial or arbitration or exclusive foreign forum selection right by any other party are fully preserved.

15.    <u>Fees</u>.  Except as otherwise provided herein, each party to the Mediation shall bear its own counsel fees and other costs of the SPV Derivatives ADR Procedures, including Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this Order, and (ii) nothing contained herein shall be deemed to vary the terms of any SPV Derivatives Transaction in respect of the reimbursement of fees and expenses.

16.    <u>Binding Effect of Settlement</u>.  In the case of all settlements approved hereunder, so long as the SPV Derivatives Counterparty provides appropriate notice (pursuant to paragraph 5(b)(iii) above) of the settlement to registered holders of the notes or certificates, those beneficial holders known to it, and the SPV Trustee, the Order approving the settlement shall be binding upon all Noteholders and shall bar all Noteholders from taking any action against the Authorized Designee as a result of the settlement.

17.    <u>Service of the Notice of the Motion</u>.  Service of notice of the Motion by e-mail or facsimile, where service by mail is not feasible, in accordance with the provisions of the Motion, is good and sufficient notice of the Motion.

**SO ORDERED:**

January ___, 2011
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit A</u>

**<u>Form of SPV Derivatives ADR Notice</u>**

SPV Derivatives ADR Notice No.: _____

<u>Debtor(s)</u>: _____          <u>SPV Derivatives Counterparty</u>: _____
                         Name(s)                                                                        Name(s)

                                                                                     or

                                                               <u>SPV Trustee</u>: _____
                                                                                                        Name

<u>SPV Derivatives Transaction</u>: _____

_____

_____

_____

<u>Settlement Demand</u>:  $ _____

<u>Explanation of Basis for Settlement Demand</u>: _____

_____

_____

_____

_____

_____

_____

_____

                                                          <u>Date of SPV Derivatives ADR Notice</u>: _____

                                                          <u>Date of Service</u>:                        _____

                                                          <u>Response Due Date</u>:                  _____

<u>Debtor Contact</u>:    [Name]
                              [Address]
                              Telephone Number: _____
                              Email: _____

<u>Exhibit B</u>

**<u>Form of Response to SPV Derivatives ADR Notice</u>**

<u>SPV Derivatives Counterparty</u>: _____
<div align="center">Name</div>

    or

<u>SPV Trustee</u>: _____
<div align="center">Name</div>

<u>Response to SPV Derivatives ADR Notice No.</u>: _____

☐ Agree to Settlement Demand

☐ Denial of Settlement Demand        ☐ Counteroffer

<u>Counteroffer Amount</u>:  $_____

<u>Explanation of Basis for Counteroffer/Denial of Settlement Demand</u>: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____

<u>Counterparty Contact</u>:  [Name]
                   Telephone Number:  _____
                   Email:  _____

**<u>Exhibit B</u>**

**Redline of Revised Procedures to Proposed
Order Submitted on November 24, 2010**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
                                          :
In re                                     :        **Chapter 11 Case No.**
                                          :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :        **08-13555 (JMP)**
                                          :
                   **Debtors.**           :        **(Jointly Administered)**
                                          :
                                          :
----------------------------------------------------------------x

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR**
**AFFIRMATIVE CLAIMS OF THE DEBTORS UNDER DERIVATIVES**
**TRANSACTIONS WITH SPECIAL PURPOSE VEHICLE COUNTERPARTIES**

The following alternative dispute resolution procedures for disputes involving the

Debtors' derivatives transactions that have an SPV (as defined in paragraph 1(a) below)

counterparty (the "SPV Derivatives ADR Procedures") are ORDERED to apply in the chapter 11

cases of Lehman Brothers Holdings, Inc. and certain of its affiliated debtors, as debtors and

debtors in possession in the above-captioned chapter 11 proceedings (collectively, the

"Debtors").  In connection with SPV Derivatives Transactions (as defined below), these SPV

Derivatives Procedures supersede in their entirety, except as specifically provided below, the

Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under

Derivatives Contracts (the "Derivatives ADR Order") [Docket No. 5207].

**FINDINGS**

On motion of the Debtors (the "Motion"), due and proper notice of which having

been provided to (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the

Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States

Attorney for the Southern District of New York; (vi) all known Derivatives Counterparties and

Trustees, and (vii) all other parties entitled to notice in accordance with the procedures set forth

in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635], the Court FINDS that numerous open and terminated SPV Derivatives Transactions (as defined below), including without limitation derivatives contracts that are "swap agreements" or "forward contracts," in each case, as such term is defined in section 101 of the Bankruptcy Code, exist under which the Debtors and the relevant counterparties and other parties in interest have disputes over their respective legal rights and obligations.  The Court further FINDS that certain common issues exist regarding these contracts, including, among others, questions involving appropriateness of setoff, termination, valuation, computation of termination payments, priority of payments, voidability of transfers, and notice.  The Court further FINDS that substantial value may be recovered for the Debtors' estates and judicial efficiency can be promoted if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation.  The Court further FINDS that similar proceedings ordered in these and other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

Consistent with General Order #M-390, adopted December 1, 2009, providing for the Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York, and all existing and further amendments thereto (the "Standing Order"), the procedures described below are ORDERED to promote consensual resolution with respect to the SPV Derivatives Transactions (as defined below) between one or more of the Debtors and the SPV counterparty, and to

encourage effective communication, consultation, negotiation, and, when necessary, mediation among the affected parties.

      1.      <u>SPV Derivatives Transactions</u>.

      a.      For the purposes of this Order, "SPV" means any special purpose vehicle or special investment vehicle, including but not limited to any structure, vehicle, trust or entity that issued notes or certificates of beneficial interest pursuant to an indenture or trust agreement and that, for purposes of these SPV Derivatives ADR Procedures, have entered into one or more derivatives contracts with one or more of the Debtors (each, the "<u>SPV Derivatives Transaction</u>" and, collectively, the "<u>SPV Derivatives Transactions</u>").  The SPV Derivatives ADR Procedures shall apply to all SPV Derivatives Transactions where one or more Debtors contend they have the potential for affirmative recovery.

      b.      To date, the Debtors have identified several hundred SPV Derivatives Transactions with respect to which there are potential disputes over the amounts that may be owed to one or more Debtors (whether or not an actual lawsuit or adversary proceeding has commenced), and SPV Derivatives Transactions include, but are not limited to, swap agreements and forward contracts with such SPV counterparty that has entered into one or more SPV Derivatives Transactions with one or more of the Debtors (the "<u>SPV Derivatives Counterparty</u>"); *provided*, *however*, that the term SPV Derivatives Transactions shall not include any cash-market purchase or sale of a security or loan (*i.e.*, any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans.

c.    The Debtors have filed, or anticipate filing, motions, complaints (including adversary proceedings), and other papers commencing legal process, against, among others, SPV Derivatives Counterparties regarding SPV Derivatives Transactions (collectively, the "Actions") and anticipate initiating legal process against other SPV Derivatives Counterparties.  Specifically, the term "Actions" includes any such motions, complaints (including adversary proceedings), and other papers commencing legal process that already have been filed and those that are subsequently filed.

2.    <u>SPV Derivatives ADR Disputes</u>.  Except to the extent expressly precluded herein, a Debtor may designate institute an ADR proceeding in connection with any dispute in which an Action that is pending before the Court, including a dispute involving such SPV already involved in alternative dispute resolution ("ADR") with a Debtor, by serving such SPV Derivatives Counterparty, SPV Trustee (as defined below), and/or a Noteholder (as defined below), and/or any investment advisor, collateral manager, or other fiduciary (an "Advisor") with a copy of this Order and the SPV Derivatives ADR Notice (as defined below) (collectively, the "SPV Derivatives ADR Package"); *provided*, *however*, that a Debtor may not serve the SPV Derivatives ADR Package on such SPV Derivatives Counterparty, SPV Trustee, or Noteholder, or Advisor unless the Debtor has already commenced an Action or is already involved in ADR related to a particular SPV Derivatives Transaction.  The Debtor, the SPV Derivatives Counterparty, the SPV Trustee, and/or any Noteholder or Advisor served with the SPV Derivatives ADR Package are collectively referred to herein as the "Parties."

a.    Any SPV Derivatives Counterparty or trustee with respect to the SPV Derivatives Transaction (the "<u>SPV Trustee</u>") served with such SPV Derivatives ADR Package may disclose the contents of such SPV Derivatives ADR Package to any person, entity,

or special investment vehicle that holds a note or beneficial interest in the SPV Derivatives Counterparty or the SPV Derivatives Transaction generally (such persons or entities collectively referred to as "Noteholders," and each singly as a "Noteholder"); *provided*, *however*, that any such Noteholder not specified as a party to the SPV Derivatives ADR Dispute must, in advance of receiving such SPV Derivatives ADR Package, agree in writing to abide by the confidentiality provisions in this Order, including paragraph ~~12,~~13, and must agree in writing to maintain the confidentiality of any such information received.

b.      For the purposes of the SPV Derivatives ADR Procedures, service on or notice to such SPV Derivatives Counterparty, SPV Trustee, ~~or~~ Noteholder, or Advisor, as the case may be, can be made by serving that ~~party~~Party and such ~~party~~Party's counsel who has appeared in these cases and/or an Action by (i) ~~email, (ii)~~ hand delivery, (~~iii~~ii) first class mail, ~~or~~ (~~iv~~iii) overnight mail, or (iv) email upon consent.   Service made in accordance with this paragraph will be deemed adequate service.   This paragraph is not intended to limit other methods of proper service upon such SPV Derivatives Counterparty, SPV Trustee ~~or~~, Noteholder, or Advisor.

c.      Notwithstanding any stay imposed by this Court, any defendant named in an Action must file a notice of appearance ~~and intent to defend therein~~ within thirty (30) calendar days of service of the SPV Derivatives ADR Package, within which time such defendant shall not file a responsive pleading.   ~~A~~Pursuant to Federal Rule of Civil Procedure 41 and Federal Rule of Bankruptcy Procedure 7041, a Debtor has the right to dismiss an Action against such SPV Derivatives Counterparty, SPV Trustee ~~and/or~~, Noteholder and/or Advisor without prejudice before a responsive pleading therein is filed.   Failure to file a notice of appearance within 30 calendar days of service of the SPV Derivatives ADR Package may result

in this Court's entry of Sanctions (as defined below) as set forth below, including an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice or an order for a default judgment against the defaulting party; provided, however, that a defendant may alternatively file an appearance with reservation of the right to raise the defense of lack of personal jurisdiction within 30 calendar days of service of the SPV Derivatives ADR Package, consistent with paragraph 5(d) below.

d.    The first filing of a notice of appearance and intent to defend, or an appearance with reservation of the right to raise the defense of lack of personal jurisdiction, in an Action shall immediately and automatically stay such Action pending completion of the SPV Derivatives ADR Procedures through settlement or termination of mediation.  In the case of an Action that was previously stayed, and where such stay was modified for the limited purpose of complying with this Order, such stay will continue in full force and effect upon the first filing of a notice of appearance or limited appearance.

3.    Stay of Actions.  A Debtor may serve the SPV Derivatives ADR Package regardless of whether an Action has been previously stayed by the Court, and any prior stay shall be deemed automatically lifted upon the service on the SPV Derivatives Counterparty of the SPV Derivatives ADR Package solely for the limited purpose of the relevant defendant making an appearance in compliance with paragraph 2 of this Order.  Moreover, nothing contained herein shall be construed as lifting any stay with respect to the Actions other than for the limited purpose of complying with this Order.  Upon service of the SPV Derivatives ADR Package, the corresponding Action (as defined herein), to the extent not previously stayed, will be immediately stayed such that (i) all applicable deadlines (other than those related to completion of service of process) will be indefinitely suspended, (ii) all discovery and pre-trial conferences

6

will not be required or conducted, and (iii) all motion practice and contested hearings or trials will be prohibited; *provided*, *however*, that during such stay, the Debtors may (a) amend the Action complaint, (b) employ the SPV Derivatives ADR Procedures or other procedures to attempt to consensually resolve ~~their dispute~~disputed matters, (c) enter into settlements of the Action, (d) complete service of the Action complaint, (e) seek discovery for the limited purpose of assisting the Debtors in completing service of the Action complaint, and (f) dismiss an Action in accordance with Bankruptcy Rule 7041.

4.      Settlement of Disputes During the SPV Derivatives ADR Procedures.
Nothing contained herein shall prevent the ~~parties~~Parties from settling, and the ~~parties~~Parties are encouraged to settle, the SPV Derivatives ADR Dispute at any time before, during, or following the designation of the SPV Derivatives ADR Dispute to the SPV Derivatives ADR Procedures by the mutual consent of the ~~parties~~Parties; provided, that all SPV Derivatives ADR Disputes settled pursuant to this Order, including terminated, active, and matured SPV Derivatives Transactions and regardless of whether such settlement is reached with a Derivatives Counterparty, SPV Trustee ~~and/or~~, Noteholder and/or Advisor, shall be settled pursuant to the terms set forth in (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket No. 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667]; (iii) other orders in these bankruptcy cases permitting such settlement; ~~or (iv~~(iv) in the case of settlements which have not been consented to by the applicable majority of Noteholders and upon the written request of any Party, by means of a Bankruptcy Rule 9019 Motion with notice to all Noteholders of the hearing date and objection deadline, provided that the economic terms of the resolution

shall be redacted in any such motion and related order and an unredacted copy disclosing the economic terms of the resolution may only be provided to a Noteholder not previously served with the SPV Derivatives ADR Package after such Noteholder agrees in writing to maintain the confidentiality of any such information received and to abide by the confidentiality provisions in this Order; or (v) as otherwise permitted under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

        5.     <u>Participation Mandatory</u>.

        a.     Unless otherwise provided in a specific order applicable to a particular SPV Derivatives ADR Dispute, after service of the SPV Derivatives ADR Package, compliance with the SPV Derivatives ADR Procedures in this Order is mandatory. Although no party is required to settle or compromise the SPV Derivatives ADR Dispute, each Debtor serving the SPV Derivatives ADR Package and each SPV Derivatives Counterparty, ~~and any~~the SPV Trustee, and any Noteholder and/or Advisor on whom a Debtor elects to serve such SPV Derivatives ADR Package, must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the SPV Derivatives ADR Procedures specified below for all SPV Derivatives ADR Disputes covered by such SPV Derivatives ADR Package.

        b.     The SPV Derivatives Counterparty shall, ~~within~~on or before sixty (60) calendar days of service of the SPV Derivatives ADR Package or, in the case of a pending ADR under the Derivatives ADR Order ~~within~~on or before sixty (60) calendar days of notice by the Debtor of an intent to proceed under this Order, identify and designate by written notice (the "<u>Settlement Participation Designation</u>") as provided below to the other ~~parties~~Parties to the SPV

Derivatives ADR Dispute, a person with complete settlement authority to negotiate all disputed amounts and issues on behalf of the SPV Derivatives Counterparty (the "Authorized Designee"). The SPV Derivatives Counterparty may change the Authorized Designee from time to time during the course of the SPV Derivatives ADR Dispute so long as there remains at all times during the dispute an Authorized Designee.

       i.    The Settlement Participation Designation shall include the name and contact information of the person or entity with settlement authority, state that such person or entity has agreed to participate in the SPV Derivatives ADR Procedures, and state the relationship between the SPV Derivatives Counterparty and such person or entity with settlement authority. Notwithstanding any other provisions regarding Sanctions contained in this Order, if the Debtor does not receive a Settlement Participation Designation from the SPV Derivatives Counterparty within sixty (60) calendar days of the service of the SPV Derivatives ADR Package, or notice of an intent to proceed under this Order in the case of a pending ADR, the Court may, upon motion of the Debtor, impose Sanctions (as defined below) on the SPV Derivatives Counterparty, including but not limited to an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice.

       ii.    The SPV Derivatives Counterparty shall send notice of the SPV Derivatives ADR Dispute, the aforementioned requirement to name an Authorized Designee with settlement authority, and the related Action, to all Noteholders in accordance with both the requirements of paragraph 5(b)(iii) below.

       iii.    NoticeIn addition to any method of notice permitted by the relevant Indenture, including but not limited to service through the Depository Trust Company, notice of any SPV Derivatives ADR Dispute and the related Action given in accordance with the

methods set forth below in subsections (a)-(b) to the Noteholders, parties to the Master

Agreement, the Indenture, and/or the Trust Agreement, and any other persons entitled to such

notice in the Bankruptcy Case, constitutes sufficient notice to such persons:

> (a)    sending the papers commencing the relevant Action and the SPV Derivatives ADR Package (collectively, the "SPV Adversary Package") to each such person; provided, that in the case of the Noteholders, the SPV Adversary Package shall be sent:
>
>> (i)    directly to the original Noteholders (as of the issuance date thereof), as and to the extent listed in the records of the Debtors; and
>>
>> (ii)    directly to any known current Noteholders; and
>
> (b)    publication of the fact that there exists an ADR proceeding related to this SPV Derivatives Transaction in the Wall Street Journal and the Financial Times for three successive business days.

> iv.    Within ten (10) ~~calendar~~ business days of receiving written

request by a Debtor, the SPV Derivatives Counterparty, and if served with the SPV Derivatives

ADR Package, the SPV Trustee, shall provide information to such Debtor sufficient to identify

and contact such Noteholders directly if known, and if such information is ~~unavailable~~ unknown

to the SPV Derivatives Counterparty and SPV Trustee, then the SPV Derivatives Counterparty

and SPV Trustee shall provide information sufficient to identify the clearing systems through

which such Noteholders are communicated.

> v.    If a Debtor has not timely received a Settlement

Participation Designation, a Debtor may at its sole discretion continue its attempts at mediation,

terminate the SPV Derivatives ADR Dispute and resume the Action, or stay or terminate the

SPV Derivatives ADR Dispute and move for Sanctions, including but not limited to an order or

judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice.

No actions authorized by this paragraph 5(b)(v) shall be construed as automatically eliminating or modifying the stay of the Action without such Debtor's consent.

> vi.    In taking the steps outlined in this paragraph 5, all ~~parties~~Parties to the SPV Derivatives ADR Dispute shall make commercially reasonable efforts to act as promptly as possible under the prevailing circumstances.

> c.    Nothing contained in this paragraph 5 shall relieve or be construed to relieve any party to the SPV Derivatives ADR Dispute from compliance with this Order.

> d.    No rights, remedies, claims or defenses of any SPV Derivatives Counterparty, SPV Trustee, Noteholder, Advisor, or Debtor, acting in good faith compliance with the SPV Derivatives ADR Procedures, shall be impaired, waived or compromised in any further proceedings in these cases should no settlement or compromise result from participation in these SPV Derivatives ADR Procedures. Participation in the SPV Derivatives ADR Procedures by the SPV Derivatives Counterparty, Authorized Designee, SPV Trustee, ~~or~~ Noteholder, or Advisor shall not waive the defense of lack of in personam jurisdiction, if any, which defense shall be preserved.

> 6.    Nothing contained herein shall prevent the SPV Derivatives Counterparty from asserting in any respect to the SPV Derivatives ADR Notice and elsewhere during the course of such SPV Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a SPV Derivatives Transaction or any other valid defense to a Debtor's demand thereunder.

> 7.    **Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivatives Counterparties**. If the SPV Derivatives Counterparty, SPV Trustee, ~~or~~ Noteholder, or Advisor previously has commenced any action or proceeding in any other court

or forum, or any action or proceeding in any other court or forum following service upon it of the SPV Derivatives ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim, and to defend or take action in any such other court or proceeding to protect the estate of Debtors, and/or take action in respect of any violation of the automatic stay imposed by section 362 of the Bankruptcy Code, despite the incomplete status of the steps prescribed under the SPV Derivatives ADR Procedures.

## NOTICE/RESPONSE STAGE

7.8.        Notice/Response.  The initial stage of the SPV Derivatives ADR Procedures will be a notice/response stage, providing the ~~parties~~Parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve the SPV Derivatives ADR Dispute on a consensual basis (the "Notice/Response Stage"). The Notice/Response Stage shall include:

a.        SPV Derivatives ADR Notice.  A Debtor shall serve upon the SPV Derivatives Counterparty and, at such Debtor's election, the SPV Trustee and/or Noteholder and/or Advisor (and any attorneys who have appeared in these cases or an Action) a notice containing sufficient information regarding the SPV Derivatives ADR Dispute including the nature of the Debtor's claim, a brief explanation setting forth the basis for the demand and the amount of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Official Unsecured Creditors' Committee (the "Creditors' Committee")), including an amount of monetary recovery Debtor(s) would accept in full

settlement and compromise (the "SPV Derivatives ADR Notice"). Service of a completed SPV Derivatives ADR Notice in the form annexed to this Order as Exhibit "A" shall presumptively be deemed to comply with this Order. Within 30 calendar days of entry of this Order, a Debtor participating in a pending ADR involving such SPV must elect in writing either to opt out of this Order and continue under the Derivatives ADR Order or to proceed under this Order. If the Debtor elects to proceed under this Order, the Debtor shall provide written notice of its election to all ~~parties~~Parties to the pending ADR and simultaneously serve an SPV Derivatives ADR Package on the SPV Derivatives Counterparty and, at such Debtor's election, the related SPV Trustee and/or one or more Noteholders. All deadlines otherwise set forth in this Order will run from the date the Debtor delivers the SPV Derivatives ADR Package.

b.  SPV Derivatives Counterparty's Response to Notice. The SPV Derivatives Counterparty (or, where also served with the SPV Derivatives ADR Package, the SPV Trustee and/or Noteholder, and/or Advisor, as the case may be) must respond to the SPV Derivatives ADR Notice in writing within 75 calendar days from the date of the receipt of the SPV Derivatives ADR Notice, or in the case of a pending ADR receipt of the Debtor's election to proceed under this Order. The response options available are as follows (the "Responses"):

i.  Agreeing to Settle the Demand. If the SPV Derivatives Counterparty (or, where also served with the SPV Derivatives

13

ADR Package, the SPV Trustee and/or Noteholder and/or Advisor)
agrees to settle the demand in the SPV Derivatives ADR Notice, it
shall state in writing that the offer of settlement in the SPV
Derivatives ADR Notice is accepted. The ~~parties~~Parties will then
execute a settlement and general release (including a
confidentiality provision) and the Debtor shall dismiss the
corresponding Action with prejudice upon execution of the release;
or

    ii.    <u>Denying the Demand</u>. The SPV Derivatives Counterparty (or,
where also served with the SPV Derivatives ADR Package, the
SPV Trustee and/or Noteholder and/or Advisor) may decline to
settle for the amount stated in the demand in the SPV Derivatives
ADR Notice, in which case such party must include a brief
explanation in the Response to the SPV Derivatives ADR Notice
setting forth the reason(s) for such denial. In addition, such party
may provide a counteroffer to the demand in the SPV Derivatives
ADR Notice. Service of a completed Response to the SPV
Derivatives ADR Notice in the form annexed to this Order as
Exhibit "B" shall presumptively be deemed to comply with this
Order.

    c.    <u>Failure to Respond</u>. Failure to provide a timely Response to the SPV
Derivatives ADR Notice, as described in paragraphs ~~7~~8(b)(i) and (ii), may
result, at the option of Debtors, either in an application to the Court (with

notice to any applicable SPV Derivatives Counterparty, SPV Trustee, ~~or~~ Noteholder, or Advisor that was provided by the Debtor with the SPV Derivatives ADR Package) for Sanctions (as defined below) as set forth below, including an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice, or immediate entry into the mediation stage.

d.    <u>Reply to Response</u>.  The Debtor shall have twenty (20) calendar days from the date of the receipt of the Response to serve a Reply to the Response to the SPV Derivatives ADR Notice (which Reply shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), in which the Debtor shall (i) modify its demand, (ii) respond to any counteroffer, (iii) provide additional information in support of its demand in the SPV Derivatives ADR Dispute, or (iv) reject any counteroffer in which case the SPV Derivatives ADR Dispute will automatically proceed to the Initial Settlement Conference or Mediation Stage.

