Hearing Date and Time: February 16, 2011 at 10:00 a.m. (EST)
Objection Date and Time: February 9, 2011 at 4:00 p.m. (EST)

**KATTEN MUCHIN ROSENMAN LLP**
Kenneth E. Noble   (KN 4842)
Matthew W. Olsen  (MO 0619)
575 Madison Avenue
New York, New York 10022-2585
(212) 940-8800 (Tel.)
(212) 940-8776 (Fax.)

*Attorneys for the Bank of Nova Scotia,*
*New York Agency*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

----------------------------------------------------------------x

**NOTICE OF MOTION OF THE BANK OF NOVA SCOTIA FOR RELIEF FROM THE AUTOMATIC STAY TO FORECLOSE AGAINST THE TOWN SQUARE MALL**

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "*Motion*") of the Bank of Nova Scotia, New York Agency, in its capacity as administrative agent (the "*Administrative Agent*"), for an order terminating the automatic stay applicable in the above-captioned Debtors' chapter 11 cases, to the extent necessary or appropriate, to permit the Administrative Agent to foreclose its mortgage on the Town Square Mall (as defined in the Motion) and granting such other relief as is necessary or appropriate, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "*Bankruptcy Court*"), on **February 16, 2011 at 10:00 a.m. (Eastern Standard Time)** (the "*Hearing*").

84497288

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attn: Kenneth E. Noble, Esq., and Matthew W. Olsen, Esq., attorneys for the Bank of Nova Scotia, New York Agency, (iii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman, Esq. and Richard P. Krasnow, Esq., attorneys for the Debtors; (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (vi) Kelley Drye & Warren LLP, 101 Park Avenue, New York, New York 10178, Attn: James S. Carr, Esq. and Thomas B. Kinzler, Esq., and Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York, Attn: Marc E. Kasowitz, Esq., David M. Friedman, Esq., and Jed I. Bergman, Esq., attorneys for

84497288

2

Turnberry/Centra Sub, LLC, Turnberry/Centra Office Sub, LLC, Turnberry Retail Holding, L.P., Jacquelyn Soffer and Jeffrey Soffer; and (viii) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **February 9, 2011 at 4:00 p.m. (Eastern Standard Time)** (the "*Objection Deadline*").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: January 11, 2011
       New York, New York

                            **KATTEN MUCHIN ROSENMAN LLP**

                            By:   */s/ Matthew W. Olsen*
                                  Kenneth E. Noble (KN 4842)
                                  Matthew W. Olsen (MO 0619)
                                  575 Madison Avenue
                                  New York, New York  10022-2585
                                  Telephone:  (212) 940-8800
                                  Facsimile:  (212) 940-8776

                                  *Attorneys for the Bank of Nova Scotia,*
                                  *New York Agency*

Hearing Date and Time: February 16, 2011 at 10:00 a.m.
Objection Date and Time: February 9, 2011 at 4:00 p.m.

**KATTEN MUCHIN ROSENMAN LLP**
Kenneth E. Noble (KN 4842)
Matthew W. Olsen (MO 0619)
575 Madison Avenue
New York, New York 10022-2585
(212) 940-8800 (Tel.)
(212) 940-8776 (Fax.)

*Attorneys for the Bank of Nova Scotia,*
*New York Agency*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| Debtors. | : | (Jointly Administered) |

----------------------------------------------------------------x

**MOTION OF THE BANK OF NOVA SCOTIA FOR RELIEF FROM THE**
**AUTOMATIC STAY TO FORECLOSE AGAINST THE TOWN SQUARE MALL**

Bank of Nova Scotia, New York Agency, in its capacity as administrative agent (the *"Administrative Agent"*), by and through its undersigned counsel, submits this motion for relief from the automatic stay with respect to the foreclosure of its mortgage on a certain shopping mall in Las Vegas, Nevada (the *"Town Square Mall"*) and states:

**INTRODUCTION**

1. Lehman Brothers Holdings, Inc. and its debtor affiliates (collectively, "*Lehman*") have no ownership interest in, or lien against, the Town Square Mall and have not alleged the existence of any such interest or lien. Lehman's sole connection to the Town Square Mall relates to an equitable claim for unjust enrichment alleged against the owner of the Town Square Mall, an entity named Turnberry/Centra Sub, LLC (the *"Town Square Borrower"*). This equitable

claim was alleged by Lehman, against each of the plaintiffs in an adversary proceeding pending before this Court, as a counterclaim to certain claims alleged by and on behalf of Jeffrey and Jacquelyn Soffer (the *"Soffers"*) seeking to avoid repayment of a $72 million loan made by Lehman to the Soffers individually with respect to their equity investment in the Town Square Borrower.

