# Exhibit B

# Construction Loan Deed of Trust

Assessor's Parcel No.: *177-05-501-003*

*(45)*

*133*

20061026-0004346

Fee: $58.00
N/C Fee: $25.00

10/26/2006           13:51:27
T20060190956
Requestor:
   LAWYERS TITLE OF NEVADA

Charles Harvey              JJF
Clark County Recorder       Pgs: 45

---

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND
FIXTURE FILING

by and from

TURNBERRY/CENTRA SUB, LLC,
a Delaware limited liability company, *"Grantor"*

to

LAWYER'S TITLE OF NEVADA, INC., *"Trustee"*

for the benefit of

DEUTSCHE BANK TRUST COMPANY AMERICAS,
as Agent for Lenders, *"Beneficiary"*

Dated as of October *25*, 2006

THE SECURED PARTY (BENEFICIARY) DESIRES THIS FIXTURE FILING TO BE
INDEXED AGAINST THE RECORD OWNER OF THE REAL ESTATE DESCRIBED HEREIN.

Prepared By,
Recording Requested By
And When Recorded Mail To:

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Malcolm K. Montgomery, Esq.
File: 2138/461

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES
AND FIXTURE FILING (as amended, restated, replaced, supplemented or otherwise modified from
time to time, this "Deed of Trust") is dated as of October 25, 2006 and is made by and from
TURNBERRY/CENTRA SUB, LLC, a Delaware limited liability company ("Grantor"), having an
address at 19501 Biscayne Boulevard, Suite 400, Aventura, Florida 33180, to LAWYER'S TITLE OF
NEVADA, INC., a Nevada corporation ("Trustee"), having an address at 1210 S. Valley View Blvd.
#104, Las Vegas, NV 89102, for the benefit of DEUTSCHE BANK TRUST COMPANY AMERICAS,
in its capacity as administrative agent (in such capacity, "Agent") for Lenders (as defined below) (Agent,
together with its successors and assigns, "Beneficiary"), having an address at 60 Wall Street, New York,
New York 10005.

## PRELIMINARY STATEMENT

WHEREAS, Grantor has entered into that certain Construction Loan Agreement among
Grantor, as borrower, Deutsche Bank Trust Company Americas, as a lender and as administrative agent
for the Lenders (as defined therein), Deutsche Bank Securities Inc., as sole book-running manager and
sole lead arranger and the Lenders, dated as of even date herewith (as the same may be amended,
modified or supplemented from time to time the "Construction Loan Agreement");

WHEREAS, pursuant to the Construction Loan Agreement and subject to the terms and
conditions therein set forth, Lenders have agreed to make a loan to Grantor in a principal amount of up to
FOUR HUNDRED AND SEVENTY FIVE MILLION AND 00/100 DOLLARS ($475,000,000) (the
"Loan");

WHEREAS, to evidence such indebtedness, Grantor has executed and delivered, or will
in the future execute and deliver, one or more promissory notes (collectively, the "Notes"), in favor of
Lenders in an aggregate principal amount equal to the Loan and issued pursuant to, and in accordance
with, the Construction Loan Agreement;

WHEREAS, Grantor is the owner of the Mortgaged Property (as defined below) which
is the "Mortgaged Property" referred to in the Construction Loan Agreement; and

WHEREAS, Grantor has duly authorized the execution and delivery of this Deed of
Trust and has taken all actions required by law and all other actions of Grantor required therefor.

NOW, THEREFORE, in order to secure: (a) all indebtedness, obligations and liabilities
now or hereafter existing of any kind of Grantor to Beneficiary and Lenders with respect to the Loan and
the Loan Documents, including the sum of all (i) principal, interest and other amounts owing under or
evidenced or secured by the Loan Documents and (ii) principal, interest, future or additional advances and
other amounts which may hereafter be lent by Beneficiary or any of the other Lenders under or in
connection with the Construction Loan Agreement or any of the other Loan Documents for any purpose,
whether evidenced by a promissory note or other instrument which, by its terms, is secured hereby, (b) all
other indebtedness, obligations and liabilities now or hereafter existing of any kind of Grantor to
Beneficiary or any of the other Lenders under documents which recite that they are intended to be secured
by this Deed of Trust (items (a) and (b) being referred to collectively herein as the "Debt") and (c) the
performance by Grantor of all the covenants and agreements contained in the Notes, this Deed of Trust
and the other Loan Documents, as the same may be amended, modified, supplemented or restated, to be
performed or observed by or on the part of Grantor (items (a), (b) and (c) being referred to collectively
herein as, the "Secured Obligations") (in no event shall any obligation of Guarantors be included in the
Debt or Secured Obligations or otherwise secured hereby), Grantor, in consideration of the premises and

covenants hereinafter set forth and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, by these presents hereby agrees and covenants as follows:

GRANTOR HEREBY IRREVOCABLY GRANTS, BARGAINS, SELLS, PLEDGES, CONVEYS, TRANSFERS, ASSIGNS AND CONFIRMS unto Trustee, its successors and assigns forever, and grants a security interest to Trustee in, all of the following property (such property being referred to collectively herein as the "**Mortgaged Property**"), subject only to the *Permitted Encumbrances*, TO HAVE AND TO HOLD the Mortgaged Property, IN TRUST, WITH POWER OF SALE, and Grantor does hereby bind itself, its successors and assigns to WARRANT AND FOREVER DEFEND the title to the Mortgaged Property unto Trustee:

(a)    all estate, right, title and interest of Grantor, now owned or hereafter acquired, in and to those certain tracts or parcels of land as described in <u>Exhibit A</u> hereto, together with all rights of way or use, sidewalks, alleys, strips, gores, rights (including rights in streets (including those vacated or to be vacated)), privileges, air rights and development rights, sewer rights, waters, water courses, water rights, reservoir and drainage rights, and powers, servitudes, estates, licenses, easements, tenements, hereditaments and appurtenances incident, belonging or pertaining to such land, including any mineral, mining, oil and gas rights and rights to produce or share in the production of anything related thereto and similar or comparable rights of any nature whatsoever now or hereafter appurtenant (collectively, the "**Land**"), and all estate, right, title and interest of Grantor in the buildings, structures, fixtures and improvements now or hereafter located or placed thereon (which buildings and improvements, together with any additions thereto or alterations or replacements thereof, being referred to herein as the "**Improvements**");

(b)    all right, title and interest of Grantor in and to all machinery, apparatus, equipment, materials, fittings, fixtures, chattels, articles of personal property (real, personal or mixed) owned by Grantor or in which Grantor has or shall acquire an interest (to the extent of such interest), and now or hereafter located on, attached to or contained in or used in connection with the Land and the Improvements, or placed on any part thereof though not attached thereto, including all indoor and outdoor furniture, landscaping, indoor plants, tools, screens, awnings, shades, blinds, curtains, draperies, partitions, carpets, rugs, furniture and furnishings, heating, lighting, plumbing, water heating, cooking, monitoring, ventilating, air conditioning, refrigerating, sanitation, waste removal, incinerating or compacting plants, systems, fixtures and equipment, elevators, escalators, stoves, ranges, vacuum systems, window washing and other cleaning systems, call systems, sprinkler systems and other fire prevention and extinguishing apparatus and materials, alarms, computers, televisions, telecommunications, entertainment, recreational or security systems and equipment, motors, machinery, pipes, ducts, conduits, dynamos, engines, compressors, generators, boilers, stokers, furnaces, pumps, tanks, appliances, beds, linens, cash registers, lamps, glassware, rehabilitation equipment, medical, dental, therapeutic and paramedical equipment and other fixed assets (for purposes herein, "**other fixed assets**" shall be deemed to include any and all "**furniture, furnishings and equipment**" contained in or used in connection with the Land and/or the Improvements as such term is commonly understood (including any and all fixtures, furnishings, equipment, furniture, and other items of corporeal (tangible) movable (personal) property now or hereafter located on or used in connection with the Land or the Improvements or used in connection with the use, occupancy, operation and maintenance of all or any part of the Land or the Improvements, other than stocks of food and other supplies held for consumption in normal operation, but including appliances, machinery, equipment, signs, artwork (including paintings, prints, sculpture and other fine art), office furnishings and equipment, guest room furnishings, and specialized equipment for kitchens, laundries, bars, restaurant (dining room), public rooms, health and recreational facilities, linens, dishwashers, two-way radios, all partitions, screens, awnings, shades, blinds, floor

coverings, hall and lobby equipment, heating, lighting, plumbing, ventilating, refrigerating, incinerating, elevators, escalators, air conditioning and communication plants or systems with appurtenant fixtures, vacuum cleaning systems, call or beeper systems, security systems, sprinkler systems and other fire prevention and extinguishing apparatus and materials, all equipment, manual, mechanical or motorized, for the construction, maintenance, repair and cleaning of parking areas, walks, underground ways, truck ways, driveways, common areas, roadways, highways and streets) (collectively, "**Equipment**"; the Land, Improvements and Equipment are collectively referred to herein as the "**Premises**");

(c)  all personal property now or hereafter located at or used in connection with the Premises and owned by Grantor, including all building materials, supplies and equipment now or hereafter placed on the Land or in the Improvements and all architectural renderings, models, drawings, plans, specifications, studies and data now or hereafter relating to the Land or the Improvements;

(d)  all real estate tax refunds and credits and all awards or payments, including interest on any of them, and any right to receive the same which Grantor may have, which may be made with respect to any of the Premises whether from a condemnation thereof or for any other injury to, decrease in the value of, or other occurrence affecting any of the Premises;

(e)  all leases, subleases, licenses and guarantees thereof, and all other agreements, documents, records and instruments for, affecting or related to, the Premises, including the use, development, construction, management and occupancy thereof and the sale of units at the Premises now or hereafter entered into (including (i) all contracts of sale for such units, (ii) all warranties, guarantees and Approvals and (iii) any use or occupancy arrangements created pursuant to Section 365(d) of Title 11 of the United States Code (the "**Bankruptcy Code**") or otherwise in connection with the commencement or continuance of any bankruptcy, reorganization, arrangement, insolvency, dissolution, receivership or similar proceedings, or any assignment for the benefit of creditors, in respect of any Tenant or occupant of any portion of the Premises) (collectively, the "**Agreements**");

(f)  all rents, tolls, incomes, proceeds, issues, royalties, revenues, bonuses and profits derived by Grantor from the Premises (whether paid or accruing before or after filing by or against Grantor of any petition for relief under the Bankruptcy Code) (collectively, the "**Rents**") and the right to apply the Rents to the payment of the Debt, together with the security deposits or other payments or instruments delivered as security under the Agreements and all leases, licenses and other agreements with any Tenant or occupant of any portion of the Premises (collectively, the "**Leases**");

(g)  all of Grantor's claims and rights to damages and any other remedies in connection with or arising from the rejection of the Leases by any Tenant or occupant or any trustee, custodian or receiver pursuant to the Bankruptcy Code in the event that there shall be filed by or against any Tenant or occupant any petition, action or proceeding under the Bankruptcy Code or under any other similar federal or state law now or hereafter in effect;

(h)  all monies, accounts, instruments and other property (including all additional collateral and other pledges of money provided to Beneficiary pursuant to the terms of this Deed of Trust or any other Loan Documents) constituting a part of the security for the Loan or the performance by Grantor of its obligations under this Deed of Trust or the other Loan Documents as of any particular time, including all collateral subject to the Lien evidenced by any of the Loan Documents or assigned to Grantor on or after the date hereof, and any proceeds of the foregoing;

3

(i)     all right, title and interest of Grantor in and to all proceeds of, and any unearned premiums or refunds of premiums on, any insurance policies covering all or any part of the Premises or other portion of the Mortgaged Property, including the right to receive and apply the proceeds of any insurance, judgments or settlements made in lieu thereof for damage to or the diminution of the Premises;

(j)     all awards or payments, including interest thereon, which may heretofore or hereafter be made with respect to the Premises, whether from the exercise of the right of eminent domain (including any transfer made in lieu or in anticipation of the exercise of the right), or for a change of grade, or for any other injury to or decrease in value of the Premises;

(k)     all right, title and interest of Grantor in and to all general intangibles relating to design, development, operation, management and use of the Premises, all certificates of occupancy, zoning variances, building, use or other Approvals in connection with the development, use, operation or management of the Premises, all construction, service, engineering, consulting, development, management, leasing, architectural and other similar contracts concerning the design, construction, development, management, administration, operation, occupancy and/or use of the Premises, all architectural drawings, plans, specifications, soil tests, appraisals, engineering reports and similar materials relating to all or any portion of the Premises and all payment and performance bonds or warranties or guarantees relating to the Premises;

(l)     all right, title and interest of Grantor in and to all intellectual property, trademarks, trade names, corporate names, company names, business names, fictitious business names, trade styles, service marks, logos, other source and business identifiers, trademark registrations and applications for registration used exclusively at or relating exclusively to the Premises or any portion thereof; all renewals, extensions and continuations-in-part of the items referred to above; any written agreement granting to Grantor any right to use any trademark or trademark registration at or in connection with any of the Premises; and the right of Grantor to sue for past, present and future infringements of the foregoing;

(m)     all rights, dividends and/or claims of any kind whatsoever relating to the Premises (including damage, secured, unsecured, lien, priority and administration claims); together with the right to take any action or file any papers or process in any court of competent jurisdiction, which may in the opinion of Beneficiary be necessary to preserve, protect, or enforce such rights or claims, including the filing of any proof of claim in any insolvency proceeding under any state, federal or other laws and any rights, claims or awards accruing to or to be paid to Grantor in connection with the Leases or Agreements; and the right in the name and on behalf of Grantor to appear in and defend any action or proceeding brought with respect to any of the Premises or any other component of the Mortgaged Property, and to commence any action or proceeding to protect the interest of Beneficiary therein;

(n)     all rights which Grantor now has or may hereafter acquire, to be indemnified and/or held harmless and/or reimbursed from any Loss relating to the Mortgaged Property;

(o)     all appurtenances in respect of or otherwise relating to the Leases, including all the estate and rights of the Grantor of, in and to (i) all modifications, extensions and renewals of the Leases and all rights to renew or extend the term of the Leases, (ii) all of Grantor's rights, if any, pertaining to deposits of the lessee under the Leases (including lessee security deposits, if any), (iii) all the right or privilege of Grantor to terminate, cancel, abridge, surrender, merge, modify or amend the Leases and (iv) any and all possessory rights of Grantor and other rights

4

and/or privileges of possession, including Grantor's right to elect to take possession of the Mortgaged Property;

(p)     all present and future monetary deposits given by Grantor to any public or private utility with respect to utility services furnished to any part of the Premises or the Improvements;

(q)     all right, title and interest of Grantor in and to all refunds, credits and rebates of taxes and assessments relating to the Premises (except to the extent such refunds, credits and rebates relate to taxes or assessments paid directly by any lessee under any Lease);

(r)     all of Grantor's, right, title and interest in and to all proceeds, products, substitutions and accessions (including claims and demands therefor) including interest receivable thereon, of the voluntary or involuntary conversion of any of the foregoing, including proceeds of insurance and condemnation awards, into cash or liquidated claims;

(s)     without prejudicing the generality of the foregoing, all right, title and interest of Grantor assigned pursuant to the following agreements:   Assignment of Agreements and Assignment of Leases;

(t)     any of the foregoing to the extent acquired from and after the date hereof;

(u)     all other or greater rights and interests of every nature in the Premises and in the possession or use thereof and income therefrom, whether now owned or hereafter acquired by Grantor; and

(v)     all right, title and interest of Grantor in and to all extensions, improvements, betterments, renewals, substitutes, amendments, modifications, supplements and replacements of or to, and all additions and appurtenances to, any of the foregoing heretofore or hereafter acquired by, or released to, Grantor or constructed, assembled or placed by Grantor on the Premises and all conversions of the security constituted thereby, immediately upon such acquisition, release, construction, assemblage, placement or conversion, as the case may be, and in each such case, without any further grant, conveyance, assignment or other act by Grantor, shall become subject to the Lien of this Deed of Trust as fully and completely, and with the same effect, as though now owned by Grantor and specifically described herein.

The following actions of Beneficiary or Trustee, with or without notice, shall not affect the liability of Grantor for payment or performance of the Secured Obligations, and shall not affect the Lien hereof upon the Mortgaged Property not expressly released herefrom:

(a)     retaining or obtaining a security interest in any additional property or collateral to secure all or any portion of the Secured Obligations;

(b)     altering, amending, supplementing, exchanging, extending, renewing, modifying, releasing or canceling for any period (whether or not longer than their original maturity) any terms, conditions, provisions or covenants contained in any or all of the Loan Documents;

(c)     releasing or compromising any liability of any Person or Persons primarily, secondarily or otherwise liable on all or any portion of the Secured Obligations;

(d)     releasing its security interest, if any, in the Mortgaged Property and/or permitting any substitution or exchange for the Mortgaged Property;

5

(e)      resorting to the Mortgaged Property for payment of the Secured Obligations, or any portion thereof, whether or not Beneficiary shall have resorted to any other property otherwise securing the Secured Obligations, or to the extent permitted by law, shall have proceeded against any other Person primarily, secondarily or otherwise liable on the Secured Obligations; and/or

(f)      applying the Mortgaged Property or directing the order or manner of sale thereof as Beneficiary in its sole discretion chooses in accordance with the terms of this Deed of Trust.

