**Execution Copy**

# Appendix B

## COLLATERAL SECURITY AND CONTROL AGREEMENT

**COLLATERAL SECURITY AND CONTROL AGREEMENT,** dated as of March 29, 2007, by and among Pulsar Re, Ltd. (the "Counterparty"), and Lehman Re Ltd., a Bermuda Corporation ("Lehman") and Lehman Brothers Inc., as securities intermediary and bank (the "Custodian").

**WHEREAS**, pursuant to the terms of the Quota Share Retrocessional Agreement between the Counterparty and Lehman dated as of March 29, 2007 (the "Counterparty Contract"), as amended from time to time, the Counterparty has agreed to pay Lehman for obligations arising out of the Counterparty Contract all in accordance with the terms thereof ("Counterparty Obligations"); and

**WHEREAS**, the Counterparty and Lehman and the Custodian desire to provide for provision of collateral for the purpose of further securing and providing security for the Counterparty Obligations under the Counterparty Contract; and

**WHEREAS**, at Lehman's request the Counterparty has agreed to deliver and grant in favor of Lehman, a first priority, perfected security interest under the New York Uniform Commercial Code (as such term is hereinafter defined) in, to and affecting the Collateral (as such term is hereinafter defined) to secure the obligations of the Counterparty under the Counterparty Contract and

**WHEREAS**, the Collateral heretofore Delivered and to be Delivered hereunder will be credited to and held in the Securities Account and/or the Cash Collateral Account (each as hereinafter defined) by the Custodian.

**NOW, THEREFORE**, in consideration of the premises and the mutual covenants contained herein and set forth, the Counterparty, Lehman and the Custodian hereby agree as follows:

### SECTION I   DEFINITIONS

Capitalized terms used but not defined herein shall have the meanings set forth in the Counterparty Contract (as defined below).  As used herein, the following terms have the following meanings:

1.1   "Agreement" means this Collateral Security and Control Agreement by and among the Counterparty, Lehman and the Custodian, as the same may be amended, modified or supplemented and in effect from time to time.

1.2. "Book-Entry System" means a book-entry system for securities maintained at a Clearing Corporation.

1.3. "Business Day," means any day other than (i) a Saturday, (ii) a Sunday or (iii) a day on which banking institutions or trust companies in Bermuda; London, England or in New York City, New York are authorized or obligated by law, regulation or executive order to close.

1.4. "Cash Collateral Account" means the demand deposit account into which Collateral consisting of cash may from time to time be deposited, maintained by the Custodian and which is appropriately designated by the Custodian as the Counterparty's Collateral for purpose of the Counterparty Contract.

1.5    Left Blank.

1.6. "Clearing Corporation" means the Federal Reserve Bank of New York (the "FRBNY"), The Depository Trust Company or such other depository and settlement facility as may be designated by the TRADES Regulations promulgated by the government sponsored enterprises issuing the securities (as such regulations shall be adopted, amended, modified or supplemented and in effect from time to time) or as described in the New York Uniform Commercial Code.

1.7. "Collateral" has the meaning set forth in Section 3.1 hereof.

1.8. "Collateral Requirement" means, as of any date of determination, an amount of Collateral equal in value to the greater of (i), the outstanding Counterparty Obligations, (ii) and the Collateral Requirement (as set forth in the Counterparty Contract and this Agreement and more specifically recorded in the column headed "Collateral" in Appendix A to the Counterparty Contract), plus accrued and unpaid Interest Payments thereon, determined at the date of Delivery of the Collateral, and valuing the Collateral so Delivered as follows: (a) if the Collateral consists of Eligible Investments, an amount equal to the Market Value of such Collateral (principal and accrued interest) and (b) if the Collateral consists of cash, the amount of such cash.

1.9. "Credit to the Securities Account" means the making by the Custodian of an appropriate recordation on the pertinent books and records of the Custodian that the Delivered Securities Collateral is being held in the Securities Account and subject to the security interest of the Custodian. The use of the terms "credited" as an adjective or "crediting" as a gerund in connection with the Securities Account shall have a corresponding meaning.

1.10. "Custodian" means Lehman Brothers Inc. and its successors and assigns, as securities intermediary and bank under this Agreement.

1.11. "Deliver" or "Delivery" means the taking of the following steps by Counterparty:

(a)    with respect to such of the Collateral as constitutes cash, causing the Custodian to take possession of such cash in the State of New York;

(b) with respect to such of the Collateral as constitutes a certificated security in bearer form, causing the Custodian to acquire possession of the related security certificate in the State of New York;

(c) with respect to such of the Collateral as constitutes a certificated security in registered form, causing the Custodian to acquire possession of the related security certificate in the State of New York, endorsed to the Custodian or in blank by an effective endorsement, or registered in the name of the Custodian, upon original issue or registration of transfer by the issuer of such certificated security;

(d) with respect to such of the Collateral as constitutes an uncertificated security, causing the issuer of such uncertificated security to register the Custodian as the owner of such uncertificated security;

(e) with respect to such of the Collateral as constitutes a security entitlement, causing the Custodian to indicate by book entry that the financial asset relating to such security entitlement has been credited to the appropriate account;

(f) in the case of each of paragraphs (a) through (e) above, such additional or alternative procedures as may hereafter become necessary under and otherwise consistent with applicable law or regulation to grant a first priority perfected security interest in such items of the Collateral to the Custodian; or

(g) in each case of Delivery contemplated herein, causing the Custodian to make appropriate notations on its records, and causing the same to be made on the records of its nominees, if any, indicating that such Collateral is held for the benefit of Lehman, pursuant to and as provided herein.

