Presentment Date and Time: February 16, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: February 16, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed):  March 16, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                :
In re                                           :        Chapter 11 Case No.
                                                :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :        **08-13555 (JMP)**
                                                :
                            Debtors.            :        **(Jointly Administered)**
                                                :
---------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF APPLICATION**
**OF THE DEBTORS PURSUANT TO SECTION 327(e)**
**OF THE BANKRUPTCY CODE AND RULE 2014 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORIZATION TO EMPLOY AND RETAIN FOSTER, GRAHAM,**
**MILSTEIN & CALISHER, LLP AS SPECIAL COUNSEL TO DEBTORS**

      **PLEASE TAKE NOTICE** that the undersigned will present the annexed

application (the "Application") of Lehman Brothers Holdings Inc. ("LBHI" and, together with its

affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession,

the "Debtors"), pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy

Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"),

and Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the

"Local Rules"), to employ and retain Foster, Graham, Milstein & Cailsher, LLP as special

counsel to the Debtors, all as more fully described in the Application, to the Honorable James M.

Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004

(the "Bankruptcy Court") on **February 16, 2011 at 12:00 p.m. (Prevailing Eastern Time)**.

        **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Application

shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules, shall set forth the

name of the objecting party, the basis for the objection and the specific grounds thereof, shall be

filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can

be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard

copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii)

Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn:  Richard P.

Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York, 10004,

Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv)

Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005,

Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the

Official Committee of Unsecured Creditors appointed in these cases; and (v) Foster, Graham,

Milstein & Cailsher, LLP, 621 17th Street, Denver, Colorado 80293, Attn: Daniel K. Calisher **so as**

**to be so filed and received by no later than February 16, 2011 at 11:00 a.m. (prevailing**

**Eastern Time)** (the "Objection Deadline").

        **PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely

filed and served, a hearing will be held on **March 16, 2011 at 10:00 a.m. (Prevailing Eastern**

US_ACTIVE:\43598965\05\58399.0008

**Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable

James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York

10004-1408.  If an objection is filed the moving and objecting parties are required to attend the

hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  February 2, 2011
        New York, New York

                          /s/ Richard P. Krasnow
                          Richard P. Krasnow, Esq.

                          WEIL GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone: (212) 310-8000
                          Facsimile: (212) 310-8007

                          Attorneys for the Debtor
                          And Debtor in Possession

Presentment Date and Time: February 16, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Date and Time: February 16, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed):  March 16, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                    :
**In re**                                           :    **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.***,**    :    **08-13555 (JMP)**
                                                    :
                                        **Debtors.**    :    **(Jointly Administered)**
                                                    :
--------------------------------------------------------------------x

**APPLICATION OF THE DEBTORS PURSUANT**
**TO SECTION 327(e) OF THE BANKRUPTCY CODE AND**
**RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN FOSTER,**
**GRAHAM, MILSTEIN & CALISHER, LLP AS SPECIAL COUNSEL TO DEBTORS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and

collectively with their non-debtor affiliates, "Lehman"), file this Application to employ Foster,

Graham, Milstein & Calisher, LLP ("Foster Graham") as special counsel and respectfully

represent:

### Background

1.         Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this

US_ACTIVE:\43598965\05\58399.0008

Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner issued a report of his investigation pursuant to section 1106 of the Bankruptcy Code on March 11, 2010 [Docket No. 7531].

5.      On January 25, 2011, the Debtors filed the first amended joint chapter 11 plan and disclosure statement [Docket Nos. 14150 and 14151].

### Jurisdiction

6.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Lehman's Business**

7.        Prior to the events leading up to these Chapter 11 cases, Lehman was the

fourth largest investment bank in the United States. For more than 150 years, Lehman has been a

leader in the global financial markets by serving the financial needs of corporations, governmental

units, institutional clients and individuals worldwide.

8.        Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules

for the Southern District of New York in Support of First-Day Motions and Applications, filed on

September 15, 2008 [Docket No. 2].

**Relief Requested**

9.        The Debtors request entry of an order, pursuant to section 327(e) of the

Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Bankruptcy

Rules for the Southern District of New York ("Local Rules"), authorizing the employment of

Foster Graham as special counsel to the Debtors, in order to provide those legal services it has

heretofore been providing as an "Ordinary Course Professional" (as hereinafter defined below).

