UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

| | |
|---|---|
| In re:<br>LEHMAN BROTHERS HOLDINGS, INC. , et al.<br><br>Debtors. | Chapter 11<br>Case No.: 08-13555 (JMP)<br><br>Jointly Administered |

----------------------------------------------------------x
----------------------------------------------------------x

| | |
|---|---|
| THE BROOKLYN HOSPITAL CENTER,<br><br>Plaintiff,<br><br>-against-<br><br>AURORA BANK FSB f/k/a<br>LEHMAN BROTHERS BANK, FSB,<br><br>Defendant. | Adv. Pro. No.:<br>11- (JMP) |

----------------------------------------------------------x

**COMPLAINT SEEKING DETERMINATION OF EXTENT, VALIDITY AND PRIORITY OF LIEN**

**TO: THE HONORABLE JAMES M. PECK**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff, The Brooklyn Hospital Center, by its attorneys, Hass & Gottlieb, as and for its complaint seeking a determination of the extent, validity and priority of a certain lien, respectfully sets forth and shows:

**PARTIES. JURISDICTION AND VENUE**

1. At all relevant times, plaintiff The Brooklyn Hospital Center ("BHC" or "Plaintiff") was a domestic not-for-profit corporation, organized and existing pursuant to the laws of the State of New York, with offices located at 121 Dekalb Avenue, Brooklyn, New York.

2. At all relevant times, upon information and belief, Aurora Bank FSB, formerly known as Lehman Brothers Bank FSB ("Aurora" or "Defendant") was a wholly owned, indirect subsidiary of Lehman Brothers Holdings Inc. ("LBHI").

3. At all relevant times, LBHI was debtor in possession before this Court, having filed its voluntary petition for relief pursuant to chapter 11 of title 11, United States Code (the "Bankruptcy Code") on September 15, 2008.

4. Upon information and belief, the assets of Aurora are assets of the debtor LBHI and as such, is property of the estate of LBHI pursuant to Bankruptcy Code §541(a).

5. At all relevant times, Aurora was a thrift institution chartered under federal law with its principal executive offices located at 1000 N. West Street, Suite 200, Wilmington, Delaware 19801.

6. At all relevant times, Aurora was the holder of an alleged mortgage lien (the "Mortgage") upon certain real property located in Brooklyn, New York.

7. Plaintiff brings this adversary proceeding pursuant to Rule 7001(2) of the Federal Rules of Bankruptcy Procedure, seeking a determination of the extent, validity and priority of a certain mortgage lien held against certain real property.

8. This adversary proceeding is a core and a related-to proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (K), (O) and as this Court may assert pursuant to 28 U.S.C. §157(b)(3).

9. Jurisdiction exists in this court pursuant to 28 U.S.C. §§157 and 1334.

10. Venue over this action resides in this court pursuant to 28 U.S.C. §1409(a) because the bankruptcy case of LBHI is pending in this judicial district.

11. Plaintiff consents to the entry of any final order or judgment in any non-core matter that may be adjudicated.

## FACTUAL ALLEGATIONS

12. During the period commencing December 19, 2001 through August 19, 2002, one Dorothy Jeffers ("D. Jeffers") was a patient at and received services from the Plaintiff herein, BHC, with a value of not less than $209,090.21 (the "Obligation").

13. At all relevant times, D. Jeffers was the owner of the real property and improvements located at 508 Madison Street, Brooklyn, New York (the "Premises").

14. By summons and verified complaint in an action filed on April 25, 2003 in the Supreme Court of the State of New York, County of Kings styled, The Brooklyn Hospital Center v. Dorothy Jeffers, Index No.: 15461/03 (the "Kings County Action"), the Plaintiff herein sought recovery of the Obligation from D. Jeffers.

15. Prior to the commencement of the Kings County Action but subsequent to the existence of the Obligation due and owing by D. Jeffers to BHC, by deed recorded with the Kings County Clerk on November 20, 2002, D. Jeffers transferred title to the Premises to her daughter, Elaine Jeffers ("E. Jeffers").

16. The transfer of title to the Premises from D. Jeffers to E. Jeffers was without consideration and a fraudulent conveyance (the "Title Transfer").

17. Subsequent to the Title Transfer, by deed recorded with the Kings County Clerk on April 10, 2003, E. Jeffers granted to D. Jeffers a life estate in the Premises (the "Life Estate Transfer").

18. The Life Estate Transfer was additional indicia that the Title Transfer was a fraudulent conveyance.

19. Subsequent to the Title Transfer, by mortgage dated March 25, 2004, E. Jeffers entered into a mortgage loan in the sum of $309,750.00 with Lehman Brothers Bank FSB and secured by the Premises (the “Mortgage”).

20. The named borrower under the terms of the Mortgage instrument is solely E. Jeffers.

21. Notwithstanding the identification of E. Jeffers as the sole mortgagor under the Mortgage, D. Jeffers executed the pre-payment rider executed contemporaneously with the Mortgage.

22. Notwithstanding the identification of E. Jeffers as the sole mortgagor under the Mortgage, D. Jeffers executed the adjustable rate rider to the Mortgage.

23. Notwithstanding the identification of E. Jeffers as the sole mortgagor under the Mortgage, D. Jeffers executed the addendum to adjustable rate rider to the Mortgage.

24. Notwithstanding the identification of E. Jeffers as the sole mortgagor under the Mortgage, D. Jeffers executed the one to four family rider (assignment of rents) to the Mortgage (hereinafter, the pre-payment rider, adjustable rate rider, addendum to adjustable rate rider and one to four family rider shall be termed, collectively, the “Additional Mortgage Documents”).

25. The Mortgage was recorded with the Kings County Clerk on July 5, 2004.

26. Subsequent to the origination of the Mortgage but prior to its recording, BHC obtained judgment against D. Jeffers in the Kings County Action in the sum of $240,993.12 (the “Judgment”).

27. The Judgment was entered and recorded on April 20, 2004 with the Kings County Clerk.

28. By motion filed in the Kings County Action on January 10, 2006, BHC sought to set aside the Title Transfer from D. Jeffers to E. Jeffers as a fraudulent conveyance (the "Fraudulent Conveyance Motion").

29. By decision and order issued on February 21, 2006 by the Honorable Mark I. Partnow, Justice of the Supreme Court of the State of New York, County of Kings, the Fraudulent Conveyance Motion was granted (the "Fraudulent Conveyance Determination").

30. By virtue of the Fraudulent Conveyance Determination, title to the Premises was restored to D. Jeffers as of the date of the Title Transfer of November 30, 2002.

31. In an effort to collect upon the Judgment, on or about May 2, 2007 the Sheriff of Kings County held a sale of the Premises (the "Sheriff Sale").

32. BHC was the successful bidder at the Sheriff Sale.

33. By deed filed with the Kings County Clerk on September 24, 2007, the Kings County Sheriff conveyed title to BHC.

34. Aurora has asserted and continues to assert that the Mortgage is a valid lien upon the Premises.

**AS A FOR A FIRST CLAIM FOR RELIEF**

35. Plaintiff repeats and realleges each and every allegation contained in ¶¶1-34 as if more fully and completely set forth herein.

36. As a result of the Fraudulent Conveyance Determination, title was restored to the name of D. Jeffers as of the date of the Title Transfer.

37. As of the date of the origination of the Mortgage, E. Jeffers was not in title.

38. Premised upon the foregoing, E. Jeffers did not have authority to enter into the Mortgage as of the date of its origination.

39. Premised upon the foregoing, the Mortgage is void and incapable of enforcement against the Premises.

**AS A FOR A SECOND CLAIM FOR RELIEF**

40. Plaintiff repeats and realleges each and every allegation contained in ¶¶1-34 as if more fully and completely set forth herein.

41. At or prior to the origination of the Mortgage, Aurora had an obligation to conduct an investigation of title to the Premises (the “Due Diligence Investigation”).

42. Pursuant to the Due Diligence Investigation and premised upon the intent of Aurora to obtain the signature of D. Jeffers upon the Additional Mortgage Documents, examination of D. Jeffers should have been made.

43. Pursuant to the Due Diligence Investigation, Aurora knew or should have known, or with reasonable due diligence should have been able to determine that the Title Transfer from D. Jeffers to E. Jeffers was without consideration.

44. Pursuant to the Due Diligence Investigation, a review of the chain of title as filed and of record with the Kings County Clerk, would have disclosed that the consideration tendered by E. Jeffers to D. Jeffers for purposes of effecting the Title Transfer was recorded as zero.

45. Pursuant to the Due Diligence Investigation, Aurora knew or should have known, or with reasonable due diligence should have been able to determine that the Title Transfer from D. Jeffers to E. Jeffers was a fraudulent conveyance.

46. Pursuant to the Due Diligence Investigation, Aurora was charged with the obligation to investigate whether there were any actions pending against the party executing the Additional Mortgage Documents.

47. The Due Diligence Investigation would have disclosed that as of the date of the origination of the Mortgage, the Kings County Action was pending against D. Jeffers.

48. The Due Diligence Investigation would have disclosed that as of the date of the origination of the Mortgage, the Life Estate Transfer had taken place.

49. Premised upon the failure to conduct a Due Diligence Investigation, Aurora failed to determine that an action would lie such that the Title Transfer could be set aside as a fraudulent conveyance.

50. As a result of the Fraudulent Conveyance Determination, title was restored to the name of D. Jeffers as of the date of the Title Transfer of November 30, 2002.

51. As of the date of the origination of the Mortgage, E. Jeffers was not in title.

52. Premised upon the foregoing, E. Jeffers did not have authority to enter into the Mortgage as of the date of its origination.

53. Premised upon the foregoing, the Mortgage is void and incapable of enforcement against the Premises.

WHEREFORE, Plaintiff respectfully requests the issuance of judgment as follows: a) on the first claim for relief, the issuance of an order determining that the Mortgage is void and unenforceable against the Premises and setting it aside; b) on the second claim for relief, the issuance of an order determining that the Mortgage is void and unenforceable against the Premises and setting it aside; and c) such other, further and different relief as the Court may deem just and proper.

Dated: Scarsdale, New York
February 3, 2011

HASS & GOTTLIEB

by: /s/ Lawrence M. Gottlieb
Lawrence M. Gottlieb, Esq.
Attorneys for Plaintiff
670 White Plains Road, Suite 121
Scarsdale, New York 10583
(914) 725-2600