UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
                                                        :
In re                                                   :    Chapter 11 Case No.
                                                        :
LEHMAN BROTHERS HOLDINGS INC.,                          :    08-13555 (JMP)
*et al.*,                                               :
                                                        :    (Jointly Administered)
                        Debtors.                        :
------------------------------------------------------- x

REPORT OF
ANTON R. VALUKAS, EXAMINER

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654-3456
312-222-9350

919 Third Avenue
37th Floor
New York, NY 10022-3908
212-891-1600

March 11, 2010                                *Counsel to the Examiner*

VOLUME 3 OF 9

**Section III.A.4: Repo 105**

### (5) Accounting-Motivated Transactions

Ernst & Young did not evaluate the possibility that Repo 105 transactions were accounting-motivated transactions that lacked a business purpose.[3722] Schlich characterized the off-balance sheet treatment of Lehman's assets in Repo 105 transactions as a consequence of the accounting rules, rather than a motive for the transactions.[3723]

### j) The Examiner's Conclusions

There is sufficient evidence to support a determination by a trier of fact that Lehman's failure to disclose that it relied upon Repo 105 transactions to temporarily reduce the firm's net balance sheet and net leverage ratio was materially misleading. In addition, a trier of fact could find that Lehman affirmatively misrepresented its accounting treatment for repos by stating that Lehman treated repo transactions as financing transactions rather than sales for financial reporting purposes, despite the fact that Lehman treated tens of billions of dollars in repo transactions – namely, Repo 105 transactions – as true sale transactions.

---

[3722] Examiner's Interview of Ernst & Young, Repo 105 Session, Oct. 16, 2009, at p. 13 (statement of William Schlich). An SEC staff paper discourages "accounting-motivated structured transactions" because a company engaging in such transactions runs the risk of presenting an inaccurate picture of its true financial condition. *See* OFFICE OF THE CHIEF ACCOUNTANT, SEC, REPORT AND RECOMMENDATIONS PURSUANT TO SECTION 401(C) OF THE SARBANES-OXLEY ACT OF 2002 ON ARRANGEMENTS WITH OFF-BALANCE SHEET IMPLICATIONS, SPECIAL PURPOSE ENTITIES AND TRANSPARENCY OF FILINGS BY ISSUERS, at p. 100 (2005) ["SEC SOX Off Balance Sheet Report"]. According to this report, "accounting-motivated structured transactions" are "transactions that are structured in an attempt to achieve reporting results that are not consistent with the economics of the transaction, and thereby impair the transparency of financial reports." *Id.* "[A]ttempt[s] to portray the transactions differently from their substance do not operate in the interests of investors, and may be in violation of the securities laws." *Id.*

[3723] *Id.*

a temporary basis. The categories of asset classes were very broad, and the disclosures are snapshots of quarter-end only, which do not allow the user to determine balances of securities moving on or off balance sheet on an intra-quarter basis. Additionally, to the extent that the reader could see various security balances increasing or decreasing, *i.e.*, that Lehman sold liquid securities, the reader would not know the sales were temporary from the information provided.

- Moreover, sophisticated readers of financial statements – the professional analysts who covered Lehman – asked Lehman officers during earnings calls what Lehman was selling in order to ascertain what types of assets Lehman was moving in its efforts to deleverage.[3790] Former CFO Erin Callan informed analysts that Lehman was selling illiquid positions to deleverage.[3791]

### (d) Conclusions Regarding Lehman's Failure to Disclose

**SEC Filings.** As discussed above, Section 13(a) of the Securities Exchange Act of 1934 required Lehman to file periodic reports with the SEC, including its annual report on Form 10-K and quarterly reports on Form 10-Q. Those filings must contain the information required by the SEC's Rules and Interpretations, including the MD&A requirement discussed above. In addition, SEC Rule 12b-20 requires that all filings contain such additional information necessary to make the information contained in the filing not misleading. There is sufficient evidence to support a determination by the trier of fact that Lehman's filings were deficient and misleading. In the wake of the Enron scandal, at the request of four major accounting firms, the SEC provided additional guidance with respect to the duty to provide meaningful discussion of a company's financial statements. Among other things, SEC guidance from 2002 stated:

---

[3790] *See* Section III.A.4.e.6.a of this Report (discussing analyst statements).
[3791] *Id.*

Sufficient evidence exists to support a finding by the trier of fact that as a result of failing to disclose its use of and accounting treatment for Repo 105 transactions, Lehman misled readers of its Forms 10-K and 10-Q about its financial condition. Typically, seven or ten days after executing Repo 105 transactions, Lehman had to repay the Repo 105 cash borrowing (*i.e.*, repurchase the assets). In order to repay the cash borrowing (plus an interest rate) shortly after the reporting period, Lehman had to obtain financing. The obligation to repay the cash borrowing (repurchase the assets) was not reflected in Lehman's periodic reports. As a result, Lehman's statements in its MD&A regarding liquidity were rendered misleading. This is exactly the kind of information the SEC has expressly required:

> Disclosure is mandatory where there is a known trend or uncertainty that is reasonably likely to have a material effect on the registrant's financial condition or results of operations. Accordingly, the development of MD&A disclosure should begin with management's identification and evaluation of what information, including the potential effects of known trends, commitments, events, and uncertainties, is important to providing investors and others and accurate understanding of the company's current and prospective financial position and operating results.[3793]

For the reasons outlined above, sufficient evidence exists from which a finder of fact could conclude that the picture Lehman painted of its financial position in late 2007 and into 2008 was materially misleading because Lehman failed to inform investors and the market that it managed its balance sheet by accounting for a large volume of repo transactions as true sales on the basis of an English opinion letter. Lehman employed

---

[3793] *Id.*

for any transaction from which the director derives an improper personal benefit.[3797]

Courts will uphold such a clause as protecting directors from liability so long as there is not a concurrent violation of the duty of loyalty, which was not implicated here.[3798]

Second, Lehman's directors were not informed about the existence of Lehman's Repo 105 program. No director had even heard of Repo 105 transactions, either by name or description.

### (b) Breach of Fiduciary Duty Claims Against Specific Lehman Officers

There is sufficient evidence to support a colorable claim that certain Lehman officers – Richard Fuld, Chris O'Meara, Erin Callan, and Ian Lowitt – breached their fiduciary duties by engaging in one or more of the following: (1) allowing and certifying the filing of financial statements that omitted or misrepresented material information regarding Lehman's use of Repo 105 transactions and their accounting treatment, thus exposing the firm to potential liability; and/or (2) failing to disclose to Lehman Directors information about the firm's Repo 105 program.

As a threshold matter, the business judgment rule is a standard of judicial review requiring a "presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the

---

[3797] Lehman Brothers Holdings, Inc., Certificate of Incorporation, at § 10.1, Limitation of Liability of Directors.
[3798] *Stone v. Ritter*, 911 A.2d 362, 367 (Del. 2006) ("Such a provision can exculpate directors from monetary liability for a breach of the duty of care, but not for conduct that is not in good faith or a breach of the duty of loyalty.").