Hearing Date: February 16, 2011 at 10:00 A.M.

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg
Scott Davidson

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Perez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                                  :

**In re**                                            :        **Chapter 11 Case No.**

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**

                  **Debtors.**              :        **(Jointly Administered)**

---------------------------------------------------------------x

**OBJECTION TO FIDELITY NATIONAL TITLE INSURANCE
COMPANY'S MOTION TO COMPEL COMPLIANCE WITH
REQUIREMENTS OF TITLE INSURANCE POLICIES INSURING
DEEDS OF TRUST HELD BY THE BANKRUPTCY ESTATE
OF DEBTOR LEHMAN COMMERCIAL PAPER INC. PURSUANT
<u>TO SECTIONS 105, 362, 365 AND 1107 OF THE BANKRUPTCY CODE</u>**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

      Lehman Commercial Paper Inc. ("<u>LCPI</u>", and together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession, the "<u>Debtors</u>") respectfully submits this objection ("<u>Objection</u>") to *Fidelity National Title Insurance Company's Motion to Compel Compliance with Requirements of Title Insurance Policies Insuring Deeds of*

*Trust Held by the Bankruptcy Estate of Debtor Lehman Commercial Paper Inc. Pursuant to Sections 105, 362, 365 and 1107 of the Bankruptcy Code*, dated September 21, 2010 [Docket No. 11513] (the "Motion").  In support of this Objection, LCPI respectfully represents as follows:

**PRELIMINARY STATEMENT**

1. Fidelity National Insurance Company ("Fidelity") requests that the Court provide it with a litany of equitable relief, namely, an order compelling LCPI to comply with certain purported duties under a title insurance policy.  Pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), a proceeding to obtain equitable relief is properly commenced as an adversary proceeding.  The Motion is not the proper means by which Fidelity should seek the foregoing request for equitable relief and, accordingly, must be denied in its entirety.

2. Even apart from its procedural defects, however, Fidelity's Motion must be denied. Regardless of Fidelity's assertions to the contrary, LCPI has cooperated and will continue to cooperate with Fidelity in producing the documentation that will aid Fidelity's investigation of LCPI's title insurance claims. LCPI has provided Fidelity with a substantial amount of relevant information, materials and documentation, including the very information Fidelity alleges LCPI has failed to produce.

3. LCPI currently is ascertaining what additional documents and information it and any third parties may possess that has not already been produced to Fidelity, and fully intends to provide Fidelity with such documents should they exist.  In furtherance of  LCPI's production efforts, on October 29, 2010, LCPI met with Fidelity representatives to explore the possibility of a consensual resolution, including the production of responsive documents.  At that meeting, Fidelity agreed to provide LCPI with specific questions relating to the title insurance

claims. Despite their best efforts, LCPI and the trustee of the SunCal Debtors (as defined below) have been unable to find any additional information that is responsive to Fidelity's questions, but will continue their search and notify Fidelity if any relevant documents or information are discovered. Given LCPI's efforts and its intention to cooperate fully with Fidelity's requests, it is premature to decide the merits of Fidelity's motion.

4. Fidelity further requests that the Court compel LCPI to satisfy its purported express "duty of cooperation" under the title insurance policies that are the subject of the Motion as adequate protection for Fidelity's interests therein. However, LCPI has tendered defense under only one of such policies, and has fully cooperated with its only express "duty to cooperate" therein, which is to provide "all reasonable aid" in defense of any actions for which LCPI has tendered a claim, and for which the defense has been accepted by Fidelity. See First Policy (as defined below) ¶ 3(e). LCPI has supplied Fidelity with relevant and responsive documents and information to aid Fidelity's defense efforts, and LCPI will continue to do so to the extent possible. Significantly, as a result of the bankruptcies filed by the SunCal Debtors, all state court mechanic lien lawsuits for which LCPI has tendered defense to Fidelity have been stayed.[1] For this reason, there is no defense activity in those cases for which LCPI's further reasonable aid is required at this time. While Fidelity argues that LCPI has an implied duty to cooperate under California law due to a duty of good faith and fair dealing, Fidelity cites no cases in California holding that such duties confer an implied duty to cooperate under an insurance policy beyond what is expressly stated therein.

---

[1] There is one mechanic's lien dispute proceeding in the California Bankruptcy Court presiding over the SunCal Debtors' chapter 11 cases. LCPI has asked, and has been assured, that all relevant documents are available for the defense of that action.

5.  Finally, notwithstanding that no default by LCPI exists under the policies that are the subject of the Motion, there is no legal basis requiring LCPI to cure a default under an executory contract unless such contract is assumed pursuant to a court order.  While it is indicated in the *First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors* [Docket No. 14150] (the "Plan")[2] that the Debtors' respective insurance policies and related documents shall be deemed assumed under the Plan to the extent such documents constitute executory contracts, the Plan has not yet been solicited or confirmed, and no order approving such an assumption has been entered.  Accordingly, LCPI has not assumed its insurance policies with Fidelity and, thus, Fidelity's assertions that LCPI has failed to cure alleged defaults thereunder are premature.

## BACKGROUND

6.  By way of brief background, in 2006 and 2007 LBREP/L-SunCal Master I LLC (the "SunCal Parent") entered into three separate Lien Credit Agreements with LCPI, as administrative agent and lender, pursuant to which the SunCal Parent borrowed approximately $395 million in the form of three loans to finance the McAllister Ranch, McSweeny Farms, and Summerwind Ranch real estate development projects (the "Projects").[3]  The owners of these respective project properties, LBREP/L-SunCal McAllister Ranch LLC, LBREP/L-SunCal McSweeny Farms LLC, and LBREP/L-SunCal Summerwind Ranch LLC (collectively, the "SunCal Subsidiaries," and together with the SunCal Parent, the "SunCal Debtors") guaranteed

---

[2] Indeed, in the Motion, Fidelity cites provisions in the Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors [Docket No. 8330] and the related disclosure statement [Docket No. 8332]; however, such plan has been superseded by the Plan and was never solicited or confirmed.

[3] On February 15, 2008, Gramercy Warehouse Funding I, LLC ("Gramercy") replaced LCPI as administrative agent under the Second Lien Credit Agreement, and Square Mile Structured Debt (One), LLC and Square Mile Structured Debt (Two), LLC (collectively, "Square Mile") replaced LCPI as administrative agent under the Third Lien Credit Agreement.

the SunCal Parent's obligations under these Lien Credit Agreements and executed deeds of trust against their respective properties to secure those guaranties.

7. With regard to the SunCal Subsidiaries' deeds of trust, Fidelity issued five total title insurance policies to LCPI. The 1970 form ALTA Loan Policy (10-17-70 and 10-17-84) No. 44-94-120334 (the "First Policy"), dated January 19, 2006, insured the first priority of the deeds of trust for the First Lien Credit Agreement (the "First Lien Deeds of Trust").[4] The 1970 form ALTA Loan Policy (10-17-70 and 10-17-84) No. 27-44-94-120335 (the "Second Policy"), dated January 19, 2006, insured that the deeds of trust for the Second Lien Credit Agreement (the "Second Lien Deeds of Trust") were recorded junior only to the First Lien Deeds of Trust. In addition, Fidelity issued three distinct 1992 Form Alta Loan Policies, Nos. CAFNT0925-0925-0199-0259902517, CAFNT0925-0925-0199-0259902518, and CAFNT0925-0925-0199-0259902519 (together with the First Policy and the Second Policy, the "Policies"), which insured that the deeds of trust for the Third Lien Credit Agreement (the "Third Lien Deeds of Trust") were recorded junior only to the First and Second Lien Deeds of Trust.[5] Importantly, LCPI has since tendered claims against the only one of the Policies, the First Policy, seeking defense and indemnification relating to actions initiated by various mechanics' lien holders asserting priority over the First Lien Deeds of Trust.

8. On or about September 10, 2008, involuntary chapter 11 cases were filed against the SunCal Debtors. On September 2, 2010, Lehman Brothers Holdings Inc., a Debtor, filed a motion in the above captioned cases (the "Settlement Motion") [Docket No. 11153]

---

[4] The First Policy is attached as Exhibit A to the Affidavit of Michael E. Bush, Esq. in Support of the Motion [Docket No. 11514].

[5] On or about April 22, 2008, LCPI assigned its beneficial interests as agent for the First and Second Lien Deeds of Trust to Gramercy and Square Mile, respectively.

seeking the approval of a settlement (the "Settlement") pursuant to the terms of that certain amended and restated term sheet by and among LCPI, the trustee for the SunCal Debtors, and the Official Committee of Unsecured Creditors in the SunCal Debtors' bankruptcy cases.  On September 29, 2010, the Court entered an order granting the Settlement Motion [Docket No. 11683] over the objection of Fidelity.  On December 22, 2010, the Bankruptcy Court for the Central District of California overseeing the chapter 11 cases of the SunCal Debtors also approved the Settlement.

9.     On September 21, 2010, while the Settlement Motion and Fidelity's objection thereto were pending before the Court, Fidelity filed the Motion, seeking an order compelling LCPI to (i) furnish Fidelity with additional information and documentation, (ii) "cure" its alleged default under various title insurance policies with Fidelity, including the First Policy (the "Policies"), (iii) provide Fidelity with adequate protection in the form of cooperation, and (iv) not trigger a denial of coverage under the Policies by failing to cooperate with Fidelity, pursuant to LCPI's purportedly applicable fiduciary duty as a debtor-in-possession.

## ARGUMENT

**LCPI Has Fully Cooperated with Fidelity**

10.    Contrary to Fidelity's assertions, LCPI has been fully cooperative in its production of construction and loan administration documents and has provided Fidelity with a substantial volume of such materials and information.  LCPI has provided Fidelity with construction related documents, including construction budgets, progress reports, and market studies.  In particular, LCPI has provided Fidelity with records evidencing commencement of construction on the Projects; records of construction interruption and/or cessation; documents reflecting sequencing, scheduling and the geographic scope of the work; inspection reports;

construction budgets; and correspondence between or among the SunCal Subsidiaries, the Parent, and LCPI.

11. While Fidelity alleges that LCPI has failed to produce "entire categories of information", LCPI has in fact provided Fidelity with loan disbursement information, including the records of disbursement and inspection agents retained by LCPI. Moreover, during its October meeting with Fidelity, LCPI offered to allow Fidelity to speak informally with Michael Delvin of M. Delvin & Associates, representatives of LCPI. Mr. Delvin, however, informed LCPI that all relevant information he possessed was included in his reports that LCPI has already provided to Fidelity.

12. In addition, LCPI has provided Fidelity with documents pertaining to loan administration, including information regarding the creation, performance and modification of LCPI's loans. In particular, LCPI has provided stop notices; accounting and other records of loan balances throughout the duration of the loans; and records of payments made by the SunCal Parent or other parties with respect to the loans.

**LCPI Fully Intends to Continue to Cooperate with Fidelity**

13. LCPI fully intends to provide Fidelity with additional responsive and relevant documents, information or materials in its possession. LCPI has reviewed all of the relevant documents and information in its possession to determine if such materials exist. Moreover, LCPI has engaged in discussions with third party disbursement and inspection agents in order to gather any documents or information they may possess that would be of use to Fidelity.

14. On October 29, 2010, LCPI met with Fidelity's representatives for the purpose of determining what additional documents and information Fidelity believes LCPI can

provide to further Fidelity's investigation of LCPI's title insurance claims. Thus far, LCPI and the trustee of the SunCal Debtors have been unable to locate any additional documents or information that were not already produced that would be of further use and relevance to Fidelity. LCPI and the trustee are, however, continuing to determine whether either party can provide any such additional documents, information and materials. Should such materials exist, LCPI will endeavor to provide them to Fidelity.

15. In addition, on November 1, 2010, LCPI sent Fidelity additional draw requests and other materials generated by Trimont Real Estate Advisors, representatives of LCPI. On November 2, 2010, LCPI provided Fidelity with additional construction reports created by M. Delvin & Associates, representatives of LCPI. Thus, given LCPI's efforts and its intention to cooperate with Fidelity's requests, it is premature for Fidelity to seek the aid of this Court to compel production and to otherwise decide the merits of the Motion.

**The Motion is an Improper Attempt to Obtain Equitable Relief**

16. As noted above, Fidelity seeks various forms of equitable relief—to wit, an order compelling LCPI to (i) furnish Fidelity with additional information and documentation, (ii) "cure" its alleged default under the Policies, (iii) provide Fidelity with adequate protection in the form of cooperation, and (iv) not trigger a denial of coverage under the Policies by failing to cooperate with Fidelity. Such relief is wholly inappropriate and may not be granted in response to a motion. Fidelity has, in any event, failed to provide any colorable basis upon which such relief should be granted.

17. Bankruptcy Rule 7001 clearly requires the commencement of an adversary proceeding to obtain a declaratory judgment relating to both equitable relief and the determination of the extent of a debtor's interest in property. Fed. R. Bankr. P. 7001 (defining an

adversary proceeding as "a proceeding . . . to obtain an injunction or other equitable relief . . ." (emphasis added)). Accordingly, the Court may not grant the requested relief.

18.  Furthermore, even if such relief were proper—and it is not—Fidelity has failed to provide any factual or legal basis upon which the Court could grant the relief sought. In sum, Fidelity's request for equitable relief must be denied, as it is procedurally improper on its face, and, further, because it has no basis in law or fact. In light of this, the Motion is a nothing more than a backdoor attempt to end-run the procedural requirements intended to ensure that parties such as Fidelity provide support for requests of equitable relief.

**Fidelity's Legal Arguments Are Without Merit;
LCPI has Complied with Its Only Existing "Duty to Cooperate"**

19.  Aside from the fact that the Motion is procedurally improper, there is no basis for Fidelity's request that the Court compel LCPI to satisfy its purported "duty to cooperate" under the Policies as adequate protection for Fidelity's interests therein. LCPI has tendered defense under only the First Policy, and has fully cooperated with its only "duty to cooperate" therein. The sole portion of the First Policy specifying any duty of LCPI to cooperate with Fidelity's defense efforts is section 3(e), which provides that "[i]n all cases where this policy permits or requires [Fidelity] to prosecute or provide for the defense of any action or proceeding . . . [LCPI] shall give [Fidelity] all reasonable aid . . . ." First Policy ¶ 3(e). Significantly, as a result of the SunCal Debtors' bankruptcy proceedings, all mechanics' lien actions initiated in state court have been stayed. For this reason, there is currently no defense activity requiring LCPI's cooperation.[6]

---

[6] There is one mechanic's lien dispute proceeding in the California Bankruptcy Court presiding over the SunCal Debtors' chapter 11 cases. LCPI has asked, and has been assured, that all relevant documents are available for the defense of that action.

20.     Moreover, assuming, arguendo, that a "duty to cooperate" is required with respect to the First Policy, LCPI's obligation to assist Fidelity in its defense efforts is limited to providing "all reasonable aid." Specifically, paragraph 3(e) of the First Policy obligates LCPI to provide "all reasonable aid" to Fidelity in its defense of "any action or proceeding . . . ." To this point, LCPI has provided "reasonable aid" to Fidelity through its production of all responsive documents and information of which it is aware and will continue to do so as previously described. Fidelity further argues that LCPI has an implied expanded "duty to cooperate" under the First Policy due to a duty of good faith and fair dealing under California law because such cooperation is necessary for Fidelity to fulfill its contractual obligations. However, Fidelity cites no cases holding that such duty confers upon LCPI a duty to cooperate beyond what is explicitly stated in the First Policy. Regardless, LCPI has provided Fidelity with all assistance and documents necessary to all Fidelity to perform its obligations under the Policies.

21.     With respect to Fidelity's request for adequate protection, Fidelity itself indicates that "the purpose and intent underlying the doctrine of adequate protection is to ensure that a party with an interest in property being used by the trustee receives the benefit for which it bargained. . ." (Motion ¶ 101) Given that LCPI has complied with its only express duty to cooperate under the Policy, i.e., the provision of reasonable aid to Fidelity, Fidelity has no interests for which it has bargained under the Policies that are at risk that would require adequate protection.

**LCPI Has Not Assumed the Insurance Policies and, Thus, Has no Obligation to "Cure"**

22.     In addition, Fidelity's argument that LCPI should "cure" an alleged default under the Policies lacks any legal basis. As discussed, there is currently no default under the Policies because LCPI has not breached any purported "duty to cooperate." Furthermore,

entirely lost on Fidelity is the fact that an executory contract must be assumed, with express approval from the court, prior to any cure requirement.  Section 365 of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract . . . ."  11 U.S.C. § 365(a) (emphasis added); see also ReGen Capital I, Inc. v. Halperin (In re U.S. Wireless Data, Inc.), 547 F.3d 484, 488 (2d Cir. 2008) ("Assumption, however, is subject to court approval based on a review of the totality of the circumstances." (citing Orion Picture Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1099 (2d Cir. 1993))).  It is important to note that the obligation to cure a default under a contract a debtor seeks to assume does not arise until "the time of assumption of such contract."  11 U.S.C. § 365(b)(1)(A); Eastern Airlines Inc. v. Ins. Co. of the State of Pa. (In re Ionosphere Clubs, Inc.), 85 F.3d 992, 999 (2d Cir. 1996).

    23. Pursuant to the Plan the Debtors' respective insurance policies and related documents shall be deemed assumed to the extent such documents constitute executory contracts.  Plan § 11.5.  However, the Plan has not yet been solicited or confirmed, and no order approving assumption of the Policies has been entered.  Thus, LCPI has no obligation to cure any purported defaults under the First Policy, the only Policy under which LCPI has tendered claims, or any of the other Policies.  Regardless, LCPI has providing Fidelity with numerous documents, is endeavoring to further assist Fidelity by providing any as yet unproduced documents, information and materials, and fully intends to continue to cooperate with Fidelity.

## CONCLUSION

    24. Fidelity's request is a procedurally improper attempt to obtain equitable relief from the Court, and accordingly, must be denied.  In any event, LCPI has provided Fidelity with a substantial amount of responsive and relevant documents and information pursuant to

Fidelity's requests. As it has done previously, LCPI intends to continue to cooperate with Fidelity by determining what, if any, relevant documents or information have not yet been produced to Fidelity and submitting those materials to Fidelity. In light of LCPI's willingness to work with Fidelity to produce the information it is able to so supply, even had Fidelity sought its requested relief in a procedurally proper manner, it would be premature for Fidelity to seek judicial intervention at this time.

25. For all of the foregoing reasons and authorities, as well as those to be advanced at oral argument, the Debtors respectfully request that the Court deny the Motion.

WHEREFORE the Debtors respectfully request that the Court deny the relief requested and grant the Debtors such other and further relief as is just

Dated: February 9, 2011
New York, New York

/s/Alfredo R. Perez
Alfredo R. Perez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77027
Telephone: (713) 546-5000
Facsimile (713) 224-9511

KING & SPALDING LLP
Arthur Steinberg
Scott Davidson
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222

Attorneys for Debtors
and Debtors in Possession