WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
**In re**                                                                     :    **Chapter 11**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **Case No. 08-13555 (JMP)**
:
Debtors.                               :    **(Jointly Administered)**
:
------------------------------------------------------------------x

**DECLARATION OF JEFFREY FITTS IN SUPPORT
OF DEBTORS' MOTION PURSUANT TO SECTION 105(a)
OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019
FOR AUTHORIZATION AND APPROVAL OF A SETTLEMENT
AND COMPROMISE AMONG LEHMAN BROTHERS HOLDINGS INC.,
LEHMAN COMMERCIAL PAPER INC. AND SWEDBANK AB, NEW YORK BRANCH**

Pursuant to 28 U.S.C. § 1746, I, Jeffrey Fitts, declare:

1.  I am a Managing Director with Alvarez & Marsal Real Estate Advisory Services ("A&M").  I submit this declaration (the "Declaration") in support of the *Debtors' Motion Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019 for Authorization and Approval of a Settlement and Compromise Among Lehman Brothers Holdings Inc., Lehman Commercial Paper Inc. and Swedbank AB, New York Branch* [Docket No. 14165] (the "Motion")[1] filed in the above-referenced chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI"), Lehman Commercial Paper Inc. ("LCPI" and, together with LBHI, the "Lehman

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Parties") and their affiliated debtors, as debtors in possession (together, the "Debtors" and collectively with their non-debtor affiliates, "Lehman").

2. I have more than 19 years of experience in assisting insolvent and troubled companies, with a focus on operational and financial restructuring efforts. Prior to joining A&M, I was a Managing Director with GE Commercial Finance ("GE"), where I led GE's Distressed Debt and Alternative Investment Group and managed complex distressed credits. Before joining GE, I was with the Corporate Workout Division (IRM) of Citicorp, where I spent three years managing investment grade and middle market corporate workouts. I began my career in 1990 as a workout officer and, later, an asset manager with Citicorp Real Estate, where I managed more than $1 billion of office, retail, and industrial projects. I received a bachelor's degree from the University of Delaware in 1988.

3. I was assigned to the representation of Lehman in September 2008. I currently serve as the Co-Head of Lehman's real estate group (the "Real Estate Group"). My primary responsibility as Co-Head of the Real Estate Group is day-to-day management and oversight of Lehman's real estate portfolio, including management and oversight of the real estate, real estate finance and related activities that are the subject of the Motion and this Declaration. As Co-Head of the Real Estate Group, I oversee a number of Lehman employees who have been actively involved in finalizing the terms of the transactions described in this Declaration and in the Motion.

4. It is my business judgment that entry into the Settlement Agreement with Swedbank and consummation of the transactions set forth therein is in the best interests of LBHI, LCPI and each of their respective estates. The Settlement Agreement provides the best framework to resolve the claims filed by Swedbank against LBHI and LCPI and to consolidate

LBHI's interests in certain real estate projects that are currently divided between LBHI and Swedbank.

5. The Settlement Agreement provides for the exchange of certain commercial real estate loans or interests in commercial real estate loans between the Lehman Parties and Swedbank. Each of the loans subject to the exchange corresponds to a real estate project in which both Swedbank and the Lehman Parties currently have direct or indirect debt or equity investments. The exchange of the loans will enhance the Lehman Parties' ability to realize value with respect to such investments by enabling the Debtors to consolidate their ownership in the various portions of the capitalization of various real estate projects, thereby alleviating the time, cost and burden of seeking further approval from Swedbank to take action with respect thereto.

6. The Settlement Agreement provides that the Lehman Parties will refrain from interfering with actions taken by Swedbank to enforce the terms of certain agreements, as further described in the Settlement Agreement, with respect to the La Posada Project, the Seaview Project, the Telluride Project, and the 1100 Vermont Project; however, based on the current value of such projects and the subordinate position of the Lehman Parties' interests therein, the Lehman Parties are unlikely to obtain recoveries with respect thereto. Additionally, the Settlement Agreement provides that the Parties will agree to modify the terms of certain loans, including the modification of the maturity date of a mortgage loan held by Swedbank relating to the 816 Congress Project, an office building in which LBHI holds an indirect equity interest. In connection therewith, LBHI will cause certain of its affiliates to agree to the termination of any obligation of Swedbank to make further advances under the mortgage loan encumbering the 816 Congress Project.

7. Additionally, the Settlement Agreement provides for the allowance of the claims asserted by Swedbank against both LCPI and LBHI, each in the amount of $325 million, a reduction of approximately 43% from the approximately $565.8 million asserted by Swedbank. The Settlement Agreement further provides, however, that Swedbank may not recover more than $325 million in the aggregate with respect to the claims. While the Lehman Parties believe they have valid defenses to the claims, the prospects for success with respect to defending against the claims are, at best, uncertain, and in any event, will require costly and protracted litigation with Swedbank, requiring significant expenditures of both time and resources by the Lehman Parties and their professionals. Accordingly, the Settlement Agreement will allow the Lehman Parties to avoid expensive and uncertain litigation in exchange for a settlement amount that is both fair given the value of the mortgage assets listed on Exhibit A to the Settlement Agreement and a substantial reduction from the amount asserted by Swedbank.

8. The Settlement Agreement further provides for certain mutual releases between the Lehman Parties, on the one hand, and Swedbank, on the other hand, as further set forth in the Settlement Agreement. However, the Settlement Agreement importantly does not release or waive the claims that any Lehman Party or any of its affiliates may have against any other Lehman Party or any of its affiliates.

9. The terms of the Settlement Agreement are the product of an extended, good-faith, arms'-length negotiation process. The Parties, each represented by counsel, have participated in numerous meetings and negotiations. The terms of the Settlement Agreement are designed to provide mutually acceptable benefits and burdens to the Parties.

10. In connection with obtaining the requisite internal approvals at Lehman, as is customary, employees of LAMCO prepared an extensive memorandum outlining the

Settlement Agreement, its terms, and the Real Estate Group's recommendation for approval thereof. Following an extensive review and comment period, the Settlement Agreement was approved by the Real Estate Group's Investment Committee.

11. As Co-Head of the Real Estate Group, I have concluded, in my considered business judgment and based on my review of pertinent documents and discussions with my colleagues involved with the negotiation of the Settlement Agreement, that LBHI and LCPI's entry into the Settlement Agreement is in the best interests of their respective estates.

[*The remainder of this page is intentionally left blank*]

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 11th day of February, 2011.

/s/Jeffrey Fitts
Jeffrey Fitts