SHAFFERMAN & FELDMAN LLP
286 Madison Avenue, Suite 502
New York, New York 10017
Telephone: (212) 509-1802
Facsimile: (212) 509-1831
Joel Shafferman, Esq.

Attorneys for Easton Investments, II

COSTELL & CORNELIUS LAW CORPORATION
1299 Ocean Avenue, Suite 400
Santa Monica, California 90401
Telephone: (310) 458-5959
Facsimile: (310) 458-7959
Jeffrey Lee Costell, Esq.

Attorneys for Easton Investments II　　　　　　　　**Hearing Date and Time**
Pro Hac Vice Pending　　　　　　　　　　　　　　　**March 3, 2011 @ 10:00 am**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------
In re:                                                            Chapter 11 Case No.

**LEHMAN BROTHERS HOLDINGS INC., et**         08-13555 (JMP)
**al.,**
                                                                   **(Jointly Administered)**
　　　　Debtors.

-------------------------------------------------------------

EASTON INVESTMENTS II, A CALIFORNIA L.P. RESPONSE TO
OMNIBUS OBJECTION TO CLAIMS FILED BY LEHMAN BROTHERS HOLDINGS
INC. AND ITS AFFILIATED DEBTORS

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.   **INTRODUCTION**

On or about April 13, 2006, Easton Investments II, a California Limited Partnership ("Creditor") and Lehman Brothers Special Financing, Inc. entered into that certain Rate Cap Agreement (BMA) (the "Agreement").  On September 15, 2008 Lehman Brothers Holdings, Inc and its subsidiary Lehman Brothers Special Financing Inc. (the "Debtors") filed for bankruptcy. Creditor was required to obtain the Agreement under the terms of its $20,800,000.00 bond financing agreements (the "Bond Financing") with Federal Home Loan Mortgage Corporation ("Freddie Mac").  Creditor engaged Swap Financial Group, LLC ("Swap Financial Group") to obtain replacement financing after Debtors breached the Agreement by filing for bankruptcy. Creditor complied with all of the requirements for obtaining replacement financing under the Agreement as detailed in Part III.B. *infra*.  Swap Financial Group solicited replacement cap bids from four (4) Freddie Mac approved Reference Market-makers.  Two of the Reference Marker-makers, Bank of America and PNC Bank passed on submitting any bids and only two submitted quotes.  The arithmetic mean of the two quoted bids was $101,000 (the "Market Quotation"). Creditor also suffered other damages and incurred recoverable fees and costs as a result of the Debtors breach of the Agreement

Creditor complied with all of the procedural requirements set forth by Debtors in order to file its claim.   After Creditor submitted the Proof of Claim, Debtors requested that Creditor complete an extensive online derivative questionnaire (the "Derivative Questionnaire"), which required Creditor to upload various documents and answer a number of questions.  Creditor

jumped through all of the hoops that Debtors established, complied with all of the requirements and has confirmations substantiating the same. Nevertheless, on January 14, 2011, Debtors filed the Eighty-fourth Omnibus Objection to Claims (Valued Derivative Claims) (the "Objection") reducing and discounting Creditor's claim to about thirty (30) percent of its value. Debtors fail to set forth any specific facts or legal authority as to why Creditor's derivative claim was reduced. Debtors Objection has no merit and Creditor requests that the Court either deny the Object as lacking any evidentiary support or legal merit or set this matter for hearing as a contested matter under Bankruptcy Rule 9014 and set a briefing schedule, discovery and hearing date and allow for the testimony of witnesses (including expert witnesses). Debtors also failed to engage in any meaningful meet and confer process on this issue despite the fact that its Objection states that Debtors engaged in "lengthy negotiations." The "lengthy negotiations" that Debtors refer to are a few emails sent over a seven (7) day span during the holidays. In fact, Creditor's counsel informed Debtors' counsel that he is available to discuss this matter but Debtors' counsel failed to respond and ceased all communications until the filing of the Objection. Based on the foregoing, this Court should deny Debtors Objection to Creditor's claim or set this as a contested matter under Bankruptcy Rule 9014.

## II.    STATEMENT OF FACTS

On or about April 13, 2006, Creditor and Lehman Brothers Special Financing, Inc. entered into that certain Rate Cap Agreement (BMA). A true and correct copy of the Rate Cap Agreement is attached hereto as Exhibit "A" (the "Agreement"). Creditor was under an express, mandatory obligation by virtue of its loan agreements with Freddie Mac to maintain at all times a qualifying "hedge" to protect both Freddie Mac and the Creditor against the variable interest rate

risk inherent in the Bond Financing. Freddie Mac required that the Agreement have certain terms including, but not limited to, termination and default provisions, damage quantification provisions and procedures upon the default or termination of the Agreement for the qualification of replacement agreements and the providers thereof.

Creditor has fully performed all duties and obligations under the Agreement, other than those duties which have been excused or waived as a result of the Debtor's breach of the Agreement. On or about October 8, 2008, Debtor became unable to perform under the Agreement due to its bankruptcy filing and terminated and breached the Agreement as a result of the same (the "Termination"). Shortly after October 8, 2008, Freddie Mac became aware of the Debtors bankruptcy filing and the Termination and immediately contacted the Creditor and demanded that the Creditor obtain a replacement for the terminated Agreement and obtain a replacement for the same.

On or about October 17, 2008, the Creditor gave written notice to the Debtors that it was compelled also to terminate the Agreement under Sections 10 through 13 because of the Debtors inability to perform its duties thereunder and that the Debtors were liable for damages under the Agreement on account of the same. On or about October 17, 2008, Freddie Mac consented to the termination of the Agreement.

In connection with fixing and liquidating the damages causes by the Debtors breach of the Agreement and the termination of the same, the Creditor engaged Swap Financial Group to price the cost for purchasing interest rate cap protection equivalent to the rate cap protection provided by the Debtors under the Agreement. On or about October 17, 2008, Swap Financial

Group transmitted a term sheet to Creditor that indicated that the cost to acquire the replacement cap rate protection was approximately $101,000.

On or about October 17, 2008, the Creditor transmitted a letter to the Debtors notifying the Debtors that the Creditor had, in accordance with the Agreement, obtained a quote for replacement rate cap protection and that the Creditor had suffered other incidental and consequential damages and incurred recoverable fees and costs as a result of the Debtors breach of the Agreement and the termination of the same.

A summary of the Creditor's damages is as follows:

| | |
|---|---|
| Market Quotation from Swap Financial Group: | $101,000.00 |
| Creditor's Accrued Attorneys Fees and Costs: | $20,000.00 |
| Freddie Mac Outside Attorneys Fees and Cost: | $2,500.00 |
| Swap Financial Group Consulting Fees: | $750.00 |
| TOTAL CLAIM: | $124,250.00 |

On September 8, 2009, Creditor filed a Proof of Claim against Lehman Brothers Special Financing Inc., a subsidiary of Lehman Brothers Holdings, Inc. under case no. 08-13888 (the "Lehman Brothers Financing Proof of Claim").  A true and correct copy of the Lehman Brothers Financing Proof of Claim is attached to the Declaration of Alexandre Ian Cornelius (the "Cornelius Dec.") as Exhibit "B".  On September 11, 2009, Creditor filed a Proof of Claim against Lehman Brothers Holdings, Inc. under Case No. 08-13555 (the "Lehman Brothers Holding Proof of Claim" together with "Lehman Brothers Financing Proof of Claim" the "Proof of Claims").  A true and correct copy of the Lehman Brothers Holding Proof of Claim is attached to the Cornelius Dec. as Exhibit "C".  Creditor submitted and attached the Summary of

Claim, the Freddie Mac Consent to Termination of Rate Cap Agreement, the Swap Financial Group, LLC Market Quotation and the October 17, 2008 letter drafted by Creditor's counsel outlining the Statement of Damages along with its Proof of Claims.  After the Proof of Claims were submitted, Debtors requested that Creditor complete a laborious and extensive Derivative Questionnaire online.  Creditor went through all of the required hoops set forth by Debtors and completed the Derivative Questionnaire, which required that the claimant provide various information in support of its claims, among others, a valuation statement, individual trade-level detail, trade value methodology and quotations and calculation of damages.  Creditor uploaded all of the required documents that supported its Proof of Claims and received confirmations that they had, in fact, been completely and correctly uploaded.  A true and correct copy of the Derivative Questionnaire and the confirmations are attached to the Cornelius Dec. as Exhibit "D".

On December 28, 2011, Debtors counsel suddenly sent an email to Creditor's counsel stating that Creditor's claim will be reduced from $124,250 to $30,000.  On December 28, 2011, Creditor's counsel responded by requesting Debtors to explain why Creditors claim is being discounted down to about thirty (30) percent.   On January 5, 2011, Creditor's counsel again sent an email explaining that Creditor complied with all of the requirements for obtaining replacement financing under the Agreement.  On January 5, 2011, Debtors' counsel responded that she needs more time to review the documents and would like to reschedule the conference call for January 7, 2011.  Creditor's counsel provided the time during which he would be available to discuss this further on January 7, 2011 but Debtors' counsel failed to respond.  There were no further discussions or negotiations as Debtors ceased all communications.  On January

14, 2011, Debtors filed the instant Objection. On February 9, 2011, Creditor's counsel filed a Motion for admission to practice pro hac vice in the Southern District of New York.

### III.  ARGUMENT

#### A.  Debtors Objection Has No Merit and the Court Should Be Denied Or This Matter Should Be Set as a Contested Matter Under Rule 9014.

Debtors fail to set forth any specific facts or legal authority for the reduction of Creditor's derivative claim. Debtors make a vague assertion about the review and reconciling of certain documents and the presentation of their proposed settlement amount to a committee for final approval. However, Debtors Objection is meritless and there are no facts or legal authority to support its decision to reduce Creditors claim by a total of seventy (70) percent. Creditor requests that the Court deny the Objection outright or set this as a contested matter under Bankruptcy Rule 9014. Bankruptcy Rule 9014(d)-(e) provides that:

> "Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding . . . The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify."

The Notes of Advisory Committee to Bankruptcy Rule 9014 clearly state that "Whenever **there is an actual dispute**, other than an adversary proceeding, before the bankruptcy court, the litigation to resolve that **dispute is a contested matter**." (Emphasis added). Here, there is a factual and legal dispute between Debtors and Creditor as to what the claim amount should be. Based on the foregoing, Creditor respectfully requests that this Court set this as a contested matter under Bankruptcy Rule 9014 and set a briefing schedule, discovery and hearing schedule and allow for the testimony of witnesses (including expert witnesses).

      **B.    Debtors Obtained Replacement Financing Pursuant to the Terms Set Forth in the Agreement**.

Creditor engaged Swap Financial Group to price the cost for purchasing interest rate cap protection equivalent to the rate cap protection provided by the Debtors under the Agreement. Creditor obtained the Market Quotation set forth in Exhibit "B" of the Cornelius Dec., under Exhibit "D" thereto, which states the matter in which the bids were calculated and confirms that Creditor complied with all of the requirements for obtaining replacement financing under the Agreement. Swap Financial Group went to the market and solicited replacement cap bids from four (4) Freddie Mac approved Reference Market-makers. Two Reference Marker-makers, Bank of America and PNC Bank passed and only two provided quotes. The arithmetic mean of the two quoted bids is $101,000, which is the Market Quotation. On or about October 17, 2008, Swap Financial Group transmitted this Market Quotation to Creditor confirming that the cost to acquire the replacement cap rate protection was approximately $101,000. Creditor also suffered other incidental and consequential damages and incurred recoverable fees and costs as a result of the Debtors breach of the Agreement and the termination of the same. Debtors fail to provide any facts or legal authority as to why Creditor's claim should be reclassified and reduced to about thirty percent (30%) of the actual damages incurred by Creditor. Therefore, Debtors Objection has no merit and should be denied outright without further hearing.

      **C.    Debtors Fail to Engage in Any Meaningful Meet and Confer Process**

Debtors allege that they " [e]ngage in . . . lengthy negotiations with the holder of the Derivate Claim that are often very detailed and may extend over a period of months." Objection at p. 7.   Debtors go on to state that "Despite the Debtor's efforts at negotiating this Proposed Settlement Amount and Classification, the Debtors and the holders of the Valued Derivative Claims have reached an impasse." Objection at p. 7-8.  However, the fact of the matter is that the lengthy negotiations and the "efforts" that Debtors are referring to consisted of a few of emails during the holidays from December 28, 2010 to January 5, 2011.  On December 28, 2011, Debtors for the first time suddenly sent an email to Creditor thereby informing it that its claim will be reduced from $124,250 to $30,550 without any factual or legal support for the same.  The parties planned to discuss this matter further, which never occurred because Debtors' counsel did not engage in any good faith negotiations.  On January 5, 2011, Creditor's counsel confirmed that the conference call can be rescheduled per Debtors' counsel request and stated that he is available to discuss this matter on January 7, 2011.   Debtors' counsel failed to respond to this and in fact ceased all communications until the filing of the instant Objection.   Debtors' never bothered to respond to Creditor's good faith efforts to discuss this matter and never engaged in any meaningful meet and confer process.  Therefore, Debtors Objection should be denied.

///

///

///

## IV. CONCLUSION

Based on the foregoing, Creditor respectfully requests that this Court deny Debtors Objection to Creditor's claim or set this as a contested matter under Bankruptcy Rule 9014.

Dated: February 11, 2011
New York, New York

/s/ Joel Shafferman, Esq.
Joel Shafferman, Esq.
SHAFFERMAN & FELDMAN LLP
286 Madison Avenue, Suite 502
New York, New York 10017
Telephone: (212) 509-1802
Facsimile: (212) 509-1831


Attorney for Easton Investments, II


Santa Monica, California

/s/ Jeffrey Lee Costell
Jeffrey Lee Costell, Esq.
COSTELL & CORNELIUS LAW CORPORATION
1299 Ocean Avenue, Suite 400
Santa Monica, California 90401
Telephone: (310) 458-5959
Facsimile: (310) 458-7959

Attorneys for Easton Investments II
Pro Hac Vice Pending