# Exhibit "B"

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| PROOF OF CLAIM |

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
| Name of Debtor Against Which Claim is Held **Lehman Brothers Special Financing Inc.** | Case No. of Debtor **08-13888** |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Program Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Easton Investments II, A California L.P.
c/o Costell & Cornelius Law Corporation
1299 Ocean Avenue, Suite 400
Santa Monica, CA 90401

Telephone number: 310-458-5959   Email Address: alcornelius@costell-law.c

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Easton Investments II c/o G.H Palmer & Associates
11740 San Vicente Blvd., Suite 208
Los Angeles, CA 90049

Telephone number: 310-207-3100   Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. Amount of Claim as of Date Case Filed: $ 124,250.00

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: Breach of Cap Rate Agreement
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: 5459
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____

Value of Property: $ _____   Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____   Basis for perfection: _____

Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$ _____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____
(See instruction #6 on reverse side.)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

**FILED / RECEIVED**
SEP 0 8 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 09/03/2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  *Alexandre Ian Lorkelius, In Fact  ATTORNEY IN FACT* |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**ATTACHMENT TO PROOF OF CLAIM OF
EASTON INVESTMENTS II, A CALIFORNIA LIMITED PARTNERSHIP
BANKRUPTCY OF
LEHMAN BROTHERS SPECIAL FINANCING, INC.
CASE NO.: 08-13888**

Easton Investments II, a California Limited Partnership ("Creditor") sets forth the following summary of the facts and information that serve as the basis for and support its proof of claim (the "Proof of Claim") in the above-entitled case of Lehman Brothers Special Financing, Inc. (the "Debtor"). All claims of the Creditor arise out of and/or relate to the business, contractual, fiduciary, trust, and/or legal/equitable relationships, rights and obligations between the Creditor and the Debtor and investigations and review of documents are ongoing regarding these relationships, rights and obligations and the right to amend, supplement and/or modify this Proof of Claim for other amounts owing or due to the Creditor based on these relationships, rights and obligations is hereby reserved, to the fullest extent allowable.

## SUMMARY OF CLAIM

On or about April 13, 2006, Creditor and Debtor entered into that certain Rate Cap Agreement (BMA). A true and correct copy of the Rate Cap Agreement is attached hereto as Exhibit "A" (the "Agreement"). The Creditor was required to obtain the Agreement under the terms of its $20,800,000.00 bond financing agreements (the "Bond Financing") with Federal Home Loan Mortgage Corporation ("Freddie Mac"). The Creditor was under an express, mandatory obligation by virtue of its loan agreements with Freddie Mac to main at all times a qualifying "hedge" to protect both Freddie Mac and the Creditor against the variable interest rate risk inherent in the Bond Financing. Freddie Mac required that the Agreement have certain terms including, but not limited

1

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING BOTH THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | | |
|---|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC | |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC | |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC | |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited | |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. | |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC | |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation | |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC | |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC | |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC | |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods were sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition *nor* shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.

to, termination and default provisions, damage quantification provisions and procedures upon the default or termination of the Agreement for the qualification of replacement agreements and the providers thereof.

Creditor has fully performed all duties and obligations under the Agreement, other than those duties which have been excused or waived as a result of the Debtor's breach of the Agreement.

On or about October 8, 2008, Debtor became unable to perform under the Agreement due to its bankruptcy filing and terminated and breached the Agreement as a result of the same (the "Termination").

Shortly after October 8, 2008, Freddie Mac became aware of the Debtor's bankruptcy filing and the Termination and immediately contacted the Creditor and demanded that the Creditor obtain a replacement for the terminated Agreement and obtain a replacement for the same.

On or about October 17, 2008, the Creditor gave written notice to the Debtor that it was compelled also to terminate the Agreement under Sections 10 through 13 because of the Debtor's inability to perform its duties thereunder and that the Debtor was liable for damages under the Agreement on account of the same. A true and correct copy of the termination letter of October 17, 2008 is attached hereto as Exhibit "B."

On or about October 17, 2008, Freddie Mac consented to the termination of the Agreement. A true and correct copy of Freddie Mac's consent to the termination is attached hereto as Exhibit "C."

In connection with fixing and liquidating the damages causes by the Debtor's breach of the Agreement and the termination of the same, the Creditor engaged Swap Financial Group to price the cost for purchasing interest rate cap protection equivalent to the rate cap protection provided by the

2

Debtor under the Agreement. On or about October 17, 2008, Swap Financial Group transmitted a Term Sheet to Creditor that indicated that the cost to acquire the replacement cap rate protection was approximately $101,000.    A true and correct copy of the Term Sheet generated by Swap Financial Group for the replacement rate cap protection is attached hereto as Exhibit "D."

On or about October 17, 2008, the Creditor transmitted a letter to the Debtor notifying the Debtor that the Creditor had, in accordance with the Agreement, obtained a quote for replacement rate cap protection and that the Creditor had suffered other incidental and consequential damages and incurred recoverable fees and costs as a result of the Debtor's breach of the Agreement and the termination of the same.    A true and correct copy of the letter setting for the Creditor's damages is attached hereto as Exhibit "E."

A summary of the Creditor's damages is as follows:

| | |
|---|---|
| Market Quotation from Swap Financial Group: | $101,000.00 |
| Creditor's Accrued Attorneys Fees and Costs: | $20,000.00 |
| Freddie Mac Outside Attorneys Fees and Cost: | $2,500.00 |
| Swap Financial Group Consulting Fees: | $750.00 |
| **TOTAL CLAIM:** | **$124,250.00** |

The foregoing claims are not exhaustive. Accounting, legal and other investigations are ongoing and may reveal additional amounts owed to the Creditor. The right to amend and supplement this Proof of Claim is hereby reserved and all claims are reserved, according to proof, whether stated herein or not.

3

# Exhibit "B"

LAW OFFICES OF
## BRET H. REED, JR.
A LAW CORPORATION
621 ACACIA AVENUE
CORONA DEL MAR, CALIFORNIA 92625
(949) 555-9150

FACSIMILE:
(949) 566-0090

E-MAIL:
bhrjr@reedlawcorp.com

October 17, 2008

**VIA ELECTRONIC MAIL AND
FEDERAL EXPRESS**

Lehman Brothers Special Financing, Inc.
745 Seventh Avenue, Fifth Floor
New York, NY 10019
Attention: Municipal Financial Products Middle Office

Re:   **NOTICE OF TERMINATION**
Lehman Brothers Special Financing, Inc.
Interest Rate Cap Agreement dated April 13, 2006
Easton Investments II

Dear Sir or Madam:

This firm represents Easton Investments II, A California Limited Partnership ("Buyer") in connection with the Rate Cap Agreement (BMA) dated as of April 13, 2006 (the "Hedge") between Buyer and Lehman Brothers Special Financing, Inc. ("LBSF") as cap provider.  As you know the Hedge is part of a Freddie Mac multifamily credit enhancement product line and has been required by Freddie Mac pursuant to its guidelines and the Hedge Documents under the $21,000,000 County of Los Angeles Variable Rate Demand Multifamily Housing Revenue Bonds (Valencia Village Project) 1984 Series C (the "Bonds" or the "Bond financing").  Copies of the Freddie Mac Reimbursement Agreement and the rate cap assignment (the "Freddie Hedge Documents") and the Hedge are attached hereto.

On or about September 23, 2008 the Buyer indirectly received by electronic mail from its Freddie Mac Seller / Servicer, Northmarq Capital Group, Inc.

LAW OFFICES OF
**BRET H. REED, JR.**
A LAW CORPORATION

Lehman Brothers Special Financing, Inc.
Notice of Termination – Valencia Village Apts.
October 17, 2008
Page 2

("NorthMarq") notification that there had been bankruptcy filings by both Lehman Brothers Holdings, Inc. and LBSF as its subsidiary, and as a consequence thereof a Termination Event had under the Hedge. This was confirmed on October 8, 2008 through the receipt via e-mail of a copy of the voluntary petition filed by LBSF in the United States Bankruptcy Court, Southern District of New York on or about October 3, 2008 seeking relief under Chapter 11 of Title 11 of the United States Code, a copy of which is attached hereto (the "Bankruptcy Proceeding").

In the course of our legal representation of Buyer, we have conducted an in-depth review and analysis of the applicable Bond financing documents and the Hedge, including legal analysis of the applicability of the standard *2000 ISDA Definitions,* the *1992 U.S. Municipal Counterparty Definitions* and other terms incorporated by reference into the Hedge. Furthermore, we have had communications with Eric Bergquist, Esq. of Kutak Rock (outside counsel to Freddie Mac), with the NorthMarq and with several hedge brokers specializing in placing interest rate hedge products with Freddie Mac-approved hedge providers, our client and with others to determine the effects of the Termination Event and the procedures for being paid Damages (as defined in the Hedge) by LBSF.

Accordingly, pursuant to Sections 10 through 13 of the Hedge, with the prior written consent of Freddie Mac, a copy of which is attached hereto, the Buyer hereby:

> ➢ gives Notice of Termination of the Hedge on the ground that LBSF has become the subject of an action and proceeding for relief under the United States Bankruptcy Act, with an effective Early Termination Date of October 17, 2008 (the "EDT");

> ➢ declares the payment obligations of LBSF under Section 2 of the Hedge that are scheduled to be made after the EDT are terminated as of the EDT, which payment obligations shall herewith be replaced by LBSF's obligations to pay Buyer its Damages pursuant to Section 11 of the Hedge; and

> ➢ demands payment from LBSF promptly on the EDT of Buyer's "Damages" (as defined in the Hedge) equal to the sum of (i) the Market Quotation (as defined in Section 12 of the Hedge) and (ii) Buyer's reasonable costs and expense incurred by Buyer in connection with

LAW OFFICES OF
**BRET H. REED, JR.**
A LAW CORPORATION

Lehman Brothers Special Financing, Inc.
Notice of Termination – Valencia Village Apts.
October 17, 2008
Page 3

enforcement of Buyer's rights under the Hedge and as a consequence of the Termination Event, including without limitation, fees and expenses of ·legal counsel as set forth in Section 13(b) of the Hedge.

In accordance with the procedures set forth in the Hedge governing the method of calculating Buyer's Damages in the event of Early Termination, Buyer is obtaining bids today, the EDT, from at least four 'leading participants' in the 'interest rate cap market' to obtain the Market Quotation for a replacement cap covering the unexpired, remaining term, at the same Strike Price and in the same notional amount as the Hedge. LBSF shall then be obligated to pay, on the ETD, an amount equal to several components, consisting of the 'arithmetic mean' of the up-front cost of four bids submitted by Reference Market-makers, as well as all reasonable costs (including legal fees and expenses) of the Buyer, Freddie Mac, NorthMarq and others incurred as a result of the Termination Event. For the subject transaction, Market Quotation being obtained for the replacement interest rate cap would be in the notional amount of $20,800,000, with a cap Strike Rate of 7.12%, a cap termination date of May 1, 2011, with a cap term of 2 year, 6 months.

Upon determination of the Damages due to LBSF's default and early termination under the Hedge, LBSF will be notified in writing later today, the ETD, of the Damages, with demand for immediate payment as required by the Hedge.

Thank you for your anticipated cooperation.

Sincerely,

Bret H. Reed, Jr.

BHR: asr
Attachments
cc:    See Distribution List

# Exhibit "C"

## FEDERAL HOME LOAN MORTGAGE CORPORATION CONSENT TO TERMINATION OF RATE CAP AGREEMENT

The Federal Home Loan Mortgage Corporation ("Freddie Mac") hereby consents to the termination of the interest rate cap agreement dated as of April 13, 2006 between Easton Investments II, A California Limited Partnership and Lehman Brothers Special Financing, Inc. No additional action by Freddie Mac is necessary to terminate the above referenced rate cap agreement.

4811-6984-0387.1

IN WITNESS WHEREOF, Freddie Mac has caused this consent to terminate an interest rate cap provided by a Lehman entity to be duly executed by its duly authorized officers or representatives.

FEDERAL HOME LOAN MORTGAGE
CORPORATION, as Freddie Mac

By: _____

Name: __Ilona T. Conolly__

Title: __Business Initiative's Director__

[Signature Page to *Lehman* Rate Cap Termination Consent]

4851-6984-0347.1

# Exhibit "D"

# *Swap Financial Group*

Swap Financial Group, LLC
76 South Orange Avenue, Suite 6
South Orange, NJ 07079
(973) 378-5500, fax (973) 378-5575

October 17, 2008

## Interest Rate Cap Agreement for
## Village Apartments

## Term Sheet

## TRANSACTION OVERVIEW

Easton Investments II, a California limited partnership (the "Buyer" or "Company") is
seeking to purchase an interest rate cap to provide rate protection for the Company's
floating rate debt, in keeping with the requirements of Freddie Mac. The bonds were
issued in conjunction with the financing of a 384-unit multifamily apartment facility
(the "Project") known as Village Apartments, located in Santa Clarita, California.

Swap Financial Group is serving as agent for the Company to arrange for the purchase
of the interest rate cap from among a selected group of approved counterparties. Your
firm is in the process of being approved by the Company and Freddie Mac. Bids on the
transaction will be taken Friday, October 17, 2008, at 12:00 p.m. Eastern Time*,
according to the terms as outlined below.

## TRANSACTION SPECIFICS

| | |
|---|---|
| Interest Rate Cap Purchaser: | Easton Investments II, a California limited partnership<br>(Tax ID Number: 95-3931731) |
| Interest Rate Cap Seller: | Approved Counterparty. As required by Freddie Mac, in the event the Interest Rate Cap Seller fails to maintain a rating of at least A1 (Moody's) and A+ (S&P), then the Agreement must be collateralized as specified below under the heading "Downgrade Collateralization". |
| Bid Date: | October 17, 2008 at 12:00 p.m. Eastern Time |

Interest Rate Cap Term Sheet
Village Apartments
October 17, 2008
Page 2 of 4

| | |
|---|---|
| Effective Date: | October 17, 2008 |
| Termination Date: | May 1, 2011 |
| Notional Principal Amount: | USD 20,800,000 |
| Strike Rate: | 7.12 % |
| Cap Index: | USD-SIFMA Municipal Swap Index, reset weekly and payable monthly |
| Index Value Cycle: | SIFMA rates effective each week, beginning on Thursdays |
| Index Averaging: | Weighted average of all weekly rates within each interest period |
| Cap Payments: | Index rate in excess of strike rate (if any) payable monthly. |
| Period Calculation: | First day of each month, not subject to adjustment |
| | Initial Period: Effective Date to Dec. 1, 2008<br>Final Period: April 1, 2011 to Termination Date |
| Interest Calculation: | Actual/Actual |
| Payment Dates: | First day of each month and the Termination Date, subject to Following Business Day Convention. |
| Downgrade Collateralization: | In the event the long-term, unsecured and unsubordinated indebtedness or financial program rating of the Interest Rate Cap Seller |

Interest Rate Cap Term Sheet
Village Apartments
October 17, 2008
Page 3 of 4

ceases to be rated at least A1 (Moody's) (or such rating is suspended or withdrawn) and A+ (S&P), (or such rating is suspended or withdrawn), then that entity's obligations under the cap agreement shall be required to be transferred to another party acceptable to Freddie Mac, or collateralized on such terms and conditions as are acceptable to Freddie Mac, including without limitation the delivery of collateral to a custodian. Failure to transfer or collateralize as required by Freddie Mac will constitute a termination event with the Seller as the Affected Party.

Documentation:

Documentation will follow Freddie Mac approved form for multifamily transactions, with first draft prepared by Seller.

Prior to closing, Buyer and Seller shall each deliver to the other documentation representing that it is legally authorized to enter into the transaction and evidence of the authority, incumbency and specimen signature of each Person authorized to execute and deliver the cap agreement.

The Buyer will collaterally assign its rights under the cap agreement to Freddie Mac. In the Freddie Mac form of Rate Cap Agreement, the Seller consents to such assignment, including agreeing to direct payments under the cap agreement to the mortgage servicer. This agreement can not contain any right of "Set Off" on the part of the Seller.

**Interest Rate Cap Term Sheet**
**Village Apartments**
**October 17, 2008**
**Page 4 of 4**

Your interest in the above transaction is appreciated.  Further information regarding the structuring of the transaction will be communicated to you as it develops.  Any questions concerning the above should be directed to Peter Shapiro, Nat Singer, Jim Murphy or Lillian Chern of Swap Financial Group (973) 378-5500.  We look forward to working with you on this transaction and welcome any comments or suggestions regarding this placement process.

# Swap Financial Group

*Swap Financial Group, LLC*
*76 South Orange Avenue, Suite 6*
*South Orange, NJ 07079*
*(973) 378-5500, fax (973) 378-5575*

**EASTON INVESTMENTS II**

**Project: Village Apartments**
**Interest Rate Cap with Lehman Brothers Special Financing Inc.**

October 17, 2008 at 12:00 p.m. Eastern Time

| Firm | Cap Premium Quote |
|------|------------------:|
| The Bank of New York Mellon | $70,000 |
| Royal Bank of Canada | $132,000 |
| Bank of America | PASS |
| PNC Bank | PASS |

| Market Quotation* | $101,000 |
|-------------------|---------:|

*\* Calculated as the arithmetic mean of the cap premiums quoted by the*
*Reference Market-makers*

# Exhibit "E"

LAW OFFICES OF
## BRET H. REED, JR.
A LAW CORPORATION
621 ACACIA AVENUE
CORONA DEL MAR, CALIFORNIA 92625
(949) 955-7150

FACSIMILE:
(949) 566-0090

E-MAIL:
bhrjr@reedlawcorp.com

October 17, 2008

**VIA ELECTRONIC MAIL AND
FEDERAL EXPRESS**

Re:   **STATEMENT OF DAMAGES**
      Lehman Brothers Special Financing, Inc.
      Rate Cap Agreement dated April 13, 2006
      Easton Investments II, A California Limited Partnership

Dear Sir or Madam:

This Statement of Damages (the "Statement of Damages") is being transmitted to Lehman Brothers Special Financing, Inc. ("LBSF") in accordance with the Rate Cap Agreement (BMA) dated as of April 13, 2006 (the "Hedge") between Easton Investments II ("Buyer") and LBSF as cap provider.  Reference is made to the Notice of Termination dated October 17, 2008 previously transmitted to LBSF today (the "Termination Notice") in connection with the Termination Event as a consequence of the filing by LBSF of a voluntary petition in the United States Bankruptcy Court, Southern District of New York on or about October 3, 2008 seeking relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Proceeding").  All terms used herein and not otherwise defined shall have the meanings in the Hedge.

Pursuant to Sections 10 through 13 of the Hedge, the Buyer:

&#8250; has established the Early Termination Date of October 17, 2008 (the "EDT");

&#8250; has now obtained the Market Quotations through Buyer's hedge consultant, Swap Financial Group, LLC (the "Cap Consultant") by soliciting

LAW OFFICES OF
**BRET H. REED, JR.**
A LAW CORPORATION

Lehman Brothers Special Financing, Inc.
Statement of Damages -- Village Apts.
October 17, 2008
Page 2

replacement cap bids from four (4) Freddie Mac-approved Reference Market-makers for a quotation of the amount each would charge as an up-front payment for entering into an agreement, effective on the EDT, pursuant to which it would make all the payments scheduled to be made by LBSF under the Hedge for the remaining original term of the Hedge; and

➢ demands immediate payment from LBSF today of Buyer's Damages equal to the sum of (i) the Market Quotation and (ii) Buyer's reasonable costs and expense incurred in connection with enforcement of Buyer's rights under the Hedge and as a consequence of the Termination Event, including without limitation, fees and expenses of legal counsel as set forth in Section 13(b) of the Hedge.

Damages have now been quantified. Of the four Reference Market-makers, two passed and two provided quotes. The arithmetic mean of the two quoted bids is $101,000, which is the Market Quotation.

Attached for your review please find (1) Interest Rate Cap Agreement Term Sheet dated October 17, 2008 prepared by the Cap Consultant; (2) interest rate cap price quotes dated as of October 17, 2008 representing the quotations received by the Cap Consultant from the Reference Market-makers; (3) invoice for legal fees and expenses of Buyer's counsel dated October 17, 2008; (4) invoice for legal fees and expenses of Freddie Mac outside counsel dated October 17, 2008; and (5) invoice for cap pricing Market Quotation solicitation services of the Cap Consultant dated October 17, 2008.

Demand is hereby made that LBSF remit immediate payment to Buyer for its Damages in the amount of $114,250, consisting of the following components:

| | | |
|---|---|---|
| $ 101,000 | Market Quotation | |
| 10,000 | Buyer's accrued attorney's fees and expenses | |
| 2,500 | Freddie Mac outside attorney's fees and expenses (Kutak Rock) | |
| 750 | Swap Financial Group, LLC consulting fee | |
| $ 114,250 | Damages | |

LAW OFFICES OF
**BRET H. REED, JR.**
A LAW CORPORATION

Lehman Brothers Special Financing, Inc.
Statement of Damages – Village Apts.
October 17, 2008
Page 3

Please remit payment of the Damages in the sum of $114,250 directly to the Buyer at the following address:

**Easton Investments II**
**c/o G. H. Palmer Associates**
**11740 San Vicente Boulevard, Suite 208**
**Los Angeles, CA 90049**
**Attention: Kirsten Surprenant**

Thank you for your continuing cooperation.

Sincerely,

Bret H. Reed, Jr.

BHR: asr
Attachments
cc:    See Distribution List