**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                  :
In re                                             :        **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,      :        **08-13555 (JMP)**
                                                  :
                        **Debtors.**              :        **(Jointly Administered)**
                                                  :
-------------------------------------------------------------------x
                                                  :
In re                                             :
                                                  :
**LEHMAN BROTHERS INC.**                          :        **Case No. 08-01420 (JMP) SIPA**
                                                  :
                        **Debtor.**               :
                                                  :
-------------------------------------------------------------------x

**STIPULATION AND ORDER IN CONNECTION WITH THE ELEVATION OF**
**CERTAIN INTERESTS IN MACH GEN, LLC AND ASSUMPTION**
**UNDER 11 U.S.C. § 365 OF CERTAIN OPEN TRADES**

WHEREAS, on September 19, 2008 (the "Filing Date"), this proceeding was commenced under the Securities Investor Protection Act of 1970 (as amended, "SIPA") with respect to Lehman Brothers Inc. ("LBI"), and James W. Giddens was appointed as trustee under SIPA (the "Trustee") to administer LBI's estate; thereafter, this proceeding was removed to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, Strategic Value Master Fund, Ltd. ("SVMF") and BDF Limited (f/k/a Man Mac 3 Limited) ("BDF"; together with SVMF, "SVP") assert that SVP acquired participation interests in certain equity interests in MACH Gen, LLC ("MACH Gen"), as identified in Schedule A hereto (such interests, the "MACH Gen Participation Interests"), from Lehman Commercial Paper Inc. ("LCPI"), such that SVP became the beneficial owner of such MACH Gen Participation Interests;

WHEREAS, prior to the Filing Date, LCPI assigned its title ownership of the equity interests underlying the MACH Gen Participation Interests (the "MACH Gen Interests") to LBI;

WHEREAS, prior to the Filing Date, SVMF and BDF entered into two assignment and acceptance agreements (the "A&As") with LBI, copies of which are attached hereto as Exhibit A, pursuant to which the MACH Gen Participation Interests would be "elevated" such that SVP would become the record holder (as well as the beneficial owner) of such MACH Gen Participation Interests (the "Elevation");

WHEREAS, due to the commencement of the above-captioned SIPA liquidation proceeding (the "SIPA Proceeding"), the Elevation of the MACH Gen Participation Interests remains unconsummated;

WHEREAS, prior to the Filing Date, SVP entered into six separate trades (the "Open Trades") with LBI for the purchase from LBI of certain other equity interests in MACH Gen set forth on Schedule B hereto (such interests, the "MACH Gen Open Trade Interests"), which Open Trades remain unsettled;

WHEREAS, the Trustee has determined that it is in the best interests of LBI and LBI's estate that SVP perform its obligations under the Open Trades, and that the Open Trades be completed;

WHEREAS, Barclays Capital Inc. ("BCI") has asserted that the Trustee is obligated to deliver to BCI the MACH Gen Participation Interests and the MACH Gen Open Trade Interests (BCI's claim to the MACH Gen Participation Interests is referred to herein as the "Competing MACH Gen Elevation Claim," and BCI's claim to the MACH Gen Open Trade Interests is referred to herein as the "Competing MACH Gen Open Trade Claim");

WHEREAS, BCI's claim for Undelivered Clearance Box Assets is currently the subject of litigation pursuant to: (i) the Motions of the Trustee, LBHI, and the Official Committee of Unsecured Creditors of LBHI for relief pursuant to Fed. R. Civ. P. 60 or otherwise with respect to the sale order entered in the SIPA Proceeding or the sale order entered in the Chapter 11 cases of LBHI and its affiliated debtors (such cases, the "Chapter 11 Cases") on or about September 20, 2008, including any claims under sections 549 and 550 of the Bankruptcy Code (such orders, collectively, the "Sale Orders,"[1] and such motions, collectively, the "Rule 60 Motions")[2]; (ii) the related adversary proceedings commenced against BCI by the Trustee, LBHI and the LBHI Creditors Committee on or about November 16, 2009 (such adversary proceedings, the "Adversary Proceedings")[3]; and (iii) the Motion of BCI to Enforce the Sale Order and Secure Delivery of All Undelivered Assets, dated as of January 29, 2010 (together with any other pleadings filed or otherwise submitted by BCI in support thereof, the "Enforcement Motion")[4];

WHEREAS, LCPI has filed a proof of claim no. 900006436, against LBI for, inter alia, the MACH Gen Interests (the "LCPI-LBI Proof of Claim") and SVMF and BDF have

---

1 The Sale Orders are comprised of docket entry 258 in Case No. 08-13555 and docket entry 3 in Case No. 08-01420.

2 The Rule 60 Motions are comprised of docket entries 5148, 5149, 5150, 5151, 5154, 5156, 5169, 5170, 5171, 5172, and 5173 in Case No. 08-13555 and docket entries 1682, 1683,1684, 1685, 1686, 1687, 1688, 1689, and 1702 in Case No. 08-01420.

3 The Adversary Proceedings are: Adv. Pro. 09-01732 (JMP), Adv. Pro. 09-01731 (JMP) and 09-01733 (JMP), respectively.

4 The Enforcement Motion is docket entry 6814 in Case No. 08-13555 (JMP) and docket entry 2581 in Case No. 08-01420 (JMP).

filed proof of claim nos. 900005463 and 900005436, respectively, against LBI, for the MACH Gen Participation Interests (the "SVP-LBI Proofs of Claim");

WHEREAS, SVMF and BDF have filed proof of claim nos. 18803 and 18804, respectively, against LCPI, representing the value of the MACH Gen Participation Interests (the "SVP-LCPI Proofs of Claim"); and

WHEREAS, through arm's-length and good faith negotiations, SVP, the Trustee, LCPI and BCI (each, a "Party", and together, the "Parties") have reached the agreements memorialized in this Stipulation and Order.

NOW, THEREFORE, in consideration of the mutual covenants set forth below, IT IS HEREBY STIPULATED AND AGREED BY THE PARTIES HERETO THAT:

1.    The terms and conditions of this Stipulation and Order, and the Parties' respective obligations hereunder, shall become effective only upon (a) the entry of an order of the Bankruptcy Court approving this Stipulation and Order (the "Approval Order") and (b) such Approval Order having become final and not subject to any timely application or motion for a stay, rehearing or appeal, and as to which the time to apply or move for a stay, rehearing or appeal has expired (such order, a "Final Order").

2.    The Trustee agrees to take, or cause to be taken, all actions necessary or appropriate to give effect to the Elevation of the MACH Gen Participation Interests and to complete the Open Trades.

3.    BCI hereby fully and finally (a) withdraws the Competing MACH Gen Elevation Claim and (b) consents to the Elevation of the MACH Gen Participation Interests.  For the avoidance of doubt, BCI hereby acknowledges that it has, and will have, no rights, claims or causes of action against LBI, the Trustee, LCPI or SVP, or any of their respective past, present and future officers, directors, employees, agents, attorneys, representatives, shareholders, parents, subsidiaries, affiliates, predecessors, successors or assigns (to the extent applicable), in the SIPA Proceeding, the Chapter 11 Cases or otherwise, with respect to the MACH Gen Participation Interests.

4.    SVP hereby agrees to take, or cause to be taken, all actions reasonably necessary or appropriate to complete the Open Trades in accordance with the terms and conditions hereof and thereof, including the payment of $5,930,000 ($5,453,275 of which is on account of the Open Trade to which SVMF is party, and $476,725 of which is on account of the Open Trade to which BDF is party) (such amount, the "Payment Amount") in immediately available funds, by wire transfer pursuant to instructions to be provided by the Trustee to SVP, within five business days after the latest of (x) the date on which the Approval Order becomes a Final Order, (y) the date on which the Elevation becomes effective and (z) the date on which the assignments of the MACH Gen Open Trade Interests are consummated and such interests are in the custody of SVP or its designated custodian(s) (such latest date, the "Effective Date").

5.    Nothing in this Stipulation and Order (including any exhibits or schedules thereto) shall (a) bind, be collateral estoppel, res judicata or otherwise prejudice any matter in the Chapter 11 Cases or in the SIPA Proceeding (other than the matters expressly addressed in this

3

Stipulation and Order and the performance thereof); (b) impair or modify the rights and remedies of BCI (or any affiliate of BCI) in respect of any claims that have been asserted, or may be asserted, by BCI (or any affiliates of BCI) against LBI (or the Trustee as trustee for LBI), the debtors in the Chapter 11 Cases (the "Chapter 11 Debtors"), their respective present or former affiliates, or any third parties, with respect to any matter (other than the matters expressly addressed in this Stipulation and Order and the performance thereof) in the Chapter 11 Cases or in the SIPA Proceeding, and, for the avoidance of doubt, all rights of BCI and its affiliates to: (i) seek the dismissal or the denial of the Rule 60 Motions and/or dismissal or other relief in connection with the Adversary Proceedings or (ii) seek enforcement of the Sale Orders and secure delivery of any allegedly undelivered assets thereunder, including without limitation, pursuant to the Enforcement Motion, are hereby reserved; (c) impair or modify any rights and remedies of the Trustee, LBI or any of the Chapter 11 Debtors or any defenses of BCI or its affiliates in respect of or arising out of any claims that have been asserted, or may be asserted against BCI (or any affiliates of BCI), and related recoveries, including, for the avoidance of doubt, (i) any claims and recoveries that are the subject of, related to or arise out of one or more of the Rule 60 Motions, (ii) any claims that are the subject of, related to or arise out of any of the Adversary Proceedings, or (iii) any claims relating to claimed shortfalls in LBI's compliance with customer protection rules.

6.      BCI hereby consents to the Trustee's completion of the Open Trades and the transfer by the Trustee of the MACH Gen Open Trade Interests to SVP in accordance with the terms set forth herein.  BCI agrees not to assert the Competing MACH Gen Open Trade Claim against the MACH Gen Open Trade Interests or against SVP or any of SVP's past, present or future officers, directors, employees, agents, attorneys, representatives, shareholders, parents, subsidiaries, affiliates, predecessors, successors, assigns, and/or persons acting on behalf of any of the foregoing.  The Competing MACH Gen Open Trade Claim shall be preserved against the Payment Amount to the same extent as if the MACH Gen Open Trade Interests had not been transferred by the Trustee to SVP, and BCI and the Trustee each reserve their respective rights and defenses as to the MACH Gen Open Trade Claim in accordance with the reservation of rights set forth in Paragraph 5 above to the same extent as if the MACH Gen Open Trade Interests had not been transferred to SVP.  The Trustee shall not distribute the Payment Amount (a) without the prior written consent of BCI or (b) unless and until a Final Order has been entered resolving the Competing MACH Gen Open Trade Claim.

7.      As soon as reasonably practicable after the Effective Date:  (a) LCPI will amend the LCPI-LBI Proof of Claim to eliminate the claim for the MACH Gen Interests; and (b) SVP will withdraw the (x) SVP-LCPI Proofs of Claim and (y) SVP-LBI Proofs of Claim.

8.      Each of SVMF and BDF represents and warrants to BCI that:  (a) as of the Filing Date, SVP was the beneficial owner of the MACH Gen Participation Interests; (b) prior to the Filing Date, SVP entered into the A&As attached as Exhibit A hereto with LBI pursuant to which the MACH Gen Participation Interests of which SVP was the beneficial owner would be "elevated" such that SVP would become the record holder (as well as the beneficial owner) of the MACH Gen Participation Interests; (c) prior to the Filing Date, SVP and LBI timely delivered the executed A&As to MACH Gen so that the Elevation would be processed by MACH Gen on September 25, 2008, in accordance with MACH Gen's administrative policy;

and (d) as of the Filing Date, no further actions were required to be taken by LBI or SVP in order to effect the Elevation.

9.      Each of SVMF and BDF represents and warrants that:  (a) it has due authority to enter into this Stipulation and Order on behalf of itself; and (b) to the best of its knowledge, as of the date hereof, apart from the Open Trades, it has no debt obligation outstanding to LBI or LBI's estate.

10.     Upon the consummation of the Elevation of the MACH Gen Participation Interests and the Open Trades, each of the Trustee, LBI,  LCPI and SVP (including such Party's past, present and future officers, directors, employees, agents, attorneys, representatives, shareholders, parents, subsidiaries, affiliates, predecessors, successors, assigns, and/or persons acting on behalf of any of the foregoing) irrevocably releases and discharges each other from any and all past, present and future claims, causes of action, demands, damages, attorneys' fees, equitable relief (including but not limited to injunctive and declaratory relief), suits seeking damages, legal relief, and demands or rights, whether known or unknown, liquidated or unliquidated, accrued or unaccrued, fixed or contingent, or based on any statute, regulation or common law of any country, state, province, county, city or municipality, that have been, could have been, may be, or could be alleged or asserted now, in the past, or in the future, related to or in connection with the Elevation of the MACH Gen Participation Interests or the consummation of the Open Trades.

11.     Subject to the reservation of rights contained in Paragraphs 5 and 6 above, each Party expressly reserves all of its rights and defenses with respect to any other claims it might have against the other, other than claims in respect of or in connection with the Elevation of the MACH Gen Participation Interests or the Open Trades.

12.     The Trustee shall seek, and SVP, LCPI and BCI shall support, Bankruptcy Court approval of this Stipulation and Order in the SIPA Proceeding and the Chapter 11 Cases.

13.     Except as otherwise specifically provided for herein, nothing contained in this Stipulation and Order shall create any rights, remedies, or defenses in favor of any party in interest that is not a Party.

14.     This Stipulation and Order shall be binding on the Parties (including the estate of LBI) and their respective successors or assigns, including any subsequent trustee elected or appointed for LBI.

15.     Each Party hereby submits to the jurisdiction of the Bankruptcy Court for any action, suit or proceeding to enforce this Stipulation and Order, and agrees that any such action, suit or proceeding shall be brought only in the Bankruptcy Court.  Each Party hereby irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to venue of any such action, suit, or proceeding brought in the Bankruptcy Court. The Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Stipulation and Order.

16.     Neither this Stipulation and Order, nor any of the terms hereof, nor any negotiations or proceedings in connection herewith, shall constitute or be construed as or be

deemed to be evidence of an admission on the part of any party of any liability or wrongdoing whatsoever, or the truth or untruth, or merit or lack of merit, of any claim or defense of any party; nor shall this Stipulation and Order, or any of the terms hereof, or any negotiations or proceedings in connection herewith, or any performance or forbearance hereunder, be offered or received in evidence or used in any proceeding against any party, or used in any proceeding, or otherwise, for any purpose whatsoever except with respect to the effectuation and enforcement of this Stipulation and Order.  In the event that the Bankruptcy Court declines to approve this Stipulation and Order, this Stipulation and Order shall be null and void ab initio and without any force and effect.

17.     This Stipulation and Order may be signed in counterparts which, when taken as a whole, shall constitute one and the same document, and faxed or PDF signatures shall be deemed originals.

18.     Each individual signing this Stipulation and Order on behalf of any Party acknowledges and, with respect to his or her own signature below, warrants and represents that he/she is authorized to execute this Stipulation and Order in his/her representative capacity, as reflected below and on behalf of the Party indicated.

19.     This Stipulation and Order shall be governed by and shall be interpreted in accordance with the laws of the State of New York, except to the extent that the Bankruptcy Code or SIPA apply, without regard to New York's rules governing conflicts of laws.


[THE REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

Dated: New York, New York
February 4, 2011

STRATEGIC VALUE MASTER FUND, LTD.

By:    Strategic Value Partners, LLC,
        its Investment Manager

By:    <u>/s/ James Varley</u>
        Name: James Varley
        Title: Secretary

BDF LIMITED

By:    <u>/s/ Michael Collins</u>
        Name: Michael Collins
        Title: Director

By: <u>/s/ Lindsee P. Granfield</u>

Lindsee P. Granfield, Esq.
CLEARY GOTTLIEB STEEN &
HAMILTON LLP
One Liberty Plaza
New York, New York  10006
(212)   225 2000

ATTORNEYS FOR BARCLAYS CAPITAL
INC.

By:  /s/ David W. Wiltenburg

David Wiltenburg, Esq.
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York  10004
(212)   837-6000

ATTORNEYS FOR JAMES W. GIDDENS,
ESQ., AS TRUSTEE FOR THE SIPA
LIQUIDATION OF THE BUSINESS OF
LEHMAN BROTHERS INC.


By:  /s/ Jacqueline Marcus

Jacqueline Marcus, Esq.
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212)   310-8000

ATTORNEYS FOR LEHMAN
COMMERCIAL PAPER INC.

SO ORDERED this 15th day of February 2011


     s/ James M. Peck
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT A**

**The Assignment and Acceptance Agreements**

ASSIGNMENT AND ACCEPTANCE
(Non-FERC Order Transfer)[1]

This Assignment and Acceptance (the "Assignment and Acceptance") is dated as of the Effective Date set forth below and is entered into by and between Lehman Brothers Inc., a Delaware corporation (the "Assignor"), and BDF Limited, a Bermuda company (the "Assignee"). Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Amended and Restated Limited Liability Company Agreement of MACH Gen, LLC, (the "Company") dated as of February 22, 2007 (as amended, the "LLC Agreement"). The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Acceptance as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and accepts from the Assignor all of the Assignor's rights, title and interest in, to and under 6,386 Common Units (referred to herein as, the "Assigned Interest"). The transfer of the Assigned Interest by the Assignor to the Assignee is (i) subject to and in accordance with the Standard Terms and Conditions set forth in Annex 1 attached hereto and the LLC Agreement and (ii) subject to the Assignee executing and delivering to the Company a Certificate for Rule 144A Proposed Transferee substantially in the form of Annex 2 hereto and a Joinder Agreement substantially in the form of Annex 3 hereto.

1.    Assignor:              Lehman Brothers Inc.

2.    Assignee:             BDF Limited

3.    Company:            MACH Gen, LLC

4.    Agreement:          Amended and Restated Limited Liability Company Agreement of
                          MACH Gen, LLC, dated as of February 22, 2007, as amended.

5.    Assigned Interest:

| Number of Common Units Assigned | Percentage of Total Common Units |
|---|---|
| 6,386 | 0.6386% |

Effective Date:   September 25, 2008

---

[1] Note that this Form will be used for a transfer of interests in MACH Gen, LLC that (i) is not authorized by the Federal Energy Regulatory Commission ("FERC") in *MACH Gen, LLC*, 113 FERC ¶ 61,138 (November 7, 2005) (Docket No. EC05-97) and (ii) does not require FERC authorization under Section 203 of the Federal Power Act.

*NY1:#3438343v8*
NY467417.1/1695-00629

The terms set forth in this Assignment and Acceptance are hereby accepted and agreed to as of the Effective Date:


ASSIGNOR

LEHMAN BROTHERS INC.

By: _____
    Name: _____
    Title: _____

<u>ASSIGNEE</u>

BDF LIMITED

By: Strategic Value Partners LLC
Its Investment Advisor

By: _____
Name:
Title:

JAMES L. VARLEY
AUTHORIZED SIGNATURE

*NY1:#3438343v8*

Error: Unknown document property name.

Accepted and Agreed to:

MACH Gen, LLC

By:_____
    Ned Kleinschmidt
    Chief Executive Officer

STANDARD TERMS AND CONDITIONS FOR
ASSIGNMENT AND ACCEPTANCE

1. Representations and Warranties.

1.1 Assignor. The Assignor (a) represents and warrants that (i) it is the sole legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim, (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Acceptance and to consummate the transactions contemplated hereby, (iv) the copy of the LLC Agreement which Assignor has delivered to Assignee is the true, correct and complete copy of the operative document for the transactions contemplated hereby and Assignor has delivered to Assignee true, correct and complete copies of all amendments, modifications, and supplements, if any, made to the LLC Agreement since the original date thereof, (v) the transfer of the Assigned Interest does not require a filing with or the approval of (A) the Federal Energy Regulatory Commission ("FERC") pursuant to the Federal Power Act ("FPA") or regulations promulgated thereunder or (B) any state agency under the applicable laws and regulations of any such state other than the declaratory order issued by the New York Public Service Commission on September 6, 2005, MACH Gen, LLC, Case No. 05-E-0834 (Sept. 6, 2005) ("NYPSC Order"), provided, however, that this representation (v) is made to the best of the Assignor's knowledge with respect to the Assignee, (vi) the transfer of the Assigned Interest will not (A) cause the Company or any of its "affiliates" or "subsidiary companies", as such terms are defined in the Public Utility Holding Company Act of 2005 ("PUHCA 2005"), to be subject to or lose their exemption from regulation under PUHCA 2005 or (B) result in loss of the market-based rate authority of a Project Company, provided, however, that this representation (vi) is made to the best of the Assignor's knowledge with respect to the Assignee and (vii) the Assigned Interest is fully paid and non-assessable; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the LLC Agreement, (ii) the financial condition of the Company, any of its subsidiaries or Affiliates or any other Person obligated in respect of the LLC Agreement or (iii) the performance or observance by the Company, any of its subsidiaries or Affiliates or any other Person of any of their respective obligations under the LLC Agreement.

1.2. Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Acceptance and to consummate the transactions contemplated hereby and to become a Member under the LLC Agreement, (ii) from and after the Effective Date, it shall be bound by the provisions of the LLC Agreement as a Member thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Member thereunder, (iii) the transfer of the Assigned Interest does not require a filing with or the approval of (A) the FERC pursuant to the FPA, or regulations promulgated thereunder or (B) any state agency under the applicable laws and regulations of any such state other than the NYPSC Order, provided, however, that this representation (iii) is made to the best of the Assignee's knowledge with respect to the Assignor, (iv) the transfer of the Assigned Interest will not (A) cause the Company or any of its "affiliates" or "subsidiary companies", as such terms are defined in PUHCA 2005, to be subject to or lose their exemption from regulation under PUHCA 2005 or (B) result in loss of the market-based rate authority of a Project Company, provided, however, that representation (iv)(B) is made to the best of the Assignee's knowledge, after due inquiry, (v) the transfer of the Assigned Interest will not result in the Assignee being able to, directly or indirectly, exercise a controlling influence over the management or policies of the Company or any Project Company, (vi) the transfer of the Assigned Interest will not result in the Assignee obtaining, directly or indirectly, operational or commercial control over any of the Project Companies, generating facilities owned by the Project Companies or any portion of the output of those facilities, (vii) it is neither a "public utility" nor acquiring the Assigned Interest on behalf of a "public utility", as such term is defined under the FPA, (viii) to the best of Assignee's knowledge, after due inquiry, it is not an "affiliate" (as such term is defined at 18 C.F.R. § 35.43(a)(1)(ii)) of Merrill Lynch Commodities, Inc., Fortis Energy Marketing & Trading GP or Competitive Power Ventures, Inc., (ix) upon the completion of the transfer of the Assigned Interest and all other transfers by Assignee of equity interests in the Company on the Effective Date, Assignee in aggregate will

NY1:#3438343v8

NY467417.1/1695-00629

own or control less than ten percent (10%) of the Company, (x) to the best of Assignee's knowledge, after due inquiry, upon the completion of the transfer of the Assigned Interest and all other transfers by Assignee and its "affiliates" and "associate companies" (as such terms are defined in PUHCA 2005) of equity interests in the Company on the Effective Date, Assignee and its "affiliates" (as such term is defined at 18 C.F.R. § 35.43(a)(1)(ii)) and "associate companies" (as such term is defined in PUHCA 2005), directly or indirectly, in aggregate will own or control less than ten percent (10%) of the Company and (xi) it has received a copy of the LLC Agreement from the Assignor, and (b) covenants and agrees that (i) to the maximum extent of its control, it or any of its "affiliates" (as such term is defined at 18 C.F.R. § 35.43(a)(1)(ii)) will not take any action that would result in loss of the market-based rate authority of a Project Company and will take all reasonable actions within its control to avoid such a result, (ii) it will cooperate with the Company and its counsel with respect to and expeditiously provide any requested information to comply with any filing requirements and deadlines set forth in a FERC order or required by the FPA or regulations promulgated thereunder, to the extent applicable to the Company and one or more Project Companies and (iii) it will perform all of the obligations which arise on and after the Effective Date which are required to be performed by it as a Member under the LLC Agreement.

2.    <u>Transfer on the Books of the Company</u>.  Upon (i) the Company's receipt of this Assignment and Acceptance executed by the Assignor and the Assignee and (ii) the satisfaction of the transfer provisions contained in the LLC Agreement, the Company will transfer 6,386 Common Units recorded on its books in the name of the Assignor to the name of the Assignee.

3.    <u>Payments</u>.  From and after the Effective Date, the Company shall make all distributions and/or payments in respect of the Assigned Interest to the Assignee.

4.  <u>General Provisions</u>.  This Assignment and Acceptance shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns.  This Assignment and Acceptance may be executed in any number of counterparts, which together shall constitute one instrument.  Delivery of an executed counterpart of a signature page of this Assignment and Acceptance by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment and Acceptance.  This Assignment and Acceptance shall be governed by, and construed in accordance with, the law of the State of New York.

5.  <u>Company as Third-Party Beneficiary</u>.  The parties hereto agree that the Company is a third-party beneficiary under this Assignment and Acceptance, and the Company and its successors or assigns shall have all rights of a party at law or equity with respect to this Assignment and Acceptance.  This Assignment and Acceptance may not be modified or terminated without the written consent of the Company.

6.  <u>Tax Form</u>.  Attached hereto is an Internal Revenue Service form W-8BEN duly completed by the Assignee.

7.  <u>Severability</u>.  The illegality, invalidity or unenforceability of any provision of this Assignment and Acceptance under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

8.  <u>Survival</u>.  All representations and warranties and other provisions made by the parties hereto shall be considered to have been relied upon by the parties, shall be true and correct as of the Effective Date, and shall survive the execution, delivery and performance of the parties under this Assignment and Acceptance.

9.  <u>Notices</u>.  All notices or other information sent to the Assignee under this Assignment and Acceptance and the LLC Agreement shall be addressed to the Assignee at its address, electronic mail or facsimile number specified below or at such other address, electronic mail or facsimile number as the Assignee may subsequently request in writing:

Strategic Value Partners LLC
80 Field Point Road
Greenwich, CT 06830
Attn: Robin Fujiwara
Phone: (203) 615-3500
Fax: (212) 202-4844
Email: legal@svpglobal.com

*NY1:#3438343v8*
NY467417.1/1695-00629

ANNEX 2

## Certificate for Rule 144A Proposed Transferee

The undersigned hereby represents and agrees that:

(1)     the undersigned is acquiring 6,386 Common Units (the "Units") from Lehman Brothers Inc. (the "Transferring Member") and such Units consist of "restricted Securities" under U.S. securities laws inasmuch as such Units are being acquired from the Transferring Member in a transaction not involving a public offering and in reliance on Rule 144A of the Securities Act.;

(2)     the undersigned is a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act of 1933, as amended (the "Securities Act"));

(3)     the undersigned has read and fully understands the terms and conditions of the Amended and Restated Limited Liability Company Agreement of MACH Gen, LLC (the "Company"); dated as of February 22, 2007 (as amended, the "Agreement") and agrees that the transfer of its Units are subject to restrictions contained in Article 12 of the Agreement;

(4)     information related to the Company has been made available to the undersigned (including such information in respect of the Company as is specified pursuant to Rule 144A(d)(4) under the Securities Act)), and the undersigned has been given an opportunity to ask questions of, and receive answers from, the Company and its representatives and the Transferring Member concerning the matter pertaining to the acquisition of Units by the undersigned and have been given the opportunity to review such additional information as was necessary to evaluate the merits and risks of acquiring such Units;

(5)     the undersigned understands and has evaluated the risks associated with acquiring such Units from the Transferring Member;

(6)     the undersigned is acquiring such Units for its own account or the account of a "qualified institutional buyer" and not with a view to the resale thereof, in whole or in part, except in accordance with Item (7) below; and

(7)     the undersigned will not Transfer all or any number of such Units or solicit offers to buy any such Units or otherwise approach or negotiate in respect thereof with any Person or Persons whomsoever, except in a manner that would not violate or cause the Company or any Member to violate applicable federal or state securities law.

Capitalized terms used but not defined in this certificate are used with meanings provided in the Agreement.

BDF LIMITED

By: Strategic Value Partners LLC
Its Investment Advisor

Name:
Title:        JAMES L. VARLEY
              AUTHORIZED SIGNATURE

ANNEX 3

**Joinder Agreement**

The undersigned hereby agrees to be bound as a Member by the terms and conditions of the Amended and Restated Limited Liability Company Agreement of MACH Gen, LLC dated as of February 22, 2007 (as the same may be amended, modified or supplemented in accordance with its terms, the "Agreement") and hereby authorizes this signature page to be attached to a counterpart of the Agreement.

A copy of the Agreement is attached hereto.

BDF LIMITED

By: Strategic Value Partners LLC
Its Investment Advisor

Name
Title

JAMES L. VARLEY
AUTHORIZED SIGNATURE

Attachment

ASSIGNMENT AND ACCEPTANCE
(Non-FERC Order Transfer)[1]

This Assignment and Acceptance (the "Assignment and Acceptance") is dated as of the Effective Date set forth below and is entered into by and between Lehman Brothers Inc., a Delaware corporation (the "Assignor"), and Strategic Value Master Fund, Ltd., a Cayman Islands company (the "Assignee"). Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Amended and Restated Limited Liability Company Agreement of MACH Gen, LLC, (the "Company") dated as of February 22, 2007 (as amended, the "LLC Agreement"). The Standard Terms and Conditions set forth in Annex 1 attached hereto are hereby agreed to and incorporated herein by reference and made a part of this Assignment and Acceptance as if set forth herein in full.

For an agreed consideration, the Assignor hereby irrevocably sells and assigns to the Assignee, and the Assignee hereby irrevocably purchases and accepts from the Assignor all of the Assignor's rights, title and interest in, to and under 33,547 Common Units (referred to herein as, the "Assigned Interest"). The transfer of the Assigned Interest by the Assignor to the Assignee is (i) subject to and in accordance with the Standard Terms and Conditions set forth in Annex 1 attached hereto and the LLC Agreement and (ii) subject to the Assignee executing and delivering to the Company a Certificate for Rule 144A Proposed Transferee substantially in the form of Annex 2 hereto and a Joinder Agreement substantially in the form of Annex 3 hereto.

1.   Assignor:              Lehman Brothers Inc.

2.   Assignee:             Strategic Value Master Fund, Ltd.

3.   Company:             MACH Gen, LLC

4.   Agreement:          Amended and Restated Limited Liability Company Agreement of MACH Gen, LLC, dated as of February 22, 2007, as amended.

5.   Assigned Interest:

| Number of Common Units Assigned | Percentage of Total Common Units |
|---|---|
| 33,547 | 3.3547% |

Effective Date:  September 25, 2008

---

[1] Note that this Form will be used for a transfer of interests in MACH Gen, LLC that (i) is not authorized by the Federal Energy Regulatory Commission ("FERC") in *MACH Gen, LLC*, 113 FERC ¶ 61,138 (November 7, 2005) (Docket No. EC05-97) and (ii) does not require FERC authorization under Section 203 of the Federal Power Act.

*NY1:#3438343v8*
NY467411.1/1695-00629

The terms set forth in this Assignment and Acceptance are hereby accepted and agreed to as of the Effective Date:

ASSIGNOR

LEHMAN BROTHERS INC.

By: _____

Name: _____

Title: _____
        EDUARDO REYES
        AUTHORIZED SIGNATORY

<u>ASSIGNEE</u>

STRATEGIC VALUE MASTER FUND, LTD

By: Strategic Value Partners LLC
Its Investment Advisor

By:
Name:
Title:

JAMES L. VARLEY
AUTHORIZED SIGNATURE

Accepted and Agreed to:

MACH Gen, LLC

By:_____
    Ned Kleinschmidt
    Chief Executive Officer

ANNEX 1

STANDARD TERMS AND CONDITIONS FOR
ASSIGNMENT AND ACCEPTANCE

1. Representations and Warranties.

1.1 Assignor. The Assignor (a) represents and warrants that (i) it is the sole legal and beneficial owner of the Assigned Interest, (ii) the Assigned Interest is free and clear of any lien, encumbrance or other adverse claim, (iii) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Acceptance and to consummate the transactions contemplated hereby, (iv) the copy of the LLC Agreement which Assignor has delivered to Assignee is the true, correct and complete copy of the operative document for the transactions contemplated hereby and Assignor has delivered to Assignee true, correct and complete copies of all amendments, modifications, and supplements, if any, made to the LLC Agreement since the original date thereof, (v) the transfer of the Assigned Interest does not require a filing with or the approval of (A) the Federal Energy Regulatory Commission ("FERC") pursuant to the Federal Power Act ("FPA") or regulations promulgated thereunder or (B) any state agency under the applicable laws and regulations of any such state other than the declaratory order issued by the New York Public Service Commission on September 6, 2005, MACH Gen, LLC, Case No. 05-E-0834 (Sept. 6, 2005) ("NYPSC Order"), provided, however, that this representation (v) is made to the best of the Assignor's knowledge with respect to the Assignee, (vi) the transfer of the Assigned Interest will not (A) cause the Company or any of its "affiliates" or "subsidiary companies", as such terms are defined in the Public Utility Holding Company Act of 2005 ("PUHCA 2005"), to be subject to or lose their exemption from regulation under PUHCA 2005 or (B) result in loss of the market-based rate authority of a Project Company, provided, however, that this representation (vi) is made to the best of the Assignor's knowledge with respect to the Assignee and (vii) the Assigned Interest is fully paid and non-assessable; and (b) assumes no responsibility with respect to (i) any statements, warranties or representations made in or in connection with the LLC Agreement, (ii) the financial condition of the Company, any of its subsidiaries or Affiliates or any other Person obligated in respect of the LLC Agreement or (iii) the performance or observance by the Company, any of its subsidiaries or Affiliates or any other Person of any of their respective obligations under the LLC Agreement.

1.2. Assignee. The Assignee (a) represents and warrants that (i) it has full power and authority, and has taken all action necessary, to execute and deliver this Assignment and Acceptance and to consummate the transactions contemplated hereby and to become a Member under the LLC Agreement, (ii) from and after the Effective Date, it shall be bound by the provisions of the LLC Agreement as a Member thereunder and, to the extent of the Assigned Interest, shall have the obligations of a Member thereunder, (iii) the transfer of the Assigned Interest does not require a filing with or the approval of (A) the FERC pursuant to the FPA, or regulations promulgated thereunder or (B) any state agency under the applicable laws and regulations of any such state other than the NYPSC Order, provided, however, that this representation (iii) is made to the best of the Assignee's knowledge with respect to the Assignor, (iv) the transfer of the Assigned Interest will not (A) cause the Company or any of its "affiliates" or "subsidiary companies", as such terms are defined in PUHCA 2005, to be subject to or lose their exemption from regulation under PUHCA 2005 or (B) result in loss of the market-based rate authority of a Project Company, provided, however, that representation (iv)(B) is made to the best of the Assignee's knowledge, after due inquiry, (v) the transfer of the Assigned Interest will not result in the Assignee being able to, directly or indirectly, exercise a controlling influence over the management or policies of the Company or any Project Company, (vi) the transfer of the Assigned Interest will not result in the Assignee obtaining, directly or indirectly, operational or commercial control over any of the Project Companies, generating facilities owned by the Project Companies or any portion of the output of those facilities, (vii) it is neither a "public utility" nor acquiring the Assigned Interest on behalf of a "public utility", as such term is defined under the FPA, (viii) to the best of Assignee's knowledge, after due inquiry, it is not an "affiliate" (as such term is defined at 18 C.F.R. § 35.43(a)(1)(ii)) of Merrill Lynch Commodities, Inc., Fortis Energy Marketing & Trading GP or Competitive Power Ventures, Inc., (ix) upon the completion of the transfer of the Assigned Interest and all other transfers by Assignee of equity interests in the Company on the Effective Date, Assignee in aggregate will

NY1:#3438343v8

NY467411.1/1695-00629

own or control less than ten percent (10%) of the Company, (x) to the best of Assignee's knowledge, after due inquiry, upon the completion of the transfer of the Assigned Interest and all other transfers by Assignee and its "affiliates" and "associate companies" (as such terms are defined in PUHCA 2005) of equity interests in the Company on the Effective Date, Assignee and its "affiliates" (as such term is defined at 18 C.F.R. § 35.43(a)(1)(ii)) and "associate companies" (as such term is defined in PUHCA 2005), directly or indirectly, in aggregate will own or control less than ten percent (10%) of the Company and (xi) it has received a copy of the LLC Agreement from the Assignor, and (b) covenants and agrees that (i) to the maximum extent of its control, it or any of its "affiliates" (as such term is defined at 18 C.F.R. § 35.43(a)(1)(ii)) will not take any action that would result in loss of the market-based rate authority of a Project Company and will take all reasonable actions within its control to avoid such a result, (ii) it will cooperate with the Company and its counsel with respect to and expeditiously provide any requested information to comply with any filing requirements and deadlines set forth in a FERC order or required by the FPA or regulations promulgated thereunder, to the extent applicable to the Company and one or more Project Companies and (iii) it will perform all of the obligations which arise on and after the Effective Date which are required to be performed by it as a Member under the LLC Agreement.

     2.   Transfer on the Books of the Company. Upon (i) the Company's receipt of this Assignment and Acceptance executed by the Assignor and the Assignee and (ii) the satisfaction of the transfer provisions contained in the LLC Agreement, the Company will transfer 33,547 Common Units recorded on its books in the name of the Assignor to the name of the Assignee.

     3.   Payments. From and after the Effective Date, the Company shall make all distributions and/or payments in respect of the Assigned Interest to the Assignee.

     4. General Provisions. This Assignment and Acceptance shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors and assigns. This Assignment and Acceptance may be executed in any number of counterparts, which together shall constitute one instrument. Delivery of an executed counterpart of a signature page of this Assignment and Acceptance by telecopy shall be effective as delivery of a manually executed counterpart of this Assignment and Acceptance. This Assignment and Acceptance shall be governed by, and construed in accordance with, the law of the State of New York.

     5. Company as Third-Party Beneficiary. The parties hereto agree that the Company is a third-party beneficiary under this Assignment and Acceptance, and the Company and its successors or assigns shall have all rights of a party at law or equity with respect to this Assignment and Acceptance. This Assignment and Acceptance may not be modified or terminated without the written consent of the Company.

     6. Tax Form. Attached hereto is an Internal Revenue Service form W-8BEN duly completed by the Assignee.

     7. Severability. The illegality, invalidity or unenforceability of any provision of this Assignment and Acceptance under the law of any jurisdiction shall not affect its legality, validity or enforceability under the law of any other jurisdiction nor the legality, validity or enforceability of any other provision.

     8. Survival. All representations and warranties and other provisions made by the parties hereto shall be considered to have been relied upon by the parties, shall be true and correct as of the Effective Date, and shall survive the execution, delivery and performance of the parties under this Assignment and Acceptance.

     9. Notices. All notices or other information sent to the Assignee under this Assignment and Acceptance and the LLC Agreement shall be addressed to the Assignee at its address, electronic mail or facsimile number specified below or at such other address, electronic mail or facsimile number as the Assignee may subsequently request in writing:

Strategic Value Partners LLC
80 Field Point Road
Greenwich, CT 06830
Attn:  Robin Fujiwara
Phone: (203) 615-3500
Fax: (212) 202-4844
Email: legal@svpglobal.com

ANNEX 2

### Certificate for Rule 144A Proposed Transferee

The undersigned hereby represents and agrees that:

(1)     the undersigned is acquiring 33,547 Common Units (the "Units") from Lehman Brothers Inc. (the "Transferring Member") and such Units consist of "restricted Securities" under U.S. securities laws inasmuch as such Units are being acquired from the Transferring Member in a transaction not involving a public offering and in reliance on Rule 144A of the Securities Act.;

(2)     the undersigned is a "qualified institutional buyer" (as such term is defined in Rule 144A of the Securities Act of 1933, as amended (the "Securities Act"));

(3)     the undersigned has read and fully understands the terms and conditions of the Amended and Restated Limited Liability Company Agreement of MACH Gen, LLC (the "Company"); dated as of February 22, 2007 (as amended, the "Agreement") and agrees that the transfer of its Units are subject to restrictions contained in Article 12 of the Agreement;

(4)     information related to the Company has been made available to the undersigned (including such information in respect of the Company as is specified pursuant to Rule 144A(d)(4) under the Securities Act)), and the undersigned has been given an opportunity to ask questions of, and receive answers from, the Company and its representatives and the Transferring Member concerning the matter pertaining to the acquisition of Units by the undersigned and have been given the opportunity to review such additional information as was necessary to evaluate the merits and risks of acquiring such Units;

(5)     the undersigned understands and has evaluated the risks associated with acquiring such Units from the Transferring Member;

(6)     the undersigned is acquiring such Units for its own account or the account of a "qualified institutional buyer" and not with a view to the resale thereof, in whole or in part, except in accordance with Item (7) below; and

(7)     the undersigned will not Transfer all or any number of such Units or solicit offers to buy any such Units or otherwise approach or negotiate in respect thereof with any Person or Persons whomsoever, except in a manner that would not violate or cause the Company or any Member to violate applicable federal or state securities law.

Capitalized terms used but not defined in this certificate are used with meanings provided in the Agreement.

STRATEGIC VALUE MASTER FUND, LTD

By: Strategic Value Partners LLC
Its Investment Advisor

Name:
Title:          JAMES L. VARLEY
                AUTHORIZED SIGNATURE

*NY1:#3438343v8*

ANNEX 3

### Joinder Agreement

The undersigned hereby agrees to be bound as a Member by the terms and conditions of the Amended and Restated Limited Liability Company Agreement of MACH Gen, LLC dated as of February 22, 2007 (as the same may be amended, modified or supplemented in accordance with its terms, the "Agreement") and hereby authorizes this signature page to be attached to a counterpart of the Agreement.

A copy of the Agreement is attached hereto.

STRATEGIC VALUE MASTER FUND, LTD

By: Strategic Value Partners LLC
Its Investment Advisor

Name
Title

JAMES L. VARLEY
AUTHORIZED SIGNATURE

Attachment

## SCHEDULE A

**MACH Gen Interests Subject to Elevation**

| Beneficial Owner | Number of Common Units |
|---|---|
| Strategic Value Master Fund, Ltd. | 33,547 Common Units |
| BDF Limited (f/k/a Man Mac 3 Limited) | 6,386 Common Units |

## SCHEDULE B

### The Open Trades

| Trade ID | Trade Date | SVP Counterparty | Lehman Counterparty | Issuer | Facility | Number of Shares |
|---|---|---|---|---|---|---|
| US 5889 | 6/24/2008 | BDF Limited (f/k/a Man Mac 3 Limited) | Lehman Brothers Inc. | MACH Gen, LLC | Common | 255 |
| US 5889 | 6/24/2008 | Strategic Value Master Fund, Ltd. | Lehman Brothers Inc. | MACH Gen, LLC | Common | 1,745 |
| US 5884 | 6/19/2008 | BDF Limited (f/k/a Man Mac 3 Limited) | Lehman Brothers Inc. | MACH Gen, LLC | Common | 140 |
| US 5884 | 6/19/2008 | Strategic Value Master Fund, Ltd. | Lehman Brothers Inc. | MACH Gen, LLC | Common | 3,860 |
| US 5890 | 6/24/2008 | BDF Limited (f/k/a Man Mac 3 Limited) | Lehman Brothers Inc. | MACH Gen, LLC | Common | 255 |
| US 5890 | 6/24/2008 | Strategic Value Master Fund, Ltd. | Lehman Brothers Inc. | MACH Gen, LLC | Common | 1,745 |