**Presentment Date and Time: March 2, 2011 at 12:00 noon (Prevailing Eastern Time)**
**Objection Deadline: March 1, 2011 at 11:00 a.m. (Prevailing Eastern Time)**
**Hearing Date and Time (Only if Objection Filed): March 3, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    **08-13555 (JMP)**
                                            :
                    Debtors.                :    **(Jointly Administered)**
-------------------------------------------------------------------x

**NOTICE OF PRESENTMENT OF STIPULATION AND**
**AGREED ORDER WITH RESPECT TO SERVICES EXTENSION**
**AMENDMENT TO TRANSITION SERVICES AGREEMENT**

     **PLEASE TAKE NOTICE** that the undersigned will present the annexed

stipulation and agreed order with respect to a services extension amendment to a certain

transition services agreement (the "Stipulation and Agreed Order") to the Honorable James M.

Peck, United States Bankruptcy Judge, for approval and signature on **March 2, 2011 at 12:00**

**noon (Prevailing Eastern Time)**.

     **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief

requested in the Stipulation and Agreed Order shall be in writing, shall conform to the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy

Court for the Southern District of New York, shall set forth the name of the objecting party, the

basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by

all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with two hard copies

delivered directly to Chambers), and shall be served upon:  (i) Chambers of the Honorable James

M. Peck ("Chambers"), One Bowling Green, New York, New York 10004, Courtroom 601; (ii)

Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Lori R.

Fife, Esq., and Garrett Fail, Esq.; (iii) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Tracy

Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank,

Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:

Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan R. Fleck, Esq.; and (v) Cleary

Gottlieb Steen & Hamilton LLP, One Liberty Plaza, New York, New York 10006, Attn:  Lindsee

P. Granfield, Esq., so as to be filed and received no later than **March 1, 2011 at 11:00 a.m.**

**(Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Stipulation and

Agreed Order is not received by the Objection Deadline, the relief requested shall be deemed

unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a

hearing.

PLEASE TAKE FURTHER NOTICE that if a written objection is timely filed

prior to the Objection Deadline, a hearing (the "Hearing") will be held to consider the Stipulation

and Agreed Order on **March 3, 2011 at 10:00 a.m. (Prevailing Eastern Time)** before the

Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004.

    **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to

attend the Hearing, and failure to appear may result in relief being granted or denied upon

default.

Dated: February 23, 2011
   New York, New York

        /s/ Lori. R. Fife      
        Lori R. Fife

        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Debtors
        and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al., :        Case No. 08-13555 (JMP)
                                        :
        Debtors.                        :        (Jointly Administered)
                                        :
----------------------------------------------------------------x
```

### STIPULATION AND AGREED ORDER WITH RESPECT TO SERVICES EXTENSION AMENDMENT TO TRANSITION SERVICES AGREEMENT

WHEREAS, commencing on September 15, 2008 and periodically thereafter, Lehman Brothers Holdings Inc. ("LBHI") and certain of its Affiliates[1] commenced cases before the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), which cases are proceeding under jointly administered case number 08-13555 (JMP) (the "Chapter 11 Cases", and the debtors in such cases, the "Chapter 11 Debtors");

WHEREAS, Barclays Capital Inc. ("BarCap"), LBHI, Lehman Brothers Inc. ("LBI"), and LB 745 LLC entered into an Asset Purchase Agreement dated September 16, 2008 (as clarified and amended, the "APA");

WHEREAS, BarCap and LBHI have entered into that certain Transition Services Agreement, dated September 22, 2008 (the "LBHI TSA") that was authorized by the Bankruptcy Court pursuant to the Sale Order;

WHEREAS, the LBHI TSA is shortly due to expire by its terms;

WHEREAS, the parties hereto, subject to Bankruptcy Court approval hereof, seek to

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the TSA Services Extension Amendment (as defined below).

amend the LBHI TSA to extend the provision by BarCap of certain specified services, pursuant

to the terms and conditions of that certain letter amendment, dated as of February 23, 2011,

attached hereto as Exhibit 1 (the "TSA Services Extension Amendment").

**THE PARTIES, SUBJECT TO BANKRUPTCY COURT APPROVAL HEREOF, BY AND THROUGH THEIR RESPECTIVE ATTORNEYS, HEREBY STIPULATE, AGREE AND, UPON ENTRY BY THE BANKRUPTCY COURT, IT SHALL BE ORDERED THAT:**

1.      Upon entry of this Stipulation and Agreed Order, the TSA Services Extension

Amendment is approved, and to the extent required, the Chapter 11 Debtors are further

authorized to deliver, implement, and perform any and all obligations, instruments, documents

and papers and to take any and all actions reasonably necessary or appropriate to consummate

the TSA Services Extension Amendment and perform any and all obligations contemplated

therein.

2.      For the avoidance of doubt, claims asserted by BarCap arising under the TSA

Services Extension Amendment shall constitute costs and expenses of the administration of the

relevant Chapter 11 Debtor's or Chapter 11 Debtors' estate(s) pursuant to Sections 503(b) and

507(a)(2) of the Bankruptcy Code.

3.      Nothing in this Stipulation and Agreed Order or the TSA Services Extension

Amendment shall (a) bind, be collateral estoppel, res judicata or otherwise prejudice any matter

in the Chapter 11 Cases or in the SIPA liquidation proceeding for LBI (the "LBI Case") (other

than the matters expressly addressed in the TSA Services Extension Amendment and the

performance thereof); (b) impair or modify the rights and remedies of BarCap (or any Affiliate

of BarCap) or any defenses of James W. Giddens as trustee for the liquidation of LBI under

SIPA (the "Trustee"), LBI or any of the Chapter 11 Debtors or their Affiliates in respect of any

claims that have been asserted, or may be asserted, by BarCap (or any Affiliates of BarCap)

2

against LBI (or the Trustee as trustee for LBI), the Chapter 11 Debtors, their respective present

or former Affiliates, or any third parties, with respect to any matter (other than the matters

expressly addressed in the TSA Services Extension Amendment and the performance thereof) in

the Chapter 11 Cases or in the LBI Case, and for the avoidance of doubt, all rights of BarCap and

its Affiliates to (i) seek the dismissal, denial or other relief with respect to the Rule 60 Motions

and/or dismissal or other relief in connection with the Adversary Proceedings, or (ii) seek

enforcement of the Sale Order and secure delivery of any allegedly undelivered assets

thereunder, including without limitation, pursuant to the Enforcement Motion, are hereby

reserved; (c) impair or modify any rights and remedies of the Trustee, LBI or any of the Chapter

11 Debtors or any defenses of BarCap or its Affiliates in respect of or arising out of any claims

that have been asserted or may be asserted against BarCap (or any Affiliates of BarCap), and

related recoveries, including, for the avoidance of doubt, (i) any claims and recoveries that are

the subject of, related to or arise out of one or more of the Rule 60 Motions, (ii) any claims that

are the subject of, related to or arise out of any of the Adversary Proceedings, or (iii) any claims

relating to claimed shortfalls in LBI's compliance with customer protection rules.

4.    The failure to specifically describe or include in this Stipulation and Agreed Order

any particular provision of the TSA Services Extension Amendment shall not diminish or impair

the effectiveness of such provision, it being the intent of the Bankruptcy Court and the parties

that the Chapter 11 Debtors are authorized to perform under the TSA Services Extension

Amendment in its entirety.

5.    Each person who executes this Stipulation and Agreed Order on behalf of a party

hereto represents that he or she is duly authorized to execute this Stipulation and Agreed Order

on behalf of such party.

3

6.      This Stipulation and Agreed Order shall be binding on all parties in interest and their respective successors and assigns, including without limitation, any Chapter 7 or Chapter 11 trustees, and any plan agent, administrator or trustee no matter how denominated.

7.      Notwithstanding anything to the contrary in the Federal Rules of Bankruptcy Procedure (including without limitation Rule 6004(h)), this Stipulation and Agreed Order shall take effect immediately upon entry.

8.      This Stipulation and Agreed Order shall be interpreted, construed, and enforced exclusively in accordance with the laws of the State of New York, except to the extent that the Bankruptcy Code applies.

9.      The Bankruptcy Court shall retain jurisdiction to resolve any disputes or controversies arising from or related to this Stipulation and Agreed Order and the TSA Services Extension Amendment.

**AGREED TO:**

Dated: February 23, 2011
      New York, New York


/s/ Lori R. Fife_____     /s/ Lindsee. P. Granfield_____
Lori R. Fife, Esq.                          Lindsee. P. Granfield, Esq.
Garrett Fail, Esq.                          Lisa M. Schweitzer, Esq.

WEIL, GOTSHAL & MANGES LLP        CLEARY GOTTLIEB STEEN &
767 Fifth Avenue                          HAMILTON LLP
New York, New York 10153             One Liberty Plaza
Telephone:  (212) 310-8000            New York, NY 10006
Facsimile:  (212) 310-8007             Telephone:  (212) 225-2000
                                    Facsimile:  (212) 225-3999

*Attorneys for the Chapter 11 Debtors*      *Attorneys for Barclays Capital, Inc.*
*and Debtors in Possession*

4

**SO ORDERED:**

Dated: March __, 2011
      New York, New York

_____

UNITED STATES BANKRUPTCY JUDGE

**Exhibit 1**

EXECUTION VERSION

Barclays Capital Inc.
745 Seventh Avenue
New York, NY   10019

February 23, 2011 (the "**Execution Date**")

Lehman Brothers Holdings Inc.
1271 Sixth Avenue
New York, NY  10020
Attention:  William B. Gordon and Jeffrey Welikson, Esq.

Ladies and Gentlemen:

Reference is made to the Transition Services Agreement between Lehman Brothers Holdings Inc. ("**LBHI**") and Barclays Capital, Inc. ("**BarCap**") dated September 22, 2008, as amended by the TSA Amendment No. 1 between LBHI, James W. Giddens as Trustee (the "**Trustee**") for the liquidation of the assets of Lehman Brothers Inc. ("**LBI**") and BarCap dated February 23, 2011 (such amendment, the "**Access Amendment**") (as amended, the "**TSA**").

LBHI and BarCap wish to extend the provision of certain specified services by amending the TSA according to the provisions of this letter amendment (the "**Letter Amendment**").  Therefore as of the Execution Date, subject to entry of the Approval Order (as defined below) by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") in the jointly administered cases of LBHI and certain of its affiliates pending under Case No. 08-13555 (the "**Chapter 11 Cases**") and effective as of March 22, 2011 (the "**Effective Date**"), BarCap and LBHI hereby amend the TSA and agree as follows:

1.  All terms not defined herein shall have the meaning set forth in the TSA.

2.  The services set forth on Exhibit A hereto shall be deemed "**Letter Amendment Services**" pursuant to this Letter Amendment.

3.  Notwithstanding anything to the contrary in Section 8.01(a) of the TSA, the Letter Amendment Services shall continue to be provided by BarCap from the period commencing on March 22, 2011 until the earlier of (a) June 30, 2011 or (b) termination of all Letter Amendment Services pursuant to Article 8 of the TSA (other than pursuant to Section 8.01(a)(x)-(z)) (the "**Termination Date**"), provided, that the Domain Name Services (as defined in Exhibit A) (but no other Letter Amendment Services) shall continue until March 22, 2015, and all the provisions of this Letter Amendment shall continue to apply thereto until such date.  Other than in respect of the Letter Amendment Services as set forth herein and the Access as set forth and defined in the Access Amendment, the TSA shall expire on March 22, 2011.  Notwithstanding anything to the contrary herein or in the TSA, the Letter Amendment Services shall constitute BarCap Services and shall be subject to all of the terms and conditions of the TSA applicable to BarCap Services. From and after the Termination Date, BarCap shall have no further obligation to provide the Letter Amendment Services (other than the Domain Name Services) or any other services (including Services) and the TSA shall expire, except as expressly set forth in the Access Amendment.

4.  Notwithstanding anything in the TSA to the contrary (including without limitation Sections 4.01(a)(ii) (the first (ii) of that provision), 8.01(b), 8.01(c) and 8.02) (a)(i) Schedule 1 hereto shall set out the Service Charges for all Letter Amendment Services (except the Domain Name Services) as of and after March 22, 2011 through and including June 30, 2011 (the "**Extension Period**") and (ii) Exhibit A hereto shall set out the Website Charges (as defined therein) as of and after March 22, 2011 through and including March 22, 2015, and (b) LBHI agrees to pay the Service Charges for the full Extension Period, regardless of whether the Letter Amendment Services are required by any Recipient for the entire Extension Period or whether Recipient terminates this Letter Amendment or any Letter Amendment Service prior to the end of the Extension Period. For the avoidance of doubt, the Service Charges hereunder shall be for the Services listed in Exhibit A and Access Charges (as defined in the Access Amendment) under the Access Amendment shall be for Access provided thereunder, provided that Website Charges shall be treated in accordance with Exhibit A hereto.

5.  Notwithstanding Section 4.01(b) of the TSA, BarCap may deliver an invoice to LBHI thirty (30) days in advance for the Service Charges due to BarCap under this Letter Amendment for the amounts set forth in Schedule 1 hereto and such payment shall be made within thirty (30) days after receipt of such invoice, provided that the Website Charges, if any, shall be invoiced under and pursuant to the Access Amendment. For the avoidance of doubt, the invoice for the amount in Line 1 of Schedule 1 may be delivered at any time prior to seven (7) days before the Effective Date, and notwithstanding Section 4.01(b) of the TSA, shall be paid by LBHI on or prior to March 22, 2011. BarCap shall be under no obligation to perform the Letter Amendment Services unless such timely payments are made by LBHI.

6.  Notwithstanding anything to the contrary in Section 9.10 of the TSA, neither this Letter Amendment nor the TSA, may be assigned by (i) LBHI without the express written consent of BarCap or (ii) BarCap without the express written consent of LBHI. Notwithstanding the foregoing, (a) LBHI may assign this Letter Amendment to a single successor or Affiliate pursuant to a chapter 11 plan with the written consent of BarCap, which consent shall not be unreasonably withheld, and (b) BarCap may assign this Letter Amendment without the prior written consent of LBHI to an Affiliate of BarCap or in connection with any merger, consolidation, reorganization, or sale of substantially all of the assets relating to the Business, provided that such assignee agrees in writing to be bound by the terms and conditions of this Letter Amendment (including as it relates to the rights granted to LBHI).

Additional Provisions

1.  By signing below, LBHI represents and warrants that subject to entry of the Approval Order, it is authorized to enter into and perform under this Letter Amendment with binding effect on behalf of LBHI. LBHI acknowledges and agrees that (a) to its knowledge, the Services performed prior to and through and including the Execution Date have been performed in accordance with the terms of the TSA and (b) it is not aware of any claims under the TSA. LBHI, as of the Execution Date, expressly and irrevocably waives any and all known claims against BarCap and each of its Affiliates in connection with BarCap's provision of Services and other acts, omissions or obligations under the TSA, and further waives any right to challenge any invoices issued by Barclays to LBHI more than sixty (60) days prior to the Execution Date.

2.  LBHI hereby acknowledges and agrees that (a) at LBHI's request, BarCap is modifying the method by which the LDAP database is populated with certain employee- and/or user-related information; (b) between the Execution Date and the Effective Date LBHI will, as requested by BarCap, cooperate and assist in such modification; and (c) after the Effective Date, to the extent that there are any issues arising out of such modifications, any costs associated with such modification and rectification of such issues shall be LBHI's responsibility and paid by LBHI, shall be in addition to the Service Charges hereunder, and shall be charged at the rates, and handled in accordance with the protocols, set forth in the Access Amendment.

3.  For the purposes of this Section 3:

"**Rule 60 Motions**" shall mean the motions of the Trustee, LBHI and the Official Committee of Unsecured Creditors of LBHI for relief pursuant to Fed. R. Civ. P. 60 or otherwise with respect to the Sale Orders, comprised of (i) docket entries 5148, 5149, 5150, 5151, 5154, 5156, 5169, 5170, 5171, 5172, and 5173 in the Chapter 11 Cases, and (ii) docket entries 1682, 1683,1684, 1685, 1686, 1687, 1688, 1689, and 1702 in the LBI Case;

"**Adversary Proceedings**" shall mean, collectively, those cases proceeding before the Bankruptcy Court under case numbers Adv. Pro. 09-01732 (JMP), Adv. Pro. 09-01731 (JMP) and 09-01733 (JMP);

"**Sale Order**" shall mean, collectively, (i) that certain Order Under 11 U.S.C. Sections 105(a), 363 and 365 and Federal Rules of Bankruptcy Procedure 2002, 6004, and 6006 Authorizing and Approving (A) the Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, entered by the Bankruptcy Court on September 20, 2008 at Docket Item 258 in Case No. 08-13555 (JMP), and (ii) that certain Order Approving and Incorporating by Reference for the Purposes of this Proceeding, an Order Authorizing the Sale of Purchased Assets and Other Relief in the Lehman Brothers Holdings, Inc. Chapter 11 Proceeding, entered by the Bankruptcy Court on September 20, 2008 at Docket Item 69 in Case No. 08-1420 (JMP); and

"**Enforcement Motion**" shall mean the Motion of BCI to Enforce the Sale Order and Secure Delivery of All Undelivered Assets, dated as of January 29, 2010 (docket entry 6814 in the Chapter 11 Cases and docket entry 2581 in the LBI Case), together with any other pleadings filed or otherwise submitted by BarCap in support thereof.

Nothing in this Amendment shall (a) bind, be collateral estoppel, res judicata or otherwise prejudice any matter in the Chapter 11 Cases; (b) impair or modify the rights and remedies of BarCap (or any Affiliate of BarCap) or any defenses of the Trustee, LBI or any of the Chapter 11 Debtors or their Affiliates in respect of any claims that have been asserted, or may be asserted, by BarCap (or any Affiliates of BarCap) against LBI (or the Trustee as trustee for LBI), the debtors in the Chapter 11 Cases (the "**Chapter 11 Debtors**"), their respective present or former Affiliates, or any third parties, with respect to any matter (other than the matters expressly addressed in this Amendment and the performance thereof) in the Chapter 11 Cases, and for the avoidance of doubt, all rights of BarCap and its Affiliates to (i) seek the dismissal, denial or other relief with respect to of the Rule 60 Motions and/or dismissal or other relief in connection with the Adversary Proceedings, or (ii) seek enforcement of the Sale Order and secure delivery of any allegedly undelivered assets thereunder, including without limitation, pursuant to the Enforcement Motion, are hereby reserved; (c) impair or modify any rights and remedies of any of the Chapter 11 Debtors or any defenses of BarCap or its Affiliates in respect of or arising out of any claims that have been asserted, or may be asserted against BarCap (or any Affiliates of BarCap), and related recoveries,

3

including, for the avoidance of doubt, (i) any claims and recoveries that are the subject of, related to or arise out of one or more of the Rule 60 Motions, (ii) any claims that are the subject of, related to or arise out of any of the Adversary Proceedings, or (iii) any claims relating to claimed shortfalls in compliance with customer protection rules.

4.  Except as otherwise expressly set forth herein, the respective rights and obligations of BarCap and LBHI set forth in the TSA and the DAA (as defined below), as applicable, shall remain in full force and effect, and this Letter Amendment shall not be construed to grant (a) any additional rights to any applications, data or services to LBHI or (b) any rights to any other entity to receive or use any applications, data or services.  This Letter Amendment shall not constitute an amendment or waiver of any provision of the TSA, except as expressly set forth herein.  As of the Effective Date, the TSA shall thereupon be deemed to be amended and supplemented as hereinabove set forth as fully and with the same effect as if the amendments and supplements made hereby were originally set forth in the TSA, and this Letter Amendment and the TSA shall henceforth be read, taken and construed as one and the same instrument, but such amendments and supplements shall not operate so as to render invalid or improper any action heretofore taken under the TSA.  In the event of any inconsistency between this Letter Amendment and the TSA with respect to the matters set forth herein, this Letter Amendment shall take precedence, but otherwise the terms and conditions of the remainder of the TSA shall continue to apply with respect to the terms of this Letter Amendment.  References to the TSA in any agreements or other documents to which BarCap and LBHI are parties, or amendments thereto, shall be deemed to mean the TSA as amended by this Letter Amendment, except as may otherwise be expressly agreed upon by the parties.

5.  Promptly following execution hereof, LBHI shall seek entry by the Bankruptcy Court of a stipulated order, in form and substance acceptable to BarCap, providing, among other things, authorization and approval for LBHI to enter into and perform under this Letter Amendment (such stipulated order, the "**Approval Order**").  For the avoidance of doubt, such Approval Order may be submitted to the Bankruptcy Court on notice of presentment.  Each of the parties shall cooperate, assist and consult with one another in connection with such efforts to obtain entry of the Approval Order.  Notwithstanding any provision of this Amendment to the contrary, the obligations of the parties under this paragraph are binding and effective on and from the Execution Date.  If approval of this Letter Amendment is denied by the Bankruptcy Court, or the Approval Order is not entered on or before March 22, 2011, each of the parties reserves all of their respective rights regarding the subject matter hereof, and this Letter Amendment shall be void ab initio, with no further force and effect.

6.  Each party hereto covenants and agrees that, without any additional consideration, it shall execute and deliver any further legal instruments and perform any acts that are or may become reasonably necessary to effectuate this Letter Amendment.

7.  For the avoidance of doubt, (a) the Letter Agreement regarding data access between Lehman Brothers Holdings Inc. and BarCap dated September 18, 2009 (the "**DAA**") shall continue in full force and effect pursuant to its terms, and Sections 1 through 6 thereof shall govern the Letter Amendment Services hereunder and (b) any agreement(s) between BarCap and LBHI that refer to or address the expiration or termination of the TSA (including the Access Amendment) shall refer to or address March 22, 2011 as the date of such expiration or termination, irrespective of whether Letter Amendment Services are being provided pursuant to this Letter Amendment after March 22, 2011.

8.  This Letter Amendment may be executed in one or more counterparts, all of which, with respect to a particular document, shall be considered one and the same instrument and an original.  An electronic copy of a signature received in Portable Document Format (PDF) or a copy of a signature received via a fax machine shall be deemed to be of the same force and effect as an original signature on an

original executed document.

Please countersign this letter in the space indicated below to acknowledge your agreement to and acceptance of the foregoing terms.

Yours sincerely,

**BARCLAYS CAPITAL INC.**

By: _____
     Name: Ian Lowitt
     Title: Managing Director


ACKNOWLEDGED AND AGREED


**LEHMAN BROTHERS HOLDINGS INC.**


By: _____
     Name:
     Title:

[SIGNATURE PAGE TO LETTER AMENDMENT]

Please countersign this letter in the space indicated below to acknowledge your agreement to and acceptance of the foregoing terms.

Yours sincerely,

**BARCLAYS CAPITAL INC.**

By:    _____

  Name:

  Title:

ACKNOWLEDGED AND AGREED

**LEHMAN BROTHERS HOLDINGS INC.**

By:   _Steven S Cohn_

  Name:   _STEVEN COHN_

  Title:   _Senior Vice President_

[SIGNATURE PAGE TO LETTER AMENDMENT]

# **Exhibit A**

The Letter Amendment Services shall consist of:

1.      The Services listed on the attached spreadsheet, where the "List of Applications Requested by the TSA Counterparty" shall be the applications set forth in the table below; and

"List of Applications Requested by the TSA Counterparty"

| |
|---|
| Summit |
| Lens |
| HJM |
| RAT |
| Rosetta |
| OptModel |
| FI Midas |
| SnM |
| Equity Derivatives Soft Data (Equity Midas) |
| Muni Suite Muni Deriv |
| SmartTicket |

2.      Use commercially reasonable efforts to, until March 22, 2015, retain the www.lehman.com domain name and maintain redirects consistent with past practice and update and/or change the website at www.lehman.com (such retention, maintenance, updating and changing, the "**Domain Name Services**"). All requests for updates or changes to the website at www.lehman.com shall be treated and charged as if they were a request for Access to an SME under and in accordance with the rates and protocols set forth in the Access Amendment (such charges, "**Website Charges**").  BarCap shall have no liability to LBHI or any of its Affiliates in connection with the Domain Name Services or failure to maintain the Domain Name Services or any threats, claims, disputes or proceedings related thereto.

## Schedule 1

|    | Period | Service Charges |
|----|--------|-----------------|
| 1. | March 22, 2011 through April 22, 2011 | $827,899 |
| 2. | April 23, 2011 through May 22, 2011 | $827,899 |
| 3. | May 23, 2011 through June 30, 2011 | $1,034,874 |

| OID | S1 | FunctName | Contact | Next Steps | Recurring / Ad Hoc | SubfunctName | ServName | ServiceState | ServDesc | Product | CriticalSystems | VendorDependency | LBHI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Equity Derivatives | Equity Derivatives Soft Data | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Credit Derivatives | | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Corporate Loans | Credit Derivatives System (CDS) | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | All Products | Midas | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Commodities | | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Sec Prod - CMOS/ABS/CMBS | | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Sec Prod - Derivatives | ESM Pricing , ESM Product | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Sec Prod - TBA/Pass-Throughs | | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | FX - Flow & Exotics | | | Yes |
| 1100 | 23 | Retained Tech-Front Office | skip | | | Technology Access: Market Data (retained) | Market Data | Extend | Provide access to:<br>• Barclays' internally derived (pre-pricing) market data on an end-of-day daily basis including traders marks and external market prices as appropriate<br>• Regular daily market color in the form of market commentary or research<br><br>**LBHI and the LBHI entities shall not remarket, repurpose or redistribute any third party market data made available to them. | Whole Loans | ESM Pricing , ESM Product | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Whole Loans | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Munis | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Interest Rate Products | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Equity Derivatives | | | Yes |

| OID | S1 | FunctName | Contact | Next Steps | Recurring / Ad Hoc | SubfunctName | ServName | ServiceState | ServDesc | Product | CriticalSystems | VendorDependency | LBHI |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | FX - Flow & Exotics | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Commodities | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Corporate Loans | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Credit Derivatives | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Sec Prod - TBA/Pass-Throughs | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | All Products | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Sec Prod - CMOS/ABS/CMBS | | | Yes |
| 1104 | 23 | Retained Tech-Front Office | skip | | | Ad-Hoc Support (retained) | Provide ad-hoc systems and pricing support | Extend | Provide ad-hoc pricing and pricing systems support as needed | Sec Prod - Derivatives | | | Yes |
| 2069 | 27 | IT Applications | skip | | | Application Developer Support | Application Developer Support | Extend | Provide application developer support for the applications identified on the List of Applications Requested by the TSA Counterparty, a copy of which is attached hereto and which may be updated from time to time by agreement of the parties.  Application developer support includes production support and maintenance as well as transition support. | (Not applicable) | | | Yes |
| 2070 | 27 | IT Applications | skip | | | Application Hosting | Application Hosting | Extend | Host the applications identified on the List of Applications Requested by the TSA Counterparty, a copy of which is attached hereto and which may be updated from time to time by agreement of the parties.  Application hosting entails the production operation of the requested applications and their associated data feeds and, as such, includes the following types of support as applicable to the specific application:<br><br>- Data center support<br>- Application lifecycle management<br>- Business intelligence services (data integration, ETL, and reporting)<br>- Job scheduling<br>- Distributed platform support (Linux, Solaris, and Windows Server)<br>- Storage services (SAN and tapes/backup)<br>- Server operations<br>- Systems management<br>- Market data services support<br>- Database support<br>- Middleware support<br>- Network support | (Not applicable) | | | Yes |