UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                            :
In re                                                       :    Chapter 11 Case No.
                                                            :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                    :    08-13555 (JMP)
                                                            :
                    Debtors.                                :    (Jointly Administered)
                                                            :
------------------------------------------------------------x

### FOURTH SUPPLEMENTAL DECLARATION OF BARRY W. RIDINGS IN CONNECTION WITH THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES & CO. LLC AS INVESTMENT BANKER TO THE DEBTORS

Pursuant to sections 327 and 329 of the Bankruptcy Code, Bankruptcy Rules 2014(a) and 2016(b) and 28 U.S.C. § 1746, Barry W. Ridings declares:

1.  I am a Managing Director and Vice Chairman of Investment Banking of the firm Lazard Frères & Co. LLC ("Lazard"), which has its principal office at 30 Rockefeller Plaza, New York, New York 10020. I am authorized to execute this declaration on behalf of Lazard in support of the amendment to the supplemental application to amend the engagement letter of Lazard as investment banker to Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively, "Lehman"), *nunc pro tunc* to June 1, 2010 (the "Application").[1]

2.  I previously filed affidavits with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") in support of Lazard's employment on November 13, 2008, January 30, 2009, February 2, 2010, and October 15, 2010 (collectively, the "Affidavits"). The Affidavits are incorporated by reference as if set forth fully herein.

3.  By order, dated December 17, 2008, the Bankruptcy Court approved Lehman's employment and retention of Lazard *nunc pro tunc* to September 15, 2008. I have had primary

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Application.

responsibility for Lazard's engagement since Lazard began work for Lehman in September 2008. Unless otherwise stated in this declaration, I have personal knowledge of the facts set forth herein or have been informed of such matters by professionals of Lazard.

4. The services provided by Lazard during the pendency of the Debtors' chapter 11 cases have been described in detail in Lazard's applications for allowance of compensation and for reimbursement of actual and necessary expenses incurred through May 31, 2010, filed on April 10, 2009, August 14, 2009, December 15, 2009, April 16, 2010, August 16, 2010, and September 24, 2010. Lazard will continue to describe the services performed in later periods in subsequent applications to the Court in accordance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules and orders of the Bankruptcy Court.

5. The Debtors' engagement letter with Lazard, which was approved by the Bankruptcy Court, provided, among other things, that Lazard was entitled to Monthly Compensation in the amount of $400,000 per month for the 24-month period ending on September 1, 2010, and $250,000 per month thereafter. As disclosed in my Affidavit, dated February 3, 2010, however, after consultation with the Debtors and representatives of the Creditors' Committee appointed in the Debtors' chapter 11 cases, Lazard previously agreed to reduce its Monthly Compensation to $200,000 per month, effective as of December 1, 2010. Lazard's decision to voluntarily reduce its Monthly Compensation was due, in part, to a reduction in the volume of services required by the Debtors of Lazard at that time.

6. At the Debtors' request, Lazard consulted and began working with the Debtors and the Creditors' Committee regarding LAMCO prior to LAMCO's formation. Lazard's services in this regard, which included contacts or meetings with approximately 40 third parties,

were actual and necessary. Indeed, in a motion filed with the Bankruptcy Court, dated March 15, 2010, the Debtors disclosed that

> LBHI and the Creditors' Committee are in the process of exploring a strategic relationship with third parties with respect to LAMCO, including the possibility of selling an equity stake in LAMCO to a potential strategic partner, or otherwise entering into mutually beneficial ventures and arrangements with third parties. A strategic relationship with a highly regarded third party would enhance the goodwill and brand value of LAMCO and thereby potentially enhance LAMCO's ability to attract and secure new business and enhance the equity value of LAMCO held by LBHI. New business would, in turn, further LAMCO's efforts to retain its skilled workforce.

(LAMCO Mot. ¶ 6.) Lazard brought independence and its M&A experience to the exploration process and provided value to the Debtors, as the Debtors contemplated that profits from a strategic relationship or sale

> would be available to offset the costs already expended in the development of LBHI's asset management capabilities and infrastructure, to reduce the costs of managing the Debtors' assets, and to preserve and maximize the Debtors' estates for distribution to the Debtors' creditors.

(*Id.* ¶ 33.) Lazard's work in connection with the LAMCO marketing process during this period included the following activities:

- In February and March 2010, Lazard contacted numerous potential partners in order to elicit interest in the LAMCO sale process. These contact efforts included telephonic and electronic communications and the transmission of "teaser" marketing materials. With the assistance of counsel to the Debtors, Lazard also facilitated the execution and negotiation of non-disclosure agreements with interested parties. After execution of non-disclosure agreements, Lazard facilitated "first-round" introductory meetings between interested parties and LAMCO management and assisted in the preparation of materials for such meetings. After the Bankruptcy Court's entry of an order approving the creation of LAMCO on April 15, 2010, Lazard facilitated more detailed "second-round" meetings with a smaller number of parties that had expressed nonbinding indications of interest in a transaction. These meetings proceeded into May.

- By June 2010, Lazard's and LAMCO's marketing efforts had focused on one potential partner that was discussed with the Creditors' Committee and its advisors for their consideration. Negotiations with that party – and associated consultations with the Creditors' Committee its advisors – entailed extensive discussions, in-person meetings and preparation of draft agreements. The parties were unable to come to

terms on a transaction, and as a result Lazard re-engaged in the broader marketing process. This process revisited many participants in the Initial Marketing Process and also included new parties that subsequently contacted Lazard expressing interest in LAMCO. As part of this re-engaged process, which occurred between the months of July and September, Lazard had discussions with over 15 potential partners, over half of whom executed non-disclosure agreements and held meetings with LAMCO management and Lazard.

- Subsequent to September 2010, Lazard has facilitated negotiations between LAMCO and a limited number of parties. Several of these parties have provided Lazard and LAMCO with detailed term sheet proposals and conducted extensive negotiations with Lazard and LAMCO management. As of the date hereof, these negotiations remain in process.

- The LAMCO process remains on-going due largely to the complexity of the mandate. At the outset of the process, the Debtors had outlined key requirements necessary for any transaction involving a potential partner. These requirements include maintaining a cost-based (i.e., no profit) asset management agreement with respect to LAMCO's management of the Debtors' assets. In addition, potential participants in the process were told that any LAMCO transaction would not include an ability to purchase or otherwise transact in any of the Debtors' assets. These requirements, in addition to other complexities related to the structure and terms of a potential transaction, have generally lengthened the timeframe and process to reaching a successful transaction with a partner.

7. As the foregoing marketing process has advanced, Lazard has provided periodic updates to advisors to the Creditors' Committee, as appropriate.

8. The services performed by Lazard in connection with LAMCO were not contemplated either by the original engagement letter between the Debtors and Lazard or when Lazard agreed to reduce its Monthly Fee in February 2010. Indeed, LAMCO and its related contractual arrangements with the Debtors did not come into formal existence until this Court approved such arrangements on April 15, 2010. However, Lazard reached an agreement with the Debtors and representatives of the Creditors' Committee on the economics of Lazard's work with respect to the LAMCO process in early April 2010. Given the time-sensitive nature of the work requested by the Debtors, Lazard performed services without waiting for formal or final documentation of its economic agreement.

9. The Debtors filed the Application for authorization to amend the terms of Lazard's engagement, effective as of June 1, 2010, pursuant to the Supplemental Engagement Letter. After an increase, the Monthly Fee would remain less than the Court-approved initial $400,000 monthly rate. In addition, after continued discussions with representatives of the Creditors Committee (subsequent to the early April agreement and prior to the filing of the Application), Lazard agreed to seek an increase for months beginning in June 2010 and to forgo any increase for the services performed in prior months. Although the precise structure and consideration associated with a LAMCO Sale is not certain, Lazard believes that if the LAMCO Sale was contemplated under the Engagement Letter, which both the Debtors and Lazard agree it is not, the $1,250,000 that Lazard will be entitled to upon consummation of a LAMCO Sale is comparable to what it would expect to be paid if the LAMCO Sale were treated as a "Sale Transaction" under the terms of the Engagement Letter. Lazard viewed the negotiated terms as being favorable to the Debtors.

10. Subsequent to the filing of the Application, Lazard engaged in substantive discussions with the Debtors, the U.S. Trustee, representatives of the Creditors' Committee and certain individual creditors with respect to the relief requested in the Application. As a result of those discussions and subsequent discussions with the Debtors, Lazard agreed to further modify the terms of its engagement letter on terms more favorable to the Debtors. Specifically, Lazard agreed to limit the increase in its Monthly Fee to the six-month period ending in November 2010. The final agreement is memorialized in the Modified Engagement Letter, which was attached to an amendment to the Application filed by the Debtors contemporaneously herewith.

11. As set forth in the Debtors' application to retain Lazard and in the Affidavits, Lazard previously conducted an investigation to determine whether it has had any relationships

with certain third parties (collectively, the "Interested Parties") to determine whether Lazard had any conflicts or other relationships that might cause it to not be disinterested or to hold or represent an interest adverse to the Debtors. To the extent that Lazard's investigation indicated that Lazard had any such connections, the identities of the Interested Parties were disclosed. Lazard has not repeated previous conflict checks, but Lazard has and will continue to perform conflict checks related to particular transactions on which Lazard is working, including any potential transaction involving LAMCO. In addition, with respect to all parties who have submitted formal proposals, and engaged in active discussions with respect to, a potential LAMCO transaction, Lazard has undertaken a conflicts check to determine that it has no conflict or other relationship with such parties that might cause it to not be disinterested or be adverse to the Debtors, with respect to LAMCO or generally. Lazard will continue to update its disclosures in accordance with the Bankruptcy Rules, the Local Bankruptcy Rules, any orders of this Court, and Lazard's past practices and established conflicts procedures relating to chapter 11 proceedings.

I declare under the penalty of perjury that the forgoing is true and correct, to the best of my knowledge.

Dated: February 23, 2011

LAZARD FRERES & CO. LLC

By: _____
Name: Barry W. Ridings
Title: Managing Director and
Vice Chairman of Investment Banking