Hearing Date and Time: March 23, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  March 16, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                                      :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :    **08-13555 (JMP)**
:
Debtors.                              :    **(Jointly Administered)**
:
------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION, PURSUANT TO SECTION
362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001,
FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW
SETTLEMENT PAYMENTS UNDER 2007-2008 DIRECTORS AND
<u>OFFICERS INSURANCE POLICY BY ZURICH AMERICAN INSURANCE CO.</u>**

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "<u>Motion</u>") of Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "<u>Debtors</u>") for an order modifying the automatic stay, to the extent applicable, to permit the Debtors' third-party insurer, Zurich American Insurance Co., to make payments in connection with two settlement agreements: (i) a settlement agreement between American Eagle Outfitters, Inc. and AEO Management Co. (together, "<u>American Eagle</u>") and an individual defendant; and (ii) a settlement agreement between Tule River Tribe of the Tule River Reservation and the Tule River Tribal Council (together, "<u>Tule River</u>") and certain individual defendants, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy

US_ACTIVE:\43636423\04\58399.0003

Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **March 23, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Elizabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; (v) Bailey Cavalieri LLC, One Columbus, 10 West Broad St., Suite 2100, Columbus, Ohio 43215-3422, Attn: Thomas E. Geyer, Esq., attorneys for Zurich American Insurance Co., (vi) Meyer, Unkovic & Scott LLP, 535 Smithfield Street, Suite 1300, Pittsburgh, PA 15222-2315, Attn:

Richard T. Victoria, attorneys for American Eagle and (viii) Shustak, Frost & Partners, 401 West "A" Street, Suite 2330, San Deigo, CA 92101, Attn: Erwin Shustak, Esq. and Jonah Toleno, Esq., attorneys for Tule River, so as to be so filed and received by no later than **March 16, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: February 28, 2011
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: March 23, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: March 16, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                            :    Chapter 11 Case No.
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,          :    08-13555 (JMP)
:
Debtors.                              :    (Jointly Administered)
:
------------------------------------------------------------------x

**DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENTS UNDER 2007-2008 DIRECTORS AND OFFICERS INSURANCE POLICY BY ZURICH AMERICAN INSURANCE CO.**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this motion (the "Motion") and respectfully represent:

**Preliminary Statement**

1.  On seven prior occasions at the Debtors' request, the Court has modified the automatic stay provided for under section 362(a) of title 11 of the United States Code (the "Bankruptcy Code"), to the extent applicable, to remove any impediments to payment by certain of the Debtors' insurers of directors and officers coverage of settlement payments or defense

costs or fees that current or former directors, officers, and employees of the Debtors incurred or were incurring as defendants in ongoing lawsuits, arbitration proceedings, regulatory and other investigations.[1] By this Motion, the Debtors seek similar relief to assure Zurich American Insurance Company ("Zurich"), the Debtors' fifth level excess insurer under the Debtors' 2007-2008 directors and officers liability insurance program, that it is authorized to make payments in connection with two settlement agreements described below involving certain of the Debtors' current or former directors, officers, and employees (the "Individual Defendants") without concern that it is violating the automatic stay.

2. For Claims[2] made against the Individual Defendants during the period from May 16, 2007 to May 16, 2008 (the "Policy Period"), the Debtors purchased a primary policy from XL Specialty Insurance Company ("XL," and said policy the "2007-2008 Primary D&O Policy") plus additional excess coverage for this period from a number of other carriers of up to $250 million in the aggregate. The excess policies include the policy underwritten by Zurich (the "Zurich Policy"). The excess policies, including the Zurich Policy, are all "follow

---

[1] *See* Orders entered March 25, 2009 [Docket No. 3220] (modifying automatic stay to allow advancement of defense costs with respect to XL Specialty Insurance); November 23, 2009 [Docket No. 5906] (modifying the automatic stay to allow advancement of defense costs with respect to Federal Insurance Company); December 17, 2009 [Docket No. 6297] (modifying the automatic stay to allow payment of settlement amounts by XL Specialty Insurance Company and Federal Insurance Company); August 20, 2010 [Docket No. 10945] (modifying the automatic stay to allow advancement of defense costs with respect to Continental Casualty Company, Certain Underwriters at Lloyd's London, and U.S. Specialty Insurance Company); November 18, 2010 [Docket No. 12896] (modifying the automatic stay to allow advancement of defense costs with respect to Zurich American Insurance Company, Ace Bermuda Insurance Ltd., St. Paul Mercury Insurance Company, XL Specialty Insurance Company and Federal Insurance Company); November 18, 2010 [Docket No. 12895] (modifying the automatic stay to allow payment of settlement amounts by Certain Underwriters at Lloyd's London and London Market Company); and January 13, 2011 [Docket No. 13929] (modifying the automatic stay to allow payment of settlement amounts by U.S. Specialty and Zurich American Insurance Company) (collectively, the "Prior Stay Orders").

[2] Capitalized terms that are used but not otherwise defined herein shall have the meanings ascribed to them in the Zurich Policy.

form" policies subject to additional independent terms and conditions. That is, the terms and conditions of the excess coverage are governed by the 2007-2008 Primary D&O Policy, but each excess insurer's obligations are subject to certain additional terms, such as limits of liability, and attach only after all Loss within the respective Limits of Liability of the underlying policies has been paid. As the fifth excess insurer for the Policy Period, Zurich provides coverage of $15 million in excess of $70 million.

3. Confirming Zurich's ability to make settlement payments on behalf of the Individual Defendants is in the best interests of the Debtors' estates and creditors because, *inter alia*, the interests of the Debtors' estates, if any, in the proceeds of the Zurich Policy are expressly subordinate to the interest of the Individual Defendants. Specifically, the Zurich Policy provides that the Debtors have a right to the insurance proceeds only after the Individual Defendants are fully reimbursed for any "Loss," including defense costs and settlement payments. As such, granting the relief requested by this Motion is unlikely to have any adverse effect on the Debtors' estates and creditors. In addition, pursuant to the settlement agreements, both American Eagle Outfitters, Inc. and AEO Management Co. (together, "American Eagle") and Tule River Tribe of the Tule River Reservation and the Tule River Tribal Council (together, "Tule River"), the claimants in the underlying arbitration actions, have agreed to release LBHI and its affiliates (other than LBI) of all claims that were or could have been asserted against such entities in connection with the claimants' respective arbitrations.[3] Accordingly, granting the relief requested herein is in the best interest of the Debtors' estates and creditors.

---

[3] AEO Management Co. has asserted an unrelated claim against LBHI (proof of claim number 28550) (the "Unrelated Claim"). AEO Management Co. is not releasing the Unrelated Claim against LBHI and LBHI's rights to dispute such claim on any basis are fully preserved.

**Background**

4. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6. On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI"). A trustee appointed under SIPA is administering LBI's estate.

7. On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, entered January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531].

8. On January 25, 2011, the Debtors filed their first amended joint chapter 11 plan [Docket No. 14150] and disclosure statement for their first amended joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 14151].

**Jurisdiction**

9.　　This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Relief Requested**

10.　　The Debtors seek the entry of an order modifying the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow Zurich to make settlement payments of (i) $560,000 (the "American Eagle Settlement Payment") pursuant to the terms of a settlement agreement between American Eagle and Sanford A. Haber (the "American Eagle Settlement Agreement"), and (ii) $1,500,000 (the "Tule River Settlement Payment," together with the American Eagle Settlement Payment, the "Settlement Payments") pursuant to the terms of a settlement agreement between Tule River and certain Individual Defendants (the "Tule River Settlement Agreement," together with the American Eagle Settlement Agreement, the "Settlement Agreements"), in each case, as required under the Zurich Policy.  Copies of the American Eagle Settlement Agreement and the Tule River Settlement Agreement are attached hereto as Exhibits A and B, respectively.  The Debtors further request that the Court waive the requirements of Bankruptcy Rule 4001(a)(3) and direct that the order granting the requested relief be effective immediately.

**The Debtors' Directors and Officers Liability Insurance Policies**

11.　　Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificate of incorporation, the Debtors purchased primary and excess directors and officers ("D&O") liability insurance, which provides coverage for the Debtors' current and former officers, directors, and employees in connection with civil, criminal, regulatory and other actions and investigations.

12. As discussed above, subject to the terms, conditions, limitations and exclusions of the Zurich Policy, Zurich covers Loss (defined as settlement payments, defense fees, costs and expenses and judgments, among other things) of $15 million in excess of $70 million incurred as a result of Claims made during the Policy Period for Wrongful Acts allegedly committed by the Individual Defendants in their capacity as directors, officers, and / or employees of LBHI and certain of its subsidiaries.[4] Coverage under the Side A provision of the Zurich Policy is immediately available to the Individual Defendants for any Loss resulting from Claims made under the Zurich Policy that is not otherwise advanced or indemnified by the Debtors by reason of their financial insolvency.

13. Furthermore, the Zurich Policy contains a "Priority of Payments" provision, which provides that when competing claims for coverage under both Insuring Agreement (A) for non-indemnifiable loss, as described above, and Insuring Agreement (B) are made under the Policies, "the Insurer shall pay that Loss, if any, which the Insurer may be liable to pay on behalf of the Insured Persons under Insuring Agreement (A)… ." *See* 2007-2008 Primary D&O Policy, Endorsement 22. Thus, the Zurich Policy, by virtue of Insuring Agreement A and the Priority of Payments provision, provides for the immediate payment of the Settlement Payments on behalf of the Individual Defendants ahead of any payment that may be made to the Debtors.

### The Arbitrations

14. Both prior to and after the collapse of the Lehman enterprise in September 2008, various securities actions were commenced against certain current and former officers, directors and employees of Lehman in both federal and state courts and before various regulatory

---

[4] Copies of the 2007-2008 Primary D&O Policy and the Zurich Policy for such period are attached hereto as Exhibits C and D, respectively.

agencies. The American Eagle Settlement Agreement relates to an arbitration proceeding styled *American Eagle Outfitters, Inc. and AEO Management Co v. Sanford A. Haber*, FINRA No. 10-00615 (the "American Eagle Arbitration"). The Tule River Settlement Agreement relates to an arbitration proceeding styled *Tule River Tribe of the Tule River Reservation et al. v. Lehman Brothers, Inc. et al.*, FINRA No. 08-01651 (the "Tule River Arbitration," together with the American Eagle Arbitration, the "Arbitrations"). The Arbitrations involve claims relating to alleged common law and securities law violations by the Individual Defendants relating to American Eagle's and Tule River's respective investments in certain auction rate securities. The Arbitrations are pending before arbitral tribunals constituted under the rules of the Financial Industry Regulatory Authority ("FINRA").

15. LBHI and the other chapter 11 Debtors are not named as respondents in the Arbitrations and are not parties to the Settlement Agreements. There have been no proof of claims filed against LBHI or the other chapter 11 Debtors by American Eagle or Tule River in connection with their respective claims asserted in or related to the Arbitrations. Under the terms of their Settlement Agreements, both American Eagle and Tule River have agreed to release all claims relating to or asserted in their respective Arbitrations that could have been asserted against LBHI and its affiliates (other than American Eagle's claims against LBI and certain identified claims of Tule River against LBI), subject to entry of the order approving this Motion and receipt of their respective Settlement Payments from Zurich pursuant to the Settlement Agreements. American Eagle's Unrelated Claim against LBHI in the amount of $61,462.50 is not being released and LBHI's rights to dispute the Unrelated Claim are fully preserved.

**The Settlement Agreements**

16.    The salient terms of the American Eagle Settlement Agreement are:[5]

- Conditions to Effectiveness.  The effectiveness of the American Eagle Settlement Agreement is subject to entry of an order in the Debtors' chapter 11 cases granting relief from the automatic stay, to the extent applicable, to permit Zurich to pay the American Eagle Settlement Payment to American Eagle;

- Settlement Payment.  Within 14 days after entry of a final order by this Court modifying the automatic stay, to the extent applicable, Zurich shall pay the American Eagle Settlement Payment to American Eagle;

- Release of LBHI and Affiliates.  Other than the Unrelated Claim, American Eagle is releasing all claims whether known or unknown, including, without limitation, the claims asserted in or relating to the American Eagle Arbitration, against LBHI and its related entities other than LBI; and

- Other Releases.  American Eagle is releasing all claims whether known or unknown against Sanford A. Haber and all other former employees of LBI, including, without limitation, the claims asserted in or relating to the American Eagle Arbitration.  American Eagle will contact FINRA and dismiss the American Eagle Arbitration with prejudice in writing no later than ten business days after the date of the receipt of the American Eagle Settlement Payment.

17.    The salient terms of the Tule River Settlement Agreement are:[6]

- Conditions to Effectiveness.  The effectiveness of the Tule River Settlement Agreement is subject to entry of an order in the Debtors' chapter 11 cases granting relief from the automatic stay, to the extent applicable, to permit Zurich or its designee to pay the Tule River Settlement Payment to Tule River;

- Settlement Payment.  Within 10 business days after entry of a final order by this Court modifying the automatic stay, to the extent applicable, Zurich or its designee shall pay the Tule River Settlement Payment to Tule River;

---

[5] To the extent there is an inconsistency between this summary and the American Eagle Settlement Agreement, the terms of the American Eagle Settlement Agreement shall control.

[6] To the extent there is an inconsistency between this summary and the Tule River Settlement Agreement, the terms of the Tule River Settlement Agreement shall control.

- <u>Release of LBHI and Affiliates</u>  Tule River is releasing all claims whether known or unknown, including without limitation, the claims asserted in or relating to the Tule River Arbitration, against LBHI and its affiliates other than certain identified claims against LBI; and

- <u>Other Releases</u>.  Tule River and the named Individual Defendants are also exchanging mutual releases of all rights, claims and defenses asserted in or relating to the Tule River Arbitration.  Within five business days after receipt of the Tule River Settlement Payment, Tule River shall promptly take all reasonable steps to have its claims in the Tule River Arbitration dismissed with prejudice.

**To the Extent it Applies, Cause Exists to Modify the
<u>Automatic Stay to Authorize Zurich to make the Settlement Payments</u>**

18.    Pursuant to the Prior Stay Orders, this Court has granted relief that is similar to the relief sought in this Motion, based on rights and obligations *vis-à-vis* the Debtors and Individual Defendants that are governed by the same terms and conditions as the Zurich Policy.  Accordingly, because cause to modify the automatic stay was found to exist under the Prior Stay Orders, *a fortiori*, such cause exists here as well.  If, however, the Debtors must independently demonstrate that cause exists to allow Zurich to pay the Settlement Payments, as described below, it is beyond peradventure that such a modification of the automatic stay is warranted.

A.    <u>The Proceeds Are Not Property of the Estate</u>

19.    Section 362(a)(3) of the Bankruptcy Code provides for an automatic stay of any action seeking to obtain possession or exercise control over property of the bankruptcy estate.  It is well-settled that insurance policies are property of the estate and covered by the automatic stay provisions of the Bankruptcy Code.  *See MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89 (2d Cir 1988).  However, courts have distinguished between ownership of a *policy* and ownership of the *proceeds* of a policy.  While courts have not been uniform in their analysis, where a policy provides for payment only to a third party – such as payments to officers and

directors under an executive insurance policy – or where the debtor has a right of coverage or indemnification, but such right is hypothetical or speculative, courts have held that the proceeds of such policy are not property of the bankruptcy estate. *See, e.g.*, *In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 53 (S.D.N.Y. 2003) (holding that insurance proceeds were not property of the estate where it had not been suggested that debtors had made any payment for which they may be entitled to indemnification under policy or that any such payments were then contemplated); *In re Allied Digital Techs., Corp.*, 306 B.R. 505, 510 (Bankr. D. Del. 2004) (holding that proceeds of D&O insurance policy were not property of the estate where debtor's indemnification right under the policy was speculative and direct coverage of debtor under policy was hypothetical); *In re La. World Exposition, Inc.*, 832 F.2d 1391, 1401 (5th Cir. 1987) (holding that proceeds of a D&O policy belonged only to the officers and directors and, therefore, were not property of the estate); *In re World Health Alternatives, Inc.*, 369 B.R. 805, 809 (Bankr. D. Del. 2007) (when proceeds of a policy are payable to the directors and officers and not the estate, the proceeds are not property of the estate); *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 18 (Bankr. E.D.N.Y. 1999) (holding that circumstances that may give rise to entity coverage were highly remote and therefore proceeds were not property of estate).

        20.     In determining whether proceeds are property of the estate, courts review the "language and scope of the policy at issue." *Allied Digital*, 306 B.R. at 509. *See also In re CyberMedica, Inc.*, 280 B.R. 12, 16 (Bankr. D. Mass. 2002); *In re Jones*, 179 B.R. 450, 455 (Bankr. E.D. Pa. 1995) (respective rights of debtors and non-debtors to insurance proceeds "must be ascertained by reference to the parties' contractual rights pursuant to the interpretation of the pertinent contractual provisions under applicable state law").

21. The Zurich Policy contains an unambiguous priority of payments endorsement that expressly subordinates any potential rights of the Debtors to proceeds payable under the Zurich Policy to the rights of the Individual Defendants. The priority of payments endorsement is an enforceable contractual provision and should be upheld for the benefit of the Individual Defendants as intended. *See In re Enron Corp.*, Case No. 01-16034 (Bankr. S.D.N.Y. Apr. 11, 2002) [Docket No. 3278] (holding that priority of payment provision was an enforceable contractual right).[7]

22. Consistent with the purpose of such policies, the Debtors purchased the Zurich Policy primarily to provide insurance coverage to their officers and directors, including the Individual Defendants. *See In re First Cent. Fin. Corp.*, 238 B.R. 9, 16 (Bankr. E.D.N.Y. 1999) ("In essence and at its core, a D&O Policy remains a safeguard of officer and director interests and not a vehicle for corporate protection."). The Debtors' speculative rights to any residual proceeds, which would be payable only in the event that the Debtors indemnified the Individual Defendants and which are subject to an express contractual subordination provision, should not alter the conclusion that the proceeds should not constitute property of the Debtors' estates.

B. Cause Exists to Modify the Automatic Stay, to the Extent
   That it Applies, to Allow Payment of the Settlement Payments.

23. Even if the proceeds from the Zurich Policy are determined to be property of the estate, "cause" exists under section 362(d)(1) of the Bankruptcy Code to modify the automatic stay to allow for the payment of the Settlement Payments as required under the Zurich Policy. It is not uncommon for courts to grant stay relief to allow payment of settlement costs to

---

[7] A copy of the Court's bench ruling in *Enron* is attached hereto at Exhibit E.

directors and officers, especially when there is no evidence that direct coverage of the debtor will be necessary. *See Allied Digital*, 306 B.R. at 513.

24. Allowing Zurich to pay the Settlement Payments will, in fact, benefit the Debtors' estates. The Debtors believe that they have an obligation, albeit a pre-chapter 11 obligation, under their by-laws to advance the settlement costs incurred by the Individual Defendants. In addition, both American Eagle and Tule River are waiving all claims that could be asserted against LBHI and its affiliated chapter 11 Debtors relating to the Arbitrations.

25. Modifying the automatic stay will not harm the Debtors' estates. As explained above, any rights the Debtors have to the proceeds are contractually subordinated to the rights of the Individual Defendants pursuant to the priority of payments clause. Further, pursuant to this Court's *Order Modifying the Automatic Stay to Allow Advancement Under (I) 2007-2008 Directors and Officers Insurance Policies by Zurich American Insurance Company, Ace Bermuda Insurance Ltd. And St. Paul Mercury Insurance Company, And (II) 2008-2009 Directors And Officers Insurance Policies By XL Specialty Insurance Company And Federal Insurance Company* [Docket No. 12896], entered November 18, 2010, Zurich is already authorized to advance defense costs to the Individual Defendants in connection with the Arbitrations.

26. Alternatively, if this Court finds that the Debtors have some interest in the proceeds of the Zurich Policy, the Debtors submit that any such interest is nominal and in any event cannot be determined until the Individual Defendants' losses have been quantified and paid. Advancing the Settlement Payments pursuant to the Zurich Policy, which represents a *de minimis* percentage of the Debtors' total outstanding coverage under its primary and excess 2007-2008 D&O Policies, is appropriate. Accordingly, cause exists to modify the automatic stay

pursuant to section 362(d) of the Bankruptcy Code, to the extent it applies, to allow Zurich to pay the Settlement Payments pursuant to the terms of the Settlement Agreements and subject to the terms of the Zurich Policy.

27.     In making this Motion, the Debtors, the Individual Defendants, and Zurich are not waiving any of their respective rights under the Zurich Policy or any other insurance policy.  In addition, the Debtors are not seeking a determination of Zurich's obligation to pay any settlement costs under the Zurich Policy.  Rather, the Debtors seek only the entry of an order modifying the automatic stay, to the extent applicable, to allow Zurich to make the Settlement Payments.

**Notice**

28.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) Zurich; (vii) American Eagle; (viii) Tule River; and (ix) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: February 28, 2011
      New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
                                                  :
In re                                             :    Chapter 11 Case No.
                                                  :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,          :    08-13555 (JMP)
                                                  :
              Debtors.                            :    (Jointly Administered)
                                                  :
-------------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION, PURSUANT TO SECTION 362 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 4001, FOR AN ORDER MODIFYING THE AUTOMATIC STAY TO ALLOW SETTLEMENT PAYMENTS UNDER 2007-2008 DIRECTORS AND OFFICERS INSURANCE POLICY BY ZURICH AMERICAN INSURANCE CO.

Upon the motion, dated February 28, 2011 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to section 362(d) of title 11 to the United States Code (the "Bankruptcy Code") and Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for an order modifying the automatic stay provided for in section 362(a) of the Bankruptcy Code, to the extent that it applies, to allow Zurich American Insurance Co. ("Zurich") to make settlement payments of (i) $560,000 (the "American Eagle Settlement Payment") pursuant to the terms of a settlement agreement between American Eagle[1] and Sanford A. Haber (the "American Eagle Settlement Agreement"), and (ii) $1,500,000 (the "Tule River Settlement Payment," together with the American Eagle Settlement Payment, the "Settlement Payments") pursuant to the terms of a settlement agreement between Tule River and certain Individual Defendants (the "Tule River Settlement Agreement," together with the American Eagle Settlement Agreement, the "Settlement Agreements"), in each case, as

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

required under the Zurich Policy, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered June 17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases;(vii) Zurich, (viii) American Eagle, and (ix) Tule River, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

        ORDERED that the Motion is granted; and it is further

        ORDERED that pursuant to sections 105(a) and 362(d) of the Bankruptcy Code, the automatic stay, to the extent applicable, is hereby modified to, and without further order of this Court, allow Zurich to make the Settlement Payments provided for in the Settlement

Agreements on behalf of the Individual Defendants in accordance with the terms of the Settlement Agreements and the Zurich Policy; and it is further

ORDERED that the Debtors are authorized to execute all documentation necessary to allow Zurich to fund the Settlement Payments on behalf of the Individual Defendants pursuant to the Settlement Agreements; and it is further

ORDERED that nothing in this Order shall modify, alter or accelerate the rights and obligations of Zurich, the Debtors or the Individual Defendants provided for under the terms and conditions of the Zurich Policy; and it is further

ORDERED that all parties to the Zurich Policy reserve all rights and defenses with respect to the Zurich Policy that they would otherwise have; and it is further

ORDERED that nothing in this Order shall constitute a determination that the proceeds of the Zurich Policy are property of the Debtors' estates, and the rights of all parties in interest to assert that the proceeds of the Zurich Policy are, or are not, property of the Debtors' estates are hereby reserved; and it is further

ORDERED that the stay provided by Bankruptcy Rule 4001(a)(3) is waived; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: March __, 2011
      New York, New York

                                              UNITED STATES BANKRUPTCY JUDGE