**<u>EXHIBIT B</u>**

**(TULE RIVER SETTLEMENT AGREEMENT)**

## <u>CONFIDENTIAL SETTLEMENT AGREEMENT</u>

This Settlement Agreement ("Agreement") is entered into by and between (i) Claimants Tule River Tribe of the Tule River Reservation and the Tule River Tribal Council (collectively "Tule River"), and (ii) Respondents Erin M. Callan, Howard L. Clark, Jr., Peter E. Coleman, Mark M. Connally, Thomas H. Cruikshank, Michael C. Drago, Frederick Frank, Scott J. Freidheim, Richard S. Fuld, Jr., Bernard A. Machlovitch, Hans S. Maentz, Howard R. Plotkin, and Thomas A. Russo (collectively, the "Individual Respondents"). Tule River and the Individual Respondents are referred to collectively as the "Settling Parties."

This Agreement is intended by the Settling Parties to fully, finally and forever resolve, discharge and settle all claims that were or could have been brought by Tule River against the Individual Respondents and related individuals and entities in *Tule River Tribe of the Tule River Reservation et al. v. Lehman Brothers, Inc. et al.*, FINRA No. 08-01651.

## I.    DEFINITIONS

As used in this Agreement, the following capitalized terms have the meanings specified below.

**A.**    "Arbitration" means the arbitration entitled *Tule River Tribe of the Tule River Reservation et al. v. Lehman Brothers, Inc. et al.*, FINRA No. 08-01651, pending before the Financial Industry Regulatory Authority Arbitration Division.

**B.**    "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York.

**C.**    "Chapter 11 Cases" means the voluntary cases commenced in the Bankruptcy Court by LBHI and certain of its subsidiaries under chapter 11 of title 11 of the United States Code, Case No. 08-13555 (JMP).

**D.**    "Claims" means any and all claims, demands, rights, liabilities, damages, penalties, costs, losses, indemnities, duties, obligations, rights, causes of action, or suits of any nature (including claims for costs, attorneys' fees or expenses), whether known or unknown, concealed or hidden, fixed or contingent, direct or indirect, anticipated or unanticipated, whether actually asserted or that might have been asserted, whether legal, equitable, contractual, statutory, or any other type, under the federal or state securities laws or under any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside of the United States.

**E.**    "Dismissal Stipulation" means the stipulation of dismissal to be filed with FINRA in the form attached as Exhibit A.

**F.**    "Effective Date" means the date on which Tule River receives the Settlement Amount.

**G.**    "Final Order" means an order by the Bankruptcy Court that is either finally affirmed on appeal, or is no longer subject to appeal and the time for any petition for re-argument, appeal or review, by leave, certiorari or otherwise, has expired.

**H.**  "Insured" means the Individual Respondents and any other individual who is entitled to benefits under any Directors and Officers liability insurance policy (or similar coverage, however titled) issued to LBHI or LBI.

**I.**  "Insurer" means Zurich American Insurance Company.

**J.**  "LBHI" means Lehman Brothers Holdings Inc.

**K.**  "LBI" means Lehman Brothers Inc., against which the Arbitration was first commenced.

**L.**  "Releasees" means, in any capacity:

    1.  All Insureds, including the Individual Respondents, together with their past, present, and future attorneys, accountants, agents, insurers, spouses, children, heirs, successors, assigns, trusts, corporations, companies, partnerships, affiliates, or any entity in which they have a controlling interest;

    2.  LBHI, LBI, and all of their respective past, present and future employees, officers, directors, attorneys, accountants, insurers, agents, and direct or indirect parents, subsidiaries and/or affiliates; and

    3.  Each of the predecessors, heirs, successors, assignors and assigns, representatives, bankruptcy estates, court-appointed trustees and administrators of each of the persons or entities in (a) and/or (b) and their respective attorneys, accountants, insurers and agents.

**M.**  "Releasors" means Tule River and each of its predecessors, successors, affiliates, assignors and assigns, and/or affiliates, and each of its and their respective directors, officers, employees, members, agents, attorneys, representatives, and administrators.

**N.**  "Settlement" means the settlement of the Arbitration, as embodied in this Agreement.

**O.**  "Settlement Amount" means one million, five hundred thousand dollars ($1,500,000.00).

**P.**  "SIPA Proceeding" means the proceeding commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI, Case No. 08-1420 (JMP) SIPA, which proceeding is now pending before the Bankruptcy Court.

**Q.**  "Tule River Released Claims" means any and all Claims (i) that concern Tule River's LBI account, (ii) that Tule River brought in the Arbitration, (iii) that relate to any of the Claims asserted or facts alleged in the Arbitration or the subject matter thereof, or (iv) that are based on the defense, settlement or resolution of the Arbitration, which Claims Tule River ever had, now has, or hereafter may have against Releasees. However, notwithstanding the foregoing, the Tule River Released Claims shall not include those claims against LBI currently pending in the SIPA Proceeding identified in Schedule 1.

## II.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and between the Settling Parties that, subject to entry of a Final Order modifying the automatic stay extant pursuant to 11 U.S.C. § 362(a), to the extent applicable, by the Bankruptcy Court, all claims in the Arbitration shall be finally and fully compromised, settled and released, and the Arbitration shall be dismissed with prejudice, as follows:

### A.    Payment and Bankruptcy Court Authorization

1.    The Settlement is subject to the Bankruptcy Court entering an order in the Chapter 11 Cases authorizing relief from the automatic stay, to the extent applicable, to permit Insurer or its designee to pay the Settlement Amount to Tule River as provided herein.  Should such authorization be withheld, the Agreement and the Settlement will be deprived of all legal effect, and the Settling Parties will be returned to their respective positions as of February 3, 2011, and Claimants may pursue the Arbitration pursuant to section II(B)(3) of this Agreement.

2.    Upon execution of this Agreement by each of the Settling Parties, the Individual Respondents shall take all reasonable steps to cause LBHI to file a motion in the Chapter 11 Cases as promptly as possible seeking Bankruptcy Court authorization consistent with section II(A)(1) of this Agreement.

3.    Upon entry of a Final Order by the Bankruptcy Court consistent with the foregoing, the Individual Respondents shall take all reasonable steps to cause Insurer or its designee to pay the Settlement Amount to Tule River.

4.    Tule River acknowledges that it is responsible for the payment of any applicable taxes related to its receipt of the Settlement Amount.

5.    Within ten business days after entry of the Final Order, Insurer or its designee shall pay the Settlement Amount to Tule River, via check.

### B.    Dismissal of the Arbitration and Expungement

1.    The Individual Respondents deny all charges of wrongdoing, violation of law, or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Arbitration or any other forum.  The Individual Respondents enter into this Agreement solely to eliminate the uncertainties, burden, and expense of further litigation.  This Agreement shall in no event be construed as or deemed to be evidence of an admission or concession by the Individual Respondents, LBHI or LBI with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

2.    Within five business days after receipt of the Settlement Amount, Tule River shall promptly take all reasonable steps to have its claims in the Arbitration dismissed with prejudice pursuant to FINRA Rule 12700 by filing the Dismissal Stipulation with FINRA.

3.    Tule River reserves the right to resume the Arbitration proceedings against the Individual Respondents, including but not limited to rescheduling,

appearing, and calling fact and expert witnesses at the Arbitration hearings, if the Bankruptcy Court does not issue an order within 120 days of the date of this Agreement authorizing the requested relief set forth in section II(A)(1), above, or if Claimants do not receive the Settlement Amount as provided in section II(A)(5), above.

4.    Tule River shall take all reasonable steps to assist the Individual Respondents obtain an arbitration award containing expungement relief and court confirmation of such arbitration award.  These reasonable steps shall include, but not be limited by, the following:

(a)    Join in the Individual Respondents' request for a stipulated award that includes a request that the panel make affirmative findings that Tule River's claims against Respondents fit at least one of the standards set forth in FINRA Rule 2080.

(b)    Not oppose or object to any application made by the Individual Respondents pursuant to FINRA Rule 12805(a) to obtain expungement of information from the CRD system related to the Arbitration. To the extent Claimants participate in expungement proceedings, they will appear telephonically and will not oppose or object to the relief sought.

(c)    Not oppose or object to the Individual Respondents' request that FINRA waive the requirement that FINRA be named as a party in court proceedings to confirm an arbitration award that includes expungement.

(d)    If requested, provide the arbitrators with information to the best of their knowledge to support the appropriateness of expungement despite the Settlement Amount.

## C.    Mutual Releases

1.    Upon the Effective Date, Releasors shall be deemed to have, and shall have, fully, finally and forever released, relinquished, and discharged all Tule River Released Claims against Releasees.  However, notwithstanding the foregoing, Tule River shall not be deemed to have released, relinquished, and discharged the claims against LBI seeking damages arising from or relating to the claims resolved by this Settlement to the extent those claims were not previously disallowed and expunged pursuant to Bankruptcy Court order in the SIPA Proceeding, identified in Schedule 1 as of February 3, 2011.

2.    Upon the Effective Date, the Individual Respondents shall be deemed to have, and shall have, fully, finally, and forever released, relinquished, and discharged Tule River, and all of its past and present directors, officers, employees, members, agents, attorneys, representatives, and administrators from any and all Claims based upon or arising out of the institution, prosecution, assertion, settlement or resolution of the Arbitration, or otherwise related to or arising from any of the Claims asserted or facts alleged in the Arbitration, the subject matter thereof, or Tule River's LBI account.

3.  Tule River warrants and represents that it is unaware of any Claims that it has against the Individual Respondents, LBI or LBHI other than those it brought in the Arbitration or as set forth in Schedule 1 attached hereto.

**D.    Waiver of Statutory Provisions and Unknown Claims**

1.  The Settling Parties expressly waive the provisions, rights, and benefits of any statutory provision or common law rule that provides, in sum or substance, that a release does not extend to claims that a releasing party does not know or expect to exist in its favor at the time of executing the release, which if known by it, would have materially affected its settlement with any of the other parties.  With respect to sections II(C)(1) and II(C)(2) of this Agreement, each Settling Party expressly waives the provision of California Civil Code Section 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

2.  The Settling Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those that any of them or their counsel now knows or believes to be true with respect to the subject matter of the Claims released in sections II(C)(1) and II(C)(2) or otherwise.  However, upon the Effective Date, the Settling Parties each shall have expressly, fully, finally, and forever settled and released any and all Claims as set forth in sections II(C)(1) and II(C)(2), whether known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts.  The Settling Parties acknowledge that the foregoing waiver was separately bargained for and a key element of the Settlement of which this release is a part.

**E.    Confidentiality**

1.  The Settling Parties and their counsel agree that, except as is necessary to secure authorization from the Bankruptcy Court or for purposes of expungement proceedings, the terms and conditions of this Agreement and the Settlement are strictly confidential.  No party shall disclose, discuss or reveal the terms of this Agreement or the Settlement to any other persons, entities, or organizations without the prior written consent of all Settling Parties.

2.  Notwithstanding the foregoing, nothing in this Agreement shall prohibit the Settling Parties from: (a) disclosing the fact that the matter has been resolved on terms satisfactory to all Settling Parties, without otherwise

disclosing such terms; (b) disclosing to their agents such information as is reasonably necessary to conduct business and comply with the law, and/or tax and accounting requirements, so long as said agents have agreed to be bound by the terms of this article prior to such disclosure, or are otherwise bound to similar obligations of confidentiality pursuant to professional undertakings; or (c) making such disclosures as required by law, including regulatory disclosures or disclosures in response to a valid subpoena or other lawful process, provided that if any of the Settling Parties or any of its counsel are subpoenaed or otherwise lawfully required to reveal the terms of this Agreement before it is filed with the Bankruptcy Court, such Settling Party shall give prompt written notice of such subpoena or other lawful process to the other Settling Party.  If any Settling Party discloses this Agreement to any of the aforementioned individuals to whom disclosure is permitted, that party shall specifically advise such individuals of this confidentiality provision and expressly condition the disclosure upon the recipient's agreement to maintain the confidentiality of this Agreement.

3.     Tule River and its counsel each agree to continue to treat as confidential all pleadings, correspondence, documents and information produced in discovery and all other materials and proceedings related to the Arbitration.

## F.     Miscellaneous Provisions

1.     In consideration of the mutual promises contained herein, Tule River further covenants not to sue, institute, continue, participate in, cooperate with, facilitate, encourage, or share information in connection with any claim, demand, suit, proceeding, arbitration, mediation, alternative dispute resolution or any action or proceeding in law or equity ("Proceeding") against Releasees, including Individual Respondents, LBI, or LBHI, in any way relating to or arising from any act, omission or other matter concerning the Tule River Released Claims that occurred prior to the Effective Date.  Provided, however, that this covenant shall not prevent Tule River from pursuing the claims against LBI identified in Schedule 1 or from making any disclosures as required by law, including regulatory disclosures or disclosures in response to a valid subpoena or other lawful process, provided that if Tule River or its counsel are subpoenaed or otherwise lawfully required to participate in a Proceeding against the Releasees, including the Individual Respondents, LBI or LBHI, Tule River or its counsel shall give written notice of such subpoena or other lawful process to the other Settling Party within five calendar days of its receipt.

2.     Tule River and its counsel agree not to solicit or encourage any other persons, whether individual or corporate, to commence any Proceeding against Releasees, including the Individual Respondents, concerning the Tule River Released Claims.

3.     Tule River shall not disparage, in any way, any of the Releasees.

4.     Tule River shall maintain its ownership of all auction rate securities comprising the subject of the Tule River Released Claims, unless and until Tule River sells, liquidates or otherwise relinquishes possession, custody

or control of the auction rate securities, in whatever manner Tule River deems fit. The Settlement Amount is not subject to any reduction of any kind on account of these securities.

5.  The Settling Parties agree that the terms of this Agreement were negotiated in good faith by the Settling Parties on an arms' length basis, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

6.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all of the Settling Parties.

7.  This Agreement constitutes the entire agreement between Tule River and the Individual Respondents, and no representations, warranties, or inducements have been made to any Settling Party concerning this Agreement other than the representations, warranties, and covenants contained and memorialized in this Agreement. It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Agreement is entered into may turn out to be materially other than or different from the facts now known to each Settling Party or believed by such Settling Party to be true; each Settling Party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law.

8.  Without in any way limiting the scope or effect of the Releases in II(C)(1) and II(C)(2), above, each Settling Party shall bear all of his, her or its own costs, attorneys' fees, and experts' fees incurred in connection with the Arbitration and Settlement, subject to any applicable insurance or indemnification. In the event that any Settling Party takes any action to enforce any of his, her or its rights under this Agreement, the prevailing party in any judicial proceeding shall be entitled to recover all reasonable costs and expenses of doing so, including reasonable attorneys' fees, expert's fees, and costs. Notwithstanding the foregoing, Tule River and the Individual Respondents shall equally share (½ to Tule River and ½ to the Individual Respondents) all costs assessed by FINRA in connection with the Arbitration, including costs of mediation, other than (a) costs related solely to expungement proceedings, which will be borne by the Individual Respondents, and (b) the initial filing fees already paid by the parties and any related refunds from those filing fees due the party that paid them.

9.  Each Settling Party represents that he, she or it has the full power and authority to enter into this Agreement; that, other than the Bankruptcy Court's authorization of the payment of the Settlement Amount as provided for herein, there are no other persons or entities whose consent to this Agreement or whose joinder herein is necessary to make fully effective the provisions of this Agreement; that this Agreement does not and will not interfere with any other agreement to which it, he or she is a party; and that it, he or she will not enter into any agreement the execution and/or performance of which would violate or interfere with this Agreement.

10. The person executing this Agreement on behalf of Tule River warrants and represents that he or she is authorized and legally empowered to execute this Agreement on behalf of Tule River.

11. LBHI and LBI are express third-party beneficiaries of this Agreement and shall have the right to enforce its provisions.

12. Regardless of which Settling Party may have drafted this Agreement or any portion thereof, this Agreement shall be construed in all respects as jointly drafted and shall not be construed, in any way, against any Settling Party on the ground that the Settling Party or its counsel drafted the Agreement.

13. Each Settling Party warrants and represents that, as of the Effective Date, he/she/it has not transferred or assigned, and will not transfer or assign, all or any part of the Claims that are released hereby.

14. A waiver by any Settling Party hereto of a particular right under this Agreement or of a breach or default in connection with any provision of this Agreement shall not be deemed to be a waiver of any other right or subsequent default or breach of that same or any other provision of this Agreement.

15. All covenants, representations, warranties and agreements made under this Agreement or pursuant hereto or in connection with the transactions contemplated hereby shall survive the dismissal of the Arbitration.

16. The Settling Parties intend that each of the provisions in the Agreement be independent and separate provisions, severable and divisible from the other provisions. Therefore, in the event that any particular provision other than sections II(A)(1), II(A)(5), II(B)(1), II(B)(2), II(B)(4), II(C)(1), and II(C)(2) is deemed to be unenforceable by a court of competent jurisdiction, the Settling Parties agree that such provision should be deemed to be severed from this Agreement, and all remaining provisions shall remain in full force and effect.

17. This Agreement may be signed in counterparts, or duplicate originals, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures may be original or may be provided by facsimile or pdf.

18. Each Settling Party to this Agreement agrees to perform any further acts and execute and deliver any further documents that may be reasonably necessary to carry out the provisions of this Agreement.

19. The Settling Parties submit to the jurisdiction of the District Court for the Central District of California for the sole purpose of implementing and enforcing this Agreement. Such submission to the jurisdiction of the district court shall not be deemed a waiver of personal jurisdiction defenses for any purpose other than implementation and enforcement of this Agreement.

20. This Agreement and the rights and obligations of the Settling Parties hereunder shall be construed and enforced in accordance with, and

9

governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT TULE RIVER TRIBE OF THE TULE RIVER RESERVATION**

Dated: February _25_, 2011

Name: RYAN GARFIELD
Title: CHAIRMAN

**INDIVIDUAL RESPONDENTS**

Dated: February ___, 2011

_____
Erin M. Callan

Dated: February ___, 2011

_____
Howard L. Clark, Jr.

Dated: February ___, 2011

_____
Peter E. Coleman

Dated: February ___, 2011

_____
Mark M. Connally

Dated: February ___, 2011

_____
Thomas H. Cruikshank

Dated: February ___, 2011

_____
Michael C. Drago

defenses for any purpose other than implementation and enforcement of this Agreement.

20. This Agreement and the rights and obligations of the Settling Parties hereunder shall be construed and enforced in accordance with, and governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT TULE RIVER TRIBE OF THE TULE RIVER RESERVATION**

Dated: February ___, 2011

Name: _____
Title:

**INDIVIDUAL RESPONDENTS**

Dated: February 28, 2011

_____
Erin M. Callan

Dated: February ___, 2011

_____
Howard L. Clark, Jr.

Dated: February ___, 2011

_____
Peter E. Coleman

Dated: February ___, 2011

_____
Mark M. Connally

Dated: February ___, 2011

_____
Thomas H. Cruikshank

9

governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

## CLAIMANT TULE RIVER TRIBE OF THE TULE RIVER RESERVATION

Dated: February ___, 2011

_____
Name:
Title:

## INDIVIDUAL RESPONDENTS

Dated: February ___, 2011

_____
Erin M. Callan

Dated: February **26**, 2011

_____
Howard L. Clark, Jr.

Dated: February ___, 2011

_____
Peter E. Coleman

Dated: February ___, 2011

_____
Mark M. Connally

Dated: February ___, 2011

_____
Thomas H. Cruikshank

Dated: February ___, 2011

_____
Michael C. Drago

```
Fax Server          28/02/2011 10:22:11   PAGE   4/004   Fax Server
   08-13555-mg   Doc 14707-2   Filed 02/28/11   Entered 02/28/11 18:21:38   Exhibit B
                          Pg 13 of 29
```

9

governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT TULE RIVER TRIBE OF THE TULE RIVER RESERVATION**

Dated: February ___, 2011

_____
Name:
Title:

**INDIVIDUAL RESPONDENTS**

Dated: February ___, 2011

_____
Erin M. Callan

Dated: February ___, 2011

_____
Howard L. Clark, Jr.

Dated: February 28, 2011

_____
Peter E. Coleman

Dated: February ___, 2011

_____
Mark M. Connally

Dated: February ___, 2011

_____
Thomas H. Cruikshank

Dated: February ___, 2011

_____
Michael C. Drago

governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT TULE RIVER TRIBE OF THE TULE RIVER RESERVATION**

Dated: February ___, 2011

Name: _____

Title:

**INDIVIDUAL RESPONDENTS**

Dated: February ___, 2011

_____
Erin M. Callan

Dated: February ___, 2011

_____
Howard L. Clark, Jr.

Dated: February ___, 2011

_____
Peter E. Coleman

Dated: February **26**, 2011

_____
Mark M. Connally

Dated: February ___, 2011

_____
Thomas H. Cruikshank

Dated: February ___, 2011

_____
Michael C. Drago

9

governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT TULE RIVER TRIBE OF THE TULE RIVER RESERVATION**

Dated: February ___, 2011

_____
Name:
Title:

**INDIVIDUAL RESPONDENTS**

Dated: February ___, 2011

_____
Erin M. Callan

Dated: February ___, 2011

_____
Howard L. Clark, Jr.

Dated: February ___, 2011

_____
Peter E. Coleman

Dated: February ___, 2011

_____
Mark M. Connally

Dated: February 25, 2011

*Thomas H. Cruikshank*
_____
Thomas H. Cruikshank

Dated: February ___, 2011

_____
Michael C. Drago

governed by, the laws of the State of California without giving effect to any choice of law rules or principles.

IN WITNESS WHEREOF, the Settling Parties have caused this Agreement to be executed as of the latest execution date below.

**CLAIMANT TULE RIVER TRIBE OF THE TULE RIVER RESERVATION**

Dated: February ___, 2011

_____
Name:
Title:

**INDIVIDUAL RESPONDENTS**

Dated: February ___, 2011

_____
Erin M. Callan

Dated: February ___, 2011

_____
Howard L. Clark, Jr.

Dated: February ___, 2011

_____
Peter E. Coleman

Dated: February ___, 2011

_____
Mark M. Connally

Dated: February ___, 2011

_____
Thomas H. Cruikshank

Dated: February 25, 2011

_____
Michael C. Drago

10

Dated: February **18**, 2011

_____
Frederick Frank


Dated: February ___, 2011

_____
Scott J. Freidheim


Dated: February ___, 2011

_____
Richard S. Fuld, Jr.


Dated: February ___, 2011

_____
Bernard A. Machlovitch


Dated: February ___, 2011

_____
Hans S. Maentz


Dated: February ___, 2011

_____
Howard R. Plotkin


Dated: February ___, 2011

_____
Thomas A. Russo

Dated: February \_\_\_, 2011

_____
Frederick Frank

Dated: February _28_, 2011

_____
Scott J. Freidheim

Dated: February \_\_\_, 2011

_____
Richard S. Fuld, Jr.

Dated: February \_\_\_, 2011

_____
Bernard A. Machlovitch

Dated: February \_\_\_, 2011

_____
Hans S. Maentz

Dated: February \_\_\_, 2011

_____
Howard R. Plotkin

Dated: February \_\_\_, 2011

_____
Thomas A. Russo

Dated: February ___, 2011

_____
Frederick Frank


Dated: February ___, 2011

_____
Scott J. Freidheim


Dated: February 25, 2011

_____
Richard S. Fuld, Jr.


Dated: February ___, 2011

_____
Bernard A. Machlovitch


Dated: February ___, 2011

_____
Hans S. Maentz


Dated: February ___, 2011

_____
Howard R. Plotkin


Dated: February ___, 2011

_____
Thomas A. Russo

Dated: February ___, 2011

            Frederick Frank

Dated: February ___, 2011

            Scott J. Freidheim

Dated: February ___, 2011

            Richard S. Fuld, Jr.

Dated: February **27**, 2011

            Bernard A. Machlovitch

Dated: February ___, 2011

            Hans S. Maentz

Dated: February ___, 2011

            Howard R. Plotkin

Dated: February ___, 2011

            Thomas A. Russo

Dated: February ___, 2011

_____
Frederick Frank


Dated: February ___, 2011

_____
Scott J. Freidheim


Dated: February ___, 2011

_____
Richard S. Fuld, Jr.


Dated: February ___, 2011

_____
Bernard A. Machlovitch


Dated: February 25, 2011

_____
Hans S. Maentz


Dated: February ___, 2011

_____
Howard R. Plotkin


Dated: February ___, 2011

_____
Thomas A. Russo

10

Dated: February ___, 2011                           _____
                                                    Frederick Frank


Dated: February ___, 2011                           _____
                                                    Scott J. Freidheim


Dated: February ___, 2011                           _____
                                                    Richard S. Fuld, Jr.


Dated: February ___, 2011                           _____
                                                    Bernard A. Machlovitch


Dated: February ___, 2011                           _____
                                                    Hans S. Maentz


Dated: February 25, 2011                            _____
                                                    Howard R. Plotkin


Dated: February ___, 2011                           _____
                                                    Thomas A. Russo

10

Dated: February ___, 2011

_____
Frederick Frank


Dated: February ___, 2011

_____
Scott J. Freidheim


Dated: February ___, 2011

_____
Richard S. Fuld, Jr.


Dated: February ___, 2011

_____
Bernard A. Machlovitch


Dated: February ___, 2011

_____
Hans S. Maentz


Dated: February ___, 2011

_____
Howard R. Plotkin


Dated: February 28, 2011

_____
Thomas A. Russo

11

**CLAIMANT TULE RIVER TRIBAL COUNCIL**

Dated: February 25, 2011

Name: RYAN GARFIELD
Title: CHAIRMAN

## EXHIBIT A

### FINANCIAL INDUSTRY REGULATORY AUTHORITY
### ARBITRATION DIVISION

|  |  |
|---|---|
| ————————————————— x | |
| TULE RIVER TRIBE OF THE TULE RIVER : | |
| RESERVATION and TULE RIVER TRIBAL : | |
| COUNCIL, : | |
| : | FINRA Arbitration No. 08-01651 |
| Claimants, : | |
| : | |
| -against- : | |
| : | |
| LEHMAN BROTHERS INC., ERIN M. CALLAN, : | |
| HOWARD L. CLARK, JR., PETER E. COLEMAN, : | |
| MARK M. CONNALLY, THOMAS H. : | |
| CRUIKSHANK, MICHAEL C. DRAGO, : | |
| FREDERICK FRANK, SCOTT J. FREIDHEIM, : | |
| RICHARD S. FULD, JR., HOWARD R. PLOTKIN, : | |
| THOMAS RUSSO, HANS S. MAENTZ, and : | |
| BERNARD A. MACHLOVITCH, : | |
| : | |
| Respondents. : | |
| : | |
| ————————————————— x | |

### STIPULATION OF DISMISSAL OF ALL CLAIMS

WHEREAS the Tule River Tribe of the Tule River Reservation and the Tule River Tribal Council (collectively "Tule River") filed a Statement of Claim initiating the above-captioned arbitration on June 13, 2008, naming Lehman Brothers Inc. ("Lehman") as respondent;

WHEREAS the Arbitration was stayed against Respondent Lehman following the commencement of a proceeding against Lehman under the Securities Investor Protection Act of 1970 (S.D.N.Y. Case No. 08-1420 JMP);

WHEREAS, on December 4, 2009, following the stay of proceedings against Lehman, Tule River amended its Statement of Claim to add Respondents Erin M. Callan, Howard L. Clark, Jr., Peter E. Coleman, Mark M. Connally, Thomas H. Cruikshank, Michael C. Drago, Frederick Frank, Scott J. Freidheim, Richard S. Fuld, Jr., Hans S. Maentz, Bernard A. Machlovitch, Howard R. Plotkin, and Thomas Russo (the "Individual Respondents");

WHEREAS Tule River filed a Second Amended Statement of Claim on July 8, 2010;

WHEREAS the Individual Respondents filed an Amended Answer on July 28, 2010;

WHEREAS the parties communicated to FINRA by letter from Claimants' counsel on February 7, 2011 that a settlement in principle of the Arbitration had been reached;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned counsel, that all claims asserted by Tule River against all Respondents are withdrawn with prejudice and without costs, expenses, or attorneys' fees to any party as against the other;

ACCORDINGLY, the parties jointly request that the Arbitral Panel enter an order on the following terms:

1.      That, pursuant to FINRA Rule 12700(a), all claims asserted against all Respondents in this Arbitration are dismissed with prejudice;

2.      That, pursuant to FINRA Rule 2080, a hearing be convened at the convenience of the Arbitral Panel to permit Respondents to present their request for expungement of the Tule River dispute information from registration records ("Expungement Hearing");

3.      That the case remain open until after the conclusion of the Expungement Hearing; and

4.      That any FINRA-imposed costs or expenses relating to the Arbitration be subject to equal allocation among the parties (½ to Tule River, ½ to Respondents) by the Arbitral Panel, but any costs, expenses or attorneys fees relating solely to the Expungement Hearing shall be borne solely by Respondents, and each party shall be responsible for its, his or her own initial filing fees, with any refund of such initial filing fees going to the party that paid them.

Dated:  _____, 2011

By_____
    Erwin J. Shustak, Esq.
    Shustak Frost & Partners
    401 West "A" Street, Suite 2330
    San Diego, CA 92101

    Attorneys for Claimants Tule River Tribe of the Tule River Reservation and Tule River Tribal Counsel

By_____
    James G. Kreissman, 206740
    Simpson Thacher & Bartlett LLP
    2550 Hanover Street
    Palo Alto, CA 94304

    Attorneys for Respondents Howard L. Clark, Jr., Peter E. Coleman, Mark M. Connally, Michael C. Drago, Frederick Frank, Scott J. Freidheim, Bernard A. Machlovitch, Hans S. Maentz, Howard R. Plotkin, and Thomas Russo

By_____
    Ronald E. Wood, 133854
    Proskauer Rose LLP
    2049 Century Park East Suite 3200

Los Angeles, CA 90067-3206

Attorneys for Respondent Erin M. Callan

By_____

    Todd S. Fishman (Out-of-State Arb. Counsel)
    Allen & Overy LLP
    1221 Avenue of the Americas
    New York, NY  10020

Attorneys for Respondent Richard S. Fuld, Jr.

By_____

    Kathleen N. Massey (Out-of-State Arb. Counsel)
    Dechert LLP
    1095 Avenue of the Americas
    New York, NY 10036-6797

Attorneys for Respondent Thomas H. Cruikshank

## Schedule 1

**List of Tule River's Claims in the
Lehman Brothers Inc. SIPA Proceeding**

- Claim Number: 800003162

- Claim Number: 800003185

- Claim Number: 800003101

- Claim Number: 800003132