Presentment Date and Time:  March 18, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline:  March 18, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed):  March 23, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :        08-13555 (JMP)
                                          :
                      Debtors.            :        (Jointly Administered)
                                          :
---------------------------------------------------------------------x
```

## NOTICE OF PRESENTMENT OF APPLICATION OF THE DEBTORS PURSUANT TO SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE AND RULE 2014(a) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN MILBANK, TWEED, HADLEY & McCLOY LLP, AS SPECIAL COUNSEL TO THE DEBTORS IN CONNECTION WITH CERTAIN TAX RELATED MATTERS

**PLEASE TAKE NOTICE** that the undersigned will present the annexed

Application (the "Application") of Lehman Brothers Holdings Inc. and its affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the

"Debtors"), pursuant to sections 327(e) and 328(a) of title 11 of the United States Code,

Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and

Rule 2014-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local

Rules"), to employ and retain Milbank, Tweed, Hadley & McCloy LLP as special counsel to the

Debtors, all as more fully described in the Application, to the Honorable James M. Peck, United

States Bankruptcy Judge, for approval and signature on **March 18**, **2011 at 12:00 p.m. (Prevailing Eastern Time)**.

       **PLEASE TAKE FURTHER NOTICE** that objections to the Application, if any, shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York, 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York, 10153, Attn:  Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & M$^c$Cloy LLP, 1 Chase Manhattan Plaza, New York, New York, 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; and (v) Milbank, Tweed, Hadley & M$^c$Cloy LLP, International Square Building, 1850 K Street, NW, Suite 1100, Washington, D.C. 20008, Attn: Glenn S. Gerstell, Esq., **so as to be so filed and received by no later than March 18**, **2011 at 11:00 a.m. (Prevailing Eastern Time)** (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that only if a written objection is timely filed and served, a hearing will be held on **March 23**, **2011 at 10:00 a.m. (Prevailing Eastern Time) (Prevailing Eastern Time)** at the United States Bankruptcy Court for the Southern District of New York, Honorable James M. Peck, United States Bankruptcy Judge, One Bowling Green, New York, New York 10004-1408.  If an objection is filed, the moving and objecting parties are required to attend the hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 4, 2011
        New York, New York

                                    /s/ Richard P. Krasnow
                                    Richard P. Krasnow
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone:  (212) 310-8000
                                    Facsimile:  (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

Presentment Date and Time:  March 18, 2011 at 12:00 p.m. (Prevailing Eastern Time)
Objection Deadline:  March 18, 2011 at 11:00 a.m. (Prevailing Eastern Time)
Hearing Date and Time (If an Objection is Filed):  March 23, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                              :

**In re**                                :         **Chapter 11 Case No.**
                                              :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :        **08-13555 (JMP)**
                                            :

                   **Debtors.**       :         **(Jointly Administered)**
                                            :

-------------------------------------------------------------------x

**APPLICATION OF THE DEBTORS PURSUANT
TO SECTIONS 327(e) AND 328(a) OF THE BANKRUPTCY CODE
AND RULE 2014(a) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN
MILBANK, TWEED, HADLEY & McCLOY LLP, AS SPECIAL COUNSEL
TO THE DEBTORS IN CONNECTION WITH CERTAIN TAX RELATED MATTERS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

          Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), file this application (the "Application") and respectfully represent:

<u>**Background**</u>

         1.        Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").  On September 17, 2008, the Creditors' Committee duly selected Milbank, Tweed, Hadley & M$^c$Cloy LLP ("Milbank" or the "Firm") as counsel to the Creditors' Committee, and by order dated November 21, 2008 [Docket No. 1654], the Court approved Milbank's retention.  In addition, on September 17, 2008, the Creditors' Committee duly selected Quinn Emanuel Urquhart Oliver & Hedges LLP (now known as Quinn Emanuel Urquhart & Sullivan LLP) as special counsel to the Creditors' Committee, and by order dated November 21, 2008 [Docket No. 1652], the Court approved such retention.

3.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA is administering LBI's estate.

4.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the

Examiner.  The Examiner issued a report of his investigation pursuant to section 1106 of the

Bankruptcy Code on March 11, 2010 [Docket No. 7531].

5.      On January 25, 2011, the Debtors filed the first amended joint chapter 11

plan and disclosure statement [Docket Nos.  14150 and 14151].

**Jurisdiction**

6.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

7.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients, and individuals worldwide.

8.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

9.      The Debtors request authorization, pursuant to section 327(e) of the

Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local

Bankruptcy Rules for the Southern District of New York (the "Local Rules"), to employ Milbank

as special counsel to the Debtors for the limited purpose of assisting the analysis and resolution

of certain tax matters for which Milbank is uniquely qualified.  The Debtors have requested that

Milbank, through its Tax Account and Analysis Recovery Services ("TAARS®") program, and

on the terms and subject to the conditions set forth in the engagement letter attached as <u>Exhibit A</u>

(the "<u>Engagement Letter</u>"), review interest determinations made (or in the process of being

made) by the Internal Revenue Service (the "<u>IRS</u>") and by state and local taxing authorities for

LBHI and certain of its current and former domestic subsidiaries (the "<u>Group</u>") with respect to

the Group's 1997-2007 tax years.  Specifically, the Debtors have asked that Milbank: (a) with

respect to (i) all federal taxes (including income, excise and employment-related taxes) and (ii)

such state and local taxes that LBHI, on behalf of the Group, may request Milbank to review and

(b) with respect to all payments, deposits, credits, offsets, refunds, transfers, adjustments and

accounts associated with any of the foregoing taxes:

  a.  Determine whether there are overcharges of interest and penalties (relating to taxes and/or interest);

  b.  Determine whether there are underallowances of interest on refunds, credits or offsets;

  c.  Determine whether there are credit balances or other account errors in respect of taxes, interest or penalties; and

  d.  Pursue administratively with the IRS or the appropriate state or local agency the corrections Milbank identifies with respect to items a through c above (as a refund or by means of credit, offset or abatement).  In that regard, Milbank will set forth in writing the basis for each requested correction (collectively, the "<u>Milbank TAARS® Matters</u>").[1]

        10.    The Debtors seek to retain Milbank for the foregoing matters because, as

discussed more fully below, (a) any recovery obtained by Milbank in connection with this

engagement for the Debtors' estates will benefit the Debtors' unsecured creditors, thus providing

the Creditors' Committee and the Debtors' estates with a common interest in having these

services performed; and (b) the nature of the work to be performed and the safeguards

---

[1] Although Milbank will assess tax interest liability through its TAARS® program, it will not question or verify the correctness of the Group's substantive tax liability, thereby preventing (a) the re-opening of any legal issues and (b) the IRS from re-litigating the underlying tax liability.

implemented by Milbank's TAARS® professionals ensure that no conflict exists or will arise in connection with this retention.

11.    The Debtors request authorization, pursuant to section 328(a) of the Bankruptcy Code, Rule 2014(a) of the Bankruptcy Rules, and Rule 2014-1 of the Local Rules, and on the terms and subject to the conditions set forth in the Engagement Letter, to retain Milbank on a contingency fee basis, as more fully described below.

## Basis for Relief

12.    The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based on and made in reliance upon the affidavit of Glenn S. Gerstell (the "Gerstell Affidavit"), sworn to on March 4, 2011, a copy of which is annexed hereto as Exhibit B.

13.    The retention of Milbank under the terms described herein is appropriate under Bankruptcy Code section 327(e), which governs the appointment of special counsel where the proposed counsel does not possess any interest that is materially adverse to the debtor with regard to the matter(s) that will be handled by counsel.  Section 327(e) provides:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

14.    Accordingly, section 327(e) of the Bankruptcy Code authorizes the retention of counsel who previously represented a debtor prepetition provided that:  (a) the appointment is in the best interest of the debtor's estate; (b) counsel does not hold an interest adverse to the estate with respect to the matter for which counsel is to be employed; and (c) the

specified special purpose for which counsel is being retained does not rise to the level of

conducting the bankruptcy case for the debtor in possession.  *See In re AroChem Corp.*, 176

F.3d 610, 622 (2d Cir. 1999) (noting that "where the interest of the special counsel and the

interest of the estate are identical *with respect to the matter for which special counsel is retained*,

there is no conflict and the representation can stand") (emphasis in original); *In re DeVlieg, Inc.*,

174 B.R. 497 (N.D. Ill.  1994).  As explained more fully below, the Debtors submit that each of

these factors is satisfied with respect to Milbank and that, therefore, its retention should be

approved under section 327(e) of the Bankruptcy Code.

> 15.    In addition, the retention of Milbank under the terms described herein is

also appropriate under section 328(a) of the Bankruptcy Code, which provides, in relevant part,

that the Debtors:

> may employ or authorize the employment of a professional person
> under section 327 or 1103 of this title, as the case may be, on any
> reasonable terms and conditions of employment, including on a
> retainer, on an hourly basis, on a fixed or percentage fee basis, or
> on a contingent fee basis.  Notwithstanding such terms and
> conditions, the court may allow compensation different from the
> compensation provided under such terms and conditions after the
> conclusion of such employment, if such terms and conditions
> prove to have been improvident in light of developments not
> capable of being anticipated at the time of the fixing of such terms
> and conditions.

11 U.S.C. §328(a).  The Debtors submit that the retention of Milbank pursuant to the contingent

fee arrangement described more fully below satisfies the reasonableness standard set forth in

Bankruptcy Code section 328(a) and therefore should be approved.

### The Employment and Retention of Milbank Is in the Best Interests of the Estates

> 16.    The Debtors have selected Milbank as special counsel with respect to the

Milbank TAARS® Matters.  The Debtors have decided to retain Milbank because Milbank is

well qualified and uniquely able to provide the specialized services sought by the Debtors in an efficient and effective manner.  For avoidance of doubt, no other professional retained by the Debtors (including ordinary course professionals) offers the services Milbank proposes to provide.  As described more fully and represented in the Gerstell Affidavit, Milbank's TAARS® program has been practiced by Milbank for more than twenty years – longer than any other law firm or accounting firm.  During such time, Milbank has been a leader in the field of examining and concluding the proper amounts of interest that a taxpayer should be paying as a liability to the IRS as well as state and local taxing authorities or receiving benefit on a refund or credit due to it resulting from the conclusion of tax audits.  As further described in the Gerstell Affidavit, Milbank's use of its TAARS® program, along with its ability to (a) make the type of sophisticated legal judgments about statutes of limitations and other determinations regarding the legal effect of fund movements within a company's accounts, and (b) accurately assess the legal theories that determine the date of payment to the IRS or to state or local taxing authorities by a company or vice versa (a common reason the IRS and state and local taxing authorities miscalculate their interest payments), has given rise to very substantial recoveries of wrongly determined tax interest in favor of major taxpayer companies.  In addition, Milbank is familiar with many governmental positions regarding methodologies for calculating interest and imposing and abating penalties that are not publicly available or otherwise published, including some that are not even widely known within the taxing authority.

17.     In recognition of Milbank's role as counsel to the Creditors' Committee, the Debtors and the Creditors' Committee have given particularly careful consideration to this retention.  Notwithstanding this superficial issue, the Debtors believe, however, that the engagement of Milbank is entirely appropriate in light of the fact that (a) Milbank is the most

qualified firm to advise on and perform the Milbank TAARS® Matters; (b) Milbank does not

hold an interest adverse to the Debtors or the Debtors' estates with respect to the services it will

provide through its TAARS® program; (c) no conflict exists between the Debtors and the

Creditors' Committee with respect to this retention due to the aligned interests of the Debtors

and the Creditors' Committee in recovering funds owing to the estates through Milbank's

TAARS® services; (d) strict ethical walls will be imposed and maintained between the

professionals comprising the Milbank TAARS® Team (as defined below) and the professionals

comprising the Milbank Creditors' Committee Team (as defined below); (e) the services

rendered and functions to be performed by Milbank will not be duplicative of any work

performed by other professionals retained by the Debtors; and (f) the terms of Milbank's

retention are economically favorable to the Debtors and their estates.

18.     For these reasons, the Debtors respectfully submit that the employment of

Milbank is in the best interests of the Debtors, their estates, and their creditors.

### Milbank Holds No Interest Adverse to the Debtors or the Debtors' Estates With Respect to the Services Provided by Milbank's TAARS® Program

19.     To the best of the Debtors' knowledge, and except as may be set forth in

the Gerstell Affidavit, Milbank does not represent or hold any interest adverse to the Debtors or

their estates with respect to the services as to which Milbank is to be employed. *See In re

AroChem*, 176 F.3d at 622 (emphasizing that, under section 327(e) of the Bankruptcy Code,

potential conflicts must be evaluated only with respect to the scope of the proposed retention).

20.     On November 21, 2008, this Court authorized the retention of Milbank as

counsel to the Creditors' Committee.  Milbank's retention as counsel to the Creditors'

Committee is completely unrelated to the matters with respect to which the Debtors are seeking

to engage Milbank here – the technical and non-adversarial nature of which is unlikely to lead to

any material legal conflicts. The Debtors have waived any objections they may have to Milbank's continuing to act as counsel to the Creditors' Committee in these cases and will not seek to disqualify Milbank as counsel to the Creditors' Committee on other matters, including other tax matters, nor to assert any impropriety on Milbank's part, on account of Milbank's concurrent employment by the Creditors' Committee and the Debtors (as described herein and in the Engagement Letter). Similarly, as reflected in the Gerstell Affidavit, the Creditors' Committee has waived any objections it may have to Milbank's representation of the Debtors in these cases and for the purposes described herein and in the Engagement Letter and has agreed not to seek to disqualify Milbank as special counsel to the Debtors nor to assert any impropriety on Milbank's part, on account of Milbank's employment by the Debtors.

21.     Nonetheless, as set forth in the Gerstell Affidavit, Milbank has agreed that the Milbank professionals representing the Creditors' Committee (the "Milbank Creditors' Committee Team") will continue to represent only the Creditors' Committee, and the Milbank professionals representing the Debtors for the matters described herein (the "Milbank TAARS® Team") will continue to represent only the Debtors. (*Engagement Letter* at 4.) In connection therewith, Milbank has further agreed that, for purposes of this retention, the Milbank TAARS® Team is providing services solely to the Debtors, and is not providing any services to or on behalf of the Creditors' Committee. (*Id.*). Consequently, the Milbank TAARS® Team has agreed that it will provide the information it acquires or generates in connection with the representation described herein solely to the Debtors, which, in turn, will determine what information, if any, will be shared with the Creditors' Committee and will expressly advise the Milbank TAARS® Team whether it is authorized to communicate such information to the Creditors' Committee. (*Id.*) In addition, as more fully described in the Gerstell Affidavit,

Milbank has imposed (and will maintain) tailored screening procedures in the form of ethical walls between the Milbank TAARS® Team and the files and information relating to its representation of the Debtors and the Milbank Creditors' Committee Team and the files and information relating to its representation of the Creditors' Committee.  (*Gerstell Affidavit* at ¶ 10.)

22.    Based on the foregoing and the disclosures set forth in the Gerstell Affidavit, the Debtors submit that Milbank does not hold or represent any interest adverse to the Debtors or the Debtors' estates with respect to the services on which Milbank is to be employed.

## The Debtors and the Creditors' Committee Share a Common Interest with Respect to Milbank TAARS® Matters

23.    The Creditors' Committee is equally incentivized as the Debtors to recover funds owing to the estates through Milbank's TAARS® services.  Indeed, any value obtained through such recovery will inure to the benefit of the Creditors' Committee's constituency.

24.    The Debtors thus respectfully submit that, in addition to Milbank not holding or representing any interest adverse to the Debtors or the Debtors' estates with respect to the Milbank TAARS® Matters, except to the extent disclosed above and in the Gerstell Affidavit, the Debtors and the Creditors' Committee, in fact, also share a common interest with respect to the services on which Milbank is to be employed.

## Milbank Will Not Conduct the Debtors' Bankruptcy Cases

25.    The Debtors submit that Milbank's representation of the Debtors with respect to the Milbank TAARS® Matters does not involve the conduct of the Debtors' bankruptcy cases and is not duplicative of the services rendered to the Debtors by its other professionals.  By separate applications, the Debtors have sought and obtained the Court's

approval to retain and employ Weil, Gotshal & Manges LLP as the Debtors' general bankruptcy

counsel [Docket No. 1660], and Curtis, Mallet-Prevost, Colt & Mosle LLP as conflicts counsel

[Docket No. 1659]. By contrast, Milbank's postpetition work would consist solely of the

Milbank TAARS® Matters. None of these matters involve the conduct of the bankruptcy cases

themselves. Additionally, because Milbank is not serving as the Debtors' general bankruptcy

counsel, the Debtors believe that Milbank has not rendered "services . . . in contemplation of or

in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code.

Accordingly, the services rendered and functions to be performed by Milbank will not be

duplicative of any bankruptcy-related work performed by other law firms retained by the

Debtors. Furthermore, Milbank will coordinate with the Debtors' other professionals to ensure

that its services are, to the maximum extent possible, complimentary to other professionals'

services.

### Compensation for Professional Services

26.     Subject to the Court's approval, Milbank will be entitled to the following

consideration for its services pursuant to, and as further explained by, the Engagement Letter:[2]

> a. Payment. Milbank will be entitled to the following payment schedule: a payment (the "Payment") equal to (i) fifteen percent (15%) of each correction with respect to federal taxes for the first $25 million of corrections; (ii) ten percent (10%) of each correction from $25 million to $30 million; (iii) five percent (5%) of each correction over $30 million; and (iv) twenty percent (20%) of each correction with respect to state and local taxes, in each case including interest thereon, secured with respect to items a through c above under paragraph 10. For purposes of this engagement, corrections will include (i) amounts refunded or credited to the Group or any member thereof, (ii) offsets to, or abatements of, any liability of the Group or any member thereof, and (iii) interest saved by the Group or any member thereof as the result of any credit, offset or abatement. LBHI, on the Group's behalf, will notify Milbank immediately of all refunds or credits, offsets

---

[2] In the event of any discrepancy between this description and the Engagement Letter, the terms and conditions of the Engagement Letter will control.

or abatements, and Milbank will render statements for the Payment promptly
thereafter.

b. <u>Litigation</u>.  If a requested correction is denied or if it is reduced or eliminated by
an adjustment made by IRS or the appropriate state or local agency or if it is
necessary to protect against the running of a statute of limitations, Milbank may
request the relevant parties for authorization to litigate.  If such authorization is
granted, Milbank will be entitled to conduct such litigation at no expense to the
party other than the Payment attributable to the correction that is the subject of
such litigation. (The authorization or conduct of such litigation does not relieve
any party from liability for other Payments attributable to corrections pursuant to
this engagement that are not the subject of litigation.)  If the party does not grant
such authorization and pursues the matter on its own or with other counsel,
Milbank will nonetheless be entitled to the Payment.  However, if Milbank does
not request such authorization, and the party pursues the matter on its own or with
other counsel (if permitted hereby), Milbank will not be entitled to the Payment.

c. <u>Miscellaneous Recoveries</u>.  If any correction identified to LBHI, on behalf of the
Group, by Milbank in the course of this engagement (i) is realized by being
applied to any exclusions or (ii) is compromised or otherwise disposed of as part
of the settlement of any liability of the Group or any member thereof, Milbank
will be entitled to a Payment with respect to the full amount of the correction,
including interest, that is so realized, compromised or otherwise disposed of (even
if for an amount less than the correction, including interest).  Moreover, if, in the
course of reviewing a correction submitted by Milbank, the IRS or the appropriate
state or local agency makes favorable additional corrections, whether or not
related to the correction submitted by Milbank (collectively, "<u>Additional
Corrections</u>"), Milbank will be entitled to the Payment with respect to the
Additional Corrections.  Any Payment with respect to the miscellaneous
recoveries described in this paragraph will be in addition to any other Payment
under this agreement.  Also, Milbank will be entitled to the Payment with respect
to any credit balances that Milbank identifies during the Term unless previously
advised by a party that it is aware of such balances.  At present, LBHI is not
aware of any credit balances, except as set forth on Schedule A to the
Engagement Letter.

27.     The compensation arrangements set forth in the Engagement Letter were

negotiated between LBHI, on behalf of the Group, and Milbank.  The Debtors respectfully

submit that the contingency fee arrangement set forth in the Engagement Letter is particularly

appropriate here.  The few accounting firms that provide services akin to the services Milbank's

TAARS® program offers do not offer their services on an hourly basis, but rather, their fees

consist of compensation contingent upon the occurrence of specified events.  Moreover, Milbank

is taking the risk that the specialized expertise of the Milbank TAARS® Team will enable the

Milbank TAARS® Team to aid the Debtors in realizing recoveries from corrections identified by

the Milbank TAARS® Team with respect to federal, state, and local taxes.  In other words, if

Milbank does not cause the estates to realize any recoveries from the aforementioned corrections,

it will not be entitled to receive any professional compensation from the Debtors – regardless of

the amount of time the Milbank TAARS® Team will have expended.  Thus, Milbank's interest

in ensuring the realization of such recoveries is entirely aligned with the Debtors' interests in

seeing the same occur.

   28.  In light of the expertise and capabilities of Milbank that will be required in

this engagement, and the market rate for Milbank's services of this nature, whether in-court or

out-of-court, the Debtors agree that the fee arrangement set forth above is both fair and

reasonable under the standards set forth in 11 U.S.C. § 328(a), fairly compensates Milbank, and

provides the requisite certainty to the Debtors.  All compensation and expenses will be sought in

accordance with section 328(a) of the Bankruptcy Code, as incorporated in sections 329 and 331

of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and orders of the Court.

   29.  Similar to the accounting firms that provide services that are comparable

to the services of Milbank's TAARS® program, the Milbank TAARS® Team is compensated

solely on a contingent fee basis and does not maintain time records like those maintained by

attorneys and other professionals compensated on an hourly basis.  The Debtors have been

advised by the Milbank TAARS® Team that this is, in large part, owing to the fact that the

content underlying the Milbank TAARS® Matters is highly confidential, proprietary, and market

sensitive, and that the time expended in TAARS® analysis does not correlate with the amount of

recoveries to its clients in this area.  As such, the Debtors submit that the Milbank TAARS®

Team should not be required to maintain and provide the detailed time descriptions customarily provided by professionals that charge for their services on an hourly basis in connection with a subsequent application for compensation.  Nonetheless, at the request of the U.S. Trustee, Milbank has agreed to maintain time records for services performed in increments of one-quarter of an hour.  This Application, however, seeks "pre-approval" of Milbank's contingency fee arrangement as contemplated by *Riker v. Official Comm. of Unsecured Creditors (In re Smart World Techs., LLC)*, 552 F. 3d 228 (2d Cir. 2009).  As such, upon approval by this Court under section 328(a) of the Bankruptcy Code, Milbank's contingency fee arrangement shall not be subject to a "full post-hoc reasonableness inquiry."  The records submitted by Milbank shall not be used by the Debtors, the Creditors' Committee, the U.S. Trustee, or any other party in interest to challenge the reasonableness of Milbank's compensation.  *Id*. at 233.

30.    The Debtors are seeking to retain Milbank under section 328(a) of the Bankruptcy Code, and any Payment will be paid directly from recoveries (the amount of which is not susceptible to reasonable estimation by Milbank or the Debtors) as provided in the Engagement Letter.  (*Gerstell Affidavit* at ¶ 6).  Milbank's retention under section 328(a) of the Bankruptcy Code will not affect or apply to Milbank's role as counsel to the Creditors' Committee, where Milbank will continue to be subject to the reasonableness standard provided for in section 330 of the Bankruptcy Code.  Except as otherwise provided herein, Milbank intends to apply to the Court for interim and final payment of compensation in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the guidelines promulgated by the United States Trustee, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

## Notice

31.     No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Application in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

procedures for these cases [Docket No. 9635] on:  (i) the U.S. Trustee; (ii) the attorneys for the

Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; (vi) Milbank; and

(vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no

other or further notice need be provided.

32.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE, the Debtors respectfully request that the Court grant the relief requested

herein and such other and further relief as it deems just and proper.

Dated: March 4, 2011
        New York, New York

                                /s/ Richard P. Krasnow                         
                                Richard P. Krasnow
                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone:  (212) 310-8000
                                Facsimile:  (212) 310-8007

                                Attorneys for Debtors
                                and Debtors in Possession

## Exhibit A

**Engagement Letter**

# MILBANK, TWEED, HADLEY & McCLOY LLP

### INTERNATIONAL SQUARE BUILDING

### 1850 K STREET, NW, SUITE 1100

### WASHINGTON, D.C. 20006

———

202-835-7500

FAX: 202-835-7586

**NEW YORK**
212-530-5000
FAX: 212-530-5219

**LOS ANGELES**
213-892-4000
FAX: 213-629-5063

**LONDON**
44-20-7615-3000
FAX: 44-20-7615-3100

**FRANKFURT**
49-69-71914-3400
FAX: 49 69 71914-3500

**MUNICH**
49-89-25559-3600
FAX: 49-89-25559-3700

**BEIJING**
8610-5969-2700
FAX: 8610-5969-2707

**HONG KONG**
852-2971-4888
FAX: 852-2840-0792

**SINGAPORE**
65-6428-2400
FAX: 65-6428-2500

**TOKYO**
813-5410-2801
FAX: 813-5410-2891

GLENN S. GERSTELL
PARTNER
DIRECT DIAL NUMBER
202-835-7585
FAX
202-263-7585
E-MAIL: gerstell@milbank.com

December 10, 2010

Lehman Brothers Holdings Inc.
101 Hudson Street, 11th Fl.
Jersey City, New Jersey  07302

    Attn:  Jeff Ciongoli
           Managing Director

### Milbank Tax Account Analysis and Recovery Services ("Milbank TAARS®")

Ladies and Gentlemen:

      This letter agreement (the "Agreement") confirms the terms under which Lehman Brothers Holdings Inc. (the "Company" and, together with its affiliated debtors and debtors-in-possession, collectively, the "Debtors") has engaged Milbank, Tweed, Hadley & McCloy LLP ("Milbank"), effective as of the date indicated above (the "Effective Date"), to provide Milbank TAARS® services with respect to the Company and the Company's current and former subsidiaries (the "Group"), in connection with the Debtors' chapter 11 cases (the "Cases") pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").  The terms of the engagement are set forth below.

      The Company represents that all current or former domestic subsidiaries, other than Lehman Brothers Inc., that are or were members of the affiliated group included within the consolidated federal income tax return filed by the Company during the tax years relevant to the engagement are either (i) signatory hereto or (ii) bound by the Company's being a party hereto.

      <u>Term and Exclusivity</u>.  In the event that (a) the Company's application for employment of Milbank TAARS® under section 327(e) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code") or (b) the form of the order entered by the Bankruptcy Court granting such employment application is not acceptable to Milbank in its sole discretion, Milbank may terminate this Agreement immediately.  Otherwise, this Agreement will continue until terminated by any party hereto, upon notice to the other parties (the "Term"). During the Term, the Group shall not instruct or authorize any entity, other than Milbank, to submit Claims (defined below) to the IRS (defined below) or any relevant state or local taxing authority on its behalf.

Services.  During this engagement, Milbank will (a) with respect to (i) all federal taxes (including income, excise and employment-related taxes) and (ii) such state and local taxes that the Company may request Milbank to review and (b) with respect to all payments, deposits, credits, offsets, refunds, transfers, adjustments and accounts associated with any of the foregoing taxes:

1.  Determine whether there are overcharges of interest and penalties (relating to taxes and/or interest);

2.  Determine whether there are underallowances of interest on refunds, credits or offsets;

3.  Determine whether there are credit balances or other account errors in respect of taxes, interest or penalties; and

4.  Pursue administratively with the Internal Revenue Service ("IRS") or the appropriate state agency the corrections Milbank identifies with respect to items 1 through 3 above (as a refund or by means of credit, offset or abatement) (collectively, the "Claims").  In that regard, Milbank will set forth in writing the basis for each requested correction.

Milbank will have no liability by reason of its failure to identify any correction under items 1 through 3 above, or to identify, or to file any claim within, any statutes of limitation that may be expiring during the course of this engagement.

Exclusions.  There are no exclusions from this engagement with respect to payments or deposits made, refunds received or credit balances or other account errors existing on or before the Effective Date.  The Company affirms that neither it nor anyone on its behalf has: (i) any pending claims for, or requests for abatement of, interest or penalties; (ii) commenced any proceeding in court for the recovery of or the additional payment of interest or penalties; or (iii) any agreement or understanding with, or instruction to the IRS or any relevant state taxing authority with respect to the calculation of deficiency (underpayment) or allowable (overpayment) interest or penalties.

Documents.  The Company will promptly provide Milbank, upon request from time to time, with the documents (including tax and/or interest calculations) requisite to Milbank's performing the engagement, including necessary powers-of-attorney.  Unless a party expressly advises Milbank to the contrary, Milbank shall be entitled to rely on the accuracy of any document or underlying computations relating thereto and shall have no liability to any party for any consequence of the incorrectness, incompleteness or inaccuracy of any such document or underlying computations with respect to any such document or for errors made in reliance on any such document.

Payment.  Milbank will be entitled to the following payment schedule: a payment (the "Payment") equal to (i) fifteen percent (15%) of each correction with respect to federal taxes for the first $25 million of corrections; (ii) ten percent (10%) of each correction from $25 million to $30 million; (iii) five percent (5%) of each correction over $30 million and (iv) twenty percent (20%) of each correction with respect to state and local taxes, in each case including interest thereon, secured with respect to items 1 through 3 above under "Services".  For purposes of this engagement, corrections will include (i) amounts refunded or credited to the Group or any member thereof, (ii) offsets to, or abatements of, any liability of the Group or any member thereof, and (iii) interest saved by the Group or any member thereof as the result of any credit,

offset or abatement. The Company will notify Milbank immediately of all refunds or credits, offsets or abatements, and Milbank will render statements for the Payment promptly thereafter. Statements (or portions thereof) paid by the Company are to be paid pursuant to this Agreement, in accordance with the terms of this Agreement and the applicable orders of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders.

Litigation. If a requested correction is denied or if it is reduced or eliminated by an adjustment made by IRS or the appropriate state agency or if it is necessary to protect against the running of a statute of limitations, Milbank may request the relevant parties for authorization to litigate. If such authorization is granted, Milbank will be entitled to conduct such litigation at no expense to the party other than the Payment attributable to the correction that is the subject of such litigation. (The authorization or conduct of such litigation does not relieve any party from liability for other Payments attributable to corrections pursuant to this engagement that are not the subject of litigation.) If the party does not grant such authorization and pursues the matter on its own or with other counsel, Milbank will nonetheless be entitled to the Payment. However, if Milbank does not request such authorization, and the party pursues the matter on its own or with other counsel (if permitted hereby), Milbank will not be entitled to the Payment.

Miscellaneous Recoveries. If any correction identified to the Company by Milbank in the course of this engagement (i) is realized by being applied to any exclusions or (ii) is compromised or otherwise disposed of as part of the settlement of any liability of the Group or any member thereof, Milbank will be entitled to a Payment with respect to the full amount of the correction, including interest, that is so realized, compromised or otherwise disposed of (even if for an amount less than the correction, including interest). Moreover, if, in the course of reviewing a correction submitted by Milbank, the IRS or the appropriate state agency makes favorable additional corrections, whether or not related to the correction submitted by Milbank (collectively, "Additional Corrections"), Milbank will be entitled to the Payment with respect to the Additional Corrections. Any Payment with respect to the miscellaneous recoveries described in this paragraph will be in addition to any other Payment under this agreement. Also, Milbank will be entitled to the Payment with respect to any credit balances that Milbank identifies during the Term unless previously advised by a party that it is aware of such balances. At present, the Company is not aware of any credit balances, except as set forth on Schedule A hereto.

Reasonableness of Payment. The parties acknowledge that a substantial professional commitment of time and effort will be required of Milbank and its professionals hereunder. Moreover, the actual time and commitment required for the engagement may vary substantially. Given the numerous issues that may arise in engagements such as this, Milbank's commitment to the variable level of time and effort necessary to address such issues, the expertise and capabilities of Milbank that will be required in this engagement, and the market rate for Milbank's services of this nature, whether in-court or out-of-court, the parties agree that the fee arrangement provided for herein is reasonable, fairly compensates Milbank, and provides the requisite certainty to the Company.

Company Engagement. The Company understands that Milbank currently represents the official committee of unsecured creditors of each of the Debtors (the "Committee"). Milbank understands that, for purposes of this Agreement, it is providing services solely to the Company, and is not providing any services to or on behalf of the Committee. Accordingly, Milbank agrees to provide any information it may acquire or generate in connection with the representation described herein solely to the Company, which, in turn, will determine what information, if any, will be shared with the Committee.

4

Conflicts of Interest. The Company understands that (i) as mentioned above, Milbank currently represents the Committee in the Cases, and (ii) Milbank is currently involved in situations that may in some way relate to the Debtors or the Debtors' affiliates and that, to the extent known, will be disclosed to the Bankruptcy Court. The Company further understands that, in the course of its business, Milbank will encounter situations in which its services or activities will in some way relate to one or more the Debtors or the Debtors' affiliates. The Company further understands that it is impractical for Milbank to refuse all such opportunities throughout the pendency of these Cases and that the technical and non-adversarial nature of this engagement is unlikely to lead to any material legal conflicts. As such, the Company has given clearance for Milbank to work on related matters, provided that Milbank will (i) explain the situation to the Debtors and their counsel to obtain the Debtors' consent and to establish that there are no interests represented that are materially adverse to the Debtors' estates; (ii) commit that staffing for such assignment would not include any members of the team working on these Cases; and (iii) provide disclosure to the Court and the Office of the United States Trustee regarding such assignment. Milbank will not, without the Company's prior approval, reveal to another client or use to its disadvantage any confidential information or secrets gained by it in the course of this engagement and will, where appropriate to that end, establish internal procedures to ensure that such confidentiality will be preserved.

Waiver. The Debtors hereby waive any objections they may have to Milbank's continuing to act as counsel to the Committee in these Cases and shall not seek to disqualify Milbank as counsel to the Committee nor to assert any impropriety on Milbank's part, on account of Milbank's concurrent employment by the Committee and the Company (as set forth herein). Milbank represents that the Committee has waived any objections it may have to Milbank's representation of the Company in these Cases and for the purposes described herein and has agreed not to seek to disqualify Milbank as special counsel to the Company nor to assert any impropriety on Milbank's part, on account of Milbank's employment by the Company.

Confidentiality. None of the following may be disclosed outside the Company (except to its auditors, its counsel, the Committee, or counsel to the Committee, to the extent required in the course of their professional duties) without Milbank's prior approval: (i) the technical basis for any correction or (ii) the amount of any correction.

Termination. In the event of termination of the engagement by any party, Milbank will be entitled to the Payment with respect to corrections Milbank has previously identified to the party or identifies within 30 days after such termination, but that are realized in whole or in part subsequent to termination.

Bankruptcy Court Approval. The Company shall seek an order (i) authorizing the employment of Milbank pursuant to the terms of this Agreement, as special counsel to the Company pursuant to, and subject to the standard of review of, section 327(e) of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules and orders, and (ii) providing that Milbank's employment hereunder shall not be subject to any other standard of review under section 330 of the Bankruptcy Code. In so agreeing to seek Milbank's retention under section 327(e) of the Bankruptcy Code, the Company acknowledges that it believes that Milbank's general experience and expertise, and specifically, its knowledge of the field of examining and concluding the proper amounts of interest that a taxpayer should be paying as a liability to the IRS or receiving benefit on a refund or credit due to it resulting from the conclusion of tax audits, will inure to the benefit of the Company, that the value to the Company of Milbank's services derives in substantial part from that expertise and experience and that, accordingly, the structure and amount of the Payment is reasonable regardless of the number of hours to be expended by Milbank's professionals in the performance of the services to

be provided hereunder. If the order authorizing the employment of Milbank is obtained, the Company shall pay all fees due pursuant to this Agreement, as promptly as possible in accordance with the terms of this Agreement and the applicable orders of such Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules and applicable local rules and orders.

<u>Choice of Law; Jury Trial Waiver; Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the law of the State of New York. All disputes arising out of or related to this Agreement shall be governed by, and construed in accordance with, the laws of the State of New York. Each party hereto irrevocably waives any right to trial by jury in any action, proceeding or counterclaim (whether based upon contract, tort or otherwise) related to or arising out of the engagement of Milbank pursuant to, or the performance by Milbank of the services contemplated by, this Agreement. Regardless of any present or future domicile or principal place of business of the parties hereto, each party hereby irrevocably consents and agrees that any claims or disputes between or among the parties hereto arising out of or related to this Agreement shall be brought and maintained in the Bankruptcy Court.

<u>Notices</u>. All notices, approvals and other communications pursuant to this agreement shall be in writing.

<u>Miscellaneous</u>. This Agreement shall be binding upon the parties hereto and their respective successors, heirs and assigns and any successor, heir or assign of any substantial portion of such parties' respective businesses and/or assets, including any chapter 11 or chapter 7 trustee appointed in the Cases.

Nothing in this Agreement, express or implied, is intended to confer on any person or entity, other than the parties and each of their respective successors, heirs and assigns, any rights or remedies under or by reason of this Agreement or as a result of the services to be rendered by Milbank hereunder.

This Agreement is the complete and exclusive statement of the entire understanding of the parties regarding the subject matter hereof, and supersedes all previous agreements or understandings regarding the same, whether written or oral. This Agreement may not be amended, and no portion hereof may be waived, except in a writing duly executed by Milbank or the Company (and, in the case of any of the Debtors, approved by the Bankruptcy Court).

The invalidity and unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision of this Agreement, which shall remain in full force and effect pursuant to the terms hereof.

This Agreement may be executed in any number of counterparts, each of which will be deemed an original and all of which will constitute one and the same instrument. Such counterparts may be delivered by one party to the other by facsimile or other electronic transmission, and such counterparts shall be valid for all purposes.

The Company has all requisite power and authority to enter into this Agreement and perform its obligations hereunder, subject only to Bankruptcy Court approval, as applicable. This Agreement has been duly and validly authorized by all necessary action on the part of the Company, and has been duly executed and delivered by such party and constitutes a legal, valid and binding agreement of such party, enforceable in accordance with its terms, subject only to Bankruptcy Court approval, as applicable. This Agreement has been reviewed by the signatories hereto and their counsel. There shall be no construction of any provision against Milbank

6

because this Agreement was drafted by Milbank, and the parties waive any statute or rule of law to such effect.

> We thank you for retaining Milbank and look forward to working with you on this engagement.

Sincerely yours,

MILBANK, TWEED, HADLEY & MCCLOY LLP

By _____
    General Partner

Accepted and Agreed:

LEHMAN BROTHERS HOLDINGS INC.

By _____
    Title:
    Date: 12/21/10

## **Exhibit B**

**Affidavit of Glenn S. Gerstell**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x
In re:                                          :    Chapter 11
                                                :
LEHMAN BROTHERS HOLDINGS INC., et al.,          :    08-13555 (JMP)
                                                :
                       Debtors.                 :    (Jointly Administered)
-----------------------------------------------------------------x

**AFFIDAVIT OF GLENN S. GERSTELL IN SUPPORT OF APPLICATION OF
THE DEBTORS PURSUANT TO SECTIONS 327(e) AND 328(a) OF THE
BANKRUPTCY CODE AND RULE 2014 OF THE FEDERAL RULES OF
BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN
MILBANK, TWEED, HADLEY & McCLOY LLP, AS SPECIAL COUNSEL TO THE
DEBTORS IN CONNECTION WITH CERTAIN TAX RELATED MATTERS**

DISTRICT OF COLUMBIA          )
                              )    SS.:
                              )

         GLENN S. GERSTELL, being duly sworn, says:

         1.       I am a partner of the firm of Milbank, Tweed, Hadley & McCloy LLP

("Milbank"), and the head of Milbank's Tax Account and Analysis Recovery Services

("TAARS®") practice.  Milbank is an international law firm with its principal office located at

One Chase Manhattan Plaza, New York, New York 10005, and with other offices located in

Washington, D.C., Los Angeles, London, Frankfurt, Munich, Tokyo, Singapore, Hong Kong and

Beijing.

         2.       I submit this affidavit in support of the application dated March 4, 2011

(the "Application")[1] filed by Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors

in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the
Application.

"Debtors") seeking authorization to employ and retain Milbank as special counsel to the Debtors

with respect to the Milbank TAARS® Matters, as described in greater detail below and in the

Application, and to provide the disclosures required under Bankruptcy Rules 2014(a) and

2016(b). Milbank Tweed's Executive Committee established a task force (the "Task Force") to

oversee the process of identifying to the fullest extent possible all connections that Milbank, and

its attorneys and employees, had in the past and presently have to the Debtors, Lehman, the

chapter 11 cases, and the parties in interest in the chapter 11 cases and to gather the information

required to complete this Affidavit. I have consulted with, and relied upon the input obtained

from, the members of the Task Force and I, or other members of the Task Force, have knowledge

of all facts described herein.

3.      Unless otherwise stated in this Affidavit, I have knowledge of the facts set

forth herein and, if called as a witness, I would testify thereto.[2]

**Services Performed by Milbank**

4.      The Debtors seek to retain Milbank as special counsel to the Debtors

pursuant to section 327(e) of the Bankruptcy Code to perform legal services in connection with

the Milbank TAARS® Matters set forth below, in the Engagement Letter, and in the

Application. Milbank has extensive knowledge and experience with each of these kinds of

matters, as Milbank's TAARS® program has been practiced by Milbank for more than twenty

years – longer than any other law firm[3] or accounting firm.[4] During such time, Milbank has been

---

[2] Certain of the disclosures set forth herein relate to matters not within my personal knowledge, but rather within the personal knowledge of other attorneys and employees at Milbank, and are based on information provided by them to the Task Force.

[3] In fact, I am not aware of any law firm that provides the services that Milbank provides through its TAARS® program.

a leader[5] in the field of examining and concluding the proper amounts of interest that a taxpayer

should be paying as a liability to the IRS as well as state and local taxing authorities or receiving

benefit on a refund or credit due to it resulting from the conclusion of tax audits.  Indeed,

Milbank's use of its TAARS® program, along with its ability to (a) make the type of

sophisticated legal judgments about statutes of limitations and other determinations regarding the

legal effect of fund movements within a company's accounts, and (b) accurately assess the legal

theories that determine the date of payment to the IRS or state or local taxing authorities by a

company or vice versa (a common reason the IRS and state and local taxing authorities

miscalculate their interest payments), has given rise to very substantial recoveries of wrongly

determined tax interest in favor of major taxpayer companies.  In addition, Milbank is familiar

with many governmental positions regarding methodologies for calculating interest and imposing

and abating penalties that are not publicly available or otherwise published, including some that

are not even widely known within the taxing authority.  Finally, although Milbank's TAARS®

group comprises lawyers and accountants, essential components of the services rendered through

Milbank's TAARS® program require considerations of a legal nature.  Indeed, Milbank is

apparently unique among the handful of service providers in this area in that the firm will litigate

denials of claims (whether through administrative proceedings or judicial proceedings), all under

the same contingent fee arrangement.  Accordingly, I believe that Milbank is both well qualified

and uniquely able to provide the services described below and that its retention would be in the

best interest of the estates, the Debtors' creditors, and other parties in interest.

---

[4] I am aware of a few accounting firms that provide services similar to Milbank's TAARS® program; however, Milbank is the only firm that provides the full scope of tax-related services encompassed in Milbank's TAARS® program, including the litigation of claims arising from such services.

[5] Indeed, Milbank has been retained by approximately 40% of the Fortune 100 companies to perform the kind of services for which the Debtors are seeking to retain Milbank.

5.      The Debtors have requested that Milbank, through its TAARS® program, review interest determinations made (or in the process of being made) by the Internal Revenue Service (the "IRS") and by state and local taxing authorities for LBHI and certain of its current and former domestic subsidiaries (the "Group") with respect to the Group's 1997-2007 tax years. Specifically, the Debtors have asked that Milbank: (a) with respect to (i) all federal taxes (including income, excise and employment-related taxes) and (ii) such state and local taxes that LBHI, on behalf of the Group, may request Milbank to review and (b) with respect to all payments, deposits, credits, offsets, refunds, transfers, adjustments and accounts associated with any of the foregoing taxes:

   a.  Determine whether there are overcharges of interest and penalties (relating to taxes and/or interest);

   b.  Determine whether there are underallowances of interest on refunds, credits or offsets;

   c.  Determine whether there are credit balances or other account errors in respect of taxes, interest or penalties; and

   d.  Pursue administratively with the IRS or the appropriate state or local agency the corrections Milbank identifies with respect to items a through c above (as a refund or by means of credit, offset or abatement). In that regard, Milbank will set forth in writing the basis for each requested correction.[6]

6.      In connection with the Milbank TAARS® Matters, as described in the Engagement Letter, LBHI, on behalf of the Debtors, will notify Milbank immediately of all refunds or credits, offsets or abatements received, and Milbank will render statements for the Payment (defined below) promptly thereafter. Milbank anticipates that its engagement by the Debtors with respect to the Milbank TAARS® Matters will require more than one year (and

---

[6] Although Milbank will assess tax interest liability through its TAARS® program, it will not question or verify the correctness of the Group's substantive tax liability, thereby preventing (a) the re-opening of any legal issues and (b) the IRS from re-litigating the underlying tax liability.

perhaps years) of work. At this time, Milbank is not able to estimate the amount it may recover for the Debtors in connection with the Milbank TAARS® Matters, because it has not been given access to the Debtors' federal, state, or local tax returns.

7.      Because Milbank is not serving as the Debtors' bankruptcy counsel (general or otherwise), it is my view that Milbank has not rendered "services . . . in contemplation of or in connection with the case" within the meaning of section 329(a) of the Bankruptcy Code. Milbank's postpetition work will consist solely of representing the Debtors in connection with the Milbank TAARS® Matters. None of these matters involve the conduct of the bankruptcy cases themselves. Accordingly, the services rendered and functions to be performed by Milbank will not be duplicative of any bankruptcy-related work performed by other law firms retained by the Debtors. Moreover, the services to be rendered by Milbank will not be duplicative of any tax-related work performed by other law firms retained by the Debtors, given that the legal aspects of the Milbank TAARS® services comprise a specialized niche within a larger tax practice, and, as mentioned above, such legal services are not, at this time, capable of being provided by any law firm currently retained by the Debtors. As a result of the foregoing, I believe that Milbank is qualified to represent the Debtors as special counsel pursuant to section 327(e) of the Bankruptcy Code.

**Milbank's "Connections" with Parties in Interest**

8.      I understand from my discussion with members of the Task Force that Milbank has, and continues to, set forth all of its "connections" with parties in interest in the Initial Affidavit, sworn to on October 21, 2008, the First Supplemental Affidavit, sworn to on November 13, 2008, the Second Supplemental Affidavit, sworn to on January 30, 2009, the Third Supplemental Affidavit, sworn to on May 29, 2009, the Fourth Supplemental Affidavit

sworn to on July 20, 2009, the Fifth Supplemental Affidavit, sworn to on December 23, 2009,

the Sixth Supplemental Affidavit, sworn to on March 18, 2010, and the Seventh Supplemental

Affidavit, sworn to on May 25, 2010, and the Eighth Supplemental Affidavit, sworn to on

October 9, 2010 (collectively, the "Prior Affidavits"), each submitted by Robert Jay Moore

pursuant to sections 328 and 1103(b) of the Bankruptcy Code, Rules 2014 and 5002 of the

Bankruptcy Rules, and Rule 2014-1 of the Local Rules, in connection with Milbank's retention

as counsel to the Creditors' Committee of the Debtors in the above-captioned chapter 11 cases.

The Prior Affidavits are hereby incorporated by reference herein, and I respectfully refer the

Court to such Prior Affidavits for a full accounting of Milbank's "connections" to the Debtors,

their creditors, other parties in interest, their respective attorneys and accountants, the U.S.

Trustee, or any person employed by the U.S. Trustee.

9.    With respect to Milbank's "connections" to the Creditors' Committee, it is

important to note that the Debtors have waived any objections they may have to Milbank's

continuing to act as counsel to the Creditors' Committee in these cases and will not seek to

disqualify Milbank as counsel to the Creditors' Committee on other matters, including other tax

matters, nor will they assert any impropriety on Milbank's part, on account of Milbank's

concurrent employment by the Creditors' Committee and the Debtors (as described in the

Application and in the Engagement Letter).  Similarly, the Creditors' Committee has waived any

objections it may have to Milbank's representation of the Debtors in these cases and for the

purposes described in the Application and in the Engagement Letter and has agreed not to seek to

disqualify Milbank as special counsel to the Debtors nor to assert any impropriety on Milbank's

part, on account of Milbank's employment by the Debtors.

10.    In addition, the Firm has imposed (and will maintain) tailored screening procedures in the form of ethical walls between the Milbank TAARS® Team and the files and information relating to its representation of the Debtors and the Milbank Creditors' Committee Team and the files and information relating to its representation of the Creditors' Committee.  To that end, (i) none of the professionals constituting the Milbank TAARS® Team will include professionals on the Milbank Creditors' Committee Team, and similarly, none of the professionals comprising the Milbank Creditors' Committee Team will include professionals on the Milbank TAARS® Team; (ii) the majority of the professionals constituting the Milbank TAARS® Team are either located in Florida or on a different floor than the professionals comprising the Milbank Creditors' Committee Team; (iii) no member of the Milbank TAARS® Team has been or will be included on distribution lists maintained by the Milbank Creditors' Committee Team or the Creditors' Committee, and no member of the Milbank Creditors' Committee Team will be included on distribution lists maintained by the Milbank TAARS® Team or the Debtors; (iv) no emails received in connection with services performed by each of the Milbank TAARS® Team and the Milbank Creditors' Committee Team will be disclosed to the other team; and (v) no files will be shared between the Milbank TAARS® Team and the Milbank Creditors' Committee Team.  Thus, I do not believe that any conflict exists with respect to this engagement and Milbank's retention as counsel to the Creditors' Committee.

**Professional Compensation**

11.    As of the date of this Affidavit, except for fees received in connection with these chapter 11 cases, Milbank is not owed, and has not received, any amounts in unpaid fees incurred from the Debtors as of the Commencement Date.

12.     In the ordinary course of business, Milbank is retained and compensated on a fixed percentage fee basis – and not an hourly basis – for all work it performs through its TAARS® program. Given the contingency fee nature of Milbank's compensation with respect to work performed through its TAARS® program, and the fact that client recoveries are not tied to the amount of professional time expended, Milbank's TAARS® professionals – including attorneys – do not maintain time records for any client activity in the TAARS® program, nor (with the exception of one senior attorney and myself, who both handle other client matters) do they have standard hourly billing rates. Nonetheless, at the request of the U.S. Trustee, Milbank has agreed to maintain time records for services performed in increments of one-quarter of an hour, on the condition that Milbank's contingency fee arrangement, for which Milbank is seeking approval pursuant to section 328(a) of the Bankruptcy Code, shall not be subject to a post-hoc reasonableness inquiry, and the time records submitted by Milbank shall not be used by the Debtors, the Creditors' Committee, the U.S. Trustee, or any other party in interest to challenge the reasonableness of Milbank's compensation.

13.     As more fully set forth in the Engagement Letter, Milbank will be entitled to receive the following fees, pursuant to section 328(a) of the Bankruptcy Code and subject to approval of the Bankruptcy Court:

a. Payment. Milbank will be entitled to the following payment schedule: a payment (the "Payment") equal to (i) fifteen percent (15%) of each correction with respect to federal taxes for the first $25 million of corrections; (ii) ten percent (10%) of each correction from $25 million to $30 million; (iii) five percent (5%) of each correction over $30 million; and (iv) twenty percent (20%) of each correction with respect to state and local taxes, in each case including interest thereon, secured with respect to items a through c above under paragraph 5. For purposes of this engagement, corrections will include (i) amounts refunded or credited to the Group or any member thereof, (ii) offsets to, or abatements of, any liability of the Group or any member thereof, and (iii) interest saved by the Group or any member thereof as the result of any credit, offset or abatement. LBHI, on the

Group's behalf, will notify Milbank immediately of all refunds or credits, offsets or abatements, and Milbank will render statements for the Payment promptly thereafter.

b.  <u>Litigation</u>.  If a requested correction is denied or if it is reduced or eliminated by an adjustment made by IRS or the appropriate state or local agency or if it is necessary to protect against the running of a statute of limitations, Milbank may request the relevant parties for authorization to litigate.  If such authorization is granted, Milbank will be entitled to conduct such litigation at no expense to the party other than the Payment attributable to the correction that is the subject of such litigation.  (The authorization or conduct of such litigation does not relieve any party from liability for other Payments attributable to corrections pursuant to this engagement that are not the subject of litigation.)  If the party does not grant such authorization and pursues the matter on its own or with other counsel, Milbank will nonetheless be entitled to the Payment.  However, if Milbank does not request such authorization, and the party pursues the matter on its own or with other counsel (if permitted hereby), Milbank will not be entitled to the Payment.

c.  <u>Miscellaneous Recoveries</u>.  If any correction identified to LBHI, on behalf of the Group, by Milbank in the course of this engagement (i) is realized by being applied to any exclusions or (ii) is compromised or otherwise disposed of as part of the settlement of any liability of the Group or any member thereof, Milbank will be entitled to a Payment with respect to the full amount of the correction, including interest, that is so realized, compromised or otherwise disposed of (even if for an amount less than the correction, including interest).  Moreover, if, in the course of reviewing a correction submitted by Milbank, the IRS or the appropriate state or local agency makes favorable additional corrections, whether or not related to the correction submitted by Milbank (collectively, "<u>Additional Corrections</u>"), Milbank will be entitled to the Payment with respect to the Additional Corrections.  Any Payment with respect to the miscellaneous recoveries described in this paragraph will be in addition to any other Payment under this agreement.  Also, Milbank will be entitled to the Payment with respect to any credit balances that Milbank identifies during the Term unless previously advised by a party that it is aware of such balances.  At present, LBHI is not aware of any credit balances, except as set forth on Schedule A to the Engagement Letter.

14.    While Milbank's compensation will be determined pursuant to section 328(a) of the Bankruptcy Code, Milbank will nevertheless file and serve requests for interim and final compensation in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Procedure, and any administrative orders establishing procedures for the interim compensation of professionals in these cases.

15.     Other than as set forth above, there is no proposed arrangement between the Debtors and Milbank for compensation to be paid in these chapter 11 cases.  Milbank has no agreement with any other entity to share any compensation received, nor will any be made, except as permitted under section 504(b)(l) of the Bankruptcy Code.

16.     The proposed employment of Milbank is not prohibited by or improper under Rule 5002 of the Bankruptcy Rules.

_____
GLENN S. GERSTELL

Sworn to before me this 4th day
of March 2011

_____
Clara E. Helbringer
Notary Public for the District of Columbia
My Commission Expires September 30, 2013