Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case Nos. 08-13555(JMP); 08-01420(JMP)(SIPA); adv. 10-3211;

5    adv. 10-03545; adv. 09--1480; adv. 10-05428

6    - - - - - - - - - - - - - - - - - - - - - x

7    In the Matters of:

8    LEHMAN BROTHERS HOLDINGS INC., et al.

9                 Debtors.

10   - - - - - - - - - - - - - - - - - - - - - x

11   LEHMAN BROTHERS INC.,

12                 Debtor.

13   - - - - - - - - - - - - - - - - - - - - -x

14   LEHMAN BROTHERS HOLDING INC.,

15                       Plaintiff,

16             -vs-

17   UNITED STATES OF AMERICA

18                       Defendant.

19   - - - - - - - - - - - - - - - - - - - - -x

20   LEHMAN BROTHERS SPECIAL FINANCING INC.

21                       Plaintiff,

22             -vs-

23   THE BANK OF NEW YORK MELLON CORPORATION, et al.

24                       Defendant.

25   - - - - - - - - - - - - - - - - - - - - -x

Page 2

1  - - - - - - - - - - - - - - - - - - - - - - - x

2  PT BANK NEGARA INDONESIA (PERSERO) TBK

3                          Plaintiff,

4                  -vs-

5  LEHMAN BROTHERS SPECIAL FINANCING, INC. et al.

6                          Defendant.

7  - - - - - - - - - - - - - - - - - - - - - - - x

8  WENDY M. UVINO,

9                          Plaintiff,

10                  -vs-

11  LEHMAN BROTHERS HOLDING, INC., et al.

12                          Defendant.

13  - - - - - - - - - - - - - - - - - - - - - -x

14               United States Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  February 16, 2011

19                  10:05 AM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

Page 3

1

2    HEARING re:  Debtors' Motion of the Bank of Nova Scotia for

3    Relief from the Automatic Stay [Docket No. 13889]

4

5    HEARING re:  Debtors' Motion for Authorization and Approval of

6    a Settlement and Compromise Among Lehman Brothers Holding Inc.,

7    Lehman Commercial Paper Inc. and Swedbank AB, New York Branch

8    [Docket No. 14165]

9

10   HEARING re:  Debtor Lehman Commercial Paper Inc.'s Motion for

11   Order Approving a Settlement Agreement Among the Debtor,

12   Greenbrier Minerals Holdings, LLC and Certain of its

13   Affiliates, Midland Trail Resources, LLC and Dolphin Mining,

14   LLC [Docket No. 14291]

15

16   HEARING re:  Debtors' Motion for Authorization to Implement

17   Alternative Dispute Resolution Procedures for Affirmative

18   Claims of the Debtors Under Derivatives Transactions with

19   Special Purpose Vehicle Counter parties [Docket No. 13009]

20

21   Adversary Proceedings: [Adv. Case No. 10-03211]

22

23   HEARING re: Debtor Lehman Brothers Holding, Inc. for a Letter

24   of Request for International Judicial Assistance [Docket No.

25   29]

1

2   HEARING re:  Motion of United States of America to Approve

3   Letter of Request for International Judicial Assistance [Docket

4   No. 31]

5

6   Adversary Proceedings: [Adv. Case No. 10-03545]

7

8   HEARING re:  Motion of the Dante Noteholders to Intervene

9   [Docket No. 9]

10

11  HEARING re:  Motion of the Liquidators of Lehman Brothers

12  Australia Limited Seeking to Intervene in the Adversary

13  Proceeding Relating to Certain Swap Transactions [Docket No.

14  11]

15

16  HEARING re:  Debtors' Motion for an Order Enforcing the

17  Automatic Stay Against Greenbrier Minerals Holdings, LLC

18  (Docket No. 9729]

19

20  HEARING re:  Motion of Englewood Management LLC for an Order

21  Directing Lehman Brothers Holdings Inc. to Release and Return

22  Non-Estate Property [Docket No. 13063]

23

24

25

Page 5

1

2      HEARING re:  Debtors' Motion to Assume Certain Aircraft Lease

3      Agreements and to Consummate Certain Related Transactions

4      [Docket No. 3218]

5

6      HEARING re:  Motion of Cascade Investment, LLC for Leave to

7      Conduct Discovery of (1) the Debtors, and (2) JPMorgan Chase

8      Bank, N.A. [Docket No. 12120]

9

10     HEARING re:  Motion to Compel Congregation Machne Chaim to

11     Respond to Rule 2004 Subpoena [Docket No. 13105]

12

13     HEARING re:  Motion of U.S. Bank National Association as

14     Trustee for the Structured Asset Securities Corporation, Series

15     2005-GEL2 for Relief from the Automatic Stay [Case No. 09-

16     10137, Docket No. 11]

17

18     HEARING re:  Motion of U.S. Bank National Association, as

19     Trustee for the Structured Asset Investment Loan Trust, 2005-

20     HE3 for Relief from the Automatic Stay [Case No. 09-10137,

21     Docket No. 13]

22

23     HEARING re:  Motion of Factiva, Inc., et al., to Compel

24     Immediate Payment of Post-Petition Administrative Expense

25     Claims [Docket No. 7102]

1

2     HEARING re:  Motion of Fidelity National Title Insurance

3     Company to Compel Compliance with Requirements of Title

4     Insurance Policies [Docket No. 11513]

5

6     Adversary Proceedings: [Adv. Case No. 09-014801]

7

8     HEARING re:  Defendants' Motion to Dismiss Adversary Complaint

9     [Docket No. 4]

10

11    HEARING re:  Motion of Travis County, Texas to File Proof of

12    Claim After Claims Bar Date [Docket No. 10829]

13

14    HEARING re: Motion of Newport Global Opportunities Fund L.P.

15    for an Order Pursuant to Bankruptcy Code Section 105(a)

16    Compelling the Trustee to Execute an Affidavit of Lost

17    Securities [Docket No. 4012]

18

19    HEARING re:  Motion of Newport Global Opportunities Fund L.P.

20    for Entry of an Order Authorizing Newport to File Under Seal

21    the Motion for an Order Pursuant to Bankruptcy Code Section

22    105(a) Compelling the Trustee to Execute an Affidavit of Lost

23    Securities and a Certain Exhibit Thereto [Docket No. 4013]

24

25

Page 7

1

2    HEARING re:  Motion of MainStay High Yield Opportunities Fund

3    for an Order Pursuant to Sections 362, 541 and 105 of the

4    Bankruptcy Code for Relief from the Automatic Stay to Remove

5    Lehman Brothers Inc. as Agent and Granting Related Relief

6    [Docket No. 3614]

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 8

1   A P P E A R A N C E S :

2   WEIL, GOTSHAL & MANGES LLP

3        Attorneys for Debtors and Debtors-in-Possession

4        767 Fifth Avenue

5        New York, NY 10153

6

7   BY:   RICHARD W. SLACK, ESQ.

8        BRENNAN HACKETT, ESQ.

9        ALFREDO R. PEREZ, ESQ.

10

11  WEIL, GOTSHAL & MANGES LLP

12       Attorneys for Lehman Bros Special Financing Debtor

13       1300 Eye Street NW, Suite 900

14       Washington, DC  2005-3314

15

16  BY:   RALPH I. MILLER, ESQ.

17

18  STUTMAN, TREISTER & GLATT

19       Attorneys for Interested Parties

20       1901 Avenue of the Stars

21       12th Floor

22       Los Angeles, CA 90067

23

24  BY:   MICHAEL NEUMEISTER, ESQ. (TELEPHONICALLY)

25       JEFFREY H. DAVISON, ESQ. (TELEPHONICALLY)

Page 9

1

2   HUGHES HUBBARD & REED LLP

3        Attorneys for the SIPA Trustee

4        One Battery Park Plaza

5        New York, NY 10004

6

7   BY:   JEFFREY S. MARGOLIN, ESQ.

8        JAMES B. KOBAK, JR., ESQ.

9

10  REED SMITH LLP

11       Attorneys for Bank of New York Mellon,

12       As Indenture Trustee

13       599 Lexington Avenue

14       New York, NY  10022

15

16  BY:   ERIC A. SCHAFFER, ESQ.

17       MICHAEL VENDITTO, ESQ.

18       JOSEPH FILLOY, ESQ. (TELPHONICALLY)

19

20  NIXON PEABODY LLP

21       Attorneys for Deutsche Bank as Trustee

22       100 Summer Street

23       Boston, MA  02110

24

25  BY:   RICHARD C. PEDONE, ESQ.

Page 10

1

2   NIXON PEADODY LLP

3         Attorneys for Wellington Management

4         437 Madison Avenue

5         New York, NY  10022

6

7   BY:   MARK N. BERMAN, ESQ.

8

9   MILBANK, TWEED, HADLEY & MCCLOY LLP

10         Attorneys for Official Committee

11         One Chase Manhattan Plaza

12         New York, NY  10005

13

14   BY:   DENNIS F. DUNNE, ESQ.

15         EVAN FLECK, ESQ.

16         DENNIS C. O'DONNELL, ESQ.

17

18   ORRICK, HERRINGTON & SUTCLIFF LLP

19         Attorneys for Bellyrock

20         51 West 52nd Street

21         New York, NY  10019

22

23   BY:   STEVEN J. FINK, ESQ.

24

25

Page 11

1

2   CHAPMAN AND CUTLER LLP

3        Attorneys for U.S. Bank National Association,

4        As Trustee

5        111 West Monroe Street

6        Chicago, IL  60603

7

8   BY:   FRANKLIN H. TOP III, ESQ.

9        JAMES HEISER, ESQ. (TELEPHONICALLY)

10       FRANKLIN TOP, ESQ. (TELEPHONICALLY)

11

12  PRYOR CASHMAN LLP

13       Attorneys for HSBC Bank USA, as Trustee

14       7 Times Square

15       New York, NY  10036

16

17  BY:   RICHARD LEVY, JR., ESQ.

18       SEAN CONNERY, ESQ.

19

20  KATTEN MUCHIN ROSENMAN, LLP

21       Attorneys for Bank of Nova Scotia

22       575 Madison Avenue

23       New York, NY  10022

24

25  BY:   MATTHEW OLSEN, ESQ.

Page 12

1

2   SIDLEY AUSTIN, LLP

3        Attorneys for Principal Global Investors (Europe),

4        Principal Life Insurance Company

5        787 Seventh Avenue

6        New York, NY  10019

7

8   BY:   MICHAEL G. BURKE, ESQ.

9

10   CHADBOURNE & PARKE, LLP

11        Attorneys for HSBC Bank, as Indenture Trustee

12        30 Rockefeller Plaza

13        New York, NY  10112

14

15   BY:   CHRISTY L. RIVERA, ESQ.

16

17   GENOVESE, JOBLOVE & BATTISTA P.A.

18        Attorneys for Wong

19        200 East Broward Blvd.

20        Suite 1110

21        Fort Lauderdale, FL  33301

22

23   BY:   ROBERT F. ELGIDELY, ESQ.

24

25

Page 13

1

2    ROBBINS, GELLER, RUDMAN & DOWD LLP

3          Attorneys for Wong

4          One Montgomery Street

5          Suite 1800

6          San Francisco, CA  94104

7

8    BY:  JASON C. DAVIS, ESQ.

9

10   DLA PIPER LLP

11         Attorneys for Swedbank

12         1251 Avenue of the Americas

13         New York, NY  10020

14

15   BY:  WILLIAM M. GOLDMAN, ESQ.

16

17   JONES DAY

18         Attorneys for Lehman

19         222 East 41st Street

20         New York, NY  10017

21

22   BY:  RICHARD ENGMAN, ESQ.

23

24

25

Page 14

1

2    HAYNE AND BOONE, LLP

3          Attorneys for Five Mile Capital

4          30 Rockefeller Plaza

5          26th Floor

6          New York, NY 10112

7

8    BY:   JONATHAN HOOK, ESQ.

9

10   U.S. DEPARTMENT OF JUSTICE

11         Office of the United States Trustee

12         33 Whitehall Street

13         21st Floor

14         New York, NY 10004

15

16   BY:   ELISABETTA G. GASPARINI, TRIAL ATTORNEY

17

18   U.S. DEPARTMENT OF JUSTICE

19         Office of the United States Trustee

20         86 Chambers Street

21         Room 617

22         New York, NY  10007

23

24   BY:   JAMES NICHOLAS BOEVING, ASSISTANT U.S. ATTORNEY

25         JEAN-DAVID BARNEA, ASSISTANT U.S. ATTORNEY

Page 15

1

2   MILBANK, TWEED, HADLEY & MCCLOY LLP

3         Attorneys for the Official Committee of Unsecured

4          Creditors

5         One Chase Manhattan Plaza

6         New York, NY 10005

7

8   BY:   STACY J. RAPPAPORT, ESQ..

9

10  KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

11        Attorneys for Dante Noteholders

12        1633 Broadway

13        New York, NY 10019

14

15  BY:   ANDREW K. GLENN, ESQ.

16

17  BINGHAM MCCUTCHEN

18        Attorneys for Lehman Brothers Holdings Inc.

19        2020 K Street N.W.

20        Washington, DC 20006

21

22  BY:   RAJ MADAN, ESQ.

23        KIARA RANKIN, ESQ.

24

25

Page 16

1

2    KIRKLAND & ELLIS LLP

3          Attorneys for Liquidators of Lehman Brothers Australia

4          300 North LaSalle

5          Chicago, IL  60654

6

7    BY:   DAVID R. SELIGMAN, P.C.

8

9

10   LINKLATERS, LLP

11         Attorneys for Lehman Brothers Europe

12         1345 Avenue of the Americas

13         New York, NY  10105

14

15   BY:   PAUL HESSLER, ESQ.

16

17   BUCHANAN INGERSOLL & ROONEY, P.C.

18         Attorneys for Green Briar

19         Two Liberty Place, 50 S. 16th Street

20         Suite 3200

21         Pennsylvania, PA  19102

22

23   BY:   MARK PFEIFFER, ESQ. (TELEPHONICALLY)

24         WILLIAM SCHORLING, ESQ. (TELEPHONICALLY)

25         DONALD MALECKI, ESQ. (TELEPHONICALLY)

Page 17

1

2   MILLER STARR REGALIA P.C.

3        Attorneys for Fidelity National Title Insurance

4        13312 N. California Blvd.

5        Fifth Floor

6        Walnut Creek, CA  94596

7

8   BY:   TARA CASTRO NARAYANAN, ESQ. (TELEPHONICALLY)

9

10   BROWN RUDNICK LLP

11        Attorneys for the Ad Hoc Group of Creditors

12        One Financial Center

13        Boston, MA 02111

14

15   BY:   ANGELO THALASSINOS, ESQ.  (TELEPHONICALLY)

16

17   ALSO PRESENT: (TELEPHONICALLY)

18   ANTHONY BORRECA, GSO Capital Partners

19   ANATOLY BUSHLER, Farallon Capital Management

20   DAVID HOLMES, Citi Alternative Investments

21   MITCHELL SOCKETT, King Street Capital Management LLC

22   RALPH MILLER

23

24

25

Page 18

1                        P R O C E E D I N G S

2              THE COURT:  I'm told that some people are involved in

3    conversations, but we're going to proceed on the assumption

4    that we can get something done and will not have a material

5    delay in the proceedings.

6              MR. PEREZ:  Good morning, Your Honor.  Alfredo Perez

7    on behalf of the debtors.  Happy New Year's, first time I've

8    been back this year.

9              THE COURT:  It seems late to be saying that, but

10   that's okay.

11             MR. PEREZ:  All right.  Your Honor, we have three

12   matters that should go relatively quickly, and then the fourth

13   matter is the matter that the Court's been informed of.  The

14   first matter is a motion to lift stay by Bank of Nova Scotia.

15   We have an agreed stipulation that will be presented by

16   Mr. Hackett.

17             MR. HACKETT:  Brennan Hackett from Weil, Gotshal and

18   Manges for the debtors.  Good morning, Your Honor.

19             THE COURT:  Good morning.

20             MR. HACKETT:  The first matter is a motion of the Bank

21   of Nova Scotia for relief from the automatic stay.  It's Docket

22   No. 13889.  Bank of Nova Scotia seeks relief from the automatic

23   stay and to foreclose on a mortgage on certain portions of a

24   mall known as Towne Square Mall, located in Las Vegas, Nevada.

25             Now, the parties have stipulated to consensually

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 19 of 152

Page 19

1    resolve Nova Scotia's motion.  Bank of Nova Scotia is the

2    administrative agent for a construction loan that's secured by

3    portions of the Towne Square Mall.  LBHI separately made a loan

4    to Jeffrey and Jacqueline Soffer and it's secured by perfected

5    first priority liens on certain other parcels located within

6    Towne Square Mall and easements for their benefit.  Now, the

7    two pieces of collateral are separate and distinct.

8           Now, the Towne Square Mall is subject to certain

9    easements for access utilities, construction, common area use

10   rights, that benefit both pieces of collateral.  So pursuant to

11   the stipulation, the easements benefiting LBHI's collateral and

12   Nova Scotia's collateral will not be modified, disturbed or

13   extinguished by any foreclosure.  So LBHI's rights won't be

14   affected.

15          And Nova Scotia's agreed to file a subordination

16   agreement in the public records of Clark County, Nevada, the

17   local county, to that effect.  And the subordination

18   agreement's attached to the stipulation.  I have a copy of the

19   stipulation, Your Honor, if I can hand that up to you.

20          THE COURT:  Please do.  Thank you.  Are you counsel

21   for Bank of Nova Scotia?

22          MR. HOOK:  I am not, Your Honor.  Counsel --

23          MR. OLSEN:  Your Honor, I am, if you have any

24   questions.  It's Matthew Olsen of Katten, Muchin, Rosenman.

25          THE COURT:  I'm a little confused as to the interests

Page 20

1    that you apparently have in this uncontested matter.

2            MR. HOOK:  Your Honor, may I be heard?

3            THE COURT:  I don't even know who you are, so sure,

4    but everybody's welcome to be heard if it's relevant.

5            MR. HOOK:  Good morning, Your Honor.  Sorry to speak

6    up in an uncontested matter.  My name is Jonathan Hook.  I'm

7    with the law firm of Haynes and Boone.  We represent Five Mile

8    Capital, which has a beneficial interest in a certain mezzanine

9    loan on this Towne Square Mall.  And while I certainly may not

10   be against any of the terms or conditions in the stipulation

11   that probably would resolve the motion of Bank of Nova Scotia,

12   we would like an opportunity to see the stipulation to see if

13   it does, in fact, affect any rights that my client may have

14   with respect to the underlying loan agreement and other

15   interests in the property.

16           We just want to be able to see it, Your Honor, and if

17   it does, we'd like an opportunity to be heard.

18           MR. OLSEN:  Your Honor, if I may be heard?

19           THE COURT:  Sure.  Looks as if we're going to give the

20   parties who are negotiating plenty of time to continue their

21   discussions in the conference room.

22           MR. OLSEN:  Your Honor, again, Matthew Olsen of Katten

23   and Muchin on behalf of Nova Scotia.

24           File Mile, in my understanding, is a mezzanine lender

25   that has a pledge of the equity of our borrower.  They have no

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 21 of 152

Page 21

1    direct interest in our collateral.  They have no direct

2    interest in the Lehman collateral.  They had -- they were given

3    notice of this motion and they didn't oppose it.  This is the

4    first we've heard of their interest.  I don't think that their

5    concern should be given any consideration at this time.

6         THE COURT:  Is this the first that you've heard that

7    Haynes and Boone represents Five Mile Capital and has an

8    interest in seeing the stipulation?

9         MR. OLSEN:  It is not the first time I've heard Haynes

10   and Boone represents Five Mile.  It is the first time I heard

11   that they have an interest in seeing the stipulation.  But

12   Haynes and Boones' attorney --

13        THE COURT:  Well, here's how I'm going to deal with

14   this.  This was listed as an uncontested matter, and this

15   agenda has been publicly available.  The fact that this motion

16   for stay relief was to be heard today has been publicly known,

17   and the response deadline was February 9 at 4:00 p.m.

18        To the extent that Five Mile Capital wished to reserve

19   its rights to speak to the stipulation or to take a position

20   with respect to the motion for stay relief, it should've filed

21   something before February 9, 2011 at 4:00 p.m. or should've

22   obtained an extension of the response deadline, or otherwise

23   done something to protect its rights to appear and take our

24   time.

25        Accordingly, I'm going to completely disregard the

Page 22

1   interruption.  I'm going to approve the stipulation as

2   uncontested.  But I'm going to request that counsel for Bank of

3   Nova Scotia, as a matter of civility and cooperation, share a

4   copy of the stipulation with counsel for Five Mile, so that

5   counsel can confirm that the stipulation does not, by its

6   terms, impact the interest of its client.

7           MR. OLSEN:  Happy to, Your Honor, thank you very much.

8           THE COURT:  Okay.  The stipulation is approved.

9           MR. OLSEN:  Thank you, Your Honor.

10          MR. PEREZ:  Thank you, Your Honor.  The next matter is

11  a motion to compromise with Swedbank, Your Honor.  Swedbank and

12  Lehman had entered into a -- several -- a repurchase agreement

13  pursuant to which several loans were, in fact, repo'd to

14  Swedbank.

15          It turned out, Your Honor, as of the filing, that

16  there were several loans in which Lehman and Swedbank had

17  different interests in the capital stack of the various

18  projects.  Pursuant to this agreement, we're doing several

19  things.

20          First, we're exchanging properties so that Lehman will

21  have all of the interests in one set of properties, Swedbank

22  will have the interest in the other set of properties.  Because

23  of the fact that the amounts, the relative values of the

24  properties are not identical, we're also making a payment of

25  ten million dollars.

Page 23

1          Additionally, Your Honor, Swedbank will have a

2    deficiency claim in both the LCPI and the LBHI case of 325

3    million dollars, which is about a forty percent reduction from

4    the 567 million dollar deficiency claim that they had found.

5          Furthermore, with respect to several other properties,

6    we've either agreed to take no action, and there is one

7    property in Austin that will have its loan extended for a

8    two-year period.

9          Your Honor, Mr. Fitts filed a declaration in support

10   of the motion, basically attesting to the business judgment

11   with respect to the motion.  He is in the courtroom to the

12   extent that anyone needs to cross-examine him.

13         Prior to filing the motion, we had extensive

14   discussions with the creditors' committee.  Since the filing of

15   the motion, we've had extensive discussions, both with the

16   creditors' committee, as well as the ad hocs, LDI and Lehman

17   Re.  As a result of that, Your Honor, we have made the -- our

18   kind of standard form of order contains a reservation of rights

19   with respect to the debtors, and with respect to the interest

20   of the debtors among themselves, and with respect to third

21   parties.

22         As a result of the discussions that we've had, we've

23   inserted three additional paragraphs in the order dealing more

24   broadly with the reservation of rights; one, a generic

25   paragraph, and then two, directly related to the potential --

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 24

1    the interest of Lehman Re and the potential interest of LBI.

2         Your Honor, I have a form of -- a black line of the

3    order if the Court wishes to see it.

4         THE COURT:  I would like to see it.  Thank you.

5         Okay.  What more do we need to say about this?

6         MR. PEREZ:  Nothing more, Your Honor.

7         THE COURT:  I'd be interested in knowing if the

8    creditors' committee has a position on this.

9         MR. O'DONNELL:  Your Honor, Dennis O'Donnell, Milbank,

10   Tweed on behalf of the creditors' committee.

11        Yes, Your Honor, the committee has no objection to the

12   motion being granted in its current form.  We have reviewed the

13   underlying transactions and have actually been familiar with

14   the ongoing negotiations for probably close to a year at this

15   point, and are comfortable that both the asset swap is in the

16   debtors' best interests in terms of aligning interests more

17   completely to maximize the returns of the assets which we think

18   are the most valuable.

19        And with respect to the deficiency claim, our FAs have

20   evaluated the forty-three percent discount from the 525 to the

21   325, I believe, and I believe that in the overall context here,

22   based on both the values at issue with respect to these assets,

23   and all the consideration flowing to the debtors here, that

24   that compromise of the deficiency claim makes sense.  So we

25   would recommend that the Court grant the motion as proposed.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 25

1          THE COURT:  Okay.  Is there anyone else who wishes to

2    be heard on this?

3          (No response)

4          THE COURT:  It's approved.

5          MR. PEREZ:  Thank you, Your Honor.  Your Honor, the

6    last matter on the morning docket will be handled by Mr. Slack.

7    Oh, no, no, I'm sorry, wait a second, wait a second.  I missed

8    one.

9          There's a third matter, Your Honor, that is a motion

10   to compromise involving Greenbrier Minerals, and Mr. Engman is

11   going to handle that.  I apologize, Mr. Engman.

12         MR. ENGMAN:  No worries.  I will endeavor to be --

13   this is an uncontested matter, Your Honor, so I'll endeavor to

14   be brief as well.  Richard Engman from Jones Day on behalf of

15   Lehman Commercial Paper, Inc.

16         Your Honor, I'm here in support of Lehman's motion to

17   approve a settlement agreement with Greenbrier Minerals, as

18   well as Midland Trail Resources.  Prior to filing their

19   petition, Lehman Commercial Paper had been a lender to

20   Greenbrier, as well as an equity owner and owner of LLC

21   operating interests in Greenbrier.

22         As Your Honor may recall previously in June of last

23   year, we were in front of Your Honor on a motion to enforce the

24   stay over a dispute over the corporate governance of

25   Greenbrier.

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 26 of 152

Page 26

1           THE COURT:  Whatever happened to that governance

2    dispute?

3           MR. ENGMAN:  Been -- we've been negotiating with them.

4    The company has continued to operate and its officers have

5    taken directions.  There have been ongoing meetings of the

6    members of the LLC.  I think the settlement agreement before

7    you today, Your Honor, does a number of things, but one of the

8    things that we think it does is it allows the company to keep

9    operating between now and ultimately the point of the

10   settlement agreement, is one of the things that all parties

11   agree on is that a -- Greenbrier should be marketed for sale,

12   and in all likelihood, value could be maximized if Greenbrier,

13   which is a met coal producer is sold and marketed along with a

14   -- with Midland Trail.

15           Lehman does not have an interest in Midland, and

16   hasn't asserted claims against Midland.  So one of the

17   difficulties in putting this all together has been not only

18   agreeing that all of -- that both Midland and Greenbrier should

19   be sold, not only agreeing as to the appropriate breakdown of

20   proceeds from the sale of Greenbrier between Lehman on account

21   of its debt, Lehman on account of its equity, and other members

22   of Greenbrier LLC.  But also, given that the parties believe

23   that Midland should be part of the sale, how to share those

24   proceeds of any sale with Midland.

25           We believe that we've accomplished that through the

1    settlement agreement and the sharing agreement that's attached.

2    Throughout the negotiations, we've -- the creditors' committee

3    has been kept abreast of the ongoing negotiations.  They were

4    given a copy of this motion and the settlement agreement.  I'm

5    informed that the committee doesn't have any objection to the

6    settlement going forward.  And as I stated before, Your Honor,

7    no other party has objected, and we believe that --

8            THE COURT:  It's unopposed, and I'm certainly prepared

9    to approve it.  I do have one question, though, which is

10   whether this settlement agreement means that there will be no

11   further proceedings before me with respect to the governance

12   dispute, which appears to be finessed by virtue of the

13   settlement.

14           MR. ENGMAN:  And sorry to answer it this way, but the

15   accurate answer is in all likelihood.  The point of the

16   settlement agreement is to move forward toward a sale.  Upon a

17   sale, then a number of things happen.  Chief among them being

18   the proof of claim that was filed by Midland against Lehman is

19   withdrawn.  It will moot out any of the governance issues, but

20   the effectiveness of the settlement agreement allows the

21   parties to move forward, hire investment bankers, and move

22   forward toward that sale.  The ultimate resolution of their

23   issues are left for a sale.  If a sale does not happen within,

24   I believe it's a year, and there is a tail period, then in

25   essence, the parties are -- the releases don't become

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 28 of 152

Page 28

1    effective.  The claim does not -- is not withdrawn, and the

2    parties kind of revert back to status quo.

3            THE COURT:  Okay.  Understood.  Is there anyone who

4    wishes to be heard with respect to this settlement?

5            There's no response.  I approve it.

6            MR. ENGMAN:  Thank you, Your Honor.

7            MR. PEREZ:  Now, Your Honor, the final matter on this

8    morning's docket will be handled by Mr. Slack.

9            MR. SLACK:  Good morning, Your Honor, Richard Slack

10   from Weil.

11           Perhaps it makes sense, Your Honor, when talking about

12   the motion that's at hand, which is really a supplement to the

13   existing ADR or to talk about where we've come from.  The

14   existing ADR order has been largely a huge success.  The most

15   recent report submitted by Mr. Gruenberger on behalf of the

16   mediators shows that the debtors have served 102 ADR notices on

17   127 parties, and settlements have been obtained in 56 matters

18   involving sixty-eight counter parties.  And of the twenty-nine

19   ADR matters that reached the mediation stage and have been

20   concluded, twenty-seven of twenty-nine have been successfully

21   settled.  Really an impressive percentage, Your Honor.

22           The ADR process has resulted in over 500 million new

23   dollars into the estate.  And what our experience has shown is

24   that where the debtors have someone sitting across the table

25   with authority to negotiate with the debtors, that there's a

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 29 of 152

Page 29

1   real possibility of reaching a settlement.  Unfortunately, Your

2   Honor, the existing ADR process had not worked particularly

3   well with respect to one set of transactions, that are

4   transactions relating to SPV or special purpose vehicles.

5         And in those circumstances, Your Honor, the debtors

6   have really not been able to find somebody on the other side of

7   the table who says they have authority to sit down in a room

8   and try to settle.

9         What the current proposed order does, I should say,

10  Your Honor, is to solve that problem.  It tries to put together

11  a process by which there'll be somebody on the other side of

12  the table for the debtors to negotiate with.  And perhaps it's

13  also important here to talk about just a typical SPV structure.

14  Because as Your Honor's aware, these differ from structure to

15  structure and transaction to transaction, but typically some

16  type of special purpose vehicle, whether it's a corporation or

17  a trust, has entered into a swap with one of the debtors.  And

18  that entity is the debtor's direct counter party.  They have

19  privity.  They're the ones that have entered into the swap.

20        That entity typically also issues some kind of notes,

21  and there are noteholders out there that are creditors of this

22  entity.  And they use those proceeds to purchase collateral.

23  And that collateral, again typically, goes to both pay the

24  debtors if the debtors are in the money in the swap, and also

25  the noteholders, their principal and interest.  And again, the

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 30 of 152

Page 30

1    notes are typically subject to some kind of trust deed or

2    indenture, and that indenture makes it clear that the

3    noteholders do not have authority to negotiate or not to

4    negotiate, but to bring claims with respect to either the

5    indenture or the trust deed.

6         And I know Your Honor's familiar with that because

7    that was the exact issue that was raised in connection with one

8    of the adversary proceedings, that is the Wong plaintiffs, Your

9    Honor, where noteholders tried to sue on one of these

10   structures.  Your Honor ruled that they could not sue directly

11   because they didn't have standing.  And that particular part of

12   that ruling, that the noteholders do not have direct standing,

13   was affirmed by the district court.

14        Now, the proposed order does not reinvent the wheel,

15   doesn't start from scratch.  There really is only one major

16   difference to the proposed order, Your Honor, from the existing

17   one.  And that is with respect to the structure of the SPV

18   counter parties, the direct counter party to Lehman on these

19   swaps.  Those parties have to designate someone within a

20   certain amount of time, typically we've set up a timetable of

21   60 days, a person with authority to negotiate and settle.

22        The proposed ADR order treats all the other parties

23   exactly the same as the existing order, trustees, noteholders,

24   investment advisors, all of those parties are treated exactly

25   the same.  And I'm going to go over some of the changes we've

Page 31

1    made since the original order we filed, and at the request of

2    some of the objectors, and at the request of the committee,

3    we've made a number of changes to conform the existing order in

4    certain respects to the -- I should say the proposed order to

5    the existing order.

6            Now, the Court undoubtedly has the power to adopt the

7    proposed procedures.  At its core, the procedures seek to have

8    the Court do something unremarkable.  Remember every one of the

9    counter parties on these swaps, the SPV counter parties, are

10   now subject to litigation.  They are defendants in an adversary

11   proceeding.  And what this order asks the Court to do is to

12   adopt a procedure that says that a party to an adversary

13   proceeding, a defendant, along with the plaintiffs, go to

14   mediation, and that each party bring to that mediation someone

15   with authority to settle.

16           The authority to adopt these procedures, as Your Honor

17   recognized in the hearing on the existing ADR order, is

18   consistent with Section 105 of the Bankruptcy Code, as well as

19   standing order M-390, which allows the Court to order parties

20   in adversary proceedings into mediation.

21           Now, given that each of the counter parties is already

22   a defendant, as I just said, in litigation, those counter

23   parties are going to have to find someone with authority to

24   litigate.  They're going to have to designate somebody who can

25   make decisions in litigation, such as whether to file motions

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 32 of 152

Page 32

1  and what to put in those motions, whether to produce certain

2  documents or not produce certain documents.  And each of those

3  kinds of decisions are decisions that can bind the SPV; and it

4  seems to us that it can't and shouldn't be that a party has the

5  power to litigate, but not settle.  And yet that is precisely

6  the arguments that we've been getting from counter parties and

7  trustees, that somehow there's authority for these SPVs to

8  litigate with the debtor, but not settle with the debtor.

9       It's also important to understand, Your Honor, what

10  this order does and does not do.  There were a number of

11  objections, Your Honor, asserting that somehow the proposed

12  order would require the Court to dig into the trust documents

13  and essentially order people to do things that can't be done

14  under the documents.

15       The order doesn't do anything of the kind.  The order

16  does not require the Court to get into the intramural affairs

17  of each of these counter parties and each of the SPVs.  It

18  doesn't set up a particular procedure by which an SPV is going

19  to designate a person with authority.  That is left totally up

20  to the particular structure.  And that's really no different,

21  Your Honor, than in situations where you have a corporation or

22  a closely held corporation.  It may very well be that you have

23  a litigant who's a corporation.  There may be warring factions

24  behind the scenes, the Court can still order and still has the

25  power to order that the parties mediate, and that the parties

Page 33

1    have somebody with authority to settle.

2           So, Your Honor, with that, I'd like to walk the Court

3    through, I think, some of the major changes that we've made

4    since we filed the original order, and then talk through --

5    excuse me.

6           THE COURT:  Before you run through those various

7    changes, and I certainly want you to highlight those on the

8    record, and I note that an amended order was filed late

9    yesterday.

10          To what extent do the changes that you're about to

11   highlight resolve any of the currently pending objections to

12   this motion, or to what extent do these simply represent an

13   attempt on the part of Lehman to at least move closer to some

14   of the positions being articulated by these objectors?

15          MR. SLACK:  The changes that I'm going to highlight I

16   think get us closer.  We've had some discussions over the last

17   couple of months, and then frankly, just over the last few days

18   with the committee, trying to work on some additional changes

19   to the language, and some of those are reflected in the current

20   order.  And I think in fairness, we have -- we haven't resolved

21   the objections, but I think the changes that we put in place,

22   when you look at the objections, get us a lot closer to where

23   the objectors, you know, want us to be.

24          THE COURT:  All right.  So what you're telling me is

25   that we're going to go through this, and then we're going to

Page 34

1    hear from the objectors, presumably, if they're still pressing

2    their objections.  And then what's going to happen next?  Are

3    you going to request that the objections all be overruled, and

4    that I enter the order with the language that you've proposed,

5    or are you going to suggest that you have a little bit more

6    time to try to accommodate the positions of the objectors in

7    what may be an even further revised order?

8         MR. SLACK:  Your Honor, with the exception of some

9    additional language that we worked out in concept with the

10   committee just before the hearing, we're going to ask that the

11   objections be overruled, and that the order again with the

12   language that I'm going to explain in concept, you know, that

13   it be adopted.

14        THE COURT:  Okay.

15        MR. SLACK:  So, Your Honor, as you know, we had filed

16   an original motion some months ago, and then with our reply, we

17   filed an amended order.  And while we did make a number of

18   changes, some of them were just clarifying.  There were a

19   couple of changes that I think were important that I wanted to

20   highlight for the Court and the record.

21        One, Your Honor, is that we added a 9019 process, such

22   that if during the ADR process there is a settlement, then one

23   of the parties in most circumstances can request that it go

24   through a 9019 motion with notice to all constituents,

25   including noteholders, such that no settlement therefore,

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 35 of 152

Page 35

1   through this ADR process will get implemented without at least

2   the parties having the option of going to Your Honor to make

3   sure that people have the opportunity to object.

4         The second is that we got an objection relating to

5   distributed deals.  Meaning that some of these deals where

6   money, some or all of the money has been distributed from the

7   SPV out to the noteholders.  And we added a provision that in

8   those cases, where we have elected to bring in the SPV itself,

9   and assuming in that situation, that the SPV doesn't comply

10  with the order and that we seek sanctions, that the Court can,

11  in that circumstance, consider -- and we wanted this to be

12  express -- in deciding whether there are sanctions and whether

13  they are appropriate, whether the deals are distributed deals;

14  and that was a change that I think was directly as a result of

15  some of the objections that we received, and we made that

16  change.

17        With respect to the order that we filed last night,

18  Your Honor, there are essentially two changes that I want to

19  point out.  One is that we -- at the request of the committee,

20  we added back some language to the proposed order that had been

21  in the existing order, and we did it word for word, relating to

22  a concept of authority for trustees.

23        The committee had asked us to try to make the two

24  orders with respect to the trustees parallel, and so the one

25  piece of the original proposed order that we filed that wasn't

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 36 of 152

Page 36

1    parallel was this concept of a trustee with authority and

2    without authority.

3         So we added back language that says that where you

4    have a trustee with authority, then that trustee, if we choose

5    to bring them into an ADR, and again, this is the same as we

6    have in the existing order, that trustee can, of course, sit at

7    the table and negotiate, because they have authority under the

8    documents.

9         If they don't have authority, at that point, certain

10   notices go out to the noteholders, inviting them to come into

11   the ADR process.  And again, that's the same.  So we've added

12   that language back into the order.

13        The second is a clarification, something that I think

14   the order already provided, and that was the -- you know, this

15   is really directed, Your Honor, and again, the change that we

16   made from the existing order to the SPV counter party itself.

17   And we clarified in a couple of sections, really in Section 2,

18   8(b) and 12, and this concept was already express in 8(a), that

19   in all circumstances where we start an SPV ADR, we will serve

20   the direct counter party of the debtors.  So the SPV itself

21   will be served.

22        And then the debtor will have the discretion to serve

23   the trustee or other noteholders or other constituents, if they

24   think that that would help the settlement process.  And so

25   that's really a clarification, and those are the two changes

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 37

1    that we made last night to the order.

2         So one last piece, Your Honor, to talk about in terms

3    of the changes, which is that we had some discussions with the

4    committee this morning, and we've, I think, came to a

5    conceptual agreement on certain additional changes that we're

6    willing to make and it's to the same provision that I just

7    talked about on the authority, trustees with authority.  And

8    that is that we are going to agree -- we'll have to work out

9    some language after the hearing, Your Honor -- that the

10   trustee, in consultation with the debtor, will determine

11   whether it has authority.

12        And then if the debtors -- even if the debtors have

13   authority, they will at that point, the trustees will give

14   notice to the noteholders, at least of the process.  If the

15   trustee does not have authority, then that notice would invite

16   the noteholders into the mediation.

17        So in concept, we've agreed to that with the

18   committee, and we will be working out language with the

19   committee to implement that.

20        THE COURT:  I'm not understanding how that works in

21   light of the legal position that you articulated earlier in

22   your presentation, which is that noteholders ordinarily do not

23   have standing, and that the party that we're dealing with here

24   is the counter party, the special purpose vehicle, which

25   presumably has whatever governance --

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 38 of 152

Page 38

1          MR. SLACK:  Yep.

2          THE COURT:  -- restrictions are built into its

3    organization's documents.  How does inviting noteholders, who

4    may or may not be representative of the requisite majority of

5    noteholders, to direct action, facilitate the ADR process?  I

6    don't understand this.

7          MR. SLACK:  Yeah.  Your Honor, I think that's an

8    excellent point.  Let me try to clarify how I think this is

9    going to work.  Which is that in most circumstances, we would

10   expect to issue the notice directly to the SPV counter party,

11   and be negotiating with the SPV counter party.

12          And in that process, the noteholders will have

13   whatever rights they have under the trust documents to

14   essentially help designate the appropriate person with

15   authority along with the trustee, et cetera.

16          So the noteholders will be working as is appropriate

17   under their governing documents to do whatever the particular

18   structure says, to get someone with authority to negotiate

19   with.

20          There may be situations, Your Honor, where it makes

21   sense to negotiate with the noteholders, and I'll give you one

22   example.  Where, for example, you have a distributed deal,

23   meaning that the noteholders actually have the money.  The SPV

24   has transferred out.  In a deal like that, it may very well

25   make sense to have the noteholders in the room, and again it's

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 39 of 152

Page 39

1    at their discretion, since they've actually got the money that

2    has to be disgorged.

3            So in a situation like that, it may very well be that

4    the debtor and the committee have decided that just having the

5    trustee, or just having the SPV itself, is not the best way to

6    facilitate a settlement.  So I would say that's one example of

7    that in a very particular circumstance.

8            Your Honor, the objections that we received are, quite

9    frankly, mostly the same objections that we received in

10   connection with the original SPV ADR order, that the Court

11   doesn't have the power to approve this kind of an order, that

12   any ADR should require the participation of the noteholders is

13   a mandatory sense, and that participating in the ADR will be

14   costly and expensive for the trustees and the SPVs.  And these

15   are exactly the same issues, each one of them, that was raised

16   in the original ADR order and was overruled.

17           The objections that still exist, and I'm going to walk

18   through the ones that do, we think should be overruled, and we

19   would ask that that happen today.

20           The first objection and this is not in any particular

21   order, Your Honor, but -- is one that does go to the power.

22   Some of the objectors argued that Section 105 of the Bankruptcy

23   Code does not authorize the Court to actually modify

24   substantive rights contained in the indentures, and I talked

25   about this a little earlier.

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 40 of 152

Page 40

1         It's our view that this is a red herring, because the

2    proposed order does not invade the governing documents in any

3    way.  It doesn't tell the structures how to designate someone

4    with authority.  And none of the authority that's cited by the

5    objectors actually limits the Court's authority to order

6    mediation because of one party's private agreements with its

7    own investors.

8         So effectively, there's no authority that one party's

9    own documents meaning here, if the noteholders have a note with

10   a structure, that one party's own documents can't limit the

11   power of the Court to order mediation.

12        The second objection, Your Honor, is from some of the

13   objectors that we're -- the argument is that because there are

14   separate tranches of notes, that there cannot be one person

15   with complete authority to negotiate on behalf of the counter

16   party.

17        And again, Your Honor, our counter party here is a

18   singular entity.  This is no different than again a corporation

19   that might have different tranches of stock, some preferred,

20   some debt, has different constituencies.  This order doesn't

21   get into the intramural affairs of how the SPV is going to

22   designate someone.  But it's appropriate, we believe, for our

23   counter party to have one person who is speaking on its behalf,

24   so that we have someone to settle with.

25        THE COURT:  But what if that's not practically

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 41 of 152

Page 41

1    possible?  I mean, one of the things that I've been thinking

2    about as I've looked at this dispute, and I've read, I guess

3    everything that's been filed, although I didn't read it all in

4    anticipation of today.  I think I read much of this when this

5    was earlier listed for hearing.

6         But I've read pretty much everything that everybody

7    has said, and there are a number of questions that occurred to

8    me as I was reading through the various objections.  There's no

9    question I have the power to direct that a party in litigation

10   designates someone with settlement authority to appear at a

11   settlement conference or at a mediation.  That's pretty basic.

12   But if you have some complex structure with dispersed

13   noteholders that are difficult to identify, and with discord,

14   hypothetically, within that class, and they can't agree either

15   on what to do or who should do it, how do I compel it?

16        MR. SLACK:  Well, I guess I would say it this way,

17   Your Honor.  Is it better not to try?  Because there's no down

18   side.  If, in fact, this order goes into place, and you have a

19   structure and it's complicated, what it says is, you have to go

20   and designate somebody.  But if they don't, the down side, Your

21   Honor, is that maybe the debtor brings a motion for sanctions

22   that comes before Your Honor.

23        And Your Honor I think is already attuned, just by

24   your questions, as to the practical impact.  Nothing bad

25   happens in this process unless Your Honor says so.  What we

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 42 of 152

Page 42

 1    think the appropriate way of doing this is, because we think

 2    that under the documents that we've seen, there are processes

 3    where these people can be designated.  And we think it's

 4    important that counter parties attempt, make the attempt to do

 5    this, and in fact, we think that if they do make that attempt,

 6    it'll be successful.  But there's no down side under the

 7    proposed order unless Your Honor finds that at the end of the

 8    day what happened here wasn't undertaken in good faith, and

 9    actually grants the sanctions.  Because otherwise, there's no

10    practical impact.

11          THE COURT:  Okay.  I have another related question,

12    which goes to something you said earlier.  Which is that if an

13    SPV is sued in litigation, and the SPV retains counsel to

14    defend that litigation, there has to be a client to direct the

15    lawyer to do something in that case.  Presumably the lawyers

16    isn't going to act at his or her peril, in not having a real

17    client to confer with.

18          Two questions.  Question one is, to what extent do you

19    know the processes have already been undertaken by the

20    defendants that you have sued, to identify some person with

21    authority to act as the client representative?  That's question

22    one.

23          And question two is, is it really true that the

24    authority to litigate is fully congruent with the authority to

25    settle?  Because I can envision an SPV counter party

Page 43

1    identifying somebody to say fight the good fight, and when

2    you've won, report back to me, or something of that sort,

3    versus somebody who has the kind of discretion to say, you know

4    what, under all the facts and circumstances, we'll pay you X.

5    But then be exposed potentially to having violated

6    transactional documents.  And I have no idea what these

7    documents provide, but if they're comparable to the kinds of

8    SPVs that own real estate and tranched debt, there may be not a

9    lot of discretion that a trustee has.

10           MR. SLACK:  So let me answer the first one first,

11    which is because those actions are stayed, and I'm happy to

12    confer with some of my colleagues who may have some better

13    information, but I'm not aware of what the trustees or the SPVs

14    have done in order to obtain authority to litigate in the

15    particular -- in each sort of structure that we've sued.

16           With respect to the second question, whether the power

17    to litigate is congruent, I agree it is not congruent.  The

18    question I think for the Court is whether it's appropriate for

19    the Court to take the position that if there is somebody out

20    there who is able to bind the SPV in litigation, because we all

21    know that there are decisions that are made in litigation which

22    frankly can have huge impacts on a party's rights, and waive

23    rights, bind them, whether or not that same party who wants to

24    litigate should at least be required to try to find somebody to

25    negotiate.

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 44 of 152

Page 44

1        We think that given the track record of the ADR

2    process, it is worth trying to get somebody with authority to

3    sit across from us to talk.  And if that can't happen, Your

4    Honor, you know, I think we're going to have a lot of

5    litigation on a lot of structures that's going to be costly to

6    the debtor, costly to the structures, costly to the

7    noteholders, ultimately, because the money's going to come out

8    of the funds, I would assume in some cases to litigate and in

9    some cases, probably not.  It is going to be, frankly, a huge

10   endeavor for the debtor, the counter parties and the Court.

11       And our position is, let's try, consistent with the

12   ADR process that we know has worked, when we've had people

13   across the table who have the power to settle.  And again, the

14   down side here is tiny, because nothing happens that's bad

15   unless Your Honor says so.  That's the bottom line.  You're the

16   gatekeeper at the end of the day to make sure that nothing bad

17   happens in this process.

18       So, Your Honor, just going through the rest of the

19   objections, there is an objection that we received from some of

20   the trustees that the trustees are being required to undertake

21   obligations which they're not compensated for.  And again, this

22   is really no different than the current order.  We had those

23   same objections with respect to the current order, and while I

24   know that everyone is sensitive of that, I think frankly that

25   for the same reasons that it was overruled and the first order

Page 45

```
 1    was overruled, with respect to this order.  Especially given

 2    that there really are not any additional obligations for

 3    trustees, for example, under both orders.

 4           As I mentioned earlier, there are some parties that

 5    believe, Your Honor, that the noteholders should be involved in

 6    all of these ADR processes, and we disagree.  And again, that

 7    objection was also raised with respect to the original ADR

 8    order that was adopted by the Court.

 9           For example, Bank of New York raised exactly this

10    argument in connection with the original ADR order, and that

11    was overruled.

12           The next objection is that we were told that sanctions

13    should be limited to the offending party only.  That was the

14    intent of the order and in the current order we have clarified

15    that.  I think resolves it, so that only the SPV counter party

16    can be sanctioned for failing to designate a person with

17    authority.

18           The next objection was that sanctions should be

19    limited to occasions when debtors have proof of bad faith or

20    intentional misconduct by the party against whom it's sought.

21    Again, this -- the order that we have proposed is the same in

22    this regard as the existing one.

23           The proposed order contains a provision that requires

24    the Court to find that a party did not act in good faith, again

25    similar to what the existing order has.  And the point that
```

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 46 of 152

Page 46

1    I've made to Your Honor before is that, you know, many of the

2    objections act as if the debtors are the ones that actually

3    issue the sanctions here, when it's Your Honor.  No sanctions

4    are going to be imposed, you know, without the Court's

5    involvement.

6         The next objection, Your Honor, is that the proposed

7    order should require that settlements be approved by 9019.

8    I've talked about that.  We've added a 9019 provision to

9    address that objection.

10        There was an objection by one party that the

11   definition of SPV should not include investment advisors to the

12   structures.  And again, Your Honor, what we did was we modified

13   the proposed order to make clear that the SPV derivatives

14   counter party is only the contracting counter party, so that

15   the party that has the obligation to designate is our direct

16   contractual counter party.

17        With respect to investment advisors and the like,

18   again what we expect that in most circumstances we are going to

19   bring this against -- bring in ADR against the SPV itself.

20   There may be circumstances where bringing in an investment

21   advisor or some other party will actually facilitate

22   settlement.  We talked about that.  We didn't want to limit the

23   debtor's hands and who to bring in in certain circumstances.

24        You know one point to make on this, Your Honor, is

25   that it's not -- you know, in almost all circumstances, these

Page 47

1    ADRs don't come out of the blue.  There are discussions with

2    these parties beforehand, and you know, the debtor has and will

3    continue to talk to trustees, investment advisors, and the

4    like, and sometimes there's actually a meeting of the minds, so

5    to speak, as to what the best way of going into a mediation is.

6         And so I would expect that those conversations, in

7    fact, I can represent those conversations are going to

8    continue, and we think that they are actually helpful.  So

9    having the flexibility of the debtor to bring in certain

10   parties, we think facilitates settlement.

11        Another objection which I've touched upon, Your Honor,

12   is that where funds have been distributed to noteholders, the

13   proposed order should provide that the SPV trustee and the SPV

14   derivatives counter party shall not serve as sort of the

15   authorized designee.  The idea there being in distributed deals

16   that the noteholders should be the ones to be in the mediation.

17        And as I've said, Your Honor, we think that it's

18   important in all circumstances for our direct counter party to

19   be involved in the ADR process, but in consideration of this

20   objection, we added the language that I talked about before,

21   which specifically says that Your Honor can take into

22   consideration whether it's a distributed deal in determining

23   whether or not to have sanctions.

24        Your Honor, the last objection that I want to deal

25   with separately is one that was filed by the plaintiffs in the

Page 48

1    Wong adversary proceeding.  And I want to deal with the

2    substance of it first, because it's frankly a tad bizarre.

3          The Wong plaintiffs object that somehow the debtors

4    are violating an agreement, that they had a stip with them,

5    that was entered into in connection with the derivatives

6    procedures order.

7          Now, as Your Honor knows, the derivatives procedures

8    order actually has a number of parts, but has two parts dealing

9    with settlement of matters, but also assumption and assignment,

10   and those are separate procedures in the DPO.

11         The agreement that we reached, I should say, or the

12   accommodation we reached with the Wong plaintiffs only related

13   to the assumption and assignment part, not the settlement part

14   of the DPO.  So there was never any agreement with them that

15   settlements with respect to the transactions that the Wong

16   plaintiffs say they should have some interest in, that those

17   transactions will somehow be excluded from any kind of

18   settlement mechanism.

19         And obviously, Your Honor, you know, this order here

20   would be no different than the existing order with respect to

21   this objection, but it's just factually not true.

22         The second point I would make, and I don't want to

23   belabor it, is that this objection was filed a month late.

24   There was an objection deadline.  As Your Honor knows what has

25   happened and what is typical, is that motions get filed like

Page 49

1    this.  There are a number of objections, although in this case,

2    there were actually relatively few, when you consider the

3    number of transactions out there, SPV transactions, there were

4    literally 13 or 14 objections.  But there is a deadline.  And

5    then sometimes the original hearing date gets moved, so that

6    knowing what the objections are, the debtor and the committee

7    and the objectors can get together and try to resolve those.

8    And we did resolve a few of the objections.

9         That doesn't mean when the date is moved that you can

10   get new objections a month later.  And that's just, we think,

11   an important concept for, you know, procedures in front of the

12   Court, because otherwise you having a moving target every time

13   you have a motion or a hearing, if it's moved to try to

14   resolve, you know, existing objections, then you're always

15   stuck with not knowing what's going to come in three days

16   before.  And I think everybody knows, you know, we haven't had

17   this issue with anybody else, so I think everybody understands

18   what the standing order means, what it says, and has complied

19   with it.  So we don't think that that objection should be

20   considered by the Court in any event.

21        With that, Your Honor, we would ask that the

22   objections be overruled, and that subject to the language that

23   I discussed that we've agreed to with the committee in concept,

24   but we have to actually get the specific language, that the

25   order be adopted.

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 50 of 152

Page 50

1          THE COURT:  Okay.  I'll hear from each of the

2     objectors that continues to press an objection in a moment, but

3     I do want to hear from the creditors' committee as an initial

4     matter, just to understand what the role of the committee has

5     been in this process, and what understandings have been reached

6     to be -- that are to be reflected in the amended order.

7          MR. FLECK:  Thank you, Your Honor.  Good morning.

8     Evan Fleck of Milbank, Tweed on behalf of the official

9     committee.

10          With respect to this matter, Your Honor, it's the

11     committee's view that there are certain principles that aren't

12     really subject to reasonable controversy, and we've talked

13     about them already, some of them this morning.

14          The first is that clearly the Court has authority to

15     implement these procedures, the Court has done that before, and

16     we do agree that in this case, as well, the Court can and

17     should put in place procedures.  That brings me to the second

18     principle, which is that procedures to resolve these disputes

19     are a good thing, particularly in this context where there --

20     we believe there to be significant amounts owed to the estates,

21     and so for the benefit of maximizing recoveries to unsecured

22     creditors, that's also a positive thing.

23          Another issue that or another principle that's not

24     really subject to dispute is that, these documents that are the

25     subject of the underlying dispute are extraordinarily

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 51 of 152

Page 51

 1   complicated.  We have expended significant amounts of estate

 2   resources, both the debtor's and the committee, understanding

 3   them and preparing them for litigation.  But as the Court

 4   referenced earlier in the colloquy, they are complicated and

 5   some of the -- applying the language of the documents and the

 6   rules to these principles is not straightforward, and that's an

 7   understatement.

 8        The last principle from the committee's perspective is

 9   that if we don't come up with a process to resolve these

10   disputes, at least in an ADR process in the first instance,

11   that's a shared problem.  We agree with the debtors, that's a

12   problem for the Court, it's a problem for creditors, for the

13   debtors, and for the counter parties.

14        So the committee didn't file an objection on the

15   record.  We have been working with the debtors to try to

16   resolve our issues with the procedures.  We have been

17   supportive all along of procedures, and again, we do believe

18   procedures are appropriate here.

19        The difficulty has been, back to my third principle,

20   the documents, and we've been trying to work towards

21   resolutions that apply to these complicated documents, and

22   apply a process to them that actually will work.  I mean,

23   that's ultimately we want something that will work, and that

24   we'll have buy-in from all the parties.  Because obviously the

25   Court can order the parties to come to the table, but it's been

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 52 of 152

Page 52

1    our experience that the most successful mediations are those

2    where there actually is buy-in from the parties.

3           And so we've been trying to put in place some changes

4    to the procedures.  Mr. Slack referenced them.  We haven't

5    fully worked out the language because -- included discussions

6    as recently as this morning, one of them goes to the -- whether

7    trustees have authority.

8           The committee is concerned, again, to the point of

9    having an effective process, that if you invite a trustee to

10   the process, and the trustee does not have authority, in its

11   own determination, its reasonable determination, then we're not

12   going to go anywhere.  We're not going to have a successful

13   process, and we'll find ourselves back in front of the Court in

14   a litigation.

15          And so one of the points was that we should defer to a

16   greater extent to the trustee to determine whether it has

17   authority under these documents, and also that there are

18   situations -- and Mr. Slack referenced this -- where it would

19   be appropriate to have the noteholders, the economic

20   stakeholders come -- invited to the process and to participate,

21   particularly where it's not disputed that the trustee doesn't

22   have authority to do that.

23          Another principle which was important from our

24   perspective is that the SPV counter party be in the first

25   instance the party that certainly will be included in the ADR

Page 53

1   procedures.  I think the order can be -- could be clearer about

2   that point.

3          That doesn't solve all the issues with this order.

4   Mr. Slack was accurate that the committee is not pressing an

5   objection with respect to these procedures.  They're not

6   perfect and we're concerned about some of the things we've

7   heard from the trustees, and frankly, would've liked for this

8   to be resolved on a consensual basis, so that we would feel

9   more comfortable that the process would be effective.  But we

10  also agree that given the uniqueness of these documents, we are

11  relying a little bit more on the Court's continued involvement

12  to make sure that the process is effective.  Whereas in the

13  other procedures that we have, I don't think it's the

14  committee's expectation that we'd find ourselves before the

15  Court on a regular basis, to determine whether sanctions, for

16  example, were appropriate.

17         Now, in the context of sanctions, we may find

18  ourselves before the Court again, to maybe refine the

19  procedures, if we find that given the complexity of these

20  structures, it wasn't working, for whatever reason, through no

21  fault of the parties.

22         I think there -- the committee has perceived there to

23  be a genuine interest certainly on behalf of the estate's

24  fiduciaries, but on behalf of all parties to have an effective

25  process.  We think this does represent the best efforts of --

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 54 of 152

Page 54

1    under the circumstances of the debtors with input from the

2    committee.  That's not intended to undermine the objections

3    that we're going to hear from the objecting parties, but we

4    would like to move forward with the process with the

5    recognition that there sort of is a fail-safe, that we may find

6    ourselves before the Court again seeking further direction if

7    it's not working.

8         And I know that the committee recognizes that, and

9    that's not an ideal situation to be in, but we also recognize

10   that it is a shared problem, and that if we don't come up with

11   a process to move this forward, we're not going to resolve

12   these very important disputes where there's significant value

13   to be had for the estates.

14        THE COURT:  Okay.  Is it a fair summary of your

15   position that the committee, with caveats, is supporting the

16   entry of an appropriate order, which may still need a little

17   bit of tinkering, to facilitate ADR with SPV counter parties?

18        MR. FLECK:  Yes, Your Honor.

19        THE COURT:  Okay.  Thank you.

20        MR. FLECK:  You're welcome.

21        THE COURT:  Now, Mr. Slack identified areas of

22   objection, but did not identify objectors.  I have on the

23   agenda objectors that are listed in alphabetical order from A

24   to J, starting with the objection of Deutsche Bank.  I don't

25   know whether or not each of these objectors is present and

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 55 of 152

Page 55

1   represented by counsel today and will be pressing an objection.

2   But what I'll do is I'll simply go down the list, and if you're

3   here and you wish to speak, please do, but in an abbreviated

4   fashion without limiting your argument.

5        Emphasizing those aspects of your objections that

6   you're continuing to press, and if there are any aspects of

7   your objections that you are withdrawing or recognizing, for

8   example, power of the Court would be a waste of time to argue.

9   Don't spend time on that, because I clearly have the power to

10  do this.

11       We'll start with Deutsche Bank.

12       MR. PEDONE:  Good morning, Your Honor, Richard Pedone

13  on behalf of Deutsche Bank as indentured trustee for a variety

14  of structured transactions.

15       Your Honor, ADR procedures are a very good order here,

16  a good idea here, as are procedures for effectuating the

17  settlement.  As was explained, these are complicated

18  transactions, and in many ways, the trustee, as evidenced by

19  the continuing improvement of the procedures for trustees, are

20  really stuck in the middle here.  What trustees should never

21  face is the possibility of sanctions for responding to the

22  debtors, but saying we don't have authority, or authority is an

23  unsettled question under our documents.  Here, Debtors, are our

24  documents, let's talk about it.

25       Trustees have not been brought into the process the

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 56 of 152

Page 56

1   way the committees have been, in order to work out something

2   that is workable.  In many instances, the trustees find that

3   they do have, to quote, many of our documents, the authority to

4   enforce.  Whether that applies authority to settle or is an

5   open question is something that actually should be resolved

6   through procedures such as these.

7           And what we asked in our objection is that the Court

8   order that the debtors sit down with trustees to come up with

9   procedures to both facilitate ADR and get settlements approved,

10  so that the ADR process is not rendered futile, and that has

11  not happened.

12          I understand the need to move it along, but I'd once

13  again ask that the debtors be ordered to sit down with us, and

14  I'd ask to work something through.

15          THE COURT:  Let me understand something about that

16  position you've just articulated.

17          MR. PEDONE:  Sure.

18          THE COURT:  There's nothing to prevent you from

19  sitting down with the debtor now to develop procedures that are

20  better than the ones that have been laid out.  No one is

21  representing to the Court or to any party that these are

22  perfect procedures.  These represent the best efforts of the

23  debtor, the committee, and perhaps with some input from

24  objectors to come up with something that is thought to be

25  practical and workable.

1      Have you sought to do that yourself on behalf of your

2   client?

3      MR. PEDONE:  I have, Your Honor, and frankly right

4   before the last hearing, our request for a longer discussion

5   about how they could be approved was not well received, in

6   light of the overwhelming number of objections the debtors felt

7   that they were receiving, and said they couldn't deal with them

8   on a specific basis.

9      I'd love to be incorporated in the process with the

10  committee to facilitate an improved order that works.

11     THE COURT:  All right.  And assuming you were involved

12  in such a process, what would you be asking for?

13     MR. PEDONE:  Your Honor, the fundamental issue that

14  makes this difficult is the lack of clear authority for the

15  trustee to approve a settlement in most of these.  Authority to

16  enforce is typically clear, but not always clear.  And so we

17  need to --

18     THE COURT:  I don't mean to break in, but this is

19  really the fundamental problem that Mr. Slack has himself

20  acknowledged.

21     MR. PEDONE:  Yes.

22     THE COURT:  The worst that happens is that there's an

23  ADR, and for reasons of impossibility --

24     MR. PEDONE:  Uh-huh.

25     THE COURT:  -- a trustee is unable to deliver a

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 58 of 152

Page 58

1    settlement that the trustee, in the exercise of reasonable

2    business judgment, might recommend.

3            MR. PEDONE:  Uh-huh.

4            THE COURT:  What can I do about that?

5            MR. PEDONE:  Your Honor, the current procedures

6    actually provide two other bad events for a trustee to occur.

7    One is, we're unable to designate the single individual who can

8    show up --

9            THE COURT:  Okay.  What if I just said to you right

10    now, you have to do that.  What would you do?

11            MR. PEDONE:  I would ask for an evidentiary hearing.

12            THE COURT:  Because this happened once before with

13    ADR.

14            MR. PEDONE:  yes.

15            THE COURT:  A lot of really smart people have thought

16    about this.  I could say, forget all this, I'm just going to

17    give you a one-line order, show up with authority.  Is there

18    anything about that sentence you don't understand?  Now --

19            MR. PEDONE:  Yeah, I understand.

20            THE COURT:  -- I'm play acting as I say that.

21            MR. PEDONE:  I've been in this spot before.  I

22    understand.

23            THE COURT:  I want you to relax.  But understand, I

24    have the authority to do that, as does every federal judge in

25    the country.  Now, it may turn out to be a less than perfect

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 59 of 152

Page 59

1   mediation, but you're going to show up.  And you'll probably do

2   everything that your documents permit and then some to get the

3   authority, for fear of some adverse consequence.  This isn't

4   something that requires enormous designing, as much as it

5   requires maybe some ingenuity and diligence on the part of the

6   trustees who have to deal with the assignment they have.

7        MR. PEDONE:  Your Honor, 105 provides this Court with

8   tremendous power to structure procedures that work for

9   everyone.  That's procedures that help the trustee with regard

10  to their holders, who have the authority, and can give us the

11  authority.  And that is the missing link here.  Some more

12  creativity with the debtors using 105 could bring the requisite

13  holders to the table in many instances.

14        And frankly, your threat of a sanctions order, when my

15  underlying documents, which are not analogous to corporate

16  documents, they're a lot more confused, as far as how you get

17  authority to settle, and how you get authority to make

18  decisions.

19        A sanctions order threatened against us for failure to

20  do something our documents don't provide, that's actually not

21  constructive.  We want to get this resolved with the least

22  cost.  As you've heard from other objectors, and I'll repeat,

23  we're not always getting paid for the process here.  We've

24  asked to be engaged in a constructive way, but we want to see

25  the process resolved.  And it can be better than what is before

Page 60

1    the Court, it can be better than parties going into a mediation

2    out of fear, defending themselves over whether they're

3    complying with the Court's order that they have authority, and

4    find authority when it doesn't exist, or frankly, instituting

5    other litigation to avoid bad consequences from an order that

6    doesn't work.  It can be better than this, and it should be

7    better than this.

8            And that's what I would ask the debtors to engage in.

9    Find a way to bring the requisite holders to the table, so the

10   trustees can help the settlement without fear of being

11   sanctioned or being fear of being sued by holders later.

12           THE COURT:  Okay.  I understand your position.

13           MR. PEDONE:  So we continue our objection, Your Honor.

14   Thank you.

15           THE COURT:  Ballyrock.

16           MR. FINK:  Good morning, Your Honor, Steve Fink from

17   Orrick, Herrington & Sutcliff for Ballyrock ABS CDO 2007-1

18   Limited.

19           And, Your Honor, Ballyrock is one of these special

20   purpose vehicles that this order is directed to.  It's the

21   issuer of securities.  It's a collateralized debt obligation.

22   And we've made certain limited objections, Your Honor, in

23   respect with the way that this order would apply to Ballyrock

24   in particular.

25           As the Court's aware, Ballyrock is a defendant in an

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 61 of 152

Page 61

1    adversary proceeding brought by Lehman, it's also a defendant

2    in a counterclaim for interpleader brought by Wells Fargo Bank,

3    NAS Trustee, and in fact, Your Honor, has ordered that those

4    funds be interplay.  In addition, Your Honor, certain of the

5    noteholders have intervened in that proceeding.

6         Ballyrock, Your Honor, is a pass-through entity.  It

7    has no assets available to it, all of the assets are pledged to

8    the repayment of the securities that it issued.  It's a mere

9    stakeholder, and it will not be the recipient of any of the

10   funds that are at issue in these disputes, regardless of the

11   outcome of the adversary proceeding.

12        And I think Your Honor's familiar, but Ballyrock's

13   effectively what Lehman calls one of these flip clause cases.

14   There's a dispute between Lehman and the noteholders as to who

15   at the end of the day gets the collateral proceeds.

16        So, Your Honor, there are two particular respects in

17   which we're objecting to the order.  Two different respects in

18   which under the threat of sanctions, the CDO is being or would

19   be compelled to do things that it's not in a position to do.

20        One of those would be to designate somebody with

21   authority, and of course, I heard the conversation that Your

22   Honor just had with previous counsel, and I don't know that I

23   need to reiterate the arguments.  It's a similar situation to

24   that of the trustees, but there is something different about

25   the Ballyrock situation, Your Honor, that I think makes the --

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 62 of 152

Page 62

1    applying the order to Ballyrock particularly inappropriate.

2         Which is that Lehman has indeed initiated settlement

3    discussions, but not with the SPV, not with Ballyrock, in fact,

4    it's excluded Ballyrock from those discussions.  It's had

5    discussions with the noteholders.

6         I'm not complaining, Your Honor.  That's the

7    appropriate -- those are the appropriate parties to those

8    discussions, but in light of that, for Ballyrock nonetheless to

9    be at risk that in the event that Lehman's unable to reach a

10   settlement with the noteholders, that it can then, under threat

11   of sanctions, require Ballyrock to do something that under its

12   documents, it doesn't have the ability to do, and appoint

13   somebody to come and have a second run of discussions, we

14   submit makes no sense at all.

15        THE COURT:  Well, in a sense you've just articulated

16   the reason why, even if I were to enter the order in the form

17   that it has been revised and submitted to me, that there's no

18   realistic adverse consequence to Ballyrock, because as

19   Mr. Slack suggested in his argument, I serve as a gatekeeper

20   for sanctions, to the extent any sanctions might ever be

21   realistically threatened.  I'm well aware of the Ballyrock

22   situation, not only because of what you've just said, but

23   because of my involvement in certain pending litigation

24   involving motions to dismiss in the Ballyrock adversary

25   proceeding.

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 63

1        And I'm also well aware, based upon conversations that

2    have taken place off the record, in telephonic chambers

3    conferences, of the discussions that you've just generally

4    described concerning negotiations among the parties.

5        So the facts determine the outcome.  If the facts are

6    presented in the manner that you've just described, the

7    stakeholder you represent can't realistically be sanctioned by

8    a thoughtful judge.  And I presume that I'll be such a

9    thoughtful judge at that time if I'm forced to deal with some

10   inappropriate effort to sanction you for not designating a

11   party with authority.  And it may be that there'll be carve-

12   outs in application of this order, based upon the facts and

13   circumstances presented.  This may not be a one size fits all

14   order, although we're going to need one order.

15       And so there may be a need for parties to seek what

16   amounts to special exceptions because of the circumstances

17   presented.  I'm certainly open to that concept, and I suspect

18   other parties will be as well.  This is not intended to be an

19   in terrorem order.  But I hear what you're saying.

20       MR. FINK:  Thank you, Your Honor.  The second point

21   that I want to raise, it may be of a piece with what we just

22   discussed, but I'd like to talk about it, which are the

23   requirements that the SPV Ballyrock under Sections 5(c)(ii) and

24   (iii) of the order give notice in the event that an ADR process

25   is initiated, and that it would be required to do so, give

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 64 of 152

Page 64

1    notice to noteholders both directly and by publication notice.

2         And by doing that again under threat of sanctions, and

3    of course, I hear and appreciate what Your Honor's telling me

4    about the prospects of a potential application for sanctions,

5    but this would require Ballyrock to do two things.  Again, that

6    it's not in a position to do.

7         One, to give notice to investors, the identities of

8    which it does not know, and that's not information that's

9    available to Ballyrock.  And number two, to do so using means

10   that it has no access to assets to pay for.  Ballyrock has no

11   access to any assets at all.

12        There have been some administrative expenses paid

13   recently pursuant to the Court's order by stipulation that some

14   of the interplead funds be used for that purpose, Your Honor,

15   but Ballyrock itself has no access to any assets directly.

16        So again, Your Honor, we'd submit that -- that while I

17   hear and appreciate what Your Honor's telling me, we're very

18   concerned nonetheless to have an order out there that holds out

19   the prospect of sanctions, that would require us to do things

20   that are simply impossible for us.

21        THE COURT:  Okay.  Understood.

22        MR. FINK:  Thank you, Your Honor.

23        THE COURT:  U.S. Bank.

24        MR. TOP:  Good morning, Your Honor, Frank Top from

25   Chapman and Cutler on behalf of U.S. Bank National Association.

Page 65

1    I have with me in the courtroom today, Pam Wieder, who is a

2    corporate -- a Vice-President in U.S. Bank's Corporate Trust

3    Services Group.

4           U.S. Bank service is trustee for a large number of the

5    CDO transactions that involve credit derivative swaps

6    primarily, where they had the priority of payment issue and

7    things like that.  The resolution of that particular matter is

8    going to determine what the noteholders receive obviously, and

9    what the debtors receive, so we have that big priority of

10   payment issue.

11          Let me also say that we totally understand a lot of

12   the concerns about how to go about resolving a lot of these

13   transactions.  In many of these transactions, we don't even

14   know who all the holders are.  These are often held through

15   DTC.  It may be very, very difficult to obtain the majority

16   that would be needed to approve some kind of a settlement.

17          But we're not -- we didn't file an objection to say

18   that we're unwilling to try to work out some kind of a process

19   to develop that would make sense under all the circumstances.

20   We just don't think that the particular procedures in this case

21   are particularly realistic or practical.

22          You know, for example, an SPV receiving a notice of an

23   ADR with little or no assets of their own, it's likely that --

24   and the trustee has gotten in a number of cases already, an e-

25   mail saying, hey, we just got this subpoena in connection with

Page 66

1    the lawsuit, what are we supposed to do with it?

2          So the process has to be one, that's going to actually

3    be practical and lead to a result.

4          THE COURT:  Let me ask you a question, and it's

5    something I referenced in colloquy with Mr. Slack earlier.

6    Your client is trustee with respect to any number of SPVs that

7    are defendants in pending litigation, some of which has been

8    stayed, correct?

9          MR. TOP:  I believe it's all been stayed.

10         THE COURT:  Okay.  It's all been stayed.  I didn't

11   know if there was some litigation that was filed before the

12   September date that affected you.  But let's just say it's all

13   stayed.  What, if anything, have you done to notify noteholders

14   of the pending litigation, to organize noteholders, to take

15   steps to obtain authority to act on behalf of noteholders, or

16   to otherwise perform the duties of a trustee under these

17   circumstances, or have you taken the stay as an opportunity to

18   sit on your orders?

19         MR. TOP:  No.  As a matter of fact, even before, when

20   Your Honor came out with your opinion as it related to the -- I

21   believe it was the Dante decision, the perpetual thing, we sent

22   out a notice to all our noteholders, advising them of that

23   particular decision.  When they filed the action in September,

24   among other notices that have been prepared and sent out to

25   noteholders or certificate holders, we sent out a notice to all

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 67 of 152

Page 67

1    noteholders saying, this action has been filed and, you know,

2    this particular district court, and this is the relief they're

3    trying to seek.  In each case we've asked them to identify

4    themselves, so that we can try to get some guidance as to what

5    to do with these particular matters.  And finally --

6         THE COURT:  Okay.  Let me break in, because I don't

7    need to go into all the good things that you've done, and I

8    know it's an opportunity to do that, but I was really trying to

9    understand if a process has already been undertaken.  And

10   assuming that other trustees similarly situated would be doing

11   the same kinds of things, what's the problem, assuming you have

12   an organized noteholder group, in identifying a party to act as

13   a designated person with settlement authority?

14        MR. TOP:  Well, a -- of course, it depends upon

15   whether we have a big enough noteholder group.  But there

16   are -- most of these transactions have a number of different

17   classes of securities in there.  And the way the priority of

18   payment thing works is if, you know, there's a Class E that's

19   way at the bottom, and if the debtors prevail on the legal

20   issue with respect to priority of payment, that Class E's going

21   to get zero.

22        How do you allocate then a settlement, you know, so

23   instead of you work out with the debtors, and you say well,

24   maybe we'll agree on fifty cents on the dollar.  Do you apply

25   that fifty cents on the dollar in accordance with the

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 68 of 152

Page 68

1    waterfall, or shouldn't you really have to pay something to the

2    lower tranches, because you're giving up their legal right,

3    really.  You're giving up their ability to be able to get some

4    kind of an economic return on this transaction.

5         And so I understand that the debtors themselves aren't

6    concerned about the intramural intercreditor activities and

7    things like that, but we are, and -- but we have given a lot of

8    thought to this matter.  And, you know, in other circumstances,

9    we've been able to come up with a procedure that actually does

10   work.

11        But there are a lot of common issues in a lot of these

12   transactions.  One common issue is this whole how to resolve

13   the priority of payment provision.  And it seems to me that you

14   could get a group of noteholders together across different

15   transactions with differing rights to kind of be a global

16   oversight board of a certain number of issues.

17        One would be priority of payment, one would be how do

18   we deal with different tranches, and allocating the settlement

19   to those certain tranches.  There's all sorts of methodology

20   issues relating to these derivative transactions that could be

21   resolved by some kind of a global conference of noteholders.

22        And the fourth is, just common documentation to do all

23   of that.  And we've done this in a number of different

24   situations.  In Conseco, for example, we had a situation where

25   we had a servicing fee that was both at the bottom of the

LEHMAN BROTHERS HOLDINGS INC.; ET AL.

Page 69

1   priority of payments, at the bottom of the waterfall and small,

2   and so that the servicer of these manufactured housing loans

3   was getting nothing for doing their job and they were going

4   into bankruptcy, and you know, there'd be billions of dollars

5   of manufactured housing notes without any servicer.

6          We were able to work in that group, there was at least

7   140 transactions involved there.  We were able to identify a

8   group of noteholders that would give the trustee guidance on

9   the global issues that related to that particular issue that

10  affected all those indentures, and we did this as a part -- a

11  trust -- a 9019 settlement with a trust instruction feature to

12  it, and get the Court to approve it.  But that requires --

13         THE COURT:  Well, these procedures now include such a

14  9019 concept, and there's nothing in these procedures that, as

15  far as I can tell is intended to limit your creativity in

16  dealing with the class of noteholders in each of these

17  structures.

18         So what you've just said actually gives me more

19  comfort, as opposed to less comfort that approving these

20  procedures is a good idea.

21         MR. TOP:  Well, we would like to go through one of set

22  of processes first and then go to the second set of processes

23  if that's what needs to occur.

24         The other problem with all of this, of course, is

25  funding.  In some transactions we have some underlying assets,

Page 70

1    but at least, you know, if you believe what the documents say,

2    we have very limited ability to use those things.

3           In order to do a 9019 kind of a process, I need to

4    come before you and say, Your Honor, you know, we've taken a

5    look at this transaction from a noteholder's perspective and we

6    think it's fair and reasonable.  And if I don't have money to

7    get a good valuation of the credit derivative transaction,

8    don't get good financial advice as to how to split up the

9    money, it's impossible for me to come before you to say, Your

10    Honor, we think this is okay.

11           And just as they have that on their side.  You know,

12    they need to come to you and say from the debtor's perspective,

13    we think this is fair and reasonable.

14           The other nice thing about a more global approach to

15    this problem is transparency.  You know, you're going to have a

16    lot of mediations where if you get holder consent or approval

17    to do these things, where holders are going to say, boy, I

18    don't want to be the guy that settles at sixty cents on the

19    dollar when all these other people settled at twenty or thirty.

20    This more global approach to try to develop some kind of a

21    percentage to pay with respect to this termination payment, is

22    a way to provide that transparency and maybe get more people to

23    stand up and say, yeah, we -- so long as everyone else in it,

24    we'll be okay with that, too.

25           It just seems that, you know, there's more creative

Page 71

1    ways to do to try to skin this cat.  And again, it wasn't just

2    Conseco.  We've done this in United with aircraft, done it with

3    DVI with another securitization transaction.  And so I would

4    urge the Court to continue this motion, to see if we can try to

5    develop some kind of a system along those lines, but it will

6    require funding.

7          Again, you know, the current order as drafted mandates

8    that someone provide notice, publication notice, in the Wall

9    Street Journal and the Financial Times.  Well, I've just placed

10   an ad in the Wall Street Journal, just a five-inch column for

11   one day, and it cost 11,000 dollars to do that.  You've got to

12   do it for three consecutive days in two different publications,

13   you know, that could cost you as much as 100,000 dollars if the

14   notice is robust.  And if you're in fifty transactions, that's

15   five or six million dollars.  I mean, that's a huge expense

16   that the debtors are asking the trustees to bear as part of

17   this.

18         THE COURT:  Okay.  I've read that in your objection

19   and I've also read the debtor's response, and we're not going

20   to have any cost shifting as a result of this process.  And

21   you're a trustee and you'll just deal with the obligations as

22   you have as trustee without having the estate cover it.  Is

23   there anything more?

24         MR. TOP:  Let me just read quickly through my notes.

25   I guess the other thing I would say is, you know, this whole

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 72 of 152

Page 72

1    notion of confidentiality, there's a lot of confidentiality

2    provisions in there.  It's very, very difficult for a trustee

3    to notify holders of their -- of what the resolution ultimately

4    is if we're supposed to keep those confidential.

5            I understand that they have a process whereby we're

6    supposed to be the gatekeeper of financial agreements, but

7    frankly, their economic investment is what it is, and you know,

8    the trustee should have the ability to talk to noteholders

9    about what's been proposed and whether it's acceptable to them,

10   to the extent that they can find these noteholders.

11           THE COURT:  Okay.  Thank you.

12           MR. HOOK:  Thank you.

13           THE COURT:  Bank of New York Mellon.  And I note that

14   there are joinders of HSBC, apparently two separate joinders of

15   HSBC in the Bank of New York Mellon position, and I'm not going

16   to give HSBC an opportunity to separately comment unless you

17   miss something, Mr. Schaffer.

18           MR. SCHAFFER:  Thank you, Your Honor, Eric Schaffer

19   for the Bank of New York Mellon.

20           We were served around midnight with eighty-eight pages

21   of the revised order.  I have to say, it's real progress.  It

22   restores a lot of what was taken out of the earlier order that

23   was heavily negotiated, and I think it's a lot of progress

24   there.

25           We understand from listening to the debtors and the

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 73 of 152

Page 73

1    committee that there are some more changes that may be made,

2    that may relate to the treatment of trustees with or without

3    authority.  We want to have an opportunity to review this.

4    Having leafed through it this morning, I think we have some

5    minor comments, where we're going to make sure there's

6    consistency between 5(a) and 5(b), what happens if we don't

7    have authority.  But I think the restoration of language that

8    was in the earlier order is real progress.

9          We'd like to see what this finally is before we say

10   we're prepared to consent, but we're getting close.  One

11   reaction to what Mr. Slack said, I have a lot of things that I

12   could argue on the merits, but I think based on the revised

13   order, I don't need to get into that.

14          He said that our objections to the first motion were

15   overruled.  They were not.  You told us to go out and

16   negotiate, we did, we came here before with something that was

17   consensual.  We're happy to talk to the debtor and to the

18   committee.  We have reached out to the debtor.  We didn't get a

19   response, but we're happy to try and see this go forward on a

20   consensual basis.

21          THE COURT:  When you say you're happy to see this go

22   forward on a consensual basis, is that a request consistent

23   with the request made by counsel for U.S. Bank that some

24   additional time be permitted to give the parties who are

25   affected by this an opportunity for greater input?  Or is it

Page 74

1    simply a request that you have more time to take a look at the

2    order as revised at midnight last night, that you've described

3    as a demonstration of real progress, to put finishing touches

4    to that form of order?

5            MR. SCHAFFER:  We would like to have an opportunity to

6    have more input, but having said that, I think that we're very

7    largely satisfied, because this tracks what we agreed to

8    before.  We're not trying to improve on what we found to be

9    satisfactory before.

10           What I'm saying is, I'd like to see the final product

11   with any changes that are yet to be negotiated.  I'd like to be

12   able to talk to the debtors and the committee and say, here's a

13   clarification that I think is necessary, for example, between

14   5(a) and 5(b).  We're not talking about needing a lot of time

15   or a lot of input from our standpoint.

16           THE COURT:  Okay.  And when you say consensual, you're

17   talking about consensual as to your client?

18           MR. SCHAFFER:  That's correct.

19           THE COURT:  Okay.

20           MR. SCHAFFER:  I think we're very close.  We want to

21   see the final product, have an opportunity to either fix it,

22   come in here and raise an objection or say -- or declare

23   victory if that's the case.

24           THE COURT:  I think in a mediation order, you're never

25   declaring victory.

Page 75

1          MR. SCHAFFER:  Thank you, Your Honor.

2          THE COURT:  But I understand what you're saying.  Are

3     there any parties who joined in the Bank of New York Mellon

4     objection who feel the need to say something in addition to

5     what Mr. Schaffer has said?

6          There's no response.  We'll move on with the limited

7     objection of Wellington Management.

8          MR. BERMAN:  Good morning, Your Honor.  Mark Berman

9     from Nixon Peabody here on behalf of Wellington Management.

10          Wellington Management is an investment advisor to two

11     of the CDOs involved in these disputes.  Wellington is not a

12     party to any pending adversary proceeding, and Wellington under

13     the revised order, is now not a derivatives counter party.  Yet

14     the debtor reserves the right in the amended order to --

15     reserves to itself the ability to designate an investment

16     advisor as a party to the ADR process, because as Mr. Slack

17     states, the debtor believes it might be helpful.  Now, the

18     order as revised doesn't solve the problem of a non-party to an

19     adversary proceeding being brought into the ADR process,

20     therefore, required to file a response, to engage in the

21     process itself at a distant forum.  Wellington's from Boston,

22     it's required to come to New York to appear and be heard in

23     connection with the ADR process, and as an investment advisor

24     there can't be any argument that it has authority to do

25     anything.  It's more akin to what a witness would do at a

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 76 of 152

Page 76

1    hearing, as opposed to a party to an ADR process.

2         Now, I've looked for and found no authority, no legal

3    precedent for a non-party to litigation to be brought into an

4    ADR process.  None is cited.  I don't believe any exists.

5    Under these circumstances, we do not believe that an investment

6    advisor to a -- excuse me, to a CDO should be capable of being

7    brought in as a party to an ADR process.

8         THE COURT:  Let me just understand.  I hear your

9    argument, but let me understand Wellington's role as investment

10   advisor.  Wellington is not an independent financial advisor,

11   by particularly by contract it provides services akin to

12   management services for these various SPV structures, and would

13   have the institutional memory, the documents and the know-how

14   to deal with issues that relate to not only the management of

15   the structure when it was up and running, but presumably the

16   distribution of assets from that structure to parties that have

17   an interest in it or --

18        MR. BERMAN:  Your Honor, I don't believe that's a

19   correct description --

20        THE COURT:  Don't -- please describe Wellington's

21   role.

22        MR. BERMAN:  My understanding of it was that it was

23   involved in the calculation of the termination amount.  It also

24   would've been responsible, although this is not in dispute, as

25   to how the assets of the CDO were to be invested.  It was an

Page 77

1    investment advisor.  It's not the trustee, it's not the issuer,

2    it's not a noteholder, it does not have an economic stake in

3    the enterprise.

4           THE COURT:  Retained by the trustee?

5           MR. BERMAN:  By contract with the issuer, I believe.

6           THE COURT:  Sounds like you're baked into the

7    structure.

8           MR. BERMAN:  But, you know, in the sense that a -- any

9    company, any party out there in the world can enter into a

10   contract with anybody else, that doesn't mean that it has

11   either authority, a stake, or any purpose to be served in being

12   part of an ADR process where you're trying to settle a dispute.

13          Again, it may be a witness with regard to, you know,

14   how did you calculate the termination amount, what were the

15   elements that you considered, then I can understand --

16          THE COURT:  Okay.  I don't know enough facts about

17   Wellington's role with particular SPVs --

18          MR. BERMAN:  I understand.

19          THE COURT:  -- to make a judgment about this.  But I

20   want to hear what the debtors have to say in --

21          MR. BERMAN:  Understood.

22          THE COURT:  -- further response.  I understand your

23   position is that you can't be compelled to mediate.

24          MR. BERMAN:  Thank you very much.

25          THE COURT:  Bank of America.

Page 78

1            MR. TOP:  Your Honor, by reason of succession in some

2    of their trust business, U.S. Bank is now in their shoes, and

3    I've already said my piece.

4            THE COURT:  Fine.  Principal Global Investors

5    (Europe).

6            MR. BURKE:  Good morning, Your Honor, Michael Burke,

7    Sidley Austin for Principal Investors and Principal Life

8    Insurance Company.

9            At this particular time, we're very, very close to

10   reaching an agreement with the debtors, and so I feel

11   comfortable in saying we withdraw our objection.

12           THE COURT:  Fine.  Thank you very much.  The Minibond

13   Noteholders.

14           MR. DAVIS:  Good afternoon, Your Honor.  Jason Davis

15   of Robbins Geller for the Minibond Noteholders.  That's

16   Adversary Proceeding 09-1120 in the Court's docket.

17           As the Court noted, the Minibond Noteholders lodged a

18   limited objection with the Court.  The objection basically

19   requests that the case that plaintiffs filed on March 12th,

20   2009 and have been litigating for nearly two years now be

21   carved out from the procedures that debtors have proposed to

22   the Court.

23           One of the principal motivating factors, as I

24   understand debtors for the procedures, is one of practicality.

25   They don't have people to sit down with and resolve the

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 79 of 152

Page 79

1    problem.  Now that practical issue that they face, perhaps in

2    other circumstances, isn't present in our case because there

3    are representatives of the noteholders, the required trustees

4    have been joined, and the debtors have been joined.

5         We are now and always have been opened to sitting down

6    and negotiating with debtors in good faith, and for that

7    reason, I don't see why we need procedures to cover this

8    particular case.

9         Our case has not been stayed.  As Mr. Slack indicated,

10   the district court allowed the case to go forward, we filed an

11   amended complaint, and we think it's very clear now that the

12   representative noteholders have standing to step into the shoes

13   of one of the trustees to litigate the critical underlying

14   issues.  And that is, who is entitled to payment under the

15   notes?

16        So that is the one point I wanted to make very clearly

17   up front, is --

18        THE COURT:  Here's what confuses me.  I don't mean to

19   break into what you're about to say.  Why shouldn't the

20   mediation procedures of this order as it applies to SPV counter

21   parties apply?  And why are the Minibond Noteholders any more

22   entitled to a carve-out than noteholders in any other

23   structure?

24        MR. DAVIS:  It's a fair point, Judge, and it was

25   actually my second point.  There are circumstances in our case

Page 80

1    that are particular with respect to the special purpose

2    vehicles.

3            THE COURT:  If anything, though, they're weaker.

4    Because as we've already discussed in other hearings, the

5    Minibond Holders are a step removed from the noteholders in

6    many of the structures that we're dealing with.  We're not

7    talking about direct noteholders, we're talking about

8    noteholders of a noteholder.

9            MR. DAVIS:  Two points.  I'll address the second point

10   second.

11           The first point on why the special purpose vehicles

12   are different in this particular case, is the special purpose

13   vehicle that issued notes to my clients was created and

14   controlled by Lehman Brothers, essentially to borrow money to

15   buy more of its notes issued by an entity we're calling Saphir

16   Finance.

17           Now, neither of these entities are real entities.  And

18   both of these entities, both at the beginning of the creation

19   of this program, and most certainly toward the end of the

20   program, had conflicts with the noteholders that we described

21   in detail in our amended complaint.

22           And the person who was supposed to be making decisions

23   on behalf of both of these entities, each HSBC Bank, U.S., USA

24   National Association, essentially wasn't doing its job, because

25   it was trying to end its business relationship with Lehman

Page 81

1   Brothers throughout the course of the summer of 2008.  So there

2   are very clear details and facts that plaintiffs obtained from

3   the Valukas report showing that HSBC was conflicted during the

4   summer of 2008, was engaged in self-dealing, and was not in a

5   position to act on behalf of the noteholders.  It's supposed to

6   be doing that today, and it's certainly hasn't done that.

7          Now, the position we argued in front of Judge Pauley

8   and the position he accepted was, you should be permitted in

9   light of all of the details out in the public record to amend

10  the complaint to demonstrate that you do have derivative

11  standing in this case.

12         Now, what does derivative standing do in respect to

13  Your Honor's second point is --

14         THE COURT:  I think we're going too far down a path

15  that I don't want to be on.  I understand that there's a motion

16  to dismiss, your amended complaint, there'll be a hearing after

17  full briefing on the issues of standing, and your rights to

18  derivative standing, and I don't want to preview those legal

19  issues now, because I'm focused on something very narrow.

20         You have a late filed objection, which you style as a

21  limited objection that I could, according to Mr. Slack,

22  disregard simply as too late.  But we're here to talk about why

23  the Minibond Noteholders are the only noteholders raising

24  objections to this, because this is a motion that is directed

25  to SPV counter parties.  Why are you here?

Page 82

1          MR. DAVIS:  And that was the Court's second question,

2     and that goes to what exactly are SPV counter parties?

3          Now, some suggestions have been made that they can

4     make decisions, but the reality is, these are shell

5     corporations that are set up in the Cayman Islands to do very,

6     very little, and from the practical perspective, if debtors sat

7     across the table from the special purpose vehicles, a

8     legitimate question is posed as to who are these people.

9          In the case of the Minibonds, the special purpose

10    vehicles were created by Lehman itself, and controlled by

11    Lehman itself.  And so it's our position, Judge, that it's

12    unfair to allow the debtors to essentially negotiate with

13    themselves.  That's point one.

14         Point two, even if they are successful, even if the

15    counter parties that they say have the ability to negotiate

16    say, you know what debtors, you're entitled to a hundred

17    percent.  That doesn't resolve the problem.  The question

18    becomes, how do you pay that?  And the only way you can answer

19    that question is by going back to the trustees and applying the

20    applicable waterfall payments.

21         So I don't see how bringing special purpose vehicles

22    that are not operating companies, that have no businesspeople

23    running them, and that were set up by Lehman is an effective or

24    practical approach in our case.

25         THE COURT:  Well, I hear what you're saying, but

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 83 of 152

Page 83

1    you're not saying anything that you said in your limited

2    objection.  Because the limited objection was focused on this

3    being somehow in derogation of an agreement that was made with

4    you last time around.  And you've said not one word about that.

5         MR. DAVIS:  The limited -- two points.  So the limited

6    objection does say that we object because essentially, allowing

7    that order to apply in this case, would basically allow Lehman

8    to negotiate with itself, and that's a serious problem in our

9    case.

10        On the second point, on the stipulation that we had in

11   place with debtors, it's two pages.  The language could be a

12   lot broader, but it does carve us out from derivatives

13   procedures for assignments.  And now I understand that it's

14   debtor's position that that doesn't cover settlement, but it

15   was our position at the time that it did.  There are e-mails

16   backing this up, I'm told, I wasn't personally involved in that

17   process.

18        THE COURT:  Okay.  I understand.  I understand your

19   argument, and I'm going to give the debtor the opportunity to

20   respond to each of the objectors, to the extent that the debtor

21   wishes to do that.

22        MR. DAVIS:  Thank you, Judge.

23        THE COURT:  Thank you.

24        MR. SLACK:  Your Honor, I'm going to try to be

25   relatively brief, though there are a number of objections where

Page 84

1    I'd like to make a couple of comments.

2          Mr. Pedone on behalf of Deutsche Bank talked a lot

3    about sanctions against trustees and the risk of sanctions

4    against trustees.  And frankly, I think his objection misses

5    the point of the order, which is with respect to trustees, this

6    order is the same as the existing order.  They're not the focus

7    of any of the changes that we've made with the existing order

8    and the proposed order, and the trustees and the issues that he

9    raises with respect to sanctions are the exact same that you

10   have under the existing order.

11         The proposed order, the only again really new

12   provisions in the proposed order relate to the designation by

13   the SPV counter party of someone, so I don't frankly see any

14   difference between the obligations that the trustees would have

15   under the current order, and the objections that they had at

16   the -- for that order that were overruled and in the current

17   one.

18         Now, the other thing, Your Honor, is there was some

19   issue that Mr. Pedone raised about trustees with authority.  I

20   would tell Your Honor that is precisely the issue that I raised

21   earlier that we've worked out in concept a -- some new language

22   with the committee, and I think that that new language, in

23   fact, addresses specifically the issues that Mr. Pedone was

24   raising there.

25         With respect to Ballyrock's objection, Your Honor, one

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 85 of 152

Page 85

1     note of clarification, because I think it's important, is at

2     one point Mr. Fink said that noteholders had intervened in the

3     Ballyrock action.  That is not technically correct.  That was

4     an interpleader action, Your Honor, and they appeared just as

5     the debtor has appeared, and it may be a point of procedure,

6     but it's not an intervention as that's understood.

7            THE COURT:  Yes.  But in that litigation, the

8     practical reality is that I think Barclays is one of the

9     largest noteholders that's separately represented --

10           MR. SLACK:  That's exactly right, Your Honor.

11           THE COURT:  -- took positions in the pending

12    litigation.

13           MR. SLACK:  And I say that's a technical point, but I

14    think they're -- I agree with you that they are -- they have

15    appeared in that action and they are --

16           THE COURT:  They're here.

17           MR. SLACK:  -- represented, and as we know, they are

18    aggressively litigating.

19           There's a number of points that Mr. Fink made about

20    sanctions, and I would just say that, you know, the debtors

21    have a track record with respect to the existing ADR order.

22    It's something I talked about in my opening remarks, but the

23    debtor has, I think already been very judicious, in coming to

24    the Court, and has, in fact, tried to work out all these issues

25    under the existing order, even though the existing order has a

Page 86

1   sanctions provision as well.

2          I don't think the debtor would either bring a silly or

3   unfounded sanctions motion, and I don't think that that would

4   be well received by the Court.  So I think again, the Court

5   being the gatekeeper of that has very limited down side with

6   respect to that issue.

7          Both Mr. Fink and then Mr. Top on behalf of U.S. Bank

8   talked about the notice issue, and I think Your Honor had asked

9   a question which I want to pick up on, which is that the SPVs

10  or the trustees, however the internal documents work, with

11  respect to the litigations that are outstanding, are already

12  giving notice to noteholders pursuant to however they're doing

13  it in the litigation.  That again is one of those intramural

14  ideas.  It really is no different for them to give this kind of

15  notice that's required under the ADR SPV order, you know, than

16  to give the notices about the litigation.  Because remember,

17  they are defendants in the litigation, and to the extent that

18  they're giving those notices, this is really more of the same.

19         Now, Mr. Top, I think went through, on behalf of U.S.

20  Bank an alternative kind of a structure.  I can tell you that

21  discussions with trustees, discussions with SPVs are not going

22  to stop because this Court issues an order.  If a trustee has a

23  creative idea as to how we can better sit down in a room and

24  settle these, we're open to talking about it.

25         I can tell the Court that that's something we're

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 87 of 152

Page 87

1    interested in and willing to do.  It has to make sense.  But

2    the discussions aren't going to stop just because Your Honor,

3    you know, signs an order.  Because what we're looking for is

4    the most effective way to sit down and find somebody on the

5    other side of the table that we can talk with and try to settle

6    these cases.

7            The only other point I'd make about the expenses, Your

8    Honor, is that again, these SPVs and trustees are defendants in

9    litigation.  So the costs of things like valuation experts and

10   the like are going to have to be borne by them in litigation,

11   and it makes no sense to say well, if we're going to talk to

12   try to resolve these and actually save money for everybody,

13   that that cost should be, you know, somehow shifted to the

14   debtors.  I think Your Honor was on the right track there.  We

15   agree that there shouldn't be fee shifting.

16           With respect to Mr. Schaffer and BNY.  We appreciate

17   his comments that the new order that we submitted last night

18   has real progress, and is close.  We think that, in fact, with

19   the trustees, with the committee, that the language that we

20   proposed last night, and then are going to address with the

21   committee, we think is going to resolve a number of the

22   comments that we had from the trustees, so we're gratified to

23   hear that.

24           With respect to Wellington Management, that's the

25   investment advisor, I have a couple of points with respect to

Page 88

1    that.

2         Number one, I think Your Honor hit something on the

3    nose with respect to that, and obviously an investment advisor

4    is going to -- their role is going to be contractual.  So it

5    may very well be in particular situations, it makes no sense to

6    bring in an investment advisor, and we're not going to bring in

7    an investment advisor just to have somebody sitting there.

8         On the other hand, it may very well be that in certain

9    circumstances it's the investment advisor that has the

10   contractual management role, both with respect to things like

11   valuations and decisions, and it may very well be important for

12   the process to have that person there.

13        The debtor -- all the debtor is asking for is the

14   discretion to do that at the appropriate time.  I would say

15   that the Court does have the power to bring in parties such as

16   the investment advisor, because again remember, in certain

17   circumstances, the investment advisor is the one because

18   they're managing the assets that you're actually talking to,

19   you know, when you are the debtor.

20        And if you look at, you know, the standing order M390,

21   it's very interesting when it talks about types of matters

22   subject to mediation, because it says, "Unless otherwise

23   ordered by the presiding judge, any adversary proceeding,

24   contested matter, or other dispute may be referred to the Court

25   to mediation."

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 89 of 152

Page 89

1        So you don't have to be a party to an adversary

2    proceeding or a contested matter.  You can have a dispute.  And

3    again, if you are the debtor, and you're talking with the

4    investment advisor as essentially the party that's managing the

5    assets, then they're going to be an important person perhaps in

6    certain times to show up.

7        So that brings me to the Wong plaintiffs, and I guess

8    I want to resist arguing the motion to dismiss that we filed

9    and that they're going to respond to, although much of

10   Mr. Davis' comments --

11       THE COURT:  If you don't resist it, I will resist it.

12       MR. SLACK:  Thank you.  The -- with respect to the

13   substance of the limited objection, I think if Your Honor looks

14   at the language of the side letter, it's very clear that it

15   only applies to the assumption and assignment provisions.  I

16   don't think there's any ambiguity in the language.

17       I would be prepared, Your Honor, if Your Honor feels

18   it's needed, to hand up the e-mail traffic.  We have it with us

19   in court.  Because what happened was we -- in this order we

20   said, you know, this is going to apply to the assumption and

21   assignment parts.  The Wong plaintiffs wrote back an e-mail

22   saying they wanted it to apply to the settlement parts, and

23   Ms. Collins (ph), who's here, wrote back an e-mail that said,

24   we're not going to do that.  It only applies to settlement and

25   that's what it says.

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 90 of 152

Page 90

1          So I'm happy to hand that up to the Court if that's --

2          THE COURT:  I don't need to see it.

3          MR. SLACK:  -- necessary.

4          THE COURT:  I don't need to see that.

5          MR. SLACK:  With respect to whether the Minibond

6     holders should get sort of a special exemption, the answer is I

7     didn't hear anything that would suggest why one set of

8     Noteholders should get any sort of pass to the procedures.

9     There are probably some other good reasons why these particular

10    plaintiffs shouldn't get a pass here, but I don't think again

11    we need to actually address that, because there really is

12    nothing that I've heard that says why this group of deal should

13    get excluded.

14          We think it would make sense, frankly, for deals like

15    this potentially to be in it.  I think that's a discretionary

16    thing that the debtor looks at, and frankly, with consultation

17    with the committee as to whether a particular deal should go

18    into ADR, and we would want to keep that discretion with

19    respect to these deals.  So with that, Your Honor, we would

20    again ask that the Court approve these procedures, subject to

21    the language that we're going to work out with the committee

22    that we've agreed to conceptually and overrule, the remaining

23    objections.

24          THE COURT:  All right.  Thank you.  I am going to

25    approve these procedures and overrule all the remaining

Page 91

1    objections, and do so for the following reasons:  I think

2    everyone would acknowledge, including the debtors, that the

3    procedures that are laid out in the proposed form of order,

4    even including all of the revisions, are not perfect, but they

5    represent best efforts at achieving a very desirable goal,

6    which is to make mediation a viable alternative in litigation

7    against special purpose vehicle counter parties.

8         The Court recognizes, based upon the objections that

9    have been pressed, as well as those that have been resolved

10   prior to the hearing, that the structures involved here are, as

11   everyone understands, complex, in some respects unique, involve

12   difficult issues of governance; and just because it's difficult

13   doesn't mean we shouldn't have a mediation process that is

14   workable.

15        In the end, what makes the mediation process workable

16   is less the language of the order and more the willingness of

17   the parties who are engaged in the process to work responsibly

18   and in good faith with each other and creatively with their

19   various constituencies in order to achieve desirable outcomes.

20   In part for that reason, it's obvious to me that we are never

21   going to come up with a form of order that is perfect or ideal

22   or completely comprehensive in respect of each and every one of

23   the counter parties, nor will we come up with a document that

24   anticipates every issue that may arise.

25        I appreciate Mr. Slack's suggestion that no real harm

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 92 of 152

Page 92

1    can come from this because the Court will act as a gatekeeper.

2    I'm not sure if that's cold comfort or any comfort.  It is,

3    however, true that, to the extent that there are sanctions that

4    may flow from a refusal to participate in ADR, it will be

5    fact-specific.  It will be based upon a record.  There will be

6    defenses, no doubt, to the extent it ever comes before the

7    Court.

8         There may be issues of impossibility, despite best

9    efforts to obtain authority to settle.  In the end, I can't

10   anticipate any more than you can what the facts will be that

11   might give rise to a motion for sanctions or that might lead me

12   to think that sanctions are appropriate.  But in a world in

13   which parties are actually acting responsibly, this is purely

14   theoretical.

15        I heard the arguments of Deutsche Bank and U.S. Bank,

16   being the principal remaining objections of trustees.  I

17   believe that, notwithstanding those objections, U.S. Bank

18   actually suggested that there are ways to skin this cat, and

19   that he in his experience in other cases has managed to deal

20   with complex constituencies of noteholders.  That's great.  You

21   can do it again here.  I was also particularly impressed with

22   the argument made by Mr. Schaffer, because he must have used

23   the two words real progress about three or four different

24   times, and I like that.  That to me suggests that, to the

25   extent Bank of New York is a paradigm of what other trustees

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 93

1    will be dealing with, than Deutsche Bank and U.S. Bank and Bank

2    of America having become, in effect, part of the U.S. Bank

3    family for these purposes should be able to work with the very

4    same order.  In other words, if it's good enough for one

5    trustee, it probably should be just fine for other similarly

6    situated trustees.  And to the extent it's not, recognizing

7    this is not a one size fits all situation, and that application

8    of the order in certain instances may actually be a source of

9    prejudice to any party, the entry of the order does not limit

10   the ability of any aggrieved party to come to court and

11   complain, but it had better be for good cause.

12          As for the Minibond Noteholders, their objection is

13   overruled as untimely, and based upon the representations of

14   counsel, that these procedures are not in conflict with earlier

15   agreements.  To the extent that the argument with respect to

16   the limit objection touched in any way on matters to be heard

17   by the Court in connection with the renewed motion to dismiss

18   the admitted complaint, I'm disregarding all such argument

19   without prejudice to the same arguments being made when we have

20   a hearing on that subject.  In terms of the form of order

21   itself, I gather from the comments of the creditors' committee

22   that there is still some things to be done to the order.  I

23   would hope that in the process of developing a final form of

24   proposed order that Mr. Schaffer's remark about a consensual

25   order be respected and that, to the greatest extent possible,

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 94 of 152

Page 94

1   workable language be developed in a civil manner as a result of

2   ongoing cooperation among the parties.

3        To the extent that there are parties whose objections

4   have been overruled who have substantive disagreements as

5   opposed to language issues, I'm not inviting them into the room

6   to agree to an order.  You either are a part of the process or

7   you're not.  Hopefully the order will reflect the creative

8   thoughts of all interested parties, but we're not restarting

9   the process all over again.  So if you have a bunch of creative

10  ideas that involve a total reshuffling of this deck, you can

11  forget about that.  The debtor's motion to implement

12  alternative dispute resolution procedures for affirmative

13  claims, under derivatives transactions with special purpose

14  vehicle counterparties -- and that's quite a mouthful -- is

15  approved.  And we're adjourned until two o'clock.

16       (Recessed at 12:15 p.m.; reconvened at 2:06 p.m.)

17       MR. MILLER:  Afternoon, Your Honor.  This is Ralph

18  Miller for the Weil firm on behalf of the debtors.  The first

19  two items on the agenda this afternoon are both the Lehman

20  Brothers Holdings, Inc. versus United States of America,

21  adversary case number 10-03211.  They're items five and six,

22  and Mr. Raj Maden at the Bingham firm will handle those on

23  behalf of Lehman Brothers.

24       THE COURT:  Okay.

25       MR. MADEN:  Good afternoon, Your Honor.  Raj Maden for

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 95

1    Bingham McCutchen for LBHI.  Your Honor, both LBHI and the

2    United States have filed motions for letters of request

3    pursuant to the Hague Convention seeking this Court's

4    assistance in obtaining foreign discovery from LBIE.  Before I

5    actually get into the details of the request and other

6    substantive matters, I thought it might be worth just spending

7    a minute on the procedural history here.

8            The motion for -- to withdraw the reference was

9    granted by the Federal District Court and then referred back to

10   this Court for discovery purposes.  And Judge Berman, who's

11   assigned in the Southern District of New York, set a discovery

12   cutoff for March 30, 2011.  And the one -- this may come up as

13   we have discussions.  When we met with Judge Berman in the

14   scheduling conference, he asked us, meaning the United States

15   and LBHI, to seek any extensions of discovery directly from

16   him.  So I just want to sort of point that out.  The case, you

17   may recall, is about certain stock lending activities between

18   LBI, the U.S. broker dealer, and LBIE.  Specifically, LBI lent

19   UK equities to LBIE.  And as is customary with such stock-

20   lending activity, when the UK issuer paid a dividend, LBIE

21   was -- as the borrower, was obligated to make a substitute

22   dividend payment to LBI.  That substitute dividend payment

23   attracted UK tax, pursuant to UK law and the tax treaty between

24   the United States and the United Kingdom.

25           LBHI claimed a foreign tax credit with respect to

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 96 of 152

Page 96

1      those UK taxes that it incurred.  And the primary issue in

2      dispute is the Internal Revenue Service disallowed those

3      foreign tax credits.  But what's relevant here is the fact that

4      what we're talking about are stock-lending transactions,

5      specifically LBIE's stock borrow of UK equities from LBI, and

6      that sort of informs LBHI's request.  We, on behalf of LBHI,

7      have made four very narrow requests for information that

8      directly go to the context of the issues that are in dispute,

9      specifically -- and rather than make it four requests, we can

10     break down those four requests into two categories.  The first

11     category involves stock-borrowing activity from LBI, and what

12     we've asked for is all the stock borrows that LBI engaged in

13     from 1997 to 2005.  That trading activity is housed in a

14     trading system referred to as Global One, and LBIE has access

15     to that trading system, whereas LBHI and LBI do not have access

16     to that trading system.

17             So we very narrowly requested borrowing activity from

18     LBI for that period of time.  And the second sort of category

19     of information that we've requested is something called UK Tax

20     Reclaims, and what that is is that LBI -- well, let me just

21     take one step back.  Prior to the transactions that are at

22     issue, the UK/U.S.  treaty was slightly different than it is

23     now, or at least the application of that treaty is slightly

24     different than it is now, where the recipient of the substitute

25     dividend payment was entitled to receive a refund of a portion

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 97 of 152

Page 97

1    of the taxes that it incurred on these -- when a dividend was

2    issued.  And so the reason this is relevant is that LBI sought

3    these refunds and invoked the same treaty provisions that we're

4    dealing with, with respect to the transactions at issue.

5    LBIE -- representatives from LBI assisted LBI in obtaining

6    these refunds, and we know that they have some of the

7    information relating to these reclaims.  And so we've, again,

8    very narrowly requested those reclaims and letters between the

9    HMRC, which is the UK equivalent of the IRS, and LBIE.

10          We, as is laid out in the papers filed by both LBI and

11   LBHI, we've tried to work over the past fifteen months with

12   LBIE in obtaining this information informally, pursuant to the

13   TSA and then more recently the services agreement.  And I think

14   it's fair to characterize those discussions as very

15   cooperative, and I think we've made some progress in

16   identifying the methodologies for obtaining this information.

17   But we concur with LBIE that there have been logistical

18   challenges in obtaining this information.

19          And I'll say further that perhaps we would have

20   continued to pursue those informal discussions if it were not

21   for the discovery cutoff of March 30 and, frankly, the

22   transmission from engaging in an administrative process with

23   the IRS to now being in formal litigation.  And so, because of

24   those two reasons, we would like to pursue these motions for

25   letters of request and obtain this information formally, and

08-13555-mg  Doc 14851  Filed 02/17/11  Entered 03/08/11 10:35:16  Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 98 of 152

Page 98

1   also within the time frame we've identified.  We think we've

2   satisfied both the U.S. discovery rules and the UK discovery

3   rules without getting into very much detail at a high level

4   because our requests are so focused, and there is really no

5   objection or commentary that the requests we've made are not

6   relevant to the issues that have been presented.  I'm happy,

7   Your Honor, to address some of the considerations that have

8   raised by LBIE if you think that's appropriate now, or if you'd

9   like me to do it after you hear from LBIE.

10          THE COURT:  Well, to what extent is your position

11  congruent with the position of the IRS expressed in papers

12  filed last evening?

13          MR. MADAN:  Well, Your Honor, with respect to the

14  procedural issues that the United States has raised,

15  specifically standing and ripeness, we're not as interested in

16  standing on those formalities because our objective is to

17  obtain this information as efficiently and easily as possible,

18  and while perhaps formally speaking, LBIE does not necessarily

19  have standing to come here, I can understand the issues that

20  they have, and we just don't necessarily need to stand on the

21  formality of whether they have standing or not.  I think their

22  expression of the challenges they've faced is reasonable.

23          THE COURT:  Okay.  This is an unusual circumstance,

24  inasmuch as I have ongoing responsibility for discovery, but I

25  do not have the ability to deal with the deadline that is

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 99 of 152

Page 99

1    driving the train at the moment.  Reading everybody'd papers,

2    it appears that there seems to be consensus that the material

3    which you're seeking and that the IRS is seeking is necessary

4    for the prosecution and the defense of the litigation, that the

5    March 30 deadline is looming, that the burdens alleged by LBIE

6    in complying with the discovery requests appear credible, at

7    least as supported by the witness statements, and that you all

8    have a problem.

9         MR. MADAN:  I agree with everything the Court has just

10   articulated, and I'll say --

11        THE COURT:  Of course, that doesn't mean that I have a

12   problem.

13        MR. MADAN:  No, no.  That's typically how it works.

14   But what we've talked to the United States about and frankly

15   with LBIE's counsel about is that we have -- because of all the

16   reasons you've just identified, we have the intention to file a

17   request for an extension of time with respect to the discovery

18   cutoff, and to do it fairly expeditiously --

19        THE COURT:  Let me cut through what you've just said

20   and say something which I think is in the mind of the average

21   judge who reads a discovery argument that says it's going to

22   take us four months to get this information, maybe more.  And a

23   reaction to that may be -- and I realize it isn't you who said

24   this -- oh, come on.  Why should it take four months?  Just put

25   more people on it.  Why shouldn't it take two weeks?  Haven't

Page 100

1    we all heard the litany of, well, it's in deep storage.  We

2    don't have control.  We have lots of problems.  We have other

3    priorities.  It's going to be expensive.  So?

4          So my attitude basically is going to be -- because

5    this seems to be relevant information and whether or not LBIE

6    has standing, I'm certainly going to hear them.  Arguments

7    about how difficult or time consuming this is or arguments I

8    think are properly to be addressed to the Court in the UK, or

9    to Judge Berman who set the schedule.  So my very narrow

10   inquiry is to what extent is the material that Lehman seeks and

11   the IRS seeks information which is properly discoverable?  The

12   answer seems to be yes, so for me, this is a relatively easy

13   argument, unless somebody wants to complicate it.

14         MR. MADAN:  You're not going to hear that from me,

15   Your Honor.

16         THE COURT:  Okay.  And I'll hear from the IRS, too,

17   and I'm interested in the problems presented by the LBIE

18   position, but I'm not sure that there's much I can do about

19   that.  So what does the IRS have to say?

20         MR. BODING:  Good afternoon, Your Honor.  Nick Boding

21   for the United States of America and the IRS.

22         Essentially, Your Honor, the government agrees

23   wholeheartedly with what you just said.  I mean, we are in, in

24   some ways, a Catch-22.  I don't think anyone disputes that we

25   desperately need this information, particularly the government

Page 101

1    to mount its defense in this case, keeping in mind it was the

2    one that was sued, not the one bringing the suit, and all of

3    the information is possessed by a former entity within LBHI

4    that's, for purposes of bankruptcy, two separate entities.  So

5    at the end of the day, I think we all agree we need the

6    information, and we all agree it's going to be really hard to

7    get that information by the existing deadline.  But with

8    respect to the objections from LBIE, I think they can be

9    answered in one very simple sentence.  This isn't the right

10   forum.

11        All of their objections can be dealt with in the

12   United Kingdom, and we have told them before we are interested

13   in not having that litigation.  That will only protract things

14   unnecessarily.  We're more than happy to work with LBIE in

15   narrowing whatever requests they identify and addressing

16   problems so that we can both avoid litigating in the United

17   Kingdom.  In submitting the instant request to Your Honor,

18   prior to doing so, the United States spent considerable time

19   and resources engaging foreign counsel.  Foreign counsel in the

20   United Kingdom has in fact vetted this request, and at this

21   time, we have no reason to believe that it's not consistent

22   with -- or arguably consistent with United Kingdom law.

23        So in short, we're making a good faith request.  We

24   have every reason to believe it will be approved, and

25   essentially we ask that the Court approve the request promptly

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 102 of 152

Page 102

1  so that we can get moving over in the UK and see where things

2  go from there.

3           THE COURT:  Okay.

4           MR. HESSLER:  Good afternoon, Your Honor.  My name is

5  Paul Hessler.  I'm with Linklaters.  I appear on behalf of

6  Lehman Brothers International Europe, LIBI, in this matter in

7  support of its special appearance in this adversary proceeding.

8  Your Honor, I've heard your comments.  LIBI wants to emphasize

9  it's not here to obstruct.  It's not here to create problems.

10  It's here for a very simple reason, which is that the letter of

11  request that you are asking -- you are being asked to issue

12  asks the English Courts to issue an order with which LIBI

13  cannot comply, and I --

14           THE COURT:  How do I know that's true?

15           MR. HESSLER:  Your Honor --

16           THE COURT:  And indeed, how would the UK Court know

17  that that's true?

18           MR. HESSLER:  Well, Your Honor, we will submit

19  whatever affidavits, and in fact have submitted declarations to

20  Your Honor detailing the difficulties in --

21           THE COURT:  I understand but, you know, even earlier

22  when I was talking to counsel for Lehman, I was hypothesizing

23  what a judge -- not necessarily me --

24           MR. HESSLER:  Sure.

25           THE COURT:  -- a judge might think in seeing a

Page 103

1    discovery dispute like this.  It's not the first time that

2    judges have heard parties who are asked to turn over documents

3    say we can't do it.  It's really hard to do.  It's really

4    impossible.  We can't make the deadline.  And you know

5    something?  When a court order is issued, things get done.  And

6    it's not that it's impossible.  It's difficult.  That's all,

7    right?  It's just difficult.

8            MR. HESSLER:  Your Honor, of course --

9            THE COURT:  That's my questions.

10           MR. HESSLER:  Of course that's true.

11           THE COURT:  It's difficult, but it's doable.

12           MR. HESSLER:  It's -- the --

13           THE COURT:  It's doable with enough people.  Work on

14   it instead of working on something else.

15           MR. HESSLER:  Your Honor, and that certainly is true

16   and could be said of anything in life.  The problem is here we

17   have an administration with administrators who have a massive

18   estate to wind up.  You're not unfamiliar with the types of

19   problems they have --

20           THE COURT:  I'm very familiar with the types of

21   problems.

22           MR. HESSLER:  -- and lots of issues they're dealing

23   with.

24           THE COURT:  But I guess here's the point -- and you're

25   in an awkward spot because, effectively, they're arguing that

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 104 of 152

Page 104

1    the Bankruptcy Court is not the right court to be deciding a

2    question which will ultimately be decided in the UK, assuming

3    the motions are granted, and I'm also not the right judge to be

4    deciding how much time this should take because of the awkward

5    procedural status of this adversary proceeding, which is

6    unique, in my experience, in having discovery still with me but

7    discovery deadlines elsewhere, which means I have virtually no

8    discretion in this matter other than to consider whether or not

9    the motions state a good claim for discovery from you in the

10   UK, and they appear to.

11            MR. HESSLER:  And Your Honor, other than around the

12   edges on certain requests and particularly with respect to the

13   IRS's motion, that's almost certainly correct.  That's almost

14   certainly right.

15            THE COURT:  So what left is for me to do, other than

16   grant the motions?

17            MR. HESSLER:  Well, I agree there's an awkward

18   procedural posture here, given the fact that another judge has

19   set a discovery deadline that is driving this.  And in fact, if

20   we were in front of that judge, what I might say to that judge

21   would be -- actually, particularly as to LBHI's request, there

22   is no need for anything.  What they -- the last thing they need

23   is the issuance of a letter of request.  What they need is an

24   extension of the deadline, and I understand that that's not

25   before Your Honor today, but it is a simple fact that we are

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 105 of 132

Page 105

1    working today, and my client is working today to get the

2    information together, to vet it, to make sure it's in the right

3    form to produce it, to gather information.  And so there's

4    really no dispute here about whether the information is

5    discoverable and whether we will or will not produce it.  We

6    will, and I assure Your Honor that the difficulties, which I

7    understand must seem like you've heard it from every person

8    who's ever gotten up to protest a discovery demand, are

9    formidable here -- and I don't mean to argue that point, but

10   there's a massive amount of data that has to be cross-checked

11   twice.  I don't want to waste your time going over that.

12            THE COURT:  And I accept the representations that have

13   been made that this is time-consuming and difficult.  And it

14   appears from the statements made by Lehman here that there's a

15   recognition that this is difficult and time-consuming.  And I

16   also know from experience in this case generally and in the

17   bankruptcy, more particularly, that the transition services

18   agreement and the amended services agreement and the sharing of

19   information has a long history and that this is but one example

20   of an ongoing problem.  But that having been said, you have a

21   discovery schedule I didn't create, and you have to deal with

22   it.

23            MR. HESSLER:  I agree with that.  And fundamentally,

24   Your Honor, we were here for a very limited purpose, was to

25   suggest to Your Honor that rather than shoving off the ship

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 106 of 152

Page 106

1    that may have some leaks and may lead to litigation and costs

2    in the UK and costs to the parties and to the court system in

3    the UK, that we take -- that the parties, rather than courts,

4    take a week or so, see what they can hammer out in terms of

5    required requests, and submit an agreed order.

6         And part and parcel, Your Honor, it seems to me the

7    parties ought to be in front of Judge Berman seeking extension.

8    That's not my place to argue.  I have no dog in that fight,

9    other than insofar as it may lead to the issuance of a UK court

10   order that, I think in all candor, Your Honor, we will have to

11   appear and object to, to the extent that requires production

12   sooner than my client can physically make it.  And so really we

13   were just here today to try to save cost, time and effort for

14   everybody involved by doing a little bit of preplanning now,

15   ideally coupled with relief that I understand Your Honor can't

16   give about the discovery deadline, in order to avoid greater

17   costs down the road.  And Your Honor, it's really that simple.

18   I mean, we have no desire to be obstructionist or anything else

19   here.  It's --

20        THE COURT:  I understand.  I don't view your papers or

21   your limited appearance as in any way obstructionist, but I'm

22   granting the motions, and I'm going to do so in whatever manner

23   the movants wish me to do it, and by that, I mean as follows.

24   If the movants wish to take up your proposal of spending some

25   time to craft a custom-made discovery protocol for the

Page 107

1   materials that you will voluntarily produce and in effect

2   consent to a court order in the UK providing for that

3   discovery, that might be very efficient.  And if the parties

4   want to take a few days or however long it takes to do that

5   within reason and submit an agreed order, that's perfectly

6   acceptable to me.

7          If, however, the parties believe that it would be more

8   efficient to simply grant their motions with whatever forms of

9   order they wish to submit without conferring with LBIE but

10  agree that notwithstanding that, they will work with you in

11  good faith and endeavor to come up with a discovery protocol

12  that makes sense based upon their perceived needs and the

13  potential burdens on you, as well as the ability to perhaps

14  expedite discovery by streamlining requests, that would be a

15  perfectly acceptable alternative to me, as well.

16         Additionally, since no one is under any obligation to

17  reach an agreement on this subject as a result of these

18  comments, the parties can simply take their orders and deal

19  with the consequences of those orders in the UK, which may not

20  be the most efficient approach, but it's certainly an

21  alternative.  As for what happens with the discovery deadline

22  which is driving this, that's entirely up to the parties, and

23  if they seek more time from Judge Berman, it's something you

24  can seek in the ordinary course.  And I take no position one

25  way or the other as to whether or not that's a request that

Page 108

1    will be warmly greeted by the District Court.  It's entirely up

2    to his discretion.  Those are the alternatives, it seems to me.

3            MR. HESSLER:  Thank you, Your Honor.

4            MR. MADAN:  Your Honor, may I?

5            THE COURT:  Yes.

6            MR. MADAN:  We -- should we express which --

7            THE COURT:  Well, this is an open, public hearing.

8    I'd be interested in your reactions to what I've said.

9            MR. MADAN:  Yeah.  From LBHI's prospective, I think we

10   would prefer what I think is option two, which is for this

11   Court to issue the order and for us then to work with LBIE to

12   narrow the request.  And that's primarily due to the fact that

13   we have this discovery deadline, and we want to get on with it.

14   That is -- we will clearly take LBIE up on its offer to make

15   the process as efficient as possible, but I think we can do

16   that after the fact, just as well as we could before the fact.

17           THE COURT:  And what does the IRS say?

18           MR. BODING:  Your Honor, I believe the government

19   would take the same position.  I think it might be easier,

20   given the peculiar nature of the discovery schedule, to go

21   ahead and get the order signed today.  I think the government

22   will be more than happy over the next week to work with LBIE in

23   an effort to streamline it, and if we're able to come to an

24   agreement, we'll withdraw the request in the UK, issue a new

25   request, get it approved quickly, and go back on consent.  But

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 109 of 152

Page 109

1    I think, given the discovery schedule, we need to get the

2    orders filed in the UK promptly and start moving that process

3    forward, recognizing, as we explained to LBI before, it would

4    be perfectly reasonable a week or two down the road if we can

5    agree on a subsequent request to narrow it, to withdraw the

6    earlier request and submit a new one on consent.  That would be

7    something that I think would be very easy to do and would put,

8    I think, both the government and LBHI in the best possible

9    position to both obtain relevant needed evidence and comply

10   with the District Court's existing scheduling order.

11            THE COURT:  Okay.

12            MR. MADAN: Your Honor, there are sort of two

13   housekeeping matters with respect to the request.  One is that

14   we've modified our request slightly to include the United

15   States as a party that would receive notice, and we have a disk

16   and a new order reflecting that.  And I believe that, with

17   respect to an objection we filed, with respect to the United

18   States' request, specifically permitting us to review documents

19   from LBIE for privilege, we have agreed upon language to

20   address that concern, which the United States --

21            MR. BODING:  Yes.

22            MR. MADAN:  -- is prepared to submit.

23            MR. BODING:  That's correct, Your Honor.  We have an

24   updated request, and it reflects only a resolution of the

25   objection issue.  It contains no new information or requests.

Page 110

1    We've got that on hard copy, as well as on a disk.

2         THE COURT:  Okay.  Well, hearing that both Lehman and

3    the government have revised forms of order and are in agreement

4    that it would be most expedient for those orders to be entered

5    promptly, I will do that.  And based upon the colloquy this

6    afternoon, I understand that notwithstanding the fact that

7    these orders are being entered, that there is to be a good

8    faith effort to work with LBIE to streamline the requests or

9    limit them in some fashion so that they can be presented

10   consensually in the UK and presumably expedite the discovery

11   process.  It's unclear to me based upon what has been said

12   whether the parties intend to seek any extensions of the

13   discovery cutoff.  I don't need to hear that on this record,

14   and I presume that the parties will do whatever they think is

15   appropriate.

16        MR. MADAN: Thank you, Your Honor.

17        THE COURT:  Okay.

18        MR. BODING:  Thank you, Your Honor.

19        THE COURT:  So that takes care of this, and please

20   hand forward the orders so that we can enter them.

21     (Pause)

22        THE COURT:  A surprisingly large number of people were

23   interested in this question.  Please proceed.

24        MR. MILLER:  Your Honor, Ralph Miller again for the

25   debtors.  The last two items that are going forward this

Page 111

1    afternoon both have to do with motions to intervene in Lehman

2    Brothers Special Financing Inc. against the Bank of New York

3    Mellon Corporation, adversary Case Number 10-03545, and we

4    would now turn it over to the counsel for the movants for their

5    presentation.

6         MR. GLENN:  Good afternoon, Your Honor.  Andrew Glenn,

7    Kasowitz, Benson, Torres and Friedman on behalf of various

8    Noteholders under the Dante program with LBSF.  Your Honor, we

9    are here today to recover on behalf of our clients the amounts

10   we believe are owed under a synthetic collateralized debt

11   obligation, either by settlement or by litigation.  This

12   dispute, the adversary proceeding in which we seek to

13   intervene, involves one discrete issue, and that issue is the

14   priority of distributions from that CDO.  Both the Noteholders

15   and LBSF are the beneficiaries of the collateral that was

16   posted to secure obligations under the CDO, the Bank of New

17   York as the trustee.

18        Various Noteholders have commenced litigation in the

19   United Kingdom with respect to this issue directly against the

20   Bank of New York, and LBSF has intervened in that action to

21   argue some of the issues that are currently before Your Honor.

22   All we are seeking by this application, Your Honor, is the

23   status that LBSF was granted in the United Kingdom and the

24   context of that litigation in this litigation, and that is to

25   have a say in the ultimate disposition of this matter, which

Page 112

1    directly, on a dollar by -- for dollar basis impacts our

2    recoveries under the CDO.  The first issue, preliminary matter,

3    is the stay order that Your Honor has entered.  Lehman argues

4    that we are precluded from even making this application to

5    intervene today or moving to the extent there's a stay against

6    us to file this motion to intervene.  And with all due respect,

7    we disagree with that.

8          The order was served on the defendants in the

9    adversary proceedings because they were the parties to the

10   proceedings that were stayed.  We are not parties to those

11   lawsuits, and all we seek is to become parties to those

12   lawsuits, and then we'll obviously have to deal with the stay

13   order.  But to the extent that the stay order is read to mean

14   that we can't come into court at all to file a motion, to have

15   our voices heard in this litigation, to intervene, we believe

16   is inappropriate under the terms of the stay order itself, but

17   in any case raises serious prior restraint constitutional

18   issues.

19         THE COURT:  Before we leave this issue you've just

20   identified, I have a question for you.  Because even before I

21   read the debtor's papers that identified the stay and suggested

22   that your motion was premature and that I shouldn't even

23   consider it until after July, it raised in my mind a question,

24   which is why you're here now.  What is your objective?  Is it

25   to intervene and then seek generalized relief from the stay, or

Page 113

1    is it to intervene in a timely way so as not to be charged with

2    having been derelict in moving promptly for intervention, or is

3    it to become involved in some fashion in the alternative

4    dispute resolution procedures that we spent a lot of time

5    talking about this morning?  I don't know if you were here or

6    not, but it occupied much of the morning.  I bring this up

7    because I can't understand why I should be involved in

8    reactivating or taking any positions with respect to litigation

9    generally stayed, particularly when that litigation may be

10   subject to alternative dispute resolution procedures that, if

11   successful, will make the entire litigation moot.

12              MR. GLENN:  Two responses to that, Your Honor.  We are

13   happy to participate in the ADR.  I believe that we are not

14   subject to the ADR procedures because we're not party to this

15   litigation.  But we also want this issue resolved.

16              THE COURT:  Why?

17              MR. GLENN:  It impacts the timing of our recovery.  It

18   impacts the status of the UK litigation.  LBSF is --

19              THE COURT:  How does your intervention here affect the

20   status of the UK litigation?

21              MR. GLENN:  Because the LBSF parties are using Your

22   Honor's decision as the state of the art to define the

23   bankruptcy issues that are being considered in the UK court.

24   And the status before was that the Perpetual litigation was

25   addressing that, and the chain of events that led us to where

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 114 of 152

Page 114

1    we are today is that Perpetual was litigating.  When that

2    matter was to be resolved, we asked Bank of New York to

3    continue that litigation on behalf of other holders so that the

4    train would keep on moving.  And what we believe is a one-issue

5    discrete issue of law that's already been briefed in the

6    District Court -- we don't want to rebrief it -- and I'm sure

7    will go to the Second Circuit.  I think that the problem with

8    the stay is that while we're happy to engage in settlement

9    negotiations, the stay is being used as a shield and a sword

10   against us, that the argument is you'll never get back into

11   court or that we'll gain a strategic advantage against you,

12   because Your Honor's decision is the state of the art in the

13   UK.  And there is at least a risk that the UK courts will

14   conclude that Your Honor's decision is the be-all, end-all

15   concluding event on this decision.

16          THE COURT:  You mean you don't think it is?

17          MR. GLENN:  Unfortunately, we don't.  We don't.  So I

18   think that we've had some settlement negations, to be candid

19   with Your Honor, with LBSF.  We're not going to stand on

20   ceremony to stop those settlement negotiations.  We're happy to

21   participate in the ADR as long as we are given standing and

22   allowed to intervene in the litigation.  And yes, I think it's

23   a strong possibility that we will seek to continue the

24   litigation exactly where Perpetual left off.  It's a matter

25   that spans literally hundreds of the series of notes containing

Page 115

1    this priority clause, and there really isn't any discovery that

2    needs to be undertaken, in our view.  I haven't heard Lehman

3    make an argument to the contrary.  And I think that, obviously

4    for our parochial interests, we want that decision rendered on

5    a final basis so we can decide how to move forward.

6         If we're going to settle the matter between now and

7    then, just like any litigation, we'll continue those

8    discussions.  I actually think that the Perpetual matter is

9    sort of emblematic of how this process will succeed and sort of

10   what Your Honor just talked about with respect to the discovery

11   dispute.  People need deadlines.  They need a threat of

12   something happening to give them the impetus to settle these

13   matters.  The Perpetual settlement, as I understand it, is

14   still sealed.  No one knows what that settlement was.  I'm not

15   moving to unseal it.  I'm just noting for the record that there

16   is a lot of uncertainty about how this process is going to

17   unfold, and I would respectfully submit that if this litigation

18   got on track, again I think that would facilitate settlement

19   rather than inhibit it.

20        No one has come into court before Your Honor, to the

21   best of our knowledge, before today to intervene in any of

22   these litigations on this discrete issue.  It was a one-off

23   matter involving Perpetual.  Given the overlapping nature of

24   that issue across hundreds of litigations -- and I'm

25   guesstimating that -- I just don't see any harm in having that

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 116 of 152

Page 116

1    discrete legal issue decided, particularly because the issues

2    have been vetted already in the District Court, and they were

3    already right for decision.

4            THE COURT:  Let me be clear on something.  Are your

5    clients Belmont Noteholders?

6            MR. GLENN:  They are included in the Belmont notes,

7    but they also own Beryl and Saphir as well, I believe.

8            THE COURT:  Okay.  Did your clients have a capacity,

9    if they chose to exercise the right, to intervene in the

10   Perpetual litigation?

11           MR. GLENN:  Do they have the capacity?  We tried to

12   intervene in that litigation, Your Honor, right before it was

13   settled, and our fear was that that would become collateral

14   estoppel or res judicata against us, and we arrived at a

15   settlement, I believe that was announced in court, that that

16   litigation would terminate without affecting our rights under

17   principles of res judicata, Your Honor.

18           THE COURT:  I remember you filed an objection to the

19   Perpetual settlement that was seeking to avoid preclusive

20   impact.

21           MR. GLENN:  That's correct.

22           THE COURT:  Do I remember that correctly?

23           MR. GLENN:  That's correct.

24           THE COURT:  Okay.  Those are my questions.  Thank you.

25           MR. GLENN:  Thank you.  So moving, Your Honor, to the

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 117 of 152

Page 117

1    merits, if I might, I think we have three discrete arguments

2    for intervention.  The two prongs of mandatory intervention --

3    and I'll try to not belabor the record because this is all in

4    our papers.  Number one, we believe that under the context of

5    this case, that we are parties in interest under Section 1109,

6    which gives us a mandatory right to intervene without more,

7    because that's an unconditional right.

8          We've cited Judge Lifland's decision in Johns-

9    Manville, and there are many cases that go into this.  For the

10   notion that the definition of a party in interest is elastic

11   and made on an ad hoc basis, depending on the issues that are

12   before the court, and that applies with equal force to

13   adversary proceedings.  As I said at the offset -- and I don't

14   think there's any real dispute about this -- we are the

15   economic parties in interest to this litigation.  If our view

16   of the priority scheme and the waterfall prevails, there is a

17   dollar-for-dollar increase in LBSF's recovery.  If Your Honor's

18   decision holds up, then they come first, and there's a dollar-

19   for-dollar decrease in our recovery.  We are bound by the same

20   principle trust deed, supplemental trust deed and related swap

21   agreements.  So given that in Johns-Manville, Judge Lifland

22   appointed representatives of future potential creditors, I

23   think that our connection to this bankruptcy estate and that

24   outcome of this litigation is just as direct, if not more

25   direct, than in Johns-Manville.

Page 118

1        Lehman cites two cases for the notion that we're not

2   parties in interest, the Comcoach case and the Revco case.  In

3   Comcoach, you had a landlord attempting to foreclose against a

4   third party.  The debtor was a tenant of the building in which

5   the foreclosure action stood.  And the Court held that that was

6   just simply too tenuous.  Obviously, there was no dollar-for-

7   dollar connection in that lawsuit such as there is here.

8        In Revco, you had an investment fund that settled a

9   preference action with the bankruptcy estate.  There, there was

10  no contract where the investors of the investment fund who

11  attempted to intervene were party to in conjunction with the

12  bankruptcy estate.  So there was a more significant distinction

13  there.

14       Going to the second prong briefly of mandatory

15  intervention, I think we've addressed the timeliness issue in

16  our papers very clearly.  This case, but for the stay, there

17  would be no issue at all that our application is timely.  The

18  litigation has literally not really gotten off the ground.  And

19  even because of the stay it can't get off the ground.

20       So in our view, there's no prejudice at all if we

21  intervene at this time.  And nor do we believe for the reasons

22  I articulated that there's any prejudice to anyone because the

23  legal issues involved in this case have already been vetted to

24  a significant degree and overlap with other stakeholders.  So

25  if we advance this litigation or we settle it as parties, we

Page 119

1   believe both those alternatives would benefit everyone and

2   prejudice no one.

3          We've shown our substantial interest in the outcome of

4   this litigation.  If we win, we get the money.  If they win,

5   they get the money.  It's really as simple as that.

6          And I think there's going to be some argument about

7   the structure of the CDO and to show how attenuated we are from

8   the collateral that's to be distributed.  And I want Your Honor

9   to understand simply one thing.  While the CDO is very

10  complicated, they are swap transactions that are embedded in

11  it.

12         Ultimately what you have here is a relatively simple

13  collateral trust.  BNY holds the collateral and ultimately is

14  collateral trustee.  A determination has to be made if it's

15  going in this direction to the estate or in this direction to

16  us.  It's really as simple as that.

17         And finally, adequate representation.  Lehman argues

18  that we are adequately represented by BNY, our common trustee.

19  And we, with all due respect, disagree with that.

20         First of all, BNY is not objecting to this relief.

21  Number two, BNY is a defendant in our litigation in the U.K.

22  And finally, and I think this is very important, BNY is trustee

23  across tens if not hundreds of these CDOs.  So while it

24  represents us in this CDO, it represents other people with

25  whatever divergent interests they might have, which is one of

Page 120

1    our concerns about why BNY is moving, in our view, very slowly

2    and has not moved to lift the stay or to move the litigation

3    forward.

4         The case law indicates that the burden of proving

5    inadequate representation is minimal.  There are cases that say

6    that if there is an exact identity of interest that yes, that

7    is inadequate representation -- or adequate representation I

8    should say.  But whereas here there's no dispute that, number

9    one, our trustee is a defendant in litigation commenced by us;

10   it's a defendant in litigation commenced by LBSF both here and

11   in the U.K.

12        Given potential unknown conflicts of interest between

13   the strategies, the goals of BNY and all these CDOs I think it

14   would be a big mistake to prove -- to presume that BNY, as a

15   matter of law, can adequately represent us in this case.

16   Certainly, it has no economic interest in the outcome of this

17   dispute.  It serves merely as a trustee and doesn't hold any of

18   the notes themselves.

19        Unless Your Honor has any questions of me at this

20   time, I would turn the podium over to Mr. Seligman and reserve

21   some time for reply.

22        THE COURT:  Okay.  I have a couple of questions.

23        MR. GLENN:  Okay.

24        THE COURT:  One is who do you really represent here in

25   terms of the notes that drive this process?  I don't know if

Page 121

```
1    you represent some selected noteholders or if you represent all

2    the noteholders.  I'm assuming you don't represent all the

3    noteholders; is that correct?

4              MR. GLENN:  I don't.  I think our denomination is

5    approximately 111 million of Australian dollars across various

6    series.

7              THE COURT:  Across various series.  So hypothetically,

8    if I were to say, Mr. Glenn, you make some terrific points

9    here, motion granted, that is, by the way, a hypothetical, what

10   other parties in interest out there will be emboldened by your

11   litigation success today and choose to step in thereby

12   complicating this litigation?  Who else is out there focused on

13   the same flip issue which you identified?  That's question one.

14             Question two, BNY acted as the principle party in

15   interest in the Perpetual litigation here in part because

16   Perpetual for its own reasons chose not to participate in this

17   court.  They did a perfectly adequate job in representing the

18   noteholders in that case, presented all of the legal issues

19   that I needed to hear and consider.  And until somebody tells

20   me I was wrong in the Perpetual case, that's the law.

21             MR. GLENN:  That's correct.

22             THE COURT:  What makes you think on behalf of your

23   clients you can say or do anything different from what has

24   already been done?

25             MR. GLENN:  I think, Your Honor, that we would do
```

Page 122

1   something is the answer.  And if BNY were representing us with

2   the same zeal and in the litigation were in the same stage,

3   maybe I wouldn't be here today.  I can't answer that question.

4        But I do know that they're not here today.  That this

5   litigation is now I think six months old, maybe five, and

6   nothing has happened.  And BNY as of today is subject to ADR

7   procedures that could directly or indirectly prejudice my

8   clients.

9        So under pain of sanctions issued by this Court, under

10  pain of compromising with a settlement that is not approved by

11  the noteholders, I can't imagine what might happen given where

12  this litigation is versus Perpetual.  All I know is that it is

13  in a -- it's in a completely different world than where the

14  Perpetual litigation was.  And I'm not privy to the inner

15  workings of what BNY has chosen to do and not to do in the

16  context of this litigation.  All I know is where we are today.

17       THE COURT:  Okay.  Thank you.

18       MR. GLENN:  Thank you.

19       MR. SELIGMAN:  Good afternoon, Your Honor.  David

20  Seligman on behalf of the liquidators of the Lehman Brothers

21  Australia estate.

22       Your Honor, I'm not going to belabor the points that

23  my colleague, Mr. Glenn, made with respect to the motion.  But

24  so I wanted to focus -- I want to highlight a couple points but

25  focus specific on some unique interests that pertain to the

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 123 of 132

Page 123

1    Lehman Brothers Australia estate.  And perhaps I can just give

2    you a little bit of background and context in terms of where we

3    are.

4           As we said -- excuse me for my cold.  As we said in

5    the papers, Lehman Brothers Australia estate holds

6    approximately 17 million dollars of notes.  But more important

7    than that, the Lehman Brothers Australia entity was placement

8    agent for a significant amount of these Dante notes when they

9    originally issued both as Lehman Brothers Australia and its

10   predecessor company that was acquired by LBHI well before the

11   filing.

12          There has not been a bar date set in the Australian

13   case yet.  However, there have been several hundred million

14   dollars of claims asserted against the estate related to these

15   Dante notes.  To date, there's approximately 275 million

16   dollars of claims filed against Lehman Brothers -- against the

17   Lehman Australia estate where LBSF was the counterparty to the

18   swaps claiming all sorts of breach of fiduciary duty fraud, et

19   cetera, in connection with the placement of those notes.

20          Again, we don't know the full extent because there

21   hasn't been a bar date set.  But based upon those claims

22   asserted in the Lehman Brothers Australia estate, the

23   Australian estate has filed contingent proofs of claim in this

24   case for approximately 1.3 billion dollars.  It's what they

25   anticipate if there were ultimate claims asserted against them

Page 124

```
 1    what they would be.  And they did that to make sure that they

 2    were complying with the bar date in the United States.

 3            There is also set, Your Honor, for a trial to start

 4    actually at the end of this month a class action, which is

 5    brought by some of the holders of these notes against the

 6    Lehman Brothers estate on these breach of fiduciary duty fraud

 7    types of causes of action.  There's actually a mediation set

 8    for next week, and then the trial starts I believe it's

 9    February 28th.  And people anticipate that's going to be a four

10    to six-week trial.

11            There will likely be an initial phase about liability,

12    and then there will be a subsequent phase about damages.  And

13    by the way, the question of damages for the Australian judge

14    may include questions of deficiency claims of these -- of the

15    noteholders, which circles back to the question of who will

16    ultimately have priority here.

17            The class action has been brought on behalf of

18    approximately seventy-five noteholders.  And just -- I know

19    Your Honor asked earlier sort of who is -- who are these

20    noteholders.  At least with respect to the ones that are part

21    of the class action, they're all local municipalities --

22    Australian municipalities, charities, et cetera, who purchased

23    these.  And their basic allegation is, is that they bought

24    these as, in their view, safe investments, and it turned out

25    not to be safe investments.
```

Page 125

1          So that's where the Lehman Brothers Australia estate

2    is right now.  The lion's share of the claims asserted to date

3    in the Lehman Brothers Australia estate case pertain to these

4    Dante notes.  If for whatever reason these -- the noteholders

5    had recovered in full and had no claims against the Australian

6    estate, it would reduce the claims in the Australian estate

7    dramatically.

8          So because of that, Your Honor, the Australian estate

9    is effectively on hold.  They can't make any distributions.

10   They can't even begin to understand whatever kind of plan of

11   liquidation they might have because the vast majority of the

12   claims asserted are these contingent claims.

13         And so from the Lehman Brothers Australia estate's

14   perspective, they have been trying to push the resolution of

15   this issue both because they hold notes and also for the

16   resolution issue.  And they have been in discussions -- and I

17   won't reveal any confidential discussions --

18         THE COURT:  Please don't.

19         MR. SELIGMAN:  -- they have been in discussions with

20   both the Dante noteholders as well as LBHI to try and foster

21   potential settlements.  And those have been going on for many,

22   many, many months.

23         THE COURT:  Just so I understand the context of those

24   conversations, is that simply informal settlement dialogue or

25   is it subject to a more formal ADR procedure?

1        MR. SELIGMAN:  It's not subject to a formal procedure.

2    It has been informal dialogue occurring periodically, in-person

3    meetings, meetings by phone, et cetera.  But it's not been part

4    of a formalized proceeding.  But those I can -- those

5    proceedings -- those conversations are definitely crystallized.

6    And by the way, I don't think that the ADR procedures, if they

7    were triggered with respect to these, would necessarily advance

8    the ball because I think people are already talking, and there

9    has been quite a bit of back and forth.

10        THE COURT:  In what respect is your ability as a

11    representative of the Australian estate limited or compromised

12    by your not being a party in this litigation?

13        MR. SELIGMAN:  Well, it's compromised in two ways.

14    Number one, for the same reasons laid out by the dominant

15    noteholders, we are noteholders.  Number two, because of all

16    the contingent claims asserted against us, if there's a

17    decision in -- and they're ultimately may be a decision in the

18    U.K.

19        And my guess, Your Honor, is, is that whatever the

20    U.K. decides, my guess is -- I have no reason to suspect this,

21    but my guess is, is that the Trustee may decide I can't do

22    anything with the collateral until I get clarity in the U.S.

23    So we're going to have, my guess is, to need to engage in

24    litigation here in the U.S. with respect to this adversary one

25    way or the other because I doubt a trustee is going to make

Page 127

1   distributions with the -- with a lawsuit pending against it

2   unless something happens that I can't foresee.

3           So in two ways, as a noteholder and also with respect

4   to the resolution of this issue, it's going to affect what

5   kinds of claims are asserted against us and thereby what kind

6   of claims that we may have as contribution claims against the

7   estate.  Your Honor asked -- and so from our perspective, you

8   know, we believe that it's important to get this litigation

9   going.

10          You know, some of the things that Mr. Glenn has

11  mentioned is, you know, that this matter is an issue of law.

12  It's been fully briefed at multiple levels.  Yes, this is not a

13  big deal for people to take the briefs that they've already

14  done and resubmit them, whether they're to Your Honor again

15  and, you know, we know how Your Honor has ruled, or whether

16  they're at an appellate level.  My guess is, is that the only

17  way that this issue is going to be resolved is if it goes up

18  the appellate chain in the United States as well as in the U.K.

19          We did ask Bank of New York to proceed here in the

20  U.S.  We did so when the -- officially when the Perpetual

21  litigation was settled.  You asked earlier why bring this

22  litigation now.  One, people were engaged before in settlement

23  discussions.  People were looking at the Perpetual litigation

24  going forward and were looking for that for guidance.  There

25  didn't seem to be any reason to pile on, especially from our

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 128 of 152

Page 128

1    state with limited resources to pile on, and wait to see how

2    that was going to resolve itself.

3          And in terms of why now, as Mr. Glenn mentioned, there

4    does -- there always is clarity of mind when there is

5    deadlines.  It is no coincidence that once District Court Judge

6    McMahon allowed the motion for leave to appeal in front of her,

7    we noticed that there was a settlement relatively quickly.

8          And again, I think, Your Honor, we should get the

9    litigation going in terms of the briefing.  It's not going to

10   be burdensome for people to re-file the same briefs that they

11   had and to get the litigation going.  Because again, my guess

12   is it's going to have to get resolved one way or the other.

13         Your Honor asked about the question of sort of

14   floodgates, whether people are going to be emboldened if --

15   hypothetically if Your Honor were to allow intervention.  I

16   don't think so.  I think if you would have seen the floodgate

17   issue it would have come in a lot of parties seeking to

18   intervene in the U.K. proceedings, but they didn't because they

19   were waiting to see how that played out.  You would have

20   perhaps already seen a bunch of other parties come forward here

21   and seeking to intervene.

22         I think the people perceive it as a legal issue, and

23   so at the end of the day, you know, I think people realize that

24   the arguments have been laid out.  Again, you asked what

25   additional arguments could we make that would maybe change your

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC.; ET AL.
Pg 129 of 152

Page 129

1    mind or something.  I don't know that we have any additional

2    arguments.  People have laid out the briefs.  But again, it's a

3    question of moving the process forward.  And we respectfully

4    believe Your Honor, you know, was -- although his law was in

5    error, and if people want to take that up on appeal they should

6    have the ability to take that up on appeal and move that

7    proceeding along.

8            We did note in Judge McMahon's opinion her statements

9    with respect to, you know, LBHI and the fact that this matter

10   -- that they were resisting the appeal in the U.S. when it was

11   a favorable ruling.  But of course, they were happy to

12   intervene in the U.K. where they had a -- you know, where it

13   was a different ruling and they wanted to proceed there.  We're

14   simply asking for the same corresponding rights with respect to

15   what LBHI said.

16           With -- I just want to highlight a couple of points

17   with respect to the legal standard.  We've noted the issue of

18   the party of interest issue.  You're probably going to hear

19   some arguments from LBHI about the complexity of the

20   transaction and limitations in the documentation.  I guess I

21   would say two points about that.  As Mr. Glenn laid out, it

22   really is a question of two different parties as beneficiaries

23   of a trust.

24           And, Your Honor, I just want to remind you I'm quoting

25   from your order in the Perpetual litigation opinion.  Your

Page 130

1    Honor stated, and I quote, "At issue both here and in the

2    English courts is the priority of payment to creditors --"

3    excuse me, "At issue both here and in the English courts is the

4    priority of payment to beneficiaries, one a noteholder and the

5    other a swap counterparty, that hold competing interests in

6    collateral securing certain credit linked synthetic portfolio

7    notes."

8          Your Honor also stated, the notes are secured by the

9    collateral, which BNY holds in trust for the benefit of

10   creditors of Saphir, the SPV, including Perpetual as holder of

11   the notes and LBSF as swap counterparty.

12         I think that lays out clear that we're talking about

13   two groups of constituents who are beneficiaries of a trust.

14   You're going to hear arguments about cases talking about

15   creditors of creditors.  That's not the situation here.

16         With respect to particular language that you make your

17   arguments under the contract, I simply point out that Section

18   18.1 of the Principal Trust Deed, which was cited by LBHI.

19   First they misquoted it and conveniently left out some specific

20   references implying that no party other than the parties to

21   that document can actually bring an action against the issuer.

22   I think we've laid out in our papers why those documents -- why

23   those provisions don't apply because we're not seeking to

24   intervene to go after the issuer, the SPV.

25         And if the -- if 18.1 is what they say it says, then

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 131 of 152

Page 131

1    they were precluded from seeking to intervene in the U.K.

2    proceeding as well.  So if they're going to live with the

3    language of the documents, they should have to live with them

4    in toto.

5          The last point I would want to make about Bank of New

6    York as Your Honor raised the point of that they did a

7    sufficient, admirable or appropriate job with respect to the

8    Perpetual action.  They settled that action.  They know the

9    terms of that settlement, and it is confidential and they have

10   not disclosed it to their holders.

11         I think they're compromised.  We had asked them to

12   proceed in this litigation.  They've declined.  You've heard

13   them with extensive argument on the ADR procedures.  They are

14   being dragged kicking and screaming to deal with this.  They

15   want nothing to do with this.  They sought to dismiss the

16   Perpetual litigation saying that somebody else was an

17   indefensible party.  And they objected to the ADR procedures

18   saying that they have no authority, that they're not the

19   economic party interest and others are, and they just want

20   nothing to do with it.  I think given that context, Your Honor,

21   I don't think that they can adequately represent our interests.

22         THE COURT:  I didn't understand that argument.  Why

23   can't they adequately represent your interests?

24         MR. SELIGMAN:  I'm just making the point, Your Honor,

25   that to date they've done everything that they can not to

Page 132

1    participate or be involved in the -- in this litigation.

2         THE COURT:  The litigation is stayed.  The litigation

3    is stayed.  Unspoken in your argument is that you are seeking

4    to intervene for the express purpose of opening up litigation

5    which is part of a class of litigation that has been

6    appropriately stayed consistent with the exercise of this

7    Court's discretion, to give the debtors an opportunity to

8    negotiate with counter parties not with noteholders, right?

9         MR. SELIGMAN:  That's correct, Your Honor.

10        THE COURT:  So what you're seeking to do, by your own

11   admission, is not just to intervene to protect interests in

12   this litigation.  You're seeking to open up litigation for a

13   parochial interest so you can get it on appeal as quickly as

14   possible to use it wherever you can for your benefit.  It's as

15   simple as that.  You're economically motivated, correct?

16        MR. SELIGMAN:  Correct, Your Honor.  I was not trying

17   to hide the ball in that instance.

18        THE COURT:  Okay.  What you're seeking to do is to

19   blow up, for your purposes, litigation which is appropriately

20   stayed until July.  What's the reason to do it now?

21        MR. SELIGMAN:  The reason to do it now, Your Honor,

22   is, again, I believe it's going to have to go forward in any

23   event.  And we, as fiduciaries of our estate, are trying to

24   move the ball forward with respect to the administration of our

25   estate.  And right now, we can't do that while the --

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 133

```
 1              THE COURT:  You can do that as easily as picking up

 2      the telephone and participating in the negotiations that you

 3      quite candidly said were ongoing and did not need an ADR

 4      process to move them forward.  You can do it yourself.  You

 5      don't need to know what's in the sealed Perpetual settlement.

 6      You can make your own.

 7              MR. SELIGMAN:  Well, Your Honor, by the way, we are

 8      not seeking to find out what is in the sealed settlement, and

 9      that was not -- that's not our intention.  We don't want that.

10              THE COURT:  You don't need to activate this litigation

11      to resolve it.

12              MR. SELIGMAN:  Well, Your Honor, I would say that we

13      certainly don't need to activate the litigation to continue to

14      engage in settlement discussions, and we have been doing that,

15      and we will continue to do that.  Our point is, is that we

16      believe while those are ongoing, we respectfully submit that

17      the -- that we should be able to intervene and move forward

18      with the litigation.

19              THE COURT:  I understand, but you're not really

20      seeking to intervene for purposes of protecting your interests

21      as noteholder.  You're seeking to intervene for purposes of

22      opening up this litigation and making it a platform for

23      appellate advocacy so that you can advance your cause and

24      improve your negotiating position in this and other structures,

25      correct?
```

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 134 of 152

Page 134

1          MR. SELIGMAN:  Correct, Your Honor.  But I think -- so

2     I'm not going to -- I'm not hiding the ball.  But I think that

3     we have the right that if we want to be able to move forward --

4     and again, we're not seeking to do anything outside of the four

5     corners of the legal dispute here.

6          THE COURT:  I understand.  You're seeking to

7     accelerate this for your own purposes.  I get it.  Thank you.

8          MR. SELIGMAN:  Thank you, Your Honor.

9          MR. MILLER:  Again, Your Honor, Ralph Miller from the

10    Weil firm on behalf of Lehman Brothers Special Financing, Inc.,

11    known as LBSF.

12         Your Honor has, of course, identified the central flaw

13    with these motions to intervene, which is that they are not

14    based on the requirements of Rule 24 but an effort to gain a

15    tactical advantage, to get in line ahead of everyone else and

16    to essentially threaten, as the Court appropriately put it, to

17    blow up a carefully designed system of case management for

18    their own advantage.

19         There are at least three reasons, which are separate

20    but related, why these motions should be denied.  One of these

21    is purely substantive, and I would like to deal with that first

22    because it drives and explains the other two.  One is a mixture

23    of substance and procedure based on the fact that they did not

24    comply with Rule 24(c) by attaching accompanying pleadings,

25    which is no accident because without pleadings, you can't

Page 135

1    possibly tell whom they're trying to sue or what they're trying

2    to claim.

3              And the third issue is this case management question

4    of why it makes any sense for new parties to come and bring all

5    sorts of issues into a proceeding that was filed, as the Court

6    knows, in connection with the avoidance action deadline for

7    limitations at the two-year mark.  It contains not only the

8    flip cause issues, but it contains substantial new issues

9    having to do with whether these are avoidable transactions if

10   they did occur as specified in the flip causes.  So those are

11   new issues.  And as the Court knows, a stay was appropriately

12   entered to allow alternate dispute resolution.

13             The substantive flaw is that these movants have not

14   and cannot meet their burden to show the elements for either

15   compulsory or permissive intervention under Rule 24 of the

16   Federal Rules of Civil Procedure.  They do not have a, "direct,

17   substantial and legally protectable," interest relating to the

18   property or transaction that is the subject matter of the

19   pending litigation.

20             They may have other litigations on other issues in

21   other parts of the world, but this litigation has to do with a

22   trust deed or a group of trust deeds to which they're not

23   parties.  As the Court knows, and I do have a diagram although

24   I don't think we necessarily need the time for this --

25             THE COURT:  Well, let's see it.

Page 136

```
 1              MR. MILLER:  Pardon me?

 2              THE COURT:  Let's take a look.

 3              MR. MILLER:  All right, Your Honor.  We'll leave it

 4    up.

 5              THE COURT:  Thank you.

 6              MR. MILLER:  Your Honor, this is going to look

 7    familiar because you've actually seen variants of this diagram

 8    before.  As you know, in the upper corner we have the

 9    noteholders.  And they are actually not all the noteholders,

10    they're just a subset of noteholders.  Then we have issuers.

11    Those are the special purpose vehicles, which have swaps with

12    LBSF as counter party.  And then there are collateral

13    securities that were purchased, and BNY Corporate Trustee

14    Services Limited acts as the trustee.

15              If I may adjust here, and I'll come back to the

16    microphone.  The trust deed deals with this part of the box.

17    The noteholders are not parties to the trust deed.

18              Your Honor, I've put up a chart you've seen before.

19    This is the chart that was used in the Minibond motion to

20    dismiss.  And as the Court will recognize, tier one is exactly

21    the same structure that we are looking at here.  There, the

22    Minibond Series 10 noteholders had a different special purpose

23    vehicle and a different swap with LBSF and they had different

24    collateral.  But they had the same situation with regard to the

25    trustees.
```

Page 137

1          We have also passed out a list of excerpts, and those

2     excerpts, Your Honor, deal with the provisions in the trust

3     deed that essentially deny the right of third parties to

4     enforce the trust deed.  These are the same provisions that

5     were quoted in the motion to dismiss argument in the Minibond

6     case.  They happen to be the principal trustee in Paragraph 19

7     for the -- for all of these parties and supplemental trustee in

8     Paragraph 12.

9          And what they do, as the Court will recall from prior

10    arguments, is they specify that a person who is not a party to

11    the principal trustee -- that includes all the movants -- has

12    no rights, whether under the contracts, that's the Rights of

13    Third Parties Act 1999, or otherwise to enforce any of the

14    terms of the principal trust deed except and to the extent if

15    any the principal trust deed expressly provides for that act to

16    apply.

17         And there are a couple of provisions in the principal

18    trust deed that, Your Honor, have to do with the salutary

19    purpose of making sure that the trustee's lawyers get paid,

20    which allows lawyers and administrative personnel to enforce

21    the trust deed to make sure they get paid.  But other than

22    those third parties, the trust deed makes it clear that no

23    third party may bring actions under either the trust deed or

24    the supplemental trust deed.

25         May I approach, Your Honor?

Page 138

1          THE COURT:  Yes.  Thank you.

2          MR. MILLER:  What we're passing out now, Your Honor,

3     is your ruling on the motion to dismiss in the Wong case.  And

4     if you go to the flag in the transcript, and the Court will, of

5     course, remember this, on page twenty-three, there you ruled

6     that LBSF assert, among other things, that the Court should

7     dismiss Counts I through III of the complaint because plaintiff

8     lacks standing at both the Minibond level, that's Tier 1, and

9     the Saphir level, and therefore, the Court lacks subject matter

10    jurisdiction under Federal Rule of Civil Procedure 12(b)

11    incorporated in the Federal Rules of Bankruptcy Procedure 7012.

12    The Court agrees.

13          Then you go through and discuss essentially these same

14    provisions in those trust deeds.  And you conclude

15    appropriately noting that there are governance mechanisms that

16    the noteholders are, this is not all in your opinion but this

17    is part of the argument, that the noteholders are essentially

18    in the same position as shareholders in a corporation.  Just

19    because some shareholders are unhappy doesn't mean they get to

20    jump into litigation in the name of the corporation.  There are

21    mechanisms, including shareholder derivative actions, where

22    under certain circumstances they can say the corporation is not

23    acting properly.

24          We don't have any allegations of anything like that

25    before the Court in these motions to intervene because, of

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 139 of 152

Page 139

1    course, we don't have any pleadings on what their intervention

2    would be all about.  So that ruling by the Court, this Court,

3    was affirmed by Judge Pauley in the district court, and we have

4    his opinion attached.  He did allow leave to amend.

5         But we have a ruling essentially on exactly the same

6    structure that holds that these parties don't have any

7    standing.  And because they don't have any standing they,

8    therefore, do not have any interest that is protectable under

9    either 24(a)(1) or 24(a)(2) or 24(b), discretionary

10   intervention.

11        Now, I'd like to go a little more into the

12   requirement, Your Honor, that they have to attach a pleading.

13   Rule 24 provides expressly that the motion for intervention

14   must be accompanied by a pleading that sets forth the claims or

15   defenses that are going to be asserted.  There is no pleading

16   attached.  We have no idea what this intervention would be.

17        They say well, they want to get in and they want to

18   deal with the flip clause.  But the truth of the matter is this

19   litigation is much more complicated than the flip cause.  And

20   furthermore, these issues that are raised by the liquidator in

21   Australia, it's almost impossible to figure out what the fact

22   that they've got some suits about the placement agent might

23   have to do with the pending litigation.

24        But the one thing that is clear, Your Honor, and this

25   is one of the requirements of Rule 24 for either permissive or

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 140 of 152

Page 140

1   compulsory intervention, is that an existing party able to

2   protect those -- the interests makes it unnecessary for there

3   to be intervention.  And as the Court has recognized, BNY is an

4   existing party that is protecting these interests.  It has

5   protected the interests before.  It is appropriately respecting

6   the stay.  We believe that makes excellent sense and is the

7   appropriate response of a responsible litigant under these

8   circumstances.

9        The Wong decision, Your Honor, is consistent with

10  decisions in other cases.  We have -- there was some mention of

11  the Revco litigation, which is discussed in our brief.  An

12  important misunderstanding, I believe by Mr. Glenn, is he said

13  that the Revco case, which had to do with investors and a

14  Cayman investment company, and the investment company had

15  reached a settlement, and the investors came in and tried to

16  assert that they were parties in interest under the Bankruptcy

17  Code.  And the Second Circuit found that they were not.

18       He said that well, they were parties to a contract

19  directly with the debtor.  The noteholders are not parties to

20  any contract with the debtor either.  They're -- the

21  noteholders have contracts with the issuer.  The issuer has a

22  contract with the debtor.  There is a trust deed that the

23  noteholders are not parties to.  So they are not in any common

24  contractual relationship just as the investors were not in a

25  contractual relationship in Revco.  So that is a spot on reason

08-13555-mg   Doc 14851   Filed 02/17/11   Entered 03/08/11 10:35:16   Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 141 of 152

Page 141

1    why they don't have any standing, Your Honor, in addition to

2    your ruling in the Wong case, which is obviously exactly the

3    same facts.

4           I've already mentioned the pleading requirement.  We

5    cite five cases in our opposition for the proposition that not

6    meeting the requirement of attaching a pleading is a reason by

7    itself to deny a motion to intervene because you can't tell

8    what the intervention is about.  You can't tell what the claims

9    are going to be.

10          The difficulty in getting the pleadings straight in

11   the Wong case is in evidence, and the fact that it's been

12   remanded for further proceedings is evidence to the fact that

13   the pleading is critical here.  Understanding who is claiming

14   what is critical to deciding whether an intervention is

15   appropriate.  So that's a reason to deny the intervention.

16          And finally, Your Honor, and you've already, of

17   course, touched on this, the stay was put in place because

18   these actions are very complicated to manage.  They were filed

19   as a group.  This is the case that we call the undistributed

20   case.  It deals with a situation in which distribution has not

21   been made.  And in all of those, the issuer and the trustee

22   still control the funds.  And in those cases, the governance

23   mechanisms are operative.  And if enough votes could be put

24   together, then the governance mechanisms could operate and the

25   trustee or the issuer could be made to take certain actions.

Page 142

1          The problem is for the Belmont noteholders and for the

2    17 million dollars worth of sort of scattered notes apparently

3    owned by the liquidator in Australia, they don't have enough

4    votes to affect the outcome, so they're trying to, as you say,

5    blow up the stay proceeding and inject themselves into this

6    action and thereby generate attention.  And we believe they are

7    trying to generate leverage.

8          The problem is that if they succeed, as the Court has

9    already recognized, others are going to want to try to do that.

10   And the entire case management system set up by the stay would

11   unravel.

12         At some point, Your Honor, the ADR mechanism should

13   operate, and there will be a residue of matters that cannot be

14   resolved.  There may well be things like interpleaders that may

15   be started in the course of this.  Whatever is left when the

16   stay burns off, it would be possible for people to bring

17   intervention motions without having to worry about the stay.

18         That is not this time.  And one of the requirements of

19   Rule 24, all aspects of Rule 24, is that it must be a timely

20   motion to intervene.  This is untimely because as the Court has

21   already recognized it's premature.

22         So for those three reasons we believe that the motions

23   to intervene should be denied.  I'd be happy to answer your

24   questions.

25         THE COURT:  That was a very creative use of the word

1    untimely.

2          Okay.  Anything in response?

3          MR. GLENN:  Very briefly, Your Honor.  We thought we

4    made this clear in our papers.  If it's outcome determinative,

5    we would be prepared simply to submit the same motion to

6    dismiss or a very similar motion to dismiss once the action is

7    un-stayed to allow us to do that.

8          We're obviously in a different procedural posture in

9    this case because of the stay.  We were not supposed to even

10   file this motion in their view, so let alone filing the first

11   pleading in a stayed case is obviously a unique --

12         THE COURT:  I don't --

13         MR. GLENN:  -- procedural conundrum.

14         THE COURT:  I don't understand what you mean by filing

15   the same motion to dismiss.

16         MR. GLENN:  The motion for summary judgment, a similar

17   motion for summary judgment that Bank of New York filed with

18   respect to the Perpetual matter, or an answer that asserts that

19   we deny all the allegations of the complaint and we believe

20   that the automatic stay doesn't apply pursuant to Section 560.

21         But we're in a stayed action so we're obviously in a

22   procedural conundrum that doesn't typically apply in Rule 24(c)

23   questions.  We cited cases that courts grant substantial leeway

24   in that regard.  And I think that it's appropriate here.

25         Very briefly, we are bound by the trust deed.  So the

Page 144

1    notion that we're not parties to the trust deed is I think

2    misleading.  We are bound by it.  They are bound by it.  That

3    was not a factor present in Revco by any means.

4          The principal trust deed gives Lehman no rights to

5    prosecute any claims either.  So all we're seeking here is to

6    the extent that they, in apparent contravention to the trust

7    deed, can't or can bring actions with respect to this avoidance

8    action.  We, as the mirror image of them, the counter party,

9    should be granted reciprocal rights.

10         With respect to Your Honor's concern about leverage

11   and all those things, all we're looking for is a resolution.

12   We're happy, as I said, to continue a settlement dialogue.  But

13   the answer to Your Honor's question is this.  There is a

14   decision out there that is being used against us as leverage.

15   Okay.  And if that is the correct decision, then they have all

16   the leverage against us in the world.  Okay.

17         It's unfair for them to have that hammer and for us to

18   be stayed perhaps for -- until July, longer than that, when all

19   we want is what any litigant wants, which is a resolution of

20   the case, access to the courts if we're permitted to intervene

21   in this action.  I don't think there's anything wrong with

22   that.

23         I think that, as I said earlier, I understand the case

24   management concerns and the like.  But as Judge McMahon

25   recognized in her opinion, this is a -- an issue that goes

Page 145

1    across all of these series and it implicates serious issues

2    with respect to the securities markets, which is why ISDA and

3    the LSTA filed amice briefs in the district court.

4            I have nothing further to add.  Thank you.

5            THE COURT:  Okay.  Do you have anything more?

6            MR. SELIGMAN:  Nothing further, Your Honor.

7            THE COURT:  This is an interesting argument to have on

8    the very same afternoon that followed a lengthy morning

9    contested matter relating to the development of procedures for

10   dealing with alternative dispute resolution in those

11   transactions that involve SPVs.  And this morning's calendar

12   probably consumed almost two hours in dealing with just that

13   question.  I don't know if it was by design or just bad luck

14   that the movants seeking to intervene ended up on the same day

15   that I spent substantial time dealing with ADR procedures.

16           It is difficult for me, as I think is apparent from my

17   comments to this point, to see a reason why I should grant

18   these motions now, particularly since these motions unabashedly

19   are less about intervention and much more about opening up

20   stayed litigation and seeking to exercise independent leverage

21   by parties who, at least in the eyes of Lehman, actually have

22   no direct standing here at all.

23           My decision in the Wong Minibond litigation with

24   respect to standing may or may not be determinative of the

25   issues here.  We've simply had argument in which schematic

08-13555-mg    Doc 14851    Filed 02/17/11    Entered 03/08/11 10:35:16    Main Document
LEHMAN BROTHERS HOLDINGS INC., ET AL.
Pg 146 of 152

Page 146

1   diagrams have been used to show certain structural overlaps and

2   similarities between the Minibond transactions and the

3   transactions that are at issue in this litigation.

4       It seems to me that the best and most appropriate way

5   to deal with the pending intervention motion is to deny it in

6   both instances without prejudice, for me to treat the

7   intervention motion as being a Trojan horse for what is really

8   a motion to vacate the stay in a limited manner in respect to

9   this litigation, and that's how I see the motion.

10      I believe that it is procedurally inappropriate except

11  for extraordinary good cause shown to do anything to disturb

12  the stay, which was originally set for a nine-month period

13  following the commencement of the litigation in September of

14  last year.

15      One of the things that is very clear, in part, as a

16  result of this morning's on-the-record discussions but also the

17  report that was referenced during those discussions of the

18  success of the ADR program, is that it is impossible to manage

19  the vast number of very significant commercial disputes that

20  are part of the portfolio of adversary proceedings in this case

21  without an effective ADR program.

22      For that reason, a request that seeks to reactivate

23  one case by non-parties is particularly egregious, particularly

24  where, as is apparent from a reading of the papers filed, and

25  is crystal clear from the colloquy that we've had this

Page 147

1    afternoon, the purpose of intervention has less to do with the

2    Rule 24 standards of adequate representation and the need to

3    intervene to protect legitimate rights and much more to do with

4    the desire to parachute into a litigation so as to reactivate

5    it for appellate purposes.  Appellate purposes that by the

6    admission of counsel, are designed not necessarily to achieve

7    an outcome in this particular litigation but perhaps across

8    other structures as well.

9            I have no sympathy for these motions at this point.

10    They're denied without prejudice for the reasons stated.  I

11    endorse the arguments that have been made by the debtor's

12    counsel, but I make no determination with respect to standing

13    because I think that's an open question to be determined on

14    fuller briefing.

15            As to the requirement that there be a pleading, that's

16    the easiest and narrowest way for me to deny the motion.  But

17    that's simply too convenient.  It's denied for that reason as

18    well, but it's really denied because this sort of litigation,

19    gamesmanship, while understandable is really inappropriate

20    during the period of a stay that is designed to benefit the

21    entire administration of the Lehman cases.  That which seeks to

22    take pot shots at a particular litigation within the portfolio,

23    effectively takes pot shots at the entire portfolio.

24            The stay is beneficial, and I'm going to continue to

25    enforce it.  The motion is denied for the reasons stated.  And

LEHMAN BROTHERS HOLDINGS INC., ET AL.

Page 148

1    I'll entertain an appropriate order.

2            Is there more for this afternoon?

3            MR. MILLER:  We have nothing further, Your Honor.

4    We'll submit an order and a disk shortly.

5            THE COURT:  We're adjourned.

6            MR. GLENN:  Thank you.

7            MR. MILLER:  Thank you, Your Honor.

8            THE COURT:  Thank you.

9        (Whereupon these proceedings were concluded at 3:40 p.m.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 149

1

2                                I N D E X

3

4                              R U L I N G S

5      DESCRIPTION                                    PAGE      LINE

6      HEARING re:  Debtors' Motion of the Bank        21        8

7      of Nova Scotia for Relief from the

8      Automatic Stay [Docket No. 13889]

9      Approved

10

11     HEARING re:  Debtors' Motion for Authorization  25        4

12     and Approval of a Settlement and Compromise

13     Among Lehman Brothers Holding Inc., Lehman

14     Commercial Paper Inc. and Swedbank AB,

15     New York Branch [Docket No. 14165]

16     Approved

17

18     HEARING re:  Debtor Lehman Commercial Paper      28        5

19     Inc.'s Motion for Order Approving a

20     Settlement Agreement Among the Debtor,

21     Greenbrier Minerals Holdings, LLC and Certain

22     of its Affiliates, Midland Trail Resources, LLC

23     and Dolphin Mining, LLC [Docket No. 14291]

24     Approved

25

Page 150

1

2                        I N D E X (Continued)

3

4                     R U L I N G S (Continued)

5    DESCRIPTION                                    PAGE      LINE

6    HEARING re:  Debtors' Motion for Authorization    94         15

7    to Implement Alternative Dispute Resolution

8    Procedures for Affirmative Claims of the Debtors

9    Under Derivatives Transactions with Special

10   Purpose Vehicle Counter parties [Docket No. 13009]

11   Approved

12

13   Adversary Proceedings: [Adv. Case No. 10-03211]

14

15   HEARING re: Debtor Lehman Brothers Holding, Inc.  106        22

16   for a Letter of Request for International

17   Judicial Assistance [Docket No. 29]

18

19   HEARING re:  Motion of United States of America   106        22

20   to Approve Letter of Request for International

21   Judicial Assistance [Docket No. 31]

22   Granted

23

24

25

1

2                          I N D E X  (Continued)

3

4                          R U L I N G S  (Continued)

5    DESCRIPTION                                      PAGE      LINE

6    Adversary Proceedings: [Adv. Case No. 10-03545]

7

8    HEARING re:  Motion of the Dante Noteholders    147        10

9    to Intervene [Docket No. 9]

10   Denied without prejudice

11

12   HEARING re:  Motion of the Liquidators of       147        10

13   Lehman Brothers Australia Limited Seeking to

14   Intervene in the Adversary Proceeding Relating

15   to Certain Swap Transactions [Docket No. 11]

16   Denied without prejudice

17

18

19

20

21

22

23

24

25

Page 152

1

2                    C E R T I F I C A T I O N

3

4    I, Lisa Bar-Leib, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6    Lisa Bar-Leib    Digitally signed by Lisa Bar-Leib
                      DN: cn=Lisa Bar-Leib, o, ou,
                      email=digital1@veritext.com, c=US
7    _____    Date: 2011.02.17 13:13:36 -05'00'

8    LISA BAR-LEIB

9    AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  February 16, 2011

18

19

20

21

22

23

24

25