Hearing Date and Time: April 13, 2011 at 10:00 A.M. (EST)
Objection Date and Time: April 6, 2011 at 4:00 P.M. (EST)

**KUTAK ROCK LLP**
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Peter J. Barrett, Esq. (PJB 9807) (admission *pro hac vice* pending)
Virginia Bar No. 46179
peter.barrett@kutakrock.com

*Attorneys for Merrill Lynch Portfolio Management, Inc.*
*and Merrill Lynch Capital Services, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS, INC.,** et al<br><br>Debtor. | **Case No. 08-13555 (JMP)** |
| In re<br><br>**LEHMAN BROTHERS SPECIAL FINANCING, INC.,**<br><br>Debtor. | **Case No. 08-13888 (JMP)** |

**NOTICE OF MOTION OF MERRILL LYNCH PORTFOLIO MANAGEMENT, INC. AND MERRILL LYNCH CAPITAL SERVICES, INC. FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d) AND FED. R. BANKR. P. 4001 GRANTING RELIEF FROM THE AUTOMATIC STAY TO EFFECT DISPOSITION OF COLLATERAL**

PLEASE TAKE NOTICE that a hearing on the Motion (the "Motion") annexed hereto of

Merrill Lynch Portfolio Management, Inc. ("MLPM") and Merrill Lynch Capital Services, Inc.

("MLCS" and together with MLPM, "Merrill") for entry of an order granting relief from the

automatic stay applicable in the above captioned Debtors' chapter 11 cases, to the extent necessary or appropriate, to permit Merrill to exercise certain rights over Lehman Brothers Special Financing Inc. ("<u>LBSF</u>") and Lehman Brothers Holdings, Inc. ("<u>LBHI</u>" and, together with LBSF, the "<u>Lehman Entities</u>"), pursuant to a Subordination Agreement (as defined in the Motion) in connection with a proposed transfer of that certain real property known as the Brampton Project, as defined and more fully described in the Motion and granting such other relief as is necessary or appropriate, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on **April 13, 2011 at 10:00 A.M. (Eastern Standard Time)** (the "<u>Hearing</u>").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Kutak Rock LLP, 111 East Main Street, Suite 800, Richmond, Virginia 23219, Attn: Peter J. Barrett, Esq., attorneys for Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc., (iii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Shai Y. Waisman, Esq. and Richard P. Krasnow, Esq., attorneys

for the Debtors; (iv) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Andy Velez-Rivera, Esq., Paul Schwartzberg, Esq., Brian Masumoto, Esq., and Linda Riffkin, Esq.; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (vii) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **April 6, 2011 at 4:00 P.M. (Eastern Standard Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 8, 2011
      Richmond, Virginia

                              **KUTAK ROCK LLP**

                              By:*/s/ Peter J. Barrett*
                                  Peter J. Barrett, Esq. (PJB 9807) (admission *pro hac vice* pending)
                                  Virginia Bar No. 46179
                                  Kutak Rock LLP
                                  1111 East Main Street, Suite 800
                                  Richmond, Virginia  23219
                                  Telephone:  (804) 644-1700
                                  Facsimile:  (804) 783-6192

                                *Attorneys for Merrill Lynch Portfolio Management, Inc.*
                                *and Merrill Lynch Capital Services, Inc.*

            Pg 4 of 20

**KUTAK ROCK LLP**
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Peter J. Barrett, Esq. (PJB 9807) (admission *pro hac vice* pending)
Virginia Bar No. 46179
peter.barrett@kutakrock.com

*Attorneys for Merrill Lynch Portfolio Management, Inc.
and Merrill Lynch Capital Services, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** <br><br> **LEHMAN BROTHERS HOLDINGS, INC.,** et al <br><br>          **Debtor.** | **Case No. 08-13555 (JMP)** |
| **In re** <br><br> **LEHMAN BROTHERS SPECIAL FINANCING, INC.,** <br><br>          **Debtor.** | **Case No. 08-13888 (JMP)** |

**MOTION OF MERRILL LYNCH PORTFOLIO MANAGEMENT, INC.
AND MERRILL LYNCH CAPITAL SERVICES, INC. FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. § 362(d) AND FED. R. BANKR. P. 4001 GRANTING RELIEF
<u>FROM THE AUTOMATIC STAY TO EFFECT DISPOSITION OF COLLATERAL</u>**

Merrill Lynch Portfolio Management, Inc. ("<u>MLPM</u>") and Merrill Lynch Capital

Services, Inc. ("<u>MLCS</u>" and, together with MLPM, "<u>Merrill</u>"), by and through its attorneys,

Kutak Rock LLP, hereby file this motion (the "<u>Motion</u>") for entry of an order pursuant to Section

362(d) of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "<u>Bankruptcy Code</u>")

and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") granting

4851-8572-9544.5/1

relief from the automatic stay to permit Merrill to exercise certain rights over Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings, Inc. ("LBHI" and, together with LBSF, the "Lehman Entities"), pursuant to a Subordination Agreement (defined below) by and among Merrill Lynch, Pierce, Fenner & Smith Incorporated ("MLPFS"), MLCS, Lehman Brothers Inc. ("LBI"), LBSF and certain third parties unaffiliated with the Lehman Entities. In support of the Motion, Merrill respectfully represents as follows:

### JURISDICTION

1.   This Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicate for the relief sought herein is Section 362 of the Bankruptcy Code, as complemented by Bankruptcy Rule 4001.

### PRELIMINARY STATEMENT

2.   In November 2005, AHF-Bay Fund, LLC, a Florida limited liability company ("AHF"), was loaned the proceeds of the Bonds (defined below) for purposes of acquiring and rehabilitating five multifamily housing projects in the State of Florida (collectively, the "Project"). AHF is not a debtor or an affiliate of any debtor in these Chapter 11 cases. MLPFS was the initial purchaser of the Series A Bonds (defined below) issued in connection with the Project and MLPM is the current beneficial owner of the Series A Bonds. MLCS and AHF entered into the Merrill TRS (defined below) with respect to the Series A Bonds. On information and belief, LBHI, as successor in interest to LBI, is the owner of the Series B Bonds (defined below) issued in connection with the Project. LBSF and AHF entered into the Lehman TRS (defined below) with respect to the Series B Bonds. The obligations owed under the Series A Bonds and the Merrill TRS are secured by senior mortgages encumbering certain real and

personal property associated with the Project. The obligations owed under the Series B Bonds and the Lehman TRS are secured by subordinate mortgages encumbering certain real and personal property associated with the Project.

In connection with the Project, MLPFS, MLCS, LBI, LBSF and NAHTEF Bond Fund I – 2005, L.P. ("<u>NAHTEF</u>") entered into that certain Subordination Agreement, dated as of November 10, 2005 (the "<u>Subordination Agreement</u>"). Under the terms of the Subordination Agreement, upon the occurrence of an event of default with respect to the Series A Bonds or the Merrill TRS, the Lehman Entities granted Merrill certain rights and remedies, including the ability to release or cause the release of certain mortgages held by or in favor of the Lehman Entities. In October 2008, immediately after the bankruptcy filing of LBHI, AHF defaulted under the Merrill TRS and continues to be in default, subject to the forbearance of MLCS. AHF has proposed to sell the Brampton Project (defined below) in an arm's length transaction via a deed to the Trustee (defined below) for the Bonds, or its designee, in lieu of a foreclosure on the Brampton Project. The value of the cash and property to be received by or for the benefit of Merrill upon the sale of the Brampton Project is not sufficient to satisfy the obligations owed to Merrill with respect to the Series A Bonds and the Merrill TRS. Therefore, Merrill, whose payment and lien positions are senior to the Lehman Entities, is seeking to release or cause the release of the mortgages held by or for the benefit of the Lehman Entities so that the sale of the Brampton Project may be consummated. Merrill is filing this Motion so that it may exercise its rights and remedies under the Subordination Agreement and release, or cause the Lehman Entities to release, the mortgages held by or for the benefit of the Lehman Entities.

FACTUAL BACKGROUND

3. The five multifamily housing projects comprising the Project and financed with the Bonds are:

    a. Brampton Court Apartments located in Broward County, Florida (the "Brampton Project").

    b. Brittany Bay Apartments located in Pinellas County, Florida.

    c. Mariners Pointe Apartments located in Pinellas County, Florida.

    d. Village Lakes Apartments located in Seminole County, Florida.

    e. Waterman's Crossing Apartments located in Hillsborough County, Florida.

4. Pursuant to that certain Indenture of Trust, dated as of November 1, 2005 (the "Indenture"), between Capital Trust Agency (the "Issuer") and U.S. Bank National Association (the "Trustee"), the Issuer issued the following Multifamily Housing Revenue Bonds: $62,030,000 Series A Bonds (the "Series A Bonds") (CSUIP Number14052TBH6), $20,680,000 Subordinate Series B Bonds (the "Series B Bonds") (CUSIP Number 14052TBJ2), $20,680,000 Subordinate Series C Bonds (the "Series C Bonds") and $1,915,000 Subordinate Series D Bonds (the "Series D Bonds" and, together with the Series B Bonds and the Series C Bonds, the "Subordinate Bonds"). The Series A Bonds and the Subordinate Bonds are collectively referred to as to the "Bonds".

5. With regard to the Bonds:

    a. MLPFS was the initial purchaser and MLPM is the current beneficial owner of the Series A Bonds;

    b. On information and belief, LBI was the initial purchaser and LBHI, as successor in interest to LBI, is the current owner of the Series B Bonds.

    c. On information and belief, NAHTEF is the owner of the Series C Bonds;

    d. On information and belief, NAHTEF Acquisitions, LLC is the owner of the Series D Bonds.

4851-8572-9544.5/4      4

6. The proceeds of the Bonds were loaned (the "Loan") to AHF by the Issuer pursuant to that certain Loan Agreement, dated as of November 1, 2005 (the "Loan Agreement"), and were used for the acquisition and rehabilitation of the Project. The Loan is evidenced by a Senior Promissory Note (the "Senior Note") by AHF in the amount of the Series A Bonds and certain subordinate promissory notes (collectively, the "Junior Notes") by AHF in the amounts of each of the series of the Subordinate Bonds.

7. In connection with the Bonds, AHF entered into the following additional agreements:

   a. That certain ISDA Master Agreement, dated as of November 10, 2005, between MLCS and AHF, together with the (a) Multicurrency-Cross Border Schedule and Credit Support Annex thereto, each dated as of November 10, 2005 and (b) Confirmation Letter entered into connection therewith for a transaction under the terms of which MLCS and AHF agreed to make certain payments to one another relating to the Series A Bonds (the foregoing, collectively, as amended, restated and/or supplemented from time to time, the "Merrill TRS").

   b. That certain ISDA Master Agreement, dated as of November 1, 2005, between LBSF and AHF, together with the (a) Schedule and Credit Support Annex thereto, each dated as of November 10, 2005 and (b) the Confirmation Letter entered into connection therewith for a transaction under the terms of which LBSF and AHF agreed to make certain payments to one another relating to the Series B Bonds (the foregoing, collectively, the "Lehman TRS" and, together with the Merrill TRS, the "Swaps").

8. To secure the various obligations of AHF under the Bonds and the Swaps, AHF granted the following mortgages (listed in order of lien priority) on each of the five multifamily housing projects comprising the Project:

   a. First Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005 (the "<u>First Mortgage</u>"), executed by the AHF in favor of the Issuer and assigned to the Trustee to secure the Series A Bonds held by MLPM.

   b. Second Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005 (the "<u>Second Mortgage</u>" and, together with the First Mortgage, the "<u>Merrill Mortgages</u>"), executed by the AHF in favor of MLCS to secure the obligations of AHF under the Merrill TRS.

   c. Third Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005 (the "<u>Third Mortgage</u>"), executed by the AHF in favor of the Issuer and assigned to the Trustee to secure the Series B Bonds held by LBI or LBHI.

   d. Fourth Mortgage, Security Agreement and Fixture Filing, dated as of the November 1, 2005 (the "<u>Fourth Mortgage</u>" and, together with the Third Mortgage, the "<u>Lehman Mortgages</u>"), executed by the AHF in favor of LBSF and LBHI to secure the obligations of AHF under the Lehman TRS.

   e. Fifth Mortgage, Security Agreement and Fixture Filing, dated as of November 1, 2005, executed by the AHF in favor of the Trustee to secure the Series C Bonds and the Series D Bonds.

9. Pursuant to Section 2(d) the Subordination Agreement, LBI, LBSF and NAHTEF (collectively, the "<u>Subordinate Lenders</u>") agreed, among other things, that during any Default Period (as defined therein) Merrill as the "Senior Lender" thereunder:

> "…shall be entitled to take any action the Senior Lender deems necessary or appropriate without the consent of the Subordinate

Lenders…During any Default Period, at the request of the Senior Lender, the Subordinate Lenders shall consent to any action by or against [AHF] resulting from such declaration of a default, including, without limitation, the issuance of additional indebtedness by [AHF] and/or the sale of the Project to another entity, including, but not limited to, a for profit entity. The Subordinate Lenders hereby agree that, upon the request of Merrill or the [Trustee], the Subordinate Lenders shall do, execute, acknowledge and deliver to Merrill or the [Trustee] all and every such further acts, deeds, conveyances and instruments as Merrill or the [Trustee] may request for the better assuring and evidencing of the foregoing consent. During any Default Period, the Subordinate Lenders hereby expressly consent to and authorize the release by the Senior Lender or the [Trustee] of all or any portion of the [Project] from the lien, operation and effect of the Senior Mortgage Documents. During any Default Period, the Subordinate Lenders hereby waive to the fullest extent permitted by law, all equitable or other rights they may have (i) in connection with any release of any portion of the [Project], (ii) to require the separate sales of any portion of the [Project] or to require the Senior Lender to exhaust its remedies against any portion of the [Project] or any combination of portions of the [Project] or any other collateral, or (iii) to require the Senior Lender or the [Trustee] to proceed against [AHF], any other party (including any general partner of [AHF] if [AHF] is a partnership), any portion of the [Project] or combination of portions of the [Project] or any other collateral, before proceeding against all or such portions or combination of portions of the [Project] as the Senior Lender or the [Trustee] determines. During any Default Period, the Subordinate Lenders hereby expressly consent to and authorize, at the option of the Senior Lender, the sale, either separately or together, of all or any portion of the [Project]."

A true and correct copy of the Subordination Agreement is attached hereto as **Appendix I.**

10. By notice dated October 8, 2008 from MLCS to AHF (the "AHF Default Notice"), MLCS notified AHF that an Event of Default had occurred under the Merrill TRS (the "Merrill TRS Default") as a result of the failure by AHF to post collateral with MLCS required pursuant to the Merrill TRS. By notice dated October 8, 2008 from MLCS to the Lehman Entities and NAHTEF (the "Default Period Notice"), MLCS notified the Lehman Entities and NAHTEF of the Merrill TRS Default such that a "Default Period" respecting AHF became in effect under the Subordination Agreement.

4851-8572-9544.5/7                                              7

11. AHF has proposed, and Merrill has agreed to, the sale of the Brampton Project via a deed in lieu of foreclosure to be delivered to the Trustee, or its designee, which is to be sold to the unrelated third party purchaser who agrees to purchase the Brampton Project for the highest cash price (the "Buyer"). Negotiations with one or more potential Buyers remain ongoing and the sales price for the Brampton Project currently is not anticipated to be in excess of $8,000,000.00. The Series A Bonds are currently outstanding in the principal amount of $61,680,000 (consisting of $60,680,000 in unpaid principal balance of the Series A Bonds plus the $1,000,000 protective advance made by or on behalf of Merrill in June 2010 to pay certain costs and expenses of AHF associated with the Project). The sales price of the Brampton Project will be less than the outstanding principal amount of the Series A Bonds and the amount that would be due MLCS upon termination of the Merrill TRS. Therefore, the proposed sale of the Brampton Project will not satisfy the amounts due Merrill. Pursuant to the Subordination Agreement and the Indenture, the Series A Bonds are senior to the Series B Bonds. Pursuant to the Subordination Agreement, the Merrill Mortgages are senior to the Lehman Mortgages. As such, the Lehman Entities are wholly unsecured as to the Brampton Project.

12. Outside of these bankruptcies and under the authority granted to Merrill in the Subordination Agreement, Merrill would have the authority, regardless of the consent of the Lehman Entities, to compel the release of the Lehman Mortgages. Because of the special interests, in the form of the Third and Fourth Mortgages, held in the Brampton Project by or on behalf of each of LBHI and LBSF, respectively, and the filing of these bankruptcy cases, Merrill believes that seeking affirmative relief from the automatic stay to enforce its rights under the Subordination Agreement is both prudent and warranted.

## ARGUMENT AND AUTHORITIES

13. While not conceding the point for purposes of any proceeding relating to the bankruptcies, solely for purposes of this Motion, Merrill acknowledges that the interest of the Lehman Entities in the liens encumbering the Brampton Project that secure the Series B Bonds and the Lehman TRS are property of Lehman Entities' estate that is protected by the automatic stay. 11 U.S.C. §§ 541 and 362(a). However, Section 362(d) provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court *shall* grant relief from the stay provided under subsection (a) of this [Section 362], such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this [Section 362], if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d) (emphasis added). The standards for granting relief under Section 362(d)(1) and (d)(2) are in the disjunctive. Thus, if a court finds either that (i) there is cause, including a lack of adequate protection; or (ii) that the debtor lacks equity in the property and there is no need for the property to effectively reorganize, then the court must lift the stay. *In re Diplomat Elec. Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988). Here, Merrill is entitled to relief under both Sections 362(d)(1) and (2).

14. With regard to Section 362(d)(1), cause exists to grant Merrill relief from the automatic stay because Merrill is simply seeking to enforce the rights granted to it under the Subordination Agreement. Upon a default and pursuant to the following provisions of Section

2(d) the Subordination Agreement, the Lehman Entities expressly authorized Merrill to release or cause the release of the Lehman Mortgages, to wit:

> at the request of the Senior Lender, the Subordinate Lenders shall consent to any action by or against [AHF] resulting from the [Default Period], including, without limitation, the…sale of the Project to another entity…[and the] Subordinate Lenders hereby agree that, upon the request of Merrill or the [Trustee], the Subordinate Lenders shall do, execute, acknowledge and deliver to Merrill or the [Trustee] all and every such further acts, deeds, conveyances and instruments as Merrill or the [Trustee] may request….

Revocation or restriction of the rights and remedies granted to Merrill in the Subordination Agreement would be the equivalent of a failure by the Lehman Entities to perform under the Subordination Agreement. Bankruptcy courts have consistently held that a failure to perform under a contract post-petition is cause to lift the automatic stay. *See*, *e.g.*, *In re Davis*, 64 B.R. 358, 359 (Bankr. S.D.N.Y. 1986) (debtor's failure to make mortgage payments is grounds for lifting the stay); *In re Balco Equities Ltd., Inc*, 312 B.R. 734, 749 (Bankr. S.D.N.Y 2004) (debtors' continued failure or inability to make monthly payments, even where slight equity cushion may have existed, constituted "cause" for purposes of Section 362(d)(1)). Given that Merrill is merely seeking to exercise rights and remedies granted to it under the Subordination Agreement, that the Brampton Project is not a potential source of recovery of additional funds for the estate and that preventing Merrill from releasing the Lehman Mortgages would be the equivalent of the Lehman Entities failing to perform their contractual obligations, cause exists for granting Merrill relief under Section 362(d)(1).

15.     Additionally, the Lehman Entities have no equity interest in the Brampton Project and retention of the Lehman Mortgages on the Brampton Project is not necessary to an effective reorganization. For purposes of the first prong of Section 362(d)(2), the term "equity" means "the difference between the value of the property and the total of the claims which it secures." *In re Diplomat*, 82 B.R. at 692. As set forth in more detail above, any proceeds of the sale of the

Brampton Project will be far less than the amount owed with respect to the Series A Bonds and the Merrill TRS. Therefore, the Lehman Entities, who are subordinate to Merrill in payment and lien positions vis-à-vis the Brampton Project, are wholly unsecured as to the Brampton Project. Moreover, the passage of time will not improve the Lehman Entities' collateral position in the Brampton Project, given that the amount of obligations outstanding in connection with the Series A Bonds and the Merrill TRS are vastly in excess of the value of the Brampton Project.

16. The second prong of Section 362(d)(2) is satisfied because these cases are liquidation cases. Simply stated, the Brampton Project is not necessary to an effective reorganization of the Lehman Entities because the Lehman Entities are not being reorganized. *See*, *generally*, First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and Its Affiliated Debtors and related Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code filed January 25, 2011 [Dckt. Nos. 14150 and 14151]. As such, the relevant inquiry need only focus on the equity in the Brampton Project available to secure the obligations of AHF as they relate to the Third and Fourth Mortgages made by AHF in favor of the Lehman Entities. *Cf. B.N. Realty Assoc's*, 238 B.R. 249, 258 (S.D.N.Y. 1999) (stating "[s]ince a Chapter 7 petition does not contemplate reorganization, the only issue . . . under 362(d)(2) would be whether [the debtor has] equity in the property."); *see also In re Saypol*, 31 B.R. 796, 803 (Bankr. S.D.N.Y 1983) ("Congress did not require an undersecured creditor to sit idly by solely in reliance on the proposition that the collateral might rise in value sufficient to fund a [liquidation] plan. Indeed, Congress intended that secured creditors not bear the brunt of such speculation . . . .").

17. Bankruptcy Rule 4001(a)(3) provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 10 days after the entry of the order,

4851-8572-9544.5/11                                      11

unless the court orders otherwise." The value of the Brampton Project is subject to significant and ongoing market volatility. Any proposed transaction to sell the Brampton Project may not take place if further delay is incurred as any Buyer will require the sale to be free and clear of all liens on the Brampton Project, including the Lehman Mortgages. Accordingly, Merrill requests the Court order that the 10-day stay provided under Bankruptcy Rule 4001(a)(3) shall not apply with respect to Merrill taking such actions as are necessary to complete the transaction contemplated above.

## WAIVER

18.     Because this Motion does not present any novel issues of law, Merrill respectfully requests that the Court waive and dispense with the requirement set forth in Local Bankruptcy Rule 9013-1(b) that a separate memorandum of law be filed in support of the Motion. Merrill reserves the right, however, to submit a reply memorandum of law in the event objections to this Motion are filed.

## RESERVATION OF RIGHTS

19.     Merrill expressly reserves all rights and remedies under the documents described herein, such other agreements relating thereto and applicable law.

## CONCLUSION

20.     For these reasons, Merrill respectfully requests entry of an Order, substantially in the form of the proposed order annexed hereto as **Exhibit A**: (i) granting Merrill, as the Senior Lender under the Subordination Agreement, relief from the automatic stay as it relates to the Lehman Entities so as to permit Merrill to exercise its rights and remedies under the Subordination Agreement, including, but not limited to, releasing the Lehman Mortgages as to the Brampton Project; and (ii) directing that the relief from the automatic stay shall be effective

immediately and that the 10-day stay provided under Bankruptcy Rule 4001(a)(3) shall not apply.

WHEREFORE, for the reasons set forth herein, Merrill requests that the Court grant the relief requested herein and grant such other and further relief as the Court may deem just and proper.

Dated: March 8, 2011
      Richmond, Virginia

                                        **KUTAK ROCK LLP**

                                        By:*/s/ Peter J. Barrett*
                                            Peter J. Barrett, Esq. (PJB 9807) (admission *pro hac vice* pending)
                                            Virginia Bar No. 46179
                                            1111 East Main Street, Suite 800
                                            Richmond, Virginia 23219
                                            Telephone: (804) 644-1700
                                            Facsimile:  (804) 783-6192

                                        *Attorneys for Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc.*

**EXHIBIT A**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS SPECIAL FINANCING, INC.,**<br><br>Debtor. | **Case No. 08-13888 (JMP)** |
| In re<br><br>**LEHMAN BROTHERS HOLDINGS, INC.,**<br><br>Debtor. | **Case No. 08-13555 (JMP)** |

**ORDER GRANTING MOTION OF MERRILL LYNCH PORTFOLIO MANAGEMENT, INC. AND MERRILL LYNCH CAPITAL SERVICES, INC. FOR ENTRY OF AN ORDER PURSUANT TO 11 U.S.C. § 362(d) AND FED. R. BANKR. P. 4001 GRANTING RELIEF FROM THE AUTOMATIC STAY TO EFFECT <u>DISPOSITION OF COLLATERAL</u>**

Upon the Motion (the "<u>Motion</u>")[1] of Merrill Lynch Portfolio Management, Inc. and Merrill Lynch Capital Services, Inc. (collectively, "<u>Merrill</u>") for Entry of an Order Pursuant to 11 U.S.C. § 362(d) and Fed. R. Bankr. P. 4001 Granting Relief From the Automatic Stay to Effect Disposition of Collateral to permit Merrill to exercise rights and remedies granted to it by Lehman Brothers Inc., Lehman Brothers Special Financing Inc. and Lehman Brothers Holdings, Inc. (collectively, the "<u>Lehman Entities</u>") under a Subordination Agreement, dated as of November 10, 2005 (the "<u>Subordination Agreement</u>"), among MLPFS, MLCS, LBI, LBSF and NAHTEF Bond Fund I – 2005, L.P. authorizing Merrill to release or cause the release of certain mortgages held by or for the benefit of the Lehman Entities on property owned by AHF-Bay Fund, LLC, the Court finds that (i) it has jurisdiction over the matters raised in the Motion pursuant to 28 U.S.C. §§ 157 and 1334, and 15 U.S.C. §§ 78eee(a)(3), (b)(2) and (b)(4); (ii) this is a core proceeding pursuant to 28 U.S.C. § 157(b); the relief requested in the Motion is proper

---

[1] Capitalized terms used herein and not defined shall have the meaning ascribed to such terms in the Motion.

4851-8572-9544.5/1

and should be granted; (iv) proper and adequate notice of the Motion and the hearing thereon has been given under the circumstances and no other or further notice is necessary; and (v) good and sufficient cause appearing, the Court is of the opinion that the relief requested in the Motion should be granted,

IT IS HEREBY ORDERED THAT:

1. The Motion is granted.

2. Pursuant to Section 362(d) of the Bankruptcy Code, the automatic stay in effect in the Debtors' bankruptcy cases as it relates to Merrill is modified to the extent necessary to permit Merrill, as authorized under the Subordination Agreement and as to the Brampton Project, to release or cause the release of any liens, mortgages or instruments of similar effect, held by or for the benefit of the Lehman Entities.

3. The modification of the automatic stay granted by this Order shall take effect immediately upon entry of this Order and shall not be stayed by operation of Rule 4001(a)(3) of the Federal Rules of Bankruptcy Procedure.

4. The Court shall retain jurisdiction to hear and determine all matters arising from or relating to the implementation of this Order.

Dated:  New York, New York
        April ____, 2011

                                                      HONORABLE JAMES M. PECK
                                                     UNITED STATES BANKRUPTCY JUDGE

4851-8572-9544.5/2                                    2

# **APPENDIX I**

4851-8572-9544.5/1