WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Irwin H. Warren
Randi W. Singer

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                        :
In re                      :    Chapter 11 Case No.
                        :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :    08-13555 (JMP)
                        :
          Debtors.  :    (Jointly Administered)
                        :
------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION PURSUANT TO**
**SECTION 105 OF THE BANKRUPTCY CODE AND RULE 7026**
**OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORIZATION TO ESTABLISH AND IMPLEMENT PROCEDURES**
**IN CONNECTION WITH DISCOVERY RELATED TO PLAN CONFIRMATION**

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors"), pursuant to section 105 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 7026, *et seq.*, of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to establish and implement procedures in connection with discovery related to plan confirmation in these cases, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,

New York 10004 (the "Bankruptcy Court"), on **March 23, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Irwin H. Warren, Esq. and Randi W. Singer, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq., and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; so as to be so filed and received by no later than **March 16, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 8, 2011
New York, New York

/s/ Irwin H. Warren
Irwin H. Warren
Randi W. Singer

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Objection Deadline: March 16, 2011 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time:  March 23, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Irwin H. Warren
Randi W. Singer

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-----------------------------------------------------------------x

## DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO ESTABLISH AND IMPLEMENT PROCEDURES IN CONNECTION WITH DISCOVERY RELATED TO PLAN CONFIRMATION

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliated debtors in the

above-referenced chapter 11 cases (the "Chapter 11 Cases"), as debtors and debtors in possession

(together, the "Debtors," and collectively with their non-debtor affiliates, the "Lehman Global

Enterprise"), submit this motion (the "Motion"), pursuant to section 105 of title 11 of the United

States Code (the "Bankruptcy Code") and Rules 7026, *et seq.*, of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), for authorization to establish and implement procedures in

connection with discovery related to plan confirmation in these Chapter 11 Cases, and

respectfully represent:

## Background

1.    Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On September 17, 2008, the United States Trustee for the Southern District of New York for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

3.    On March 15, 2010, the Debtors filed their proposed Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 7572].  On April 14, 2010, the Debtors filed a revised Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 8330] and the Debtors' Disclosure Statement for Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 8332].  On December 15, 2010, an Ad Hoc Group of Lehman Brothers Creditors (the "Ad Hoc Group") filed a Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC (the "Ad Hoc Group Plan").  On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Docket No. 14150] (as it may be further amended or modified, the "Plan") and the Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the

Bankruptcy Code [Docket No. 14151] (as it may be amended or modified, the "Disclosure

Statement").

## Jurisdiction

4.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

5.      The Debtors request entry of an order, attached hereto as Exhibit 1 (the

"Order"), (i) authorizing the Debtors to establish and implement the procedures set forth in the

Order in connection with discovery related to confirmation of a plan in these Chapter 11 Cases

(the "Plan Confirmation Discovery Procedures"), and (ii) approving the terms and provisions of the

"Protective Order", attached to the Order as Exhibit B, which sets forth procedures and protections

governing disclosure by the Debtors and other parties of confidential and highly confidential

information in connection with the Plan Confirmation Discovery Procedures.

## The Plan Confirmation Discovery Procedures Should Be Approved

6.      The Debtors' Chapter 11 Cases are nearing the stage of plan confirmation.

The Debtors and their advisors have worked arduously and diligently during the course of these

cases in formulating a Plan that proposes an economic resolution to address the many and multi-

faceted issues arising from the complexities and differing debtor-creditor, inter-debtor, and inter-

creditor interests that result from the manner in which the Lehman Global Enterprise conducted

its business.  In formulating their Plan, the Debtors have negotiated extensively with the

Creditors' Committee, foreign administrators and receivers, and other key creditor constituents

with respect to the terms of the Plan and the complex issues addressed therein.

7.      While the Debtors and other interested parties have benefited from the

voluntary exchange of information during the process of formulating and negotiating the Debtors'

Plan, the Debtors, nevertheless, anticipate that confirmation of a plan in these Chapter 11 Cases

will be contentious.  This is especially apparent in light of the competing plan filed recently by

the Ad Hoc Group.  The Plan, the Ad Hoc Group Plan, and any other plan or plans of

reorganization filed in these Chapter 11 Cases (each a "Chapter 11 Plan") will present contested

issues of fact and law ("Plan Issues"), which the Debtors believe will give rise to extensive

requests for discovery ("Plan Discovery") from interested parties.  As this Court has noted

previously, it would be in the best interests of the Debtors and all interested parties that Plan

Discovery be conducted in an efficient, expeditious and orderly manner.

   8. To avoid the substantial and unwarranted cost, burden, duplication and

delay to the Debtors and other interested parties that would result from engaging in Plan

Discovery through time-consuming discovery (and attendant discovery-based motion practice)

on an individual basis, the Debtors, in consultation with the Creditors' Committee and the Ad

Hoc Group, have formulated and propose to implement the Plan Confirmation Discovery

Procedures set forth in the Order.  The proposed procedures are designed to address Plan

Discovery and related disputes through an organized, orderly, efficient, and expeditious process,

which promotes disclosure, meaningful participation of key stakeholders, and access to the

Court, as appropriate and necessary, while establishing safeguards for access to confidential and

highly confidential information produced by those that participate in the Plan Discovery process.

   9. The Plan Confirmation Discovery Procedures promote an orderly and

efficient Plan Discovery and plan confirmation process by providing for (i) access to pertinent,

non-privileged documents relating to Chapter 11 Plans through a data repository maintained by

the Debtors, (ii) depositions of individuals who were involved in and familiar with, among other

things, the formulation of the Plan and the operations of the Global Lehman Enterprise, (iii)

consolidated discovery requests—both by and upon the Debtors, other Chapter 11 Plan proponents and other interested parties and non-parties—to expedite the Plan Discovery process and ease the administrative burden on the Debtors of responding to multiple, duplicative requests (and on the Court, from having to deal with multiple but essentially duplicative or overlapping disputes over discovery), (iv) protections and limitations on access to discovery materials that contain confidential and/or highly confidential information, (v) protection against inadvertent waiver of privileges, attorney work-product immunity, and other legally cognizable privileges, to foster access to pertinent materials without undue delay, and (vi) a dispute resolution process which favors consensual resolution by the parties of disputes related to Plan Discovery, but which provides for access to the Court, as appropriate and necessary.  As such, the proposed procedures will allow Plan Discovery to be conducted without needless duplication and expense or undue burden on the Debtors, other interested parties and non-parties, deposition witnesses, and the Court.

10.    If the Debtors are unable to establish and implement a uniform set of Plan Discovery procedures, the Debtors will be faced with a logjam of duplicative, overlapping and extraordinarily burdensome discovery requests and attendant motion practice at the very time when they need to focus on one of the most critical aspects of the chapter 11 process.  Such a result could unnecessarily impede and delay the confirmation of a plan in these cases and surely would multiply the costs and expenses to the Debtors' estates to the detriment of the Debtors' stakeholders.  The proposed Plan Confirmation Discovery Procedures will streamline the discovery process and permit the Debtors to focus their efforts on operating their businesses and moving their Chapter 11 Cases towards confirmation.

## Basis for Relief

11.     Section 105(a) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  Under section 105(a) of the Bankruptcy Code, the Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets.  *See*, *e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances.").

12.     Section 105(d) of the Bankruptcy Code states that the Court may "issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically. . . ." 11 U.S.C. § 105(d).  The legislative history of this subsection, enacted as part of the Bankruptcy Reform Act of 1994, indicates that Congress intended to "authorize[] bankruptcy court judges to . . . manage their dockets in a more efficient and expeditious manner." 140 CONG. REC. H10,764 (daily ed. Oct. 4, 1994) (rem. of Rep. Brooks), *reprinted in* 2 COLLIER ON BANKRUPTCY P 105.LH (15th ed. rev. 2009). Moreover, according to the Supreme Court, the Court has the "inherent power" to "manage [its] owns affairs so as to achieve the orderly and expeditious disposition of cases." *Cf. Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962); *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (noting the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

13.     Bankruptcy Rules 7026, *et seq.*, set forth the requirements for the gathering of information in bankruptcy proceedings, with provisions governing, among other items, discovery, depositions, the production of documents, and interrogatories. The Plan

Confirmation Discovery Procedures are "necessary and appropriate to carry out the provisions" of

Bankruptcy Rules 7026, et seq., as they would allow the Debtors and those participating in the

Plan Discovery process to obtain discovery in an orderly, expeditious, and efficient fashion

(from cost and timing perspectives). Procedures in connection with discovery related to plan

confirmation have been established in other large complex chapter 11 cases. *See, e.g.*, *In re*

*Enron Corp. et al.*, Ch. 11 Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004), *Order*

*Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to*

*Confirmation and Discovery in Connection Therewith* [Docket No. 16233]. In fact, a number of

the concepts and provisions reflected in the proposed Plan Confirmation Discovery Procedures

are similar to those in the procedures approved by the bankruptcy court in *Enron*.

14.      The Debtors believe their and other parties' ability to respond to discovery

requests pursuant to the Plan Confirmation Discovery Procedures will assist in the efficient

administration of these Chapter 11 Cases, without unnecessary litigation expense, and to effect

the maximization of value for the Debtors, their estates, and all parties in interest. For the

foregoing reasons, the Debtors submit that the relief requested in this Motion is necessary and

appropriate, is in the best interests of their estates and stakeholders, and should be granted in all

respects.

### Notice

15.      No trustee has been appointed in these chapter 11 cases. The Debtors

have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York, and (vi) all other parties

entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

16.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: March 8, 2011
New York, New York


/s/ Irwin H. Warren
Irwin H. Warren
Randi W. Singer

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## EXHIBIT 1

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                      :
In re                                    :     **Chapter 11 Case No.**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :     **08-13555 (JMP)**
                                        :
                  **Debtors.**        :     **(Jointly Administered)**
                                        :
-------------------------------------------------------------------x

**ORDER ESTABLISHING**
**SCHEDULE IN CONNECTION WITH DISCOVERY**
**RELATED TO PLAN CONFIRMATION AND OTHER ISSUES**

Lehman Brothers Holdings Inc. and certain of its affiliated debtors (collectively the

"Debtors"), filed a Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated

Debtors, dated March 15, 2010 [Docket No. 7572], as amended on January 25, 2011 [Docket

No.14150], and as may be further amended (hereinafter, the "Plan"). An Ad Hoc Group of

Lehman Brothers Creditors (the "Ad Hoc Group") filed a Joint Substantively Consolidating

Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other

Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, dated December 15, 2010

[Docket No. 13504], as may be amended (the "Ad Hoc Plan"). The Plan, the Ad Hoc Plan and any

other plan or plans of reorganization filed in the above-captioned chapter 11 cases (the "Chapter

11 Cases") will present contested issues of fact and law ("Plan Issues").

The Court has previously noted, and hereby finds, that it would be in the best interests of

the Debtors and all interested parties that discovery in connection with Plan Issues arising out of

objections to and/or the prosecution of the Plan, the Ad Hoc Plan and any other plan or plans of

reorganization filed in the Chapter 11 Cases ("Plan Discovery") be conducted in an efficient,

expeditious and orderly manner. Accordingly, it is hereby

ORDERED:

1.       **No Other Plan Discovery:**  Except as otherwise ordered by the Court, this Order shall control any and all discovery by any Debtor, committee, creditor or party in interest in connection with Plan Issues, but shall not affect the rights of any Debtor, committee, creditor or party in interest to seek discovery in connection with any other contested matters or adversary proceedings.

2.       **Participation in Plan Discovery**

a)       Any creditor, party in interest, or group of creditors or parties in interest seeking to participate in Plan Discovery shall file with the Court and serve on the attorneys for the Debtors and for the statutory committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee") a completed "Notice of Intent," the form of which is attached hereto as Exhibit A.  Each Notice of Intent must contain: (i) the name and address of the creditor or party in interest (or in the case of a group, the names and addresses of each of its members) and its or their attorneys; (ii) the amount and nature of the aggregate claims or interests held either individually or by the group; and (iii) a concise statement of the interest asserted by such creditor or party in interest in the outcome of issues related to Plan Discovery.  Any Notice of Intent must be filed no later than fourteen (14) days following the entry of this Order (the "Notice of Intent Deadline").  In the absence of an order of the Court sustaining an objection to a Notice of Intent (as described in Paragraph 2(e) of this Order), a creditor, party in interest, or group timely filing a Notice of Intent shall be deemed a "Participant."  For purposes of participation in Plan Discovery, "Participant" shall include the attorneys and any advisors for any Participant identified on the Notice of Intent filed by the Participant.

b)     The Debtors and the Creditors' Committee shall each be deemed a Participant in Plan Discovery without the need to file a Notice of Intent.

c)     Subject to Paragraph 2(g) below, any creditor, party in interest, or group of creditors or parties in interest that has filed or hereinafter files an alternative chapter 11 plan of reorganization in the Chapter 11 Cases (each, an "Alternative Plan"), including the Ad Hoc Group (each, an "Alternative Plan Proponent"), shall each be deemed a Participant as of the date of the filing of such plan, without the need to file a Notice of Intent.

d)     Subject to Paragraph 2(g) below, any creditor, party in interest, or group of creditors or parties in interest that has filed or hereinafter files an objection to the Plan or an Alternative Plan (each, a "Plan Objector") shall be deemed a Participant as of the date of the filing of such objection, without the need to file a Notice of Intent.

e)     The Debtors and the Creditors' Committee shall have the right to object to Notices of Intent on any and all grounds, including but not limited to those that are, *inter alia*, duplicative, harassing, or served by persons that are not parties in interest or do not comply with the requirements hereof or do not demonstrate a legally cognizable interest in participating in Plan Discovery.

f)     Within three (3) days following the Notice of Intent Deadline, the Debtors shall file with the Court a list of all Participants, which will be the official service list for Plan Discovery (the "Official Service List"). The Debtors shall amend the Official Service List, as necessary, from time to time and will file such amended service lists with the Court. Service in connection with Plan Discovery may be by electronic mail.

g)     Except as provided in Paragraphs 2(b), (c) and (d), any creditor, party in interest, or group of creditors or parties in interest who does not timely file a Notice of Intent, or who

3

files a Notice of Intent to which the Debtors or the Creditors' Committee successfully

object, shall not be permitted to participate in Plan Discovery absent leave of the Court.

Any party who becomes a Participant after the Notice of Intent Deadline has passed must

comply with all discovery deadlines set forth in this Order and shall not be allowed to

reopen any discovery deadlines that have already passed, except as set forth in Paragraph

13 of this Order.

h)      All Plan Discovery shall be conducted in accordance with the terms of the Protective

Order, attached hereto as <u>Exhibit B,</u> and approved by the Court in its entirety.  In order to

be eligible to receive Plan Discovery, each Participant must agree to abide by the

Protective Order.  Each Participant, including its attorneys and advisors who are involved

in the Chapter 11 Cases, must sign the Agreement to Abide By the Protective Order,

attached hereto as <u>Exhibit C</u>, and serve a copy upon attorneys for the Debtors.  Any

Participant (or the attorneys or advisors for any Participant who are involved in the

Chapter 11 Cases) who does not sign the Agreement to Abide by the Protective Order

shall not be permitted to participate in Plan Discovery.

**3.      <u>Document Discovery from the Debtors: Document Requests and Search Terms</u>**

a)      No later than twenty-one (21) days following the Notice of Intent Deadline, Participants

who wish to serve Document Requests shall collectively serve consolidated Document

Requests relating to Plan Issues upon the Debtors pursuant to Rule 34 of the Federal

Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), as part of one of the following groups: (i)

the creditors of Lehman Brothers Holdings Inc. (<u>LBHI</u>"); (ii) the creditors of the derivative

entity debtors, including Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), Lehman

4

Brothers OTC Derivatives Inc. ("LOTC"), Lehman Brothers Derivative Products Inc.

("LBDP"), Lehman Brothers Financial Products Inc. ("LBFP"), Lehman Brothers

Commercial Corp. ("LBCC"), and Lehman Brothers Commodities Services Inc. ("LBCS");

(iii) the creditors of Lehman Commercial Paper Inc. ("LCPI"); (iv) creditors of the Debtors'

affiliates that are in foreign insolvency proceedings and who are actively involved in

discussions with the Debtors; and (v) creditors of other Debtors.  Each of the foregoing

groups may collectively serve one consolidated Document Request.  A Participant who is

a creditor of more than one Debtor may elect to participate in the group or groups of its

choosing.  The Participants in each of the foregoing groups will meet and confer among

themselves and develop each group's consolidated Document Requests in order to avoid

the service of multiple, duplicative Document Requests and the attendant costs and other

burdens imposed on the Debtors to respond to such requests.  No Participant shall waive,

or be deemed to have prejudiced in any way, any of its rights or legal positions by joining

a Document Request as prescribed in this Paragraph.  Any Participant who, after the meet

and confer process, will not agree to serve consolidated Document Requests may, in

accordance with the procedure set out in Paragraph 15 of this Order, seek leave of the

Court to serve a separate Document Request under terms and conditions that the Court

deems appropriate.

b)    Each Participant or group of Participants serving Document Requests upon the Debtors

shall simultaneously serve a list of proposed search terms that, in the reasonable

estimation of such Participant or group, are reasonably calculated to yield e-mails and e-

mail attachments responsive to the Document Requests without being overbroad or

unduly burdensome to the Debtors.

5

c)      The Debtors shall consider all Document Requests and search terms that are timely

served on them and will, in good faith, generate a master list of search terms ("Search

Term List") reasonably calculated to lead to the production of responsive e-mails and e-

mail attachments.  The Debtors shall make the Search Term List available to Participants

no later than fourteen (14) days after the deadline for serving Document Requests and

proposed search terms set forth in Paragraphs 3(a) and 3(b).

d)      The Debtors shall consider all Document Requests that are timely served and will, in

good faith, generate a master list of custodians, time periods and other parameters

("Search Parameters") that will govern the universe of documents to be searched and

produced by the Debtors.  The Search Parameters will be made available to Participants

together with the Search Term List.

e)      The Debtors shall not search for or produce to the following categories of privileged

documents:

      i)   Hard copy files of in-house and outside counsel;

     ii)   Documents and communications solely between in-house counsel and outside
counsel;

   iii)   Internal documents and communications solely within an outside counsel's
law firm;

   iv)   Documents and communications solely between or among outside counsel
law firms for a single client;

    v)   Documents and communications solely between or among client and inside
counsel; and

   vi)   Internal documents and communications solely within an advisor.

f)      The Debtors will not serve formal written responses to the specific Document Requests,

but will serve general objections, if any, at the same time the Search Parameters are made

available; and the absence of specific written objections will not constitute a waiver of

6

any of the Debtors' rights, objections or positions with respect to any specific request in a

Document Request. In addition, notwithstanding the foregoing, the Debtors will set

forth, simultaneously with providing the Search Parameters (i) a list of requests for which

they assert no documents exist within the Debtors' possession, custody or control

matching the document described in the request, (ii) a list of requests which are unduly

burdensome or not reasonably calculated to lead to admissible evidence and the bases for

such objections; and (iii) a list of requests that are unclear and require further clarification

and the bases for such objections. The Debtors shall meet and confer with applicable

Participants within seven (7) days of the Debtors providing such list with respect to any

unclear requests.

g)      If necessary, Participants who have served Document Requests, individually or as part of

a Participant group, on the Debtors shall raise any objections regarding the Search Term

List and/or the Search Parameters no later than seven (7) days after the Search Term List

and Search Parameters are served. The Debtors and applicable Participants shall meet

and confer concerning such objections during the fourteen (14)-day period following the

service of such objections. Any disputes concerning the Search Term List, the Search

Parameters, and/or the Debtors' responses to Document Requests that are not resolved by

the end of the fourteen (14)-day meet and confer period shall be brought to the Court's

attention within seven (7) days after the final meet and confer, in accordance with the

procedures set forth in Paragraph 15 of this Order.

h)      Any Participant seeking an amendment to the Search Term List or Search Parameters

after the Search Term Lists and Search Parameters have been finalized must seek leave

from the Court, in accordance with the procedures set forth in Paragraph 15 of this Order,

but may do so only after first meeting and conferring with the Debtors and the other

Participants, as applicable.

i)      The Debtors shall search for and produce documents as expeditiously as is reasonably

practical after the Search Term Lists and Search Parameters are finalized and will inform

Participants when document production is substantially complete by serving a notice

("Notice of Substantial Completion").  The Debtors' document production shall be

substantially complete when the Debtors believe in good faith that all material documents

requested have been produced, but for limited categories or documents that need to be

located, obtained, and/or reviewed.  The Notice of Substantial Completion will also

identify with reasonable specificity any categories of documents that remain to be

produced.

**4.      Data Repository**

a)      The Debtors shall, if reasonably practical, upload non-privileged responsive documents to

an online data repository (the "Data Repository") on a rolling basis.  The Data Repository

review tool shall provide basic functions and features such as searching, tagging,

printing, and downloading.

b)      After signing and providing to the Debtors' attorneys the Agreement to Abide by the

Protective Order, a Participant will be granted access to the Data Repository.  Each

Participant shall, upon request, be given up to five (5) separate login credentials for the

Data Repository.  Any Participant who wants additional login credentials for the Data

Repository will be provided with such login credentials at the Participant's own expense,

at a cost of $100 per additional login per month.

c)      The Debtors shall have the right to produce documents that are not reasonably conducive to being uploaded into the Data Repository by other means, including but not limited to supervised review of hard copy documents.  The Debtors will notify all Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the terms and conditions under which such documents will be made available.

**5.      Document Discovery from Alternative Plan Proponents**

a)      Participants, including the Debtors and the Creditors' Committee, who seek to serve Document Requests relating to Plan Issues upon Alternative Plan Proponents pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7034 and 9014, shall do so no later than twenty-one (21) days after the Notice of Intent Deadline.  Participants other than the Debtors and the Creditors' Committee wishing to serve such requests shall meet and confer among themselves and develop consolidated Document Requests if reasonably practical.  All Participants, in order to avoid the service of multiple, duplicative document requests and the attendant burdens on Alternative Plan Proponents of responding to them, shall first review any Document Requests that have already been served on an Alternative Plan Proponent and avoid serving new duplicative Document Requests.

b)      Each Participant serving Document Requests upon an Alternative Plan Proponent shall simultaneously serve a list of proposed search terms that, in the reasonable estimation of such Participant, are reasonably calculated to yield e-mails and e-mail attachments responsive to the Document Requests without being overbroad or unduly burdensome to the Alternative Plan Proponent served.

9

c)      Alternative Plan Proponents shall serve written responses and objections to any
Document Requests timely served on them no later than twenty-one (21) days following
the deadline for serving such requests.  In addition, the Alternative Plan Proponents shall
consider all Document Requests and search terms that are timely served on them and
will, in good faith, generate both a master list of search terms reasonably calculated to
lead to the production of responsive e-mails and e-mail attachments, and a master list of
custodians, time periods and other parameters that will govern the universe of documents
to be searched and produced by the Alternative Plan Proponents.  The custodians in the
search parameters shall include every individual employed or retained by the applicable
Alternative Plan Proponent that the Alternative Plan Proponent reasonably expects will
be called as a witness at any hearing concerning any Plan Issues.

d)      The Alternative Plan Proponents shall make the search term list and search parameters
available to Participants no later than twenty-one (21) days after the deadline for serving
Document Requests and proposed search terms.

e)      If necessary, Alternative Plan Proponents who have been served with search term lists
shall meet and confer with applicable Participants regarding any disputes concerning
served search terms, and other search parameters to be used by such Alternative Plan
Proponent, as well as responses to Document Requests, during the fourteen (14)-day
period following the service of such search term lists and parameters.  Any disputes
concerning an Alternative Plan Proponents' search terms or other search parameters not
resolved by the end of the fourteen (14)-day meet and confer period shall be brought to
the Court's attention within seven (7) days after the final meet and confer, in accordance
with the procedures set forth in Paragraph 15 of this Order.

10

f)      Alternative Plan Proponents shall search for and produce documents as expeditiously as

reasonably practical after being served a Document Request.  Alternative Plan

Proponents shall provide a copy of all responsive document productions to the Debtors in

accordance with the specifications set forth in <u>Exhibit D</u>, and, if reasonably practical, the

Debtors shall upload them to the Data Repository.

**6.     <u>Document Discovery from Other Participants</u>**

a)      Participants, including the Debtors, the Creditors' Committee and Alternative Plan

Proponents, may serve Document Requests relating to Plan Issues upon Participants other

than the Debtors or Alternative Plan Proponents pursuant to Rule 34 of the Federal Rules

of Civil Procedure, as incorporated by Bankruptcy Rules 7034 and 9014; provided,

however, that all such requests must be served in a timely manner such that they permit a

reasonable amount of time for served Participants to produce in response thereto no later

than 75 days prior to the Confirmation Hearing (defined below).

b)      Each Participant serving Document Requests (the "<u>Requesting Participant</u>") upon a

Participant other than the Debtors or Alternative Plan Proponents (the "<u>Producing</u>

<u>Participant</u>") shall simultaneously serve a list of proposed search terms that, in the

reasonable estimation of such Requesting Participant, are reasonably calculated to yield

e-mails and e-mail attachments responsive to the Document Requests without being

overbroad or unduly burdensome to the Producing Participant.

c)      Producing Participants shall serve written responses and objections to any Document

Requests timely served on them no later than twenty-one (21) days following the

deadline for serving such requests.  In addition, the Producing Participant shall consider

all Document Requests and search terms that are timely served on it and will, in good

11

faith, generate both a master list of search terms reasonably calculated to lead to the

production of responsive e-mails and e-mail attachments, and a master list of custodians,

time periods and other parameters that will govern the universe of documents to be

searched and produced.  The Producing Participant shall make the search term list and

search parameters available to Participants no later than twenty-one (21) days after the

deadline for serving Document Requests and proposed search terms.

d)    If necessary, Producing Participants who have been served with search term lists shall

meet and confer with applicable Participants regarding any disputes concerning served

search terms, and other search parameters to be used by such Producing Participant, as

well as responses to Document Requests, during the fourteen (14)-day period following

the service of such search term lists and parameters.  Any disputes concerning a

Producing Participant's search terms or other search parameters not resolved by the end of

the fourteen (14)-day meet and confer period shall be brought to the Court's attention

within seven (7) days after the final meet and confer, in accordance with the procedures

set forth in Paragraph 15 of this Order.

e)    Producing Participants shall search for and produce documents as expeditiously as

reasonably practical after being served a Document Request.  Producing Participants shall

provide a copy of all responsive document productions to the Debtors in accordance with

the specifications set forth in <u>Exhibit D</u>, and, if reasonably practical, the Debtors shall

upload them to the Data Repository.

f)    All Participants, in order to avoid the service of multiple, duplicative document requests

and the attendant burdens on Producing Participants of responding to them, shall first

review any Document Requests that have already been served on a Participant and avoid

serving new duplicative Document Requests.

**7.**    **<u>Document Discovery From Non-Participants</u>**

a)    Participants, including the Debtors, the Creditors' Committee and Alternative Plan

Proponents, may serve Document Requests and/or document subpoenas relating to Plan

Issues upon non-Participants pursuant to Rule 45 of the Federal Rules of Civil Procedure,

as incorporated by Bankruptcy Rules 9014 and 9016; provided, however, that all such

requests for document discovery must be served in a timely manner such that they permit

a reasonable amount of time for production no later than 75 days prior to the

Confirmation Hearing (defined below).

b)    Each Participant serving subpoenas or Document Requests upon a non-Participant shall

simultaneously serve a list of proposed search terms that, in the reasonable estimation of

such Participant, are reasonably calculated to yield e-mails and e-mail attachments

responsive to the subpoenas or Document Requests without being overbroad or unduly

burdensome to the non-Participant.

c)    Non-Participants shall serve written responses and objections to any subpoenas or

Document Requests timely served on them no later than twenty-one (21) days following

the deadline for serving such requests.  In addition, non-Participants shall consider all

subpoenas or Document Requests and search terms that are timely served on them and

will, in good faith, generate both a master list of search terms reasonably calculated to

lead to the production of responsive e-mails and e-mail attachments, and a master list of

custodians, time periods and other parameters that will govern the universe of documents

to be searched and produced.  The non-Participant shall make the search term list and

13

search parameters available to Participants no later than twenty-one (21) days after the

deadline for serving subpoenas or Document Requests and proposed search terms.

d)      If necessary, non-Participants who have been served with search term lists shall meet and

confer with applicable Participants regarding any disputes concerning served search

terms, and other search parameters to be used by such non-Participants, as well as

responses to subpoenas or Document Requests, during the fourteen (14)-day period

following the service of such search term lists and parameters.  Any disputes concerning

a non-Participant's search terms or other search parameters not resolved by the end of the

fourteen (14)-day meet and confer period shall be brought to the Court's attention within

seven (7) days after the final meet and confer, in accordance with the procedures set forth

in Paragraph 15 of this Order.

e)      Non-Participants responding to subpoenas or Document Requests shall search for and

produce documents as expeditiously as reasonably practical after being served a

subpoena or Document Request.  Non-Participants shall provide a copy of their document

productions to the Debtors in accordance with the specifications set forth in Exhibit D,

and, if reasonably practical, the Debtors shall upload them to the Data Repository.

f)      If reasonably necessary, documents produced by non-Participants in response to

subpoenas or Document Requests shall be afforded confidential treatment in accordance

with the terms set forth in the Protective Order even if such non-Participants have not

signed the Agreement to Abide by the Protective Order.

g)      All Participants, in order to avoid the service of multiple, duplicative subpoenas or

Document Requests and the attendant burdens on non-Participants of responding to them,

shall first review any subpoenas and Document Requests that have already been served

14

on a non-Participant and avoid serving new duplicative subpoenas or Document

Requests.

8.    **Initial Disclosures:**  No Participant, including but not limited to the Debtors, the

Creditors' Committee and Alternative Plan Proponents, shall be required to make initial

disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), as incorporated by

Bankruptcy Rules 7026 and 9014.

9.    **Privilege Log**

a)    Subject to Section 3(e) above, if the Debtors withhold any documents on the grounds of

privilege, work product, or any other type of protection or immunity from disclosure, the

Debtors shall produce a privilege log consistent with Federal Rule of Civil Procedure

26(b)(5), as incorporated by Bankruptcy Rules 7026 and 9014.

b)    Any person or entity other than the Debtors that receives a Document Request or

document subpoena and that withholds any documents on the grounds of privilege, work

product, or any other type of protection or immunity from disclosure shall produce a

privilege log consistent with Federal Rules of Civil Procedure 26(b)(5), as incorporated

by Bankruptcy Rules 7026 and 9014.

c)    If only part of a document is withheld on the grounds of privilege, work product, or any

other type of protection or immunity from disclosure, the remainder of the document

shall be produced.

10.    **Interrogatories**

a)    **Interrogatories Served Upon the Debtors:**  Pursuant to Rule 33(a)(1) of the Federal

Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7033 and 9014,

Participants may collectively serve upon the Debtors no more than twenty-five (25)

written interrogatories, including all subparts, relating to Plan Issues ("Interrogatories"), no later than twenty-eight (28) days after the Notice of Intent Deadline. Interrogatories to the Debtors shall be limited to identification and authentication and shall not include contention interrogatories. If necessary, Participants shall meet and confer among themselves to determine the content and scope of the Interrogatories to the Debtors, and priority shall be given to the Creditors' Committee and Alternative Plan Proponents. Any Participant who, after the meet and confer process, will not agree to serve Interrogatories consistent with this paragraph may, in accordance with the procedure set out in Paragraph 15 of this Order, seek leave of the Court to serve a separate Interrogatory under terms and conditions that the Court deems appropriate.

b)      **Interrogatories Served Upon Alternative Plan Proponents:** Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7033 and 9014, Participants, including the Debtors and the Creditors' Committee, may collectively serve upon each Alternative Plan Proponent no more than twenty-five (25) written interrogatories, including all subparts, relating to Plan Issues, no later than twenty-eight (28) days after the Notice of Intent Deadline. Interrogatories to Alternative Plan Proponents shall be limited to identification and authentication and shall not include contention interrogatories. If necessary, Participants shall meet and confer among themselves to determine the content and scope of the Interrogatories to Alternative Plan Proponents and priority shall be given to the Debtors and the Creditors' Committee. Any Participant who, after the meet and confer process, will not agree to serve Interrogatories consistent with this paragraph may, in accordance with the procedure set out in Paragraph

15 of this Order, seek leave of the Court to serve a separate Interrogatory under terms and

conditions that the Court deems appropriate.

c) **Interrogatories Served Upon Participants Other Than the Debtors or Alternative**

**Plan Proponents:** Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as

incorporated by Bankruptcy Rules 7033 and 9014, Participants, including the Debtors

and the Creditors' Committee, may serve no more than twenty-five (25) written

Interrogatories relating to Plan Issues upon any Participant other than the Debtors or

Alternative Plan Proponents; provided, however, that all such interrogatories must be

served in a timely manner such that they permit a reasonable amount of time for served

Participants to respond thereto no later than seventy-five (75) days prior to the

Confirmation Hearing (defined below). Interrogatories to Participants shall be limited to

identification and authentication and shall not include contention interrogatories. If

necessary, Participants shall meet and confer among themselves to determine the content

and scope of the Interrogatories to Participants and priority shall be given to the Debtors,

the Creditors' Committee and Alternative Plan Proponents.

11. **<u>Depositions</u>**

a) **Notice Period for Depositions of the Debtors:** No later than thirty (30) days after the

Debtors serve the Notice of Substantial Completion, Participants may collectively serve

one (1) Notice for Deposition upon the Debtors pursuant to Rule 30(b)(6) of the Federal

Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, plus ten

(10) deposition notices directed to current employees of the Debtors, pursuant to Rule

30(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules

7030 and 9014. If necessary, Participants shall meet and confer regarding these

17

deposition notices no later than twenty-one (21) days after the Debtors serve the Notice
of Substantial Completion.

b)    No Participant who joins a consolidated Rule 30(b)(6) notice prescribed by paragraphs
11(a), (e) and (f) will be deemed to have joined all individual topics listed therein, nor
shall any Participant waive, or be deemed to have prejudiced in any way, any of its rights
or legal positions by joining a consolidated Rule 30(b)(6) notice as prescribed in this
Paragraph.  Any Participant who, after the meet and confer process, will not agree to
serve a consolidated Rule 30(b)(6) notice may, in accordance with the procedure set out
in Paragraph 15 of this Order, seek leave of the Court to serve a separate Rule 30(b)(6)
notice.

c)    **The Debtors' Designation of Witnesses:**  In response to any Notice for Deposition
served upon the Debtors, the Debtors shall prepare a list of designated witnesses for each
of the noticed Rule 30(b)(6) topics and the dates and locations when such witnesses will
be made available to be deposed.  Such list shall also include the names and titles of
witnesses employed or retained by the Debtors who have been individually named in
Notices for Deposition and the dates and locations designated when such individuals will
be made available to be deposed.

d)    **Participation in Depositions of the Debtors:**  Only Participants, including the Creditors'
Committee, may attend and participate in depositions of the Debtors' witnesses either in
person or, at the option and expense of the Participant, by telephone or video link.
Though the number of in-person attendees will be limited to the space available, the
Creditors' Committee and Alternative Plan Proponents shall be entitled to attend in
person. The length of time allotted for depositions will be governed by Rule 30(d)(1) of

18

the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and

9014.  Participants wishing to ask questions at any such depositions shall be required to

allocate such time among themselves in a fair and reasonable manner, with priority given

to the Creditors' Committee and Alternative Plan Proponents.  Every effort should be

made to avoid duplicative questioning.

e)     **Notice Period for Depositions of Alternative Plan Proponents:**  No later than thirty

(30) days after the Debtors serve the Notice of Substantial Completion, Participants

(including the Debtors and the Creditors' Committee) may collectively serve one (1)

Notice for Deposition upon the Alternative Plan Proponents pursuant to Rule 30(b)(6) of

the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and

9014, and may serve deposition notices pursuant to Rule 30(b)(1) of the Federal Rules of

Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, upon Alternative

Plan Proponents.

f)     **Notice Period for Depositions of (i) Participants Other Than the Debtors or
Alternative Plan Proponents and (ii) Non-Participants:**

No later than forty-five (45) days after the Debtors serve the Notice of Substantial

Completion, Participants may serve (i) Notices for Deposition upon Participants other

than the Debtors or Alternative Plan Proponents pursuant to Rule 30 of the Federal Rules

of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, and (ii)

deposition subpoenas upon non-Participants pursuant to Rule 45 of the Federal Rules of

Civil Procedure, as incorporated by Bankruptcy Rules 9014 and 9016.  Upon request, and

where such information is available, the Debtors will provide the last known address or

the name(s) of the attorney(s) representing former employees of the Debtors.

g)   **Participation in Depositions of (i) Participants Other Than the Debtors and (ii) Non-Participants**:

The duration of depositions shall be governed by Rule 30(d)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014.  Participants wishing to ask questions at any such depositions shall be required to allocate time among parties in good faith and in a fair and reasonable manner, with priority given to (in order of priority) the Debtors, the Creditors' Committee and Alternative Plan Proponents, and every effort should be made to avoid duplicative questioning.

12.   **Requests for Admission:**  No Participant, including but not limited to the Debtors, the Creditors' Committee and Alternative Plan Proponents, shall be required to respond to any Request for Admission under Rule 36 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rule 7036.

13.   **Discovery in Connection with Subsequent Filings:**

a)   In the event that the Debtors or Alternative Plan Proponents materially amend any provisions in a plan of reorganization filed in the Chapter 11 Cases after the Notice of Intent Deadline, Participants, including the Debtors, the Creditors' Committee and Alternative Plan Proponents, may serve supplemental Document Requests on such filing party, solely limited to issues raised by such amendments, no later than fourteen (14) days following such filing.

b)   In the event that, after the Notice of Intent Deadline, any creditor, party in interest, or group of creditors or parties in interest (i) files an objection to the Plan or an Alternative Plan or (ii) files an Alternative Plan, such filing party may serve Document Requests on any Participant and any Participant may serve Document Requests upon such filing party,

20

solely limited to issues raised by such new filings, no later than twenty-one (21) days following the filing of such objection or Alternative Plan.

c)    Deadlines for the production of documents in response to Document Requests served pursuant to Paragraphs 13(a) and (b) above, as well as deadlines for depositions and interrogatories, if any, concerning the filings and/or filing parties referenced in Paragraphs 13(a) and (b) above, shall be set by the Court, in the absence of an agreement between interested Participants.

d)    The filing of an Alternative Plan or an objection to the Plan or an Alternative Plan after the Notice of Intent Deadline shall not provide a basis for anyone to seek discovery from Participants concerning issues that were fairly raised in documents filed prior to the Notice of Intent Deadline.

e)    The date that all fact discovery from the Debtors and Alternative Plan Proponents, including but not limited to depositions of the Debtors and Alternative Plan Proponents, is complete shall be the "Fact Discovery Cutoff." The Debtors shall file with the Court a "Notice of Fact Discovery Cutoff" within five (5) days of the completion of such fact discovery.

14.    **Expert Discovery:**

a)    **Expert Disclosures:** Participants, including the Debtors, the Creditors' Committee, Alternative Plan Proponents and Plan Objectors, shall identify all proposed testifying experts and serve all disclosures required by Federal Rule of Civil Procedure 26(a)(2), as incorporated by Bankruptcy Rules 7026 and 9014, including full expert reports, no later than thirty (30) days after the Notice of Fact Discovery Cutoff is filed. All experts who will receive Plan Discovery must sign the Agreement to Abide By the Protective Order

21

and testifying experts must serve a copy of the signature page upon attorneys for the

Debtors.

b)      **Rebuttal Experts:**  Participants shall identify and serve all disclosures regarding rebuttal

experts, including rebuttal expert reports, no later than sixty (60) days after the Notice of

Fact Discovery Cutoff is filed.

c)      **Expert Depositions:**  All depositions of experts (including rebuttal experts) shall be

completed no later than ninety (90) days after the Notice of Fact Discovery Cutoff is

filed.  Participants wishing to ask questions at any such depositions shall be required to

allocate such time among Participants in a fair and reasonable manner, with priority given

to (in order of priority) the Debtors, the Creditors' Committee and Alternative Plan

Proponents, and every effort should be made to avoid duplicative questioning.

15.     <u>**Discovery Disputes:**</u>  Any dispute with respect to Plan Discovery that Participants or

non-Participants cannot resolve after good faith consultation may be presented to the

Court by a letter from the attorney for the Participant or non-Participant seeking relief,

with a copy to the attorneys for the Debtors, the Creditors' Committee, the Participant or

non-Participant opposing relief, and all Participants on the Official Service List.  Any

response thereto will be made by letter to the Court delivered within five (5) days after

service to the applicable Participant or non-Participant and a copy provided to all

Participants on the Official Service List.  Except with prior leave of Court, no letter will

exceed three (3) pages in length, and no additional submissions will be permitted.  The

Debtors and the Creditors' Committee will communicate with the Court to schedule status

conferences/hearings during which such discovery disputes will be heard.

16.   **Status Conferences:**  The Court shall hold status conferences concerning Plan

Discovery: (a) after the meet and confer referenced in Paragraph 3(g) of this Order, if

any, is completed; (b) after the Notice of Substantial Completion is issued; and (c) after

the Notice of Fact Discovery Cutoff is filed.  The Debtors and the Creditors' Committee

will communicate with the Court to schedule such status conferences.

17.   **Non-Waiver of Privilege:**  The inadvertent production by any Participant or non-

Participant of any privileged document or information, or any other document or

information otherwise precluded or protected from disclosure, in response to any

discovery requests shall not be deemed a waiver of any applicable privilege or immunity

with respect to such document or information (or the contents or subject matter thereof)

or with respect to any other document or discovery.  Any such produced privileged or

protected document must immediately be returned (whether or not the receiving

Participant disputes the claim of privilege or protection) to the producing Participant or

non-Participant or its attorneys on request or upon discovery of such inadvertent

production by the receiving Participant, and the receiving Participant shall certify that all

copies of such produced privileged or protected document have been returned or

destroyed.

18.   **Use of Materials Produced:**  Participants shall have the right to object to the use by any

other Participant of materials produced through Plan Discovery in any matter or

proceeding outside of the Chapter 11 Cases on evidentiary or any other grounds.

19.   **Hearing Dates and Pre-trial Conference:**  The Court will set dates for hearings related

to confirmation of a plan of reorganization in the Chapter 11 Cases ("Plan Confirmation").

No later than forty-five (45) days prior to the first date set by the Court to consider Plan

Confirmation (the "Confirmation Hearing") and no earlier than seventy-five (75) days after

the Notice of Fact Discovery Cutoff is filed, the Court will schedule a pre-trial

conference to discuss, *inter alia*, briefing, exhibit lists, witnesses, and motions *in limine*.

20.    **Jurisdiction:** The Court shall retain jurisdiction over any matters related to or arising

from the implementation of this Order.


Dated: March __, 2011
       New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                    :        **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :        **08-13555 (JMP)**
                                                         :
                          **Debtors.**                  :        **(Jointly Administered)**
------------------------------------------------------------------x

## NOTICE OF INTENT TO PARTICIPATE IN
## DISCOVERY RELATED TO PLAN CONFIRMATION

NOTICE IS HEREBY GIVEN that _____, represented by
_____, has filed Claim(s) Number(s) _____
against _____ in the amount of _____ and/or is a party of interest in the
confirmation of a plan in the above-captioned chapter 11 cases (the "Chapter 11 Cases") on the
basis that _____.

ACCORDINGLY, PLEASE TAKE FURTHER NOTICE that, subject to any objections by the
Debtors or the Statutory Committee of Unsecured Creditors appointed in the Chapter 11 Cases
and/or any limitations imposed by the Court, the above-named party in interest and its counsel
intends to participate as follows in Plan Discovery, as defined in the Order Establishing
Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues,
entered by the Court on _____ [Docket No. ___]:
_____.


Dated: _____                    _____


**Contact Information for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Attorneys for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Advisors for Party in Interest (address, phone and email):**
_____
_____
_____
_____

A2

**Designation of Contact(s) to Receive Any Notice(s) Required Under the Order:**

_____

_____

_____

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                            :      Chapter 11 Case No.
                                     :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :      **08-13555 (JMP)**
                                     :
                   **Debtors.**     :      **(Jointly Administered)**
------------------------------------------------------------------x

## PROTECTIVE ORDER

In conjunction with the Order[1], it is ORDERED by the Court that Plan Discovery

conducted in accordance with the Order shall be conducted subject to the following terms and

provisions set forth in this Protective Order; that all documents, deposition testimony,

interrogatory answers, and other information produced, given, provided or exchanged in

connection with Plan Discovery (the "Discovery Materials") by the Debtors, Participants, and/or

non-Participants (collectively, "Producing Parties") shall be and are subject to this Protective Order

in accordance with the following procedures, pursuant to sections 105(a) and 107(b) of title 11 of

the United States Code (the "Bankruptcy Code") and Bankruptcy Rule 9018, to protect the

confidentiality of sensitive information; and that, by signing the Agreement to Abide by the

Protective Order, signatories (each a "Signatory") have consented to this Protective Order and

agree to be bound by its terms:

       1.      Any Producing Party or Receiving Party (defined below) may, as reasonably

appropriate, designate any Discovery Material as "Confidential" or "Attorneys' Eyes Only" in

accordance with the terms below.  A party who designates Discovery Material as "Confidential" or

"Attorneys' Eyes Only" is a "Designating Party."

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the order entered by the Court (the "Order") to which this Protective Order (the "Protective Order") is annexed.

B2

**Confidential Information**

2.      As used in this Protective Order, "Confidential Information" refers to all Discovery Material revealed or produced by a Producing Party (whether in response to a Document Request, Interrogatory, Deposition, other discovery device or otherwise) that is designated as "Confidential." This designation will, without more, subject the designated material or information to the provisions of this Protective Order; and such Confidential Information will be protected by, and may be used and disposed of only in accordance with, the provisions of this Protective Order.

3.      Any Producing Party may designate any Discovery Material as "Confidential" under the terms of this Protective Order if the Producing Party in good faith reasonably believes that the Discovery Material contains non-public, confidential, proprietary or commercially sensitive information that requires the protections provided in this Protective Order.  For purposes of this Protective Order, Confidential Information includes, but is not limited to all non-public materials containing information related, but not limited, to:  (i) financial or business plans or projections; (ii) proposed strategic transactions and other business combinations, negotiations, inquiries or agreements, including, but not limited to, joint ventures, mergers, material asset sales, purchases, buy-outs, consolidations, transfers of interests and partnerships; (iii) studies or analyses by internal or outside experts or consultants; (iv) financial or accounting results or data; (v) business, management and marketing plans and strategies; (vi) acquisition offers and expressions of interest; and (vii) contracts or agreements with or among affiliates, partners or Producing Parties.

**Attorneys' Eyes Only Information**

4.      As used in this Protective Order, "Attorneys' Eyes Only Information" refers to all Discovery Material revealed or produced by a Producing Party (whether in response to a

B3

Document Request, Interrogatory, Deposition, other discovery device or otherwise) that is

designated as "Attorneys' Eyes Only." This designation will, without more, subject the designated

material or information to the provisions of this Protective Order; and such Attorneys' Eyes Only

Information will be protected by, and may be used and disposed of only in accordance with, the

provisions of this Protective Order.

5.      A Producing Party may designate Discovery Material as "Attorneys' Eyes Only"

under the terms of this Protective Order if the Producing Party in good faith reasonably believes

that the Discovery Material contains non-public, highly confidential, highly sensitive proprietary

or commercial information that requires the highest level of protections provided in this

Protective Order.  For purposes of this Protective Order, Attorneys' Eyes Only Information

includes all non-public materials containing information related, but not limited, to:  (i) trade

secrets; (ii) special formulas; (iii) proprietary software and/or computer programs; (iv) internal

financial reports or plans; (v) sensitive financial data; (vi) internal notes, memoranda, logs or

other data; and (vii) other highly sensitive non-public commercial, financial, research or

technical information.

6.      Counter-Designation:  Any party receiving Discovery Material (hereinafter, a

"Receiving Party") (whether or not that party demanded the documents) may designate, or counter-

designate with a higher designation, information produced by any Producing Party that contains

or is derived from information that the Receiving Party could have so designated had it produced

the material.

**Designation of Deposition and Hearing Testimony**

7.      For transcripts of depositions or other testimony given in pretrial proceedings, any

Producing Party may designate the specific testimony as "Confidential" or "Attorneys' Eyes Only"

B4

either on the record at the deposition or other proceeding, or in writing served on all Participants no later than seven (7) days following the date on which attorneys for the Producing Parties have received the transcript of the deposition or other proceeding. If information designated as Confidential or Attorneys' Eyes Only will be disclosed or discussed at a deposition, the Designating Party shall have the right to exclude any person not entitled to have access to such information, other than the deponent or witness, the attorney of record (including their staff and associates), the official court reporter, and stenographer and/or videographer.

8.      If information designated as Confidential or Attorneys' Eyes Only will be disclosed or discussed in a filing with the Court, the filing will be made under seal, so long as a redacted public version is filed simultaneously.

9.      All transcripts not previously designated as either "Confidential" or "Attorneys' Eyes Only" shall be treated as "Attorneys' Eyes Only" under this Protective Order for the seven (7)-day period following receipt of the transcript and exhibits by attorneys for the Producing Parties, after which time only the portions specifically designated as "Confidential" or "Attorneys' Eyes Only" pursuant to Paragraph 7 of this Protective Order shall be so treated.

10.     The court reporter shall bind transcript pages containing Confidential Information or Attorneys' Eyes Only Information separately and shall prominently affix the legend "Confidential" or "Attorneys' Eyes Only" to each appropriate page, as instructed by the Designating Party.

**Prohibited Information**

11.     In no event shall the Debtors produce or otherwise disclose the following information with respect to the Debtors: (a) any counterparty level information or (b) any asset level or valuation details (the "Prohibited Information"). In addition, Participants shall not solicit

B5

Prohibited Information from any other Participant or non-Participant, including any advisors to the Creditors' Committee.

## Access to Confidential and Attorneys' Eyes Only Information

12.    Receiving Parties shall permit access to Confidential or Attorneys' Eyes Only Information only to persons specified in this Protective Order.  For purposes of this Protective Order, the term "Receiving Party" shall include any persons identified below in Paragraphs 13 and 14 of this Protective Order who receive Confidential Information or Attorneys' Eyes Only Information from a Receiving Party as permitted by this Protective Order.

13.    Confidential Information may be disclosed, summarized, described, characterized or otherwise communicated or made available in whole or in part by a Receiving Party only to the following persons:

a.    Outside attorneys of record or those in-house attorneys who represent the Receiving Party in matters related to the Chapter 11 Cases, as well as stenographic, clerical, and legal assistant employees, and agents of those attorneys whose functions require access to Confidential Information;

b.    Any person indicated on the face of a document to be the author, addressee, or an actual or intended recipient of the document;

c.    Outside experts or consultants for the Receiving Party whose advice and consultation are being or will be used by the Receiving Party in connection with the Chapter 11 Cases, including their clerical personnel; provided that counsel desiring to disclose Confidential Information to such experts or consultants and their clerical personnel shall first obtain a signed Agreement to Abide by the Protective Order from each such expert or consultant and each of his/her personnel who would require access to Confidential Information, and counsel shall retain in his/her file an original or copy of each such signed Agreement to Abide by the Protective Order;

d.    The Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party;

B6

e.   Officers, directors or employees of the Receiving Party who are assisting the
Receiving Party's attorneys with matters related to the Chapter 11 Cases;

f.   To the extent not otherwise covered by this Section, any potential witness or deponent
(and counsel for such witness or deponent), during the course of, or to the extent
necessary for, preparation for deposition or testimony relating to the Chapter 11
Cases.  Except when the Confidential Information is first exhibited at a deposition or
trial to such person, counsel desiring to disclose Confidential Information to such
persons shall first obtain a signed Agreement to Abide by the Protective Order, and
counsel for the Receiving Party shall retain a copy of each executed Agreement to
Abide by the Protective Order;

g.   Professional vendors to whom disclosure is reasonably necessary for Plan Discovery,
provided they are informed that the material is Confidential Information;

h.   Any other person upon agreement among the Debtors, the Participants, the
Designating Party, and the Receiving Party, provided that such person shall first
execute the Agreement to Abide by the Protective Order, a copy of which shall be
retained by counsel for the Receiving Party; and

i.   Any other person, only upon order of the Court.

14.      Attorneys' Eyes Only Information may be disclosed, summarized, described,
characterized or otherwise communicated or made available in whole or in part by a Receiving
Party only to the following persons:

a.   Outside attorneys of record and in-house attorneys who represent the Receiving
Party in matters related to the Chapter 11 Cases, as well as stenographic, clerical,
and legal assistant employees, and agents of those attorneys whose functions
require access to Attorneys' Eyes Only Information;

b.   Any person indicated on the face of a document to be the author, addressee, or an
actual or intended recipient of the document;

c.   Outside experts for the Receiving Party whose advice and consultation are being
or will be used by the Receiving Party in connection with the Chapter 11 Cases,

B7

including their clerical personnel; provided that counsel desiring to disclose Attorneys' Eyes Only Information to such experts and their clerical personnel shall (i) serve notice to the applicable Producing Party prior to disclosure and allow the Producing Party to object to such disclosure (objections that cannot be resolved by the parties shall be raised with the court in accordance with Paragraph 15 of the Order); and (ii) obtain a signed Agreement to Abide by the Protective Order from each such expert and each of his/her personnel who would require access to Attorneys' Eyes Only Information, and counsel shall retain in his/her file an original or copy of each such signed Agreement to Abide by the Protective Order;

d.  Professional vendors to whom disclosure is reasonably necessary for Plan Discovery, provided they are informed that the material is Attorneys' Eyes Only Information; and

e.  The Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party.

15.  <u>Access to Protected Material</u>:  Only persons authorized to receive Confidential Information or Attorneys' Eyes Only Information under this Protective Order shall have access to such material.  Receiving Parties shall not provide access to or disclose Confidential Information or Attorneys' Eyes Only Information to any person not authorized to access such material under this Protective Order.  Receiving Parties shall store all Confidential Information or Attorneys' Eyes Only Information that they receive in a secure manner.  Receiving Parties are barred from using Confidential Information or Attorneys' Eyes Only Information except in the Chapter 11 Cases and only for the purposes permitted by the Protective Order and the Order.

16.  <u>No Restrictions on Use of Public or Own Information</u>:  Notwithstanding any other provision of this Protective Order, this Protective Order does not restrict in any way a Participant's or non-Participant's use of:

a.  Its own information or its right to provide such information to any other person,

B8

even if others have designated similar or identical information as Confidential

Information or Attorneys' Eyes Only Information.  A person's use or disclosure of

its own information shall not waive the protections of this Protective Order, and

shall not entitle any Participant or non-Participant to use or disclose such

Discovery Materials, or the contents thereof, in violation of this Protective Order;

  b.  Information that is in the public domain or becomes public without violation of

      this Protective Order; and

  c.  Information that a Participant or non-Participant develops or obtains through

      proper means without violation of this Protective Order.

**Use of Discovery Materials**

  17.    Receiving Parties shall use Confidential or Attorneys' Eyes Only Information

produced during Plan Discovery only for matters related to the Chapter 11 Cases.  Confidential

or Attorneys' Eyes Only Information shall not be made public by any Receiving Party, shall be

used only by persons permitted access to it as provided for in this Protective Order, and shall be

disclosed only to persons specified herein.

  18.    Nothing herein shall prevent disclosure beyond the terms of this Protective Order

if the Designating Party designating the material as "Confidential" or "Attorneys' Eyes Only"

specifically consents in advance in writing to such disclosure, or if the Court, after notice to all

Participants and the Designating Party, orders such disclosure.

**Inadvertent Failure to Designate**

  19.    An inadvertent failure to designate qualified information as "Confidential" or

"Attorneys' Eyes Only" that a Producing Party discloses or otherwise produces or generates does

not waive the Producing Party's right thereafter to designate Discovery Material as Confidential

or Attorneys' Eyes Only Information under this Protective Order.  Upon receipt of such

B9

designation, each Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Protective Order.  The Designating Party shall promptly produce new copies of the material at issue, with the proper designation, after which Receiving Parties shall promptly destroy the copies with the improper designation and shall request that all persons to whom the Receiving Party has provided copies do likewise.  The Receiving Party shall inform the Designating Party when destruction of such copies has been completed.

**Non-Waiver of Privilege**

20.    Nothing in this Protective Order shall require disclosure of information by a Producing Party that counsel for such party contends is protected from disclosure by the attorney-client privilege, the work-product immunity, or any other legally cognizable privilege. If information subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege is inadvertently or mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information or any other information that may be protected from disclosure by the attorney-client privilege, the work-product immunity, or any other applicable privilege.  If a Producing Party has inadvertently or mistakenly produced Discovery Material that is subject to a claim of immunity or privilege, upon request by the Producing Party after the discovery of such inadvertent or mistaken production, the Receiving Party shall return or destroy the Discovery Material for which a claim of inadvertent production is made within seven (7) days of such request, and the Receiving Party shall not use such Discovery Material for any purpose other than in connection with a motion to compel production of the Discovery Material.  The Receiving Party returning such Discovery Material may then move the Court for

an order compelling production of the Discovery Material, but that motion shall not assert as a

ground for entering such an order the fact or circumstance of the inadvertent production of the

Discovery Material.

**Relief**

21.    This Protective Order shall not prevent any party from applying to the Court for

relief therefrom, or from applying to the Court for further or additional protective orders.

22.    Nothing in this Protective Order shall prevent any Signatory from producing

documents received subject to this Protective Order and that are in his, her or its possession, to

another person in response to a subpoena or other compulsory process.  However, when possible,

at least ten (10) days written notice shall be given to the Designating Party before production or

other disclosure is to be made.  In no event shall production or other disclosure be made before

reasonable notice is given.

**Objections to Designations**

23.    If any Receiving Party objects to the designation of any Discovery Material as

'Confidential,' or "Attorneys' Eyes Only," the Receiving Party shall first state the objection in

writing to the Designating Party.  Such parties shall confer in good faith to attempt to resolve any

dispute regarding any such designation.  If such parties are unable to resolve such dispute, the

objecting party may seek appropriate relief from the Court, in accordance with Paragraph 15 of

the Order; provided, however, that all Discovery Material to which the objection applies shall

continue to be treated by Receiving Parties as Confidential Information or Attorneys' Eyes Only

Information, as designated by the Designating Party, in accordance with this Protective Order,

until such objection is resolved.  No Signatory shall contest an objecting party's request for

reasonably expedited consideration for such relief.

**Appeal**

24.    In the event that any Signatory appeals from any decision of the Court relating to

Plan Discovery, such Signatory shall file an application to the appropriate appellate court, within

seven (7) days of the filing of the notice of appeal, to maintain under seal any Discovery Material

filed with the appellate court that contains or discloses Confidential Information and/or

Attorneys' Eyes Only Information.  The provisions of this paragraph may be waived only with the

written consent of the Designating Party.

**Scope of Protective Order**

25.    In the event that any Confidential or Attorneys' Eyes Only Information is used in

any court proceeding relating to the Chapter 11 Cases, that material shall not lose its status as

Confidential or Attorneys' Eyes Only Information through such use and such use shall remain

subject to the terms of this Protective Order.

26.    This Protective Order shall survive the termination of the Plan Confirmation

process, whether by order, final judgment, settlement or otherwise, and shall thereafter continue

in full force and effect.

**Procedures After Plan Confirmation**

27.    After Plan Confirmation, counsel for the Receiving Parties may retain archival

copies of deposition exhibits, Court exhibits, documents and other materials submitted to the

Court, deposition transcripts and transcripts of court proceedings, one copy or sample of

Confidential or Attorneys' Eyes Only Information produced by a Producing Party, and any

summaries, notes, abstracts or compilations of Confidential or Attorneys' Eyes Only Information,

solely for reference in the event of a dispute over the use or dissemination of information.  Such

material shall continue to be treated as Confidential or Attorneys' Eyes Only Information, as

applicable, in accordance with this Protective Order.  After Plan Confirmation, counsel for

Receiving Parties promptly either shall return all additional Confidential or Attorneys' Eyes Only

Information in his/her possession, custody or control or in the custody of any authorized agents,

outside experts and consultants retained or utilized by counsel for the Receiving Party to counsel

for the Producing Party who has produced such Confidential or Attorneys' Eyes Only

Information, respectively, in the Chapter 11 Cases, or shall certify destruction thereof to such

counsel.  As to Confidential or Attorneys' Eyes Only Information reflected in computer databases

or backup tapes, the Receiving Party promptly shall delete all such Confidential or Attorneys'

Eyes Only Information or shall impose passwords or designate the information in a manner

reasonably calculated to prevent unauthorized access to such Confidential or Attorneys' Eyes

Only Information.

**Modification**

      28.     No modification of this Protective Order shall be binding or enforceable unless in

writing and signed by the Debtors and the Participants, or by further order of the Court.

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                      :        **Chapter 11 Case No.**
                                                           :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*    :        **08-13555 (JMP)**
                                                           :
                                       **Debtors.**       :        **(Jointly Administered)**
-------------------------------------------------------------------x

## AGREEMENT TO ABIDE BY THE PROTECTIVE ORDER

I hereby certify that I have read the Protective Order[1] SO ORDERED by the Court

in the above-captioned chapter 11 cases (the "Chapter 11 Cases") on March __, 2011 [Docket No.

___].  I further certify that I understand the terms and provisions of the Protective Order and agree

to be fully bound by them, and hereby submit to the jurisdiction of the United States Bankruptcy

Court for the Southern District of New York for purposes of the Protective Order's enforcement.  I

understand and agree, in particular, that I may not use any Confidential or Attorneys' Eyes Only

Information, or any copies, excerpts or summaries thereof, or materials containing Confidential or

Attorneys' Eyes Only Information derived therefrom, as well as any knowledge or information

derived from any of these items, for any purpose other than matters related to the Chapter 11

Cases, in accordance with the provisions of the Protective Order, including, without limitation,

any business or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order

may result in legal action against me, such as for contempt of court and liability for monetary

damages.

Dated: _____        Agreed: _____

_____
[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the
Protective Order.

# EXHIBIT D

**Technical Specifications for Documents to be Uploaded to Data Repository**

Participants and non-Participants producing documents to the Debtors must produce electronically stored documents in the following electronic format:

1. _Emails_.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with _Appendix 1_.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

2. _Electronic Documents_.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with _Appendix 1_.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a need for such native files.

3. _Hard copy documents_.  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

4. _TIFF Images Generally_.  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif"" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG

compression.  For instances in which the original file is in color and the color is

necessary for interpretation of the document (charts, pictures, etc.), produce

medium quality JPEG in place of single page tiff file.  Metadata shall be provided

in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for

column break and text qualifier.  The first line shall be the header with field names,

and each subsequent line shall contain the fielded data for each document.

5.      *Shipment of electronic data*.  Electronic data productions may be transmitted

electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or

physically transported using electronic storage media such as, CDs, DVDs or hard

drives.  The physical media label should contain the case name and number,

production date, and bates range being produced.  Each transmission of data should

include a collection "manifest" report which provides a list of files collected, their

location, and their MD5 hash values.

**Appendix 1**

| Field | Description |
|---|---|
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | BegBates of last attached document in family. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| EMail_Subject | Subject of the e-mail message. |
| Author | Author field value pulled from metadata of the native file. |
| Title | Title field value extracted from the metadata of the native file. |
| Custodian | Textual value of custodian. |
| DateCreated | Creation date of the native file. |
| TimeCreated | Creation time of the native file. |
| EntryID | Unique identifier of e-mails in mail stores. |
| FileDescription | File extension or other description of native file type. |
| Filename | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of first level attachments in the e-mail. |
| DateLastMod | Date the native file was last modified. |
| TimeLastMod | Time native file was last modified. |
| PgCount | Number of pages in a document. |
| NativeFile | Logical file path to the native file. |
| OCRPath | Logical file path to the OCR text. |