Form 210A (10/06)

# United States Bankruptcy Court
## Southern District Of New York

In re Lehman Brothers Holdings Inc., et al.,

Case No. 08-13555 (JMP)
(**Jointly Administered**)

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a).  Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

Name of Transferee | Name of Transferor
---|---
Deutsche Bank AG, London Branch | Aspecta Assurance International Luxembourg S.A.

Name and Address where notices to transferee should be sent:

Deutsche Bank AG, London Branch
Winchester House, 1 Great Winchester Street
London EC2N 2DB
Tel: +44 20 7547 2400
Fax: +44 113 336 2010
Attention: Philipp Roever
E-mail:  philipp.roever@db.com

Court Claim # (if known):  17593
Amount of Claim: $4,047,855.00
Date Claim Filed: September 18, 2009

Tel: N/A

Last Four Digits of Acct. #:  N/A

Last Four Digits of Acct. #:  N/A

Name and Address where transferee payments should be sent (if different from above):

Tel: +44 20 7547 0062
Last Four Digits of Acct #: N/A

I declare under penalty of perjury that the information provided in this notice is true and correct to the best of my knowledge and belief.

By: _____
Transferee/Transferee's Agent

Date:   March ⎯ , 2011

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571.

*FULL Transfer of LBHI Claim # 17593*
*PROGRAM SECURITY*

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY

TO:          United States Bankruptcy Court for the
                Southern District of New York (the "Bankruptcy Court")
                Attn: Clerk

AND TO:      Lehman Brothers Holdings, Inc. (the "Debtor")

CASE NAME:   In re Lehman Brothers Holdings Inc., *et al.,*

CASE NO.     Chapter 11, Case No. 08-13555 (JMP)

CLAIM NO.    17593 (full transfer)

1.     For value received, the adequacy and sufficiency of which are hereby acknowledged, **Aspecta Assurance International Luxembourg S.A.**, of Goldbell 1, 5, rue Eugène Ruppert, L-2453 Luxembourg ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to Deutsche Bank AG, London Branch, of Winchester House, 1 Great Winchester Street, London EC2N 2DB, U.K. (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof and on the further terms set forth in (and incorporated by reference in) a transaction confirmation between Seller and Purchaser dated October 8, 2010 (the "Sale Agreement"), (a) Seller's right, title and interest in and to such portion of Proof of Claim Number 17593 filed by or on behalf of Seller (a copy of which is attached at Schedule 2 hereto) (the "Proof of Claim") as is specified in Schedule 1 hereto (the "Purchased Portion") against Lehman Brothers Holdings, Inc., as guarantor of the Purchased Security (as defined below) and debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Portion, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Portion or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Portion, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Portion, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Portion, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Portion, but only to the extent related to the Purchased Portion, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Portion and specified in Schedule 1 attached hereto.

2.     Seller hereby represents and warrants to Purchaser, in addition to the representations provided in the Sale Agreement, that: (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Portion specified in Schedule 1 attached hereto; and (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors.

DB Ref: 5537

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims. Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim. Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein. Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.      Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.      Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.      Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this 6ᵗʰ day of February 2011.

ASPECTA ASSURANCE INTERNATIONAL
LUXEMBOURG S.A.

By: _____
      **ASPECTA**
      Assurance International Luxembourg S.A.    *ZIEGENHAGEN*
Name: **Olivier SCHMIDT-BERTEAU**    *HEAD OF LEGAL*
Title: **Managing Director**

Goldbell 1
5, rue Eugène Ruppert
L-2453 Luxembourg

DEUTSCHE BANK AG, LONDON BRANCH

By: _____
Name: Ross Miller
Title: Director

Anil Das
Director

Winchester House
1, Great Winchester Street
London EC2N 2DB
U.K.
Attn: Philipp Roever

Schedule 1

## Transferred Claims

### Purchased Portion

100% of the claim that is referenced in the Proof of Claim and relating to the Purchased Security described below.

### Lehman Programs Securities to which Transfer Relates

| Description of Security | ISIN | Issuer | Guarantor | Principal/Notional Amount | Maturity |
|---|---|---|---|---|---|
| 10year Capital Protected SPA Note linked to the Lehman Brothers Alpha Select 4 Fund under the equity-linked Euro Medium Term Note program | XS0350719380 | Lehman Brothers Bankhaus AG | Lehman Brothers Holdings Inc. | USD 4,047,855.00 (EUR 2,850,000.00) | 6 April 2018 |

**DB Ref: 5537**

Schedule 2

Copy of Proof of Claim 17593

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held LEHMAN BROTHERS HOLDINGS INC | Case No. of Debtor 08-13555 |

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                    0000017593

0000017593

**THIS SPACE IS FOR COURT USE ONLY**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

ASPECTA ASSURANCES INTERNATIONAL SA
GOLDBELL 1
5, RUE EUGENE RUPPERT
L - 2453 LUXEMBOURG

Telephone number: +352 26 498 255    Email Address: sleroy@aspecta.lu

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:_____
   (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Telephone number:            Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case.

**1.    Amount of Claim as of Date Case Filed:** $ 4,047,855.00 (EUR 2,850,000.00)

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

**2.    Basis for Claim:** EMTN Issued and guaranteed by Lehman (XS0350719380)
(See instruction #2 on reverse side.)

**3.    Last four digits of any number by which creditor identifies debtor:** 9380
(See instruction #3a on reverse side.)
   **3a. Debtor may have scheduled account as:** _____
(See instruction #3a on reverse side.)

**4.    Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $_____  Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____  Basis for perfection: _____
Amount of Secured Claim: $_____    Amount Unsecured: $_____

**6.    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**
(See instruction #6 on reverse side.)

**7.    Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.    Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

| Date: 11/09/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

**5.    Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

**FOR COURT USE ONLY**

**FILED / RECEIVED**

SEP 18 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your claim is against multiple Debtors, complete a separate form for each Debtor

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150-5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a person's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code, or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------- x
In re:                                                         :    **Chapter 11**
                                                               :
**LEHMAN BROTHERS HOLDING INC.**                               :    **Case No. 08-13555**
                                                               :
                                Debtor.                        :
--------------------------------------------------------------- x

## ATTACHMENT TO PROOF OF CLAIM

1.    ASPECTA Assurance International Luxembourg S.A. ("ASPECTA"), is a

Luxembourg life insurance company established and having its registered office at 5, rue Eugène

Ruppert, L-2453 Luxembourg, Grand-Duchy of Luxembourg.

2.    In its capacity as an insurance company under Luxembourg laws, ASPECTA has

invested part of the insurance premiums which it has received from certain of its clients in notes

called "Capital Proctected SPA Note 2008-6.4.18 (EXP.20.3.18) on a Dynamic Basket" (ISIN

XS0350719380) issued by Lehman Brothers Bankhaus AG, a German entity. *See* Exhibit A

hereto. Pursuant to Luxembourg law, the sums paid by such clients as premiums to an insurance

company become property of the insurance company, and the investments made by the insurance

company with such monies are made in the insurance company's own name and for its own

account. Policyholder(s) / beneficiary(ies) only has(ve) an insurance claim against the insurance

company.

3.    With respect to the notes which are referenced to above, Lehman Brothers

Holdings Inc. has given a guaranteed repayment. *See* Exhibit B hereto. The total amount of

claim relating to the investment in the notes referred to above amounts to $ 4,047,855.00 (EUR

2,850,000.00).    Accordingly, Aspecta hereby pursues its claim against Lehman Brothers Holdings Inc. pursuant to its guarantee.

4.    Aspecta has also filed a claim against Lehman Brothers Bankhaus AG in the bankruptcy proceedings against such entity, in Germany, for repayment of the notes referred to above. *See* Exhibit C hereto.

### Reservation of Rights

5.    Aspecta reserves the right to supplement, amend and/or revise this proof of claim as necessary and appropriate.

Dated: _11/09/_, 2009                     By:_____

                                                        *Pierre Jearcy*
                                                          *CEO*

# ING 

ASPECTA
Assurance International Luxembourg SA
Fund Administration
Goldbell I
5, rue Eugène Ruppert
L-2453 Luxembourg

Luxembourg, le 25/03/2009

Concerne: attestation de position en titres LEHMAN BROTHERS

Par la présente, nous attestons qu'au 25/03/2009 vous déteniez en nos livres pour le compte
ASPECTA Assurance International SA

| QUANTITE | DENOMINATION | CODE ISIN |
|----------|-------------|-----------|
| 92 000 | LEHMAN BROTHERS TREASUR 7% 2005-35 17MAY | XS0218304458 |
| 150 000 | LEHMAN BROTHERS TRE 4.625% 2007-19 14MAR | XS0287044969 |
| 4 800 000 | LEHMAN BROTHERS 10Y TARGET 6 NOTE 100% | XS0346081481 |
| 2 850 000 | LEHMAN BROTHERS BANKHAUS (10Y ALPHA SEL) | XS0350719380 |
| 3 900 000 | LEHMAN 7Y CAP.PROT. SPA NOTE (METAL SEC) | XS0358400108 |

Philippe HALTER
Corporate & Institutionnal Banking

Virginie GIUNTA
Corporate & Institutional Banking

ING Luxembourg, Société Anonyme          R.C.S. Luxembourg B.6041          T +352 44 99 11 F +352 44 99 12 31
52, route d'Esch L-2965 Luxembourg       TVA LU 11082217  Code Swift CELLLULL   www.ing.lu



## LEHMAN BROTHERS

# Structured Equity Solutions

**PRIVATE BANK SALES**

Lehman Brothers International (Europe)
25 Bank Street
London E14 5LE
United Kingdom

# 10 Year Capital Protected SPA Note linked to the Lehman Brothers ALPHA SELECT 4 Fund

### Indicative Terms and Conditions as of 11 February 2008
*The attention of investors is drawn to Annex 4 – Information Concerning Investment Risk*

| | |
|---|---|
| **Issuer** | Lehman Brothers Bankhaus AG  (A1 / A+ / AA-) |
| **Guarantor** | Lehman Brothers Holdings Inc. (A1 / A+ / AA-) |
| **Arranger** | Lehman Brothers International (Europe) |
| **Issue Type** | Equity-Linked Euro Medium Term Note |
| **Issue Price** | 100% of Specified Denomination |
| **Fees** | The Issuer shall pay fees to such agents (including introducing agents), brokers or third parties for services provided to it in connection with the offer, sale, arrangement, structuring and execution of the Notes Further details are available on request. |
| **Capital Protection** | The Notes are 100% Capital protected at the Maturity Date |
| **Aggregate Nominal Amount** | EUR 2,500,000 |
| **Specified Denominations (SD)** | EUR 50,000 |
| **Trade Type** | Notional |
| **Trade Date** | 14 March 2008 |
| **Issue Date** | 31 March 2008 |
| **Initial Valuation Date** | 31 March 2008 or if such day is not a Common Scheduled Trading Day, the following day which is a Common Scheduled Trading Day |
| **Final Valuation Date** | The Common Scheduled Trading Day following the Final Potential Rebalancing Date, currently expected to be 20 March 2018 |
| **Final Potential Rebalancing Date** | 19 March 2018, or if such date is not a Common Scheduled Trading Day, the next following Common Scheduled Trading Day |
| **Maturity Date** | 6 April 2018, subject to adjustment in accordance with the Modified Following Business Day Convention |

**LEHMAN BROTHERS**



## Structured Equity Solutions

| | |
|---|---|
| **Term** | Means, the period from and including the Initial Valuation Date to and including the Final Potential Rebalancing Date |
| **Underlying** | A Balanced Account comprising of a notional investment of Premium Assets and Riskless Assets as defined in Annex 1 |
| **Final Redemption Amount** | Provided that the Notes are not previously redeemed or cancelled, the Issuer shall pay to the holder of the Notes an amount per Note in EUR on the Maturity Date as determined by the Calculation Agent on the Final Valuation Date in accordance with the following formula: |

$$SD \times \left[ 100\% + Max\left( 0\%; \frac{BAV_{Final}}{BAV_{Initial}} - 100\% \right) \right]$$

Where:

$BAV_{Initial}$ the $BAV_t$ on the Initial Valuation Date as defined in Annex 1 as determined by the Calculation Agent

$BAV_{Final}$ the $BAV_t$ on the Final Valuation Date as defined in Annex 1 as determined by the Calculation Agent

| | |
|---|---|
| **Calculation Agent** | Lehman Brothers International (Europe). The Calculation Agent shall make any determinations required in respect of the Notes in its sole and absolute discretion unless specified otherwise in this termsheet. |
| | Calculations expressed to be made on or as of a date may be made by the Calculation Agent at a later date by reference to the data applicable to such dates. The Calculation Agent shall round numbers as it determines appropriate in the relevant circumstances, and may correct calculations should mistakes be subsequently identified, in its absolute discretion. |
| **Scheduled Trading Days** | With respect to both the Premium Assets and Riskless Asset comprising the Balanced Account: |

(i)    in respect of $Fund_i$, or a Replacement Fund as the case maybe, a day on which the relevant Management Company or the administrator, service provider or other person that generally reports such value on behalf of the relevant Management Company is scheduled to calculate and publish the net asset value for such $Fund_i$, or the Replacement Fund as the case may be; and

(ii)   in respect of a Replacement Index, (A) in the case of a Replacement Index which is a Multi-exchange Index, any day on which: (a) the relevant Index Sponsor is scheduled to publish the level of the index; and (b) the Related Exchange is scheduled to be open for trading for its regular trading session; or (B) in the case of a Replacement Index other than a Multi-exchange Index, any day on which each Exchange and each Related Exchange are scheduled to be open for trading for their respective regular trading sessions; and

(iii)  in respect of the Riskless Asset, any day on which the commercial banks and foreign exchange markets that settle payments are scheduled to be open for general business (including dealings in foreign currency deposits) in London and which are TARGET Settlement Days.

LEHMAN BROTHERS

# Structured Equity Solutions



"**Common Scheduled Trading Day**" means a day which is a Scheduled Trading Day for the relevant Premium Asset and the Riskless Asset

"**Disrupted Day**" means any Common Scheduled Trading Day$_t$:

(i) In respect of the Fund, on which the relevant, Management Company or the administrator, service provider or other person that generally reports the level of the Fund on behalf of the relevant Management Company fails to calculate and/or announce such value; or

(ii) in respect of a Replacement Fund or Replacement Index, as the case maybe, on which such other event as may be notified by the Calculation Agent to Noteholders following the replacement of the Affected Fund by a Replacement Fund or Replacement Index, as the case may be, on or around the relevant Substitution Date occurs; or

(iii) in respect of the Riskless Asset, a day on which commercial banks and foreign exchange markets that settle payments are not open for general business (including dealings in foreign currency deposits) in London and/or on which the TARGET System is not open.

**Consequences of Disrupted Days**

If the Calculation Agent determines that:

(i) any relevant Common Scheduled Trading Day$_t$ during the Term (other than the Final Valuation Date) is a Disrupted Day, then notwithstanding that such Common Scheduled Trading Day is a Disrupted Day, the Calculation Agent shall determine:

> (1) its good faith estimate of BAVt, PAVt and RAVt on such day; and
> (2) whether a Rebalancing Event has occurred or is deemed to have occurred on such Potential Rebalancing Date$_t$ and shall thereafter rebalance the Balanced Account and, in relation to the Premium Assets, shall rebalance at the then available net asset value of the Premium Assets for redemptions or subscriptions, as the case may be.

(ii) the Final Valuation Date is a Disrupted Day, then (subject as provided below) the Final Valuation Date shall be the first succeeding Common Scheduled Trading Day$_t$ that is not a Disrupted Day immediately following the Final Valuation Date, provided that such day shall not be later than, and deemed to be the earlier of (i) the eighth Common Scheduled Trading Day$_t$ and (ii) the day which is the third weekday prior to the Maturity Date (the "**Deemed Date**") notwithstanding the fact that such day is a Disrupted Day; and the Calculation Agent shall determine its good faith estimate of BAVt, PAVt and RAVt on such Deemed Date.

**Valuation Date (t)**

Each Monday during the period from the **Initial Valuation Date** until and including the **Final Potential Rebalancing Date** or if such date is not a Common Scheduled Trading Day, the next following Common Scheduled Trading Day.

**Business Days**

London, TARGET

## LEHMAN BROTHERS

# Structured Equity Solutions



| | |
|---|---|
| **Market Disruption and Extraordinary Events** | Detailed provisions specifying the adjustments to be made to the terms and conditions of the Notes upon the occurrence of a market disruption event, hedging disruption, insolvency, delisting, substitution event and/or such other similar adjustment or extraordinary event shall be contained in the Documentation. All purchases of Notes are deemed to be subject to the terms thereof. |
| **Clearing** | Euroclear, Clearstream |
| **Listing** | Not Applicable |
| **Governing Law** | English Law (the guarantee is governed by New York law) |
| **Selling Restrictions** | In addition to those restrictions provided in the Documentation: |

**European Prospectus Directive Selling Restriction:** As of the date hereof the Notes described in this termsheet have not been approved by any competent authority for the purposes of making a non-exempt public offer in any EEA member state which has implemented Directive 2003/71/EC (the "Prospectus Directive") and as such, until such time as a prospectus has been published, must only be offered within such states in circumstances which do not require the publication of a prospectus pursuant to Article 3 of the Prospectus Directive. These circumstances may include:

Offers to Qualified Investors (as defined in the Prospectus Directive); or

Offers of Notes where the minimum consideration per separate offer is at least Euro 50,000

You are strongly advised to seek appropriate legal advice before attempting to make any offer. In investing in the Notes you represent to Lehman Brothers that you do not intend to make an offer which will breach the Prospectus Directive, or cause Lehman Brothers or the Issuer to be in breach of the Prospectus Directive.

**US Selling Restriction:** The Notes have not been nor will be registered under the U.S. Securities Act of 1933 (as amended) and may not be offered or sold within the United States or to, or for the account or benefit of, U.S. persons except in certain transactions exempt from the registration requirements of the U.S. Securities Act of 1933

**Swiss Selling Restriction:** The Notes have not been nor will be licensed by the Swiss Federal Banking Commission and cannot be publicly offered in Switzerland. Each purchaser of Notes represents that it is qualified investor for the purposes of the Swiss Federal Act on Collective Investment Schemes (the "CISA") and that it will not onsell the Notes except in circumstances which do not constitute public offering under the applicable Swiss provisions..

**General Selling Restriction:** Each purchaser of Notes must observe all applicable laws and regulations in any jurisdiction in which it may offer, sell, or deliver the Notes and it may not, directly or indirectly, offer, sell, resell, re-offer or deliver any Notes except under circumstances that will result, to the best of its knowledge and belief, in compliance with all applicable laws and regulations

| | |
|---|---|
| **Form** | The Notes will be represented by a temporary global note in bearer form which is exchangeable for interests in a permanent global note in bearer form. |
| **Documentation** | This termsheet must be read in conjunction with the Issuer's US$ 100,000,000,000 Base Prospectus dated 24 July 2007, as |

LEHMAN BROTHERS



# Structured Equity Solutions

supplemented as at the Issue Date, as well as the corresponding issue documentation for this specific issue of Notes

**Secondary Market Making**

Lehman Brothers International (Europe) is not required to make a secondary market, but may from time to time make a market in the Notes. Any market making activity initiated by Lehman Brothers International (Europe) may in its sole discretion be discontinued at any time, including due to the existence of any adverse market conditions.

Under normal market conditions, indicative prices of the Notes for information purposes only with a bid-ask spread of no larger than 1% will be published by Lehman brothers International (Europe) on Reuters (Page LBPB) and Bloomberg (Ticker LBPB). Indicative Price does not constitute a firm price which is capable of acceptance and may differ from any price quoted by Lehman Brothers International (Europe) or by any other third party when making a secondary market in the Notes.

Any market making activity initiated by Lehman Brothers International (Europe) will be subject to an early redemption fee which will be deducted for any redemptions in accordance with the following:

(i)     3% for redemptions occurring in year 1;

(ii)    2% for redemptions occurring in year 2;

(iii)    1% for redemptions occurring in year 3; and

(iv)    0%, thereafter.

| Security Identifiers | Valoren | ISIN |
|---|---|---|
| TBD | TBD | TBD |

LEHMAN BROTHERS



# Structured Equity Solutions

**Annex 1: Balanced Account Description and Investment Allocation Mechanism**

**Balanced Account**

The Balanced Account shall be comprised of a notional investment in a dynamic basket of underlying assets comprising Premium Assets and Riskless Assets as defined in this Annex. The Balanced Account may be leveraged (with an associated cost) to maintain a target exposure to Premium Assets. Accordingly, the Liabilities shall be periodically deducted from the value of Balanced Account (as set out in the section below)

The allocation of the Balanced Account's assets between Premium Assets and Riskless Assets and the deduction of the Liabilities in relation to the entering into of a notional credit facility with the associated interest charges and the periodic deduction of a Fixed Rate will be determined by the Calculation Agent from time to time during the Term of the Notes in accordance with the procedures described in the Investment Allocation Mechanism defined in this Annex below.

**Balanced Account Assets and Liabilities**

**Assets**

**(a) Premium Assets:**

Subject to the Substitution Events provisions defined in Annex 2, the performance of shares of the Fund as further outlined in the table below, hereafter named $Fund_{i}$:

| Fund | ISIN | Bloomberg | Basket Weight |
|------|------|-----------|---------------|
| Lehman Brothers Alpha Select 4 Fund ( EUR ) | IE00B1YC8826 | LEHE4AD ID Equity | 100% |

Subject to Fund Substitution Events as further provided herein

A copy of the Fund prospectus has been provided to prospective investors. Further copies are available from the Dealer on request

**(b) Riskless Asset:**

A notional investment of a number of units that is deemed invested as provided herein in EUR denominated synthetic zero-coupon bonds that redeem at 100% on the Final Valuation Date as further described in the definition of Riskless Asset Unit Value below

**Liabilities**

**(c) Premium Assets Leverage ($L_{t}$):**

A notional revolving credit facility provided by a hypothetical credit facility provider which shall be (i) rated with a minimum [long-term] S&P rating of A (or equivalent, as determined by the Calculation Agent) and (ii) incorporated in OECD country

**(d) Premium Assets Leverage Cost ($LC_{t}$)**

Interest shall be accrued on a daily basis in respect of drawdowns made under the notional revolving credit facility

**(e) Fixed Rate (Fixed Rate$_{t}$)**

LEHMAN BROTHERS

# Structured Equity Solutions



|  | An annual compounded percentage that is deducted from the $BAV_t$ on a daily basis. |
|---|---|
| **Balanced Account Unit Value (BAV$_t$)** | In respect of any relevant Common Scheduled Trading Day$_{(t)}$ during the Term of the Notes, other than the Initial Valuation Date, $BAV_t$ shall be a percentage as determined by the Calculation Agent in accordance with the following formula: |

$$BAV_t = \left[PAV_t + RAV_t\right] - \left[FixedRate_t + L_{t-1} + LC_t\right]$$

Where

$BAV_{t=0}$ on the Initial Valuation Date shall be 100%

$PAV_t$ as defined below in this Annex

Fixed Rate$_t$ as defined below in this Annex

$L_t$ as defined below in this Annex

$LC_t$ as defined below in this Annex

|  |  |
|---|---|
| **Allocation of Assets and Liabilities comprising the Balanced Account** | The allocation rules as defined in this Annex govern the composition of the Balanced Account. The Calculation Agent shall determine the composition of the Balanced Account at any time on any Common Scheduled Trading Day$_{(t)}$ during the Term of the Notes by determining (i) the allocation between Premium Assets and Riskless Assets and (ii) any liabilities incurred in relation to the entering into of a notional credit facility with the deduction of any associated interest charges, and (iii) the deduction of a fixed rate |
| **Rebalancing Event** | The Calculation Agent shall rebalance the composition of the Balanced Account following the occurrence of a Rebalancing Event (as defined below). The purpose of rebalancing the composition of the Balanced Account is to seek to maximise the exposure of the Balanced Account to Premium Assets whilst seeking to ensure that a Noteholder receives on the Redemption Date his original investment in the Notes. |
|  | On any Potential Rebalancing Date during the Term of the Notes, a Rebalancing Event occurs or is deemed to occur where the Premium Asset Exposure is different from the Target Exposure as determined by the Calculation Agent. |
|  | Following the occurrence of a Rebalancing Event, the Balanced Account shall be rebalanced (subject to $E_{min}$ and $E_{max}$) on the Common Scheduled Trading Day$_{(t)}$ following the Potential Rebalancing Date on which the Rebalancing Event occurred or is deemed to have occurred, as determined by the Calculation Agent. The Calculation Agent shall rebalance the Balanced Account and in relation to the Premium Assets it shall do so in accordance with the terms below in the definition of Determination of Target Weight$_t$ and Adjusted Weight$_t$ (below) by reference to the then available net asset value of the Premium Assets for redemptions or subscriptions, as the case may be. |
| **Potential Rebalancing Date(t)** | Any **Valuation Date**. |
|  | Provided, however, that the Calculation Agent shall be entitled to |

**LEHMAN BROTHERS**



# Structured Equity Solutions

consider any Common **Scheduled Trading Day** on which the Calculation Agent determines that **the Premium Assets Unit Value** has decreased by more than 10% compared to the **Premium Assets Unit Value** on the previous **Valuation Date**, as if such day were a **Potential Rebalancing Date**.

**Premium Asset Exposure (PAE$_t$)**

On any relevant Potential Rebalancing Date$_{(t)}$ during the Term of the Notes, the actual exposure of the Balanced Account to Premium Assets represented as a percentage as determined by the Calculation Agent on such relevant Potential Rebalancing Date$_{(t)}$ in accordance with the following formula:

$$PAE_t = \left[ \frac{PAV_t}{PAV_t + RAV_t} \right] \times \left[ 1 + \frac{L_{t-1}}{BAV_t} \right]$$

Where

$L_{t-1}$ as defined in this Annex below

PAE$_t$ on the Initial Valuation Date is expected to be around 100% and will be determined by the Calculation Agent on the Initial Valuation Date depending on prevailing market conditions.

**Target Exposure (TE$_t$)**

On any relevant Potential Rebalancing Date during the Term of the Notes, a percentage representing the target Premium Asset Exposure of the Balanced Account as determined by the Calculation Agent in accordance with the following formula:

$$TE_t = \frac{(BAV_t - BF_t)}{BAV_t} \times m \times Min\left[ 100\%; \frac{8\%}{FundVol_t} \right]$$

Where:

> **BF$_t$** means on any Potential Rebalancing Date$_t$ during the Term of a percentage as determined by the Calculation Agent in accordance with the formula below:

$$BF_t = 80\% + 20\% \times \frac{d_t}{d_T}$$

Where

$d_t$ means the number of calendar days from, and including, the Initial Valuation Date, up to, and including the relevant Potential Rebalancing Date$_t$

$d_T$ means the number of calendar days from, and including, the Initial Valuation Date, up to and including the Final Valuation Date

m: 5

LEHMAN BROTHERS



# Structured Equity Solutions

FundVol$_t$ means, on any Potential Rebalancing Date during the Term of the Notes, the 40-day annualized standard deviation realized by the underlying Fund during the 40-Common Scheduled Trading Day period from and including the Common Scheduled Trading Day$_{t-40}$, up to and including the Common Scheduled Trading Day$_{t-1}$, as determined by the Calculation Agent in accordance with the following formula:

$$ETFVol_t = \sqrt{\frac{N}{n}\sum_{i=t-n}^{t}\left[\ln\left(\frac{PremiumAsset_i}{PremiumAsset_{i-1}}\right)\right]^2}$$

N="252"

n="39"

**Determination of Target Weight$_t$ and Adjusted Weight$_t$**

In respect of any Potential Rebalancing Date$_{(t)}$ during the Term of the Notes, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$Target\ Weight_t = Max[E_{min};\ Min\ [\ TE_t\ ;\ E_{Max}\ ]\ ]$$

Where

$E_{min}$ (Minimum Premium Assets Exposure)   20%

$E_{max}$ (Maximum Premium Assets Exposure)  200%

Having established *Target Weight$_t$*, the Calculation Agent shall rebalance the weighting of Premium Asset and of the Riskless Asset on the Common Scheduled Trading Day next following the relevant Potential Rebalancing Date on which the Rebalancing Event has occurred (or is deemed to have occurred), and determine the **AdjustedWeight$_t$** applicable to the Premium Asset, taking into account its determination of the loss or gain which it would observe during the Balanced Account Rebalancing Period (as defined below) between a perfect theoretical hedge and Hedging Activities, expressed as a percentage, due to the difference between:

(i)    the published net asset value of Fund$_i$ used to determine each relevant Rebalancing Event;

(ii)    the net asset value of Fund$_i$ at which subscriptions and/or redemptions (as applicable) could be executed when implementing Hedging Activities related to the relevant Rebalancing Event, in the amount required by a hypothetical investor having the characteristics of the Hedging Party; and

Consequently, the *AdjustedWeight$_t$* may be greater or smaller than the *Target Weight$_t$*.

"**Balanced Account Rebalancing Period**" means the period between:

LEHMAN BROTHERS

# Structured Equity Solutions



(a) the date relating to the net asset value per share of Fund$_i$ used to determine the relevant Rebalancing Event;

(b) the date on which subscriptions or redemptions, as applicable, could reasonably be requested by the Hedging Party as determined by the Calculation Agent, taking into account the notice periods for subscription or redemption orders, as applicable for Fund$_i$ at the relevant time;

**Premium Assets Value (PAV$_t$)**

**PAV$_t$** on the Initial Valuation Date shall be 100%

In respect of any subsequent Potential Rebalancing Date$_t$ during the Term of the Notes, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$PAV_t = AdjustedWeight_{t-1} \times BAV_{t-1} \times \left[ \frac{PAUV_t}{PAUV_{t-1}} \right]$$

Where

PAUV$_t$ as defined below in this Annex

**Premium Assets Unit Value (PAUV$_t$)**

PAUV$_t$ on the Initial Valuation Date shall be 100%

In respect of any Potential Rebalancing Date$_{(t)}$ during the Term of the Notes other than the Initial Valuation Date, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$PAUV_t = \frac{NAV_t}{NAV_{initial}}$$

Where

NAV$_t$ is as defined below and

NaV$_{initial}$ means the net asset value of Fund$_i$ on the Initial Valuation Date, as determined by the Calculation Agent.

**Net Asset Value$_t$ (NAV$_t$)**

In respect of the Premium Asset and a Potential Rebalancing Date$_{(t)}$ during the Term of the Notes, in respect of Fund$_i$ or Replacement Fund, the net asset value per share or unit of such Fund$_i$ or Replacement Fund, as applicable, as calculated and published by the Management Company or the administrator, service provider or other person that generally reports such value on behalf of the Management Company to its investors or a publishing service on such Potential Rebalancing Date$_{(t)}$ as determined by the Calculation Agent.

## LEHMAN BROTHERS

# Structured Equity Solutions



---

**Riskless Asset Value (RAV$_t$)**

$RAV_t$ on the Initial Valuation Date shall be 0%.

In respect of any subsequent Potential Rebalancing Date$_t$ during the Term of the Notes, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$RAV_t = Max[0, 1 - \mathrm{T\,arg}\,etWeight_{t-1}] \times BAV_{t-1} \times \left[ \frac{RAUV_t}{RAUV_{t-1}} \right]$$

Where;

***RAUV$_t$*** as defined below

---

**Riskless Asset Unit Value (RAUV$_t$)**

In respect of each Potential Rebalancing Date "t" during the Term, the present value of a Riskless Asset as of that Potential Rebalancing Date "t", expressed as a percentage determined by the Calculation Agent equal to the price (expressed as a proportion of the nominal value of the Aggregate Nominal Amount of the Notes) at which the Calculation Agent determines that a hypothetical issuer would issue a zero-coupon EUR-denominated bond maturing at par with an aggregate nominal amount equal to the Aggregate Nominal Amount of the Notes on the Final Potential Rebalancing Date, using the prevailing rates at or about [11:00 a.m., London time,] on such Potential Rebalancing Date "t". [The price shall be calculated on the basis that such hypothetical issuer would on such Potential Rebalancing Date "t" enter into an on-market swap with a recognised swap dealer as determined by the Calculation Agent in its sole and absolute discretion with an effective date two TARGET Settlement Days following such day under which the hypothetical issuer would pay a quarterly floating amount for a period commencing on, and including, such Potential Rebalancing Date "t" and ending on, and including, the Final Potential Rebalancing Date, based on the EUR-LIBOR-BBA Floating Rate Option ( (published on the Reuters Screen LIBOR01 Page) of three months, on the issue price of such bond and would receive on the Final Valuation Date 100 per cent. of the bond's aggregate nominal amount.] If the rate does not so appear on the relevant Screen, the applicable rate shall be determined by the Calculation Agent acting in a commercially reasonable manner

---

**Fixed Rate (Fixed Rate$_t$)**

In respect of any relevant **Potential Rebalancing Date$_{(t)}$** during the Term of the Notes, a percentage as determined by the Calculation Agent equal to the product (i) 2% p.a. (ii) $BAV_{t-1}$ and (iii) Actual/360

The Fixed Rate$_t$ shall accrue daily and shall be deducted on each **Potential Rebalancing Date$_{(t)}$** in arrears, from and including the Initial Valuation Date to and including the Final Valuation Date.

Where:

Actual/360 means, the actual number of calendar days in the relevant Calculation Period divided by 360 as determined by the Calculation

## LEHMAN BROTHERS

# Structured Equity Solutions



Agent

Calculation Period means, in respect of the determination of a Fixed Rate$_t$ and a Potential Rebalancing Date$_t$, the period from including the **Potential Rebalancing Date**$_{(t)-1}$ immediately preceding such Potential Rebalance Date$_t$ to and including such **Potential Rebalancing Date**$_t$

**Premium Assets Leverage (L$_t$)**

If on any relevant **Potential Rebalancing Date**$_{(t)}$ during the Term of the Notes, the Premium Assets Exposure (or if a Rebalancing Event occurs, the Target Exposure) exceeds 100%, then a notional revolving credit facility shall be provided by a hypothetical credit facility provider which shall be (i) rated with a minimum S&P rating of A (or equivalent) and (ii) incorporated in OECD country for the purpose of investing in Premium Assets comprising the Balanced Account

L$_t$ on any **Potential Rebalancing Date**$_{(t)}$ during the Term of the Notes, shall be a percentage as determined by the Calculation Agent in accordance with the following formula:

$$L_t = BAV_t * Max\left(T\arg etWeight_t - 100\%; 0\right)$$

**Premium Assets Leverage Cost (LC$_t$)**

In respect of any L$_{t-1}$ greater than zero and Potential Rebalancing Date$_{t-1}$, interest shall notionally accrue from the date on which L$_t$ was first determined by the Calculation Agent to be greater than zero. LC$_t$ and shall be expressed as a percentage and determined by the Calculation Agent on each subsequent Potential Rebalancing Date$_t$ in accordance with the following formula:

$$LC_t = L_{t-1} \times R_{t-1} \times \frac{Calculati\ on\ Period}{DCD}$$

Where:

**L$_0$** on the Initial Valuation Date is equal to 0%

**R$_t$** means, in respect of any **Potential Rebalancing Date**$_{(t)}$ during the Term of the Notes, the interest rate, determined by the Calculation Agent, to be applied to the Premium Assets Leverage Cost from, but excluding, the relevant **Potential Rebalancing Date**$_{(t-1)}$ on which the Premium Assets Leverage was first determined by the Calculation Agent to be greater than zero (or the Initial Valuation Date, as the case may be) to, and including, such **Potential Rebalancing Date**$_{(t)}$. "R$_{t-1}$" shall be determined by the Calculation Agent on such **Potential Rebalancing Date**$_{(t-1)}$ on the basis of the prevailing Euribor 1 Week rate for deposits in EUR published on the Bloomberg page "**EUR001W Index**", at or around 11:05 a.m. London time plus a spread of 0.50% or, if such rate is not available on such date or at that time, the Calculation Agent, acting in a commercially reasonable manner, shall determine "R$_{t-1}$" on the basis of other available rates for deposits in EUR plus the above mentioned spread).

**Calculation Period** means, in respect of the determination of a Premium Assets Leverage Cost and a Potential Rebalancing Date$_t$, the actual number of calendar days in the period from including the **Potential Rebalancing Date**$_{(t)-1}$ immediately preceding such Potential Rebalancing Date$_t$ to and including **Potential Rebalancing Date**$_{(t)}$

LEHMAN BROTHERS

# Structured Equity Solutions



**DCD** means a day count denominator, being 360

LEHMAN BROTHERS

## Structured Equity Solutions



### Annex 2 –Substitution Events

**Substitution by Replacement Fund or Replacement Index**

**Substitution by Replacement Fund or Replacement Index:**

(1) Upon the occurrence of a merger event, an insolvency, a de-listing, where applicable or a Substitution Event in respect of Fund; (the "**Affected Fund**"), as the case may be during the Term of the Notes, the Calculation Agent may either: (i) select acting in a commercially reasonable manner, an alternative investment fund, sub-fund(s) of an umbrella investment fund or such share classes thereof, provided that (i) the selected fund qualifies as a UCITS III fund and (ii) the relevant sub-fund of such UCITS III fund has an investment policy similar to the investment policy of the fund or sub-fund replaced and (iii) the fund or its relevant sub-fund are in compliance with such other criteria as may be required by the *Commissariat aux Assurances* at the applicable Substitution Date (a "**Replacement Fund**"), managed by the Management Company, an affiliate thereof or an alternative investment manager to replace the Affected Fund deemed acceptable to the Calculation Agent to replace the Affected Fund; such replacement to take effect on the Substitution Date (as defined below), or (ii) select acting in a commercially reasonable manner, an Index or a basket of Indices, (a "**Replacement Index**") which should have a similar coverage as the Affected Fund that it determines to be appropriate taking into account the relevant investment objectives of the relevant Fund;; such replacement to take effect on the Substitution Date (as defined below), or (iii) procure the Issuer to cancel the Notes by giving notice to the Noteholders within 8 Business Days from the date of such notice.

If the Calculation Agent elects to select a Replacement Fund or Replacement Index, the relevant Replacement Fund or Replacement index, as the case may be, shall be denominated in the currency selected by the Calculation Agent, will be of a similar performance and quality (in the determination of the Calculation Agent) to the Affected Fund and will have similar investment objectives and policies to that of the Affected Fund.

If the Calculation Agent elects to procure the Issuer to cancel the Notes, the Issuer will pay an amount to the Noteholders in respect to each Note held by such Noteholder which amount shall be the fair market value of the Note, taking into account the occurrence of the above mentioned events less the costs to the Issuer and / or any of its affiliates of unwinding any related hedging arrangements or transactions, all as determined by the Calculation Agent.

(2) Following selection of the relevant Replacement Fund or Replacement index by the Calculation Agent, the Calculation Agent shall notify holders of Notes of the same, in such manner as is reasonably practicable.

(3) Following selection of the Replacement Fund or Replacement Index by the Calculation Agent, the relevant Replacement Fund or Replacement Index, as the case may be, shall replace the relevant Affected Fund on the relevant Substitution Date and the Calculation Agent shall make any corresponding adjustment(s) that it determines, acting in a commercially reasonable manner, to be appropriate to any variable, calculation or valuation methodology or any other terms relevant to Notes to account for such replacement.

Following the Substitution Date, references herein to "Fund" shall be deemed to be references to the replacement Replacement Fund or Replacement Index (as applicable), related references to the NAV shall be deemed to by references to the net asset value of the Replacement Fund or the official closing level for a Replacement Index, and construed by the Calculation Agent accordingly for all determinations in respect of the Notes

LEHMAN BROTHERS



## Structured Equity Solutions

**"Substitution Date"**: Means such date selected by the Calculation Agent for the replacement of the relevant Fund$_i$ or Replacement Fund, as the case may be.

**"Management Company"** means, in respect of the Fund, as set out in Part A or any successor thereto acceptable to the Calculation Agent. In respect of a Replacement Fund, the entity or entities responsible for managing such fund at such time.

**Substitution Events**

(1) The main investment objective of such Fund$_i$ or Replacement Fund, as the case may be, is amended in accordance with its rules so that it no longer refers solely to the benchmark as set out in the constitutive documents and/or prospectus in respect of such Fund$_i$ on the Trade Date or in the case of a Replacement Fund Substitution Date,

(2) The currency denomination of such Fund$_i$, or Replacement Fund,as the case may be, is amended in accordance with its rules so that the Net Asset Value of such Fund$_i$ or Replacement Fund on any Common Scheduled Trading Day is no longer calculated in the same currency as at Initial Valuation Date (or Substitution Date, in the case of a Replacement Fund);

(3) The Issuer, its affiliates or any other designated hedging entity would be required to pay a subscription fee in respect of a purchase of units/shares of such Fund$_i$ or Replacement Fund or a redemption fee in respect of a sale of units/shares of such Fund$_i$ or Replacement Fund in relation to their hedging activities in respect of the issue of the Notes;

(4) The relevant Management Company or the administrator, service provider or other person that generally calculates and/or reports the net asset value on behalf of the relevant Management Company in respect of such Fund$_i$ or Replacement Fund fails for reasons other than of technical or operational nature to calculate and publish the Net Asset Value of a Fund$_i$ or Replacement Fund for eight consecutive Common Scheduled Trading Days and the reason for such failure is as a consequence of any decision to liquidate or dissolve such Fund$_i$ or Replacement Fund;

(5) The activities of such Fund$_i$ or Replacement Fund or its Management Company is placed under review by any governmental, legal or regulatory entity for reasons of wrongdoing, breach of any rule or regulation or other similar reason;

(6) There is any change in the regulatory or tax treatment applicable with respect to the holding, purchase and/or sale of units/shares of such Fund$_i$ or Replacement Fund which could have an economic impact for the Issuer, its affiliates or any other designated hedging entity as a holder of an interest in such Fund or Replacement Fund;

(7) Any suspension of, mandatory redemption, limitation of or restriction of (including but not limited to the imposition of a minimum notice period in redeeming or subscribing in units/shares in the Fund$_i$ or Replacement Fund) (in the opinion of the Calculation Agent) limitation imposed on trading of such Fund$_i$ or Replacement Fund (by reason of liquidity restrictions or otherwise) if, in any such case, such suspension or limitation is, in the determination of the Calculation Agent, material;

LEHMAN BROTHERS



## Structured Equity Solutions

(8) The Issuer, its affiliates or any other designated hedging entity would be obliged (whether by the relevant Management Company or otherwise) to redeem all or some of the units/shares of such Fundi or Replacement Fund that it is holding in relation to its hedging activities in respect of the issue of the Notes.

(9) The annualized Volatility of the Fund or Replacement Fund exceeds the percentage prescribed by any applicable law, regulation or in the constitutive documents or prospectus of such Fund or Replacement Fund for a one-month rolling window. "Volatility" for the purposes of this definition is a given time window, as of any date of determination and with respect to the Fund or Replacement Fund, the annualized standard deviation of the monthly percentage changes in the net asset value of the Fund or Replacement Fund as calculated and published by the relevant Management Company  or the administrator, service provider or other person that generally reports such value on behalf of the relevant Management Company to its investors or a publishing service on each Common Scheduled Trading Day during the particular time window preceding such date of determination, expressed as a percentage, as determined by the Calculation Agent.

(10) The Fund or Replacement Fund, as the case may be, materially breaches the investment restrictions / investment guidelines as set out in the constitutive documents and/or prospectus in respect of such Fund or Replacement Fundi;

(11) The Management Company of the Fund or Replacement Fund, as the case may be, ceases to act in the capacity of administrator or investment manager of such Fund or Replacement Fund and a replacement administrator or investment manager is not appointed immediately and/or is not acceptable to the the Issuer, its affiliates or any other designated hedging entity;

(12) The occurrence of an event where, by reason of the voluntary or involuntary liquidation, bankruptcy, insolvency, dissolution or winding-up of or any analogous proceeding affecting the Fund or a Replacement Fund, (i) all the shares and/or units of such Fund are required to be transferred to a trustee, liquidator or other similar official or (ii) holders of the shares and/or units of the relevant Fund become legally prohibited from transferring or redeeming them ;and

(13) The occurrence of any event or change affecting the Fund or Replacement Fund, as the case may be, which, in the reasonable opinion of the the Issuer, its affiliates or any other designated hedging entity is likely to have a material negative impact on the net asset value of such Fund or Replacement Fund

LEHMAN BROTHERS

# Structured Equity Solutions



## Annex 3 –Definitions

Terms in this termsheet shall have the following meaning:

**Exchange**    Means:

(i) In respect of Fund$_i$, not applicable

(ii) In respect of each Replacement Fund or Replacement Index, as determined by the Calculation Agent and Noteholders on the relevant Substitution Date

**Related Exchange**

Means:

(i) In respect of Fund$_i$, not applicable

(ii) In respect of each Replacement Fund or Replacement Index, as determined by the Calculation Agent and Noteholders on the relevant Substitution Date

**Scheduled Closing Time**

Means, in respect of a Replacement Index and in respect of a relevant Exchange or Related Exchange and a Common Scheduled Trading Day, the scheduled weekday closing time of such relevant Exchange or Related Exchange on such Common Scheduled Trading Day, without regard to after hours or any other trading outside of the regular trading session hours

**Valuation Time**

Means:

(i) In respect of Fund$_i$, or Replacement Fund, not applicable; and

(ii) In respect of a Replacement Index, (A) in respect of a Multi-exchange Index, (i) for the purposes of determining whether a Market Disruption Event has occurred: (a) in respect of any component security, the Scheduled Closing Time on the Exchange in respect of such component security, and (b) in respect of any options contracts or future contracts such Multi-exchange Index, the close of trading on the Related Exchange; and (ii) in all other circumstances, the time at which the official closing level of such Muti-exchange Index is calculated and published by the Index Sponsor; and (B) in respect of any Replacement Index other than a Multi-exchange Index, the Scheduled Closing Time on the relevant Exchange.

"Multi-exchange Index" means an index which is comprised of securities listed on more than one exchange or quotation system and which the Calculation Agent determines is a multi-exchange index at the relevant Substitution Date

LEHMAN BROTHERS

## Structured Equity Solutions



**Annex 4**
**Information Concerning Investment Risk**

*General*

**The attention of investors is drawn to the section of the Base Prospectus headed "Risk Factors"**

**Prospective purchasers of Notes should ensure that they understand the nature of the Notes and the extent of their exposure to risk and that they consider the suitability of the Notes as an investment in the light of their own circumstances, financial condition and taxation. Prospective investors should also have regard to the prospectus for the Premium Assets and particularly the risks associated with an investment in the Fund**

*Although the Notes are 100% capital protected at the Maturity Date, the performance of the Fund or a Replacement Fund or Index may affect the nature and value of the investment return on the Notes. In particular, the value of the Notes may fluctuate based on the performance of the Fund so that in certain circumstances the Final Redemption Amount may be less than the original purchase price paid for the Notes.*

*Prospective purchasers of Notes should conduct their own investigations and, in deciding whether or not to purchase Notes and form their own views of the merits of an investment related to the Fund based upon such investigations and not in reliance on any information given in these indicative terms.*

Given the highly specialised nature of these Notes, the Issuer and the Guarantor consider that they are only suitable for highly sophisticated investors who are able to determine themselves the risk of an investment linked to the Fund.

Consequently, if you are not an investor who falls within the description above you should not consider purchasing these Notes without taking detailed advice from a specialised professional adviser.

*Factors affecting the Fund and the Redemption Amount under the Securities*

Prospective investors of the Securities should be familiar with investments in the global capital market and with derivatives and Funds generally. The value of the Securities can be volatile. Changes in the net asset value of units/shares of the Fund may result in sudden and large fluctuations in the value of the Securities. The NAV may vary over time and may increase or decrease by reference to a variety of factors, which may include, but are not limited to, corporate actions and macro economic factors.

The Final Redemption Amount is 100% capital protected. Any additional return at the Maturity Date is variable and dependant upon certain factors which include the NAV on the Final Valuation Date (or such other date as may be specified in the Termsheet for the calculation of the Final Redemption Amount). Prospective investors of Securities should understand that in certain circumstances the redemption amount may be less than the original price paid for the Securities and in some circumstances may even be nil.

Although the Notes are capital protected at the Maturity Date, Prospective investors should note that such capital protection only applies if the Notes are held until the Maturity Date. If the Notes are redeemed early or are sold or otherwise disposed of before the Maturity Date the redemption amount may be less than the Issue Price and may even be nil.

*Hedging Disruption, Fund Substitution Event and Index Substitution Event*

Following the occurrence of a Fund Substitution Event or Index Adjustment Event, the Calculation Agent may elect either to instruct the Issuer to redeem the Notes or to replace the Fixed Income Fund with a Replacement Fund or a Replacement Index. Prospective investors should note that the original profile of the Premium Assets may therefore be altered and that such alteration may have an adverse effect on the value of the Notes.

The events constituting a Fund Substitution Event are set out herein and may include (amongst other things) an event whereby the Issuer, its affiliates or any other designated hedging entity (a "**Hedging Party**") would be obliged (whether by the relevant Management Company or otherwise) to redeem all or some of the units/shares of such Fixed Income Fund or Replacement Fund (or Constituent Funds) that it is holding in relation to its hedging activities; for example, in the event that the aggregate shareholding in the Fund by the Hedging Party exceeds 50% of the total assets of such Fund, the Hedging Party may be obliged to redeem some or all of the fund shares.

LEHMAN BROTHERS

## Structured Equity Solutions



If the Calculation Agent instructs the Issuer to redeem the Notes following a Fund Substitution Event, Index Adjustment Event or Hedging Disruption, the amount payable to a Noteholder will be based on the fair market value of the Notes, as determined by the Calculation Agent and may be reduced by an amount referable to the cost to the Issuer of unwinding any related Hedging Activities in respect of the Notes.

*Early Redemption of the Securities as a result of changes in taxation or event of default in accordance with the Terms and Conditions*

In the event that the Issuer or the Guarantor would be obliged to increase the amounts payable in respect of any Securities due to any withholding or deduction for or on account of, any present or future taxes, duties, assessments or governmental charges of whatever nature imposed, levied, collected, withheld or assessed by or on behalf of The Netherlands or the USA, as the case may be, or any political subdivision thereof or any authority therein or thereof having power to tax, or following an event of default, the Issuer may redeem all outstanding Securities in accordance with the Terms and Conditions contained in the Documentation at an amount which will be based on the fair market value of the Notes, as determined by the Calculation Agent less an amount referable to the cost to the Issuer of unwinding any related hedging arrangements in respect of the Notes,

*Rebates and other payments in respect of hedging activities*

The Hedging Party may be entitled to receive rebates or other payments in respect of the asset(s) that it may hold from time to time for the purposes of hedging the equity or other price risk for the Issuer's issuing and payment obligations in respect of the Notes. The Hedging Party may retain such amounts for its own account.

In the event of early redemption for any reason, a holder of Securities (a "**Noteholder**") may not be able to reinvest the redemption proceeds in a comparable security and receive a return on investment which is as high as that of the Securities. The Issuer is not liable for any disadvantage a Noteholder may incur in respect of the new investment or non-investment of its capital.

*Issue Price*

The Issue Price in respect of the Securities may not be an accurate reflection of the market value of such Securities as at the Issue Date. The price at which the Securities may be sold in secondary market transactions may be lower than the Issue Price. In particular, the Issue Price in respect of the Securities may take into account, amongst other things, the fees payable to introducing agents, brokers and structurers of the Securities with respect to the structuring and/or the offer and sale of the Securities.

*Secondary market and liquidity for the Securities*

There can be no assurance as to how the Securities will trade in the secondary market, whether there will be a secondary market or, if a secondary market exists, whether such market will be sustainable or liquid or illiquid.

Where it is specified that an application has been made for admission of the Securities to a stock exchange, no assurance can be given that the Securities will in fact be listed or traded or, if the Securities are so listed or traded, that such listing or trading will be maintained and whether there will be a secondary market for any Securities so listed or traded. If the Securities are not listed or traded on any stock exchange, pricing information for such Securities may be more difficult to obtain, and the liquidity and market prices of such Securities may be adversely affected.

The liquidity of the Securities may also be affected by restrictions, if any, on offers and sales of the Securities in some jurisdictions. In any case, due to the relative complexity and lower liquidity of the Securities if compared to more conventional financial instruments such as shares, comparatively larger spreads between bid and ask quotes should be expected.

*Creditworthiness of the Issuer and Guarantor*

Any person who purchases the Securities is relying upon the creditworthiness of the Issuer and the Guarantor and has no rights against any other person. The Securities constitute general, unsecured, unsubordinated, contractual obligations of the Issuer and of no other person. The Securities rank pari passu among themselves.

*Time Lag in respect of rebalancings of the Balanced Account*

LEHMAN BROTHERS



## Structured Equity Solutions

The Calculation Agent shall rebalance the account on the Common Scheduled Trading Day next following the relevant Potential Rebalancing Date on which the Rebalancing Event has occurred or is deemed to have occurred, and in each case, the Calculation Agent shall rebalance the Balanced Account by reference to the most recently available NAV of the Fund.

### Potential conflicts of interest

The Issuer, the Guarantor, the Dealer, the Calculation Agent, the Arranger, the Management Company and/or their respective subsidiaries may, from time to time, engage in purchase, sale or other transactions involving the units of the Fund or related derivatives for their proprietary accounts and/or for accounts under their management and/or for clients. Such transactions may have a positive or negative effect on the NAV and consequently on the value of the Securities. In addition, the Issuer, the Guarantor, the Dealer, the Calculation Agent Arranger, the Management Company and/or their respective subsidiaries may, from time to time, act in other capacities with regard to the Securities (such as in an agency capacity and/or as the calculation agent) and may issue or participate in the issue of other competing financial instruments in respect of the Fund and the introduction of such competing financial instruments may affect the value of the Securities. The Issuer, the Guarantor, the Dealer, the Calculation Agent Arranger, the Management Company and/or their respective subsidiaries owe no duty or responsibility to any Noteholder (or any other party) to avoid such conflicts.

In connection with the offering of the Securities, the Issuer, the Guarantor, the Dealer, the Calculation Agent, the Arranger, the Management Company and/or their respective subsidiaries may enter into one or more hedging transactions with respect to the Fund or related derivatives. In connection with such hedging or with respect to proprietary or other trading activities by the Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries, the Issuer, the Guarantor, the Dealer, the Calculation Agent and/or their respective subsidiaries may enter into transactions in relation to the Index, Component Securities or related derivatives which may affect the market price, liquidity or value of the Securities and which could be deemed to be adverse to the interests of the relevant Noteholders.

You should note that potential and actual conflicts of interest might arise from the different roles played by Lehman Brothers in connection with the Notes which may affect the value of the Securities. The Issuer, the Guarantor, the Dealer, the Calculation Agent, Arranger, the Management Company and/or their respective subsidiaries owe no duty or responsibility to any Noteholder (or any other party) to avoid such conflicts.

### Determinations by the Calculation Agent

The Calculation Agent has certain discretions to determine whether certain events have occurred. Prospective investors should be aware that any determination made by the Calculation Agent may have an adverse effect on the value of the Securities. For example, the Calculation Agent may determine that a Market Disruption Event has occurred or exists at a relevant time which may affect the determination of the price of the Shares on a relevant Common Scheduled Trading Day and/or may delay settlement in respect of the Securities. Any such discretion exercised by, or any calculation made by, the Calculation Agent (in the absence of manifest error) shall be binding.

### Adjustments

The Calculation Agent may adjust the terms of the Securities in the case of a Potential Adjustment Event, Hedging Disruption, Merger Event, Tender Offer, Nationalisation, Insolvency or Delisting. In addition, the Calculation Agent may determine that a Fund Substitution Event has occurred in respect of a Fund. Such adjustment may have an adverse impact on the value of the Securities. Any such discretion exercised by, or any calculation made by the Calculation Agent (in the absence of manifest error) shall be binding.

### Risk-excluding or risk-limiting transactions

Prospective investors may not rely upon being able to enter into transactions, which may exclude or limit loss exposure to the Securities during the term of the Securities. The possibility of entering into risk-excluding or risk-limiting transactions depends in particular on market conditions and the relevant underlying circumstances. Noteholders may be able to enter into such transactions only at an unfavourable market price resulting in an additional loss for such Noteholders.

Prospective investors intending to purchase Securities to hedge the market risk associated with investing in the Shares should be aware of the difficulties associated therewith. For example, the value of the Securities may not exactly correlate with the value of the Shares.

LEHMAN BROTHERS

# Structured Equity Solutions



*Because the Global Securities are held by or on behalf of Euroclear and Clearstream, Luxembourg, investors will have to rely on their procedures for transfer, payment and communication with the Issuer.*

The Securities will be represented by one or more Global Notes. Such Global Notes will be deposited with a common depositary for Euroclear and Clearstream, Luxembourg. Except in the circumstances described in the relevant Global Note, investors will not be entitled to receive definitive Notes. Euroclear and Clearstream, Luxembourg will maintain records of the beneficial interests in the Global Notes. While the Notes are represented by one or more Global Notes, investors will be able to trade their beneficial interests only through Euroclear and Clearstream, Luxembourg.

While the Securities are represented by one or more Global Notes, the Issuer will discharge its payment obligations under the Securities by making payments to the common depositary for Euroclear and Clearstream, Luxembourg for distribution to their account holders. A holder of a beneficial interest in a Global Note must rely on the procedures of Euroclear and Clearstream, Luxembourg to receive payments under the Securities. The Issuer has no responsibility or liability for the records relating to, or payments made in respect of, beneficial interests in the Global Notes.

Holders of beneficial interests in the Global Notes will not have a direct right to vote in respect of the relevant Global Notes. Instead, such holders will be permitted to act only to the extent that they are enabled by Euroclear and Clearstream, Luxembourg to appoint appropriate proxies. Similarly, holders of beneficial interests in the Global Notes will not have a direct right under the Global Notes to take enforcement action against the Issuer in the event of a default under the Global Notes but will have to rely upon their rights under the deed of covenant dated 24 July 2007 (as amended, supplemented or replaced from time to time), executed by Lehman Brothers Holdings Inc. ("**LBHI**"), Lehman Brothers Treasury Co. B.V. ("**LBTCBV**") and Lehman Brothers Bankhaus AG ("**LBB**").

*Factors Affecting the Indices*

Prospective investors of Securities should be familiar with investments in global capital markets and with indices generally. The level of an index is based on the value of the assets comprised in such index although prospective investors should note that the level of the Index at any time will not include the reinvestment of the yield on the assets comprised in the Index. Prospective investors should understand that global economic, financial and political developments, among other things, may have a material effect on the value of the assets comprising the Index and/or the performance of the Index.

*Dividends*

Prospective investors should also note that, unless specifically provided for, dividends paid to holders of the assets comprised in an Index or in respect of a fund will not be paid to the Issuer or to the Noteholders. In these circumstances the return on the Securities will thus not reflect any dividends which would be paid to investors that have made a direct investment in the assets comprised in the Index or in shares/units of the fund. Consequently, the return on the Securities may be less than the return from a direct investment in the assets comprised in the Index or a direct investment in shares/units of a fund.

*Fund Valuations*

The valuation of a fund is generally controlled by the relevant Management Company. Valuations are performed in accordance with the terms and conditions governing the fund. Such valuations may be based upon the unaudited financial records of a relevant fund and any accounts pertaining thereto. Such valuations may be preliminary calculations of the Net Asset Values of the fund and accounts. A fund may hold a significant number of investments which are illiquid or otherwise not actively traded and in respect of which reliable prices may be difficult to obtain. In consequence, the relevant Management Company may vary certain quotations for such investments held by a Fund in order to reflect its judgement as to the fair value thereof. Therefore, valuations may be subject to subsequent adjustments upward or downward. Uncertainties as to the valuation of the fund's assets and/or accounts may have an adverse effect on the Net Asset Value of such fund where such judgements regarding valuations prove to be incorrect.

*Investment Risks pertaining to the funds*

A fund and any components thereof in which it may invest may utilise (inter alia) strategies such as short-selling, leverage, securities lending and borrowing, investment in sub-investment grade or non-readily realisable investments, uncovered options transactions, options and futures transactions and foreign exchange transactions and the use of concentrated portfolios, each of which could, in certain circumstances, magnify adverse market developments and losses. The Fund, may make investments in emerging market countries, markets that are

LEHMAN BROTHERS



# Structured Equity Solutions

volatile and/or illiquid and it may be difficult or costly for positions therein to be opened or liquidated. The Fund may by take exposure to collective investment schemes through either direct investments or the use of financial derivative instruments. There can be no assurance, however, that the Portfolio will be able to meet its stated investment objectives. No assurance can be given relating to the present or future performance of a Fund. The performance of a fund and any component in which it may invest is dependent on the performance of the relevant management company in selecting components. No assurance can be given that the relevant management company will succeed in meeting the investment objectives of the relevant fund, that any analytical model used thereby will prove to be correct or that any assessments of the short-term or long-term prospects, volatility and correlation of the types of investments in which a fund has or will invest will prove accurate.

*Risks related to Funds*

The valuation of a Fund is generally controlled by the relevant fund manager, administrator or the investment adviser (as the case may be) of such Fund. Valuations are performed in accordance with the terms and conditions governing the relevant Fund. Such valuations may be based upon the unaudited financial records of the relevant Fund, the net asset value and any accounts pertaining thereto. Such valuations may be preliminary calculations of the net asset values of the relevant Fund and accounts. A Fund may hold a significant number of investments which are illiquid or otherwise not actively traded and in respect of which reliable prices may be difficult to obtain. In consequence, the relevant fund manager or the investment adviser may vary certain quotations for such investments held by the relevant Fund in order to reflect its judgement as to the fair value thereof. Therefore, valuations may be subject to subsequent adjustments upward or downward. Uncertainties as to the valuation of the relevant Fund assets and/or accounts may have an adverse effect on the net asset value of the relevant Fund where such judgments regarding valuations prove to be incorrect.

A Fund and any assets in which such Fund may invest may utilise (inter alia) strategies such as short-selling, leverage, securities lending and borrowing, investment in sub-investment grade or non-readily realisable investments, uncovered options transactions, options and futures transactions and foreign exchange transactions and the use of concentrated portfolios, each of which could, in certain circumstances, magnify adverse market developments and losses. Funds, and any Fund components in which it may invest, may make investments in markets that are volatile and/or illiquid and it may be difficult or costly for positions therein to be opened or liquidated. No assurance can be given relating to the present or future performance of any Fund and any Fund component in which it may invest. The performance of each Fund and any Fund component in which it may invest is dependent on the performance of the Fund managers in selecting Fund components and management in respect of the Fund components. No assurance can be given that these persons will succeed in meeting the investment objectives of the relevant Fund, that any analytical model used thereby will prove to be correct or that any assessments of the short-term or long-term prospects, volatility and correlation of the types of investments in which a Fund has or may invest will prove accurate.

LEHMAN BROTHERS



# Structured Equity Solutions

**Disclaimer:**

This term sheet is indicative only if so specified, in which case this term sheet will be subject to change without notice and no assurance is given that any transaction on the terms indicated can or will be arranged or agreed. Information other than economic terms (including market data and statistical information) has been obtained from various sources we consider reliable but we do not represent that it is complete or accurate and it should not be relied upon as such. Any analysis presented herein that indicates a range of outcomes that may result from changes in market parameters is not comprehensive, is not intended to suggest that any outcome is more likely than another and may have been derived using Lehman Brothers proprietary models, historic data and subjective interpretation. This term sheet does not constitute an offer or an agreement, or a solicitation of an offer or an agreement, to enter into any transaction. This term sheet must be read in conjunction with the prospectus, offering circular or other offer document relating to the transaction referred to herein (the "Related Documentation"). This term sheet supersedes any prior versions hereof and, if this term sheet is indicative, will be deemed to be superseded by any subsequent versions hereof and, with respect to any transaction described therein, by the Related Documentation. Transactions of the sort described herein contain complex financial characteristics and risk factors. Before entering into any transaction, you should consider the suitability of the transaction in light of your particular circumstances and independently review (with your professional advisers as necessary) the: (i) specific financial risks ·as well as the legal, regulatory, credit, tax and accounting consequences of entering into such transaction; and (ii) any information, warnings, risk disclosures and other matters disclosed in the Related Documentation. In entering into the transaction, the counterparty is deemed to represent to Lehman Brothers that it has obtained such professional advice as it deemed necessary and that it entered into the transaction for legitimate commercial and business reasons.

Any securities mentioned in this term sheet will not be registered under the U.S. Securities Act of 1933, as amended (the "Act"), and will not be offered or sold in the United States or for the account or benefit of "U.S. persons" within the meaning of Regulation S under the Act, except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Act. Accordingly, this term sheet is being provided only to persons who are: (i) "qualified institutional buyers" within the meaning of Rule 144A under the Act; or (ii) not "U.S. persons" within the meaning of Regulation S under the Act. By accepting the delivery of this term sheet, the recipient warrants and acknowledges that it falls within the category of persons under (i) or (ii). No representation can be made as to the availability of the exemption provided by Rule 144A under the Act for re-sales of the securities mentioned in this term sheet

Lehman Brothers do not act as an adviser or fiduciary to its counterparties except where written agreement expressly provides otherwise. This term sheet is for your sole information and should not be distributed to private clients or any third parties without Lehman Brothers' prior written approval. Lehman Brothers International (Europe), its affiliates world-wide, and their respective officers, directors, partners and employees, including persons involved in the preparation or issuance of this term sheet, may from time to time: (i) in the capacity of principal or agent, buy, sell and/or hold any securities mentioned in this term sheet; (ii) act as market-makers or advisors, brokers or commercial and/or investment bankers in relation to any such securities or any transaction related thereto, including any related derivatives transaction; or (iii) act or have acted as manager, co-manager, initial purchaser, placement agent or underwriter of a public or private offering of any such securities.

References herein to "Lehman Brothers" shall include Lehman Brothers International (Europe) and its affiliates. Lehman Brothers International (Europe) and Lehman Brothers Europe Limited are authorised and regulated by the Financial Services Authority. © 2008 Lehman Brothers. All rights reserved.

LEHMAN BROTHERS

# Structured Equity Solutions



**Instrument Details**

## Lehman Bankhaus ––– Capital Protected SPA Note 2008–6.4.18 (EXP.20.3.18) on a Dynamic Basket

| | |
|---|---|
| **Issuer** | GK219471 **Lehman Brothers Bankhaus AG** |
| **Domicile** | Germany |
| **Sector** | Banks & other credit institutions |

**Basic Data**

| | |
|---|---|
| **TK Valor Number** | 3843878 |
| **ISIN** | XS0350719380 |
| **CFI Code** | DTZXFB (Assigned by another NNA) |
| **Instrument Type** | Hybrid, structured instruments |
| **Product Name** | 10 Year Capital Protected SPA Note Linked to the Lehman Brothers ALPHA SELECT 4 Fund |
| **Underlying Asset Class** | Others / Fund / By SIX–Telekurs |
| **Short Name** | Basket/Leh 18 EMTN |
| **Security Prefix** | Capital Protected SPA Note |
| **Security Suffix** | 2008–6.4.18 (EXP.20.3.18) on a Dynamic Basket |
| **Instrument Form** | Bearer form |
| **Delivery Mode** | Clearstream Bk Lux: Not deliverable, global cert. Euroclear Bank: Not deliverable, global cert. |
| **Instrument Unit** | Nominal (par value/face value) |
| **Original Issuer** | GK219471 Lehman Bankhaus Frankfurt |
| **Currency / Principal** | EUR / 2850000 Outstanding capital |
| **Maturity Date** | 06.04.2018 |
| **Denominations** | EUR 50000 |
| **Callable by Issuer** | Yes |
| **Callable for tax reasons only** | Yes |
| **Security Number Type** | No processing |
| **Without Physical Coupon** | Yes |

**Instrument Classification**

| | |
|---|---|
| **Type of security** | Hybrids, structured instruments |
| **Borrower category** | Bond issued by banks & financial instit. |
| **Telekurs jurisdiction** | Eurobonds |
| **Market affiliation** | Euro Medium Term Note (EMTN) |
| **Price category** | Other instruments |
| **Classification of financial instruments** | Debt Instruments, Medium–term notes, Zero rate/Discounted, Not available / unknown, Fixed maturity, Bearer |
| **EU Interest income tax category** | Unknown |

**Structured Product Details**

| Date Type | Date From | Date To | Pricing Function |
|---|---|---|---|
| Final fixing | 20.03.2018 | 20.03.2018 | Closing price on fixing day |

**EU Interest Income Taxation**  (not permissioned)

**Tax / Reporting**

|  |  | Applicability | Object | Application | Amounts |
|---|---|---|---|---|---|
| **Country: United Kingdom** | | | | | |
| Current Taxes | Capital gains tax | Potentially liable/ applicable | —— | | Tax resident: |
| **Country: Switzerland** | | | | | |
| Current Taxes N/P | | | | | |
| Reporting / Regulation | SNB | N/P | | | |
| | SNB | N/P | | | |
| | SNB | N/P | | | |
| **Country: Liechtenstein** | | | | | |
| Current Taxes N/P | | | | | |

**Latest Company Ratings**

| Scheme | Name | Date | Rating | Rating Trend |
|---|---|---|---|---|
| MDYISTCP | MOODY'S commercial paper short term | 10.12.2008 | WR | |
| SPSICRFC | S&P Issuer Credit Rating Foreign CCY ST | 15.09.2008 | D | Not on watchlist |
| SPLICRFC | S&P Issuer Credit Rating Foreign CCY LT | 15.09.2008 | D | Not on watchlist |
| SPLICRLC | S&P Issuer Credit Rating Local CCY LT | 15.09.2008 | D | Not on watchlist |
| SPSICRLC | S&P Issuer Credit Rating Local CCY ST | 15.09.2008 | D | Not on watchlist |

Rating History

**Listings**

| Code | Exchange | CCY | Listing Name | Trader Symbol | SEDOL | Listing Status | Notation Type |
|---|---|---|---|---|---|---|---|
| 254 | No Quotes | EUR | Basket/Leh 18 EMTN | | | No Listing (Quoted) | Percentage price |

**NSINs**

| **CH** | 3843878 | Active | 03.03.2008 |
|---|---|---|---|
| **XS** | 035071938 | Active | 03.03.2008 |
| **U*** | D5958N189 | Active | 04.03.2008 |
| **ISIN** | XS0350719380 | Active | 03.03.2008 |

**MiFID Classification**   (not permissioned)

| Country | Class. Schema | Classification | Valid From | Valid Until |
|---------|---------------|----------------|------------|-------------|

**Managers / Agents**

| Institution | Role |
|-------------|------|
| LBI Europe | Calculation/Fixing agent |
| LBI Europe | Lead manager |

**Depository / Clearing**

| Name | System | Mode / Details | Main CSD/ESES | Custody Type | Unit / Denomination |
|------|--------|----------------|---------------|--------------|---------------------|
| Clearstream Bk Lux | CEDCOM(Luxembourg+Euro) | Not deliverable, global cert. | | | |
| Euroclear Bank | EUCLID(Belgium+Euro) | Not deliverable, global cert. | | | |

**Guarantee / Covenant**

| Guarantor | Type |
|-----------|------|
| Lehman Brothers | Joint & several guarantees for the total |

**Issue Conditions**

| | |
|---|---|
| TK Valor Number | 3843878 |
| ISIN | XS0350719380 |
| Short Name | Basket/Leh 18 EMTN |
| Original Issuer | Lehman Bankhaus Frankfurt |
| Issue Status | Issued |
| Issue Amount | EUR 2850000 |
| Original Denominations | EUR 50000 |
| Denominations | EUR 50000 |
| Issue Price | 100 % |
| Payment on Subscription | No |
| Payment Type | Fully paid–up |
| Payment Date | 31.03.2008 |
| Restrictions | United States Switzerland EEA 'European Economic Area' |

## Capital Structure

|  |  |
|---|---|
| **Capital Type** | Outstanding capital |
| **Nominal Capital** | EUR 2850000 |
| **Effective Date** | 31.03.2008 |
| **Capital Type** | Issued capital |
| **Nominal Capital** | EUR 2850000 |
| **Effective Date** | 31.03.2008 |

## Early Redemption / Extension Conditions

Repayment Due To Taxation

|  |  |
|---|---|
| **Entitled Person** | Issuer |
| **Payments** | Total |
| **Notice Period** | ––– 30 Day |

| **Repayments** | Call Period | Call Frequency | Repayment Price | Inc. / Dec. Value | Inc. / Dec. Frequency |
|---|---|---|---|---|---|
|  | 31.03.2008 | At any time | 100 % |  |  |
|  | — |  |  |  |  |

## Early Redemption Schedule

| Period / Date | Reason | Entitled Person | Notice Period | Redemption Amount |
|---|---|---|---|---|
| 31.03.2008 –– 06.04.2018 | Taxation | Issuer | – 30 Day | 100 % |

## Final Redemption

**Set ID** 80469692

| | |
|---|---|
| **Settlement Style** | Cash |
| **Paid in** | EUR |
| **Conditions** | Observation |
| | Period: 20.03.2018 ––– 20.03.2018 |
| | CH3302469 LB Alp 4 Eu Adv Acc |
| **Additive** **Due Date** | 06.04.2018 |
| | Details |

| | |
|---|---|
| **Settlement Style** | Minimum repayment (cash) |
| **Gross Amount** | 100 % |
| **Due Date** | 06.04.2018 |
| | Details |

## Additional Information

Repayment according to:

SD X (100% + Max (0%;BAV Final/BAV Initial –
100%))

BAV Final is the BAVt on the Final Valuation
date
BAV Initial is the BAVt on the Initial Valuation
date
Initial valuation date = 31.03.2008

**All CA (excl. Dividends / Listing Events)**

01.05.2009     **Company amalgamation/ takeover**
Offer
Purchase offer
Effective Date  01.05.2009

Data Version: T20 Run (12. Aug 2009, VDMMAPS.V009224.T20T,svwpvdb04)

### Instrument Details

Instrument Summary    Custom Page    Instrument Classification    Structured Product Details    Listings    Markets
Identification Directory    MiFID Classification    Managers / Agents    Depository / Clearing    Guarantee / Covenant
All CA (excl. Dividends / Listing Events)    All Corporate Actions    Issue Conditions    Early Redemption / Extension Conditions
Early Redemption Schedule    Final Redemption    Ratings    Rating History    Capital Structure    EU Tax    Tax / Reporting
Documents    Country Details

# Lehman Bankhaus --- Capital Protected SPA Note 2008-6.4.18 (EXP.20.3.18) on a Dynamic Basket

PDF

**Issuer**    GK219471 Lehman Brothers Bankhaus AG  (Instruments)
**Domicile**    Germany
**Sector**    Banks & other credit institutions

## Basic Data

| | |
|---|---|
| **TK Valor Number** | 3843878 |
| **ISIN** | XS0350719380 |
| **CFI Code** | DTZXFB (Assigned by another NNA) |
| **Instrument Type** | Hybrid, structured instruments |
| **Product Name** | 10 Year Capital Protected SPA Note Linked to the Lehman Brothers ALPHA SELECT 4 Fun |
| **Underlying Asset Class** | Others / Fund / By SIX-Telekurs |
| **Short Name** | Basket/Leh 18 EMTN |
| **Security Prefix** | Capital Protected SPA Note |
| **Security Suffix** | 2008-6.4.18 (EXP.20.3.18) on a Dynamic Basket |
| **Instrument Form** | Bearer form |
| **Delivery Mode** | Clearstream Bk Lux: Not deliverable, global cert. Euroclear Bank: Not deliverable, global cert. |
| **Instrument Unit** | Nominal (par value/face value) |
| **Original Issuer** | GK219471 Lehman Bankhaus Frankfurt |
| **Currency / Principal** | EUR / 2850000 Outstanding capital |
| **Maturity Date** | 06.04.2018 |
| **Denominations** | EUR 50000 |
| **Callable by Issuer** | Yes |
| **Callable for tax reasons only** | Yes |
| **Security Number Type** | No processing |
| **Without Physical Coupon** | Yes |

## Instrument Classification

| | |
|---|---|
| **Type of security** | Hybrids, structured instruments |
| **Borrower category** | Bond issued by banks & financial instit. |
| **Telekurs jurisdiction** | Eurobonds |
| **Market affiliation** | Euro Medium Term Note (EMTN) |
| **Price category** | Other instruments |
| **Classification of financial instruments** | Debt Instruments, Medium-term notes, Zero rate/Discounted, Not available / unknown Fixed maturity, Bearer |
| **EU Interest income tax category** | Unknown |

## Structured Product Details

| Date Type | Date From | Date To | Pricing Function |
|---|---|---|---|

Instrument Details

Final fixing   20.03.2018   20.03.2018   Closing price on fixing day

## EU Interest Income Taxation   (not permissioned)

## Tax / Reporting

|  | Applicability | Object | Application | Amounts |
|---|---|---|---|---|
| **Country: United Kingdom** | | | | |
| Current Taxes | Capital gains tax | Potentially liable/ applicable | --- | Tax resident: |
| **Country: Switzerland** | | | | |
| Current Taxes N/P | | | | |
| Reporting / Regulation | SNB | N/P | | |
| | SNB | N/P | | |
| | SNB | N/P | | |
| **Country: Liechtenstein** | | | | |
| Current Taxes N/P | | | | |

## Latest Company Ratings

| Scheme | Name | Date | Rating | Rating Trend |
|---|---|---|---|---|
| MDYISTCP | MOODY'S commercial paper short term | 10.12.2008 | WR | |
| SPSICRFC | S&P Issuer Credit Rating Foreign CCY ST | 15.09.2008 | D | Not on watchlist |
| SPLICRFC | S&P Issuer Credit Rating Foreign CCY LT | 15.09.2008 | D | Not on watchlist |
| SPLICRLC | S&P Issuer Credit Rating Local CCY LT | 15.09.2008 | D | Not on watchlist |
| SPSICRLC | S&P Issuer Credit Rating Local CCY ST | 15.09.2008 | D | Not on watchlist |
| Rating History | | | | |

## Listings

| Code | Exchange | CCY | Listing Name | Trader Symbol | SEDOL | Listing Status | Notation Type |
|---|---|---|---|---|---|---|---|
| 254 | No Quotes | EUR | Basket/Leh 18 EMTN | | | No Listing (Quoted) | Percentage price |

## NSINs

| | | | |
|---|---|---|---|
| **CH** | 3843878 | Active | 03.03.2008 |
| **XS** | 035071938 | Active | 03.03.2008 |
| **U\*** | D5958N189 | Active | 04.03.2008 |
| **ISIN** | XS0350719380 | Active | 03.03.2008 |

## MiFID Classification   (not permissioned)

Country  Class. Schema  Classification  Valid From  Valid Until

## Managers / Agents

| Institution | Role |
|---|---|
| LBI Europe | Calculation/Fixing agent |
| LBI Europe | Lead manager |

## Depository / Clearing

| Name | System | Mode / Details | . Main | Custody | Unit / |
|---|---|---|---|---|---|

Instrument Details

| | | | CSD/ESES | Type | Denominat |
|---|---|---|---|---|---|
| Clearstream Bk Lux | CEDCOM (Luxembourg+Euro) | Not deliverable, global cert. | | | |
| Euroclear Bank | EUCLID(Belgium+Euro) | Not deliverable, global cert. | | | |

## Guarantee / Covenant

| Guarantor | Type |
|---|---|
| Lehman Brothers | Joint & several guarantees for the total |

## Issue Conditions

| | |
|---|---|
| TK Valor Number | 3843878 |
| ISIN | XS0350719380 |
| Short Name | Basket/Leh 18 EMTN |
| Original Issuer | Lehman Bankhaus Frankfurt |
| Issue Status | Issued |
| Issue Amount | EUR 2850000 |
| Original Denominations | EUR 50000 |
| Denominations | EUR 50000 |
| Issue Price | 100 % |
| Payment on Subscription | No |
| Payment Type | Fully paid-up |
| Payment Date | 31.03.2008 |
| Restrictions | United States Switzerland EEA 'European Economic Area' |

## Capital Structure

| | |
|---|---|
| Capital Type | Outstanding capital |
| Nominal Capital | EUR 2850000 |
| Effective Date | 31.03.2008 |
| Capital Type | Issued capital |
| Nominal Capital | EUR 2850000 |
| Effective Date | 31.03.2008 |

## Early Redemption / Extension Conditions

Repayment Due To Taxation

| | |
|---|---|
| Entitled Person | Issuer |
| Payments | Total |
| Notice Period | --- 30 Day |

| Repayments | Call Period | Call Frequency | Repayment Price | Inc. / Dec. Value | Inc. / Dec. Frequency |
|---|---|---|---|---|---|
| | 31.03.2008 -- | At any time | 100 % | | |

## Early Redemption Schedule

| Period / Date | Reason | Entitled Person | Notice Period | Redemption Amount |
|---|---|---|---|---|
| 31.03.2008 -- 06.04.2018 | Taxation | Issuer | - 30 Day | 100 % |

## Final Redemption

# Forderungsanmeldung

In dem Insolvenzverfahren über das Vermögen der

## Lehman Brothers Bankhaus AG
## Rathenauplatz 1
## 60313 Frankfurt am Main

## Amtsgericht Frankfurt am Main AZ: 810 IN 1120/08 L

Ablauf der Anmeldefrist:      3. Februar 2009
1. Prüfungstermin:             17. März 2009

---

**Gläubiger:**
*(Name, Vorname, bzw. Firmenbezeichnung gem*
*Eintragung im Handelsregister, Anschrift, Ruf-*
*nummer und Aktenzeichen)*

*ASPECTA ASSURANCE* ,
*International Luxembourg S.A* ,
*5, rue Eugène Ruppert* ,
*L-2453 Luxembourg* .
_____ ,

**Gläubigervertreter:**
*(Die Beauftragung eines Rechtsanwaltes ist freigestellt. Die*
*Vollmacht muß sich auf das Inso- bzw. Vergleichsverfahren*
*erstrecken)*

_____ ,
_____ ,
_____ ;
_____ ,
_____ ,

**Bankverbindung:**
Bank: *BIC  BGLLLULL*
BLZ: _____
Kto-Nr. _____
*IBAN: LU52 0030 0645 0029 0000*

**Bankverbindung:**
Bank: _____
BLZ: _____
Kto-Nr: _____

## I. Forderungen nach § 38 InsO

### 1. HINWEISE:

*Soweit sich die Hauptforderung aus verschiedenen einzelnen Rechnungen zusammensetzt, fügen Sie*
*bitte eine detaillierte Aufgliederung als Anlage bei. Es sind nur EUR-Beträge anzugeben. Forderungen in*
*ausländischer Währung sind in den Kurswert bei Verfahrenseröffnung umzurechnen, notfalls sind*
*Schätzwerte anzugeben.*

*Zinsen dürfen nur bis zum Zeitpunkt der Verfahrenseröffnung - Datum des Eröffnungsbeschlusses -*
*berechnet werden. Bei verschiedenen Zinsansprüchen bitte eine Zinsstaffel beifügen.*
*Kosten können geltend gemacht werden, soweit sie vor Verfahrenseröffnung entstanden sind.*

Hauptforderung: *Nominal*      Summe = *6.750.000*   EUR
Zinsen: _____ %              Summe = _____ EUR
Kosten: _____               Summe = _____ EUR

**Summe der Forderungen gem. § 38 InsO insgesamt:** *6.750.000*  EUR

2

*2. Rechtsgrund der Forderungen:*

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

I  WERTPAPIER  XS 0350719380
   2.850.000  Anteile

II  WERTPAPIER  XS 035840108
    3.900.000  Anteile

**II. Masseforderungen im Sinne des § 55 Abs. 1 Nr. 1 bis 3 InsO**

*1. Forderungen:*

| | | | |
|---|---|---|---|
| Hauptforderung: | | Summe = | _____ EUR |
| Zinsen: | ____ % | Summe = | _____ EUR |
| Kosten: | | Summe = | _____ EUR |

**Summe der Forderungen gem. § 55 Abs. 1 InsO:**        _____ **EUR**

*2. Rechtsgrund der Forderungen:*

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

**III. Masseforderungen im Sinne des § 55 Abs. 2 InsO**

*1. Forderungen:*

| | | | |
|---|---|---|---|
| Hauptforderung: | | Summe = | _____ EUR |
| Zinsen: | ____ % | Summe = | _____ EUR |
| Kosten: | | Summe = | _____ EUR |

**Summe der Forderungen gem. § 55 Abs. 2 InsO:**        _____ **EUR**

*2. Rechtsgrund der Forderungen:*

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

3

## IV. Aussonderungsrecht gem. §§ 47, 48 InsO

*(Eigentum, Eigentumsvorbehalt)*

*1. Sicherungsgegenstand:*

*2. Entstehungsgrund des Sicherungsrechtes:*

*3. Höhe des Anspruchs auf Ersatzaussonderung gem. § 48 Inso*

## V. Absonderungsrechte gem. § 49 ff InsO

*(z. b. Sicherungseigentum, Hypotheken, Grundschulden, Pfandrechte)*

*1. Sicherungsgegenstand:*

*2. Entstehungsgrund des Sicherungsrechtes:*

*3. Abgesonderte Befriedigung unter gleichzeitiger*       ( ) ja
   *Anmeldung für den Ausfall wird beansprucht:*       ( ) nein.

## VI. Zum Beweis der Forderungen werden beigefügt:

*(z. B. Urteil, Vollstreckungsbescheid, Wechsel, Scheck, Rechnung, Vertrag, Schuldanerkenntnis,*
*Selbstschuldnerische Bürgschaft)*

Versicherungsbestätigung ING m. 25.03.2009
Positionen 4 und 5

**ASPECTA**

ASPECTA Assurance International Luxembourg S.A.
Golden
5, Rue Eugène Ruppert
L-2453 Luxembourg

Luxemburg   , den 07.04.09

Ort            Datum

ASPECTA

# Amtsgericht Frankfurt am Main - Insolvenzgericht -

Entré le 2 4 JUIL. 2009

## Beglaubigter Auszug aus der Insolvenztabelle - Abt. I -

Wegen der Rechtslage wird auf anliegendes Merkblatt verwiesen.

| | |
|---|---|
| Geschäfts-Nr. | **810 IN 1120/08 L-2** |
| Schuldner/in | Lehman Brothers Bankhaus Aktiengesellschaft, Rathenauplatz 1, 60313 Frankfurt am Main (AG Frankfurt am Main, HRB 28139), vertreten durch: 1. Michael Bonacker, (Vorstand), 2. Hans Martin Bury, (Vorstand), 3. Dr. Patrick Schmitz-Morkramer, (Vorstand), 4. Christian Spieler, (Vorstand), 5. Helmut Olivier, (Vorstand) |
| Insolvenzverwalter/in | Rechtsanwalt Dr. Michael C. Frege, Barckhausstrasse 12-16, 60325 Frankfurt/Main, Tel. 069/71701-300, Fax 069/71701-40-410 |
| Gläubiger/in | ASPECTA ASSURANCE International Luxembourg SA, 5 rue Eugene Ruppert, 2453 Luxembourg, LUXEMBURG |
| Az. d. Gläubiger/s/in | |
| Gläubigervertreter/in | |
| Az. d. Gläubigervertr. | |
| Hinweis auf die Vollmacht | |
| Tag der Anmeldung | 14.04.2009 |
| Blattzahlen der Anmeldung | |
| Beanspruchter Rang | **0** |
| Laufende Nummer | **465** |

| Angemeldeter Betrag EUR | Grund der Forderung (urkundliche Beweisstücke) | Ergebnis der Prüfungsverhandlungen |
|---|---|---|
| 6.750.000,00 ———— 6.750.000,00 | Wertpapier XS 0350719380, XS 0358400108 | Vom Verwalter bestritten. Frankfurt am Main, den 07.07.2009 Amtsgericht Krämer |

| Berichtigungen/Bemerkungen |
|---|
| |

Es wird hiermit beglaubigt, dass vorstehender Auszug mit der Urschrift der Insolvenztabelle vollständig übereinstimmt.

Frankfurt am Main, den 15.07.2009

Herbner, Justizangestellte
als Urkundsbeamtin der Geschäftsstelle

**Amtsgericht Frankfurt am Main**
Insolvenzgericht

A S P E C T A

Entré le 2 4 JUIL. 2009

Hinweis zum Ergebnis der Prüfung

Als Anlage erhalten Sie das Ergebnis der Prüfung Ihrer angemeldeten Forderung zu Ihrer eigenen Verwendung.

Sie werden gebeten, den übersandten Auszug hinsichtlich der Gläubigerbezeichnung und Forderungshöhe auf seine Richtigkeit hin zu überprüfen und etwaige Abweichungen dem Gericht mitzuteilen.

( Dieser Hinweis wird nicht unterschrieben )

## Merkblatt für Insolvenzgläubiger bestrittener Forderungen

Ein Insolvenzgläubiger, dessen angemeldete Forderung vom Verwalter oder einem anderen Gläubiger ganz oder teilweise bestritten wurde, kann seine Forderung nur im Wege der Klage auf Feststellung gegen den Bestreitenden geltend machen.
Beruht die bestrittene Forderung auf einem vollstreckbaren Titel, muss der Verwalter oder der bestreitende Gläubiger diese Klage erheben.

Für die Klage ist ausschließlich das Amtsgericht zuständig, bei dem das Insolvenzverfahren geführt wird. Gehört der Streitgegenstand nicht zur Zuständigkeit der Amtsgerichte, so ist das Landgericht zuständig, zu dessen Bezirk das Insolvenzgericht gehört.
War zur Zeit der Eröffnung des Insolvenzverfahrens bereits ein Rechtsstreit über die Forderung anhängig, so ist die Feststellung der Forderung durch Aufnahme dieses Rechtsstreits zu betreiben.

Jedoch erscheint es zweckmäßig, zunächst dem Verwalter die Berechtigung der Forderung nachzuweisen und ihn zu veranlassen, die Forderung nachträglich dem Insolvenzgericht gegenüber anzuerkennen. In diesem Falle besteht die Möglichkeit, die Insolvenztabelle zu berichtigen.

Das Insolvenzgericht befasst sich nicht mit der Frage, ob eine bestrittene Forderung zu Recht besteht; das zu prüfen und zu entscheiden ist allein Angelegenheit des Verwalters und ggfs. des Prozeßgerichts.
Anfragen oder Vorstellungen beim Insolvenzgericht sind daher zwecklos.