UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x
:
In re:                                                                  :    Chapter 11
                                                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,                                  :    Case No. 08-13555 (JMP)
                                                                        :
                      Debtors.                                          :    (Jointly Administered)
                                                                        :
                                                                        :
-----------------------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF WAYNE MCARDLE IN CONNECTION WITH ORDER PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE AUTHORIZING THE EMPLOYMENT AND RETENTION OF GIBSON, DUNN & CRUTCHER LLP, AS SPECIAL COUNSEL TO THE DEBTORS, *NUNC PRO TUNC* TO SEPTEMBER 1, 2009**

I, Wayne McArdle, declare and state as follows:

**FOUNDATION**

1. I am a partner in the law firm of Gibson, Dunn & Crutcher LLP ("***Gibson Dunn***"). I submit this Supplemental Declaration in connection with the *Order Pursuant to Section 327(e) of the Bankruptcy Code Authorizing the Employment and Retention of Gibson, Dunn & Crutcher LLP, as Special Counsel to the Debtors,* Nunc Pro Tunc *to September 1, 2009* [Docket No. 9857] (the "***Retention Order***"). Unless otherwise stated in this Supplemental Declaration, I have personal knowledge of the facts set forth herein.

**SUPPLEMENTAL DISCLOSURES**

2. Pursuant to the Retention Order, Gibson Dunn was retained as special counsel to provide legal services with respect to certain real estate matters. One such matter (the "***Excalibur Matter***") entails providing legal advice to the Debtors in connection with the assets of LB RE Financing No. 3 Limited, a private limited company incorporated and registered in

England and Wales ("**LB RE**"), which is in administration (insolvency proceedings) in the United Kingdom. LB RE's primary asset is a €722,181,000 Class B Note due 2054 (the "***B Note***"), issued by Excalibur Funding No. 1 PLC ("***Excalibur***"), an orphan special purpose vehicle that Lehman created in May 2008 to issue real estate backed commercial debt obligations. Debtor Lehman Brothers Holdings, Inc. ("***LBHI***") directly and indirectly holds 98.1% of the claims against LB RE.

3.  Previously, Gibson Dunn assisted LBHI in its successful efforts to (i) obtain control over most of the commercial decisions relating to the B Note, (ii) secure the right to recover from LB RE amounts advanced to it in respect of the B Note, in priority to any other claims of creditors, and (iii) obtain the right, in certain circumstances, to acquire the B Note (or shares of LB RE). *See Order Granting Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004 for Authorization to Enter Into Agreements to Provide Funding to LB RE Financing No. 3 Limited (In Administration) In Connection with Certain Real Estate Investments* [Docket No. 5907].

4.  Gibson Dunn continues to provide legal advice to the Debtors in connection with the assets of LB RE. Under an agreement between Gibson Dunn, as solicitors for LBHI, and Linklaters, as solicitors for the Joint Administrators of LB RE (the "***Conduct Agreement***"), Gibson Dunn will have conduct of, and jointly represent LBHI and LB RE in, proceedings related to an application commenced by Excalibur for leave from the High Court of England to commence legal proceedings against LB RE (the "***Excalibur Proceedings***").[1]

---

[1] Excalibur also commenced an application for leave from the High Court of England to commence legal proceedings against LBIE. Excalibur claimed that it was necessary to apply to commence proceedings for specific performance of certain of LBIE's obligations as Administrative Agent in the Excalibur securitization to ensure that any order for
[Footnote continued on next page]

Pursuant to an agreement between LBHI and the Joint Administrators of LB RE (the "**Fee Agreement**"), Gibson Dunn's fees and expenses incurred in connection with the Excalibur Proceedings shall be deemed to constitute expenses of the administration of LB RE's estate.  A copy of the Fee Agreement is attached hereto as Annex 1.  Nonetheless, pursuant to the Fee Agreement, LBHI has agreed to continue to directly pay Gibson Dunn's fees and expenses, with the understanding that LBHI will be reimbursed by LB RE for those fees and expenses.  This arrangement is beneficial to the Debtors in that they now have a firm commitment from LB RE to be reimbursed for their legal fees incurred in connection with the proceedings which are the subject of the Conduct Agreement and this reimbursement will constitute an administrative expense of LB RE's estate that has priority over LB RE's payments to other creditors (other than the fees and expenses of the Joint Administrators of LB RE).  A copy of the Conduct Agreement outlining this arrangement and the scope and nature of Gibson Dunn's expected services is attached hereto as Annex 2.

5.    Gibson Dunn has agreed that even though its fees and expenses will constitute administrative expenses of LB RE's estate, Gibson Dunn's fees and expenses incurred in connection with the Excalibur Matter will remain subject to the approval of the Bankruptcy Court in accordance with title 11 of the United States Code, the Federal Rules of Bankruptcy Procedure, the Local Rules of the United States Bankruptcy Court for the Southern District of New York, any guidelines promulgated by the United States Trustee, the Retention Order, the Third Amended Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and

---

[Footnote continued from previous page]
specific performance of LB RE's transfer obligations would not be frustrated by LBIE's failure to perform its own contractual obligations.  LBIE agreed, in writing, not to challenge any award made against LB3 on the basis of LBIE's ability to direct LB RE to perform and the application against LBIE was subsequently withdrawn by Excalibur.

Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals [Docket No. 4165], the Order Appointing Fee Committee and Approving Fee Protocol [Docket No. 3651], and all other relevant orders of the Bankruptcy Court.

Pursuant to 28 U.S.C. section 1746, I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed on March 11, 2011

                                                    __/s/ Wayne McArdle__
                                                      Wayne McArdle

**Annex 1**
**Fee Agreement**

Strictly Private and Confidential

# LEHMAN BROTHERS HOLDINGS INC.
1271 Avenue of the Americas. 46th Floor
New York, New York 10020

September 02, 2010

LB RE Financing No. 3 Limited (in Administration)
Level 23
25 Canada Square
London
E14 5LQ
England

Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell
PricewaterhouseCoopers LLP
Plumtree Court
London EC4A 4HT
England
(together the "**Joint Administrators**")

With a copy to:

Euan Clarke, Rory Conway and Tina Lockwood
Linklaters LLP
One Silk Street
London EC2Y 8HQ
England

Richard Hacker QC and Mark Arnold
3-4 South Square
Gray's Inn
London WC1R 5HP

Wayne McArdle
Gibson, Dunn & Crutcher LLP
Telephone House
2-4 Temple Avenue
London, EC4Y 0HB

Dear Sirs,

**Re: Reimbursement of fees/costs in connection with defence of proceedings brought against LB RE Financing No. 3 Limited (in Administration) ("LBREF3")**

Reference is made to (i) the applications issued in the High Court by Excalibur Funding No. 1 plc ("**Excalibur**") on 11 June 2010, for permission under paragraph 43(6) of Schedule B1 to the Insolvency Act 1986 to institute and continue legal proceedings against LBREF3 and

1

Strictly Private and Confidential

Lehman Brothers International (Europe) (in Administration) (the "**Applications**"), (ii) the facilities agreement entered into between Lehman Brothers Holdings, Inc. (as lender) ("**LBHI**"), LBREF3 (as borrower) and the Joint Administrators on 28 October 2009 (the "**Facilities Agreement**"), and (iii) the letter from Linklaters LLP to Gibson, Dunn & Crutcher LLP dated on or about the date hereof (the "**Conduct Letter**") regarding conduct of the Applications and any proceedings instituted with the permission of the Court thereby obtained (the "**Proceedings**").

The purpose of this letter (the "**Letter**") is to set out the terms upon which LBHI shall bear the properly incurred costs, commencing 11 May 2010, of (i) LBREF3, (ii) the Joint Administrators, (iii) their solicitors, Linklaters LLP and Gibson, Dunn & Crutcher LLP and (iv) Richard Hacker QC and Mark Arnold, counsel to LBHI, LBREF3 and the Joint Administrators (the "**Parties**") in connection with the Proceedings (the "**Costs**"). Costs shall include any costs of the Parties arising out of any adverse costs order of the Court in relation to the Proceedings.

Unless otherwise defined herein terms defined in the Facility Agreement shall have the same meaning in this Letter.

1. **Costs Undertaking**

   1.1. LBHI undertakes in favour of each of the Parties to pay their Costs in accordance with the terms of this Letter.

   1.2. Invoices for Costs incurred (the "**Invoices**") shall:

      1.2.1. be raised by each Party on a monthly basis in pounds Sterling;

      1.2.2. contain reasonable detail as to the nature of the Costs and bank transfer details for settlement;

      1.2.3. be addressed to LBREF3 and marked "payable by LBHI"; and

      1.2.4. be sent to LBREF3 at Level 23, 25 Canada Square, London E14 5LQ England, with copies to *LBHI* 1271 Avenue of the Americas, New York, New York 10020 and sent to the attention of Richard Hiom, 111 Old Broad Street, London, England EC2N 1FP, and to Gibson, Dunn & Crutcher LLP, Telephone House, 2 – 4 Temple Avenue, London EC4Y 0HB, for the attention of: Mr. Wayne McArdle.

   1.3. Subject to paragraph 1.4, LBHI shall pay all Invoices in full and in cleared funds within 45 calendar days of receipt to the bank account appearing in the Invoice.

   1.4. In the event LBHI identifies an error in the Invoices or disputes any charges contained therein, it shall notify the relevant Party in writing promptly and in any event, within 10 days of receipt of the relevant Invoice, setting out in reasonable detail the nature of the error or dispute. LBHI and the relevant Party shall use all reasonable endeavours to resolve any errors or disputed charges. All non-disputed charges will be paid in accordance with paragraph 1.3. In the absence of any such notice being received within 10 days of receipt of the relevant Invoice, Invoices will be deemed final and accepted by LBHI.

1.5. All Costs incurred by LBREF3 and paid by LBHI pursuant to the provisions of this Letter shall be deemed to constitute expenses of the Administration of LBREF3.

1.6. After payment of any accrued and unpaid fees and expenses of the Joint Administrators as provided for in clause 7.2(a)(i) of the Facilities Agreement, LBREF3 shall use all remaining B Note Proceeds received by it to reimburse LBHI in full for any Costs paid by LBHI pursuant to this Letter. For the avoidance of doubt, any payments pursuant to the provisions set out in clauses 7.2(a)(ii) to (ix) of the Facilities Agreement shall be suspended until such time as LBHI has been fully reimbursed for payments made by it pursuant to this Letter.

2. **Post-Petition Expense**

2.1. LBHI confirms to the Parties that the obligations created by this Letter constitute post-petition administrative expenses of LBHI's bankruptcy estate which are entitled to administrative expense priority pursuant to section 503 of title 11 of the United States Code.

3. **Joint Administrators' Liability**

3.1. The Joint Administrators have entered into and signed this Letter as agents for and on behalf of LBREF3 and neither they, their firm, partners, employees, agents, advisers or representatives shall incur any personal liability whatever:

   3.1.1. in respect of any of the obligations undertaken by LBREF3;

   3.1.2. in respect of any failure on the part of LBREF3 to observe, perform or comply with any such obligations; or under or in relation to any associated arrangements or negotiations; or

   3.1.3. under any document or assurance made pursuant to this Agreement.

3.2. The exclusion of liability set out in this paragraph 3 shall arise and continue notwithstanding the termination of the agency of the Joint Administrators and shall operate as a waiver of any claims in tort as well as under the laws of contract against the Joint Administrators.

4. **Miscellaneous**

4.1. In this Letter, references to a "person" include an individual, firm, company, association, trust, partnership, government, state, local authority or other organisation (in each case whether or not having separate legal personality).

4.2. A reference to the Joint Administrators shall be construed as being to the Joint Administrators both jointly and severally and to any other person who is appointed as an administrator in substitution for any administrator or as an additional administrator in conjunction with the Joint Administrators.

4.3. The terms of this Letter shall be governed by the laws of England and Wales, and the dispute resolution provisions in clauses 22.2 to 22.5 of the Advisory Agreement shall apply to this Letter.

**Strictly Private and Confidential**

4.4. Any person who is not a party to this Letter shall have no right (whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise) to enforce or enjoy the benefit of any terms of this Letter provided that the Joint Administrators, their firm, employees and representatives shall be entitled to rely on paragraph 3 (Joint Administrators Liability) of this Letter as if it were a party to it.

This Letter is delivered as a Deed on the date stated at the beginning of this Letter.

Yours faithfully

..................../Jeffrey.Fitts.
Executed as a Deed for and on behalf of
**Lehman Brothers Holdings, Inc.**

Executed as a Deed and agreed and accepted by the by one of the Joint Administrators (without personal liability)

..................../Wanda I. Rios
Joint Administrator
As agent and without personal liability for and on behalf of
**LB RE Financing No. 3 Limited**

Executed as a Deed and agreed and accepted by one of the Joint Administrators
(on behalf of all of them as agents for LBREF3 and without any personal liability, solely for the purpose of receiving the benefit of the provisions of this letter in their favour)

..........................................
For and on behalf of
Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell

4

**Strictly Private and Confidential**

# LEHMAN BROTHERS HOLDINGS INC.
1271 Avenue of the Americas. 46th Floor
New York, New York 10020

September 8th, 2010

LB RE Financing No. 3 Limited (in Administration)
Level 23
25 Canada Square
London
E14 5LQ
England

Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell
PricewaterhouseCoopers LLP
Plumtree Court
London EC4A 4HT
England
(together the "**Joint Administrators**")

With a copy to:

Euan Clarke, Rory Conway and Tina Lockwood
Linklaters LLP
One Silk Street
London EC2Y 8HQ
England

Richard Hacker QC and Mark Arnold
3-4 South Square
Gray's Inn
London WC1R 5HP

Wayne McArdle
Gibson, Dunn & Crutcher LLP
Telephone House
2-4 Temple Avenue
London, EC4Y 0HB

Dear Sirs,

**Re: Reimbursement of fees/costs in connection with defence of proceedings brought against LB RE Financing No. 3 Limited (in Administration) ("LBREF3")**

Reference is made to (i) the applications issued in the High Court by Excalibur Funding No. 1 plc ("**Excalibur**") on 11 June 2010, for permission under paragraph 43(6) of Schedule B1 to the Insolvency Act 1986 to institute and continue legal proceedings against LBREF3 and

1

Lehman Brothers International (Europe) (in Administration) (the "**Applications**"), (ii) the facilities agreement entered into between Lehman Brothers Holdings, Inc. (as lender) ("**LBHI**"), LBREF3 (as borrower) and the Joint Administrators on 28 October 2009 (the "**Facilities Agreement**"), and (iii) the letter from Linklaters LLP to Gibson, Dunn & Crutcher LLP dated on or about the date hereof (the "**Conduct Letter**") regarding conduct of the Applications and any proceedings instituted with the permission of the Court thereby obtained (the "**Proceedings**").

The purpose of this letter (the "**Letter**") is to set out the terms upon which LBHI shall bear the properly incurred costs, commencing 11 May 2010, of (i) LBREF3, (ii) the Joint Administrators, (iii) their solicitors, Linklaters LLP and Gibson, Dunn & Crutcher LLP and (iv) Richard Hacker QC and Mark Arnold, counsel to LBHI, LBREF3 and the Joint Administrators (the "**Parties**") in connection with the Proceedings (the "**Costs**"). Costs shall include any costs of the Parties arising out of any adverse costs order of the Court in relation to the Proceedings.

Unless otherwise defined herein terms defined in the Facility Agreement shall have the same meaning in this Letter.

## 1. Costs Undertaking

1.1. LBHI undertakes in favour of each of the Parties to pay their Costs in accordance with the terms of this Letter.

1.2. Invoices for Costs incurred (the "**Invoices**") shall:

　　1.2.1. be raised by each Party on a monthly basis in pounds Sterling;

　　1.2.2. contain reasonable detail as to the nature of the Costs and bank transfer details for settlement;

　　1.2.3. be addressed to LBREF3 and marked "payable by LBHI"; and

　　1.2.4. be sent to LBREF3 at Level 23, 25 Canada Square, London E14 5LQ England, with copies to *LBHI* 1271 Avenue of the Americas, New York, New York 10020 and sent to the attention of Richard Hiom, 111 Old Broad Street, London, England EC2N 1FP, and to Gibson, Dunn & Crutcher LLP, Telephone House, 2 – 4 Temple Avenue, London EC4Y 0HB, for the attention of: Mr. Wayne McArdle.

1.3. Subject to paragraph 1.4, LBHI shall pay all Invoices in full and in cleared funds within 45 calendar days of receipt to the bank account appearing in the Invoice.

1.4. In the event LBHI identifies an error in the Invoices or disputes any charges contained therein, it shall notify the relevant Party in writing promptly and in any event, within 10 days of receipt of the relevant Invoice, setting out in reasonable detail the nature of the error or dispute. LBHI and the relevant Party shall use all reasonable endeavours to resolve any errors or disputed charges. All non-disputed charges will be paid in accordance with paragraph 1.3. In the absence of any such notice being received within 10 days of receipt of the relevant Invoice, Invoices will be deemed final and accepted by LBHI.

Strictly Private and Confidential

1.5.  All Costs incurred by LBREF3 and paid by LBHI pursuant to the provisions of this Letter shall be deemed to constitute expenses of the Administration of LBREF3.

1.6.  After payment of any accrued and unpaid fees and expenses of the Joint Administrators as provided for in clause 7.2(a)(i) of the Facilities Agreement, LBREF3 shall use all remaining B Note Proceeds received by it to reimburse LBHI in full for any Costs paid by LBHI pursuant to this Letter. For the avoidance of doubt, any payments pursuant to the provisions set out in clauses 7.2(a)(ii) to (ix) of the Facilities Agreement shall be suspended until such time as LBHI has been fully reimbursed for payments made by it pursuant to this Letter.

2.  **Post-Petition Expense**

2.1.  LBHI confirms to the Parties that the obligations created by this Letter constitute post-petition administrative expenses of LBHI's bankruptcy estate which are entitled to administrative expense priority pursuant to section 503 of title 11 of the United States Code.

3.  **Joint Administrators' Liability**

3.1.  The Joint Administrators have entered into and signed this Letter as agents for and on behalf of LBREF3 and neither they, their firm, partners, employees, agents, advisers or representatives shall incur any personal liability whatever:

   3.1.1.  in respect of any of the obligations undertaken by LBREF3;

   3.1.2.  in respect of any failure on the part of LBREF3 to observe, perform or comply with any such obligations; or under or in relation to any associated arrangements or negotiations; or

   3.1.3.  under any document or assurance made pursuant to this Agreement.

3.2.  The exclusion of liability set out in this paragraph 3 shall arise and continue notwithstanding the termination of the agency of the Joint Administrators and shall operate as a waiver of any claims in tort as well as under the laws of contract against the Joint Administrators.

4.  **Miscellaneous**

4.1.  In this Letter, references to a "person" include an individual, firm, company, association, trust, partnership, government, state, local authority or other organisation (in each case whether or not having separate legal personality).

4.2.  A reference to the Joint Administrators shall be construed as being to the Joint Administrators both jointly and severally and to any other person who is appointed as an administrator in substitution for any administrator or as an additional administrator in conjunction with the Joint Administrators.

4.3.  The terms of this Letter shall be governed by the laws of England and Wales, and the dispute resolution provisions in clauses 22.2 to 22.5 of the Advisory Agreement shall apply to this Letter.

4.4.  Any person who is not a party to this Letter shall have no right (whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise) to enforce or enjoy the benefit of any terms of this Letter provided that the Joint Administrators, their firm, employees and representatives shall be entitled to rely on paragraph 3 (Joint Administrators Liability) of this Letter as if it were a party to it.

This Letter is delivered as a Deed on the date stated at the beginning of this Letter.

Yours faithfully


..............................................
Executed as a Deed for and on behalf of
**Lehman Brothers Holdings, Inc.**


Executed as a Deed and agreed and accepted by the by one of the Joint Administrators (without personal liability)

..............................................
Joint Administrator
As agent and without personal liability for and on behalf of
**LB RE Financing No. 3 Limited**


Executed as a Deed and agreed and accepted by one of the Joint Administrators (on behalf of all of them as agents for LBREF3 and without any personal liability, solely for the purpose of receiving the benefit of the provisions of this letter in their favour)

..............................................
For and on behalf of
Anthony Victor Lomas, Steven Anthony Pearson, Michael John Andrew Jervis, Dan Yoram Schwarzmann and Derek Anthony Howell

4

**Annex 2**
**Letter to Gibson Dunn**

2

# Linklaters

Linklaters LLP
One Silk Street
London EC2Y 8HQ
Telephone (+44) 20 7456 2000
Facsimile (+44) 20 7456 2222
DX Box Number 10 CDE
Direct Line 020 7456 5469, 020 7456 3382
Direct Fax 020 7456 2222
rory.conway@linklaters.com

Gibson, Dunn & Crutcher LLP
Telephone House
2-4 Temple Avenue
London EC4Y 0HB

Privileged and Confidential
**By Email**                                                                14 September 2010

Our Ref          Euan Clarke / Rory Conway


Dear Sirs

**Lehman Brothers International (Europe) (in administration) ("LBIE") and LB RE Financing No 3 Limited (in administration) ("LBREF3"): Conduct of potential Excalibur litigation**

As you are aware, we act for the administrators of LBIE (the "**LBIE Administrators**") and for the administrators of LBREF3 (the "**LBREF3 Administrators**"), as well as for LBREF3 and LBIE (all four of those parties together, the "**Respondents**").

We refer to the applications issued in the High Court by Excalibur Funding No.1 plc ("**Excalibur**") on 11 June 2010, for permission under paragraph 43(6) of Schedule B1 to the Insolvency Act 1986 to institute and continue legal proceedings against LBIE and LBREF3. We also refer to the Facilities Agreement dated 28 October 2009 (the "**Facilities Agreement**") between, among others, LBREF3 and your client, Lehman Brothers Holdings Inc ("**LBHI**"), as well as the Committed Subscription Agreement dated 23 May 2008 (the "**Subscription Agreement**") between, among others, Excalibur, LBREF3 and LBIE.

In the context of its application against LBREF3, referred to above, Excalibur alleges that the circumstances envisaged by Clause 11.3 of the Subscription Agreement (which would require LBREF3 to transfer its interest in certain Class B notes issued pursuant to the Subscription Agreement) have occurred. Pursuant to Clause 14.1(d) of the Facilities Agreement, upon the occurrence of such circumstances (which is not admitted), LBREF3 is obliged to use reasonable endeavours to resist any request or demand by Excalibur to effect a transfer of the Class B notes referred to above, provided that any actions taken pursuant to Clause 14.1(d) of the Facilities Agreement shall be at LBHI's expense.

Excalibur's application against LBIE, referred to above, is intimately connected to its application in respect of LBREF3. Accordingly, the LBREF3 Administrators and the LBIE Administrators consider that there are potential economies of scale to be exploited by their working together in responding to the two applications.

This communication is confidential and may be privileged or otherwise protected by work product immunity.

Linklaters LLP is a limited liability partnership registered in England and Wales with registered number OC326345. It is a law firm regulated by the Solicitors Regulation Authority. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ or on www.linklaters.com and such persons are either solicitors, registered foreign lawyers or European lawyers.

Please refer to www.linklaters.com/regulation for important information on our regulatory position.
A12317574

# Linklaters

In the circumstances, LBHI and the Respondents have agreed in principle that your firm shall take the lead in conducting the responses of the Respondents to the applications referred to above, as well as the defence of any proceedings ultimately arising out of the applications. Further, LBHI has agreed to bear the costs of the application and/or proceedings against LBREF3 (including, without limitation, your and counsel's costs), subject to reimbursement of such costs (which it is agreed shall constitute expenses of LBREF3's administration) in accordance with clause 7.2 of the Facilities Agreement. Such costs shall be reimbursed in accordance with the mandatory payments waterfall set out in clause 7.2 of the Facilities Agreement as though they ranked, in priority, after those items referred to at clause 7.2(a)(i) but before those referred to at clause 7.2(a)(ii).

At the same time, the LBREF3 Administrators and the LBIE Administrators are conscious of their status as officers of the Court and of the fact that they are subject to statutory and other duties in relation to the companies in respect of which they are appointed. Accordingly, as discussed by representatives of our respective firms (Clarke/Rocher) on 29 June 2010 and for the avoidance of doubt, your instruction on behalf of the Respondents in respect of their responses to the above applications (and of the defence of any proceedings arising out of the applications) shall be in accordance with the following, each of which is expressly subject to an acknowledgement that LBREF3 is obliged by the Facilities Agreement to use reasonable endeavours to resist any request or demand by Excalibur to effect a transfer of the Class B notes:

(i)   You acknowledge that it is your intention that there be an open dialogue between your firm and (as appropriate) the LBREF3 Administrators, the LBIE Administrators and Linklaters LLP ("**Linklaters**"), as regards all material matters associated with the applications and/or any proceedings ultimately arising out of them. In particular, as from the date of the issue of the applications you shall keep the LBREF3 Administrators, the LBIE Administrators and Linklaters promptly apprised of all material developments in relation to the applications and/or any proceedings ultimately arising out of them. To the extent necessary for the Respondents to be able to understand developments, make decisions and give instructions in relation to the applications and/or proceedings, you shall provide legal advice to the Respondents.

(ii)  With respect to any and all pleadings, evidence, submissions (including skeleton arguments) and/or other materials to be submitted on behalf of the Respondents (or any of them), in respect of the applications and/or any proceedings ultimately arising out of them:

   a)   You shall provide Linklaters with copies of such documents in draft form, where possible sufficiently in advance of the relevant submission deadlines as to enable the LBREF3 Administrators and/or the LBIE Administrators to provide comments in relation to them;

   b)   To the extent that the comments provided pursuant to (ii) a) above are reasonable, and are provided a reasonable amount of time in advance of the relevant deadline (such reasonable amount of time to be assessed by reference to the timing with which the relevant documents were provided in draft form to Linklaters in accordance with (ii) a) above), you shall incorporate them into the relevant documents; and

   c)   To the extent it is envisaged that any of the LBREF3 Administrators, the LBIE Administrators or any of the employees, servants or agents of PricewaterhouseCoopers LLP ("**PwC**"), LBREF3, LBIE or Lehman Brothers Limited (in administration) should give evidence in respect of the applications and/or any proceedings ultimately arising out of them, the LBREF3 Administrators

**Linklaters**

and the LBIE Administrators shall retain a right of veto in respect of the content and filing of such evidence.

(iii) The LBREF3 Administrators and the LBIE Administrators shall retain (in relation to the companies in respect of which they are appointed) the right to instruct you that:

   a) any particular position or submission is, or is not, to be adopted or made on the relevant company's behalf (in correspondence, pleadings, before the Court or otherwise); and/or

   b) any particular document is, or is not, to be put in evidence on the relevant company's behalf;

provided in each case that the relevant instruction is provided a reasonable amount of time in advance of the relevant submission deadline (such reasonable amount of time to be assessed by reference to the timing with which Linklaters were put on actual notice of your intention to, as appropriate, adopt such position, make such submission or put such document in evidence). Where it is agreed by any one or more of the Respondents that a particular document is to be put in evidence or relied upon in evidence submitted by LBHI on behalf of LBIE and/or LBREF3, the LBREF3 Administrators and the LBIE Administrators (as appropriate) shall, on request from you and/or LBHI (in circumstances where you and/or LBHI would otherwise not have such authority), use their best endeavours to ensure that you and/or LBHI have the requisite authority to submit that document and that such submission does not breach the rights of any third party.

(iv) For the avoidance of doubt, the LBREF3 Administrators and the LBIE Administrators shall retain such discretion, in relation to the conduct of LBREF's and LBIE's responses to the applications and/or the defence of any proceedings ultimately arising out of them, as to enable the LBREF3 Administrators and the LBIE Administrators to take any steps they consider necessary in order to comply with their statutory or other duties in relation to LBREF3 and LBIE.

(v) The Respondents acknowledge that the arrangements set forth herein will not preclude you from continuing to represent LBHI or any of its affiliates, whether in respect of this or any other matter where the interests of LBHI may be adverse to the interests of LBREF3, LBIE or the administrators thereof. In the event of any of the Respondents terminating your retainer pursuant to this letter (which, for the avoidance of doubt, they shall be entitled to do at any time with immediate effect, by giving written notice to you) or your ceasing to act for any of the Respondents (which you shall be entitled to do on reasonable notice), you agree to return on request any material provided to you by the relevant Respondent during the course of your retainer.

It has also been agreed that, should LBIE cease to be party to the proceedings arising out of the applications, your firm shall continue to take the lead in conducting the response of LBREF3, on the same basis as above, with all references to LBIE and the LBIE Administrators being deemed to be deleted from this letter going forwards (save as to costs already by then incurred).

As regards the agreement that LBHI shall bear the costs of LBREF3's response to the application against it (and the defence of any proceedings ultimately arising out of such application), subject to the reimbursement arrangements referred to above, such obligation shall, for the avoidance of doubt, extend to (i) all of LBREF3's, PwC's and Linklaters' associated costs (subject to the provision to you of sufficiently detailed invoices as to enable you to determine that all of the costs were in fact incurred in respect of the application (and/or proceedings ultimately arising out of such application) and are properly payable in accordance with the terms of this letter); and (ii) the bearing of any adverse costs Orders made against

# Linklaters

LBREF3 (or the LBREF3 Administrators) in the context of the application against LBREF3 and/or any proceedings ultimately arising out of it. We note that the logistics for ensuring payment of the relevant costs are addressed in separate correspondence (dated as of 2 September 2010) between (among others) LBHI and the LBREF3.

We trust that none of the above is controversial, but should be grateful if you would confirm your own and your client's agreement as to the matters set out in this letter.

Yours faithfully

*Linklaters LLP*

Linklaters LLP