**Hearing Date: March 23, 2011 at 10:00 a.m.**

Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                                               :
In re:                                                         :    Chapter 11
                                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,                         :    Case No. 08-13555 (JMP)
                                                               :
                              Debtors.                         :    (Jointly Administered)
                                                               :
---------------------------------------------------------------- x

**STATEMENT OF OFFICIAL COMMITTEE OF
UNSECURED CREDITORS IN SUPPORT OF DEBTORS' MOTION
PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE FOR
APPROVAL OF TWO NOTE PURCHASE AGREEMENTS WITH THE INSOLVENCY
ADMINISTRATOR OF LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENZ)**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Chapter 11 Cases") of Lehman Brothers Holdings Inc. ("LBHI") and each of its affiliated chapter 11 debtors in possession (collectively, the "Debtors"), hereby files this statement in support of the Debtors' motion, dated March 2, 2011 [Docket No. 14743] (the "Motion"), pursuant to sections 105 and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), seeking entry of an order approving two note purchase agreements, each dated March 1, 2011 (the "SASCO Agreement" and the "Spruce-Verano Agreement" and, together, the "Note Purchase Agreements"), between LBHI and Dr. Michael C. Frege in his capacity as Insolvency Administrator (*Insolvenzverwalter*) (the

"LBB InsAdmin") of Lehman Brothers Bankhaus Aktiengesellschaft (*in Insolvenz*) ("Bankhaus"), a wholly owned subsidiary of LBHI. In support of the Motion, the Committee respectfully states as follows:

## BACKGROUND

1. On November 13, 2008, at the direction of the German banking regulator, the Frankfurt Lower District Court commenced an insolvency proceeding for Bankhaus (the "German Proceeding") and appointed Dr. Frege as Insolvency Administrator. Under applicable German law, Dr. Frege is vested with the power to administer and dispose of the assets of the Bankhaus estate.

2. On May 22, 2009, this Court entered an order granting the relief sought in Bankhaus's chapter 15 petition seeking recognition of the German Proceeding as a foreign main proceeding. See In re Lehman Brothers Bankhaus AG (*In Insolvenz*), Case No. 09-12704 [Docket No. 25].

3. On December 18, 2009, the Debtors filed a Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code and Federal Rule of Bankruptcy 9019 for Authorization and Approval of a Settlement Agreement with the LBB InsAdmin (the "Settlement Motion"). [Docket No. 6303], which sought approval of an agreement, dated December 15, 2009, by and among (i) LBHI, Lehman ALI, Inc., Lehman Commercial Paper Inc. ("LCPI"), and (ii) the LBB InsAdmin (the "December 2009 Agreement") [Docket No. 6414]. The December 2009 Agreement provided for, inter alia, the Debtors' acquisition of certain assets from Bankhaus at a discount to market valuations. On December 30, 2009, the Committee filed a statement in support of the Settlement Motion. Having determined that (i) the proposed settlement was reasonable and appropriate under the circumstances and (ii) consummation of the transactions

2

contemplated by the December 2009 Agreement was in the best interests of the Debtors and their estates, the Court entered an order approving the December 2009 Agreement on January 14, 2010 [Docket No. 6665].

4.   Thereafter, the Debtors and the LBB InsAdmin engaged in negotiations regarding a global resolution of all issues between them that needed to be resolved to make possible the confirmation of a plan of reorganization for the Debtors, including the treatment of their mutual claims (the "Plan Settlement").  While the Debtors are not currently seeking approval of the Plan Settlement, they seek approval of the Note Purchase Agreements, which are a key feature of the overall resolution of claims between the Debtors and Bankhaus.

## STATEMENT

5.   The Committee recommends that the Court approve the Note Purchase Agreements because they will maximize recoveries to the unsecured creditors of LBHI and LCPI.  As one of the architects of this feature of the Plan Settlement, the Committee is convinced that the Debtors' acquisition of the Bankhaus Notes (as defined below) will, in the context of the overall Plan Settlement, provide significant economic and strategic benefit to the Debtors' estates and their creditors.  The terms of the Note Purchase Agreements are sufficiently favorable to the Debtors, however, that the Note Purchase Agreements should be approved on a stand-alone basis, without reference to the benefits of the overall Plan Settlement of which they are part.

6.   As set forth in the Motion, prior to their petition dates, the Debtors sold or participated portions of certain real estate and commercial loans and equity positions (the "Underlying Assets") to various special purpose entities, including SASCO 2008-C2 LLC

3

("SASCO")[1], Spruce CCS, Ltd. ("Spruce") and Verano CCS, Ltd. ("Verano" and, together with SASCO and Spruce, the "SPEs"). The SPEs issued securities secured by the Underlying Assets and the cash flows therefrom (the "Notes"). Currently, certain of the Notes are owned by LBHI and LCPI, while others (the "Bankhaus Notes") are owned by Bankhaus. LBHI's purchase of the Bankhaus Notes will confer complete control over the SPEs on LBHI and LCPI.

7. The purchase of the Bankhaus Notes reduces LBHI's potential liability to Bankhaus under that certain Security & Collateral Agreement, dated August 15, 2002 (the "Security & Collateral Agreement"). Pursuant to the Security & Collateral Agreement, LBHI agreed to post cash collateral to Bankhaus in respect of any losses suffered by Bankhaus through "Trading Book Transactions" or "Banking Book Transactions" (as defined in the Security & Collateral Agreement) if either (i) an asset decreased in value or (ii) a counterparty failed to make a payment when due and payable under a "Trading Book Transaction" or "Banking Book Transaction." The Bankhaus Notes are among the assets that are subject to the Security & Collateral Agreement. Thus, a portion of Bankhaus's claim asserted against LBHI (the "SCA Claim") arises from the shortfall in value that Bankhaus has suffered on account of the Bankhaus Notes. See Bankhaus Proof of Claim No. 58233, October 30, 2009, ¶ 21.

8. The Committee and its advisors expended considerable time and effort working with the Debtors toward a resolution of all claims between LBHI and Bankhaus, the largest of which is the SCA Claim. The Plan Settlement, including the component thereof reflected in the Note Purchase Agreements, is the product of extensive negotiations between the Debtors and the LBB InsAdmin. The Committee (i) closely monitored these negotiations, (ii) directly participated, when appropriate, in the negotiations through its advisors, and (iii) had

---

[1] The Settlement Motion inaccurately refers to this entity as SASCO 2008-C2 Ltd.

4

a meaningful and positive impact on the outcome of settlement discussions. Having carefully considered the economic terms of the Note Purchase Agreements,[2] the Committee has determined that the Note Purchase Agreements are in the best interests of the Debtors' estates. Accordingly, the Committee supports the relief requested in the Motion.

         9.        The transactions contemplated by the Note Purchase Agreements are extraordinary — both in terms of dollar amount and because liquidating debtors in possession are seeking authority to *acquire* assets. For these reasons, the Committee intensified its usual degree of scrutiny and took great care to ensure that the Note Purchase Agreements benefited its constituencies. Although the Note Purchase Agreements do not resolve all of the Debtors' disputes with Bankhaus, they reflect material progress toward that end while also providing for (a) a substantial potential for profit to LBHI; (b) control of 100% of the capital structure of the SPEs and management of the Underlying Assets;[3] and (c) fixing of the portion of the SCA Claim arising from the Bankhaus Notes at a level favorable to LBHI. The Committee believes that both the strategic benefit obtained by the Debtors from control and management of the Underlying Assets and the favorable pricing for the Bankhaus Notes will bring significant value to the Debtors' estates.

---

[2]     The Committee and its advisors analyzed each of the Underlying Assets to confirm the economic benefits of the Note Purchase Agreements. Pursuant to the terms of the Note Purchase Agreements, LBHI will purchase the Bankhaus Notes at a significant discount to their outstanding principal amount and the Committee's assessment of the value of the Underlying Assets. In the aggregate, LBHI will pay a purchase price which is calculated to equal $957,000,000 (subject to an increased payment of up to $100 million based on certain post-closing conditions) for assets with an aggregate outstanding principal amount of approximately $1,543,000,000. LBHI has agreed, however, that Bankhaus will have an allowed, non-priority, general unsecured claim under the Security & Collateral Agreement in respect of the Bankhaus Notes for $273 million.

[3]     This would allow the Debtors to unwind or dissolve the SPEs (in whole or part), thus maximizing the value of the Underlying Assets.

10. The Committee's advisors reviewed each of the successive drafts of the Note Purchase Agreements and discussed their comments with the Debtors throughout the drafting process. The Committee's comments were addressed favorably in the final Note Purchase Agreements, and all questions regarding the documentation were answered satisfactorily.

11. In addition to addressing customary purchase and sale provisions, the Note Purchase Agreements also benefit the Debtors' estates by providing a procedure, approved by the LBB InsAdmin and to be approved by the Bankhaus creditors' committee and creditors' assembly as a condition to the effectiveness of the Note Purchase Agreements, to address title defects (if any) that may affect certain of the Underlying Assets (the "Specified Underlying Assets"). Specified Underlying Assets mean present or past Underlying Assets with respect to which Bankhaus had a right, title or interest at any time prior to the origination of the related SPE transaction. Under Section 5 of the Note Purchase Agreements, if such a title defect is discovered during the six months period after the closing, and the parties are not able to cure the defect, then the LBB InsAdmin is required to pay the Debtors in cash an amount equal to the loss suffered by the Debtors as a result of such title defect (or, if less, fifty percent of the allocated purchase price associated with that Specified Underlying Asset). Absent the Note Purchase Agreements, the ability of the Debtors or the SPEs to bring claims against Bankhaus in respect of such title defects, or obtain recovery therefor, would be greatly limited.

12. The Note Purchase Agreements are similar, in some respects, to the December 2009 Agreement. Both agreements required a significant outlay of cash by the Debtors to purchase assets from Bankhaus (albeit at a substantial discount from the Debtors' valuation of the underlying assets). For all of the reasons that the December 2009 Agreement

benefitted the Debtors' creditors — by enabling the Debtors' estates to realize potentially substantial future gains while also significantly reducing litigation risk — so too do the Note Purchase Agreements. Moreover, the Note Purchase Agreements have an additional benefit — the reduction of the SCA Claim.

13. The Committee shares the Debtors' view that entry into the Note Purchase Agreements represents a sound exercise of the Debtors' business judgment. The benefits of the Note Purchase Agreements to the Debtors' estates are manifest, and the Motion should be approved.

## CONCLUSION

14. For the foregoing reasons, the Committee respectfully requests that the Court grant (a) the Motion and (b) such other relief as the Court deems just.

Dated:   New York, New York
         March 14, 2011

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**

By:   /s/ Dennis F. Dunne
Dennis F. Dunne
Evan R. Fleck
Dennis C. O'Donnell
1 Chase Manhattan Plaza
New York, New York 10005
Telephone: (212) 530-5000

Counsel for Official Committee of Unsecured
Creditors of Lehman Brothers Holdings Inc., et al.