# EXHIBIT A

1159069.1
1159069.1

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc., | Case No of Debtor 08-13555 |

# PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)        0000034488

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Program Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Punjab National Bank (International) Limited
care of TLT LLP
One Redcliff Street
Bristol
United Kingdom
BS1 6TP

Telephone number: 0044 117 917 7826    Email Address: rtait@tltsolicitors.com

Name and address where payment should be sent (if different from above)

Telephone number:        Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number:
    (If known)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1.** Amount of Claim as of Date Case Filed: $ 5,000,000
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete Item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☑ Check this box if all or part of your claim is based on a Guarantee.*
**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.\***
☑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.** Basis for Claim: See attached
(See instruction #2 on reverse side.)

**3.** Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4.** Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe: _____
Value of Property: $ _____    Annual Interest Rate _____ %
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____    Basis for perfection: _____

Amount of Secured Claim: $ _____    Amount Unsecured: $ _____

**5.** Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$ _____

**6.** Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ _____
(See instruction #6 on reverse side.)

**7.** Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.** Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 23 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: 16 Sep 09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. TLT LLP   TLT LLP Solicitors for the Creditor |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## _____ DEFINITIONS _____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:
Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities lists available on http://www.lehman-docket.com as of July 27, 2009.

## _____ INFORMATION _____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), and any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**The Schedule referred to in the Proof of Debt of Punjab National Bank (International) Limited dated 18 September 2009 - Case number 08-13555**

The Debtor is the guarantor of $5,000,000 credit linked notes (Reference Entity: Tata Motors Limited) ("the Notes") issued by Lehman Brothers Treasury Co. BV ("LBTCBV") which were issued to the Creditor.

Interest is payable from the period from 14 November 2007 until payment of the notes at the rate per annum of 6-month USD LIBOR plus 275bps.

EXECUTION COPY

Final Terms dated February 13, 2008

## LEHMAN BROTHERS TREASURY CO. B.V.
*(incorporated with limited liability in The Netherlands and*
*having its statutory domicile in Amsterdam)*
**Issue of USD 5,000,000 Floating Rate Credit Linked Notes due March 20, 2013**
**unconditionally and irrevocably**
**Guaranteed by Lehman Brothers Holdings Inc.**
**under the U.S.$100,000,000,000**
**Euro Medium-Term Note Program**

The Base Prospectus referred to below (as completed by these Final Terms) has been prepared on the basis that, except as provided in sub-paragraph (ii) below, any offer of Notes in any Member State of the European Economic Area which has implemented the Prospectus Directive (2003/71/EC) (each, a "Relevant Member State") will be made pursuant to an exemption under the Prospectus Directive, as implemented in that Relevant Member State, from the requirement to publish a prospectus for offers of the Notes. Accordingly any person making or intending to make an offer of the Notes may only do so:

(i)     in circumstances in which no obligation arises for the Issuer or any Dealer to publish a prospectus pursuant to Article 3 of the Prospectus Directive or supplement a prospectus pursuant to Article 16 of the Prospectus Directive, in each case, in relation to such offer; or

(ii)    in those Public Offer Jurisdictions mentioned in Paragraph 35 of Part A below, provided such person is one of the persons mentioned in Paragraph 35 of Part A below and that such offer is made during the Offer Period specified for such purpose therein.

Neither the Issuer, the Guarantor nor any Dealer has authorised, nor do they authorise, the making of any offer of Notes in any other circumstances.

### PART A – CONTRACTUAL TERMS

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated July 24, 2007, the supplemental Prospectus No. 1 dated September 20, 2007, the supplemental Prospectus No. 2 dated October 15, 2007, the supplemental Prospectus No. 3 dated December 17, 2007 and the supplemental Prospectus No. 4 dated February 5, 2008, which together constitute a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "Prospectus Directive"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with the Base Prospectus as so supplemented.

Full information on the Issuer, the Guarantor and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus.

| | | |
|---|---|---|
| 1. | (i) Issuer: | Lehman Brothers Treasury Co. B.V. |
| | (ii) Guarantor | Lehman Brothers Holdings Inc. |
| 2. | Series Number: | 9848 |
| 3. | Specified Currency or Currencies: | United States Dollars ("USD") |

| | | |
|---|---|---|
| 4. | Aggregate Nominal Amount: | USD5,000,000 |
| 5. | Issue Price: | 100.00 per cent. of the Aggregate Nominal Amount |
| 6. | Specified Denominations and Units: | |
| | (i) Specified Denominations: | USD1,000,000 |
| | (ii) Calculation Amount | Specified Denomination |
| | (iii) Trading in Units | Not Applicable |
| 7. | (i) Issue Date: | February 18, 2008 |
| | (ii) Interest Commencement Date: | February 18, 2008 |
| 8. | Maturity Date: | The earlier to occur of: |
| | | (i) the Credit Event Redemption Date; and |
| | | (ii) March 20, 2013 (the "**Scheduled Maturity Date**"), |
| | | provided that, if, following the occurrence of a Credit Event, the Credit Event Redemption Date would fall after the Scheduled Maturity Date then the Maturity Date shall be such Credit Event Redemption Date. |
| 9. | Interest Basis: | 3 Month USD-LIBOR-BBA + 4.05 per cent. per annum Floating Rate (further particulars specified below) |
| 10. | Redemption/Payment Basis: | 100.00 per cent. subject to the terms of Appendix 1(A) (*Credit Event*) |
| 11. | Change of Interest or Redemption/Payment Basis: | Not Applicable |
| 12. | Put/Call Options: | Not Applicable |
| 13. | (i) Status of the Notes: | Senior Note |
| | (ii) Status of the Guarantee | Senior Guarantee |
| 14. | Method of distribution: | Non-syndicated |

**PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE**

| | | |
|---|---|---|
| 15. | **Fixed Rate Note Provisions** | Not Applicable |
| 16. | **Floating Rate Note Provisions** | Applicable |
| | (i)  Interest Period(s)/Interest Payment Dates: | The 20th day of March, June, September and December of each year, from and including March 20, 2008 to and including the earlier to occur of (i) |

|  |  | the Scheduled Maturity Date; or (ii) a Credit Event Determination Date, subject to Appendix 1(B) (*Suspension of Interest Payments*). |
|---|---|---|
| (ii) | Business Day Convention: | Modified Following Business Day Convention |
|  |  | The Business Day Convention applies to any date other than the Trade Date and the Scheduled Maturity Date. |
| (iii) | Additional Business Centre(s) for interest accrual only (Condition 3(b)(B)): | Not Applicable |
| (iv) | Manner in which the Rate(s) of Interest is/are to be determined: | Screen Rate Determination |
| (v) | Party responsible for calculating the Rate(s) of Interest and Interest Amount(s) (if not the Fiscal Agent): | Lehman Brothers International (Europe) shall be the Calculation Agent. |
| (vi) | Screen Rate Determination: |  |
|  | - Reference Rate: | 3 Month USD-LIBOR-BBA, provided that the Reference Rate for the first Interest Period shall be determined pursuant to Linear Interpolation (as defined in the 2006 ISDA Definitions, as published by the International Swaps and Derivatives Association, Inc.) of 1 Month and 2 Month USD-LIBOR-BBA |
|  | - Interest Determination Date(s): | The day that is two London Banking Days prior to the start of each Interest Period |
|  |  | "**London Banking Day**" means any day on which commercial banks are open for general business in London (including dealings in foreign exchange and foreign deposits) |
|  | - Relevant Screen Page: | Reuters Page LIBOR01 |
|  | - Relevant Time: | 11:00 a.m. London time |
|  | - Relevant Financial Centre: | London |
| (vii) | ISDA Determination: | Not Applicable |
| (viii) | Margin(s): | + 4.05 per cent. per annum |
| (ix) | Multiplier: | Not Applicable |
| (x) | Minimum Interest Rate: | Not Applicable |
| (xi) | Maximum Interest Rate: | Not Applicable |

- 3 -

|       | (xii)  | Day Count Fraction: | Actual/360 |
|-------|--------|---------------------|------------|
|       | (xiii) | Fall back provisions, rounding provisions, denominator and any other terms relating to the method of calculating interest on Floating Rate Notes, if different from those set out in the Conditions: | Not Applicable |
|       | (xiv)  | Option to defer interest payments: | Not Applicable |
| 17.   | **Zero Coupon Note Provisions** | | Not Applicable |
| 18.   | **Index-Linked Interest Note/Other Variable-Linked Interest Note Provisions** | | Not Applicable |
| 19.   | **Dual Currency Note Provisions** | | Not Applicable |

**PROVISIONS RELATING TO REDEMPTION**

| 20. | **Call Option** | Not applicable |
|-----|-----------------|----------------|
| 21. | **Put Option** | Not Applicable |
| 22. | **Final Redemption Amount of each Note** | Redemption at par subject to paragraph 10 and Appendix 1 |
| 23. | **Early Redemption Amount of each Note** | |
|     | Early Redemption Amount(s) per Calculation Amount payable on redemption for taxation reasons or on event of default and/or the method of calculating the same (if required or if different from that set out in the Conditions): | An amount equal to the Specified Denomination of each Note, plus any interest accrued but unpaid, on such day as is selected by the Calculation Agent (provided that such day is not more than 15 days before the date fixed for redemption of the Notes), less the reasonable cost to the Issuer of unwinding any related hedging arrangements or other instruments of any type whatsoever, all as calculated by the Calculation Agent in good faith and in a commercially reasonable manner. |

**GENERAL PROVISIONS APPLICABLE TO THE NOTES**

| 24. | Form of Notes: | Bearer Form.  Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form.  Interests in a permanent global Note will be exchangeable for definitive Notes in bearer form in the limited circumstances described in the permanent global Note. |
|-----|----------------|------------|

- 4 -

|  | New Global Note Form: | Not Applicable |
|---|---|---|
| 25. | Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature): | Not Applicable |
| 26. | Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment: | Not Applicable |
| 27. | Details relating to Instalment Notes: Instalment Amounts and Instalment Dates: | Not Applicable |
| 28. | Details relating to Extendible Notes: | Not Applicable |
| 29. | Consolidation provisions: | Not Applicable |
| 30. | Other final terms: | 1. Unless otherwise stated herein, Lehman Brothers International (Europe) (the "**Calculation Agent**") shall be solely responsible for the determination and calculation of any and all determinations, calculations or valuations in accordance with the terms of the Notes. The determinations of the Calculation Agent shall be conclusive and binding and shall be made in a commercially reasonable manner. The Calculation Agent shall not be liable for any loss, liability, cost, claim, action, demand or expense (including without limitation, all costs, charges and expenses paid or incurred in disputing or defending any of the foregoing) arising out of or in relation to or in connection with its appointment or the exercise of its functions, except such as may result from its own wilful default, negligence or bad faith or that of its officers or agents.<br><br>2. See Appendix 1 and Appendix 2. |

## DISTRIBUTION

| 31. | (i) | If syndicated, names and addresses of Managers and underwriting commitments: | Not Applicable |
|---|---|---|---|
|  | (ii) | Date of Syndicated Trade | Not Applicable |

Agreement:

|   |      |   |   |
|---|------|---|---|
|   | (iii) | Stabilising Manager (if any): | Not Applicable |
| 32. | If non-syndicated, name and address of Dealer: | | Lehman Brothers International (Europe) 25 Bank Street, London E14 5LE |
| 33. | Total commission and concession: | | Not Applicable |
| 34. | Selling restrictions: | | |
|   | (i) | Additional Selling Restrictions: | As stated in the Programme Prospectus |
| 35. | Non-exempt Offer: | | Not Applicable |

## PURPOSE OF FINAL TERMS

These Final Terms comprise the final terms of the Notes described herein pursuant to the U.S.$100,000,000,000 Euro Medium-Term Note Program of Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG.

## RESPONSIBILITY

The Issuer and the Guarantor accept responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer:


By:      ......................................................................
         Duly authorised

- 6 -

## PART B – OTHER INFORMATION

1. **LISTING**

   Listing:                          None

   Admission to Trading:             Not Applicable

2. **RATINGS**

   The Notes to be issued have not been rated.

3. **INTERESTS OF NATURAL AND LEGAL PERSONS INVOLVED IN THE ISSUE/OFFER**

   Save as discussed in the section headed "Subscription and Sale" in the Base Prospectus, so far as the Issuer is aware, no person involved in the offer of the Notes has an interest material to the offer.

4. **REASONS FOR THE OFFER, ESTIMATED NET PROCEEDS AND TOTAL EXPENSES**

   Not Applicable

5. **YIELD (Fixed Rate Notes Only)**

   Not Applicable

6. **HISTORIC INTEREST RATES (Floating Rate Notes only)**

   Not Applicable

7. **PERFORMANCE OF INDEX/FORMULA/OTHER VARIABLE, EXPLANATION OF EFFECT ON VALUE OF INVESTMENT AND ASSOCIATED RISKS AND OTHER INFORMATION CONCERNING THE UNDERLYING (Index-linked or other variable Linked Notes only)**

   Not Applicable

8. **PERFORMANCE OF RATES OF EXCHANGE AND EXPLANATION OF EFFECT ON VALUE OF INVESTMENT (Dual Currency Notes only)**

   Not Applicable

9. **OPERATIONAL INFORMATION**

   ISIN Code:                        XS0346689499

   Common Code:                      034668949

   New Global Note intended to be held in a manner which would allow Eurosystem eligibility:    Not Applicable

   Any clearing system(s) other than Euroclear Bank S.A./N.V. and    Not Applicable

- 7 -

Clearstream Banking, societe anonyme
and the relevant identification number(s):

Delivery:                                Delivery against payment

The Aggregate Nominal Amount of Notes    Not Applicable
issued has been translated into USD at the
rate of «Exchange_Rate_to_USD» =
$ producing a sum of (for Notes not
denominated in U.S. Dollars):

Names and addresses of additional Paying    Not Applicable
Agent(s) (if any):

10. **TERMS AND CONDITIONS OF THE OFFER**

Not Applicable

**Appendix 1**

(A) *Credit Event*

Upon the occurrence of a Credit Event with respect to the Reference Entity, as determined by the Calculation Agent in its sole and absolute discretion at any time during the Credit Observation Period, the Issuer will redeem, on the Credit Event Redemption Date, the Notes at zero and arrange for the delivery to each Noteholder of Deliverable Obligations with an aggregate principal amount equal to the Physical Delivery Entitlement Amount applicable to that Noteholder on or by the Credit Event Redemption Date together with an amount in USD representing interest (if any) calculated by the Calculation Agent accrued from and including the Interest Payment Date immediately prior to the Credit Event Determination Date (or if none, the Issue Date) to but excluding the Credit Event Determination Date in accordance with paragraph 16(i) above; *provided that,* no interest shall accrue from and including the Credit Event Determination Date to and including the Credit Event Redemption Date.

Delivery of any Deliverable Obligations shall be made against presentation and surrender of the Notes at the address of the Issuer specified in the Program, subject to compliance by the Noteholder with all applicable laws and regulations in respect of the holding of the relevant Deliverable Obligations. Delivery shall be made to each Noteholder or, where the relevant Deliverable Obligations can be transferred by book entries, by transfer to an account in the relevant book entry system nominated by each Noteholder at least two (2) Business Days prior to the Credit Event Redemption Date.

However, if the Calculation Agent determines in good faith and in a commercially reasonable manner that it is impossible, impracticable or illegal in any jurisdiction including, without limitation, due to a failure of any clearing or other book entry system or due to any law or regulation but not including market conditions to deliver or procure delivery of the Deliverable Obligations due to a Noteholder which would otherwise be deliverable, then such Deliverable Obligations shall not be delivered to such Noteholder and, instead, the Issuer shall pay to such Noteholder in redemption of the relevant Notes an amount equal to the Cash Settlement Amount in respect of such Deliverable Obligations.

Furthermore, if the Calculation Agent determines in good faith and in a commercially reasonable manner that it is not possible to deliver Deliverable Obligations in a face amount equal to the Physical Delivery Entitlement Amount due to a Noteholder on account of the denomination size of the Deliverable Obligations, then the Deliverable Obligations shall be delivered to such Noteholder in a

- 9 -

face amount which is as near to (but no more than) the Physical Delivery Entitlement Amount as the denominations of the Deliverable Obligations allow and a USD amount equal to the market value of the remaining principal amount of Deliverable Obligations which would have been deliverable in respect of such Notes (as determined by the Calculation Agent on the third Business Day prior to the Credit Event Redemption Date) and shall be paid to such Noteholder.

(B) *Suspension of Interest Payments*

With respect to an Interest Payment Date, notwithstanding Condition 3(b), if on any Interest Payment Date a Potential Failure to Pay exists with respect to the Reference Entity which has not been cured and which is within the applicable Grace Period and which has not given rise to a Failure to Pay Credit Event then no interest shall be payable in respect of the Notes on such Interest Payment Date.

On the day which is three Business Days after the day (which, for the avoidance of doubt, may be such Interest Payment Date) on which all Potential Failures to Pay are cured within the applicable Grace Period the Issuer shall pay to each Noteholder an amount equal to the aggregate amount of interest (if any) that would have been payable if on such Interest Payment Date payments of interest had not been suspended as a result of such Potential Failures to Pay.

(C) *Definitions*

"**Cash Settlement Amount**" means, with respect to an amount of Deliverable Obligations, an amount which is equal to the highest firm bid for such Deliverable Obligations obtained by the Calculation Agent. The Calculation Agent shall seek firm bids from at least three (3) dealers in obligations of a type similar to the Deliverable Obligations, one of which shall be nominated by the Noteholder by notice to the Calculation Agent if at such time one Noteholder holds the entire principal amount of the Notes.

"**Physical Delivery Entitlement Amount**" means, in respect of a Noteholder, an amount in USD equal to the principal amount of the Notes held by such Noteholder.

See Appendix 2 for definitions and further details relating to the occurrence of Credit Events.

## Appendix 2

### (Credit Event Provisions)

| | |
|---|---|
| Affiliate: | In relation to any person, any entity controlled, directly or indirectly, by the person, any entity that controls, directly or indirectly, the person or any entity directly or indirectly under common control with the person. For this purpose, "control" of any entity or person means ownership of a majority of the voting power of the entity or person. |
| Benchmark Obligation: | The Zero Coupon Bonds due July 12, 2012 issued by the Reference Entity (ISIN: XS0307881762). <br><br> For the avoidance of doubt, the Benchmark Obligation is an Accreting Obligation. |
| Bond: | Any one or more obligations (whether as principal or surety or otherwise) of a type that is included in the definition of "Borrowed Money" that is the form of, or represented by, a bond, note (other than notes delivered pursuant to Loans), certified debt security or other debt security and shall not include any other type of Borrowed Money. |
| Borrowed Money: | Any obligation (excluding an obligation under a revolving credit arrangement for which there are no outstanding, unpaid drawings in respect of principal) for the payment or repayment of borrowed money (which term shall include, without limitation, deposits and reimbursement obligations arising from drawings pursuant to letters of credit). |
| Credit Event: | The determination by the Calculation Agent in its sole and absolute discretion (it being understood that the Calculation Agent shall have no obligation to determine a Credit Event at |

- 11 -

any time) that there has been in existence, or there is occurring, at any time during the Credit Observation Period, any of the following events or conditions with respect to the Reference Entity:

**Failure to Pay**
**Restructuring**
**Bankruptcy**

If an occurrence would otherwise constitute a Credit Event, such occurrence will constitute a Credit Event whether or not such occurrence arises directly or indirectly from: (a) any lack or alleged lack of authority or capacity of the Reference Entity to enter into any Obligation, (b) any actual or alleged unenforceability, illegality, impossibility or invalidity with respect to any Obligation, however described, (c) any applicable law, order, regulation, decree or notice, however described, or the promulgation of, or any change in, the interpretation by any court, tribunal, regulatory authority or similar administrative or judicial body with competent or apparent jurisdiction of any applicable law, order, regulation, decree or notice, however described, or (d) the imposition of, or any change in, any exchange controls, capital restrictions or any other similar restrictions imposed by any monetary or other authority, however described.

Where:

*"Failure to Pay"* means after the expiration of any applicable or deemed Grace Period (after the satisfaction of any conditions precedent to the commencement of such Grace Period), the failure by the Reference Entity to make, when and where due, any payments in aggregate amount of not less than the Payment

- 12 -

Requirement under one or more Obligations, in accordance with the terms of such Obligations at the time of such failure.

"*Restructuring*" means that, (a) with respect to one or more Obligations and in relation to an aggregate amount of not less than the Default Requirement, any one or more of the following events occurs in a form that binds all holders of such Obligation, is agreed between the Reference Entity or a Governmental Authority and a sufficient number of holders of such Obligation to bind all holders of the Obligation or is announced (or otherwise decreed) by the Reference Entity or a Governmental Authority in a form that binds all holders of such Obligation, and such event is not expressly provided for under the terms of such Obligation in effect as of the later of the Trade Date and the date as of which such Obligation is issued or incurred:

(i)    a reduction in the rate or amount of interest payable or the amount of scheduled interest accruals;

(ii)   a reduction in the amount of principal or premium payable at maturity or at scheduled redemption dates;

(iii)  a postponement or other deferral of a date or dates for either (A) the payment or accrual of interest or (B) the payment of principal or premium;

(iv)  a change in the ranking in priority of payment of any Obligation, causing the Subordination of such Obligation to any other Obligation; or

(v)   any change in the currency or composition of any payment of interest or principal to any currency which is not a Permitted Currency,

(A)   "Permitted Currency" means (1) the legal tender of any Group of 7 country (or any country that becomes a member of the Group of 7 if such Group of 7 expands its membership) or (2) the legal tender of any country which, as of the date of such change, is a member of the Organisation for Economic Cooperation and Development and has a local currency long-term debt rating of either AAA or higher assigned to it by Standard & Poor's, a division of The McGraw-Hill Companies, Inc. or any successor to the rating business thereof, Aaa or higher assigned to it by Moody's Investors Services, Inc. or any successor to the rating business thereof or AAA or higher assigned to it by Fitch Ratings or any successor the rating business thereof.

(b)   Notwithstanding the provisions of (a), above, none of the following shall constitute a Restructuring:

(i)   the payment in euros of interest or principal in relation to an Obligation denominated in a currency of a Member State of the European Union that adopts or has adopted the single currency in accordance with the Treaty establishing the European Community, as amended by the Treaty on European Union;

(ii)   the occurrence of, agreement to or announcement of any of the events described in (a)(i) to (v) above due

- 14 -

to an administrative adjustment, accounting adjustment or tax adjustment or other technical adjustment occurring in the ordinary course of business; and

(iii) the occurrence of, agreement to or announcement of any of the events described in (a)(i) to (v) above in circumstances where such event does not directly or indirectly result from a deterioration in the creditworthiness or financial condition of the Reference Entity.

(c) For purposes of paragraphs (a) and (b) above, the term "Obligation" shall be deemed to include Underlying Obligations for which the Reference Entity is acting as provider of any Qualifying Guarantee. In the case of a Qualifying Guarantee and an Underlying Obligation, references to the Reference Entity in paragraph (a) of this definition shall be deemed to refer to the relevant Underlying Obligor and the reference to the Reference Entity in paragraph (b) of this definition shall continue to refer to the Reference Entity.

*"Bankruptcy"* means the Reference Entity (a) is dissolved (other than pursuant to a consolidation, amalgamation or merger); (b) becomes insolvent or is unable to pay its debts or fails or admits in writing in a judicial, regulatory or administrative proceeding or filing its inability generally to pay its debts as they become due; (c) makes a general assignment, arrangement or composition with or for the benefit of its creditors; (d) institutes or has instituted against it a proceeding seeking a judgement of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its

- 15 -

winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition (i) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (ii) is not dismissed, discharged, stayed or restrained in each case within thirty calendar days of the institution or presentation thereof; (e) has a resolution passed for its winding-up, official management or liquidation (other than pursuant to a consolidation, amalgamation or merger); (f) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets; (g) has a secured party take possession of all or substantially all its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all its assets and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within thirty calendar days thereafter; or (h) causes or is subject to any event with respect to it which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (a) to (g) (inclusive).

Credit Event Notice: An irrevocable notice from the Calculation Agent (which may be oral including by telephone) to the Issuer and the Calculation Agent that describes a Credit Event that occurred during the Credit Observation Period.

Credit Event Determination Date: The date on which the Calculation Agent serves an effective Credit Event Notice and Notice of Publicly Available Information on the Issuer and the Calculation Agent.

Credit Event Redemption

- 16 -

| | |
|---|---|
| Date: | The date determined by the Calculation Agent in good faith and in a commercially reasonable manner occurring on or before the day that is 125 Business Days following the Credit Event Determination Date. In the event that the Issuer is required to redeem the Notes by payment of the Cash Settlement Amount in respect of each Note, the Credit Event Redemption Date shall be three Business Days following the date upon which the highest firm bid quotation of the Deliverable Obligation is determined by the Calculation Agent in accordance with paragraph 10 and Appendix 1(A) (*Credit Event*). |
| Credit Observation Period: | The period from (and including) the Trade Date to (and including) the later of (a) the Scheduled Maturity Date and (b) the Grace Period Extension Date where (i) a Credit Event occurs after the Scheduled Maturity Date and (ii) the corresponding Potential Failure to Pay occurs on or prior to the Scheduled Maturity Date. |
| Default Requirement: | USD 10,000,000, or its equivalent in the relevant currency or currencies in which an Obligation is denominated. |
| Deliverable Obligations: | The Reference Obligation or an obligation of the Reference Entity (either directly or as provider of any Qualifying Guarantee) which is (i) a Bond or Loan with the Deliverable Obligation Characteristics, (ii) not subject to any counterclaim, defence (other than a counterclaim or defence based on the factors set forth in paragraphs (a)-(d) of the final paragraph of the definition of "Credit Event" above or right of set off by or of the Reference Entity or any applicable Underlying Obligor and (iii) in the case of a Qualifying Guarantee, other than a Qualifying Affiliate Guarantee, is capable, on the applicable Delivery Date, of immediate assertion or demand by or on |

- 17 -

behalf of the holder or holders against the Reference Entity for an amount at least equal to the outstanding principal balance or Due and Payable Amount apart from the giving of any notice of non-payment or similar procedural requirement, it being understood that acceleration of an Underlying Obligation shall not be considered a procedural requirement.

Deliverable Obligation Characteristics:

The Deliverable Obligation shall have the following characteristics:

(1) *Standard Specified Currency:* meaning an obligation that is payable in or, any of the lawful currencies of Canada, Japan, Switzerland, the United Kingdom, the United States of America and the euro (and any successor currency to any of the aforementioned currencies).

(2) *Not Subordinated:* meaning an obligation that is not Subordinated to the most senior Reference Obligation in priority of payment. For purposes of determining whether an obligation satisfies the "Not Subordinated" Obligation Characteristic or Deliverable Obligation Characteristic, the ranking in priority of payment of each Reference Obligation shall be determined as of the later of (1) the Trade Date and (2) the date on which such Reference Obligation was issued or incurred and shall not reflect any change to such ranking in priority of payment after such later date.

(3) *Not Sovereign Lender:* meaning any obligation that is not primarily owed to a Sovereign or Supranational Organization including, without limitation, obligations generally referred to as "Paris Club debt".

(4) *Not Domestic Issuance*: meaning any obligation other than an obligation that was, at the time the relevant obligation was issued (or reissued, as the case may be) or incurred, intended to be offered for sale primarily in the domestic market of the Reference Entity. Any obligation that is registered or qualified for sale outside the domestic market of the Reference Entity (regardless of whether such obligation is also registered or qualified for sale within the domestic market of the Reference Entity) shall be deemed not to be intended for sale primarily in the domestic market of the Reference Entity.

(5) *Not Domestic Law:* meaning any obligation that is not governed by the laws of the Reference Entity.

(6) *Not Contingent:* meaning any obligation having as of the Credit Event Redemption Date and all times thereafter an outstanding principal balance or, in the case of obligations that are not Borrowed Money, a Due and Payable Amount, that pursuant to the terms of such obligation may not be reduced as a result of the occurrence or non-occurrence of an event or circumstance (other than payment). A Convertible Obligation, an Exchangeable Obligation and an Accreting Obligation shall satisfy the Not Contingent Deliverable Obligation Characteristic if such Convertible Obligation, Exchangeable Obligation or Accreting Obligation otherwise meets the requirements of the preceding sentence so long as, in the case of a Convertible Obligation or an Exchangeable Obligation, the right (A) to convert or exchange such obligation or (B) to require the issuer to purchase or redeem such obligation (if the issuer has exercised or may exercise the right to pay the purchase or redemption price, in whole or in part, in Equity

Securities) has not been exercised (or such exercise has been effectively rescinded) on or before the relevant Credit Event Redemption Date.

If a Reference Obligation is a Convertible Obligation or an Exchangeable Obligation, then such Reference Obligation may be included as a Deliverable Obligation only if the rights referred to in clauses (A) and (B) above have not been exercised (or such exercise has been effectively rescinded) on or before the Credit Event Redemption Date.

(7)  *Assignable Loan:* meaning a Loan that is, as of the Credit Event Redemption Date, capable of being assigned or novated to at a minimum, commercial banks or financial institutions (irrespective of their jurisdiction of organization) that are not then a lender or a member of the relevant lending syndicate, without the consent of the Reference Entity or the guarantor, if any, of such Loan (or the consent of the applicable borrower if the Reference Entity is guaranteeing such Loan) or any agent, provided that such characteristics shall be applicable only in respect of obligations that are Loans

(8)  *Transferable:* meaning an obligation that is transferable to institutional investors without any contractual, statutory or regulatory restriction, provided that none of the following shall be considered contractual, statutory or regulatory restrictions:

(a)  contractual, statutory or regulatory restrictions that provide for eligibility for resale pursuant to Rule 144A or Regulation S promulgated under the United States Securities Act of 1933, as amended (and any contractual, statutory or

- 20 -

regulatory restrictions promulgated under the laws of any jurisdiction having a similar effect in relation to the eligibility for resale of an obligations); or

(b)    restrictions on permitted investments such as statutory or regulatory investment restrictions on insurance companies and pension funds,

Provided that such characteristics shall be applicable only in respect of obligations that are Bonds.

(9)    *Not Bearer:* meaning any obligation that is not a bearer instrument unless interests with respect to such bearer instrument are cleared via the Euroclear system, Clearstream International or any other internationally recognized clearing system, provided that such characteristics shall be applicable only in respect of obligations that are Bonds.

(10)    *Maximum Maturity:* 30 years; meaning an obligation that has a remaining maturity from the Credit Event Redemption Date of not greater than 30 years.

Due and Payable Amount:    The amount that is due and payable under (and in accordance with the terms of) a Deliverable Obligation on the Credit Event Redemption Date, whether by reason of acceleration, maturity, termination or otherwise (excluding sums in respect of default interest, indemnities, tax gross-ups and other similar amounts). The term "Due and Payable Amount" (as used in these Final Terms and the Definitions, including without limitation, sections 9.8(a) and 9.8(g) thereof) when used in connection with Qualifying Guarantees is to be interpreted to be the then "Due and Payable Amount" of the Underlying Obligation which is supported by a Qualifying Guarantee.

- 21 -

| Governmental Authority: | Any de facto or de jure government (or any agency, instrumentality, ministry or department thereof), court, tribunal, administrative or other governmental authority or any other entity (private or public) charged with the regulation of the financial markets (including the central bank) of the Reference Entity or of the jurisdiction of organization of the Reference Entity. |
|---|---|
| Grace Period: | The earliest of (i) the applicable grace period with respect to payments under the relevant Obligation under the terms of such Obligation in effect as of the later of the Trade Date and the date as of which such Obligation is issued or incurred and (ii) 30 calendar days. |
| Grace Period Extension: | In the event of a Potential Failure to Pay occurring on or prior to the Scheduled Maturity Date, and the relevant Grace Period ends after the Scheduled Maturity Date, the Credit Observation Period will be extended to end on (and include) the Grace Period Extension Date, and the Maturity Date will become (i) in the event that the Calculation Agent determines that the Potential Failure to Pay is remedied during the Grace Period, and, in the absence of further Credit Events or further Potential Failures to Pay prior to or on the Scheduled Maturity Date, the later of (A) the Scheduled Maturity Date, and (B) the date which is the Business Day after the date of such remedy, in which case no additional interest will be payable for the period from the originally Scheduled Maturity Date to such amended Maturity Date, or (ii) in the event that such Potential Failure to Pay is not remedied (as determined by the Calculation Agent in good faith and in a commercially reasonable manner) before the |

- 22 -

end of the Grace Period, the Credit Event Redemption Date. **"Grace Period Extension Date"** means the date that is the number of days in the applicable Grace Period after the date of the relevant Potential Failure to Pay.

Loan:

Any one or more obligations (whether as principal or surety or otherwise) of a type included in the definition of "Borrowed Money" that is documented by a term loan agreement, revolving loan agreement or other similar credit agreement and shall not include any other type of Borrowed Money.

Notice of Publicly
Available Information:

An irrevocable notice from the Calculation Agent (which may be oral, including by telephone) to the Issuer that cites Publicly Available Information confirming the occurrence of the Credit Event described in the Credit Event Notice. The notice given must contain a copy, or a description in reasonable detail, of the relevant Publicly Available Information.

Obligations:

The Reference obligation or an obligation of the Reference Entity (either directly or as provider of a Qualifying Guarantee) which is Bond or Loan with the Obligation Characteristics.

Obligation Characteristics:

The Obligations shall have the following characteristics:

*Not Sovereign Lender:* means any obligation that is not primarily owed to a Sovereign or Supranational Organization, including, without limitation, obligations generally referred to as "Paris Club debt".

*Not Subordinated*: means an obligation that is not Subordinated to: (i) the Benchmark Obligation or (ii) if no Benchmark

- 23 -

Obligation is specified for the Reference Entity, any unsubordinated Borrowed Money obligation of the Reference Entity. For the purposes of determining whether an obligation satisfies the "Not Subordinated" Obligation Characteristic, the ranking in priority of payment of the Reference Obligation shall be determined as of the later of: (1) the Trade Date and (2) the date on which such Reference Obligation was issued or incurred and shall not reflect any change to such ranking after such later date.

*Not Domestic Currency:* means any obligation that is payable in any currency other than the Domestic Currency.

*Not Domestic Law:* means any obligation that is not governed by the laws of the Reference Entity.

*Not Domestic Issuance:* means any obligation other than an obligation that was, at the time the relevant obligation was issued (or reissued, as the case may be) or incurred, intended to be offered for sale primarily in the domestic market of the Reference Entity.   Any obligation that is registered or qualified for sale outside the domestic market of the Reference Entity (regardless of whether such obligation is also registered or qualified for sale within the domestic market of the Reference Entity) shall be deemed not to be intended for sale primarily in the domestic market of the Reference Entity.

*Specified Currency:* means an obligation that is payable in or, any of the lawful currencies of Canada, Japan, Switzerland, the United Kingdom and the United States of America and the euro (and any successor currency to any of the aforementioned currencies, which currencies shall be referred to collectively as the "**Standard Specified Currencies**").

- 24 -

***Excluded Obligations***: means securities listed (or proposed to be listed) on an Indian stock exchange or otherwise in respect of which any Foreign Institutional Investor cannot or are expected not to directly or indirectly transact in with Resident Indians, Non-Resident Indians, Persons of Indian Origin and/or Overseas Corporate Bodies according to Indian regulations applicable to Foreign Institutional Investors

Payment Requirement:

USD 1,000,000, or its equivalent in the relevant currency or currencies in which an Obligation is denominated, as of the occurrence of the relevant Failure to Pay.

Physical Settlement Period:

Thirty (30) Business Days after the delivery of the Credit Event Notice.

Potential Failure to Pay:

The failure by the Reference Entity to make, when and where due, any payments in an aggregate amount of not less than the Payment Requirement under one or more Obligations, without regard to any grace period or any conditions precedent to the commencement of any grace period applicable to such Obligations, in accordance with the terms of such Obligations at the time of such failure.

Publicly Available Information:

Information that reasonably confirms any of the facts relevant to the determination that the Credit Event described in a Credit Event Notice has occurred and which   has been published in or on not less than two Public Sources, regardless of whether the reader or user thereof pays a fee to obtain such information; provided that, if either of the parties of any of their respective Affiliates is cited as the sole source of such information, then such information shall not be deemed to be Publicly Available Information unless such party or its Affiliate is acting in its

- 25 -

capacity as trustee, fiscal agent, administrative agent, clearing
agent or paying agent for an Obligation.

Public Source:    Each of Bloomberg Service, Dow Jones Telerate Service,
Reuter Monitor Money Rates Services, Dow Jones News Wire,
Wall Street Journal, New York Times, Nihon Keizai Shinbun,
Asahi Shinbun, Yomiuri Shinbun, Financial Times, La Tribune,
Les Echos and The Australian Financial Review (and successor
publications), the main source(s) of business news in the
country in which the Reference Entity is organised and any
other internationally recognised published or electronically
displayed news sources.

Qualifying Guarantee:    means "Qualifying Guarantee" as defined in the 2003 Credit
Derivatives Definitions, as supplemented by the May 2003
Supplement, each as published by the International Swaps and
Derivatives Association, Inc. (the "**Definitions**")

Reference Entity:    Tata Motors Limited (or its Successor(s) thereto)

Reference Obligation:    The Zero Coupon Bonds due July 12, 2012 issued by the
Reference Entity (ISIN: XS0307881762).
For the avoidance of doubt, the Reference Obligation is an
Accreting Obligation.

Successor:    As defined in the Definitions.   Each Successor to the
Reference Entity identified pursuant to Section 2.2(a), (b), (c),
(d), (f), (g) and (h) (inclusive) of the Definitions shall be a
Reference Entity for the purposes of the Notes.   Section 2.2(e)
of the Definitions shall not apply and, accordingly, the
provisions relating to New Credit Derivative Transactions shall
not be relevant to the Notes.

In addition, the Calculation Agent shall make such amendments to the Reference Entity by the addition of each new Reference Entity and, if relevant, the deletion of any existing Reference Entity so as to give effect to such Succession Event.

Trade Date:                          February 4, 2008

Underlying Obligation:              means "Underlying Obligation" as defined in the Definitions.

*All capitalised terms used and not otherwise defined in these Final Terms shall bear the same meaning ascribed thereto in the Definitions. In the event of any inconsistency between the Definitions and these Final Terms, these Final Terms will govern.*

**TLT LLP**

One Redcliff Street
Bristol BS1 6TP
Tel: +44 (0)117 917 7777
DX 7815 BRISTOL

www.TLTsolicitors.com



Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station
PO Box 5076
New York
NY 10150-5076
United States of America

| | | | |
|---|---|---|---|
| Our ref | 10CSG/RET/066787/000022 | | |
| Your ref | | | |
| Direct tel | 0117 917 7826 | Date | 18 September 2009 |
| Direct fax | 0117 917 7783 | Email | richard.tall@tltsolicitors.com |

Dear Sirs

**Lehman Brothers Holdings Inc - 08-13555**
**Claimant: Punjab National Bank (International) Limited**

We act for Punjab National bank (International) Limited and enclose our client's proof of
claim form in respect of its guarantee claim against the above Debtor.

Yours faithfully

**TLT LLP**

T5151763.1

Offices in Bristol, London and Piraeus.
TLT LLP is a limited liability partnership registered in
England & Wales number OC 308658 whose registered
office is at One Redcliff Street Bristol BS1 6TP.



| United States Bankruptcy Court/Southern District of New York | **LEHMAN SECURITIES PROGRAMS PROOF OF CLAIM** |
|---|---|

Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000063860

In Re:
Lehman Brothers Holdings Inc., et al.,
Debtors.

Chapter 11
Case No. 08-13555 (JMP)
(Jointly Administered)

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

**Creditor: Punjab National Bank (International) Limited**
87 Gresham Street, London, EC2V 7NQ, United Kingdom
Notices: TLT LLP, One Redcliff Street, Bristol, BS1 6TP
United Kingdom. Ref: RT01.  Tel: 00(44) 117 9177826
Telephone number:          Email Address: Richard.Tall@TLTSolicitors.com

☒ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number: 34488
(If known)
                September 23, 2009
Filed on:

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:          Email Address:

1. Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

Amount of Claim: $ 5,044,967.85          (Required)

☒ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2. Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

International Securities Identification Number (ISIN): XS0346689499          (Required)

3. Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:
To Follow
                (Required)

4. Provide the Clearstream, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:
92904          (Required)

5. Consent to Euroclear Bank, Clearstream Bank or Other Depository: By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions

FOR COURT USE ONLY
**FILED / RECEIVED**
NOV 0 2 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date
November 2 2009

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *(signature)*

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The questions on the Proof of Claim form include instructions for completing each question. The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules*

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### _____DEFINITIONS_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5) A claim may be secured or unsecured, reduced to judgment or not, liquidated or unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal or equitable

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

**Lehman Brothers Holdings Claims Processing c/o Epiq Bankruptcy Solutions, LLC**
**FDR Station, PO Box 5076**
**New York, NY 10150-5076**

**Lehman Programs Security**
Any security included on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009.

### _____INFORMATION_____

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C § 101 *et seq.*), and any applicable orders of the bankruptcy court.

**H
A
N
D

D
E
L
I
V
E
R
Y**

```
┌─────────────────────────────────┐
│      FILED / RECEIVED           │
│                                 │
│      NOV 0 2 2009               │
│                                 │
│  EPIQ BANKRUPTCY SOLUTIONS, LLC │
└─────────────────────────────────┘
```

NK                                    11:Ke
_____          _____          _____
**RECEIVED BY:**              **DATE**                   **TIME**