# EXHIBIT B

| United States Bankruptcy Court/Southern District of New York | | **PROOF OF CLAIM** |
|---|---|---|
| Lehman Brothers Holdings Claims Processing Center c/o Epiq Bankruptcy Solutions, LLC FDR Station, P.O. Box 5076 New York, NY 10150-5076 | | |
| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) | |
| Name of Debtor Against Which Claim is Held Lehman Brothers Holdings Inc. | Case No. of Debtor 08-13555 | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

THIS SPACE IS FOR COURT USE ONLY

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

Inverell Shire Council
PO Box 138
Inverell NSW 2360
AUSTRALIA
Telephone number: 61 2 67288279    Email Address: paul.pay@inverell.nsw.gov.au

☒ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: 18687
(If known)
Filed on: 9/18/2009

NOTICE OF SCHEDULED CLAIM:
Your Claim is scheduled by the indicated Debtor as:

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
☐ Check this box if you are the debtor or trustee in this case.

Telephone number:    Email Address:

1. Amount of Claim as of Date Case Filed: $ 300,000.00
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☒ Check this box if all or part of your claim is based on a Guarantee.*
*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. Basis for Claim: Principal Protected Property Note
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor: _____
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☒ Other
Describe: _____
Value of Property: $_____    Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____    Basis for perfection: _____
Amount of Secured Claim: $ 300,000.00    Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
(See instruction #6 on reverse side.)

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:
☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:
$_____

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY

| Date: 16.3.11 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.  _[signature]_ Paul Henry  General Manager |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ATTACHMENT TO PROOF OF CLAIM

DEBTOR: Lehman Brothers Holdings Inc., et al.
BASIS OF CLAIM: Principal Protected Property Note
CASE #: 08-13555 (JMP)
DATE OF FILING: September 15, 2008

The relevant electronic instruction reference number is Austraclear Series ID number LBTG02.

Inverell Shire Council Portfolio

## Portfolio Valuation - Market Value Components

As at 31/08/09

| Stock Code | Security Description | Volume Held | Yield/ Margin (clean) | Capital Price (clean mid) | Accrued Interest | Total Price (dirty) | Capital Value | Accrued Value | Market Value |
|---|---|---|---|---|---|---|---|---|---|
| **Interest Bearing Securities (issued by ADIs)** | | | | | | | | | |
| MBL0909 | Macquarie Bank FR Sub Debt (Sep-09) | 250,000 | +0.782% | 100.003% | 0.843% | 100.846% | 250,007.50 | 2,107.50 | 252,115.00 |
| ERB0710 | Elders Rural Bank Sub Debt (Jul-10) | 1,000,000 | +14.00% | 89.602% | 0.533% | 90.135% | 896,020.00 | 5,330.00 | 901,350.00 |
| SUN0910 | Suncorp FR Sub FRN (call Sep-10) | 500,000 | +6.00% | 94.509% | 0.773% | 95.282% | 472,545.00 | 3,865.00 | 476,410.00 |
| BOQ0511 | Bank of Queensland Sub Debt (May-11) | 500,000 | +6.50% | 90.673% | 0.203% | 90.876% | 453,365.00 | 1,015.00 | 454,380.00 |
| HSBC0911 | HSBC FR Snr Debt (Sep-11) | 500,000 | +4.60% | 91.999% | 0.678% | 92.677% | 459,995.00 | 3,390.00 | 463,385.00 |
| *Total: Interest Bearing Securities (issued by ADIs)* | | | | | | | 2,531,932.50 | 15,707.50 | 2,547,640.00 |
| **Interest Bearing Securities (issued by non-ADIs)** | | | | | | | | | |
| LEH0609 | Lehman Global Property Note (Jun-09) [Arranger - Lehman Brothers] | 300,000 | | 21.750% | 0.000% | 21.750% | 65,250.00 | 0.00 | 65,250.00 |
| BELO0212 | BELO [Kalgoorlie AA+] [Arranger - Barclays Capital] | 500,000 | | 86.500% | 0.051% | 86.551% | 432,500.00 | 255.00 | 432,755.00 |
| MAGN0309 | Magnolia (Flinders AA) [Arranger - Credit Suisse] | 200,000 | | 71.000% # | 0.912% | 71.912% | 142,000.00 | 1,824.00 | 143,824.00 |
| ZIRC0613A | Zircon (Merimbula AA) [Arranger - Lehman Brothers] | 200,000 | | 80.000% # | 0.000% | 80.000% | 160,000.00 | 0.00 | 160,000.00 |
| CORS0009 | Corsair (Torquay AA) [Arranger - JP Morgan] | 400,000 | | 5.000% | 0.940% | 5.940% | 20,000.00 | 3,760.00 | 23,760.00 |
| STRT1210 | Start (Blue Gum AA-) [Arranger - HSBC] | 350,000 | | 2.000% # | 0.892% | 2.892% | 7,000.00 | 3,122.00 | 10,122.00 |
| CORS1209 | Corsair (Kakadu AA) [Arranger - JP Morgan] | 350,000 | | 28.000% # | 0.816% | 28.816% | 98,000.00 | 2,856.00 | 100,856.00 |
| HEL10609 | Helium (Scarborough AA) [Arranger - Merrill Lynch] | 200,000 | | 3.000% # | 0.857% | 3.857% | 6,000.00 | 1,714.00 | 7,714.00 |
| ZIRC0311A | Zircon (Coolangatta AA) [Arranger - Lehman Brothers] | 400,000 | | 76.000% # | 0.000% | 76.000% | 304,000.00 | 0.00 | 304,000.00 |
| BERY0310 | Beryl (AAA Global Bank Note) [Arranger - Lehman Brothers] | 250,000 | | 84.000% # | 0.000% | 84.000% | 210,000.00 | 0.00 | 210,000.00 |
| MAS1209S1 | MAS6-7 (Parkes IA 'AAA') [Arranger - Morgan Stanley] | 300,000 | | 9.000% | 0.820% | 9.820% | 27,000.00 | 2,460.00 | 29,460.00 |
| ZIRC0317 | Zircon (Miami AA) [Arranger - Lehman Brothers] | 50,000 | | 59.000% # | 0.000% | 59.000% | 29,500.00 | 0.00 | 29,500.00 |
| *Total: Interest Bearing Securities (issued by non-ADIs)* | | | | | | | 1,501,250.00 | 15,991.00 | 1,517,241.00 |

Printed: 07/09/09

Reportfolio Pty Ltd   ABN 56 129 466 815   info@reportfolio.com.au

Page 1

SCANNED



&lt;settlements@grangesecurities.com.au&gt;
12/06/2007 05:08 PM

To &lt;Julie.holder@inverell.nsw.gov.au&gt;
cc
bcc
Subject Grange Securities Contract Note - G64449

Tuesday, 12 June 2007
Reference Number: G64449
Dealer: Stewart Calderwood
        Inverell Shire Council
        Administrative Centre
        PO Box 138
        INVERELL NSW 2360

## Contract Note

Attention: Ms Julie Holder
Dear Ms Julie Holder
We confirm having SOLD to you the following security

| | |
|---|---|
| Currency | AUD |
| Settlement Date | Wednesday, 13 June 2007 |
| Type | Principal Protected Property Note |
| Stock Issuer | Lehman Brothers Treasury Co. B.V. |
| Maturity | Monday, 15 June 2009 |
| Final Maturity | Not Applicable |
| Coupon | One year BBSW + 0.00 bps |
| Coupon Frequency | 1 per year |
| Yield | One year BBSW + 0.00 bps |
| Face Value | $300,000.00 |
| Capital Price (Per $100 Face Value) | 100.000 |
| Accrued Interest (Per $100 Face Value) | 0.000 |
| Gross Price (Per $100 Face Value) | 100.000 |
| One year BBSW | 6.4550% |
| Swap Rate | 6.8300% |
| Bill Rate | 6.4550% |
| Total Consideration | $300,000.00 |

Settlement Instructions:

This transaction did not take place in the ordinary course of business at a stock market. This confirmation is issued subject to the correction of errors or omissions; it is computer generated and therefore issued unsigned. Thank you for transacting this business with our company. GRANGE SECURITIES LIMITED

| SYDNEYL33, 264 George StreetSydney NSW 2000GPO Box 83Sydney NSW 2001Tel: (02) 8259 4800Fax: (02) 8259 4811 | MELBOURNEL25, 333 Collins StreetMelbourne VIC 3000PO Box 247 Collins St WestMelbourne VIC 8007Tel: (03) 8613 8000Fax: (03) 8613 8001 | BRISBANEL38, 123 Eagle StreetBrisbane QLD 4000GPO Box 1893Brisbane QLD 4001Tel: (07) 3229 5177Fax: (07) 3229 4738 | PERTHL17, 37 St George's TcePerth WA 6000GPO Box 2521Perth WA 6001Tel: (08) 9220 5600Fax: (08) 9220 5611 | Grange Securities LimitedABN 12 066 797 760Market Participant of theAustralian Stock Exchange LtdAFS Licence 246572 www.grangesecurities.com.au |

TERMS AND CONDITIONS OF DEALING WITH GRANGE SECURITIESThe client has agreed to be bound by the terms and conditions below.This contract note is issued by Grange Securities Limited ABN 12 066 797 760 ('Grange Securities').All transactions are subject to the Rules, directions, decisions and requirements of the ASX, the Clearing Rules and Settlement Rules and are subject to the customs and usages of the market and the correction of errors and omissions.*Fees & Charges*Grange Securities acts as principal when we buy and sell fixed interest securities in the secondary markets. The yield that we quote to you incorporates any margin that we will receive. The margin isthe difference between the price at which we, as principal, buy the security and the price at which we sell the security to you. Grange Securities may also receive placement fees from Issuers for distributing securities on their behalf. *Purchases*The Client shall pay for purchases in full including all brokerage, taxes, costs, duties and charges prior to the settlement date. Payment in cash is not permitted. Where the client fails to pay for purchases by the due date, Grange Securities is entitled to pass on to the client all costs incurred as a result. Securities will not be registered in the clients name until payment has been made in full. This contract note constitutes notice to the client that Grange Securities may deposit the securities

Final Terms dated June 8, 2007

## LEHMAN BROTHERS TREASURY CO. B.V.

*(incorporated with limited liability in The Netherlands and
having its statutory domicile in Amsterdam)*

Issue of AUD 14,000,000 Principal Protected Property Markets Fund-Linked Notes due 2009

unconditionally and irrevocably

※※※    Guaranteed by Lehman Brothers Holdings Inc.    ※※※
under the U.S.$60,000,000,000
Euro Medium-Term Note Program

### PART A – CONTRACTUAL TERMS

Terms used herein shall be deemed to be defined as such for the purposes of the Conditions set forth in the Base Prospectus dated August 9, 2006 (as supplemented from time to time) (the "Base Prospectus") which constitutes a base prospectus for the purposes of the Prospectus Directive (Directive 2003/71/EC) (the "Prospectus Directive"). This document constitutes the Final Terms of the Notes described herein for the purposes of Article 5.4 of the Prospectus Directive and must be read in conjunction with such Base Prospectus as so supplemented.

Full information on the Issuer and the offer of the Notes is only available on the basis of the combination of these Final Terms and the Base Prospectus.

| | | | |
|---|---|---|---|
| 1 | (i) | Issuer: | Lehman Brothers Treasury Co. B.V. |
| | (ii) | Guarantor: | Lehman Brothers Holdings Inc. |
| 2 | (i) | Series Number: | 7457 |
| | (ii) | Tranche Number: | Not Applicable |
| | | (If fungible with an existing Series, details of that Series, including the date on which the Notes become fungible): | |
| 3 | | Specified Currency or Currencies: | Australian dollar ("AUD") |
| 4 | | Aggregate Nominal Amount: | AUD 14,000,000 |
| 5 | | Issue Price: | 100 per cent. of the Aggregate Nominal Amount |
| 6 | | Specified Denomination(s) and Units | |
| | (i) | Specified Denomination(s): | AUD5,000 |

- 1 -

2yr Principal Protected Property Markets Fund-Linked Note / Issue Date: June 13, 2007 / Series No. 7457 / GID: 3091419

|    |       |                                          |                        |
|----|-------|------------------------------------------|------------------------|
|    | (ii)  | Trading in Units:                        | Not Applicable         |
| 7  | (i)   | Issue Date:                              | 13 June 2007           |
|    | (ii)  | Interest Commencement Date:              | Not Applicable         |
| 8  |       | Maturity Date:                           | 15 June 2009           |
| 9  |       | Interest Basis:                          | As described in Annex 1 |
| 10 |       | Redemption/Payment Basis:                | Redemption at par      |
| 11 |       | Change of Interest or Redemption/Payment Basis: | Not Applicable  |
| 12 |       | Put/Call Options:                        | Not Applicable         |
| 13 | (i)   | Status of the Notes:                     | Senior Notes           |
|    | (ii)  | Status of the Guarantee:                 | Senior Guarantee       |
| 14 |       | Method of distribution:                  | Non-syndicated         |

PROVISIONS RELATING TO INTEREST (IF ANY) PAYABLE

| 15 | Fixed Rate Note Provisions    | Not Applicable         |
|----|-------------------------------|------------------------|
| 16 | Floating Rate Note Provisions | Not Applicable         |
| 17 | Zero Coupon Note Provisions   | Not Applicable         |
| 18 | Index-Linked Interest Note/Other Variable-Linked Interest Note Provisions | As described in Annex 1 |
| 19 | Dual Currency Note Provisions | Not Applicable         |

PROVISIONS RELATING TO REDEMPTION

| 20 | Call Option | Not Applicable |
|----|-------------|----------------|
| 21 | Put Option  | Not Applicable |
| 22 | Final Redemption Amount of each Note: | AUD5,000 per Note |

23  Early Redemption Amount of each Note

| Early Redemption Amount(s) of each Note payable on redemption for taxation reasons or on event of default or if the Notes are cancelled pursuant to paragraph 4(ii) of Annex 1 and/or the method of calculating the same (if required or if different from that set out in the Conditions): | In respect of each Note, an amount in the Specified Currency equal to the fair market value of such Note (disregarding credit risk of the Issuer) (which value shall be less the proportion attributable to that Note of the reasonable cost to the Issuer of unwinding any underlying related hedging arrangements) on such day as is selected by the Calculation Agent in its sole and absolute discretion. |
|---|---|

-2-

|   |   |   |
|---|---|---|
|   |   | The Issuer will not pay any accrued interest. |

GENERAL PROVISIONS APPLICABLE TO THE NOTES

| | | |
|---|---|---|
| 24 | Form of Notes: | Bearer form. Interests in a temporary global Note will be exchangeable for interests in a permanent global Note in bearer form which is exchangeable for definitive Notes in bearer form in the limited circumstances specified in the permanent global Note. |
| | New Global Note Form: | Not Applicable |
| 25 | Talons for future Coupons or Receipts to be attached to Definitive Notes (and dates on which such Talons mature): | No |
| 26 | Details relating to Partly Paid Notes: amount of each payment comprising the Issue Price and date on which each payment is to be made and consequences (if any) of failure to pay, including any right of the Issuer to forfeit the Notes and interest due on late payment: | Not Applicable |
| 27 | Details relating to Instalment Notes: | Not Applicable |
| | Instalment Amounts and Instalment Dates: | Not Applicable |
| 28 | Details relating to Extendible Notes: | Not Applicable |
| 29 | Details relating to Renewable Notes: | Not Applicable |
| 30 | Redenomination, renominalisation and reconventioning provisions: | Not Applicable |
| 31 | Consolidation provisions: | Not Applicable |
| 32 | Other final terms: | See Annex 1 |

DISTRIBUTION

| | | | |
|---|---|---|---|
| 33 | (i) | If syndicated, names and addresses of Managers and underwriting commitments: | Not Applicable |
| | (ii) | Date of Subscription Agreement: | Not Applicable |
| | (iii) | Stabilizing Manager (if any): | Not Applicable |
| 34 | | If non-syndicated, name and address of Dealer: | Lehman Brothers International (Europe), 25 Bank Street, London E14 5LE |
| 35 | | Total commission and concession: | The Issue Price herein is not an expression of the market value of the Notes and the initial placement of the Notes by the dealer appointed under the Programme may have been executed at prices above |

-3-

or below such Issue Price to reflect prevailing market conditions.

36  Selling restrictions:

    (i)    Netherlands Selling Restrictions:     Notes offered outside Netherlands: selling restriction 1(iv) applies

    (ii)    Additional Selling Restrictions:     Australia: Any Noteholder in Australia shall represent and warrant that it is a sophisticated investor for the purposes of Chapters 6 and 7 of the Corporations Act 2001 of Australia and undertakes to inform the Issuer should its status as a sophisticated investor change.

No prospectus or other disclosure document (as defined in the Corporations Act 2001 of Australia) in relation to the Notes has been or will be lodged with the Australian Securities and Investments Commission (the "ASIC"). Each Dealer represents and agrees that it:

(a)  has not offered or invited applications, and will not offer or invite applications for the issue, sale or purchase of the Notes in Australia (including an offer or invitation which is received by a person in Australia); and

(b)  has not distributed or published, and will not distribute or publish, any draft, preliminary or definitive offering document, any final terms or pricing supplement or other offering material or advertisement relating to the Notes in Australia,

unless:

(i)  the aggregate consideration payable by each offeree is at least AUD500,000 (or its equivalent in any other currency but disregarding moneys lent by the offeror or its associates) or the offer or invitation otherwise does not require disclosure to investors under Part 6D.2 of the Corporations Act 2001 of Australia;

(ii)  the offer or the issuance of the Notes does not constitute an offer to a "retail client" for the purposes of Chapter 7 of the Corporations Act 2001 of Australia;

- 4 -

2yr Principal Protected Property Markets Fund-Linked Note / Issue Date: June 13, 2007 / Series No. 7457 / GID: 3091419

(iii) the offer or the Issuance of the Notes does not constitute an offer or invitation to the public for the purposes of section 82 of the Corporations Act 2001 of Australia;

(iv) such action complies with all applicable laws, regulations and directives; and

(v) such action does not require any document to be lodged with the ASIC.

By providing the information contained in these Final Terms, neither the Issuer nor any other relevant entity is providing financial product advice. The reader should consider obtaining independent advice before making any financial decisions.

RESPONSIBILITY

The Issuer accepts responsibility for the information contained in these Final Terms.

Signed on behalf of the Issuer

By: *[signature]*

Duly authorised

- 5 -

2yr Principal Protected Property Markets Fund-Linked Note / Issue Date: June 13, 2007 / Series No. 7457 / GID: 3091419

PART B – OTHER INFORMATION

1 LISTING

    (i) Listing: None

    (ii) Admission to Trading: Not Applicable

OPERATIONAL INFORMATION

| | |
|---|---|
| ISIN Code: | XS0305158031 |
| Common Code: | 030515803 |
| New Global Note intended to be held in a manner which would allow Eurosystem eligibility: | Not Applicable |
| Any clearing system(s) other than Euroclear and Clearstream, Luxembourg and the relevant identification number(s): | Not Applicable |
| Delivery: | Delivery against payment |
| The Aggregate Nominal Amount of Notes issued has been translated into U.S. Dollars at the rate of 1USD= AUD1.2009 producing a sum of (for Notes not denominated in U.S. Dollars): | U.S.$11,657,923.00 |
| Names and addresses of Additional Paying Agent(s) (if any): | Not Applicable |

Annex 1

1   Definitions

"Averaging Dates" means, subject as provided in paragraph 3 of this Annex 1 (*Disrupted Days*), each of 6 September 2007, 6 December 2007, 6 March 2008, 6 June 2008, 5 September 2008, 5 December 2008, 6 March 2009 and 8 June 2009 or, if any such day is not a Scheduled Trading Day, the next following Scheduled Trading Day;

"Basket Value$_k$" means, in respect of an Averaging Date k, a value calculated by the Calculation Agent in accordance with the following formula:

$$BasketValue_k = \frac{1}{2} \times \sum_{j=1}^{2} Fund_k^j$$

Where:

Fund$_k^j$ means a value in respect of each Fund$^j$ calculated by the Calculation Agent in accordance with the following formula:

$$Fund_k^j = \frac{NAV_k^j}{NAV_0^j}$$

Where:

$NAV_k^j$ = the Net Asset Value of Fund$^j$ on the relevant Averaging Date k

$NAV_0^j$ = the Initial Net Asset Value of Fund$^j$

"Business Day" means a day (other than a Saturday or a Sunday) on which commercial banks and foreign exchange markets settle payments and are open for general business (including dealings in foreign exchange and foreign currency deposits) in Sydney, Luxembourg and London and a day on which each clearing system is open for business;

"Calculation Agent" means Lehman Brothers International (Europe) of 25 Bank Street, London E14 5LE, United Kingdom;

"Closing Level" means, in respect of Fund$^j$ on the relevant Scheduled Trading Day, the NAV of that Fund on such Scheduled Trading Day, as calculated and published by the relevant Management Company or the administrator, service provider or other person that generally reports such value on behalf of the relevant Management Company to its investors or, at the discretion of the Calculation Agent, as published on the Bloomberg service on such Scheduled Trading Day, as determined by the Calculation Agent;

"Disrupted Day" means any Scheduled Trading Day on which (i) the NAV of any Fund or Replacement Fund fails to be published or (ii) on which the Calculation Agent has determined that any Fund or Replacement Fund is subject to a Fund Substitution Event, or (iii) where a buy or sell order is submitted in accordance with the relevant procedures of a Fund or Replacement Fund and the inability of the hedging party to buy or sell the shares or units of such Fund or Replacement Fund on any Scheduled Trading Day at, or at a value that equates to, the NAV of such share or unit;

-7-

"Funds" means each of:

(i) ING (L) Invest – European Real Estate (Bloomberg code: INGLEIC Equity, ISIN: LU0121177280) ("Fund 1"); and

(ii) Credit Suisse – Equity Fund (Lux) Asian Property (Bloomberg code: CSASPRB LX Equity, ISIN: LU0220210792) ("Fund 2");

and each shall be a "Fund";

"Fund$^j$" means the relevant Fund or Replacement Fund;

"Initial Net Asset Value" means, in respect of Fund$^j$, the Closing Level of that Fund$^j$ on the Strike Fixing Date;

"Interest Payment Date" means each of 13 June 2008 and 15 June 2009 provided that if either of such dates is not a Business Day the relevant date shall be postponed to the next day which is a Business Day unless it would thereby fall into the next calendar month, in which event such date shall be brought forward to the immediately preceding Business Day (the "Modified Following Business Day Convention");

"Management Company" means:

(a) in respect of Fund 1, ING Investment Management Luxembourg S.A.; and

(b) in respect of Fund 2, Credit Suisse Equity Fund Management Company;

and in respect of a Replacement Fund, the company as will be determined by the Calculation Agent at the Fund Substitution Date;

"NAV" means Net Asset Value;

"Net Asset Value" means in respect of Fund$^j$ and a Scheduled Trading Day, the Closing Level of that Fund or Replacement Fund;

"Replacement Fund" shall have the meaning given to it in paragraph 4 of this Annex 1 (*Adjustment to the Fund or Replacement Fund*);

"Scheduled Trading Day" means, with respect to a Fund or a Replacement Fund, a day upon which the relevant Management Company or the administrator, service provider or other person that generally reports such value on behalf of the relevant management company is scheduled to calculate and publish the Net Asset Value for such Fund or Replacement Fund;

"Strike Fixing Date" means, subject as provided in paragraph 3 of this Annex 1 (*Disrupted Days*), 15 June 2007, or if such day is not a Scheduled Trading Day, the next following Scheduled Trading Day; and

"Trade Date" means 8 June 2007.

2  Interest Amounts

Unless previously redeemed or purchased and cancelled, each Note bears interest in accordance with this paragraph 2 and the relevant interest amount (an "Interest Amount") will be payable on each Interest Payment Date.

(a) The amount of interest payable in respect of each Note in respect of the first Interest Payment Date shall be an amount in AUD calculated by the Calculation Agent in accordance with the following formula:

$$AUD\,5{,}000 \times [100\% \times Max(Lockin(1) - Lockin(0); 0)]$$

Where:

Lockin(1) means $Max(Strategy(1), Lockin(0))$

Lockin(0) means 100%

Strategy(1) means the value, as calculated by the Calculation Agent, equal to the arithmetic average of the Basket Values for the first Averaging Date, the second Averaging Date, the third Averaging Date and the fourth Averaging Date

(b) The amount of interest payable in respect of each Note in respect of the second Interest Payment Date shall be an amount in AUD calculated by the Calculation Agent in accordance with the following formula:

$$AUD5{,}000 \times [100\% \times Max(Lockin(2) - Lockin(1); 0)]$$

Where:

Lockin(2) means $Max(Strategy(2), Lockin(1))$

Lockin(1) means $Max(Strategy(1), Lockin(0))$

Strategy(2) means the value, as calculated by the Calculation Agent, equal to the arithmetic average of the Basket Value for the first Averaging Date, the second Averaging Date, the third Averaging Date, the fourth Averaging Date, the fifth Averaging Date, the sixth Averaging Date, the seventh Averaging Date and the eighth Averaging Date

3  Disrupted Days

If the Strike Fixing Date or any Averaging Date, as the case may be, is a Disrupted Day, then the Strike Fixing Date or that Averaging Date, as the case may be, shall be the first succeeding Scheduled Trading Day that is not a Disrupted Day, unless there is a Disrupted Day on each of the four Scheduled Trading Days immediately following the scheduled Strike Fixing Date or that scheduled Averaging Date. In that case,

(a) the earlier of that fourth following Scheduled Trading Day and the fifth Business Day prior to the Maturity Date, as the case may be, shall be deemed to be the Strike Fixing Date or the relevant Averaging Date, as the case may be, notwithstanding it is a Disrupted Day (the "Deemed Date"); and

(b) the Calculation Agent shall determine its good faith estimate of the level of the Funds and any Replacement Funds that would have prevailed but for that Disrupted Day on that Deemed Date.

4  Adjustment to the Fund or Replacement Fund

If the Calculation Agent determines (in its sole and absolute discretion), in respect of a Fund or a Replacement Fund, that a Fund Merger Event, an Insolvency, a De-Listing or a Fund Substitution Event (each as defined below) has occurred, the Calculation Agent may, acting in a commercially reasonable manner and in its sole and absolute discretion, in respect of the affected Fund (the "Affected Fund") either:

(i) select a replacement investment fund (a "Replacement Fund") with similar investment objectives and policies, managed by the same Management Company as the Affected Fund, an affiliate thereof or an alternative investment manager, denominated in a currency selected by the Calculation Agent, and of similar performance and quality (as determined by the Calculation Agent), the shares or units of which

-9-

will replace the shares or units of the Affected Fund for the purposes of the Notes. The Calculation Agent shall give notice of such Replacement Fund and such adjustments to Noteholders as soon as is reasonably practicable after effecting such substitutions and related adjustments. The Calculation Agent shall effect such replacement of the Affected Fund on the Fund Substitution Date and the Calculation Agent shall make any corresponding adjustment(s) that it determines, acting in a commercially reasonable manner, to be appropriate to any variable, calculation or valuation methodology or any other terms relevant to the Notes to account for such replacement; or

(ii) if the Calculation Agent is unable to select a Replacement Fund pursuant to sub-paragraph (i) above, the Issuer shall cancel the Notes by giving notice to the Noteholders within 8 Business Days from the date of such cancellation. If the Notes are so cancelled the Issuer will pay an amount to the Noteholders in respect of each Note equal to the Early Redemption Amount.

"De-Listing" means, for any Fund share or Replacement Fund share for which the reference source is an exchange, a trading system or a quotation system, the reference source announces that pursuant to the rules of such reference source, the Fund share or Replacement Fund share ceases (or will cease) to be listed, traded or publicly quoted on the reference source for any reason (other than a Fund Merger Event) and is not immediately re-listed, re-traded or re-quoted on an exchange, trading system or quotation system acceptable to the Calculation Agent;

"Fund Merger Event" means, in respect of a Fund or Replacement Fund: (i) an irrevocable commitment to transfer all of the relevant fund shares or units; or (ii) a consolidation, amalgamation or merger of such Fund with or into another fund other than a consolidation, amalgamation or merger in which such Fund is the continuing Fund; or (iii) a takeover offer for such Fund that results in a transfer of or an irrevocable commitment to transfer all of the relevant Fund shares (other than Fund shares owned or controlled by the offeror);

"Fund Substitution Date" means such date selected by the Calculation Agent for the replacement of the relevant Fund or Replacement Fund, as the case may be;

"Fund Substitution Event" means the determination by the Calculation Agent in its sole and absolute discretion that any of the following has occurred:

(a) the main investment objective of a Fund or Replacement Fund, as the case may be, is amended in accordance with its rules so that it no longer refers solely to the benchmark as set out in the constitutive documents and/or prospectus in respect of such Fund on the Trade Date or in the case of a Replacement Fund on the Fund Substitution Date;

(b) the currency denomination of a Fund or Replacement Fund, as the case may be, is amended in accordance with its rules so that the NAV of that Fund or Replacement Fund on any Scheduled Trading Day is no longer calculated in the same currency as at the Trade Date or in the case of a Replacement Fund as at the Fund Substitution Date;

(c) the Issuer, its affiliates or any other designated hedging entity would be required to pay a subscription fee in respect of a purchase of units/shares of a Fund or Replacement Fund or would incur a redemption fee in respect of a sale of units/shares of such Fund or Replacement Fund in relation to their hedging activities in respect of the issue of the Notes;

(d) the relevant Management Company or the administrator, service provider or other person that generally calculates and/or reports the NAV on behalf of the relevant Management Company in respect of a Fund or Replacement Fund fails for reasons other than of a technical or operational nature to calculate and publish the NAV of such Fund or Replacement Fund for four consecutive Scheduled

- 10 -

Trading Days and the reason for such failure is as a consequence of any decision to liquidate or dissolve such Fund or Replacement Fund;

(e) the activities of a Fund or Replacement Fund or its Management Company is placed under review by any governmental, legal or regulatory entity for reasons of wrongdoing, breach of any rule or regulation or other similar reason;

(f) there is any change in the regulatory or tax treatment applicable with respect to the holding, purchase and/or sale of units/shares of a Fund or Replacement Fund which (in the opinion of the Calculation Agent) could have an economic impact for the Issuer, its affiliates or any other designated hedging entity as a holder of an interest in such Fund or Replacement Fund;

(g) any suspension of, mandatory redemption, limitation of or restriction of (including but not limited to the imposition of a minimum notice period in redeeming or subscribing in units/shares in a Fund or Replacement Fund) trading of such Fund or Replacement Fund (by reason of liquidity restrictions or otherwise) if, in any such case, such suspension or limitation is, in the determination of the Calculation Agent, material;

(h) the Issuer, its affiliates or any other designated hedging entity would be obliged (whether by the relevant Management Company or otherwise) to redeem all or some of the units/shares of a Fund or Replacement Fund that it is holding in relation to its hedging activities in respect of the issue of the Notes; and

(i) the annualised volatility of a Fund or Replacement Fund exceeds the percentage prescribed by any applicable law, regulation or in the constitutive documents or prospectus of such Fund or Replacement Fund. "Volatility" for the purposes of this definition in a given time window, as of any date of determination and with respect to the relevant Fund or Replacement Fund, is the annualized standard deviation of the monthly percentage changes in the net asset value of such Fund or Replacement Fund as calculated and published by the relevant Management Company or the administrator, service provider or other person that generally reports such value on behalf of the relevant Management Company to its investors or a publishing service on each Scheduled Trading Day during the particular time window preceding such date of determination, expressed as a percentage, as determined by the Calculation Agent; and

"Insolvency" means the insolvency, liquidation (whether voluntary or involuntary) or bankruptcy of, or any analogous proceedings affecting, a Fund or Replacement Fund, its Management Company, administrator or master fund.

5   Potential Adjustment Events

Following the declaration by the Issuer of the terms of any Potential Adjustment Event, the Calculation Agent will determine whether such Potential Adjustment Event has a diluting or concentrative effect on the theoretical value of the relevant units or shares in a Fund or Replacement Fund, as the case may be, and, if so, will (i) make the corresponding adjustment(s), if any, to any one or more of the Initial Net Asset Value or Net Asset Value relating to such Fund or Replacement Fund for a particular date and, in any case, any other variable relevant to the settlement, payment or other terms of the Notes as the Calculation Agent determines appropriate to account for that diluting or concentrative effect (provided that no adjustments will be made to account solely for changes in volatility, expected dividends, stock loan rate or liquidity relative to the relevant units or shares in a Fund or Replacement Fund, as the case may be) and (ii) determine the effective date(s) of the adjustment(s). The Calculation Agent may (but need not) determine the appropriate adjustment(s) by reference to the adjustment(s) in respect of such Potential Adjustment Event made by an options exchange to

options on the relevant units or shares in the relevant Fund or Replacement Fund, as the case may be, traded on such options exchange.

"Potential Adjustment Event" means any of the following:

(i) a subdivision, consolidation or reclassification of relevant units or shares in the relevant Fund or Replacement Fund, as the case may be (unless resulting in a Fund Merger Event), or a free distribution or dividend of any such units or shares in such Fund or Replacement Fund, as the case may be, to existing holders by way of bonus, capitalization or similar issue;

(ii) a distribution, issue or dividend to existing holders of the relevant units or shares in a Fund or Replacement Fund, as the case may be, of (A) such units or shares in such Fund or Replacement Fund, as the case may be, or (B) other share capital or securities granting the right to payment of dividends and/or the proceeds of liquidation of such Fund or Replacement Fund, as the case may be, equally or proportionately with such payments to holders of such units or shares in such Fund or Replacement Fund, as the case may be, or (C) share capital or other securities of another issuer acquired or owned (directly or indirectly) by such Fund or Replacement Fund, as the case may be, as a result of spin-off or other similar transaction, or (D) any other type of securities, rights or warrants or other assets, in any case for payment (cash or other consideration) at less than the prevailing market price as determined by the Calculation Agent;

(iii) an Extraordinary Dividend;

(iv) a call by a Fund or Replacement Fund, as the case may be, in respect of relevant units or shares in such Fund or Replacement Fund, as the case may be, that are not fully paid;

(v) a repurchase by the relevant Fund or Replacement Fund, as the case may be, of relevant units or shares in such Fund or Replacement Fund, as the case may be, whether out of profits or capital and whether the consideration for such repurchase is cash, securities or otherwise;

(vi) in respect of a Fund or Replacement Fund, as the case may be, an event that results in any shareholder rights being distributed or becoming separated from shares of common stock or other shares of the capital stock of the Issuer pursuant to a shareholder rights plan or arrangement directed against hostile takeovers that provides upon the occurrence of certain events for a distribution of preferred stock, warrants, debt instruments or stock rights at a price below their market value, as determined by the Calculation Agent, provided that any adjustment effected as a result of such an event shall be readjusted upon any redemption of such rights; or

(vii) any other event that may have a diluting or concentrative effect on the theoretical value of the relevant units or shares in a Fund or Replacement Fund, as the case may be.

"Extraordinary Dividend" means the characterization of a dividend or portion thereof as determined by the Calculation Agent.

6   Notification of Early Redemption Amount, Interest Amount, Fund Substitution Event and Disrupted Days

6.1 As soon as reasonably practicable after calculating or otherwise determining the Early Redemption Amount or the Interest Amounts the Calculation Agent shall give notice of the relevant amount to the Issuer.

6.2 The Calculation Agent shall as soon as reasonably practicable notify the Issuer of the existence or occurrence of a Disrupted Day on any day which but for such Disrupted Day would have been the Strike Fixing Date or an Averaging Date.

- 12 -

6.3    Upon the occurrence of a Fund Substitution Event, the Calculation Agent shall as soon as reasonably practicable notify the Issuer stating the occurrence of the event and giving details thereof.

6.4    Adjustments in accordance with the foregoing sections shall be calculated by the Calculation Agent, shall be notified to the Noteholders in accordance with Condition 15 and shall be (in the absence of manifest error) binding on all parties concerned. However, Noteholders should be aware that there may be, necessarily, some delay between the time at which any of the above events occur and the time at which it is reported to Noteholders.

7    The Calculation Agent

The Calculation Agent shall act independently and not as an agent of the Issuer, the Guarantor or the Noteholders. The Calculation Agent shall have no responsibility to Noteholders for good faith errors or omissions in its calculations and determinations and in adopting the decisions and determinations of the Calculation Agent of the Notes. All determinations made by the Calculation Agent hereunder shall, in the absence of manifest error, wilful default or bad faith, be final and conclusive, and the Calculation Agent shall have no liability to the Issuer, the Guarantor, the Noteholders or any third party in relation to such determinations except in the case of its wilful default, or bad faith.

Nothing contained herein shall prevent the Calculation Agent from dealing in the Notes or from entering into any related transaction, including without limitation any swap or hedging transactions with the Issuer, the Guarantor (or any of their respective affiliates) or any holder of the Notes (or any of its affiliates).