Hearing Date and Time: March 31, 2011 at 10:00 a.m. (Eastern Standard Time)
Response Deadline: March 16, 2011 at 4:00 p.m. (Eastern Standard Time)

VENABLE LLP
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598
Edward A. Smith
Rishi Kapoor

*Attorneys for Brevan Howard Master Fund Limited*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
In re                                                          : Chapter 11
:
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   : Case No. 08-13555 (JMP)
:
Debtor.                                          : (Jointly Administered)
:
----------------------------------------------------------------x

**RESPONSE OF BREVAN HOWARD MASTER FUND LIMITED**
**TO DEBTORS' NINETY-FIFTH OMNIBUS OBJECTION TO**
**CLAIMS (VALUED DERIVATIVE CLAIMS)**

Brevan Howard Master Fund Limited ("Brevan Howard" or "Claimant"), by and through its undersigned counsel, hereby submits this response (the "Response") to the Debtors' Ninety-Fifth Omnibus Objection to Claims (Valued Derivative Claims) dated February 14, 2011 [Docket No. 14490] (the "Objection"), which seeks to reduce the amounts of claims nos. 14684 (the "Guarantee Claim") and 14685 (the "Derivative Claim," and together with the Guarantee Claim, the "Claims") filed by Brevan Howard against, respectively, Lehman Brothers Holdings Inc. ("LBHI") and Lehman Brothers Special Financing Inc. ("LBSF," and together with LBHI, the "Debtors") from $32,235,070 (plus interest in an unliquidated amount) to $21,519,889 (the "Modified Claim Amount"). In support of its Response, Claimant respectfully states as follows:

**PRELIMINARY STATEMENT**[1]

1.   This Court should deny Debtors' Objection.  The Debtors are asking this Court to reduce the Claimant's Claims by over $10 million dollars despite failing to provide a single shred of evidence to substantiate their request.  The Debtors' rely on a single bald assertion in support of the Objection: "that the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values determined by the Debtors."  Objection, ¶ 11 at 5.  Yet nowhere in the Objection do the Debtors show (a) the underlying trade-level detail or methodology used to perform their valuation; (b) that their valuation comports with the contractual, bargained-for methodology provided in the Agreement governing these transactions; or (c) that Brevan Howard somehow misapplied the Agreement's methodology.  On its face, the Debtors' Objection is wholly deficient and fails to provide the Court any basis whatsoever from which to grant the requested relief.

2.   Brevan Howard is an investment fund whose investors include a wide range of U.S. public and private retirement plans, representing the savings of groups like public school teachers, school staff and other administrators; state, city and county employees; transportation, fire and police officers; employees of private corporations; and charitable endowments and foundations across a number of states.  The Claims at issue here arose out of derivative transactions between LBSF and Brevan Howard that were terminated as a result of LBHI's bankruptcy filing in September 2008.  Due to the commencement of these proceedings, an Event of Default occurred in respect of the Debtors pursuant to the terms of the governing Master Agreement.  In compliance with the Agreement's terms, Brevan Howard provided notice to the Debtors of their default and subsequently delivered a 56-page statement setting forth in

---

[1]   Capitalized terms used but not defined in the Preliminary Statement shall have the meaning ascribed to them elsewhere in this Response.

detail the data and methodology used to determine the amount payable upon termination. The Debtors' Objection, on the other hand, is completely devoid of any pertinent information from which the Court could assess the validity of the Debtors' assertions. Accordingly, not only have the Debtors have failed to produce sufficient evidence to overcome the *prima facie* validity accorded to the Brevan Howard's Claims, but Brevan Howard fully complied with the express terms of the Agreement. Moreover, any reduction in Brevan Howard's Claims would reduce the assets, *i.e.*, the retirement savings, of its investors. For these reasons, as set forth in greater detail below, the Court should deny the Objection.

## FACTUAL AND PROCEDURAL BACKGROUND

3.  As of January 24, 2005, Brevan Howard and LBSF entered into an ISDA Master Agreement (as amended, the "Master Agreement"), related Schedule dated as of January 24, 2005 (the "Schedule"), and Credit Support Annex to the Schedule dated as of January 24, 2005 (the "CSA," and together with the Master Agreement and Schedule, the "Agreement").[2] Pursuant to Part 4(e) of the Schedule the obligations of LBSF were unconditionally guaranteed by LBHI, the corporate parent of LBSF, pursuant to a Guarantee of Lehman Brothers Holdings Inc. dated as of February 17, 2005 (the "Guarantee").[3]

4.  On September 15, 2008 (the "Petition Date"), LBHI and certain of its affiliates filed voluntary petitions under title 11, chapter 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. Because LBHI was LBSF's Credit Support Provider under the Agreement, LBHI's bankruptcy filing constituted an Event of Default under Section 5(a)(vii)(4) of the Agreement,

---

[2]  Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Agreement.

[3]  In addition to the Guarantee, LBHI further agreed to guarantee the obligations of LBSF in the Unanimous Written Consent of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc. dated as of June 9, 2005 (the "Board Resolution Guarantee").

- 3 -

which gave Brevan Howard the right to terminate the Agreement upon providing LBSF with a notice designating an Early Termination Date in respect of all outstanding Transactions. See Agreement, § 6(a).

5. By letter dated September 15, 2008, Brevan Howard notified LBSF that LBSF had suffered an Event of Default under the Agreement (the "Notice of Early Termination"). The Notice of Early Termination designated September 15, 2008 as the Early Termination Date pursuant to Section 6(a) of the Agreement. In accordance with Section 6(d) of the Agreement, Brevan Howard subsequently served upon LBSF a calculation statement dated October 7, 2008 (the "Calculation Statement"). In the Calculation Statement, Brevan Howard asserts that LBSF owes it $32,235,070 plus interest in an unliquidated amount accruing at the Default Rate (the "Amount Payable") in respect of all Transactions under the Agreement. The liquidated portion of the Amount Payable consists of the difference between $42,067,108, which is the value of collateral held by LBSF owing to Brevan Howard, and $9,832,038, the aggregate value of the Terminated Transactions owing in favor of LBSF. The Calculation Statement attached 54 pages of statements, quotations, and other trade-level detail showing the methodology and underlying data Brevan Howard used to calculate the Amount Payable.

6. In accordance with the Court's *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form* dated July 2, 2009 [Docket No. 4271] (the "Bar Date Order") and the accompanying *Notice of Deadlines for Filing Proofs of Claim* (the "Bar Date Notice"), Brevan Howard timely filed its Claims on September 17, 2009. Brevan Howard timely completed and submitted the "Derivative Questionnaire" for the Derivative Claim on October 19, 2009, and the "Guarantee

Questionnaire" for the Guarantee Claim on October 13, 2009 (collectively, the "Questionnaires"). In connection with the Questionnaires, Brevan Howard provided the Debtors with electronic copies of the Agreement, the CSA, the Guarantee, the Board Resolution Guarantee, the Notice of Early Termination, and the Calculation Statement.[4]

7. The Debtors filed the Objection on February 14, 2011. The Objection seeks to reduce the Derivative Claim and the Guarantee Claim each to $21,519,889, a reduction of over $10 million from the $32,235,070 asserted by Brevan Howard in each Claim. In support of their request, the Debtors contend that the amount of the Claims are "greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors after a review of the supporting documentation provided by the claimants and the Debtors' books and records." Objection, ¶ 13 at 5-6. Despite the Debtors' contention, however, the Objection does not argue that Brevan Howard incorrectly applied the methodology stated in the Agreement, nor does it provide any detail whatsoever concerning the Debtors' valuation of the Claims, the trade-level detail or quotations used to perform the Debtors' valuation, or the methodology used by the Debtors.

---

[4] Pursuant to the Court's *Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors* dated as of April 19, 2010 [Docket No. 8474], the information submitted by Brevan Howard in connection with its Claims and Questionnaires are part of the record, and Brevan Howard does not need to resubmit them in connection with this Response. Copies of these documents will be provided upon request.

# ARGUMENT

8. The Objection must be denied with respect to Brevan Howard's Claims because (a) the Debtors failed to produce evidence in their Objection sufficient to rebut the *prima facie* validity of Brevan Howard's timely-filed Claims; and (b) the Claims were properly calculated in accordance with the terms of the Agreement.

### A. The Objection Does Not Present Evidence Sufficient to Rebut the *Prima Facie* Validity of Brevan Howard's Claims.

9. Pursuant to the Federal Rules of Bankruptcy Procedure, a completed proof of claim, timely filed, is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).

10. Brevan Howard timely and properly filed its Claims, and the Claims complied with both Fed. R. Bankr. P. 3001 and the Bar Date Order. The Claims, as supplemented by the Questionnaires, contained (a) a detailed narrative of the events giving rise to the Debtors' obligations; (b) copies of the Agreement, Notice of Early Termination, Calculation Statement, and Guarantee; and (c) additional and detailed backup information detailing Brevan Howard's calculation of the Claims on a trade-by-trade basis including the source of market information, dealer quotes that were obtained, who provided the quotes, and as of what dates those quotes were stated, all of which was undertaken in accordance with the terms of the Agreement. Accordingly, Brevan Howard's Claims are *prima facie* valid.

11. Brevan Howard's Claims retain their *prima facie* validity unless and until an objecting party offers sufficient proof to the contrary. See Sherman v. Novack (In re Reilly), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000), aff'd, 242 F.3d 367 (2d Cir. 2000) ("To overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim.") (citing In re Allegheny Int'l,

Inc., 954 F.2d 167 (3d Cir. 1992)); In re Oneida Ltd., 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion."); Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.), No. 98 Civ. 4990 (HB), 1999 WL 178788, at *3 (S.D.N.Y. March 31, 1999) ("Once the claimant has established its *prima facie* case, the burden of going forward then shifts to the debtor to produce evidence sufficient to negate the *prima facie* validity of the filed claim.").

12.     The Debtors' Objection does not offer any evidence to rebut the *prima facie* validity of Brevan Howard's claims. Nowhere in Debtors' Objection do they show how they calculated the Modified Claim Amount. Nor do the Debtors suggest that Brevan Howard miscalculated the Amount Payable. The Objection is simply devoid of any data or documentation showing the underlying trade detail or methodology used by the Debtors to derive the Modified Claim Amount or otherwise rebut Brevan Howard's well-documented calculations. In other words, the Objection does nothing more than state the Debtors' position that the Claims should be valued at the Modified Claim Amount, without any explanation as to the basis for that valuation.

13.     Rather than offering any proof in support of its Objection, the Debtors instead attempt to re-write the burden-shifting standards by incorrectly arguing that "[i]f an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim." Objection, ¶ 12 at 5 (citing In re Oneida Ltd., 400 B.R. at 389; In re Adelphia Comms. Corp., Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); In re Rockefeller Ctr. Props., 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000)). However, the Debtors fail to acknowledge that an objection to a claim

must be based on actual evidence, and not, as the Debtors suggest, unsupported assertions. Even the cases cited by the Debtors disagree with the Debtors' inaccurate recitation of the applicable standard:

> A proof of claim is *prima facie* evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion. The burden then shifts to the claimant ***if the objector produces evidence equal in force to the prima facie case*** . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.

In re Oneida, 400 B.R. at 389 (emphasis added) (internal quotations and citations omitted); see also In re Adelphia Comms. Corp., 2007 Bankr. LEXIS 660, at *15-16 ("Because a properly filed proof of claim is deemed allowed until objected to, such allowance compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case.") (internal quotations omitted); In re Rockefeller Ctr. Props., 272 B.R. at 539 (only after "an objectant offers sufficient evidence to overcome the *prima facie* validity of the claim" does the burden shift back to the claimant); Make Meat Corp., 1999 WL 178788, at *4 ("The case law is clear. To prevail, the objector must affirmatively ***produce*** evidence to counter the creditor's claim.") (emphasis in original).

14. Instead of affirmatively producing evidence to counter Brevan Howard's Claims, the Objection merely argues that "the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values determined by the Debtors' books and records . . . ." Objection, ¶ 11 at 5. As their sole support, the Debtors claim that they have developed a "multi-step process" to evaluate such claims, and refer the Court to the Declaration of Gary H. Mandelblatt (the "Mandelblatt Declaration")[5] for a "more comprehensive discussion of the

---

5 The Mandelblatt Declaration was originally submitted in support of the Debtors' *Motion Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) for Establishment of the Deadline for*

valuation process." Objection, ¶ 14 at 6, n.2 at 6. The Mandelblatt Declaration, however, only describes a general process that was purportedly used to reach the Modified Claim Amount, but provides no evidence specific to Brevan Howard's Claims. Mandelblatt Declaration, ¶¶ 20-34 at 8-15. Nor does the Objection itself reveal how the Debtors' "multi-step process" was applied to Brevan Howard's Claims and resulted in a value that is substantially less than the amount Brevan Howard calculated in accordance with the method specified by the Agreement. And, as set forth above, the Objection does not provide any data or documentation of the underlying trade detail or methodology used to derive the Modified Claim Amount. Without such evidence, the Debtors' Objection cannot overcome the *prima facie* validity of the Claims and Brevan Howard is under no obligation to provide any further evidence in support thereof. Sherman, 245 B.R. at 773. The Objection is fundamentally flawed on its face and should be overruled in its entirety.

### B. The Claims Were Properly Calculated in Accordance with the Terms of the Agreement.

15. Brevan Howard calculated the Amount Payable asserted in the Claims in strict accordance with the Agreement.

16. Upon the occurrence of an Event of Default, Brevan Howard had a contractual option to terminate all outstanding Transactions under the Agreement. Agreement, § 6(a). Brevan Howard exercised its option by delivering the Notice of Early Termination to LBSF on September 15, 2008 and designating that date as the Early Termination Date. Brevan Howard then solicited market quotations and other information necessary to calculate the amounts owing under the Terminated Transactions as of the Early Termination Date. On October 7, 2008, Brevan Howard delivered to LBSF a statement setting forth those calculations. Agreement, § 6(d)(i).

---

*Filing Proofs of Claim, Approval of the Form and Manner of Notice Thereof and Approval of the Claim Form* dated June 23, 2009 [Docket No. 4113]

17. Pursuant to Part 1(f) of the Schedule, the parties elected to apply "Market Quotation" and "Second Method" for purposes of calculating the payments owing following the early termination of the Agreement. The Agreement provides that, upon an Event of Default:

> If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount ***(determined by the Non-defaulting Party)*** in respect of the Terminated Transactions and the Termination Currency Equivalent of the Unpaid Amounts owing to the Non-defaulting Party less (B) the Termination Currency Equivalent of the Unpaid Amounts owing to the Defaulting Party.

Agreement, § 6(e)(i)(3) at 10 (emphasis added).

18. The Agreement defines "Settlement Amount," in part, as "the Termination Currency Equivalent of the Market Quotations (whether positive or negative) for each Terminated Transaction or group of Terminated Transactions for which a Market Quotation is determined . . . ." Agreement, § 14 at 16.

19. "Market Quotation," in turn, is defined, in relevant part, as:

> [W]ith respect to one or more Terminated Transactions and a party making the determination, an amount [that is] determined on the basis of quotations from Reference Market-makers. Each quotation will be for an amount, if any, that would be paid to such party (expressed as a negative number) or by such party (expressed as a positive number) in consideration of an agreement between such party (taking into account any existing Credit Support Document with respect to the obligations of such party) and the quoting Reference Market-maker to enter into a transaction (the "Replacement Transaction") that would have the effect of preserving for such party the economic equivalent of any payment or delivery (whether the underlying obligation was absolute or contingent and assuming the satisfaction of each applicable condition precedent) by the parties in respect of such Terminated Transaction or group of Terminated Transactions that would, but for the occurrence of the relevant Early Termination Date, have been required after that date. . . . The party making the determination (or its agent) will request each Reference Market-maker to provide its quotation to the extent reasonably practicable as of the same day and time (without regard to different time

zones) on or as soon as reasonably practicable after the relevant Early Termination Date.

Agreement, § 14 at 15-16.

20.  As detailed in the Calculation Statement, Brevan Howard complied with these terms in determining the Amount Payable upon early termination. Beginning on the Early Termination Date, Brevan Howard solicited quotes for Replacement Transactions from several large banking institutions, J.P. Morgan Chase, Barclays Capital, Deutsche Bank A.G., Goldman Sachs, and Credit Suisse, each of which constitutes a "Reference Market-maker" under the terms of the Agreement. Agreement, § 14 at 16. Based on the quotations provided by such Reference Market-makers, and using the Agreements' Market Quotation methodology, Brevan Howard determined that the Settlement Amount, *i.e.*, the aggregate value of the Termination Transactions, was $9,832,038 owing in favor of LBSF. Agreement, § 14 at 15-16.

21.  Brevan Howard then offset the Settlement Amount against the value of collateral posted by Brevan Howard and held by LBSF. In accordance with the provisions of the CSA, Brevan Howard had previously posted collateral in the form of United States Government Treasury Bills, which were valued at $42,067,108 as of the Early Termination Date. Not only is such a setoff expressly allowed under sections 6(e) and 6(f)[6] of the Agreement and given effect pursuant to Section 553 of the Bankruptcy Code, but the CSA further clarifies that posted collateral constitutes an "Unpaid Amount" for the purposes of computing the amounts owing upon early termination. CSA, ¶ 6 at 5. Accordingly, the Amount Payable was determined by subtracting $9,832,038 from $42,067,108, resulting in a net amount of $32,235,070 owing in favor of Brevan Howard.

22.  Section 6(d) of the Agreement provides that an Amount Payable

---

[6]  Section 6(f) of the Agreement was added pursuant to Part 4(g) of the Schedule. See Schedule, Part 4(g) at 28-29.

- 11 -

calculated in respect of an Early Termination Date "will be payable on the day the notice of the amount payable is effective . . . ." The Calculation Statement setting forth the Amount Payable was effective as of October 7, 2008 (or the next business day). As a result, the Amount Payable further additionally includes any applicable interest in an unliquidated amount.

23.     The fact that the Debtors have arrived at an alternative valuation of the Amount Payable is irrelevant. Neither the Master Agreement, nor the Schedule, CSA, or the Confirmations modifying or amending the Agreement, provide the Defaulting Party -- LBSF -- with an opportunity or right to provide alternative quotations or prices or otherwise dispute the Amount Payable determined by the Non-defaulting Party. To the contrary, the Agreement expressly provides that the right to determine the Amount Payable upon early termination belongs exclusively to the Non-defaulting Party, which in this case is Brevan Howard. See Agreement, § 6(e)(i)(3) ("If the Second Method and Market Quotation apply, an amount will be payable equal to (A) the sum of the Settlement Amount *(determined by the Non-defaulting Party)* in respect of the Terminated Transactions . . . .") (emphasis added). Brevan Howard calculated the Amount Payable in good faith and in a manner consistent with the terms of the Agreement, facts which the Debtors do not dispute in their Objection. Absent a showing by the Debtors that Brevan Howard miscalculated the Amount Payable or misapplied the Agreement's methodology, the Debtors' subjective belief as to what constitutes the fair, accurate, and reasonable value for the Terminated Transactions simply has no bearing on a determination of the Amount Payable upon early termination.

24.     Accordingly, this Court should allow the Derivative Claim in its full amount. The Guarantee Claim should similarly be allowed in full as it premised on the written Guarantee of LBHI, which provides that:

> Guarantor hereby unconditionally guarantees to [Brevan Howard] the due and punctual payment of all amounts payable by [LBSF] under each Transaction and when and as [LBSF]'s obligations thereunder become due and payable in accordance with the Terms of the Agreement. In case of the failure of [LBSF] to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Brevan Howard, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

Guarantee at 1. Therefore, because full amount of the Derivative Claim remains due and owing, the Guarantee Claim against LBHI should be allowed in full as well.

## RESERVATION OF RIGHTS

25. Brevan Howard reserves all rights with respect to the Claims asserted herein. Without limiting the generality of the foregoing, Brevan Howard further reserves all rights to (a) amend or supplement this Response, (b) seek discovery and request a full evidentiary hearing pursuant to Fed. R. Bankr. P. 9014(e) and Rule 9014-2 of the Local Rules of Bankruptcy Procedure for the Southern District of New York, and (c) to respond to any objection that contests the *prima facie* validity of Brevan Howard's Claims.

26. Brevan Howard also hereby incorporates by reference, as if fully set forth herein, the arguments of other, similarly-situated claimants.

## **RELIEF REQUESTED**

WHEREFORE, Brevan Howard respectfully requests that this Court enter an order (a) denying the Debtors' Objection, (b) allowing the Claims in their full amounts, and (c) for such other relief as the Court deems just and appropriate.

Dated: New York, New York
March 16, 2011

                    VENABLE LLP

By: */s/ Edward A. Smith*
Edward A. Smith (easmith@venable.com)
Rishi Kapoor (rkapoor@venable.com)
Rockefeller Center
1270 Avenue of the Americas, 25th Floor
New York, New York 10020
Telephone: (212) 307-5500
Facsimile: (212) 307-5598

*Attorneys for Brevan Howard Master Fund Limited*