- 1 -

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 08-13555(JMP)

5    - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    LEHMAN BROTHERS HOLDINGS INC., et al.,

9

10                    Debtors.

11

12   - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              June 14, 2010

19              9:34 AM

20

21

22   B E F O R E:

23   HON. JAMES M. PECK

24   U.S. BANKRUPTCY JUDGE

25

- 2 -

1

2      EVIDENTIARY HEARING re 60(b) Motions.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24      Transcribed by:  Clara Rubin

25

- 3 -

```
 1

 2    A P P E A R A N C E S:

 3    JONES DAY

 4          Special Counsel for the Debtors

 5          222 East 41st Street

 6          New York, NY 10017

 7

 8    BY:   ROBERT W. GAFFEY, ESQ.

 9          WILLIAM J. HINE, ESQ.

10

11    BOIES, SCHILLER & FLEXNER LLP

12          Attorneys for Barclays Capital, Inc.

13          575 Lexington Avenue

14          7th Floor

15          New York, NY 10022

16

17    BY:   JONATHAN D. SCHILLER, ESQ.

18

19    HUGHES HUBBARD & REED LLP

20          Attorneys for James W. Giddens, SIPA Trustee

21          One Battery Park Plaza

22          New York, NY 10004

23

24    BY:   WILLIAM R. MAGUIRE, ESQ.

25          NEIL J. OXFORD, ESQ.
```

- 4 -

1

2    QUINN EMMANUEL URQUHART OLIVER & HEDGES, LLP

3          Special Counsel to the Official Committee of Unsecured

4           Creditors

5          51 Madison Avenue, 22nd Floor

6          New York, NY 10010

7

8    BY:   JAMES C. TECCE, ESQ.

9

10   STUTMAN TREISTER & GLATT

11         Attorneys for Interested Party, Elliott Management

12         1901 Avenue of the Stars

13         12th Floor

14         Los Angeles, CA 90067

15

16   BY:   WHITMAN L. HOLT, ESQ. (TELEPHONICALLY)

17         REBECCA S. REVICH, ESQ. (TELEPHONICALLY)

18

19   STUTMAN TREISTER & GLATT

20         Attorneys for Creditor, Perry Capital

21         1901 Avenue of the Stars

22         12th Floor

23         Los Angeles, CA 90067

24

25   BY:   MARINA FINEMAN, ESQ. (TELEPHONICALLY)

08-13555-mg    Doc 15124    Filed 03/17/11    Entered 03/17/11 14:01:15    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 5 of 23

- 5 -

1                  P R O C E E D I N G S

2              THE COURT:  Be seated, please.  Good morning.  Welcome

3     back.

4              IN UNISON:  Good morning, Your Honor.

5              MR. GAFFEY:  Robert Gaffey, Your Honor, for the

6     debtor.  I thought it might take -- it might make some sense,

7     Your Honor, to take a minute just to describe how we propose to

8     proceed this morning.

9              THE COURT:  I'm interested in that.

10             MR. GAFFEY:  Well, we have designations to read over

11    the next few days of the testimony of about nineteen witnesses.

12    We have cut back -- over the course of the 2004 discovery and

13    the discovery incident to the suit itself, Your Honor, we

14    took -- it must be seventy depositions.  So we've cut back

15    considerably on -- but from the total body of deposition

16    testimony.

17             We have exchanged designations with Barclays' counsel

18    and have their cross-designations as well.  We have included

19    both all the movants' designations and all of Barclays'

20    designations in transcripts which, if we read each one, propose

21    to read them in sequence, not ours and then theirs.  I'm

22    inclined, Your Honor, unless Your Honor feels it's an important

23    piece of information for the Court to have, not to stop each

24    time and identify who designated what.  It's all evidence --

25             THE COURT:  Right.

- 6 -

1         MR. GAFFEY:  -- so it all should come in.

2         Mechanically, Your Honor, we have a Plan A and a Plan

3    B for the Court.  We have the witness books, that I know

4    everybody's grown so fond of, for each witness, and those

5    include copies of each of the exhibits referred to in any piece

6    of designated testimony and we'll be able to identify, as we

7    read, what the cross-reference is to trial numbers.  We also

8    have, if the Court would prefer, something more streamlined.

9         This is all the deposition testimony in total that

10   we've designated.  This is just the transcript.  It's mini-

11   scripts, and it's highlighted in color with, I think, yellow

12   for the movants and blue for the -- for Barclays --

13         THE COURT:  Okay.

14         MR. GAFFEY:  -- so you'd be able to see who the

15   designations are.

16         So it's at Your Honor's pleasure.  Do you want the

17   collection of each book as we get on the stand, or is the Court

18   happy with --

19         THE COURT:  I'll take the single book.

20         MR. GAFFEY:  Okay.  All right.  And we'll be able,

21   obviously, to put designations up on -- I'm sorry, exhibits up

22   on the screen.

23         THE COURT:  Now, is it your intention to have exhibits

24   on the screen while the depositions are being read?

25         MR. GAFFEY:  More or less, Your Honor, it is.  What my

- 7 -

1    plan had been was we'll put up -- one of our colleagues will

2    take the stand, and we're going to try and mix it up a little

3    bit so the Court's not listening to the same voice for two

4    days.

5            THE COURT:  Are you planning two days of this,

6    actually?

7            MR. GAFFEY:  I think it will take that, Your Honor.

8    By the time -- we had designated about -- we, the movants, had

9    designated about 600 pages.  Figure three full deposition

10   transcripts when you add them all together.  And then with the

11   cross-designations from Barclays, it's a rough estimate but I

12   think it's between 3- and 400 pages more.

13           I think it will take the two days.  Our estimate for

14   reading it all in, when we talked about scheduling the last

15   time, was two days.  The cross-designations might lengthen that

16   a little bit, but we're going to proceed as briskly as we can

17   and try and fit it into that time.

18           THE COURT:  Just a procedural point:  To the extent

19   that any of the testimony might be the sort that would prompt

20   an objection, has this process of designation led to an

21   agreement that all of the testimony as presented will be

22   presented without interruption?

23           MR. GAFFEY:  No, Your Honor, it has not.  We had

24   spoken about -- not through the fact that we were not able to

25   agree, but due to the fact that the conversation we were having

- 8 -

1    with Barclays' counsel about trying to find a way to designate

2    and get a mechanism for resolving objections revolved around

3    the proposal we had made at one point about submitting the

4    testimony and then coming up with a mechanism to identify them

5    and ask for rulings if we couldn't agree.  But once it was

6    determined that we had to proceed by reading, I think the

7    presumption was if they have an objection they need to make it.

8    Or if Your Honor has another idea as to how we should proceed,

9    I'm happy to hear it.

10          It seems to me, in terms of efficiency, it does make

11   sense to maybe preserve objections and then put them all in

12   later, or some such thing, so that we're not taking that time,

13   as we have lawyers collected, and the Court's time, in reading.

14          THE COURT:  I'd like to hear what others think about

15   that, but it seems to me that doing this the most efficient way

16   is the way we should strive for.  But if it turns out that it

17   actually lengthens the process, that would be

18   counterproductive.

19          MR. GAFFEY:  I will say that with regard to the cross-

20   designations, Your Honor, and I'm speaking only for the debtor

21   but I suspect I have the agreement of the other movants, we've

22   reviewed what they've cross-designated and, in the interest

23   both of efficiency and the nature of the testimony, we don't

24   have objections.

25          THE COURT:  Okay.

- 9 -

1          Mr. Schiller?

2          MR. SCHILLER:  Good morning, Your Honor.

3          THE COURT:  Good morning.

4          MR. SCHILLER:  Just to remind the Court, my colleague

5    Mr. Boies is preparing for the Proposition 8 arguments Tuesday

6    and Wednesday in San Francisco; otherwise, he would be here.

7          THE COURT:  I understand there was also a very nice

8    piece on that in yesterday's New York Times.

9          MR. SCHILLER:  And he'll join us next Monday and

10   Tuesday, Judge.  But I apologize for his absence today.

11         As one who was a proponent for the old-fashioned way

12   of a reading, a month, two months ago --

13         THE COURT:  Are you prepared to change your mind on

14   that?

15         MR. SCHILLER:  I am.  Your Honor asked for a different

16   approach.  Your Honor admonished the parties to streamline.

17         THE COURT:  Right.

18         MR. SCHILLER:  We were afraid about the dump, putting

19   boxes in front of the Court of reams of testimony.  That's not

20   the case now.  Both parties have streamlined, cooperatively.

21   Objections, though, would interrupt and delay, as well as the

22   cost of all these suits sitting here, all of us being here.

23         THE COURT:  Well, it is a very well-dressed group.

24         MR. SCHILLER:  It's well-dressed.  Thank you.

25         But we would put in written objections and agree to

- 10 -

1    Your Honor's reading the designations that we've made outside

2    of open court, if Your Honor was disposed toward that, as an

3    efficient time-saving device this week.

4           THE COURT:  If you're prepared to do that and there's

5    no objection to that, that's something I am prepared to

6    consider doing.

7           Let me tell you one of the things that concerns me,

8    and it's the notion of transparency into the process.  There

9    are people who I assume are in court who are not associated

10   with any one of the law firms involved in the litigation, who

11   are paying some attention to this proceeding and in some

12   instances reporting to their principals or reporting to the

13   public.  And so one of the concerns that I have about the case

14   as a whole is that important evidence be presented publicly.

15   In that respect, I'm wondering how this process works.  Is

16   there a repository, a public repository, for the information

17   you're about to present to me so that, as I'm reading it,

18   others can read it as well?

19          MR. GAFFEY:  If I might suggest, Your Honor, we

20   haven't had a chance to discuss this, but I have thought about

21   the transparency issue.  It seems to me that if we -- and we've

22   agreed that these are the designations and the cross-

23   designations -- if we were to mark this collection of

24   deposition testimony as Movants' Exhibit -- whatever my next

25   number is, or Joint Exhibit, we can put this on the public

- 11 -

1    file, Your Honor.  It's --

2            MR. SCHILLER:  Immediately.

3            MR. GAFFEY:  It's easy for the public to follow.  It's

4    not bound up in briefs and exhibits and, you know, we'll put

5    one quick stipulation over the top so it's got a reason to be

6    filed.  And we can just put the testimony on the record; it'll

7    be available on the court's docket for anybody who wants to

8    read it.

9            THE COURT:  That sounds like a good solution.

10            MR. GAFFEY:  Complete with color-coding so they'll be

11    able to see whose designations they are as well.

12            THE COURT:  And with color-coding that says which

13    parts of the depositions are really important and should be

14    read, perhaps?

15            MR. GAFFEY:  I will leave that to the Court, Your

16    Honor.

17            THE COURT:  Okay, fine.

18            MR. GAFFEY:  I'm tempted to talk about eight and a

19    half by ten color glossy pictures as well, but that would date

20    me.

21            So what I suggest then, Your Honor, is if you're

22    inclined to proceed that way, I think we would just have to

23    work out -- and I'm not -- I don't think we need to take the

24    Court's time -- some sort of mechanism for the submission of

25    objections, and we can either respond to them by --

- 12 -

1          THE COURT:  That's fine.  What about the video

2     component of this?  I'd like --

3          MR. GAFFEY:  There is no video component of this, Your

4     Honor.  We did not video the 2004 discovery.  There was no

5     action pending.

6          THE COURT:  I see.

7          MR. GAFFEY:  And we have not selected from any of the

8     video transcripts.

9          MR. SCHILLER:  We shall have several in our case, Your

10    Honor, as you saw in the opening.

11         MR. GAFFEY:  But that's down the road, so --

12         MR. MAGUIRE:  There's one minor exception to that,

13    Your Honor.

14         Bill Maguire for the trustee.

15         And there are just a couple of depositions where there

16    is some short video.  And what I might suggest with those is we

17    could submit -- the transcript is part of the binder that Mr.

18    Gaffey referred to.  But we can also provide the Court, and I

19    suppose we could even put in the court file, a DVD that has

20    that.  It's only about an hour, I think, between all the

21    witnesses.  But just so the Court has that.  And we can make

22    some arrangements so that it's in the court file, if anybody

23    wanted to see that.

24         The transcript, obviously, reflects everything.  But

25    to the extent it is captured on DVD and is available for the

- 13 -

1    Court, the best way, I think, is for us to submit with the

2    binder just a DVD that has the testimony of those two or three

3    witnesses.

4             THE COURT:  All right.

5             Is that acceptable to everybody?

6             MR. GAFFEY:  Sounds like we have a plan, Your Honor.

7    That's acceptable to me.  And, I apologize, I forgot that we

8    had the videos of a few witnesses.

9             MR. SCHILLER:  That's fine with Barclays, Judge.

10            THE COURT:  Okay.  So does that mean we all go home

11   now?

12            MR. SCHILLER:  If we could discuss schedule, Your

13   Honor, just for planning, that would be helpful.

14            THE COURT:  I think that would be helpful.

15            MR. GAFFEY:  Well, we had these two days this week set

16   aside, Your Honor, for depositions.  And I think the answer to

17   those is to give them back to the Court and the lawyers,

18   because we won't be able to reschedule witnesses on that

19   schedule.

20            THE COURT:  I actually didn't realize that we had both

21   days this week set for depositions; I rather assumed that we

22   had some witness coming in on Friday.  But if that's not so,

23   that's fine.  It would be terrific in terms of using reserve

24   time, if it were possible, to actually produce a live witness

25   for Friday's hearing, since I'm here and plan to be here.

- 14 -

1          MR. GAFFEY:  Can I have the morning on that and get

2      back to the Court, Your Honor?

3          THE COURT:  Oh, sure.

4          MR. GAFFEY:  I have to reach my first witness for --

5      who is scheduled for the 21st.

6          THE COURT:  I --

7          MR. GAFFEY:  That is the Monday --

8          THE COURT:  I don't want to create problems --

9          MR. GAFFEY:  No --

10         THE COURT:  -- by making that comment as much as

11     saying that, having set aside time this month and having all

12     this equipment brought in in anticipation of live witnesses, it

13     would be certainly more efficient to be able to use the reserve

14     time and the equipment which is here.

15         MR. GAFFEY:  Let's see what we can do amongst

16     ourselves to, if we can, have some witnesses in on Friday, Your

17     Honor, and we'll let the Court know later today if we can do

18     that.

19         THE COURT:  Okay.

20         MR. GAFFEY:  I'm reminded, though, Your Honor -- I beg

21     your pardon.  You may recall at the pretrial we had by

22     telephone that neither Mr. Boies nor I were available on the

23     Friday; that's when we were talking about reading in

24     depositions.  And --

25         THE COURT:  I am reminded of that --

- 15 -

1          MR. GAFFEY:  And --

2          THE COURT:  -- yes.

3          MR. GAFFEY:  -- thank God I'm reminded of it.

4          Assuming we proceed on Monday, Your Honor, the

5    schedule we had in mind, subject to that change, is:  on Monday

6    we will hear from Mr. Marsal and Mr. Diamond; on Tuesday we

7    will hear from Mr. Cox and Mr. Varley; and I believe the next

8    day is the following Friday when we would hear from Mr.

9    Despins; and some very short testimony from a

10   PricewaterhouseCoopers partner who's under subpoena because

11   we've not been able to agree about the admission of one

12   particular document.  And at that point, I think with the

13   submission of this we would be -- we would have concluded our

14   presentation.

15         MR. MAGUIRE:  There may be one -- a need for one or

16   two additional Barclays witnesses if we're unable to get

17   agreement with respect to one or two documents that -- we're

18   still waiting to hear from Barclays' counsel as to whether

19   there's an agreement as to the authenticity of the document.

20   But if we can't get an agreement as to admissibility, we may

21   need an additional Barclays executive with respect to

22   documents, Your Honor.

23         MR. TECCE:  Your Honor, for the committee.

24         We have been unable to reach an agreement with

25   Barclays with respect to the admission of a few e-mails.  So

- 16 -

1    we -- before the conclusion of next Friday, we would just

2    require perhaps ten minutes of the Court's time to try and move

3    those exhibits into evidence.

4            THE COURT:  Okay.

5            Well, this is a surprisingly empty day.  I guess I'll

6    use the time to read.

7            MR. GAFFEY:  Well, it's not as much as Your Honor

8    would have thought.

9            May I hand the book up, Your Honor?

10           THE COURT:  Yes, you may, of course.

11           MR. GAFFEY:  And then we'll see to filing it.

12           MR. SCHILLER:  With the Court's permission.  Your

13   Honor, it's been some time since we talked about the larger

14   picture of Your Honor's schedule and putting in our case.  And

15   if I could just turn to that, because we have witnesses with

16   families wanting to know will they be testifying in August, for

17   example, will they be testifying early September, and I'd like

18   to tell them yes, but I'd like Your Honor's review of your

19   calendar, as it's been a while since we've looked at it, to see

20   what you have open and when you want us in to do our case over

21   a couple-week period, which we had envisioned.

22           THE COURT:  Well, if it would be helpful, I can go

23   into chambers and take a second look at what the calendar

24   consists of.  But my best recollection is that the time that I

25   allocated to you remains allocated and available.

- 17 -

1          MR. SCHILLER:  Great.  Well, but we know what that

2     is, Judge, so we'll work on that basis.

3          THE COURT:  And, in fact, I particularly set aside the

4     time in August because it was open and connected time so you

5     would have sequential days.

6          MR. SCHILLER:  That's great.  Thank you.  And if we

7     have a question, we'll confirm it with your calendar clerk,

8     then, what we understand the dates are, when we intend to be

9     here --

10         THE COURT:  Okay.

11         MR. SCHILLER:  -- just so that you're comfortable with

12    that.

13         THE COURT:  And is there any revision in your own

14    estimate as to the number of trial days that you will need for

15    your case?

16         MR. SCHILLER:  No.  I think two weeks will be

17    sufficient for us.  And then there's the week of the experts

18    where they put theirs on, we put ours on.  We're confident, I

19    believe, collectively that that will be done in a week.  So if

20    we take advantage of that week of the 23rd of August, Judge,

21    and the first two days of the following week, the 30th and the

22    31st -- or I should say the second week all together, and then

23    bring in the experts, working around the Jewish Holidays, which

24    are the 9th and the 10th of September, I think the parties --

25    in the week of the 13th, Judge, I believe you had some

- 18 -

1    commitments, and we were --

2          THE COURT:  Well, I had some -- I had a desire to

3    participate in --

4          MR. SCHILLER:  Right.

5          THE COURT:  -- an event I'd been invited to, but it

6    was very optional.

7          MR. SCHILLER:  So I think we would be done -- the week

8    of the 20th through the 24th for experts, we would be done.

9          MR. GAFFEY:  I think experts may take a little longer

10   than that, Your Honor.  I don't recall us saying we could get

11   it all done in a week.  We can certainly try, but there are

12   just a number of them.  So I think a week may be a bit

13   optimistic.

14         MR. SCHILLER:  Well, then maybe we can start that days

15   that are available to you the week of the 13th, if that's the

16   case, if there are any.  I don't remember Your Honor's

17   specifics on that.

18         THE COURT:  Let me take a five-minute break anyway

19   just to double-check my calendar so that we can have a clear

20   understanding of what's going to be happening in August and

21   September.  And to the extent that there are witness

22   adjustments that are necessary, we can have you make them with

23   as much advance notice as possible.

24         MR. SCHILLER:  Thank you.

25         THE COURT:  So let's take a five-minute break and I'll

LEHMAN BROTHERS HOLDINGS INC., et al.

- 19 -

1    be back.

2          (Recess from 9:52 a.m. until 10:05 a.m.)

3          THE COURT:  Be seated, please.

4          Mr. Schiller, I'm glad you invited me to take another

5    look at my calendar, because I remembered having more time

6    available for this than I actually do.  So let me tell you what

7    days appear to be available.  And there are some breaks in the

8    consecutive days.  Starting with the week of August 23, I have

9    available for you the 23rd and the 24th; the afternoon of the

10   25th, starting at, say, 2 o'clock; and the 27th.  The week of

11   the --

12         MR. SCHILLER:  Thank you, Judge.

13         THE COURT:  The week of the 30th, I have available the

14   30th, the 31st, and Thursday the 2nd of September.  I am not

15   going to force anybody to participate in a trial day on the

16   Friday before Labor Day Weekend, including myself.

17         The following week is the week that includes Rosh

18   Hashanah, and I think it prudent for that to be simply a week

19   off, unless there's a strong desire to use certain days that

20   week.  One available day, if you wish to use it, would be the

21   10th.  Another available day would be the 7th.  So if you need

22   the time, I would suggest that we knock out the 8th and the 9th

23   and, in effect, reserve for possible use the 7th and the

24   10th --

25         MR. SCHILLER:  Yes, sir.

- 20 -

1          THE COURT:  -- based upon the availability of

2    witnesses and counsel.  I will be available on both of those

3    days, and I will reserve both those days.

4          MR. SCHILLER:  Thank you, Judge.

5          THE COURT:  And then the week of the 20th you have the

6    entire week:  20th, 21st, 22nd, 23rd and 24th.  The following

7    week, which is the week of the 27th, because of another

8    engagement on the 27th and the 28th, those dates are out.  But

9    the 29th and the 30th are available.  I will have to leave

10   early on the 30th because I have to go out of town that

11   afternoon.  And the 1st is not an available day.

12         October 4, that entire week is available:  4th, 5th,

13   6th, 7th and 8th.

14         MR. SCHILLER:  Thank you, Judge.

15         THE COURT:  And if necessary, the week of October

16   18th, I can reserve the 18th, 21st and 22nd.

17         MR. SCHILLER:  We shall work with the other parties to

18   try to conclude this work in September if we can, if we can

19   reach agreement on that.  We'll let you know as soon as we can.

20         THE COURT:  Okay.  And if you can't, the week of

21   October 4th is your cleanup week.

22         MR. SCHILLER:  Thank you very much, Judge.

23         MR. GAFFEY:  Your Honor, excuse me, just one quick

24   housekeeping.  I'm not sure in the book that I gave Your Honor

25   is this list cross-designating deposition exhibit numbers that

- 21 -

```
1    are referred to in the testimony, with the trial exhibit

2    numbers.

3              THE COURT:  Oh, that's a useful chart.

4              MR. GAFFEY:  Why don't I hand that up, if I can.

5              THE COURT:  Okay, thank you.

6              MR. GAFFEY:  Now, we can, if Your Honor would like,

7    put together and submit to the Court a binder of the exhibits

8    themselves, maybe in that same order, in the order in which

9    they're referred to.  It might make for ease of the Court's

10   reference if there is an exhibit referred to in the testimony.

11             THE COURT:  I think that would be a very useful tool

12   as well.

13             MR. GAFFEY:  Okay.  We'll take care of that as well,

14   then, Judge.

15             THE COURT:  Okay.

16             Is there anything more?

17             MR. GAFFEY:  Not from the debtor, Your Honor.

18             MR. SCHILLER:  No, Your Honor.

19             THE COURT:  Okay.  That does it, then, for not only

20   today but for this week.

21             MR. GAFFEY:  It does, Your Honor, unless we can get

22   back to you with witnesses for Friday.  But --

23             THE COURT:  But it sounds like that won't be

24   happening --

25             MR. GAFFEY:  I think it's unlikely, yes.
```

- 22 -

1          THE COURT:  -- because of the scheduling problems.

2          All right, so I'll see you next week, then.

3          MR. GAFFEY:  Thank you, Your Honor.

4          MR. SCHILLER:  Thank you, Your Honor.

5          THE COURT:  Okay, we're adjourned.

6      (Proceedings concluded at 10:10 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

- 23 -

1

2                        C E R T I F I C A T I O N

3

4    I, Clara Rubin, certify that the foregoing transcript is a true

5    and accurate record of the proceedings.

6    **Clara Rubin**    Digitally signed by Clara Rubin
                         DN: cn=Clara Rubin, c=US
7    _____Reason: I am the author of this document
                         Date: 2010.06.15 16:35:38 -04'00'

8    Clara Rubin

9    AAERT Certified Electronic Transcriber (CET**D-491)

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  June 15, 2010

17

18

19

20

21

22

23

24

25