UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
                                                      :
In re                                                 :
                                                      :
LEHMAN BROTHERS HOLDINGS,                              :
  INC., et al.,                                       :
                                                      :
                              Debtors.                :
                                                      :
------------------------------------------------------x

<u>Hearing Date and Time</u>:
**March 23, 2011, at 10:00 a.m.**

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

**OBJECTION OF THE UNITED STATES TRUSTEE
TO THE APPLICATION OF THE DEBTORS PURSUANT TO
SECTIONS 327(E) AND 328(A) OF THE BANKRUPTCY CODE
AND RULE 2014(A) OF THE FEDERAL RULES OF BANKRUPTCY
PROCEDURE FOR AUTHORIZATION TO EMPLOY AND RETAIN MILBANK,
TWEED, HADLEY & MCCLOY, LLP, AS SPECIAL COUNSEL TO THE
<u>DEBTORS IN CONNECTION WITH CERTAIN TAX-RELATED MATTERS</u>**

TO:    THE HONORABLE JAMES M. PECK,
         UNITED STATES BANKRUPTCY JUDGE:

Tracy Hope Davis, the United States Trustee for Region 2 (the "United States Trustee"), by and through her counsel, hereby submits this objection (the "Objection") to the application (the "New Milbank Application") of Lehman Brothers Holdings, Inc. ("LBHI") and its affiliated debtors (collectively, the "Debtors"), pursuant to Sections 327(e) and 328(a) of title 11, United States Code (the "Bankruptcy Code"), to employ and to retain Milbank, Tweed, Hadley & McCloy, LLP ("Milbank") as Special Counsel to the Debtors in connection with certain tax-related matters.  (ECF Dkt. No. 14811).  In support hereof, the United States Trustee respectfully states:

# I.  INTRODUCTION

The United States Trustee objects to the Debtors' retention of Milbank's TAARS® group as "Special Counsel" under Section 327(e) of the Bankruptcy Code for the following three (3) reasons:

1.  Section 327(e) of the Bankruptcy Code is limited to the retention of attorneys for special service purposes who previously represented the debtor and may not be extended to the retention of non-attorneys, including accountants and other professionals, who are a part of the Milbank TAARS® group that the Debtors seek to retain.

2.  The retention of Milbank as "Special Counsel" presents potential conflicts of interest in light of the fact that Milbank, as counsel to the Creditors' Committee, may represent interests adverse to the Debtors with respect to the tax matters for which they would be retained pursuant to this application.

3.  The Debtors have not met their burden of proof to establish that their retention of Milbank's TAARS® group is reasonable, and in the best interests of the estates, particularly in view of the fact that there are other firms that are available to provide the same or similar services.

For all of these reasons, the New Milbank Application should be denied.

# II.  FACTUAL BACKGROUND

## The Chapter 11 Cases

### *General Background*

1.  On September 15, 2008, and periodically thereafter (collectively, the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.  Prior to the Petition Date, Lehman Brothers, Inc. ("LBI"), was the fourth largest investment bank in the United States, and, for more than 150 years, had been a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.  Affidavit of Ian T.

Lowitt, Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District

of New York in Support of First-Day Motions and Applications, sworn to on September

14, 2008, at ¶ 5.  (ECF Dkt. No. 2).

3.  By Order dated September 17, 2008, the Debtors' cases are being

administered jointly.  (ECF Dkt. No. 86).

4.  On September 17, 2008, the United States Trustee appointed an Official

Committee of Unsecured Creditors (the "Creditors' Committee").  (ECF Dkt. No. 62).

The constitution of the Creditors' Committee has been amended subsequently from time

to time.  See ECF Dkt. Nos. 592, 6217, 7034.

5.  On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI.  A trustee

appointed under SIPA is administering LBI's estate.

6.  No trustee has been appointed in these cases.

*Sale to Barclays*

7.  Shortly following the Petition Date, the Debtors filed a motion to sell

substantially all of its assets to Barclays Capital Inc. ("Barclays").  (ECF Dkt. No. 60).

8.  By Order dated September 20, 2008 (the "Sale Order"), the Court

approved the sale of the Debtors' assets to Barclays.[1]  (ECF Dkt. No. 258).

---

[1] On February 22, 2011, the Court upheld a challenge to the sale when, among other
things, the Court denied a motion filed by LBHI, the Creditors' Committee and the
Trustee of LBI under SIPA pursuant to Rule 60(b) of the Federal Rules of Civil
Procedure seeking to modify the Sale Order.  (ECF Dkt. No. 14612).

*Appointment of Examiner*

9.      On January 16, 2009, the Court directed the appointment of an examiner

(the "Examiner") to, among other things, investigate (i) the causes for the Debtors'

business failure (ii) possible causes of action arising from the Debtors' financial

condition and business failure, (iii) whether there are any administrative or other

avoidable transfers and (iv) whether there are any claims arising from the sale to

Barclays.  (ECF Dkt. No. 2569).

10.      On January 19, 2009, the United States Trustee filed a notice appointing

Anton R. Valukas as the Examiner.  (ECF Dkt. No. 2571).  By Order dated January 20,

2009, the Court approved Mr. Valukas's appointment.  (ECF Dkt. No. 2583).

11.      On February 8, 2010, the Examiner filed under seal a report of his

investigation (the "Examiner Report"), which later was unsealed by Order of the Court

dated March 11, 2010.  (ECF Dkt. No. 7531).

*LAMCO*

12.      On March 15, 2010, the Debtors filed a motion (the "LAMCO Motion")

seeking authorization to enter into certain asset and management related agreements that

would enable the Debtors to organize new non-debtor entities (collectively, "LAMCO")

to provide management services to the Debtors and potentially to third parties.  LAMCO

Motion at ¶ 3.  (ECF Dkt. No. 7579).  In contemplating LAMCO, the Debtors developed

a team of approximately 455 individuals, spread across the Debtors' various practice

areas, to effectively manage and wind-down the Debtors' remaining long-term distressed

and illiquid assets that were not subject to foreign insolvency proceedings.  <u>Id.</u> at ¶ 2.

13.      By Order dated April 15, 2010, the Court approved the LAMCO Motion. (ECF Dkt. No. 8372).

**The Debtors' Retention of Tax and Litigation Professionals**

14.      As of the date hereof, the Court has approved the retention of over 30 professionals (the "Retained Professionals") in these cases.  In addition to the Retained Professionals, there are hundreds of professionals that provide services to the Debtors in the ordinary course of the Debtors' business.

15.      As of the date hereof, the Debtors have retained the services of no fewer than 5 major law firms, each of which offer tax and litigation services, including: Weil Gotshal & Manges, LLP ("Weil") (General Bankruptcy Counsel), Bingham LLP ("Bingham") (Special Tax Counsel), Curtis Mallet-Prevost, Colt & Mosle, LLP ("Curtis Mallet") (Conflicts Counsel), Jones Day, LLP ("Jones Day") (Special Litigation Counsel) and Simpson, Thacher & Bartlett ("STB") (Special Litigation Counsel).  See ECF Dkt. Nos. 1660, 4927, 1659, 2925 and 1658.

16.      In addition, the Debtors have retained no fewer than 5 professional firms that provide various tax consulting and advisory services, including Ernst & Young, LLP ("E&Y"), PriceWaterhouseCoopers, LLP ("PWC"), Deloitte Tax, LLP ("Deloitte"), The O'Neil Group, LLP ("O'Neil") and MMOR Consulting, Inc. ("MMOR").  See ECF Dkt. Nos. 2423, 4425, 4927, 7824 and 12204.

**The Creditors' Committee's Counsel**

17.      By Orders dated November 5, 2008, and November 21, 2008, the Court authorized the Creditors' Committee to retain Milbank as its counsel, pursuant to Section 327(a) of the Bankruptcy Code.  (ECF Dkt. Nos. 1404 and 1654).

**The New Milbank Application**

18.     By the New Milbank Application, the Debtors seek to retain Milbank, pursuant to Section 327(e) of the Bankruptcy Code as "Special Counsel" to assist the Debtors in the analysis and resolution of certain tax matters.  New Milbank Application at ¶ 9.  The Debtors seek to retain Milbank's "Tax Account and Analysis Recovery Services" ("TAARS®") program to review interest determinations made (or in the process of being made) by the Internal Revenue Services ("IRS") and by state and local taxing authorities for LBHI and certain of its current and former domestic subsidiaries (the "Group") with respect to the Group's 1997-2007 tax years.  Id.

19.     The New Milbank Application does not set forth the current and former domestic subsidiaries that are a part of the Group.  In addition, other than identifying Glenn Gerstell, a partner with Milbank, as a member of Milbank's TAARS® group, the New Milbank Application does not provide the identities and qualifications of the professionals who will serve as "Special Counsel" to the Debtors.  Rather, Mr. Gerstell, in an affidavit filed in support of the New Milbank Application, and sworn to on March 4, 2011 (the "Gerstell Affidavit), acknowledges that Milbank's TAARS® group is comprised of "lawyers and accountants."  Gerstell Aff. at ¶ 4.  Mr. Gerstell further represents that the "essential components" of the services rendered require "considerations of a legal nature," see id., however, the itemized services to be performed by Milbank's TAARS® group as set forth in the New Milbank Application at ¶ 9, and detailed in paragraph 20 below, indicate that the proposed services to be performed by the TAARS® group are largely financial advisory and accountancy.  In fact, according to the United State Patent Office and Trademark's ("USPTO") website, wherein Milbank

has registered its TAARS trademark, the description of the goods and services reads, "financial services, namely analysis of errors in federal and state taxes." A copy of the TAARS registration page from the USPTO's website is annexed hereto as **Exhibit A.** Based upon the discrepancies in the New Milbank Application and the Gerstell Affidavit as cited above, it appears that the Debtors' reference to Milbank as "Special Counsel" is not entirely accurate, and the application encompasses a broader scope of services than merely "legal counsel" by attorneys.

20.     By the New Milbank Application, the Debtors seek authorization to retain Milbank to provide certain tax-related services. In connection therewith, Milbank will, (a) with respect to (i) all federal taxes (including income, excise and employment-related taxes) and (ii) such state and local taxes that LBHI, on behalf of the Group, review and (b) with respect to all payments, deposits, credits, offsets, refunds, transfers, adjustments and accounts associated with any of the foregoing taxes:

   a.     Determine whether there are overcharges of interest and penalties (relating to taxes and/or interest);

   b.     Determine whether there are underallowances of interest on refunds, credits or offsets;

   c.     Determine whether there are credit balances or other account errors in respect of taxes, interest or penalties; and

   d.     Pursue administratively with the IRS or the appropriate state or local agency the corrections Milbank identifies with respect to items a through c above (as a refund or by means of credit, offset or abatement). In that regard, Milbank will set forth in writing the basis for each requested correction (collectively, the "Milbank TAARS®" Matters").

Id.

21.     In addition, the Debtors seek authorization to retain Milbank to provide litigation services. Specifically, the New Milbank Application provides:

7

Litigation.  If a requested correction is denied or if it is reduced or
eliminated by an adjustment made by IRS or the appropriate state or local
agency or if it is necessary to protect against the running of a statute of
limitations, Milbank may request the relevant parties for authorization to
litigate.  If such authorization is granted, Milbank will be entitled to
conduct such litigation at no expense to the party other than the Payment
attributable to the correction that is the subject of the litigation.  (The
authorization or conduct of such litigation does not relieve any party from
liability for other Payments attributable to corrections pursuant to this
engagement that are not the subject of litigation.  If the party does not
grant such authorization and pursues the matter on its own or with other
counsel, Milbank will nonetheless be entitled to the Payment.  However, if
Milbank does not request such authorization, and the party pursues the
matter on its own or with other counsel (if permitted hereby), Milbank will
not be entitled to the Payment.

New Milbank Application at ¶ 29(b).

22.    The Debtors propose that Milbank be paid according to a contingent fee

arrangement under Section 328(a) of the Bankruptcy Code.  New Milbank Application at

¶ 15.  Although the New Milbank Application does not provide information concerning

the expected or anticipated recoveries to the Debtors' estates, and the anticipated

aggregate fees that the Debtors believe they will be required to pay Milbank under this

arrangement, it appears that the fees may be substantial.  For example, pursuant to the fee

schedule, Milbank will earn no less than $3.75 million for each "correction" with respect

to federal taxes for the first $25 million of corrections.  New Milbank Application at ¶

26(a).  Notably, it appears that Debtors must also pay fees to Milbank even if corrections

are made by the IRS or other taxing agency through their own discovery, and not through

the efforts of Milbank.  Specifically, the proposed fee schedule provides:

… if, in the course of reviewing a correction submitted by Milbank, the
IRS or the appropriate state or local agency makes favorable additional
corrections, ***whether or not related to the correction submitted by
Milbank*** (collectively, "Additional Corrections"), Milbank will be entitled
to Payment with respect to the Additional Corrections.  Any Payment with
respect to the miscellaneous recoveries described in this paragraph will be

in addition to any other Payment under this agreement.  Also, Milbank
will be entitled to the Payment with respect to any credit balances that
Milbank identifies during the Term unless previously advised by a party
that it is aware of such balances.  At present, LBHI is not aware of any
credit balances, except as set forth on Schedule A to the Engagement
Letter.

New Milbank Application at ¶ 29(c).  (emphasis added).

23.     The Debtors state that this compensation scheme represents market rate

and is fair and reasonable under Section 328(a) of the Bankruptcy Code.  New Milbank

Application at ¶ 28.  The Debtors have not, however, submitted any declaration or other

evidence, other than the Gerstell Affidavit, supporting their assertion that these fees are

market rate.

24.     In addition, the Debtors do not set forth any information in the New

Milbank Application concerning the diligence in which they engaged or that they

considered any other firms, including any of the already retained 5 accounting firms

identified above at paragraph 16, to perform these services.

25.     Notwithstanding, the Debtors' request that the Court "pre-approve" these

fees at this time, and shield them from review by any party, including the Debtors, the

United States Trustee and the Creditors' Committee.  Id. at ¶ 29.  Although Milbank

apparently has agreed to maintain time records in one-quarter of an hour increments,[2] the

---

[2] The Debtors state in the New Milbank Application that, "at the request of the U.S.
Trustee, Milbank has agreed to maintain time records for services performed in
increments of one-quarter of an hour."  New Milbank Application at ¶ 29.  This request,
however, was not made by the United States Trustee.  Although the United States
Trustee, through her counsel, engaged in informal discussions with the Debtors' counsel,
Mr. Gerstell and others by way of telephonic conference convened on February 1, 2011,
concerning the Debtors' proposed retention of Milbank's TAARS® group, these
discussions did not include any agreement by the United States Trustee to modify the
requirement in the United States Trustee Guidelines that time records be maintained in
one-tenths of an hour.  See United States Trustee Guidelines, b(4)(v).

Debtors request that the Court prevent the use of these records in connection with any party subsequently seeking to challenge the reasonableness of these fees.  Id.

26.     Further, the New Milbank Application is silent as to whether Milbank will file these time records with the Court in connection with any application that Milbank files seeking awards of compensation.  In light of the Debtors' representations that the information contained in the time records "is highly confidential, proprietary and market sensitive," it appears that Milbank does not intend to file the time records with the Court. Id. at ¶ 29.

27.     In addition, the New Milbank Application provides that any Payment to Milbank will be paid directly from recoveries (the amount of which is not susceptible to reasonable estimation by Milbank or the Debtors).  Id. at ¶ 30.

28.     In support of the New Milbank Application, the Debtors assert that Milbank is "uniquely able" to provide the tax-related services contemplated by the engagement.  Id. at ¶ 16.  The Debtors state that "no other professional retained by the Debtors (including ordinary course professionals) offers the services that Milbank proposes to provide."  Id.  However, at paragraph 4, footnote 4 of the Gerstell Affidavit, Mr. Gerstell acknowledges that he is "aware of a few accounting firms that provide services similar to Milbank's TAARS® program …".  Gerstell Aff. at ¶ 4, n.4.  Mr. Gerstell further states, "… however, Milbank is the only firm that provides the full scope of tax-related services encompassed in Milbank's TAARS® program, including the litigation of claims arising from such services."  Id.

29.     As stated above at paragraph 16, the Debtors already employ three of the

"Big Four" accounting firms,[3] including, Deloitte, PWC and E&Y.  A review of

Deloitte's website reveals that it may provide the same or similar services as TAARS®.

See, e.g., www.deloitte.com.  A copy of a page from Deloitte's website that advertises its

tax controversy services, specifically, "IRS Account Analysis and Processing," is

annexed hereto as **Exhibit B.**

30.     In an effort to address possible concerns relating to conflicts of interest

presented by Milbank's concurrent representation of the Creditors' Committee, the

Debtors state that because any recovery obtained by Milbank in connection with this

engagement will benefit the Debtors' unsecured creditors, the Debtors and the unsecured

creditors share a common interest in having these services performed.  New Milbank

Application at ¶¶ 10 and 17.  In addition, the Debtors claim that the nature of the work to

be performed and the safeguards implemented Milbank's TAARS® professionals ensure

that no conflict exists or will arise in connection with this retention.  Id.

31.     The Debtors assert that Milbank's concurrent representation of the

Creditors' Committee is merely a "superficial issue."  New Milbank Application at ¶ 17.

They state that Milbank's retention as counsel to the Creditors' Committee "is completely

unrelated to the matters with respect to which the Debtors are seeking to engage Milbank

here," which the Debtors characterize as "technical and non-adversarial" and "unlikely to

lead to any material legal conflicts."  New Milbank Application at ¶ 20.

---

[3] The "Big Four" refers to the largest U.S. accounting firms measured by revenue.
Dictionary of Finance and Investment Terms 62 (7th ed. 2006).  In alphabetical order they
are PricewaterhouseCoopers, Deloitte & Touche, Ernst & Young and KPMG
International.  Id.

32.    In addition, the Debtors represent that they have waived any objections they may have to Milbank's continuing to act as counsel to the Creditors' Committee and will not seek to disqualify Milbank as counsel to the Creditors' Committee on other matters, including tax matters, nor to assert any impropriety on Milbank's part, on account of Milbank's concurrent employment by the Creditors' Committee and the Debtors.  Id.  Similarly, the Debtors and Mr. Gerstell represent that the Creditors' Committee has waived any objections it may have to Milbank's representation of the Debtors in these cases and for the purposes described in the New Milbank Application and in the Engagement Letter and has agreed not to seek to disqualify Milbank as special counsel to the Debtors nor to assert any impropriety on Milbank's part, on account of Milbank's employment by the Debtors.  See Gerstell Aff. at ¶ 9.  Neither the New Milbank Application nor the Gerstell Affidavit include copies of any document signed by the Creditors' Committee evidencing this waiver.

33.    The Debtors also submit that: (a) Milbank will impose strict ethical walls between Milbank's TAARS® group and the Milbank attorneys representing the Creditors' Committee and (b) that there will be no duplication of services if the New Milbank Application is approved.

34.    As set forth in footnote 2 above, the United States Trustee, through her counsel, together with the Debtors' counsel, Mr. Gerstell and others, participated in a teleconference on February 1, 2011, to discuss the Debtors' proposed retention of Milbank's TAARS® group.  Notwithstanding those discussions, the New Milbank Application does not appear to have been modified to address certain of the concerns

raised by the United States Trustee, which are articulated in the arguments set forth in

this Objection.

## III.  OBJECTION

**A.      The Debtors May Not Retain Milbank's TAARS Group as "Special Counsel"
Pursuant to Section 327(e) of the Bankruptcy Code Because the TAARS®
<u>Group Is Not Exclusively Attorneys.</u>**

35.      Section 327(e) of the Bankruptcy Code provides:

The trustee,[4] with the court's approval, may employ, for a specified special
purpose, other than to represent the trustee in conducting the case, an attorney that
has represented the debtor, if in the best interest of the estate, and if such attorney
does not represent or hold any interest adverse to the debtor or to the estate with
respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e).

36.      The exception for the retention of special purpose services applies

exclusively to attorneys.  <u>United States Trustee v. Andover Togs, Inc.</u> (<u>In re Andover

Togs, Inc.</u>), Nos. 96 Civ. 7601(DAB), 97 Civ. 6710(DAB), 2001 WL 262605, *4

(S.D.N.Y. Mar. 15, 2001); <u>but</u> <u>see</u>, <u>In re South Shore Golf Club Holding Co.</u>, 182 B.R.

94, 95 (Bankr. W.D.N.Y. 1995) (suggesting that there may be circumstances in which an

accountant may be appointed under Section 327(e) of the Bankruptcy Code)).  The plain

language of Section 327(e) dictates an explicit limitation, which may not be expanded by

a bankruptcy court's equitable powers.  <u>See</u> <u>In re Federated Dep't Stores, Inc.</u>, 44 F.3d

1310, 1318 (6th Cir. 1995); <u>United States Trustee v. Price Waterhouse</u> (<u>In re Sharon Steel

Corp.</u>), 19 F.3d 138, 142 (3d Cir. 1994); <u>Andover Togs</u>, <u>supra</u>, 2001 WL 262605, *4, <u>In

---

[4] Although Section 327 of the Bankruptcy Code speaks only in terms of a trustee, a debtor
in possession in a chapter 11 case has all of the rights and power of a trustee.  <u>See</u> 11
U.S.C. § 1107.

13

re Johns-Manville Corp., 26 B.R. 405, 414 (Bankr. S.D.N.Y. 1983), aff'd, 40 B.R. 219

(S.D.N.Y. 1984).

37.    Indeed, the United States Supreme Court in Lamie v. United States

Trustee, made clear that "when the statute's language is plain, the sole function of the

courts - at least where the disposition required by the text is not absurd - is to enforce it

according to its terms." Lamie, 540 U.S. 526, 534 (2004) (citing Hartford Underwriters

Ins. Co. v. Union Planters Bank, N.A., 530 U.S.1, 6 (2000) (internal quotation marks

omitted) (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989), (in

turn quoting Caminetti v. United States, 242 U.S. 470 (1917)).

38.    Although Section 105(a) of the Bankruptcy Code does provide the

bankruptcy court with some latitude in interpreting the Bankruptcy Code, it cannot be

used to ignore specific and unambiguous provisions of the statute.  Andover Togs, 2001

WL 262605, *4 (citing Johns-Manville, 26 B.R. at 414 (noting that "Section 105 of the

Bankruptcy Code does not have a life of its own."")).

39.    In reversing the bankruptcy court, which had permitted the debtor's

retention of an accounting firm for a specified purpose under Section 327(e) of the

Bankruptcy Code, the District Court in Andover Togs held that Section 327(e) of the

Bankruptcy Code does not contemplate the appointment of an accountant for specified

special purposes.  2001 WL 262605, *4.  Relying upon the holdings of the Second Circuit

in In re Palm Coast, 101 F.3d 253 (2d Cir. 1996) and in Bank Brussels Lambert v. Coan

(In re AroChem), 176 F.3d 610 (2d Cir. 1999), the court in Andover Togs opined that,

given these holdings and the clear prohibition against retention of interested professionals

under Section 327(a) of the Bankruptcy Code, the court could not extend the reach of

Section 327(e) of the Bankruptcy Code beyond its express exception for attorneys.  Id.

(citing In re Sharon Steel Corp., 19 F.3d 138, 142 (3d Cir. 1994) (finding the language of

Section 327(a) of the Bankruptcy Code to be unambiguous and rejecting a "flexible

approach" in determining whether a party who is not disinterested may be retained)).

40.    By the Debtors' own application, as disclosed in the Gerstell Affidavit, the

TAARS® group, that the Debtors seek to retain under Section 327(e) of the Bankruptcy

Code, is comprised of both attorneys and accountants who will perform both legal and

financial services as set forth in the New Milbank Application.  This appears to be

consistent with Milbank's registration with the USPTO of the TAARS trademark, which

provides that TAARS trademark relates to "financial services."  See Exhibit A.  Thus, it

is fair to say that the title "Special Counsel" actually is a misnomer, since accountants are

not legal counsel.  Further, as noted above at paragraph 34, the United States Trustee,

through her counsel, informed Debtors' counsel and Mr. Gerstell of the United States

Trustee's concerns with this retention.  Nonetheless, this issue does not appear to be

addressed in the New Milbank Application.

41.    The Debtors and Milbank are aware that Milbank's TAARS® group

cannot be retained under Section 327(a) of the Bankruptcy Code, because Milbank, as

counsel to the Creditors' Committee, one of the largest stakeholders in these cases,

cannot satisfy the disinterestedness standards thereunder if they concurrently represent

the Debtors.  Notwithstanding the Debtors' argument that Milbank is highly qualified to

perform the tax-related services for which the Debtors seek to retain Milbank in these

cases, this Court, like the District Court in Andover Togs, is constrained by the rulings of

the Second Circuit in Palm Coast and Arochem.  The Court, therefore, should refrain

from extending the reach of Section 327(e) beyond its express exception for attorneys.

Andover Togs, 2001 WL 262605, *4.

42.     Further, it does not appear that the Debtors or their estates will be prejudiced by the Court's denial of the New Milbank Application, as there are apparently other firms that provide the same or similar services.  See Exhibit B.  Indeed, Mr. Gerstell acknowledges his own knowledge of a few accounting firms that provide these services. Gerstell Aff. at ¶ 4, n.4.  Upon information and belief, at least one of the professionals already retained by the Debtors in these cases, and perhaps more, provide the same services.  Moreover, although perhaps not as centralized as the services that the TAARS®  group may provide, the Debtors already have retained no fewer than five major law firms (including Weil, Jones Day, STB, Bingham and Curtis-Mallet) pursuant to Section 327(a) of the Bankruptcy Code that have extensive litigation departments.  It appears likely that tax litigation will fall within the expertise of at least one of these firms, if not all.  For all of these reasons, the New Milbank Application should be denied.

**B.      The Debtors May Not Retain Milbank's TAARS® Group Because Milbank Represents Interests Adverse with Respect to the Tax-Related Matters For Which They Would Be Retained.**

43.     Even if this Court were to extend Section 327(e) of the Bankruptcy Code to the Debtors' proposed retention of Milbank's TAARS® group, and extend the statute to non-attorneys, the statute requires that the attorneys to be retained may not "represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed."  11 U.S.C. § 327(e).  The Debtors assert that Milbank's concurrent role as counsel to the Creditors' Committee does not violate this proscription.  Specifically, the Debtors claim that Milbank's retention as Creditors'

Committee counsel is "superficial" and "completely unrelated to the matters with respect to which the Debtors are seeking to engage Milbank here – the 'technical and non-adversarial nature' of which is unlikely to lead to any material legal conflicts."  New Milbank Application at ¶ 20.  Although the Debtors do not elaborate with respect to the meaning that they ascribe to "material legal conflicts," their characterization of the proposed services as "technical and non-adversarial" may not be accurate.  Indeed, the statement that the services are "non-adversarial" does not support, and actually runs counter to: (i) the Debtors request to retain Milbank to perform tax litigation services, and (ii) the Debtors argument that Milbank is so "uniquely able" to perform these services because Milbank combines its tax expertise (both legal and non-legal) with its litigation expertise.

44.    It also is not clear that the Debtors and the Creditors' Committee necessarily always will have a "common interest" or that their interests are "identical." The Debtors cite the Second Circuit's decision in AroChem for the proposition that where the interest of special counsel and the estate are "identical," with respect to the matter for which special counsel is retained, there is no conflict of interest.  New Milbank Application at ¶ 14.  Although it may be true that any recoveries to the estates ultimately will benefit the unsecured creditor body as well as the Debtors, in reality, there may be circumstances where the Debtors and the Creditors' Committee may take adverse positions regarding these recoveries and efforts to obtain and/or settle them.  Specifically, during the course of Milbank's proposed representation of the Debtors, the Creditors' Committee may disagree with Milbank's approach with respect to its dealings with the IRS or other taxing authorities regarding settlements, litigation and other issues.  Thus, in

those instances, Milbank will be, in essence, "wearing two hats" simultaneously and,

therefore, unable to divide its loyalties.  Certainly, neither the Debtors nor Milbank make

any representations that they guarantee no such conflicts.

45.    The Bankruptcy Code does not define what is meant by "hold or represent

an adverse interest."  The Second Circuit has defined this phrase to mean:

> (1) to possess or assert any economic interest that would
> tend to lessen the value of the bankruptcy estate or that
> would create either an actual or potential dispute in which
> the estate is a rival claimant; or (2) to possess a
> predisposition under circumstances that render such a bias
> against the estate.

AroChem, 176 F.3d at 623 (quoting In re Roberts, 46 B.R. 815, 827 (Bankr. D. Utah

1985), aff'd in part and rev'd on other grounds, 75 B.R. 402 (D. Utah 1987)).  Any

disqualifying conflict of interest must be either "actual or reasonably probable" and not

"merely theoretical, and its occurrence … merely speculative."  Coan v. Hutter (In re

Hutter), 215 B.R. 308, 313 (Bankr. D. Conn. 1997) (quoting In re AroChem Corp., 181

B.R. 693, 700 (Bankr. D. Conn. 1995)).  However,

> [r]ather than worry about the potential/actual dichotomy, it
> is more productive to ask whether a professional has either
> a meaningful incentive to act contrary to the best interest of
> the estate … - an incentive sufficient to place those parties
> at more than acceptable risk – or the reasonable perception
> of one … In other words, if it is plausible that the
> representation of another interest may cause the trustee's
> attorneys to act differently than they would without the
> representation, then they have a conflict and an interest
> adverse to the estate.

Hutter, 215 B.R. at 313 (quoting AroChem, 181 B.R. at 700.  (citations and internal

quotation marks omitted); see also, In re Granite Partners, 219 B.R. 22, 33 (Bankr.

S.D.N.Y. 1998) (The adverse interest test is objective and includes "any interest or

relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules."); In re Angelika Films 57th, Inc., 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) ("The determination of adverse interest is objective and is concerned with the appearance of impropriety.").

46.    Courts determine whether an adverse interest exists on a case-by-case basis, examining the specific facts in a case.  AroChem, 176 F.3d at 623.  Courts, however, must take the requirements of Section 327 of the Bankruptcy Code seriously, as they ensure that a professional fulfills his duties in accordance with his fiduciary duties to the estate.  In re Leslie Fay Cos., 175 B.R. at  532 ("The requirements of Section 327 of the Bankruptcy Code cannot be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities.'") (quoting Rome v. Braunstein, 19 F.3rd 54, 58 (1st Cir. 1994)). Moreover, courts lack the power to authorize the "employment of a professional who has a conflict of interest."  In re Mercury, 280 B.R 35, 55 (Bankr. S.D.N.Y. 2002).

47.    Applying the above law to the facts of these cases leads to the conclusion that, even though Section 327(e) limits the conflict inquiry to the scope of the Debtors' proposed retention of Milbank's TAARS® program, the potential conflicts identified above solely with respect to these tax matters may cause Milbank, in its role as Debtors' professionals, to act differently than they would without their concurrent representation of the Creditors' Committee.  Thus, Milbank has a conflict and an interest adverse to the estates.

48.    Further, apart from the Creditors' Committee, Milbank has its own interests with which it will be concerned that may militate against its pursuit of certain corrections or litigation.  For example, Milbank may determine that the pursuit of a correction or other litigation would cost too much to the firm to expend these resources with too little being paid to the firm in fees.  In that same circumstance, however, it may be in the best interest of the Debtors and or the Creditors' Committee for their counsel to pursue the correction or litigation.  Thus, Milbank's self-interest would be adverse to that of its clients.  Indeed, an important consideration here should be that, under the facts and circumstances of these cases and given that other professionals are available to perform the services that Milbank's TAARS® group may perform, it does not appear necessary or reasonable for the Debtors to engage Milbank and assume the risk that any settlement may be tainted or subsequently challenged as a result of these competing interests.  See Granite Partners, 219 B.R. at 33 (an adverse interest is present where any interest or relationship, however slight, would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules).

49.    In addition, Mr. Gerstell represents in his affidavit that "the Creditors' Committee has waived any objections it may have to Milbank's representation of the Debtors in these cases and for the purposes described in the Application and in the Engagement Letter and has agreed not to seek to disqualify Milbank as special counsel to the Debtors nor to assert any impropriety on Milbank's part, on account of Milbank's employment by the Debtors."  Gerstell Aff. at ¶ 9.  Mr. Gerstell does not disclose, however, (i) whether the Creditors' Committee signed a written waiver, (ii) the genesis of his "personal knowledge" of this waiver (presumably Mr. Gerstell has had no

involvement representing the Creditors' Committee since Milbank is instituting "strict

ethical walls") or (iii) who counseled the Creditors' Committee to give the waiver.  The

Creditors' Committee should have had the benefit of independent counsel (not Milbank)

to determine whether or not to waive these rights.  See, e.g., In re Vebeliunas, 231

B.R.181, 193 (Bankr. S.D.N.Y. 1999) ("The bottom line concern is that counsel's

independent judgment should not be compromised in any way.")

50.     Moreover, the Debtors cite no authority for the proposition that they or the

Creditors' Committee may, in fact, waive disabling conflicts of interest where a retention

is sought pursuant to Section 327(e) of the Bankruptcy Code.  The law, at least in respect

of retentions under Section 327(a) of the Bankruptcy Code, clearly is to the contrary.

See, e.g., In re JMK Constr. Group, Ltd., 441 B.R. 222, 237 (Bankr. S.D.N.Y. 2010)

(courts have recognized that conflicts waivers are not effective for purposes of satisfying

the "adverse interest" requirement of Section 327(a) of the Bankruptcy Code) (additional

citations omitted).  For all of these reasons, the Debtors cannot satisfy the requirements of

Section 327(e) of the Bankruptcy Code and the New Milbank Application should be

denied.

**C.     The Debtors Have Not Met Their Burden of Proof to Show That The
       Retention of Milbank is in the Best Interests of the Estates.**

51.     By the New Milbank Application, the Debtors propose to retain Milbank

pursuant to Section 328(a) of the Bankruptcy Code on a contingent fee arrangement.

Pursuant to Section 328(a) of the Bankruptcy Code, a contingent fee arrangement is

permissible so long as the compensation is based upon "reasonable terms and conditions

of employment."  11 U.S.C. § 328(a).  The Debtors have the burden of proof to show that

the terms and conditions of the Milbank retention, including the imposition of Section

328(a), are in the best interests of the estates.  See Nischwitz v. Miskovic (In re Airspect Air, Inc.), 385 F.3d 915, 921 (6th Cir. 2004) (quoting Zolfo, Cooper & Co v. Sunbeam-Oster Co., 50 F.3d 253, 262 (3d Cir. 1995)).  To satisfy this burden, the Debtors must provide specific evidence to establish that "the terms and conditions are in the best interest of the estate."  In re Gillett Holdings, Inc., 137 B.R. 452, 455 (Bankr. D. Colo. 1991).  A professional's requested invocation of Section 328(a) neither is  mandatory nor automatic, regardless of the proposed compensation scheme.

52.    Here, the Debtors assert that the retention of Milbank is in the best interests of the estates.  See New Milbank Application at ¶¶ 16-18.  The Debtors have not, however, submitted any affidavits or other evidence, or provided any detailed information concerning the diligence in which they engaged to select Milbank.  The Debtors also have failed to submit any evidence that the contingent fee arrangement "market rate."  See New Milbank Application at ¶ 28.  In addition, the Debtors do not provide any basis for paying Milbank fees when "corrections" are unrelated to Milbank's services, as set forth above at paragraph 22.

53.    Moreover, the Debtors do not disclose (i) what other, if any, firms the Debtors contacted for this engagement, (ii) whether the Debtors discussed the proposed services with any of the 5 major law firms or 5 tax advisors identified above, some of whom appear to provide the same services, (iii) the extent of the negotiations with Milbank and any other party concerning this proposed retention and (iv) the estimated recoveries to be realized by the estates and the estimated fees to be paid.  For all of these reasons, the Debtors have failed to meet their burden to show that the proposed retention Milbank's attorneys and accountants is reasonable or in the best interests of the Debtors'

estates and, therefore, should be denied.  See Airspect, 385 F.3d at 921 ("burden should
rest on the applicant to ensure that the court notes explicitly the terms and conditions if
the applicant expects them to be established at that early point.").

**D.      The Court Should Require That Milbank Submit its Time Records**.

54.      By the New Milbank Application, the Debtors propose that Milbank be
excused from maintaining time records in accordance with the United States Trustee
Guidelines, and appear to propose that Milbank be excused from filing the time records
with the Court.  New Milbank Application at ¶ 29.  In addition, the Debtors request that
the Court "pre-approve" its fees and that its fees not be subject to challenge on the
grounds of reasonableness, including based upon the time records submitted.  Id.  The
Debtors' request is based upon its contention that because Milbank will be paid on a
contingent fee arrangement, pre-approved by the Court, time records will not be an
adequate measure of its performance.  New Milbank Application at ¶ 29.  The Debtors
further state that they are advised by Milbank that the information that will be contained
in the time records is "highly confidential, proprietary and market sensitive."  Id.

55.      As is the case in most retentions in this District where a professional is
retained pursuant to Section 328(a) of the Bankruptcy Code, a reasonableness review
under Section 330 of the Bankruptcy Code is commonly reserved for the United States
Trustee.  See, e.g., this Court's Order dated December 17, 2008, authorizing the Debtors'
retention of Lazard Freres & Co., LLC, pursuant to Sections 328(a) and 1103 of the
Bankruptcy Code, at 3.  (ECF Dkt. No. 2275).  The United States Trustee strongly
opposes the Debtor's request that it not be afforded a reasonableness review based upon
submission of time records.  The waiver of the requirement to maintain time records

undermines the goal of transparency in the fee review process.  Further, if Milbank

wishes to preserve confidential or proprietary information, the Court's General Order M-

389 provides the specific mechanism to deal with confidentiality requests.  <u>See</u> General

Order M-389, Amended Guidelines for Fees and Disbursements for Professionals in

Southern District of New York, dated November 25, 2009 (the "Amended Guidelines"),

B.

  56.  Moreover, Section 330 of the Bankruptcy Code "instructs the court to look

at **...** the time spent on such services," among other factors.  <u>In re Citation Corp.</u>, 493 F.3d

1313, 1319 (11th Cir. 2007) (emphasis added); 11 U.S.C. § 330(a)(3); <u>see</u> <u>also</u>, Amended

Guidelines, B; United States Trustee Guidelines, b(4).  Thus, without Milbank's time

records, there simply is no mechanism with which to determine whether the fees at issue

are reasonable.  <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 441(1983) (Burger, Chief Justice,

concurring) ("[T]he party who seeks payment must keep records in sufficient detail that a

neutral judge can make a fair evaluation of the time expended, the nature and need for the

service, and the reasonable fees to be allowed.").  Accordingly, Milbank should be

required to submit time records that are in compliance with this Court's Amended

Guidelines and the United States Trustee Guidelines.

## VI.  CONCLUSION

WHEREFORE, the United States Trustee respectfully submits that the Court (i)

sustain the U.S. Trustee's objection, (ii) deny the New Milbank Application, and (iii)

grant such other relief as is just.

Dated: New York, New York
       March 18, 2011                          Respectfully submitted,

                                               TRACY HOPE DAVIS
                                               UNITED STATES TRUSTEE

                                               By  */s/ Andrea B. Schwartz*
                                                   Andrea B. Schwartz, Trial Attorney
                                                   33 Whitehall Street, 21st Floor
                                                   New York, New York 10004
                                                   Tel. No. (212) 510-0500
                                                   Fax No. (212) 668-2255