ANDERSON KILL & OLICK, P.C.
Robert M. Horkovich
Todd E. Duffy
Dennis J. Nolan
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 278-1000
Fax: (212) 278-1733
*Attorneys for Essex Equity Holdings USA, LLC*

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al.<br><br>Debtors. | Case No. 08-13555 (JMP)<br><br>Jointly Administered |

## OBJECTION OF CREDITOR ESSEX EQUITY HOLDINGS USA, LLC TO DEBTORS' DISCLOSURE STATEMENT FOR FIRST AMENDED JOINT CHAPTER 11 PLAN OF LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE

Essex Equity Holdings USA, LLC ("Essex"), by and through its counsel, Anderson Kill & Olick, P.C., respectfully submits this objection (the "Objection"), pursuant to section 1125 of chapter 11, title 11 of the United States Code (§§ 101 – 1552) (the "Bankruptcy Code") to the adequacy of the Debtors' Disclosure Statement for the First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code, dated January 25, 2011 (the "Disclosure Statement"). In support of its Objection, Essex states as follows:

## INTRODUCTION

1. In an abundance of caution, Essex is filing this protective Objection as it is unclear to Essex whether the proposed Amended Plan (defined below) and Disclosure Statement would or could affect Essex's claim against Lehman Brothers, Inc. ("LBI") and certain of its former directors and officers when LBI is not a party to this Amended Plan or Disclosure Statement. Essex suffered substantial losses due to the wrongful acts of LBI and certain of its former officers and directors.[1]

2. It is also unclear to Essex whether a plan and disclosure statement such as the Amended Plan and Disclosure Statement could limit Essex's ability to recover from the proceeds of the available directors' and officers' insurance policies (and potentially from other liability insurance policies which cover former officers, directors and employees of LBI) when the Debtors have repeatedly asserted that the proceeds of the directors and officers liability policies are not property of the Debtors' estate. Essex agrees with the Debtor's assertion that the insurance proceeds are not property of the Debtors' estate. However, in an abundance of caution, Essex asserts this protective Objection to the proposed Amended Plan and Disclosure Statement.

3. The Debtors' failure to provide adequate information regarding the myriad pending arbitrations and other legal proceedings against the Debtors, non-Debtor affiliates and their respective directors and officers ("D&O's") is a fatal error for the proposed Disclosure Statement and Amended Plan. The Amended Plan and Disclosure Statement are so vague, ambiguous and incomplete in addressing their effect, if any, on

---

[1] As a cautionary measure, Essex previously filed with the Court on September 22, 2009, a Proof of Claim for its damages suffered as a result of the wrongful acts of LBH subsidiary, LBI and certain of LBI's officers and directors. Essex estimated the amount of its claim at $1,198,776,791.90.

NYDOCS1-963928.2                                2

the claims of Essex that it is virtually impossible to determine the scope and potential bearing they would have in respect of Essex's legal rights and interests.

4. In addition, it is entirely unclear whether the Debtors are attempting through the plan to enjoin proceedings against non-debtors and LBI – a debtor in its own right, but not in the instant case. If the Debtors are attempting to enjoin proceedings against non-debtors in this Court, such as LBI, such attempts are improper and make the proposed plan facially unconfirmable. While the Amended Plan and Disclosure Statement nominally call the release an "injunction", the injunction sought appears to potentially function as a release of LBI and its directors, officers and employees, notwithstanding the fact that they are not parties to the Amended Plan or Disclosure Statement. Thus, the injunction on its face appears to be nothing more than an overreaching release of non-debtors in violation of *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136 (2d Cir. 2005) (holding that nondebtor releases are available only when "unique" or "unusual circumstances [that] render the release terms important to success of the plan" exist).

5. Moreover, even if LBI was a party to the Amended Plan and Disclosure Statement – which it is not - the Disclosure Statement and Amended Plan contain no information by which Essex or any other similarly situated individual or entity can determine whether unique or unusual circumstances exist to support the releases sought. Nor is there any information regarding any material contribution from the LBI officers and directors in consideration of these releases.

6. The Amended Plan also violates section 1129(a)(7) of the Bankruptcy Code because in preparing its chapter 7 liquidation analysis, the Amended Plan does not

give any consideration to the potential impact on the claims against the released non-debtor third-parties on the Debtors' obligations. *See In re Quigley Co., Inc.*, 437 B.R. 102 (Bankr. S.D.N.Y. 2010) (holding that a plan does not satisfy s 1129(a)(7)'s "best interest of creditors" test when it failed to consider effect of third-party releases in liquidation analysis and should not be confirmed).

## BACKGROUND

7.      In July 2007, Maher Terminals Holdings Corp. ("MTHC"), the predecessor to Essex, which was and continues to be owned by M. Brian Maher and Basil Maher, sold the Maher family business, which specialized in the operation of marine terminals. In July 2007, shortly after the sale, MTHC wired some $600 million in proceeds from the sale to LBI, entrusting LBI with the safe, conservative investment of those proceeds. However, LBI wrongfully invested Essex's money in ways that differed radically from the explicit instructions of Essex. In particular, LBI invested millions of dollars in complex, high-risk structured products and private placements. The LBI Bankruptcy estate is being administered separately from the LBH Bankruptcy estate.

8.      In January, 2008, Essex commenced an arbitration proceeding under the auspices of the Financial Industry Regulatory Authority ("FINRA") against LBI and various other parties including the LBI officers and directors (the "Arbitration") seeking in excess of $286 million, for, among other claims, failure to supervise, conversion and unauthorized trading. The Arbitration is one of many legal proceedings pending against LBI and the Debtors.

9.      On September 19, 2008 (the "LBI Commencement Date"), a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI (the "LBI Bankruptcy"). A trustee appointed under SIPA (the "SIPC

Trustee") is administering LBI's estate. As a result of the LBI Bankruptcy, the Arbitration was stayed as to LBI.

10. On September 15, 2008 (the "LBH Commencement Date"), Lehman Brothers Holdings, Inc. ("LBH") and many of its affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "LBH Bankruptcy"). The LBH Bankruptcy was consolidated with the bankruptcy cases of certain of its subsidiaries for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

11. LBH filed its initial plan of reorganization in November 2010. That plan was amended on January 25, 2011 (the "Amended Plan"). On December 15, 2010, an Ad Hoc Group of Lehman Brothers creditors (the "Ad Hoc Committee") filed its competing Amended Plan and Disclosure Statement with the Bankruptcy Court. Each of the plans was filed on behalf of LBH and its affiliated chapter 11 Debtors, and each contains injunctive relief for D&O's of LBH and those named affiliated Debtors, but apparently not for directors and officers of LBI, a wholly-owned direct subsidiary of LBH.

12. Pursuant to their advancement and indemnification obligations expressed in their by-laws and certificates of incorporation, LBH and its affiliated Debtors purchased primary and excess directors' and officers' liability insurance (the "D&O Policies"), which provides coverage for the Debtors' current and former officers, directors, and employees, as well as the current and former officers, directors, and employees of non-debtor LBI, in connection with civil, criminal, regulatory and other actions and investigations. D&O Policy settlements have been approved by the Court

previously, but it is clear that the proceeds of the D&O Policies are not property of the estate.[2] The Debtor has filed numerous motions underscoring this point.

## ESSEX'S OBJECTION

A. The Amended Plan and Disclosure Statement Fail to Disclose Details of Pending Legal Proceedings

13. The Disclosure Statement should not be approved because it contains inadequate information relating to the various legal proceedings it potentially enjoins and the treatment of the parties litigating in those proceedings.

14. The general purpose of a disclosure statement is to provide "adequate information" to enable impaired classes of creditors and interest holders to make an informed judgment about the proposed plan and determine whether to vote in favor of or against that plan. *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988). Section 1125(a) of the Bankruptcy Code defines "adequate information" as "information of a kind and in sufficient detail, as far as is reasonably practicable ... that would enable ... a hypothetical reasonable investor of the relevant class to make an informed judgment about the plan. 11 U.S.C. § 1125 (a)(1) and (b); *In re Source Enters., Inc.*, Case No. 06-11717 (ALG), 2007 WL 7144778, *2 (Bankr. S.D.N.Y. July 31, 2007).

15. The provision of adequate information is at the very heart of the reorganization process. *In re Rodolitz Holding Corp.*, 187 B.R. 72, 73 (Bankr. S.D.N.Y. 1995). As such, "[a] disclosure statement ... is evaluated ... in terms of whether it provides sufficient information to permit enlightened voting by holders of claims or interest." *In re BSL Operating Corp.*, 57 B.R. 945, 950 (Bankr. S.D.N.Y. 1986). A court

---

[2] It is also likely that the proceeds from other potentially applicable liability insurance policies which cover former officers, directors and employees of LBI are not part of the Debtors' estate.

should examine each disclosure statement individually to determine, on a case-by-case basis, whether the Bankruptcy Code's "adequate information" requirement is satisfied. *See In re Worldcom, Inc.*, 2003 WL 21498904, *10 (S.D.N.Y. June 30, 2003) ("the approval of a disclosure statement . . . involves a fact specific inquiry into the particular plan to determine whether it possesses 'adequate information' under § 1125") (*quoting In re Ionosphere Clubs*, 179 B.R. 24, 29 (S.D.N.Y. 1995)).

16. A disclosure statement, therefore, at its bare minimum, must contain "simple and clear language delineating the consequences of the proposed plan on [creditor's] claims and the possible [Bankruptcy] Code alternatives so that [creditors] can intelligently accept or reject the Plan." *In re Ferretti*, 128 B.R. 16, 19 (Bankr. D. N.H. 1991).

17. Courts have identified the following categories of information as the type of information that should be included in a typical disclosure statement, including, but not limited to: (a) information regarding claims against the estate; (b) a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7; (c) information relevant to the risks being taken by the creditors and interest holders; (d) the existence, likelihood and possible success of nonbankruptcy litigation. *Id.* at 18; *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988); *In re Reilly*, 71 B.R. 132, 134 (Bankr. D. Mont. 1987). The Debtors' failure to provide adequate information about the pending FINRA actions or other possible effects of those lawsuits on the feasibility of the Amended Plan violates section 1125(a). *See, e.g., Jeffrey M. Goldberg & Assocs., Ltd. v. Holstein*, Case No. 03 C 8023, 2004 WL 2075442, *4 (N.D. Ill. 2004) (stating that "the mere notification of pending litigation without disclosing any

of the details in the litigation in which a party is seeking to discover assets is not complete disclosure as contemplated by the Bankruptcy Code"); *In re Microwave Prods. of America, Inc.*, 100 B.R. 376, 378 (Bankr. W.D. Tenn. 1989) (finding disclosure statement inadequate, in part, because it did not address pending litigation).

18.     Prior to the LBH and LBI Commencement Dates, various securities actions were commenced against certain directors and officers in both federal and state court, alleging violations of various sections of the Securities Act of 1934 and the Securities Exchange Act of 1933. Most of these actions have been consolidated for pre-trial purposes before the Honorable Lewis Kaplan in the United States District Court for the Southern District of New York.

19.     In addition, other actions or arbitrations have been commenced against certain directors and officers, including Essex's FINRA Arbitration, asserting claims under the federal securities laws, FINRA Rules and Regulations, and various state laws, which arise from allegedly wrongful actions of certain of these directors and officers. The Disclosure Statement makes no mention of these proceedings against the directors and officers. Thus, it is impossible for any interested party to determine how LBH is valuing and providing for those claims, how much might be potentially recovered in those proceedings, and how the proceeds of the D&O Policies or other liability insurance will be allocated to pay successful claims. Simply put, the Disclosure Statement is devoid of material information with regard to the litigation proceedings currently pending and is therefore unapprovable.

B.  The Amended Plan's Disguised "Releases" Violate Section 524(e) of the Bankruptcy Code

20. After failing to provide material information on the pending litigations described above, the Amended Plan and Disclosure Statement appear to propose releases for parties of those very same litigations. While those releases are nominally called "injunctions", the Amended Plan and Disclosure Statement specifically put a permanent halt to all of the proceedings against directors and officers. Depending upon the construction given the Amended Plan's terms, it is almost impossible to tell whether these injunctions are intended to have a spill-over effect on proceedings against non-debtor LBI as well as LBI's former officers, directors and employees. Depending upon the intent and construction afforded the proposed Amended Plan terms, this potentially gives LBI and its directors, officers and employees a free and clear release without meeting the necessary elements required to obtain such a release.

21. The Second Circuit has prescribed several factors for determining the propriety of enjoining actions against non-debtor parties, including whether: (1) the estate received substantial consideration; (2) the enjoined claims were channeled to a settlement fund rather than extinguished; (3) the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; and (4) the plan otherwise provided for the full payment of the enjoined claims. *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 142-43 (2d Cir. 2005). The Disclosure Statement does not even attempt to meet the prescribed *Metromedia* standard and is devoid of any pertinent facts to inform Essex and other creditors or parties in interest whether such releases are indeed proper and what their boundaries are.

22.     Not only does the Disclosure Statement fail to adequately address

*Metromedia's* requirements, the Amended Plan is also fatally flawed in that it does not

comply with section 1129 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(1) requires that

a plan comply "with the applicable provisions of [the Bankruptcy Code]." Essex submits

that the Amended Plan does not comply with the applicable provisions of section 524(e)

of the Bankruptcy Code. Section 524(e) of the Bankruptcy Code provides that the

discharge of a debtor shall not affect the liability of any other entity or the property of

any other entity. Clearly, a release that enjoins claims against non-debtor D&O's is

inconsistent with the provisions of the Bankruptcy Code, and the Amended Plan is,

therefore, unconfirmable if this is the intent and scope that is sought by Debtors.

23.     The Disclosure Statement and Amended Plan provide similar injunctive

relief:

> Except as expressly provided in the Plan, the Confirmation
> Order, or a separate order of the Bankruptcy Court, all
> entities who have held, hold or may hold Claims against or
> Equity Interests in any or all of the Debtors and other
> parties in interest (whether proof of such Claims or Equity
> Interests has been filed or not), along with their respective
> present or former employees, agents, officers, directors or
> principals, are permanently enjoined, on and after the
> Effective Date, with respect to any Claims and Causes of
> Action which are extinguished or released pursuant to the
> Plan from (i) commencing, conducting, or continuing in
> any manner, directly or indirectly, any suit, action, or other
> proceeding of any kind (including, without limitation, any
> proceeding in a judicial, arbitral, administrative or other
> forum) against or affecting the Released Parties or the
> property of any of the Released Parties, (ii) enforcing,
> levying, attaching (including, without limitation, any
> prejudgment attachment), collecting, or otherwise
> recovering by any manner or means, whether directly or
> indirectly, any judgment, award, decree, or order against
> the Released Parties or the property of any of the Released
> Parties, (iii) creating, perfecting, or otherwise enforcing in

> any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties; (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan, (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan.

Disclosure Statement at § XI.H.3; see also, Amended Plan at § 13.5.

24. Thus, the Amended Plan and Disclosure Statement fail to explain how non-debtors such as LBI and its officers and directors are entitled to third party releases in contravention of section 524(e) of the Bankruptcy Code. Moreover, the Amended Plan provides potential releases to all directors and officers covered by the D&O Policies and enjoins all litigation against them, even potentially the directors and officers of non-debtors like LBI, who are not parties to the Disclosure Statement and Amended Plan. These cloaked releases make the plan unconfirmable and, accordingly, the Court should deny the request of the Debtors to approve the Disclosure Statement.

C. Impact of Third-Party Releases on the Debtors' Liquidation Analysis

25. The Disclosure Statement likewise contains inadequate information regarding how the third-party releases impact the liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7. The failure to properly consider the released claims in the liquidation analysis violates the "best interest of creditors" test as set forth in section 1129(a)(7) of the Bankruptcy Code and also renders the Amended Plan facially unconfirmable.

26. Section 1129(a)(7) of the Bankruptcy Code provides, in relevant part, that the Court "shall confirm a plan only if" each creditor in an impaired class "(i) has

accepted the plan; or (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." 11 U.S.C. § 1129(a)(7). The Court in *In re Quigley Corp.*, 437 B.R. 102 (Bankr. S.D.N.Y. 2010), determined that this express language requires a court to consider "the value of the property that each dissenting creditor will *retain* under the plan and in the hypothetical chapter 7." *Quigley*, 437 B.R, at 144-45. Since the nonsettling asbestos claimants were required under the plan to release the parent from its derivative liability, the court found that such creditors would fare better in chapter 7, where they would not be enjoined from pursuing the parent on their claims. *Id.* Therefore, the *Quigley* court concluded that the plan violated the Bankruptcy Code's "best interest of creditors" test and could not be confirmed. *Id.*

27. Similarly, the parties whose litigation claims against LBI and its directors and officers that are subject to the D&O Policies, might fare better in chapter 7 because they could pursue the claims against the directors and officers personally and may recover from the LBI estate. If so, the value that Essex would receive as of the effective date of the Amended Plan would be less than the amount it would so receive if the Debtors were liquidated under chapter 7 of the Bankruptcy Code depending upon the true intent of Amended Plan. Accordingly, the Amended Plan violates section 1129(a)(7) of the Bankruptcy Code and cannot be confirmed.

28. If LBH and its affiliated debtors intend to release non-Debtor director and officer third parties with respect to the claims in the Arbitration and similar litigations, then the Disclosure Statement describes a plan of reorganization that is unconfirmable on

its face. The Court need not await the resolution of confirmation objections. These facial defects render the Amended Plan unconfirmable as a matter of law and should preclude further consideration of the Disclosure Statement. *See, e.g., In re Filex*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990) (observing that court reviewing disclosure statement must examine the plan terms determine whether on its face the plan is so "fatally flawed" that confirmation would be impossible); *In re 266 Washington Assocs.*, 141 B.R. 275, 288 (Bankr. E.D.N.Y. 1992) ("A disclosure statement will not be approved where, as here, it describes a plan which is fatally flawed and thus incapable of confirmation."), *aff'd*, 147 B.R. 827 (E.D.N.Y. 1992); *In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) ("[A]pproval [of a disclosure statement] should not be withheld if … it is apparent that the plan will not comply with [Bankruptcy] Code §1129(a)…"); *In re Monroe Well Serv., Inc.*, 80 B.R. 324, 332 (Bankr. E.D. Pa. 1987) (in light of considerations of judicial economy and desire to reduce burden on the estate, no purpose is served by proceeding further in respect of a disclosure statement describing a plan that cannot, as a matter of law, be confirmed); *In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D. Va. 1986) (*In re Pecht*, 57 B.R. 137, 139 (Bankr. E.D.Va. 1986) ("If, on the face of the plan, the plan could not be confirmed, then the court will not subject the estate to the expense of soliciting votes and seeking confirmation"). This principle applies here. The Amended Plan is patently unconfirmable and the Court ought not to approve the Disclosure Statement.

## CONCLUSION

29. Because (i) the Disclosure Statement fails to adequately disclose information related to the many legal proceedings pending against directors and officers; and (ii) the Amended Plan is unconfirmable because it: (a) potentially provides for unsupported third party releases; and (b) violates section 1129(a)(7) of the Bankruptcy Code, Essex respectfully requests that the Court deny approval of the Disclosure Statement.

Dated: March 18, 2011
       New York, New York

Respectfully submitted,

ANDERSON KILL & OLICK, P.C.

/s/ Todd E. Duffy
Robert M. Horkovich
Todd E. Duffy
Dennis J. Nolan
1251 Avenue of the Americas
New York, New York 10020
Tel: (212) 278-1000
Fax: (212) 278-1733