Schuyler G. Carroll
Jeffrey D. Vanacore
PERKINS COIE LLP
30 Rockefeller Center, 25th Floor
New York, NY  10112-0085
212.262.6900
212.977.1649 (facsimile)
scarroll@perkinscoie.com
jvanacore@perkinscoie.com

David M. Miller (*Pro Hac Vice Motion Pending*)
303 E. 17th Avenue, Suite 500
Denver, CO 80203
303.832.2400
303.832.1510 (facsimile)
dmm@kutnerlaw.com

Attorneys for Movants

**HEARING DATE/TIME**: April 13, 2011 at 10 a.m.
**OBJECTION DEADLINE**: April 6, 2011

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                                      :

                                                            :   Chapter 11

LEHMAN BROTHERS HOLDINGS INC.;           :
LB ROSE RANCH LLC and PAMI STATLER           Case No. 08-13555 (JMP)
ARMS LLC,                                            :   (Jointly Administered)

                        Debtors.       :

                                                            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

The Movants,[1] by and through their attorneys Perkins Coie LLP and Kutner Miller Brinen, P.C., and as and for their Motion for Relief from the Automatic Stay (the "Motion") pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2), state as follows:

## PRELIMINARY STATEMENT

1.      The relief sought by the Movants is simple and straightforward.  Movants seek relief from stay to name the Debtors as defendants in a pending Colorado State Court suit so as to recover asserted damages to the extent of available insurance from the Debtors.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G).

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates underlying the relief requested in this Motion are Section 362 of the Bankruptcy Code and Bankruptcy Rule 4001.

## BACKGROUND

4.      The Debtors subject to this Motion, Lehman Brothers Holdings, Inc;  PAMI Statler Arms, LLC and LB Rose Ranch, LLC (collectively, the "Debtors") filed their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on September 15 and 23, 2008 and February 9, 2009.

5.      Prior to their case filing, the Debtors were engaged in, among other things, the business of golf course and new home construction in Colorado.

---

[1] The "Movants" or "Homeowners" are Jamin Cook, Tiffany Cook, Vaughan Counts, Suzanne Counts, Kevin Craig, Thisha Craig, Charlie Lawson, Sarahliz Lawson, Stephanie Mosher, Steve New, Kori New, Craig Willis, Pamela Willis, Kurt Kornreich, Helen Kornreich, Sohrab Amini, M.D., J. Christine Amini, Neil Ross, Gary Gray, Michael Cryan, Brian Alonge, Daniel Hock, Toni Hock, David Ice, Lisa Ice, Richard Moore, Patrick Nesbitt, Andre Pontin, Julie Pontin, James Vidakovich, The James Vidakovich Revocable Trust, Craig Willis, Pamela Willis, Kristin F. Davis, Joseph S. Davis, Chadwick Mickschl, Sarah Mickschl, Tina Rochowiak, Jamie Prough, Michael Rochwiak, and Martin Rochowiak.

The Ironbridge Construction Project

6.    One construction project in which the Debtors[2] participated was the Ironbridge

Homes project, a development of single family homes located in Glenwood Springs, Colorado

("Ironbridge" or "Development").

7.    Homeowners have determined that there appear to be construction defects and

deficiencies which have allegedly caused damage to the Homeowners residences.  Homeowners

discovered that the golf course constructed by the Debtors is a contributing cause to the damages

they are suffering.

The Colorado Litigation

8.    On or about May 14, 2010, and as a result of construction defects and deficiencies

which have allegedly caused damage to the Homeowners, as well as the failure to appropriately

repair damage to the Movants' homes, and before Homeowners knew of the Debtors'

involvement with the Development and the issues caused by its construction, certain of the

Homeowners commenced suit (Case No. 10-CV-142) in the Garfield County District Court,

Colorado against third parties, styled:

> *Jamin Cook, Tiffany Cook, Vaughan Counts, Suzanne Counts,*
> *Kevin Craig, Thisha Craig, Charlie Lawson, Sarahliz Lawson,*
> *Stephanie Mosher, Steve New, Kori New, Craig Willis, Pamela*
> *Willis, Kurt Kornreich and Helen Kornreich,*
>
> > *Plaintiffs,*
>
> > *v.*
>
> *Ironbridge Homes, LLC, Dirk Gosda, individually, Sunrise*
> *Construction, Hansen Construction, Inc., Steven A. Hansen,*
> *individually, Richard C. Hepworth, P.E., individually, Steve*
> *Pawak, individually, Hepworth-Pawlak Geotechnical, Inc.,*
> *Stephen Peightal, individually, and S K Peightal Engineers, Ltd.*
>
> > *Defendants.*

---

[2] It appears to the Movants that LB Rose Ranch LLC and PAMI Statler Arms LLC are the Debtors directly involved
with the Ironbridge development.

The claims asserted in the suit relate generally to claims for property damage and loss of use resulting from defects in the construction and repair of Movants' residences, and alleging various causes of action related thereto (hereafter, the "Colorado State Court Action"). The Complaint was amended on or about September 16, 2010. A copy of Movants' Amended Complaint filed in the Colorado State Court Action is attached as **Exhibit A** and incorporated fully herein by this reference.

9.    Homeowners have determined that, during the relevant time, Debtors likely had in place an insurance policy (or policies) covering some or all of Debtors' liability to Homeowners that may exist.

<strong><u>REQUESTS FOR INSURANCE POLICIES</u></strong>

10.    Prior to filing this Motion, Homeowners repeatedly contacted counsel for the Debtors and requested that the Debtors provide them with copies of its insurance polices relating to Ironbridge and adjacent golf course which were in effect during the past eight (8) years, so as to determine the scope of the Debtors' insurance coverage.

11.    Despite numerous conversations over several months and attempts to accommodate the Debtors, the Debtors have steadfastly refused this request, despite initially advising Movant's counsel that the Debtors' employees were searching for the insurance policies and a resolution by stipulation was possible.[3]

12.    The Homeowners are unable to determine whether the insurance policies, which may provide coverage and payment, exist, and if so, whether they are sufficient to cover the Homeowners' claims.

---

[3] In fact, in November 2010, Movant's counsel emailed Debtors' counsel a stipulation entered by this Court, in this case, where the parties had agreed to lift the automatic stay to the extent of available insurance proceeds. Movant's counsel suggested the parties in this matter enter into a similar stipulation. Debtors' counsel initially agreed that a similar stipulation could likely be entered into resolving this matter. Unfortunately, for whatever reason, the parties have not been able to reach an agreement, necessitating this Motion and a Rule 2004 request filed simultaneously with this Motion.

13.     At one point, the Debtors offered to represent to Homeowners that its insurance was "adequate" to pay any claims possessed by the Homeowners, but would not allow Homeowners to review those policies to verify the accuracy of this representation.

### HOMEOWNERS SEEK STAY RELIEF TO PURSUE INSURANCE

14.     Homeowners intend to amend their Complaint to add the Debtors as defendants to the Colorado State Court Action if granted relief from the automatic stay by this Court.[4]

15.     Homeowners desire to proceed with the Colorado State Court Action so as to establish their claims against Debtors, and to recover upon any favorable judgment rendered against any applicable insurance policies which exist and that may allow recovery for the damages alleged in the Colorado State Court Action.  Homeowners have been steadfastly denied the opportunity to review the Debtors' insurance policies to determine the extent of available coverage.

### LEGAL ARGUMENT

16.     Homeowners submit that, under the circumstances and relevant case law, they are entitled to relief from stay so as to pursue the Colorado State Court Action.  In re Sfuzzi, 199 B.R. 664, 668 (Bankr. N.D. Tex. 1996).  The Debtors will not be substantially impaired if such relief is granted, as it apparently possesses insurance to protect itself in the event any claims such as have been asserted by Homeowners are made.  The rights to payment under the policy do not inure to the benefit of the Debtors, but rather to third-party beneficiaries such as the Homeowners.

17.     Courts in this circuit have consistently held that an insurance policy is property of the estate within the meaning of Section 541.  In re Adelphia Communications Corp., 298 B.R.

---

[4] Of course, Homeowners' potential recovery against the non-debtor defendants would not be limited to insurance proceeds.

49, 52 (Bankr. S.D.N.Y. 2003).  However, proceeds from an insurance policy should be

evaluated separately from the debtor's interest in the policy itself.  First Fidelity Bank v.

McAteer, 985 F.2d 114, 117 (3d Cir. 1993); In re Allied Digital Prod. Corp., 306 B.R. 505, 512

(Bankr. D. Del. 2004); In re 15375 Memorial Corp., 382 B.R. 652, 687 (Bankr. D. Del. 2008)

(rev'd on other grounds by In re 15375 Memorial Corp., 420 B.R. 420 (D. Del. 2009).

18.      "Because a debtor would have no right to the proceeds of liability insurance, such

proceeds are not considered property of the bankruptcy estate and stay relief to allow a personal

injury clamant to pursue an action against the debtor as a nominal defendant for the purpose of

recovering under an insurance policy is appropriate."  In re SunCruz Casinos, LLC, 377 B.R.

741, 749 (Bankr. S.D. Fla. 2007), citing In re Scott Wetzel Services, Inc., 243 B.R. 802, 805

(Bankr. M.D. Fla. 2000).

19.      If the Homeowners are able to realize upon a favorable judgment from possible

insurance policies, it would not adversely affect assets that constitute general property of the

estate under 11 U.S.C. § 541.  Insurance proceeds are not ordinarily available for general

unsecured creditor distribution, but rather inure to the benefit of aggrieved parties (like the

Homeowners) for whom such policies are earmarked.  Id.  See also, 11 U.S.C. § 541.  In re

Edgeworth, 993 F.2d 51, 55-56 (5th Cir. 1993).  Thus, the potential proceeds available from the

insurance policies are not needed in order for the Debtors to successfully reorganize.

20.      There are also other defendants in the Colorado State Court Action over whom

this Court does not possess jurisdiction.  Upon information and belief, none of the other

defendants to the Colorado State Court Action have voluntarily availed themselves of this

Court's jurisdiction.  Judicial economy favors allowing litigation to proceed in Colorado, where

the State Court possesses jurisdiction over all parties (other than the Debtors) and has already

developed specific expertise in the case and is familiar with Colorado law.  Simply put, Colorado

is the most efficient forum for the litigation to continue.

21.     In addition, in the event Homeowners are not granted the requested relief, the

relative hardship they will suffer will substantially outweigh that which the Debtors may suffer

as a result of the Colorado State Court Action proceeding to conclusion.  In re Peterson, 116 B.R.

247 (D. Colo. 1990); In re American Classic Voyages, Inc., 298 B.R. 222, 225 (D. Del. 2003).

Movants are homeowners who have allegedly been damaged by Debtors' business activities and

defective construction.  If the Homeowners are denied the opportunity to pursue the Colorado

State Court Action vis-à-vis the Debtors, they will be deprived of the opportunity to be made at

least partially whole from the collection of insurance proceeds that may exist to satisfy their

claims.

22.     Proceeding with the Colorado State Court Action and the possible collection of

insurance proceeds by the Homeowners in that action will serve to enhance a primary goal of the

bankruptcy process by serving as a potential basis for the repayment of creditors and by fixing

and reducing claims against the estate, thereby conserving the Court's judicial resources. Upon

information and belief, the presence of significant insurance coverage exists here which, if paid

to Movants upon success in the Colorado State Court Action, will reduce the dollar value of

claims which exist against the general estate assets.

23.     There is also no reason to believe that the issues of the Colorado State Court

Action could be resolved any more swiftly in this Court than in the Colorado State Court Action,

where it has been pending, and where that court regularly deals with the Colorado tort, statutory

contact and insurance issues as are raised by the Colorado State Court Action, and which Court

is located close to the Movants and their homes.

24.     The Debtors' cost of litigating the Colorado State Court Action will be shouldered by its insurance carriers in accordance with their duties to defend under their contracts of insurance. Case law is clear that "the cost of defense is, standing alone, ordinarily considered an insufficient basis for denying relief from stay." Smith v. Tricare Rehabilitation Sys., Inc., 181 B.R. 569, 575 (Bankr. N.D. Ala. 1994). However, even if in the unlikely event and for some reason that cannot be presently foreseen those defense costs are not paid by Debtors' insurance carriers, or if relief from stay is denied, the claims asserted in the Colorado State Court Action will proceed in whatever forum is appropriate. Therefore, denying relief from stay will not serve to lessen the impact of the expenses or fees that will be incurred in defending against the Homeowners' claims.

25.     As previously stated, the Estate will not be prejudiced by Homeowners' pursuit of the Colorado State Court Action because the Homeowners seek to liquidate their claims and recover from assets that are not property of the Estate (i.e., potential insurance proceeds). To the extent the remaining Homeowners opt to file a proof of claim and share in any distribution that may be forthcoming from property that is part of the estate in the event the insurance proceeds are insufficient to satisfy their claims, the Homeowners simply will be exercising those rights afforded them by the bankruptcy process.

## THE SONNAX FACTORS

26.     Most courts deciding whether to allow a pre-existing case to proceed have used the twelve so-called "Sonnax factors." In re Sonnax, 907 F.2d 1280, 1286 (2nd. Cir.1990). Those twelve factors are:

> (1)     whether relief would result in a partial or complete resolution of the issues;
>
> (2)     lack of any connection with or interference with the bankruptcy case;

(3)    whether the other proceeding involves the debtor as a fiduciary;

(4)    whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

(5)    whether the debtor's insurer has assumed full responsibility for defending it;

(6)    whether the action primarily involves third parties;

(7)    whether litigation in another forum would prejudice the interests of other creditors;

(8)    whether the judgment claim arising from the other action is subject to equitable subordination;

(9)    whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

(10)   the interests of judicial economy and the expeditious and economical resolution of litigation;

(11)   whether the parties are ready for trial in the other proceeding; and

(12)   the impact of the stay on the parties and the balance of harms.

In re Sonnax, 907 F.2d at 1286 (citing In re Curtis, 40 Bankr. D. Utah 1984). The importance of any factor depends on the particular facts in the case. In re Sonnax, 907 F.2d at 1286.

27.    The overwhelming factors to consider in this case are the interests in a complete resolution of the issues, in judicial efficiency and economy, the related interest in resolving as many issues as possible in a single proceeding, the fact that it appears the Debtors' insurers will likely assume full responsibility for defending the claims (this factor can be determined with certainty if the Debtors' will simply produce the insurance policies), the needless harm to the Homeowners from multiple and duplicative proceedings and the balance of the "hurt", which in this case weighs heavily in favor of the aggrieved Homeowners whose residences are being affected daily by the continuing damage being caused to their homes, and the inability to seek

redress from possible insurance sources as a result of the continuation of the automatic stay.  <u>See</u>,
<u>e.g.</u>, <u>In re Peterson</u>, 116 B.R. at 249.

28.    Consequently, cause exists under 11 U.S.C. §§ 362(d)(1) and (d)(2) to lift the
automatic stay to allow the Colorado State Court Action to proceed. Therefore, Homeowners
request that the Court enter an order modifying the automatic stay provisions of 11 U.S.C. §362
in order to allow them to proceed with the Colorado State Court Action, amend their Complaint
to name the Debtors as a Defendant thereto, and to recover its damages against the Debtors as
may be adjudicated therein from the available insurance polices.

WHEREFORE, the Homeowners respectfully request that the Court enter an
Order granting them relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (d)(2)
so as to allow them to proceed with their claims against the Debtors in the Colorado State Court
Action, to liquidate their claims against the Debtors, to collect from any available insurance
proceeds in the event they prevail in that litigation and for any such other relief as this Court
deems just and proper.

Dated: New York, New York.
       March 17, 2011                          PERKINS COIE LLP


                                               By:  /s/ Jeffrey D. Vanacore
                                               Schuyler G. Carroll
                                               Jeffrey D. Vanacore
                                               30 Rockefeller Center, 25th Floor
                                               New York, NY  10112-0085
                                               212.262.6900
                                               212.977.1649 (facsimile)
                                               jvanacore@perkinscoie.com
                                               scarroll@perkinscoie.com

                                               - and -

David M. Miller (*Pro Hac Vice Motion
Pending*)
303 E. 17th Avenue, Suite 500
Denver, CO 80203
303.832.2400
303.832.1510 (facsimile)
dmm@kutnerlaw.com