Hearing Date and Time:  April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  April 6, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
:
**In re** : **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* : **08-13555 (JMP)**
:
**Debtors.** : **(Jointly Administered)**
:
-------------------------------------------------------------------x

**NOTICE OF MOTION OF**
**LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO MAKE**
**ADDITIONAL INVESTMENTS WITH RESPECT TO 25 AND 45 BROAD STREET**

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion")
of Lehman Brothers Holdings Inc. ("LBHI" and, together with its affiliated debtors in the above-
referenced chapter 11 cases, the "Debtors") pursuant to section 363 of title 11 of the United
States Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure for authorization to
make certain additional investments with respect to properties located at 25 Broad Street and 45
Broad Street, New York, New York, as more fully described in the Motion, will be held before
the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy
Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York,
New York 10004 (the "Bankruptcy Court"), on **April 13, 2011 at 10:00 a.m. (Prevailing**
**Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion
shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy
Court for the Southern District of New York, shall set forth the name of the objecting party, the
basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court
electronically in accordance with General Order M-399 (which can be found at
www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by
all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),
WordPerfect, or any other Windows-based word processing format (with two hard copies

delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1600, Houston, Texas 77002, Attn:  Alfredo R. Pérez, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the official committee of unsecured creditors appointed in these cases; and (v) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than **April 6, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 22, 2011
        Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                      :

**In re**                         :      **Chapter 11 Case No.**
                      :

**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :     **08-13555 (JMP)**
                      :

                 **Debtors.**    :      **(Jointly Administered)**
                      :

-------------------------------------------------------------------x

**MOTION OF LEHMAN BROTHERS HOLDINGS INC.**
**PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULE 6004 FOR AUTHORIZATION TO MAKE**
**ADDITIONAL INVESTMENTS WITH RESPECT TO 25 AND 45 BROAD STREET**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

        Lehman Brothers Holdings Inc. ("<u>LBHI</u>," together with its affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors-in-possession the "<u>Debtors</u>," and,

collectively with their non-debtor affiliates, "<u>Lehman</u>"), files this motion (this "<u>Motion</u>") and

respectfully represents:

<u>**Preliminary Statement**</u>

        1.      Commencing in June 2006, LBHI originated senior and mezzanine

financing in the amount of approximately $309 million for certain entities controlled by Kent M.

Swig ("Swig") to finance (i) the acquisition and condominium conversion of a building located at 25 Broad Street, New York, New York ("25 Broad Street"), a former apartment building designated as an individual historic landmark by the New York City Landmarks Preservation Commission located in Manhattan's Financial District, and (ii) the acquisition of an adjacent, parcel located at 45 Broad Street, New York, New York ("45 Broad Street") that is currently vacant.  As collateral for the financing, LBHI holds, among other things, mortgage liens encumbering 25 Broad Street and 45 Broad Street (the "Properties").  In January of 2009, LBHI commenced two separate actions in the Supreme Court of the State of New York (the "State Court") to foreclose on the mortgages encumbering the Properties, which actions are still pending.  LBHI anticipates that the foreclosure of 45 Broad Street will be completed during the third quarter of 2011, but does not anticipate that the foreclosure of 25 Broad Street will be completed prior to that time.

2.    As the foreclosure process moves forward, to protect against asset loss and enhance the value of the Properties, LBHI must make certain additional investments (the "Additional Investments") with respect to the Properties necessary (i) to complete construction at 25 Broad Street, including the demolition of a deteriorating portion of the existing structure ensuring safe conditions at the premises; (ii) to cover the operating expenses of the Properties; and (iii) to transfer related development rights to 45 Broad Street, which, without such transfer, cannot be developed in an economically efficient manner.  LBHI anticipates that the Additional Investments will not exceed an additional $25.1 million in the aggregate.  The Additional Investments will help enable LBHI to maximize the value of its existing investment in the Properties and, concomitantly, recoveries for its estate by enhancing the recovery on the financings provided to the Properties.

## Relief Requested

3.        By this motion, LBHI seeks authorization to make the Additional

Investments with respect to the Properties pursuant to section 363(b)(1) of title 11 of the United

States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

## Jurisdiction

4.        This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

5.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases

under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated

for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to

operate their businesses and manage their properties as debtors in possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.

6.        On September 17, 2008, the United States Trustee for Region 2 (the "U.S.

Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of

the Bankruptcy Code (the "Creditors' Committee").

7.        On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

8.       On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.

The Examiner filed its report with the Court on March 11, 2010 [Docket No. 7531].

9.       On January 25, 2011, the Debtors filed their First Amended Joint Chapter

11 Plan [Docket No. 14150] and the Disclosure Statement to the Debtors' First Amended Joint

Chapter 11 Plan [Docket No. 14151].

10.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## LBHI's Relationship with the Properties

### *25 Broad Street*

11.      On or about March 9, 2007, LBHI, 25 Broad, LLC ("25 Broad") and Swig

entered into a transaction (i) to refinance the acquisition costs, among other things, of 25 Broad

Street and (ii) to finance a portion of certain other costs related to the redevelopment of 25 Broad

Street.  The transaction was split into three mortgage loans (the "25 Broad Mortgage Loans").

Swig entered into a completion guaranty and a non-recourse carveout guaranty of the 25 Broad

Mortgage Loans.  LBHI also provided mezzanine financing to Swig and certain entities under his

control in connection with 25 Broad Street in the aggregate principal amount of $96.3 million

(the "25 Broad Mezzanine Loans" and together with the 25 Broad Mortgage Loans, the "25

Broad Loans").  The current aggregate outstanding balance of the 25 Broad Loans is

approximately $399.6 million.   As collateral for the 25 Broad Loans, LBHI holds, among other things, three mortgages encumbering 25 Broad Street.

12.    To acquire and convert 25 Broad Street into a mixed-use condominium complex containing various retail stores and in excess of 300 residential units, Swig and his controlled entities developed a business plan consisting of a strategy that included (i) causing existing tenants to vacate the then-occupied apartments located at 25 Broad Street, (ii) converting the core of 25 Broad Street into a mixed-use condominium building, and (iii) demolishing the south wing of 25 Broad Street's structure (the "South Wing").  The business plan also contemplated that the land underneath the South Wing and associated development rights (the "Development Rights Transfer") would be transferred to the adjacent parcel at 45 Broad Street. Neither the condominium conversion of 25 Broad Street nor the Development Rights Transfer has occurred to date.

### *45 Broad Street*

13.    Commencing on June 12, 2006, LBHI, 45 Broad, LLC ("45 Broad" and, together with 25 Broad, the "Borrowers") and Swig entered into a two loan transactions to refinance certain costs related to 45 Broad Street, pursuant to which LBHI provided loans (the "45 Broad Loans" and together with the 25 Broad Loans, the "Loans")[1] to 45 Broad in the aggregate principal amount of approximately $49.1 million.  Swig guaranteed 45 Broad's

---

[1] Certain of the Loans were repo'd to Fenway Capital, LLC ("Fenway Capital") pursuant to certain repurchase transactions entered into in connection with a program under which Fenway Funding, LLC issued certain commercial paper to LBHI, as more particularly described in the *Debtors' Motion Pursuant to Bankruptcy Rule 9019 for Authority to Compromise Controversy in Connection with a Repurchase Transaction with Fenway Capital, LLC and A Commercial Paper Program with Fenway Funding, LLC* [Docket No. 7831].  Pursuant to the *Order Approving Debtors' Motion Pursuant to Bankruptcy Rule 9019 for Authority to Compromise Controversy in Connection with a Repurchase Transaction with Fenway Capital, LLC and A Commercial Paper Program with Fenway Funding, LLC* [Docket No. 9030] (the "Fenway Order"), the repurchase transaction and commercial paper program have been terminated.  The Debtors have reserved all rights, claims, and interests in the loans that were the subject of the repurchase transaction and commercial paper program pursuant to the Fenway Order.

obligations under the 45 Broad Loans.  The current aggregate outstanding balance of the 45

Broad Loans is approximately $72.7 million, including accrued and default interest.   As

collateral for the 45 Broad Loans, LBHI holds, among other things, two mortgages encumbering

45 Broad Street.

***The Foreclosure Actions***

14.    As construction at 25 Broad Street was in progress, the Borrowers

defaulted on their respective obligations under the Loans and, in 2008, construction was halted

by 25 Broad.  Following those events, on January 22, 2009, LBHI commenced two separate

actions for the foreclosure of the Properties and related relief and a separate action on the

guarantees delivered by Swig with respect to the 25 Broad Mezzanine Loans.

*25 Broad Street Foreclosure*

15.    With respect to the 25 Broad Mezzanine Loans, on May 4, 2010, a

judgment was entered in favor of LBHI against the borrowers under the 25 Broad Mezzanine

Loans, each in the amount of $25 million, and against Swig, up to the maximum amount of $50

million, with respect to his guaranties of the 25 Broad Mezzanine Loans.  Pursuant to a

settlement agreement (the "Settlement") between Swig and LBHI, Swig, 25 Broad and 45 Broad

agreed not to appeal the State Court Order.  Additionally, Swig and 25 Broad agreed to withdraw

their respective counterclaims and defenses to LBHI's foreclosure on 25 Broad Street pursuant to

the Settlement.

16.    With respect to the foreclosure of the 25 Broad Mortgage Loans, on May

14, 2009, the State Court appointed Thomas Gagliano as the receiver (the "25 Broad Receiver")

for 25 Broad Street.  The 25 Broad Receiver is working with LBHI to manage the operations,

construction, and rehabilitation of 25 Broad Street.  Several mechanic's lienors are contesting the

priority of LBHI's mortgage liens on 25 Broad Street.  LBHI has filed a motion for summary

judgment contesting the priority of the mechanics liens.  LBHI's motion for summary judgment

has been fully briefed and argued and is pending decision by the State Court.  However, on

February 14, 2011, a mechanic's lienor defendant in the 25 Broad Street foreclosure action

commenced a case under chapter 7 of the Bankruptcy Code. LBHI is in the process of assessing

this development.  While there is risk inherent in any litigation, LBHI believes that it has a

strong case and, ultimately, expects to prevail in the action seeking to foreclose on 25 Broad

Street but not prior to the end of the third quarter of 2011.

### *45 Broad Street Foreclosure*

17.     With respect to the foreclosure of 45 Broad Street, on November 17, 2009,

a receiver was appointed for 45 Broad Street.  Pursuant to the Settlement, Swig and 45 Broad

agreed to withdraw their respective counterclaims and defenses to LBHI's foreclosure on 45

Broad Street.  The State Court has since granted a motion for summary judgment in LBHI's

favor.  A referee appointed by the State Court must next compute the amount due under the 45

Broad Loans, an amount which the State Court will need to confirm.  Thereafter, 45 Broad Street

will be marketed for sale for a four-week period as required by statute, and a foreclosure sale will

be scheduled.  As a result, LBHI anticipates that foreclosure of 45 Broad Street will be

completed during the third quarter of 2011.

### **Prior Investments**

18.     Pursuant to the *Order Pursuant to Sections 105(a) and 363(b) of the*

*Bankruptcy Code and Bankruptcy Rule 9019(a) Establishing Procedures to (I) Restructure (II)*

*Make New or Additional Debt or Equity Investments In, and/or (III) Enter into Settlements and*

*Compromises in Connection with Existing Real Estate Investments*, dated November 23, 2009

[Docket No. 5912] (the "New Investment Order"), LBHI may make new or additional debt and/or equity investments in connection with existing commercial mortgage loans and commercial mezzanine loans. Since the default of the Loans and cessation of construction at the Properties, to protect against asset loss and enhance the value of the collateral securing the Loans, in the ordinary course of its business and/or pursuant to the New Investment Order, LBHI has made investments in the Properties (the "Prior Investments") in the aggregate amount of approximately $39.9 million.[2]  These amounts have been used to finance, among other things, repairs to ensure safety at 25 Broad Street, the partial façade restoration of the property, and replacement of its cooling tower and heat pumps.

## The Additional Investments

### *Additional Investments in 25 Broad Street*

19.     As the foreclosure process has continued with respect to the Loans, LBHI has identified several crucial projects requiring additional capital to prepare 25 Broad Street for occupancy and thereby maximize the value of its existing investment.  To that end, 25 Broad Street requires, among other things, (i) the completion of apartment unit renovations, (ii) the completion of demolition of the South Wing, (iii) a re-design of certain outdoor tenant amenity space (the "Amenity Space") to comply with the regulations of the New York City Department of Buildings (the "Department of Buildings"), and (iv) the payment of operating expenses until

---

[2] Prior to entry of the New Investment Order, between January 1, 2009 through and including November 20, 2009, the Debtors made protective advances with respect to the Properties in the aggregate amount of approximately $4.2 million.  From the date of the New Investment Order through and including December 31, 2010, LBHI made Prior Investments in the aggregate amount of approximately $21.4 million, and, between January 1, 2011, and February 24, 2011, LBHI made Prior Investments in the aggregate amount of approximately $12.4 million, in each case, upon obtaining consent from the Creditors' Committee.  The Prior Investments made during 2011 include a $9.9 million advance transferred on February 24, 2011 by LBHI to an escrow account to provide the 25 Broad Receiver with assurance that adequate funds are available to ensure the continued safety of conditions at 25 Broad Street, as demanded by the 25 Broad Receiver and as further described below in paragraph 20.

the project is able to generate sufficient revenue to cover costs.  Central to maximizing the value

of 25 Broad Street and allowing the property to generate sufficient cash to cover its operating

costs is the completion of renovation of approximately 281 apartment units to prepare them for

occupancy.  LBHI expects that the direct construction cost of completing apartment unit

renovations will be approximately $5.3 million.

20.    Equally important to protecting and maximizing the value of the

Properties is the completion of the demolition of the South Wing.  The existing South Wing

structure was substantially demolished by 25 Broad prior to its default under the Loans.

However, the demolition is not complete, leaving a structure that is beyond restoration and,

currently, is deteriorating.  These conditions must be addressed by LBHI to ensure the continued

safety of the premises at 25 Broad Street.  Indeed, the 25 Broad Receiver, who is party to all

work contracts relating to 25 Broad Street, has demanded that LBHI provide assurances that

adequate funds be available to complete the demolition of the South Wing prior to his execution

of any work contract.  On February 4, 2011, the 25 Broad Receiver sent a letter to LBHI

threatening to request that the City of New York effectuate repairs to the South Wing if LBHI

did not provide assurances that funding available to ameliorate hazardous conditions at the

premises.  Repairs by the City of New York may cost significantly more than what a private

owner would pay through its own contractor.  In order to provide the 25 Broad Receiver with

assurance that funds were available to address the concerns expressed in his letter to LBHI, on

February 24, 2011, LBHI transferred approximately $9.9 million into an escrow account, which

amount is included in the Prior Investments.  LBHI and the 25 Broad Receiver are currently

receiving bids for the work from the various contractors, and portions of the escrowed funds will

be released as necessary upon the 25 Broad Receiver's execution of a work contract and paid to

the applicable contract counterparty or counterparties in accordance with the terms thereunder.

Additionally, absent immediate amelioration of the hazards posed by the South Wing, there is a

risk that the Department of Buildings would take action, causing LBHI to face further costs and

delays in connection with construction at the Properties.  Accordingly, LBHI seeks to finance the

completion of the demolition to remediate the current state of 25 Broad Street and allow for the

efficient completion of construction.  The demolition of the South Wing is also necessary to

complete the Development Rights Transfer given that the transferred development rights are

currently beneath the South Wing.  LBHI estimates that the total direct demolition costs for the

South Wing will be approximately $10.2 million, including the Prior Investment of $9.9 million

transferred by LBHI to an escrow account on February 24, 2011.

   21. Additionally, in order to ultimately receive a certificate of occupancy from

the Department of Buildings for 25 Broad Street, the Amenity Space, which is currently located

on the substantially demolished South Wing, must be relocated to a location within the

remaining portion of 25 Broad Street.  LBHI estimates that the total direct construction costs for

the relocation will be approximately $1.9 million.

   22. LBHI expects that the completion of the restoration of 25 Broad Street's

façade, a mandatory component of the renovation of the building, will cost approximately $1.5

million.  The restoration of the façade of 25 Broad Street is expected to cause the building to

become compliant with the requirements of the New York City Landmarks Preservation

Commission and certain additional requirements of the New York City Building Code.  LBHI

estimates that the total cost of completing construction of 25 Broad Street, including renovation

of apartment units, relocation of the Amenity Space, completion of the restoration of the façade,

the $1.3 million in unfunded costs to complete of the demolition of the South Wing, and certain

additional costs, such as architectural and engineering expenses, overhead, insurance and other fees, will be approximately $15.5 million.  Pending the occupancy and leasing of 25 Broad Street to the point sufficient to provide cash flow to cover operation of the building, LBHI estimates operating costs will amount to an additional $6.2 million.

***Additional Investments in 45 Broad Street***

23.     With respect to 45 Broad Street, the current lot does not allow for an economically efficient building to be constructed due to its current size and density.  To maximize the value of 45 Broad Street, LBHI wishes to complete the Development Rights Transfer, which will allow for a more feasible development of 45 Broad Street as a result of the transfer of 64,000 square feet of development rights from the South Wing.

24.     Pursuant to the construction application filed with the Department of Buildings, in order to allow for the Development Rights Transfer, there must be simultaneous filings of plans to demolish the South Wing, to construct a new building at 45 Broad Street, and to subdivide and transfer the portion of the 25 Broad Street parcel underlying the South Wing to the parcel of 45 Broad Street.  To meet the requirement that a new building be constructed at 45 Broad Street in a cost-effective, efficient manner, LBHI may need to construct a one-story structure at 45 Broad Street.  LBHI expects that the cost of constructing the one-story structure is approximately $2.5 million; however, such costs may not need to be fully expended, depending on the specific construction requirements imposed by the Department of Buildings in connection with the Development Rights Transfer.

***Total Additional Investments***

25.     In addition, LBHI expects to contribute $226,000 as part of a proposed agreement with the owner ("Adjacent Landowner") of a property located between the Properties.

Pursuant to such agreement, the Adjacent Landowner would grant the receiver for each of the Properties necessary access to complete the required demolition of the South Wing and construction at each of the Properties.  Given the expected cost of construction at 45 Broad Street of $2.5 million, the $15.5 million estimated cost of construction at 25 Broad Street, and the $6.2 million cost of projected operating shortfalls at 25 Broad Street, taking into account potential cost overruns and certain additional costs, such as the agreement with the Adjacent Landowner, LBHI expects to provide Additional Investments of no greater than an additional $25.1 million in the aggregate with respect to the Properties.

**The Additional Investments Are An Appropriate Exercise of LBHI's Business Judgment**

26.     LBHI seeks the approval of the Court pursuant to section 363(b)(1) of the Bankruptcy Code to use property of its estate in connection with the Additional Investments. Ample authority exists for the Additional Investments.  Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that the transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

27.     It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

28. LBHI has determined, in the sound exercise of its business judgment, that the Additional Investments are in the best interests of its estate and creditors. After analyzing various alternatives, the Additional Investments provide the best framework for continuing to protect and maximize the value of the Properties, thereby preserving and increasing the prospects of a recovery with respect to the Loans, which have an aggregate outstanding balance of approximately $472.3 million. Most notably, the Additional Investments will allow for (i) the completion of construction at 25 Broad Street, creating an institutional-quality, multi-family building with an excellent location in one of the strongest real estate markets in the United States; (ii) the completion of rentable apartment units that, once leased, will generate cash flow to help cover the Properties' current operating costs; (iii) the remediation of the deterioration of the South Wing; and (iv) the Development Rights Transfer, providing for the feasible development of 45 Broad Street at an economical cost, thereby increasing its value.

29. The potential benefits of the Additional Investments, namely the preservation and maximization of the value of LBHI's substantial existing investments in the Properties, substantially outweighs what LBHI is giving up in connection therewith – equity

infusions into the Properties totaling no greater than an additional $25.1 million in the aggregate.

Although 25 Broad Street is still subject to litigation with certain mechanics' lienholders, LBHI

has already reached a settlement in the pending foreclosure actions with Swig, the developer of

the Properties and controlling insider of the Borrowers.  While LBHI expects that the litigation

will not conclude prior to the end of the third quarter of 2011, absent the Additional Investments,

construction at the Properties will only be further delayed, potentially leading to the deterioration

of LBHI's valuable collateral and the accrual of further expenses with respect thereto.

Furthermore, in light of the current state of the real estate market and the current condition of the

Properties, LBHI has determined that the sale of the Loans at this juncture would result in a price

at a significant discount to the intrinsic value of the Properties as developed.

    30. The Additional Investments will help enable LBHI to maximize the value

of its existing investment in the Properties and, by extension, recoveries for its estate by

increasing the likelihood of recovery on the Loans.  Accordingly, in light of the benefits of the

relief requested to LBHI and its reorganization, LBHI's decision to make the Additional

Investments is a sound exercise of business judgment, and approval of the Additional

Investments is in the best interests of LBHI's estate and creditors.

## Relief Under Bankruptcy Rule 6004(h)

    31. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale,

or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless

the court orders otherwise."  FED. R. BANKR. P. 6004(h).  Given the current deteriorating

condition of the South Wing and the accruing operating costs with respect to the Properties,

LBHI wishes to begin making the Additional Investments as soon as possible to efficiently and

cost-effectively protect and maximize the value of the Properties.  Accordingly, LBHI

respectfully requests that any order be effective immediately by providing that the 14-day stay is inapplicable.

### **Reservation of Rights**

The Debtors request that nothing contained herein be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or remedies of LBHI, or any of the Debtors or their non-debtor affiliates except as otherwise expressly provided in this Motion, that any of the Debtors or non-debtor affiliates may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including against each other or third parties. Additionally, the Debtors seek authorization to execute such further documentation necessary to reflect this reservation of rights.

### **Notice**

32.     No trustee has been appointed in these chapter 11 cases. LBHI has served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; and (vi) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]. LBHI submits that no other or further notice need be provided.

WHEREFORE LBHI respectfully requests that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated: March 22, 2011
       Houston, Texas


                 /s/ Alfredo R. Pérez
                 Alfredo R. Pérez

                 WEIL, GOTSHAL & MANGES LLP
                 700 Louisiana Street, Suite 1600
                 Houston, Texas  77002
                 Telephone: (713) 546-5000
                 Facsimile: (713) 224-9511

                 Attorneys for Debtors
                 and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                          :
**In re**                                                 :        **Chapter 11 Case No.**
                                                          :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*              :        **08-13555 (JMP)**
                                                          :
                                  **Debtors.**            :        **(Jointly Administered)**
                                                          :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTION 363**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 6004**
**AUTHORIZING LEHMAN BROTHERS HOLDINGS INC. TO MAKE**
**ADDITIONAL INVESTMENTS WITH RESPECT TO 25 AND 45 BROAD STREET**

Upon the motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI" and,

together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and

debtors in possession, the "Debtors") pursuant to section 363 of title 11 of the United States

Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") for authorization to make certain additional investments (the "Additional

Investments") with respect to the properties located at 25 Broad Street and 45 Broad Street, New

York, New York (the "Properties"), as more particularly described in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the

Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court

pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been

provided to (i) the Office of the United States Trustee for Region 2; (ii) the attorneys for the

Official Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv)

the Internal Revenue Service; (v) the United States Attorney for the Southern District of New

York; and (vi) all other parties entitled to notice in accordance with the procedures set forth in

the second amended order entered on June 17, 2010 governing case management and

administrative procedures for these cases [Docket No. 9635]; and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief

sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all

parties in interest and that the legal and factual bases set forth in the Motion establish just cause

for the relief granted herein; and after due deliberation and sufficient cause appearing therefore,

it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 363(b)(1) of the Bankruptcy Code, LBHI is

authorized to make the Additional Investments and consummate all of the transactions

contemplated thereby, including the advance of funds with respect to the Properties and

execution and delivery of such documents and instruments of transfer necessary to consummate

such transactions, and to take such other actions as may be reasonably necessary to consummate

such transactions, it being understood that any actions described in this paragraph taken by the

Debtors or their affiliates may be taken without the necessity of any further court proceedings or

approval; and it is further

ORDERED that the transactions contemplated with respect to the Additional

Investments may be further modified, amended or supplemented by the parties thereto in

accordance with the terms thereof without further order of the Court, *provided* that, in each case,

any such modification, amendment or supplement does not have a material adverse effect on the

Debtors' estates; and it is further

2

ORDERED that nothing contained herein be deemed to be a waiver or the

relinquishment of any rights, claims, interests, obligations, benefits, or remedies of LBHI or any

of the Debtors or their non-debtor affiliates except as otherwise expressly provided in the

Motion, that any of the Debtors or non-debtor affiliates may have or choose to assert on behalf of

their respective estates under any provision of the Bankruptcy Code or any applicable non-

bankruptcy law, including against each other or third parties; and the Debtors are authorized to

execute such further documentation necessary to reflect this reservation of rights; and it is further

ORDERED that this Order shall be effective and enforceable immediately upon

entry and its provisions shall be self-executing and shall not be stayed pursuant to Bankruptcy

Rule 6004(h); and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation and/or interpretation of this Order.

Dated: April __, 2011
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

3