**Hearing Date and Time: April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: April, 6 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas 77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                            :
In re                                       :        **Chapter 11**
                                            :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**  :        **Case No. 08-13555 (JMP)**
                                            :
                    Debtors.                :        **(Jointly Administered)**
                                            :
-------------------------------------------------------------------x

**NOTICE OF MOTION OF LEHMAN COMMERCIAL PAPER INC.**
**PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY**
**TO CONSENT TO ITS NON-DEBTOR AFFILIATE LEHMAN ALI INC. (I)**
**ENTERING INTO COMMITMENT LETTER WITH INNKEEPERS USA TRUST;**
**(II) SUPPORTING THE CHAPTER 11 PLAN OF CERTAIN AFFILIATES**
**OF INNKEEPERS USA TRUST; AND (III) PARTICIPATING IN THE AUCTION**
<u>**FOR CERTAIN OF THE ASSETS OR EQUITY OF INNKEEPERS USA TRUST**</u>

**PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "<u>Motion</u>") of Lehman Commercial Paper Inc. ("<u>LCPI</u>"), and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (together, the "<u>Debtors</u>") for an order pursuant to section 363 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") for authority to consent to its non-Debtor affiliate Lehman ALI Inc. (i) entering into a commitment letter related to the purchase, out of chapter 11 of the Bankruptcy Code, of certain of the equity of affiliates of Innkeepers USA Trust (the "<u>Equity</u>"), (ii) supporting a chapter 11 plan of reorganization of Innkeepers USA Trust; and (iii) if necessary, participating in an auction for the Equity, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "<u>Bankruptcy Court</u>"), on **April 13, 2011 at 10:00 a.m. (prevailing Eastern Time)** (the "<u>Hearing</u>").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local Rules of

the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 700 Louisiana Street, Suite 1600, Houston, Texas 77002, Attn:  Alfredo R. Pérez, Esq., attorneys for the Debtors; (iii) Dechert LLP, 1095 Avenue of the Americas, New York, New York 10036, Attn: Michael J. Sage, Esq. and Brian E. Greer, Esq., counsel to Lehman ALI Inc. (iv) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York, 10004, Attn:  Tracy Hope Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (v) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys to the official committee of unsecured creditors appointed in these cases, and (vi) all parties who have requested notice in these chapter 11 cases, so as to be so filed and received by no later than April 6, 2011 at 4:00 p.m. (prevailing Eastern Time) (the "Objection Deadline").

**PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

**PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  March 22, 2011
      Houston, Texas

/s/ Alfredo R. Pérez
Alfredo R. Pérez
WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
700 Louisiana Street, Suite 1600
Houston, Texas  77002
Telephone: (713) 546-5000
Facsimile: (713) 224-9511
Alfredo R. Pérez

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                   :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC., et al.,** | : | **Case No. 08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

**MOTION OF LEHMAN COMMERCIAL PAPER INC. PURSUANT TO**
**SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY TO**
**CONSENT TO ITS NON-DEBTOR AFFILIATE LEHMAN ALI INC. (I)**
**ENTERING INTO COMMITMENT LETTER WITH INNKEEPERS USA TRUST;**
**(II) SUPPORTING THE CHAPTER 11 PLAN OF CERTAIN AFFILIATES**
**OF INNKEEPERS USA TRUST; AND (III) PARTICIPATING IN THE AUCTION**
**FOR CERTAIN OF THE ASSETS OR EQUITY OF INNKEEPERS USA TRUST**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

          Lehman Commercial Paper Inc. ("LCPI"), as debtor and debtor in

possession (together with its affiliated debtors in the above-referenced chapter 11 cases,

the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), moves for

authority to consent to Lehman ALI Inc.'s ("ALI"), a non-Debtor affiliate of LCPI, (i)

entry into a commitment letter (the "Commitment Letter") among ALI, Five Mile Capital

II Pooling REIT LLC (together with its affiliates, "Five Mile"), and certain subsidiaries

of Innkeepers USA Trust (collectively, "Innkeepers")[1] regarding the restructuring of

Innkeepers and certain related agreements;[2] (ii) supporting of the chapter 11 plan for

Innkeepers pursuant to the terms of the Commitment Letter; and (iii) participation, if

necessary, in an auction for the assets of Innkeepers set forth in the Commitment Letter,

and respectfully represents:

### Preliminary Statement

1.    In June 2007, ALI originated a $367,658,725 financing (the

"Financing") with Innkeepers.  The Financing was bifurcated into a $250,000,000

floating-rate first mortgage loan (the "ALI Mortgage Loan")[3] and a $117,658,725

floating-rate mezzanine loan (the "Mezzanine Loan" and, together with the ALI

Mortgage Loan, the "Loans").[4]    ALI remains as the lender under the ALI Mortgage

Loan, with a current balance of approximately $220.2 million (plus interest, late fees and

any other charges payable under the ALI Mortgage Loan Agreement).  The ALI

Mortgage Loan represents a potential significant source of recovery for creditors of the

Debtors.

---

[1] On July 19, 2010, Innkeepers USA Trust and certain of its affiliates filed for chapter 11 protection in the United States Bankruptcy Court for the Southern District of New York.  The chapter 11 case is pending under case number 10-13800 before the Honorable Shelley C. Chapman.  As part of its "first day" pleadings, Innkeepers filed Debtors' Motion for an Order (A) Authorizing the *Debtors to Assume the Plan Support Agreement and (B) Granting Related Relief* [Docket No. 15].

[2] Such agreements include, without limitation, that certain Revised Amended and Restated Commitment Agreement, dated March 9, 2011, by and between Five Mile and ALI (the "ALI/Five Mile Commitment").

[3] The Mortgage Loan is evidenced by, *inter alia*, that certain Loan Agreement, dated as of June 29, 2007 (as amended, restated or otherwise modified from time to time, the "ALI Mortgage Loan Agreement").

[4] The Mezzanine Loan is currently held by SASCO 2008-C2 LLC (the "Mezzanine Lender").  The Debtors do not make any representations with respect to the Mezzanine Lender and are not requesting any approval with respect to the Mezzanine Lender.

2.      Beginning in April 2010, as Innkeepers' financial situation became dire, Innkeepers and ALI engaged in numerous good faith and arms'-length negotiations to outline a potential restructuring of Innkeepers that would maximize ALI's recovery on the ALI Mortgage Loan.  These negotiations continued despite Innkeepers' filing for chapter 11 relief on July 19, 2010, and resulted in a Plan Term Sheet and Plan Support Agreement (collectively, the "Plan Support Agreement") which provided for the terms of a proposed restructuring of Innkeepers.  On August 19, 2010, this Court entered an order approving LCPI consenting to ALI's entry into the Plan Support Agreement.[5]  On September 1, 2010, however, the Bankruptcy Court in the Innkeepers' chapter 11 cases entered an order denying Innkeepers the authority to enter into the Plan Support Agreement and consummate the restructuring as provided for therein.

3.      Nonetheless, the Debtors have continued to work closely with their legal and financial advisors, with Innkeepers' advisors and with the major constituencies in the Innkeepers' chapter 11 cases to reach an agreement on the terms of a restructuring of Innkeepers which would be both beneficial to the Debtors' estates and creditors and, at the same time, enable Lehman to maximize the value of the ALI Mortgage Loan.  After extensive negotiations, the Debtors, along with Five Mile and Midland Loan Services Inc., a division of PNC Bank, National Association ("Midland"), have reached an agreement with Innkeepers as to the terms of a stalking-horse bid for substantially all of the Innkeepers enterprise (64 of the 71 hotel properties).

---

[5] Also, pursuant to this order, Solar Finance, Inc. ("Solar"), a non-debtor affiliate of LCPI, was authorized to provide debtor-in-possession financing to Innkeepers (the "Solar DIP Loan").  Although the Solar DIP Loan is not fully funded, Solar has committed to funding the full amount of the loan.

4.      If all of the transactions contemplated in the bid are consummated:

(a)      ALI and Five Mile will post a $20 million deposit, funded equally by ALI and Five Mile, to secure their obligations under the Commitment Letter.

(b)      ALI will exchange its interest in the ALI Mortgage Loan for up to 50% of the new equity in reorganized Innkeepers and a cash payment of at least $26.2 million.

(c)      The Solar DIP Loan will be repaid, in full, in cash.

(d)      Five Mile will purchase up to 50% of the new equity of Innkeepers for an amount of up to $174.1 million.

(e)      The transactions will be consummated through an Innkeepers' chapter 11 plan which would be supported by both ALI and Five Mile.

(f)      It is anticipated that a third-party investor and a new property manager will purchase in the aggregate up to 20% of the new equity for up to $70 million, and the cash received by ALI will increase, and the amount paid by Five Mile will decrease correspondingly.  This will proportionately reduce the amount of new equity held by ALI and Five Mile.

If all of these transactions are consummated, it will result in ALI holding 40% of the new equity in reorganized Innkeepers and receiving a cash payment of at least $61 million and a return of ALI's $10 million deposit.  Although there are certain risks to this transaction (which are described herein), in their business judgment, the Debtors have determined that the transactions described in the Commitment Letter and related documents represent the best alternative for the Debtors and their estates to recover significant value on account of ALI's interest in Innkeepers and to extricate themselves from the Innkeepers' chapter 11 cases.

5.      Notably, the transactions contemplated in the Commitment Letter, if consummated, would enable ALI to become an even partner with Five Mile, a well-

established fund with more than $2 billion under management, broad investment experience in the hospitality area, general expertise in the extended stay lodging sector and substantial knowledge of Innkeepers, its assets and operations.

6.      On March 11, 2011, the Innkeepers' Bankruptcy Court has entered an order approving Innkeepers' entry into the Commitment Letter and establishing bidding procedures.  The bidding procedures order with its attachments (including the Commitment Letter) is annexed hereto as <u>Exhibit 1</u>.[6]

### **<u>Relief Requested</u>**

7.      By this Motion, pursuant to section 363 of chapter 11 of the United States Code ("<u>the Bankruptcy Code</u>"), LCPI seeks authority  to consent to ALI (i) entering into the Commitment Letter relating to the sale of the equity of certain affiliates of Innkeepers and the proposed restructuring of Innkeepers under chapter 11 of the Bankruptcy Code and certain related agreements, and to consummate the transactions set forth therein; (ii) supporting the chapter 11 plan of Innkeepers; and (iii) if necessary, participating in an auction for the equity of certain of Innkeepers' affiliates.

8.      Although this Motion seeks relief related to non-Debtor ALI, such relief is required pursuant to the *Order Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 Authorizing the Transfer of Loans from Variable Funding Trust 2007-1 to Non-Debtor Affiliates* [Docket No. 9025], entered by this Court on May 13, 2010 (the "<u>Transfer Order</u>").  As set forth in the Transfer Order, LCPI was authorized to transfer mortgage loans in the possession of Variable Funding Trust 2007-1, a

---

[6] The Bidding Procedures Order amended the Commitment Letter to provide that no break-up fee would be paid to ALI or Five Mile in connection with this transaction.

Delaware statutory trust, to any non-Debtor affiliate subject to certain conditions.

Among other things, the Transfer Order required that any non-Debtor affiliate transferee

"obtain all consents and approvals from the Creditors' Committee and the Court that

LCPI would otherwise have been required to obtain had LCPI been the owner of such

[transferred loan]…"  Transfer Order at p. 3.   A more detailed background of the

Transfer Order and LCPI's interest in the ALI Mortgage Loan can be found in the *Motion*

*of Lehman Commercial Paper Inc. Pursuant to Section 363 of the Bankruptcy Code for*

*Authority to (I) Consent to its Non-Debtor Affiliate Lehman ALI Inc. (A) Entry into Plan*

*Support Agreement Related to the Restructuring of Innkeepers USA Trust; and (B)*

*Comsummation of the Transactions set forth in the Plan Term Sheet; and (II) Provide*

*Funds to Solar Finance, Inc., a Non-Debtors Affiliate, to Provide Debtor-in-Possession*

*Financing* [Docket No. 10465] (the "Innkeepers PSA Motion").

### Jurisdiction

9.      This Court has subject matter jurisdiction to consider and

determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to

28 U.S.C § 157(b).  The statutory basis for the relief requested herein is section 363(b) of

the Bankruptcy Code.

### Background

10.      Commencing on September 15, 2008 and periodically thereafter

(as applicable, the "Commencement Date"), the Debtors commenced with this Court

voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy

Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes

only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

11.    On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

12.    On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

13.    On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.  The Examiner filed its report with the Court on March 11, 2010 [Docket No. 7531].

14.    On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan [Docket No. 14150] and the Disclosure Statement to the Debtors' First Amended Joint Chapter 11 Plan [Docket No. 14151].

15.    Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Innkeepers**

16.     In June 2007, ALI originated the Financing to fund a portion of the approximately $1.8 billion acquisition of all the outstanding shares of Innkeepers by Apollo Investment Corporation ("Apollo").  At that time, Innkeepers held 76 hotel properties.  Currently, Innkeepers holds 71 hotel properties.

17.     The ALI Mortgage Loan currently is secured by 19 hotel properties in total (the "ALI Collateral Portfolio"), certain of which are branded extended stay or limited service hotels, including Residence Inns (Marriott), Hampton Inns (Hilton), and Courtyards by Marriott (Marriott).  The Mezzanine Loan is secured by pledges of the equity of the entities holding the 19 hotel properties.

18.     Midland is the special servicer for an $825 million loan (the "Midland Mortgage Loan"), which is securitized in two CMBS trusts, and secured by 45 of Innkeepers hotel properties (the "Midland Collateral Portfolio" and, together with the ALI Collateral Portfolio, the "Joint Collateral Portfolio"), and is, Innkeepers' largest creditor.  Together, Lehman and Midland hold over 80% of Innkeepers' prepetition mortgage debt, secured by 64 of Innkeepers' 71 hotel properties.  Five Mile has funded a debtor-in-possession loan to Innkeepers (separate and apart from the Solar DIP Loan) secured by substantially the same Midland Collateral Portfolio and, through certain of its affiliates, is the controlling class representative of the CMBS trusts which hold the Midland Mortgage Loan.  The seven hotel properties which are not part of the Joint Collateral Portfolio each have individual mortgage loans and are known, colloquially, as the "Seven Sisters."

19.     As set forth in more detail in the Innkeepers PSA Motion,

throughout the second half of 2008 and during 2009, certain operational issues coupled

with the high amount of outstanding debt on Innkeepers' portfolio, led to the need for

Innkeepers to file for chapter 11 relief.  On July 27, 2010, after extensive negotiations

with Innkeepers, LCPI filed the Innkeepers PSA Motion, which sought approval of an

agreement pursuant to which the Debtors agreed to convert their debt into substantially

all of the equity in the reorganized Innkeepers (the "PSA Transaction")[7] and to provide

DIP financing to address the PIPs and certain other necessary capital expenditure for the

hotels securing the ALI Mortgage Loan.  This agreement was set forth in the Plan

Support Agreement.  On August 19, 2010, this Court entered its Order approving the July

2010 Innkeepers Motion [Docket No. 10877].

20.     On September 1, 2010, the Bankruptcy Court in the Innkeepers'

chapter 11 cases entered an order denying Innkeepers the authority to enter into the Plan

Support Agreement with ALI and to consummate the transactions set forth therein.

Although Lehman still provided the Solar DIP Loan to Innkeepers, Lehman was unable

to complete the debt for equity swap.  As a result, ALI continued discussions with

Innkeepers and other parties in interest in order to negotiate a restructuring for Innkeepers

that would provide Lehman maximum value in exchange for its debt interests in

Innkeepers.

21.     After evaluating its options, Lehman has agreed, subject to the

approval of this Court, to enter into the Commitment Letter and consummate the

---

[7] A detailed description of the terms of the PSA Transaction is contained in the Innkeepers PSA Motion.

transactions set forth therein.  The terms of the restructuring set forth in the Commitment

Letter, which would be effectuated through an Innkeepers' chapter 11 plan, generally

provide for Lehman's exchange of its debt interest in Innkeepers for up to 50% of the

new equity in reorganized Innkeepers and a cash payment of at least $26.2 million.  If,

however, a sale of New Equity to a third party investor or new property manager is

consummated, the result will be Lehman holding at least 40% of the new equity and

receiving a cash payment of up to $61 million.  The Debtors believe this provides

substantial value on account of Lehman's interest in Innkeepers and is beneficial to its

estates and creditors.

### The Commitment Letter and Stalking Horse Bid[8]

22.    Since the denial of the PSA Transaction, Lehman has worked

diligently with Five Mile and Midland to structure a joint transaction for the restructuring

of Innkeepers.  During that time, Innkeepers solicited various bids from third parties that

would support an enterprise restructuring of Innkeepers.  After considering the bids,

Innkeepers chose the joint bid submitted by ALI and Five Mile as the stalking horse bid

for Innkeepers (the "Stalking Horse Bid" and the transactions contemplated thereby, the

"ALI/Five Mile Transaction").  As a result, if Innkeepers receives other bids, it will

conduct an auction and the Stalking Horse Bid will be subject to higher and better offers.

If no higher or better offers are received, Innkeepers will seek to confirm a chapter 11

plan which incorporates the ALI/Five Mile Transaction.

---

[8] The descriptions and discussions of Commitment Letter and the Stalking Horse Bid contained herein are summary in nature.  In the event of any inconsistency between the terms of any of those documents and their descriptions contained herein, the terms of the actual documents will control.

A.    **The Stalking Horse Bid**

23.    The Stalking Horse Bid provides for the purchase of 100% of the new equity in reorganized Innkeepers, which will consist of 64 of the 71 hotel properties (the "New Equity").[9]  Pursuant to the Stalking Horse Bid, Five Mile will commit to purchase up to 50% of the New Equity for cash in an amount of up to $174.1 million and ALI will commit to convert the ALI Mortgage Loan into (a) up to 50% of the New Equity and (b) at least $26.2 million in cash.

24.    ALI and Five Mile anticipate jointly selling or causing the sale of up to 20% of the New Equity, in the aggregate, to a third party investor and a new property manager.  The resulting decrease in New Equity will be split equally between ALI and Five Mile and there will be a corresponding decrease in the amount of cash paid by Five Mile and increase in the amount of cash received by ALI.  The Debtors, however, seek authority to enter into the Commitment Letter and consummate the ALI/Five Mile Transaction independent of ALI's ability to consummate the follow-up transactions which provide for the sale of up to 20% of the New Equity.

25.    If the Stalking Horse Bid is the winning bid, and the sales of 20% of the New Equity are consummated, ALI will receive (a) 40% of the New Equity and (b) approximately $61 million in cash, the total consideration being valued at approximately $200.3 million, and Five Mile will purchase 40% of the New Equity for $139.29 million.  If the sales of 20% of the New Equity are not consummated, ALI and Five Mile will each continue to hold 50% of the New Equity.  The Solar DIP Loan will be repaid in full in

---

[9] The Innkeepers' assets known as the "Seven Sisters" are not included in the Stalking Horse Bid.  Neither ALI nor Midland hold a security interest in such assets and Innkeepers is currently marketing them separately.

cash on the effective date of an Innkeepers' chapter 11 plan that incorporates the terms of the Stalking Horse Bid.

### B.     The Deposit

26.     The Commitment Letter provides that in support of the Stalking Horse Bid, ALI and Five Mile each will make a deposit in the amount of $10 million to secure their respective obligations under the Stalking Horse Bid (collectively, the "Deposit").  ALI, Five Mile and Innkeepers are currently in the process of negotiating an escrow agreement (the "Escrow Agreement"), which the Debtors anticipate will be completed prior to the hearing on this Motion.  ALI will execute the Escrow Agreement and fund its portion of the Deposit, which will be expressly subject to this Court's approval of this Motion.  Specifically, and for the avoidance of doubt, if this Court does not grant LCPI the authority to consent to ALI's entry into the Commitment Letter, the Commitment Letter will be terminated and ALI's portion of the Deposit will be immediately returned to ALI.  Pursuant to the Commitment Letter, the Deposit is Innkeepers' sole remedy in the event of a breach of the Commitment Letter.

27.     Pursuant to the Commitment Letter, the Deposit will only be released to Innkeepers upon a breach of the Commitment Letter by either ALI or Five Mile which results in either's inability to close the ALI/Five Mile Transaction, as determined by the Bankruptcy Court in the Innkeepers' chapter 11 cases.  In that instance, the full $20 million Deposit would be released to Innkeepers and, depending on which party breached the Commitment Letter, either ALI or Five Mile would have a claim against the other for its portion of the Deposit.  If the Commitment Letter is terminated for reasons not caused by ALI or Five Mile's breach, such as if ALI loses the

Auction or Innkeepers invokes its Fiduciary Out (as defined below), the Deposit would be returned to ALI and Five Mile.  Finally, if the ALI/Five Mile Transaction closes, ALI's portion of the Deposit will be returned to ALI, in cash.

### C. The Releases

28.    The Stalking Horse Bid provides for mutual releases with respect to Innkeepers, Innkeepers directors and officers, ALI (including its affiliates), Apollo, Midland, and Five Mile.  Additionally, if the ALI/Five Mile Transaction is consummated, the Innkeepers' Official Committee of Unsecured Creditors will grant a release to ALI (including its affiliates) for all causes of action, including any potential causes of action under chapter 5 of the Bankruptcy Code.  The releases are subject to confirmation of the Innkeepers' chapter 11 plan.

### D. Resulting Capital Structure

29.    Midland, in its capacity as special servicer for the Midland Mortgage Loan has agreed to provide "stapled financing" to fund the Stalking Horse Bid. Specifically, the principal amount owing under the Midland Mortgage Loan will be reduced from $825.4 million to $622.5 million, with no change in the interest rate, no amortization for the first 48 months, and no prepayment penalty (as restructured, the "Midland Financing").  As a result, if consummated, the ALI/Five Mile Transaction would reduce the overall secured debt on Innkeepers assets by over $400 million.  The Midland financing would remain secured by the Midland Collateral Package and will assist ALI and Five Mile in creating a healthier restructured Innkeepers.  Midland has agreed to make the Midland Financing available to other qualified bidders at the auction, if one is necessary, subject to, among other things, the contemplated debt-to-

capitalization ratio for the reorganized enterprise (consisting of 64 hotels) in such bid is

not more that 70% and Lehman receiving the ALI Cash Payout (defined and described

below).

### E.    The ALI Cash Payout

30.    In order to protect ALI's interest if the Stalking Horse Bid is not

the winning bid at a potential auction, the Stalking Horse Bid requires, and the

Bankruptcy Court in the Innkeepers' chapter 11 cases approved in the bidding

procedures, that any winning bid at the auction must provide for the payment, in cash, of

Lehman's claims against Innkeepers for an amount not less than $200.3 million (the "ALI

Cash Payout") and the repayment, in cash, of the Solar DIP Loan.[10]  Further, if the

Stalking Horse Bid were not the winning bid, ALI would receive its proportionate share

of any overbid amount.

### F.    The Auction

31.    As set forth above, as Innkeepers is currently in their own chapter

11 cases, the Stalking Horse Bid is subject to higher or better offers.  Therefore,

Innkeepers and their advisors are currently in the midst of a 45-day marketing period,

during which time, Innkeepers' financial advisor is contacting potential bidders.  In the

event Innkeepers receives other legitimate bids for the assets, Innkeepers will conduct a

formal auction (the "Auction").  Subject to Innkeepers' Fiduciary Out (defined and

described below), any bids for the Innkeepers' assets must contemplate an enterprise-

level reorganization for the 64 debtors covered by the Stalking Horse Bid.  It is currently

---

[10] In addition, Midland has required that the leverage ratio for the reorganized entity be equal to or less than 70%.

contemplated that the deadline for bids to be received will be April 25, 2011 and if

necessary, the Auction will be held on May 2, 2011.

32.    The Debtors believe that the Stalking Horse Bid represents a strong

offer for substantially all of the Innkeepers' assets.  Nonetheless, to the extent Innkeepers

receives competing bids, the Debtors could be disadvantaged if they are not able to

compete in the Auction.  As such, the Debtors propose that ALI be authorized to

participate and overbid in the Auction, including bidding on any of Innkeepers' assets or

equity not included in the Stalking Horse Bid, subject to the authorization given by both

the Lehman Board of Directors and the Creditors' Committee.

### G.    Innkeepers' Chapter 11 Plan

33.    Because the ALI/Five Mile Transaction is an enterprise-wide

restructuring of Innkeepers (other than seven hotels), it will be effectuated through an

Innkeepers' chapter 11 plan which will be supported by ALI, Five Mile and Midland.

Innkeepers intends on filing the plan on or before April 8, 2011 and seeking confirmation

of the plan no later than June 30, 2011.  Therefore, LCPI needs the authority to consent to

ALI's participation in Innkeepers' chapter 11 plan process, including supporting the plan

and opposing an unsatisfactory plan that does not effectuate the Stalking Horse Bid.  As

with any chapter 11 plan, there is a risk that the Innkeepers' plan is not confirmed by the

Innkeepers' Bankruptcy Court.  Nonetheless, the Debtors believe that the benefits of

pursuing an ALI/Five Mile Transaction far outweigh the risks associated with Innkeepers'

plan process.

H.      **The Fiduciary Out**

34.      The Commitment Letter contains a fiduciary out for Innkeepers, which, provides that nothing contained in the Commitment Letter shall prevent Innkeepers' directors from exercising their fiduciary duties (the "Fiduciary Out"). Specifically, the Fiduciary Out states:

> Upon the determination by the [Innkeepers'] directors, trustees, or members, as applicable, an upon advice of counsel, no term or provision of this Term Sheet or the Amended Commitment Letter shall prevent, amend, alter, or reduce [Innkeepers'] ability to exercise its fiduciary duties under applicable law.

As such, Innkeepers, assuming a proper exercise of the fiduciary duties of Innkeepers' directors, trustees or members, as applicable, could terminate its obligations under the Commitment Letter (subject to certain continuing obligations) and choose to pursue or consummate a transaction other than the one set forth in the Stalking Horse Bid, which would result in a return of the Deposit.

I.      **Summary of Stalking Horse Bid**

35.      In sum, the key terms of the Commitment Letter and Stalking Horse Bid are:

(a)      ALI and Five Mile will post a $20 million Deposit, funded equally by each party.  The Deposit will only be released to Innkeepers upon a breach of the Commitment Letter by ALI or Five Mile which results in the failure of the ALI/Five Mile Transaction to close.

(b)      ALI will exchange its $220.2 million ALI Mortgage Loan for (a) up to 50% of the New Equity in reorganized Innkeepers and (b) at least $26.2 million in cash.

(c)      The Solar DIP Loan will be paid, in full, in cash.

(d)      Five Mile will purchase up to 50% of the New Equity for cash in the amount of $174.1 million.

(e)    ALI and Five Mile anticipate jointly selling or causing the sale of up to 20% of the New Equity to a third party investor and a new property manager.  The Debtors, however, seek authority to consummate the ALI/Five Mile Transaction independent of whether a third party investor and new property manager acquire such equity.

(f)    The Stalking Horse Bid will be marketed and, if other bids are received, subject to an Auction, at which Innkeepers will choose the highest and best bid for the assets.  All other bids must be enterprise-wide, according to the same general structure as the Stalking Horse Bid and received no later than April 25, 2011.  Further, any other bid must provide for the payment in cash to ALI of at least $200.3 million for its interest in Innkeepers.  If necessary, an Auction will be held on May 2, 2011.

(g)    The transaction set forth in the Stalking Horse Bid will be effectuated through an Innkeepers' chapter 11 plan.

(h)    The Commitment Letter contains a Fiduciary Out for the benefit of Innkeepers.

36.    As set forth above, the Stalking Horse Bid is the result of extensive negotiations between ALI, Innkeepers, Midland, Five Mile and other parties in interest.  As with any transactions, there are risks associated with the Stalking Horse Bid and the ALI/Five Mile Transaction, such as Innkeepers receiving a higher and better bid, the Innkeepers' chapter 11 plan not being confirmed, or Innkeepers using its Fiduciary Out.  Nonetheless, the Debtors believe in their business judgment that the Stalking Horse Bid will result in Lehman receiving maximum value in exchange for its interest in Innkeepers to the benefit of the Debtors estates and all parties in interest.

**ALI's Entry into the Commitment Letter,
Consummation of the Transactions Contemplated by the
Stalking Horse Bid, and Participation at the Auction Is in
<u>The Best Interests of the Debtors, and their Estates and Creditors</u>**

37.    ALI's entry into the Commitment Letter, and LCPI's consent to such, is in the best interest of LCPI, its creditors and all parties in interest, is an exercise

of the sound business judgment of both ALI and LCPI, and should be approved by this

Court.  Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice

and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate."  Id. § 363(b)(1).  When considering a transaction outside the

ordinary course of business, courts in the Second Circuit, and others, require that such

transaction be based upon the sound business judgment of the debtor.  Comm. of Equity

Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983);

accord In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); In re Martin, 91 F.3d

389, 395 (3d Cir. 1996) (citing Fulton State Bank v. Schipper (In Re Schipper), 933 F.2d

513, 515 (7th Cir. 1991)); Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l

Airlines, Inc. (In re Cont'l Airlines, Inc.), 780 F.2d 1223, 1226 (5th Cir. 1986).

        38.     It is generally understood that "[w]here the debtor articulates a

reasonable basis for its business decisions (as distinct from a decision made arbitrarily or

capriciously), courts will generally not entertain objections to the debtor's conduct."  In

re Johns-Manville Corp., 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business

justification exists, there is a strong presumption that "the directors of a corporation acted

on an informed basis, in good faith and in the honest belief that the action taken was in

the best interests of the company."  In re Integrated Res., Inc., 147 B.R. 650, 656

(S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)), appeal

dismissed, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting this presumption falls to

parties opposing the proposed exercise of a debtor's business judgment.  Id. (citing

Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)).

39.     The Commitment Letter and Stalking Horse Bid are the result of extensive, good-faith, and arms'-length negotiations between ALI, Five Mile, Midland and Innkeepers, and their respective counsel and financial advisors as well as other parties in interest.  The Debtors and their financial advisors believe that these transactions will maximize ALI's recovery on the ALI Mortgage Loan.

40.     ALI has determined that the transactions contemplated by the Commitment Letter and Stalking Horse Bid provide the best recovery under the circumstances on account of ALI's interest in Innkeepers.  The ALI/Five Mile Transaction, if consummated, would provide ALI with both a significant amount of New Equity in reorganized Innkeepers, as well as an up-front cash payment.  Furthermore, in the event ALI is not the successful bidder at the Auction, ALI would receive at least $200.3 million in cash on account of the ALI Mortgage Loan.

41.     Although the Debtors believe that the Stalking Horse Bid will be the highest and best bid for the Innkeepers' assets, the Debtors will be at a significant strategic disadvantage if ALI is unable to participate in the Auction if it is ultimately necessary.  Similarly, ALI would be at a strategic disadvantage if it were known what ALI determined the Innkeepers' assets to be worth or if ALI were subject to a public cap on what it was able to bid at the Auction.  As such, it is in the best interests of the estates and their creditors that ALI be able to fully participate in the Auction subject to business judgment of Lehman's Board of Directors and the consent of the Creditors' Committee.

42.     Based on the foregoing, LCPI respectfully submits that the determination that ALI enter into the Commitment Letter and Stalking Horse Bid and consummate the transactions set forth therein, support an Innkeepers' chapter 11 plan

through which the ALI/Five Mile Transaction can be effectuated, and, if necessary

participate in an auction for the Innkeepers' assets is exercise of sound business judgment

and in the best interests of the Debtors' estates and creditors.

### Reservation of Rights

43.     The Debtors request that nothing contained herein be deemed to be

a waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or

remedies of LCPI, or any of the Debtors or their non-debtor affiliates except as otherwise

expressly provided in this Motion, that any of the Debtors or non-debtor affiliates may

have or choose to assert on behalf of their respective estates under any provision of the

Bankruptcy Code or any applicable non-bankruptcy law, including against each other or

third parties.  Additionally, the parties seek authorization to execute such further

documentation necessary to reflect this reservation of rights.

### Notice

44.     The Debtors have served notice of this Motion in accordance on (i)

the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and

Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney

for the Southern District of New York; (vi) the attorneys for ALI; (vii) the attorneys for

Innkeepers; (viii) the attorneys for Five Mile; and (ix) all other parties entitled to notice

in accordance with the procedures set forth in the second amended order entered on June

17, 2010 governing case management and administrative procedures for these cases

[Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated:     March 22, 2010
           Houston, Texas

                                        /s/ Alfredo R. Pérez
                                        Alfredo R. Pérez

                                        Weil, Gotshal & Manges LLP
                                        700 Louisiana, Suite 1600
                                        Houston, TX 77002
                                        Telephone: (713) 546-5040
                                        Facsimile: (713) 224-9511

                                        Attorneys for Debtors
                                        and Debtors in Possession

## Annex A

**(The Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :        08-13555 (JMP)
                                        :
                        Debtors.        :        (Jointly Administered)
                                        :
-------------------------------------------------------------------x
```

**ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE GRANTING
AUTHORITY TO LCPI TO CONSENT TO ITS NON-DEBTOR AFFILIATE LEHMAN
ALI, INC. (I) ENTRING INTO COMMITMENT LETTER WITH INNKEEPERS USA
TRUST (II) SUPPORTING THE CHAPTER 11 PLAN OF CERTAIN AFFILIATES OF
INNKEEPERS USA TRUST; AND (III) PARTICIPATING IN THE AUCTION FOR
CERTAIN OF THE ASSETS OR EQUITY OF INNKEEPERS USA TRUST**

Upon the motion, dated March 22, 2011 (the "Motion"),[1] of Lehman Commercial

Paper Inc. ("LCPI"), as debtor in possession (together with its affiliated debtors in the above-

referenced chapter 11 cases, the "Debtors"), for an order pursuant to section 363 of title 11 of the

United States Code (the "Bankruptcy Code") authorizing LCPI to consent to Lehman ALI, Inc.

("ALI"), a non-Debtor affiliate of LCPI, (i) entering into a commitment letter related to the

proposed restructuring of certain affiliates of Innkeepers USA Trust ("Innkeepers"), (ii)

supporting the chapter 11 plan of Innkeepers, and (iii) if necessary, participating in the auction

for certain of the assets of Innkeepers USA Trust, all as more fully described in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

---

[1] Any capitalized term used but not defined herein shall have the meaning ascribed to such term in the Motion.

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered June 17, 2010 governing case management and administrative procedures

[Docket No. 9635]; and the Court having found and determined that the relief sought in the

Motion is in the best interests of LCPI, its estate and creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that LCPI is authorized and empowered to consent to ALI's entry into

the Commitment Letter, the ALI/Five Mile Commitment, the Stalking Horse Bid and ancillary

and related documents and agreements and consummation of the transactions contemplated

thereby; and it is further

ORDERED that LCPI is authorized and empowered to consent to ALI executing,

delivering, implementing, and performing any and all obligations, instruments, documents and

papers, and to take any and all corporate and other actions that may be necessary or appropriate

to enter into the Commitment Letter, the Stalking Horse Bid, the ALI/Five Mile Commitment,

and all other related documents and agreements; and it is further

ORDERED that LCPI is authorized and empowered to consent to ALI (or its

affiliate designee) executing, delivering, implementing, and performing of any and all

obligations, instruments, documents and papers, and to take any and all corporate and other

actions that may be necessary or appropriate to consummate the transactions set forth in the

Commitment Letter, the ALI/Five Mile Commitment, the Stalking Horse Bid and all other

related documents or agreements, which include the conversion of the ALI Mortgage Loan into

up to 50% of the new equity in Innkeepers (the "New Equity"), and to take any and all

appropriate actions to enforce the provisions of the Commitment Letter, the Stalking Horse Bid

and all other related documents and agreements; and it is further

ORDERED that LCPI is authorized and empowered to consent to ALI entering

into the Escrow Agreement and to funding the Deposit as contemplated thereby; and it is further

ORDERED that LCPI is authorized and empowered to consent to ALI selling or

causing the sale of up to 20% of the New Equity, and entering into any documents and

agreements necessary to effectuate such sale, and consummating any transactions set forth

therein, but that such sale shall not be necessary for ALI to consummate the transaction set forth

in the Commitment Letter or the Stalking Horse Bid; and it is further

ORDERED that LCPI is authorized and empowered to consent to ALI

participating, if necessary, in the Auction for certain of the assets of Innkeepers USA Trust,

submitting an overbid for any or all of such assets, and modifying the terms of the Commitment

Letter, the ALI/Five Mile Commitment, the Stalking Horse Bid and any related documents or

agreements as necessary for ALI to participate in the Auction, subject to the authority granted by

the Lehman Board of Directors and the Official Committee of Unsecured Creditors, without

further approval from this Court; and it is further

ORDERED that LCPI is authorized and empowered to consent to ALI supporting

and voting in favor of the Innkeepers' chapter 11 plan that incorporates the transactions set forth

in the Commitment Letter, the ALI/Five Mile Commitment, and the Stalking Horse Bid, or such

documents as modified as a result of the Auction; or to take any and all appropriate actions with

respect to a plan that does not incorporate such a transaction; and it is further

ORDERED that if there is an Auction and the winning bidder is not ALI and Five Mile, LCPI is authorized and empowered to consent to ALI, in accordance with the Commitment Letter, supporting and voting in favor of any Innkeepers' chapter 11 plan that incorporates the winning bid; and it is further

ORDERED that the automatic stay in LCPI's chapter 11 case is modified to the extent necessary to permit Innkeepers, ALI (or its affiliate designee), and LCPI to take any or all of the actions permitted by the terms and conditions of the Commitment Letter, the ALI/Five Mile Commitment, the Stalking Horse Bid and all related documents and agreements; and it is further

ORDERED that nothing in the Motion or in this Order shall modify or amend any terms and conditions of the Commitment Letter, the ALI/Five Mile Commitment, the Stalking Horse Bid, or any related documents or agreements; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that Debtors are authorized to comply with each provision of the Commitment Letter, the ALI/Five Mile Commitment, and the Stalking Horse Bid; and it is further

ORDERED that nothing contained in the Motion or this Order shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits, or remedies of LCPI, or any of the Debtors or their non-debtor affiliates, that any of the Debtors or non-debtor affiliates may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including against each

other or third parties.  It is further ordered that the parties are authorized to execute such further

documentation necessary to reflect this reservation of rights; and it is further

Dated: April __, 2011
        New York, New York

_____

HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE