# Exhibit 1

**(Innkeepers' Bidding Procedures Order)**

US_ACTIVE:\43656178\13\58399.0008

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
|  | ) |  |
| Debtors. | ) | Jointly Administered |
|  | ) |  |

**ORDER (I) AUTHORIZING THE DEBTORS TO ENTER INTO
THE AMENDED COMMITMENT LETTER WITH FIVE MILE CAPITAL II
POOLING REIT LLC, LEHMAN ALI INC., AND MIDLAND LOAN SERVICES,
(II) APPROVING THE AMENDED NEW PARTY/MIDLAND COMMITMENT
BETWEEN THE DEBTORS AND MIDLAND LOAN SERVICES, (III) APPROVING
FIXED/FLOATING BIDDING PROCEDURES, (IV) APPROVING BID PROTECTIONS,
(V) AUTHORIZING AN EXPENSE REIMBURSEMENT TO "BIDDER D," AND (VI)
MODIFYING CASH COLLATERAL ORDER TO INCREASE EXPENSE RESERVE**

Upon the motion (the "**Motion**")[2] of the Debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), for the entry of an order (this "**Order**") (a) authorizing the Debtors to enter into the Amended Commitment Letter with Five Mile Capital II Pooling REIT LLC, Lehman ALI Inc. ("**Lehman**"), Midland Loan Services, a division of PNC Bank, National Association ("**Midland**"), and Apollo Investment Corporation, (b) approving the Amended New Party/Midland Commitment, (c) approving the Fixed/Floating Bidding Procedures, (d) approving Bid Protections, (e) authorizing an expense reimbursement to a bidder,

---

[1] The list of Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number can be found by visiting the Debtors' restructuring website at www.omnimgt.com/innkeepers or by contacting Omni Management Group, LLC at Innkeepers USA Trust c/o Omni Management Group, LLC, 16161 Ventura Boulevard, Suite C, PMB 606, Encino, California 91436. The location of the Debtors' corporate headquarters and the service address for their affiliates is: c/o Innkeepers USA, 340 Royal Poinciana Way, Suite 306, Palm Beach, Florida 33480.

[2] All capitalized terms used but otherwise not defined herein shall have the meanings set forth in the Motion, the Amended and Restated Binding Commitment Agreement Regarding the Acquisition and Restructuring of Certain Subsidiaries of Innkeepers USA Trust (together with the term sheet attached thereto the "**Amended Commitment Letter**"), attached hereto as **Exhibit A**, or the Bidding Procedures for the Fixed/Floating Debtors (the "**Fixed/Floating Bidding Procedures**"), attached hereto as **Exhibit B**, as applicable.

K&E 18542372

all as more fully set forth in the Motion, and (f) modifying the Final Cash Collateral Order to increase the expense reserve contemplated therein from $4.5 million to $16.5 million; and upon the Reply;[3] and upon the Derrough Declarations;[4] and upon the Beilinson Declaration;[5] and upon the Ruisi Declaration;[6] and the Official Committee of Unsecured Creditors in these Chapter 11 cases (the "**Committee**"), on the record at the hearing on the Motion, having committed to support the Fixed/Floating Bidding Procedures, the Amended Commitment Letter, and the transactions contemplated thereunder; and the Committee having stated on the record at the hearing that it will prepare a letter in support of the Fixed/Floating Plan and the treatment provided to unsecured creditors thereunder to be included in the solicitation materials for the Fixed/Floating Plan; and thereunder in the solicitation materials for the Fixed/Floating Plan, and, the Committee, in contemplation of the prosecution by the Debtors of the Fixed/Floating Plan containing the treatment of general unsecured claims set forth in the Amended Commitment Letter, having stated on the record its agreement not to seek standing to pursue or otherwise pursue any litigation, including any litigation against either Lehman or Special Servicer,[7] on account of any pre-petition transaction relating to the Fixed/Floating Debtors until the date on which the Amended Commitment Letter is terminated; and it appearing that the relief requested

---

[3] *Debtors' Omnibus Reply in Support of Stalking Horse Motion* [Docket No. 986] (the "**Reply**").

[4] *Declaration of William Q. Derrough in Support of the Motion* [Docket No. 821] (the "**Derrough Declaration**"), the *Supplemental Declaration of William Q. Derrough in Support of the Motion* [Docket No. 916] (the "**Supplemental Derrough Declaration**"), the *Second Supplemental Declaration of William Q. Derrough in Support of the Motion* [Docket No. 987] (the "**Second Supplemental Derrough Declaration**" and, together with the Derrough Declaration and the Supplemental Derrough Declaration, the "**Derrough Declarations**").

[5] *Declaration of Marc Beilinson in Support of the Motion* [Docket No. 988] (the "**Beilinson Declaration**").

[6] *Declaration of Lawrence J. Ruisi in Support of the Motion* [Docket No. 989] (the "**Ruisi Declaration**").

[7] Including actions against the LB-UBS Commercial Mortgage Trust 2007-C6 or to challenge the Fixed Rate Mortgage Loan or liens granted to secure the same.

2

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); venue being proper before this court pursuant to 28 U.S.C. §§ 1408 and 1409; notice of the Motion having been adequate and appropriate under the circumstances; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted to the extent provided herein.

2. The Amended Commitment Letter, as modified by paragraph 13 below, is hereby approved and binding on the Debtors.

3. The Debtors are hereby authorized to execute, deliver, implement, and to take any and all actions necessary and proper to implement the Amended Commitment Letter, attached hereto as **Exhibit 1**.

4. The Fixed/Floating Bidding Procedures, attached hereto as **Exhibit 2**, are hereby approved, and the Debtors are authorized to solicit bids and conduct a Fixed/Floating Auction as set forth in the Fixed/Floating Bidding Procedures.

5. The Debtors are authorized to enter into that certain New Party/Midland Commitment, by and between the Debtors and Midland, dated as of March 9, 2011, as amended (the "**Amended New Party/Midland Commitment**"), a copy of which is attached hereto as **Exhibit 3**.

6. The Debtors are authorized to conduct the Fixed/Floating Auction as set forth in the Fixed/Floating Bidding Procedures.

3

7.      April 25, 2011 at 5:00 p.m. (prevailing Eastern Time) shall be the deadline (the "**Bid Deadline**") for the submission of competing bids in accordance with the terms described in the Fixed/Floating Bidding Procedures.

8.      Notwithstanding anything to the contrary in this Order, the Amended Commitment Letter and Term Sheet attached as Exhibit B thereto (the "**Amended Term Sheet**"), Motion, Reply, or Fixed/Floating Bidding Procedures, to be deemed a Qualified Bid (as defined in the Fixed/Floating Bidding Procedures) and qualify to participate in the Fixed/Floating Auction, (a) the equity consideration of each Bid and Overbid (each as defined in the Fixed/Floating Bidding Procedures) must have a value of at least $356.2 million (comprised of the $348.2 million equity value of the Five Mile/Lehman Bid, as modified, and $8 million on account of the Initial Minimum Overbid (as defined in the Fixed/Floating Bidding Procedures)) to be used for, among other things, the following on the effective date of the Fixed/Floating Debtors' chapter 11 plan of reorganization (the "**Fixed/Floating Plan**"): (i) $46.6 million in cash to satisfy claims on account of the Five Mile DIP; (ii) $17.5 million in cash to satisfy claims on account of the Lehman DIP; (iii) at least $22.8 million in cash to fund future property improvement plan work and furniture, fixtures, and equipment reserves; (iv) at least $10 million in cash to pay all administrative and other claims and expenses not paid pursuant to the Final Cash Collateral Order that are necessary for the Fixed/Floating Debtors to emerge from bankruptcy; (v) at least $41.6 million in cash for the reorganized Debtors; (vi) with respect only to Qualified Bids other than the Five Mile/Lehman Bid, as modified, at least $200.3 million in cash to pay Lehman's claims against the Debtors (plus any applicable Overbid Allocation (as defined in the Fixed/Floating Bidding Procedures)); and (vii) to the extent the Bid is submitted by a Competing Bidder (as defined in the Fixed/Floating Bidding Procedures), $3.0 million in

4

K&E 18542372

cash to satisfy the up to $3.0 million Expense Reimbursement provided for under the Amended Commitment Letter, and (b) a Bid that includes the Midland Financing (as defined in the Fixed/Floating Bidding Procedures) shall not result in a Bid employing a debt-to-capitalization ratio for the reorganized enterprise that exceeds 70 %.

9. The Successful Bidder (as defined in the Fixed/Floating Bidding Procedures) shall be required to fund all unpaid allowed administrative expenses of the Fixed/Floating Debtors' estates that accrue on or before the Effective Date of the Fixed/Floating Plan that encompasses the Successful Bid.

10. All Bids and Overbids, to be deemed a Qualified Bid and whether made prior to or at the Fixed/Floating Auction, must be made for all of the Fixed/Floating Debtors and must either (a) be comprised entirely of cash or (b) based on the debt and capital structure and sources and uses of funds in the Amended Commitment Letter and Amended Term Sheet, on terms substantially similar to the terms provided in the Amended Term Sheet (including, but not limited to, the guarantees provided to Midland and the other terms, conditions, and treatment as set forth in the Amended Commitment Letter and the treatment of claims as set forth in the Amended Term Sheet).

11. In the event that the application of the Overbid Allocation would cause any prepetition creditor's recovery to exceed such creditor's allowed claim, then such amount will be capped by the amount of the allowed claim and any excess Overbid Allocation will be allocated through and in accordance with the corporate and debt and equity structure of the Fixed/Floating Debtors for purposes of determining the ultimate recipient of such overbid value.

12. To the extent that the Amended Commitment Letter has not terminated as a result of a Plan Sponsor Breach (as defined in the Amended Commitment Letter), Five Mile/Lehman

5

K&E 18542372

shall receive reimbursement of all of Five Mile's reasonable fees and expenses not to exceed $3 million (the "**Expense Reimbursement**") in the event of (a) an Overbid in which the Five Mile/Lehman Bid, as modified, is not the Successful Bid or (b) the Debtors' execution of an agreement to pursue an alternative restructuring transaction for any of the Fixed/Floating Debtors' assets (an "**Alternative Transaction**") after entry of this Order.  The Expense Reimbursement, if any, shall be payable by the Debtors upon the earlier of (a) the effective date of the Fixed/Floating Plan and (b) consummation of an Alternative Transaction.

13. Notwithstanding anything to the contrary in this Order, the Amended Commitment Letter, the Amended Term Sheet, or any other document previously filed with the Court, Five Mile/Lehman shall not be entitled to a break-up fee under any circumstances in connection with the Five Mile/Lehman Bid.

14. The determination of the Successful Bidder at the Fixed/Floating Auction shall be made by the Debtors only after consulting with Midland relating to the Bids made at the Fixed/Floating Auction.

15. All rights with respect to a creditor's ability to credit bid under both applicable nonbankruptcy and bankruptcy law are expressly reserved to the extent that (a) the auction process requiring Qualified Bids as defined above in the Fixed/Floating Bidding Procedures is terminated or abandoned, (b) Midland is no longer obligated to support the Amended Term Sheet or the Amended Midland/New Party Commitment, (c) Lehman terminates the Amended Commitment Letter, (d) the Fixed/Floating Plan or the plan of reorganization that encompasses the Successful Bid is not confirmed, or (e) the effective date for the Fixed/Floating Plan shall not have occurred by the Outside Date (as defined in the Amended Term Sheet).

K&E 18542372

16. To the extent Bidder D is not the Successful Bidder at the Fixed/Floating Auction, the Debtors are authorized to pay the Bidder D Expense Reimbursement at the conclusion of the Fixed/Floating Auction in an amount not to exceed $500,000 of reasonable and documented fees incurred by Bidder D prior to December 15, 2010.

17. The transaction contemplated by the Amended Commitment Letter shall not be conditioned on any holder of Innkeepers USA Trust 8.0% Series C Cumulative Preferred Shares, in such capacity, releasing claims or interests against any person or entity.

18. The Ad Hoc Committee's rights to object on any ground to the Fixed/Floating Plan, the disclosure statement related thereto, and the transaction contemplated therein (including any transition or separation agreement), are hereby reserved to the extent not resolved or otherwise rendered moot by this Order (with respect to issues relating to the Fixed/Floating Bidding Procedures or Bid Protections), as are the Debtors' rights to respond or otherwise defend against such objections (including the Debtors' ability to object to any entities' standing to raise such objections).

19. Marriott International, Inc., as franchisor ("**Marriott**"), is a party to various franchise agreements with certain of the Debtors for the operation of forty-three hotels under brands owned by Marriott (the "**Marriott Franchise Agreements**"), and various owner agreements in connection with each of the Marriott Franchise Agreements (the "**Owner Agreements**"). Subject to the Marriott Adequate Assurance Agreement, and applicable law, Marriott reserves all of its rights under the Marriott Franchise Agreements and Owner Agreements, including, among other things, (i) its right to consent, condition, restrict, or withhold consent to transfers of the Marriott Franchise Agreements or direct or indirect ownership interests in franchisees, in accordance with the terms of the Marriott Franchise

7

Agreements and Owner Agreements; (ii) its right to restrict Transfers to a Competitor (as each such term is defined in the respective Marriott Franchise Agreement) in accordance with the terms of the Marriott Franchise Agreements and Owner Agreements; and (iii) that any replacement operator of the Marriott branded hotels is subject to the prior written approval of Marriott in accordance with the terms of the Marriott Franchise Agreements and the Debtors reserve all of their rights with respect to any such rights of Marriott.

20. Nothing in the Amended Commitment Letter shall affect the rights, claims, and interests of the Excluded Debtors and their respective creditors.

21. In the event of any inconsistencies between this Order and the Motion, the Fixed/Floating Bidding Procedures, the Amended Commitment Letter, or the Amended Term Sheet, this Order shall govern in all respects.

22. The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

23. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

24. The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

25. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

New York, New York  
Dated: March 11, 2011

                                        /S/ Shelley C. Chapman  
                                        United States Bankruptcy Judge

K&E 18542372