# **EXHIBIT 2**

**Fixed/Floating Bidding Procedures**

K&E 18542372

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| INNKEEPERS USA TRUST, *et al.*,[1] | ) | Case No. 10-13800 (SCC) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

**BIDDING PROCEDURES FOR THE FIXED/FLOATING DEBTORS**

      On March 11, 2011, the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") entered the *Order (I) Authorizing the Debtors to Enter into the Commitment Letter with Five Mile Capital II Pooling REIT LLC, Lehman ALI Inc., and Midland Loan Services, (II) Approving Bidding Procedures, (III) Approving Bid Protections*, *(IV) Authorizing an Expense Reimbursement for "Bidder D," and (V) Modifying Cash Collateral Order to Increase Expense Reserve* [Docket No. __] (the "**Bidding Procedures Order**").

**Five Mile/Lehman Bid for the Fixed/Floating Debtors**

      The Bidding Procedures Order authorized Innkeepers USA Trust and certain of its affiliates, as debtors and debtors in possession (collectively, the "**Debtors**"), to execute the commitment letter attached hereto as **Exhibit A** (with the "**Term Sheet**" annexed thereto, the "**Commitment Letter**") between certain of the Debtors, Five Mile Capital II Pooling REIT LLC ("**Five Mile**"), Lehman ALI Inc. ("**Lehman**" and, together with Five Mile, "**Five Mile/Lehman**"), Midland Loan Services, a division of PNC Bank, National Association, as special servicer for the Debtors' fixed rate mortgage loan ("**Midland**"), and Apollo Investment Corporation.[2] Pursuant to the Commitment Letter, Five Mile/Lehman has agreed to provide equity capital and to convert debt to equity through a chapter 11 plan of reorganization for the Fixed/Floating Debtors (as defined below) consistent with the terms set forth in the Commitment Letter (the "**Five Mile/Lehman Bid**"). Midland and Lehman have agreed and consented to the treatment of their claims against the Debtors as set forth in the Five Mile/Lehman Bid.

      The Five Mile/Lehman Bid contemplates an enterprise transaction involving the debtors identified in Exhibit A to the Commitment Letter (the "**Fixed/Floating Debtors**") and is valued

---

[1] The list of Debtors in these Chapter 11 Cases along with the last four digits of each Debtor's federal tax identification number can be found by visiting the Debtors' restructuring website at www.omnimgt.com/innkeepers or by contacting Omni Management Group, LLC at Innkeepers USA Trust c/o Omni Management Group, LLC, 16161 Ventura Boulevard, Suite C, PMB 606, Encino, California 91436. The location of the Debtors' corporate headquarters and the service address for their affiliates is: c/o Innkeepers USA, 340 Royal Poinciana Way, Suite 306, Palm Beach, Florida 33480.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings set forth in the Commitment Letter.

at $970.7 million.[3]  The Five Mile/Lehman Bid is comprised of a capital structure that includes approximately $622.5 million of debt financing and approximately $348.2 million of equity.  The $622.5 million consists of a new principal amount owing under the Fixed Rate Mortgage Loan, which has been reduced from the prepetition balance of $825.4 million.  The Fixed Rate Mortgage Loan will include, among other things, no change to the interest rate, no amortization for the first 48 months after the effective date, and no prepayment penalty.  (See "Midland Financing" defined below).

The Debtors continue to solicit higher or otherwise better proposals for the sponsorship and funding of the Debtors' chapter 11 plans of reorganization ("**Bids**," and entities that submit such Bids, "**Competing Bidders**").  In connection therewith, Five Mile/Lehman, and Midland have agreed to subject the Five Mile/Lehman Bid to a formal auction process (the "**Fixed/Floating Auction**").  Competing Bids that include the Fixed/Floating Debtors must be Qualified Bids (as defined below) to participate in the Fixed/Floating Auction.

The Five Mile/Lehman Bid is subject to an initial overbid of $8 million in cash, which would increase the minimum enterprise bid to $978.7 million.  In addition, Midland has agreed to make the debt financing for its debt that is included in the Five Mile/Lehman Bid (together with all of the terms and conditions described in the Five Mile/Lehman Bid regarding the treatment of Midland's claim including the guarantees described therein, the "**Midland Financing**") available to Competing Bidders to the extent such Bids are Qualified Bids (as defined herein) and conform to the relevant terms in the Commitment Letter (see section 4(b)(ii) herein).  Specifically, Midland has agreed to make the Midland Financing available to Competing Bidders so long as a Competing Bidder's Bid is (a) a Qualified Bid, (b) meets all of the requirements of these Bid Procedures and the terms of the Commitment Letter, including the treatment of Midland's and Lehman's debt, and (c) the Competing Bidder assumes, and otherwise agrees to be bound by, all of the provisions of the Midland Financing.

The Five Mile/Lehman Bid and any other Qualified Bids must provide at least $356.2 million in equity value (comprised of the $348.2 million equity value of the Five Mile/Lehman Bid and $8 million on account of the Initial Minimum Overbid) to be used for, among other things, the following on the effective date of the Fixed/Floating Debtors' chapter 11 plan of reorganization: (a) $46.6 million in cash to satisfy claims on account of the Five Mile DIP; (b) $17.5 million in cash to satisfy claims on account of the Lehman DIP; (c) at least $22.8 million in cash to fund future property improvement plan work and furniture, fixtures, and equipment reserves; (d) at least $10 million in cash to pay all administrative and other claims and expenses not paid pursuant to the Final Cash Collateral Order that are necessary for the Fixed/Floating Debtors to emerge from bankruptcy;[4] (e) at least $41.6 million in cash for the reorganized Fixed/Floating Debtors; (f) with respect only to Qualified Bids other than the Five Mile/Lehman Bid, at least $200.3 million in cash to pay Lehman's claims against the Debtors

---

[3]  A list of the Fixed/Floating Debtors is attached as Exhibit A to the Commitment Letter.

[4]  For the avoidance of doubt, to the extent the Fixed/Floating Debtors incur administrative expense claims in excess of the $10 million estimate, the Successful Bidder (as defined below) shall be required to fund such amounts.

(plus any applicable Overbid Allocation (as defined below)); and (g) to the extent the Bid is submitted by a Competing Bidder, $3 million in cash to satisfy the up to $3.0 million Expense Reimbursement provided for under the Commitment Letter.

Competing Bidders are not required to use the Midland Financing and are invited to make an all-cash Bid (using cash and/or providing their own financing). To illustrate, an all-cash Bid would require a minimum of $978.7 million in cash whereas a Bid that uses the Midland Financing would require a minimum of $356.2 million in cash and $622.5 million in debt. In evaluating the Bids, the Debtors will, consistent with the exercise of their fiduciary duties, take into account execution risks, costs, delay, litigation, and creditor preferences.

### The General Bidding Process

Even though the Five Mile/Lehman Bid only encompasses the Fixed/Floating Debtors, the Company continues to welcome Bids for all of the Debtors on an enterprise-level basis, for subsets thereof, or for individual properties. Pursuant to the Bidding Procedures Order, the Bankruptcy Court also approved the following procedures (the "**Bidding Procedures**"), pursuant to which the Debtors will continue to solicit such Bids, including Qualified Bids, from Competing Bidders. The Debtors have designed the Bidding Procedures to maximize the value of the Debtors' enterprise for the benefit of their constituents and their estates.

1. **Diligence Protocol**

The Bankruptcy Court has approved the following diligence protocol (the "**Diligence Protocol**"), which consists of clearly defined triggering events that provide for successively greater access to the Debtors' confidential information, advisors, and members of management:

(a) *Level One*: Any entity interested in submitting a Bid shall be granted access (to the extent access has not already been granted) to a virtual data room containing confidential financial and operational materials, *provided* that such entity (i) executes a confidentiality agreement in a form acceptable to the Debtors and (ii) provides sufficient information to the Debtors demonstrating the entity's wherewithal to consummate a restructuring transaction.

(b) *Level Two*: If an entity that is granted access as described in "Level One" of the Diligence Protocol provides a term sheet to the Debtors on or before April 11, 2011 that demonstrates such entity's ability and willingness to submit a Bid that is higher or otherwise better than the Five Mile/Lehman Bid, including, without limitation, a non-enterprise-level restructuring transaction, the Debtors shall (i) accommodate such entity's reasonable requests to conduct on-site visits and meet with members of management (subject to management's reasonable availability); and (ii) respond timely (under the circumstances) to such entity's reasonable diligence requests.

All due diligence requests by the interested parties shall be directed to Moelis & Company LLC, Attn.: William Derrough (william.derrough@moelis.com, 212-883-3830) and

Zul Jamal (zul.jamal@moelis.com, 212-883-3813), 399 Park Avenue, 5th Floor, New York, New York 10022.

The Bankruptcy Court shall have jurisdiction over any dispute that may arise with respect to the implementation of this Diligence Protocol.

By submitting a Bid, each Competing Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct due diligence on the Debtors prior to making its Bid; that it has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the assets in making its Bid; and that it did not rely upon any written or oral statement, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Debtors, or the completeness of any information provided in connection therewith.

## 2. Bidding Procedures

Each Bid must be submitted in writing and determined by the Debtors to have satisfied the following conditions (collectively, the "**Bid Conditions**"):

(a) *Bid Deadline*: A Bid must be transmitted via e-mail (in .pdf or similar format) to: (i) the Debtors, Attn.: Marc Beilinson (mbeilinson@beilinsonpartners.com) and Mark Murphy (mmurphy@innkeepersusa.com); (ii) Moelis & Company LLC, the Debtors' financial advisors, Attn.: William Derrough (william.derrough@moelis.com) and Zul Jamal (zul.jamal@moelis.com); and (iii) Kirkland & Ellis LLP, the Debtors' restructuring counsel, Attn.: Paul M. Basta (paul.basta@kirkland.com) and Anup Sathy P.C. (anup.sathy@kirkland.com), so as to be **actually received** on or before **April 25, 2011 at 5:00 p.m.** (prevailing Eastern Time) (the "**Bid Deadline**").

(b) *Bid Contents*: Each Bid must contain evidence of sufficient cash and/or committed financing (if applicable), as well as the pro forma ownership and structure of the acquired entity or entities subject to such Bid. In the event that the Bid is an all-cash Bid, it must also contain the Competing Bidder's proposed pro forma capitalization.

(c) *Deposit*: Each Bid must be accompanied by a cash deposit in the amount of 10% of the implied value for the reorganized entity or entities contemplated in such Bid (but in no event greater than $20 million) (the "**Deposit**"), to an interest bearing escrow account to be identified, established, and held by and in the name of the Debtors. Additional terms and provisions regarding the Deposits are set forth in Section 8 below.

(d) *Binding and Irrevocable*: The submission of a Bid and a Deposit by the Bid Deadline shall constitute a binding and irrevocable offer and any Bid shall not be subject to, and shall state that it is not subject to, financing, diligence, approvals (other than Bankruptcy Court approval), or other conditions not set forth in the Commitment Letter. A Bid shall be irrevocable until and unless the Debtors

4

accept a higher or otherwise better Qualified Bid and the Competing Bidder is not selected as the Backup Bidder (as defined herein).

(e) *Investment Documents*: Each Bid must include an executed copy of any and all transaction documents necessary to effectuate the restructuring transactions contemplated in the Bid (the "**Investment Documents**"), a marked copy of the Commitment Letter and Term Sheet that reflects all changes proposed by the Competing Bidder, and all other material documents integral to such Bid.

(f) *Committed Financing*: If applicable, the Bid must include committed financing documented to the Debtors' reasonable satisfaction that demonstrates the Competing Bidder has (i) received sufficient debt (to the extent of an all-cash Bid) and/or equity funding commitments and (ii) adequate working capital financing or resources to finance going concern operations and the proposed restructuring transactions (to the extent of an all-cash Bid). With respect to any equity financing commitments applicable to such Bid, such equity financing commitments shall not (x) contain any conditions or contingencies that are not contained in the Commitment Letter or (y) contain any conditions or contingencies that are more conditional or otherwise beneficial to the provider of the financing than the corresponding condition or contingency contained in the Commitment Letter.

(g) *Identity*: All Bids must fully disclose the identity, contact information, and a description of the financial position and hospitality industry experience of each entity that will be bidding or otherwise participating in connection with such Bid (including any equity holder or other financial backer if the Competing Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by the Bid) and the complete terms of any such participation. Under no circumstances shall any undisclosed principals be associated with any Bid. All Bids must also include contact information for the specific person(s) whom Moelis & Company LLC or Kirkland & Ellis LLP should contact regarding the Bid.

(h) *Contingencies - No Financing or Diligence Outs*: A Bid may include covenants and conditions reasonably acceptable to the Debtors, but under no circumstances shall a Bid be conditioned on the obtaining or the sufficiency of financing or any internal or credit committee approval, syndication requirements, or on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome to the Debtors' estate than those set forth in the Commitment Letter.

(i) *Demonstrated Financial Capacity*: A Competing Bidder must demonstrate to the Debtors' satisfaction the necessary financial capacity to consummate the proposed transactions required by its Bid.

(j) *No Fees and Expenses*: With the exception of Five Mile/Lehman's Expense Reimbursement, no Bid shall contain a right to request or entitlement to any commitment payment, break-up fee, expense reimbursement, or similar type of payment. Each Competing Bidder (other than Five Mile/Lehman, to the extent approved by the Bankruptcy Court) shall bear its own fees and expenses (including those of its advisors) in connection with the proposed transaction. By submitting a Bid, a Competing Bidder shall be deemed to waive the right to assert or seek payment of any administrative expense claim, including a substantial contribution claim under section 503 of the Bankruptcy Code, with respect to its Bid or the marketing or auction process.

(k) *Authorization*: Bids must contain evidence that the Competing Bidder has obtained all necessary internal authorization or approval, including from its Board of Directors (or comparable governing body), with respect to the submission, execution, delivery, and closing of its Bid and transactions contemplated thereby.

(l) *Consent to Jurisdiction*: Each Competing Bidder must submit to the jurisdiction of the Bankruptcy Court and waive any right to a jury trial in connection with any disputes relating to Debtors' qualification of Bids, the Fixed/Floating Auction, the construction and enforcement of these Bidding Procedures, and/or the Investment Documents, as applicable.

**3.    Bid Review**

(a) *Communications with Competing Bidders*. The Debtors will communicate with Competing Bidders as follows:

(i) Prior to the Bid Deadline, the Debtors' advisors will communicate with all potential Competing Bidders in accordance with the Diligence Protocol and will take reasonable efforts, in the Debtors' judgment, to facilitate the submission of Bids.

(ii) After the Bid Deadline, the Debtors will review those Bids timely submitted and engage in negotiations with entities that submitted Bids satisfying the Bid Conditions and as they deem appropriate, based upon the Debtors' evaluation of the content of each Bid as well as other considerations. In evaluating the Bids, the Debtors will take into consideration, among other factors, the form of consideration, the feasibility of the proposed capital structure for the entity or entities subject to the Bid, the value and certainty of recovery provided to constituencies, the confirmability of the chapter 11 plan contemplated by the Bid, the transaction structure and execution risk, including conditions to closing, availability of financing, and financial wherewithal to meet all commitments under the Bid, approvals required, and the Competing Bidder's ability to manage the Debtors' business.

6

(b) *Sharing of Bids and Related Information*: Throughout the marketing process and at any time up to or during the Fixed/Floating Auction, the Debtors will share information regarding Bids with interested constituencies and third party potential financing sources (i) as required by the Commitment Letter and (ii) to other parties to the extent the Debtors deem appropriate in their sole discretion, *provided* that the Debtors shall promptly provide Midland with copies of any Bids that include the Fixed/Floating Debtors and *provided further* that the Debtors shall not share any information regarding the Bids with any party that has submitted a Bid, except as provided in Section 4 of these Bidding Procedures.

(c) *Qualification of Bids For the Fixed/Floating Debtors*:

   (i)  The Debtors (in consultation with Midland and the Creditors' Committee and in accordance with the Commitment Letter) shall determine if any Competing Bidder has submitted a Bid that qualifies to participate in the Fixed/Floating Auction (each such party, a "**Qualified Bidder**" and a "**Qualified Bid**," respectively).

   (ii) To be deemed a Qualified Bid and qualify to participate in the Fixed/Floating Auction, all Bids and Overbids (as defined below) must satisfy the Bid Conditions set forth in section 2 and meet the following additional requirements:

   (A) *Fixed/Floating Debtor Bid.* To be deemed a Qualified Bid, the Bid must be made for all of the Fixed/Floating Debtors and must either be (a) comprised entirely of cash or (b) based on the debt and capital structure and sources and uses of funds in the Commitment Letter and Term Sheet, on terms substantially similar to the terms provided in the Term Sheet (including, but not limited to, the guarantees provided to Midland and the other terms, conditions, and treatment as set forth in the Commitment Letter and the treatment of claims as set forth in the Term Sheet).

   (B) *Initial Minimum Overbid*: To be deemed a Qualified Bid, the aggregate consideration proposed by the Bid must have a minimum value of $978.7 million.

   (C) *No Credit Bids*: A Bid submitted by a holder of secured claims against the Fixed/Floating Debtors shall not be deemed a Qualified Bid if the Bid contemplates the ability of secured creditors to credit bid their claims against the Fixed/Floating Debtors within the meaning of sections 363(k) or 1129(b)(2)(A)(ii) of the Bankruptcy Code.[5]

---

[5] All rights with respect to a creditor's ability to credit bid under both applicable nonbankruptcy and bankruptcy law are expressly reserved to the extent that (a) the auction process requiring Qualified Bids as defined above in

7

      (D)    *Cash Requirements*:  To be deemed a Qualified Bid, the equity consideration of such Bid must have a value of at least $356.2 million (comprised of the $348.2 million equity value of the Five Mile/Lehman Bid and $8 million on account of the Initial Minimum Overbid) to be used for, among other things, the following on the effective date of the Fixed/Floating Debtors' chapter 11 plan of reorganization: (a) $46.6 million in cash to satisfy claims on account of the Five Mile DIP; (b) $17.5 million in cash to satisfy claims on account of the Lehman DIP; (c) at least $22.8 million in cash to fund future property improvement plan work and furniture, fixtures, and equipment reserves; (d) at least $10 million in cash to pay all administrative and other claims and expenses not paid pursuant to the Final Cash Collateral Order that are necessary for the Fixed/Floating Debtors to emerge from bankruptcy;[6] (e) at least $41.6 million in cash for the reorganized Debtors; (f) with respect only to Qualified Bids other than the Five Mile/Lehman Bid, at least $200.3 million in cash to pay Lehman's claims against the Debtors (plus any applicable Overbid Allocation); and (g) to the extent the Bid is submitted by a Competing Bidder, $3.0 million in cash to satisfy the up to $3.0 million Expense Reimbursement provided for under the Commitment Letter.

      (E)    *Financial Assumptions*:  To be considered a Qualified Bidder, each Bidder that intends to use the Midland Financing must provide to the Debtors and Midland information with respect to any differences that may exist between the assumptions that underlie the Debtors' business plan with respect to the Fixed/Floating Debtors (a copy of which will be provided to Bidders in connection with the diligence protocol described above) and the assumptions that underlie such Bidder's Bid, including, without limitation, differences with respect to working capital and capital expenditure requirements.

   (iii)    The Debtors reserve the right to reject any Bid if the Debtors determine (after consultation with Midland and the Creditors' Committee) that such

---

these Bidding Procedures is terminated or abandoned, (b) Midland is no longer obligated to support the Term Sheet or that certain Amended New Party/Midland Commitment, by and between the Debtors and Midland, dated as of March 9, 2011, a copy of which is attached to the Bidding Procedures Order as **Exhibit 3**, (c) Lehman terminates the Commitment Letter, (d) the plan of reorganization that encompasses the provisions of the Five Mile/Lehman Bid or the winning Bid through the auction process described in (a) is not confirmed, or (e) Effective Date shall not have occurred by the Outside Date (as defined in the Term Sheet).

[6]    For the avoidance of doubt, to the extent the Fixed/Floating Debtors incur administrative expense claims in excess of the $10 million estimate, the Successful Bidder (as defined below) shall be required to fund such amounts.

8

K&E 18505047

      Bid does not constitute a Qualified Bid, is otherwise inadequate or insufficient, or is otherwise contrary to the best interests of the Fixed/Floating Debtors in the Debtors' judgment.

    (iv) Notwithstanding anything to the contrary in these Bidding Procedures, Five Mile/Lehman is deemed a Qualified Bidder, and the Commitment Letter shall be deemed a Qualified Bid for all applicable purposes under these Bidding Procedures with respect to the Fixed/Floating Auction and otherwise.

  (d) *Modifications of Qualified Bids Prior to Fixed/Floating Auction*: Between the date that the Debtors notify a Competing Bidder that it is a Qualified Bidder and the Fixed/Floating Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified herein; *provided*, that any Qualified Bid may be improved at the Fixed/Floating Auction as set forth herein. Any improved Qualified Bid must comply with the requirements for Qualified Bids herein.

 **4.** **Fixed/Floating Auction**

If one or more Qualified Bids (in addition to the Five Mile/Lehman Bid) are received by the Bid Deadline, the Debtors shall conduct the Fixed/Floating Auction to determine the Successful Bidder. If no Qualified Bids (other than the Five Mile/Lehman Bid) are received by the Bid Deadline, the Debtors shall not conduct the Fixed/Floating Auction and shall designate the Five Mile/Lehman Bid as the Successful Bid for the Fixed/Floating Debtors for the purposes of these Bidding Procedures.

Two days before the start of the Fixed/Floating Auction, the Debtors will notify all Qualified Bidders of the then highest or otherwise best Qualified Bid, as determined in the Debtors' sole discretion (the "**Baseline Bid**"), and provide copies of the Baseline Bid to all Qualified Bidders. The Baseline Bid shall be the initial overbid at the Fixed/Floating Auction.

The Fixed/Floating Auction shall take place at 10:00 a.m. (prevailing Eastern Time) on May 2, 2011, at the offices of the Debtors' counsel, Kirkland & Ellis LLP, at 601 Lexington Avenue, New York, New York 10022, or such later date and time as scheduled by the Debtors in consultation with Qualified Bidders, Midland, and the Creditors' Committee. The Fixed/Floating Auction shall be conducted in a timely fashion according to the following procedures:

  (a) *The Debtors Shall Conduct the Fixed/Floating Auction*.

The Debtors and their advisors shall direct and preside over the Fixed/Floating Auction in accordance with the following procedures:

9

    (i)    only Qualified Bidders and their legal and financial advisors shall be entitled to bid at the Fixed/Floating Auction;

    (ii)    the Qualified Bidders, including Five Mile/Lehman, shall appear in person and through duly-authorized representatives at the Fixed/Floating Auction;

    (iii)    such authorized representatives of each of the Debtors, Qualified Bidders, Five Mile/Lehman, Midland, LNR Partners, LLC, TriMont Real Estate Advisors, Inc., C-III Asset Management, LLC, CWCapital Asset Management, LLC, SASCO 2008-C2, LLC, the Creditors' Committee, and the Ad Hoc Committee, and each of their respective counsel and financial advisors, shall be permitted to attend the Fixed/Floating Auction; and

    (iv)    such other procedures as may be announced by the Debtor from time to time at the Fixed/Floating Auction (after consultation with Midland and the Creditors' Committee).

  (b)    *Terms of Overbids*

An "**Overbid**" is any bid made at the Fixed/Floating Auction subsequent to the Debtors' announcement of the Baseline Bid. To submit an Overbid for purposes of this Fixed/Floating Auction, a Qualified Bidder must comply with the following conditions:

    (i)    <u>Minimum Overbid Increment</u>

Any Overbid after the Initial Minimum Overbid shall be made in increments (each, an "**Overbid Increment**") of value of at least $5.0 million (the "**Minimum Overbid Increment**") and shall otherwise remain a Qualified Bid. Any Overbid can be comprised of cash or a combination of cash and additional debt, if it utilizes the Midland Financing.

    (ii)    <u>Midland Financing Availability</u>

As described above, Midland has agreed to make the Midland Financing available to Competing Bidders that submit Qualified Bids subject to the terms and conditions outlined in the Commitment Letter and Term Sheet. The Midland Financing shall be no more than $622.5 million plus 70% of the Overbid amount (minus $8 million); <u>provided</u>, <u>however</u>, that the debt-capitalization ratio of the Fixed/Floating Debtors shall never exceed 70%.

In valuing an Overbid that utilizes incremental financing provided by Midland (in addition to the Midland Financing), the Debtors shall apply an 8% discount rate to any debt in excess of $622.5 million that Midland would receive pursuant to the Overbid (the mechanics of such valuation to be agreed upon between Five Mile/Lehman, Midland, and the Debtors).

For example, if a Qualified Bidder using the Midland Financing increases its Overbid at the Fixed/Floating Auction by the Minimum Overbid Increment, the Overbid

10

Increment can be comprised of additional cash or a combination of additional cash and debt. If the Overbid Increment consists solely of cash, the Overbid Increment shall be valued at its dollar value. If the Overbid Increment consists of a combination of debt and cash, the Overbid Increment shall not consist of more than 70% debt. In valuing the Overbid Increment, the Debtors will apply the 8% discount rate for the additional debt allocated to Midland. As a result, the Minimum Overbid Increment for a Bidder that uses the Midland Financing and adds debt as part of its Overbid will consist of $3.6 million of incremental debt and $1.6 million of incremental cash for a total overbid face amount of $5.2 million.[7] Likewise, if the Bidder would prefer to increase its Overbid using an Overbid Increment with a dollar value of $10 million, the Overbid Increment shall consist of $7.2 million of incremental debt and $3.1 million of incremental cash for a total overbid face amount of $10.4 million.[8]

        (iii)    <u>Allocation of Overbids</u>

The Debtors, Five Mile/Lehman, and Midland have agreed that the percentage increase in implied enterprise value as the result of any Overbid shall be allocated to creditors of the Fixed/Floating Debtors' estates in accordance with the "Overbid Allocation" provision of the Term Sheet.

In the event that the application of the Overbid Allocation would cause any prepetition creditor's recovery to exceed such creditor's allowed claim, then such amount will be capped by the amount of the allowed claim and any excess Overbid Allocation will be allocated through and in accordance with the corporate and debt and equity structure of the Fixed/Floating Debtors for purposes of determining the ultimate recipient of such overbid value.

For illustrative purposes, a model assuming a $110 million Overbid is attached hereto as Exhibit A.

        (iv)    <u>Alterations to Baseline Bid</u>

An Overbid shall comply with the terms of these Bidding Procedures and at all times satisfy each of the Bid Conditions set forth above.

Any Overbid shall remain open and binding on the Qualified Bidder until and unless (1) the Debtors accept a higher Qualified Bid as an Overbid and (2) such Overbid is not selected as the Backup Bid.

To the extent not previously provided, a Qualified Bidder submitting an Overbid must submit, as part of its Overbid, evidence demonstrating such Qualified Bidder's ability to close the restructuring transactions proposed by such Overbid.

---

[7]    This calculation assumes that the new debt is issued to Midland on June 30, 2011. The Debtors and Midland reserve the right to adjust this calculation as necessary to the extent the debt will not be issued until a later date.

[8]    See footnote 7.

11

(c)    *Closing the Fixed/Floating Auction*

The Fixed/Floating Auction shall continue until there is no Overbid in response to the Qualified Bid that the Debtors determine is the highest or otherwise best Qualified Bid (such Qualified Bid, the "**Successful Bid**," and such Qualified Bidder, the "**Successful Bidder**") at which point, the Fixed/Floating Auction will be closed. The determination of the Successful Bidder at the Fixed/Floating Auction shall be made by the Debtors only after consulting with Midland and the Creditors' Committee relating to the Bids made at the Fixed/Floating Auction. Moreover, the Fixed/Floating Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Fixed/Floating Auction to the then-existing Overbid.

If the Successful Bidder (or the Backup Bidder (as defined herein), to the extent the Backup Bidder becomes the Successful Bidder) at the Fixed/Floating Auction is not an entity comprised of Five Mile/Lehman, (i) the Successful Bidder is required to execute and agree to the Commitment Letter, the Term Sheet, and other related documents, each as modified to incorporate the results of the Fixed/Floating Auction and the Overbid Allocation, (ii) such modified documents shall be deemed to be the Commitment Letter, the Term Sheet, the Plan, the Disclosure Statement, and the other Plan-related documents as such terms are used in the Term Sheet and the Commitment Letter, and (iii) Lehman (to the extent it receives the Overbid treatment contemplated in the Term Sheet) and Midland are required to use such efforts, take such actions, and not take such actions to the extent required under the Commitment Letter with respect to the Term Sheet, the Five Mile/Lehman Plan, the Disclosure Statement, and the other Five Mile/Lehman Plan-related documents of the Debtors and Five Mile/Lehman, each as modified to incorporate the results of the Fixed/Floating Auction and the Overbid Allocation.

Acceptance by the Debtors of the Successful Bid is conditioned upon the entry of an order confirming a chapter 11 plan of reorganization for the Fixed/Floating Debtors incorporating the terms of the Successful Bid.

(d)    *No Collusion; Good Faith Bona Fide Offer*

Each Qualified Bidder participating at the Fixed/Floating Auction will be required to confirm with respect to its Qualified Bid and each Overbid it submits that (i) it has not engaged in any collusion with respect to the Debtors and (ii) its Qualified Bid or Overbid is a good faith, bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

(e)    *Backup Bidder*

Notwithstanding anything in these Bidding Procedures to the contrary, if the Fixed/Floating Auction is conducted, the entity with the next-highest or otherwise second best Qualified Bid at the Fixed/Floating Auction, as determined by the Debtors, shall be required to serve as a backup bidder (the "**Backup Bidder**"). The identity of the Backup Bidder and the amount and material terms of the Qualified Bid of the Backup Bidder shall be announced by the Debtors at the conclusion of the Fixed/Floating Auction at the same time the Debtors announce the identity of the Successful Bidder. The Backup Bidder shall be required to keep its Qualified

12

Bid (or if the Backup Bidder submitted one or more Overbids at the Fixed/Floating Auction, its final Overbid) open and irrevocable until the earlier of (a) 5:00 p.m. (prevailing Eastern time) on the first business day that is 90 days after the date of the Fixed/Floating Auction (the "**Outside Backup Date**") and (b) the closing of the transaction with the Successful Bidder.

Unless the Backup Bidder becomes the Successful Bidder earlier, following the hearing to confirm a chapter 11 plan for the Fixed/Floating Debtors that incorporates the terms of the Successful Bid, if the Successful Bidder fails to consummate the restructuring transactions contemplated in the Successful Bid, the Debtors may select the Backup Bidder as the Successful Bidder. The Fixed/Floating Debtors will be authorized, but not required, to consummate the restructuring transactions contemplated in the Backup Bid without further order of the Bankruptcy Court or notice to any party. The Deposit of the Backup Bidder shall be held by the Debtors until the earlier of three (3) business days after (a) the Outside Backup Date and (b) the closing of the transaction with the Successful Bidder.

(f)    *Bid Protections*

To the extent the Commitment Letter has not terminated as a result of a Plan Sponsor Breach (as defined in the Commitment Letter), Five Mile/Lehman shall receive an Expense Reimbursement of all of Five Mile's reasonable fees and expenses, not to exceed $3 million (the "**Expense Reimbursement**") in the event of (a) an Overbid in which the Five Mile/Lehman Bid is not the Successful Bid or (b) the Debtors' execution of an agreement to pursue an alternative restructuring transaction for any of the Fixed/Floating Debtors' assets after entry of the Bidding Procedures Order (an "**Alternative Transaction**").

The Expense Reimbursement, if any, shall be payable by the Debtors upon the earlier of (a) the effective date of the Fixed/Floating Debtors' plan of reorganization and (b) consummation of an Alternative Transaction.

**5.    Process for the Non-Fixed/Floating Debtors**

The Debtors encourage the submission of Bids for the Excluded Debtors that satisfy the Bid Conditions set forth in Section 2. These Bidding Procedures do not, however, govern or establish any auction for the Excluded Debtors.

**6.    Highest or Otherwise Best Bid**

Whenever these Bidding Procedures refer to the highest or otherwise best Bid, as compared to the Qualified Bid of Five Mile/Lehman, the Debtors may consider (in consultation with Midland and the Creditors' Committee) the following factors in addition to any other factors that they deem appropriate: (a) the feasibility of the Fixed/Floating Debtors' chapter 11 plan contemplated by the Bid, including the level of debt on the reorganized Fixed/Floating Debtors' capital structure; (b) the extent to which the transactions contemplated by the Bid are likely to delay the confirmation and consummation of a chapter 11 plan of reorganization for the Fixed/Floating Debtors and the cost to the Fixed/Floating Debtors of any such delay; (c) the total consideration to be received by the Fixed/Floating Debtors; (d) the likelihood of the Qualified Bidder's ability to timely consummate a chapter 11 plan of reorganization for the Fixed/Floating

Debtors incorporating the terms of the Qualified Bidder's Bid; and (e) the net benefit to the Fixed/Floating Debtors' estates and to the Fixed/Floating Debtors' constituents of the Bid.

### 7. Commitment Letter

Notwithstanding anything in these Bidding Procedures to the contrary, the Commitment Letter and related transaction documents shall remain in full force and effect until such agreements have terminated in accordance with their respective terms.

### 8. Deposit

As provided in Section 2, each Bid must be accompanied by a Deposit. Deposits shall be held in one or more interest-bearing escrow accounts by the Debtors. The Deposit shall not be subject to the liens or claims of any creditors of the Debtors and, except as contemplated in these Bidding Procedures, shall not be considered property of the Debtors' estates.

In connection with the Deposit, Competing Bidders must submit any other documentation that may be reasonably required by the escrow agent.

In the event that any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors shall cause the return of such Competing Bidder's Deposit and all accumulated interest thereon within five (5) business days after the Bid Deadline.

Other than with respect to the Successful Bidder and the Backup Bidder, the Deposit for Qualified Bids shall be returned with any interest accrued thereon no later than five (5) business days after the Fixed/Floating Auction.

If the Successful Bidder (or the Backup Bidder, if applicable) timely closes the restructuring transactions contemplated in the Successful Bid (or the Backup Bidder, if applicable), its Deposit shall be credited towards its equity commitment.

In the event the Successful Bidder (or the Backup Bidder, if applicable) fails to consummate the restructuring transactions contemplated in the Successful Bid (or the Backup Bidder, if applicable) because of a breach or failure to perform on the part of such Successful Bidder (or the Backup Bidder, if applicable), the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder (or the Backup Bidder, if applicable). Retention of the Deposit, plus accrued interest, as liquidated damages, shall be the Fixed/Floating Debtors' sole remedy at law and in equity against the Successful Bidder (or the Backup Bidder, if applicable) and the Fixed/Floating Debtors shall be free to consummate the restructuring transactions proposed by the Backup Bidder (to the extent applicable) without the need for an additional hearing or order of the Bankruptcy Court.

Notwithstanding anything to the contrary herein, the Deposit of Five Mile/Lehman shall be treated as set forth in the Commitment Letter.

K&E 18505047

### 9.  Consultation with Constituents

To the extent practicable, throughout the bidding process and the Fixed/Floating Auction, the Debtors will conduct their review and analysis of Bids in an appropriate manner and shall consult with representatives of the Debtors' various constituencies as the Debtors deem appropriate or as required by the Commitment Letter.

### 10.  Bids Based on Alternative Restructuring Strategies

The Debtors have determined in their business judgment that, based on the Five Mile/Lehman Bid and other interest received to date, pursuing the Five Mile/Lehman Bid for the Fixed/Floating Debtors is a sound restructuring strategy and in the best interests of these estates. The support of the Debtors' two largest secured creditors, Midland and Lehman, is conditioned upon a Bid meeting the material requirements of these Bidding Procedures and the terms of the Commitment Letter, including the treatment of Midland's and Lehman's debt.  For these reasons, to be deemed a Qualified Bidder and eligible to participate in the Auction process contemplated in these Bidding Procedures, each Bidder is required to submit enterprise-level Bids in accordance with sections 2 and 3(c) above.

Notwithstanding anything contained herein, the Debtors will continue to consider other value-maximizing restructuring proposals and have negotiated the unrestricted ability to do so.

### 11.  Fiduciary Out

Upon the determination by the Debtors' directors, trustees, or members, as applicable, and upon advice of counsel, no term or provision of the Term Sheet or the Commitment Letter shall prevent, amend, alter, or reduce the Debtors' ability to exercise their fiduciary duties under applicable law.

### 12.  Reservation of Rights

Notwithstanding anything to the contrary herein and subject to the rights of Five Mile/Lehman and Midland under the Commitment Letter and Term Sheet, the Debtors reserve the right, in their sole discretion, to modify these Bidding Procedures at any time, with notice to Competing Bidders, potential bidders, and Midland that is reasonable under the circumstances, to facilitate the submission of value-maximizing Bids, to adjourn the Fixed/Floating Auction one or more times for any reason, or to terminate these Bidding Procedures at any time to pursue an alternative restructuring strategy that maximizes value for the Debtors' estates.

# **EXHIBIT A**

**Overbid Model**

# Allocation of Overbids
*($ in millions)*

**FOR ILLUSTRATIVE PURPOSES ONLY - SUBJECT TO MATERIAL MODIFICATION**

## ASSUMPTIONS

**Implied Enterprise Value:**

| | |
|---|---|
| Debt | $622.5 |
| Equity | 348.2 |
| Implied Enterprise Value | $970.7 |

**Stalking Horse Fee:**

| | |
|---|---|
| Break Up Fee | $7.0 |
| Expense Reimbursement | 3.0 |
| Total | $10.0 |

**Overbid Amounts** [1]**:**

| | |
|---|---|
| Initial Overbid | $15.0 |
| Subsequent Overbids | 95.0 |
| Total | $110.0 |

| | |
|---|---|
| *Implied TEV Increase (Excluding Stalking Horse Fee)* | |
| *Implied TEV Increase - $* | *$100.0* |
| *Implied TEV Increase - %* | *10.3%* |
| *Implied TEV Increase (Including Stalking Horse Fee)* | |
| *Implied TEV Increase - $* | *$110.0* |
| *Implied TEV Increase - %* | *11.3%* |

**Overbid Allocations:**

| | |
|---|---|
| Overbid Allocation | $91.4 |
| Remaining Allocation | 8.6 |
| Total | $100.0 |

## MODEL

| | Mortgage / Mezz Consideration Parameters ||| Step 1: Consideration to Creditors up to Mortgage / DIP Claim Value ||||| Step 2: Consideration to Creditors Beyond Mortgage / DIP Claim Value |||||
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Maximum | % Allocation || $ Allocation || | $ Allocation ||| |
| | Claims [2] | Appendix A Consideration | Incremental Consideration | Overbid Allocation | Remaining Allocation | Overbid Allocation | Remaining Allocation | Unsecured Claims [3] | To Mortgage Holders | To Mezzanine Holders [4] | To Unsecured Claims [4] | To Preferred Shareholders | Post-Overbid Consideration |
| **Fixed Pool** | | | | | | | | | | | | | |
| Fixed Pool DIP | $46.6 | $46.6 | -- | 5.3% | 5.3% | -- | -- | -- | $5.3 | -- | -- | -- | $46.6 |
| Fixed Pool Mortgage [1] | 825.4 | 622.5 | 202.9 | 70.2% | 70.2% | 64.1 | 6.1 | 2.5 | -- | -- | -- | -- | 697.9 |
| **Floating Pool** | | | | | | | | | | | | | |
| Floating Pool DIP | 17.5 | 17.5 | -- | 2.0% | 2.0% | -- | -- | -- | -- | 2.0 | -- | -- | 17.5 |
| Floating Pool Mortgage | 220.2 | 200.3 | 19.9 | 22.6% | 22.6% | 19.9 | -- | 1.5 | -- | 2.7 | -- | -- | 220.2 |
| Floating Pool Mezzanine | 132.4 | -- | 132.4 | 0.0% | 0.0% | -- | -- | -- | -- | -- | -- | -- | 4.7 |
| **Total** | **$1,242.1** | **$886.9** | **$355.2** | **100.0%** | **100.0%** | **$84.0** | **$6.1** | **$4.0** | **$5.3** | **$4.7** | **--** | **--** | **$986.9** |

Note: Analysis excludes required payments in excess of $10 million in cash to pay all administrative and other claims and expenses necessary for the Debtors to emerge from bankruptcy that are not paid pursuant to the Final Cash Collateral Order.
(1) Fixed Pool overbid consideration in the form of debt is valued using an 8% discount rate
(2) Claims represent principal balance as of the date the Company filed for Chapter 11 and does not include any accrued or unpaid interest, default interest, or other fees and charges
(3) Unsecured claims are shown for illustrative purposes only. Actual amount of unsecured claims is subject to review by the Company in all respects
(4) Assumes mezzanine claims are senior to unsecured claims for illustrative purposes only. Actual recoveries will depend on the seniority of claims within the individual pools

# Pro Forma Capitalization

*($ in millions)*

**FOR ILLUSTRATIVE PURPOSES ONLY - SUBJECT TO MATERIAL MODIFICATION**

|  | Pro Forma Capitalization Appendix A [1] | PF $110.0mm in Overbids |
|---|---|---|
| Fixed Pool Debt [2] | $622.5 | $687.2 |
| Floating Pool Debt | -- | 4.0 |
| **Total Debt** [3] | **$622.5** | **$691.2** |
| Equity | $348.2 | $392.7 |
| **Total Capitalization** | **$970.7** | **$1,083.9** |

Note: Analysis excludes required payments in excess of $10 million in cash to pay all administrative and other claims and expenses necessary for the Debtors to emerge from bankruptcy that are not paid pursuant to the Final Cash Collateral Order
(1) Appendix A of the Five Mile Capital II Pooling REIT LLC and Lehman ALI Inc. Binding Commitment Agreement
(2) Overbid consideration in the form of debt is stated at face value
(3) Assumes the face value of the overbid, excluding the payment of the stalking horse fee, is paid 70% in debt and 30% in cash and that all parties, with the exception of Lehman, receive the same ratio of debt to cash