**DUANE MORRIS LLP**
William C. Heuer, Esq.
Patricia H. Heer, Esq.
1540 Broadway
New York, NY 10036
(212) 692-1000
*Attorneys for Aspecta Assurance*
*International Luxembourg S.A.*

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., | : | Case No. 08-13555 (JMP) |
| et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

**RESPONSE OF ASPECTA ASSURANCE INTERNATIONAL
LUXEMBOURG S.A. TO DEBTORS' NINETY-SECOND OMNIBUS
OBJECTION TO CLAIMS (NO BLOCKING NUMBER LPS CLAIMS)**

ASPECTA Assurance International Luxembourg S.A. ("ASPECTA"), through its undersigned counsel, hereby responds to the Debtors' Ninety-Second Omnibus Objection to Claims (No Blocking Number LPS Claims) (the "Objection") and respectfully states as follows:

**Discussion**

A.   **The Proofs of Claim**

1.   On or about September 18, 2009, ASPECTA timely filed with Epiq Bankruptcy Solutions, LLC, the Debtors' claims agent, three proofs of claim (each a "Proof of Claim" and together, the "Proofs of Claim") that are at issue in the Debtor's Objection.[1]  Those Proofs of Claim are as follows:

- Claim No. 17590 in the amount of $2,584,946.00;
- Claim No. 17591 in the amount of $130,667.60; and
- Claim No. 17592 in the amount of $6,817,440.00.

---

[1] In addition to the Proofs of Claim at issue in the Objection, ASPECTA filed another proof of claim – Claim No. 17587 in the amount of $2,788,048.90 – that was the subject of the Debtors' Twenty-Ninth Omnibus Objection to Claims.  An order was entered on that claim objection disallowing Claim No. 17587 for the reason that a blocking number had not been obtained.

ASPECTA's Proofs of Claim are attached hereto as <u>Exhibits A, B and C</u>, respectively.

2. The Proofs of Claim were filed on the Proof of Claim form approved by the Court in the Bar Date Order – indeed, the Proof of Claim form that was attached to the Bar Date Order as Exhibit B. The Bar Date Order, with exhibits, is attached hereto as <u>Exhibit D</u>. The Proof of Claim form that was attached to the Bar Date Order noted that if a claim is based on a derivative contract or guarantee, additional information had to provided through an on-line questionnaire. Although the form approved by the Court identified those two types of claims for different treatment, it said nothing at all about Lehman Program Securities claims. The form, itself, made no reference to "blocking numbers," let alone explain what a blocking number is. Because ASPECTA completed and filed its Proofs of Claim based on the approved Proof of Claim form attached to the Bar Date Order as Exhibit B, a blocking number was not provided.

**B.      The Bar Date Order**

3. In the thirty-two page document that comprises the Bar Date Order and the Exhibits thereto, the need for obtaining a "blocking number" is addressed in one sentence. On page 13, at paragraph (c), subsection (vi), the need to obtain a blocking number is noted. *See* Exhibit D at p. 13. That section of the Bar Date Order begins on page 12. It provides for a later bar date than the general bar date for unsecured claims – November 2, 2009 as compared with September 22, 2009 – for Lehman Program Securities (hereinafter, "<u>LPS</u>") claims. *See id.* at p. 12. It also authorized the Debtors to create and mail, at some time in the future, an LPS bar date notice and claim form. *See id.*

4. Subparagraph (l), however, states that "nothing in this Order shall impose a duty or obligation on any party to any agreement related to any [LPS] to file a claim beyond whatever duty or obligation currently exists in the applicable agreements for the [LPS] or applicable law."

DM1\2552512.1                                                     2

*See id*. at p. 14, ¶ (l).  Finally, paragraph (n) states that "other than as specifically provided in paragraphs (a) through (m)" on pages 12-15:

> [A]ll provisions of this Order apply to holders of claims under any [LPS] and holders of claims based on such [LPS] are required to comply with all provisions of this Order[.]

*See id*. at p. 15, ¶ (n).

5. Nowhere – not once – does the Bar Date Order state in plain terms that a properly filed "Exhibit B" Proof of Claim form would be insufficient for the proper assertion of an LPS claim.  To the contrary, at page 2 the Bar Date Order states:

> ORDERED that *all* Proofs of Claim filed against the Debtors *must* substantially conform *to the form attached as Exhibit B hereto* ("Proof of Claim Form") and must be received on or before the Bar Date . . . .

*See id*. at p. 2 (emphasis added); *see also id* at p. 6, 1st full ¶ (requiring that "each Proof of Claim must: . . . conform substantially with the Proof of Claim Form" and not requiring blocking numbers for any Proofs of Claim).  This paragraph does not say "all Proofs of Claim filed against the Debtors *other than* those for LPS claims, or derivative claims, or guarantee claims . . . ."  It does not say "*except for* LPS claims."  It does not reference subsequent subparagraphs in the Bar Date Order and say "*except* as is set forth at page 12, paragraphs (a) through (n) . . . ."  Nowhere – not once – does the Bar Date Order say that filing a Proof of Claim on the form that was attached to the Order itself, would *not* be sufficient regardless of whether the underlying claim qualified as an LPS claim.[2]

---

[2] The closest the Bar Date Order comes to addressing the "dueling requirements" of the general Proof of Claim requirements and the LPS requirements, is on page 12 where the relevant lead-in paragraph states "notwithstanding anything to the contrary contained in this Order, the following procedures apply [to LPS claims]." *See* Exhibit D at p. 12.  Even here, there is nothing to indicate that the procedures that followed were mandatory and displaced or overrode the requirement that "all Proofs of Claim filed against the Debtors must substantially conform to the form attached as Exhibit B hereto" provided at pages 2 and 6 of the Bar Date Order, cited above.

C.   **The Claim Objection**

6.   Here, the failure to obtain and include a blocking number – something that was not required by Exhibit B -- is the only basis for disallowance asserted in the Objection.[3]

7.   The Debtors state in the Objection that the purpose of requiring claimants to obtain a blocking number was to prevent the underlying security from being traded through the period ending November 2, 2009, and to enable the Debtors to confirm the ownership and amount of a particular security. *See* Objection, ¶ 10. Absent a blocking number, there was "a risk" of multiple claims being asserted if the underlying Note was traded.

> The issuance of a blocking number *prevented the holder of a Lehman Program Security from trading that security through November 2, 2009*[.]  The blocking number requirement was necessary because the Lehman Program Securities did not have an indenture trustee that would file a global claim on behalf of all holders of a particular security, but rather *individual holders* of such securities (or custodians thereof) would be filing claims based on such securities. Accordingly, the blocking number requirement provided the only mechanism for the Debtors to confirm the ownership and amount of a particular security for purposes of the Securities Program Proof of Claim. Absent the blocking number requirement and temporary restriction on trading, *the risk would exist* that the Debtors would make distributions in excess of the outstanding amount of the Lehman Program Securities and multiple distributions on the same obligation.

Objection at ¶ 10 (emphasis supplied).[4]

---

[3] The Debtors reserved the right to assert additional and different objections in the future.

[4] It should be noted that despite the importance now given to blocking numbers, there was no mention of a blocking number requirement in the Debtors' underlying motion to set a bar date. *See* Docket No. 3654 (May 26, 2009). Indeed, a blocking number requirement was not included in the original form of proposed order, and does not appear to have been included in subsequent proposed orders (*see* Docket Nos. 4113, June 23, 2009; No. 4205, June 29, 2009), until the final version was submitted to the Court for entry (*see* Docket No. 4271, July 2, 2009).

### *(i) ASPECTA Held, and Holds, the Notes*

8. ASPECTA did not obtain a blocking number for the Proofs of Claim that are challenged through the Objection. However, ASPECTA has owned the securities underlying the Proofs of Claim for the period of time pinpointed by the Debtors. *See* Declaration of Stefan Ziegenhagen, annexed hereto as Exhibit E. Indeed, ASPECTA owned and held the relevant securities *prior* to September 15, 2008 (the Petition Date), and ASPECTA *still* holds and owns those securities today (in the same custodial account). *Id*. Those securities have *never left* ASPECTA's custody and control – indeed, have *never left the custodial account* in which they have been held – during the entire intervening period of time. *Id*.[5]

9. ASPECTA respectfully requests that on these facts – where the underlying Notes *have always been*, and *continue to be*, in ASPECTA's possession in the same custodial account – ASPECTA's inadvertent failure to obtain a blocking number and include it with the Proofs of Claim be found to constitute harmless error. Neither the Debtors nor any other party has been prejudiced by this oversight. Indeed, the "risk" and harm with which the Debtors were concerned, never came to be with respect to ASPECTA's Proofs of Claim, although admittedly not because the blocking number procedure was adhered to; rather, the risk and harm were avoided on the merits and underlying facts because the underlying securities have not moved.

---

[5] ASPECTA has transferred Claim No. 17592 ($6,817,440.00) to Deutsche Bank. ASPECTA's interests in the underlying securities were, in substance, transferred at the same time. However, ASPECTA still holds the security in its account, for Deutsche Bank's benefit. *See* Exhibit E.

**Argument**

10.     In reply, the Debtors are likely to assert that permitting claims to remain valid and pending despite the failure of a creditor to obtain a blocking number, will: (i) open the "floodgates" to claim litigation and (ii) will unnecessarily require the Debtors to review a large number of claims to determine whether they are, in fact, valid.

A.     **The "Floodgates" Argument Favors ASPECTA**

11.     The floodgates argument is a two-way street: through this one Objection alone the Debtors have sought the disallowance of *more than $150 million* in claims based on the mere failure to obtain blocking numbers, without any assertion that any of those underlying claims are, in fact, invalid. Although the Debtors have valid concerns about the manageability of the claims allowance and diligence process, creditors, too, have equally if not more valid and substantial concerns about the allowance of valid claims: substantively valid claims should not be disallowed when filed before a claims bar date. The logistical labyrinth for claims filing advocated by the Debtors as necessary in these cases is being used as a sword rather than a shield. ASPECTA respectfully submits that when a floodgates argument is considered, the primary interests that should be protected are those of creditors holding substantively valid claims as compared with those seeking a windfall. *See Travelers Cas. & Surety Co. of Am. v. Pac. Gas & Electr. Co.*, 549 U.S. 443, 449-50 (2007) (hereinafter "*Travelers*"). Particularly where notes are involved – the *validity* and *enforceability* of which is not contested, and the *outstanding amount* of which *is known to the Debtors* – these considerations weigh heavily in favor of claim allowance.

12.     Moreover, undertaking a review of all claims filed in the Debtors' cases is an obligation the Debtors cannot escape. It is an obligation that is present in every chapter 11 case, and the Debtors are and have been undertaking a substantive claims analysis in these chapter 11

cases (as is evident from the Objection). *See* 11 U.S.C. §§ 704(a)(5); 1106(a)(1); 1107(a). In undertaking that analysis, the Debtors are guided by statute: 11 U.S.C. § 502.

**B.    The Statutes**

13.    The statute provides in subsection (a) that claims filed are deemed allowed absent objection. 11 U.S.C. § 502(a). The statute also identifies specific grounds for the disallowance of claims. *See id.* at (b). The grounds for disallowance, as set out in the statute, are limited. *See Travelers*, 549 U.S. at 449 ("But even where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b).").

14.    Here, there are only two sections of the statute that can arguably be called into question: §§ 502(b)(1) (claim is unenforceable against the debtor) and (b)(9) (a proof of claim was not timely filed).

15.    With respect to § 502(b)(1), the Supreme Court has explained that "[t]his provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy." *Travelers*, 549 U.S. at 450 (citing 4 COLLIER ON BANKRUPTCY ¶ 502.03[2][b], p. 502-22 (rev. 15th ed. 2006)); *see also* 4 COLLIER ON BANKRUPTCY ¶ 502.03[2][b], p. 502-21 — 502-22 (16th ed. 2010) (dismissing statutory mandate and scope). On the facts presented through the Objection, those principles do not apply. The failure to obtain a blocking number for a limited period of time is not a defense to payment on the notes.

16.    With respect to § 502(b)(9), the statute addresses the timeliness of proof of claim filings. 11 U.S.C. § 502(b)(9). The Collier treatise makes clear that § 502(b)(9) objections do indeed address *timeliness*, rather than substantive matters relating to the validity of the underlying claim. 4 COLLIER ON BANKRUPTCY ¶ 502.03[10][a], p. 502-49 (16th ed. 2010) ("This

provision was designed to overrule case law holding that tardily filed claims were allowable"). Here, the statute is not implicated because (i) the Objection does not challenge ASPECTA's Proofs of Claim for timeliness and (ii) in fact, ASPECTA's claims were timely filed (they were filed in advance of the September 22, 2009 bar date).

17. In effect, the Debtors have sought to create, wholecloth, a new ground for disallowance that is not contained in the statute. The Supreme Court has rejected that approach, and has made clear that the limited reasons for which a claim can be disallowed, are set out in the statute. *Travelers*, 549 U.S. at 449 ("But even where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b).").

18. Thus, viewed alongside the statutory text of § 502(b), it is evident that the reasons for which the Debtors seek to *disallow* ASPECTA's claims do not fall within the scope of the statute and, accordingly, cannot serve as a basis for disallowance. *See Travelers*, 549 U.S. at 449.[6]

C. **The Bankruptcy Rules**

19. The Federal Rules of Bankruptcy Procedure (each a "Rule," and together, the "Bankruptcy Rules"), too, are relevant to analysis of the relief sought through the Objection. Rule 3001(a) addresses the "form and content" of a proof of claim. Fed. R. Bankr. P. 3001(a). The Rule provides:

---

[6] *Stoll v. Gottlieb*, 305 U.S. 165 (1938), and its progeny, including *Travelers Indemn. Co. v. Bailey*, 129 S. Ct. 2195 (2009), are not to the contrary. This case does not involve a collateral attack on jurisdiction or an injunction. Moreover, in order to achieve disallowance here, the Debtors must affirmatively demonstrate that the requirements of § 502(b) are met, regardless of any claims filing procedures that have been put in place. *See* 11 U.S.C. § 502(b).

DM1\2552512.1                                        8

> A proof of claim is a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form.

Fed. R. Bankr. P. 3001(a).[7]

20. The Collier treatise, however, makes clear that the "conform substantially" language was intended to *include as properly filed* the claims of some creditors that, in one way or another, *did not* conform to the Rules. *See* 9 COLLIER ON BANKRUPTCY ¶ 3001.03, pp. 3001-8 – 3001-9 (16th ed. 2010) (noting that the form "requires limited information" for a valid proof of claim), ¶ 3001.04, pp. 3001-11 – 3001-12 (discussing amendment of claims to provide additional information), and ¶ 3001.05, pp. 3001-12 – 3001-15 (noting that even where an initial filing is so deficient that it cannot fairly be characterized as a "proof of claim," but is nonetheless viewed as an "informal proof of claim," courts will often allow it and, after that, even allow the "informal proof of claim" to be amended). There is nothing in the statutes or Rules to indicate that the "conform substantially" language was intended to permit Debtors to impose *additional* requirements on creditors; to the contrary, the fair inference to be drawn from the text of the statutes, Rules and treatise commentary is that the "conform substantially" language was intended to provide additional protections *in favor of creditors* and in favor of the *allowance* of claims. It is a Rule designed to guarantee *in*clusion, not *ex*clusion; it is a shield for creditors, not a sword for debtors. *See In re Stoecker*, 5 F.3d 1022, 1026-28 (7th Cir. 1993) (refusing to permit disallowance of claim for "hypertechnical" reasons and limiting the application of Rule 3001 in the claim disallowance context).

---

[7] Note that the LPS claim filing instructions state that the Bar Date Order does not "impose a duty or obligation on any party . . . to file a claim beyond what duty or obligation currently exists in . . . applicable law." *See* Order at p. 14, ¶ (l). There is no blocking number requirement under Rule 3001, in the official proof of claim form, or under state law.

21.     Here, the Debtors seek to rely on a procedural device to achieve the disallowance of claims. There is nothing in Rule 3001 that permits such action. The Debtors implemented this procedural device by *adding* and imposing *additional* claim filing requirements to the official proof of claim form. Even then, in doing so, the Debtors did not state in plain language that filing the Proof of Claim form that was attached to the Bar Date Order would not be sufficient in all cases – to the contrary, the Bar Date Order affirmatively required that "all Proofs of Claim . . . must substantially conform to the form attached as Exhibit B hereto[.]"

22.     Through this procedural maneuver, the Debtors seek the disallowance of claims for reasons *other than* those set out in the statute – § 502(b). There is nothing in the statute to support the Debtors' request, and as recently as *Travelers*, the Supreme Court adhered to and affirmed the limitations on disallowance as set out in the statute. *See Travelers*, 549 U.S. at 449 ("But even where a party in interest objects, the court 'shall allow' the claim '*except to the extent that*' *the claim implicates any of the nine exceptions enumerated in § 502(b)*.") (emphasis supplied). The statutory mandate cannot be brushed aside as the Debtors request, and cannot be overcome by a procedural maneuver premised on Rule 3001.

**D.      Section 105(a)**

23.     Section 105(a)'s catch-all provision cannot cure these defects. *See* 11 U.S.C. § 105(a) ("may issue any order . . . ."). Although the power granted under § 105(a) is broad, it cannot be used as authority for something that is *contrary* to what is otherwise provided in the statutory text. The Collier treatise underscores this limitation:

> Section 105 does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code or mandates of other state and federal statutes. As aptly put by one court, section 105 does not "authorize bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."

*See* 2 Collier on Bankruptcy ¶ 105.01[2], p. 105-6 (16th ed. 2010) (internal footnotes omitted). Yet, the disallowance of claims for the single reason set forth in the Objection is contrary to § 502(b) and is otherwise without basis in the Bankruptcy Code. By suggesting that the blocking number requirement is a basis for the disallowance of claims, the Debtors have in effect asked the Court to create a new substantive right. The Debtors' request cannot be upheld as a valid use of § 105(a).[8]

---

[8] To the extent the Court finds it necessary, ASPECTA respectfully requests leave to amend its Proofs of Claim.

## Conclusion

24. ASPECTA respectfully submits that in order to protect the valid interests of creditors whose proofs of claim did not contain blocking numbers, but which were otherwise timely filed in accordance with the Bar Date Order, the Debtors should be required to investigate whether or not the underlying claim is valid, and use the results of *that* analysis as the basis for allowance or disallowance. The risk identified by the Debtors through the Objection was that the Debtors might end up paying twice on a given claim if it were not properly tracked. Here, ASPECTA is able to demonstrate that it held the underlying securities that formed the basis of its claims: (i) in the prepetition period, (ii) in the period between the petition date and November 2, 2009 (the date through which blocking number securities could not be traded), and (iii) in the period from November 2, 2009 through the present. The securities have sat in the same account during that entire time. None of the securities have ever been moved out of their respective accounts. On these facts, ASPECTA respectfully submits that it is not such an onerous burden to be placed on the Debtors and their professionals to have to analyze ASPECTA's Proofs of Claim, based on in-hand securities, on the merits.

**WHEREFORE**, ASPECTA respectfully requests that the Court deny the Objection as it relates to the Proofs of Claim and grant such other and further relief as it deems just and proper.

Dated: March 23, 2011
       New York, New York

**DUANE MORRIS LLP**

 */s/ William C. Heuer, Esq.*
William C. Heuer, Esq.
Patricia H. Heer, Esq.
1540 Broadway
New York, NY 10036
(212) 692-1000
*Attorneys for Aspecta Assurance*
*International Luxembourg S.A.*

**DUANE MORRIS LLP**
a Delaware Limited Liability Partnership
William C. Heuer, Esq.
Patricia H. Heer, Esq.
1540 Broadway
New York, NY 10036
(212) 692-1000
*Attorneys for Aspecta Assurance*
*International Luxembourg S.A.*

|  |  |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS, INC.,<br>et al.,<br>　　　　　　　　Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |

# CERTIFICATE OF SERVICE

I, Onika McLean, hereby certify that: (a) on March 23, 2011, I caused a true and correct copy of the Response of Aspecta Assurance International Luxembourg S.A. to Debtors' Ninety-Second Omnibus Objection to Claims (No Blocking Number LPS Claims) and the within certificate of service to be served via (i) overnight mail and (ii) hand delivery on the following parties:

| Milbank, Tweed, Hadley & McCloy, LLP<br>One Chase Manhattan Plaza<br>New York, NY 10005<br>*Attn:  Dennis F. Dunne, Esq.*<br>　　　*Dennis F. O'Donnell, Esq.*<br>　　　*Evan Fleck, Esq.* | Office of the U.S. Trustee<br>Southern District of New York<br>33 Whitehall Street, 21st Floor<br>New York, NY 10004<br>*Attn:  Elisabeth Gasparini, Esq.*<br>　　　*Andrea Schwartz, Esq.* | Weil Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>*Attn:  Shai Waisman, Esq.*<br>　　　*Mark Bernstein, Esq.* |

**DUANE MORRIS LLP**

Dated:  March 23, 2011                                   */s/ Onika McLean.*
　　　　　　　　　　　　　　　　　　　　　　　　　Onika McLean

DM1\2552512.1