**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

| | |
|---|---|
| In Re | Chapter 11 |
| Lehman Brothers Holdings Inc., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor |
| LEHMAN BROTHERS HOLDINGS INC | 08-13555 |

## PROOF OF CLAIM

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)          0000017590

THIS SPACE IS FOR COURT USE ~

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

ASPECTA ASSURANCES INTERNATIONAL SA
GOLDBELL 1
5, RUE EUGENE RUPPERT
L - 2453 LUXEMBOURG

Telephone number  +352 26 498 255    Email Address: sleroy@aspecta.lu

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number: _____
    (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case

Telephone number: _____    Email Address: _____

**1.    Amount of Claim as of Date Case Filed:**  $ 2,584,946 (EUR 1,820,000)
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete item 6.
☑ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

**2.**    Basis for Claim: EMTN Issued and guaranteed by Lehman (XS0326086633)
    (See instruction #2 on reverse side.)

**3.**    Last four digits of any number by which creditor identifies debtor: 6633
    3a. Debtor may have scheduled account as: _____
        (See instruction #3a on reverse side.)

**4.**    Secured Claim (See instruction #4 on reverse side.)
    Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
    Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
    Describe: _____
    Value of Property. $_____  Annual Interest Rate _____%
    Amount of arrearage and other charges as of time case filed included in secured claim, if any:
    $_____  Basis for perfection: _____
    Amount of Secured Claim: $_____  Amount Unsecured: $_____

**5.    Amount of Claim Entitled to Priority** under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___).

Amount entitled to priority:

$_____

**6.**    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____
    (See instruction #6 on reverse side.)

**7.   Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
**8.   Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain

FOR COURT USE ONLY

**FILED / RECEIVED**

SEP 18 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date: | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|
| 11/09/09 | |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

## Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
YOU MUST INDICATE THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED, INCLUDING THE THE NAME OF THE DEBTOR AND THE RELATED CASE NUMBER (DEBTORS AND CASE NUMBERS LISTED BELOW), IN THE SPACE ALLOTTED AT THE TOP OF THE CLAIM FORM.

| | | | |
|---|---|---|---|
| 08-13555 | Lehman Brothers Holdings Inc. | 08-13905 | CES Aviation LLC |
| 08-13600 | LB 745 LLC | 08-13906 | CES Aviation V LLC |
| 08-13885 | Lehman Brothers Commodity Services Inc. | 08-13907 | CES Aviation IX LLC |
| 08-13888 | Lehman Brothers Special Financing Inc. | 08-13908 | East Dover Limited |
| 08-13893 | Lehman Brothers OTC Derivatives Inc. | 09-10108 | Luxembourg Residential Properties Loan Finance S.a.r.l. |
| 08-13899 | Lehman Brothers Derivative Products Inc. | 09-10137 | BNC Mortgage LLC |
| 08-13900 | Lehman Commercial Paper Inc. | 09-10558 | Structured Asset Securities Corporation |
| 08-13901 | Lehman Brothers Commercial Corporation | 09-10560 | LB Rose Ranch LLC |
| 08-13902 | Lehman Brothers Financial Products Inc. | 09-12516 | LB 2080 Kalakaua Owners LLC |
| 08-13904 | Lehman Scottish Finance L.P. | 08-13664 | PAMI Statler Arms LLC |

If your Claim is against multiple Debtors, complete a separate form for each Debtor.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4, 5 and 6. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor

**3a. Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and term of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at the following address:

Lehman Brothers Holdings Claims Processing
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, PO Box 5076
New York, NY 10150- 5076

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured Claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Derivative Contract**
A contract that is any of (i) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (ii) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code. A cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition nor shall any notes, bonds, or other securities issued by the Debtors or their affiliates (including, but not limited to, Lehman Brothers Holdings Inc., Lehman Brothers Treasury Co. B.V., Lehman Brothers Bankhaus AG, Lehman Brothers Holdings plc, Lehman Brothers Securities N.V., and Lehman Brothers (Luxembourg) Equity Finance S.A.).

**Guarantee**
A promise, representation or agreement to answer for the payment of some debt or the performance of some duty in case of the failure of another person or entity who is liable in the first instance.

**Lehman Programs Securities**
Lehman Programs Securities means those securities included on the Lehman Programs Securities list available on http://www.lehman-docket.com as of July 27, 2009.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim, or you may access the Claims Agent's system (http://www.lehman-docket.com) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------  x

In re:                                                           :     **Chapter 11**
                                                                 :
**LEHMAN BROTHERS HOLDING INC.**                                 :     **Case No. 08-13555**
                                                                 :
                              Debtor.                            :

----------------------------------------------------------------  x

## ATTACHMENT TO PROOF OF CLAIM

1.    ASPECTA Assurance International Luxembourg S.A. ("ASPECTA"), is a

Luxembourg life insurance company established and having its registered office at 5, rue Eugène

Ruppert, L-2453 Luxembourg, Grand-Duchy of Luxembourg.

2.    In its capacity as an insurance company under Luxembourg laws, ASPECTA has

invested part of the insurance premiums which it has received from certain of its clients in notes

called "Capital Protected CPPI Note 2007-6.11.17 (EXP.31.10.17) on a Basket of Reference

Assets" (ISIN XS0326086633) issued by Lehman Brothers Bankhaus AG, a German entity.  *See*

Exhibit A hereto.  Pursuant to Luxembourg law, the sums paid by such clients as premiums to an

insurance company become property of the insurance company, and the investments made by the

insurance company with such monies are made in the insurance company's own name and for its

own account.  Policyholder(s) / beneficiary(ies) only has(ve) an insurance claim against the

insurance company.

3.    With respect to the notes which are referenced to above, Lehman Brothers

Holdings Inc. has given a guaranteed repayment.  *See* Exhibit B hereto. The total amount of

claim relating to the investment in the notes referred to above amounts to $ 2,584,946 (EUR

1,820,000). Accordingly, Aspecta hereby pursues its claim against Lehman Brothers Holdings Inc. pursuant to its guarantee.

4.    Aspecta has also filed a claim against Lehman Brothers Bankhaus AG in the bankruptcy proceedings against such entity, in Germany, for repayment of the notes referred to above. *See* Exhibit C hereto.

### **Reservation of Rights**

5.    Aspecta reserves the right to supplement, amend and/or revise this proof of claim as necessary and appropriate.

Dated: _11/09/_, 2009                    By:_____

Pierre Meery

CEO


**ING** 

ASPECTA
Assurance International Luxembourg SA
Fund Administration
Goldbell1
5, rue Eugène Ruppert
L-2453 Luxembourg

Luxembourg, le 12/02/2009

<u>Concerne: attestation de position en LEHMAN BROTHERS TREASURY(BKT REF.ASSETS)</u>

Par la présente, nous attestons qu'au 12/02/2009 vous déteniez en nos livres pour le compte
ASPECTA Assurance International SA LU87 0141 9318 3800 0000

| QUANTITE | DENOMINATION | CODE ISIN |
|----------|--------------|-----------|
| 1 820 000 | Lehman Brothers Treasury (BKT Ref.Assets) | XS0326086633 |

Philippe HALTER
Corporate & Institutional Banking

Laurent KEHRER
Corporate & Institutional Banking

ING Luxembourg, Société Anonyme        R.C.S. Luxembourg B.6041        T +352 44 99 11 F +352 44 99 12 31
52, route d'Esch L-2965 Luxembourg     TVA LU 11002717  Code Swift CELLLULL   www.ing.lu

BANKING                                INSURANCE                       LEASING

## ING

1,4203

| ISIN Ticket | Quantity | Designation | Curr Portfolio | | |
|---|---|---|---|---|---|
| XS0218304458 | 92.000,00 | LEHMAN BROTHERS TREASUR 7% 2005-35 17MAY | EUR 318-372 (C) | 130.667,60 | D123 |
| XS0287044969 | 150.000,00 | LEHMAN BROTHERS TRE 4,625% 2007-19 14MAR | EUR 318-372 (C) | 213.045,00 | D123 |
| XS0326086633 | 1.820.000,00 | LEHMAN BROTHERS TREASURY(BKT REF.ASSETS) | EUR 318-380 | 2.584.946,00 | B066 |
| XS0346081481 | 1.350.000,00 | LEHMAN BROTHERS 10Y TARGET 6 NOTE 100% | EUR 318-371 (C) | 1.917.405,00 | D122 |
| XS0346081481 | 3.450.000,00 | LEHMAN BROTHERS 10Y TARGET 6 NOTE 100% | EUR 318-372 (C) | 4.900.035,00 | D123 |
| | 4.800.000,00 | Total LEHMAN BROTHERS 10Y TARGET 6 NOTE 100% | | 6.817.440,00 | |
| XS0350719380 | 800.000,00 | LEHMAN BROTHERS BANKHAUS (10Y ALPHA SEL) | EUR 318-371 (C) | 1.136.240,00 | D122 |
| XS0350719380 | 2.050.000,00 | LEHMAN BROTHERS BANKHAUS (10Y ALPHA SEL) | EUR 318-372 (C) | 2.911.615,00 | D123 |
| | 2.850.000,00 | Total LEHMAN BROTHERS BANKHAUS (10Y ALPHA SEL) | | 4.047.855,00 | |
| XS0358400108 | 71.878,39 | LEHMAN 7Y CAP.PROT, SPA NOTE (METAL SEC) | USD 360-019 | 102.088,88 | CENT |
| XS0358400108 | 610.255,44 | LEHMAN 7Y CAP.PROT, SPA NOTE (METAL SEC) | USD 318-363 (A) | 866.745,80 | D120 |
| XS0358400108 | 857.157,26 | LEHMAN 7Y CAP.PROT, SPA NOTE (METAL SEC) | USD 318-371 (C) | 1.217.420,46 | D122 |
| XS0358400108 | 2.360.708,91 | LEHMAN 7Y CAP.PROT, SPA NOTE (METAL SEC) | USD 318-372 (C) | 3.352.914,86 | D123 |
| | 3.900.000,00 | Total LEHMAN 7Y CAP.PROT, SPA NOTE (METAL SEC) | | 5.539.170,00 | |
| TOTAL à ING | 13.612.000,00 | | | 19.333.123,60 | |

## Banque de Luxembourg

| ISIN Ticket | Quantity | Designation | Curr Portfolio | | |
|---|---|---|---|---|---|
| XS0331506369 | 1.248.000,00 | LEHMAN BT/EUR 15Y 07 -ID- 2 | EUR 1671413-000 | 1.772.534,40 | D126 |
| XS0331506369 | 715.000,00 | LEHMAN BT/EUR 15Y 07 -ID- 2 | EUR 1674897-000 | 1.015.514,50 | D127 |
| | 1.963.000,00 | Total LEHMAN BT/EUR 15Y 07 -ID- 2 | | 2.788.048,90 | |
| TOTAL ING & BdL | 15.575.000,00 | | | 22.121.172,50 | |

**Instrument Details**

Instrument Summary   Custom Page   Instrument Classification   Structured Product Details   Listings   Markets
Identification Directory   MiFID Classification   Managers / Agents   Depository / Clearing   Guarantee / Covenant
All CA (excl. Dividends / Listing Events)   All Corporate Actions   Issue Conditions   Early Redemption / Extension Conditions
Early Redemption Schedule   Final Redemption   Ratings   Rating History   EU Tax   Tax / Reporting   Documents   Count
Details

# Lehman Bankhaus --- Capital Protected CPPI Note 2007-6.11.17 (EXP.31.10.17) on a Basket of Reference Assets

PDF

**Issuer** GK219471 Lehman Brothers Bankhaus AG (Instruments)
**Domicile** Germany .
**Sector** Banks & other credit institutions

## Basic Data

| | |
|---|---|
| **TK Valor Number** | 3472910 |
| **ISIN** | XS0326086633 |
| **CFI Code** | DTZXFB (Assigned by another NNA) |
| **Instrument Type** | Hybrid, structured instruments |
| **Product Name** | 10yr Capital Protected CPPI Note on the Lehman Brothers GAA EUR Net Values |
| **Short Name** | Basket/Leh 17 EMTN |
| **Security Prefix** | Capital Protected CPPI Note |
| **Security Suffix** | 2007-6.11.17 (EXP.31.10.17) on a Basket of Reference Assets |
| **Instrument Form** | Bearer form |
| **Delivery Mode** | Clearstream Bk Lux: Not deliverable, global cert.<br>Euroclear Bank: Not deliverable, global cert. |
| **Instrument Unit** | Nominal (par value/face value) |
| **Original Issuer** | GK219471 Lehman Bankhaus Frankfurt |
| **Currency / Principal** | EUR |
| **Maturity Date** | 06.11.2017 |
| **Denominations** | EUR 10000 |
| **Callable by Issuer** | Yes |
| **Callable for tax reasons only** | Yes |
| **Security Number Type** | No processing |
| **Without Physical Coupon** | Yes |

## Instrument Classification

| | |
|---|---|
| **Type of security** | Hybrids, structured instruments |
| **Borrower category** | Bond issued by banks & financial instit. |
| **Telekurs jurisdiction** | Eurobonds |
| **Market affiliation** | Euro Medium Term Note (EMTN) |
| **Price category** | Instrument listed on standard market |
| **Classification of financial instruments** | Debt Instruments, Medium-term notes, Zero rate/Discounted, Not available / unknc<br>Fixed maturity, Bearer |
| **EU Interest income tax category** | Unknown |

## Structured Product Details

Instrument Details                                                                Page 2 of 4

| Date Type | Date From | Date To | Pricing Function |
|---|---|---|---|
| Final fixing | 31.10.2017 | 31.10.2017 | Closing price on fixing day |

## EU Interest Income Taxation    (not permissioned)

## Tax / Reporting

| | | Applicability | Object | Application | Amounts |
|---|---|---|---|---|---|
| **Country: Switzerland** | | | | | |
| Current Taxes N/P | | | | | |
| Reporting / Regulation | SNB | N/P | | | |
| | SNB | N/P | | | |
| | SNB | N/P | | | |
| **Country: Liechtenstein** | | | | | |
| Current Taxes N/P | | | | | |
| **Country: United Kingdom** | | | | | |
| Current Taxes | Capital gains tax | Potentially liable/ applicable | --- | | Tax resident: |

## Latest Company Ratings

| Scheme | Name | Date | Rating | Rating Trend |
|---|---|---|---|---|
| MDYISTCP | MOODY'S commercial paper short term | 10.12.2008 | WR | |
| SPSICRFC | S&P Issuer Credit Rating Foreign CCY ST | 15.09.2008 | D | Not on watchlist |
| SPLICRFC | S&P Issuer Credit Rating Foreign CCY LT | 15.09.2008 | D | Not on watchlist |
| SPLICRLC | S&P Issuer Credit Rating Local CCY LT | 15.09.2008 | D | Not on watchlist |
| SPSICRLC | S&P Issuer Credit Rating Local CCY ST | 15.09.2008 | D | Not on watchlist |
| Rating History | | | | |

## Listings

| Code | Exchange | CCY | Listing Name | Trader Symbol | SEDOL | Listing Status | Notation Type |
|---|---|---|---|---|---|---|---|
| 186 | ICMA | EUR | BASKET/LEH 17 EMTN | | | No Listing (Quoted) | Percentage price |
| 2613 | Lehman Br EU | EUR | BASKET/LEH 17 EMTN | | | No Listing (Quoted) | Percentage price |

## NSINs

| CH | 3472910 | Active | 11.10.2007 |
|---|---|---|---|
| U* | N52152688 | Active | 11.10.2007 |
| XS | 032608663 | Active | 12.10.2007 |
| ISIN | XS0326086633 | Active | 11.10.2007 |

## MiFID Classification   (not permissioned)

Country Class. Schema Classification Valid From Valid Until

## Managers / Agents

| Institution | Role |
|---|---|
| LBI Europe | Calculation/Fixing agent |
| LBI Europe | Lead manager |

## Depository / Clearing

Instrument Details

| Name | System | Mode / Details | Main CSD/ESES | Custody Type | Unit / Denominat |
|---|---|---|---|---|---|
| Clearstream Bk Lux | CEDCOM (Luxembourg+Euro) | Not deliverable, global cert. | | | |
| Euroclear Bank | EUCLID(Belgium+Euro) | Not deliverable, global cert. | | | |

## Guarantee / Covenant

| Guarantor | Type |
|---|---|
| Lehman Brothers | Joint & several guarantees for the total |

## Issue Conditions

| | |
|---|---|
| TK Valor Number | 3472910 |
| ISIN | XS0326086633 |
| Short Name | Basket/Leh 17 EMTN |
| Original Issuer | Lehman Bankhaus Frankfurt |
| Issue Status | Issued |
| Issue Amount | EUR 3000000 |
| Original Denominations | EUR 10000 |
| Denominations | EUR 10000 |
| Issue Price | 100 % |
| Payment on Subscription | No |
| Payment Type | Fully paid-up |
| Payment Date | 31.10.2007 |
| Restrictions | United States<br>EEA 'European Economic Area' |

## Early Redemption / Extension Conditions

Repayment Due To Taxation

| | |
|---|---|
| Entitled Person | Issuer |
| Payments | Total |
| Notice Period | --- 30 Day |

| Repayments | Call Period | Call Frequency | Repayment Price | Inc. / Dec. Value | Inc. / Dec. Frequency |
|---|---|---|---|---|---|
| | 31.10.2007 -- | At any time | 100 % | | |

## Early Redemption Schedule

| Period / Date | Reason | Entitled Person | Notice Period | Redemption Amount |
|---|---|---|---|---|
| 31.10.2007 -- 06.11.2017 | Taxation | Issuer | - 30 Day | 100 % |

## Final Redemption

Set ID  74050295

| | | |
|---|---|---|
| | Settlement Style | Cash |
| | Paid in | EUR |
| Additive | Conditions | Observation Period: 31.10.2017 --- 31.10.2017<br>Linked to a Basket of Reference Assets |
| | Due Date | 06.11.2017<br>Details |

| | |
|---|---|
| **Settlement Style** | Minimum repayment (cash) |
| **Gross Amount** | 100 % |
| **Due Date** | 06.11.2017 |
| | Details |

**Additional Information**

```
Repayment according to:
SD x (100% + Max(0%;BAV Final/BAV Initial -
100%))

BAV Final means BAVt on the final valuation
date.
BAV Initial means BAVt on the Initial valuation
date
```

## All CA (excl. Dividends / Listing Events)

01.05.2009    **Company amalgamation/ takeover**
                     Offer
                         Purchase offer
                         Effective Date  01.05.2009

Data Version: T20 Run (20. Jul 2009, VDMMAPS.V009201.T20T,svzpvdb03)

## LEHMAN BROTHERS

# Structured Equity Solutions



Product Development and Structuring Group
Martin Bertsch - Mohamed Yangui - Arnaud Heckenroth - Michael
Lenhart - Natasha Wright - Anna Georgieva - Jeanine Baumert -
Maxence Frealle - Andrei Grecu - Khalid Aboulfouioud
Tel: +44 207 103 1222

Lehman Brothers International (Europe)
25 Bank Street
London E14 5LE
United Kingdom

# 10yr Capital Protected CPPI Note on the Lehman Brothers GAA EUR Net Values

### Description of certain final terms and conditions as of 10 July 2007

| | |
|---|---|
| **Issuer** | Lehman Brothers Bankhaus AG  (A1 / A+ / AA-) |
| **Arranger/Dealer** | Lehman Brothers International (Europe) |
| **Issue Type** | Equity-Linked Euro Medium Term Note |
| **Aggregate Nominal Amount** | EUR 5,000,000 to EUR 30,000,000 |
| **Specified Denominations (SD)** | EUR 10,000 |
| **Trade Type** | Notional |
| **Trade Date** | TBD |
| **Issue Date** | 31 October 2007 |
| **Initial Valuation Date** | 31 October 2007 or, if such date is not a Common Scheduled Trading Day, the next following Common Scheduled Trading Day |
| **Final Valuation Date** | The Common Scheduled Trading Day following the Final Potential Rebalancing Date, currently expected to be 31 October 2017 |
| **Final Potential Rebalancing Date** | 31 October 2017 or if such date is not a Common Scheduled Trading Day, the next following Common Scheduled Trading Day |
| **Maturity Date** | The 4th Business Day immediately following the Final Valuation Date, currently expected to be 6 November 2017 |
| **Term** | Means, the period from and including the Initial Valuation Date to and including the Final Potential Rebalancing Date |
| **Issue Price** | 100% of Specified Denomination |
| **Underlying** | A Balanced Account comprising of a notional investment of Premium Assets and Riskless Assets as defined in Annex 1 |
| **Final Redemption Amount** | Provided that the Notes are not previously redeemed or cancelled, the Issuer shall pay to the holder of the Notes an amount per Note in EUR on the Maturity Date as determined by the Calculation Agent on the Final Valuation Date in accordance with the following formula: |

LEHMAN BROTHERS



## Structured Equity Solutions

| | |
|---|---|
| | $$SD \times \left[ 100\% + Max\left( 0\%;\ \frac{BAV_{Final}}{BAV_{Initial}} - 100\% \right) \right]$$<br><br>Where:<br><br>*BAV<sub>Initial</sub>* means $BAV_t$ on the Initial Valuation Date as defined in Annex 1 as determined by the Calculation Agent<br><br>*BAV<sub>Final</sub>* means $BAV_t$ on the Final Valuation Date as defined in Annex 1 as determined by the Calculation Agent<br><br>**The Notes are capital protected at their Maturity Date so that, provided that the Notes have not been redeemed prior to the Maturity Date, and subject to an event of default of default in respect of the Issuer not occurring, the each Noteholder shall receive at the Maturity Date an amount per Note held which is not less than the Specified Denomination per Note.** |
| **Calculation Agent** | Lehman Brothers International (Europe) |
| **Scheduled Trading Days** | With respect to the Premium Assets and Riskless Assets comprising the Balanced Account, any day on which :<br>(i)    In respect of the Lehman GAA Net Values EUR Index a day which is a Strategy Scheduled Trading Day, as defined in  Annex 4; and<br>(ii)   In respect of the Riskless Assets, a day which is a TARGET Settlement Day |
| **Minimum Trading Size** | 1 Note |
| **Minimum Subscription Size** | 5 Notes |
| **Common Scheduled Trading Day** | Any day that is a Scheduled Trading Day for all of the Premium Assets and the Riskless Assets then comprised in the Balanced Account |
| **Business Days** | TARGET Settlement Days  and  London |
| **Fallback upon the occurrence of Market Disruption Events** | If the Calculation Agent determines that:<br><br>(i)    any relevant Common Scheduled Trading Day(t) during the Term (other than the Common Scheduled Trading Day(t) that is scheduled to be the Final Valuation Date) is a Disrupted Day in respect of any Underlying$_i$, then notwithstanding that such Common Scheduled Trading Day(t) is a Disrupted Day in respect of any such Underlying$_i$, the Calculation Agent shall determine:<br><br>    a.   its good faith estimate of BAVt, PAVt, RAVt on such Common Scheduled Trading Day(t); and<br><br>    b.   whether a Rebalancing Event has occurred or is deemed to have occurred on such Common Scheduled Trading Day(t).<br><br>(ii)   if the Final Valuation Date (the "**Scheduled Final Valuation Date**") is a Disrupted Day in respect of any Underlying$_i$, the Final Observation Date shall be the first succeeding Common Scheduled Trading Day(t) that is not a Disrupted Day in respect of the Riskless Assets and/or the Premium Assets unless each of the four Common Scheduled Trading Days |

LEHMAN BROTHERS

## Structured Equity Solutions

|  |  |
|---|---|
|  | immediately following the Scheduled Final Valuation Date is a Disrupted Day in respect of the Riskless Assets and/or the Premium Assets. In that case that fourth Common Scheduled Trading Day(t) shall be deemed to be the Final Valuation Date notwithstanding the fact that such day is a Disrupted Day and the Calculation Agent shall determine its good faith estimate of BAVt, PAVt and/or RAVt on such fourth Common Scheduled Trading Day(t). |
| **Clearing** | Euroclear/Clearstream |
| **Listing** | Not Applicable |
| **Governing Law** | English Law |
| **Selling Restrictions** | In addition to those restrictions provided in the Documentation:<br><br>**European Prospectus Directive Selling Restriction:** As of the date hereof the Notes described in this termsheet have not been approved by any competent authority for the purposes of making a non-exempt public offer in any EEA member state which has implemented Directive 2003/71/EC (the "Prospectus Directive") and as such, until such time as a prospectus has been published, must only be offered within such states in circumstances which do not require the publication of a prospectus pursuant to Article 3 of the Prospectus Directive. These circumstances may include:<br><br>  ▪  Offers to Qualified Investors (as defined in the Prospectus Directive); or<br><br>  ▪  Offers of Notes where the minimum consideration per separate offer is at least Euro 50,000<br><br>You are strongly advised to seek appropriate legal advice before attempting to make any offer. In investing in the Notes you represent to Lehman Brothers that you do not intend to make an offer which will breach the Prospectus Directive, or cause Lehman Brothers or the Issuer to be in breach of the Prospectus Directive.<br><br>**US Selling Restriction:** The Notes have not been nor will be registered under the U.S. Securities Act of 1933 (as amended) and may not be offered or sold within the United States or to, or for the account or benefit of, U.S. persons except in certain transactions exempt from the registration requirements of the U.S. Securities Act of 1933<br><br>**General Selling Restriction:** Each purchaser of Notes must observe all applicable laws and regulations in any jurisdiction in which it may offer, sell, or deliver the Notes and it may not, directly or indirectly, offer, sell, resell, re-offer or deliver any Notes except under circumstances that will result, to the best of its knowledge and belief, in compliance with all applicable laws and regulations |
| **Form** | The Notes will be represented by a temporary global Note in bearer form which is exchangeable for interests in a permanent global Note in bearer form |
| **Documentation** | This term sheet must be read in conjunction with the Issuer's current EMTN programme Base Prospectus, as supplemented as at the Issue Date as well as the [Final Terms] prepared for this specific issue of Notes |

LEHMAN BROTHERS



# Structured Equity Solutions

| | |
|---|---|
| **Secondary Market Making** | Under normal market conditions, Lehman Brothers International (Europe) (LBIE) will make a secondary market in the Notes with a bid-ask spread no larger than 1% and daily liquidity.<br><br>The issuer has the right to charge an early redemption fee of 3.0% (the "**Maximum Early Redemption Fee**") for redemptions with effect from the Issue Date. This early redemption fee will be regularly reduced on a monthly basis at month end by a factor of 1/36 of the maximum redemption fee of 3.0%. |
| **Indicative Prices** | Under normal market conditions, indicative prices of the Notes for information purposes only with a bid-ask spread of no larger than 1% will be published by Lehman brothers International (Europe) on Reuters LBPB and Bloomberg LBPB. Indicative Price does not constitute a firm price which is capable of acceptance and may differ from any price quoted by Lehman Brothers International (Europe) or by any other third party when making a secondary market in the Notes. |

**LEHMAN BROTHERS**



## Structured Equity Solutions

### ANNEX 1
### Balanced Account Description and Investment Allocation Mechanism

**Balanced Account**

The Balanced Account shall be comprised of a notional investment in a dynamic basket of underlying assets comprising Premium Assets and Riskless Assets as defined in this Annex. The Balanced Account may be leveraged (with an associated cost) to maintain a target exposure to Premium Assets. Accordingly, a Premium Assets Leverage Cost, the Premium Assets Leverage and the Fixed Rate (each as defined below) shall be periodically deducted from the value of Balanced Account

The allocation of the Balanced Account's assets between Premium Assets and Riskless Assets and the assumption of liabilities in relation to the entering into of a notional credit facility with the associated interest charges and the periodic deduction of a Fixed Rate will be determined by the Calculation Agent from time to time during the Term of the Notes in accordance with the procedures described in the Investment Allocation Mechanism defined in this Annex below.

**Balanced Account Assets and Liabilities**

**Assets**

<u>(a) Premium Asset:</u>

The Lehman Brothers Global Asset Allocator Net Values EUR (Bloomberg: GAAEURN Index), as described in Annex 2.

<u>(b) Riskless Asset:</u>

A notional investment of a number of units that is deemed invested as provided herein in synthetic zero-coupon bonds denominated in EUR that redeem at 100% on the Final Potential Rebalancing Date.

**Liabilities**

<u>(c) Premium Assets Leverage ($L_t$):</u>
Notional advances under a hypothetical revolving credit facility in order to maintain the Target Exposure (TEt -as defined below), expressed in percentage terms

<u>(d) Premium Assets Leverage Cost ($LC_t$)</u>
The notional cost expressed as an interest rate accruing on a daily basis in respect of the Premium Assets Leverage.

<u>(e) Fixed Rate (Fixed Rate$_t$)</u>

An annual compounded percentage that is deducted from the $BAV_t$ on a daily basis

**Balanced Account Unit Value (BAV$_t$)**

In respect of any relevant Common Scheduled Trading Day$_{(t)}$ during the Term of the Notes, other than the Initial Valuation Date $BAV_t$ shall be a percentage as determined by the Calculation Agent in accordance with the following formula:

$$BAV_t = [PAV_t + RAV_t] - [FixedRate_t + L_{t-1} + LC_t]$$

LEHMAN BROTHERS



# Structured Equity Solutions

In respect of the Initial Valuation Date, $BAV_t$ shall be 100% (**$BAV_t$**)

Where

$PAV_t$ as defined below in this Annex

Fixed $Rate_t$ as defined below in this Annex

$L_t$ as defined below in this Annex

$LC_t$ as defined below in this Annex

$L_{t-1}$ means $L_t$ as of the immediately preceding Common Scheduled Trading Day

---

**Allocation of Assets and Liabilities comprising the Balanced Account**

The allocation rules as defined in this Annex govern the composition of the Balanced Account. The Calculation Agent shall determine the composition of the Balanced Account at any time on any Common Scheduled Trading $Day_{(t)}$ during the Term of the Notes by determining (i) the allocation between Premium Assets and Riskless Assets and (ii) any liabilities incurred in relation to the entering into of a notional revolving credit facility with the deduction of any associated interest charges and (iii) the deduction of the relevant Fixed $Rate_{(t)}$.

---

**Rebalancing Event**

The Calculation Agent shall rebalance the composition of the Balanced Account following the occurrence of a Rebalancing Event (as defined below). The purpose of rebalancing the composition of the Balanced Account is to seek to maximise the exposure of the Balanced Account to Premium Assets and therefore maximise the Final Redemption Amount repayable on the Maturity Date.

On any Potential Rebalancing Date during the Term of the Notes, a Rebalancing Event occurs or is deemed to occur where the Premium Asset Exposure is (i) less than the Target Exposure by a percentage greater than or equal to the Releverage Percentage or (ii) greater than Target Exposure by a percentage greater than or equal to the Deleverage Percentage, in each case, as determined by the Calculation Agent.

Following the occurrence of a Rebalancing Event, the Balanced Account shall be rebalanced (subject to $E_{min}$ and $E_{max}$) on the **Common** Scheduled Trading $Day_{(t)}$ following the Potential Rebalancing Date on which the Rebalancing Event occurred or is deemed to have occurred, as determined by the Calculation Agent. The Calculation Agent shall rebalance the Balanced Account and in relation to the Premium Assets rebalance at the then available Value k of the Strategy.

Deleverage Percentage is 10.00%

Releverage Percentage is 10.00%

---

**Potential Rebalancing Date**

Any Common Scheduled Trading $Day_t$ during the period from and including the Initial Valuation Date to, and including the Final Potential Rebalancing Date.

---

**Premium Asset Exposure ($PAE_t$)**

$PAE_t$ on the Initial Valuation Date shall be approximately equal to [125%] subject to market conditions on the Initial Valuation Date, the definitive number being determined by the Calculation Agent on the Initial Valuation



## LEHMAN BROTHERS

# Structured Equity Solutions

Date.

On any other Common Scheduled Trading Day$_{(t)}$ during the Term, the actual exposure of the Balanced Account to Premium Assets represented as a percentage as determined by the Calculation Agent on such relevant Common Scheduled Trading Day$_{(t)}$ in accordance with the following formula:

$$PAE_t = \left[\frac{PAV_t}{PAV_t + RAV_t}\right] \times \left[1 + \frac{L_{t-1}}{BAV_t}\right]$$

Where

$L_{t-1}$ as defined in this Annex below

**Target Exposure (TE$_t$)**

On any Potential Rebalancing Date during the Term a percentage representing the target Premium Asset Exposure of the Balanced Account as determined by the Calculation Agent in accordance with the following formula:

$$TE_t = (BAV_t - BF_t) \times m$$

Where:

BF$_t$ means on any Potential Rebalancing Date t during the Term of the product a percentage as determined by the Calculation Agent in accordance with the formula below:

$$BF_t = Min\left[BFV_t ; BFF_t\right]$$

**Where**

***BFV$_t$*** means the percentage value of the Variable Bond Floor on Potential Rebalancing Date t

***BFF$_t$*** means the percentage value of the Fixed Bond Floor on Potential Rebalancing Date t

**Variable Bond Floor$_t$** means, on any Potential Rebalancing Date during the Term a percentage as determined by the Calculation Agent equal to the the price (expressed as a percentage) at which the Calculation Agent determines that a hypothetical issuer would issue a [fixed rate] EUR-denominated bond maturing at 100 per cent. of the aggregate nominal amount and paying a coupon of 1.75 per cent. per annum with an aggregate nominal amount equal to the Aggregate Nominal Amount of the Notes on the Final Potential Rebalancing Date, using the prevailing rates at or about 10.00am London time on the date of determination. The price shall be calculated on the basis that such hypothetical issuer would on such day enter into an on-market swap with a recognised swap dealer as determined by the Calculation Agent in its sole and absolute discretion with an effective date two TARGET Settlement Days following such day under which the hypothetical issuer would pay for a period from and including such day to and including the Final Potential Rebalancing Date, 3 month EUR-EURIBOR- Reuters per annum on the issue price of such bonds and would

**LEHMAN BROTHERS**

## Structured Equity Solutions



receive on the Final Potential Rebalancing Date 100% of the bonds' aggregate nominal amount.

**Fixed Bond Floor$_t$** means on any Potential Rebalancing Date during the Term a percentage as determined by the Calculation Agent a value in accordance to the following formula:

$$BFF_t = 78\% + 22\% \times \frac{d_t}{d_T}$$

**Where**

$d_t$ means the number of calendar days from, and including, the Initial Valuation Date, up to, and including the Potential Rebalancing Date t

$d_T$ means the number of calendar days form, and including, the Initial Valuation Date, up to and including the Final Valuation Date

m: 5

**Weight$_t$**

In respect of any Common Scheduled Trading Day$_{(t)}$ during the Term of the Notes, a percentage as determined by the Calculation Agent in accordance with the following formula:

If the Calculation Agent determines according to the Definition of the Target Exposure that the Target Exposure on such Common Scheduled Trading Day$_{(t)}$ is lower than or equal to the product of

(i)     the difference between 100% and the Deleverage Percentage as defined above; and

(ii)    the Premium Asset Exposure on such Common Scheduled Trading Day$_{(t)}$

which, expressed as a formula, means:

$$TE_t \leq (100\% - DeleveragePercentage) \times PAE_t$$

or the Target Exposure on the Common Scheduled Trading Day$_{(t)}$ is greater than or equal to the product of

(i)     the sum of 100% and the Releverage Percentage as defined above; and

(ii)    the Premium Asset Exposure on such Common Scheduled Trading Day$_{(t)}$

which, expressed as a formula, means:

$$TE_t \geq (100\% + ReleveragePercentage) \times PAE_t$$

then the Weight on such Common Scheduled Trading Day$_{(t)}$ shall be equal to the Target Exposure on such Common Scheduled Trading Day$_{(t)}$

$$Weight_t = Max[E_{min}; Min [ TE_t ; E_{Max} ] ]$$

On each Common Scheduled Trading Day$_{(t)}$ on which none of the conditions above is satisfied the Weight shall be equal to the Premium Asset Exposure on such Common Scheduled Trading Day$_{(t)}$

**LEHMAN BROTHERS**



## Structured Equity Solutions

$$Weight_t = Max[E_{min}; Min [PAE_t; E_{Max}]]$$

$E_{min}$ (Minimum Premium Assets Exposure)   10%

$E_{max}$ (Maximum Premium Assets Exposure) 200%

**Premium Assets Value (PAV_t)**

In respect of any Common Scheduled Trading Day$_{(t)}$ during the Term, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$PAV_t = Weight_{t-1} \times BAV_{t-1} \times \left[ \frac{PAUV_t}{PAUV_{t-1}} \right]$$

$PAUV_t$ as defined below in this Annex

**Premium Assets Unit Value (PAUV_t)**

$PAUV_t$ on the Initial Valuation Date shall be 100%

In respect of any other Common Scheduled Trading Day$_{(t)}$ during the Term, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$PAUV_t = \frac{Asset_t}{Asset_0}$$

$Asset_t$ means the Strategy Value on a Common Scheduled Trading Day t

$Asset_0$ means the Strategy Value on the Initial Valuation Date

**Strategy Value**

In respect of the Premium Asset and a Common Scheduled Trading Day$_{(t)}$ during the Term of the Notes, ,the  "Strategy Value" means Value k, in respect of such Common Scheduled Trading Day$_{(t)}$, as determined by the Calculation Agent in accordance with the in annex 3.

**Riskless Asset Value (RAV_t)**

In respect of the Initial Valuation Date shall be approximately equal to 0%, the definitive number being determined by the Calculation Agent on the Initial Valuation Date.

In respect of any other Common Scheduled Trading Day$_{(t)}$ during the Term, a percentage as determined by the Calculation Agent in accordance with the following formula:

$$RAV_t = Max[0,1 - Weight_{t-1}] \times BAV_{t-1} \times \left[ \frac{RAUV_t}{RAUV_{t-1}} \right]$$

**Riskless Asset Unit Value (RAUV_t)**

In respect of any Common Scheduled Trading Day$_{(t)}$ during the Term of the Notes the present value of a notional investment as provided herein in synthetic EUR denominated  zero-coupon bonds that redeem at 100% on the Final Potential Rebalancing Date

**LEHMAN BROTHERS**

# Structured Equity Solutions



| | |
|---|---|
| **Fixed Rate (Fixed Rate$_t$)** | In respect of any relevant Scheduled Trading Day$_{(t)}$ during the Term of the Notes, a percentage as determined by the Calculation Agent equal to the product (i) 1.75% p.a. (ii) BAV$_{t-1}$ and (iii) Actual/Actual |
| | The Fixed Rate$_t$ shall accrue daily and shall be deducted on each Common Scheduled Trading Day$_{(t)}$ in arrears, from and including the Initial Valuation Date to and including the Maturity Date. |
| | Where: |
| | Actual/Actual means, the actual number of calendar days in the relevant Calculation Period divided by 365 as determined by the Calculation Agent |
| | Calculation Period means, in respect of the determination of a Fixed Rate$_t$ and the Term, the period from and including any Common Scheduled Trading Day$_{(t)-1}$ to and including the next following Common Scheduled Trading Day$_{(t)}$ |

**Premium Assets Leverage (L$_t$)**

If on any relevant Common Scheduled Trading Day$_{(t)}$ during the Term, the Premium Assets Exposure (or if a Rebalancing Event occurs, the Target Exposure) exceeds 100%, a drawdown will be deemed to be made under the notional revolving credit facility for the purpose of investing in Premium Assets comprising the Balanced Account Any notional advances will be deemed to be made by a hypothetical credit facility provider which shall be (i) rated with a minimum S&P rating of A-1 (or equivalent) and (ii) incorporated in an OECD country

L$_t$ on any Common Scheduled Trading Day$_{(t)}$ during the Term, shall be a percentage as determined by the Calculation Agent in accordance with the following formula:

$$L_t = BAV_t \times Max\left(Weight_t - 100\%; 0\right)$$

**Premium Assets Leverage Cost (LC$_t$)**

In respect of any notional drawdowns/advances L$_t$ on any relevant Common Scheduled Trading Day$_{(t)}$ during the Term, interest shall accrue at a percentage rate per annum on such Common Scheduled Trading Day$_{(t)}$ as determined by the Calculation Agent in accordance with the following formula:

$$LC_t = L_{t-1} \times R_t \times \frac{Calculation\ Period}{DCD}$$

Where:

R$_t$ means, in respect of any Common Scheduled Trading Day$_{(t)}$ during the Term, the interest rate, as determined by the Calculation Agent, to be applied to the Premium Assets Leverage from, but excluding, the Common Scheduled Trading Day$_{(t-1)}$ to, and including, that Common Scheduled Trading Day$_{(t)}$. "Rt-1" for each Common Scheduled Trading Day shall be determined by the Calculation Agent on such Common Scheduled Trading Day on the basis of the prevailing overnight interbank deposit rate calculated by the European Central Bank and published on Telerate Page 247 for the Common Scheduled Trading Day immediately preceding such Common Scheduled Trading Day (provided that if such rate does not appear on the Telerate page 247 (or, following replacement of such page by Reuters page EONIA, on the Reuters page EONIA) on such day, "Rt-1" for such Common

# LEHMAN BROTHERS

## Structured Equity Solutions



Scheduled Trading Day shall be determined by the Calculation Agent on the basis of the weighted average of all overnight unsecured lending transactions initiated within the Euro area by the panel banks contributing to the EURIBOR before the closing of real-time gross settlement system (RTGS) at 6:00 p.m.(Central European Time) for the Common Scheduled Trading Day immediately preceding such Common Scheduled Trading Day or, if such rate is not available on such date or at that time, the Calculation Agent, acting in a commercially reasonable manner, shall determine "Rt-1" on the basis of other available rates for deposits in EUR), plus a spread of 0.25 per cent. per annum).

For purposes of determining $LC_t$ in relation to any Common Scheduled Trading Day, $Lt-1$ means a percentage amount equal to $L_t$ in respect of the Common Scheduled Trading Day immediately preceding the relevant Common Scheduled Trading Day

Calculation Period means, in respect of the determination of a Premium Assets Leverage Cost and the Term of the Notes, the actual number of calendar days in the period from including any Common Scheduled Trading Day$_{(t)-1}$ to and including the next Common Scheduled Trading Day$_{(t)}$

DCD means a day count denominator, being 365

| Security Codes | Telekurs | ISIN | Common Code |
|---|---|---|---|
| | • | • | • |

## Disclaimer:

### S&P Disclaimer:

The Notes are not sponsored, endorsed, sold or promoted by Standard & Poor's, a division of The McGraw-Hill Companies, Inc. ("S&P"). S&P makes no representation or warranty, express or implied, to the holder of the Note(s) or any member of the public regarding the advisability of investing in securities generally or in the Note(s) particularly or the ability of the S&P Indices to track general stock market performance. S&P's only relationship to the Licensee is the licensing of certain trademarks and trade names of S&P and of the S&P Indices which is determined, composed and calculated by S&P without regard to the licensee or the Note(s). S&P has no obligation to take the needs of the Licensee or the holders of the Note(s) into consideration in determining, composing or calculating the S&P Indices. S&P is not responsible for and has not participated in the determination of the timing of, prices at, or quantities of the Note(s) to be issued or in the determination or calculation of the equation by which the Note(s) is to be converted into cash. S&P has no obligation or liability in connection with the administration, marketing or trading of the Note(s).

S&P DOES NOT GUARANTEE THE ACCURACY AND/OR THE COMPLETENESS OF THE S&P INDICES OR ANY DATA INCLUDED THEREIN AND S&P SHALL HAVE NO LIABILITY FOR ANY ERRORS, OMISSIONS, OR INTERRUPTIONS THEREIN. S&P MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO RESULTS TO BE OBTAINED BY LICENSEE, HOLDERS OF THE NOTE(S), OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE S&P INDICES OR ANY DATA INCLUDED THEREIN. S&P MAKES NO EXPRESS OR IMPLIED WARRANTIES, AND EXPRESSLY DISCLAIMS ALL WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE WITH RESPECT TO THE S&P INDICES OR ANY DATA INCLUDED THEREIN. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT SHALL S&P HAVE ANY LIABILITY FOR ANY SPECIAL, PUNITIVE, INDIRECT, OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS), EVEN IF NOTIFIED OF THE POSSIBILITY OF SUCH DAMAGES.

### Lehman Brothers Inc. Disclaimer:

# LEHMAN BROTHERS



# Structured Equity Solutions

LEHMAN BROTHERS INC. DOES NOT GUARANTEE THE ACCURACY AND/OR THE COMPLETENESS OF THE LEHMAN BROTHERS GLOBAL SYNTHETIC 5 YEAR BOND INDEX OR ANY DATA INCLUDED THEREIN AND LEHMAN BROTHERS INC. SHALL HAVE NO LIABILITY FOR ANY ERRORS, OMISSIONS, OR INTERRUPTIONS THEREIN. LEHMAN BROTHERS INC. MAKES NO WARRANTY, EXPRESS OR IMPLIED, AS TO RESULTS TO BE OBTAINED BY THE ISSUER, HOLDERS OF THE NOTE(S), OR ANY OTHER PERSON OR ENTITY FROM THE USE OF THE LEHMAN BROTHERS GLOBAL SYNTHETIC 5 YEAR BOND INDEX OR ANY DATA INCLUDED THEREIN. WITHOUT LIMITING ANY OF THE FOREGOING, IN NO EVENT SHALL LEHMAN BROTHERS INC. HAVE ANY LIABILITY FOR ANY SPECIAL, PUNITIVE, INDIRECT, OR CONSEQUENTIAL DAMAGES (INCLUDING LOST PROFITS), EVEN IF NOTIFIED OF THE POSSIBILITY OF SUCH DAMAGES.

### Lehman Brothers' disclaimer:

This term sheet is indicative only if so specified, in which case this term sheet will be subject to change without notice and no assurance is given that any transaction on the terms indicated can or will be arranged or agreed. Information other than economic terms (including market data and statistical information) has been obtained from various sources we consider reliable but we do not represent that it is complete or accurate and it should not be relied upon as such. Any analysis presented herein that indicates a range of outcomes that may result from changes in market parameters is not comprehensive, is not intended to suggest that any outcome is more likely than another and may have been derived using Lehman Brothers proprietary models, historic data and subjective interpretation. This term sheet does not constitute an offer or an agreement, or a solicitation of an offer or an agreement, to enter into any transaction. This term sheet must be read in conjunction with the prospectus, offering circular or other offer document relating to the transaction referred to herein (the "Related Documentation"). This term sheet supersedes any prior versions hereof and, if this term sheet is indicative, will be deemed to be superseded by any subsequent versions hereof and, with respect to any transaction described therein, by the Related Documentation. Transactions of the sort described herein contain complex financial characteristics and risk factors. Before entering into any transaction, you should consider the suitability of the transaction in light of your particular circumstances and independently review (with your professional advisers as necessary) the: (i) specific financial risks as well as the legal, regulatory, credit, tax and accounting consequences of entering into such transaction; and (ii) any information, warnings, risk disclosures and other matters disclosed in the Related Documentation. In entering into the transaction, the counterparty is deemed to represent to Lehman Brothers that it has obtained such professional advice as it deemed necessary and that it entered into the transaction for legitimate commercial and business reasons.

Any securities mentioned in this term sheet will not be registered under the U.S. Securities Act of 1933, as amended (the "Act"), and will not be offered or sold in the United States or for the account or benefit of "U.S. persons" within the meaning of Regulation S under the Act, except pursuant to an exemption from, or in a transaction not subject to, the registration requirements of the Act. Accordingly, this term sheet is being provided only to persons who are: (i) "qualified institutional buyers" within the meaning of Rule 144A under the Act; or (ii) not "U.S. persons" within the meaning of Regulation S under the Act. By accepting the delivery of this term sheet, the recipient warrants and acknowledges that it falls within the category of persons under (i) or (ii). No representation can be made as to the availability of the exemption provided by Rule 144A under the Act for re-sales of the securities mentioned in this term sheet

Lehman Brothers do not act as an adviser or fiduciary to its counterparties except where written agreement expressly provides otherwise. This term sheet is for your sole information and should not be distributed to private clients or any third parties without Lehman Brothers' prior written approval. Lehman Brothers International (Europe), its affiliates world-wide, and their respective officers, directors, partners and employees, including persons involved in the preparation or issuance of this term sheet, may from time to time: (i) in the capacity of principal or agent, buy, sell and/or hold any securities mentioned in this term sheet; (ii) act as market-makers or advisors, brokers or commercial and/or investment bankers in relation to any such securities or any transaction related thereto, including any related derivatives transaction; or (iii) act or have acted as manager, co-manager, initial purchaser, placement agent or underwriter of a public or private offering of any such securities.

References herein to "Lehman Brothers" shall include Lehman Brothers International (Europe) and its affiliates. Lehman Brothers International (Europe) and Lehman Brothers Europe Limited are authorised and regulated by the Financial Services Authority. © 2007 Lehman Brothers. All rights reserved.

LEHMAN BROTHERS

# Structured Equity Solutions



## Information Concerning Investment Risk

*General*

**Prospective purchasers of Notes should ensure that they understand the nature of the Notes and the extent of their exposure to risk and that they consider the suitability of the Notes as an investment in the light of their own circumstances, financial condition and taxation.**

**The performance of the Index (as defined below) may affect the nature and value of the investment return on the Notes. In particular, the value of the Notes may fluctuate based on the performance of the Index. Although the Notes are capital protected at their Maturity Date, if the Notes are redeemed prior to the Maturity Date for tax reasons or following an Event of Default or a Potential Termination Event, the amount that a Noteholder receives may be less than the purchase price paid for the Notes,**

**Prospective purchasers of Notes should conduct their own investigations and, in deciding whether or not to purchase Notes and form their own views of the merits of an investment related to the Index based upon such investigations and not in reliance on any information given in these indicative terms.**

**Given the highly specialised nature of these Notes, the Issuer and the Guarantor consider that they are only suitable for highly sophisticated investors who are able to determine themselves the risk of an investment linked to the Strategy.**

**Consequently, if you are not an investor who falls within the description above you should not consider purchasing these Notes without taking detailed advice from a specialised professional adviser.**

*Potential conflicts of interest*

The Issuer, the Guarantor, the Dealer, the Calculation Agent, the Strategy Advisor, the Fixed Income Index Sponsor and/or their respective subsidiaries may, from time to time, engage in purchase, sale or other transactions involving the component assets of each Index or related derivatives for their proprietary accounts and/or for accounts under their management and/or for clients. Such transactions may have a positive or negative effect on each Index and consequently on the value of the Notes. In addition, the Issuer, the Guarantor, the Dealer, the Calculation Agent, the Strategy Advisor, the Fixed Income Index Sponsor and/or their respective subsidiaries may, from time to time, act in other capacities with regard to the Notes (such as in an agency capacity and/or as the calculation agent) and may issue or participate in the issue of other competing financial instruments in respect of the Strategy and/or the component assets of each Index or similar securities or assets in similar sectors or markets and the introduction of such competing financial instruments may affect the value of the Notes. Such activities could present certain conflicts of interest with the interest of Holders and may affect the value of the Notes. The Issuer, the Guarantor, the Dealer, the Calculation Agent, the Strategy Advisor, the Fixed Income Index Sponsor and/or their respective subsidiaries owe no duty or responsibility to any Holder (or any other party) to avoid such conflicts.

In connection with the offering of the Notes, the Issuer, the Guarantor, the Dealer, the Calculation Agent, the Strategy Advisor, the Fixed Income Index Sponsor and/or their respective subsidiaries may enter into one or more hedging transactions with respect to the Strategy and/or any of the component assets of each Index or related derivatives. In connection with such hedging or with respect to proprietary or other trading activities by the Issuer, the Guarantor, the Dealer, the Calculation Agent, the Strategy Advisor, the Fixed Income Index Sponsor and/or their respective subsidiaries, the Issuer, the Guarantor, the Dealer, the Calculation Agent, the Strategy Advisor, the Fixed Income Index Sponsor and/or their respective subsidiaries may enter into transactions in the Strategy and/or any of the component assets of each Index

LEHMAN BROTHERS



# Structured Equity Solutions

or related derivatives which may affect the market price, liquidity or value of the Notes and which could be deemed to be adverse to the interests of the relevant Holder.

Such transactions could present certain conflicts of interest with the interest of Holder and may affect the value of the Notes. The Issuer, the Guarantor, the Dealer, the Calculation Agent, the Strategy Advisor, the Fixed Income Index Sponsor and/or their respective subsidiaries owe no duty or responsibility to any Holder (or any other party) to avoid such conflicts.

### Potential Termination Events

Prospective purchasers should familiarise themselves and understand events which constitute Potential Termination Event as set out in the Annex 3 and particularly note that some of the Potential Termination Events are triggered by changes to the Strategy or failure by the Strategy Advisor in the performance of its duties. Prospective purchasers should understand clearly that such Potential Termination Event may lead to the Calculation Agent procuring the Issuer to early cancel the Notes at the Alternative Settlement Amount. The Alternative Settlement Amount payable will be calculated by reference to the fair market value of the Notes as determined by the Calculation Agent in its sole and absolute discretion and will be reduced by an amount referable to the cost to the Issuer of unwinding any related hedging arrangements as determined by the Calculation Agent. Prospective purchasers should understand that such Alternative Settlement Amount may be an amount less than the amount the Holder has paid for the Notes and even may be zero.

### Determinations by the Calculation Agent

The Calculation Agent has certain discretions to determine whether certain events as further set out in Annexes have occurred. Prospective purchasers should be aware that any determination made by the Calculation Agent may have an adverse effect on the value of the Notes. For example, the Calculation Agent may determine that a Market Disruption Event has occurred or exists at a relevant time which may affect the determination of the price of an Index on a relevant Scheduled Trading Day. Any such discretion exercised by, or any calculation made by, the Calculation Agent (in the absence of manifest error) shall be binding.

### Risk relating to the Strategy

The Notes are linked to a balanced account notionally comprising Riskless Assets and Premium Assets. The performance of the Premium Assets shall be determined by reference to the calculation of the Value k for the Strategy (as detailed in Annexes 2 and 3 and defined in Annex 4 hereto).

Any analysis presented herein or in connection with the Notes or the Strategy that indicates a range of outcomes that may result from changes in market parameters is not comprehensive, is not intended to suggest that any outcome is more likely than another and may have been derived using the Strategy Advisor's proprietary models, historic data and subjective interpretation. **Prospective purchasers must understand that past performance is not necessarily indicative of future results.**

The Strategy Advisor produces a number of different types of research product including, amongst others, fundamental analysis, quantitative analysis and short term trading ideas and have developed different types of investment strategies. Recommendations contained in one type of research product or resulting from one type of strategy may differ from recommendations contained in other types of research product or resulting from other types of strategies, whether as a result of differing time horizons, methodologies, or otherwise. The Strategy Advisor does not represent or guarantee that the model used for the purpose of determining the Strategy is correct and achieves its aims.

The description of the Strategy contained herein is based on proprietary information of the Strategy Advisor and on current public information that the Strategy Advisor considers reliable. The Strategy Advisor does not represent that this information, including any third party information, is accurate or

LEHMAN BROTHERS



# Structured Equity Solutions

complete and it should not be relied upon as such. Market price, liquidity or value of the Notes may be adversely affected by exchange rates, interest rates, or other factors (including without limitation endogenous factors).

LEHMAN BROTHERS



## Structured Equity Solutions

### ANNEX 2

### Strategy and Methodology

Lehman Brothers' Global and European Equity Strategy team (the "**Strategy Advisor**") has developed the Lehman Brothers Global Asset Allocator Net Values in EUR ("**the Strategy**") as a transparent, rules-based dynamic asset allocation strategy based on a quantitative model whose objective is to achieve an optimal asset allocation for a portfolio exposed to the global equities market (through the Equity Index) and the global fixed income market (through the Fixed Income Index), as detailed hereafter. The strategy aims to maximise returns by switching between asset classes based on the signals from the quantitative model.

The allocation between each of the Equity Index and the Fixed Income Index is reviewed and adjusted on a monthly basis and is based on a set of quantitative market signals.

The Strategy is based on a methodology which overweighs / underweighs the equity markets in an initially balanced portfolio of global equities and global fixed income based on Forecast Excess Returns of equities versus fixed income (the "**Methodology**").

The Methodology represents a quantitative approach pursuant to which the respective weight of each of the Equity Index and the Fixed Income Index is determined for each period from and including a Re-Balance Date to and excluding the immediately following Re-Balance Date (the "**Monthly GAA Calculation Period**") based on the three following signals:

- Valuation Signal: relative valuation of equities and bonds measured by risk adjusted yield gap (earnings yields relative to bond yields adjusted by relative volatility);

- Sentiment Signal: sentiment towards the equity market measured by fund flow sentiment indicator; and

- Investor Positioning Signal: indicator of long and short investor positioning in derivatives market from the CFTC.

Capitalised terms used herein have the meaning ascribed to them in Annex 3.

**Allocation of assets**

The respective weight of each of the Equity Index and the Fixed Income Index in the Strategy will be calculated by the Strategy Advisor for each Monthly GAA Calculation Period on the corresponding Weighting Calculation Date according to the Methodology using fundamental data from the Data Providers.

**Alpha** or α is the percentage weight of the Equity Index in the Strategy as applicable for each Monthly GAA Calculation Period.

The level of Alpha is determined by the percentage band (an "**Observed Band**", as specified in the table below) into which the Forecast Excess Return falls.

In respect of a Re-Balance Date, the allocation into the Equity Index (**α**) for the immediately following Monthly GAA Calculation Period is determined by the level of Forecast Excess Return (derived from the allocation model as described below) on the relevant Weighting Calculation Date in accordance with the table below:

| Observed Band | % weight of Equity Index (α) | % weight of Fixed Income Index (1- α) |
|---|---|---|
| Less than or equal to -7% | 0% | 100% |
| Greater than -7% and less than or equal to -2% | 25% | 75% |
| Greater than -2% and less than or equal to +2% | 50% | 50% |
| Greater than +2% and less than or equal to +7% | 75% | 25% |
| Greater than +7% | 100% | 0% |

**LEHMAN BROTHERS**



# Structured Equity Solutions

**Forecast Excess Return** is the forecast value of Excess Return derived from a regression[1] of observed 6-month Excess Returns against the Allocation Signal on a set of Weighting Calculation Dates, as described below:

Excess Return$_{(t-6,t)}$ = a + b * Allocation Signal$_{(t-6)}$ + ε

> With:
>
> a ≈ 0;
>
> b is the regression coefficient, i.e. the numerical measure of the degree of the linear relationship between two variables given by the regression;
>
> ε$_t$ is the residual of the regression

Excess Return$_{(t-6,t)}$ is defined as the difference (1) – (2) between:

> (1)  Equity Index(t)/Equity Index(t-6)
>
> (2)  Fixed Income Index(t)/Fixed Income Index(t-6)

The set of Weighting Calculation Dates (t) over which the regression is performed is a set starting on 30 June 1987 and expanding with every new Weighting Calculation Date.

The results of this regression are then used to determine the Forecast Excess Return knowing the value of the Allocation Signal, using the following formula:

Forecast Excess Return$_{(t)}$ = b * Allocation Signal$_{(t)}$

**Allocation Signal** is calculated as the weighted average of three signals:

Allocation Signal$_{(t)}$ = 0.5 * Valuation$_{(t)}$ + 0.25 * Sentiment$_{(t)}$ + 0.25 * Investor Positioning$_{(t)}$

With:

> **Signal 1: Valuation Signal:** Relative Valuation of equities and bonds (earnings yield relative to bond yields adjusted by their relative volatility)
>
> The Valuation Signal measures the relative valuation of equity markets versus fixed income markets with a view to determine whether equity markets are under or overvalued compared to fixed income markets and can be interpreted as a refined valuation signal which quantifies the deviation in valuations taking into account the relative risks of the asset classes.
>
> Valuations are influenced by several factors. One of the factors which influence relative valuations is the relative volatility of asset classes, which in turn drives relative return expectations.
>
> The Valuation Signal used in the Methodology adjusts the Earnings Yield Gap (EYG) (as defined below) by the relative volatility of stocks to bonds and reflects the portion of the yield gap that is not explained by movements in the relative volatility of the asset classes. Earnings yields could move up relative to bond yields due to higher volatility of equities relative to bonds and therefore a higher yield gap may not necessarily reflect a valuation discrepancy. Hence, the Earnings Yield Gap is adjusted for relative volatility in the model.
>
> The Methodology provides for this adjustment by performing a regression of the Earnings Yield Gap on relative stock / bond volatility (σrel$_t$). A relative valuation framework is used, looking at earnings yields relative to bond yields so that the risk of both asset classes is taken into account. The residual ε from this regression gives the volatility-adjusted Earnings Yield Gap and is the Valuation Signal.
>
> The regressions are done over an expanding window using monthly data (from relevant Data Providers) from December 1969.

---

[1] Regression analysis is a statistical tool for the investigation of relationships between variables. The goal in regression analysis is to create a mathematical model that can be used to predict the values of a dependent variable based upon the values of an independent variable. In other words, such model is used to predict the value of Y when the value of X is known.

LEHMAN BROTHERS



# Structured Equity Solutions

The Earnings Yield Gap is calculated as:

$$EYG_t = a' + b' * \sigma rel_t + \varepsilon_t$$

where

$EYG_t$ = Earnings Yield Gap = $EY_t - BY_t$ on the relevant Weighting Calculation Date(t),

$\sigma rel_t = \sigma_{stocks,t} / \sigma_{bond,t}$ where $\sigma_{stocks}$ and $\sigma_{bond}$ are calculated as the 60 month rolling standard deviation of monthly total returns of stocks and bonds respectively. The equity returns are calculated as the equity market capitalisation weighted average of the returns of the relevant DataStream Global Indices[2] in local terms for the G7 Countries and the bond returns are calculated as the equity market capitalisation weighted average of the returns of the relevant DataStream 7-10 year Bond Indices[3] in local terms. The market capitalisation weights are calculated using market capitalisations for the G7 countries in USD terms.

EY = 12 month forward earnings yield from the relevant Weighting Calculation Date(t) calculated as (a)/(b)*100, where (a) is the sum of the 12 month forward earnings (in USD or as converted in USD) (calculated from IBES consensus estimates) representing for a stock the earnings expected 12 months from the relevant Weighting Calculation Date(t) and (b) the sum of the market capitalisation (in USD or as converted in USD), where the summation in (a) and (b) is over all stocks in the FTSE World Index Series[4] (or any successor thereto acceptable to the Strategy Advisor) which have data available for both numerator and denominator.

BY = Nominal yield on 10 year government bonds being the weighted average of the 10 year benchmark bond yields for the G7 Countries from DataStream weighted by the market value of the DataStream Global Indices for the respective G7 Countries in USD.

$\varepsilon_t$ = Residual of the regression.

a' and b' = Regression factors.

**Signal 2: Sentiment Signal:** Sentiment towards the asset class measured by fund flow sentiment indicator.

The Strategy assumes that (a) in general, stock market highs tend to coincide with extremely positive crowd sentiment and stock market lows are characterised by excessive crowd fear, (b) at extremes in sentiment, the majority is usually on the wrong side and (c) taking a contrary stance at such extremes may prove to be beneficial for market timing. Thus, analysing investor sentiment gives a complementary and important input into the asset allocation process.

The Sentiment Signal is based on four sub-signals:

*Mutual Fund Flows*: the net inflows (purchases minus sales) into equity mutual funds. Aggregating all the purchases of mutual funds serve as a contrarian tactical indicator of market sentiment. The Strategy assumes that when sentiment is extremely positive, stock prices are near a peak and when sentiment is low, stock prices are near a bottom.

*Cross Border Flows*: the aggregate of all portfolio investment activity across international boundaries. The Strategy regards willingness to move capital abroad as a key indicator of investors' risk appetite and as a feature of any recovery. As such, it has also served as a contrarian indicator of future stock market returns.

---

[2] DataStream Global Indices consist of national, regional and worldwide indices, updated on a daily basis as soon as the closing data is received in London for each market as calculated and disseminated by DataStream Group (or any successor thereto acceptable to the Strategy Advisor). This set of indices provides a tool for single sector-to-sector and stock-to-market comparisons.
[3] DataStream Bond Indices are calculated and disseminated by DataStream Group (or any successor thereto acceptable to the Strategy Advisor) to the revised formulations recommended by EFFAS (European Federation of Financial Analyst Societies). The indices are comprehensive and detailed: all major bond markets are available, with extensive historic data covering a wide range of calculations.
[4] The FTSE World Index Series is a subset of the FTSE Global Equity Index Series (GEIS) which covers over 7,000 securities in 48 different countries and captures 98% of the world's investable market capitalisation and includes a broad range of traditional and alternative asset class indexes such as multinationals, style, socially responsible investment, real estate and hedge funds. as calculated by the FTSE Group (or any successor thereto acceptable to the Strategy Advisor).

# LEHMAN BROTHERS



# Structured Equity Solutions

*Net issuance*: the aggregate of stock issuance minus buybacks (i.e. flows from the corporate sector). Again, there is a contrarian relationship between the net supply of equity to the market and subsequent market performance which is reflected in the Strategy.

*Liquidity*: The Strategy assumes that low liquidity is associated with positive sentiment towards equities and high liquidity with negative sentiment towards equities. Thus, the Strategy regards low liquidity as negative for forward returns and vice versa.

The Sentiment Signal is calculated as the equal weighted average of the z-scores[5] of the following four flow-based series (using the negative of the liquidity indicator):

- The three-month moving average of global purchases of equity mutual funds in USD for US, UK, Europe ex UK, Japan and Hong Kong, expressed as a percentage of the market value of the DataStream Global Indices for the same regions *(data sourced on weekly(W or monthly(M) basis from the following Data Providers: AMG Data Services(M), ICI(W), Fininfo Group(M), BVI Bundesverband Investment und Asset Management e.V.(M), Assogestioni(M), Inverco(M), Swedish Investment Fund Association(M), IMA(M), Hong Kong Investment Funds Assocation(M), DataStream(M) and Bloomberg(M))*;

- The three-month moving average of cross-border equity mutual funds in USD for US, UK, Japan, Sweden and the Euro area, expressed as a percentage of the market value of the DataStream World Index in USD *(data sourced on a weekly(W), monthly(M) or quarterly(Q) basis from the following Data Providers: AMG Data Services(W), United States Department of the Treasury(M), Ministry of Finance of Japan(W,M), Tokyo Stock Exchange(W), Sveriges Riksbank(Q), ECB(M), Office of National Statistics(Q) and DataStream(M,Q))*;

- The sum of the latest 12-month net equity mutual funds issuance in USD adjusted for buybacks for US, UK, Europe ex UK and Japan divided by the market value of the DataStream Global Indices for the same regions in USD *(data sourced on a weekly(W) or monthly(M) basis from the following Data Providers: Equityware(W,M), SDC(W,M), Bloomberg(W), Tokyo Stock Exchange(M) and DataStream(W))*; and

- The level of portfolio liquidity, which is the weighted percentage of cash in institutional portfolios minus the weighted short rate, where the weighted percentage of cash is calculated as the market capitalisation weighted averages of the cash held as a percentage of total assets for US, UK and Germany and the weighted short rate is calculated as the market capitalisation weighted averages of the 3 month rates for US, UK and Germany, all as determined by the Strategy Advisor. The market capitalisation weights are based on the market capitalisations of the DataStream Global Indices for US, UK and Germany respectively. *(data sourced on a monthly(M) or quarterly(Q) basis from the following Data Providers: ICI(M), WM Performance Services(Q),Bundesbank(M) and DataStream(M))*.

Given the delay in the availability of the data referred to above, the Sentiment Signal will be calculated using the latest available data relating to the calendar month which ends 2 months before the relevant Weighting Calculation Date.

Z-scores for the Sentiment Signal are calculated on an expanding window of data, starting in January 1991.

---

[5] Z-scores are a special application of the transformation rules. The z-score for an item indicates how far and in what direction, that item deviates from its distribution's mean, expressed in units of its distribution's standard deviation. The mathematics of the z-score transformation are such that if every item in a distribution is converted to its z-score, the transformed scores will necessarily have a mean of zero and a standard deviation of one.

Thus a very positive z-score indicates the item is significantly above its distribution's mean, a very negative z-score indicates it is significantly below its distribution's mean and a z-score close to zero means the item is close to its distribution's mean.

Z-scores are sometimes called "standard scores". The z-score transformation is especially useful when seeking to compare the relative standings of items from distributions with different means and/or different standard deviations.

Z-scores are particularly informative when the distribution to which they refer, is normal. In every normal distribution, the distance between the mean and a given z-score cuts off a fixed proportion of the total area under the curve.

LEHMAN BROTHERS



# Structured Equity Solutions

**Signal 3: Investor Positioning Signal:** Investor Positioning Data based upon outstanding positions in derivatives markets

The Strategy takes into account investor positioning analysis as an indicator of the directional opinions of different categories of participants in the market. The Investor Positioning Signal is derived from the investor positioning data on the S&P 500 Index (which for the purpose hereof shall include any successor index using, in the determination of the Strategy Advisor, the same or a substantially similar formula for and method of calculation as used in the calculation of the S&P 500 Index).

The Investor Positioning Signal is calculated based on data on open positions on the S&P 500 Index (or any successor thereto acceptable to the Strategy Advisor) published weekly by the CFTC. Information is derived from 2 categories of trades on the S&P500 Index (or any successor thereto acceptable to the Strategy Advisor):

- Net commercial positions; and
- Net non reportable positions

The "Commitment of Traders Reports" published by the CFTC provide a breakdown of open interest[6] for markets in which traders hold positions equal to or above the reporting levels established by the CFTC. Traders whose futures and option positions are above specific reporting levels set by CFTC regulations are classified as reportable positions.

*Commercial Positions* - When an individual reportable trader is identified to the CFTC, the trader is classified either as "commercial" or "non-commercial". A trader's reported futures positions in a commodity (this term being used in a generic sense to refer to all the contracts traded on the futures and options markets, including financial contracts like those on the S&P500) are classified as commercial if the trader is commercially "...engaged in business activities hedged by the use of the futures or option markets" in that commodity (as defined in the relevant CFTC's regulations (1.3(z)).

*Non reportable Positions* - The long and short open interest shown as "non reportable positions" are derived by subtracting total long and short "reportable positions" from the total open interest. Accordingly, for "non reportable positions", the number of traders involved and the commercial/non-commercial classification of each trader are unknown.

The net positions (ie, long position minus short position) as a percentage of open interest[7] for both the commercial positions and the non-reportable positions are calculated from the data published by the CFTC. Both series are smoothed using a 4 week moving average, and z-scores calculated over a 1 year moving window. The final signal is calculated as the average of the two z-scores (using the negative of the z-score for the non-reportable trades).

Publication of the data referred to above being made on a weekly basis by the CFTC, the Investor Positioning Signal will be calculated using data relating to the latest available publication from the CFTC as at the relevant Weighting Calculation Date.

---

[6] Open interest is the total of all futures and/or option contracts entered into and not yet offset by a transaction, by delivery, by exercise, *etc.* The aggregate of all long open interest is equal to the aggregate of all short open interest. Open interest held or controlled by a trader is referred to as that trader's position. (as per CFTC Backgrounder Number: 4-9)

[7] *Percentage of Open Interest:* Percents are calculated against the total open interest for the futures-only report and against the total futures-equivalent open interest for the options-and-futures-combined report (as per CFTC Backgrounder Number: 4-9). (Since derivatives markets have grown in size and complexity over the years, it is appropriate to refer to the positions as a percentage of open interest rather than the absolute sizes of the positions to get the underlying picture.)

LEHMAN BROTHERS



# Structured Equity Solutions

**ANNEX 3**

**Determination of Value (k) of the Lehman Global Asset Allocator Net Values EUR**

**1.    Calculation method**

In respect of any Strategy Scheduled Trading Day **other than the Strategy Scheduled Trading Date immediately following a Re-Balance Date (t)** from and including the Initial Valuation Date to and including the Valuation Date,   Value (k) reflects the then prevailing market value of the Strategy as determined by the Calculation Agent in accordance with the following formula:

$$Value_k = Value_{k-1} \times \left( \frac{Strategy_k}{Strategy_{k-1}} - FA \times DCF_{(k-1,k)} \right)$$

With

$$Strategy_k = Strategy_t \times \left[ \alpha_t \times \frac{Equity_k}{Equity_t} + (1 - \alpha_t) \times \frac{FixedIncome_k}{FixedIncome_t} \right]$$

In respect of the Strategy Scheduled Trading Day immediately following a Re-Balance Date (t), Value (k) reflects the then prevailing market value of the Strategy as determined by the Calculation Agent in accordance with the following formula:

$$Value_k = AdjustedValue_t \times \left( \frac{Strategy_k}{Strategy_{k-1}} - FA \times DCF_{(k-1,k)} \right)$$

With

$$AdjustedValue_t = Value_t \, x \left[ 1 - 2 \times \left| \alpha_t - \alpha_{t-1} \right| \times tc \right]$$

For the purposes hereof:

**Value $_0$** means 1000.00 being Value$_k$ on the Strategy commencement date of 30 December 2005;

**Strategy $_0$** means 1000.00 being Strategy$_k$ on the Strategy commencement date of 30 December 2005;

**Value $_{k-1}$** means the value of the Value (k) on the immediately preceding Strategy Scheduled Trading Day (i.e. Strategy Scheduled Trading Day (k-1))

**Value $_t$** means Value (k) on the Re-Balance Date (t), as determined by the Calculation Agent in accordance with the formula above

**FA** means 1.75% p.a.

LEHMAN BROTHERS



## Structured Equity Solutions

**DCF** $_{(k-1,k)}$ means the ratio of (a) the actual number of days from and including the Strategy Scheduled Trading Day (k-1) to but excluding the Strategy Scheduled Trading Day (k) and (b) 360;

**Equity**$_k$ means the Closing Level of the Equity Index on the relevant Strategy Scheduled Trading Day (k);

**Equity**$_t$ means the Closing Level of the Equity Index on the Re-Balance Date immediately preceding the relevant Strategy Scheduled Trading Day (k);

**Fixed Income**$_k$ means the Closing Level of the Fixed Income Index on the relevant Strategy Scheduled Trading Day (k);

**FixedIncome**$_t$ means the Closing Level of the Fixed Income Index on the Re-Balance Date immediately preceding the relevant Strategy Scheduled Trading Day (k);

**Strategy**$_t$ means the value of the Strategy on the Re-Balance Date immediately preceding the relevant Strategy Scheduled Trading Day (k);

**Strategy**$_{k-1}$ means the value of the Strategy on the Strategy Scheduled Trading Day (k-1;

$\alpha_t$ means the weighting of the Equity Index as determined by the Strategy Advisor on the relevant Weighting Calculation Date for the Re-Balance Date immediately preceding Strategy Scheduled Trading Day (k); and

$\alpha_{t-1}$ means the weighting of the Equity Index as determined by the Strategy Advisor on the relevant Weighting Calculation Date for the Re-Balance Date preceding the Re-Balance Date immediately preceding Strategy Scheduled Trading Day (k).

tc means the transaction costs of 0.10%.

2.    **Disrupted Day**

If there is a Disrupted Day in relation to an Index on any date which (but for the occurrence of a Disrupted Day) would otherwise have been a Strategy Scheduled Trading Day (a "**Determination Date**"), then for each Index affected by the occurrence of a Disrupted Day, the Calculation Agent shall determine its good faith estimate of the level for that Index as of the relevant Valuation Time of that Determination Date in accordance with the formula for and method of calculating the Index last in effect prior to the occurrence of the Disrupted Day and using only those securities that comprised the Index immediately prior to that Disrupted Day, notwithstanding the fact that such day is a Disrupted Day

Provided that, for purposes of determining $\alpha_t$ if the Determination Date which is a Disrupted Day falls on a Weighting Calculation Date, then the Determination Date for both Indices shall be the first succeeding Strategy Scheduled Trading Day that is not a Disrupted Day.   If the first succeeding Strategy Scheduled Trading Day that is not a Disrupted Day in respect of the Indices has not occurred as of the relevant Valuation Times on the fifth Strategy Scheduled Trading Day immediately following the original date that, but for the occurrence of another Disrupted Day, would have been the relevant Determination Date, then:

that fifth Strategy Scheduled Trading Day shall be deemed to be the Determination Date in respect of both Indices (the "Deemed Determination Date");

(b)    in respect of the Index where a Closing Level is published on the Deemed Determination Date, as the case may be, the level of such Index shall be such Closing Level, as determined by the Calculation Agent; and

(c)    in respect of the Index or Indices where no Closing Level is published on the Deemed Determination Date, the Calculation Agent shall determine its good faith estimate of the level of the relevant Index that would have prevailed but for that Disrupted Day as of the relevant Valuation Time on that Deemed Determination Date.

LEHMAN BROTHERS



# Structured Equity Solutions

3. **Extraordinary Events**

"**(a) Adjustments to Index**

*(x) Successor Index*: If an Index is (i) not calculated and announced by the relevant Index Sponsor but is calculated and announced by a successor sponsor acceptable to the Calculation Agent, or (ii) replaced by a successor index using, in the determination of the Calculation Agent, the same or a substantially similar formula for and method of calculation as used in the calculation of the Index, then in each case that index (the "**Successor Index**") will be deemed to be the Index.

*(y) Index Adjustment Event*: If in respect of an Index on or prior to the Final Valuation Date the relevant Index Sponsor announces that it will make a material change in the formula for or the method of calculating the Index or in any other way materially modifies the Index (other than a modification prescribed in that formula or method to maintain the Index in the event of changes in constituent stock and capitalization and other routine events) (an "**Index Modification**") or permanently cancels the Index and no Successor Index exists (an "**Index Cancellation**" and together with an Index Modification, each an "**Index Adjustment Event**"), then the Calculation Agent shall determine if such Index Adjustment Event has a material effect on the Notes and, if so, shall make its determination for the purposes of calculating Value (k) using, in lieu of a published level for the Index, the level for the Index as at that Determination Date as determined by the Calculation Agent in accordance with the formula for and method of calculating the Index last in effect prior to the Index Adjustment Event, but using only those securities that comprised the Index immediately prior to that Index Adjustment Event.

**(b) Correction of Index**

In respect of an Index, in the event that the Closing Level on any Determination Date and/or the determination of Value (k) is subsequently corrected and the correction is published by the Exchange, the Index Sponsor or the Strategy Advisor within three (3) Strategy Scheduled Trading Days after the original publication, the Strategy Advisor will adjust corresponding Value (k) to account for such correction, provided that any correction effected and published after the third weekday (meaning a day other than a Saturday or Sunday) prior to the Maturity Date shall be ignored."

4. **Potential Termination Events**

In the event of a Potential Termination Event occurring, then, if the Calculation Agent shall determine that such Potential Termination Event has a material effect on the Notes, the Calculation Agent shall direct the Issuer to redeem the Notes at an amount equal to the fair market value of the Notes, less the cost to the Issuer of unwinding any related hedging arrangements, all as determined by the Calculation Agent in its sole and absolute discretion as of the date so determined by the Calculation Agent.

Provided however that, for the purposes of Potential Event (4) and (5) below, the Calculation Agent may, in its sole discretion, instead elect to appoint a successor Strategy Advisor ("**Successor Strategy Advisor**") within five (5) Business Days after the date upon which the Potential Termination Event occurred . In which event, the Successor Strategy Advisor shall assume, to the satisfaction of the Issuer, all respective rights, duties and functions of the Strategy Advisor.

In the context of this Clause, "**Potential Termination Event**" shall be deemed to have occurred should the Calculation Agent determine that:

(1) the Strategy parameters are amended, implemented or developed in a way which, in the determination of the Calculation Agent, has an adverse impact on the Notes and/or the Issuer's obligations thereunder;

LEHMAN BROTHERS



# Structured Equity Solutions

(2) the method for calculating the Value of Strategy is amended, implemented or used in a way which, in the determination of the Calculation Agent, has an adverse impact on the Notes and/or the Issuer's obligations thereunder;

(3) the currency or the frequency in which the Value of the Strategy is calculated and published changes in a way which, in the determination of the Calculation Agent, has an adverse impact on the Notes and/or the Issuer's obligations thereunder;

(4) the Strategy Advisor in respect of the Strategy fails for reasons other than of technical or operational nature to calculate or publish the Value of the Strategy for eight (8) consecutive Strategy Scheduled Trading Days; and

(5) the Strategy Advisor breaches any of its obligations in relation to the Strategy (as set out in the description of the Strategy in the Annex), as determined by the Calculation Agent and notified to the Strategy Advisor thereafter by the Calculation Agent (a "**Notice**"), and such breach is not remedied, to the satisfaction of the Calculation Agent, within five (5) Strategy Scheduled Trading Days of such Notice

**5.    Strategy Advisor / Calculation Agent**

None of the Strategy Advisor and the Calculation Agent shall have any responsibility to Noteholders for good faith errors or omissions in its calculations and determinations except such as may result from its own wilful default, gross negligence or bad faith. The calculations and determinations of the Strategy Advisor or the Calculation Agent, as the case may be, shall, in the absence of manifest error, be final, conclusive and binding on the Noteholders. Noteholders shall not be entitled to make any claim against the Strategy Advisor or the Calculation Agent, the Issuer or the Guarantor in the case where an Index Sponsor or a Data Provider shall have made any error, omission or other incorrect statement in connection with the calculation and public announcement of the relevant Index or the relevant information, as the case may be.

Nothing contained herein shall prevent the Strategy Advisor and the Calculation Agent from dealing in these Notes or from entering into any related transactions, including without limitation any swap or hedging transactions, with the Issuer (or any of its affiliates) or any holder of Notes (or any of its affiliates).

LEHMAN BROTHERS



## Structured Equity Solutions

### ANNEX 4

### Definitions

**Allocation Signal** has the meaning ascribed to this term in Annex 2.

**Alpha** or **α** has the meaning ascribed to this term in Annex 2. Alpha on the Initial Valuation Date is as specified hereabove in Part A.

**Closing Level** means in relation to an Index and a Strategy Scheduled Trading Day, the official level of such Index, as calculated and announced by the Index Sponsor at the relevant Valuation Time on such Strategy Scheduled Trading Day, as determined by the Calculation Agent.

**Cross Border Flows** has the meaning ascribed to this term in Annex 2.

**Data Provider** means a leading financial data provider or publicly available source as selected by the Strategy Advisor in its sole discretion and as of the date hereof, in respect of (a) the Valuation Signal, Institutional Brokers' Estimate System (IBES) for the forward earnings, FTSE for share numbers, investability factors and index constituents, Exshare (the International Pricing database from FT Interactive Data) for prices, DataStream for bond yields, equity and bond total returns and market capitalisations and Global Financial Data for historical equity and bond total returns and bond yields; (b) the Investor Sentiment Signal, AMG Data Services, Investment Company Institute (ICI), Fininfo Group, BVI Bundesverband Investment und Asset Management e.V., Associazione del Risparmoio Gestito (Assogestioni), Asociacion de Instituciones de Inversion Colectiva y Fondos de Pensiones (Inverco), the Swedish Investment Fund Association, the Investment Management Association (IMA), the Hong Kong Investment Funds Association, DataStream and Bloomberg for the Mutual Fund Flows, AMG Data Services, United States Department of the Treasury, Ministry of Finance of Japan, Tokyo Stock Exchange, Office of National Statistics (ONS), Sveriges Riksbank, European Central Bank (ECB) and DataStream for the Cross-border Flows, Equityware, Securities Data Co. (SDC), Tokyo Stock Exchange, Bloomberg and DataStream for the Net Issuance and ICI, Deutsche Bundesbank, WM Performance Services and DataStream for the Liquidity; and (c) the Investor positioning Signal, the Commodity Futures Trading Commission (CFTC), or for each of the above, any successor thereto acceptable to the Strategy Advisor.

**Determination Date** has the meaning ascribed to this term in Annex 3.

**Disrupted Day** means (a) any Strategy Scheduled Trading Day on which in relation to the Equity Index, a relevant Exchange or any relevant Related Exchange fails to open for trading during its regular trading session or on which a Market Disruption Event has occurred and (b) any Strategy Scheduled Trading Day on which in relation to Fixed Income Index, the relevant Index Sponsor fails to calculate and announce the Closing Level of the Index.

**Early Closure** means the closure on any Exchange Business Day of any relevant Exchange(s) relating to the securities thereof that comprise 20 per cent. or more of the level of the Equity Index or any Related Exchange(s) prior to its Scheduled Closing Time unless, where the level of the Equity Index is to be determined at the Valuation Time, such earlier closing time is announced by such Exchange(s) or Related Exchange(s) at least one hour prior to the earlier of (i) the actual closing time for the regular trading session on such Exchange(s) or Related Exchange(s) on such Exchange Business Day and (ii) the submission deadline for orders to be entered into the Exchange or Related Exchange system for execution at the Valuation Time on such Exchange Business Day.

**Earning Yield Gap** or **EYG** has the meaning ascribed to this term in Annex 2.

**Equity Index** means the Standard and Poor's Global 100 Net Total Return index in Euros (Bloomberg: SPTR00EN Index), a stock index that is composed of 100 stocks which is currently compiled and calculated by the Equity Index Sponsor.

**Equity Index Sponsor** means Standard and Poor's Corporation and/or, as the context requires or permits, any successor sponsor accepted by the Calculation Agent pursuant to Annex 3.

**Excess Return** has the meaning ascribed to this term in Annex 2.

LEHMAN BROTHERS



# Structured Equity Solutions

**Exchange** means, with respect to (A) the Equity Index, (i) the New York Stock Exchange, (ii) the American Stock Exchange and (iii) the National Association of Securities Dealers Automated Quotation National Market System (or any successor to such exchange or quotation system) and (B) the Fixed Income Index, not applicable.

**Exchange Business Day** means any Strategy Scheduled Trading Day on which, in respect of the Equity Index, each Exchange and Related Exchange is open for trading during its respective regular trading sessions, notwithstanding any such Exchange or Related Exchange closing prior to its Scheduled Closing Time.

**Exchange Disruption** means any event (other than an Early Closure) that disrupts or impairs (as determined by the Calculation Agent) the ability of market participants in general (i) to effect transactions on any relevant Exchange in securities thereof that comprise 20 per cent. or more of the level of the Equity Index, or (ii) to effect transactions in, or obtain market values for, futures or options contracts relating to the Equity Index on any relevant Related Exchange.

**Fixed Income Index** means Lehman Brothers Global Synthetic 5 Year Bond Index which is currently compiled and calculated by the Fixed Income Index Sponsor daily and published on Bloomberg Page: LG03TREU Index. The Fixed Income Index is a proprietary composite index comprising the Fixed Income Sponsor's 5 years Bellwether Swap Indices in USD (40%), EUR (30%), GBP (10%) and JPY (10%) that is designed to be representative of the evolution of the main fixed income markets worldwide. The underlying 5 years swap indices are rebalanced monthly.

**Fixed Income Index Sponsor** means Lehman Brothers Inc. and/or, as the context requires or permits, any successor sponsor accepted by the Calculation Agent pursuant to Annex 3.

**Forecast Excess Return** has the meaning ascribed to this term in Annex 2.

**G7 Countries** means United States of America, United Kingdom, Germany, France, Italy, Canada and Japan.

**Index** means either the Equity Index or the Fixed Income Index and **Indices** means the Equity Index and the Fixed Income Index together.

**Index Sponsor** means either the Equity Index Sponsor or the Fixed Income Index Sponsor, as the context so requires.

**Investor Positioning Signal** has the meaning ascribed to this term in Annex 2.

**Liquidity** has the meaning ascribed to this term in Annex 2.

**Market Disruption Event** means in respect of the Equity Index, the occurrence or existence of (i) a Trading Disruption, (ii) an Exchange Disruption, which in either case the Calculation Agent determines is material, at any time during the one hour period that ends at the Scheduled Closing Time, or (iii) an Early Closure. For the purposes of determining whether a Market Disruption Event exists at any time, if a Market Disruption Event in respect of the Equity Index exists at any time, if a Market Disruption Event occurs in respect of a security included in the Index at any time, then the relevant percentage contribution of that security to the level of the Index shall be based on a comparison of (x) the portion of the level of the Index attributable to that security to (y) the overall level of the Index, in each case immediately before the occurrence of such Market Disruption Event.

**Methodology** has the meaning ascribed to this term in Annex 2.

**Monthly GAA Calculation Period** has the meaning ascribed to this term in Annex 2.

**Mutual Fund Flows** has the meaning ascribed to this term in Annex 2.

**Net Issuance** has the meaning ascribed to this term in Annex 2.

**Observed Band** has the meaning ascribed to this term in Annex 2.

**Re-Balance Date** means the last Strategy Scheduled Trading Day in each calendar month during the Term of the Notes.

**Related Exchange** means with respect to (A) the Equity Index, both (i) the Chicago Board Options Exchange and (ii) the Chicago Mercantile Exchange and (B) the Fixed Income Index, not applicable.

LEHMAN BROTHERS



# Structured Equity Solutions

**Scheduled Closing Time** means, in respect of an Exchange or a Related Exchange and a Strategy Scheduled Trading Day, the scheduled weekday closing time of such Exchange or Related Exchange on such Strategy Scheduled Trading Day, without regard to after hours or any other trading outside of the regular trading session hours.

**Sentiment Signal** has the meaning ascribed to this term in Annex 2.

**Strategy** has the meaning ascribed to this term in Annex 2.

**Strategy Scheduled Trading Day** means a day on which (a) each Exchange is scheduled to be open for trading for its regular trading sessions, notwithstanding such Exchange closing prior to its scheduled weekday closing time on such day, without regard to after hours or any other trading outside of the regular trading session and (b) the Fixed Income Index is scheduled to be calculated and published by the Fixed Income Index Sponsor in accordance with the provisional calendar of the Fixed Income Index Sponsor

**Initial Valuation Date** means the date specified the date specified hereabove in Part A, provided that if such day is not a Common Scheduled Trading Day, the Initial Valuation Date shall be the immediately following day that is a Common Scheduled Trading Day.

**Term** means any day during the period from and including the Initial Valuation Date to but excluding the Final Valuation Date

**Trading Disruption** means, with respect to the Equity Index, any suspension of or limitation imposed on trading by the relevant Exchange or Related Exchange or otherwise and whether by reason of movements in price exceeding limits permitted by the relevant Exchange or Related Exchange or otherwise (i) on any relevant Exchange relating to securities that comprise 20 per cent. or more of the level of the Equity Index, or (ii) in futures or options contracts relating to the Index on any relevant Related Exchange.

**Final Valuation Date** means the date specified hereabove in Part A.

**Valuation Time** means in respect of a Strategy Scheduled Trading Day and (a) the Equity Index, the latest of the Scheduled Closing Times in respect of the Exchanges and (b) the Fixed Income Index, the scheduled publication time at which the Fixed Income Index Sponsor proceeds with the latest publication of level of the Index in accordance with the provisional calendar of the Fixed Income Index Sponsor.

**Valuation Signal** has the meaning ascribed to this term in Annex 2.

**Value$_{Initial}$** means Value (k) on the Initial Valuation Date.

**Value$_{Final}$** means Value (k) on the Final Valuation Date.

**Value (k)** has the meaning ascribed to this term in Annex 3.

**Value (t)** has the meaning ascribed to this term in Annex 3.

**Weighting Calculation Date** means the day that is five (5) Strategy Scheduled Trading Days before Re-Balance Date in any particular calendar month during the Term of the Notes.. For the purpose hereof, whether a day will be treated as a Strategy Scheduled Trading Day will be determined on the Strategy Scheduled Trading Day immediately preceding the day scheduled to be the Weighting Calculation Date, without regard to any change in any Exchange's schedule on or after such day.


*Acknowledged and agreed by:*

*Name:*

*Signature*

*Date*

## Instrument Details

# Lehman Bankhaus ––– Capital Protected CPPI Note 2007–6.11.17 (EXP.31.10.17) on a Basket of Reference Assets

| | |
|---|---|
| **Issuer** | GK219471 **Lehman Brothers Bankhaus AG** |
| **Domicile** | Germany |
| **Sector** | Banks & other credit institutions |

**Basic Data**

| | |
|---|---|
| **TK Valor Number** | 3472910 |
| **ISIN** | XS0326086633 |
| **CFI Code** | DTZXFB (Assigned by another NNA) |
| **Instrument Type** | Hybrid, structured instruments |
| **Product Name** | 10yr Capital Protected CPPI Note on the Lehman Brothers GAA EUR Net Values |
| **Short Name** | Basket/Leh 17 EMTN |
| **Security Prefix** | Capital Protected CPPI Note |
| **Security Suffix** | 2007–6.11.17 (EXP.31.10.17) on a Basket of Reference Assets |
| **Instrument Form** | Bearer form |
| **Delivery Mode** | Clearstream Bk Lux: Not deliverable, global cert. Euroclear Bank: Not deliverable, global cert. |
| **Instrument Unit** | Nominal (par value/face value) |
| **Original Issuer** | GK219471 Lehman Bankhaus Frankfurt |
| **Currency / Principal** | EUR |
| **Maturity Date** | 06.11.2017 |
| **Denominations** | EUR 10000 |
| **Callable by Issuer** | Yes |
| **Callable for tax reasons only** | Yes |
| **Security Number Type** | No processing |
| **Without Physical Coupon** | Yes |

**Instrument Classification**

| | |
|---|---|
| **Type of security** | Hybrids, structured instruments |
| **Borrower category** | Bond issued by banks & financial instit. |
| **Telekurs jurisdiction** | Eurobonds |
| **Market affiliation** | Euro Medium Term Note (EMTN) |
| **Price category** | Instrument listed on standard market |
| **Classification of financial instruments** | Debt Instruments, Medium–term notes, Zero rate/Discounted, Not available / unknown, Fixed maturity, Bearer |
| **EU Interest income tax category** | Unknown |

**Structured Product Details**

| Date Type | Date From | Date To | Pricing Function |
|---|---|---|---|
| Final fixing | 31.10.2017 | 31.10.2017 | Closing price on fixing day |

**EU Interest Income Taxation**    (not permissioned)

**Tax / Reporting**

| | | Applicability | Object | Application | Amounts |
|---|---|---|---|---|---|
| **Country: Switzerland** | | | | | |
| **Current Taxes** N/P | | | | | |
| **Reporting / Regulation** | SNB | N/P | | | |
| | SNB | N/P | | | |
| | SNB | N/P | | | |
| **Country: Liechtenstein** | | | | | |
| **Current Taxes** N/P | | | | | |
| **Country: United Kingdom** | | | | | |
| **Current Taxes** | Capital gains tax | Potentially liable/ applicable | | ––– | Tax resident: |

**Latest Company Ratings**

| Scheme | Name | Date | Rating | Rating Trend |
|---|---|---|---|---|
| MDYISTCP | MOODY'S commercial paper short term | 10.12.2008 | WR | |
| SPSICRFC | S&P Issuer Credit Rating Foreign CCY ST | 15.09.2008 | D | Not on watchlist |
| SPLICRFC | S&P Issuer Credit Rating Foreign CCY LT | 15.09.2008 | D | Not on watchlist |
| SPLICRLC | S&P Issuer Credit Rating Local CCY LT | 15.09.2008 | D | Not on watchlist |
| SPSICRLC | S&P Issuer Credit Rating Local CCY ST | 15.09.2008 | D | Not on watchlist |

Rating History

**Listings**

| Code | Exchange | CCY | Listing Name | Trader Symbol | SEDOL | Listing Status | Notation Type |
|---|---|---|---|---|---|---|---|
| 2613 | Lehman Br EU | EUR | BASKET/LEH 17 EMTN | | | No Listing (Quoted) | Percentage price |
| 186 | Xtrakter | EUR | BASKET/LEH 17 EMTN | | | No Listing (Quoted) | Percentage price |

**NSINs**

| CH | 3472910 | Active | 11.10.2007 |
|---|---|---|---|
| U* | N52152688 | Active | 11.10.2007 |
| XS | 032608663 | Active | 12.10.2007 |
| ISIN | XS0326086633 | Active | 11.10.2007 |

**MiFID Classification**   (not permissioned)

| Country | Class. Schema | Classification | Valid From | Valid Until |
|---------|---------------|----------------|------------|-------------|

**Managers / Agents**

| Institution | Role |
|-------------|------|
| LBI Europe | Calculation/Fixing agent |
| LBI Europe | Lead manager |

**Depository / Clearing**

| Name | System | Mode / Details | Main CSD/ESES | Custody Type | Unit / Denomination |
|------|--------|----------------|---------------|--------------|---------------------|
| Clearstream Bk Lux | CEDCOM(Luxembourg+Euro) | Not deliverable, global cert. | | | |
| Euroclear Bank | EUCLID(Belgium+Euro) | Not deliverable, global cert. | | | |

**Guarantee / Covenant**

| Guarantor | Type |
|-----------|------|
| Lehman Brothers | Joint & several guarantees for the total |

**Issue Conditions**

| | |
|---|---|
| TK Valor Number | 3472910 |
| ISIN | XS0326086633 |
| Short Name | Basket/Leh 17 EMTN |
| Original Issuer | Lehman Bankhaus Frankfurt |
| Issue Status | Issued |
| Issue Amount | EUR 3000000 |
| Original Denominations | EUR 10000 |
| Denominations | EUR 10000 |
| Issue Price | 100 % |
| Payment on Subscription | No |
| Payment Type | Fully paid−up |
| Payment Date | 31.10.2007 |
| Restrictions | United States EEA 'European Economic Area' |

## Early Redemption / Extension Conditions

Repayment Due To Taxation

| | |
|---|---|
| **Entitled Person** | Issuer |
| **Payments** | Total |
| **Notice Period** | ––– 30 Day |

| **Repayments** | Call Period | Call Frequency | Repayment Price | Inc. / Dec. Value | Inc. / Dec. Frequency |
|---|---|---|---|---|---|
| | 31.10.2007 | At any time | 100 % | | |
| | –– | | | | |

## Early Redemption Schedule

| Period / Date | Reason | Entitled Person | Notice Period | Redemption Amount |
|---|---|---|---|---|
| 31.10.2007 –– 06.11.2017 | Taxation | Issuer | – 30 Day | 100 % |

## Final Redemption

**Set ID**  74050295

| | | |
|---|---|---|
| | **Settlement Style** | Cash |
| | **Paid in** | EUR |
| | **Conditions** | Observation |
| | | Period: 31.10.2017 ––– 31.10.2017 |
| | | Linked to a Basket of Reference Assets |
| **Additive** | **Due Date** | 06.11.2017 |
| | | Details |
| | **Settlement Style** | Minimum repayment (cash) |
| | **Gross Amount** | 100 % |
| | **Due Date** | 06.11.2017 |
| | | Details |

## Additional Information

```
Repayment according to:
SD x (100% + Max(0%;BAV Final/BAV Initial -
100%))

BAV Final means BAVt on the final valuation
date.
BAV Initial means BAVt on the Initial valuation
date
```

## All CA (excl. Dividends / Listing Events)

| | |
|---|---|
| 01.05.2009 | **Company amalgamation/ takeover** |
| | Offer |
| | Purchase offer |
| | Effective Date  01.05.2009 |

Data Version: T20 Run (12. Aug 2009, VDMMAPS.V009224.T20T.svwpvdb04)

# Forderungsanmeldung

In dem Insolvenzverfahren über das Vermögen der

**Lehman Brothers Bankhaus AG**
**Rathenauplatz 1**
**60313 Frankfurt am Main**

**Amtsgericht Frankfurt am Main AZ: 810 IN 1120/08 L**

Ablauf der Anmeldefrist:      3. Februar 2009
1. Prüfungstermin:            17. März 2009

---

**Gläubiger:**
*(Name, Vorname, bzw. Firmenbezeichnung gem Eintragung im Handelsregister, Anschrift, Rufnummer und Aktenzeichen)*

ASPECTA ASSURANCE
International Luxembourg, SA
5 rue Eugène Ruppert ,
L-2453 Luxembourg ,

**Gläubigervertreter:**
*(Die Beauftragung eines Rechtsanwaltes ist freigestellt. Die Vollmacht muß sich auf das Inso- bzw. Vergleichsverfahren erstrecken)*

**Bankverbindung:**
Bank: BIC BGLLLULL
BLZ:
Kto-Nr.
IBAN: LU52 0030 0645 0029 0000

**Bankverbindung:**
Bank:
BLZ:
Kto-Nr:

## I. Forderungen nach § 38 InsO

### 1. HINWEISE:

*Soweit sich die Hauptforderung aus verschiedenen einzelnen Rechnungen zusammensetzt, fügen Sie bitte eine detaillierte Aufgliederung als Anlage bei. Es sind nur EUR-Beträge anzugeben. Forderungen in ausländischer Währung sind in den Kurswert bei Verfahrenseröffnung umzurechnen, notfalls sind Schätzwerte anzugeben.*

*Zinsen dürfen nur bis zum Zeitpunkt der Verfahrenseröffnung - Datum des Eröffnungsbeschlusses - berechnet werden. Bei verschiedenen Zinsansprüchen bitte eine Zinsstaffel beifügen.*
*Kosten können geltend gemacht werden, soweit sie vor Verfahrenseröffnung entstanden sind.*

| | | |
|---|---|---|
| Hauptforderung: Nominal | Summe = | 1.820.000 EUR |
| Zinsen: ___ % | Summe = | _____ EUR |
| Kosten: | Summe = | _____ EUR |

**Summe der Forderungen gem. § 38 InsO insgesamt:**      1.820.000 EUR

2

*2. Rechtsgrund der Forderungen:*

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

Wertpapier XS0326086633

1.820.000 Anteile

## II. Masseforderungen im Sinne des § 55 Abs. 1 Nr. 1 bis 3 InsO

*1. Forderungen:*

| | | | |
|---|---|---|---|
| Hauptforderung: | | Summe = | _____ EUR |
| Zinsen: | ___ % | Summe = | _____ EUR |
| Kosten: | | Summe = | _____ EUR |

**Summe der Forderungen gem. § 55 Abs. 1 InsO:**     _____ EUR

*2. Rechtsgrund der Forderungen:*

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

## III. Masseforderungen im Sinne des § 55 Abs. 2 InsO

*1. Forderungen:*

| | | | |
|---|---|---|---|
| Hauptforderung: | | Summe = | _____ EUR |
| Zinsen: | ___ % | Summe = | _____ EUR |
| Kosten: | | Summe = | _____ EUR |

**Summe der Forderungen gem. § 55 Abs. 2 InsO:**     _____ EUR

*2. Rechtsgrund der Forderungen:*

*(Warenlieferung, Miete, Darlehen, Schadenersatz, Reparaturleistung, Lohnforderung usw.)*

## Amtsgericht Frankfurt am Main - Insolvenzgericht -

Amtsgericht Frankfurt am Main, Postfach , 60313 Frankfurt am Main

ASPECTA ASSURANCE International Luxembourg SA
5 rue Eugene Ruppert
2453 Luxembourg
LUXEMBURG

```
A S P E C T A

Entré le  2 4 JUIL. 2009
```

Sehr geehrte Dame,
sehr geehrter Herr,

anliegend erhalten Sie einen Auszug aus der Insolvenztabelle mit der Bitte um
Kenntnisnahme.

Mit freundlichen Grüßen

Insolvenzgericht

Dieses Schreiben ist maschinell erstellt und ohne Unterschrift gültig.

# Amtsgericht Frankfurt am Main - Insolvenzgericht -

ASPECTA

## Beglaubigter Auszug aus der Insolvenztabelle - Abt. I -

Wegen der Rechtslage wird auf anliegendes Merkblatt verwiesen.

Entré le 2 4 JUIL. 2009

| Geschäfts-Nr. | 810 IN 1120/08 L-2 |
|---|---|
| Schuldner/in | Lehman Brothers Bankhaus Aktiengesellschaft, Rathenauplatz 1, 60313 Frankfurt am Main (AG Frankfurt am Main, HRB 28139), vertreten durch: 1. Michael Bonacker, (Vorstand), 2. Hans Martin Bury, (Vorstand), 3. Dr. Patrick Schmitz-Morkramer, (Vorstand), 4. Christian Spieler, (Vorstand), 5. Helmut Olivier, (Vorstand) |
| Insolvenzverwalter/in | Rechtsanwalt Dr. Michael C. Frege, Barckhausstrasse 12-16, 60325 Frankfurt/Main, Tel. 069/71701-300, Fax 069/71701-40-410 |
| Gläubiger/in | ASPECTA ASSURANCE International Luxembourg SA, 5 rue Eugene Ruppert, 2453 Luxembourg, LUXEMBURG |
| Az. d. Gläubiger/s/in | |
| Gläubigervertreter/in | |
| Az. d. Gläubigervertr. | |
| Hinweis auf die Vollmacht | |
| Tag der Anmeldung | 23.02.2009 |
| Blattzahlen der Anmeldung | |
| Beanspruchter Rang | 0 |
| Laufende Nummer | 322 |

| Angemeldeter Betrag EUR | Grund der Forderung (urkundliche Beweisstücke) | Ergebnis der Prüfungsverhandlungen |
|---|---|---|
| 1.820.000,00<br>1.820.000,00 | Wertpapier XS 0326086633 | Vom Verwalter bestritten.<br><br>Frankfurt am Main, den 07.07.2009<br>Amtsgericht<br><br><br>Krämer |
| Berichtigungen/Bemerkungen | | |

Es wird hiermit beglaubigt, dass vorstehender Auszug mit der
Urschrift der Insolvenztabelle vollständig übereinstimmt.
Frankfurt am Main, den 15.07.2009


Herbner, Justizangestellte
als Urkundsbeamtin der Geschäftsstelle

**Amtsgericht Frankfurt am Main**
Insolvenzgericht

ASPECTA

Entré le 2 4 JUIL. 2009

Hinweis zum Ergebnis der Prüfung

Als Anlage erhalten Sie das Ergebnis der Prüfung Ihrer angemeldeten Forderung zu
Ihrer eigenen Verwendung.

Sie werden gebeten, den übersandten Auszug hinsichtlich der Gläubigerbezeich-
nung und Forderungshöhe auf seine Richtigkeit hin zu überprüfen und etwaige Ab-
weichungen dem Gericht mitzuteilen.

( Dieser Hinweis wird nicht unterschrieben )

# Merkblatt für Insolvenzgläubiger bestrittener Forderungen

Ein Insolvenzgläubiger, dessen angemeldete Forderung vom Verwalter oder einem
anderen Gläubiger ganz oder teilweise bestritten wurde, kann seine Forderung nur
im Wege der Klage auf Feststellung gegen den Bestreitenden geltend machen.
Beruht die bestrittene Forderung auf einem vollstreckbaren Titel, muss der Verwalter
oder der bestreitende Gläubiger diese Klage erheben.

Für die Klage ist ausschließlich das Amtsgericht zuständig, bei dem das Insolvenz-
verfahren geführt wird. Gehört der Streitgegenstand nicht zur Zuständigkeit der
Amtsgerichte, so ist das Landgericht zuständig, zu dessen Bezirk das Insolvenzge-
richt gehört.
War zur Zeit der Eröffnung des Insolvenzverfahrens bereits ein Rechtsstreit über die
Forderung anhängig, so ist die Feststellung der Forderung durch Aufnahme dieses
Rechtsstreits zu betreiben.

Jedoch erscheint es zweckmäßig, zunächst dem Verwalter die Berechtigung der
Forderung nachzuweisen und ihn zu veranlassen, die Forderung nachträglich dem
Insolvenzgericht gegenüber anzuerkennen. In diesem Falle besteht die Möglichkeit,
die Insolvenztabelle zu berichtigen.

Das Insolvenzgericht befasst sich nicht mit der Frage, ob eine bestrittene Forderung
zu Recht besteht; das zu prüfen und zu entscheiden ist allein Angelegenheit des
Verwalters und ggfs. des Prozeßgerichts.
Anfragen oder Vorstellungen beim Insolvenzgericht sind daher zwecklos.