**Hearing Date and Time:  April 13, 2011 at 10:00 A.M. (Prevailing Eastern Time)**
**Objection Date and Time:  April 6, 2011 at 4:00 P.M. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
LEHMAN BROTHERS HOLDINGS INC., et al.,      :    08-13555 (JMP)
                                            :
                        Debtors.            :    (Jointly Administered)
                                            :
------------------------------------------------------------------x
```

**NOTICE OF MOTION OF THE**
**DEBTORS PURSUANT TO SECTION 105(a)**
**OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) FOR**
**AUTHORIZATION AND APPROVAL OF THE SETTLEMENT BETWEEN**
**LEHMAN BROTHERS HOLDINGS INC. AND AEGIS MORTGAGE CORP.**

PLEASE TAKE NOTICE that a hearing on the annexed motion, dated as of

March 23, 2011 (the "Motion"), of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated

debtors in the above-referenced chapter 11 cases, as debtors in possession (together, the

"Debtors"), pursuant to section 105(a) of title 11 of the United States Code and Rule 9019 of the

Federal Rules of Bankruptcy Procedure for authorization and approval of the settlement between

Lehman Brothers Holdings Inc. and Aegis Mortgage Corporation ("Aegis"), as more fully

described in the Motion, will be held before the Honorable James M. Peck, United States

Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on

**April 13, 2011 at 10:00 A.M. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the

objecting party, the basis for the objection and the specific grounds thereof, and shall be filed

with the Bankruptcy Court electronically in accordance with General Order M-242 (which can

be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing

system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format (with two

hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the

Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601;

(ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn:  Shai

Y. Waisman, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for

Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn:  Tracy Hope

Davis, Esq., Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq.; (iv) Milbank, Tweed,

Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis

F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official

Committee of Unsecured Creditors appointed in these cases, (v) Latham & Watkins LLP, 885

Third Avenue, New York, New York 10022, Attn:  Michael J. Riela, Esq., attorneys for Aurora

Bank FSB and Aurora Loan Services LLC, and (vi) Pachulski, Stang, Ziehl & Jones LLP, 150

California Street, 15th Floor, San Francisco, California 94111, Attn:  Henry Kevane, Esq.,

attorney for Aegis Mortgage Corporation, so as to be so filed and received no later than **April 6,**

**2011 at 4:00 P.M. (prevailing Eastern Time) (the "Objection Deadline")**.

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 23, 2011
       New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                    :
In re                                               :        **Chapter 11 Case No.**
                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,         :        **08-13555 (JMP)**
                                                    :
                                   **Debtors.**      :        **(Jointly Administered)**
                                                    :
-------------------------------------------------------------------x

**MOTION OF THE DEBTORS PURSUANT TO SECTION 105(a) OF**
**THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) FOR**
**AUTHORIZATION AND APPROVAL OF THE SETTLEMENT BETWEEN**
**LEHMAN BROTHERS HOLDINGS INC. AND AEGIS MORTGAGE CORP.**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors in possession (together, the "Debtors"), submit this

motion (the "Motion"), and respectfully represent:

**Background**

1.        Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases

under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors'

chapter 11 cases have been consolidated for procedural purposes only and are being jointly

administered pursuant to section 1015(b) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.      On September 17, 2008, the United States Trustee for Region 2 (the "<u>U.S. Trustee</u>") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "<u>Creditors' Committee</u>").

3.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("<u>SIPA</u>") with respect to Lehman Brothers Inc. ("<u>LBI</u>").  A trustee appointed under SIPA (the "<u>SIPC Trustee</u>") is administering LBI's estate.

4.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "<u>Examiner</u>") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "<u>Examiner's Report</u>") [Docket No. 7531].

5.      On March 15, 2010, the Debtors filed their joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 7572].  On January 25, 2011, the Debtors filed their first amended joint chapter 11 plan [Docket No. 14150] and disclosure statement for their first amended joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 14151].

**Jurisdiction**

6.      This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Lehman's Business**

7.      Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman has been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide

8.      Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

9.      The Debtors seek, pursuant to section 105 of the Bankruptcy Code and

Bankruptcy Rule 9019, authorization to compromise and settle certain claims asserted by Aurora

Loan Services LLC ("Aurora Loan Services"), as master servicer on behalf of LBHI and certain

other parties, against the bankruptcy estate of Aegis Mortgage Corporation ("Aegis") in Aegis's

chapter 11 case (the "Aegis Bankruptcy Case") that is pending in the United States Bankruptcy

Court for the District of Delaware, Case No. 07-11119 (BLS) (the "Delaware Bankruptcy

Court").  The terms of the settlement are reflected in a settlement agreement that is annexed

hereto as Exhibit A (the "Settlement Agreement").  Entry of an order by this Court approving the

Settlement Agreement is a condition precedent to the effectiveness thereof.

10.     Prior to the Commencement Date, in the ordinary course of business, the Debtors would purchase residential mortgage loans from third parties for the purpose of selling such loans into securitization trusts that would issue securities to investors.  The Debtors would also retain some residential mortgage loans for their own account.  The loan purchase agreements pursuant to which the Debtors acquired residential mortgage loans typically contained various representations, warranties, and covenants regarding the characteristics of the loans and the borrowers.  When residential mortgage loans acquired by the Debtors have gone into default or have otherwise caused the Debtors to incur losses under circumstances that have implicated the representations, warranties and covenants made in connection with the origination or sale of such loans, the Debtors pursue claims against the originators and/or sellers of the loans.  In many cases, the Debtors present the facts to the originators and sellers and negotiate a reasonable settlement of the issues without the need for commencing litigation and pursuing it to a final verdict, to the benefit of all parties involved.  Following the Commencement Date, the Debtors have continued to pursue claims against the originators and sellers of such loans in the same manner they did prior to the Commencement Date.

11.     In order to facilitate the settlement of such claims without having to seek Court approval for each settlement or compromise, the Debtors obtained omnibus authority of the Court to settle and compromise such claims in accordance with certain Court-approved procedures.[1]  However, in accordance with the Claims Settlement Procedures Order, the settlement of Repurchase and Indemnification Claims (as defined in the Claims Settlement

---

[1] *See*, Order Pursuant to Section 105 of the Bankruptcy Code and Bankruptcy Rule 9019 Authorizing the Establishment of Procedures for the Debtors to Compromise and Settle Claims in Respect of the Origination of Purchase of Residential Mortgage Loans, entered August 5, 2009 [Docket No. 4706] (the "Claims Settlement Procedures Order").

Procedures Order) with a party against which LBHI has Repurchase and Indemnification Claims greater than $8 million requires approval of the Court.

12.    Following the commencement of the Aegis Bankruptcy Case, LBHI determined that it had a Repurchase and Indemnification Claim against Aegis.  Aurora Loan Services (in its capacity as master servicer on behalf of LBHI, Lehman Brothers Bank, FSB n/k/a Aurora Bank FSB ("Aurora Bank"), and certain securitization trusts) timely filed a proof of claim against Aegis for a Repurchase and Indemnification Claim in the amount of at least $34,193,606.31 in its chapter 11 case (the "Claim").  LBHI estimates that approximately 77% of the amount asserted in the Claim is based on loans it owns (the "LBHI Claim"), while the remainder is based on loans held by Aurora Bank and certain securitization trusts.  Based on a recent updated review of LBHI's losses relating to certain fixed and adjustable rate residential mortgage loans that were acquired from Aegis (collectively, the "Loans"), which took into account repayments of certain of the Loans, sales of certain of the Loans, and the consummation of foreclosure proceedings with respect to the properties securing certain Loans, LBHI determined that its actual losses are less than the initially asserted amount with respect to the Loans.

13.    The Settlement Agreement provides that the Claim will be reduced and allowed as a general unsecured claim in the Aegis Bankruptcy Case in the amount of $25 million, of which LBHI estimates over $19 million is allocable to the LBHI Claim (as the amount of the LBHI Claim is estimated to be approximately 77% of the amount of the entire Claim), while the remainder is allocable to the Loans held by Aurora Bank and certain securitization trusts.  Because the LBHI Claim against Aegis is in excess of $8 million, LBHI seeks the authorization and approval of the Court to enter into such settlement and compromise.

## Settlement of LBHI's Claim Against Aegis

14.    Aurora Bank and Aegis are parties to Flow Mortgage Loan Purchase and Warranties Agreements dated as of June 1, 2002 and February 1, 2006, as well as certain Purchase Price and Terms Letters and other related agreements (collectively, the "Loan Purchase Agreements"), pursuant to which Aurora Bank acquired the Loans from Aegis.  Aurora Bank, in turn, subsequently sold most of those Loans to LBHI.  Aurora Loan Services acts as master servicer for the Loans, and in that capacity was authorized to file the Claim on behalf of LBHI, Aurora Bank, and the securitization trusts.

15.    The Loan Purchase Agreements provide that if Aegis breaches any of its representations or warranties with respect to the Loans, then Aegis must use its best efforts promptly to cure such breaches in all material respects.  If a breach with respect to a Loan is not or cannot be cured, Aegis is obligated to (i) repurchase the Loan at the contractually defined repurchase price or (ii) indemnify the owner of the affected Loan for losses suffered as a result of the breach (*i.e.*, provide a "make-whole" payment).  Upon review of the Loans held by LBHI, LBHI determined it had sustained significant losses and that Aegis had breached various representations and warranties set forth in the Loan Purchase Agreement with respect to certain of the Loans.

16.    On August 13, 2007, Aegis and certain of its affiliates and subsidiaries commenced the Aegis Bankruptcy Case, which is being jointly administered.  Pursuant to a confirmed chapter 11 plan (the "Aegis Plan"), the Claim is an EPD/Breach Claim (as defined therein).  Pursuant to section V(Q) of the Aegis Plan, Aegis is authorized to settle any disputes over the allowance of the Claim without further notice to creditors or authorization of the Delaware Bankruptcy Court.

17.    Following the filing of the Claim, as a result of (i) repayment of certain of the Loans, (ii) sales of certain Loans, and (iii) the consummation of foreclosure proceedings with respect to the properties securing certain Loans, the losses incurred by LBHI with respect to the Loans were less than LBHI initially anticipated when Aurora Loan Services filed the proof of claim against Aegis.  Furthermore, the crystallization of LBHI's losses as a result of the repayment of the Loans or sales of the Loans requires a modification of the Claim to seek indemnification for LBHI's losses rather than a repurchase of such Loans.  Since a payment in the amount of the loss incurred on a Loan is typically less than the amount for which a Loan must be repurchased, LBHI believes that the amount of the Claim had to be reduced.  LBHI, through Aurora Loan Services, seeks to enter into the Settlement Agreement with Aegis as to the allowed amount of the Claim.

## The Settlement Agreement

18.    The salient terms of the Settlement Agreement pertaining to LBHI are summarized below. [2]

- Upon this Court's approval of the Settlement Agreement, the Claim shall be reduced and classified as an Allowed EPD/Breach Claim (Opt Out) in Class 5 (Consolidated Debtors EPD/Breach Claims) against the debtors in the Aegis Bankruptcy Case in the fixed, liquidated amount of $25,000,000 (the "Allowed Claim").[3] The Allowed Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including any proof of claim.

---

[2]  This Motion summarizes certain provisions of the Settlement Agreement that are relevant to LBHI.  The failure to explicitly describe any provision of the Settlement Agreement in this Motion shall not be construed to limit the scope, effectiveness or the enforceability thereof.  To the extent there is any discrepancy between the terms described in this Motion and those set forth in the Settlement Agreement, the terms of the Settlement Agreement shall control.

[3]  LBHI would receive its pro rata share of the distributions on account of the $25 million Allowed Claim, along with Aurora Bank and the securitization trusts.

- The effectiveness of the Settlement Agreement is subject to the approval of this Court.

- Upon this Court's approval of the Settlement Agreement, Aurora Loan Services, LBHI, Aurora Bank, their respective affiliates, and the Aegis debtors release each other, and each of their respective agents, from any and all debts, claims, damages, and causes of action, including avoidance actions.   The mutual release and waiver shall not result in the waiver of, and shall not excuse or release Aurora Loan Services, LBHI, Aurora Bank, their respective affiliates, or the Aegis debtors from compliance with: (i) the rights, obligations, terms and conditions of the Settlement Agreement; (ii) the rights and obligations under or related to the Allowed Claim or the claim filed by Aurora Bank; or (iii) the rights or obligations under or related to the claim filed by Aegis in the Debtors' bankruptcy cases.

19.    The Settlement Agreement is a "global" settlement among Aegis, Aurora Bank, Aurora Loan Services, their respective affiliates, and LBHI.  As such, the Settlement Agreement also contains certain agreements among Aegis, Aurora Loan Services, and Aurora Bank that do not directly impact LBHI and did not impact the amount of the Allowed Claim, but may ultimately inure to the benefit of LBHI.  One such provision is the agreement by the official committee of unsecured creditors appointed in the Aegis Bankruptcy Case to dismiss with prejudice an action commenced against Aurora Bank and other Lehman non-Debtor entities seeking to avoid certain transfers.  Since LBHI is the ultimate parent of Aurora Bank, the dismissal of the avoidance action inures to the benefit of LBHI.

## The Controlling Legal Standard

20.      LBHI's entry into the Settlement Agreement is in its best interest and should be approved under section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9019. Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a). Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement."  FED. R. BANKR. P. 9019(a).  In granting a motion pursuant to Rule 9019(a), a court must find that the proposed settlement is fair and equitable and is in the best interests of the estate.  Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Fischer v. Pereira (In re 47-49 Charles St., Inc.), 209 B.R. 618, 620 (S.D.N.Y. 1997); Air Line Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. of Chicago (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994).

21.      The decision to approve a particular settlement lies within the sound discretion of the bankruptcy court.  Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).  It is the responsibility of a court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness."  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); In re Spielfogel, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

22.      While a court must evaluate "all … factors relevant to a fair and full assessment of the wisdom of the proposed compromise," Anderson, 390 U.S. at 424, a court

need not conduct a "mini-trial" of the merits of the claims being settled, or conduct a full

independent investigation. In re Drexel Burnham Lambert Group, Inc., 134 B.R. 493, 496

(Bankr. S.D.N.Y. 1991). "[T]he bankruptcy judge does not have to decide the numerous

questions of law and fact…. The court need only canvass the settlement to determine whether it

is within the accepted range of reasonableness." Nellis, 165 B.R. at 123 (internal citations

omitted).

　　　　23.　　　The court may give weight to the informed judgment of the debtor that a

compromise is fair and equitable. In re Purofied Down Prods. Corp., 150 B.R. 519, 522

(S.D.N.Y. 1993); In re Ashford Hotels Ltd., 226 B.R. 797, 802 (Bankr. S.D.N.Y. 1998)

("Significantly, that test does not contemplate that I substitute my judgment for the Trustee's, but

only that I test his choice for reasonableness…. If the Trustee chooses one of two reasonable

choices, I must approve that choice, even if, all things being equal, I would have selected the

other.").

　　　　24.　　　LBHI believes that the terms of the settlement are fair and reasonable.

Absent consummation of the Settlement Agreement, Aegis may object to the merits and/or

amount of the Claim. This would likely require LBHI to incur legal fees and endure the

distraction of litigating the Claim, which could take months, if not longer. Litigation regarding

the Claim could entail a detailed review and analysis of each Loan, related loan file and

underlying property. The amount of the Claim relates to losses sustained in connection with

hundreds of Loans. Discovery and litigation relating to such a large amount of Loans would not

be an efficient use of the estate's limited resources. Furthermore, the settlement of the Claim

allows LBHI to avoid the risk that it would not prevail in the litigation and that the Claim would

ultimately be allowed in an amount less than the amount set forth in the Settlement Agreement.

The Settlement Agreement enables LBHI to receive a cash payment on account of its Claim in accordance with the terms of the Aegis Plan. The disclosure statement filed in the Aegis Bankruptcy Case estimates that recoveries on general unsecured claims filed against Aegis will only be between 5 -15% of the allowed claim amount; thus, the settlement will enable LBHI to avoid spending significant amounts of its limited resources to recover only a portion of its claim amount.

25.     The Settlement Agreement discussed in this Motion is within the parameters set forth in Bankruptcy Rule 9019, is within the Court's authority under section 105(a) of the Bankruptcy Code, and is in the best interests of LBHI, its estate, its creditors, and all parties in interest.

## Notice

26.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) attorneys for the debtors in the Aegis Bankruptcy Case; and (vii) attorneys for Aurora Bank and Aurora Loan Services. The Debtors submit that no other or further notice need be provided.

27.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  March 23, 2011
New York, New York

/s/ Shai Y. Waisman
Shai Y. Waisman
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**EXHIBIT A**

**(Settlement Agreement)**

## *EPD/BREACH CLAIM SETTLEMENT AGREEMENT*

This EPD/Breach Claim Settlement Agreement ("Agreement") is made and entered into as of the Effective Date (defined below), by and between Aegis Mortgage Corporation ("AMC"), Aurora Loan Services LLC ("ALS"), Lehman Brothers Holdings Inc. ("LBHI"), and Lehman Brothers Bank, FSB, n/k/a Aurora Bank FSB ("Aurora Bank"). AMC, ALS, LBHI and Aurora Bank are referred to herein collectively as the "Parties" and each individually as a "Party."

## *R E C I T A L S*

AMC commenced a Chapter 11 case on August 13, 2007, under title 11 of the United States Code ("Bankruptcy Code"). The chapter 11 case of AMC is presently pending in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court") under Case No. 07-11119 (BLS), and is being jointly administered with the Chapter 11 cases (collectively, the "Aegis Chapter 11 Cases") of certain affiliates and subsidiaries of AMC (collectively, the "Debtors").

LBHI commenced a Chapter 11 case on September 15, 2008, under the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("New York Bankruptcy Court"), that is presently pending under Case No. 08-13555 (JMP), and is being jointly administered with the Chapter 11 cases of certain affiliates and subsidiaries of LBHI, excluding ALS and Aurora Bank (collectively, the "Lehman Chapter 11 Cases").

On January 30, 2008, ALS filed proof of claim number 1263 in the Aegis Chapter 11 Cases ("Aurora Claim"), for damages arising from the breach of certain repurchase obligations, make-whole covenants, and other representations and warranties contained in various trust agreements. The Aurora Claim was filed by ALS in its capacity as master servicer on behalf of itself, LBHI, Aurora Bank, and various bankruptcy-remote mortgage loan securitization trusts that hold various mortgage loans originated by AMC (the "Trusts"). The Aurora Claim was filed in the amount of at least $34,193,606.31, plus additional unliquidated amounts (including interest, costs and other damages).

On August 13, 2010, the Debtors filed their *Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.* ("Plan"), and an accompanying *Disclosure Statement in Respect of Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.* ("Disclosure Statement"). The Disclosure Statement was approved by the Bankruptcy Court for dissemination to creditors on August 18, 2010. The Plan was confirmed by the Bankruptcy Court pursuant to its *Order Confirming Modified Second Amended Chapter 11 Plan of Aegis Mortgage Corporation, et al.* (the "Confirmation Order"), entered on October 20, 2010. The Effective Date of the Plan was October 27, 2010.

The Aurora Claim is an EPD/Breach Claim pursuant to the Plan. On September 28, 2010, ALS filed its EPD/Breach Claim Election to opt out of the EPD/Breach Claim Protocol and instead have its claim independently determined and allowed as an EPD/Breach Claim (Opt Out) under the Plan. Pursuant to Section V(Q) of the Plan, AMC is authorized to settle any disputes over the allowance of the Aurora Claim without further notice to creditors or authorization of the Bankruptcy Court.

On August 12, 2009, the Official Committee of Unsecured Creditors appointed in the Aegis Chapter 11 Cases ("Committee") filed a complaint captioned *The Official Committee of Unsecured Creditors of Aegis Mortgage Corporation, et al., Plaintiff, v. Lehman Brothers Bank, FSB, Lehman Brothers Global Trading and Finance, and Lehman Brothers Mortgage Funding, Inc., d/b/a Lehman Brothers Bank and/or Lehman Brothers Global Trading and Finance,* adversary proceeding number 09-51938-BLS ("Lehman AVP"). The Lehman AVP is a Reserved Avoidance Action pursuant to the Plan. On January 31, 2011, Aurora Bank filed a motion to dismiss the Lehman AVP as to it.

The Parties have engaged in good faith negotiations for the purpose of reaching a mutually satisfactory agreement for the resolution under the Plan of the Aurora Claim, the Lehman AVP, and certain

other claims. In consideration of the mutual covenants, conditions and provisions set forth below, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, and each Party intending to be legally bound, the Parties agree as follows:

# AGREEMENT

## 1.    DEFINITIONS

For purposes of this Agreement, unless otherwise defined in this Agreement, all capitalized terms used herein shall have the meanings set forth (i) in the Plan, or (ii) below:

*"Aegis Repurchase Claim"* means the proof of claim (number 31557) filed September 22, 2009, by AMC in the Chapter 11 case of Lehman Commercial Paper Inc. ("LCPI"), for damages arising from certain defaults under a certain master repurchase agreement in the amount of $536,000.

*"Affiliate"* has the meaning set forth in Section 101(2) of the Bankruptcy Code.

*"Agent"* means any shareholder, director, officer, employee, partner, member, agent, attorney, accountant, advisor, consultant or other representative of any person or entity (solely in their respective capacities as such, and not in any other capacity).

"*Approval Effective Date*" means the date this Agreement is approved in the Lehman Chapter 11 Cases by the New York Bankruptcy Court.

"*Aurora Bank Servicing Advances Claim*" means the proof of claim filed January 31, 2008, by Aurora Bank in the Aegis Chapter 11 Cases (number 1170) in the amount of $4,988,555.85, relating to servicing advances made by Aurora Bank under certain subservicing agreements related to Aegis Asset Backed Securities Trust 2005-3 and Aegis Asset Backed Securities Trust 2006-1.

*"Aurora Entities"* means (i) ALS and Aurora Bank, and their respective Affiliates and (ii) LBHI and its affiliated chapter 11 debtors, but specifically excluding (a) the Trusts and (b) Lehman Brothers Inc., which currently is the subject of a proceeding under the Securities Investor Protection Act of 1970 in the United States Bankruptcy Court for the Southern District of New York.

*"Avoidance Actions"* mean all claims and causes of action under Sections 506(d), 510(c), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, whether or not such claims or causes of action seek an affirmative recovery or are raised as a defense to or offset against the allowance of a Claim.

*"Claim"* has the meaning set forth in Section 101(5) of the Bankruptcy Code.

*"Effective Date"* means the last of the dates this Agreement is signed by each of the Parties.

*"Letter Agreement"* means that certain letter agreement among AMC, Aurora Bank and Ocwen Loan Servicing, LLC, dated August 15, 2008, regarding the reimbursement of servicing advances under certain subservicing agreements related to Aegis Asset Backed Securities Trust 2005-3 and Aegis Asset Backed Securities Trust 2006-1.

2.      **IMPLEMENTATION OF AGREEMENT**

a)      Effectiveness. The rights and obligations of the Parties set forth in this Agreement are conditioned and contingent upon the occurrence of the Approval Effective Date. In the event the Approval Effective Date does not occur, for any reason, this Agreement shall be deemed null and void, each Party shall be relieved and released from any further obligation hereunder, and the Parties may pursue and defend the allowance of their respective Claims without admission by any Party regarding the amount, priority or enforceability of such Claims.

b)      Cooperation. The Parties agree from and after the Effective Date to proceed expeditiously to seek the occurrence of the Approval Effective Date, cooperate with each other, and execute and deliver such documents and take such further actions as may be reasonably necessary to implement this Agreement.

3.      **ALLOWANCE OF CLAIMS**

a)      Aurora Claim. Upon the Approval Effective Date, the Aurora Claim shall be reduced and allowed as a general, unsecured, non-priority claim under 11 U.S.C. § 502 against the Consolidated Debtors in the fixed, liquidated amount of $25,000,000 (the "Allowed Aurora Claim"). The Allowed Aurora Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including any proof of claim. The Allowed Aurora Claim shall be classified and treated as an Allowed EPD/Breach Claim (Opt Out) in Class 5 (Consolidated Debtors EPD/Breach Claims) of the Plan.

b)      Aurora Bank Servicing Advances Claim. Upon the Approval Effective Date, the Aurora Bank Servicing Advances Claim shall be reduced and allowed as a general, unsecured, non-priority claim under 11 U.S.C. § 502 against the Consolidated Debtors in the fixed, liquidated amount of $796,550.59 (the "Allowed Servicing Claim"). The Allowed Servicing Claim shall not be subject to reconsideration, objection, reduction, increase, counterclaim, subordination, offset or recoupment, and shall be allowed without necessity of any further filings or amendments, including any proof of claim. The Allowed Servicing Claim shall be classified and treated as an Allowed Unsecured Claim in Class 4 (Consolidated Debtors Unsecured Claims) of the Plan

c)      No Further Claims. With the exception of the Allowed Aurora Claim and the Allowed Servicing Claim all Claims held or asserted by any of the Aurora Entities in the Aegis Chapter 11 Cases against any of the Debtors, including, without limitation, any Administrative Claims, shall be deemed disallowed without necessity of any further filings, notice or approval by the Bankruptcy Court.

4.      **DISMISSAL OF THE LEHMAN AVP WITH PREJUDICE**

As soon as practicable following the Approval Effective Date, the Debtors shall file, or cause the Committee to file, a notice of dismissal of the Lehman AVP against all defendants with prejudice, with each party to bear its own costs and expenses of suit.

5.    **MUTUAL RELEASE**

a)    <u>General Release.</u> Subject to subsection (c) below, upon the Approval Effective Date, the Aurora Entities and the Debtors hereby release each other, and each of their respective Agents, from any and all debts, Claims, damages, and causes of action (including Avoidance Actions), and expressly waive any and all rights pursuant to Section 502(d) of the Bankruptcy Code to bring any action or otherwise seek to disallow any and all debts, Claims, damages and causes of action arising from the failure to turn over property which is recoverable under Sections 542, 543, 550 or 553 of the Bankruptcy Code, or the failure to pay a transfer which is avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the Bankruptcy Code, whether known or unknown, which each of them now has or may have against each other by reason of any transaction, occurrence, act or omission related to the Aegis Chapter 11 Cases, the Lehman Chapter 11 Cases, the Lehman AVP, the Aurora Claim, the Aurora Bank Servicing Advances Claim, and any of the facts, matters and agreements referenced in the Lehman AVP, the Aurora Claim or the Aurora Bank Servicing Advances Claim.

b)    <u>Waiver.</u> It is the intention of the Parties that this Agreement shall be effective as a full and final release of all Claims, debts, rights, and obligations against each other arising out of the matters described in subsection (a) above, subject to subsection (c) below. In furtherance of this intention, the Parties waive the benefit of the provisions of California Civil Code § 1542 (and any other similar applicable statute), which provides as follows: *"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."*

c)    <u>Limitation of Release and Waiver.</u> The mutual release and waiver under this section 5 shall *not* result in the waiver of, and shall *not* excuse or release the Aurora Entities or the Debtors from compliance with: (i) the rights, obligations, terms and conditions of this Agreement; (ii) the rights, obligations, terms and conditions of the Letter Agreement by AMC or Aurora Bank; (iii) the rights and obligations under or related to the Allowed Aurora Claim or the Allowed Servicing Claim; or (iv) the rights or obligations under or related to the Aegis Repurchase Claim, including, for the avoidance of doubt, LCPI's right to object to the Aegis Repurchase Claim on any grounds.

d)    <u>Limited Release by the Trusts.</u> The Trusts release the Debtors and their Agents from any and all debts, Claims, damages, and causes of action related to the Aurora Claim, known or unknown, contingent or liquidated, fixed or unfixed, other than any right of the Trusts to receive their *pro rata* share of any distributions under the Plan on account of the Allowed Aurora Claim.

e)    <u>Notice to the Trustees of the Trusts.</u> On or about February 23, 2011 ALS, in its role as master servicer, notified the trustees for the Trusts of the negotiation of this Agreement and of the nature of the Trusts' release pursuant to section 5(d) hereof, and informed the trustees for the Trusts that ALS would assume that the trustees have no objection to this Agreement or the terms of section 5(d) hereof unless any trustee communicated an objection to ALS or its counsel within ten days after February 23, 2011. As of the date of execution of this Agreement by ALS, ALS and its counsel have not received any objections from the trustees for the Trusts.

6.    **GENERAL**

a)    The section headings herein are provided for convenience only and have no substantive effect on the construction of this Agreement.

b)    The failure by a Party to exercise or enforce any right hereunder shall not operate as a waiver of such Party's right to exercise or enforce such right or any other right in the future.

c)  This Agreement and all matters arising out of or relating to this Agreement shall be governed by and interpreted, and construed in accordance with the procedural and substantive laws of the State of New York without reference to its principles as to choice or conflicts of law.

d)  If any provision of this Agreement conflicts with governing law or if any provision is held to be null, void, or otherwise ineffective or invalid by a court of competent jurisdiction, then the remaining terms and provisions of this Agreement are to remain in full force and will be construed without such provision.

e)  The Bankruptcy Court and the New York Bankruptcy Court shall have jurisdiction (i) to issue any order necessary or appropriate for the interpretation, implementation or enforcement of this Agreement, and (ii) over any and all disputes between or among the Parties hereto, whether in law or equity, arising out of or relating to this Agreement.

f)  This Agreement may be executed in counterparts and copies may be used instead of originals. The executed counterparts shall be construed as and constitute one document.

g)  This Agreement is the final and entire agreement of the Parties regarding the subject matter herein, and supersedes all previous oral and written understandings, negotiations, term sheets, and agreements with respect to the subject matter addressed herein.  This Agreement may only be modified by a written amendment signed by an authorized signatory of each Party.

h)  Each Party to this Agreement and each person executing this document on behalf of each Party to this Agreement warrants and represents that he or she has the power and authority to execute and deliver this Agreement.

EPD/Breach Claim Settlement Agreement                                                    Page 5 of 6

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**Aegis Mortgage Corporation**                    **Aurora Loan Services LLC**

_Michael C. Balog_
_____                       _____
Authorized Signature                              Authorized Signature

Michael C. Balog, President
_____                       _____
Printed Name and Title                            Printed Name and Title

March 8, 2011
_____                       _____
Execution Date                                    Execution Date


**Lehman Brothers Holdings Inc.**                 **Aurora Bank FSB**


_____                       _____
Authorized Signature                              Authorized Signature


_____                       _____
Printed Name and Title                            Printed Name and Title


_____                       _____
Execution Date                                    Execution Date

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**Aegis Mortgage Corporation**

_____
Authorized Signature

_____
Printed Name and Title

_____
Execution Date

**Aurora Loan Services LLC**

_____
Authorized Signature

_Michael Rule, counsel to Aurora Loan Services LLC_
Printed Name and Title

_March 15, 2011_
Execution Date

**Lehman Brothers Holdings Inc.**

_____
Authorized Signature

_Ronald Dooley_
Printed Name and Title

_March 23, 2011_
Execution Date

**Aurora Bank FSB**

_____
Authorized Signature

_Michael Rule, counsel to Aurora Bank FSB_
Printed Name and Title

_March 15, 2011_
Execution Date

Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
--------------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
LEHMAN BROTHERS HOLDINGS INC., et al.,  :    08-13555 (JMP)
                                        :
                     Debtors.           :    (Jointly Administered)
                                        :
--------------------------------------------------------------------x
```

## ORDER PURSUANT TO SECTION 105(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019(b) AUTHORIZING AND APPROVING THE SETTLEMENT BETWEEN LEHMAN BROTHERS HOLDINGS INC. AND AEGIS MORTGAGE CORP.

Upon the motion, dated March 23, 2011 (the "Motion"), of Lehman

Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced

chapter 11 cases, as debtors in possession (collectively, the "Debtors" and, together with

their non-debtor affiliates, "Lehman"), pursuant to section 105 of chapter 11 of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization and approval of the

settlement between LBHI and Aegis Mortgage Corporation ("Aegis") on the terms set

forth in the Settlement Agreement,[1] as more fully set forth in the Motion; and the Court

having jurisdiction to consider the Motion and the relief requested therein in accordance

with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy

Judges for the Southern District of New York Any and All Proceedings Under Title 11,

dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue

---

[1] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided in accordance with the procedures set

forth in the second amended order entered on June 17, 2010 governing case management

and administrative procedures for these cases [Docket No. 9635]; and the Court having

found and determined that the relief sought in the Motion is in the best interests of LBHI,

its estate and creditors, and all parties in interest and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that, pursuant to section 105 of the Bankruptcy Code and

Bankruptcy Rule 9019, the Settlement Agreement is approved; and it is further

ORDERED that upon Aurora Loan Services' receipt of distributions from

Aegis' bankruptcy estate on account of the $25,000,000 Allowed Claim, Aurora Loan

Services and LBHI shall jointly determine the amount of such distributions that is

attributable to the portion of the Allowed Claim that relates to loans held by LBHI (such

amount, the "LBHI Distribution"); and it is further

ORDERED that Aurora Loan Services shall distribute the LBHI

Distribution to LBHI, without the need for request, and without any right of setoff; and it

is further

ORDERED that LBHI is authorized to execute, deliver, implement and

fully perform any and all obligations, instruments, documents and papers and to take any

and all actions reasonably necessary or appropriate to consummate the settlement,

including entering into the Settlement Agreement, and perform any and all obligations

contemplated therein; and it is further

ORDERED that the Bankruptcy Court retains jurisdiction to enforce the

Settlement Agreement and any disputes arising thereunder.

Dated: [    ], 2011
       New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE