**Hearing Date and Time:  April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  April 6, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus, Esq.

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------------x
In re                                      :    Chapter 11 Case No.
                                           :
LEHMAN BROTHERS HOLDINGS INC., et al.,     :    08-13555 (JMP)
                                           :
                    Debtors.               :    (Jointly Administered)
-------------------------------------------------------------------x
```

## NOTICE OF MOTION PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE FOR APPROVAL OF THE PURCHASE OF NOTES ISSUED BY PINE CCS, LTD. FROM BARCLAYS BANK PLC AND THE TERMINATION OF THE PINE SECURITIZATION

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") and their affiliated debtors in the above-referenced chapter 11 cases as debtors and debtors in possession (together, the "Debtors"), pursuant to sections 105 and 363 of the Bankruptcy Code, for approval of the purchase by LCPI of notes issued by Pine CCS, Ltd. from Barclays Bank PLC and the termination of the Pine CCS, Ltd. securitization, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Jacqueline Marcus, Esq. and Mark Bernstein Esq., attorneys for the Debtors; (iii)

Sullivan & Cromwell LLP, 125 Broad Street, New York, New York, 10004, Attn: Robinson

Lacy, Esq., attorneys for Barclays Bank PLC; (iv) Chapman and Cutler LLP, 111 West Monroe

Street, Chicago, Illinois 60603, Attn: James E. Spiotto, Esq. and Franklin H. Top, III, Esq.,

attorneys for U.S. Bank National Association; (v) Allen & Overy LLP, 1221 Avenue of the

Americas, New York, New York, 10020, Attn: Jonathan Lee, Esq., attorneys for Pine CCS, Ltd.

(vi) the Office of the United States Trustee for Region 2 (the "U.S. Trustee"), 33 Whitehall

Street, 21st Floor, New York, New York 10004 Attn:  Elisabetta G. Gasparini, Esq., Andrea B.

Schwartz, Esq., and Tracy Hope Davis, Esq.; and (vii) Milbank, Tweed, Hadley & McCloy LLP,

1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Dennis

O'Donnell, Esq., and Evan Fleck, Esq., and Quinn Emanuel Urquhart and Sullivan, LLP, 51

Madison Avenue, 22nd Floor, New York, New York, 10010, Attn: James Tecce, Esq.,  attorneys

for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **April 6, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: March 23, 2011
      New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------x
In re                                          :   Chapter 11 Case No.
                                               :
LEHMAN BROTHERS HOLDINGS INC., et al.,         :   08-13555 (JMP)
                                               :
                    Debtors.                   :   (Jointly Administered)
------------------------------------------------------------------x
```

**MOTION PURSUANT TO SECTIONS 105 AND
363 OF THE BANKRUPTCY CODE FOR APPROVAL OF THE
PURCHASE OF NOTES ISSUED BY PINE CCS, LTD. FROM BARCLAYS
BANK PLC AND THE TERMINATION OF THE PINE SECURITIZATION**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc.

("LBHI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors in

possession (together, the "Debtors"), submit this motion (the "Motion") and respectfully

represent:

**Preliminary Statement**

1.      This Motion seeks approval of the purchase by LCPI of the Class A-1

Notes issued by Pine CCS, Ltd. in the outstanding amount of $927,434,005.19,[1] including

accrued interest (the "Barclays Notes"), from Barclays Bank PLC ("Barclays") pursuant to a

---

[1] As of January 31, 2011

Note Sale and Termination Agreement, substantially in the form attached hereto as <u>Exhibit A</u>

(the "<u>Note Sale and Termination Agreement</u>"), among LCPI, LBHI, Barclays, Pine CCS, Ltd.

("<u>Pine</u>"), Pine CCS, Corp. (together with Pine, the "<u>Co-Issuers</u>") and U.S. Bank National

Association, as trustee and collateral administrator ("<u>U.S. Bank</u>").  Pursuant to the Note Sale and

Termination Agreement, LCPI will purchase the Barclays Notes free and clear of all liens,

claims, and encumbrances, for a purchase price of $805 million.  A majority of the purchase

price will consist of amounts currently held by U.S. Bank on behalf of Pine and restricted cash

collected by LCPI on the Underlying Assets (as defined below) on behalf of Pine.

  2.  This Motion also seeks approval of the purchase by LCPI and the sale by

LBHI of the Class A-1 Notes issued by Pine in the outstanding amount of $4,089,615.90,[2]

including accrued interest (the "<u>LBHI Notes</u>"), at par plus accrued and unpaid interest.  In

connection with this transaction, LBHI will also release its security interest in the Class A-2

Notes, Class B Notes and Subordinated Notes issued by Pine.  The acquisition of the Barclays

Notes and the LBHI Notes will result in LCPI owning all of the notes issued by Pine.  In order to

ease the administration and maximize the value of the Underlying Assets after LCPI acquires all

of the notes issued by Pine, the Note Sale and Termination Agreement provides for the

termination of the Pine securitization.

  3.  The purchase of the Barclays Notes from Barclays pursuant to the Note

Sale and Termination Agreement is part of ongoing settlement discussions between the Debtors

and Barclays, which includes the resolution of issues related to derivative contracts between

Lehman Brothers Special Financing and Ceago ABS CDO 2007-1, Ltd. ("<u>Ceago</u>").  Any

settlement of the Ceago derivative contracts, when finalized, will be entered into in accordance

---

[2] As of January 31, 2011.

with this Court's Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish

Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative

Contracts [Docket No. 2257] and the related supplemental orders.

4.    As more fully set forth below, LCPI's decision to enter into the

transactions set forth in the Note Sale and Termination Agreement and to terminate and unwind

the Pine securitization in order to achieve the Debtors' overall business plan for the Underlying

Assets represents a reasonable exercise of LCPI's business judgment, and is in the best interests

of its estate and creditors.  Accordingly, the relief requested in this Motion should be granted.

## **Background**

5.    Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The

Debtors are authorized to operate their businesses and manage their properties as debtors in

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.    On September 17, 2008, the United States Trustee for Region 2 (the "U.S.

Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of

the Bankruptcy Code (the "Creditors' Committee").

7.    On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

8.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner. On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531]

9.      On January 25, 2011, the Debtors filed their first amended joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 14150] and disclosure statement for their first amended joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 14151].

## Jurisdiction

10.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).

## Lehman's Business

11.      Prior to the events leading up to these chapter 11 cases, Lehman was the fourth largest investment bank in the United States.  For more than 150 years, Lehman had been a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.

12.      Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

## Relief Requested

13.     This Motion seeks approval of (i) the purchase by LCPI of the Barclays Notes from Barclays on the terms set forth in the Note Sale and Termination Agreement for a purchase price of $805 million, (ii) the purchase by LCPI and the sale by LBHI of the LBHI Notes at par plus accrued interest and (iii) the termination of the Pine securitization in the manner set forth in the Note Sale and Termination Agreement.

## The Pine Securitization

14.     Prior to the Commencement Date, in order to increase liquidity, LCPI sold participations (the "Participations") in commercial loans (the "Underlying Assets")[3] to Pine. LCPI remained the lender of record for most of the Underlying Assets.  Pine, in turn, issued securities (comprised of both notes evidencing debt and equity interests in Pine) in various classes and priorities secured by such assets and the cash flow therefrom (the "Pine Notes").  The most senior class of the Pine Notes is the Class A-1 Notes (the "Class A-1 Notes").

15.     As of the Commencement Date, (i) LBHI owned the LBHI Notes and had transferred, pursuant to a repurchase agreement, the Barclays Notes to Lehman Brothers Inc. ("LBI") and (ii) LCPI owned the Clas A-2 Notes, Class B Notes and Subordinated Notes issued by Pine.  Prior to the Commencement Date, LBHI pledged the LBHI Notes to JPMorgan Chase Bank, N.A. ("JPMorgan") to secure certain purported obligations of the Debtors.  Pursuant to the Collateral Disposition Agreement (the "CDA") entered into with JPMorgan, and approved by the Court on March 24, 2010 [Docket No. 7785], the LBHI Notes were returned to LBHI.  Pursuant to the CDA, LBHI acquired a security interest in the Class A-2 Notes, Class B Notes and Subordinated Notes issued by Pine as a subrogee to JPMorgan's rights with respect to such notes.

---

[3] Some of the loans participated to Pine were acquired by LCPI through participations.  In addition, some of these loans have since been converted to equity interests.

16.    Pursuant to the Asset Purchase Agreement, dated September 16, 2008 and the related Clarification Letter, dated September 20, 2008, each among, LBHI, LBI, LB 745 LLC and Barclays Capital Inc., the Barclays Notes were sold to Barclays Capital Inc.  On information and belief, Barclays Capital Inc. transferred the Barclays Notes to Barclays.

17.    As a result of the foregoing transactions, ownership of the Pine Notes is spread out among LBHI, LCPI and Barclays.  LCPI has determined, in the exercise of its business judgment, that considerable value could be realized by purchasing the Barclays Notes held by Barclays pursuant to the Note Sale and Termination Agreement at a discount to the outstanding amount of such notes.  In order to acquire 100% control over Pine, the Debtors are also seeking authority in this Motion for (i) LCPI to purchase from LBHI the LBHI Notes at par plus accrued and unpaid interest and (ii) LBHI to release the security interest in the Class A-2 Notes, Class B Notes and Subordinated Notes issued by Pine that LBHI acquired pursuant to the CDA.  LBHI's security in the Class A-2 Notes, Class B Notes and Subordinated Notes relates to a contingent claim LBHI has against LCPI which is based on events that the Debtors deem unlikely to occur.

18.    LCPI has concluded that maximum value of the Underlying Assets can only be achieved through active management, and such management currently is impeded by Pine's ownership of Participations in the Underlying Assets and Barclays' ownership of the Barclays Notes.

19.    The outstanding principal amount of, and any accrued and unpaid interest on, the Pine Notes and the Debtors' interests therein is set forth in the table below.  Notably, as illustrated below, both LBHI and LCPI already hold a portion of the capital structure of Pine.

The shaded box indicates the portion of Pine's capital structure that LCPI seeks authority to acquire through the Note Sale and Termination Agreement and through the purchase from LBHI.

|  | Notes |
|---|---|
| **Aggregate Outstanding Amount of Notes[4]** | $898 million Class A-1 Notes (plus $33.2 million of accrued and unpaid interest) <br> $32 million Subordinated Notes |
| **Percentage of Aggregate Outstanding Notes Owned by LBHI** | 0.4% of Class A-1 Notes |
| **Percentage of Aggregate Outstanding Notes Owned by Barclays** | 99.6% of Class A-1 Notes |
| **Percentage of Aggregate Outstanding Notes Owned by LCPI** | 100% of Subordinated Notes |

20.    LCPI's purchase of the Barclays Notes and the LBHI Notes would confer complete control over Pine to LCPI.  The structure of the Pine securitization, in which Pine holds Participations[5] in the Underlying Assets, has led to a situation where LCPI is unable to efficiently and economically manage the Underlying Assets.  Specifically, the Participation Agreement and Indenture impose various restrictions and/or contain consents required in order for LCPI to take actions with respect to the Underlying Assets, including the sale of such assets. The Underlying Assets require active management if such assets are in default or if there is an opportunity for a sale of such assets on short notice.  Inasmuch as upon the acquisition of the Barclays Notes and the LBHI Notes, LCPI will be the sole economic stakeholder in Pine, the termination of the Pine securitization in the manner set forth in the Note Sale and Termination Agreement is in the best interest of the Debtors' estates and their creditors because it will enable LCPI to maximize the value of the Underlying Assets.

---

[4] Represents principal balances reported by the trustee as of the closest reporting date to January 31, 2011.

[5] Pine acquired the participations in the Underlying Assets pursuant to the Amended and Restated Master Participation Agreement, dated as of August 5, 2008, among Pine and LCPI (the "Participation Agreement")

## The Note Sale and Termination Agreement

21.    The salient terms of the Note Sale and Termination Agreement are set

forth below.[6]

| | |
|---|---|
| ***Barclays Notes*** | On the Closing Date, Barclays will sell, and LCPI will purchase, all of Barclays' right, title and interest in the Barclays Notes, issued by Pine pursuant to that certain Indenture, dated as of May 28, 2008, by and among Pine CCS, Ltd., Pine CCS, Corp. and U.S. Bank National Association (the "Indenture"). |
| ***Purchase Price*** | On the Closing Date, LCPI shall pay Barclays a purchase price (the "Purchase Price") for the Barclays Notes in the amount of $805 million, less the amount paid to Barclays by U.S. Bank on behalf of Pine. LCPI and Barclays shall each direct U.S. Bank to distribute amounts held by U.S. Bank on behalf of Pine to Barclays on the Closing Date. |
| ***Termination of the Pine Securitization*** | On the Closing Date, immediately following the payment of the Purchase Price and the delivery of the Barclays Notes to U.S. Bank: |
| | (i) LCPI shall deliver all of the outstanding Pine Notes to U.S. Bank for cancellation; |
| | (ii) Each of the Transaction Documents set forth on Exhibit B hereto shall be terminated; and |
| | (iii) The Issuer shall release its interests in the Participations, and the Underlying Assets shall revert to LCPI. |
| ***Indemnification of U.S. Bank*** | LCPI will indemnify U.S. Bank, as trustee and collateral administrator, and the Co-Issuers for, and hold each of them harmless from and against, any damages, liabilities, losses, claims or expenses arising out of, or resulting from entering into the Note Sale and Termination Agreement and consummating the transactions contemplated thereby. |
| ***Releases*** | LCPI and LBHI on one hand and Barclays on the other hand each agree to irrevocably and unconditionally waive and release each other with respect to any and all claims, damages, costs and other liabilities arising out of or relating to the Barclays Notes and |

---

[6]    This summary, as well as the other descriptions of the Note Sale and Termination Agreement contained in the Motion (the "Summary") are qualified in their entirety by the provisions of the Note Sale and Termination Agreement. This Summary is intended to be used for information purposes only and shall not, in any way, affect the meaning or interpretation of the Note Sale and Termination Agreement. Capitalized terms used, but not otherwise defined herein, have the meanings ascribed to such terms in the Note Sale and Termination Agreement.

|  | transactions relating to the Pine securitization. |
|  | LCPI, LBHI and Barclays each agree to release U.S. Bank and the Co-Issuers from all claims, damages, costs and other liabilities arising out of or relating to the Indenture and the other Transaction Documents, and all obligations thereunder (including payment on the Notes), and the negotiation, execution and performance of the termination of any of the Indenture, the Transaction Documents and the Notes. |
| *U.S. Bank's and Co-Issuers Fees and Expenses* | On the Closing Date, U.S. Bank, as indenture trustee will pay all amounts due to the Co-Issuers and U.S. Bank, as indenture trustee and collateral administrator, under the terms of the Indenture and the other Transaction Documents, out of the amounts held by U.S. Bank on behalf of Pine. |
| *Claims Filed Against Debtors Relating to Pine* | After the acquisition of the Barclays Notes, LCPI, LBHI and Barclays direct U.S. Bank to withdraw with prejudice all filed proofs of claim filed against any of the Debtors based on the Transaction Documents and the Pine securitization. |
| *Conditions to Closing* | The consummation of the transactions set forth in the Note Sale and Termination Agreement are subject to: |
|  | (i) the approval of the Bankruptcy Court; and |
|  | (ii) the execution by the relevant parties of a mutually satisfactory agreement resolving disputes relating to Ceago. |

### The Purchase of the Class A-1 Notes and the Termination of the Pine Securitization Represent An Appropriate Exercise of The Debtors' Business Judgment

22.    Ample authority exists for approval of the proposed purchase of the Class A-1 Notes and the termination of the Pine securitization pursuant to the Note Sale and Termination Agreement.  Section 363 of the Bankruptcy Code provides, in relevant part, "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  LCPI is seeking approval of the Note Sale and Termination Agreement under section 363 of the Bankruptcy Code.

23.    While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition or other use of

a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same).

24.    LCPI has determined, in its sound business judgment, that the acquisition of the Class A-1 Notes will enhance the value of LCPI's estate for the benefit of its creditors. LCPI has closely analyzed the Barclays Notes and the Underlying Assets, and has determined that the Purchase Price represents a discount of 13.2% to the outstanding amount of the notes (including accrued interest thereon) and 12.1% to the estimated fair market value of the Underlying Assets, determined as of February 28, 2011. See *Declaration of David Walsh* in support of this Motion, dated March 23, 2011 (the "Walsh Decl."), ¶8.  In addition, a substantial portion of the Purchase Price consists of cash held by U.S. Bank on behalf of Pine, which as of February 28, 2011 totals approximately $261 million.  Another substantial portion of the Purchase Price consists of cash that LCPI has collected on the Underlying Assets and holds as restricted cash on behalf of Pine.  As of February 28, 2011 this amount totals approximately $303 million.  Therefore, LCPI will only have to pay approximately $241 million out of its unrestricted cash to acquire the Barclays Notes. *Id.*  In light of the economics underlying the Note Sale and Termination Agreement, the purchase of the Barclays Notes provides a substantial potential for profit for LCPI.

25.    In order to obtain control over 100% of the capital structure of Pine, LCPI will also purchase the LBHI Notes at par plus accrued interest.  In addition to the sale of the

LBHI Notes, LBHI will also release its security interest in the Class A-2 Notes, Class B Notes and Subordinated Notes issued by Pine. The purchase price to be paid for the LBHI Notes takes into account and fairly accounts for the release of LBHI's security interest in the other Pine Notes. *See* Walsh Decl. ¶10.

26. Obtaining control over Pine will enable LCPI to terminate the Pine securitization and own the Underlying Assets free and clear of the interests of any other party. Purchasing the LBHI Notes will facilitate the termination of the Pine securitization without the complications of dividing the Underlying Assets between LCPI and LBHI. The termination of the Pine securitization, including the Participations in the Underlying Assets, will permit LCPI to eliminate the approval procedures and other provisions currently in place that restrict the modification, restructuring or sale of the Underlying Assets. *See* Walsh Decl. ¶11. LCPI has determined that purchasing the Class A-1 Notes and the termination of the Pine securitization is the best means of maximizing the value of the Underlying Assets, which LCPI believes offer a considerable value to its estate and creditors, because outright ownership of the Underlying Assets is far more valuable than indirect ownership through Pine. *See* Walsh Decl. ¶12. The flexibility to manage the Underlying Assets will permit LCPI to maximize the value of such assets. The Debtors believe that once LCPI acquires all of the Pine Notes, LCPI is not required to obtain the authorization of the Court in order to terminate the Pine Indenture and Transaction Documents. However, out of an abundance of caution, and since the termination of the Pine securitization is being consummated simultaneously with the acquisition of the Barclays Notes and the LBHI Notes, this motion seeks authority for the termination of the Pine securitization.

27. In connection with the effectuation of the termination of the Pine securitization, the Debtors seek authority to provide U.S. Bank and the Co-Issuers with an

indemnification against any and all liability incurred in connection with the termination of the

Pine securitization.  Such indemnity is typically required by indenture trustees and issuers in

connection with noteholder's directions and requests for specific actions.  Since the Debtors will

be the sole stakeholders following the acquisition of the Barclays Notes, there will not be any

other party with the right, or the interest, to pursue a claim against U.S. Bank or the Co-Issuers

for their participation in the termination of the Pine securitization.  As a result, the risk to the

Debtors in providing the indemnification to U.S. Bank and Co-Issuers is minimal.

28.    The proposed Order contains reservations of rights regarding

intercompany transfers of the Pine Notes among the Lehman entities prior to the Commencement

Date.

29.    For all the foregoing reasons, entry into the Note Sale and Termination

Agreement, the purchase by LCPI and the sale by LBHI of the LBHI Notes and the termination

of the Pine securitization represents an exercise of the Debtors' sound business judgment, is in

the best interest the Debtors' estates and creditors, and all other parties in interest, and should be

approved.

**Waiver of Fourteen Day Stay**

30.    Bankruptcy Rule 6004(h) provides that "[a]n order authorizing the use,

sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after

the entry of the order, unless the court orders otherwise."  Fed. R. Bankr. P. 6004(h).  The

Debtors submits that cause exists for the Court to exercise its discretion and abrogate the 14-day

stay provided for by Rule 6004(h), because the transactions contemplated by the Note Sale and

Termination Agreement are time-sensitive and must close shortly after the approval of the

Motion.

**Notice**

31.     No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; (vi) the attorneys for

Barclays; (vii) the attorneys for U.S. Bank; and (viii) the attorneys for Pine; (ix) all other parties

entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

32.     No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  March 23, 2011
          New York, New York


/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

**Note Sale and Termination Agreement**

## NOTE SALE AND TERMINATION AGREEMENT

This Note Sale and Termination Agreement (the "Agreement") is entered into as of March [_], 2011, among Pine CCS, Ltd., as issuer ("Issuer"), Pine CCS, Corp, as co-issuer (together with the Issuer, the "Co-Issuers"), U.S. Bank, National Association as trustee ("Trustee"), collateral administrator ("Collateral Administrator"), Class A-2 note agent and Class B note agent, Barclays Bank, PLC, as a Class A-1 Noteholder ("Barclays"), Lehman Commercial Paper Inc., as a Class A-1 Noteholder, the Class A-2 Noteholder, the Class B Noteholder, the Subordinated Noteholder, Seller (each of the foregoing, as defined herein) and administrative agent ("LCPI") and Lehman Brothers Holdings Inc., as guarantor ("LBHI") (collectively, the "Parties").

**WHEREAS**, the Issuer, the Co-Issuer and the Trustee are parties to that certain Indenture (as amended, supplemented or otherwise modified from time to time, the "Indenture") dated as of May 28, 2008;

**WHEREAS**, LBHI is the holder of $3,943,955.04 principal amount of the Class A-1 Notes (as such term is defined in the Indenture) (the "LBHI Notes");

**WHEREAS**, LCPI is the holder of all the outstanding Class A-2 Notes, Class B Notes and Subordinated Notes (as each such term is defined in the Indenture) (the "Original LCPI Notes");

**WHEREAS**, Barclays is the holder of $894,401,360 principal amount of the Class A-1 Notes (as such term is defined in the Indenture) (the "Barclays Notes");

**WHEREAS**, Barclays and LCPI desire to settle certain disputes between them relating to the Notes and the Co-Issuers;

**WHEREAS**, as part of the settlement of the aforementioned disputes, Barclays desires to sell and LCPI desires to purchase, the Barclays Notes;

**WHEREAS**, LCPI intends to acquire the LBHI Notes prior to the Closing Date and accordingly, at the Closing Time on the Closing Date LCPI will be the holder of the LBHI Notes;

**WHEREAS**, at the Closing Time on the Closing Date (each as defined herein), after giving effect to the aforementioned purchase LCPI shall be the sole holder of all the outstanding Notes and Subordinated Notes (as each such term is defined in the Indenture); and

**WHEREAS**, the Parties desire to terminate the Transaction Documents (as defined herein) and the transactions contemplated by such Transaction Documents;

**NOW**, **THEREFORE**, the Parties for valuable consideration the sufficiency of which is hereby acknowledged agree as follows:

1.    <u>Definitions</u>.  Capitalized terms used herein and not otherwise defined shall have the meanings specified in the Indenture.

"<u>Bankruptcy Code</u>" means title 11 of the United States Code.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of New York.

"<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2072 of title 28 of the United States code, and any Local Rules of the Bankruptcy Court.

"<u>Cash Reserve</u>" means the amount specified in Section 4(b) of this Agreement.

"<u>Closing Date</u>" means five Business Days after the Sale Order becomes a Final Order.

"<u>Closing Time</u>" means 2:00 pm New York time.

"<u>Final Order</u>" means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to LCPI or, in the event that an appeal, writ for certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

"<u>Official Committee of Unsecured Creditors</u>" means the official committee of unsecured creditors appointed by the U.S. Trustee in *In re Lehman Brothers Holdings, Inc.*, case number 08-13555, pending in the Bankruptcy Court, as reconstituted from time to time.

"<u>Purchase Price</u>" means $805,000,000.

"<u>Sale Order</u>" means a Final Order or Final Orders of the Bankruptcy Court approving this Agreement and all terms and conditions hereof, including, without limitation, the approval and authorization of LCPI to consummate the transactions contemplated hereby.

"Seller" means LCPI, as the seller under the Master Participation Agreement.

"Transaction Documents" means the Indenture, the Master Participation Agreement, the LBHI Guarantee, the Collateral Administration Agreement, each Note Purchase Agreement the Administration Agreement, the Administrative Agency Agreement and any other document relating to any of the Notes or Subordinated Notes, as each such document shall have been amended, supplemented or otherwise modified from time to time.

2.    Approval by Bankruptcy Court.    (a) The Parties acknowledge that the consummation of the transaction contemplated herein is subject to the approval of the Bankruptcy Court and the entry of the Sale Order which shall be in full force and effect as of the Closing Date.

(b) LCPI shall diligently move for entry of the Sale Order and use its commercially reasonable efforts, in consultation with Barclays, to resolve any objections thereto or appeal thereof.

3.    Sale of the Notes.    Subject to the terms and conditions of this Agreement, Barclays agrees to sell, with full title guarantee, and LCPI agrees to buy the Barclays Notes on the Closing Date for the Purchase Price.

4.    Payment of Purchase Price.    (a) On or before the Closing Time on the Closing Date, LCPI shall pay to Barclays an amount equal to the Purchase Price less the Cash Reserve payable to Barclays by the Trustee in accordance with Section 4(b).

(a)    (b) Provided that the Barclays Notes have been delivered in accordance with Section 5 prior to the Closing Time on the Closing Date, Barclays and LCPI, as the holders of all the Notes and Subordinated Notes, hereby direct the Trustee to pay the balance of all monies of the Issuer held by the Trustee on the Closing Date in the following order of priority, *first* to pay any taxes and registration and filing fees of the Co-Issuers that are due and payable, *second* to pay the Trustee Fees and Administrative Expenses that are due and payable, and *third*, to Barclays, all remaining funds thereafter, which is approximately $260 million (such amount, the "Cash Reserve").

5.    Delivery of Barclays Notes.    On or before the Closing Time on the Closing Date, Barclays shall deliver the Barclays Notes, by free delivery through the Depository Trust Company Corporation, to the Trustee for cancellation.    LCPI agrees that such delivery shall satisfy the obligations of Barclays to deliver the Barclays Notes to LCPI.

6.    Condition to Occurrence of Closing Date.    The Closing Date shall not occur, and no parties shall be required to satisfy any of their obligations that arise on or before such date under this Agreement, until Ceago ABS CDO 2007-1, Ltd. and Ceago ABS CDO 2007-1, LLC (together, "Ceago"), Lehman Brothers Special Financing Inc. ("LBSF"), LBHI, Long Island International Ltd. ("LII"), Bank of America, National

Association (successor by merger to LaSalle Bank, National Association), as trustee under the Indenture dated as of August 16, 2007, among Ceago, as co-issuers, and LaSalle Bank, National Association, as trustee, (the "Trustee" and together with Ceago, LBSF, LBHI and LII, the "Ceago Settlement Parties"), execute a mutually satisfactory agreement resolving disputes between the Ceago Settlement Parties relating to Ceago and the transactions relating thereto.

7.        Representations and Warranties of Barclays.    Barclays represents and warrants to LCPI and the Co-Issuers, that as of the date of this Agreement and the Closing Date:  (i) it is a public limited company organized under the laws of England and Wales; (ii) it has the requisite power and authority to enter into and perform this Agreement; (iii) this Agreement has been duly authorized by all necessary action by Barclays; (iv) this Agreement has been duly executed by one or more duly authorized representatives of Barclays; (v) this Agreement is the valid and binding agreement of Barclays, enforceable against Barclays in accordance with its terms, subject, as to enforceability, to bankruptcy, insolvency, receivership, conservatorship, reorganization, moratorium and other laws relating to or affecting creditors' rights generally and to general principles of equity (regardless of whether considered by a court in equity or at law); (vi) no consent, approval, authorization or order of, or filing or registration with, any court, regulatory authority or other governmental agent or body or third party is required for Barclays to perform its obligations under this Agreement; (vii) Barclays is a sophisticated buyer and seller of securities, claims, notes and other rights such as the Barclays Notes and has adequate information concerning the Barclays Notes to enable it to make an informed decision regarding the sale of the Barclays Notes; (viii) Barclays has independently and without reliance upon LCPI, and based on such information as it deemed appropriate, made its own credit and legal analysis of, and decision to sell, the Barclays Notes; (ix) Barclays has not encumbered, pledged, hypothecated, assigned or otherwise transferred the Barclays Notes or any interest in the Barclays Notes; and (x) Barclays has and LCPI will acquire good and marketable title to the Barclays Notes when delivered in accordance with this Agreement free and clear of any liens, encumbrances or any other defect in title, subject, however, to any liens, encumbrances, or other defects of title created by any affiliate of LCPI or LBHI.

8.        Representations and Warranties of LCPI.  LCPI represents and warrants to Barclays and the Co-Issuers that, as of the date of this Agreement and the Closing Date: (i) it is a corporation organized under the laws of the State of New York; (ii) subject to the Sale Order, it has the requisite power and authority to enter into and, perform this Agreement; (iii) subject to the Sale Order, this Agreement has been duly authorized by all necessary action; (iv) subject to the Sale Order, this Agreement has been duly executed by one or more duly authorized officers; (v) subject to the Sale Order, this Agreement is the valid and binding agreement of LCPI, enforceable against LCPI in accordance with its terms, subject, as to enforceability, to bankruptcy, insolvency, receivership, conservatorship, reorganization, moratorium and other laws relating to or affecting creditors' rights generally and to general principles of equity (regardless of whether considered by a court in equity or at law); (vi) other than the Sale Order, no consent, approval, authorization or order of, or filing or registration with, any court, regulatory

authority or other governmental agency or body or third party is required for LCPI to perform its obligations under this Agreement; (vii) LCPI is the beneficial owner of the Original LCPI Notes and upon satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement and as of the Closing Time on the Closing Date, no other person can give the directions specified in Section 10 of this Agreement; (viii) as of the Closing Date LCPI will have obtained any and all necessary approvals to enter into and consummate the transactions set forth herein, including, but not limited to, any necessary approval of the Bankruptcy Court or the Official Committee of Unsecured Creditors; (ix) it is a sophisticated buyer and seller of securities, claims, notes and other rights such as the Barclays Notes and has adequate information concerning the Barclays to enable it to make an informed decision regarding the purchase of the Barclays Notes; (x) it is a "qualified institutional buyer" as such term is defined in Rule 144A under the Securities Act of 1933, as amended, and a "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act of 1940, as amended; and (xi) it has independently and without reliance upon Barclays, and based on such information as it deemed appropriate, made its own credit and legal analysis of, and decision to purchase, the Barclays Notes.

9.    <u>Securities Not Registered</u>.  LCPI acknowledges that the Barclays Notes have not been registered under the Securities Act and may not be offered, sold, transferred, hypothecated or otherwise assigned except in compliance with the Securities Act and the rules and regulations thereunder and applicable State securities laws.  LCPI represents and warrants that neither LCPI nor any person acting on its behalf has made or will make, directly or indirectly, any offers or sales with respect to any of the Barclays Notes by any form of general solicitation or general advertising (within the meaning of Regulation D under the Securities Act) or in any manner that would require the registration of the sale of the Barclays Notes from Barclays to LCPI under the Securities Act.

10.    <u>Cancellation of the Notes</u>.  Immediately after the Closing Time on the Closing Date and subject to the satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement, LCPI, as the holder of 100% of the Aggregate Outstanding Amount of the Notes and the Subordinated Notes agrees, and the Trustee, at the direction of LCPI, acknowledges that (i) all sums payable by the Co-Issuers under the Transaction Documents have been paid and (ii) all of the obligations of the Issuer and Co-Issuer in respect of the Notes and the Subordinated Notes have been fully extinguished, and LCPI further agrees that it shall surrender (or in the case of the Barclays Notes, direct Barclays to surrender) all of the Notes and the Subordinated Notes to the Trustee for cancellation in accordance with the terms of the Indenture.

11.    <u>Termination of the Transaction Documents</u>.  Subject to the satisfaction of the agreements contained in each of the preceding Sections, each of the Parties agrees to the termination and discharge of the Indenture and other Transaction Documents and any and all duties and obligations thereunder immediately after the Closing Time on the Closing Date.  Each Party herby confirms for the benefit of the Co-Issuers that no fees,

costs or expenses will become payable by the Co-Issuers to it by reason of the discharge of the Indenture or any other Transaction Document.

12. <u>Release of Assets</u>.  In furtherance of the transactions contemplated by this Agreement and subject to the satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement, the Trustee and the Co-Issuers hereby release their respective liens on and interests in the Collateral and the rights and claims of the Issuer under the Master Participation Agreement.  In connection with such release, the Trustee and the Co-Issuers hereby authorize the filing of one or more UCC-3 financing statements with (a) the DC Recorder of Deeds, (b) the Secretary of State of New York and (c) any other applicable authority in any other applicable jurisdiction to evidence the release of the lien on such Collateral.

13. <u>Mutual Release</u>.  As an essential term of this Agreement and the pricing of the purchase and sale, (a) LCPI and LBHI hereby irrevocably and unconditionally waive and release, and covenant not to sue with respect to, any and all claims (as defined in Section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature that LCPI or LBHI has, shall, or may have, against Barclays, Barclays' affiliates, or any of their respective officers, directors, representatives, agents, advisors, owners, partners, managers or related persons, arising out of or relating to the Barclays Notes and the Co-Issuers, or any contractual or other obligation to the Co-Issuers, known or unknown, that were in existence as of the execution of this Agreement, and (b) Barclays and Barclays Capital, Inc. ("Barcap") hereby irrevocably and unconditionally waive and release and covenant not to sue with respect to, any and all claims (as defined in Section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature that Barclays or Barcap has, shall, or may have, against LCPI, LBHI, their affiliates, or any of their respective officers, directors, representatives, agents, advisors, owners, partners, managers or related persons, arising out of or relating to the Barclays Notes, the Co-Issuers, or any contractual or other obligation to the Issuer or the Co-Issuer, known or unknown, that were in existence as of the execution of this Agreement (in each case other than claims under this Agreement), provided that these releases and covenants not to sue shall have no force or effect, and shall in all respects be void, unless and until satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement.

14. <u>Release of Trustee, Collateral Administrator and Co-Issuers.</u>   In consideration of each other Party's execution of this Termination Agreement and the transactions contemplated hereby, LCPI, LBHI and Barclays and any other party, person or entity claiming under or through them, hereby releases, discharges and acquits U.S. Bank National Association and the Co-Issuers, and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "<u>Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in

equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that LBHI, LCPI and Barclays ever had or claimed to have, or now has or claims to have currently or at any future date, against any Released Party arising under or related to the Indenture, the obligations thereunder including but not limited to payments on the Notes issued thereunder, or the Transaction Documents, their negotiation, execution, performance, any breaches thereof, or their termination (each a "Claim") other than Claims resulting from a Released Party's own gross negligence or willful misconduct.

15.    Special Provision for Unknown Claims.  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 1.  Section 1542 of the California Civil Code reads as follows:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

16.    Indemnification.  LCPI shall indemnify U.S. Bank National Association, as Trustee and Collateral Administrator and the Co-Issuers for, and hold each of them harmless from and against, any damages, liabilities, losses, claims or expenses ("Losses") arising out of, or resulting from entering into this Agreement and consummating the transactions contemplated hereby other than Losses resulting from their gross negligence or willful misconduct.  Barclays shall indemnify US Bank and the Co-Issuers for any Losses resulting from any breach by Barclays of its representation set forth in Section 7 (ix) or (x) hereof.

17.    Withdrawal of Claims.  LCPI, LBHI and Barclays direct and instruct US Bank, as Trustee, to withdraw with prejudice after the Closing Time any filed Proofs of Claim (as defined in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "Bar Date Order") entered in the Bankruptcy Cases on July 2, 2009) filed against LBHI, LCPI or any other Debtor (as defined in the Bar Date Order) that relate to the Transaction Documents or the transactions contemplated therein.

18.    Waiver of Notices and Conditions.  Each Party hereby agrees that (i)any and all conditions precedent (including, without limitation, any notices required to be delivered) contained in any of the Transaction Documents or other agreements referred to herein or contemplated hereby relating to the subject matter of this Agreement are hereby waived, (ii) the terms of the Indenture and the other Transaction documents shall be deemed amended or otherwise waived in any manner necessary and appropriate to satisfy

all of the respective conditions precedent relating to the discharge of the Indenture and the termination of the Transaction Documents and to accommodate the transactions contemplated herein, and (iii) each termination described herein shall be effective without any further action by any party and notwithstanding any event, notice, waiting period or other condition provided for in any such Transaction Document or such other agreements referred to herein or contemplated hereby.

19.    Further Assurances.  Each Party hereby agrees to duly execute and deliver to LCPI or LBHI all such other and further instruments of conveyance, transfer and assignment and to take such other action as LCPI or LBHI may reasonably deem necessary to effectuate the release of the Collateral \and to take such further actions as may be reasonably requested by LCPI or LBHI to obtain the full and complete benefit of such release of the rights and property intended to be released hereunder subject, in each case to the payment by LCPI or LBHI of such other party's costs and expenses (including reasonable counsel fees and disbursements) in connection therewith; provided, however, that a party shall not be required to take any action which is contrary to any applicable law.

20.    Execution in Counterparts.  This Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

21.    Direction to Co-Issuers and Trustee.  Barclays, LBHI and LCPI, as holders as of the date of this Agreement of all outstanding Notes and Subordinated Notes, by their respective signatures hereto direct the Co-Issuers and the Trustee to enter into this Agreement and to consummate the transactions contemplated hereby.

22.    Governing Law.  THIS AGREEMENT AND ANY CLAIMS ARISING HEREFROM SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO OTHERWISE APPLICABLE PRINCIPLES OF CONFLICT OF LAWS (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

23.    Waiver of Trial by Jury.  EACH PARTY HERETO HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT OR ANY RELATED TRANSACTION, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

24.    Headings.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provisions hereof or thereof.

25.    Execution by the Trustee.   U.S. Bank National Association is executing this Agreement solely in its capacity as trustee.  None of U.S. Bank National Association, in its individual capacity, or its respective officers, directors, shareholders or agents shall be liable for any claim, liability or obligation arising out of this Agreement.

26.    Termination.   The Barclays Notes are securities whose market value may fluctuate and time is of the essence for the Parties.  This Agreement will terminate automatically without notice to or action by any Party if the sale and purchase of the Barclays Notes contemplated by this Agreement does not occur by June 30, 2011.  The Parties may, but shall have no obligation to, extend the term hereof.

27.    Successors and Assigns.   (a) All terms and provisions of this Agreement shall be binding only upon and inure to the benefit of and be enforceable by the respective heirs, representatives, successors and assigns of the Parties hereto.  No other person is intended to, or shall, be a third party beneficiary of the promises of any Party made herein.

(b) No Party may assign its rights or obligations under this Agreement without the prior written consent of the other Parties, and any purported assignment without such consent shall be void.

28.    Entire Agreement.   Subject to any amendment or modification effected under Section 30 of this Agreement, this Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all previous agreements, promises or representations, whether written or oral, among the Parties.

29.    Costs and Expenses.   As among Barclays, LCPI and LBHI, each agrees to pay its own expenses and disbursements incident to the performance of its obligations hereunder.

30.    Amendments.   Any amendment or modification to this Agreement shall only be effective if agreed to in writing by the Parties; provided, however, that Section 6 of this Agreement may be modified or amended by a writing executed only by Barclays and LCPI; provided further, however, that any amendment or modification of Section 6 that adversely affects the rights of the Co-Issuers, the Trustee or the Collateral Administrator shall require the consent of such party adversely affected.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of day and year first above written.

LEHMAN COMMERCIAL PAPER INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13900

By: _____
    Name:
    Title:
Amount and Class of Notes held:
$0 Class A-2 Notes
$0 Class B Notes
$31,611,000 Subordinated Notes

LEHMAN BROTHERS HOLDINGS INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555

By: _____
    Name:
    Title:
Amount and Class of Notes held:
$3,943,955.04 Class A-1 Notes

U.S. BANK, NATIONAL
ASSOCIATION not individually but
as trustee and collateral administrator

By: _____
    Name:
    Title:

PINE CCS, LTD.

By: _____
    Name:
    Title:

PINE CCS, CORP.

By: _____
    Name:
    Title:

BARCLAYS BANK, PLC


By: _____
    Name:
    Title:
Amount and Class of Notes held:
$894,401,360 Class A-1 Notes


BARCLAYS CAPITAL, INC.
(with respect to Section 13 only)


By: _____
    Name:
    Title:

## Exhibit B

### Transaction Documents

1. Indenture among Pine CCS, Ltd., as Issuer, Pine CCS, Corp., as Co-Issuer, and US Bank National Association, as Trustee, dated May 28, 2008

2. Supplemental Indenture dated July 31, 2008

3. Supplemental Indenture dated August 5, 2008

4. Master Participation Agreement between LCPI, as Seller, and Pine CCS, Ltd., as Purchaser, dated May 28, 2008

5. Amended and Restated Master Participation Agreement between LCPI, as Seller, and Pine CCS, Ltd., as Purchaser, dated August 5, 2008

6. Class A-2 Note Purchase Agreement among Pine CCS, Ltd., as Issuer, Pine CCS, Corp., as Co-Issuer, US Bank National Association, as Class A-2 Note Agent, and each of the Class A-2 Noteholders party thereto, dated May 28, 2008

7. Class B Note Purchase Agreement among Pine CCS, Ltd., as Issuer, US Bank National Association, as Class B Note Agent, and each of the Class B Noteholders party thereto, dated May 28, 2008

8. Subordinated Note Purchase Agreement among Pine CCS, Ltd., as Issuer, US Bank National Association, as Subordinated Note Agent, and each of the Subordinated Noteholders party thereto, dated May 28, 2008

9. Administration Agreement, dated as of the May 28, 2008, between the Issuer and Maples Finance Limited

10. Administrative Agency Agreement, dated as of May 28, 2008, between the Issuer and LBI, as the same may be amended or otherwise modified from time to time in accordance with its terms and as assigned to Lehman Commercial Paper Inc. pursuant to the assignment and Assumption Agreement with respect to the Administrative Agency Agreement made as of December 16, 2008 between Lehman Brothers Inc. and Lehman Commercial Paper Inc

## Exhibit C

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                    :
In re                                               :     Chapter 11 Case No.
                                                    :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,            :     08-13555 (JMP)
                                                    :
                           Debtors.                 :     (Jointly Administered)
                                                    :
                                                    :
-------------------------------------------------------------------x

ORDER PURSUANT TO SECTIONS 105 AND 363 OF
THE BANKRUPTCY CODE APPROVING THE PURCHASE
OF NOTES ISSUED BY PINE CCS, LTD. FROM BARCLAYS
<u>BANK PLC AND THE TERMINATION OF THE PINE SECURITIZATION</u>

Upon the motion, dated March 23, 2011 (the "<u>Motion</u>"), of Lehman Commercial

Paper Inc. ("<u>LCPI</u>") and Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and their affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the

"<u>Debtors</u>" and, together with their non-debtor affiliates, "<u>Lehman</u>") pursuant to sections 105 and

363 of the Bankruptcy Code, for approval of the purchase of notes issued by Pine[1] from Barclays

Bank PLC and LBHI and the termination of the Pine securitization, all as more fully described in

the Motion; and the Court having jurisdiction to consider the Motion and the relief requested

therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided to (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

---

[1] All capitalized terms used but not defined in this Order shall have the meanings ascribed to such terms in the Motion.

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service;

(v) the United States Attorney for the Southern District of New York; (vi) the attorneys for

Barclays; (vii) the attorneys for U.S. Bank; (viii) the attorneys for Pine; and (ix) all other parties

entitled to notice in accordance with the procedures set forth in the second amended order

entered on June 17, 2010 governing case management and administrative procedures for these

cases [Docket No. 9635]; and a hearing (the "Hearing") having been held to consider the relief

requested in the Motion; and the Court having found and determined that the relief sought in the

Motion is in the best interests of LCPI and LBHI, their estates and creditors, and all parties in

interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that objections, if any, to the Motion, that have not been resolved or

withdrawn, are overruled; and it is further

ORDERED that, the Court having determined and found that the proposed

transactions set forth in the Note Sale and Termination Agreement are reasonable and

appropriate, and consummation of the transactions contemplated by the Note Sale and

Termination Agreement are in the best interests of LCPI, LBHI and their estates, the Motion is

granted; and it is further

ORDERED that pursuant to sections 105 and 363(b) of the Bankruptcy Code, (i)

the Note Sale and Termination Agreement, (ii) the purchase by LCPI and the sale by LBHI of the

LBHI Notes, and (iii) the release by LBHI of its security interest in the Class A-2, Class B and

Subordinated Notes issued by Pine, are approved, and LCPI and LBHI are duly authorized to

execute, deliver, implement and fully perform any and all obligations, instruments, documents

and papers and to take any and all actions reasonably necessary or appropriate to consummate (a)

the Note Sale and Termination Agreement and all obligations contemplated therein, (b) the

purchase of the LBHI Notes, and (c) the release by LBHI of its security interest in the other Pine

Notes as described in the Motion; and it is further

ORDERED that, notwithstanding the entry of this Order, all rights, claims and

defenses of LBHI and LCPI with respect to (i) the ownership of the Pine Notes and (ii) any

transfer by LBHI and LCPI of the Pine Notes prior to the Commencement Date shall be reserved

and not affected by the transactions contemplated by the Note Sale and Termination Agreement

and the Motion; and it is further

ORDERED that nothing in the Motion, this Order, or the Note Sale and

Termination Agreement shall (a) bind, be collateral estoppel, res judicata, constitute an

admission of the parties in, or otherwise prejudice any other matter (other than approval of the

matters and the Note Sale and Termination Agreement herein, and the performance thereof) in

this case or in the Chapter 11 Cases (collectively, the "Cases") with respect to the legal or factual

assertions set forth in the Note Sale and Termination Agreement and the Motion; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and the

terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order and the Agreement.

Dated: _____, 2011
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE