WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11 Case No.**
                                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                :    **08-13555 (JMP)**
                                                            :
                                      **Debtors.**          :    **(Jointly Administered)**
                                                            :
                                                            :
------------------------------------------------------------------x

**DECLARATION OF DAVID WALSH IN**
**SUPPORT OF MOTION PURSUANT TO SECTIONS 105**
**AND 363 OF THE BANKRUPTCY CODE FOR APPROVAL OF THE**
**PURCHASE OF NOTES ISSUED BY PINE CCS, LTD. FROM BARCLAYS**
**BANK PLC AND THE TERMINATION OF THE PINE SECURITIZATION**

Pursuant to 28 U.S.C. § 1746, I, David Walsh, declare:

1.      I am over the age of 18 years and make these statements of my own personal

knowledge, my review of the business records of Lehman Brothers Holdings Inc. ("LBHI") and

Lehman Commercial Paper Inc. ("LCPI") and/or my consultation with employees of LBHI,

LCPI and Alvarez & Marsal North America, LLC ("A&M"), which was retained by the

Debtors,[1] pursuant to this Court's approval, to advise and assist the Debtors in connection with,

among other things, their restructuring, managing their assets, and maximizing the realization of

---

[1]        Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

their assets.  *See* Order entered on December 17, 2008 [Docket No. 2278].  If called to testify, I

could testify to the truth of the matters set forth herein.

2.    I am a Managing Director with A&M.  I was assigned to the Lehman matter in

October 2008.  One of my primary areas of responsibility is the management of the Debtors'

portfolio of securitizations and special purpose financing vehicles in the commercial loan area.  I

began my career working in commercial banking for 13 years.  I have specialized in turnaround

and restructuring with A&M since 1984, serving in a variety of interim management, advisory,

and financial restructuring roles.

3.    I submit this Declaration in support of the *Motion Pursuant To Sections 105 and*

*363 of The Bankruptcy Code For Approval of the Purchase of Notes Issued by Pine CCS, Ltd.*

*From Barclays Bank PLC and the Termination of the Pine Securitization* (the "Motion").

4.    On behalf of the Debtors, I led negotiations with Barclays Bank PLC that resulted

in the Note Sale and Termination Agreement (the "Agreement") that is the subject of the Motion.

A copy of the Agreement is attached to the Motion as Exhibits A.  Prior to its filing, I also

reviewed and approved the Motion, and I adopt the representations contained in the Motion, as if

set forth in full and at length in this Declaration.

## The Pine Securitization

5.    As a result of my responsibilities managing the Debtors' portfolio of

securitizations and special purpose financing vehicles in the commercial loan area, I have

become familiar with the Pine securitization.   As of February 28, 2011, LCPI is the lender of

record for 28 commercial loans and 2 equity interests, participations in which were sold to Pine

prior to the Commencement Date.  In addition, LBHI is the holder of a Class A-1 Note issued by

Pine, which has an outstanding amount of $4,089,615.90 (including accrued interest) as of

January 31, 2011, and LCPI is the holder of the Subordinated Notes issued by Pine, which has an

outstanding principal amount of $32 million.  LCPI is also the holder of the Class A-2 Notes and

Class B Notes issued by Pine; however, since the Commencement Date there have not been any

amounts outstanding on such notes.  I, in consultation with other employees at LCPI, LBHI and

A&M have analyzed the loans that have been participated to Pine and reviewed the markets in

which similar loans have been trading since the Commencement Date.

### The Purchase of the Class A-1 Notes

6.      Since the Commencement Date, the Debtors have sought to maximize the value

of the Underlying Assets, which at times requires agreeing to modifications of such commercial

loans or sales of such loans.  However, due to certain restrictions included in the Pine

securitization documents, at times, the consent of U.S. Bank and/or Barclays has been required

prior to taking certain actions.  Such provisions have impeded the efficient management of the

Underlying Assets.  Since LCPI owns the Subordinated Notes in Pine, which effectively

represents the equity in Pine, any proceeds of the Underlying Assets in excess of the amounts

payable on the other notes, inure to the benefit of LCPI.  As a result, LCPI has an economic

interest in maximizing the value of the Underlying Assets.

7.      I have determined that the purchase of the Barclays Notes and the LBHI Notes,

which will result in LCPI holding all of the notes issued by Pine, and the termination of the Pine

structure is in the best interest of LCPI's estate creditors.

8.      In my considered business judgment, the Purchase Price of the Barclays Notes is

both fair and reasonable, and offers LCPI the ability to realize a considerable profit in the long

term.  The Purchase Price represents a discount of 13.2% to the outstanding amount of the

Barclays Notes (including accrued interest thereon) and 12.1% to the estimated fair market value

of the Underlying Assets, determined as of February 28, 2011.  In addition, a substantial portion

of the Purchase Price consists of amounts that are held by U.S. Bank on behalf of Pine, which as

of February 28, 2011 is approximately $261 million.  Another substantial portion of the Purchase

Price consists of amounts that LCPI has collected on the Underlying Assets and holds as

restricted cash on behalf of Pine.  As of February 28, 2011 such amount was approximately $303

million.  Therefore, LCPI will only have to pay approximately $241 million out of its

unrestricted cash to acquire the Barclays Notes.

9.      I have concluded, in my business judgment and in consultation with the Lehman

commercial loan team, that the Purchase Price is fair and reasonable, and affords LCPI the

opportunity for substantial profit from the cash flows generated by the Underlying Assets

10.     In order to facilitate the termination of the Pine Securitization, LCPI will also

purchase the LBHI Notes from LBHI.  LCPI will pay LBHI par plus accrued interest for the

LBHI Notes.  In addition, LBHI will release its security interest on the Class A-2 Notes, Class B

Notes and Subordinated Notes issued by Pine.  The purchase of the LBHI Notes will

significantly ease the administration of and accounting for the Underlying Assets following this

transaction, since they will all be owned by LCPI and not split between LCPI and LBHI.  The

purchase price to be paid for the LBHI Notes is modest in relation to the benefits that LCPI will

obtain from the consummation of the transactions described in the Motion.  I have determined

that the purchase price is reasonable and fair under the circumstances.

### The Termination of the Pine Securitization

11.     In addition to the upside potential to LCPI from the purchase of the Barclays

Notes, the purchase of the Barclays Notes and the LBHI Notes, when combined with its current

holdings of 100% the Subordinated Notes, LCPI will obtain control over 100% of the capital

structure of Pine, thereby enabling LCPI to terminate the Pine securitization and directly realize upon the value of the Underlying Assets.

12.     Outright ownership of the Underlying Assets is far more valuable than indirect ownership through the Pine securitization structures.  Termination of the securitization will enable LCPI to eliminate and provisions that restrict the management and/or sale of the Underlying Assets as and when such opportunities arise.  Terminating the securitization will also eliminate the need for LCPI to maintain the proceeds from the Underlying Collateral as restricted cash and would permit LCPI to hold or use such cash for the benefit of its creditors.

### The Motion Should Be Approved

13.     For the reasons set forth above, I have concluded that LCPI's decision to acquire the Barclays Notes and the LBHI Notes represents an exercise of prudent business judgment on the part of LCPI.  The purchase price for both the Barclays Notes and the LBHI Notes is fair and reasonable, and affords LCPI the opportunity to realize substantial upside gain on the Barclays Notes.  Furthermore, LCPI will realize a significant increase in value from unwinding the Pine securitization.  For all the foregoing reasons, therefore, I believe that the Agreement and the purchase of the LBHI Notes are in the best interests of the Debtors' estates and their creditors, and should be approved.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 23rd day of March, 2011.

/s/ David Walsh
David Walsh