**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re:                                                                  :  Chapter 11
                                                                              :
LEHMAN BROTHERS HOLDINGS INC., *et al.,*   :  Case No. 08-13555 (JMP)
                                                                              :
                                          Debtors.             :  (Jointly Administered)
------------------------------------------------------------------x

**ORDER, PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY
CODE AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002, 6004
AND 9014, APPROVING THE SALE OF SHARES OF QUADRANT STRUCTURED
PRODUCTS COMPANY, LTD. AND GRANTING CERTAIN RELATED RELIEF**

This matter having come before the Court on the motion, dated February 28, 2011, (the "**Motion**")[1] of Lehman Brothers Holdings Inc. and Lehman Commercial Paper Inc. (together, the "**Debtors**"), as debtors and debtors in possession, for the entry of an order pursuant to sections 105 and 363 of the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "**Bankruptcy Code**") and rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"): (i) authorizing the Debtors to sell 80,000 Class A Shares (collectively, the "**Shares**") of Quadrant Structured Products Company, Ltd. (the "**Purchaser**") to Purchaser, free and clear of all liens, claims, encumbrances and other interests (the "**Sale**"), (ii) approving the Purchase Agreement, dated as of February 28, 2011, between the Debtors and the Purchaser, substantially in the form attached as Exhibit A to the Motion (the "**Purchase Agreement**") and authorizing the Debtors' execution and delivery of, and performance under, the Purchase Agreement and (iii) granting related relief; a hearing (the "**Hearing**") having been held before the Court on March 16, 2011, at which time all parties in interest were afforded an opportunity to be heard with respect to the Motion; and the Court having reviewed and

---

[1]    Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

considered the Motion, the Declaration of Andrew Grapkowski in support thereof and the objections thereto, if any, and related pleadings, and having heard testimony and arguments of counsel and received evidence with respect to the proposed Sale;

NOW, THEREFORE, based upon all of the evidence, including affidavits, proffered or adduced at the Hearing, memoranda, objections and arguments of counsel in connection with the Hearing, and upon the entire record of the Hearing; and after due deliberation thereon; and good cause appearing therefor;

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

    A.    This Court has jurisdiction to hear and determine the Motion, and over the property of the Debtors, including the Shares to be sold pursuant to the Purchase Agreement, pursuant to 28 U.S.C. §§ 157 and 1334.

    B.    Venue of this case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

    C.    Determination of the Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N) and (O). The statutory predicates for the relief requested herein are sections 105 and 363 of the Bankuptcy Code and Bankruptcy Rules 2002, 6004 and 9014.

    D.    In accordance with section II.C.1 of General Order M-383 and the procedures set forth in the order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635], proper, timely, adequate and sufficient notice of the Motion has been given to: (1) the U.S. Trustee; (2) counsel to the Creditors' Committee; (3) the Securities and Exchange Commission; (4) the Internal Revenue

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed R. Bankr. P. 7052.

Service; (5) the United States Attorney for the Southern District of New York; (6) the Purchaser; (7) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Shares; (8) all parties required to receive notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (9) all other parties required to receive notice of the Motion pursuant to section II.C.1 of General Order M-383 of this Court. No other or further notice need be provided.

E. The Debtors have demonstrated and proven to the satisfaction of this Court that approval of the Purchase Agreement and consummation of the Sale at this time are in the best interests of the Debtors, their creditors, their estates and all other parties in interest in their chapter 11 cases, and that the Sale represents a sound and prudent exercise of the Debtors' business judgment. The Debtors have articulated good, sufficient and sound business justifications and compelling circumstances for a sale of the Shares pursuant to section 363(b) of the Bankruptcy Code.

F. The consideration to be provided by the Purchaser for the Shares pursuant to the Purchase Agreement is (1) the highest and best offer for the Shares under the circumstances, (2) is fair and reasonable and (3) and constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the other laws of the United States, any state, territory or possession thereof and the District of Columbia. The terms and conditions of the Purchase Agreement are also fair and reasonable.

G. As a condition to the Sale, the Purchaser requires that the Shares must be sold free and clear of any and all claims, liens, pledges, offsets, setoffs, recoupments, charges, successor, product, environmental, tax and other liabilities (whether secured or unsecured, contingent or absolute, liquidated or unliquidated, perfected or unperfected, choate or inchoate,

filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded), taxes, security interests, mortgages, restrictions, indentures, loans, credit agreements, other agreements, interests under any agreements (including repurchase agreements), instruments, contracts, judgments and any actions and proceedings of any kind or nature, but excluding any restrictions on the Shares imposed by the Shareholders' Agreement (collectively, "**Liens and Claims**").  The Purchaser would not enter into the Purchase Agreement or consummate the Sale, thus adversely affecting the Debtors' estates, if the Sale were not to be free and clear of all Liens and Claims.

H. The Debtors may sell the Shares free and clear of all Liens and Claims, because one or more of the requirements set forth in sections 363(f) of the Bankruptcy Code has been satisfied.  Holders of Liens and Claims who did not object, or who withdrew their objections, to the sale of the Shares and the Motion are deemed to have consented to such sale free and clear of all Liens and Claims pursuant to section 363(f)(2) of the Bankruptcy Code.  Those holders of Liens and Claims who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens and Claims, if any, attach to the proceeds of the sale of the Shares with the same priority that such Liens and Claims had on the Shares, if any, subject to the rights and defenses, if any, of the Debtors and any party in interest with respect thereto.

I. The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections afforded thereby in that:  (1) while the Purchaser is an "affiliate" of the Debtors within the meaning of section 101(2)(B) of the Bankruptcy Code because the Debtors control approximately 20 percent of the outstanding voting securities of the Purchaser, after the Sale, the Purchaser will not be an "affiliate" or "insider" of the Debtors (in each case, as defined in the Bankruptcy Code) and will otherwise be

unrelated to the Debtors; (2) the Purchaser, the Debtors and their respective counsel and financial advisors engaged in good faith, arm's length negotiations to determine the terms and conditions of the Purchase Agreement; and (3) the Debtors and the Purchaser have entered into the Purchase Agreement in good faith and without collusion.

J. No party has alleged any conduct that would constitute improper agreements or conduct under section 363(n) of the Bankruptcy Code. No party has engaged in any conduct that would permit the avoidance of the Sale, the recovery of excess value and other costs, fees or expenses or the imposition of punitive damages pursuant to section 363(n) of the Bankruptcy Code.

K. Upon the entry of this Sale Order: (1) the Debtors have full corporate power and authority to execute, deliver and perform the Purchase Agreement and all other agreements, instruments and other documents contemplated thereby, including without limitation the Modification Agreement (the "**Transaction Documents**") and to consummate the Sale in accordance with the terms and conditions thereof; (2) the execution, delivery and performance by the Debtors of the Purchase Agreement and the other Transaction Documents and the consummation of the Sale have been duly and validly authorized by all necessary corporate action on the part of the Debtors; and (3) no other consents or approvals, other than those expressly provided for in the Purchase Agreement, are required for the Debtors to consummate the Sale.

L. The Debtors hold good title to the Shares as of the Closing Date (as defined in the Purchase Agreement) and, accordingly, the transfer of the Shares: (1) will be a legal, valid and effective transfer of property of the Debtors' estates to the Purchaser; and (2) will vest the Purchaser with all right, title and interest of the Debtors in and to the Shares,

free and clear of any Liens and Claims, pursuant to sections 363(f) and 105 of the Bankruptcy Code.

        M.    The Purchaser is not, and will not become by virtue of the Sale, the successor of or to the Debtors, and the transfer of the Shares to the Purchaser does not and will not subject the Purchaser or any of its affiliates, successors or assigns or any of their respective affiliates, agents, representatives, counsel or advisors to any (1) liability, (2) duty, (3) responsibility, (4) obligation for any liens, claims or administrative expenses or (5) other liabilities, in each case against the Debtors, by reason of such transfer under the laws of the United States, any state, territory or possession thereof or the District of Columbia applicable to such transactions.

        N.    The Purchaser would not have entered into the Purchase Agreement and would not consummate the Sale, thus adversely affecting the Debtors, their estates and their creditors, if the Debtors, on behalf of themselves and their affiliates, did not, upon the occurrence of the Closing (as defined in the Purchase Agreement) and pursuant to the Release attached to the Purchase Agreement as Exhibit C (the "**Release**"), irrevocably and unconditionally release and forever discharge Magnetar MQ, Ltd. ("**Magnetar**"), the majority shareholder of the Purchaser, and each of its affiliates (including the Purchaser), and each of its and its affiliates' respective successors, directors, officers, employees and agents from all direct and indirect liabilities, obligations, claims, losses, damages, deficiencies, costs and expenses, whether known or unknown, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, executory, determined, determinable or otherwise (collectively, "**Liabilities**") arising out of the Debtors' ownership of an interest in the Purchaser and any acts or omissions of the Purchaser in

connection therewith, other than any Liabilities arising out of the Purchase Agreement or any other Transaction Documents.

O. Time is of the essence in closing the Sale and the Debtors and the Purchaser intend to close the Sale as soon as practicable.

NOW THEREFORE, IT IS HEREBY ORDERED THAT:

1. The relief requested in the Motion is GRANTED in its entirety.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby denied and overruled on the merits, with prejudice.

**Authorization and Approval of the**
**Sale and the Purchase Agreement**

3. The Purchase Agreement and the other Transaction Documents, and in each case all of the terms and conditions contained therein, are hereby approved in all respects, and the Sale pursuant to the Purchase Agreement is hereby authorized under sections 363(b) and (f) of the Bankruptcy Code. The omission from this Sale Order of specific reference to any provision of the Purchase Agreement or any other Transaction Document shall not impair or diminish the efficacy, propriety or approval of any such provision, it being the intent of this Court that the Purchase Agreement and the other Transaction Documents are hereby authorized and approved in their entireties.

4. By the issuance of this Sale Order, the Debtors (including their officers, employees and agents) are hereby authorized and directed to execute, deliver, consummate, implement and fully perform under the Purchase Agreement and the other Transaction Documents, in each case in accordance with the terms and conditions thereof, together with all additional agreements, instruments and other documents that may be reasonably necessary or

desirable to implement the Purchase Agreement and the other Transaction Documents, and to take all further actions as may reasonably be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser the Shares or as may otherwise be necessary or appropriate for the performance of the Debtors' obligations under the Purchase Agreement and the other Transaction Documents and the consummation of the Sale.

5. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, upon satisfaction (or waiver to the extent permitted by the Purchase Agreement) of the conditions to the Closing, the Shares shall be transferred to the Purchaser at the Closing, free and clear of all Liens and Claims of any kind or nature whatsoever. Notwithstanding paragraph 8 below or anything to the contrary in this Sale Order, all such Liens and Claims released, terminated and discharged as to the Shares shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they would then have against the Shares, subject to any defenses, counterclaims, rights of avoidance and rights under section 506(c) of the Bankruptcy Code that the Debtors may have with respect thereto.

6. The transfer of the Shares to the Purchaser pursuant to the Purchase Agreement shall constitute a legal, valid and effective transfer, assignment and conveyance of the Shares, and shall vest the Purchaser with all right, title (which shall be good, clear and marketable) and interest of the Debtors in and to the Shares, free and clear of all Liens and Claims.

7. All persons, including, but not limited to, all debt security holders, equity security holders, federal, state or local governmental, tax, environmental and regulatory authorities or agencies, lenders, trade and other creditors, holding Liens or Claims of any kind or nature whatsoever against or in the Debtors or the Shares (whether legal or equitable, secured or

Pg 9 of 14

unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated) arising under or out of, in connection with or in any way relating to the Debtors, the Shares, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Shares to the Purchaser are hereby forever barred, estopped and permanently enjoined from asserting, prosecuting or otherwise pursuing any interest of any kind or nature whatsoever that any such person had, has or may have against the Debtors, the Shares or any other assets or operations of the Debtors or any of the Debtors' predecessors or affiliates against the Purchaser or any of its affiliates, successors or assigns or any of their respective affiliates, the Shares or any other assets or operations of the Purchaser or any of its affiliates, successors or assigns or any of their respective affiliates, agents, representatives, counsel or advisors.  No such person shall assert against the Purchaser or any of its successors in interest any liability, debt, claim or obligation relating to or arising from the ownership of the Shares or any liabilities calculable by reference to the Debtors or the Debtors' assets or operations.

**Release of Liens and Claims**

8.    This Sale Order shall operate to release of all Liens and Claims on and against the Shares, upon the occurrence of the Closing.  At or prior to the Closing, each person is authorized and directed to execute such documents and take all other actions as may be necessary or appropriate to release its Liens and Claims on or against the Shares, as such Liens and Claims may have been recorded or may otherwise exist.  If any person that has filed any mortgages, deeds of trust, financing statements or other documents or agreements evidencing any Liens and Claims on or against the Shares shall not have delivered to the Debtors prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases and/or other documents required to release all

Liens and Claims that the person has with respect to the Shares, each of the Debtors and the Purchaser is hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of such person with respect to the Shares. Without limiting the effect of the foregoing, each of the Debtors and the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens and Claims on or against the Shares. The foregoing notwithstanding, the provisions of this Sale Order authorizing the Sale free and clear of Liens and Claims shall be self-executing, notwithstanding any failure of the Debtors, the Purchaser or any other party to execute, file or obtain termination statements, instruments of satisfaction, releases, assignments, consents or other documents to effectuate, consummate and/or implement the provisions hereof or of the Purchase Agreement with respect to the Sale of the Shares, and all Liens and Claims on or against the Shares shall be deemed unconditionally released, discharged, terminated, void and unenforceable with respect to the Shares upon the occurrence of the Closing.

### Good Faith Purchaser

9. The Purchaser is a purchaser in good faith of the Shares and is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code. The sale of the Shares, and the Debtors' entry into the Purchase Agreement and the other Transaction Documents, may not be avoided, and costs may not be recovered or punitive damages awarded, pursuant to section 363(n) of the Bankruptcy Code.

10. In the absence of a stay pending appeal, the Purchaser will be acting in good faith within the meaning of section 363(m) of the Bankruptcy Code in closing the Sale as contemplated by the Purchase Agreement and the other Transaction Documents at any time after

the entry of this Sale Order and, accordingly, such closing in the face of an appeal will not deprive the Purchaser of its status as a good faith purchaser.

### Additional Provisions

11. From and after entry of this Sale Order, neither the Debtors nor any other person shall take or cause to be taken any action that would adversely affect or interfere with the transfer of the Shares to the Purchaser in accordance with the terms and conditions of the Purchase Agreement and this Sale Order.

12. The terms and conditions of the Purchase Agreement and the Transaction Documents, together with the terms and provisions of this Sale Order, shall be binding upon the Debtors, their affiliates, successors and assigns and their respective affiliates, agents, representatives, counsel and advisors, any trustee that may be appointed in the Debtors' chapter 11 cases or in any case under chapter 7 of the Bankruptcy Code to which such cases may be converted, their estates, their creditors, the Purchaser, its affiliates, successors and assigns and their respective affiliates, agents, representatives, counsel and advisors and any other affected third parties, all persons asserting any Liens and Claims against the Shares and all other persons, including without limitation all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons who may be required by operation of law or by the duties of their office or contract to accept, file, register or otherwise record or release any documents or instruments, or who may be required to or insure title or state of title in or to the Shares.

13. As of the time of the Closing, all agreements of any kind whatsoever and all orders of this Court entered prior to the date hereof shall be deemed amended or otherwise modified to the extent required to permit the consummation of the Sale.

14. Any of the terms and conditions of the Purchase Agreement or the other Transaction Documents may be waived, modified, amended or supplemented by the parties thereto in accordance with the terms thereof, without further order of the Court; <u>provided</u>, <u>however</u>, that any such modification, amendment or supplement does not materially change the terms of the Purchase Agreement or modify the express terms of this Sale Order.

15. Upon the occurrence of the Closing, pursuant to the Release, Magnetar, its affiliates (including the Purchaser), and its and its affiliates' respective successors, directors, officers, employees and agents are hereby released by the Debtors, on behalf of themselves and their affiliates, from any and all Liabilities arising out of the Debtors' ownership of an interest in the Purchaser and any acts or omissions of the Purchaser in connection therewith, other than any Liabilities arising out of the Purchase Agreement or any other Transaction Documents.

16. In accordance with the terms and conditions of Section 6.5 of the Purchase Agreement, until the third anniversary of the Closing, the Debtors shall indemnify, defend and hold the Indemnitees harmless from and against any damages, losses, liabilities or expenses incurred by any of the Indemnitees (including, but not limited to, reasonable expenses of investigation and reasonable attorneys' fees and expenses in connection with any action, suit or proceeding and any incidental, indirect or consequential damages, losses, liabilities, lost profits or diminution in value associated therewith) as a result, or arising out of a breach, of the representations and warranties set forth in Section 4.5 of the Purchase Agreement, up to a maximum amount equal to the Purchase Price (as such term is defined in the Purchase

Agreement) (such indemnity obligations, the "**Indemnification Obligations**"), provided that the Debtors shall not be responsible for the fees and expenses of more than one separate law firm (in addition to Cayman counsel) for all Indemnitees.

17. Any Indemnification Obligation due and owing under the Purchase Agreement shall be allowed as an administrative expense claim against the bankruptcy estates of each of the Debtors pursuant to section 503(b) of the Bankruptcy Code (any such administrative expense, an "**Indemnity Claim**"). Any Indemnity Claim shall be payable by the Debtors without the need for (a) the Indemnitees to file an administrative proof of claim or (b) further order of the Court. Except as expressly provided in the Purchase Agreement or herein, the Indemnification Obligations shall survive, and shall not be modified, impaired or discharged by: (a) the entry of an order (i) converting the bankruptcy case of either of the Debtors (together, the "**Bankruptcy Cases**") to a case under chapter 7 of the Bankruptcy Code, (ii) dismissing either Bankruptcy Case or the bankruptcy case of any of the Debtors' affiliated debtors and debtors in possession (collectively with the Debtors, the "**Lehman Debtors**"), (iii) terminating the joint administration of the Lehman Debtors' bankruptcy cases or (iv) confirming a chapter 11 plan in either of the Bankruptcy Cases; or (b) any other act or omission.

18. The Debtors' waiver of any discharge as to any Indemnification Obligations, as set forth at Section 6.5(b) of the Purchase Agreement, is hereby approved pursuant to section 1141(d)(4) of the Bankruptcy Code.

19. This Court retains jurisdiction to (a) interpret, enforce and implement the terms and provisions of the Purchase Agreement and the other Transaction Documents, all amendments thereto and any waivers and consents thereunder; (b) compel delivery of the Shares to the Purchaser; (c) resolve any disputes arising under or related to the Purchase Agreement or

the other Transaction Documents; (d) interpret, enforce and implement the provisions of this Sale Order; (e) resolve any disputes relating to the receipt, use, application or retention of the proceeds of the Sale and any Liens and Claims thereon; and (f) protect the Purchaser against all Liens and Claims.

20.     Nothing contained in any plan of reorganization or liquidation confirmed in either Debtors' chapter 11 case or in any order of confirmation confirming any plan of reorganization or liquidation entered in either Debtors' chapter 11 case, nor any order dismissing or converting either of the Debtors' chapter 11 cases to a chapter 7 liquidation or any further order of this Court shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

21.     Except as otherwise provided herein or in the Purchase Agreement and the other Transaction Documents with respect to the Purchaser, nothing contained herein shall be deemed to be a waiver or the relinquishment of any rights, claims, interests, obligations, benefits or remedies that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including against each other or third parties and the Debtors are hereby authorized and directed to execute such further documents to evidence these reservations.

22.     The stay otherwise imposed by Bankruptcy Rule 6004(h) is hereby waived and the terms of this Sale Order shall be immediately effective and enforceable upon its entry.

23.     All of the provisions of this Sale Order are nonseverable and mutually dependent.

Dated: New York, New York
March 24, 2011                                         *s/ James M. Peck*
                                                      Honorable James M. Peck
                                                      United States Bankruptcy Judge