**Exhibit M – Transcript of  Oct. 27, 2010 Hearing (Excerpt)**

Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case Nos. 08-13555(JMP)

5

6  - - - - - - - - - - - - - - - - - - - - -x

7  In the Matter of:

8

9  LEHMAN BROTHERS HOLDINGS INC., et al.

10

11            Debtors.

12  - - - - - - - - - - - - - - - - - - - - -x

13

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            October 27, 2010

19            10:07 AM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Debtors' Twenty-Eighth Omnibus Objection to Claims

3    (Valued Derivative Claims)

4

5    HEARING re Debtors' Thirty-Fifth Omnibus Objection to Claims

6    (Valued Derivative Claims)

7

8    HEARING re Debtors' Thirty-Sixth Omnibus Objection to Claims

9    (Failure to Submit Guarantee Questionnaire Claims)

10

11   HEARING re Debtors' Thirty-Seventh Omnibus Objection to Claims

12   (No Liability Claims)

13

14   HEARING re Debtors' Thirty-Eighth Omnibus Objection to Claims

15   (Amended and Superseded Claims)

16

17   HEARING re Debtors' Fortieth Omnibus Objection to Claims (Late-

18   Filed Claims)

19

20   HEARING re Debtors' Forty-First Omnibus Objection to Claims

21   (Late-Filed Claims)

22

23   HEARING re Debtors' Forty-Second Omnibus Objection to Claims

24   (Late-Filed Lehman Programs Securities Claims)

25

Page 3

1

2    HEARING re Debtors' Forty-Third Omnibus Objection to Claims

3    (Late-Filed Lehman Programs Securities Claims)

4

5    HEARING re Debtors' Forty-Fourth Omnibus Objection to Claims

6    (Settled Derivative Claims)

7

8    HEARING re Debtors' Twenty-Ninth Omnibus Objection to Claims

9    (No Blocking Number LPS Claims)

10

11   HEARING re Debtors' Thirty-Ninth Omnibus Objection to Claims

12   (Duplicative Claims)

13

14   HEARING re Debtors' Objection to Proofs of Claim Filed By

15   William Kuntz III (Claim Nos. 33550, 33551, 33552, 35121, and

16   35430)

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

Page 4

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for Debtors and Debtors-in-Possession

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   SHAI Y. WAISMAN, ESQ.

9          PENNY P. REID, ESQ.

10         MARK BERNSTEIN, ESQ.

11

12   WEIL, GOTSHAL & MANGES LLP

13         Attorneys for Debtors and Debtors-in-Possession

14         200 Crescent Court

15         Suite 300

16         Dallas, TX 75201

17

18   BY:   ERIN D. ECKOLS, ESQ.

19

20

21

22

23

24

25

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 6 of 37

Page 5

```
 1

 2    MILBANK, TWEED, HADLEY & MCCLOY LLP

 3         Attorneys for the Official Committee of Unsecured

 4          Creditors

 5         One Chase Manhattan Plaza

 6         New York, NY 10005

 7

 8    BY:   DENNIS C. O'DONNELL, JR.

 9          MATTHEW KANTOR, ESQ.

10

11    DUANE MORRIS LLP

12         Attorneys for Aspecta Assurance International

13          Luxembourg, S.A.

14         1540 Broadway

15         New York, NY 10036

16

17    BY:   PATRICIA H. HEER, ESQ.

18

19    KATTEN MUCHIN ROSENMAN LLP

20         Attorneys for RBC Capital Markets Corp.

21         575 Madison Avenue

22         New York, NY 10022

23

24    BY:   JEFF J. FRIEDMAN, ESQ.

25
```

Page 6

1

2    THALER & GERTLER LLP

3          Attorneys for August '98 Trust

4          90 Merrick Avenue

5          Suite 400

6          East Meadow, NY 11554

7

8    BY:   KIM D. VICTOR, ESQ.

9

10   POLSINELLI & SHUGHART

11         Attorneys for Interested Party

12         700 West 47th Street

13         Suite 1000

14         Kansas City, MO 64112

15

16   BY:   MICHAEL S. FOSTER, ESQ.

17         (TELEPHONICALLY)

18

19

20

21

22

23

24

25

```
 1

 2   STUTMAN, TREISTER & BLATT

 3        Attorneys for Lehman Brothers Holdings, Inc.

 4        1901 Avenue of the Stars

 5        12th Floor

 6        Los Angeles, CA 90067

 7

 8   BY:   MARINA FINEMAN, ESQ.

 9        (TELEPHONICALLY)

10

11   ALSO APPEARING:

12   WILLIAM A. KUNTZ, PRO SE

13        Box 461

14        Lake Placid, NY 12946

15

16   BY:   WILLIAM A. KUNTZ

17

18

19

20

21

22

23

24

25
```

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
LEHMAN BROTHERS HOLDINGS INC. et al.
Transcript of  Oct. 27  2010 Hearing (Excerpt)   Pg 9 of 37

Page 14

1    allow claims that were settled pursuant to assigned termination

2    agreements.  These claims were where parties had reached an

3    agreement with the debtors with respect to the claim amount of

4    classification that is not reflected on the group of claims.

5    And omnibus objection is simply seeking to modify those claims

6    to conform to the parties' agreement.  Therefore, the debtors

7    respectfully request that the Court grant omnibus objection 44.

8            THE COURT:  Omnibus objection 44 is granted.

9            MS. ECKOLS:  Your Honor, that wraps up the uncontested

10   claims matters.  And moving on to the contested claim matters,

11   agenda item number 11 which is some carryover items from

12   debtors' twenty-ninth omnibus objection to claims.

13           As Your Honor may recall, omnibus objection 29 sought

14   to disallow and expunge Lehman program securities claims that

15   violated the bar date order because they did not include the

16   required blocking number.  At the September 1 claims hearing,

17   Your Honor granted the omnibus objection with respect to the

18   uncontested claims and today we are taking up the three

19   contested claims.

20           The responses or the parties contesting are RBC

21   Capital Markets, the August '86 Trust and Aspecta Assurances

22   International.  Each of these respondents failed to include the

23   required blocking number with their proof of claim and thus

24   violated the bar date order.  The debtors ask that this Court

25   enforce the blocking number requirement uniformally and expunge

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 10 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 15

1    the noncompliant claims.

2         The blocking number requirement is critical and needs

3    to be enforced in order for debtors to effectively reconcile

4    the Lehman program securities claims.  The bar date order

5    established specific procedures for the filing of those claims

6    because of the unique characteristic of those securities.

7    Specifically, the program securities did not have an indenture

8    trustee that could file a global claim on behalf of the

9    individual holders of those securities.  So the individual

10   holders would have to file their own claims.

11        This presented serious issues as far as reconciliation

12   of the claims because the debtors would not be able to confirm

13   ownership or amount of a particular security.  A security could

14   have been traded every day for thirty days prior to the bar

15   date and each holder could have filed the claim risking

16   duplicative and/or excessive distributions.  The blocking

17   number requirement was specifically designed to address this

18   problem.  The blocking number, when issued, would confirm

19   ownership and amount of a security as of a certain date and,

20   once it was issued, trading for that particular security was

21   frozen through the securities program bar date.  The blocking

22   number requirement was two part.  A claimant had to actually

23   obtain the blocking number and then include it with their

24   timely filed proof of claim.  That again, the blocking number

25   plays a critical role for reconciliation of these claims and

08-13555-mg    Doc 15396-13    Filed 03/28/11    Entered 03/28/11 12:52:23    Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)    Pg 11 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 16

1    significantly reduces the burden on debtors of reconciling

2    these claims.

3            THE COURT:  Can I break in for a minute --

4            MS. ECKOLS:  Sure.

5            THE COURT:  -- and just ask a very basic question

6    about how one obtains blocking numbers.  Let's just say that

7    you're the August '86 Trust to pick one that happens to be up

8    today.  And you're trying to comply faithfully with the

9    requirements of the order establishing procedures for filing

10   proofs of claim.  And you know that there is a need to obtain a

11   blocking number.  Procedurally, how would you go about doing

12   that?

13           MS. ECKOLS:  Your Honor, the claimant would need to

14   reach out to the applicable clearing agency, Euroclear or

15   Clearstream, and they would issue the blocking number for the

16   claimant.

17           THE COURT:  And once that blocking number is issued,

18   that becomes, in effect, the tracking number for the claim?

19           MS. ECKOLS:  Yes, Your Honor.  That is correct.

20           THE COURT:  Okay.

21           MS. ECKOLS:  Allowing parties to circumvent the

22   blocking number requirement eviscerates the benefits that it

23   was intended to have and will make it incredibly difficult, if

24   not impossible, for the debtors to reconcile those claims.  And

25   there are a large number of Lehman program securities claims to

LEHMAN BROTHERS HOLDINGS INC.  et al.

Page 17

1   reconcile.  There are over approximately 31,000 Lehman program

2   securities claims which is almost half of the amount of claims

3   in total filed in these Chapter 11 cases.  Again, debtors

4   believe that the blocking requirement must be uniformally and

5   strictly enforced.

6        The blocking number requirement was expressly set

7   forth in the bar date order.  It specifically stated that

8   claimants had to obtain the blocking number and include it on

9   their proof of claim.  This requirement was also specifically

10  set forth in the securities program bar date notice and, in

11  fact, that bar date notice had a whole section that said

12  "special note regarding blocking numbers".  That was in bold.

13  And that was on the court-approved bar date notice.

14       The proof of claim form that this Court approved for

15  Lehman program securities claim also expressly said that the

16  claimant had to obtain had to obtain the blocking number and

17  had a space for them to put it on there.  The bar date notice

18  was widely disseminated.  It was given to the clearing agencies

19  and it was also published in twenty-six papers in eighteen

20  countries, ten languages plus seven local dialects.

21       Now the respondents do not dispute that they failed to

22  comply with one or both parts of the blocking number

23  requirement.  And the responses do not dispute that they

24  received notice of the blocking number requirement or that

25  notice was somehow deficient.  The responses do not dispute

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 13 of 37
LEHMAN BROTHERS HOLDINGS INC   et al.

Page 18

1    that the requirement to obtain the blocking number and put it

2    on the proof of claims was clear.  Instead, the responses

3    assert that they should be treated differently from other

4    Lehman program securities claimants that had to comply with the

5    bar date order's procedures.

6         Now I did want to alert Your Honor to the fact that

7    the August '86 Trust did file an affidavit on Monday afternoon

8    that did, for the first time, assert that they had no notice of

9    this requirement and that they didn't receive proper notice of

10   it.  So it appears as though the August '86 Trust in response

11   to debtors' reply has changed position a little bit.  Again,

12   debtors just wanted to notify the Court of this.  We believe it

13   is an impermissible surreply but we did want you to know that

14   August '86 Trust was raising this now kind of belatedly.

15        The reasons provided by each respondent are vague and

16   unsubstantiated.  They cite a mistake or inadvertence of some

17   sort.  But whatever the excuse, the respondents all seek to

18   justify their noncompliance with a no harm no foul argument

19   that doesn't withstand scrutiny.

20        Specifically, with respect to Aspecta.  Aspecta failed

21   to obtain a blocking number altogether but claims no harm no

22   foul because it says it held the securities "at all relevant

23   times".  There is no explanation of what "all relevant times"

24   actually means and no support other than two unsubstantiated

25   documents that purport to establish ownership of the securities

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 14 of 37

LEHMAN BROTHERS HOLDINGS INC., et al.

1    as of September 2010 which, obviously, is nearly a year after

2    the applicable bar date.  So even if Aspecta had produced

3    admissible evidence establishing ownership of the securities as

4    of September 2010, which it did not, this does not accomplish

5    the goals of the blocking number requirement or render the

6    blocking number unnecessary.  It does not confirm ownership

7    prior to bar date.  It does not prevent others from claiming

8    those same securities.  And so, the reconciliation issues that

9    the blocking number requirement specifically sought to avoid

10   are present here.  Because Aspecta utterly failed to comply

11   with the blocking number procedures, its claim should be

12   expunged.

13         The no harm no foul arguments asserted by RBC and the

14   August '86 Trust simply miss the point.  RBC and the August '86

15   Trust assert that the failure to include a blocking number with

16   their claim should be excused because they have the number and

17   simply didn't give it to the debtors.  However, the blocking

18   number requirement is two-fold.  The claimant had to obtain the

19   blocking number and actually put it on their timely filed proof

20   of claim.  Obtaining a blocking number but not providing it to

21   the debtors does not allow the debtors to effectively process

22   and reconcile these 31,000 program securities claims.

23         Moreover, the harm to the debtors in making exceptions

24   to the blocking number requirement, whether because the

25   claimant forgot to include it with their proof of claim or

08-13555-mg    Doc 15396-13    Filed 03/28/11    Entered 03/28/11 12:52:23    Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)    Pg 15 of 37
LEHMAN BROTHERS HOLDINGS INC  et al.

Page 20

1    simply did not obtain one, the harm is that it encourages other

2    claimants to come and seek similar exceptions.  The debtors

3    implemented the blocking number procedures because it knew that

4    the volume of the Lehman program securities claims was going to

5    be large and the reconciliation was going to be difficult.  The

6    blocking number was designed to avoid a parade of claimants

7    seeking to engage in contested hearings, possible lengthy

8    evidentiary hearings, regarding whether or not they are the

9    valid holder as a Lehman program securities claim.  In short,

10   the contested hearing that debtors are engaging in right now

11   with the possibility of hundreds more to follow if leniency is

12   granted demonstrates the harm to the debtors and is precisely

13   why the blocking number requirement should be strictly

14   enforced.

15           THE COURT:  Can I break in and ask you a question --

16           MS. ECKOLS:  Of course.

17           THE COURT:  -- about that?  My understanding of how

18   this works procedurally is that the blocking number is to be

19   included on the filed claim and it's used by those who are

20   processing claims for the debtor in determining how to allow

21   claims based upon Lehman program securities.  Assuming that a

22   claimant has obtained a blocking number and fails for whatever

23   reason to include that number on the documents that are being

24   processed but later cures that defect by providing what I'll

25   call an amended claim saying I'm sorry, I forgot, how is the

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 16 of 37

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 21

1    debtor prejudiced if at all?

2         MS. ECKOLS:  Your Honor, it's really the slippery

3    slope problem and the encouraging other parties who did not,

4    for whatever reason, comply with the blocking number

5    requirement to come in and seek exceptions.

6         THE COURT:  Yes.  But if the party who was seeking the

7    exception has a blocking number that doesn't create an

8    exception for a party that failed to obtain a blocking number,

9    does it?

10        MR. WAISMAN:  If I may, Your Honor.  And this is the

11   reason we -- Your Honor's very question is the reason that we

12   are here on this objection and discussing it with the Court.

13   The internal fear and concern is that if we are to say to those

14   folks that call and say I actually complied.  I called my

15   broker or Euroclear or Clearstream obtaining my blocking

16   number.  I just forgot to include it.  Here it is, no harm no

17   foul.  The concern is if we allow those in, we're then going to

18   have the next variation, of which we're hearing about already

19   which is, look, I didn't get the blocking number but I will

20   provide an affidavit and a witness in court saying I held it in

21   the years before the bar date, at the bar date, I still hold it

22   today.  So, in essence, you're blocking number requirement is

23   met, no harm no foul.  And we start to go down this slope where

24   the magnitude of the claims here, 30,000 -- approximately

25   30,000 people got notice, understood the notice complied.

08-13555-mg    Doc 15396-13    Filed 03/28/11    Entered 03/28/11 12:52:23    Exhibit M -
Transcript of  Oct. 27th 2010 Hearing (Excerpt)   Pg 17 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

1    There's obviously, as with the entirety of this bar date

2    process, a large number of claimants that didn't comply.  And

3    if we made exception now, we are concerned that we are just

4    allowing additional variations on the exception that are going

5    to bog us down in the claims reconciliation process at this

6    late date with a plan on file and bog down the process here in

7    court with a magnitude of claims that have not yet really been

8    seen in the Chapter 11 cases.  So that's -- those are the

9    reasons we are pressing the objections.

10            THE COURT:  Okay.

11            MS. ECKOLS:  Your Honor, just in conclusion, the

12   debtors believe that the blocking number requirement -- clear

13   notice was given.  These respondents didn't comply and

14   respectfully request that the Court overrule the responses and

15   grant the twenty-ninth omnibus objection as to the RBC, the

16   August '86 Trust and the Aspecta claims.

17            THE COURT:  Okay.  I see counsel in the room so I'll

18   hear what they have to say.  Mr. Friedman, you're number one.

19            MR. FRIEDMAN:  Thank you, Your Honor.  Jeff Friedman

20   of KattenMuchinRosenman for RBC Capital Markets, Your Honor.

21   According to what Ms. Eckols just said, the crux of the matter

22   this morning is whether the bar date should be strictly and

23   rigidly enforced based on a slippery slope argument that RBC is

24   allowed to amend its claim and add a blocking number that it

25   timely and properly obtained but merely failed to write down on

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 18 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 23

1    the proof of claim form, everyone will want to use that excuse.

2         I don't know what the magnitude of claims are that fit

3    into that category.  I do know that this omnibus objection

4    before the Court, the twenty-ninth omnibus objection, objected

5    to eleven claims apparently, a number of which didn't obtain

6    blocking numbers.

7         It seems to me, Your Honor, that the issue is not

8    simply the rigid enforcement of the Court's order.  Every Court

9    that enters a bar date order, Your Honor -- it's not only in

10   this case; it's in other cases -- other judges in this court,

11   bankruptcy judges generally expect their bar date orders will

12   be complied with.  And the penalty for doing so, particularly

13   if you're late, that your claim may be disallowed in its

14   entirety.  But it seems to me, Your Honor, that the issue

15   really is whether, in Lehman's case, decades of jurisprudence

16   regarding amendments to claims, informal proofs of claims, will

17   simply not apply in the Lehman case no matter how insignificant

18   the harm is to Lehman.  This is, in my view, the most

19   hypertechnical objection because Lehman has known since we were

20   put on notice that we had a blocking number, it was timely

21   obtained.  So that if they went to Euroclear and said, send us

22   a list of blocking numbers you have for the bonds, they'd know

23   that RBC obtained its blocking number for these bonds.  And I

24   don't know whether they've done that or not.  But it would be

25   surprising if there was not a double check against sort of

08-13555-mg    Doc 15396-13    Filed 03/28/11    Entered 03/28/11 12:52:23    Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 19 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 24

```
 1   Euroclear and Clearstream's master list of blocking numbers.  I

 2   don't know how they're doing this but it would be somewhat

 3   odd --

 4           THE COURT:  Well, let me just ask you something

 5   because I don't know how this procedure would ordinarily work.

 6   Are you saying that the blocking number requirement is

 7   effectively a redundancy because any complying creditor who has

 8   obtained a blocking number can have that number reproduced

 9   through the clearing systems by simply requesting a download?

10   Are you saying that as a matter of fact or is that just surmise

11   on your part?

12           MR. FRIEDMAN:  I'm not suggesting that we could have

13   done it.  I would be somewhat surprised if Lehman, given the

14   nature of what they're doing here, couldn't have done it.  I

15   mean, this whole blocking number system was set up for this

16   procedure.  Now maybe Euroclear has said to Lehman well, we're

17   not telling you who we assigned particular blocking numbers to

18   and what they're claim is.  But clearly, Euroclear's got our

19   blocking number assigned to RBC for at least 300,000 dollars

20   worth of bonds with this ISIN number.  The proof of claim that

21   RBC filed, and it's attached to our response, used the wrong

22   claim form.  I mean, we represent RBC generally in this case

23   and we filed and helped them file a number of properly

24   completed program securities.  RBC is a fairly far flung

25   organization.  For some reason that no one can really explain,
```

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 20 of 37

LEHMAN BROTHERS HOLDINGS INC., et al.

1    this claim came through their Minneapolis office, didn't go to

2    the attorneys in New York or Toronto for RBC and there was a

3    guy in RBC's office in Minneapolis that took his best shot.  He

4    had gotten information from the Bank of New York.  That

5    information had the blocking number on it.  It had the

6    Euroclear account number on it.  He wrote the Euroclear account

7    number on the proof of claim.  But because he was using the

8    regular Lehman proof of claim and not the program securities

9    claim, there was no blank that said insert your blocking number

10   here that would have tipped him off.  He just didn't know.

11            Now I'm not claiming that we didn't get notice.  We

12   actually got direct notice.  I'm not even saying this was a

13   publication notice issue.  This was a screw-up.  And the

14   question is, is this screw-up so bad that it's not subject to

15   being amended.  Because we do think in this case that the harm

16   to Lehman is negligible.  Again, I don't know how many claims

17   are going to fit in this.  But the slippery slope argument

18   probably isn't all that significant for people who actually

19   timely got blocking numbers and didn't include them.  I mean,

20   had we included the blocking number but transposed two digits

21   also fatal because it's not the blocking number; it's a

22   different number.  I mean, I don't know where you draw the

23   line, Your Honor.  But it just seems to me that whether you use

24   an informal proof of claim which is simply intended to put the

25   debtor on notice that a particular claimant seeks to hold the

08-13555-mg    Doc 15396-13    Filed 03/28/11    Entered 03/28/11 12:52:23    Exhibit M -
Transcript of  Oct. 27    2010 Hearing (Excerpt)   Pg 21 of 37
LEHMAN BROTHERS HOLDINGS INC    et al.

```
 1   debtor and the estate liable with respect to a particular

 2   obligation has been satisfied in spades here.

 3        On a scale of one to ten of the most aggressive

 4   amendments you might make, this is a 1.  This is such a minor

 5   change.  I mean, as the Seventh Circuit said in the Stoecker

 6   case, if I may briefly quote it, "If a documentation is

 7   missing, the creditor cannot rest on the proof of claim.  It

 8   does not follow, however, that he is forever barred from

 9   establishing the claim.  Nothing in the principles or

10   practicalities of bankruptcy or in the language of any rule or

11   statute justifies so disproportionate a sanction for a harmless

12   error.  A creditor should therefore be allowed to amend his

13   incomplete proof of claim to comply with the requirements of

14   3001 provided that other creditors are not harmed by the

15   belated completion of the filing."

16        In fact, Your Honor, with respect to the data required

17   by 3001, this claim meets that in its entirety.  It is only

18   this Court's additional requirement as requested by Lehman that

19   a blocking number be obtained and be put on the proof of claim

20   that's lacking here.  And it's only that second part because we

21   did timely obtain the blocking number.

22        So, Your Honor, we think that this satisfies the

23   claim.  We have filed an amended claim.  We think that that

24   claim satisfies it.  We don't think there's been real harm to

25   Lehman here because there's certainly been no distributions.
```

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 22 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 27

1   They're still in the reconciliation process.  They  have had

2   our blocking number since we filed our response a couple of

3   months ago.  And we just think that, on these facts, the Court

4   should allow the amended claim to stand.

5          THE COURT:  Okay.  Thank you.

6          MS. VICTOR:  Good morning, Your Honor.  Kim Victor

7   from Thaler & Gertler representing the creditor, the August '86

8   Trust.  I also concur with the arguments that were just made.

9   My client timely filed its proof of claim, signed, fully

10  completed it, put in a broker's number, the brokerage number,

11  the Barclay brokerage number rather than the blocking number.

12  It was clearly just a misunderstanding.  All the information

13  was filled out, twenty-four pages were connected to the proof

14  of claim that sufficiently the nature of the claim for the

15  debtor.  Once the debtor had advised that the blocking number

16  was not included in the proof of claim, the creditor provided

17  it debtors' counsel.  We have also amended the original timely

18  filed proof of claim which corrects any defects as to form to

19  the original timely filed claim.

20          The point is that there is absolutely no harm to the

21  debtor in this case.  The debtor had sufficient knowledge of

22  the claim.  They don't put anywhere in their papers that they

23  were unable to identify the nature of the claim, that they

24  weren't given notice, properly timely filed notice of the

25  claim.  In this case, it's the creditor who stands to

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M - Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 23 of 37

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 28

1   completely lose a valid claim of 450,000 dollars.  At this

2   time, Your Honor, we ask that the amendment that has been

3   attached to our responsive papers be included as a timely filed

4   proof of claim as amended.

5           THE COURT:  Just a question about the affidavit of

6   Joseph Kelly.  What am I supposed to do with that?  And how

7   does that affidavit which was filed on Monday impact the

8   argument you've just made?

9           MS. VICTOR:  It doesn't really, Your Honor.  It

10  doesn't really.  It's just proof that there is a blocking

11  number, that the blocking number was provided, that now the

12  debtor is able to track the claim and that any amendment to the

13  original claim is purely just to include that blocking number.

14  There will be no changes to the original claim.  So there is no

15  prejudice to the debtor in this case.  It was merely just a

16  misunderstanding as far as the number was concerned.

17          THE COURT:  Okay.

18          MS. HEER:  Good morning, Your Honor.  Patricia Heer

19  Piskorski of Duane Morris on behalf of Aspecta Assurance

20  International Luxembourg.  Your Honor, Aspecta has filed a

21  proof of claim timely and it provided sufficient documentation

22  to sufficiently identify the notes at issue in that proof of

23  claim.

24          THE COURT:  Can I stop you for a second now because if

25  I'm understanding the position of Aspecta which is a little bit

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 24 of 37
LEHMAN BROTHERS HOLDINGS INC    et al.

Page 29

 1   different from the position of RBC and the August '86 Trust.

 2   It's that even though you didn't obtain and disclose on your

 3   form a blocking number that that shouldn't matter because

 4   you've demonstrated that you always held the securities that

 5   are the subject to the proof of claim, is that right?

 6          MS. HEER:  Your Honor, we have attached documentation

 7   to the response to the objection seeking to disallow the claim

 8   which does give proof that at the time of the proof of claim

 9   those notes at issue in the proof of claim were held and owned

10   and have continued to be held by Aspecta.

11          THE COURT:  Yes.  But it's true that Aspecta did not

12   obtain a blocking number and didn't include a blocking number

13   on its proof of claim.

14          MS. HEER:  That's correct, Your Honor.  And it did

15   not.  And it does understand the requirements of the bar

16   date -- the program securities bar date order and the terms

17   thereof.  And the argument is set forth in the motion and there

18   is the documentation provided in there.  And we do thank you,

19   Your Honor, for considering it.

20          THE COURT:  Okay.  Is there any response from the

21   debtor?

22          MS. ECKOLS:  Just a few points that we wanted to

23   respond to, Your Honor.  First, with respect to the no

24   prejudice to the debtor, this is not a matter of ten or twenty

25   or thirty claims that did not comply with the blocking number

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 25 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

```
 1    requirement.  Debtors are still trying to get a handle on the

 2    number of claims but right now believe it is definitely north

 3    of 500.  So that is a significant number; it's not just one or

 4    two.  And that is going to increase the burden significantly on

 5    debtors especially if all the claimants decide to come to court

 6    and seek to prove ownership of the securities at issue in some

 7    other manner.

 8             With respect to August '86 request that the Court

 9    allow them to amend their claims, that issue -- the issue today

10    is simply whether omnibus objection number 29 should be

11    granted.  No motions have been filed to date to allow

12    amendments to these claims and we do not believe such relief

13    should be considered today.

14             With respect to Aspecta -- Aspecta's argument that

15    they've established that they've had ownership of the security,

16    I guess, from the inception of this Chapter 11 case through the

17    bar date, that is simply incorrect.  The attachments to their

18    response are simply two pages of documents that appear to have

19    been created by the Bank of Luxembourg.  And, at most, what

20    they show is that as of September 2010, which is after the

21    twenty-ninth omnibus objection was filed, that as of that late

22    date, they appeared to own the securities.  Therefore, it does

23    not satisfy the goals of the blocking number requirement.  And

24    thus, Your Honor, we ask that omnibus objection 29 as to those

25    three claimants be granted.
```

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 26 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

1          THE COURT:  One more question about the impact of the

2    blocking number.  If a blocking number has been obtained and a

3    proof of claim has been filed in reference to a security

4    identified by such blocking number, is it permissible for the

5    claim to be traded or is it, in fact, blocked until such time

6    as a distribution is available from this estate?

7          MS. ECKOLS:  Your Honor, I am actually going to allow

8    Mr. Waisman to answer that question.

9          MR. WAISMAN:  Your Honor may recall that subsequent to

10   the bar date, there were supplemental procedures that were --

11         THE COURT:  I recall.

12         MR. WAISMAN:  And part of those procedures were to

13   permit the claims to freely trade.

14         THE COURT:  Yes.  I recall.  So here's where I become

15   perplexed.  Is the blocking number which is obtained as a

16   condition to submitting a proof of claim based on Lehman

17   program securities purely designed to facilitate tracking and

18   claim management or is it also designed to limit trading at

19   least up to the point that the proof of claim is filed?  Or

20   does it have no impact on trading?

21         MR. WAISMAN:  It absolutely had impact on trading.

22   Once somebody obtained a blocking number -- it could have been

23   a day before the program securities bar date or a month prior.

24   The moment they obtained that blocking number, that security

25   could not trade.  It was locked.  And it was not until a date

08-13555-mg    Doc 15396-13    Filed 03/28/11    Entered 03/28/11 12:52:23    Exhibit M -
Transcript of  Oct. 27 ' 2010 Hearing (Excerpt)  Pg 27 of 37.
LEHMAN BROTHERS HOLDINGS INC. et al.

```
 1    well past the Lehman program securities bar date that the

 2    number became unblocked and was freely tradable.  And the

 3    issues become even more complex because the bar date wasn't

 4    purely to track the individual security but it was also to

 5    reconcile duplications with the larger issuances that were held

 6    by the banks.  And we have obviously inferences where the bank

 7    holding the note filed a proof of claim with the blocking

 8    number and then the individual holders who called their brokers

 9    who called Euroclear and Clearstream also obtained blocking

10    numbers.  You have this multiple layer.

11              THE COURT:  I'm reminded by your comment that when

12    there was a request jointly made by the debtors and certain

13    creditor constituencies for a modification of the restrictions

14    building to the bar date order to permit trading of Lehman

15    program securities, even though there were no objections lodged

16    to that request, that's my recollection that I did not

17    immediately approve that motion but carried it to another

18    omnibus hearing date out of expressed concern that there might

19    be an impact upon the integrity of the bar date order itself.

20    And I was  ultimately satisfied that there would be no impact

21    upon the bar date.  And now I find myself at a claims hearing

22    where the integrity of the proof of claim process is at issue

23    as it relates to the blocking number component of the proof of

24    claim.  And what I'm still puzzling over, and I think I'd like

25    just a little bit more explanation from debtors' counsel on
```

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 28 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 33

```
1    this, is the actual practical use of the blocking number in

2    tracking claims, reconciling claims and allowing claims

3    particularly in the environment in which these Lehman program

4    securities are now being freely traded.

5            MR. WAISMAN:  Your Honor, may I have a brief moment?

6            THE COURT:  Sure.

7        (Pause)

8            MR. WAISMAN:  Your Honor, Shai Waisman.  Your Honor

9    recalls correctly that the debtors came back with a group of

10   interested creditors previously known as the Coalition of the

11   Willing to seek an addendum to the Lehman program securities

12   procedures.  Those procedures -- we -- the debtors and, I

13   believe, the committee always thought were part and parcel of

14   the original program securities notice but they were -- there

15   was enough concern that people wanted a supplemental order.

16   Your Honor expressed concern that perhaps the debtors were

17   succumbing to the hew and cry of the street in doing something

18   that would undermine the integrity of the procedures and

19   adjourn the matter.  And we came back with an affidavit of a

20   businessperson setting forth that the purpose of the program

21   securities was to provide the debtors comfort that the party

22   filing the proof of claim had actual ownership of the security

23   at the time the claim was filed and at the time the bar date

24   came.  It was required to illustrate the integrity of the claim

25   that the party held the claim that it wasn't traded every
```

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 29 of 37
LEHMAN BROTHERS HOLDINGS INC   et al.

Page 34

 1    single day up until the bar date and multiple claims being

 2    filed.  And given that we were past the program securities bar

 3    date and therefore anybody that filed a proof of claim with the

 4    blocking number, we knew owned the security on that day and

 5    that's the only day that matters for the purpose of

 6    establishing the claims.  Thereafter, there was no reason to

 7    require them to continue to hold the claim.  No benefit to us.

 8    There should be a free market as the bankruptcy rules suggest

 9    there should be in the trading of claims.  And the order was

10    meant to facilitate the fact that we were so far removed from

11    the bar date there was going to be no benefit to us from

12    restricting trading any further.  Parties could continue to

13    trade because what we needed we had at that point.  We had

14    proof that a party that filed the claim owned the security on

15    the day in question.

16         We do not use blocking numbers now to track claims at

17    all.  When we go through the 66,000 claims that sit in a pile,

18    we get to a Lehman program securities claim, we verify that

19    there's a blocking number.  We do check it against our master

20    list to make sure that it's a real blocking number.  And that

21    proves to us that the party that filed the claim owned the

22    security and therefore is the rightful claimant.  The next

23    step, of course, is to make sure whether somebody else filed a

24    proof of claim on behalf of that issuance.

25         THE COURT:  I hear you although I must say that this

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 30 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 35

 1    adds strength to the argument made by Mr. Friedman that on a

 2    scale of one to ten, this is a one.  This isn't a ten in terms

 3    of technical noncompliance because the blocking number is, in

 4    effect, an extra protection designed to make sure that the

 5    party who filed the claim with respect to these freely tradable

 6    instruments in fact was the owner of the claim at a particular

 7    point in time that is relevant for bankruptcy purposes but for

 8    no other purpose because the instruments may have traded

 9    multiple times already, in some instances, and may continue to

10    trade in the future.

11           Now I have no problem with the free trading of

12    securities.  The only problem I'm having right now is whether

13    the significance of the failure to include a blocking number on

14    a proof of claim is so material a failure to comply with the

15    expressed requirements of the proof of claim bar date

16    procedures as to warrant claim disallowance when a party

17    objects.  And I'm having some trouble with this right now,

18    particularly, I must tell you in the case -- it kind of goes up

19    in significance, A, B and C.  RBC has the strongest position;

20    August '86 Trust has the next strongest position; and Aspecta

21    Assurance has the weakest position, as I see it.  But I think

22    Aspecta is simply making an argument well, we didn't do it but

23    we own the security.  Here.  See this attachment to our

24    response.  They clearly didn't comply with the no blocking

25    number problem.  But they, in effect, make an argument for the

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 31 of 37

LEHMAN BROTHERS HOLDINGS INC.   et al.

1   great unwashed that didn't comply at all.  That's your

2   floodgates problem, the problem that parties who never obtained

3   a blocking number will come forward and say we have the ability

4   through extrinsic evidence to demonstrate that we, in fact, own

5   the security at the time that we filed the proof of claim.  I

6   have a problem with that.

7        But as to anybody else who actually had a blocking

8   number and somehow messed up, I'm having a hard time seeing why

9   this is such a problem for the debtor.  And I need to

10  understand a little bit more about why procedurally this

11  creates such a potential hornet's nest of claim administration

12  difficulty down the road.

13       MR. WAISMAN:  Your Honor, I'd say a couple things.

14  First of all, there is nothing Your Honor has just said that we

15  disagree with.  We have spent a lot of time struggling with

16  these very issues.  The obvious statement that the bar date in

17  this case was so unique that it does not fit squarely within

18  the precedent, and I understand Mr. Friedman citing to the

19  legend of case law on amendments, but this case just doesn't

20  fit squarely within those parameters and it is difficult to

21  reconcile.

22       The program securities requirement was very explicit

23  and specific and absolutely necessary.  Without it, this case

24  would be a quagmire and we would have no ability to reconcile

25  over 30,000 claims.

08-13555-mg    Doc 15396-13    Filed 03/28/11    Entered 03/28/11 12:52:23    Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 32 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

 1          In many ways the program's security's blocking number

 2     is itself the claim.  Without it, you're submitting a statement

 3     that at some point you own something.  But if you don't submit

 4     the program security's number it doesn't -- it doesn't comply

 5     for the purposes of a bar date in this case.  We have, in other

 6     circumstances, been to Your Honor with claims issues, claims

 7     objections and have agreed with Your Honor that we need to

 8     strictly enforce the very specific and very unique requirements

 9     of this bar date order because it is such a slippery slope.

10     And the fear here is that we know of here eleven, we already

11     know of 500 more, it's a reconciliation.  We haven't been

12     through the lion's share of our claims.  The number is

13     certainly to grow of claimants who got the blocking number but

14     simply didn't include, forgot for whatever reason.  And as I

15     said before, we are here because that's a slippery slope to --

16     well, they forgot -- I forgot to get it but I can prove to you

17     that I had it, and then we're going to be inundated with

18     thousands upon thousands of claimants coming to this court to

19     prove that they held the security and that they can meet the

20     purpose of the program securities blocking number requirement

21     by extrinsic evidence, even though they didn't supply the

22     number.

23          And when you try to differentiate those two, you come

24     back to there was a requirement, it was to be strictly enforced

25     and people didn't comply.  And as Ms. Eckols said, a number of

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 33 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

1   times, there were two requirements; to get the number and to

2   include it.  If we start to excuse one people are certainly

3   going to argue you have to excuse the other, and we have a hard

4   time differentiating between those two.

5         THE COURT:  I'm not sure I have such a hard time

6   differentiating between those two.

7         MR. WAISMAN:  Well, you wear the black robe.

8         THE COURT:  That's true.  But obviously claimants that

9   do everything perfectly are to be applauded for navigating what

10  is a fairly complex claims process in this case.  This is not,

11  by any means, standard issue.  But as I understand the purpose

12  to be served by the obtaining and inclusion of a blocking

13  number, it is to establish, in a user-friendly way from the

14  perspective of the debtors, that a particular claimant within

15  the pool of holders of Lehman program securities, in fact was a

16  holder on the relevant date, correct?

17        MR. WAISMAN:  That's correct.

18        THE COURT:  I think that in the case of RBC capital

19  that there really has been the kind of compliance that fits

20  within the applicable case law that I cited in my omnibus late

21  filed claims decision, in which good faith attempts to comply

22  coupled with confusion can lead to an excuse.  And here there

23  was good faith compliance in the sense of obtaining a blocking

24  number and somebody in Minneapolis goofed, they win.  Now, they

25  win on particularized facts and I don't think that opens a

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 34 of 37.
LEHMAN BROTHERS HOLDINGS INC   et al.

1    door.

2         My next question to myself is well does August '86

3    Trust win?  And maybe I need to think some more about that

4    after taking a look at the affidavit of Joseph Kelly, which

5    obviously Mr. Kelly, who's a solicitor, thought worthy of my

6    attention.  I haven't paid enough attention to it yet and I

7    want to think about it some more.

8         But let's just say, for the sake of discussion, that

9    August '86 Trust wins too, what's the principle that has just

10   been established?  It seems to me that the principle is that

11   anybody who has gone to the trouble of getting a blocking

12   number but who has failed, through negligence or administrative

13   error, to include the blocking number but who later provides

14   that blocking number is, in effect, curing the defect in a

15   manner that doesn't take away from the integrity of the bar

16   date order.  Nor does it in a material way because I don't

17   imagine there's going to be a huge class, but I could be wrong,

18   of parties who actually obtain the blocking number and then

19   negligently failed to include it.

20        It seems to me that the debtor is still in a position

21   to use the blocking number because the blocking number has been

22   provided and the integrity of the proof of claim, as it relates

23   to Lehman program securities is preserved.

24        The Aspecta case is different.  That's the we didn't

25   do it at all problem but we have other means of establishing,

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 35 of 37
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 40

```
 1    in a way that we think should be credible, that we held Lehman

 2    program securities at the time that a proof of claim was filed

 3    and completely ignored the requirement of including a blocking

 4    number.  They lose.

 5            And I believe that you can draw a line here that says

 6    if you have a blocking number you have done everything that you

 7    can reasonably do to meet the spirit of the bar date notice as

 8    it relates to Lehman program securities, assuming that you

 9    have, for good cause, failed to include.  That you have reason

10    to establish that there was legitimate confusion or a

11    legitimate failure to comply, not just I willfully held it back

12    because I thought it was a stupid requirement, that's not going

13    to work.  But if there was what amounts to good faith efforts

14    to comply with that requirement and you then later provide the

15    number, it seems to me that the blocking number component of

16    this requirement is satisfied.

17            MR. WAISMAN:  Your Honor, if I may interject for one

18    moment.  As Your Honor is describing this narrow exception, it

19    might be helpful if it relates to entities that timely filed

20    proofs of claim, have obtained a blocking number but for good

21    cause failed to include and later provide it.

22            THE COURT:  That's exactly what I'm saying.  That

23    can't be a very big class of claimants and if it turns out to

24    be, well, so be it.

25            That's my best effort at walking a tightrope created
```

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27   2010 Hearing (Excerpt)   Pg 36 of 37
LEHMAN BROTHERS HOLDINGS INC.  et al.

Page 41

1    by these requested exceptions to the blocking number

2    requirement of the bar date notice.  I'm not making a ruling

3    yet with respect to the August '86 Trust because I want to take

4    some time to look at the affidavit of Joseph Kelly.  But if the

5    August '86 Trust fits within the exception, I've just

6    articulated, then they'll prevail.  I'm sorry Aspecta loses.

7    They just didn't get a blocking number and they're out of

8    court.

9            MR. WAISMAN:  Thank you, Your Honor.  That guidance is

10   very, very helpful as we try to navigate these waters and turn

11   to Your Honor for guidance on the narrow calls.

12           THE COURT:  Okay.

13           MR. WAISMAN:  Greatly appreciated.

14           MS. ECKOLS:  Thank you, Your Honor.

15           MR. FRIEDMAN:  Your Honor, I just want to figure out

16   the best mechanics to get an order reflecting your decision

17   with respect to RBC.

18           MR. WAISMAN:  I think what we would do is remove it

19   from the proposed -- remove your claim from the proposed order

20   that we hand up today and there's no objection pending to your

21   claim.

22           MR. FRIEDMAN:  Okay.  We do have an amended claim; we

23   can deal with that by stipulation.

24           MR. WAISMAN:  Why don't we speak and take care of it?

25           MR. FRIEDMAN:  Thank you very much, Your Honor.

08-13555-mg   Doc 15396-13   Filed 03/28/11   Entered 03/28/11 12:52:23   Exhibit M -
Transcript of  Oct. 27    2010 Hearing (Excerpt)   Pg 37 of 37

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 42

 1            THE COURT:  Okay.

 2            MR. WAISMAN:  I'm sorry, Your Honor, just one moment.

 3    Thank you.

 4            THE COURT:  You can feel free to confer.

 5         (Pause)

 6            MS. ECKOLS:  Your Honor, taking up agenda item number

 7    12, which is debtor's thirty-ninth omnibus objection to claims,

 8    this is seeking to disallow and expunge claims that are

 9    duplicative, either exactly or in substance of another claim

10    filed for the same party.

11            There is only one formal response.  It was filed on

12    behalf of eight claimants.  Hesitate to call it an objection

13    because it states that if our omnibus objection is only seeking

14    to disallow duplicative claims, then it has no objection to us

15    doing so and the debtors are only seeking to disallow and

16    expunge claims that are duplicative by this omni.

17            THE COURT:  Everybody in that category appears to be a

18    citizen and resident of Greece.

19            MS. ECKOLS:  That is correct.

20            THE COURT:  And I read that objection or response or

21    reservation of rights, however we're going to characterize it

22    and it wasn't entirely clear to me whether or not in fact they

23    will have surviving claims.

24            If the answer is that they will have surviving claims,

25    then I have no hesitation in granting the thirty-ninth omnibus