WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Shai Y. Waisman

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
**In re**                                            :        **Chapter 11 Case No.**
                                                     :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*   :        **08-13555 (JMP)**
                                                     :
                        **Debtors.**                 :        **(Jointly Administered)**
-------------------------------------------------------------------x

**OMNIBUS REPLY TO RESPONSES TO DEBTORS'**
**SEVENTY-THIRD OMNIBUS OBJECTION TO CLAIMS**
**(TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), respectfully represent:

**Preliminary Statement**

1.       The commencement of the Debtors' chapter 11 cases has impacted parties in interest around the globe, including the Debtors' prepetition counterparties, customers, and investors. Prepetition employees of the Debtors and their affiliates have, most certainly, also been affected. The Debtors attempted to minimize the impact on employees by, among other things, preserving more than 10,000 jobs through various asset sales and by transferring funds to establish a health care trust to backstop certain medical benefits. Unfortunately, as a result of the

dramatic collapse of the Lehman empire, employees, like investors, could not be made whole for all of their damages and the nature of some of their compensation – in the form of restricted stock units or contingent stock awards – requires that their recovery be subordinated to other claims against the Debtors.  The law permits no other outcome.

## Background

2.      On December 7, 2010, the Debtors filed their seventy-third omnibus objection to claims (the "Objection") seeking to reclassify as equity interests 483 proofs of claim (collectively, the "Compensation Claims") filed by current and/or former employees of the Debtors and/or their affiliates on the basis of either restricted stock units or contingent stock awards (together the "Equity Awards") issued to them between 2003 and 2008.  By orders, dated January 20 and March 3, 2011, the Court granted the relief requested in the Objection with respect to 460 of the Compensation Claims, which had, in aggregate, claimed more than $350 million.

3.      This reply addresses the responses (the "Responses") to the Objection interposed by the holders (the "Respondents") of the 23 remaining Compensation Claims (the "Outstanding Claims").[1]  As set forth below, the Responses contain no fact or law sufficient to compel this Court to overrule the Objection.  Accordingly, the Objection should be granted and the Outstanding Claims reclassified as equity interests.

## Respondents Have the Burden of Proof with Respect to the Outstanding Claims

4.      A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential

---

[1] The Responses were filed on the Court's docket as Docket Entries 13810, 13861, 13864, 13865, 13878, 13879, 13880, 13897, 14041, 14058, 14067, 14114, 14116, 14127, 14533, 14535, 14538, 14541, 14542, 14543, 14544, 14630, 14952.

allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("The burden … shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case … which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'") (citation omitted); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007) ("If the objecting party rebuts the claimant's *prima facie* case, 'it is for the claimant to prove his claim, not for the objector to disprove it.'") (citation omitted); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000) ("Once an objectant offers sufficient evidence to overcome the prima facie validity of the claim, the claimant is required to meet the usual burden of proof to establish the validity of the claim.").

5.      The Debtors have met their burden of persuasion to overcome the *prima facie* validity of the Outstanding Claims.  *See*, *e.g.*, *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).  As set forth in more detail in the Objection:  (i) the Equity Awards fall within the definition of "equity securities" under the Bankruptcy Code (*see* Objection ¶¶ 12-14); (ii) contractual provisions enforceable pursuant to section 510(a) of the Bankruptcy Code subordinate certain Outstanding Claims to the same priority as common equity of LBHI (*see id.* ¶¶ 15-17); and (iii) section 510(b) of the Bankruptcy Code mandates that the Outstanding Claims have the same priority as common equity of LBHI (*see id.* ¶¶ 18-20.).  As a result, the Outstanding Claims are no longer deemed allowed.

6.      As a result of the Objection, the burden has shifted to the Respondents to prove by a preponderance of the evidence that under applicable law the Outstanding Claims should be allowed.  *See Oneida*, 400 B.R. at 389 ("When the burden is shifted back to the

claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed.") (citing *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20 (2000) and *In re Holm*, 931 F.2d at 623; *Rockefeller Ctr.*, 272 B.R. at 539).  Although courts should "'read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2nd Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2nd Cir. 1994)), *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2nd Cir. 1983).

### Respondents Failed to Meet Their Burden with Respect to the Outstanding Claims

7.  None of the Responses contains facts or law sufficient to prove by a preponderance of the evidence that the Outstanding Claims, which exceed $14.395 million in the aggregate, should be allowed.  In sum, the Responses assert:

a. Equity Awards were compensation for services provided to the Debtors in good faith;

b. Equity Awards do not constitute equity interests;

c. the Outstanding Claims do not arise from the purchase or sale of securities;

d. Respondents could not opt to receive compensation in cash in lieu of Equity Awards;

e. Respondents were encouraged by the Debtors' management to retain, rather than sell, their vested Equity Awards;

f. the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents;

g. the Outstanding Claims are not for equity because Respondents' Equity Interests had not vested;

h. a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan;

i. Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards;

4

j.  amounts deducted from Respondent's payroll and not used to purchase Equity Awards are held in escrow for Respondent;

k.  Respondents' wages had not yet been used to purchase the Equity Awards prior to LBHI's chapter 11 case; and

l.  the Debtors have not yet objected to other proofs of claim that were filed based on Equity Awards.

The chart attached as Exhibit A hereto identifies which Respondents made the above arguments.

8.  As set forth in the Objection, section 510(b) is to be applied broadly. *See In re Enron Corp.*, 341 B.R. 141, 162-63 (Bankr. S.D.N.Y. 2006). This Court's decision in *Enron* is particularly instructive, as the Court rejected many of the arguments raised in the Responses.

9.  In *Enron*, *pro se* employees filed claims asserting a right to payment for damages in connection with unexercised stock options they had received during the course of their employment. Upon the debtor's objection to the claims, the Court held that it was clear that a stock option was a "security" as that term was defined in section 510(b) of the Bankruptcy Code. *Enron*, 341 B.R. at 150. The Court further found that, "[w]hile it is true that the Claimants did not purchase the stock options on the open market, they nonetheless exchanged value for the options: here, their labor. Such exchange falls under a broad reading of the term 'purchase.'" *Id.* at 151 (citing *Frankum v. Int'l Wireless Communications Holdings, Inc.* (*In re Int'l Wireless Communications Holdings, Inc.*), 279 B.R. 463 (D.Del. 2002) ("That Appellants received the Debtors' stock as part of a compensation package does not preclude the transfer from being characterized as a purchase/sale of the Debtors' stock.")). This was true even where the employees "never elected to receive stock options, but rather were required to take a minimum percentage of their annual bonus in stock option form." *Id.* The employees argued

that they did not "purchase" the stock options, because there was no voluntary exchange of goods, services or currency. But the Court reasoned and found that,

> [w]hile this argument might appear at first blush intuitively reasonable, the distinction is flawed. Although implicit, there is nonetheless a bargain and exchange of value. Here, the exchange is made not at the time of payment but prior to employment. If these Claimants were required to receive a portion of their compensation as options, that was a condition of employment the Claimants willingly accepted in return for their labor. These Claimants, thus, "purchased" the stock options with their labor.

*Id.* Like it did in *Enron*, the Court should find that the Equity Awards in this case are equity interests and the Outstanding Claims arise from the purchase and sale of securities. As the Court found in *Enron*, neither the fact that Equity Awards were a form of compensation for services performed, nor the fact that Respondents could not opt to receive compensation in cash in lieu of Equity Awards converts the Outstanding Claims into claims for debt.

10. Like the Respondents, the employees in *Enron* also asserted that the debtor had misrepresented its financial condition and fraudulently induced the employees to accept or retain the options and breached contracts for compensation. The employees in *Enron* argued that their claims arose from the debtor's misconduct rather than the purchase or sale of securities. The Court there concluded, however, that "claims alleging the fraudulently induced election of stock options as part of a compensation package are claims 'arising from' the purchase of a security and should thus be subordinated pursuant to section 510(b)." *Id.* Any portion of an Outstanding Claim alleging a Respondent was induced to accept or retain its Equity Awards should similarly be subordinated pursuant to section 510(b) of the Bankruptcy Code.

11. The Court in *Enron* also rejected the argument raised by Respondents that their claims are not for equity because stock was not actually delivered. The Court clearly found that "physical possession of the security is not required for a claim based upon that security to be

subordinated." *Id.* at 163 (citing *American Broad. Sys. v. Nugent (In re Betacom of Phoenix, Inc.)*, 240 F.3d 823 at 829-30 (9th Cir. 2001) (finding that "[n]othing in § 510(b)'s text requires a subordinated claimant to be a shareholder.")). For the same reasons, the Court should reject similar arguments now. Any argument that a Respondent's Equity Awards had not vested only further support an objection to the respective Outstanding Claims. If a Respondent was not entitled to the Equity Awards pursuant to the terms of the relevant agreements, the Respondent should not be entitled to a claim on account of such Equity Awards.

12. The remaining arguments raised by the Respondents are irrelevant to the current analysis and therefore insufficient to prove by a preponderance of the evidence that the Outstanding Claims should be allowed. Whether or not a "Bankruptcy Distribution Event" occurred is irrelevant because the provisions of the relevant Equity Award agreements that the Debtors rely upon to subordinate the Outstanding Claims pursuant to section 510(a) of the Bankruptcy Code do not depend upon the occurrence of a Bankruptcy Distribution Event. Likewise, Respondents' mistaken belief that they would receive cash because they received statements that attributed a value to their Equity Awards is not a basis to overrule the Objection to the Outstanding Claims. Respondents' unsupported assertions that amounts were deducted from their payroll or escrowed for their benefit are not supported by any evidence and are merely asserted in unsworn statements in certain of the Responses. Upon information and belief, no amounts were deducted from employees' paychecks and no amounts were held in escrow for Respondents.

13. Finally, the fact that the Debtors have not yet objected to other proofs of claim that were allegedly filed based on Equity Awards is no basis to deny the current Objection

with respect to the Outstanding Claims.  The Debtors intend to review, analyze and object, as appropriate, each of the more than 67,000 proofs of claim filed in these chapter 11 cases.

## **Conclusion**

14.     The Outstanding Claims should be reclassified as equity because (i) the Equity Awards fall within the Bankruptcy Code definition of "equity securities," (ii) the subordination provisions of the agreements governing the Equity Awards are enforceable pursuant to Bankruptcy Code section 510(a), and (iii) Bankruptcy Code section 510(b) mandates that the Outstanding Claims have the same priority as common equity of LBHI.   Nothing in the law or the Responses permits an alternative result.


Dated: March 25, 2011
        New York, New York


                                        /s/ Shai Y. Waisman
                                        Shai Y. Waisman

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

# EXHIBIT A

| Respondent | Outstanding Claim | Objection |
|---|---|---|
| Andrew Allard | 11044 | ▪ Equity Awards were compensation<br>▪ Respondent could not opt to receive compensation in cash in lieu of Equity Awards |
| Ian Anderson | 12809 | ▪ Equity Awards were compensation<br>▪ a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents |
| Edmund Craston | 17879 | ▪ Equity Awards were compensation<br>▪ the Debtors have not yet objected to other proofs of claim that were filed based on Equity Awards |
| Charles Diccianni | 12314 | ▪ Equity Awards were compensation<br>▪ Respondents could not opt to receive compensation in cash in lieu of Equity Awards |
| Kathleen C. Duffy | 21911 | ▪ Equity Awards were compensation<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents;<br>▪ the Outstanding Claims are not for equity because Respondents' Equity Interests had not vested |
| Robert C. Dyer | 28012 | ▪ Respondents' wages had not yet been used to purchase the Equity Awards prior to LBHI's chapter 11 case |
| Sheryl Goldman | 10029 | ▪ Respondents could not opt to receive compensation in cash in lieu of Equity Awards |
| Michael Gran | 23900 | ▪ Equity Awards were compensation<br>▪ a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards |
| Andrea T. Jao | 5340 | ▪ Equity Awards were compensation (citing *Guiry v. Goldman, Sachs & Co.*, 2006 N.Y. App. Div. Lexis 6630 (1st Dept. May 18, 2006) (unvested, contingent rights to restricted stock and options to purchase stock are "incentive compensation"))<br>▪ the Outstanding Claims are not for equity because Respondents' Equity Interests had not vested |
| Craig Kellard | 12821 | ▪ Equity Awards were compensation<br>▪ a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents |
| Judith Ann Kenney | 13929 | ▪ Respondents provided services to the Debtors in good faith |
| Mary E. Langevin | 24675 | ▪ Equity Awards do not constitute equity interests<br>▪ the Outstanding Claims are not for equity because Respondents' Equity Interests had not vested<br>▪ Cites Bebchuk and Fried, *Paying for Long-Term Performance*, 158 U. Pa. L. Rev. 1915, 1923 (2010). |

| Respondent | Outstanding Claim | Objection |
|---|---|---|
| Samantha Malthouse | 9428 | ▪ a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents |
| Barbara Muinos | 11043 | ▪ Equity Awards were compensation<br>▪ Respondents could not opt to receive compensation in cash in lieu of Equity Awards |
| Gavin Netzel | 12806 | ▪ a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents |
| Richard Noble | 14197 | ▪ Equity Awards do not constitute equity interests<br>▪ the Outstanding Claims do not arise from the purchase or sale of securities |
| Andrea Penton | 12044 | ▪ a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents |
| Paul Nigel Shotton | 21362 | ▪ Respondents provided services to the Debtors in good faith |
| Gregg Somma | 24373 | ▪ Equity Awards do not constitute equity interests<br>▪ the Outstanding Claims are not for equity because Respondents' Equity Interests had not vested<br>▪ Cites Bebchuk and Fried, *Paying for Long-Term Performance*, 158 U. Pa. L. Rev. 1915, 1923 (2010). |
| Christopher A. Statham | 15690 | ▪ amounts deducted from Respondent's payroll and not used to purchase Equity Awards are held in escrow for Respondent |
| Andrea Sullivan | 13087 | ▪ Equity Awards were compensation<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents<br>▪ Respondent could not opt to receive compensation in cash in lieu of Equity Awards |
| Ian Toal | 12811 | ▪ a "Bankruptcy Distribution Event," as defined in the relevant agreements, was not triggered because LBHI has not proposed a chapter 11 plan<br>▪ Respondents thought they would receive cash because they received statements that attributed a value to their Equity Awards<br>▪ the Outstanding Claims are not for equity because stock was not actually delivered to the Respondents |
| Colin S. A. Welch | 13290 | ▪ Equity Awards were compensation |