Hearing Date and Time:  March 31, 2011 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                            :
**In re**                                   :   **Chapter 11 Case No.**
                                            :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, :   **08-13555 (JMP)**
                                            :
          **Debtors.**                      :   **(Jointly Administered)**
                                            :
---------------------------------------------------------------x

**NOTICE OF (I) REVISED INTERCOMPANY SERVICES AGREEMENT
AND (II) REVISED PROPOSED ORDER APPROVING MOTION OF
BNC MORTGAGE LLC SEEKING AUTHORIZATION TO (A) ENTER INTO
INTERCOMPANY SERVICES AGREEMENT WITH AURORA BANK FSB, AND
(B) REIMBURSE AURORA BANK FSB FOR CERTAIN ADMINISTRATIVE EXPENSES**

          PLEASE TAKE NOTICE that on March 2, 2011, BNC Mortgage LLC
filed a motion pursuant to sections 105(a), 363 and 503 of title 11 of the United States
Code and rule 6004 of the Federal Rules of Bankruptcy Procedure for authorization to (i)
enter into an intercompany services agreement (the "ISA") with Aurora Bank FSB
("Aurora," and together with BNC, the "Parties"), and (ii) reimburse Aurora for certain
administrative expenses (the "Motion") [Docket No. 14764].

          PLEASE TAKE FURTHER NOTICE that, subsequent to the filing of the
Motion, the Parties have agreed upon certain revisions to the ISA.  A blackline of the ISA
showing such revisions is attached hereto as Exhibit A and a clean copy of the execution
version of the ISA is attached hereto as Exhibit B.

          PLEASE TAKE FURTHER NOTICE that, in response to a request from a
representative of the United States Trustee for District 2, BNC made a minor revision to
the proposed order that was submitted with the Motion.  A blackline of the proposed
order is attached hereto as Exhibit C and a clean copy of the revised proposed order is
attached hereto as Exhibit D.

PLEASE TAKE FURTHER NOTICE that a hearing with respect to the Motion will be held on March 31, 2011 at 10:00 a.m.

Dated:  March 30, 2011
            New York, New York

/s/ Jacqueline Marcus                    
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**<u>Exhibit A</u>**
**(Blackline of the ISA)**

*EXECUTION VERSION*

INTERCOMPANY SERVICES AGREEMENT

between

AURORA BANK FSB

and

BNC MORTGAGE LLC

Dated as of March [], 30, 2011

INTERCOMPANY SERVICES AGREEMENT

AGREEMENT (this "Agreement") dated as of March ~~[],~~30, 2011 by and between Aurora Bank FSB, a federal savings bank, and BNC Mortgage LLC, a Delaware limited liability company ("BNC").

WHEREAS, on January 9, 2009, BNC filed a voluntary petition for relief (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, BNC currently has no employees;

WHEREAS, BNC desires to obtain certain general back office and administrative support services, and other support services, in each case from or through Aurora, and Aurora desires to provide such services, either directly or through one or more of its subsidiaries;

WHEREAS, Aurora owes BNC a payable amounting to approximately $~~17,18432~~17,184,322 in the aggregate as of January 9, ~~2009~~2009, as adjusted or reduced from time to time in accordance with this Agreement, or as increased upon the agreement of the parties hereto (the "Payable"), and BNC has agreed to compensate Aurora periodically ~~reduce the Payable~~ in accordance with the terms hereof ~~as compensation~~in consideration for the Services to be provided by Aurora hereunder; and

WHEREAS, the parties hereto desire to set forth their agreement concerning such Services.

NOW, THEREFORE, in consideration of the mutual covenants and agreements of the parties contained herein, the parties hereto agree as follows:

ARTICLE I.

DEFINITIONS

The following terms are defined as follows:

Actual Expense Amount: has the meaning set forth in Section 2.03(b).

Agreement: has the meaning set forth in the preamble.

A&M: means Alvarez and Marsal.

A&M Committee: means a committee comprised of Arjun Lal, Ron Dooley, Steve

2

Kotarba and/or such other appointees nominated by A&M from time to time.

Approved Expense Amount: means the monthly final expense amount determined in accordance with Section 2.03(c) and/or Section 2.03(d) (as applicable).

Aurora: means Aurora Bank, FSB and each of its wholly-owned subsidiaries that provideprovides Services hereunder, as the context requires.

Bankruptcy Code: has the meaning set forth in the preamble.

Bankruptcy Court: has the meaning set forth in the preamble.

BNC: has the meaning set forth in the preamble.

Chapter 11 Case: has the meaning set forth in the preamble.

Confidential Information: has the meaning set forth in Section 5.02.

Cost Oversight Committee: means a committee comprised of (i) Arjun Lal or such other appointee nominated by A&M from time to time, and (ii) Karen Tankersley, Bob Leist, Tracy McKinnellCory Shull, Dale Fauss, Teresa Salerno and/or such other appointees nominated by Aurora from time to time.

Costs: means, with respect to any Person, any claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses of such Person.

Effective Date: means the date on which this Agreement is approved pursuant to an order of the Bankruptcy Court.

Employee Service Charges: means, in any given month during the Term, with respect to each applicable Aurora employee, (i) the percentage of such employee's time spent, in the course of performance of his or her duties as an employee of Aurora, performing the Services during such month, **multiplied by** (ii) such employee's gross monthly salary (excluding benefits) paid by Aurora, **multiplied by** (iii) 1.25 (to account for the cost of providing employee benefits). For the avoidance of doubt, the foregoing definition shall apply to each employee of Aurora and / or any of its wholly-owned subsidiaries that provides Services hereunder.

Independent Auditor: has the meaning set forth in Section 2.03(d).

Iron Mountain Plan: means the plan to inventory, store and arrange for the destruction of BNC's files held by Iron Mountain Inc., in each case as appropriate and in compliance with applicable Laws.

Law: means any federal, state, local or foreign law, statute, code, ordinance, rule or

regulation.

Loan: means any loan to which the Services hereunder are applicable.

Monthly Expense Amount: means the monthly final expense amount determined in accordance with Section 2.03(c) and/or Section 2.03(d) (as applicable).

Payable: has the meaning set forth in the preamble.

Person: means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization, government or agency or political subdivision thereof or any other entity.

Plan: has the meaning set forth in Section 5.17.

Proposed Expense Amount: has the meaning set forth in Section 2.03(b).

Services: has the meaning set forth in Section 2.04.

Term: has the meaning set forth in Section 3.01.


ARTICLE IIA.

SATISFACTION OF PAYABLE

Section 2.01A Satisfaction of Payable

Aurora hereby covenants and agrees to pay BNC, within 30 days of the Effective Date, the entire balance of the Payable outstanding as of the Effective Date, by transfer of immediately available funds, to the bank account designated by BNC on Schedule I hereto.


ARTICLE II.

BNC'S ENGAGEMENT OF AURORA TO PERFORM
CERTAIN SERVICES; EFFECTIVE DATE; BOOKS AND RECORDS

Section 2.01 Engagement of Aurora.

(a)  Upon the Effective Date, BNC agrees to engage Aurora to perform certain Services (as defined in Section 2.04 hereof) in accordance with the terms and conditions herein set forth, and Aurora hereby agrees to perform and provide such Services in accordance with such terms and conditions.

(b)  Aurora covenants and agrees that all Services shall be performed or provided in accordance with all applicable Laws.

Section 2.02    Independent Contractor.  Aurora shall at all times be engaged as an independent contractor, and not as an employee or agent of BNC. The parties acknowledge and agree that such an independent contractor relationship is hereby established and that neither party will hold itself out as able to contract for or in any way bind the other in any matter.

Section 2.03 Compensation of Aurora. (a)  BNC and Aurora hereby acknowledge and agree that (i) as compensation for the Services provided by Aurora hereunder, ~~the Payable will be reduced on a monthly basis by the amount of the Monthly~~ BNC shall pay to Aurora the Approved Expense Amount, as determined each month in accordance with Section 2.03(c) and/or Section 2.03(d) (as applicable)~~;~~; and (ii) prior to the payment provided for in Section 2.01A, the Payable shall ~~also~~ be reduced by any and all amounts approved by the A&M Committee and the Bankruptcy Court as compensation for the services provided by Aurora to BNC during the period from January 9, 2009 to the Effective Date.

(b)  No later than~~:        (i)~~ the ~~fifth~~twentieth (~~5~~20th) day of each month during the Term, the Cost Oversight Committee shall submit to the A&M Committee a report setting forth ~~the Cost Oversight Committee's good faith estimate of~~ the total amount of disbursements and direct out-of-pocket costs and expenses incurred or made in connection with the provision of the Services by Aurora during the preceding month, and the total Employee Service Charges for such month (the "~~Proposed~~Actual Expense Amount"), together with all invoices and other reasonable supporting documentation~~;        (ii) the twentieth (20th) day of each month during the Term, the Cost Oversight Committee shall submit to the A&M Committee a report showing activity in, and the remaining balance of, the Payable as of the end of the preceding month~~.

(c)  The A&M Committee will have a period of fifteen (15) days following the delivery of the report setting forth the ~~Proposed~~Actual Expense Amount to notify the Cost Oversight Committee of any disagreements with such calculation. If no such notification of disagreement is given within such period, the ~~Proposed~~Actual Expense Amount shall be the ~~Monthly~~Approved Expense Amount. In the event the A&M Committee notifies the Cost Oversight Committee of any disagreement, BNC shall pay to Aurora any and all undisputed amounts ~~shall be deducted from the Payable~~ in accordance with Section 2.03(a)~~. No~~ and Section 2.03(f). BNC shall not pay any disputed amount ~~may be deducted from the Payable~~to Aurora unless and until the dispute resolution mechanism in Section 2.03(d) is complied with and the amount to be ~~deducted~~paid (if any) is finally determined in accordance therewith.

(d)  In the event that the A&M Committee timely notifies the Cost Oversight Committee of its disagreement with any portion of the ~~Proposed~~Actual Expense Amount, A&M, on behalf of BNC, and Aurora may attempt in good faith to resolve such disagreement for a period of up to fifteen (15) days following the Cost Oversight Committee's receipt of the notification by the A&M Committee of such disagreement.  If within such 15 day period the parties are unable to resolve such disagreement, either A&M (on behalf of BNC), on the one hand, or Aurora, on the other hand, shall have the right to submit the determination of such matters to an independent accountant of

national standing reasonably acceptable to A&M and Aurora (the "Independent Auditor"), whose decision shall be final, binding and non-appealable on the parties.   The parties shall instruct the Independent Auditor to render its reasoned written decision as promptly as practicable but in no event later than fifteen (15) days after its selection.  The cost of the Independent Auditor shall be borne equally by BNC and Aurora. Notwithstanding anything herein to the contrary, the dispute resolution mechanism contained in this Section 2.03(d) shall be the exclusive mechanism for resolving disputes regarding the ~~Monthly~~Approved Expense Amount, if any.

(e) In the event that the A&M Committee notifies the Cost Oversight Committee of its disagreement with any portion of the ~~Proposed~~Actual Expense Amount pursuant to Section 2.03(c), and Aurora and A&M, on behalf of BNC, mutually agree that BNC shall not pay such amount ~~shall not be deducted from the Payable~~to Aurora, the parties hereby acknowledge and agree that the specific Services (or portion thereof) corresponding to such amount shall be immediately terminated without further action by any party hereto, unless the parties mutually agree in writing that such Service shall continue to be provided hereunder.

(f) Any and all payments by BNC to Aurora pursuant to this Section 2.03 shall be effected as follows:

No later than ten (10) business days following final determination of the amount to be so paid by BNC to Aurora pursuant to this Section 2.03 (the "Payment Amount"), BNC shall deliver the Payment Amount, by transfer of immediately available funds, to such account or accounts as Aurora may designate in writing.

Section 2.04   Services by Aurora. During the Term, Aurora shall perform or cause to be performed, the following services and such other support services as shall be reasonably requested from time to time by A&M on behalf of BNC (the "Services"):

(a)      Legal/Compliance.   As and to the extent requested by A&M on behalf of BNC, Aurora shall provide legal representation, including, where appropriate, outside counsel, for BNC in the prosecution or defense of actions, the negotiation and preparation of contracts and other documents, the  filing of policies and forms, governmental relations, advising on regulatory compliance and rendering opinions, in each case, subject to Bankruptcy Court approval where appropriate and in consultation with BNC's bankruptcy counsel.

(b)      Systems and Operations. As and to the extent requested by A&M on behalf of BNC, Aurora shall provide the administration, management and control of BNC's electronic records. In connection therewith, Aurora shall use best efforts to ensure that all data transmitted via public telecommunications networks are secure, and in compliance with Gramm-Leach-Bliley, Safeguarding of Customer Information requirements where applicable, in that such data will be cryptographically coded by sender in conformance with applicable industry and regulatory standards. Aurora's systems used to perform the Services hereunder shall incorporate such safeguards as are reasonably necessary to protect the integrity and availability of the data of BNC for such regulatory purposes to which BNC may be subject.

(c)    <u>Human Resources/Employee Benefits</u>.    Aurora will maintain and preserve BNC's human resource and personnel records which are in Aurora's possession for the greater of (i) a period of three (3) years from the date of delivery to Aurora, and (ii) the period required by applicable Law. Aurora will comply with applicable Laws with respect to confidentiality and use of such information.

(d)    <u>General Back Office, Administration and Corporate</u>.  As and to the extent requested by A&M on behalf of BNC, Aurora shall:

(i)  provide support for receipt of mail addressed to BNC, including forwarding of items to last known servicer or owner of related loan.  If applicable, mail which cannot be identified will be discarded or destroyed following prior written notice to BNC.

(ii)  provide document support services, including, without limitation, printing, forms management, distribution, mailings and bulk handling.

(iii)  respond to inquiries from servicers, customers, attorneys, MERs and others, requesting direction regarding current or last known ownership of loans originated by BNC.

(iv) withdraw or cancel LLC filings.

(v)  implement the Iron Mountain Plan.

(vi) update MERS Records.

(vii)  facilitate document preparation and execution.

(e)    <u>Due Diligence</u>. Aurora will perform for or on behalf of BNC, as and to the extent requested by A&M on behalf of BNC, all due diligence investigations in connection with proofs of claim filed against BNC in connection with the Chapter 11 Case, including requesting additional documentation from the claimant party.

(f)    <u>Incidental Services</u>.  Aurora shall perform for BNC such additional services as A&M shall reasonably request on behalf of BNC, from time to time.

Section 2.05 <u>Effectiveness</u>. This Agreement shall take effect on the Effective Date.

Section 2.06  <u>Books and Records</u>.

(a) Aurora shall maintain complete and accurate records with respect to the Services performed hereunder, including such records with respect to the Services as are required under applicable Law and BNC's contractual obligations.

(b)  To the extent that such records are in Aurora's possession as of the Effective Date (including, for the avoidance of doubt, possession of such records by any wholly owned subsidiary

of Aurora), Aurora shall maintain and preserve records and files related to BNC's origination of mortgage loans for the greater of (i) a period of five (5) years from the date such loans were sold to third parties, and (ii) the period required by applicable Law.  Such records may include data related to the origination and underwriting process, hard copy or imaged files of origination documents, or evidence of the sale of the loan to a third party.

(c) Except as otherwise expressly set forth in this Agreement, Aurora shall retain the records described in paragraph (a) for the longer of (x) a period of three (3) years from the date of final payment under this Agreement and (y) the record retention period mandated under the Laws and regulations of the jurisdiction or regulatory bodies to which BNC is subject.

(d) Aurora and BNC agree that all records referred to in this Section 2.06 shall be subject to examination and audit as required by applicable Law. A&M, on behalf of BNC, shall have access to such records for purposes of examination and audit during normal business hours during the period in which Aurora is required by the terms of this Section 2.06 to maintain such records. Aurora will cooperate with A&M, on behalf of BNC, to gather, produce and provide access to any documents or records generated or maintained by Aurora in providing Services to BNC hereunder, in response to a court order or the request or order of any regulatory authority.

(e) All information contained in the records referred to in this Section 2.06 shall be subject to Section 5.02 (Non-Disclosure), and shall be used only in accordance with, and for purposes permitted by, applicable Laws, including Laws relating to rights of privacy, and this Agreement.

(f) Aurora acknowledges that BNC (or A&M on behalf of BNC) shall have the sole discretion as to who, other than Aurora, may be granted access to BNC's files, subject, however, to Aurora's reasonable needs to perform the Services hereunder and to operate in Aurora's normal course of business.

ARTICLE III.

TERM; TERMINATION, ANNUAL REVIEW

Section 3.01 Term. The term (the "Term") of this Agreement shall commence as of the Effective Date and continue until the earlier of (i) completion of the Services, or (ii) termination of this Agreement by Aurora or BNC in accordance with Section 3.02 hereof.

Section 3.02 Termination. Each party shall have the right to terminate this Agreement upon the material breach by the other party of any term hereof, which breach remains uncured for a period of ten (10) days, provided, that, in the event of any such termination, Aurora must reasonably cooperate with BNC in obtaining an alternative service provider and transitioning the Services to such alternative service provider.

Section 3.03   Effect of Termination.

(a) Upon the termination or expiration of this Agreement in accordance with this Article III,

each party shall have no further responsibility to the other party under this Agreement except as provided in Section 3.03(b).

(b) The provisions of Sections 2.03, 2.06, 3.03, 5.03, 5.04, 5.06, 5.08, 5.09, 5.15, 5.16 and 5.17 of this Agreement shall survive the termination or expiration of this Agreement.

ARTICLE IV.

REPRESENTATIONS, WARRANTIES AND AGREEMENTS

Section 4.01  <u>Representations and Warranties of Aurora</u>.

Aurora hereby makes the following representations and warranties to BNC:

(a)  <u>Due Organization and Authority</u>.  Aurora is a federally chartered savings bank, is duly organized, validly existing and in good standing in the jurisdiction of its formation and has all licenses necessary to carry on its business as now being conducted in each state where the nature of the property owned by it or the activities conducted by it require such licensing. Aurora has full power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement by Aurora and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of Aurora and all requisite action has been taken by Aurora to make this Agreement valid and binding upon Aurora in accordance with its terms.

(b)  <u>Ordinary Course of Business</u>.  The Services to be rendered by Aurora pursuant to the terms of this Agreement and all other transactions contemplated hereby are in the ordinary course of business of Aurora.

(c)  <u>No Conflicts</u>. Neither the execution and delivery of this Agreement by Aurora, nor the performance of its obligations hereunder, nor the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of Aurora's organizational or governing documents or any agreement or instrument to which Aurora is a party or by which Aurora or its assets or properties are bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any Law, order, judgment or decree to which Aurora or its property is subject, or impair the ability of Aurora to perform its obligations hereunder.

(d)  <u>Ability to Perform</u>. Aurora does not believe, nor does it have any reason or cause to believe, that it cannot perform <u>or cause to be performed</u> each and every covenant of Aurora contained in this Agreement.

(e)  <u>No Litigation Pending</u>. There is no action, suit, proceeding or investigation pending or, to Aurora's knowledge, threatened against Aurora <u>or any subsidiary of Aurora</u> which, individually or in the aggregate, would be reasonably likely to impair materially the ability of Aurora to carry on its

business substantially as now conducted or to perform under the terms of this Agreement.

(f)    <u>No Consent Required</u>. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Aurora of or compliance by Aurora with this Agreement which has not been obtained.

(g)    <u>No Commissions to Third Parties</u>. Aurora has not dealt with any broker or agent or any other Person who might be entitled to a fee or commission in connection with this Agreement and the transactions contemplated hereby other than BNC.

Section 4.02 <u>Representations and Warranties of BNC</u>.

BNC hereby makes the following representations and warranties to Aurora:

(a) <u>Due Organization and Authority</u>. BNC is a limited liability company duly organized under the laws of the State of Delaware.  Subject to approval of the Bankruptcy Court of the terms and conditions hereof, BNC has the full corporate power and authority to execute and deliver this Agreement and to perform its obligations in accordance herewith; the execution, delivery and performance of this Agreement by BNC and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of BNC; and all requisite corporate action has been taken by BNC to make this Agreement valid and binding upon BNC in accordance with its terms.

(b)    <u>No Conflicts</u>. Subject to approval of the Bankruptcy Court of the terms and conditions hereof, neither the execution and delivery of this Agreement by BNC, nor the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement by BNC, will conflict with or result in a breach of any of the terms, conditions or provisions of BNC's charter or by-laws or similar governing documents or any agreement or instrument to which BNC is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any Law, order, judgment or decree to which BNC or its property is subject.

(d)    <u>Ability to Perform</u>. BNC does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant of BNC contained in this Agreement.

(e) <u>No Litigation Pending</u>. There is no action, suit, proceeding or investigation pending or, to BNC's knowledge, threatened against BNC which, individually or in the aggregate, would be reasonably likely to impair materially the ability of BNC to perform under the terms of this Agreement.

(f)    <u>No Consent Required</u>. Other than approval of the Bankruptcy Court, no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by BNC of or compliance by BNC with this Agreement.

(g)    <u>No Commissions to Third Parties</u>. BNC has not dealt with any broker or agent or any

other Person who might be entitled to a fee or commission in connection with this Agreement and the transactions contemplated hereby other than Aurora.

ARTICLE V.

MISCELLANEOUS PROVISIONS

Section 5.01 <u>Costs</u>.

Except as otherwise expressly provided for herein, each party shall pay its own fees and expenses in connection with the preparation, execution and delivery of this Agreement, including without limitation all attorneys', accountants' and outside advisers' fees and disbursements.

Section 5.02   <u>Non-Disclosure</u>. All confidential information ("<u>Confidential Information</u>") disclosed hereunder or in connection with the Services shall remain the exclusive and confidential property of the disclosing party. The receiving party shall not disclose the Confidential Information of the disclosing party and will use at least the same degree of care, discretion and diligence in protecting the Confidential Information of the disclosing party as it uses with respect to its own confidential information. The receiving party will not use the Confidential Information for any purpose not specifically contemplated by this Agreement without the prior written consent of the disclosing party. The receiving party will limit access to Confidential Information to its employees with a need to know such Confidential Information and will instruct such employees to keep such information confidential. Notwithstanding the foregoing, the receiving party may disclose Confidential Information to the extent necessary to comply with any Law applicable to it, provided that, to the extent legally permissible, the receiving party notifies the disclosing party prior to any such disclosure. Upon the request of the disclosing party, the receiving party will return or destroy all Confidential Information of the disclosing party that is in its possession. The provisions of this Subsection 5.02 will survive the termination of this Agreement.

Section 5.03 <u>Notices</u>.

All notices, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when sent by facsimile, registered mail, email or delivered personally (including, without limitation, delivery by any courier service), addressed as follows (or to such other address as may hereafter be furnished to the other party by like notice):

(a) if to BNC:

BNC Mortgage LLC
c/o Alvarez & Marsal North America, LLC
1271 Avenue of the Americas, 38th Floor
New York, NY 10020
Attn: Ron Dooley; Arjun Lal

Email: rdooley@alvarezandmarsal.com; alal@alvarezandmarsal.com

with a copy (which shall not constitute notice) to:

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Jacqueline Marcus
Email: jacqueline.marcus@weil.com
Facsimile: 212 310 8007

(b) if to Aurora:

Aurora Bank FSB
1271 Avenue of the Americas
46th Floor
New York, NY  10020
Attn:  Chief Legal Officer
Facsimile: 866-662-5792

Section 5.04  <u>Severability</u>.

Any part of or provision, covenant, representation or warranty set forth in this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining parts and provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable Law, the parties hereto waive any provision of Law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part of or provision, covenant, representation or warranty set forth in this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good faith, to develop a structure the economic effect of which is as close as possible to the economic effect of this Agreement without regard to such invalidity.

Section 5.05  <u>Counterparts</u>.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

Section 5.06  <u>Governing Law; Jurisdiction</u>

Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any

claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereto hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court; provided, however, that if the Bankruptcy Court does not have or abstains from exercising such jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court having jurisdiction over an appeal from any thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. This Agreement (and any claims or disputes arising out of or related hereto or to the transactions contemplated hereby or to the inducement of any party to enter herein, whether for breach of contract, tortious conduct or otherwise, and whether predicated on common law, statute or otherwise) shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance, in each case without reference to any conflict of law principles that might lead to the application of the laws of any other jurisdiction, except to the extent that the laws of the State of New York are superseded by the Bankruptcy Code.

Section 5.07 <u>Further Agreements</u>.

BNC and Aurora each agree to execute and deliver to the other such additional documents, instruments or agreements, and to do such acts or things, as may be reasonably necessary or appropriate to effectuate the purposes of this Agreement.

Section 5.08 <u>General Indemnity</u>.

Each party shall be liable for and shall indemnify and hold harmless the other from and against any and all Costs arising out of or resulting from any grossly negligent or willful act or omission by or on behalf of the respective party resulting in any violation of this Agreement.

Section 5.09 <u>Indemnification by BNC</u>.

BNC agrees to indemnify and hold harmless Aurora and its directors, officers, agents and employees from and against any and all Costs that may be imposed on, incurred by, or asserted against it or them in any way relating to or arising out of this Agreement or any action taken or not taken by it or them hereunder unless such ~~liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements~~<u>Costs</u> were imposed on, incurred by or asserted against Aurora because of the breach by Aurora of its obligations hereunder, which breach was caused by gross negligence, lack of good faith or willful misconduct on the part of Aurora or any of its directors, officers, agents or employees. The foregoing indemnification obligation shall survive any termination of this Agreement, and shall in no event exceed the <u>amount of the </u>Payable<u> as of</u>

the Effective Date.

Section 5.10  Successors and Assigns; Assignment of this Agreement.

This Agreement shall bind and inure to the benefit of and be enforceable by Aurora and BNC and the respective successors and permitted assigns of Aurora and BNC. Neither BNC nor Aurora shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party, and any attempted assignment in violation of this sentence shall be void.

Section 5.11  Waivers.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced. No failure on the part of any party to exercise or delay in exercising any right hereunder shall be deemed a waiver thereof, nor shall any single or partial exercise preclude any further or other exercise of such right or any other right.

Section 5.12 Exhibits.

The exhibits to this Agreement are hereby incorporated herein by reference and made a part hereof and are an integral part of this Agreement.

Section 5.13  General Interpretive Principles.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)   the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)  accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)   references herein to "Articles", "Sections", "Subsections", "Paragraphs", and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)  a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e) the words "herein", "hereof", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f) the term "include" or "including" shall be deemed to be followed by the phrase "without limitation".

Section 5.14 <u>Standard of Care</u>. In performing the Services hereunder, Aurora shall use the same standard of care as it uses or would use in performing similar services and functions for its own account.

Section 5.15 <u>Ownership of Certain Property</u>. If in connection with performing its obligations hereunder, Aurora shall be in possession of any mortgage loan files, servicing files, or mortgage loan, insurance or claim proceeds which are owned by BNC, all such files and funds shall be held by Aurora, at BNC's discretion, for the sole purpose of performing the Services pursuant to this Agreement, and are and shall be held in trust by Aurora for the benefit of BNC, and such retention and possession by Aurora shall be in a custodial capacity only. The ownership of each mortgage note, mortgage, and the contents of each mortgage loan file and servicing file shall be vested in BNC as the owner thereof and the ownership of all records and documents with respect to the related mortgage loans prepared by or which come into the possession of Aurora shall immediately vest in BNC as the owner thereof and shall be retained and maintained, in trust, by Aurora at the will of the owner thereof in such custodial capacity only. The portion of any mortgage loan file, servicing file, or mortgage loan, insurance or claim proceeds held or retained by Aurora pursuant to this Agreement shall be segregated from the other books and records and funds of Aurora and shall be appropriately marked to clearly reflect the ownership of the related mortgage loan by the owner thereof.

Section 5.16 <u>Limitation on Liability</u>. Neither Aurora nor any of its directors, officers, agents or employees, shall be liable for any action taken or omitted to be taken by it or them hereunder or in connection herewith in good faith and believed by it or them to be within the purview of this Agreement, provided that in no event shall such limitation of liability apply to the gross negligence or willful misconduct of Aurora. In no event shall any party hereto be held liable for any special or consequential damages hereunder, unless awarded to a third party.

~~Section 5.17  Availability of Payable. The parties hereby acknowledge and agree that, in the event that BNC confirms a plan of liquidation or reorganization pursuant to chapter 7 or 11 of the Bankruptcy Code (the "Plan"), which provides for the return of the remaining balance of the Payable to BNC, they will cooperate in good faith to agree on an alternative mechanism for compensating Aurora for the Services.~~

(Signatures on following page)

IN WITNESS WHEREOF, Aurora and BNC have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

BNC MORTGAGE LLC (BNC)

By: _____

Name: Steven Cohn_____

Title:   Authorized Signatory_____

Aurora Bank FSB (Aurora)

By: _____

Name: Karen Cornell-Tankersley_____

Title:   Executive Vice President & General_____
Counsel_____

US_ACTIVE:\43564245\1016\58399.0008

SCHEDULE 1

BNC BANK ACCOUNT DETAILS

ABA              231170136
                 Aurora Bank FSB
                 1000 N West St., Ste. 200
                 Wilmington, DE  19801

Credit           Delaware Retail Clearing
                 1000 N West St., Ste. 200
                 Wilmington, DE  19801

A/C              124700002613

Final Credit     508000173825 BNC Mortgage LLC DIP

**<u>Exhibit B</u>**
**(Execution Copy of the ISA)**

*EXECUTION VERSION*

INTERCOMPANY SERVICES AGREEMENT

between

AURORA BANK FSB

and

BNC MORTGAGE LLC

Dated as of March 30, 2011

INTERCOMPANY SERVICES AGREEMENT

AGREEMENT (this "Agreement") dated as of March 30, 2011 by and between Aurora Bank FSB, a federal savings bank, and BNC Mortgage LLC, a Delaware limited liability company ("BNC").

WHEREAS, on January 9, 2009, BNC filed a voluntary petition for relief (the "Chapter 11 Case") under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, BNC currently has no employees;

WHEREAS, BNC desires to obtain certain general back office and administrative support services, and other support services, in each case from or through Aurora, and Aurora desires to provide such services, either directly or through one or more of its subsidiaries;

WHEREAS, Aurora owes BNC a payable amounting to approximately $17,184,322 in the aggregate as of January 9, 2009, as adjusted or reduced from time to time in accordance with this Agreement, or as increased upon the agreement of the parties hereto (the "Payable"), and BNC has agreed to compensate Aurora periodically in accordance with the terms hereof in consideration for the Services to be provided by Aurora hereunder; and

WHEREAS, the parties hereto desire to set forth their agreement concerning such Services.

NOW, THEREFORE, in consideration of the mutual covenants and agreements of the parties contained herein, the parties hereto agree as follows:

ARTICLE I.

DEFINITIONS

The following terms are defined as follows:

Actual Expense Amount: has the meaning set forth in Section 2.03(b).

Agreement: has the meaning set forth in the preamble.

A&M: means Alvarez and Marsal.

A&M Committee: means a committee comprised of Arjun Lal, Ron Dooley, Steve Kotarba and/or such other appointees nominated by A&M from time to time.

Approved Expense Amount: means the monthly final expense amount determined in accordance with Section 2.03(c) and/or Section 2.03(d) (as applicable).

Aurora: means Aurora Bank, FSB and each of its wholly-owned subsidiaries that provides Services hereunder, as the context requires.

Bankruptcy Code: has the meaning set forth in the preamble.

Bankruptcy Court: has the meaning set forth in the preamble.

BNC: has the meaning set forth in the preamble.

Chapter 11 Case: has the meaning set forth in the preamble.

Confidential Information: has the meaning set forth in Section 5.02.

Cost Oversight Committee: means a committee comprised of (i) Arjun Lal or such other appointee nominated by A&M from time to time, and (ii) Karen Tankersley, Bob Leist, Cory Shull, Dale Fauss, Teresa Salerno and/or such other appointees nominated by Aurora from time to time.

Costs: means, with respect to any Person, any claims, losses, damages, penalties, fines, forfeitures, reasonable and necessary legal fees and related costs, judgments, and other costs and expenses of such Person.

Effective Date: means the date on which this Agreement is approved pursuant to an order of the Bankruptcy Court.

Employee Service Charges: means, in any given month during the Term, with respect to each applicable Aurora employee, (i) the percentage of such employee's time spent, in the course of performance of his or her duties as an employee of Aurora, performing the Services during such month, **multiplied by** (ii) such employee's gross monthly salary (excluding benefits) paid by Aurora, **multiplied by** (iii) 1.25 (to account for the cost of providing employee benefits). For the avoidance of doubt, the foregoing definition shall apply to each employee of Aurora and / or any of its wholly-owned subsidiaries that provides Services hereunder.

Independent Auditor: has the meaning set forth in Section 2.03(d).

Iron Mountain Plan: means the plan to inventory, store and arrange for the destruction of BNC's files held by Iron Mountain Inc., in each case as appropriate and in compliance with applicable Laws.

Law: means any federal, state, local or foreign law, statute, code, ordinance, rule or regulation.

Loan: means any loan to which the Services hereunder are applicable.

Payable: has the meaning set forth in the preamble.

Person: means any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company, trust, unincorporated organization, government or agency or political subdivision thereof or any other entity.

Services: has the meaning set forth in Section 2.04.

Term: has the meaning set forth in Section 3.01.

ARTICLE IIA.

SATISFACTION OF PAYABLE

Section 2.01A Satisfaction of Payable

Aurora hereby covenants and agrees to pay BNC, within 30 days of the Effective Date, the entire balance of the Payable outstanding as of the Effective Date, by transfer of immediately available funds, to the bank account designated by BNC on Schedule I hereto.

ARTICLE II.

BNC'S ENGAGEMENT OF AURORA TO PERFORM
CERTAIN SERVICES; EFFECTIVE DATE; BOOKS AND RECORDS

Section 2.01 Engagement of Aurora.

(a)  Upon the Effective Date, BNC agrees to engage Aurora to perform certain Services (as defined in Section 2.04 hereof) in accordance with the terms and conditions herein set forth, and Aurora hereby agrees to perform and provide such Services in accordance with such terms and conditions.

(b)  Aurora covenants and agrees that all Services shall be performed or provided in accordance with all applicable Laws.

Section 2.02   Independent Contractor. Aurora shall at all times be engaged as an independent contractor, and not as an employee or agent of BNC. The parties acknowledge and agree that such an independent contractor relationship is hereby established and that neither party will hold itself out as able to contract for or in any way bind the other in any matter.

Section 2.03 Compensation of Aurora. (a)  BNC and Aurora hereby acknowledge and agree

that (i) as compensation for the Services provided by Aurora hereunder, BNC shall pay to Aurora the Approved Expense Amount, as determined each month in accordance with Section 2.03(c) and/or Section 2.03(d) (as applicable); and (ii) prior to the payment provided for in Section 2.01A, the Payable shall be reduced by any and all amounts approved by the A&M Committee and the Bankruptcy Court as compensation for the services provided by Aurora to BNC during the period from January 9, 2009 to the Effective Date.

(b)  No later than the twentieth (20th) day of each month during the Term, the Cost Oversight Committee shall submit to the A&M Committee a report setting forth the total amount of disbursements and direct out-of-pocket costs and expenses incurred or made in connection with the provision of the Services by Aurora during the preceding month, and the total Employee Service Charges for such month (the "Actual Expense Amount"), together with all invoices  and other reasonable supporting documentation.

(c)  The A&M Committee will have a period of fifteen (15) days following the delivery of the report setting forth the Actual Expense Amount to notify the Cost Oversight Committee of any disagreements with such calculation. If no such notification of disagreement is given within such period, the Actual Expense Amount shall be the Approved Expense Amount. In the event the A&M Committee notifies the Cost Oversight Committee of any disagreement, BNC shall pay to Aurora any and all undisputed amounts in accordance with Section 2.03(a) and Section 2.03(f). BNC shall not pay any disputed amount to Aurora unless and until the dispute resolution mechanism in Section 2.03(d) is complied with and the amount to be paid (if any) is finally determined in accordance therewith.

(d) In the event that the A&M Committee timely notifies the Cost Oversight Committee of its disagreement with any portion of the Actual Expense Amount, A&M, on behalf of BNC, and Aurora may attempt in good faith to resolve such disagreement for a period of up to fifteen (15) days following the Cost Oversight Committee's receipt of the notification by the A&M Committee of such disagreement.  If within such 15 day period the parties are unable to resolve such disagreement, either A&M (on behalf of BNC), on the one hand, or Aurora, on the other hand, shall have the right to submit the determination of such matters to an independent accountant of national standing reasonably acceptable to A&M and Aurora (the "Independent Auditor"), whose decision shall be final, binding and non-appealable on the parties.   The parties shall instruct the Independent Auditor to render its reasoned written decision as promptly as practicable but in no event later than fifteen (15) days after its selection.  The cost of the Independent Auditor shall be borne equally by BNC and Aurora. Notwithstanding anything herein to the contrary, the dispute resolution mechanism contained in this Section 2.03(d) shall be the exclusive mechanism for resolving disputes regarding the Approved Expense Amount, if any.

(e) In the event that the A&M Committee notifies the Cost Oversight Committee of its disagreement with any portion of the Actual Expense Amount pursuant to Section 2.03(c), and Aurora and A&M, on behalf of BNC, mutually agree that BNC shall not pay such amount to Aurora, the parties hereby acknowledge and agree that the specific Services (or portion thereof) corresponding to such amount shall be immediately terminated without further action by any party hereto, unless the parties mutually agree in writing that such Service shall continue to be provided

hereunder.

(f) Any and all payments by BNC to Aurora pursuant to this Section 2.03 shall be effected as follows:

No later than ten (10) business days following final determination of the amount to be so paid by BNC to Aurora pursuant to this Section 2.03 (the "Payment Amount"), BNC shall deliver the Payment Amount, by transfer of immediately available funds, to such account or accounts as Aurora may designate in writing.

Section 2.04   Services by Aurora. During the Term, Aurora shall perform or cause to be performed, the following services and such other support services as shall be reasonably requested from time to time by A&M on behalf of BNC (the "Services"):

(a)      Legal/Compliance.   As and to the extent requested by A&M on behalf of BNC, Aurora shall provide legal representation, including, where appropriate, outside counsel, for BNC in the prosecution or defense of actions, the negotiation and preparation of contracts and other documents, the   filing of policies and forms, governmental relations, advising on regulatory compliance and rendering opinions, in each case, subject to Bankruptcy Court approval where appropriate and in consultation with BNC's bankruptcy counsel.

(b)      Systems and Operations. As and to the extent requested by A&M on behalf of BNC, Aurora shall provide the administration, management and control of BNC's electronic records. In connection therewith, Aurora shall use best efforts to ensure that all data transmitted via public telecommunications networks are secure, and in compliance with Gramm-Leach-Bliley, Safeguarding of Customer Information requirements where applicable, in that such data will be cryptographically coded by sender in conformance with applicable industry and regulatory standards. Aurora's systems used to perform the Services hereunder shall incorporate such safeguards as are reasonably necessary to protect the integrity and availability of the data of BNC for such regulatory purposes to which BNC may be subject.

(c)      Human Resources/Employee Benefits.   Aurora will maintain and preserve BNC's human resource and personnel records which are in Aurora's possession for the greater of (i) a period of three (3) years from the date of delivery to Aurora, and (ii) the period required by applicable Law. Aurora will comply with applicable Laws with respect to confidentiality and use of such information.

(d)      General Back Office, Administration and Corporate.   As and to the extent requested by A&M on behalf of BNC, Aurora shall:

(i)   provide support for receipt of mail addressed to BNC, including forwarding of items to last known servicer or owner of related loan.  If applicable, mail which cannot be identified will be discarded or destroyed following prior written notice to BNC.

(ii)  provide document support services, including, without limitation, printing, forms

management, distribution, mailings and bulk handling.

(iii)    respond to inquiries from servicers, customers, attorneys, MERs and others, requesting direction regarding current or last known ownership of loans originated by BNC.

(iv) withdraw or cancel LLC filings.

(v)  implement the Iron Mountain Plan.

(vi) update MERS Records.

(vii)  facilitate document preparation and execution.

(e)    Due Diligence. Aurora will perform for or on behalf of BNC, as and to the extent requested by A&M on behalf of BNC, all due diligence investigations in connection with proofs of claim filed against BNC in connection with the Chapter 11 Case, including requesting additional documentation from the claimant party.

(f)    Incidental Services.  Aurora shall perform for BNC such additional services as A&M shall reasonably request on behalf of BNC, from time to time.

Section 2.05 Effectiveness. This Agreement shall take effect on the Effective Date.

Section 2.06  Books and Records.

(a) Aurora shall maintain complete and accurate records with respect to the Services performed hereunder, including such records with respect to the Services as are required under applicable Law and BNC's contractual obligations.

(b)  To the extent that such records are in Aurora's possession as of the Effective Date (including, for the avoidance of doubt, possession of such records by any wholly owned subsidiary of Aurora), Aurora shall maintain and preserve records and files related to BNC's origination of mortgage loans for the greater of (i) a period of five (5) years from the date such loans were sold to third parties, and (ii) the period required by applicable Law.  Such records may include data related to the origination and underwriting process, hard copy or imaged files of origination documents, or evidence of the sale of the loan to a third party.

(c) Except as otherwise expressly set forth in this Agreement, Aurora shall retain the records described in paragraph (a) for the longer of (x) a period of three (3) years from the date of final payment under this Agreement and (y) the record retention period mandated under the Laws and regulations of the jurisdiction or regulatory bodies to which BNC is subject.

(d) Aurora and BNC agree that all records referred to in this Section 2.06 shall be subject to examination and audit as required by applicable Law. A&M, on behalf of BNC, shall have access to such records for purposes of examination and audit during normal business hours during the period

in which Aurora is required by the terms of this Section 2.06 to maintain such records. Aurora will cooperate with A&M, on behalf of BNC, to gather, produce and provide access to any documents or records generated or maintained by Aurora in providing Services to BNC hereunder, in response to a court order or the request or order of any regulatory authority.

(e) All information contained in the records referred to in this Section 2.06 shall be subject to Section 5.02 (Non-Disclosure), and shall be used only in accordance with, and for purposes permitted by, applicable Laws, including Laws relating to rights of privacy, and this Agreement.

(f) Aurora acknowledges that BNC (or A&M on behalf of BNC) shall have the sole discretion as to who, other than Aurora, may be granted access to BNC's files, subject, however, to Aurora's reasonable needs to perform the Services hereunder and to operate in Aurora's normal course of business.

ARTICLE III.

TERM; TERMINATION, ANNUAL REVIEW

Section 3.01 <u>Term</u>. The term (the "<u>Term</u>") of this Agreement shall commence as of the Effective Date and continue until the earlier of (i) completion of the Services, or (ii) termination of this Agreement by Aurora or BNC in accordance with Section 3.02 hereof.

Section 3.02 <u>Termination</u>. Each party shall have the right to terminate this Agreement upon the material breach by the other party of any term hereof, which breach remains uncured for a period of ten (10) days, provided, that, in the event of any such termination, Aurora must reasonably cooperate with BNC in obtaining an alternative service provider and transitioning the Services to such alternative service provider.

Section 3.03    <u>Effect of Termination</u>.

(a) Upon the termination or expiration of this Agreement in accordance with this Article III, each party shall have no further responsibility to the other party under this Agreement except as provided in Section 3.03(b).

(b) The provisions of Sections 2.03, 2.06, 3.03, 5.03, 5.04, 5.06, 5.08, 5.09, 5.15, 5.16 and 5.17  of this Agreement shall survive the termination or expiration of this Agreement.

ARTICLE IV.

REPRESENTATIONS, WARRANTIES AND AGREEMENTS

Section 4.01 <u>Representations and Warranties of Aurora</u>.

Aurora hereby makes the following representations and warranties to BNC:

(a)  Due Organization and Authority.  Aurora is a federally chartered savings bank, is duly organized, validly existing and in good standing in the jurisdiction of its formation and has all licenses necessary to carry on its business as now being conducted in each state where the nature of the property owned by it or the activities conducted by it require such licensing. Aurora has full power and authority to execute and deliver this Agreement and to perform in accordance herewith; the execution, delivery and performance of this Agreement by Aurora and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of Aurora and all requisite action has been taken by Aurora to make this Agreement valid and binding upon Aurora in accordance with its terms.

(b)  Ordinary Course of Business.  The Services to be rendered by Aurora pursuant to the terms of this Agreement and all other transactions contemplated hereby are in the ordinary course of business of Aurora.

(c)  No Conflicts. Neither the execution and delivery of this Agreement by Aurora, nor the performance of its obligations hereunder, nor the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement, will conflict with or result in a breach of any of the terms, conditions or provisions of Aurora's organizational or governing documents or any agreement or instrument to which Aurora is a party or by which Aurora or its assets or properties are bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any Law, order, judgment or decree to which Aurora or its property is subject, or impair the ability of Aurora to perform its obligations hereunder.

(d)  Ability to Perform. Aurora does not believe, nor does it have any reason or cause to believe, that it cannot perform or cause to be performed each and every covenant of Aurora contained in this Agreement.

(e)  No Litigation Pending. There is no action, suit, proceeding or investigation pending or, to Aurora's knowledge, threatened against Aurora or any subsidiary of Aurora which, individually or in the aggregate, would be reasonably likely to impair materially the ability of Aurora to carry on its business substantially as now conducted or to perform under the terms of this Agreement.

(f)  No Consent Required. No consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by Aurora of or compliance by Aurora with this Agreement which has not been obtained.

(g)  No Commissions to Third Parties. Aurora has not dealt with any broker or agent or any other Person who might be entitled to a fee or commission in connection with this Agreement and the transactions contemplated hereby other than BNC.

Section 4.02 Representations and Warranties of BNC.

BNC hereby makes the following representations and warranties to Aurora:

(a) <u>Due Organization and Authority</u>. BNC is a limited liability company duly organized under the laws of the State of Delaware. Subject to approval of the Bankruptcy Court of the terms and conditions hereof, BNC has the full corporate power and authority to execute and deliver this Agreement and to perform its obligations in accordance herewith; the execution, delivery and performance of this Agreement by BNC and the consummation of the transactions contemplated hereby have been duly and validly authorized; this Agreement evidences the valid, binding and enforceable obligation of BNC; and all requisite corporate action has been taken by BNC to make this Agreement valid and binding upon BNC in accordance with its terms.

(b) <u>No Conflicts</u>. Subject to approval of the Bankruptcy Court of the terms and conditions hereof, neither the execution and delivery of this Agreement by BNC, nor the consummation of the transactions contemplated hereby, nor the fulfillment of or compliance with the terms and conditions of this Agreement by BNC, will conflict with or result in a breach of any of the terms, conditions or provisions of BNC's charter or by-laws or similar governing documents or any agreement or instrument to which BNC is now a party or by which it is bound, or constitute a default or result in an acceleration under any of the foregoing, or result in the violation of any Law, order, judgment or decree to which BNC or its property is subject.

(d) <u>Ability to Perform</u>. BNC does not believe, nor does it have any reason or cause to believe, that it cannot perform each and every covenant of BNC contained in this Agreement.

(e) <u>No Litigation Pending</u>. There is no action, suit, proceeding or investigation pending or, to BNC's knowledge, threatened against BNC which, individually or in the aggregate, would be reasonably likely to impair materially the ability of BNC to perform under the terms of this Agreement.

(f) <u>No Consent Required</u>. Other than approval of the Bankruptcy Court, no consent, approval, authorization or order of any court or governmental agency or body is required for the execution, delivery and performance by BNC of or compliance by BNC with this Agreement.

(g) <u>No Commissions to Third Parties</u>. BNC has not dealt with any broker or agent or any other Person who might be entitled to a fee or commission in connection with this Agreement and the transactions contemplated hereby other than Aurora.

ARTICLE V.

MISCELLANEOUS PROVISIONS

Section 5.01 <u>Costs</u>.

Except as otherwise expressly provided for herein, each party shall pay its own fees and expenses in connection with the preparation, execution and delivery of this Agreement, including without limitation all attorneys', accountants' and outside advisers' fees and disbursements.

Section 5.02   <u>Non-Disclosure</u>. All confidential information ("<u>Confidential Information</u>")

disclosed hereunder or in connection with the Services shall remain the exclusive and confidential property of the disclosing party. The receiving party shall not disclose the Confidential Information of the disclosing party and will use at least the same degree of care, discretion and diligence in protecting the Confidential Information of the disclosing party as it uses with respect to its own confidential information. The receiving party will not use the Confidential Information for any purpose not specifically contemplated by this Agreement without the prior written consent of the disclosing party. The receiving party will limit access to Confidential Information to its employees with a need to know such Confidential Information and will instruct such employees to keep such information confidential. Notwithstanding the foregoing, the receiving party may disclose Confidential Information to the extent necessary to comply with any Law applicable to it, provided that, to the extent legally permissible, the receiving party notifies the disclosing party prior to any such disclosure. Upon the request of the disclosing party, the receiving party will return or destroy all Confidential Information of the disclosing party that is in its possession. The provisions of this Subsection 5.02 will survive the termination of this Agreement.

Section 5.03 <u>Notices</u>.

All notices, demands and other communications hereunder shall be in writing and shall be deemed to have been duly given when sent by facsimile, registered mail, email or delivered personally (including, without limitation, delivery by any courier service), addressed as follows (or to such other address as may hereafter be furnished to the other party by like notice):

(a) if to BNC:

> BNC Mortgage LLC
> c/o Alvarez & Marsal North America, LLC
> 1271 Avenue of the Americas, 38th Floor
> New York, NY 10020
> Attn: Ron Dooley; Arjun Lal
> Email: rdooley@alvarezandmarsal.com; alal@alvarezandmarsal.com

> with a copy (which shall not constitute notice) to:

> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, NY 10153
> Attn: Jacqueline Marcus
> Email: jacqueline.marcus@weil.com
> Facsimile: 212 310 8007

(b) if to Aurora:

Aurora Bank FSB
1271 Avenue of the Americas
46th Floor
New York, NY 10020
Attn: Chief Legal Officer
Facsimile: 866-662-5792

Section 5.04 Severability.

Any part of or provision, covenant, representation or warranty set forth in this Agreement which is prohibited or unenforceable or is held to be void or unenforceable in any jurisdiction shall be ineffective, as to such jurisdiction, to the extent of such prohibition or unenforceability without invalidating the remaining parts and provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by applicable Law, the parties hereto waive any provision of Law which prohibits or renders void or unenforceable any provision hereof. If the invalidity of any part of or provision, covenant, representation or warranty set forth in this Agreement shall deprive any party of the economic benefit intended to be conferred by this Agreement, the parties shall negotiate, in good faith, to develop a structure the economic effect of which is as close as possible to the economic effect of this Agreement without regard to such invalidity.

Section 5.05 Counterparts.

This Agreement may be executed simultaneously in any number of counterparts. Each counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

Section 5.06 Governing Law; Jurisdiction

Without limiting any party's right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby, and (ii) any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereto hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court; provided, however, that if the Bankruptcy Court does not have or abstains from exercising such jurisdiction, the parties hereto agree to unconditionally and irrevocably submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York sitting in New York County or the Commercial Division, Civil Branch of the Supreme Court of the State of New York sitting in New York County and any appellate court having jurisdiction over an appeal from any thereof, for the resolution of any such claim or dispute. The parties hereby irrevocably waive, to the fullest extent permitted by applicable law, any objection which they may now or hereafter have to the laying of venue of any such dispute brought in such court or any defense of inconvenient forum for the maintenance of such dispute. This Agreement (and any claims or disputes arising out of or related hereto or to the transactions contemplated hereby or to

the inducement of any party to enter herein, whether for breach of contract, tortious conduct or otherwise, and whether predicated on common law, statute or otherwise) shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, including all matters of construction, validity and performance, in each case without reference to any conflict of law principles that might lead to the application of the laws of any other jurisdiction, except to the extent that the laws of the State of New York are superseded by the Bankruptcy Code.

Section 5.07 <u>Further Agreements</u>.

BNC and Aurora each agree to execute and deliver to the other such additional documents, instruments or agreements, and to do such acts or things, as may be reasonably necessary or appropriate to effectuate the purposes of this Agreement.

Section 5.08 <u>General Indemnity</u>.

Each party shall be liable for and shall indemnify and hold harmless the other from and against any and all Costs arising out of or resulting from any grossly negligent or willful act or omission by or on behalf of the respective party resulting in any violation of this Agreement.

Section 5.09 <u>Indemnification by BNC</u>.

BNC agrees to indemnify and hold harmless Aurora and its directors, officers, agents and employees from and against any and all Costs that may be imposed on, incurred by, or asserted against it or them in any way relating to or arising out of this Agreement or any action taken or not taken by it or them hereunder unless such Costs were imposed on, incurred by or asserted against Aurora because of the breach by Aurora of its obligations hereunder, which breach was caused by gross negligence, lack of good faith or willful misconduct on the part of Aurora or any of its directors, officers, agents or employees. The foregoing indemnification obligation shall survive any termination of this Agreement, and shall in no event exceed the amount of the Payable as of the Effective Date.

Section 5.10 <u>Successors and Assigns; Assignment of this Agreement</u>.

This Agreement shall bind and inure to the benefit of and be enforceable by Aurora and BNC and the respective successors and permitted assigns of Aurora and BNC. Neither BNC nor Aurora shall assign this Agreement or any rights or obligations hereunder without the prior written consent of the other party, and any attempted assignment in violation of this sentence shall be void.

Section 5.11 <u>Waivers</u>.

No term or provision of this Agreement may be waived or modified unless such waiver or modification is in writing and signed by the party against whom such waiver or modification is sought to be enforced. No failure on the part of any party to exercise or delay in exercising any right hereunder shall be deemed a waiver thereof, nor shall any single or partial exercise preclude any

further or other exercise of such right or any other right.

Section 5.12 <u>Exhibits</u>.

The exhibits to this Agreement are hereby incorporated herein by reference and made a part hereof and are an integral part of this Agreement.

Section 5.13 <u>General Interpretive Principles</u>.

For purposes of this Agreement, except as otherwise expressly provided or unless the context otherwise requires:

(a)   the terms defined in this Agreement have the meanings assigned to them in this Agreement and include the plural as well as the singular, and the use of any gender herein shall be deemed to include the other gender;

(b)   accounting terms not otherwise defined herein have the meanings assigned to them in accordance with generally accepted accounting principles;

(c)   references herein to "Articles", "Sections", "Subsections", "Paragraphs", and other subdivisions without reference to a document are to designated Articles, Sections, Subsections, Paragraphs and other subdivisions of this Agreement;

(d)   a reference to a Subsection without further reference to a Section is a reference to such Subsection as contained in the same Section in which the reference appears, and this rule shall also apply to Paragraphs and other subdivisions;

(e)   the words "herein", "hereof", "hereunder" and other words of similar import refer to this Agreement as a whole and not to any particular provision; and

(f)   the term "include" or "including" shall be deemed to be followed by the phrase "without limitation".

Section 5.14 <u>Standard of Care</u>. In performing the Services hereunder, Aurora shall use the same standard of care as it uses or would use in performing similar services and functions for its own account.

Section 5.15 <u>Ownership of Certain Property</u>. If in connection with performing its obligations hereunder, Aurora shall be in possession of any mortgage loan files, servicing files, or mortgage loan, insurance or claim proceeds which are owned by BNC, all such files and funds shall be held by Aurora, at BNC's discretion, for the sole purpose of performing the Services pursuant to this Agreement, and are and shall be held in trust by Aurora for the benefit of BNC, and such retention and possession by Aurora shall be in a custodial capacity only. The ownership of each mortgage note, mortgage, and the contents of each mortgage loan file and servicing file shall be vested in BNC as the owner thereof and the ownership of all records and documents with respect to the

related mortgage loans prepared by or which come into the possession of Aurora shall immediately vest in BNC as the owner thereof and shall be retained and maintained, in trust, by Aurora at the will of the owner thereof in such custodial capacity only. The portion of any mortgage loan file, servicing file, or mortgage loan, insurance or claim proceeds held or retained by Aurora pursuant to this Agreement shall be segregated from the other books and records and funds of Aurora and shall be appropriately marked to clearly reflect the ownership of the related mortgage loan by the owner thereof.

Section 5.16 <u>Limitation on Liability</u>. Neither Aurora nor any of its directors, officers, agents or employees, shall be liable for any action taken or omitted to be taken by it or them hereunder or in connection herewith in good faith and believed by it or them to be within the purview of this Agreement, provided that in no event shall such limitation of liability apply to the gross negligence or willful misconduct of Aurora. In no event shall any party hereto be held liable for any special or consequential damages hereunder, unless awarded to a third party.

(Signatures on following page)

IN WITNESS WHEREOF, Aurora and BNC have caused their names to be signed hereto by their respective officers thereunto duly authorized as of the date first above written.

BNC MORTGAGE LLC

By: _____

Name: <u>Steven Cohn</u>
Title:  <u>Authorized Signatory</u>


Aurora Bank FSB

By: _____

Name: <u>Karen Cornell-Tankersley</u>
Title:  <u>Executive Vice President & General</u>
         <u>Counsel</u>

<u>SCHEDULE 1</u>

BNC BANK ACCOUNT DETAILS

| | |
|---|---|
| ABA | 231170136 |
| | Aurora Bank FSB |
| | 1000 N West St., Ste. 200 |
| | Wilmington, DE  19801 |
| | |
| Credit | Delaware Retail Clearing |
| | 1000 N West St., Ste. 200 |
| | Wilmington, DE  19801 |
| | |
| A/C | 124700002613 |
| | |
| Final Credit | 508000173825 BNC Mortgage LLC DIP |

**<u>Exhibit C</u>**
**(Blackline of the Revised Proposed Order)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x
                                          :

In re                                     :        **Chapter 11 Case No.**
                                            :

**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                            :

                      **Debtors.**                 :        **(Jointly Administered)**
                                            :

--------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a),**
**363 AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 6004 AUTHORIZING BNC MORTGAGE LLC TO (I) ENTER INTO**
**INTERCOMPANY SERVICES AGREEMENT WITH AURORA BANK FSB, AND**
**(II) REIMBURSE AURORA BANK FSB FOR CERTAIN ADMINISTRATIVE EXPENSES**

            Upon the motion, dated March 2, 2011 (the "Motion"), of BNC Mortgage

LLC ("BNC") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their

non-debtor affiliates, "Lehman"), for authorization to enter into a and perform under that

certain Intercompany Services Agreement (the "ISA") with Aurora Bank, FSB

("Aurora"), pursuant to section 105(a), 363 and 503 of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 6004(h) of the Federal Rules of Bankruptcy

Procedure, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided to (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; and (iii) all other parties entitled to notice in accordance with the procedures

set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Docket No. 9635]; and a

hearing (the "Hearing") having been held to consider the relief requested in the Motion;

and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Debtors, their estates and creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 363 of the Bankruptcy

Code, the ISA is approved; and it is further

ORDERED that BNC is authorized to perform any and all of its

obligations under the ISA and to execute, deliver, implement and fully perform any and

all instruments, documents and papers and to take any and all actions reasonably

necessary or appropriate in connection with the implementation of the ISA, and perform

any and all obligations contemplated therein, including entering into any non-material

amendments to the Agreement without further order from the Court, and all obligations

of BNC thereunder shall be deemed allowed administrative expense claims under section

503(b) of the Bankruptcy Code against BNC; and it is further

ORDERED that the failure to specifically describe or include any

particular provisions of the ISA shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that BNC is authorized to perform under the

ISA in its entirety; and it if further

ORDERED that pursuant to sections 105(a), 363(b)(1) and 503 of the

Bankruptcy Code, BNC is authorized, but not directed, to effect payment of $504,455.24

to Aurora in full and final satisfaction of the Post Petition Services through a reduction of

the Receivable;[1] and it is further

ORDERED that, notwithstanding Rule 6004(h) of the Federal Rules of

Bankruptcy Procedure, this Order shall take effect immediately; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to the implementation and/or interpretation of this

Order; and it is further

Dated: _____, 2011
       New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

---

[1] Capitalized terms that are used herein, but not defined, have the meanings ascribed to them in the Motion.

**<u>Exhibit D</u>**
**(Revised Proposed Order)**

US_ACTIVE:\43669339\01\58399.0003

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                                   :
In re                                                              :    **Chapter 11 Case No.**
                                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                       :    **08-13555 (JMP)**
                                                                   :
                              **Debtors.**                         :    **(Jointly Administered)**
                                                                   :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a),**
**363 AND 503 OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 6004 AUTHORIZING BNC MORTGAGE LLC TO (I) ENTER INTO**
**INTERCOMPANY SERVICES AGREEMENT WITH AURORA BANK FSB, AND**
**(II) REIMBURSE AURORA BANK FSB FOR CERTAIN ADMINISTRATIVE EXPENSES**

Upon the motion, dated March 2, 2011 (the "Motion"), of BNC Mortgage

LLC ("BNC") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (collectively, the "Debtors" and, together with their

non-debtor affiliates, "Lehman"), for authorization to enter into a and perform under that

certain Intercompany Services Agreement (the "ISA") with Aurora Bank, FSB

("Aurora"), pursuant to section 105(a), 363 and 503 of title 11 of the United States Code

(the "Bankruptcy Code") and Rule 6004(h) of the Federal Rules of Bankruptcy

Procedure, all as more fully described in the Motion; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157

and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern

District of New York Any and All Proceedings Under Title 11, dated July 10, 1984

(Ward, Acting C.J.); and consideration of the Motion and the relief requested therein

being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before

this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided to (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; and (iii) all other parties entitled to notice in accordance with the procedures

set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Docket No. 9635]; and a

hearing (the "Hearing") having been held to consider the relief requested in the Motion;

and the Court having found and determined that the relief sought in the Motion is in the

best interests of the Debtors, their estates and creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 105(a) and 363 of the Bankruptcy

Code, the ISA is approved; and it is further

ORDERED that BNC is authorized to perform any and all of its

obligations under the ISA and to execute, deliver, implement and fully perform any and

all instruments, documents and papers and to take any and all actions reasonably

necessary or appropriate in connection with the implementation of the ISA, and perform

any and all obligations contemplated therein, including entering into any non-material

amendments to the Agreement without further order from the Court, and all obligations

of BNC thereunder shall be deemed allowed administrative expense claims under section

503(b) of the Bankruptcy Code against BNC; and it is further

ORDERED that the failure to specifically describe or include any

particular provisions of the ISA shall not diminish or impair the effectiveness of such

provision, it being the intent of the Court that BNC is authorized to perform under the

ISA in its entirety; and it if further

       ORDERED that pursuant to sections 105(a), 363(b)(1) and 503 of the

Bankruptcy Code, BNC is authorized, but not directed, to effect payment of $504,455.24

to Aurora in full and final satisfaction of the Post Petition Services through a reduction of

the Receivable;[1] and it is further

       ORDERED that, notwithstanding Rule 6004(h) of the Federal Rules of

Bankruptcy Procedure, this Order shall take effect immediately; and it is further

       ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

       ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to the implementation and/or interpretation of this

Order; and it is further

Dated: _____, 2011
      New York, New York

 

                          _____
                          UNITED STATES BANKRUPTCY JUDGE

---

[1] Capitalized terms that are used herein, but not defined, have the meanings ascribed to them in the Motion.