ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

Attorneys for Plaintiffs

[Additional counsel appear on signature page.]

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LEHMAN BROTHERS HOLDINGS INC., *et al.*,<br><br>　　　　　　　　　　Debtor.<br><br>KA KIN WONG, *et al.*,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, *et al.*,<br><br>　　　　　　　　　　Defendants. | Case No. 08-13555-JMP<br><br>Chapter 11<br><br><br><br>Adversary Proceeding<br>No. 09-01120-JMP |

PLAINTIFFS' OBJECTION TO [PROPOSED] SIXTH SUPPLEMENTAL ORDER
PURSUANT TO SECTIONS 105 AND 365 OF THE BANKRUPTCY CODE TO ESTABLISH
PROCEDURES FOR THE SETTLEMENT OR ASSUMPTION AND ASSIGNMENT OF
PREPETITION DERIVATIVE CONTRACTS

616717_1

# TABLE OF CONTENTS

**Page**

I.   The Proposed Order Concerns the Minibond Noteholders' Adversary Proceeding ............ 1

II.  The Proposed Order Lists the "Saphir Notes" that Collateralize the Minibonds ................ 5

III. This Court Cannot "Reverse" a District Court Order Regarding the Minibond Noteholders' Adversary Proceeding – a Proceeding Focused on the "Saphir Notes" .................................................................................................................................. 6

IV.  This Court Should Not Allow LBSF to Undermine Appellate Review to "Leverage" Millions of Dollars from the Minibond Noteholders and Rewrite the Terms of Their Collateral – the Saphir Notes .................................................................... 9

V.   Conclusion ................................................................................................................... 12

TO:   THE HONORABLE JAMES M. PECK, UNITED STATES BANKRUPTCY JUDGE:

Ka Kin Wong, Siu Lui Ching, Tim Choy Fung, Lin Tei Tse, Sau King Tse, Lai Kuen Chan, Fuk Shing Wong, Siu Kwan Wong, Yee Ming Shen, and Yuen Fun Tang, derivatively on behalf of a trust (the "HSBC Bank Trust") administered by HSBC Bank USA, National Association ("HSBC Bank") and on behalf of themselves, as well as all others similarly situated (hereinafter referred to collectively as the "Minibond Noteholders" or "Plaintiffs"), by and through their undersigned counsel, hereby file their objection to debtors' [Proposed] Sixth Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code To Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts, (*see* Dkt. No. 15432 (the "Proposed Order")), and respectfully state in support thereof as follows:

1. Sections 105 and 365 of the Bankruptcy Code, 11 U.S.C. §§105 and 365, do not provide this Court with the authority to enter the Proposed Order because it conflicts with District Court orders.

## I. The Proposed Order Concerns the Minibond Noteholders' Adversary Proceeding

2. This objection is related to an adversary proceeding pending before this Court. The proceeding involves a dispute between the Minibond Noteholders and debtor Lehman Brothers Special Financing Inc. ("LBSF"), among others. *See Wong et al. v. HSBC Bank USA, Inc.*, No. 09-01120-JMP (Bankr. S.D.N.Y. Mar. 12, 2009) (the "Adversary Proceeding").

3. The Minibond Noteholders are investors who paid approximately $1.5 billion to acquire collateralized notes issued by a special purpose vehicle controlled by LBSF, Pacific International Finance Limited ("Pacific Finance"). Pacific Finance's collateralized notes are commonly and formally referred to as "Minibonds." LBSF and non-debtor HSBC Bank used the $1.5 billion of issuance proceeds obtained from the Minibond Noteholders to purchase "collateral"

- 1 -

616717_1

in order to secure Pacific Finance's obligations to the Minibond Noteholders. To ensure this "collateral" was liquidated or distributed to the Minibond Noteholders as Pacific Finance's investors, Pacific Finance placed the collateral in the HSBC Bank Trust. Thus, HSBC Bank now holds the Minibonds collateral (the "Minibonds Collateral"), which the parties to the Adversary Proceeding also refer to as the "Saphir Notes."

4.  Because LBSF selected its corporate affiliate Lehman Brothers Holdings Inc. ("Lehman") to provide necessary credit support to the entire Minibonds program, when Lehman became insolvent during the summer of 2008, an event of default occurred under the Minibonds program. Once an event of default occurred, the Minibonds Collateral – again, the Saphir Notes – became mandatorily redeemable at or near par. Under such circumstances, the Minibond Noteholders should have recovered nearly all of their investment capital. However, during the summer of 2008, LBSF and Lehman colluded with HSBC Bank to conceal the Lehman group's insolvency while HSBC Bank moved to protect its own interests at the Minibond Noteholders' expense.

5.  In August 2008, for example, HSBC Bank and its affiliates ("HSBC") demanded that Lehman surrender nearly a billion dollars in liquidity. HSBC cut off this liquidity at a time when Lehman needed it most. These and other facts showing that HSBC and Lehman worked together over the summer of 2008 to terminate their business dealings were revealed in the Report of Anton R. Valukas, Examiner, dated March 11, 2010 (the "Valukas Report").[1]

---

[1] The Valukas Report (including all of its underlying documents made available to the public) are incorporated herein by reference, but are not attached given the volume of those documents. Copies of these materials are publicly available at http://lehmanreport.jenner.com/(last visited April 3, 2011).

6.     HSBC knew that Lehman was insolvent before the rest of the world did.  HSBC is not responsible for Lehman's bankruptcy, but it certainly did not help matters that HSBC was cutting off Lehman's access to liquidity when Lehman needed it most.  The following allegations in the Amended Class Action and Verified Derivative Complaint (the "Amended Complaint") are based on the Valukas Report and its supporting documentation:

> Although HSBC and Lehman had been business partners since the 1970s, by mid-2008, HSBC concluded that Lehman was insolvent. Project Milan served to "[h]olistically protect *the HSBC organization's interests*, thereby limiting total losses" and operated quietly to avoid "market signaling" that . . . "could precipitate the exit of *other* creditors, counterparties &/*or clients* thereby . . . potentially crystallizing *our losses*."
>
> HSBC cut or dumped over $2 billion in exposure to Lehman before Lehman went under.  But it did so quietly.  Rather than starting a run on Lehman and getting only some of its money, HSBC's task force decided to walk to Lehman and take it all.  When Lehman resisted HSBC's demands for $1 billion in cash to keep clearing trades in August 2008, HSBC threatened to put Lehman out of business.  In the words of a senior Lehman executive, "'[b]asically they [HSBC] were not going to allow us to do business. . . . *They put a gun to our head*.'"  "*Not granting HSBC's demand would have been 'terminal' for Lehman*."
>
> HSBC Bank, Lehman and LBSF joined forces to take retail investors' money.  When Lehman started to fall apart by the summer of 2008, HSBC Bank did not declare the Minibonds mandatorily redeemable – a duty it owed to the Minibond holders.  Instead, HSBC engaged in self-dealing, protected "the HSBC organization's interests," and hung the Minibond investors out to dry.

*See* Ex. A, ¶¶10-12.[2]

7.     The Valukas Report and its underlying documents demonstrate that HSBC Bank executives – executives of the specific corporate entity that was the Minibonds trustee and was supposed to terminate the Minibonds program upon Lehman's default – were also members of an elite internal HSBC program that HSBC first called "Project Opaque" and then called "Project

---

[2]    The quotation from a former Lehman executive that HSBC "put a gun to our [Lehman's] head" to take money from Lehman is from the Valukas Report.

- 3 -

616717_1

Milan." *Id.*, ¶¶87-91. The entire purpose of Project Milan was to trim and then eliminate HSBC's exposure – *including* HSBC Bank's exposure – to Lehman, in a "'controlled and managed' exit." *Id.*, ¶103. But the Minibonds fell into a special category of inaction. In Project Milan terminology, the Minibonds fell into the "business as usual" category. *Id.*, ¶123.

8.  HSBC Bank could have avoided the Adversary Proceeding by simply doing for the Minibond Noteholders what it sought for itself: terminate all exposure to Lehman. While it is true that HSBC Bank could have avoided the entire Adversary Proceeding by discharging its obligations to redeem the Minibonds at or near par *before* Lehman belatedly elected to file for bankruptcy protection on September 15, 2008, even after that event, the Minibond Noteholders were still and remain entitled to recover nearly all of their investment capital. One of the reasons why is because Lehman's bankruptcy was an independent event of default under the Minibonds program, ultimately allowing the Minibonds to be redeemed at or near par. *Id.*, ¶177. Faced with this reality, in late 2008, LBSF ordered HSBC Bank not to liquidate or distribute the Saphir Notes at par. Since that time, LBSF has gone to work in this and other jurisdictions to rewrite the terms of the Saphir Notes in an effort to improperly seize the Minibond Collateral and thereby fill the void between its assets and liabilities.

9.  The Adversary Proceeding seeks to resolve the question of whether LBSF has the right to continue interfering with the Minibond Noteholders' property rights in the Saphir Notes; specifically, whether LBSF may collude with HSBC Bank to prevent the distribution of the Saphir Notes or rewrite the terms of the Saphir Notes – notes that LBSF did not buy and does not own – based on a novel construction of the Bankruptcy Code's *ipso facto* provisions, 11 U.S.C. §§365(e)(1) and 541(c)(1)(B).

## II. The Proposed Order Lists the "Saphir Notes" that Collateralize the Minibonds

10. Focusing on the Proposed Order now before this Court, it is clear that the Proposed Order is yet another attempt by LBSF to attack the Saphir Notes. The list of approximately $1.5 billion in notes that debtors casually list in Exhibit 1 to the Proposed Order are in fact the "Saphir Notes" that are the subject of the Adversary Proceeding between Plaintiffs and LBSF. These are the notes that HSBC Bank holds in the HSBC Bank Trust for the Minibond Noteholders' benefit. Ex. A, ¶¶40-57. This fact is further demonstrated by a Notice issued by HSBC Bank on October 20, 2008. *See* Ex. B.[3]

11. Debtors would like to avoid any decision on the merits in the Adversary Proceeding. Today, LBSF seeks to extract hundreds of millions of dollars in payments that erode the Saphir Notes, and eliminate the Minibond Noteholders' ability to recover all of the principal and interest to which they are entitled as Minibond Noteholders and trust beneficiaries of the HSBC Bank Trust. But debtors cannot avoid the Adversary Proceeding by filing their six-page Proposed Order and hoping this Court does not appreciate its significance.

12. The Proposed Order is plainly inconsistent with existing District Court orders concerning the Adversary Proceeding and a related series of Saphir Notes. Thus, contrary to debtors' vague arguments in support of the Proposed Order, this Court does not have authority under §§105 or 365 of the Bankruptcy Code, or any other provision of the Bankruptcy Code, to enter the

---

[3] The HSBC Bank Notice shows at Annex A the series of Minibonds issued by Pacific Finance in the column entitled "Series," and lists in the column entitled "Pacific Underlying Security," the notes held in the HSBC Bank Trust to collateralize the Minibonds. These are the same Notes that debtors identify at Exhibit 1 to the Proposed Order, and the same notes that the parties to the Adversary Proceeding have referred to as the "Saphir Notes" or the "Minibond Collateral" throughout the course of the Adversary Proceeding.

Proposed Order.  To do so would fly in the face of a District Court order reversing a prior decision of this Court concerning the Minibond Noteholders and would ignore another District Court order holding this Court's *ipso facto* decision cannot and should not be isolated from judicial review.

13.     The Minibond Noteholders address the two decisions that preclude the Court from entering the Proposed Order in turn.

**III.    This Court Cannot "Reverse" a District Court Order Regarding the Minibond Noteholders' Adversary Proceeding – a Proceeding Focused on the "Saphir Notes"**

14.     The Proposed Order is a blatant attempt to make an end run-around a District Court order.  For that reason alone, this Court cannot enter it.

15.     LBSF is dissatisfied with Judge Pauley's August 9, 2010 Memorandum and Order (the "August 9 Order"), in which the District Court reversed this Court's rulings that the Minibond Noteholders lacked standing to sue LBSF to protect their property interests in the Sapir Notes.  *See* Ex. C.

16.     In reversing this Court's decision that the Minibond Noteholders' lacked standing to protect the Saphir Notes and sue LBSF, the District Court carefully reviewed the documentation LBSF submitted in support of its motion to dismiss.  Referring to Minibonds trust documentation, the District Court stated: "The Saphir Notes were placed in trust with HSBC Bank as Trustee." *Id*. at 4.  The Minibonds issuer, Pacific Finance, "secured its obligation to pay interest to the Minibonds holders" by purchasing the Saphir Notes.  *Id*. at 3.

17.     Roundly rejecting LBSF's contentions that it would be "futile" to allow the Minibond Noteholders to sue LBSF to protect and recover the Saphir Notes in the name of the HSBC Bank Trust, the District Court made several findings that are relevant here.  First, the District Court observed that "[d]espite representations in the Minibonds prospectuses that neither Lehman Brothers

- 6 -

616717_1

nor any of its subsidiaries exercised control over the Issuer [Pacific Finance], Lehman Brothers *designed* the Minibonds program *and directed* the Issuer's activities," and that "[a]s a party to the trust deeds, *LBSF was substantially involved in that process*." *Id.* at 12 (emphasis added). After noting Lehman's control over Pacific Finance, the District Court then noted that Pacific Finance "then created a trust that, in certain circumstances, distributes its only collateral to a *Lehman* entity, rather than the trust's *sole* beneficiary" – that is, HSBC Bank, an entity that holds the Saphir Notes for Plaintiff's benefit. *Id*. The District Court stated, "[j]uxtaposed against the promise that the Minibonds would be secured by highly-rated collateral, this is an odd result." *Id*. LBSF reached this "odd result" with some help.

18.   Indeed, the District Court focused specifically on testimony showing HSBC Bank worked together with the debtors to create the "odd" Minibonds and Saphir Notes. Summarizing the original complaint, the District Court noted that the "details of Lehman Brothers' involvement emerged during an inquiry conducted by Hong Kong regulatory authorities." *Id*. at 3. There, "officers of HSBC Holdings P[LC] ('HSBC Holdings'), the company at the top of the HSBC pyramid, testified that *Lehman Brothers appointed HSBC Bank* as trustee of the Minibonds collateral," which consists of the Saphir Notes. *Id*. And the issuer of the Minibonds, was for "'all intents and purposes *a creature of Lehman's design*.'" *Id*.

19.   Having specifically cited facts showing debtors hired HSBC Bank to be the trustee of the Minibonds collateral – *i.e.*, the Saphir Notes – and facts showing HSBC Bank just turned control over those assets to Lehman, the District Court also analyzed related facts in the Valukas Report. *Id*. at 13. As the District Court explained, the Valukas Report "reveals *cooperation* between HSBC and Lehman Brothers at the highest levels during Lehman Brothers' collapse." *Id*. These and other facts supported the District Court's conclusion "that the Bankruptcy Court erred in finding that Plaintiffs

cannot allege special circumstances" sufficient to confer standing upon the Minibond Noteholders to protect and recover the Saphir Notes. *Id*. at 12.

20. Plaintiffs respectfully submit that the District Court did not spend time conducting oral argument (*see* Ex. D), examining the facts surrounding a complex series of interrelated transactions, and providing a written opinion and order so that LBSF can treat it as a "recommendation." It is not a recommendation. It is an order. LBSF is bound by it. LBSF cannot circumvent it by slipping a six-page "proposal" onto the Bankruptcy Court's docket, which has over 15,000 entries on it – excluding the many related adversary proceedings on this Court's docket.

21. The Exhibit to the debtor's Proposed Order lists **all** and **only** those Saphir Notes that are the subject of Judge Pauley's August 9 Order. Yet, they did not **even mention** that Order.

22. It is no answer to say that the Proposed Order is unrelated to Judge Pauley's August 9 Order. There, the District Court references the Saphir Notes by name **twelve times**. *Id.* at 3-5, 14, 15. The entire context of the District Court's orders focuses on how the Minibond Noteholders should be permitted to proceed with their claims against LBSF precisely because LBSF created Pacific Finance and appointed HSBC Bank to run the Minibonds program and administer the Saphir Notes – but the entire program was designed to benefit Lehman, an "odd result" on any fair reading of the facts of the Adversary Proceeding. *Id*. at 12.

23. In this context, LBSF wants legal authorization to negotiate a "settlement" with HSBC Bank and the issuers of the Minibonds and the Saphir Notes and entities under their control – all of whom were or are controlled by the debtors. In short, LBSF wants another opportunity to negotiate a settlement under circumstances that are ideal to LBSF. This Court should reject the Proposed Order and permit LBSF to "negotiate" such a settlement only after the merits of LBSF's *ipso facto* arguments are subjected to appellate review.

**IV.    This Court Should Not Allow LBSF to Undermine Appellate Review to "Leverage" Millions of Dollars from the Minibond Noteholders and Rewrite the Terms of Their Collateral – the Saphir Notes**

24.    Although Judge Pauley's August 9 Order concerning the Saphir Notes defeats the Proposed Order as a threshold matter, Judge McMahon's September 21, 2010 Decision and Order Granting BNY Corporate Trustee Services Limited's Motion for Leave to Appeal (the "September 21 Order"), concerning Saphir Notes that are substantially similar to those supporting the Minibonds, further defeats the Proposed Order. *See* Ex. E.

25.    Reviewing this Court's decision concerning other Saphir Notes that have substantially similar priority provisions as those present in the Saphir Notes supporting the Minibonds, Judge McMahon stated that the subject Saphir Notes were issued by an entity "***created by*** Lehman Brothers International (Europe) called Saphir Public Limited Co. ('Saphir')." Ex. E at 2. The fact that the issuer of the Saphir Notes was "created" by a Lehman entity is, again, relevant to the Proposed Order.

26.    Like Judge Pauley's August 9 Order, Judge McMahon's September 21 Order supports the conclusion that LBSF wants to negotiate under the most favorable circumstances it can design, while avoiding judicial review of the very "priority provision" LBSF mistakenly claims entitles it to hundreds of millions of dollars of other people's money. Again, neither LBSF nor Lehman used any of their capital (and by extension, any of their creditors' capital) to buy any of the Minibonds or Saphir Notes at issue in the Adversary Proceeding.

27.    Under these circumstances, it is clear that LBSF does not seek to avoid a penalty for filing for bankruptcy. Rather, it wants a bonus for doing so. LBSF seeks to use its bankruptcy to obtain assets that never did (and do not now) belong to it. Judge McMahon's September 21 Order is particularly prescient in this regard:

- 9 -

616717_1

> In the end, it is not difficult to see LBSF's arguments for what they really are: an attempt to use the English proceedings to insulate Judge Peck's decision from appellate review for as long as possible. For many months, LBSF opposed the entry of any order memorializing the Bankruptcy Court's decision; now, it vigorously seeks to forestall any review. LBSF's efforts to shield Judge Peck's unprecedented and – for LBSF – extremely favorable decision from review are, of course, not surprising; indeed, ***LBSF does not deny that, since the decision was handed down, it has used it as leverage in settlement negotiations concerning billions of dollars worth of similar transactions***. LBSF's desire to insulate Judge Peck's ruling from appellate scrutiny only further demonstrates the need for immediate review.

*See* Ex. E at 15 (emphasis added).

28. Recent reports strongly suggest that Judge McMahon was exactly right. It appears that LBSF is attempting to use this Court's January 25, 2010 opinion, (*see In re Lehman Bros. Holding Inc.*, 422 B.R. 407, 422 (Bankr. S.D.N.Y. 2010)) concerning the payment provisions in notes that are substantially the same as those at issue in the Adversary Proceeding – and avoid appellate review – to "leverage in settlement negotiations concerning billions of dollars worth of similar transactions." *Id*. Reports started circulating on or about March 28, 2011, one day before LBSF filed the Proposed Order, that LBSF is poised to extract hundreds of millions of dollars from the HSBC Bank Trust in yet another proposed settlement. LBSF is close to achieving the bankruptcy bonus it is not lawfully entitled to obtain.

29. Meanwhile, HSBC Bank continues to "[h]olistically protect ***the HSBC organization's interests***, thereby limiting total losses," just as it did when Lehman was suffering from illiquidity during the summer of 2008. Ex. A, ¶10. According to one recent report, for example, HSBC Bank purports to extract the following benefits for itself in a proposed settlement concerning the Minibonds:

> The Distributing Banks have ***made available to the Trustee [HSBC Bank]*** approximately HK$291 million (equivalent to the amount of commission income they received as distributors of Minibonds) by way of an Expenses Funding Agreement dated 30 October 2009. As part of this final resolution proposal, the Distributing Banks ***will increase the funding available to the Trustee [HSBC Bank]***

- 10 -

616717_1

> *to approximately HK$662 million to pay for all fees, expenses and other amounts which may be incurred in connection with the recovery of the collateral of the outstanding Minibonds and the Trustee's role in respect of the Minibonds.* Without this funding, the Trustee would have been entitled to retain all or a part of the Collateral to indemnify it (and its agents) for liabilities and expenses arising from the settlement process. Such retention would reduce the amounts available to holders of the Relevant Series.

*See* Ex. F at 2.

30. In other words, as part of the "negotiation" that LBSF conducted with HSBC Bank and others, HSBC Bank has extracted a total of HK$953 million (or about $122 million in U.S. Dollars) in value and free insurance, and has contributed nothing to repay the Minibonds, despite HSBC Bank's central role causing the Minibonds crisis.

31. Other reports indicate that LBSF will attempt to extract even more, on average approximately 20% of the value of the Saphir Notes, or about $300 million to which LBSF is not entitled. *See* Ex. G. To extract approximately another $422 million in value from the Minibonds program, however, LBSF must "obtain[] . . . confirmation that the Derivatives Procedures Order applies to the relevant transactions." *Id.* at 2. The six-page proposal that LBSF filed in the Proposed Order is thus another odd result that LBSF seeks by (a) ignoring Judge Pauley's August 9 Order; and (b) attempting to use this Court's *ipso facto* rulings to leverage settlements, just as Judge McMahon's September 21 Order predicted LBSF would do.

32. There is no good reason why HSBC Bank and LBSF should walk away from the Minibonds transaction with even more benefits from the Minibonds program than they have already received. Plaintiffs' Opposition to Lehman and HSBC Defendants' Motions to Dismiss the Amended Class Action and Derivative Complaint sets forth the reasons why no HSBC or Lehman entity should be permitted to obtain a bonus due to Lehman's bankruptcy, and that the Minibond Noteholders have standing to prevent this unjust result. *See* Ex. H.

33. LBSF and HSBC Bank must answer the Amended Complaint, and the Court should not condone LBSF's efforts to extract hundreds of millions of dollars from the Minibonds program without any judicial review of LBSF's reasons for demanding more payments.

## V. Conclusion

Plaintiffs respectfully request the Court reject the Proposed Order.

DATED: April 4, 2011

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
LUKE O. BROOKS
JASON C. DAVIS
MATTHEW S. MELAMED


               s/ Jason C. Davis
               JASON C. DAVIS

Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
lukeb@rgrdlaw.com
jdavis@rgrdlaw.com
mmelamed@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SPENCER A. BURKHOLZ
DARRYL J. ALVARADO
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
619/231-7423 (fax)
spenceb@rgrdlaw.com
dalvarado@rgrdlaw.com

- 12 -

616717_1

ROBBINS GELLER RUDMAN
 & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
drosenfeld@rgrdlaw.com

GENOVESE JOBLOVE & BATTISTA, P.A.
JOHN H. GENOVESE
PAUL J. BATTISTA
DAVID C. CIMO
ROBERT F. ELGIDELY
Bank of America Tower, 44th Floor
100 Southeast Second Street
Miami, FL  33131
Telephone:  305/349-2300
305/349-2310 (fax)

Attorneys for Plaintiffs

# CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2011, I electronically filed **Plaintiffs' Objection to [Proposed] Sixth Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition Derivative Contracts** through the Court's CM/ECF system on the parties requesting electronic service and by U.S. Mail, First Class, Postage Prepaid to the following persons:

Weil Gotshal & Manges LLP
*Attorneys for the Debtors, and Defendants to the Adversary Proceeding, Lehman Brothers Holdings Inc. and Lehman Brothers Special Financing Inc.*
767 Fifth Avenue
New York, NY  10153
Telephone: (212) 310-8000
Telecopier: (212) 310-8007
Ralph I. Miller, Esq.
Richard W. Slack, Esq.
Peter Gruenberger, Esq.
Scarlett Collings, Esq.

Milbank, Tweed, Hadley & Mccloy LLP
*Attorneys for the Creditors' Committee*
1 Chase Manhattan Plaza
New York, NY  10005
Telephone: (212) 530-5000
Telecopier: (212) 530-5219
Dennis F. Dunne, Esq.

Pryor Cashman LLP
*Attorneys for HSBC Bank USA, N.A.*
7 Times Square
New York, NY  10036
Telephone: (212) 326-0421
Telecopier: (212) 798-6355
Tina M. Moss, Esq.

Chadbourne & Parke LLP
*Attorneys for HSBC Bank USA, N.A. as Trustee*
30 Rockefeller Plaza
New York, NY  10112
Telephone: (212) 408-5100
Telecopier: (212) 541-5369
David M. LeMay, Esq.
Christy L. Rivera, Esq.

616717_1

Reed Smith LLP
*Attorneys for The Bank of New York Mellon, The Bank of New York Mellon Trust Company, N.A. and Defendant BNY Corporate Trustee Services Limited*
599 Lexington Avenue
New York, NY  10022
Telephone: (212) 521-5400
Telecopier: (212) 521-5450
Eric A. Schaffer, Esq.
Michael J. Venditto, Esq.

Cahill Gordon & Reindel LLP
*Attorneys for Defendant HSBC Bank USA, N.A.*
80 Pine Street
New York, NY  100050-1702
Telephone: (212) 701-3000
Telecopier: (212) 269-5420
Howard G. Sloane
Patricia Farren
David G. Januszewski

Office of the U.S. Trustee for the
Southern District of New York
*Counsel for U.S. Trustee*
33 Whitehall Street, 21st Floor
New York, NY  10004
Elisabetta G. Gasparini
Andrea B. Schwartz
Tracy Hope Davis

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on April 4, 2011.

                                                s/ Jason C. Davis
                                                  JASON C. DAVIS

ROBBINS GELLER RUDMAN
 & DOWD LLP
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA  94104
Telephone:  415/288-4545
415/288-4534 (fax)
E-mail: Jdavis@rgrdlaw.com

616717_1