Hearing Date:  April 13, 2011 at 10:00 a.m.

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | (Jointly Administered) |

-------------------------------------------------------------------x

**DEBTORS' OBJECTION TO MOTIONS**
**OF COLORADO PLAINTIFFS FOR (I) RELIEF FROM THE**
**AUTOMATIC STAY, AND (II) EXAMINATION OF LEHMAN BROTHERS**
**HOLDINGS INC., PAMI STATLER ARMS LLC, AND LB ROSE RANCH LLC**
**PURSUANT TO RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), PAMI Statler Arms LLC ("PAMI

Statler"), LB Rose Ranch LLC ("Rose Ranch," together with LBHI and PAMI Statler, the

"Lehman Debtors") and their affiliated debtors (collectively, the "Debtors") in the above-

captioned cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"),

for their objection to the motions of Jamin Cook, Tiffany Cook, Vaughan Counts, Suzanne

Counts, Kevin Craig, Thisha Craig, Charlie Lawson, Sarahliz Lawson, Stephanie Mosher, Steve

New, Kori New, Craig Willis, Pamela Willis, Kurt Kornreich, Helen Kornreich, Sohrab Amini,

M.D., J. Christine Amini, Neil Ross, Gary Gray, Michael Cryan, Brian Alonge, Daniel Hock,

Toni Hock, David Ice, Lisa Ice, Richard Moore, Patrick Nesbitt, Andre Pontin, Julie Pontin,

James Vidakovich, The James Vidakovich Revocable Trust, Kristin F. Davis, Joseph S. Davis,

Chadwick Mickschl, Sarah Mickschl, Tina Rochowiak, Jamie Prough, Michael Rochwiak, and

Martin Rochowiak. (collectively, the "Colorado Plaintiffs"), dated March 18, 2011 for (i) relief

from the automatic stay (the "Stay Motion") [Docket No. 15202], and (ii) examination and

production of documents by the Lehman Debtors pursuant to Rule 2004 of the Federal Rules of

Bankruptcy Procedure (the "2004 Motion," together with the Stay Motion, the "Motions")[1]

[Docket No. 15200], respectfully represent:

## I.
## Preliminary Statement

1.       The Colorado Plaintiffs are plaintiffs in a litigation captioned *Jamin Cook,*

*et al. v. Ironbridge Homes, LLC, et al.*, (Case No. 2010CV142) that is currently pending in the

District Court for Garfield County, Colorado (the "Colorado Litigation").  The Colorado

Litigation involves claims by the Colorado Plaintiffs arising out of certain alleged defects in the

residences that the Colorado Plaintiffs purchased from defendant Ironbridge Homes, LLC or one

of its affiliates (collectively, "Ironbridge").  The Lehman Debtors are not affiliated with

Ironbridge or any of the other defendants in the Colorado Litigation, nor are they parties to the

Colorado Litigation.

2.       Throughout these chapter 11 cases, the Lehman Debtors have been liberal

in their willingness to consent to relief from the automatic stay where parties in interest

---

[1] As set forth in the Lehman Debtors' preliminary response to the 2004 Motion, which was filed on
March 31, 2011 [Docket No. 15222], the Colorado Plaintiffs' filing and notice of the 2004 Motion was
improper under rule 9074-1 of the local rules for the United States Bankruptcy Court for the Southern
District of New York (the "Local Rules").  The usual remedy for a party's failure to comply with Local
Rule 9074-1 is for such party to re-notice the relevant pleading – something that the Colorado Plaintiffs
have failed to do as of the date hereof.  Out of an abundance of caution, however, the Lehman Debtors
submit this response to the 2004 Motion in case the Court decides to address the merits of the 2004
Motion at the hearing scheduled for April 13, 2011 at 10:00 a.m.

approached the Lehman Debtors with well-articulated claims and agreed to limit recoveries, if any, to available insurance proceeds.[2]  That spirit of cooperation, however, must be tempered by the reality that the Lehman Debtors' insurance coverage, while substantial, is not infinite and every dollar that is paid out to defend frivolous or unsubstantiated claims is a dollar that will not be available to compensate the Lehman Debtors' legitimate creditors that have claims against the Lehman Debtors' insurance policies.

3.      When the Colorado Plaintiffs first contacted the Lehman Debtors in November 2010, the Lehman Debtors suggested that the matter could be resolved on a consensual basis and made a simple request for information on the specific claims that the Colorado Plaintiffs believe they have against the Lehman Debtors.  After four months, the exchange of extensive correspondence, and the filing of the Motions, the best explanation that the Colorado Plaintiffs have been able to muster is vague references to the "Debtors' design, development and construction of [a] golf course" that somehow damaged the Colorado Plaintiffs' residences.  2004 Motion ¶ 6.  The obvious inference that arises from the Colorado Plaintiffs' intransigence is that they plan to tailor their claims to the coverage available under the Lehman Debtors' insurance policies.  This conclusion is further reinforced by the fact that none of the Colorado Plaintiffs filed claims against the Lehman Debtors (or any of the other Debtors)

---

[2] *See, e.g.*, Stipulation, Agreement, and Order Between the Debtors and Anita Bryant Providing for Relief from the Automatic Stay for the Limited Purpose of Permitting Anita Bryant to Continue the Action and Limit Any Recovery to the Insurance Proceeds, January 29, 2009 [Docket No. 2687]; Stipulation, Agreement, and Order Between the Debtors and Charise Carroll Providing for Relief from the Automatic Stay for the Limited Purpose of Permitting Charise Carroll to Commence an Action and Limiting any Recovery to Insurance Proceeds, April 8, 2009 [Docket No. 3304]; Stipulation, Agreement, and Order Between LB 745 LLC and Jamie Desmond Providing for Limited Relief from the Automatic Stay, November 23, 2009 [Docket No. 5914].

relating to golf course design, development or construction and, therefore, none of the Colorado

Plaintiffs has any right to recover directly against the Lehman Debtors' estates.[3]

4.       In situations such as these, the Lehman Debtors believe that they have a

duty to all parties in interest to act as a gatekeeper to insure that assets of their estates and

proceeds of their insurance policies are utilized appropriately.  By letter, dated March 30, 2011

(the "Compromise Letter"), a copy of which is attached hereto as Exhibit A, the Lehman Debtors

suggested a reasonable resolution of this matter to the Colorado Plaintiffs.  As set forth in the

Compromise Letter, if the Colorado Plaintiffs provide the Lehman Debtors with reasonable

information on the basis and amount of their claims, the Lehman Debtors will share their

relevant insurance policies – subject to an appropriate confidentiality agreement.  Then, to the

extent that the Colorado Plaintiffs wish to proceed with the Colorado Litigation, the Lehman

Debtors will enter into a stipulation with the Colorado Plaintiffs pursuant to which the Lehman

Debtors will consent to relief from the automatic stay for the sole purpose of allowing the

Colorado Plaintiffs to name the appropriate Lehman Debtor as a nominal defendant, and the

Colorado Plaintiffs will agree to limit their recoveries, if any, to available insurance proceeds.

To date, the Colorado Plaintiffs have not responded to the Compromise Letter.

5.       The Lehman Debtors' proposed resolution of the issues strikes an

appropriate balance between the Colorado Plaintiffs' interest in vindicating their rights, if any,

against the Lehman Debtors' insurance policies, and the interests of the Lehman Debtors and

other parties in interest in avoiding wasteful and unnecessary expenditure of estate resources and

insurance proceeds.  To the extent that the Colorado Plaintiffs have legitimate claims, the

---

[3] As will be discussed below in greater detail, one of the Colorado Plaintiffs filed a claim against Rose Ranch alleging "sale of defective property."  This claim is unrelated to the allegations set forth in the Motions.

Lehman Debtors will be able to quickly and efficiently determine which of their insurance policies potentially provide coverage, verify that the such claims are not subject to policy exclusions, and confirm that the policies retain sufficient proceeds to cover such claims in the event that the Colorado Plaintiffs are able to establish liability.  Moreover, the Colorado Plaintiffs will not be prejudiced by limiting their recoveries, if any, to insurance proceeds because they did not file claims against the Lehman Debtors relating to the golf course and, therefore, are not eligible to receive distributions from any of the Lehman Debtors' estates.  In the event that the Colorado Plaintiffs will not agree to the resolution suggested by the Lehman Debtors, the relief requested in the Motions should be denied, because the Colorado Plaintiffs have failed to establish that they are entitled to either Bankruptcy Rule 2004 discovery or relief from the automatic stay.

## II.
## Background

6.    On September 15, 2008, LBHI commenced with this Court a case under chapter 11 of the Bankruptcy Code.  PAMI Statler and Rose Ranch commenced their chapter 11 cases on September 23, 2008 and February 9, 2009, respectively.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.    Rose Ranch is the owner of a country club development located in Garfield County, Colorado.  In the ordinary course of its business, Rose Ranch sold residential building lots to Ironbridge, an unrelated third party.  Rose Ranch is a fourth tier subsidiary of LBHI.

8.    PAMI Statler is the owner of an apartment building located at 1127 Euclid Ave. in Cleveland, Ohio.  PAMI Statler is also a fourth tier subsidiary of LBHI.

9.      Upon information and belief, the Colorado Plaintiffs are homeowners in the Rose Ranch development who purchased their properties from Ironbridge or another third party.

10.      On July 2, 2009, this Court entered an order pursuant to section 502(b)(9) of the Bankruptcy Code and rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") establishing September 22, 2009 (the "Bar Date") as the deadline for parties in interest to file proofs of claim against the Lehman Debtors (the "Bar Date Order") [Docket No. 4271].

11.      Tisha Craig ("Ms. Craig"), one of the Colorado Plaintiffs, filed a claim against Rose Ranch on September 22, 2009 (the "Craig Claim") alleging "sale of defective property."  A copy of the Craig Claim is attached hereto as Exhibit B.  None of the other Colorado Plaintiffs filed claims against the Lehman Debtors or any of the other Debtors.

### III.
### The Motions

**A.      The Stay Motion**

12.      Pursuant to the Stay Motion, the Colorado Plaintiffs assert that "the golf course constructed by the Debtors is a contributing cause to the damages [that the Colorado Plaintiffs] are suffering," but, beyond that, do not provide any useful information on the specific acts or omissions of the Lehman Debtors that purportedly damaged the Colorado Plaintiffs.[4] Stay Motion ¶ 7.

---

[4] The Stay Motion also references an amended complaint that was filed in the Colorado Litigation (the "Complaint"). *Id.* at 8.  The claims for relief contained in the Complaint relate to the construction or repair of the Colorado Plaintiffs' properties, breach of warranty, misrepresentation/nondisclosure, violations of state consumer protection laws, and negligence of design professionals – they do not have any obvious connection to the damages allegedly caused by Rose Ranch's golf course.

13.     In support of the Stay Motion, the Colorado Plaintiffs cite sections 362(d)(1) and (2) of the Bankruptcy Code.[5]  Stay Motion ¶ 28.  The Colorado Plaintiffs' principal theory appears to be that they are entitled to relief from stay for "cause" as such term is explained in the Second Circuit's decision in *In re Sonnax*, 907 F.2d 1280 (2d Cir. 1990).

14.     The Stay Motion is unclear with respect to the issue of whether the Colorado Plaintiffs are willing to limit their recoveries, if any, to the proceeds of the Lehman Debtors' insurance policies.  While the Stay Motion contains numerous representations that the Colorado Plaintiffs are only seeking "to name the Debtors as defendants in [the Colorado Litigation] so as to recover asserted damages to the extent of available insurance," *id*. at ¶¶ 1, 15, 28, it also contains an assertion that at some later date, the Colorado Plaintiffs may "opt to file a proof of claim and share in any distribution that may be forthcoming from property that is part of the estate in the event the insurance proceeds are insufficient to satisfy their claims."  *Id.* at ¶ 25. The Colorado Plaintiffs do not explain how they plan to reconcile this course of action with the Bar Date Order.

**B.    The 2004 Motion**

15.     Pursuant to the 2004 Motion, the Colorado Plaintiffs allege that the Lehman Debtors' design, development and construction of a golf course damaged the Colorado Plaintiffs' residences.  2004 Motion ¶ 6.  As a result of that alleged damage, the Colorado Plaintiffs assert that they are entitled to bring claims against the Lehman Debtors and their insurance policies and, pursuant to Bankruptcy Rule 2004, to review all of the Lehman Debtors' insurance policies from 2000 to the present.  *Id*. at ¶¶ 8, 11.

---

[5] As will be discussed in greater detail below, the Colorado Plaintiffs fail to offer any support for their theory they are entitled to relief from the automatic stay under section 362(d)(2) of the Bankruptcy Code and, in any case, section 362(d)(2) of the Bankruptcy Code is inapplicable.

16.     The 2004 Motion also devotes considerable effort to describing the breadth of discovery available under Bankruptcy Rule 2004.  2004 Motion ¶ 16.  Indeed, it is perhaps telling that the Colorado Plaintiffs refer to Bankruptcy Rule 2004 discovery as a "fishing expedition."  *Id*. at ¶¶ 16, 17.  Importantly, the Colorado Plaintiffs concede that there are significant difference between the breadth of discovery available under Bankruptcy Rule 2004 and discovery available under the Federal Rules of Civil Procedure.  *Id*. at ¶¶ 15, 16.  The Colorado Plaintiffs describe Bankruptcy Rule 2004 as "an investigatory tool  . . . that is undertaken . . . before the filing of a lawsuit or motion," and note that an important difference between the two forms of discovery is that discovery pursuant to Bankruptcy Rule 2004 "need not be tied to specific factual allegations" and "is subject to fewer objections on grounds of relevance than discovery issued in connection with a contested matter."  *Id*. at 15.

## IV.
## The Lehman Debtors' Response

17.     The Motions do not describe the Colorado Plaintiffs' claims in sufficient detail to allow the Lehman Debtors to determine whether there is coverage available under their insurance policies.  Claims arising from the design, development and construction of a golf course could potentially relate to any number of theories of liability including breach of contract, tortious conduct, or construction defect.  Certain of these causes of action are specifically excluded from coverage by the Lehman Debtors' insurance polices so, without further information regarding the Colorado Plaintiffs' claims, it is not possible for the Lehman Debtors to determine whether there is available insurance coverage.  Additionally, in the absence of an estimate of the amount of the Colorado Plaintiffs' claims, the Lehman Debtors are unable to be certain that there are sufficient proceeds remaining under their relevant insurance policies to satisfy such claims.

18.    Furthermore, the fact that the Colorado Plaintiffs have not been more forthcoming with the disclosure of their claims raises the possibility that the Colorado Plaintiffs are either (i) seeking to tailor their claims to available insurance proceeds, or (ii) merely trying to extract a settlement from the Debtors or their insurance carriers.  In either case, the process of negotiating an appropriate confidentially agreement and producing documents would be a waste of estate resources.  Requiring the Colorado Plaintiffs to disclose the specific nature and amount of their claims, on the other hand, strikes the appropriate balance between the Colorado Plaintiffs' interest in pursuing their claims, if any, against the Debtors' insurance policies, and the interests of all other parties in interest in ensuring that estate resources are not wasted responding to meritless claims.

**A.    The Stay Motion**

19.    Consistent with the position that they have taken throughout these chapter 11 cases, the Lehman Debtors are willing to consent to relief from the automatic stay for the limited purpose of allowing the Colorado Plaintiffs to name the appropriate Lehman Debtor as a nominal defendant in the Colorado Litigation, so long as the Colorado Plaintiffs' recoveries, if any, are limited to the proceeds of the Lehman Debtors' insurance policies.  The Colorado Plaintiffs, however, are not satisfied with this equitable resolution of the matter.  Not only do they seek access to the Lehman Debtors' insurance policies, but, apparently ignoring the Bar Date Order, they also plan to assert new claims directly against the Lehman Debtors' estates. Providing the Colorado Plaintiffs with such relief would turn the claims process on its head and result in manifest injustice to all other parties in interest in these chapter 11 cases.

20.    As discussed above, none of the Colorado Plaintiffs filed claims related to Rose Ranch's golf course against the Lehman Debtors.  The Craig Claim, which is the only

claim filed against the Lehman Debtors by a Colorado Plaintiff, asserts "sale of defective property" as the sole basis for liability and is unrelated to the Debtors' alleged design, development and construction of the golf course.  Furthermore, Ms. Craig purchased her property from Ironbridge, not from Rose Ranch.[6]  Rose Ranch, therefore, did not sell Ms. Craig defective property and the Debtors intend to object to the Craig Claim in due course.

21.    The Colorado Plaintiffs are, therefore, prohibited by the Bar Date Order from asserting any claims against the Lehman Debtors' estates.  *See In re Lehman Brothers Holdings Inc.*, 433 B.R. 113, 121 (Bankr. S.D.N.Y. 2010) ("Enforcement of the Bar Date Order is an essential part of the orderly administration of the claims that have been filed in compliance with that order"); *see also, In re Best Products Co., Inc.*, 140 B.R. 353, 360 (Bankr. S.D.N.Y. 1992) ("To allow creditors to assert claims against a debtor without regard to the establishment of a bar date would vitiate the very purpose of [the bar date].").  Accordingly, unless and until the Colorado Plaintiffs obtain relief from the Bar Date Order through the proper procedure, the Colorado Plaintiffs' sole avenue for recovery will be from insurance proceeds.

22.    The Colorado Plaintiffs' substantive argument consists primarily of a request for relief pursuant to sections 362(d)(1) and (2) of the Bankruptcy Code.  Stay Motion ¶ 28.  Section 362(d)(2) of the Bankruptcy Code, however, is irrelevant to current matter because it "is aimed at protecting a creditor's right to foreclose, *not* a creditor's right to pursue any form of litigation against the debtor in another court.'"  *Lawrence v. Motors Liquidation Co. (In re Motors Liquidation Co.)*, 2010 WL 4630327 *3 (S.D.N.Y.) (quoting *In re Northwest Airlines Corp.*, 2006 WL 2583647 *3 n.2 (Bankr. S.D.N.Y. 2006).

---

[6] A copy of the deed memorializing this transaction is attached hereto as <u>Exhibit C</u>.

23.    As discussed above, section 362(d)(1) provides that the Court may grant

relief from the automatic stay for "cause." *Sonnax*, which is cited in the Stay Motion, is the

seminal case in the Second Circuit with respect to relief from the automatic stay for cause.  In

*Sonnax*, the Second Circuit catalogued twelve factors (the "*Sonnax* Factors") to be considered

and balanced when deciding whether the Automatic Stay should be lifted.[7]  Not all of the factors

are relevant in every case, *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999),

and a court need not assign equal weight to each factor.  *In re Keene Corporation*, 171 B.R. 180,

183 (Bankr. S.D.N.Y.1994).

24.    The Stay Motion focused on three of the *Sonnax* Factors: (i) judicial

efficiency and economy, (ii) the possibility that the Lehman Debtors' insurers will assume

responsibility for the matter, and (iii) the balance of the harms.  Stay Motion ¶ 27.  With respect

to judicial efficiency and economy, the Lehman Debtors do not have an issue with the Colorado

Plaintiffs' alleged claims against the Lehman Debtors being litigated in state court – so long as

recoveries are limited to the proceeds of the Lehman Debtors' insurance policies.  Providing

---

[7] The *Sonnax* Factors are:

(1) whether relief would result in a partial or complete resolution of the issues;
(2) lack of any connection with or interference with the bankruptcy case;
(3) whether the other proceeding involves the debtor as a fiduciary;
(4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
(5) whether the debtor's insurer has assumed full responsibility for defending it;
(6) whether the action primarily involves third parties;
(7) whether litigation in another forum would prejudice the interests of other creditors;
(8) whether the judgment claim arising from the other action is subject to equitable subordination;
(9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
(10) the interests of judicial economy and the expeditious and economical resolution of litigation;
(11) whether the parties are ready for trial in the other proceeding; and
(12) impact of the stay on the parties and the balance of harms.

*Sonnax*, 907 F.2d at 1286.

relief from the automatic stay to permit the Colorado Plaintiffs to seek recoveries against the

Debtors' *estates*, however, would almost certainly engender additional litigation as a flood of

other claimants who missed the bar date would likely try to mimic the Colorado Plaintiffs'

strategy.

25.    With respect to the possibility that the Lehman Debtors' insurers would

assume responsibility for the Lehman Debtors' defense, the claims asserted by the Colorado

Plaintiffs are too vague to permit the Lehman Debtors to determine if there is coverage.  To the

extent that Colorado Plaintiffs are seeking to assert non-covered claims, the Lehman Debtors'

insurers will not assume responsibility for defense costs and such costs will have to be funded

out of the Lehman Debtors' estates.

26.    With respect to the balance of the harms, the Colorado Plaintiffs did not

file claims against the Lehman Debtors relating the design, development and construction of the

golf course in compliance with the Bar Date Order.  They are, therefore, barred from seeking to

recover on account of such claims from the Lehman Debtors' estates.  Accordingly, limiting any

stay relief that is granted to the proceeds of the Lehman Debtors' insurance policies will not

prejudice the Colorado Plaintiffs.

27.    Finally, though not mentioned in the Stay Motion, the seventh *Sonnax*

Factor – whether litigation in another forum would prejudice the interests of other creditors – is

relevant to pending matter.  If the Colorado Plaintiffs are granted relief from the automatic stay

without first being required to articulate their claims, the Lehman Debtors' estates may be forced

to incur defense costs if such claims are not, in fact, covered by insurance.  The costs associated

with the Colorado Litigation could have an impact on the estate of Rose Ranch – one of the

smaller Debtors and the only Lehman Debtor with any connection to the Colorado Plaintiffs.

Accordingly, the Colorado Plaintiffs should be required to articulate their claims and their

recoveries, if any, should be limited to the proceeds of the Lehman Debtors' insurance policies.

28.    In sum, the Colorado Plaintiffs have failed to establish sufficient cause for

relief from the automatic stay.  Accordingly, the Stay Motion should be denied, or, if the Court

determines that relief from the automatic stay is appropriate, then such relief should be limited to

the proceeds of the Lehman Debtors' insurance policies and should not, in any case, allow the

Colorado Plaintiffs to assert claims directly against the Lehman Debtors' estates.

### B.    The 2004 Motion

29.    The Colorado Plaintiffs are not entitled to discovery pursuant to

Bankruptcy Rule 2004.  Courts generally do not permit discovery pursuant to Bankruptcy Rule

2004 "once an adversary proceeding or contested matter is commenced" because under those

circumstance "discovery should be pursued under the Federal Rules of Civil Procedure and not

by Rule 2004."  *In re Enron*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002); *see also In re Valley

Forge Plaza Assocs.*, 109 B.R. 669, 674 (Bankr. E.D. Penn. 1990) ("[O]nce an adversary

proceeding or a particular contested matter is under way, discovery sought in furtherance of

litigation is subject to the [Federal Rules of Civil Procedure] rather than the broader bounds of

[Bankruptcy Rule 2004]").  Having made the decision to file the Stay Motion, and thus initiate a

contested matter,[8] the Colorado Plaintiffs cannot now initiate a "fishing expedition" pursuant to

Bankruptcy Rule 2004.  The Colorado Plaintiffs are limited to whatever discovery is available to

them under the Federal Rules of Civil Procedure which, as the Colorado Plaintiffs concede, is

---

[8] As this Court recently recognized, Bankruptcy Rule 4001(a)(1) "specifies that any request for relief
from stay is to be brought by motion that commences a contested matter."  *Evergreen Solar, Inc. v.
Barclays PLC (In re Lehman Brothers Holdings Inc.)*, 2011 WL 722582 *9 (Bankr. S.D.N.Y. 2011).

much less broad than what would be available pursuant to Bankruptcy Rule 2004.  2004 Motion ¶ 15.

30.     If the Court nevertheless determines that the Colorado Plaintiffs are entitled to some discovery, such discovery should be narrowly tailored to the Colorado Plaintiffs' claims (which must first be articulated) to minimize the administrative burden to the Lehman Debtors' estates.  In its current form, the Colorado Plaintiffs' discovery request is overly broad and includes demands for information that could not possibly be relevant to the Colorado Plaintiffs' claims.  For example, the Colorado Plaintiffs never explain how PAMI Statler's insurance policies are relevant to damages that allegedly occurred in Garfield County, Colorado. As discussed above, PAMI Statler's sole asset is an apartment building in Cleveland, Ohio. There is simply no connection between PAMI Statler and the alleged damages that are the subject of the Colorado Litigation.  Furthermore, the Proposed Order submitted along with the 2004 Motion provides for the Lehman Debtors to turn over "[a]ll general liability and excess insurance policies of the Debtors for the period from 2000 through the present."  *See* 2004 Motion – Proposed Order.  The Lehman Debtors, however, have determined that none of the Colorado Plaintiffs acquired their properties until 2005, creating significant doubt as to how insurance policies from prior years could be relevant to the Colorado Plaintiffs' alleged claims.

31.     While these two issues are easily corrected, they speak to the larger problems attendant to allowing discovery in connection with undefined claims: it is impossible to know whether a particular request is relevant and, consequently, impossible to verify that such requests are made in good faith and with a proper purpose, and not merely as a pretext to waste estate assets and extract a settlement.

32.     Having commenced a contested matter pursuant to the Stay Motion, the Colorado Plaintiffs are limited to discovery pursuant to the Federal Rules of Bankruptcy Procedure and should not be permitted to engage in a fishing expedition pursuant to Bankruptcy Rule 2004. Accordingly, the 2004 Motion should be denied. To the extent that the Court determines that the Colorado Plaintiffs are entitled to some discovery, the Colorado Plaintiffs should first be required to provide the debtors with a reasonably detailed explanation of their claims and the Debtors should only be required to provide insurance policies that are actually relevant to such claims.

## V.
## Conclusion

33.     The Lehman Debtors believe that this matter can be resolved quickly and easily by the Colorado Plaintiffs taking two simple actions that do not require them to give up any rights to which they may otherwise be entitled. First, the Colorado Plaintiffs should provide the Debtors with a clear explanation of their alleged claims including the basis, approximate amount, and point in time when the claims arose. This will allow the Lehman Debtors to satisfy themselves that the claims have some, minimal degree of merit and, more importantly, identify the relevant insurance policies which can then be disclosed to the Colorado Plaintiffs.[9] Second, the Colorado Plaintiffs and the Lehman Debtors can enter into a stipulation pursuant to which the Lehman Debtors will consent to relief from stay for the limited purpose of allowing the Colorado Plaintiffs to name the appropriate Lehman Debtor as a nominal defendant in the Colorado Litigation, and the Colorado Plaintiffs will agree to limit their recoveries, if any, to the proceeds of the Lehman Debtors' insurance policies. As discussed above, having failed to file claims relating to the golf course against the Lehman Debtors prior to the Bar Date, the Colorado

---

[9] Subject to an appropriate confidentiality agreement.

Plaintiffs have no right to assets of the Lehman Debtors' estates in connection therewith and,

therefore, their claims must be limited to the proceeds of the Debtors' insurance policies.

WHEREFORE the Motions should be denied and the Debtors granted such other

and further relief as is just.

Dated:  April 6, 2011
         New York, New York

/s/ Jacqueline Marcus
Jacqueline Marcus

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit A**
**(The Compromise Letter)**

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Weil, Gotshal & Manges LLP**

**J. Zaw Win**
+1 212 310-8634
zaw.win@weil.com

March 30, 2011

<span style="float:right">BY FEDEX AND E-MAIL</span>

Schuyler G. Carroll, Esq.
Perkins Coie LLP
30 Rockefeller Center, 25th Floor
New York, New York 10112-0085

> **Re:    In re Lehman Brothers Holdings Inc., *et al.*, Chapter 11
> Case No. 08-13555 (JMP) (Jointly Administered)**

Dear Mr. Carroll,

We are the attorneys for Lehman Brothers Holdings Inc. ("LBHI"), PAMI Statler Arms LLC ("PAMI Statler"), LB Rose Ranch LLC ("Rose Ranch"), and their affiliated debtors (collectively, the "Debtors," and together with their non-debtor affiliates "Lehman") in the above captioned cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States Code.

Reference is made to the motions that you filed in the Chapter 11 Cases on March 18, 2011 on behalf of certain plaintiffs (the "Colorado Plaintiffs") in a litigation captioned *Jamin Cook, et al. v. Ironbridge Homes, LLC, et al.*, (Case No. 2010CV142) (the "Colorado Litigation") seeking (i) discovery pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure (the "2004 Motion") [Docket No. 15200], and (ii) relief from the automatic stay (the "Relief from Stay Motion") [Docket No. 15202].

As a general matter, the Debtors are willing to share their applicable insurance policies with the Colorado Plaintiffs, subject to an appropriate confidentiality agreement.  There are, however, a few issues that require your clarification.  Once appropriately clarified, the Debtors propose entering into a stipulation with your clients pursuant to which they would receive the applicable insurance policies.

First, the document request contained in the 2004 Motion is overly broad.  For example, PAMI Statler's sole asset is an apartment building in Cleveland, Ohio.  PAMI Statler's insurance policies manifestly have no relevance to any of the Colorado Plaintiffs' claims.  Further, the proposed order that was filed with the 2004 Motion seeks insurance policies dating back to 2000.  The Colorado Plaintiffs, however, did not acquire the properties that are the subject of the Colorado Litigation until 2005.  Your request, therefore, must be limited to Rose Ranch and/or LBHI's applicable insurance policies in place from 2005 onward.

US_ACTIVE:\43669768\02\58399.0003

March 30, 2011                                                                                          **Weil, Gotshal & Manges LLP**
Page 2

Most importantly, the Debtors cannot provide the Colorado Plaintiffs with the relevant insurance policies unless and until they have a clear understanding of the precise nature of the claims that the Colorado Plaintiffs believe that they have against LBHI and/or Rose Ranch, which you have yet to articulate.

The 2004 Motion states that the Colorado Plaintiffs believe they have claims against the Debtors "arising from the Debtors' *involvement* in the construction and development of a golf course adjacent to a single-family housing project in Glenwood Springs, Colorado." This description is lacking the detail necessary for the Debtors to determine whether your clients' claims are related to an alleged breach of contract, tortious conduct, construction defect, or other act or omission. The 2004 Motion is also lacking an estimate of the amount of your clients' claims. Without further clarification, the Debtors are unable to identify potentially applicable policies and determine whether there are exclusions that would preclude coverage.

With respect to the Relief from Stay Motion, the Debtors are prepared to stipulate to stay relief for the limited purpose of allowing the Colorado Plaintiffs to name LBHI and/or Rose Ranch as a nominal defendant in the Colorado Litigation so long as the Colorado Plaintiffs agree to limit their recoveries, if any, to the proceeds of the applicable insurance policies. While the Debtors understand that the Colorado Plaintiffs will need to review the insurance policies before agreeing to proceed in this manner, it is worth noting that of the 39 Colorado Plaintiffs, only Tisha Craig filed a claim against the Debtors prior to the bar date. The Debtors expect to object to Ms. Craig's claim in due course. Accordingly, to the extent that the Colorado Plaintiffs have any right to recover from LBHI and/or Rose Ranch, it will be from their insurance policies, not from their estates.

In order to resolve these issues as efficiently and expeditiously as possible, the Debtors suggests the following approach, which can be memorialized in a stipulation:

1.    The 2004 Motion and the Relief from Stay Motion will be adjourned without date.

2.    Within 5 business days of the Colorado Plaintiffs' consent to the approach described herein, the Debtors will provide the Colorado Plaintiffs with a reasonable confidentiality agreement regarding the Debtors' insurance policies.

3.    Within 5 business days of the execution of the confidentiality agreement, the Colorado Plaintiffs will provide the Debtors with a detailed description of the claims that they, in good faith, believe they have against the Rose Ranch and/or LBHI including, without limitation, the year such claims arose or was ongoing, the amount of such claims, and the basis for such claims (the "Notice of Claims").

4.    Within 5 business days of the Debtors receipt of the Notice of Claims, the Debtors will either (i) provide the Colorado Plaintiffs with copies of their relevant insurance policies, or (ii) work with the Colorado Plaintiffs, in good faith, to refine the scope of the request contained in the Notice of Claims.

**Weil, Gotshal & Manges LLP**

5.      If, after reviewing the Debtors' insurance policies, the Colorado Plaintiffs are willing to limit their recoveries, if any, against Lehman to the proceeds of such insurance policies, the Debtors will enter into a mutually agreed upon stipulation with the Colorado Plaintiffs providing for relief from the automatic stay for the limited purpose of naming Rose Ranch and/or LBHI as a nominal defendant in the Colorado Litigation, provided, however, that the Colorado Plaintiffs agree to limit their recoveries, if any, to the proceeds of such insurance policies.

6.      If, after reviewing the Debtors' insurance policies, the Colorado Plaintiffs not are willing to limit their recoveries, if any, against Lehman to the proceeds of such insurance policies, they will so notify the Debtors and shall be entitled to notice the Lift Stay Motion for the next available omnibus hearing date that is at least 10 business days following their notification to the Debtors, with the Debtors' objection due 5 business days prior to such hearing.

We also note that the 2004 Motion was filed improperly.  Rule 9074-1(c)(1)(F) of the local bankruptcy rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") provides that an application for examination pursuant to rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") may be made by presentment only when it is anticipated that such applications will be uncontested.  Given the prior dealings between our clients, you cannot, in good faith, have anticipated that that the 2004 Motion would be uncontested. Accordingly, if you intend to prosecute the 2004 Motion, it must be refiled and served in accordance with the Bankruptcy Rules, the Local Rules, and the case management procedures approved in the Chapter 11 Cases.

March 30, 2011
Page 4

**Weil, Gotshal & Manges LLP**


If this proposal is acceptable to you, please countersign below and return a countersigned copy of this letter to me at your earliest convenience, but in any case by no later than Monday, April 4, 2011 at 12:00 p.m. noon.

Please do not hesitate to contact me if you would like to discuss further.

Very truly yours,


J. Zaw Win


cc:  Jeffrey D. Vanacore, *via email*
     David M. Miller, *via email*


Countersigned and agreed to by


_____
Schuyler G. Carroll, Esq.
Counsel to the Colorado Plaintiffs

**<u>Exhibit B</u>**
**(The Craig Claim)**

US_ACTIVE:\43665186\05\58399.0003

United States Bankruptcy Court/Southern District of New York
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

**PROOF OF CLAIM**

| In Re: Lehman Brothers Holdings Inc., et al., Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) |
|---|---|
| Name of Debtor Against Which Claim is Held LB ROSE RANCH LLC | Case No. of Debtor 09-10560 (JMP) |

UNIQUE IDENTIFICATION NUMBER: 560000780

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)            0000032015

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionaly, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

THIS

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH (MERGE2.DBF,SCHED_NO) SCHEDULE #: 560000780*****
CRAIG
0091 SILVER MOUNTAIN DRIVE
GLENWOOD SPRINGS, CO 81601

(970) 928-9355    Worldwellness
Telephone number:    Email Address: @comcast

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
*(If known)*

Filed on: _____

NOTICE OF SCHEDULED CLAIM:
Your Claim is scheduled by the indicated Debtor as:

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
MEMBERSHIP AGREEMENT

Name and address where payment should be sent (if different from above)

Telephone number:    Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

1. **Amount of Claim as of Date Case Filed: $** 389923.00

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** Sale of defective property
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** unknown
3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $_____ Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____ Basis for perfection: _____
**Amount of Secured Claim: $**_____ **Amount Unsecured: $**_____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$_____

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $** unknown
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See definition of "redacted" on reverse side.)* If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 22 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

Date: 9/21/09    Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Thisha M. Craig, Thisha M. Craig    Proper Owner

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## SmartZone Communications Center Collaboration Suite    worldwellness@comcast.net

| | |
|---|---|
| **Fwd: 0091 Silver Mountain Drive, Lot 133** | **Monday, September 21, 2009 11:54:24 AM** |

From: worldwellness@comcast.net
To: worldwellness@comcast.net

----- Forwarded Message -----
From: "James Woelke" <jwoelke@sunriseco.com>
To: worldwellness@comcast.net
Sent: Monday, August 10, 2009 11:28:53 AM GMT -07:00 US/Canada Mountain
Subject: RE: 0091 Silver Mountain Drive, Lot 133

Thisha,

I wanted to let you know that the next step in us gathering a second opinion on the settlement that your house is experiencing is to do a soils boring. The wooden stake painted blue on the end is the location of where our investigative engineers would like to drill. Locates were called in last week and they will be out here all week conducting their investigations.

Your location will be drilled sometime between Tuesday and Friday of this week and the only thing that we require is that no cars be parked in the driveway.

This is a very professional crew, and when they are done you will hardly even know that they came.

If you have any questions or need to schedule a specific time or date for the drilling please call me on my cell at 970-404-1046.

Respectfully,
James Woelke

---

**From:** worldwellness@comcast.net [mailto:worldwellness@comcast.net]
**Sent:** Thursday, June 18, 2009 4:26 PM
**To:** James Woelke
**Cc:** worldwellness@comcast.net
**Subject:** 0091 Silver Mountain Drive, Lot 133

June 18, 2009

Good afternoon James,

Since you last here, on Monday, June 8th, the cracks in the living room (crack number # 17, 18, and 19) have growth both in length and width. In fact, I would say they have doubled in a weeks time. Also, they seem to be one large crack instead of multiple cracks with some separation between the ceiling and wall.

You are welcome to come and view the changes.

Please let me know what the next step is and the timing.

Thanks so much!

Thisha Craig
928-9355

SmartZone Communications Center Collaboration Suite    worldwellness@comcast.net

## Fwd: Lot 133, Ironbridge, 0091 ilver Mountain Drive, Thisha and Kevin Craig

Monday, September 21, 2009 11:43:20 AM

From: worldwellness@comcast.net
   To: worldwellness@comcast.net

----- Forwarded Message -----
From: "James Woelke" <jwoelke@sunriseco.com>
To: worldwellness@comcast.net
Sent: Monday, June 8, 2009 1:06:05 PM GMT -07:00 US/Canada Mountain
Subject: RE: Lot 133, Ironbridge, 0091 ilver Mountain Drive, Thisha and Kevin Craig

I was just going to call you.... =(

I will still be stopping by at 3:00 to take pictures and to perform a quick level survey of the home, but the engineers who were supposed to tour the homes showed up two hours early and have already left. These were just our third party engineers though, and I will still need to get the soils and structural engineers of record into the home for their observations but these will be scheduled for a later date.

I will see you at 3:00 though.

James

---

**From:** worldwellness@comcast.net [mailto:worldwellness@comcast.net]
**Sent:** Monday, June 08, 2009 1:03 PM
**To:** James Woelke
**Subject:** Re: Lot 133, Ironbridge, 0091 ilver Mountain Drive, Thisha and Kevin Craig

Yes!

----- Original Message -----
From: "James Woelke" <jwoelke@sunriseco.com>
To: worldwellness@comcast.net
Sent: Monday, June 8, 2009 8:35:55 AM GMT -07:00 US/Canada Mountain
Subject: RE: Lot 133, Ironbridge, 0091 ilver Mountain Drive, Thisha and Kevin Craig

Can we stop by at 3:00? I'll call as well to schedule if I don't hear back via email in an hour.

James

---

**From:** worldwellness@comcast.net [mailto:worldwellness@comcast.net]
**Sent:** Sunday, June 07, 2009 3:40 PM
**To:** James Woelke
**Subject:** Lot 133, Ironbridge, 0091 ilver Mountain Drive, Thisha and Kevin Craig

Hi James,

Thanks again for taking the time to talk with me today.  Here is an inventory of the cracks and other issues; I will send pictures later.  I will be home tomorrow after 10:30 a.m., if you need to call me. Please let me know you received this email ok.

Thanks!
Thisha 928-9355

Master bedroom
1.   10 inches long plus 2 feet; from window, includes under windowsill and down the corner to the floor. This was one of the first cracks.
2.   crack from window
3.   crack from window
4.   crack from window; this was one of the first cracks
5.   crack from window plus continues down the wall
6.   crack from window; 14 inches long; this was one of the first cracks
7.   crack from window
8.   "L" shape crack in ceiling
Master bath
9.   wall and ceiling are separating
10.   crack from window
11.   crack parallel to the window
12.   crack in ceiling
13.   wall and ceiling separating
14.   horizontal crack in the wall from door jam (closet)
15.   bathroom door doesn't shut anymore
Livingroom/diningroom
16.   approx. 7 ½ inches long; from window
17.   17 inches long; on wall
18.   crack from ceiling edge down the wall
19.   crack from ceiling edge across ceiling
20.   11 inches long; from window
21.   13 inches long; crack from ceiling edge down the wall
22.   10 ½ inches long; parallel window
23.   11 inches long; from window
24.   6 ½ inches long; from window
25.   12 inches long; parallel window
26.   21 ½ inches long; crack from ceiling edge down the wall
27.   8 inches long; from window
28.   13 ½ inches long; from window
29.   4 inches; from window
30.   3 inches; from window
31.   5 inches long; vertical crack on wall
32.   5 ½ inches; from window
Entrance
33.   30 inches; down from window sill; slight crack
34.   from window
Bedroom
35.   Large "L" crack in ceiling
Front steps
36. ½ inch separation from porch to the steps
Guest Bath
37. door closes by itself
Driveway
38.  There is some separation between the concrete garage flooring and the asphalt.

Please note we did not modify the grade and we don't have any irrigation next the house.  Thanks!



# Land Title Guarantee Company
### CUSTOMER DISTRIBUTION

Date: 08-12-2005

Our Order Number:    GW247135

Property Address:

*If you have any inquiries or require further assistance, please contact one of the numbers below:*

**For Title Assistance:**
**Glenwood Springs "GW" Unit**

**1317 GRAND AVE #200**
**GLENWOOD SPRINGS, CO 81601**
**Phone: 970-945-2610**
**Fax:  970-945-4784**

**For Closing Assistance:**
**Becky Westphal**
**1317 GRAND AVE #200**
**GLENWOOD SPRINGS, CO 81601**
**Phone: 970-945-2610**
**Fax:  970-945-4784**
**EMail:  bwestphal@ltgc.com**

---

ROARING FORK REAL ESTATE-IRONBRIDGE
410 IRONBRIDGE DR
GLENWOOD SPRINGS, CO 81601
Attn:  ANGIE SHEETS
Phone: 970-945-4300
Fax:  970-928-8865
Copies: 1
EMail: angie@ironbridgeclub.com
Sent Via EMail

IRONBRIDGE HOMES LLC
410 IRONBRIDGE DRIVE
GLENWOOD SPRINGS, CO 81601
Attn:  DIRK GOSDA
Phone: 970-947-9800
Fax:  970-928-8865
Copies: 1
EMail: dirk@ironbridgeclub.com
Sent Via EMail

KEVIN & THISHA CRAIG
0057 SUMMIT DR
CARBONDALE CO 81623
Copies: 1
Sent Via US Postal Service

LB ROSE RANCH LLC
1 LAKE AVE
COLORADO SPRINGS, CO 80906
Attn:  J THOMAS SCHMIDT
Phone: 719-471-6200
Fax:  719-471-6222
EMail: tschmidt@broadmoor.com

TOM'S ASSISTANT
Attn:  J GOSSAGE
Copies: 1
EMail: jgossage@broadmoor.com
Sent Via US Postal Service

10.07.05

**Summary Appraisal Report**                                                                                              File No. 14125625

# UNIFORM RESIDENTIAL APPRAISAL REPORT

Property Description

| | | WELLS |
|---|---|---|
| | | File No. 14125625 |

| SUBJECT | | |
|---|---|---|
| Property Address 0091 Silver Mountain Dr. | City Glenwood Springs | State CO   Zip Code 81601-3665 |
| Legal Description Lot 133, Rose Ranch PUD, aka Ironbridge PUD | | County Garfield |
| Assessor's Parcel No. 2395 121 18 133 | Tax Year 05 | R.E. Taxes $ TBD   Special Assessments $ n/a |
| Borrower Thisha and Kevin Craig | Current Owner LB Rose Ranch LLC | Occupant: ☒ Owner ☐ Tenant ☐ Vacant |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Project Type ☒ PUD ☐ Condominium (HUD/VA only) | HOA $ 95 /Mo. |
| Neighborhood or Project Name Rose Ranch Westbank neighborhood | Map Reference 91 Silver Mountain Dr. | Census Tract 9201.15 |
| Sale Price $ 389,923   Date of Sale | Description and $ amount of loan charges/concessions to be paid by seller Unknown | |
| Lender/Client Wells Fargo Bank, NA | Address Grand Junction, CO | |
| Appraiser Richard Stewart, ALO1313307 | Address P.O. Box 1447, Glenwood Springs, CO 81602 | |

| NEIGHBORHOOD | | | | |
|---|---|---|---|---|
| Location | ☐ Urban ☒ Suburban ☐ Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |

Location: ☐ Urban ☒ Suburban ☐ Rural
Built up: ☐ Over 75% ☒ 25-75% ☐ Under 25%
Growth rate: ☐ Rapid ☒ Stable ☐ Slow
Property values: ☐ Increasing ☒ Stable ☐ Declining
Demand/supply: ☐ Shortage ☒ In balance ☐ Over supply
Marketing time: ☐ Under 3 mos. ☒ 3-6 mos. ☐ Over 6 mos.

Predominant occupancy: ☒ Owner ☐ Tenant ☐ Vacant (0-5%) ☒ Vac.(over 5%)

Single family housing PRICE $(000): Low 350  High 950  Predominant 500
AGE (yrs): Low 0  High 30  Predominant 20

Present land use %: One family 50   2-4 family   Multi-family   Commercial   Vac.sites 50

Land use change: ☐ Not likely ☐ Likely ☒ In process  To: Residential

Note: Race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics: Described neighborhood includes all four filings of Westbank Subdivision the Rose Ranch development and adjoining properties.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.): Residential subdivision located between the small towns of Glenwood Springs and Carbondale. Rose Ranch is a new subdivision with 80 sites developed so far. Only one house finished in the subdivision so far. Several more are under construction. There is a private, membership only golf course within the two subdivisions. Construction on Rose Ranch recreational facilities is to start in 2005. The neighboring 167 lot Westbank Ranch Subdivision is fairly fully developed. The golf course runs through both subdivisions and numerous lots have golf course frontage. 62 Rose Ranch lots are being offered with new house packages. 16 river lots are for custom build.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time -- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.): The housing market in and around Glenwood Springs and Carbondale has been affected by the strong nearby Aspen resort area. Carbondale is closer to the influence of the Aspen resort area housing and employment market. Market conditions have been stable to improving in the past year. Market exposure in the 1-6 month range. Marketing time can be longer if winter months are included.

| PUD | |
|---|---|
| Project Information for PUDs (if applicable) - - Is the developer/builder in control of the Home Owners' Association (HOA)? | ☒ Yes ☐ No |
| Approximate total number of units in the subject project 80 | Approximate total number of units for sale in the subject project 10 |
| Describe common elements and recreational facilities: None built yet. Proposed recreational facilities, pathways. Golf course is private, members only. | |

| SITE | | |
|---|---|---|
| Dimensions Irregular | | |
| Site area 0.441 Ac. | Corner Lot ☒ Yes ☐ No | Topography Level and sloping |
| Specific zoning classification and description PUD Residential per county records | | Size Good |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No zoning | | Shape Irregular |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | Drainage Appears average |
| Utilities   Public   Other | Off-site Improvements   Type   Public   Private | View Good |
| Electricity ☒ | Street Paved ☒ | Landscaping Front yard |
| Gas ☒ | Curb/gutter n/a | Driveway Surface To be paved |
| Water ☐ Community | Sidewalk n/a | Apparent easements Assume typical utility |
| Sanitary sewer ☐ Septic | Street lights n/a | FEMA Special Flood Hazard Area ☐ Yes ☒ No |
| Storm sewer | Alley n/a | FEMA Zone B   Map Date 1/3/1986 |
| | | FEMA Map No. 0802051465B |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.): No apparent adverse easements or encroachments. Survey not provided to appraiser. Lot size per county records. Good sized corner site. Small strip of open space to the rear. Base landscaping for front yard plus rear yard landscaping option.

| DESCRIPTION OF IMPROVEMENTS | | | | |
|---|---|---|---|---|
| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
| No. of Units One | Foundation Concrete | Slab No | Area Sq. Ft. | Roof ☐ |
| No. of Stories One | Exterior Walls Wood, Msnry | Crawl Space Yes | % Finished | Ceiling ☐ |
| Type (Det./Att.) Det | Roof Surface CompShngl | Basement No | Ceiling | Walls ☐ |
| Design (Style) Ranch | Gutters & Dwnspts. N/A | Sump Pump n/a | Walls | Floor ☐ |
| Existing/Proposed Proposed | Window Type Vinyl | Dampness n/a | Floor | None ☐ |
| Age (Yrs.) New | Storm/Screens Yes | Settlement n/a | Outside Entry | Unknown ☒ |
| Effective Age (Yrs.) 0 yrs | Manufactured House No | Infestation n/a | | |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | | | | | | | |
| Level 1 | Yes | 1 | area | 1 | 1 | | | | | | | |
| Level 2 | | | | | | | | 3 | 2.5 | Yes | | 1,775 |

Finished area above grade contains: 6 Rooms;   3 Bedroom(s);   2.5 Bath(s);   1,775 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | KITCHEN EQUIP. | ATTIC | AMENITIES | CAR STORAGE: |
|---|---|---|---|---|---|---|
| Floors | Lamnt,Cpt/Good | Type FA | Refrigerator P | None ☐ | Fireplace(s) # GasFP | None ☐ |
| Walls | DW/New | Fuel Gas | Range/Oven P | Stairs ☐ | Patio ☐ | Garage |  # of cars |
| Trim/Finish | Good Grade | Condition New | Disposal P | Drop Stair ☐ | Deck ☐ | Attached 2 car |
| Bath Floor | Tile/New | COOLING | Dishwasher P | Scuttle ☒ | Porch Covered | Detached |
| Bath Wainscot | Tile/New | Central n/a | | | | |

**FedEx** Express  *USA Airbill*    8303?6311827    0200    **FedEx Retrieval Copy**

From
Date 9/21/09    Sender's FedEx Account Number

Sender's Name Thi-ha Craig    Phone 970 RECEIVED

Company

Address 0091 Silver Mnt Drive    SEP 22 2009

City Glenwood Springs    State CO    ZIP 81601

Your Internal Billing Reference

To
Recipient's Name Epiq Bankruptcy Solutions, LLC    Phone

Company Attn. Lehman Brothers Holding Claims Proc

Address 757 Third Avenue, 3rd Floor

City New York    State NY    ZIP 10017

**4a Express Package Service**    *Packages up to 150 lbs.*
1 ☑ FedEx Priority Overnight    5 ☐ FedEx Standard Overnight    6 ☐ FedEx First Overnight
    ☐ FedEx 2Day    20 ☐ FedEx Express Saver    77 ☐ NEW FedEx Extra Hours

**4b Express Freight Service**    *Packages over 150 lbs.*
7 ☐ FedEx 1Day Freight    8 ☐ FedEx 2Day Freight    83 ☐ FedEx 3Day Freight

**5 Packaging**
6 ☐ FedEx Envelope*    2 ☐ FedEx Pak*    1 ☐ Other Pkg.

**6 Special Handling**
3 ☐ SATURDAY Delivery    39 ☐ SUNDAY Delivery    1 ☐ HOLD Weekday at FedEx Location    1 ☐ HOLD Saturday at FedEx Location
Does this shipment contain dangerous goods?
☐ 4 No    6 ☐ Dry Ice    ☐ Cargo Aircraft Only

**7 Payment** Bill to
1 ☐ Sender    2 ☐ Recipient    3 ☐ Third Party    ☒ Credit Card    5 ☐ Cash/Check

Total Packages  1    Total Weight    Total Charges

404

**8 Release Signature**

8303?6311827

L

**<u>Exhibit C</u>**
**(The Craig Deed)**

Fi 684281 10/13/2005 02:07P B1735 P524 M ALSDORF
Re 1 of 1 R 6.00 D 12.53 GARFIELD COUNTY CO

o'clock _____ M.                        RECORDER
By _____ DEPUTY.

## WARRANTY DEED

THIS DEED , Made on this day of __October 05, 2005_____ , between

IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY

of the _____ County of __GARFIELD_____ and State of __COLORADO_____ , the Grantor(s), and
THISHA CRAIG AND KEVIN CRAIG

whose legal address is : __0057 SUMMIT DR   CARBONDALE, CO 81623__ MAILING ADDRESS: P.O. BOX 1987,
of the _____ County of __GARFIELD_____ and State of __COLORADO_____ , the Grantee(s).  BASALT, CO
WITNESS, That the Grantor(s), for and in consideration of the sum of ( $125,330.00 )              81621
*** One Hundred Twenty Five Thousand Three Hundred Thirty and 00/100 ***   DOLLARS
the receipt and sufficiency of which is hereby acknowledged, has granted, bargained, sold and conveyed, and by these
presents does grant, bargain, sell, convey and confirm unto the Grantee(s), his heirs and assigns forever, all the
real property, together with improvements, if any, situate, lying and being in the _____ County of
__GARFIELD_____ and State of Colorado, described as follows:

LOT 133
IRONBRIDGE PLANNED UNIT DEVELOPMENT
PHASE I
ACCORDING TO THE AMENDED PLAT RECORDED JUNE 16, 2004 UNDER RECEPTION NO. 654210

COUNTY OF GARFIELD
STATE OF COLORADO

also known as street number LOT 133, IRONBRIDGE PUD, 91 SILVER MTN DR, GLENWOOD SPRINGS, CO 81601

TOGETHER  with all and singular the hereditaments and appurtenances thereto belonging, or in anywise appertaining
and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and all the estate, right
title interest, claim and demand whatsoever of the Grantor(s), either in law or equity, of, in and to the above bargained
premises, with the hereditaments and appurtenances;
TO HAVE AND TO HOLD  the said premises above bargained and described with appurtenances, unto the Grantee(s),
his heirs and assigns forever. The Grantor(s), for himself, his heirs and personal representatives, does covenant, grant,
bargain, and agree to and with the Grantee(s), his heirs and assigns, that at the time of the ensealing and delivery
of these presents, he is well seized of the premises above conveyed, has good, sure, perfect, absolute and indefeasible
estate of inheritance, in law, in fee simple, and has good right, full power and lawful authority to grant, bargain,
sell and convey the same in manner and form as aforesaid, and that the same are free and clear from all former and other
grants, bargains, sales, liens, taxes, assessments, encumbrances and restrictions of whatever kind or nature soever,
subject to general taxes for the year 2005 and those specific Exceptions described by reference to recorded documents as
reflected in the title Documents accepted by Grantee(s) in accordance with Section 8a (Title Review) of the Contract to
Buy and Sell Real Estate relating to the above described property; distribution utility easements (including cable TV);
those specifically described rights of third parties not shown by the public records of which Grantee(s) has actual
knowledge and which were accepted by Grantee(s) in accordance with Section 8b (Matters not Shown by the Public Records) and
inclusion of the property within any special tax district; and, the benefit and burdens of any declaration and party wall
agreements, if any and other NONE
The Grantor(s) shall and will WARRANT AND FOREVER DEFEND the above bargained premises in the quiet and peaceable
possession of the Grantee(s), his heirs and assigns, against all and every person or persons lawfully claiming the whole
or any part thereof. The singular number shall include the plural, and the plural the singular, and the use of any gender
shall be applicable to all genders.
IN WITNESS WHEREOF  the Grantor(s) has executed this deed on the date set forth above.

IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY
COMPANY

By: _____
    DIRK GOSDA, MANAGER

STATE OF   __COLORADO_____ )
                                      )ss.
    County of __GARFIELD_____ )

JESSICA REED
NOTARY PUBLIC
STATE OF COLORADO

My Commission Expires Aug. 2 2007

The foregoing instrument was acknowledged before me on this day of __October 05, 2005__
by __DIRK GOSDA AS MANAGER OF IRONBRIDGE HOMES, LLC, A COLORADO LIMITED LIABILITY COMPANY__

My commission expires
Witness my hand and official seal.

_____
Notary Public

Name and Address of Person Creating Newly Created Legal Description ( 38-35-106.5, C.R.S.)

Escrow# GW247135
Title# GW247135
                              When Recorded Return to:THISHA CRAIG AND KEVIN CRAIG
Form 84 08/29/04 WD1 WARRANTY DEED (Photographic)      0057 SUMMIT DR   CARBONDALE, CO 81623
                                                                              (2347788)