**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Telephone: (212) 906-1200
Fax: (212) 751-4864
Mark A. Broude
Blair Connelly
Email: Mark.Broude@lw.com
       Blair.Connelly@lw.com

Attorneys for Bundesverband deutscher Banken e.V.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re ) | |
| ) | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et* ) | |
| *al.* ) | Case No. 08-13555 (JMP) |
| ) | |
| ) | Jointly Administered |
| Debtors. ) | |

**OBJECTION TO DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO ESTABLISH AND IMPLEMENT PROCEDURES IN CONNECTION <u>WITH DISCOVERY RELATED TO PLAN CONFIRMATION</u>**

TO THE HONORABLE JAMES M. PECK.
UNITED STATES BANKRUPTCY JUDGE:

      The Association of German Banks (*Bundesverband deutscher Banken e.V.*) ("<u>BdB</u>"), the national association of German private sector banks, hereby files this objection (the "<u>Objection</u>") to the *Debtors' Motion Pursuant to Section 105 of the Bankruptcy Code and Rule 7026 of the Federal Rules of Bankruptcy Procedure for Authorization to Establish and Implement Procedures in Connection with Discovery Related to Plan Confirmation* [Dkt. No. 14867] (the

NY\1780805.5

"Motion"), filed on March 8, 2011 by the Debtors[1] in the above-referenced chapter 11 cases, and respectfully submits:

## BACKGROUND

1. Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 17, 2008, the U.S. Trustee appointed the Creditors' Committee pursuant to section 1102 of the Bankruptcy Code.

2. On March 15, 2010, the Debtors filed their proposed Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Dkt. No. 7572] (the "Original Debtors' Plan"). On April 14, 2010, the Debtors filed a revised Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors [Dkt. No. 8330] (the "Revised Original Debtors' Plan") and the Debtors' Disclosure Statement for Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Dkt. No. 8332]. On December 15, 2010, an Ad Hoc Group of Lehman Brothers Creditors (the "Ad Hoc Group") filed a Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC (the "Ad Hoc Group Plan"). On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Proposed Procedures (as defined below).

2

NY\1780805.5

Inc. and its Affiliated Debtors [Docket No. 14150] (the "Debtors' First Amended Plan") and the Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket No. 14151] (the "Disclosure Statement").

3.  On March 8, 2011, the Debtors filed the Motion. In the Motion, the Debtors sought authority to, among other things, establish procedures (the "Original Proposed Procedures") in connection with discovery relating to the Debtors' First Amended Plan, the Ad Hoc Group Plan and any other plan of reorganization filed in these Chapter 11 Cases. The Original Proposed Procedures were set forth in the Proposed Order attached to the Motion as Exhibit 1.

4.  A hearing on the Motion was originally scheduled for March 23, 2011. On March 11, 2011, the Debtors filed a *Notice of Adjournment of Debtors' Motion Pursuant to Section 105 of the Bankruptcy Code and Rule 7026 of the Federal Rules of Bankruptcy Procedure For Authorization to Establish and Implement Procedures in Connection With Discovery Related to Plan Confirmation* [Docket No. 14965] (the "Notice of Adjournment") adjourning the hearing on the Motion to April 13, 2011 and inviting parties in interest to submit proposed revisions, amendments or other comments to the Original Proposed Procedures so as to be received no later than March 23, 2011 at 4:00 p.m. (New York Time).

5.  BdB submitted comments (the "BdB Comments") to the Debtors on March 23, 2011. The BdB Comments proposed the following changes to the Original Proposed Procedures, among others:

- The commencement of Plan Discovery and the deadline for filing a "Notice of Intent" to participate in Plan Discovery should be extended until after the Debtors obtain an order approving their Disclosure Statement;

3

NY\1780805.5

- The Debtors should be required to search for and produce from categories of documents that the Proposed Procedures would entirely exclude from Plan Discovery, including internal documents and communications solely with an advisor of the Debtors and hard copy files of the Debtors' in-house and outside counsel;

- Any limitation on the scope of the Debtors' search for and production of documents should be applied mutually among all parties producing documents;

- Creditors of Lehman Brothers International (Europe) ("LBIE") should constitute their own "Discovery Group," separate and apart from the group comprised of "the guarantee creditors of LBHI for which a non-U.S. affiliate is the primary obligor";

- A number of the deadlines for propounding and complying with discovery requests, particularly deadlines applicable to action by the "Discovery Groups", should be extended;

- Depositions should not proceed while there are unresolved disputes regarding document discovery outstanding;

- The Proposed Procedures should expressly provide that Participants have the opportunity to object to the Debtors' determination that the Fact Discovery Cutoff has occurred; and

- Participants should not be required to file rebuttal expert reports until after initial expert depositions have been completed.

6.      On March 31, 2011, the Debtors filed the *Notice of Amended Order Establishing Schedule in Connection with Discovery Related to Plan Confirmation and Other Issues* [Docket No. 15539], to which the Debtors attached a revised proposed order as to the Motion, which propose revised procedures governing Plan Discovery (the "Proposed Procedures"), and a redline of the Proposed Procedures to the Original Proposed Procedures. The revisions incorporated into the Proposed Procedures failed to cure many of the most significant infirmities in the Original Proposed Procedures, highlighted in the BdB Comments, and create a number of new infirmities.

**OBJECTION**

7.      While BdB appreciates the benefits of streamlining Plan Discovery, the Proposed Procedures would unduly tilt the discovery playing field in the Debtors' favor and impose

4

excessive burdens on creditors without any justification.  First, the proposed "Notice of Intent Deadline," which forces parties to decide definitively if they wish to participate fully in plan-related litigation shortly after entry of the order approving the Proposed Procedures, is entirely premature.  The Debtors and Ad Hoc Group only recently filed motions for approval of their disclosure statements, and the hearing on such motions will not be until June 28, 2011 at the earliest.[2]  Parties do not know what the Debtors' plan and competing plans will look like when ultimately presented to this Court for confirmation.  The Debtors have substantially changed the terms of their various plans from one plan to the next, each of which raises different potential confirmation issues.  Notwithstanding this uncertainty, the Debtors are seeking to give parties the choice of (a) opting in to Plan Discovery and expending resources on plan litigation without knowing whether the plan on which they are seeking discovery will bear any relationship to the plan that the Debtors ultimately seek to confirm or (b) waiving their rights to full discovery.  Second, the Proposed Procedures are inequitable in that they relieve the Debtors from burdensome aspects of discovery without providing the same relief to other parties subject to discovery.  The Debtors are using "efficiency" as a pretext for tilting the discovery playing field

---

[2]   On March 16, 2011, the Debtors filed the *Motion (I) For Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (II) Establishing Solicitation and Voting Procedures, (II) Scheduling a Confirmation Hearing, and (IV) Establishing Notice and Objection Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan* [Docket No. 15077] (the "Disclosure Statement Motion").  A hearing on the Disclosure Statement Motion is scheduled for June 28, 2011.  On March 29, 2011, the Ad Hoc Group filed the *Motion of the Ad Hoc Group of Lehman Brothers Creditors for Entry of (I) an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof and (II) an Order Approving the Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings, Inc. and Certain of its Affiliated Debtors other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Filed by the Ad Hoc Group of Lehman Brothers Creditors* [Docket No. 15431] (the "Ad Hoc Group Disclosure Statement Motion").  The Ad Hoc Group requested a hearing on the Ad Hoc Group Disclosure Statement Motion on June 28, 2011.

5

NY\1780805.5

heavily in their own favor. While BdB agrees that modification of certain federal rules could streamline discovery, the Debtors' redrafting of the Federal Rules of Civil Procedure is overly lenient in certain respects and, as a separate matter, is entirely one-sided in favor of the Debtors. To the extent the discovery rules are to be redrafted in the interest of "efficiency," such changes should apply equally to discovery taken from Debtors and non-Debtors alike.

### A. The Deadlines that the Debtors are Seeking to Establish are Unrealistic and Must Change

8. Through the Proposed Procedures, the Debtors are seeking to establish various deadlines to force Participants to engage in discovery within specific coordinated time frames. While the goal of efficient coordinated discovery may be understandable and laudable, how the Debtors are seeking to implement that goal unduly prejudices the Participants. The Debtors are seeking to force potential Participants to make decisions without anything approaching sufficient information, and then to engage in massive efforts to coordinate among Participants without any assistance but within an unreasonably short period of time. While BdB does not disagree with the general construct, the timing and deadlines must change to avoid unnecessary prejudice to the Participants.

#### *(i)   Notice of Intent Deadline is Premature*

9. The Proposed Procedures force parties in interest to decide definitively if they wish to participate fully in plan-related litigation before anyone, including the Debtors, knows what the Debtors' plan and any competing plans will look like when they are presented to this Court for confirmation. The establishment of a Notice of Intent Deadline at this early stage is entirely unwarranted.

10. The Proposed Procedures provide that a creditor "seeking to participate in Plan Discovery shall file with the Court . . . a completed 'Notice of Intent' . . . no later than fourteen

6

(14) days following the entry of this Order (the '<u>Notice of Intent Deadline</u>')." *See* Proposed Procedures §2(a). Except for creditors who file a competing plan of reorganization or object to a plan on file, creditors who do not file a Notice of Intent by the Notice of Intent Deadline are not permitted to participate in Plan Discovery at all absent leave of this Court. *See* Proposed Procedures §§2(c), 2(d), 2(g). Any creditor who files a new plan or objects to a plan after the Notice of Intent Deadline will not be allowed to reopen any discovery deadlines that have already passed, and such party will not be permitted to seek discovery "concerning issues that were fairly raised in documents concerning Plan Issues filed prior to the Notice of Intent Deadline." *See* Proposed Procedures §§2(g), 15(d). Moreover, the filing of a new plan or objection to a plan will not provide a basis for any Participant to seek *any* additional discovery from the Debtors. *See* Proposed Procedures §15(d). Thus, under the Proposed Procedures, creditors would be forced to decide whether they intend to participate fully in plan litigation as early as April 27, 2011 (i.e. two weeks after the scheduled hearing on the Motion and two months before the hearing on the Disclosure Statement Motion). This false deadline is entirely premature and puts creditors in an untenable position without complete information.

11. Indeed, the Proposed Procedures would not only force Participants to determine whether to participate in discovery potentially more than two months before any disclosure statement is approved, Participants would also be required to actually formulate their discovery requests many weeks prior to such approval as well. The Debtors do not, and indeed cannot, even attempt to justify how the Participants can even begin to formulate discovery requests when there is nothing definitive on which to base such discovery. Further, even if the Debtors made wholesale changes to the First Amended Plan, the Proposed Procedures would arguably prevent new discovery requests that such revisions might otherwise justify.

7

12. The history of these Cases to date cannot give anyone comfort that the Debtors' First Amended Plan and the Ad Hoc Plan will bear any resemblance to the plan or plans that will be before this Court at the Confirmation Hearing. The Debtors filed the Original Debtors' Plan and the Revised Debtors' Plan approximately a year ago, and never solicited votes on either. On January 25, 2011, the Debtors filed the Debtors' First Amended Plan, which represents a materially different reorganization than the Debtors' previous plans. For example, the Debtors' First Amended Plan embodies a proposed "Plan Adjustment" that reduces the recoveries of creditors in certain classes, a key feature not found in the Debtors' Original Plan. And both the Debtors' Original Plan and the Debtors' First Amended Plan are fundamentally different from the Ad Hoc Plan, which would be implemented through a substantive consolidation of the Debtors. Moreover, news sources have reported in recent weeks that Goldman Sachs Group, Inc. is considering filing a third plan of reorganization – a liquidating plan.[3] If a third competing plan is filed after the proposed Notice of Intent Deadline, creditors whose treatment may be affected by such plan should be afforded time to analyze and digest the new plan before deciding whether to submit a Notice of Intent. Because (i) there are two fundamentally different plans of reorganization now on file, (ii) other competing plans of reorganization may be filed in the near future, (iii) the Debtors have already modified their proposed plan in a meaningful manner and may do so again, and (iv) the Debtors have not yet obtained approval of their Disclosure

---

[3] *See* Liz Moyer, *Once United, Goldman and Paulson Now Seem Divided*, Wall St. Journal, March 17, 2011, *available at* http://online.wsj.com/article/SB10001424052748703899704576204550211354520.html and David McLaughlin and Linda Sandler, *Goldman Sachs May Propose Competing Lehman Plan, Creditors Say*, Bloomberg Businessweek, March 11, 2011, *available at* http://www.businessweek.com/news/2011-03-11/goldman-sachs-may-propose-competing-lehman-plan-creditors-say.html.

8

Statement, creditors have no way of knowing at this point whether the Debtors' First Amended Plan and the Ad Hoc Plan are the plans that will be before this Court for confirmation.

13. Forcing parties to gear up for confirmation litigation at this early stage does not promote efficiency. In fact, it does the opposite. It forces parties to expend resources at a time when they do not know what issues they are litigating and will encourage parties to seek discovery on issues that may soon prove to be immaterial, and to seek discovery on issues that the Participants may have to anticipate arising whether or not they do so. More importantly, it prejudices creditors whose rights and recoveries may be affected by future plan modifications, because such creditors would not be allowed to participate fully in confirmation litigation if they chose not to engage in discovery before the Notice of Intent Deadline.

14. The Debtors are putting the cart before the horse here, and have offered no justification for forcing parties to act without complete information. Therefore, the request to establish a Notice of Intent Deadline at such an early stage must be denied.

*(ii)    The "Group Discovery" Construct Forces Non-Debtors to Mobilize Too Quickly*

15. The Proposed Procedures would funnel all document requests and deposition notices propounded by non-Debtor Participants through two separate "consolidation" steps. To achieve this, the Debtors (i) propose that one Participant will be designated to serve as the "Designated Party" for all other Participants and (ii) divide all of their creditors into nine groups (each, a "Group"). *See* Proposed Procedures §§3(a), 3(b).[4] The Proposed Procedures establish no mechanism for either (i) appointment of the Designated Party or (ii) coordination among the members of the Groups.

---

[4] The concept of a "Designated Party" was not a party of the Original Proposed Procedures, but was added to the revised Proposed Procedures filed on March 31, 2011.

9

16. Under the Proposed Procedures, within fourteen days of the Notice of Intent Deadline, either the Designated Party (in the case of requests propounded on the Debtors) or the Debtors (in the case of requests propounded on any other Participant) would present a set of preliminary Document Requests to all Participants. *See* Proposed Procedures §§3(a), 5(a), 6(a). Within ten days thereafter, all Participants (other than the Debtors) who wish to serve Document Requests on the Debtors or other Participants by supplementing the preliminary lists of Document Requests would have to coordinate among their Group and propose additional requests as part of the Group. *See* Proposed Procedures §§3(b), 5(b), 6(b). Thus, the members of each Group would be forced to coordinate and prepare their consolidated Document Requests directed at the Debtors and all other Participants within, at most, twenty-four days of the Notice of Intent Deadline.

17. This construct would impose unduly tight deadlines on collective action by dispersed creditors, and contains no mechanism to facilitate mobilization of the creditors. There are approximately four hundred twenty-five parties on the Master Service List for these Chapter 11 Cases, and it would not be surprising if dozens of parties elected to participate in Plan Discovery. Yet despite the complete lack of a mechanism for Participants to appoint a Designated Party, the Debtors expect Participants to appoint a Designated Party *and* for that Designated Party to formulate preliminary Document Requests directed at the Debtors within only fourteen-days of the Notice of Intent Deadline.[5] Given the number of dispersed creditors in these Chapter 11 Cases, the Proposed Procedures must (i) establish a process for appointment of

---

[5] In contrast, the procedures governing document discovery propounded on non-Debtor Participants afford the Debtors fourteen days to formulate preliminary Document Requests, despite the fact that the Debtors have already been self-appointed to take on such task and need no extra time for that task. *See* Proposed Procedures §§5(a), 6(a).

10

a Designated Party, (ii) allow time for such process and (iii) provide additional time for the Designated Party to formulate preliminary Document Requests.

18.     Second, the Proposed Procedures create no mechanism to facilitate mobilization of each of the nine Groups. They do not even create a mechanism by which a creditor can access the identities and contact information of the other creditors in its Group. The time allotted is not sufficient for all creditors of the Debtors to mobilize themselves into nine creditor Groups, individually determine topics on which they need document discovery and consolidate all of those individual topics into one list of Document Requests to provide to the Designated Party or Debtors (as applicable). Instead, any order should include a mechanism and reasonable timeframe for each Group to form. Once each Group has formed, it should *then* be afforded its allotted time to provide its consolidated list of Document Requests to the Designated Party or Debtors (as applicable).

*(iii)    Proposed Modification*

19.     The foregoing problems can be fixed by establishing a different time frame that will more properly balance the stated goal of efficiency and coordination with the rights of potential Participants to full discovery and participation. The Notice of Intent Deadline should be set for a date shortly (for example, five business days) *after* this Court approves a disclosure statement with respect to the Debtors' plan of reorganization. With that deadline Participants will have greater (though certainly not yet complete) information as to the terms of the plan that the Debtors will seek to confirm.

20.     Additionally, the Notice of Intent should be modified to require each Participant to identify the Group(s) that it wishes to join and whether it wishes to be considered for the role of "Designated Party." Within a set period of time following the Notice of Intent Deadline (as short a period as the Debtors believe will work), the Debtors should file and serve on each

11

Participant a list of all Participants with such information and contact information. The Debtors should propose a workable process for appointment of the Designated Party. Following appointment of the Designated Party, the Designated Party should be afforded its allotted fourteen days to create a preliminary list of Document Requests. Additionally, the ten-day time period for each Group to propose Document Requests to the Designated Party (in the case of requests propounded on the Debtors) or the Debtors (in the case propounded on other Participants) should be increased to twenty-one days, given the large numbers of participants involved, to allow sufficient time for coordination among the members of each Group.

21.     Such a schedule would allow Participants both to decide whether to participate, as well as organize themselves in the manner requested by the Debtors, with more information and on an achievable, realistic time frame.

**B.     Limitation on Discovery of Debtors' Purportedly "Privileged" Document Categories is Overbroad and, in Any Event, Should Apply Mutually to Debtors and Creditors**

22.     The Proposed Procedures would absolve the Debtors – and only the Debtors – from searching and producing from six categories of documents when responding to Document Requests on the basis that such documents are purportedly "privileged." *See* Proposed Procedures §3(j).[6] Certain of the categories of documents that the Proposed Procedures would complete exclude from discovery are absurdly overbroad. Additionally, to the extent any categories of documents are excluded from discovery, such exclusions should apply mutually (i.e. to Document Requests propounded upon all other Participants and non-Participants as well).

---

[6]     Under the Proposed Procedures, other Participants and non-Participants that are in bankruptcy or other insolvency proceedings would not be required to search for or produce from (i) hard copy files of outside counsel, (ii) communications solely within an outside counsel's law firm and (iii) communications solely between the party and such party's outside counsel. *See* Proposed Procedures §11(c). As BdB is not in insolvency, this carve-out would not apply to BdB.

23. The Debtors' categories of purportedly "privileged" documents that would be excluded from discovery are:

1. Hard copy files of in-house and outside counsel;
2. Documents and communications solely between in-house counsel and outside counsel;
3. Internal documents and communications solely within an outside counsel's law firm;
4. Documents and communications solely between or among outside counsel law firms for a single client;
5. Documents and communications solely between or among outside client and inside counsel;
6. To the extent a request seeks documents prepared or dated after the date of filing of the Debtors, chapter 11 petitions, internal documents and communications solely within an advisor.

*See* Proposed Procedures §3(j).

24. None of the foregoing categories of documents are, in and of themselves, "privileged." The applicability of attorney-client privilege, work product privilege and any other privilege depends on the *content*, not merely the *source* of the documents. As examples of the Debtors' attempts to sweep large categories of discoverable non-privileged documents into a blanket privilege, documents in categories one and six are far too likely to be both highly relevant and non-privileged for the Debtors to avoid searching those broad categories of documents in their entirety.

25. The Debtors should be required to search and produce from hard copy files of legal counsel (category one). The mere fact that a document is in a lawyer's possession does not make that document privileged, and does not even make it likely that the document will be privileged. Lawyers routinely receive hard copies of documents that are not protected by the attorney-client privilege and retain such documents in their files. Because highly relevant, non-privileged documents are likely to be found in the files of in-house and outside counsel, the Debtors should be required search such and produce documents from those sources (as the Debtors expect other parties to do).

13

26. Likewise, communications with and documents generated by advisors (category six) are not presumptively privileged and there is simply no reason such documents should be carved out of discovery. Moreover, to the extent that the Debtors' postpetition management, Alvarez & Marsal LLC, falls within the scope of the term "advisor," the Proposed Procedures would exclude from discovery all communications purely among the Debtors' postpetition management (even where no attorneys were involved in such communications) and all documents of the Debtors' postpetition management. This would prejudice the rights of Participants to obtain meaningful discovery from the Debtors regarding their postpetition operations, asset values, and formulation of any Debtor plan (just to name a few topics). But even were it not for the fact Alvarez & Marsal is arguably an "advisor," excluding the documents and communications of non-legal advisors would sacrifice far too much highly relevant, non-privileged material from discovery. Therefore, the Debtors should be required to search and produce from the documents and communications of advisors, as the Federal Rules of Civil Procedure require, and as the Debtors expect all other parties to do.

27. Finally, if the Debtors believe that the cost savings of excluding categories two through five from document searches outweigh the benefits of searching such categories, then *all parties* – not only the Debtors and, to a limited degree, other parties currently in bankruptcy or other insolvency proceedings – should be allowed to exclude categories two through five from their document searches. The Debtors' efficiency agenda cannot be a one-way street.

C. **Other Proposed Modifications of Discovery Rules Confer Unfair Advantage on Debtors**

28. The other provisions of the Proposed Procedures that would relieve the Debtors from burdensome discovery should also apply mutually and, more generally, the Proposed Procedures should not confer an unfair litigation advantage upon the Debtors.

14

NY\1780805.5

29. <u>First</u>, the Proposed Procedures provide that the Debtors – and only the Debtors – would not be subject to additional discovery following the filing of a new plan or an objection to a plan (including an objection *by the Debtors* to an Alternative Plan). *See* Proposed Procedures §15(d). If the Debtors believe (as they should) that the filing of a new plan or an objection to a plan warrants re-opening discovery with respect to novel issues, there is no reason for the Debtors to be absolved from responding to additional discovery under such circumstances.

30. <u>Second</u>, the Proposed Procedures give the Debtors far too much control in setting the schedules for fact and expert depositions, which could prejudice other Participants.

31. The Debtors would have the unilateral right to decide that their document production is substantially complete, which would trigger the date on which deposition schedules commence with respect to all depositions – not only depositions of the Debtors and their employees. *See* Proposed Procedures §§3(k), 13. Even if a Participant disputed that the Debtors' document production was substantially complete, or if document production from other parties is still ongoing, the Proposed Procedures provide that all depositions would go forward despite such unresolved document discovery issues. This structure provides the Debtors with far too much leeway to declare document discovery substantially complete just because the Debtors so determine, without any ability to obtain review of that decision – and even while other Participants are awaiting production of additional documents.[7]

32. The Proposed Procedures should be modified to remedy the imbalance associated with the Debtors having unilateral control over the date on which deposition timelines commence. Specifically, (i) the deposition deadlines and schedules should be tolled pending

---

[7] For example, under the proposal the Debtors could declare their document production "substantially complete" even while their withholding of certain documents was under challenge – thus forcing the other parties to begin taking depositions without the aid of what might be critical documents. That is not fair under any definition of the term.

15

resolution of outstanding disputed concerning document production and (ii) the deposition timelines should commence only when all parties – not only the Debtors – have completed document production.

33. Additionally, under the current proposal the Debtors would have the unilateral right to declare fact discovery complete, and expert discovery timelines run from the date on which the Debtors make such a declaration. *See* Proposed Procedures §§15(e), 16. For the same reasons noted above, the deadlines and schedules for expert discovery should be tolled if a Participant disputes the Debtors' determination that fact discovery was in fact complete.

34. Third, the Debtors' proposal for formulation and service of interrogatories is entirely unworkable. The Proposed Procedures appear to limit all Participants, collectively, to one set of twenty-five interrogatories that they may collectively serve on each individual Participant. It is unimaginable that all Participants would be able to coordinate among themselves and agree upon only twenty-five interrogatories to serve on each Participant (including, for example, the Debtors and each Alternative Plan Proponent).

35. Furthermore, the Proposed Procedures expressly grant priority to the Debtors, the Alternative Plan Proponents and the Committee over the content and scope of such collective interrogatories. With only twenty-five interrogatories available to all Participants collectively, and priority given to the Debtors, the Alternative Plan Proponents and the Committee, other Participants like BdB might have no say whatsoever in the content of the collective interrogatories. To remedy such infirmity, while still promoting the goal of efficiency, BdB proposes that the Debtors and each Group separately be afforded twenty-five interrogatories to serve on each Participant.

**D.      Miscellaneous Objections**

36.     <u>Creditors of LBIE Should Constitute Separate Creditor Group</u>. In the Proposed Procedures, the Debtors lump together "the guarantee creditors of LBHI for which a non-U.S. affiliate is the primary obligor (other than holders of Lehman Programs Securities)." *See* Proposed Procedures §3(b). However, given the extraordinary number of creditors of LBIE who would fall into that Group, such creditors would swamp all creditors in that Group who do not have claims against LBIE, effectively disenfranchising the non-LBIE creditors. Thus, LBIE creditors should constitute a separate Group.

37.     <u>Deadline for Filing Rebuttal Expert Reports Should be After Initial Expert Depositions</u>. The Proposed Procedures provide that rebuttal expert disclosures, including rebuttal expert reports, must be served before depositions of any experts are taken. *See* Proposed Procedures §16. This schedule prejudices parties intending to file expert rebuttal reports, because in preparing their reports, the rebuttal experts will not have access to the initial expert's deposition testimony. The Proposed Procedures should be modified to set the deadline for filing rebuttal expert reports after the initial expert depositions.

## CONCLUSION

**WHEREFORE**, Bundesverband deutscher Banken e.V. requests that this Court deny the relief requested in the Motion to the extent set forth herein, and grant such other and further relief as this Court may deem just and proper.

Dated: April 7, 2011　　　　　　　　　　Respectfully submitted,
New York, New York

                                        **LATHAM & WATKINS LLP**

                                        By: /s/ *Mark A. Broude*
                                            Mark A. Broude
                                            Blair Connelly
                                        885 Third Avenue, Suite 1000
                                        New York, New York 10022
                                        Telephone: (212) 906-1200
                                        Facsimile: (212) 751-4864

                                        Counsel for Bundesverband deutscher Banken e.V.

NY\1780805.5