Hearing Date and Time: April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Harvey R. Miller

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |

---------------------------------------------------------------x

**DEBTORS' OPPOSITION AND OBJECTION TO MOTION OF THE**
**AD HOC GROUP OF LEHMAN BROTHERS CREDITORS DATED MARCH 29, 2011**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), oppose and object to the motion of the "Ad Hoc Group of Lehman Brothers Creditors" (the "Ad Hoc Group"), dated March 29, 2011 (the "Motion"), requesting an order scheduling a hearing pursuant to section 1125 of title 11 of the United States Code (the "Bankruptcy Code") to consider and approve its proposed disclosure statement (the "Ad Hoc Disclosure Statement") related to the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors (the "Ad Hoc Plan"), filed by the Ad Hoc Group, and respectfully state:

**Preliminary Statement**

1.  The Ad Hoc Group's Motion is directed to the discretion of the Court. The Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") do not provide guidelines for processing alternative disclosure statements and chapter 11 plans and do not require that multiple plans must be processed concurrently. Rather, pursuant to section 105(d) of the Bankruptcy Code and the inherent power of the Court to manage its docket, the scheduling and consideration of alternative disclosure statements and chapter 11 plans is reserved for the discretion of the Court, which is to be exercised in light of the facts and circumstances of the case before it.

2.  The unprecedented facts and circumstances of these cases represent the appropriate context for the Court to exercise its discretion and afford the Debtors, who have been laboring in negotiations to gain consensus and support for their plan, to go forward first with the prosecution of their proposed disclosure statement and plan. The pending chapter 11 cases are patently unique in terms of their global nature, size, complexity, issues, and scope of parties involved. Indeed, as the Court has previously noted in connection with these cases, Congress clearly did not have in mind cases of such dimensions and issues when it amended section 1121 of the Bankruptcy Code to limit a debtor's exclusivity for the filing of a proposed plan to a maximum of 18 months.[1] Such limitation does not, however, affect or diminish the power of the Court to regulate the processing of multiple proposed disclosure statements and plans based upon the pertinent facts and circumstances.

---

[1] *See* Tr. of July 15, 2009 Hr'g at 98:1-6 ("When Congress amended the provisions of 1121 in the 2005 amendments to limit the discretion of a bankruptcy court judge to extend exclusivity more than eighteen months from the filing date, I rather expect that Congress wasn't thinking about the Lehman Brothers Holdings bankruptcy case.").

3. Currently, the Debtors' Plan (defined below) and the Ad Hoc Plan have been filed. The Debtors' Plan and the Ad Hoc Plan are radically different alternatives. The Debtors' Plan is the result of extended discussions and creditor input and proposes to resolve the multifaceted issues raised by the 23 filed chapter 11 cases and approximately 80 foreign insolvency proceedings in a fair and reasonable manner and obviates potentially extended, prolix, and burdensome litigation. The Ad Hoc Plan is predicated on the substantive consolidation of the Debtors and certain foreign affiliates that will require such litigation.

4. If the Debtors' Plan is confirmed, it will relieve the need for further proceedings and save considerable time and expense, all of which will inure to the benefit of claimants. Negotiations over the Debtors' Plan are at a critical stage and contemporaneous consideration of alternative disclosure statements and plans may derail such negotiations and encourage other parties to propose alternative plans. Joint consideration of multiple plans will be confusing and detrimental to the orderly administration and completion of these cases.

5. The exercise of discretion by the Court to sequence consideration of alternative disclosure statements and alternative plans will not infringe on any substantive rights that alternative plan proponents may have. The Debtors are only requesting that the Court defer consideration of the alternative plan proposed by the Ad Hoc Group. Consideration of the Debtors' Plan first will result in a more orderly administrative process that may significantly expedite the conclusion of these cases.

**Background**

6. Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated

for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7. On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed a statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

8. On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan [Docket No. 14150] (the "Debtors' Plan") and proposed disclosure statement [Docket No. 14151] (the "Debtors' Disclosure Statement").

9. On December 15, 2010, the Ad Hoc Group filed the Ad Hoc Plan [Docket No. 13504] and the Ad Hoc Disclosure Statement [Docket No. 13505].

10. A hearing pursuant to section 1125 of the Bankruptcy Code to approve the Debtors' Disclosure Statement and related relief is scheduled for June 28, 2011 [Docket No. 15082].

11. On March 30, 2011, the Debtors filed the *Motion of Lehman Brothers Holdings Inc. to Compel the Ad Hoc Group of Lehman Brothers Creditors to Comply with Federal Rule of Bankruptcy Procedure 2019* [Docket No. 15461] requesting that the Ad Hoc Group be directed to fully comply with Bankruptcy Rule 2019 or otherwise be precluded from further participation in these chapter 11 cases.

**The Court Should Exercise Its Discretion and Defer Consideration of Alternative Disclosure Statements and Plans Pending the Prosecution of the Debtors' Plan**

12. The Court's discretion to sequence consideration of disclosure statements and defer consideration of alternative plans is rooted in its statutory and inherent power to manage its docket in light of the facts and circumstances of the case before it. *See* 11 U.S.C.

§ 105(d)(2) (authorizing the court to "issue an order . . . prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that . . . (iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan . . ."); 140 CONG. REC. H10,764 (daily ed. Oct. 4, 1994) (rem. of Rep. Brooks), *reprinted in* 2 COLLIER ON BANKRUPTCY P 105.LH[5] n.16 (15th ed. rev. 2011) (section 105(d) "authorizes bankruptcy court judges to . . . manage their dockets in a more efficient and expeditious manner"); *see also Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) (the court has the "inherent power" to "manage [its] owns affairs so as to achieve the orderly and expeditious disposition of cases"); *Landis v. North American Co.*, 299 U.S. 248, 254 (1936) (noting the "power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants").

    13. The Advisory Committee Note to 1996 amendments to Bankruptcy Rule 3016, which removed a restriction on the filing of alternative plans, specifically supports the Court's discretion to schedule sequential hearings on multiple disclosure statements: "The abrogation of subdivision (a) [*i.e.*, removal of the restriction on filing alternative plans] *does not affect the court's discretion with respect to the scheduling of hearings on approval of disclosure statements when more than one plan has been filed.*" *In re Sunflower Racing, Inc.*, 218 B.R. 972, 978 (D. Kan. 1998) (quoting 1996 Advisory Committee Note to Bankruptcy Rule 3016, internal quotation marks omitted, emphasis added) (observing that the "Committee Notes reflect that having multiple plans proceed on the same schedule is not mandatory"). Accordingly, the Court has ample authority to exercise its discretion to sequence hearings on alternative disclosure statements and deferring consideration of alternative plans.

14. The facts and circumstances of these cases are sufficient to support the Court's exercise of its discretion to defer consideration of alternative plans. *In re Sunflower Racing, Inc.*, 218 B.R. 972 (D. Kan. 1998) is directly on point and supports the Debtors. In *Sunflower*, based upon the facts and circumstances of that case, the bankruptcy court denied a creditor group's motion to have its alternative plan be considered on the same schedule as the debtor's plan. The district court dismissed the creditor group's appeal and held that "[f]rom our review of the substantive issue, it appears the bankruptcy court's decision to deny the Creditor Group's motion was *well within its discretion*." *Id*. at 978 (emphasis added). "Section 105, coupled with the terms of Sections 1121 and 1125, suggests that [the court] can look to equitable factors to fix a time schedule as may be necessary to keep the process fair, fast, effective, and efficient." *Id*. (quoting *In re Aspen Limousine Serv., Inc.*, 187 B.R. 989, 995 (Bankr. D. Colo. 1995) (footnote omitted), *aff'd*, 193 B.R. 325 (D. Colo. 1996) (internal quotation marks omitted)).[2]

15. The facts and circumstances of the pending chapter 11 cases present appropriate bases for the exercise of discretion to facilitate a fair, orderly process for

---

[2] Although the *Sunflower* court recognized that other courts have allowed multiple plans to proceed concurrently, there is no mandatory requirement in the Bankruptcy Code or Bankruptcy Rules for joint solicitation. *In re Landmark Park Plaza Ltd. P'ship*, 167 B.R. 752 (Bankr. D. Conn. 1994) and *Matter of Mother Hubbard, Inc.*, 152 B.R. 189 (Bankr. W.D. Mich. 1993) are distinguishable from the instant case. In each of those cases, Bankruptcy Rule 3016(a) had not yet been amended and at that time prohibited the filing of alternative plans if there was already a plan on file for which the disclosure statement had been approved unless confirmation of such plan had been denied or the court directed otherwise. However, Bankruptcy Rule 3016(a) has been amended to remove this restriction, *see supra* ¶ 13, and the revised rule "does not affect the court's discretion" in scheduling hearings on multiple disclosure statements. *See id*. Unlike the courts in *Landmark* and *Mother Hubbard*, the Court here is not being asked to decide whether the Ad Hoc Group may file an alternative plan. Rather, the Debtors ask that the Court, in light of the unique facts and circumstances of these chapter 11 cases, exercise its discretion to allow the Debtors' Disclosure Statement to be heard, and acceptances of the Debtors' Plan to be solicited, before considering alternative disclosure statements and plans. This is consistent with *Landmark* and *Mother Hubbard*, where, based on the facts and circumstances of those cases, the courts exercised their discretion and permitted alternative plans to be filed even though the debtors' disclosure statements already had been approved and confirmation of their respective plans had not been denied. The Ad Hoc Plan is on file. Deferral of its disclosure statement and plan prosecution is procedural only, and the existence of such alternative plan as an option for claimants will be fully disclosed in connection with the solicitation of acceptances of the Debtors' Plan. If the Debtors' Plan is rejected and denied confirmation, any alternative plans may be prosecuted.

administering the plan prosecution without unnecessary confusion and disorder.  The Debtors' Plan has the support of the Creditors' Committee, which has functioned as the representative of all of the creditor interests.  In that position it has negotiated and presented this plan after taking into consideration all such interests.  In contrast, the Ad Hoc Plan presents the parochial interests of thirteen entities that collectively purport to hold "claims of approximately $20.2 billion across the Lehman Brothers capital structure, including approximately $16.1 billion of senior unsecured claims against LBHI."  *See* Docket No. 15216.  The Ad Hoc Plan is not representative of the interests of creditors or the Debtors.  Rather, it is an attempt to apply leverage with the objective of materially increasing recoveries to the Ad Hoc Group's members.  In such circumstances, it is prudent and proper to sequence the processing of proposed plans and grant primacy to the Debtors and best serve the interests of *all* stakeholders and parties in interest.

16. The Debtors' have filed their plan to bring these cases to an efficient conclusion that may obviate the need for consideration of alternative plans, such as that proposed by the Ad Hoc Group.  Many issues will be heavily contested if the Ad Hoc Plan is processed jointly with the Debtors' Plan to the prejudice of parties in interest.  Confirmation of the Debtors' Plan will eliminate such potential litigation.  Simply stated, the Ad Hoc Plan is a battle that may be deferred to another day and potentially avoided.  The Court has discretion under the authority set forth in this objection to allow the Debtors' Plan to be considered first.  The Court should exercise such discretion here and deny the Motion.

### The Responses Filed to Ad Hoc Group's Motion Should Be Rejected

17. On April 6, 2011, several responses to the Ad Hoc Group's Motion were filed with the Court.[3]  Essentially, the respondents submit that fairness and efficiency mandate

---

[3] *Statement in Support of the Motion*, filed by County of Alameda [Docket No. 15630]; *Response of the Operating Company Creditors to the Motion*, filed by the "Big Banks" (defined, without limitation and solely for the purposes

the joint consideration of any alternative disclosure statements and plans filed by parties in interest. For the reasons set forth above, fairness and efficiency would be best served by sequential consideration of alternative disclosure statements and plans after the Debtors have had a reasonable opportunity to prosecute the approval of their disclosure statement and confirmation of their plan. That process would be more expeditious and beneficial and provide a simple and orderly process to achieve the objectives of the Bankruptcy Code without the vexatious, expensive, time-consuming litigation that is inherent in the Ad Hoc Plan and any other plan that may be filed.

18. One of the responses was filed on behalf of the Big Banks, which were counterparties to Debtor entities in connection with derivatives transactions. The Big Banks assert extraordinarily large unresolved claims, which are disputed by the Debtors, and contend they are entitled to multiple recoveries based on the alleged separate identities of the Debtor entities. The Big Banks have requested that any disclosure statement for an alternative plan they may file be considered at the same time as the hearing to consider the Debtors' Disclosure Statement. Attached to their response is an email trail between the attorneys for Goldman Sachs and D. E. Shaw and the Debtors' attorneys. It is contended that the email, dated March 31, 2011, from the Debtors attorneys to the attorneys for Goldman Sachs and D. E. Shaw constitutes an agreement precluding the Debtors from opposing and objecting to consideration and approval of any potential disclosure statement that may be filed by the Big Banks. To complete the email trail, annexed hereto as <u>Exhibit A</u> is an email, dated April 4, 2011, from the Debtors' attorneys to

---

of this Objection, as the entities defining themselves in their response as the "Operating Company Creditors") [Docket No. 15668]; *Statement of Farallon Capital Partners, L.P. in Support of the Motion* [Docket No. 15669]; *Statement of Various LBT Noteholders Regarding the Motion* [Docket No. 15671]; *Statement of Centerbridge Credit Advisors LLC with Respect to Response of Operating Companies to the Motion* [Docket No. 15672]; *Limited Response of Bank of America, N.A. to the Motion* [Docket No. 15673]; *Joinder of Carval Investors UK Limited to Response of Operating Company Creditors to Motion* [Docket No. 15674].

the attorneys for Goldman Sachs and D. E. Shaw. As stated therein, there was never any intention on the part of the Debtors to waive or release any objections, opposition, or defenses that the Debtors might possess in connection with consideration of any alternative disclosure statements and plans.

19. The exercise of the discretion vested in the Court to sequence consideration of proposed disclosure statements and plans to enable the Debtors to proceed first in these cases is fully warranted.

WHEREFORE the Motion should be denied and the Debtors granted such other and further relief as is just.

Dated:  April 8, 2011
     New York, New York

/s/ Harvey R. Miller
Harvey R. Miller

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# Exhibit A

**(Email Correspondence, Dated April 4, 2011)**

# Pflaum, Joanne

| | |
|---|---|
| **From:** | Ennis, Judith on behalf of Miller, Harvey |
| **Sent:** | Monday, April 04, 2011 3:50 PM |
| **To:** | 'Thomas J MOLONEY' |
| **Cc:** | 'Ehrmann, Daniel' |
| **Subject:** | LBHI - LBSF, et al. |

Tom,

Methinks you are over excited. What I agreed to in our discussions was that a disclosure statement filed by your group would be scheduled for approval hearing at the same time as the Debtors' proposed disclosure statement, but I did not agree to waive any objections, defenses, etc. with respect to that disclosure statement. The Debtors will be taking a position as to the only alternative plan on file that consideration of the Ad Hoc Group disclosure statement should be deferred pending approval of the Debtors' disclosure statement, and if approved, the prosecution of the confirmation process.

If you or your clients file a proposed plan and disclosure statement, the Debtors propose to take the same position in seeking sequential consideration of disclosure statements and plans.

On reflection, I believe you will find that to be a reasonable position.

Thank you.



Judith Ennis
Legal Secretary

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
judith.ennis@weil.com
+1 212 310 8398 Direct
+1 212 310 8007 Fax

1