# **EXHIBIT C**

# SECURITIES AND EXCHANGE COMMISSION

## REPORT

ON THE

### STUDY AND INVESTIGATION
### OF THE WORK, ACTIVITIES, PERSONNEL
### AND FUNCTIONS OF PROTECTIVE
### AND REORGANIZATION
### COMMITTEES

PURSUANT TO SECTION 211 OF THE
SECURITIES EXCHANGE ACT OF 1934

## PART I

STRATEGY AND TECHNIQUES OF PROTECTIVE AND
REORGANIZATION COMMITTEES



WASHINGTON, D. C.
### May 10, 1937

UNITED STATES
GOVERNMENT PRINTING OFFICE
WASHINGTON : 1937

586

the real estate field,[480] in the municipal field,[481] and to a somewhat lesser extent in the foreign field.[482] In fact, it is true with respect to reorganizations of all types of companies or securities. There are cases, of course, where banker-management committees have sought to represent the security holders by other means, such as proxies. But such instances are the exception rather than the rule. As we show hereafter, the use of proxies has more commonly been a characteristic of independent committees.[483]

The deposit agreement has in many respects been the foundation of the control which committees dominated by the inside group have been able to obtain over the security holders. It is this agreement which has given the committees their unifying quality. As one witness before this Commission has stated,[484] these agreements "bind the depositor to go along with the Committee through thick and thin."[485]

The deposit agreement is a contract. One party to it is the committee; the other, the depositing security holders. The latter usually become parties by the act of depositing their bonds under the agreement through any one of the designated depositaries or sub-depositaries. But this contract is not one that has been negotiated by persons dealing at arm's length. Whether or not particular provisions should be included has been the decision of the committee, or more realistically, of its counsel; in this decision depositors have not participated.

In fact, it is seldom that the security holders have seen the completed agreement, either before or after depositing. It is a rare practice to send copies of the agreement with letters soliciting deposits. Occasionally, the circulars state that copies of the agreement will be mailed to applicants on request. In other cases the practice has been to state that copies of the agreement were on file with the depositary or sub-depositary where they might be examined. To

---

[480] Part III, Committees for the Holders of Real Estate Bonds (1936), at 55.

[481] Part IV, Committees for the Holders of Municipal and Quasi-Municipal Obligations (1936), at 61.

[482] Part V, Protective Committees and Agencies for Holders of Defaulted Foreign Governmental Bonds (1937), Sec. IV, A, 1. As we point out in that section of the report, a number of committees in the foreign bond field solicit neither deposits nor proxies but merely request the bondholders to "register" their names, addresses and bond holdings with the committee. The same practice has been followed by committees in domestic corporate reorganizations. Examples are the committee for the debentures of Cuban Cane Products Co., Inc., in the 1935 reorganization of that corporation (op. cit. supra note 56, at 765–770), and the committees respectively for the consolidated mortgage bonds and the preferred stock in the recent 77B reorganization of The Baldwin Locomotive Works. Op. cit. supra note 1, at 412–415, 434–436.

[483] See Sec. III. B. 2, infra.

[484] Arnold Bernhard, chairman of the Independent Consolidated Bondholders Committee in the recent reorganization of The Baldwin Locomotive Works. Op. cit. supra note 1, at 470.

[485] Id., at 492.

# SECTION V

## CONCLUSIONS AND RECOMMENDATIONS

The foregoing survey supplies ample evidence of the necessity of refashioning the process of reorganization to the end that primary emphasis be given to the protection of the interests of investors. There are three needs which should be met in this connection.

*First:* It is essential that measures should be taken to place the control of reorganizations with *bona fide* security holders and their direct representatives. It is their investment which is at stake in any reorganization. The right to be heard in all matters arising in a reorganization proceeding, and the privilege of submitting plans and suggestions for plans should be freely accorded them. The activities of independent groups who represent *bona fide* interests should be encouraged. By the same token, control of reorganizations should be denied to persons whose sole claim is derived from a position in the management of the corporation or from banking associations with it. The history of reorganization demonstrates that the objectives of such persons are often incompatible with the interests of the real owners. Racketeering groups who neither own nor represent *bona fide* interests should be excluded from participation in the reorganization, so that the pressure of their nuisance value will be removed. Similarly, control of reorganizations should not be subject to seizure by financial interests primarily motivated by the desire to obtain control of the new or reorganized company. Likewise, measures should be adopted to deal with those who acquire securities or claims at default prices and either capitalize on their nuisance position or endeavor to effectuate settlements or plans favorable to those who bought at depressed prices but disadvantageous to those who purchased at pre-default prices.

*Second:* It is essential that renewed emphasis be given to the fact that representatives of security holders in reorganization occupy a fiduciary position. It is intolerable that they or their lawyers should possess dual or multiple interests. Likewise, neither committees nor other participants in reorganization should be permitted to be the sole arbiters of their fees and expenses.

*Third:* It is essential that the abuses which have characterized the strategy and techniques of reorganization should be eliminated. The use of deposit agreements as means of preserving or obtaining arbitrary and exclusive control over security holders should not be permitted. The virtual monopoly on lists of security holders