# **<u>EXHIBIT F</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| SCOTIA DEVELOPMENT LLC, | § | Case No. 07-20027-C-11 |
| | § | Jointly Administered |
| Debtor. | § | (Chapter 11) |

**SCOTIA PACIFIC COMPANY LLC'S MOTION FOR AN ORDER COMPELLING THE AD HOC COMMITTEE TO FULLY COMPLY WITH BANKRUPTCY RULE 2019(A) BY FILING A COMPLETE AND PROPER VERIFIED STATEMENT DISCLOSING ITS MEMBERSHIP AND THEIR INTERESTS**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON APRIL 10, 2007 AT 11:00 A.M. BEFORE THE HONORABLE RICHARD S. SCHMIDT, 1133 NORTH SHORELINE, 2ND FLOOR, CORPUS CHRISTI, TEXAS 78471. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING UNLESS YOU DID NOT RECEIVE THIS NOTICE IN TIME TO DO SO. IN THAT SITUATION, FILE YOUR RESPONSE AS SOON AS POSSIBLE. IN ADDITION TO FILING YOUR RESPONSE WITH THE CLERK, YOU MUST GIVE A COPY OF YOUR RESPONSE TO THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

Scotia Pacific Company LLC ("Scopac") files its Motion for an order compelling the Ad Hoc Committee of Noteholders (the "Ad Hoc Committee") to file a verified statement complying fully with the requirements of Bankruptcy Rule 2019(a) (the "Motion"). In support of this Motion, Scopac respectfully states as follows:

**I.
THE AD HOC COMMITTEE THREATENS SCOPAC'S REORGANIZATION
WHILE HIDING BEHIND A VEIL OF SECRECY.**

1. Scopac has come to this Court to reorganize its business. Throughout the eight weeks this case has been pending, however, the Ad Hoc Committee has done its best to distract

Scopac by adopting an aggressive and improper posture – a posture manifested most recently by its filing of several pleadings on venue that focused not on the relevant law but on fanciful accusations regarding, and *ad hominem* attacks on, Scopac, Scopac's management, the Pacific Lumber Company ("Palco") (Scopac's parent and co-debtor), and MAXXAM, Palco's ultimate corporate parent. Scopac has been forced to expend considerable time and resources in responding to the Ad Hoc Committee's patently absurd pleadings and "hard line" positions on everything from the character of Scopac's business to Scopac's request for a financial advisor.[1] The Ad Hoc Committee has taken these positions while hiding behind a veil of secrecy that is patently contrary to the open disclosure policies underlying the Bankruptcy Code and the express provisions of Bankruptcy Rule 2019(a).

2.  Thus, the Ad Hoc Committee has, to date, failed to disclose to Scopac, the Court, or any other interested party, crucial information required by the Bankruptcy Rules, including the composition of the ad hoc committee, the interests each committee member holds and at what price such interests were acquired. The Ad Hoc Committee's decision to keep such information shrouded in mystery both violates the clear and express provisions of Federal Rule of Bankruptcy Procedure 2019 ("Rule 2019") and creates an unnecessary and improper risk of overreaching and unfairness in Scopac's reorganization process. Accordingly, Scopac respectfully requests that the Court issue an order compelling the Ad Hoc Committee to file a verified statement in accordance with the requirements of Rule 2019(a). Scopac also respectfully

---

[1] Nor does the Ad Hoc Committee stop at filing its pleadings with scurrilous, baseless, and personal accusations; in addition, its counsel continually seeks to try this case in the press. Moreover, counsel for the Ad Hoc Committee is demanding that the estate bear the cost of these attacks.

2

requests that unless and until the Ad Hoc Committee files an adequate verified statement under Rule 2019, this Court refuse to further hear the Ad Hoc Committee in connection with this case.

## II.
## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.
## BACKGROUND

4.      On January 18, 2007 (the "Petition Date"), Scopac filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, Sections 101 *et seq.*, as amended (the "Bankruptcy Code").  Scopac's bankruptcy case is being jointly administered under Case No. 07-20027.

5.      Scopac continues to operate its business and manage its properties as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

6.      No trustee or examiner has been appointed in Scopac's bankruptcy case.

7.      Scopac owns approximately 200,000 acres of timberland (the "Scopac Timberlands") and has the exclusive rights to harvest timber on 12,200 additional acres of timberland (the "Scopac Timber Rights" and, together with the Scopac Timberlands, the "Scopac Timber") owned by Palco.  Scopac's business is to manage every stage of the lives of the trees on the Scopac Timber, to negotiate a Byzantine regulatory process to obtain approval for the harvest of those trees, and to sell standing timber for harvest, usually to Palco pursuant to the terms of certain agreements between Palco and Scopac and sometimes to other third parties.

3

**A.     The Timber Notes.**

8.     Scopac is a party to the indenture dated July 20, 1998 (as amended from time to time, the "Indenture"), by and between Scopac and The Bank of New York, as successor trustee (the "Indenture Trustee"), pursuant to which Scopac issued $867.2 million in aggregate principal amount of Timber Notes, which were issued in three classes:  6.55% Series B Class A-1 Timber Collateralized Notes due 2028 (the "Class A-1 Notes"), 7.11% Series B Class A-2 Timber Collateralized Notes due 2028 (the "Class A-2 Notes") and 7.71% Series B Class A-3 Timber Collateralized Notes due 2028 (the "Class A-3 Notes," together with the Class A-1 Notes and the Class A-2 Notes, the "Timber Notes").  The Timber Notes are due July 20, 2028 and are subject to prepayment out of funds that may become available for that purpose as provided in the Indenture.  Scopac's annual interest payments on the Timber Notes are approximately $54 million.  The Timber Notes are presently traded on the public market.

9.     The Timber Notes are senior secured obligations of Scopac and do not constitute obligations of, and are not guaranteed by, any other entity.  Interest and any principal is paid to the holders of the Timber Notes (the "Noteholders") on a semi-annual basis, on January 20th and July 20th of each year (each, a "Note Payment Date").

**B.     The Ad Hoc Committee.**

10.     The Ad Hoc Committee appeared in the above-captioned matter at the first day hearings held on January 19, 2007.  In short order, the Ad Hoc Committee began aggressively inserting itself into these cases.  In one day, for example, the Ad Hoc Committee launched three pleadings designed to halt Scopacs's reorganization:

- Motion for (A) Determination that Scotia Pacific Company LLC is a Single Asset Real Estate Debtor, and (B) Order Requiring that Scotia Pacific Company

4

Comply with the Requirements of Bankruptcy Code 362(d)(3) (the "SARE Motion") (Dkt. no. 188);

- Objection to Emergency Motion of Scotia Pacific Company LLC for an Order Granting Extension of Time for Filing Creditor List, Schedules and Statement of Financial Affairs (Dkt. no. 189); and

- Objection to Scopac's Continued Use of Cash Collateral (Dkt. no. 190).

From that time forward, the Ad Hoc Committee has been extremely aggressive in its filing of additional motions, objections and responses, each one designed to distract from the true focus of these cases.

11. For instance, in just the last seven weeks, the Ad Hoc Committee has filed:

- On February 6, 2007, a (A) Limited Objection to Motion of California Resources Agency, Et Al., For Expedited Hearing on Motion to Transfer Venue, or (B) In the Alternative, Motion to Expedite Hearing on the Noteholder Committee's Single Asset Real Estate Motion (Dkt. no. 202);

- On February 6, 2007, an amended SARE Motion (Dkt. no. 212);

- On February 13, 2007, a Supplemental Objection to Entry of Final Order Authorizing Scopac's Use of Cash Collateral Pursuant to Section 363 of the Bankruptcy Code (Dkt. no. 264);

- On February 14, 2007, an objection to Emergency Motion of Debtors the Pacific Lumber Company and Scotia Pacific Company LLC For Authority to Make Payment to One Another, As Critical Vendors, Of Specified Amounts For Pre Petition Period January 1-18, 2007, By Means Of Net Payment (After Setoff or Recoupment) From The Pacific Lumber Company To Scotia Pacific Company

5

- LLC; And For Relief From Stay To Permit Such Setoff or Recoupment (Dkt. no. 291);

- On February 14, 2007, an objection to Scotia Pacific Company LLC's Application Pursuant to Sections 327(A), 328(A), and 1107 of the Bankruptcy Code for Order Authorizing the Retention of the Blackstone Group as Financial Advisor (Dkt. no. 292);

- On February 19, 2007, an objection to the Application of the Official Unsecured Creditors' Committee for Order Approving Employment of Pachulski Stang Ziehl Young Jones & Weintraub LLP as Committee Counsel (Dkt. no. 323);

- On February 23, 2007, a Motion to Continue Hearing on Scotia Pacific Company LLC's Application to Retain and Employ the Blackstone Group L.P. as Financial Advisor Under Sections 327(A), 328(A), and 1107 (Dkt. no. 341);

- On February 26, 2007, an Initial Response to Motions to Transfer Venue (Dkt. no. 348);

- On March 2, 2007, a Final Response in Support of Motions to Transfer Venue (Dkt. no. 381);

- On March 2, 2007, an (A) Emergency Motion to Strike Scotia Pacific Company LLC's Emergency Cash Collateral Motion and Accompanying Exhibits, (B) Objection to Same, and (C) Offer of DIP Financing (Dkt. no. 383);

- On March 5, 2007, an Emergency Motion to Set Concurrent Hearing On Noteholder Committee's (A) Emergency Motion to Strike Scotia Pacific Company LLC's Emergency Cash Collateral Motion and Accompanying

6

> Exhibits, (B) Objection to Same, and (C) Proffer of DIP Financing (Dkt. no. 399); and

- On March 5, 2007, a Joinder in Motions to Transfer Venue (Dkt. no. 410).

12. On February 13, 2007, in a purported attempt to comply with Bankruptcy Rule 2019, the Ad Hoc Committee filed a Verified Statement of Bingham McCutchen LLP and Gardere Wynne Sewell LLP Pursuant to Bankruptcy Rule 2019 in connection with its representation of the Ad Hoc Committee (the "2019 Statement"). (Dkt. no. 265.) The 2019 Statement clarifies that Bingham and Gardere represent "an ad hoc committee of holders of" the Timber Notes. 2019 Statement at 1. The 2019 Statement states that the Ad Hoc Committee consists of multiple note holders:

> The current members of the [Ad Hoc] Committee include: Angelo, Gordon & Co. L.P., on behalf of certain managed accounts and funds; Avenue Investments, L.P.; Avenue International, Ltd.; Avenue Special Situations Fund III, L.P.; Avenue-CDP Global Opportunities Fund, L.P. US; Avenue Special Situations Fund IV, L.P.; Banc of America Securities, Inc.; Camulos Master Fund LP; CarVal Investors LLC; Citigroup Global Markets Inc.; CSG Investments, Inc; Deutsche Bank Securities, Inc.; D.E. Shaw Laminar Portfolios, L.L.C.; Davidson Kempner Capital Management LLC, on behalf of certain affiliated investment funds; Gruss & Co., funds managed by GSO Capital Partners LP; Intermarket Corp.; J.P. Morgan Securities Inc.; Lehman Brothers Inc.; Murray Capital Management (on behalf of certain managed accounts and funds); Northeast Investors Trust; Par IV Capital; Phoenix Investment Partners; Plainfield Special Situations Master Fund Limited; QDRF Master Ltd; QVT Financial LP; RockView Capital; and TCW Credit Mortgage.

2019 Statement at 2, n.1. According to 2019 Statement, "the aggregate holdings … of the active members of the [Ad Hoc] Committee amount to more than 90% of the principal amount outstanding under the Indenture." 2019 Statement at 2. Notably absent from the 2019 Statement are (i) any indication of each of the Committee members' relative holdings of the Timber Notes; (ii) the time period when each committee member obtained its interest; (iii) how such interest was obtained and (iv) the price paid for its note or notes by each committee member -- all items

7

of information specifically required by Rule 2019. Notwithstanding the Ad Hoc Committee's representation that it represents "90%" of the amount outstanding under the Timber Notes, the Ad Hoc Committee has at various times stated to this Court that it represents between 97% and 99% of the amounts outstanding. The Ad Hoc Committee has not, as of yet, revised the 2019 Statement to reflect <u>any</u> increases in its position.

### IV.
### THE AD HOC COMMITTEE MUST COMPLY WITH ITS DISCLOSURE OBLIGATIONS UNDER BANKRUPTCY RULE 2019(A)

13. Rule 2019(a) is clear. It requires "<u>every</u> entity or committee … representing more than one creditor or equity security holder" to "file a verified statement setting forth" the following:

(1) the <u>name and address</u> of the creditor or equity security holder;

(2) the name and <u>amount of the claim or interest</u> and the <u>time of acquisition</u> thereof unless it is alleged to have been acquired more than one year prior to the filing of the petition;

(3) … in the case of a committee, the <u>name or names of the entity or entities at whose instance, directly or indirectly, the employment was arranged</u> or the committee was organized or agreed to act; and

(4) with reference to the time of … the organization or formation of the committee … the <u>amounts of claims or interests owned</u> by … the members of the committee … the times when acquired, the amounts paid therefor, and <u>any sales or other dispositions</u> thereof.

Fed. R. Bankr. P. 2019(a)(emphasis added).

14. Rule 2019(a) further provides that "[t]he statement <u>shall</u> include a copy of the instrument, if any, whereby the … committee … is empowered to act on behalf of the creditors …" Fed. R. Bankr. P. 2019(a).

15. Pursuant to Rule 2019(a), any entity or committee representing more than one creditor or equity security holder, such as the Ad Hoc Committee which admittedly represents a committee of *numerous* note holders, must file a verified statement setting forth the information

8

required by that rule. *See* Fed. R. Bankr. P. 2019(a) (excepting committees appointed pursuant to sections 1102 or 1113 of the Bankruptcy Code, but not other committees); 9 L. King, et al,, Collier on Bankruptcy ¶ 2019.02 (15th ed. rev. 2006) ("Any … unofficial committee must comply with Rule 2019 by its terms.") (*quoted in In re Oklahoma P.A.C. First Ltd. P'Ship*, 122 B.R. 387, 391 (Bankr. D. Ariz. 1990)). That verified statement must include "the amounts of claims or interests owned by the members of the committee, the times when acquired, the amounts paid therefor, and any sales or other dispositions thereof." *In re Northwest Airlines Corp.*, Case No. 05-17930, 2007 Bankr. LEXIS 557, at *4 (Bankr. S.D.N.Y. Feb. 26, 2007) (quoting Rule 2019(a) and holding that an ad hoc committee has an obligation to supplement a defective Rule 2019 statement).

16.  Despite Rule 2019's clear requirements for detailed information, the only responsive information the Ad Hoc Committee provided in its 2019 Statement was a list of current members and the vague statement that, "[b]ased upon information provided to [Ad Hoc Committee counsel], the aggregate holdings (on their own behalf or as advisors) of the active members of the [Ad Hoc] Committee amount to more than 90% of the principal amount outstanding under the Indenture." 2019 Statement at 2 & n.1. The Ad Hoc Committee's Rule 2019 Statement thus "is insufficient on its face" and must be supplemented. *In re Northwest Airlines Corp.*, 2007 Bankr. LEXIS, at *4.

17.  The bankruptcy court overseeing the Northwest Airlines chapter 11 case recently heard a similar issue. *See id*. In *Northwest Airlines*, an ad hoc committee of equity holders had taken an active role in the case. The committee, however, filed a very sparse 2019 statement, similar to the statement filed in this case. The court held that "[b]y its plain terms, [Rule 2019] requires disclosure of 'the amounts of claims or interests owned by the members of the

9

committee, the times when acquired, the amounts paid therefor, and any sales or dispositions thereof.'"  *Id*. at *5.  The court noted that "[b]y appearing as a 'committee' … the members purport to speak for a group and implicitly ask the court…to give their positions a degree of credibility…."  *Id*. at *7.  As a result of a committee's position in a bankruptcy case and the history of Rule 2019,[2] the court held that the "Rule is long-standing and there is no basis for failure to apply it as written."  *Id*. at *10.  The rule thus recognizes that if a committee seeks to play an active, important role in the debtor's reorganization, it must first, in all fairness, simply disclose to that debtor, the Court, and all other interested parties, details regarding its constituents and their interests.  The policies behind Rule 2019, like the plain language of the rule itself, thus require that the Ad Hoc Committee set forth in full the information required by Rule 2019.  Further, the need for the Ad Hoc Committee to fully comply with Rule 2019 is particularly critical in this case given the Ad Hoc Committee's overly aggressive behavior, repeated baseless filings, and unwillingness to compromise – tactics and strategies that are diverting Scopac's attention away from and, therefore, delaying the successful reorganization of its business.  The Ad Hoc Committee is thus in a position to "play an important role in [this] reorganization case[.]"  *Id*. at 5.  Yet to date, rather than exercise its power and authority to help facilitate the reorganization, the Ad Hoc Committee's actions have only unnecessarily and improperly hindered and delayed it.

---

[2] The predecessor to Rule 2019, Rule 10-211 was adopted (and retained as Rule 2019) in direct response to a study on "perceived abuses by unofficial committees in … corporate reorganizations … in order to help foster [through mandatory disclosure provisions] fair and equitable plans free from deception and overreaching."  *Id*. at *9 (quoting 13A King *et al*., *Collier on Bankruptcy*, ¶ 10-211.04 (14th ed. 1976).

10

18.     Moreover, unless and until the Ad Hoc Committee complies with its disclosure obligations under Rule 2019(a), it should not be heard further in this case.  Fed. R. Bankr. P. 2019(b).  Such relief is specifically provided by Federal Rule of Bankruptcy Procedure 2019(b), which states that where, as here, a committee has not complied with its Rule 2019(a) disclosure obligations, the Court may "refuse to permit that … committee ... to be heard further … in the case" and "hold invalid any authority, acceptance, rejection, or objection given, procured, or received" by that committee.  Accordingly, Scopac seeks an order (a) compelling the Ad Hoc Committee to file a verified statement pursuant to Rule 2019(a) setting forth all the information required by that rule, and (b) stating that the Court will refuse to further hear the Ad Hoc Committee unless and until it files an adequate verified Rule 2019 statement.

11

WHEREFORE, Scopac requests entry of an order (1) compelling the Ad Hoc Committee to file a verified statement pursuant to Bankruptcy Rule 2019(a), (2) stating that the Court will refuse to further hear the Ad Hoc Committee unless and until it files an adequate verified Rule 2019 statement; and (3) granting any other relief this Court deems just and proper.

Respectfully submitted this 16th day of March 2007.

/s/
Kathryn A. Coleman
California State Bar No. 110937
Eric J. Fromme
California State Bar No. 193517
Robert K. Dakis
Lise J. Johnson
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Telephone:   212.351.4000
Facsimile:   212.351.3889
kcoleman@gibsondunn.com
efromme@gibsondunn.com

-and-

John F. Higgins
State Bar No. 09597500
James Matthew Vaughn
State Bar No. 24028088
Joshua W. Wolfshohl
State Bar No. 24038592
PORTER & HEDGES, L.L.P.
1000 Main Street, 36th Floor
Houston, TX  77002
Telephone:   713.226.6000
Facsimile:   713.226.6248
jhiggins@porterhedges.com
mvaughn@porterhedges.com

**BANKRUPTCY COUNSEL TO SCOTIA PACIFIC COMPANY, LLC**

100180797_3.DOC

12