## Exhibit A

EXECUTION COPY

# CROSS-BORDER INSOLVENCY PROTOCOL
## FOR THE LEHMAN BROTHERS GROUP OF COMPANIES

This cross-border insolvency protocol (the "Protocol") establishes a framework for the conduct of the Proceedings (as such term is defined herein) concerning Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors worldwide that are parties hereto (collectively, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman") and the management of the estates of the Debtors pursuant to those Proceedings.

## Background[1]

### A.   The Proceedings

Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Dates"), the Debtors commenced (or in some cases, had initiated against them) plenary insolvency, administration, liquidation, rehabilitation, receivership, or like proceedings ("Plenary Proceedings") in different jurisdictions (the "Plenary Fora") and before different courts and governmental, regulatory, or administrative bodies (the "Tribunals"), as well as proceedings that are secondary or ancillary to a Plenary Proceeding ("Limited Proceedings," and together with the Plenary Proceedings, the "Proceedings") in jurisdictions other than the Plenary Fora (together with the Plenary Fora, the "Fora" and each a "Forum").

In certain of these Proceedings, the Debtors remain authorized to operate their businesses and manage their properties as "Debtors in Possession," while in others, liquidators, administrators, trustees, custodians, supervisors or curators have been appointed to manage the Debtors' affairs and represent their insolvency estates (collectively, with Debtors in Possession, the "Official Representatives").  Furthermore, in certain of these Proceedings, one or more statutory committee of creditors or equity holders has or have been appointed (the "Committees").

### B.   Lehman's Global Business

Lehman was a truly global group of companies.  Prior to the events leading up to these Proceedings, Lehman was the fourth largest investment bank in the United States, and one of the largest financial services firms in the world.  For more than 150 years, Lehman was a leader in the global financial markets by serving the financial needs of corporations, governmental units, institutional clients and individuals worldwide.  Its headquarters in New York and regional headquarters in London and Tokyo were complemented by a network of offices in North America, Europe, the Middle East, Latin America and the Asia Pacific region.

To manage their businesses efficiently, Lehman utilized a centralized cash management system to collect and transfer the funds generated by its operations and disburse those funds to satisfy the obligations required to operate their businesses.  The cash management

---

[1] Factual statements contained in this Background are for informational purposes only and shall not be deemed admissions by, or binding on, any party hereto.

system facilitated Lehman's cash monitoring, forecasting, and reporting, subject to the regulatory requirements of various jurisdictions. Furthermore, prior to the commencement of the Proceedings, LBHI and its direct and indirect subsidiaries continuously worked together and shared information in unison. This information was spread across 2,700 different software applications and dispersed throughout ledger accounts in its subsidiaries across the globe.

## C.    The Need for a Protocol

Given the integrated and global nature of Lehman's businesses, many of the Debtors' assets and activities are spread across different jurisdictions, and require administration in and are subject to the laws of more than one Forum. The efficient administration of each of the Debtors' individual Proceedings would benefit from cooperation among the Official Representatives. In addition, cooperation and communication among Tribunals, where possible, would enable effective case management and consistency of judgments.

Accordingly, this Protocol is designed to facilitate the coordination of the Proceedings, and to enable the Tribunals and Official Representatives to co-operate in the administration of their respective Debtors' estates in the interest of all of the Debtors' creditors.

### Terms

## 1.    Purpose and Aims

1.1.    The parties acknowledge that this Protocol represents a statement of intentions and guidelines designed to minimize the costs and maximize recoveries for all creditors of the Proceedings, by promoting the sharing of relevant information among the parties and the international coordination of related activities in the Proceedings, while respecting the separate interests of creditors and other interested parties to each Proceeding (which shall be subject at all times to the local laws of the jurisdiction applicable to each Official Representative), and the independence, sovereignty, and authority of each Tribunal.

1.2.    In recognition of the substantive differences among the Proceedings in each jurisdiction, this Protocol shall not be legally enforceable nor impose on Official Representatives any duties or obligations, including (but not limited to) any obligations (i) that may be inconsistent with or that may conflict with the duties or obligations to which the Official Representative is subject under applicable law, or (ii) that are not in the interests of the Debtor's estate represented by the Official Representative and/or its creditors. Furthermore, nothing in this Protocol should be interpreted in any way so as to interfere with (i) the proper discharge of any duty, obligation or function of an Official Representative, or (ii) the exercise of statutory or other powers otherwise available to an Official Representative under applicable law.

1.3.    Official Representatives should coordinate with each other and cooperate in all aspects of the Proceedings, subject in appropriate cases to bilateral protocols and protocols for communication among Official Representatives, Tribunals and Committees, that may be executed in furtherance of this Protocol. In doing so, the Official Representatives acknowledge and agree that the parties shall deal in good faith with each other in the interests of maximizing recovery for all of the Debtors' creditors.

1.4.    The aims of this Protocol are:

**1.4.1.    Coordination** – To promote international cooperation and the coordination of activities in the Proceedings; and to provide for the orderly, effective, efficient, and timely administration of the various Proceedings in order to reduce their cost and maximize recovery for creditors.

**1.4.2.    Communication** – To promote communication among Official Representatives and Committees; and to provide, wherever possible, for direct communication among Tribunals.

**1.4.3.    Information and Data Sharing** – To provide for the sharing of relevant information and data among Official Representatives in order to promote effective, efficient, and fair administrations, and to avoid duplication of effort and activities by the parties.

**1.4.4.    Asset Preservation** – To identify, preserve, and maximize the value of the Debtors' worldwide assets for the collective benefit of all creditors and other interested parties.

**1.4.5.    Claims Reconciliation** – To coordinate an efficient and transparent claims process; and in particular, to provide for a consistent and measured approach to the calculation and adjudication of intercompany claims that avoids unnecessary intercompany litigation.

**1.4.6.    Maximize Recoveries** – To cooperate in marshalling the assets of the Debtors in order to maximize recovery for all of the Debtors' creditors.

**1.4.7.    Comity** – To maintain the independent jurisdiction, sovereignty, and authority of all Tribunals.

1.5.    Notwithstanding the multilateral nature of this Protocol, nothing herein shall restrict Official Representatives from dealing with other Official Representatives on a bilateral basis on matters that concern only their respective Debtors, provided that Official Representatives should keep each other generally informed of any bilateral protocols with other parties hereto, to the extent that such bilateral protocols address similar aims as this Protocol.

## 2.    Notice

2.1.    Official Representatives should provide adequate notice by email to the parties hereto, as well as to any Committees established in the Proceedings, of relevant matters in which those parties have an interest.

2.2.    Where appropriate, each Official Representative should provide adequate notice by email as far in advance as possible of any matters in which other Official

Representatives have a material interest and that may require preparation and/or travel by such Official Representatives, such as any creditors' or shareholders' meetings, statutory deadlines, administrative deadlines, or hearings before a Tribunal.

### 3.    Rights of Official Representatives and Creditors to Appear

3.1.    Subject to the laws of each Forum, Official Representatives shall have the right to appear in all of the Proceedings, whether before a Tribunal or in statutory meetings convened pursuant to applicable law. If required and available in a particular Forum, an exequatur or similar proceeding may be utilized to implement recognition of the Official Representative.

3.2.    Official Representatives shall not, by virtue of their being a party to this Protocol, be deemed to have submitted to jurisdiction in any Forum, nor shall appearing in a Forum, whether in person or pursuant to Section 3.3, subject an Official Representative to jurisdiction for any purpose other than the matter with respect to which the appearance is made, except, (i) to the extent otherwise set forth herein to the contrary, and (ii) to the extent that an Official Representative otherwise submits to the jurisdiction of a Forum.

3.3.    To the extent that an Official Representative is entitled to appear in the Proceedings under applicable law but cannot be present before the Tribunal or Committee(s) (or similar body, as the case may be) either in person or through counsel, the parties hereto shall consent to the Official Representative's communication of any observations to such Tribunal or Committee(s) prior to any order (or similar action) being made, provided that such communication is made in writing and copies of such communication are non-confidential and delivered to all interested parties or filed on the Tribunal's public records.

### 4.    Communication and Access
### to Data and Information Among Official Representatives

4.1.    Official Representatives should keep each other generally informed when appropriate of any relevant information and material developments in matters involving the Debtors and their Proceedings, and should consent wherever possible to the sharing of information among Official Representatives, which consent should not be unreasonably withheld.

4.2.    Official Representatives should share information regarding the Debtors, and their assets and liabilities, which each may lawfully share with the other; provided, however, that with respect to work product or other privileged information, Official Representatives may, but are not obliged, to share such information with each other, subject to all privileges under the applicable rules of evidence or applicable law, and provided that sharing work product or privileged information shall not be deemed a waiver of any attorney-client privilege or work product protections under the applicable rules of evidence or applicable law.

4.3.    To facilitate access to information, Official Representatives should make available to each other, upon request, any information that is publicly available in their respective Fora; and may, where permitted under applicable laws, share non-public information

with other Official Representatives, subject to appropriate confidentiality arrangements and all privileges under the applicable rules of evidence.

     **4.4.**    Official Representatives agree that each shall not (and shall direct their respective agents and representatives not to) provide any non-public information received from the other to any third party, unless such information is (i) agreed to by the other party, (ii) required by applicable law, or (iii) required by order of any Tribunal.

     **4.5.**    The approval of this Protocol by a Tribunal (by entry of an order or otherwise) shall constitute the recognition by such Tribunal and the Official Representative in that Tribunal's Proceeding that communications among Official Representatives and their respective professionals, employees, agents, and representatives are subject to, and do not waive any attorney-client, work-product, legal, professional, or other privileges recognized under any applicable law; provided, however, that approval of this Protocol by a Tribunal shall not result in the parties hereto, other than the Official Representative in that Proceeding, becoming subject to the jurisdiction and laws of that Tribunal and Forum.

     **4.6.**    Each Official Representative should cooperate in the gathering and sharing of certain data and share analysis of certain transactions by:

        **4.6.1.**    sharing, via free, read-only access, all relevant information and data that it has the right to disclose and for which it is not required to make payment relating to (i) material interest holders of an asset, (ii) restitution of assets, and (iii) relevant information that assists such other Official Representative to fulfill its duties, except where (x) litigation has commenced (or is contemplated), or (y) statutory or regulatory requirements prohibit disclosure;

        **4.6.2.**    if an Official Representative is in possession of the books, records, correspondence and other materials or documents that belong to another Debtor, providing the Official Representative of such other Debtor's estate such books, records, correspondence and other materials or documents;

        **4.6.3.**    coordinating in good faith the investigations of pre-filing activities with any other Official Representative with an interest in such activities, so long as the interests of the Official Representatives coordinating such investigations do not diverge; and

        **4.6.4.**    liaising with any other Official Representatives on matters (i) in which such other Official Representatives have a significant mutual interest, so long as their interests do not diverge and (ii) relating to a significant strategy to exit from a Proceeding in which such other Official Representatives have an interest.

     **4.7.**    Any sharing of information and data shall not include or give an Official Representative a right of automatic access to (i) documents relating to a Debtor's post-filing

transactions, or (ii) working papers, summaries, or other work product drafted by an Official Representative, and any professionals retained in the course of a Proceeding.

## 5.    **Communication Among Tribunals**

**5.1.**    The <u>Guidelines Applicable to Court-to-Court Communication in Cross-Border Cases</u> (the "<u>Guidelines</u>") attached as Schedule "A" hereto, shall, where applicable to the relevant Proceeding and where recognized by the Tribunal of the relevant Proceeding, be incorporated by reference and form part of this Protocol subject to formal adoption of the Guidelines in whatever form by each Tribunal, in whole or in part and with or without modifications (if any). Where there is any discrepancy between the Protocol and the Guidelines, this Protocol shall prevail.

## 6.    **Communication Among Committees**

**6.1.**    To the extent permitted and approved by the respective Committee, non-public information available to the Committee in any Forum may, if relevant to a matter in which another Debtor has an interest, be shared with the Committees of such Debtor, subject to appropriate confidentiality arrangements and all privileges under the applicable rules of evidence or applicable law.

## 7.    **Asset Preservation**

**7.1.**    Each Tribunal should administer the assets subject to its jurisdiction.

**7.2.**    If, in the course of a Proceeding, an Official Representative learns or believes that another Debtor could have a material interest in a particular asset whose value and/or recovery is at risk, such Official Representative may notify the Official Representative of the Debtor whose estate includes such asset and, where practicable and consistent with the duties of such Official Representative under applicable laws, the Official Representative of the Debtor whose estate includes such asset should consult with the Official Representative of the Debtor that may have such material interest prior to: (i) the sale, abandonment, or any disposition of such asset; (ii) the termination, suspension, or other transition of any employees managing such asset; or (iii) the commencement of any judicial, or non-judicial, proceeding affecting such asset.

**7.3.**    In the event that (a) an Official Representative claims to have a legal or beneficial interest in property which is transferred to, or received by another Debtor, or (b) an Official Representative determines that the estate for which it is responsible has improperly received or is improperly holding property transferred from or owned by another estate, such Official Representatives should cooperate in:

**7.3.1.**    Assessing the ownership of such transferred property and provide all relevant information, to the extent not otherwise restricted, allowing each Official Representative to ascertain ownership of the property; and

**7.3.2.**    Where ownership of the property has been established and subject to applicable laws: (i) returning the property to the Official

Representative of the Debtor establishing its right to such property; and (ii) refraining (to the extent an Official Representative may do so and subject to applicable laws) from transferring or co-mingling property once another Official Representative establishes ownership of such transferred property.

7.4.    Official Representatives should, to the extent permitted under applicable law and where appropriate, cooperate to maximize the realizable value of assets for which multiple Debtors have an interest.  Official Representatives also recognize that in certain cases such as where a Debtor (the "Funding Estate") has an existing interest in an asset which forms part of another Debtor's estate (the "Funded Estate"), the Official Representative of the Funding Estate may wish to provide funding towards the asset held by the Funded Estate in order to preserve and maximize its realizable value. In such event, the Official Representative of the Funded Estate may, subject to applicable laws, allow such funding to be provided on mutually acceptable bilateral terms

7.5.    Should the Funded Estate, after appropriate consultation with the Funding Estate and after obtaining any necessary approval in an applicable Proceeding, (i) dispose of the asset after receiving funds from the Funding Estate, and (ii) receive proceeds in respect of such disposition, then the Funding Estate shall receive a fair allocation of share of such proceeds.

7.6.    Where applicable, compliance with sections 7.2 through 7.6 by Official Representatives is subject to approval from their respective Tribunals or Committees, as the case may be under local law.

## 8.    Claims

8.1.    Where there are two or more Proceedings pending as to the same Debtor, those being one or more Plenary Proceeding and/or one or more Limited Proceedings, a claim should be filed only in the Proceeding(s) designated by the Official Representative of such Debtor (provided that certain Official Representatives may be required to make such designation in accordance with applicable law).

8.2.    Without prejudice to secured claims or rights *in rem*, and subject to applicable law, Official Representatives should adjust distributions so that a creditor who has received payment with respect to its claim in one Proceeding may not receive a payment for the same claim in any other Proceeding as to the same Debtor, so long as the payment to the other creditors of the same class is proportionately less than the payment the creditor has already received in respect of that claim.

8.3.    Consistent with section 8.2 above, if any claims against one or more Debtors (a "Direct Claim") is subject to a guarantee issued by another Debtor (a "Guarantee"), the Official Representatives shall seek to adjust distributions on the allowed Direct Claim and allowed Guarantee claim so that distributions on the Direct Claim and distributions on the Guarantee do not exceed in the aggregate the amount of the Direct Claim or the Guarantee, whichever is highest.  Subject to the preceding sentence, distributions on a Direct Claim shall not

reduce the amount of any claim asserted under a corresponding Guarantee, and distributions under a Guarantee shall not reduce the amount of any corresponding Direct Claim.

      **8.4.**    Official Representatives should, where possible and subject to the applicable laws of the relevant forum, endeavor to coordinate notice procedures and establish the same deadlines for the filing of claims in their respective Proceedings, and in all other matters regarding the filing, reviewing and objecting to claims.

## 9.    Special Procedures for Intercompany Claims

      **9.1.**    The Official Representatives agree that in order to provide for the efficient and timely administration of these Proceedings, and to reduce their cost and maximize recovery for creditors, resources and time should not be spent reviewing historical intercompany accounting records to resolve claims asserted in their respective Proceedings by other Official Representatives on the basis of (i) the allocation of overhead or expense from one Debtor to another Debtor, (ii) the flow of funds from one Debtor to another Debtor, (iii) the incurrence of a liability by one Debtor on behalf of another Debtor, or (iv) a transaction between Debtors (collectively, "<u>Intercompany Claims</u>"); but that rather, it is in the best interests of the Debtors' creditors for Official Representatives to agree to a common set of financial accounting records that form the basis of Intercompany Claims, and that those financial records shall be *prima facie* valid unless there are elements of proof suggesting that a transaction was recorded in error, or that no such transaction ever occurred or is inconsistent with the inter-company accounting records of the relevant Debtor(s).

      **9.2.**    Subject to the other provisions of this section 9, the Official Representatives shall endeavor to negotiate in good faith to attempt to reach a consensual resolution of any differences in their accounting of Intercompany Claims. Only to the extent that Official Representatives certify that they are unable to consensually resolve in good faith any differences in their accounting of Intercompany Claims, the Official Representatives shall resort to adjudication by the Tribunal holding jurisdiction over such claims.

      **9.3.**    The Official Representatives shall establish a committee (the "<u>Procedures Committee</u>"), whose members shall be <u>jointly appointed</u> by the Official Representatives and, where required, the Committees, and confirmed by the Tribunals (where applicable) overseeing each Proceeding, to consensually resolve, in accordance with section 9.1 above and in good faith, any differences in the accounting of Intercompany Claims.

      **9.4.**    The Procedures Committee shall propose the (i) procedures, (ii) accounting methodologies, and (iii) elements of proof that it intends to use in its calculation and consensual resolution of Intercompany Claims (the "<u>Accounting Procedures</u>"). Furthermore, if two or more Debtors were counterparties to a derivative contract in which the contractual obligations are referenced to one or more underlying assets or indices of asset values and subject to movements in the financial markets (such as contracts for the purchase, sale, or loan of securities; forward contracts; repurchase agreements; or swap agreements; and in some cases, multiple such agreements governed by a master agreement) (the "<u>Intercompany Derivative Contracts</u>"), and if an Intercompany Derivative Contract has been rejected, terminated, liquidated, or accelerated by any of the Debtor counterparties thereto, any damages (the

"Intercompany Derivatives Claims") that arise shall be measured and fixed by the Procedures Committee, pursuant to a methodology to be agreed upon by the members of the Procedures Committee (the "Derivatives Methodology").

9.5.    As soon as is practicable after the Procedures Committee has agreed upon its Accounting Procedures and Derivatives Methodology, the Official Representatives shall, to the extent required under applicable law, seek approval from their respective Tribunals or Committees (where required) for the use of the Accounting Procedures and Derivatives Methodology in their respective Proceedings in the resolution of Intercompany Claims either as a general rule or on a case by case basis.

9.6.    The Official Representatives should cooperate to submit the findings of the Procedures Committee (the "Procedures Committee Findings"), in a form substantially similar to each other, for approval by their respective Tribunals or Committees to the extent required by applicable law.

9.7.    To the extent that creditors, Committees, or other interested parties object to (i) the application of the Accounting Methodology, or (ii) the application of the Derivatives Methodology, or (iii) any of the Procedures Committee Findings, all Official Representatives should coordinate a response to such objections.

10.    **Submission of Winding-Up Plan, Plan
       of Reorganization or Liquidation, or Deed of Company Arrangement**

10.1.    Where applicable and permitted under the law of the Forum in a Proceeding, Official Representatives should endeavor to submit a winding-up plan, plan of reorganization or liquidation, or deed of company arrangement (a "Plan") in their respective Proceedings, or to amend a Plan once submitted (to the extent permitted by applicable law) so that each Official Representative's Plan is consistent with Plans filed by other Official Representatives, provided that nothing herein shall require an Official Representative to agree (or shall be deemed to be an agreement), and shall not constitute a waiver of such Official Representative's right to object, to the Plan of another Official Representative.

10.2.    Official Representatives should endeavor to coordinate all procedures in connection with their Plans to the extent permitted by applicable law, including, without limitation, all solicitation proceedings relating to their plans.

10.3.    No provision of this Protocol contemplates that any Official Representative is required to delay filing, prosecuting or consummating a Plan with respect to the estate administered by such Official Representative.

EXECUTION COPY

11.    **Comity**

11.1.    The parties hereto agree that each Tribunal is an independent, sovereign Tribunal, entitled to preserve its independent jurisdiction and authority with respect to matters before it and the conduct of the Official Representatives.

11.2.    Each Tribunal shall have sole jurisdiction and power over the conduct of the Proceeding in that forum; the appointment of the Official Representatives and their professionals, their retention, tenure in office, and compensation; and the hearing and determination of matters arising in that forum.

11.3.    Nothing in this Protocol is intended to interfere with the exercise of jurisdiction by each of the Tribunals in the Proceedings, or to interfere with the natural rules or ethical principles by which an Official Representative is bound according to applicable national law and professional rules.

12.    **Amendment**

12.1.    This Protocol may not be waived, amended, or modified orally or in any other way or manner (including, without limitation, pursuant to a Plan) except by a writing signed by a party to be bound and, where applicable, approved by the Tribunal with jurisdiction over that party.  Notice of any proposed amendment to this Protocol shall be provided via email by the party or parties hereto proposing such to all Official Representatives, and their respective Committees.

12.2.    Additional parties may be added to this Protocol at any time after the effective date of this Protocol by means of an amendment pursuant to section 12.1.

13.    **Adherence**

13.1.    Notwithstanding the provisions of section 12, nothing in this Protocol shall preclude Official Representatives who are not parties hereto from adhering to the terms of this Protocol.

14.    **Execution and Application**

14.1.    This Protocol shall inure to the benefit of the parties hereto and their respective successors, assigns, representatives, heirs, executors, administrators, trustee, receivers, custodians, or curators, as the case may be, to the extent permitted under applicable law. Nothing herein shall create a right for any entity that is not a party to the Protocol, and a party hereto shall not be bound by this Protocol in its dealings with any entity that is not a party hereto.

14.2.    Any request for the entry of an order which is contrary to the provisions of this Protocol must be made on notice to all Official Representatives and their respective Committees by the proponent of the order.

14.3.    This Protocol may be signed in any number of counterparts, each of which shall be deemed an original and all of which together shall be deemed to be one and the same

instrument, and may be signed by facsimile signature, which shall be deemed to constitute an original signature.

**14.4.**    A Tribunal having jurisdiction over an Official Representative shall retain jurisdiction over such Official Representative for the purpose of approving any amendments or modifications thereto in accordance with applicable laws; provided, however, in no event shall this or any other provision in this Protocol be deemed to create any liability on the part of an Official Representative for any reason.

**14.5.**    Each Official Representative shall exercise good faith efforts to take such actions and execute such documents as may be necessary and appropriate to implement and effectuate this Protocol.

**14.6.**    This Protocol shall be deemed effective with respect to each Official Representative and the estate administered thereby upon execution by all Official Representatives whose signature blocks appear below, and its approval by the Tribunal with jurisdiction over such estates or the relevant Committee (or similar body), where such approval is required under applicable law.

**14.7.**    This Protocol shall remain in effect with respect to any Official Representative who is a party hereto and the estate administered thereby until the earlier of (i) the conclusion of that Official Representative's Proceeding as respectively defined by applicable law; or (ii) where applicable, and after providing notice to the parties hereto, entry of an order (or similar action) terminating this Protocol by the Tribunal having jurisdiction over such Proceeding, or approval of such termination by the relevant Committee(s) (or similar body) where such approval is required under applicable law, upon a determination by such Tribunal or Committee(s) that the Protocol has achieved all of its objectives as to that Official Representative's Proceeding.

*[signature pages follow]*

EXECUTION COPY

      **IN WITNESS WHEREOF**, the parties hereto have caused this Protocol to be executed either individually or by their respective attorneys or representatives hereunto authorized.

Dated:  As of May 12, 2009

**LEHMAN BROTHERS HOLDINGS INC.,
on its own behalf and on behalf of its affiliates that
are debtors in cases pending under chapter 11 of
Title 11 of the United States Code.**

By: _____

      Name:  Daniel Ehrmann
      Title:  Vice President

_____

Rutger Shimmelpenninck in his capacity as bankruptcy
trustee ("curator") for **LEHMAN BROTHERS TREASURY
CO. B.V.**

_____

Dr. Michael C. Frege in his capacity as insolvency
administraton ("Insolvenzverwalter") of **LEHMAN
BROTHERS BANKHAUS AG (IN INSOLVENZ)**

**IN WITNESS WHEREOF**, the parties hereto have caused this Protocol to be executed either individually or by their respective attorneys or representatives hereunto authorized.

Dated:  As of May 12, 2009

**LEHMAN BROTHERS HOLDINGS INC.,
on its own behalf and on behalf of its affiliates that
are debtors in cases pending under chapter 11 of
Title 11 of the United States Code.**

By: _____

    Name:  Daniel Ehrmann
    Title:  Vice President

_____

Rutger Shimmelpenninck in his capacity as bankruptcy trustee ("curator") for **LEHMAN BROTHERS TREASURY CO. B.V.**

_____

Dr. Michael C. Frege in his capacity as insolvency administraton ("Insolvenzverwalter") of **LEHMAN BROTHERS BANKHAUS AG (IN INSOLVENZ)**

EXECUTION COPY

_____
Chay Fook Yuen for himself, Yap Cheng Ghee and Tay
Puay Cheng, as Joint and Several Liquidators, without
personal liability, of and for and on behalf of LEHMAN
BROTHERS INVESTMENTS PTE. LTD. (IN CREDITORS'
VOLUNTARY LIQUIDATION)

_____
Chay Fook Yuen for himself, Yap Cheng Ghee and Tay
Puay Cheng, as Joint and Several Liquidators, without
personal liability, of and for and on behalf of LEHMAN
BROTHERS FINANCE ASIA PTE. LTD. (IN
CREDITORS' VOLUNTARY LIQUIDATION)

_____
Chay Fook Yuen for himself, Yap Cheng Ghee and Tay
Puay Cheng, as Joint and Several Liquidators, without
personal liability, of and for and on behalf of LEHMAN
BROTHERS COMMODITIES PTE. LTD. (IN
CREDITORS' VOLUNTARY LIQUIDATION)

_____
Chay Fook Yuen for himself, Yap Cheng Ghee and Tay
Puay Cheng, as Joint and Several Liquidators, without
personal liability, of and for and on behalf of LEHMAN
BROTHERS PACIFIC HOLDINGS PTE. LTD. (IN
CREDITORS' VOLUNTARY LIQUIDATION)

_____
Chay Fook Yuen for himself, Yap Cheng Ghee and Tay
Puay Cheng, as Joint and Several Liquidators, without
personal liability, of and for and on behalf of SAIL
INVESTOR PTE. LTD. (IN CREDITORS' VOLUNTARY
LIQUIDATION)

**EXECUTION COPY**

Chay Fook Yuen for himself, Yap Cheng Ghee and Tay
Puay Cheng, as Joint and Several Liquidators, without
personal liability, of and for and on behalf of LEHMAN
BROTHERS ASIA PACIFIC (SINGAPORE) PTE. LTD.
(IN CREDITORS' VOLUNTARY LIQUIDATION)


**Executed** for and on behalf of LEHMAN BROTHERS
AUSTRALIA GRANICA PTY LIMITED (Administrators
Appointed) by **Neil Singleton**, as one of the joint and
several administrators


**Executed** for and on behalf of LEHMAN BROTHERS
REAL ESTATE AUSTRALIA COMMERCIAL PTY
LIMITED (Administrators Appointed) by **Neil
Singleton**, as joint and several administrators


**Executed** for and on behalf of LEHMAN BROTHERS
AUSTRALIA REAL ESTATE HOLDINGS PTY LIMITED
(Administrators Appointed) by **Neil Singleton**, as joint
and several administrators

**EXECUTION COPY**

Chay Fook Yuen for himself, Yap Cheng Ghee and Tay
Puay Cheng, as Joint and Several Liquidators, without
personal liability, of and for and on behalf of LEHMAN
BROTHERS ASIA PACIFIC HOLDINGS PTE. LTD. (IN
CREDITORS' VOLUNTARY LIQUIDATION)

Executed for and on behalf of LEHMAN BROTHERS
AUSTRALIA GRANICA PTY LIMITED (Administrators
Appointed) by Neil Singleton, as one of the joint and
several administrators

Executed for and on behalf of LEHMAN BROTHERS
REAL ESTATE AUSTRALIA COMMERCIAL PTY
LIMITED (Administrators Appointed) by Neil
Singleton, as joint and several administrators

Executed for and on behalf of LEHMAN BROTHERS
AUSTRALIA REAL ESTATE HOLDINGS PTY LIMITED
(Administrators Appointed) by Neil Singleton, as joint
and several administrators

**EXECUTION COPY**

Executed for and on behalf of **LEHMAN BROTHERS AUSTRALIA FINANCE PTY LIMITED** (Administrators Appointed) by **Neil Singleton**, as joint and several administrators

Executed for and on behalf of **LEHMAN BROTHERS AUSTRALIA HOLDINGS PTY LIMITED** (Administrators Appointed) by **Neil Singleton**, as one of the joint and several administrators

Executed for and on behalf of **LEHMAN BROTHERS AUSTRALIA LIMITED** (Administrators Appointed) by **Neil Singleton**, as one of the joint and several administrators

Executed for and on behalf of **LBHV 1 PTY LIMITED** (Administrators Appointed) by **Neil Singleton**, as one of the joint and several administrators

**EXECUTION COPY**

_____
**Executed** for and on behalf of **HV 1 PTY LIMITED**
(Administrators Appointed) by **Neil Singleton**, as one
of the joint and several administrators

_____
**Executed** for and on behalf of **HV 2 PTY LIMITED**
(Administrators Appointed) by **Neil Singleton**, as one
of the joint and several administrators

_____
Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LEHMAN BROTHERS ASIA
HOLDINGS LIMITED (In Liquidation)**

_____
Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LEHMAN BROTHERS ASIA
LIMITED (In Liquidation)**

**EXECUTION COPY**

---

**Executed** for and on behalf of **HV 1 PTY LIMITED**
(Administrators Appointed) by **Neil Singleton**, as one
of the joint and several administrators

---

**Executed** for and on behalf of **HV 2 PTY LIMITED**
(Administrators Appointed) by **Neil Singleton**, as one
of the joint and several administrators

---

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LEHMAN BROTHERS ASIA
HOLDINGS LIMITED (In Liquidation)**

---

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LEHMAN BROTHERS ASIA
LIMITED (In Liquidation)**

**EXECUTION COPY**

_(signature)_

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LEHMAN BROTHERS FUTURES
ASIA LIMITED (In Liquidation)**

_(signature)_

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LEHMAN BROTHERS SECURITIES
ASIA LIMITED (In Liquidation)**

_(signature)_

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LBQ HONG KONG FUNDING
LIMITED (In Liquidation)**

_(signature)_

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of **LEHMAN BROTHERS NOMINEES
(H.K.) LIMITED (In Liquidation)**

**EXECUTION COPY**

_____

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of LEHMAN BROTHERS ASIA
CAPITAL COMPANY (In Liquidation)

_____

Edward Simon Middleton as one of the Joint and
Several Liquidators, without personal liability, of and
for and on behalf of LEHMAN BROTHERS
COMMERCIAL CORPORATION ASIA LIMITED (In
Liquidation)