**Objection Deadline: April 8, 2011 at 4:00 p.m. (Prevailing Eastern Time)**
**Hearing Date and Time: April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) ) ) ) | Chapter 11 |
| Lehman Brothers Holdings Inc., <u>et al</u>. | ) ) | Case No. 08-13555 (JMP) |
| Debtors. | ) ) ) ) | (Jointly Administered) |

**LIMITED OBJECTION OF CERTAIN OPERATING COMPANY CREDITORS TO DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO ESTABLISH AND IMPLEMENT PROCEDURES IN CONNECTION WITH DISCOVERY RELATED TO PLAN CONFIRMATION**

The undersigned operating company creditors (the "<u>Objectors</u>"), by and through their individual attorneys, hereby object on a limited basis to Debtors' Motion Pursuant To Section 105 Of The Bankruptcy Code And Rule 7026 Of The Federal Rules Of Bankruptcy Procedure For Authorization To Establish And Implement Procedures In Connection With Discovery Related To Plan Confirmation (Docket No. 14867) (the "<u>Motion</u>"). In support of this Objection, Objectors respectfully state as follows:

1.     Objectors support the establishment of Plan Discovery[1] procedures (the "<u>Procedures</u>") in these Chapter 11 cases, and, along with other creditors, have met several times with the Debtors to develop a consensual approach to such discovery. These sessions have resulted in substantial but not complete agreement, and Objectors object to the revised proposed Procedures in only two important respects. This objection, as amplified below, is limited to (1) Debtors' one-way proposal to immunize from discovery certain categories of non-privileged information that are critical to an evaluation of the Debtors' Plan and to avoid the Debtors'

---
[1]     All capitalized terms not defined herein shall have the meaning given to them in the Motion.

preparation of any privilege logs, and (2) Debtors' refusal to consent to the appointment of the Official Committee of Unsecured Creditors (the "Creditors' Committee") to fill the role of coordinating counsel (although Debtors acknowledge the need for someone to fill that role), even though the Creditors' Committee is most qualified to carry out the mandate and is ready, willing, and able to do so. Accordingly, the changes here requested to the Procedures are surgical in nature and require only modest changes to the Debtors' proposed order.

2.      First, the proposed exclusion from discovery of all documents containing "asset level or valuation details" is unjustified. See Protective Order ¶ 12 (Docket No. 15682) (the "Proposed Protective Order"). This is especially true because under the Proposed Protective Order such sensitive information can be labeled as "Attorneys' Eyes Only."

3.      Additionally, although paragraph 3(j) of the Order Establishing Schedule And Procedures In Connection With Discovery Related To Plan Confirmation And Other Issues (Docket No. 15682) (the "Proposed Procedures Order") strikes a proper balance by providing that categories of documents, which are likely to include largely privileged information, are subject to search only in response to "reasonably limited, targeted search requests agreed to by a Participant or ordered by the Court," this approach is undermined by paragraph 11 of the Proposed Procedures Order. Paragraph 11 of the Proposed Procedures Order provides a one-way free pass for the Debtors to avoid (a) searching, (b) evaluating for the purposes of making privilege determinations, or (c) including on a privilege log (to the extent Debtors intend to claim a privilege), virtually all documents and communications (including non-privileged documents) created post-petition that involve "counsel" or that are solely with an "advisor" (which term is entirely undefined). Proposed Procedures Order ¶ 11. Indeed, paragraph 11 would exempt Debtors from creating a privilege log for any documents, whenever created. Id. Paragraph 12 of

2

the Proposed Protective Order should be removed from any plan discovery procedures adopted by this Court, and paragraph 11 of the Proposed Procedures Order should also be removed, or at least be modified to apply to all Participants.  There is no justification for placing a greater burden on Participants in the discovery process than the Debtor itself undertakes.  This is especially true because the Debtors have all of the relevant information.

4. Debtors' wholesale exclusion of certain categories of documents from Plan Discovery is unprecedented.  Debtors identify only one case in which they allege that "similar" procedures were implemented, Motion ¶ 13 (citing In re Enron Corp., et al., Case No. 01-16034 (AJG) (Docket No. 16233) (Bankr. S.D.N.Y. Feb. 13, 2004) (the "Enron Order")), but the Enron Order contained no similar provisions.  In fact, the Enron Order not only required the debtors to review all potentially privileged documents, whenever created, but also to produce a privilege log – a burden that the Proposed Procedures Order does not impose on Debtors here.  Id. ¶ 7; Proposed Procedures Order ¶ 11(a).

5. Debtors' proposed categorical exclusions are especially problematic because the categories of documents that Debtors seek to exclude are likely to contain documents crucial to the resolution of key Plan Issues in this case.  Specifically, the proposed excluded categories of documents are likely to include non-privileged opinions, analyses and disclosures that bear directly on the question of the propriety of substantive consolidation, which is currently the main subject of discovery in this case.  Critical factual issues that relate to that subject include what creditors were told about Lehman's legal structure and the separateness of the entities.  In addition, information about "asset level or valuation details" is very relevant to a host of plan issues, including to the evaluation of certain of the intercompany claims that have been asserted in these Chapter 11 cases.  For example, the Debtors' current Plan includes multi-billion

3

dollar intercompany claims on behalf of Lehman Brothers Holdings Inc. ("LBHI") against Lehman Brothers Special Financing Inc. ("LBSF") resulting from the termination of one of the so-called RACERS transactions. An analysis of the validity of these claims requires an examination of the value of the loan assets that were participated as part of the RACERS structure. The Debtors' proposed exclusion would prevent access to such information. Similarly, Lehman Brothers International (Europe) ("LBIE") has also asserted a multi-billion dollar claim against LBSF as a result of the termination of a side letter under which LBSF was, in effect, to take the place of LBIE with respect to certain derivative trades. Again, a proper analysis of this claim is simply not possible without access to valuation "details" concerning the trades underlying the claim allegations.

6. In sum, the harm that would be caused by wholly denying Participants access to the categories of non-privileged information the Debtors seek to shield from discovery clearly outweighs any incremental burden that Debtors would incur in reviewing and producing them. Indeed, denying Participants access to such information would undermine the very *raison d'être* of the Plan Discovery process – to enable all parties to evaluate each Chapter 11 Plan on a fully informed basis.

7. Second, the Motion recognizes the advantages of requiring Participants to coordinate to serve a single, consolidated document request and a single, consolidated Notice of Deposition pursuant to Rule 30(b)(6) on the Debtors. Proposed Procedures Order ¶¶ 3, 13(a). However, the Proposed Procedures Order currently requires all non-Debtor Participants to agree upon, and choose, one Participant as a "Designated Party" to coordinate the consolidation of such discovery documents. This procedure is unworkable and inefficient. Not only is it likely that Participants with diverging interests will have difficulty agreeing upon a Designated Party

4

(the Procedures do not specify how any such disputes will be resolved), but the Procedures do not specify how the Designated Party will be reimbursed for this substantial undertaking. The Creditors' Committee is the logical and best choice for this responsibility because appointing the Creditors' Committee will ensure continuity and that a compensated fiduciary manages this process. Importantly, the Creditors' Committee has expressed a willingness to take on this role. While the Proposed Procedures Order leaves open the possibility that Participants may choose the Creditors' Committee as the Designated Party, that choice is so obviously superior that it should not be subject to the inefficient selection process that Debtors propose. Accordingly, paragraphs 3 and 13(a) of the Proposed Procedures Order should be revised to provide that the Creditors' Committee will take on the role of the Designated Party.

WHEREFORE, Objectors respectfully request that this Court (i) modify the Proposed Procedures Order by removing paragraph 11, (ii) modify the Proposed Protective Order by removing paragraph 12, (iii) modify the Proposed Procedures Order by revising paragraphs 3 and 13(a) to replace the Designated Party with the Creditors' Committee (a proposed order accomplishing this is attached as <u>Exhibit A</u>), and (iv) grant such other and further relief as this Court may deem just or proper.

Dated: New York, New York
April 8, 2011

    Respectfully submitted,

    BINGHAM MCCUTCHEN LLP
    399 Park Avenue
    New York, New York 10019
    Telephone: (212) 705-7000
    Facsimile: (212) 702-3667
    Joshua Dorchak
    Joshua.dorchak@bingham.com

    By: /s/ Joshua Dorchak
        Joshua Dorchak
        A Member of the Firm

    (*Attorneys for Deutsche Bank AG*)

        CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
Howard R. Hawkins, Jr.
Howard.Hawkins@cwt.com

- and -

700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg
Mark.Ellenberg@cwt.com
Peter Friedman
Peter.Friedman@cwt.com


By:  /s/ Howard R. Hawkins, Jr.
    Howard R. Hawkins, Jr.
    A Member of the Firm

(*Attorneys for Morgan Stanley Capital Services Inc. and Morgan Stanley & Co. International plc*)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Thomas J. Moloney
tmoloney@cgsh.com

By: /s/ Thomas J. Moloney
    Thomas J. Moloney
    A Member of the Firm

(*Attorneys for Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P), and Goldman Sachs International*)

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Andrew Brozman
Andrew.Brozman@CliffordChance.com

By: /s/ Andrew Brozman
    Andrew Brozman
    A Member of the Firm

(*Attorneys for Crédit Agricole CIB*)

CRAVATH SWAINE & MOORE
825 Eighth Avenue
New York, New York 10019
Telephone:  (212) 474-1000
Facsimile:  (212) 474-3700
Richard Levin
RLevin@cravath.com
Michael A. Paskin
mpaskin@cravath.com

By:  /s/ Michael A. Paskin
    Richard Levin
    Michael A. Paskin
    Members of the Firm

(*Attorneys for Credit Suisse International*)

        DEWEY & LEBOEUF LLP
        1301 Avenue of the Americas
        New York, New York 10019
        Telephone: (212) 259-8000
        Facsimile: (212) 259-6333
        Irena M. Goldstein
        igoldstein@DeweyLeBoeuf.com

        By: /s/ Irena M. Goldstein
            Irena M. Goldstein
            A Member of the Firm

(*Attorneys for The Royal Bank of Scotland plc*)

11

DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071-1530
Telephone: (213) 621-6000
Facsimile: (213) 621-6100
Monika Wiener
mwiener@dl.com

By: /s/ Monika Wiener
    Monika Wiener
    Counsel

(*Attorneys for Certain Funds Managed By: Angelo, Gordon & Co., L.P., Caspian Capital Advisors, Contrarian Capital Management, LLC, GoldenTree Asset Management, LP, Hayman Capital Management, LP, Knighthead Capital Management, LLP, Mason Capital Management LLC, Mount Kellett Capital Management, Oaktree Capital Management, Serengeti Asset Management LP, and Stonehill Capital Management LLC*)