WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gerard Uzzi (GU-2297)
J. Christopher Shore (JS-6031)
Andrew W. Hammond (AH-0415)

ATTORNEYS FOR THE AD HOC GROUP
OF LEHMAN BROTHERS CREDITORS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | ) Chapter 11 |
| LEHMAN BROTHERS HOLDINGS INC., et al., | ) Case No. 08-13555 (JMP) |
| Debtors. | ) (Jointly Administered) |

**LIMITED OBJECTION OF THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS TO THE DEBTORS' MOTION PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO ESTABLISH AND IMPLEMENT PROCEDURES IN CONNECTION WITH DISCOVERY RELATED TO PLAN CONFIRMATION**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Lehman Brothers Creditors (the "Ad Hoc Group"), by and through its undersigned counsel, hereby files this limited objection (the "Limited Objection") to the Debtors' Motion (the "Motion") Pursuant to Section 105 of the Bankruptcy Code and Rule 7026 of the Federal Rules of Bankruptcy Procedure for Authorization to Establish and Implement Procedures in Connection with Discovery Related to Plan Confirmation, dated March 8, 2011 [Docket No. 14867], as amended [Docket No. 15539], and as further amended [Docket No. 15682]. The Ad Hoc Group respectfully states as follows:

## **LIMITED OBJECTION**

1. Throughout these cases, the Ad Hoc Group has been keenly aware that parties in interest will need to conduct substantial discovery in connection with the confirmation of any plan of reorganization in these Chapter 11 cases. For at least the past ten months, in recognition of the fact that discovery concerning plan issues would likely be of great interest to all involved in these cases, and will take substantial time to complete, the Ad Hoc Group has been advocating for the establishment of a comprehensive discovery protocol that will permit discovery to proceed in an efficient manner on a timeline that will not result in prejudice to the rights of any interested party.

2. As such, the Ad Hoc Group has had ongoing discussions with the Debtors concerning establishing such a protocol since May of last year. In June 2010, in the hopes of facilitating the process, the Ad Hoc Group filed a proposed discovery protocol and served copies on all persons and entities that had formally appeared and requested service in these Chapter 11 cases. [Docket No. 9905]

3. During subsequent discussions in the fall of 2010, the Ad Hoc Group continued to press for the establishment of a discovery protocol. In December 2010, the Debtors committed to provide a draft protocol for review and comment.

4. On January 28, 2011, the Debtors provided the Ad Hoc Group with a proposed protocol. The Debtors and the Ad Hoc Group, joined occasionally by representatives of other interested parties, have since, on numerous occasions, discussed various comments to the proposed protocol.

5. In March 2011, the Debtors filed the Motion, in which they sought approval of a proposed protocol. That protocol reflected some, but not all, of the comments provided by the

Ad Hoc Group and certain other interested parties. The Debtors subsequently filed a second amended version of the proposed protocol on April 6, 2011 (the "Amended Protocol"). While the Ad Hoc Group is encouraged to see the Debtors taking steps to establish a comprehensive discovery process, the Group has a number of unresolved objections to the Amended Protocol. While the Ad Hoc Group will continue to work to resolve minor issues, two categories of objections merit a written response.

I.  The Court Should Not Approve Broad Advance
    Prohibitions on Discovery from the Debtors

6. In various places in the Amended Protocol, the Debtors seek broad protective measures that would relieve them of any obligation to provide key discovery disclosures. Some prohibitions are understandable, such as those with respect to search and recovery of internal files from Lehman's outside prepetition counsel. The Ad Hoc Group has been fully willing to allow protections such as these but believes two restrictions go too far.

7. First, the Debtors seek entry of a provision that would prevent Participants from accessing, among other things, any "valuation" or "asset level" information concerning the Debtors. Specifically, the Amended Protocol requires every Participant[1] to agree to be bound by the terms of a protective order before being permitted to participate in Plan Discovery. (Amended Protocol at 5) In the protective order attached as Exhibit B to the Amended Protocol, the Debtors seek to have the Court order the following:

> **Prohibited Information**
>
> 12. In no event shall the Debtors produce or otherwise disclose the following information with respect to the Debtors: (a) any counterparty level information or (b) any asset level or valuation details (the "Prohibited Information"). In addition, Participants shall not solicit Prohibited Information from any other Participant or non-Participant, including any advisors to the Creditors' Committee.

---

[1] Capitalized terms used but not defined herein are as defined in the Amended Protocol.

(Amended Protocol at B5)  The net effect of this provision, if approved, will be to prevent Participants from accessing information that will be not only relevant but critical to confirmation of any plan of reorganization in these Chapter 11 cases.

8.      For example, in order for any plan to be confirmed in these cases, plan proponents will have to provide at least some modicum of expert testimony regarding the valuations and liquidation analyses set forth in their plans, and other interested parties must be given an opportunity to test those valuations and analyses.  If the above provision is approved, the only experts who will have access to the necessary underlying information will be the Debtors' experts.  As such, other interested parties will have no way of testing the opinions of such experts and will have no way of coming to their own conclusions with respect to valuation and liquidation issues.  Moreover, plan proponents other than the Debtors will effectively be precluded from presenting expert testimony in support of their proposed plans, as they will lack the necessary underlying information.

9.      The Ad Hoc Group obviously recognizes that the Debtors have concerns with respect to the sensitivity of such information and has no desire to put the Debtors' information at risk.  However, rather than prohibiting interested parties from obtaining any access to such information whatsoever, provisions should be implemented to restrict access to certain persons and for certain users.  See, e.g., Johnson Foils, Inc. v. Huyck Corp., 61 F.R.D. 405, 409-10 (N.D.N.Y. 1973) (stating that a "protective order may only minimize the potential ill-effects to the party making disclosures, e.g., limiting access to certain persons or the public in general, but it should not prohibit the full disclosure of all facts necessary to the litigation").  In that regard, the Ad Hoc Group has proposed that valuation and asset level information be made available only for the purposes of plan litigation and only on an attorneys' eyes only basis, as set forth in

the protective order proposed by the Debtors.[2] Such a confidentiality designation would properly balance the Debtors' concerns with interested parties' need to access information in order to address issues central to confirmation. In addition, the Ad Hoc Group remains, as always, available to discuss other ways to protect the confidentiality of the "Prohibited Information."

10. <u>Second</u>, the Debtors seek entry of a provision that would require all producing parties other than themselves to produce a privilege log. (Amended Protocol at 30-31) No good cause exists for permitting Debtors to avoid producing a privilege log. As the Ad Hoc Group has indicated in various filings in this Court, inter-Debtor issues will be central to confirmation in the absence of substantive consolidation. A privilege log will be necessary in order to allow interested parties to assess the communications that have taken place among representatives of different Debtor estates and the privileges or other protections the Debtors are asserting with respect to such communications. For example, a privilege log would provide the best means for determining whether the Debtors have asserted any privileges or other protections with respect to communications regarding settlements between Debtors in which the Debtors have conflicting interests.

11. The Ad Hoc Group recognizes that privilege logs present a burden, but the burden on the Debtors is mitigated by the Amended Protocol's exclusion from production or review of entire categories of documents that the Debtors view as likely including privileged documents. (Amended Protocol ¶ 3(j)) Moreover, the Ad Hoc Group has suggested to the Debtors that a privilege log only needs to be produced with respect to electronic documents. In light of current document review platforms, producing a privilege log for those documents will only require clicking a few extra buttons with respect to each document that turns up after search terms are run.

---

[2] Each time, the Debtors rejected these suggestions.

12. On a related note, the Amended Protocol should expressly provide Participants with access to the Examiner's Stratify database, which upon information and belief is currently being transferred to a third-party vendor and will be controlled by Alvarez & Marsal ("A&M"). According to the Examiner's Report, millions of Lehman documents have already been uploaded to the database, and A&M has already removed privileged documents from the database. (Examiner's Report Appendix 5 at 2-3) It should not impose any additional burden on the Debtors or any other party in interest to grant access to Participants, who will all be bound by the protective order, and indeed will save the estates substantial costs related to re-producing Examiner database documents in a new format.

II.   The Court Should Approve Procedures that Ensure as Much
      Finality and Efficiency as Possible in the Discovery Process

13. In the Ad Hoc Group's experience, discovery procedures in cases as large and complex as these should include clear deadlines so that discovery can proceed in an efficient manner. Allowing interested parties to wait and serve seriatim discovery requests after document production has already begun only results in delay and significant burdens on producing parties, who may have to collect additional documents and rerun searches in order to address issues that were fairly raised in documents filed prior to the commencement of document production. Such a process only leads to substantial additional cost and prejudice to all parties who sought discovery on a timely basis.

14. Accordingly, the Ad Hoc Group has been involved in numerous discussions with the Debtors concerning provisions in the protocol to prevent or at least ameliorate those risks. The protocol as originally filed with the Motion largely addressed concerns with respect to seriatim or untimely discovery requests, but the subsequently amended versions have introduced loopholes into the process that could result in substantial undue burdens to producing parties.

For example, the Amended Protocol should make clear that Participants, regardless of when they obtain Participant status, must seek discovery in accordance with the deadlines set forth in Paragraphs 3 and 5 through 7 of the Amended Protocol.  In particular, Paragraph 8 of the Amended Protocol, which allows Participants to serve supplemental requests for "specific documents" that they "reasonably and in good faith believe[] should be produced based on a review of existing discovery" opens the door for Participants to serve discovery concerning issues that were raised, or should fairly have been raised, before search parameters were finalized.  Accordingly, this provision should be revised to specify that any such supplemental document requests shall be sought upon good cause shown and shall not require any responding parties to conduct additional electronic searches absent further leave of the Court.  Similarly, Paragraph 15(d) of the Amended Protocol should be revised to provide that the filing of any document, including but not limited to Alternative Plans or objections to the Plan or any Alternative Plan, shall not provide a basis for anyone to seek discovery from Participants concerning issues that were fairly raised in documents concerning Plan Issues filed prior to the Notice of Intent Deadline.  In order to avoid inefficiencies and undue delay, Paragraph 15 should also be revised to incorporate procedures for discovery concerning witnesses that are not identified as custodians in the search parameters finalized for producing parties.

15. The Ad Hoc Group recognizes that circumstances may arise that may call for the production of documents or witnesses outside the deadlines set forth in the Amended Protocol.  As such, the Amended Protocol should incorporate a provision allowing for modification of such deadlines upon good cause shown.  In the interests of efficiency, however, the Amended Protocol should not include loopholes from the outset.

WHEREFORE, for the foregoing reasons, the Ad Hoc Group requests that the Court modify the Amended Protocol in accordance with the above.

Dated: April 8, 2011
      New York, New York

Respectfully submitted,

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gerard Uzzi (GU-2297)
J. Christopher Shore (JS-6031)
Andrew W. Hammond (AH-0415)

By: */s/ J. Christopher Shore*
J. Christopher Shore

ATTORNEYS FOR THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS