Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Ralph I. Miller
Richard W. Slack
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
:
**In re**                                               :          **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*            :          **08-13555 (JMP)**
:
                                    **Debtors.**         :          **(Jointly Administered)**
:
:
------------------------------------------------------------------x

**DEBTORS' REPLY TO WONG PLAINTIFFS' OBJECTION TO THE SIXTH**
**SUPPLEMENTAL ORDER PURSUANT TO SECTIONS 105 AND 365 OF THE**
**BANKRUPTCY CODE TO ESTABLISH PROCEDURES FOR THE SETTLEMENT OR**
**ASSUMPTION AND ASSIGNMENT OF PREPETITION DERIVATIVES CONTRACTS**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

            Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, including Lehman Brothers Special Financing Inc. ("LBSF"), as

debtors and debtors in possession (together, the "Debtors" and, collectively with their non-debtor

affiliates, "Lehman"), respectively submit this response to the objection (the "Objection") of Ka

Kin Wong, Siu Lui Ching, Chun ip, Jin Liu, Yin Ying Leung, Lai Mei Chan, and Sing Heung

(the "Wong Plaintiffs"), filed on April 4, 2011 [Docket No. 15598], to the proposed Sixth

Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish

Procedures for the Settlement and Assumption and Assignment of Prepetition Derivatives

Contracts (the "Sixth Supplemental Order"), filed on March 29, 2011 [Docket No. 15432].

### Preliminary Statement

1.      The Sixth Supplemental Order effects a technical amendment to the

Derivatives Procedures Order (defined below).  The Derivatives Procedures Order is an essential

part of the Debtors' strategy to resolve thousands of outstanding Derivatives Contracts.[1]  It sets

procedures pursuant to which the Debtors may assume and assign "in the money" Derivatives

Contracts, and enter into compromises and settlements with counterparties in connection with

Derivatives Contracts.

2.      With respect to the settlement of derivatives disputes with counterparties,

the Procedures allow the debtors to dispense with a hearing pursuant to Bankruptcy Rule 9019 as

long as the Debtors obtain the consent of the Creditors' Committee prior to entering into a

settlement agreement with respect to a Derivative Contract.

3.      As described below, the Derivatives Procedures Order has gone through a

number of amendments.  The Derivatives Procedures Order currently requires BNY Corporate

Trustee Services Limited ("BNY") to be a party to, or consent in writing to, any termination and

settlement agreement with respect to swap agreements (and related transactions) entered into

between LBSF and the issuers identified on Exhibit 1 of the Sixth Supplemental Order (the

"Dante Swaps").  The Sixth Supplemental Order would enable the Debtors to enter into a

termination and settlement agreement with respect to the Dante Swaps without a hearing

pursuant to Bankruptcy Rule 9019 even if BNY, which acts as a trustee in connection with notes

---

[1]      Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Debtors'
Motion For An Order Pursuant To Sections 105 And 365 of The Bankruptcy Code To Establish Procedures For The
Settlement Or Assumption And Assignment of Prepetition Derivatives Contracts, dated November 13, 2008 [Docket
No. 1498] (the "Motion").

issued by the swap counterparty to the swaps with LBSF, does not consent to, or is not a party to, such a settlement. The Debtors already possess the authority, pursuant to the Derivatives Procedures Order, to enter into termination and settlement agreements with the issuers identified on Exhibit 1. Although BNY actually has now settled with LBSF with respect to the Dante Swaps, BNY has requested this technical amendment to the Derivatives Procedures Order, *which affects the legal rights of no party other than BNY*, so that LBSF's authority to enter into a settlement with respect to the Dante Swaps does not depend on BNY's consent to such a settlement.

4. Only one objection has been filed to this technical amendment affecting only BNY. This objection has been filed by the Wong Plaintiffs, who are neither creditors nor Counterparties of the Debtors, nor noteholders in any series for which BNY acts as a trustee. The Derivatives Procedures Order approves an expedited "out of court" process for the Debtors to settle certain transactions. The only valid basis to object to the Derivatives Procedures Order (if it had not already been entered and become a final order) or any amendment thereto would be a concern that the Derivatives Procedure Order or any amendment thereto would allow the Debtors to consummate settlements that are not in the best interests of their respective estates. The Wong Plaintiffs did not object on that basis. Rather, the objection by the Wong Plaintiffs is premised on the basis that a settlement may not be a good one from the noteholders standpoint – a concern that is not appropriate in this context. The Wong Plaintiffs' Objection should be rejected for this reason alone.

5. Indeed, the futility of the Wong Plaintiffs' Objection can be seen by considering what would happen if this Court granted the Objection and did not enter the Sixth Supplemental Order. LBSF still could enter into a termination and settlement agreement under

the Derivatives Procedures Order with BNY's consent.  Likewise, LBSF could enter into a

termination and settlement agreement outside the Derivatives Procedures Order through a motion

pursuant to Bankruptcy Rule 9019.  Again, in such circumstances, the Wong Plaintiffs' objection

– which is based on their fear that a settlement may be too good to LBSF – would have no

bearing on whether this Court should approve the settlement.

6.      Moreover, since the Wong Plaintiffs are not creditors or Counterparties of

the Debtors, they are not a "party in interest," and therefore lack standing even to raise an

objection to the Sixth Supplemental Order for this reason as well.  *See In re Refco Inc.*, 505 F.3d

109, 117 (2d Cir. 2007) (holding that investors in an investment company were not "parties in

interest" within the meaning of section 1109 because they could not assert the legal rights of the

investment company, a creditor of the debtors and defendant in an adversary proceeding).

### The Hong Kong Settlement Provides Significant Recovery For Minibond Holders

7.      The Wong Plaintiffs' objection to the Sixth Supplemental Order discusses

at length a proposed settlement that resolves in full the disputes with respect to a large number of

issuers that are special purpose vehicles.  Although not relevant to this Court's decision on

whether to enter the Sixth Supplemental Order, the settlement terms provide useful background.

After many months of difficult negotiations, LBSF agreed to a settlement with, among others,

the issuers referred to in Exhibit 1 to the Sixth Supplemental Order, BNY, HSBC Bank USA

("HSBC"), Pacific Finance International Limited as the issuer of so-called "minibonds" ("Pacific

Finance"), and PricewaterhouseCoopers as the receiver with respect to the minibonds ("PWC"),

with respect to both the Dante Swaps and the swaps that LBSF entered into with Pacific Finance.

After the settlement is consummated, minibond holders will receive a minimum of 70% of their

principal, while most minibond holders will receive at least 80% of their principal investment,

and with certain *ex gratia* payments to made by certain distributing banks, up to 96.5% of their

principal.  (*See* Exs H-G of the Wong Plaintiffs' Objection.)

8.    In addition, the settlement is subject to a super-majority vote of minibond

holders.  Meetings will be held in Hong Kong and "[a] majority of Noteholders consisting of

75% or more of the votes cast at the meeting must vote in favour of the agreement for each and

every Relevant Series in order for the extraordinary resolutions to be passed and the agreement

with Lehman Brothers to become effective."  (*See id.*)  Thus, although the Wong Plaintiffs

complain about this settlement, there is a built-in procedure whereby noteholders can object to

the settlement if it is not deemed fair or otherwise appropriate.  In short, while the Wong

plaintiffs assert in a separate litigation that they should be able to bring a lawsuit derivatively on

behalf of Pacific Finance to champion the rights of minibond holders, the fact is that unless 75%

or more of noteholders vote for this settlement, it will not be effective.

9.    Lastly, the settlement is conditioned by the request of BNY (which has

signed the settlement agreement) upon entry of the Sixth Supplemental Order.

## DISCUSSION

## I.    The Debtors Already Possess The Authority to Consummate Settlements with BNY

10.    On December 16, 2008, this Court entered an *Order Pursuant to Sections

105 and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption

and Assignment of Prepetition Derivatives Contracts* [Docket No. 2257] (the "First DPO"),

which order was subsequently amended by (i) the *Supplemental Order Pursuant to Sections 105

and 365 of the Bankruptcy Code to Establish Procedures for the Settlement or Assumption and

Assignment of Prepetition Derivatives Contracts* [Docket No. 2557], (ii) the *Third Supplemental

Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the*

*Settlement or Assumption and Assignment of Prepetition Derivatives Contracts* [Docket No.

5292], (iii) the *Fourth Supplemental Order Pursuant to Sections 105 and 365 of the Bankruptcy*

*Code to Establish Procedures for the Settlement or Assumption and Assignment of Prepetition*

*Derivatives Contracts* [Docket No. 5544] (the "Fourth DPO"), and (iv) the *Fifth Supplemental*

*Order Pursuant to Sections 105 and 365 of the Bankruptcy Code to Establish Procedures for the*

*Settlement or Assumption and Assignment of Prepetition Derivatives Contracts* [Docket No.

13932] (collectively, and together with the First DPO, the "Derivatives Procedures Order").

11.     As noted above, the Derivatives Procedures Order approves procedures

pursuant to which the Debtors may assume and assign "in the money" Derivatives Contracts (the

"Assumption and Assignment Procedures"), and enter into compromises and settlements with

counterparties in connection with Derivatives Contracts (the "Termination and Settlement

Procedures" and, together with the Assumption and Assignment Procedures, the "Procedures").

The Procedures require the Debtors to obtain the written consent of the Creditors' Committee

prior to assuming and assigning or entering into a settlement agreement with respect to a

Derivatives Contract.

12.     Several of the Debtors' Counterparties, including BNY, objected to the

applicability of the Termination and Settlement Procedures to certain of the Debtors' Derivative

Contracts, which include the Dante Swaps.  Consequently, the Debtors agreed to "carve out"

these objecting parties – as well as the Derivatives Contracts referenced in their objections –

from the scope of the Derivatives Procedures Order, thus leaving their objections outstanding,

but allowing the Debtors to proceed with implementation of the Derivatives Procedures Order

with respect to the remainder (and vast majority) of their Derivatives Contracts.

13.     Despite these unresolved objections, certain of the parties who objected to the Derivatives Procedures Order have, in certain circumstances, desired to enter into termination agreements with the Debtors with respect to their Derivative Contracts, pursuant to the terms of the Termination and Settlement Procedures.  For this reason, the Debtors proposed the Fourth DPO, which provides, in pertinent part, that:

> [T]he Termination and Settlement Procedures of the Derivatives Procedures Order shall be applicable to any termination agreement that is or has been entered into by the Debtors with respect to any [Derivative Contract of an objecting party] so long as [all objecting parties] that filed objections as to such [Derivative Contract] are **either parties to** or consent in writing to such termination agreement . . . .  (emphasis added).

The Court entered the Fourth DPO on October 16, 2009.  Pursuant to the Fourth DPO, the Termination and Settlement Procedures apply to the Dante Swaps, and the Debtors therefore have the requisite authority to enter into termination and settlement agreements with respect to the Dante Swaps, without seeking further authority under Bankruptcy Rule 9019, provided that BNY is a party to such a settlement agreement.

## II.    The Sixth Supplemental Order Affects a Technical Modification To the Derivatives Procedures Order that Solely Affects BNY

14.     The sole purpose of the Sixth Supplemental Order is to make the Termination and Settlement Procedures applicable to the Dante Swaps without the need for BNY to (i) be a party to a settlement with respect to such swaps, or (ii) explicitly consent in writing to such applicability.  BNY is the only party who is affected by this modification to the Derivatives Procedures Order, and BNY has consented to this modification – indeed, it is BNY that has requested this modification, as a condition precedent to entering into any settlement with respect to the Dante Swaps.  Because BNY is the only party in interest affected by this modification, the Debtors presented this fully consensual modification to the Derivatives Procedures Order pursuant to Local Rule 9074-1(c) in accordance with the procedures set forth in the second

amended order entered on June 17, 2010 governing case management and administrative

procedures for these cases [Docket No. 9635].

### III.    The Wong Plaintiffs Previously Objected
###          To the Derivatives Procedures Order and Settled That Objection.

15.    The Wong Plaintiffs previously objected, albeit tardily, to the Derivative

Procedures Order.  On May 13, 2009, the Wong Plaintiffs filed a motion seeking relief from the

Derivatives Procedures Order pursuant to Rule 9024 of the Bankruptcy Rules on the grounds that

they did not receive notice of the Debtors' Motion [Docket No. 3565] (the "Wong Plaintiffs'

Motion"), and a concurrent and identical *Wong Plaintiffs' Objection to the Debtors' Motion*

*Establishing Procedures for The Settlement and Termination, or Assumption and Assignment of*

*Prepetition Derivatives Contracts* [Docket No. 3566] (the "Wong Plaintiffs' Objection" and,

together with Wong Plaintiffs' Motion, the "Wong Plaintiffs' Submissions").

16.    To resolve the Wong Plaintiffs' Submissions, the Debtors and the Wong

Plaintiffs agreed to the terms of the *Stipulation and Order Regarding Wong Objection to*

*Derivatives Procedures Order* (the "Stipulation and Order"), entered on September 29, 2009

[Docket No. 5294], which provides that the terms of the Assumption and Assignment Procedures

do not apply to certain transactions, including the Dante Swaps.  (Stipulation and Order at ¶ 2.)

In exchange for this "carve-out" from the Assumption and Assignment Procedures, the Wong

Plaintiffs agreed to withdraw their objection, which had the effect of leaving the Termination and

Settlement Procedures intact.  The Stipulation and Order deliberately does *not* carve out or

otherwise limit the Termination and Settlement Procedures, nor does it abridge in any way the

parties with whom the Debtors may negotiate or reach a settlement.  *See id.*

17.    By agreeing not to prosecute their objection to the Termination and

Settlement Procedures in exchange for the Stipulation and Order, the Wong Plaintiffs have

consented to the applicability of the Termination and Settlement Procedures to any of the

Debtors' Derivatives Contracts, including the Dante Swaps.  *See FutureSource LLC v. Reuters

Ltd.*, 312 F.3d 281, 285 (7th Cir. 2002) (where a party has notice, failure to object counts as

consent); *Daewoo Motor Am., Inc. v. Gen. Motors Corp.*, 315 B.R. 148, 159 (M.D. Fla. 2004)

(party having had notice of a chapter 11 plan effectively consented to the plan).  Indeed, while a

party generally may be deemed to consent to an order if, with proper notice, that party chooses

not to object, this proposition is especially true with respect to the Wong Plaintiffs because,

based on the Wong Plaintiffs' Submissions, it is clear that the Wong Plaintiffs (i) read the entire

Derivatives Procedures Order when they objected and (ii) consciously chose not to pursue their

objection to the Termination and Settlement Procedures in exchange for the Stipulation and

Order.

18.    Although the Debtors proposed an amendment to the Derivatives

Procedures Order by way of the Sixth Supplemental Order, as explained above, this amendment

in no way affects the Wong Plaintiffs, and in no way alters the terms of the Stipulation and

Order, which remains binding upon the Wong Plaintiffs.  Because the Wong Plaintiffs' prior

objection *has* been fully and finally resolved, and because the Wong Plaintiffs have consented to

applicability of the Termination and Settlement Procedures to any of the Debtors' Derivatives

Contracts, the Wong Plaintiffs' objection should be overruled.

## IV.    The Objection Lacks Merit Because It Argues that LBSF Will Enter into a Settlement That Is Too Favorable to LBSF

19.    Even if the Wong Plaintiffs now could object to a modification to the

Derivatives Procedures Order, they have not provided a valid basis to object to the Sixth

Supplemental Order.  The only basis to object to any amendment to the Derivatives Procedures

Order, which itself approves an expedited "out of court" process for the Debtors to settle certain

9

transactions, would be a concern that the amendment may allow the Debtors to implement the

Termination and Settlement Procedures to consummate settlements that are not in the best

interests of their respective estates.  *See In re Refco*, 505 F.3d at 119 ("a bankruptcy court's

obligation is to determine whether a settlement is in the best interests of *the estate*…").  But the

Wong Plaintiffs appear to object on the opposite grounds:  they believe that LBSF will benefit

*too much* as a result of a settlement with respect to the Dante Swaps.  (Objection at ¶¶ 23, 28, 30-

32).  Irrespective of the merits of this contention, it would be entirely inconsistent with the role

of this Court for any party to request that this Court deny LBSF the authority to enter into a

settlement on the grounds that the settlement is *too beneficial* to LBSF.

**V.    The Wong Plaintiffs Lack Standing to Object to the Sixth Supplemental
        Order Because They Are Neither Creditors Nor Counterparties of the Debtors**

20.    Further, the Wong Plaintiffs do not have standing to object to the Sixth

Supplemental Order because they are neither creditors of the Debtors nor Counterparties to any

of the Debtors' Derivatives Contracts.  Rather, the Wong Plaintiffs are holders of so-called

"mini-bonds" issued by Pacific International Finance Limited – an entity that was a noteholder of

an issuer, which issuer was a Counterparty of the Debtors.  At most, the Wong Plaintiffs are a

creditor of a Counterparty of the Debtors.  Accordingly, they are not "parties in interest" with

standing to "appear and be heard" pursuant to section 1109(b) of the Bankruptcy Code, *see In re

Refco Inc.*, 505 F.3d at 114, and therefore lack standing to object to the Sixth Supplemental

Order, and indeed, to any settlement between the Debtors and their Counterparties.

21.    This Court has found that the Wong Plaintiffs' do not have standing as

creditors of a swap counterparty to directly sue LBSF, and that decision was affirmed by the

District Court.  *See Wong v. HSBC USA, Inc.*, Nos. 10-0017 (WHP), 10-0096 (WHP), 08-13555

(JMP), 2010 WL 3154976, at *5-6 (S.D.N.Y. Aug. 9, 2010) (affirming bankruptcy court's bench

ruling that Plaintiffs lack standing to bring a direct claim against LBSF).  In addition,  this Court

has also rejected other attempts by the Wong Plaintiffs to interject themselves into the disputes

among the Debtors and their Counterparties.  *See* Order Denying Motion to Intervene, *Lehman*

*Brothers Special Financing Inc. v. BNY Corp. Trustee Servs. Ltd.*, 088-13555 (JMP), 09-01242

(JMP) [Docket No. 33] (Jul. 22, 2009) (rejecting the Wong Plaintiffs' argument that they are

entitled to intervene in a dispute between the Debtors and one of their Counterparties); Order

Denying Motion to Dismiss, *Lehman Brothers Special Financing, Inc. v. BNY Corp. Trustee*

*Servs. Ltd.*, 08-13555 (JMP), 09-01242 (JMP) [Docket No. 43] (Aug. 12, 2009) (rejecting Wong

Plaintiffs' arguments that they are an indispensable party to litigation involving a dispute with

one of the Debtors' Counterparties and BNY).  Likewise here, the Wong Plaintiffs lack standing

to object to the Sixth Supplemental Order, the Court should overrule the Objection.  This is

especially true here since the Wong Plaintiffs do not even have privity with BNY – the trustee on

their notes is HSBC, not BNY.

**VI.**    **The Wong Plaintiffs' Various Arguments Are Meritless**

22.    The Wong Plaintiffs contend that the Debtors have proposed the Sixth

Supplemental Order in order to obtain "legal authorization to negotiate a 'settlement' with HSBC

Bank and the issuers of Minibonds."  (Objection at ¶ 20, 23).  But the Debtors already have this

legal authority.  HSBC never objected to the Derivatives Procedures Order, and the Debtors are

authorized to enter into a termination agreement with HSBC pursuant to the terms of the

Derivatives Procedures Order.  The Sixth Supplemental Order in no way alters this *status quo*.

23.    The Wong Plaintiffs' further argument that the Sixth Supplemental Order

is an attempt to "circumvent" Judge Pauley's August 9, 2010 Memorandum and Order (the

"August 9 Decision") grossly mischaracterizes the August 9 Decision.  The August 9 Decision

actually affirmed the dismissal of the Wong Plaintiffs' complaint which only sought to allege direct claims against LBSF related to the terms of certain trust deeds.  The August 9 Decision also held that the Wong Plaintiffs could attempt to replead their complaint to attempt to assert derivative claim on behalf of Pacific Finance.  Nothing in the August 9 Decision states LBSF could not enter into settlements with BNY and HSBC.  The Wong Plaintiffs were only given the opportunity to attempt to plead derivative claims; this does not give them any right to prevent HSBC, BNY and LBSF from settling a dispute.

24.    The Wong Plaintiffs also argue that the Sixth Supplement Order somehow is blocked by Judge McMahon's September 21, 2010 Decision (the "September 21 Decision").  The September 21 Decision merely authorized review of a summary judgment decision by this Court.  It plainly did not prohibit LBSF from settling disputes with any party.  It is an absurd proposition that a debtor and counterparties must await settling all matters until the legal issues touching those issues has been appealed presumably through the United States Supreme Court.

25.    In short, even if they had standing and had not waived the opportunity to make their arguments, the Wong Plaintiffs' assertions that there is something improper about LBSF seeking entry of the Sixth Supplemental Order should be soundly rejected.

**26.**    Finally, to the extent that the Wong Plaintiffs take issue with any settlement that LBSF enters into with HSBC, and therefore with HSBC's consent thereto, they are not without a remedy.  A hearing on the technical amendment of a final order by this Court, however, is not the proper forum for such an objection.  As noteholders, they are free to vote against any settlement that LBSF enters into with HSBC (since the settlement is conditioned on seventy-five percent approval by minibond holders in each series), and if the settlement ultimately is consummated as a result of receiving the requisite seventy-five percent vote of the

minibond holders for each series, the settlement does not purport to limit any rights of the Wong

Plaintiffs to seek redress against HSBC for allegedly improperly entering into a settlement (even

though that settlement would have been approved overwhelmingly by the minibond holders and

results in a very substantial distribution to them).

## **Conclusion and Requested Relief**

27.    For the reasons set forth above, the Debtors respectfully request that the

Court overrule the Objection, enter the Sixth Supplemental Order, and grant such further relief as

the Court may deem just and appropriate.

Dated: April 11, 2011
        New York, New York

/s/ Robert J. Lemons
Ralph I. Miller
Richard W. Slack
Robert J. Lemons
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession