**Initial Hearing Date and Time: April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x
**In re**                                                          :    **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**                          :    **08-13555 (JMP)**
                                                                    :
                                        **Debtors.**                :    **(Jointly Administered)**
                                                                    :
------------------------------------------------------------------- x

**REPLY OF THE OPERATING COMPANY CREDITORS
TO THE DEBTORS' OPPOSITION AND OBJECTION
TO MOTION OF THE AD HOC GROUP OF LEHMAN BROTHERS
CREDITORS SEEKING, AMONG OTHER THINGS, AN
ORDER SCHEDULING A DISCLOSURE STATEMENT HEARING AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The undersigned operating company creditors (the "Operating Company Creditors"), by and through their individual attorneys, hereby file this reply (the "Reply") to the Debtors' Opposition and Objection to Motion of the Ad Hoc Group of Lehman Brothers Creditors Dated March 29, 2011 [Docket No. 15744] (the "Objection").

**Preliminary Statement**

The only issue properly before the Court is whether alternative disclosure statements may be considered concurrently with that of the Debtors at the hearing scheduled for June 28, 2011. Despite their purported opposition to the Response filed by the Operating Company Creditors, the Debtors in fact appear to agree that any alternative disclosure statement the Operating Company Creditors timely file may be considered by the Court on June 28, 2011. To the extent

the Debtors are seeking any relief beyond this narrow scheduling issue, any such requests are both substantively and procedurally improper.

## Background

1. On March 29, 2011, the Ad Hoc Group of Lehman Brothers creditors (the "Ad Hoc Group") filed a motion for entry of (i) an order scheduling a disclosure statement hearing and approving the form and manner of notice thereof and (ii) an order approving the disclosure statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC [Docket No. 15431] (the "Motion").

2. On April 6, 2011, the Operating Company Creditors filed the Response of the Operating Company Creditors to the Motion of the Ad Hoc Group of Lehman Brothers Creditors Seeking, Among Other Things, an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof (the "Response") [Docket No. 15568].[1] The Response expressed support for the relief requested in the Motion with respect to the schedule for considering alternative disclosure statements, and modified the Ad Hoc Group's proposed order to extend the Debtors' disclosure statement schedule to other potential plan proponents. A number of other creditors filed joinders and statements in substantial agreement with the Response.[2]

3. On April 8, 2011, the Debtors filed the Objection, opposing the Motion and seeking delayed consideration of alternative disclosure statements and sequential solicitation of the Debtors' and alternative plans.

---

[1] The Debtors' reference to these creditors as the "Big Banks" grossly mischaracterizes the breadth and number of creditors supporting the Response.

[2] Statement of Various LBT Noteholders Regarding the Motion [Docket No. 15671]; Statement of Centerbridge Credit Advisors LLC with Respect to Response of Operating Companies to the Motion [Docket No. 15672]; Limited Response of Bank of America, N.A. to the Motion [Docket No. 15673]; Joinder of Carval Investors UK Limited to Response of Operating Company Creditors to Motion [Docket No. 15674].

4. On April 13, 2011, the Official Committee of Unsecured Creditors (the "Committee") filed a Response to the Motion [Docket No. 15774], stating, among other things, that it has no objections to the scheduling of concurrent hearings on any alternative disclosure statements, provided that they are timely filed (the "Committee's Response").

**Sole Issue Before the Court Is Whether
Disclosure Statements Should Be Considered at June 28 Hearing.**

5. Irrespective of their position on the Ad Hoc Group's disclosure statement, the Debtors have agreed that any alternative plan and disclosure statement filed by the Operating Company Creditors may be considered at the June 28, 2011 hearing. See Exhibit A to the Objection (noting their agreement "that a disclosure statement filed by [the Operating Company Creditors] would be scheduled for approval hearing at the same time as the Debtors' proposed disclosure statement . . ."); Committee's Response at ¶ 2. That the Debtors wish to preserve substantive objections to any such alternative disclosure statements is beside the point.[3]

6. The key disagreement between the Debtors and the Operating Company Creditors relates to the Debtors' request – made for the first time in its objection to the Motion – that the Debtors' plan and disclosure statement be granted priority over any other alternative plan and disclosure statement. This request is not only unsubstantiated and contrary to law, but it is also hypothetical, unripe for consideration, and currently not properly before the Court. The Debtors' requests to adopt sequential plan confirmation and solicitation procedures far exceed the scope of the Motion and are premature, as any number of additional alternative plans and disclosure statements could be filed and/or withdrawn within the next several weeks.

---

[3] In fact, the only aspect of the scheduling issue before the Court on which there is any disagreement among any of the parties in interest that filed pleadings on the matter, is whether the Ad Hoc Group's disclosure statement in particular should also be considered concurrently with that of the Debtors. Only the Debtors oppose this relief sought by the Motion – the Committee, Operating Company Creditors, and numerous other creditors that have filed statements and responses to the Motion voice no objections.

3

### Denying Request for Consideration of Alternative Disclosure Statements at June 28 Hearing Would Constitute a *De Facto* Exclusivity Extension in Contravention of Section 1121.

7.  Section 1121(d)(2) explicitly precludes extensions of the Debtors' exclusive right to file and solicit a plan beyond 18 months or 20 months, respectively, after the petition date. Needlessly hindering the consideration of timely filed disclosure statements relating to an alternative plan constitutes a *de facto* exclusivity extension and is impermissible. In re New World Pasta Co., Tr. of Ruling at 5:4-7, 04-02817 MDF (Bankr. M.D. Pa. Oct. 1, 2004), ECF No. 523 (denying the Debtors' request to extend their exclusivity and refusing to allow the Debtors to use procedures aimed at limiting the filing of alternative plans and disclosure statements to obtain a *de facto* extension of exclusivity). Here, the Debtors are seeking not only to delay the disclosure statement hearing and solicitation with respect to alternative plans but they also expressly propose in direct contravention of Section 1121(d)(2) that alternative plans should not be considered until after the confirmation hearing on their plan.

8.  The Debtors do not dispute that even delaying the approval hearings on alternative disclosure statements would result in a backdoor extension of their exclusivity but assert that the "patently unique" nature of these Cases apparently overrides explicit statutory authority. Objection ¶ 2. While this Court has indeed previously noted that Congress may not have anticipated "cases of such dimensions and issues when it amended Section 1121," the Court also appropriately concluded that regardless of the "practical application [of Section 1121,] it's the law [it] need[s] to apply."[4]

---

[4] Tr. of July 15, 2009 Hr'g at 98:1-12 ("When Congress amended the provisions of 1121 in the 2005 amendments to limit the discretion of a bankruptcy court judge to extend exclusivity more than eighteen months from the filing date, I rather expect that Congress wasn't thinking about the Lehman Brothers Holdings bankruptcy case. And circumstances in bankruptcy have changed dramatically since then, as have circumstances in the economy. <u>I won't get into the question of whether or not I think that is or is not a useful provision in mega-bankruptcy cases, because it may not be in terms of its practical application, but it's the law I need to apply</u>.") (emphasis added).

9.      Section 105(d)(2) may not be invoked to circumvent the explicit limitations on exclusivity set forth in Section 1121(d). By the very terms of Section 105(d)(2), the court can exercise its power under that section only if such exercise would not be "inconsistent with another provision of [the Bankruptcy Code and Bankruptcy Rules]." 11 U.S.C. § 105(d)(2)(B). The use of Section 105(d)(2) to grant a *de facto* extension of the exclusivity periods would clearly fall beyond the clear and unambiguous boundaries set by Section 1121(d). See In re Barnes, 308 B.R. 77, 80-81 (Bankr. D. Colo. 2004) (the court "cannot use its broad section 105 powers to contravene [section 1121(e)] deadline" because that section is "plain and clear in its prohibition of extending the 160-day plan filing deadline").[5]

10.     The two cases cited by the Debtors in opposition to a concurrent plan process are inapposite. In In re Sunflower Racing, Inc., 218 B.R. 972 (D. Kan. 1998), the district court denied for lack of jurisdiction a creditor group's motion for leave to appeal a bankruptcy court's ruling. The bankruptcy court had not allowed the creditor group to prosecute its competing plan and disclosure statement on the same schedule as the debtor's where the competing plan proponent was the debtor's business competitor whose motives were questioned by the bankruptcy judge, and the competing plan was a liquidation rather than a reorganization plan. Similarly, in In re Aspen Limousine Service, Inc., 187 B.R. 989 (Bankr. D. Colo. 1995), the proponent of the alternative plan was a "business competitor and minor creditor" of the debtor, and both the debtor's plan and the competing plan provided 100% payment to all creditors, which contrasts sharply with these cases. Furthermore, the debtor's disclosure statement had been approved and the plan and disclosure statement had already been disseminated to the creditor constituencies, rendering the alternate scheduling more confusing. The opposite is true

---

[5] Nor can the court exercise discretion under any statutory or case law authority when such exercise would contradict the clear and unambiguous language of Section 1121.

5

here, where there is an opportunity at the outset to establish a clear uniform process and where the concurrent consideration of competing plans would avoid substantial expenses for the estates and any alternative plan proponents, as well as promote judicial economy. Additionally, both cases were decided before the recent amendment to Section 1121 when Congress significantly curbed the ability of courts to grant exclusivity extensions by imposing a hard cap.

### Even Assuming, *Arguendo*, that Section 105(d) Applied, the Goals of Efficiency and Expeditiousness Dictate that Timely Filed Disclosure Statements Should Be Considered on the Same Schedule.

11. Even if applicable, Section 105(d) commands the adoption of the same schedule for considering all timely filed disclosure statements. The purpose of this section is to "ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(2). It is unequivocally more expeditious and economical to have a single process than to needlessly multiply the significant expenses and judicial resources associated with each of the noticing, hearings, and pleadings relating to the consideration of a disclosure statement and plan.[6] Indeed, not having a single process would contradict the plan discovery procedures proposed by the Debtors, which contemplate that all plans will be considered on a single track.

12. The Debtors' plan is an unsuccessful effort to appease their most vocal critics – the LBHI bondholders—and enjoys no support from any other significant creditor constituency.[7] As such, it would be particularly un-expeditious and un-economical to give the Debtors' plan and disclosure statement undue priority when there are likely to be significant issues raised with respect to the confirmability of the Debtors' plan. Specifically, the Debtors' plan contains

---

[6] By way of example, based on the estimate obtained from the Debtors' noticing agent, it will cost over half a million dollars to send the initial basic notice of the disclosure statement hearing in accordance with the Bankruptcy Rules of Procedure. It would be wasteful and irresponsible to require each alternative plan proponent to carry these costs individually given that the Debtors will have to distribute this notice in any event, regardless of the number of competing plans.

[7] The Committee in these cases was formed when LBHI filed for chapter 11 and before the filings of other domestic Lehman entities, and consists predominantly of LBHI bondholder representatives.

6

classifications, compromises, and class gifts that favor LBHI's senior bondholders and that have been agreed to by no other creditor constituency, all of whom are disadvantaged by these procedures.[8]  Under these circumstances, it is highly unlikely that the Debtors' plan can be confirmed.

13.     Accordingly, an unlawful *de facto* extension of the Debtors' exclusivity would not "obviate[] potentially extended, prolix, and burdensome litigation," Objection ¶ 3 – it would proliferate it.  Instead of a single litigation process – such as what is currently contemplated by the joint plan confirmation discovery procedures – there would be a separate litigation for the Debtors', the Ad Hoc Group's, and potentially other alternative plans and related disclosure statements.

**Fairness Weighs in Favor of the
Concurrent Consideration of Alternative Disclosure Statements.**

14.     In search of some justification for an inefficient and costly process that grants them undue priority, the Debtors attempt to characterize their plan as a settlement of issues with relevant creditor groups, which compromise has been forged through "extended discussions and creditor input" and resolves the "multifaceted issues" facing the estates.  In fact, no such settlement was ever proposed or agreed to by substantial portions of creditors directly affected by such purported "settlements."

15.     The Debtors also assert that they are in a "critical stage" of negotiations concerning their plan and that "contemporaneous consideration of alternative disclosure statements and plans may derail such negotiations."  Objection ¶ 4.  The counterparties to those

---

[8]     The Debtors' plan is particularly unlawful with respect to creditors of operating companies.  By improperly relying on baseless substantive consolidation arguments and inflated intercompany claims, the Debtors' plan strips value from creditors of the operating companies for the benefit of the LBHI bondholders.  The shares of these subsidiaries were transferred to LBHI postpetition and without court authorization.  These transfers should not be used as a basis for the Debtors to impose a plan on these creditors that they oppose and have no effective ability to contest with their own plan.

7

very negotiations vociferously disagree and submit that maintaining a level playing field for these negotiations and having a fair chance to present alternatives to the Debtors' plan are critical antecedents to achieving any consensus here. Rather than safeguarding any kind of compromise, the Debtors are simply seeking to shut out other parties from the process while trying to push through a plan that lacks support of substantial creditor constituencies.

16. The concurrent consideration of competing plans would ensure that "[c]reditors and interest holders will be able to review and analyze [all] plans (on an equal footing) and decide which plan best satisfies their interests," promoting "collective decision-making in a creditor democracy." In re Mother Hubbard, Inc., 152 B.R. 189, 196 (Bankr. W.D. Mich. 1993); *accord* In re Landmark Park Plaza Ltd. P'ship, 167 B.R. 752, 757 (Bankr. D. Conn. 1994). Creditors should be given the opportunity to consider competing plans at the same time so they can make an informed decision based on all of the relevant options. Indeed, any disclosure statement – even in the context of sequential solicitation – will need to describe the terms and conditions of then-existing competing plans in order to provide adequate information under Section 1125. Additionally, Section 1129(c) of the Bankruptcy Code contemplates that the Court should have the opportunity "to consider the preferences of creditors" in determining which competing plan to confirm. 11 U.S.C. § 1129(c). This represents a legislative judgment that simultaneous consideration of multiple plans is not excessively confusing or otherwise undesirable – even in complex cases. Moreover, to implement this mandate, creditors must be given an opportunity to consider the various options simultaneously.

### The Debtors' Request for Sequential Solicitation and Plan Confirmation is Procedurally Improper.

17. The issue presented by the Motion is limited to the schedule relating to the hearing on alternative disclosure statements. Rather than simply objecting to this scheduling

8

request, the Debtors seek a *de facto* exclusivity extension in clear contravention of the Bankruptcy Code and further wide-ranging relief concerning solicitation and confirmation of alternative plans. Presumably, the Debtors are relying on Section 105(d), but such relief is not permitted by the Bankruptcy Code. Moreover, the Debtors' requested relief is independent from and far exceeds the scope of the Motion, is presented in an objection filed three business days before the hearing, and required adequate notice to creditors and other parties in interest of at least 14 days, which the Debtors have not provided.

18. The Debtors have proposed a disclosure statement schedule with which numerous parties are willing to comply, including a disclosure statement objection deadline of May 27, 2011 and a disclosure statement hearing on June 28, 2011. Extending this schedule to any plans filed by other parties would give everyone a fair opportunity to weigh in on each plan as well as allow the Court to consider all timely filed plans and disclosure statements in tandem and assess the level of support for each plan. Furthermore, it would provide the parties additional time to achieve compromise that might avert the need for additional plans.

19. Therefore, the Operating Company Creditors respectfully submit that the Court should consider any timely filed disclosure statements at the June 28 hearing and postpone any determinations regarding the solicitation and plan confirmation procedures with respect to competing plans until a later date, upon proper notice and opportunity for a hearing.


Dated: April 11, 2011
      New York, New York

Respectfully submitted,

BINGHAM MCCUTCHEN LLP
399 Park Avenue
New York, New York 10019
Telephone:  (212) 705-7000
Facsimile:  (212) 702-3667
Joshua Dorchak
Joshua.dorchak@bingham.com

By:  /s/ Joshua Dorchak
    Joshua Dorchak
    A Member of the Firm

(*Attorneys for Deutsche Bank AG*)

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, New York 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 504-6666
Howard R. Hawkins, Jr.
Howard.Hawkins@cwt.com

- and -

700 Sixth Street, N.W.
Washington, D.C. 20001
Telephone: (202) 862-2200
Facsimile: (202) 862-2400
Mark C. Ellenberg
Mark.Ellenberg@cwt.com
Peter Friedman
Peter.Friedman@cwt.com


By:  /s/ Mark C. Ellenberg
    Mark C. Ellenberg
    A Member of the Firm

(*Attorneys for Morgan Stanley Capital Services Inc. and Morgan Stanley & Co. International plc*)

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Thomas J. Moloney
tmoloney@cgsh.com
Seth Grosshandler
sgrosshandler@cgsh.com
Sean A. O'Neal
soneal@cgsh.com

By:  /s/ Thomas J. Moloney
     Thomas J. Moloney
     A Member of the Firm

(*Attorneys for D. E. Shaw Composite Portfolios L.L.C.,
D. E. Shaw Oculus Portfolios, L.L.C., Goldman Sachs Bank
USA (successor by merger to Goldman Sachs Capital
Markets, L.P), and Goldman Sachs International*)

                CLIFFORD CHANCE US LLP
                31 West 52nd Street
                New York, New York 10019
                Telephone: (212) 878-8000
                Facsimile: (212) 878-8375
                Andrew Brozman
                Andrew.Brozman@CliffordChance.com

                By: <u>/s/ Andrew Brozman</u>
                    Andrew Brozman
                    A Member of the Firm

                (*Attorneys for Crédit Agricole CIB*)

                      CRAVATH SWAINE & MOORE
                      825 Eighth Avenue
                      New York, New York 10019
                      Telephone:  (212) 474-1000
                      Facsimile:  (212) 474-3700
                      Richard Levin
                      RLevin@cravath.com

                      By:  /s/ Richard Levin
                          Richard Levin
                          A Member of the Firm

                      (*Attorneys for Credit Suisse International*)

>      DEWEY LEBOEUF LLP
>      1301 Avenue of the Americas
>      New York, New York 10019
>      Telephone:  (212) 259-8000
>      Facsimile:  (212) 259-6333
>      Irena M. Goldstein
>      igoldstein@DeweyLeBoeuf.com
>
>      By:  /s/ Irena Goldstein
>           Irena M. Goldstein
>           A Member of the Firm
>
>      (*Attorneys for The Royal Bank of Scotland plc*)

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Alan W. Kornberg
akornberg@paulweiss.com
Jeffrey D. Saferstein
jsaferstein@paulweiss.com

By: __/s/ Jeffrey D. Saferstein__
    Jeffrey D. Saferstein
    A Member of the Firm

(*Attorneys for Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries, and Silver Point Capital, L.P. on behalf of its affiliated investment funds*)