WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Irwin H. Warren
Randi W. Singer

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                                                                 :
**In re**                                          :        **Chapter 11 Case No.**
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*   :        **08-13555 (JMP)**
                                                                 :
            **Debtors.**                        :        **(Jointly Administered)**
                                                                 :
-----------------------------------------------------------------x

**OMNIBUS REPLY TO OBJECTIONS TO DEBTORS' MOTION**
**PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE**
**AND RULE 7026 OF THE FEDERAL RULES OF BANKRUPTCY**
**PROCEDURE FOR AUTHORIZATION TO ESTABLISH AND**
**IMPLEMENT PROCEDURES IN CONNECTION WITH DISCOVERY**
**RELATED TO PLAN CONFIRMATION AND AMENDED PROPOSED ORDER**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

            Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors in possession (together, the "Debtors" and, collectively

with their non-debtor affiliates, "Lehman"), as and for their reply to the various objections

(collectively, the "Objections") interposed to the Debtors' motion (the "Motion") for

authorization to establish and implement procedures in connection with discovery related to plan

confirmation in these Chapter 11 Cases, respectfully represent:

## PRELIMINARY STATEMENT

1.      These Chapter 11 Cases, without a doubt, represent one of the largest and most complex bankruptcies in history.  Plan Discovery[1] is inevitable.  Left to their own devices, scores of creditors, all represented by their own separate attorneys, would serve multitudes of voluminous and duplicative document requests, 30(b)(6) notices, depositions notices, interrogatories, requests for admission, etc., upon the Debtors and numerous other parties in connection therewith.  It is difficult, if not impossible, to estimate the thousands of attorney hours and the extraordinary expense that the Debtors would unavoidably incur in analyzing and responding to such individual requests (not to mention the attendant meet and confers, discovery motions, review of millions of pages of documents that would dwarf the prior Examiner discovery (in terms of burden and expense to the Debtors' estates), and other steps that would follow).  It is equally difficult to estimate how many years such discovery would take.

2.      In the face of these concerns, the Debtors have endeavored to design the Plan Confirmation Discovery Procedures in a fashion that accommodates the letter and spirit of the Federal Rules of Civil Procedures (including Rule 1) and the Federal Rules of Bankruptcy Procedure.  Procedures related to plan confirmation have been established in other large complex chapter 11 cases with similar goals of efficiency in mind.  *See, e.g.*, *In re Enron Corp. et al.*, Ch. 11 Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Feb. 13, 2004), *Order Establishing, Among Other Things, Procedures and Deadlines Concerning Objections to Confirmation and Discovery Therewith* [Docket No. 16233].  As noted in the Motion, a number of the concepts and provisions reflected in the Proposed Order are similar to those in the procedures approved by the bankruptcy court in *Enron* – but the Proposed Order also contains additional concepts and

---

[1] Capitalized terms not otherwise defined herein, shall have the meanings ascribed to them in the most–recently revised form of the Order, filed by the Debtors on April 11, 2011 (the "Proposed Order").

provisions that are new but essential, given the extreme complexity of these cases.  The process by which the Proposed Order has been developed—in particular, extensive negotiation with and input from numerous creditors and other interested parties—and the minimal number of provisions in the Proposed Order that actually are the subject of objections here, confirm that there is strong consensus supporting the Order's approach: virtually everyone recognizes the need for and wisdom of the procedures contemplated in the Proposed Order, which will dramatically streamline discovery and substantially reduce the costs and burdens to the Debtors and all parties.

3.    On March 8, 2011, after extensive discussion with attorneys for the Creditors' Committee and certain other interested parties, the Debtors filed their Motion requesting entry of an order authorizing the Debtors to establish and implement Plan Confirmation Discovery Procedures.  During the month that followed, the Debtors not only received and reviewed multiple sets of comments to these Procedures, and also simultaneously engaged in extensive negotiations with numerous parties, including the office of the United States Trustee ("UST"), creditors, and groups of creditors concerning the Proposed Order and the attachments thereto. Indeed, certain responses (and even objections) to the Motion acknowledge the cooperative nature of these negotiations, and note the "parties' willingness to find common ground where it is exists."  Response of the Joint Administrators of the UK Administration Companies [Docket No. 15773] ¶ 3. As a result of these extensive negotiations, the Debtors filed two amended versions of the Proposed Order; and attached hereto as <u>Exhibit 2</u> is yet another amended version, reflecting still additional negotiations and the Debtors' efforts to resolve many of the Objections. Attached hereto as <u>Exhibit 3</u> is a redline comparison reflecting changes made from the revised order filed by the Debtors on April 6, 2011.

4.     The Proposed Order would create a targeted, streamlined approach to Plan Discovery that reduces expenses and burdens to all Participants, while still allowing all Participants to obtain discovery by funneling discovery requests (whether to the Debtors, Alternative Plan Proponents, objectors to the Plan or others) into a single request to the person from whom discovery is sought, while limiting certain discovery devices that, in practice, generate far more costs and burdens than useful information.  Indeed, almost every Objection filed concedes the appropriateness of establishing uniform procedures, and admits that there are benefits to streamlining Plan Discovery.  *See, e.g.*, Objection of State Street Bank and Trust Company [Docket No. 15613] at 1; Response of the United States Trustee [Docket No. 15680] at 1; Objection of the Association of German Banks [Docket No. 15715] ¶ 7.

5.     Further, a review of the Objections highlights that in reality, the outstanding objections regarding the Proposed Order are very few in number; rather, for the most part, the same objections are repeated by multiple objectors.  And many of these Objections have been resolved through additional revisions incorporated into the Proposed Order, as filed today.  Those Objections that are not resolved through the newly revised Proposed Order should be rejected: indeed, many, on their face, can only be understood as attempts by certain objecting parties to delay Plan Discovery as long as possible or to receive special treatment under a Proposed Order that seeks to treat all Participants equally.  For the reasons set forth in the Motion, and this omnibus Reply, including Exhibit 1 attached hereto, each of the Objections should be overruled and the Plan Confirmation Discovery Procedures should be approved.

## THE OBJECTIONS LACK MERIT AND SHOULD BE OVERRULED

6.     Many of the Objections focus on the same handful of provisions of the Proposed Order.  Set forth below are the principal common Objections, grouped in categories, together

with the Debtors' responses thereto.[2]  In addition, the Debtors' specific responses to each of the arguments raised in each of the Objections (including those Objections that have been resolved by today's modifications to the Proposed Order) are outlined in the attached chart at <u>Exhibit 1</u>.[3]

<div align="center"><b><u>Common Objections and the Debtors' Responses</u></b></div>

**A.** **Objections to the Role of the Debtors in Plan Discovery**

<u>Objection A1</u>:    The Proposed Order Provides the Debtors With An Unfair Advantage.

7.    <u>Response</u>:  The objection misinterprets the Proposed Order, which was drafted and then revised in an effort to put all Participants in Plan Discovery on equal footing, with similar streamlining, discovery tracks and common deadlines.    Achievement of such overwhelmingly equal treatment is clear on the face of the Proposed Order.  To the extent that any of these processes (and there are very few) appear to "benefit" the Debtors, they are necessary, as a practical matter, because there can be no dispute that by far, the most discovery requests will be directs at the Debtors and the vast majority of material to be searched and produced in the course of Plan Discovery will be produced by the Debtors.  More important, both the volume of material that will be the subject of discovery from the Debtors and the difficulty, as a practical matter, that the Debtors will face in responding to the anticipated discovery requests, will be exponentially greater for the Debtors than for any other discovery request recipients.

---

[2] The Debtors deny many of the factual and legal assertions and characterizations contained in the Objections. Nothing contained herein shall be deemed an admission or acceptance of any statement contained in the Objections.

[3] The Debtors only respond to the Objections and Limited Objections.  To the extent certain parties filed "Reservations of Rights" in response to the Motion, this Omnibus Reply does not address such filings.

<u>Objection A2</u>:    The Debtors Should Have No Coordinating Role in Plan Discovery.

8.    <u>Response</u>:  To the extent the Debtors have any coordinating function under the Proposed Order, it is, on its face—like the coordinating function performed by any Designated Party as to discovery directed <u>toward</u> the Debtors (and other Participants, as well)—solely ministerial and was designed to streamline the discovery process and to benefit Participants and Non-Participants by reducing the number of discovery requests that any targets of discovery may receive.  The ministerial role of the Debtors in this context is referenced throughout the Proposed Order.  *See, e.g.*, Proposed Order ¶ 5(b) (in compiling the discovery requests, the sole role of the Debtors is to avoid duplication, and the Debtors may not alter or exclude any request for any reason other than to avoid duplication).   The Designated Party has that precise role as to discovery sought from the Debtors. *See* Proposed Order ¶ 3.  To the extent any Participant believes that it does not obtain the discovery it seeks through the consolidated requests, the Proposed Order contains several mechanisms to ensure that Participants can seek leave of Court if discovery disputes cannot be resolved through the meet and confer process (the streamlined process requires that meet and confers be with the Participant who makes the specific discovery request, not the Designated Party); and it provides, that no party will be prejudiced by participating in the consolidated request process.  *See, e.g.,* Proposed Order ¶¶ 5(e), 17.

<u>Objection A3</u>:        The Requirement That A Creditor Must File A Notice Of Intent To Participate In Plan Discovery Is Unfair Because The Debtors And The Creditors' Committee Can Object.

9.    <u>Response</u>: The Notice of Intent is not burdensome and is simply a mechanism for providing notice that a party wishes to participate in Plan Discovery without the need to file a formal objection to the Plan.  Paragraph 2(e) of the Proposed Order allows the Debtors and the Creditors' Committee the right to object to Notices of Intent "on all grounds, including but not

limited to those that are, inter alia, harassing, or served by persons that are not parties in interest or do not comply with the requirements hereof or do not demonstrate a legally cognizable interest in participating in Plan Discovery." See Proposed Order ¶ 2(e). This mechanism is in place to ensure that all Participants provide the requested information and are involved in Plan Discovery for appropriate reasons. Any party who is the subject of such an objection will have the opportunity to respond and the ultimate decision will be made by the Court.

### B.      Objections to the Designated Party and the Group Mechanism

> Objection B1:      The Proposed Order Does Not Contain Procedures for Selecting the Designated Party.

10.    <u>Response</u>: The Debtors are not the appropriate party to determine how the Participants should elect the Designated Party as to discovery sought from the Debtors. (Ironically, certain parties have objected to even the limited role the Debtors already would have under the Proposed Order.) The Participants are all represented by highly sophisticated and experienced attorneys, who are well-equipped to mobilize and coordinate as necessary to select the Designated Party (which is defined to include <u>any</u> Participant), and they can (and should) do so expeditiously.

> Objection B2:      The Proposed Order Does Not Contain Procedures to Explain How Participants Determine the Members of Each Group and How a Particular Group Should Mobilize.

11.    <u>Response</u>: The Debtors have added language to the Proposed Order and the Notice of Intent (<u>Exhibit A</u> to the Proposed Order) allowing each Participant to identify the Group that it elects to join. Surely, no objector can seriously complain about an Order that lets it select its own group. Furthermore, information regarding which Group each Participant has elected to join will be included on the Official Service List. *See* Proposed Order ¶ 2(f). Upon receipt of the Official Service List, which will contain contact information for all Participants

(including telephone number and email), the Participants will be fully capable of mobilizing on their own.  The fact that twice in the last month, attorneys for numerous creditors have been able to meet at one time with the Debtors to negotiate quite successfully and cooperatively with the Debtors to obtain changes to the Proposed Order so confirms.

### C.    Objections to Privilege Provisions of Proposed Order

<u>Objection C1</u>:         Paragraph 3(j) Should Apply Equally to All Participants.

12.    <u>Response</u>:  This Objection is now moot.  The Proposed Order now provides that Paragraph 3(j) does apply equally to all Participants.  *See* Proposed Order ¶ 3(j).

<u>Objection C2</u>:         Paragraph 3(j) Should Not Encompass Documents
                            Exchanged Between Certain Debtor Entities.

13.    <u>Response</u>:    This Objection is premature, as it seeks a ruling before document requests even have been drafted (much less served), before the Debtors have reviewed and responded to same, before there has been any meet and confer, and thus, before anyone has established any need for this court to intervene at all on this issue.  Paragraph 3(j) specifically provides that even these categories of presumptively privileged documents <u>will</u> be searched in response to "reasonably limited, targeted search requests agreed to by a Participant or ordered by the Court." To the extent that Participants wish the Debtors to produce certain categories of documents, they should identify them and draft and serve the request; any objections thereto can and should be resolved on a case-by-case basis in accordance with the procedures set forth in the Proposed Order.

<u>Objection C3</u>:         The Proposed Order Should Be Clarified To Ensure There
                            is No Limitation on Factual Discovery from Alvarez &
                            Marsal.

14.    <u>Response</u>:  This objection is mooted by the current version of the Proposed Order. The Proposed Order contains a provision that does not require *any* Participant to search

documents *solely* within an advisor (even if <u>not</u> a purely post-chapter 11 advisor like the Debtors' advisors—discovery from whom no doubt would be extraordinarily burdensome and would likely dwarf any discovery that any other party will have to produce here). Proposed Order ¶ 3(j)(vi). The same provision further specifically states that "in the event a representative of any advisor is disclosed to be an anticipated witness at the Plan Confirmation hearing, such individual's documents shall be subject to discovery, and the advisory firm shall also be subject to reasonably limited, targeted document requests relating to the subjects of the proposed witness's expected testimony, subject to whatever privilege or other protection may apply." *Id.* This provision obviates the objection to the limitation. The limitation is both entirely reasonable under the circumstances and completely even-handed.

> <u>Objection C4</u>:   The Debtors Should Provide a Privilege Log.

15.   <u>Response</u>:  Notwithstanding the obviously far greater burden that this will impose on the Debtors than any other party, the current version of the Proposed Order provides that all Participants, including the Debtors, are required to produce a limited privilege log. *See* Proposed Order ¶ 11. Accordingly, this Objection is resolved.

**D.   Objections to Paragraph 12 of the Protective Order**

> <u>Objection D1</u>:   The Protective Order's Exclusion From Discovery of All Documents Containing "Asset Level or Valuation Details" is Unjustified.

16.   <u>Response</u>:  Asset level or valuation information is very sensitive as the Debtors continue to attempt to maximize the value of their assets. Therefore, providing such information to Participants may have the effect of giving Participants information that will be used for trading and other purposes to the prejudice of the Debtors. Furthermore, Participants who obtain such information will have a bidding advantage *vis-à-vis* Non-Participants as to the Debtors' assets. Finally, providing such information poses the risk of leaks for those trading in the

markets.  Nonetheless, the Debtors have revised Paragraph 12 of the Protective Order in an effort

to resolve this Objection.  *See* Protective Order ¶ 19.  Documents containing "asset level or

valuation details" (*i.e.*, information regarding the value of specific assets, as determined by the

Debtors' professionals) will be treated as "Restricted Information" pursuant to the Protective

Order and produced only in response to reasonably targeted requests and subject to certain

necessary conditions.

### E.    Objections to the Scope and Definition of Plan Discovery

> Objection E1:    The Proposed Order Should Be Modified So That Discovery Related to Claims Allowance, Valuation, and Estimation Are Excluded From Plan Discovery.

17.    Response:  This Objection risks deciding prematurely, and in a vacuum, whether

particular discovery requests fully implicate Plan Issues.  Nevertheless, the Debtors have added

the following additional language to the current version of the Proposed Order, in an effort to

address this Objection:  "This Order shall not apply to discovery sought by an individual creditor

in connection with the estimation or allowance of a such creditor's claim(s) to the extent that

such discovery pertains solely to the amount, priority (i.e., secured, unsecured or administrative)

or treatment of such claim (i.e., senior or subordinated, but not classification), and does not

implicate contested issues of law or fact that affect numerous other creditors, including but not

limited to, substantive consolidation, the treatment and validity of intercompany claims

generally, or the validity and enforceability of guarantee claims generally."  *See* Proposed Order

¶ 1(b). Accordingly, this Objection, to the extent it had any merit, is now resolved.

### F.    Objections to Procedural Aspects of the Proposed Order

> Objection F1:    The Discovery Deadlines Are Too Short.

18.    Response:  The sole purpose of this objection, on its face, is to delay discovery.

Plan Discovery is going to be a lengthy process; but in order to proceed with Plan Confirmation,

it is imperative that Plan Discovery proceed on as expedited a basis as practicable.    The

deadlines in the Proposed Order, although admittedly aggressive (especially for the Debtors),

have been established in cooperation with a large number of creditors and should be adhered to.

If, and to the extent that, timing or other issues arise during the course of discovery, the Proposed

Order makes adequate provisions for the Court to grant relief, including by setting four pre-

scheduled discovery status conferences at key junctures in the process, and permitting

Participants to seek additional conferences if the need arises.  *See* Proposed Order ¶¶ 17, 18.

<div style="margin-left:2em;">

**Objection F2**:        The Proposed Order Does Not Provide the Participants with
a Sufficient Number of Interrogatories.

</div>

19.    <u>Response</u>:  Notwithstanding agreement by many creditors and interested parties to

the original proposal, the Debtors have revised Paragraph 12 of the Proposed Order in an effort

to address this Objection.  *See* Proposed Order ¶ 12.  The revised language increases the number

of permitted interrogatories and relaxes the streamlining, by allowing each Group to serve ten

Interrogatories upon the Debtors, ten Interrogatories upon each Alternative Plan Proponent, and

ten Interrogatories upon any Participant other than the Debtors or Alternative Plan Proponent.

*Id.*

<div style="margin-left:2em;">

**Objection F3**:        The Proposed Order Does Not Allow for Requests for
Admission.

</div>

20.    <u>Response</u>:  Responding to Requests for Admission is a lengthy, painstaking and

time-consuming process that, in the experience of many attorneys, almost always leads to

significant costs, burdens and satellite proceedings, but rarely leads to much usable information.

As a result of the enormous burden, added expense, and significant delay Requests for

Admission would impose on Plan Discovery, the Debtors (who, like all Participants would be

bound by such provision) and should not be included in the Proposed Order.

## CONCLUSION

For the reasons set forth above and in <u>Exhibit 1</u> hereto, the Debtors respectfully request that the Court (i) overrule the Objections to the Motion; (ii) approve the Revised Proposed Order and authorize the Plan Confirmation Discovery Procedures; and (iii) grant such other relief as just.

Dated: April 11, 2011
     New York, New York

<div align="right">

/s/ Irwin H. Warren
Irwin H. Warren
Randi W. Singer
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

</div>

# EXHIBIT 1

## Exhibit 1:  Specific Objections and the Debtors' Responses

| Limited Objection of State Street Bank and Trust Company ("State Street") | |
|---|---|
| | (Docket No. 15613) |
| **Objection** | **Response** |
| *See* Responses to Common Objections A2, A3, B1, B2, C3, F2, F3 above | |
| ▪ It would be too expensive to formulate requests collectively.  (¶ 12). | ▪ The Proposed Order, on its face, provides procedures that controvert this objection.  The sole purpose of collective requests and coordinated discovery is to minimize expenses to all parties—but especially any and all <u>recipients</u> of discovery, who would be burdened with the need to respond to dozens of separately-served discovery requests.  The Proposed Order expressly provides that by participating in the collective process, no Participant shall be prejudiced.  *See, e.g.*, Proposed Order ¶¶ 3(b), 5(b), 6(b), 13(a)(iii), 13(b)(iii), 13(c)(iv), 13(c)(ix). |
| ▪ The Proposed Order is silent as to the duties of the Designated Party, Coordinating Participant, or Group representative. (¶ 16). | ▪ The Proposed Order, on its face, provides procedures that controvert this objection.  The Proposed Order expressly states that the role of the Designated Party is "to act as a facilitator and intermediary for Discovery Requests."  ¶ 3(a).  Moreover, the purely ministerial role of the Designated Party is emphasized throughout the Proposed Order.  *See, e.g.*, ¶ 3(b) (The Designated Party may not alter or exclude a request from a consolidated document request "for any other reason than to avoid duplication."); *see also* ¶ 13(a)(ii).<br>▪ The current version of the Proposed Order does not contain the term Coordinating Participant and there is no defined term "Group representative" in the current version of the Proposed Order. |
| ▪ The Proposed Order would force creditors to work through two levels of intermediaries without the benefits of an actual committee. (¶ 17). | ▪ The Proposed Order and the role of Groups and the Designated Party was designed to streamline the discovery process and reduce the number of discovery requests that *all* Participants may receive.<br>▪ Appointing a half dozen or more committees, paid for by the Debtors' estates (as State Street suggests) would not add any real value to the process.  Instead, it would add delay and guarantee exponentially increased cost of Plan Discovery. |
| ▪ State Street's Proposed Alternative Approach to Plan Discovery.  (¶¶ 24-29). | ▪ State Street has known about the proposed order for over a month, and yet only proposes a vague, high-level overview of an alternative approach.  State Street's alternative proposal would undo the streamlined process that was developed over six weeks of collaboration with other creditors and groups, and there is no way of knowing how the alternative approach would work, and how long discovery would take under such an approach.  On the other hand, the Debtors have collaborated with numerous groups of creditors and proposed a workable, streamlined, efficient discovery plan that many parties support.<br>▪ State Street's ill-defined alternative approach will only further delay plan confirmation, and would exponentially increase the cost and burden to the Participants and to the Debtors who would pay for all of it.  This enormous burden would unfairly drain the resources of the Estate to the detriment of all creditors.<br>▪ The appointment of new ad hoc committees, each of which would be required to hire its own counsel and litigation experts, would be an enormously expensive and unnecessary burden for the Debtors. |

| Limited Objection of Giants Stadium LLC and Renewed Limited Objection of Giants Stadium | (Docket Nos. 15617 and 15742) |
|---|---|
| **Objection** | **Response** |
| ▪ Plan Discovery is premature and should not commence until the Debtors reveal its proposed treatment of derivative claims such as those of Giants Stadium (¶¶ 13-17.) | ▪ This objection only seeks to delay commencement of discovery (and in order to get special treatment for this objector), and there is no reason that discovery cannot go forward at this time. <br> ▪ The Proposed Order submits a protocol for Plan Discovery only.   It does not address any other issues. |

| Response of the United States Trustee ("UST") | (Docket No. 15680) |
|---|---|
| **Objection** | **Response** |
| ▪ The UST objects that it is not individually provided for, with respect to document requests, interrogatories and deposition requests to Debtors, Alternative Plan Proponents or Non-Participants. (¶¶ 30-32) | ▪ Although the Debtors believe that the prior language expressly did make special provision for the UST (*See, e.g.,*Protective Order  ¶¶ 1, 2, 3, 14, 15, 23),  the Debtors have added additional language to the current version of the Proposed Order in an effort to address the UST's concern. |
| ▪ The Proposed Order and Protective Order should be modified to clarify that the UST may disclose information obtained through discovery under applicable law and that this enforcement may be used in connection with civil or criminal law matters.  (¶¶ 34-35). | ▪ As the UST recognizes, the Protective Order already explicitly provides for this, in response to its prior request to Debtors.  *See* Protective Order ¶ 23.  Because the Protective Order governs disclosure of all documents and information produced in Plan Discovery, it would be redundant to repeat this language in the Proposed Order itself. <br> ▪ The Debtors nevertheless will add the following language to the end of Paragraph 20 of the Proposed Order:  "Nothing in this Paragraph shall limit the UST's rights and obligations as described in Paragraph 23 of the Protective Order attached hereto as Exhibit B." |
| ▪ The Protective Order should be modified to incorporate a mechanism by which documents and other pleadings containing information designated as Confidential or Attorneys' Eyes Only may not automatically be filed with the Court under seal—and instead would be provided to, and pre-cleared by the U.S. Trustee days in advance of the proceedings[4].  (¶¶ 36-46). | ▪ The UST's procedures are unworkable and, in the experience of the Debtors, unprecedented. They would grind Plan Discovery to a halt and would significantly impede all Participants' ability to prepare for and participate at hearings. <br> ▪ The Debtors' Protective Order has provisions regarding both the designation (and disclosure to all parties) of materials as confidential and attorneys' eyes only and the filing of sealed documents—and thus already has a mechanism in place that will allow the UST to review any and all documents designated as Confidential or Attorneys' Eyes Only long before use of any of same in any proceeding, and it provides a mechanism for objecting to any designation.  *See* Protective Order ¶ 24. |

---

[4] Although the Debtors requested precedent court orders to this effect, the UST has not provided any.

| Objection of Bundesverband deutscher Banken e.V. ("BdB") | |
|---|---|
| | (Docket No. 15715) |
| **Objection** | **Response** |
| ▪ *See* Responses to Common Objection A1, B1, B2, C1, C3, F2. | |
| ▪ The Notice of Intent deadline is "entirely premature" and Participants would be required to formulate their discovery requests prior to approval of any disclosure statement. (¶¶ 9-13,19). | ▪ This objection is interposed to delay Plan Discovery. No party is being prejudiced by the commencement of Plan Discovery.<br>▪ The Plan and Alternative Plan provide Participants with ample information to form Discovery Requests.<br>▪ The Proposed Order expressly provides a Participant with the ability to seek supplemental discovery in the event that any material amendments are made to any provision in a plan of reorganization filed in the Chapter 11 Cases. *See* ¶ 15. Accordingly, no creditors will be prejudiced. |
| ▪ The "Group Discovery" construct forces non-debtors to mobilize too quickly. (¶¶ 15-18). | ▪ This is purely a request for delay; experience to date in negotiating the Proposed Order itself shows the objection to be baseless. |
| ▪ The Proposed Order provides that the Debtors – and only the Debtors – would have no additional discovery following the filing of a new plan or an objection to a plan. (¶ 29). | ▪ This objection is not consistent with the current version of the Proposed Order, which clearly states that "[a]bsent other agreement among Participants or order of the Court, the filing of an objection to the Plan or Alternative Plan after the Notice of Intent Deadline shall not provide a basis for anyone to seek additional discovery from *any Participant* outside the deadlines set forth in this Order." ¶ 15(d) (emphasis added) . Moreoever, the Proposed Order anticipates the possibility the revised, amended, or new chapter 11 plans may be filed, and the Proposed Order allows Participants to seek discovery related to newly-raised issues. ¶ 15. |
| ▪ The Proposed Order gives the Debtors far too much control in setting the schedule for fact and expert depositions, which could prejudice other Participants. (¶¶ 30-33). Deadline for filing rebuttal expert reports should be after initial expert depositions. (¶ 37). | ▪ The Proposed Order needs a mechanism to trigger the commencement of the deposition period—and substantial completion of the Debtors' document discovery is the most logical time, in order to avoid duplicative/repeated, or uninformed depositions. Individual Participants should not have the ability to unilaterally delay Plan Confirmation by refusing to produce documents.<br>▪ No Participant is required to retain a rebuttal expert until after Participants have had an opportunity to review expert reports. All Participants will know what the expert reports say and can retain rebuttal experts at that time. It is not necessary to delay this until after the deposition of experts. |
| ▪ The Proposed Order expressly grants priority to the Debtors, Alternative Plan Proponents and the Committee over the content and scope of interrogatories. (¶ 35). | ▪ This objection is moot. The current version of the Proposed Order contains no such mechanism. |
| ▪ Creditors of LBIE should be a separate Group. (¶ 36). | ▪ Every Participant wants to have the ability to form its own group with the creditors of its choosing. If each Participant were allowed to do so, there would be hundreds of Groups. This is simply unworkable. |

| Objection of Newport Global and Providence Equity | |
|---|---|
| | **(Docket No. 15731)** |
| **Objection** | **Response** |
| *See* Responses to Common Objection A2, A3, B1, B2, C1, C2, C3, F1. F2, F3 | |
| ▪ Creditors who entered into Prime Brokerage Agreements should be recognized as a separate "Group." (¶ 10). | ▪ Every Participant wants to have the ability to form its own group with the creditors of its choosing. If each Participant were allowed to do so, there would be hundreds of Groups. Such an approach is simply unworkable. |
| ▪ Plan discovery should not commence until after the Debtors obtain an order approving their disclosure statement. (¶ 10). | ▪ This objection is interposed to delay Plan Discovery. No party is being prejudiced by the commencement until Plan Discovery. The Proposed Order anticipates the possibility the revised, amended, or new chapter 11 plans may be filed, and the Proposed Order allows Participants to seek discovery related to newly-raised issues. ¶ 15.r |
| ▪ The Proposed Order is silent as to the duties of the Designated Party, Coordinating Participant or Group "representative." (¶ 10). | ▪ The Proposed Order expressly states that the role of the Designated Party is "to act as a facilitator and intermediary for Discovery Requests." ¶ 3(a). Moreover, the purely ministerial role of the Designated Party is emphasized throughout the Proposed Order. *See, e.g.,* ¶ 3(b) (The Designated Party may not alter or exclude a request from a consolidated document request "for any other reason than to avoid duplication."); *see also* ¶ 13(a)(ii).
▪ The current version of the Proposed Order does not contain the term Coordinating Participant or "Group representative." |
| ▪ Priority to the Debtors, the Committee and the Alternative Plan Proponents with respect to document requests, interrogatories and participation at depositions should be stricken. (¶ 10). | ▪ This objection is moot as it is based upon a provision that has been deleted from the current version of the Proposed Order. |
| ▪ The requirement that Participants who seek discovery of documents that are simultaneously in the possession, custody or control of the Debtors and the SIPA Trustee shall first direct such Document Requests to the Debtors should be stricken as unclear and an unjustified prohibition on discovery of LBI and the SIPA Trustee. (¶ 10). | ▪ Paragraph 3(m) of the Proposed Order should not be stricken. It simply requires any Participant to *first* request documents in the possession of both the Debtors and the SIPA Trustee from the Debtors. It does not prohibit any Participant from obtaining discovery, including from the SIPA Trustee that it deems necessary to Plan Discovery. To the extent the information a Participants seeks is not produced through the normal course of discovery, Paragraph 17 of the Proposed Order provides Participants with a mechanism to seek relief from the Court. |

| Limited Objection of Lehman Singapore Liquidators |
|---|
| (Docket No. 15761) |

| Objection | Response |
|---|---|
| *See* Response to Common Objection E1, F1, F2. | |
| ▪ It will be difficult for a foreign affiliate to coordinate with other parties in formulating Group Requests.  (¶ 9). | ▪ The purpose of creating groups is to streamline Plan Discovery and reduce the number of document requests that all Participants (not only the Debtors) must respond to.  The avoidance of such burdens far outweighs any hypothetical (and here, not articulated or supported "difficult[y]") of foreign affiliates in coordinating with others. |
| ▪ A foreign affiliate may have to sift through thousands of documents to find the documents responsive to their narrow requests.  (¶ 10). | ▪ This is the nature of all discovery, especially in large complex cases.  All Participants are on similar footing.  Furthermore, this would similarly be the case if such foreign affiliates were to receive scores of separate and duplicative requests from individual creditors. |

| Limited Objection of Lehman Hong Kong Liquidators |
|---|
| (Docket No. 15762) |

| Objection | Response |
|---|---|
| *See* Response to Common Objection E1. | |

<u>Exhibit 1</u>

| Limited Objection of Deutsche Bundesbank | |
|---|---|
| | **(Docket No. 15763)** |
| <u>Objection</u> | <u>Response</u> |
| *See* Response to Common Objection A1, B1, B2, F2 | |
| ▪ The Proposed Order inexplicably treats non-Debtor Participants disparately, requiring such Participants to search, produce, and identify documents that the Debtors are not required to. (¶¶ 7-9). | ▪ This objection is based upon a misreading of the Proposed Order. Debtors are expressly defined as a "Participant." ¶ 2(b). Accordingly, to the extent Paragraph 3(j) requires Participants to respond to "reasonably limited, targeted search requests agreed to by a Participant or ordered by the Court," this provision applies equally to all Participants, including the Debtors. ¶ 3(j). |
| ▪ The Proposed Order should clarify the procedure for designating ESI custodians and the availability of metadata in the Document Repository. (¶ 14). | ▪ Absent formal discovery requests (none of which have yet been served), it would be premature to implement procedures for designating ESI custodians—and following discussions with numerous creditors, the Proposed Order does not attempt to put any procedures and protocols in place at this time as to the Document Repository. Any concerns regarding the availability of metadata in the Document Repository can be addressed at the meet and confer regarding all Data Repository issues. ¶ 4(a). |
| ▪ The Proposed Order should allow any interested party to raise issues with the Court and seek its modification. | ▪ Paragraph 17 already addresses precisely this issue, and any additional language would be superfluous. ¶ 17. |

| Limited Objection of Certain Operating Company Creditors | **(Docket No. 15769)** |
|---|---|
| **Joinder of the Bank of New York Mellon Trust Company to the Limited Objection of Certain Operating Company Creditors** | **(Docket No. 15779)** |
| <u>Objection</u> | <u>Response</u> |
| *See* Response to Common Objection C2, D1. | |
| ▪ Paragraph 11 of the Proposed Order should be removed. (¶ 3) | ▪ The Debtors have significantly revised Paragraph 11 of the Proposed Order in an effort to resolve this Objection. |

| Limited Objection of CarVal Investors UK Limited and Joinder to Limited Objection of Certain Operating Company Creditors | |
|---|---|
| | **(Docket No. 15794)** |
| <u>Objection</u> | <u>Response</u> |
| *See* Responses to Common Objections C2, C4 and *See* Response to Limited Objection of Operating Company Creditors insofar as CalVal joins paragraphs 2, 4, and 7 of the Limited Objection of the Operating Company Creditors | |

**Limited Objection of ABC Assicura Società per Azioni, Amber Capital Investment Management, Avignon Capital Ltd., Banco Canarias de Venezuela C.A. Banco Universal, Banesco Holding C.A., Bellair Development Group S.A., BlueBay Asset Management plc, Blue Bridge Holdings Limited, Bridgepont International Inc., Chadbourne & Parke LLP, Clayton Commercial Corporation, Compagnia Italiana Rischi Aziendali Società per Azioni, Credican, C.A., Duomo Unione Assicurazioni Società per Azioni, Girobank N.V., GLG Partners LP and certain of its funds, Grayson Ventures Limited, HSBC Bank USA, N.A., as Trustee, Lorimor Corporation, Lombarda Vita Società per Azioni, Portafolio de Inversiones C2-34 C.A., Risparmio & Previdenza Società per Azioni, San Miniato Previdenza Società per Azioni, Società Cattolica di Assicurazione – Società Cooperativa, Spring Star Corp., and TUA Assicurazioni Società per Azioni.**

**(Docket No. 15771)**

| Objection | Response |
|---|---|
| *See* Response to Common Objection B1, E1, F1, F2. | |
| ▪ The Debtors should confirm that the Designated Party does not have the effect of impairing the substantive rights of the Participants with respect to Plan Discovery. (¶ 7). | ▪ The Proposed Order already expressly states that the role of the Designated Party is solely "to act as a facilitator and intermediary for Discovery Requests." ¶ 3(a). Moreover, the purely ministerial role of the Designated Party is emphasized throughout the Proposed Order. *See, e.g.,* ¶ 3(b) (The Designated Party may not alter or exclude a request from a consolidated document request "for any other reason than to avoid duplication."); *see also* ¶¶ 3(b), 13(a)(ii). |

**Limited Objection of Lehman Re Ltd.**

**(Docket No. 15778)**

| Objection | Response |
|---|---|
| *See* Response to Common Objection D1, E1, F2. | |

| Limited Objection of the Ad Hoc Group | |
|---|---|
| | **(Docket No. 15800)** |
| **Objection** | **Response** |
| *See* Response to Common Objection C4, D1. | |
| ▪ The Proposed Order should expressly provide Participants with access to the Examiner's Stratify database.  (¶ 12). | ▪ This objection is premature and need not be expressly addressed in the Proposed Order, which governs the procedures of Plan Discovery, rather than the content of the Discovery Requests, the objections to same that may be interposed and any judicial resolution of any disputes as to same. |
| ▪ Paragraph 8 should be amended to require any Participant seeking supplemental discovery to show good cause and seek leave of the Court.  (¶ 14). | ▪ Paragraph 8 is already extremely restrictive, and only allows a Participant to issue Supplemental Requests after first conducting a meet and confer.  ¶ 8(a).  Moreover, Paragraph 8(a) specifically states that such Supplemental Requests must be based on and cannot duplicate "*existing discovery,*" so it does not allow any Participant to issue new Discovery Requests.  *Id.*  To the extent any Participant who receives such Requests deems them unduly burdensome or duplicative, it can object and this Court can resolve any disputes. |
| ▪ Paragraph 15 should be revised to provide that the filing of any document shall not provide a basis to seek from Participants discovery regarding issues that were fairly raised in documents concerning Plan issues filed prior to the Notice of Intent Deadline and incorporate procedures for discovery concerning witnesses.  (¶ 14). | ▪ This proposed revision is unnecessary given the remainder of Paragraph 15, which expressly limits discovery in connection with subsequent filings to "issues raised by the amendment," and "issues newly raised by such filings."  ¶¶ 15(a), (b).  To the extent there is an issue not expressly addressed in the Proposed Order, Paragraph 17 provides a mechanism for Participants to seek relief. |

| Limited Objection of Lehman Brothers Finance Liquidator | |
|---|---|
| | **(Docket No. 15785)** |
| **Objection** | **Response** |
| *See* Response to Common Objection E1, F1, F3. | |

| Limited Objection of the Liquidators of Lehman Brothers Australia | |
|---|---|
| | **(Docket No. 15810)** |
| **Objection** | **Response** |
| *See* Response to Common Objection E1. | |

# EXHIBIT 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------------x
                                                  :
In re                                             :   **Chapter 11 Case No.**
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*      :   **08-13555 (JMP)**
                                                  :
                   **Debtors.**                   :   **(Jointly Administered)**
----------------------------------------------------------------------x

### ORDER ESTABLISHING
### SCHEDULE AND PROCEDURES IN CONNECTION WITH DISCOVERY
### RELATED TO PLAN CONFIRMATION AND OTHER ISSUES

Lehman Brothers Holdings Inc. and certain of its affiliated debtors (collectively the "Debtors") filed the First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors, dated January 25, 2011 [Docket No. 14150] (as it may be further amended or modified, the "Plan"). The Ad Hoc Group of Lehman Brothers Creditors (the "Ad Hoc Group") filed a Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, dated December 15, 2010 [Docket No. 13504], as may be amended (the "Ad Hoc Plan"). The Plan, the Ad Hoc Plan and any other plan or plans of reorganization (each such Ad Hoc Plan or other plan being an "Alternative Plan") filed in the above-captioned chapter 11 cases (the "Chapter 11 Cases") may present contested issues of fact and law ("Plan Issues").

The Court has previously noted, and hereby finds, that it would be in the best interests of the Debtors and all interested parties that discovery in connection with Plan Issues arising out of objections to and/or the prosecution of the Plan, or any Alternative Plan filed in the Chapter 11 Cases ("Plan Discovery"), be conducted in an efficient, expeditious and orderly manner. Accordingly, it is hereby

ORDERED:

1.  **Scope of Order:**  Except as otherwise ordered by the Court, this Order shall control any and all discovery by any Debtor, committee, the United States Trustee (the "UST"), creditor, party in interest, or group of creditors or parties in interest in connection with Plan Issues arising in connection with the prosecution of or objections to any Plan or Alternative Plan, but shall not affect the rights of any Debtor, committee, UST, creditor or party in interest, or group of creditors or parties in interest to seek discovery in connection with any other contested matters or adversary proceedings (even if related to, or to be heard contemporaneously with, Plan confirmation).

a)  All Plan Discovery sought must be sought in connection with the Plan Issues only, and no discovery nor any information contained therein may be used in connection with any other matter or proceeding.

b)  This Order shall not apply to discovery sought by an individual creditor in connection with the estimation or allowance of a such creditor's claim(s) to the extent that such discovery pertains solely to the amount, priority (i.e., secured, unsecured or administrative) or treatment (i.e., senior or subordinated, but not classification) of such claim(s) and does not implicate contested issues of law or fact that affect numerous other creditors, including but not limited to, substantive consolidation, the treatment and validity of intercompany claims generally, or the validity and enforceability of guarantee claims generally.

c)  This Order shall not apply to any discovery in connection with the Motion (i) for Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection

Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan, dated March 14, 2011 [Docket No. 15078].

d)      Nothing in this Order shall be construed to apply to the separate SIPA proceeding or to in any way limit the SIPA Trustee's rights or authority to investigate the affairs of Lehman Brothers Inc. ("LBI") pursuant to the full extent of his powers.

**2.      Participation in Plan Discovery**

a)      Any creditor, party in interest, or group of creditors or parties in interest seeking to participate in Plan Discovery ("Proposed Participant") shall serve on the attorneys for the Debtors and for the statutory committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee") a completed "Notice of Intent," the form of which is attached hereto as Exhibit A.  Each Notice of Intent must contain: (i) the name and address of the creditor or party in interest (or in the case of a group, the names and addresses of each of its members) and the name of the law firm(s) and individual attorneys representing such creditor or party in interest or group of creditors or parties in interest; and (ii) at the option of the Proposed Participant, either, (A) a list of all proof(s) of claim filed either individually or by the group provided there have not been any material changes to such proof(s) of claim since their filing, or (B) a statement setting forth the types and aggregate amount(s) of claim(s) currently held by such Proposed Participant as against each of the Debtors.[1] Any Notice of Intent must be served no later than fourteen (14) days following the entry of this Order (the "Notice of Intent Deadline") unless, upon application to the Court, good cause is shown that, notwithstanding reasonable best efforts to comply herewith, additional time is needed

---

[1] No disclosures made under this provision shall be construed as a disclosure for the purposes of Bankruptcy Rule 2019.

(e.g., the need to obtain government approval to file a Notice of Intent and become a Participant). Participants shall promptly serve an amended Notice of Intent to reflect any material changes to the amount of individual or aggregate claims reported in the initial Notice of Intent. In the absence of an order of the Court sustaining an objection to a Notice of Intent (as described in Paragraph 2(e) of this Order), a Proposed Participant timely serving a Notice of Intent shall be deemed a "Participant." For purposes of participation in Plan Discovery, "Participant" shall include the attorneys and any advisors for any Participant identified on the Notice of Intent served by the Participant, and "Debtor" shall include the attorneys and any advisors and other professionals for the Debtors. The Debtors shall make available to counsel for all Participants copies of all Notices of Intent served upon them.

b)     The Debtors, Creditors' Committee, and the UST shall each be deemed a Participant in Plan Discovery without the need to serve a Notice of Intent.

c)     Subject to Paragraph 2(g) below, any creditor, party in interest, or group of creditors or parties in interest that has filed or hereinafter files an Alternative Plan, including the Ad Hoc Group (an "Alternative Plan Proponent"), shall be entitled to serve a Notice of Intent on or prior to the later of the Notice of Intent Deadline and the date of the filing of such plan, and shall be deemed a Participant as of the date of serving such Notice of Intent.

d)     Subject to Paragraph 2(g) below, any creditor, party in interest, or group of creditors or parties in interest that has filed or hereinafter files an objection to the Plan or an Alternative Plan (each, a "Plan Objector") shall be entitled to serve a Notice of Intent on or prior to the later of the Notice of Intent Deadline and the date of the filing of such

4

objection, and shall be deemed a Participant as of the earlier date of such filing or the serving of such Notice of Intent.

e)     The Debtors and the Creditors' Committee shall have the right to object to Notices of Intent on any and all grounds, including but not limited to those that are, *inter alia*, harassing, or served by persons that are not parties in interest or do not comply with the requirements hereof or do not demonstrate a legally cognizable interest in participating in Plan Discovery.

f)     Within three (3) days following the Notice of Intent Deadline, the Debtors shall file with the Court a list of all Participants and their attorneys (including e-mail addresses and which Group a Participant has elected to participate in (pursuant to Paragraph 3(b)), which as it may be amended (as hereafter provided) will be the official service list for Plan Discovery (the "Official Service List").  The Debtors shall amend the Official Service List, as necessary, from time to time and will file such amended service lists with the Court.  Service in connection with Plan Discovery may be by electronic mail.

g)     Except as provided in Paragraphs 2(a) and (b), any creditor, party in interest, or group of creditors or parties in interest that does not timely serve a Notice of Intent, or that serves a Notice of Intent to which the Debtors or the Creditors' Committee successfully object, shall not be permitted to participate in Plan Discovery absent leave of the Court.  Also absent leave of the Court, all Participants, including those who become Participants after the Notice of Intent Deadline has passed, must comply with all discovery deadlines set forth in this Order and shall not be allowed to reopen any discovery deadlines that have already passed, except as set forth in Paragraph 15 of this Order.

h)      All Plan Discovery shall be subject to and shall be conducted in accordance with the terms of the Protective Order, attached hereto as <u>Exhibit B</u>, and approved by the Court in its entirety.  In order to be eligible to participate in Plan Discovery, each Participant and each Participant's attorneys and advisors must read and agree to abide by the Protective Order.  Each Participant, and a representative of each Participant's attorneys and advisors must sign the Agreement to Abide By the Protective Order, attached hereto as <u>Exhibit C</u>, and serve a copy upon attorneys for the Debtors.  Such representative must provide the Protective Order to any person that it employs or engages who is given access to Plan Discovery.  Any Participant (or the attorneys or advisors for any Participant that are involved in the Chapter 11 Cases) that does not sign the Agreement to Abide by the Protective Order shall not be permitted to participate in Plan Discovery.

i)      This Order, the plan confirmation discovery procedures provided for herein, the Protective Order attached hereto as <u>Exhibit B</u>, and the Agreement to Abide By the Protective Order attached hereto as <u>Exhibit C</u> , are, in each case, in all respects subject to the rights, powers, and privileges of the Federal Housing Finance Agency (the "<u>FHFA</u>"), in its statutory capacity as the Conservator of the Federal National Mortgage Association ("<u>Fannie Mae</u>") and the Federal Home Loan Mortgage Corporation ("<u>Freddie Mac</u>"), under the Housing and Economic Recovery Act of 2008, 12 U.S.C. § 4501 *et seq.* (2008) ("<u>HERA</u>").  Nothing in this Order,  the plan confirmation discovery procedures provided for herein, the Protective Order, or the Agreement to Abide By the Protective Order shall affect, limit, or otherwise prejudice the FHFA's rights, powers, and privileges under HERA as the Conservator of Fannie Mae and Freddie Mac.

3.    **Document Discovery from the Debtors**

a)    No later than fourteen (14) days following the Notice of Intent Deadline, the Participants

other than the Debtors shall designate one Participant as the "Designated Party" to act as

a facilitator and intermediary for Discovery Requests.  The Designated Party shall make

available to Participants a preliminary suggested set of Document Requests pursuant to

Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directed to the

Debtors, that includes those requests that the Designated Party reasonably and in good

faith believes relate to Plan Issues (the "Preliminary Requests").  The Designated Party

shall simultaneously provide Participants with a preliminary suggested list of proposed

search terms and strings that, in the reasonable estimation of the Designated Party, is

reasonably calculated to yield electronically stored information, including without

limitation e-mails and e-mail attachments (hereinafter collectively referred to as "ESI")

responsive to the Preliminary Requests without being overbroad or unduly burdensome to

the Debtors.  The Designated Party shall consult with the Debtors in formulating such

Preliminary Requests and search terms and strings.

b)    No later than ten (10) days following service by the Designated Party of the Preliminary

Requests, Participants other than the Creditors' Committee and the UST who wish to

serve Document Requests upon the Debtors shall review the Preliminary Requests and

propose any additional requests relating to Plan Issues (the "Group Requests") to the

Designated Party as part of one of the following groups: (i) the direct creditors of

Lehman Brothers Holdings Inc. ("LBHI"); (ii) the guarantee creditors of LBHI for which

a Debtor or U.S. affiliate is the primary obligor; (iii) the guarantee creditors of LBHI for

which a non-U.S. affiliate is the primary obligor (other than holders of Lehman Programs

Securities (as defined in the Disclosure Statement)); (iv) the guarantee creditors of LBHI

that are holders of Lehman Programs Securities; (v) the creditors of the derivative entity

debtors, including Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers

OTC Derivatives Inc. ("LOTC"), Lehman Brothers Derivative Products Inc. ("LBDP"),

Lehman Brothers Financial Products Inc. ("LBFP"), and Lehman Brothers Commercial

Corp. ("LBCC"), in each case, other than the LBSF Public Side Working Group;[2] (vi) the

LBSF Public Side Working Group; (vii) the creditors of Lehman Brothers Commodities

Services Inc. ("LBCS"); (viii) the creditors of Lehman Commercial Paper Inc. ("LCPI");

(ix) non-U.S. affiliates of the Debtors; and (x) the creditors of other Debtors (each of the

foregoing enumerated groups, a "Group" and together, the "Groups").[3]  The Creditors'

Committee and the UST may submit separate requests to the Designated Party no later

than ten (10) days after the Designated Party's service of the Preliminary Requests.  A

Participant that would otherwise be a member of more than one of the foregoing groups

shall select one Group in which to participate, but such selection and participation in a

single group shall not constrain or in any way limit a Participant's ability to include

---

[2] The members of the LBSF Public Side Working Group shall consist of the following to the extent they become Participants: Bank of America, N.A., Centerbridge Credit Advisors, LLC (solely on behalf of funds managed by itself and affiliates), Crédit Agricole Corporate and Investment Bank, Credit Suisse International, D. E. Shaw Composite Portfolios, L.L.C., D. E. Shaw Oculus Portfolios, L.L.C., Deutsche Bank AG, Eton Park Capital Management, L.P. (solely on behalf of funds for which it serves as investment manager), Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P.), Goldman Sachs International, Merrill Lynch International, Morgan Stanley Capital Services Inc., Morgan Stanley & Co. International plc, certain funds advised by Oaktree Capital Management, L.P. or their respective subsidiaries, Silver Point Finance, LLC (an affiliate of certain claim holders), and The Royal Bank of Scotland plc.

[3] The Groups are solely for the purpose of facilitating Plan Discovery as set forth in this Order (and for no other purpose, including, without limitation, for purposes of Bankruptcy Rule 2019).

requests relating to any Plan Issues.[4]  The Participants in each of the Groups shall confer among themselves solely in order to eliminate duplicate requests and each Group shall develop a single list of Group Requests to be sent to the Designated Party.  The purpose of compiling consolidated document requests is solely to avoid duplication, and no proposed document request may be altered or excluded from a consolidated document request for any reason other than to avoid duplication.  Each Group Request shall identify the Participant(s) seeking each request therein, in order to facilitate meet and confer communications among Participants.  No Participant shall waive, or be deemed to have prejudiced in any way, any of its rights or legal positions by joining Group Requests as prescribed in this Paragraph.  Any Participant who, after the meet and confer process, will not agree to join in a single list of Group Requests may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Document Request under terms and conditions that the Court deems appropriate.

c)    Each Participant or Group providing Group Requests to the Designated Party shall simultaneously provide a list of additional proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to the Group Requests without being overbroad or unduly burdensome to the Debtors.  Such list shall identify the Participant(s) seeking each search term and string.

d)    The Designated Party shall create a single Document Request that includes the Preliminary Requests and non-duplicative Group Requests, as well as any requests submitted by the UST or Creditors' Committee (the "Consolidated Requests").  The

---

[4] No provision herein shall be construed to preclude any Participant from joining or forming other groups under Bankruptcy Rule 2019 or for any other purpose outside the scope of this Order.

Designated Party shall also create a single list (the "Designated Party's Search Term List") of combined search terms and strings that includes the search terms and strings the Designated Party identified and non-duplicative search terms and strings provided by Participants contemporaneously with the Group Requests.  The Consolidated Requests and the Designated Party's Search Term List shall identify the Participant(s) seeking each request, search term and string.  In creating the Consolidated Requests and Designated Party's Search Term List, the Designated Party shall reasonably and in good faith eliminate only duplicate requests and/or duplicate search terms and strings.  The Designated Party shall not delete non-duplicative requests or non-duplicative search terms, and it shall not alter any Group Requests or search terms and strings.  Nothing in this Paragraph is intended to or shall limit any Participant's right to request non-duplicative documents relating to Plan Issues from the Debtors. The Designated Party shall provide the Consolidated Requests and the Designated Party's Search Term List to Participants within seven (7) days following service by Participants of the Group Requests.

e)      Participants shall meet and confer with the Designated Party promptly, but in no event later than seven (7) days following service by the Designated Party of the Consolidated Requests and the Designated Party's Search Term List if they believe that the Designated Party eliminated or altered non-duplicative requests or search terms and strings or otherwise improperly transcribed Group Requests, in order to resolve disputes, if any, relating to the contents of the Consolidated Requests or Designated Party's Search Term List.  Any disputes not resolved through the meet and confer process shall promptly be

brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

f)    Within two (2) days after the expiration of the meet and confer period set forth in Paragraph 3(e), and regardless of whether any dispute relating to the content of Consolidated Requests has been brought to the Court's attention in accordance with Paragraphs 3(e) and 17 of this Order, the Designated Party shall serve the Consolidated Requests and the Designated Party's Search Term List upon the Debtors.  The Consolidated Requests shall identify the Participant(s) seeking each Request, search term, and string and parameter in the Designated Party's Search Term List.

g)    Notwithstanding the process outlined in the foregoing Paragraphs (3)(a) – 3(f), nothing in this Order shall be construed to imply that the Designated Party approves, agrees with, has joined in or has otherwise adopted any Group Requests and the Designated Party reserves all of its rights with respect to such requests.

h)    Within twenty-one (21) days following service of the Consolidated Requests upon the Debtors, the Debtors shall serve written responses and objections ("<u>Debtors' Responses and Objections</u>").  The Debtors shall review the Consolidated Requests and Designated Party's Search Term List and will, reasonably and in good faith, generate a master list of search terms, strings and parameters (the "<u>Debtors' Search Term List</u>") reasonably calculated to lead to the production of responsive ESI.  The custodians identified on the Debtors' Search Term List shall include, but not be limited to, every individual employed or retained by the Debtors that the Debtors expect to call as a witness at any hearing concerning any Plan Issues; provided, however, that the Debtors are not limited to such witnesses at any hearing and may thereafter supplement such list, including as provided

11

hereinafter.  The Debtors shall serve the Debtors' Search Term List, along with a statement of the reason(s) for rejecting any proposed search terms and strings contemporaneously with the Debtors' Responses and Objections.

i)      The Debtors shall meet and confer with applicable Participants as identified in the Consolidated Requests, concerning the Debtors' Responses and Objections and the Debtors' Search Term List during the fourteen (14) day period following the service of the Debtors' Responses and Objections.  Any disputes concerning the Debtors' Responses and Objections or the Debtors' Search Term List that are not resolved shall be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

j)      Other than in response to reasonably limited, targeted search requests agreed to by a Participant or ordered by the Court, Participants shall not be required to search, produce, or identify on any log (unless the document was called for under such limited, targeted requests), documents from the following categories of privileged documents, regardless of when the documents were created:

      i)   Hard copy files of in-house and outside counsel;

      ii)  Documents and communications solely between in-house counsel and outside counsel;

      iii) Internal documents and communications solely within an outside counsel's law firm;

      iv) Documents and communications solely between or among outside counsel law firms for a single client;

v)  Documents and communications solely between or among client and inside

counsel or outside counsel;

vi) To the extent a request seeks documents prepared or dated after the date of

filing of the Debtors' chapter 11 petitions, internal documents and

communications solely within an advisor;

provided, however, in the event that a representative of any advisor is disclosed to be an

anticipated witness at the Plan Confirmation hearing, such individual's documents shall

be subject to discovery, and the advisory firm shall also be subject to reasonably limited,

targeted document requests relating to the subjects of the proposed witness's expected

testimony, subject to whatever privilege or other protection may apply.  Nothing in this

Paragraph shall modify or expand a Participant's rights or obligations under Federal Rule

of Civil Procedure 26(b)(4)(B).

k)    The Debtors shall begin searching for and producing documents as expeditiously as is

reasonably practical after the Debtors' Search Term List and Consolidated Requests are

finalized.  The Debtors shall produce bates-stamped and/or otherwise uniquely identified

documents on a rolling basis, inform Participants from time to time regarding the

production and availability of documents, and make reasonable efforts to identify the

source of the documents they produce.  The Debtors shall inform Participants when

document production is substantially complete by serving a notice ("Notice of Substantial

Completion").  The Debtors' document production shall be substantially complete when

the Debtors believe in good faith that all material documents requested have been

produced, but for limited categories of documents that need to be located, obtained,

and/or reviewed.  The Notice of Substantial Completion will also identify with reasonable specificity any categories of documents that remain to be produced.

l)    Notwithstanding anything in this Order to the contrary, the procedures set forth herein shall not be used by Participants (other than the Debtors) to seek discovery of documents, records or ESI directly from Barclays Capital Inc. or any of its affiliates (together, "Barclays") of which Barclays may have custody, possession, or control solely by virtue of its purchase of certain assets from LBHI, LBI, and LB 745 LLC (such documents, records or ESI, "Legacy Lehman Records").

    i)    All document requests of any Participant (other than the Debtors) concerning Legacy Lehman Records shall be directed at the Debtors

    ii)    The Debtors and Barclays shall cooperate in good faith to seek to satisfy requests made to Barclays by the Debtors.

    iii)    Notwithstanding anything in this Order to the contrary, to the extent the Debtors make such requests of Barclays pursuant to that certain Stipulation and Agreed Order with Respect to Access Amendment to Transition Services Agreements, dated March 2, 2011 (D.I. 14750, the "Access Amendment"), nothing herein shall modify or amend the provisions of the Access Amendment.

    iv)    The provision of Access (as defined in the Access Amendment) shall not waive any attorney work product protection or any privilege with respect to Legacy Lehman Records.

    v)    The Debtors shall also undertake commercially reasonable efforts not to produce any Barclays documents, records, or ESI that they possess and

14

that may be commingled with Legacy Lehman Records.   Any inadvertently produced Barclays documents, records, or ESI must immediately be destroyed or returned to the Debtors on request of Barclays or the Debtors, or upon discovery of such inadvertent production by the receiving Participant, after which the receiving Participant shall certify that all copies of such documents, records, or ESI have been destroyed or returned.

**4.**     **Data Repository**

a)     The Debtors shall, to the extent reasonably practical, upload non-privileged responsive documents to an online data repository (the "Data Repository") on a rolling basis.  The Data Repository review tool shall provide basic functions and features such as searching, tagging, printing, and downloading.  No later than fourteen (14) days following the Notice of Intent Deadline, the Debtors will meet and confer with Participants regarding the Data Repository, including with respect to the protection of work product created in the process of reviewing produced documents.

b)     After signing, and providing to the Debtors, the Agreement to Abide by the Protective Order, a Participant will be granted access to the Data Repository.  Each Participant shall, upon request, be given up to five (5) separate login credentials for the Data Repository. Any Participant that wants additional login credentials for the Data Repository will be provided with such login credentials at the Participant's own expense, at a cost of $100 per additional login per month.  Upon issuing a request for additional logins, the Participant shall provide the Debtors with the amount payable (per login) for the first month of use.

15

c)      The Debtors shall have the right to produce documents that are not reasonably conducive to being cost-efficiently uploaded into the Data Repository by other means, including but not limited to supervised review of hard copy documents.  The Debtors will notify all Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the terms and conditions under which such documents will be made available.  Upon good cause shown, any Participant may request that any documents or data, including but not limited to Microsoft Excel files, that are otherwise responsive to discovery requests be produced in native format, and any dispute concerning the production of such documents that is not resolved by a meet and confer process may be brought to the Court's attention in accordance with Paragraph 17 of this Order.

**5.      Document Discovery from Alternative Plan Proponents**

a)      No later than fourteen (14) days following the Notice of Intent Deadline, the Debtors shall make available to Participants a preliminary suggested set of Document Requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7034 and 9014, directed to each Alternative Plan Proponent that includes those requests that the Debtors reasonably and in good faith believe relate to Plan Issues (the "Preliminary APP Requests").  The Debtors shall simultaneously provide Participants with a preliminary suggested list of proposed search terms and strings that, in the reasonable estimation of the Debtors, is reasonably calculated to yield ESI responsive to each of the Preliminary APP Requests without being overbroad or unduly burdensome to the respective Alternative Plan Proponents.

b)      No later than ten (10) days following service by the Debtors of the Preliminary APP Requests, Participants who wish to serve Document Requests upon Alternative Plan

16

Proponents shall review the Preliminary APP Requests and, as part of one of the Groups identified in Paragraph 3(b), propose to the Debtors any additional requests directed to each Alternative Plan Proponent relating to Plan Issues ("the Group APP Requests"). The Creditors' Committee and the UST may submit separate requests to the Debtors no later than ten (10) days after the Debtors' service of the Preliminary APP Requests. The Participants in each of the Groups shall confer among themselves solely in order to eliminate duplicate requests and develop a single list of Group APP Requests directed to each Alternative Plan Proponent to be sent to the Debtors. The purpose of compiling consolidated document requests is solely to avoid duplication, and no proposed document request may be altered or excluded from a consolidated document request for any reason other than to avoid duplication. Each Group APP Request shall identify the Participant(s) seeking each request therein, in order to facilitate the meet and confer communications among Participants. No Participant shall waive, or be deemed to have prejudiced in any way, any of its rights or legal positions by joining any Group APP Requests as prescribed in this Paragraph. Any Participant who, after the meet and confer process, will not agree to join in a single list of Group APP Requests may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Document Request under terms and conditions that the Court deems appropriate.

c)    Each Participant or Group providing Group APP Requests to the Debtors shall simultaneously provide a list of proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to each of the Group APP Requests without being overbroad or unduly burdensome to the

respective Alternative Plan Proponents.  Such lists shall identify the Participant(s) seeking each Request and each search term and string.

d)      The Debtors shall create a single Document Request directed to each Alternative Plan Proponent that includes the Preliminary APP Requests and non-duplicative Group APP Requests, as well as any requests submitted by the UST or Creditors' Committee (the "Consolidated APP Requests").  For each of the Consolidated APP Requests, the Debtors shall also create a single list (the "Consolidated APP Search Term List") of combined search terms and strings that includes the search terms and strings the Debtors identified and non-duplicative search terms and strings provided by Participants contemporaneously with the Group APP Requests.  The Consolidated APP Requests and the APP Search Term List shall identify the Participant(s) seeking each request, search term, and string. In creating the Consolidated APP Requests and Consolidated APP Search Term List, the Debtors shall reasonably and in good faith eliminate only duplicate requests and/or duplicate search terms and strings.  The Debtors shall not delete non-duplicative requests or non-duplicative search terms, and it shall not alter any Group APP Requests or search terms and strings.  Nothing in this Paragraph is intended to or shall limit any Participant's right to request non-duplicative documents relating to Plan Issues from any Alternative Plan Proponent.  The Debtors shall provide the Consolidated APP Requests and the Consolidated APP Search Term Lists to Participants within seven (7) days following service by Participants of the Group APP Requests.

e)      Participants shall meet and confer with the Debtors promptly, but in no event later than seven (7) days following service by the Debtors of the Consolidated APP Requests and the Consolidated APP Search Term Lists if they believe that the Debtors eliminated or

18

altered non-duplicative requests or search terms and strings, or otherwise improperly

transcribed Group APP Requests, in order to resolve disputes, if any, relating to the

contents of the Consolidated APP Requests or the Consolidated APP Search Term List.

Any disputes not resolved through the meet and confer process shall be brought to the

Court's attention within seven (7) days after the final meet and confer, in accordance with

the procedures set forth in Paragraph 17 of this Order.

f)      Within two (2) days after the expiration of the meet and confer period set forth in

Paragraph 5(e), and regardless of whether any dispute relating to the content of

Consolidated APP Requests or Consolidated APP Search Term List has been brought to

the Court's attention in accordance with Paragraphs 5(e) and 17 of this Order, the

Debtors shall serve the relevant Consolidated APP Requests and Consolidated APP

Search Term List upon each Alternative Plan Proponent.  The Consolidated APP

Requests and Consolidated APP Search Term List shall identify the Participant(s)

seeking each Request and each search term, string and parameter.

g)      Notwithstanding the process outlined in the foregoing paragraphs 5(a) – 5(f), nothing in

this Order shall be construed to imply that the Debtors approve, agree with, have joined

in or have otherwise adopted any Group APP Requests and the Debtors reserve all of

their rights with respect to such requests.

h)      Within twenty-one (21) days following service of the Consolidated APP Requests upon

the Alternative Plan Proponents, each Alternative Plan Proponent shall serve written

responses and objections (collectively, "APP Responses and Objections").  Each

Alternative Plan Proponent shall review the relevant Consolidated APP Requests and

APP Search Term List and will, reasonably and in good faith, generate a master list of

search terms, strings and parameters reasonably calculated to lead to the production of responsive ESI (collectively, the "APP Search Term Lists"). The custodians shall include, but not be limited to, every individual employed or retained by the Alternative Plan Proponent that the Alternative Plan Proponent expects to call as a witness at any hearing concerning any Plan Issues; provided, however, that the Alternative Plan Proponent is not limited to such witnesses at any hearing and may thereafter supplement such list, including as provided hereinafter. Each set of APP Responses and Objections shall be served contemporaneously with a corresponding APP Search Term List, along with a statement of the reason(s) for rejecting any proposed search terms or strings.

i)    Alternative Plan Proponents as identified in the Consolidated APP Requests and the Proposed APP Search Term List shall meet and confer with applicable Participants regarding any disputes concerning the APP Responses and Objections and APP Search Term Lists during the fourteen (14)-day period following the service of the APP Responses and Objections and APP Search Term Lists. Any disputes concerning the APP Responses and Objections and APP Search Term Lists not resolved by the end of the fourteen (14)-day meet and confer period shall be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

j)    Alternative Plan Proponents shall begin searching for and producing documents as expeditiously as reasonably practical after being served a Consolidated APP Request. Alternative Plan Proponents shall produce bates-stamped documents on a rolling basis, inform Participants from time to time regarding the production and availability of documents, and make reasonable efforts to identify the source of the documents they

produce.  Alternative Plan Proponents shall provide a copy of all responsive document productions to the Debtors in accordance with the specifications set forth in <u>Exhibit D</u>, and, if reasonably practical, the Debtors shall upload them to the Data Repository.

k)      The Alternative Plan Proponents shall produce documents in electronic form.  Upon a showing of good cause, Alternative Plan Proponents shall have the right to produce documents that are not reasonably conducive to being cost-efficiently produced in electronic format by other means, including but not limited to supervised review of hard copy documents.  The Alternative Plan Proponents will notify all Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the reasonable terms and conditions under which such documents will be made available.

## 6.      <u>Document Discovery from Other Participants</u>

a)      No later than fourteen (14) days following the Notice of Intent Deadline, the Debtors shall make available to Participants a preliminary suggested set of Document Requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7034 and 9014, directed to each Participant (other than Alternative Plan Proponents) from which the Debtors intend to seek document discovery ("<u>Responding Participant</u>") that includes those requests that the Debtors reasonably and in good faith believe relate to Plan Issues (the "<u>Preliminary Participant Requests</u>").  The Debtors shall simultaneously provide Participants with a preliminary suggested list of proposed search terms and strings and that, in the reasonable estimation of the Debtors, is reasonably calculated to yield ESI responsive to each of the Preliminary Participant Requests without being overbroad or unduly burdensome to the Responding Participant.

b)      No later than ten (10) days following service by the Debtors of the Preliminary

Participant Requests, Participants who wish to serve Document Requests upon any of the

Responding Participants shall review each of the Preliminary Participant Requests and as

part of one of the Groups identified in Paragraph 3(b) (excluding, as necessary the

Participant or Participants from which documents are sought), propose to the Debtors any

additional requests directed to such Responding Participant(s) concerning Plan Issues

("the Group Participant Requests").  The Creditors' Committee and the UST may submit

separate requests to the Debtors no later than ten (10) days after the Debtors' service of

the Preliminary Participant Requests.  The Participants in each of the Groups shall confer

among themselves solely in order to eliminate duplicate requests and develop a single list

of Group Participant Requests directed to each Responding Participant to be sent to the

Debtors.  The purpose of compiling consolidated document requests is solely to avoid

duplication, and no proposed document request may be altered or excluded from a

consolidated document request for any reason other than to avoid duplication.  Each

Group Participant Request shall identify the Participant(s) seeking each request therein,

in order to facilitate meet and confer communications among Participants.  No Participant

shall waive, or be deemed to have prejudiced in any way, any of its rights or legal

positions by joining any Group Participant Request as prescribed in this Paragraph.  Any

Participant who, after the meet and confer process, will not agree to join in a single list of

Group Participant Requests may, in accordance with the procedure set out in Paragraph

17 of this Order, seek leave of the Court to serve a separate Document Request under

terms and conditions that the Court deems appropriate.

c)      Each Participant or Group providing Group Participant Requests to the Debtors shall simultaneously provide a list of proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to each of the Group Participant Requests without being overbroad or unduly burdensome to the respective Responding Participants.  Such lists shall identify the Participant(s) seeking each Request and each search term, string and parameter.

d)      Within ten (10) days following the Debtors' service of the Preliminary Participant Requests, any Participant that seeks to serve Document Requests relating to Plan Issues upon Participants (other than the Debtors or Alternative Plan Proponents) with respect to which the Debtors have not prepared a Preliminary Participant Request shall make available to the Debtors a set of Document Requests ("Additional Responding Participant Requests") pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7034 and 9014, directed to each such Participant.   The Additional Responding Participant Request shall be accompanied by a list of suggested search terms and strings that, in the reasonable estimation of the Participant drafting the Additional Responding Participant Requests, is reasonably calculated to yield ESI responsive to the Additional Responding Participant Requests.  Any subject of an Additional Responding Participant Request shall be considered a Responding Participant.

e)      The Debtors shall then review any Group Participant Requests and Additional Responding Participant Requests , as well as any requests submitted by the UST or Creditors' Committee, and create a single Document Request directed to each Participant from which discovery is sought (the "Consolidated Participant Requests").  For each of the Consolidated Participant Requests, the Debtors shall also create a single list (the

"Participant Search Term List") of combined search terms and strings that includes the search terms and strings the Debtors identified and non-duplicative search terms and strings provided by Participants contemporaneously with the Group Participant Requests and the Additional Responding Participant Requests.  The Consolidated Participant Requests and the Participant Search Term List shall identify the Participant(s) seeking each request, search term, string and parameter.  In creating the Consolidated Participant Requests and Participant Search Term List, the Debtors shall reasonably and in good faith eliminate only duplicate requests and/or duplicate search terms and strings.   The Debtors shall not delete non-duplicative requests or non-duplicative search terms, and they shall not alter any Group Participant Requests, Additional Responding Participant Request, or corresponding search terms and strings.  Nothing in this Paragraph is intended to or shall limit any Participant's right to request non-duplicative documents relating to Plan Issues from any Responding Participant.  The Debtors shall provide the Consolidated Participant Requests and the Participant Search Term Lists to Participants within seven (7) days following the later of (i) service by Participants of the Group Participant Requests, or (ii) service by the Participants of the Additional Responding Participant Requests.

f)       Participants shall meet and confer promptly with the Participants, including the Debtors and Creditors' Committee, but in no event later than seven (7) days following service by the Debtors of the Consolidated Participant Requests and the Participant Search Term Lists if they believe that the Debtors eliminated or altered non-duplicative requests or search terms and strings, or otherwise improperly transcribed Group Participant Requests or Additional Responding Participant Requests, in order to resolve disputes, if any, relating to the contents of the Consolidated Participant Requests or the Participant Search

24

Term List.  Any disputes not resolved through the meet and confer process shall promptly be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

g)     Within two (2) days after the expiration of the meet and confer period set forth in Paragraph 6(f), and regardless of whether any dispute relating to the content of Consolidated Participant Requests has been brought to the Court's attention in accordance with Paragraphs 6(f) and 17 of this Order, the Debtors shall serve the Consolidated Participant Requests and Participant Search Term List upon the Responding Participants.  The Consolidated Participant Requests shall identify the Participant(s) seeking each request, search term and string.

h)     Notwithstanding the process outlined in the foregoing Paragraphs 6(a) – 6(g), nothing in this Order shall be construed to imply that the Debtors, Creditors' Committee, or a Participant have joined in or have otherwise adopted any Group Participant Request and the Debtors and each Participant reserve all rights with respect to such requests.

i)     Within twenty-one (21) days following service of the Consolidated Participant Requests, each Responding Participant shall serve written responses and objections.  Each Responding Participant shall review the relevant Consolidated Participant Requests and Participant Search Term List and will, reasonably and in good faith, generate a master list of search terms, strings and parameters reasonably calculated to lead to the production of responsive ESI.  The custodians shall include, but not be limited to, every individual employed or retained by the Responding Participant that such Responding Participant expects to call as a witness at any hearing concerning any Plan Issues; provided, however, that the Responding Participant is not limited to such witnesses at any hearing

and may thereafter supplement such list, including as provided hereinafter. Each

Responding Participant shall serve its search term list and search parameters, along with a

statement of the reason(s) for rejecting any proposed search terms and strings,

contemporaneously with its responses and objections.

j)     Each Responding Participant that has been served with a Consolidated Participant

Request and Participant Search Term List shall meet and confer with applicable

Participants, including the Debtors and Creditors' Committee, regarding any disputes

concerning the responses and objections to the Consolidated Participant Requests, search

terms, strings and parameters to be used by such Responding Participant during the

fourteen (14)-day period following the service of its responses and objections. Any

disputes concerning a Responding Participant's responses and objections, search terms

and strings not resolved by the end of the fourteen (14)-day meet and confer period shall

be brought to the Court's attention within seven (7) days after the final meet and confer,

in accordance with the procedures set forth in Paragraph 17 of this Order.

k)     Responding Participants shall begin searching for and producing bates-stamped

documents as expeditiously as reasonably practical after being served a Consolidated

Participant Request. Responding Participants shall produce bates-stamped documents on

a rolling basis, inform Participants from time to time regarding the production and

availability of documents, and make reasonable efforts to identify the source of the

documents they produce. Responding Participants shall provide a copy of all responsive

document productions to the Debtors in accordance with the specifications set forth in

Exhibit D, and, if reasonably practical, the Debtors shall upload them to the Data

Repository.

l)      Responding Participants shall produce documents in electronic form.  Upon a showing of good cause, Responding Participants shall have the right to produce documents that are not reasonably conducive to being cost-efficiently produced in electronic format by other means, including but not limited to supervised review of hard copy documents.  The Responding Participants will notify other Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the terms and conditions under which such documents will be made available.

m)      Notwithstanding anything in this Order to the contrary, to the extent Participants seek discovery of documents that are in the possession, custody, or control of the Debtors and the SIPA Trustee, the Participants shall direct such Documents Requests to the Debtors.

**7.      Document Discovery From Non-Participants**

a)      Participants that seek to obtain documents from U.S. Non-Participants pursuant to Rule 45 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 9014 and 9016, or from foreign Non-Participants pursuant to Rule 28 of the Federal Rules of Civil Procedure or via other process, shall do so in a timely manner.  Nothing in this Order shall excuse compliance with any applicable, governing foreign or international law, including any foreign or international law concerning the service of discovery requests.  In order to avoid the service upon Non-Participants of multiple, duplicative document requests, subpoenas, letters of requests or commissions ("Non-Participant Requests") and the attendant burdens on Non-Participants of responding to them, any Participant wishing to serve a Non-Participant Request shall make available to Participants a preliminary suggested Non-Participant Request directed to each Non-Participant from which such Participant intends to seek document discovery, and a

preliminary suggested list of proposed search terms and strings and that, in the reasonable estimation of the Participant is reasonably calculated to yield ESI responsive to each of the Non-Participant Requests without being overbroad or unduly burdensome to the Non-Participant.  Within fourteen (14) days after a Participant provides to the other Participant a preliminary suggested Non-Participant Request, Participants shall, as part of one of the Groups identified in Paragraph 3(b) or, in the case of the Debtors and the Creditors' Committee, separately, reasonably and in good faith meet and confer and propose any additional Non-Participant Request directed at each Non-Participant from which discovery is sought, together with a list of additional proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to Non-Participant Request without being overbroad or unduly burdensome to the Non-Participant from which discovery is sought.

b)    A copy of this Order and the Protective Order also shall be provided to Non-Participants as part of any Non-Participant Request.  However, nothing in this Paragraph 7 is intended to or shall require any Participant to join in any Non-Participant Request or subpoena that it reasonably and in good faith believes would be inconsistent with Rule 45(c)(1) of the Federal Rules of Civil Procedure, as incorporated by the Bankruptcy Rules, or any other rule or law; nothing in this Paragraph is intended to or shall limit any Participant's right to request, after good faith review of the Non-Participant Requests, non-duplicative documents relating to Plan issues from any Non-Participant; and the meet and confer process described in this Paragraph is intended only to eliminate duplicative document requests and search terms.

c)      No later than thirty (30) days following service of any Non-Participant Request, the Non-Participant shall serve written responses and objections.  In addition, the Non-Participant shall review the Non-Participant Request and search terms, and strings and will, in good faith, generate a master list of search terms, strings and parameters reasonably calculated to lead to the production of responsive ESI.  The Non-Participant shall make the search terms, strings and parameters, along with a statement of the reason(s) for rejecting any proposed search terms and strings available to Participants contemporaneously with its responses and objections.

d)      If necessary, Non-Participants that have been served with a Non-Participant Request shall meet and confer with applicable Participants regarding any disputes concerning served search terms, strings or parameters to be used by such Non-Participant, as well as responses to the Non-Participant Request, during the fourteen (14)-day period following the service of responses and objections.  Any disputes concerning a Non-Participant's responses and objections or search terms, strings or parameters not resolved by the end of the fourteen (14)-day meet and confer period shall be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

e)      Non-Participants shall begin searching for and producing documents as expeditiously as reasonably practical after being served a Non-Participant Request.  Non-Participants shall produce bates-stamped documents on a rolling basis, inform Participants from time to time regarding the production and availability of documents, and make reasonable efforts to identify the source of the documents they produce.  Non-Participants shall provide a copy of all responsive document productions to the Debtors in accordance with the

specifications set forth in <u>Exhibit D</u>, and, if reasonably practical, the Debtors shall upload

them to the Data Repository.

f)    Non-Participants shall produce documents in electronic form.  Upon a showing of good

cause, Non-Participants shall have the right to produce documents that are not reasonably

conducive to being cost-efficiently produced in electronic format by other means,

including but not limited to supervised review of hard copy documents.  Non-Participants

will notify all Participants if any documents will be made available by such other means,

and will provide reasonable advance notice of the terms and conditions under which such

documents will be made available.

g)    Nothing in this Order prevents Non-Participants from objecting to Plan Discovery on the

ground, among others, that a request (i) does not comply with, conflicts with or may

cause a violation of any foreign law, including without limitation any foreign privacy

law, or (ii) seeks documents, materials or information concerning a foreign bankruptcy

proceeding or estate administration.

**8.    <u>Supplemental Document Discovery</u>**

a)    Participants wishing to serve other Participants and/or Non-Participants with one or more

targeted supplemental Document Requests or document subpoenas, letters of request or

commissions ("<u>Supplemental Requests</u>") relating to Plan Issues limited to specific

documents that the Participant reasonably and in good faith believes should be produced

based on a review of existing discovery, including document discovery and deposition

testimony, shall first meet and confer with such Participant or Non-Participant.  If within

seven (7) days of the meet and confer Participants have not resolved the issue, a

Supplemental Request may be served.

b)    Participants or Non-Participants shall serve responses and objections ("Supplemental Responses and Objections") to Supplemental Requests within fourteen (14) days of service of the Supplemental Requests.  The Participant serving the Supplemental Request shall raise any objections regarding the Supplemental Responses and Objections no later than seven (7) days after the Supplemental Responses and Objections are served.  The Participant serving Supplemental Responses and Objections shall meet and confer with applicable Participants concerning such objections during the seven (7)-day period following the service of such objections.  Any disputes concerning the Supplemental Responses and Objections that are not resolved by the end of the seven (7)-day meet and confer period shall be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

9.    **Procedures Governing Amendments to Search Term Lists:**  Any Participant seeking an amendment to a Search Term List after the Search Term List has been finalized must seek leave from the Court, in accordance with the procedures set forth in Paragraph 17 of this Order, but may do so only after first meeting and conferring with the Debtors and as applicable, the other Participants.

10.    **Initial Disclosures and Witness Lists**

a)    No Participant shall be required to make initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), as incorporated by Bankruptcy Rules 7026 and 9014.

b)    Within seven (7) days of service of the Notice of Substantial Completion, the Debtors, each Alternative Plan Proponent, and each Participant shall serve Participants with a list (the "Initial Witness List"), which shall be amended and supplemented as needed, of the

individuals the Debtors, each Alternative Plan Proponent and each Participant

respectively expects to call as witnesses at any plan confirmation hearing.

11. **Privileged Documents and Privilege Logs**

a)    Except for good cause shown upon application to the Court, and subject to Paragraph

3(j), any person or entity that receives a Document Request or document subpoena, letter

of request or commission and withholds any documents on the grounds of privilege, work

product, or any other type of protection or immunity from disclosure shall produce a

privilege log that, consistent with Federal Rules of Civil Procedure 26(b)(5), as

incorporated by Bankruptcy Rules 7026 and 9014, includes at least the following fields:

Document ID, Date, Subject (for emails), Document Name (for attachments), Attorneys

Present (Y/N), and Custodian.

b)    If only part of a document is withheld on the grounds of privilege, work product, or any

other type of protection or immunity from disclosure, the remainder of the document

shall be produced.

c)    Notwithstanding Paragraphs 3(j) and 11(a) of this Order, the Debtors and all other

Participants and Non-Participants that are in bankruptcy, administration, liquidation or

other insolvency proceedings (whether in the United States or abroad) shall not be

required to search for, produce or identify on any privilege log the following categories

of documents to the extent such documents were created on or after the date such

Participant or Non-Participant entered such bankruptcy, administration, liquidation or

other insolvency proceedings:

i)    Hard copy files of in-house and outside counsel;

ii) Documents and communications solely between in-house counsel and outside counsel;

iii) Internal documents and communications solely within an outside counsel's law firm;

iv) Documents and communications solely between or among outside counsel law firms for a single client;

v) Documents and communications solely between or among client and inside counsel or outside counsel;

vi) internal documents and communications solely within an advisor.

**12.    Interrogatories**

a)    **Interrogatories Served Upon the Debtors**

i) Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7033 and 9014, each Group, and in the case of the Creditors' Committee and the UST, separately, may collectively serve upon the Debtors no more than ten (10) written interrogatories, including all subparts, relating to Plan Issues ("Interrogatories"), no later than twenty-eight (28) days after the service of the Notice of Substantial Completion.  Interrogatories to the Debtors shall be limited to identification of witnesses and authentication of documents and shall not include contention interrogatories.  Participants shall meet and confer in good faith to determine the content and scope of the Interrogatories to the Debtors.  Any Participant that, after the meet and confer process, will not agree to serve Interrogatories consistent with this Paragraph may, in accordance with the procedure set out in Paragraph 17 of this Order, may seek leave of the Court to serve separate Interrogatories under terms and conditions that the Court deems appropriate.

ii) Notwithstanding anything in this Order to the contrary, the procedures set forth herein shall not be used by Participants (other than the Debtors) to request answers to Interrogatories directly from Barclays concerning Legacy Lehman Records. All Interrogatories from any Participant (other than the Debtors) concerning Legacy Lehman Records shall be directed at the Debtors and shall be included among the twenty-five Interrogatories referenced in Paragraph 12(a)(i). The Debtors will not object to interrogatories concerning Lehman Legacy Records that are directed to them on the ground that the information sought is not within the Debtors' possession, custody or control.

b) **Interrogatories Served Upon Alternative Plan Proponents:** Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7033 and 9014, each Group, and in the case of the Debtors, the Creditors' Committee and the UST, separately, may serve upon each Alternative Plan Proponent no more than ten (10) written Interrogatories, including all subparts, relating to Plan Issues, no later than twenty-eight (28) days after service of the Notice of Substantial Completion. Interrogatories to Alternative Plan Proponents shall be limited to identification of witnesses and authentication of documents and shall not include contention interrogatories. Participants shall meet and confer in good faith to determine the content and scope of the Interrogatories to Alternative Plan Proponents. Any Participant that, after the meet and confer process, will not agree to serve Interrogatories consistent with this Paragraph may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve separate Interrogatories under terms and conditions that the Court deems appropriate.

c)      **Interrogatories Served Upon Participants Other Than the Debtors or Alternative Plan Proponents:**  Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7033 and 9014, each Group, and in the case of the Debtors, the Creditors' Committee and the UST, separately, may serve no more than ten (10) written Interrogatories relating to Plan Issues upon any Participant other than the Debtors or Alternative Plan Proponent no later than twenty-eight (28) days after service of the Notice of Substantial Completion.  Interrogatories to Participants shall be limited to identification of witnesses and authentication of documents and shall not include contention interrogatories.  Participants shall meet and confer in good faith to determine the content and scope of the Interrogatories to Participants.  Any Participant that, after the meet and confer process, will not agree to serve Interrogatories consistent with this Paragraph may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve separate Interrogatories under terms and conditions that the Court deems appropriate.

**13.    Depositions**

a)      **Notice Period for Depositions of the Debtors:**  No later than fourteen (14) days after the Debtors serve the Notice of Substantial Completion, Participants shall meet and confer as part of one of the Groups identified in Paragraph 3(b), and in the case of the Creditors' Committee and UST, separately, to draft a consolidated list of preliminary suggested topics (the "Preliminary Topics") for a Notice of Deposition of the Debtors pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014.  Any Participant that, after the meet and confer process, will not agree to join in a list of Preliminary Topics may, in accordance with the

procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Rule 30(b)(6) notice upon the Debtors.

i)      No later than twenty-one (21) days after the Debtors serve the Notice of Substantial Completion, the Groups, the Creditors' Committee, and the UST shall provide the Preliminary Topics to the Designated Party.

ii)     The Designated Party shall consolidate the Preliminary Topics, along with any additional topics that it reasonably and in good faith believes are appropriate topics for a Rule 30(b)(6) deposition of the Debtors relating to Plan Issues (the "Joint Notice").  In creating the Joint Notice the Designated Party shall reasonably and in good faith eliminate only duplicate topics.  The Designated Party shall neither delete non-duplicative topics nor alter any Preliminary Topics.  Nothing in this Paragraph is intended to or shall limit any Participant's right to seek deposition testimony from the Debtors on any topic relating to Plan Issues, subject to the provisions set forth in this Order.  Within seven (7) days of its receipt of the Preliminary Topics, the Designated Party shall serve the Joint Notice upon the Debtors.  Notwithstanding the foregoing, nothing in this Order shall be construed to imply that the Designated Party approves, agrees with, or has joined in or has otherwise adopted or approved of any Preliminary Topics and the Designated Party reserves all of its rights with respect to the inclusion of such topics in the Joint Notice.

iii)    Upon service of the Joint Notice, no Participant that participated in the creation of the Preliminary Topics shall be deemed to have joined all individual topics listed in the Joint Notice, nor shall any Participant waive, or be deemed to have

36

prejudiced in any way, any of its rights or legal positions by joining the Joint Notice.

iv)     Within fourteen (14) days of receiving the Joint Notice, the Debtors shall serve any responses and objections to the Joint Notice, together with a list of designated witnesses for each of the noticed Rule 30(b)(6) topics to which Debtors do not object and the dates and locations when such witnesses will be made available to be deposed.  Participants and the Debtors will meet and confer to resolve any disputes regarding topics in the Joint Notice.  Any disputes regarding the Joint Notice that are not resolved during the foregoing meet and confer process may be brought to the Court's attention no later than seven (7) days after the final meet and confer in accordance with the procedure set out in Paragraph 17 of this Order.

v)      The Rule 30(b)(6) deposition of the Debtors must be completed no later than forty-five (45) days after Debtors serve a list of designated witnesses.

vi)     Representatives of the various Groups identified in Paragraph 3(b), the Creditors' Committee, and the UST shall meet and confer to reasonably and in good faith identify a list of current employees of the Debtors, including employees of LAMCO LLC and Alvarez & Marsal, whose depositions, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, Participants reasonably believe they require.  The Groups shall collectively serve one list identifying the employees of the Debtors whose depositions Participants reasonably believe they require (the "Group Deposition List") within ten (10) days following completion of the Rule 30(b)(6) deposition of the Debtors.  Any Participant that, after the meet and confer process, will not

agree to join a Group Deposition List, may, in accordance with the procedure set

out in Paragraph 17 of this Order, seek leave of the Court to serve separate Rule

30(b)(1) deposition notices.

vii)    Within seven (7) days after service of the Group Deposition List, Debtors will

serve any responses and objections to the Group Deposition List as well as a

proposed schedule for depositions to which they do not object.  Within seven (7)

days of the Debtors' service of the responses and objections to the Group

Deposition List and the proposed schedule for such depositions, Participants and

Debtors will meet and confer to resolve any disputes regarding depositions and

scheduling thereof.

viii)   Any disputes regarding the number of depositions, identity of witnesses, or the

deposition schedule that are not resolved during the foregoing meet and confer

process may be brought to the Court's attention no later than seven (7) days after

the final meet and confer in accordance with the procedure set out in Paragraph 17

of this Order.

ix)     Any deposition requests relating to Legacy Lehman Records or information

relating thereto shall be directed at the Debtors.  To the extent that former

employees of the Debtors or their current or former affiliates now employed by

Barclays or any other company are interviewed or prepared for deposition by the

Debtors, any attorney work product protection or other privilege shall not be

waived to the extent that employees or counsel of Barclays or of the current

employer are present at such interviews or deposition preparations.

b)   **Notice Period for Depositions of Alternative Plan Proponents:**   No later than fourteen
(14) days after the Debtors serve the Notice of Substantial Completion, Participants shall
meet and confer as part of one of the Groups identified in Paragraph 3(b), and in the case
of the Debtors, the Creditors' Committee and the UST, separately, to draft a consolidated
list of preliminary suggested topics (the "Preliminary APP Topics") for a Notice of
Deposition of each Alternative Plan Proponent pursuant to Rule 30(b)(6) of the Federal
Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014.  Any
Participant that, after the meet and confer process, will not agree to join in a list of
Preliminary APP Topics may, in accordance with the procedure set out in Paragraph 17
of this Order, seek leave of the Court to serve a separate Rule 30(b)(6) notice upon each
Alternative Plan Proponent.

i)   No later than twenty-one (21) days after the Debtors serve the Notice of
Substantial Completion, the Groups, the Creditors' Committee, and the UST shall
provide the Preliminary APP Topics to the Debtors.

ii)   The Debtors shall consolidate the Preliminary APP Topics, along with any
additional topics that they reasonably and in good faith believe are appropriate
topics for a Rule 30(b)(6) deposition of the respective Alternative Plan
Proponents relating to Plan Issues (the "Joint APP Notice").  In creating the Joint
Notice the Debtors shall reasonably and in good faith eliminate only duplicate
topics.  The Debtors shall neither delete non-duplicative topics nor alter any
Preliminary Topics.  Nothing in this Paragraph is intended to or shall limit any
Participant's right to seek deposition testimony from any Alternative Plan
Proponent on any topic relating to Plan Issues, subject to the procedures set forth

39

this Order.  Within seven (7) days of their receipt of the Preliminary Topics, the

Debtors shall serve the relevant Joint Notice upon each Alternative Plan

Proponent.  Notwithstanding the foregoing, nothing in this Order shall be

construed to imply that the Debtors approve, agree with, or have joined in or have

otherwise adopted or approved of any Preliminary APP Topics and the Debtors

reserve all of their rights with respect to the inclusion of such topics in the Joint

APP Notice.

iii)     Upon issuance of the Joint APP Notice, no Participant that participated in the

creation of the Preliminary APP Topics shall be deemed to have joined all

individual topics listed in the Joint APP Notice, nor shall any Participant waive,

or be deemed to have prejudiced in any way, any of its rights or legal positions by

joining the Joint APP Notice.

iv)     Within fourteen (14) days of receiving the Joint APP Notice, the Alternative Plan

Proponent shall serve any responses and objections to the Joint APP Notice

together with a list of designated witnesses for each of the noticed Rule 30(b)(6)

topics to which the Alternative Plan Proponent does not object and the dates and

locations when such witnesses will be made available to be deposed.  Participants

and the Alternative Plan Proponent will meet and confer to resolve any disputes

regarding topics in the Joint APP Notice.  Any disputes regarding the Joint APP

Notice that are not resolved during the foregoing meet and confer process may be

brought to the Court's attention no later than seven (7) days after the final meet

and confer in accordance with the procedure set out in Paragraph 17 of this Order.

v)      Rule 30(b)(6) depositions of the Alternative Plan Proponents must be completed no later than thirty (30) days after the Alternative Plan Proponent serves a list of designated witnesses.

vi)      The Debtors shall reasonably and in good faith identify a preliminary list of current employees of such Alternative Plan Proponent whose depositions, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, Debtors reasonably believe they require, and serve the preliminary list upon the Participants within seven (7) days following completion of the Rule 30(b)(6) deposition of each Alternative Plan Proponent.

vii)      Within seven (7) days following the Debtors' service of the preliminary list, Participants, including the Debtors and the Creditors' Committee, will meet and confer to discuss the preliminary list and make any necessary additions or deletions.

viii)      Within seven (7) days after the Participants' meet and confer, the Debtors, if applicable, shall serve one list upon the Alternative Plan Proponents identifying the employees of each Alternative Plan Proponent whose depositions Participants reasonably believe they require (the "<u>APP Deposition List</u>").  Any Participant that, after the meet and confer process, will not agree to join an APP Deposition List, may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve separate Rule 30(b)(1) deposition notices.

ix)      Within ten (10) days after service of the APP Deposition List, each Alternative Plan Proponent will serve any responses and objections to the APP Deposition

List as well as a proposed schedule for the depositions of their employees.  Within

seven (7) days after the expiration of the time period for the Alternative Plan

Proponents to serve responses and objections to the APP Deposition List,

Participants will meet and confer to resolve any disputes regarding depositions

and scheduling thereof.

x)    Any disputes regarding the number of depositions, identity of witnesses, or the

deposition schedule that are not resolved during the foregoing meet and confer

process may be brought to the Court's attention no later than seven (7) days after

the final meet and confer in accordance with the procedure set out in Paragraph 17

of this Order.

c)    **Notice Periods for Depositions of Participants Other Than the Debtors or Alternative Plan Proponents:**

i)    No later than twenty-one (21) days after the Debtors serve the Notice of

Substantial Completion, the Debtors shall make available to Participants a list of

those Participants, other than the Debtors and Alternative Plan Proponents, which

the Debtors intend to depose pursuant to Rule 30(b)(6) of the Federal Rules of

Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, (the

"Debtors' Participant Witness List").  The Debtors shall provide

contemporaneously with the Debtors' Participant Witness List a preliminary

suggested list of topics ("Preliminary Participant Topics") that they reasonably

and in good faith believe are appropriate topics for a Rule 30(b)(6) Deposition

Notice for each such Participant.  Participants shall meet and confer as part of one

of the Groups identified in Paragraph 3(b) (excluding, as necessary, the

Participant(s) from which testimony is sought), and in the case of the Creditors'

42

Committee and the UST, separately, to draft consolidated lists of additional witnesses and topics for each such Rule 30(b)(6) deposition notice ("Group Witness and Topics List").  The Groups, the Creditors' Committee, and the UST shall then provide the Group Witness and Topics List to the Debtors within ten (10) days after service of the Debtors' Participant Witness List and the Preliminary Participant Topics list.  Any Participant that, after the meet and confer process, will not agree to join in a list of Group Topics may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Rule 30(b)(6) notice upon the relevant Participant(s).

ii)     Within ten (10) days of receipt of the Debtors' Participant Witness List, any Participant ("Noticing Participant") that seeks testimony pursuant to Rule 30(b)(6) from any Participant that is not identified on the Debtors' Participant Witness List, shall provide the Debtors with a list of topics that such Noticing Participant reasonably and in good faith believes are appropriate topics for a Rule 30(b)(6) Deposition Notice for each additional Participant from which it seeks testimony ("Noticing Participant Witness and Topic Lists").

iii)    The Debtors shall then consolidate the Preliminary Participant Topics, the Group Witness and Topics Lists, and the Noticing Participant Witness and Topic List to create one list for each Participant on the Debtors' Participant Witness List or the Noticing Participant Witness and Topic List (the "Joint Participant Notices").  In creating the Joint Participant Notices the Debtors shall reasonably and in good faith eliminate only duplicate topics.  The Debtors shall neither delete nor alter any non-duplicative topics.  Nothing in this Paragraph is intended to or shall limit

any Participant's right to seek deposition testimony from any Participant on any topic relating to Plan Issues, subject to the procedures set forth in this Order. The Debtors shall serve the Joint Participant Notices on the relevant Participants within seven (7) days of the later of: (i) service of the Group Witness and Topic List, or (ii) service of the Noticing Participant Witness and Topic List.

iv)     Upon service of the Joint Participant Notices, no Participant that participated in the creation of Group Witness and Topic Lists or Noticing Participant Witness and Topic Lists shall be deemed to have joined all individual topics listed in the Joint Participant Notices, nor shall any Participant waive, or be deemed to have prejudiced in any way, any of its rights or legal positions by joining the Joint Participant Notices.

v)      Within fourteen (14) days of receiving a Joint Participant Notice, the Participant upon which a Joint Participant Notice is served shall serve any responses and objections to the Joint Participant Notice together with a list of designated witnesses for each of the noticed Rule 30(b)(6) topics to which the Participant does not object and the dates and locations when such witnesses will be made available to be deposed. Participants will meet and confer to resolve any disputes regarding topics in the Joint Participant Notice. Any disputes regarding the Joint Participant Notice that are not resolved during the foregoing meet and confer process may be brought to the Court's attention no later than seven (7) days after the final meet and confer in accordance with the procedure set out in Paragraph 17 of this Order.

vi)     A Rule 30(b)(6) deposition of a Participant must be completed no later than thirty (30) days after a Participant upon which a Joint Participant Notice is served serves a list of designated witnesses.

vii)    The Participants shall meet and confer as part of one of the Groups identified in Paragraph 3(b) to draft a list of current employees of such Participant whose depositions, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, the other Participants reasonably believe they require ("Group 30(b)(1) Deposition Lists").  The Groups shall serve the Group 30(b)(1) Deposition Lists on the Debtors within ten (10) days following completion of the Rule 30(b)(6) deposition of each Participant. Any Participant that, after the meet and confer process, will not agree to join a Group 30(b)(1) Deposition List, may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Rule 30(b)(6) deposition notice.

viii)   The Debtors shall then create one list identifying the employees of each Participant (other than the Debtors and Alternative Plan Participants) whose depositions other Participants reasonably believe they require (the "Consolidated 30(b)(1) Deposition List").  No later than seven (7) days after service of the Group 30(b)(1) Deposition Lists, the Debtors will serve the Consolidated 30(b)(1) Deposition List upon Participants.

ix)     Upon service of the Consolidated 30(b)(1) Deposition List, no Participant that participated in the creation of Group 30(b)(1) Deposition Lists shall be deemed to have joined all individual topics listed in the Consolidated 30(b)(1) Deposition

45

List, nor shall any Participant waive, or be deemed to have prejudiced in any way, any of its rights or legal positions by joining the Consolidated 30(b)(1) Deposition List.

x)  Within ten (10) days after the Debtors' service of the Consolidated 30(b)(1) Deposition List, each Participant will serve any responses and objections to the Consolidated 30(b)(1) Deposition List as well as proposed schedules for the depositions of their employees.  Within seven (7) days of the Debtors' service of the responses and objections to the Consolidated 30(b)(1) Deposition List and the proposed schedule for such depositions, Participants will meet and confer to resolve any disputes regarding depositions and scheduling thereof.

xi)  Any disputes regarding the number of depositions, identity of witnesses, or the deposition schedule that are not resolved during the foregoing meet and confer process may be brought to the Court's attention no later than seven (7) days after the final meet and confer in accordance with the procedure set out in Paragraph 17 of this Order.

d)  **Notice Periods for Depositions of Non-Participants:**

i)  No later than twenty-one (21) days after the Debtors serve the Notice of Substantial Completion, Participants (including the Debtors and Alternative Plan Proponents) may serve deposition subpoenas under Rule 45 or letters of request or commissions under Rule 28 with respect to Non-Participants.

ii)  Notwithstanding anything to the contrary in this Order, all requests for depositions of foreign Non-Participants shall be subject to the requirements of any applicable, governing foreign or international laws.

iii)     Participants shall, as part of one of the Groups identified in Paragraph 3(b) or, in the case of the Debtors and the Creditors' Committee, separately, reasonably and in good faith meet and confer regarding deposition subpoenas, letters of request or commissions to Non-Participants.

iv)     Upon request, and where such information is available, the Debtors shall provide the last known address of former employees of the Debtors or the name(s) of the attorney(s) representing such former employees of the Debtors.  The fact-witness deposition of any former employee of the Debtors who is a current employee of another Participant shall in no way limit the right of other Participants to such Participant's Rule 30(b)(6) deposition.

v)     If Barclays is a Non-Participant, Participants may not serve deposition subpoenas under Rule 45 or letters of request or commissions under Rule 28 with respect to former employees of the Debtors or their current or former affiliates currently employed by Barclays until ten (10) days after the completion of all Rule 30(b) depositions of the Debtors pursuant to paragraph 13(a).

e)     **Participation in Depositions:**  Except as to depositions of Non-Participants (which may appear and be represented by counsel), only Participants may attend and participate in depositions, either in person or, at the option and expense of the Participant, by telephone or video link.  Participants, and in the case of a Non-Participant deposition, the relevant Non-Participant(s), shall reasonably and in good faith confer in advance of each deposition regarding attendance at such deposition, the length of such deposition, the order of examination of the deponent, and allocations of time for questioning the deponent.  To the extent that any dispute relating to a deposition is not resolved during

the meet and confer period, such dispute may be brought to the Court's attention in

accordance with Paragraph 17 of this Order.  Every effort should be made to avoid

duplicative questioning.  Participants must act only in good faith in deposing witnesses,

and may not depose witnesses for any improper purpose, including solely to limit or

prevent another Group or Participant from deposing the witness.  All transcripts of the

deposition of any witness taken pursuant to this Order, and all exhibits used during such

deposition, shall, to the extent consistent with the terms of the Protective Order, be

uploaded to the Data Repository.

14.   **Requests for Admission:**  No Participant, including but not limited to the Debtors, the

Creditors' Committee and Alternative Plan Proponents, shall be required to respond to

any Request for Admission under Rule 36 of the Federal Rules of Civil Procedure, as

incorporated by Bankruptcy Rule 7036.

15.   **Discovery in Connection with Subsequent Filings**

a)   In the event that the Debtors or Alternative Plan Proponents materially amend any

provision in a plan of reorganization filed in the Chapter 11 Cases after the Notice of

Intent Deadline and such amendment has a material effect on any Participant,

Participants, including the Debtors, the Creditors' Committee and Alternative Plan

Proponents, may serve supplemental Document Requests on the party filing such

amendment, solely limited to issues raised by the amendment, no later than fourteen (14)

days following such filing.

b)   In the event that, after the Notice of Intent Deadline, any creditor, party in interest, or

group of creditors or parties in interest (i) files an objection to the Plan or an Alternative

Plan or (ii) files a new Alternative Plan, such filing party may serve Document Requests

on any Participant and any Participant may serve Document Requests upon such filing

party, provided that any such requests by or directed to such filing party are solely limited

to issues newly raised by such filings, no later than twenty-one (21) days following the

filing of such objection or Alternative Plan.

c)     Deadlines for the production of documents in response to Document Requests served

pursuant to Paragraphs 15(a) and (b) above, as well as deadlines for depositions and

interrogatories, if any, concerning the filings and/or filing parties referenced in

Paragraphs 15(a) and (b) above, shall be set by the Court, in the absence of an agreement

between interested Participants.

d)     Absent other agreement among Participants or order of the Court, the filing of an

Alternative Plan or an objection to the Plan or an Alternative Plan after the Notice of

Intent Deadline shall not provide a basis for anyone to seek additional discovery from any

Participant outside the deadlines set forth in this Order.

e)     The date that all fact discovery from the Debtors and Alternative Plan Proponents,

including but not limited to depositions of the Debtors and Alternative Plan Proponents,

is complete shall be the "Fact Discovery Cutoff."  The Debtors shall file with the Court a

"Notice of Fact Discovery Cutoff" within five (5) days of the completion of such fact

discovery.

**16.     Expert Discovery**

a)     **Expert Disclosures:**  Participants shall identify all proposed testifying experts and serve

all disclosures required by Federal Rule of Civil Procedure 26(a)(2), as incorporated by

Bankruptcy Rules 7026 and 9014, including full expert reports, no later than thirty (30)

days after the Notice of Fact Discovery Cutoff is filed.  All experts that will receive Plan

Discovery must sign the Agreement to Abide by the Protective Order, and testifying

experts must serve a copy of the signature page upon attorneys for the Debtors and the

Creditors' Committee.

b)      **Rebuttal Experts:**  Participants shall identify and serve all disclosures regarding rebuttal

experts, including rebuttal expert reports, no later than thirty (30) days after the service of

initial expert disclosures pursuant to Paragraph 16(a).

c)      **Expert Depositions:**  All depositions of experts (including rebuttal experts) shall be

completed no later than thirty (30) days after the service of the rebuttal expert disclosures

pursuant to Paragraph 16(b).  Only Participants may attend and participate in depositions

of experts, either in person or, at the option and expense of the Participant, by telephone

or video link.  Participants shall reasonably and in good faith confer in advance of each

expert deposition regarding attendance at such deposition, the length of such deposition,

the order of examination of the deponent, and allocations of time for questioning the

deponent.  To the extent that any dispute relating to an expert deposition is not resolved

during the meet and confer period, such dispute may be brought to the Court's attention

in accordance with Paragraph 17 of this Order.  Every effort should be made to avoid

duplicative questioning.  Participants must act only in good faith in deposing expert

witnesses, and may not depose expert witnesses for any improper purpose, including

solely to limit or prevent another Group or Participant from deposing the expert.

17.     **Discovery Disputes:**  Any dispute with respect to Plan Discovery that Participants or

non-Participants cannot resolve after good faith consultation may be presented to the

Court by a letter from the attorney for the Participant or non-Participant seeking relief,

with a copy to the attorneys for the Debtors, the Creditors' Committee, the Participant or

non-Participant opposing relief, and all Participants on the Official Service List.  Any

response thereto will be made by letter to the Court delivered within five (5) days after

service of the initial letter submission on the applicable Participant or non-Participant and

a copy provided to all Participants on the Official Service List.  Except with prior leave

of Court, no letter will exceed three (3) pages in length, and no additional submissions

will be permitted.  The Debtors and the Creditors' Committee will communicate with the

Court to schedule status conferences/hearings during which such discovery disputes will

be heard.

**18.**    **Status and Discovery Conferences:**

a)    The Court shall hold status conferences concerning Plan Discovery: (i) after the meet and

confer referenced in Paragraph 3(e) of this Order, if any, is completed; (ii) 30 to 60 days

following the status conference in Paragraph 18(a)(i); (iii) after the Notice of Substantial

Completion is issued; and (iv) after the Notice of Fact Discovery Cutoff is filed.  The

Court may, at any status conference or otherwise upon proper application and notice by

any Participant, enter a scheduling order consistent with this Order establishing

deadlines, including for the production of documents.  The Debtors and the Creditors'

Committee will communicate with the Court to schedule the status conferences described

in this Paragraph.

b)    Upon application by a Participant or Non-Participant to hear a discovery dispute, the

Court shall schedule such further conferences or hearings as the Court deems appropriate.

**19.**    **Non-Waiver of Privilege:**  The inadvertent production by any Participant or Non-

Participant of any privileged document or information, or any other document or

information otherwise precluded or protected from disclosure, in response to any

discovery requests shall not be deemed a waiver of any applicable privilege or immunity with respect to such document or information (or the contents or subject matter thereof) or with respect to any other document or discovery.  Any such produced privileged or protected document must immediately be destroyed or returned (whether or not the receiving Participant disputes the claim of privilege or protection) to the producing Participant or Non-Participant or its attorneys on request or upon discovery of such inadvertent production by the receiving Participant, and the receiving Participant shall certify that all copies of such produced privileged or protected document have been or destroyed or returned.

20.    **Use of Materials Produced:**  Participants and Non-Participants shall have the right to object to any request for documents on the ground that such request appears to be calculated to lead to discovery for use in proceedings other than those related to Plan Issues.  In addition, absent further order of the Court, no discovery or information obtained pursuant to this Order may be introduced in evidence or otherwise disclosed in any other matter or proceeding unless properly obtained through discovery or otherwise in such other matter or proceeding.  Nothing in this Paragraph shall limit the UST's rights and obligations as described in Paragraph 23 of the Protective Order attached hereto as Exhibit B.

21.    **Hearing Dates and Pre-trial Conference:**  The Court will set dates for hearings related to confirmation of a plan of reorganization in the Chapter 11 Cases ("Plan Confirmation").  No later than forty-five (45) days prior to the first date set by the Court to consider Plan Confirmation (the "Confirmation Hearing") and no earlier than seventy-five (75) days after the Notice of Fact Discovery Cutoff is filed, the Court will schedule a

pre-trial conference to discuss, *inter alia*, briefing, exhibit lists, witnesses, and motions *in limine*.

22.  **Miscellaneous:** Nothing in this Order shall prevent any Participant or Non-Participant from objecting to discovery and withholding documents from production pending resolution of the propriety of such objection on the ground that it would cause such Participant or Non-Participant to violate any statute, regulation, or rule, including, without limitation, any foreign data privacy laws, to which such Participant or Non-Participant is subject, or on the ground that it seeks documents, materials or information concerning a foreign bankruptcy proceeding or estate administration. Notwithstanding Paragraph 11, documents withheld under this subsection shall be logged with reasonable specificity.

23.  **Jurisdiction:** The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated:  April __, 2011
     New York, New York

_____
HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

-------------------------------------------------------------------x

### NOTICE OF INTENT TO PARTICIPATE IN
### DISCOVERY RELATED TO PLAN CONFIRMATION

NOTICE IS HEREBY GIVEN that _____, represented by
_____, has filed Claim(s) Number(s) _____
against _____ in the amount of _____ and/or is a party of interest in the
confirmation of a plan in the above-captioned chapter 11 cases (the "Chapter 11 Cases") on the
basis that _____.

ACCORDINGLY, PLEASE TAKE FURTHER NOTICE that, subject to any objections by the
Debtors or the Statutory Committee of Unsecured Creditors appointed in the Chapter 11 Cases
and/or any limitations imposed by the Court, the above-named party in interest and its counsel
intends to participate as follows in Plan Discovery, as defined in the Order Establishing
Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues,
entered by the Court on _____ [Docket No. ___]:
_____.

Dated: _____             _____

**Contact Information for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Attorneys for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Advisors for Party in Interest (address, phone and email):**
_____
_____
_____
_____

A1

**Designation of Contact(s) to Receive Any Notice(s) Required Under the Order (address, phone and email):**

_____
_____
_____

**Group that Participant elects to join (pursuant to Paragraph 3(b) of the Order):**

_____

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                         :        **Chapter 11 Case No.**
                                                              :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                                              :
                                 **Debtors.**              :        **(Jointly Administered)**
-------------------------------------------------------------------x

<u>**PROTECTIVE ORDER**</u>

In conjunction with the Order,[1] it is ORDERED by the Court that Plan Discovery conducted in accordance with the Order shall be conducted subject to the following terms and provisions set forth in this Protective Order; that this Protective Order shall govern all Plan Discovery and shall, with respect to Plan Discovery, supersede any other Protective Order, non-disclosure agreement or similar agreement between any Participant or non-Participant and the Debtors; that all documents, deposition testimony, interrogatory answers, and other information produced, given, provided or exchanged in connection with Plan Discovery (the "<u>Discovery Materials</u>") by the Debtors, Participants, and/or non-Participants (collectively, "<u>Producing Parties</u>") shall be and are subject to this Protective Order in accordance with the following procedures, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") and Bankruptcy Rule 9018, to protect the confidentiality of sensitive information; and that, by signing the Agreement to Abide by the Protective Order, signatories (each a "<u>Signatory</u>") have consented to this Protective Order and agree to be bound by its terms:

1.      Any Producing Party or Receiving Party (defined below) may, as reasonably appropriate, designate any Discovery Material as "Confidential" or "Attorneys' Eyes Only" in

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the order entered by the Court (the "<u>Order</u>") to which this Protective Order (the "<u>Protective Order</u>") is annexed.

accordance with the terms below.  A party that designates Discovery Material as "Confidential"

or "Attorneys' Eyes Only" is a "<u>Designating Party</u>."

**<u>Confidential Information</u>**

2.    As used in this Protective Order, "<u>Confidential Information</u>" refers to all

Discovery Material revealed or produced by a Producing Party (whether in response to a

Document Request, Interrogatory, Deposition, or other discovery device) that is designated as

"Confidential."  This designation will, without more, subject the designated material or

information to the provisions of this Protective Order; and such Confidential Information will be

protected by, and may be used, disclosed, and disposed of only in accordance with, the

provisions of this Protective Order.

3.    Any Producing Party may designate any Discovery Material as "Confidential"

under the terms of this Protective Order if the Producing Party in good faith reasonably believes

that the Discovery Material contains confidential, proprietary or commercially sensitive non-

public information that requires the protections provided in this Protective Order.  For purposes

of this Protective Order, Confidential Information includes, but is not limited to, all non-public

materials containing information related to:  (i) financial or business plans, projections or

valuations; (ii) proposed strategic transactions and other business combinations, negotiations,

inquiries or agreements, including, but not limited to, joint ventures, mergers, material asset

sales, purchases, buy-outs, consolidations, transfers of interests and partnerships; (iii) studies or

analyses by internal or outside experts or consultants; (iv) financial or accounting results or data;

(v) business, management and marketing plans and strategies; (vi) acquisition offers and

expressions of interest; and (vii) contracts or agreements with or among affiliates, partners or

Producing Parties.

B2

**Attorneys' Eyes Only Information**

4.      As used in this Protective Order, "Attorneys' Eyes Only Information" refers to all Discovery Material revealed or produced by a Producing Party (whether in response to a Document Request, Interrogatory, Deposition, other discovery device or otherwise) that is designated as "Attorneys' Eyes Only."  This designation will, without more, subject the designated material or information to the provisions of this Protective Order; and such Attorneys' Eyes Only Information will be protected by, and may be used and disposed of only in accordance with, the provisions of this Protective Order.

5.      A Producing Party may designate Discovery Material as "Attorneys' Eyes Only" under the terms of this Protective Order if the Producing Party in good faith reasonably believes that the Discovery Material contains highly confidential, highly sensitive proprietary or commercial non-public information that requires the highest level of protections provided in this Protective Order.  For purposes of this Protective Order, Attorneys' Eyes Only Information includes all non-public materials containing information related, but not limited, to:  (i) trade secrets; (ii) special formulas; (iii) proprietary software and/or computer programs; (iv) internal financial reports or plans that contain highly sensitive non-public information; (v) highly sensitive financial data; and (vii) other highly sensitive non-public commercial, financial, research or technical information.

6.      Counter-Designation:  Any party receiving Discovery Material (hereinafter, a "Receiving Party") (whether or not that party demanded the documents) may designate, or counter-designate with a higher designation, information produced by any Producing Party that contains or is derived from information that the Receiving Party could have so designated had it produced the material, subject to the same requirements and limitations as would have applied to the original Producing Party.

**Designation of Deposition and Hearing Testimony**

7.       Any Producing Party may designate a document as "Confidential" or "Attorneys'

Eyes Only" by affixing the legend "Confidential" or "Attorneys' Eyes Only," as appropriate, to

each page requiring the protections provided in this Protective Order in addition to an

appropriate bates-stamp designation indicating the Producing Party.

8.       For transcripts of depositions or other testimony given in pretrial proceedings, any

Producing Party may designate the specific testimony as "Confidential" or "Attorneys' Eyes

Only" either on the record at the deposition or other proceeding, or in writing served on all

Participants no later than seven (7) days following the date on which attorneys for the Producing

Parties have received the final version of the transcript of the deposition or other proceeding.  If

information designated as Confidential or Attorneys' Eyes Only will be disclosed or discussed at

a deposition or other proceeding, the Designating Party shall have the right to seek to exclude

any person not entitled to have access to such information, other than the deponent or witness,

the attorney(s) of record (including their staff and associates), official court personnel, and

stenographer and/or videographer.

9.       All documents, including pleadings, motions and other papers, containing,

identifying, or referencing Confidential or Attorneys' Eyes Only Information filed with the Court

shall be filed under seal, simultaneously with a redacted public copy of any such pleadings,

motions and/or other papers, redacting only that information that is designated "Confidential" or

"Attorneys' Eyes Only."   Any Receiving Party intending to use Confidential or Attorneys' Eyes

Only Information at any hearing in connection with Plan Issues agrees to meet and confer in

good faith with the Designating Party about appropriate steps that may be taken to protect the

confidentiality of such material, including, but not limited to, agreeing to redact such

Confidential or Attorneys' Eyes Only Information.  Such meeting shall take place as soon as

reasonably practicable, but no later than the date of the hearing at which the document will be

used.

10.    All transcripts not previously designated as either "Confidential" or "Attorneys'

Eyes Only" shall be treated as "Attorneys' Eyes Only" under this Protective Order for the seven

(7)-day period following receipt of the final version of the transcript and exhibits by attorneys for

the Producing Parties, after which time only the portions of the testimony specifically designated

as "Confidential" or "Attorneys' Eyes Only" pursuant to Paragraph 7 of this Protective Order

shall be so treated.

11.    The court reporter shall bind transcript pages containing Confidential Information

or Attorneys' Eyes Only Information separately and shall prominently affix the legend

"Confidential" or "Attorneys' Eyes Only" to each appropriate page, as instructed by the

Designating Party.

**Access to Confidential and Attorneys' Eyes Only Information**

12.    Receiving Parties shall permit access to Confidential or Attorneys' Eyes Only

Information only to persons specified in this Protective Order.  For purposes of this Protective

Order, the term "Receiving Party" shall include any persons identified below in Paragraphs 14

and 15 of this Protective Order that receive Confidential Information or Attorneys' Eyes Only

Information from a Receiving Party as permitted by this Protective Order.

13.    Confidential Information may be disclosed, summarized, described, characterized

or otherwise communicated or made available in whole or in part by a Receiving Party only to

the following persons:

a.  Outside attorneys of record, attorneys or accountants serving as a trustee, curator or other fiduciary of an affiliate of a Debtor in a foreign proceeding, and those in-house attorneys who represent the Receiving Party in matters related to Plan Issues, as well as attorneys, clerical, paralegal, other staff and agents of those employed by or working with such attorneys or accountants whose functions require access to Confidential Information.  For purposes of the UST, this includes all attorneys and staff of the UST Program involved in the Chapter 11 Cases, including members of the Executive Office of the UST involved in the Chapter 11 Cases;

b.  Any person indicated on the face of a document to be the author, addressee, or an actual or intended recipient of the document;

c.  Outside experts or consultants for the Receiving Party whose advice and consultation are being or will be used by the Receiving Party in connection with Plan Issues, as well as stenographic and clerical employees and agents of those experts or consultants whose function require access to Confidential Information; provided that counsel desiring to disclose Confidential Information to such experts or consultants and their employees or agents shall first obtain a signed Agreement to Abide by the Protective Order from each such expert or consultant and each of his/her personnel who would require access to Confidential Information, and counsel shall retain in his/her file an original or copy of each such signed Agreement to Abide by the Protective Order;

d.  The Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party;

e.  Officers, directors or employees of the Receiving Party who are assisting the Receiving Party's attorneys with matters related to Plan Issues;

f.  To the extent not otherwise covered by this Section, any potential witness or deponent and counsel for such witness or deponent, during the course of any testimony, including at any deposition, hearing or trial, and to the extent necessary, during any preparation for such testimony relating to Plan Issues.  Except when the Confidential Information is first exhibited at a deposition, hearing or trial to such person(s), counsel desiring to disclose Confidential Information to such person(s) shall (i) first obtain a signed Agreement to Abide by the Protective Order, and counsel for the Receiving Party shall retain a copy of each executed Agreement to Abide by the Protective Order, or (ii) represent on the record at the deposition, hearing or trial that such person(s) have read and agreed to the Agreement to Abide by the Protective Order;

g.  Professional vendors to whom disclosure is reasonably necessary for Plan Issues, provided they are informed that the material is Confidential Information;

h.  Any other person upon agreement among the Debtors, the Participants, the Designating Party, and the Receiving Party, provided that such person shall first execute the Agreement to Abide by the Protective Order, a copy of which shall be retained by counsel for the Designating Party; and

i.  Any other person, only upon order of the Court.

For the avoidance of doubt, in the case of the Federal National Mortgage Association ( "Fannie Mae" ) and the Federal Home Loan Mortgage Corporation ( "Freddie Mac" ), to the Federal Housing Finance Agency ( the "FHFA" ), in its statutory capacity as the Conservator of Fannie Mae and Freddie Mac under the Housing and Economic Recovery Act of 2008, 12 U.S.C. Section 4501 et. seq. (2008) ("HERA" ).  Moreover, nothing in this Protective Order shall affect,

B7

limit, or otherwise prejudice  FHFA's rights, powers and  privileges under HERA as the

Conservator of Fannie Mae and Freddie Mac.

14.    Attorneys' Eyes Only Information may be disclosed, summarized, described,

characterized or otherwise communicated or made available in whole or in part by a Receiving

Party only to the following persons:

a.    Outside attorneys of record, attorneys or accountants serving as trustee, curator or

other fiduciary of an affiliate of a Debtor in a foreign proceeding, and those in-

house attorneys who represent the Receiving Party in matters related to Plan

Issues, as well as attorneys, clerical, paralegal, other staff and agents of those

employed by or working with such attorneys or accountants whose functions

require access to Attorneys' Eyes Only Information.  For purposes of the UST,

this includes all attorneys and staff of the UST Program involved in the Chapter

11 Cases, including members of the Executive Office of the UST involved in the

Chapter 11 Cases;

b.    Any person indicated on the face of a document to be the author, addressee, or an

actual or intended recipient of the document;

c.    Outside experts or consultants for the Receiving Party whose advice and

consultation are being or will be used by the Receiving Party in connection with

Plan Issues, as well as stenographic and clerical employees and agents of those

experts or consultants whose functions require access to Attorneys' Eyes Only

Information; provided that counsel desiring to disclose Attorneys' Eyes Only

Information to such experts and their employees or agents obtain a signed

Agreement to Abide by the Protective Order from each such expert or consultant

and each of his/her employees or agents who would require access to Attorneys'

Eyes Only Information, and counsel for the Receiving Party shall retain in his/her

file an original or copy of each such signed Agreement to Abide by the Protective

Order;

d.   Professional vendors to whom disclosure is reasonably necessary for Plan Issues,

provided they are informed that the material is Attorneys' Eyes Only Information;

e.   The Court and its authorized staff, including official and freelance court reporters

and videotape operators hired by the Receiving Party;

f.   To the extent not otherwise covered by this Section, any potential witness or

deponent and counsel for such witness or deponent, during the course of any

testimony, including at any deposition, hearing or trial, and to the extent

necessary, during any preparation for such testimony, relating to Plan Issues.

Counsel desiring to disclose Attorneys' Eyes Only Information to such persons

shall, except as provided herein, (i) serve notice on the applicable Producing Party

prior to disclosure and at least two (2) business days prior to the testimony to

allow the Producing Party to object to such disclosure, and (ii) obtain a signed

Agreement to Abide by the Protective Order from the person(s) to whom

disclosure is intended to be made and counsel for the Receiving Party shall retain

a copy of each executed Agreement to Abide by the Protective Order.  Any

objections to disclosure that cannot be resolved by the parties shall be raised with

the Court in accordance with Paragraph 17 of the Order.  If counsel desiring to

disclose Attorneys' Eyes Only Information reasonably and in good faith

anticipates the need for such disclosure for the first time at a deposition, hearing

B9

or trial, counsel shall provide such notice to the Producing Party as is reasonable under the circumstances, and shall in any event represent on the record at such deposition, hearing or trial that the person(s) to whom disclosure is intended to be made has read and agreed to the Agreement to Abide by the Protective Order;

g.   Any other person upon agreement among the Debtors, the Participants, the Designating Party, and the Receiving Party, provided that such person shall first execute the Agreement to Abide by the Protective Order, a copy of which shall be retained by counsel for the Designating Party; and

h.   Any other person, only upon order of the Court.

For the avoidance of doubt, in the case of the Federal National Mortgage Association ( "Fannie Mae" ) and the Federal Home Loan Mortgage Corporation ( "Freddie Mac" ), to the Federal Housing Finance Agency ( the "FHFA" ), in its statutory capacity as the Conservator of Fannie Mae and Freddie Mac under the Housing and Economic Recovery Act of 2008, 12 U.S.C. Section 4501 et. seq. (2008) ("HERA" ). Moreover, nothing in this Protective Order shall affect, limit, or otherwise prejudice  FHFA's rights, powers and  privileges under HERA as the Conservator of Fannie Mae and Freddie Mac.

15.    Access to Protected Material:  Only persons authorized to receive Confidential Information , Attorneys' Eyes Only Information or Restricted Information under this Protective Order shall have access to such material.  Receiving Parties shall not provide access to or disclose Confidential Information, Attorneys' Eyes Only Information or Restricted Information to any person not authorized to access such material under this Protective Order.  Receiving Parties shall store all Confidential Information, Attorneys' Eyes Only Information or Restricted Information that they receive in a secure manner.  Receiving Parties are barred from using

Confidential Information, Attorneys' Eyes Only Information or Restricted Information except in

relation to Plan Issues and only for the purposes permitted by the Protective Order and the Order.

If Confidential, Attorneys' Eyes Only Information or Restricted Information is disclosed to any

person other than in a manner authorized by this Protective Order, the disclosing party shall,

immediately upon learning of such disclosure, inform the Producing Party of all pertinent facts

relating to such disclosure and shall make reasonable good faith effort to retrieve the

Confidential,  Attorneys' Eyes Only or Restricted Information and to prevent disclosure by each

unauthorized person who received such information.

16.    <u>No Restrictions on Use of Public or Own Information</u>:  Notwithstanding any other

provision of this Protective Order, this Protective Order does not restrict in any way a

Participant's or non-Participant's use of:

 a.  Its own information or its right to provide such information to any other person,

 even if others have designated similar or identical information as Confidential

 Information or Attorneys' Eyes Only Information.  A person's use or disclosure

 of its own information shall not waive the protections of this Protective Order,

 and shall not entitle any Participant or non-Participant to use or disclose such

 Discovery Materials, or the contents thereof, in violation of this Protective Order,

 unless such disclosure of a person's own information causes the Confidential or

 Attorneys' Eyes Only Information to become available to the public;

 b.  Information that is in the public domain or becomes public without violation of

 this Protective Order; and

 c.  Information that a Participant or non-Participant develops or obtains through

 proper means without violation of this Protective Order.

B11

**Use of Discovery Materials**

17.    Receiving Parties shall use Confidential, Attorneys' Eyes Only and Restricted Information produced during Plan Discovery only for matters related to Plan Issues. Confidential, Attorneys' Eyes Only and Restricted Information shall not be made public by any Receiving Party, shall be used only by persons permitted access to it as provided for in this Protective Order, and shall be disclosed only to persons specified herein.

18.    Nothing herein shall prevent disclosure beyond the terms of this Protective Order if the Designating Party designating the material as "Confidential" or "Attorneys' Eyes Only" specifically consents in advance in writing to such disclosure, or if the Court, after notice to all Participants and the Designating Party, orders such disclosure.

**Restricted Information**

19.    Other than upon good cause shown and in response to a reasonably limited, targeted search request, no Participant or Non-Participant shall be required to produce or otherwise disclose (a) any counterparty level information or (b) any asset level or valuation information (hereinafter, "Restricted Information").   Designing information as "Restricted Information" will, without more, subject the designated material or information to the provisions of this Protective Order; and such Restricted Information will be protected by, and may be used and disposed of only in accordance with, the provisions of this Protective Order.  All signatories acknowledge that Restricted Information, if disseminated, will directly and adversely impact that ability of the Debtors to maximize the value of the estate assets for the benefit of its creditors. Accordingly, Restricted Information shall not be uploaded to the Data Repository, but shall instead be produced solely in accordance with the terms of this Paragraph 19, solely to the requesting party and in a manner reasonably calculated to preserve its extremely sensitive and highly confidential nature. Restricted Information may not be shared except to named individuals

B12

agreed upon prior to disclosure of such Restricted Information.  Restricted Information may only

be used in depositions, hearings, filings or other proceedings in connection with Plan Issues in a

manner previously agreed to in writing by the Producing Party or as otherwise ordered by the

Court and may not be used for any other purpose within or outside of these Chapter 11 Cases.

**Inadvertent Failure to Designate**

20.     An inadvertent failure to designate qualified information as "Confidential" or

"Attorneys' Eyes Only" that a Producing Party discloses or otherwise produces or generates does

not waive the Producing Party's right thereafter to designate Discovery Material as Confidential

or Attorneys' Eyes Only Information under this Protective Order unless (i) with respect to any

information newly-designated as "Confidential," such information has become available to the

public or (ii) with respect to any information newly-designated as "Attorneys' Eyes Only," such

information has been shared with individuals who are not listed in Paragraph 14.   Upon receipt

of such designation, each Receiving Party must make reasonable efforts to assure that the

material is treated in accordance with the provisions of this Protective Order.  The Designating

Party shall promptly produce new copies of the material at issue, with the proper designation,

after which Receiving Parties shall promptly destroy the copies with the improper designation

and shall request that all persons to whom the Receiving Party has provided copies do likewise.

The Receiving Party shall inform the Designating Party when destruction of such copies has

been completed.

**Non-Waiver of Privilege and Other Protections**

21.     Nothing in this Protective Order shall preclude any objection to disclosure of

information by a Producing Party on the ground that such information is protected or prohibited

from disclosure by the attorney-client privilege, the joint client privilege, the community of

B13

interest privilege, the work-product immunity, or any other legally cognizable privilege,
immunity or other protection, including without limitation any applicable U.S. or foreign data
privacy laws.  If information protected or prohibited from disclosure is inadvertently or
mistakenly produced, such production shall in no way prejudice or otherwise constitute a waiver
of, or estoppel as to, any claim of privilege or work-product immunity for such information or
any other information that may be protected from disclosure by the attorney-client privilege, the
work-product or other immunity, or any other legally cognizable privilege or other protection.  If
a Producing Party has inadvertently or mistakenly produced Discovery Material that contains
information protected or prohibited from disclosure, then upon written request by the Producing
Party after the discovery of such inadvertent or mistaken production, the Receiving Party shall
use all commercially reasonable efforts to return or destroy the Discovery Material for which a
claim of inadvertent production is made and all copies of it, including any work product
containing, identifying, or referencing such Discovery Material within seven (7) days of such
request, and the Receiving Party shall not use such Discovery Material for any purpose other
than in connection with a motion to compel production of the Discovery Material.  The
Receiving Party returning such Discovery Material may then move the Court for an order
compelling production of the Discovery Material, but that motion shall not assert as a ground for
entering such an order the fact or circumstance of the inadvertent production of the Discovery
Material.

**Relief**

22.    This Protective Order shall not prevent any party and/or Signatory from applying
to the Court for relief therefrom, or from applying to the Court for further or additional
protective orders.

23.    Nothing in this Protective Order shall prevent any Signatory from producing documents received subject to this Protective Order and that are in his, her or its possession, in response to a subpoena or other compulsory legal process.  Unless prohibited from doing so by applicable law, prompt written notice as soon as practicable under the circumstances shall be given to the Designating Party before such production or other disclosure is to be made.   The party producing the documents subject to this Protective Order shall reasonably cooperate with the Designating Party to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded to the Confidential or Attorneys' Eyes Only Information being produced.    Nothing herein shall prevent the UST from disclosing information designated as Confidential or Attorneys' Eyes Only for civil and criminal law enforcement purposes or in compliance with a subpoena or court order.  To the extent Confidential Information is sought pursuant to any request made under the Freedom of Information Act, or other applicable law requiring disclosure, prior to the disclosure of any documents or information deemed as Confidential or Attorneys' Eyes Only, the UST shall provide the Designating Party with prompt written notice to give the Designating Party an opportunity to object to the disclosure of any specific portion of the document or information.

**Objections to Designations**

24.    If any Receiving Party objects to the designation of any Discovery Material as "Confidential," or "Attorneys' Eyes Only," the Receiving Party shall first identify the specific material as to which it objects as well as the basis for its objection in writing to the Designating Party.  Such parties shall confer in good faith to attempt to resolve any dispute regarding any such designation.  If such parties are unable to resolve such dispute, the objecting party may seek appropriate relief from the Court, in accordance with Paragraph 17 of the Order; provided,

B15

however, that all Discovery Material to which the objection applies shall continue to be treated

by Receiving Parties as Confidential Information or Attorneys' Eyes Only Information, as

designated by the Designating Party, in accordance with this Protective Order, until such

objection is resolved.  No Signatory shall contest an objecting party's request for reasonably

expedited consideration for such relief.

25.    No party shall be obligated to challenge the propriety of a confidentiality

designation, and failure to do so shall not preclude a subsequent challenge to such designation.

**Appeal**

26.    In the event that any Signatory appeals from any decision of the Court relating to

Plan Discovery, such Signatory shall file an application to the appropriate appellate court, within

seven (7) days of the filing of the notice of appeal, to maintain under seal any Discovery Material

filed with the appellate court that contains or discloses Confidential Information and/or

Attorneys' Eyes Only Information.  The provisions of this Paragraph may be waived only with

the written consent of the Designating Party.

**Scope of Protective Order**

27.    In the event that any Confidential or Attorneys' Eyes Only Information is used in

any court proceeding relating to Plan Issues, that material shall not lose its status as Confidential

or Attorneys' Eyes Only Information through such use and such use shall remain subject to the

terms of this Protective Order.

28.    This Protective Order shall survive the termination of the Plan Confirmation

process, whether by order, final judgment, settlement or otherwise, and shall thereafter continue

in full force and effect.

29.    Nothing in this Protective Order shall require any Producing Party to respond to discovery in any manner, including by producing documents, that would cause such Producing Party to violate any statute, regulation, or rule, including, without limitation, any international or foreign privacy laws, to which such Producing Party is subject.

30.    This Protective Order does not alter, modify, or expand any obligation or duty of any party to produce any Confidential or Attorneys' Eyes Only Information.

31.    Nothing herein shall be construed to affect in any way the admissibility of any document, testimony, or other evidence at the trial of any action relating to Plan Issues.

**Procedures After Plan Confirmation**

32.    After Plan Confirmation, counsel for the Receiving Parties may retain archival copies of deposition exhibits, Court exhibits, documents and other materials submitted to the Court, deposition transcripts and transcripts of court proceedings, one copy or sample of Confidential, Attorneys' Eyes Only or Restricted Information produced by a Producing Party, and any summaries, notes, abstracts or compilations of Confidential, Attorneys' Eyes Only or Restricted Information, solely for reference in the event of a dispute over the use or dissemination of information.  Such material shall continue to be treated as Confidential, Attorneys' Eyes Only or Restricted Information, as applicable, in accordance with this Protective Order.  After Plan Confirmation, counsel for Receiving Parties promptly either shall return all additional Confidential, Attorneys' Eyes Only or Restricted Information in his/her possession, custody or control or in the custody of any authorized agents, outside experts and consultants retained or utilized by counsel for the Receiving Party to counsel for the Producing Party who has produced such Confidential, Attorneys' Eyes Only or Restricted Information, respectively, in Plan Discovery, or shall certify destruction thereof to such counsel.  As to Confidential,

Attorneys' Eyes Only or Restricted Information reflected in computer databases or backup tapes,

the Receiving Party promptly shall delete all such Confidential, Attorneys' Eyes Only and

Restricted Information or shall impose reasonable safeguards and procedures to prevent

unauthorized access to such Confidential, Attorneys' Eyes Only or Restricted Information.

## Modification

33.     No modification of this Protective Order shall be binding or enforceable unless in

writing and signed by the Debtors and each Participant adversely affected by such modification,

or by further order of the Court.

## Choice of Law

34.     This Protective Order shall be governed and construed in accordance with the

laws of the State of New York.

## Jurisdiction

36.     The Court shall retain jurisdiction over any matters related to or arising from the

implementation of the Protective Order.

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                    :        **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,             :        **08-13555 (JMP)**
                                                         :
                        **Debtors.**                     :        **(Jointly Administered)**
-------------------------------------------------------------------x

## AGREEMENT TO ABIDE BY THE PROTECTIVE ORDER

I hereby certify that I have read the Protective Order[1] SO ORDERED by the Court

in the above-captioned chapter 11 cases (the "Chapter 11 Cases") on April __, 2011 [Docket No.

___]. I further certify that I understand the terms and provisions of the Protective Order and agree

to be fully bound by them, and hereby submit to the jurisdiction of the United States Bankruptcy

Court for the Southern District of New York for purposes of the Protective Order's enforcement. I

understand and agree, in particular, that I may not use any Confidential or Attorneys' Eyes Only

Information, or any copies, excerpts or summaries thereof, or materials containing Confidential or

Attorneys' Eyes Only Information derived therefrom, as well as any knowledge or information

derived from any of these items, for any purpose other than matters related to Plan Discovery, in

accordance with the provisions of the Protective Order, including, without limitation, any business

or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order

may result in legal action against me, such as for contempt of court and liability for monetary

damages.

Dated: _____          Agreed: _____

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the
Protective Order.

C1

# EXHIBIT D

**Technical Specifications for Documents to be Produced to the Debtor to Be Uploaded to the Data Repository**

Participants and non-Participants producing documents to the Debtors must produce electronically stored documents in the following electronic format:

1. _Emails_.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with _Appendix 1_.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

2. _Electronic Documents_.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with _Appendix 1_.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a particularized need for such native files.

3. _Hard copy documents_.  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

4. _TIFF Images Generally_.  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif"" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG

D1

compression.  For instances in which the original file is in color and the color is

necessary for interpretation of the document (charts, pictures, etc.), produce

medium quality JPEG in place of single page tiff file.  Metadata shall be provided

in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for

column break and text qualifier.  The first line shall be the header with field names,

and each subsequent line shall contain the fielded data for each document.

5.      *Shipment of electronic data*.  Electronic data productions may be transmitted

electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or

physically transported using electronic storage media such as, CDs, DVDs or hard

drives.  The physical media label should contain the case name and number,

production date, and bates range being produced.  Each transmission of data should

include a collection "manifest" report which provides a list of files collected, their

location, and their MD5 hash values.

**Appendix 1**

| Field | Description |
| --- | --- |
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | BegBates of last attached document in family. |
| From | Author of the e-mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| EMail_Subject | Subject of the e-mail message. |
| Author | Author field value pulled from metadata of the native file. |
| Title | Title field value extracted from the metadata of the native file. |
| Custodian | Textual value of custodian. |
| DateCreated | Creation date of the native file. |
| TimeCreated | Creation time of the native file. |
| EntryID | Unique identifier of e-mails in mail stores. |
| FileDescription | File extension or other description of native file type. |
| Filename | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of first level attachments in the e-mail. |
| DateLastMod | Date the native file was last modified. |
| TimeLastMod | Time native file was last modified. |
| PgCount | Number of pages in a document. |
| NativeFile | Logical file path to the native file. |
| OCRPath | Logical file path to the OCR text. |

# EXHIBIT 3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
LEHMAN BROTHERS HOLDINGS INC., *et al.*,  :    08-13555 (JMP)
                                          :
                    Debtors.              :    (Jointly Administered)
--------------------------------------------------------------------x

<div align="center">

**ORDER ESTABLISHING**
**SCHEDULE AND PROCEDURES IN CONNECTION WITH DISCOVERY**
**RELATED TO PLAN CONFIRMATION AND OTHER ISSUES**

</div>

Lehman Brothers Holdings Inc. and certain of its affiliated debtors (collectively the

"Debtors") filed the First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and

its Affiliated Debtors, dated January 25, 2011 [Docket No. 14150] (as it may be further amended

or modified, the "Plan").  The Ad Hoc Group of Lehman Brothers Creditors (the "Ad Hoc

Group") filed a Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers

Holdings Inc. and Certain of its Affiliated Debtors Other Than Merit, LLC, LB Somerset LLC

and LB Preferred Somerset LLC, dated December 15, 2010 [Docket No. 13504], as may be

amended (the "Ad Hoc Plan").  The Plan, the Ad Hoc Plan and any other plan or plans of

reorganization (each such Ad Hoc Plan or other plan being an "Alternative Plan") filed in the

above-captioned chapter 11 cases (the "Chapter 11 Cases") may present contested issues of fact

and law ("Plan Issues").

The Court has previously noted, and hereby finds, that it would be in the best interests of

the Debtors and all interested parties that discovery in connection with Plan Issues arising out of

objections to and/or the prosecution of the Plan, or any Alternative Plan filed in the Chapter 11

Cases ("Plan Discovery"), be conducted in an efficient, expeditious and orderly manner.

Accordingly, it is hereby

ORDERED:

1.      **Scope of Order**:  Except as otherwise ordered by the Court, this Order shall control any and all discovery by any Debtor, committee, the United States Trustee (the "UST"), creditor, party in interest, or group of creditors or parties in interest in connection with Plan Issues arising in connection with the prosecution of or objections to any Plan or Alternative Plan, but shall not affect the rights of any Debtor, committee, UST, creditor or party in interest, or group of creditors or parties in interest to seek discovery in connection with any other contested matters or adversary proceedings (even if related to, or to be heard contemporaneously with, Plan confirmation).

a)       All Plan Discovery sought must be sought in connection with the Plan Issues only, and no discovery nor any information contained therein may be used in connection with any other matter or proceeding.

b)       This Order shall not apply to discovery sought by an individual creditor in connection with the estimation or allowance of a such creditor's claim(s) to the extent that such discovery pertains solely to the amount, priority (i.e., secured, unsecured or administrative) or treatment (i.e., senior or subordinated, but not classification) of such claim(s) and does not implicate contested issues of law or fact that affect numerous other creditors, including but not limited to, substantive consolidation, the treatment and validity of intercompany claims generally, or the validity and enforceability of guarantee claims generally.

c)       b) This Order shall not apply to any discovery in connection with the Motion (i) for Approval of the Disclosure Statement and the Form and Manner of Notice of the Disclosure Statement Hearing, (ii) Establishing Solicitation and Voting Procedures, (iii) Scheduling a Confirmation Hearing, and (iv) Establishing Notice and Objection

Procedures for Confirmation of the Debtors' Joint Chapter 11 Plan, dated March 14, 2011 [Docket No. 15078].

d)      ~~e)~~ Nothing in this Order shall be construed to apply to the separate SIPA proceeding or to in any way limit the SIPA Trustee's rights or authority to investigate the affairs of Lehman Brothers Inc. ("LBI") pursuant to the full extent of his powers.

## 2.    **Participation in Plan Discovery**

a)      Any creditor, party in interest, or group of creditors or parties in interest seeking to participate in Plan Discovery ("Proposed Participant") shall serve on the attorneys for the Debtors and for the statutory committee of unsecured creditors appointed in the Chapter 11 Cases (the "Creditors' Committee") a completed "Notice of Intent," the form of which is attached hereto as Exhibit A.  Each Notice of Intent must contain: (i) the name and address of the creditor or party in interest (or in the case of a group, the names and addresses of each of its members) and the name of the law firm(s) and individual attorneys representing such creditor or party in interest or group of creditors or parties in interest; and (ii) at the option of the Proposed Participant, either, (A) a list of all proof(s) of claim filed either individually or by the group provided there have not been any material changes to such proof(s) of claim since their filing, or (B) a statement setting forth the types and aggregate amount(s) of claim(s) currently held by such Proposed Participant as against each of the Debtors.[1]  Any Notice of Intent must be served no later than fourteen (14) days following the entry of this Order (the "Notice of Intent Deadline") unless, upon application to the Court, good cause is shown that, notwithstanding reasonable best efforts to comply herewith, additional time is needed

---

[1] No disclosures made under this provision shall be construed as a disclosure for the purposes of Bankruptcy Rule 2019.

(e.g., the need to obtain government approval to file a Notice of Intent and become a Participant).  Participants shall promptly serve an amended Notice of Intent to reflect any material changes to the amount of individual or aggregate claims reported in the initial Notice of Intent.  In the absence of an order of the Court sustaining an objection to a Notice of Intent (as described in Paragraph 2(e) of this Order), a Proposed Participant timely serving a Notice of Intent shall be deemed a "Participant."  For purposes of participation in Plan Discovery, "Participant" shall include the attorneys and any advisors for any Participant identified on the Notice of Intent served by the Participant, and "Debtor" shall include the attorneys and any advisors and other professionals for the Debtors.  The Debtors shall make available to counsel for all Participants copies of all Notices of Intent served upon them.

b)     The Debtors, Creditors' Committee, and the UST shall each be deemed a Participant in Plan Discovery without the need to serve a Notice of Intent.

c)     Subject to Paragraph 2(g) below, any creditor, party in interest, or group of creditors or parties in interest that has filed or hereinafter files an Alternative Plan, including the Ad Hoc Group (an "Alternative Plan Proponent"), shall be entitled to serve a Notice of Intent on or prior to the later of the Notice of Intent Deadline and the date of the filing of such plan, and shall be deemed a Participant as of the date of serving such Notice of Intent.

d)     Subject to Paragraph 2(g) below, any creditor, party in interest, or group of creditors or parties in interest that has filed or hereinafter files an objection to the Plan or an Alternative Plan (each, a "Plan Objector") shall be entitled to serve a Notice of Intent on or prior to the later of the Notice of Intent Deadline and the date of the filing of such

objection, and shall be deemed a Participant as of the earlier date of such filing or the

serving of such Notice of Intent.

e)    The Debtors and the Creditors' Committee shall have the right to object to Notices of

Intent on any and all grounds, including but not limited to those that are, *inter alia*,

harassing, or served by persons that are not parties in interest or do not comply with the

requirements hereof or do not demonstrate a legally cognizable interest in participating in

Plan Discovery.

f)    Within three (3) days following the Notice of Intent Deadline, the Debtors shall file with

the Court a list of all Participants and their attorneys (including e-mail addresses and

which Group a Participant has elected to participate in (pursuant to Paragraph 3(b)),

which as it may be amended (as hereafter provided) will be the official service list for

Plan Discovery (the "Official Service List").  The Debtors shall amend the Official

Service List, as necessary, from time to time and will file such amended service lists with

the Court.  Service in connection with Plan Discovery may be by electronic mail.

g)    Except as provided in Paragraphs 2(a) and (b), any creditor, party in interest, or group of

creditors or parties in interest that does not timely serve a Notice of Intent, or that serves

a Notice of Intent to which the Debtors or the Creditors' Committee successfully object,

shall not be permitted to participate in Plan Discovery absent leave of the Court.  Also

absent leave of the Court, all Participants, including those who become Participants after

the Notice of Intent Deadline has passed, must comply with all discovery deadlines set

forth in this Order and shall not be allowed to reopen any discovery deadlines that have

already passed, except as set forth in Paragraph 15 of this Order.

h)    All Plan Discovery shall be subject to and shall be conducted in accordance with the terms of the Protective Order, attached hereto as <u>Exhibit B</u>, and approved by the Court in its entirety.  In order to be eligible to participate in Plan Discovery, each Participant and each Participant's attorneys and advisors must read and agree to abide by the Protective Order.  Each Participant, and a representative of each Participant's attorneys and advisors must sign the Agreement to Abide By the Protective Order, attached hereto as <u>Exhibit C</u>, and serve a copy upon attorneys for the Debtors.  Such representative must provide the Protective Order to any person that it employs or engages who is given access to Plan Discovery.  Any Participant (or the attorneys or advisors for any Participant that are involved in the Chapter 11 Cases) that does not sign the Agreement to Abide by the Protective Order shall not be permitted to participate in Plan Discovery.

i)    This Order, the plan confirmation discovery procedures provided for herein, the Protective Order attached hereto as Exhibit B, and the Agreement to Abide By the Protective Order attached hereto as Exhibit C , are, in each case, in all respects subject to the rights, powers, and privileges of the Federal Housing Finance Agency (the "FHFA"), in its statutory capacity as the Conservator of the Federal National Mortgage Association ("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie Mac"), under the Housing and Economic Recovery Act of 2008, 12 U.S.C. § 4501 *et seq.* (2008) ("HERA").  Nothing in this Order,  the plan confirmation discovery procedures provided for herein, the Protective Order, or the Agreement to Abide By the Protective Order shall affect, limit, or otherwise prejudice the FHFA's rights, powers, and privileges under HERA as the Conservator of Fannie Mae and Freddie Mac.

3. **Document Discovery from the Debtors**

a)      No later than fourteen (14) days following the Notice of Intent Deadline, the Participants

other than the Debtors shall designate one Participant as the "Designated Party" to act as

a facilitator and intermediary for Discovery Requests.  The Designated Party shall make

available to Participants a preliminary suggested set of Document Requests pursuant to

Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directed to the

Debtors, that includes those requests that the Designated Party reasonably and in good

faith believes relate to Plan Issues (the "Preliminary Requests").  The Designated Party

shall simultaneously provide Participants with a preliminary suggested list of proposed

search terms and strings that, in the reasonable estimation of the Designated Party, is

reasonably calculated to yield electronically stored information, including without

limitation e-mails and e-mail attachments (hereinafter collectively referred to as "ESI")

responsive to the Preliminary Requests without being overbroad or unduly burdensome to

the Debtors.  The Designated Party shall consult with the Debtors in formulating such

Preliminary Requests and search terms and strings.

b)      No later than ten (10) days following service by the Designated Party of the Preliminary

Requests, Participants other than the Creditors' Committee and the UST who wish to

serve Document Requests upon the Debtors shall review the Preliminary Requests and

propose any additional requests relating to Plan Issues (the "Group Requests") to the

Designated Party as part of one of the following groups: (i) the direct creditors of

Lehman Brothers Holdings Inc. ("LBHI"); (ii) the guarantee creditors of LBHI for which

a Debtor or U.S. affiliate is the primary obligor; (iii) the guarantee creditors of LBHI for

7

which a non-U.S. affiliate is the primary obligor (other than holders of Lehman Programs

Securities (as defined in the Disclosure Statement)); (iv) the guarantee creditors of LBHI

that are holders of Lehman Programs Securities; (v) the creditors of the derivative entity

debtors, including Lehman Brothers Special Financing Inc. ("LBSF"), Lehman Brothers

OTC Derivatives Inc. ("LOTC"), Lehman Brothers Derivative Products Inc. ("LBDP"),

Lehman Brothers Financial Products Inc. ("LBFP"), and Lehman Brothers Commercial

Corp. ("LBCC"), in each case, other than the LBSF Public Side Working Group;[2] (vi) the

LBSF Public Side Working Group; (vii) the creditors of Lehman Brothers Commodities

Services Inc. ("LBCS"); (viii) the creditors of Lehman Commercial Paper Inc. ("LCPI");

(ix) non-U.S. affiliates of the Debtors; and (x) the creditors of other Debtors (each of the

foregoing enumerated groups, a "Group" and together, the "Groups").[3]  The Creditors'

Committee and the UST may submit separate requests to the Designated Party no later

than ten (10) days after the Designated Party's service of the Preliminary Requests.  A

Participant that would otherwise be a member of more than one of the foregoing groups

shall select one Group in which to participate, but such selection and participation in a

single group shall not constrain or in any way limit a Participant's ability to include

---

[2] The members of the LBSF Public Side Working Group shall consist of the following to the
extent they become Participants: Bank of America, N.A., Centerbridge Credit Advisors, LLC
(solely on behalf of funds managed by itself and affiliates), Crédit Agricole Corporate and
Investment Bank, Credit Suisse International, D. E. Shaw Composite Portfolios, L.L.C., D. E.
Shaw Oculus Portfolios, L.L.C., Deutsche Bank AG, Eton Park Capital Management, L.P.
(solely on behalf of funds for which it serves as investment manager), Goldman Sachs Bank
USA (successor by merger to Goldman Sachs Capital Markets, L.P.), Goldman Sachs
International, Merrill Lynch International, Morgan Stanley Capital Services Inc., Morgan Stanley
& Co. International plc, certain funds advised by Oaktree Capital Management, L.P. or their
respective subsidiaries, Silver Point Finance, LLC (an affiliate of certain claim holders), and The
Royal Bank of Scotland plc.

[3] The Groups are solely for the purpose of facilitating Plan Discovery as set forth in this Order
(and for no other purpose, including, without limitation, for purposes of Bankruptcy Rule 2019).

requests relating to any Plan Issues.[4]  The Participants in each of the Groups shall confer among themselves solely in order to eliminate duplicate requests and each Group shall develop a single list of Group Requests to be sent to the Designated Party.  The purpose of compiling consolidated document requests is solely to avoid duplication, and no proposed document request may be altered or excluded from a consolidated document request for any reason other than to avoid duplication.  Each Group Request shall identify the Participant(s) seeking each request therein, in order to facilitate meet and confer communications among Participants.  No Participant shall waive, or be deemed to have prejudiced in any way, any of its rights or legal positions by joining Group Requests as prescribed in this Paragraph.  Any Participant who, after the meet and confer process, will not agree to join in a single list of Group Requests may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Document Request under terms and conditions that the Court deems appropriate.

c)    Each Participant or Group providing Group Requests to the Designated Party shall simultaneously provide a list of additional proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to the Group Requests without being overbroad or unduly burdensome to the Debtors.  Such list shall identify the Participant(s) seeking each search term and string.

d)    The Designated Party shall create a single Document Request that includes the Preliminary Requests and non-duplicative Group Requests, as well as any requests submitted by the UST or Creditors' Committee (the "Consolidated Requests").  The

---

[4] No provision herein shall be construed to preclude any Participant from joining or forming other groups under Bankruptcy Rule 2019 or for any other purpose outside the scope of this Order.

Designated Party shall also create a single list (the "Designated Party's Search Term List") of combined search terms and strings that includes the search terms and strings the Designated Party identified and non-duplicative search terms and strings provided by Participants contemporaneously with the Group Requests.  The Consolidated Requests and the Designated Party's Search Term List shall identify the Participant(s) seeking each request, search term and string.  In creating the Consolidated Requests and Designated Party's Search Term List, the Designated Party shall reasonably and in good faith eliminate only duplicate requests and/or duplicate search terms and strings.  The Designated Party shall not delete non-duplicative requests or non-duplicative search terms, and it shall not alter any Group Requests or search terms and strings.  Nothing in this Paragraph is intended to or shall limit any Participant's right to request non-duplicative documents relating to Plan Issues from the Debtors. The Designated Party shall provide the Consolidated Requests and the Designated Party's Search Term List to Participants within seven (7) days following service by Participants of the Group Requests.

e)      Participants shall meet and confer with the Designated Party promptly, but in no event later than seven (7) days following service by the Designated Party of the Consolidated Requests and the Designated Party's Search Term List if they believe that the Designated Party eliminated or altered non-duplicative requests or search terms and strings or otherwise improperly transcribed Group Requests, in order to resolve disputes, if any, relating to the contents of the Consolidated Requests or Designated Party's Search Term List.  Any disputes not resolved through the meet and confer process shall promptly be

brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

f)      Within two (2) days after the expiration of the meet and confer period set forth in Paragraph 3(e), and regardless of whether any dispute relating to the content of Consolidated Requests has been brought to the Court's attention in accordance with Paragraphs 3(e) and 17 of this Order, the Designated Party shall serve the Consolidated Requests and the Designated Party's Search Term List upon the Debtors.  The Consolidated Requests shall identify the Participant(s) seeking each Request, search term, and string and parameter in the Designated Party's Search Term List.

g)      Notwithstanding the process outlined in the foregoing Paragraphs (3)(a) – 3(f), nothing in this Order shall be construed to imply that the Designated Party approves, agrees with, has joined in or has otherwise adopted any Group Requests and the Designated Party reserves all of its rights with respect to such requests.

h)      Within twenty-one (21) days following service of the Consolidated Requests upon the Debtors, the Debtors shall serve written responses and objections ("Debtors' Responses and Objections").  The Debtors shall review the Consolidated Requests and Designated Party's Search Term List and will, reasonably and in good faith, generate a master list of search terms, strings and parameters (the "Debtors' Search Term List") reasonably calculated to lead to the production of responsive ESI.  The custodians identified on the Debtors' Search Term List shall include, but not be limited to, every individual employed or retained by the Debtors that the Debtors expect to call as a witness at any hearing concerning any Plan Issues; provided, however, that the Debtors are not limited to such witnesses at any hearing and may thereafter supplement such list, including as provided

11

hereinafter.  The Debtors shall serve the Debtors' Search Term List, along with a statement of the reason(s) for rejecting any proposed search terms and strings contemporaneously with the Debtors' Responses and Objections.

i)    The Debtors shall meet and confer with applicable Participants as identified in the Consolidated Requests, concerning the Debtors' Responses and Objections and the Debtors' Search Term List during the fourteen (14) day period following the service of the Debtors' Responses and Objections.  Any disputes concerning the Debtors' Responses and Objections or the Debtors' Search Term List that are not resolved shall be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

j)    Other than in response to reasonably limited, targeted search requests agreed to by a Participant or ordered by the Court, Participants shall not be required to search, produce, or identify on any log (unless the document was called for under such limited, targeted requests), documents from the following categories of privileged documents, regardless of when the documents were created:

    i)    Hard copy files of in-house and outside counsel;

    ii)   Documents and communications solely between in-house counsel and outside counsel;

    iii)  Internal documents and communications solely within an outside counsel's law firm;

    iv)   Documents and communications solely between or among outside counsel law firms for a single client;

v) Documents and communications solely between or among client and inside counsel or outside counsel;

vi) To the extent a request seeks documents prepared or dated after the date of filing of the Debtors' chapter 11 petitions, internal documents and communications solely within an advisor;

provided, however, in the event that a representative of any advisor is disclosed to be an anticipated witness at the Plan Confirmation hearing, such individual's documents shall be subject to discovery, and the advisory firm shall also be subject to reasonably limited, targeted document requests relating to the subjects of the proposed witness's expected testimony, subject to whatever privilege or other protection may apply.  Nothing in this Paragraph shall modify or expand a Participant's rights or obligations under Federal Rule of Civil Procedure 26(b)(4)(B).

k)    The Debtors shall begin searching for and producing documents as expeditiously as is reasonably practical after the Debtors' Search Term List and Consolidated Requests are finalized.  The Debtors shall produce bates-stamped and/or otherwise uniquely identified documents on a rolling basis, inform Participants from time to time regarding the production and availability of documents, and make reasonable efforts to identify the source of the documents they produce.  The Debtors shall inform Participants when document production is substantially complete by serving a notice ("Notice of Substantial Completion").  The Debtors' document production shall be substantially complete when the Debtors believe in good faith that all material documents requested have been produced, but for limited categories of documents that need to be located, obtained,

and/or reviewed.  The Notice of Substantial Completion will also identify with reasonable specificity any categories of documents that remain to be produced.

l)      Notwithstanding anything in this Order to the contrary, the procedures set forth herein shall not be used by Participants (other than the Debtors) to seek discovery of documents, records or ESI directly from Barclays Capital Inc. or any of its affiliates (together, "Barclays") of which Barclays may have custody, possession, or control solely by virtue of its purchase of certain assets from LBHI, LBI, and LB 745 LLC (such documents, records or ESI, "Legacy Lehman Records").

i)      All document requests of any Participant (other than the Debtors) concerning Legacy Lehman Records shall be directed at the Debtors

ii)     The Debtors and Barclays shall cooperate in good faith to seek to satisfy requests made to Barclays by the Debtors.

iii)    Notwithstanding anything in this Order to the contrary, to the extent the Debtors make such requests of Barclays pursuant to that certain Stipulation and Agreed Order with Respect to Access Amendment to Transition Services Agreements, dated March 2, 2011 (D.I. 14750, the "Access Amendment"), nothing herein shall modify or amend the provisions of the Access Amendment.

iv)     The provision of Access (as defined in the Access Amendment) shall not waive any attorney work product protection or any privilege with respect to Legacy Lehman Records.

v)      The Debtors shall also undertake commercially reasonable efforts not to produce any Barclays documents, records, or ESI that they possess and

14

that may be commingled with Legacy Lehman Records.   Any

inadvertently produced Barclays documents, records, or ESI must

immediately be destroyed or returned to the Debtors on request of

Barclays or the Debtors, or upon discovery of such inadvertent production

by the receiving Participant, after which the receiving Participant shall

certify that all copies of such documents, records, or ESI have been

destroyed or returned.

**4.**     **Data Repository**

a)     The Debtors shall, to the extent reasonably practical, upload non-privileged responsive

documents to an online data repository (the "Data Repository") on a rolling basis.  The

Data Repository review tool shall provide basic functions and features such as searching,

tagging, printing, and downloading.  No later than fourteen (14) days following the

Notice of Intent Deadline, the Debtors will meet and confer with Participants regarding

the Data Repository, including with respect to the protection of work product created in

the process of reviewing produced documents.

b)     After signing, and providing to the Debtors, the Agreement to Abide by the Protective

Order, a Participant will be granted access to the Data Repository.  Each Participant shall,

upon request, be given up to five (5) separate login credentials for the Data Repository.

Any Participant that wants additional login credentials for the Data Repository will be

provided with such login credentials at the Participant's own expense, at a cost of $100

per additional login per month.  Upon issuing a request for additional logins, the

Participant shall provide the Debtors with the amount payable (per login) for the first

month of use.

c)      The Debtors shall have the right to produce documents that are not reasonably conducive

to being cost-efficiently uploaded into the Data Repository by other means, including but

not limited to supervised review of hard copy documents.  The Debtors will notify all

Participants if any documents will be made available by such other means, and will

provide reasonable advance notice of the terms and conditions under which such

documents will be made available.  Upon good cause shown, any Participant may request

that any documents or data, including but not limited to Microsoft Excel files, that are

otherwise responsive to discovery requests be produced in native format, and any dispute

concerning the production of such documents that is not resolved by a meet and confer

process may be brought to the Court's attention in accordance with Paragraph 17 of this

Order.

**5.      Document Discovery from Alternative Plan Proponents**

a)      No later than fourteen (14) days following the Notice of Intent Deadline, the Debtors

shall make available to Participants a preliminary suggested set of Document Requests

pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by

Bankruptcy Rules 7034 and 9014, directed to each Alternative Plan Proponent that

includes those requests that the Debtors reasonably and in good faith believe relate to

Plan Issues (the "Preliminary APP Requests").  The Debtors shall simultaneously provide

Participants with a preliminary suggested list of proposed search terms and strings that, in

the reasonable estimation of the Debtors, is reasonably calculated to yield ESI responsive

to each of the Preliminary APP Requests without being overbroad or unduly burdensome

to the respective Alternative Plan Proponents.

b)      No later than ten (10) days following service by the Debtors of the Preliminary APP

Requests, Participants who wish to serve Document Requests upon Alternative Plan

16

Proponents shall review the Preliminary APP Requests and, as part of one of the Groups identified in Paragraph 3(b), propose to the Debtors any additional requests directed to each Alternative Plan Proponent relating to Plan Issues ("the Group APP Requests"). The Creditors' Committee and the UST may submit separate requests to the Debtors no later than ten (10) days after the Debtors' service of the Preliminary APP Requests. The Participants in each of the Groups shall confer among themselves solely in order to eliminate duplicate requests and develop a single list of Group APP Requests directed to each Alternative Plan Proponent to be sent to the Debtors. The purpose of compiling consolidated document requests is solely to avoid duplication, and no proposed document request may be altered or excluded from a consolidated document request for any reason other than to avoid duplication. Each Group APP Request shall identify the Participant(s) seeking each request therein, in order to facilitate the meet and confer communications among Participants. No Participant shall waive, or be deemed to have prejudiced in any way, any of its rights or legal positions by joining any Group APP Requests as prescribed in this Paragraph. Any Participant who, after the meet and confer process, will not agree to join in a single list of Group APP Requests may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Document Request under terms and conditions that the Court deems appropriate.

c)    Each Participant or Group providing Group APP Requests to the Debtors shall simultaneously provide a list of proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to each of the Group APP Requests without being overbroad or unduly burdensome to the

respective Alternative Plan Proponents.  Such lists shall identify the Participant(s)

seeking each Request and each search term and string.

d)      The Debtors shall create a single Document Request directed to each Alternative Plan

Proponent that includes the Preliminary APP Requests and non-duplicative Group APP

Requests, as well as any requests submitted by the UST or Creditors' Committee (the

"Consolidated APP Requests").  For each of the Consolidated APP Requests, the Debtors

shall also create a single list (the "Consolidated APP Search Term List") of combined

search terms and strings that includes the search terms and strings the Debtors identified

and non-duplicative search terms and strings provided by Participants contemporaneously

with the Group APP Requests.  The Consolidated APP Requests and the APP Search

Term List shall identify the Participant(s) seeking each request, search term, and string.

In creating the Consolidated APP Requests and Consolidated APP Search Term List, the

Debtors shall reasonably and in good faith eliminate only duplicate requests and/or

duplicate search terms and strings.  The Debtors shall not delete non-duplicative requests

or non-duplicative search terms, and it shall not alter any Group APP Requests or search

terms and strings.  Nothing in this Paragraph is intended to or shall limit any Participant's

right to request non-duplicative documents relating to Plan Issues from any Alternative

Plan Proponent.  The Debtors shall provide the Consolidated APP Requests and the

Consolidated APP Search Term Lists to Participants within seven (7) days following

service by Participants of the Group APP Requests.

e)      Participants shall meet and confer with the Debtors promptly, but in no event later than

seven (7) days following service by the Debtors of the Consolidated APP Requests and

the Consolidated APP Search Term Lists if they believe that the Debtors eliminated or

18

altered non-duplicative requests or search terms and strings, or otherwise improperly

transcribed Group APP Requests, in order to resolve disputes, if any, relating to the

contents of the Consolidated APP Requests or the Consolidated APP Search Term List.

Any disputes not resolved through the meet and confer process shall be brought to the

Court's attention within seven (7) days after the final meet and confer, in accordance with

the procedures set forth in Paragraph 17 of this Order.

f)      Within two (2) days after the expiration of the meet and confer period set forth in

Paragraph 5(e), and regardless of whether any dispute relating to the content of

Consolidated APP Requests or Consolidated APP Search Term List has been brought to

the Court's attention in accordance with Paragraphs 5(e) and 17 of this Order, the

Debtors shall serve the relevant Consolidated APP Requests and Consolidated APP

Search Term List upon each Alternative Plan Proponent.  The Consolidated APP

Requests and Consolidated APP Search Term List shall identify the Participant(s)

seeking each Request and each search term, string and parameter.

g)      Notwithstanding the process outlined in the foregoing paragraphs 5(a) – 5(f), nothing in

this Order shall be construed to imply that the Debtors approve, agree with, have joined

in or have otherwise adopted any Group APP Requests and the Debtors reserve all of

their rights with respect to such requests.

h)      Within twenty-one (21) days following service of the Consolidated APP Requests upon

the Alternative Plan Proponents, each Alternative Plan Proponent shall serve written

responses and objections (collectively, "APP Responses and Objections").  Each

Alternative Plan Proponent shall review the relevant Consolidated APP Requests and

APP Search Term List and will, reasonably and in good faith, generate a master list of

19

search terms, strings and parameters reasonably calculated to lead to the production of responsive ESI (collectively, the "APP Search Term Lists").  The custodians shall include, but not be limited to, every individual employed or retained by the Alternative Plan Proponent that the Alternative Plan Proponent expects to call as a witness at any hearing concerning any Plan Issues; provided, however, that the Alternative Plan Proponent is not limited to such witnesses at any hearing and may thereafter supplement such list, including as provided hereinafter.  Each set of APP Responses and Objections shall be served contemporaneously with a corresponding APP Search Term List, along with a statement of the reason(s) for rejecting any proposed search terms or strings.

i)      Alternative Plan Proponents as identified in the Consolidated APP Requests and the Proposed APP Search Term List shall meet and confer with applicable Participants regarding any disputes concerning the APP Responses and Objections and APP Search Term Lists during the fourteen (14)-day period following the service of the APP Responses and Objections and APP Search Term Lists.  Any disputes concerning the APP Responses and Objections and APP Search Term Lists not resolved by the end of the fourteen (14)-day meet and confer period shall be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

j)      Alternative Plan Proponents shall begin searching for and producing documents as expeditiously as reasonably practical after being served a Consolidated APP Request. Alternative Plan Proponents shall produce bates-stamped documents on a rolling basis, inform Participants from time to time regarding the production and availability of documents, and make reasonable efforts to identify the source of the documents they

20

produce.  Alternative Plan Proponents shall provide a copy of all responsive document productions to the Debtors in accordance with the specifications set forth in <u>Exhibit D</u>, and, if reasonably practical, the Debtors shall upload them to the Data Repository.

k)  The Alternative Plan Proponents shall produce documents in electronic form.  Upon a showing of good cause, Alternative Plan Proponents shall have the right to produce documents that are not reasonably conducive to being cost-efficiently produced in electronic format by other means, including but not limited to supervised review of hard copy documents.  The Alternative Plan Proponents will notify all Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the reasonable terms and conditions under which such documents will be made available.

## 6.    <u>Document Discovery from Other Participants</u>

a)  No later than fourteen (14) days following the Notice of Intent Deadline, the Debtors shall make available to Participants a preliminary suggested set of Document Requests pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7034 and 9014, directed to each Participant (other than Alternative Plan Proponents) from which the Debtors intend to seek document discovery ("<u>Responding Participant</u>") that includes those requests that the Debtors reasonably and in good faith believe relate to Plan Issues (the "<u>Preliminary Participant Requests</u>").  The Debtors shall simultaneously provide Participants with a preliminary suggested list of proposed search terms and strings and that, in the reasonable estimation of the Debtors, is reasonably calculated to yield ESI responsive to each of the Preliminary Participant Requests without being overbroad or unduly burdensome to the Responding Participant.

21

b)      No later than ten (10) days following service by the Debtors of the Preliminary

Participant Requests, Participants who wish to serve Document Requests upon any of the

Responding Participants shall review each of the Preliminary Participant Requests and as

part of one of the Groups identified in Paragraph 3(b) (excluding, as necessary the

Participant or Participants from which documents are sought), propose to the Debtors any

additional requests directed to such Responding Participant(s) concerning Plan Issues

("the Group Participant Requests").  The Creditors' Committee and the UST may submit

separate requests to the Debtors no later than ten (10) days after the Debtors' service of

the Preliminary Participant Requests. The Participants in each of the Groups shall confer

among themselves solely in order to eliminate duplicate requests and develop a single list

of Group Participant Requests directed to each Responding Participant to be sent to the

Debtors.  The purpose of compiling consolidated document requests is solely to avoid

duplication, and no proposed document request may be altered or excluded from a

consolidated document request for any reason other than to avoid duplication.  Each

Group Participant Request shall identify the Participant(s) seeking each request therein,

in order to facilitate meet and confer communications among Participants.  No Participant

shall waive, or be deemed to have prejudiced in any way, any of its rights or legal

positions by joining any Group Participant Request as prescribed in this Paragraph.  Any

Participant who, after the meet and confer process, will not agree to join in a single list of

Group Participant Requests may, in accordance with the procedure set out in Paragraph

17 of this Order, seek leave of the Court to serve a separate Document Request under

terms and conditions that the Court deems appropriate.

c)    Each Participant or Group providing Group Participant Requests to the Debtors shall simultaneously provide a list of proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to each of the Group Participant Requests without being overbroad or unduly burdensome to the respective Responding Participants.  Such lists shall identify the Participant(s) seeking each Request and each search term, string and parameter.

d)    Within ten (10) days following the Debtors' service of the Preliminary Participant Requests, any Participant that seeks to serve Document Requests relating to Plan Issues upon Participants (other than the Debtors or Alternative Plan Proponents) with respect to which the Debtors have not prepared a Preliminary Participant Request shall make available to the Debtors a set of Document Requests ("Additional Responding Participant Requests") pursuant to Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7034 and 9014, directed to each such Participant.   The Additional Responding Participant Request shall be accompanied by a list of suggested search terms and strings that, in the reasonable estimation of the Participant drafting the Additional Responding Participant Requests, is reasonably calculated to yield ESI responsive to the Additional Responding Participant Requests.  Any subject of an Additional Responding Participant Request shall be considered a Responding Participant.

e)    The Debtors shall then review any Group Participant Requests and Additional Responding Participant Requests, as well as any requests submitted by the UST or Creditors' Committee, and create a single Document Request directed to each Participant from which discovery is sought (the "Consolidated Participant Requests").  For each of the Consolidated Participant Requests, the Debtors shall also create a single list (the

23

"<u>Participant Search Term List</u>") of combined search terms and strings that includes the search terms and strings the Debtors identified and non-duplicative search terms and strings provided by Participants contemporaneously with the Group Participant Requests and the Additional Responding Participant Requests.  The Consolidated Participant Requests and the Participant Search Term List shall identify the Participant(s) seeking each request, search term, string and parameter.  In creating the Consolidated Participant Requests and Participant Search Term List, the Debtors shall reasonably and in good faith eliminate only duplicate requests and/or duplicate search terms and strings.   The Debtors shall not delete non-duplicative requests or non-duplicative search terms, and they shall not alter any Group Participant Requests, Additional Responding Participant Request, or corresponding search terms and strings.  Nothing in this Paragraph is intended to or shall limit any Participant's right to request non-duplicative documents relating to Plan Issues from any Responding Participant.  The Debtors shall provide the Consolidated Participant Requests and the Participant Search Term Lists to Participants within seven (7) days following the later of (i) service by Participants of the Group Participant Requests, or (ii) service by the Participants of the Additional Responding Participant Requests.

f)      Participants shall meet and confer promptly with the Participants, including the Debtors and Creditors' Committee, but in no event later than seven (7) days following service by the Debtors of the Consolidated Participant Requests and the Participant Search Term Lists if they believe that the Debtors eliminated or altered non-duplicative requests or search terms and strings, or otherwise improperly transcribed Group Participant Requests or Additional Responding Participant Requests, in order to resolve disputes, if any, relating to the contents of the Consolidated Participant Requests or the Participant Search

Term List.  Any disputes not resolved through the meet and confer process shall promptly be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

g)  Within two (2) days after the expiration of the meet and confer period set forth in Paragraph 6(f), and regardless of whether any dispute relating to the content of Consolidated Participant Requests has been brought to the Court's attention in accordance with Paragraphs 6(f) and 17 of this Order, the Debtors shall serve the Consolidated Participant Requests and Participant Search Term List upon the Responding Participants.  The Consolidated Participant Requests shall identify the Participant(s) seeking each request, search term and string.

h)  Notwithstanding the process outlined in the foregoing Paragraphs 6(a) – 6(g), nothing in this Order shall be construed to imply that the Debtors, Creditors' Committee, or a Participant have joined in or have otherwise adopted any Group Participant Request and the Debtors and each Participant reserve all rights with respect to such requests.

i)  Within twenty-one (21) days following service of the Consolidated Participant Requests, each Responding Participant shall serve written responses and objections.  Each Responding Participant shall review the relevant Consolidated Participant Requests and Participant Search Term List and will, reasonably and in good faith, generate a master list of search terms, strings and parameters reasonably calculated to lead to the production of responsive ESI.  The custodians shall include, but not be limited to, every individual employed or retained by the Responding Participant that such Responding Participant expects to call as a witness at any hearing concerning any Plan Issues; provided, however, that the Responding Participant is not limited to such witnesses at any hearing

and may thereafter supplement such list, including as provided hereinafter.  Each

Responding Participant shall serve its search term list and search parameters, along with a

statement of the reason(s) for rejecting any proposed search terms and strings,

contemporaneously with its responses and objections.

j)      Each Responding Participant that has been served with a Consolidated Participant

Request and Participant Search Term List shall meet and confer with applicable

Participants, including the Debtors and Creditors' Committee, regarding any disputes

concerning the responses and objections to the Consolidated Participant Requests, search

terms, strings and parameters to be used by such Responding Participant during the

fourteen (14)-day period following the service of its responses and objections.  Any

disputes concerning a Responding Participant's responses and objections, search terms

and strings not resolved by the end of the fourteen (14)-day meet and confer period shall

be brought to the Court's attention within seven (7) days after the final meet and confer,

in accordance with the procedures set forth in Paragraph 17 of this Order.

k)      Responding Participants shall begin searching for and producing bates-stamped

documents as expeditiously as reasonably practical after being served a Consolidated

Participant Request.  Responding Participants shall produce bates-stamped documents on

a rolling basis, inform Participants from time to time regarding the production and

availability of documents, and make reasonable efforts to identify the source  of the

documents they produce.  Responding Participants shall provide a copy of all responsive

document productions to the Debtors in accordance with the specifications set forth in

Exhibit D, and, if reasonably practical, the Debtors shall upload them to the Data

Repository.

l)      Responding Participants shall produce documents in electronic form.  Upon a showing of good cause, Responding Participants shall have the right to produce documents that are not reasonably conducive to being cost-efficiently produced in electronic format by other means, including but not limited to supervised review of hard copy documents.  The Responding Participants will notify other Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the terms and conditions under which such documents will be made available.

m)     Notwithstanding anything in this Order to the contrary, to the extent Participants seek discovery of documents that are in the possession, custody, or control of the Debtors and the SIPA Trustee, the Participants shall direct such Documents Requests to the Debtors.

## 7.        **Document Discovery From Non-Participants**

a)      Participants that seek to obtain documents from U.S. Non-Participants pursuant to Rule 45 of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 9014 and 9016, or from foreign Non-Participants pursuant to Rule 28 of the Federal Rules of Civil Procedure or via other process, shall do so in a timely manner.  Nothing in this Order shall excuse compliance with any applicable, governing foreign or international law, including any foreign or international law concerning the service of discovery requests.  In order to avoid the service upon Non-Participants of multiple, duplicative document requests, subpoenas, letters of requests or commissions ("Non-Participant Requests") and the attendant burdens on Non-Participants of responding to them, any Participant wishing to serve a Non-Participant Request shall make available to Participants a preliminary suggested Non-Participant Request directed to each Non-Participant from which such Participant intends to seek document discovery, and a

27

preliminary suggested list of proposed search terms and strings and that, in the reasonable estimation of the Participant is reasonably calculated to yield ESI responsive to each of the Non-Participant Requests without being overbroad or unduly burdensome to the Non-Participant. Within fourteen (14) days after a Participant provides to the other Participant a preliminary suggested Non-Participant Request, Participants shall, as part of one of the Groups identified in Paragraph 3(b) or, in the case of the Debtors and the Creditors' Committee, separately, reasonably and in good faith meet and confer and propose any additional Non-Participant Request directed at each Non-Participant from which discovery is sought, together with a list of additional proposed search terms and strings that, in the reasonable estimation of such Participant or Group, is reasonably calculated to yield ESI responsive to Non-Participant Request without being overbroad or unduly burdensome to the Non-Participant from which discovery is sought.

b)     A copy of this Order and the Protective Order also shall be provided to Non-Participants as part of any Non-Participant Request. However, nothing in this Paragraph 7 is intended to or shall require any Participant to join in any Non-Participant Request or subpoena that it reasonably and in good faith believes would be inconsistent with Rule 45(c)(1) of the Federal Rules of Civil Procedure, as incorporated by the Bankruptcy Rules, or any other rule or law; nothing in this Paragraph is intended to or shall limit any Participant's right to request, after good faith review of the Non-Participant Requests, non-duplicative documents relating to Plan issues from any Non-Participant; and the meet and confer process described in this Paragraph is intended only to eliminate duplicative document requests and search terms.

c)      No later than thirty (30) days following service of any Non-Participant Request, the

Non-Participant shall serve written responses and objections.  In addition, the Non-

Participant shall review the Non-Participant Request and search terms, and strings and

will, in good faith, generate a master list of search terms, strings and parameters

reasonably calculated to lead to the production of responsive ESI.  The Non-Participant

shall make the search terms, strings and parameters, along with a statement of the

reason(s) for rejecting any proposed search terms and strings available to Participants

contemporaneously with its responses and objections.

d)       If necessary, Non-Participants that have been served with a Non-Participant Request

shall meet and confer with applicable Participants regarding any disputes concerning

served search terms, strings or parameters to be used by such Non-Participant, as well as

responses to the Non-Participant Request, during the fourteen (14)-day period following

the service of responses and objections.  Any disputes concerning a Non-Participant's

responses and objections or search terms, strings or parameters not resolved by the end of

the fourteen (14)-day meet and confer period shall be brought to the Court's attention

within seven (7) days after the final meet and confer, in accordance with the procedures

set forth in Paragraph 17 of this Order.

e)       Non-Participants shall begin searching for and producing documents as expeditiously as

reasonably practical after being served a Non-Participant Request.  Non-Participants shall

produce bates-stamped documents on a rolling basis, inform Participants from time to

time regarding the production and availability of documents, and make reasonable efforts

to identify the source of the documents they produce.  Non-Participants shall provide a

copy of all responsive document productions to the Debtors in accordance with the

specifications set forth in <u>Exhibit D</u>, and, if reasonably practical, the Debtors shall upload them to the Data Repository.

f)    Non-Participants shall produce documents in electronic form.  Upon a showing of good cause, Non-Participants shall have the right to produce documents that are not reasonably conducive to being cost-efficiently produced in electronic format by other means, including but not limited to supervised review of hard copy documents.  Non-Participants will notify all Participants if any documents will be made available by such other means, and will provide reasonable advance notice of the terms and conditions under which such documents will be made available.

g)    Nothing in this Order prevents Non-Participants from objecting to Plan Discovery on the ground, among others, that a request (i) does not comply with, conflicts with or may cause a violation of any foreign law, including without limitation any foreign privacy law, or (ii) seeks documents, materials or information concerning a foreign bankruptcy proceeding or estate administration.

**8.**        **Supplemental Document Discovery**

a)    Participants wishing to serve other Participants and/or Non-Participants with one or more targeted supplemental Document Requests or document subpoenas, letters of request or commissions ("<u>Supplemental Requests</u>") relating to Plan Issues limited to specific documents that the Participant reasonably and in good faith believes should be produced based on a review of existing discovery, including document discovery and deposition testimony, shall first meet and confer with such Participant or Non-Participant.  If within seven (7) days of the meet and confer Participants have not resolved the issue, a Supplemental Request may be served.

30

b)      Participants or Non-Participants shall serve responses and objections ("Supplemental Responses and Objections") to Supplemental Requests within fourteen (14) days of service of the Supplemental Requests.  The Participant serving the Supplemental Request shall raise any objections regarding the Supplemental Responses and Objections no later than seven (7) days after the Supplemental Responses and Objections are served.  The Participant serving Supplemental Responses and Objections shall meet and confer with applicable Participants concerning such objections during the seven (7)-day period following the service of such objections.  Any disputes concerning the Supplemental Responses and Objections that are not resolved by the end of the seven (7)-day meet and confer period shall be brought to the Court's attention within seven (7) days after the final meet and confer, in accordance with the procedures set forth in Paragraph 17 of this Order.

9.          **Procedures Governing Amendments to Search Term Lists:**  Any Participant seeking an amendment to a Search Term List after the Search Term List has been finalized must seek leave from the Court, in accordance with the procedures set forth in Paragraph 17 of this Order, but may do so only after first meeting and conferring with the Debtors and as applicable, the other Participants.

10.     **Initial Disclosures and Witness Lists**

a)       No Participant shall be required to make initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1), as incorporated by Bankruptcy Rules 7026 and 9014.

b)       Within seven (7) days of service of the Notice of Substantial Completion, the Debtors, each Alternative Plan Proponent, and each Participant shall serve Participants with a list (the "Initial Witness List"), which shall be amended and supplemented as needed, of the

individuals the Debtors, each Alternative Plan Proponent and each Participant

respectively expects to call as witnesses at any plan confirmation hearing.

**11.** **Privileged Documents and Privilege Logs**

a)       ~~Subject~~Except for good cause shown upon application to the Court, and subject to

Paragraph 3(j), any person or entity ~~other than the Debtors~~ that receives a Document

Request or document subpoena, letter of request or commission and withholds any

documents on the grounds of privilege, work product, or any other type of protection or

immunity from disclosure shall produce a privilege log that, consistent with Federal

Rules of Civil Procedure 26(b)(5), as incorporated by Bankruptcy Rules 7026 and 9014,

~~except for good cause show upon application to the Court~~includes at least the following

fields:   Document ID, Date, Subject (for emails), Document Name (for attachments),

Attorneys Present (Y/N), and Custodian.

b)       If only part of a document is withheld on the grounds of privilege, work product, or any

other type of protection or immunity from disclosure, the remainder of the document

shall be produced.

c)       Notwithstanding Paragraphs 3(j) and 11(a) of this Order, the Debtors and all other

Participants and Non-Participants that are in bankruptcy, administration, liquidation or

other insolvency proceedings (whether in the United States or abroad) shall not be

required to search for, produce or identify on any privilege log the following categories

of documents to the extent such documents were created on or after the date such

Participant or Non-Participant entered such bankruptcy, administration, liquidation or

other insolvency proceedings:

i)   Hard copy files of in-house and outside counsel;

32

ii) Documents and communications solely between in-house counsel and outside
counsel;

iii) Internal documents and communications solely within an outside counsel's law firm;

iv) Documents and communications solely between or among outside counsel law firms
for a single client;

v) Documents and communications solely between or among client and inside counsel
or outside counsel;

vi) internal documents and communications solely within an advisor.

**12.**         **Interrogatories**

a)         **Interrogatories Served Upon the Debtors**

i) Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as incorporated by
Bankruptcy Rules 7033 and 9014, ~~Participants~~each Group, and in the case of the
Creditors' Committee and the UST, separately, may collectively serve upon the
Debtors no more than ~~twenty-five~~ten (~~25~~10) written interrogatories, including all
subparts, relating to Plan Issues ("Interrogatories"), no later than twenty-eight (28)
days after the service of the Notice of Substantial Completion.  Interrogatories to the
Debtors shall be limited to identification of witnesses and authentication of
documents and shall not include contention interrogatories.  Participants shall meet
and confer in good faith to determine the content and scope of the Interrogatories to
the Debtors.  Any Participant that, after the meet and confer process, will not agree to
serve Interrogatories consistent with this Paragraph may, in accordance with the
procedure set out in Paragraph 17 of this Order, may seek leave of the Court to serve
separate Interrogatories under terms and conditions that the Court deems appropriate.

ii) Notwithstanding anything in this Order to the contrary, the procedures set forth herein shall not be used by Participants (other than the Debtors) to request answers to Interrogatories directly from Barclays concerning Legacy Lehman Records. All Interrogatories from any Participant (other than the Debtors) concerning Legacy Lehman Records shall be directed at the Debtors and shall be included among the twenty-five Interrogatories referenced in Paragraph 12(a)(i). The Debtors will not object to interrogatories concerning Lehman Legacy Records that are directed to them on the ground that the information sought is not within the Debtors' possession, custody or control.

b) **Interrogatories Served Upon Alternative Plan Proponents:** Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7033 and 9014, ~~Participants, including~~each Group, and in the case of the Debtors ~~and~~, the Creditors' Committee and the UST, separately, may ~~collectively~~ serve upon each Alternative Plan Proponent no more than ~~twenty-five~~ten (~~25~~10) written Interrogatories, including all subparts, relating to Plan Issues, no later than twenty-eight (28) days after service of the Notice of Substantial Completion. Interrogatories to Alternative Plan Proponents shall be limited to identification of witnesses and authentication of documents and shall not include contention interrogatories. Participants shall meet and confer in good faith to determine the content and scope of the Interrogatories to Alternative Plan Proponents. Any Participant that, after the meet and confer process, will not agree to serve Interrogatories consistent with this Paragraph may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve separate Interrogatories under terms and conditions that the Court deems appropriate.

c)   **Interrogatories Served Upon Participants Other Than the Debtors or Alternative Plan Proponents:**  Pursuant to Rule 33(a)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7033 and 9014, ~~Participants~~each Group, and in the case of the Debtors, the Creditors' Committee and the UST, separately, may ~~collectively~~ serve no more than ~~twenty-five~~ten (~~25~~10) written Interrogatories relating to Plan Issues upon any Participant other than the Debtors or Alternative Plan Proponent no later than twenty-eight (28) days after service of the Notice of Substantial Completion. Interrogatories to Participants shall be limited to identification of witnesses and authentication of documents and shall not include contention interrogatories.  Participants shall meet and confer in good faith to determine the content and scope of the Interrogatories to Participants.  Any Participant that, after the meet and confer process, will not agree to serve Interrogatories consistent with this Paragraph may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve separate Interrogatories under terms and conditions that the Court deems appropriate.

**13.**        **Depositions**

a)   **Notice Period for Depositions of the Debtors:**  No later than fourteen (14) days after the Debtors serve the Notice of Substantial Completion, Participants shall meet and confer as part of one of the Groups identified in Paragraph 3(b), and in the case of the Creditors' Committee and UST, separately, to draft a consolidated list of preliminary suggested topics (the "Preliminary Topics") for a Notice of Deposition of the Debtors pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014.  Any Participant that, after the meet and confer process, will not agree to join in a list of Preliminary Topics may, in accordance with the

procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a

separate Rule 30(b)(6) notice upon the Debtors.

i)     No later than twenty-one (21) days after the Debtors serve the Notice of

Substantial Completion, the Groups, the Creditors' Committee, and the UST shall

provide the Preliminary Topics to the Designated Party.

ii)     The Designated Party shall consolidate the Preliminary Topics, along with any

additional topics that it reasonably and in good faith believes are appropriate

topics for a Rule 30(b)(6) deposition of the Debtors relating to Plan Issues (the

"Joint Notice").  In creating the Joint Notice the Designated Party shall

reasonably and in good faith eliminate only duplicate topics.  The Designated

Party shall neither delete non-duplicative topics nor alter any Preliminary Topics.

Nothing in this Paragraph is intended to or shall limit any Participant's right to

seek deposition testimony from the Debtors on any topic relating to Plan Issues,

subject to the provisions set forth in this Order.  Within seven (7) days of its

receipt of the Preliminary Topics, the Designated Party shall serve the Joint

Notice upon the Debtors.  Notwithstanding the foregoing, nothing in this Order

shall be construed to imply that the Designated Party approves, agrees with, or

has joined in or has otherwise adopted or approved of any Preliminary Topics and

the Designated Party reserves all of its rights with respect to the inclusion of such

topics in the Joint Notice.

iii)     Upon service of the Joint Notice, no Participant that participated in the creation of

the Preliminary Topics shall be deemed to have joined all individual topics listed

in the Joint Notice, nor shall any Participant waive, or be deemed to have

36

prejudiced in any way, any of its rights or legal positions by joining the Joint Notice.

iv)    Within fourteen (14) days of receiving the Joint Notice, the Debtors shall serve any responses and objections to the Joint Notice, together with a list of designated witnesses for each of the noticed Rule 30(b)(6) topics to which Debtors do not object and the dates and locations when such witnesses will be made available to be deposed.  Participants and the Debtors will meet and confer to resolve any disputes regarding topics in the Joint Notice.  Any disputes regarding the Joint Notice that are not resolved during the foregoing meet and confer process may be brought to the Court's attention no later than seven (7) days after the final meet and confer in accordance with the procedure set out in Paragraph 17 of this Order.

v)    The Rule 30(b)(6) deposition of the Debtors must be completed no later than forty-five (45) days after Debtors serve a list of designated witnesses.

vi)    Representatives of the various Groups identified in Paragraph 3(b), the Creditors' Committee, and the UST shall meet and confer to reasonably and in good faith identify a list of current employees of the Debtors, including employees of LAMCO LLC and Alvarez & Marsal, whose depositions, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, Participants reasonably believe they require.  The Groups shall collectively serve one list identifying the employees of the Debtors whose depositions Participants reasonably believe they require (the "Group Deposition List") within ten (10) days following completion of the Rule 30(b)(6) deposition of the Debtors.  Any Participant that, after the meet and confer process, will not

37

agree to join a Group Deposition List, may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve separate Rule 30(b)(1) deposition notices.

vii)    Within seven (7) days after service of the Group Deposition List, Debtors will serve any responses and objections to the Group Deposition List as well as a proposed schedule for depositions to which they do not object.  Within seven (7) days of the Debtors' service of the responses and objections to the Group Deposition List and the proposed schedule for such depositions, Participants and Debtors will meet and confer to resolve any disputes regarding depositions and scheduling thereof.

viii)    Any disputes regarding the number of depositions, identity of witnesses, or the deposition schedule that are not resolved during the foregoing meet and confer process may be brought to the Court's attention no later than seven (7) days after the final meet and confer in accordance with the procedure set out in Paragraph 17 of this Order.

ix)    Any deposition requests relating to Legacy Lehman Records or information relating thereto shall be directed at the Debtors.  To the extent that former employees of the Debtors or their current or former affiliates now employed by Barclays or any other company are interviewed or prepared for deposition by the Debtors, any attorney work product protection or other privilege shall not be waived to the extent that employees or counsel of Barclays or of the current employer are present at such interviews or deposition preparations.

b)	**Notice Period for Depositions of Alternative Plan Proponents:**   No later than fourteen (14) days after the Debtors serve the Notice of Substantial Completion, Participants shall meet and confer as part of one of the Groups identified in Paragraph 3(b), and in the case of the Debtors ~~and~~, the Creditors' Committee and the UST, separately, to draft a consolidated list of preliminary suggested topics (the "Preliminary APP Topics") for a Notice of Deposition of each Alternative Plan Proponent pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014.  Any Participant that, after the meet and confer process, will not agree to join in a list of Preliminary APP Topics may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Rule 30(b)(6) notice upon each Alternative Plan Proponent.

i)	No later than twenty-one (21) days after the Debtors serve the Notice of Substantial Completion, the Groups ~~and~~, the Creditors' Committee, and the UST shall provide the Preliminary APP Topics to the Debtors.

ii)	The Debtors shall consolidate the Preliminary APP Topics, along with any additional topics that they reasonably and in good faith believe are appropriate topics for a Rule 30(b)(6) deposition of the respective Alternative Plan Proponents relating to Plan Issues (the "Joint APP Notice").  In creating the Joint Notice the Debtors shall reasonably and in good faith eliminate only duplicate topics.  The Debtors shall neither delete non-duplicative topics nor alter any Preliminary Topics.  Nothing in this Paragraph is intended to or shall limit any Participant's right to seek deposition testimony from any Alternative Plan Proponent on any topic relating to Plan Issues, subject to the procedures set forth

this Order. Within seven (7) days of their receipt of the Preliminary Topics, the

Debtors shall serve the relevant Joint Notice upon each Alternative Plan

Proponent. Notwithstanding the foregoing, nothing in this Order shall be

construed to imply that the Debtors approve, agree with, or have joined in or have

otherwise adopted or approved of any Preliminary APP Topics and the Debtors

reserve all of their rights with respect to the inclusion of such topics in the Joint

APP Notice.

iii)    Upon issuance of the Joint APP Notice, no Participant that participated in the

creation of the Preliminary APP Topics shall be deemed to have joined all

individual topics listed in the Joint APP Notice, nor shall any Participant waive,

or be deemed to have prejudiced in any way, any of its rights or legal positions by

joining the Joint APP Notice.

iv)    Within fourteen (14) days of receiving the Joint APP Notice, the Alternative Plan

Proponent shall serve any responses and objections to the Joint APP Notice

together with a list of designated witnesses for each of the noticed Rule 30(b)(6)

topics to which the Alternative Plan Proponent does not object and the dates and

locations when such witnesses will be made available to be deposed. Participants

and the Alternative Plan Proponent will meet and confer to resolve any disputes

regarding topics in the Joint APP Notice. Any disputes regarding the Joint APP

Notice that are not resolved during the foregoing meet and confer process may be

brought to the Court's attention no later than seven (7) days after the final meet

and confer in accordance with the procedure set out in Paragraph 17 of this Order.

v)      Rule 30(b)(6) depositions of the Alternative Plan Proponents must be completed no later than thirty (30) days after the Alternative Plan Proponent serves a list of designated witnesses.

vi)      The Debtors shall reasonably and in good faith identify a preliminary list of current employees of such Alternative Plan Proponent whose depositions, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, Debtors reasonably believe they require, and serve the preliminary list upon the Participants within seven (7) days following completion of the Rule 30(b)(6) deposition of each Alternative Plan Proponent.

vii)     Within seven (7) days following the Debtors' service of the preliminary list, Participants, including the Debtors and the Creditors' Committee, will meet and confer to discuss the preliminary list and make any necessary additions or deletions.

viii)     Within seven (7) days after the Participants' meet and confer, the Debtors, if applicable, shall serve one list upon the Alternative Plan Proponents identifying the employees of each Alternative Plan Proponent whose depositions Participants reasonably believe they require (the "<u>APP Deposition List</u>").  Any Participant that, after the meet and confer process, will not agree to join an APP Deposition List, may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve separate Rule 30(b)(1) deposition notices.

ix)      Within ten (10) days after service of the APP Deposition List, each Alternative Plan Proponent will serve any responses and objections to the APP Deposition

List as well as a proposed schedule for the depositions of their employees. Within

seven (7) days after the expiration of the time period for the Alternative Plan

Proponents to serve responses and objections to the APP Deposition List,

Participants will meet and confer to resolve any disputes regarding depositions

and scheduling thereof.

x)      Any disputes regarding the number of depositions, identity of witnesses, or the

deposition schedule that are not resolved during the foregoing meet and confer

process may be brought to the Court's attention no later than seven (7) days after

the final meet and confer in accordance with the procedure set out in Paragraph 17

of this Order.

**c)      Notice Periods for Depositions of Participants Other Than the Debtors or
Alternative Plan Proponents:**

i)      No later than twenty-one (21) days after the Debtors serve the Notice of

Substantial Completion, the Debtors shall make available to Participants a list of

those Participants, other than the Debtors and Alternative Plan Proponents, which

the Debtors intend to depose pursuant to Rule 30(b)(6) of the Federal Rules of

Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, (the

"Debtors' Participant Witness List"). The Debtors shall provide

contemporaneously with the Debtors' Participant Witness List a preliminary

suggested list of topics ("Preliminary Participant Topics") that they reasonably

and in good faith believe are appropriate topics for a Rule 30(b)(6) Deposition

Notice for each such Participant. Participants shall meet and confer as part of one

of the Groups identified in Paragraph 3(b) (excluding, as necessary, the

Participant(s) from which testimony is sought), and in the case of the Creditors'

Committee and the UST, separately, to draft consolidated lists of additional witnesses and topics for each such Rule 30(b)(6) deposition notice ("Group Witness and Topics List").  The Groups, the Creditors' Committee, and the UST shall then provide the Group Witness and Topics List to the Debtors within ten (10) days after service of the Debtors' Participant Witness List and the Preliminary Participant Topics list.  Any Participant that, after the meet and confer process, will not agree to join in a list of Group Topics may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Rule 30(b)(6) notice upon the relevant Participant(s).

ii)     Within ten (10) days of receipt of the Debtors' Participant Witness List, any Participant ("Noticing Participant") that seeks testimony pursuant to Rule 30(b)(6) from any Participant that is not identified on the Debtors' Participant Witness List, shall provide the Debtors with a list of topics that such Noticing Participant reasonably and in good faith believes are appropriate topics for a Rule 30(b)(6) Deposition Notice for each additional Participant from which it seeks testimony ("Noticing Participant Witness and Topic Lists").

iii)    The Debtors shall then consolidate the Preliminary Participant Topics, the Group Witness and Topics Lists, and the Noticing Participant Witness and Topic List to create one list for each Participant on the Debtors' Participant Witness List or the Noticing Participant Witness and Topic List (the "Joint Participant Notices").  In creating the Joint Participant Notices the Debtors shall reasonably and in good faith eliminate only duplicate topics.  The Debtors shall neither delete nor alter any non-duplicative topics.  Nothing in this Paragraph is intended to or shall limit

any Participant's right to seek deposition testimony from any Participant on any

topic relating to Plan Issues, subject to the procedures set forth in this Order.  The

Debtors shall serve the Joint Participant Notices on the relevant Participants

within seven (7) days of the later of: (i) service of the Group Witness and Topic

List, or (ii) service of the Noticing Participant Witness and Topic List.

iv)    Upon service of the Joint Participant Notices, no Participant that participated in

the creation of Group Witness and Topic Lists or Noticing Participant Witness

and Topic Lists shall be deemed to have joined all individual topics listed in the

Joint Participant Notices, nor shall any Participant waive, or be deemed to have

prejudiced in any way, any of its rights or legal positions by joining the Joint

Participant Notices.

v)    Within fourteen (14) days of receiving a Joint Participant Notice, the Participant

upon which a Joint Participant Notice is served shall serve any responses and

objections to the Joint Participant Notice together with a list of designated

witnesses for each of the noticed Rule 30(b)(6) topics to which the Participant

does not object and the dates and locations when such witnesses will be made

available to be deposed.  Participants will meet and confer to resolve any disputes

regarding topics in the Joint Participant Notice. Any disputes regarding the Joint

Participant Notice that are not resolved during the foregoing meet and confer

process may be brought to the Court's attention no later than seven (7) days after

the final meet and confer in accordance with the procedure set out in Paragraph 17

of this Order.

vi)     A Rule 30(b)(6) deposition of a Participant must be completed no later than thirty (30) days after a Participant upon which a Joint Participant Notice is served serves a list of designated witnesses.

vii)    The Participants shall meet and confer as part of one of the Groups identified in Paragraph 3(b) to draft a list of current employees of such Participant whose depositions, pursuant to Rule 30(b)(1) of the Federal Rules of Civil Procedure, as incorporated by Bankruptcy Rules 7030 and 9014, the other Participants reasonably believe they require ("Group 30(b)(1) Deposition Lists").  The Groups shall serve the Group 30(b)(1) Deposition Lists on the Debtors within ten (10) days following completion of the Rule 30(b)(6) deposition of each Participant. Any Participant that, after the meet and confer process, will not agree to join a Group 30(b)(1) Deposition List, may, in accordance with the procedure set out in Paragraph 17 of this Order, seek leave of the Court to serve a separate Rule 30(b)(6) deposition notice.

viii)   The Debtors shall then create one list identifying the employees of each Participant (other than the Debtors and Alternative Plan Participants) whose depositions other Participants reasonably believe they require (the "Consolidated 30(b)(1) Deposition List").  No later than seven (7) days after service of the Group 30(b)(1) Deposition Lists, the Debtors will serve the Consolidated 30(b)(1) Deposition List upon Participants.

ix)     Upon service of the Consolidated 30(b)(1) Deposition List, no Participant that participated in the creation of Group 30(b)(1) Deposition Lists shall be deemed to have joined all individual topics listed in the Consolidated 30(b)(1) Deposition

45

List, nor shall any Participant waive, or be deemed to have prejudiced in any way, any of its rights or legal positions by joining the Consolidated 30(b)(1) Deposition List.

x) Within ten (10) days after the Debtors' service of the Consolidated 30(b)(1) Deposition List, each Participant will serve any responses and objections to the Consolidated 30(b)(1) Deposition List as well as proposed schedules for the depositions of their employees. Within seven (7) days of the Debtors' service of the responses and objections to the Consolidated 30(b)(1) Deposition List and the proposed schedule for such depositions, Participants will meet and confer to resolve any disputes regarding depositions and scheduling thereof.

xi) Any disputes regarding the number of depositions, identity of witnesses, or the deposition schedule that are not resolved during the foregoing meet and confer process may be brought to the Court's attention no later than seven (7) days after the final meet and confer in accordance with the procedure set out in Paragraph 17 of this Order.

d) **Notice Periods for Depositions of Non-Participants:**

i) No later than twenty-one (21) days after the Debtors serve the Notice of Substantial Completion, Participants (including the Debtors and Alternative Plan Proponents) may serve deposition subpoenas under Rule 45 or letters of request or commissions under Rule 28 with respect to Non-Participants.

ii) Notwithstanding anything to the contrary in this Order, all requests for depositions of foreign Non-Participants shall be subject to the requirements of any applicable, governing foreign or international laws.

iii)     Participants shall, as part of one of the Groups identified in Paragraph 3(b) or, in the case of the Debtors and the Creditors' Committee, separately, reasonably and in good faith meet and confer regarding deposition subpoenas, letters of request or commissions to Non-Participants.

iv)     Upon request, and where such information is available, the Debtors shall provide the last known address of former employees of the Debtors or the name(s) of the attorney(s) representing such former employees of the Debtors.  The fact-witness deposition of any former employee of the Debtors who is a current employee of another Participant shall in no way limit the right of other Participants to such Participant's Rule 30(b)(6) deposition.

v)     If Barclays is a Non-Participant, Participants may not serve deposition subpoenas under Rule 45 or letters of request or commissions under Rule 28 with respect to former employees of the Debtors or their current or former affiliates currently employed by Barclays until ten (10) days after the completion of all Rule 30(b) depositions of the Debtors pursuant to paragraph 13(a).

e)    **Participation in Depositions:**  Except as to depositions of Non-Participants (which may appear and be represented by counsel), only Participants may attend and participate in depositions, either in person or, at the option and expense of the Participant, by telephone or video link.  Participants, and in the case of a Non-Participant deposition, the relevant Non-Participant(s), shall reasonably and in good faith confer in advance of each deposition regarding attendance at such deposition, the length of such deposition, the order of examination of the deponent, and allocations of time for questioning the deponent.  To the extent that any dispute relating to a deposition is not resolved during

47

the meet and confer period, such dispute may be brought to the Court's attention in

accordance with Paragraph 17 of this Order.  Every effort should be made to avoid

duplicative questioning.  Participants must act only in good faith in deposing witnesses,

and may not depose witnesses for any improper purpose, including solely to limit or

prevent another Group or Participant from deposing the witness.  All transcripts of the

deposition of any witness taken pursuant to this Order, and all exhibits used during such

deposition, shall, to the extent consistent with the terms of the Protective Order, be

uploaded to the Data Repository.

14.        **Requests for Admission:**  No Participant, including but not limited to the

Debtors, the Creditors' Committee and Alternative Plan Proponents, shall be required to

respond to any Request for Admission under Rule 36 of the Federal Rules of Civil

Procedure, as incorporated by Bankruptcy Rule 7036.

15.        **Discovery in Connection with Subsequent Filings**

a)        In the event that the Debtors or Alternative Plan Proponents materially amend any

provision in a plan of reorganization filed in the Chapter 11 Cases after the Notice of

Intent Deadline and such amendment has a material effect on any Participant,

Participants, including the Debtors, the Creditors' Committee and Alternative Plan

Proponents, may serve supplemental Document Requests on the party filing such

amendment, solely limited to issues raised by the amendment, no later than fourteen (14)

days following such filing.

b)        In the event that, after the Notice of Intent Deadline, any creditor, party in interest, or

group of creditors or parties in interest (i) files an objection to the Plan or an Alternative

Plan or (ii) files a new Alternative Plan, such filing party may serve Document Requests

on any Participant and any Participant may serve Document Requests upon such filing

party, provided that any such requests by or directed to such filing party are solely limited

to issues newly raised by such filings, no later than twenty-one (21) days following the

filing of such objection or Alternative Plan.

c)    Deadlines for the production of documents in response to Document Requests served

pursuant to Paragraphs 15(a) and (b) above, as well as deadlines for depositions and

interrogatories, if any, concerning the filings and/or filing parties referenced in

Paragraphs 15(a) and (b) above, shall be set by the Court, in the absence of an agreement

between interested Participants.

d)    Absent other agreement among Participants or order of the Court, the filing of an

Alternative Plan or an objection to the Plan or an Alternative Plan after the Notice of

Intent Deadline shall not provide a basis for anyone to seek additional discovery from any

Participant outside the deadlines set forth in this Order.

e)    The date that all fact discovery from the Debtors and Alternative Plan Proponents,

including but not limited to depositions of the Debtors and Alternative Plan Proponents,

is complete shall be the "Fact Discovery Cutoff."  The Debtors shall file with the Court a

"Notice of Fact Discovery Cutoff" within five (5) days of the completion of such fact

discovery.

**16.        Expert Discovery**

a)    **Expert Disclosures:** Participants shall identify all proposed testifying experts and serve

all disclosures required by Federal Rule of Civil Procedure 26(a)(2), as incorporated by

Bankruptcy Rules 7026 and 9014, including full expert reports, no later than thirty (30)

days after the Notice of Fact Discovery Cutoff is filed.  All experts that will receive Plan

Discovery must sign the Agreement to Abide by the Protective Order, and testifying experts must serve a copy of the signature page upon attorneys for the Debtors and the Creditors' Committee.

b)    **Rebuttal Experts:**  Participants shall identify and serve all disclosures regarding rebuttal experts, including rebuttal expert reports, no later than thirty (30) days after the service of initial expert disclosures pursuant to Paragraph 16(a).

c)    **Expert Depositions:**  All depositions of experts (including rebuttal experts) shall be completed no later than thirty (30) days after the service of the rebuttal expert disclosures pursuant to Paragraph 16(b).  Only Participants may attend and participate in depositions of experts, either in person or, at the option and expense of the Participant, by telephone or video link.  Participants shall reasonably and in good faith confer in advance of each expert deposition regarding attendance at such deposition, the length of such deposition, the order of examination of the deponent, and allocations of time for questioning the deponent.  To the extent that any dispute relating to an expert deposition is not resolved during the meet and confer period, such dispute may be brought to the Court's attention in accordance with Paragraph 17 of this Order.  Every effort should be made to avoid duplicative questioning.  Participants must act only in good faith in deposing expert witnesses, and may not depose expert witnesses for any improper purpose, including solely to limit or prevent another Group or Participant from deposing the expert.

17.        **Discovery Disputes:**  Any dispute with respect to Plan Discovery that Participants or non-Participants cannot resolve after good faith consultation may be presented to the Court by a letter from the attorney for the Participant or non-Participant seeking relief, with a copy to the attorneys for the Debtors, the Creditors' Committee, the

Participant or non-Participant opposing relief, and all Participants on the Official Service

List.  Any response thereto will be made by letter to the Court delivered within five (5)

days after service of the initial letter submission on the applicable Participant or non-

Participant and a copy provided to all Participants on the Official Service List.  Except

with prior leave of Court, no letter will exceed three (3) pages in length, and no additional

submissions will be permitted.  The Debtors and the Creditors' Committee will

communicate with the Court to schedule status conferences/hearings during which such

discovery disputes will be heard.

**18.**          **Status and Discovery Conferences:**

a)      The Court shall hold status conferences concerning Plan Discovery: (i) after the meet

and confer referenced in Paragraph 3(e) of this Order, if any, is completed; (ii) 30 to 60

days following the status conference in Paragraph 18(a)(i); (iii) after the Notice of

Substantial Completion is issued; and (iv) after the Notice of Fact Discovery Cutoff is

filed.  The Court may, at any status conference or otherwise upon proper application and

notice by any Participant, enter a scheduling order consistent with this Order establishing

deadlines, including for the production of documents.  The Debtors and the Creditors'

Committee will communicate with the Court to schedule the status conferences described

in this Paragraph.

b)      Upon application by a Participant or Non-Participant to hear a discovery dispute, the

Court shall schedule such further conferences or hearings as the Court deems appropriate.

**19.**          **Non-Waiver of Privilege:**  The inadvertent production by any Participant or

Non-Participant of any privileged document or information, or any other document or

information otherwise precluded or protected from disclosure, in response to any

discovery requests shall not be deemed a waiver of any applicable privilege or immunity with respect to such document or information (or the contents or subject matter thereof) or with respect to any other document or discovery.  Any such produced privileged or protected document must immediately be destroyed or returned (whether or not the receiving Participant disputes the claim of privilege or protection) to the producing Participant or Non-Participant or its attorneys on request or upon discovery of such inadvertent production by the receiving Participant, and the receiving Participant shall certify that all copies of such produced privileged or protected document have been or destroyed or returned.

20.      **Use of Materials Produced:**  Participants and Non-Participants shall have the right to object to any request for documents on the ground that such request appears to be calculated to lead to discovery for use in proceedings other than those related to Plan Issues.  In addition, absent further order of the Court, no discovery or information obtained pursuant to this Order may be introduced in evidence or otherwise disclosed in any other matter or proceeding unless properly obtained through discovery or otherwise in such other matter or proceeding.  Nothing in this Paragraph shall limit the UST's rights and obligations as described in Paragraph 23 of the Protective Order attached hereto as Exhibit B.

21.      **Hearing Dates and Pre-trial Conference:**  The Court will set dates for hearings related to confirmation of a plan of reorganization in the Chapter 11 Cases ("Plan Confirmation").  No later than forty-five (45) days prior to the first date set by the Court to consider Plan Confirmation (the "Confirmation Hearing") and no earlier than seventy-five (75) days after the Notice of Fact Discovery Cutoff is filed, the Court will schedule a

pre-trial conference to discuss, *inter alia*, briefing, exhibit lists, witnesses, and motions *in limine*.

22.        **Miscellaneous:**  Nothing in this Order shall prevent any Participant or Non-Participant from objecting to discovery and withholding documents from production pending resolution of the propriety of such objection on the ground that it would cause such Participant or Non-Participant to violate any statute, regulation, or rule, including, without limitation, any foreign data privacy laws, to which such Participant or Non-Participant is subject, or on the ground that it seeks documents, materials or information concerning a foreign bankruptcy proceeding or estate administration. Notwithstanding Paragraph 11, documents withheld under this subsection shall be logged with reasonable specificity.

23.        **Jurisdiction:** The Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Dated:  April __, 2011
       New York, New York

       _____
       HONORABLE JAMES M. PECK
       UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
In re                                                    :        **Chapter 11 Case No.**
                                                         :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,  :        **08-13555 (JMP)**
                                                         :
                                    **Debtors.**         :        **(Jointly Administered)**
----------------------------------------------------------------x

## NOTICE OF INTENT TO PARTICIPATE IN
## <u>DISCOVERY RELATED TO PLAN CONFIRMATION</u>

NOTICE IS HEREBY GIVEN that _____, represented by
_____, has filed Claim(s) Number(s) _____
against _____ in the amount of _____ and/or is a party of interest in the
confirmation of a plan in the above-captioned chapter 11 cases (the "<u>Chapter 11 Cases</u>") on the
basis that _____.

ACCORDINGLY, PLEASE TAKE FURTHER NOTICE that, subject to any objections by the
Debtors or the Statutory Committee of Unsecured Creditors appointed in the Chapter 11 Cases
and/or any limitations imposed by the Court, the above-named party in interest and its counsel
intends to participate as follows in Plan Discovery, as defined in the Order Establishing
Procedures in Connection with Discovery Related to Plan Confirmation and Other Issues,
entered by the Court on _____ [Docket No. ____]:
_____.


Dated: _____                  _____


**Contact Information for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Attorneys for Party in Interest (address, phone and email):**
_____
_____
_____
_____

**Contact Information for Advisors for Party in Interest (address, phone and email):**
_____
_____
_____
_____

A2

**Designation of Contact(s) to Receive Any Notice(s) Required Under the Order (address, phone and email):**

_____

_____

_____

**Group that Participant elects to join (pursuant to Paragraph 3(b) of the Order):**

_____

# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                                    :        **Chapter 11 Case No.**
                                                                         :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,        :        **08-13555 (JMP)**
                                                                         :
                    **Debtors.**                                       :        **(Jointly Administered)**
------------------------------------------------------------------x

## PROTECTIVE ORDER

In conjunction with the Order,[1] it is ORDERED by the Court that Plan Discovery

conducted in accordance with the Order shall be conducted subject to the following terms and

provisions set forth in this Protective Order; that this Protective Order shall govern all Plan

Discovery and shall, with respect to Plan Discovery, supersede any other Protective Order, non-

disclosure agreement or similar agreement between any Participant or non-Participant and the

Debtors; that all documents, deposition testimony, interrogatory answers, and other information

produced, given, provided or exchanged in connection with Plan Discovery (the "Discovery

Materials") by the Debtors, Participants, and/or non-Participants (collectively, "Producing

Parties") shall be and are subject to this Protective Order in accordance with the following

procedures, pursuant to sections 105(a) and 107(b) of title 11 of the United States Code (the

"Bankruptcy Code") and Bankruptcy Rule 9018, to protect the confidentiality of sensitive

information; and that, by signing the Agreement to Abide by the Protective Order, signatories

(each a "Signatory") have consented to this Protective Order and agree to be bound by its terms:

1.                          Any Producing Party or Receiving Party (defined below) may, as

reasonably appropriate, designate any Discovery Material as "Confidential" or "Attorneys' Eyes

---

[1] All capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the order entered by the Court (the "Order") to which this Protective Order (the "Protective Order") is annexed.

Only" in accordance with the terms below.  A party that designates Discovery Material as "Confidential" or "Attorneys' Eyes Only" is a "<u>Designating Party</u>."

**<u>Confidential Information</u>**

2.        As used in this Protective Order, "<u>Confidential Information</u>" refers to all Discovery Material revealed or produced by a Producing Party (whether in response to a Document Request, Interrogatory, Deposition, or other discovery device) that is designated as "Confidential."  This designation will, without more, subject the designated material or information to the provisions of this Protective Order; and such Confidential Information will be protected by, and may be used, disclosed, and disposed of only in accordance with, the provisions of this Protective Order.

3.        Any Producing Party may designate any Discovery Material as "Confidential" under the terms of this Protective Order if the Producing Party in good faith reasonably believes that the Discovery Material contains confidential, proprietary or commercially sensitive non-public information that requires the protections provided in this Protective Order.  For purposes of this Protective Order, Confidential Information includes, but is not limited to, all non-public materials containing information related to:  (i) financial or business plans, projections or valuations; (ii) proposed strategic transactions and other business combinations, negotiations, inquiries or agreements, including, but not limited to, joint ventures, mergers, material asset sales, purchases, buy-outs, consolidations, transfers of interests and partnerships; (iii) studies or analyses by internal or outside experts or consultants; (iv) financial or accounting results or data; (v) business, management and marketing plans and strategies; (vi) acquisition offers and expressions of interest; and (vii) contracts or agreements with or among affiliates, partners or Producing Parties.

**<u>Attorneys' Eyes Only Information</u>**

4.          As used in this Protective Order, "<u>Attorneys' Eyes Only Information</u>" refers to all Discovery Material revealed or produced by a Producing Party (whether in response to a Document Request, Interrogatory, Deposition, other discovery device or otherwise) that is designated as "Attorneys' Eyes Only." This designation will, without more, subject the designated material or information to the provisions of this Protective Order; and such Attorneys' Eyes Only Information will be protected by, and may be used and disposed of only in accordance with, the provisions of this Protective Order.

5.          A Producing Party may designate Discovery Material as "Attorneys' Eyes Only" under the terms of this Protective Order if the Producing Party in good faith reasonably believes that the Discovery Material contains highly confidential, highly sensitive proprietary or commercial non-public information that requires the highest level of protections provided in this Protective Order. For purposes of this Protective Order, Attorneys' Eyes Only Information includes all non-public materials containing information related, but not limited, to: (i) trade secrets; (ii) special formulas; (iii) proprietary software and/or computer programs; (iv) internal financial reports or plans that contain highly sensitive non-public information; (v) highly sensitive financial data; and (vii) other highly sensitive non-public commercial, financial, research or technical information.

6.          <u>Counter-Designation</u>: Any party receiving Discovery Material (hereinafter, a "<u>Receiving Party</u>") (whether or not that party demanded the documents) may designate, or counter-designate with a higher designation, information produced by any Producing Party that contains or is derived from information that the Receiving Party could have so designated had it produced the material, subject to the same requirements and limitations as would have applied to the original Producing Party.

B4

**Designation of Deposition and Hearing Testimony**

7.              Any Producing Party may designate a document as "Confidential" or "Attorneys' Eyes Only" by affixing the legend "Confidential" or "Attorneys' Eyes Only," as appropriate, to each page requiring the protections provided in this Protective Order in addition to an appropriate bates-stamp designation indicating the Producing Party.

8.              For transcripts of depositions or other testimony given in pretrial proceedings, any Producing Party may designate the specific testimony as "Confidential" or "Attorneys' Eyes Only" either on the record at the deposition or other proceeding, or in writing served on all Participants no later than seven (7) days following the date on which attorneys for the Producing Parties have received the final version of the transcript of the deposition or other proceeding.  If information designated as Confidential or Attorneys' Eyes Only will be disclosed or discussed at a deposition or other proceeding, the Designating Party shall have the right to seek to exclude any person not entitled to have access to such information, other than the deponent or witness, the attorney(s) of record (including their staff and associates), official court personnel, and stenographer and/or videographer.

9.              All documents, including pleadings, motions and other papers, containing, identifying, or referencing Confidential or Attorneys' Eyes Only Information filed with the Court shall be filed under seal, simultaneously with a redacted public copy of any such pleadings, motions and/or other papers, redacting only that information that is designated "Confidential" or "Attorneys' Eyes Only."   Any Receiving Party intending to use Confidential or Attorneys' Eyes Only Information at any hearing in connection with Plan Issues agrees to meet and confer in good faith with the Designating Party about appropriate steps that may be taken to protect the confidentiality of such material, including, but not limited to, agreeing to

B5

redact such Confidential or Attorneys' Eyes Only Information.  Such meeting shall take place as soon as reasonably practicable, but no later than the date of the hearing at which the document will be used.

10.    All transcripts not previously designated as either "Confidential" or "Attorneys' Eyes Only" shall be treated as "Attorneys' Eyes Only" under this Protective Order for the seven (7)-day period following receipt of the final version of the transcript and exhibits by attorneys for the Producing Parties, after which time only the portions of the testimony specifically designated as "Confidential" or "Attorneys' Eyes Only" pursuant to Paragraph 7 of this Protective Order shall be so treated.

11.    The court reporter shall bind transcript pages containing Confidential Information or Attorneys' Eyes Only Information separately and shall prominently affix the legend "Confidential" or "Attorneys' Eyes Only" to each appropriate page, as instructed by the Designating Party.

**Prohibited Information**

12.    In no event shall the Debtors produce or otherwise disclose the following information with respect to the Debtors: (a) any counterparty level information or (b) any asset level or valuation details (the "Prohibited Information").  In addition, Participants shall not solicit Prohibited Information from any other Participant or non-Participant, including any advisors to the Creditors' Committee.

**Access to Confidential and Attorneys' Eyes Only Information**

12.    13. Receiving Parties shall permit access to Confidential or Attorneys' Eyes Only Information only to persons specified in this Protective Order.  For purposes of this Protective Order, the term "Receiving Party" shall include any persons identified below in

Paragraphs 14 and 15 of this Protective Order that receive Confidential Information or

Attorneys' Eyes Only Information from a Receiving Party as permitted by this Protective Order.

13.                              14. Confidential Information may be disclosed, summarized,

described, characterized or otherwise communicated or made available in whole or in part by a

Receiving Party only to the following persons:

a. Outside attorneys of record, attorneys or accountants serving as a trustee, curator or

other fiduciary of an affiliate of a Debtor in a foreign proceeding, and those in-house

attorneys who represent the Receiving Party in matters related to Plan Issues, as well

as attorneys, clerical, paralegal, other staff and agents of those employed by or

working with such attorneys or accountants whose functions require access to

Confidential Information.  For purposes of the UST, this includes all attorneys and

staff of the UST Program involved in the Chapter 11 Cases, including members of the

Executive Office of the UST involved in the Chapter 11 Cases;

b. Any person indicated on the face of a document to be the author, addressee, or an

actual or intended recipient of the document;

c. Outside experts or consultants for the Receiving Party whose advice and consultation

are being or will be used by the Receiving Party in connection with Plan Issues, as

well as stenographic and clerical employees and agents of those experts or consultants

whose function require access to Confidential Information; provided that counsel

desiring to disclose Confidential Information to such experts or consultants and their

employees or agents shall first obtain a signed Agreement to Abide by the Protective

Order from each such expert or consultant and each of his/her personnel who would

B7

require access to Confidential Information, and counsel shall retain in his/her file an original or copy of each such signed Agreement to Abide by the Protective Order;

d.  The Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party;

e.  Officers, directors or employees of the Receiving Party who are assisting the Receiving Party's attorneys with matters related to Plan Issues;

f.  To the extent not otherwise covered by this Section, any potential witness or deponent and counsel for such witness or deponent, during the course of any testimony, including at any deposition, hearing or trial, and to the extent necessary, during any preparation for such testimony relating to Plan Issues.  Except when the Confidential Information is first exhibited at a deposition, hearing or trial to such person(s), counsel desiring to disclose Confidential Information to such person(s) shall (i) first obtain a signed Agreement to Abide by the Protective Order, and counsel for the Receiving Party shall retain a copy of each executed Agreement to Abide by the Protective Order, or (ii) represent on the record at the deposition, hearing or trial that such person(s) have read and agreed to the Agreement to Abide by the Protective Order;

g.  Professional vendors to whom disclosure is reasonably necessary for Plan Issues, provided they are informed that the material is Confidential Information;

h.  Any other person upon agreement among the Debtors, the Participants, the Designating Party, and the Receiving Party, provided that such person shall first execute the Agreement to Abide by the Protective Order, a copy of which shall be retained by counsel for the Designating Party; and

B8

i.   Any other person, only upon order of the Court.

For the avoidance of doubt, in the case of the Federal National Mortgage Association ( "Fannie Mae" ) and the Federal Home Loan Mortgage Corporation ( "Freddie Mac" ), to the Federal Housing Finance Agency ( the "FHFA" ), in its statutory capacity as the Conservator of Fannie Mae and Freddie Mac under the Housing and Economic Recovery Act of 2008, 12 U.S.C. Section 4501 et. seq. (2008) ("HERA" ). Moreover, nothing in this Protective Order shall affect, limit, or otherwise prejudice  FHFA's rights, powers and  privileges under HERA as the Conservator of Fannie Mae and Freddie Mac.

14.                   15. Attorneys' Eyes Only Information may be disclosed, summarized, described, characterized or otherwise communicated or made available in whole or in part by a Receiving Party only to the following persons:

a.   Outside attorneys of record, attorneys or accountants serving as trustee, curator or other fiduciary of an affiliate of a Debtor in a foreign proceeding, and those in-house attorneys who represent the Receiving Party in matters related to Plan Issues, as well as attorneys, clerical, paralegal, other staff and agents of those employed by or working with such attorneys or accountants whose functions require access to Attorneys' Eyes Only Information.  For purposes of the UST, this includes all attorneys and staff of the UST Program involved in the Chapter 11 Cases, including members of the Executive Office of the UST involved in the Chapter 11 Cases;

b.   Any person indicated on the face of a document to be the author, addressee, or an actual or intended recipient of the document;

c.  Outside experts or consultants for the Receiving Party whose advice and consultation are being or will be used by the Receiving Party in connection with Plan Issues, as well as stenographic and clerical employees and agents of those experts or consultants whose functions require access to Attorneys' Eyes Only Information; provided that counsel desiring to disclose Attorneys' Eyes Only Information to such experts and their employees or agents obtain a signed Agreement to Abide by the Protective Order from each such expert or consultant and each of his/her employees or agents who would require access to Attorneys' Eyes Only Information, and counsel for the Receiving Party shall retain in his/her file an original or copy of each such signed Agreement to Abide by the Protective Order;

d.  Professional vendors to whom disclosure is reasonably necessary for Plan Issues, provided they are informed that the material is Attorneys' Eyes Only Information;

e.  The Court and its authorized staff, including official and freelance court reporters and videotape operators hired by the Receiving Party;

f.  To the extent not otherwise covered by this Section, any potential witness or deponent and counsel for such witness or deponent, during the course of any testimony, including at any deposition, hearing or trial, and to the extent necessary, during any preparation for such testimony, relating to Plan Issues. Counsel desiring to disclose Attorneys' Eyes Only Information to such persons shall, except as provided herein, (i) serve notice on the applicable Producing Party prior to disclosure and at least two (2) business days prior to the testimony to allow the Producing Party to object to such disclosure, and (ii) obtain a signed

B10

Agreement to Abide by the Protective Order from the person(s) to whom disclosure is intended to be made and counsel for the Receiving Party shall retain a copy of each executed Agreement to Abide by the Protective Order.  Any objections to disclosure that cannot be resolved by the parties shall be raised with the Court in accordance with Paragraph 17 of the Order.  If counsel desiring to disclose Attorneys' Eyes Only Information reasonably and in good faith anticipates the need for such disclosure for the first time at a deposition, hearing or trial, counsel shall provide such notice to the Producing Party as is reasonable under the circumstances, and shall in any event represent on the record at such deposition, hearing or trial that the person(s) to whom disclosure is intended to be made has read and agreed to the Agreement to Abide by the Protective Order;

g.    Any other person upon agreement among the Debtors, the Participants, the Designating Party, and the Receiving Party, provided that such person shall first execute the Agreement to Abide by the Protective Order, a copy of which shall be retained by counsel for the Designating Party; and

h.    Any other person, only upon order of the Court.

For the avoidance of doubt, in the case of the Federal National Mortgage Association ( "Fannie Mae" ) and the Federal Home Loan Mortgage Corporation ( "Freddie Mac" ), to the Federal Housing Finance Agency ( the "FHFA" ), in its statutory capacity as the Conservator of Fannie Mae and Freddie Mac under the Housing and Economic Recovery Act of 2008, 12 U.S.C. Section 4501 et. seq. (2008) ("HERA" ). Moreover, nothing in this Protective Order shall affect, limit, or otherwise prejudice  FHFA's rights, powers and  privileges under HERA as the Conservator of Fannie Mae and Freddie Mac.

B11

15.                    16. Access to Protected Material:  Only persons authorized to receive

Confidential Information or, Attorneys' Eyes Only Information or Restricted Information under

this Protective Order shall have access to such material.  Receiving Parties shall not provide

access to or disclose Confidential Information or, Attorneys' Eyes Only Information or

Restricted Information to any person not authorized to access such material under this Protective

Order.  Receiving Parties shall store all Confidential Information or, Attorneys' Eyes Only

Information or Restricted Information that they receive in a secure manner.  Receiving Parties

are barred from using Confidential Information or, Attorneys' Eyes Only Information or

Restricted Information except in relation to Plan Issues and only for the purposes permitted by

the Protective Order and the Order.   If Confidential or, Attorneys' Eyes Only Information or

Restricted Information is disclosed to any person other than in a manner authorized by this

Protective Order, the disclosing party shall, immediately upon learning of such disclosure,

inform the Producing Party of all pertinent facts relating to such disclosure and shall make

reasonable good faith effort to retrieve the Confidential or, Attorneys' Eyes Only or Restricted

Information and to prevent disclosure by each unauthorized person who received such

information.

16.                    17. No Restrictions on Use of Public or Own Information:

Notwithstanding any other provision of this Protective Order, this Protective Order does not

restrict in any way a Participant's or non-Participant's use of:

    a. Its own information or its right to provide such information to any other person,

        even if others have designated similar or identical information as Confidential

        Information or Attorneys' Eyes Only Information.  A person's use or disclosure

        of its own information shall not waive the protections of this Protective Order,

and shall not entitle any Participant or non-Participant to use or disclose such

Discovery Materials, or the contents thereof, in violation of this Protective Order,

unless such disclosure of a person's own information causes the Confidential or

Attorneys' Eyes Only Information to become available to the public;

b.  Information that is in the public domain or becomes public without violation of

this Protective Order; and

c.  Information that a Participant or non-Participant develops or obtains through

proper means without violation of this Protective Order.

**Use of Discovery Materials**

17.                          18. Receiving Parties shall use Confidential or, Attorneys' Eyes Only

and Restricted Information produced during Plan Discovery only for matters related to Plan

Issues.  Confidential or, Attorneys' Eyes Only and Restricted Information shall not be made

public by any Receiving Party, shall be used only by persons permitted access to it as provided

for in this Protective Order, and shall be disclosed only to persons specified herein.

18.                          19. Nothing herein shall prevent disclosure beyond the terms of this

Protective Order if the Designating Party designating the material as "Confidential" or

"Attorneys' Eyes Only" specifically consents in advance in writing to such disclosure, or if the

Court, after notice to all Participants and the Designating Party, orders such disclosure.

**Restricted Information**

19.                          Other than upon good cause shown and in response to a reasonably

limited, targeted search request, no Participant or Non-Participant shall be required to produce or

otherwise disclose (a) any counterparty level information or (b) any asset level or valuation

information (hereinafter, "Restricted Information").   Designing information as "Restricted

Information" will, without more, subject the designated material or information to the provisions

of this Protective Order; and such Restricted Information will be protected by, and may be used and disposed of only in accordance with, the provisions of this Protective Order. All signatories acknowledge that Restricted Information, if disseminated, will directly and adversely impact that ability of the Debtors to maximize the value of the estate assets for the benefit of its creditors. Accordingly, Restricted Information shall not be uploaded to the Data Repository, but shall instead be produced solely in accordance with the terms of this Paragraph 19, solely to the requesting party and in a manner reasonably calculated to preserve its extremely sensitive and highly confidential nature. Restricted Information may not be shared except to named individuals agreed upon prior to disclosure of such Restricted Information. Restricted Information may only be used in depositions, hearings, filings or other proceedings in connection with Plan Issues in a manner previously agreed to in writing by the Producing Party or as otherwise ordered by the Court and may not be used for any other purpose within or outside of these Chapter 11 Cases.

**Inadvertent Failure to Designate**

20.	An inadvertent failure to designate qualified information as "Confidential" or "Attorneys' Eyes Only" that a Producing Party discloses or otherwise produces or generates does not waive the Producing Party's right thereafter to designate Discovery Material as Confidential or Attorneys' Eyes Only Information under this Protective Order unless (i) with respect to any information newly-designated as "Confidential," such information has become available to the public or (ii) with respect to any information newly-designated as "Attorneys' Eyes Only," such information has been shared with individuals who are not listed in Paragraph 14. Upon receipt of such designation, each Receiving Party must make reasonable efforts to assure that the material is treated in accordance with the provisions of this Protective Order. The Designating Party shall promptly produce new copies of the material at issue, with

the proper designation, after which Receiving Parties shall promptly destroy the copies with the

improper designation and shall request that all persons to whom the Receiving Party has

provided copies do likewise.  The Receiving Party shall inform the Designating Party when

destruction of such copies has been completed.

**Non-Waiver of Privilege and Other Protections**

21.                  Nothing in this Protective Order shall preclude any objection to

disclosure of information by a Producing Party on the ground that such information is protected

or prohibited from disclosure by the attorney-client privilege, the joint client privilege, the

community of interest privilege, the work-product immunity, or any other legally cognizable

privilege, immunity or other protection, including without limitation any applicable U.S. or

foreign data privacy laws.  If information protected or prohibited from disclosure is inadvertently

or mistakenly produced, such production shall in no way prejudice or otherwise constitute a

waiver of, or estoppel as to, any claim of privilege or work-product immunity for such

information or any other information that may be protected from disclosure by the attorney-client

privilege, the work-product or other immunity, or any other legally cognizable privilege or other

protection.  If a Producing Party has inadvertently or mistakenly produced Discovery Material

that contains information protected or prohibited from disclosure, then upon written request by

the Producing Party after the discovery of such inadvertent or mistaken production, the

Receiving Party shall use all commercially reasonable efforts to return or destroy the Discovery

Material for which a claim of inadvertent production is made and all copies of it, including any

work product containing, identifying, or referencing such Discovery Material within seven (7)

days of such request, and the Receiving Party shall not use such Discovery Material for any

purpose other than in connection with a motion to compel production of the Discovery Material.

The Receiving Party returning such Discovery Material may then move the Court for an order compelling production of the Discovery Material, but that motion shall not assert as a ground for entering such an order the fact or circumstance of the inadvertent production of the Discovery Material.

**Relief**

22.        This Protective Order shall not prevent any party and/or Signatory from applying to the Court for relief therefrom, or from applying to the Court for further or additional protective orders.

23.        Nothing in this Protective Order shall prevent any Signatory from producing documents received subject to this Protective Order and that are in his, her or its possession, in response to a subpoena or other compulsory legal process.  Unless prohibited from doing so by applicable law, prompt written notice as soon as practicable under the circumstances shall be given to the Designating Party before such production or other disclosure is to be made. The party producing the documents subject to this Protective Order shall reasonably cooperate with the Designating Party to obtain an appropriate protective order or other reliable assurance that confidential treatment will be accorded to the Confidential or Attorneys' Eyes Only Information being produced.   Nothing herein shall prevent the UST from disclosing information designated as Confidential or Attorneys' Eyes Only for civil and criminal law enforcement purposes or in compliance with a subpoena or court order.  To the extent Confidential Information is sought pursuant to any request made under the Freedom of Information Act, or other applicable law requiring disclosure, prior to the disclosure of any documents or information deemed as Confidential or Attorneys' Eyes Only, the UST shall provide the Designating Party

with prompt written notice to give the Designating Party an opportunity to object to the

disclosure of any specific portion of the document or information.

**Objections to Designations**

24.          If any Receiving Party objects to the designation of any Discovery

Material as "Confidential," or "Attorneys' Eyes Only," the Receiving Party shall first identify

the specific material as to which it objects as well as the basis for its objection in writing to the

Designating Party.  Such parties shall confer in good faith to attempt to resolve any dispute

regarding any such designation.  If such parties are unable to resolve such dispute, the objecting

party may seek appropriate relief from the Court, in accordance with Paragraph 17 of the Order;

provided, however, that all Discovery Material to which the objection applies shall continue to

be treated by Receiving Parties as Confidential Information or Attorneys' Eyes Only

Information, as designated by the Designating Party, in accordance with this Protective Order,

until such objection is resolved.  No Signatory shall contest an objecting party's request for

reasonably expedited consideration for such relief.

25.          No party shall be obligated to challenge the propriety of a

confidentiality designation, and failure to do so shall not preclude a subsequent challenge to such

designation.

**Appeal**

26.          In the event that any Signatory appeals from any decision of the Court

relating to Plan Discovery, such Signatory shall file an application to the appropriate appellate

court, within seven (7) days of the filing of the notice of appeal, to maintain under seal any

Discovery Material filed with the appellate court that contains or discloses Confidential

Information and/or Attorneys' Eyes Only Information.  The provisions of this Paragraph may be

waived only with the written consent of the Designating Party.

**Scope of Protective Order**

27.                In the event that any Confidential or Attorneys' Eyes Only Information

is used in any court proceeding relating to Plan Issues, that material shall not lose its status as

Confidential or Attorneys' Eyes Only Information through such use and such use shall remain

subject to the terms of this Protective Order.

28.                This Protective Order shall survive the termination of the Plan

Confirmation process, whether by order, final judgment, settlement or otherwise, and shall

thereafter continue in full force and effect.

29.                Nothing in this Protective Order shall require any Producing Party to

respond to discovery in any manner, including by producing documents, that would cause such

Producing Party to violate any statute, regulation, or rule, including, without limitation, any

international or foreign privacy laws, to which such Producing Party is subject.

30.                This Protective Order does not alter, modify, or expand any obligation

or duty of any party to produce any Confidential or Attorneys' Eyes Only Information.

31.     Nothing herein shall be construed to affect in any way the admissibility of any

document, testimony, or other evidence at the trial of any action relating to Plan Issues.

**Procedures After Plan Confirmation**

32.                After Plan Confirmation, counsel for the Receiving Parties may retain

archival copies of deposition exhibits, Court exhibits, documents and other materials submitted

to the Court, deposition transcripts and transcripts of court proceedings, one copy or sample of

Confidential or, Attorneys' Eyes Only or Restricted Information produced by a Producing Party,

and any summaries, notes, abstracts or compilations of Confidential or, Attorneys' Eyes Only or Restricted Information, solely for reference in the event of a dispute over the use or dissemination of information. Such material shall continue to be treated as Confidential or, Attorneys' Eyes Only or Restricted Information, as applicable, in accordance with this Protective Order. After Plan Confirmation, counsel for Receiving Parties promptly either shall return all additional Confidential or, Attorneys' Eyes Only or Restricted Information in his/her possession, custody or control or in the custody of any authorized agents, outside experts and consultants retained or utilized by counsel for the Receiving Party to counsel for the Producing Party who has produced such Confidential or, Attorneys' Eyes Only or Restricted Information, respectively, in Plan Discovery, or shall certify destruction thereof to such counsel. As to Confidential or, Attorneys' Eyes Only or Restricted Information reflected in computer databases or backup tapes, the Receiving Party promptly shall delete all such Confidential or, Attorneys' Eyes Only and Restricted Information or shall impose reasonable safeguards and procedures to prevent unauthorized access to such Confidential or, Attorneys' Eyes Only or Restricted Information.

**Modification**

33.        No modification of this Protective Order shall be binding or enforceable unless in writing and signed by the Debtors and each Participant adversely affected by such modification, or by further order of the Court.

**Choice of Law**

34.    This Protective Order shall be governed and construed in accordance with the laws of the State of New York.

**<u>Jurisdiction</u>**

      36.     The Court shall retain jurisdiction over any matters related to or arising from the

implementation of the Protective Order.

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
In re                                                                :        **Chapter 11 Case No.**
                                                                     :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :        **08-13555 (JMP)**
                                                                     :
                                   **Debtors.**               :        **(Jointly Administered)**
--------------------------------------------------------------------x

## AGREEMENT TO ABIDE BY THE PROTECTIVE ORDER

I hereby certify that I have read the Protective Order[1] SO ORDERED by the Court

in the above-captioned chapter 11 cases (the "Chapter 11 Cases") on April __, 2011 [Docket No.

___]. I further certify that I understand the terms and provisions of the Protective Order and agree

to be fully bound by them, and hereby submit to the jurisdiction of the United States Bankruptcy

Court for the Southern District of New York for purposes of the Protective Order's enforcement. I

understand and agree, in particular, that I may not use any Confidential or Attorneys' Eyes Only

Information, or any copies, excerpts or summaries thereof, or materials containing Confidential or

Attorneys' Eyes Only Information derived therefrom, as well as any knowledge or information

derived from any of these items, for any purpose other than matters related to Plan Discovery, in

accordance with the provisions of the Protective Order, including, without limitation, any business

or commercial purpose.

I further understand that failure to abide fully by the terms of the Protective Order

may result in legal action against me, such as for contempt of court and liability for monetary

damages.

Dated: _____            Agreed: _____

_____
[1] Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the
Protective Order.

# EXHIBIT D

**Technical Specifications for Documents to be Produced to the Debtor to Be Uploaded to the Data Repository**

Participants and non-Participants producing documents to the Debtors must produce electronically stored documents in the following electronic format:

1.  *Emails*.  E-mails shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  E-mail attachments shall be handled according to the provisions below applicable to loose electronic documents and shall not be separated from the emails to which they are attached.  Native files for e-mails shall be maintained, and such files shall be produced if the receiving party can demonstrate a need for such native files.

2.  *Electronic Documents*.  Word and other electronic documents shall be produced as single-page TIFF images with accompanying full text and load file (DAT).  Meta data fields included with the load file should be provided in accordance with *Appendix 1*.  For Excel or other spreadsheet files, the native file or a pdf version of the file shall be produced.  Native files for all other electronic documents shall be maintained, and such files shall be produced, with appropriate redactions, if the receiving party can demonstrate a particularized need for such native files.

3.  *Hard copy documents*.  Hard copy documents shall be produced as single-page TIFF images with accompanying full OCR text and load file (DAT).

4.  *TIFF Images Generally*.  Any TIFF images produced by Participants or non-Participants shall consist of (a) single-page, black and white, 300dpi group IV TIFF images with extension ".tif"" and (b) text files, named after the bates number of the document, with extension ".txt".  TIFF images may not be compressed using JPEG

D2

compression.  For instances in which the original file is in color and the color is

necessary for interpretation of the document (charts, pictures, etc.), produce

medium quality JPEG in place of single page tiff file.  Metadata shall be provided

in a delimited file with a ".dat" file extension and ASCII 020 and 254 delimiters for

column break and text qualifier.  The first line shall be the header with field names,

and each subsequent line shall contain the fielded data for each document.

5.      _Shipment of electronic data_.  Electronic data productions may be transmitted

electronically via Secure File Transfer Protocol (SFTP), FTP over SSH or

physically transported using electronic storage media such as, CDs, DVDs or hard

drives.  The physical media label should contain the case name and number,

production date, and bates range being produced.  Each transmission of data should

include a collection "manifest" report which provides a list of files collected, their

location, and their MD5 hash values.

**Appendix 1**

| Field | Description |
|---|---|
| BegBates | Page ID of first page in a document. |
| EndBates | Page ID of last page in a document. |
| BegAttach | BegBates of parent record. |
| EndAttach | BegBates of last attached document in family. |
| From | Author of the e‑mail message. |
| To | Main recipient(s) of the e-mail message. |
| CC | Recipient(s) of "Carbon Copies" of the e-mail message. |
| BCC | Recipient(s) of "Blind Carbon Copies" of the e-mail message. |
| DateSent | Sent date of an e-mail message. |
| TimeSent | Time the e-mail message was sent. |
| EMail_Subject | Subject of the e-mail message. |
| Author | Author field value pulled from metadata of the native file. |
| Title | Title field value extracted from the metadata of the native file. |
| Custodian | Textual value of custodian. |
| DateCreated | Creation date of the native file. |
| TimeCreated | Creation time of the native file. |
| EntryID | Unique identifier of e-mails in mail stores. |
| FileDescription | File extension or other description of native file type. |
| Filename | Original filename of native file. Contains subject of e-mail message for e-mail records. |
| Filesize | Size of native file, in bytes. |
| MD5Hash | MD5 hash-128-bit output. |
| Attach | Semi-colon delimited string of first level attachments in the e-mail. |
| DateLastMod | Date the native file was last modified. |
| TimeLastMod | Time native file was last modified. |
| PgCount | Number of pages in a document. |
| NativeFile | Logical file path to the native file. |
| OCRPath | Logical file path to the OCR text. |