Hearing Date and Time:  April 13, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Deadline:  August 6, 2011 at 4:00 p.m. (Prevailing Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                          :

In re                                                                                     :        Chapter 11 Case No.
                                                          :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,         :        08-13555 (JMP)
                                                          :

                Debtors.                                       :        (Jointly Administered)
                                                          :
                                                          :
------------------------------------------------------------------x

**DECLARATION OF MICHAEL E. LASCHER IN SUPPORT OF
MOTION OF LEHMAN COMMERCIAL PAPER INC. PURSUANT TO
SECTION 363 OF THE BANKRUPTCY CODE FOR AUTHORITY TO
CONSENT TO ITS NON-DEBTOR AFFILIATE LEHMAN ALI INC. (I) ENTERING
INTO COMMITMENT LETTER WITH INNKEEPERS USA TRUST;
(II) SUPPORTING THE CHAPTER 11 PLAN OF CERTAIN AFFILIATES
OF INNKEEPERS USA TRUST; AND (III) PARTICIPATING IN THE AUCTION
<u>FOR CERTAIN OF THE ASSETS OR EQUITY OF INNKEEPERS USA TRUST</u>**

Pursuant to 28 U.S.C. § 1746, I, Michael E. Lascher, declare:

1.       I submit this declaration in support of the *Motion of Lehman Commercial Paper Inc. Pursuant to Section 363 of the Bankruptcy Code for Authority to Consent to its Non-Debtor Affiliate Lehman ALI Inc. (I) Entering into Commitment Letter with Innkeepers USA Trust; (II) Supporting the Chapter 11 Plan of Certain Affiliates of Innkeepers USA Trust; and (III) Participating in the Auction for Certain of the Assets or Equity of Innkeepers USA Trust* [Docket No. 15259] (the "<u>Motion</u>")[1] filed on March 22, 2011 in the above-referenced chapter 11 cases of Lehman Commercial Paper Inc. ("<u>LCPI</u>") and its debtor affiliates (collectively, the "<u>Debtors</u>").

2.       I have worked at Lehman since 2004, specializing in commercial real estate finance and capital markets.  While at Lehman, I originated, structured and closed

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

complex loan transactions for securitization and syndication, and assisted in the marketing of whole loans, b-notes and mezzanine loans to secondary market participants. Prior to joining Lehman I practiced law for five years as an associate in the real estate group of Cadwalader, Wickersham & Taft LLP. I received a bachelor's degree from the University of Pennsylvania and a juris doctor from the Benjamin N. Cardozo School of Law.

3. I am currently employed by LAMCO LLC and responsible for the oversight of Lehman's hospitality investments. In this capacity, I have either been actively involved, or have overseen Lehman employees who have been actively involved, in finalizing the terms of the transactions described in this Declaration and in the Motion.

## Innkeepers

4. In June 2007, ALI originated a $367,658,725 financing (the "Financing"), among other financings, with Innkeepers. The Financing was bifurcated into a $250,000,000 floating-rate first mortgage loan (the "ALI Mortgage Loan") and a $117,658,725 floating-rate mezzanine loan (the "Mezzanine Loan" and, together with the ALI Mortgage Loan, the "Loans"). ALI remains as the lender under the ALI Mortgage Loan, with a current balance of approximately $220.2 million. As set forth in the Motion, although ALI is the current holder of the ALI Mortgage Loan, LCPI has the economic interest in the Mortgage Loan. Therefore for convenience and where applicable, the term "Lehman" is used to refer to LCPI and ALI.

5. Beginning in April 2010, as Innkeepers' financial situation became more difficult, Innkeepers and ALI engaged in numerous negotiations to outline a potential restructuring of Innkeepers that would maximize ALI's recovery on the ALI Mortgage Loan. These negotiations continued, and resulted in the Plan Support Agreement (the "PSA"), which provided for the terms of a proposed restructuring of Innkeepers. On July 19, 2010, Innkeepers

filed for chapter 11 relief, and on September 1, 2010, the Bankruptcy Court in the Innkeepers' chapter 11 cases entered an order denying Innkeepers the authority to enter into the PSA and consummate the restructuring as provided for therein. Although the authority to enter into the PSA was denied, ALI, through an affiliate, provided Innkeepers a DIP loan in an amount not to exceed $17.5 million (the "Solar DIP Facility"), the authority for which had been granted by this Court.

6.      After denial of the PSA motion, the Debtors have continued to work closely with their legal and financial advisors, with Innkeepers' advisors and with the major constituencies in the Innkeepers' chapter 11 cases to reach an agreement on the terms of a restructuring of Innkeepers which would be both beneficial to the Debtors' estates and creditors and, at the same time, enable Lehman to maximize the recovery on account of the ALI Mortgage Loan. After extensive negotiations, the Debtors, along with Five Mile and Midland, have reached an agreement with Innkeepers as to the terms of a stalking-horse bid for a substantial portion of the Innkeepers enterprise (64 of the 71 hotel properties).

## The Commitment Letter and Stalking Horse Bid

7.      The Debtors, Innkeepers, Five Mile and Midland have entered into the Commitment Letter which provides for the joint Stalking Horse Bid by ALI and Five Mile subject to higher or better offers. The terms of the stalking-horse bid are summarized below:

(a) ALI and Five Mile will post a $20 million Deposit, funded equally by each party. The Deposit will only be released to Innkeepers upon a breach of the Commitment Letter by ALI or Five Mile which results in the failure of the ALI/Five Mile Transaction to close.

(b) ALI will exchange its $220.2 million ALI Mortgage Loan for (a) up to 50% of the New Equity in reorganized Innkeepers and (b) at least $26.2 million in cash.

(c) The Solar DIP Facility will be repaid, in full, in cash.

(d) Five Mile will purchase up to 50% of the New Equity for cash in the amount of $174.1 million.

(e) ALI and Five Mile anticipate jointly selling or causing the sale of up to 20% of the New Equity to a third party investor and a new property manager. The Debtors, however, seek authority to consummate the ALI/Five Mile Transaction independent of whether a third party investor and new property manager acquire such equity.

(f) The Stalking Horse Bid will be marketed and, if other bids are received, the assets will be subject to an Auction, at which Innkeepers will choose the highest and best bid for the assets. All other bids must be enterprise-wide, according to the same general structure as the Stalking Horse Bid and received no later than April 25, 2011. Further, any other bid must provide for the payment in cash to ALI of at least $200.3 million for its interest in Innkeepers. If necessary, an Auction will be held on May 2, 2011.

(g) The transaction set forth in the Stalking Horse Bid will be effectuated through an Innkeepers' chapter 11 plan.

(h) The Commitment Letter contains a Fiduciary Out for the benefit of Innkeepers.

The result of these transactions, if all of the transactions are consummated, will be ALI holding 40% of the new equity in reorganized Innkeepers, receiving a cash payment of approximately $61 million, a return of ALI's $10 million deposit and a repayment of the Solar DIP Facility.

8. If Innkeepers receives other bids for the assets, an Auction will be held. It is in the best interests of Lehman for ALI to be authorized to bid at the Auction subject to the consent of the Board of Directors and the Creditors' Committee. In the event that Lehman is not part of the successful bidding group at the Auction, ALI will receive at least $200.3 million in cash on account of its interest in the ALI Mortgage Loan. I believe, in my business judgment, and after considering the alternatives, that the transactions contemplated by the Commitment Letter and the Stalking Horse Bid provide the best recovery, under the circumstances, on account of ALI's interest in Innkeepers.

**The Deposit**

9. The Commitment Letter requires that ALI make a deposit in the amount of $10 million <u>governed by an escrow agreement</u> (the "<u>Escrow Agreement</u>") to secure its obligations under the Stalking Horse Bid. The terms of the Commitment Letter allow for this Deposit to be made from either available funds or a $10 million pledge funded pursuant to the Solar DIP Facility. As of the date hereof, less than $10 million had been funded under the Solar DIP Facility. As a result, ALI was unable to make the Deposit by pledging funds from the Solar DIP Facility. Therefore, pursuant to the protocols set forth in the order authorizing the Debtors to continue their cash management system,[2] ALI and LCPI are entering into a secured note pursuant to which LCPI lent ALI $10 million to use for the Deposit.

10. The Commitment Letter, the draft Escrow Agreement and the note all provide that the Deposit is expressly subject to this Court's approval of LCPI consenting to ALI entering into the Commitment Letter and all funds will be immediately returned to LCPI if this Court does not approve the transaction. I believe, in my business judgment that the Deposit and LCPI's funding thereof are in the best interests of LCPI and its creditors.

**Conclusion**

11. In connection with obtaining the requisite internal approvals at Lehman, as is customary, my team and I discussed the issues set forth in the Motion and the proposed transaction with the Real Estate Group's Investment Committee and the transaction was approved by the Investment Committee, by Bryan Marsal and by the Board of Directors.

12. I have concluded in my considered business judgment that the transactions contemplated by the Commitment Letter and the Stalking Horse Bid provide the Lehman with its

---

[2] Docket Number 1416.

maximum recovery under the circumstances on account of ALI's interest in Innkeepers. If the transactions set forth in the Stalking Horse Bid are consummated, ALI will hold a significant amount of the new equity in reorganized Innkeepers and will also receive a significant up-front cash payment. In the event that an Auction is held and Lehman is not the successful bidder at the Auction, ALI will still receive at least $200.3 million in cash on account of the ALI Mortgage Loan. I have concluded based on my business experience and after consultation with the other real estate professionals at Lehman that ALI's entry into the Commitment Letter and consummation of the transactions set forth therein and in the Stalking Horse Bid are in the best interests of LCPI and its estate.

13. I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 11th day of April, 2011.

/s/ Michael E. Lascher
Michael E. Lascher