WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
:
**In re**                                                   :    **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,    :    **08-13555 (JMP)**
:
**Debtors.**                         :    **(Jointly Administered)**
:
---------------------------------------------------------------------x

**NOTICE OF FILING OF (I) REVISED ORDER PURSUANT TO**
**SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING**
**THE PURCHASE OF NOTES ISSUED BY PINE CCS, LTD. FROM BARCLAYS**
**BANK PLC AND THE TERMINATION OF THE PINE SECURITIZATION**
**AND (II) REVISED FORM OF NOTE SALE AND TERMINATION AGREEMENT**

In connection with the hearing to be held on April 13, 2011 at 10:00 a.m. with

respect to the *Motion Pursuant to Sections 105 and 363 of the Bankruptcy Code for Approval of*

*the Purchase of the Notes Issued by Pine CCS, Ltd. from Barclays Bank PLC and the*

*Termination of the Pine Securitization* [Docket No. 15283] (the "Motion"), and all related

documents thereto, Lehman Commercial Paper Inc. and Lehman Brothers Holdings Inc. and

their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in

possession, hereby file (i) a revised form of order approving the Motion (the "Revised Order)

and (ii) a revised form and an executed copy of the Note Sale and Termination Agreement (the

"Agreement").

Attached hereto as "Exhibit A" is a clean copy of the proposed Revised Order, and attached hereto as "Exhibit B" is a blacklined copy of the proposed Revised Order, which is marked against the version filed with the Motion.

Attached hereto as "Exhibit C" is a clean copy of the executed Note Sale and Termination Agreement, and attached as "Exhibit D" is a blacklined copy of the executed Note Sale and Termination Agreement, which is marked against the version filed with the Motion.

Dated:  April 12, 2011
        New York, New York


                                /s/ Jacqueline Marcus
                                Jacqueline Marcus

                                WEIL, GOTSHAL & MANGES LLP
                                767 Fifth Avenue
                                New York, New York 10153
                                Telephone: (212) 310-8000
                                Facsimile: (212) 310-8007

                                Attorneys for Debtors
                                and Debtors in Possession

**<u>EXHIBIT A</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

| | |
|---|---|
| In re | : Chapter 11 Case No. |
| | : |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : 08-13555 (JMP) |
| | : |
| Debtors. | : (Jointly Administered) |
| | : |
| | : |

-------------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING THE PURCHASE OF NOTES ISSUED BY PINE CCS, LTD. FROM BARCLAYS BANK PLC AND THE TERMINATION OF THE PINE SECURITIZATION

Upon the motion, dated March 23, 2011 (the "Motion"), of Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors" and, together with their non-debtor affiliates, "Lehman") pursuant to sections 105 and 363 of the Bankruptcy Code, for approval of the purchase of notes issued by Pine[1] from Barclays Bank PLC and LBHI and the termination of the Pine securitization, all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] All capitalized terms used but not defined in this Order shall have the meanings ascribed to such terms in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided to (i) the U.S. Trustee; (ii) the

attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission;

(iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District

of New York; (vi) the attorneys for Barclays; (vii) the attorneys for U.S. Bank; (viii) the

attorneys for Pine; and (ix) all other parties entitled to notice in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for these cases [Docket No. 9635]; and a

hearing (the "<u>Hearing</u>") having been held to consider the relief requested in the Motion;

and the Court having found and determined that the relief sought in the Motion is in the

best interests of LCPI and LBHI, their estates and creditors, and all parties in interest and

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that objections, if any, to the Motion, that have not been

resolved or withdrawn, are overruled; and it is further

ORDERED that, the Court having determined and found that the proposed

transactions set forth in the Note Sale and Termination Agreement are reasonable and

appropriate, and consummation of the transactions contemplated by the Note Sale and

Termination Agreement are in the best interests of LCPI, LBHI and their estates, the

Motion is granted; and it is further

ORDERED that pursuant to sections 105 and 363(b) of the Bankruptcy

Code, (i) the Note Sale and Termination Agreement, (ii) the purchase by LCPI and the

sale by LBHI of the LBHI Notes, and (iii) the release by LBHI of its security interest in

the Class A-2, Class B and Subordinated Notes issued by Pine, are approved, and LCPI

and LBHI are duly authorized to execute, deliver, implement and fully perform any and

all obligations, instruments, documents and papers and to take any and all actions

reasonably necessary or appropriate to consummate (a) the Note Sale and Termination

Agreement and all obligations contemplated therein, (b) the purchase of the LBHI Notes,

and (c) the release by LBHI of its security interest in the other Pine Notes as described in

the Motion; and it is further

ORDERED that, notwithstanding the entry of this Order, all rights, claims

and defenses of LBHI and LCPI with respect to (i) the ownership of the Pine Notes and

(ii) any transfer by LBHI and LCPI of the Pine Notes prior to the Commencement Date

shall be reserved and not affected by the transactions contemplated by the Note Sale and

Termination Agreement and the Motion; and it is further

ORDERED that, notwithstanding the entry of this Order, any and all pre-

and post-petition claims, rights, obligations and defenses of the Debtors that they may

have against each other in connection with the subject matter of the Motion are hereby

reserved and not waived, relinquished or otherwise prejudiced by the transactions

contemplated in the Motion; and it is further

ORDERED that nothing in the Motion, this Order, or the Note Sale and

Termination Agreement shall (a) bind, be collateral estoppel, res judicata, constitute an

admission of the parties in, or otherwise prejudice any other matter (other than approval

of the matters and the Note Sale and Termination Agreement herein, and the performance

thereof) in this case or in the Chapter 11 Cases (collectively, the "<u>Cases</u>") with respect to

the legal or factual assertions set forth in the Note Sale and Termination Agreement and

the Motion; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived

and the terms of this Order shall be immediately effective and enforceable upon its entry;

and it is further

ORDERED that notice of the Motion as provided therein shall be deemed

good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters

arising from or related to the implementation of this Order and the Agreement.

Dated: _____, 2011
      New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT B</u>**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                        :
In re                                                   :        **Chapter 11 Case No.**
                                                        :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,            :        **08-13555 (JMP)**
                                                        :
                        **Debtors.**                    :        **(Jointly Administered)**
                                                        :
                                                        :
-------------------------------------------------------------------x

## ORDER PURSUANT TO SECTIONS 105 AND 363 OF THE BANKRUPTCY CODE APPROVING THE PURCHASE OF NOTES ISSUED BY PINE CCS, LTD. FROM BARCLAYS BANK PLC AND THE TERMINATION OF THE PINE SECURITIZATION

Upon the motion, dated March 23, 2011 (the "Motion"), of Lehman

Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") and their

affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-

possession (collectively, the "Debtors" and, together with their non-debtor affiliates,

"Lehman") pursuant to sections 105 and 363 of the Bankruptcy Code, for approval of the

purchase of notes issued by Pine[1] from Barclays Bank PLC and LBHI and the

termination of the Pine securitization, all as more fully described in the Motion; and the

Court having jurisdiction to consider the Motion and the relief requested therein in

accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings

Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion

and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

---

[1] All capitalized terms used but not defined in this Order shall have the meanings ascribed to such terms in the Motion.

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and

due and proper notice of the Motion having been provided to (i) the U.S. Trustee; (ii) the

attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission;

(iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District

of New York; (vi) the attorneys for Barclays; (vii) the attorneys for U.S. Bank; (viii) the

attorneys for Pine; and (ix) all other parties entitled to notice in accordance with the

procedures set forth in the second amended order entered on June 17, 2010 governing

case management and administrative procedures for these cases [Docket No. 9635]; and a

hearing (the "Hearing") having been held to consider the relief requested in the Motion;

and the Court having found and determined that the relief sought in the Motion is in the

best interests of LCPI and LBHI, their estates and creditors, and all parties in interest and

that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

      ORDERED that objections, if any, to the Motion, that have not been

resolved or withdrawn, are overruled; and it is further

      ORDERED that, the Court having determined and found that the proposed

transactions set forth in the Note Sale and Termination Agreement are reasonable and

appropriate, and consummation of the transactions contemplated by the Note Sale and

Termination Agreement are in the best interests of LCPI, LBHI and their estates, the

Motion is granted; and it is further

      ORDERED that pursuant to sections 105 and 363(b) of the Bankruptcy

Code, (i) the Note Sale and Termination Agreement, (ii) the purchase by LCPI and the

sale by LBHI of the LBHI Notes, and (iii) the release by LBHI of its security interest in

the Class A-2, Class B and Subordinated Notes issued by Pine, are approved, and LCPI and LBHI are duly authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to consummate (a) the Note Sale and Termination Agreement and all obligations contemplated therein, (b) the purchase of the LBHI Notes, and (c) the release by LBHI of its security interest in the other Pine Notes as described in the Motion; and it is further

ORDERED that, notwithstanding the entry of this Order, all rights, claims and defenses of LBHI and LCPI with respect to (i) the ownership of the Pine Notes and (ii) any transfer by LBHI and LCPI of the Pine Notes prior to the Commencement Date shall be reserved and not affected by the transactions contemplated by the Note Sale and Termination Agreement and the Motion; and it is further

ORDERED that, notwithstanding the entry of this Order, any and all pre- and post-petition claims, rights, obligations and defenses of the Debtors that they may have against each other in connection with the subject matter of the Motion are hereby reserved and not waived, relinquished or otherwise prejudiced by the transactions contemplated in the Motion; and it is further

ORDERED that nothing in the Motion, this Order, or the Note Sale and Termination Agreement shall (a) bind, be collateral estoppel, res judicata, constitute an admission of the parties in, or otherwise prejudice any other matter (other than approval of the matters and the Note Sale and Termination Agreement herein, and the performance thereof) in this case or in the Chapter 11 Cases (collectively, the "Cases") with respect to

the legal or factual assertions set forth in the Note Sale and Termination Agreement and the Motion; and it is further

ORDERED that the requirements of Bankruptcy Rule 6004(h) are waived and the terms of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order and the Agreement.

Dated: _____, 2011
        New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT C**

EXECUTION COPY

## NOTE SALE AND TERMINATION AGREEMENT

This Note Sale and Termination Agreement (the "Agreement") is entered into as of April 12, 2011, among Pine CCS, Ltd., as issuer ("Issuer"), Pine CCS, Corp, as co-issuer (together with the Issuer, the "Co-Issuers"), U.S. Bank, National Association as trustee ("Trustee"), collateral administrator ("Collateral Administrator"), Class A-2 note agent and Class B note agent, Barclays Bank, PLC, as a Class A-1 Noteholder ("Barclays"), Lehman Commercial Paper Inc., as a Class A-1 Noteholder, the Class A-2 Noteholder, the Class B Noteholder, the Subordinated Noteholder, Seller (each of the foregoing, as defined herein) and administrative agent ("LCPI") and Lehman Brothers Holdings Inc., as guarantor ("LBHI") (collectively, the "Parties").

**WHEREAS**, the Issuer, the Co-Issuer and the Trustee are parties to that certain Indenture (as amended, supplemented or otherwise modified from time to time, the "Indenture") dated as of May 28, 2008;

**WHEREAS**, LBHI is the holder of $3,943,955.04 principal amount of the Class A-1 Notes (as such term is defined in the Indenture) (the "LBHI Notes");

**WHEREAS**, LCPI is the holder of all the outstanding Class A-2 Notes, Class B Notes and Subordinated Notes (as each such term is defined in the Indenture) (the "Original LCPI Notes");

**WHEREAS**, Barclays is the holder of $894,401,360 principal amount of the Class A-1 Notes (as such term is defined in the Indenture) (the "Barclays Notes");

**WHEREAS**, Barclays and LCPI desire to settle certain disputes between them relating to the Notes and the Co-Issuers;

**WHEREAS**, as part of the settlement of the aforementioned disputes, Barclays desires to sell and LCPI desires to purchase, the Barclays Notes;

**WHEREAS**, LCPI intends to acquire the LBHI Notes prior to the Closing Date and accordingly, at the Closing Time on the Closing Date LCPI will be the holder of the LBHI Notes;

**WHEREAS**, at the Closing Time on the Closing Date (each as defined herein), after giving effect to the aforementioned purchase LCPI shall be the sole holder of all the outstanding Notes and Subordinated Notes (as each such term is defined in the Indenture); and

**WHEREAS**, the Parties desire to terminate the Transaction Documents (as defined herein) and the transactions contemplated by such Transaction Documents;

**NOW**, **THEREFORE**, the Parties for valuable consideration the sufficiency of which is hereby acknowledged agree as follows:

1.    <u>Definitions</u>.  Capitalized terms used herein and not otherwise defined shall have the meanings specified in the Indenture.

"<u>Bankruptcy Code</u>" means title 11 of the United States Code.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of New York.

"<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2072 of title 28 of the United States code, and any Local Rules of the Bankruptcy Court.

"<u>Cash Reserve</u>" means the amount specified in Section 4(b) of this Agreement.

"<u>Closing Date</u>" means five Business Days after the Sale Order becomes a Final Order.

"<u>Closing Time</u>" means 2:00 pm New York time.

"<u>Final Order</u>" means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to LCPI or, in the event that an appeal, writ for certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

"<u>Official Committee of Unsecured Creditors</u>" means the official committee of unsecured creditors appointed by the U.S. Trustee in *In re Lehman Brothers Holdings, Inc.*, case number 08-13555, pending in the Bankruptcy Court, as reconstituted from time to time.

"<u>Purchase Price</u>" means $805,000,000.

"<u>Sale Order</u>" means a Final Order or Final Orders of the Bankruptcy Court approving this Agreement and all terms and conditions hereof, including, without limitation, the approval and authorization of LCPI to consummate the transactions contemplated hereby.

"Seller" means LCPI, as the seller under the Master Participation Agreement.

"Transaction Documents" means the Indenture, the Master Participation Agreement, the LBHI Guarantee, the Collateral Administration Agreement, each Note Purchase Agreement the Administration Agreement, the Administrative Agency Agreement and any other document relating to any of the Notes or Subordinated Notes, as each such document shall have been amended, supplemented or otherwise modified from time to time.

2.      Approval by Bankruptcy Court.   (a) The Parties acknowledge that the consummation of the transaction contemplated herein is subject to the approval of the Bankruptcy Court and the entry of the Sale Order which shall be in full force and effect as of the Closing Date.

(b) LCPI shall diligently move for entry of the Sale Order and use its commercially reasonable efforts, in consultation with Barclays, to resolve any objections thereto or appeal thereof.

3.      Sale of the Notes.   Subject to the terms and conditions of this Agreement, Barclays agrees to sell, with full title guarantee, and LCPI agrees to buy the Barclays Notes on the Closing Date for the Purchase Price.

4.      Payment of Purchase Price.   (a) On or before the Closing Time on the Closing Date, LCPI, by wire transfer, shall pay to Barclays an amount equal to the Purchase Price less the Cash Reserve payable to Barclays by the Trustee in accordance with Section 4(b), to the following account:

Barclays Bank NY

ABA 026002574

Account Name - SWAPS

Account # - 050019228

REF:  Pine: Note Sale Payment

(b) Provided that the Barclays Notes have been delivered in accordance with Section 5 prior to the Closing Time on the Closing Date, Barclays and LCPI, as the holders of all the Notes and Subordinated Notes, hereby direct the Trustee to pay the balance of all monies of the Issuer held by the Trustee on the Closing Date in the following order of priority, *first* to pay any taxes and registration and filing fees of the Co-Issuers that are due and payable, *second* to pay the Trustee Fees and Administrative Expenses that are due and payable, and *third*, to Barclays, all remaining funds thereafter, which is approximately $260 million (such amount, the "Cash Reserve").

5.    <u>Delivery of Barclays Notes</u>.  On or before the Closing Time on the Closing Date, Barclays shall deliver the Barclays Notes, by free delivery through the Depository Trust Company Corporation, to the Trustee for cancellation.  LCPI agrees that such delivery shall satisfy the obligations of Barclays to deliver the Barclays Notes to LCPI.

6.    <u>Condition to Occurrence of Closing Date</u>.  The Closing Date shall not occur, and no parties shall be required to satisfy any of their obligations that arise on or before such date under this Agreement, until Ceago ABS CDO 2007-1, Ltd. and Ceago ABS CDO 2007-1, LLC (together, "<u>Ceago</u>"), Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), LBHI, Long Island International Ltd. ("<u>LII</u>"), Bank of America, National Association (successor by merger to LaSalle Bank, National Association), as trustee under the Indenture dated as of August 16, 2007, among Ceago, as co-issuers, and LaSalle Bank, National Association, as trustee, (the "<u>Trustee</u>" and together with Ceago, LBSF, LBHI and LII, the "<u>Ceago Settlement Parties</u>"), execute a mutually satisfactory agreement resolving disputes between the Ceago Settlement Parties relating to Ceago and the transactions relating thereto.

7.    <u>Representations and Warranties of Barclays</u>.  Barclays represents and warrants to LCPI and the Co-Issuers, that as of the date of this Agreement and the Closing Date:  (i) it is a public limited company organized under the laws of England and Wales; (ii) it has the requisite power and authority to enter into and perform this Agreement; (iii) this Agreement has been duly authorized by all necessary action by Barclays; (iv) this Agreement has been duly executed by one or more duly authorized representatives of Barclays; (v) this Agreement is the valid and binding agreement of Barclays, enforceable against Barclays in accordance with its terms, subject, as to enforceability, to bankruptcy, insolvency, receivership, conservatorship, reorganization, moratorium and other laws relating to or affecting creditors' rights generally and to general principles of equity (regardless of whether considered by a court in equity or at law); (vi) no consent, approval, authorization or order of, or filing or registration with, any court, regulatory authority or other governmental agent or body or third party is required for Barclays to perform its obligations under this Agreement; (vii) Barclays is a sophisticated buyer and seller of securities, claims, notes and other rights such as the Barclays Notes and has adequate information concerning the Barclays Notes to enable it to make an informed decision regarding the sale of the Barclays Notes; (viii) Barclays has independently and without reliance upon LCPI, and based on such information as it deemed appropriate, made its own credit and legal analysis of, and decision to sell, the Barclays Notes; (ix) Barclays has not encumbered, pledged, hypothecated, assigned or otherwise transferred the Barclays Notes or any interest in the Barclays Notes; and (x) Barclays has and LCPI will acquire good and marketable title to the Barclays Notes when delivered in accordance with this Agreement free and clear of any liens, encumbrances or any other defect in title, subject, however, to any liens, encumbrances, or other defects of title created by any affiliate of LCPI or LBHI.

8.    <u>Representations and Warranties of LCPI</u>.  LCPI represents and warrants to Barclays and the Co-Issuers that, as of the date of this Agreement and the Closing Date: (i) it is a corporation organized under the laws of the State of New York; (ii) subject to the

Sale Order, it has the requisite power and authority to enter into and, perform this Agreement; (iii) subject to the Sale Order, this Agreement has been duly authorized by all necessary action; (iv) subject to the Sale Order, this Agreement has been duly executed by one or more duly authorized officers; (v) subject to the Sale Order, this Agreement is the valid and binding agreement of LCPI, enforceable against LCPI in accordance with its terms, subject, as to enforceability, to bankruptcy, insolvency, receivership, conservatorship, reorganization, moratorium and other laws relating to or affecting creditors' rights generally and to general principles of equity (regardless of whether considered by a court in equity or at law); (vi) other than the Sale Order, no consent, approval, authorization or order of, or filing or registration with, any court, regulatory authority or other governmental agency or body or third party is required for LCPI to perform its obligations under this Agreement; (vii) LCPI is the beneficial owner of the Original LCPI Notes and upon satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement and as of the Closing Time on the Closing Date, no other person can give the directions specified in Section 10 of this Agreement; (viii) as of the Closing Date LCPI will have obtained any and all necessary approvals to enter into and consummate the transactions set forth herein, including, but not limited to, any necessary approval of the Bankruptcy Court or the Official Committee of Unsecured Creditors; (ix) it is a sophisticated buyer and seller of securities, claims, notes and other rights such as the Barclays Notes and has adequate information concerning the Barclays Notes to enable it to make an informed decision regarding the purchase of the Barclays Notes; (x) it is a "qualified institutional buyer" as such term is defined in Rule 144A under the Securities Act of 1933, as amended, and a "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act of 1940, as amended; and (xi) it has independently and without reliance upon Barclays, and based on such information as it deemed appropriate, made its own credit and legal analysis of, and decision to purchase, the Barclays Notes.

9.    Securities Not Registered.  LCPI acknowledges that the Barclays Notes have not been registered under the Securities Act and may not be offered, sold, transferred, hypothecated or otherwise assigned except in compliance with the Securities Act and the rules and regulations thereunder and applicable State securities laws.  LCPI represents and warrants that neither LCPI nor any person acting on its behalf has made or will make, directly or indirectly, any offers or sales with respect to any of the Barclays Notes by any form of general solicitation or general advertising (within the meaning of Regulation D under the Securities Act) or in any manner that would require the registration of the sale of the Barclays Notes from Barclays to LCPI under the Securities Act.

10.    Cancellation of the Notes.  Immediately after the Closing Time on the Closing Date and subject to the satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement, LCPI, as the holder of 100% of the Aggregate Outstanding Amount of the Notes and the Subordinated Notes agrees, and the Trustee, at the direction of LCPI, acknowledges that (i) all sums payable by the Co-Issuers under the Transaction Documents have been paid and (ii) all of the obligations of the Issuer and Co-Issuer in respect of the Notes and the Subordinated Notes have been fully extinguished,

and LCPI further agrees that it shall surrender (or in the case of the Barclays Notes, direct Barclays to surrender) all of the Notes and the Subordinated Notes to the Trustee for cancellation in accordance with the terms of the Indenture.

11.    <u>Termination of the Transaction Documents</u>.  Subject to the satisfaction of the agreements contained in each of the preceding Sections, each of the Parties agrees to the termination and discharge of the Indenture and other Transaction Documents and any and all duties and obligations thereunder immediately after the Closing Time on the Closing Date.  Each Party herby confirms for the benefit of the Co-Issuers that no fees, costs or expenses will become payable by the Co-Issuers to it by reason of the discharge of the Indenture or any other Transaction Document.

12.    <u>Release of Assets</u>.  In furtherance of the transactions contemplated by this Agreement and subject to the satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement, the Trustee and the Co-Issuers hereby release their respective liens on and interests in the Collateral and the rights and claims of the Issuer under the Master Participation Agreement.  In connection with such release, the Trustee and the Co-Issuers hereby authorize the filing of one or more UCC-3 financing statements with (a) the DC Recorder of Deeds, (b) the Secretary of State of New York and (c) any other applicable authority in any other applicable jurisdiction to evidence the release of the lien on such Collateral.

13.    <u>Mutual Release</u>.  As an essential term of this Agreement and the pricing of the purchase and sale, (a) LCPI and LBHI hereby irrevocably and unconditionally waive and release, and covenant not to sue with respect to, any and all claims (as defined in Section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature that LCPI or LBHI has, shall, or may have, against Barclays, Barclays' affiliates, or any of their respective officers, directors, representatives, agents, advisors, owners, partners, managers or related persons, arising out of or relating to the Barclays Notes and the Co-Issuers, or any contractual or other obligation to the Co-Issuers, known or unknown, that were in existence as of the execution of this Agreement, and (b) Barclays and Barclays Capital, Inc. ("Barcap") hereby irrevocably and unconditionally waive and release and covenant not to sue with respect to, any and all claims (as defined in Section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature that Barclays or Barcap has, shall, or may have, against LCPI, LBHI, their affiliates, or any of their respective officers, directors, representatives, agents, advisors, owners, partners, managers or related persons, arising out of or relating to the Barclays Notes, the Co-Issuers, or any contractual or other obligation to the Issuer or the Co-Issuer, known or unknown, that were in existence as of the execution of this Agreement (in each case other than claims under this Agreement), provided that these releases and covenants not to sue shall have no force or effect, and shall in all respects be void, unless and until satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement.

Notwithstanding anything else contained herein to the contrary, each of the LCPI's, LBHI's, Barclays' and Barcap's rights and defenses with respect to any other claims each might have against the other (unrelated to the Barclays Notes, the Co-Issuers, or any contractual or other obligations to the Issuer or the Co-Issuer) are fully preserved, including without limitation, any such other rights, defenses and/or counterclaims asserted in connection with or related to (i) the Motion of Debtor to Modify the September 20, 2008 Sale Order and Granting Other Relief (Case No. 08-13555, Docket No. 5148); (ii) the Motion of the Trustee for Relief Pursuant to the Sale Orders or, Alternatively, for Certain Limited Relief Under Rule 60(b) (Case No. 08-01420, Docket No. 1682); (iii) the Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., for Relief from Order Authorizing and Approving (A) Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, Dated September 20, 2008 (and Related SIPA Sale Order) and Joinder in Debtors and SIPA Trustees' Motions for an Order Under Rule 60(B) to Modify Sale Order (Case No. 08-13555, Docket No. 5169; Case No. 08-01420, Docket No. 1686); (iv) all joinders thereto and the related adversary proceedings nos. 09-01732 (JMP), 09-01731 (JMP) and 09-01733 (JMP); and (v) the Motion of Barclays Capital Inc. to Enforce the Sale Order and Secure Delivery of All Undelivered Assets (Case No. 08-13555, Docket No. 6814; Case No. 08-1420, Docket No. 2581).  For the avoidance of doubt, (i) the Barclays Notes shall continue to be a Purchased Asset in the Sale Transaction, and their value shall continue to be included in the value of such Purchased Assets, as such terms are defined in the foregoing motions, and (ii) LBHI and LCPI waive and release any claim to rescind, avoid, or otherwise invalidate Barclays' and Barcap's acquisition of the Barclays Notes or to recover the Barclays Notes or any proceeds of the Barclays Notes from Barclays or Barcap.

14.     <u>Release of Trustee, Collateral Administrator and Co-Issuers.</u>   In consideration of each other Party's execution of this Termination Agreement and the transactions contemplated hereby, LCPI, LBHI and Barclays and any other party, person or entity claiming under or through them, hereby releases, discharges and acquits U.S. Bank National Association and the Co-Issuers, and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "<u>Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that LBHI, LCPI and Barclays ever had or claimed to have, or now has or claims to have currently or at any future date, against any Released Party arising under or related to the Indenture, the obligations thereunder including but not limited to payments on the Notes issued thereunder, or the Transaction Documents, their negotiation, execution, performance, any

breaches thereof, or their termination (each a "Claim") other than Claims resulting from a Released Party's own gross negligence or willful misconduct.

15.    Special Provision for Unknown Claims.    All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 1.  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

16.    Indemnification.    LCPI shall indemnify U.S. Bank National Association, as Trustee and Collateral Administrator and the Co-Issuers for, and hold each of them harmless from and against, any damages, liabilities, losses, claims or expenses ("Losses") arising out of, or resulting from entering into this Agreement and consummating the transactions contemplated hereby other than Losses resulting from their gross negligence or willful misconduct.  Barclays shall indemnify US Bank and the Co-Issuers for any Losses resulting from any breach by Barclays of its representation set forth in Section 7 (ix) or (x) hereof.

17.    Withdrawal of Claims.    LCPI, LBHI and Barclays direct and instruct US Bank, as Trustee, to withdraw with prejudice after the Closing Time any filed Proofs of Claim (as defined in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "Bar Date Order") entered in the Bankruptcy Cases on July 2, 2009) filed against LBHI, LCPI or any other Debtor (as defined in the Bar Date Order) that relate to the Transaction Documents or the transactions contemplated therein.

18.    Waiver of Notices and Conditions.    Each Party hereby agrees that (i)any and all conditions precedent (including, without limitation, any notices required to be delivered) contained in any of the Transaction Documents or other agreements referred to herein or contemplated hereby relating to the subject matter of this Agreement are hereby waived, (ii) the terms of the Indenture and the other Transaction documents shall be deemed amended or otherwise waived in any manner necessary and appropriate to satisfy all of the respective conditions precedent relating to the discharge of the Indenture and the termination of the Transaction Documents and to accommodate the transactions contemplated herein, and (iii) each termination described herein shall be effective without any further action by any party and notwithstanding any event, notice, waiting period or other condition provided for in any such Transaction Document or such other agreements referred to herein or contemplated hereby.

19.    Further Assurances.    Each Party hereby agrees to duly execute and deliver to LCPI or LBHI all such other and further instruments of conveyance, transfer and

assignment and to take such other action as LCPI or LBHI may reasonably deem necessary to effectuate the release of the Collateral \and to take such further actions as may be reasonably requested by LCPI or LBHI to obtain the full and complete benefit of such release of the rights and property intended to be released hereunder subject, in each case to the payment by LCPI or LBHI of such other party's costs and expenses (including reasonable counsel fees and disbursements) in connection therewith; provided, however, that a party shall not be required to take any action which is contrary to any applicable law.

20.    Execution in Counterparts.    This Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

21.    Direction to Co-Issuers and Trustee.    Barclays, LBHI and LCPI, as holders as of the date of this Agreement of all outstanding Notes and Subordinated Notes, by their respective signatures hereto direct the Co-Issuers and the Trustee to enter into this Agreement and to consummate the transactions contemplated hereby.

22.    Governing Law.    THIS AGREEMENT AND ANY CLAIMS ARISING HEREFROM SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO OTHERWISE APPLICABLE PRINCIPLES OF CONFLICT OF LAWS (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

23.    Waiver of Trial by Jury.    EACH PARTY HERETO HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT OR ANY RELATED TRANSACTION, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

24.    Headings.    The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provisions hereof or thereof.

25.    Execution by the Trustee.    U.S. Bank National Association is executing this Agreement solely in its capacity as trustee. None of U.S. Bank National Association, in its individual capacity, or its respective officers, directors, shareholders or agents shall be liable for any claim, liability or obligation arising out of this Agreement.

26.    Termination.    The Barclays Notes are securities whose market value may fluctuate and time is of the essence for the Parties. This Agreement will terminate automatically without notice to or action by any Party if the sale and purchase of the

Barclays Notes contemplated by this Agreement does not occur by June 30, 2011. The Parties may, but shall have no obligation to, extend the term hereof.

27.    <u>Successors and Assigns</u>.  (a) All terms and provisions of this Agreement shall be binding only upon and inure to the benefit of and be enforceable by the respective heirs, representatives, successors and assigns of the Parties hereto.  No other person is intended to, or shall, be a third party beneficiary of the promises of any Party made herein.

(b) No Party may assign its rights or obligations under this Agreement without the prior written consent of the other Parties, and any purported assignment without such consent shall be void.

28.    <u>Entire Agreement</u>.  Subject to any amendment or modification effected under Section 30 of this Agreement, this Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all previous agreements, promises or representations, whether written or oral, among the Parties.

29.    <u>Costs and Expenses</u>.  As among Barclays, LCPI and LBHI, each agrees to pay its own expenses and disbursements incident to the performance of its obligations hereunder.

30.    <u>Amendments</u>.  Any amendment or modification to this Agreement shall only be effective if agreed to in writing by the Parties; provided, however, that Section 6 of this Agreement may be modified or amended by a writing executed only by Barclays and LCPI; provided further, however, that any amendment or modification of Section 6 that adversely affects the rights of the Co-Issuers, the Trustee or the Collateral Administrator shall require the consent of such party adversely affected.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of day and year first above written.

LEHMAN COMMERCIAL PAPER INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13900

By: _____
    Name: DAVID G. WALSH
    Title: VICE PRESIDENT
Amount and Class of Notes held:
$0 Class A-2 Notes
$0 Class B Notes
$31,611,000 Subordinated Notes

LEHMAN BROTHERS HOLDINGS INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555

By: _____
    Name: DAVID G. WALSH
    Title: VICE PRESIDENT
Amount and Class of Notes held:
$3,943,955.04 Class A-1 Notes

U.S. BANK, NATIONAL
ASSOCIATION not individually but
as trustee and collateral administrator

By: _____
    Name:
          C. BRAND HOSFORD
    Title:
          VICE PRESIDENT

PINE CCS, LTD.

By: _____
    Name:  Dianne Scott
    Title:   Director

PINE CCS, CORP.

By: _____

Name:  Donald J. Puglisi

Title:  President

BARCLAYS BANK, PLC

By: _____
    Name: Peter Hammack
    Title: Managing Director
Amount and Class of Notes held:
$894,401,360 Class A-1 Notes


BARCLAYS CAPITAL, INC.
(with respect to Section 13 only)

By: _____
    Name: Peter Hammack
    Title: Managing Director

[PINE – NOTE SALE AND TERMINATION AGREEMENT]

**EXHIBIT D**

# NOTE SALE AND TERMINATION AGREEMENT

This Note Sale and Termination Agreement (the "Agreement") is entered into as of March [   ], April 12, 2011, among Pine CCS, Ltd., as issuer ("Issuer"), Pine CCS, Corp, as co-issuer (together with the Issuer, the "Co-Issuers"), U.S. Bank, National Association as trustee ("Trustee"), collateral administrator ("Collateral Administrator"), Class A-2 note agent and Class B note agent, Barclays Bank, PLC, as a Class A-1 Noteholder ("Barclays"), Lehman Commercial Paper Inc., as a Class A-1 Noteholder, the Class A-2 Noteholder, the Class B Noteholder, the Subordinated Noteholder, Seller (each of the foregoing, as defined herein) and administrative agent ("LCPI") and Lehman Brothers Holdings Inc., as guarantor ("LBHI") (collectively, the "Parties").

**WHEREAS**, the Issuer, the Co-Issuer and the Trustee are parties to that certain Indenture (as amended, supplemented or otherwise modified from time to time, the "Indenture") dated as of May 28, 2008;

**WHEREAS**, LBHI is the holder of $3,943,955.04 principal amount of the Class A-1 Notes (as such term is defined in the Indenture) (the "LBHI Notes");

**WHEREAS**, LCPI is the holder of all the outstanding Class A-2 Notes, Class B Notes and Subordinated Notes (as each such term is defined in the Indenture) (the "Original LCPI Notes");

**WHEREAS**, Barclays is the holder of $894,401,360 principal amount of the Class A-1 Notes (as such term is defined in the Indenture) (the "Barclays Notes");

**WHEREAS**, Barclays and LCPI desire to settle certain disputes between them relating to the Notes and the Co-Issuers;

**WHEREAS**, as part of the settlement of the aforementioned disputes, Barclays desires to sell and LCPI desires to purchase, the Barclays Notes;

**WHEREAS**, LCPI intends to acquire the LBHI Notes prior to the Closing Date and accordingly, at the Closing Time on the Closing Date LCPI will be the holder of the LBHI Notes;

**WHEREAS**, at the Closing Time on the Closing Date (each as defined herein), after giving effect to the aforementioned purchase LCPI shall be the sole holder of all the outstanding Notes and Subordinated Notes (as each such term is defined in the Indenture); and

**WHEREAS**, the Parties desire to terminate the Transaction Documents (as defined herein) and the transactions contemplated by such Transaction Documents;

**NOW**, **THEREFORE**, the Parties for valuable consideration the sufficiency of which is hereby acknowledged agree as follows:

1.    <u>Definitions</u>.  Capitalized terms used herein and not otherwise defined shall have the meanings specified in the Indenture.

"<u>Bankruptcy Code</u>" means title 11 of the United States Code.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of New York.

"<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2072 of title 28 of the United States code, and any Local Rules of the Bankruptcy Court.

"<u>Cash Reserve</u>" means the amount specified in Section 4(b) of this Agreement.

"<u>Closing Date</u>" means five Business Days after the Sale Order becomes a Final Order.

"<u>Closing Time</u>" means 2:00 pm New York time.

"<u>Final Order</u>" means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to LCPI or, in the event that an appeal, writ for certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

"<u>Official Committee of Unsecured Creditors</u>" means the official committee of unsecured creditors appointed by the U.S. Trustee in *In re Lehman Brothers Holdings, Inc.*, case number 08-13555, pending in the Bankruptcy Court, as reconstituted from time to time.

"<u>Purchase Price</u>" means $805,000,000.

"<u>Sale Order</u>" means a Final Order or Final Orders of the Bankruptcy Court approving this Agreement and all terms and conditions hereof, including, without limitation, the approval and authorization of LCPI to consummate the transactions contemplated hereby.

"Seller" means LCPI, as the seller under the Master Participation Agreement.

"Transaction Documents" means the Indenture, the Master Participation Agreement, the LBHI Guarantee, the Collateral Administration Agreement, each Note Purchase Agreement the Administration Agreement, the Administrative Agency Agreement and any other document relating to any of the Notes or Subordinated Notes, as each such document shall have been amended, supplemented or otherwise modified from time to time.

2.    Approval by Bankruptcy Court.  (a) The Parties acknowledge that the consummation of the transaction contemplated herein is subject to the approval of the Bankruptcy Court and the entry of the Sale Order which shall be in full force and effect as of the Closing Date.

(b) LCPI shall diligently move for entry of the Sale Order and use its commercially reasonable efforts, in consultation with Barclays, to resolve any objections thereto or appeal thereof.

3.    Sale of the Notes.  Subject to the terms and conditions of this Agreement, Barclays agrees to sell, with full title guarantee, and LCPI agrees to buy the Barclays Notes on the Closing Date for the Purchase Price.

4.    Payment of Purchase Price.  (a) On or before the Closing Time on the Closing Date, LCPI, by wire transfer, shall pay to Barclays an amount equal to the Purchase Price less the Cash Reserve payable to Barclays by the Trustee in accordance with Section 4(b), to the following account:

Barclays Bank NY

ABA 026002574

Account Name - SWAPS

Account # - 050019228

REF:  Pine: Note Sale Payment

(a)    (b) Provided that the Barclays Notes have been delivered in accordance with Section 5 prior to the Closing Time on the Closing Date, Barclays and LCPI, as the holders of all the Notes and Subordinated Notes, hereby direct the Trustee to pay the balance of all monies of the Issuer held by the Trustee on the Closing Date in the following order of priority, *first* to pay any taxes and registration and filing fees of the Co-Issuers that are due and payable, *second* to pay the Trustee Fees and Administrative Expenses that are due and payable, and *third*, to Barclays, all remaining funds thereafter, which is approximately $260 million (such amount, the "Cash Reserve").

5.      Delivery of Barclays Notes.  On or before the Closing Time on the Closing Date, Barclays shall deliver the Barclays Notes, by free delivery through the Depository Trust Company Corporation, to the Trustee for cancellation.  LCPI agrees that such delivery shall satisfy the obligations of Barclays to deliver the Barclays Notes to LCPI.

6.      Condition to Occurrence of Closing Date.  The Closing Date shall not occur, and no parties shall be required to satisfy any of their obligations that arise on or before such date under this Agreement, until Ceago ABS CDO 2007-1, Ltd. and Ceago ABS CDO 2007-1, LLC (together, "Ceago"), Lehman Brothers Special Financing Inc. ("LBSF"), LBHI, Long Island International Ltd. ("LII"), Bank of America, National Association (successor by merger to LaSalle Bank, National Association), as trustee under the Indenture dated as of August 16, 2007, among Ceago, as co-issuers, and LaSalle Bank, National Association, as trustee, (the "Trustee" and together with Ceago, LBSF, LBHI and LII, the "Ceago Settlement Parties"), execute a mutually satisfactory agreement resolving disputes between the Ceago Settlement Parties relating to Ceago and the transactions relating thereto.

7.      Representations and Warranties of Barclays.  Barclays represents and warrants to LCPI and the Co-Issuers, that as of the date of this Agreement and the Closing Date:  (i) it is a public limited company organized under the laws of England and Wales; (ii) it has the requisite power and authority to enter into and perform this Agreement; (iii) this Agreement has been duly authorized by all necessary action by Barclays; (iv) this Agreement has been duly executed by one or more duly authorized representatives of Barclays; (v) this Agreement is the valid and binding agreement of Barclays, enforceable against Barclays in accordance with its terms, subject, as to enforceability, to bankruptcy, insolvency, receivership, conservatorship, reorganization, moratorium and other laws relating to or affecting creditors' rights generally and to general principles of equity (regardless of whether considered by a court in equity or at law); (vi) no consent, approval, authorization or order of, or filing or registration with, any court, regulatory authority or other governmental agent or body or third party is required for Barclays to perform its obligations under this Agreement; (vii) Barclays is a sophisticated buyer and seller of securities, claims, notes and other rights such as the Barclays Notes and has adequate information concerning the Barclays Notes to enable it to make an informed decision regarding the sale of the Barclays Notes; (viii) Barclays has independently and without reliance upon LCPI, and based on such information as it deemed appropriate, made its own credit and legal analysis of, and decision to sell, the Barclays Notes; (ix) Barclays has not encumbered, pledged, hypothecated, assigned or otherwise transferred the Barclays Notes or any interest in the Barclays Notes; and (x) Barclays has and LCPI will acquire good and marketable title to the Barclays Notes when delivered in accordance with this Agreement free and clear of any liens, encumbrances or any other defect in title, subject, however, to any liens, encumbrances, or other defects of title created by any affiliate of LCPI or LBHI.

8.      Representations and Warranties of LCPI.  LCPI represents and warrants to Barclays and the Co-Issuers that, as of the date of this Agreement and the Closing Date: (i) it is a corporation organized under the laws of the State of New York; (ii) subject to the

Sale Order, it has the requisite power and authority to enter into and, perform this Agreement; (iii) subject to the Sale Order, this Agreement has been duly authorized by all necessary action; (iv) subject to the Sale Order, this Agreement has been duly executed by one or more duly authorized officers; (v) subject to the Sale Order, this Agreement is the valid and binding agreement of LCPI, enforceable against LCPI in accordance with its terms, subject, as to enforceability, to bankruptcy, insolvency, receivership, conservatorship, reorganization, moratorium and other laws relating to or affecting creditors' rights generally and to general principles of equity (regardless of whether considered by a court in equity or at law); (vi) other than the Sale Order, no consent, approval, authorization or order of, or filing or registration with, any court, regulatory authority or other governmental agency or body or third party is required for LCPI to perform its obligations under this Agreement; (vii) LCPI is the beneficial owner of the Original LCPI Notes and upon satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement and as of the Closing Time on the Closing Date, no other person can give the directions specified in Section 10 of this Agreement; (viii) as of the Closing Date LCPI will have obtained any and all necessary approvals to enter into and consummate the transactions set forth herein, including, but not limited to, any necessary approval of the Bankruptcy Court or the Official Committee of Unsecured Creditors; (ix) it is a sophisticated buyer and seller of securities, claims, notes and other rights such as the Barclays Notes and has adequate information concerning the Barclays Notes to enable it to make an informed decision regarding the purchase of the Barclays Notes; (x) it is a "qualified institutional buyer" as such term is defined in Rule 144A under the Securities Act of 1933, as amended, and a "qualified purchaser" within the meaning of Section 3(c)(7) of the Investment Company Act of 1940, as amended; and (xi) it has independently and without reliance upon Barclays, and based on such information as it deemed appropriate, made its own credit and legal analysis of, and decision to purchase, the Barclays Notes.

9.    <u>Securities Not Registered</u>.  LCPI acknowledges that the Barclays Notes have not been registered under the Securities Act and may not be offered, sold, transferred, hypothecated or otherwise assigned except in compliance with the Securities Act and the rules and regulations thereunder and applicable State securities laws.  LCPI represents and warrants that neither LCPI nor any person acting on its behalf has made or will make, directly or indirectly, any offers or sales with respect to any of the Barclays Notes by any form of general solicitation or general advertising (within the meaning of Regulation D under the Securities Act) or in any manner that would require the registration of the sale of the Barclays Notes from Barclays to LCPI under the Securities Act.

10.    <u>Cancellation of the Notes</u>.  Immediately after the Closing Time on the Closing Date and subject to the satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement, LCPI, as the holder of 100% of the Aggregate Outstanding Amount of the Notes and the Subordinated Notes agrees, and the Trustee, at the direction of LCPI, acknowledges that (i) all sums payable by the Co-Issuers under the Transaction Documents have been paid and (ii) all of the obligations of the Issuer and Co-Issuer in respect of the Notes and the Subordinated Notes have been fully extinguished,

and LCPI further agrees that it shall surrender (or in the case of the Barclays Notes, direct Barclays to surrender) all of the Notes and the Subordinated Notes to the Trustee for cancellation in accordance with the terms of the Indenture.

11.    <u>Termination of the Transaction Documents</u>.  Subject to the satisfaction of the agreements contained in each of the preceding Sections, each of the Parties agrees to the termination and discharge of the Indenture and other Transaction Documents and any and all duties and obligations thereunder immediately after the Closing Time on the Closing Date.  Each Party herby confirms for the benefit of the Co-Issuers that no fees, costs or expenses will become payable by the Co-Issuers to it by reason of the discharge of the Indenture or any other Transaction Document.

12.    <u>Release of Assets</u>.  In furtherance of the transactions contemplated by this Agreement and subject to the satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement, the Trustee and the Co-Issuers hereby release their respective liens on and interests in the Collateral and the rights and claims of the Issuer under the Master Participation Agreement.  In connection with such release, the Trustee and the Co-Issuers hereby authorize the filing of one or more UCC-3 financing statements with (a) the DC Recorder of Deeds, (b) the Secretary of State of New York and (c) any other applicable authority in any other applicable jurisdiction to evidence the release of the lien on such Collateral.

13.    <u>Mutual Release</u>.  As an essential term of this Agreement and the pricing of the purchase and sale, (a) LCPI and LBHI hereby irrevocably and unconditionally waive and release, and covenant not to sue with respect to, any and all claims (as defined in Section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature that LCPI or LBHI has, shall, or may have, against Barclays, Barclays' affiliates, or any of their respective officers, directors, representatives, agents, advisors, owners, partners, managers or related persons, arising out of or relating to the Barclays Notes and the Co-Issuers, or any contractual or other obligation to the Co-Issuers, known or unknown, that were in existence as of the execution of this Agreement, and (b) Barclays and Barclays Capital, Inc. ("Barcap") hereby irrevocably and unconditionally waive and release and covenant not to sue with respect to, any and all claims (as defined in Section 101(5) of the Bankruptcy Code), counterclaims, defenses, rights of setoff, debt, liens, losses, demands, damages, costs and causes of action of whatever nature that Barclays or Barcap has, shall, or may have, against LCPI, LBHI, their affiliates, or any of their respective officers, directors, representatives, agents, advisors, owners, partners, managers or related persons, arising out of or relating to the Barclays Notes, the Co-Issuers, or any contractual or other obligation to the Issuer or the Co-Issuer, known or unknown, that were in existence as of the execution of this Agreement (in each case other than claims under this Agreement), provided that these releases and covenants not to sue shall have no force or effect, and shall in all respects be void, unless and until satisfaction of the sale and purchase of the Barclays Notes contemplated by this Agreement.

Notwithstanding anything else contained herein to the contrary, each of the LCPI's, LBHI's, Barclays' and Barcap's rights and defenses with respect to any other claims each might have against the other (unrelated to the Barclays Notes, the Co-Issuers, or any contractual or other obligations to the Issuer or the Co-Issuer) are fully preserved, including without limitation, any such other rights, defenses and/or counterclaims asserted in connection with or related to (i) the Motion of Debtor to Modify the September 20, 2008 Sale Order and Granting Other Relief (Case No. 08-13555, Docket No. 5148); (ii) the Motion of the Trustee for Relief Pursuant to the Sale Orders or, Alternatively, for Certain Limited Relief Under Rule 60(b) (Case No. 08-01420, Docket No. 1682); (iii) the Motion of Official Committee of Unsecured Creditors of Lehman Brothers Holdings Inc., for Relief from Order Authorizing and Approving (A) Sale of Purchased Assets Free and Clear of Liens and Other Interests and (B) Assumption and Assignment of Executory Contracts and Unexpired Leases, Dated September 20, 2008 (and Related SIPA Sale Order) and Joinder in Debtors and SIPA Trustees' Motions for an Order Under Rule 60(B) to Modify Sale Order (Case No. 08-13555, Docket No. 5169; Case No. 08-01420, Docket No. 1686); (iv) all joinders thereto and the related adversary proceedings nos. 09-01732 (JMP), 09-01731 (JMP) and 09-01733 (JMP); and (v) the Motion of Barclays Capital Inc. to Enforce the Sale Order and Secure Delivery of All Undelivered Assets (Case No. 08-13555, Docket No. 6814; Case No. 08-1420, Docket No. 2581).  For the avoidance of doubt, (i) the Barclays Notes shall continue to be a Purchased Asset in the Sale Transaction, and their value shall continue to be included in the value of such Purchased Assets, as such terms are defined in the foregoing motions, and (ii) LBHI and LCPI waive and release any claim to rescind, avoid, or otherwise invalidate Barclays' and Barcap's acquisition of the Barclays Notes or to recover the Barclays Notes or any proceeds of the Barclays Notes from Barclays or Barcap.

14.    Release of Trustee, Collateral Administrator and Co-Issuers.    In consideration of each other Party's execution of this Termination Agreement and the transactions contemplated hereby, LCPI, LBHI and Barclays and any other party, person or entity claiming under or through them, hereby releases, discharges and acquits U.S. Bank National Association and the Co-Issuers, and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "Released Party"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that LBHI, LCPI and Barclays ever had or claimed to have, or now has or claims to have currently or at any future date, against any Released Party arising under or related to the Indenture, the obligations thereunder including but not limited to payments on the Notes issued thereunder, or the Transaction Documents, their negotiation, execution, performance, any

breaches thereof, or their termination (each a "Claim") other than Claims resulting from a Released Party's own gross negligence or willful misconduct.

15.    <u>Special Provision for Unknown Claims.</u>  All rights under Section 1542 of the California Civil Code, or any analogous state or federal law, are hereby expressly WAIVED, if applicable, with respect to any of the claims, injuries, or damages described in the Release in Section 1.  Section 1542 of the California Civil Code reads as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR."

16.    <u>Indemnification.</u>  LCPI shall indemnify U.S. Bank National Association, as Trustee and Collateral Administrator and the Co-Issuers for, and hold each of them harmless from and against, any damages, liabilities, losses, claims or expenses ("Losses") arising out of, or resulting from entering into this Agreement and consummating the transactions contemplated hereby other than Losses resulting from their gross negligence or willful misconduct.  Barclays shall indemnify US Bank and the Co-Issuers for any Losses resulting from any breach by Barclays of its representation set forth in Section 7 (ix) or (x) hereof.

17.    <u>Withdrawal of Claims</u>.  LCPI, LBHI and Barclays direct and instruct US Bank, as Trustee, to withdraw with prejudice after the Closing Time any filed Proofs of Claim (as defined in the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form (the "<u>Bar Date Order</u>") entered in the Bankruptcy Cases on July 2, 2009) filed against LBHI, LCPI or any other Debtor (as defined in the Bar Date Order) that relate to the Transaction Documents or the transactions contemplated therein.

18.    <u>Waiver of Notices and Conditions</u>.  Each Party hereby agrees that (i)any and all conditions precedent (including, without limitation, any notices required to be delivered) contained in any of the Transaction Documents or other agreements referred to herein or contemplated hereby relating to the subject matter of this Agreement are hereby waived, (ii) the terms of the Indenture and the other Transaction documents shall be deemed amended or otherwise waived in any manner necessary and appropriate to satisfy all of the respective conditions precedent relating to the discharge of the Indenture and the termination of the Transaction Documents and to accommodate the transactions contemplated herein, and (iii) each termination described herein shall be effective without any further action by any party and notwithstanding any event, notice, waiting period or other condition provided for in any such Transaction Document or such other agreements referred to herein or contemplated hereby.

19.    <u>Further Assurances</u>.  Each Party hereby agrees to duly execute and deliver to LCPI or LBHI all such other and further instruments of conveyance, transfer and

assignment and to take such other action as LCPI or LBHI may reasonably deem necessary to effectuate the release of the Collateral \and to take such further actions as may be reasonably requested by LCPI or LBHI to obtain the full and complete benefit of such release of the rights and property intended to be released hereunder subject, in each case to the payment by LCPI or LBHI of such other party's costs and expenses (including reasonable counsel fees and disbursements) in connection therewith; provided, however, that a party shall not be required to take any action which is contrary to any applicable law.

20.    Execution in Counterparts.  This Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

21.    Direction to Co-Issuers and Trustee.  Barclays, LBHI and LCPI, as holders as of the date of this Agreement of all outstanding Notes and Subordinated Notes, by their respective signatures hereto direct the Co-Issuers and the Trustee to enter into this Agreement and to consummate the transactions contemplated hereby.

22.    Governing Law.  THIS AGREEMENT AND ANY CLAIMS ARISING HEREFROM SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK WITHOUT GIVING EFFECT TO OTHERWISE APPLICABLE PRINCIPLES OF CONFLICT OF LAWS (OTHER THAN SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW).

23.    Waiver of Trial by Jury.  EACH PARTY HERETO HEREBY EXPRESSLY WAIVES ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION HEREWITH OR ARISING FROM ANY RELATIONSHIP EXISTING IN CONNECTION WITH THIS AGREEMENT OR ANY RELATED TRANSACTION, AND AGREES THAT ANY SUCH ACTION OR PROCEEDING SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.

24.    Headings.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provisions hereof or thereof.

25.    Execution by the Trustee.  U.S. Bank National Association is executing this Agreement solely in its capacity as trustee.  None of U.S. Bank National Association, in its individual capacity, or its respective officers, directors, shareholders or agents shall be liable for any claim, liability or obligation arising out of this Agreement.

26.    Termination.  The Barclays Notes are securities whose market value may fluctuate and time is of the essence for the Parties.  This Agreement will terminate automatically without notice to or action by any Party if the sale and purchase of the

Barclays Notes contemplated by this Agreement does not occur by June 30, 2011.  The Parties may, but shall have no obligation to, extend the term hereof.

27.    <u>Successors and Assigns</u>.  (a) All terms and provisions of this Agreement shall be binding only upon and inure to the benefit of and enforceable by the respective heirs, representatives, successors and assigns of the Parties hereto.  No other person is intended to, or shall, be a third party beneficiary of the promises of any Party made herein.

(b) No Party may assign its rights or obligations under this Agreement without the prior written consent of the other Parties, and any purported assignment without such consent shall be void.

28.    <u>Entire Agreement</u>.  Subject to any amendment or modification effected under Section 30 of this Agreement, this Agreement constitutes the entire agreement among the Parties with respect to the subject matter hereof and supersedes all previous agreements, promises or representations, whether written or oral, among the Parties.

29.    <u>Costs and Expenses</u>.  As among Barclays, LCPI and LBHI, each agrees to pay its own expenses and disbursements incident to the performance of its obligations hereunder.

30.    <u>Amendments</u>.  Any amendment or modification to this Agreement shall only be effective if agreed to in writing by the Parties; provided, however, that Section 6 of this Agreement may be modified or amended by a writing executed only by Barclays and LCPI; provided further, however, that any amendment or modification of Section 6 that adversely affects the rights of the Co-Issuers, the Trustee or the Collateral Administrator shall require the consent of such party adversely affected.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of day and year first above written.

LEHMAN COMMERCIAL PAPER INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13900

By: _____
    Name:
    Title:
Amount and Class of Notes held:
$0 Class A-2 Notes
$0 Class B Notes
$31,611,000 Subordinated Notes

LEHMAN BROTHERS HOLDINGS INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555

By: _____
    Name:
    Title:
Amount and Class of Notes held:
$3,943,955.04 Class A-1 Notes

U.S. BANK, NATIONAL
ASSOCIATION not individually but
as trustee and collateral administrator

By: _____
    Name:
    Title:

PINE CCS, LTD.

By: _____
    Name:
    Title:

PINE CCS, CORP.


By: _____
    Name:
    Title:

BARCLAYS BANK, PLC


By: _____
     Name:
     Title:
Amount and Class of Notes held:
$894,401,360 Class A-1 Notes


BARCLAYS CAPITAL, INC.
(with respect to Section 13 only)


By: _____
     Name:
     Title: