Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 08-13555(JMP)

5   - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   LEHMAN BROTHERS HOLDINGS, INC., et al.,

9

10          Debtors.

11

12  - - - - - - - - - - - - - - - - - - - - - -x

13

14                  U.S. Bankruptcy Court

15                  One Bowling Green

16                  New York, New York

17

18                  March 31, 2011

19                  10:16 AM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Motion of BNC Mortgage LLC for Authorization to (i)

3    Enter into Intercompany Services Agreement with Aurora Bank

4    FSB, and (ii) Reimburse Aurora Bank FSB for Certain

5    Administrative Expenses

6

7    HEARING re Debtors' Fifth Omnibus Objection to Claims (Amended

8    and Superseded Claims)

9

10   HEARING re Debtors' Sixth Omnibus Objection to Claims (Amended

11   and Superseded Claims)

12

13   HEARING re Debtors' Thirty-Fifth Omnibus Objection to Claims

14   (Valued Derivative Claims)

15

16   HEARING re Debtors' Seventy-First Omnibus Objection to Claims

17   (Valued Derivative Claims)

18

19   HEARING re Debtors' Seventy-Seventh Omnibus Objection to Claims

20   (Amended and Superseded Claims)

21

22   HEARING re Debtors' Eighty-Fifth Omnibus Objection to Claims

23   (No Liability Claims)

24

25

 1

 2   HEARING re Debtors' Eighty-Sixth Omnibus Objection to Claims

 3    (No Liability Claims)

 4

 5   HEARING re Debtors' Eighty-Seventh Omnibus Objection to Claims

 6    (No Liability Claims)

 7

 8   HEARING re Debtors' Eighty-Eighth Omnibus Objection to Claims

 9    (No Liability Claims)

10

11   HEARING re Debtors' Eighty-Ninth Omnibus Objection to Claims

12    (No Liability Claims)

13

14   HEARING re Debtors' Ninetieth Omnibus Objection to Claims (No

15    Liability Claims)

16

17   HEARING re Debtors' Ninety-First Omnibus Objection to Claims

18    (to Reclassify Proofs of Claim as Equity Interests)

19

20   HEARING re Debtors' Ninety-Second Omnibus Objection to Claims

21    (No Blocking Number LPS Claims)

22

23   HEARING re Debtors' Ninety-Third Omnibus Objection to Claims

24    (Amended and Superseded Claims)

25

1

2    HEARING re Debtors' Ninety-Fourth Omnibus Objection to Claims

3     (Duplicative of Indenture Trustee Claims)

4

5    HEARING re Debtors' Ninety-Fifth Omnibus Objection to Claims

6     (Valued Derivative Claims)

7

8    HEARING re Debtors' Ninety-Sixth Omnibus Objection to Claims

9     (Duplicative LPS Claims)

10

11    HEARING re Debtor's Ninety-Seventh Omnibus Objection to Claims

12     (Insufficient Documentation)

13

14    HEARING re Debtors' One Hundredth Omnibus Objection to Claims

15     (Settled Derivative Claims)

16

17    HEARING re Debtors' One Hundred First Omnibus Objection to

18     Claims (Settled Derivative Claims)

19

20    HEARING re Debtors' Eighty-First Omnibus Objection to Claims

21     (Duplicative Claims)

22

23    HEARING re Debtors' Eighty-Second Omnibus Objection to Claims

24     (Duplicative of Indenture Trustee Claims)

25

1

2    HEARING re Motion of GLG Credit Fund to Permit it to File a

3    Late Proof of Claim Pursuant to Federal Rule of Bankruptcy

4    Procedure 9006(b)(1)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Penina Wolicki

Page 6

1

2  A P P E A R A N C E S :

3  WEIL GOTSHAL & MANGES

4       Attorneys for Debtors

5       767 Fifth Avenue

6       New York, NY 10153

7

8  BY:   ZAW WIN, ESQ.

9        MARK BERNSTEIN, ESQ.

10       MELISSA COLON-BOSOLET, ESQ.

11

12  WEIL GOTSHAL & MANGES LLP

13       Attorneys for Debtors

14       200 Crescent Court

15       Suite 300

16       Dallas, TX 75201

17

18  BY:   ERIN D. ECKOLS, ESQ.

19

20

21

22

23

24

25

Page 7

1

2    KLESTADT & WINTERS, LLP

3         Attorneys for GLG Credit Fund

4         570 Seventh Avenue

5         17th Floor

6         New York, NY 10018

7

8    BY:   JOHN E. JURELLER JR., ESQ.

9

10

11   DUANE MORRIS LLP

12         Attorneys for Aspecta Assurance International Luxemburg

13         1540 Broadway

14         New York, NY 10036

15

16   BY:   WILLIAM C. HEUER, ESQ.

17

18

19   MILBANK, TWEED, HADLEY & MCCLOY, LLP

20         Attorneys for Official Creditors' Committee

21         One Chase Manhattan Plaza

22         New York, NY 10005

23

24   BY:   DENNIS C. O'DONNELL, ESQ.

25         BRAD FRIEDMAN, ESQ.

1

2   CHAPMAN & CUTLER

3         Attorneys for US Bank

4         111 West Monroe Street

5         Chicago, IL 60603

6

7   BY:   JAMES HEISER, ESQ. (TELEPHONICALLY)

8         FRANKLIN TOP, ESQ. (TELEPHONICALLY)

9

10   STUTMAN, TREISTER & GLATT

11         Attorneys for Elliott

12         1901 Avenue of the Stars

13         12th Floor

14         Los Angeles, CA 90067

15

16   BY:   MICHAEL NEUMEISTER, ESQ. (TELEPHONICALLY)

17

18

19   ALSO PRESENT: (TELEPHONICALLY)

20         ANATOLY BUSHLER, Farallon Capital Management

21         SARAH FILBEE, Pro Se

22

23

24

25

08-13555-mg    Doc 15893    Filed 04/01/11    Entered 04/12/11 13:32:43    Main Document
LEHMAN BROTHERS HOLDINGS, INC.; ET AL.
Pg 9 of 43

Page 9

1                      P R O C E E D I N G S

2              THE COURT:  Be seated, please.  Good morning.

3              MR. WIN:  Good morning, Your Honor.  Zaw Win from

4    Weil, Gotshal & Manges for the debtors, Lehman Brothers

5    Holdings, Inc.  This is a claims hearing with one claims matter

6    at the top of the agenda.  We understand that you have another

7    commitment at 11:30, so we're going to try to make this as

8    quick as possible.

9              THE COURT:  Fine.

10             MR. WIN:  Starting with the first matter, the motion

11   of BNC Mortgage LLC to enter into a services agreement with

12   Aurora.  There were no objections to this motion, but there

13   were a few changes to the services agreement.  So we wanted to

14   come down and explain those changes, to the extent that Your

15   Honor had any questions.

16             THE COURT:  This was originally listed for the omnibus

17   hearing about a week ago.

18             MR. WIN:  That's right.  But we didn't have a document

19   signed up at that time.  There were still a few moving pieces.

20   So we wanted to pin that down before we got final approval of

21   BNC's entry into that agreement.

22             THE COURT:  What are the things you wish to point out?

23             MR. WIN:  The most significant is that the payable is

24   now being moved into an Alverez & Marsal controlled account.

25   So rather than just having it a company payable, BNC will

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 10

1    actually have an account with cash in it, which we think is

2    significant, because as this case moves towards its resolution,

3    we'd like to have that money available for claims or, to the

4    extent that the banks are spun off at some future date, again,

5    it would be better to have that money in an account that's

6    actually controlled by Alvarez.  So that's really the only

7    significant change to the agreement.

8             THE COURT:  Okay.  Are there any issues that the

9    committee has with this?

10            MR. O'DONNELL:  No, Your Honor.  We're fine with it.

11            THE COURT:  Okay.  It's approved.

12            MR. WIN:  In that case, my colleague Erin Eckols is

13   going to handle the next portion of the claims agenda.  May I

14   be excused, Your Honor?

15            THE COURT:  You may be excused.

16            MR. WIN:  Thank you.

17            MS. ECKOLS:  Good morning, Your Honor.  Erin Eckols

18   with Weil Gotshal for the debtors.  If Your Honor does not have

19   an objection, we were going to take things a little bit out of

20   order today to at least try to minimize the number of changes

21   of people at the podium.

22            THE COURT:  Okay.

23            MS. ECKOLS:  I will be covering agenda items 2 and 3,

24   6, 7 through 16, 20 and 21.  Other members --

25            THE COURT:  You're just trying to confuse me, right?

08-13555-mg    Doc 15893    Filed 04/01/11    Entered 04/12/11 13:32:43    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 11 of 43

Page 11

1              MS. ECKOLS:  I -- well, that, of course a

2      consideration.  We're really not trying to confuse you.  We're

3      just trying to get all the uncontested matters first.

4              THE COURT:  Fine.

5              MS. ECKOLS:  Then I'll come back for the contested

6      ones.  These agenda items consist of three carry-over items

7      from prior omnibus objections and twelve new omnibus

8      objections.

9              Agenda items 2, 3 and 6 are actually all of the same

10     type, so I was going to present them all together, if Your

11     Honor does not --

12             THE COURT:  That's fine.

13             MS. ECKOLS:  These are all carry-over items from the

14     fifth, sixth and seventy-seventh omnibus objections, which Your

15     Honor previously granted.  The fifth, sixth and seventy-seventh

16     omnibus objections seek to disallow and expunge claims that

17     were amended and superseded by other claims filed by the same

18     claimant.  There were several outstanding responses to these

19     objections, all of which were filed by the same counsel and on

20     the same basis.  Counsel was concerned that if his clients'

21     original claims were expunged, that his clients would lose the

22     causes of actions asserted in those original claims.  Put

23     another way, he was concerned that the causes of actions would

24     not carry over to the surviving claims.

25             The parties negotiated and resolved the issue by

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 12

1   adding language to the proposed order specifying that all

2   causes of action included in the original claims will be

3   considered for the surviving claims.  Having resolved all

4   outstanding responses to the fifth, sixth and seventy-seventh

5   omnibus objections, the debtors request that the Court grant

6   those omnibus objections as to all remaining claims on them.

7           THE COURT:  They're all granted.

8           MS. ECKOLS:  Thank you, Your Honor.  Moving to agenda

9   item number 7, the eighty-fifth omnibus objection, this

10  objection seeks to disallow and expunge claims that fail to

11  state any factual or legal basis for a claim against the

12  debtors.  The claims at issue fail to provide the most basic

13  information required by the Court's bar date order, the

14  information which is necessary for the debtors to have adequate

15  notice of the claims asserted against their estates.

16          No formal responses were received, and accordingly,

17  the debtors respectfully request that the Court grant the

18  eighty-fifth omnibus objection to claims.

19          THE COURT:  The eighty-fifth omnibus objection to

20  claims is granted.

21          MS. ECKOLS:  Thank you, Your Honor.  Agenda items 8

22  through 12 are all of the same type of omnibus objection.  And

23  unless Your Honor has an objection, I was going to present them

24  together.

25          THE COURT:  That would be fine.

1          MS. ECKOLS:  Agenda items 8 through 12 represent

2     omnibus objections eighty-six through ninety.  These omnibus

3     objections seek to disallow and expunge claims for which the

4     debtors have no liability.  The claims at issue seek to recover

5     for securities that were neither issued nor guaranteed by the

6     debtors in these Chapter 11 cases.  The securities were issued

7     and guaranteed by foreign entities, none of whom are debtors in

8     these proceedings.

9          Thus the claims at issue seek to recover against the

10    debtors for obligations of these nondebtor foreign entities

11    without articulating any basis for doing so.  The debtors are

12    proceeding uncontested, as all unresolved responses have been

13    adjourned, and the debtors respectfully request that the Court

14    grant the debtors' eighty-sixth through ninetieth omnibus

15    objections.

16          THE COURT:  All of those objections are granted.

17          MS. ECKOLS:  Thank you, Your Honor.  Agenda item 13,

18    which is the ninety-first omnibus objection.  This seeks to

19    reclassify as equity interests proofs of claims that are based

20    on the ownership of stock in the debtors.  Stock is an equity

21    security under the Bankruptcy Code, and the holders of the

22    stock claims are equity security holders with interests but not

23    claims against the debtors.  The debtors are proceeding

24    uncontested today, and respectfully request that the Court

25    grant the debtors' ninety-first omnibus objection.

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 14

```
 1              THE COURT:  The ninety-first omnibus objection is

 2     granted.

 3              MS. ECKOLS:  Thank you, Your Honor.  Moving to agenda

 4     item number 14, which is the debtors' ninety-second omnibus

 5     objection to claims, this objection seeks to disallow and

 6     expunge Lehman Program Securities claims that violate the bar

 7     date order's requirement that such claims include an electronic

 8     reference or blocking number.  The debtors have adjourned all

 9     unresolved responses, and are proceeding uncontested.

10     Accordingly, the debtors respectfully request that the Court

11     grant the ninety-second omnibus objection.

12              THE COURT:  The ninety-second omnibus objection is

13     granted.

14              MS. ECKOLS:  Thank you, Your Honor.  Agenda item

15     number 15 is the ninety-third omnibus objection.  It seeks to

16     disallow and expunge claims that were amended and superseded by

17     subsequently filed claims.  No formal responses were received

18     and the debtors are proceeding on an uncontested basis.

19              Certain language in the proposed order has been

20     modified as the result of negotiations with counsel.

21     Specifically, the order has been modified to clarify that the

22     debtors' right to object to the claims designated as surviving

23     claims, is limited to the extent that such claims have been

24     allowed, either by order of this Court or by virtue of

25     settlement agreements that the debtors have been authorized to
```

08-13555-mg   Doc 15893   Filed 04/01/11   Entered 04/12/11 13:32:43   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 15 of 43

Page 15

1    enter into.

2           And, Your Honor, if I may approach, I have a red-line

3    copy of the proposed order that reflects the negotiated

4    language.

5           THE COURT:  You may approach.

6        (Pause)

7           THE COURT:  You're going to have to explain the red-

8    line language on page 3.

9           MS. ECKOLS:  Okay.

10          THE COURT:  Some of it is bolded and some of it is

11   simply underlined.

12          MS. ECKOLS:  It was just the negotiation of counsel

13   that certain language was bolded to make it clear that the

14   claims -- that the debtors --

15          THE COURT:  Are you saying that somebody insisted that

16   there be bolding --

17          MS. ECKOLS:  Yes.

18          THE COURT:  -- of certain of the words?  Is that

19   lawyer in the room?

20          MS. ECKOLS:  No.

21          THE COURT:  And I bet if that lawyer is in the room

22   that lawyer would not want to identify himself or herself.

23          MS. ECKOLS:  I would tell you if it was me.

24          THE COURT:  Okay.  And can you explain to me why this

25   order, in contrast with other orders, includes this language?

1            MS. ECKOLS:  Yes, Your Honor.  Certain of the prior

2    orders on the amended and superseded claims do contain some

3    variation of this language.  What has occurred is that certain

4    parties entered into settlement agreements with the debtors

5    stating that their claims would be allowed in a certain amount.

6    They then filed amended claims to conform their claim to the

7    amount that was agreed upon, which then results in us having

8    two claims on the claims register.

9            In order to clean that up, we filed these amended and

10   superseded objections.  But since the standard language in

11   those orders reserves all the debtors' rights to object to the

12   surviving claim, certain parties have requested carve-outs of

13   those.

14           THE COURT:  Okay.  Thank you for the explanation.

15           MS. ECKOLS:  Your Honor, as we mentioned, the debtors

16   are proceeding uncontested as to this omnibus objection, and

17   respectfully request that the Court grant the ninety-third

18   omnibus objection.

19           THE COURT:  The ninety-third omnibus objection is

20   granted.

21           MS. ECKOLS:  Thank you, Your Honor.  Moving on to

22   agenda item 16, which is the ninety-fourth omnibus objection to

23   claims.  The ninety-fourth omnibus objection seeks to disallow

24   and expunge individual noteholder claims that are duplicative

25   of the claims filed by Wilmington Trust and/or Bank of New York

1    Mellon as indenture trustees for those notes.

2          The debtors received one formal response which has

3    been adjourned to allow the parties to work on a resolution.

4    Accordingly, the debtors respectfully request that the Court

5    grant the ninety-fourth omnibus objection.

6          THE COURT:  The ninety-fourth omnibus objection is

7    granted.

8          MS. ECKOLS:  Now, Your Honor, at this point, I'm going

9    to skip over agenda items 17 through 19, and move to agenda

10   item number 20 which is the hundredth omnibus objection to

11   claims, which is seeking the modification and allowance of

12   derivative claims for which the parties reached an agreement

13   with respect to the claim amount, classification, and/or debtor

14   entity, that is not reflected on the claimant's proof of claim.

15         This omnibus objection is seeking to modify those

16   claims to conform to the parties' agreement.  Accordingly, the

17   debtors respectfully request that the Court grant the hundredth

18   omnibus objection to claims.

19         THE COURT:  The hundredth omnibus objection to claims

20   is granted.

21         MS. ECKOLS:  Thank you, Your Honor.  Moving to agenda

22   item 21, the 101st omnibus objection, this objection seeks the

23   disallowance and expungement of derivative claims that have

24   been settled between the parties, either with a payment to the

25   debtors or with no amounts being due between the parties.

```
 1            The omnibus objection is seeking to expunge those

 2    claims to effectuate the parties' agreement.  The debtors are

 3    proceeding uncontested, having received no formal responses,

 4    and the debtors respectfully request that the Court grant the

 5    101st omnibus objection to claims.

 6            THE COURT:  The 101st omnibus objection to claims is

 7    granted.

 8            MS. ECKOLS:  Thank you, Your Honor.  At this point, I

 9    will turn the podium over to my colleague, Melissa Colon-

10    Bosolet.

11            THE COURT:  Thank you.

12            MS. ECKOLS:  Thank you.

13            MS. COLON-BOSOLET:  Good morning, Your Honor.  Melissa

14    Colon-Bosolet with Weil Gotshal, here on behalf of the debtors

15    as well.  I'm going to address agenda item number 4, debtors'

16    thirty-fifty omnibus objection; agenda item number 5, the

17    seventy-first omnibus objection; and later agenda number 17,

18    the debtors' ninety-fifth omnibus objection.  All of these are

19    uncontested matters.

20            With respect to the thirty-fifth omnibus objection,

21    since the original claims hearing on October 27th, debtors have

22    successfully settled with an additional counterparty, Global

23    Thematic Opportunities Fund.  We respectfully request that Your

24    Honor grant a second supplemental order on the thirty-fifth

25    omnibus, reducing and allow the claims in the settled amounts.
```

08-13555-mg    Doc 15893    Filed 04/01/11    Entered 04/12/11 13:32:43    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 19 of 43

Page 19

1          THE COURT:  It's granted.

2          MS. COLON-BOSOLET:  With respect to the seventy-first

3    omnibus objection, since the original claims hearing on January

4    20th, debtors have successfully settled with three additional

5    counterparties named in the objection:  ASA California Tax

6    Advantaged Fund, ASA Tax Advantage Relative Value Fund, and ASA

7    Taxable Relative Value Fund.

8          We respectfully request that Your Honor grant an order

9    on debtors' seventy-first omnibus objection reducing and

10   allowing these three claims in the settled amount.

11         THE COURT:  That objection is granted with respect to

12   those parties.

13         MS. COLON-BOSOLET:  Thank you, Your Honor.  Turning

14   now to the ninety-fifth omnibus objection, the debtors are

15   seeking to reduce and allow twenty-seven claims relating to

16   eleven counterparties.  These eleven counterparties failed to

17   file any response to the objection, and debtors seek to reduce

18   and allow these twenty-seven claims on an uncontested basis.

19         There are also nine remaining claims in the ninety-

20   fifth omnibus objection belonging to five various

21   counterparties.  These counterparties either filed timely

22   responses to the objection or were granted extensions to the

23   response deadline by the debtors.  Settlement discussions have

24   begun with a number of these remaining claimants, and debtors

25   respectfully request that this Court adjourn the hearing as to

Page 20

1    these nine claims until the next hearing date on April 28th.

2            THE COURT:  That request is granted.

3            MS. COLON-BOSOLET:  Thank you, Your Honor.  I'm going

4    to turn the podium over, now, to my colleague, Mark Bernstein.

5            MR. BERNSTEIN:  Good morning, Your Honor.  Mark

6    Bernstein of Weil, Gotshal & Manges on behalf of the Lehman

7    Chapter 11 debtors.  I'm going to take you through items number

8    18 and 19 on the agenda.

9            Number 18 is an omnibus -- the ninety-sixth omnibus

10   objection.  It relates to duplicative claims filed based on

11   Lehman Program Securities.  The Lehman Program Securities were

12   subject to the alternative claims filing procedures that we

13   included in the bar date order.  One of the concerns relating

14   to those securities were, who was the proper entity to file

15   claims based on those securities?  Was it the beneficial holder

16   or the record holder?  Because there was no indenture trustee

17   for those securities.

18           What -- those procedures provided that there was

19   flexibility for who was able to file those claims.  And as the

20   result, in many cases, both the record holder and the

21   beneficial holder filed a claim based on the exact same

22   security.  This objection is seeking to expunge the claims of

23   the beneficial holder, and leave standing the claims of the

24   record holder for those securities.

25           We did not receive any formal responses to this

1    objection.  We did receive certain informal responses where the

2    beneficial holders requested that they be the surviving

3    claimant and the record holder for those securities agreed to

4    reduce their claim proportionately.  And the debtors had no

5    problem with that, and that's been taken care of.

6          There is one clarification to the order, some language

7    that we added to address the concerns of one particular party.

8    I have a black-line, if I can hand it up to Your Honor?

9          THE COURT:  Please.  Thank you.

10         MR. BERNSTEIN:  Something that just makes it clear

11   that this order is not a finding in any way with respect to the

12   relationship between the beneficial holder and the record

13   holder, and whatever relationship they had previously is not

14   affected by this order.

15         Other than that there were no objections, and this is

16   uncontested.  And we request Your Honor grant the ninety-sixth

17   omnibus objection.

18         THE COURT:  The ninety-sixth omnibus objection to

19   claims is granted.

20         MR. BERNSTEIN:  Thank you.  The ninety-seventh omnibus

21   objection is an objection to claims that did not include

22   sufficient documentation along with the claim to enable the

23   debtors to evaluate the claims.  These claims were filed by

24   parties that purchased residential mortgage loans from the

25   debtors prior to the petition date.  And in those loan sale

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 22

1    agreements, there were provisions that provided the debtors

2    would either repurchase or indemnify the holders for losses

3    that they sustained relating to those loans, to the extent

4    there were any breaches or representations by the debtors, with

5    respect to those loans.

6         Since these claims necessarily require a review of

7    each loan and the related breach and the loss that the parties

8    sustained, there is a significant amount of information that's

9    required to fully evaluate these claims.  These particular

10   claims that were subject to this omnibus objection did not

11   include any supporting documentation.  The debtors, multiple

12   times, have reached out to these parties to attempt to acquire

13   such information.  These parties did not -- the parties that

14   are going forward on this date have not responded.  For parties

15   that did respond, the debtors have agreed to adjourn the

16   objection in the hopes of the party providing documentation

17   over time; and the debtors are working with those parties.

18        The claims that are going forward here today have not

19   responded.  This is uncontested, and we request the Court grant

20   the ninety-seventh omnibus objection.

21        THE COURT:  The ninety-seventh omnibus objection is

22   granted on an uncontested basis.

23        MR. BERNSTEIN:  Thank you.  That concludes the

24   uncontested portion of the agenda.  I will turn the podium back

25   over to Erin Eckols to handle the first two contested matters.

LEHMAN BROTHERS HOLDINGS, INC.; ET AL.

Page 23

 1          THE COURT:  Okay.

 2          MR. BERNSTEIN:  Thank you, Your Honor.

 3          THE COURT:  Thank you.

 4          MS. ECKOLS:  Your Honor, we have two contested omnibus

 5   objection matters on the agenda today.  The first one is agenda

 6   item 22, which is a carry-over item from the eighty-first

 7   omnibus objection, which the Court previously granted.

 8          The eighty-first omnibus objection seeks to disallow

 9   and expunge claims that are duplicative, either exactly or in

10   substance, of other claims filed by the same claimant on the

11   claims register.  Today the debtors are proceeding on an

12   uncontested and contested basis as to this objection.

13          Taking the uncontested portion first, the debtors are

14   proceeding as to East Bay Municipal Utility District's claim

15   32176.  East Bay filed a formal response opposing the eighty-

16   first objection, which response has since been resolved.  East

17   Bay has withdrawn its opposition to the eighty-first omni, and

18   its notice of withdrawal is docket entry 14624.  Accordingly,

19   the debtors respectfully request that the Court grant the

20   eighty-first omnibus objection as to East Bay Municipal Utility

21   District's claim 32176.

22          THE COURT:  The eighty-first omnibus objection is

23   granted as to East Bay Municipal.

24          MS. ECKOLS:  Thank you, Your Honor.  With respect to

25   the contested portion today, the debtors are proceeding as to

1   claims 45210 and 45211 filed by Ong Stephen Chua and Ong

2   Elizabeth Yutan.  The debtors have determined that those two

3   claims are duplicative of claims 42686 and 42688 respectively,

4   filed by the same claimants.  The claimants filed a formal

5   response stating that they oppose the objection, but provided

6   no basis other than the belief that their claims are valid.

7          Regardless of whether or not the claims are

8   substantively valid, which is not the issue before the Court

9   today, claims 45210 and 45211 are exact duplicates of claims

10  42686 and 42688.  To prevent duplicative recovery and maintain

11  a more accurate claims register, those claims should be

12  disallowed and expunged.  Accordingly, the debtors respectfully

13  request that the Court grant the eighty-first omnibus objection

14  as to claims 45210 and 45211.

15          THE COURT:  I'm prepared to do that.  And I read the

16  response of these objecting parties.  Are either of them

17  present in court or on the telephone?

18          Evidently not.  These response of Ong Stephen Chua and

19  Ong Elizabeth Yutan does not constitute a sufficient response

20  to the objection, and is overruled.  And the eighty-first

21  omnibus objection to claims is granted as to these parties.

22          MS. ECKOLS:  Thank you, Your Honor.  Moving to agenda

23  item 23, which is a carry-over item from the debtors' eighty-

24  second omnibus objection which Your Honor previously granted at

25  the March 3rd claims hearing.  The eighty-second omnibus

1   objection seeks to disallow and expunge individual noteholder

2   claims that are duplicative of the claims filed by Wilmington

3   Trust Company and/or the Bank of New York Mellon, as indenture

4   trustees, seeking to recover for those same notes.

5           Today we are proceeding as to claim 9187 of William H.

6   Smith and as to claim 9974 of the Francis J. Hill IRA.  Mr.

7   Smith and Ms. Hill filed a joint response opposing the eighty-

8   second omnibus objection.  In the response Mr. Smith and Ms.

9   Hill do not dispute that they are seeking to recover for the

10  same securities that Bank of New York Mellon, as indenture

11  trustee, is also seeking to recover for under its claim 21803.

12          Specifically, the Smith and Hill claims seek to

13  recover for securities identified with the CUSIP 52520X208,

14  which is the same security that Bank of New York Mellon is

15  seeking to recover for under claim 21803.  Accordingly, the

16  Smith and Hill claims are duplicative of claim 21803, filed by

17  the Bank of New York Mellon as indenture trustee, and should be

18  disallowed and expunged on that basis.

19          Accordingly, the debtors respectfully request that the

20  Court grant the eighty-second omnibus objection as to claim

21  9187 of William H. Smith and as to claim 9974 of the Francis J.

22  Hill IRA.

23          THE COURT:  Are either of these claimants in court or

24  on the telephone?

25          I hear no response.  I read the response and agree

08-13555-mg    Doc 15893    Filed 04/01/11    Entered 04/12/11 13:32:43    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 26 of 43

Page 26

1    with the characterization of counsel.  The response does not

2    constitute a sufficient objection and is overruled.  And the

3    debtors' eighty-second omnibus objection to claims is granted

4    as to William Smith and Francis Hill.

5         MS. ECKOLS:  Thank you, Your Honor.  And with that, I

6    will turn the podium to GLG's counsel to complete today's

7    agenda.

8         MR. JURELLER:  Good morning, Your Honor.

9         THE COURT:  Good morning.

10        MR. JURELLER:  John Jureller from Klestadt & Winters

11   on behalf of GLG Credit Fund.  This is a motion to deem a late

12   filed proof of claim timely filed.

13        This claim arises from a strategic client service

14   agreement between GLG Partners, which is the fund manager for

15   GLG, and LBIE.  It actually supplements a previous similar

16   agreement between GLG and LBI.

17        THE COURT:  Can I break in and ask you a question?

18        MR. JURELLER:  Sure.

19        THE COURT:  Which is just purely about scheduling.

20   This matter was originally scheduled for hearing last summer.

21        MR. JURELLER:  Last August, correct.

22        THE COURT:  And a lot of time has gone by.  Why is it

23   being pressed now?

24        MR. JURELLER:  The reason why the time has gone by,

25   Your Honor, and it's been on consent of counsel, I actually had

Page 27

1   surgery in the fall, and as a result of that, I'm just getting

2   back into the office.

3        THE COURT:  Okay.  I'm sorry to hear about the

4   surgery.  I'm glad you're fine now.

5        MR. JURELLER:  Well, hopefully.

6        As I said, this is a -- this claim arises from

7   agreement between GLG and LBIE.  And there's a subsequent

8   super-prime agreement between GLG and LBIE as well.  Basically,

9   pursuant to the agreement, LBIE handled all of the transactions

10  for GLG:  clearing, processing and servicing.

11       Pursuant to section V(1) of the agreement, all

12  securities and funds received by Lehman or an affiliate of

13  Lehman on client's behalf -- client being GLG -- in connection

14  with transactions, will be credited to the account.  The

15  account was defined in the agreement as, "client's account

16  maintained by Lehman in its books and records, to record the

17  client's position in the transactions."  The transactions

18  included, amongst other things, swap transactions.

19       As a result of this agreement, GLG booked and

20  accounted for all of the transactions through LBIE as going

21  through this particular account, whether or not it went through

22  any of the other affiliates of LBIE as well.  The amount at

23  issue here --

24       THE COURT:  Let me break in and ask you a question.

25       MR. JURELLER:  Sure.

08-13555-mg   Doc 15893   Filed 04/01/11   Entered 04/12/11 13:32:43   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 28 of 43

Page 28

1      THE COURT:  Why should that matter in a situation in

2    which your client received notice of a proof of claim bar date

3    obligation that gave your client information on the basis of

4    which, with reasonable reading and diligence, it could have

5    concluded that this was a claim against LBSF?

6          MR. JURELLER:  Well, Your Honor, to answer that

7    question.  Our client, GLG, who is very active in the LBI

8    bankruptcy, they're one of the main clients --

9          THE COURT:  I understand.  And so as a result,

10   presumably, they assumed that they didn't have to think as

11   carefully as they actually needed to think about the LBSF

12   bankruptcy case.  They perhaps, by their own conduct, assumed

13   that this was an LBIE claim.  And it may, in fact, be one that

14   they can pursue at the LBIE level.

15         I'm not sure that their internal assessment of the

16   relationship has much bearing on the question of whether or not

17   there is or is not a good claim to be made now, so many months

18   after the bar date.

19         MR. JURELLER:  Well, I'll address that with two

20   different points.  Number one, GLG relied upon the agreement

21   that they had with LBIE.  This is how everything was booked and

22   the accounting practice went from 2003 forward.  In fact, it

23   was actually before that, because they had the agreement with

24   LBI previously.  So this is how their accounting practice was

25   set up.  Whether it was right or wrong, whether they

08-13555-mg   Doc 15893   Filed 04/01/11   Entered 04/12/11 13:32:43   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 29 of 43

Page 29

1    interpreted the contract different than Lehman, this is how it

2    was set up internally within GLG.

3         THE COURT:  But even in your reply papers, you note

4    that LBIE, for purposes of your understanding, is defined as

5    "Lehman", and there is the ability to transfer within the

6    enterprise from affiliate to affiliate, various assets and

7    liabilities.  Wasn't GLG on notice that it needed to do

8    diligence beyond LBIE in order to protect its rights?

9         MR. JURELLER:  Well, you know, again, as I said, their

10   understanding was everything was booked through LBIE.  And

11   that's how their accounting practice worked.  So they never

12   went beyond that.  They believed, as part of the service

13   agreement, that they were able to rely on LBIE as being the

14   account, and the LBIE did balance -- effectively balance sheet

15   transactions within the Lehman affiliates.  But all that was

16   credited and debited through this particular account.

17        The second point I'm at.  The notice that they

18   received governing LBSF having an account listed, I guess, it

19   was on Schedule G.  However, in the same vein, LBSF did not

20   list anything under Schedule F for this account.  So it kind of

21   shows that LBSF had that same understanding.  That's, there was

22   an account there which would have -- an internal account,

23   typically for the swap transactions, because it was collateral.

24        However, there was nothing listed on any of the

25   schedules showing that there was actually money in the account.

Page 30

 1    And you would assume -- and I think you can assume, and I think

 2    it's reasonable -- that because of that, there is no evidence

 3    that they should have known that LBSF had it.  If LBSF knew we

 4    have an account that's holding this collateral for GLG, why was

 5    it not listed on the schedules?

 6              THE COURT:  Wasn't notice of the bar date itself

 7    reason for GLG to take a look at this, particularly since there

 8    was a reference to Schedule G?

 9              MR. JURELLER:  Well, I think -- to answer that

10    question.  GLG -- and I think you could look at the history of

11    what GLG did in this case.  With respect to LBIE, they were

12    seriously involved in the case.  They filed a timely claim for

13    the full amount.  They believed that everything was with LBIE.

14    And it shows that from their claim.

15              They also filed a timely claim with LBHI for a

16    guarantee of all of these accounts, all of these transactions.

17    It was timely filed.  Everything was complied with.  Because of

18    that, it's clear that they didn't just ignore the process here.

19    They had hundreds and thousands of transactions through Lehman

20    Brothers.  They thought that these transactions went through

21    LBIE and that's where they were accounted.

22              THE COURT:  So they made a mistake?

23              MR. JURELLER:  I think they made a reasonable

24    assumption based upon the contract between the parties which

25    lists an account for all transactions for Lehman and its

08-13555-mg   Doc 15893   Filed 04/01/11   Entered 04/12/11 13:32:43   Main Document
Pg 31 of 43
LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 31

1   affiliates.  And I think they could have made a reasonable

2   assumption based upon the fact that LBSF did not list that

3   account as being a creditor.

4           THE COURT:  So they're asserting this claim currently

5   against LBIE?

6           MR. JURELLER:  The claim has been asserted as of LBIE

7   right now, yes.  This claim against LBSF, if this is truly

8   where the funds are held, is, I guess you could say,

9   precautionary.  And that's an issue that we think should be

10  dealt with at the claims objection period, rather than not

11  allowing the proof of claim at this point.

12          THE COURT:  Okay.  I understand your position.

13          MR. JURELLER:  Thank you, Your Honor.

14          MR. BERNSTEIN:  Your Honor, Mark Bernstein, again,

15  from Weil, on behalf of Lehman.

16          Your Honor put your finger on the exact right issue

17  here, which is the fact that regardless of whether Lehman or

18  LBIE complied with the provisions of the agreement that they

19  had with GLG -- and I think that there is -- as you noted,

20  there is language in there that says affiliates of LBIE would

21  be performing services on behalf of GLG and did perform

22  services.  But regardless of that fact, GLG was given notice

23  twice that LBSF was holding cash on behalf of GLG:  once in a

24  statement received six days before the bar date, giving them

25  the amount of such cash and then the interest accrual; and then

08-13555-mg    Doc 15893    Filed 04/01/11    Entered 04/12/11 13:32:43    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 32 of 43

Page 32

1    again when we provided notice of the bar date order, they were

2    listed on Schedule G.

3            And I'm not exactly sure I followed Mr. Jureller's

4    point.  They were listed as having an account at LBSF.  We

5    didn't list the amount in the account, but having being listed

6    on the schedules of liabilities, should -- certainly gave GLG

7    enough of actual notice that they might want to pursue or at

8    least investigate whether or not they had a claim against LBSF.

9            GLG is trying to shoehorn their argument into the late

10   claims that had previously been allowed in this case where the

11   Court found it was not entirely within the control of the

12   movants, but rather they were confused by the bar date order.

13   Here, there's no argument that GLG was not solely in control

14   and caused their own failure to file the late claim.

15           They had notice of the account.  They had notice of

16   the bar date.  The bar date was more than a year after the

17   commencement of the case.  GLG is a sophisticated party.  They

18   were involved in the Lehman cases.  Because of their

19   intertwined relationship with Lehman, I would think that should

20   have given them more reason to investigate where their cash and

21   where their collateral was being held rather than less of a

22   reason or a cause of confusion.

23           This Court and the Second Circuit has taken a hard-

24   line approach in applying the Pioneer factors, finding that the

25   reason for the delay is the most important factor.  The reason

1    for delay here is GLG made a mistake.  They did -- they missed

2    the bar date.  They didn't investigate their claims as they

3    have a duty to do.  And therefore, they are at fault for the

4    filing of the late claim.

5           Their late claim was filed nine months after the bar

6    date, not merely a couple days, which is a significant delay.

7    And even in the context of these cases, the debtors are already

8    negotiating plans and disclosure statements.  The plan is a --

9    includes various complex compromises.  And an increase of

10   claims at this point, certainly could prejudice those

11   negotiations and the estimated distribution to various parties.

12          In this Court's prior opinion, as well, the Court

13   noted that it is -- it would be prejudicial at this point to

14   have an additional influx of claims, and a strict application

15   of the bar date order is necessary to manage the enormous

16   claims process that the debtors have to undergo here.  For

17   those reasons, we don't think GLG has satisfied the burden,

18   which is theirs, of establishing excusable neglect in this

19   case, and their motion should be denied.

20          THE COURT:  All right.  Thank you.  I'll hear from the

21   committee, and then I want to give Mr. Jureller an opportunity

22   to respond.

23          MR. O'DONNELL:  Okay, Your Honor.  Dennis O'Donnell;

24   Milbank, Tweed, Hadley & McCloy on behalf of the official

25   committee.

08-13555-mg   Doc 15893   Filed 04/01/11   Entered 04/12/11 13:32:43   Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 34 of 43

Page 34

1          Your Honor we filed a joinder in the debtors'

2     objection, largely for all the reasons just articulated by Mr.

3     Bernstein.  The one fact here that's most telling is that GLG

4     is not able to deny that it received the account statement, it

5     received the other information.  It attempts to argue around it

6     in terms of the argument based on the contract.  But the

7     contract, whatever the contract said, they had the documents

8     and they were on notice.

9          And given everything they also say in the reply about

10    the nature of their relationship with Lehman and how things

11    moved back and forth within Lehman, they were on notice and

12    should have -- I think the only proof, of course, here, would

13    have been to file proofs of claim against any Lehman entity

14    with whom they had had dealings in the past.  And they failed

15    to do that.  And I don't think they did what they needed to do

16    to satisfy the excusable neglect standard.  Thank you.

17          THE COURT:  Okay.  Mr. Jureller, you can respond to

18    what you've heard.  But I also have a question for you --

19          MR. JURELLER:  Sure.

20          THE COURT:  -- about a statement that was made at the

21    conclusion of your reply which I read as a, if all else fails,

22    we have a litigation option and might bring a declaratory

23    judgment action.  Did I read that correctly?

24          MR. JURELLER:  I think it was a reservation of rights,

25    Your Honor, is what it was meant to be, because the funds that

08-13555-mg    Doc 15893    Filed 04/01/11    Entered 04/12/11 13:32:43    Main Document
LEHMAN BROTHERS HOLDINGS, INC.; ET AL.
Pg 35 of 43

Page 35

1    were being held --

2            THE COURT:  Well, I read it as, if I lose this, I'm

3    going to bring a claim of some sort in a different forum.

4            MR. JURELLER:  No, it wasn't meant to be that way.  It

5    was meant to be a reservation of rights that we may have that

6    option to bring a claim, because this was collateral.  And

7    whether or not Lehman had title to those funds, because they

8    were being held pursuant to the agreement on behalf of GLG, it

9    was a reservation of right as to that point.

10           THE COURT:  Okay.

11           MR. JURELLER:  Just to address a couple of the points

12   that were brought up here.  One regarding the notice from

13   Schedule G, and just a point of -- a clarification on that.

14   The LBSF transactions with GLG were derivative swap

15   transactions.  And each of those derivative swap transactions

16   were terminated and closed out more than a year before the

17   bankruptcy.  So there were no other transactions going on

18   between GLG and LBSF, such that they would think that there

19   would be funds or some sort of claim, related to LBSF.  That's

20   one point.

21           THE COURT:  Isn't that speculation, though, on your

22   part?  You're saying because there were no current

23   transactions, and the cash that is at issue here at LBSF

24   resulted from transactions from the year before the bankruptcy,

25   that they would make certain assumptions that there was no

08-13555-mg    Doc 15893    Filed 04/01/11    Entered 04/12/11 13:32:43    Main Document
LEHMAN BROTHERS HOLDINGS, INC., ET AL.
Pg 36 of 43

Page 36

1    claim notwithstanding having received actual notice?

2          MR. JURELLER:  Well, I think that --

3          THE COURT:  The actual notice problem here is a real

4    issue for you to get around.  Because if they had simply read

5    the papers, they'd see that there was a potential to bring a

6    claim against LBSF, regardless of when the claim arose.

7          MR. JURELLER:  Well, I think the question is whether

8    or not, looking at the full circumstance of the situation,

9    whether or not it would be reasonable for them to assume that

10   based upon their understanding since 2003, the way that they

11   worked with LBIE, that once those credit default swap

12   transactions with LBSF were finished and terminated, that the

13   collateral would be recredited and debited on these balance

14   sheet transactions and transfers within Lehman.  That was the

15   type of agreement that they had there, and that's why they --

16   you know, everything went through this particular account.

17   Lehman was handling it.

18          THE COURT:  That's why they assumed that they could

19   reliably pursue their claims directly against LBIE.  But that

20   doesn't mean that it was correct for them, given the free flow

21   of funds throughout the Lehman empire, to disregard the

22   potential for claims here.  In fact, your having filed a

23   protective proof of claim on the guarantee against LBHI

24   demonstrates that there was at least a recognition that there

25   were claims to be pursued and protected here by a certain

Page 37

1    deadline.

2            MR. JURELLER:  That's correct regarding LBHI.

3            THE COURT:  Right.

4            MR. JURELLER:  You know, I think that goes to show

5    that these -- that GLG was on top of it.

6            THE COURT:  They were on top of it --

7            MR. JURELLER:  But if they would have thought that

8    there was a claim --

9            THE COURT:  They were on top of it, but they made a

10   grave mistake.

11           MR. JURELLER:  But they made a grave mistake based

12   upon the reasonable reading of the agreement that they've had

13   in place for five years prior to that day.  And they

14   understood, and they've always booked it through -- as coming

15   through LBIE, whether there is collateral put to LBSF, whether

16   there were transactions with LCPI.  Everything went through

17   LBIE.  That was the relationship they had with them.

18           It was this super-prime relationship that the debtors

19   set forth in their opposition paper where it was this all-

20   encompassing agreement that basically they did everything for

21   GLG, when GLG did transactions.  They moved the money the way

22   that it was supposed to be moved, and it came back the way it

23   was supposed to be --

24           THE COURT:  But, Mr. Jureller, they actually turn that

25   against you by arguing that because of the so-called super-

Page 38

1    prime relationship that you had and your knowledge of the way

2    transactions worked with LBIE and its affiliates, that you

3    should have exercised -- your clients should have exercised

4    greater diligence at the time proofs of claim were due.  What's

5    your response to that?

6              MR. JURELLER:  That's their argument, of course.

7              THE COURT:  That's right.  And what's your argument in

8    response to that?

9              MR. JURELLER:  My argument in response to that is that

10   basically what they relied upon is the agreement that they had

11   in place and the ongoing relationship that they had with LBIE,

12   and that this is how their accounting practice worked for a

13   substantial period of time prior to the bankruptcy.

14             THE COURT:  Okay.

15             MR. JURELLER:  And I'd just address one other point

16   too.  If we get to that point -- is whether or not this opens

17   up the proverbial can of worms to other claims being filed.  I

18   think this is a little bit different --

19             THE COURT:  I think it's the -- it's not the can of

20   worms, it's the Pandora's box.

21             MR. JURELLER:  Pandora's box.  There you go.  Thank

22   you for that.  I think this case is sufficiently different than

23   all of the other cases that have come before you to file late

24   proofs of claims.  This is based upon a very close relationship

25   with the debtor, an agreement that's in place, contract

08-13555-mg   Doc 15893   Filed 04/01/11   Entered 04/12/11 13:32:43   Main Document
LEHMAN BROTHERS HOLDINGS, INC.; ET AL.
Pg 39 of 43

Page 39

1    interpretation and whether or not the accounting system and the

2    accounting practices of GLG as compared to Lehman were

3    adequate.  And that may be -- a better place for that would be

4    a claims objection rather than to decline a claim for

5    collateral at this point in time.  I have nothing further.

6            THE COURT:  Okay.  Thank you.  Anything more from any

7    party?

8            I've reviewed with some care the papers that were

9    filed by GLG Credit Fund and the papers filed in opposition by

10   the debtors as well as the joinder of the creditors' committee.

11   And I've considered the argument.

12           This is really one of the easier motions for me to

13   deny, particularly in light of the decision that I issued last

14   year in connection with a number of late-filed claims.  That

15   decision, incidentally, was appealed by one of the aggrieved

16   parties to the district court; and Judge Pauley, within the

17   last several months affirmed my decision.  So we now have both

18   a bankruptcy court decision and a district court decision

19   recognizing the validity of the hard-line approach being

20   applied, particularly in the context of the Lehman case.

21           GLG loses here principally because they had actual

22   notice of the ability to file a claim against LBSF and did not

23   do so by the bar date.  And their conduct demonstrates an

24   awareness of the complexity of the relationship that they had

25   with LBIE, the fact that LBIE would be doing business not only

LEHMAN BROTHERS HOLDINGS, INC., ET AL.

Page 40

1    directly with GLG, but through affiliates of LBIE.  And there

2    really is no good excuse for having failed to satisfy the

3    requirements of the bar date other than what is alleged to be

4    reliance upon a certain accounting practice of GLG, and what I

5    take to be their assumption that they were dealing primarily,

6    if not exclusively, with LBIE.  The language of the agreement

7    says otherwise by noting that LBIE had the ability to transfer

8    assets and liabilities to affiliates.

9         It is really the actual notice problem that is the

10   greatest problem for this late-filed claim.  And to the extent

11   there are reserved rights for GLG to pursue other procedural

12   remedies here, certainly those rights exist.  But as to this

13   motion for leave to file a late claim, that motion is denied,

14   substantially for the reasons stated in my earlier opinion.

15   I'll entertain an order.

16        Is there anything more for the current hearing?

17        MR. BERNSTEIN:  No, Your Honor.  That concludes our

18   agenda for this morning.

19        THE COURT:  All right.  We'll adjourn the Lehman

20   hearing.

21        (Whereupon these proceedings were concluded at 11:00 AM)

22

23

24

25

```
 1

 2                              INDEX

 3

 4                             RULINGS

 5                                          Page    Line

 6    Motion of BNC Mortgage to enter into    10      11

 7    agreement, approved

 8    All remaining objections to claims in 5th,  12    7

 9    6th and 77th omnibus objections, granted

10    85th omnibus objection to claims, granted  12   19

11    86th through 90th omnibus objections, granted  13  16

12    91st omnibus objection granted           14      1

13    92nd omnibus objection, granted          14     12

14    93rd omnibus objection, granted          16     19

15    94th omnibus objection, granted          17      6

16    100th omnibus objection, granted         17     19

17    101st omnibus objection, granted         18      6

18    Claims reduced and allowed in settled amounts  19  1

19    on 35th omnibus objection

20    Three settled amounts reduced and allowed in  19  11

21    71st omnibus objection

22    95th omnibus objection partially granted and  20   2

23    partially adjourned

24    96th omnibus objection to claims, granted  21   18

25
```

Page 42

1                                     RULINGS

2                                                            Page      Line

3     Uncontested objections of 97th omnibus         22        21

4     objection, granted

5     81st omnibus objection granted as to East Bay   23        22

6     Municipal

7     81st omnibus objection granted as to claims     24        21

8     45210 and 45211

9     82nd omnibus objection granted as to claims     26        3

10    9187 and 9974

11    Motion of GLG to permit a late-filed claim,     40        13

12    denied

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 43

1

2                       C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Penina                 Digitally signed by Penina Wolicki
                            DN: cn=Penina Wolicki, o, ou,
     Wolicki                email=digital1@veritext.com, c=US
8                           Date: 2011.04.01 12:06:22 -04'00'

9    PENINA WOLICKI

10   AAERT Certified Electronic Transcriber CET**D-569

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  April 1, 2011

18

19

20

21

22

23

24

25