Ronald S. Beacher  
Richard Levy, Jr.  
PRYOR CASHMAN LLP  
Seven Times Square  
New York, New York 10036-6569  
Tel: (212) 421-4100  
Fax: (212) 326-0806  

Hearing Date and Time: April 28, 2011, at 10:00 a.m.  
Response Deadline:         April 13, 2011, at 4:00 p.m.

*Attorneys for SPCP Group, LLC, as agent for  
Silver Point Capital Fund, LP and Silver Point  
Capital Offshore Fund, Ltd.*

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  
------------------------------------------------------------- x  
                                                              :  
*In re*                                                       :   Chapter 11  
                                                              :  
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                      :   Case No. 08-13555 (JMP)  
                                                              :  
          Debtor.                                             :   (Jointly Administered)  
                                                              :  
------------------------------------------------------------- x  

**RESPONSE OF SPCP GROUP, LLC, AS AGENT FOR SILVER POINT  
CAPITAL FUND, LP AND SILVER POINT CAPITAL OFFSHORE FUND, LTD.,  
AS SUCCESSOR TO CERTAIN CLAIMS OF CENTRAL EUROPEAN MEDIA  
ENTERPRISES LTD., TO DEBTORS' ONE HUNDRED THIRD OMNIBUS  
<u>OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)</u>**  
(Re: Claim Nos. 117 and 171)

TO THE HONORABLE JAMES M. PECK,  
UNITED STATES BANKRUPTCY JUDGE:

SPCP Group, LLC, as agent for Silver Point Capital Fund, LP and Silver Point Capital Offshore Fund, Ltd. ("<u>SPCP</u>"), as successor to certain Claims (as defined below) of Central European Media Enterprises Ltd. ("<u>CME</u>"), by and through its undersigned counsel, hereby submits this response (the "<u>Response</u>") to the Debtors' One Hundred Third Omnibus Objection to Claims (Valued Derivative Claims), dated March 14, 2011 [Docket No. 15003] (the "<u>Objection</u>"), filed by Lehman Brothers Holdings Inc. ("<u>LBHI</u>") and its affiliated debtors in the above-captioned case (together with LBHI, the "<u>Debtors</u>"), and respectfully states:

1091825

## BACKGROUND

1. CME and debtor Lehman Brothers OTC Derivatives Inc. ("LOTC") entered into a Confirmation, dated as of March 4, 2008 (the "Confirmation"), which evidences a transaction between CME and LOTC (the "Transaction"). The Confirmation is subject to the 1992 ISDA Master Agreement (Multicurrency-Cross Border) (the "Agreement,"). In addition, pursuant to a Guarantee, dated as of March 4, 2008, LBHI guaranteed LOTC's payment obligations to CME in connection with the Transaction. Capitalized terms used but not defined herein have the meanings set forth in the Confirmation or the Agreement, as applicable.

2. On September 15, 2008, LBHI commenced its chapter 11 case. Pursuant to Section 5(a)(vii) of the Agreement, LBHI's commencement of a chapter 11 case constituted an Event of Default. On September 16, 2008, CME sent written notice to LOTC designating September 16, 2008 as an Early Termination Date under the Agreement. On September 23, 2008, CME sent written notice to LOTC specifying that the amount owing by LOTC to CME as a result of the designation of an Early Termination Date is $19,900,000 (the "Calculation Statement").

3. On October 13, 2008, CME filed a proof of claim for $19,900,000 against each of LOTC and LBHI, which were registered as claim numbers 117 and 171, respectively (together, the "Claims"). CME subsequently transferred its interest in the Claims to SPCP. Notices of transfer and evidence of the assignments of the Claims from CME to SPCP were filed with the Court on August 26, 2009 [Docket Nos. 4945 and 4951], and the assignments of the Claims were recorded in the claims register. Amended notices of transfer of the Claims were subsequently filed on March 3, 2010 to reflect address changes [Docket Nos. 7392 and 7393].

4. A derivative and a guarantee questionnaire were timely submitted by CME with respect to each of the Claims in accordance with the Court's order establishing the deadline for filing proofs of claim, entered on July 2, 2009 [Docket No. 4271].

5. By the Objection, the Debtors seek to reduce the amount of each Claim from $19,900,000 to $14,650,483. As their sole support, the Debtors state that "the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records." Objection ¶¶ 2, 11, 13. The Debtors' Objection fails to provide any details or substantiation concerning the Debtors' valuation of the Claims.

## ARGUMENT

6. The Debtors' Objection to the Claims should be denied for the following reasons: (a) The Claims were properly calculated in accordance with the terms of the governing transaction documents. (b) The Debtors have not presented evidence in their Objection sufficient to rebut the *prima facie* evidentiary effect of the Claims.

### A. The Claims Were Properly Calculated in Accordance With the Applicable Transaction Documents

7. The Confirmation provides that CME and LOTC "agree that for the Transaction, for the purposes of Section 6(e) of the Agreement, Loss and the Second Method will apply." Confirmation, at 26. Section 6(e) of the Agreement, in turn, provides that "[i]f the Second Method and Loss apply, an amount will be payable equal to the Non-defaulting Party's Loss in respect of this Agreement." The Agreement defines "Loss" as:

> *[W]ith respect to ... a party ... an amount that party reasonably determines in good faith to be its total losses and costs ... in connection with this Agreement or that Terminated Transaction or group of Terminated Transactions, as the case may be, including any loss of bargain, cost of funding or, at the election of such party but without duplication, loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or*

3

related trading position ... A party will determine its Loss as of the relevant Early Termination Date, or if that is not reasonably practicable, as of the earliest date thereafter as is reasonably practicable. *A party may (but need not) determine its Loss by reference to quotations of relevant rates or prices from one or more leading dealers in the relevant markets.*

Agreement, § 14, at p.15 (emphasis added). Section 6(d)(i) of the Agreement provides that "[o]n or as soon as reasonably practicable following the occurrence of an Early Termination Date, each party will make the calculation on its part, if any, contemplated by Section 6(e) and will provide to the other party a statement ... showing, in reasonable detail, such calculations."

8. All of the requirements of Sections 6(e) of the Agreement have been satisfied. As described in the Calculation Statement and the derivative questionnaire, CME calculated its Loss in good faith by reference to a quotation that it received from Morgan Stanley on September 22, 2008, a copy of which is included in the derivative questionnaire.

9. Neither the Confirmation, the Agreement, nor any other document relating to the Transaction provides LOTC, as the Defaulting Party, with either the right or opportunity to provide alterantive quotations or prices or otherwise to dispute the amount payable in respect of an early termination determined by CME, as the Non-defaulting Party. To the contrary, under the Agreement, the Non-defaulting Party -- here, CME -- has the sole right to determine the amount due by reason of early termination. Thus, the Debtors are not entitled to calculate CME's Loss, and the modified amount of $14,650,483 proposed by the Debtors for each Claim does not constitute the true value of either Claim.

10. For these reasons, the Claims are properly stated in the amount of $19,900,000, and both should be allowed in that amount, as filed.

B. **The Objection Does Not Present Evidence Sufficient to Rebut the *Prima Facie* Evidentiary Effect of the Claims**

11. Rule 3001(f) of the Federal Rules of Bankruptcy Procedure provides that a properly-filed proof of claim "shall constitute *prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "If a proper objection is made, the objecting party has the burden of presenting evidence sufficient to overcome the *prima facie* validity of the claim." 4 COLLIER ON BANKRUPTCY ¶ 501.02[3][d] (Alan N. Resnick & Harry J. Sommer eds., 16th ed. 2010). See also *Sherman v. Novack (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992)) ("To overcome this *prima facie* evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim."); *In re Minbatiwalla*, 424 B.R. 104, 111 (S.D.N.Y. 2010) (same); *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) ("[T]he objector bears the initial burden of persuasion .... The burden then shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case ... which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'") (citations omitted); *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (same).

12. The Debtors have not provided *any* evidence in the Objection to dispute the amount of the Claims or otherwise shift the burden of proof to SPCP. The Objection only discusses the general process that the Debtors undertook to reconcile the Claims and that resulted in their contention that the Claim amounts should be reduced to the amount asserted in the Objection. Neither the Debtors' general claims reconciliation process nor their conclusion is supported by the governing transaction documents. This general process has no basis in, and is wholly inconsistent with, the express terms of those documents. Indeed, as explained above, pursuant to the Agreement only CME, as the Non-defaulting Party, is entitled to calculate the

5

payment amount due in the case of an early termination, as here; the Debtors are not entitled to determine a competing payment amount in this situation.

13. The only portions of the Objection that purport to approach any substantive criticism of the Claims are statements to the effect that "the amounts listed on the proofs of claim are greater than the fair, accurate, and reasonable values determined by the Debtors after a review of the claimant's supporting documentation and the Debtors' books and records." Objection ¶¶ 2, 11, 13. Except for that single conclusory assertion, however, the Debtors have not provided any data or calculation methods in support of their position. Because the Debtors have failed to satisfy their initial burden of persuasion and have not provided remotely sufficient evidence to overcome the *prima facie* validity of the Claims, these Claims remain valid and should be allowed as filed.

14. Even assuming, *arguendo*, that the Debtors were successful in their attempt to refute even a single allegation that is essential to the legal sufficiency of the Claims, SPCP must then be afforded the opportunity to refute the Objection and to prove that the Claims should be allowed in the amounts as filed. See *Allegheny Int'l*, 954 F.2d at 174 ("If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence."); *Oneida*, 400 B.R. at 389 ("When the burden is shifted back to the claimant, it must then prove by a preponderance of the evidence that under applicable law the claim should be allowed."); *DJK Residential*, 416 B.R. at 105 (same).

15. For these reasons, the Claims are *prima facie* valid and proper, and both should be allowed in the amount of $19,900,000, as filed.

WHEREFORE, SPCP respectfully requests that the Court overrule the Objection as it pertains to the Claims, allow each Claim in an amount of not less than $19,900,000 (plus any

accrued but unpaid interest, out-of-pocket expenses, legal fees, and other items payable under the Agreement or applicable law), and grant such other or further relief as the Court deems just and proper.

Dated: April 12, 2011
      New York, New York

Respectfully submitted,

PRYOR CASHMAN LLP

By:   */s/ Richard Levy, Jr.*
      Ronald S. Beacher
      Richard Levy, Jr.
Seven Times Square
New York, New York 10036-6569
Tel:   (212) 421-4100
Fax:   (212) 326-0806

*Attorneys for SPCP Group, LLC, as agent for Silver Point Capital Fund, LP and Silver Point Capital Offshore Fund, Ltd.*