**Hearing Date and Time: April 28, 2011 at 11:00 a.m. Prevailing Eastern Time**

Robert F. Elgidely, Esq. (RE-0512)
John H. Genovese, Esq.
Carlos E. Sardi, Esq.
GENOVESE, JOBLOVE & BATTISTA, P.A.
Miami Tower
100 S.E. 2nd Street, Suite 4400
Miami, Florida 33131
(305) 349-2300 (tel.)
(305) 349-2310 (fax)

Attorneys for Respondent

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
In re:                                              :   Chapter 11
                                                    :
LEHMAN BROTHERS HOLDINGS INC., et al.,              :   Case No. 08-13555-JMP
                                                    :
                    Debtors.                        :
-----------------------------------------------------------------x

# RESPONSE IN OPPOSITION TO DEBTORS' OBJECTION TO CLAIM NO. 57415 IN THEIR ONE HUNDRED SECOND OBJECTION TO CLAIMS (FOREGIN CURRECY CLAIMS) OR, IN THE ALTERNATIVE, CREDITOR'S MOTION TO ALLOW AMENDED CLAIM NO. 57415

TO:   THE HONORABLE JAMES M. PECK,
      UNITED STATES BANKRUPTCY JUDGE:

JAIME MURCIA (hereinafter the "Respondent"), by and through undersigned counsel, hereby files his Response In Opposition To Debtors' Objection To Claim No. 57415 (hereinafter the "Claim") In Their One Hundred Second Objection To Claims (Foreign Currency Claims) filed by Lehman Brothers Holdings Inc. and its affiliated debtors in the above-referenced Chapter 11 cases, as debtors-in-possession (collectively, the "Debtors") [Dkt. No. 14950] (hereinafter the "Objection") Or, In The Alternative, Creditor's Motion To Allow Amended Claim No. 57415 under the Lehman Securities Programs, and states in support thereof as follows:

1

## INTRODUCTION

In their Objection, the Debtors seek to disallow or expunge Respondent's Claim because it is denominated in foreign currency rather than in currency of the United States. A minor deficiency in the form of the Claim, however, is not a sufficient basis upon which the Debtors may obtain disallowance or expungement of Respondent's Claim. That is, Respondent should be freely permitted to amend Claim No. 57415 in order to cure this deficiency in the originally filed claim.

Additionally, Respondent's failure to file his amended proof of claim earlier was due to "excusable neglect." Respondent is an 83 year-old investor who relied on his bank, Banco Sabadell located in Miami, Florida (hereinafter the "Bank"), to provide him with a proof of claim form conforming to this Court's procedures and to file the claim on his behalf. Until the date of his receipt of the Objection, Respondent had no knowledge that the Bank had incorrectly denominated his Claim in foreign currency. Immediately upon learning such fact, Respondent sought the advice of counsel and took immediate action to correct this error. Accordingly, the Court should deem Respondent's failure to file his amended proof of claim earlier as "excusable neglect" under the law because (1) there is no danger of prejudice to the Debtors because they always had knowledge concerning the existence of Respondent's securities (which were acquired in Euros instead of Dollars); (2) the length of the delay in filing the amendment has no cognizable impact on these proceedings or the ability of the Debtors to reorganize; (3) Respondent had no reason to discover the defect until he received notice of the Objection; and, most importantly, (4) Respondent at all times acted in good faith. Because the Debtors are indebted to Respondent in the amount of the amended claim as of the Petition Date, the Debtors' Objection should be overruled and the amended claim should be allowed in its entirety.

## BACKGROUND

1.      On September 15, 2008, Lehman Brothers Holdings Inc. (hereinafter "LBHI") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (hereinafter the "Bankruptcy Code") with the Clerk of this Court.

2.      On September 17, 2008, the Official Committee of Unsecured Creditors was appointed by the Office of the United States Trustee.

3.      On October 3, 2008, Lehman Brothers Special Financing Inc. (hereinafter "LBSF") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code with the Clerk of this Court.

4.      On October 16, 2008, the bankruptcy proceedings of LBHI, LBSF, and other LBHI affiliates (hereinafter referred to collectively as the "Debtors") were consolidated for procedural purposes only and are being jointly administered by this Court.

5.      On or about January 20, 2009, the Court approved the appointment of an examiner in these bankruptcy proceedings.

6.      On May 26, 2009, the Debtors filed a motion seeking to establish a deadline for the filing of claims [Dkt. No. 3654] (hereinafter the "Bar Date Motion").

7.      On July 2, 2009, the Court entered an Order establishing certain deadlines for the filing of proofs of claims [Dkt. No. 4271] (the "Bar Date Order"). Pursuant to the Bar Date Order, a general bar date of September 22, 2009 was established (the "Bar Date") and a bar date for claims related to certain securities issued by the Debtors and certain of its affiliates of November 2, 2009 was established (the "Securities Programs Bar Date").

8.      On October 12, 2009, the Bank filed a timely Claim on Respondent's behalf. The Claim was for a general unsecured claim in the principal sum of €1,000,000.00 based on the

3

unpaid amount owed under the Lehman Program Securities[1] as of the Petition Date. The Claim also contained the pertinent International Securities Identification Number (ISIN) evidencing such debt.

9.   On March 11, 2011, the Debtors filed the Objection in which they sought to disallow or expunge claims denominated in foreign currency (including Respondent's claim) in their entirety. The Debtors' Objection is based exclusively upon the fact that the claim is not denominated in lawful currency of the United States in contravention of this Court's mandated procedures in the Bar Date Order.

10.   On April 7, 2011, Respondent filed its Amended Proof of Claim #57415. A true and correct copy of the amended claim is attached hereto as **Exhibit "A"**.

11.   On April 12, 2011, Banco Sabadell Miami filed its Response to Debtors' One Hundred Second Omnibus Objection to Claims (Foreign Currency Claims) Claim Nos. 46830, 47396, 47397, 47398, 48626, 48634 and 57415. Although the Bank's Response addresses Respondent's Claim, Respondent has filed the instant response on his own behalf in an abundance of caution.

**LEGAL ARGUMENT AND CITATION TO AUTHORITY**

**A.   The Court is required to determine the amount of Respondent's Claim pursuant to Section 502 of the Bankruptcy Code.**

12.   The plain meaning of Section 502(b) of the Bankruptcy Code requires the Court to determine the amount of Respondent's Claim in lawful currency of the United States "as of the date of the filing of the petition" and to allow the claim in that amount. *In re USGen New*

---

[1] A "Lehman Program Security" is a security issued by the Debtors or any of the Debtors' affiliates outside of the United States that is listed under "Lehman Programs Securities" on the Docket Website as of July 17, 2009 at 5:00 p.m.

4

*England, Inc.*, 429 B.R. 437, 493 (Bankr. D. Md. 2010). In pertinent part, Section 502(b) provides:

> Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, *if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount*....

11 U.S.C. § 502(b) (emphasis added). *See also In re Global Power Equip. Group, Inc.*, 400 B.R. 17, 21 (D. Del. 2009).

13. In determining the value of the currency exchange rate between U.S. dollars and Euros in effect on the Petition Date, the Court may take judicial notice of it. Rule 201 of the Federal Rules of Evidence governs judicial notice of adjudicative facts. *See* Fed. R. Evid. 201(a). Furthermore, a "judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Further, judicial notice may be taken at any time during the proceeding. Fed. R. Evid. 201(f).

14. Federal and state courts take judicial notice of currency exchange rates as a matter of common practice. *Royatex, Ltd. v. Daughan*, 551 A.2d 454, 455 (Me. 1988) ("A foreign currency rate of exchange is a proper subject of judicial notice. A rate of exchange is not subject to reasonable dispute because its accuracy can be determined readily by resort to an authoritative source such as a published rate of exchange."); *Aini v. Sun Taiyang Co.*, Nos. 96 CIV. 7763(LAK), 96 CIV. 9318(LAK), 1997 WL 375735, *1, (S.D.N.Y. July 7, 1997) ("The Court takes judicial notice that the franc-dollar exchange rate as of that date was 5.3368 to one").

5

15.     There are several appropriate sources from which a Court may take judicial notice of the applicable currency exchange rate. For example, an official table is proper. *Kalinowski v. U.S.*, 151 Ct. Cl. 172, 197 (1960) (court took notice that the German Reichsmark-United States Dollar exchange rate "averaged 23.9154 cents in April 1928, 23.8143 cents in November 1928, and 23.8234 cents in October 1931"). A non-governmental publication source that is readily available, (such as the Journal of Commerce, the Wall Street Journal or any newspaper or source of information that publishes daily quotations for exchange rates), is also a proper source. *Official Comm. of Unsecured Creditors ex rel. R.M.L., Inc. v. Conceria Sabrina S.P.A.*, 195 B.R. 602, 623 (Bankr. M.D. Pa. 1996) (the Court took judicial notice of the exchange rates "from Italian lira into United States dollars as published in the Journal of Commerce or the Wall Street Journal...."); *Air Canada v. Golowaty*, 142 Misc. 2d 259, 536 N.Y.S.2d 962, 963 (N.Y. Dist. Ct. 1989) ("The court takes judicial notice of said exchange rates as reported in the New York Times ..."); *Royatex* at 455-56 ("Numerous publications, including major newspapers that carry daily quotations, publish exchange rates.").

16.     In this case, the exchange rate as of the Petition Date was 1.00 Euro to USD $1.4178295293 as published by XE.Com Inc.'s web site.[2] Accordingly, this Court should take judicial notice of this currency exchange rate and utilize such rate in determining the amount of Respondent's amended claim.

**B.      Respondent should be permitted to file an amended claim because his failure to do so earlier was the result of excusable neglect.**

17.     Respondent should be permitted to file an amended claim because his failure to do so earlier was the result of excusable neglect. In order to obtain permission to file or amend a

---

[2] Available at: http://www.xe.com/ict/?basecur=EUR&historical=true&month=9&day=15&year=2008&sort_by=name&image.x=42&image.y=13&image=Submit. (last visited on April 1, 2011)

6

proof of claim after the bar date, Respondent has the burden to establish excusable neglect under Rule 9006(b)(l). *In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004); *Jones v. Chemetron Corp.*, 212 F.3d 199, 205 (3d Cir.2000); *see also In re J.S. II, L.L.C.*, 389 B.R. 563 (Bankr. N.D. Ill. 2008) (claimant properly amending a claim after claims bar date has passed must show that claim was not timely amended due to excusable neglect). Bankruptcy Rule 9006(b)(1) provides:

> Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed or as extended by a previous order or (2) **on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect**.

Fed. R. Bankr. P. 9006 (emphasis added). Further, Federal Rule 60(b)(1), (as made applicable to this contested matter by Bankruptcy Rule 9024), give this Court authority to relieve Respondent from the strict application of the procedures set forth in the Bar Date Order upon a showing of "excusable neglect." Fed. R. Civ. P. 60(b)(1).

18.     It is possible to show "excusable neglect," (within the meaning of the federal bankruptcy rule permitting a court to grant extensions of time for excusable neglect), without identifying any "extraordinary" circumstance. *Matter of Singson*, 41 F.3d 316 (7th Cir. 1994). Further, the Supreme Court has held that "excusable neglect" is an equitable determination made after weighing such factors as the: (1) prejudice to the debtor; (2) length of the delay and its potential impact on the judicial proceedings; and (3) reason for the delay, including whether the delay was within the movant's reasonable control and whether the party acted in good faith. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 113 S. Ct.

7

1489 (1993); *In re Au Coton, Inc.*, 171 B.R. 16 (S.D.N.Y. 1994); *In re Alexander's Inc.*, 176 B.R. 715 (Bankr. S.D.N.Y. 1995).

19. Under the facts and circumstances of this case, the Court should exercise its equitable powers to excuse Respondent's neglect and allow his Claim (as amended). First, the Debtors will not be prejudiced as Respondent's Claim is relatively nominal in relation to other multi-million dollar securities claims filed against the estate. Further, the estate was already on notice of the existence of this debt obligation and the amount of indebtedness; albeit, expressed in Euros. Indeed, the debt has not changed at all, but has been instead merely converted from Euros to Dollars as of the Petition Date. Accordingly, Respondent's amendment to his Claim would have a *de minimis* impact (if any) on these judicial proceedings or the Debtors' ability to reorganize. *See In re R.H. Macy & Co., Inc.*, 166 B.R. 799 (Bankr. S.D.N.Y. 1994) (prejudice to Chapter 11 debtor requiring rejection of late notice of claim is a more flexible and complex concept than a simple dollar-for-dollar depletion of assets otherwise available for timely filed claims; instead, the analysis depends upon the broader consideration of circumstances including the size of the late claim in relation to the estate and the disruptive effect the late filing would have upon the plan close to completion).

20. As already noted above, Respondent's Claim was originally filed by the Bank as his agent. Respondent had no knowledge of the minor defect in his Claim until the date of his receipt of the Debtors' Objection. Specifically, the Bank of New York, operating as the "Euro Clear" bank for the Bank, transmitted the claim to the Bank along with directions on how to complete the document. The Bank in turn sent the Claim to the Respondent for his signature and immediate return. Once the Claim was signed, the Bank filed the Claim on Respondent's behalf. Immediately after receiving the Debtors' Objection, Respondent promptly sought the advice of

8

counsel and proceeded to amend his Claim to reflect the amount in United States currency as of the Petition Date. Accordingly, Respondent meets all the prongs set forth in *Pioneer* for excusable neglect and should be permitted as a matter of equity to have his Claim allowed as amended.

C.  **Respondent's amended claim relates back and causes no prejudice.**

21.  Respondent's amended claim should be allowed because (1) the estate is already on notice that it is liable for Respondent's debt, and (2) the estate would not be prejudiced by any amendment. The decision to permit an amendment of a proof of claim rests within the sound discretion of the bankruptcy judge. *In re Andover Togs, Inc.*, 231 B.R. 521 (Bankr. S.D.N.Y. 1999) (permitting the filing of an amended proof of claim to extent that it corrected an inadvertent mistake by claimant in its original proof of claim because the original claim provided the debtor with notice that the claimant intended to hold estate liable).

22.  Additionally, **courts routinely and liberally permit amendments to proofs of claim to cure a defect in the original claim**, to describe the original claim with greater particularity, or to plead a new theory of recovery on the facts set forth in the original claim. *In re Enron Corp.,* 298 B.R. 513, 520 (Bankr. S.D.N.Y. 2003) (e**mphasis added**).

23.  Whether or not to allow an amendment of a defectively filed proof of claim after the expiration of the time for filing such claim involves a two-part inquiry: does the purported informal proof of claim state an explicit demand against the estate evidencing an intention to hold the estate liable; and, based on particular facts of the case, would it be equitable to allow the amendment. *In re Alsted Automotive Warehouse, Inc.*, 16 B.R. 924 (Bankr. E.D.N.Y. 1982); *see also In re Sneijder*, 407 B.R. 46 (Bankr. S.D.N.Y. 2009).

9

24. The first prong of the test permitting an amendment of a claim against the bankruptcy estate, which looks to whether there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable, is basically the same as the test under the Federal Rules of Civil Procedure regarding the "relation back" of a later pleading to an earlier one. *In re Asia Global Crossing, Ltd.*, 324 B.R. 503 (Bankr. S.D.N.Y. 2005).

25. Courts apply the standards set forth in Federal Rule 15 ("Rule 15"), made applicable to bankruptcy cases by Bankruptcy Rule 7015, to determine whether to allow an amendment to a proof of claim to "relate back" to the date of the original filing. Generally, "an amendment of a pleading relates back to the date of the original pleading when ... [the claim] asserted in the amended pleading arose out the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Fed. R. Civ. P. 15(c)(2). Pursuant to Rule 15, a proof of claim amended after the bar date relates back to the original claim if: (i) there was a timely assertion of a similar claim or demand evidencing an intention to hold the estate liable and (ii) it would be equitable to allow the amendment. *Maxwell Macmillan Liq. Trust v. Aboff In re Macmillan Inc.),* 186 B.R. 35, 49 (Bankr. S.D.N.Y. 1995).

26. Here, Respondent's amended claim undoubtedly relates back to the original demand evidencing an intention to hold the bankruptcy estate liable as the amended claim arises out of precisely the same conduct, transaction, or occurrence set forth in the original claim. In fact, the two claims are identical except to change the amount of the claim to U.S. currency instead of Euros. That is, neither the claim nor the amount asserted has changed as of the Petition Date, and the Respondent merely seeks to cure the defect in his original Claim and/or to describe the original Claim with greater particularity. Accordingly, this Court should exercise its equitable powers to allow the Claim, as amended, since neither the Debtors nor any of the other

10

creditors of the estate would be prejudiced, the proceedings are not impacted, the reorganization of the Debtors would not be affected, and the amendment is being filed in good faith.

## CONCLUSION

27. Based on the foregoing, Respondent's Claim should not be disallowed or expunged simply because it is expressed in a foreign currency. To allow the Claim to stand, as amended, will have an inconsequential effect on the estate. Further, the Debtors would not be prejudiced by allowance of the Respondent's amended claim. The Debtors were fully aware that the amount stated in Respondent's original Claim was on account of an unpaid debt owed as of the Petition Date. The Court should thus allow the Respondent to freely amend his claim to reflect the acknowledged debt in U.S. currency.

**WHEREFORE**, the Respondent respectfully requests this Court to enter an Order overruling the Debtors' Objection to the Respondent's Claim and to award such other and further relief as the Court may deem appropriate.

Dated: Miami, Florida
April 13, 2011

                Respectfully submitted,

                GENOVESE, JOBLOVE & BATTISTA, P.A.

                By:/s/ Robert F. Elgidely
                    Robert F. Elgidely, Esq. (RE-0512)
                    Miami Tower
                    100 S.E. 2nd Street, Suite 4400
                    Miami, Florida 33131
                    Telephone: (305) 349-2300
                    Telecopier: (305) 349-2310

                *Attorneys for Respondent*

# EXHIBIT A

| United States Bankruptcy Court/Southern District of New York<br>Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **LEHMAN SECURITIES PROGRAMS<br>PROOF OF CLAIM** |
|---|---|
| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) |
| Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009 | THIS SPACE IS FOR COURT USE ONLY |

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

Jamie H. Murcia
5770 La Luneta Ave.
Miami, FL 33155
USA

Notices should be sent at:
Attn: Carlos Sardi, Esq.
Genovese Joblove & Battista, P.A.
100 SE 2nd Street, Suite 4400
Miami, Florida 33131

Telephone number: 305-349-2300  Email Address: csardi@gjb-law.com

☑ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: **57415**
(If known)

Filed on: **10/30/2009**

**Name and address where payment should be sent (if different from above)**
Att: Mauricio Quintero
Banco Sabadell Miami
One Biscayne Tower- 2 South Biscayne Blvd, Ste 3301, Miami, FL 33131
Telephone number: 305-351-4275  Email Address: mirandacecilia@sabmia.com

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**1.** Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

**Amount of Claim:** $ **$1,417,829.53**     (Required) (See attached)

☐ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

**2.** Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN):** XS0282978666     (Required)

**3.** Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:**

EUROCLEAR: 97816-Ref No. 6049967     (Required)

**4.** Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:**
Bank of NY in favour: Banco Sabadell Miami Acc. 170575     (Required)

*FILED/RECEIVED APR 07 2011 EPIQ BANKRUPTCY SOLUTIONS, LLC*

**5. Consent to Euroclear Bank, Clearstream Bank or Other Depository:** By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

*FILED/RECEIVED APR 08 2011 TP EPIQ BANKRUPTCY SOLUTIONS, LLC*

| Date.<br>3/28/11 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *[signature]* |
|---|---|

In re LEHMAN BROTHERS HOLDINGS, INC., et al.
CHAPTER 11, Case No. 08-13555 (JMP) (Jointly Administered)

## Basis for Claimant's Claim

The Claimant's claim arises out of and relates to his investment in the principal amount of 1,000,000 Euros in a corporate bond (preferred) bearing a coupon rate of 5.75% per annum as of September 15, 2008, a copy of which is evidenced by the purchase order attached hereto. The claim is based on Lehman Securities Program as of September 15, 2008. The International Securities Identification Number for the Lehman Securities Program to which the claim related is XS0282978666, and the Euroclear Bank Electronic Reference Number is 97816-Ref 6049967, Bank of New York in favour of Banco Sabadell, Miami Branch, Acct. 170575.

The Claimant is amending his claim to denominate the amount of the claim in currency of the United States at the prevailing exchange rate for the Euro as of the filing of the bankruptcy, $1.417892953 per 1.00 Euro, as published by XE.COM INC.'s web site.[1] As an additional basis of his claim, the Claimant also asserts all interest accrued (if appropriate under the law). Claimant further reserves his right to amend and/or supplement this proof of claim as may be required from time to time.

---

[1] http://www.xe.com/ict/?basecur=EUR&historical=true&month=9&day=15&year=2008&sort_by=name&image.x=42&image.y=13&image=Submit (last visited on April 6, 2011), a copy of which is attached hereto.

# BBVA
Miami Branch

## PURCHASE/SALE ORDER FOR INVESTMENT TRANSACTIONS
## NON-DISCRETIONARY/NON-DISCRETIONARY WITH ADVISORY INVESTMENT SERVICES ACCOUNTS

ORDEN PARA COMPRA/VENTA DE INVERSIONES
CUENTAS PARA SERVICIOS DE INVERSIONES NO DISCRECIONALES/NO DISCRECIONALES CON SERVICIOS DE ASESORIA

To / A: Banco Bilbao Vizcaya Argentaria, S.A. Miami Branch ("BBVA")

Date / Fecha: MAY 07 2007    Attention / Atención: ERICK LOBAINC

Dear Sir or Madam:
De mi consideración:

Pursuant to the terms and conditions set forth below and the Nondiscretionary Investment Services Agreement/Non-Discretionary Investment with Advisory Services Agreement (the "Agreement") the undersigned has entered into with BBVA, the undersigned authorizes and instructs BBVA to purchase or sell, as indicated below, for the undersigned's account and risk the following investment (the "Investment"):

De conformidad con los términos y condiciones indicados más abajo y el Contrato para Servicio de Inversiones No Discrecionales/No Discrecionales con Servicios de Asesoría (el "Contrato") celebrado por el suscrito con el BBVA, el suscrito autoriza e instruye al BBVA para comprar o vender, tal como se indique a continuación, la siguiente Inversión (la "Inversión") por cuenta y riesgo del suscrito:

[✓] PURCHASE / COMPRAR     [ ] SELL / VENDER

Issuer / Emisor: LEHMAN BROTHERS 5.75% EUR PREFERENTE

Maturity Date / Fecha de Vencimiento: _____    Amount / Importe: EUR 1,000,000

Description / Descripción: _____

Other Information / Otros datos: _____

- The undersigned understands and assumes the risks associated with the purchase/sale of the Investment, and acknowledges that BBVA assumes no responsibility for any loss or other negative economic result arising from the undersigned's decision to purchase/sell the Investment. El suscrito entiende y asume los riesgos ligados a la compra/venta de la Inversión y reconoce que el BBVA no asume responsabilidad alguna por pérdidas u otro resultado económico negativo que tenga origen en la decisión del suscrito de comprar/vender la Inversión.

- BBVA may select one or more affiliated or unaffiliated third party brokers and/or agents to provide services to BBVA in connection with the purchase/sale of the Investment. BBVA shall not be liable for any failure or delay associated with the execution of the purchase/sale of the Investment or for any act or omission of any third party with respect to the Investment. El BBVA podrá seleccionar uno o más terceros corredores y/o agentes, afiliados o no afiliados, para suministrar los servicios al BBVA en conexión con la compra/venta de la Inversión. El BBVA no será responsable por el incumplimiento o las demoras relacionadas con la ejecución de la compra/venta de la Inversión o por actos u omisiones de terceros con respecto a la Inversión.

- The undersigned authorizes BBVA to debit all fees and costs associated with the purchase/sale of the Investment (including but not limited to the purchase price of the Investment) from the undersigned's account(s) with BBVA. Further information concerning such fees and costs is available upon request. El suscrito autoriza al BBVA a debitar todos los cargos y costos asociados con la compra/venta de la Inversión (incluyendo, sin limitaciones, el precio de compra de la Inversión), de la(s) cuenta(s) del suscrito con el BBVA. Mayores informaciones relacionadas con esos cargos y costos, estarán disponibles a pedido.

Account Name / Nombre de la Cuenta: FLYAWAY HOLDINGS    Account Number / Número de Cuenta: 666149

(Printed/Typed) Name of Client
(Letras de Molde/Escrito a Máquina) Nombre del Cliente

Signature / Firma: _____

(Printed/Typed) Name of Authorized Officer (for corporate clients)
(Letras de Molde/Escrito a Máquina) Nombre del Funcionario Autorizado (para clientes corporativos)

(Printed/Typed) Title (for corporate clients)
(Letras de Molde/Escrito a Máquina) Posición (para clientes corporativos)

By signing this page, the undersigned acknowledges that the undersigned has received the Acknowledgment set forth on page 2 of this document, has read and understood it, and agrees to its terms. The undersigned also acknowledges that the undersigned has received, read and comprehends the prospectus of the Investment, including the investment objectives, risks involved, and the charges and expenses; as well as any other materials provided pertaining to the Investment. Please refer to such material for specific risks regarding the Investment. From time to time, you may be requested to sign and return a term sheet and/or other document pertaining to an Investment in order to acknowledge receipt thereof. Al firmar esta página, el suscrito declara que ha leído, a comprendido y está de acuerdo con las cláusulas descritas en la pág. 2 de este documento. El suscrito también declara que ha recibido, leído y comprendido el prospecto de la Inversión, que incluye los objetivos de inversión, riesgos y costos; así como cualquier otro material provisto relacionado con la Inversión. Por favor consulte dicho material para conocer los riesgos específicos correspondientes a la Inversión. Eventualmente, le solicitaremos firmar y devolver la hoja con los términos y condiciones y/o otros documentos relacionados a alguna Inversión con el objeto de que usted acuse recibo de esos documentos.


 English  Search

 The World's Favorite Currency Site                        English  Search

| Home | Tools ▼ | Trading ▼ | Licensing ▼ | Travel ▼ | Like Our Site? ▼ | Help ▼ |

Home - Euro - EUR rate table

## XE Currency Data Feed Service
License our data for your business needs. Starting at less than $1.50 a day!
Learn more today at: http://www.xe.com/dfs/

**XE.com Data Feed**

| Base currency is Euro - EUR | | Mid-market rates as of September 2008, 15 at Noon Eastern Time | |
|---|---|---|---|
| | Currency Unit | Units per EUR | EUR per Unit |
| AFN | Afghanistan Afghanis | 66.1678430557 | 0.0151130814 |
| ALL | Albania Leke | 123.4773558749 | 0.0080986509 |
| DZD | Algeria Dinars | 86.8165461533 | 0.0115185416 |
| ARS | Argentina Pesos | 4.3782577468 | 0.2284013546 |
| AUD | Australia Dollars | 1.7547675514 | 0.5698760495 |
| BSD | Bahamas Dollars | 1.4178295293 | 0.7053034087 |
| BHD | Bahrain Dinars | 0.5346039607 | 1.8705435678 |
| BDT | Bangladesh Taka | 96.9738707341 | 0.0103120561 |
| BBD | Barbados Dollars | 2.8285699109 | 0.3535355432 |
| BMD | Bermuda Dollars | 1.4178295293 | 0.7053034087 |
| BRL | Brazil Reais | 2.5607884181 | 0.3905047340 |
| BGN | Bulgaria Leva | 1.9557863755 | 0.5113032858 |
| XOF | CFA BCEAO Francs | 655.9570000000 | 0.0015244902 |
| XAF | CFA BEAC Francs | 655.9570000000 | 0.0015244902 |
| CAD | Canada Dollars | 1.5131343146 | 0.6608798640 |
| CLP | Chile Pesos | 752.0111435756 | 0.0013297675 |
| CNY | China Yuan Renminbi | 9.7116787313 | 0.1029688098 |
| COP | Colombia Pesos | 2,946.9586765945 | 0.0003393329 |
| XPF | Comptoirs Français du Pacifique Francs | 119.3317422434 | 0.0083800000 |
| CRC | Costa Rica Colones | 787.0088151090 | 0.0012706338 |
| HRK | Croatia Kuna | 7.1022913844 | 0.1407996301 |
| CZK | Czech Republic Koruny | 24.1662707077 | 0.0413799883 |
| DKK | Denmark Kroner | 7.4545382596 | 0.1341464709 |
| DOP | Dominican Republic Pesos | 49.8452149311 | 0.0200621063 |
| XCD | East Caribbean Dollars | 3.7175489960 | 0.2689944372 |
| EGP | Egypt Pounds | 7.7067365695 | 0.1297566085 |
| EEK | Estonia Krooni | 15.6466400000 | 0.0639114851 |
| EUR | Euro | 1.0000000000 | 1.0000000000 |
| FJD | Fiji Dollars | 2.3046818998 | 0.4338993594 |
| XAU | Gold Ounces | 0.0018187859 | 549.8173184535 |
| HKD | Hong Kong Dollars | 11.0496903690 | 0.0905002735 |
| HUF | Hungary Forint | 241.2568712823 | 0.0041449597 |
| XDR | IMF Special Drawing Rights | 0.9207874622 | 1.0860269509 |
| ISK | Iceland Kronur | 129.0076193601 | 0.0077514801 |
| INR | India Rupees | 65.1002831801 | 0.0153609210 |
| IDR | Indonesia Rupiahs | 13,256.9381851849 | 0.0000754322 |
| IRR | Iran Rials | 13,805.4061265340 | 0.0000724354 |
| IQD | Iraq Dinars | 1,669.6136220517 | 0.0005989410 |
| ILS | Israel New Shekels | 5.0529510087 | 0.1979041551 |
| JMD | Jamaica Dollars | 102.7926408723 | 0.0097283229 |
| JPY | Japan Yen | 149.7932465091 | 0.0066758884 |
| JOD | Jordan Dinars | 1.0045039027 | 0.9955162915 |
| KES | Kenya Shillings | 100.4504938729 | 0.0099551526 |
| KWD | Kuwait Dinars | 0.3796932754 | 2.6337047951 |
| LBP | Lebanon Pounds | 2,131.2813484036 | 0.0004692013 |
| MYR | Malaysia Ringgits | 4.8988903913 | 0.2041236908 |
| MUR | Mauritius Rupees | 41.9727132939 | 0.0238250025 |
| MXN | Mexico Pesos | 15.1846729565 | 0.0658558800 |
| MAD | Morocco Dirhams | 11.2488393943 | 0.0888980601 |
| NZD | New Zealand Dollars | 2.1488931580 | 0.4653558488 |
| NOK | Norway Kroner | 8.1903340752 | 0.1220951418 |
| OMR | Oman Rials | 0.5457126410 | 1.8324662557 |

| Code | Currency | Rate | Inverse |
|---|---|---|---|
| PKR | Pakistan Rupees | 108.1945744077 | 0.0092426076 |
| XPD | Palladium Ounces | 0.0060073458 | 166.4628660387 |
| PEN | Peru Nuevos Soles | 4.2463992779 | 0.2354936346 |
| PHP | Philippines Pesos | 66.6463846934 | 0.0150045648 |
| XPT | Platinum Ounces | 0.0012090246 | 827.1130449175 |
| PLN | Poland Zlotych | 3.3551840684 | 0.2980462412 |
| QAR | Qatar Riyals | 5.1617780591 | 0.1937316926 |
| RON | Romania New Lei | 3.6121359073 | 0.2768445113 |
| RUB | Russia Rubles | 36.2609807929 | 0.0275776455 |
| SAR | Saudi Arabia Riyals | 5.3159894978 | 0.1881117336 |
| XAG | Silver Ounces | 0.1286329241 | 7.7740594578 |
| SGD | Singapore Dollars | 2.0263734711 | 0.4934924456 |
| SKK | Slovakia Koruny | 30.2337277592 | 0.0330756435 |
| ZAR | South Africa Rand | 11.4403686002 | 0.0874097710 |
| KRW | South Korea Won | 1,568.9186017896 | 0.0006373817 |
| LKR | Sri Lanka Rupees | 152.9511895065 | 0.0065380335 |
| SDG | Sudan Pounds | 2.9984967600 | 0.3335004415 |
| SEK | Sweden Kronor | 9.5794853854 | 0.1043897412 |
| CHF | Switzerland Francs | 1.5864598661 | 0.6303342564 |
| TWD | Taiwan New Dollars | 45.4360087178 | 0.0220080067 |
| THB | Thailand Baht | 48.9629614966 | 0.0204236012 |
| TTD | Trinidad and Tobago Dollars | 8.6494690433 | 0.1156140331 |
| TND | Tunisia Dinars | 1.7862950255 | 0.5598179392 |
| TRY | Turkey Lira | 1.7916043695 | 0.5581589423 |
| AED | United Arab Emirates Dirhams | 5.2058972895 | 0.1920898443 |
| GBP | United Kingdom Pounds | 0.7929069465 | 1.2611820397 |
| USD | United States Dollars | 1.4178295293 | 0.7053034087 |
| VEF | Venezuela Bolivares Fuertes | 3.0445053482 | 0.3284605825 |
| VND | Vietnam Dong | 23,443.8112665338 | 0.0000426552 |
| ZMK | Zambia Kwacha | 4,969.4925001029 | 0.0002012278 |

Page printed from: http://www.xe.com/ict/?basecur=EUR&historical=true&month=9&day=15&year=2008&sort_by=name&image.x=42&image.y=13&image=Submit
© 1995-2011 XE Corporation. All rights reserved. "XE" and "Universal Currency Converter" are trade marks of XE Corporation.
Use of this service is subject to the terms of use located at: http://www.xe.com/legal/.