## **EXHIBIT A**

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

5 April 2011

RELEASE AGREEMENT

between

LEHMAN COMMERCIAL PAPER INC.

("LCPI")

and

(1)  AXA MEZZANINE II SA, SICAR

(2)  MD MEZZANINE SA, SICAR

(together the "Counterparties")

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| 1. | DEFINITIONS AND INTERPRETATION | 2 |
| 2. | NO ADMISSION | 3 |
| 3. | TERMS OF RELEASE | 3 |
| 4. | NO SET-OFF | 5 |
| 5. | BANKRUPTCY COURT APPROVAL | 5 |
| 6. | REPRESENTATIONS AND WARRANTIES | 6 |
| 7. | ENTIRE AGREEMENT | 7 |
| 8. | COSTS | 7 |
| 9. | TAX | 7 |
| 10. | CONFIDENTIALITY | 7 |
| 11. | SEVERABILITY OF TERMS | 8 |
| 12. | COUNTERPARTS | 8 |
| 13. | RIGHTS OF THIRD PARTIES | 9 |
| 14. | GOVERNING LAW AND JURISDICTION | 9 |
| ANNEX 1 | *(Assignment Agreements)* | 10 |
| ANNEX 2 | *(Deeds of Accession)* | 11 |
| ANNEX 3 | *(Form of Order)* | 12 |
| ANNEX 4 | *(Form of Stipulation)* | 13 |
| EXECUTION | | 14 |

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

**THIS AGREEMENT** is made by way of a Deed on 5 April 2011 between the following parties:

1    **LEHMAN COMMERCIAL PAPER INC. ("LCPI")**, a corporation incorporated in New York, United States of America, whose registered address is the Prentice-Hall Corporation System, Inc., 80 State Street, Albany, New York, 12207, United States of America; and

2    **AXA MEZZANINE II SA, SICAR ("AXA")**, a Société d'Investissement à Capital à Risque (SICAR) incorporated in Luxembourg, with Registre du Commerce et des Sociétés (**"RCS"**) reference Luxembourg B 138.458, whose registered address is 21, Boulevard Grande-Duchesse Charlotte L-1331, Luxembourg;

3    **MD MEZZANINE SA, SICAR ("MD")**, a Société d'Investissement à Capital à Risque (SICAR) incorporated in Luxembourg, RCS reference Luxembourg 109.277, whose registered address is 21, Boulevard Grande-Duchesse Charlotte L-1331, Luxembourg (AXA together with MD, the **"Counterparties"**),

each a **"Party"** and together the **"Parties"**.

**WHEREAS**

4    On or about 12 August 2008 the Parties entered into two agreements (the **"Agreements"**) pursuant to which LCPI as seller agreed to sell to the Counterparties its rights and obligations in respect of portions of the second lien tranche of a €2,475,000,000 loan facility to Edam Acquisition Holding IV BV and certain of its subsidiaries (the **"Credit Agreement"**) (such portions of the second lien tranche being hereinafter referred to as the **"Endemol Loan"**).

5    The Agreements are evidenced by, amongst other things, an exchange of emails dated 12 August 2008 between Mr Neils Ribeiro on behalf of LCPI and Mr Stefano Mion on behalf of AXA and MD (the **"Agreement Emails"**) and by two Loan Market Association Trade Confirmations dated 20 August 2008 (the **"Confirmations"**). The Confirmations incorporated the December 2007 LMA Standard Terms and Conditions for Par Trade Transactions (the **"LMA Terms"**) (the Agreement Emails together with the Confirmations and the LMA Terms together the **"Agreement Documents"**).

6    The agent named in the Agreement Documents was Barclays Bank PLC. Barclays Bank PLC was replaced as agent by The Bank of New York Mellon, London Branch (the **"Agent"**) with effect from 9th November 2010 under the terms of a Substitution and Succession Deed between Barclays Bank PLC, The Bank of New York Mellon, London Branch and Edam Acquisition Holding IV B.V. dated 8th November 2010.

7    Commencing on 15 September 2008 and thereafter, Lehman Brothers Holdings Inc. and certain of its affiliates, including LCPI on 5 October 2008, each filed voluntary petitions for relief in the United States Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**) under Chapter 11 of Title 11 of the United States Code (the **"Bankruptcy Code"** and the **"Bankruptcy Cases"**).

1

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

8    On 18 September 2009, LCPI brought a claim in the Commercial Court (2009 Folio No. 1224) against the Counterparties in respect of the Agreements (the "**Proceedings**").

9    The Parties have now agreed to settle the Proceedings and wish to record the terms of settlement in this Deed.  As such, notwithstanding the terms of the Agreement Documents, the Parties wish to acknowledge the termination of the Agreements in consideration of the promises made herein including the payment to LCPI from the Counterparties of the Settlement Amount and the assignment of the Endemol Loan from LCPI to the Counterparties.

**IT IS AGREED** as follows:

1    **DEFINITIONS AND INTERPRETATION**

1.1    In this Deed:

"**Affiliates**" means (a) in the case of a Party other than LCPI, a subsidiary or associated company of that Party or entity in any way related to that Party and (b) in the case of LCPI:

(a)    LBHI or its subsidiaries or associated entities subject, from time to time, to U.S. Chapter 11 bankruptcy proceedings (each such subsidiary or associated entity, a "**Related Entity**"); or

(b)    any other entity currently under the direct or indirect control or management of any of LCPI, LBHI, or a Related Entity.

For the avoidance of doubt, "Affiliates" shall not include Lehman Brothers International (Europe) (in Administration) and the UK Administration Entities and their subsidiary or associated companies.

"**Bar Date Order**" means the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rules 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form entered in the Bankruptcy Cases on 2 July 2009.

"**Committee**" means the court sanctioned committee of creditors representing the creditors of LCPI (amongst other affiliated entities).

"**Payment Date**" means, subject to the Agent's confirmation, the third business day following notification by Weil Gotshal & Manges (in accordance with Clause 5(b) herein) that the Bankruptcy Court order substantially in the form of the Stipulation in Annex 4 has become final and non-appealable or, in the event that the Agent indicates a later date would be appropriate, the first subsequent business day that the Agent confirms would be appropriate.

"**Settlement Amount**" means €6,000,000.00 (being the total amount agreed to be paid to LCPI by the Counterparties in consideration of this Deed).

"**UK Administration Entities**" means Lehman Brothers Limited, Lehman Brothers Holdings PLC, LB UK Re Holdings Limited, Storm Funding Limited, Mable Commercial

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS
DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD
DISTRIBUTION

Funding Limited, Lehman Brothers Europe Limited, Lehman Brothers UK Holdings Ltd
LB UK Financing Ltd, LB SF No. 1, Cherry Tree Mortgages Limited, Lehman Brothers
Lease and Financing (No 1) Limited, Zestdew Limited, Monaco NPL (No 1) Limited,
Lehman Commercial Mortgage Conduit Limited, B RE Financing NO. 3 Limited, Lehman
Brothers (PTG) Limited, Eldon Street Holdings Limited, LB Holdings Intermediate 2
Limited and Thayer Properties Limited

"Euros", "EUR" or "€" means the lawful currency and composite monetary unit of the
European Union.

1.2    Terms used but not defined herein shall have the meanings given to them in the
Agreement Documents.

1.3    Wording denoting the singular shall include the plural and vice versa; and the words
"include" and "including" shall be construed without limitation.

1.4    All references in this Deed to any corporate body, company or firm shall include the
successors in title or assigns from time to time.

1.5    The headings and sub-headings in this Deed are inserted for convenience only and do
not affect its interpretation.

1.6    Unless the context otherwise requires, a reference to a Clause or Schedule is a
reference to a clause of, or schedule to, this Deed.

2    NO ADMISSION

This Deed does not, for any purpose, constitute an admission of liability or wrongdoing by
any of the Parties.

3    TERMS OF RELEASE

3.1    Settlement Amount

(a)    Notwithstanding the terms of the Agreements and the Agreement Documents and
subject to Clauses 3.2(b) and 3.2(c), the Settlement Amount represents a full and final
settlement of all sums payable to LCPI pursuant to and in respect of the Agreements
and the Agreement Documents and no further amounts shall be due to or payable by
LCPI or the Counterparties in connection with the Agreements or the Agreement
Documents.

(b)    The Counterparties will procure the payment of the Settlement Amount to LCPI in
accordance with Clause 3.5 (*Account Details*) and Clause 4 (*No Set-off*) on or before
the Payment Date.

3.2    Assignment of the Endemol Loan

(a)    On or by no later than the Payment Date:

3

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

(i)    the Parties shall enter into agreements (one for each Counterparty) in the form set out in Annex 1 (*Form of Assignment Agreement*) pursuant to which LCPI shall assign all its rights, title, benefit, interest in and to the Endemol Loan to the Counterparties (the "**Assignment Agreements**");

(ii)   the Counterparties shall enter into agreements (one for each Counterparty) in the form set out in Annex 2 (*Form of Deed of Accession*) (the "**Deeds of Accession**") pursuant to which the Counterparties shall accede as Senior Creditors under the Edam Acquisition Holding IV B.V. Intercreditor Agreement dated 3 July 2007 (as amended and restated from time to time) and shall be bound by the terms thereof;

(iii)  LCPI shall deliver the executed Assignment Agreements and Deeds of Accession to the Agent for counter-execution showing an effective date of the Payment Date; and

(iv)   pursuant to Clause 29.3 (*Assignment or transfer fee*) of the Credit Agreement, the Counterparties shall pay the Agent €1,250, being one half of the transfer fee of €2,500 (the "**Transfer Fee**") and LCPI shall pay the Agent €1,250, being the other half of the Transfer Fee.

(b)    Upon execution of the Assignment Agreements and the Deeds of Accession (the "**Transfer Documents**") by the Agent and delivery thereof with an effective date of the Payment Date to the Parties, the Counterparties shall pay to LCPI the Settlement Amount.

(c)    The Parties acknowledge and agree that, as at the next distribution date, this being 31 August 2011, there shall be paid to the Counterparties an amount equivalent to all interest accruing on the Endemol Loan from 28th February 2011. LCPI shall be entitled to retain all interest accrued and paid on or before 28th February 2011.

### 3.3    Staying of Action

Except for the purpose of enforcing this Deed, the Proceedings shall be stayed with no order as to costs and the Parties hereby consent to, and shall, upon entering this Deed, use their best endeavours to take all necessary steps to obtain from the Court, an order in the form of the draft order in Annex 3 (*Form of Order*) of this Deed (the "**Order**"). Weil Gotshal & Manges, the solicitors representing LCPI, shall lodge the executed Order within five working days of the approval of the Bankruptcy Court referred to in Clause 5.

### 3.4    Termination and Release

In consideration of each other Party's execution of this Deed and conditional upon (i) receipt by LCPI of the Settlement Amount (without set-off, withholding or counterclaim) and (ii) assignment of the Endemol Loan in accordance with clause 3.2 above, on or before the Payment Date in accordance with this Deed, each Party on behalf of itself and any other party, person or entity claiming under or through it hereby generally and irrevocably releases, discharges and acquits each other Party, together with its respective Affiliates and current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions,

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

branches, units, parents, attorneys, successors, predecessors, heirs, personal representatives and assigns (each of the foregoing a "**Released Party**") from: (i) any and all obligations to each other Party with respect to the Agreements and/or the Agreement Documents and their respective rights against each other thereunder are terminated (including, without limitation, any rights, liabilities or obligations of the Parties with respect to payments or other obligations due and payable or due to be performed on or prior to the date of this Deed); and

(ii) without prejudice to (i) above, all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses and claims of every kind, nature and character whatsoever whether in law or in equity, whether based on contract (including, without limitation, quasi contract or estoppel) statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured or unmatured, liquidated or unliquidated, certain or contingent, that such releasing Party ever had or claimed to have or now has or claims to have presently or at any future date against each Released Party arising under, in connection with, or related to the Agreements and/or the Agreement Documents and their negotiation, execution, performance, any breaches thereof, or their termination or maturity.

3.5    Account Details

Payment of the Settlement Amount by the Counterparties to LCPI shall be made in Euros to the following bank account:

**Bank:** Citibank N.A. London
**SWIFT:** CITIGB2L
**A/c:** 121 36694
**IBAN:** GB52CITI18500812136694
**Name:** Lehman Commercial Paper Inc DIP
**Ref:** LoansUK/ AxaEndemol

4    NO SET-OFF

The Settlement Amount and the Interest Amount payable by the Counterparties to LCPI under this Deed shall be calculated and made:

(a)    without (and free and clear of any deduction for) any set-off, netting, withholding, combination of accounts or retention in respect of any present or future monies, debts or liabilities owing to the Counterparties or incurred by LCPI or any of its Affiliates; and

(b)    regardless of any right of equity or counterclaim the Counterparties may have against LCPI or any of its Affiliates.

5    BANKRUPTCY COURT APPROVAL

The Parties agree that they will sign the stipulation (the "**Stipulation**") in Annex 4 (*Form of Stipulation*) on the date of this Deed. The Parties acknowledge and agree that the Stipulation is to be used for the purposes of seeking approval of this Deed from the Bankruptcy Court.

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

(a)     Weil Gotshal & Manges, the solicitors representing LCPI, shall serve and file the executed Stipulation with the Bankruptcy Court on the date of the execution of this Deed.

(b)     Weil Gotshal & Manges shall notify Ashurst LLP, the solicitors representing the Counterparties, within one business day of the Bankruptcy Court order substantially in the form of the Stipulation in Annex 4 becoming final and non-appealable. Such notification shall be by facsimile to Ashurst LLP using the following number: +44 (0) 20 7638 1112 and shall be marked with the reference: MKC/LSM/AXA10.00001.

## 6     REPRESENTATIONS AND WARRANTIES

6.1     Each Party, subject (with respect to LCPI) to the approval of the Bankruptcy Court referred to in Clause 5, represents and warrants to the other Parties hereto that:

(a)     the execution, delivery and performance by it of this Deed are within its corporate powers and have been duly authorised by all necessary action and, in the case of LCPI only, LCPI has obtained the prior consent of the Committee in respect of this Deed;

(b)     the execution and delivery by it of, and the performance by it of its obligations under, this Deed will not contravene any regulations, provision of applicable law, the constitutional documents of itself, any agreement or other instrument binding upon it or any judgment, order or decree of any governmental or regulatory body, agency or court having jurisdiction over it, and no consent, approval, authorisation or order of, or qualification with, any governmental or regulatory body or agency is required for the performance by it of its obligations under this Deed and it is not in breach of or in default under any agreement or instrument to which it is a party or which is binding on it or any of its assets or revenues, which breach or default is likely to be material in the context of entering into this Deed; and

(c)     when executed and delivered by it and the other Parties hereto, this Deed will immediately constitute a valid and legally binding agreement of it, enforceable against it in accordance with its terms.

6.2     Each Party further represents and warrants to the other Parties hereto that:

(a)     it is not relying upon any oral or written statements, warranties, understandings, representations, expectations, assurances or agreements other than those expressly set forth in this Deed and waives all rights and remedies which might otherwise be available to it in respect thereof;

(b)     it has had the opportunity to be represented and advised by legal counsel in connection with this Deed, which it enters into voluntarily and of its own choice and not under coercion or duress;

(c)     it has made its own investigation of the facts and is relying upon its own knowledge and the advice of its counsel;

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

(d)   it has no expectation that any of the other Parties will disclose facts material to the Agreements or the Agreement Documents or this Deed;

(e)   it knowingly waives any and all claims that this Deed was induced by any misrepresentation or non-disclosure and knowingly waives any and all rights to rescind or avoid this Deed based upon presently existing facts, known or unknown;

(f)   it is the sole owner of, and has not assigned, transferred or otherwise disposed of any of its rights under each of the Agreements or the Agreement Documents;

(g)   it is duly authorised to compromise all of such rights; and

(h)   it has not transferred or assigned any of such rights prior to the date of this Deed.

6.3   The Parties agree that each Party is relying upon the representations and warranties in Clause 6 (*Representations and Warranties*) in entering into this Deed. Furthermore, the Parties agree that these representations and warranties are a material inducement for entering into this Deed.

6.4   LCPI represents to the Counterparties that it is the sole legal and beneficial owner of, and has good title to, the Endemol Loan, free and clear of any encumbrance save for such encumbrances as may be contained in any of the credit documentation and it conveys the Endemol Loan with full title guarantee (but excepting any encumbrance contained in any of the credit documentation) and it has not made any prior sale, transfer or sub-participation of its interest in the Endemol Loan which is subsisting.

## 7   ENTIRE AGREEMENT

This Deed constitutes the entire agreement and understanding of the Parties relating to the subject matter hereof and supersedes all prior agreements and understandings relating to the subject matter hereof.

## 8   COSTS

Each Party agrees to bear its own costs arising out of or incurred in connection with the Bankruptcy Cases, the Proceedings and the negotiation and execution of this Deed and the Transfer Documents.

## 9   TAX

Each Party shall be responsible for the payment of its own taxes arising in relation to this Deed and the Settlement Amount.

## 10   CONFIDENTIALITY

Each Party undertakes to each other Party that it shall not at any time disclose this Deed or its terms, including the Settlement Amount (together the "**Confidential Information**"), to any person save for the purposes of obtaining Bankruptcy Court approval pursuant to Clause 5

7

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS
DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD
DISTRIBUTION

and/or where such Party is required to disclose any part of the Confidential Information for
accounting purposes or to the extent required by law (including, but not limited to, as may be
required by United States federal securities and bankruptcy laws) or regulatory authority or
for the purpose of seeking advice or informing and discussing with its current and/or former
parent and/or associated company or companies, its own current or proposed insurers or by
consent of the Parties hereto. Any Party shall be entitled to disclose the existence and terms
of this Deed to its officers, employees, agents and advisers in order to enable them to carry
out their duties or in order to seek advice from them (as appropriate) conditional upon any
such person being informed of the confidential nature of such information and agreeing to
keep such information confidential for as long as the provider of the information is obliged to
do so in accordance with this Clause 9, and each relevant Party shall be responsible for any
disclosure by such person that does not comply with the terms of this Deed.

Save for the purposes of obtaining Bankruptcy Court approval pursuant to Clause 5, if a Party
or any other Parties to this Deed (including in the case of LCPI, the Committee and its
advisers) (hereinafter, collectively, the "**Related Parties**" and each, a "**Related Party**"),
becomes legally obliged (whether by court or regulatory order or other direction by a public
body with powers of compulsion or otherwise), other than due to compliance with United
States federal securities or bankruptcy laws, to disclose any of the Confidential Information,
the Party or such Related Party, as the case may be, will promptly provide the other Parties
hereto, if permitted by law, with notice of such proposed disclosure so that the other Parties
may seek a protective order or other appropriate remedy. If such a protective order or other
protective remedy is not obtained, the Party or such Related Party, as the case may be, will
disclose only that portion of the Confidential Information which is legally required, in the
opinion of its own counsel, and the Party or such Related Party, as the case may be, will
exercise its reasonable efforts to obtain reliable assurances that confidential treatment will be
accorded to the Confidential Information.

Each Party further undertakes that any communication of Confidential Information shall
include a prominent legend to the effect that the Confidential Information shall be treated as
confidential and may not be subject to onward distribution.

Notwithstanding anything to the contrary in this Deed, any Confidential Information which
becomes public for any reason other than as a result of a Party disclosing the same shall no
longer constitute Confidential Information.

## 11    SEVERABILITY OF TERMS

If any provision of this Deed is found to be void or unenforceable, that provision shall be
deemed to be deleted from this Deed and the remaining provisions of this Deed shall continue
in full force and effect. The Parties shall use their respective reasonable endeavours to
procure that any such provision is replaced by a provision which is valid and enforceable and
which gives effect to the spirit and intent of this Deed.

## 12    COUNTERPARTS

This Deed may be executed and delivered in counterparts (including by facsimile
transmission or in Adobe™ Portable Document Format (PDF) sent by electronic mail), each

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

of which when executed and delivered shall constitute an original of this Deed, but all of the counterparts shall together constitute the same Deed.

## 13    RIGHTS OF THIRD PARTIES

**13.1**    No person other than a Party to this Deed shall have any right (whether under the Contracts (Rights of Third Parties) Act 1999 or otherwise) to enforce or enjoy the benefit of any term of this Deed.

## 14    VARIATION

Any variation of this Deed shall be in writing and signed by or on behalf of each Party.

## 15    GOVERNING LAW AND JURISDICTION

**15.1**    This Deed and any non-contractual obligations, dispute, controversy, proceedings or claim of whatever nature arising out of or in connection with it, including its formation, shall be governed by and construed in accordance with English law.

**15.2**    The Parties irrevocably agree that the courts of England are to have exclusive jurisdiction to hear and decide any action or proceedings, and/or to settle any disputes, which may arise out of or in connection with this Deed, save those which may arise in respect of Bankruptcy Court approval. The Parties irrevocably submit to the jurisdiction of those courts and waive any objection to proceedings in any such court on the ground of venue or on the ground that the proceedings have been brought in an inconvenient forum.

**15.3**    Each of the Parties confirms that it has irrevocably and unconditionally appointed the person named opposite its name below as its agent to accept service of process on its behalf in England in respect of any proceedings commenced in the English courts arising out of or in connection with this Deed. Such service shall be deemed to be validly made notwithstanding that such person shall not notify any Party thereof. Nothing in this Clause shall affect the right to serve process in any other manner permitted by law.

| Party | Agent |
|---|---|
| LCPI | LAMCO Services Limited, 111 Old Broad Street, London EC2N 1FP, Attention: Legal Department |
| AXA | Ashurst LLP, Broadwalk House, 5 Appold Street, London EC2A 2HA, Attention: MKC/LSM |
| MD | Ashurst LLP, Broadwalk House, 5 Appold Street, London EC2A 2HA, Attention: MKC/LSM |

This Deed has been entered into and delivered as a Deed on the date stated at the beginning of this Deed.

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD DISTRIBUTION

## ANNEX 1

### Assignment Agreements

### ASSIGNMENT AGREEMENT

To:     The Bank of New York Mellon, London Branch as Facility Agent

From:   Lehman Commercial Paper Inc., UK Branch (the **Existing Lender**) and AXA
Mezzanine II SA, SICAR (the **New Lender**)

Dated:     April 2011

**Edam Acquisition Holding IV B.V. – €1,750,000,000, US$524,667,000 and £191,648,250
Senior Credit Agreement dated 3rd July, 2007 as amended and restated from time to
time (the Senior Credit Agreement)**

1.      We refer to the Senior Credit Agreement. This is an Assignment Agreement.

2.      We refer to Clause 29.6 (Procedure for transfer).

3.      The Existing Lender assigns absolutely to the New Lender all the rights of the
        Existing Lender under the Senior Credit Agreement, the other Senior Finance
        Documents and in respect of the Transaction Security which correspond to that
        portion of the Existing Lender's Commitments and participations in Utilisations under
        the Senior Credit Agreement as specified in the Schedule.

4.      The Existing Lender is released from all the obligations of the Existing Lender which
        correspond to that portion of the Existing Lender's Commitments and participations in
        Utilisations under the Senior Credit Agreement specified in the Schedule.

5.      The New Lender becomes a Party as a Lender and is bound by obligations equivalent
        to those from which the Existing Lender is released under paragraph 4 above.

6.      For the purposes of German law:

        (a)     the New Lender ratifies (*genehmigt*) the acceptance of accessory securities
                entered into with a view to securing, inter alia, certain Mezzanine Finance
                Documents and certain Senior Finance Documents, especially pledges, by the
                Security Agent as representative without power of attorney (*Vertreter ohne
                Vertretungsmacht*) on behalf of the New Lender. The New Lender thereby
                becomes a party to any German pledge agreement, being a Senior Finance
                Document, signed by the Security Agent as representative without power of
                attorney; and

        (b)     the New Lender and the Security Agent hereby agree that the New Lender
                accedes to the German Security Trust Agreement. The other parties to the
                German Security Trust Agreement granted their anticipated consent to such
                accession in the German Security Trust Agreement.

7.      An assignment of rights will only be effective if, at the cost of the New Lender, the
        assignment is notified to each French Obligor by a bailiff (*huissier*) in accordance
        with Article 1690 of the French Civil Code.

8.      The proposed Transfer Date is ___ **April 2011**

9.   On the Transfer Date the New Lender becomes party to the Senior Finance Documents as a Lender.

10.   The New Lender expressly acknowledges the limitations on the Existing Lender's obligations set out in Clause 29.4(c) (Limitation of responsibility of Existing Lenders).

11.   The Facility Office and address, fax number and attention details for notices of the New Lender for the purposes of Clause 36.2 (Addresses) are set out in the Schedule.

12.   This Assignment Agreement may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Assignment Agreement.

13.   The New Lender agrees to become a "Senior Creditor" (for the purposes of the Intercreditor Agreement) and to be bound by the terms of the Intercreditor Agreement.

14.   This Assignment Agreement is governed by English law (with the exception of Clause 6 hereof which shall be governed by German law).

15.   This Assignment Agreement has been entered into on the date stated at the beginning of this Assignment Agreement.

**Note:** **The execution of this Assignment Agreement may not transfer a proportionate share of the Existing Lender's interest in the Transaction Security in all jurisdictions. It is the responsibility of the New Lender to ascertain whether any other documents or other formalities are required to perfect a transfer of such a share in the Existing Lender's Transaction Security in any jurisdiction and, if so, to arrange for execution of those documents and completion of those formalities.**

## THE SCHEDULE

Commitment/rights and obligations to be transferred by assignment, release and accession

| Facility | Borrower | Commitment |
|---|---|---|
| **Second Lien Commitment** | Endemol B.V. | **€9,714,599.34** |

Facility office address, fax number and attention details for notices and account details for payments for New Lender as follows:

| Address: | AXA Mezzanine II SA, SICAR<br>21, Boulevard Grande-Duchesse Charlotte, L-1331, Luxembourg |
|---|---|
| Fax number: | +352 45 85 59 |
| Attention: | Brian McMahon |

Account Details:
| Bank name: | RBS Global Banking (Luxembourg) SA |
|---|---|
| Swift Code: | ABNALULL |
| Account Name: | AXA Mezzanine II S.A., SICAR |
| IBAN EUR: | LU80 1620 1081 1297 8001 |
| IBAN USD: | LU89 1620 1081 1284 0002 |
| IBAN CANS: | LU59 1620 1081 1212 4003 |
| IBAN GBP: | LU26 1620 1081 1282 6004 |

**Lehman Commercial Paper Inc., UK Branch**   **AXA Mezzanine II SA, SICAR**

By:                                              By:

This Assignment Agreement is accepted by The Bank of New York Mellon as Facility Agent and Barclays Bank PLC as Security Agent and the Transfer Date is confirmed as ___ **April 2011.**

Signature of this Assignment Agreement by the Facility Agent constitutes confirmation by the Facility Agent of receipt of notice of the assignment referred to herein, which notice the Facility Agent receives on behalf of each Finance Party.

The Bank of New York Mellon, London Branch as Facility Agent

By:

Barclays Bank PLC as Security Agent

By:

3

### ASSIGNMENT AGREEMENT

To:    The Bank of New York Mellon, London Branch as Facility Agent

From:  Lehman Commercial Paper Inc., UK Branch (the **Existing Lender**) and MD Mezzanine SA, SICAR (the **New Lender**)

Dated:    April 2011

**Edam Acquisition Holding IV B.V. – €1,750,000,000, US$524,667,000 and £191,648,250 Senior Credit Agreement dated 3rd July, 2007 as amended and restated from time to time (the Senior Credit Agreement)**

1.    We refer to the Senior Credit Agreement. This is an Assignment Agreement.

2.    We refer to Clause 29.6 (Procedure for transfer).

3.    The Existing Lender assigns absolutely to the New Lender all the rights of the Existing Lender under the Senior Credit Agreement, the other Senior Finance Documents and in respect of the Transaction Security which correspond to that portion of the Existing Lender's Commitments and participations in Utilisations under the Senior Credit Agreement as specified in the Schedule.

4.    The Existing Lender is released from all the obligations of the Existing Lender which correspond to that portion of the Existing Lender's Commitments and participations in Utilisations under the Senior Credit Agreement specified in the Schedule.

5.    The New Lender becomes a Party as a Lender and is bound by obligations equivalent to those from which the Existing Lender is released under paragraph 4 above.

6.    For the purposes of German law:

    (a)    the New Lender ratifies (*genehmigt*) the acceptance of accessory securities entered into with a view to securing, inter alia, certain Mezzanine Finance Documents and certain Senior Finance Documents, especially pledges, by the Security Agent as representative without power of attorney (*Vertreter ohne Vertretungsmacht*) on behalf of the New Lender. The New Lender thereby becomes a party to any German pledge agreement, being a Senior Finance Document, signed by the Security Agent as representative without power of attorney; and

    (b)    the New Lender and the Security Agent hereby agree that the New Lender accedes to the German Security Trust Agreement. The other parties to the German Security Trust Agreement granted their anticipated consent to such accession in the German Security Trust Agreement.

7.    An assignment of rights will only be effective if, at the cost of the New Lender, the assignment is notified to each French Obligor by a bailiff (*huissier*) in accordance with Article 1690 of the French Civil Code.

8.    The proposed Transfer Date is ___ **April 2011**.

9.   On the Transfer Date the New Lender becomes party to the Senior Finance Documents as a Lender.

10.   The New Lender expressly acknowledges the limitations on the Existing Lender's obligations set out in Clause 29.4(c) (Limitation of responsibility of Existing Lenders).

11.   The Facility Office and address, fax number and attention details for notices of the New Lender for the purposes of Clause 36.2 (Addresses) are set out in the Schedule.

12.   This Assignment Agreement may be executed in any number of counterparts and this has the same effect as if the signatures on the counterparts were on a single copy of this Assignment Agreement.

13.   The New Lender agrees to become a "Senior Creditor" (for the purposes of the Intercreditor Agreement) and to be bound by the terms of the Intercreditor Agreement.

14.   This Assignment Agreement is governed by English law (with the exception of Clause 6 hereof which shall be governed by German law).

15.   This Assignment Agreement has been entered into on the date stated at the beginning of this Assignment Agreement.

**Note:   The execution of this Assignment Agreement may not transfer a proportionate share of the Existing Lender's interest in the Transaction Security in all jurisdictions. It is the responsibility of the New Lender to ascertain whether any other documents or other formalities are required to perfect a transfer of such a share in the Existing Lender's Transaction Security in any jurisdiction and, if so, to arrange for execution of those documents and completion of those formalities.**

### THE SCHEDULE

Commitment/rights and obligations to be transferred by assignment, release and accession

| Facility | Borrower | Commitment |
|---|---|---|
| **Second Lien Commitment** | Endemol B.V. | **€27,785,400.66** |

Facility office address, fax number and attention details for notices and account details for payments for New Lender as follows:

| Address: | MD Mezzanine SA, SICAR |
|---|---|
| | 21, Boulevard Grande-Duchesse Charlotte, L-1331, Luxembourg |

| Fax number: | +352 45 85 59 |
|---|---|

| Attention: | Brian McMahon |
|---|---|

Account Details:
| Bank name: | RBS Global Banking (Luxembourg) SA |
|---|---|
| Swift Code: | ABNALULL |
| A/X Name: | MD Mezzanine SA, SICAR Compartment 2 |
| IBAN EUR: | LU66 1620 1089 6297 8001 |
| IBAN USD: | LU75 1620 1089 6284 0002 |
| IBAN CAN$: | LU18 1620 1089 6212 4004 |
| IBAN GBP: | LU39 1620 1089 6282 6003 |

**Lehman Commercial Paper Inc., UK Branch**    **MD Mezzanine SA, SICAR**

By:                                             By:

This Assignment Agreement is accepted by The Bank of New York Mellon as Facility Agent and Barclays Bank PLC as Security Agent and the Transfer Date is confirmed as ___ April 2011.

Signature of this Assignment Agreement by the Facility Agent constitutes confirmation by the Facility Agent of receipt of notice of the assignment referred to herein, which notice the Facility Agent receives on behalf of each Finance Party.

The Bank of New York Mellon, London Branch as Facility Agent

By:

Barclays Bank PLC as Security Agent

By:

3

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS
DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD
DISTRIBUTION

## ANNEX 2

**Deeds of Accession**

## ACCESSION AGREEMENT

To:      Barclays Bank PLC as the Security Agent
From:   AXA Mezzanine II SA, SICAR


Date:   ___ April 2011

### Edam Acquisition Holding IV B.V. - Intercreditor Agreement dated
### 3rd July, 2007 as amended and restated from time to time (the Intercreditor Agreement)

1.       We refer to the Intercreditor Agreement. This deed is an Accession Agreement. Terms defined in the Intercreditor Agreement (including by operation of Clause 1.2 (Construction) of the Intercreditor Agreement) have the same meaning in this Accession Agreement unless given a different meaning in this Accession Agreement.

2.       We, AXA Mezzanine II SA, SICAR (the **Acceding Party**) of 21, Boulevard Grande-Duchesse Charlotte, L-1331, Luxembourg, agree to be a Senior Creditor under the Intercreditor Agreement and to be bound by the terms of the Intercreditor Agreement.

3.       For the purposes of German law:

(a)      the Acceding Party hereby ratifies (*genehmigt*) the acceptance of accessory securities entered into with a view to securing, inter alia, certain Mezzanine Finance Documents and certain Senior Finance Documents, especially pledges, by the Security Agent as representative without power of attorney (*Vertreter ohne Vertretungsmacht*) on behalf of it. The Acceding Party thereby becomes a party to any German pledge agreement, being a Senior Finance Document, signed by the Security Agent as representative without power of attorney; and

(b)      the Acceding Party and the Security Agent hereby agree that the Acceding Party accedes to the German Security Trust Agreement. The other parties to the German Security Trust Agreement granted their anticipated consent to such accession in the German Security Trust Agreement.

4.       Our contact details and Facility Office are as follows:

Address:       21, Boulevard Grande-Duchesse Charlotte, L-1331,
Luxembourg

Fax number:   +352 45 85 59


Attention:      Brian McMahon

5.       It is intended that this document take effect as a deed notwithstanding the fact that a party may only execute this document under hand. This deed is intended to be executed as a deed and is (with the exception of Clause 3 hereof which shall be governed by German law) governed by English law.

**IN WITNESS** whereof this agreement has been executed as a Deed on the date first above written.

**Acceding Party**

EXECUTED and DELIVERED as
a DEED for and on behalf of
AXA Mezzanine II SA, SICAR

By: _____          By: _____

Name:                                 Name:

Title:                                Title:


Accepted by Barclays Bank PLC as Security Agent:

**Security Agent**

EXECUTED and DELIVERED as          )
a DEED for and on behalf of        )
BARCLAYS BANK PLC acting by        )
                                   )        _____
as its duly authorised attorney    )
in the presence of:                )

Witness' signature:     _____

Witness' name:          _____

Witness' occupation:    _____

Witness' address:       _____

                        _____

                        _____

2

## ACCESSION AGREEMENT

To:    Barclays Bank PLC as the Security Agent
From: MD Mezzanine SA, SICAR

Date:    ___ April 2011

**Edam Acquisition Holding IV B.V. - Intercreditor Agreement dated
3rd July, 2007 as amended and restated from time to time (the Intercreditor Agreement)**

1.    We refer to the Intercreditor Agreement. This deed is an Accession Agreement.
Terms defined in the Intercreditor Agreement (including by operation of Clause 1.2
(Construction) of the Intercreditor Agreement) have the same meaning in this
Accession Agreement unless given a different meaning in this Accession Agreement.

2.    We, MD Mezzanine SA, SICAR (the **Acceding Party**) of 21, Boulevard Grande-
Duchesse Charlotte, L-1331, Luxembourg, agree to be a Senior Creditor under the
Intercreditor Agreement and to be bound by the terms of the Intercreditor Agreement.

3.    For the purposes of German law:

   (a)    the Acceding Party hereby ratifies (*genehmigt*) the acceptance of accessory
securities entered into with a view to securing, inter alia, certain Mezzanine
Finance Documents and certain Senior Finance Documents, especially
pledges, by the Security Agent as representative without power of attorney
(*Vertreter ohne Vertretungsmacht*) on behalf of it. The Acceding Party
thereby becomes a party to any German pledge agreement, being a Senior
Finance Document, signed by the Security Agent as representative without
power of attorney; and

   (b)    the Acceding Party and the Security Agent hereby agree that the Acceding
Party accedes to the German Security Trust Agreement. The other parties to
the German Security Trust Agreement granted their anticipated consent to
such accession in the German Security Trust Agreement.

4.    Our contact details and Facility Office are as follows:

   Address:    21, Boulevard Grande-Duchesse Charlotte, L-1331,
   Luxembourg

   Fax number:    +352 45 85 59

   Attention:    Brian McMahon

5.    It is intended that this document take effect as a deed notwithstanding the fact that a
party may only execute this document under hand. This deed is intended to be
executed as a deed and is (with the exception of Clause 3 hereof which shall be
governed by German law) governed by English law.

**IN WITNESS** whereof this agreement has been executed as a Deed on the date first above written.

**Acceding Party**

EXECUTED and DELIVERED as
a DEED for and on behalf of
MD Mezzanine SA, SICAR

By: _____          By: _____

Name:                                   Name:

Title:                                  Title:


Accepted by Barclays Bank PLC as Security Agent:

**Security Agent**

EXECUTED and DELIVERED as        )
a DEED for and on behalf of      )
BARCLAYS BANK PLC acting by       )
                                 )        _____
as its duly authorised attorney  )
in the presence of:              )


Witness' signature:          _____

Witness' name:               _____

Witness' occupation:         _____

Witness' address:            _____

                             _____

                             _____

2

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS
DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD
DISTRIBUTION

## ANNEX 3

### Form of Order

IN THE HIGH COURT OF JUSTICE                    2009 FOLIO NO. 1224

QUEEN'S BENCH DIVISION

COMMERCIAL COURT

BETWEEN:

LEHMAN COMMERCIAL PAPER INC.

<u>Claimant</u>

-and-

(1) AXA MEZZANINE II SA, SICAR

(2) MD MEZZANINE SA, SICAR

<u>Defendants</u>

---

**CONSENT ORDER**

---

**UPON the parties having agreed terms of settlement**

**BY CONSENT IT IS ORDERED that:**

1    All further proceedings in this action be stayed upon the terms set out in the Release Agreement between the parties dated [●], the original of which has been kept by the Claimant's solicitors and a copy of which has been kept by the Defendants' solicitors, except for the purpose of enforcing those terms.

2    Each party shall have permission to apply to the Court to enforce the terms upon which this action has been stayed without the need to bring a new claim.

3    There shall be no order as to costs (each party to bear its own costs).

4    **AND IT IS RECORDED** that the parties have agreed that any claim for breach of contract arising from an alleged breach of the terms set out in the Release Agreement referred to above may, unless the Court orders otherwise, be dealt with by way of an application to Court without the need to start a new claim.

Dated this        day of April 2011.

.....................................    ...........................................

Weil, Gotshal & Manges          Ashurst LLP
One South Place                 Broadwalk House
London                          5 Appold Street
EC2M 2WG                        London
                                EC2A 2HA
Ref: MS/CJH/58399.0008

                                Ref: MKC/LSM/AXA10.00001

Solicitors for the Claimant     Solicitors for the Defendants

2009 FOLIO 1224

IN THE HIGH COURT OF JUSTICE

QUEEN'S BENCH DIVISION

COMMERCIAL COURT


B E T W E E N:

LEHMAN COMMERCIAL PAPER INC.

Claimant

-and-

(1) AXA MEZZANINE II SA, SICAR
(2) MD MEZZANINE SA, SICAR

Defendant


---

**CONSENT ORDER**

---


Weil, Gotshal & Manges
One South Place
London
EC2M 2WG

Ref: MS/CJM/58399.0008
Tel: 020 7903 1000

Solicitors for the Claimant

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS
DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD
DISTRIBUTION

## ANNEX 4

## Form of Stipulation

**Not included so as to avoid duplication**

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS
DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD
DISTRIBUTION

## EXECUTION

**EXECUTED AND DELIVERED AS A DEED**
**LEHMAN COMMERCIAL PAPER INC.**
(as "**LCPI**")

By: *David Walsh*                                                    )

Signature: *[signature]*                                            )

Date: *4/5/11*                                                       )

Witnessed by: *Patricia Rodriguez*                                  )

Signature: *Patricia Rodriguez*                                     )

Date: *4.5.11*                                                       )

**EXECUTED AND DELIVERED AS A DEED**
**AXA MEZZANINE II SA, SICAR**
(as "**AXA**")

By:                                                                 )

Signature:                                                          )

Date:                                                               )

Witnessed by:                                                       )

Signature:                                                          )

Date:                                                               )

**EXECUTED AND DELIVERED AS A DEED**
**FOR AND ON BEHALF OF**
**MD MEZZANINE SA, SICAR**
(as "**MD**")

By:                                                                 )

Signature:                                                          )

Date:                                                               )

Witnessed by:                                                       )

Signature:                                                          )

Date:                                                               )

THE CONTENTS OF THIS DEED, INCLUDING THE TOTAL SETTLEMENT AMOUNT SET OUT IN THIS
DEED CONSTITUTE CONFIDENTIAL INFORMATION AND MAY NOT BE SUBJECT TO ONWARD
DISTRIBUTION

## EXECUTION

**EXECUTED AND DELIVERED AS A DEED**
**LEHMAN COMMERCIAL PAPER INC.**
(as "LCPI")

By:                                                             )

Signature:                                                      )

Date:                                                           )

Witnessed by:                                                   )

Signature:                                                      )

Date:                                                           )

**EXECUTED AND DELIVERED AS A DEED**
**AXA MEZZANINE II SA, SICAR**
(as "AXA")

By:

Signature:

Date:

Witnessed by:

Signature:

Date:

**EXECUTED AND DELIVERED AS A DEED**
**FOR AND ON BEHALF OF**
**MD MEZZANINE SA, SICAR**
(as "MD")

By:

Signature:

Date:

Witnessed by:

Signature:

Date:

14