Hearing Date: April 28, 2011 at 10:00 a.m.
Objection Deadline: April 13, 2011 at 4:00 p.m. (EST)

Douglas R. Schwartz, Esq.
Petra M. Reinecke, Esq.
Robert L. Elam, Esq.
Schwartz & Cera LLP
44 Montgomery Street, Suite 3850
San Francisco, CA 94104
Telephone: (415) 956-2600
Facsimile: (415 438-2655

Attorneys for Charles E. Moore

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In Re | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., et. al. | Case No. 08-13555 (JMP) (Jointly Administered) |
| Debtors. | |

## RESPONSE TO CLAIM OBJECTION

**CHARLES E. MOORE** ("Moore"), by its undersigned counsel, responds to Debtors' One Hundred Eleventh Omnibus Objection to Claims (No Liability Claims) (Doc. No. 15012) (the "Objection") as follows:

### INTRODUCTION

1. The Objection challenges claim no. 3001 in the amount of $300,000.00 filed by Moore.

2. Moore's proof of claim was timely filed on February 10, 2009, against LB DeSilva LLC (" LB DeSilva") c/o Lehman Brothers Holding Inc. ("LBHI"). *See* Declaration of Douglas R. Schwartz ("Schwartz Decl."), ¶2 and Exhibit A, at p. 1.

3. LBHI seeks to disallow and expunge Moore's claim based on a theory of no liability solely because Moore failed to obtain a civil judgment against LBHI, the alter ego of LB DeSilva.

4. The Objection to this Claim should be overruled on the basis that LBHI is liable as the alter ego of DeSilva.

5. LBHI purposefully interjected itself into the lawsuit which forms the basis of Moore's claim, *Moore v. LB DeSilva, LLC, et al* (CIV 071224), in 2008, as the ultimate corporate parent and controlling entity for LB DeSilva, fraudulently depriving Moore of an imminent settlement in the full amount of his $300,000 claim.

## BACKGROUND

*Moore Sues LB DeSilva for Shoddy Construction Work on His Home*

6. On March 16, 2007, Moore filed a lawsuit in Marin County Superior Court, California (the "Moore Action") against LB DeSilva[1] for strict liability, breach of express and implied warranties, negligence, fraud, negligent misrepresentation, concealment and rescission, seeking damages relating to deficiencies in the construction of his home. *See* Schwartz Decl., ¶4 and Exhibit B, at pp. 3, 7.

7. The Moore Action was mediated on June 18, 2008, at JAMS in San Francisco, California. Present at the June 18, 2008 mediation was Deborah Spencer of Trimont Real Estate Advisors who informed Moore's counsel that she represented the interests of Lehman Brothers. *See* Schwartz Decl., at ¶ 5.

8. On June 19, 2008, the mediator presented his proposal to the parties. *See* Schwartz Decl., ¶6 and Exhibit C, at p. 4. The mediator's proposal provided that the Moore Action be settled by payment from defendant LB DeSilva to plaintiff Moore of $300,000.

---

[1] There were two other co-defendants.

9. On or before June 25, 2008, all parties acknowledged acceptance of and agreed to accept the mediator's proposal. *See* Schwartz Decl., ¶7 and <u>Exhibit C</u>, at p. 4. Accordingly, the Moore Action was settled in accordance with the terms of the mediator's proposal, and the parties entered into a binding settlement agreement, which was subsequently enforced and entered as a judgment by the California court. *Id.*

*LBHI Takes Control Of LB DeSilva in the Moore Action*

10. LBHI was represented at the June 18, 2008 mediation.

11. On July 7, 2008, Moore requested a draft settlement agreement and release from LB DeSilva's counsel. *See* Schwartz Decl., ¶7 and <u>Exhibit C</u>, at p. 1.

12. In an email dated July 8, 2008, LB DeSilva's counsel acknowledged that he would be "discussing" the matter "with clients", using the plural. *See* Schwartz Decl., ¶8 and <u>Exhibit C</u>, at pp. 1-2.

13. On July 14, 2008, Moore again requested a draft settlement agreement from LB DeSilva, stating that it was already three weeks after settlement talks and only required a "simple and straightforward release" and the issuance of a check. *See* Schwartz Decl., ¶9 and <u>Exhibit C</u>, at p. 2.

14. In an email dated July 23, 2008, counsel for LB DeSilva responded that the Action was "now being reviewed by an in-house counsel with client and will be returned within a couple of days, possibly sooner." *See* Schwartz Decl., ¶10 and <u>Exhibit C</u>, at p. 3.

15. On July 31, 2008, Moore requested the mediator's intervention to finalize the settlement agreement in light of LB DeSilva's failure to submit a first draft of the proposed agreement in over six weeks. *See* Schwartz Decl., ¶11 and <u>Exhibit D</u>.

16. On August 18, 2008, counsel for LB DeSilva confirmed to the Court in the Moore Action that the matter had been settled and represented that he anticipated the agreement being finalized within 30 days. *See* Schwartz Decl., ¶12 and <u>Exhibit E</u>, at p. 2.

17. On September 17, 2008, counsel for LB DeSilva spoke with Joelle Halperin, Esq. of LBHI ("Halperin"). Ms. Halperin instructed LB DeSilva's counsel to perform no further work in connection with the Moore Action. She further requested that counsel

withdraw as counsel of record for LB DeSilva in the Moore Action. *See* Schwartz Decl., ¶16 and Exhibit G, at p. 3.

18.  On September 25, 2008, counsel for LB DeSilva confirmed in a telephone conversation with LBHI that the current mailing address of LB DeSilva was c/o LBHI, 745 Seventh Avenue, 13th Floor, New York, New York 10019. *See* Schwartz Decl., ¶17 and Exhibit G, at p. 4.

19.  On October 10, 2008, counsel for LB DeSilva filed a motion to be relieved as counsel to DeSilva. *See* Schwartz Decl., ¶13 and Exhibit F. Counsel listed its client as DeSilva c/o LBHI, 745 Seventh Avenue, 13th Floor, New York, New York 10019. *See* Schwartz Decl., ¶14 and Exhibit F, at p. 1. The motion was served on Ms. Halperin at LBHI. *See* Schwarz Decl., ¶14 and Exhibit F, at p. 4. When explaining its withdrawal, counsel invoked the attorney-client privilege, could not disclose the circumstances and acknowledged that LB DeSilva would not engage new counsel even though it was impossible for DeSilva to appear *in pro per*. *See* Schwartz Decl., ¶15 and Exhibit G, at p. 4.

20.  On October 27, 2008, the court granted counsel's motion to be relieved as counsel to LB DeSilva. *See* Schwartz Decl. ¶18, Exhibit H. The court clerk sent copies to Ms. Halperin and LB DeSilva c/o LBHI both at 745 Seventh Avenue, 13th Floor, New York, New York 10019. *Id.*

21.  On November 7, 2008, Ms. Halperin of LBHI spoke with a legal assistant working for Moore's counsel. In the conversation, Ms. Halperin stated that (i) Lehman Brothers or LBHI owns LB DeSilva, (ii) LB DeSilva was not paying Moore, and (iii) attorneys were trying to figure out whether LB DeSilva should declare bankruptcy. *See* Schwartz Decl., ¶19 and Exhibit I. In addition, if Moore sought a default judgment against LB DeSilva, "nothing will be paid," "not a dime." *Id.* These statements were repeated by Ms. Halperin of LBHI to Moore's counsel shortly thereafter. *See* Schwartz Decl., ¶19.

*LBHI Declares Bankruptcy and LB DeSilva Becomes Inactive*

22.  LBHI and 22 additional affiliates filed a voluntary petition for relief pursuant to Chapter 11 of the United States Code in this Court on September 15, 2008. However,

-4-

Moore did not receive the Notice of Chapter 11 Bankruptcy Filings, filed on December 16, 2008, until December 22, 2008. *See* Schwartz Decl., ¶20.

23. Moore obtained Judgment against LB DeSilva on November 26, 2008 in Marin County Superior Court in the sum of $300,000. *See* Schwartz Decl., ¶21 and Exhibit J. The Notice of Entry of Order Granting Motion to Enforce Settlement was sent to Ms. Halperin at LB DeSilva c/o Lehman Brothers Holdings, Inc., 745 Seventh Avenue, 13th Floor, New York, New York 10019. *See* Schwartz Decl., ¶21 and Exhibit J, at p. 7.

24. At that time, Moore could not amend the Judgment to add LBHI as the alter ego of DeSilva because LBHI had already declared bankruptcy and all lawsuits against it were stayed.

25. Moore's notice of appearance and request for service was filed on February 5, 2009. *See* Schwartz Decl., ¶24.

26. On February 9, 2009, Moore perfected a Judgment Lien against LB DeSilva c/o Lehman Brothers, Inc. along with a UCC Filing Acknowledgement with the California Secretary of State and directed that the notice be served on Lehman Brothers, Inc. at 745 Seventh Avenue, 15th Floor, New York, New York. *See* Schwartz Decl., ¶25 and Exhibit K.

27. On February 9, 2009, Moore's counsel confirmed that LB DeSilva had canceled its business registration at some time earlier with the California Secretary of State. *See* Schwartz Decl., ¶26 and Exhibit L.

28. On February 18, 2009, Moore hired the Sankey Firm ("Sankey") to conduct an asset search of LB DeSilva to satisfy the judgment. *See* Schwartz Decl., ¶27. Sankey discovered that LB DeSilva, Inc. was listed as an officer for LB DeSilva. *See* Schwartz Decl., ¶27 and Exhibit M, at p. 2. LB DeSilva, Inc. is located at 745 7th Avenue, New York, New York 10019. *See* Schwartz Decl., ¶27 and Exhibit M, at pp. 2-3. The current address for LB DeSilva is also listed as 745 7th Avenue, New York, New York 10019 on the website corporationswiki.com. *See* Schwartz Decl., ¶27 and Exhibit N. No assets were identified but Sankey found a public filing wherein Redwood Capital Finance Company had secured a lien or judgment as well against LB DeSilva c/o LBHI. *See* Schwartz Decl., ¶27 and Exhibit M, at p. 7.

29. On April 8, 2011, in preparation of this response, Moore's counsel discovered that in a requested Freedom of Information Act report, LB DeSilva was listed as an asset of LBHI. *See* Schwartz Decl., ¶28 and Exhibit O.

## ARGUMENT

30. A timely filed proof of claim constitutes *prima facie* evidence of the amount and validity of the claim. 11 U.S.C. § 502(a); *Stancill v. Harford Sands, Inc.* (4th Cir. 2004) 372 F.3d 637, 640; *In re 183 Lorraine St. Assoc.* (Bankr. E.D.N.Y. 1996) 198 B.R. 16, 26; Fed R. Bankr. P. 3001(f).

31. LBHI may raise omnibus objections to a claim based upon grounds listed in Fed R. Bankr. P. 3007(d).

32. This court may dispose of an objection to a claim by summary judgment; a hearing is not required. *In re Manhattan Woods Golf Club Inc.* (S.D.N.Y. 1996) 192 B.R. 80. In *In re Manhattan Woods Golf Club Inc.*, the bankruptcy court disposed of a creditor's claim raising a corporate veil-piercing argument, but only after finding that "there was no genuine issue of material fact raised in their [creditor's] response papers to hear." *Id.*, at p. 84. That court applied a summary judgment standard of review and "assumed as true those facts which I have employed in this decision and which I have adopted from the various submissions of [the creditors] ...." *Id.* Thus, where the creditor raises sufficient facts, which must be taken as true, the objection cannot be sustained. In *Zoran Corporation v. Thomas Chen* (2010) 185 Cal.App.4th 799, 815-816, the appellate court reversed summary judgment against a creditor after concluding that the creditor's evidence, if proven, could show alter ego liability.

*LBHI is the Alter Ego of DeSilva and Should be Held Liable*

33. In this case, there is sufficient basis on which to sustain the claim and to dismiss the objection. At a minimum, Moore has shown sufficient facts that, if proven, could show alter ego liability of LBHI for Moore's claim.

34. Moore is informed and believes, and thereon alleges, that there exists such a unity and sameness among defendant LB DeSilva and debtor LBHI that each is the alter ego of the other, with such a unity of interest that their separate personalities no longer exist and that an unjust result would follow if the corporate fiction was observed. "The essence of the alter ego doctrine is that justice be done." *Mesler v. Bragg Management Company* (1985) 39 Cal.3d 290, 301.[2]

35. Under California law[3], there are two general requirements for disregarding the corporate entity: "(1) that there be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Automotriz del Golfo De California v. Resnick* (1957) 47 Cal.2d 792, 796. And "only a difference in wording is used in stating the same concept where the entity sought to be held liable is another corporation instead of an individual. *McLoughling v. L. Bloom Sons Co., Inc.* (1962) 206 Cal.App.2d 848, 851.

36. In applying the first requirement, unity of interest, California courts have considered a variety of factors, including among others: (1) the parent corporation dominated the affairs of the defendant; (2) commingling of funds and other assets; (3) that the defendant

---

[2] Because "[p]roperty interests are created and defined by state law," state law must be used to resolve questions involving property rights in the bankruptcy estate's assets "[u]nless some federal interest requires a different result." *Butner v. United States*, 440 U.S. 48, 55 (1979). Bankruptcy courts should apply the choice-of-law rules of the forum state in the absence of a significant federal interest. *In re Gaston & Snow*, 243 F.3d 599 (2d Cir. 2001). When making a choice of law determination in a contract case, New York courts will normally apply the law of the jurisdiction having the greatest interest in the litigation, as measured by that jurisdiction's contacts with the litigation. *Matter of Allstate Ins. Co.*, 81 N.Y.2d 219, 225-28 (1993). This would seem to suggest that California law, including California law on alter ego, would govern. Moore's claim is based on a California judgment obtained in the Moore Action. LBHI interceded in the negotiations of the Moore Action, involving real property in Marin County, California, and which took place in and around San Francisco, California.

[3] The alter ego liability analysis is similar under New York law. To pierce a parent corporation's corporate veil under New York law: (1) the parent corporation must have exercised such control that the subsidiary has become a mere instrumentality of the parent, which is the real actor; (2) such control has been used to commit fraud or other wrong; and (3) the fraud or wrong results in an unjust loss or injury to plaintiff. *See Wm. Passalacgua Builders, Inc. v. Resnick Developers South, Inc.* (2d Cir. 1991) 933 F.2d 131, 138. Liability may be predicated either upon a showing of fraud or that the corporation has been so dominated by another corporation, and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego. *See Gartner v. Snyder* (2d Cir. 1979) 607 F.2d 582, 586.

failed to abide by the formalities of corporate existence; (4) identical directors and officers in the two entities; (5) the use of the same office or business location; (6) the employment of the same employees and/or attorney; (7) that the defendant was inadequately capitalized; (8) that the defendant was a mere shell for the parent corporation's manipulation; (9) the diversion of income and assets; and (10) that the defendant is and has been insolvent.[4] *Sonora Diamond Corp. v. Superior Court* (2000) 99 Cal.Rptr.2d 824, 836; *Associated Vendors, Inc. v. Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838-840.

37. In this case, LBHI dominated the legal affairs of LB DeSilva in the Moore Action. *See generally* Schwartz Decl., Exhibits C-I.

38. Further, in-house counsel for LBHI, Ms. Halperin, stated that Lehman Brothers owned LB DeSilva.

39. LBHI and LB DeSilva shared the use of the same office or business location at 745 Seventh Avenue, 13th Floor, New York, New York 10019. On September 25, 2008, counsel for LB DeSilva confirmed in a telephone conversation with LBHI that the current mailing address of LB DeSilva was c/o LBHI, 745 Seventh Avenue, 13th Floor, New York, New York 10019. *See* Schwartz Decl., ¶17 and Exhibit G, at p. 4.

40. LBHI and LB DeSilva shared the same in-house counsel, Ms. Halperin, who directed the legal affairs of LB DeSilva in the Moore Action.

41. LB DeSilva was inadequately capitalized and became inactive before February 9, 2009.

42. LB DeSilva became the mere shell of LBHI, as it was shut down in October 2008 while known liabilities were outstanding. LB DeSilva's counsel stated in a declaration before the California court in the Moore Action that LB DeSilva would not be seeking new counsel even though it could not represent itself *in pro per*. The reasons for such action were shielded by the attorney-client privilege, but apparently involved the imminent shuttering of LB DeSilva, as directed and controlled by LBHI. More importantly, LB DeSilva was subsequently listed as an asset of LBHI. *See* Schwartz Decl., ¶28 and Exhibit O.

---

[4] For a fuller list read *Zoran Corporation v. Thomas Chen* (2010) 185 Cal.App.4th 799, 811-812.

43. These allegations are affirmed by what others have found: that LBHI shifted assets and liabilities among other subsidiaries and affiliates without strict accountability moments before its bankruptcy was declared, as reported in the Wall Street Journal on September 22, 2008, and New York Times on April 12, 2010. *See* Schwartz Decl., ¶29 and Exhibit P.

44. As to the second requirement, Moore need not show actual fraud but only that an inequitable result would follow. *Linco Services, Inc. v. DuPont* (1966) 239 Cal.App.2d 841, 844 citing *Claremont Press Pub. Co. v. Barksdale* (1960) 187 Cal.App.2d 813, 817. "A creditor may seek to disregard the corporate entity ..." by merely setting "forth additional facts of improper domination of the corporation as a basis of judgment against the individuals." *First Western Bank & Trust Co. v. Emon Hermon Bookasta* (1968) 267 Cal.App.2d 910, 914.

45. In upholding Moore's claim against LBHI, this Court may rely upon the declaration of counsel for LB DeSilva, who was directed by in-house counsel for LBHI, as noted in the supporting declaration. Prior to LBHI's involvement, Moore and LB DeSilva agreed to a settlement of $300,000 to be paid to Moore. A settlement agreement and release could have been drafted and signed by early July 2008. If LB DeSilva had made its opposition known, Moore could have filed a motion to enforce judgment against DeSilva no later than early August 2008. If LBHI had made its opposition known as well, Moore could have amended the judgment to add judgment debtor LBHI no later than early September, before LBHI's bankruptcy.

46. After LBHI's involvement, the settlement talks were delayed significantly and purposefully, which then resulted in a denial of payment to Moore. The delay was significant in that it coincided with the bankruptcy of LBHI and the inactive status of LB DeSilva in the State of California, leaving Moore with nothing. *See generally* Schwartz Decl., Exhibits C-I.

47. Five months after the parties agreed to a $300,000 settlement for Moore, Ms. Halperin, in-house counsel for LBHI, stated that (i) Lehman Brothers or LBHI owns LB DeSilva, (ii) LB DeSilva is not paying Moore, and (iii) attorneys are trying to figure out whether LB DeSilva should declare bankruptcy. In addition, if Moore sought a default

judgment against LB DeSilva, "nothing will be paid," "not a dime." *See* Schwartz Decl., ¶19 and Exhibit I.

48.   In this case, there is substantial and sufficient evidence of alter ego liability. Reliance on declarations "provided sufficient evidence from which the trial court could reasonably conclude that there was substantial evidence of alter ego liability." *Jack Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1033. In *Farenbaugh*, the appellate court upheld the lower court's finding of alter ego liability, as defendant and appellant caused Belmont to go out of business, disbursed all of its monies, and left it as a hollow shell without means to satisfy its existing and potential creditors. *Id.* at 1034. Similarly, here, the supporting declaration contains sufficient evidence from which to conclude that there is alter ego liability

49.   At a minimum, the actions by LBHI in regard to the Moore Action require a complete and thorough investigation before Moore's claim can be disallowed.

*LBHI is the Alter Ego of LB DeSilva for Purposes of Amending the Judgment*

50.   If it deems such action necessary, this Court should permit Moore to obtain amendment of the judgment to add LBHI as a judgment debtor, as Moore was unable to do so back in 2008 when LBHI declared bankruptcy.

51.   Code of Civil Procedure Section 473(a1) provides that the court "may, in furtherance of justice, and on such terms as may be proper, allow a party to amend any pleading ...." C.C.P. § 473(a1). California has a strong policy in favor of allowing amendments and it is error to refuse permission to amend when a motion is timely made, there is no prejudice to the opposing party and refusal to amend would deprive plaintiff of a right to assert a meritorious cause of action. *Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530.

52.   In the context of alter ego amendments, a new party can even be added after judgment when that party controlled the underlying litigation. It is now settled that "... the authority of the court will be exercised to impose liability under a judgment upon the *alter ego* who has had control of the litigation." *Schoenberg v. Romike Properties* (1967) 251 Cal.App.2d 154, 168; *Alexander v. Abbey of the Chimes* (1980) 104 Cal.App.3d 39. The

theory is that a new defendant is not really being added, only the name of the true defendant is being inserted. *Motores de Mexecali, S.A. v. Superior Court* (1958) 51 Cal.2d 172.

53. "[A] court may, on hearing of a motion to amend judgment, admit extrinsic evidence, on proper notice to the adversary party, to make the judgment speak the truth. *Jack Farenbaugh & Son v. Belmont Construction, Inc.* (1987) 194 Cal.App.3d 1023, 1029 citing *Thomson v. L.C. Roney & Co.* (1952) 112 Cal.App.2d 420, 427. In *Farenbaugh,* the appellate court upheld the lower court's ruling to amend the judgment adding Belmont as the judgment debtor. Belmont was found to control the litigation based upon the declaration of counsel for plaintiff and respondent and the personal observations of the trial judge.

## CONCLUSION

54. WHEREFORE, Moore respectfully requests that the Debtor's objection to its claim be overruled, and that Claim 3001 be allowed in full and grant such other and further relief as this Court deem just and proper under the circumstances.

DATED: April 12, 2011

SCHWARTZ & CERA LLP

By: *[signature: Douglas R. Schwartz]*

Douglas R. Schwartz
Schwartz & Cera LLP
44 Montgomery Street, Suite 3850
San Francisco, CA 94104
Telephone: (415) 956-2600
Facsimile: (415 438-2655