HEARING DATE AND TIME: JUNE 2, 2011 AT 10:00 A.M. (Eastern Time)
RESPONSE DEADLINE: MAY 18, 2011 AT 4:00 P.M. (Eastern Time)

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
*Counsel for the Official Committee of Unsecured Creditors*
*of Lehman Brothers Holdings Inc.*

**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.,<br><br>      Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |

## NOTICE OF HEARING ON OBJECTION TO PROOF OF CLAIM NO. 66462 OF JPMORGAN CHASE BANK, N.A. TO THE EXTENT IT ASSERTS CLAIMS ACQUIRED FROM WASHINGTON MUTUAL BANK, FA POST-PETITION ARE SECURED (MISCLASSIFIED CLAIM)

PLEASE TAKE NOTICE that a hearing on the annexed objection, dated April 15,

2011 (the "Objection") filed by Lehman Brothers Holdings Inc. and its affiliated debtors in the

above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors")

and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors,

the "Objectors"), to a portion of Proof of Claim No. 66462 shall be held before the Honorable James

M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander

Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York 10004 (the

"Bankruptcy Court"), on **June 2, 2011 at 10:00 a.m. (Eastern Time)** or as soon thereafter as counsel

may be heard (the "Hearing").

        **PLEASE TAKE FURTHER NOTICE** that responses, if any, to the Objection must

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the

Bankruptcy Court for the Southern District of New York, shall set forth the name of the responding

party, the basis for the response and the specific grounds thereof, and shall be filed with the

Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all

other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with a hard copy delivered

directly to Chambers), in accordance with General Order M-182 (which can be found at

www.nysb.uscourts.gov), and served in accordance with General Order M-399, and on (i) the

Chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New

York, New York 10153 (Attn: Lori Fife, Esq.); (iii) conflicts counsel for the Debtors, Curtis, Mallet-

Prevost, Colt & Mosle LLP, 101 Park Avenue, New York, New York 10178-0061 (Attn: Joseph D.

Pizzurro, Esq. and L.P. Harrison 3rd, Esq.); (iv) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn:

Elisabeth Gasparini, Esq. and Andrea Schwartz, Esq.); (v) attorneys for the Official Committee of

Unsecured Creditors appointed in these cases, Milbank, Tweed, Hadley & McCloy LLP, 1 Chase

Manhattan Plaza, New York, New York 10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell,

Esq. and Evan Fleck, Esq.); and (vi) special counsel to the Committee, Quinn Emanuel Urquhart &

Sullivan, LLP, 865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 (Attn:

John B. Quinn, Esq. and Erica Taggart, Esq.) so as to be filed and received by no later than **May 18,**

**2011 at 4:00 p.m. (Eastern Time)** (the "Response Deadline").

   **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Objection or any claim set forth thereon, the Objectors may, on or after the

Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the

proposed order annexed to the Objection, which order may be entered with no further notice or

opportunity to be heard offered to any party.


    *[Remainder of Page Intentionally Left Blank]*

**PLEASE TAKE FURTHER NOTICE** that responding parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated:  April 15, 2011
New York, New York

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: /s/  John B. Quinn

John B. Quinn
Erica Taggart
Matthew Scheck
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
(213) 443-3000

Susheel Kirpalani
Andrew J. Rossman
James Tecce
51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
(212) 849-7000
*Counsel for Intervenor, the Official Committee
of Unsecured Creditors of Lehman Brothers
Holdings Inc.*

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: /s/  Joseph D. Pizzurro

Joseph D. Pizzurro
L.P. Harrison 3rd
Michael J. Moscato
Nancy E. Delaney
Peter J. Behmke
Cindi Eilbott Giglio
101 Park Avenue
New York, New York 10178-0061
(212) 696-6000
*Counsel for Debtors and Debtors-in-
Possession*

**QUINN EMANUEL**
**URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000

51 Madison Avenue, 22nd Floor
New York, New York 10010-1601
Telephone: (212) 849-7000
*Counsel for the Official Committee of Unsecured*
*Creditors of Lehman Brothers Holdings Inc.*

**CURTIS, MALLET-PREVOST,**
**COLT & MOSLE LLP**
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
*Counsel for Debtors and Debtors-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.,<br><br>       Debtors. | Chapter 11<br>Case No. 08-13555 (JMP) |

**OBJECTION TO PROOF OF CLAIM NO. 66462 OF JPMORGAN CHASE BANK, N.A.**
**TO THE EXTENT IT ASSERTS CLAIMS ACQUIRED FROM WASHINGTON**
**MUTUAL BANK, FA POST-PETITION ARE SECURED (MISCLASSIFIED CLAIM)**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

       Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors, in the above-

referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") and the

Official Committee of Unsecured Creditors (the "<u>Committee</u>" and, together with LBHI, the "<u>Objectors</u>"), respectfully represent as follows:

<b><u>Preliminary Statement</u></b>

Through this Objection, the Objectors seek a ruling that certain derivatives related claims that JPMorgan Chase Bank, N.A. ("<u>JPMorgan</u>") acquired after LBHI's petition date are: (i) not covered by the guaranty JPMorgan extracted from LBHI in the days before its bankruptcy, regardless of the enforceability or scope of that guaranty; and (ii) not secured by the related security agreement.

Shortly after LBHI filed for bankruptcy in September 2008, JPMorgan acquired the assets of Washington Mutual Bank, FA ("<u>WaMu</u>"). These assets included certain swap agreements between WaMu and Lehman Brothers Special Financing Inc. ("<u>LBSF</u>"), a debtor subsidiary of LBHI, including an ISDA Master Agreement and ISDA Guaranty (each as defined below and, together, the "<u>WaMu Agreements</u>"). Although the WaMu Agreements included a guaranty by LBHI in favor of WaMu, that guaranty was unsecured. After the WaMu Agreements were terminated, JPMorgan satisfied $143,221,880 of its total acquired claim by applying the cash that LBSF posted under the WaMu Agreements. After exhausting LBSF's posted cash, JPMorgan then applied $80,313,435 of LBHI's cash to fully satisfy JPMorgan's alleged claims relating to the WaMu Agreements.

JPMorgan then filed claims against LBSF (the "<u>LBSF WaMu Claim</u>") and LBHI (the "<u>WaMu Claim</u>") based on the WaMu Agreements. In its proofs of claim, JPMorgan contended that it was entitled to apply LBHI's cash to the claims on the basis of a guaranty and related security agreement LBHI had executed in favor of JPMorgan less than a week before LBHI's bankruptcy. In particular, on the night of September 9, 2008, JPMorgan had demanded that LBHI execute a guaranty (the "<u>September Guaranty</u>") obligating LBHI to pay for all liabilities of any kind of all of LBHI's subsidiaries to JPMorgan or any of its affiliates. JPMorgan also required that LBHI execute a Security Agreement (the "<u>September Security Agreement</u>" and, together with the September Guaranty, the "<u>September Agreements</u>") purporting to give JPMorgan a lien over all LBHI deposits

2

at the bank to secure the September Guaranty. JPMorgan also demanded that LBHI deliver billions of dollars to support the September Guaranty. Faced with the prospect that JPMorgan would stop performing clearing functions for Lehman Brothers Inc. ("LBI") if LBHI refused JPMorgan's demands, LBHI executed the September Agreements and delivered to JPMorgan $8.6 billion in cash and money market funds, in addition to billions of dollars of securities.

As the Court is well aware, LBHI and the Committee have filed an adversary proceeding challenging the validity of the September Agreements and JPMorgan's related siphoning of LBHI's last liquidity on a number of grounds, including that they are invalid and/or avoidable as fraudulent conveyances obtained through coercion and duress (the "Adversary Proceeding"). Objectors do not intend to litigate those issues in this Objection. Rather, Objectors bring this Objection because, regardless of the validity of the September Agreements, they do not cover the WaMu Claim and cannot be used to transform it into a secured claim. It is well settled that the status and priority of a creditor's claims are fixed as of the petition date. Creditors may not be assigned rights after a bankruptcy petition to gain the benefit of a prepetition security agreement, and thus secure what was unsecured on the petition date. Here, it is undisputed that neither JPMorgan nor any of its affiliates were parties to the WaMu Agreements prior to LBHI's petition date. Whatever the validity and scope of the September Agreements, they did not cover the WaMu Claim as of the time of LBHI's bankruptcy petition, and JPMorgan's acquisition of the WaMu Claim after the petition date cannot change the priority of the claim. Thus, because the WaMu Claim does not fall within the September Agreements at the time of LBHI's petition, it is not secured by the September Agreements or LBHI's cash supporting them. JPMorgan's use of LBHI's cash to satisfy the WaMu Claim that it acquired after LBHI's bankruptcy speaks volumes about JPMorgan's intentions in the week before LBHI's bankruptcy. After all, JPMorgan extracted LBHI's last $8.6 billion as an "extra cushion" in order to leapfrog ahead of other creditors in the event of an LBHI bankruptcy filing. JPMorgan then used that cash to fully satisfy itself, ahead of all other creditors, for every conceivable claim, including those it

3

did not even own at the time LBHI filed for bankruptcy. It is difficult to imagine a more clear violation of the principle of equitable distribution to creditors that forms the foundation of bankruptcy law.

### Relief Requested

1.      Objectors file this Objection to the portion of Proof of Claim No. 66462 described therein as arising from the purported application of LBHI's September Guaranty and September Security Agreement to the claims arising from the WaMu Agreements pursuant to section 502(b) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and this Court's Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) for Approval of Claim Objections Procedure (the "Procedures Order") [Docket No. 6664], seeking the reclassification of the WaMu Claim and related relief described further herein.[1]

2.      In the WaMu Claim, JPMorgan explains "$80,313,435 [of the total WaMu Claim] was paid by application of cash posted by LBHI under the Second LBHI Guaranty and Second LBHI Security Agreement." *See* Ex. B, Proof of Claim No. 66462, asserted by JPMorgan Chase Bank, N.A. against LBHI, dated April 1, 2010, at 15. Whether the WaMu Claim asserted against LBHI is secured thus depends on whether the claim was covered by the "Second LBHI Guaranty and Second LBHI Security Agreement" (the September Agreements) at the relevant time for determining the priority and status of claims under the Bankruptcy Code, which is LBHI's petition date.

3.      Objectors have examined the WaMu Claim and have determined that to the extent JPMorgan asserts that the WaMu Claim is secured by LBHI cash pursuant to the September Agreements or subject to set-off against LBHI obligations, it should be reclassified as a general, unsecured non-priority claim.

---

[1]  A copy of Proof of Claim No. 66462 is attached hereto as Exhibit B.

4.      Objectors therefore request entry of an order reclassifying the WaMu Claim as a general unsecured claim and disallowing JPMorgan's use of LBHI's cash that purportedly secures the September Guaranty to satisfy such claim.  Objectors reserve their right to object to the WaMu Claim on all other grounds.

### Jurisdiction

5.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).

### Background

6.      Commencing on September 15, 2008, and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the Committee.

8.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as Examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the Examiner.

9.      On July 2, 2009, this Court entered an order setting forth the procedures and deadlines for filing proofs of claim in these chapter 11 cases (the "Bar Date Order") [Docket No. 4271].  A copy of the Bar Date Order was made publicly available at http://www.lehman-docket.com.

10.    Claimants received notice of the Bar Date Order by mail.  (*See* Notice of Deadlines for Filing Proofs of Claim (the "Bar Date Notice").  The Bar Date Notice also was posted on the docket, and the Bar Date Order was published in The New York Times (International Edition), The Wall Street Journal (International Edition) and The Financial Times.  A list of the Debtors in these chapter 11 cases and their respective case numbers was included as part of the Bar Date Notice as well as on the instructions to the proof of claim form.  (Bar Date Notice at Schedule A.)  In accordance with the Bar Date Order's requirement that claims be filed against the proper Debtor, the Bar Date Notice stated, in bold-face type and in capital letters, that "YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS."  (*Id.* at 3.)

11.    On January 14, 2010, this Court entered the Procedures Order, which authorizes the Debtors, among other things, to file omnibus objections to no more than 500 claims at a time, on various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order.

## I.    AFTER EIGHT YEARS AS LBI'S CLEARING BANK, JPMORGAN REQUIRES LBHI TO GUARANTY LBI'S CLEARING OBLIGATIONS AND TRANSFER BILLIONS OF DOLLARS OF CASH

12.    From June 2000 until September 2008, JPMorgan served as LBI's primary clearing bank for broker-dealer activities.  In that role, JPMorgan agreed to receive and transfer securities on behalf of LBI, including as a pledge of collateral, to make payment and collections of monies, and permit transfers between accounts to facilitate clearing services.  JPMorgan also acted as LBI's custodial bank/clearing agent for purposes of LBI's tri-party repurchase agreements.

13.    LBI designated JPMorgan as its clearing bank through a Clearance Agreement entered into on June 15, 2000 (the "2000 Clearance Agreement") between LBI and The Chase Manhattan Bank, JPMorgan's predecessor-in-interest.  In the 2000 Clearance Agreement, JPMorgan agreed to act as LBI's "non-exclusive clearance agent for securities transactions," as well as LBI's

"non-exclusive custodian with respect to [LBI's] tri-party custody transactions." LBHI was not a party to the 2000 Clearance Agreement.

14. Beginning in the Spring of 2008, JPMorgan began to require additional collateral from LBI to keep clearing trades. In approximately May 2008, JPMorgan required approximately $5 billion of additional collateral. Around the beginning of August 2008, JPMorgan requested yet more collateral from LBI as well as LBHI.

15. In August 2008, less than a month before LBHI's bankruptcy filing, JPMorgan presented LBHI with a set of documents, including an amendment to the 2000 Clearance Agreement, a guaranty (the "August Guaranty") and a security agreement (the "August Security Agreement" and, collectively, the "August Agreements"). In the August Guaranty, LBHI guaranteed the obligations of its subsidiaries – primarily LBI – "pursuant to the Clearance Agreement, dated as of June 15, 2000, to which one or more of [LBHI's subsidiaries] and [JPMorgan] are parties . . . ." The August Guaranty was thus limited to liabilities arising from JPMorgan's clearance and tri-party repo functions. The August Security Agreement secured LBHI's obligations under the August Guaranty. *See* August Security Agreement, at 1-2 (defining "Liabilities" as, in pertinent part, "all 'Liabilities' as defined in the [August] Guaranty" and providing that LBHI "grant(s) to the Bank a security interest in, and a general lien upon and/or right of set-off of, the Security").

## II. THE WEEK BEFORE LBHI'S BANKRUPTCY, JPMORGAN DEMANDS THAT LBHI GUARANTY ALL OBLIGATIONS OF ITS SUBSIDIARIES AND PROVIDE BILLIONS OF DOLLARS OF ADDITIONAL CASH

16. Two weeks later, just as LBHI was about to announce its third-quarter earnings report, JPMorgan demanded that LBHI execute the September Agreements. JPMorgan sent LBHI the September Agreements at 8:50 p.m. on the night of September 9 and demanded that LBHI execute them before the earnings call at 7:30 a.m. the following morning.

17.    The September Agreements purported to cover far more than potential clearance-related liabilities. Whereas the August Guaranty covered only LBHI's subsidiaries' obligations under the 2000 Clearance Agreement, the September Guaranty covered "all obligations and liabilities of [all of LBHI's direct and indirect subsidiaries] to the Bank of whatever nature" with no limitation to any particular agreement or type of transaction.

18.    The same day LBHI executed the September Agreements, JPMorgan demanded another $5 billion in cash. Over the next two days, LBHI deposited $3.6 billion in cash and cash equivalents. On September 11, 2008, JPMorgan demanded yet another $5 billion in cash, coupled with an explicit, written threat to stop clearing trades for LBI if the funds were not received by the start of business the following morning, Friday, September 12. LBHI transferred the $5 billion in cash to JPMorgan, as demanded. The next business day, lacking sufficient liquidity to do business, LBHI filed for bankruptcy.

## III.    AFTER LBHI'S BANKRUPTCY PETITION, JPMORGAN ACQUIRES ASSETS OF WAMU, INCLUDING CERTAIN SWAP AGREEMENTS WHOSE UNDERLYING TRANSACTIONS HAD ALREADY BEEN TERMINATED

19.    On September 25, 2008, the director of the Office of Thrift Supervision placed WaMu into receivership and appointed the Federal Deposit Insurance Corporation (the "FDIC") as receiver. *See* FDIC Press Release, dated September 25, 2008. That day, the FDIC sold substantially all of the assets of WaMu to JPMorgan for $1.9 billion through a purchase and assumption agreement.

20.    As part of its acquisition, JPMorgan was assigned WaMu's rights under certain Qualified Financial Contracts (as defined in 12 U.S.C. § 1821(e)(8)(D)), including derivatives and other swap agreements. *See* Purchase and Assumption Agreement, among FDIC as receiver of Washington Mutual Bank, FDIC, and JPMorgan Chase Bank, National Association, dated September

25, 2008, at Art. III, §§ 3.1, 3.2(c). JPMorgan has since asserted that it became assignee of WaMu's rights under the purchased derivatives contracts. *See* Ex. B, Proof of Claim No. 66462 at 14.

21.    One such derivatives contract is an ISDA Master Agreement between LBSF and WaMu, dated May 28, 1998, JPM-LBHI 00334507-552 (the "ISDA Master Agreement"),[2] which LBHI purportedly had guaranteed pursuant to a guaranty agreement in favor of WaMu (the "ISDA Guaranty").[3]

22.    At the time JPMorgan acquired WaMu's assets, WaMu had already terminated all transactions under the ISDA Master Agreement by delivering to LBSF a Notice of Event of Default, dated September 15, 2008 (the "Default Notice"), designating "September 15, 2008 as the Early Termination Date in respect of all outstanding Transactions" pursuant to the ISDA Master Agreement. *See* Default Notice at 1.[4]

23.    As of September 15, 2008, JPMorgan was not a party to the ISDA Master Agreement or a beneficiary of the ISDA Guaranty, and did not have any contractual or statutory rights with respect to either of these agreements, not even contingent rights.

## IV.    AFTER ACQUIRING WAMU'S ASSETS POST-PETITION, JPMORGAN ASSERTS THAT THE WAMU CLAIM IS SECURED BY CASH POSTED PURSUANT TO LBHI'S PREPETITION GUARANTY

24.    In mid-October, one month after LBHI's bankruptcy petition and WaMu's Default Notice, and three weeks after JPMorgan acquired substantially all of the assets of WaMu, JPMorgan sent LBSF a calculation statement which, for the first time, claimed rights under the September Guaranty and September Security Agreement (the "Calculation Statement").

---

[2]  A copy of the ISDA Master Agreement is attached hereto as Exhibit C.

[3]  A copy of the ISDA Guaranty is attached hereto as Exhibit D.

[4]  A copy of the Default Notice is attached hereto as Exhibit E.

25.     In the Calculation Statement, JPMorgan explained that it had purchased all of WaMu's assets including WaMu's derivative contracts with LBSF. *See* Calculation Statement, dated October 17, 2008, JPM-2004 0000121-122 (asserting that "all Qualified Financial Contracts . . . to which [WaMu] was a party, including the [ISDA Master Agreement], were transferred to JPMorgan").[5] JPMorgan further explained that it had set-off $143,221,880 purportedly owed by LBSF under the ISDA Master Agreement against cash posted by LBSF to WaMu prior to termination of the derivatives contracts. Ex. F, Calculation Statement at 0000121.

26.     Additionally, JPMorgan reserved its "rights and remedies under guaranties of Lehman Brothers Holdings Inc. and related security agreements with respect to any amount paid or otherwise transferred to or for the benefit of JPMorgan in connection with the [ISDA Master Agreement] . . . ." Ex. F, Calculation Statement at JPM-2004 0000122.

27.     Seven days later, on October 24, 2008, JPMorgan wrote to LBHI requesting immediate payment of $80,313,435 arising from the claim under the derivative contract it purchased from WaMu after the petition date (among other payments unrelated to this Objection). *See* Demand for Payment under Guaranty, dated October 24, 2008, from JPMorgan Chase & Co. to Lehman Brothers Holdings Inc., JPM-2004 0000001-003 (the "Guaranty Demand").[6] JPMorgan explained that it was relying on the September Agreements to secure that claim:

> We refer to (i) that certain Guaranty dated as of September 9, 2008 made by Lehman Brothers Holdings Inc. in favor of JPMorgan Chase Bank, N.A. and its affiliates, subsidiaries, successors and assigns (the "Guaranty") and (ii) the Security Agreement relating to the Guaranty entered into between Lehman Brothers Holdings Inc. and JPMorgan Chase Bank, N.A. dated as of September 9, 2008.

Ex. G, Guaranty Demand, at JPM-2004 0000001.

---

[5]   A copy of the Calculation Statement is attached hereto as Exhibit F.

[6]   A copy of the Guaranty Demand is attached hereto as Exhibit G.

28.    JPMorgan also reserved its right "to realize on collateral posted by the Guarantor to secure its obligations under the Guaranty." Ex. G, Guaranty Demand, at JPM-2004 0000001-2.

29.    On October 28, 2008, JPMorgan delivered to LBHI a notice that JPMorgan had "exercised its right to pay the JPMorgan Receivable [including the $80,313,435 from the WaMu Claim] in full by means of set-off and application of cash which had been posted as Security contemporaneously with the execution and delivery of the [September] Security Agreement." Notice of Enforcement of Security in respect of Guaranty, dated October 28, 2008, from JPMorgan Chase & Co. to Lehman Brothers Holdings Inc., JPM-2004 0000009-010 (the "Notice of Enforcement").[7] Again, as noted above, JPMorgan relied on the September Agreements LBHI had executed on September 9, 2008 as the basis for setting off the WaMu Claim against LBHI cash.  *See* Ex. H, Notice of Enforcement, at JPM-2004 0000009; *see also* Ex. B, Proof of Claim No. 66462 at 15, n.8 (and accompanying text).

## V.    JPMORGAN FILES PROOFS OF CLAIMS AGAINST LBSF, AS WELL AS AGAINST LBHI UNDER THE SEPTEMBER AGREEMENTS

30.    After (i) setting-off the LBSF WaMu Claim against cash posted by LBSF under the ISDA Master Agreement and (ii) setting-off the remaining WaMu Claim against LBHI cash posted pursuant to the September Agreements, JPMorgan filed proofs of claim against LBSF and LBHI. *See* Proof of Claim No. 66455, asserted by JPMorgan Chase Bank N.A. against LBSF, filed April 1, 2010 at 14-15; Ex. B, Proof of Claim No. 66462 at 14-15.[8]

---

[7]    A copy of the Notice of Enforcement is attached hereto as Exhibit H.

[8]    In the Adversary Proceeding, LBHI and the Committee, as Plaintiffs, assert that JPMorgan violated the automatic stay in applying property of LBHI's estate to satisfy "obligations allegedly owed to JPMorgan and related parties under certain derivatives contracts." *See* First Amended Complaint, Adv. Pro. No. 10-03266, at ¶¶ 266-272. Additionally, Plaintiffs have objected to JPMorgan's claims (and liens) against LBHI (including the WaMu Claim) pursuant to sections 502(d) and 506(d) of the Bankruptcy Code until JPMorgan returns the aforementioned property to LBHI. *Id.* at ¶¶ 255-258. The Objectors expressly reserve their rights with respect to these issues.

11

31.    Both of the proofs of claim, asserting the LBSF WaMu Claim and the WaMu Claim,

explain the basis for JPMorgan's set-off as follows:

> *WMB/LBSF Agreement.* As of the date hereof, the Claims under the
> ISDA Master Agreement dated as of May 28, 1998 (as amending and
> including all annexes thereto, the "WMB/LBSF Agreement") between
> Washington Mutual Bank (f/k/a Washington Mutual Bank, FA)
> ("WMB") and LBSF have been paid. As set forth in the Calculation
> Statement dated as of October 17, 2008 from JPMCB, as assignee of
> WMB, to LBSF (including all accompanying appendices, attachments
> and media containing related detail, the "WMB/LBSF Calculation
> Statement"), JPMCB was owed by LBSF with respect to swap
> agreements under the WMB/LBSF Agreement (a) $222,326,721,
> which was the Settlement Amount (as defined in the WMB/LBSF
> Agreement), *plus* (b) $1,208,594, which were the Unpaid Amounts
> (as defined in the WMB/LBSF Agreement), all as described in further
> detail in the WMB/LBSF Calculation Statement.
>
> The Claims under the WMB/LBSF Agreement were paid as follows,
> all as further described in the WMB LBSF Calculation Statement and
> in accordance with contractual rights contained in the WMB/LBSF
> Agreement and the other Agreements referred to in this Annex:
>
> (i) $143,221,880 was paid by application of Posted Collateral (as
> defined in the WMB/LBSF Agreement) held by JPMCB; and
>
> (ii) $80,313,435 was paid by application of cash collateral posted by
> LBHI under the Second LBHI Guaranty and Second LBHI Security
> Agreement.[9]

Ex. B, Proof of Claim No. 66462, at 14-15 and n.8; Proof of Claim No. 66455, at 14-15 and n.8

(footnote in original and internal citations omitted).

## Objection

32.    In their review of the claims filed on the claims register in these chapter 11 cases and

maintained by the Court-appointed claims agent, the Objectors have identified the WaMu Claim as a

claim that should be reclassified as a general, unsecured non-priority claim against LBHI.

---

[9]   "As described in Demand for Payment under Guaranty dated October 24, 2008 from JPMCB to LBHI and Notice of
Enforcement of Security in respect of Guaranty dated October 28, 2008 from JPMCB to LBHI." (footnote in original).

## I.   CREDITORS' RIGHTS WITH RESPECT TO A
##       DEBTOR ARE FIXED AS OF THE PETITION DATE

33.    A claim arises when "the relationship between the debtor and the creditor contained

all of the elements necessary to give rise to a legal obligation . . . under the relevant non-bankruptcy

law." *Goldman Sachs & Co. v. Esso Virgin Islands, Inc. (In re Duplan Corp.)*, 212 F.3d 144, 151 (2d

Cir. 2000) (internal quotations omitted); *see also LTV Steel Co., Inc. v. Shalala (In re Chateaugay

Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995) ("A claim exists only if before the filing of the bankruptcy

petition, the relationship between the debtor and the creditor contained all of the elements necessary

to give rise to a legal obligation-'a right to payment'-under the relevant non-bankruptcy law.")

(internal quotations omitted).

34.    It is well settled that the rights of creditors are fixed as of the petition date. *See

Sexton v. Dreyfus*, 219 U.S. 339, 344-45 (1911) ("For more than a century and a half the theory of the

English bankruptcy system has been that everything stops at a certain date."); *In re Aaura*, No. 06 B

01853, 2006 Bankr. Lexis 2011, at *14-15 (Bankr. N.D. Ill. Sept. 1, 2006) (". . . American

bankruptcy law ha[s] adopted the 'English rule' that claims in bankruptcy are 'fixe[d] the

moment . . . the petition is filed.'") (quoting *Sexton*, 219 U.S. at 344).

35.    The Supreme Court and the Second Circuit have held that this principle applies to fix

the priority of a claim as of the petition date. *See United States v. Marxen*, 307 U.S. 200, 208 (1939)

(holding that the statutory priority was "inapplicable to general claims in bankruptcy transferred to

the United States, or to which it has become subrogated on payment, after the filing of the petition

for the reason that the rights of creditors are fixed by the Bankruptcy Act as of the filing of the

petition in bankruptcy"); *United States v. Burke (In re Miller)*, 105 F.2d 927, 928 (2d Cir. 1939)

(holding, in a case also involving the post-petition assignment of a claim to the United States

government, that "the obligation owed by the debtor on his note is a simple debt to the bank while

held by the latter and . . . its status cannot be changed by assignment after the debtor has been adjudicated bankrupt").[10]

36.    Notably, this rule has been applied to prevent creditors from turning general unsecured claims into secured ones through post-petition assignment. *Republic National Bank of Dallas v. Fitzgerald (In re E.A. Fretz Company, Inc.)*, 565 F.2d 366, 374 (5th Cir. 1978).  In *Fretz*, the Court of Appeals for the Fifth Circuit considered a creditor's attempt to apply an umbrella guaranty and security arrangement to a claim acquired post-petition.  The Fifth Circuit cautioned that "[i]f a senior secured party to a security agreement could, via post-bankruptcy assignment, secure and perfect under the umbrella of prior omnibus arrangements the claims of subsidiaries and strangers (general or unperfected secured creditors), the potential for inequality, and, indeed collusion or fraud, would be enormous." *Id.* at 374.  Thus, the court held that because "[p]riority in bankruptcy is determined as of the date of bankruptcy . . . [t]he intervention of the debtor's bankruptcy before the assignment truncated any possible transformation of unperfected unsecured interests into perfected secured interests." *Id.*

37.    This principle comports with the general rule that an assignee receives only those rights that the assignor possessed. *See O'Brien v. Argo Partners, Inc.*, 736 F. Supp. 2d 528, 535 (E.D.N.Y. 2010) ("[I]t is clear that an assignee stands in the shoes of the assignor. He takes all rights of the assignor, no greater and no less, receiving the same legal rights and subject to the same equities and burdens."); *Blue Planet Software, Inc. v. Games Int'l, LLC*, 334 F. Supp. 2d 425, 433 (S.D.N.Y. 2004) ("An assignee generally may not acquire more rights than were possessed by the assignor and simply stands in the shoes of the assignor.") (citing *Furlong v. Shalala*, 156 F.3d 384,

---

[10]  *See also In re Miller*, 25 F. Supp. 336, 337 (S.D.N.Y. 1938), *aff'd*, 105 F.2d 926 (2d Cir. 1939) ("If the claim was one not entitled to priority at that time, a later event will not confer priority.") (*citing In re C. H. Earle, Inc.*, 2 F. Supp. 15 (E.D.N.Y. 1932), *aff'd*, 65 F.2d 1013 (2d Cir. 1933), *cert. denied, Globe Indemnity Co. v. C. H. Earle, Inc.*, 290 U.S. 674 (1933); *In re Gasteiger & Co.*, 25 F.2d 642 (2d Cir. 1928); *In re Photo Electrotype Engraving Co.*, 155 F. 684 (2d Cir. 1907)).

392 (2d Cir. 1998)). This principle is equally applicable in the assignment of claims in bankruptcy cases. *See, e.g., In re Snyder*, 436 B.R. 81, 90 (Bankr. C.D. Ill. 2010) ("As a general rule, the purchaser of a claim against a debtor in bankruptcy steps into the shoes of the claim seller, enjoying the same benefits, but suffering the same limitations of the claim, as a successor in interest to the seller's position."); *In re NationsRent, Inc.*, 381 B.R. 83, 95 (Bankr. D. Del. 2008) ("The Assignee Claimant, is not entitled to more than the rights Lenders had to assign. What Lenders owned and assigned were non-priority, general unsecured claims, and the Assigned Claims are entitled to their pro rata share of the Distribution to other general, unsecured creditors.") (citing 6A C.J.S. Assignments § 110 (2007)).

## II.    JPMORGAN'S POST-PETITION ACQUISITION OF WAMU'S GENERAL UNSECURED CLAIM CANNOT TURN IT INTO A SECURED CLAIM

38.    Assuming that WaMu had a valid claim against LBHI as of LBHI's petition date, it was an unsecured claim. The ISDA Guaranty from LBHI in favor of WaMu was unsecured. LBHI had not posted cash as security for that guaranty, and WaMu had no lien over LBHI property to satisfy the claim. This was true as of the time of LBHI's bankruptcy petition, when WaMu (not JPMorgan) had a contingent claim under the ISDA Guaranty, and at the time WaMu terminated the ISDA Agreement.

39.    Moreover, as of LBHI's petition date, WaMu did not have any claim under the September Agreements against LBHI. The September Agreements were in favor of JPMorgan and its affiliates, subsidiaries, successors and assigns. *See* September Guaranty at 1 (providing that the agreement is a "Guaranty dated as of September 9, 2008 made by the undersigned [LBHI] in favor of JPMorgan Chase Bank, N.A. and its affiliates, subsidiaries, successors and assigns") . . . ." (emphasis added);[11] September Security Agreement at 2 (defining the term "Bank" as "JPMorgan

---

[11]    A copy of the September Guaranty is attached hereto as Exhibit I.

15

Chase Bank, N.A. or any of its affiliates, subsidiaries, successors and assigns" and providing that LBHI "grant(s) to the Bank a security interest in, and a general lien upon and/or right of set-off of, the Security."[12] WaMu, whose assets were acquired by JPMorgan on September 26, 2008, eleven days after LBHI's petition date, was not an affiliate, subsidiary, successor or assign of JPMorgan as of LBHI's petition date so as to bring WaMu within the coverage of the September Agreements.

40.    In contrast to WaMu, JPMorgan was a party to the September Agreements on LBHI's petition date, but did not have any claim against LBHI relating to WaMu's ISDA Master Agreement or the ISDA Guaranty. JPMorgan was not a party to either of those agreements as of that date. *See* Ex. C, ISDA Master Agreement at JPM-LBHI -00334507 (providing that the parties to the agreement are LBSF and WaMu); Ex. D, ISDA Guaranty at 1 (providing an unconditional guaranty in favor of Party B (defined therein as WaMu)).

41.    Therefore, JPMorgan seeks to use a post-petition assignment to change the priority of the claims assigned to it by WaMu and render the claim secured by virtue of that assignment. But JPMorgan "may not acquire more rights than were possessed by" WaMu. Rather, JPMorgan is only entitled to whatever rights WaMu had with respect to the WaMu Claim as of the petition date which, as against LBHI, was a general unsecured claim.[13]

42.    This result fits not only with settled bankruptcy law, but also fundamental fairness. To hold otherwise would allow parties with blanket guaranties and security agreements to acquire unsecured claims post-petition and transform them into secured claims. JPMorgan's conduct with respect to the WaMu Claim is a paradigmatic example of a creditor grossly overreaching to apply wrongfully obtained funds to satisfy an otherwise unsecured claim acquired post-petition, a result expressly prohibited by law. A "prime objective of any scheme for dealing with financially

---

[12]    A copy of the September Security Agreement is attached hereto as Exhibit J.

[13]    The LBSF WaMu Claim was secured by cash posted by LBSF pursuant to the ISDA Master Agreement. The application of that posted cash is not the subject of this Objection.

embarrassed estates or persons is equitable distribution of assets to creditors." *Fretz*, 565 F.2d at 374. If parties, such as JPMorgan here, were permitted to manipulate the priorities of creditors through post-petition assignments, "the policies of the Bankruptcy [Code] would be greatly disserved." *Id.* at 374.

## III.    JPMORGAN CANNOT USE SET-OFF TO SATISFY THE WAMU CLAIM WITH LBHI FUNDS

43.    Objectors also object to the WaMu Claim to the extent that JPMorgan asserts that it has general rights of set-off with respect to the WaMu Claim. *See, e.g.*, Ex. H, Notice of Enforcement JPM-2004 0000009 (providing that JPMorgan "has exercised its right to pay the JPMorgan Receivable in full by means of set-off and application of cash which had been posted as Security contemporaneously with the execution and delivery of the Security Agreement"); *see also* Ex. B, Proof of Claim No. 66462 at 15 ("$80,313,435 was paid by application of cash collateral posted by LBHI under the Second LBHI Guaranty and Second LBHI Security Agreement").

44.    Set-off "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding the absurdity of making A pay B when B owes A." *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995) (internal quotations omitted). The Bankruptcy Code does not create rights to set-off, it "preserves for the creditor's benefit any set-off rights that it may have under applicable non-bankruptcy law and imposes additional restrictions on a creditor seeking set-off that must be met to impose a set-off against a debtor in bankruptcy." *In re Semcrude, L.P.*, 399 B.R. 388, 393 (Bankr. D. Del. 2009) (internal quotations omitted).

45.    One such limitation is that the Bankruptcy Code precludes set-off against a debtor "to the extent that . . . such claim was transferred, by an entity other than the debtor, to such creditor *after the commencement of the case . . . .*" 11 U.S.C. § 553(a)(2)(A) (emphasis added). The specific purpose of section 553(a)(2) is to prevent "trafficking in claims against the debtor in order to effect setoff (which would provide a windfall to the parties of the transfer at the expense of the estate)."

17

*Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 779 (Bankr. S.D.N.Y. 1988). *See also* LAWRENCE P. KING, COLLIER ON BANKRUPTCY ¶ 553.03[5] (16th ed. Rev. 2009) ("[w]ithout the restrictions contained in section 553(a)(2)(A), [a creditor] that owed a debt to a debtor . . . might simply purchase one or more claims against the debtor after the debtor files for bankruptcy relief (often at a very favorable price) in order to acquire a 'claim' for the purpose of escaping the debt by offsetting the acquired 'claim' against the preexisting 'debt'").

46.    Here, the WaMu Claim was transferred by an entity that is not a debtor in these chapter 11 cases to JPMorgan. In addition, the transfer occurred on September 26, 2008, eleven days after LBHI's petition date. Therefore, JPMorgan cannot set-off against LBHI to satisfy the WaMu Claim.

## Conclusion

47.    Accordingly, the Objectors respectfully request that the Court enter an order substantially in the form of the proposed order attached hereto, (i) reclassifying the WaMu Claim to the extent that JPMorgan has asserted that the WaMu Claim is secured or subject to set-off rights with respect to LBHI and (ii) declaring that the set-off or application of cash held by JPMorgan pursuant to the September Agreements in satisfaction of the WaMu Claim of $80,313,435 was improper.

## Reservation of Rights[14]

48.    Nothing in this Objection or in any objection notice will constitute a waiver of the right to assert any claims, counterclaims, rights of offset or recoupment or any other claims of the Objectors against a claimant, or to seek estimation of any claim or object to claims on any basis not previously set forth in this Objection. Unless the Court allows a claim or specifically orders

---

[14]    It should be noted that Proof of Claim No. 66462 encompasses the entire relationship between JPMorgan and LBHI and is not in any way limited to the claims discussed herein.

otherwise, the Objectors retain the right to object on any grounds to the claim (or to any other claims or causes of action filed by a claimant or that have been scheduled by the Objectors) at a later date. In such event, the respective claimant will receive a separate notice of any such objections.

49.    The Objectors expressly reserve the right to amend, modify, or supplement this Objection and to file additional objections to the WaMu Claim or any other claims (filed or not) which may be asserted against the Debtors. Should one or more of the grounds for objection stated herein be dismissed, the Objectors reserve their rights to object on other stated grounds or on any other grounds that the Objectors discover during the pendency of these cases. Nothing herein shall constitute an admission of liability to the Objectors with respect to any proof of claim.

### Notice

50.    No trustee has been appointed in these chapter 11 cases. Notice of this Objection has been served on (i) the U.S. Trustee; (ii) the attorney for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) JPMorgan Chase Bank, N.A.; and (vii) all other parties entitled to notice in accordance with the procedures set forth in the *Second Amended Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 1015(c) and 9007 Implementing Certain Notice and Case Management Procedures* entered on June 17, 2010 [Docket No. 9635]. The Objectors submit that no other or further notice need be provided.

51.    No previous request for the relief sought herein has been made by the Objectors to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

**WHEREFORE**, the Objectors respectfully request that the Court enter an Order, substantially in the form annexed hereto as Exhibit A, (a) granting the relief requested herein and (b) granting the Objectors such other relief as is just.

Dated: April 15, 2011
      New York, New York

                             **QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

                             By: /s/  John B. Quinn

                             John B. Quinn
                             Erica Taggart
                             Matthew Scheck
                             865 South Figueroa Street, 10th Floor
                             Los Angeles, California 90017-2543
                             (213) 443-3000

                             Susheel Kirpalani
                             Andrew J. Rossman
                             James Tecce
                             51 Madison Avenue, 22nd Floor
                             New York, New York 10010-1601
                             (212) 849-7000
                             *Counsel for Intervenor, the Official Committee
of Unsecured Creditors of Lehman Brothers
Holdings Inc.*

                             **CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP**

                             By: /s/  Joseph D. Pizzurro

                             Joseph D. Pizzurro
                             L.P. Harrison 3rd
                             Michael J. Moscato
                             Nancy E. Delaney
                             Peter J. Behmke
                             Cindi Eilbott Giglio
                             101 Park Avenue
                             New York, New York 10178-0061
                             (212) 696-6000
                             *Counsel for Debtors and Debtors-in-
Possession*

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re

LEHMAN BROTHERS HOLDINGS INC., et al.,

Debtors.

Chapter 11
Case No. 08-13555 (JMP)

### ORDER GRANTING OBJECTION TO PROOF OF CLAIM NO. 66462 OF JPMORGAN CHASE BANK, N.A. TO THE EXTENT IT ASSERTS CLAIMS ACQUIRED FROM WASHINGTON MUTUAL BANK, FA POST-PETITION ARE SECURED (MISCLASSIFIED CLAIM)

Upon the objection, dated April 15, 2011 (the "Objection"),[1] of Lehman Brothers Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors") and the Official Committee of Unsecured Creditors (the "Committee" and, together with the Debtors, the "Objectors"), pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 3007 of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of objections to proofs of claim [Docket No. 6664], reclassifying that $80,313,435 portion of Proof of Claim 66462 described therein as arising from that certain ISDA Master Agreement, dated as of May 28, 1998 between Washington Mutual Bank (f/k/a Washington Mutual Bank, FA) and Lehman Brothers Special Financing Inc. (the "WaMu Claim") to reflect its proper classification as a general unsecured claim, and finding that the set-off or application of LBHI cash held by JPMorgan pursuant to the September Agreements in satisfaction of the WaMu Claim was improper, all as more fully described in the Objection; and due and proper notice of the Objection having been provided, and it appearing

---

[1]  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Objection establishes just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the WaMu Claim is hereby reclassified as a general, unsecured non-priority claim; and it is further

ORDERED that the Debtors' Court-appointed claims agent is authorized and directed to reclassify the WaMu Claim pursuant to this Order; and it is further

ORDERED that this Order has no *res judicata*, estoppel or other effect on the validity, allowance or disallowance of, and all rights to object and defend on any basis are expressly reserved with respect to, the WaMu Claim; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.


Dated: _____, 2011
        New York, New York



_____
UNITED STATES BANKRUPTCY JUDGE

2