# EXHIBIT C

(Multicurrency-Cross Border)

# ISDA®



International Swap Dealers Association, Inc.

## MASTER AGREEMENT

dated as of May 28, 1998

**LEHMAN BROTHERS SPECIAL**   and   **WASHINGTON MUTUAL BANK, FA**
**FINANCING INC.**

have entered and/or anticipate entering into one or more transactions (each a "Transaction") that are or will be governed by this Master Agreement, which includes the schedule (the "Schedule"), and the documents and other confirming evidence (each a "Confirmation") exchanged between the parties confirming those Transactions.

Accordingly, the parties agree as follows:—

1.   **Interpretation**

(a)   *Definitions.* The terms defined in Section 14 and in the Schedule will have the meanings therein specified for the purpose of this Master Agreement.

(b)   *Inconsistency.* In the event of any inconsistency between the provisions of the Schedule and the other provisions of this Master Agreement, the Schedule will prevail. In the event of any inconsistency between the provisions of any Confirmation and this Master Agreement (including the Schedule), such Confirmation will prevail for the purposes of the relevant Transaction.

(c)   *Single Agreement.* All Transactions are entered into in reliance on the fact that this Master Agreement and all Confirmations form a single agreement between the parties (collectively referred to as this "Agreement"), and the parties would not otherwise enter into any Transactions.

2.   **Obligations**

(a)   *General Conditions.*

(i) Each party will make each payment or delivery specified in each Confirmation to be made by it, subject to the other provisions of this Agreement.

(ii) Payments under this Agreement will be made on the due date for value on that date in the place of the account specified in the relevant Confirmation or otherwise pursuant to this Agreement, in freely transferable funds and in the manner customary for payments in the required currency. Where settlement is by delivery (that is, other than by payment), such delivery will be made for receipt on the due date in the manner customary for the relevant obligation unless otherwise specified in the relevant Confirmation or elsewhere in this Agreement.

(iii) Each obligation of each party under Section 2(a)(i) is subject to (1) the condition precedent that no Event of Default or Potential Event of Default with respect to the other party has occurred and is continuing, (2) the condition precedent that no Early Termination Date in respect of the relevant Transaction has occurred or been effectively designated and (3) each other applicable condition precedent specified in this Agreement.

value of that which was (or would have been) required to be delivered as of the originally scheduled date for delivery, in each case together with (to the extent permitted under applicable law) interest, in the currency of such amounts, from (and including) the date such amounts or obligations were or would have been required to have been paid or performed to (but excluding) such Early Termination Date, at the Applicable Rate. Such amounts of interest will be calculated on the basis of daily compounding and the actual number of days elapsed. The fair market value of any obligation referred to in clause (b) above shall be reasonably determined by the party obliged to make the determination under Section 6(e) or, if each party is so obliged, it shall be the average of the Termination Currency Equivalents of the fair market values reasonably determined by both parties.

IN WITNESS WHEREOF the parties have executed this document on the respective dates specified below with effect from the date specified on the first page of this document.

| **LEHMAN BROTHERS SPECIAL FINANCING INC.** | **WASHINGTON MUTUAL BANK, FA** |
|---|---|
| (Name of Party) | (Name of Party) |
| By: ................................... | By: ................................... |
| Name: | Name: **MARANGAL I. DOMINGO** |
| Title: | Title: **SENIOR VICE PRESIDENT** |
| Date: **FLORENCE D. NOLAN VICE PRESIDENT** | Date: 21 July 1993 |

Washington Mutual.doc

(Multicurrency-Cross Border)

SCHEDULE
to the
Master Agreement
dated as of May 28, 1998
between
**LEHMAN BROTHERS SPECIAL FINANCING INC.** ("Party A"),
a corporation organized under
the laws of
the State of Delaware
and
**WASHINGTON MUTUAL BANK, FA** ("Party B")
a federally chartered savings and loan association

## Part 1: Termination Provisions

In this Agreement:-

(a)  **"Specified Entity"** means in relation to Party A for the purpose of:-

| | |
|---|---|
| Section 5(a)(v), | Not applicable. |
| Section 5(a)(vi), | Not applicable. |
| Section 5(a)(vii), | Not applicable. |
| Section 5(b)(iv), | Not applicable. |

and in relation to Party B for the purpose of:-

| | |
|---|---|
| Section 5(a)(v), | Not applicable. |
| Section 5(a)(vi), | Not applicable. |
| Section 5(a)(vii), | Not applicable. |
| Section 5(b)(iv), | Not applicable. |

(b)  **"Specified Transaction"** will have the meaning specified in Section 14 of this Agreement.

(c)  The **"Cross Default"** provisions of Section 5(a)(vi) will apply to Party A and Party B.

The following provisions apply:-

**"Specified Indebtedness"** means any obligation (whether present or future, contingent or otherwise, as principal or surety or otherwise) in respect of borrowed money (other than indebtedness in respect of individual deposits received the amount of which does not exceed USD $1,000,000 or its equivalent in any other currency or composite currency.

**"Threshold Amount"** means the lesser of (i) $40 million or (ii) two percent (2%) of the Stockholders' Equity of Lehman Brothers Holdings Inc. ("Holdings"), in the case of Party A and Holdings (or its equivalent in any other currency), and two percent (2%) of the Stockholders' Equity of Party B, in the case of Party B (or its equivalent in any other currency).

(d)  The "**Credit Event Upon Merger**" provisions of Section 5(b)(iv) will apply to Party A and Party B.  The phrase "materially weaker" means the senior long-term debt or deposits of the resulting, surviving or transferee entity is or are, as the case may be, rated less than BBB- by Standard & Poor's Corporation ("S&P") or Baa3 by Moody's Investor Services ("Moody's").

(e)  The "**Automatic Early Termination**" provisions of Section 6(a) will <u>not</u> apply to either Party A or Party B.

(f)  **Payments on Early Termination.** For the purpose of Section 6(e) of this Agreement, Loss and the Second Method will apply.

(g)  "**Termination Currency**" means United States Dollars ("USD").

(h)  **Additional Termination Event** will not apply.

## Part 2: Tax Representations

(a)  **Payer Tax Representations.**  Not applicable.
(b)  **Payee Representations.**  Not applicable.

## Part 3: Agreement to Deliver Documents

For the purpose of Sections 4(a)(i) and (ii) of this Agreement, each party agrees to deliver the following documents, as applicable:-

(a) Tax forms, documents or certificates to be delivered are:-

| Party required to deliver document | Form/Document /Certificate | Date by which to be delivered |
|---|---|---|
| Party A and Party B | Forms and/or documents described in Section 4(a)(iii) of the Agreement. | Upon reasonable demand by the other party. |

(b) Other documents to be delivered are:-

| Party required to deliver document | Form/Document/ Certificate | Date by which to be Delivered | Covered by Section 3(d) |
|---|---|---|---|
| Party A | A guarantee of Holdings in the form of Exhibit B to this Schedule. | Upon execution of this Agreement. | Yes |
| Party A | An incumbency certificate with respect to the signatory of this Agreement. | Upon execution of this Agreement. | Yes |
| Party A | A copy of the annual report of its Credit Support Provider containing audited consolidated financial statements for such fiscal year certified by independent public accountants and prepared in accordance with generally accepted accounting practices consistently applied. | Upon execution of this Agreement and thereafter upon request. | Yes |
| Party A | A copy of the unaudited financial statements of its Credit Support Provider for its most recent fiscal quarter and prepared in accordance with generally accepted accounting practices consistently applied. | Upon execution of this Agreement and thereafter upon request. | Yes |
| Party B | An incumbency certificate with respect to the signatory of this Agreement. | Upon execution of this Agreement. | Yes |

Washington Mutual

| Party required to deliver document | Form/Document/ Certificate | Date by which to be Delivered | Covered by Section 3(d) |
|---|---|---|---|
| Party B | A copy of the annual report of the party (and any Credit Support Provider) containing audited consolidated financial statements for such fiscal year certified by independent public accountants and prepared in accordance with generally accepted accounting practices consistently applied. | Upon execution of this Agreement and thereafter upon request. | Yes |
| Party B | A copy of the unaudited financial statements of the party (and any Credit Support Provider) for its most recent fiscal quarter and prepared in accordance with generally accepted accounting practices consistently applied. | Upon execution of this Agreement and thereafter upon request. | Yes |
| Party B | A certified copy of the resolution or resolutions (the "Authorizing Resolution") of the board of directors or loan committee of Party B, certified by a secretary, or an assistant secretary of Party B, pursuant to which Party B is authorized to enter into this Agreement and each Transaction entered into under this Agreement. | Upon execution of this Agreement (unless an Authorizing Resolution has previously been furnished by Party B to Party A) and, with respect to each Transaction not covered by a previously-furnished Authorizing Resolution, within five (5) Business Days of the Trade Date. | Yes |

Washington Mutual

**Part 4: Miscellaneous**

(a)   **Addresses for Notices.** For the purpose of Section 12(a):-

Address for notices or communications to Party A:-

Address:   Lehman Brothers Inc.
(Derivative Finance Department)
3 World Financial Center, 12th Floor,
New York, New York 10285-1200 USA
Attention:       Documentation Manager
Telephone No.:    (212) 526-1877
Facsimile No.:    (212) 528-7097

For all purposes.

Address for notices or communications to Party B:-

Address:   Washington Mutual Bank FA
1201 Third Avenue
WMT 0511
Seattle, Washington 98101
Attention:       Maranagal I. Domingo
Telephone No.:    (206) 461-8956
Facsimile No.:    (206) 554-2713

For all purposes.

(b)   **Process Agent.** For the purpose of Section 13(c):-

Party A appoints as its Process Agent - Not applicable.
Party B appoints as its Process Agent - Not applicable.

(c)   **Offices.** The provisions of Section 10(a) will apply to this Agreement.

(d)   **Multibranch Party.** For the purpose of Section 10(c) of this Agreement:-

Party A is not a Multibranch Party.
Party B is not a Multibranch Party.

(e)   **Calculation Agent.** The Calculation Agent is Party A, unless otherwise specified in a Confirmation in relation to the relevant Transaction.

(f)   **Credit Support Document.** Details of any Credit Support Document, each of which is incorporated by reference in, constitutes part of, and is in connection with, this Agreement and each Confirmation (unless provided otherwise in a Confirmation) as if set forth in full in this Agreement or such Confirmation:-

In the case of Party A, a guarantee of Party A's obligations hereunder in the form annexed hereto as Exhibit B of this Schedule.

In the case of Party A and Party B, The Credit Support Annex

(g) **Credit Support Provider.** Credit Support Provider means in relation to Party A: Holdings.

Credit Support Provider means in relation to Party B: Not applicable

(h) **Governing Law.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine).

(i) **Jurisdiction** will have meaning as specified in Section 13(b) of this Agreement.

(j) **Netting of Payments.** To clarify Section 2(c) as more fully set forth below:

(i) Single Transaction Netting. Subject to the terms and conditions set forth or incorporated by reference in this Agreement and in the relevant Confirmation, with respect to a single Transaction involving only payments in the same currency and having a Fixed Amount and a Floating Amount, or two Floating Amounts, on each Payment Date;

(A) if the Fixed Amount under such Transaction for such Payment Date exceeds the Floating Amount under such Transaction, then the Fixed Rate Payer under such Transaction shall pay the Floating Rate Payer under such Transaction the amount of such excess on such Payment Date;

(B) if the Floating Amount under such Transaction for such Payment Date exceeds the Fixed Amount under such Transaction, then the Floating Rate Payer under such Transaction shall pay the Fixed Rate Payer under such Transaction the amount of excess on such Payment Date;

(C) if both parties are Floating Rate Payers under a Transaction, then if one party's Floating Amount for such Transaction for such Payment Date exceeds the other party's Floating Amount for such Transaction for such Payment Date, the party owing the greater amount shall pay the amount of such excess to the other party on such Payment Date; and

(D) if an amount payable to by one party under a Transaction for such Payment Date equals the amount payable by the other party under such Transaction for such Payment Date, then neither party shall make any payments to the other party on such Payment Date with respect to such Transactions.

(ii) Multiple Transaction Netting. The parties may elect in respect of two or more Transactions that a net amount will be determined in respect of all amount payable on the same date in respect of such Transactions regardless of whether such amounts are payable in respect of the same Transactions. The election may be made in the schedule or a Confirmation by specifying that multiple Transaction netting will apply to the Transaction identified as being subject to the election, together with the starting (in which case subparagraph (A) above will not, or will cease to, apply to such Transactions from such date). This election may be made separately for different groups of Transactions and will apply separately to each pairing of Offices through which the parties make and receive payments or deliveries.

(k) "**Affiliate**" will have the meaning specified in Section 14 of this Agreement.

Washington Mutual

## Part 5: Other Provisions

**Setoff.** Section 6 of the Agreement is hereby amended by adding a new subsection (f);

"(a) **Setoff.** Any amount (the "Early Termination Amount") payable to one party (the "Payee") by the other party (the "Payer") under Section 6(e), in circumstances where there is a Defaulting Party or one Affected Party in the case where a Termination Event under Section 5(b)(iv) has occurred, will, at the option of the party ("X") other than the Defaulting Party or Affected Party (and without prior notice to the Defaulting Party or the Affected Party), be reduced by its set-off against any amount(s) (the "Other Agreement Amount") payable (whether at such time or in the future or upon the occurrence of a contingency) by the Payee to the Payer (irrespective of the currency, place of payment or booking office of instruments(s) or undertakings(s) issued or executed by one party to, or in favor of, the other party (and the Other Agreement Amount will be discharged promptly and in all respects to the extent it is set-off). X will give notice to the other party of any set-off effected under this Section 5(a).

For this purpose, either the Early Termination Amount or the Other Agreement Amount (or the relevant portion of such amounts) may be converted by X into the currency in which the other is denominated at the rate of exchange at which such party would be able, acting in a reasonable manner and in good faith, to purchase the relevant amount of such currency.

If an obligation is unascertained, X may in good faith estimate that obligation and set-off in respect of the estimate, subject to the relevant party accounting to the other when the obligation is ascertained.

Nothing in this Section 5(a) shall be effective to create a charge or other security interest. This Section 5(a) shall be without prejudice and in addition two any right of set-off, combination of accounts, lien or other right to which any party is at any time otherwise entitled (whether by operation of law, contract or otherwise)."

Washington Mutual

**FIRREA Provisions:**

(a) **Maintenance of Records.** Party B agrees to maintain in its official books and records: (i) a copy of the confirmation for each Transaction, for so long as such Transaction remains outstanding; and (ii) a copy of the Agreement and the Authorizing Resolution, for so long as any Transaction under the Agreement remains outstanding.

(b) **Authorizing Resolution Representation.** Party B makes the following representation to Party A, which representation will be deemed repeated at the times set forth in Section 3 of the Agreement: An Authorizing Resolution, as defined in Part 3 of this Schedule, is in full force and effect.

(c) **Qualified Financial Contract.** Party A and Party B agree that each Transaction and the Agreement are a "swap agreement" and a "qualified financial contract" and that the Agreement is a "master agreement", for purposes of Section 11(e)(8) of the Federal Deposit Insurance Act or any successor provisions.

(d) Party B agrees that this Agreement, any Credit Support Document to which it is a party, each Confirmation, and any other documentation relating to this Agreement to which it is a party or that it is required to deliver will be executed and delivered by a duly appointed or elected and authorized officer of Party B of the level of vice-president or higher.

(e) Party A and Party B each represent that it will engage in "financial contracts" as a counterparty on "both sides of one or more financial markets" as set forth in 12 C.F.R. Section 231.3 of Regulation EE issued by the Board of Governors of the Federal Reserve System.

(f) Party A and Party B each represent that it is an "eligible swap participant" for purposes of Section 35.1(b)2 of the Regulations of the U.S. Commodity Futures Trading Commission.

Miscellaneous:

(a) **Country of Domicile.** The country of domicile of Party A is the United States of America. The country of domicile of Party B is the United States.

(b) **Confirmation.** Each Confirmation supplements, forms part of, and will be read and construed as one with, this Agreement. A form of Confirmation is set forth as Exhibit A hereto.

(c) **Tax Forms** means any form or document that may be required or reasonably requested in order to allow the other party to make a payment under the Transaction without any deduction or withholding for an account of any Tax or with such deduction or withholding at a reduced rate.

(d) **"Stockholders' Equity"** means with respect to an entity, at any time, the sum at such time of (i) its capital stock (including preferred stock) outstanding, taken at par value, (ii) its capital surplus and (iii) its retained earnings, minus (iv) treasury stock, each to be determined in accordance with generally accepted accounting principles.

(e) **Transfer.**

Section 7 of the Agreement is hereby modified by inserting the following after the word "party" but before the comma in the third line thereof:

", provided, however, that such consent shall not be unreasonably withheld"

(f) For purposes of Sections 2(d)(i)(4) and 3(f), any payee tax representation specified in a Confirmation under this Agreement shall be deemed to be specified in this Schedule.

(g) **Trial By Jury.** Each party irrevocably waives any and all rights to trial by jury in any legal proceeding in connection with this Agreement or any Transaction.

(h) **Accuracy of Specified Information.** Section 3(d) is hereby amended by adding in the third line thereof after the word "respect" and before the period the words "or, in the case of audited or unaudited financial statements or balance sheets, a fair presentation of the financial condition of the relevant person".

(i) **Definitions.** This Agreement, each Confirmation, and each Transaction are subject to the 1991 ISDA Definitions as published by the International Swaps and Derivatives Association, Inc. as amended, supplemented, updated, restated, and superseded from time to time (the "Definitions"), and will be governed in all respects by the Definitions (except that references to "Swap Transactions" in the Definitions will be deemed to be references to "Transactions"). The Definitions as so modified, are incorporated by reference in, and made part of, this Agreement and each Confirmation as if set forth in full in this Agreement and such Confirmations. Subject to Section 1(b), in the event of any inconsistency between the provisions of this Agreement and the Definitions, this Agreement will prevail. Also, subject to Section 1(b), in the event of any inconsistency between the provisions of any Confirmation and this Agreement, or the Definitions, such Confirmation will prevail for the purpose of the relevant Transaction.

(j) **Representations.** Section 3 is hereby amended by adding the following additional Subsections:

(g) **No Agency.** It is entering into this Agreement and each Transaction as principal (and not as agent or in any other capacity, fiduciary or otherwise).

(h) **Eligible Swap Participant.** It is an "eligible swap participant" as defined in the Part 35 Regulations of the U.S. Commodity Futures Trading Commission.

Washington Mutual

(i) **No Reliance.** Party B acknowledges and agrees that (i) Party A is acting solely in the capacity of an arm's length contractual counterparty, with respect to this Agreement and any Transaction hereunder and (ii) Party A is not acting as a financial advisor or fiduciary of Party B (or in any similar capacity) with respect to this Agreement and any Transaction hereunder regardless of whether Party A provides Party B with market information or its views. Party B represents to Party A (which representation shall be deemed to be repeated by Party B on each date on which Transaction is entered into) that it understands the risks of the Transactions it enters and any legal, regulatory, tax, accounting and economic consequences arising therefrom and that its decision to enter into each Transaction has been based solely on the independent evaluation of Party B and its representatives in light of Party B's financial capabilities and objectives.

The parties executing this Schedule have executed the Master Agreement and have agreed as to the contents of this Schedule.

**LEHMAN BROTHERS SPECIAL FINANCING INC.**

By: _____

Title:     **FLORENCE D. NOLAN**
           **VICE PRESIDENT**

**WASHINGTON MUTUAL BANK, FA**

By: _____
    **MARANGAL I. DOMINGO**
Title:   **SENIOR VICE PRESIDENT**

EXHIBIT A to Schedule

**Form of Confirmation**

Date:

To:         WASHINGTON MUTUAL BANK, FA

            Telephone:
            Telecopier:

From:       Lehman Brothers Special Financing Inc.

**Subject:      Swap Transaction (Ref: S____-__ )**

    The purpose of this communication is to set forth the terms and conditions of the swap transaction entered into on the Trade Date referred to below (the "Swap Transaction"), between Lehman Brothers Special Financing Inc. ("Party A") (guaranteed by Lehman Brothers Holdings Inc. ("Holdings")) and _____ ("Party B"). This communication constitutes a "Confirmation" as referred to in the Swap Agreement specified below.

    This confirmation supplements, forms part of, and is subject to, the Master Agreement, which the parties have entered into, dated May 28, 1998 between Party A and Party B (the "Swap Agreement"). All provisions contained in, or incorporated by reference to, such Swap Agreement shall govern this Confirmation except as expressly modified below.

    Party A and Party B each represent that entering into the Swap Transaction is authorized and does not violate any laws of its jurisdiction of organization or residence or the terms of any agreement to which it is a party, and it has reached its own conclusions about the Swap Transaction, and any legal, regulatory, tax, accounting or economic consequences arising from the Swap Transaction, and has concluded that the Swap Transaction is suitable in light of its own evaluation of the Swap Transaction and its own financial capabilities and sophistication.

    This Confirmation incorporates the definitions and provisions contained in the 1991 ISDA Definitions (as published by the International Swaps and Derivatives Association, Inc.) (the "Definitions"). In the event of any inconsistency between those definitions and provisions and this Confirmation, this Confirmation will govern. The Definitions shall apply to this Confirmation even if the Swap Agreement between the parties incorporate the provisions of the 1985 or 1986 editions of the ISDA Code of Standard Wording, Assumptions and Provisions for Swaps.

    The terms of the particular Swap Transaction to which this Confirmation relates are as follows:

| | |
|---|---|
| Party A: | LEHMAN BROTHERS SPECIAL FINANCING INC. |
| Party B: | WASHINGTON MUTUAL BANK, FA |

[Notional Amount:]

Trade Date:

Effective Date:

Termination Date:

[Initial Exchange:

Initial Exchange Date:

Party A Initial Exchange Amount:
Party B Initial Exchange Amount:

Final Exchange:

Final Exchange Date:

Party A Final Exchange Amount:

Party B Final Exchange Amount:]

FIXED AMOUNTS:

| | |
|---|---|
| Fixed Rate Payer: | [Party A/B] |
| [Fixed Rate Payer Currency Amount:] | |
| Fixed Rate Payer Payment Dates [or, Period End Dates, if Delayed Payment or Early Payment applies]: | [     ], subject to adjustment in accordance with the [Following/Modified Following/Preceding] Business Day convention, with respect to a _____ Banking Day and a _____ Banking Day [with No Adjustment of Period End Dates] |
| [Fixed Amount:] | |
| Fixed Rate: | |
| Fixed Rate Day Count Fraction: | |

FLOATING AMOUNTS:

| | |
|---|---|
| Floating Rate Payer: | [Party B/A] |

| | |
|---|---|
| [Floating Rate Payer Currency Amount:] | |
| Floating Rate Payer Payment Dates [or, Period End Dates, if Delayed Payment or Early Payment applies]: | [      ], subject to adjustment in accordance with the [Following/Modified Following/Preceding] Business Day convention, with respect to a _____ Banking Day and a _____ Banking Day [with No Adjustment of Period End Dates] |
| Floating Rate for initial Calculation Period: | |
| Floating Rate Option: | |
| Designated Maturity: | |
| Floating Rate Spread: | [plus/minus]   % p.a. |
| Floating Rate Day Count Fraction: | |
| Reset Dates: | |
| [Rate Cut-off Dates:] | |
| [Method of Averaging: | Unweighted/Weighted Average Rate] |
| Compounding: | Applicable/Inapplicable |
| [Compounding Dates:] | |
| **Calculation Agent:** | |
| **Offices:** | Party A is not a Multibranch Party |
| | Party B is not a Multibranch Party |
| | (The Office of Party B is its ____ Branch) |
| **Other Provisions:** | |
| **Payment instructions for Party A in _____:** | |
| **Payment instructions for** | |

**Party B in _____:**

Please confirm that the foregoing correctly sets forth the terms of our agreement with respect to the Swap Transaction by signing in the space provided below and sending a copy of the executed Confirmation by telecopier (212-528-6927) to the Client Services Group, Lehman Brothers Special Financing Inc.

It has been a pleasure working with you on this transaction and we look forward to working with you again in the future.

LEHMAN BROTHERS SPECIAL FINANCING INC.

By:_____

Name:_____

Title:_____

Confirmed as of the
date first written:

WASHINGTON MUTUAL BANK, FA

By:_____

Name:_____

Title:_____

## GUARANTEE OF LEHMAN BROTHERS HOLDINGS INC.

**LEHMAN BROTHERS SPECIAL FINANCING INC.** ("Party A") and **WASHINGTON MUTUAL BANK FA** ("Party B") have entered into a Master Agreement dated as of May 28, 1998, (the "Master Agreement"), pursuant to which Party A and Party B have entered and/or anticipate entering into one or more transactions (each a "Transaction"), the Confirmation of each of which supplements, forms part of, and will be read and construed as one with, the Master Agreement (collectively referred to as the "Agreement"). This Guarantee is a Credit Support Document as contemplated in the Agreement. For value received, and in consideration of the financial accommodation accorded to Party A by Party B under the Agreement, LEHMAN BROTHERS HOLDINGS INC., a corporation organized and existing under the laws of the State of Delaware ("Guarantor"), hereby agrees to the following:

(a) Guarantor hereby unconditionally guarantees to Party B the due and punctual payment of all amounts payable by Party A under each Transaction when and as Party A's obligations thereunder shall become due and payable in accordance with the terms of the Agreement. In case of the failure of Party A to pay punctually any such amounts, Guarantor hereby agrees, upon written demand by Party B, to pay or cause to be paid any such amounts punctually when and as the same shall become due and payable.

(b) Guarantor hereby agrees that its obligations under this Guarantee constitute a guarantee of payment when due and not of collection.

(c) Guarantor hereby agrees that its obligations under this Guarantee shall be unconditional, irrespective of the validity, regularity or enforceability of the Agreement against Party A (other than as a result of the unenforceability thereof against Party B), the absence of any action to enforce Party A's obligations under the Agreement, any waiver or consent by Party B with respect to any provisions thereof, the entry by Party A and Party B into additional Transactions under the Agreement or any other circumstance which might otherwise constitute a legal or equitable discharge or defense of a guarantor; provided, however, that Guarantor shall be entitled to exercise any right that Party A could have exercised under the Agreement to cure any default in respect of its obligations under the Agreement or to setoff, counterclaim or withhold payment in respect of any Event of Default or potential Event of Default in respect of Party B or any Affiliate, but only to the extent such right is provided to Party A under the Agreement. The Guarantor acknowledges that Party A and Party B may from time to time enter into one or more Transactions pursuant to the Agreement and agrees that the obligations of the Guarantor under this Guarantee will upon the execution of any such Transaction by Party A and Party B extend to all such Transactions without the taking of further action by the Guarantor.

(d) Guarantor shall be subrogated to all rights of Party B against Party A in respect of any amounts paid by Guarantor pursuant to the provisions of this Guarantee; provided, however, that Guarantor shall not be entitled to enforce or to receive any payments arising out of, or based upon, such right of subrogation until all amounts then due and payable by Party A under the Agreement, shall have been paid in full.

WashMut.doc

(e) Guarantor further agrees that this Guarantee shall continue to be effective or be reinstated, as the case may be, if at any time, payment, or any part thereof, of any obligation or interest thereon is rescinded or must otherwise be restored by Party B upon an Event of Default as set forth in Section 5(a)(vii) of the Master Agreement affecting Party A or Guarantor.

(f) Guarantor hereby waives (i) promptness, diligence, presentment, demand of payment, protest, order and, except as set forth in paragraph (a) hereof, notice of any kind in connection with the Agreement and this Guarantee, or (ii) any requirement that Party B exhaust any right to take any action against Party A or any other person prior to or contemporaneously with proceeding to exercise any right against Guarantor under this Guarantee.

This Guarantee shall be governed by and construed in accordance with the laws of the State of New York, without reference to choice of law doctrine. All capitalized terms not defined in this Guarantee, but defined in the Agreement, shall have the meanings assigned thereto in the Agreement.

Any notice hereunder will be sufficiently given if given in accordance with the provisions for notices under the Agreement and will be effective as set forth therein. All notices hereunder shall be delivered to Lehman Brothers Holdings Inc., Attention: Treasurer, at 200 Vesey Street, 24h Floor, New York, New York 10285 USA (Facsimile No. (212) 526-1467) with a copy to Lehman Brothers Special Financing Inc., Attention: Operations Manager at 3 World Financial Center, 7th Floor, New York, New York 10285-0700 (Facsimile No. (212) 528-6927).

IN WITNESS WHEREOF, Guarantor has caused this Guarantee to be executed in its corporate name by its duly authorized officer as of the date of the Agreement.

LEHMAN BROTHERS HOLDINGS INC.

By: _____

Title: _____

WashMut.doc