Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case Nos. 08-13555(JMP)

5

6  - - - - - - - - - - - - - - - - - - - - -x

7  In the Matter of:

8

9  LEHMAN BROTHERS HOLDINGS INC., et al.

10

11            Debtors.

12

13  - - - - - - - - - - - - - - - - - - - - -x

14            United States Bankruptcy Court

15            One Bowling Green

16            New York, New York

17

18            April 13, 2011

19            2:19 PM

20

21  B E F O R E:

22  HON. JAMES M. PECK

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    PRETRIAL CONFERENCE re Kathleen Arnold and Timothy A. Cotten v.

3    Lehman Brothers Holdings Inc., et al.

4

5    Uvino v. Lehman Brothers Holdings Inc., et. al.:

6    PRETRIAL CONFERENCE re Defendants' Motion to Dismiss Adversary

7    Complaint

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Lisa Bar-Leib

Page 3

1

2  A P P E A R A N C E S :

3  WEIL, GOTSHAL & MANGES LLP

4        Attorneys for Debtors and Debtors-in-Possession

5        767 Fifth Avenue

6        New York, NY 10153

7

8  BY:   LAWRENCE J. BAER, ESQ.

9

10  WEIL, GOTSHAL & MANGES LLP

11        Attorneys for Debtors and Debtors-in-Possession

12        200 Crescent Court

13        Suite 300

14        Dallas, TX 75201

15

16  BY:   ERIN D. ECKOLS, ESQ.

17        YVETTE OSOLAZA, ESQ.

18        BENJAMIN L. STEWART, ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25

Page 4

1

2    LAW OFFICES OF AVRUM J. ROSEN, PLLC

3         Attorneys for Wendy Uvino

4         38 New Street

5         Huntington, NY 11743

6

7    BY:   AVRUM J. ROSEN, ESQ.

8

9    STUTMAN, TREISTER & GLATT

10

11        1901 Avenue of the Stars

12        12th Floor

13        Los Angeles, CA 90067

14

15   BY:   JEFFREY H. DAVIDSON, ESQ.

16        (TELEPHONICALLY)

17

18   ALSO APPEARING:

19   KATHLEEN ARNOLD and TIMOTHY A. COTTEN, Creditors

20        9543 North Side Drive

21        Owings, MD 20736

22

23   BY:   KATHLEEN ARNOLD and TIMOTHY A. COTTEN, PRO SE

24

25

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 5 of 46

Page 5

```
 1                      P R O C E E D I N G S
 2              THE COURT:  Be seated, please.  I'm sorry for the late
 3      start.  We had a long calendar this morning, and we didn't end
 4      until about 1:40, and we all had to eat.  Let's proceed.
 5              MR. BAER:  Good afternoon, Your Honor.  My name is
 6      Lawrence Baer.  I'm an attorney at Weil, Gotshal & Manges, here
 7      on behalf of the debtor, Lehman Brothers Holdings Inc.  I'm
 8      here to address the substance of matter number 9 on our amended
 9      notice of agenda, and I'd like to introduce my colleagues from
10      our Dallas office who are on the telephone who will be handling
11      the number 8 matter on today's amended agenda.  My colleagues
12      in Dallas are Attorneys Ben Stewart, Erin Eckols and Yvette
13      Ostolaza.  Matter number 8 is Kathleen Arnold and Timothy A.
14      Cotten, who are pro se versus Lehman Brothers Holdings, et al.
15              THE COURT:  Is anyone here representing the interests
16      of Kathleen Arnold and Timothy Cotten?
17              MS. ARNOLD:  Yes, Your Honor.  Yes, sir, I am.  Mr.
18      Cotten is here, but I'll -- I'm just going to be the speaker
19      for him.
20              THE COURT:  Okay.  Why don't you come forward?
21              MS. ARNOLD:  First of all, Your Honor, I want to make
22      sure we -- we fit --
23              MS. ECKOLS:  Good afternoon, Your Honor.  This is Erin
24      Eckols at Weil, Gotshal & Manges on behalf of the debtors, and
25      I have my colleague Ben Stewart also on the line.  I have a pro
```

Page 6

1    hac in on file for him, and unless Your Honor has an objection

2    we respectfully request that Mr. Stewart be allowed to speak

3    today if necessary.  There may be certain matters that I will

4    need to defer to him on.

5              THE COURT:  Okay.  That's fine.  The plaintiff pro se,

6    Kathleen Arnold, is at the podium, and, I gather, will be

7    entering an appearance.  Do you have counsel?

8              MS. ARNOLD:  No, sir, I don't.  I am entering an

9    appearance, though.

10             THE COURT:  Okay.  This is a pretrial conference in

11   connection with your adversary proceeding.  The debtor has

12   filed a motion to dismiss.  That's not being heard today, but

13   you --

14             MS. ARNOLD:  I understand that.

15             THE COURT:  You'll have an opportunity to respond.

16   The question is whether this is something you can respond to on

17   your own or whether you can obtain pro bono counsel or --

18             MS. ARNOLD:  Oh, no.  I believe I can respond on my

19   own.  Thank you very much.

20             THE COURT:  Well, that's not being heard today.

21             MS. ARNOLD:  Oh, I'm sorry.  Okay.

22             THE COURT:  Do you intend to file papers in response?

23             MS. ARNOLD:  We're here -- I'm here about the

24   scheduling today.  Rule 16.

25             THE COURT:  Excuse me?

Page 7

```
 1            MS. ARNOLD:  Rule 16.  I'm here about the confirmation
 2   position statement, the -- our briefing statements.  That's
 3   what I'm here about.  Pretrial.  There are issues that we need
 4   to work out.
 5            THE COURT:  This is a pretrial conference.  Nothing
 6   substantive is going to --
 7            MS. ARNOLD:  Right.
 8            THE COURT: -- happen.
 9            MS. ARNOLD:  I understand.
10            THE COURT:  But I have looked at the docket, and I see
11   that a motion to dismiss was filed.  You're either going to
12   respond to it in writing or you're going to not respond to it.
13   That's your option.  Are you going to respond to it?
14            MS. ARNOLD:  Well, Your Honor, we're not there yet.
15   I'm sorry.  We're not there yet.  There are matters that have
16   been pled outside of the complaint, out of the scope of the
17   complaint, and matters in terms of what we're agreeing to and
18   what we would, I mean, if you look at things, and, as you well
19   know, I've brought up, or maybe you don't know.  Let me ask you
20   this.  I FedEx'd out a package yesterday, a pretrial --
21   pretrial scheduling conference position statements, and I'm
22   wondering if the Court did get those?  I FedEx'd them to your
23   office so that they would be here this morning at 8 o'clock.
24            THE COURT:  I haven't seen the papers you're referring
25   to.
```

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 8 of 46

Page 8

 1          MS. ARNOLD:  You have not seen them.  Okay.  Well, I

 2    have an additional copy.

 3          MS. ECKOLS:  And, Your Honor, the debtors have not

 4    seen it either.

 5          THE COURT:  Well, let me just tell you how we do

 6    things here.

 7          MS. ARNOLD:  Okay.  I understand -- yes.

 8          THE COURT:  And you're representing yourself, and I

 9    gather that Mr. Cotten, who is -- you're seated in the

10    courtroom, Mr. Cotten?

11          MR. COTTEN:  Yes, sir.

12          THE COURT:  DO you want to come forward or are you

13    just going to be listening?

14          MR. COTTEN:  Oh, no, I'm fine just with this.

15          THE COURT:  Okay.  This is a pretrial conference to

16    talk about what happens next.

17          MS. ARNOLD:  Yes.

18          THE COURT:  And we try to do things with as much order

19    as possible.  Papers should not be submitted the day of a

20    hearing or conference.  The lawyers for Lehman don't have the

21    papers that you're referring to.  I don't have the papers --

22          MS. ARNOLD:  Okay.

23          THE COURT: -- that you're referring to.  But that's

24    okay, because we're just talking about the case and what

25    happens next.  So far you filed an adversary complaint.  The

08-13555-mg    Doc 16088    Filed 04/13/11    Entered 04/18/11 10:49:58    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 9 of 46

Page 9

1    debtors have filed a motion to dismiss.

2          MS. ECKOLS:  Yes.

3          THE COURT:  And what we're going to do is schedule a

4    hearing on the motion to dismiss.

5          MS. ARNOLD:  Well, Your Honor, we have unresolved

6    matters.  I cannot respond until we resolve these matters.  So

7    with regard to the out of complaint matters that were

8    introduced in the complaint, what I would like to see happen is

9    that we at least have a magistrate to hear these matters with

10   regard to the fraudulent removal that I will be bringing up.  I

11   mean, there's documents here you don't have, so I've not,

12   basically, briefed anybody on anything.

13         THE COURT:  I don't know what you're talking about.

14         MS. ARNOLD:  Okay.

15         THE COURT:  What are you talking about a magistrate?

16   There are no magistrates in bankruptcy court.

17         MS. ARNOLD:  No, well, a magistrate or a fact finder

18   who can find -- identify such things as bar dates and so forth.

19   Statute of limitation dates.

20         THE COURT:  Well, let me tell you what you're going to

21   do.

22         MS. ARNOLD:  Okay.

23         THE COURT:  We're going to have a briefing schedule.

24   I'm going to give you an opportunity to find a lawyer, because

25   you're in an environment where very sophisticated lawyers are

Page 10

1    representing Lehman and are seeking to dismiss your case.  If

2    you don't want a lawyer and want to do this on your own you're

3    going to be held to the same standard as if you had a lawyer,

4    which means you're going to meet the deadlines.  You're going

5    to file papers.  And if you don't file the papers relief will

6    be entered against you.

7              MS. ARNOLD:  I understand.

8              THE COURT:  So how much time do you need to file a

9    response to the motion to dismiss?

10             MS. ARNOLD:  It's not a matter of responding to the

11   motion to dismiss, Your Honor.  It's a matter of resolving the

12   issues that are outside of the complaint that have been raised

13   and --

14             THE COURT:  The only matter that is before me --

15             MS. ARNOLD:  Okay.

16             THE COURT: -- is the complaint that you have filed --

17             MS. ARNOLD:  Okay.

18             THE COURT: -- and a motion to dismiss that complaint.

19             MS. ARNOLD:  Okay.

20             THE COURT:  Your obligation, if you want to stay in

21   court and be before me, is to deal with the merits of the

22   motion to dismiss.

23             MS. ARNOLD:  Okay.

24             THE COURT:  If you don't deal with it your complaint

25   will be dismissed.

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 11 of 46

Page 11

1              MS. ARNOLD:  Okay.

2              THE COURT:  How much time do you need?

3              MS. ARNOLD:  Twenty days

4              MS. ECKOLS:  Your Honor?

5              MS. ARNOLD:  The normal time.

6              MS. ECKOLS:  The attorneys, actually, the debtors have

7      been working with Ms. Arnold to set up a briefing schedule on

8      the motion to dismiss.

9              THE COURT:  And what times have you worked out?

10             MS. ECKOLS:  We asked for May 16th as being the

11     deadline for Ms. Arnold to respond to the motion to dismiss,

12     June 16th (sic) the reply date, and, then, June 15th for the

13     hearing on the motion to dismiss.

14             THE COURT:  Is that acceptable to you?

15             MS. ARNOLD:  What about discovery?  What if I raise

16     discovery?

17             THE COURT:  There's no discovery.

18             MS. ARNOLD:  Okay.  Okay.

19             THE COURT:  It's a motion to dismiss.

20             MS. ARNOLD:  Okay.  All right.  Fine.  That's fine

21     with me.

22             THE COURT:  Okay.  My suggestion --

23             MS. ARNOLD:  Yes?

24             THE COURT: -- is that counsel for the debtors prepare

25     a stipulation that sets forth those dates; that the stipulation

Page 12

1    be signed by both Kathleen Arnold and Timothy Cotten.  I'm

2    going to tell you now that you are in a very difficult

3    environment not to have a lawyer, and if this were one of my

4    individual Chapter 7 cases and an adversary proceeding had come

5    up in the case I would have suggested that you contact one of

6    the agencies in New York that provide pro bono counsel, because

7    you're dealing with some sophisticated legal issues.  I can

8    tell from the papers that I've seen that you've been involved

9    in litigation surrounding this question for some time, and you

10   may be a very sophisticated pro se litigant as a result, but

11   you're at a disadvantage in not having a lawyer.

12           MS. ARNOLD:  I understand that, Your Honor.  And it's

13   not by choice.  Obviously, we've had plenty of them over the

14   years, so -- but thank you.

15           THE COURT:  Okay.  So I'm going to ask counsel for the

16   debtor to develop that stipulation and make sure that it's

17   signed by both of the individual plaintiffs.  I'm giving you

18   the admonition that the papers need to be filed and served in

19   accordance with that stipulation --

20           MS. ARNOLD:  Okay.

21           THE COURT: -- or there'll be consequences --

22           MS. ARNOLD:  I understand.

23           THE COURT:  So pay attention to the dates.

24           MS. ARNOLD:  Okay.  I understand.

25           THE COURT:  Okay?

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 13 of 46

Page 13

1              MS. ARNOLD:  Thank you.  Thank you.  I have the date.

2    Thank you.

3              MS. ECKOLS:  Your Honor, we will do so.

4              THE COURT:  Okay.  Thank you.

5              MS. ECKOLS:  And, if you do not mind, we were asking

6    for Mr. Stewart and Ms. Eckols to be excused from the rest of

7    the hearing.

8              THE COURT:  I'm sorry.  Who's being excused?

9              MS. ECKOLS:  Mr. Stewart and myself, Ms. Eckols.

10             THE COURT:  Oh, fine.

11             MS. ECKOLS:  Okay.

12             THE COURT:  Have a nice afternoon.

13             MS. ECKOLS:  Thank you.  Bye-bye.

14             THE COURT:  Okay.  You're excused.

15             MR. BAER:  Your Honor, I'm actually here on agenda

16   item number 9, listed in the amended notice of agenda.  That

17   matter is Uvino v. Lehman Brothers, et al., which is adversary

18   case number 10-05428, and I am here on behalf of the defendants

19   in support of defendant's motion to dismiss the adversary

20   complaint.

21             MR. ROSEN:  Good afternoon, Your Honor.  Avrum Rosen,

22   representing Wendy Uvino.

23             THE COURT:  Okay.

24             MR. BAER:  May I be heard?

25             THE COURT:  Sure.

Page 14

1           MR. BAER:  Thank you, Your Honor.  Again, good

2   afternoon.  My name is Lawrence Baer.  I'm with Weil, Gotshal &

3   Manges.  I'm here on behalf of the defendants, Lehman Brothers

4   Holdings Inc., Alvarez & Marsal and Robert Hershan, here in

5   support of our motion to dismiss the adversary complaint in

6   this proceeding.  Essentially, plaintiff, Wendy Uvino, alleges

7   three causes of action, one for quantum meruit, the second

8   cause of action for constructive discharge, and she had a third

9   cause of action for hostile work environment, which was

10  voluntarily dismissed following the filing of defendant's

11  motion to dismiss, and that dismissal was so ordered by the

12  Court last month, March 22nd.

13          Briefly, Your Honor, if I may, I'll give a brief

14  recitation of the facts which are set forth in the complaint

15  and not in dispute.

16          THE COURT:  You actually don't have to do that.  I've

17  reviewed the papers and I'm familiar with the facts that are

18  alleged.

19          MR. BAER:  Okay.  Well, then, I'll move straight to my

20  argument.  Essentially, Your Honor, Ms. Uvino, who was party to

21  a valid post-petition employment agreement labeled a commitment

22  letter, now seeks to rewrite the terms of that commitment

23  letter because she was dissatisfied with the compensation that

24  she received under a quantum meruit theory.  It's well

25  established, as we've set forth in our papers, under New York

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 15 of 46

Page 15

1    law, that a valid enforceable written employment agreement

2    covering the particular subject matter will preclude a quantum

3    meruit theory of recovery, and, certainly, with respect to the

4    period October, 2008, just after the filing of the petition,

5    through December 31, 2009 there is no issue that Ms. Uvino was

6    party to a commitment letter.

7            Subsequent to the expiration of the commitment letter,

8    which, as I mentioned, expired December 31, 2009, Ms. Uvino

9    continued to work for the debtor.  She had been offered a

10   renewal commitment letter for a twelve month period.  There is

11   some dispute as to what, exactly, happened, but for purposes of

12   this motion she's alleged that she didn't sign the agreement

13   and, so, that no valid agreement exists with respect to that

14   period.  So there may be an issue, Your Honor, with respect to

15   the period between January and June, 2010, but there is

16   absolutely no issue whatsoever with respect to the period

17   October through December of 2009.

18           THE COURT:  I just want to see what you meant by what

19   you just said.

20           MR. BAER:  Yes.

21           THE COURT:  You said there may be an issue.  You're

22   saying that there may be a quantum meruit issue as to the

23   period where she worked without a signed commitment letter?

24           MR. BAER:  Well, certainly on the face of the

25   complaint there may be an issue as to that.  Discovery may show

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 16

1    that there was, in fact, a valid agreement.  Our position at

2    this point is that she was working under the agreement.  She

3    continued to provide services under the agreement, and she

4    alleges, in fact, in her complaint that she worked, continued

5    to work for the debtor under the terms provided in the renewal

6    commitment letter.  So she didn't --

7            THE COURT:  I just want to understand what this means.

8            MR. BAER:  She didn't execute it.

9            THE COURT:  I just want to understand what this means

10   for purposes of the motion to dismiss.

11           MR. BAER:  Yes.

12           THE COURT:  Are you saying that the motion to dismiss

13   is limited to the period during which she worked under the

14   signed commitment letter and doesn't extend to the period

15   thereafter when is the unsigned document?

16           MR. BAER:  Your Honor, forgive me for confusing the

17   issue, but it is as a result of the way the matter is pled.

18   The matter is pled to include the commitment letter and the

19   renewal commitment letter without distinction.  To the extent

20   that the plaintiff is alleging that this is all one period

21   covered by an extant agreement then the motion to dismiss

22   extends to the entire period of time.  To the extent that the

23   plaintiff, Ms. Uvino, seeks to parse this out between the

24   period of the original commitment letter and the renewal

25   commitment letter, there could be an issue for purposes of the

Page 17

1    motion to dismiss, at least on the face of the pleading, as to

2    whether or not there is any colorable claim for that period of

3    time.

4         Secondly, Ms. Uvino alleges a cause of action for

5    constructive discharge.  Essentially, it's a freestanding

6    action for constructive discharge not tied to any particular

7    underlying obligation.  It is well established in New York that

8    there is no independent cause of action for constructive

9    discharge.  In papers submitted in opposition to our motion,

10   Your Honor, Ms. Uvino relies on a series of cases out of the

11   State of Connecticut alleging a public policy exception to the

12   normal at-will employment rules governing at-will employees.

13   The contract between Lehman Brothers Holdings and Ms. Uvino was

14   made in New York.  It was performed in New York, and New York

15   law governs.  There's absolutely no basis for reliance on

16   Connecticut state law in support of this constructive discharge

17   claim.  So for that reason alone the absence of any underlying

18   legal basis for assertion of an independent cause of action for

19   constructive discharge, that cause of action should be

20   dismissed.

21        Assuming that that might survive, somehow, on legal

22   grounds, the facts as pled, which we, again, we assume to be

23   true for purposes of this motion, are that Mr. Hershan ignored

24   Ms. Uvino.  Mr. Hershan funneled communications through a

25   junior associate with Ms. Uvino.  Mr. Hershan was too busy to

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 18 of 46

Page 18

1    deal with Ms. Uvino directly and that when he did he did

2    interact with her in a distinctively hostile manner.

3          Your Honor, the law is very clear in the area of

4    constructive discharge that constructive discharge can only be

5    established where conduct is alleged that is so egregious and

6    so outrageous that no reasonable person would continue to be

7    employed under those circumstances.  The allegations, assuming

8    everything is true, set forth in the complaint fall far short

9    of that stringent standard for the establishment of

10   constructive discharge.  So for the additional reason the

11   second cause of action should be dismissed.

12          As I noted at the outset the third cause of action,

13   which was for hostile work environment, was voluntarily

14   dismissed.  However, in the papers submitted in opposition to

15   our motion to dismiss plaintiff has proposed adding a new third

16   cause of action and has moved for permission, the Court's

17   permission, to file an amended complaint.  That proposed third

18   cause of action and leave to file the amended complaint, Your

19   Honor, respectfully -- we respectfully submit should be denied.

20          THE COURT:  Let me just ask you procedurally

21   something.

22          MR. BAER:  Yes.

23          THE COURT:  In effect, this is a preemptive motion to

24   dismiss a count which hasn't yet been lodged as part of an

25   amended complaint.

1        MR. BAER:  Your Honor, as plaintiff acknowledges, the

2    leave to amend the complaint should be denied when the

3    amendment would be futile.  We have addressed the proposed

4    amendment in our papers to demonstrate that the amendment is,

5    in fact, futile.

6        THE COURT:  I'm just dealing with a very, very narrow

7    procedural question, and it may be that the parties have agreed

8    that the motion to dismiss that we're now hearing should extend

9    to Count 3.  I want to be clear that this is ripe at the moment

10   for adjudication.  In effect, you're preemptively seeking to

11   block the filing of an amended complaint that includes Count 3

12   on the grounds that Count 3 could not be setting forth

13   cognizable relief as a matter of law, and, so, leave should not

14   be granted because it would be futile to do that.  My question

15   is whether that's ripe for adjudication now.

16        MR. BAER:  Your Honor, the only issue that is ripe for

17   adjudication is whether or not plaintiff should be granted

18   leave to amend.  I've attempted to address that question by

19   arguing that such an amendment would be futile.  In order to

20   actually address the underlying issues as to futility I did

21   argue that -- I did argue the substance of the law surrounding

22   the proposed third cause of action, so that Your Honor is quite

23   right that the issues that are being addressed by defendants

24   here today are, in fact, the very same issues that would be

25   addressed were the Court to grant leave to amend the complaint

Page 20

1    and were the proposed cause of action, as set forth in the

2    proposed amended complaint, were filed.  It may be expeditious,

3    Your Honor, at this time, particularly if plaintiff's counsel

4    would consent to that procedure, to address the matter, but I

5    certainly believe that procedurally, today, as we stand here

6    today, the posture is such that the Court -- the issue of

7    futility is ripe for adjudication.

8            THE COURT:  I'll hear what you have to say.

9            MR. BAER:  Thank you, Your Honor.  The third cause of

10   action, the proposed third cause of action, is a cause of

11   action for breach of the implied covenant of good faith and

12   fair dealing which is embedded in contracts in the State of New

13   York.  The plaintiff, in particular, relies on the commitment

14   letter, the renewal commitment letter, and this Court's

15   retention order in support of its claim for breach of the

16   covenant of good faith and fair dealing.

17           It's well established under New York law that a breach

18   of the covenant of good faith and fair dealing cannot be used

19   as a surrogate, if you will, for a breach of contract claim.

20   If there is no underlying breach of contract there is,

21   necessarily, no breach of the implied covenant of good faith

22   and fair dealing.

23           So let me parse this out, if I may, in accordance with

24   the way the plaintiff has pled the mater.  With respect to the

25   commitment letter there's absolutely no allegation that the

Page 21

1   defendants did, or that LBHI, in particular, did not live up to

2   its commitments.  It paid Ms. Uvino exactly what the commitment

3   letter called for.  In fact, she was awarded the maximum

4   possible bonus compensation that she could have received under

5   that commitment letter.  So there's no underlying breach, and

6   there is no breach of the implied covenant of good faith and

7   fair dealing.

8          Again, this is an effort by Ms. Uvino to rewrite the

9   terms of the agreement because she was dissatisfied with the

10  terms of her compensation.

11         THE COURT:  But aren't you assuming away something?

12  There was a handwritten notation in the original commitment

13  letter that apparently reflected the course of dealing leading

14  up to the execution of the document and suggesting that this

15  employee had an expectation that she'd be subjected to a

16  performance review early in the process that would lead to

17  greater compensation.  So, fairly read, I think the complaint

18  suggests that there was, at least, a breach of that

19  understanding.

20         MR. BAER:  Your Honor, the handwritten notation to

21  which you refer is set forth on the last page of the commitment

22  letter, which is attached as Exhibit C to the complaint.  The

23  amendment reads, and I quote, the handwritten amendment, "The

24  parties agree to engage in a performance review no later than

25  June 30, 2009 for consideration of a potential increase in

1    bonus potential".

2         THE COURT:  So, presumably, looking at that most

3    favorably to the plaintiff, she had an expectation, based upon

4    that notation and, presumably, also based upon the

5    conversations that preceded the notation, that even though she

6    was signing onto a bonus program that she thought was less than

7    fair from her perspective that she was going to have an

8    opportunity to reengage the compensation process early on.

9         MR. BAER:  Yes, Your Honor.  And, in fact, the

10   complaint and the attached documents to the complaint confirm

11   that that, in fact, did happen.  Exhibit D to the complaint is

12   an e-mail exchange between Ms. Uvino and Mr. Hershan in March

13   of 2009, just three months into the year and -- so five months

14   after the commitment letter was signed -- in which Ms. Uvino

15   does, in fact, raise issues related to her compensation and

16   makes arguments in favor of her position that she should be

17   paid more.  And Mr. Hershan responds by saying the matter is,

18   in fact, under review.  The allegations of the complaint

19   further expand on this that there were discussions ongoing

20   throughout 2009 where the issue of compensation was raised.  In

21   fact, there was also a performance review completed, a formal

22   performance review completed for Ms. Uvino, and the outcome of

23   all of that is the offering to Ms. Uvino of the renewal

24   commitment letter, which kept base salary at the 240,000 dollar

25   per annum level and provided an opportunity for a bonus that

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 23 of 46

Page 23

1    was increased by 10 percent, from 200,000 dollars a year,

2    20,000 dollars annually, to 220,000 dollars.  That was

3    consistent with Your Honor's order, by the way, in the

4    retention program that such a ten percent increase in bonus

5    potential could be provided.

6            The fact of the matter is the handwritten amendment

7    was, in fact, complied with.  The handwritten amendment says

8    we'll revisit the subject.  We'll talk about the potential for

9    increased bonus compensation or increased bonus potential.

10   There was never an agreement that you will receive an increase

11   upon a review, and there's no dispute as to that.  These are

12   documents attached to the pleading, and, so, they're fairly

13   before the Court on this motion.  And, so, whatever her

14   expectations were, certainly as to the contractual commitments

15   they were met, and that's clear from the face of the documents.

16   Ms. Uvino's subjective belief that that review as to a

17   potential increase in bonus potential might, actually, result

18   in an increase in bonus, is really not at issue here.  What's

19   at issue here are the writings and the terms of the commitment

20   letter.

21           THE COURT:  I hear what you're saying, but it seems to

22   me that part of what's embedded in the plaintiff's complaint is

23   that she was induced to work relying upon the expectation that

24   that performance review would result in a bonus increase.

25           MR. BAER:  Your Honor, that may be her subjective

Page 24

1    expectation.  If one looks at the document itself it's very

2    clear that there would be a performance review that would

3    consider the potential increase in bonus potential.  Those are

4    the exact words of the document.  The document also contains a

5    fairly standard zipper or integration clause that provides that

6    the letter represents the complete agreement between you, Ms.

7    Uvino, and LBHI with respect to your compensation and other

8    matters addressed in this letter and that this letter replaces

9    any prior written or oral agreements or understandings.

10            Whatever Ms. Uvino might have subjectively believed is

11   really of no moment for purposes of this motion, because the

12   words here quite clearly establish that the only thing that was

13   going to happen was that there was going to be a conversation

14   sometime on or before the middle of 2009 during which there

15   would be consideration of a potential increase in bonus

16   potential.  I mean, it's potential potential.  It's a double

17   potential.  It's quite indefinite, Your Honor.  I don't mean to

18   be glib or flippant about it, but it is by no means an

19   agreement to increase compensation that anyone can reasonably

20   rely on.

21            THE COURT:  Well, it's true that it's not an agreement

22   but it -- the fact that it was handwritten in, in a somewhat

23   informal way, suggests that it was a last minute inducement to

24   get her to work and I don't know what discovery would show as

25   to that or how this handwriting came to be or what others, like

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 25

1  Mr. Hirshon, would say went on between the parties as they

2  wrote something extra into the first commitment letter.

3          MR. BAER:  Your Honor, paragraph 10 of the commitment

4  letter, which I just read into the record, it makes it quite

5  clear that whatever those conversations may have been they are

6  irrelevant because the understanding, express understandings

7  and their only enforceable understandings are the

8  understandings set forth in this document.

9          THE COURT:  What if the document included that

10  integration clause and there was this handwritten note with the

11  very same words that was stapled to the back of it instead of

12  written into it?  They're the same words at the same time.

13  It's not at all clear to me that the integration clause covers

14  something that may have been written into the document after

15  that clause was typed into the piece of paper.

16          It's a standard form commitment letter that I gather

17  was used countless times with employees hired by LBHI.  But

18  this is an extra added attraction.  It's -- the handwriting

19  that I'm focused on, in part because it's not clear to me that

20  there's no basis for the plaintiff to make a claim based upon a

21  breach of the implied covenant of good faith and fair dealing

22  as it relates to that line.

23          MR. BAER:  Your Honor, the fact that the letter may

24  have been typed before the handwriting appeared on it should

25  not be dispositive to this Court.  The fact of the matter is

Page 26

1    that before Ms. Uvino placed her signature on the very same

2    page that the integration clause appears, subsequent to the

3    writing of the handwritten notation, is what should be

4    dispositive to this Court.

5         It is clear that based upon the documents attached to

6    the complaint that the parties lived up to the obligations set

7    forth in that handwritten sentence, which is to have a review

8    process during which there was a consideration of a potential

9    increase in bonus potential.  This is, by no means, a

10   definitive agreement that your compensation will be increased

11   as a result of that review.  The documents show an exchange,

12   show a give and take and the allegations set forth in the

13   complaint certainly show a give and take of discussions where

14   Ms. Uvino pled her case, if you will, for increased

15   compensation.  And Mr. Hirshon, and others responsible at the

16   debtors, did not accede to the request other than to provide a

17   ten percent increase in bonus opportunity for the coming

18   commitment period, and that's with respect to the letter that

19   was not signed.

20        If I may move on to the other bases for the breach of

21   the covenant, the implied covenant of good faith and fair

22   dealing.  Ms. Uvino also relies on the renewal commitment

23   letter for her breach of the implied covenant of good faith and

24   fair dealing.  The covenant only applies in connection with

25   contractual agreements.

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 27 of 46

Page 27

1          On the one hand, with respect to her first cause of

2     action for quantum meruit, well she says I can pursue that

3     because that really wasn't a valid and binding agreement, I

4     never signed it.  On the other hand, with respect to the breach

5     of the covenant of good faith and fair dealing, she's claiming

6     that the terms of the renewal commitment letter were breached,

7     or the implied terms of the covenant of good faith and fair

8     dealing under the renewal commitment letter were breached.

9          In the absence of a binding, contractual agreement,

10     that's just not a cause of action that would survive any motion

11     to dismiss.  There's no cause of action in the absence of an

12     agreement.

13          The same argument, Your Honor, could be made and we

14     are asserting the same argument with respect to the retention

15     order, this Court's retention order.  That is not a contractual

16     commitment between plaintiff and LBHI; it's an order of the

17     court.  The law's clear that that does not create a contractual

18     commitment.  And so any violation of the implied covenant of

19     good faith and fair dealing that -- for allegedly violating the

20     terms of that order, just, you know, is without basis in law

21     because there is no underlying contractual obligation.

22          The facts underlying that particular alleged breach,

23     again are constructive discharge.  So to the -- so for the

24     additional reason that the conduct alleged, which falls far

25     short of the very high standard for establishing constructive

Page 28

1    discharge as a matter of law, makes that particular aspect of

2    the proposed third cause of action also dismissible for that

3    additional reason.

4            Finally, I just would like to address the impropriety

5    of including the nondebtor defendants in this matter.  With

6    respect to the quantum meruit claim, the only party alleged is

7    LBHI and that is appropriate.  With respect to the constructive

8    discharge claim, the -- that's alleged against LBHI, Alvarez &

9    Marsal and Robert Hirshon to the extent that that second cause

10   of action seeks to rely on breach of -- first of all, there's

11   no free-standing cause of action for constructive discharge.

12   Secondly, to the extent that it seeks to rely on the contract,

13   the contract wasn't between Alvarez & Marsal, Robert Hirshon

14   and Ms. Uvino, the contract was between LBHI and Ms. Uvino.  So

15   they're not properly pled as to that cause of action.

16           Similarly, with respect to the proposed third cause of

17   action, which clearly relies on the commitment letter, the

18   renewal commitment letter and this Court's order, there's no

19   privity of contract between Alvarez & Marsal and Robert Hirshon

20   and Ms. Uvino.  So for those reasons, to the extent any of this

21   survives, the only defendants in this matter should be LBHI and

22   not A&M and not Mr. Hirshon.  Thank you, Your Honor.

23           THE COURT:  Okay.  Thanks.

24           MR. ROSEN:  May I, Your Honor?

25           THE COURT:  Sure.

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 29 of 46

Page 29

1          MR. ROSEN:  Your Honor, let me start with your

2    comments and with the language in the agreement.  On a factual

3    basis I have large disputes with most of what was said.  There

4    was a clear breach of that agreement.

5          That agreement called for a performance review by June

6    30th of 2009, it never happened.  You have the e-mail from my

7    client in August of 2009 asking what's going on.  The real

8    conversations about remuneration didn't happen until January of

9    the next year.  She doesn't get her performance review until

10   November, when everybody got them.  So they completely ignored

11   that provision of the contract.  They said, yeah we'll look

12   into it but they didn't look into it, they didn't sit down with

13   her and they didn't do the review.  And it's admitted that they

14   didn't do the review because the review's not done until

15   November.

16          So in point of fact, there was a breach of that

17   agreement by Lehman Brothers, at the very least there were two

18   possible dates for that breach.  One is at the beginning of

19   that agreement because when they induced her to sign that

20   agreement they had no intent to perform.  That's something that

21   discovery will bring out.

22          Secondly, clearly as of June 30th they were in breach

23   of that agreement and she was entitled to whatever her remedies

24   were.  For them to rely on that agreement and say because

25   there's a contract for the first eighteen months, so you cannot

Page 30

1    have a quantum meruit claim because it's governed by the

2    contract, when they ignore the one provision that was in that

3    agreement to up her compensation is ludicrous and I think you

4    focused in on the issues of what went on in the negotiation.

5           And there's more to it, Your Honor, because, and it's

6    something that's completely missed in their papers and they

7    don't talk about it, we cite the cases in.  These people were

8    court retained by this Court.  This Court, under your retention

9    order always has the jurisdiction and the ability to assess

10   quantum meruit for an administrative claim against this estate.

11          You retain that jurisdiction in that order and you

12   still, to this day, have that jurisdiction in there.  And

13   interestingly enough here, that provision that they handwrote

14   in, if you read your order, since they were varying the process

15   and remember they gave it to her two or three weeks before they

16   made the motion.  They gave it to her on October 16th; motion

17   isn't dated till October 28th.  I'm not quite sure when it was

18   heard and actually no one attached it, and I'm equally at fault

19   for this, a signed copy of the order, just the proposed order.

20   Let's assume it was entered a month or so thereafter.

21          So at the time they were queuing all this up and they

22   did everything, they knew that they were varying her agreement.

23   She didn't know it yet because she hadn't seen the motion or

24   the order, I assume it was being drafted at that point.  And

25   they had to -- under that order they had to go back to the

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
Pg 31 of 46
LEHMAN BROTHERS HOLDINGS INC., et al.

Page 31

1    creditors' committee and get approval to vary anything.

2         Now, I don't know if they ever talked to the

3    creditors' committee, that's something that would come out.  I

4    don't know if the creditors' committee knew about this or said

5    yes or no to it.  I don't know what happened there and one of

6    the things that should have happened on that performance review

7    is if they were looking at and they really were making

8    decisions, at some point they should have either, because they

9    had this provision obligating them to do that, it should have

10   been discussed with the creditors' committee.  And discovery

11   will show whether or not they had engaged in any good faith to

12   go through that process.

13        And Your Honor, when the performance review comes down

14   in November, six months late, what does it say?  Excellent.

15   Excellent.  And when you look at the job description, but -- it

16   wasn't -- so she was induced, and this is part of her damages,

17   she wanted to know in June of 2009 what was going to happen

18   with her.  So by them -- I won't use any colloquialisms but by

19   them holding off and not letting her know until January of next

20   year when they were doing, she lost six months in the job

21   market.  I mean, she was entitled -- this was a retention

22   program, she had bargained to know at some point at an earlier

23   date what was going to happen with her and they ignored that

24   and didn't give it to her and she lost six months out of her

25   life working there when she could have been out looking in the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 32

1    job market.  And that was a time when you needed the time to

2    look in the job market instead of waiting until January.  So

3    right then and there they were in breach and she's damaged from

4    that and she's entitled to a review and a quantum meruit claim

5    on that.

6            Your Honor, in addition --

7            THE COURT:  Let me break in and ask you a question.

8            MR. ROSEN:  Sure.

9            THE COURT:  Because I'm feeling that a lot of what

10   you're saying crosses the border into the land of speculation.

11   If she'd had a performance review in June and the review was

12   the same review that she had six months later, in other words

13   excellent, there was also no obligation to increase her bonus

14   compensation.  Excellent but we're in bankruptcy, we have to

15   guard our dollars for the benefit of creditors, we can't give

16   you a bonus but we appreciate all the good work you've done.

17   Let's just say that happened.

18           MR. ROSEN:  Her answer would have been, Your Honor, as

19   we allege in the complaint, they told her that in the beginning

20   and then they went back and rehired where they had given her a

21   cut in -- where they had promoted her, gave her more

22   responsibilities, given her a cut in pay, they were then going

23   out and rehiring old Lehman people at their old salaries plus

24   giving them bonuses.  And she would have had an argument under

25   good faith and everything else that you're not dealing with me

Page 33

1    fairly, you're dealing with me differently than you're dealing

2    with all the other Lehman employees.  Or she could have walked

3    at that point because she would have known.

4              THE COURT:  Well whether she could have walked or not

5    it's still speculation as to what she would have done or could

6    have done.

7              MR. ROSEN:  But the speculation is caused by their

8    breach not by hers, Your Honor.  And she had a bargained-for

9    provision and they took that away from her.  So whatever -- for

10   us to say would have, could have, we don't know, that

11   uncertainty is caused by them breaching something that she

12   bargained to get.

13             THE COURT:  Couldn't she just as easily, July 1 of

14   that year, said I never got my performance review; I don't like

15   working here; you breached my agreement; I'm going out into the

16   job market.

17             MR. ROSEN:  Because they kept her dangling, Your

18   Honor.

19             THE COURT:  Excuse me?

20             MR. ROSEN:  Because they kept her dangling.  She could

21   have but she had a contractual right to that.  Anybody can

22   always do that.  They can always give up their rights and walk

23   away.

24             THE COURT:  Well, it seems to me it's a breach of a

25   covenant that doesn't have any teeth in it because, and I'm

Page 34

1    just doing to you what I did to your adversary.

2             MR. ROSEN:  I fully expect it, Your Honor.

3             THE COURT:  You have --

4             MR. ROSEN:  I've been before you enough.

5             THE COURT:  You have a handwritten little notation but

6    it doesn't offer any binding and enforceable rights.

7             MR. ROSEN:  Well Your Honor, there is always -- but

8    you get into the -- it is ambiguous and you get into the parole

9    evidence rule and you get into everything you talked about.

10   And let's not forget something; this is a motion to dismiss.

11   This isn't a motion for summary judgment.  My allegations have

12   to be accepted as true for the purposes of what went on here,

13   all right.  And the fact of the matter is there is no doubt

14   that we have alleged a breach and that they do not deny,

15   anywhere in their papers, that there was a breach of that

16   provision.

17            What flows from that breach, what went into it, what

18   the intent was, all right, what was involved in it, what my

19   options were, those are matters for discovery to be flushed out

20   further down the line, not to be dealt with on a motion to

21   dismiss, because I don't know what they did and why they did it

22   because I'm on the outside.  And that's why you have discovery,

23   to find out what really went on here.  That's the answer I have

24   to your question, Your Honor.

25            THE COURT:  Okay.

1           MR. ROSEN:  Okay.  And Your Honor, you know, in all of

2      the cases -- and then the straight issue of her benefit to the

3      estate.  Let's not forget who this person was, all right.  When

4      they hired her, and this is something that will also come out,

5      they didn't tell her that they were about to hire 480 more

6      people.  They had the 240, they had the 145, they hired her for

7      her provision, they kept that under wraps and then they almost

8      tripled the number of people that she was dealing with.

9           So even under your order, Your Honor, there would be

10     the argument that there was a substantial change in her job

11     position that she was entitled to increased compensation for to

12     come back.  And she would have that claim independent of the

13     agreement because they changed her job description.  And

14     discovery would bear out that they did not let her know about

15     that before she signed this agreement.  She didn't find out

16     about it until after it was approved by the court and they

17     said, by the way you're hiring, training and involving 480 to

18     500 more people for the same salary that we promised you, which

19     is less than you were making before.  So there was that issue.

20          Then there was also -- and Your Honor all of the cases

21     in the Southern District of New York that have dealt with

22     quantum meruit have gotten to the merits, even the ones where

23     we lost.  You've got the Ralph Lauren case, you even have the

24     Enron case where Judge Gonzales went through all the factors,

25     found that the person who left had violated the stay because it

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 36 of 46

Page 36

1    was a pre-petition employment agreement but still went through

2    what benefit that person had conveyed to the estate and made

3    the determination on that basis and my client's entitled to

4    that.  Even if there were -- especially if there's a breach

5    under the contract they admit that she's entitled to it for the

6    six months when there is no contract that she worked because

7    she was not governed by that agreement.  They can't have their

8    cake and eat it too.  They can't say well there was no -- we

9    can't be in breach of a good faith covenant when there was no

10   contract in effect and then say but we're holding you to the

11   terms of the contract.

12         So during that period you've got to deal with and I

13   think, at the very least, from the time they breached on her

14   performance review, you get to look at that period also.  And

15   she'll be happy.  You'll remember she was a defendant; she was

16   also the head of the employee benefits fund.  She was a

17   defendant in, I think, a forty million dollar lawsuit.  Mean,

18   this is somebody who was front and center on the reorganization

19   of this.  And part of what happened in January, to get to the

20   constructive discharge allegations, you know, what constitutes

21   a hostile work environment changes a lot on the job.  If you're

22   the head of HR for Lehman Brothers and you are completely

23   ignored by the person running the company and publicly

24   chastised in front of other people, your authority -- it

25   doesn't take very much to completely undermine your authority

Page 37

1    to do your job.

2          And when you give advise, as we allege in the

3    complaint, that they can't do certain things to employees under

4    the law and the person wants to do it and then you're berated

5    for it, it destroys your -- it really does destroy your ability

6    to do your job.  And, you know, I've known Wendy Uvino for a

7    long time now, she's incredibly competent, she's very thorough

8    and she's got a problem not being permitted to do her job as

9    she sees fit.  And, you know, she stood by this company through

10   a lot in terms of that, including being wiped out personally.

11   I mean, I'm here as her individual Chapter 11 attorney because

12   they were ruined by this case and going forward.

13         Your Honor, moving forward on the other claims, I do

14   not agree, procedurally, to answer your procedural question,

15   that the dismissal of our proposed amended complaint is right.

16   Just on a procedural basis I do not have a right to reply.  We

17   made that motion, they -- in our responsive papers we raised it

18   on that they put in, under the briefing schedule, they put in

19   the other documents.  I think you've raised, for the issues

20   also, there are underlying issues but that motion, I don't

21   think in terms of a dismissal of that, has ever been fully

22   briefed the way it should be for due process concerns and being

23   in front of this Court.  I do not think it's right.

24         Well, just so we can treat this as a complete

25   package --

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 38 of 46

Page 38

 1              MR. ROSEN:  Yes, Your Honor.

 2              THE COURT:  -- how much time do you need to file a

 3   supplemental brief, if you choose to do that?  Or is it your

 4   position that everything raised in the reply papers as to Count

 5   III should simply be disregarded until such time as there is a

 6   separate hearing in connection with your motion for leave to

 7   amend to add Count III?

 8              We're all here, it just seems to me that it makes

 9   sense to streamline this and treat this as one argument

10   regarding the sufficiency of your complaint and the content of

11   your complaint.  And that if you need more time to submit a

12   supplemental --

13              MR. ROSEN:  Your Honor --

14              THE COURT:  -- brief, you can do that.

15              MR. ROSEN:  -- I think we're here.  I don't want to

16   cost this estate more money and I don't want to cost my estate

17   more money and you certainly have enough to do with this case

18   that I think that we can deal with all today.  I think the

19   issues are all before you and I think, you know, whether you

20   agree with me or the other side we won't know until you rule;

21   you've got the arguments on that.

22              THE COURT:  I'm just wondering whether or not you want

23   an opportunity to file anything that you haven't already filed?

24              MR. ROSEN:  No, not that I haven't filed and I think I

25   haven't said, Your Honor.

08-13555-mg   Doc 16088   Filed 04/13/11   Entered 04/18/11 10:49:58   Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 39 of 46

Page 39

1          THE COURT:  Okay.

2          MR. ROSEN:  Let me, one second, make sure that I've

3     covered everything, Your Honor.

4          Your Honor, the other issue that I have that goes to

5     the third cause of complaint, and it goes towards -- it goes

6     towards the amended complaint, since we're on that, in terms of

7     the fair -- the duty of fair dealing.  I think there's a higher

8     duty here and I think there's a higher policy issue.  I taught

9     in law school and I've had to argue -- you know, if you had to

10    argue policy issues you're in trouble but I think in this case

11    it really is important.

12         These are court retained professionals hired by a

13    turnaround firm to come in and I think there is a higher

14    duty -- he keeps referring back to New York law and other

15    matters, there have been a lot of bankruptcy cases that deal

16    with the bankruptcy professionals and the fact of the matter is

17    people who are going to come in to these cases, especially

18    prior employees, have to know that they're going to be dealt

19    with fairly.

20         Going back to your issue, the kind of so what

21    argument, on the language in the order -- I mean the language

22    in the agreement that said well they didn't have to agree to

23    anything, they could have said so what.  That's not the way a

24    fiduciary to the estate should work.

25         Yes, you've got a fiduciary duty to the creditors.

Page 40

1    Yes, you've got a fiduciary duty to administrative creditors

2    but you also have a fiduciary duty and the Court, because

3    you're working under the ages of the court, you've got a duty

4    to deal fairly with the estate professionals that are doing the

5    work.  And to induce someone to sign on and to stay with the

6    inference -- the only inference you can draw from that is that

7    we're going to review you six months and if you do something

8    good in six months, all right, then we're going to give you

9    more money.

10         My client wouldn't have bargained for that, to say

11   okay you do a great job -- we're going to tell you you do a

12   great job and we're going to pat you on the head and say good

13   now go do it again for more.  That's not the expectation raised

14   by that agreement, then there would be no need to have put that

15   into an agreement and once it was in I think they had an

16   obligation to go forward and deal with my client in good faith.

17   And we allege, and I think we've alleged it sufficiently for

18   purposes of a motion to dismiss, that they breached that duty.

19   And that's something that needs to be -- and I think it goes,

20   you know, a little bit beyond this case, it's kind of a message

21   in terms of how do you deal with estate professionals.  Thank

22   you, Your Honor, unless you have any questions.

23         THE COURT:  Okay.  Thank you.

24         MR. BAER:  Your Honor, may I be heard in rebuttal?

25         THE COURT:  Sure.

Page 41

1          MR. BAER:  First of all, Ms. Uvino's counsel -- I'll

2     try to be brief, just hit a couple of points.  Ms. Uvino's

3     counsel talks about or alleges that Lehman never intended to

4     honor the terms of that agreement when it entered into it.

5          Respectfully, the cause of action -- the cause of

6     action on the contract is one for quantum meruit; it's not for

7     fraudulent inducement.  The -- so to the -- Lehman's

8     representations and subjective intent and all the rest have --

9     are really not pled in this complaint and are not subject to

10    the motion to dismiss.

11         The point raised by counsel that this court retain

12    jurisdiction, on a quantum meruit basis, to recalibrate Ms.

13    Uvino's salary at any time under the terms of the retention

14    order are just patently false.  The fact of the matter is the

15    retention order gave Lehman the authority to enter into an

16    agreement, which is did with Ms. Uvino.  The terms of the

17    agreement establish the terms and conditions of employment and

18    this Court did not retain jurisdiction in its order to deal

19    with any disgruntled employee who felt well, you know, I really

20    wasn't paid enough so I'm going to go back to Judge Peck and

21    see if I can get a little more.  That's not what this Court's

22    retention order provided.

23         With respect to the quantum meruit decisions that

24    counsel refers to, the Ralph Lauren decision, the Enron

25    decision, in which I was personally involved, those issues --

08-13555-mg    Doc 16088    Filed 04/13/11    Entered 04/18/11 10:49:58    Main Document
LEHMAN BROTHERS HOLDINGS INC., et al.
Pg 42 of 46

Page 42

1    those quantum meruit issues involved employment agreements that

2    had not been assumed by the debtor.  Those were prepetition

3    agreements that were not yet assumed so they weren't valid,

4    extant, contractual obligations.  Those contracts were looked

5    to by the Court as a measure of value because the parties,

6    prior to the bankruptcy petition, had agreed to terms and

7    conditions of compensation that arguably establish the value of

8    the employment relationship.  So quantum meruit in those cases

9    did not involve valid, binding and existing agreements.  Here

10   there's no dispute, the commitment letter's a post-petition,

11   valid, binding contractual agreement and quantum meruit is not

12   available as a remedy in such a -- where such a contract

13   exists.

14          With respect to constructive discharge, Mr. --

15   plaintiff's counsel has alleged that there was a hostile work

16   environment.  First of all, he's dropped that claim.  Second of

17   all, he said -- I think he used the word berate.  Nowhere,

18   nowhere in the complaint will you find berate.  You'll find

19   conduct alleged to have been -- that she was ignored, that

20   communications were funneled through an associate.  That Mr.

21   Hirshon was too busy to deal with her; priorities and that when

22   he responded to her he was distinctively hostile.  Those do not

23   amount to berating Ms. Uvino.  Nowhere in the pleading does it

24   say that she was berated.

25          Finally I would just like to address the so-called

1  policy issue raised by plaintiff's counsel.  Respectfully, Your

2  Honor, what plaintiff's counsel is asking you to do is create

3  new law in the state of New York.

4        The law in the State of New York is well established

5  by the decisions of the highest court in the State of New York,

6  that there is no tort for abusive discharge, there is no cause

7  of action for abusive discharge, there is no implied contract

8  or no implied obligation of good faith and fair dealing with

9  respect to employees at will.  And that is exactly what

10  plaintiff's counsel is asking you to do, is to create that

11  obligation.

12        The court of appeals, itself, has refrained from

13  creating that obligation expressly stating in its many

14  decisions that were the employment at will rule to be so

15  modified, that would be a job for the New York State

16  Legislature.

17        Finally, with respect to fiduciary duties raised, the

18  argument regarding fiduciary duties; plaintiff's counsel is,

19  again, just simply wrong.  There is no fiduciary duty embedded

20  in the commitment letter here and there is no fiduciary duty

21  that runs from the bankruptcy professionals to Ms. Uvino under

22  the terms of the operative documents.  So again, I think

23  plaintiff's counsel is off base on those.

24        Finally, with respect to the issue of the motion to

25  amend; it appears that plaintiff's counsel has consented that

Page 44

1    all matters should be joined so that the Court could properly

2    consider the underlying merits of our arguments addressing the

3    proposed, third cause of action.  Thank you, Your Honor.

4         MR. ROSEN:  One point, Your Honor.

5         THE COURT:  Okay.

6         MR. ROSEN:  I'm assuming this is in the signed order,

7    the last paragraph of the retention order says that "This Court

8    shall retain jurisdiction to hear and determine all matters

9    arising from or related to the implementation of the retention

10   recruitment program or disputes arising under individual

11   employment agreements".  Thank you, Your Honor.

12        THE COURT:  Okay.  I'm going to take this under

13   advisement.  I am concerned about the handwritten notation in

14   the initial letter and it would appear that even the debtor

15   acknowledges that there is at least some room for quantum

16   meruit with respect to the unsigned letter.  It's a question of

17   parsing the period applicable to quantum meruit analysis.

18        I'm frankly concerned that Mr. Hirshon and Alvarez &

19   Marsal are defendants in this matter and I don't understand why

20   the parties can't meet and confer while this is pending, to

21   consider dropping them from the litigation.  I don't know why

22   they need to be in the litigation inasmuch as the claim is a

23   claim against LBHI.

24        While you're involved in meeting and conferring with

25   respect to that procedural question, it seems to me that this

1    is a matter that might be constructively discussed on the

2    merits as well.  Both parties are spending significant legal

3    fees in the pursuit of something which I described earlier as

4    speculative.  I believe it is.  That doesn't mean that it's not

5    provable at some level.

6              So with those comments, I'm going to suggest that the

7    parties talk with each other and I'll consider what I'm going

8    to do in terms of the pending motion.  I'm treating the motion

9    to amend in conjunction with the motion to dismiss as either a

10   motion to dismiss the third count if I were to grant to leave

11   to amend or a pre-emptive request that the motion to amend be

12   denied on grounds of futility.

13             And we're adjourned.

14             MR. BAER:  Thank you, Your Honor.

15             MR. ROSEN:  Thank you very much, Your Honor.

16        (Whereupon these proceedings were concluded at 3:22 p.m.)

17

18

19

20

21

22

23

24

25

Page 46

1

2                           C E R T I F I C A T I O N

3

4      I, Lisa Bar-Leib, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7      _____

8      LISA BAR-LEIB

9      AAERT Certified Electronic Transcriber (CET**D-486)

10

11

12     Veritext

13     200 Old Country Road

14     Suite 580

15     Mineola, NY 11501

16

17     Date:  April 15, 2011

18

19

20

21

22

23

24

25