**<u>ANNEX B</u>**

## SECOND AMENDED AND RESTATED
## AGREEMENT OF THE AD HOC GROUP
## OF LEHMAN BROTHERS CREDITORS

WHEREAS, King Street Capital Management, L.P., Paulson & Co. Inc. and Fir Tree, Inc. (the "Initial Group Members") are parties to that certain Agreement of the Ad Hoc Group of Lehman Brothers Creditors, as amended and restated by that certain Amended and Restated Agreement of the Ad Hoc Group of Lehman Brothers Creditors (the "Agreement"), whereby the Initial Group Members have agreed to form an informal group (the "Ad Hoc Group of Lehman Brothers Creditors" or the "Group") for the purposes of participating in the chapter 11 cases of Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively with LBHI, the "Debtors"), being jointly administered by the United States Bankruptcy Court for the Southern District of New York (the "Court"); and

WHEREAS, in anticipation of expanding the Group, the Initial Group Members have agreed to further amend and modify the terms of the Agreement as restated herein.

NOW, THEREFORE, the Initial Group Members and any entity that subsequently becomes a Participant (as defined below) do hereby agree as follows:

## I.     The Group

1.1     The Group is comprised, as modified by resignations, additions or replacements pursuant to the terms of this Agreement, of the Initial Group Members, each of which, together with its affiliates, holds or otherwise has discretionary authority over the disposition of claims against LBHI (collectively with its Debtor and non-Debtor affiliates "Lehman"), including claims based on certain notes and/or guarantees issued by LBHI (collectively, "LBHI Claims"). As used herein, the term "affiliates" shall be deemed to include the funds and investment vehicles managed by a Participant (as defined below) from time to time.

1.2     Each member of the Group, whether an Initial Group Member or an entity that becomes a member of the Group pursuant to Section 14.1, shall be a "Participant". Every Participant is either a "Fee Participant" or an "Institutional Holder". As described in greater detail in Article VIII, Fee Participants shall be severally (but not jointly) responsible for paying the reasonable fees and costs of all Professionals (as defined below), including, without

limitation, Counsel and any financial advisor.  Institutional Holders shall not be responsible for paying any portion of the fees and costs of Professionals (as defined below), including, without limitation, Counsel and any financial advisor.

1.3    Each Initial Group Member is a Fee Participant.  An entity that becomes a Participant pursuant to Section 14.1 is a Fee Participant unless (a) the Steering Committee Participants, by unanimous vote, determines that such individual or entity may join the Group as an Institutional Holder and (b) such individual or entity has delivered the counterpart signature page of this Agreement marked "NEW PARTICIPANT – INSTITUTIONAL HOLDER" to Counsel (as defined below) when becoming a Participant pursuant to Section 14.1.

## II.    Participation

2.1    Any Participant may be represented at Group meetings or subcommittee meetings by one or more designated individuals (each, a "Representative").  A Representative, who may be an employee, an officer, or an inside or outside attorney of a Participant, may be appointed or removed by any Participant the Representative represents, or will represent through such appointment, by written notice to counsel to the Group ("Counsel").

2.2    If a Participant assigns, sells, or otherwise transfers all of its LBHI Claims to another entity, such Participant shall no longer be eligible to participate in the Group. Additionally, any Participant which fails to abide by the terms of this Agreement may be disqualified from further Participation in the Group in the sole discretion of Counsel.

## III.    Steering Committee

3.1    The steering committee of the Group (the "Steering Committee") shall initially be composed of the following two (2) Participants (each, a "Steering Committee Participant"): (a) King Street Capital Management, L.P., and (b) Paulson & Co. Inc.

3.2     The Steering Committee may, by an affirmative vote of a simple majority of both the aggregate principal amount of LBHI Claims (on a net basis) held by the Steering Committee Participants, and the number of Steering Committee Participants, voting in person or by proxy, (a) expand itself through the inclusion of an additional Participant to the Steering Committee, thereby making such Participant a Steering Committee Participant, and (b) contract itself through the removal of a Steering Committee Participant from the Steering Committee, at which point such Steering Committee Participant will cease to be a Steering Committee Participant; provided, however, that the initial Steering Committee Participants listed in Section 3.1 cannot be removed from the Steering Committee by such vote.

## IV.    Meetings

4.1     A meeting of the Group or of the Steering Committee may be held in person, by telephone conference call, or by a combination of the two and shall require the participation of a quorum of a simple majority of both the aggregate principal amount of LBHI Claims (on a net basis) held by the Steering Committee Participants and the number of Steering Committee Participants (a "Quorum") to be duly constituted.

4.2     Meetings of the Group or the Steering Committee, as the case may be, can be called by any Steering Committee Member or Counsel on at least one (1) day's notice to each Participant; provided, that if, in the reasonable discretion of Counsel, an emergency occurs requiring action, Counsel may call a meeting on at least two (2) hours notice, if at all practicable.

4.3     A Steering Committee Participant may vote at any meeting through its Representative or by written proxy.  A proxy shall be in writing, signed by the Representative of a Steering Committee Participant and specify the particular issue or issues to which it pertains.

4.4     An action by the Group may be taken only during a duly constituted meeting of the Group (except for any action under Section 3.2 or Section 13.1, which may take place at a meeting of the Steering Committee) at which a Quorum is present (except as provided in Section 4.8 hereof) and shall require the affirmative vote of a simple majority of both the amount of LBHI Claims (on a net basis) held by the Steering Committee Participants and the number of Steering Committee Participants, voting either in person or by proxy.

4.5     Amendment of any Section of this Agreement other than Section 4.4, this Section 4.5 and the proviso in Section 3.2 shall require an affirmative vote of a simple majority of both the amount of LBHI Claims (on a net basis) held by the Steering Committee Participants and the number of Steering Committee Participants, voting either in person or by proxy.  Amendment of Section 4.4, this Section 4.5 and the proviso in Section 3.2 shall require a unanimous vote of all the Steering Committee Participants.

4.6     Counsel shall tally and record the votes at a meeting of either the Group or the Steering Committee.  Counsel's determination of the votes with respect to any matter shall be final absent manifest error.

4.7     Due to the sensitive nature of matters that may be discussed by the Group, meetings of the Group shall not be open to persons other than Participants, their Representatives and professionals employed by the Group; provided, however, that the Group may, in its sole discretion, in accordance with the voting procedure set forth in Section 4.4 above, permit other persons to attend for special, limited purposes or as ex officio Participants.  Participants and all other persons attending Group meetings shall take all appropriate measures to preserve the confidentiality of all matters discussed at Group meetings.

4.8     Action may be taken without a Group meeting through a vote obtained by polling the Steering Committee Participants by telephone.  Polling shall be conducted by Counsel.  Such a vote shall be effective if:

(a)     a good faith effort is made to reach each Steering Committee Participant, either telephonically or personally;

(b)     at least a Quorum of Steering Committee Participants are consulted; and

(c)     a majority of both the amount of LBHI Claims (on a net basis) held by the Steering Committee Participants and the number of Steering Committee Participants, in each case, actually voting, has voted in the affirmative.

The vote and action taken shall be confirmed in writing to all Steering Committee Participants. Action shall be taken pursuant to this Section 4.8 only when it concerns an emergency matter on which Group action is required before a meeting can be called pursuant to Section 4.2 above.

## V.     The Functions of the Group

5.1     The Group may determine to take such action as it determines to be appropriate, including but not limited to the following:

(a)     select and employ attorneys, financial advisors, accountants, or other advisors, experts and agents to represent and perform services and assist in the exercise of the powers and duties of the Group;

(b)     consult with Debtors, the Official Committee of Unsecured Creditors of the Debtors, any other person or committee appointed by the United States Trustee or the Court concerning the administration of the Debtors' chapter 11 cases, or any other creditor or party in interest in the Debtors' chapter 11 cases;

(c)     investigate the acts, conducts, assets, liabilities, and financial condition of the Debtors, the operation of their respective businesses and the desirability of the continuation of such businesses, and any other matter relevant to the chapter 11 cases of the Debtors or to the formulation of a plan or plans of reorganization;

(d)     participate in the administration of the Debtors' chapter 11 cases, including, without limitation, appearing, through Counsel, at hearings before the Court and the submission of pleadings and formal documents with respect to matters affecting the Debtors; and

(e)     participate in the formulation of a plan or plans of reorganization for the Debtors, consistent with 11 U.S.C. § 1125, and advise similarly situated creditors of the Group's determination as to any plan or plans formulated; provided, however, the Group shall have no power to vote the LBHI Claims of any member to accept or reject a proposed chapter 11 plan.

5.2     The Group may express opinions and take positions on relevant issues as a Group, but only after a vote of the Steering Committee Participants.  Such opinions and positions shall not be construed as the opinions or positions of any individual Steering Committee Participant. The Group intends to generally proceed by consensus.  Nothing herein shall be construed to obligate any Participant to take or abstain from taking any action on its own behalf in its sole discretion except as specifically otherwise provided in this Agreement.

## VI.     Continuing Right of Participants to Act in Individual Capacity

6.1     While the Participants acknowledge that they are acting as a Group, nothing contained in this Agreement shall prevent any creditor of the Debtors, including the Participants,

from (a) exercising or seeking to enforce or protect any of its rights as an individual creditor as it may deem appropriate, or (b) otherwise affect the ability of any creditor to act or forebear from taking action in its capacity as an individual creditor as it may deem appropriate.

## VII.    Conflicts of Interest

7.1    Upon request of Counsel, which request may be made from time to time, every Participant shall disclose its interests with respect to the Debtors or interests adverse to the interests of holders of LBHI Claims in a written confidential communication to Counsel.  Any Participant possessing a direct financial interest in any matter may exclude itself from the meeting of the Group during its discussion of and vote on that matter.  Additionally, Counsel may exclude any Participant from a meeting or vote of the Group if such Participant has a direct financial interest in any matter, a conflict of interest, or an interest materially adverse to the interests of the Group and its constituencies.  Counsel's reasonable determination of such conflict of interest with respect to any matter shall be final.  Notwithstanding anything in this Agreement to the contrary, a Steering Committee Participant may be excluded from a meeting or vote of the Group or Steering Committee only if two-thirds in amount of LBHI Claims (on a net basis) held by the remaining Steering Committee Participants and the number of remaining Steering Committee Participants agree with Counsel's determination after consultation with Counsel.

## VIII.    Expenses

8.1    Each Fee Participant shall be severally (but not jointly) responsible for and pay its Share (as defined below) of the reasonable fees and costs of all professionals, including, without limitation, Counsel and any financial advisor, retained by the Group (each, a "Professional," and collectively, the "Professionals"), based upon such Fee Participant's percentage share of the

aggregate principal amount of LBHI Claims held by the all Fee Participants as determined on a monthly basis as of the date hereof and thereafter on the first business day of each calendar month (as determined below), but will not be jointly liable for such fees and expenses as a whole, regardless of deficit in payment by any Fee Participant.  To the extent that reimbursement of such fees and costs are approved by the Court and paid by the Debtors after payment by the Fee Participants, the Fee Participants shall be reimbursed pro rata from such payments based upon actual amounts paid by such Fee Participants.  Each Fee Participant shall remain severally (but not jointly) liable for its pro rata share of all expenses of the Group regardless of whether the Court approves the reimbursement of such expenses.

8.2    Each Participant shall provide confidentially to Counsel or its designee statements (each such statement, a "Statement") indicating, as of the start of business on the first business day of the month in which such Statement is provided, (i) the aggregate principal amount of LBHI Claims owned by such Participant, (ii) the aggregate principal amount of claims owned by such Participant against any subsidiary of LBHI (a "Non-BV OpCo Claim"), other than claims against Lehman Brothers Treasury Co. BV ("LBTBV"); and (iii) the aggregate principal amount of claims owned by such participant against LBTBV.[1]  In addition, in the case of an Institutional Holder, Statements shall include claims of the type referenced in clauses (i) through (iii) immediately above, the disposition of which such Institutional Holder has discretionary authority over.  Such Statements shall be provided to Counsel (i) if provided by a Fee Participant, on the date such Fee Participant joins the Group and, thereafter, on the first business day of every month (or, in each case, as soon thereafter as is practicable) and (ii) if provided by an Institutional Holder, on the date such Institutional Holder joins the Group and, thereafter, on the

---

[1]    For the avoidance of doubt, each Participant's Statement shall include such Participant's long and short positions.

first business day of every February, May, August and November (or, in each case, as soon thereafter as is practicable); provided, however, that, in addition to the foregoing, an Institutional Holder shall provide Counsel with a Statement upon Counsel's request.  With respect to claims owned by a Participant, ownership shall be determined on a net basis as of the "trade date" (as opposed to the "settlement date") of such claims giving effect to any long or short positions owned by such Participant.  Counsel or its designee shall use the Statements to determine each Fee Participant's percentage share of LBHI Claims ("Share"), such Share being equal to the principal amount of LBHI Claims (on a net basis) held by such Fee Participant as compared to the aggregate principal amount of LBHI Claims (on a net basis) collectively held by all Fee Participants in the Group (e.g., if a Fee Participant owns $25 million of LBHI Claims (on a net basis) and the aggregate amount of LBHI Claims (on a net basis) held by all Fee Participants in the Group is $500 million, such Fee Participant's Share is equal to 5%).  If a new Fee Participant joins the Group during any calendar month, each Fee Participant's Share shall be adjusted to account for such new Fee Participant's percentage share of LBHI Claims as if such new Fee Participant joined the Group on the first business day of the current month.

8.3    Counsel shall deliver to each Fee Participant a statement on a confidential basis indicating such Fee Participant's respective Share of the relevant Professional's fees and costs. Each Fee Participant shall promptly pay its respective Share.

8.4    Each Participant acknowledges that Counsel and each other Professional shall be employed by the Group to represent the interests of the Group as a Group and that such employment shall not constitute employment by or representation of any Participant in its individual capacity notwithstanding the payment of fees and reasonable out-of-pocket expenses by such Participant as set forth herein.

## IX.    Claims Notification Threshold and Protocol

9.1    Based on the Statements received by Counsel, Counsel will inform the Steering Committee if any Steering Committee Participant's (i) short position totals more than 5% of such Steering Committee Participant's Total Holdings[2] and (ii) any Steering Committee Participant's Non-BV OpCo Claims exceed 10% of such Steering Committee Participant's Total Holdings. Counsel will provide subsequent notification to the Steering Committee for each additional 10% threshold surpassed by a Steering Committee Participant. Counsel will not identify the specific dollar amount of a Participant's Non-BV OpCo Claims, but will inform the Steering Committee that a particular 10% threshold has been crossed (i.e. 10%, 20%, etc). Counsel will employ the same protocol to advise the Steering Committee of Non-BV OpCo Claims held by each Participant not on the Steering Committee, pursuant to threshold to be determined by the Steering Committee. In addition, in the case of an Institutional Holder, the reporting provisions contained in this Section 9.1 shall apply with respect to short positions and Non-BV OpCo Claims, the disposition of which such Institutional Holder has discretionary authority over.

## X.    Retention of Counsel and Professionals

10.1    The Group shall retain White & Case LLP as Counsel. Unless otherwise agreed to in writing, Counsel will charge the Group as its client for the services rendered based upon the amount of time spent on this matter by each lawyer or legal assistant that performs work in connection with the services and such firm's hourly time charges in effect for each such person at the time such work is performed. In addition, Counsel will charge the Group for those reasonable out-of-pocket office costs and reasonable out-of-pocket expenses which it incurs and are customarily billed by such firm, including reasonable out-of-pocket charges for photocopies,

---

[2]    "Total Holdings" shall mean the aggregate amount of a Participant's (i) LBHI Claims; plus (ii) Non-BV OpCo Claims; plus (iii) claims against LBTBV.

telephone, courier services, and facsimile transmissions, as well as any reasonable applicable travel charges.

10.2    Additional Professionals may be retained at the discretion of the Steering Committee subject to the terms and conditions as determined and agreed to by the Steering Committee.

## XI.    Sharing Joint Claim and Defense Materials

11.1    The Participants agree that they shall reasonably cooperate with each other as each Participant may reasonably deem appropriate and shall abide by this Agreement in the joint defense and pursuit of the Participants' common interests to the extent permitted by law pursuant to the joint defense and/or common interest doctrines recognized by the various state and federal courts.  Each Participant agrees not to disclose information or work product received from the Group, Counsel or any other Professional or the results of any deliberations by the Group (collectively, the "Confidential Joint Defense and Prosecution Material") until such time as the Group concludes its functions, unless required by (i) a court of competent jurisdiction, (ii) a federal, state or local governmental body or (iii) applicable law or regulatory authority.

## XII.    Participation by Unrestricted Members

12.1    Nothing herein shall cause any Participant to become restricted with respect to the purchase and sale of securities of LBHI, any of its affiliates or any other issuer, and to the extent any Participant is at any time in possession of material, non-public information regarding LBHI, its affiliates or any other entity, it shall not disclose such material non-public information to any other Participant without such other Participant's prior written consent.  Each Participant acknowledges that Counsel, other Professionals and any Participant that elects to become restricted by executing an appropriate confidentiality agreement with LBHI or its representatives (a "Restricted Participant") may come into possession of material non-public information of

LBHI or its affiliates ("LBHI Confidential Information").  Each Participant, other than a Restricted Participant, hereby agrees that, notwithstanding its status as a Participant, it shall have no entitlement to receive Confidential Joint Defense and Prosecution Materials containing LBHI Confidential Information and hereby further waives any right to compel Counsel, any other Professional or any Restricted Participant to disclose LBHI Confidential Information.  To the extent Counsel comes into possession of LBHI Confidential Information, Counsel agrees to use commercially reasonable efforts not to distribute LBHI Confidential Information to any Participant.

**XIII.  Agreement Regarding Joint Defense and Effect of Exchange, if Any, of Confidential or Privileged Information**

13.1    This Agreement is not intended to, and it is understood will not, void or waive the protections afforded under the attorney-client privilege and work product doctrines, or other applicable privileges.  The Participants agree that Confidential Joint Defense and Prosecution Materials will be protected from disclosure by the attorney-client, attorney work product or other applicable privileges, even if such materials are exchanged between or among counsel and other representatives or consultants for the Participants.  Participants will instruct all of their representatives and consultants that receive any Confidential Joint Defense and Prosecution Materials to comply with this Agreement.

13.2    The Confidential Joint Defense and Prosecution Materials disclosed to or exchanged among Participants pursuant to this Agreement shall not be used in any proceeding against the Group or any Participant.

13.3    Without limiting Counsel's ethical and professional responsibilities under applicable law, codes and rules, Counsel agrees to use commercially reasonable good efforts to

maintain the confidentiality of any confidential information involving either the Group as a whole or any individual Participant.

13.4     Nothing contained in this Agreement is intended to create any attorney-client relationship with a Participant acting in its individual capacity for the purposes of conflicts or otherwise.  Each Participant understands that its individual counsel's sole responsibility is to represent the individual Participant and that none of the counsel for other Participants has in any way assumed any such responsibility.  Moreover, the participation in, execution of, or receipt of any information pursuant to this Agreement shall not disqualify any Representative from accepting any other future engagement.

13.5     The Participants and their respective counsel further agree that in the event that any Participant decides to enter into separate discussions with any of the Debtors, related parties, or governmental entities, nothing in these Agreements shall create a conflict of interest so as to require the disqualification of any Participant's counsel from the representation of its respective clients, and the Participants hereby waive any such conflict of interest.  It is agreed that no Participant's counsel shall be disqualified from examining or cross-examining any person affiliated with a Participant who testified at any proceeding regarding the Debtors, because of the Participant's participation in the Group, and it is represented that each Participant has consulted with counsel regarding the terms of this Agreement, including this provision.

13.6     Each Participant acknowledges that Counsel has in the past and may in the future represent interests other than the Group in matters relating to Lehman.  Accordingly, Counsel's assistance to the Group is subject to review in the event that contentious proceedings on behalf of the Group become advisable.  Furthermore, in the event that an issue arises that Counsel determines may adversely affect its duty of loyalty with respect to any matter involving a

Counsel's representation of a Participant in Lehman, Participant agrees that Counsel may withdraw from its representation of Participant and continue to represent the Group.  In the event that any conflict of interest arises with respect to Counsel's representation of the Group, Counsel will notify the Steering Committee within one business day of learning of such conflict of interest.  Nothing in this Section 13.6 will be deemed to permit counsel to represent any interests directly adverse to a Participant in any arbitration or litigation to the extent any retainer letter that Counsel may have with any Participant Counsel decides to no longer represent prohibits any such representation.

13.7    Nothing in this Agreement creates or is intended to create any fiduciary obligation or duty by any Participant to, or any fiduciary relationship between any Participant and: (a) the Group; (b) any other Participant(s) or (c) any other party.

**XIV.**   **Additional Parties and Removal**

14.1    An entity, other than the Initial Group Members, can become a Participant, thereby joining the Group and becoming bound by the terms of this Agreement, only upon (a) if such entity is to become a Fee Participant, (i) the affirmative vote of a simple majority of both the amount of LBHI Claims (on a net basis) held by the Steering Committee Participants and the number of Steering Committee Participants voting in person or by proxy and (ii) such entity's delivery to Counsel of a counterpart signature page of this Agreement marked "NEW PARTICIPANT – FEE PARTICIPANT" or (b) if such entity is to become an Institutional Holder, (i) the affirmative unanimous vote of the Steering Committee Participants and (ii) such entity's delivery to Counsel of a counterpart signature page of this Agreement marked "NEW PARTICIPANT – INSTITUTIONAL HOLDER".   Each entity becoming a Participant pursuant to this Section 14.1 shall be a party to this Agreement as if such Participant had been an original

signatory to this Agreement; provided, however, that any new Fee Participant shall be responsible for its Share of fees for the entire calendar month during which such Fee Participant become a party to this Agreement.

14.2    Notwithstanding anything in this Agreement to the contrary, a Participant, other than a Steering Committee Participant, may be removed from the Group by an affirmative vote of two-thirds of both the amount of LBHI Claims (on a net basis) held by the Steering Committee Participants and the number of Steering Committee Participants voting in person or by proxy. Subsequent to such removal, this Agreement shall continue to protect all Joint Claim and Defense Materials disclosed by or to the removed Participant before its removal. The withdrawing Participant shall continue to be bound by this Agreement with regard to any Joint Claim and Defense Materials provided, disclosed, received, learned or obtained from another Participant before removal, all of which shall be retained by such withdrawing Participant, subject to the confidentiality requirements of this Agreement, or destroyed upon such removal.

## XV.    Withdrawal

15.1    Any Participant may withdraw from the Group upon prior written notice to the other Participants, in which case this Agreement prospectively shall no longer apply to the withdrawing Participant; provided, however, that such Participant shall remain responsible for its Share of fees for any calendar month in which the Participant is a member of the Group (but not thereafter). Subsequent to such a withdrawal, this Agreement shall continue to protect all Joint Claim and Defense Materials disclosed by or to the withdrawing Participant before its withdrawal. The withdrawing Participant shall continue to be bound by this Agreement with regard to any Joint Claim and Defense Materials provided, disclosed, received, learned or obtained from another Participant before withdrawal, all of which shall be retained by such

withdrawing Participant, subject to the confidentiality requirements of this Agreement, or destroyed upon such withdrawal.

**XVI.    Notices.**

16.1    Except as otherwise expressly provided herein, all notices and other communications provided for hereunder to the Initial Group Members shall be in writing and mailed, e-mailed or delivered to any such Initial Group Member, at the addresses specified below:

> King Street Capital Management, L.P.
> 65 E 55th St
> New York, NY 10022
> Phone: (212) 812-3100
> Attn:   Paul Goldschmid
>             Craig Shesky
> e-mail:  Pgoldschmid@kingstreet.com
> e-mail:  Cshesky@kingstreet.com
>
> Paulson & Co. Inc.
> 1251 Avenue of the Americas
> New York, NY 10020
> Phone: (212) 956-2221
> Attn:   Daniel B. Kamensky
> email:  Daniel.Kamensky@paulsonco.com
>
> Fir Tree, Inc.
> 505 Fifth Avenue, 23rd Floor
> New York, NY 10017
> Phone: (212) 659-4904
> Attn:   Brian Meyer
> email:  Bmeyer@firtree.com

16.2    Except as otherwise expressly provided herein, all notices and other communications provided for hereunder to an entity that becomes a Participant pursuant to Section 14.1 of this Agreement shall be in writing and mailed, e-mailed or delivered to any such Participant, at the address specified on such Participant's counterpart signature page.

16.3    All such notices and communications shall, when mailed, e-mailed, or sent by overnight courier, be effective when deposited in the mails, delivered to the overnight courier or sent by e-mail.

## XVII.  **Governing Law; Jurisdiction.**

17.1    This Agreement and all matters arising out of or relating to this Agreement shall be governed by and construed in accordance with the laws of the State of New York, without giving effect to the principles of conflict of laws that would require or permit the application of the laws of any other jurisdiction.

17.2    The parties hereto irrevocably and unconditionally agree to submit to the jurisdiction of the courts of the State of New York and the United States of America, in each case located in the borough of Manhattan.

## XVIII. **Counterparts**

18.1    This Agreement may be executed in counterparts, each of which shall be deemed to be an original, and all of which taken together shall be deemed to constitute one and the same instrument. The parties agree that delivery of an executed counterpart of a signature page of this Agreement electronically or by facsimile shall be effective as delivery of a manually executed counterpart of this Agreement.

## XIX.  **Public Statements**

19.1    Each Participant agrees that it shall not, (a) without the prior consent of the Steering Committee, make any Public Statement (as defined below) in respect of the Group or (b) make any other Public Statement in respect of the LBHI Claims or the Debtors' insolvency proceedings, without providing prior notice thereof to the Steering Committee, which notice shall include in reasonable detail the content of the Public Statement such Participant intends to

make, and identify the person or entity to which such Public Statement will be made.  In no event shall any Participant identify the name of any other Participant (i) in any public statement in respect of the LBHI Claims or the Debtors' insolvency proceedings, (ii) in a statement to any member of the press (including in connection with any interview) in respect of the LBHI Claims or the Debtors' insolvency proceedings, or (iii) in any press release or otherwise in respect of the LBHI Claims or the Debtors' insolvency proceedings (any such action, a "Public Statement") without the prior written consent of such other Participant.  Unless otherwise consented to by the Group in accordance with the voting procedures of Section 4.4, any Public Statement issued by a Participant with respect to the LBHI Claims or the Debtors' insolvency proceedings must make clear such Public Statement is being issued solely on behalf of such Participant.  For the avoidance of doubt, nothing in this Section 19.1 shall limit or otherwise restrict a Participant's ability to communicate, whether orally or in writing, directly with its investors regarding the LBHI Claims, the Debtors' insolvency proceedings, such Participant's association with the Group and the Group's participation in the Debtors' insolvency proceedings; provided, that no other Participant's name is identified in any such written communication without the prior written consent of such other Participant.


[SIGNATURE PAGES TO FOLLOW]

DATED this ___ day of May, 2010

**KING STREET CAPITAL MANAGEMENT, L.P.**

By:    King Street Capital Management GP, L.L.C.
        Its General Partner

By:    _____
Name:
Title:

**PAULSON & CO. INC.**

By:    _____
Name:
Title:

**FIR TREE, INC.**

By:    _____
Name:
Title:

DATED this ___ day of _____, 20__

**NEW PARTICIPANT – FEE PARTICIPANT**

By:

By:      _____
Name:
Title:

Notice Address: _____
                _____
Notice Attn:    _____
Notice Phone:   _____
Notice email:   _____

DATED this ___ day of _____, 20___

                              **NEW PARTICIPANT – INSTITUTIONAL HOLDER**

                              By:

                              By:  _____
                              Name:
                              Title:

                              Notice Address: _____
                                               _____
                              Notice Attn:    _____
                              Notice Phone:  _____
                              Notice email:   _____