**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------- x

In re                                      :  Chapter 11 Case No.

                                            :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,    :  08-13555 (JMP)

                                            :

                      **Debtors.**               :  **(Jointly Administered)**

                                            :

------------------------------------------------------------------- x

### JOINT CHAPTER 11 PLAN FOR LEHMAN BROTHERS HOLDINGS INC. AND ITS AFFILIATED DEBTORS OTHER THAN MERIT, LLC, LB SOMERSET LLC AND LB PREFERRED SOMERSET LLC PROPOSED BY NON-CONSOLIDATION PLAN PROPONENTS

Dated: New York, New York
        April 25, 2011

**Attorneys for Plan Proponents:**


BINGHAM MCCUTCHEN LLP
399 Park Ave
New York, NY 10022
T:  212 705 7000
F:  212 752 5378
Joshua Dorchak

*Attorneys for: Deutsche Bank AG*

BINGHAM McCUTCHEN LLP
One Federal Street
Boston, MA 02110
T:  617 951 8000
F:  617 951 8736
Sabin Willett

*Attorneys for: State Street Bank and Trust Company*

BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
T:  617 856 8200
F:  617 856 8201
Steven L. Levine

*Attorneys for: Cyrus Capital Partners, LP, Silver Point Capital, L.P., and York Capital Management Global Advisors, LLC*

CADWALADER, WICKERSHAM & TAFT LLP
One World Financial Center
New York, NY 10281
T:  212 504 6000
F:  212 504 6666
Howard R. Hawkins, Jr.

700 Sixth Street, N.W.
Washington, DC 20001
T:  202 862 2200
F:  202 862 2400
Mark C. Ellenberg

*Attorneys for: Morgan Stanley & Co. International plc. and Morgan Stanley Capital Services Inc.*

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, NY 10006
T:  212 225 2000
F:  212 225 3999
Thomas J.  Moloney
Sean A. O'Neal

*Attorneys for: D. E. Shaw Composite Portfolios, L.L.C., D.E. Shaw Oculus Portfolios, L.L.C.,*
*Goldman Sachs Bank USA, and Goldman Sachs International*

CLIFFORD CHANCE LLP
31 West 52nd Street
New York, NY 10019-6131
T:  212 878 8000
F:  212 878 8375
Andrew Brozman

*Attorneys for: Credit Agricole CIB*

CRAVATH SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019-7475
T:  212 474 1000
F:  212 474 3700
Richard Levin

*Attorneys for: Credit Suisse International*

DEWEY & LEBOEUF LLP
333 South Grand Avenue, Suite 2600
Los Angeles, CA 90071
T:  213 621 6000
F:  213 621 6100
Bruce Bennett
Monika S. Wiener

*Attorneys for certain funds managed by and/or affiliated with: Angelo, Gordon & Co., L.P.,*
*Contrarian Capital Management, LLC, Goldentree Asset Management, LP, Hayman Capital*
*Management, LP, Knighthead Capital Management, LLC, Mason Capital Management LLC,*
*Mount Kellett Capital Management, Oaktree Capital Management, L.P., and Serengeti Asset*
*Management LP*

DEWEY LEBOEUF LLP

1301 Avenue of the Americas

New York, NY 10019-6092

T:  212 259 8000

F:  212 259 6333

Irena M. Goldstein

*Attorneys for: The Royal Bank of Scotland plc*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 Avenue of the Americas

New York, NY 10019

T:  212 373 3000

F:  212 757 3990

Jeffrey D. Saferstein

Alan W. Kornberg

*Attorneys for: Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries, and Silver Point Capital, L.P. on behalf of its affiliated investment funds*

# TABLE OF CONTENTS

**Page**

## ARTICLE I
### DEFINITIONS AND CONSTRUCTION OF TERMS

## ARTICLE II
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1   Administrative Expense Claims.................................................................. 16

2.2   Professional Compensation and Reimbursement Claims .................................. 16

2.3   Priority Tax Claims ................................................................................. 17

## ARTICLE III
### CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

3.1   LBHI ..................................................................................................... 17

3.2   LCPI ...................................................................................................... 18

3.3   LBCS ..................................................................................................... 18

3.4   LBSF ..................................................................................................... 19

3.5   LOTC .................................................................................................... 19

3.6   LBCC .................................................................................................... 19

3.7   LBDP .................................................................................................... 20

3.8   LBFP ..................................................................................................... 20

3.9   LB 745 .................................................................................................. 20

3.10  PAMI Statler ......................................................................................... 20

3.11  CES ...................................................................................................... 21

3.12  CES V ................................................................................................... 21

3.13  CES IX .................................................................................................. 21

3.14  East Dover ............................................................................................. 21

3.15  LS Finance ............................................................................................ 22

3.16  LUXCO ................................................................................................. 22

3.17  BNC ..................................................................................................... 22

3.18  LB Rose Ranch ...................................................................................... 22

3.19  SASCO .................................................................................................. 23

3.20  LB 2080 ................................................................................................ 23

i

# TABLE OF CONTENTS

(continued)

**Page**

## ARTICLE IV
## TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN LBHI

4.1     LBHI Class 1 – Priority Non-Tax Claims against LBHI....................................23

4.2     LBHI Class 2 – Secured Claims against LBHI....................................................23

4.3     LBHI Class 3 – Senior Unsecured Claims against LBHI....................................24

4.4     LBHI Class 4A – Senior Intercompany Claims against LBHI............................24

4.5     LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI...................24

4.6     LBHI Class 5A – Senior Third-Party Guarantee Claims against LBHI..............24

4.7     LBHI Class 5B – Senior Third-Party LBT/LBSN Guarantee Claims
        against LBHI......................................................................................................24

4.8     LBHI Class 6 – Derivative Claims against LBHI...............................................25

4.9     LBHI Class 7 – General Unsecured Claims against LBHI.................................25

4.10    LBHI Class 8A – Intercompany Claims against LBHI ......................................25

4.11    LBHI Class 8B – Affiliate Guarantee Claims against LBHI..............................25

4.12    LBHI Class 9 – Derivative Guarantee Claims against LBHI .............................25

4.13    LBHI Class 10A – Subordinated Class 10A Claims against LBHI....................26

4.14    LBHI Class 10B – Subordinated Class 10B Claims against LBHI ....................26

4.15    LBHI Class 10C – Subordinated Class 10C Claims against LBHI ....................26

4.16    LBHI Class 11 – Section 510(b) Claims against LBHI......................................26

4.17    LBHI Class 12 – Equity Interests in LBHI........................................................27

## ARTICLE V
## TREATMENT OF CLAIMS AGAINST AND EQUITY INTERESTS IN SUBSIDIARY DEBTORS

5.1     LCPI Class 1 – Priority Non-Tax Claims against LCPI .....................................27

5.2     LCPI Class 2 – Secured Claims against LCPI....................................................28

5.3     LCPI Class 3 – Derivative Claims against LCPI................................................28

5.4     LCPI Class 4 – General Unsecured Claims against LCPI ..................................28

5.5     LCPI Class 5 – Intercompany Claims against LCPI...........................................28

5.6     LCPI Class 6 – Equity Interests in LCPI ...........................................................28

5.7     LBCS Class 1 – Priority Non-Tax Claims against LBCS...................................29

5.8     LBCS Class 2 – Secured Claims against LBCS .................................................29

ii

# TABLE OF CONTENTS
(continued)

**Page**

5.9    LBCS Class 3 – Derivative Claims against LBCS ..................................................... 29

5.10    LBCS Class 4 – General Unsecured Claims against LBCS ................................. 29

5.11    LBCS Class 5 – Intercompany Claims against LBCS ......................................... 30

5.12    LBCS Class 6 – Equity Interests in LBCS........................................................... 30

5.13    LBSF Class 1 – Priority Non-Tax Claims against LBSF ................................... 30

5.14    LBSF Class 2 – Secured Claims against LBSF ................................................... 30

5.15    LBSF Class 3 – Derivative Claims against LBSF .............................................. 31

5.16    LBSF Class 4 – General Unsecured Claims against LBSF ................................ 31

5.17    LBSF Class 5 – Intercompany Claims against LBSF.......................................... 31

5.18    LBSF Class 6 – Equity Interests in LBSF .......................................................... 31

5.19    LOTC Class 1 – Priority Non-Tax Claims against LOTC ................................. 31

5.20    LOTC Class 2 – Secured Claims against LOTC ................................................. 32

5.21    LOTC Class 3 – Derivative Claims against LOTC ............................................ 32

5.22    LOTC Class 4 – General Unsecured Claims against LOTC............................... 32

5.23    LOTC Class 5 – Intercompany Claims against LOTC ....................................... 32

5.24    LOTC Class 6 – Equity Interests in LOTC......................................................... 32

5.25    LBCC Class 1 – Priority Non-Tax Claims against LBCC.................................. 33

5.26    LBCC Class 2 – Secured Claims against LBCC ................................................. 33

5.27    LBCC Class 3 – Derivative Claims against LBCC ............................................ 33

5.28    LBCC Class 4 – General Unsecured Claims against LBCC............................... 34

5.29    LBCC Class 5 – Intercompany Claims against LBCC ....................................... 34

5.30    LBCC Class 6 – Equity Interests in LBCC......................................................... 34

5.31    LBDP Class 1 – Priority Non-Tax Claims against LBDP .................................. 34

5.32    LBDP Class 2 – Secured Claims against LBDP.................................................. 34

5.33    LBDP Class 3 – Derivative Claims against LBDP.............................................. 35

5.34    LBDP Class 4 – General Unsecured Claims against LBDP ............................... 35

5.35    LBDP Class 5 – Intercompany Claims against LBDP ........................................ 35

5.36    LBDP Class 6 – Equity Interests in LBDP ......................................................... 35

5.37    LBFP Class 1 – Priority Non-Tax Claims against LBFP ................................... 36

5.38    LBFP Class 2 – Secured Claims against LBFP ................................................... 36

# TABLE OF CONTENTS
(continued)

**Page**

5.39   LBFP Class 3 – Derivative Claims against LBFP ................................................ 36

5.40   LBFP Class 4 – General Unsecured Claims against LBFP ................................ 36

5.41   LBFP Class 5 – Intercompany Claims against LBFP ........................................ 36

5.42   LBFP Class 6 – Equity Interests in LBFP ......................................................... 37

5.43   LB 745 Class 1 – Priority Non-Tax Claims against LB 745 ............................. 37

5.44   LB 745 Class 2 – Secured Claims against LB 745 ............................................ 37

5.45   LB 745 Class 3 – General Unsecured Claims against LB 745 .......................... 37

5.46   LB 745 Class 4 – Intercompany Claims against LB 745 ................................... 38

5.47   LB 745 Class 5 – Equity Interests in LB 745 ................................................... 38

5.48   PAMI Statler Class 1 – Priority Non-Tax Claims against PAMI Statler ............ 38

5.49   PAMI Statler Class 2 – Secured Claims against PAMI Statler ......................... 38

5.50   PAMI Statler Class 3 – General Unsecured Claims against PAMI Statler ......... 39

5.51   PAMI Statler Class 4 – Intercompany Claims against PAMI Statler ................. 39

5.52   PAMI Statler Class 5 – Equity Interests in PAMI Statler ................................. 39

5.53   CES Class 1 – Priority Non-Tax Claims against CES ....................................... 39

5.54   CES Class 2 – Secured Claims against CES ...................................................... 40

5.55   CES Class 3A – General Unsecured Claims against CES .................................. 40

5.56   CES Class 4 – Intercompany Claims against CES ............................................ 40

5.57   CES Class 5 – Equity Interests in CES .............................................................. 40

5.58   CES V Class 1 – Priority Non-Tax Claims against CES V ................................ 41

5.59   CES V Class 2 – Secured Claims against CES V .............................................. 41

5.60   CES V Class 3 – General Unsecured Claims against CES V ............................. 41

5.61   CES V Class 4 – Intercompany Claims against CES V ..................................... 41

5.62   CES V Class 5 – Equity Interests in CES V ...................................................... 42

5.63   CES IX Class 1 – Priority Non-Tax Claims against CES IX ............................. 42

5.64   CES IX Class 2 – Secured Claims against CES IX ........................................... 42

5.65   CES IX Class 3 – General Unsecured Claims against CES IX .......................... 42

5.66   CES IX Class 4 – Intercompany Claims against CES IX ................................... 43

5.67   CES IX Class 5 – Equity Interests in CES IX ................................................... 43

5.68   East Dover Class 1 – Priority Non-Tax Claims against East Dover ................... 43

iv

# TABLE OF CONTENTS
(continued)

**Page**

5.69    East Dover Class 2 – Secured Claims against East Dover ................................... 44

5.70    East Dover Class 3 – General Unsecured Claims against East Dover ................ 44

5.71    East Dover Class 4 – Intercompany Claims against East Dover ........................ 44

5.72    East Dover Class 5 – Equity Interests in East Dover ........................................... 44

5.73    LS Finance Class 1 – Priority Non-Tax Claims against LS Finance .................. 45

5.74    LS Finance Class 2 – Secured Claims against LS Finance ................................. 45

5.75    LS Finance Class 3 – General Unsecured Claims against LS Finance ............... 45

5.76    LS Finance Class 4 – Intercompany Claims against LS Finance ....................... 45

5.77    LS Finance Class 5 – Equity Interests in LS Finance ......................................... 46

5.78    LUXCO Class 1 – Priority Non-Tax Claims against LUXCO ........................... 46

5.79    LUXCO Class 2 – Secured Claims against LUXCO .......................................... 46

5.80    LUXCO Class 3 – General Unsecured Claims against LUXCO ........................ 47

5.81    LUXCO Class 4 – Intercompany Claims against LUXCO ................................ 47

5.82    LUXCO Class 5 – Equity Interests in LUXCO .................................................. 47

5.83    BNC Class 1 – Priority Non-Tax Claims against BNC ...................................... 47

5.84    BNC Class 2 – Secured Claims against BNC ..................................................... 47

5.85    BNC Class 3 – General Unsecured Claims against BNC ................................... 48

5.86    BNC Class 4 – Intercompany Claims against BNC ........................................... 48

5.87    BNC Class 5 – Equity Interests in BNC ............................................................. 48

5.88    LB Rose Ranch Class 1 – Priority Non-Tax Claims against LB Rose
        Ranch .................................................................................................................... 48

5.89    LB Rose Ranch Class 2 – Secured Claims against LB Rose Ranch ................... 49

5.90    LB Rose Ranch Class 3 – General Unsecured Claims against LB Rose
        Ranch .................................................................................................................... 49

5.91    LB Rose Ranch Class 4 – Intercompany Claims against LB Rose Ranch .......... 49

5.92    LB Rose Ranch Class 5 – Equity Interests in LB Rose Ranch ........................... 49

5.93    SASCO Class 1 – Priority Non-Tax Claims against SASCO ............................. 50

5.94    SASCO Class 2 – Secured Claims against SASCO ............................................ 50

5.95    SASCO Class 3 – General Unsecured Claims against SASCO .......................... 50

5.96    SASCO Class 4 – Intercompany Claims against SASCO .................................. 51

5.97    SASCO Class 5 – Equity Interests in SASCO .................................................... 51

# TABLE OF CONTENTS
(continued)

**Page**

5.98    LB 2080 Class 1 – Priority Non-Tax Claims against LB 2080 .......................... 51

5.99    LB 2080 Class 2 – Secured Claims against LB 2080 ......................................... 51

5.100   LB 2080 Class 3 – General Unsecured Claims against LB 2080 ...................... 52

5.101   LB 2080 Class 4 – Intercompany Claims against LB 2080 ............................... 52

5.102   LB 2080 Class 5 – Equity Interests in LB 2080 ............................................... 52

ARTICLE VI
IMPLEMENTATION OF THE PLAN

6.1    Plan Administrator ................................................................................. 52

6.2    Domestic Operating Company Creditor Representative.................................... 54

6.3    LAMCO ................................................................................................ 56

6.4    Debtor Allocation Agreement................................................................. 56

6.5    Redistribution of Subordinated Claims Recoveries ........................................ 57

6.6    Closing of Chapter 11 Case .................................................................... 57

6.7    Affiliate Claims Against a Debtor ........................................................... 57

6.8    LBHI Structured Securities Claims ......................................................... 58

6.9    Indenture Trustee and Creditors' Committee Members Fees ........................... 58

ARTICLE VII
CORPORATE GOVERNANCE

7.1    Corporate Form..................................................................................... 58

7.2    LBHI Board of Directors and Officers .................................................... 58

7.3    Subsidiary Debtor Post-Effective Date Management ....................................... 59

7.4    Plan Trust ............................................................................................. 60

7.5    Corporate Existence .............................................................................. 61

7.6    Wind-Down............................................................................................ 61

7.7    Certificate of Incorporation and By-Laws ............................................... 61

7.8    Stock Trading Restrictions..................................................................... 61

ARTICLE VIII
PROVISIONS REGARDING VOTING AND DISTRIBUTIONS UNDER THE PLAN

8.1    Reserved................................................................................................ 61

8.2    Nonconsensual Confirmation................................................................. 62

8.3    Distributions of Available Cash.............................................................. 62

vi

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 8.4 | Disputed Claims Reserve | 62 |
| 8.5 | Minimum Distribution and Manner of Payment | 63 |
| 8.6 | Distributions Free and Clear | 63 |
| 8.7 | Delivery of Distributions and Undeliverable Distributions | 63 |
| 8.8 | Withholding and Reporting Requirements | 64 |
| 8.9 | Time Bar to Cash Payment Rights | 64 |
| 8.10 | Setoffs and Recoupment | 64 |
| 8.11 | Claims Register to Remain Open | 65 |
| 8.12 | Allocation of Distributions | 65 |
| 8.13 | Maximum Distribution | 65 |

## ARTICLE IX
## PROCEDURES FOR TREATING DISPUTED CLAIMS

| | | |
|---|---|---|
| 9.1 | Objections | 66 |
| 9.2 | No Distributions Pending Allowance | 66 |
| 9.3 | Reserved | 66 |
| 9.4 | Resolution of Disputed Claims | 66 |
| 9.5 | Interest | 66 |

## ARTICLE X
## LIQUIDATING TRUST

| | | |
|---|---|---|
| 10.1 | Execution of Liquidating Trust Agreement | 66 |
| 10.2 | Purpose of the Liquidating Trust | 67 |
| 10.3 | Liquidating Trust Assets | 67 |
| 10.4 | Administration of the Liquidating Trust | 67 |
| 10.5 | Liquidating Trustee's Tax Power for Debtors | 67 |
| 10.6 | Cash Investments | 67 |
| 10.7 | Distribution of Liquidating Trust Interests | 68 |
| 10.8 | Federal Income Tax Treatment of Liquidating Trust | 68 |
| 10.9 | Tax Reporting | 68 |
| 10.10 | Dissolution | 69 |
| 10.11 | Financial Reporting | 70 |

# TABLE OF CONTENTS
(continued)

**Page**

ARTICLE XI
TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1    Executory Contracts and Unexpired Leases ........................................................ 70

11.2    Approval of Assumption and Rejection of Executory Contracts and
Unexpired Leases ................................................................................................. 71

11.3    Cure of Defaults .................................................................................................. 71

11.4    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
Unexpired Leases Rejected Pursuant to the Plan................................................. 71

11.5    Insurance Policies ............................................................................................... 71

11.6    Indemnification Obligations ................................................................................ 71

ARTICLE XII
EFFECTIVENESS OF THE PLAN

12.1    Conditions Precedent to the Effective Date of the Plan....................................... 72

12.2    Waiver of Conditions........................................................................................... 72

ARTICLE XIII
EFFECTS OF CONFIRMATION

13.1    Vesting of Assets ................................................................................................. 72

13.2    Binding Effect...................................................................................................... 73

13.3    Release and Exculpation ...................................................................................... 73

13.4    Discharge ............................................................................................................. 73

13.5    Injunction ............................................................................................................ 73

13.6    United States Government .................................................................................... 74

13.7    Terms of Injunctions or Stays.............................................................................. 74

13.8    Retention of Litigation Claims and Reservation of Rights................................... 74

ARTICLE XIV
RETENTION OF JURISDICTION

14.1    Retention of Jurisdiction...................................................................................... 75

ARTICLE XV
MISCELLANEOUS PROVISIONS

15.1    Post-Effective Date Role of Creditors' Committee ............................................. 76

15.2    Issuance of New Securities .................................................................................. 76

15.3    Exemption from Securities Laws.......................................................................... 77

# TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 15.4 | Exemption from Transfer Taxes | 77 |
| 15.5 | Plan Supplement | 77 |
| 15.6 | Amendment or Modification of Plan | 77 |
| 15.7 | Withdrawal or Revocation of the Plan | 78 |
| 15.8 | Courts of Competent Jurisdiction | 78 |
| 15.9 | Transactions on Business Days | 78 |
| 15.10 | Notices | 78 |
| 15.11 | Severability | 79 |
| 15.12 | Governing Law | 79 |
| 15.13 | Headings | 79 |
| 15.14 | Exhibits | 79 |
| 15.15 | Successors and Assigns | 80 |

<u>PLAN EXHIBITS</u>

Exhibit A          Structured Securities Valuation Methodologies

*This document is not and shall not be deemed to be a solicitation for consent to any plan of reorganization or liquidation in contravention of applicable non-bankruptcy law or the Bankruptcy Code. Among other conditions, this proposal contained in this draft is expressly conditioned upon the receipt of a disclosure statement that is approved by the Bankruptcy Court, after notice and a hearing, as containing adequate information as required by section 1125 of the Bankruptcy Code.*

## ARTICLE I
## Definitions and Construction of Terms

<u>Definitions</u>. As used in the Plan, the following terms shall have the respective meanings specified below:

1.1    <u>Additional Creditor Representative</u> means a person or entity appointed pursuant to Section 6.2(a)(ii) of the Plan.

1.2    <u>Administrative Expense Claim</u> means any right to payment constituting a cost or expense of administration of any of the Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Debtors, any actual and necessary expenses of operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their business from and after the Commencement Date, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code, all fees and expenses of the Plan Proponents in connection with the preparation, solicitation, and implementation of this Plan, and any fees and charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.3    <u>Affected Plan Proponents</u> means any Plan Proponents solely in their capacities as holders of Claims against a Designated Entity whose rights, obligations, treatment or recoveries would be adversely affected in a disproportionate manner (in comparison to other Plan Proponents' rights, obligations, treatment or recovery) by a proposed amendment of, supplement to, waiver or other action under the Plan.

1.4    <u>Affiliate</u> shall have the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

1.5    <u>Affiliate Guarantee Claim</u> means any Guarantee Claim asserted by an Affiliate of LBHI other than a Senior Affiliate Guarantee Claim.

1.6    <u>Allowed</u> means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim allowed hereunder, (c) any Claim that is not Disputed, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtors pursuant to a Final Order or under Section 9.4 of the Plan, or (e) any Claim that, if Disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed

1

Claims" hereunder; *provided*, *further*, *however*, that subject to Section 6.7 and 9.1 of the Plan, except as otherwise provided by a Final Order, a Guarantee Claim (other than a LBHI Structured Securities Claim) shall only be Allowed in an amount that is equal to or less than the Allowed amount of the Primary Claim.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not include interest on such Administrative Expense Claim or Claim from and after the Commencement Date, provided, however, that interest on Allowed Claims against a Debtor from and after the Commencement Date shall be included in "Allowed Claims" against such Debtor that must be satisfied in full before any holder of Equity Interests in such Debtor receives any share of any remaining assets (other than retaining such Equity Interests) of such Debtor pursuant to Articles IV and V of the Plan, provided further, however, that such interest from and after the Commencement Date shall be excluded from the calculation of "Pro Rata Share" of such Allowed Claim unless and until all Allowed Claims against the applicable Debtor have been satisfied in full.  For purposes of a Foreign Proceeding, an Allowed Claim includes a Claim that has been accepted or allowed in a Foreign Proceeding by settlement with a Foreign Administrator or Final Order.

1.7    Asserted Claim Amount shall have the meaning given to such term in Section 8.4(a) of the Plan.

1.8    Available Cash means (a) all Cash of a Debtor realized from its business operations, the sale or other disposition of its assets, the interest earned on its invested funds, recoveries from Litigation Claims or from any other source or otherwise less (b) the amount of Cash estimated and reserved by such Debtor to (i) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan with respect to such Debtor on and after the Effective Date and (ii) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code.  For the avoidance of doubt, Available Cash shall include the applicable portions of (i) excess amounts that become available in accordance with Section 8.4, (ii) amounts represented by undeliverable Distributions in accordance with Section 8.7, and/or (iii) amounts attributable to voided checks in accordance with Section 8.9.

1.9    Avoidance Actions means any actions commenced or that may be commenced before or after the Effective Date pursuant to sections 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code.

1.10    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.11    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.12    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2072 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

1.13    Bar Date Order means the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim,*

*Approving the Form and Manner of Notice thereof and Approving the Proof of Claim Form* approved and entered by the Bankruptcy Court on July 2, 2009 [Docket No. 4271], as the same may be amended from time to time.

1.14    <u>BNC</u> means BNC Mortgage LLC.

1.15    <u>Business Day</u> means any day other than a Saturday, a Sunday, and any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.16    <u>Cash</u> means legal tender of the United States of America.

1.17    <u>Causes of Action</u> means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Effective Date.

1.18    <u>CES</u> means CES Aviation LLC.

1.19    <u>CES V</u> means CES Aviation V LLC.

1.20    <u>CES IX</u> means CES Aviation IX LLC.

1.21    <u>Chapter 11 Cases</u> means the voluntary cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, which are being jointly administered and are currently pending before the Bankruptcy Court, styled *In re Lehman Brothers Holdings Inc.*, *et al.*, Chapter 11 Case No. 08-13555 (JMP).

1.22    <u>Claim</u> shall have the meaning assigned to such term in section 101(5) of the Bankruptcy Code.

1.23    <u>Class</u> means a category of holders of Claims or Equity Interests as set forth in <u>Article III</u> of the Plan.

1.24    <u>Class 10A Subordinated Notes</u> means, collectively, (a) the Floating Rate Junior Subordinated Deferrable Interest Debentures due 2035 issued pursuant to the Eighth Supplemental Indenture, dated as of August 19, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (b) the Fixed/Floating Rate Subordinated Notes due 2016 Series 5065, issued pursuant to a final term sheet dated as of September 26, 2006 under the Euro Medium-Term Note Program; (c) the Floating Rate Subordinated Notes due 2037 Series EB17, issued pursuant to a final term sheet dated as of January 23, 2007 under the Euro Medium-Term Note Program; (d) the Fixed/Floating Rate Subordinated Notes due 2019 Series 6222, issued pursuant to the final term sheet dated as of February 14, 2007 under the Euro Medium-Term Note Program; and (e) the Floating Rate Subordinated Notes due 2037 Series EB 18, issued pursuant to a final term sheet, dated as of May 30, 2007, under the Euro Medium-Term Note Program.

1.25    Class 10B Subordinated Notes means, collectively, (a) the 6.375% Subordinated Deferrable Interest Debentures due 2052, issued pursuant to the Fourth Supplemental Indenture, dated as of March 17, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (b) the 6.375% Subordinated Deferrable Interest Debentures due October 2052, issued pursuant to the Fifth Supplemental Indenture, dated as of October 31, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (c) the 6.00% Subordinated Deferrable Interest Debentures due 2053, issued pursuant to the Sixth Supplemental Indenture, dated as of April 22, 2004, between LBHI and JPMorgan Chase Bank, as trustee; (d) the 6.24% Subordinated Deferrable Interest Debentures due 2054, issued pursuant to the Seventh Supplemental Indenture, dated as of January 18, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (e) the 5.75% Subordinated Notes due 2017, issued pursuant to the Ninth Supplemental Indenture, dated as of October 24, 2006, between LBHI and JPMorgan Chase Bank, as trustee; (f) the Fixed and Floating Rate Subordinated Notes Due 2032, issued pursuant to the Tenth Supplemental Indenture, dated as of May 1, 2007, between LBHI and JPMorgan Chase Bank, as trustee; (g) the 6.50% Subordinated Notes Due 2017, issued pursuant to the Thirteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (h) the 6.875% Subordinated Notes Due 2037, issued pursuant to the Fourteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (i) the 6.75% Subordinated Notes Due 2017, issued pursuant to the Fifteenth Supplemental Indenture, dated as of December 21, 2007, between LBHI and The Bank of New York, as trustee; and (j) the 7.50% Subordinated Notes Due 2038, issued pursuant to the Sixteenth Supplemental Indenture, dated as of May 9, 2008, between LBHI and The Bank of New York, as trustee.

1.26    Class 10C Subordinated Notes means, collectively, (a) the 5.707% Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Eleventh Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee; and (b) the Floating Rate Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Twelfth Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee.

1.27    Closing Date means the date upon which all of the Chapter 11 Cases have been closed in accordance with Section 6.6 of the Plan.

1.28    Collateral means any property or interest in Property of the Estates of the Debtors subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance or otherwise invalid and unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

1.29    Commencement Date means (a) September 15, 2008 with respect to LBHI, (b) September 16, 2008 with respect to LB 745, (c) September 23, 2008 with respect to PAMI Statler, (d) October 3, 2008 with respect to LBCS, LBSF and LOTC, (d) October 5, 2008 with respect to LBDP, LCPI, LBCC, LBFP, CES, CES V, CES IX, East Dover and LS Finance, (e) January 7, 2009 with respect to LUXCO, (f) January 9, 2009 with respect to BNC, (g) February 9, 2009 with respect to SASCO and LB Rose Ranch, and (h) April 23, 2009 with respect to LB 2080.

1.30    Confirmation Date means the date upon which the Bankruptcy Court enters a Confirmation Order on the docket of the Chapter 11 Cases as applicable to each Debtor.

1.31    Confirmation Hearing means the hearing held by the Bankruptcy Court, as the same may be continued from time to time, to consider confirmation of the Plan.

1.32    Confirmation Order means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code as applicable to each Debtor.

1.33    Creditor shall have the meaning assigned to such term in section 101(10) of the Bankruptcy Code.

1.34    Creditor Representative Conflict shall have the meaning given to such term in Section 6.2(a)(ii) of the Plan.

1.35    Creditors' Committee means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.36    Cross-Border Protocol means that certain Cross-Border Insolvency Protocol for the Lehman Brothers Group of Companies dated as of May 12, 2009 approved by the Bankruptcy Court by order dated June 17, 2009 (Docket No. 4020), as it may be amended, modified or supplemented from time to time.

1.37    Cross-Border Protocol Party means a Non-Controlled Affiliate party to the Cross-Border Protocol, and any Affiliate controlled or managed by any such Non-Controlled Affiliate.

1.38    Cross-Border Settlement Guidelines means, with respect to any Cross-Border Protocol Party, settlement guidelines agreed to or accepted by such party.

1.39    Debtor means each of BNC, CES, CES V, CES IX, East Dover, LB 745, LB 2080, LB Rose Ranch, LBCC, LBCS, LBDP, LBFP, LBHI, LBSF, LCPI, LOTC, LS Finance, LUXCO, PAMI Statler, and SASCO, each in its individual capacity as debtor and debtor in possession in its Chapter 11 Case pursuant to sections 101(13), 1107(a) and 1108 of the Bankruptcy Code.

1.40    Debtor Allocation Agreement means the agreement among two or more of the Debtors that identifies, allocates and sets forth other agreed rights and obligations with respect to (a) the costs and benefits of Jointly Owned Litigation Claims, (b) commonly held tax benefits and obligations, (c) expenses of administration of the Chapter 11 Cases, and (d) certain other inter-Debtor related issues.

1.41    Debtor-Controlled Entity means a non-Debtor Affiliate of the Debtors that is managed and controlled by a Debtor as of the Effective Date.

1.42    Derivative Claim means a Claim asserted by a third-party that is not an Affiliate of the Debtors arising out of the termination or rejection of a Derivative Contract with a Debtor but excluding a Derivative Guarantee Claim.

5

1.43    <u>Derivative Contract</u> means any contract that is (a) a "swap agreement" as such term is defined in section 101(53B) of the Bankruptcy Code or (b) a "forward contract" as such term is defined in section 101(25) of the Bankruptcy Code; *provided*, *however*, that a cash-market purchase or sale of a security or loan (i.e. any purchase or sale of a security or loan for settlement within the standard settlement cycle for the relevant market), exchange-traded future or option, securities loan transaction, repurchase agreement in respect of securities or loans, and any guarantee or reimbursement obligations which would otherwise be included in the definition of "swap agreement" or "forward contract" pursuant to the definition of such terms in the Bankruptcy Code shall not be considered a Derivative Contract for the purposes of this definition; *provided*, *further*, that any notes, bonds, or other securities issued by the Debtors or their Affiliates (including, without limitation, LBT, LBB, Lehman Brothers Holdings plc, LBSN and LB Lux) shall not be considered "Derivative Contracts."

1.44    <u>Derivative Guarantee Claim</u> means any Guarantee Claim asserted by a third-party that is not an Affiliate of LBHI with respect to a Derivative Contract.

1.45    <u>Derivative Questionnaire</u> shall have the meaning assigned to such term in the Bar Date Order.

1.46    <u>Designated Entity</u> means each Domestic Operating Company, LBHI, LBIE, or LBT.

1.47    <u>Director Selection Committee</u> means the committee established pursuant to <u>Section 7.2(b)</u> of the Plan, the members of which shall be identified in the Plan Supplement.

1.48    <u>Disclosure Statement</u> means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as it may be amended, modified, or supplemented from time to time by the Requisite Plan Proponents.

1.49    <u>Disputed</u> means, with reference to any Claim, (a) the portion of the Claim, proof of which was timely and properly filed, that (i) is disputed under the Plan, including without limitation, any Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Intercompany Claim or Affiliate Guarantee Claim that is not Allowed in accordance with Section 6.7 of the Plan or (ii) as to which the Debtors have interposed a timely objection, which objection has not been withdrawn or determined by a Final Order, or (b) the portion of a Claim, proof of which was required to be filed by the Bar Date Order or another Final Order in a form and manner proscribed in such order, but as to which a proof of Claim was not timely or properly filed.

1.50    <u>Distribution</u> means any initial or subsequent payment or transfer made under the Plan.

1.51    <u>Distribution Date</u> means any date on which a Distribution is made upon at least fourteen (14) Business Days written notice filed on the docket of the Chapter 11 Cases or otherwise communicated to holders of Allowed Claims.

1.52    <u>Distribution Holdback</u> shall have the meaning given to such term in <u>Section 8.9</u> of the Plan.

1.53    Domestic Operating Company means each of LCPI, LBCS, LBSF, LOTC, and LBCC.

1.54    Domestic Operating Company Creditor Representative means the Primary Creditor Representative and, solely with respect to each Creditor Representative Conflict, if any, the Additional Creditor Representative appointed with respect to such Creditor Representative Conflict.

1.55    East Dover means East Dover Limited.

1.56    Effective Date means the first Business Day on which the conditions to effectiveness of the Plan set forth in Article XII have been satisfied or waived and on which the Plan shall become effective with respect to a Debtor.

1.57    Equity Interest means (a) shares of common stock, preferred stock, other forms of ownership interest, or any interest or right to convert into such an equity or ownership interest or to acquire any equity or ownership interest or any interest or right for which the amount owing is determined by reference to an equity or ownership interest, including, without limitation, vested and/or unvested restricted stock units, contingent stock awards, contingent equity awards, performance stock units, and stock options or restricted stock awards granted under management ownership plans, the LBHI 2005 stock incentive plan or the LBHI employee incentive plan, in any Debtor that was in existence immediately prior to or on the Commencement Date for such Debtor, and (b) Allowed Claims against LBHI arising out of, relating to, or in connection with any of the foregoing, that are described in section 510(b) of the Bankruptcy Code.

1.58    Estimated Claim means the amount of a Claim estimated by the Bankruptcy Court, to the extent permitted by section 502(c) of the Bankruptcy Code, in one or more Final Orders to become an Allowed Claim.

1.59    Excluded Debtor means each of Merit, Preferred Somerset, and Somerset.

1.60    Excess Amount shall have the meaning given to such term in Section 8.2(b) of the Plan.

1.61    Filing Debtor means each of BNC, CES, CES V, CES IX, East Dover, LB 745, LB 2080, LB Rose Ranch, LBCC, LBCS, LBDP, LBFP, LBHI, LBSF, LCPI, LOTC, LS Finance, LUXCO, Merit, PAMI Statler, Preferred Somerset, SASCO and Somerset, each in its individual capacity as debtor and debtor in possession in its Chapter 11 Case pursuant to sections 101(13), 1107(a) and 1108 of the Bankruptcy Code.

1.62    Final Order means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance reasonably satisfactory to the Debtors or, with respect to any orders relating to the matters set forth in Section 6.2 of the Plan, the Domestic Operating Company Creditor Representative, as applicable, or in the event that an appeal, writ of certiorari, or reargument or rehearing thereof

7

has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.63    Foreign Administrator means each of the persons or entities that is managing the affairs and representing the insolvency estate of a Non-Controlled Affiliate that is subject to a Foreign Proceeding.

1.64    Foreign Proceeding means an insolvency, administration, liquidation, rehabilitation, receivership or like proceeding commenced by or initiated against an Affiliate of a Debtor in a jurisdiction outside of the United States.

1.65    General Unsecured Claim means, (a) in the case of LBHI, any Claim against LBHI other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, a Senior Intercompany Claim, a Senior Affiliate Guarantee Claim, a Senior Third-Party Guarantee Claim, a Senior Third-Party LBT/LBSN Guarantee Claim, a Derivative Claim, an Intercompany Claim, an Affiliate Guarantee Claim, a Derivative Guarantee Claim, a Subordinated Claim or a Section 510(b) Claim, or (b) in the case of each Subsidiary Debtor, any Claim against such Subsidiary Debtor other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, an Intercompany Claim or a Derivative Claim.

1.66    Governmental Unit shall have the meaning assigned to such term in section 101(27) of the Bankruptcy Code.

1.67    Guarantee Claim means a Claim asserted against LBHI on the basis of a guarantee, promise or pledge by LBHI to satisfy an obligation or liability of another entity.

1.68    Guarantee Questionnaire shall have the meaning assigned to such term in the Bar Date Order.

1.69    Independent Directors means Michael L. Ainslie, John F. Akers, Roger S. Berlind, Thomas H. Cruikshank, Marsha Johnson Evans, Sir Christopher Gent, Jerry A. Grundhofer, Roland A. Hernandez, Henry Kaufman and John D. Macomber.

1.70    Intercompany Claim means (a) in the case of LBHI, any Claim against LBHI asserted by an Affiliate of LBHI other than an Administrative Expense Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Intercompany Claim, a Senior Affiliate Guarantee Claim, or an Affiliate Guarantee Claim or (b) in the case of a Subsidiary Debtor, any Claim against such Subsidiary Debtor asserted by an Affiliate of a Subsidiary Debtor other than an Administrative Expense Claim, a Priority Non-Tax Claim, or a Secured Claim.

1.71    IRS means the Internal Revenue Service.

1.72    <u>Jointly Owned Litigation Claims</u> means any Litigation Claims that may be, are or are asserted to be owned, either jointly or individually, by one or more of the Debtors.

1.73    <u>LAMCO</u> means LAMCO Holdings LLC and its subsidiary Affiliates.

1.74    <u>LB 745</u> means LB 745 LLC.

1.75    <u>LB 2080</u> means LB 2080 Kalakaua Owners LLC.

1.76    <u>LBB</u> means Lehman Brothers Bankhaus AG (in Insolvenz).

1.77    <u>LBCC</u> means Lehman Brothers Commercial Corporation.

1.78    <u>LBCS</u> means Lehman Brothers Commodities Services Inc.

1.79    <u>LBDP</u> means Lehman Brothers Derivative Products Inc.

1.80    <u>LBF</u> means Lehman Brothers Finance S.A.

1.81    <u>LBFP</u> means Lehman Brothers Financial Products Inc.

1.82    <u>LBHI</u> means Lehman Brothers Holdings Inc.

1.83    <u>LBHI Stock</u> means the common or preferred stock of LBHI outstanding on the Effective Date.

1.84    <u>LBHI Structured Securities Claims</u> means any Claim against LBHI (including a Guarantee Claim) that is based on a Structured Security.

1.85    <u>LBI</u> means Lehman Brothers Inc.

1.86    <u>LBIE</u> means Lehman Brothers International (Europe).

1.87    <u>LB Lux</u> means Lehman Brothers (Luxembourg) Equity Finance S.A.

1.88    <u>LB Rose Ranch</u> means LB Rose Ranch LLC.

1.89    <u>LBSF</u> means Lehman Brothers Special Financing Inc.

1.90    <u>LBSN</u> means Lehman Brothers Securities N.V.

1.91    <u>LBT</u> means Lehman Brothers Treasury Co. B.V.

1.92    <u>LCPI</u> means Lehman Commercial Paper Inc.

1.93    <u>Lehman</u> means LBHI together with all of its direct and indirect Affiliates existing on or after the LBHI Commencement Date.

1.94    <u>Lehman ALI</u> means Lehman ALI Inc.

9

1.95    Lien shall have the meaning assigned to such term in section 101(37) of the Bankruptcy Code.

1.96    Liquidating Trust means a trust that may be created after the Effective Date in accordance with the provisions of Article X of the Plan.

1.97    Liquidating Trust Agreement means an agreement evidencing the terms and provisions governing a Liquidating Trust that shall be entered into prior to the establishment of such Liquidating Trust and pursuant to which a Liquidating Trustee shall manage and administer Liquidating Trust Assets.

1.98    Liquidating Trust Assets means the assets of a Debtor or Debtor-Controlled Entity to be transferred to a Liquidating Trust as may be determined by the Plan Administrator, or with respect to a Domestic Operating Company, by the Domestic Operating Company Creditor Representative, which shall be described in a Liquidating Trust Agreement in respect of such Debtor.

1.99    Liquidating Trust Beneficiaries means those holders of Allowed Claims against, or Equity Interests in, a Debtor to the extent such holders receive Liquidating Trust Interests.

1.100    Liquidating Trustee means the person or entity appointed by the Plan Administrator, or with respect to a Domestic Operating Company, the Domestic Operating Company Creditor Representative, prior to the creation of a Liquidating Trust to administer such Liquidating Trust in accordance with the provisions of Article X of the Plan and a Liquidating Trust Agreement; *provided*, *however*, that under no circumstance shall a Liquidating Trustee be a director or officer with respect to any entity over which the Liquidating Trust has control.

1.101    Liquidating Trust Interests means the non-certificated beneficial interests of a Liquidating Trust allocable to holders of Allowed Claims and/or Equity Interests in accordance with the terms and conditions of a Liquidating Trust Agreement, which may or may not be transferable.

1.102    Litigation Claims means any and all Causes of Action held by a Debtor.

1.103    LOTC means Lehman Brothers OTC Derivatives Inc.

1.104    LS Finance means Lehman Scottish Finance L.P.

1.105    LUXCO means Luxembourg Residential Properties Loan Finance S.a.r.l.

1.106    Merit means Merit, LLC.

1.107    New Securities means the securities that may be distributed by a Debtor or Debtor-Controlled Entity after the Effective Date to the holders of Allowed Claims against or Equity Interests in such Debtor representing an interest in an existing or newly formed entity of a Debtor or Debtor-Controlled Entity pursuant to and in a manner consistent with Section 15.2 of the Plan.

1.108   <u>Non-Controlled Affiliate</u> means an Affiliate of the Debtors that is not currently managed and controlled by a Debtor as of the Effective Date, including, without limitation, all Affiliates that are subject to a Foreign Proceeding and LBI.

1.109   <u>Ordinary Course Professional Order</u> means the *Amended Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business*, approved and entered by the Bankruptcy Court on March 25, 2010 [Docket No. 7822], as the same may be amended from time to time.

1.110   <u>PAMI Statler</u> means PAMI Statler Arms LLC.

1.111   <u>Plan</u> means this joint plan, and all exhibits, supplements, appendices, and schedules hereto, including, without limitation, the Plan Supplement, as each of the foregoing may be altered, amended, modified, or supplemented from time to time.

1.112   Plan Administrator means LBHI pursuant to the authority granted in Section 6.1 of the Plan.

1.113   Plan Proponent means each of the entities identified on Schedule A to the Plan, as amended from time to time to reflect any additions thereto or withdrawals therefrom.

1.114   Plan Supplement means the document containing the forms of documents and other information specified in Section 15.5 of the Plan.

1.115   <u>Plan Trust</u> means the trust established under New York law to hold the Plan Trust Stock on and after the Effective Date.

1.116   <u>Plan Trust Agreement</u> means the agreement creating and setting forth the terms and conditions that shall govern the Plan Trust.

1.117   Plan Trust Stock means one new share of LBHI common stock to be issued to the Plan Trust upon cancellation of the LBHI Stock in accordance with Section 4.17(b) of the Plan.

1.118   <u>Plan Trustee</u> means any of the persons acting as trustee of the Plan Trust pursuant to <u>Section 7.4</u> of the Plan.

1.119   <u>Preferred Somerset</u> means LB Preferred Somerset LLC.

1.120   <u>Primary Affected Plan Proponent</u> means, with respect to a Designated Entity, each Affected Plan Proponent of such Designated Entity, (a) solely to the extent that such Designated Entity is the Designated Entity in which such Plan Proponent has the largest economic interest (based upon the amount of Claims asserted by such Plan Proponent in a proof of claim, multiplied by the then-current market price, as calculated by The Blackstone Group), and (b) the foregoing clause (a) shall not apply with respect to a Designated Entity if such application would result in there being no "Primary Affected Plan Proponents" against such Designated Entity.

11

1.121  Primary Claim means a Claim against a Primary Obligor for which a corresponding Guarantee Claim has been asserted.

1.122  Primary Creditor Representative means a person or entity, to be identified in the Plan Supplement, nominated by the Requisite Plan Proponents and appointed pursuant to the Confirmation Order and Section 6.2(a)(i) of the Plan .

1.123  Primary Obligor means an entity other than LBHI that is purportedly obligated or liable on a Claim with respect to which a Guarantee Claim has been asserted.

1.124  Priority Non-Tax Claim means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment under section 507(a) of the Bankruptcy Code.

1.125  Priority Tax Claim means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.126  Property of the Estate means all property of a Debtor pursuant to section 541 of the Bankruptcy Code.

1.127  Pro Rata Share means with respect to an Allowed Claim or Equity Interest (a) within the same Class, the proportion that an Allowed Claim or Equity Interest bears to the sum of all Allowed Claims and Disputed Claims or Allowed Equity Interests and Disputed Equity Interests within such Class, or (b) among all Classes, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims and Disputed Claims; *provided*, *however*, that Administrative Expense Claims, Priority Tax Claims, Priority Non-Tax Claims and Secured Claims shall not be considered for purposes of "Pro Rata Share"; *provided*, *further*, *however*, that with respect to the following Distributions, only Allowed Claims in the following Classes of Claims shall be considered in the determination of "Pro Rata Share":

(i)  Available Cash in the case of LBHI: Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims, Senior Third-Party LBT/LBSN Guarantee Claims, Derivative Claims, General Unsecured Claims, Intercompany Claims, Affiliate Guarantee Claims, Derivative Guarantee Claims, and Subordinated Claims.

(ii)  Available Cash in the case of a Subsidiary Debtor: General Unsecured Claims, Intercompany Claims, and Derivative Claims.

(iii)  Subordinated Class 10A Distribution: Senior Unsecured Claims and Senior Intercompany Claims.

(iv)  Subordinated Class 10B Distribution: Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee Claims and Senior Third-Party LBT/LBSN Guarantee Claims.

(v)  Subordinated Class 10C Distribution: Senior Unsecured Claims, Senior Intercompany Claims, Senior Affiliate Guarantee Claims, Senior Third-Party Guarantee

12

Claims, Senior Third-Party LBT/ LBSN Guarantee Claims, Subordinated Class 10A Claims and Subordinated Class 10B Claims.

For the avoidance of doubt, interest on Claims against a Debtor from and after the Commencement Date shall not be considered for purposes of "Pro Rata Share" unless and until such interest is required to be paid under this Plan.

1.128   Released Parties means, collectively, and in each case, solely in such capacity, the Debtors, each current and former Plan Proponent, the Independent Directors, the Plan Administrator, the Domestic Operating Company Creditor Representative, the Creditors' Committee, each current and former member of the Creditors' Committee and, with respect to each of the foregoing, their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases.

1.129   Remaining Disputed Claim means, at any date of determination, a Disputed Claim which has not been compromised or settled or otherwise determined by Final Order as of such date.

1.130   Requisite Affected Plan Proponents means, at any date of determination, with respect to a Designated Entity, (a) a majority in number of the Affected Plan Proponents of such Designated Entity, and (b) in addition to the foregoing, Affected Plan Proponents holding at least two-thirds of the amount of Claims asserted against such Designated Entity by all Affected Plan Proponents in proofs of claim.

1.131   Requisite Plan Proponents means, at any date of determination, (a) a majority in number of the Plan Proponents and in addition to the foregoing, (b) the Requisite Affected Plan Proponents, if applicable, and (c) the Requisite Primary Affected Plan Proponents, if applicable.

1.132   Requisite Primary Affected Plan Proponents means, at any date of determination, with respect to a Designated Entity, (a) a majority in number of the Primary Affected Plan Proponents of such Designated Entity, and (b) in addition to the foregoing, Primary Affected Plan Proponents holding at least two-thirds of the amount of Claims asserted against such Designated Entity by all Primary Affected Plan Proponents in proofs of claim.

1.133   Reserve Agent means, with respect to a Domestic Operating Company, the Domestic Operating Company Creditor Representative, and with respect to any other Debtor, such Debtor.

1.134   Reserved Claim Amount shall have the meaning assigned to such term in Section 8.4(a) of the Plan.

1.135   Reserved Distribution Amount shall have the meaning assigned to such term in Section 8.4(a) of the Plan.

1.136   SASCO means Structured Asset Securities Corporation.

13

1.137  Schedules means the schedules of assets and liabilities, schedules of current income and current expenditures and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

1.138  Secured Claim means any Claim (a) to the extent reflected in the Schedules or upon a proof of Claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (b) that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

1.139  Section 510(b) Claim means any Claim against LBHI that is described in section 510(b) of the Bankruptcy Code, other than any Claim arising out of, relating to, or in connection with the Equity Interests in LBHI.

1.140  Senior Affiliate Guarantee Claim means any Guarantee Claim asserted by an Affiliate of LBHI that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes).  For the avoidance of doubt, any Guarantee Claim asserted by LBT or LBSN shall be classified as a Senior Affiliate Guarantee Claim under this Plan.

1.141  Senior Intercompany Claim means any Claim asserted by an Affiliate of LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes), other than a Senior Affiliate Guarantee Claim.  For the avoidance of doubt, any Claim asserted by LBT or LBSN, other than a Senior Affiliate Guarantee Claim, shall be classified as a Senior Intercompany Claim under this Plan.

1.142  Senior Notes means, collectively, the various notes issued by LBHI as to which Wilmington Trust Co. serves as indenture trustee.

1.143  Senior Third-Party Guarantee Claim means any Guarantee Claim asserted by a third-party that is not an Affiliate of LBHI that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes), other than a Senior Third-Party LBT/LBSN Guarantee Claim.

1.144  Senior Third-Party LBT/LBSN Guarantee Claim means any Guarantee Claim on account of an underlying obligation or liability of LBT or LBSN that is entitled to a contractual right of priority in payment to Subordinated Class 10B Claims and Subordinated Class 10C Claims, but not Subordinated Class 10A Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C Subordinated Notes).

1.145  Senior Unsecured Claim means any Claim against LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 10B Subordinated Notes or Class 10C

14

Subordinated Notes), other than a Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Senior Third-Party Guarantee Claim, Senior Third-Party LBT/LBSN Guarantee Claim and any Claim of LBT or LBSN.

1.146   Shortfall Amount shall have the meaning given to such term in Section 8.2(b) of the Plan.

1.147   Somerset means LB Somerset LLC.

1.148   Stock Trading Restrictions Order means the *Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating Thereto* [Docket No. 1386], as the same may be amended from time to time.

1.149   Structured Securities means (i) structured notes issued by LBT, (ii) certificates and warrants issued by LBSN, (iii) structured notes issued by LBHI, (iv) structured notes issued by LBB, (v) structured securities issued by LB Lux, and (vi) certificates issued by LBF.

1.150   Structured Securities Estimated Maximum Allowable Claims Summary means the summary of proposed valuations for certain Structured Securities that will be set forth in the Plan Supplement, as it may be supplemented or amended.

1.151   Structured Securities Valuation Methodologies means the methodologies described in Exhibit A to the Plan, as it may hereafter be supplemented or amended.

1.152   Subordinated Class 10A Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 10A Claims but for the reallocation of such Distribution pursuant to Section 6.5 of the Plan.

1.153   Subordinated Class 10B Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 10B Claims but for the reallocation of such Distribution pursuant to Section 6.5 of the Plan.

1.154   Subordinated Class 10C Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 10C Claims but for the reallocation of such Distribution pursuant to Section 6.5 of the Plan.

1.155   Subordinated Claim means any Subordinated Class 10A Claim, Subordinated Class 10B Claim or Subordinated Class 10C Claim.

1.156   Subordinated Class 10A Claim means any Claim against LBHI arising under the Class 10A Subordinated Notes.

1.157   Subordinated Class 10B Claim means any Claim against LBHI arising under the Class 10B Subordinated Notes.

1.158   Subordinated Class 10C Claim means any Claim against LBHI arising under the Class 1 0C Subordinated Notes.

1.159    Subordinated Notes means, collectively, the Class 10A Subordinated Notes, Class 10B Subordinated Notes and Class 10C Subordinated Notes.

1.160    Subsidiary Debtor means each of the Debtors other than LBHI.

1.161    Voting Deadline means the date fixed by an order of the Bankruptcy Court as the last day upon which holders of Claims may vote to accept or reject the Plan.

Rules of Construction.    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.    Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.    The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.    The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.    The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II
## Treatment of Administrative
## Expense Claims and Priority Tax Claims

2.1    Administrative Expense Claims.    Except to the extent that a holder of an Allowed Administrative Expense Claim has been paid by a Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Debtor obligated for the payment of such Allowed Administrative Expense Claim in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by a Debtor or other obligations incurred by such Debtor shall be paid in full and performed by such Debtor in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.    Notwithstanding anything to the contrary herein, all fees and expenses incurred by a Plan Proponent in connection with the preparation, solicitation, and confirmation of the Plan, as well as the implementation, after confirmation, of the Plan, including without limitation any fees and expenses of any financial or legal advisor retained by a Plan Proponent in connection therewith, shall be paid as Administrative Expense Claims no later than three (3) Business Days following presentation to the Debtors of a reasonably detailed invoice indicating the nature of the services rendered; provided, however, that any such fees and expenses incurred prior to the Effective Date by a Plan Proponent in excess of $500,000.00, in the aggregate, shall be subject to the fee application procedures described in Section 2.2 of this Plan.

2.2    Professional Compensation and Reimbursement Claims.    Other than a professional retained by the Debtors pursuant to the Ordinary Course Professional Order, any

entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred on behalf of the Debtors and the Creditors' Committee through and including the Effective Date under section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Debtor in full and in Cash in the amounts Allowed upon (i) the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Debtor obligated for the payment of such Allowed Claim.    The Debtors are authorized to pay compensation for professional services rendered and reimburse expenses incurred on behalf of the Debtors and the Creditors' Committee after the Effective Date in the ordinary course and without Bankruptcy Court approval.  The Domestic Operating Company Creditor Representative, and the attorneys and professionals retained by the Domestic Operating Company Creditor Representative shall be compensated in the manner to be set forth in the Plan Supplement.  All fees and expenses incurred in the ordinary course of business by the Domestic Operating Company Creditor Representative or the professionals retained by the Domestic Operating Company Creditor Representative may be paid by Debtors without court approval.

2.3    Priority Tax Claims.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive from one or more of the Debtors obligated for the payment of such Allowed Priority Tax Claim, and at the sole option of such Debtor(s), (i) Cash in an amount equal to the Allowed amount of such Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable, or (ii) equal Cash payments to be made initially on the Effective Date or as soon thereafter as practicable and semi-annually thereafter in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate determined under applicable non-bankruptcy law, over a period from the Effective Date through the fifth (5th) anniversary after the Commencement Date; *provided*, *however*, that such election shall be without prejudice to the Debtor's right to prepay such Allowed Priority Tax Claim in full or in part without penalty.

## ARTICLE III
## Classification Of Claims And Equity Interests

Claims against the Debtors, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests are classified for all purposes (unless otherwise specified), including voting and Distribution pursuant to the Plan, as follows:

3.1    LBHI

| Class | Designation | Impairment | Entitlement to Vote |
|-------|-------------|------------|---------------------|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |

17

| 3 | Senior Unsecured Claims | Impaired | Yes |
| 4A | Senior Intercompany Claims | Impaired | Yes |
| 4B | Senior Affiliate Guarantee Claims | Impaired | Yes |
| 5A | Senior Third-Party Guarantee Claims | Impaired | Yes |
| 5B | Senior Third-Party LBT/LBSN Guarantee Claims | Impaired | Yes |
| 6 | Derivative Claims | Impaired | Yes |
| 7 | General Unsecured Claims | Impaired | Yes |
| 8A | Intercompany Claims | Impaired | Yes |
| 8B | Affiliate Guarantee Claims | Impaired | Yes |
| 9 | Derivative Guarantee Claims | Impaired | Yes |
| 10A | Subordinated Class 10A Claims | Impaired | Yes (but deemed to reject) |
| 10B | Subordinated Class 10B Claims | Impaired | Yes (but deemed to reject) |
| 10C | Subordinated Class 10C Claims | Impaired | Yes (but deemed to reject) |
| 11 | Section 510(b) Claims | Impaired | Yes (but deemed to reject) |
| 12 | Equity Interests | Impaired | Yes (but deemed to reject) |

3.2    LCPI

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

3.3    LBCS

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |

18

| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.4    LBSF

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.5    LOTC

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.6    LBCC

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.7    LBDP

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.8    LBFP

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Derivative Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5 | Intercompany Claims | Impaired | Yes |
| 6 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.9    LB 745

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.10    PAMI Statler

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.11    CES

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.12    CES V

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

### 3.13    CES IX

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.14    East Dover

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |

| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.15    LS Finance

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.16    LUXCO

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.17    BNC

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

### 3.18    LB Rose Ranch

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

3.19    <u>SASCO</u>

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to |

3.20    <u>LB 2080</u>

| Class | Designation | Impairment | Entitlement to Vote |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | General Unsecured Claims | Impaired | Yes |
| 4 | Intercompany Claims | Impaired | Yes |
| 5 | Equity Interests | Impaired | Yes (but deemed to reject) |

# ARTICLE IV

## Treatment of Claims Against and Equity Interests in LBHI

4.1    <u>LBHI Class 1 – Priority Non-Tax Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBHI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBHI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBHI Class 1 shall be paid by LBHI in Cash in full.

4.2    <u>LBHI Class 2 – Secured Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBHI Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBHI Class 2 shall be satisfied by, at the option of LBHI: (i) payment in Cash by LBHI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is

23

practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBHI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

4.3    LBHI Class 3 – Senior Unsecured Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBHI Class 3 shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution, and (iv) Subordinated Class 10C Distribution.

4.4    LBHI Class 4A – Senior Intercompany Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 4A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4A is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBHI Class 4A shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10A Distribution, (iii) Subordinated Class 10B Distribution and (iv) Subordinated Class 10C Distribution.

4.5    LBHI Class 4B – Senior Affiliate Guarantee Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 4B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 4B is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBHI Class 4B shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

4.6    LBHI Class 5A – Senior Third-Party Guarantee Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 5A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 5A is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBHI Class 5A shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

4.7    LBHI Class 5B – Senior Third-Party LBT/LBSN Guarantee Claims against LBHI.

24

(a)    <u>Impairment and Voting</u>.  LBHI Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 5B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 5B shall receive its Pro Rata Share of (i) Available Cash from LBHI, (ii) Subordinated Class 10B Distribution and (iii) Subordinated Class 10C Distribution.

4.8    <u>LBHI Class 6 – Derivative Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 6 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 6 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 6 shall receive its Pro Rata Share of Available Cash from LBHI.

4.9    <u>LBHI Class 7 – General Unsecured Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 7 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 7 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 7 shall receive its Pro Rata Share of Available Cash from LBHI.

4.10    <u>LBHI Class 8A – Intercompany Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 8A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 8A is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 8A shall receive its Pro Rata Share of Available Cash from LBHI.

4.11    <u>LBHI Class 8B – Affiliate Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 8B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 8B is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBHI Class 8B shall receive its Pro Rata Share of Available Cash from LBHI.

4.12    <u>LBHI Class 9 – Derivative Guarantee Claims against LBHI</u>.

(a)    <u>Impairment and Voting</u>.  LBHI Class 9 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 9 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBHI Class 9 shall receive its Pro Rata Share of Available Cash from LBHI.

25

4.13    LBHI Class 10A – Subordinated Class 10A Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 10A is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10A is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Holders of Allowed Claims in LBHI Class 10A shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10A shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

4.14    LBHI Class 10B – Subordinated Class 10B Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 10B is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10B is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Holders of Allowed Claims in LBHI Class 10B shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10B shall receive its Pro Rata Share of (i) Available Cash from LBHI and (ii) Subordinated Class 10C Distribution.

4.15    LBHI Class 10C – Subordinated Class 10C Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 10C is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 10C is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Holders of Allowed Claims in LBHI Class 10C shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A, LBHI Class 5B, LBHI Class 10A and LBHI Class 10B are satisfied in full, in which case each holder of an Allowed Claim in LBHI Class 10C shall receive its Pro Rata Share of Available Cash from LBHI.

4.16    LBHI Class 11 – Section 510(b) Claims against LBHI.

(a)    Impairment and Voting.  LBHI Class 11 is impaired by the Plan.  Each holder of an Allowed Claim in LBHI Class 11 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Holders of Allowed Claims in LBHI Class 11 shall not receive any Distributions on account of such Claims unless and until all holders of Allowed Claims against LBHI other than Claims in LBHI Class 11 are satisfied in full, in which case

each holder of an Allowed Claim in LBHI Class 11 shall receive its Pro Rata Share of Available Cash from LBHI.

4.17    LBHI Class 12 – Equity Interests in LBHI.

(a)    Impairment and Voting.  LBHI Class 12 is impaired by the Plan.  Each holder of an Equity Interest in LBHI Class 12 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Stock Exchange.  On the Effective Date, all LBHI Stock shall be cancelled and the Plan Trust Stock shall be issued to the Plan Trust which will hold such share for the benefit of the holders of such former LBHI Stock consistent with their former relative priority and economic entitlements; provided, however, that the Plan Trust may not exercise any voting rights appurtenant thereto in conflict with Article VII of the Plan.  On or promptly after the Effective Date, the Plan Administrator shall file with the Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of LBHI's publicly traded securities.

(c)    Distributions.  Each holder of an Equity Interest in LBHI (through their interest in the new share of LBHI common stock or otherwise) shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBHI on account of such Equity Interests; provided, however, that solely in the event that all Allowed Claims in LBHI Classes 1 through 11 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBHI may receive its share of any remaining assets of LBHI consistent with such holder's rights of payment existing immediately prior to the Commencement Date.  Unless otherwise determined by the Plan Administrator, on the date that LBHI's Chapter 11 Case is closed in accordance with Section 6.8 of the Plan, the Plan Trust Stock issued pursuant to subsection (b) above shall be deemed cancelled and of no further force and effect provided that such cancellation does not adversely impact the Debtors' estates.

(d)    Non-Transferable.  The continuing rights of holders of Equity Interests (including through their interest in the Plan Trust Stock or otherwise) shall be nontransferable except by operation of law.

**ARTICLE V**
**Treatment of Claims Against and Equity Interests in Subsidiary Debtors**

5.1    LCPI Class 1 – Priority Non-Tax Claims against LCPI.

(a)    Impairment and Voting.  LCPI Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LCPI Class 1 agrees to less favorable treatment or has been paid by or on behalf of LCPI on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LCPI Class 1 shall be paid by LCPI in Cash in full.

27

5.2     LCPI Class 2 – Secured Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 2 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LCPI Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LCPI Class 2 shall be satisfied by, at the option of LCPI: (i) payment in Cash by LCPI in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LCPI Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.3     LCPI Class 3 – Derivative Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 3 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LCPI Class 3 shall receive its Pro Rata Share of Available Cash from LCPI.

5.4     LCPI Class 4 – General Unsecured Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 4 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LCPI Class 4 shall receive its Pro Rata Share of Available Cash from LCPI.

5.5     LCPI Class 5 – Intercompany Claims against LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LCPI Class 5 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LCPI Class 5 shall receive its Pro Rata Share of Available Cash from LCPI.

5.6     LCPI Class 6 – Equity Interests in LCPI.

(a)     <u>Impairment and Voting</u>.  LCPI Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LCPI Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LCPI shall be cancelled if and when LCPI is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LCPI shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LCPI on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LCPI have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LCPI may receive its Pro Rata Share of any remaining assets in LCPI.

5.7    LBCS Class 1 – Priority Non-Tax Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBCS Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBCS on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBCS Class 1 shall be paid by LBCS in Cash in full.

5.8    LBCS Class 2 – Secured Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBCS Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBCS Class 2 shall be satisfied by, at the option of LBCS: (i) payment in Cash by LBCS in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBCS Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.9    LBCS Class 3 – Derivative Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBCS Class 3 shall receive its Pro Rata Share of Available Cash from LBCS.

5.10    LBCS Class 4 – General Unsecured Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBCS Class 4 shall receive its Pro Rata Share of Available Cash from LBCS.

5.11    LBCS Class 5 – Intercompany Claims against LBCS.

(a)    Impairment and Voting.  LBCS Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBCS Class 5 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBCS Class 5 shall receive its Pro Rata Share of Available Cash from LBCS.

5.12    LBCS Class 6 – Equity Interests in LBCS.

(a)    Impairment and Voting.  LBCS Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBCS Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LBCS shall be cancelled if and when LBCS is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LBCS shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBCS on account of such Equity Interests thereafter; provided, however, that solely in the event that all Allowed Claims against LBCS have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBCS may receive its Pro Rata Share of any remaining assets in LBCS.

5.13    LBSF Class 1 – Priority Non-Tax Claims against LBSF.

(a)    Impairment and Voting.  LBSF Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBSF Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBSF on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBSF Class 1 shall be paid by LBSF in Cash in full.

5.14    LBSF Class 2 – Secured Claims against LBSF.

(a)    Impairment and Voting.  LBSF Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBSF Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBSF Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBSF Class 2 shall be satisfied by, at the option of LBSF: (i) payment in Cash by LBSF in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such

30

treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in LBSF Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.15    <u>LBSF Class 3 – Derivative Claims against LBSF</u>.

(a)    <u>Impairment and Voting</u>. LBSF Class 3 is impaired by the Plan. Each holder of an Allowed Claim in LBSF Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed Claim in LBSF Class 3 shall receive its Pro Rata Share of Available Cash from LBSF.

5.16    <u>LBSF Class 4 – General Unsecured Claims against LBSF</u>.

(a)    <u>Impairment and Voting</u>. LBSF Class 4 is impaired by the Plan. Each holder of an Allowed Claim in LBSF Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed Claim in LBSF Class 4 shall receive its Pro Rata Share of Available Cash from LBSF.

5.17    <u>LBSF Class 5 – Intercompany Claims against LBSF</u>.

(a)    <u>Impairment and Voting</u>. LBSF Class 5 is impaired by the Plan. Each holder of an Allowed Claim in LBSF Class 5 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LBSF Class 5 shall receive its Pro Rata Share of Available Cash from LBSF.

5.18    <u>LBSF Class 6 – Equity Interests in LBSF</u>.

(a)    <u>Impairment and Voting</u>. LBSF Class 6 is impaired by the Plan. Each holder of an Equity Interest in LBSF Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>. Equity Interests in LBSF shall be cancelled if and when LBSF is dissolved in accordance with <u>Section 7.4</u> of the Plan. Each holder of an Equity Interest in LBSF shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBSF on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LBSF have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBSF may receive its Pro Rata Share of any remaining assets in LBSF.

5.19    <u>LOTC Class 1 – Priority Non-Tax Claims against LOTC</u>.

(a)    <u>Impairment and Voting</u>. LOTC Class 1 is impaired by the Plan. Each holder of an Allowed Claim in LOTC Class 1 is entitled to vote to accept or reject the Plan.

31

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in LOTC Class 1 agrees to less favorable treatment or has been paid by or on behalf of LOTC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LOTC Class 1 shall be paid by LOTC in Cash in full.

5.20    LOTC Class 2 – Secured Claims against LOTC.

(a)    _Impairment and Voting_.  LOTC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 2 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in LOTC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LOTC Class 2 shall be satisfied by, at the option of LOTC: (i) payment in Cash by LOTC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LOTC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.21    LOTC Class 3 – Derivative Claims against LOTC.

(a)    _Impairment and Voting_.  LOTC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed Claim in LOTC Class 3 shall receive its Pro Rata Share of Available Cash from LOTC.

5.22    LOTC Class 4 – General Unsecured Claims against LOTC.

(a)    _Impairment and Voting_.  LOTC Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 4 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed Claim in LOTC Class 4 shall receive its Pro Rata Share of Available Cash from LOTC.

5.23    LOTC Class 5 – Intercompany Claims against LOTC.

(a)    _Impairment and Voting_.  LOTC Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LOTC Class 5 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LOTC Class 5 shall receive its Pro Rata Share of Available Cash from LOTC.

5.24    LOTC Class 6 – Equity Interests in LOTC.

(a)     _Impairment and Voting_.  LOTC Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LOTC Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)     _Distributions_.  Equity Interests in LOTC shall be cancelled if and when LOTC is dissolved in accordance with _Section 7.4_ of the Plan.  Each holder of an Equity Interest in LOTC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LOTC on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against LOTC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LOTC may receive its Pro Rata Share of any remaining assets in LOTC.

5.25    _LBCC Class 1 – Priority Non-Tax Claims against LBCC_.

(a)     _Impairment and Voting_.  LBCC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 1 is entitled to vote to accept or reject the Plan.

(b)     _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBCC Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBCC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBCC Class 1 shall be paid by LBCC in Cash in full.

5.26    _LBCC Class 2 – Secured Claims against LBCC_.

(a)     _Impairment and Voting_.  LBCC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 2 is entitled to vote to accept or reject the Plan.

(b)     _Distributions_.  Except to the extent that the holder of an Allowed Claim in LBCC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBCC Class 2 shall be satisfied by, at the option of LBCC: (i) payment in Cash by LBCC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBCC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.27    _LBCC Class 3 – Derivative Claims against LBCC_.

(a)     _Impairment and Voting_.  LBCC Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 3 is entitled to vote to accept or reject the Plan.

(b)     _Distributions_.  Each holder of an Allowed Claim in LBCC Class 3 shall receive its Pro Rata Share of Available Cash from LBCC.

33

5.28    LBCC Class 4 – General Unsecured Claims against LBCC.

(a)    Impairment and Voting.  LBCC Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBCC Class 4 shall receive its Pro Rata Share of Available Cash from LBCC.

5.29    LBCC Class 5 – Intercompany Claims against LBCC.

(a)    Impairment and Voting.  LBCC Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBCC Class 5 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBCC Class 5 shall receive its Pro Rata Share of Available Cash from LBCC.

5.30    LBCC Class 6 – Equity Interests in LBCC.

(a)    Impairment and Voting.  LBCC Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBCC Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LBCC shall be cancelled if and when LBCC is dissolved in accordance with Section 7.4 of the Plan. Each holder of an Equity Interest in LBCC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBCC on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LBCC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBCC may receive its Pro Rata Share of any remaining assets in LBCC.

5.31    LBDP Class 1 – Priority Non-Tax Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBDP Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBDP on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBDP Class 1 shall be paid by LBDP in Cash in full.

5.32    LBDP Class 2 – Secured Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LBDP Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBDP

Class 2 shall be satisfied by, at the option of LBDP: (i) payment in Cash by LBDP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBDP Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.33    LBDP Class 3 – Derivative Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBDP Class 3 shall receive its Pro Rata Share of Available Cash from LBDP.

5.34    LBDP Class 4 – General Unsecured Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBDP Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LBDP Class 4 shall receive its Pro Rata Share of Available Cash from LBDP.

5.35    LBDP Class 5 – Intercompany Claims against LBDP.

(a)    Impairment and Voting.  LBDP Class 5 is impaired by the Plan. Each holder of an Allowed Claim in LBDP Class 5 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBDP Class 5 shall receive its Pro Rata Share of Available Cash from LBDP.

5.36    LBDP Class 6 – Equity Interests in LBDP.

(a)    Impairment and Voting.  LBDP Class 6 is impaired by the Plan.  Each holder of an Equity Interest in LBDP Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LBDP shall be cancelled if and when LBDP is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LBDP shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBDP on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LBDP have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBDP may receive its Pro Rata Share of any remaining assets in LBDP.

5.37    <u>LBFP Class 1 – Priority Non-Tax Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBFP Class 1 agrees to less favorable treatment or has been paid by or on behalf of LBFP on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LBFP Class 1 shall be paid by LBFP in Cash in full.

5.38    <u>LBFP Class 2 – Secured Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LBFP Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LBFP Class 2 shall be satisfied by, at the option of LBFP: (i) payment in Cash by LBFP in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LBFP Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.39    <u>LBFP Class 3 – Derivative Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBFP Class 3 shall receive its Pro Rata Share of Available Cash from LBFP.

5.40    <u>LBFP Class 4 – General Unsecured Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LBFP Class 4 shall receive its Pro Rata Share of Available Cash from LBFP.

5.41    <u>LBFP Class 5 – Intercompany Claims against LBFP</u>.

(a)    <u>Impairment and Voting</u>.  LBFP Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in LBFP Class 5 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LBFP Class 5 shall receive its Pro Rata Share of Available Cash from LBFP.

5.42    LBFP Class 6 – Equity Interests in LBFP.

(a)    Impairment and Voting.    LBFP Class 6 is impaired by the Plan.    Each holder of an Equity Interest in LBFP Class 6 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.    Equity Interests in LBFP shall be cancelled if and when LBFP is dissolved in accordance with Section 7.4 of the Plan.    Each holder of an Equity Interest in LBFP shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LBFP on account of such Equity Interests thereafter; provided, however, that solely in the event that all Allowed Claims against LBFP have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBFP may receive its Pro Rata Share of any remaining assets in LBFP.

5.43    LB 745 Class 1 – Priority Non-Tax Claims against LB 745.

(a)    Impairment and Voting.    LB 745 Class 1 is impaired by the Plan.    Each holder of an Allowed Claim in LB 745 Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in LB 745 Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB 745 on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB 745 Class 1 shall be paid by LB 745 in Cash in full.

5.44    LB 745 Class 2 – Secured Claims against LB 745.

(a)    Impairment and Voting.    LB 745 Class 2 is impaired by the Plan.    Each holder of an Allowed Claim in LB 745 Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.    Except to the extent that the holder of an Allowed Claim in LB 745 Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB 745 Class 2 shall be satisfied by, at the option of LB 745: (i) payment in Cash by LB 745 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.    In the event an Allowed Claim in LB 745 Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.45    LB 745 Class 3 – General Unsecured Claims against LB 745.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LB 745 Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>. Each holder of an Allowed Claim in LB 745 Class 3 shall receive its Pro Rata Share of Available Cash from LB 745.

5.46    <u>LB 745 Class 4 – Intercompany Claims against LB 745</u>.

(a)    <u>Impairment and Voting</u>. LB 745 Class 4 is impaired by the Plan. Each holder of an Allowed Claim in LB 745 Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LB 745 Class 4 shall receive its Pro Rata Share of Available Cash from LB 745.

5.47    <u>LB 745 Class 5 – Equity Interests in LB 745</u>.

(a)    <u>Impairment and Voting</u>.  LB 745 Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LB 745 Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in LB 745 shall be cancelled if and when LB 745 is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LB 745 shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LB 745 on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LB 745 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB 745 may receive its Pro Rata Share of any remaining assets in LB 745.

5.48    <u>PAMI Statler Class 1 – Priority Non-Tax Claims against PAMI Statler</u>.

(a)    <u>Impairment and Voting</u>.  PAMI Statler Class 1 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in PAMI Statler Class 1 agrees to less favorable treatment or has been paid by or on behalf of PAMI Statler on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in PAMI Statler Class 1 shall be paid by PAMI Statler in Cash in full.

5.49    <u>PAMI Statler Class 2 – Secured Claims against PAMI Statler</u>.

(a)    <u>Impairment and Voting</u>.  PAMI Statler Class 2 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 2 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Except to the extent that the holder of an Allowed Claim in PAMI Statler Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in PAMI Statler Class 2 shall be satisfied by, at the option of PAMI Statler: (i) payment in Cash by PAMI Statler in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in PAMI Statler Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.50     PAMI Statler Class 3 – General Unsecured Claims against PAMI Statler.

(a)     Impairment and Voting.  PAMI Statler Class 3 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 3 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Each holder of an Allowed Claim in PAMI Statler Class 3 shall receive its Pro Rata Share of Available Cash from PAMI Statler.

5.51     PAMI Statler Class 4 – Intercompany Claims against PAMI Statler.

(a)     Impairment and Voting.  PAMI Statler Class 4 is impaired by the Plan. Each holder of an Allowed Claim in PAMI Statler Class 4 is entitled to vote to accept or reject the Plan.

(b)     Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in PAMI Statler Class 4 shall receive its Pro Rata Share of Available Cash from PAMI Statler.

5.52     PAMI Statler Class 5 – Equity Interests in PAMI Statler.

(a)     Impairment and Voting.  PAMI Statler Class 5 is impaired by the Plan. Each holder of an Equity Interest in PAMI Statler Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)     Distributions.  Equity Interests in PAMI Statler shall be cancelled if and when PAMI Statler is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in PAMI Statler shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of PAMI Statler on account of such Equity Interests thereafter; provided, however, that solely in the event that all Allowed Claims against PAMI Statler have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in PAMI Statler may receive its Pro Rata Share of any remaining assets in PAMI Statler.

5.53     CES Class 1 – Priority Non-Tax Claims against CES.

39

(a)    <u>Impairment and Voting</u>.  CES Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES Class 1 shall be paid by CES in Cash in full.

5.54    <u>CES Class 2 – Secured Claims against CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in CES Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES Class 2 shall be satisfied by, at the option of CES: (i) payment in Cash by CES in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in CES Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.55    <u>CES Class 3A – General Unsecured Claims against CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in CES Class 3 shall receive its Pro Rata Share of Available Cash from CES.

5.56    <u>CES Class 4 – Intercompany Claims against CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in CES Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in CES Class 4 shall receive its Pro Rata Share of Available Cash from CES.

5.57    <u>CES Class 5 – Equity Interests in CES</u>.

(a)    <u>Impairment and Voting</u>.  CES Class 5 is impaired by the Plan.  Each holder of an Equity Interest in CES Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

40

(b)    _Distributions_.  Equity Interests in CES shall be cancelled if and when CES is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in CES shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against CES have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES may receive its Pro Rata Share of any remaining assets in CES.

5.58    CES V Class 1 – Priority Non-Tax Claims against CES V.

(a)    _Impairment and Voting_.  CES V Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 1 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in CES V Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES V on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES V Class 1 shall be paid by CES V in Cash in full.

5.59    CES V Class 2 – Secured Claims against CES V.

(a)    _Impairment and Voting_.  CES V Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 2 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in CES V Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES V Class 2 shall be satisfied by, at the option of CES V: (i) payment in Cash by CES V in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in CES V Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.60    CES V Class 3 – General Unsecured Claims against CES V.

(a)    _Impairment and Voting_.  CES V Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed Claim in CES V Class 3 shall receive its Pro Rata Share of Available Cash from CES V.

5.61    CES V Class 4 – Intercompany Claims against CES V.

(a)    _Impairment and Voting_.  CES V Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in CES V Class 4 is entitled to vote to accept or reject the Plan.

41

(b)   Distributions.   Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in CES V Class 4 shall receive its Pro Rata Share of Available Cash from CES V.

5.62   CES V Class 5 – Equity Interests in CES V.

(a)   Impairment and Voting.   CES V Class 5 is impaired by the Plan.   Each holder of an Equity Interest in CES V Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)   Distributions.   Equity Interests in CES V shall be cancelled if and when CES V is dissolved in accordance with Section 7.4 of the Plan.   Each holder of an Equity Interest in CES V shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES V on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against CES V have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES V may receive its Pro Rata Share of any remaining assets in CES V.

5.63   CES IX Class 1 – Priority Non-Tax Claims against CES IX.

(a)   Impairment and Voting.   CES IX Class 1 is impaired by the Plan.   Each holder of an Allowed Claim in CES IX Class 1 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in CES IX Class 1 agrees to less favorable treatment or has been paid by or on behalf of CES IX on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in CES IX Class 1 shall be paid by CES IX in Cash in full.

5.64   CES IX Class 2 – Secured Claims against CES IX.

(a)   Impairment and Voting.   CES IX Class 2 is impaired by the Plan.   Each holder of an Allowed Claim in CES IX Class 2 is entitled to vote to accept or reject the Plan.

(b)   Distributions.   Except to the extent that the holder of an Allowed Claim in CES IX Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in CES IX Class 2 shall be satisfied by, at the option of CES IX: (i) payment in Cash by CES IX in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.   In the event an Allowed Claim in CES IX Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.65   CES IX Class 3 – General Unsecured Claims against CES IX.

42

(a)    <u>Impairment and Voting</u>.  CES IX Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in CES IX Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in CES IX Class 3 shall receive its Pro Rata Share of Available Cash from CES IX.

5.66    <u>CES IX Class 4 – Intercompany Claims against CES IX</u>.

(a)    <u>Impairment and Voting</u>.  CES IX Class 4 is impaired by the Plan.   Each holder of an Allowed Claim in CES IX Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in CES IX Class 4 shall receive its Pro Rata Share of Available Cash from CES IX.

5.67    <u>CES IX Class 5 – Equity Interests in CES IX</u>.

(a)    <u>Impairment and Voting</u>.  CES IX Class 5 is impaired by the Plan.  Each holder of an Equity Interest in CES IX Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    <u>Distributions</u>.  Equity Interests in CES IX shall be cancelled if and when CES IX is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in CES IX shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of CES IX on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against CES IX have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in CES IX may receive its Pro Rata Share of any remaining assets in CES IX.

5.68    <u>East Dover Class 1 – Priority Non-Tax Claims against East Dover</u>.

(a)    <u>Impairment and Voting</u>.  East Dover Class 1 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 1 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in East Dover Class 1 agrees to less favorable treatment or has been paid by or on behalf of East Dover on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in East Dover Class 1 shall be paid by East Dover in Cash in full.

43

5.69    East Dover Class 2 – Secured Claims against East Dover.

(a)    Impairment and Voting.  East Dover Class 2 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in East Dover Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in East Dover Class 2 shall be satisfied by, at the option of East Dover: (i) payment in Cash by East Dover in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in East Dover Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.70    East Dover Class 3 – General Unsecured Claims against East Dover.

(a)    Impairment and Voting.  East Dover Class 3 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in East Dover Class 3 shall receive its Pro Rata Share of Available Cash from East Dover.

5.71    East Dover Class 4 – Intercompany Claims against East Dover.

(a)    Impairment and Voting.  East Dover Class 4 is impaired by the Plan. Each holder of an Allowed Claim in East Dover Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in East Dover Class 4 shall receive its Pro Rata Share of Available Cash from East Dover.

5.72    East Dover Class 5 – Equity Interests in East Dover.

(a)    Impairment and Voting.  East Dover Class 5 is impaired by the Plan. Each holder of an Equity Interest in East Dover Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in East Dover shall be cancelled if and when East Dover is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in East Dover shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of East Dover on account of such Equity Interests thereafter; provided, however, that solely in the event that all Allowed Claims against East Dover have

44

been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in East Dover may receive its Pro Rata Share of any remaining assets in East Dover.

5.73    LS Finance Class 1 – Priority Non-Tax Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 1 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LS Finance Class 1 agrees to less favorable treatment or has been paid by or on behalf of LS Finance on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LS Finance Class 1 shall be paid by LS Finance in Cash in full.

5.74    LS Finance Class 2 – Secured Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 2 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LS Finance Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LS Finance Class 2 shall be satisfied by, at the option of LS Finance: (i) payment in Cash by LS Finance in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LS Finance Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.75    LS Finance Class 3 – General Unsecured Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 3 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LS Finance Class 3 shall receive its Pro Rata Share of Available Cash from LS Finance.

5.76    LS Finance Class 4 – Intercompany Claims against LS Finance.

(a)    Impairment and Voting.  LS Finance Class 4 is impaired by the Plan. Each holder of an Allowed Claim in LS Finance Class 4 is entitled to vote to accept or reject the Plan.

45

(b)    *Distributions*.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LS Finance Class 4 shall receive its Pro Rata Share of Available Cash from LS Finance.

5.77    LS Finance Class 5 – Equity Interests in LS Finance.

(a)    *Impairment and Voting*.  LS Finance Class 5 is impaired by the Plan. Each holder of an Equity Interest in LS Finance Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    *Distributions*.  Equity Interests in LS Finance shall be cancelled if and when LS Finance is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LS Finance shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LS Finance on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LS Finance have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LS Finance may receive its Pro Rata Share of any remaining assets in LS Finance.

5.78    LUXCO Class 1 – Priority Non-Tax Claims against LUXCO.

(a)    *Impairment and Voting*.  LUXCO Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 1 is entitled to vote to accept or reject the Plan.

(b)    *Distributions*.  Except to the extent that the holder of an Allowed Claim in LUXCO Class 1 agrees to less favorable treatment or has been paid by or on behalf of LUXCO on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LUXCO Class 1 shall be paid by LUXCO in Cash in full.

5.79    LUXCO Class 2 – Secured Claims against LUXCO.

(a)    *Impairment and Voting*.  LUXCO Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 2 is entitled to vote to accept or reject the Plan.

(b)    *Distributions*.  Except to the extent that the holder of an Allowed Claim in LUXCO Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LUXCO Class 2 shall be satisfied by, at the option of LUXCO: (i) payment in Cash by LUXCO in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LUXCO Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.80    LUXCO Class 3 – General Unsecured Claims against LUXCO.

(a)    Impairment and Voting.  LUXCO Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 3 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Each holder of an Allowed Claim in LUXCO Class 3 shall receive its Pro Rata Share of Available Cash from LUXCO.

5.81    LUXCO Class 4 – Intercompany Claims against LUXCO.

(a)    Impairment and Voting.  LUXCO Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LUXCO Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in LUXCO Class 4 shall receive its Pro Rata Share of Available Cash from LUXCO.

5.82    LUXCO Class 5 – Equity Interests in LUXCO.

(a)    Impairment and Voting.  LUXCO Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LUXCO Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in LUXCO shall be cancelled if and when LUXCO is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LUXCO shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LUXCO on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against LUXCO have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LUXCO may receive its Pro Rata Share of any remaining assets in LUXCO.

5.83    BNC Class 1 – Priority Non-Tax Claims against BNC.

(a)    Impairment and Voting.  BNC Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in BNC Class 1 agrees to less favorable treatment or has been paid by or on behalf of BNC on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in BNC Class 1 shall be paid by BNC in Cash in full.

5.84    BNC Class 2 – Secured Claims against BNC.

(a)    Impairment and Voting.  BNC Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in BNC Class 2 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Except to the extent that the holder of an Allowed Claim in BNC Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in BNC Class 2 shall be satisfied by, at the option of BNC: (i) payment in Cash by BNC in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled. In the event an Allowed Claim in BNC Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.85    <u>BNC Class 3 – General Unsecured Claims against BNC</u>.

(a) <u>Impairment and Voting</u>. BNC Class 3 is impaired by the Plan. Each holder of an Allowed Claim in BNC Class 3 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed Claim in BNC Class 3 shall receive its Pro Rata Share of Available Cash from BNC.

5.86    <u>BNC Class 4 – Intercompany Claims against BNC</u>.

(a) <u>Impairment and Voting</u>. BNC Class 4 is impaired by the Plan. Each holder of an Allowed Claim in BNC Class 4 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in BNC Class 4 shall receive its Pro Rata Share of Available Cash from BNC.

5.87    <u>BNC Class 5 – Equity Interests in BNC</u>.

(a) <u>Impairment and Voting</u>. BNC Class 5 is impaired by the Plan. Each holder of an Equity Interest in BNC Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b) <u>Distributions</u>. Equity Interests in BNC shall be cancelled if and when BNC is dissolved in accordance with <u>Section 7.4</u> of the Plan. Each holder of an Equity Interest in BNC shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of BNC on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against BNC have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in BNC may receive its Pro Rata Share of any remaining assets in BNC.

5.88    <u>LB Rose Ranch Class 1 – Priority Non-Tax Claims against LB Rose Ranch</u>.

(a) <u>Impairment and Voting</u>. LB Rose Ranch Class 1 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 1 is entitled to vote to accept or reject the Plan.

48

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LB Rose Ranch Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB Rose Ranch on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB Rose Ranch Class 1 shall be paid by LB Rose Ranch in Cash in full.

5.89    <u>LB Rose Ranch Class 2 – Secured Claims against LB Rose Ranch</u>.

(a)    <u>Impairment and Voting</u>.  LB Rose Ranch Class 2 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 2 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Except to the extent that the holder of an Allowed Claim in LB Rose Ranch Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB Rose Ranch Class 2 shall be satisfied by, at the option of LB Rose Ranch: (i) payment in Cash by LB Rose Ranch in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB Rose Ranch Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.90    <u>LB Rose Ranch Class 3 – General Unsecured Claims against LB Rose Ranch</u>.

(a)    <u>Impairment and Voting</u>.  LB Rose Ranch Class 3 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in LB Rose Ranch Class 3 shall receive its Pro Rata Share of Available Cash from LB Rose Ranch.

5.91    <u>LB Rose Ranch Class 4 – Intercompany Claims against LB Rose Ranch</u>.

(a)    <u>Impairment and Voting</u>.  LB Rose Ranch Class 4 is impaired by the Plan. Each holder of an Allowed Claim in LB Rose Ranch Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LB Rose Ranch Class 4 shall receive its Pro Rata Share of Available Cash from LB Rose Ranch.

5.92    <u>LB Rose Ranch Class 5 – Equity Interests in LB Rose Ranch</u>.

(a)    _Impairment and Voting_.  LB Rose Ranch Class 5 is impaired by the Plan. Each holder of an Equity Interest in LB Rose Ranch Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    _Distributions_.  Equity Interests in LB Rose Ranch shall be cancelled if and when LB Rose Ranch is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in LB Rose Ranch shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LB Rose Ranch on account of such Equity Interests thereafter; _provided_, _however_, that solely in the event that all Allowed Claims against LB Rose Ranch have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB Rose Ranch may receive its Pro Rata Share of any remaining assets in LB Rose Ranch.

5.93    _SASCO Class 1 – Priority Non-Tax Claims against SASCO_.

(a)    _Impairment and Voting_.  SASCO Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in SASCO Class 1 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in SASCO Class 1 agrees to less favorable treatment or has been paid by or on behalf of SASCO on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in SASCO Class 1 shall be paid by SASCO in Cash in full.

5.94    _SASCO Class 2 – Secured Claims against SASCO_.

(a)    _Impairment and Voting_.  SASCO Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in SASCO Class 2 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Except to the extent that the holder of an Allowed Claim in SASCO Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in SASCO Class 2 shall be satisfied by, at the option of SASCO: (i) payment in Cash by SASCO in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in SASCO Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.95    _SASCO Class 3 – General Unsecured Claims against SASCO_.

(a)    _Impairment and Voting_.  SASCO Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in SASCO Class 3 is entitled to vote to accept or reject the Plan.

(b)    _Distributions_.  Each holder of an Allowed Claim in SASCO Class 3 shall receive its Pro Rata Share of Available Cash from SASCO.

5.96    SASCO Class 4 – Intercompany Claims against SASCO.

(a)    Impairment and Voting.  SASCO Class 4 is impaired by the Plan.   Each holder of an Allowed Claim in SASCO Class 4 is entitled to vote to accept or reject the Plan.

(b)    Distributions.   Subject to Section 6.7 of the Plan, each holder of an Allowed Claim in SASCO Class 4 shall receive its Pro Rata Share of Available Cash from SASCO.

5.97    SASCO Class 5 – Equity Interests in SASCO.

(a)    Impairment and Voting.  SASCO Class 5 is impaired by the Plan.  Each holder of an Equity Interest in SASCO Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)    Distributions.  Equity Interests in SASCO shall be cancelled if and when SASCO is dissolved in accordance with Section 7.4 of the Plan.  Each holder of an Equity Interest in SASCO shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of SASCO on account of such Equity Interests thereafter; *provided*, *however*, that solely in the event that all Allowed Claims against SASCO have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in SASCO may receive its Pro Rata Share of any remaining assets in SASCO.

5.98    LB 2080 Class 1 – Priority Non-Tax Claims against LB 2080.

(a)    Impairment and Voting.  LB 2080 Class 1 is impaired by the Plan.  Each holder of an Allowed Claim in LB 2080 Class 1 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LB 2080 Class 1 agrees to less favorable treatment or has been paid by or on behalf of LB 2080 on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable, each holder of an Allowed Claim in LB 2080 Class 1 shall be paid by LB 2080 in Cash in full.

5.99    LB 2080 Class 2 – Secured Claims against LB 2080.

(a)    Impairment and Voting.  LB 2080 Class 2 is impaired by the Plan.  Each holder of an Allowed Claim in LB 2080 Class 2 is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in LB 2080 Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in LB 2080 Class 2 shall be satisfied by, at the option of LB 2080: (i) payment in Cash by LB 2080 in full on the later of the Effective Date and the date such Claim becomes Allowed, or as soon thereafter as is practicable; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an Allowed Claim in LB 2080

51

Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

5.100   <u>LB 2080 Class 3 – General Unsecured Claims against LB 2080</u>.

(a)     <u>Impairment and Voting</u>.  LB 2080 Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in LB 2080 Class 3 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Each holder of an Allowed Claim in LB 2080 Class 3 shall receive its Pro Rata Share of Available Cash from LB 2080.

5.101   <u>LB 2080 Class 4 – Intercompany Claims against LB 2080</u>.

(a)     <u>Impairment and Voting</u>.  LB 2080 Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in LB 2080 Class 4 is entitled to vote to accept or reject the Plan.

(b)     <u>Distributions</u>.  Subject to <u>Section 6.7</u> of the Plan, each holder of an Allowed Claim in LB 2080 Class 4 shall receive its Pro Rata Share of Available Cash from LB 2080.

5.102   <u>LB 2080 Class 5 – Equity Interests in LB 2080</u>.

(a)     <u>Impairment and Voting</u>.  LB 2080 Class 5 is impaired by the Plan.  Each holder of an Equity Interest in LB 2080 Class 5 is deemed to have rejected the Plan because its vote to accept or reject the Plan is not being solicited.

(b)     <u>Distributions</u>.  Equity Interests in LB 2080 shall be cancelled if and when LB 2080 is dissolved in accordance with <u>Section 7.4</u> of the Plan.  Each holder of an Equity Interest in LB 2080 shall neither receive nor retain any Property of the Estate or direct interest in Property of the Estate of LB 2080 on account of such Equity Interests thereafter; *provided, however*, that solely in the event that all Allowed Claims against LB 2080 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LB 2080 may receive its Pro Rata Share of any remaining assets in LB 2080.

## ARTICLE VI
## Implementation of the Plan

6.1     <u>Plan Administrator</u>.

(a)     <u>Appointment</u>.  LBHI shall serve as Plan Administrator for each of the Debtors.

(b)     <u>Authority</u>.  Except with respect to the rights and authority of the Domestic Operating Company Creditor Representative under <u>Section 6.2</u> of the Plan, the Plan Administrator shall have the authority and right on behalf of each of the Debtors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)      control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors (including, without limitation, Guarantee Claims) subject to Bankruptcy Court approval;

(ii)      supervise the making of Distributions to holders of Allowed Claims against the Debtors in accordance with Article VIII of the Plan;

(iii)      exercise its reasonable business judgment to direct and control the wind down, liquidation and/or abandoning of the assets of the Debtors;

(iv)      prosecute all Litigation Claims, including, without limitation, Avoidance Actions, on behalf of the Debtors, and to elect not to pursue any Litigation Claims and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Litigation Claims, as the Plan Administrator may determine is in the best interests of the Debtors;

(v)      make payments to existing professionals who will continue to perform in their current capacities;

(vi)      retain professionals to assist in performing its duties under the Plan;

(vii)      maintain the books and records and accounts of the Debtors;

(viii)      invest Cash of the Debtors, including any Cash proceeds realized from the liquidation of any assets of the Debtors, including any Litigation Claims, and any income earned thereon;

(ix)      incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(x)      administer each Debtor's tax obligations, including (i) filing tax returns and paying tax obligations, (ii) request, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) represent the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xi)      prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required by any Governmental Unit or applicable law; and

(xii)      determine whether to create a Liquidating Trust for the assets of a Debtor or Debtor-Controlled Entity pursuant to Section 10.1 of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with Section 15.2 of the Plan;

*provided that* the Plan Administrator shall have the authority and right on behalf of any Debtor other than a Domestic Operating Company, to file an objection, response, or to otherwise seek to be heard with respect to the rights and authority of the Domestic Operating Company Creditor Representative under Section 6.2 of the Plan.

(c)    No Liability of Plan Administrator.  The Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the Plan Administrator.

6.2    Domestic Operating Company Creditor Representative.

(a)    Appointment.

(i)    The Confirmation Order shall provide for the appointment of the Primary Creditor Representative, and on the Effective Date, such appointment of the Primary Creditor Representative shall be effective.

(ii)    After the Effective Date, to the extent that an actual or potential conflict (a "Creditor Representative Conflict") exists in connection with the performance of the Primary Creditor Representative's responsibilities under this Plan, an Additional Creditor Representative shall be appointed with respect to such Creditor Representative Conflict by (A) the Primary Creditor Representative, without the need for Bankruptcy Court approval, so long as such Additional Creditor Representative has been identified by the Requisite Plan Proponents in the Plan Supplement as a potential Additional Creditor Representative, or  (B) the Bankruptcy Court, upon the motion of the Primary Creditor Representative or any holder of Claims against the Domestic Operating Company with respect to which such Creditor Representative Conflict exists.  A notice of the appointment of any Additional Creditor Representative pursuant to clause (A) of this paragraph shall be filed in the Chapter 11 Cases no later than five (5) Business Days after such appointment.

(b)    Authority.  Notwithstanding Section 6.1 of the Plan, the Domestic Operating Company Creditor Representative shall have the obligation, authority and right to act as fiduciary on behalf, and in the best interests, of the Domestic Operating Companies and their creditors, without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out the following responsibilities:

(i)    subject to Section 6.7 of the Plan, evaluate and determine the proper treatment of all Claims and Causes of Action asserted (or that could be asserted) against a Domestic Operating Company, including whether to object to, litigate, seek to subordinate, compromise or settle such Claim, including, without limitation, any and all Intercompany Claims;

(ii)    subject to Section 6.7 of the Plan, evaluate and assert each Claim and Litigation Claim of a Domestic Operating Company against a Debtor or non-Debtor Affiliate, including whether to, as applicable, litigate, compromise or settle such Claim

54

or Litigation Claim, including, without limitation, any such Claim or Litigation Claim arising from any repurchase transaction or securitization;

(iii)    subject to <u>Section 6.7</u> of the Plan, with respect to (A) any Disputed Claims against a Domestic Operating Company not resolved as of the Effective Date, and (B) any other Claim against a Domestic Operating Company that is not Allowed as of the Effective Date, control and effectuate the Claims reconciliation process, including to object to, litigate, seek to subordinate, compromise or settle such Claims, and review and approve objections to and proposed settlements of Disputed Claims as they relate to the Domestic Operating Companies;

(iv)    review any Administrative Expenses proposed to be allocated to a Domestic Operating Company, including any expenses allocated pursuant to the Debtor Allocation Agreement, and approve any such allocations it determines to be in accordance with the Debtor Allocation Agreement or otherwise to reasonably reflect the benefit received by the Domestic Operating Company from the expense incurred;

(v)    supervise the making of Distributions to holders of Allowed Claims against the Domestic Operating Companies in accordance with <u>Article VIII</u> of the Plan;

(vi)    exercise the rights and perform the obligations of the Reserve Agent with respect to the Domestic Operating Companies in accordance with <u>Section 8.4</u> of the Plan;

(vii)    subject to <u>Section 6.7</u> of the Plan, request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by section 502(c) of the Bankruptcy Code;

(viii)    subject to <u>Section 6.7</u> of the Plan, review and approve the prosecution of Litigation Claims, Causes of Action, and adversary and other proceedings as they relate to any Domestic Operating Company, if any, including approving proposed settlements thereof;

(ix)    retain professionals to assist in performing its duties under the Plan;

(x)    determine whether to create a Liquidating Trust for the assets of a Domestic Operating Company pursuant to <u>Section 10.1</u> of the Plan and which assets to transfer to such Liquidating Trust or to issue New Securities in accordance with <u>Section 15.2</u> of the Plan;

(xi)    evaluate, insofar as they relate or affect any Domestic Operating Company, intercompany arrangements among one or more of the Debtors, or among one or more of the Debtors and the non-Debtor Affiliates, including any intercompany arrangements in respect of sharing of tax items, and ensure that such arrangements are executed on arm's length terms;

(xii)    determine whether to take any action to wind-down or dissolve any Domestic Operating Company and exercise its reasonable business judgment to direct

and control any such wind-down, liquidation, dissolution and/or abandoning of the assets of the Debtors; and

(xiii)   incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Domestic Operating Company Creditor Representative;

*provided, however*, that with respect to (a) Intercompany Claims and Causes of Action asserted (or that could be asserted) by a Non-Controlled Affiliate against a Domestic Operating Company or (b) Claims and Causes of Action asserted (or that could be asserted) by a Domestic Operating Company against a Non-Controlled Affiliate (collectively, "Non-Controlled Affiliate Claims", the authority to object to, litigate, seek to subordinate, compromise, or settle such Non-Controlled Affiliate Claims shall vest with the Plan Administrator; *provided, further* that (x) any such settlement of Non-Controlled Affiliate Claims will be of no force or effect absent entry of a Final Order approving such settlement, upon notice and a hearing, and (y) the Domestic Operating Company Creditor Representative shall have the right and authority to file an objection, response, or to otherwise seek to be heard with respect to any proposed settlement of a Non-Controlled Affiliate Claim.

(c)    No Liability of Domestic Operating Company Creditor Representative. The Domestic Operating Company Creditor Representative shall have no liability whatsoever for any acts or omissions in its capacity as Domestic Operating Company Creditor Representative to the Debtors or holders of Claims against or Equity Interests in the Debtors other than for gross negligence or willful misconduct of the Domestic Operating Company Creditor Representative.

6.3    LAMCO.   At the discretion of the board of directors of LBHI following the Effective Date and subject to existing agreements, LAMCO may serve as asset manager for certain assets of each of the Debtors under the Plan.  Ownership and ultimate decision making authority with respect to each of the Debtor's assets after the Effective Date will be vested in the applicable Debtor.

6.4    Debtor Allocation Agreement.   In order to take into account that expenses incurred prior to the Effective Date in evaluating and resolving Derivatives Claims against any of the Domestic Operating Companies also benefited LBHI both as guarantor and as holder of Allowed Claims against the Domestic Operating Companies, fifty percent (50%) of all costs associated with the review and analysis of Derivatives Claims against the Domestic Operating Company shall be allocated to LBHI (such allocation, the "Derivative Claims Allocation").  On or before the Effective Date, the Debtors shall execute a Debtor Allocation Agreement which will seek to allocate expenses (other than expenses allocated pursuant to the Derivative Claims Allocation) among the Debtors in as close as possible the proportion of the relative benefit each Debtor received as a result of such expenses.  The Plan Administrator shall make whatever adjustments are necessary, including by providing a credit to the estate of a Domestic Operating Company, to account for costs previously allocated to a Domestic Operating Company in excess of the allocation provided for by the Derivative Claims Allocation or the Debtor Allocation Agreement, as applicable. In addition, all other costs allocated to a Domestic Operating Company shall be subject to the review of the Domestic Operating Company Creditor

56

Representative, which may object to any allocation it determines to be in conflict with the Debtor Allocation Agreement or to be otherwise unreasonable. Any such objection by the Domestic Operating Company Creditor Representative if not resolved consensually with the Plan Administrator, shall be resolved by the Bankruptcy Court, and such disputed expenses shall be allocated among the Debtors based on the relative benefit such Debtors received from the expense incurred. The Debtor Allocation Agreement in substantially final form will be included in the Plan Supplement.

6.5     Redistribution of Subordinated Claims Recoveries. To give effect to agreements of holders of Subordinated Claims, all Distributions under the Plan made by LBHI shall be calculated as if each holder of an Allowed Claim in LBHI Class 10A, LBHI Class 10B and LBHI Class 10C were to receive its Pro Rata Share of Available Cash from LBHI, and, in the case of each holder of an Allowed Claim in LBHI Class 10A and LBHI Class 10B, its Pro Rata Share of the Subordinated Class 10C Distribution; *provided*, *however*, that:

(a)     the Subordinated Class 10A Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A pursuant to Sections 4.3(b) and 4.4(b) of the Plan, respectively, until all such Claims are satisfied in full;

(b)     the Subordinated Class 10B Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B pursuant to Sections 4.3(b), 4.4(b), 4.5(b), 4.6(b) and 4.7(b) of the Plan, respectively, until all such Claims are satisfied in full;

(c)     the Subordinated Class 10C Distribution shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A, LBHI Class 5B, LBHI Class 10A and LBHI Class 10B pursuant to Sections 4.3(b), 4.4(b), 4.5(b), 4.6(b), 4.7(b), 4.12(b) and 4.13(b) of the Plan, respectively, until all such Claims are satisfied in full; *provided*, *however*, that any portion of the Subordinated Class 10C Distribution payable to holders of Allowed Claims in LBHI Class 10A shall be automatically distributed to holders of Allowed Claims in LBHI Class 3 and LBHI Class 4A pursuant to Section 6.5(a) of the Plan until all such Claims are satisfied in full; *provided*, *further*, that any portion of the Subordinated Class 10C Distribution payable to holders of Allowed Claims in LBHI Class 10B shall be automatically distributed to holders of Allowed Claims in LBHI Class 3, LBHI Class 4A, LBHI Class 4B, LBHI Class 5A and LBHI Class 5B pursuant to Section 6.5(b) of the Plan until all such Claims are satisfied in full.

6.6     Closing of Chapter 11 Case. After the Chapter 11 Case of a Debtor has been fully administered, such Debtor shall seek authority from the Bankruptcy Court to close such Debtor's Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

6.7     Affiliate Claims Against a Debtor. (a) Each holder of a Senior Intercompany Claim, Senior Affiliate Guarantee Claim, Intercompany Claim, or Affiliate Guarantee Claim against a Debtor shall have an Allowed Claim, as applicable, against that Debtor in an amount that is agreed to by the applicable Debtors and any applicable Affiliates or as otherwise determined by the Bankruptcy Court; *provided, however,* that pursuant to (and subject to the limitations imposed by) Section 6.2(b) of the Plan, the Domestic Operating Company Creditor

57

Representative shall have the authority to object to, litigate, seek to subordinate, compromise or settle Claims asserted by or against a Domestic Operating Company on behalf of such Domestic Operating Company.  (b) Notwithstanding anything in Section 6.7(a), any Senior Intercompany Claim or Intercompany Claim against any Debtor held by any Cross-Border Protocol Party shall be allowed against such Debtor at the amount set forth in the Debtors' accounting records to the extent those records have been accepted pursuant to Section 9 of the Cross-Border Protocol or any Cross-Border Settlement Guidelines.  Such amounts shall be set forth in the Plan Supplement if accepted prior to the filing thereof.  This Section 6.7(b) shall not apply to any Cross-Border Protocol Party which has elected not to comply with the Cross-Border Protocol or Cross-Border Settlement Guidelines.

6.8    LBHI Structured Securities Claims.  For purposes of the Chapter 11 Cases only, the Allowed amount of LBHI Structured Securities Claims shall be determined in accordance with the Structured Securities Valuation Methodologies and the Structured Securities Estimated Maximum Allowable Claims Summary, provided, however, that holders of LBHI Structured Securities Claims may seek, or the Debtors may propose, amendments or corrections to the proposed valuations set forth in the Structured Securities Estimated Maximum Allowable Claims Summary (or other documents summarizing application of the Structured Securities Valuation Methodologies to Structured Securities issued by other entities) solely to the extent that such valuations do not reflect a consistent or accurate application of the Structured Securities Valuation Methodologies, or other manifest errors.

6.9    Indenture Trustee and Creditors' Committee Members Fees.  Subject to entry of the Confirmation Order, (a) the reasonable fees and expenses (including attorneys fees) of the indenture trustee for the Senior Notes and the Subordinated Notes and (b) the reasonable expenses (excluding attorneys fees or any other fees) of the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustee or members of the Creditors' Committee, respectively, shall, (i) to the extent accrued and unpaid as of the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors in accordance with the Debtor Allocation Agreement, and (ii) to the extent incurred after the Confirmation Date, be Allowed as Administrative Expense Claims and paid by the Debtors on a monthly basis upon the submission of fee statements without further order of the Bankruptcy Court.

## ARTICLE VII
## Corporate Governance

7.1    Corporate Form.  On the Effective Date, each of the Debtors shall maintain its current corporate form.

7.2    LBHI Board of Directors and Officers.

(a)    Following the Effective Date, the board of directors of LBHI shall consist of nine (9) persons.  The initial board of directors of LBHI shall be selected by the Director Selection Committee in accordance with subsection (b) below.  Each of the initial directors of LBHI shall have initial and, if reelected, subsequent terms of one year.  A director of LBHI may be removed from office by the Plan Trust with or without cause.  Subject to death, incapacity,

resignation or removal and reelection by the Plan Trust in accordance with the Plan Trust Agreement, the initial directors shall serve as the board of directors of LBHI through the Closing Date. Upon expiration of the term of a director of LBHI or his or her resignation, death or removal, the election of such director or a replacement director shall be determined by action of the Plan Trust as sole shareholder of LBHI.

(b)    The Director Selection Committee shall be comprised of seven (7) individuals as listed in the Plan Supplement, of whom two (2) shall be selected by the Creditors' Committee, two (2) shall be selected by LBHI, and three (3) selected by the Requisite Plan Proponents. The co-chairs of the Creditors' Committee shall be the two (2) appointees of the Creditors' Committee to the Director Selection Committee, each of whom shall exercise his or her independent business judgment in the selection of directors and not act at the direction of the Creditors' Committee. One of the co-chairs of the Creditors' Committee shall serve as the chairperson of the Director Selection Committee. The Director Selection Committee shall try to select the initial board of directors of LBHI by majority vote, but, in the event of a deadlock with respect to a director, the vote of the chairperson of the Director Selection Committee shall control the selection of such director. In undertaking to identify candidates to serve on the initial board of directors of LBHI, the Director Selection Committee shall consider nominations from and, in its discretion, consult with all relevant constituencies, including, without limitation, the holders of significant Claims against the Debtors and Debtor-Controlled Entities. Any member of the Director Selection Committee may be named to serve as a director of LBHI.

(c)    Following the Effective Date, the board of directors of LBHI shall, in addition to its other duties, be responsible for (i) instructing and supervising LBHI, the Subsidiary Debtors other than the Domestic Operating Companies and the Plan Administrator with respect to their responsibilities under the Plan; (ii) reviewing and approving the prosecution of adversary and other proceedings, if any, including approving proposed settlements thereof as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies; (iii) reviewing and approving objections to and proposed settlements of Disputed Claims as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies; and (iv) performing such other duties that may be necessary and proper to assist LBHI, the Subsidiary Debtors other than the Domestic Operating Companies and the Plan Administrator and their retained professionals. In its discretion, following the Effective Date, the board of directors of LBHI may also delegate any duties assigned to the Plan Administrator as they relate to LBHI or the Subsidiary Debtors other than the Domestic Operating Companies to any other committee, entity or individual.

7.3    <u>Subsidiary Debtor Post-Effective Date Management</u>.

(a)    Following the Effective Date, LBHI shall cause Lehman ALI to elect the respective boards of directors of LBSF and LCPI. Each board shall consist of five (5) persons selected by LBHI, four (4) of whom shall be concurrently serving members of the LBHI board of directors and one (1) of whom shall be selected in consultation with the holders of significant Claims against LBSF or LCPI, respectively. Each of the initial directors of LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year. Thereafter, LBHI shall cause Lehman ALI to elect successors of the then-serving members of the LBSF and LCPI boards at each annual meeting of LBSF or LCPI, respectively, or upon the removal or resignation of such

directors.  Lehman ALI (as directed by LBHI) shall also have the power to act by written consent to remove any director on the LBSF or LCPI board at any time with or without cause. Notwithstanding any of the foregoing, nothing in this paragraph nor in any organizational document, bylaw, resolution, or other corporate authorization of LBHI or a Domestic Operating Company, shall limit the authority granted to the Domestic Operating Company Creditor Representative pursuant to this Plan.

(b)    Following the Effective Date, the respective boards of directors or managers, as applicable, of the Subsidiary Debtors other than LBSF and LCPI shall consist of one (1) individual who shall be a concurrently serving member of the LBHI board of directors. Each of the initial directors or managers of the Subsidiary Debtors other than LBSF and LCPI shall have initial and, if reelected, subsequent terms of one year.  Thereafter, LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall elect successors of the then-serving members of the boards or managers for such Subsidiary Debtor at each annual meeting or upon the removal or resignation of such individuals.  LBHI or the Subsidiary Debtor or Debtor-Controlled Entity that is the sole shareholder of the relevant Subsidiary Debtor shall also have the power to act by written consent to remove any director or manager of such Subsidiary Debtor at any time with or without cause. Notwithstanding any of the foregoing, nothing in this paragraph nor in any organizational document, bylaw, resolution, or other corporate authorization of LBHI or a Domestic Operating Company, shall limit the authority granted to the Domestic Operating Company Creditor Representative pursuant to this Plan.

7.4    Plan Trust.

(a)    The Plan Trust shall be established on the Effective Date and shall continue in existence until the Closing Date.  The Plan Trustees shall be the members of the Director Selection Committee.  Each of the Plan Trustees shall continue in such capacity until he or she ceases to be a Plan Trustee in accordance with the terms and conditions set forth in the Plan Trust Agreement.  In the event of a vacancy in the office of Plan Trustee, the remaining Plan Trustees shall by majority vote of the remaining Plan Trustees fill the vacancy if in their discretion the circumstances of the Plan Trust warrant doing so.  The sole purpose of the Plan Trust shall be to hold the Plan Trust Stock as provided in Section 4.17(b).  The Plan Trust shall be governed, in accordance with the Plan Trust Agreement (which shall be included in the Plan Supplement), by the Plan Trustees.  The Plan Trust shall exercise voting rights associated with the Plan Trust Stock in furtherance of the liquidation of the Debtors and compliance with the provisions of the Plan.  In the event of a deadlock with respect to any vote, the vote of the chairperson of the Director Selection Committee shall control.  Any distribution from assets of LBHI that is made to the Plan Trust as holder of such share shall be for the benefit of the holders of Equity Interests in accordance with Section 4.17(b).

(b)    The Plan Trust Agreement shall provide that (i) at such time as a vacancy on the board of directors of LBHI is to be filled or there is a vote on the election of a director upon the expiration of a director's term of office, the Plan Trust shall fill such vacancy by majority vote of the Plan Trustees and (ii) at all other times, the Plan Trust may act, by majority vote of the Plan Trustees, to remove and replace directors, with or without cause.

7.5    Corporate Existence.    After the Effective Date, the Plan Administrator, may decide to (a) maintain each Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to such Debtor have been completed, or (b) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to such Debtor, dissolve such Debtor and complete the winding up of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities (including, without limitation, the transfer of all or part of the assets of such Debtor to a Liquidating Trust in accordance with <u>Article X</u> of the Plan), or (c) dissolve any Debtor-Controlled Entity and complete the winding up of such Debtor-Controlled Entity in accordance with applicable law; *provided*, *however*, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in a Debtor-Controlled Entity; *provided, further*, that, notwithstanding the foregoing, only the Domestic Operating Company Creditor Representative may decide to take any action to wind-down or dissolve any Domestic Operating Company.  Notwithstanding any of the foregoing, the Plan Administrator and the Domestic Operating Company Creditor Representative, as applicable, shall not wind-down, dissolve or liquidate a Debtor until such Plan Administrator or Domestic Operating Company Creditor Representative, as applicable, has reasonably concluded that such wind-down, dissolution or liquidation will not result in adverse tax consequences to the Debtors who are not pursuing wind-down or liquidation, or such Debtor can effect such wind-down, dissolution or liquidation in a tax efficient manner taking into account the tax attributes of such other Debtors.

7.6    Wind-Down.  The wind-down and liquidation of each of the Debtors' assets (as determined for federal income tax purposes) shall occur over a period of three years after the Effective Date (it being understood that such liquidation may include the transfer of all or part of the assets of the Debtors to one or more Liquidating Trusts within the meaning of Treas. Reg. § 301.7701-4 in accordance with <u>Section 10.1</u> of the Plan); *provided*, *however*, that the wind-down and liquidation may extend over a longer period of time if the Debtors receive a private letter ruling or other equivalent guidance from the IRS from which the Plan Administrator reasonably concludes that the continued wind-down and liquidation should not result in a reduction or limitation of the Debtors' tax attributes for federal income tax purposes that materially impairs the expected actual use of such tax attributes.

7.7    Certificate of Incorporation and By-Laws.    As of the Effective Date, the certificate of incorporation and by-laws of each Debtor shall be amended to the extent necessary to carry out the provisions of the Plan.  The amended certificate and by-laws of such Debtor (if any) shall be included in the Plan Supplement.

7.8    <u>Stock Trading Restrictions</u>.    The restrictions imposed by the Stock Trading Restrictions Order shall remain effective and binding through the closing of LBHI's Chapter 11 Case.

## ARTICLE VIII
## Provisions Regarding Voting and Distributions Under the Plan

8.1    <u>Reserved</u>.

8.2     Nonconsensual Confirmation.  If any impaired Class of Claims entitled to vote on the Plan does not accept the Plan by the requisite majority provided in section 1126(c) of the Bankruptcy Code, the Requisite Plan Proponents reserve the right to amend the Plan in accordance with Section 15.6 of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.  With respect to impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Plan Proponents hereby request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

8.3     Distributions of Available Cash.  On the Effective Date, or as soon thereafter as practicable, after the satisfaction in full of (or establishment of reserves sufficient for the satisfaction in full of) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims (to the extent the Debtor determines to pay such Allowed Secured Claim in Cash) against a Debtor, each Debtor shall make a Distribution of its Available Cash in accordance with the provisions of the Plan to holders of Allowed Claims against such Debtor.  After the initial Distribution, each Debtor shall make Distributions of Available Cash in accordance with the Plan to holders of Allowed Claims against such Debtor semi-annually on March 30 and September 30 of each year, provided that each such Distribution in the aggregate is not less than $10,000,000 of such Debtor's Available Cash.  Notwithstanding the foregoing, the Plan Administrator, or, as applicable pursuant to Section 6.2(b) of the Plan, the Domestic Operating Company Creditor Representative, may determine, in its sole discretion (a) to make a Distribution that is less than $10,000,000 in the aggregate of a Debtor's Available Cash, or (b) not to make a Distribution to the holder of an Allowed Claim on the basis that it has not yet determined whether to object to such Claim and such Claim shall be treated as a Disputed Claim for purposes of Distributions under the Plan until the Plan Administrator, or, as applicable pursuant to Section 6.2(b) of the Plan, the Domestic Operating Company Creditor Representative, determines (i) not to object to such Claim (or the time to object to Claims expires), (ii) agrees with the holder of such Claim to allow such Claim in an agreed upon amount or (iii) objects to such Claim and such Claim is Allowed by a Final Order.  To the extent that a Liquidating Trust is established for a Debtor in accordance with Article X of the Plan, any Distributions to be made of Allowed Claims thereafter shall be made by the Liquidating Trustee to such holders as holders of Liquidating Trust Interests in accordance with the provisions of the Plan.  Distributions of Cash on account of such Liquidating Trust Interests shall be made in accordance with Section 10.7 of the Plan.

8.4     Disputed Claims Reserve.

(a)     From and after the Effective Date, and until such time as all Disputed Claims have been compromised and settled or determined by Final Order, upon each Distribution Date, the Reserve Agent of each Debtor, consistent with and subject to the provisions of Section 1123(a)(4) of the Bankruptcy Code, shall (or shall direct the applicable Debtor to) retain and reserve from Available Cash of such Debtor an aggregate amount (the "Reserved Distribution Amount") equal to the sum of the Pro Rata Share of the Distributions that would have been made on account of each Disputed Claim against such Debtor if such Disputed Claim were an Allowed Claim as of the giving of notice of such Distribution Date in an amount (the "Reserved Claim Amount") equal to the least of (i) the full amount of such Disputed Claim as set forth in the holder's proof of claim (the "Asserted Claim Amount"); (ii)

62

the amount determined, to the extent permitted pursuant to Section 502 of the Bankruptcy Code, by the Bankruptcy Court for purposes of fixing the Reserve Distribution Amount; or (iii) such other amount as may be agreed upon by the holder of such Disputed Claim and the Reserve Agent.

(b)    In the event and to the extent a Disputed Claim for which a Reserved Claim Amount was fixed under paragraph (a) is (i) disallowed in full by Final Order; or (ii) Allowed in an amount less than such Reserved Claim Amount, the excess of the Reserved Distribution Amount allocable to such Disputed Claim over the amount of the Pro Rata Share of the Distributions that would have been made on account of such Disputed Claim in the amount in which it is Allowed (the "Excess Amount") shall be  released to Available Cash of the applicable Debtor.

(c)    Notwithstanding the foregoing provisions of this Section 8.4 of the Plan, if determined by a Final Order, entered upon a motion by either (i) the Reserve Agent, on notice to holders of Claims against the applicable Debtor, or (ii) a holder of a Remaining Disputed Claim against a Debtor, upon notice to the Reserve Agent and to holders of Claims against the applicable Debtor,  additional Available Cash of such Debtor shall be reserved to fund the Reserved Distribution Amount of such Debtor for pro rata funding of any shortfall in Distribution (the "Shortfall Amount") to a holder of a Remaining Disputed Claim against such Debtor that is subsequently Allowed against such Debtor in an amount greater than its Reserved Claim Amount.

(d)    In the event and to the extent that the Reserved Distribution Amount of a Debtor (including any amounts retained in such Reserved Distribution Amount for funding Shortfall Amounts of such Debtor) at any time exceeds the aggregate of the Asserted Claim Amounts of the Remaining Disputed Claims against such Debtor, such excess portion of the Reserved Distribution Amount of the Debtor shall be released to Available Cash of such Debtor.

(e)    Nothing in this Section 8.4 of the Plan shall preclude any holder of a Disputed Claim from seeking, on notice to the Reserve Agent, an order of the Bankruptcy Court in respect of or relating to the Reserved Claim Amount established in respect of such holder's Disputed Claim.

8.5    Minimum Distribution and Manner of Payment.  No payment of Cash of less than $500 shall be made by any Debtor to any holder of an Allowed Claim against such Debtor unless a request therefor is made in writing to the Plan Administrator.  Any payment of Cash made pursuant to the Plan may be made at the option of the Plan Administrator either by check or by wire transfer.

8.6    Distributions Free and Clear.   Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including the Debtors or the Plan Administrator shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

8.7    Delivery of Distributions and Undeliverable Distributions.   Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the

63

Schedules filed with the Bankruptcy Court, unless superseded by a new address as set forth (a) on a proof of Claim filed by a holder of an Allowed Claim or (b) in another writing notifying the Plan Administrator (at the addresses set forth in <u>Section 15.10)</u> of a change of address.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder at its then-current address, without interest.  All demands for undeliverable Distributions shall be made on or before six (6) months after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall be released to Available Cash of the applicable Debtor.

8.8    Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator or the Liquidating Trustee (as applicable) shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions shall be subject to any such withholding or reporting requirements.  All such amounts withheld and paid to the appropriate Governmental Unit shall be treated as distributed to such holders.  Notwithstanding the above, each holder of an Allowed Claim or Liquidating Trust Interest that is to receive a Distribution shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Plan Administrator or the Liquidating Trustee (as applicable), has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  The Plan Administrator or the Liquidating Trustee (as applicable), may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim or Liquidating Trust Interest provide a completed Form W-8, W-9 and/or other tax information deemed necessary in the sole discretion of the Plan Administrator or Liquidating Trustee, as applicable to each such holder, *provided* that if the Plan Administrator or Liquidating Trustee (as applicable) makes such a request and the holder fails to comply before the date that is 180 days after the request is made, the amount of such Distribution shall irrevocably revert to the applicable Debtor or Liquidating Trust and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against such Debtor, Liquidating Trust, or its respective property.

8.9    Time Bar to Cash Payment Rights.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before 90 days after the expiration of the 90-day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall be released to Available Cash of the applicable Debtor.

8.10    <u>Setoffs and Recoupment</u>.  Any Debtor may, but shall not be required to, setoff against or recoup from any Claim in respect of such Claim any Claims of any nature whatsoever that such Debtor may have against the claimant, *provided, however,* that the Debtor has provided such claimant with written notice of the Debtor's proposed setoff or recoupment at least twenty (20) Business Days prior thereto, and, if such claimant files a written objection to such proposed

64

setoff or recoupment, the Debtor shall not proceed with the proposed setoff or recoupment absent the withdrawal of such objection or the entry of a Final Order overruling such objection; *and provided further that* neither the failure to setoff against or recoup from any Claim nor the allowance of any Claim hereunder shall constitute a waiver or release by such Debtor of any such Claim the Debtor may have against such claimant.

8.11    <u>Claims Register to Remain Open</u>.  The register of Claims maintained by the Debtors shall remain open after the Effective Date and the Debtors and Plan Administrator shall recognize any transfer of Claims at any time thereafter other than during the period commencing fourteen (14) Business Days prior to and concluding fourteen (14) Business Days after a Distribution Date.

8.12    <u>Allocation of Distributions</u>.  Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes), and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim or is otherwise required to be paid under the Plan).

8.13    <u>Maximum Distribution</u>.

(a)    A holder of (i) an Allowed Claim that receives Distributions in the Allowed amount of such Claim or (ii) an Allowed Guarantee Claim that receives Distributions that combined with Distributions or other consideration provided to such holder by a Primary Obligor equal to the greater of the Allowed amount of such Guarantee Claim and the Allowed amount of such holder's Primary Claim, shall, in each case, be deemed satisfied in full for purposes of Distributions.  To the extent that a holder of an Allowed Guarantee Claim that is deemed satisfied in full would otherwise be entitled to receive future Distributions or consideration on account of such holder's Primary Claim, LBHI shall be entitled to receive such Distributions or consideration as subrogee.

(b)    In no event shall any holder of (i) any Allowed Claim receive Distributions in excess of the Allowed amount of such Claim or (ii) an Allowed Guarantee Claim receive Distributions that combined with Distributions or other consideration provided to such holder by a Primary Obligor would allow such holder to receive in excess of the greater of the Allowed amount of such holder's Guarantee Claim and the Allowed amount of such holder's Primary Claim.  The Plan Administrator may seek approval from the Bankruptcy Court to hold back all or a portion of a Distribution ("<u>Distribution Holdback</u>") to a holder of an Allowed Guarantee Claim if the Plan Administrator reasonably determines that such holder has been, or within six months of the date of determination will be, satisfied in full for purposes of Distributions on a corresponding Primary Claim from the Primary Obligor until such time, if ever, the Plan Administrator reasonably determines that such holder has not and, within such six-month period, will not be satisfied in full from the Primary Obligor or as otherwise ordered by the Bankruptcy Court; *provided* that if and when a Distribution Holdback is released to the holder of such Allowed Guarantee Claim, such holder shall be entitled to interest actually accrued on such Distribution Holdback for the period commencing on the Effective Date.

## ARTICLE IX
## Procedures for Treating Disputed Claims

9.1     Objections.   Subject to Sections 6.2, 6.7, and 8.13 of the Plan, (a) a Debtor's rights to object to, oppose and defend against all Claims on any basis are fully preserved, and (b) notwithstanding that a Primary Claim is Allowed against a Primary Obligor, the Debtors reserve the right to object to, oppose and defend against all Guarantee Claims.   Subject to Sections 6.2 and 6.7 of the Plan, as of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator or, with respect to Claims against a Domestic Operating Company, the Domestic Operating Company Creditor Representative, which in each case shall consult with the applicable Debtor regarding the same.   Objections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is two (2) years after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

9.2     No Distributions Pending Allowance.   Notwithstanding any other provision hereof and unless otherwise agreed, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Disputed portion of the Claim unless and until such Disputed portion of the Claim becomes an Allowed Claim.

9.3     Reserved.

9.4     Resolution of Disputed Claims.   On and after the Effective Date, the Plan Administrator and with respect to Claims against a Domestic Operating Company, the Domestic Operating Company Creditor Representative shall have the authority to compromise, settle or otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims in accordance with Sections 6.1(b)(i) and 6.2(b) of the Plan, as applicable.

9.5     Interest.   If a Disputed Claim becomes an Allowed Claim, the holder of such Claim shall be entitled to interest for the period commencing on the Effective Date at the interest rate at which interest on the Reserved Distribution Amount of the applicable Debtor actually accrued during such period.

## ARTICLE X
## Liquidating Trust

10.1     Execution of Liquidating Trust Agreement.   After the Effective Date, (a) if the Plan Administrator and the board of directors of a Debtor other than a Domestic Operating Company determine that the establishment of a Liquidating Trust in respect of such Debtor is in the best interests of such Debtor and the holders of Allowed Claims against and Equity Interests in such Debtor, the Plan Administrator and a Liquidating Trustee shall execute a Liquidating Trust Agreement with respect to such Debtor, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries, or (b) if the Domestic Operating Company Creditor Representative determines that the establishment of a Liquidating Trust in respect of such

66

Domestic Operating Company is in the best interests of such Domestic Operating Company and the holders of Allowed Claims against and Equity Interests in such Domestic Operating Company, the Domestic Operating Company Creditor Representative and a Liquidating Trustee shall execute a Liquidating Trust Agreement with respect to such Domestic Operating Company, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries. In the event of any conflict between the terms of this <u>Section 10.1</u> and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this <u>Section 10.1</u> shall govern. A Liquidating Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of a Liquidating Trust as a "liquidating trust" for United States federal income tax purposes. Notwithstanding any of the foregoing, a Debtor shall not transfer assets to a Liquidating Trust until the Plan Administrator and the Domestic Operating Company Creditor Representative, as applicable, has reasonably concluded that such transfer will not result in adverse tax consequences to the Debtors who are not pursuing wind-down or liquidation or such Debtor can make such transfer in a tax efficient manner taking into account the tax attributes of such other Debtors.

10.2    <u>Purpose of the Liquidating Trust</u>. Each Liquidating Trust shall be established for the sole purpose of liquidating and distributing the assets of the Debtor contributed to such Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

10.3    <u>Liquidating Trust Assets</u>. Each Liquidating Trust shall consist of Liquidating Trust Assets. After the creation of a Liquidating Trust pursuant to <u>Section 10.1</u> of the Plan, the Liquidating Trust Assets shall be transferred to a Liquidating Trust. Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in a Liquidating Trust Agreement. Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.

10.4    <u>Administration of the Liquidating Trust</u>. Each Liquidating Trust shall be administered by a Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

10.5    <u>Liquidating Trustee's Tax Power for Debtors</u>. A Liquidating Trustee shall have the same authority in respect of all taxes of the Debtors, and to the same extent, as if the Liquidating Trustee were the Debtor.

10.6    <u>Cash Investments</u>. A Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, *however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

10.7    Distribution of Liquidating Trust Interests.  A Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a semi-annual basis, all Available Cash of such Debtor (including any Cash received from the Debtors and treating any permissible investment as Cash for purposes of this Section 10.7), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonable incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Debtors or Liquidating Trust or in respect of the Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or Liquidating Trust Agreement; provided, however, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this Section 10.7) of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impracticable.

10.8    Federal Income Tax Treatment of Liquidating Trust.  For all United States federal income tax purposes, all parties (including, without limitation, the Debtors, a Liquidating Trustee and Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for Liquidating Trust Interests. Accordingly, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

10.9    Tax Reporting.

(a)    A Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Section 10.9(a).  A Liquidating Trustee also shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b)    Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than assets allocable Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust.  Similarly, taxable loss of a Liquidating Trust shall be allocated by reference

68

to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)  As soon as reasonably practicable after Liquidating Trust Assets are transferred to a Liquidating Trust, a Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets. Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)  Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trustee of a private letter ruling if such Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), such Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including such Liquidating Trustee, the Debtors and Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)  A Liquidating Trustee shall be responsible for payment, out of Liquidating Trust Assets, of any taxes imposed on a Liquidating Trust or its assets.

(f)  A Liquidating Trustee may request an expedited determination of taxes of a Liquidating Trust, including any reserve for Disputed Claims, or of the Debtor as to whom the Liquidating Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Liquidating Trust or the Debtor for all taxable periods through the dissolution of such Liquidating Trust.

10.10  Dissolution.

(a)  A Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, (ii) a Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by a Liquidating Trustee under the Plan and a Liquidating Trust Agreement have been made; *provided*, *however*, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to Section 10.1 of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed three (3)

years, together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel reasonably satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)    If at any time a Liquidating Trustee determines, in reliance upon such professionals as a Liquidating Trustee may retain, that the expense of administering a Liquidating Trust so as to make a final Distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation", as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, such Liquidating Trust, and any insider of such Liquidating Trustee, and (iii) dissolve such Liquidating Trust

10.11   <u>Financial Reporting</u>.  Following the Effective Date, and until the Closing Date, the Debtors shall file with the Bankruptcy Court: (i) monthly operating reports, and (ii) quarterly and annual reports (including, in each case, audited financial statements with descriptive notes thereto) providing an equivalent level of financial reporting information as, and subject to the same filing deadlines as, would be required by the Securities and Exchange Act of 1934 with respect to quarterly and annual reports, respectively, of a U.S. corporation subject to such reporting requirements.

## ARTICLE XI
## Treatment of Executory Contracts and Unexpired Leases

11.1   <u>Executory Contracts and Unexpired Leases</u>.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract or unexpired lease (a) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (b) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed prior to the Confirmation Date, or (c) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Debtor; *provided*, *however*, that the Debtors and Requisite Plan Proponents reserve the right, on or prior to the Confirmation Date, to amend the Plan Supplement to remove any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall, as of the Effective Date, be deemed to be, respectively, rejected or assumed.  The Debtors or Requisite Plan Proponents shall provide notice of any amendments to the Plan Supplement to the parties to the executory contracts and unexpired leases affected thereby.  The listing of or failure to list a document in the Plan Supplement shall not constitute an admission by the Debtors or the Plan Proponents that such document is or is not an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

70

11.2    Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan and (b) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.  To the extent any provision of an executory contract or unexpired lease to be assumed by any of the Debtors under the Plan limits such Debtor's ability to assign such executory contract or unexpired lease, the effectiveness of such provision shall be limited or nullified to the full extent provided in section 365(f) of the Bankruptcy Code.

11.3    Cure of Defaults.  Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Debtor pursuant to the Plan, in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

11.4    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court and served upon the relevant Debtor no later than forty-five (45) days after the later of (a) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (b) notice of entry of the Confirmation Order and occurrence of the Effective Date, and (c) notice of an amendment to the Plan Supplement relating to such executory contract or unexpired lease. **Except as set forth in the preceding sentence, all such Claims must otherwise comply with the provisions of the Bar Date Order, including, without limitation, the Derivative Questionnaire and the Guarantee Questionnaire.   All such Claims not filed in accordance with the foregoing will be forever barred from assertion against the Debtors and their estates.**  Any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan shall be classified as a General Unsecured Claim or Derivative Claim, as applicable, against the Debtor that is a party to such executory contract or unexpired lease.

11.5    Insurance Policies.  To the extent that any of the Debtors' insurance policies and any agreements, documents or instruments with insurers relating thereto constitute executory contracts, such contracts shall be deemed assumed under the Plan.  Nothing contained herein shall constitute or be deemed a waiver of any Litigation Claims that the Debtors may hold against any entity, including, without limitation, the insurer under any of the Debtors' policies of insurance.

11.6    Indemnification Obligations.  Subject to the occurrence of the Effective Date, solely to the extent of insurance proceeds that are available to the Debtors in respect of such obligations, the obligations of each Debtor to indemnify, defend, reimburse or limit the liability of (a) directors, officers and any other employee who is held responsible for obligations of the Debtor incurred after the Commencement Date who are directors, officers or employees of such Debtor or a Debtor-Controlled Entity on or after the Commencement Date and (b) Released

71

Parties, respectively, against any Claims or Causes of Action as provided in the Debtor's articles of organization, certificates of incorporation, bylaws, other organizational documents or applicable law, shall survive confirmation of the Plan, shall be assumed by such Debtor and will remain in effect after the Effective Date.  Nothing in the Plan shall in any way limit, modify, alter or amend the Debtor's limitation of liability of the Independent Directors set forth in Section 10.1 of the Restated Certificate of Incorporation of LBHI.

## ARTICLE XII
## Effectiveness of the Plan

12.1    Conditions Precedent to the Effective Date of the Plan.  The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)    The Confirmation Order, in form and substance reasonably satisfactory to the Requisite Plan Proponents, shall have been entered;

(b)    All actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance reasonably satisfactory to the Requisite Plan Proponents; and

(c)    All authorizations, consents and regulatory approvals, if any, required in connection with the consummation of the Plan are obtained and not revoked.

12.2    Waiver of Conditions.    Notwithstanding the foregoing, the Requisite Plan Proponents reserve their rights to waive the occurrence of the conditions precedent to the Effective Date set forth in Section 12.1 of the Plan other than Section 12.1(a) of the Plan.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Requisite Plan Proponents decide, that any of the conditions precedent to the Effective Date of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Requisite Plan Proponents shall file a notice of the inability to satisfy such condition prior to the Effective Date with the Bankruptcy Court.

## ARTICLE XIII
## Effects of Confirmation

**13.1    Vesting of Assets.  Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Estate of a Debtor shall vest in that Debtor except as provided herein.  From and after the Effective Date, the Debtors, acting through the Plan Administrator, may take any action, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the**

72

Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided herein.

13.2    **Binding Effect.    On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.**

13.3    Release and Exculpation.    On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, shall be deemed to have released the Released Parties from, and none of the Released Parties shall have or incur any liability for, any Claim for, Cause of Action for, or other assertion of liability for, any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, and (ii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; *provided*, *further*, that nothing in this Plan shall limit the liability of the professionals of the Debtors or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Model Code of Professional Responsibility.

13.4    Discharge.    Pursuant to section 1141(d)(3) of the Bankruptcy Code, the Debtors are not entitled to receive a discharge under section 1141 of the Bankruptcy Code from Claims against, Equity Interests in, rights against or liabilities against the Debtors**.**

13.5    **Injunction.    Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest (whether proof of such Claims or Equity Interests has been filed or not), along with their respective present or former employees, agents, officers, directors or principals, are permanently enjoined, on and after the Effective Date, solely with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any**

73

**encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan; (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; and (vi) taking any actions to interfere with the implementation or consummation of the Plan. For the avoidance of doubt, as to Claims and Causes of Action against Debtors, this Section 13.5 of the Plan enjoins actions against Debtors solely to the extent of such Claims and Causes of Action against the Debtors that are released pursuant to, and subject to the limitations of, Section 13.3 of this Plan.**

13.6    <u>United States Government</u>.  As to the United States, its agencies, departments or agents, nothing in the Plan or Confirmation Order shall discharge, release or otherwise preclude: (a) any liability of the Debtors arising on or after the Effective Date; (b) any liability that is not a Claim against a Debtor; (c) any valid right of setoff or recoupment; or (d) any liability of the Debtors arising under environmental or criminal laws as the owner or operator of property that such Debtor owns after the Effective Date.  The discharge and injunction provisions contained in the Plan and Confirmation Order are not intended and shall not be construed to bar the United States from, subsequent to the Effective Date, pursuing any police or regulatory action.

13.7    <u>Terms of Injunctions or Stays</u>.  Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

13.8    <u>Retention of Litigation Claims and Reservation of Rights</u>.  Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights, defenses or Litigation Claims that the Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law that the Debtors had prior to the Effective Date, including, without limitation, (a) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, their officers, directors, or representatives, (b) any and all Claims or rights arising under any tax sharing agreement among the Debtors and their Affiliates (including the tax sharing agreement among the Debtors and LBI based on their regular and consistent course of conduct over many years), (c) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of an Affiliate's assets; (d) any and all Avoidance Actions, and (e) any right of setoff or other legal or equitable defense.  The Debtors shall have, retain, reserve, and may assert all such rights, defenses or Litigation Claims after the Effective Date fully as if the Chapter 11 Cases had not been commenced.

**ARTICLE XIV**
**Retention of Jurisdiction**

14.1    Retention of Jurisdiction.    The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    To hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(b)    To determine any and all adversary proceedings, applications and contested matters relating to the Chapter 11 Cases;

(c)    To hear and determine any objection to or motion to estimate Claims;

(d)    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

(e)    To issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(f)    To consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)    To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and any agreements or documents incorporated in or contemplated by the Plan, including, without limitation, Sections 6.4, 6.5, 6.6, 13.3, 13.4 and 13.5 of the Plan;

(i)    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(j)    To hear and determine any actions brought against the Plan Administrator or the Domestic Operating Company Creditor Representative in connection with the Plan, including, without limitation, any action relating to Distributions under the Plan;

(k)    To hear and determine any actions brought to recover all assets of the Debtors and property of the estates, wherever located;

75

(l)    To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns of the Debtors and of any Liquidating Trusts for any and all taxable periods ending after the Commencement Date through the Closing Date;

(m)    To hear all matters relating to <u>Article XIII</u> of the Plan, including, without limitation, all matters relating to the releases, exculpation, and injunction granted thereunder.

(n)    To hear all matters relating to the Plan Trust;

(o)    To hear any other matter consistent with the provisions of the Bankruptcy Code; and

(p)    To enter a final decree closing the Chapter 11 Cases;

*provided, however,* that nothing in this Section 14.1 of the Plan shall be construed so as to limit the jurisdiction of any foreign court, tribunal or other body overseeing or otherwise supervising a Foreign Proceeding.

## ARTICLE XV
## Miscellaneous Provisions

15.1    <u>Post-Effective Date Role of Creditors' Committee</u>.    On the Effective Date, the Creditors' Committee shall be dissolved for all purposes other than (i) implementation of the Plan through the date of the initial Distribution in accordance with <u>Section 8.3</u> of the Plan, (ii) defending any appeals from the Confirmation Order to final disposition of such appeals, and (iii) all matters relating to professional fees and the fee committee appointed in the Chapter 11 Cases for the period prior to the Effective Date. Other than with respect to the foregoing, the members of the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents shall terminate.

15.2    <u>Issuance of New Securities</u>.    In the discretion of the Plan Administrator, each Debtor or Debtor Controlled-Entity, other than a Domestic Operating Company, (a) may form and transfer certain assets of such entity to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Debtors and/or Debtor-Controlled Entities (other than Domestic Operating Companies) and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan. In the discretion of the Domestic Operating Company Creditor Representative, each Domestic Operating Company, (a) may form and transfer certain assets to new (or utilize existing) entities, including, without limitation, one or more separately managed partnerships, REITs or other investment vehicles, to hold certain real estate or other assets of the Domestic Operating Companies and, (b) may, in connection therewith, issue New Securities for Distribution under the Plan. In the event that New Securities are to be issued, each holder of Allowed Claims or Equity Interests against a Debtor that contributed assets to the

76

entity issuing New Securities shall receive the relevant New Securities as Distributions in accordance with the Plan. The New Securities shall be valued as of the date of the issuance and the holders of Allowed Claims or Equity Interests receiving such New Securities shall be deemed satisfied to the extent of the value of the New Securities.

15.3    <u>Exemption from Securities Laws</u>.    To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance of any New Securities or Liquidating Trust Interests will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any other applicable non-bankruptcy law or regulation.

15.4    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition of assets contemplated by the Plan (including by a Liquidating Trust), shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

15.5    <u>Plan Supplement</u>.    The Plan Supplement, in form and substance reasonably satisfactory to the Requisite Plan Proponents, shall be filed with the Bankruptcy Court no later than ten (10) days prior to the Voting Deadline.  The Plan Supplement shall include (without limitation), each in form and substance reasonably satisfactory to the Requisite Plan Proponents: the Debtor Allocation Agreement, the amended certificate and by-laws of the Debtors (if any) in accordance with <u>Section 7.7</u>, the Plan Trust Agreement, the identities of the Primary Creditor Representative,   potential Additional Creditor Representatives, and members of the Director Selection Committee, the compensation plan for the Domestic Operating Company Creditor Representative and any attorneys or professionals retained thereby, the agreed amounts, if any, of the Senior Intercompany Claims and Intercompany Claims of Cross-Border Protocol Parties, the Structured Securities Maximum Allowable Claims Summary, and a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with <u>Section 11.1</u> .  Upon its filing with the Bankruptcy Court, the Plan Supplement may be obtained on the Debtors' independent website at www.lehman-docket.com or by request to the Debtors in accordance with <u>Section 15.10</u> of the Plan.

15.6    <u>Amendment or Modification of Plan</u>.  Subject to section 1127 of the Bankruptcy Code and, to the extent applicable, sections 1122, 1123 and 1125 of the Bankruptcy Code, the Requisite Plan Proponents reserve the right to alter, amend or modify this Plan and/or the Disclosure Statement, including, without limitation, (a) alterations, amendments, or modifications of or relating to (i) the determination and classification of Subordinated Notes in LBHI Classes 10A, 10B, and 10C, (ii) the reallocation of Distributions otherwise distributable to holders of such Subordinated Notes, and (iii) the determination and classification of Allowed Claims entitled to receive the benefit of such reallocation, and (b) alterations, amendments, or modifications to exclude one or more Debtors from this Plan; *provided that* the Plan and Disclosure Statement, as altered, amended or modified satisfies the conditions of sections 1122

and 1123 of the Bankruptcy Code, as applicable, and the Requisite Plan Proponents shall have complied with section 1125 of the Bankruptcy Code.  Nothing in the Plan, including, without limitation, with respect to the foregoing clauses (a) (i), (ii), or (iii), of this Section 15.6, shall constitute an admission by any current or former Plan Proponent or any other person.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claims of such holder.

15.7    Withdrawal or Revocation of the Plan.  The Requisite Plan Proponents reserve the right to withdraw or revoke the Plan, in writing, at any time prior to the Confirmation Date.  If the Requisite Plan Proponents revoke or withdraw the Plan prior to the Confirmation Date, or if the Confirmation Date does not occur, then the Plan shall be deemed null and void.  In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of any current or former Plan Proponent or any other person in any further proceedings involving the Debtors.  Furthermore, each Plan Proponent reserves the right to withdraw from the Plan, solely with respect to itself, in writing executed by such Plan Proponent and filed with the Bankruptcy Court, at any time prior to the Confirmation Date.

15.8    Courts of Competent Jurisdiction.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

15.9    Transactions on Business Days.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

15.10    Notices.  Any notices to or requests of the Debtors or the Plan Proponents by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by the following parties:

If to any Plan Proponent, to the address provided for the attorneys for such Plan Proponent in the cover pages to the Plan.

If to any Debtor:

        c/o Lehman Brothers Holdings
        Inc. 1271 Avenue of the Americas
        New York, NY 10020
        Attention:    Bryan Marsal
                John Suckow

with a copy to:

Weil, Gotshal & Manges LLP 767
Fifth Avenue
New York, New York 10153
Re:   Lehman Brothers

and if to any Domestic Operating Company,
with a copy to:

Domestic Operating Company
Creditor Representative
at the address identified in  the
Plan Supplement

15.11  <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Requisite Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

15.12  <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law thereof.

15.13  <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

15.14  <u>Exhibits</u>.  All exhibits and schedules to the Plan as well as the Plan Supplement and any exhibits or schedules thereto are incorporated into and are a part of the Plan as if set forth in full herein.

15.15  <u>Successors and Assigns</u>.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

Dated:      New York, New York
            April 25, 2011

*[Signature Pages Follow]*

ANGELO, GORDON & CO., L.P. on behalf of certain
managed accounts and funds

By: _____/s/ Thomas M. Fuller_____
Name:     Thomas M. Fuller
Title:      Authorized Signatory
Address:  245 Park Avenue, 26th Floor
          New York, NY 10167
Attn:     Thomas Boyce
Tel:      (212) 692-2003
Fax:      (212) 867-6395
Email:    tboyce@angelogordon.com

Signature Page to Plan

CONTRARIAN CAPITAL MANAGEMENT, LLC

By: _____/s/ Jon Bauer_____
Name:     Jon Bauer
Title:     Managing Member
Address:  411 West Putnam Ave.
          Greenwich, CT  06830
Tel:      (203) 862-8200
Fax:
Email:    jbauer@contrariancapital.com
Copy to:  eschwartz@contrariancapital.com

CREDIT AGRICOLE CIB

By:      /s/ Alan Sidrane

Name:    Alan Sidrane
Title:     Managing Director
Address:  1301 Avenue of the Americas
          New York, NY 10019
Tel:      212-261-7875
Fax:     212-261-3259
Email:    alan.sidrane@ca-cib.com


By:      /s/ Kathleen Sweeney

Name:    Kathleen Sweeney
Title:     Managing Director
Address:  1301 Avenue of the Americas
          New York, NY 10019
Tel:      212-261-7648
Fax:     212-261-3259
Email:    kathleen.sweeney@ca-cib.com

CREDIT SUISSE INTERNATIONAL

By:    /s/ Bik Kwan Chung
Name:    Bik Kwan Chung
Title:    Authorized Signatory
Address:

Tel:
Fax:
Email:

By:    /s/ Carole Villoresi
Name:    Carole Villoresi
Title:    Authorized Signatory
Address:

Tel:
Fax:
Email:

Signature Page to Plan

CYRUS CAPITAL PARTNERS, LP
On behalf of funds managed by it


By: _____ /s/ David Milich _____
Name:    David Milich
Title:     Authorized Signatory
Address:  399 Park Avenue
           New York, NY 10022
Attention: Svetoslav Nikov
Tel:        212-380-5822
Fax:        212-380-5922
Email:     snikov@cyruscapital.com

**D. E. SHAW COMPOSITE PORTFOLIOS, L.L.C.**

By:      /s/ Max Stone
Name:    Max Stone
Title:   Authorized Signatory
Address: 1166 Avenue of the Americas, 9th Fl.
         New York, NY 10036
Tel:     212-478-0000
Fax:     212-478-0100

Signature Page to Plan

D. E. SHAW OCULUS PORTFOLIOS, L.L.C.

By:      /s/ Max Stone
Name:     Max Stone
Title:      Authorized Signatory
Address:   1166 Avenue of the Americas, 9th Fl.
          New York, NY 10036
Tel:       212-478-0000
Fax:      212-478-0100

DEUTSCHE BANK AG

By:      /s/ Ernest C. Goodrich
Name:    Ernest C. Goodrich, Jr.
Title:   Managing Director & Senior Counsel
Address: 60 Wall Street
         New York, NY 10005
Tel:     212-250-7636
Fax:
Email:   chip.goodrich@db.com

By:      /s/ Steven Kessler
Name:    Steven Kessler
Title:   Director
Address: 60 Wall Street
         New York, NY 10005
Tel:     212-250-8202
Fax:
Email:   steven.kessler@db.com

GOLDENTREE ASSET MANAGEMENT, LP


By: _____ /s/ Barry Ritholz _____
Name:    Barry Ritholz
Title:    General Counsel
Address: 300 Park Avenue, 21st Floor
          New York, NY 10021
Tel:    212-847-3420
Fax:    212-847-3494
Email:    britholz@goldentree.com

Signature Page to Plan

GOLDMAN SACHS BANK USA (SUCCESSOR BY
MERGER TO GOLDMAN SACHS CAPITAL MARKETS,
L.P.)


By:      /s/ Kevin G. Byrne
Name:    Kevin G. Byrne
Title:   Chief Financial Officer
Address: 200 West Street
         New York, NY 10282
Tel:     212-902-3076
Fax:     917-977-4570
Email:   kevin.byrne@gs.com

GOLDMAN SACHS INTERNATIONAL


By:      /s/ Andrew Bagley
Name:      Andrew Bagley
Title:      Managing Director
Address:  Peterborough Court, 133 Fleet St.,
           London EC4A 2BB
Tel:      + 44 20 7552 2088
Fax:
Email:    Andrew.bagley@gs.com

Signature Page to Plan

HAYMAN CAPITAL MANAGEMENT, LP


By:        /s/ Debby LaMoy
Name:    Debby LaMoy
Title:     Chief Operating Officer
Address: 2101 Cedar Springs Road, Suite 1400
            Dallas, Texas  75019
Tel:       214-347-8050
Fax:       214-347-8051
Email:     dl@haymancapital.com

KNIGHTHEAD CAPITAL MANAGEMENT, LLC
solely as investment manager for certain funds and accounts


By:      /s/ Thomas Wagner
Name:    Thomas Wagner
Title:   Managing Member
Address: 623 Fifth Avenue, 29th Floor
         New York, NY 10022
Tel:     (212) 356-2900

MASON CAPITAL MANAGEMENT LLC


By:      /s/ John Grizzetti
Name:    John Grizzetti
Title:   Chief Financial Officer
Address: 110 East 59th Street, 30th Fl
         New York, NY 10022
Tel:     212.771.1206
Fax:     212.644.4264
Email:   johng@masoncap.com

MORGAN STANLEY & CO. INTERNATIONAL PLC.

By: _____/s/ Brian Cripps_____
Name:    BRIAN CRIPPS
Title:     Authorised Signatory
Address: 20, Bank Street, Canary Wharf
             London E14 4AD
Tel:       + 44 207 677 7974/9891
Fax:       + 44 207 056 1846/0868
Email:    lndistressed@morganstanley.com

Signature Page to Plan

MORGAN STANLEY CAPITAL SERVICES INC.

By:      /s/ Donna M. Souza
Name:      Donna Souza
Title:      Vice President
Address:  1585 Broadway
          New York, NY 10036
Tel:      212-761-1054
Fax:      212-507-3572
Email:    donna.souza@morganstanley.com

MOUNT KELLETT CAPITAL MANAGEMENT
for and on behalf of Mount Kellett Master Fund II, L.P.

By:      /s/ Jonathan Fiorello
Name:    Jonathan Fiorello
Title:     Chief Operating Officer
Address:  623 5th Avenue, 18th Floor
         New York, NY 10022
Tel:      212-588-6128
Fax:
Email:    jporter@mountkellett.com

Signature Page to Plan

OAKTREE CAPITAL MANAGEMENT, L.P., SOLELY IN
ITS CAPACITY AS AGENT ON BEHALF OF CERTAIN
FUNDS ADVISED BY IT OR THEIR RESPECTIVE
SUBSIDIARIES

By:      /s/ Kenneth Liang
Name:    Kenneth Liang
Title:   Managing Director
Address: 333 South Grand Avenue, 28th Floor
         Los Angeles, CA 90071
Tel:     (213) 830-6422
Fax:     (213) 830-6494
Email:   kliang@oaktreecapital.com


By:      /s/ Mahesh Balakrishnan
Name:    Mahesh Balakrishnan
Title:   Vice President
Address: 333 South Grand Avenue, 28th Floor
         Los Angeles, CA 90071
Tel:     (213) 830-6755
Fax:     (213) 830-6494
Email:   mbalakrishnan@oaktreecapital.com

THE ROYAL BANK OF SCOTLAND PLC


By:      /s/ Michael Fabiano
Name:     Michael Fabiano
Title:      Managing Director
Address:   600 Washington Boulevard
          Stamford, CT 06901
Tel:       (203) 897-3663
Fax:      (203) 897-3418
Email:    michael.fabiano@rbs.com

SERENGETI ASSET MANAGEMENT LP


By: _____ /s/ Marc Baum _____
Name:     Marc Baum
Title:      Director
Address:  632 Broadway
          New York, NY  10012
Tel:       (212) 466-2331
Fax:       (212) 672-2330
Email:     mbaum@serengeti-am.com

Signature Page to Plan

SILVER POINT CAPITAL, L.P. ON BEHALF OF ITS
AFFILIATED INVESTMENT FUNDS


By:     /s/ Edward A. Mulé
Name:    Edward A. Mulé
Title:     CEO
Address:  2 Greenwich Plaza
           Greenwich, CT 06830
Tel:      203-542-4010
Fax:     203-542-4110
Email:    emule@silverpointcapital.com

STATE STREET BANK AND TRUST COMPANY


By:        /s/ David C. Phelan

Name:      David C. Phelan
Title:     Executive Vice President and General Counsel
Address:   One Lincoln Street, SFC-21
           Boston, MA 02111
Tel:       617-664-1783
Fax:       617-664-4310
Email:     dcphelan@statestreet.com

YORK CAPITAL MANAGEMENT GLOBAL ADVISORS,
LLC, o/b/o funds and accounts managed by it


By: _____ /s/ Adam J. Semler _____
Name:    Adam J. Semler
Title:    Chief Operating Officer
Address: 767 5th Avenue, 17th Floor,
        New York, NY 10153
Tel:    (212) 300-1300
Fax:    (212) 300-1301
Email:

Signature Page to Plan

# Schedule A – Plan Proponents

Each of the following (on its own behalf, on behalf of its affiliated investment funds, and/or on behalf of funds advised by it or its affiliates, as applicable) is a Plan Proponent under the Plan:

Angelo, Gordon & Co., L.P.
Contrarian Capital Management, LLC
Credit Agricole CIB
Credit Suisse International
Cyrus Capital Partners, LP
D. E. Shaw Composite Portfolios, L.L.C.
D. E. Shaw Oculus Portfolios, L.L.C.
Deutsche Bank AG
Goldentree Asset Management, LP
Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P.)
Goldman Sachs International
Hayman Capital Management, LP
Knighthead Capital Management, LLC
Mason Capital Management LLC
Morgan Stanley & Co. International plc.
Morgan Stanley Capital Services Inc.
Mount Kellett Capital Management
Oaktree Capital Management, L.P.
The Royal Bank of Scotland plc
Serengeti Asset Management LP
Silver Point Capital, L.P.
State Street Bank and Trust Company
York Capital Management Global Advisors, LLC