WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x
                                                   :
**In re**                                          :        **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :        **08-13555 (JMP)**
                                                   :
                               **Debtors.**        :        **(Jointly Administered)**
                                                   :
-------------------------------------------------------------------x

**NOTICE OF DEBTORS' MOTION**
**PURSUANT TO SECTIONS 105(a) AND 363 OF**
**THE BANKRUPTCY CODE AND RULE 9019 OF**
**THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORIZATION TO SETTLE AND SATISFY CORPORATE FRANCHISE TAX**
**CLAIMS OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE**

            PLEASE TAKE NOTICE that a hearing on the annexed Motion of Lehman
Brothers Holdings Inc. ("LBHI"), and its affiliated debtors in the above-referenced chapter 11
cases (collectively, the "Debtors"), pursuant to sections 105(a) and 363 of title 11 of the United
States Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy
Rules") for authorization to settle and satisfy corporate franchise tax claims of the New York
State Department of Taxation and Finance ("NYSDTF"), all as more fully described in the
Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at
the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One
Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **May 18, 2011 at
10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

            PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall
be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy
Court for the Southern District of New York, shall set forth the name of the objecting party, the
basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court
electronically in accordance with General Order M-242 (which can be found at
www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by
all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF),

WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Richard P. Krasnow, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Elisabetta G. Gasparini, Esq., and Andrea B. Schwartz, Esq., (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases; (v) New York State Department of Taxation and Finance, Building 9, Room 123, W. A. Harriman Campus, Albany, NY 12227-0001, Attn: David J. Demeter, Director, Office of Counsel; and (vi) any person or entity with a particularized interest in the Motion, so as to be so filed and received by no later than **May 11, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: April 25, 2011
New York, New York

/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
: 
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (JMP)**
: 
**Debtors.** : **(Jointly Administered)**
: 
------------------------------------------------------------------x

**DEBTORS' MOTION PURSUANT TO SECTIONS 105(a)**
**AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF**
**THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR**
**AUTHORIZATION TO SETTLE AND SATISFY CORPORATE FRANCHISE TAX**
**CLAIMS OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc. ("LBHI"), and its affiliated debtors in the above-

referenced chapter 11 cases, as debtors and debtors in possession (together, the "Debtors" and,

collectively with their non-debtor affiliates, "Lehman") file this Motion pursuant to sections

105(a) and 363 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and respectfully represent:

**Preliminary Statement**

1.          Prior to the commencement of its case under chapter 11 of the Bankruptcy

Code, LBHI, as ultimate parent of the Lehman enterprise, was responsible for filing combined

New York State franchise tax returns with respect to most Lehman entities subject to taxation in the state of New York (the "Combined Group"), and for paying on behalf of the Combined Group (and subject to allocation among group members) any New York State corporate franchise taxes.[1]  Article 27 of the New York State tax code (the "Tax Code") provides that corporate franchise tax liability is joint and several, allowing the New York State Department of Taxation and Finance ("NYSDTF") to seek to recover the Combined Group's aggregate liability from any taxpayer, including LBHI, that was included in the combined return.  N.Y. TAX LAW § 1081(g); N.Y. COMP. R. & REGS. § 8-1.3.

2.    As set forth in the declaration of Jeffry Ciongoli, a Managing Director and the Director of Global Tax at LBHI (the "Ciongoli Declaration"), attached hereto as Exhibit 1, LBHI, on behalf of the Combined Group, is currently engaged in certain disputes with the NYSDTF regarding the Combined Group's liability for corporate franchise taxes for the 1992 through 2007 tax years (the "Audit Period").  *See* Ciongoli Declaration at ¶ 10.  The NYSDTF has asserted that the respective Debtors that are members of the Combined Group have liability on account of these disputes that could exceed $1.2 billion, and has filed proofs of claim, both priority and non-priority, for such amounts.  These disputes relate to four significant issues, each of which is factually and legally complex and involves areas of the Tax Code that are not well developed and whose application to the Combined Group is uncertain (the "Disputes").  *See* Ciongoli Declaration at ¶¶ 13-18.  If the Debtors and the NYSDTF are unable to resolve the Disputes consensually, they will be forced to litigate and, given the unsettled nature of the applicable law, the Debtors' ability to obtain a favorable outcome is uncertain and would, in any case, be protracted and expensive.  *See* Ciongoli Declaration at ¶ 19.

---

[1] LBHI is authorized to settle disputes on its own behalf and on behalf of all members of the Combined Group.  *See* N.Y. TAX LAW § 211.4; N.Y. COMP. R. & REGS. § 6-3.2(a).

3.       In order to avoid the expense and delay of such litigation, LBHI, on behalf of the Combined Group, and the NYSDTF engaged in good faith negotiations to consensually resolve their differences with respect to the Disputes.  These efforts ultimately resulted in LBHI and NYSDTF agreeing to the settlement that is memorialized in that certain closing agreement, dated as of April 15, 2011 and attached hereto as <u>Exhibit 2</u> (the "<u>Closing Agreement</u>").  As described in greater detail below, the Closing Agreement provides for LBHI, on behalf of the Combined Group, to make a fixed payment of $144,128,249 to the NYSDTF in full and final satisfaction of the Combined Group's liability for corporate franchise tax for the Audit Period, in exchange for NYSDTF's agreement to withdraw the proofs of claim it filed against LBHI and release the Debtors, among others, from further liability for corporate franchise tax for the Audit Period.

4.       As further set forth in the Ciongoli Declaration, given the uncertain legal questions and the factual complexity that characterize the Disputes, and the risks and expense attendant to litigating each Dispute, the Debtors believe that the settlement set forth in the Closing Agreement is fair and reasonable and in the best interests of the Debtors' estates and their respective creditors.  *See* Ciongoli Declaration at ¶ 19.

5.       LBHI will make an equitable allocation of any amounts that it pays to the NYSDTF among Debtor and non-Debtor entities, including LBI,[2] based on each entity's allocable share of such amounts (taking into account historic tax sharing principles).

---

[2] LBHI timely filed a claim against Lehman Brothers Inc. ("<u>LBI</u>") in LBI's proceeding (the "<u>SIPA Proceeding</u>") under the Security Investor Protection Act of 1970 ("<u>SIPA</u>") for, *inter alia*, LBI's allocable liability for taxes paid by LBHI.  Pursuant to the Court's order dated July 2, 2009 [Docket No. 4271], which established the deadline for filing proofs of claim against the Debtors (the "<u>Bar Date</u>"), any entity included on the list of exempt entities (the "<u>Exempt Entities List</u>"), which included LBHI, was not required to file a proof of claim against other Debtors on or before the Bar Date.  To the extent that a bar date is subsequently established for intercompany claims, LBHI will file proofs of claim against relevant Debtor entities for such Debtor entities' allocable share of amounts LBHI pays to the NYSDTF.

**Background**

6.      Commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

8.      On September 19, 2008, a proceeding was commenced under the SIPA with respect to LBI.  A trustee appointed under the SIPA (the "SIPC Trustee") is administering LBI's estate.

9.      On January 25, 2011, the Debtors filed their First Amended Joint Chapter 11 Plan [Docket No. 14150] and the Disclosure Statement to the Debtors' First Amended Joint Chapter 11 Plan [Docket No. 14151].

10.     Additional information regarding the Debtors' businesses, capital structures, and the circumstances leading to the commencement of these chapter 11 cases is contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York in Support of First-Day Motions and Applications, filed on September 15, 2008 [Docket No. 2].

**Jurisdiction**

11.     This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Relief Requested

12.     The Debtors request authorization, pursuant to sections 105(a) and 363 of

the Bankruptcy Code and Bankruptcy Rule 9019, to enter into the Closing Agreement and to

perform all of the obligations thereunder, including the payment of $144,128,249 to the

NYSDTF in full and final satisfaction of the Combined Group's liability for corporate franchise

tax for the Audit Period.  The Debtors have determined, in the exercise of their sound business

judgment, that the Closing Agreement and the transactions described therein are in the best

interests of their respective estates and creditors and should be approved.

## The Disputes

13.     As discussed above, the Disputes involve mixed issues of law and fact and

are dependent on complex and relatively obscure areas of the Tax Code.  The Disputes may be

summarized as follows:

- ▪ Investment Income / Business Income Classification.  In order to calculate taxable
  income for New York State corporate franchise tax purposes, corporations must
  classify all income as derived from business capital or investment capital – each
  of which is subject to taxation under a separate formula.[3]  N.Y. Tax Law §
  210(3)(a) and (b); N.Y. Comp. R. & Regs. § 4-2.2(a) and §4-7.2(a).  This
  classification is important because the Combined Group's income derived from
  business capital was taxed at an effective rate of approximately 6.8% during the
  Audit Period, while the Combined Group's income derived from investment
  capital was taxed at an effective rate of approximately 0.5% during the Audit
  Period.

  For the tax years covered by the Audit Period, the NYSDTF reclassified a portion
  of the Combined Group's income derived from investment capital to income
  derived from business capital.  NYSDTF based this reclassification primarily on
  its attribution of additional expenses to the Combined Group's income from
  investment capital, reducing the Combined Group's net income from investment
  capital and resulting in a corresponding increase in the Combined Group's income
  from business capital, which, as set forth above, is taxed at a significantly higher
  rate.

---

[3] Income from subsidiary capital is excluded from the income subject to tax.

- Subsidiary Income. The Tax Code provides that income from subsidiary capital (*i.e.*, income from subsidiaries that are not part of the Combined Group) is not taxable in New York State. N.Y. TAX LAW § 208(9)(B)(6); N.Y. TAX LAW § 208(9)(A)(1); N.Y. COMP. R. & REGS. § 3-2.3(A)(7); N.Y. COMP. R. & REGS. § 3-2.4(A)(1). While the NYSDTF included the income of certain non-U.S. subsidiaries in business income, LBHI was able to demonstrate that this income should be excluded as income from subsidiary capital.

- Expense Attribution. The Tax Code requires taxpayers to characterize most expenses as either: (i) directly attributable to subsidiary, investment or business capital or (ii) indirectly attributable to subsidiary, investment or business capital. *See* TSB-M-88(5)C OCT. 14, 1988 AND TSB-M-95(2)C JAN. 8, 1996. For certain of the tax years covered by the Audit Period, the NYSDTF made adjustments to LBHI's classification of expenses reported on the Combined Group's New York State Tax returns. These adjustments generally involved the reclassification of expenses from indirectly to directly attributable to particular classes of capital. The net result of these reclassifications would be to significantly increase the Combined Group's business income, which is subject to higher tax rates.

- Revenue Agent Reports. Changes made by the Internal Revenue Service ("IRS") to federal taxable income are reported to the taxpayer on revenue agent reports ("RARs"). Under applicable law, such changes must be reported to the NYSDTF upon final determination. N.Y. TAX LAW § 211(3); N.Y. COMP. R. & REGS. § 6-1.3. If these changes result in an increase in New York State business or investment income, the taxpayer must remit additional tax to NYSDTF. LBHI is undergoing audits by the IRS and has several matters relating to the Audit Period that are still in dispute. Despite the fact that the IRS has not completed its audit for some years included in the Audit Period, and the potential adjustments that may be reported on Federal RARs have not been finalized, LBHI and the NYSDTF have considered their impact in arriving at the above noted settlement.

*See* Ciongoli Declaration at ¶¶ 13-18.

14.    While LBHI believes that a strong basis exists for the characterization of income/expense made on the Combined Group's New York State tax returns with respect to each of the Disputes, litigating any or all of the Disputes would require the Debtors to expend considerable time and resources to (i) work with their professionals to continue to analyze the applicable provisions of the Tax Code, (ii) investigate Lehman's New York State income tax archive for documents that may further support the characterizations described above (a process made significantly more difficult, time-consuming, and expensive by the fact that the relevant

records are housed at a third-party document storage facility and access is controlled by Barclays

Capital Inc.), (iii) create work product that would be suitable for trial, (iv) engage in lengthy and

complex discovery, and (v) prosecute a highly complex and costly litigation with the NYSDTF,

all with uncertain results.  Given these difficulties, the Debtors have determined that settlement

of the Disputes pursuant to the Closing Agreement is in the best interest of their respective

estates and creditors.  *See* Ciongoli Declaration at ¶ 19.

## The Claims

15.    The NYSDTF filed multiple prepetition claims in LBHI's chapter 11 case

(the "Claims").[4]  The Claims relate to amounts purportedly due to the NYSDTF from the

Combined Group with respect to corporate franchise tax, sales tax and withholding tax.  The

NYSDTF asserts that of the approximately $1.2 billion that is purported due from the Combined

Group for corporate franchise taxes, approximately $1,073,105,909 is entitled to priority

pursuant to section 507(a)(8) of the Bankruptcy Code, and approximately $95,778,411 is not

entitled to priority.  In particular, the NYSDTF asserts that the Combined Group owes corporate

franchise tax in the following amounts:

| Period Ended | Asserted Priority | Amount |
|:---:|:---:|---:|
| 1994 | Non-Priority | $64,128,393.00 |
| 1999 | Priority | $223,257,862.00 |
| 2003 | Priority | $392,986,653.00 |
| 2004 | Non-Priority | $31,643,276.00 |
| 2005 | Non-Priority | $6,742.46 |
| 2005 | Priority | $147.89 |
| 2007 | Priority | $387,864,508.00 |
| 2008 | Priority | $68,996,738.00 |
| **Total:** | | $1,168,884,320.00 |

---

[4] The Claims were given claim numbers 417, 1237, 4867, 7750, 11037, 65278, 66268, 66553, 66598, 66975, 67112, 67225, and 67313 by the Debtors' claims and noticing agent.

### The Negotiations

16.     As discussed in the Ciongoli Declaration and the declaration of Jack Kramer (the "Kramer Declaration"), a principal of PricewaterhouseCoopers, LLC, ("PwC") and PwC's National State Income/Franchise Tax Lead Partner, attached hereto as Exhibit 1, over the past two years, LBHI, on behalf of the Combined Group, and the NYSDTF have engaged in extensive and ongoing negotiations designed to facilitate settlement of the Combined Group's corporate franchise tax liability for the Audit Period.  See Ciongoli Declaration at ¶ 12, Kramer Declaration at ¶¶ 8, 17.  By exchanging written submissions setting forth the parties' factual and legal positions and engaging in numerous conferences and teleconferences, both the Debtors and the NYSDTF have subjected their positions to rigorous examination and review.  The Closing Agreement, therefore, was achieved after each party's thorough review and analysis of the other party's respective substantive positions and exposure to the hazards of litigation.

17.     Throughout this process, as discussed in the Ciongoli Declaration and Kramer Declaration, the Debtors have been advised and represented by MMOR Consulting, Inc. ("MMOR"), PWC, and Sutherland Asbill & Brennan LLP ("Sutherland," together with MMOR and PwC, the "Debtors' Tax Advisors"), all of whom were retained pursuant to court authorization.  See Docket Nos. 12204, 4425, 8846; see also Ciongoli Declaration at ¶ 12, Kramer Declaration at ¶ 2.  The Debtors' Tax Advisors represented the Debtors in their negotiations with the NYSDTF, reviewed and analyzed the Combined Group's books and records and the relevant provisions of the Tax Code, examined the merits of the NYSDTF's arguments with respect to the Disputes, and evaluated the risk, expense, and likelihood of success if the Disputes were litigated.  Following this exhaustive process, and in consultation with the Debtors' Tax Advisors, the Debtors have concluded that the Closing Agreement is fair,

equitable, and in the best interests of the Combined Group and, in particular, the Debtors and

their respective estates and creditors.  *See* Ciongoli Declaration at ¶ 19; *see also* Kramer

Declaration at ¶ 19.

### The Closing Agreement

18.    The Closing Agreement, which was negotiated at arm's-length between

LBHI (on behalf of the Combined Group) and the Debtors' Tax Advisors, on one hand, and

representatives of the NYSDTF, on the other hand, includes the following material terms:[5]

| | |
|---|---|
| ***Assessment*** | LBHI, on behalf of the Combined Group, agrees to a final assessment of $153 million (the "<u>Assessment</u>") representing $104,028,354 in corporate franchise tax and $48,971,646 in interest.  No penalties will be assessed against the Combined Group.  The Assessment is based solely on the priority Claims filed by the NYSDTF. |
| | The NYSDTF agrees to allow the Combined Group to set off certain overpayments with respect to the amended returns filed for the 2007 tax year, reducing the net payment due to the NYSDTF to $144,128,249 (the "<u>Payment Amount</u>"). |
| | The NYSDTF further agrees that the Combined Group's transfer of the Payment Amount to NYSDTF will be in full and final satisfaction of the Combined Group's liability for corporate franchise taxes and any related penalties or interest due for the Audit Periods. |
| ***Releases by the Debtors*** | The Debtors agree:<br>1.  to forego any refunds associated with the carry back of any net operating loss and capital loss to the Audit Period; and<br>2.  to waive any rights to protest, to withdraw all pending protests, to refrain from filing any future refund claims related to such years, and that they are not entitled to any refund of corporate franchise tax under the Tax Code for the Audit Period. |
| ***Releases by NYSDTF*** | The NYSDTF agrees:<br>1.  that all unused net operating and capital losses may be carried forward to future periods;<br>2.  to waive any rights to recapture investment tax credits applicable to |

---

[5] The terms listed below are provided as a summary of certain of the terms of the Closing Agreement.  In the case of an inconsistency between the terms set forth in the summary and the terms of the Closing Agreement, the terms of the Closing Agreement shall control.

the Audit Period; and

3. to waive any rights to assess, withdraw all pending assessments and proofs of claim, that it is not entitled to any tax, interest or penalty except with respect to the Assessment, and to file no future claims for tax, interest or penalty against the Combined Group related to the Audit Period.

**Mutual Releases**      LBHI and the NYSDTF agree:

1. that there will be no investment tax credit or any other tax credit available from the Audit Period to be carried forward to future tax years; and

2. that because adjustments to tax related to changes or corrections in federal taxable income in the Audit Period were considered in arriving at the Assessment, the Debtors waive the right to any related credit or refund, and the NYSDTF waives the right to make any assessment against the Combined Group based upon any RAR that the Debtors receive relating to the Audit Period. In addition, the NYSDTF waives the obligation of the Debtors to report federal RAR changes relating to the Audit Period to the NYSDTF.

**Claims**      Upon LBHI's filing of a certificate of payment of the Payment Amount, the Claims shall be deemed disallowed an expunged, including, without limitation, all Claims relating to sales and use and payroll withholding taxes other than Claims against LBI.

19.      In the Claims, the NYSDTF has asserted that LBHI and the other members of the Combined Group are liable for an aggregate amount of approximately $12,200,000 with respect to sales and use and payroll withholding taxes incurred during the Audit Period. In the course of the negotiations regarding the Closing Agreement, however, the NYSDTF acknowledged that the liability for sales and use and payroll withholding taxes is attributable to LBI. Accordingly, in addition to the foregoing terms, the Closing Agreement also provides a waiver of liability for the sales and use and payroll withholding taxes for the Audit Period to the Combined Group other than LBI. *See* Closing Agreement, page 3 . This waiver reduces the aggregate amount of claims filed against LBHI by approximately $12,200,000.

### The Closing Agreement Meets The Legal Standard
### Established Under Rule 9019 and Is in the Best Interests of the Debtors' Estates

20.    Bankruptcy Rule 9019(a) provides that, "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." FED R. BANKR. P. 9019(a).  This rule empowers bankruptcy courts to approve compromises "if they are in the best interest of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968); *Fisher v. Pereira* (*In re 47-49 Charles St., Inc.*), 209 B.R. 618, 620 (S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994).  Indeed, courts have long considered compromises to be "a normal part of the process of reorganization." *TMT Trailer Ferry*, 390 U.S. at 424 (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

21.    The decision to approve a particular compromise lies within the sound discretion of the bankruptcy court.  *Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994).  The settlement need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness.  *Drexel Burnham Lambert Group*, 134 B.R. at 505; *see also Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983); *In re Spielfogel*, 211 B.R. 133, 144 (Bankr. E.D.N.Y. 1997).  Additionally, a court may exercise its discretion "in light of the general public policy favoring settlements."  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).  However, the analysis must focus on the question of whether a particular compromise is "fair and equitable, and in the best interest of the estate."  *In re Best Products*, 165 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) (internal citations omitted).

22.    While a court must "evaluate . . . all . . . factors relevant to a fair and full

assessment of the wisdom of the proposed compromise," *Anderson*, 390 U.S. at 424-25, a court

need not conduct a "mini-trial" of the merits of the claims being settled, *W.T. Grant Co.*, 699

F.2d at 608, or conduct a full independent investigation. *Drexel Burnham Lambert Group*, 134

B.R. at 496.  "[T]he bankruptcy judge does not have to decide the numerous questions of law and

fact. . . .  The court need only canvass the settlement to determine whether it is within the

accepted range of reasonableness." *Nellis*, 165 B.R. at 123 (internal citations omitted).

23.    The court may give weight to the "informed judgments of the . . . debtor-

in-possession and their counsel that a compromise is fair and equitable, and consider the

competency and experience of counsel who support the compromise." *Drexel Burnham Lambert

Group*, 134 B.R. at 505 (internal citations omitted); *see also In re Purofied Down Prods. Corp.*,

150 B.R. 519, 522 (S.D.N.Y. 1993); *accord In re Ashford Hotels Ltd.*, 226 B.R. 797, 802 (Bankr.

S.D.N.Y. 1998) ("Significantly, that test does not contemplate that I substitute my judgment for

the Trustee's, but only that I test his choice for reasonableness. . . .  If the Trustee chooses one of

two reasonable choices, I must approve that choice, even if, all things being equal, I would have

selected the other.").

24.    Significantly, there is no requirement that "the value of the compromise

. . . be dollar-for-dollar the equivalent of the claim." *Ionosphere Clubs, Inc.*, 156 B.R. at 427.

Instead, "there is no reason, at least in theory, why a satisfactory settlement could not amount to

a hundredth or even a thousandth part of a single percent of the potential recovery." *Id.* at 427-

28 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)).

25.    The primary virtue of the settlement memorialized in the Closing

Agreement is that it relieves the Debtors' estates of asserted priority claims totaling more than $1

billion, and over $55 million in non-priority claims, in exchange for the Debtors' consent to a

corporate franchise tax assessment of $153 million for the Audit Period.  Although the Debtors

do not concede that the NYSDTF's estimate of $1.2 billion is an accurate appraisal of the

Combined Group's aggregate liability, they recognize that the Combined Group likely does have

significant liability to NYSDTF with respect to corporate franchise tax for the Audit Period and

believe that fixing such liability at $153 million is fair and reasonable and in the best interests of

the Debtors' estates and creditors.[6]  *See* Ciongoli Declaration at ¶ 19; Kramer Declaration at ¶

19.  As discussed above and in the Ciongoli Declaration and the Kramer Declaration in greater

detail, this conclusion is primarily based on LBHI's evaluation, on behalf of the Combined

Group, of the challenges, risks and expense of litigation, and the likelihood that such litigation

would result in a liability substantially greater than the Assessment.  *See* Ciongoli Declaration at

¶ 19, Kramer Declaration at ¶ 18.  Consequently, the Debtors have determined that the benefits

gained by resolving these matters pursuant to the Closing Agreement far outweigh the risks and

costs associated with litigating the Disputes.

> 26.    Furthermore, over $1 billion of the Claims may be entitled to priority

status against the Debtors pursuant to section 507(a)(8) of the Bankruptcy Code, which provides,

in pertinent part, that priority status shall be granted to the following:

> [A]llowed unsecured claims of governmental units, only to the extent that such
> claims are for – (A) a tax on or measured by income or gross receipts for a taxable
> year ending on or before the date of the filing of the petition – (i) for which a
> return, if required, is last due…after three years before the date of the filing of the
> petition; [and is] (ii) assessed within 240 days before the date of the filing of the
> petition…(B) a property tax incurred before the commencement of the case and
> last payable without penalty after one year before the date of the filing of the

---

[6] The Closing Agreement provides for the withdrawal of all of the Claims.  Because $68,996,738 of the Claims
relate to 2008, a postpetition year for the NYS corporate franchise taxes, NYSDTF could later seek to assert an
administrative expense.  LBHI does not concede that the Combined Group has any remaining liability for 2008
corporate franchise taxes.

> petition; (C) a tax required to be collected or withheld and for which the debtor is
> liable in whatever capacity; (D) an employment tax on a wage, salary, or
> commission…[or] (E) an excise tax on – (i) a transaction occurring before the
> date of the filing of the petition for which a return, if required, is last due, under
> applicable law…after three years before the date of the filing of the petition.

11 U.S.C. §507(a)(8).  To the extent the Claims qualify for such priority, they would have to be

paid in full before any general unsecured obligations of the Debtors could be satisfied.  As such,

the Closing Agreement merely affects the timing of LBHI's payment of the Combined Group's

corporate franchise tax liability, not the amount paid in respect thereof.  Indeed, the Debtors

believe their willingness to transfer the Payment Amount to the NYSDTF pursuant to the

Closing Agreement, rather than waiting for plan confirmation, was crucial to the NYSDTF's

willingness to settle the Disputes for the amount of the Assessment.  *See* Ciongoli Declaration at

¶ 19.  If the NYSDTF was forced to wait until after confirmation of a chapter 11 plan in order to

receive a payment in respect of the Claims, it is very likely that the NYSDTF would seek

significantly more to resolve the Disputes.  Moreover, pursuant to section 1129(a)(9)(C) of the

Bankruptcy Code, allowed priority taxes claims must be paid in full either on the confirmation

date or over a period of five years.  Furthermore, if the priority portion of Claims is paid in

installments over five years, section 511 of the Bankruptcy Code provides that NYSDTF shall be

entitled to interest at a rate determined under applicable nonbankruptcy law, which at present is

6%.  N.Y. TAX LAW SEC. 1084.

      27.    With respect to the members of the Combined Group other than LBI,

LBHI will make an equitable allocation among Debtor and non-Debtor entities, including LBI,[7]

based on each entity's allocable share of the Payment Amount (taking into account, among other

things, historic tax sharing principles).

---

[7] As noted *supra*, LBHI has filed a proof of claim in the SIPA Proceeding seeking, *inter alia*, reimbursement of that portion of LBI's allocable share of taxes paid by LBHI.

28.    For the reasons stated above and in the Ciongoli Declaration and Kramer Declaration, and in the informed judgment of the Debtors, the Closing Agreement is a "fair and equitable" resolution of the issues described herein, is well within the "range of reasonableness," and is in the best interests of the Debtors' respective estates and creditors. *See* Ciongoli Declaration at ¶ 19, Kramer Declaration at ¶ 19. Accordingly, the Debtors request that their entry into the Closing Agreement be approved pursuant to Bankruptcy Rule 9019.

**Remittance of the Payment Amount to NYSDTF Pursuant to the Closing
Agreement Is An Appropriate Exercise of the Debtors' Business Judgment**

29.    As described in greater detail above, the Closing Agreement provides for the withdrawal of the Claims, which include over $1 billion in priority claims, in exchange for a single payment of $144,128,249. The Debtors, in their business judgment, believe that such a settlement is in the best interests of their respective estates and creditors. *See* Ciongoli Declaration at ¶ 19. Accordingly, the Debtors also seek authority, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, to comply with their payment obligations under the Closing Agreement and, in particular, LBHI seeks authority to pay, on behalf of the Combined Group, such amount in full and final satisfaction of the Combined Group's liability for corporate franchise taxes and any related penalties or interest due for the Audit Period.

30.    Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). While section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale, disposition, or other use of a debtor's assets, courts in the Second Circuit, in applying this section, have required that it be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a

section 363(b) application must find from the evidence presented a good business reason to grant

such application); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d

1063, 1071 (2d Cir. 1983) (same).  Section 105 of the Bankruptcy Code provides, in pertinent

part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate

to carry out the provisions of [title 11]."  11 U.S.C. § 105(a).

31.    It is generally understood that "[when] the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville*

*Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is

a strong presumption that "'the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company.'" *In*

*re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.

*Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

32.    In light of the direct and indirect benefits inuring to the Debtors'

respective estates and creditors described above, entry into the Closing Agreement, and

compliance with the Debtors' obligations thereunder, is a proper exercise of the Debtors'

business judgment and should be approved.  *See* Ciongoli Declaration at ¶ 19.

**<u>Creditors' Committee</u>**

33.     The Debtors have been informed that the Creditors' Committee supports LBHI's entry into the compromise and settlement set forth in the Closing Agreement and the granting of the relief sought by this Motion.

**<u>Notice</u>**

34.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010, governing case management and administrative procedures for these cases [Docket No. 9635] on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the NYSDTF; and (vii) all parties who have requested notice in these chapter 11 cases.  The Debtors submit that no other or further notice need be provided.

35.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated:  April 25, 2011
      New York, New York

                  /s/ Richard P. Krasnow
                  Richard P. Krasnow

                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, New York 10153
                  Telephone: (212) 310-8000
                  Facsimile: (212) 310-8007

                  Attorneys for Debtors
                  and Debtors in Possession

**<u>Exhibit 1</u>**
**(Ciongoli Declaration & Kramer Declaration)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
                                                  :
In re                                             :        **Chapter 11 Case No.**
                                                  :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,      :        **08-13555 (JMP)**
                                                  :
                            **Debtors.**          :        **(Jointly Administered)**
                                                  :
-------------------------------------------------------------------x

**DECLARATION OF JEFFRY CIONGOLI IN SUPPORT OF**
**MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF**
**THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION**
**TO SETTLE AND SATISFY CORPORATE FRANCHISE TAX CLAIMS**
**OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE**

Jeffry Ciongoli hereby declares under penalty of perjury pursuant to

section 1746 of title 28 of the United States Code:

1.      I am over 18 years of age and I can testify to the following facts

based on my personal knowledge, my review of the business records of Lehman Brothers

Holdings Inc. ("LBHI"), and/or my consultation with employees of LBHI, LBHI's

subsidiaries, and Alvarez & Marsal North America, LLC and affiliates ("A&M").  I make

this declaration in support of the motion (the "Motion")[1] of the Debtors, pursuant to

sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, to settle and

satisfy corporate franchise tax claims of the New York State Department of Taxation and

Finance ("Settlement").

---

[1]      Capitalized terms used but not defined herein shall have the meanings ascribed to them in the
Motion (as defined below).  References to LBHI, unless otherwise noted, include all affiliated Debtors and
Non-Debtors included in the New York State combined return.

2.      I graduated from the Lubin School of Business at Pace University with degrees in accounting (B.B.A.) and taxation (M.S.).  I began my career at Unilever as a staff accountant in their Finance Accounting Management program before joining LBHI as a tax analyst twenty-seven years ago.

3.      During my tenure at LBHI, I have been involved in many of the tax department's functions, including preparation and review of federal and state tax returns, international tax compliance, management of federal and state audits, and tax planning.  From 1994 through 2002, I was a First Vice President and was responsible for LBHI's consolidated federal income tax returns, state and local tax issues, including management of state and local tax audits, and international tax issues.  From 2003 through 2008, I was a Senior Vice President with continued responsibility for LBHI's consolidated federal income tax returns, and state and local tax issues, including state and local tax audits.  In addition, in 2002, I became head of tax compliance.

4.      Following the Commencement Date, I became Managing Director and Director of Global Tax, a position that I continue to hold.  As Director of Global Tax, I am in charge of LBHI's tax function, which includes responsibility for all of LBHI's domestic and U.S. international tax reporting, tax planning, and tax disputes with the IRS and state and local tax authorities.  As a result of my current and previous positions with LBHI, and my consultations with employees of LBHI, LBHI's subsidiaries, and A&M, I have knowledge of New York State ("NYS") tax matters and the issues pertaining to the LBHI's current audit being conducted by the New York State Department of Taxation and Finance ("NYSDTF").

5.      During my tenure with LBHI, I have become familiar with NYS

tax matters, including significant audit issues, through my own research and my

discussions with other LBHI employees and various advisors that have been retained by

LBHI through the years.

6.      I have reviewed the Motion and believe that its description of the

facts, issues and proposed resolution, accurately sets forth the disputes with the NYSDTF

and the Settlement.  Accordingly, I incorporate the information contained in paragraphs

12-19 and 25-32 of the Motion as if set forth herein.

7.      LBHI has filed NYS franchise tax returns on a combined basis

with most of its domestic subsidiaries since receiving permission to file on that basis

from the NYSDFT for the 1987 tax year.  The combined return includes approximately

200 corporations.  Under New York Tax Law, general corporations are taxed under

Article 9-A.  However, banks and insurance companies are taxed under Articles 32 and

33, respectively, and may not be included in a combined return with corporations taxable

under Article 9-A.  Thus, as examples, Aurora Bank, FSB and Woodlands Commercial

Bank are not included in the combined return.

8.      Among the Lehman entities that are included in the NYS combined

return are LBI and the following Debtors: LBHI, Lehman Brothers Commodity Services

Inc., Lehman Brothers Special Financing Inc., Lehman Brothers OTC Derivatives,

Lehman Brothers Derivative Products Inc., Lehman Commercial Paper Inc., Lehman

Brothers Commercial Corporation, Lehman Brothers Financial Products Inc., and

Structured Asset Securities Corporation.  Prior to its conversion to a single member

limited liability company in 2007, BNC Mortgage Inc. was also included in the NYS

combined return.

9.      For tax accounting purposes, each of the Lehman entities included

in the Combined Group recorded tax expense equal to its pre-tax income multiplied by

the Combined Group's NYS effective tax rate for the prior tax year, using a combination

of the investment allocation percentage and the business allocation percentage.

10.      The NYS audit includes 17 tax periods from 1992 – 2007.

Consistent with other large taxpayers, the NYSDTF audits LBHI for each tax period.

The number of tax periods included in the audit is unusual.  An audit for the early periods

was nearly complete when the lead auditor tragically perished in the terrorist attack on

the World Trade Center on September 11, 2001.  In addition, the records and supporting

workpapers relating to the audit were destroyed.  The audit had to be redone, documents

needed to be recreated, and the timeline was significantly extended.

11.      The progress of the audit was steady.  Numerous issues were

disputed, including, among others, net operating losses, reporting of federal audit

changes, investment tax credits, employment incentive credits, expenses attributable to

investment income, expenses attributable to subsidiary income, and the classification of

income as subsidiary income.  The LBHI tax department provided volumes of

information to the NYSDTF auditors.  There were many meetings and teleconferences

with the auditors, the audit supervisor and the Director of Audit Operations for

Manhattan.  Following the commencement of LBHI's chapter 11 case under the

Bankruptcy Code, negotiations with the NYSDTF intensified, and ultimately were

elevated to the Office of the NYS Commissioner of Taxation and Finance for resolution.

12.    Throughout the NYSDTF's audit of LBHI for the Audit Period, Michael Morgese of MMOR Consulting, Inc. ("MMOR"), a court approved professional, led all discussions with the NYSDTF audit team, audit supervisors, appeals officers, and the Commissioner's office under my direction.  Mr. Morgese has represented LBHI in New York State tax matters for more than 25 years.  As negotiations with the NYSDTF intensified, I selected a group of additional advisors, inclusive of MMOR, (the "Debtors' Tax Advisors"), all of whom had also been retained by LBHI pursuant to court approval, to ensure that all issues were appropriately analyzed, all courses of action, including potential litigation, were considered, and the ultimate outcome was in the best interests of the estates and its creditors.  The Debtors' Tax Advisors' included Michael Lippman of A&M, Michael Morgese of MMOR, Jack Kramer of PricewaterhouseCoopers LLP, and Jeffrey Friedman and Marc Simonetti of Sutherland Asbill & Brennan LLP.  Mr. Lippman has led the A&M tax team serving LBHI since the commencement of the chapter 11 cases.  It is my understanding that he has more than 30 years of state and local tax experience, 28 with two of the so-called Big 4 accounting firms, and is recognized as one of the foremost technical experts in his field.  It is my understanding that for many years, Mr. Lippman was the national leader and national technical leader of KPMG LLP's state and local tax practice.  Working with the Lehman internal tax team, Mr. Lippman set strategy and coordinated the efforts of our other Debtor Tax Advisors.  Mr. Morgese has represented LBHI on New York State tax matters for more than 25 years. As described in the Kramer Declaration, Mr. Kramer assembled a team with more than 70 years of New York State tax experience.  *See* Kramer Declaration, at ¶ 4-7.

13.     There were many minor issues addressed during the course of the audit.  However, there were four major issues of significance: expenses relating to investment income; expenses relating to subsidiary income; the classification of subsidiary income; and the reporting of federal audit adjustments to the NYSDTF.

14.     The classification of income as business income or investment income is critical.  The effective tax rate on investment income is the product of the statutory tax rate and the investment allocation percentage based on rules promulgated by NYS that specify the percentage of particular investments that must be included in investment income. The effective tax rate on business income is the product of the statutory tax rate and the business allocation percentage (generally, measuring the percentage of the taxpayer's payroll, property and sales in NYS compared to payroll, property and sales everywhere).  In LBHI's case, net investment income (investment income reduced by expenses) is taxed at an effective tax rate of 0.5 percent and net business income is taxed at an effective tax rate of 6.8 percent.  Thus, every dollar of income that NYS successfully re-attributes to business rather than investment income could generate twelve times the amount of NYS franchise tax.   N.Y. TAX LAW § 210; N.Y. TAX LAW § 210(3)(b); N.Y. COMP. R. & REGS. § 4-2.2(a).

15.     The NYSDTF proposed adjustments to increase net business income by attributing so-called "indirect expenses" (e.g., interest, officer's compensation, office rentals) away from business income to investment income.  The formulaic rules regarding the attribution of expenses are vague and disputes of this nature are common between the NYSDTF and the major financial institutions.   While I believe that a strong basis exists to support the treatment of expenses on its NYS combined return, favorable

resolution of this issue is complex and uncertain.  In addition, based on my experience,

this is an issue that the NYSDTF may litigate.  It is fact intensive, and discovery over a

17-period audit cycle would be an extremely costly, arduous, and time-consuming task,

made even more difficult than might otherwise normally be the case because the relevant

records are housed at a third-party document storage facility and access is controlled by

Barclays Capital Inc.

        16.      The classification of income as income from subsidiary capital (*i.e.*

income from subsidiaries that are not included in the combined return) is also critical, as

subsidiary income is not subject to tax in NYS and expenses directly and indirectly

attributable to subsidiaries are not deductible.  N.Y. TAX LAW § 208(9)(b)(6); N.Y. TAX

LAW § 208(9)(a)(1); N.Y. COMP. R. & REGS. § 3-2.3(a)(7); N.Y. COMP. R. & REGS. § 3-

2.4(a)(1).  Similar to the investment income issue above, the Department allocated

interest expense, officer's compensation and other expenses to subsidiary income, rather

than business income, thus increasing the amount of business income subject to NYS tax.

The formulaic rules regarding the attribution of expenses are vague and disputes of this

nature are common between the NYSDTF and the major financial institutions.   While I

believe that a strong basis exists to support the treatment of expenses on LBHI's NYS

combined return, favorable resolution of this issue is complex and uncertain.  In addition,

based on our experience, this is an issue that the NYSDTF may litigate.  It is fact

intensive, and, as with the discovery attendant to the issues relating to business or

investment income discussed above, such discovery over a 17-period audit cycle would

be extremely costly.

17.     New York tax law provides that income from subsidiary capital is not subject to tax.   N.Y. TAX LAW § 208(9)(B)(6); N.Y. TAX LAW § 208(9)(A)(1); N.Y. COMP. R. & REGS. § 3-2.3(A)(7); N.Y. COMP. R. & REGS. § 3-2.4(A)(1).   In its Claims, the NYSDTF included the income of certain non-U.S. subsidiaries in business income. However, LBHI was able to demonstrate that this income should be excluded as income from subsidiary capital.

18.     Changes made by the Internal Revenue Service ("IRS") to federal taxable income are reported to the taxpayer on revenue agent reports ("RARs").   Under applicable law, such changes must be reported to the NYSDTF upon final determination. N.Y. TAX LAW § 211(3); N.Y. COMP. R. & REGS. § 6-1.3.   If these changes result in an increase to NYS business or investment income, the taxpayer must remit additional tax to NYS.   LBHI is undergoing audits by the IRS and has several matters relating to the audit periods that are still in dispute.   Despite the fact that the IRS has not completed its audit for some years included in the audit period and the potential adjustments that may be reported on federal RARs have not been finalized, LBHI and the NYSDTF have considered their impact in arriving at the Settlement.

19.     The Claims filed by the NYSDTF assert Claims totaling approximately $1.2 billion.   The Settlement provides for a cash outlay of approximately $144 million (approximately 12 cents on the dollar and $8.5 million per tax period).   An integral element of discussion with the NYSDTF, which ultimately resulted in an agreement on a settlement amount that is substantially less than the asserted Claims, was the timing of the payment from the Debtors' estate.   I believe that, absent the payment being made prior to confirmation of the Debtors' chapter 11 plan, the ultimate amount

payable to the NYSDTF in respect of the Claims would be higher, or potentially, substantially higher, than the settlement amount.  Based on my judgment and in consultation with the Debtors' Tax Advisors, other members of the LBHI tax department and A&M, I believe that this Settlement is in the best interest of the Debtors' estates and their creditors.  It represents a fair and equitable resolution of the Disputes.  Ultimate resolution of these complex issues through litigation is uncertain and very costly.  The Settlement brings closure to all issues raised by NYS for the Audit Period.  The interest rate on the assessment will be the lowest rate permitted under NYS law and no penalties have been imposed.  The Settlement does not bind LBHI's Combined Group to specific reporting positions in future years, does not require future reporting of federal audit adjustments and allows LBHI to carry forward unused net operating losses and capital losses to future tax periods.

Executed on this 25th day of April, 2011

/s/ Jeffry Ciongoli
        Jeffry Ciongoli

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------x
                                                                    :
In re                                                               :    **Chapter 11 Case No.**
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,                        :    **08-13555 (JMP)**
                                                                    :
                                   **Debtors.**                     :    **(Jointly Administered)**
                                                                    :
--------------------------------------------------------------------x

### DECLARATION OF JACK R. KRAMER IN SUPPORT OF MOTION PURSUANT TO SECTIONS 105(a) AND 363 OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE FOR AUTHORIZATION TO SETTLE AND SATISFY CORPORATE FRANCHISE TAX CLAIMS OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE

Jack R. Kramer hereby declares under penalty of perjury pursuant to section 1746, title 28 of the United States Code:

1.      I am over 18 years of age and I can testify to the following facts based on my personal knowledge, my review of the business records of Lehman Brothers Holdings Inc. ("LBHI"), and/or my consultation with employees of LBHI, LBHI's subsidiaries, PricewaterhouseCoopers LLP ("PwC"), and Alvarez & Marsal North America, LLC and affiliates ("A&M"). I make this declaration in support of the motion of LBHI (the "Motion"), pursuant to sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 9019, to settle and satisfy corporate franchise tax claims of the New York State Department of Taxation and Finance ("Settlement"). I have read and am familiar with the Motion, the Ciongoli Declaration,[1] and the Closing Agreement, all of which accurately set forth the terms of the Settlement.

---
[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Motion.

2.      PwC is a public accounting firm that was retained in these chapter 11 cases as tax advisors to the Debtors.  *See* Order Granting Debtors' Application to Retain and Employ PricewaterhouseCoopers LLP as Tax Advisors, filed July 16, 2009 [Docket No. 4428].  I am a Principal of PwC and am located in PwC's New York City office.  I am PwC's National State Income/Franchise Tax Lead Partner, and I have over twenty one (21) years of experience in state and local tax with a particular expertise in New York State tax matters.

3.      I graduated from Fairfield University with a B.S. in Accounting/Finance, Syracuse University with a J.D./M.B.A., and New York University School of Law with an LL.M. in Taxation.

4.      I led a team of PwC employees, including Gregory A. Lee, John Verde, and Jonathan Robin, to review LBHI's New York State tax returns and audit schedules prepared by the New York State Department of Taxation and Finance ("Department") for tax years 1996 through 2007 ("Audit Period").  These employees have particular expertise in New York State and New York City tax matters.

5.      Gregory A. Lee is a Managing Director in PwC's state and local tax practice and is located in PwC's New York City office.  Mr. Lee has more than eighteen (18) years of experience in state and local tax, including as a Senior Attorney in the Department's Office of Counsel.

6.      John Verde is a Managing Director in PwC's state and local tax practice and is located in PwC's New York City office.  Mr. Verde has more than thirty three (33) years of experience in state and local tax, including twenty three (23) years at

the Department serving in a variety of roles.  At the time of his departure from the

Department, Mr. Verde was Chief of the Corporation Tax Audit Bureau.

> 7.    Jonathan Robin is a Director in PwC's state and local tax practice

and is located in PwC's New York City office.  Mr. Robin has more than forty (40) years

of experience in state and local tax, including more than thirty (30) years at the New

York City Department of Finance.  While employed at the New York City Department of

Finance, Mr. Robin worked in a variety of roles, including Legal Affairs Counsel, Special

Counsel for Tax Policy, and Deputy Commissioner in the Audit Division, where he held

the top management position for his last nine (9) years at the New York City Department

of Finance.

> 8.    PwC performed a detailed reconciliation of the audit schedules

provided by the Department to LBHI's originally filed New York State tax returns for the

Audit Period.

> 9.    PwC interviewed key members of LBHI's state and local tax team

to fully understand LBHI's tax reporting process and data flow.

> 10.    PwC was provided access to a data room that contained tax returns

and supporting workpapers that were prepared at various times during the Audit Period.

PwC created and populated a tax calculation model that incorporated a significant amount

of relevant data that was extracted from LBHI's paper tax returns and supporting

workpapers.  PwC utilized this tax calculation model to test the accuracy of the tax

computations and supporting schedules provided by the Department.

> 11.    PwC selected the 2006 tax year as a test year for a detailed review

because it represented LBHI's largest potential New York State tax liability of any tax

year at issue.  PwC performed a detailed review of the 2006 New York State return and selected workpapers as filed, including a review of the classification of capital and expenses as investment, subsidiary, or business, and a review of the computation of the statutory New York State business allocation percentage.  PwC also performed a detailed reconciliation of LBHI's New York State entire net income to federal taxable income for the 2006 tax year.

12.     Based upon the comfort level obtained from our review of LBHI's 2006 New York State tax return, PwC selected and tested a sample of the relevant tax computations in other years across the Audit Period.

13.     Based upon our detailed testing of the 2006 tax year and sample testing of other tax years, we became comfortable that LBHI's New York State tax return reconciled to its federal tax return and that the audit schedules were substantially accurate (subject to minor differences that were identified and corrected by PwC).

14.     PwC worked closely with Lehman's tax counsel, Sutherland Asbill & Brennan LLP ("Sutherland"), in order to evaluate potential litigation related to the Department's Proofs of Claim for approximately one billion two-hundred million dollars ($1,200,000,000).

15.     PwC and Sutherland collectively generated various tax scenarios of the potential audit adjustments deemed to be likely based on the New York State tax returns as filed, independent of the adjustments proposed by the Department.  Based on these tax scenarios, PwC and Sutherland developed a base scenario and estimated the range of potential tax adjustment scenarios.  Each scenario was carefully considered by LBHI, Sutherland, and PwC.

16.    In every case, the potential tax scenarios resulted in additional tax due of multiples above the Settlement amount.

17.    PwC attended numerous meetings in Albany, New York with top level officials of the Department and presented technical arguments based upon our review of this matter.

18.    Based upon my experience with audits of similarly situated taxpayers in the financial services industry and consultation with Mr. Lee, Mr. Verde, and Mr. Robin, I believe that the Settlement is very positive and advantageous.   I also believe that similarly situated taxpayers in the financial services industry would be subject to potential exposure many times greater than that which is proposed in the final Settlement resulting in a net payment of approximately one-hundred forty-four million dollars ($144,000,000), approximately twelve percent (12%) of the Department's Proofs of Claim.

19.    Based upon PwC's review of LBHI's tax returns and the Department's proposed adjustments, I believe that a payment of approximately one-hundred forty-four million dollars ($144,000,000) represents a fair and equitable resolution of the Disputes that is well within the lowest point of reasonableness from the perspective of the Debtors and their estates.

Executed on this 25th day of April 2011

/s/ Jack R. Kramer
Jack R. Kramer

**<u>Exhibit 2</u>**
**(Closing Agreement)**

<table>
<tr><td>

**IN THE MATTER OF**

**Lehman Brothers Holdings, Inc. and Combined Affiliates**

**EIN: 13-3216325**

**Audit Cases: X750346556, X782336530, X970926281, and X970926359**

**Assessment Numbers: L032489416, L032487398, L032486547, and L032485870**

**For a Franchise Tax Audit under Articles 9-A and 27 of the New York State Tax Law for the Audit Period January 1, 1992 through December 31, 2007.**

</td></tr>
</table>



**CLOSING AGREEMENT**

 

Pursuant to Paragraph Eighteenth of Section 171 of the New York State Tax Law, Lehman Brothers Holdings, Inc. and Combined Affiliates (hereinafter referred to as ("Taxpayer") and the Commissioner of Taxation and Finance ("Commissioner") as head of the New York State Department of Taxation and Finance, Division of Taxation ("Department") hereby enter into the following Closing Agreement ("Agreement") regarding the taxes for the period January 1, 1992 through December 31, 2007 ("Audit Period").

**WHEREAS**, the Taxpayer is currently under audit by the Department with respect to its franchise tax liabilities for the Audit Period and the Taxpayer and the Commissioner seek to resolve their differences and enter into this Agreement giving due regard to the previously unresolved issues of fact and law regarding the liabilities of the Taxpayer for the subject taxes, interest and penalties for the Audit Period under the provisions of Articles 9-A and 27 of the New York State Tax Law.

**WHEREAS**, Lehman Brothers Holdings, Inc. filed a case under Chapter 11 of the Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York on September 15, 2008 [case No. 08-13555] (the "Lehman Bankruptcy Proceeding").

**WHEREAS**, the Taxpayer has requested that overpayments from the Taxpayer's amended CT-3A and CT-3M returns filed for the tax year ended December 31, 2007, in the amounts of $7,559,141 and $1,312,610 respectively, such overpayments being net of Taxpayer's franchise taxes as originally reported for years ended December 31, 2008 and 2009, ("Overpayments") be applied against the total assessment.

- 1 -

*NOW, THEREFORE*, the Taxpayer and the Commissioner hereby mutually agree as follows:

**FIRST**, the Taxpayer and Commissioner agree to a total assessment of $153,000,000 representing tax in the amount of $104,028,354, penalty in the amount of $0 and interest computed at the minimum rate under New York State Tax Law Section 1084 in the amount of $48,971,646. The Commissioner will apply the Overpayments against the total assessment. The Taxpayer shall remit to the Commissioner the sum of $144,128,249 in full payment and satisfaction of the Taxpayer's additional liability for franchise taxes, penalties and interest due for the Audit Period computed through September 15, 2008, as determined per the attached schedules.

**SECOND**, because this Agreement is subject to the approval of the Bankruptcy Court before payment hereunder can be made by the Taxpayer, the Taxpayer and the Commissioner agree that the Taxpayer or the Taxpayer's authorized representative shall sign three counterparts of the Agreement and, after the Taxpayer receives a counterpart of this Agreement signed by the Commissioner or his delegate, shall seek approval of the Bankruptcy Court as soon as the docket permits. The Agreement shall only become effective upon the entry of an order by the Bankruptcy Court in the Chapter 11 bankruptcy proceeding *In re Lehman Brothers Holdings Inc., et al*, No. 08-13555 (Jointly Administered) approving the terms of this Agreement and upon full payment hereunder, to be submitted to the Department within five (5) business days of such order becoming a Final Order.[1]

**THIRD**, except as otherwise specifically provided herein, this Agreement is valid for the Audit Period and has no impact on franchise tax liabilities or filing positions of other periods.

**FOURTH**, the Commissioner will not assess any penalties for the issues at hand under Article 27 against the Taxpayer with regard to taxes imposed under Article 9-A for the Audit Period, except as otherwise contemplated or provided by this Agreement.

---

[1] A "Final Order" shall mean an order or judgment of a court of competent jurisdiction that has not been reversed, vacated or stayed, and, unless waived by LBHI, as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; provided, however that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule, may be filed relating to such order(s) shall not cause such order(s) to not be a Final Order.

- 2 -

**FIFTH**, the Taxpayer agrees to carry back any net operating loss and capital loss to the Audit Period pursuant to Article 9-A of the New York State Tax Law and further agrees to waive any rights to any refund claims resulting from net operating loss or capital loss carry backs that may be applied to the Audit Period. The Commissioner agrees to waive any rights to recapture investment tax credit applicable to the Audit Period. The Taxpayer agrees to waive any rights to protest, agrees to withdraw all pending protests and agrees it is not entitled to any refund of tax paid under Articles 9-A and 27 of the New York State Tax Law for the Audit Period and agrees to file no future claims for refund related to such years. Upon receipt of payment in accordance with paragraphs FIRST and SECOND of this Agreement, the Commissioner agrees to waive any rights to assess, agrees to withdraw all pending franchise tax assessments and proofs of claim and agrees that he is not entitled to any tax, interest or penalty, except as noted in paragraph FIRST of this Agreement. Further, the Commissioner agrees, that upon the Taxpayer's payment of the tax and interest noted in Paragraph FIRST, all Claims against the Taxpayer, with the exception of Lehman Brothers Inc., for sales and use and payroll withholding taxes, shall be deemed disallowed and expunged.

**SIXTH**, with regard to adjustments to tax resulting from changes or corrections in federal taxable income related to the Audit Period, because such changes or corrections were considered in arriving at the assessment amount provided for in this Agreement, (1) the Taxpayer waives the right to any credit or refund due the Taxpayer and (2) the Commissioner waives the right to assess based upon a federal change or correction against the Taxpayer for the Audit Period, as the case may be. The Commissioner waives the obligation of the Taxpayer to report any adjustments resulting from changes in federal taxable income for the Audit Period.

**SEVENTH**, the Taxpayer and the Commissioner agree that there will be no investment tax credit or any other tax credit available from the Audit Period to be carried forward to future tax years.

**EIGHTH**, this Agreement is strictly confidential between the Department and the Taxpayer, and shall not be made known to any other person except (i) taxing jurisdictions with whom the Department has entered into a lawful information exchange agreement, (ii) with the prior consent of the other party hereto, (iii) pursuant to a subpoena or order issued by a court, arbitrator or governmental body, agency or official, or otherwise required by law, or (iv) as required in connection with the Lehman Bankruptcy Proceeding.

**NINTH,** this Agreement sets forth the entire understanding between the Taxpayer and the Commissioner with respect to the Audit Period and the subject matter hereto and supersedes any prior negotiations, agreements, understandings or arrangements between them with respect to the Audit Period and the subject matter hereto. Except as otherwise stated herein, this Agreement shall be final and conclusive of the liabilities of the Taxpayer for the subject taxes and Audit Period, and except upon a showing of fraud, malfeasance, or misrepresentation of a material fact: (a) the case shall not be reopened as to the matters agreed upon or the Agreement modified, by an officer, employee, or agent of this state, and (b) in any suit, action, or proceeding, this Agreement, or any determination, assessment, collection, payment, cancellation, abatement, refund or credit made in accordance herewith, shall not be annulled, modified, set aside or disregarded.

**TENTH,** this Agreement shall be binding on New York State, the Commissioner, the Taxpayer and the Taxpayer's respective successors and assigns. The parties represent that the individuals signing this agreement are duly authorized by the respective parties to execute this Agreement on their behalf.

**IN WITNESS WHEREOF,** the Taxpayer and the Commissioner have caused this Agreement to be executed on the date shown below.

Date: _4/20/11_

**Lehman Brothers Holdings, Inc. and Combined Affiliates**

**EIN: 13-3216325**

By: _____

Signature of Taxpayer or Authorized Representative

_William J Fox_
_Executive Vice President_

Print Name and Title of Taxpayer or
Authorized Representative

Date: _4/15/11_

**New York State Department of Taxation and Finance**

_____

Commissioner of Taxation and Finance, by
Director of Tax Audits

## Lehman Brothers Holdings Inc. and Affiliates

Details of Taxes

Prepare by: PL
Approved by:
4/18/2011

| | Additiona Tax / (Tax Reduction) | | Interest | | Total ( Tax & Int ) | |
|---|---|---|---|---|---|---|
| | 9A | MTA | 9A | MTA | 9A | MTA |
| For the period ended 12/31/1996 | 1,479,742 | | 3,575,924 | | 5,055,666 | |
| For the period ended 12/31/1996 | | 254,412 | | 798,975 | | 1,053,387 |
| For the period ended 12/31/1997 | 1,797,274 | | 2,318,088 | | 4,115,362 | |
| For the period ended 12/31/1997 | | 305,537 | | 394,075 | | 699,612 |
| For the period ended 12/31/1998 | 3,846,317 | | 4,296,770 | | 8,143,087 | |
| For the period ended 12/31/1998 | | 653,874 | | 730,451 | | 1,384,325 |
| For the period ended 12/31/1999 | 8,383,397 | | 8,007,950 | | 16,391,347 | |
| For the period ended 12/31/1999 | | 1,429,713 | | 1,365,684 | | 2,795,397 |
| | 15,506,730 | 2,643,536 | 18,198,732 | 3,289,185 | 33,705,462 | 5,932,721 |
| | | 18,150,266 | | 21,487,917 | | 39,638,183 |
| For the period ended 12/31/2000 | 7,820,529 | | 6,045,764 | | 13,866,293 | |
| For the period ended 12/31/2000 | | 1,405,204 | | 1,082,940 | | 2,488,144 |
| For the period ended 12/31/2001 | 1,166,343 | | 775,209 | | 1,941,552 | |
| For the period ended 12/31/2001 | | 223,358 | | 148,454 | | 371,812 |
| For the period ended 12/31/2002 | 9,217,037 | | 5,178,806 | | 14,395,843 | |
| For the period ended 12/31/2002 | | 1,792,688 | | 1,016,908 | | 2,809,596 |
| For the period ended 12/31/2003 | 0 | | 0 | | 30,203,688 | |
| For the period ended 12/31/2003 | | 0 | | | | |
| | 18,203,909 | 3,421,250 | 11,999,779 | 2,248,302 | 30,203,688 | 5,669,552 |
| | | 21,625,159 | | 14,248,081 | | 35,873,240 |
| For the period ended 12/31/2004 | 10,641,962 | | 3,708,488 | | 14,350,450 | |
| For the period ended 12/31/2004 | | 2,611,007 | | 927,522 | | 3,538,529 |
| For the period ended 12/31/2005 | 14,488,484 | | 3,545,088 | | 18,033,572 | |
| For the period ended 12/31/2005 | | 2,861,292 | | 704,154 | | 3,565,446 |
| For the period ended 12/31/2006 | 22,934,216 | | 3,146,432 | | 26,082,648 | |
| For the period ended 12/31/2006 | | 4,673,747 | | 648,531 | | 5,322,278 |
| For the period ended 12/31/2007 | 4,945,327 | | 447,368 | | 5,392,695 | |
| For the period ended 12/31/2007 | | 1,096,894 | | 106,065 | | 1,202,959 |
| | 53,009,989 | 11,242,940 | 10,849,376 | 2,386,272 | 63,859,365 | 13,629,212 |
| | | 64,252,929 | | 13,235,648 | | 77,488,577 |

| 153 Million summary | | | |
|---|---|---|---|
| | Tax | Interest | Total |
| 1996 -- 1999 | 18,150,266 | 21,487,917 | 39,638,183 |
| 2000 -- 2003 | 21,625,159 | 14,248,081 | 35,873,240 |
| 2004 -- 2007 | 64,252,929 | 13,235,648 | 77,488,577 |
| | 104,028,354 | 48,971,646 | 153,000,000 |
| | 68% | 32% | 100% |



**New York State Department of Taxation & Finance**
Summary of Additional Tax, Interest, and Penalty Due
Schedule A

Taxpayer Name: Lehman Brothers Holdings Inc. and Combined Affiliates          Prepared by: R G
Taxpayer ID: 13-3216325                                                        Approved by:
Case Number: X750346556

| Sub Type | Period Ending | Other Taxes And Fees | Addl. Tax (Refund) Due | Penalty Article 27 | Interest Computed To 09/15/2008 | Total Amount Due |
|---|---|---|---|---|---|---|
| 15 | 12/31/1996 | | 1,479,742 | 0 | 3,575,924 | 5,055,666 |
| 19 | 12/31/1996 | MCTD | 254,412 | 0 | 798,975 | 1,053,387 |
| 15 | 12/31/1997 | | 1,797,274 | 0 | 2,318,088 | 4,115,362 |
| 19 | 12/31/1997 | MCTD | 305,537 | 0 | 394,076 | 699,613 |
| 15 | 12/31/1998 | | 3,846,317 | 0 | 4,296,770 | 8,143,087 |
| 19 | 12/31/1998 | MCTD | 653,874 | 0 | 730,451 | 1,384,325 |
| 15 | 12/31/1999 | | 8,383,397 | 0 | 8,007,949 | 16,391,346 |
| 19 | 12/31/1999 | MCTD | 1,429,713 | 0 | 1,365,684 | 2,795,397 |
| | | Totals: | 18,150,266 | 0 | 21,487,917 | 39,638,183 |

Notes and References:



**New York State Department of Taxation & Finance**
Summary of Additional Tax, Interest, and Penalty Due
Schedule A

Prepared by: PL
Approved by:

Taxpayer Name: Lehman Brothers Holdings Inc. and Affiliates
Taxpayer ID: 13-3216325
Case Number: X782336530

| Sub Type | Period Ending | Other Taxes And Fees | Addl. Tax (Refund) Due | Penalty Article 27 | Interest Computed To 09/15/2008 | Total Amount Due |
|---|---|---|---|---|---|---|
| 15 | 12/31/2000 | | 7,820,529 | 0 | 6,045,764 | 13,866,293 |
| 19 | 12/31/2000 | MCTD | 1,405,204 | 0 | 1,082,940 | 2,488,144 |
| 15 | 12/31/2001 | | 1,166,343 | 0 | 775,209 | 1,941,552 |
| 19 | 12/31/2001 | MCTD | 223,358 | 0 | 148,454 | 371,812 |
| 15 | 12/31/2002 | | 9,217,037 | 0 | 5,178,806 | 14,395,843 |
| 19 | 12/31/2002 | MCTD | 1,792,688 | 0 | 1,016,908 | 2,809,596 |
| 15 | 12/31/2003 | | 0 | 0 | 0 | 0 |
| 19 | 12/31/2003 | MCTD | 0 | 0 | 0 | 0 |
| | | Totals: | 21,625,159 | 0 | 14,248,081 | 35,873,240 |

Notes and References:



**New York State Department of Taxation & Finance**
Summary of Additional Tax, Interest, and Penalty Due
Schedule A

Taxpayer Name: Lehman Brothers Holdings Inc. and Affiliates

Taxpayer ID: 13-3216325

Case Number: X970926281

Prepared by: PL

Approved by:

| Sub Type | Period Ending | Other Taxes And Fees | Addl. Tax (Refund) Due | Penalty Article 27 | Interest Computed To 09/15/2008 | Total Amount Due |
|---|---|---|---|---|---|---|
| 15 | 12/31/2004 |  | 10,641,962 | 0 | 3,708,488 | 14,350,450 |
| 19 | 12/31/2004 | MCTD | 2,611,007 | 0 | 927,522 | 3,538,529 |
| 15 | 12/31/2005 |  | 14,488,484 | 0 | 3,545,088 | 18,033,572 |
| 19 | 12/31/2005 | MCTD | 2,861,292 | 0 | 704,154 | 3,565,446 |
| 15 | 12/31/2006 |  | 22,934,216 | 0 | 3,148,432 | 26,082,648 |
| 19 | 12/31/2006 | MCTD | 4,673,747 | 0 | 648,531 | 5,322,278 |
| 15 | 12/31/2007 |  | 4,945,327 | 0 | 447,368 | 5,392,695 |
| 19 | 12/31/2007 | MCTD | 1,096,894 | 0 | 106,065 | 1,202,959 |
|  |  | Totals: | 64,252,929 | 0 | 13,235,648 | 77,488,577 |

Notes and References:

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
: 
In re                                              :       **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,       :       **08-13555 (JMP)**
                                                   :
                              **Debtors.**         :       **(Jointly Administered)**
                                                   :
-------------------------------------------------------------------x

**ORDER PURSUANT TO SECTIONS 105(a) AND 363 OF**
**THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL RULES OF**
**BANKRUPTCY PROCEDURE AUTHORIZING LEHMAN BROTHERS**
**HOLDINGS INC. TO SETTLE AND SATISFY CORPORATE FRANCHISE TAX**
**CLAIMS OF THE NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE**

Upon the motion, dated April 25, 2011 (the "Motion"), of Lehman Brothers

Holdings Inc. ("LBHI") and its affiliated debtors in the above-referenced chapter 11 cases, as

debtors and debtors-in-possession (the "Debtors"), pursuant to sections 105 and 363 of title 11 of

the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for authorization to settle and satisfy corporate

franchise tax claims as provided for in the Closing Agreement,[1] all as more fully described in the

Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein

in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to

Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title

11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief

requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of

the Motion having been provided in accordance with the procedures set forth in the second

amended order entered June 17, 2010 governing case management and administrative procedures

---

[1] Terms not defined herein shall have the meaning ascribed to them in the Motion.

[Docket No. 9635] to (i) the United States Trustee for Region 2; (ii) the attorneys for the Official

Committee of Unsecured Creditors; (iii) the Securities and Exchange Commission; (iv) the

Internal Revenue Service; (v) the United States Attorney for the Southern District of New York;

(vi) the NYSDTF; and (vii) all parties who have requested notice in these chapter 11 cases, and it

appearing that no other or further notice need be provided; and a hearing (the "Hearing") having

been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the Debtors, their

respective estates and creditors, and all parties in interest and that the legal and factual bases set

forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that any objections to the Motion that have not been heretofore

resolved or withdrawn are disallowed and the Motion is granted; and it is further

ORDERED that, pursuant to Bankruptcy Rule 9019, LBHI's entry into the

Closing Agreement is approved; and it is further

ORDERED that, pursuant to sections 105(a) and 363 of the Bankruptcy Code,

LBHI is authorized, but not directed, to perform any and all of its obligations under the Closing

Agreement and to execute, deliver, implement and fully perform any and all instruments,

documents and papers and to take any and all actions reasonably necessary or appropriate in

connection with the implementation of the transactions set forth in the Closing Agreement; and it

is further

ORDERED that LBHI shall make an equitable allocation among, and have

allowed claims against, Debtor and non-Debtor entities based on each entity's allocable share of

the Payment Amount, taking into account, among other things, historic tax sharing principles,

provided, however, that nothing in this Order, including the disallowance and expungement of the Claims, shall affect either LBHI's right to seek reimbursement from each member of the Combined Group of its allocable share of the Payment Amount on a priority basis or any defenses that such member may have thereto; and it is further

ORDERED that upon LBHI's filing of a certification of payment of the Payment Amount, any and all claims filed by the NYSDTF, including without limitation, the Claims (Nos. 417, 1237, 4867, 7750, 11037, 65278, 66268, 66553, 66598, 66975, 67112, 67225, and 67313) shall hereby be disallowed and expunged in their entirety; and it is further

ORDERED that the failure to specifically describe or include any particular provisions of the Closing Agreement shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that LBHI is authorized to perform under the Closing Agreement in its entirety; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2011
　　　　New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE