Hearing Date: May 18, 2011 at 10:00 a.m.
Objection Deadline: May 11, 2011 at 4:00 p.m.

Edward H. Tillinghast, III, Esq.
Blanka K. Wolfe, Esq.
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

*Counsel for Evangelical Christian Credit Union*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> LEHMAN BROTHERS HOLDINGS, INC., et al., <br><br> Debtors. | Case No. 08-13555 (JMP) <br><br> Chapter 11 <br><br> (Jointly Administered) |

**MOTION OF EVANGELICAL CHRISTIAN CREDIT UNION
PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY
CODE FOR RELIEF FROM THE AUTOMATIC STAY**

Evangelical Christian Credit Union ("**ECCU**"), by and through its undersigned counsel, respectfully submits this motion (the "**Motion**") pursuant to section 362(d) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order terminating the automatic stay, to the extent necessary or appropriate, to permit ECCU to exercise its state law remedies against the approximately 22 acres of expansion land located at 3260 Rubidoux Boulevard in Riverside, California (the "**Property**"), as fully described in the Deed of Trust (defined below), on which debtor Lehman Commercial Paper Inc. (the "**Debtor**") holds a subordinate lien that is fully undersecured, and to take any and all actions as may be necessary to protect its interests in connection with the Property. In support of this Motion, ECCU submits the *Declaration of*

*Michael Boblit in support of Motion of Evangelical Christian Credit Union For Relief from the Automatic Stay*, filed concurrently herewith (the "**Boblit Declaration**"), and states as follows:

## PRELIMINARY STATEMENT

The Debtor has no equity in the Property that is the subject of this Motion because its junior lien on the Property is fully undersecured.  ECCU holds a valid, perfected, first-priority security interest in the Property, which secures ECCU's loan to Life Church of God in Christ (the "**Church Borrower**") that has an outstanding balance of over $6.6 million.  The appraised market value of the Property is only approximately $2.38 million.  As such, the Debtor's junior lien on the Property is completely undersecured.

As the Debtor's lien on the Property is totally undersecured, the automatic stay applicable in the Lehman bankruptcy cases should be modified, to the extent applicable or necessary, to allow ECCU to exercise its state law remedies against the Property.  Relief from the stay is warranted because the Debtor's lien is totally undersecured by the Property, the Debtor's undersecured lienor interest is not necessary for its reorganization, and cause exists for modifying the automatic stay.  Additionally, as the Debtor's lien is totally undersecured, the exercise of ECCU's state law remedies will have no impact on the Debtor or its creditors.  A non-judicial foreclosure under California law is the only way in which ECCU can protect itself from further harm caused by the continued decline in the value of the Property.

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(a) and 1334.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b).

2. The statutory predicates for the relief requested in this Motion are section 362(d) of the Bankruptcy Code and Rule 4001(a)(1) of the Bankruptcy Rules.

# BACKGROUND

**I.    Procedural Background**

3. On or about September 15, 2008, Lehman Brothers Holdings Inc. and certain of its affiliated entities (collectively, with the Debtor, "**Lehman**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. The Debtor filed for bankruptcy relief on October 5, 2008 (the "**Petition Date**") under Case No. 08-13900.

4. On September 17, 2008, the United States Trustee for the Southern District of New York (the "**U.S. Trustee**") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "**Committee**").

5. Lehman's chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules. Lehman is authorized to operate their businesses and manage their properties as debtors-in-possession pursuant to section 1107(a) and 1108 of the Bankruptcy Code.

**II.    Relevant Factual Background**

    **A.    The ECCU Loan**

6. In May 2005, ECCU made a loan to the Church Borrower in the amount of $7,000,000 (the "**ECCU Loan**"). *See* Boblit Decl. at ¶ 4. The ECCU Loan is evidenced by a Promissory Note, dated May 11, 2005, executed by the Church Borrower in favor of ECCU in the principal amount of $7,000,000 (the "**ECCU Note**"). *Id.* at ¶ 5, Ex. A. The ECCU Loan matured on June 1, 2010. *Id.* at ¶ 4.

7. The Church Borrower's obligations under the ECCU Loan are secured by, among other things, a Deed of Trust, dated May 11, 2005, executed by the Church Borrower, as trustor, for the benefit of ECCU, as beneficiary (the "**ECCU Deed of Trust**", and together with the ECCU Note and any other documents executed in connection with the Loan, including an

Assignment of Rents, dated May 11, 2005, between the Church Borrower, as grantor, and ECCU, the "**Loan Documents**"). *Id.* at ¶ 6, Ex. B. The ECCU Deed of Trust encumbers the Property, as well as the real property commonly known as 3349, 3270, 3245, and 3260 Rubidoux Boulevard, all as more particularly described in the ECCU Deed of Trust. *Id.* at ¶ 7. On May 26, 2005, the ECCU Deed of Trust was recorded in the Official Records of Riverside County, California ("**Official Records**") under Instrument Number 2005-0421930. *Id.* at ¶ 6.

8.   ECCU has fulfilled all of its obligations under the Loan Documents. *Id.* at ¶ 8. In contrast, the Church Borrower has defaulted on the ECCU Loan by, among other things, failing to repay all outstanding principal, interest, and other amounts due and owing under the Loan by the maturity date (the "**Event of Default**"). *Id.* at ¶ 9. Specifically, on June 23, 2010, ECCU sent the Church Borrower a default letter (the "**Default Letter**"), notifying the Church Borrower of the Event of Default and demanding immediate repayment of the ECCU Loan, in full. *Id.* at ¶ 10, Ex. C. The Church Borrower failed to cure the Event of Default, and has continued to fail to repay the ECCU Loan. *Id.* at ¶ 11.

9.   As a result of the Event of Default, the entire unpaid balance of the ECCU Loan and all other amounts owing under the Loan Documents are immediately due and payable in full, with interest, late charges, and other fees, costs and expenses continuing to accrue on a daily basis (the "**Outstanding Amount**"), which as of April 4, 2011 totaled $6,600,664.74. *Id.* at ¶¶ 11, 20.

### B.   The Exchange Agreement and Transfer To SunCal

10.  In 2003, the Church Borrower and SunCal Emerald Meadows Ranch, LLC ("**SunCal**") entered into an agreement (the "**Exchange Agreement**") in which, among other things, SunCal agreed to make certain improvements to the Property and to certain surrounding property, including recordation of a new parcel map (the "**Improvements**"). *See* Boblit Decl. at

¶ 12. To allow SunCal to more easily make the Improvements, the Exchange Agreement obligated the Church Borrower to transfer the Property to SunCal. *Id.*

11. On May 16, 2006, the Church Borrower executed a Grant Deed (the "**SunCal Grant Deed**") transferring the Property to SunCal. *Id.* at ¶ 13, Ex. D. On October 29, 2007, the SunCal Grant Deed was recorded in the Official Records under Instrument Number 2007-0663048. *Id.* at ¶ 13.

12. The Exchange Agreement requires SunCal to transfer the Property back to the Church Borrower after the Improvements are complete. *Id.* at ¶ 14. The Improvements are not yet complete and, as a result, SunCal continues to own the Property. *Id.* Even though the Property has been transferred from the Church Borrower to SunCal, the Property continues to be encumbered by the Deed of Trust. *Id.* Specifically, as the ECCU Deed of Trust was properly recorded prior to the transfer of the Property to SunCal and recordation of the SunCal Grant Deed, the Property was transferred subject to the ECCU Deed of Trust.

13. On November 7, 2008, SunCal and affiliated debtors and debtors-in-possession filed for relief under chapter 11 of the Bankruptcy Code. Contemporaneously with the filing of this Motion, ECCU is moving the Bankruptcy Court overseeing SunCal's bankruptcy case for relief from the automatic stay applicable in the SunCal bankruptcy.

### C. The Lehman Loan and Lehman's Junior Deed of Trust

14. In November 2005, the Debtor, among others, agreed to make loans and other extensions of credit to SunCal Communities I, LLC and SunCal Communities III, LLC (collectively, the "**SunCal Borrowers**") in the principal amount of $395,313,713.37 (the "**Lehman Loan**") pursuant to a Credit Agreement, dated November 17, 2005, as amended from time to time. *See* Boblit Decl. at ¶ 15. The Lehman Loan is secured, in part, by that certain Guarantee and Collateral Agreement, dated November 17, 2005, executed by the SunCal

Borrowers in favor of the Debtor (the "**Guarantee Agreement**"). *Id.* Pursuant to an Assumption Agreement, dated July 17, 2007, SunCal became a party to the Guarantee Agreement. *Id.*

15. SunCal's obligations to the Debtor under the Guarantee Agreement are secured by a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated July 17, 2007, executed by SunCal, as trustor, for the benefit of the Debtor, as beneficiary (the "**Lehman Deed of Trust**"), which, upon information and belief, encumbers certain real property belonging to SunCal. *Id.* at ¶ 16, Ex. E. On July 19, 2007, the Lehman Deed of Trust was recorded in the Official Records under Instrument Number 2007-0471396. *Id.* at ¶ 16.

16. The Lehman Deed of Trust was executed and recorded prior to recordation of the SunCal Grant Deed, pursuant to which the Property was transferred to SunCal. *Id.* at ¶ 17. As a result, on August 31, 2008, SunCal and the Debtor entered into that certain Spreader Agreement and Modification of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing (the "**Spreader Agreement**"). *Id.*, Ex. F. Pursuant to the Spreader Agreement, the Lehman Deed of Trust was modified to spread the lien of the Lehman Deed of Trust onto the Property and the personal property related thereto. *Id.* at ¶ 18. On September 4, 2008, the Spreader Agreement was recorded in the Official Records under Instrument Number 2008-0485910. *Id.* at ¶ 17.

    **D.**    **The Debtor Has No Equity In The Property**

17. The Property is encumbered by, first, the ECCU Deed of Trust and, second, the Lehman Deed of Trust, with ECCU's lien being senior to that of the Debtor. As of the Petition Date, the total Outstanding Amount due to ECCU under the ECCU Loan is $6,840,442.43, with $6,806,132.17 due in principal and $34,310.36 due in interest. *See* Boblit Decl. at ¶ 19. As of April 4, 2011, the Outstanding Amount due on the ECCU Loan was $6,600,664.74, which

consists of $6,591,275.41 in principal, $2,889.33 in interest, and at least $6,500 in fees, costs, and expenses. *Id.* at ¶ 20.

18.  In March 2011, at the request of ECCU, Appraiser Aaron Gardner performed an appraisal of the Property (the "**Appraisal**"). *Id.* at ¶ 21, Ex. G. The Appraisal determines that the market value of the Property is $2,380,000 as of March 23, 2011. *Id.* at ¶ 22.

19.  Therefore, the market value of the Property is significantly less than the Outstanding Amount due on ECCU's senior security interest, so the Debtor has no equity in the Property.

## RELIEF REQUESTED AND BASIS THEREFOR

20.  ECCU respectfully requests the entry of an order, substantially in the form attached hereto as Exhibit A, terminating the automatic stay applicable in the Lehman bankruptcy cases, to the extent necessary or applicable, pursuant to section 362(d) of the Bankruptcy Code to permit ECCU to exercise its state law remedies against the Property, including pursuing a non-judicial foreclosure of the Property.

**I.    ECCU is Entitled to Relief from the Automatic Stay in the Lehman Bankruptcy Cases to Exercise its State Law Remedies Against the Property**

21.  In the event the automatic stay of the Lehman bankruptcy cases is applicable,[1] ECCU is entitled from relief from the stay under section 362(d) of the Bankruptcy Code because

---

[1] The automatic stay applicable in the Lehman bankruptcy cases is arguably not applicable here because a non-judicial foreclosure proceeding under California law, or the exercise of any other state law remedies, commenced by ECCU against the Property is not an act to obtain possession or control over property of Lehman's estate or to enforce a lien against property of Lehman's estate. *See e.g.*, *Farmers Bank v. March (In re March)*, 140 B.R. 387 (E.D. Va. 1992), aff'd, 988 F.2d 498 (4th Cir. 1993) (holding that the automatic stay triggered by the chapter 11 case of a junior lienholder did not apply to prevent the senior lienholder from foreclosing on the underlying property); *In re Le Peck Constr. Corp.*, 14 B.R. 195 (Bankr. E.D.N.Y. 1981) (holding that automatic stay applicable to chapter 11 debtor that held a post-petition mechanic's lien for post-petition work it performed on a building did not apply to prelude senior lienholder from
(footnote continued)

(i) the Debtor has no equity in the Property and its lien on the Property is completely undersecured, and neither the Property nor the lien are necessary to the Debtor's effective reorganization, or, in the alternative, (ii) cause exists to grant relief because ECCU's interest in the Property is being eroded.

22. Section 362(d) of the Bankruptcy Code provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if—
>
>> (A) the debtor does not have an equity in such property; and
>>
>> (B) such property is not necessary to an effective reorganization . . .

11 U.S.C. § 362(d).

23. The standards for granting relief under Section 362(d)(1) and (d)(2) are in the disjunctive. Thus, if a court finds either that (i) there is cause, including a lack of adequate protection; or (ii) that the debtor lacks equity in the property and there is no need for the property to effectively reorganize, then the court must lift the stay. *In re Diplomat Elec. Corp.*, 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988). Here, ECCU is entitled to relief under both sections 362(d)(1) and 362(d)(2).

---

foreclosing on building); *but see In re Three Strokes Ltd. P'ship*, 397 B.R. 804 (Bankr. N.D. Tex. 2008) (holding automatic stay applied to protect chapter 11 debtor's interest as junior lienholder in real property on which senior lienholder was seeking to foreclose).

### A. The Debtor has no Equity in the Property and the Property is Not Needed for the Debtor's Reorganization

24. Under section 362(d)(2) of the Bankruptcy Code, a bankruptcy court, after notice and a hearing, may terminate, annul, modify or condition the automatic stay of an act against property if "the debtor does not have any equity in such property; and such property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(2). Section 362(g) of the Bankruptcy Code provides that the party opposing relief from the automatic stay carries the burden of proof on all issues except "the debtor's equity in the property." *See* 11 U.S.C. § 362(g). Accordingly, once the movant establishes that the debtor lacks any equity in the property, the debtor bears the burden of proving that it is necessary for an effective reorganization. *See United Sav. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375-76 (1988) ("Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the debtor to establish that the collateral is 'necessary to an effective reorganization.'"); *see also In re YL West 87th Holdings I LLC*, 423 B.R. 421, 428 (Bankr. S.D.N.Y. 2010).

25. In this case, the Debtor has no equity in the Property and the Lehman Deed of Trust is totally undersecured. Equity under section 362(d)(2)(A) is defined as "the difference between the property value and the total amount of liens against it." *See e.g.*, *In re YL West 87th Holdings*, 423 B.R. at 428; *In re Diplomat*, 82 B.R. at 692. As set forth in more detail above, ECCU has a lien on the Property in excess of $6.6 million, as evidenced by the ECCU Note and ECCU Deed of Trust. *See* Boblit Decl. at ¶¶ 4-6, 19-20. The market value of the Property as of March 23, 2011 is only $2,380,000. *Id..* at ¶ 22. Thus, any proceeds of the sale of the Property will be far less than the amount owed with respect to the ECCU Loan. The Debtor, who is subordinate to ECCU in payment and lien positions vis-à-vis the Property, is therefore wholly

undersecured as to the Property. As such, the Debtor has no equity in the Property and ECCU has satisfied its burden under section 362(d)(2)(A) of the Bankruptcy Code.

26. Once a creditor has demonstrated that a debtor does not possess an equity in property, the burden shifts to the debtor to demonstrate that the property is essential for an effective reorganization that is in prospect. *See Timbers*, 484 U.S. at 375-76. Specifically, as the United States Supreme Court explained in *Timbers*:

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

484 U.S. at 375-76 (emphasis in original).

27. With respect to section 362(d)(2)(B) of the Bankruptcy Code, the Debtor cannot demonstrate that either the Property or the Lehman Deed of Trust are necessary for an effective reorganization. Lehman's cases are liquidation cases and neither the Property nor the Lehman Deed of Trust are necessary to the Debtor's effective reorganization because the Debtor is not being reorganized. *See generally*, *First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and Its Affiliated Debtors* [Docket No. 14150] and *Debtors' Disclosure Statement for First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings, Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code filed January 25, 2011* [Docket No. 14151]; *Cf. B.N. Realty Assoc's*, 238 B.R. 249, 258 (S.D.N.Y. 1999) (stating "[s]ince a Chapter 7 petition does not contemplate reorganization, the only issue in a Chapter 7 case under 362(d)(2) would be whether [the debtor has] equity in the property."). As the Debtor has no equity in the Property, relief from the automatic stay applicable in the Lehman bankruptcy cases is appropriate.

**B.    Cause Exists to Grant Relief From the Automatic Stay
Applicable in the Lehman Bankruptcy Cases**

28.    Under section 362(d)(1) of the Bankruptcy Code, a bankruptcy court, after notice and a hearing, may terminate, annul, modify or condition the automatic stay "for cause, including the lack of adequate protection of an interest in property" of the party seeking relief.  11 U.S.C. § 362(d)(1).  The term "cause" is not defined in the Bankruptcy Code, but "it is viewed as a broad and flexible concept." *In re M.J. & K. Co., Inc.*, 161 B.R. 586, 590-91 (Bankr. S.D.N.Y. 1993) (internal citations omitted).  Once the movant shows that cause exists, the burden is on the debtor to prove that it is entitled to the protection of the automatic stay.  *Id.* at 590.

29.    Whether cause exists for relief from the automatic stay must be determined on a case-by-case basis.  *Id.*  The Second Circuit has identified several factors to be considered when determining whether cause exists to modify the automatic stay, including: (1) whether relief would result in a partial or complete resolution of the issues; (2) the lack of any connection with or inference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether a judgment claim arising from the other action is subject to equitable subordination; (9) whether the movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) the impact of the stay on the parties and the balance of harms.  *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir. 1990) (*citing In re Curtis*, 40 B.R. 795 (Bankr. D. Utah 1984)).  Not all the factors are relevant to

each inquiry, and only those that are relevant to a particular case need be considered. *Id.* at 1285; *see also In re Anton*, 145 B.R. 767, 770 (Bankr. E.D.N.Y. 1992). Additionally, the court does not need to assign each factor equal weight. *See Anton*, 145 B.R. at 770.

30. Based on the foregoing factors, cause exists to modify the automatic stay applicable in the Lehman bankruptcy cases in order to permit ECCU to exercise its state law remedies against the Property. First, relief from the automatic stay would result in the resolution of the issues relating to the Property, in that it would permit ECCU to exercise its state law remedies against the Property under the provisions of California state law.

31. Second, the Appraisal of the Property reveals that its value is significantly less than the amount of the outstanding obligations under the ECCU Loan. As a result, the Debtor's subordinate lien on the Property has no value to the Debtor. In fact, the value of the Debtor's lien diminishes daily as ECCU's claim against the Church Borrower increases. As Lehman has no property interest or equity in the Property, any proposed foreclosure of ECCU's lien will not have an adverse affect upon or otherwise interfere with Lehman's bankruptcy cases.

32. Third, ECCU's exercise of its state law remedies, including a non-judicial foreclosure of its lien on the Property, is an action primarily involving third parties, namely ECCU and the Church Borrower. While the Debtor holds a subordinate lien on the Property, as described herein, that interest is wholly undersecured. As a result, the Debtor has no interest in the Property and any exercise by ECCU of its state law remedies will not affect Lehman or its bankruptcy cases.

33. Fourth, ECCU's exercise of its state law remedies against the Property will not prejudice the interests of Lehman's creditors. The Debtor bargained for a junior lien on the Property and thus was aware that foreclosure of ECCU's senior lien could eliminate the Debtor's

lien if the Church Borrower defaulted on its obligations to ECCU and the Lehman Deed of Trust was undersecured. As such, foreclosure will also not harm the Debtor's estate because the Lehman Deed of Trust is totally undersecured. Moreover, Lehman's creditors will not be prejudiced by the exercise of ECCU's state law remedies because Lehman's estate has no interest in the Property that could serve as a source of recovery or value for the Debtor's creditors.

34. Fifth, the interests of judicial economy, the convenience of the parties, and the expeditious and economical resolution of the issues would be better served by modifying the automatic stay to permit the issues relating to the ECCU Loan to be resolved between ECCU and the Church Borrower under the laws of California.

35. Finally, the balance of the harms weighs in favor of relief from the automatic stay. *See* Hr'g Tr. at 147, *In re Lehman Bros. Holdings Inc.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y. Dec. 22, 2008) (Peck, J.) (in hearing on motion for relief from stay, stating that balancing the harms represented the fundamental question). As explained above, the Debtor bargained for a junior lien on the Property and thus was aware that foreclosure of its lien was possible if the Church Borrower defaulted on its obligations to ECCU. The Debtor has no interest in the Property and its junior lien is completely undersecured as the value of the Property is significantly less than the amount of the outstanding obligations under the ECCU Loan. As such, the Debtor will suffer no harm or prejudice from ECCU's exercise of its state law remedies against the Property.

36. In contrast, ECCU is being harmed on a daily basis by the Church Borrower's default and its interest in the Property is not adequately protected by either the Church Borrower or the Debtor. The automatic stay, to the extent applicable, prevents ECCU from exercising its state law remedies against the Property. ECCU is already undersecured, and any delay in

exercising its state law remedies further puts its Deed of Trust underwater as the amount due to ECCU by the Church Borrower under the ECCU Loan is increasing daily due to interest accruals. Despite this harm and the decrease in value of ECCU's security interest caused by the imposition of the automatic stay, the Debtor has not provided ECCU with adequate protection. Foreclosure is the only way in which ECCU can protect itself from further harm, and relief from the automatic stay is appropriate.

37.     Based on the foregoing factors, ECCU respectfully submits that sufficient grounds exist for the Court to grant relief from the automatic stay applicable in the Lehman bankruptcy cases, to the extent it applies, to permit ECCU to exercise its state law remedies against the Property.

## WAIVER OF RULE 4001 STAY

38.     Rule 4001(a)(3) of the Bankruptcy Rules provides that "[a]n order granting a motion for relief from an automatic stay . . . is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 4001. The value of the Property is subject to significant and ongoing market volatility, and the amount due to ECCU by the Church Borrower under the ECCU Loan is increasing daily due to interest accruals. As such, any delay in ECCU exercising its state law remedies puts its Deed of Trust further underwater and further harms ECCU. Accordingly, ECCU requests respectfully seeks a waiver of the 14-day stay period.

## LOCAL RULE 9013-1(a) CERTIFICATION

39.     This Motion includes citations to the applicable rules and statutory authorities upon which the relief requested herein is predicated as well as the legal authorities that support the requested relief. Accordingly, ECCU submits that the Motion satisfies Local Bankruptcy Rule 9013-1(a).

08-13555-mg    Doc 16259    Filed 04/26/11    Entered 04/26/11 19:40:59    Main Document
Pg 15 of 15

## NO PRIOR REQUEST

40. No prior motion for the relief requested herein has been made to this Court or any other court, except as otherwise set forth herein.

## CONCLUSION

WHEREFORE, ECCU respectfully requests that the Court enter an order, substantially in the form attached hereto as <u>Exhibit A</u>, terminating the automatic stay with respect to the Property to permit ECCU to exercise its California state law remedies; and granting such other and further relief as may be just and proper.

Dated: April 26, 2011
       New York, NY

SHEPPARD MULLIN RICHTER & HAMPTON LLP

By:   /s/ Edward H. Tillinghast, III
    Edward H. Tillinghast, III, Esq.
    Blanka K. Wolfe, Esq.
    30 Rockefeller Plaza
    New York, New York 10112
    Tel: (212) 653-8700
    Fax: (212) 653-8701
    E-mail: etillinghast@sheppardmullin.com
           bwolfe@sheppardmullin.com

*Counsel for Evangelical Christian Credit Union*

W02-WEST:7BXL1\403394594.2    -15-