Hearing Date: May 18, 2011 at 10:00 a.m.<br>
Objection Deadline: May 11, 2011 at 4:00 p.m.

Edward H. Tillinghast, III, Esq.
Blanka K. Wolfe, Esq.
**SHEPPARD MULLIN RICHTER & HAMPTON, LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone: (212) 653-8700
Facsimile: (212) 653-8701

*Counsel for Evangelical Christian Credit Union*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS<br>HOLDINGS, INC., et al.,<br><br>                Debtors. | Case No. 08-13555 (JMP)<br><br>Chapter 11<br><br>(Jointly Administered) |

### DECLARATION OF MICHAEL BOBLIT IN SUPPORT OF MOTION OF EVANGELICAL CHRISTIAN CREDIT UNION FOR RELIEF FROM THE AUTOMATIC STAY

      I, Michael Boblit, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge:

      1.    I am an Asset Manager with Evangelical Christian Credit Union ("**ECCU**"), a California credit union.

      2.    I submit this declaration in support of the *Motion of Evangelical Christian Credit Union Pursuant to Section 362(d) of the Bankruptcy Code for Relief from the Automatic Stay* (the "**Motion**"), filed concurrently herewith.

      3.    Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon

experience, knowledge, and information concerning the operations of ECCU. If called upon to testify, I would testify competently to the facts set forth in this Declaration.

**The ECCU Loan**

4. In May 2005, ECCU made a loan to the Church Borrower in the amount of $7,000,000 (the "**ECCU Loan**"). The ECCU Loan matured on June 1, 2010.

5. The ECCU Loan is evidenced by a Promissory Note, dated May 11, 2005, executed by the Church Borrower in favor of ECCU in the principal amount of $7,000,000 (the "**ECCU Note**"). A true and correct copy of the ECCU Note is attached hereto as Exhibit A.

6. The Church Borrower's obligations under the ECCU Loan are secured by, among other things, a Deed of Trust, dated May 11, 2005, executed by the Church Borrower, as trustor, for the benefit of ECCU, as beneficiary (the "**ECCU Deed of Trust**", and together with the ECCU Note and any other documents executed in connection with the Loan, including an Assignment of Rents, dated May 11, 2005, between the Church Borrower, as grantor, and ECCU, the "**Loan Documents**"). On May 26, 2005, the ECCU Deed of Trust was recorded in the Official Records of Riverside County, California ("**Official Records**") under Instrument Number 2005-0421930. A true and correct copy of the ECCU Deed of Trust is attached hereto as Exhibit B.

7. The ECCU Deed of Trust encumbers the Property, as well as the real property commonly known as 3349, 3270, 3245, and 3260 Rubidoux Boulevard, all as more particularly described in the ECCU Deed of Trust.

8. ECCU has fulfilled all of its obligations under the Loan Documents.

9. The Church Borrower has defaulted on the ECCU Loan by, among other things, failing to repay all outstanding principal, interest, and other amounts due and owing under the Loan by the maturity date (the "**Event of Default**").

10. On June 23, 2010, ECCU sent the Church Borrower a default letter (the "**Default Letter**"), notifying the Church Borrower of the Event of Default and demanding immediate repayment of the ECCU Loan, in full. A true and correct copy of the Default Letter is attached hereto as Exhibit C.

11. The Church Borrower failed to cure the Event of Default, and has continued to fail to repay the ECCU Loan. As a result of the Event of Default, the entire unpaid balance of the ECCU Loan and all other amounts owing under the Loan Documents are immediately due and payable in full, with interest, late charges, and other fees, costs and expenses continuing to accrue on a daily basis (the "**Outstanding Amount**"). As of the maturity date, the Outstanding Amount due on the ECCU Loan was $6,372,408.

**The Exchange Agreement and Transfer To SunCal**

12. In 2003, upon information and belief, the Church Borrower and SunCal Emerald Meadows Ranch, LLC ("**SunCal**") entered into an agreement (the "**Exchange Agreement**") in which, among other things, SunCal agreed to make certain improvements to the Property and to certain surrounding property, including recordation of a new parcel map (the "**Improvements**"). To allow SunCal to more easily make the Improvements, upon information and belief, the Exchange Agreement obligated the Church Borrower to transfer the Property to SunCal.

13. On May 16, 2006, the Church Borrower executed a Grant Deed (the "**SunCal Grant Deed**") transferring the Property to SunCal. On October 29, 2007, the SunCal Grant Deed was recorded in the Official Records under Instrument Number 2007-0663048. A true and correct copy of the SunCal Grant Deed is attached hereto as Exhibit D.

14. Upon information and belief, the Exchange Agreement requires SunCal to transfer the Property back to the Church Borrower after the Improvements are complete. The Improvements are not yet complete and, as a result, SunCal continues to own the Property. Even

though the Property has been transferred from the Church Borrower to SunCal, the Property continues to be encumbered by the Deed of Trust.

**The Lehman Loan and Lehman's Junior Deed of Trust**

15. In November 2005, the Debtor, among others, agreed to make loans and other extensions of credit to SunCal Communities I, LLC and SunCal Communities III, LLC (collectively, the "**SunCal Borrowers**") in the principal amount of $395,313,713.37 (the "**Lehman Loan**") pursuant to a Credit Agreement, dated November 17, 2005, as amended from time to time. The Lehman Loan is secured, in part, by that certain Guarantee and Collateral Agreement, dated November 17, 2005, executed by the SunCal Borrowers in favor of the Debtor (the "**Guarantee Agreement**"). Pursuant to an Assumption Agreement, dated July 17, 2007, SunCal became a party to the Guarantee Agreement.

16. SunCal's obligations to the Debtor under the Guarantee Agreement are secured by a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing, dated July 17, 2007, executed by SunCal, as trustor, for the benefit of the Debtor, as beneficiary (the "**Lehman Deed of Trust**"), which, upon information and belief, encumbers certain real property belonging to SunCal. On July 19, 2007, the Lehman Deed of Trust was recorded in the Official Records under Instrument Number 2007-0471396. A true and correct copy of the Lehman Deed of Trust is attached hereto as Exhibit E.

17. The Lehman Deed of Trust was executed and recorded prior to recordation of the SunCal Grant Deed, pursuant to which the Property was transferred to SunCal. As a result, on August 31, 2008, SunCal and the Debtor entered into that certain Spreader Agreement and Modification of Deed of Trust, Security Agreement, Assignment of Leases and Rents, and Fixture Filing (the "**Spreader Agreement**"). On September 4, 2008, the Spreader Agreement

was recorded in the Official Records under Instrument Number 2008-0485910. A true and correct copy of the Spreader Agreement is attached hereto as <u>Exhibit F</u>.

18.     Pursuant to the Spreader Agreement, the Lehman Deed of Trust was modified to spread the lien of the Lehman Deed of Trust onto the Property and the personal property related thereto.

**<u>The Debtor Has No Equity In The Property</u>**

19.     As of the Petition Date, the total Outstanding Amount due to ECCU under the ECCU Loan is $6,840,442.43, with $6,806,132.17 due in principal and $34,310.36 due in interest.

20.     As of April 4, 2011, the Outstanding Amount due on the ECCU Loan was $6,600,664.74, which consists of $6,591,275.41 in principal, $2,889.33 in interest, and at least $6,500 in fees, costs, and expenses.

21.     In March 2011, at the request of ECCU, Appraiser Aaron Gardner performed an appraisal of the Property (the "**Appraisal**"). A true and correct copy of the Appraisal is attached hereto as <u>Exhibit G</u>.

22.     The Appraisal concludes that the market value of the Property is $2,380,000 as of March 23, 2011. I have reviewed the Appraisal and have performed numerous other due diligence with respect to the Property. Based on this diligence, I believe that the Property is worth approximately $2,380,000 as of March 2011.

Dated:  April 26, 2011
        Brea, California                    /s/ Michael Boblit
                                             Michael Boblit