## Exhibit A
### (The ECCU Note)

W02-WEST:7BXL1\403395597.2

 

# PROMISSORY NOTE

| Principal $7,000,000.00 | Loan Date 05-11-2005 | Maturity 06-01-2010 | Loan No | Call / Coll ELCF / B1HA | Account 972457 | Officer CRC | Initials |
|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:**  Life Church of God in Christ, a California Nonprofit
Religious Corporation
3349 Rubidoux Boulevard
Riverside, CA  92509

**Lender:**  Evangelical Christian Credit Union
Main Office
955 West Imperial Highway
Brea, CA  92821

**Principal Amount: $7,000,000.00**          **Initial Rate: 5.000%**          **Date of Note: May 11, 2005**

**PROMISE TO PAY.** Life Church of God in Christ, a California Nonprofit Religious Corporation ("Borrower") promises to pay to Evangelical Christian Credit Union ("Lender"), or order, in lawful money of the United States of America, the principal amount of Seven Million & 00/100 Dollars ($7,000,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance. The interest rate will not increase above 10.125%.

**PAYMENT.** Borrower will pay this loan in accordance with the following payment schedule:

A minimum monthly payment will be due on the 1st day of each month beginning July 1, 2005. The minimum payment is due every month even though more than the minimum payment may have been made in prior months. Borrower's minimum monthly payments are calculated based upon the interest rate, the outstanding balance, and the amortization schedule of the loan, and will change quarterly as well as at the time of each advance. The amortization schedule will be based upon a 30 year amortization schedule. In no event will the minimum payment be less than $100 (or the outstanding principal balance if such balance is less than $100). Advances of credit may only be obtained during the first 18 months of the loan (the "Draw Period"). During the Draw Period, a maximum of one (1) draw per month may be taken. After the Draw Period ends, Borrower will no longer be able to obtain credit advances. Borrower's final balloon payment due on June 1, 2010, will be for all principal and all accrued interest not yet paid.

Unless otherwise agreed or required by applicable law, payments will be applied first to any late charges; then to any accrued unpaid interest; and then to principal. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the yield on 3-Month LIBOR as published by Fannie Mae (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notice to Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each quarter, beginning September 1, 2005 based on the most recent Index figure as available as of the date 45 days before each change. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 2.910% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 2.125 percentage points over the Index, rounded up to the nearest 0.125 percent, reduced by 0.125% preferred rate reduction, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 5.000% per annum. Notwithstanding the foregoing, the variable interest rate or rates provided for in this Note will be subject to the following minimum and maximum rates. NOTICE: Under no circumstances will the interest rate on this Note be less than 4.000% per annum or more than (except for any higher default rate shown below) the lesser of 10.125% per annum or the maximum rate allowed by applicable law. Notwithstanding the above provisions, the maximum increase or decrease in the interest rate at any one time on this loan will not exceed 0.500 percentage points.

**PREFERRED RATE REDUCTION.** The interest rate on this Note includes a preferred rate reduction. Following is a description of the event that would cause the preferred rate reduction to terminate and how the new rate will be determined upon termination of the preferred rate reduction.

**Description of Event That Would Cause the Preferred Rate Reduction to Terminate.**
The rate reduction will terminate if Borrower does not maintain a vital banking relationship with Lender.
**How The New Rate Will Be Determined Upon Termination of the Preferred Reduction.**
The new rate will be determined by increasing the stated margin by .125 percentage point, at the sole discretion of the Lender.

**PREPAYMENT.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. Except for the foregoing, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Evangelical Christian Credit Union, Main Office, 955 West Imperial Highway, Brea, CA  92821.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 6.000% of the unpaid portion of the regularly scheduled payment or $10.00, whichever is greater.

**INTEREST AFTER DEFAULT.** Upon default, the variable interest rate on this Note shall immediately increase to 4.125 percentage points over the Index, if permitted under applicable law.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

 

# PROMISSORY NOTE
## (Continued)

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**JURY WAIVER.** Lender and Borrower hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by either Lender or Borrower against the other.

**DISHONORED ITEM FEE.** Borrower will pay a fee to Lender of $14.00 if Borrower makes a payment on Borrower's loan and the check or preauthorized charge with which Borrower pays is later dishonored.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instruments listed herein:

(A) a Deed of Trust dated May 11, 2005, to a trustee in favor of Lender on real property located in Riverside County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

(B) an Assignment of All Rents to Lender on real property located in Riverside County, State of California.

**LINE OF CREDIT.** This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested only in writing by Borrower or as provided in this paragraph. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following persons currently are authorized, except as provided in this paragraph, to request advances and authorize payments under the line of credit until Lender receives from Borrower, at Lender's address shown above, written notice of revocation of their authority: Ronnie M. Gibson, President of Life Church of God in Christ, a California Nonprofit Religious Corporation; Roy L. Bennett, Asst. Senior Pastor of Life Church of God in Christ, a California Nonprofit Religious Corporation; and Alonzo J. Somerville, Chief Operating Officer of Life Church of God in Christ, a California Nonprofit Religious Corporation. Any authorized officer may request advances. Borrower agrees to be liable for all sums either: (A) advanced in accordance with the instructions of an authorized person or (B) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (A) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (B) Borrower or any guarantor ceases doing business or is insolvent; (C) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (D) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

**AUTOMATIC TRANSFER.** The terms of this note include the requirement that payments are to be made to the loan by automatic transfer from the Borrower's primary checking account. In connection with same, Borrower authorizes and instructs Lender to deduct each payment as it becomes due under this note from their primary checking account. The account to be debited for payments owing under this note may be changed from time to time by Borrower providing written notification to Lender at least five (5) business days prior to any payment due date of such change. In the event the account to be used for payments is not held at Evangelical Christian Credit Union, Borrower will provide a voided check or other evidence of account information concerning the account to be debited for payments.

**INTEREST AFTER DEFAULT.** Upon the occurrence of any Event of Default referred to under this Note, Lender, at its option, may, if permitted under applicable law, increase the variable interest rate on this Note to 4.125 percentage points over the Index.

**FIXED RATED CONVERSION OPTION.** After the Draw Period ends, Borrower shall have a one-time right to convert the variable interest rate to a

# PROMISSORY NOTE
## (Continued)

Page 3

fixed interest rate, provided that: (1) Borrower delivers to Lender written notice of its intent to exercise its Fixed Rate Conversion Option no later than fifteen business days prior to the proposed effective date of conversion; (2) Borrower has never been and is not currently in default under any obligation with Lender as of the Effective Date of the Fixed Rate Conversion; and (3) Borrower promptly executes and delivers to Lender such additional amendments or agreements requested by Lender prior to the Effective Date of the Fixed Rate Conversion. The Effective Date of the Fixed Rate Conversion ("Effective Date") shall be the first periodic interest rate adjustment date falling no sooner than fifteen (15) business days after Lender's receipt of notice of Borrower's intent to exercise its Fixed Rate Conversion Option. Upon the Effective Date, the monthly payments of principal and interest shall be determined based on an amortization of the then remaining principal balance at the Fixed Interest Rate over a number of months equal to 300 [/360 - if the original amortization period is 30 years] minus the number of months which have elapsed during the loan term as of the Effective Date. The Fixed Interest Rate will be calculated using the Federal Reserve Board's most recent published weekly 5-Year Constant Maturity Treasury Security Yield (5 Year CMT), as determined by Lender, rounded up to the nearest 0.125% as available as of the date ten (10) business days before the Effective Date, plus 2.250%. In the event that the Federal Reserve Board discontinues publication of the 5 Year CMT, Lender shall utilize a substitute index in its sole discretion. Except as otherwise provided herein, the Fixed Interest Rate shall apply to the entire outstanding principal balance due under this Promissory Note until the loan is paid off in full.

**CHANGE IN COLLATERAL.** We understand that you are in negotiations to exchange portions of your current real property (existing property) to be used as collateral for this loan for approximately 25 acres of property known as APNs 178-290-005 and -009 and 178-310-025, -026, -023 and -001 (proposed collateral). ECCU will consider a request to release the existing collateral for the proposed collateral, subject to: (a) ECCU's order, receipt and approval of an appraisal for the proposed property confirming a value sufficient to support loan-to-value to be determined by ECCU at that time, (b) ECCU's order, receipt and approval of a title policy for the proposed property, (c) execution by you of such documentation, as determined by ECCU, to evidence the ECCU's lien on the proposed property, (d) payment by you of all third party costs and expenses (appraisal, title, etc.) as well as a $750 fee for our internal costs, and (e) such other terms and conditions as determined by ECCU at that time, which may include an environmental assessment report and a pay down of the loan to accommodate an acceptable loan to value requirement.

**SUCCESSOR INTERESTS.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

**BORROWER:**

LIFE CHURCH OF GOD IN CHRIST, A CALIFORNIA NONPROFIT RELIGIOUS CORPORATION

By: _____

Ronnie M. Gibson, President of Life Church of God in Christ, a California Nonprofit Religious Corporation

By: _____

Roy L. Bennett, Asst. Sr. Pastor of Life Church of God in Christ, a California Nonprofit Religious Corporation