# Exhibit B
**(The ECCU Deed of Trust)**

W02-WEST:7BXL1\403395597.2

**RECORDATION REQUESTED BY:**

Recording Requested By
First American Title Company
WHEN RECORDED MAIL TO:
Evangelical Christian Credit Union
Main Office
955 West Imperial Highway
Brea, CA 92821

**SEND TAX NOTICES TO:**
Life Church of God in Christ, a California Nonprofit
Religious Corporation
3349 Rubidoux Boulevard
Riverside, CA 92509

DOC # 2005-0421930
05/26/2005 08:00A Fee:51.00
Page 1 of 15
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder



| M | S | U | PAGE | SIZE | DA | PCOR | NOCOR | SMF | MISC. |
|---|---|---|---|---|---|---|---|---|---|
|   |   |   |   | 15 |   |   |   |   |   |
| A | R | L |   |   |   | COPY | LONG | REFUND | NCHG | EXAM |

T
VG
16

S1

# DEED OF TRUST

**THIS DEED OF TRUST** is dated May 11, 2005, among Life Church of God in Christ, a California Nonprofit Religious Corporation, whose address is 3349 Rubidoux Boulevard, Riverside, CA 92509 ("Trustor"); Evangelical Christian Credit Union, whose address is Main Office, 955 West Imperial Highway, Brea, CA 92821 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and TD Service Company, whose address is 1820 E. 1st Street, Suite 300, Santa Ana, CA 92705 (referred to below as "Trustee").

**CONVEYANCE AND GRANT.** For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in Riverside County, State of California:**

> See **EXHIBIT "A"**, which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

**The Real Property or its address is commonly known as 3349, 3270, 3245, and 3260 Rubidoux Boulevard and 22 Acres of Vacant Land, Riverside, CA 92509. The Assessor's Parcel Number for the Real Property is 179-093-025-6, 179-083-010-1, 179-140-020-6, 179-140-014-1, 179-130-004-1, 179-170-002-3, 179-170-005-6, 179-130-007-4.**

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF THE TRUSTOR UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Trustor shall pay to Lender all amounts secured by this Deed of Trust as they become due, and shall strictly and in a timely manner perform all of Trustor's obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Trustor agrees that Trustor's possession and use of the Property shall be governed by the following provisions:

> **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.
>
> **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.
>
> **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any

## DEED OF TRUST
## (Continued)

person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Trustor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

**Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $5,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on

# DEED OF TRUST
## (Continued)

a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $5,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Trustor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of

## DEED OF TRUST
## (Continued)

Page 4

the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the Indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the Indebtedness secured by this Deed of Trust; (2) a specific tax on Trustor which Trustor is authorized or required to deduct from payments on the Indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Trustor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust as first and prior liens on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Trustor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Trustor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Default In Favor of Third Parties.** Should Trustor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Trustor's property or Trustor's ability to repay the Indebtedness or perform their respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Trustor or on Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution or termination of Trustor's existence as a going business, the insolvency of Trustor, the appointment of a receiver for any part of Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Trustor under the terms of any other agreement between Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness. In the event of a death, Lender, at its option, may, but shall not be required to, permit the guarantor's estate to assume unconditionally the obligations arising under the guaranty in a manner satisfactory to Lender, and, in doing so, cure any Event of Default.

**Adverse Change.** A material adverse change occurs in Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Appoint Receiver.** Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the

power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Tenancy at Sufferance.** If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or by law.

**Notice of Sale.** Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Sale of the Property.** To the extent permitted by applicable law, Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

**Rights of Trustee.** Trustee shall have all of the rights and duties of Lender as set forth in this section.

**POWERS AND OBLIGATIONS OF TRUSTEE.** The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

**Powers of Trustee.** In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

**Obligations to Notify.** Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

**Trustee.** Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

**Successor Trustee.** Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of Riverside County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

**Acceptance by Trustee.** Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

**NOTICES.** Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**EXHIBIT A.** An exhibit, titled "Exhibit "A"," is attached to this Deed of Trust and by this reference is made a part of this Deed of Trust just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Deed of Trust.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means Evangelical Christian Credit Union, and its successors and assigns.

**Borrower.** The word "Borrower" means Life Church of God in Christ, a California Nonprofit Religious Corporation and includes all co-signers and co-makers signing the Note.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

# DEED OF TRUST
## (Continued)

Page 8

**Lender.** The word "Lender" means Evangelical Christian Credit Union, its successors and assigns.

**Note.** The word "Note" means the promissory note dated May 11, 2005, **in the original principal amount of $7,000,000.00** from Trustor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO TRUSTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means TD Service Company, whose address is 1820 E. 1st Street, Suite 300, Santa Ana, CA  92705 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means Life Church of God in Christ, a California Nonprofit Religious Corporation.

**TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS, INCLUDING THE VARIABLE RATE PROVISIONS OF THE NOTE SECURED BY THIS DEED OF TRUST.**

**TRUSTOR:**

LIFE CHURCH OF GOD IN CHRIST, A CALIFORNIA NONPROFIT RELIGIOUS CORPORATION

By: _____
Ronnie M. Gibson, President of Life Church of God in Christ, a California Nonprofit Religious Corporation

By: _____
Roy L. Bennett, Asst. Sr. Pastor of Life Church of God in Christ, a California Nonprofit Religious Corporation

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF __CALIFORNIA__

COUNTY OF __ORANGE__    ) SS

On __May 11__, 20__05__ before me, __Cecil A. Bennett__, personally appeared **Ronnie M. Gibson**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

CECELIA A. BENNETT
Comm. # 1385057
NOTARY PUBLIC - CALIFORNIA
Riverside County
My Comm. Expires Nov. 17, 2006

(Seal)

# DEED OF TRUST
## (Continued)

Page 9

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF __CALIFORNIA__      )
                             ) SS
COUNTY OF __Orange__         )

On __May 11__, 20__05__ before me, __Cecil A. Bennett__, personally appeared **Roy L. Bennett**, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature __Cecilia A. Bennett__

CECELIA A. BENNETT
Comm. # 1385057
NOTARY PUBLIC - CALIFORNIA
Riverside County
My Comm. Expires Nov. 17, 2008

(Seal)

## (DO NOT RECORD)
## REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: _____        Beneficiary: _____
                                              By: _____
                                              Its: _____

LASER PRO Lending, Ver. 5.26.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - CA K:\SEC_APPS\TESTCF\CFI\LPL\G01.FC TR-2071 PR-B1SF

# EXHIBIT "A"

This EXHIBIT "A" is attached to and by this reference is made a part of the Deed of Trust, dated May 11, 2005, and executed in connection with a loan or other financial accommodations between EVANGELICAL CHRISTIAN CREDIT UNION and Life Church of God in Christ, a California Nonprofit Religious Corporation.

See Exhibit "A" attached hereto and made a part of hereof.

THIS EXHIBIT "A" IS EXECUTED ON MAY 11, 2005.

TRUSTOR:

LIFE CHURCH OF GOD IN CHRIST, A CALIFORNIA NONPROFIT RELIGIOUS CORPORATION

By: _____
Ronnie M. Gibson, President of Life Church of God in Christ, a California Nonprofit Religious Corporation

By: _____
Roy L. Bennett, Asst. Sr. Pastor of Life Church of God in Christ, a California Nonprofit Religious Corporation

LASER PRO Lending, Ver. 5.26.00.005 Copr. Harland Financial Solutions, Inc. 1997, 2005. All Rights Reserved. - CA K:\SEC_APPS\TESTCFI\CFI\LPL\G01.FC TR-2071 PR-B1SF

# EXHIBIT "A"

### LEGAL DESCRIPTION

Real property in the unincorporated area of the County of Riverside, State of California, described as follows:

PARCEL 1: (179-083-10)

THAT PORTION OF LOT(S) 3 OF ARTHUR PARK TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE(S) 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 3; THENCE SOUTH 38° 00' 00" WEST, ON THE NORTHWESTERLY LINE OF SAID LOT, 590.32 FEET, TO THE MOST WESTERLY CORNER OF THE PARCEL OF LAND CONVEYED TO JOSEPHINE FISHER, BY DEED RECORDED MARCH 10, 1954 AS INSTRUMENT NO. 12071, OF OFFICIAL RECORDS, FOR THE TRUE POINT OF BEGINNING; THE NORTH 38° 00' 00" EAST, ON THE NORTHWESTERLY LINE OF SAID PARCEL SO CONVEYED, 6.55 FEET; THENCE SOUTHEASTERLY TO A POINT OF THE SOUTHEASTERLY LINE OF SAID PARCEL, 2.56 FEET NORTHEASTERLY FROM THE SOUTHERLY CORNER OF SAID PARCEL SO CONVEYED; THENCE SOUTH 38° 00' 00" WEST, ON THE SOUTHEASTERLY LINE OF SAID PARCEL, 2.56 FEET TO THE MOST SOUTHERLY CORNER THEREOF; THENCE SOUTH 38° 00' 00" WEST 60.19 FEET, MORE OR LESS, TO THE MOST EASTERLY CORNER OF SAID PARCEL OF LAND CONVEYED TO FILIBERTO A. BURIEL AND WIFE, BY DEED RECORDED JANUARY 28, 1955 AS INSTRUMENT NO. 6495, OF OFFICIAL RECORDS; THENCE NORTH 52° 01' 00" WEST ON THE NORTHEASTERLY LINE OF SAID PARCEL SO CONVEYED TO FILIBERTO A. BURIEL AND WIFE TO A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 3 WHICH BEARS NORTH 38° 00' 00" EAST, 54 FEET FROM THE MOST WESTERLY CORNER OF SAID PARCEL SO CONVEYED TO FILIBERTO A. BURIEL AND WIFE;
THENCE NORTH 38° 00' 00" EAST, ON THE NORTHWESTERLY LINE OF SAID LOT, 55.57 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

EXCEPT THE SOUTHEASTERLY 10 FEET AS GRANTED TO THE COUNTY OF RIVERSIDE, BY DEED RECORDED, APRIL 2, 1964 AS INSTRUMENT NO. 40622 OF OFFICIAL RECORDS.

PARCEL 2: (179-093-25)

THAT PORTION OF LOT 3 OF THE ARTHUR PARKS TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE(S) 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHWESTERLY PROLONGATION OF THE SOUTHEASTERLY LINE OF LOT 4 OF SAID TRACT WITH THE CENTER LINE OF 34TH STREET, AS SHOWN BY MAP ON FILE IN BOOK 50 PAGE(S) 30, OF RECORD(S) OF SURVEY, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 38°00'00" EAST, 280.15 FEET ON SAID PROLONGATION AND SOUTHEASTERLY LINE TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 52°00'00" EAST, 249.74 FEET TO THE NORTHWESTERLY LINE OF RUBIDOUX BOULEVARD AS CONVEYED TO THE COUNTY OF RIVERSIDE, BY DEED RECORDED JANUARY 13, 1947 IN BOOK 808 PAGE 282 OF OFFICIAL RECORDS; THENCE NORTH 38°04'00" EAST, 149.50 FEET ON SAID NORTHWESTERLY LINE; THENCE NORTH 52°00'00" WEST, 15.00 FEET TO THE NORTHWESTERLY LINE OF RUBIDOUX BOULEVARD AS CONVEYED TO THE COUNTY OF RIVERSIDE, BY DEED RECORDED FEBRUARY 18, 1981 AS INSTRUMENT NO. 28813 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 38°04'00" EAST, 78.19 FEET;

THENCE NORTH 52°00'00" WEST, 235.00 FEET; THENCE SOUTH 38°00'00" WEST, 227.69 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 3: (179-140-020-6)

THAT PORTION OF LOT 2 AND LOT 9 OF THE ARTHUR PARK TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE(S) 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, LYING IN SECTION 16, TOWNSHIP 2 SOUTH, RANGE 5 WEST, SAN BERNARDINO BASE AND MERIDIAN, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST WESTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO THE LIFE CHURCH OF GOD IN CHRIST INC., A CALIFORNIA NON-PROFIT RELIGIOUS CORPORATION, AS PARCEL 2 OF DEED RECORDED MARCH 11, 1993 AS INSTRUMENT NO. 91290 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, SAID CORNER BEING ON THE SOUTHEASTERLY RIGHT(S) OF WAY LINE OF RUBIDOUX BOULEVARD (50.00 FOOT HALF WIDTH), SAID CORNER ALSO BEING THE MOST WESTERLY CORNER OF THAT CERTAIN PARCEL OF LAND SHOWN BY RECORD(S) OF SURVEY ON FILE IN BOOK 81 PAGE 82, OF RECORD(S) OF SURVEY, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE SOUTH 59°13'09" EAST, ALONG THE SOUTHWESTERLY LINE OF SAID PARCEL 2 A DISTANCE OF 17.14 FEET TO THE POINT OF INTERSECTION WITH A LINE PARALLEL WITH AND DISTANT 67.00 FEET SOUTHEASTERLY AS MEASURED AT RIGHT ANGLES, TO THE CENTERLINE OF SAID RUBIDOUX BOULEVARD, SAID POINT OF INTERSECTION BEING THE TRUE POINT OF BEGINNING; THENCE NORTH 38°00'00" EAST, ALONG SAID PARALLEL LINE, A DISTANCE OF 166.32 FEET TO A POINT ON THE NORTHEASTERLY LINE OF THAT CERTAIN PARCEL OF LAND CONVEYED TO SAID LIFE CHURCH OF GOD IN CHRIST INC., A CALIFORNIA NON-PROFIT RELIGIOUS CORPORATION, AS PARCEL 1 OF SAID DEED RECORDED MARCH 11, 1993 AS INSTRUMENT NO. 91290 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, THENCE SOUTH 59°13'09" EAST, ALONG THE LAST MENTIONED NORTHEASTERLY LINE, A DISTANCE OF 435.76 FEET TO A POINT ON THE SOUTHEASTERLY LINE OF SAID LOT 2; THENCE SOUTH 53°38'25" WEST, ALONG SAID SOUTHEASTERLY LINE, A DISTANCE OF 130.89 FEET TO THE MOST NORTHERLY CORNER OF SAID LOT 9; THENCE SOUTH 59°20'19" EAST, ALONG THE NORTHEASTERLY LINE OF SAID LOT 9, A DISTANCE OF 131.01 FEET TO THE MOST EASTERLY CORNER OF SAID PARCEL 2 OF DEED RECORDED MARCH 11, 1993 AS INSTRUMENT NO. 91290 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE SOUTH 87°17'41" WEST, ALONG THE SOUTHERLY LINE OF SAID PARCEL 2, A DISTANCE OF 80.96 FEET; THENCE NORTH 59°13'09" WEST, CONTINUING ALONG THE SOUTHERLY LINE OF SAID PARCEL 2, A DISTANCE OF 499.31 FEET TO THE POINT OF BEGINNING.

PARCEL 4: (179-130-004 AND 179-170-005)

PARCEL A:

THAT PORTION OF LOT 2 OF ARTHUR PARKS TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE(S) 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF SAID LOT, 624 FEET NORTHEASTERLY FROM THE SOUTHWESTERLY CORNER THEREOF, SAID POINT BEING THE NORTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO JAMES A. MC CLAIN AND NANCY A. MC CLAIN, HIS WIFE, BY DEED RECORDED AUGUST 9, 1922 IN BOOK 560 PAGE 479, OF DEEDS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE SOUTH 59°16' EAST, ALONG THE NORTHERLY LINE OF SAID PARCEL, 502 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 2; THENCE NORTH 53°39? EAST ALONG SAID EASTERLY LINE, 179.6 FEET; THENCE NORTH 59°16' WEST 550.43 FEET TO THE NORTHWESTERLY LINE OF SAID LOT 2;

THENCE SOUTH 38° WEST, ALONG SAID NORTHWESTERLY LINE, 167 FEET, TO THE POINT OF BEGINNING;

EXCEPTING THEREFROM THE NORTHWESTERLY 40 FEET CONVEYED TO THE COUNTY OF RIVERSIDE, BY DEED RECORDED DECEMBER 31, 1946 AS INSTRUMENT NO. 4018;

ALSO EXCEPTING THEREFROM THAT PORTION INCLUDED IN PUBLIC ROADS.

PARCEL B:

THAT PORTION OF LOT 2 OF ARTHUR PARKS TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE(S) 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE NORTHWESTERLY LINE OF SAID LOT, 791 FEET NORTHEASTERLY FROM THE SOUTHWESTERLY CORNER THEREOF, SAID POINT BEING THE NORTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO ALBERT C. ADIX AND MABLE N. ADIX, HIS WIFE, BY DEED RECORDED NOVEMBER 23, 1929 IN BOOK 832 PAGE 314, OF DEEDS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE SOUTH 59°16' EAST, ALONG THE NORTHERLY LINE OF SAID PARCEL, 550.43 FEET TO A POINT IN THE EASTERLY LINE OF SAID LOT 2; THENCE NORTH 53°39' EAST, ALONG SAID EASTERLY LINE, 243.1 FEET; THENCE NORTH 59°16' WEST 616.7 FEET TO THE NORTHWESTERLY LINE OF SAID LOT 2; THENCE SOUTH 38° WEST ALONG SAID NORTHWESTERLY LINE, 225.8 FEET, TO THE POINT OF BEGINNING;

EXCEPTING THEREFROM THE NORTHWESTERLY 40 FEET CONVEYED TO THE COUNTY OF RIVERSIDE, BY DEED RECORDED DECEMBER 31, 1946 AS INSTRUMENT NO. 4018;

ALSO EXCEPTING THEREFROM ANY PORTION INCLUDED IN PUBLIC ROADS.

PARCEL C:

THAT PORTION OF LOT 2 OF ARTHUR PARKS TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE(S) 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF SAID LOT, 1016.8 FEET NORTHEASTERLY FROM THE SOUTHWESTERLY CORNER THEREOF, SAID POINT BEING THE MOST WESTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO JACK PRECIADO AND WILLIAM S. STEVENS, BY DEED RECORDED MARCH 14, 1941 IN BOOK 495 PAGE 145 OF OFFICIAL RECORDS; THENCE NORTH 38° EAST, ALONG SAID NORTHWESTERLY LINE, 250 FEET; THENCE SOUTH 59°16' EAST TO A POINT ON THE SOUTHEASTERLY LINE OF SAID LOT; THENCE SOUTH 53°39' WEST, ALONG SAID SOUTHEASTERLY LINE, 265 FEET, MORE OR LESS, TO THE SOUTHEASTERLY CORNER OF THE HEREIN DESCRIBED PROPERTY; THENCE SOUTH 39°16' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL, 616.7 FEET TO THE POINT OF BEGINNING;

EXCEPTING THEREFROM THE NORTHWESTERLY 40 FEET CONVEYED TO THE COUNTY OF RIVERSIDE, BY DEED RECORDED DECEMBER 31, 1968 AS INSTRUMENT NO. 4018;

ALSO EXCEPTING THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF SAID LOT, 1266.8 FEET NORTHEASTERLY OF THE SOUTHWEST CORNER OF SAID LOT 2; THENCE SOUTH 59°16' EAST,

150 FEET; THENCE SOUTHWESTERLY PARALLEL TO THE NORTHWESTERLY LINE OF SAID LOT, 130 FEET; THENCE NORTH 59°16' WEST, 150 FEET; THENCE NORTH 38° EAST, ALONG THE NORTHWESTERLY LINE OF SAID LOT 2, TO THE POINT OF BEGINNING.

PARCEL 5: (179-170-002)

ALL THAT PORTION OF LOT 1 OF ARTHUR PARKS TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE(S) 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AND THOSE PORTIONS OF LOT 9 AND OF THAT CERTAIN PARCEL OF LAND DESIGNATED AS "LANDS OF W.W. CARR, 13.75 AC.", AS SHOWN ON MAP OF THE RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, ON FILE IN BOOK 5 PAGE 116, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF SAID PARCEL DESIGNATED AS "LANDS OF W.W. CARR"; THENCE NORTH 59°58' WEST ALONG THE NORTHEASTERLY LINE OF THE COUNTY ROAD AS SHOWN ON MAP LAST AFORESAID, 395.18 FEET, TO AN ANGLE POINT THEREIN; THENCE NORTH 60° WEST, ALONG THE NORTHEASTERLY LINE OF SAID COUNTY ROAD, 131.02 FEET FOR THE POINT OF BEGINNING; THENCE NORTH 33°53' EAST, 528.49 FEET (FORMERLY RECORDED 528.45 FEET); THENCE NORTH 45°36' EAST (FORMERLY RECORDED NORTH 45°37' EAST), 265.00 FEET; THENCE NORTH 54°06' EAST, 129.73 FEET; THENCE NORTH 59°09' WEST, PARALLEL WITH THE NORTHEASTERLY LINE OF SAID ARTHUR PARKS TRACT, 804.14 FEET TO A POINT ON THE NORTHWESTERLY LINE OF LOT 1 OF SAID ARTHUR PARKS TRACT; THENCE SOUTH 53°43? WEST (FORMERLY RECORDED SOUTH 53°30' WEST) ALONG THE NORTHWESTERLY LINE OF SAID LOT 1, 426.89 FEET TO THE MOST WESTERLY CORNER OF SAID LOT 1; THENCE SOUTH 59°34' EAST (FORMERLY RECORDED SOUTH 59°45' EAST) ALONG THE SOUTHWESTERLY LINE OF SAID LOT 1, 345.84 FEET TO AN ANGLE POINT THEREIN; THENCE SOUTH 24°04' EAST (FORMERLY RECORDED SOUTH 24°30' EAST) ALONG THE SOUTHWESTERLY LINE OF SAID LOT 1, 362.34 TO THE MOST SOUTHERLY CORNER OF SAID LOT 1; THENCE SOUTH 52°41' WEST ALONG THE SOUTHEASTERLY LINE OF SAID ARTHUR PARKS TRACT, 95.31 FEET (FORMERLY RECORDED SOUTH 52°30' WEST 95.70 FEET) TO AN ANGLE POINT THEREIN; THENCE SOUTH 35°34' WEST (FORMERLY RECORDED SOUTH 37° WEST) ALONG THE SOUTHEASTERLY LINE OF SAID ARTHUR PARKS TRACT, 219.90 FEET, MORE OR LESS, TO A POINT ON THE NORTHEASTERLY LINE OF THE COUNTY ROAD AS SHOWN ON SAID MAP OF RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT; THENCE SOUTH 60°00' EAST, ALONG SAID NORTHEASTERLY LINE, 235.79 FEET TO THE POINT OF BEGINNING;

EXCEPTING THEREFROM ANY PORTION THEREOF LYING EASTERLY OF THE JURUPA DITCH AS LOCATED ON APRIL 9, 1918, BEING THE DATE OF DEED TO H.M. VANDERLICE, TO THE POINT WHERE L.W. WILSON TAKES HIS WATER THROUGH A WOODEN FLUME;

ALSO EXCEPTING THEREFROM ALL LAND LYING EASTERLY OF SAID WOODEN FLUME EXTENDING TO THE COUNTY ROAD.

PARCEL 6: (179-130-002-4)

PARCEL 2 OF PARCEL MAP 6868, AS SHOWN BY MAP ON FILE IN BOOK 24 PAGE(S) 53 AND 54, OF PARCEL MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 7:

THE SOUTHWESTERLY 35 FEET OF THE NORTHEASTERLY 200 FEET OF THAT PORTION OF LOT 2 OF ARTHUR PARKS TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1, PAGE 21 OF MAPS, RECORDS OF RIVERSIDE COUNTY, DESCRIBED AS FOLLOWS: BEGINNING AT THE

SOUTHWESTERLY CORNER OF SAID LOT 2; THENCE NORTH 38 DEGREES 00 MINUTES EAST, ALONG THE NORTHWESTERLY LINE OF SAID LOT 2, 624 FEET; THENCE SOUTH 59 DEGREES 16 MINUTES EAST, 502 FEET TO A POINT IN THE SOUTHEASTERLY LINE OF SAID LOT 2; THENCE SOUTH 53 DEGREES 39 MINUTES WEST, 130.5 FEET TO A POINT; THENCE SOUTH 65 DEGREES 58 MINUTES WEST, 592.1 FEET TO THE INTERSECTION WITH THE CENTERLINE OF 34TH STREET (WILSON STREET); THENCE NORTH 63 DEGREES 47 MINUTES WEST, 189.78 FEET ALONG THE SOUTHWESTERLY LINE OF SAID LOT 2 TO THE POINT OF BEGINNING; SAID SOUTHWESTERLY 35 FEET OF THE NORTHEASTERLY 200 FEET BEING MEASURED ON THE NORTHWESTERLY LINE OF SAID LOT 2; EXCEPTING THEREFROM THAT PORTION IN RUBIDOUX BOULEVARD.