~~8.~~9.    <u>Request for Initial Settlement Conference</u>.  At any time prior to the Mediation Stage, ~~any party~~ but after the date upon which a Reply is due from the Debtor, any Party to the SPV Derivatives ADR Dispute may request an initial telephonic settlement conference by written request, to be held within ten (10) calendar days.  Within four (4) business days of a receipt of such a request, the other ~~parties~~Parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request.  If an acceptable date cannot

be achieved through this process, the ~~parties~~Parties shall immediately proceed to the Mediation Stage.  At least one hour shall be reserved for the initial conference to discuss settlement, and during the initial settlement conference a person with authority to negotiate and settle (including in the case of the SPV Derivatives Counterparty, the Authorized Designee) must participate on behalf of each party.  No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, and the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if all ~~parties~~Parties agree in writing.

## MEDIATION STAGE

~~9.~~10.        Mediation.  SPV Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "Mediation Stage").  The Debtors shall transmit on a rolling basis to the mediators appointed pursuant to paragraph ~~9~~10(a) hereof sets of SPV Derivatives ADR Notices and any applicable Response(s) and Replies thereto for purposes of allocating specific mediations pursuant to paragraph ~~9~~10(b)(i) hereof.

a.    Choice of Mediator.  James Freund, David Geronemus, Ralph Mabey, and Jacob Esher are APPOINTED as the mediators for SPV Derivatives ADR Disputes reaching the Mediation Stage.  If any named mediator is not available to serve as mediator, an alternate mediator shall be selected by the Court upon notice to the Debtors, the Creditors' Committee, the

Authorized Designee, and if served with the SPV ADR Derivatives Package, the SPV Trustee ~~and~~, Noteholders, and Advisor.

b.  <u>Powers of Mediator</u>.  The mediators shall have the broadest possible discretion consistent with the Standing Order, including (i) the manner of allocating among themselves specific mediations on a fair and equitable basis; and (ii) the ability to consolidate mediations involving the same SPV Derivatives Transaction upon application by such SPV Derivatives Counterparty and consultation with the Debtors.

c.  <u>Mediator Contact</u>.  Once a specific mediator has been selected and notice of such selection has been conveyed to the ~~parties~~Parties, the mediator or its designee shall contact the ~~parties~~Parties to schedule the initial mediation date.

d.  <u>Mediation Sites</u>.  All mediation proceedings will take place in New York, New York, unless agreed to by the ~~parties~~Parties and the mediator.

e.  <u>Mediation Briefs</u>.  Any party to a Mediation may submit a Mediation Brief, with service upon the other ~~parties~~Parties to the Mediation and upon the Creditors' Committee unless the Mediator has affirmatively required the ~~parties~~Parties to serve Mediation Briefs upon each other, the Mediator, and the Creditors' Committee.  Any such Mediation Brief shall be served and filed in accordance with the briefing schedule established by the Mediator.  No Mediation Brief shall be filed with the Court.

f.  <u>Appearance at Mediations</u>.  Pursuant to paragraph 3.2 of the Standing Order, all participants in the mediation for the applicable SPV Derivatives

ADR Dispute, must appear in person with a person who has complete authority to negotiate all disputed amounts and issues such that its decisions bind that party.   The Authorized Designee of the SPV Derivatives Counterparty must appear in person at the mediation.   Any willful failure to comply with this requirement in good faith may result in the imposition of ~~sanctions~~Sanctions, as provided below.  The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

g.     <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

### OTHER PROVISIONS

~~10.~~11.   <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the ~~parties~~Parties; or (ii) the Bankruptcy Court, for cause shown.

~~11.~~12.   <u>Sanctions for Parties</u>.  Each Debtor and SPV Derivatives Counterparty (or, where also served with the SPV Derivatives ADR Package, the SPV Trustee ~~and~~, Noteholder, and Advisor) must participate in good faith with these SPV Derivatives ADR Procedures with regard to the SPV Derivatives ADR Disputes specified in the applicable SPV Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that a party has not complied with the SPV Derivatives ADR Procedures in good faith in connection with any SPV Derivatives ADR Dispute, such party may be subject to such Sanctions as the Court deems appropriate (the "<u>Sanctions</u>").   If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the SPV Derivatives ADR Procedures, the Court may, without the

need for further motion by any party, schedule a hearing and order Sanctions.  In ordering Sanctions, the Court shall take into consideration, among other factors, whether for such SPV Derivatives Transaction the assets (or proceeds from the liquidation of such assets) have been distributed, the existing assets of the SPV Derivatives Counterparty, and whether any Noteholder is actively involved in the SPV Derivatives ADR Dispute.  Litigation with respect to the issuance of Sanctions shall not delay the commencement of the Mediation Stage of these procedures upon completion of the Notice/Response Stage.  Sanctions may include, but are not limited to:

    a.     Against Debtors:  (i) attorneys' fees incurred with respect to the SPV Derivatives ADR Procedures after the receipt of the SPV Derivatives ADR Package; (ii) fees and costs of the Mediator; (iii) termination of the SPV Derivatives ADR Procedures as to one or more SPV Derivatives Transactions; and/or (iv) rejection ofdismissing some or all claims asserted by Debtors in the applicable SPV Derivatives ADR Dispute.

    b.     Against SPV Derivatives Counterparties, SPV Trustees, or Noteholders, or Advisors:  (i) attorneys' fees incurred by the Debtors with respect to the SPV Derivatives ADR Procedures after the sending of a Derivatives ADR Package; (ii) fees and costs of the Mediator; (iii) an award in the SPV Derivatives ADR Dispute in the amount specified in the SPV Derivatives ADR Notice; and/or (iv) an entry of a judgment for the Debtor in the related Action.

    c.     Confidentiality of Sanctions Process:  Notwithstanding the confidentiality provisions contained in paragraph 12 of this Order, a motion requesting Sanctions made to the Court may identify the partiesParties to the subject

SPV Derivatives ADR Dispute and describe the conduct giving rise to the request for Sanctions and entitling the moving party to relief, but shall not include any description of any negotiations regarding the SPV Derivatives ADR Dispute that are deemed confidential under the Standing Order, this Order, or any other order of the Court.

12.13.  <u>Confidentiality</u>.    The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.  No oral or written statements or arguments made or positions taken by the mediator, the applicable Debtors, SPV Derivatives Counterparties, SPV Trustees, Noteholders, Authorized Designees, <u>Advisors,</u> or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage, may be disclosed by the mediator or any such parties<u>Parties</u> or their attorneys and advisors to the Court or any third party; *provided, however,* that SPV Trustees may disclose such statements, arguments and positions as may become necessary with their respective Noteholders and advisors subject to these same confidentiality provisions<u>, provided that such Noteholders and their advisors agree to maintain the confidentiality of any such information received</u>.  Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving in such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible.  In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; *provided, however,* that consistent with the Derivatives ADR Order, the mediator or a designee shall continue on a monthly basis to report to the Court the status of the mediation efforts but shall not disclose the content thereof, which report shall include the number of SPV Derivatives ADR Notices served on Derivatives

Counterparties (including SPV Derivatives Counterparties), the number of settlements reached after mediation, the number of mediations still pending, the number of mediations that have terminated without settlement, and the cumulative dollar amount of settlements reached with Derivatives Counterparties following service of ADR Notices. Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the SPV Derivatives ADR Procedures including Settlement Conferences and the Mediation Stage. Additionally, the economic terms, including any settlement amounts, of any particular settlement reached pursuant to the SPV Derivatives ADR Procedures shall be kept confidential, and such economic terms shall be redacted in any pleadings filed with the Court.

13.14. Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights Unaffected. Unless affirmatively waived, participation in the SPV Derivatives ADR Procedures shall not waive or otherwise modify the right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may exist. All partiesParties' rights and defenses to contest the assertion of a jury trial or arbitration or exclusive foreign forum selection right by any other party are fully preserved.

14.15. Fees. Except as otherwise provided herein, each party to the Mediation shall bear its own counsel fees and other costs of the SPV Derivatives ADR Procedures, including Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this Order, and (ii) nothing contained herein shall be deemed to vary the terms of any SPV Derivatives Transaction in respect of the reimbursement of fees and expenses.

16. Binding Effect of Settlement. In the case of all settlements approved hereunder, so long as the SPV Derivatives Counterparty provides appropriate notice (pursuant to

paragraph 5(b)(iii) above) of the settlement to registered holders of the notes or certificates, those

beneficial holders known to it, and the SPV Trustee, the Order approving the settlement shall be

binding upon all Noteholders and shall bar all Noteholders from taking any action against the

Authorized Designee as a result of the settlement.

15.17.   Service of the Notice of the Motion.  Service of notice of the Motion by e-

mail or facsimile, where service by mail is not feasible, in accordance with the provisions of the

Motion, is good and sufficient notice of the Motion.

**SO ORDERED:**

December ___, 2010
January ____, 2011
New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit A</u>

**<u>Form of SPV Derivatives ADR Notice</u>**

SPV Derivatives ADR Notice No.: _____

<u>Debtor(s)</u>: _____          <u>SPV Derivatives Counterparty</u>: _____
                     Name(s)                                                          Name(s)

                                                              or

                                                         <u>SPV Trustee</u>: _____
                                                                                          Name

<u>SPV Derivatives Transaction</u>: _____
_____
_____
_____

<u>Settlement Demand</u>:  <u>$_____</u>

<u>Explanation of Basis for Settlement Demand</u>: _____
_____
_____
_____
_____
_____
_____
_____

                                                     <u>Date of SPV Derivatives ADR Notice</u>: _____

                                                     <u>Date of Service</u>:                    _____

                                                     <u>Response Due Date</u>:                _____

<u>Debtor Contact</u>:    [Name]
                          [Address]
                          Telephone Number: _____
                          Email: _____

<u>Exhibit B</u>

**<u>Form of Response to SPV Derivatives ADR Notice</u>**

<u>SPV Derivatives Counterparty</u>: _____
                                        Name

　　or

<u>SPV Trustee</u>: _____
                      Name

<u>Response to SPV Derivatives ADR Notice No.</u>: _____

☐ Agree to Settlement Demand

☐ Denial of Settlement Demand              ☐ Counteroffer

                                        <u>Counteroffer Amount</u>: $_____

<u>Explanation of Basis for Counteroffer/Denial of Settlement Demand</u>: _____
_____
_____
_____
_____
_____
_____
_____
_____

<u>Counterparty Contact</u>:  [Name]
                          Telephone Number:  _____
                          Email:  _____

**<u>Exhibit C</u>**

**Redline of Revised Procedures to Existing Derivatives ADR
Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
In re                                                              :        **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                                                   :
                                          **Debtors.**       :        **(Jointly Administered)**
                                                                   :

                                                                   :
-------------------------------------------------------------------x

**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES ORDER FOR
AFFIRMATIVE CLAIMS OF THE DEBTORS UNDER DERIVATIVES
CONTRACTS TRANSACTIONS WITH SPECIAL PURPOSE VEHICLE
COUNTERPARTIES**

The following alternative dispute resolution procedures (the "for disputes involving the Debtors' derivatives transactions that have an SPV (as defined in paragraph 1(a) below) counterparty (the "SPV Derivatives ADR Procedures") are ORDERED to apply in the chapter 11 cases of Lehman Brothers Holdings, Inc. and certain of its direct and indirect subsidiaries affiliated debtors, as debtors and debtors in possession in various the above-captioned chapter 11 proceedings consolidated for procedural purposes only (collectively, "the Debtors"). (collectively, the "Debtors"). In connection with SPV Derivatives Transactions (as defined below), these SPV Derivatives Procedures supersede in their entirety, except as specifically provided below, the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts (the "Derivatives ADR Order") [Docket No. 5207].

**FINDINGS**

On motion of Debtors On motion of the Debtors (the "Motion"), due and proper notice of which having been provided to (i) the U.S. Trustee; (ii) the attorneys for

the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all known Derivatives Counterparties and Trustees, and (vii) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635], the Court FINDS that numerous open and terminated SPV Derivatives Transactions (as defined below), including without limitation derivatives contracts, including any derivative contract that is a are "swap agreement agreements" or "forward contract", contracts," in each case, as such term is defined in section 101 of the Bankruptcy Code, exist as to which one or more Debtors assert that monetary recovery is due to a Debtor from a counterparty, its affiliates, or related parties (the "Derivatives Contracts with Recovery Potential"). under which the Debtors and the relevant counterparties and other parties in interest have disputes over their respective legal rights and obligations.  The Court further FINDS that certain common issues exist regarding these contracts, including, among others, questions involving appropriateness of setoff, termination, valuation and, computation of termination payments, and notice.  The Court further FINDS that substantial value may be recovered for the Debtors' estates of Debtors, and judicial efficiency can be promoted, if expedient resolution of disputes and recoveries under such contracts can be achieved without the need for trial of adversary proceedings or other litigation.  The Court further FINDS that similar proceedings ordered in these and other complex chapter 11 cases have contributed to effective administration of the proceedings and have reduced costs for all parties.

The procedures described below are ORDERED to promote consensual recovery with respect to the Derivatives Contracts with Recovery Potential, and to encourage effective

~~communication~~ ~~between the affected parties,~~ ~~consultation, negotiation, and, when necessary,~~ ~~mediation~~ ~~procedures.~~

~~1. Standing Mediation Order. All provisions of the~~Consistent with General Order #M-~~143,~~390, adopted ~~January 17, 1995,~~December 1, 2009, providing for the Adoption of Procedures Governing Mediation of Matters and the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration in Bankruptcy Cases and Adversary Proceedings in the Bankruptcy Court for the Southern District of New York, and all existing and further amendments thereto (the "Standing Order")~~ shall apply to the mediations to be conducted~~ ~~under this Order~~, the procedures described below are ORDERED to promote consensual resolution with respect to the SPV Derivatives Transactions (as defined below) between one or more of the Debtors and the SPV counterparty, and to encourage effective communication, consultation, negotiation, and, when necessary, mediation among the affected parties.

      1.        SPV Derivatives Transactions.

        a.      For the purposes of this Order, "SPV" means any special purpose vehicle or special investment vehicle, including but not limited to any structure, vehicle, trust or entity that issued notes or certificates of beneficial interest pursuant to an indenture or trust agreement and that, for purposes of these SPV Derivatives ADR Procedures, have entered into one or more derivatives contracts with one or more of the Debtors (each, the "SPV Derivatives Transaction" and, collectively, the "SPV Derivatives Transactions"). The SPV Derivatives ADR Procedures shall apply to all SPV Derivatives Transactions where one or more Debtors contend they have the potential for affirmative recovery.

~~2. Derivatives ADR Counterparties.~~ b. To date, the Debtors have identified ~~approximately two hundred fifty (250) counterparties (which number will surely increase) to~~

~~Derivatives Contracts with Recovery Potential with whom there is reasonable cause for Debtors to believe that disagreement exists~~several hundred SPV Derivatives Transactions with respect to which there are potential disputes over the amounts that may be owed to one or more Debtors ~~under such contracts~~ (whether or not an actual lawsuit or adversary proceeding has ~~been commenced), whether from a counterparty to a Derivatives Contract with a Recovery Potential, an affiliate of such counterparty or a person or entity who exercised or failed to exercise duties in relation to such a contract (collectively,~~ commenced), and SPV Derivatives Transactions include, but are not limited to, swap agreements and forward contracts with such SPV that has entered into one or more SPV Derivatives Transactions with one or more of the Debtors (the "SPV Derivatives ~~Counterparties~~Counterparty"); *provided*, *however*, that the term SPV Derivatives ~~Contract with Recovery Potential~~Transactions shall not include any cash-market purchase or sale of a security or loan (*i.e.*, any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction or repurchase agreement in respect of securities or loans.

~~3.~~

        c.       The Debtors have filed motions, complaints (including adversary proceedings), and other papers commencing legal process, against, among others, SPV Derivatives Counterparties regarding SPV Derivatives Transactions (collectively, the "Actions") and anticipate initiating legal process against other SPV Derivatives Counterparties. Specifically, the term "Actions" includes any such motions, complaints (including adversary proceedings), and other papers commencing legal process that already have been filed and those that are subsequently filed.

2.    SPV Derivatives ADR Disputes. ~~Any Debtor may designate any dispute regarding a Derivatives Contract with Recovery Potential to the Derivatives ADR Procedures by serving on a Derivatives Counterparty~~ Except to the extent expressly precluded herein, a Debtor may institute an ADR proceeding in connection with any Action that is pending before the Court, including a dispute involving such SPV already involved in alternative dispute resolution ("ADR") with a Debtor, by serving such SPV Derivatives Counterparty, SPV Trustee (as defined below), a Noteholder (as defined below), and/or any investment advisor, collateral manager, or other fiduciary (an "Advisor") with a copy of this Order and ~~a~~the SPV Derivatives ADR Notice (as defined below) (collectively, the "~~Derivatives ADR Package~~").

~~a.  Debtors shall not implement Derivatives ADR Procedures with respect to a Derivatives Contract with Recovery Potential that (i) has not been purportedly terminated and (ii) with respect to which a Derivatives Counterparty has not failed to make a payment, or perform any other obligation, due, if any, to the Debtor(s) (without regard to any provision in a Derivatives Contract with Recovery Potential that purports to permit a Derivatives Counterparty to withhold performance by reason of a default by a Debtor or its affiliates).~~

~~b. Debtors shall make commercially reasonable efforts to minimize the frequency of service of Derivatives ADR Notices on any one Derivatives Counterparty.~~

~~c. Any trustee, indenture trustee or party acting in a fiduciary capacity in connection with a trust or other financing arrangement that relates to the applicable Derivatives Contract with any of the Debtors (such persons or entities collectively referred to as "Indenture Trustees," and each singly as an "Indenture Trustee") shall be subject to this Order,~~SPV Derivatives ADR Package"); *provided, however*, that a Debtor may not serve the SPV Derivatives ADR Package on such SPV Derivatives Counterparty, SPV Trustee, Noteholder, or

Advisor unless the Debtor has already commenced an Action or is already involved in ADR related to a particular SPV Derivatives Transaction.  The Debtor, the SPV Derivatives Counterparty, the SPV Trustee, and/or any Noteholder or Advisor served with the SPV Derivatives ADR Package are collectively referred to herein as the "Parties."

a.    Any SPV Derivatives Counterparty or trustee with respect to the SPV Derivatives Transaction (the "SPV Trustee") served with such SPV Derivatives ADR Package may disclose the contents of such SPV Derivatives ADR Package to any person, entity, or special investment vehicle that holds a note or beneficial interest in the SPV Derivatives Counterparty or the SPV Derivatives Transaction generally (such persons or entities collectively referred to as "Noteholders," and each singly as a "Noteholder"); *provided, however,* that any such Noteholder not specified as a party to the SPV Derivatives ADR Dispute must, in advance of receiving such SPV Derivatives ADR Package, agree in writing to abide by the confidentiality provisions in this Order, including paragraph 13, and must agree in writing to maintain the confidentiality of any such information received.

d~~b~~.    For the purposes of the SPV Derivatives ADR Procedures, service on or notice to ~~a~~such SPV Derivatives Counterparty ~~or Indenture Trustee, as the case may be,~~ ~~shall be deemed adequate if such service or notice is provided to such~~ ~~Derivatives Counterparty,~~ ~~such Indenture Trustee, a legal guardian, estate representative, or other representative and such~~ ~~party's counsel who have~~, SPV Trustee, Noteholder, or Advisor, as the case may be, can be made by serving that Party and such Party's counsel who has appeared in these cases and/or an Action by (i) ~~email and (ii) at the option of the Debtors either (x)~~ hand delivery, ~~or (y~~(ii) first class mail, ~~or (z~~iii) overnight mail~~.~~, or (iv) email upon consent.  Service made in accordance with this paragraph will be deemed adequate service.  This paragraph is not intended to limit

other methods of proper service upon such SPV Derivatives Counterparty, SPV Trustee, Noteholder, or Advisor.

c.     Notwithstanding any stay imposed by this Court, any defendant named in an Action must file a notice of appearance within thirty (30) calendar days of service of the SPV Derivatives ADR Package, within which time such defendant shall not file a responsive pleading.   Pursuant to Federal Rule of Civil Procedure 41 and Federal Rule of Bankruptcy Procedure 7041, a Debtor has the right to dismiss an Action against such SPV Derivatives Counterparty, SPV Trustee, Noteholder and/or Advisor without prejudice before a responsive pleading therein is filed.  Failure to file a notice of appearance within 30 calendar days of service of the SPV Derivatives ADR Package may result in this Court's entry of Sanctions (as defined below) as set forth below, including an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice or an order for a default judgment against the defaulting party; provided, however, that a defendant may alternatively file an appearance with reservation of the right to raise the defense of lack of personal jurisdiction within 30 calendar days of service of the SPV Derivatives ADR Package, consistent with paragraph 5(d) below.

d.     The first filing of a notice of appearance, or an appearance with reservation of the right to raise the defense of lack of personal jurisdiction, in an Action shall immediately and automatically stay such Action pending completion of the SPV Derivatives ADR Procedures through settlement or termination of mediation.  In the case of an Action that was previously stayed, and where such stay was modified for the limited purpose of complying with this Order, such stay will continue in full force and effect upon the first filing of a notice of appearance or limited appearance.

3.    Stay of Actions.  A Debtor may serve the SPV Derivatives ADR Package regardless of whether an Action has been previously stayed by the Court, and any prior stay shall be deemed automatically lifted upon the service on the SPV Derivatives Counterparty of the SPV Derivatives ADR Package solely for the limited purpose of the relevant defendant making an appearance in compliance with paragraph 2 of this Order.  Moreover, nothing contained herein shall be construed as lifting any stay with respect to the Actions other than for the limited purpose of complying with this Order.  Upon service of the SPV Derivatives ADR Package, the corresponding Action (as defined herein), to the extent not previously stayed, will be immediately stayed such that (i) all applicable deadlines (other than those related to completion of service of process) will be indefinitely suspended, (ii) all discovery and pre-trial conferences will not be required or conducted, and (iii) all motion practice and contested hearings or trials will be prohibited; *provided, however*, that during such stay, the Debtors may (a) amend the Action complaint, (b) employ the SPV Derivatives ADR Procedures or other procedures to attempt to consensually resolve disputed matters, (c) enter into settlements of the Action, (d) complete service of the Action complaint, (e) seek discovery for the limited purpose of assisting the Debtors in completing service of the Action complaint, and (f) dismiss an Action in accordance with Bankruptcy Rule 7041.

4.    Settlement of Disputes During the SPV Derivatives ADR Procedures.  Nothing contained herein shall prevent the ~~parties~~Parties from settling, and the ~~parties~~Parties are encouraged to settle, ~~a~~the SPV Derivatives ADR Dispute at any time before, during, or following the designation of ~~a~~the SPV Derivatives ADR Dispute to the SPV Derivatives ADR Procedures by the mutual consent of the ~~parties, provided that such settlementa.    complies with~~Parties; provided, that all SPV Derivatives ADR Disputes settled

pursuant to this Order, including terminated, active, and matured SPV Derivatives Transactions and regardless of whether such settlement is reached with a Derivatives Counterparty, SPV Trustee, Noteholder and/or Advisor, shall be settled pursuant to the terms set forth in (i) the Order, dated December 16, 2008, authorizing the Debtors to establish procedures for the settlement or assumption and assignment of prepetition derivative contracts [Docket No. 2257]; (ii) the Order, dated January 29, 2009, authorizing the consensual assumption and assignment of prepetition derivative contracts [Docket No. 2667], or; (iii) other orders in these bankruptcy cases permitting such settlement, or; (iv) in the case of settlements which have not been consented to by the applicable majority of Noteholders and upon the written request of any Party, by means of a Bankruptcy Rule 9019 Motion with notice to all Noteholders of the hearing date and objection deadline, provided that the economic terms of the resolution shall be redacted in any such motion and related order and an unredacted copy disclosing the economic terms of the resolution may only be provided to a Noteholder not previously served with the SPV Derivatives ADR Package after such Noteholder agrees in writing to maintain the confidentiality of any such information received and to abide by the confidentiality provisions in this Order; or (v) as otherwise permitted under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

b.      is approved by specific order of the Court.

Any settlement discussions between any of the parties and the Official Unsecured Creditors' Committee (the "Creditors' Committee"), the contents of any papers submitted during the mediation stage described below, and all discussions in mediation shall remain confidential and privileged and shall not be discoverable or admissible as evidence in any subsequent litigation of the Derivatives ADR Dispute or elsewhere, except as provided by further order of this Court.

5.    Participation Mandatory.

a.      Unless otherwise provided in a specific order applicable to a particular SPV Derivatives ADR Dispute or a particular Derivatives Counterparty or Indenture Trustee with Authority (as defined below), after service of a the SPV Derivatives ADR Package on a Derivatives Counterparty or Indenture Trustee with Authority (i), compliance with the SPV Derivatives ADR Procedures in this Order is mandatory in the specified Derivatives ADR Disputes for the applicable Debtor or Debtors, Derivatives Counterparty and Indenture Trustee with Authority; and (ii). Although no party is required to settle or compromise any dispute or enter into a particular settlement or compromise, but the SPV Derivatives ADR Dispute, each Debtor serving a the SPV Derivatives ADR Package, and each SPV Derivatives Counterparty, and each Indenture Trustee with Authority the SPV Trustee, and any Noteholder and/or Advisor on whom a Debtor elects to serve such SPV Derivatives ADR Package, must serve the required responses, engage in the specified communications to discuss settlement, participate in any mediation in good faith, follow directions of the mediator, and otherwise comply with the SPV Derivatives ADR Procedures specified below for all SPV Derivatives ADR Disputes covered by such SPV Derivatives ADR Package.

b.      The SPV Derivatives Counterparty shall, on or before sixty (60) calendar days of service of the SPV Derivatives ADR Package or, in the case of a pending ADR under the Derivatives ADR Order on or before sixty (60) calendar days of notice by the Debtor of an intent to proceed under this Order, identify and designate by written notice (the "Settlement Participation Designation") as provided below to the other Parties to the SPV Derivatives ADR Dispute, a person with complete settlement authority to negotiate all disputed amounts and issues on behalf of the SPV Derivatives Counterparty (the "Authorized Designee"). The SPV Derivatives Counterparty may change the Authorized Designee from time to time during the

course of the SPV Derivatives ADR Dispute so long as there remains at all times during the dispute an Authorized Designee.

             i.      The Settlement Participation Designation shall include the name and contact information of the person or entity with settlement authority, state that such person or entity has agreed to participate in the SPV Derivatives ADR Procedures, and state the relationship between the SPV Derivatives Counterparty and such person or entity with settlement authority.  Notwithstanding any other provisions regarding Sanctions contained in this Order, if the Debtor does not receive a Settlement Participation Designation from the SPV Derivatives Counterparty within sixty (60) calendar days of the service of the SPV Derivatives ADR Package, or notice of an intent to proceed under this Order in the case of a pending ADR, the Court may, upon motion of the Debtor, impose Sanctions (as defined below) on the SPV Derivatives Counterparty, including but not limited to an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice.

             b.      With respect to any Derivatives ADR Package served on an Indenture Trustee, within the period provided in paragraph 8(b) for service of a response thereto by an Indenture Trustee, Debtors and such Indenture Trustee shall review the governing documents to determine whether the Indenture Trustee has authority to participate and to settle the Derivatives ADR Dispute covered by the Derivatives ADR Notice on behalf of holders ("Authority").ii.      The SPV Derivatives Counterparty shall send notice of the SPV Derivatives ADR Dispute, the aforementioned requirement to name an Authorized Designee with settlement authority, and the related Action, to all Noteholders in accordance with both the requirements of paragraph 5(b)(iii) below.

i.     If the Indenture Trustee has Authority, it shall participate in the Derivatives ADR Procedures on behalf of holders to the extent authorized by such documents.

ii.    If the Indenture Trustee lacks Authority via the governing documents, it shall contact the holders for which it acts as Indenture Trustee through the clearing systems or when possible by a direct written communication that: (v) advises such holders that the Debtors dispute holders' claims; (w) transmits to them the applicable Derivatives ADR Notice; (x) invites them to participate in the Derivatives ADR Procedures as an alternative to litigation; (y) encourages them to communicate directly with the Debtors; and (z) offers to take holders' direction in accordance with the governing documents to participate in the Derivatives ADR Procedures on behalf of such directing holders.

iii.    In addition to any method of notice permitted by the relevant Indenture, including but not limited to service through the Depository Trust Company, notice of any SPV Derivatives ADR Dispute and the related Action given in accordance with the methods set forth below in subsections (a)-(b) to the Noteholders, parties to the Master Agreement, the Indenture, and/or the Trust Agreement, and any other persons entitled to such notice in the Bankruptcy Case, constitutes sufficient notice to such persons:

(a)    sending the papers commencing the relevant Action and the SPV Derivatives ADR Package (collectively, the "SPV Adversary Package") to each such person; provided, that in the case of the Noteholders, the SPV Adversary Package shall be sent:

(i)      directly to the original Noteholders (as of the issuance date thereof), as and to the extent listed in the records of the Debtors; and

(ii)     directly to any known current Noteholders; and

(b)     publication of the fact that there exists an ADR proceeding related to this SPV Derivatives Transaction in the Wall Street Journal and the Financial Times for three successive business days.

iv.     Within ten (10) business days of receiving written request by a Debtor, the SPV Derivatives Counterparty, and if served with the SPV Derivatives ADR Package, the SPV Trustee, shall provide information to such Debtor sufficient to identify and contact such Noteholders directly if known, and if such information is unknown to the SPV Derivatives Counterparty and SPV Trustee, then the SPV Derivatives Counterparty and SPV Trustee shall provide information sufficient to identify the clearing systems through which such Noteholders are communicated.

v.     If a Debtor has not timely received a Settlement Participation Designation, a Debtor may at its sole discretion continue its attempts at mediation, terminate the SPV Derivatives ADR Dispute and resume the Action, or stay or terminate the SPV Derivatives ADR Dispute and move for Sanctions, including but not limited to an order or judgment for recovery of amounts demanded by Debtors in the SPV Derivatives ADR Notice. No actions authorized by this paragraph 5(b)(v) shall be construed as automatically eliminating or modifying the stay of the Action without such Debtor's consent.

iii vi.  In taking the steps outlined in this paragraph 5(b), Indenture Trustees5, all Parties to the SPV Derivatives ADR Dispute shall make commercially reasonable efforts to act as promptly as possible under the prevailing circumstances.

c.     Nothing contained in this paragraph 5 ~~with respect to Indenture Trustees~~ shall relieve or be construed to relieve any party to the SPV Derivatives ~~Counterparty~~ADR Dispute from compliance with this Order.

d. ~~All~~ No rights, remedies, claims ~~and~~or defenses of any SPV Derivatives Counterparty, ~~Indenture Trustees, holders and~~SPV Trustee, Noteholder, Advisor, or Debtor, acting in good faith compliance with the SPV Derivatives ADR Procedures, shall ~~not~~ be impaired, waived or compromised in any further proceedings in these cases should no settlement or compromise result from participation in these SPV Derivatives ADR Procedures. Participation in the SPV Derivatives ADR Procedures by a~~the SPV~~ Derivatives Counterparty, ~~Indenture~~Authorized Designee, SPV Trustee, Noteholder, or ~~holder~~Advisor shall not waive the defense of lack of in personam jurisdiction, if any, which defense shall be preserved.

~~6.   No Substitute For Claims Procedures.  The Derivatives ADR Procedures are not intended and shall not be utilized as a substitute for chapter 11 claims procedures.~~6.  Nothing contained herein~~, however,~~ shall ~~(a)~~ prevent a~~the SPV~~ Derivatives Counterparty from asserting in any respect to a~~the SPV~~ Derivatives ADR Notice and elsewhere during the course of a~~such SPV~~ Derivatives ADR Dispute a right to assert valid and enforceable setoff rights with respect to a Debtor's claim of a SPV Derivatives ~~Contract with Recovery Potential~~Transaction or any other valid defense to a Debtor's demand thereunder ~~or (b) be construed to abridge, enlarge, or otherwise modify the rights and obligations of Debtors or Derivatives Counterparties under a Derivatives Contract with Recovery Potential or applicable law or to provide a right or remedy under a Derivatives Contract with Recovery Potential to Debtors or Derivatives Counterparties that is not provided thereby or by applicable law~~.

14

7.      Debtor's Rights As to Proceedings Previously or Hereafter Commenced by Derivatives Counterparties.  If a~~a~~the SPV Derivatives Counterparty, SPV Trustee, Noteholder, or Advisor previously has commenced, any action or proceeding in any other court or forum, or any action or proceeding in any other court or forum following service upon it of a~~a~~the SPV Derivatives ADR Package, the Debtors reserve their right, pursuant to the order dated December 18, 2008 [Docket No. 2306], to remove to this Court any such lawsuit, proceeding, or claim, and to defend or take action in any such other court or proceeding to protect the estate of Debtors, and/or take action in respect of any violation of the automatic stay imposed by section 362 of the Bankruptcy Code, despite the incomplete status of the steps prescribed under the SPV Derivatives ADR Procedures.

## NOTICE/RESPONSE STAGE

8.            Notice/Response.  The initial stage of the SPV Derivatives ADR Procedures will be a notice/response stage, providing the ~~parties~~Parties with an opportunity to exchange settlement offers, schedule settlement meetings or conference calls, and, if possible, resolve a~~a~~the SPV Derivatives ADR Dispute on a consensual basis (the "Notice/Response Stage").  The Notice/Response Stage shall include:

a.      SPV Derivatives ADR Notice. ~~Debtors~~ A Debtor shall serve upon a~~a~~the SPV Derivatives Counterparty ~~or Indenture~~and, at such Debtor's election, the SPV Trustee and/or Noteholder and/or Advisor (and ~~its~~any attorneys who have appeared in these cases or an Action) a notice containing sufficient information regarding the SPV Derivatives ADR Dispute ~~to make the Derivatives Counterparty or Indenture Trustee aware of~~including the nature of the Debtor's ~~affirmative~~ claim, a brief explanation setting

forth the basis for the demand and the amount, and of its demand for settlement (which demand shall have been determined with the benefit of consultation between Debtors and the Creditors' CommitteeOfficial Unsecured Creditors' Committee (the "Creditors' Committee")), including an amount of monetary recovery Debtor(s) would accept in full settlement and compromise (athe "SPV Derivatives ADR Notice").  Service of a completed SPV Derivatives ADR Notice in the form annexed to this Order as Exhibit "A" shall presumptively be deemed to comply with this Order. Within 30 calendar days of entry of this Order, a Debtor participating in a pending ADR involving such SPV must elect in writing either to opt out of this Order and continue under the Derivatives ADR Order or to proceed under this Order.  If the Debtor elects to proceed under this Order, the Debtor shall provide written notice of its election to all Parties to the pending ADR and simultaneously serve an SPV Derivatives ADR Package on the SPV Derivatives Counterparty and, at such Debtor's election, the related SPV Trustee and/or one or more Noteholders.  All deadlines otherwise set forth in this Order will run from the date the Debtor delivers the SPV Derivatives ADR Package.

b.    SPV Derivatives Counterparty's Response to Notice.  A The SPV Derivatives Counterparty (or, where also served with the SPV Derivatives ADR Package, the SPV Trustee and/or Noteholder, and/or Advisor, as the case may be) must respond to the SPV Derivatives ADR Notice in writing within thirty (30)75 calendar days from the date of the Derivatives

~~Counterparty's receipt of the Notice. An Indenture Trustee with Authority~~ ~~contained in the governing documents must respond to the Derivatives~~ ~~ADR Notice in writing within forty-five (45) calendar days from the date~~ ~~of such Indenture Trustee's receipt of the Derivatives ADR Notice, and an~~ ~~Indenture Trustee with Authority obtained by way of direction from~~ ~~holders pursuant to paragraph 5(b) above, must respond to the Derivatives~~ ~~ADR Notice within thirty (30) days from the date of receipt of such~~ ~~direction from holders.~~ <u>receipt of the SPV Derivatives ADR Notice, or in the case of a pending ADR receipt of the Debtor's election to proceed under this Order.</u> The response options available ~~to a Derivatives Counterparty or an Indenture Trustee with Authority~~ are as follows (the "<u>Responses</u>"):

i.    <u>Agreeing to Settle the Demand</u>. If ~~a~~<u>the SPV</u> Derivatives Counterparty ~~or an Indenture Trustee with Authority~~<u>(or, where also served with the SPV Derivatives ADR Package, the SPV Trustee and/or Noteholder and/or Advisor)</u> agrees to settle the demand in the <u>SPV</u> Derivatives ADR Notice, ~~the Counterparty~~<u>it</u> shall state in writing that the offer of settlement in the <u>SPV</u> Derivatives ADR Notice is accepted.  The ~~parties~~<u>Parties</u> will then execute a settlement and general release (including a confidentiality provision) and~~, if the matter is in litigation,~~ the Debtor shall dismiss ~~any applicable claims in a lawsuit or~~

~~adversary proceeding~~the corresponding Action with prejudice upon execution of the release; or

ii.    Denying the Demand. ~~A~~ The SPV Derivatives Counterparty ~~or Indenture Trustee with Authority~~(or, where also served with the SPV Derivatives ADR Package, the SPV Trustee and/or Noteholder and/or Advisor) may decline to settle for the amount stated in the demand in the SPV Derivatives ADR Notice, in which case ~~the Derivatives Counterparty or Indenture Trustee with Authority~~such party must include a brief explanation in the Response to the SPV Derivatives ADR Notice setting forth the reason(s) for such denial. In addition, ~~the Derivatives Counterparty or Indenture Trustee with Authority~~such party may provide a counteroffer to the demand in the SPV Derivatives ADR Notice. Service of a completed Response to ~~a~~the SPV Derivatives ADR Notice in the form annexed to this Order as Exhibit "B" shall presumptively be deemed to comply with this Order.

c.    Failure to Respond. Failure to provide a timely Response to the SPV Derivatives ADR Notice, as described in paragraphs 8(b)(i) and (ii), may result, at the option of Debtors, either in an application to the Court (with notice to any applicable SPV Derivatives Counterparty ~~or Indenture Trustee~~, SPV Trustee, Noteholder, or Advisor that was provided by the Debtor with the SPV Derivatives ADR Package) for Sanctions (as defined below) as set forth below, including an order or judgment for recovery of

amounts demanded by Debtors in the SPV Derivatives ADR Notice, or immediate entry into the mediation stage.

d. <u>Reply to Response</u>. The Debtor shall have ~~fifteen (15)~~<u>twenty (20) calendar</u> days from the date of the receipt of the Response to serve a Reply to the Response to the <u>SPV</u> Derivatives ADR Notice (which ~~Response~~<u>Reply</u> shall have been determined with the benefit of consultation between Debtors and the Creditors' Committee), in which the Debtor shall (i) modify its ~~Demand~~<u>demand</u>, (ii) respond to any counteroffer, (iii) provide additional information in support of its ~~demands~~<u>demand</u> in the <u>SPV</u> Derivatives ADR Dispute, or (iv) reject any counteroffer in which case the <u>SPV</u> Derivatives ADR Dispute will automatically proceed to the <u>Initial Settlement Conference or</u> Mediation Stage.

9. <u>Request for Initial Settlement Conference</u>. At any time ~~in the Notice/Response Stage, either a~~<u>prior to the Mediation Stage but after the date upon which a Reply is due from the</u> Debtor, <u>any Party to the SPV</u> Derivatives ~~Counterparty or Indenture Trustee with Authority~~<u>ADR Dispute</u> may request an initial telephonic settlement conference by written request, to be held within ten (10) calendar days~~, and, in the case of Indenture Trustees with Authority, to be held within fifteen (15) business days~~. Within four (4) business days of a receipt of such a request, the other ~~parties~~<u>Parties</u> must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than five (5) calendar days from the earliest date set forth in the written request. ~~In the case of Indenture Trustees with Authority, within ten (10) business days of a receipt of such a request, the other~~

19

~~parties must respond by acceptance of one of the proposed dates and times or by a proposal for an initial settlement call no later than fifteen (15) business days from the earliest date set forth in the written request.~~ If an acceptable date cannot be achieved through this process, the ~~parties~~Parties shall immediately proceed to the Mediation Stage.  At least one hour shall be reserved for the initial conference to discuss settlement~~,~~, and during the initial settlement conference a person with authority to negotiate and settle (including in the case of the SPV Derivatives Counterparty, the Authorized Designee) must participate on behalf of each party. No mediator or representative of the Court will participate in this discussion, but the initial conference call specified in this paragraph, together with any continuations or rescheduled settlement calls or meetings arising from that initial settlement conference, will be covered by Rule 408 of the Federal Rules of Evidence and analogous state evidentiary provisions, and the confidentiality provisions of this Order shall apply to this call or series of calls as if a mediator were present.  Settlement conferences during the Notice/Response Stage may be held in person if ~~both parties~~all Parties agree in writing.

## MEDIATION STAGE

10.        Mediation.   SPV Derivatives ADR Disputes that are not resolved through the Notice/Response Stage will proceed to mediation (the "Mediation Stage"). The Debtors shall transmit on a rolling basis ~~as promptly as possible~~ to the mediators appointed pursuant to paragraph 10(a) hereof sets of SPV Derivatives ADR Notices and any applicable Response(s) and Replies thereto for purposes of allocating specific mediations pursuant to paragraph 10(b)(i) hereof.

a.        Choice of Mediator.  James Freund, David Geronemus ~~and~~, Ralph Mabey, and Jacob Esher are APPOINTED as the mediators for SPV Derivatives

ADR Disputes reaching the Mediation Stage.  If any named mediator is not available to serve as mediator, an alternate mediator shall be selected by the Court upon notice to the Debtors, the Creditors' Committee, ~~all Derivatives Counterparties and Indenture Trustees~~the Authorized Designee, and if served with the SPV ADR Derivatives Package, the SPV Trustee, Noteholders, and Advisor.

b.    Powers of Mediator.   The mediators shall have the broadest possible discretion consistent with the Standing Order, including (i) the manner of allocating among themselves specific mediations on a fair and equitable basis; and (ii) the ability to consolidate mediations involving the same SPV Derivatives ~~Counterparty~~Transaction upon application by such SPV Derivatives Counterparty and consultation with the Debtors.

c.    Mediator Contact.  Once a specific mediator has been selected and notice of such selection has been conveyed to the ~~parties, the Debtor and the Derivatives Counterparty or Indenture Trustee with Authority together~~Parties, the mediator or its designee shall contact the ~~mediator~~Parties to schedule the initial mediation date.

d.    Mediation Sites.  All mediation proceedings will take place in New York, New York, unless agreed to by the ~~parties~~Parties and the mediator.

e.    Mediation Briefs.  Any party to a Mediation may submit a Mediation Brief, with service upon the other ~~parties~~Parties to the Mediation and upon the Creditors' Committee~~; provided, however,~~ unless the Mediator ~~may order that the parties~~has affirmatively required the Parties to serve

Mediation Briefs upon each other, the Mediator, and the Creditors' Committee ~~a Mediation Brief. If a party to the Mediation opts to serve a Mediation Brief upon another party to the Mediation hereunder, such Mediation Brief shall also be filed with the Mediator and the Creditors' Committee.~~. Any such Mediation Brief shall be served and filed ~~so as to be received no later than five (5) calendar days prior to the scheduled initial Mediation Date.~~in accordance with the briefing schedule established by the Mediator. No Mediation Brief shall be filed with the Court.

f.    Appearance at Mediations. ~~Unless otherwise ordered by the mediator~~ Pursuant to paragraph 3.2 of the Standing Order, all participants in the mediation for the applicable SPV Derivatives ADR Dispute, must appear in person with a ~~business principal~~person who has ~~settlement authority; provided, however, that, to the extent acceptable to the mediator, the business principal with settlement authority on behalf of a~~complete authority to negotiate all disputed amounts and issues such that its decisions bind that party. The Authorized Designee of the SPV Derivatives Counterparty ~~may attend the mediation by video conference at the sole expense of the Derivatives Counterparty.~~must appear in person at the mediation. Any willful failure to comply with this requirement in good faith may result in the imposition of Sanctions, as provided below. The Creditors' Committee may attend and participate in all mediations hereunder. Counsel may also be present and participate.

22

g.    <u>End of Mediation</u>.  The mediation shall end upon request of a party and concurrence by the mediator.

## OTHER PROVISIONS

11.    <u>Deadlines</u>.  Notwithstanding any of the provisions set forth above, any of the deadlines contained herein may be modified by:  (i) the mutual consent of the ~~Debtors and the Derivatives Counterparty~~<u>Parties;</u> or (ii) the Bankruptcy Court, for cause shown.

12.    <u>Sanctions for Parties</u>.  Each Debtor~~, and SPV~~ Derivatives Counterparty ~~and Indenture Trustee~~<u>(or, where also served with the SPV Derivatives ADR Package, the SPV Trustee, Noteholder, and Advisor)</u> must participate in good faith with these <u>SPV </u>Derivatives ADR Procedures with regard to the <u>SPV Derivatives </u>ADR Disputes specified in the applicable <u>SPV </u>Derivatives ADR Notice.  If, after notice and a hearing, the Court determines that a party has not complied with the <u>SPV </u>Derivatives ADR Procedures in good faith in connection with any <u>SPV </u>Derivatives ADR Dispute, ~~the Debtors, Derivatives Counterparty or Indenture Trustee, as the case may be,~~<u>such party</u> may be subject to such ~~sanctions~~<u>Sanctions</u> as the Court deems appropriate (the "<u>Sanctions</u>").  If a mediator reports to the Court that any party subject to this Order is not cooperating in good faith with the<u> SPV </u>Derivatives ADR Procedures, the Court may, without the need for further motion by any party, schedule a hearing and order Sanctions. <u>  In ordering Sanctions, the Court shall take into consideration, among other factors, whether for such SPV Derivatives Transaction the assets (or proceeds from the liquidation of such assets) have been distributed, the existing assets of the SPV Derivatives Counterparty, and whether any Noteholder is actively involved in the SPV Derivatives ADR Dispute. </u> Litigation with respect to the issuance of Sanctions shall not delay

the commencement of the Mediation Stage of these procedures upon completion of the

Notice/Response Stage.  Sanctions may include, but are not limited to:

a.    <u>Against Debtors</u>:    (i)  attorneys'  fees  incurred  ~~by  a  Derivatives~~

~~Counterparty (including an Indenture Trustee with Authority)~~ with respect

to the <u>SPV</u> Derivatives ADR Procedures after the receipt of ~~an~~<u>the SPV</u>

<u>Derivatives</u> ADR Package; (ii) fees and costs of the Mediator; (iii)

termination of the <u>SPV</u> Derivatives ADR Procedures as to one or more

<u>SPV</u> Derivatives ~~Contracts with Potential Recovery~~<u>Transactions</u>; and/or

~~(iii) rejection of~~<u>iv) dismissing</u> some or all claims asserted by Debtors in

the applicable <u>SPV</u> Derivatives ADR Dispute.

b.    <u>Against  SPV</u>  Derivatives  Counterparties ~~ (including  Indenture,  SPV~~

<u>Trustees</u>~~ with Authority):~~<u>, Noteholders, or Advisors:</u>  (i) attorneys' fees

incurred  by  the  Debtors  with  respect  to  the  <u>SPV</u>  Derivatives  ADR

Procedures after the sending of ~~an~~<u>a Derivatives</u> ADR Package; (ii) fees

and costs of the Mediator; (iii) an award ~~of~~<u>in</u> the <u>SPV</u> Derivatives ADR

Dispute ~~up to~~<u>in</u> the amount specified in the <u>SPV</u> Derivatives ADR Notice<u>;</u>

<u>and/or (iv) an entry of a judgment for the Debtor in the related Action</u>.

c.    <u>Confidentiality of Sanctions Process:  Notwithstanding the confidentiality</u>

<u>provisions contained in paragraph 12 of this Order, a motion requesting</u>

<u>Sanctions made to the Court may identify the Parties to the subject SPV</u>

<u>Derivatives  ADR  Dispute  and  describe  the  conduct  giving  rise  to  the</u>

<u>request for Sanctions and entitling the moving party to relief, but shall not</u>

<u>include any description of any negotiations regarding the SPV Derivatives</u>

ADR Dispute that are deemed confidential under the Standing Order, this Order, or any other order of the Court.

13.    Confidentiality.  The confidentiality provisions of section 5.0 of the Standing Order are hereby incorporated by reference into this Order.  No oral or written statements or arguments made or positions taken by the mediator, the applicable Debtors, SPV Derivatives Counterparties, Indenture Trustee SPV Trustees, Noteholders, Authorized Designees, Advisors, or the Creditors' Committee during any part of the alternative dispute resolution process, including Settlement Conferences and the Mediation Stage, may be disclosed by the mediator or any such parties Parties or their attorneys and advisors to the Court or any third party; provided, however, that Indenture SPV Trustees may disclose such statements, arguments and positions as may become necessary with their respective noteholders Noteholders and advisors subject to these same confidentiality provisions, provided that such Noteholders and their advisors agree to maintain the confidentiality of any such information received. Similarly, all briefs, records, reports, and other documents received or made by the mediator while serving is in such capacity shall remain confidential and not be provided to the Court, unless they would be otherwise admissible.  In addition, the mediator shall not be compelled to disclose such records, reports, and other documents in connection with any hearing held by the Court; provided, however, that consistent with the Derivatives ADR Order, the mediator or a designee shall continue on a monthly basis beginning 60 days following entry of this Order to report to the Court the status of the mediation efforts but shall not disclose the content thereof, which report shall include the number of SPV Derivatives ADR Notices served on Derivatives Counterparties (including SPV Derivatives Counterparties), the number of settlements reached after mediation, the number of mediations still pending, the number of mediations that have

25

terminated without settlement, and the cumulative dollar amount of settlements reached with Derivatives Counterparties following service of ADR Notices.  Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the SPV Derivatives ADR Procedures including Settlement Conferences and Mediation Stage.the Mediation Stage.  Additionally, the economic terms, including any settlement amounts, of any particular settlement reached pursuant to the SPV Derivatives ADR Procedures shall be kept confidential, and such economic terms shall be redacted in any pleadings filed with the Court.

14.    Jury Trial, Arbitration and Exclusive Foreign Forum Selection Rights Unaffected.  Unless a Derivatives Counterparty, Indenture Trustee or a Debtor affirmatively waives itsaffirmatively waived, participation in the SPV Derivatives ADR Procedures shall not waive or otherwise modify the right to a jury trial, arbitration or exclusive foreign forum selection that otherwise may exist, participation in the Derivatives ADR Procedures shall not waive or otherwise modify such rights.  All partiesParties' rights and defenses to contest the assertion of a jury trial or arbitration or exclusive foreign forum selection right by any other party are fully preserved.

15.    Fees.  Except as otherwise provided herein, each party to the Mediation shall bear its own counsel fees and other costs of the SPV Derivatives ADR Procedures, including Mediation; *provided, however*, that (i) the Debtors shall pay the reasonable fees and costs charged by the Mediator unless otherwise ordered by the Court pursuant to the terms of this Order, and (ii) nothing contained herein shall be deemed to vary the terms of any Derivative Contract with Recovery PotentialSPV Derivatives Transaction in respect of the reimbursement of fees and expenses.

16.    Binding Effect of Settlement.  In the case of all settlements approved hereunder, so long as the SPV Derivatives Counterparty provides appropriate notice (pursuant to paragraph 5(b)(iii) above) of the settlement to registered holders of the notes or certificates, those beneficial holders known to it, and the SPV Trustee, the Order approving the settlement shall be binding upon all Noteholders and shall bar all Noteholders from taking any action against the Authorized Designee as a result of the settlement.

17.    Service of the Notice of the Motion.  Service of notice of the Motion by e-mail or facsimile, where service by mail is not feasible, in accordance with the provisions of the Motion, is good and sufficient notice of the Motion.

**SO ORDERED:**

January ____, 2011
~~Dated:~~ New York, New York
~~            September 17, 2009~~

~~                        s/ James M. Peck~~

                        UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit A</u>

**Form of SPV Derivatives ADR Notice**

SPV Derivatives ADR Notice No.: _____

Debtor(s): _____  SPV Derivatives Counterparty: _____
~~Name(s)~~  ~~Name(s)~~
Name(s)_____  Name(s)_____
_____or

~~Indenture~~SPV Trustee:

_____
                                                    Name

SPV Derivatives ~~Contract~~Transaction: _____
_____
_____
_____
_____

Settlement Demand:    $_____

Explanation of Basis for Settlement Demand: _____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

~~Date of Derivatives ADR Notice:~~  _____

Date of SPV Derivatives ADR Notice: _____

Date of Service: _____

Response Due Date: _____

Debtor Contact:    [Name]
                   [Address]
                   Telephone Number: _____
                   Email: _____

<u>Exhibit B</u>

**Form of Response to SPV Derivatives ADR Notice**

SPV Derivatives Counterparty: _____

_____ Name

_____ or

_____ ~~Name~~

_____ ~~or~~

~~Indenture~~
SPV Trustee ~~with Authority~~: _____

~~Name:~~ _____

_____ Name

Response to SPV Derivatives ADR Notice No.: ____ ☐_____

☐ Agree to Settlement Demand

☐ ☐ Denial of Settlement Demand                    ☐ ☐ Counteroffer

                                                  Counteroffer Amount: $_____

Explanation of Basis for Counteroffer/Denial of Settlement Demand: _____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

<u>Counterparty Contact</u>:  [Name]
                         Telephone Number:  _____
                         Email:  _____

## **Exhibit D**

**November 25, 2008 Letter from Lori Fife to The Bank of New York Mellon Trust Company**

# WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE

NEW YORK, NY 10153

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

LORI R. FIFE
DIRECT LINE (212) 310-8318
E-MAIL: lori.fife@weil.com

November 25, 2008

## BY FEDERAL EXPRESS, FACSIMILE AND ELECTRONIC MAIL

The Bank of New York Mellon Trust Company, National Association
601 Travis Street
16th Floor
Houston, Texas 77002
Facsimile:  (713) 483-6656
Attention:  Elaine P. Mah
elaine.mah@bnymellon.com

The Bank of New York Mellon Trust Company, National Association
601 Travis Street
16th Floor
Houston, Texas 77002
Attention:  Shawn Teel
shawn.teel@bnymellon.com

Mr. Douglas MacInnes
Bank of New York Mellon
101 Barclay Street
New York, New York  10286

Ladies and Gentlemen:

We represent Lehman Brothers Special Financing Inc. ("LBSF") and certain of its
related debtor affiliates in their Chapter 11 proceedings in the Bankruptcy Court for the Southern
District of New York.  We are contacting you in your capacity as trustee with respect to certain
transactions listed in Schedule A hereto (the "Transactions") as to which LBSF or an affiliate
thereof (other than Lehman Brothers Inc.) is a party (in such capacity, the "Swap Counterparty"
and collectively, the "Swap Counterparties") under certain swap agreements relating to these
Transactions.  Reference is made to (i) those certain ISDA Master Agreements (together with

WEIL, GOTSHAL & MANGES LLP

November 25, 2008
Page 2

any schedules, credit support annexes, and confirmations thereto, the "Swap Agreements")
between the relevant issuers in such Transactions (collectively, the "Issuers") and the relevant
Swap Counterparties, and (ii) any other transaction documents relating to the Transactions
(together with the Swap Agreements, collectively, the "Transaction Documents").

We hereby request that you provide us with the following documents and
information as soon as possible:

    a.  any notices received or given by or on behalf of you or the Issuers in
connection with the Transactions from January 1, 2008 to and including
the date hereof, including, but not limited to, notices concerning any
purported event of default, termination event, termination, acceleration of
notes, liquidation of assets, or distribution of proceeds thereof;

    b.  a description (including dates and names of parties) of all remedies
purported to be exercised pursuant to the Transaction Documents and all
actions taken in connection therewith by any party in connection with the
Transactions from January 1, 2008 to and including the date hereof; and

    c.  all reports delivered to any party pursuant to the Transaction Documents,
including, but not limited to, trustee reports, periodic reports, and
valuation reports, from January 1, 2008 to and including the date hereof.

In addition, we hereby give you notice that:

1.     with respect to a number of Transactions, we have received termination
notices that are defective;

2.     we believe that any actions that may have been taken by you or on behalf
of any Issuer pursuant to the Transaction Documents other than the Swap Agreements on or after
September 15, 2008, including any remedies purported to be exercised thereunder, may be
subject to the automatic stay provisions of Section 362 of the Bankruptcy Code.  Accordingly,
we believe that any such actions taken by you or on behalf of any such Issuer may have been in
violation of such provisions and, therefore, such actions would be null and void.  In addition, we
believe that any future actions taken by you or on behalf of any such Issuer pursuant to the
Transaction Documents other than the Swap Agreements may also be subject to the automatic
stay; and

3.     we believe that any provisions of any Transaction Documents purporting
to subordinate any amounts payable to any Swap Counterparty would not be enforceable, and
any effort to apply such provisions under the present circumstances would be unlawful.

Therefore, based upon the foregoing, we hereby demand that you immediately
cease and desist from taking any further actions pursuant to the Transaction Documents,

WEIL, GOTSHAL & MANGES LLP

November 25, 2008
Page 3

including, but not limited to, exercising any remedies thereunder, and to contact us to discuss these matters.

Please note that all notices and correspondence to Lehman Brothers Special Financing Inc. should forthwith be sent to the following addresses:

> Lehman Brothers Special Financing Inc.
> 1271 Avenue of the Americas
> 43rd Floor
> New York, New York  10020
> Attention:  Vincent DiMassimo
> Telephone:  (646) 333-6032
> Facsimile:  (646) 758-1811
>
> with copies to:
>
> Lehman Brothers Special Financing Inc.
> 1271 Avenue of the Americas
> 43rd Floor
> New York, New York  10020
> Attention:  Locke McMurray, Esq.
> Telephone:  (212) 526-7186
> Facsimile:  (646) 758-2634
>
> Lehman Brothers Special Financing Inc.
> 1271 Avenue of the Americas
> 45th Floor
> New York, New York  10020
> Attention:  Chief Financial Officer
>
> and
>
> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York  10153
> Attention:  Robert J. Lemons, Esq.
> Telephone:  (212) 310-8924
> Facsimile:  (212) 310-8007
>
> with an additional copy via electronic mail to:
>
> LBHISPVNotices@lehman.com

WEIL, GOTSHAL & MANGES LLP

November 25, 2008
Page 4

       In addition, Lehman Brothers Special Financing Inc. has retained Natixis Capital
Markets Inc. ("Natixis") as its adviser and you are hereby directed to respond to any questions or
requests relating to the Transactions from any individuals listed on <u>Schedule B</u> hereto (the
"Approved List", as such list may be updated from time to time by a notice from Natixis to you)
and to provide all information relating to the Transactions requested by any individuals on the
Approved List.  For the avoidance of doubt, Natixis is not an agent of LBSF or any of its related
debtor affiliates.

       We reserve all rights and remedies of each Swap Counterparty and the related
credit support provider under the Swap Agreements, the Transaction Documents, and applicable
law and will hold the Trustee accountable for any breaches of such rights.

       Very truly yours,

       Lori R. Fife

cc:    Martin Winter (via e-mail: <u>mwinter@alvarezandmarsal.com</u>) (Alvarez & Marsal, LLC)
       Ken Wormser (via e-mail: <u>ken.wormser@cm.natixis.com</u>) (Natixis Capital Markets Inc.)

## SCHEDULE A

801 GRAND CDO SPC SERIES 2006-1
801 GRAND CDO SPC SERIES 2006-2
81 VH HOLDING SARL
A.L.L STRUCTURED CAPITAL MANAGEMENT LTD.
A-CAMPUS BRAUNSCHWEIG SARL
ACCESS GROUP INC SERIES 2005-A
ACCESS GROUP INC SERIES 2005-B
ACCESS GROUP SERIES 2007-A
ADAGIO III CLO PLC
AIRLIE CDO I LIMITED
AIRLIE LCDO I (AVIV LCDO 2006-3)  LIMITED
AIRLIE LCDO II (PEBBLE CREEK 2007-1), LTD.
AJAX RE LIMITED
ALLIANCE LAUNDRY EQUIPMENT RECEIVABLES TR 2005-A
ALPHA MEZZ CDO 2007-1, LTD.
ALTA CDO 2007-1 LTD
ALTA CDO SPC SERIES 2007-2 SEGREGATED PORTFOLIO
ALTERNATIVE MULTI-STRATEGY FUND LTD (THE)
AMBER FINANCE LTD
AMERICREDIT 2005-B-M
AMERICREDIT AUTOMOBILE RECEIVABLES TRUST 2007-D-F
AMMC CLO III LTD
AMMC CLO IV LTD
AMMC CLO V LTD
AMMC CLO VI LTD
ANGLIOLIERI FINANCE PLC
ANTHRACITE BALANCE COMPANY (DIS 1) LTD
ANTHRACITE BALANCED COMPANY (32) LTD
ANTHRACITE BALANCED COMPANY (36) LTD
ANTHRACITE BALANCED COMPANY (40) LTD
ANTHRACITE BALANCED COMPANY (41) LTD
ANTHRACITE BALANCED COMPANY (44) LTD
ANTHRACITE BALANCED COMPANY (46) LIMITED
ANTHRACITE BALANCED COMPANY (50) LIMITED
ANTHRACITE BALANCED COMPANY (7) LTD
ANTHRACITE BALANCED COMPANY (AWF) LTD
ANTHRACITE BALANCED COMPANY (BPI) LTD
ANTHRACITE BALANCED COMPANY (GMN) LTD
ANTHRACITE BALANCED COMPANY (HFRX) LTD
ANTHRACITE BALANCED COMPANY (IR-16) LTD
ANTHRACITE BALANCED COMPANY (IR-4) LTD
ANTHRACITE BALANCED COMPANY (J R-38) LTD
ANTHRACITE BALANCED COMPANY (JR-12) LTD
ANTHRACITE BALANCED COMPANY (JR-13) LTD
ANTHRACITE BALANCED COMPANY (JR-20) LTD
ANTHRACITE BALANCED COMPANY (JR-21) LTD
ANTHRACITE BALANCED COMPANY (JR-23) LTD
ANTHRACITE BALANCED COMPANY (JR-27) LTD

ANTHRACITE BALANCED COMPANY (JR-28) LTD
ANTHRACITE BALANCED COMPANY (JR-33) LTD
ANTHRACITE BALANCED COMPANY (JR-34) LTD
ANTHRACITE BALANCED COMPANY (JR-35) LTD
ANTHRACITE BALANCED COMPANY (JR-40) LTD
ANTHRACITE BALANCED COMPANY (JR-42) LTD
ANTHRACITE BALANCED COMPANY (JR46)
ANTHRACITE BALANCED COMPANY (JR-47)
ANTHRACITE BALANCED COMPANY (JR48)
ANTHRACITE BALANCED COMPANY (JR-49)
ANTHRACITE BALANCED COMPANY (JR-50) LIMITED
ANTHRACITE BALANCED COMPANY (JR-51) LIMITED
ANTHRACITE BALANCED COMPANY (JR-53) LIMITED
ANTHRACITE BALANCED COMPANY (JR-54) LIMITED
ANTHRACITE BALANCED COMPANY (JR-57) LIMITED
ANTHRACITE BALANCED COMPANY (JR-58) LIMITED
ANTHRACITE BALANCED COMPANY (JR-59) LIMITED
ANTHRACITE BALANCED COMPANY (JR-60) LIMITED
ANTHRACITE BALANCED COMPANY (JR-8) LTD
ANTHRACITE BALANCED COMPANY (JR-9) LTD
ANTHRACITE BALANCED COMPANY (LBGDF3) LTD
ANTHRACITE BALANCED COMPANY (LIBGDF) LTD
ANTHRACITE BALANCED COMPANY (ODSF) LTD
ANTHRACITE BALANCED COMPANY (R-10) LTD
ANTHRACITE BALANCED COMPANY (R-20) LTD
ANTHRACITE BALANCED COMPANY (R-22)
ANTHRACITE BALANCED COMPANY (R-23) LIMITED
ANTHRACITE BALANCED COMPANY (R-24) LIMITED
ANTHRACITE BALANCED COMPANY (R-25) LIMITED
ANTHRACITE BALANCED COMPANY (R-26) LIMITED
ANTHRACITE BALANCED COMPANY (R-5) LTD
ANTHRACITE BALANCED COMPANY (R-7) LTD
ANTHRACITE BALANCED COMPANY (SWISSCA) LTD
ANTHRACITE BALANCED COMPANY IR-19
ANTHRACITE CFO ISSUER NO. 1 LTD
ANTHRACITE FEEDER COMPANY (JR-4) LTD
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 1)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 10)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 12)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 17)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 18)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 23)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 26)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 27)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 7)
ANTHRACITE INVESTMENTS (CAYMAN ) LTD
ANTHRACITE INVESTMENTS (IRELAND) PLC
ANTHRACITE MASTER CO (2) LTD
ANTHRACITE MASTER COMPANY (4) LTD
ANTHRACITE RATED INVESTMENTS (CAYMAN) LTD

ANTHRACITE RATED INVESTMENTS (JERSEY) LTD
ANTHRACITE RATED INVESTMENTS (JR-14) LTD
ANTHRACITE RATED INVESTMENTS (R-15) LTD
ANTHRACITE RATED INVESTMENTS JERSEY SERIES 45
ANTHRACITE REFERENCE COMPANY (12)  LTD
ANTHRACITE REFERENCE COMPANY (23) LTD
AQUAMARINE FINANCE PLC SERIES 2004-1
AQUAMARINE FINANCE PLC SERIES 2004-2
AQUAMARINE FINANCE PLC SERIES 2007-1
ARES ENHANCED LOAN INVESTMENT STRATEGY II LTD
ARES IIR CLO LTD
ARES IX CLO LTD
ARES VIII CLO LTD
ARES VIR CLO LTD
ARES X CLO LIMITED
ARES XII CLO LTD
ARG FUNDING CORP SERIES 2005-1B
ARG FUNDING CORP SERIES 2005-2A
ARG FUNDING CORP SERIES 2005-2B
ASPEN AMBROSE LIMITED
ASPEN BELL LIMITED
ASPEN LUCIAN LIMITED
ASPEN NOAH LIMITED
ASTREA LLC
ATLANTIC INTERNATIONAL FINANCE LTD SERIES 1
ATRIUM CDO LTD
ATRIUM III CLO LTD
AVIV LCDO 2006-1 LIMITED
AVIV LCDO 2006-2 LIMITED
BALBOA CDO I LTD
BALLYROCK ABS CDO 2007-1 LTD
BANYAN TREE 2004-1 LTD
BARTON SPRINGS CDO LIMITED SPC SERIES 2005-1
BARTON SPRINGS CDO LIMITED SPC SERIES 2005-2
BELLE HAVEN ABS CDO 2005-1 LTD
BELLE HAVEN ABS CDO 2006-1
BERICA 6 RESIDENTIAL MBS S.R.L.
BERYL FINANCE LIMITED SERIES 2005-10
BERYL FINANCE LIMITED SERIES 2005-11
BERYL FINANCE LIMITED SERIES 2005-12
BERYL FINANCE LIMITED SERIES 2005-14
BERYL FINANCE LIMITED SERIES 2005-15
BERYL FINANCE LIMITED SERIES 2005-16
 BERYL FINANCE LIMITED SERIES 2005-7
BERYL FINANCE LIMITED SERIES 2006-12
BERYL FINANCE LIMITED SERIES 2006-13
BERYL FINANCE LIMITED SERIES 2006-14
BERYL FINANCE LIMITED SERIES 2006-15
BERYL FINANCE LIMITED SERIES 2006-16
BERYL FINANCE LIMITED SERIES 2006-17

BERYL FINANCE LIMITED SERIES 2006-2
BERYL FINANCE LIMITED SERIES 2006-4
BERYL FINANCE LIMITED SERIES 2006-5
BERYL FINANCE LIMITED SERIES 2006-6
BERYL FINANCE LIMITED SERIES 2007-1
BERYL FINANCE LIMITED SERIES 2007-10
BERYL FINANCE LIMITED SERIES 2007-11
BERYL FINANCE LIMITED SERIES 2007-13
BERYL FINANCE LIMITED SERIES 2007-14
BERYL FINANCE LIMITED SERIES 2007-15
BERYL FINANCE LIMITED SERIES 2007-16
BERYL FINANCE LIMITED SERIES 2007-17
BERYL FINANCE LIMITED SERIES 2007-18
BERYL FINANCE LIMITED SERIES 2007-19
BERYL FINANCE LIMITED SERIES 2007-2
BERYL FINANCE LIMITED SERIES 2007-3
BERYL FINANCE LIMITED SERIES 2007-4
BERYL FINANCE LIMITED SERIES 2007-5
BERYL FINANCE LIMITED SERIES 2007-7
BERYL FINANCE LIMITED SERIES 2007-8
BERYL FINANCE LIMITED SERIES 2007-9
BERYL FINANCE LIMITED SERIES 2008-1
BERYL FINANCE LIMITED SERIES 2008-10
BERYL FINANCE LIMITED SERIES 2008-11
BERYL FINANCE LIMITED SERIES 2008-12
BERYL FINANCE LIMITED SERIES 2008-13
BERYL FINANCE LIMITED SERIES 2008-14
BERYL FINANCE LIMITED SERIES 2008-15
BERYL FINANCE LIMITED SERIES 2008-16
BERYL FINANCE LIMITED SERIES 2008-17
BERYL FINANCE LIMITED SERIES 2008-2
BERYL FINANCE LIMITED SERIES 2008-3
BERYL FINANCE LIMITED SERIES 2008-4
BERYL FINANCE LIMITED SERIES 2008-5
BERYL FINANCE LIMITED SERIES 2008-6
BERYL FINANCE LIMITED SERIES 2008-7
BERYL FINANCE LIMITED SERIES 2008-8
BERYL FINANCE LIMITED SERIES 2008-9
BERYL FINANCE LTD SERIES 2005-1
BERYL FINANCE LTD SERIES 2005-2
BERYL FINANCE LTD SERIES 2005-4
BERYL FINANCE LTD SERIES 2006-10
BERYL FINANCE LTD SERIES 2006-11
BLUE POINT CDO LIMITED SPC SERIES 2005-1
BLUE POINT CDO LIMITED SPC SERIES 2005-2
BLUESTEP FINANCE (NO2) LIMITED
BNC MORTGAGE LOAN TRUST, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-4
BOCCACCIO FINANCE PLC
BOSTON HARBOR CLO 2004-1 LIMITED
BPL CONSUMERS SRL

BRIARWOOD COMMERCIAL PAPER TRUST
BTDJM PHASE II ASSOCIATE
C.P.G. SOCIETA DI CARTOLARIZZAZIONE A R. L.
CALIFORNIA COUNTY TOBACCO SECU RITIZATION AGENCY - LOS ANGELES COUNTY (THE)
CALIFORNIA COUNTY TOBACCO SECURITIZATION AGENCY - PLACER COUNTY
CANYON CAPITAL CLO 2004-1 LTD
CAPSTAR COPLEY LLC
CARILLON LTD
CARLYLE EUROPE REAL ESTATE 2005-1
CARLYLE HIGH YIELD PARTNERS IX LTD
CARTESIO SRL
CBTC 2004-6
CEAGO ABS CDO 2007-1 LTD
CERT LINKED ALT STRUCTURES, SE RIES 2005-1 TRUST
CHAMPLAIN CLO LTD
CHERRY HILL CDO SPC 2007-1
CHERRY HILL CDO SPC 2007-2
CIF EUROMORTGAGE
CIF EUROMORTGAGE
CIRRUS CERT INDIA D LTD.
CIRRUS INVEST C LTD.
CIRRUS INVEST E LTD.
CIRRUS INVEST G LTD.
CIRRUS INVEST INDIA H LTD
CIRRUS INVEST K LTD
COMOROS INVESTMENTS SARL
COMPAGNIE DE FINANCEMENT FONCI ER (CFF)
COMPAGNIE D'INVESTISSEMENT DE PARIS
CONSECO FINANCE HOME EQUITY LOAN TRUST 2001-D
CONSECO FINANCE MANUFACTURED HOUSING SERIES 2001-4
CONSECO FINANCE MANUFACTURED HOUSING SERIES 2002-1
CONSUMER UNSECURED REPERFORMING LOANS (CURL) PLC
COPPER CREEK CDO
CORAL CP TRUST PROGRAM
CPT ASSET BACKED CERTIFICATES TRUST SER. 2004-EC1
CRIMSON COMMERCIAL PAPER TRUST
CROWN CITY CDO 2005-1 LTD
CROWN CITY CDO 2005-2 LTD
CSAM SYNDICATED LOAN FUND
CWABS 2007 SEA2
CWABS ASSET BACKED CERTS SERIES 2006-26
CWABS ASSET BACKED CERTS SERIES 2006-SD4
CWABS ASSET-BACKED CERTIFICATES TRUST 2007-12
CWABS ASSET-BACKED CERTIFICATES TRUST 2007-BC2
CWABS ASSET-BACKED CERTIFICATES, SERIES 2006-22
CWABS ASSET-BACKED CERTS SERIES 2007-6
CWABS ASSET-BACKED NOTES TRUST 2007-SD1
CWABS INC ASSET BACKED CERTS SERIES 2004-14
CWABS INC ASSET BACKED CERTS SERIES 2005-14
CWABS INC ASSET BACKED CERTS SERIES 2005-15

CWABS INC ASSET BACKED CERTS SERIES 2005-AB4
CWABS INC ASSET BACKED CERTS SERIES 2005-AB5
CWABS INC ASSET BACKED CERTS SERIES 2005-BC5
CWABS INC ASSET BACKED CERTS SERIES 2006-13
CWABS INC ASSET BACKED CERTS SERIES 2006-14
CWABS INC ASSET BACKED CERTS SERIES 2006-16
CWABS INC ASSET BACKED CERTS SERIES 2006-19
CWABS INC ASSET BACKED CERTS SERIES 2006-3
CWABS INC ASSET BACKED CERTS SERIES 2006-4
CWABS INC ASSET BACKED CERTS SERIES 2006-5
CWABS INC ASSET BACKED NOTES SERIES 2006-SD3
CWABS INC ASSET-BACKED CERTS SERIES 2006-BC2
CWALT 2007-OH3
CWALT ALTERNATIVE LOAN TRUST 2006-OC10
CWALT INC ALTERNATIVE LOAN TRUST 2006-OC6
CWALT INC ALTERNATIVE LOAN TRUST 2006-OC8
CWALT INC ALTERNATIVE LOAN TRUST 2007-OH2
CWALT INC MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-OC3
CWALT INC. ALTERNATIVE LOAN TRUST 2006-OC7
CWHEQ REVOLVING HOME EQUITY LOAN TRUST SERIES 2006-I
DAIKOKU DISTRIBUTION CENTER TMK
DAINI SAKURABASHI GODO KAISHA
DANTE FINANCE PLC
DEXIA MUNICIPAL AGENCY SA
DIADEM CITY CDO LIMITED 2005-1
DIADEM CITY CDO LIMITED SERIES 2008-1
DIADEM CITY CDO LIMITED SERIES 2008-2
DIADEM CITY CDO LIMITED SERIES 2008-3
DIAMOND FINANCE 2006-1
DIAMOND FINANCE 2006-2
DIAMOND FINANCE 2007-4
DIAMOND FINANCE 2008-1
DIAMOND FINANCE SERIES 2003-2
DIAMOND FINANCE SERIES 2003-2
DIAMOND FINANCE SERIES 2007 - 3A
DIAMOND FINANCE SERIES 2007-2
DIAMOND FINANCE SERIES 2007-3B
DIAMOND FINANCE SERIES 2007-5
DIAMOND FINANCE SERIES 2007-7
DIAMOND FINANCE SERIES 2007-8
DOW JONES CDX.NA.HY.3 TRUST 1 DECEMBER 2009
DOW JONES CDX.NA.HY.3 TRUST 2 DECEMBER 2009
DOW JONES CDX.NA.HY.3 TRUST 3 DECEMBER 2009
DOW JONES CDX.NA.HY.3 TRUST 4 DECEMBER 2009
EFG HELLAS PLC
EGYPT TRUST 1 - SERIES 2000 A
EMERALDS 2006-1
EMERALDS SERIES 2007-1 TRUST
EMERALDS SERIES 2007-3 TRUST
EMF NL 2008-2 BV

EMF-NL PRIME 2008-A.BV
ENCORE 2003-1
ENHANCED MORTGAGE BACKED SECURITIES FUND I LIMITED
ENHANCED MORTGAGE BACKED SECURITIES FUND IV LIMITED
ESP FUNDING I, LTD.
ESPRIT INTERNATIONAL LIMITED SERIES 1
ESPRIT INTERNATIONAL LIMITED SERIES 9
ESPRIT INTERNATIONAL LTD SERIE S 10
ESPRIT INTERNATIONAL LTD SERIES 11
EUROSAIL 2006-1 PLC
EUROSAIL 2006-2BL PLC
EUROSAIL 2006-3NC PLC
EUROSAIL 2006-4NP PLC
EUROSAIL -NL 2007-2 BV
EUROSAIL NL 2008-1 B.V
EUROSAIL PRIME-UK 2007 A PLC
EUROSAIL UK 2007 5NP PLC
EUROSAIL UK 2007 6NC PLC
EUROSAIL -UK-2008-1NP PLC
EUROSAIL-NL 2007-1 B.V.
EUROSAIL-UK 2007-1NC PLC
EUROSAIL-UK 2007-2NP PLC
EUROSAIL-UK 2007-3BL PLC
EUROSAIL-UK 2007-4BL PLC
EXCALIBUR FUNDING NO 1 PLC
EXUM RIDGE CBO 2006-1 LTD
EXUM RIDGE CBO 2006-2 LTD
EXUM RIDGE CBO 2006-4 LTD
EXUM RIDGE CBO 2006-5 LTD
EXUM RIDGE CBO 2007-1, LTD
EXUM RIDGE CBO 2007-2 LTD
FANNIE MAE REMIC 07-116
FANNIE MAE REMIC 08-46
FANNIE MAE REMIC TRUST 2007-103
FANNIE MAE REMIC TRUST 2007-88
FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8
FLATROCK TRUST
FNMA REMIC 08-53
FORD CREDIT AUTO OWNER TRUST 2007-B
FREEDOM PARK CDO LIMITED SPC SERIES 2005-1
FREMONT HOME LOAN TRUST 2006-E
FULLERTON DRIVE CDO LIMITED
G. K. ALSACE
G. K. ASOK
G. K. OAKMONT
G. K. VALLETTA
G.K. LOVINA
GALLEON LUXEMBOURG FUNDING SARL
GAZPROMBANK MORTGAGE BACKED SECURITIES SERIES 2007-2 CLASS A1
GEMSTONE CDO VI LTD

GENERIC CHINA PROTECTION 6
GENERIC EUROPE PROTECTION ELEVEN LTD.
GENERIC JAPAN PROTECTION A LTD.
GENERIC JAPAN PROTECTION B LTD.
GENERIC JAPAN PROTECTION C LTD.
GENERIC KOREA PROTECTION D LTD
GENERIC PROGRESSIVE TWO LTD
GENERIC PROTECTED CHINA FOUR LTD
GENERIC PROTECTION BIK E LTD
GENERIC PROTECTION BIK F LTD
GENERIC PROTECTION CHINA 5 LTD
GENERIC PROTECTION CHINA EIGHT LTD
GENERIC PROTECTION CHINA SEVEN LTD
GENERIC PROTECTION EUROPE NINE LTD
GENERIC PROTECTION EUROPE TEN LTD.
GENERIC PROTECTION INDIA TWELVE LTD.
GK DAVINCI RF1
GODO KAISHA BONDAI
GODO KAISHA CV6
GODO KAISHA KIWI
GOLDEN STATE TOBACCO SECURITIZATION CORPORATION
GPMF 06-AR8
GPMF 2007-AR1
GRANITE FINANCE 2007-1-C LTD
GRANITE FINANCE LIMITED SERIES 2005-9
GRANITE FINANCE LIMITED SERIES 2006-11
GRANITE FINANCE LIMITED SERIES 2006-6
GRANITE FINANCE LTD
GRANITE FINANCE LTD 2003-5
GRANITE FINANCE LTD 2003-6
GRANITE FINANCE LTD 2003-7
GRANITE FINANCE LTD 2004-1
GRANITE FINANCE LTD SERIES 2001-10
GRANITE FINANCE SPC 2008-1
GRANITE SERIES 2005-1
GRANITE SERIES 2005-10
GRANITE SERIES 2005-2
GRANITE SERIES 2005-3
GRANITE SERIES 2005-4
GRANITE SERIES 2005-5
GRANITE SERIES 2005-7
GREENBRIER YUGEN KAISHA
GREYSTONE CDO LIMITED SPC SERIES 2006-1
GREYSTONE CDO LIMITED SPC SERIES 2006-2
GREYSTONE CDO LIMITED SPC SERIES 2006-3
GREYSTONE CDO SPC SERIES 2008-4 SEGREGATED PORTFOLIO
GSC CAPITAL CORP MORTGAGE TRUST 2006-1
GSC EUROPEAN CDO I-R SA
GSC EUROPEAN CDO IV S.A
GSC EUROPEAN MEZZANINE LUXEMBOURG I SARL

GSC EUROPEAN MEZZANINE LUXEMBOURG II SARL
GSC EUROPEAN MEZZANINE LUXEMBOURG III SARL
GSEF AL NAWRAZ (CAYMAN) LIMITED
GSEF YAMAMA (CAYMAN) LIMITED
GSW GRUNDBESITZ GMBH & CO KG
GUADELETE INVESTMENTS S.A.R.L
GUAM ECONOMIC DEVELOPMENT AUTHORITY
GULF STREAM-COMPASS CLO 2003-1 LTD
GULF STREAM-COMPASS CLO 2004-1 LTD
GULF STREAM-COMPASS CLO 2005-1 LTD
GULFSTREAM - SEXTANT CLO 2006-1, LTD.
GULFSTREAM-COMPASS CLO-2005 II, LTD.
H/2 REAL ESTATE CDO 2006-1 LTD
H2001/PHIN GMBH & CO. KG
H21 ABSOLUTE RETURN CONCEPTS SPC ARC-B02-30140: H21 RESOURCES SP
HARBOURVIEW CDO III LIMITED
HDK PURCHASER TRUST
HHMI XVI LLC
HORIZON II INTERNATIONAL LTD SERIES 114
HORIZON II INTERNATIONAL LTD SERIES 115
HORIZON II INTERNATIONAL LTD SERIES 116
HORIZON II INTERNATIONAL LTD SERIES 121
HORIZON II INTERNATIONAL LTD SERIES 126
HORIZON II INTERNATIONAL LTD SERIES 130
HORIZON II INTERNATIONAL LTD SERIES 134
HORIZON II INTERNATIONAL LTD SERIES 135
HORIZON II INTERNATIONAL LTD SERIES 136
HORIZON II INTERNATIONAL LTD SERIES 145
HORIZON II INTERNATIONAL LTD SERIES 148
HORIZON II INTERNATIONAL LTD SERIES 158
HORIZON II INTERNATIONAL LTD SERIES 162
HORIZON II INTERNATIONAL LTD SERIES 178
HORIZON II INTERNATIONAL LTD SERIES 181
HORIZON II INTERNATIONAL LTD SERIES 183
HORIZON II INTERNATIONAL LTD SERIES 193
HORIZON II INTERNATIONAL LTD SERIES 207
HORIZON II INTERNATIONAL LTD SERIES 208
HORIZON II INTERNATIONAL LTD SERIES 211
HORIZON II INTERNATIONAL LTD SERIES 217
HORIZON II INTERNATIONAL LTD SERIES 219
HORIZON II INTERNATIONAL LTD SERIES 220
HORIZON II INTERNATIONAL LTD SERIES 221
HORIZON II INTERNATIONAL LTD SERIES 222
HORIZON II INTERNATIONAL LTD SERIES 223
HORIZON II INTERNATIONAL LTD SERIES 225
HORIZON II INTERNATIONAL LTD SERIES 226
HORIZON II INTERNATIONAL LTD SERIES 227
HORIZON II INTERNATIONAL LTD SERIES 228
HORIZON II INTERNATIONAL LTD SERIES 229
HORIZON II INTERNATIONAL LTD SERIES 230

HORIZON II INTERNATIONAL LTD SERIES 77
HT FINANZANLAGE LIMITED SERIES 13
I.E. JERSEY PROPERTY CO. NO.1 LTD
IEIL JAPAN CO., LTD.
IMPAC CMB TRUST SERIES 2003-11
IMPAC CMB TRUST SERIES 2004-04
IMPAC CMB TRUST SERIES 2004-05
IMPAC CMB TRUST SERIES 2004-08
IMPAC CMB TRUST SERIES 2004-10
IMPAC CMB TRUST SERIES 2005-03
IMPAC CMB TRUST SERIES 2005-04
IMPAC CMB TRUST SERIES 2005-05
IMPAC CMB TRUST SERIES 2005-08
IMPAC SECURED ASSETS TRUST 2006-3
IMPAC SECURED ASSETS TRUST 2007-3,  MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-3
IMSER SECURITISAT. GIA ISP III
ING INVESTMENT MANAGEMENT CLO I, LTD
ING INVESTMENT MANAGEMENT CLO II, LTD
ITALEASE FINANCE SPA
JASPER FINANCE LIMITED SERIES 2005-1
JEFFERSON VALLEY CDO LIMITED SPC SERIES 2006-1
JUPITER QUARTZ FINANCE PLC 2004-1 CLASS A
JUPITER QUARTZ FINANCE PLC 2004-1 CLASS B
JUPITER QUARTZ PLC 2004-2
KBC INVESTMENTS CAYMAN ISLANDS V LTD
KINGS RIVER LIMITED
KONA TMK
KP GERMANY ZWEITE GMBH
LAKEVIEW CDO 2007-2
LAKEVIEW CDO SPC 2007-1
LAKEVIEW CDO SPC 2007-3
LAKEVIEW CDO SPC SERIES 2007-4 SEGREGATED PORTFOLIO
LB COMMERCIAL TRUST 2007-C3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES
LB PERU TRUST II, 1998-A
LB-UBS COMMERCIAL MORTGAGE TRUST 2007-C6
LB-UBS COMMERCIAL MORTGAGE TRUST 2008-C1
LDVF1 FIP SARL
LDVF1 MAIN FIP SARL
LEEDS TMK
LEH MORTGAGE TRUST, SERIES 2007-6
LEHMAN ABS MANUFACTURED HOUSING CONTRACT TRUST 2002-A
LEHMAN BROTHERS CDO MEZZANINE FUND 2005-1, LTD
LEHMAN BROTHERS CDO OPPORTUNITY PARTNERS 2004-3 LP
LEHMAN BROTHERS SMALL BALANCE COMMERCIAL MORTGAGE TRUST 2007-2
LEHMAN MORTGAGE TRUST 2006-4
LEHMAN MORTGAGE TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-9
LEHMAN MORTGAGE TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-5
LEHMAN MORTGAGE TRUST, SERIES 2005-02
LEHMAN MORTGAGE TRUST, SERIES 2005-03

LEHMAN MORTGAGE TRUST, SERIES 2006-01
LEHMAN MORTGAGE TRUST, SERIES 2006-05
LEHMAN XS TRUST  MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-9
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-1
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-9N
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-13
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-15
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-17
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-19
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-6
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-7
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-10H
LIBERTY SQUARE CDO I LIMITED
LIBERTY SQUARE CDO II LIMITED
LIBRA CDO LIMITED
LION CITY CDO 2006-2 LTD
LION CITY CDO 2006-3 LTD
LION CITY CDO LIMITED SERIES 2006-1
LION CITY CDO LTD SERIES 2006-5
LION CREDIT OPPORTUNITY FUND PLC
L-JAC ONE SPECIAL PURPOSE COMPANY
LMT 2008-6
LOAN FUNDING III LLC
LUSITANO MORTGAGES NO. 5 PLC
LXS 2006-10N
LXS 2006-16N
LXS 2006-18N
MADISON AVENUE CDO I LTD
MADISON AVENUE STRUCTURED FINANCE CDO I, LIMITED
MALACHITE 2006-1 TRUST
MARSEILLE REPUBLIQUE SAS
MCDONNELL LOAN OPPORTUNITY LTD
MERLIN FINANCE SA
MICROACCESS TRUST 2007
MINIBOND LIMITED SERIES 1
MINIBOND LIMITED SERIES 10
MINIBOND LIMITED SERIES 2
MINIBOND LIMITED SERIES 3
MINIBOND LIMITED SERIES 5
MINIBOND LIMITED SERIES 6
MINIBOND LIMITED SERIES 7
MINIBOND LIMITED SERIES 8
MINIBOND LIMITED SERIES 9
MKP VELA CBO LTD
MONROE TOBACCO ASSET SECURIZATION CORPORATION
MT WILSON CLO II LTD
MUNICIPAL ASSET SECURITIZATION TRUST SECURITIES, SERIES 2008-1 TRUST
MURSUK GRUNDSTUCKS-VERWALTUNGSGESELLS CHAFT MBH

MUSTIQUE 2007-1 A2A
MUSTIQUE 2007-1 A2B
MUSTIQUE 2007-1 B
MUSTIQUE 2007-1 C
MUSTIQUE 2007-1 D
MUSTIQUE 2007-1 E
NATIONALE-NEDERLANDEN INTERFINANCE BV
NATIXIS ABM LLC
NEW ALLIANCE GLOBAL CDO LIMITED
NEWTON RE LIMITED
NOMURA HOME EQUITY LOAN INC HOME EQUITY LOAN TRUST SERIES 2007-3
NORTHWOODS CAPITAL VII LTD
OAK HILL CREDIT PARTNERS IV LIMITED
ONE MADISON INVESTMENTS (CAYCO) LIMITED
ONYX FINANCE LIMITED
ONYX FUNDING LIMITED 2004-1
ONYX FUNDING LIMITED SERIES 2006-1
ONYX FUNDING LTD 2005-1
ONYX FUNDING LTD SERIES 2008-1
OPTION ONE MORTGAGE E LOAN TRUST 2007-5
OPTION ONE MORTGAGE LOAN TRUST 2007-1
OPTION ONE MORTGAGE LOAN TRUST 2007-3
OPTION ONE MORTGAGE LOAN TRUST 2007-4
ORKNEY TOKUTEI MOKUTEKI KAISHA
OSCART INTERNATIONAL LIMITED
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 10
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 11
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 15
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 17
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 18
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 19
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 21
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 22
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 25
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 9
PACIFIC INTERNATIONAL FINANCE LTD SERIES 12
PACIFIC INTERNATIONAL FINANCE LTD SERIES 16
PACIFIC INTERNATIONAL FINANCE LTD SERIES 20
PACIFIC INTERNATIONAL FINANCE LTD SERIES 23
PACIFIC INTERNATIONAL FINANCE LTD SERIES 26
PACIFIC INTERNATIONAL FINANCE LTD SERIES 27
PACIFIC INTERNATIONAL FINANCE LTD SERIES 28
PACIFIC INTERNATIONAL FINANCE LTD SERIES 29
PACIFIC INTERNATIONAL FINANCE LTD SERIES 30
PACIFIC INTERNATIONAL FINANCE LTD SERIES 31
PACIFIC INTERNATIONAL FINANCE LTD SERIES 32
PACIFIC INTERNATIONAL FINANCE LTD SERIES 33
PACIFIC INTERNATIONAL FINANCE LTD SERIES 34
PACIFIC INTERNATIONAL FINANCE LTD SERIES 35
PACIFIC INTERNATIONAL FINANCE LTD SERIES 36

PANTERA VIVE CDO LIMITED SPC SERIES 2007-1
PARAMOUNT GLOBAL LIMITED
PARIS PRIME COMMERCIAL REAL ESTATE FCC
PEARL FINANCE PLC SERIES 2005-1
PEARL FINANCE SERIES 2003-1
PEARL FINANCE SERIES 2003-4
PEARL FINANCE SERIES 2003-5
PEARL FINANCE SERIES 2003-6
PEARL FINANCE SERIES 2003-8
PEARL FINANCE SERIES 2003-9
PEBBLE CREEK 2007-3 LIMITED
PEBBLE CREEK LCDO 2006-1 LTD
PEBBLE CREEK LCDO 2007-2 LTD
PENNS LANDING CDO 2007-1
PETRAECA FINANCE PLC
PHOENIX F1 NEUBRANDENBURGSTRASSE
PHOENIX II MIXED L
PHOENIX III MIXED U
PHOENIX SERIES 2002-1
PHOENIX SERIES 2002-2
PICASSO INVESTMENTS 1 LIMITED
PINYON TREE 2005-1
PORTFOLIO CDS TRUST 103 - SARATOGA
PORTFOLIO CDS TRUST 104 - AMMC
PORTFOLIO CDS TRUST 105 - STANFIELD VEYRON
PORTFOLIO CDS TRUST 162
PORTFOLIO CDS TRUST 18
PORTFOLIO CDS TRUST 187
PORTFOLIO CDS TRUST 191
PORTFOLIO CDS TRUST 192
PORTFOLIO CDS TRUST 193
PORTFOLIO CDS TRUST 194
PORTFOLIO CDS TRUST 195
PORTFOLIO CDS TRUST 196
PORTFOLIO CDS TRUST 208
PORTFOLIO CDS TRUST 209
PORTFOLIO CDS TRUST 210
PORTFOLIO CDS TRUST 211
PORTFOLIO CDS TRUST 212
PORTFOLIO CDS TRUST 213
PORTFOLIO CDS TRUST 214
PORTFOLIO CDS TRUST 233
PORTFOLIO CDS TRUST 234
PORTFOLIO CDS TRUST 235
PORTFOLIO CDS TRUST 236
PORTFOLIO CDS TRUST 237
PORTFOLIO CDS TRUST 238
PORTFOLIO CDS TRUST 239
PORTFOLIO CDS TRUST 240
PORTFOLIO CDS TRUST 241

PORTFOLIO CDS TRUST 242
PORTFOLIO CDS TRUST 243
PORTFOLIO CDS TRUST 244
PORTFOLIO GREEN GERMAN CMBS GMBH
POSILLIPO FINANCE II S.R.L.
POSILLIPO FINANCE S.R.L.
PRIMUS FINANCIAL PRODUCTS LLC
PUMICE INVESTMENTS (NETHERLANDS) BV
PYXIS ABS CDO 2007-1 LTD
PYXIS FINANCE LTD
QUARTZ FINANCE 2003-1
QUARTZ FINANCE 2003-4
QUARTZ FINANCE 2003-5
QUARTZ FINANCE 2004-1
QUARTZ FINANCE 2005-1
QUARTZ FINANCE 2005-2
QUARTZ FINANCE LIMITED
QUARTZ FINANCE SERIES 2003-3
RACE POINT IV CLO LTD
RACERS 2000-19-C HILTON
RACERS 2000-22-A UBS
RACERS 2000-24-A HSBC
RACERS 2001-13-C
RACERS 2001-6-S-BLS
RACERS 2002-10-TR
RACERS 2002-45-L
RACERS 2003-07-A CITI
RACERS 2004-25-TR
RACERS 2004-26-E
RACERS 2004-27-E
RACERS 2005-03-TR
RACERS 2005-06-A
RACERS 2005-10-C
RACERS 2005-13-C
RACERS 2005-19-C
RACERS 2005-21-C
RACERS 2006-15-A
RACERS 2006-16-TR
RACERS 2006-18-C ABX-A-06-1-I
RACERS 2006-18-C ABX-A-06-1-II
RACERS 2006-18-C ABX-A-06-1-III
RACERS 2006-18-C ABX-A-06-2-I
RACERS 2006-18-C ABX-A-06-2-II
RACERS 2006-18-C ABX-A-06-2-III
RACERS 2006-1-C
RACERS 2006-20-AT
RACERS 2007-4-C FTD
RACERS 2008-2-C
RACERS 2008-3-C
RACERS 2008-5-A

RACERS 2008-6-TR
RACERS SERIES 2002-20
RACERS SERIES 2002-26
RACERS SERIES 2002-39
RACERS-2007-5-TRS
RADIAN CREDIT LINKED TRUST 2003-1
RELATIONSHIP FUNDING COMPANY LLC
REPACKAGED AMERICAN GENERAL FRTC 2003-1
RESIDENTIAL ASSET SECURITIZATION TRUST 2006-A15
RMB LEVERAGED (CAYMAN) LTD
ROBANIA CDO LIMITED
ROBECO CDO VII LIMITED
ROBECO CREDIT LIMITED
RRR LOAN FUNDING TRUST
RUBY FINANCE 2003-4
RUBY FINANCE 2004-2
RUBY FINANCE 2004-3
RUBY FINANCE 2005-1
RUBY FINANCE 2006-2
RUBY FINANCE 2006-3
RUBY FINANCE 2006-4
RUBY FINANCE 2006-5
RUBY FINANCE 2006-7
RUBY FINANCE 2007-1
RUBY FINANCE 2007-3
RUBY FINANCE 2007-6
RUBY FINANCE 2007-7
RUBY FINANCE 2008-01
RUBY FINANCE PLC 2007-2
S&P LICENSING FEE
SACHER FUNDING LTD.
SAGAMORE CLO LTD
SAIL 2005-1
SAIL 2005-2
SAIL ASSOCIATES, LLC
SAPHIR FINANCE 2006-6
SAPHIR FINANCE 2006-8
SAPHIR FINANCE PLC 2004-11
SAPHIR FINANCE PLC 2004-12
SAPHIR FINANCE PLC 2004-2
SAPHIR FINANCE PLC 2004-4
SAPHIR FINANCE PLC 2004-5
SAPHIR FINANCE PLC 2004-7
SAPHIR FINANCE PLC 2005-11
SAPHIR FINANCE PLC 2005-1
SAPHIR FINANCE PLC 2005-10
SAPHIR FINANCE PLC 2005-12
SAPHIR FINANCE PLC 2005-3
SAPHIR FINANCE PLC 2005-4
SAPHIR FINANCE PLC 2005-7

SAPHIR FINANCE PLC 2006-1
SAPHIR FINANCE PLC 2006-10
SAPHIR FINANCE PLC 2006-11
SAPHIR FINANCE PLC 2006-2
SAPHIR FINANCE PLC 2006-3
SAPHIR FINANCE PLC 2006-4
SAPHIR FINANCE PLC 2006-5
SAPHIR FINANCE PLC 2007-1
SAPHIR FINANCE PLC 2007-2
SAPHIR FINANCE PLC 2007-4
SAPHIR FINANCE PLC 2007-5
SAPHIR FINANCE PLC 2007-7
SAPHIR FINANCE PLC 2007-9
SAPHIR FINANCE PLC 2008-1
SAPHIR FINANCE PLC SERIES 2008-10
SAPHIR FINANCE PLC SERIES 2008-11
SAPHIR FINANCE PLC SERIES 2008-12
SAPHIR FINANCE PLC SERIES 2008-13
SAPHIR FINANCE PLC SERIES 2008-6
SAPHIR FINANCE PLC SERIES 2008-7
SAPHIR FINANCE PLC SERIES 2008-8
SAPHIR FINANCE PLC SERIES 2008-9
SAPPHIRE COMMERCIAL PAPER TRUST
SAPPORO NISHIMACHI YUGEN GAISYA
SARATOGA CLO I LTD
SARM 2006-11
SARM 2006-12
SARM 2007-1
SARM 2007-2
SARM 2007-3
SARM 2008-1
SARM 2008-1B
SARM LOAN TRUST SERIES 2004-18
SARM LOAN TRUST SERIES 2005-1
SARM NIM1 2005 -19XS
SASCO 2002-NP1
SASCO 2003-NP1
SASCO 2005-NC1
SASCO 2005-RF1
SASCO 2005-RF2
SASCO 2005-RF3
SASCO 2005-RF4
SASCO 2005-WF1
SASCO 2008-1
SASCO NIM 2005-9XS
SASCO SERIES 2005-RF6
SASCO SERIES 2006 RF-2
SASCO SERIES 2006 RF-4
SASCO SERIES 2007 RF-1
SASCO SERIES 2007 RF-2

SASCO SERIES 2008 RF-1
SASCO, SERIES 2005-RF5
SCHILLER PARK CLO
SEALINK FUNDING LIMITED
SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A1
SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A2
SEGREGATED PORTFOLIO SPRC D-FORCE LLC SERIES 2007-1
SEQUOIA FUNDING LIMITED SERIES 1998-2
SGS HY CREDIT FUND 1 (EXUM RIDGE CBO 2006-3) LTD
SIRIUS INTERNATIONAL LIMITED SERIES 11
SIRIUS INTERNATIONAL LTD SERIES 13
SIRIUS INTERNATIONAL LTD SERIES 16
SLB LEASING-FONDS GMBH&CO. THOR KG
SLB LEASING-FONDS GMBH&CO. URANUS KG
SLM STUDENT LOAN TRUST 2004-1
SOCIETA' DI CARTOLARIZZAZIONE ITALIANA CREDITI A RESPONSABILITA'
SOCIETE CIVILE IMMOBILIERE KARANIS
SOCIETE IMMOBILIERE PRIVAT
SOLAR INVESTMENT GRADE CBO I
SOLAR INVESTMNT GRADE CBO II
SOLAR V CDO
SOUTHPORT CLO LTD
SPEEDWAY ASSOCIATES L.L.C
STANFIELD MODENA CLO
STANFIELD VANTAGE CLO LTD
STANFIELD VEYRON CLO LTD
STATE SUPER FINANCIAL SERVICES LIMITED
STONY HILL CDO III LIMITED
STONY HILL CDO SPC SERIES 2005-1
STOWE CDO LIMITED SPC SERIES 2006-1
STOWE CDO SPC SERIES 2008-1 SEGREGATED PORTFOLIO
STOWE CDO SPC SERIES 2008-2A SEGREGATED PORTFOLIO
STRUCTURED ADJUSTABLE RATE MORG LNTR SER 2004-10
STRUCTURED ADJUSTABLE RATE MORTGAGE LNTR 2004-9XS
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN 2004-12
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TR 2004-8
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRST SER 2004-20
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST SER 2004-16
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST SER 2004-6
STRUCTURED ADJUSTABLE RATE MORTGAGE SERIES 2004-14
STRUCTURED ASSET INVESTMENT LOAN TRUST 2004-4
STRUCTURED ASSET RECEIVABLES TRUST SERIES 2003-1
STRUCTURED ASSET RECEIVABLES TRUST, SERIES 2003-2
STRUCTURED ASSET RECEIVABLES TRUST, SERIES 2004-1
STRUCTURED ASSET SEC CORPREF SARM 2008-2
STRUCTURED ASSET SECURITES CORPORATION PASS-THROUGH CERTIFICATES, SERIES 2007-4
STRUCTURED ASSET SECURITIES CORPORATION 2003-37A
STRUCTURED ASSET SECURITIES CORPORATION 2003-NP3

STRUCTURED ASSET SECURITIES CORPORATION 2004-23XS
STRUCTURED ASSET SECURITIES CORPORATION 2005-RF7
STRUCTURED ASSET SECURITIES CORPORATION 2006-RF1
STRUCTURED ASSET SECURITIES CORPORATION BNC SERIES 2007-1 (SASCO)
STRUCTURED ASSET SECURITIES CORPORATION BNC SERIES 2007-BC2 (SASCO)
STRUCTURED ASSET SECURITIES CORPORATION BNC SERIES 2007-BNC1
STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TR 2004-NP2
STRUCTURED ASSET SECURITIES CORPORATION SERIES 2007-EQ1 (SASCO)
STRUCTURED ASSET SECURITIES CORPORATION SERIES 2007-OSI SASCO
STRUCTURED ASSET SECURITIES CORPORATION SERIES 2007-SC1 (SASCO)
SUMMER STREET 2005-HG1 LTD
SUNSET PARK CDO LIMITED SPC SERIES 2004-1
SUNSET PARK CDO LIMITED SPC SERIES 2004-2
SUNSET PARK CDO LIMITED SPC SERIES 2004-4
SUNSET PARK CDO LIMITED SPC SERIES 2005-3
SUNSET PARK CDO LIMITED SPC SERIES 2005-5
SUNSET PARK CDO LIMITED SPC SERIES 2005-6
SUNSUPER PTY LTD CURRENCY OVERLAY
SWIFT MASTER AUTO RECEIVABLES TRUST
TAVARES SQUARE CDO LIMITED
TAYLOR CREEK LIMITED
THE SERIES 2007-1 TABXSPOKE SEGREGATED PORTFOLIO
THETA CORPORATION
TIAA STRUCTURED FINANCE CDO I LIMITED
TIZIAN WOHNEN 1 GMBH
TLLB2002 INTERNATIONAL LIMITED SERIES 6
TMK GOLDEN CHILD PROPERTY
TOBACCO ASSET SECURITIZATION CORPORATION
TOBACCO SETTLEMENT AUTHORITY
TOBACCO SETTLEMENT FINANCE CORPORATION - LOUISIANA
TOBACCO SETTLEMENT FINANCE CORPORATION - NEW JERSEY
TOBACCO SETTLEMENT FINANCE CORPORATION - NEW YORK
TOBACCO SETTLEMENT FINANCE CORPORATION - OHIO
TOBACCO SETTLEMENT FINANCING CORPORATION VIRGINIA
TOPAZ FINANCE LTD 2005-1
TOPAZ FINANCE LTD 2005-2
TORANOMON INVESTMENTS TMK
TORRE RE FUND I
TRADEWINDS II CDO LIMITED SPC SERIES 2006-1
VERDE CDO LTD (SEG AC CDS ONLY)
VOX PLACE CDO LIMITED
WAVELAND INGOTS LTD
WELLS FARGO MORTGAGE BACKED SECURITIES 2008-AR2 TRUST
WH2005 / NIAM III EAST HOLDING OY
WHITE MARLIN CDO 2007-1 LIMITED
WILLOW RE LTD
WINDERMERE IX CMBS (MULTIFAMILY) S.A.
WINDERMERE PRIVATE PLACEMENT I S.A.
WINDERMERE VI CMBS PLC
WINDERMERE X CMBS LIMITED

WINDERMERE XIV CMBS LIMITED
Y. K. AKASAKA INTERNATIONAL
Y.K. TRENCH
YAESU FIVE TMK
ZIRCON FINANCE  2007-5
ZIRCON FINANCE 2007-6
ZIRCON FINANCE LIMITED SERIES 2007-10
ZIRCON FINANCE LIMITED SERIES 2007-11
ZIRCON FINANCE LIMITED SERIES 2007-3
ZIRCON FINANCE LIMITED SERIES 2007-9
ZIRCON FINANCE LTD SERIES 2007-1
ZIRCON FINANCE LTD SERIES 2007-12
ZIRCON FINANCE LTD SERIES 2007-13
ZIRCON FINANCE LTD SERIES 2007-14
ZIRCON FINANCE LTD SERIES 2007-15
ZIRCON FINANCE LTD SERIES 2007-16
ZIRCON FINANCE LTD SERIES 2007-17
ZIRCON FINANCE LTD SERIES 2007-18
ZIRCON FINANCE LTD SERIES 2007-19
ZIRCON FINANCE LTD SERIES 2007-2
ZIRCON FINANCE LTD SERIES 2007-8
ZWINGER OPCO 6 BV

## SCHEDULE B

### Natixis Representatives

Ken Wormser
Ralph Inglese
David Powar
Michael Hopson
William Fischer
Lorraine Medvecky
David Duncan
Ninat Lekagul
Joseph Di Prospero
Aimee Means
Dan Strong
Naz Majidi
Mark David
Abhishek Shukla
Craig Reckin
Greg Chow
Marianne Medora
Joe Falcone
Adam True

**<u>Exhibit E</u>**

**November 25, 2008 Letter from Lori Fife to U.S. Bank Corporate Trust Services –
CDO Group**

## WEIL, GOTSHAL & MANGES LLP

767 FIFTH AVENUE

NEW YORK, NY 10153

(212) 310-8000

FAX: (212) 310-8007

AUSTIN
BOSTON
BUDAPEST
DALLAS
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW
WASHINGTON, D.C.

LORI R. FIFE
DIRECT LINE (212) 310-8318
E-MAIL: lori.fife@weil.com

November 25, 2008

## BY FEDERAL EXPRESS, FACSIMILE AND ELECTRONIC MAIL

U.S. Bank Corporate Trust Services – CDO Group
1 Federal Street
3rd Floor
Boston, Massachusetts  02110
Attention:  Dawn M. Zanotti
Facsimile:  (866) 350-1440
dawn.zanotti@usbank.com

Ladies and Gentlemen:

We represent Lehman Brothers Special Financing Inc. ("LBSF") and certain of its related debtor affiliates in their Chapter 11 proceedings in the Bankruptcy Court for the Southern District of New York.  We are contacting you in your capacity as trustee with respect to certain transactions listed in Schedule A hereto (the "Transactions") as to which LBSF or an affiliate thereof (other than Lehman Brothers Inc.) is a party (in such capacity, the "Swap Counterparty" and collectively, the "Swap Counterparties") under certain swap agreements relating to these Transactions.  Reference is made to (i) those certain ISDA Master Agreements (together with any schedules, credit support annexes, and confirmations thereto, the "Swap Agreements") between the relevant issuers in such Transactions (collectively, the "Issuers") and the relevant Swap Counterparties, and (ii) any other transaction documents relating to the Transactions (together with the Swap Agreements, collectively, the "Transaction Documents").

We hereby request that you provide us with the following documents and information as soon as possible:

a.  any notices received or given by or on behalf of you or the Issuers in connection with the Transactions from January 1, 2008 to and including the date hereof, including, but not limited to, notices concerning any

WEIL, GOTSHAL & MANGES LLP

November 25, 2008
Page 2

        purported event of default, termination event, termination, acceleration of notes, liquidation of assets, or distribution of proceeds thereof;

b.  a description (including dates and names of parties) of all remedies purported to be exercised pursuant to the Transaction Documents and all actions taken in connection therewith by any party in connection with the Transactions from January 1, 2008 to and including the date hereof; and

c.  all reports delivered to any party pursuant to the Transaction Documents, including, but not limited to, trustee reports, periodic reports, and valuation reports, from January 1, 2008 to and including the date hereof.

In addition, we hereby give you notice that:

1.    with respect to a number of Transactions, we have received termination notices that are defective;

2.    we believe that any actions that may have been taken by you or on behalf of any Issuer pursuant to the Transaction Documents other than the Swap Agreements on or after September 15, 2008, including any remedies purported to be exercised thereunder, may be subject to the automatic stay provisions of Section 362 of the Bankruptcy Code. Accordingly, we believe that any such actions taken by you or on behalf of any such Issuer may have been in violation of such provisions and, therefore, such actions would be null and void. In addition, we believe that any future actions taken by you or on behalf of any such Issuer pursuant to the Transaction Documents other than the Swap Agreements may also be subject to the automatic stay; and

3.    we believe that any provisions of any Transaction Documents purporting to subordinate any amounts payable to any Swap Counterparty would not be enforceable, and any effort to apply such provisions under the present circumstances would be unlawful.

Therefore, based upon the foregoing, we hereby demand that you immediately cease and desist from taking any further actions pursuant to the Transaction Documents, including, but not limited to, exercising any remedies thereunder, and to contact us to discuss these matters.

Please note that all notices and correspondence to Lehman Brothers Special Financing Inc. should forthwith be sent to the following addresses:

        Lehman Brothers Special Financing Inc.
        1271 Avenue of the Americas
        43rd Floor
        New York, New York  10020
        Attention:  Vincent DiMassimo

WEIL, GOTSHAL & MANGES LLP

November 25, 2008
Page 3

>Telephone:  (646) 333-6032
>Facsimile:  (646) 758-1811

>with copies to:

>Lehman Brothers Special Financing Inc.
>1271 Avenue of the Americas
>43rd Floor
>New York, New York  10020
>Attention:  Locke McMurray, Esq.
>Telephone:  (212) 526-7186
>Facsimile:  (646) 758-2634

>Lehman Brothers Special Financing Inc.
>1271 Avenue of the Americas
>45th Floor
>New York, New York  10020
>Attention:  Chief Financial Officer

>and

>Weil, Gotshal & Manges LLP
>767 Fifth Avenue
>New York, New York  10153
>Attention:  Robert J. Lemons, Esq.
>Telephone:  (212) 310-8924
>Facsimile:  (212) 310-8007

>with an additional copy via electronic mail to:

>LBHISPVNotices@lehman.com

In addition, Lehman Brothers Special Financing Inc. has retained Natixis Capital Markets Inc. ("Natixis") as its adviser and you are hereby directed to respond to any questions or requests relating to the Transactions from any individuals listed on Schedule B hereto (the "Approved List", as such list may be updated from time to time by a notice from Natixis to you) and to provide all information relating to the Transactions requested by any individuals on the Approved List.  For the avoidance of doubt, Natixis is not an agent of LBSF or any of its related debtor affiliates.

WEIL, GOTSHAL & MANGES LLP

November 25, 2008
Page 4

      We reserve all rights and remedies of each Swap Counterparty and the related credit support provider under the Swap Agreements, the Transaction Documents, and applicable law and will hold the Trustee accountable for any breaches of such rights.

Very truly yours,

Lori R. Fife

cc:    Martin Winter (via e-mail: mwinter@alvarezandmarsal.com) (Alvarez & Marsal, LLC)
       Ken Wormser (via e-mail: ken.wormser@cm.natixis.com) (Natixis Capital Markets Inc.)

## SCHEDULE A

801 GRAND CDO SPC SERIES 2006-1
801 GRAND CDO SPC SERIES 2006-2
81 VH HOLDING SARL
A.L.L STRUCTURED CAPITAL MANAGEMENT LTD.
A-CAMPUS BRAUNSCHWEIG SARL
ACCESS GROUP INC SERIES 2005-A
ACCESS GROUP INC SERIES 2005-B
ACCESS GROUP SERIES 2007-A
ADAGIO III CLO PLC
AIRLIE CDO I LIMITED
AIRLIE LCDO I (AVIV LCDO 2006-3)  LIMITED
AIRLIE LCDO II (PEBBLE CREEK 2007-1), LTD.
AJAX RE LIMITED
ALLIANCE LAUNDRY EQUIPMENT RECEIVABLES TR 2005-A
ALPHA MEZZ CDO 2007-1, LTD.
ALTA CDO 2007-1 LTD
ALTA CDO SPC SERIES 2007-2 SEGREGATED PORTFOLIO
ALTERNATIVE MULTI-STRATEGY FUND LTD (THE)
AMBER FINANCE LTD
AMERICREDIT 2005-B-M
AMERICREDIT AUTOMOBILE RECEIVABLES TRUST 2007-D-F
AMMC CLO III LTD
AMMC CLO IV LTD
AMMC CLO V LTD
AMMC CLO VI LTD
ANGLIOLIERI FINANCE PLC
ANTHRACITE BALANCE COMPANY (DIS 1) LTD
ANTHRACITE BALANCED COMPANY (32) LTD
ANTHRACITE BALANCED COMPANY (36) LTD
ANTHRACITE BALANCED COMPANY (40) LTD
ANTHRACITE BALANCED COMPANY (41) LTD
ANTHRACITE BALANCED COMPANY (44) LTD
ANTHRACITE BALANCED COMPANY (46) LIMITED
ANTHRACITE BALANCED COMPANY (50) LIMITED
ANTHRACITE BALANCED COMPANY (7) LTD
ANTHRACITE BALANCED COMPANY (AWF) LTD
ANTHRACITE BALANCED COMPANY (BPI) LTD
ANTHRACITE BALANCED COMPANY (GMN) LTD
ANTHRACITE BALANCED COMPANY (HFRX) LTD
ANTHRACITE BALANCED COMPANY (IR-16) LTD
ANTHRACITE BALANCED COMPANY (IR-4) LTD
ANTHRACITE BALANCED COMPANY (J R-38) LTD
ANTHRACITE BALANCED COMPANY (JR-12) LTD
ANTHRACITE BALANCED COMPANY (JR-13) LTD
ANTHRACITE BALANCED COMPANY (JR-20) LTD
ANTHRACITE BALANCED COMPANY (JR-21) LTD
ANTHRACITE BALANCED COMPANY (JR-23) LTD
ANTHRACITE BALANCED COMPANY (JR-27) LTD

ANTHRACITE BALANCED COMPANY (JR-28) LTD
ANTHRACITE BALANCED COMPANY (JR-33) LTD
ANTHRACITE BALANCED COMPANY (JR-34) LTD
ANTHRACITE BALANCED COMPANY (JR-35) LTD
ANTHRACITE BALANCED COMPANY (JR-40) LTD
ANTHRACITE BALANCED COMPANY (JR-42) LTD
ANTHRACITE BALANCED COMPANY (JR46)
ANTHRACITE BALANCED COMPANY (JR-47)
ANTHRACITE BALANCED COMPANY (JR48)
ANTHRACITE BALANCED COMPANY (JR-49)
ANTHRACITE BALANCED COMPANY (JR-50) LIMITED
ANTHRACITE BALANCED COMPANY (JR-51) LIMITED
ANTHRACITE BALANCED COMPANY (JR-53) LIMITED
ANTHRACITE BALANCED COMPANY (JR-54) LIMITED
ANTHRACITE BALANCED COMPANY (JR-57) LIMITED
ANTHRACITE BALANCED COMPANY (JR-58) LIMITED
ANTHRACITE BALANCED COMPANY (JR-59) LIMITED
ANTHRACITE BALANCED COMPANY (JR-60) LIMITED
ANTHRACITE BALANCED COMPANY (JR-8) LTD
ANTHRACITE BALANCED COMPANY (JR-9) LTD
ANTHRACITE BALANCED COMPANY (LBGDF3) LTD
ANTHRACITE BALANCED COMPANY (LIBGDF) LTD
ANTHRACITE BALANCED COMPANY (ODSF) LTD
ANTHRACITE BALANCED COMPANY (R-10) LTD
ANTHRACITE BALANCED COMPANY (R-20) LTD
ANTHRACITE BALANCED COMPANY (R-22)
ANTHRACITE BALANCED COMPANY (R-23) LIMITED
ANTHRACITE BALANCED COMPANY (R-24) LIMITED
ANTHRACITE BALANCED COMPANY (R-25) LIMITED
ANTHRACITE BALANCED COMPANY (R-26) LIMITED
ANTHRACITE BALANCED COMPANY (R-5) LTD
ANTHRACITE BALANCED COMPANY (R-7)  LTD
ANTHRACITE BALANCED COMPANY (SWISSCA) LTD
ANTHRACITE BALANCED COMPANY IR-19
ANTHRACITE CFO ISSUER NO. 1 LTD
ANTHRACITE FEEDER COMPANY (JR-4) LTD
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 1)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 10)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 12)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 17)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 18)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 23)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 26)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 27)
ANTHRACITE INVESTMENT (IRELAND) PLC (SERIES 7)
ANTHRACITE INVESTMENTS (CAYMAN ) LTD
ANTHRACITE INVESTMENTS (IRELAND) PLC
ANTHRACITE MASTER CO (2) LTD
ANTHRACITE MASTER COMPANY (4) LTD
ANTHRACITE RATED INVESTMENTS (CAYMAN) LTD

ANTHRACITE RATED INVESTMENTS (JERSEY) LTD
ANTHRACITE RATED INVESTMENTS (JR-14) LTD
ANTHRACITE RATED INVESTMENTS (R-15) LTD
ANTHRACITE RATED INVESTMENTS JERSEY SERIES 45
ANTHRACITE REFERENCE COMPANY (12)  LTD
ANTHRACITE REFERENCE COMPANY (23) LTD
AQUAMARINE FINANCE PLC SERIES 2004-1
AQUAMARINE FINANCE PLC SERIES 2004-2
AQUAMARINE FINANCE PLC SERIES 2007-1
ARES ENHANCED LOAN INVESTMENT STRATEGY II LTD
ARES IIR CLO LTD
ARES IX CLO LTD
ARES VIII CLO LTD
ARES VIR CLO LTD
ARES X CLO LIMITED
ARES XII CLO LTD
ARG FUNDING CORP SERIES 2005-1B
ARG FUNDING CORP SERIES 2005-2A
ARG FUNDING CORP SERIES 2005-2B
ASPEN AMBROSE LIMITED
ASPEN BELL LIMITED
ASPEN LUCIAN LIMITED
ASPEN NOAH LIMITED
ASTREA LLC
ATLANTIC INTERNATIONAL FINANCE LTD SERIES 1
ATRIUM CDO LTD
ATRIUM III CLO LTD
AVIV LCDO 2006-1 LIMITED
AVIV LCDO 2006-2 LIMITED
BALBOA CDO I LTD
BALLYROCK ABS CDO 2007-1 LTD
BANYAN TREE 2004-1 LTD
BARTON SPRINGS CDO LIMITED SPC SERIES 2005-1
BARTON SPRINGS CDO LIMITED SPC SERIES 2005-2
BELLE HAVEN ABS CDO 2005-1 LTD
BELLE HAVEN ABS CDO 2006-1
BERICA 6 RESIDENTIAL MBS S.R.L.
BERYL FINANCE LIMITED SERIES 2005-10
BERYL FINANCE LIMITED SERIES 2005-11
BERYL FINANCE LIMITED SERIES 2005-12
BERYL FINANCE LIMITED SERIES 2005-14
BERYL FINANCE LIMITED SERIES 2005-15
BERYL FINANCE LIMITED SERIES 2005-16
BERYL FINANCE LIMITED SERIES 2005-7
BERYL FINANCE LIMITED SERIES 2006-12
BERYL FINANCE LIMITED SERIES 2006-13
BERYL FINANCE LIMITED SERIES 2006-14
BERYL FINANCE LIMITED SERIES 2006-15
BERYL FINANCE LIMITED SERIES 2006-16
BERYL FINANCE LIMITED SERIES 2006-17

BERYL FINANCE LIMITED SERIES 2006-2
BERYL FINANCE LIMITED SERIES 2006-4
BERYL FINANCE LIMITED SERIES 2006-5
BERYL FINANCE LIMITED SERIES 2006-6
BERYL FINANCE LIMITED SERIES 2007-1
BERYL FINANCE LIMITED SERIES 2007-10
BERYL FINANCE LIMITED SERIES 2007-11
BERYL FINANCE LIMITED SERIES 2007-13
BERYL FINANCE LIMITED SERIES 2007-14
BERYL FINANCE LIMITED SERIES 2007-15
BERYL FINANCE LIMITED SERIES 2007-16
BERYL FINANCE LIMITED SERIES 2007-17
BERYL FINANCE LIMITED SERIES 2007-18
BERYL FINANCE LIMITED SERIES 2007-19
BERYL FINANCE LIMITED SERIES 2007-2
BERYL FINANCE LIMITED SERIES 2007-3
BERYL FINANCE LIMITED SERIES 2007-4
BERYL FINANCE LIMITED SERIES 2007-5
BERYL FINANCE LIMITED SERIES 2007-7
BERYL FINANCE LIMITED SERIES 2007-8
BERYL FINANCE LIMITED SERIES 2007-9
BERYL FINANCE LIMITED SERIES 2008-1
BERYL FINANCE LIMITED SERIES 2008-10
BERYL FINANCE LIMITED SERIES 2008-11
BERYL FINANCE LIMITED SERIES 2008-12
BERYL FINANCE LIMITED SERIES 2008-13
BERYL FINANCE LIMITED SERIES 2008-14
BERYL FINANCE LIMITED SERIES 2008-15
BERYL FINANCE LIMITED SERIES 2008-16
BERYL FINANCE LIMITED SERIES 2008-17
BERYL FINANCE LIMITED SERIES 2008-2
BERYL FINANCE LIMITED SERIES 2008-3
BERYL FINANCE LIMITED SERIES 2008-4
BERYL FINANCE LIMITED SERIES 2008-5
BERYL FINANCE LIMITED SERIES 2008-6
BERYL FINANCE LIMITED SERIES 2008-7
BERYL FINANCE LIMITED SERIES 2008-8
BERYL FINANCE LIMITED SERIES 2008-9
BERYL FINANCE LTD SERIES 2005-1
BERYL FINANCE LTD SERIES 2005-2
BERYL FINANCE LTD SERIES 2005-4
BERYL FINANCE LTD SERIES 2006-10
BERYL FINANCE LTD SERIES 2006-11
BLUE POINT CDO LIMITED SPC SERIES 2005-1
BLUE POINT CDO LIMITED SPC SERIES 2005-2
BLUESTEP FINANCE (NO2) LIMITED
BNC MORTGAGE LOAN TRUST, MORTGAGE PASS THROUGH CERTIFICATES, SERIES 2007-4
BOCCACCIO FINANCE PLC
BOSTON HARBOR CLO 2004-1 LIMITED
BPL CONSUMERS SRL

BRIARWOOD COMMERCIAL PAPER TRUST
BTDJM PHASE II ASSOCIATE
C.P.G. SOCIETA DI CARTOLARIZZAZIONE A R. L.
CALIFORNIA COUNTY TOBACCO SECU RITIZATION AGENCY - LOS ANGELES COUNTY (THE)
CALIFORNIA COUNTY TOBACCO SECURITIZATION AGENCY - PLACER COUNTY
CANYON CAPITAL CLO 2004-1 LTD
CAPSTAR COPLEY LLC
CARILLON LTD
CARLYLE EUROPE REAL ESTATE 2005-1
CARLYLE HIGH YIELD PARTNERS IX LTD
CARTESIO SRL
CBTC 2004-6
CEAGO ABS CDO 2007-1 LTD
CERT LINKED ALT STRUCTURES, SE RIES 2005-1 TRUST
CHAMPLAIN CLO LTD
CHERRY HILL CDO SPC 2007-1
CHERRY HILL CDO SPC 2007-2
CIF EUROMORTGAGE
CIF EUROMORTGAGE
CIRRUS CERT INDIA D LTD.
CIRRUS INVEST C LTD.
CIRRUS INVEST E LTD.
CIRRUS INVEST G LTD.
CIRRUS INVEST INDIA H LTD
CIRRUS INVEST K LTD
COMOROS INVESTMENTS SARL
COMPAGNIE DE FINANCEMENT FONCI ER (CFF)
COMPAGNIE D'INVESTISSEMENT DE PARIS
CONSECO FINANCE HOME EQUITY LOAN TRUST 2001-D
CONSECO FINANCE MANUFACTURED HOUSING SERIES 2001-4
CONSECO FINANCE MANUFACTURED HOUSING SERIES 2002-1
CONSUMER UNSECURED REPERFORMING LOANS (CURL) PLC
COPPER  CREEK CDO
CORAL CP TRUST PROGRAM
CPT ASSET BACKED CERTIFICATES TRUST SER. 2004-EC1
CRIMSON COMMERCIAL PAPER TRUST
CROWN CITY CDO 2005-1 LTD
CROWN CITY CDO 2005-2 LTD
CSAM SYNDICATED LOAN FUND
CWABS 2007 SEA2
CWABS ASSET BACKED CERTS SERIES 2006-26
CWABS ASSET BACKED CERTS SERIES 2006-SD4
CWABS ASSET-BACKED CERTIFICATES TRUST 2007-12
CWABS ASSET-BACKED CERTIFICATES TRUST 2007-BC2
CWABS ASSET-BACKED CERTIFICATES, SERIES 2006-22
CWABS ASSET-BACKED CERTS SERIES 2007-6
CWABS ASSET-BACKED NOTES TRUST 2007-SD1
CWABS INC ASSET BACKED CERTS SERIES 2004-14
CWABS INC ASSET BACKED CERTS SERIES 2005-14
CWABS INC ASSET BACKED CERTS SERIES 2005-15

CWABS INC ASSET BACKED CERTS SERIES 2005-AB4
CWABS INC ASSET BACKED CERTS SERIES 2005-AB5
CWABS INC ASSET BACKED CERTS SERIES 2005-BC5
CWABS INC ASSET BACKED CERTS SERIES 2006-13
CWABS INC ASSET BACKED CERTS SERIES 2006-14
CWABS INC ASSET BACKED CERTS SERIES 2006-16
CWABS INC ASSET BACKED CERTS SERIES 2006-19
CWABS INC ASSET BACKED CERTS SERIES 2006-3
CWABS INC ASSET BACKED CERTS SERIES 2006-4
CWABS INC ASSET BACKED CERTS SERIES 2006-5
CWABS INC ASSET BACKED NOTES SERIES 2006-SD3
CWABS INC ASSET-BACKED CERTS SERIES 2006-BC2
CWALT 2007-OH3
CWALT ALTERNATIVE LOAN TRUST 2006-OC10
CWALT INC ALTERNATIVE LOAN TRUST 2006-OC6
CWALT INC ALTERNATIVE LOAN TRUST 2006-OC8
CWALT INC ALTERNATIVE LOAN TRUST 2007-OH2
CWALT INC MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-OC3
CWALT INC. ALTERNATIVE LOAN TRUST 2006-OC7
CWHEQ REVOLVING HOME EQUITY LOAN TRUST SERIES 2006-I
DAIKOKU DISTRIBUTION CENTER TMK
DAINI SAKURABASHI GODO KAISHA
DANTE FINANCE PLC
DEXIA MUNICIPAL AGENCY SA
DIADEM CITY CDO LIMITED 2005-1
DIADEM CITY CDO LIMITED SERIES 2008-1
DIADEM CITY CDO LIMITED SERIES 2008-2
DIADEM CITY CDO LIMITED SERIES 2008-3
DIAMOND FINANCE 2006-1
DIAMOND FINANCE 2006-2
DIAMOND FINANCE 2007-4
DIAMOND FINANCE 2008-1
DIAMOND FINANCE SERIES 2003-2
DIAMOND FINANCE SERIES 2003-2
DIAMOND FINANCE SERIES 2007 - 3A
DIAMOND FINANCE SERIES 2007-2
DIAMOND FINANCE SERIES 2007-3B
DIAMOND FINANCE SERIES 2007-5
DIAMOND FINANCE SERIES 2007-7
DIAMOND FINANCE SERIES 2007-8
DOW JONES CDX.NA.HY.3 TRUST 1 DECEMBER 2009
DOW JONES CDX.NA.HY.3 TRUST 2 DECEMBER 2009
DOW JONES CDX.NA.HY.3 TRUST 3 DECEMBER 2009
DOW JONES CDX.NA.HY.3 TRUST 4 DECEMBER 2009
EFG HELLAS PLC
EGYPT TRUST 1 - SERIES 2000 A
EMERALDS 2006-1
EMERALDS SERIES 2007-1 TRUST
EMERALDS SERIES 2007-3 TRUST
EMF NL 2008-2 BV

EMF-NL PRIME 2008-A.BV
ENCORE 2003-1
ENHANCED MORTGAGE BACKED SECURITIES FUND I LIMITED
ENHANCED MORTGAGE BACKED SECURITIES FUND IV LIMITED
ESP FUNDING I, LTD.
ESPRIT INTERNATIONAL LIMITED SERIES 1
ESPRIT INTERNATIONAL LIMITED SERIES 9
ESPRIT INTERNATIONAL LTD SERIE S 10
ESPRIT INTERNATIONAL LTD SERIES 11
EUROSAIL 2006-1 PLC
EUROSAIL 2006-2BL PLC
EUROSAIL 2006-3NC PLC
EUROSAIL 2006-4NP PLC
EUROSAIL -NL 2007-2 BV
EUROSAIL NL 2008-1 B.V
EUROSAIL PRIME-UK 2007 A PLC
EUROSAIL UK 2007 5NP PLC
EUROSAIL UK 2007 6NC PLC
EUROSAIL -UK-2008-1NP PLC
EUROSAIL-NL 2007-1 B.V.
EUROSAIL-UK 2007-1NC PLC
EUROSAIL-UK 2007-2NP PLC
EUROSAIL-UK 2007-3BL PLC
EUROSAIL-UK 2007-4BL PLC
EXCALIBUR FUNDING NO 1 PLC
EXUM RIDGE CBO 2006-1 LTD
EXUM RIDGE CBO 2006-2 LTD
EXUM RIDGE CBO 2006-4 LTD
EXUM RIDGE CBO 2006-5 LTD
EXUM RIDGE CBO 2007-1, LTD
EXUM RIDGE CBO 2007-2 LTD
FANNIE MAE REMIC 07-116
FANNIE MAE REMIC 08-46
FANNIE MAE REMIC TRUST 2007-103
FANNIE MAE REMIC TRUST 2007-88
FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF8
FLATROCK TRUST
FNMA REMIC 08-53
FORD CREDIT AUTO OWNER TRUST 2007-B
FREEDOM PARK CDO LIMITED SPC SERIES 2005-1
FREMONT HOME LOAN TRUST 2006-E
FULLERTON DRIVE CDO LIMITED
G. K. ALSACE
G. K. ASOK
G. K. OAKMONT
G. K. VALLETTA
G.K. LOVINA
GALLEON LUXEMBOURG FUNDING SARL
GAZPROMBANK MORTGAGE BACKED SECURITIES SERIES 2007-2 CLASS A1
GEMSTONE CDO VI LTD

GENERIC CHINA PROTECTION 6
GENERIC EUROPE PROTECTION ELEVEN LTD.
GENERIC JAPAN PROTECTION A LTD.
GENERIC JAPAN PROTECTION B LTD.
GENERIC JAPAN PROTECTION C LTD.
GENERIC KOREA PROTECTION D LTD
GENERIC PROGRESSIVE TWO LTD
GENERIC PROTECTED CHINA FOUR LTD
GENERIC PROTECTION BIK E LTD
GENERIC PROTECTION BIK F LTD
GENERIC PROTECTION CHINA 5 LTD
GENERIC PROTECTION CHINA EIGHT LTD
GENERIC PROTECTION CHINA SEVEN LTD
GENERIC PROTECTION EUROPE NINE LTD
GENERIC PROTECTION EUROPE TEN LTD.
GENERIC PROTECTION INDIA TWELVE LTD.
GK DAVINCI RF1
GODO KAISHA BONDAI
GODO KAISHA CV6
GODO KAISHA KIWI
GOLDEN STATE TOBACCO SECURITIZATION CORPORATION
GPMF 06-AR8
GPMF 2007-AR1
GRANITE FINANCE 2007-1-C LTD
GRANITE FINANCE LIMITED SERIES 2005-9
GRANITE FINANCE LIMITED SERIES 2006-11
GRANITE FINANCE LIMITED SERIES 2006-6
GRANITE FINANCE LTD
GRANITE FINANCE LTD 2003-5
GRANITE FINANCE LTD 2003-6
GRANITE FINANCE LTD 2003-7
GRANITE FINANCE LTD 2004-1
GRANITE FINANCE LTD SERIES 2001-10
GRANITE FINANCE SPC 2008-1
GRANITE SERIES 2005-1
GRANITE SERIES 2005-10
GRANITE SERIES 2005-2
GRANITE SERIES 2005-3
GRANITE SERIES 2005-4
GRANITE SERIES 2005-5
GRANITE SERIES 2005-7
GREENBRIER YUGEN KAISHA
GREYSTONE CDO LIMITED SPC SERIES 2006-1
GREYSTONE CDO LIMITED SPC SERIES 2006-2
GREYSTONE CDO LIMITED SPC SERIES 2006-3
GREYSTONE CDO SPC SERIES 2008-4 SEGREGATED PORTFOLIO
GSC CAPITAL CORP MORTGAGE TRUST 2006-1
GSC EUROPEAN CDO I-R SA
GSC EUROPEAN CDO IV S.A
GSC EUROPEAN MEZZANINE LUXEMBOURG I SARL

GSC EUROPEAN MEZZANINE LUXEMBOURG II SARL
GSC EUROPEAN MEZZANINE LUXEMBOURG III SARL
GSEF AL NAWRAZ (CAYMAN) LIMITED
GSEF YAMAMA (CAYMAN) LIMITED
GSW GRUNDBESITZ GMBH & CO KG
GUADELETE INVESTMENTS S.A.R.L
GUAM ECONOMIC DEVELOPMENT AUTHORITY
GULF STREAM-COMPASS CLO 2003-1 LTD
GULF STREAM-COMPASS CLO 2004-1 LTD
GULF STREAM-COMPASS CLO 2005-1 LTD
GULFSTREAM - SEXTANT CLO 2006-1, LTD.
GULFSTREAM-COMPASS CLO-2005 II, LTD.
H/2 REAL ESTATE CDO 2006-1 LTD
H2001/PHIN GMBH & CO. KG
H21 ABSOLUTE RETURN CONCEPTS SPC ARC-B02-30140: H21 RESOURCES SP
HARBOURVIEW CDO III LIMITED
HDK PURCHASER TRUST
HHMI XVI LLC
HORIZON II INTERNATIONAL LTD SERIES 114
HORIZON II INTERNATIONAL LTD SERIES 115
HORIZON II INTERNATIONAL LTD SERIES 116
HORIZON II INTERNATIONAL LTD SERIES 121
HORIZON II INTERNATIONAL LTD SERIES 126
HORIZON II INTERNATIONAL LTD SERIES 130
HORIZON II INTERNATIONAL LTD SERIES 134
HORIZON II INTERNATIONAL LTD SERIES 135
HORIZON II INTERNATIONAL LTD SERIES 136
HORIZON II INTERNATIONAL LTD SERIES 145
HORIZON II INTERNATIONAL LTD SERIES 148
HORIZON II INTERNATIONAL LTD SERIES 158
HORIZON II INTERNATIONAL LTD SERIES 162
HORIZON II INTERNATIONAL LTD SERIES 178
HORIZON II INTERNATIONAL LTD SERIES 181
HORIZON II INTERNATIONAL LTD SERIES 183
HORIZON II INTERNATIONAL LTD SERIES 193
HORIZON II INTERNATIONAL LTD SERIES 207
HORIZON II INTERNATIONAL LTD SERIES 208
HORIZON II INTERNATIONAL LTD SERIES 211
HORIZON II INTERNATIONAL LTD SERIES 217
HORIZON II INTERNATIONAL LTD SERIES 219
HORIZON II INTERNATIONAL LTD SERIES 220
HORIZON II INTERNATIONAL LTD SERIES 221
HORIZON II INTERNATIONAL LTD SERIES 222
HORIZON II INTERNATIONAL LTD SERIES 223
HORIZON II INTERNATIONAL LTD SERIES 225
HORIZON II INTERNATIONAL LTD SERIES 226
HORIZON II INTERNATIONAL LTD SERIES 227
HORIZON II INTERNATIONAL LTD SERIES 228
HORIZON II INTERNATIONAL LTD SERIES 229
HORIZON II INTERNATIONAL LTD SERIES 230

HORIZON II INTERNATIONAL LTD SERIES 77
HT FINANZANLAGE LIMITED SERIES 13
I.E. JERSEY PROPERTY CO. NO.1 LTD
IEIL JAPAN CO., LTD.
IMPAC CMB TRUST SERIES 2003-11
IMPAC CMB TRUST SERIES 2004-04
IMPAC CMB TRUST SERIES 2004-05
IMPAC CMB TRUST SERIES 2004-08
IMPAC CMB TRUST SERIES 2004-10
IMPAC CMB TRUST SERIES 2005-03
IMPAC CMB TRUST SERIES 2005-04
IMPAC CMB TRUST SERIES 2005-05
IMPAC CMB TRUST SERIES 2005-08
IMPAC SECURED ASSETS TRUST 2006-3
IMPAC SECURED ASSETS TRUST 2007-3,  MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-3
IMSER SECURITISAT. GIA ISP III
ING INVESTMENT MANAGEMENT CLO I, LTD
ING INVESTMENT MANAGEMENT CLO II, LTD
ITALEASE FINANCE SPA
JASPER FINANCE LIMITED SERIES 2005-1
JEFFERSON VALLEY CDO LIMITED SPC SERIES 2006-1
JUPITER QUARTZ FINANCE PLC 2004-1 CLASS A
JUPITER QUARTZ FINANCE PLC 2004-1 CLASS B
JUPITER QUARTZ PLC 2004-2
KBC INVESTMENTS CAYMAN ISLANDS V LTD
KINGS RIVER LIMITED
KONA TMK
KP GERMANY ZWEITE GMBH
LAKEVIEW CDO 2007-2
LAKEVIEW CDO SPC 2007-1
LAKEVIEW CDO SPC 2007-3
LAKEVIEW CDO SPC SERIES 2007-4 SEGREGATED PORTFOLIO
LB COMMERCIAL TRUST 2007-C3 COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES
LB PERU TRUST II, 1998-A
LB-UBS COMMERCIAL MORTGAGE TRUST 2007-C6
LB-UBS COMMERCIAL MORTGAGE TRUST 2008-C1
LDVF1 FIP SARL
LDVF1 MAIN FIP SARL
LEEDS TMK
LEH MORTGAGE TRUST, SERIES 2007-6
LEHMAN ABS MANUFACTURED HOUSING CONTRACT TRUST 2002-A
LEHMAN BROTHERS CDO MEZZANINE FUND 2005-1, LTD
LEHMAN BROTHERS CDO OPPORTUNITY PARTNERS 2004-3 LP
LEHMAN BROTHERS SMALL BALANCE COMMERCIAL MORTGAGE TRUST 2007-2
LEHMAN MORTGAGE TRUST 2006-4
LEHMAN MORTGAGE TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-9
LEHMAN MORTGAGE TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-5
LEHMAN MORTGAGE TRUST, SERIES 2005-02
LEHMAN MORTGAGE TRUST, SERIES 2005-03

LEHMAN MORTGAGE TRUST, SERIES 2006-01
LEHMAN MORTGAGE TRUST, SERIES 2006-05
LEHMAN XS TRUST  MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-9
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-1
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2005-9N
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-11
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-13
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-15
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-17
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-19
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-3
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-6
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-7
LEHMAN XS TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-10H
LIBERTY SQUARE CDO I LIMITED
LIBERTY SQUARE CDO II LIMITED
LIBRA CDO LIMITED
LION CITY CDO 2006-2 LTD
LION CITY CDO 2006-3 LTD
LION CITY CDO LIMITED SERIES 2006-1
LION CITY CDO LTD SERIES 2006-5
LION CREDIT OPPORTUNITY FUND PLC
L-JAC ONE SPECIAL PURPOSE COMPANY
LMT 2008-6
LOAN FUNDING III LLC
LUSITANO MORTGAGES NO. 5 PLC
LXS 2006-10N
LXS 2006-16N
LXS 2006-18N
MADISON AVENUE CDO I LTD
MADISON AVENUE STRUCTURED FINANCE CDO I, LIMITED
MALACHITE 2006-1 TRUST
MARSEILLE REPUBLIQUE SAS
MCDONNELL LOAN OPPORTUNITY LTD
MERLIN FINANCE SA
MICROACCESS TRUST 2007
MINIBOND LIMITED SERIES 1
MINIBOND LIMITED SERIES 10
MINIBOND LIMITED SERIES 2
MINIBOND LIMITED SERIES 3
MINIBOND LIMITED SERIES 5
MINIBOND LIMITED SERIES 6
MINIBOND LIMITED SERIES 7
MINIBOND LIMITED SERIES 8
MINIBOND LIMITED SERIES 9
MKP VELA CBO LTD
MONROE TOBACCO ASSET SECURIZATION CORPORATION
MT WILSON CLO II LTD
MUNICIPAL ASSET SECURITIZATION TRUST SECURITIES, SERIES 2008-1 TRUST
MURSUK GRUNDSTUCKS-VERWALTUNGSGESELLS CHAFT MBH

MUSTIQUE 2007-1 A2A
MUSTIQUE 2007-1 A2B
MUSTIQUE 2007-1 B
MUSTIQUE 2007-1 C
MUSTIQUE 2007-1 D
MUSTIQUE 2007-1 E
NATIONALE-NEDERLANDEN INTERFINANCE BV
NATIXIS ABM LLC
NEW ALLIANCE GLOBAL CDO LIMITED
NEWTON RE LIMITED
NOMURA HOME EQUITY LOAN INC HOME EQUITY LOAN TRUST SERIES 2007-3
NORTHWOODS CAPITAL VII LTD
OAK HILL CREDIT PARTNERS IV LIMITED
ONE MADISON INVESTMENTS (CAYCO) LIMITED
ONYX FINANCE LIMITED
ONYX FUNDING LIMITED 2004-1
ONYX FUNDING LIMITED SERIES 2006-1
ONYX FUNDING LTD 2005-1
ONYX FUNDING LTD SERIES 2008-1
OPTION ONE MORTGAGE E LOAN TRUST 2007-5
OPTION ONE MORTGAGE LOAN TRUST 2007-1
OPTION ONE MORTGAGE LOAN TRUST 2007-3
OPTION ONE MORTGAGE LOAN TRUST 2007-4
ORKNEY TOKUTEI MOKUTEKI KAISHA
OSCART INTERNATIONAL LIMITED
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 10
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 11
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 15
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 17
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 18
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 19
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 21
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 22
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 25
PACIFIC INTERNATIONAL FINANCE LIMITED SERIES 9
PACIFIC INTERNATIONAL FINANCE LTD SERIES 12
PACIFIC INTERNATIONAL FINANCE LTD SERIES 16
PACIFIC INTERNATIONAL FINANCE LTD SERIES 20
PACIFIC INTERNATIONAL FINANCE LTD SERIES 23
PACIFIC INTERNATIONAL FINANCE LTD SERIES 26
PACIFIC INTERNATIONAL FINANCE LTD SERIES 27
PACIFIC INTERNATIONAL FINANCE LTD SERIES 28
PACIFIC INTERNATIONAL FINANCE LTD SERIES 29
PACIFIC INTERNATIONAL FINANCE LTD SERIES 30
PACIFIC INTERNATIONAL FINANCE LTD SERIES 31
PACIFIC INTERNATIONAL FINANCE LTD SERIES 32
PACIFIC INTERNATIONAL FINANCE LTD SERIES 33
PACIFIC INTERNATIONAL FINANCE LTD SERIES 34
PACIFIC INTERNATIONAL FINANCE LTD SERIES 35
PACIFIC INTERNATIONAL FINANCE LTD SERIES 36

PANTERA VIVE CDO LIMITED SPC SERIES 2007-1
PARAMOUNT GLOBAL LIMITED
PARIS PRIME COMMERCIAL REAL ESTATE FCC
PEARL FINANCE PLC SERIES 2005-1
PEARL FINANCE SERIES 2003-1
PEARL FINANCE SERIES 2003-4
PEARL FINANCE SERIES 2003-5
PEARL FINANCE SERIES 2003-6
PEARL FINANCE SERIES 2003-8
PEARL FINANCE SERIES 2003-9
PEBBLE CREEK 2007-3 LIMITED
PEBBLE CREEK LCDO 2006-1 LTD
PEBBLE CREEK LCDO 2007-2 LTD
PENNS LANDING CDO 2007-1
PETRAECA FINANCE PLC
PHOENIX F1 NEUBRANDENBURGSTRASSE
PHOENIX II MIXED L
PHOENIX III MIXED U
PHOENIX SERIES 2002-1
PHOENIX SERIES 2002-2
PICASSO INVESTMENTS 1 LIMITED
PINYON TREE 2005-1
PORTFOLIO CDS TRUST 103 - SARATOGA
PORTFOLIO CDS TRUST 104 - AMMC
PORTFOLIO CDS TRUST 105 - STANFIELD VEYRON
PORTFOLIO CDS TRUST 162
PORTFOLIO CDS TRUST 18
PORTFOLIO CDS TRUST 187
PORTFOLIO CDS TRUST 191
PORTFOLIO CDS TRUST 192
PORTFOLIO CDS TRUST 193
PORTFOLIO CDS TRUST 194
PORTFOLIO CDS TRUST 195
PORTFOLIO CDS TRUST 196
PORTFOLIO CDS TRUST 208
PORTFOLIO CDS TRUST 209
PORTFOLIO CDS TRUST 210
PORTFOLIO CDS TRUST 211
PORTFOLIO CDS TRUST 212
PORTFOLIO CDS TRUST 213
PORTFOLIO CDS TRUST 214
PORTFOLIO CDS TRUST 233
PORTFOLIO CDS TRUST 234
PORTFOLIO CDS TRUST 235
PORTFOLIO CDS TRUST 236
PORTFOLIO CDS TRUST 237
PORTFOLIO CDS TRUST 238
PORTFOLIO CDS TRUST 239
PORTFOLIO CDS TRUST 240
PORTFOLIO CDS TRUST 241

PORTFOLIO CDS TRUST 242
PORTFOLIO CDS TRUST 243
PORTFOLIO CDS TRUST 244
PORTFOLIO GREEN GERMAN CMBS GMBH
POSILLIPO FINANCE II S.R.L.
POSILLIPO FINANCE S.R.L.
PRIMUS FINANCIAL PRODUCTS LLC
PUMICE INVESTMENTS (NETHERLANDS) BV
PYXIS ABS CDO 2007-1 LTD
PYXIS FINANCE LTD
QUARTZ FINANCE 2003-1
QUARTZ FINANCE 2003-4
QUARTZ FINANCE 2003-5
QUARTZ FINANCE 2004-1
QUARTZ FINANCE 2005-1
QUARTZ FINANCE 2005-2
QUARTZ FINANCE LIMITED
QUARTZ FINANCE SERIES 2003-3
RACE POINT IV CLO LTD
RACERS 2000-19-C HILTON
RACERS 2000-22-A UBS
RACERS 2000-24-A HSBC
RACERS 2001-13-C
RACERS 2001-6-S-BLS
RACERS 2002-10-TR
RACERS 2002-45-L
RACERS 2003-07-A CITI
RACERS 2004-25-TR
RACERS 2004-26-E
RACERS 2004-27-E
RACERS 2005-03-TR
RACERS 2005-06-A
RACERS 2005-10-C
RACERS 2005-13-C
RACERS 2005-19-C
RACERS 2005-21-C
RACERS 2006-15-A
RACERS 2006-16-TR
RACERS 2006-18-C ABX-A-06-1-I
RACERS 2006-18-C ABX-A-06-1-II
RACERS 2006-18-C ABX-A-06-1-III
RACERS 2006-18-C ABX-A-06-2-I
RACERS 2006-18-C ABX-A-06-2-II
RACERS 2006-18-C ABX-A-06-2-III
RACERS 2006-1-C
RACERS 2006-20-AT
RACERS 2007-4-C FTD
RACERS 2008-2-C
RACERS 2008-3-C
RACERS 2008-5-A

RACERS 2008-6-TR
RACERS SERIES 2002-20
RACERS SERIES 2002-26
RACERS SERIES 2002-39
RACERS-2007-5-TRS
RADIAN CREDIT LINKED TRUST 2003-1
RELATIONSHIP FUNDING COMPANY LLC
REPACKAGED AMERICAN GENERAL FRTC 2003-1
RESIDENTIAL ASSET SECURITIZATION TRUST 2006-A15
RMB LEVERAGED (CAYMAN) LTD
ROBANIA CDO LIMITED
ROBECO CDO VII LIMITED
ROBECO CREDIT LIMITED
RRR LOAN FUNDING TRUST
RUBY FINANCE 2003-4
RUBY FINANCE 2004-2
RUBY FINANCE 2004-3
RUBY FINANCE 2005-1
RUBY FINANCE 2006-2
RUBY FINANCE 2006-3
RUBY FINANCE 2006-4
RUBY FINANCE 2006-5
RUBY FINANCE 2006-7
RUBY FINANCE 2007-1
RUBY FINANCE 2007-3
RUBY FINANCE 2007-6
RUBY FINANCE 2007-7
RUBY FINANCE 2008-01
RUBY FINANCE PLC 2007-2
S&P LICENSING FEE
SACHER FUNDING LTD.
SAGAMORE CLO LTD
SAIL 2005-1
SAIL 2005-2
SAIL ASSOCIATES, LLC
SAPHIR FINANCE 2006-6
SAPHIR FINANCE 2006-8
SAPHIR FINANCE PLC 2004-11
SAPHIR FINANCE PLC 2004-12
SAPHIR FINANCE PLC 2004-2
SAPHIR FINANCE PLC 2004-4
SAPHIR FINANCE PLC 2004-5
SAPHIR FINANCE PLC 2004-7
SAPHIR FINANCE PLC 2005-11
SAPHIR FINANCE PLC 2005-1
SAPHIR FINANCE PLC 2005-10
SAPHIR FINANCE PLC 2005-12
SAPHIR FINANCE PLC 2005-3
SAPHIR FINANCE PLC 2005-4
SAPHIR FINANCE PLC 2005-7

SAPHIR FINANCE PLC 2006-1
SAPHIR FINANCE PLC 2006-10
SAPHIR FINANCE PLC 2006-11
SAPHIR FINANCE PLC 2006-2
SAPHIR FINANCE PLC 2006-3
SAPHIR FINANCE PLC 2006-4
SAPHIR FINANCE PLC 2006-5
SAPHIR FINANCE PLC 2007-1
SAPHIR FINANCE PLC 2007-2
SAPHIR FINANCE PLC 2007-4
SAPHIR FINANCE PLC 2007-5
SAPHIR FINANCE PLC 2007-7
SAPHIR FINANCE PLC 2007-9
SAPHIR FINANCE PLC 2008-1
SAPHIR FINANCE PLC SERIES 2008-10
SAPHIR FINANCE PLC SERIES 2008-11
SAPHIR FINANCE PLC SERIES 2008-12
SAPHIR FINANCE PLC SERIES 2008-13
SAPHIR FINANCE PLC SERIES 2008-6
SAPHIR FINANCE PLC SERIES 2008-7
SAPHIR FINANCE PLC SERIES 2008-8
SAPHIR FINANCE PLC SERIES 2008-9
SAPPHIRE COMMERCIAL PAPER TRUST
SAPPORO NISHIMACHI YUGEN GAISYA
SARATOGA CLO I LTD
SARM 2006-11
SARM 2006-12
SARM 2007-1
SARM 2007-2
SARM 2007-3
SARM 2008-1
SARM 2008-1B
SARM LOAN TRUST SERIES 2004-18
SARM LOAN TRUST SERIES 2005-1
SARM NIM1 2005 -19XS
SASCO 2002-NP1
SASCO 2003-NP1
SASCO 2005-NC1
SASCO 2005-RF1
SASCO 2005-RF2
SASCO 2005-RF3
SASCO 2005-RF4
SASCO 2005-WF1
SASCO 2008-1
SASCO NIM 2005-9XS
SASCO SERIES 2005-RF6
SASCO SERIES 2006 RF-2
SASCO SERIES 2006 RF-4
SASCO SERIES 2007 RF-1
SASCO SERIES 2007 RF-2

SASCO SERIES 2008 RF-1
SASCO, SERIES 2005-RF5
SCHILLER PARK CLO
SEALINK FUNDING LIMITED
SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A1
SECURITIZED PRODUCT OF RESTRUCTURED COLLATERAL LTD SPC - SERIES 2007-1 FEDERATION A2
SEGREGATED PORTFOLIO SPRC D-FORCE LLC SERIES 2007-1
SEQUOIA FUNDING LIMITED SERIES 1998-2
SGS HY CREDIT FUND I (EXUM RIDGE CBO 2006-3) LTD
SIRIUS INTERNATIONAL LIMITED SERIES 11
SIRIUS INTERNATIONAL LTD SERIES 13
SIRIUS INTERNATIONAL LTD SERIES 16
SLB LEASING-FONDS GMBH&CO. THOR KG
SLB LEASING-FONDS GMBH&CO. URANUS KG
SLM STUDENT LOAN TRUST 2004-1
SOCIETA' DI CARTOLARIZZAZIONE ITALIANA CREDITI A RESPONSABILITA'
SOCIETE CIVILE IMMOBILIERE KARANIS
SOCIETE IMMOBILIERE PRIVAT
SOLAR INVESTMENT GRADE CBO I
SOLAR INVESTMNT GRADE CBO II
SOLAR V CDO
SOUTHPORT CLO LTD
SPEEDWAY ASSOCIATES L.L.C
STANFIELD MODENA CLO
STANFIELD VANTAGE CLO LTD
STANFIELD VEYRON CLO LTD
STATE SUPER FINANCIAL SERVICES LIMITED
STONY HILL CDO III LIMITED
STONY HILL CDO SPC SERIES 2005-1
STOWE CDO LIMITED SPC SERIES 2006-1
STOWE CDO SPC SERIES 2008-1 SEGREGATED PORTFOLIO
STOWE CDO SPC SERIES 2008-2A SEGREGATED PORTFOLIO
STRUCTURED ADJUSTABLE RATE MORG LNTR SER 2004-10
STRUCTURED ADJUSTABLE RATE MORTGAGE LNTR 2004-9XS
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN 2004-12
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TR 2004-8
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRST SER 2004-20
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST SER 2004-16
STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST SER 2004-6
STRUCTURED ADJUSTABLE RATE MORTGAGE SERIES 2004-14
STRUCTURED ASSET INVESTMENT LOAN TRUST 2004-4
STRUCTURED ASSET RECEIVABLES TRUST SERIES 2003-1
STRUCTURED ASSET RECEIVABLES TRUST, SERIES 2003-2
STRUCTURED ASSET RECEIVABLES TRUST, SERIES 2004-1
STRUCTURED ASSET SEC CORPREF SARM 2008-2
STRUCTURED ASSET SECURITES CORPORATION PASS-THROUGH CERTIFICATES, SERIES 2007-4
STRUCTURED ASSET SECURITIES CORPORATION 2003-37A
STRUCTURED ASSET SECURITIES CORPORATION 2003-NP3

STRUCTURED ASSET SECURITIES CORPORATION 2004-23XS
STRUCTURED ASSET SECURITIES CORPORATION 2005-RF7
STRUCTURED ASSET SECURITIES CORPORATION 2006-RF1
STRUCTURED ASSET SECURITIES CORPORATION BNC SERIES 2007-1 (SASCO)
STRUCTURED ASSET SECURITIES CORPORATION BNC SERIES 2007-BC2 (SASCO)
STRUCTURED ASSET SECURITIES CORPORATION BNC SERIES 2007-BNC1
STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TR 2004-NP2
STRUCTURED ASSET SECURITIES CORPORATION SERIES 2007-EQ1 (SASCO)
STRUCTURED ASSET SECURITIES CORPORATION SERIES 2007-OSI SASCO
STRUCTURED ASSET SECURITIES CORPORATION SERIES 2007-SC1 (SASCO)
SUMMER STREET 2005-HG1 LTD
SUNSET PARK CDO LIMITED SPC SERIES 2004-1
SUNSET PARK CDO LIMITED SPC SERIES 2004-2
SUNSET PARK CDO LIMITED SPC SERIES 2004-4
SUNSET PARK CDO LIMITED SPC SERIES 2005-3
SUNSET PARK CDO LIMITED SPC SERIES 2005-5
SUNSET PARK CDO LIMITED SPC SERIES 2005-6
SUNSUPER PTY LTD CURRENCY OVERLAY
SWIFT MASTER AUTO RECEIVABLES TRUST
TAVARES SQUARE CDO LIMITED
TAYLOR CREEK LIMITED
THE SERIES 2007-1 TABXSPOKE SEGREGATED PORTFOLIO
THETA CORPORATION
TIAA STRUCTURED FINANCE CDO I LIMITED
TIZIAN WOHNEN 1 GMBH
TLLB2002 INTERNATIONAL LIMITED SERIES 6
TMK GOLDEN CHILD PROPERTY
TOBACCO ASSET SECURITIZATION CORPORATION
TOBACCO SETTLEMENT AUTHORITY
TOBACCO SETTLEMENT FINANCE CORPORATION - LOUISIANA
TOBACCO SETTLEMENT FINANCE CORPORATION - NEW JERSEY
TOBACCO SETTLEMENT FINANCE CORPORATION - NEW YORK
TOBACCO SETTLEMENT FINANCE CORPORATION - OHIO
TOBACCO SETTLEMENT FINANCING CORPORATION VIRGINIA
TOPAZ FINANCE LTD 2005-1
TOPAZ FINANCE LTD 2005-2
TORANOMON INVESTMENTS TMK
TORRE RE FUND I
TRADEWINDS II CDO LIMITED SPC SERIES 2006-1
VERDE CDO LTD (SEG AC CDS ONLY)
VOX PLACE CDO LIMITED
WAVELAND INGOTS LTD
WELLS FARGO MORTGAGE BACKED SECURITIES 2008-AR2 TRUST
WH2005 / NIAM III EAST HOLDING OY
WHITE MARLIN CDO 2007-1 LIMITED
WILLOW RE LTD
WINDERMERE IX CMBS (MULTIFAMILY) S.A.
WINDERMERE PRIVATE PLACEMENT I S.A.
WINDERMERE VI CMBS PLC
WINDERMERE X CMBS LIMITED

WINDERMERE XIV CMBS LIMITED
Y. K. AKASAKA INTERNATIONAL
Y.K. TRENCH
YAESU FIVE TMK
ZIRCON FINANCE  2007-5
ZIRCON FINANCE 2007-6
ZIRCON FINANCE LIMITED SERIES 2007-10
ZIRCON FINANCE LIMITED SERIES 2007-11
ZIRCON FINANCE LIMITED SERIES 2007-3
ZIRCON FINANCE LIMITED SERIES 2007-9
ZIRCON FINANCE LTD SERIES 2007-1
ZIRCON FINANCE LTD SERIES 2007-12
ZIRCON FINANCE LTD SERIES 2007-13
ZIRCON FINANCE LTD SERIES 2007-14
ZIRCON FINANCE LTD SERIES 2007-15
ZIRCON FINANCE LTD SERIES 2007-16
ZIRCON FINANCE LTD SERIES 2007-17
ZIRCON FINANCE LTD SERIES 2007-18
ZIRCON FINANCE LTD SERIES 2007-19
ZIRCON FINANCE LTD SERIES 2007-2
ZIRCON FINANCE LTD SERIES 2007-8
ZWINGER OPCO 6 BV

## SCHEDULE B

### Natixis Representatives

Ken Wormser
Ralph Inglese
David Powar
Michael Hopson
William Fischer
Lorraine Medvecky
David Duncan
Ninat Lekagul
Joseph Di Prospero
Aimee Means
Dan Strong
Naz Majidi
Mark David
Abhishek Shukla
Craig Reckin
Greg Chow
Marianne Medora
Joe Falcone
Adam True