2. The Senior Lenders (defined below) made a $449 million construction loan to the Town Square Borrower which is secured by, *inter alia,* a perfected, first-priority mortgage on the Town Square Mall. The construction loan has matured, negotiations with the Soffers and other potential investors have broken down and the Administrative Agent now seeks to foreclose its mortgage to obtain ownership and control of the Town Square Mall.

3. In connection with the foreclosure process, the Administrative Agent has obtained a third-party commitment for title insurance. However, this commitment excepts from coverage any claim that the Agent's foreclosure of its mortgage would violate the automatic stay in the Lehman bankruptcy proceedings, based on the existence of the unjust enrichment claim discussed above. Out of an abundance of caution, given the significant size of the loan, and the need to obtain "clean" title insurance, the Administrative Agent has filed this motion for relief from the automatic stay.

4. Accordingly, the Administrative Agent requests that this Court enter an order in substantially the form attached hereto granting stay relief because (a) the automatic stay applicable in the Lehman bankruptcy proceedings does not prohibit the Agent's foreclosure of its mortgage on the Town Square Mall and (b) to the extent the automatic stay applies, which it does not, the Administrative Agent is entitled to relief under section 362(d) of Bankruptcy Code (i) for cause, including the harm to the Administrative Agent and the Senior Lenders if relief is not

granted, and (ii) because Lehman has no equity in the Town Square Mall and it is not necessary to an effective reorganization.

## BACKGROUND

### I.     Soffers

5.      The Soffers indirectly own and control a majority interest in the Turnberry family of real estate development companies, which in turn own, *inter alia,* the Town Square Borrower and, in turn, the Town Square Mall.  The Soffers are currently involved in litigation and restructuring negotiations with numerous lenders with respect to many of their real estate projects and investments.

### II.    Construction Loan

6.      On October 25, 2006, the Town Square Borrower entered into that certain Construction Loan Agreement (as amended, the ***"Construction Loan Agreement"***)[1] with the Administrative Agent, as successor-in-interest to Deutsche Bank Trust Company Americas, and certain Lenders (as defined therein) (the ***"Senior Lenders"***), pursuant to which the Senior Lenders agreed to make advances to the Town Square Borrower in the maximum aggregate principal amount of $470 million.[2]  Amounts loaned under the Construction Loan Agreement were used to finance construction of the Town Square Mall.

7.      Obligations under the Construction Loan Agreement are secured by a perfected, first-priority mortgage on the Town Square Mall and certain other collateral granted by the Town Square Borrower pursuant to that certain Deed of Trust, Security Agreement, Assignment of

---

[1]     A true copy of the Construction Loan Agreement is annexed hereto as Exhibit A.

[2]     As reduced from an original loan commitment in the maximum aggregate principal amount of $475 million.

84495585                                              3

Rents and Leases and Fixture Filing, dated as of October 25, 2006 ("**Construction Loan Deed of Trust**").[3]

8.  On March 2, 2009, all obligations under the Construction Loan Agreement, in the principal amount of approximately $449 million plus interest and fees, matured pursuant to their terms, and remain outstanding and unpaid.

### III. Lehman Loan

9.  On July 25, 2007, the Soffers individually entered into that certain Loan Agreement (as amended, the **"Lehman Loan Agreement"**) with Lehman Brothers Holdings, Inc., as lender, for loans in the maximum aggregate principal amount of $95 million.[4] Amounts loaned under the Lehman Loan Agreement were, upon information and belief, used by the Soffers to fund certain equity investments in the Town Square Borrower and certain other entities and, in turn, certain project improvements with respect to the Town Square Mall and related projects.

10. Obligations under the Lehman Loan Agreement are guaranteed by Turnberry Retail Holding, L.P. ("**Turnberry Retail**") pursuant to a Guaranty Agreement, dated as of July 25, 2007, and secured by a lien on certain equity interests, consisting of (a) a pledge of 49% of the equity in Turnberry/South Strip, L.P., which indirectly owns 70% of the equity of the Town Square Borrower, and (b) a pledge by Centra Park, LLC of 49% of its 30% interest in Turnberry/Centra Development, LLC, which indirectly owns 100% of the equity of the Town Square Borrower.

---

[3]  A true copy of the Construction Loan Deed of Trust, including all modifications thereto, is annexed hereto as Exhibit B.

[4]  A true copy of the Lehman Loan Agreement is annexed hereto as Exhibit C. The Lehman Loan Agreement was also filed with this Court as Exhibit A to the Answer, Affirmative Defenses and Counterclaims of Defendants Lehman Brothers Holdings, Inc. and Lehman Brothers Bank, FSB, dated March 30, 2009 (ECF Doc. 8 in the Soffer Litigation (as defined below)).

11.     Obligations under the Lehman Loan Agreement are further secured by a perfected, first-priority lien on certain air rights for the development of an office property (the *"Air Rights"*) owned by Turnberry/Centra Office Sub (*"Turnberry Office"*), pursuant to that certain Deed of Trust and Security Agreement, dated October 3, 2007.  Notably, at the time the Construction Loan Agreement was entered into, the Town Square Borrower owned the Air Rights and granted a lien thereon to secure its obligations under the Construction Loan Agreement.  Subsequently, the Administrative Agent released its lien on the Air Rights and the Town Square Borrower transferred said Air Rights to Turnberry Office, which in turn granted a lien thereon to Lehman to secure its guaranty obligations under the Lehman Loan Agreement.

12.     On February 27, 2009, all obligations under the Lehman Loan Agreement, in the principal amount of approximately $72 million, matured pursuant to their terms, and remain outstanding and unpaid.

**IV.    The Soffer Litigation**

13.     Also on February 27, 2009, in connection with said maturity, the Soffers, the Town Square Borrower, Turnberry Retail and Turnberry Office (collectively, the "*Soffer Plaintiffs*") commenced an adversary proceeding in this Court, captioned <u>Turnberry/Centra Sub, LLC, et al. v. Lehman Brothers Holdings, Inc., et al.</u>, Adv. Proc No. 09-1062 (JMP) (the *"Soffer Litigation"*).  In their complaint (the "*Complaint*"), the Soffer Plaintiffs allege that Lehman (a) promised, but failed to provide, up to $625 million of take-out financing to repay obligations under the Construction Loan Agreement and the Lehman Loan Agreement [5] and (b) agreed that

---

[5]     <u>See</u>, <u>e.g.</u>, <u>Complaint</u> ¶¶ 4-5; 49-51.

it would never seek to recover its loans from the Soffers (even though the Soffers are admittedly the only named borrowers under the Lehman Loan Agreement).[6]

14.     The Soffers seek damages against Lehman for breach of contract and declaratory relief seeking to avoid repayment of the approximately $72 million loaned. The Soffers also seek a declaratory judgment that, to the extent Lehman is entitled to repayment of the amounts loaned under the Lehman Loan Agreement, it cannot obtain repayment from the Soffers but can only recover from the Town Square Mall.[7]

15.     Lehman admits that the Soffers are the borrowers under the Lehman Loan Agreement but denies all other substantive allegations, including that Lehman agreed that it would not seek to recover its loans from the Soffers or that it can only recover from the Town Square Mall.[8]

16.     In addition, Lehman alleges certain counterclaims against the Soffers and the other Soffer Plaintiffs seeking a declaration that the Soffers and Turnberry Retail have breached their contractual obligations to Lehman and that the Soffer Plaintiffs (including the Town Square Borrower) have been unjustly enriched by virtue of their receipt of funds loaned under the Lehman Loan Agreement.[9]

## V.     Construction Loan Foreclosure Process

17.     The obligations under the Construction Loan Agreement, in the aggregate principal amount of approximately $449 million plus interest and fees, remain unpaid and have continued to accrue interest at the default rate since at least March 3, 2009. Since that time, the

---

[6]    Id. at ¶ 176; see also ¶¶ 6, 54, 169-175.

[7]    Id. ¶ 177, 186.

[8]    See Amended Answer, Affirmative Defenses and Counterclaims of Defendants Lehman Brothers Holdings, Inc. and Lehman Brothers Bank, FSB, dated July 12, 2010 (ECF Doc. 30 in the Soffer Litigation) ("**Answer and Counterclaims**"), at 29-32.

[9]    Id., at 42-44.

Administrative Agent and the Senior Lenders have engaged in restructuring negotiations with the Soffers and other potential investors, which have now broken down.

18.     The Administrative Agent previously commissioned an appraisal (the *"Appraisal"*) of the Town Square Mall by Cushman & Wakefield of Oregon, Inc. ("*C&W*") which indicates that, as of May 24, 2010, the current market value of the Town Square Mall was $415 million, which is significantly less than the amounts owed under the Construction Loan. (The Administrative Agent recently requested that C&W update the Appraisal which, although not yet completed, is expected to reflect a further deterioration in the current market value of the Town Square Mall.)

19.     The Administrative Agent and the Senior Lenders intend to exercise their right of foreclosure under the Construction Loan Deed of Trust to obtain ownership and control of the Town Square Mall. In connection with the foreclosure process, the Administrative Agent has obtained a title commitment from Fidelity National Title Insurance Company (the "*Title Company*") to provide an owner's policy for the benefit of the Senior Lenders. However, the Title Company's commitment excepts from coverage:

> Any claim that the foreclosure of the [Construction Loan Deed of Trust] ... is or was a violation of the automatic stay, or is avoidable under any other provision of the Bankruptcy Code, in In re Lehman Brothers Holdings, Inc., et al., United States Bankruptcy Court, Southern District of New York, Case No. 08-13555 (JMP).

20.     This exception will materially reduce or impair the amount of any purchase price that may be received by the Senior Lenders and was included by the Title Company as a result of Lehman's counterclaim for unjust enrichment asserted against the Town Square Borrower (and the other Soffer Plaintiffs) in the Soffer Litigation.

84495585                                                  7

**RELIEF REQUESTED**

21. By this motion, the Administrative Agent requests entry of an order pursuant to sections 362(d)(1) and 362(d)(2) of the Bankruptcy Code, granting relief from the automatic stay applicable in Lehman's chapter 11 cases, to the extent necessary or appropriate, to permit the Administrative Agent to foreclose its mortgage on the Town Square Mall.

**BASIS FOR RELIEF**

**I.     Lehman's Automatic Stay Does Not Apply.**

22. Lehman has no property interest in the Town Square Mall and neither the Soffers nor Lehman allege otherwise. Therefore, the Town Square Mall is not property of Lehman's estate,[10] and the Administrative Agent's proposed action to foreclose its mortgage and to obtain title to the Town Square Mall should not be subject to the automatic stay applicable in Lehman's chapter 11 cases.[11]

23. Although Lehman does have a security interest in the Air Rights, as discussed above, the Administrative Agent previously released its lien against the Air Rights and the Town Square Borrower transferred those rights to Turnberry Office, which in turned granted a lien thereon to Lehman to secure the Lehman Loan Agreement. Therefore, the proposed foreclosure of the Administrative Agent's mortgage on the Town Square Mall will in no way affect Lehman's interest in the Air Rights.

24. Although Lehman holds pledges of 49% of the equity interests in the indirect parent of the Town Square Borrower, those equity pledges, even if foreclosed, plainly would not

---

[10]   Property of the estate is defined by the Bankruptcy Code to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1).

[11]   Section 362(a) of the Bankruptcy Code provides, in relevant part, that the filing of a bankruptcy petition operates as a stay of "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; [or] "(4) any act to create, perfect, or enforce any lien against property of the estate."

84495585                                           8

create an interest in the Town Square Borrower, much less a property interest in the <u>assets</u> of the Town Square Borrower (*i.e.*, the Town Square Mall). Accordingly, the Administrative Agent's foreclosure of its mortgage on the Town Square Mall should not, based on said equity pledges, be subject to Lehman's automatic stay. See <u>Kreisler v. Goldberg</u>, 478 F.3d 209, 214-15 (4th Cir. 2007) (an action to obtain possession or to exercise control over assets of a non-debtor subsidiary of a debtor is not subject to the automatic stay provisions of the Bankruptcy Code); <u>In re Calvert</u>, 135 B.R. 398, 402 (Bankr. S.D. Cal. 1991) (board of non-debtor company in which debtor held 50% ownership interest was not stayed from exchanging debt for equity with another shareholder, thereby giving that shareholder a majority interest in the company and diluting the debtor's interest); <u>In re Cardinal Indus.</u>, 105 B.R. 834, 849 (Bankr. S.D. Ohio 1989) (bankruptcy of one partner does not stay an action against the partnership, even though the debtor's partnership interests may lose value as a result of the action).

25. Accordingly, foreclosure proceedings commenced by the Administrative Agent with respect to the Town Square Mall should not be viewed as an act to obtain possession or control over property of Lehman's estate or to enforce a lien against property of Lehman's estate, which would be prohibited by the automatic stay applicable in these chapter 11 cases. See 11 U.S.C. § 362(a)(3)-(4).

**II.    The Administrative Agent is Entitled to Relief from Lehman's
Automatic Stay to Foreclose its Mortgage against the Town Square Mall.**

26. Section 362(d) of the Bankruptcy Code states:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1)    for cause, including the lack of adequate protection of an interest in property of such party in interest;

84495585                                     9

  (2)  with respect to a stay of an act against property under subsection (a) of this section, if –

    (A)  the debtor does not have an equity in such property; and
    (B)  such property is not necessary to an effective reorganization.

27. As discussed below, if the automatic stay applies, which it does not, the Administrative Agent is entitled to relief under both sections 362(d)(1) and (d)(2) of the Bankruptcy Code.

  **A. Cause Exists to Grant Relief From Lehman's Automatic Stay Pursuant to Section 362(d)(1) of the Bankruptcy Code.**

28. In determining whether cause exists under section 362(d)(1) to terminate or otherwise modify the automatic stay, the Second Circuit has identified several factors to be considered (the ***"Sonnax Factors"***), including: (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or inference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether a judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.  <u>Sonnax Industries, Inc. v. Tri Component Products Corp. (In re Sonnax</u>

Industries Inc.), 907 F.2d 1280, 1285 (2d Cir. 1990); In re Taub, 413 B.R. 55, 61 (Bankr. E.D.N.Y. 2009).[12]

29. Not all of the Sonnax Factors are relevant in every case and the court need not give equal weight to each factor. In re Chana Taub, 413 B.R. 55 at 62. Rather, in applying "these factors and considering whether to modify the automatic stay, the Court should take into account the particular circumstances of the case, and ascertain what is just to the claimants, the debtor and the estate." Id. (quoting In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)). Of course, the Sonnax Factors are most logically applied with respect to litigation against or involving a debtor, and here Lehman would not be a party to the proposed foreclosure of the Town Square Mall. Nonetheless, four of the Sonnax Factors are relevant to the instant case: (1) whether the proposed foreclosure of the Town Square Mall has any connection to or will interfere with Lehman's bankruptcy case; (2) whether the foreclosure primarily involves third parties; (3) whether the foreclosure of the Town Square Mall would prejudice the interests of Lehman's creditors; and (4) the impact of the stay on the parties and the balance of harms. All such factors weigh in favor of finding that cause exists to grant stay relief in favor of the Administrative Agent.

---

[12] The preceding twelve factors were actually compiled by the court in In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984) and the Sonnax court examined only four of the factors in its dispute: (1) whether the proceeding was connected to or might interfere with the bankruptcy case; (2) whether the bankruptcy petition was filed in bad faith; (3) the balance of harms; and (4) the interests of judicial economy and the expeditious and economical resolution of litigation. In re Sonnax Industries Inc., 907 F.2d at 1285. However, the Sonnax court and subsequent courts of this Circuit have cited all twelve factors with approval. See Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 142 (2d Cir. 1999); Burger Boys, Inc. v. South St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994); In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994); In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).

30. With regard to the first factor, it is clear that because Lehman has no property interest in the Town Square Mall, the proposed foreclosure of the Administrative Agent's lien will not have a material affect upon their bankruptcy cases.

31. Similarly, the second factor is easily satisfied because the proposed foreclosure proceeding will involve only the Administrative Agent, the Town Square Borrower and those parties, such as mechanic's lienholders or lessees, who may claim a property interest in the Town Square Mall. There is no reason why Lehman need or should be involved in the proposed foreclosure in any way.

32. With respect to the third factor, Lehman's creditors will not be prejudiced by the foreclosure proceeding inasmuch as Lehman's estate has no interest in the Town Square Mall that could serve as a source of recovery for creditors. In the unlikely event that the foreclosure results in the sale of the Town Square Mall for an amount exceeding the amount owed under the Construction Loan, any excess proceeds would be available to pay any unsecured creditors of the Town Square Borrower, including with respect to any unjust enrichment claim that Lehman may subsequently establish. Consequently, any interest Lehman's creditors may have in the unjust enrichment claim, however attenuated, will not be prejudiced by the foreclosure proceeding.

33. Finally, to the extent Lehman's automatic stay is held to apply and is not modified to permit the proposed foreclosure of the Town Square Mall, the balance of harms plainly weighs in favor of the Administrative Agent and the Senior Lenders. An unfavorable application of Lehman's automatic stay in this case would prevent the Administrative Agent from acquiring acceptable title insurance for the Town Square Mall, thereby undermining prospective bids from subsequent purchasers and jeopardizing the Senior Lenders' entire restructuring strategy relating

to obligations exceeding $450 million, which has already taken years to implement. Lehman, on the other hand, stands to gain nothing from preventing the foreclosure of the Town Square Mall.

34. Accordingly, under the relevant Sonnax factors, cause exists to modify the stay in order to permit the Administrative Agent's foreclosure of its mortgage against the Town Square Mall.

### B. Relief from Lehman's Automatic Stay is Appropriate under Section 362(d)(2) of the Bankruptcy Code.

35. Lehman does not have a property interest in the Town Square Mall, let alone one that would rise to an equity therein. And in the absence of such an interest, the Town Square Mall is unnecessary to an effective reorganization of Lehman.

36. Courts interpreting section 362(d)(2) of the Bankruptcy Code define equity as "the surplus of value which may remain after the property has been disposed of for the satisfaction of liens." In re Garsal Reality, Inc., 98 B.R. 140, 154 (Bankr. N.D.N.Y. 1989) ("[I]f the movant holds the only lien on the property and [the lien] exceeds the value [of the property], not only is the creditor undersecured, but the debtor does not have an equity in such property."); see In re Pegasus Agency, Inc., 101 F.3d 882, 886 (2d Cir. 1996) (The debtor lacks an equity in property where the amount owed to a secured creditor exceeds the value of the property); In re Mount Moriah Baptist Church, Inc., 2010 WL 1930937 at *3 (Bankr. S.D.N.Y. 2010) (same).

37. The test of whether a debtor has an equity in property applies to cases, unlike here, where the debtor owns the property (or has some other interest in the property) against which a secured lender asserts a lien. Here, Lehman holds, at most, an unsecured claim against the Town Square Borrower but lacks any property interest in the Town Square Mall and, therefore, cannot be viewed as holding an equity in the Town Square Mall in any sense advanced by applicable case law.

84495585                                   13

38.     Nevertheless, even if Lehman's unjust enrichment claim could somehow be viewed as creating a property interest in the Town Square Mall, which it does not, Lehman would still lack an equity in the Town Square Mall.  The amount owed by the Town Square Borrower to the Senior Lenders secured by a first priority lien against the Town Square Mall is more than $449 million plus interest and fees, while the appraised market value of the Town Square Mall is less than $415 million.  Thus, no creditor holding an interest in the Town Square Mall junior to that of the Senior Lenders has any equity in the Town Square Mall.

39.     Once a creditor has demonstrated that a debtor does not possess an equity in property, the burden shifts to the debtor to demonstrate that the property is "essential for an effective reorganization that is in prospect."  United Savings Assoc. of Texas v. Timbers of Inwood Forest Ltd., 484 U.S. 365, 376 (1988); see 11 U.S.C. § 362(g) (the party opposing relief from the automatic stay under section 362(d) has the burden of proof on all issues other than the debtor's lack of equity in the property).  In the absence of any interest of Lehman in the Town Square Mall, it is clearly not essential to an effective reorganization of Lehman.

40.     Accordingly, the Administrative Agent is also entitled to relief from the automatic stay pursuant to section 362(d)(2) of the Bankruptcy Code to foreclose its mortgage against the Town Square Mall.

# **CONCLUSION**

41.    For each of the foregoing reasons, the Administrative Agent requests that this Court enter an order, in substantially the form annexed hereto, terminating the automatic stay applicable in Lehman's chapter 11 cases, to the extent necessary or appropriate, to permit the Administrative Agent to foreclose its mortgage on the Town Square Mall and granting such other relief as is necessary or appropriate.

Dated: January 11, 2011
New York, New York

**KATTEN MUCHIN ROSENMAN LLP**

By:   */s/ Matthew W. Olsen*
Kenneth E. Noble (KN 4842)
Matthew W. Olsen (MO 0619)
575 Madison Avenue
New York, New York  10022-2585
Telephone:  (212) 940-8800
Facsimile:  (212) 940-8776

*Attorneys for the Bank of Nova Scotia, New York Agency*