To protect the security of this Deed of Trust, Grantor covenants and agrees with and represents and warrants to Trustee and Beneficiary, subject in all respects to the Permitted Encumbrances, as follows:

## 1.  DEFINITIONS.

### 1.1 Capitalized Terms Not Defined Herein.

Capitalized terms, not otherwise defined in this Deed of Trust, shall have the respective meanings assigned thereto in the Construction Loan Agreement.

### 1.2 Construction.

For all purposes of this Deed of Trust, except as otherwise expressly provided or unless the context otherwise requires:

(a)      The terms defined in this **Section 1** shall have the meanings assigned to them in this **Section 1** and shall include the plural as well as the singular.

(b)      All accounting terms not otherwise defined herein shall have the meanings assigned to them in accordance with generally accepted accounting principles in the United States of America, and, except as otherwise herein expressly provided, the term "generally accepted accounting principles" with respect to any computation required or permitted hereunder shall mean such accounting principles as are generally accepted in the United States of America as of the date of such computation.

(c)      The word "including" shall be construed to be followed by the words "without being limited to".

(d)      Captions are for the convenience of the reader and shall not be considered in interpreting this Deed of Trust or the intent of the parties hereto.

(e)      The words "herein", "hereof" and "hereunder" and other words of similar import shall refer to this Deed of Trust as a whole and not to any particular Article, Section, paragraph or other subdivision.

(f)      The term "Mortgaged Property" shall be deemed to mean "Mortgaged Property or any portion thereof or interest therein".

**1.3 Certain Definitions.**

As used in this Deed of Trust, the following terms shall have the following respective meanings:

(a)   "**Agreements**" shall have the meaning stated in the Preliminary Statement.

(b)   "**Bankruptcy Code**" shall have the meaning stated in the Preliminary Statement.

(c)   "**Beneficiary**" shall have the meaning set forth in the introductory paragraph.

(d)   "**Claims**" shall have the meaning stated in **Section 8**.

(e)   "**Construction Loan Agreement**" shall have the meaning stated in the Preliminary Statement.

(f)   "**Debt**" shall have the meaning stated in the Preliminary Statement.

(g)   "**Deed of Trust**" shall have the meaning stated in the introductory paragraph.

(h)   "**Equipment**" shall have the meaning stated in the Preliminary Statement.

(i)   "**Grantor**" shall have the meaning set forth in the introductory paragraph.

(j)   "**Grantor's Contest Right**" shall mean Grantor's right to contest certain matters pursuant to **Section 5.1(b)(ii)** of the Construction Loan Agreement, subject to all of the terms and conditions set forth in said Section.

(k)   "**Hazardous Substances Activity**" shall have the meaning stated in the Environmental Indemnity.

(l)   "**Hazardous Substances Claim**" shall have the meaning stated in the Environmental Indemnity.

(m)   "**Improvements**" shall have the meaning stated in the Preliminary Statement.

(n)   "**Indemnified Party**" shall mean Agent, Beneficiary, the Lead Arranger, each Lender, any Person who is or will have been involved in the origination of the Loan, Trustee, any Person who is or will have been involved with the servicing of the Loan, any Person in whose name the encumbrance created by this Deed of Trust is or will have been recorded, Persons who may hold or acquire or will have held a full or partial interest in the Loan (including participants in the Loan, as well as custodians, trustees and other fiduciaries who hold or have held a full or partial interest in the Loan for the benefit of third parties), as well as the respective directors, officers, shareholders, partners, members, managers, employees, agents, designees, nominees, servants, representatives, contractors, subcontractors, Affiliates, subsidiaries, participants, successors and assigns of any and all of the foregoing (including any other Person who holds or acquires or will have held a participation or other full or partial interest in the Loan or the Mortgaged Property, whether during the term of the Loan or as a part of or following a foreclosure of the Loan and including any successors by merger, consolidation or acquisition of all or a substantial portion of Agent's or any Lender's assets and business).

7

(o)    **"Land"** shall have the meaning stated in the Preliminary Statement.

(p)    **"Leases"** shall have the meaning stated in the Preliminary Statement.

(q)    **"Loan"** shall have the meaning stated in the Preliminary Statement.

(r)    **"Loss"** shall mean any and all losses, liabilities, damages, punitive damages, demands, claims, actions, judgments, causes of action, assessments, penalties, costs and expenses (including sums paid in settlement of claims), liens, interest, fines or penalties, including the fees and disbursements of accountants, consultants, experts and reasonable legal fees and disbursements, and all other costs and expenses of any kind and/or nature.

(s)    **"Lender"** shall have the meaning stated in the Preliminary Statement.

(t)    **"Mortgaged Property"** shall have the meaning stated in the Preliminary Statement.

(u)    **"Notes"** shall have the meaning stated in the Preliminary Statement.

(v)    **"Personal Property"** shall have the meaning stated in **Section 19.1**.

(w)    **"Premises"** shall have the meaning stated in the Preliminary Statement.

(x)    **"Protective Advance"** shall have the meaning stated in **Section 17**.

(y)    **"Remedy"** shall have the meaning stated in **Section 11**.

(z)    **"Secured Obligations"** shall have the meaning stated in the Preliminary Statement.

(aa)    **"Trustee"** shall have the meaning set forth in the introductory paragraph.

(bb)    **"Uniform Commercial Code"** shall mean The Uniform Commercial Code in effect in the State in which the Premises are located or, if the creation, perfection and enforcement of any security interest herein granted is governed by the laws of a state other than the State in which the Premises are located, then, as to the matter in question, the Uniform Commercial Code in effect in that state.

## 2.  PAYMENT OF THE DEBT.

Grantor shall duly pay all amounts constituting the Debt at the time and in the manner provided in the Loan Documents.

## 3.  PERFORMANCE AND OBSERVANCE OF LOAN DOCUMENTS.

Grantor shall duly perform, observe and comply with all of the affirmative and negative covenants, agreements and obligations to be performed, observed and complied with by Grantor, and all of the other terms and conditions applicable to Grantor, under the terms of the Construction Loan Agreement and all other Loan Documents, as if each such covenant, agreement, obligation, term and condition were expressly set forth herein in full. Without limiting the generality of the foregoing, Grantor shall maintain the Premises, pay or contest Taxes and Other Charges, obtain and maintain insurance, keep

the Mortgaged Property free and clear of Liens (other than Permitted Encumbrances), pay the utility charges for the Premises, perform alterations and repairs in respect of the Premises, cause the Premises to comply with all Legal Requirements, restore the Premises upon any casualty or Condemnation, and lease the Premises, all in accordance with and subject to all of the applicable terms and conditions of the Construction Loan Agreement and the other Loan Documents.

### 4.  INSURANCE.

Grantor shall, at its sole cost and expense, continuously keep and maintain insurance in respect to the Mortgaged Property and Grantor's operations thereat, of the type and in the form and with insurers, all as provided in the Construction Loan Agreement.

### 5.  CASUALTY AND CONDEMNATION.

All Net Proceeds to which Grantor may be entitled resulting from a casualty at, or the Total Condemnation or Partial Condemnation of, the Mortgaged Property or injury to the Mortgaged Property in connection with such casualty, Total Condemnation or Partial Condemnation, as the case may be, shall be distributed and applied towards restoration of the Mortgaged Property or repayment of the Debt in accordance with the provisions of **Article 10** of the Construction Loan Agreement.

### 6.  MAINTENANCE OF VALIDITY AND RECORDING.

#### 6.1  Filing, Registration, Recording.

Grantor covenants that it shall forthwith after the execution and delivery of this Deed of Trust and thereafter as necessary from time to time cause this Deed of Trust, the Assignment of Leases and UCC financing statements and any continuation statements or similar instruments relating to any property subject thereto or to any property intended to be granted, conveyed, transferred and assigned by this Deed of Trust to be filed, registered and recorded in such manner and in such places as may be required by law in order to publish notice of and fully to protect the validity thereof or the grant thereby of the property subject thereto and the interest and rights of Beneficiary therein. Grantor covenants that it has paid or shall pay or cause to be paid all taxes and fees incident to such filing, registration and recording, and all expenses incident to the preparation, execution and acknowledgment thereof, and of any instrument of further assurance, and all federal or state stamp taxes (including all mortgage recording taxes, documentary stamp taxes, non-recurring intangible personal property taxes and like taxes) or other charges arising out of or in connection with the execution, delivery, filing, registration or recording of such instruments.

#### 6.2  Warranty of Title.

Grantor warrants that it has good and marketable fee simple title to the Premises (other than any portion thereof consisting of easements) and a good and marketable easement estate in any portion of the Premises consisting of easements, in each case free and clear of all Liens, subject only to Permitted Encumbrances. Grantor warrants that it has and will continue to have full power and lawful authority to encumber and convey the Mortgaged Property as provided herein and that this Deed of Trust is and will continue to remain a valid and enforceable first priority deed of trust Lien on and security interest in the Mortgaged Property, subject only to Permitted Encumbrances. Grantor further covenants that it shall preserve such title and shall forever warrant and defend the title to the Mortgaged Property, subject to the Permitted Encumbrances, against all lawful claims whatsoever and shall forever warrant and defend the validity, enforceability and first priority of the Lien of this Deed of Trust against the claims of all Persons whomsoever. If any Lien or security interest other than a Permitted Encumbrance is

9

asserted against the Mortgaged Property, Grantor shall promptly, and at its expense, (a) give Beneficiary a detailed written notice of such lien or security interest (including origin, amount and other terms), and (b) pay the underlying claim in full or take such other action so as to cause it to be released or contest the same in compliance with Grantor's Contest Right.

### 6.3 Maintenance of Validity of Deed of Trust and Other Loan Documents.

Grantor shall maintain the validity, perfection, priority and effectiveness of this Deed of Trust and the other Loan Documents. Unless otherwise permitted in this Deed of Trust and the other Loan Documents, Grantor shall not take any action, shall not permit any action to be taken by others and shall not omit to take any action, nor shall Grantor give any notice, approval or consent or exercise, waive or modify any rights under or in respect of the Permitted Encumbrances, which action, omission, notice, approval, consent or exercise, waiver or modification of rights would release Grantor from, or reduce any of Grantor's obligations or liabilities under, or would result in the termination, surrender or assignment of, or the amendment or modification of, any of the Loan Documents, or would impair the validity of this Deed of Trust or any of the other Loan Documents, or would affect the Mortgaged Property in any adverse respect, without Beneficiary's consent, and any attempt to do any of the foregoing without such consent shall be null and void and of no force or effect.

### 6.4 Further Assurances.

Grantor shall, at the cost of Grantor, and without expense to Beneficiary, Trustee or any Lender, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, deeds of trust, mortgages, assignments, notices of assignments, transfers and assurances as Trustee or Beneficiary shall, from time to time, reasonably require, for the better assuring, conveying, assigning, transferring, and confirming unto Trustee and Beneficiary the property and rights hereby deeded, granted, bargained, sold, conveyed, confirmed, pledged, assigned, warranted and transferred or intended now or hereafter so to be, or which Grantor may be or may hereafter become bound to convey or assign to Trustee or Beneficiary, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust, or for complying with all Legal Requirements. Grantor, on demand, shall execute and deliver, and in the event it shall fail to so execute and deliver, hereby authorizes Beneficiary to execute in the name of Grantor or without the signature of Grantor to the extent Beneficiary may lawfully do so, one or more financing statements (including initial financing statements and amendments thereto and continuation statements) with or without the signature of Grantor as authorized by applicable law, to evidence more effectively the security interest of Beneficiary and Lenders in the Mortgaged Property. Grantor also ratifies its authorization for Beneficiary to have filed any like initial financing statements, amendments thereto and continuation statements, if filed on or prior to the date of this Deed of Trust. Grantor grants to Beneficiary an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all Remedies available to Beneficiary and Lenders. To the extent not prohibited by applicable law, Grantor hereby ratifies all acts Beneficiary has lawfully done in the past or shall lawfully do or cause to be done in the future by virtue of such power of attorney.

### 6.5 Replacement Documents.

Upon receipt of an affidavit of an officer of Beneficiary as to the loss, theft, destruction or mutilation of one or more of the Notes or any other Loan Document which is not of public record, and, in the case of any such mutilation, upon surrender and cancellation of such Note or other Loan Document, Grantor will issue, in lieu thereof, a replacement note or other Loan Document, dated the date of such lost, stolen, destroyed or mutilated Note or other Loan Document in the same principal amount thereof and otherwise of like tenor.

## 7. NO ENDORSEMENT.

Neither Trustee nor Beneficiary shall become or be considered to be an endorser, co-maker or co-obligor on the Notes or on any Secured Obligation.

## 8. INDEMNIFICATION.

(a)        Grantor will protect, indemnify and save harmless each Indemnified Party from and against all Loss (including all fees and expenses incurred by any Indemnified Party in connection with litigation, mediation, arbitration, other alternative dispute processes, administrative proceedings and bankruptcy proceedings, and any and all appeals from any of the foregoing) imposed upon or incurred by or asserted against any Indemnified Party by reason of the occurrence or existence of any of the following prior to the payment and performance in full of the Secured Obligations and the satisfaction of all conditions for the satisfaction and release of this Deed of Trust, save to the extent caused directly by such Indemnified Party's gross negligence or willful misconduct (collectively, the "**Claims**"):

(i)        ownership of this Deed of Trust;

(ii)        ownership or possession of Grantor's interest in the Mortgaged Property or receipt of any Rents;

(iii)        any amendment to, or restructuring of, the Debt or any Loan Document;

(iv)        any accident, injury to or death of any Persons or loss of or damage to property occurring on or about the Premises or the adjoining parking areas, sidewalks, curbs, vaults and vault space, if any, streets or ways;

(v)        any use, non-use or condition of the Premises or the adjoining parking areas, sidewalks, curbs, streets or ways, including Loss arising from violation of any Legal Requirement or Insurance Requirement, as well as any Loss based on any patent or latent defect, whether or not discoverable by any Indemnified Party;

(vi)        any failure on the part of Grantor to perform or comply with any of the terms of this Deed of Trust, any Lease, Agreement or any other Loan Document or document to which it is a party and any breach in any material respect of any representation or warranty made by Grantor herein or by Grantor or any other Borrower Party in any other Loan Document;

(vii)        any performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property;

(viii)        any failure of the Mortgaged Property to be in compliance with any Legal Requirements;

(ix)        any and all claims and demands whatsoever which may be asserted against any Indemnified Party by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants, or agreements contained in any Lease;

(x)     the payment of any commission, charge or brokerage fee to anyone claiming through Grantor which may be payable in connection with the origination or funding of the Loan;

(xi)    any bad faith, negligence or tortious act or omission on the part of Grantor or any Borrower Party or any of their respective agents, contractors, servants, employees, sublessees, licensees or invitees;

(xii)   any contest undertaken by Grantor (even if the same is permitted by the terms of the Loan Documents);

(xiii)  any Hazardous Substances Activity or any Hazardous Substances Claim; and

(xiv)   the enforcement of this Deed of Trust or any other Loan Document, including the enforcement by any Indemnified Party of the provisions of this **Section 8**.

(b)     Beneficiary shall, on behalf of any Indemnified Party, give notice to Grantor of any Claim for which any Indemnified Party believes it is entitled to indemnification hereunder promptly upon the applicable Indemnified Party's discovery of the action or event giving rise to such Claim and such Indemnified Party notifying Beneficiary of the same, but the failure of Beneficiary to provide such notice shall neither cause the forfeiture of the right to receive indemnity hereunder nor limit such right. Any amounts payable under this **Section 8** to an Indemnified Party that are not paid within ten (10) days after written demand therefor by Beneficiary or the applicable Indemnified Party, setting forth in reasonable detail the amount of such demand and the basis therefor, shall bear interest from the date of demand until paid at the Default Rate and shall be secured by this Deed of Trust.

(c)     In case any action, suit or proceeding is brought against an Indemnified Party by reason of any Claim, Grantor, upon the request of such Indemnified Party, shall (or, at the option of such Indemnified Party, such Indemnified Party may) at Grantor's expense resist and defend such action, suit or proceeding or cause the same to be resisted and defended by counsel for the insurer of the liability or by counsel selected by Grantor (unless reasonably disapproved by such Indemnified Party, for example, if an Indemnified Party believes in its reasonable discretion that a conflict exists). So long as Grantor is resisting and defending such action, suit or proceeding in a commercially reasonable manner, such Indemnified Party shall not be entitled to settle such action, suit or proceeding or claim the benefit of this **Section 8** with respect to such action, suit or proceeding (including the right to reimbursement of such Indemnified Party's counsel fees and expenses), and such Indemnified Party agrees that it will not settle any such action, suit or proceeding without the written consent of Grantor which consent shall not be unreasonably withheld or delayed, *provided* that if Grantor is not diligently defending such action, suit or proceeding in a commercially reasonable manner as provided above, such Indemnified Party may settle such action, suit or proceeding, and claim the benefit of this **Section 8** with respect to settlement of such action, suit or proceeding.

(d)     The indemnification set forth in this **Section 8** shall be in addition to and shall not derogate from any other indemnities in favor of any Indemnified Party as set forth in this Deed of Trust or any other Loan Document and shall survive the payment and performance in full of the Secured Obligations.

## 9. NO CREDIT FOR PAYMENT OF TAXES OR OTHER CHARGES; DOCUMENTARY STAMPS.

### 9.1 Payment of Taxes.

If any Law or Regulation is enacted or adopted or amended after the date hereof which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Trustee's, Beneficiary's or any Lender's interest in the Mortgaged Property, Grantor shall pay the tax, with interest and penalties thereon, if any. If Beneficiary is advised by counsel chosen by it that the payment of tax by Grantor would be unlawful or taxable to Trustee, Beneficiary or any Lender or unenforceable or provide the basis for a defense of usury then Beneficiary shall have the option by written notice of not less than one hundred twenty (120) days to declare the Debt immediately due and payable.

### 9.2 No Credit.

Borrower shall not claim or demand or be entitled to any credit or credits on account of the Debt for any part of the Taxes or Other Charges assessed against the Premises and no deduction shall otherwise be made or claimed from the assessed value of the Premises for real estate tax purposes by reason of this Deed of Trust or the Debt. If such claim, credit or deduction shall be required by Law or Regulation, Beneficiary shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable.

### 9.3 Documentary Stamps.

If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Notes, this Deed of Trust, or any of the other Loan Documents or impose any other tax or charge on same, Grantor shall pay same, with interest and penalties thereon, if any.

## 10. COMPROMISE OF ACTIONS BY BENEFICIARY.

Any action, suit or proceeding brought by Trustee or Beneficiary pursuant to this Deed of Trust or otherwise and any claim made by Trustee or Beneficiary under this Deed of Trust or otherwise may be compromised, withdrawn or otherwise dealt with by Trustee or Beneficiary, as applicable, without notice to or the approval of Grantor.

## 11. REMEDIES.

(a)    Upon the occurrence and during the continuance of any Event of Default, Grantor agrees that Beneficiary may (by or through Trustee or otherwise) take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Grantor and in and to the Mortgaged Property, including the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Beneficiary may determine, in its sole discretion, without impairing or otherwise affecting the other Remedies of Trustee, Beneficiary or Lenders:

(i)    declare the entire unpaid Debt to be immediately due and payable;

(ii)    institute proceedings, judicial or otherwise, for the complete foreclosure of this Deed of Trust under any applicable provision of law, as described further in **Section 12**;

(iii)    with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Deed of Trust for the portion of the Debt then due and payable, subject to the continuing Lien and security interest of this Deed of Trust for the balance of the Debt not then due, unimpaired and without loss of priority;

(iv)    sell for cash or upon credit the Mortgaged Property and all estate, claim, demand, right, title and interest of Grantor therein and rights of redemption thereof, pursuant to power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law, as further described in **Sections 12 and 34.5**;

(v)    institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained in the Loan Documents;

(vi)    recover judgment on the Notes either before, during or after any proceedings for the enforcement of this Deed of Trust or the other Loan Documents;

(vii)    apply for the appointment of a receiver, trustee, liquidator or conservator of the Mortgaged Property, as described further in **Section 13**;

(viii)    enter into or upon the Premises, either personally or by its agents, nominees or attorneys and dispossess Grantor and its agents and servants therefrom, as described further in **Section 14**;

(ix)    exercise any and all Remedies granted to a secured party upon default under the Uniform Commercial Code;

(x)    apply any sums then deposited or held in escrow or otherwise by or on behalf of Beneficiary or Lenders in accordance with the terms of the Loan Documents to the payment of the following items in any order in its uncontrolled discretion: (A) Taxes and Other Charges, (B) Insurance Premiums, (C) interest on the unpaid principal balance of the Debt, (D) amortization of the unpaid principal balance of the Debt and (E) all other sums constituting the Secured Obligations that are due and payable; and

(xi)    pursue such other Remedies as Trustee, Beneficiary or Lenders may have, by one or more proceedings, whether contemporaneous, consecutive or both, to be determined by Beneficiary in its sole discretion.

(b)    In the event of a sale, by foreclosure, power of sale or otherwise, of less than all of Mortgaged Property, this Deed of Trust shall continue as a Lien and security interest on the remaining portion of the Mortgaged Property unimpaired and without loss of priority.

(c)    Neither the acceptance of this Deed of Trust or any other Loan Document nor the enforcement thereof in any one state, whether by court action, foreclosure, power of sale or otherwise, shall prejudice or in any way limit or preclude enforcement by court action, foreclosure, power of sale or otherwise, of the Notes, this Deed of Trust or any other Loan Document through one or more additional proceedings in that state or in any other state.

(d)    Each right, privilege, recourse, power and remedy of Trustee, Beneficiary and Lenders provided for in this Deed of Trust or any other Loan Document, now or hereafter existing at law

14

or in equity or by statute or otherwise (each, a "**Remedy**") shall be cumulative and concurrent and shall be in addition to every other Remedy, and the exercise or beginning of the exercise of a Remedy shall not preclude the simultaneous or later exercise, to the extent permitted by law, of any or all such other Remedies.

(e)    All notice and cure periods provided herein or in any other Loan Document shall run concurrently with any notice or cure periods provided by law. Without limiting the foregoing, any other provision hereof to the contrary notwithstanding, Beneficiary or Trustee shall be entitled to cause a notice of breach and election to sell to be recorded and mailed if any event occurs which, with the giving of notice and/or passage of time, would constitute an Event of Default and the recording and mailing to Grantor of such notice of breach and election to sell shall constitute notice of such Default.

## 12.    FORECLOSURE.

### 12.1    Foreclosure; Environmental Assessments.

If any Event of Default shall have occurred and be continuing, Beneficiary may, at Beneficiary's election and by or through Trustee or otherwise, proceed, at law or in equity or otherwise, to enforce the payment of the Debt in accordance with the terms of the Loan Documents and:

(a)    to institute an action to foreclose its interest under the Lien of this Deed of Trust against the Mortgaged Property by judicial foreclosure sale or strict foreclosure in one proceeding or against portions of the Mortgaged Property in a series of separate proceedings, and to have the same sold under the judgment or decree of a court of competent jurisdiction or proceed to take any of such actions;

(b)    to take such other action at law or in equity or otherwise for the enforcement of this Deed of Trust and the realization, upon obtaining a judgment for foreclosure, on the security or any other security herein or elsewhere provided for, in such manner and at such times as the law may allow, and may proceed therein to the extent permitted, and subject to the limitations imposed by law, to final judgment and execution for the entire unpaid balance of the Debt, together with all other sums payable by Grantor in accordance with the provisions of the Notes, this Deed of Trust and the other Loan Documents, and all sums which may have been advanced by Beneficiary and Lenders for Taxes and Other Charges, water or sewer rents, charges or claims, payment on prior Liens, insurance or repairs to the Mortgaged Property, all costs of suit, together with interest thereon at such interest rate as may be awarded in any judgment obtained by Beneficiary or Trustee, as the case may be, from and after the date of any foreclosure sale until actual payment is made to Beneficiary or Trustee of the full amount due Beneficiary, the Lenders and Trustee, and reasonable attorneys' fees through and including all appellate levels; and/or

(c)    to sell, assign, transfer and deliver the Mortgaged Property at any private sale or at public auction permitted by law, with such demand, advertisement or notice as required by law, and on such other terms as required or permitted by law.

Upon the occurrence and during the continuation of any Event of Default, Beneficiary may order the performance of environmental assessments of the Mortgaged Property by qualified professionals, the cost of which shall be borne by Grantor and secured hereby.

**12.2    Grantor's Waivers.**

In the event of a transfer of the Mortgaged Property as permitted by the provisions of this Deed of Trust, it shall not be necessary for Trustee or Beneficiary to have actual or constructive possession of the Mortgaged Property in order to pass the title to and the right of possession of the Mortgaged Property, and the title to and the right of possession of the Mortgaged Property shall pass to the purchaser(s) thereof at any sale hereunder as fully as if the same actually had been present and delivered. To the fullest extent allowed by applicable law, upon foreclosure of this Deed of Trust, whether by power of sale or any other nonjudicial or judicial foreclosure process, Grantor or any Person claiming the Mortgaged Property by, through or under Grantor shall not be entitled to direct the order of sale, a marshaling of assets or a sale in inverse order of alienation. The recitals and statements of fact contained in any notice or in any conveyance to the purchaser(s) at any sale hereunder shall be prima facie evidence of the truth of such facts, and all prerequisites and requirements necessary to the validity of any such sale shall be presumed to have been performed. In the event of a foreclosure sale, to the extent that Grantor is in possession of the Premises, Grantor shall be deemed a tenant at will of the purchaser(s) at such judicial foreclosure sale and shall be liable for a market rate rental for the use of the Premises; and if Grantor refuses to surrender possession of the Premises upon demand, the purchaser(s) shall be entitled to institute and maintain the statutory action of unlawful detainer and procure a writ of possession thereunder, and Grantor expressly waives all damages not caused directly by the gross negligence or willful misconduct of Beneficiary or such purchaser(s), sustained by reason thereof and Grantor agrees to pay to such purchaser(s) the costs and expenses (including all reasonable attorneys' fees and expenses) of such action and writ.

**12.3    Recovery of Advances.**

To the extent permitted by law, Beneficiary (by or through Trustee or otherwise) shall have the right, from time to time, to bring an appropriate action to recover any sums required to be paid by Grantor under the terms of this Deed of Trust and the other Loan Documents as they become due, without regard to whether the principal indebtedness evidenced by the Notes or any other sums constituting a part of the Secured Obligations shall be due, and, subject to the limitations imposed by law, without prejudice to the right of Beneficiary thereafter to bring an action of foreclosure, or any other action, for any default by Grantor existing at the time the earlier action was commenced.

**12.4    Sale; Several Sales.**

(a)    Upon the completion of any sale or sales of the Mortgaged Property by virtue of this **Section 12**, Trustee, Beneficiary or any officer of any court empowered to do so, shall execute and deliver to the accepted purchaser(s), good and sufficient instrument or instruments conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. In such event, Trustee and Beneficiary are hereby irrevocably appointed the true and lawful attorneys-in-fact (which appointment is several and coupled with an interest) of Grantor, in its name and stead, to make all the necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold, and for that purpose Trustee or Beneficiary may execute all necessary instruments of conveyance, assignment and transfer and may substitute one or more Persons with like power, Grantor hereby ratifying and confirming all that Grantor's said attorneys or such substitute or substitutes shall lawfully do by virtue hereof. Nevertheless, Grantor shall, if so requested by Trustee or Beneficiary, ratify and confirm any such sale or sales by executing and delivering to Trustee or Beneficiary or to such purchaser(s) all such instruments as may be advisable, in the judgment of Trustee or Beneficiary, for the purpose and as may be designated in such request.

16

(b)    To the extent permitted by law, if any Event of Default shall have occurred and be continuing and the Debt shall have been declared due and payable, each of Trustee and Beneficiary shall have the right to sell the Mortgaged Property in such order as it may determine, and the right of sale hereunder shall not be exhausted by one or more sales, but to the extent permitted by law successive sales may be had until all of the Mortgaged Property has been legally sold. To the extent permitted by law, in the event any sale hereunder is not completed or is defective in the opinion of Trustee or Beneficiary, such sale shall not exhaust the power of sale hereunder, and Trustee or Beneficiary shall have the right to cause a subsequent sale or sales.

### 12.5    Application of Sale Proceeds.

After deducting all costs, fees and expenses of Trustee, Beneficiary and any receiver (including reasonable attorney's fees) and of this Deed of Trust, including costs of evidence of title in connection with sale, the remaining proceeds of any sale made under or by virtue of this **Section 12**, together with any other sums which then may be held by Trustee or Beneficiary under this Deed of Trust, whether under the provisions of this section or otherwise, shall be applied by Trustee, Beneficiary or any such receiver in the following priority, to payment of: (a) first, all sums expended by Trustee, Beneficiary and any such receiver under the terms hereof, not then repaid, with accrued interest at the rates specified in the Loan Documents, (b) second, all Secured Obligations and (c) the remainder, if any, to Grantor or the other Person or Persons legally entitled thereto.

### 12.6    Purchase of Mortgaged Property by Beneficiary.

Beneficiary or any nominee or Affiliate of Beneficiary or any Lender may be a purchaser of the Mortgaged Property at any sale thereof permitted hereunder, and may apply to the purchase price all or any part of the Debt in lieu of payment in cash of the amount of such Debt applied. Any such purchaser shall, upon any such purchase, acquire good title to the Mortgaged Property so purchased, free of the Lien of this Deed of Trust and free of all rights of redemption in Grantor.

### 12.7    Receipt a Sufficient Discharge to Purchaser.

Upon any sale of the Mortgaged Property in accordance with this Deed of Trust after the Debt has been declared due and payable, whether at maturity, by declaration of acceleration or by automatic acceleration after the occurrence and during the continuation of an Event of Default or otherwise, the receipt of Trustee or Beneficiary or the receipt of the officer making the sale under judicial proceedings shall, to the full extent legally permitted, be sufficient discharge to the purchaser(s) for the purchase money, and such purchaser(s) shall not be obligated to see to the application thereof.

### 12.8    Waiver of Marshaling, Appraisement, Valuation, Statute of Limitations.

Grantor hereby waives all rights, legal and equitable, it may now or hereafter have to require marshaling of assets or to require upon foreclosure sales of assets in a particular order. Each successor and assign of Grantor, including a holder of a Lien subordinate to the Lien created hereby (without implying that Grantor has, except as expressly provided in the Loan Documents, a right to grant an interest in, or a subordinate Lien on, the Mortgaged Property), by acceptance of its interest or Lien agrees that it shall be bound by the above waiver, as if it gave the waiver itself. Grantor also hereby waives, to the full extent it may lawfully do so, the benefit of all laws providing for rights of appraisement, valuation, stay or extension or of redemption after foreclosure now or hereafter in force. Further, to the extent permitted by applicable law, Grantor hereby expressly waives and releases to the fullest extent permitted by law, the pleading of any statute of limitations as a defense to payment or performance of the Secured Obligations.

17

12.9    **Sales Shall Be a Bar Against Grantor.**

Each sale of the Mortgaged Property in connection with the exercise of Remedies after the Debt has been declared due and payable, whether at maturity, by declaration of acceleration or by automatic acceleration after the occurrence and during the continuation of an Event of Default or otherwise, shall, to the full extent legally permitted, operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Grantor in and to the properties, interests and rights so sold, and shall be a perpetual bar both at law and in equity against Grantor and against any and all Persons claiming or who may claim the same, or any part thereof from, through or under Grantor.

## 13. APPOINTMENT OF RECEIVER.

If an Event of Default shall have occurred and be continuing, Beneficiary (by or through Trustee or otherwise), to the extent permitted by law and without notice and without regard for the adequacy of the security for the Secured Obligations and without regard for the Solvency of Borrower, any other Person liable for the payment of the Debt, or any Borrower Party, for whether any portion of the Mortgaged Property is in danger of being lost, removed, injured or destroyed or of waste, for whether income from the Mortgaged Property is in danger of being lost or for whether the Mortgaged Property is or may become insufficient to discharge the obligations secured by this Deed of Trust, shall be entitled as a matter of right if it so elects to the appointment of a receiver, trustee, liquidator or conservator to enter upon and take possession of the Mortgaged Property and to collect all Rents and apply the same as the court may direct and any such receiver, trustee, liquidator or conservator shall be entitled to hold, occupy, store, use, operate, manage, market, lease and control the Mortgaged Property and conduct the business thereof as would Beneficiary pursuant to Section 14. The expenses, including receiver's fees, attorneys' fees, costs and agent's compensation, incurred pursuant to the powers herein contained shall be secured by this Deed of Trust. Beneficiary shall be liable to account only for the Rents actually received by Beneficiary, whether received pursuant to this Section 13 or Section 14. Notwithstanding the appointment of any receiver, trustee, liquidator, conservator or other custodian, Beneficiary shall be entitled as pledgee to the possession and control of any cash, deposits, or instruments at the time, pledged to, held by, or payable or deliverable under the terms of the Loan Documents to, Beneficiary.

## 14. POSSESSION AND MANAGEMENT UPON DEFAULT.

14.1    **Possession; Self Help.**

If an Event of Default shall have occurred and be continuing, Beneficiary (by or through Trustee or otherwise), with such notice to Grantor as required by law (if any) or as Beneficiary considers reasonable and appropriate in the circumstances, and subject to the rights of Tenants and the provisions of applicable law, may immediately enter upon and take possession of the Premises by self-help, summary proceedings, ejectment or otherwise, and may remove Grantor and all other Persons and any and all property therefrom, and may hold, occupy, store, use, operate, manage, market, lease and control the same and receive all Rents accruing with respect thereto. Neither Trustee nor Beneficiary shall be under any liability for or by reason of any such action, except (a) for its gross negligence or willful misconduct or (b) to the extent required by applicable law, and except that any amounts so received by Trustee or Beneficiary shall be applied as set forth in the Loan Documents.

14.2    **Possession; Cooperation of Grantor.**

At the request of Trustee or Beneficiary, Grantor shall promptly execute and deliver to Trustee or Beneficiary, as applicable, such deeds, instruments of assignment and other documents as Trustee or Beneficiary may deem necessary or advisable to enable Trustee or Beneficiary or any agent or

representative designated by Trustee or Beneficiary, at such time or times and place or places as Trustee or Beneficiary may reasonably specify, to obtain possession of the Mortgaged Property to which Trustee or Beneficiary shall at the time be entitled hereunder, subject to the rights of Tenants. If Grantor shall fail for any reason to execute and deliver such instrument or document after such request by Trustee or Beneficiary, Trustee or Beneficiary, as applicable, to the fullest extent permitted by law, may (a) obtain a judgment conferring on Trustee or Beneficiary the right to immediate possession and requiring Grantor to execute and deliver such instruments and documents to Trustee or Beneficiary, which entry of judgment Grantor, to the extent it may lawfully do so, hereby specifically consents and (b) pursue the Mortgaged Property wherever it may be found and to the extent lawfully permitted, take possession of and remove the same, subject to the rights of Tenants.

    **14.3    Management.**

        Upon every taking of possession pursuant to this **Section 14**, Trustee or Beneficiary may (but shall have no obligation to), from time to time, at the expense of Grantor and such expenses to constitute part of the Secured Obligations secured hereby, make all such expenditures for maintenance, insurance, repairs, replacements, alterations, additions and improvements to and of the Premises, as it deems necessary or desirable in its discretion. In such case, Trustee and Beneficiary, to the fullest extent permitted by law, shall have the right to hold, manage, control, occupy, use, operate, store, maintain, market, lease or otherwise deal with the Mortgaged Property and to carry on the business and exercise all the rights and powers of Grantor relating thereto, as Trustee or Beneficiary determines, including the right to enter into any and all such instruments and agreements with respect to same, as Trustee or Beneficiary determines; and, to the fullest extent permitted by law, Trustee and Beneficiary shall be entitled to collect and receive all Rents. Such Rents may be applied to pay the expenses of the management, control, occupancy, use, operation, storage, marketing, leasing of or otherwise dealing with the Premises and of conducting the business thereof, and of all maintenance, repairs, replacements, alterations, additions and improvements, and to make all payments which Trustee or Beneficiary may be required or may elect to make, if any, for Taxes, Other Charges, assessments, insurance or other proper charges upon the Mortgaged Property (including the employment of engineers and accountants to examine, inspect and make reports), and all other payments which Trustee or Beneficiary may be required or authorized to make under any provision of this Deed of Trust.

## 15. RIGHT TO PERFORM GRANTOR'S COVENANTS.

        If Grantor shall fail to make any payment or perform any act required to be made or performed hereunder or under any other Loan Document, Beneficiary (by or through Trustee or otherwise), upon notice to Grantor and upon the expiration of any applicable grace or cure period, if any (except in cases of emergency that threatens bodily injury or material damage to property, in which case Beneficiary will allow such notice and grace or cure period, if any, as is reasonable under the circumstances) and subject to Grantor's Contest Right, but without waiving or releasing any obligation, Default or Event of Default, may (but shall be under no obligation to) at any time thereafter make such payment or perform such act for the account and at the expense of Grantor, and, to the extent permitted by applicable law, may enter upon the Premises for such purpose and take all such action thereon as, in the judgment of Beneficiary, may be necessary or appropriate therefor, subject to the rights of Tenants. All sums so paid by Beneficiary and Trustee and all costs and expenses (including all reasonable attorneys' fees and expenses) so incurred and as well as any sums paid and costs and expenses incurred under any other provision of this Deed of Trust for the performance of any obligation of Grantor or to protect Beneficiary's security shall be deemed obligatory advances regardless of the Person to whom such funds are furnished and such funds, together with interest thereon at the Default Rate from the date of payment by Beneficiary or Trustee, as applicable, until paid, shall constitute part of the Secured Obligations

secured hereby and shall be paid by Grantor to Beneficiary and Trustee upon demand therefor from Beneficiary or Trustee.

## 16. DISCONTINUANCE OF PROCEEDINGS.

If Trustee or Beneficiary shall have proceeded to invoke any Remedy and shall thereafter elect to discontinue or abandon it for any reason, Trustee and Beneficiary shall have the unqualified right to do so and, in such an event, Grantor, Trustee and Beneficiary shall be restored to their former positions with respect to the Debt, the Secured Obligations, the Loan Documents, the Mortgaged Property and otherwise, and the Remedies of Trustee, Beneficiary and Lenders shall continue as if the Remedy had never been invoked, but no such discontinuance or abandonment shall waive any Event of Default that is continuing, unremedied or unwaived, or the right of Trustee or Beneficiary thereafter to exercise any Remedy with respect to such Event of Default.

## 17. PROTECTIVE ADVANCES.

Grantor agrees that, if Grantor shall default in any of its obligations hereunder or under the other Loan Documents, then Lenders shall have the right in Beneficiary's sole discretion to advance all or any part of amounts owing or to perform any or all required actions. No such advance or performance referred to in the preceding sentence (each, a "**Protective Advance**") shall be deemed to have cured any default by Grantor or any Event of Default with respect thereto. All Protective Advances and all expenses incurred by Beneficiary and Lenders in connection with the same, and all other sums advanced or expenses incurred by Beneficiary and Lenders hereunder or under applicable law (whether required or optional and whether indemnified hereunder or not) shall be part of the Secured Obligations, shall bear interest at the Default Rate and shall be secured by this Deed of Trust. Grantor hereby appoints Beneficiary its true and lawful attorney-in-fact to make the payments and effect the performance contemplated by this paragraph in the name and on behalf of Grantor. This appointment, being coupled with an interest and with full power of substitution, shall be irrevocable until all of the Secured Obligations shall be fully satisfied, paid and performed.

## 18. RELEASE.

The provisions of **Section 12.27** of the Construction Loan Agreement shall apply with respect to the release, discharge and satisfaction of this Deed of Trust.

## 19. SECURITY AGREEMENT, ETC.

### 19.1    Grant of Security.

This Deed of Trust is a security agreement within the meaning of the Uniform Commercial Code with respect to all of the Mortgaged Property which is personal property as to which the creation and perfection of a security interest are subject to the Uniform Commercial Code (the "**Personal Property**"), and is also a deed of trust as to those portions of the Mortgaged Property that are classified as real property. Grantor hereby grants to Beneficiary a security interest in and to the Personal Property to secure the payment and performance of the Secured Obligations. Any completely executed counterpart of this instrument may be filed as a deed of trust on real property or fixtures, as a security agreement or financing statement on personal property or as both. The address of Grantor, as debtor, and the address of Beneficiary, as secured party, are shown in the preamble.

### 19.2    Financing Statements.

20

Grantor shall cause all financing and continuation statements and other instruments with respect to the Personal Property at all times to be kept recorded, filed or registered in such manner and in such places as may be required by law fully to evidence, perfect and secure the interests of Beneficiary in the Personal Property, and shall pay all filing and recording fees in connection therewith. Grantor hereby appoints Beneficiary as its attorney-in-fact to perform the obligations of Grantor under this Section, at the expense of Grantor, in the event Grantor fails to do so, and such appointment is coupled with an interest.

### 19.3    Multiple Remedies.

If an Event of Default shall have occurred and be continuing, Beneficiary (by or through Trustee or otherwise) shall have the option of proceeding, to the extent permitted under applicable law, as to both real and personal property in accordance with its rights and remedies in respect of the real property as an alternative to proceeding in accordance with the provisions of the Uniform Commercial Code; and Beneficiary may exercise any and all of the other rights and remedies of a secured party under the Uniform Commercial Code. Without limiting the foregoing, Beneficiary may require Grantor to assemble any personal property and make it available at a place to be designated by Beneficiary.

### 19.4    Waiver of Rights.

To the extent permitted under applicable law, Grantor waives all rights of redemption after foreclosure and all other rights and remedies of a debtor thereunder and all formalities prescribed by law relative to the sale or disposition of the Personal Property after the occurrence and during the continuance of an Event of Default and all other rights and remedies of Grantor with respect thereto. In exercising its right to take possession of the Personal Property upon the occurrence and during the continuance of an Event of Default hereunder, Beneficiary (by or through Trustee or otherwise), personally or by its agents or attorneys, and subject to the rights of any Tenant may, to the extent permitted by law, enter upon the Mortgaged Property without being guilty of trespass or any wrongdoing, and without liability for damages thereby occasioned, except damages caused directly by Beneficiary's gross negligence or willful misconduct. To the extent any notice of sale or other disposition of the Personal Property is required and cannot be waived, in the event Beneficiary elects to proceed with respect to the Personal Property separately from the real property, Beneficiary shall give at least ten (10) days' notice of the sale of the Personal Property, which shall for all purposes be deemed to be commercially reasonable. All recitals in any instrument of assignment or any other instrument executed by Beneficiary incident to any sale, transfer, assignment, lease or other disposition or utilization of the Personal Property or any part thereof after the occurrence and continuation of an Event of Default shall be full proof of the matters stated therein and no other proof shall be required to establish full legal propriety of the sale or other action taken by Beneficiary or of any fact or condition incident thereto, all of which shall be deemed conclusively to have been performed or to have occurred.

### 19.5    Expenses of Disposition of Personal Property.

Grantor shall reimburse Beneficiary, within five (5) days after demand, for all expenses of retaking, holding, preparing for sale, lease or other use or disposition, selling, leasing or otherwise using or disposing of the Personal Property that are incurred by Beneficiary in connection with its exercise of available remedies under this **Section 19**, including all reasonable attorneys' fees and expenses, and all such expenses shall constitute a part of the Secured Obligations and shall be secured hereby.

**20. FINANCING STATEMENT; FIXTURE FILING.**

This Deed of Trust shall be deemed to be and may be enforced from time to time as a deed of trust, mortgage, chattel mortgage, assignment, contract, security agreement, financing statement, or Lien on the Equipment and fixtures situated on the Premises, and from time to time as any one or more thereof, and shall constitute a "fixture filing" for the purposes of Article 9 of the Uniform Commercial Code against all of the Mortgaged Property which is or is to become fixtures.

**21. EXPENSES OF BENEFICIARY.**

**21.1    Expenses of Defending the Deed of Trust.**

If any action, suit or other proceeding affecting the Mortgaged Property shall be commenced in which action, suit or proceeding Trustee or Beneficiary is made a party or participates or in which the right to use the Mortgaged Property is threatened, or in which it becomes necessary in the reasonable judgment of Trustee or Beneficiary to defend or uphold the interest of Trustee, Beneficiary or Lenders under this Deed of Trust (including any action, suit or proceeding to establish or uphold the compliance of the Improvements with any Legal Requirement), then all Loss incurred by Trustee and Beneficiary for the expense of any such action, suit or other proceeding or to protect its rights therein (whether or not Trustee or Beneficiary is made or becomes a party thereto) or otherwise to enforce or defend the rights and Lien created by this Deed of Trust (including all reasonable attorneys' fees and expenses of Trustee and Beneficiary, including all such fees and expenses incurred by Beneficiary in connection with litigation, mediation, arbitration, other alternative dispute processes, administrative proceedings and bankruptcy proceedings, and any and all appeals from any of the foregoing), shall be paid by Grantor upon demand and, if not paid within ten (10) days of the giving of such demand, shall bear interest at the Default Rate from the date of the payment or incurring thereof, and any such amount and the interest thereon shall be a Lien on the Mortgaged Property, prior to any right, or right to, interest in, or claim upon the Mortgaged Property attaching or accruing subsequent to or otherwise subordinate to the Lien of this Deed of Trust, and the same shall be deemed to be a part of the Secured Obligations secured hereby.

**21.2    Expenses of Collection.**

In the event this Deed of Trust or any Loan Document is placed in the hands of counsel for collection of any amount payable hereunder or thereunder or for the enforcement of any of the provisions hereof or thereof and if an Event of Default shall have occurred and shall then be continuing, Grantor agrees to pay all Loss associated therewith incurred by Trustee and Beneficiary, either with or without the institution of an action, suit or other proceeding, in addition to all Loss, disbursements and allowances provided by law, all such Loss to be paid upon demand, together with interest thereon at the Default Rate from the date of notice or incurring thereof, and the same shall be deemed to be part of the Secured Obligations secured hereby.

**22. NON-MERGER.**

It is the intention and agreement of Grantor, Trustee and Beneficiary there shall be no merger of this Deed of Trust and any estate in the Premises, by reason of the fact that the same Person may own or hold the Premises and/or this Deed of Trust.

**23. ASSIGNMENT OF LEASES, RENTS AND REVENUES.**

Reference is made to that certain Assignment of Leases, Rents and Revenues dated as of the date hereof by and from Grantor to Beneficiary, which Assignment of Leases, Rents and Revenues will be recorded at the same time as this Deed of Trust. The terms and provisions of such Assignment of Leases, Rents and Revenues are hereby made a part of this Deed of Trust to the same extent and with the same force as if they were set forth fully herein.

**24. TERMINATION; BINDING EFFECT.**

This Deed of Trust may be discharged or terminated only by an instrument in writing signed by the party against which enforcement of such discharge or termination is sought. This Deed of Trust shall be binding upon Grantor and its successors and assigns and all Persons claiming under or through Grantor or any such successors or assigns, and shall inure to the benefit of and be enforceable by Trustee, Beneficiary and their respective successors and permitted assigns.

**25. SEVERABILITY.**

Any provision of this Deed of Trust, which may be determined by competent authority to be prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. Each such invalid or unenforceable provision will be ineffective only to the extent of such invalidity or unenforceability, and this Deed of Trust otherwise construed to the greatest extent possible to accomplish fairly the purposes and intentions of the parties hereto.

**26. NOTICES.**

All notices, consents, communications, approvals and requests required or permitted hereunder shall be given in accordance with **Section 12.5** of the Construction Loan Agreement.

**27. GOVERNING LAW.**

The provisions of this Deed of Trust regarding the creation, perfection and enforcement of the Liens and security interests herein granted shall be governed by and construed under the laws of the state in which the Premises are located. All other provisions of this Deed of Trust shall be governed by the laws of the State of New York (including Section 5-1401 of the General Obligations Law of the State of New York).

**28. WAIVER OF TRIAL BY JURY; WAIVER OF CLAIMS.**

    **28.1    Trial by Jury.**

GRANTOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THE LOAN DOCUMENTS (INCLUDING THIS DEED OF TRUST), OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS GIVEN KNOWINGLY AND VOLUNTARILY BY GRANTOR WITH AND UPON THE ADVICE OF COMPETENT

23

COUNSEL AND IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. GRANTOR, TRUSTEE AND BENEFICIARY ARE HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER.

Grantor's Initials:_____

28.2    **Claims.**

Grantor hereby waives any and all right to assert any setoff or counterclaim of any nature whatsoever with respect to the Secured Obligations in any action or proceeding by Trustee or Beneficiary to collect the same, or any portion thereof, or to enforce and realize upon the Lien and security interest created by this Deed of Trust or any other Loan Documents; *provided, however*, that Grantor expressly reserves the right to assert any such claim in a separate proceeding; and *provided further* that Grantor expressly reserves the right to assert any claim in the same action commenced by Trustee or Beneficiary if such claim is of a mandatory or compulsory nature and would be barred if not asserted in the action commenced by Trustee or Beneficiary.

## 29. NO WAIVER.

No failure by Trustee or Beneficiary to insist upon the strict performance of any term hereof or to exercise any Remedy consequent upon a breach thereof shall constitute a waiver of any such term or of any such breach. No waiver of any breach shall affect or alter this Deed of Trust, which shall continue in full force and effect, or shall affect or alter the Remedies of Trustee, Beneficiary or Lenders with respect to any other then-existing or subsequent breach. Neither Grantor nor any other Person now or hereafter obligated to pay or perform any part of the Secured Obligations shall be relieved of such obligation by reason of the failure of Trustee or Beneficiary to comply with any request of Grantor, or of any other Person so obligated, to take action to foreclose on this Deed of Trust or otherwise to enforce any provisions of this Deed of Trust or any other Loan Document or by reason of the release, regardless of consideration, of all or any part of the security held for the Secured Obligations, or by reason of any agreement or stipulation between any subsequent owner of any of the Mortgaged Property and Trustee or Beneficiary extending the time of payment or modifying the terms of this Deed of Trust or any other Loan Document, without first having obtained the consent of Grantor or such other Persons; and in the latter event Grantor and all such other Persons shall continue to be liable to make payments according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Beneficiary.

## 30. LIMITATIONS ON RECOURSE AGAINST GRANTOR.

Recourse against Grantor under this Deed of Trust is subject to the terms of Section 12.26 of the Construction Loan Agreement which are hereby incorporated herein by reference and shall have the same force and effect as if set forth in full herein.

## 31. LIMITATION ON BENEFICIARY AND LENDER RESPONSIBILITY.

(a)        No provision of this Deed of Trust shall operate to place any obligation or liability for the control, care, management or repair of the Mortgaged Property upon Trustee, Beneficiary or any Lender, nor shall it operate to make Trustee, Beneficiary or any Lender responsible or liable for any waste committed on the Premises by the Tenants or any other Person, or for any dangerous or defective condition of the Premises, or for any negligence in the management, upkeep, repair or control of

24

the Premises resulting in loss or injury or death to any Tenant, licensee, employee or stranger. Nothing herein contained shall be construed as constituting Trustee, Beneficiary or any Lender a "mortgagee in possession." The risk of loss or damage to the Mortgaged Property is on Grantor, and Trustee, Beneficiary and Lenders shall have no liability whatsoever for decline in value of the Mortgaged Property, for failure to maintain the Policies, or for failure to determine whether insurance in force is adequate as to the amount of risks insured. Possession by Trustee or Beneficiary shall not be deemed an election of judicial relief, if any such possession is requested or obtained, with respect to any Mortgaged Property or collateral not in Trustee's or Beneficiary's possession.

(b)        Nothing contained in this Deed of Trust or in any other Loan Document shall constitute any consent or request by Trustee or Beneficiary, express or implied, for the performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property, nor as giving Grantor any right, power or authority to contract for or permit the performance of any labor or services or the furnishing of any materials or other property in such fashion as would permit the making of any claim against Trustee or Beneficiary in respect thereof or any claim that any Lien based on the performance of such labor or services or the furnishing of any such materials or other property is prior to the interest of Trustee or Beneficiary under this Deed of Trust.

(c)        The general partners, members, principals and (if Grantor is a trust) beneficial owners of Grantor are experienced in the ownership and operation of properties similar to the Premises, and Grantor, Trustee, Beneficiary and Lenders are relying solely upon such expertise and business plan in connection with the Premises. Grantor is not relying on Trustee's, Beneficiary's or any Lender's expertise, business acumen or advice in connection with the Premises.

## 32. INCONSISTENCIES.

In the event of any inconsistency between this Deed of Trust and the Construction Loan Agreement, the terms hereof shall be controlling as necessary to create, preserve and/or maintain a valid and perfected security interest upon the Mortgaged Property, otherwise the provisions of the Construction Loan Agreement shall be controlling.

## 33. TRUSTEE PROVISIONS.

### 33.1    Certain Rights.

With the approval of Beneficiary, Trustee shall have the right to select, employ and consult with counsel. Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by it hereunder, believed by it in good faith to be genuine. Trustee shall be entitled to reimbursement for actual, reasonable expenses incurred by it in the performance of its duties and to reasonable compensation for Trustee's services hereunder as shall be rendered. Grantor shall, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and indemnify, defend and save Trustee harmless against, all liability and reasonable expenses which may be incurred by it in the performance of its duties, including those arising from joint, concurrent, or comparative negligence of Trustee; provided, however, that Grantor shall not be liable under such indemnification to the extent such liability or expenses result solely from Trustee's gross negligence or willful misconduct. Grantor's obligations under this **Section 33.1** shall not be reduced or impaired by principles of comparative or contributory negligence.

### 33.2    Retention of Money.

All moneys received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other moneys (except to the extent required by law), and Trustee shall be under no liability for interest on any moneys received by Trustee hereunder.

### 33.3    Successor Trustees.

If Trustee or any successor Trustee shall die, resign or become disqualified from acting in the execution of this trust, or Beneficiary shall desire to appoint a substitute Trustee, Beneficiary shall have full power to appoint one or more substitute Trustees and, if preferred, several substitute Trustees in succession who shall succeed to all the estates, rights, powers and duties of Trustee. Such appointment may be executed by any authorized agent of Beneficiary and as so executed, such appointment shall be conclusively presumed to be executed with authority, valid and sufficient, without further proof of any action.

### 33.4    Perfection of Appointment.

Should any deed, conveyance or instrument of any nature be required from Grantor by any successor Trustee to more fully and certainly vest in and confirm to such successor Trustee such estates, rights, powers and duties, then, upon request by such Trustee, all such deeds, conveyances and instruments shall be made, executed, acknowledged and delivered and shall be caused to be recorded and/or filed by Grantor.

### 33.5    Trustee Liability.

In no event or circumstance shall Trustee or any substitute Trustee hereunder be personally liable under or as a result of this Deed of Trust, either as a result of any action by Trustee (or any substitute Trustee) in the exercise of the powers hereby granted or otherwise.

## 34.  LOCAL LAW PROVISIONS.

### 34.1    Principle of Construction.

In the event of any inconsistencies between the terms and conditions of this **Section 34** and the other terms and conditions of this Mortgage, the terms and provisions of this **Section 34** shall control and be binding.

### 34.2    Maturity Date.

The maturity date of the Loan secured by this Deed of Trust is October ___, 2008, subject to two (2) six (6)-month extensions.

### 34.3    No Agricultural or Farming Purposes.

The Premises are not used principally or primarily for agricultural or farming purposes.

### 34.4    NRS 107.030.

When not inconsistent with the terms and provisions of this Deed of Trust, covenant numbers 1, 2 (full replacement value), 3, 4 (note rate), 5, 6, 7 (a reasonable percentage), 8 and 9 of NRS 107.030 are hereby adopted and made a part of this Deed of Trust.

26

### 34.5    Trustee's Sale

(a)        Upon an Event of Default, Beneficiary may, subject to NRS 107.080, declare all sums secured hereby immediately due by delivery to Trustee of a written notice of breach and election to sell (which notice Trustee shall cause to be recorded and mailed as required by law) and shall surrender to Trustee this Deed of Trust and the Notes.

(b)        After three (3) months shall have elapsed following recordation of any such notice of breach, Trustee shall sell the property subject hereto at such time and at such place in the State of Nevada as Trustee, in its sole discretion, shall deem best to accomplish the objects of these trusts, having first given notice of such sale as then required by law. In the conduct of any such sale Trustee may act itself or through any auctioneer, agent or attorney. The place of sale may be either in the county in which the property to be sold, or any part thereof, is situated, or at an office of the Trustee located in the State of Nevada.

(c)        Upon the request of Beneficiary or if required by law Trustee shall postpone sale of all or any portion of said property or interest therein by public announcement at the time fixed by said notice of sale, and shall thereafter postpone said sale from time to time by public announcement at the time previously appointed.

(d)        At the time of sale so fixed, Trustee shall sell the property so advertised or any part thereof or interest therein either as a whole or in separate parcels, as Beneficiary may determine in its sole and absolute discretion, to the highest bidder for cash in lawful money of the United States, payable at time of sale, and shall deliver to such purchaser a deed or deeds or other appropriate instruments conveying the property so sold, but without covenant or warranty, express or implied. Grantor hereby agrees, if it is then still in possession, to surrender, immediately and without demand, possession of said property to any purchaser. If Trustee or its successor or substitute shall have given notice of sale hereunder, any successor or substitute Trustee hereafter appointed may complete the sale and the conveyance of the Mortgaged Property pursuant thereto as if such notice had been given by the successor or substitute Trustee conducting the sale.

*[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]*

IN WITNESS WHEREOF, the undersigned is deemed to have executed this Deed of Trust as of the day first set forth above although actually executed on the date set forth in the acknowledgment below.

GRANTOR:

**TURNBERRY/CENTRA SUB, LLC**, a Delaware limited liability company

By:  Turnberry/Centra Quad, LLC, a Delaware limited liability company, its sole managing member

By:  Turnberry/Centra Development, LLC, a Delaware limited liability company, its sole managing member

By:   Turnberry/South Strip, L.P., a Nevada limited partnership, its managing member

By:  Turnberry/ South Strip, LLC, a Nevada limited liability company, its general partner

By:  Turnberry Retail Holding, L.P., a Delaware limited partnership, its sole managing member

By:  Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, its general partner

By:   Turnberry Retail Developers, L.P., a Delaware limited partnership, its managing member

By:   Turnberry Retail GP, LLC, a Delaware limited liability company, its general partner

By: _____
   Name:  Jacquelyn Soffer,
   Title:  Managing Member

S-1

STATE OF FLORIDA )
               : ss.:
COUNTY OF MIAMI-DADE )

    This instrument was acknowledged before me this 16ᵗʰ day of October, 2006, by Jacquelyn Soffer, Managing Member of Turnberry Retail GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Developers, L.P., a Delaware limited partnership, managing member of Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Holding, L.P., a Delaware limited partnership, sole managing member of Turnberry/South Strip, LLC, a Nevada limited liability company, general partner of Turnberry/South Strip, L.P., a Nevada limited partnership, the managing member of Turnberry/Centra Development, LLC, a Delaware limited liability company, sole managing member of Turnberry/Centra Quad, LLC a Delaware limited liability company, sole managing member of Turnberry/Centra Sub, LLC, a Delaware limited liability company.

NOTARY PUBLIC **Bridget R. Higgins**
Commission # DD363507
Expires December 5, 2008
STATE OF FLORIDA Bonded Troy Fain - Insurance, Inc. 800-868-7019

_____
Notary Public

[Notary Seal]

My Commission Expires: 12-5-2008

N-1

## EXHIBIT A

*Description of Land*

*[See attached Page(s)]*

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

Parcel 1A and 1B:

That portion of the Northeast Quarter (NE ¼) of Section 5, Township 22 South, Range 61 East, M.D.M., described as follows:

Beginning at a point on the North line of said Section 5, which point bears South 89°02'35" West a distance of 230.08 feet from the Northeast Corner of said Section 5; thence along the Westerly right of way lines of Interstate Route 15 as conveyed to the State of Nevada by deeds recorded February 8, 1962 and October 6, 1960 as Document Nos. 276002 and 213877 of said County Official Records, as follows:

South 16°27'23" West 172.93 feet; thence South 89°02'25" West 17.85 feet to a point on a non-tangent curve to the Northwest with a radius of 1930 feet, a radial line through said point bears South 71°15'37" East; thence Southwesterly along said curve through an angle of 36°16'37" an arc distance of 1,221.42 feet to a point of tangency; thence continuing along said right of way line of Interstate Route 15 South 55°00'00" West 389.48 feet to its intersection with the South boundary of the North Half (N ½) of the Northeast Quarter (Northeast ¼) of said Section 5, said intersection also being the most Easterly corner of that certain parcel of land conveyed to Pat I. Pravorne, et ux, by deed recorded August 30, 1963 as Document No. 381513 of said County Official Records; thence continuing South 55°00'00" West 1179.40 feet to the most Southerly corner of said parcel conveyed by Document No. 381513; thence North 0°03'05" East, along the East right of way of Interstate Route 15 a distance of 683.84 feet to the Southeast corner of that certain parcel of land conveyed to the State of Nevada by deed recorded October 6, 1960 as Document No. 213376 of Clark County Official Records; thence North 0°02"50" East along the East line of said parcel and its Northerly prolongation a distance of 1,305.68 feet to the North line of said Section 5; thence North 89°07'20" East along said North line a distance of 2,081.91 feet to the point of beginning.

Excepting therefrom all abutter's rights and access rights to the adjacent lands as taken by the State of Nevada under Judgement and Decree of Condemnation in action entitled "The State of Nevada, Plaintiff vs. Max

Kleiger, Et Al." Case No. 107271 in the Eight Judicial District Court of the
State of Nevada, in and for the County of Clark, filed June 27, 1963.

Further Excepting that part conveyed to the State of Nevada by Deed
recorded July 30, 1990 in Book 900730 as Document No. 00101 described
as follows:

A portion of the South Half (S ½) of the Northeast Quarter (Northeast ¼) of
Section 5, Township 22 South, Range 61 East, M.D.M., more fully described
by metes and bounds as follows:

Beginning at a point on the right or Easterly right of way line of IR-15
Freeway (Project IR-015-1 (81) 37), 165.46 feet right of and at right angles
to Highway Engineer's Station "B1" 78+66.13 P.O.T., said point of beginning
further described as bearing South 10°45'36" East, a distance of 1,754.82
feet from the North Quarter Corner of Section 5, Township 22 South, Range
61 East, M.D.M.; thence from a tangent which bears South 41°59'13" East,
curving to the left along said right or Easterly right of way line of IR-15
Freeway, with a radius of 220 feet, through an angle of 75°38'42", an arc
distance of 290.46 feet to a point; thence North 62°22'05" East, continuing
along said Easterly right of way line, a distance of 232.19 feet to a point;
thence South 55°00'00" West, along the former right or Easterly right of way
line of said IR-15 Freeway, a distance of 575.78 feet to a point; thence
North 0°04'48" East, continuing along said former Easterly right of way line,
a distance of 270.30 feet to the Point of Beginning.

Further Excepting that part conveyed to the Clark County, State of Nevada,
by Deed recorded November 4, 1992 In Book 921104 as Document No.
00222 described as follows:

That portion of the Northeast Quarter (Northeast ¼) of Section 5, Township
22 South, Range 61 East, M.D.M., Clark County, Nevada, being more
particularly described by metes and bounds as follows:

Commencing at the North Quarter (N ¼) Corner of Section 5; thence North
88°47'11" East along the North line of the said Northeast Quarter (Northeast
¼) of Section 5, a distance of 329.86 feet to a point on the East right of way
line of Interstate Highway No. 15; thence South 00°11'39" East, departing
the said North line and along the said East right of way line, a distance of
1507.45 feet to a point for the most Northerly Corner and Point of Beginning
of this parcel; the said Point being on a non-tangent curve concave
Northeasterly, having a radius of 1455.15 feet, and a radial bearing of North
75°25'58" East; thence departing the said East right of way line of Interstate

Highway No. 15, along the arc of said curve 1455.15 foot radius non-tangent curve to the left through a central angle of 12°08'36", and an arc distance of 308.41 feet to a point for the Southeast corner of this parcel on the curving Northerly right of way line of the Interstate Highway No. 15 Approach Ramp; the said point having a radius of 220.00 feet and a radial bearing of North 14°31'00" East; thence Northwesterly along the arc of the said 220.00 feet and a radial bearing of North 14°31'00" East; thence Northwesterly along the arc of the said 220.00 foot radius curve to the right being the Northerly line of the said Approach Ramp, through a central angle of 33°15'04" and an arc distance of 126.68 feet to a point for the Southwest Corner of this parcel on the said East right of way line of Interstate Highway No. 15; thence North 00°11'39" West, along the said East right of way line a distance of 222.97 feet to the Point of Beginning of this parcel.

Further Excepting that part conveyed to Clark County, Nevada, for road purposes by Deed recorded November 15, 1995 in Book 951115 as Document No. 00394 and re-recorded January 17, 1996 in Book 960117 as Document No. 00430 described as follows:

Being part of the North One-Half (N ½) of the Northeast Quarter (Northeast ¼) of Section 5, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, and being more particularly described as follows:

Beginning at a monument and brass disc found at the East Sixteenth (E 1/16) Corner in the North line of Section 5, Township 22 South, Range 61 East, M.D.M.; thence North 88°50'40" East a distance of 1091.40 feet along the North line of said Section, Township and Range to a point for corner in the West right of way line of I-15 Approach Ramp; thence South 16°59'57" West a distance of 57.93 feet along the West right of way line of I-15 Approach Ramp to a point for corner; thence North 86°50'31" West a distance of 519.08 feet to a point for corner; thence South 88°50'40" West, a distance of 555.71 feet to a point for corner; thence South 88°43'42" West a distance of 9.98 feet to a point for corner; thence North 01°16'18" West a distance of 16.00 feet to a point for corner in the North line of said Section, Township and Range; thence North 88°43'42" East a distance of 10.00 feet to the Point of Beginning.

<u>Legal Description for Parcel 1A and 1B (Measured):</u>

Situated in the Northeast Quarter of Section 5, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, being a portion of Government Lots 1 and 2 of said Section, more particularly described as follows:

Commencing at the North Quarter center Section Corner common to said Section 5 and Section 32, thence North 88`47'22" East along the North line of said Section 5, 329.86 feet to a point on the Easterly right-of-way of Interstate Route Number 15, same point being The Point of Beginning; thence continuing North 88`47'22" East, 981.78 feet; thence South 01`19'36" East departing said North line, 15.98 feet to the Southerly right-of-way of Sunset Road; thence South 88`47'22" East along said Southerly right-of-way, 565.69 feet; thence South 86`52'36" East continuing along said Southerly right-of-way, 519.98 feet; thence South 16`12'10" West, 115.00 feet; thence South 88`47'12' West, 17.85 feet to the beginning of a non-tangent curve concave Northwesterly having a radius of 1930.00 feet, a radial line to said beginning bears South 71`30'50" East; thence Southwesterly, 1221.98 feet along said curve through a central angle of 36`16'37"; thence South 54`45'47" West, 1008.00 feet; thence South 60`27'47" West, 233.23 feet to the beginning of a curve concave Northerly, having a radius of 220.00 feet; thence Northwesterly 162.93 feet along said curve through a central angle of 42`25'59" to the beginning of a non-tangent curve, a radial line to said beginning bears South 63`09'44" West, same point also being on the Easterly right-of-way of said Interstate Route 15; thence Northwesterly 312.58 feet along said curve, and along said Easterly right-of-way through a central angle of 12`18'27"; thence North 00`11'29" West continuing along said Easterly right-of-way, 1507.45 feet to The Point of Beginning.

Parcel Two (2):

All that real property situated in the County of Clark, State of Nevada and more particularly described as being a portion of the Northeast Quarter (Northeast ¼) of Section 5, Township 22 South, Range 61 East, M.D.M., and more fully described by metes and bounds as follows:

Beginning at the intersection of the North Section line of Section 5, Township 22 South, Range 61 East, M.D.M. with the left or Westerly right of way line of SR-604 (Las Vegas Boulevard.), 45.719 meters (150.00 feet) left of and at right angles to Highway Engineer's Station "XM" 224+68.712 P.O.T. said Point of Beginning further described as bearing South 88°47'17" West a distance of 45.767 meters (150.15 feet) from the Northeast corner of said Section 5; thence South 1°11'16" East, along said left or Westerly right of way line, a distance of 145.148 meters (476.21 feet) to a point; thence South 0°14'13" East, along said Westerly right-of-way line, a distance of 107.461 meters (352.56 feet) to a point on the Southeasterly Boundary Line of Parcel 188B described in that certain Deed dated September 26, 1960, as

Instrument No. 213377, recorded October 6, 1960 in Official Records Book No. 263, in Clark County, Nevada; thence along said Southeasterly Boundary line of Parcel 188B and the Southeasterly Boundary line of Parcel 189 described in that certain Final Order of Condemnation, as Instrument No. 382427, Recorded September 5, 1963 in Official Records Book No. 475, in Clark County, Nevada, the following four (4) courses and distances:

1) North 62°46'48" West 28.109 meters (92.22 feet); 2) South 54°40'47" West 397.308 meters (1,303.50 feet); 3) South 35°19'13" East 6.096 meters (20.00 feet); 4) from a tangent which bears South 54°40'47" West, curving to the left with a radius of 1505.715 meters (4,940.00 feet), through an angle of 10°37'43", an arc distance of 279.317 meters (916.39 feet) to a point on the Right or Easterly right of way line of IR-15; thence North 36°52'06" West along said Easterly right of way line, a distance of 117.503 meters (385.51 feet) to a point; thence along the Northwesterly boundary line of Parcel I-015-Centerline-035.017 described in that certain Deed dated July 27, 1990, recorded on July 30, 1990 in Book 900730 as Instrument No. 00101 and the Northerly boundary line of Parcels 189 and 188B, the following five (5) courses and distances:

1) from a tangent which bears South 75°17'18" East, curving to the left with a radius of 67.056 meters (220.00 feet), through an angle of 42°39'50", an arc distance of 49.932 meters (163.82 feet); 2) North 62°02'52" East 70.772 meters (232.19 feet) (239.19 per survey); 3) North 54°40'47" East 307.380 meters (1,008.46 feet); 4) from a tangent which bears the last described course, curving to the left with a radius of 588.265 meters (1,930.00 feet), through an angle of 36°15'37", an arc distance of 372.290 meters (1,221.42 feet); 5) North 88°43'12" East 5.441 meters (17.85 feet) to a point on the Westerly boundary line of Parcel 191.2 described in that certain Deed dated February 5, 1962 as Instrument No. 276002, recorded on February 8, 1962 in Official Records Book 342, Clark County, Nevada; thence North 16°08'10" East, along said Westerly boundary line, a distance of 52.859 meters (173.42 feet) to a point on said North section line of Section 5; thence North 88°47'17" East, along said North Section line, a distance of 24.433 meters (80.16 feet) to the Point of Beginning.

Together with the access rights, including the abutter's rights in and to Las Vegas  Boulevard and former Interstate Route 15.

Reserving unto the grantor the access rights including the abutter's rights in and to   Interstate Route 15 along the following described line:

Beginning at a point on the right or easterly right of way line of Interstate Route  15, 153.423 meters (503.35 feet) right of and at right angles to Highway Engineer's     Station "L" 134+71.884 P.O.T.; said point of beginning further described as bearing       South 17°49'55" East a distance of 672.262 meters (2,205.58 feet) from the North     Quarter Corner of Section 5, Township 22 South, Range 61 East, M.D.M.; thence

North 36°52'06" West, along said Easterly right of way line, a distance of 117.503 meters (385.51 feet) to the point of ending, said point of ending being 83.237     meters (273.09 feet) right of and at right angles to Highway Engineer's Station "L"     135+66.122 P.O.T., said point further described as bearing South 13°55'30" East a    distance of 562.493 meters (1,845.45 feet) from said North Quarter Corner of     Section 5.

## Legal Description for Parcel 2 (Measured):

Situated in the Northeast Quarter of Section 5, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, being a portion of Government Lots 1 and 2 of said Section, more particularly described as follows:

Commencing at the Northeast Section corner of said Section 5, thence South 88°47'22" West along the North line of said Section 5, a distance of 142.85 feet to a point on the Westerly right-of-way of Las Vegas Boulevard, same point being The Point of Beginning; thence South 00°14'54" East along said Westerly right-of-way, 828.67 feet; thence North 62°42'14" West departing said Westerly right-of-way, 92.13 feet; thence South 54°45'00" West, 1303.78 feet; thence South 35°15'00" East radially, 20.00 feet to the beginning of a non-tangent curve concave Southerly having a radius of 4940.00 feet; thence Southwesterly 917.47 feet along said curve, through a central angle of 10°38'28" to the Easterly right-of-way of Interstate Route 15, same point hereinafter referred to as "point A"; thence North 36°38'09" West along said Easterly right-of-way, 381.21 feet to the beginning of a non-tangent curve concave Northerly, having a radius of 220.00 feet, a radial line to said beginning bears South 15°28'51" West; thence Easterly, departing said Easterly right-of-way 162.93 feet along said curve through a central angle of 42°25'59"; thence North 54°45'47" East, 1008.00 feet to the beginning of a curve concave Northwesterly having a radius of 1930.00 feet; thence Northeasterly, 1221.98 feet along said curve through a central angle of 36°16'37"; thence North 88°47'12" East, 17.85 feet; thence North 16°12'10" East, 172.93 feet to the North line of said Section 5; thence North 88°47'22" East, along said North line, 87.23 feet to The Point of Beginning.

Together with the access rights, including the abutter's rights in and to Las Vegas Blvd. And former Interstate Route 15.

Reserving unto the grantor the access rights including the Abutter's Rights in and to Interstate Route 15 along the following described line:

Beginning at said "Point A"; thence North 36`38'09" West, along said Easterly right-of-way of said Interstate Route 15, 381.21 feet to the Point of Terminus.

Parcel Three (3):

That portion of the Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of Section 5, Township 22 South, Range 61 East, M.D.M. more particularly described as follows:

Lot Two (2) as shown on Parcel Map in File 55, page 21, recorded January 4, 1988 in Book 880104 as Document No. 00499 Official Records.

Parcel Three-A (3A):

A non-exclusive easement for vehicular ingress and egress from Lot Two of Parcel Map File 55 page 21 over and across the southerly forty (40) feet of Lot One (1) of Parcel Map File 55 page 21, as set forth in that certain Easement Agreement recorded November 20, 1989 in Book 891120 as Document No. 00778 Official Records.

Assessor's Parcel Number          **177-05-501-001**

All that certain real property situated in the County of Clark, State of
Nevada, described as follows:

Parcel 1A and 1B:

That portion of the Northeast Quarter (NE ¼) of Section 5, Township 22
South, Range 61 East, M.D.M., described as follows:

Beginning at a point on the North line of said Section 5, which point bears
South 89°02'35" West a distance of 230.08 feet from the Northeast Corner
of said Section 5; thence along the Westerly right of way lines of Interstate
Route 15 as conveyed to the State of Nevada by deeds recorded February 8,
1962 and October 6, 1960 as Document Nos. 276002 and 213877 of said
County Official Records, as follows:

South 16°27'23" West 172.93 feet; thence South 89°02'25" West 17.85 feet
to a point on a non-tangent curve to the Northwest with a radius of 1930
feet, a radial line through said point bears South 71°15'37" East; thence
Southwesterly along said curve through an angle of 36°16'37" an arc
distance of 1,221.42 feet to a point of tangency; thence continuing along
said right of way line of Interstate Route 15 South 55°00'00" West 389.48
feet to its intersection with the South boundary of the North Half (N ½) of
the Northeast Quarter (Northeast ¼) of said Section 5, said intersection also
being the most Easterly corner of that certain parcel of land conveyed to Pat
I. Pravorne, et ux, by deed recorded August 30, 1963 as Document No.
381513 of said County Official Records; thence continuing South 55°00'00"
West 1179.40 feet to the most Southerly corner of said parcel conveyed by
Document No. 381513; thence North 0°03'05" East, along the East right of
way of Interstate Route 15 a distance of 683.84 feet to the Southeast corner
of that certain parcel of land conveyed to the State of Nevada by deed
recorded October 6, 1960 as Document No. 213376 of Clark County Official
Records; thence North 0°02"50" East along the East line of said parcel and
its Northerly prolongation a distance of 1,305.68 feet to the North line of
said Section 5; thence North 89°07'20" East along said North line a distance
of 2,081.91 feet to the point of beginning.

Excepting therefrom all abutter's rights and access rights to the adjacent
lands as taken by the State of Nevada under Judgement and Decree of
Condemnation in action entitled "The State of Nevada, Plaintiff vs. Max

Kleiger, Et Al." Case No. 107271 in the Eight Judicial District Court of the
State of Nevada, in and for the County of Clark, filed June 27, 1963.

Further Excepting that part conveyed to the State of Nevada by Deed
recorded July 30, 1990 in Book 900730 as Document No. 00101 described
as follows:

A portion of the South Half (S ½) of the Northeast Quarter (Northeast ¼) of
Section 5, Township 22 South, Range 61 East, M.D.M., more fully described
by metes and bounds as follows:

Beginning at a point on the right or Easterly right of way line of IR-15
Freeway (Project IR-015-1 (81) 37), 165.46 feet right of and at right angles
to Highway Engineer's Station "B1" 78+66.13 P.O.T., said point of beginning
further described as bearing South 10°45'36" East, a distance of 1,754.82
feet from the North Quarter Corner of Section 5, Township 22 South, Range
61 East, M.D.M.; thence from a tangent which bears South 41°59'13" East,
curving to the left along said right or Easterly right of way line of IR-15
Freeway, with a radius of 220 feet, through an angle of 75°38'42", an arc
distance of 290.46 feet to a point; thence North 62°22'05" East, continuing
along said Easterly right of way line, a distance of 232.19 feet to a point;
thence South 55°00'00" West, along the former right or Easterly right of way
line of said IR-15 Freeway, a distance of 575.78 feet to a point; thence
North 0°04'48" East, continuing along said former Easterly right of way line,
a distance of 270.30 feet to the Point of Beginning.

Further Excepting that part conveyed to the Clark County, State of Nevada,
by Deed recorded November 4, 1992 in Book 921104 as Document No.
00222 described as follows:

That portion of the Northeast Quarter (Northeast ¼) of Section 5, Township
22 South, Range 61 East, M.D.M., Clark County, Nevada, being more
particularly described by metes and bounds as follows:

Commencing at the North Quarter (N ¼) Corner of Section 5; thence North
88°47'11" East along the North line of the said Northeast Quarter (Northeast
¼) of Section 5, a distance of 329.86 feet to a point on the East right of way
line of Interstate Highway No. 15; thence South 00°11'39" East, departing
the said North line and along the said East right of way line, a distance of
1507.45 feet to a point for the most Northerly Corner and Point of Beginning
of this parcel; the said Point being on a non-tangent curve concave
Northeasterly, having a radius of 1455.15 feet, and a radial bearing of North
75°25'58" East; thence departing the said East right of way line of Interstate

Highway No. 15, along the arc of said curve 1455.15 foot radius non-tangent curve to the left through a central angle of 12°08'36", and an arc distance of 308.41 feet to a point for the Southeast corner of this parcel on the curving Northerly right of way line of the Interstate Highway No. 15 Approach Ramp; the said point having a radius of 220.00 feet and a radial bearing of North 14°31'00" East; thence Northwesterly along the arc of the said 220.00 feet and a radial bearing of North 14°31'00" East; thence Northwesterly along the arc of the said 220.00 foot radius curve to the right being the Northerly line of the said Approach Ramp, through a central angle of 33°15'04" and an arc distance of 126.68 feet to a point for the Southwest Corner of this parcel on the said East right of way line of Interstate Highway No. 15; thence North 00°11'39" West, along the said East right of way line a distance of 222.97 feet to the Point of Beginning of this parcel.

Further Excepting that part conveyed to Clark County, Nevada, for road purposes by Deed recorded November 15, 1995 in Book 951115 as Document No. 00394 and re-recorded January 17, 1996 in Book 960117 as Document No. 00430 described as follows:

Being part of the North One-Half (N ½) of the Northeast Quarter (Northeast ¼) of Section 5, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, and being more particularly described as follows:

Beginning at a monument and brass disc found at the East Sixteenth (E 1/16) Corner in the North line of Section 5, Township 22 South, Range 61 East, M.D.M.; thence North 88°50'40" East a distance of 1091.40 feet along the North line of said Section, Township and Range to a point for corner in the West right of way line of I-15 Approach Ramp; thence South 16°59'57" West a distance of 57.93 feet along the West right of way line of I-15 Approach Ramp to a point for corner; thence North 86°50'31" West a distance of 519.08 feet to a point for corner; thence South 88°50'40" West, a distance of 555.71 feet to a point for corner; thence South 88°43'42" West a distance of 9.98 feet to a point for corner; thence North 01°16'18" West a distance of 16.00 feet to a point for corner in the North line of said Section, Township and Range; thence North 88°43'42" East a distance of 10.00 feet to the Point of Beginning.

Legal Description for Parcel 1A and 1B (Measured):

Situated in the Northeast Quarter of Section 5, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, being a portion of Government Lots 1 and 2 of said Section, more particularly described as follows:

Commencing at the North Quarter center Section Corner common to said Section 5 and Section 32, thence North 88`47'22" East along the North line of said Section 5, 329.86 feet to a point on the Easterly right-of-way of Interstate Route Number 15, same point being <u>The Point of Beginning;</u> thence continuing North 88`47'22" East, 981.78 feet; thence South 01`19'36" East departing said North line, 15.98 feet to the Southerly right-of-way of Sunset Road; thence South 88`47'22" East along said Southerly right-of-way, 565.69 feet; thence South 86`52'36" East continuing along said Southerly right-of-way, 519.98 feet; thence South 16`12'10" West, 115.00 feet; thence South 88`47'12" West, 17.85 feet to the beginning of a non-tangent curve concave Northwesterly having a radius of 1930.00 feet, a radial line to said beginning bears South 71`30'50" East; thence Southwesterly, 1221.98 feet along said curve through a central angle of 36`16'37"; thence South 54`45'47" West, 1008.00 feet; thence South 60`27'47" West, 233.23 feet to the beginning of a curve concave Northerly, having a radius of 220.00 feet; thence Northwesterly 162.93 feet along said curve through a central angle of 42`25'59" to the beginning of a non-tangent curve, a radial line to said beginning bears South 63`09'44" West, same point also being on the Easterly right-of-way of said Interstate Route 15; thence Northwesterly 312.58 feet along said curve, and along said Easterly right-of-way through a central angle of 12`18'27"; thence North 00`11'29" West continuing along said Easterly right-of-way, 1507.45 feet to <u>The Point of Beginning.</u>

Parcel Two (2):

All that real property situated in the County of Clark, State of Nevada and more particularly described as being a portion of the Northeast Quarter (Northeast ¼) of Section 5, Township 22 South, Range 61 East, M.D.M., and more fully described by metes and bounds as follows:

Beginning at the intersection of the North Section line of Section 5, Township 22 South, Range 61 East, M.D.M. with the left or Westerly right of way line of SR-604 (Las Vegas Boulevard.), 45.719 meters (150.00 feet) left of and at right angles to Highway Engineer's Station "XM" 224+68.712 P.O.T. said Point of Beginning further described as bearing South 88°47'17" West a distance of 45.767 meters (150.15 feet) from the Northeast corner of said Section 5; thence South 1°11'16" East, along said left or Westerly right of way line, a distance of 145.148 meters (476.21 feet) to a point; thence South 0°14'13" East, along said Westerly right-of-way line, a distance of 107.461 meters (352.56 feet) to a point on the Southeasterly Boundary Line of Parcel 188B described in that certain Deed dated September 26, 1960, as

Instrument No. 213377, recorded October 6, 1960 in Official Records Book No. 263, in Clark County, Nevada; thence along said Southeasterly Boundary line of Parcel 188B and the Southeasterly Boundary line of Parcel 189 described in that certain Final Order of Condemnation, as Instrument No. 382427, Recorded September 5, 1963 in Official Records Book No. 475, in Clark County, Nevada, the following four (4) courses and distances:

1) North 62°46'48" West 28.109 meters (92.22 feet); 2) South 54°40'47" West 397.308 meters (1,303.50 feet); 3) South 35°19'13" East 6.096 meters (20.00 feet); 4) from a tangent which bears South 54°40'47" West, curving to the left with a radius of 1505.715 meters (4,940.00 feet), through an angle of 10°37'43", an arc distance of 279.317 meters (916.39 feet) to a point on the Right or Easterly right of way line of IR-15; thence North 36°52'06" West along said Easterly right of way line, a distance of 117.503 meters (385.51 feet) to a point; thence along the Northwesterly boundary line of Parcel I-015-Centerline-035.017 described in that certain Deed dated July 27, 1990, recorded on July 30, 1990 in Book 900730 as Instrument No. 00101 and the Northerly boundary line of Parcels 189 and 188B, the following five (5) courses and distances:

1) from a tangent which bears South 75°17'18" East, curving to the left with a radius of 67.056 meters (220.00 feet), through an angle of 42°39'50", an arc distance of 49.932 meters (163.82 feet); 2) North 62°02'52" East 70.772 meters (232.19 feet) (239.19 per survey); 3) North 54°40'47" East 307.380 meters (1,008.46 feet); 4) from a tangent which bears the last described course, curving to the left with a radius of 588.265 meters (1,930.00 feet), through an angle of 36°15'37", an arc distance of 372.290 meters (1,221.42 feet); 5) North 88°43'12" East 5.441 meters (17.85 feet) to a point on the Westerly boundary line of Parcel 191.2 described in that certain Deed dated February 5, 1962 as Instrument No. 276002, recorded on February 8, 1962 in Official Records Book 342, Clark County, Nevada; thence North 16°08'10" East, along said Westerly boundary line, a distance of 52.859 meters (173.42 feet) to a point on said North section line of Section 5; thence North 88°47'17" East, along said North Section line, a distance of 24.433 meters (80.16 feet) to the Point of Beginning.

Together with the access rights, including the abutter's rights in and to Las Vegas  Boulevard and former Interstate Route 15.

Reserving unto the grantor the access rights including the abutter's rights in and to   Interstate Route 15 along the following described line:

Beginning at a point on the right or easterly right of way line of Interstate Route  15, 153.423 meters (503.35 feet) right of and at right angles to Highway Engineer's        Station "L" 134+71.884 P.O.T.; said point of beginning further described as bearing        South 17°49'55" East a distance of 672.262 meters (2,205.58 feet) from the North        Quarter Corner of Section 5, Township 22 South, Range 61 East, M.D.M.; thence        North 36°52'06" West, along said Easterly right of way line, a distance of 117.503  meters (385.51 feet) to the point of ending, said point of ending being 83.237        meters (273.09 feet) right of and at right angles to Highway Engineer's Station "L"        135+66.122 P.O.T., said point further described as bearing South 13°55'30" East a        distance of 562.493 meters (1,845.45 feet) from said North Quarter Corner of        Section 5.

<u>Legal Description for Parcel 2 (Measured):</u>

Situated in the Northeast Quarter of Section 5, Township 22 South, Range 61 East, M.D.M., Clark County, Nevada, being a portion of Government Lots 1 and 2 of said Section, more particularly described as follows:

Commencing at the Northeast Section corner of said Section 5, thence South 88°47'22" West along the North line of said Section 5, a distance of 142.85 feet to a point on the Westerly right-of-way of Las Vegas Boulevard, same point being <u>The Point of Beginning;</u> thence South 00°14'54" East along said Westerly right-of-way, 828.67 feet; thence North 62°42'14" West departing said Westerly right-of-way, 92.13 feet; thence South 54°45'00" West, 1303.78 feet; thence South 35°15'00" East radially, 20.00 feet to the beginning of a non-tangent curve concave Southerly having a radius of 4940.00 feet; thence Southwesterly 917.47 feet along said curve, through a central angle of 10°38'28" to the Easterly right-of-way of Interstate Route 15, same point hereinafter referred to as "point A"; thence North 36°38'09" West along said Easterly right-of-way, 381.21 feet to the beginning of a non-tangent curve concave Northerly, having a radius of 220.00 feet, a radial line to said beginning bears South 15°28'51" West; thence Easterly, departing said Easterly right-of-way 162.93 feet along said curve through a central angle of 42°25'59"; thence North 54°45'47" East, 1008.00 feet to the beginning of a curve concave Northwesterly having a radius of 1930.00 feet; thence Northeasterly, 1221.98 feet along said curve through a central angle of 36°16'37"; thence North 88°47'12" East, 17.85 feet; thence North 16°12'10" East, 172.93 feet to the North line of said Section 5; thence North 88°47'22" East, along said North line, 87.23 feet to <u>The Point of Beginning.</u>

Together with the access rights, including the abutter's rights in and to Las Vegas Blvd. And former Interstate Route 15.

Reserving unto the grantor the access rights including the Abutter's Rights in and to Interstate Route 15 along the following described line:

Beginning at said "Point A"; thence North 36`38'09" West, along said Easterly right-of-way of said Interstate Route 15, 381.21 feet to the Point of Terminus.

Parcel Three (3):

That portion of the Southeast Quarter (SE ¼) of the Northeast Quarter (NE ¼) of Section 5, Township 22 South, Range 61 East, M.D.M. more particularly described as follows:

Lot Two (2) as shown on Parcel Map in File 55, page 21, recorded January 4, 1988 in Book 880104 as Document No. 00499 Official Records.

Parcel Three-A (3A):

A non-exclusive easement for vehicular ingress and egress from Lot Two of Parcel Map File 55 page 21 over and across the southerly forty (40) feet of Lot One (1) of Parcel Map File 55 page 21, as set forth in that certain Easement Agreement recorded November 20, 1989 in Book 891120 as Document No. 00778 Official Records.

Assessor's Parcel Number            **177-05-501-**003



20070125-0004554

Fee: $20.00
N/C Fee: $25.00

01/25/2007                    14:24:47
T20070014488
Requestor:
    LAWYERS TITLE OF NEVADA

Debbie Conway              STN
Clark County Recorder   Pgs: 7

APN:  177-05-501-003

When Recorded Return To:
~~Recording Requested by~~
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention:  Malcolm K. Montgomery, Esq.

## MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING

between

**TURNBERRY/CENTRA SUB, LLC**
as Borrower

having an address at
19501 Biscayne Boulevard, Suite 400
Aventura, Florida 33180

and

**DEUTSCHE BANK TRUST COMPANY AMERICAS**
as Agent

having an address at
60 Wall Street
New York, New York 10005

Dated as of January 24, 2007

## MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING

THIS **MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING** (this "**Agreement**") made as of the 24ᵗʰ day of January, 2007, between **TURNBERRY/CENTRA QUAD, LLC**, a Delaware limited liability company having an address at 19501 Biscayne Boulevard, Suite 400, Aventura, Florida 33180 ("**Borrower**"), and **DEUTSCHE BANK TRUST COMPANY AMERICAS**, a New York banking corporation ("**DBTCA**") having an address at 60 Wall Street, New York, New York 10005, in its capacity as administrative agent for the Lenders (as defined below) (together with its successors and assigns, in such capacity, "**Agent**").

## W I T N E S S E T H:

WHEREAS, pursuant to that certain Construction Loan Agreement dated as of October 25, 2006 (the "**Original Loan Agreement**", and as increased, extended and otherwise modified by the Loan Document Modification referred to below and as the same may hereafter be further amended, modified, restated or supplemented from time to time, the "**Loan Agreement**"), by and among Borrower, Agent, the Lenders identified therein (collectively, the "**Lenders**") and Deutsche Bank Securities Inc., as sole book-running manager and sole lead arranger, the Lenders have made a loan to Borrower in the stated maximum principal amount of up to Four Hundred Seventy-Five Million and No/100 Dollars ($475,000,000) (such principal amount and all other sums payable by Borrower in connection with such loan, the "**Original Loan**");

WHEREAS, the Original Loan is evidenced by that certain promissory note, dated as of October 25, 2006 in the aggregate principal amount of $475,000,000 (the "**Original Note**");

WHEREAS, Borrower also entered into, among other Loan Documents, that certain first priority Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of October 25, 2006 (the "**Original Deed of Trust**"; and as modified hereby and as the same may hereafter be further amended, modified, restated or supplemented from time to time, the "**Deed of Trust**"), by Borrower to the trustee named therein for the benefit of Agent and the Lenders, which was recorded on October 26, 2006 in the Official Records of Clark County, Nevada in Book 20061026, as Document/Instrument Number 0004346, and which encumbers the Mortgaged Property;

WHEREAS, pursuant to Section 5.1(l)(ii) of the Loan Agreement Borrower, Agent and the Lenders have agreed to, among other things, (i) reallocate $5,000,000 of principal from the Loan to the Mezzanine Loan decreasing the principal amount of the Original Note by $5,000,000 to up to $470,000,000 (the "**Modified Loan Amount**") and increasing the Mezzanine Loan by a corresponding amount and (ii) adjust the Base Rate Margin and the LIBOR Margin and the corresponding margins under the Mezzanine Loan;

WHEREAS, simultaneously herewith, to evidence the Modified Loan Amount, the Original Note has been cancelled and returned to Borrower and Borrower has executed and delivered in substitution therefor that certain Substitute Promissory Note dated the date hereof from Borrower to the order of DBTCA in the aggregate principal amount of $470,000,000 (the "**Substitute Note**");

WHEREAS, simultaneously herewith, Borrower, Agent, Guarantors and the Lenders have entered into that certain First Construction Loan Modification Agreement (the "**Loan Document Modification**") dated as of the date hereof and the other Modification Documents referred to therein (together with the Loan Document Modification, the "**Modification Documents**"); and

**WHEREAS**, Borrower has requested and Agent and the Lenders have agreed to modify the terms and provisions of the Original Deed of Trust pursuant to the express terms and provisions set forth herein.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower and Agent hereby agree as follows:

1.      Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Original Loan Agreement.

2.      The Original Deed of Trust is hereby modified and amended so that the reference to "Four Hundred Seventy-Five Million and No/100 Dollars ($475,000,000)" set forth in the Recitals on page 1 of the Original Deed of Trust is hereby deleted and replaced with a reference to "Four Hundred and Seventy Million and No/100 Dollars ($470,000,000)".

3.      All references to "Construction Loan Agreement" set forth in the Original Deed of Trust shall mean the Original Loan Agreement as modified through the date hereof, including by the Loan Document Modification, and as from time to time modified after the date hereof.

4.      All references to "Deed of Trust" set forth in the Original Deed of Trust shall mean the Original Deed of Trust as modified through the date hereof, including by this Agreement, and as from time to time modified after the date hereof.

5.      All references to "Loan" set forth in the Original Deed of Trust shall mean the Original Loan as modified through the date hereof, including by the Loan Document Modification, and as from time to time modified after the date hereof.

6.      All references to "Note" set forth in the Original Deed of Trust shall mean "Note" as such term is defined in the Loan Document Modification.

7.      This Agreement may not be modified, amended, changed or terminated except by an agreement in writing signed by Borrower and Agent.

8.      This Agreement shall be binding upon and inure to the benefit of Borrower and Agent and their respective successors and assigns.

9.      This Agreement may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

10.      If any term, covenant or condition of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such provision.

11.      The provisions of this Agreement regarding the creation, perfection and enforcement of the Liens and security interests granted herein or in the Original Deed of Trust shall be governed by and construed under the laws of the state in which the Premises are located. All other provisions of this Agreement shall be governed by the laws of the State of New York (including Section 5-1401 of the General Obligations Law of the State of New York).

[TEXT CONTINUED ON NEXT PAGE]

.

IN WITNESS WHEREOF, Borrower and Agent have caused this Agreement to be duly executed as of the date and year first above written.

**BORROWER**:

**TURNBERRY/CENTRA SUB, LLC**, a Delaware limited liability company

By:  Turnberry/Centra Quad, LLC, a Delaware limited liability company, its sole managing member

By:  Turnberry/Centra Development, LLC, a Delaware limited liability company, its sole managing member

By:  Turnberry/South Strip, L.P., a Nevada limited partnership, its managing member

By:  Turnberry/South Strip, LLC, a Nevada limited liability company, its general partner

By:  Turnberry Retail Holding, L.P., a Delaware limited partnership, its sole managing member

By:  Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, its general partner

By:  Turnberry Retail Developers, L.P., a Delaware limited partnership, its managing member

By:  Turnberry Retail GP, LLC, a Delaware limited liability company, its general partner

By: _____
    Name:  Jacquelyn Soffer,
    Title:  Managing Member

[SIGNATURES CONTINUE ON FOLLOWING PAGE.]

AGENT:

**DEUTSCHE BANK TRUST COMPANY
AMERICAS**, a New York banking corporation

By: _____

Name: _____ JAMES ROLISON
Title: _____ DIRECTOR

By: _____

Name: _____
Title: _____ MARY BRUNDAGE
DIRECTOR

STATE OF FLORIDA         )
                               : ss.:
COUNTY OF MIAMI-DADE   )

This instrument was acknowledged before me this 19th day of January_____, by Jacquelyn Soffer, Managing Member of Turnberry Retail GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Developers, L.P., a Delaware limited partnership, managing member of Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Holding, L.P., a Delaware limited partnership, sole managing member of Turnberry/South Strip, LLC, a Nevada limited liability company, general partner of Turnberry/South Strip, L.P., a Nevada limited partnership, the managing member of Turnberry/Centra Development, LLC, a Delaware limited liability company, sole managing member of Turnberry/Centra Quad, LLC a Delaware limited liability company, sole managing member of Turnberry/Centra Sub, LLC, a Delaware limited liability company.



Bridget R. Higgins
Commission # DD363607
Expires December 8, 2008
Bonded Troy Fain - Insurance, Inc. 800-385-7019

[Notary Seal]

_____
                Notary Public

My Commission Expires: _12 5-2008_

STATE OF _New York_                    )
                                       : ss.:
COUNTY OF _New York_                   )

This instrument was acknowledged before me this _3rd_ day of January, 2007, by
_James Robison_ _____, and _Mary Brundage_ _____, the
_Director_ _____ and _Director_ _____, respectively, of
Deutsche Bank Trust Company Americas, a New York banking corporation

_June A Politano_ _____
                                       Notary Public

[Notary Seal]

My Commission Expires: _____

```
┌──────────────────────────────────┐
│        JUNE A POLITANO           │
│  Notary Public - State of New York │
│       NO. 01PO4905885            │
│     Qualified in Nassau County    │
│  My Commission Expires 9/28/09   │
└──────────────────────────────────┘
```

NYDOCS03/822695.1                    N-2

20080307-0003320



Fee: $20.00
N/C Fee: $25.00

03/07/2008          14:00:07
T20080039850
Requestor:
LAWYERS TITLE OF NEVADA

Debbie Conway                    RMS
Clark County Recorder    Pgs: 7

APN:  177-05-501-003

When Recorded Return To:

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention:  Malcolm K. Montgomery, Esq.

*0850004 8 FB*

# SECOND MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING

between

## TURNBERRY/CENTRA SUB, LLC
### as Borrower

having an address at
19501 Biscayne Boulevard, Suite 400
Aventura, Florida 33180

and

## DEUTSCHE BANK TRUST COMPANY AMERICAS
### as Agent

having an address at
60 Wall Street
New York, New York 10005

Dated as of March 1, 2008

833134.2
NYDOCS03/853288.3

## SECOND MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING

THIS SECOND MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING (this "*Agreement*") made as of the 1st day of March, 2008, between TURNBERRY/CENTRA SUB, LLC, a Delaware limited liability company having an address at 19501 Biscayne Boulevard, Suite 400, Aventura, Florida 33180 ("*Borrower*"), and DEUTSCHE BANK TRUST COMPANY AMERICAS, a New York banking corporation ("*DBTCA*") having an address at 60 Wall Street, New York, New York 10005, in its capacity as administrative agent for the Lenders (as defined below) (together with its successors and assigns, in such capacity, "*Agent*").

### W I T N E S S E T H:

WHEREAS, pursuant to that certain Construction Loan Agreement dated as of October 25, 2006, as amended by that certain First Construction Loan Modification Agreement dated as of January 24, 2007 (as so amended, the "*Loan Agreement*"; all capitalized terms used herein without definition having the respective meanings ascribed thereto therein), by and among Borrower, Agent, the Initial Lender and Deutsche Bank Securities Inc., as sole book-running manager and sole lead arranger, the Initial Lender has made a loan to Borrower in the stated maximum principal amount of up to Four Hundred Seventy Million and No/100 Dollars ($470,000,000) (such principal amount and all other sums payable by Borrower in connection with such loan, the "*Loan*");

WHEREAS, Borrower entered into, among other Loan Documents, that certain first priority Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of October 25, 2006, recorded on October 26, 2006 in the Official Records of Clark County, Nevada in Book 20061026, as Document/Instrument Number 0004346, as modified by that certain Modification of Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of January 24, 2007, recorded on January 25, 2007 in the in the Official Records of Clark County, Nevada in Book 20070125, as Document/Instrument Number 0004554 (as so amended and extended, the "*Original Deed of Trust*"; and as extended hereby and as the same may hereafter be further amended, modified, restated or supplemented from time to time, the "*Deed of Trust*"), which encumbers the Mortgaged Property;

WHEREAS, Borrower, Agent and the Lenders have agreed to extend the maturity date of the Loan to September 1, 2008;

WHEREAS, simultaneously herewith, Borrower, Agent, the Guarantors and the Lenders have entered into that certain Second Construction Loan Modification Agreement (the "*Loan Document Modification*"); and

WHEREAS, Borrower has requested and Agent and the Lenders have agreed to modify the terms and provisions of the Original Deed of Trust pursuant to the express terms and provisions set forth herein.

NOW, THEREFORE, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower and Agent hereby agree as follows:

1.     Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Loan Agreement.

2.    Section 34.2 of the Original Deed of Trust is hereby amended and restated in its entirety to read as follows:

> "**34.2 Maturity Date.** The maturity date of the Loan secured by this Deed of Trust is the earlier of (i) September 1, 2008 and (ii) such other date on which the outstanding principal amount of the Notes becomes due and payable as herein provided, whether by declaration of acceleration or otherwise"

3.    All references to "Construction Loan Agreement" set forth in the Original Deed of Trust shall mean the Loan Agreement as modified through the date hereof, including by the Loan Document Modification, and as from time to time modified after the date hereof.

4.    All references to "Deed of Trust" set forth in the Original Deed of Trust shall mean the Original Deed of Trust as modified through the date hereof, including by this Agreement, and as from time to time modified after the date hereof.

5.    This Agreement may not be modified, amended, changed or terminated except by an agreement in writing signed by Borrower and Agent.

6.    This Agreement shall be binding upon and inure to the benefit of Borrower and Agent and their respective successors and assigns.

7.    This Agreement may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

8.    If any term, covenant or condition of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such provision.

9.    The provisions of this Agreement regarding the creation, perfection and enforcement of the Liens and security interests granted herein or in the Original Deed of Trust shall be governed by and construed under the laws of the state in which the Premises are located. All other provisions of this Agreement shall be governed by the laws of the State of New York (including Section 5-1401 of the General Obligations Law of the State of New York).

*[Text continued on next page]*

IN WITNESS WHEREOF, Borrower and Agent have caused this Agreement to be duly executed as of the date and year first above written.

**BORROWER:**

**TURNBERRY/CENTRA SUB, LLC**, a Delaware limited liability company

By:  Turnberry/Centra Quad, LLC, a Delaware limited liability company, its sole managing member

By:  Turnberry/Centra Development, LLC, a Delaware limited liability company, its sole managing member

By:  Turnberry/South Strip, L.P., a Nevada limited partnership, its managing member

By:  Turnberry/South Strip, LLC, a Nevada limited liability company, its general partner

By:  Turnberry Retail Holding, L.P., a Delaware limited partnership, its sole managing member

By:  Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, its general partner

By:  Turnberry Retail Developers, L.P., a Delaware limited partnership, its managing member

By:  Turnberry Retail GP, LLC, a Delaware limited liability company, its general partner

By: _____
      Name:  Jacquelyn Soffer
      Title:  Managing Member

*[Signatures Continue On Following Page.]*

AGENT:

**DEUTSCHE BANK TRUST COMPANY
AMERICAS,** a New York banking corporation

By: _____
Name:            JAMES ROLISON
Title:            MANAGING DIRECTOR

By: _____
Name:
Title: Stephen H. Choe
            Director

STATE OF _Nevada_ )
                   : ss.:
COUNTY OF _Clark_ )

      This instrument was acknowledged before me this _27_ day of _February_, 2008, by _Jacquelyn Soffer_, _Managing Member_ of Turnberry Retail GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Developers, L.P., a Delaware limited partnership, managing member of Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Holding, L.P., a Delaware limited partnership, sole managing member of Turnberry/South Strip, LLC, a Nevada limited liability company, general partner of Turnberry/South Strip, L.P., a Nevada limited partnership, the managing member of Turnberry/Centra Development, LLC, a Delaware limited liability company, sole managing member of Turnberry/Centra Quad, LLC a Delaware limited liability company, sole managing member of Turnberry/Centra Sub, LLC, a Delaware limited liability company.

                               _Denise Elliott_
                                  Notary Public

DENISE ELLIOTT
Notary Public, State of Nevada
Appointment No. 05972151
My Appt. Expires May 28, 2009

                My Commission Expires:     _5-28-09_

STATE OF _New York_                    )
                                       : ss.:
COUNTY OF _New York_                   )

This instrument was acknowledged before me this _1_ day of _March_ , 2008, by _James Rolism_ , and _Steven H. Choe_ , the _Managing Director_ and _Director_ , respectively, of Deutsche Bank Trust Company Americas, a New York banking corporation.

_Angela A. Carrington_
Notary Public

[Notary Seal]

ANGELA A. CARRINGTON
Notary Public, State of New York
No. 01CA6114990
Qualified in New York County
Commission Expires August 30, 2008

My Commission Expires: _____

20080902-0003577
Fee: $22.00        RPTT: $0.00
N/C Fee: $25.00
09/02/2008              15:28:39
T20080196802
Requestor:
  LANDAMERICA COMMERCIAL SERVI
Debbie Conway        MSH
Clark County Recorder    Pgs: 9

APN# _172-05-501-003_

**11-digit Assessor's Parcel Number may be obtained at:**
http://redrock.co.clark.nv.us/assrrealprop/ownr.aspx

_Third Modification of Deed of Trust_

#### Type of Document

(Example: Declaration of Homestead, Quit Claim Deed, etc.)

**Recording Requested by:**

_LandAmerica Commercial Services_

**Return Documents To:**

Name _Shearman & Sterling LLP_

Address _599 Lexington Ave_

City/State/Zip _New York, New York 10022_
_ATTN: Malcolm K. Montgomery, ESQ._

This page added to provide additional information required by NRS 111.312 Section 1-2

(An additional recording fee of $1.00 will apply)

This cover page must be typed or printed clearly in black ink only.

OR Form 108 ~ 06/06/2007
Coversheet.pdf

APN:   177-05-501-003

When Recorded Return To:

Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022
Attention:  Malcolm K. Montgomery, Esq.

## THIRD MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING

between

### TURNBERRY/CENTRA SUB, LLC
as Borrower

having an address at
19501 Biscayne Boulevard, Suite 400
Aventura, Florida 33180

and

### DEUTSCHE BANK TRUST COMPANY AMERICAS
as Agent

having an address at
60 Wall Street
New York, New York 10005

Dated as of September 1, 2008

**THIRD MODIFICATION OF DEED OF TRUST, SECURITY AGREEMENT,
ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING**

THIS **THIRD MODIFICATION OF DEED OF TRUST, SECURITY
AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING** (this
"*Agreement*") made as of the 1ˢᵗ day of September, 2008, between **TURNBERRY/CENTRA SUB,
LLC**, a Delaware limited liability company having an address at 19501 Biscayne Boulevard, Suite 400,
Aventura, Florida  33180 ("*Borrower*"), and **DEUTSCHE BANK TRUST COMPANY AMERICAS**, a
New York banking corporation ("*DBTCA*") having an address at 60 Wall Street, New York, New York
10005, in its capacity as administrative agent for the Lenders (as defined below) (together with its
successors and assigns, in such capacity, "*Agent*").

W I T N E S S E T H:

WHEREAS, pursuant to that certain Construction Loan Agreement dated as of October
25, 2006, as amended by that certain First Construction Loan Modification Agreement dated as of
January 24, 2007 and that certain Second Construction Loan Modification Agreement dated as of
March 1, 2008 (as so amended, the "*Loan Agreement*"; all capitalized terms used herein without
definition having the respective meanings ascribed thereto therein), by and among Borrower, Agent, the
Initial Lender and Deutsche Bank Securities Inc., as sole book-running manager and sole lead arranger,
the Initial Lender has made a loan to Borrower in the stated maximum principal amount of up to Four
Hundred Seventy Million and No/100 Dollars ($470,000,000) (such principal amount and all other sums
payable by Borrower in connection with such loan, the "*Loan*");

WHEREAS, Borrower entered into, among other Loan Documents, that certain first
priority Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as
of October 25, 2006, recorded on October 26, 2006 in the Official Records of Clark County, Nevada in
Book 20061026, as Document/Instrument Number 0004346, as modified by that certain Modification of
Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing, dated as of
January 24, 2007, recorded on January 25, 2007 in the Official Records of Clark County, Nevada in Book
20070125, as Document/Instrument Number 0004554 and that certain Second Modification of Deed of
Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing dated as of March 1,
2008, recorded on March 7, 2008 in the Official Records of Clark County, Nevada in Book 20080307, as
Document/Instrument Number 03320 (as so amended and extended, the "*Original Deed of Trust*"; and as
extended hereby and as the same may hereafter be further amended, modified, restated or supplemented
from time to time, the "*Deed of Trust*"), which encumbers the Mortgaged Property;

WHEREAS, Borrower, Agent and the Lenders have agreed to extend the maturity date
of the Loan to March 1, 2009;

WHEREAS, simultaneously herewith, Borrower, Agent, the Guarantors and the Lenders
have entered into that certain Third Construction Loan Modification Agreement (the "*Loan Document
Modification*"); and

WHEREAS, Borrower has requested and Agent and the Lenders have agreed to modify
the terms and provisions of the Original Deed of Trust pursuant to the express terms and provisions set
forth herein.

**NOW, THEREFORE**, in consideration of the premises and other good and valuable consideration, the receipt of which is hereby acknowledged, Borrower and Agent hereby agree as follows:

1.    Capitalized terms used herein and not otherwise defined shall have the meanings ascribed thereto in the Loan Agreement.

2.    Section 34.2 of the Original Deed of Trust is hereby amended and restated in its entirety to read as follows:

> "**34.2 Maturity Date.**  The maturity date of the Loan secured by this Deed of Trust is the earlier of (i) March 1, 2009 and (ii) such other date on which the outstanding principal amount of the Notes becomes due and payable as herein provided, whether by declaration of acceleration or otherwise"

3.    All references to "Construction Loan Agreement" set forth in the Original Deed of Trust shall mean the Loan Agreement as modified through the date hereof, including by the Loan Document Modification, and as from time to time modified after the date hereof.

4.    All references to "Deed of Trust" set forth in the Original Deed of Trust shall mean the Original Deed of Trust as modified through the date hereof, including by this Agreement, and as from time to time modified after the date hereof.

5.    This Agreement may not be modified, amended, changed or terminated except by an agreement in writing signed by Borrower and Agent.

6.    This Agreement shall be binding upon and inure to the benefit of Borrower and Agent and their respective successors and assigns.

7.    This Agreement may be executed in any number of duplicate originals and each such duplicate original shall be deemed to constitute but one and the same instrument.

8.    If any term, covenant or condition of this Agreement shall be held to be invalid, illegal or unenforceable in any respect, this Agreement shall be construed without such provision.

9.    The provisions of this Agreement regarding the creation, perfection and enforcement of the Liens and security interests granted herein or in the Original Deed of Trust shall be governed by and construed under the laws of the state in which the Premises are located.  All other provisions of this Agreement shall be governed by the laws of the State of New York (including Section 5-1401 of the General Obligations Law of the State of New York).

*[Text continued on next page]*

IN WITNESS WHEREOF, Borrower and Agent have caused this Agreement to be duly executed as of the date and year first above written.

**BORROWER:**

**TURNBERRY/CENTRA SUB, LLC,** a Delaware limited liability company

By: Turnberry/Centra Quad, LLC, a Delaware limited liability company, its sole managing member

By: Turnberry/Centra Development, LLC, a Delaware limited liability company, its sole managing member

By: Turnberry/South Strip, L.P., a Nevada limited partnership, its managing member

By: Turnberry/South Strip, LLC, a Nevada limited liability company, its general partner

By: Turnberry Retail Holding, L.P., a Delaware limited partnership, its sole managing member

By: Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, its general partner

By: Turnberry Retail Developers, L.P., a Delaware limited partnership, its managing member

By: Turnberry Retail GP, LLC, a Delaware limited liability company, its general partner

By: _____
Name: Jacquelyn Soffer
Title: Managing Director

*[Signatures Continue On Following Page.]*

**AGENT:**

**DEUTSCHE BANK TRUST COMPANY
AMERICAS,** a New York banking corporation

By: _____

        Name:   James F. Griffith

        Title:    Managing Director

By: _____

        Name:

        Title:

        **J.T. Johnston Coe
Managing Director**

STATE OF _Florida_ )
                   : ss.:
COUNTY OF _Miami Dade_ )

    This instrument was acknowledged before me this _31_ day of _July_, 2008, by Jacquelyn Soffer, Managing Member of Turnberry Retail GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Developers, L.P., a Delaware limited partnership, managing member of Turnberry Retail Subsidiary GP, LLC, a Delaware limited liability company, general partner of Turnberry Retail Holding, L.P., a Delaware limited partnership, sole managing member of Turnberry/South Strip, LLC, a Nevada limited liability company, general partner of Turnberry/South Strip, L.P., a Nevada limited partnership, the managing member of Turnberry/Centra Development, LLC, a Delaware limited liability company, sole managing member of Turnberry/Centra Quad, LLC a Delaware limited liability company, sole managing member of Turnberry/Centra Sub, LLC, a Delaware limited liability company.

                                    _Carol Abramson_
                                          Notary Public

[Notary Seal]

NOTARY PUBLIC-STATE OF FLORIDA
Carol F. Abramson
Commission # DD524182
Expires: APR. 14, 2010
Bonded Thru Atlantic Bonding Co., Inc.

My Commission Expires: _4/14/10_

STATE OF _New York_ )
                                    : ss.:
COUNTY OF _New York_ )

    This instrument was acknowledged before me this _28th_ day of _August_, 2008, by _James F. Griffin_, and _J T Johnston Coe_, the _Managing Director_ and _Managing Director_, respectively, of Deutsche Bank Trust Company Americas, a New York banking corporation.

                     _Angella Depass_
                       Notary Public

[Notary Seal]

                      **ANGELLA DEPASS**
               **NOTARY PUBLIC, STATE OF NEW YORK**
                **QUALIFIED IN QUEENS COUNTY**
                   **NO. 01DE5025245**
            **COMMISSION EXPIRES: MARCH 21, 20** _10_

               My Commission Expires:    _____

ANGella DePass
Notary Public, State of New York
Qualified in Queens County
No. 01DE5025245
Commission Expires March 21, 2010