Effective upon Delivery of any item of the Collateral, the Custodian shall be deemed to have (i) represented that its taking possession of such item of the Collateral is made without notice of any adverse claim thereto appearing on the face of such item (if in physical form) or otherwise known to the Custodian, <u>provided</u> that such representation shall not impose any other affirmative duty or obligation upon the Custodian with regard to inquiry or investigation of, or constructive notice of adverse claims, and (ii) acknowledged that it holds such item of the Collateral as Custodian hereunder solely for the benefit of Lehman for purposes of discharging any outstanding obligations of Counterparty to Lehman pursuant to the terms of the Counterparty Contract and this Agreement. Any additional or alternative procedures for accomplishing "Delivery" for purposes of paragraph (f) of this definition shall be permitted only upon delivery to the Custodian of an opinion of counsel to the effect that such procedures are necessary under or otherwise consistent with applicable law or regulation to grant a first priority perfected security interest in the applicable type of collateral.

1.12. "<u>Eligible Investments</u>" means (i) securities issued or guaranteed by the United States Government, the Government National Mortgage Association ("<u>GNMA</u>"), the Federal Home Loan Mortgage Corporation ("<u>FHLMC</u>"), the Federal National Mortgage Association ("<u>FNMA</u>") or other agency, corporation or instrumentality of the United States, (ii) commercial paper with a term not to exceed one year with a rating not lower than "A-1" from

S&P or "P-1" from Moody's at the time of the pledge, and (iii) asset-backed securities, corporate obligations or municipal obligations rated at least "AAA" by S&P or "Aaa" by Moody's; or (iv) as otherwise agreed with Lehman.

   1.13. "<u>Equivalent Collateral</u>" means, with respect to any investment property, financial asset, security consisting of, or any securities entitlement in and to, Eligible Investments, securities of the same issuer, series, maturity, mortgage pool (if applicable), and principal amount.

   1.14. "<u>Event of Default</u>" means the following events of default under the Counterparty Contract (each, an "<u>Event of Default</u>"): (a) a failure by the Counterparty to pay to Lehman any payment when due and payable by Counterparty pursuant to the provisions of the Counterparty Contract on any date that such payment is due and payable, for any reason including as a result of a bankruptcy, insolvency or similar proceeding with respect to the Counterparty and any such failure continues for three (3) Business Days or more; (b) failure of the Counterparty to maintain the Collateral Requirement in accordance with the requirements hereof and the Counterparty Contract; (c) following a consolidation, amalgamation or merger of the Counterparty with another entity, the failure of the resulting surviving or transferee entity to assume all of the obligations of the Counterparty under the Counterparty Contract and herein to Lehman's reasonable satisfaction; and (e) the termination (other than pursuant to its terms), or repudiation of the Counterparty Contract or any other event which causes the Counterparty Contract to cease to be in full force and effect or which challenges the validity of the Counterparty Contract in Lehman's commercially reasonable opinion.

   1.15. "<u>Market Value</u>" means, on any Business Day, with respect to Eligible Investments constituting Collateral, the following method, which method shall be consistently applied: valuation of the Collateral by obtaining the most recently available closing bid price from a nationally recognized pricing service. In the event that the Custodian or its agent is unable to obtain the price of a particular security from a pricing information service on any Business Day, the market value of such securities shall be determined by the Custodian or its agent in the exercise of its commercially reasonable discretion based on information furnished to the Custodian or its agent by one or more brokers in such securities (which unless otherwise agreed to between Lehman and Counterparty must be independent of Custodian and Lehman) or the Custodian or its agent may price such securities using a formula utilized by the Custodian or its agent for such purpose in the ordinary course of its business in a commercially reasonably manner.

   1.16. "<u>NYUCC</u>" or "New York Uniform Commercial Code" means the version of the Uniform Commercial Code from time to time in effect in the State of New York.

   1.17. "<u>Secured Amounts</u>" means all amounts at any time payable by the Counterparty to Lehman or the Custodian pursuant to the Counterparty Contract and/or this Agreement.

   1.18. "<u>Securities Account</u>" means the account maintained by the Counterparty with the Custodian, to which Collateral is credited and in which it is maintained, and which is

appropriately designated by the Custodian as the Counterparty's Collateral for purposes of the Counterparty Contract.

1.19. <u>TRADES Regulations</u>" means the regulations of the United States Department of the Treasury, published at 31 C.F.R. Part 357, as amended from time to time, the regulations of GNMA, FHLMC, FNMA or such other agency or instrumentality of the United States government to the extent that any such entity has promulgated regulations to govern book-entry procedures for such entities' debt obligations, which are Eligible Investments hereunder.

1.20. <u>Definitions</u>.  Unless otherwise defined herein or in the Counterparty Contract, all terms defined in the New York Uniform Commercial Code or the TRADES Regulations are used herein as therein defined.

### SECTION II  SECURITIES CUSTODIAN AND BANK

2.1. <u>Designation of Custodian</u>.  The Custodian shall hold the Eligible Investments contained in the Securities Account and the cash proceeds thereof, and the cash contained in the Cash Collateral Account and the cash proceeds therein as securities intermediary and bank, respectively, for the purpose of (i) perfecting Lehman's security interest in the Collateral, and the proceeds thereof or therein, and (ii) disposing of the Collateral for the benefit of Lehman only to discharge outstanding obligations of the Counterparty to Lehman in accordance with the terms and conditions of the Counterparty Contract and this Agreement; <u>provided</u>, <u>however</u>, that, except for the performance of its duties hereunder, the Custodian shall have no responsibility with respect to the validity or the perfection of the security interest.

2.2. <u>Acceptance of Appointment and Establishment of Accounts</u>.  The Custodian agrees that it is acting as a securities intermediary and that, in such capacity, it will establish and maintain the Securities Account and the Cash Collateral Account, as appropriate, in accordance with the terms of this Agreement.

2.3 <u>Notification to Custodian</u>.  The Custodian is hereby notified of Lehman's security interest, including the provision that, except pursuant to Sections 3.2, 3.3 and 5.4(i) hereof, the Collateral and the proceeds thereof are to be paid or delivered to no one other than Lehman unless and until the Custodian receives further instruction from Lehman.  The Counterparty agrees to fully cooperate with Lehman with respect to signing whatever documents and providing whatever notices may be required by the Custodian in order to complete and accomplish the foregoing.

2.4. <u>Control Agreement and Acknowledgment of Security Interest by Custodian</u>.  Each of Lehman and the Counterparty hereby agrees that it is intended that the Custodian act as (x) a "securities intermediary" as such term is defined in the NYUCC with respect to the Securities Account and Collateral pledged hereunder to the extent the Securities Account or any portion thereof is a securities account and (y) a "bank" as such term is defined in the NYUCC with respect to each of the Securities Account and the Cash Collateral Account, in each case to the extent that such account or any portion thereof is a demand deposit account.  In addition, the parties intend that all Collateral (except cash) in the Securities Account shall be treated as "financial assets" as such term is defined in the NYUCC. The Custodian acknowledges

**Execution Copy**

receipt of notice of Lehman's security interest in the Securities Collateral, and has marked or will mark its records, by book-entry or otherwise, to indicate Lehman's security interest in the Securities Collateral and the proceeds thereof. As of the date hereof: (a) Lehman's security interest in the Securities Collateral is identified on the Custodian's books and records, by book-entry or otherwise; (b) the Custodian has not and will not confirm an interest or a security entitlement in the Securities Collateral to any person other than to the Counterparty and to Lehman; and (c) the Custodian's records do not indicate any claim to the Securities Collateral, or the proceeds thereof adverse to that of Lehman nor do they indicate any person, other than the Counterparty and Lehman, as having any interest in the Securities Collateral or the proceeds thereof or authority to issue entitlement orders or other instructions with respect to the Securities Collateral, the proceeds thereof or the Cash Collateral Account and the cash proceeds therein. The Custodian also hereby subordinates in favor of Lehman any contractual or statutory security interest or lien, claim, encumbrance or right of set-off or recoupment that the Custodian may acquire with respect to the Securities Collateral and the proceeds thereof, the Cash Collateral Account and the cash proceeds therein. Pursuant to Lehman's agreement with the Counterparty, the Custodian is authorized and directed by the Counterparty to comply with and follow (without the necessity of obtaining the Counterparty's further consent) any written instructions and entitlement orders that Lehman may give with respect to the Securities Collateral or the proceeds thereof, including, without limitation, instructions and entitlement orders directing that the Custodian: (1) (to the extent applicable) issue certificates representing the Securities Collateral, registered in either the Counterparty's name, or in the name of Lehman or its nominee, and deliver the same directly to Lehman; (2) register the Securities Collateral on the Custodian's books and records in the name of Lehman or its nominee, and deliver the same directly to Lehman; (3) transfer the Securities Collateral into another securities account maintained in the name of Lehman or its nominee; and (4) redeem, sell, liquidate, transfer, assign, deliver and otherwise to dispose of the Securities Collateral in such manner as Lehman may direct, and further to pay and deliver any income, proceeds or other funds derived therefrom to Lehman. Except as provided in Sections 3.2, 3.3 and 5.4(i) hereof, or until the Custodian receives written instructions from Lehman to the contrary, the Custodian agrees not to permit or allow the Counterparty to redeem or to withdraw or make a free delivery of any of the Securities Collateral, the other Collateral or any income or proceeds derived or to be derived therefrom. In furtherance of the above provisions, the Custodian hereby agrees that it shall comply with entitlement orders and other instructions originated by Lehman without further consent of any other person or entity, including the Counterparty. The Custodian hereby covenants that it will not agree with any person or entity other than Lehman to comply with entitlement orders or other instructions originated by such other person or entity.

**Execution Copy**

2.5. <u>Crediting of Certain Collateral</u>. (a) The Counterparty, Lehman and the Custodian agree that certain Securities Collateral to be Delivered to the Custodian for Credit to the Securities Account may be in the form of credits by a Clearing Corporation to the account of the Custodian on a Book-Entry System. In such case, the Custodian shall ensure that all such Securities Collateral credited to its account with such Clearing Corporation is credited on a continuing and ongoing basis to the Securities Account and shall utilize the Book-Entry System to the extent possible in connection with its performance hereunder, including, without limitation, in connection with settlements of purchases and sales of Securities Collateral.

(b) In the event that proceeds of Securities Collateral is in the form of cash, the Custodian shall act on behalf of Lehman and shall place such cash in the Cash Collateral Account.

(c) The Custodian agrees that any Securities Collateral that is Delivered to it shall promptly be Credited to the Securities Account.

(d) In the event that any cash proceeds of the Securities Collateral are not promptly transferred to the Counterparty, or may not, pursuant to this Agreement, be transferred to the Counterparty, such proceeds shall be deposited in the Cash Collateral Account.

2.6. <u>Dominion and Control over Cash Collateral Account</u>. Notwithstanding any term or condition to the contrary in any agreement relating to the Cash Collateral Account, no amount shall be paid or released to or for the account of, or withdrawn by or for the account of, the Counterparty except as set forth below. The Custodian agrees to make all payments in respect of the Cash Collateral Account only in accordance with the written instructions of Lehman in light of the amounts owing to Lehman pursuant to the express terms of the Counterparty Contract and this Agreement. All payments so made by the Custodian shall be made irrespective of, and without deduction for, any counterclaim, defense, recoupment or set-off, and shall be final, and the Custodian will not seek to recover from Lehman for any reason any such payment once made. Lehman, the Counterparty and the Custodian also agree that the Custodian will comply with written instructions originated by Lehman directing disposition of the funds in the Cash Collateral Account without further consent by the Counterparty.

2.7. <u>Confirmations</u>. The Custodian shall provide the Counterparty and Lehman with confirmation statements reflecting Eligible Investments, other Securities Collateral (if any) and cash positions in the Cash Collateral Account and Securities Account on each Business Day or as otherwise may be requested by the Counterparty or Lehman. The Counterparty and Lehman shall promptly review all such confirmation statements and shall promptly advise the Custodian of any error, omission or inaccuracy in such statements. The Custodian shall undertake to correct any errors, failures or omissions that are reported to it by the Counterparty or Lehman. Any such corrections shall be reflected on subsequent confirmation statements.

**SECTION III    GRANT OF SECURITY INTEREST; INITIAL DELIVERY**

3.1. <u>Security Interest</u>. As security for the prompt and complete payment when due of the Secured Amounts in accordance with the terms and conditions of the Counterparty Contract and this Agreement, the Counterparty hereby pledges, assigns, conveys and transfers to

**Execution Copy**

Lehman, and hereby grants to Lehman, a security interest under the NYUCC in and to, and general first lien upon and right of set-off against, all of the Counterparty's rights, title and interest, whether now owned or hereafter acquired, in and to (i) the Securities Account and all financial assets, investment property, security entitlements and/or securities that are held in or credited to the Securities Account, (ii) all certificates and instruments from time to time created representing or evidencing any and all Securities credited to the Securities Account or that the Custodian is obligated to credit to the Securities Account, (iii) all powers and rights of the Counterparty now or hereafter acquired by the Counterparty, including rights of enforcement, under or with respect to any or all of the foregoing, (iv) all proceeds thereof consisting of securities, securities accounts and security entitlements (collectively, the "Securities Collateral"), (v) all other proceeds of the foregoing, including, without limitation, all interest, amounts paid upon maturity or redemption and other income or distributions with respect to the Collateral and (vi) the Cash Collateral Account and all amounts credited thereto from time to time (the Securities Collateral, the Cash Collateral Account and such other proceeds being, collectively, the "Collateral").  The Counterparty or Lehman may file UCC-1 Financing Statements with respect to any portions of the Collateral or the proceeds thereof for which such a financing statement is appropriate.

3.2.             Required Collateral.

(a)     Delivery.  On the Closing Date, the Counterparty shall (i) provide to Lehman the Collateral Requirement based on the amount so stated and agreed to in the Counterparty Contract and (ii) by the issuance of an appropriate instruction, cause Eligible Investments to be Delivered to the Custodian, for credit to the Securities Account, and/or cash to be deposited to the Cash Collateral Account such that the sum of (i) the aggregate Market Value of such Eligible Investments and (ii) the aggregate amount of such cash is at least equal to the Collateral Requirement.

(b)     Maintenance of Collateral Requirement.

On each Business Day or less frequently as agreed to by Counterparty, Lehman and the Custodian the Custodian shall determine the Market Value of the Eligible Investments and promptly provide written notice of such Market Value to the Counterparty and Lehman.  If the Market Value, as reflected in such notice, of the Eligible Investments, plus the Market Value of any cash then held in the Cash Collateral Account, is less than the Collateral Requirement, the Counterparty shall, within one (1) Business Day of receipt of such notice, cause to be Delivered, and shall instruct the Custodian to credit to the Cash Collateral Account or Securities Account and the Custodian shall credit to the Cash Collateral Account or Securities Account as the case may be, cash or Eligible Investments in an amount such that, following Delivery and credit to the Cash Collateral Account or Securities Account, the aggregate amount of Eligible Investments then held in the Securities Account and cash then held in the Cash Collateral Account has a Market Value which is at least equal to the Collateral Requirement.

(c)     Withdrawal.  If, following either (i) the termination of the Counterparty Contract and the end of any development or reporting period thereunder or (ii) on the last Business Day of each calendar quarter, and provided no claims have been reported thereunder, on the 5th Business Day after in case of (i) the later of such termination, development or

reporting period and in the case of (ii) such calendar quarter date, the Market Value of all Eligible Investments held by the Custodian in or credited to the Securities Account, plus the amount of any cash then held in the Cash Collateral Account, exceeds the Collateral Requirement, the Custodian shall, within one (1) Business Day, unless it has been notified in writing that an Event of Default has occurred and is continuing, return to the Counterparty, pursuant to the Counterparty's written instructions, Eligible Investments or cash having a Market Value as nearly as possible equal to (but not exceeding) the excess of the Market Value of the Eligible Investments, plus the Market Value of any cash then held in the Cash Collateral Account, over the amount necessary to satisfy the Collateral Requirement.

(d)     <u>Substitution</u>.  The Counterparty may, on any Business Day, substitute for all or part of the Securities Collateral, substitute collateral, in a form acceptable and agreed to in writing by Lehman which consent shall not be unreasonably withheld.

(e)     <u>No Duty Regarding Derivatives</u>.  If the Counterparty has selected any Collateral which derives all or a portion of its value from changes in the value of underlying securities, mortgages or other obligations, or one or more currencies, commodities, indices or other factors (such Collateral, hereinafter referred to as "<u>Derivative Securities</u>"), the parties understand that the Custodian shall have no obligation to monitor whether any such Collateral are also Derivative Securities.  Lehman and the Counterparty further agree that the Custodian shall have no liability whatsoever for any loss, damage or expense incurred by Lehman or the Counterparty as a result of any failure to exclude such Derivative Securities.  Accordingly, the parties agree that anything in this Agreement to the contrary notwithstanding, it shall be Lehman's and the Counterparty's responsibility to ensure that the Collateral does not include Derivative Securities unless they have otherwise agreed.

3.3.    <u>Rights with Respect to Collateral</u>.

(a)     <u>Payments</u>.  Unless Lehman has notified the Custodian that an Event of Default shall have occurred and be continuing, the Counterparty shall be entitled to receive all payments of interest on the Collateral at the agreed upon rate with Lehman, if after giving effect to such receipt by the Counterparty, the Market Value of the Eligible Investments held by the Custodian in the Securities Account, plus the cash held in the Cash Collateral Account, on the date on which such amounts are proposed to be paid to the Counterparty is at least equal to the Collateral Requirement as of such Business Day. The Custodian shall promptly remit to the Counterparty any such payment received by the Custodian which the Counterparty is entitled to receive hereunder.

(b)     <u>Remedies</u>.  If any Event of Default shall occur and be continuing, Lehman may, to the extent permitted by law, exercise any of the rights and remedies of a secured party with respect to the Collateral, including any such rights and remedies under the NYUCC, and, in addition, Lehman may, to the extent permitted by applicable law, without demand of performance and without notice to the Counterparty except as provided below, take either or both of the following actions:

> (i)     sell the Collateral or any part thereof, in one lot or in separate parcels, for cash or on credit or for future delivery, at the option of Lehman, at any

        public or private sale, and at such price or prices as Lehman may deem appropriate. If the purchaser fails to take up and pay for the Collateral so sold, such Collateral may be again similarly sold. Lehman may be the purchaser of any or all of the Collateral sold subject to any rights of the Counterparty under the NYUCC or any other applicable law, provided however that in the sale of securities Lehman shall not be entitled to purchase any of the Collateral at any private sale for less than the Market Value of such securities; or

    (ii)    give the Counterparty written notice of Lehman's proposal that Lehman will retain the Collateral and/or the proceeds thereof in satisfaction (including partial satisfaction to the extent permitted by law) of all Secured Amounts and if the Counterparty does not give Lehman notice of objection before the 5th day after Lehman gives such notice of its proposal to retain such Collateral and/or the proceeds thereof, Lehman may retain the Collateral and/or the proceeds thereof free from any claim or right of any nature whatsoever of the Counterparty including any rights in equity or right of redemption, which rights, if any, are, to the extent permitted by law, hereby expressly waived. If the Counterparty provides notices of objection, or if Lehman otherwise decides on or after such 5th day, Lehman shall take the actions specified in Section 3.3(b)(i) above or any other action permitted by law.

    (c)    <u>Application of Proceeds</u>. The proceeds of any sale of all or any part of the Collateral pursuant to this Section 3.3 (less the costs and expenses incurred in selling such Collateral) shall be applied by Lehman, in accordance with the provisions of the Counterparty Contract. The Counterparty shall remain liable for any such obligations remaining unpaid from the foregoing proceeds and shall be entitled to the return of the excess (if any) after any application of such proceeds and satisfaction in full of all outstanding obligations of the Counterparty under the Counterparty Contract (including any remaining Collateral Requirement), and subject to the foregoing and any rights of set off available to Lehman, such amounts (if any) shall be returned by Lehman and/or the Custodian to the Counterparty within 5 Business Days of the application(s) of such Collateral or proceeds thereof to Counterparty's obligations under the Counterparty Contract.

    3.4.    <u>Certain Rights of the Custodian</u>. The Custodian may fully rely without further inquiry, and without obtaining the consent of the Counterparty, on any written direction of Lehman received by it in connection with Section 3.3 hereof. The Custodian shall give notice to the Counterparty of any action taken under this Section 3.4 on the day such action is taken.

    3.5.    <u>Other Provisions Regarding the Collateral</u>.

    (a)    <u>Further Assurances</u>. The Counterparty covenants and agrees that it will at Lehman's request at its own expense execute, deliver, file and record any financing statement, specific assignment or other paper and take any other action that may be necessary or desirable in order to create, preserve, perfect or validate any security interests granted to Lehman

hereunder, or the priority thereof, or to enable Lehman to exercise and enforce any rights under this Agreement with respect to any of the Collateral and the proceeds thereof.

(b)  <u>Notice of Actions</u>.  The Counterparty will give notice to the Custodian and Lehman of, and defend the Collateral against, any suit, action or proceeding against the Collateral or which could adversely affect the security interests granted hereunder.

(c)  <u>Return of Collateral to the Counterparty</u>.  Whenever the Custodian is obligated to return Collateral to the Counterparty under this Agreement, the Custodian may deliver Equivalent Collateral.

(d)  <u>Notification</u>.  Withdrawals or substitutions of Collateral as provided in Sections 3.2(c) and (d) hereof, and payments to the Counterparty on account of Collateral as provided in Section 3.3(a), are not permitted if the Custodian has been notified in writing by Lehman that an Event of Default has occurred and is continuing.

### SECTION IV   REPRESENTATIONS AND WARRANTIES

4.1.  <u>Representations and Warranties of the Counterparty</u>.  The Counterparty represents and warrants to the Custodian and Lehman that:

(a)  (i) It is duly authorized to enter into this Agreement and the transactions contemplated hereby; (ii) this Agreement constitutes the legal, valid and binding obligation of the Counterparty enforceable against it in accordance with its terms, subject to bankruptcy, insolvency and similar laws affecting creditors' rights generally, to general principles of equity (regardless of whether considered in a proceeding at law or in equity) and to the application of judicial discretion; and (iii) the execution, delivery and performance of this Agreement by the Counterparty does not and will not result in a breach or violation of or cause a default under, its charter or by-laws or any provision of any agreement, instrument, judgment, injunction, order, license, law or regulation applicable to or binding upon the Counterparty or its assets.

(b)  (i) Immediately prior to any transfer and Delivery of any Securities Collateral to the Custodian, the Counterparty owns and will own such Securities Collateral, free and clear of all liens and adverse claims other than the lien and security interest granted pursuant hereto and under the Counterparty Contract, (ii) the Counterparty has, and will have, on the date of each Delivery to the Custodian of the Securities Collateral, full power, authority and legal right to pledge all of its rights, title and interest in and to the Securities Collateral pursuant hereto, (iii) upon Delivery of any Securities Collateral to the Custodian, Lehman will have a first priority, perfected security interest in such Securities Collateral and the proceeds thereof and (iv) Lehman has an effective lien on the Cash Collateral Account, subject only to any rights of the Custodian.

(c)  The Counterparty has not previously created, granted or assigned (and will not create, grant or assign) any security interest or participation in the Collateral (or, if any such interest or participation has been granted or assigned, it has been released, revoked or terminated), other than any such security interest granted to Lehman.  The Counterparty has not authorized, nor will the Counterparty authorize, any person other than Lehman to issue

entitlement orders to the Custodian regarding the Securities Collateral or the Cash Collateral Account.

  4.2. <u>Representations and Warranties of Lehman</u>.  Lehman represents and warrants to the Counterparty, and the Custodian that (i) it is duly authorized to enter into this Agreement and the transactions contemplated hereby; (ii) this Agreement constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms subject to bankruptcy, insolvency and similar laws affecting creditors' rights generally, to general principles of equity (regardless of whether considered in a proceeding at law or in equity) and to the application of judicial discretion; and (iii) the execution, delivery and performance of this Agreement by it does not and will not result in a breach or violation of, or cause a default under its charter or bylaws or any provision of any instrument, judgment, injunction, order, license, law or regulation applicable to or binding upon it or its assets.

  4.3. <u>Representations and Warranties of the Custodian</u>. The Custodian represents and warrants to the Counterparty and Lehman that (i) it is duly authorized to enter into this Agreement and the transactions contemplated hereby; (ii) this Agreement constitutes its legal, valid and binding obligation, enforceable against it in accordance with its terms subject to bankruptcy, insolvency and similar laws affecting creditors' rights generally, to general principles of equity (regardless of whether considered in a proceeding at law or in equity) and to the application of judicial discretion; and (iii) the execution, delivery and performance of this Agreement by it does not and will not result in a breach or violation of, or cause a default under its charter or bylaws or any provision of any instrument, judgment, injunction, order, license, law or regulation applicable to or binding upon it or its assets.  The Custodian represents that it is acting under this Agreement as depository bank with respect to the Cash Collateral Account and any cash proceeds held therein and that it is acting as securities intermediary with respect to the Securities Account and any securities, security entitlements and proceeds relating thereto.

  **SECTION V THE CUSTODIAN**

  5.1. <u>Liability and Indemnification of the Custodian</u>.  The Custodian shall not be liable for any loss or damage, including reasonable counsel fees, arising under or in connection with this Agreement and resulting from its actions or omissions to act or otherwise, except for any such loss or damage arising out of its own gross negligence or willful misconduct.  The Custodian shall have no obligation hereunder for costs, expenses, damages, liabilities or claims, including reasonable attorney's fees, which are sustained or incurred by reason of any action or inaction by any issuer of Eligible Investments, any Clearing Corporation or their respective successors or nominees.  In no event shall the Custodian be liable to the Counterparty, Lehman or any third party for special, indirect or consequential damages, or lost profits or loss of business, arising under or in connection with this Agreement, even if previously informed of the possibility of such damages and regardless of the form of action.  The Custodian may, with respect to questions of law, apply for and obtain the advice and opinion of counsel, and shall be fully protected with respect to anything done or omitted by it in good faith in conformity with such advice or opinion.  The Counterparty, in connection with successful defenses of claims by the Counterparty (or Lehman), or the Custodian agrees to indemnify the Custodian and to hold it harmless against any and all costs, expenses, damages, liabilities or claims, including reasonable fees and expenses of counsel, which the Custodian may sustain or incur or which may be

asserted against the Custodian by reason of or as a result of any action taken or omitted by the Custodian in connection with operating under this Agreement or incurred by the Custodian in a successful defense of claims by the Counterparty, as applicable, except those costs, expenses, damages, liabilities or claims arising out of the gross negligence or willful misconduct of the Custodian or any of its employees. It is expressly understood and agreed that the right of the Custodian to indemnification hereunder shall be enforceable against the Counterparty directly, without any obligation to first proceed against any third party for whom the Counterparty may act, and irrespective of any rights or recourse that the Counterparty may have against any such third party. This indemnity shall be a continuing obligation of the Counterparty notwithstanding the termination of this Agreement.

5.2. <u>Custodian's Obligations as to Securities Collateral</u>. Without limiting the generality of the foregoing, the Custodian shall be under no obligation to inquire into, and shall not be liable for, the title, validity or genuineness of the issue of any Securities Collateral, the legality of the purchase or sale thereof or the propriety of the amount paid or received therefor, and the due authority of any person to act on behalf of the Counterparty or Lehman with respect to Securities Collateral held in the Securities Account. The Custodian shall not be under any duty or obligation to ascertain whether any Securities Collateral at any time Delivered to or held by it hereunder is such as properly may be held by the Counterparty or Lehman or any entities for which either acts.

5.3. <u>Custodian's Responsibility</u>. The Custodian shall not be liable for any Securities Collateral received by it on behalf of Lehman until such Securities Collateral is actually Delivered.

5.4. <u>Collection of Securities Collateral</u>. The Custodian shall not be under any duty or obligation to take action to effect collection of any amount if the Securities Collateral upon which such amount is payable is in default, or if payment is refused after due demand or presentation, unless and until (i) it shall be directed to take such action by the Counterparty or, upon the occurrence and continuance of an Event of Default, by Lehman and (ii) it shall be assured to its satisfaction of reimbursement of its costs and expenses in connection with any such action.

5.5. <u>Compensation and Waiver of Setoff Rights and Liens</u>. The Custodian shall be entitled to receive, and the Counterparty agrees to pay to the Custodian, all out-of-pocket expenses and such compensation as may be agreed upon from time to time between the Custodian and the Counterparty (if any). Notwithstanding the foregoing, however, the Custodian hereby waives any right of counterclaim, banker's lien, liens or perfection rights as securities intermediary with respect to the Securities Collateral, the proceeds thereof, the Cash Collateral Account and the cash proceeds therein. It is understood that Lehman is not liable for any fees or expenses of the Custodian.

5.6. <u>Reliance on Instructions</u>. The Custodian shall be entitled to rely upon any certificate, written instruction or oral instruction received by it and reasonably believed by it to be duly authorized and delivered. To the extent that they are each entitled to instruct the Custodian hereunder, the Counterparty and Lehman agree to forward to the Custodian written instructions confirming any and all oral instructions. Written instructions confirming oral

instructions shall be forwarded in such manner so that such written instructions are received by the Custodian, whether by hand delivery, telecopier, e-mail or facsimile or other similar device, or otherwise, by the close of business of the same day that such oral instructions are given to the Custodian. The Counterparty and Lehman agree that the fact that such confirming written instructions are not received or that contrary written instructions are received by the Custodian shall in no way affect the validity of enforceability of the transactions previously authorized and effected by the Custodian.

5.7. <u>Access to Books and Records</u>. The Counterparty and Lehman, or their authorized representatives, shall have access to the books and records maintained by the Custodian with respect to the Collateral during the normal business hours of the Custodian. Upon the reasonable request of the Counterparty or Lehman, copies of any such books and records shall be provided by the Custodian to the Counterparty or Lehman and/or their authorized representatives, as the case may be, at the expense of such requesting party.

5.8. <u>Reliance on Pricing Services</u>. The Custodian is authorized to utilize any generally recognized pricing information service (including brokers and dealers of securities other than those affiliated with the Custodian or Lehman unless otherwise agreed to between Lehman and Counterparty) in order to perform its valuation responsibilities hereunder, and the Counterparty agrees that the Custodian shall not be responsible for any loss, damage, expense, liability or claim (including attorney's fees) incurred as a result of errors or omissions of any such pricing information service, broker or dealer.

5.9. <u>Circumstances Beyond Control</u>. The Custodian shall not be responsible or liable for any failure or delay in the performance of its obligations under this Agreement arising out of or caused, directly or indirectly, by circumstances beyond its reasonable control, including, without limitation (to the extent beyond its reasonable control), acts of God, earthquakes, fires, floods, wars, civil or military disturbances, sabotage, epidemics, riots, interruptions, loss or malfunctions of utilities, transportation, computer (hardware or software) or communications service, accidents, acts of civil or military authority, governmental actions or inability to obtain labor, material, equipment or transportation.

5.10. <u>No Implied Duties or Responsibilities</u>. The Custodian shall have no duties or responsibilities except such duties and responsibilities as are specifically set forth in this Agreement, and no covenant or obligation shall be implied in this Agreement against the Custodian.

5.11. <u>Resignation or Removal; Termination</u>. (a) Subject to the further provisions of this Section 5.11, the Custodian may resign at any time as securities intermediary and bank hereunder by delivery to the Counterparty and Lehman of not less than thirty (30) days' prior written notice of resignation. In addition, upon any material breach of its duties hereunder by the Custodian, the Counterparty or Lehman with the consent of the Counterparty, may, on thirty (30) days' prior written notice to the Custodian and any other party hereto, remove the Custodian from its position as securities intermediary and bank hereunder so long as no Event of Default shall have occurred and be continuing hereunder. Upon any such resignation or removal, the Counterparty or Lehman, with the consent of the Counterparty, shall appoint a successor securities intermediary and bank which appointee, upon its agreement to comply with the terms

of this Agreement shall be accepted and appointed as successor. Until such time as a successor is appointed, the Custodian shall continue to serve as securities intermediary hereunder and bank and shall continue to be subject to the provisions hereof.

(b)    Upon acceptance by a qualified successor Custodian of its appointment hereunder, the Custodian shall cause to be Delivered to such successor Custodian (i) all Securities Collateral in its possession and the successor Custodian shall Credit the Securities Collateral consisting of Eligible Investments to a Securities Account designated as described in Section 1.19 and subject to the other provisions hereof and (ii) all cash in a Cash Collateral Account as described in Section 1.4 hereof and subject to the other provisions hereof.

(c)    It is expressly agreed and acknowledged by the Counterparty and Lehman that the Custodian is not guaranteeing performance of or assuming any liability for the obligations of the Counterparty or Lehman hereunder nor is it assuming any credit risk associated with transactions hereunder, which liabilities and risks are the responsibility of the Counterparty and Lehman; further, it is expressly agreed that the Custodian is not undertaking to make credit available to Lehman or the Counterparty to enable it to complete transactions hereunder.

(d)    Upon the later of (i) expiration of the Counterparty Contract in accordance with its terms at a time when no Event of Default has occurred and is continuing or (ii) repayment by the Counterparty of all amounts due under the Counterparty Contract, Lehman shall, upon the request of the Counterparty, give written notice of any such expiration or repayment to the Custodian and instruct the Custodian that all Collateral then held by the Custodian hereunder shall be returned to the Counterparty, at which time this Agreement shall terminate.

### SECTION VI   MISCELLANEOUS

6.1.    <u>No Waiver; Cumulative Remedies</u>.  No failure or delay on the part of the Counterparty, Lehman or the Custodian in exercising any right or remedy hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any such right or remedy preclude any other exercise of that or any other right or remedy. The rights and remedies of the Counterparty, Lehman and the Custodian hereunder are cumulative and are not exclusive of any rights or remedies provided by law or equity or in any other contract between such parties. None of the terms or provisions of this Agreement may be waived, modified or amended, except in writing duly signed by the Counterparty, Lehman and the Custodian.

6.2.    <u>Survival</u>.  All warranties, representations and indemnities made by the Counterparty, Lehman or the Custodian, as the case may be, in this Agreement or in any of the instruments or documents delivered pursuant to this Agreement regardless of any investigation made shall be considered to have been relied upon by the other party hereto and shall survive the delivery of any instruments or documents and the execution hereof.

6.3.    <u>Successors and Assigns</u>.  This Agreement and all obligations and rights arising hereunder shall inure to the benefit of and be binding upon the parties hereto and their respective successors, assigns and beneficiaries. Notwithstanding the foregoing, this Agreement,

and the obligations and rights arising out of this Agreement or any part hereof, shall not be sold, pledged or assigned or otherwise transferred by the Counterparty, Lehman or the Custodian without the prior written consent of all of the other parties hereto and any such attempted sale, pledge, assignment or transfer shall be void <u>ab</u> <u>initio.</u>

      6.4.    <u>Applicable Law/Jurisdiction/Waiver of Immunity/Waiver of Jury Trial</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of New York, including the NYUCC from time to time in effect, and the TRADES Regulations. The parties agree that for all purposes relating to this Agreement, the Securities Collateral and the Cash Collateral Account, the securities intermediary's jurisdiction, within the meaning of Section 8-110(e) of the NYUCC or any successor provision, and the bank's jurisdiction, shall be the State of New York. The parties irrevocably consent to the exclusive jurisdiction and venue of a state or federal court situated in the Borough of Manhattan, New York City, New York with respect to any legal proceeding where the Custodian is a named party and irrevocably waive the right to object to such venue of any such court on the ground that such forum is inconvenient. To the extent that in any jurisdiction any party may now or hereafter claim or be entitled to claim, for itself or its assets, immunity from suit, execution, attachment (before or after judgment) or other legal process, each party irrevocably agrees, to the extent permitted by law, not to claim, and it hereby waives, such immunity in connection with any contractual dispute with respect to this Agreement. The parties hereby waive their right to trial by jury in any proceeding involving, directly or indirectly, any matter in any way arising out of, related to, or connected with, this Agreement.

      6.5.    <u>Severability of Provisions</u>. If any one or more of the provisions contained in this Agreement is declared invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

      6.6.    <u>Counterparts</u>. This Agreement may be executed in several counterparts by different parties, each of which shall constitute an original and all of which, taken together, shall constitute but one agreement binding upon the parties hereto.

      6.7.    <u>Integration of Terms</u>. This Agreement contains the entire agreement between the parties relating to the subject matter hereof and supersedes all oral statements and prior writings with respect thereto.

      6.8.    <u>Interpretation</u>. The headings of the articles and sections hereof are for convenience of reference only and shall not affect the meaning or construction of any provision hereof.

      6.9.    <u>Notices</u>. All notices, requests, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given upon receipt if delivered by hand, or as of the date of receipt shown on the signed return receipt if mailed at a post office in the United States by registered or certified mail, postage prepaid, return receipt requested, or as of the date of acknowledgment if transmitted by telex, facsimile or other telecommunication equipment including inter-computer and electronic mail communications, in any case addressed to the attention of the person listed on Exhibit A hereto, or at such other

**Execution Copy**

address or to the attention of such other person as such party shall have designated to the other party hereto in a written notice.

**[SIGNATURE PAGE FOLLOWS]**

**Execution Copy**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered as of March 29, 2007.

**PULSAR RE, LTD.**

By: _____
  Name: PETER H. VLOEDMAN
  Title: DIRECTOR

**LEHMAN RE LTD.**

By: _____
  Name: C. GRANT HALL
  Title: Authorized Officer  ASSISTANT VICE PRESIDENT
  HAMILTON, BERMUDA

**LEHMAN BROTHERS INC. AS CUSTODIAN**

By: _____
  Name: BRETT HOUGHTON
  Title: SVP

17

## EXHIBIT A

Notices and communications to the parties should be directed to:

**If to the Counterparty:**

Pulsar Re, Ltd.
c/o March Management Services (Bermuda) Limited
Victoria Hall, 11 Victoria Street
Hamilton HM 11, Bermuda
Attention: Attention: Jonathan Rawdon
Tel: 441-292-4402
Fax : 441- 292-1563

**If to Lehman:**

Lehman Re Ltd.
Cumberland House, 3rd Floor
1 Victoria Street
Hamilton HM 11, Bermuda
Attention: Grant Hall
Tel: 441-294-0000
Fax: 441-296-8452

With a copy to:

Pulsar Re, Ltd
Cumberland House, 7th Floor
1 Victoria Street
Hamilton HM 11
Bermuda
Attn: Sean Belton
Tel: 441-298-2408
Fax: 441-298-2401

With a copy to:

Jessica O'Brien
Lehman Brothers Inc.
745 Seventh Avenue – 7th Floor
New York, New York  10019
Tel: 212-526-5776
Fax: 646-758-5086

**If to the Custodian:**

Lehman Brothers Inc.
745 Seventh Avenue
New York, New York  10019

Attention: Collateral Department and Corporate Secretary

18