Specifically, Foster Graham has been engaged with respect to the following matters: (i) loss

recovery litigation related to the purchase, sale, transfer, and/or securitization of mortgage loans,

and ancillary matters ("Loss Recovery Litigation"); and (ii) representing LBHI in the defense of

claims related to the purchase, sale, transfer, and/or securitization of mortgage loans, and ancillary

matters (together, the "Representative Matters").  Foster Graham has already been retained as an

Ordinary Course Professional and this application is solely intended to put in place a different

payment mechanism with respect to Foster Graham's charges.

## Foster Graham As Ordinary Course Professional

10.      Foster Graham has previously been providing legal services with respect to the Representative Matters, on behalf of the Debtors, as a professional utilized in the ordinary course ("Ordinary Course Professional") in these chapter 11 cases pursuant to this Court's Amended Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, dated March 25 2010 [Docket No. 7822] (the "Amended OCP Order"). Pursuant to the procedures set forth in the Amended OCP Order, such retention became effective upon the filing of the Affidavit of and Disclosure Statement of Daniel K. Calisher on Behalf of Foster Graham [Docket No. 2946] and the expiration of the relevant objection period.

11.      The Amended OCP Order authorizes the Debtors to pay compensation to and reimburse the expenses of Ordinary Course Professionals in the full amount billed by such Ordinary Course Professional "upon receipt of reasonably detailed invoices indicating the nature of the services rendered and calculated in accordance with such professional's standard billing practices." As more fully discussed in the affidavit of Daniel K. Calisher (the "Calisher Affidavit"), sworn to on January 28, 2011, a copy of which is attached hereto as Exhibit A, in accordance with the Amended OCP Order, Foster Graham provided services to the Debtors and was compensated for those services upon the presentation of detailed invoices indicating the nature of the services rendered, which were calculated in accordance with Foster Graham's standard billing practices.

12.      The Amended OCP Order further provides "payment to any one Ordinary Course Professional shall not exceed $1 million for the period prior to the conversion of, dismissal of, or entry of a confirmation in these chapter 11 cases (the "Chapter 11 Period") and that "in the

event payment to any Ordinary Course Professional exceeds $1 million during the Chapter 11

Period, such Ordinary Course Professional shall be required to file a retention application to be

retained as a professional pursuant to sections 327 and 328 of the Bankruptcy Code. . . ."

13.     To date, the Debtors have paid Foster Graham approximately $858,851.91

for services rendered through November 2010.  Foster Graham and the Debtors anticipate that

Foster Graham's fees with respect to the Representative Matters during the balance of the chapter

11 cases will exceed said $1 million cap.  Accordingly, the Debtors now seek to retain Foster

Graham as special counsel pursuant to section 327(e) of the Bankruptcy Code, the purpose of

which is to simply put in place a different mechanism for the processing of its charges.

## Qualifications of Foster Graham

14.     As described in the Calisher Affidavit, Foster Graham has extensive

knowledge and experience with lawsuits involving losses related to the purchase, sale, transfer,

and/or securitization of mortgage loans.  Foster Graham is a leading mortgage litigation and trial

firm that has represented Debtors and their affiliates in these types of matters.  In addition, Foster

Graham's litigation professionals frequently represent individuals and business entities in a wide

range of litigation matters including, as may be applicable here, representing financial institutions

with respect to a wide variety of bank matters.  Such matters include prosecution of claims relating

to promissory notes and attendant security instruments, guarantees, and otherwise against financial

obligors.  Additionally, as may be applicable here, Foster Graham actively engages in the defense

of liability actions against lenders in a variety of contexts.

15.     The Debtors believe that in light of Foster Graham's ongoing

representation of the Debtors with respect to the Representative Matters, Foster Graham is uniquely

able to continue to represent them with respect to those matters in an efficient and effective

manner.  If the Debtors are required to retain counsel other than Foster Graham with respect to the

Representative Matters, the Debtors, their estates, and all parties in interest will be unduly

prejudiced by the time and expense necessary to enable such other counsel to become familiar with

these matters.

### Scope Of Services To Be Provided

16.    Subject to further order of this Court, it is proposed that Foster Graham be

employed to continue to advise the Debtors with respect to the Representative Matters.

### Payment Of Foster Graham's Fees And Expenses

17.    The Debtors propose to pay Foster Graham its customary hourly rates for

services rendered that are in effect from time to time, as set forth in the Calisher Affidavit, and to

reimburse Foster Graham according to its customary reimbursement policies, in accordance with

sections 330(a) and 331 of the Bankruptcy Code.

18.    Foster Graham has informed the Debtors that the current hourly billing

rates for Foster Graham partners range from $325/hour to $425/hour; its associates' rates range

from $225/hr to $325/hour; and its paralegals and other non-lawyer professionals' rates range from

$100/hour to $150/hour.  The Debtors believe such rates are reasonable and comparable to the rates

other firms charge for similar services.  The Debtors understand that in connection with the

reimbursement of reasonable and necessary expenses, it is Foster Graham's policy to charge its

clients for expenses incurred in connection with providing certain client services, including,

without limitation, travel, lodging, photocopying, postage, vendor charges, long distance and other

telephone charges, delivery service, and other expenses incurred in providing professional services.

19.    All of Foster Graham's fees and expenses incurred during these chapter 11

cases will be subject to approval of the Court upon proper application by Foster Graham in

accordance with section 330 of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and

the guidelines promulgated by the U.S. Trustee, as those procedures may be modified or

supplemented by order of this Court, including this Court's Third Amended Order Pursuant to

Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing

Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals

[Docket No. 4165] and this Court's Order Appointing Fee Committee and Approving Fee Protocol

[Docket No. 3651].

## Basis For Relief

20.    The Debtors knowledge, information, and belief regarding the matters set

forth in this Application are based on and made in reliance upon the Calisher Affidavit.

21.    The retention of Foster Graham under the terms described herein is

appropriate under Bankruptcy Code sections 327(e) and 1107(b).  Section 327(e) provides for the

appointment of special counsel where the proposed counsel does not possess any interest materially

adverse to the debtor with regard to the matter(s) that will be handled by counsel.  Section 327(e)

provides:

> The trustee, with the court's approval, may employ, for a specified
> special purpose, other than to represent the trustee in conducting
> the case, an attorney that has represented the debtor, if in the best
> interest of the estate, and if such attorney does not represent or
> hold any interest adverse to the debtor or to the estate with respect
> to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).  Moreover, Section 1107(b) provides that "a person is not disqualified for

employment under section 327 of this title by a debtor in possession solely because of such

person's employment by or representation of the debtor before the commencement of the case."  11

U.S.C. § 1107(b).

22.    Accordingly, Section 327(e) of the Bankruptcy Code authorizes the

retention of counsel who previously represented a debtor prepetition provided that: (a) the

appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest

adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the

specified special purpose for which counsel is being retained does not rise to the level of

conducting the bankruptcy case for the debtor in possession. *See In re DeVlieg, Inc.,* 174 B.R. 497

(N.D. Ill. 1994); *In re AroChem Corp.,* 176 F.3d 610, 622 (2d Cir. 1999) (noting that "where the

interest of the special counsel and the interest of the estate are identical *with respect to the matter*

*for which special counsel is retained,* there is no conflict and the representation can stand").  As

explained more fully below, the Debtors submit that each of these factors is satisfied with respect to

Foster Graham, which has already been retained as an Ordinary Course Professional, and that,

therefore, its retention, which is solely intended to put in place a different payment mechanism with

respect to their charges, should be approved under section 327(e) of the Bankruptcy Code.

### The Employment and Retention of Foster
### Graham is in the Best Interests of the Estates

23.    As detailed above, the Debtors retained Foster Graham with respect to the

Representative Matters pursuant to the procedures set forth in the Amended OCP Order and Foster

Graham has been actively providing such services to the benefit of the Debtors, their estates and

creditors.  Additionally, the Debtors submit that Foster Graham is well qualified to act as special

counsel with respect to the Representative Matters.  As set forth in the Calisher Affidavit, Foster

Graham has represented LBHI, directly or through its subsidiary Aurora Loan Services ("Aurora"),

since 2003 in mortgage related matters.  Over the past seven (7) years, Foster Graham has

represented LBHI and its affiliates, such as Aurora, in numerous lawsuits and loss recovery efforts

in both state and federal courts.  It has been involved with recovering more than $50 million on

behalf of LBHI and/or its affiliates in judgments or settlements.

24.    Over the course of its representation of Aurora pre-petition and the Debtors and their affiliates post-petition, Foster Graham has become familiar with the relevant business personnel and operations, as well as the legal matters described in this Application and in the Calisher Affidavit. The Debtors believe that the employment of Foster Graham as special counsel for the Debtors will enable the Debtors to avoid the unnecessary expense otherwise attendant to having another law firm familiarize itself with the matters described above.

25.    For these reasons, the Debtors submit that the employment of Foster Graham is in the best interests of the Debtors, their estates, and creditors.

**Foster Graham Holds No Interest
Materially Adverse to the Debtors or the Debtors' Estates**

26.    To the best of the Debtors' knowledge, and except as may be set forth in the Calisher Affidavit, Foster Graham does not represent or hold any interest adverse to the Debtors, their creditors, any other parties in interest herein, or their respective attorneys or accountants, or the U.S. Trustee, with respect to the matters as to which Foster Graham is to be employed, except as may be set forth in the Calisher Affidavit. *See In re AroChem,* 176 F.3d at 622 (emphasizing that, under section 327(e) of the Bankruptcy Code, potential conflicts must be evaluated only with respect to the scope of the proposed retention). The Debtors have been informed that Foster Graham will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if any new relevant facts or relationships are discovered, Foster Graham will supplement its disclosure to the Court.

27.    Foster Graham is not a prepetition creditor of the Debtors.

28.    Based on the foregoing and the disclosures set forth in the Calisher Affidavit, the Debtors submit that Foster Graham does not hold or represent any interest adverse to

the Debtors or the Debtors' estates with respect to the matters on which Foster Graham is to be employed.

### Foster Graham Will Not Conduct The Debtors' Bankruptcy Case

29.     By separate applications, the Debtors have sought the Court's approval to retain and employ Weil, Gotshal & Manges LLP as the Debtors' general bankruptcy counsel, and Curtis, Mallet-Prevost, Colt & Mosle LLP as conflicts counsel.  By contrast, Foster Graham's postpetition work is comprised of litigation with respect to recovering losses, and defending claims against LBHI, relating to mortgage loans and related matters or actions.  None of these matters involve the conduct of the bankruptcy cases themselves.  Therefore, the Debtors believe Foster Graham has not rendered "services . . . in contemplation of, or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code.  Furthermore, the services rendered and functions to be performed by Foster Graham will not be duplicative of any bankruptcy-related work performed by other law firms retained by the Debtors.  It is the Debtors understanding that Foster Graham will coordinate with the Debtors' other professionals to ensure that its services are, to the maximum extent possible, complimentary to other professionals' services.

30.     As described above, the Debtors' proposed retention of Foster Graham as special counsel to the Debtors falls squarely within the scope of and purpose for which Congress enacted section 327(e).  As stated above, the Debtors do not believe that Foster Graham holds or represents any interest adverse to the Debtors or their estates with respect to the matters for which Foster Graham is proposed to be retained.  Accordingly, the Debtors submit that the retention of Foster Graham with respect to the Representative Matters is in the best interests of the Debtors, their estates, and their creditors and should be approved by the Court.

## Notice

31.    No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Application in accordance with the procedures set forth in accordance

with the procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for these cases [Docket No. 9635] on (i) the

U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange

Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern

District of New York; (vi) Foster Graham; and (vii) all parties who have requested notice in

these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

32.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  February 2, 2011
          New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# EXHIBIT A

## (Calisher Affidavit)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | ) | **Chapter 11 Case No.** |
| | ) | |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* | ) | **08-13555 (JMP)** |
| | ) | |
| **Debtors.** | ) | **(Jointly Administered)** |

------------------------------------------------------------x

**AFFIDAVIT OF DANIEL K. CALISHER FILED ON BEHALF OF**
**FOSTER GRAHAM MILSTEIN & CALISHER, LLP IN SUPPORT OF DEBTORS'**
**APPLICATION PURSUANT TO SECTIONS 327(e) AND 328 (a) OF THE**
**BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO EMPLOY**
**AND RETAIN FOSTER GRAHAM MILSTEIN & CALISHER**
**AS SPECIAL COUNSEL TO DEBTORS**

| | |
|---|---|
| STATE OF COLORADO | ) |
| | )ss. |
| CITY AND COUNTY OF DENVER | ) |

Daniel K. Calisher, being duly sworn, states the following based upon personal

knowledge and review of relevant documents:

1.  I am a principal partner of the law firm Foster Graham Milstein & Calisher, LLP

("Foster Graham" or "Firm"), located at 621 Seventeenth Street, Suite 1900, Denver, Colorado

80293 and am admitted to practice law in: (a) the State of Colorado; (b) the State of California;

(c) the United States District Court for the District of Colorado; (d) the United States Court of

{00276953.DOC}

Appeals for the Tenth Circuit; (e) the United States District Court for the Southern District of California; (f) the United States District Court for the Eastern District of California; (g) the United States District Court for the Central District Of California; (h) the United States District Court for the Northern District Of California; and (i) the United States Court of Appeals for the Ninth Circuit.

2.   I submit this affidavit in support of the application dated February 2, 2011 ("Application") seeking authorization to employ Foster Graham as special counsel to Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-captioned Chapter 11 cases, as debtors and debtors in possession (collectively "Debtors") for certain litigation matters relating residential mortgages.

3.   All facts set forth in this affidavit are based upon my personal knowledge or information I obtained from others at Foster Graham regarding conflict matters.   The statements herein regarding conflicts are based in part on a review of the conflicts checklist provided to Foster Graham by Weil Gotshal & Manges LLP ("WGM"), the Debtors' general bankruptcy counsel, setting forth certain creditors and other parties in interest relating to Debtors ("Conflicts Checklist").

4.   The Conflict Checklist was reviewed for conflicts by:  (i) persons within Foster Graham responsible for maintaining records of the Firm's representations, with the assistance of an attorney at Foster Graham; and (ii) the Firm's Accounting Department personnel.  Based on the foregoing review, if I were called upon to testify, I could and would testify competently to the facts set forth herein.

5.   I am authorized to submit this affidavit on behalf of Foster Graham.

{00275975.DOC}

### Foster Graham's Services

6. In or around 2003 I began representing LBHI's wholly owned subsidiary, Aurora Loan Services, LLC ("Aurora"), in connection with mortgage related matters. Such representation included litigation to enforce repurchase rights or to recover losses resulting from defective residential mortgage loans. Such litigation, and similar loss recovery efforts, generally centered upon the purchase and sale of mortgage loans on the secondary market, and included claims against loan originators ("Correspondents") who, in connection with the transactions, made certain representations and warranties regarding the quality and/or characteristics of the loans.

7. My efforts in this regard—as well as the efforts of other lawyers at the Firm over a number of years—was focused on filing lawsuits to recover money (from Correspondents, appraisers, title/escrow companies, brokers, borrowers, and other responsible parties) for Aurora in its representative capacity as master servicer. In this role, Aurora was acting on behalf and for the benefit of "upstream" secondary market investors (loan or loss holders) such as LBHI, its wholly owned subsidiary Aurora Bank, FSB f/k/a Lehman Brothers Bank, FSB ("Aurora Bank"), and certain securitized trusts.

8. Foster Graham's representation included claims in many parts of the country and often included "repurchase or indemnity litigation" against Correspondents, specifically for breach of representations and/or warranties contained in the subject purchase and sale documents, and to force such responsible parties to either: (a) repurchase defective mortgage loans; or (2) recover money, via indemnity or otherwise, relating to losses suffered on defective loan(s).

9. Foster Graham served for some time as Aurora's key outside counsel for the purpose of coordinating, commencing, and advising as to litigation (and other loss recovery efforts) relating

{00276953.DOC}

to various "downstream" responsible parties. Pre-petition, Foster Graham represented Aurora in various state and federal courts in many lawsuits, particularly with respect to claims against mortgage loan sellers. Post-petition, Foster Graham has continued to represent both Aurora and LBHI in bringing claims against responsible parties in the mortgage loan context.

10. During its longstanding representation of Aurora and LBHI, Foster Graham has filed dozens of pre-petition and post-petition lawsuits, and has otherwise assisted in obtaining judgments and/or settlements in favor of Aurora and/or LBHI (in the approximate aggregate amount of $50,000,000). Foster Graham's fees in connection with such matters were a tiny fraction of the amount of the judgments and/or settlements.

11. To maximize recovery for the estate, LBHI has asked that Foster Graham continue its representation in such matters.

12. Foster Graham has extensive knowledge and experience in representing parties in connection with residential mortgage disputes, particularly claims arising from defective loans (such as repurchase and/or indemnity claims and defenses).

13. Foster Graham is a leading mortgage litigation and trial firm that has represented LBHI, its affiliates, and similarly situated parties in these types of mortgage matters.

### "Connections" of Foster Graham

14. To the best of my knowledge, neither Foster Graham nor I have any "connection" with Debtors, their creditors, any other parties in interest herein, their respective attorneys or accountants, or the Office of the United States Trustee for the Southern District of New York ("UST"), except as stated herein.

{00276953 DOC}

15. It is my understanding Debtors have retained, among others, the following professionals: Weil Gotshal & Manges LLP as general bankruptcy counsel; Curtis, Mallet-Prevost, Colt & Mosle LLP as conflicts counsel; and Alvarez & Marsal North America LLC as restructuring advisor of those professionals. To the best of my knowledge, after investigation, I do not believe attorneys at Foster Graham have a "connection" with these professionals.

16. Debtors are a large global enterprise involving perhaps thousands of interested parties. Foster Graham may have represented, currently represent, or in the future represent entities that are interested parties in matters unrelated to the Debtors. Persons within Foster Graham who handle conflicts checks have reviewed the matters for which the Firm has been engaged for "connections" to any of the persons or entities identified in the Conflicts Checklist.

17. The Firm's search results indicate Foster Graham does not currently represent any of the persons or entities identified in the Conflicts Checklist with only the following limited exceptions: (a) two of Debtors' non-debtor affiliates (Aurora and Aurora Bank); and (b) representation of all plaintiffs in a mortgage loss recovery case (including LBHI, Aurora, and their co-plaintiffs U.S. Bank National Association and Citibank, N.A., not individually but solely in their capacities as trustees of certain securitized trusts); however, that single case has settled in principal and there is no conflict between LBHI, Aurora, and their co-plaintiffs.

18. Foster Graham has not been and is not currently adverse to the Debtors or their affiliates.

19. Some of the banks, companies, investment funds, or other entities and their affiliates that have been or may be solicited in connection with the sales of assets in the bankruptcy cases may be clients of Foster Graham in unrelated matters, although Foster Graham is not at present representing any such client in connection with any such transaction with the Debtors.

{00276953.DOC}

20. Foster Graham may also represent, in matters unrelated to the Debtors, persons or entities who may be considered competitors of the Debtors.

21. Foster Graham will not represent any party whose interest would be adverse to the Debtors or their estates with respect to the matters for which Foster Graham is being retained hereunder. Foster Graham will conduct an ongoing review of its files to ensure that no disqualifying circumstances arise and, if any new relevant facts or relationships are discovered, Foster Graham will supplement its disclosure to the Court.

### Securities Ownership

22. An email was sent to all attorneys at the Firm requesting that they disclose any ownership of securities of the Debtors (excluding by means of accounts over which the attorneys hold legal authority but do not have investment discretion, mutual fund holdings and other similar diversified investment vehicles). In response to such query, no attorneys indicated that they or others in their households owned securities of the Debtors.

### Amounts Owed Foster Graham

23. All prepetition work by Foster Graham was performed pursuant to an engagement with Aurora. Those fees have been paid by Aurora. Therefore, Foster Graham is **not** a prepetition creditor of the Debtors.

24. Since the Commencement Date, Foster Graham has represented LBHI pursuant to the OCP Order. Post-petition Foster Graham has billed LBHI the sum of $858,851.91 through November 2010 (representing $793,744.50 in fees and $65,572.11 in costs). LBHI has paid Foster Graham post-petition the sum of $858,851.91. The total amount outstanding for the December 2010 bill is $10,158.80.

6

{00276953.DOC}

25. Foster Graham does not believe it has rendered "services . . . in contemplation of, or in connection with the case" within the meaning of section 239(a) of the Bankruptcy Code.

### Fees and Engagement

26. Foster Graham's hourly rates and billing policies are based on market conditions among certain firms of a size, location, and practice comparable to the Firm's. The 2011 hourly rates of Foster Graham's partners range from $325/hour to $425/hour; its associates' rates range from $225/hr to $325/hour; and its paralegals and other non-lawyer professionals' rates range from $100/hour to $150/hour. These rates are subject to adjustments at such time as Foster Graham modifies such rates for other clients.

27. Foster Graham intends to apply for compensation for professional services rendered in connection with these Chapter 11 cases subject to approval of the Bankruptcy Court and in compliance with applicable provisions of the Bankruptcy Code, on an hourly basis, plus reimbursement of actual, necessary expenses and other charges incurred by Foster Graham. To the extent that Foster Graham had in place prior to the Commencement Date any special fee arrangement with respect to any matter, that arrangement will remain in place for that matter.

28. The name of each attorney and paralegal working on matters for LBHI and the billing rate of each such individual will be reflected in the periodic fee applications filed by or on behalf of Foster Graham.

29. The hourly rates set forth above are set at a level designed to fairly compensate Foster Graham for the work of its attorneys and paralegals and to cover fixed and routine overhead expenses and are subject to periodic adjustments to reflect economic and other conditions.

{00276953.DOC}

30. Foster Graham's general policy is to charge clients for certain expenses and disbursements incurred in connection with the client's case, including photocopying, filing and recording fees, courier and messenger charges, travel expenses, computerized research charges, document retrieval, transcription costs, long-distance telephone calls, as well as non-ordinary overhead and other out-of-pocket expense. Foster Graham understands other law firms comparable to it in size, location, and practice also have a general policy to charge clients for such expenses and disbursements incurred in connection with such client's case.

31. Foster Graham maintains contemporaneous records of the time expended and out-of-pocket expenses incurred in connection with providing services to its clients in accordance with the fee guidelines for this district.

32. Foster Graham recognizes it will be required to submit applications for interim and/or final allowances of compensation pursuant to sections 330 and 331 of the Bankruptcy Code and the rules and order of this Court. Foster Graham has reviewed the fee application guidelines promulgated by the UST and will comply with them.

33. Other than as set forth above, no arrangement is proposed between the Debtors and Foster Graham for compensation to be paid in these cases.

34. The foregoing constitutes the statement of Foster Graham pursuant to sections 327(e) of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 2016 (b).

{00276953.DOC}

Dated January 28, 2011.

FURTHER AFFIANT SAYETH NOT.

_____
Daniel K. Calisher

|                              |       |
|------------------------------|-------|
| STATE OF COLORADO            | )     |
|                              | ) ss. |
| CITY AND COUNTY OF DENVER    | )     |

On January 28, 2011, Daniel K. Calisher, the Affiant, personally appeared before me, and personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument, and acknowledged to me that he executed the same.

Witness my hand and official seal.

_____
Notary Public

My commission expires: ___12/06/2013___

9

{00276953.DOC}

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                    :
In re                                               :        Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :        08-13555 (JMP)
                                                    :
                        Debtors.                    :        (Jointly Administered)
                                                    :
------------------------------------------------------------------x

## ORDER PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE EMPLOYMENT AND RETENTION OF FOSTER GRAHAM MILSTEIN & CALISHER, LLP AS SPECIAL COUNSEL TO DEBTORS

Upon consideration of the application, dated February 2, 2011 (the "Application"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to section 327(e) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to employ and retain Foster, Graham, Milstein & Calisher, LLP ("Foster Graham") as special counsel to the Debtors; and upon the affidavit of Daniel K. Calisher, Esq., (the "Calisher Affidavit"), filed in support of the Application; and the Court being satisfied, based on the representations made in the Application and the Calisher Affidavit, that Foster Graham represents no interest adverse to the Debtors or the Debtors' estates with respect to the matters upon which it is to be engaged, under section 327(e) of the Bankruptcy Code as modified by section 1107(b); and the Court having jurisdiction to consider the Application and

---

[1] Capitalized terms that are used but not defined in this order have the meanings ascribed to them in the Application.

the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. §

157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Application having been provided in accordance with the

procedures set forth in the second amended order entered June 17, 2010 governing case

management and administrative procedures [Docket No. 9635] to (i) the United States Trustee

for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured

Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v)

the United States Attorney for the Southern District of New York; (vi) Foster Graham and (vii)

all parties who have requested notice in these chapter 11 cases, and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief

sought in the Application is in the best interests of the Debtors, their estates and creditors, and all

parties in interest and that the legal and factual bases set forth in the Application establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the Application is approved; and it is further

ORDERED that pursuant to section 327(e) of the Bankruptcy Code, the Debtors

are hereby authorized to employ and retain Foster Graham as special counsel to the Debtors on

the terms set forth in the Application and this order, for the Representative Matters identified in

the Application and in accordance with Foster Graham's customary rates in effect from time to

time and its disbursement policies; and it is further

ORDERED that Foster Graham shall apply for compensation and reimbursement of expenses in accordance with the procedures set forth in sections 330 and 331 of the Bankruptcy Code, applicable Bankruptcy Rules, the Local Rules and orders of the Court, guidelines established by the U.S. Trustee, and such other procedures that have been or may be fixed by order of this Court, including but not limited to the Court's Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 4165], and the Court's Order Appointing a Fee Committee and Approving a Fee Protocol [Docket No. 3651].

Dated:  February ___, 2011

New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE