## **Exhibit E**
### **(The Lehman Deed of Trust)**



DOC # 2007-0471396
07/19/2007 08:00A Fee:238.00
Page 1 of 66
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

**RECORDING REQUESTED BY:**

**FIDELITY NATIONAL TITLE INSURANCE CO.**

**WHEN RECORDED MAIL TO:**

**CADWALADER, WICKERSHAM & TAFT LLP**
**ONE WORLD FINANCIAL CENTER**
**NEW YORK, NY 10281**
**ATTN: JULIAN CHUNG, ESQ.**

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|------|------|-----|------|------|-----|------|
| 3 | | N | 66 | | | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM 033 |
| | | | | | T: | | CTY | UNI | |

238

**ORDER NO. 9840734-BB**          (SPACE ABOVE THIS LINE FOR RECORDER'S USE)

T
033

**DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND**
**FIXTURE FILING**

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(ADDITIONAL RECORDING FEE APPLIES)

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING

made by

**SUNCAL EMERALD MEADOWS LLC,** a Delaware limited liability company, Grantor,

to

**FIDELITY NATIONAL TITLE INSURANCE COMPANY,** a California corporation,
as Trustee for the use and benefit of

**LEHMAN COMMERCIAL PAPER INC.,**
as Administrative Agent, Beneficiary

Dated as of July 17, 2007

PREPARED BY AND
RECORD AND RETURN TO:

Cadwalader, Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
Attention: Julian Chung, Esq.

THIS DOCUMENT SECURES A CREDIT AGREEMENT WHICH CONTAINS PROVISIONS FOR ADJUSTMENTS IN THE INTEREST RATE AND PAYMENT AMOUNTS AND/OR A BALLOON PAYMENT. THIS INSTRUMENT CONSTITUTES A SECURITY AGREEMENT AS THAT TERM IF DEFINED IN THE CALIFORNIA UNIFORM COMMERCIAL CODE. PORTIONS OF THE COLLATERAL ARE GOODS THAT ARE OR ARE TO BECOME FIXTURES ON THE LAND DESCRIBED IN SCHEDULE A HERETO. THIS INSTRUMENT IS INTENDED TO SERVE AS A FIXTURE FILING AND IS TO BE RECORDED IN THE REAL ESTATE RECORDS OF EACH COUNTY IN WHICH SAID LAND OR ANY PORTION THEREOF IS LOCATED AND INDEXED AS A FEE SECURITY INSTRUMENT AND A FIXTURE FILING. GRANTOR IS THE OWNER OF THE FEE INTEREST IN SCHEDULE A HERETO.

# TABLE OF CONTENTS

Page

Background ........................................................................................................................... 1

Granting Clauses ................................................................................................................. 2

Terms and Conditions ......................................................................................................... 5

| | | |
|---|---|---|
| 1. | Defined Terms. | 5 |
| 2. | Warranty of Title. | 5 |
| 3. | Payment of Obligations. | 5 |
| 4. | Requirements. | 5 |
| 5. | Payment of Taxes and Other Impositions. | 6 |
| 6. | Insurance. | 7 |
| 7. | Restrictions on Liens and Encumbrances. | 7 |
| 8. | Due on Sale and Other Transfer Restrictions. | 7 |
| 9. | Condemnation/Eminent Domain. | 7 |
| 10. | Leases. | 8 |
| 11. | Further Assurances. | 8 |
| 12. | Beneficiary's Right to Perform. | 8 |
| 13. | Remedies | 8 |
| 14. | Right of Beneficiary to Credit Sale. | 11 |
| 15. | Appointment of Receiver. | 11 |
| 16. | Extension, Release, etc. | 11 |
| 17. | Security Agreement under Uniform Commercial Code. | 12 |
| 18. | Assignment of Rents. | 13 |
| 19. | Additional Rights. | 13 |
| 20. | Notices. | 14 |
| 21. | No Oral Modification. | 14 |
| 22. | Partial Invalidity. | 14 |
| 23. | Grantor's Waiver of Rights. | 14 |
| 24. | Remedies Not Exclusive. | 15 |
| 25. | Multiple Security. | 15 |
| 26. | Successors and Assigns. | 16 |
| 27. | No Waivers, etc. | 17 |
| 28. | Governing Law, etc. | 17 |
| 29. | Certain Definitions. | 18 |
| 30. | Maximum Rate of Interest. | 18 |
| 31. | Intentionally Deleted. | 18 |
| 32. | Release. | 18 |
| 33. | Trustee's Powers (and Liabilities). | 19 |
| 34. | Receipt of Copy. | 21 |
| 35. | Additional State Specific Provisions. | 21 |

## SCHEDULES

Schedule A – Description of the Land

## EXHIBITS

Exhibit A – Description of the Engelauf Property
Exhibit B – Depiction of the Moses Green Parcel
Exhibit C – Depiction of the Remainder Parcels
Exhibit D – Description of the Current Church Property

## DEED OF TRUST, SECURITY AGREEMENT,
## ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND FIXTURE FILING (this "Security Instrument"), dated as of July 17, 2007 is made by SUNCAL EMERALD MEADOWS LLC, a Delaware limited liability company ("Grantor"), whose address is 2392 Morse Avenue, Irvine, California 92614, Attention, Bruce V. Cook, Esq., to FIDELITY NATIONAL TITLE INSURANCE COMPANY, a California corporation, as trustee (in such capacity, "Trustee") for the use and benefit of LEHMAN COMMERCIAL PAPER INC., as administrative agent under the Credit Agreement referred to below (in such capacity, "Beneficiary"), whose address is 399 Park Avenue, New York, New York 10022. References to this "Deed of Trust" shall mean this instrument and any and all renewals, modifications, amendments, supplements, extensions, consolidations, substitutions, spreaders and replacements of this instrument.

<u>Background</u>

A.    SUNCAL COMMUNITIES I, LLC, and SUNCAL COMMUNITIES III, LLC (collectively, the "Borrowers"), the several banks and other financial institutions or entities from time to time parties to the Credit Agreement herein described (the "Lenders"), Lehman Brothers Inc., as arranger and Beneficiary, as syndication agent and administrative agent, are parties to that certain SEVENTH AMENDMENT, dated as of April 15, 2007 to the CREDIT AGREEMENT, dated as of November 17, 2005 (as amended by the First Amendment, dated as of December 1, 2005, the Second Amendment, dated as of March 31, 2006, the Third Amendment, dated as of August 25, 2006, the Fourth Amendment, dated as of November 17, 2006, the Fifth Amendment, dated as of January 8, 2007, Sixth Amendment, dated as of February 26, 2007 and the Seventh Amendment, dated as of April 15, 2007, as further amended, supplemented or otherwise modified from time to time, the "Credit Agreement"). The terms of the Credit Agreement are incorporated by reference in this Deed of Trust as if the terms thereof were fully set forth herein. In the event of any conflict between the provisions of this Deed of Trust and the provisions of the Credit Agreement, the applicable provisions of the Credit Agreement shall govern and control.

B.    Pursuant to the Credit Agreement, the Lenders have severally agreed to make loans and other extensions of credit (including, without limitation, the Term Loan and the Revolving Credit Loans) to the Borrowers upon the terms and subject to the conditions set forth therein in the aggregate principal amount of THREE HUNDRED NINETY-FIVE MILLION THREE HUNDRED THIRTEEN THOUSAND SEVEN HUNDRED THIRTEEN AND 37/100 DOLLARS ($395,313,713.37).

C.    Certain of the Qualified Counterparties may enter into Specified Hedge Agreements with the Borrowers.

D.    Grantor (i) is the owner of the fee simple estate in the parcel(s) of real property, if any, described on <u>Schedule A</u> attached hereto (the "Land"); and (ii) owns, leases or otherwise has the right to use all of the buildings, improvements, structures, and fixtures now or

subsequently located on the Land (collectively, the "Improvements"; the Land and the Improvements being collectively referred to as the "Real Estate").

      E.    The Borrowers together with certain Borrowing Base Projects have entered into that certain Guarantee and Collateral Agreement, dated as of November 17, 2005, (as the same may be amended, supplemented or otherwise modified from time to time, the "Guarantee") in favor of Beneficiary for the benefit of the Secured Parties (as hereinafter defined).

      F.    Grantor entered into that certain Assumption Agreement dated the date hereof in order to become a party to the Guarantee and Collateral Agreement as a Grantor thereunder.

      G.    It is a condition precedent to the obligation of the Lenders to make their respective extensions of credit to the Borrowers under the Credit Agreement that Grantor shall have executed and delivered the Guarantee and this Deed of Trust to Beneficiary for the benefit of the Secured Parties, which Deed of Trust secures Grantors' obligations under the Guarantee.

Granting Clauses

      For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Grantor hereby agrees that in order to secure the following (collectively, the "Obligations"): (i) payment of the Grantor's Guarantee Obligations under the Guarantee, (ii) all obligations and liabilities of Grantor (including, without limitation, interest accruing at the then applicable rate provided in any Specified Hedge Agreement after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to the Guarantor, whether or not a claim for post-filing or post petition interest is allowed in such proceeding) to any Qualified Counterparty, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, any Specified Hedge Agreement or any other document made, delivered or given in connection therewith, in each case whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses or otherwise (including, without limitation, all fees and disbursements of counsel to the relevant Qualified Counterparty that are required to be paid by Grantor pursuant to the terms of any Specified Hedge Agreement), and (iii) all other obligations and liabilities of the Grantor, whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, the Guarantee, this Deed of Trust or any other Loan Document (including, without limitation, all fees and disbursements of counsel to the Secured Parties that are required to be paid by the Grantor pursuant to the terms of the Guarantee); provided, that obligations of the Grantor under any Specified Hedge Agreement shall be secured hereby only to the extent that, and for so long as, the other Obligations are so secured:

GRANTOR HEREBY CONVEYS TO TRUSTEE AND HEREBY GRANTS, SELLS, BARGAINS, CONFIRMS, ASSIGNS, TRANSFERS AND SETS OVER TO TRUSTEE WITH DEED OF TRUST COVENANTS FOR THE USE AND BENEFIT OF BENEFICIARY, AND GRANTS BENEFICIARY, INSOFAR AS ANY PROPERTY CONSTITUTES PERSONAL PROPERTY, A SECURITY INTEREST IN, IN EACH CASE FOR THE RATABLE BENEFIT

-2-

OF THE SECURED PARTIES, ALL OF GRANTOR'S RIGHT, TITLE AND INTEREST IN AND TO THE FOLLOWING:

     (a)    the Land;

     (b)    all right, title and interest Grantor now has or may hereafter acquire in and to the Improvements or any part thereof and all the estate, right, title, claim or demand whatsoever of Grantor, in possession or expectancy, in and to the Real Estate or any part thereof;

     (c)    all right, title and interest of Grantor in, to and under all easements, rights of way, licenses, operating agreements, abutting strips and gores of land, streets, ways, alleys, passages, sewer rights, waters, water courses, water and flowage rights, development rights, air rights, mineral and soil rights, plants, standing and fallen timber, and all estates, rights, titles, interests, privileges, licenses, tenements, hereditaments and appurtenances belonging, relating or appertaining to the Real Estate, and any reversions, remainders, rents, issues, profits and revenue thereof and all land lying in the bed of any street, road or avenue, in front of or adjoining the Real Estate to the center line thereof;

     (d)    all right, title and interest of Grantor in, to and under all of the fixtures, chattels, business machines, machinery, apparatus, equipment, furnishings, fittings, appliances and articles of personal property of every kind and nature whatsoever, and all appurtenances and additions thereto and substitutions or replacements thereof (together with, in each case, attachments, components, parts and accessories) currently owned or subsequently acquired by Grantor and now or subsequently attached to, or contained in or used or usable in any way in connection with any operation or letting of the Real Estate, including but without limiting the generality of the foregoing, all screens, awnings, shades, blinds, curtains, draperies, artwork, carpets, rugs, storm doors and windows, furniture and furnishings, heating, electrical, and mechanical equipment, lighting, switchboards, plumbing, ventilating, air conditioning and air-cooling apparatus, refrigerating, and incinerating equipment, escalators, elevators, loading and unloading equipment and systems, stoves, ranges, laundry equipment, cleaning systems (including window cleaning apparatus), telephones, communication systems (including satellite dishes and antennae), televisions, computers, sprinkler systems and other fire prevention and extinguishing apparatus and materials, security systems, motors, engines, machinery, pipes, pumps, tanks, gas pumps, gas tanks, conduits, appliances, fittings and fixtures of every kind and description (all of the foregoing in this paragraph (e) being referred to as the "Equipment");

     (e)    all right, title and interest of Grantor in and to all substitutes and replacements of, and all additions and improvements to, the Real Estate and the Equipment, subsequently acquired by or released to Grantor or constructed, assembled or placed by Grantor on the Real Estate, immediately upon such acquisition, release, construction, assembling or placement, including, without limitation, any and all building materials whether stored at the Real Estate or offsite, and, in each such case, without any further deed, conveyance, assignment or other act by Grantor;

-3-

(f)     all right, title and interest of Grantor in, to and under all leases, subleases, underlettings, concession agreements, management agreements, licenses and other agreements relating to the use or occupancy of the Real Estate or the Equipment or any part thereof, now existing or subsequently entered into by Grantor and whether written or oral and all guarantees of any of the foregoing (collectively, as any of the foregoing may be amended, restated, extended, renewed or modified from time to time, the "Leases"), and all rights of Grantor in respect of cash and securities deposited thereunder and the right to receive and collect the revenues, income, rents, issues and profits thereof, together with all other rents, royalties, issues, profits, revenue, income and other benefits arising from the use and enjoyment of the Trust Property (as defined below) (collectively, the "Rents");

(g)     all unearned premiums under insurance policies now or subsequently obtained by Grantor relating to the Real Estate or Equipment and Grantor's interest in and to all proceeds of any such insurance policies (including title insurance policies) including the right to collect and receive such proceeds, subject to the provisions relating to insurance generally set forth below; and all awards and other compensation, including the interest payable thereon and the right to collect and receive the same, made to the present or any subsequent owner of the Real Estate or Equipment for the taking by eminent domain, condemnation or otherwise, of all or any part of the Real Estate or any easement or other right therein subject to the provisions set forth below;

(h)     all rights of Grantor under any covenants, conditions, and restrictions affecting the Property, the Improvements, or the master planned community of which the Property and the Improvements are a part, whether now existing or hereafter arising, including, without limitation, all voting rights, declarant's rights, developer rights, and similar rights arising under any such covenants, conditions, and restrictions

(i)     all right, title and interest of Grantor in and to (i) all contracts from time to time executed by Grantor or any manager or agent on its behalf relating to the ownership, construction, maintenance, repair, operation, occupancy, sale or financing of the Real Estate or Equipment or any part thereof, including, without limitation, all Qualified Sales Agreements (as defined in the Credit Agreement) and all agreements and options relating to the purchase or lease of any portion of the Real Estate or any property which is adjacent or peripheral to the Real Estate, together with the right to exercise such options and all leases of Equipment, (ii) all consents, licenses, building permits, certificates of occupancy and other governmental approvals relating to construction, completion, occupancy, use or operation of the Real Estate or any part thereof, including, without limitation all Development Agreements, Entitlement Documents, Entitlements and Approvals (as such terms are defined in the Credit Agreement) and (iii) all drawings, plans, specifications and similar or related items relating to the Real Estate, in each case, to the extent assignable; and

(j)     all proceeds, both cash and non-cash, of the foregoing;

(All of the foregoing property and rights and interests now owned or held or subsequently acquired by Grantor and described in the foregoing clauses (a) through (d) are

collectively referred to as the "Premises", and those described in the foregoing clauses (a) through (j) are collectively referred to as the "Trust Property").

TO HAVE AND TO HOLD the Trust Property and the rights and privileges hereby granted unto Trustee, its successors and assigns for the uses and purposes set forth, until the Obligations are fully paid and fully performed.

This Deed of Trust covers present and future advances and re-advances, in the aggregate amount of the obligations secured hereby, made by the Secured Parties for the benefit of Grantor, and the lien of such future advances and re-advances shall relate back to the date of this Deed of Trust.

### Terms and Conditions

Grantor further represents, warrants, covenants and agrees with Trustee, Beneficiary, and the Secured Parties as follows:

1.    Defined Terms.  Capitalized terms used herein (including in the "Background" and "Granting Clauses" sections above) and not otherwise defined herein shall have the meanings ascribed thereto in the Credit Agreement.  References in this Deed of Trust to the "Default Rate" shall mean the interest rate applicable pursuant to Section 2.8(c)(ii) of the Credit Agreement.  References herein to the "Secured Parties" shall mean the collective reference to (i) Beneficiary, (ii) the Lenders, (iii) each Qualified Counterparty, and (iv) the respective successors, indorsees, transferees and assigns of each of the foregoing.  References herein to "UCC" shall mean the Uniform Commercial Code from time to time in effect in the State of New York or, as the context may require, the State of Delaware, or, as the context may require, in the State or States in which any Trust Property is located.

2.    Warranty of Title.  Grantor warrants that it has good record title in fee simple to, the Real Estate, and good title to the rest of the Trust Property, subject only to the matters that are set forth in Schedule B of the title insurance policy or policies being issued to Beneficiary to insure the lien of this Deed of Trust and any other lien or encumbrance as permitted by Section 6.2(f) of the Credit Agreement (the "Permitted Exceptions").  Grantor shall warrant, defend and preserve such title and the lien of this Deed of Trust against all claims of all persons and entities (not including the holders of the Permitted Exceptions).  Grantor represents and warrants that it has the right to mortgage the Trust Property.

3.    Payment of Obligations.  Grantor shall pay and perform the Obligations at the times, places and in the manner specified in the Loan Documents.

4.    Requirements.  (a) Grantor shall promptly comply with, or cause to be complied with, and conform to all Requirements of Law of all Governmental Authorities which have jurisdiction over the Trust Property, and all covenants, restrictions and conditions now or later of record which may be applicable to any of the Trust Property, or to the use, manner of use, occupancy, possession, operation, maintenance, alteration, repair or reconstruction of any of the Trust Property, except to the extent that failure to comply therewith could not, in the aggregate, reasonably be expected to have a Material Adverse Effect.

(b)     Notwithstanding the foregoing, Grantor may contest the validity of such Requirements of Law so long as (i) Grantor notifies Beneficiary that it intends to contest the same, (ii) Grantor is diligently contesting the same by appropriate legal proceedings in good faith and at its own expense, (iii) such contest will not subject the Grantor or the Property to any potential civil or criminal liability, and (iv) will not cause an Event of Default to exist under any Lease.

(c)     From and after the date of this Deed of Trust, Grantor shall not by act or omission permit any building or other improvement on any premises not subject to the lien of this Deed of Trust to rely on the Premises or any part thereof or any interest therein to fulfill any Requirement of Law.  Grantor shall not by act or omission impair the integrity of any of the Real Estate as a single zoning lot or lots separate and apart from all other premises.

5.     Payment of Taxes and Other Impositions.  (a)  Promptly when due or prior to the date on which any fine, penalty, interest or cost may be added thereto or imposed (excluding any discount period), Grantor shall pay and discharge all taxes, charges and assessments of every kind and nature (including, without limitation, all real property taxes), all charges for any easement or agreement maintained for the benefit of any of the Real Estate, all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and charges, vault taxes, and all other public charges even if unforeseen or extraordinary, imposed upon or assessed against or which may become a lien on any of the Real Estate, or arising in respect of the occupancy, use or possession thereof, together with any penalties or interest on any of the foregoing (all of the foregoing are collectively referred to as "Impositions").  If there is an Event of Default which is continuing, Grantor shall within 30 days after each due date deliver to Beneficiary (i) original or copies of receipted bills and cancelled checks evidencing payment of such Imposition if it is a real estate tax or other public charge and (ii) evidence acceptable to Beneficiary showing the payment of any other such Imposition.  If by law any Imposition, at Grantor's option, may be paid in installments (whether or not interest shall accrue on the unpaid balance of such Imposition), Grantor may elect to pay such Imposition in such installments and shall be responsible for the payment of such installments with interest, if any.

(b)     If the Beneficiary has failed to pay an Imposition within 30 days of when it is due, except as covered in a proceeding in accordance with Section 5(c) below, Beneficiary upon ten (10) days' prior written notice (unless Beneficiary reasonably determines that failure to sooner pay such amount could adversely affect Beneficiary's interest in the Property, in which case no notice shall be required) to Grantor may pay any such Imposition at any time thereafter.  Any sums paid by Beneficiary in discharge of any Impositions pursuant to this Section 5(b) shall be payable on demand by Grantor to Beneficiary and the amount so paid shall be added to the Obligations.  Any sums paid by Beneficiary in discharge of any Impositions shall be (i) a lien on the Premises secured hereby prior to any right or title to, interest in, or claim upon the Premises subordinate to the lien of this Deed of Trust, and (ii) payable on demand by Grantor to Beneficiary together with interest at the Default Rate.

(c)     Notwithstanding the foregoing, Grantor shall have the right before any delinquency occurs to contest or object in good faith to the amount or validity of any

-6-

material Imposition by appropriate legal proceedings, but such right shall not be deemed or construed in any way as relieving, modifying, or extending Grantor's covenant to pay any such Imposition at the time and in the manner provided in this Section unless (i) Grantor has given written notice promptly upon initiation of any contest to Beneficiary of Grantor's intent so to contest or object to a material Imposition, (ii) Grantor shall demonstrate to Beneficiary's satisfaction that the legal proceedings shall operate conclusively to prevent the sale of the Trust Property, or any part thereof, to satisfy such material Imposition prior to final determination of such proceedings and (iii) Grantor shall either (x) furnish a good and sufficient bond or surety as requested by and reasonably satisfactory to Beneficiary or (y) maintain adequate reserves in conformity with GAAP on Grantor's books, in each case in the amount of the material Imposition which is being contested plus any interest and penalty which may be imposed thereon and which could become a lien against the Real Estate or any part of the Trust Property.

6.    Insurance. Grantor shall at all times provide, maintain and keep in force or cause to be provided, maintained and kept in force with respect to the Trust Estate, at no expense to Trustee or Beneficiary, policies of insurance in forms and amounts and issued by companies reasonably satisfactory to Beneficiary covering such casualties, risks, perils, liabilities and other hazards as is required under the Credit Agreement. All such policies of insurance required by the terms of this Deed of Trust or the Credit Agreement shall contain an endorsement or agreement by the insurer that any loss shall be payable in accordance with the terms of such policy notwithstanding any act or negligence of Grantor or any party holding under Grantor that might otherwise result in forfeiture of said insurance and the further agreement of the insurer waiving all rights of setoff, counterclaim or deductions against Grantor.

7.    Restrictions on Liens and Encumbrances. Except for the lien of this Deed of Trust and the Permitted Exceptions, and except as expressly permitted under the Credit Agreement, Grantor shall not, without the prior written consent of Beneficiary, further mortgage, nor otherwise encumber the Trust Property nor create or suffer to exist any lien, charge or encumbrance on the Trust Property, or any part thereof, whether superior or subordinate to the lien of this Deed of Trust and whether recourse or non-recourse.

8.    Due on Sale and Other Transfer Restrictions. Except as expressly permitted under the Credit Agreement, Grantor shall not, without the prior written consent of Beneficiary, sell, transfer, convey or assign all or any portion of, or any interest in, the Trust Property.

9.    Condemnation/Eminent Domain. Subject to the Credit Agreement, upon obtaining knowledge of the institution of any proceedings for the condemnation of the Trust Property, or any portion thereof, Grantor will notify Beneficiary of the pendency of such proceedings. Beneficiary is hereby authorized and empowered by Grantor to settle or compromise any claim in connection with such condemnation and to receive all awards and proceeds thereof to be applied pursuant to Section 2.6 of the Credit Agreement, or otherwise to be held by Beneficiary as collateral to secure the payment and performance of the Indebtedness and the Obligations. Notwithstanding the preceding sentence, provided no Event of Default shall have occurred and be continuing, but expressly subject to the provisions of Section 2.6 of the Credit Agreement, (i) Grantor shall, at its expense, diligently prosecute any proceeding relating to such condemnation, (ii) Grantor may settle or compromise any claims in connection therewith

and (iii) Grantor may receive any awards or proceeds thereof, provided that Grantor shall (a) if applicable, promptly repair and restore the Trust Property to its condition prior to such condemnation, regardless of whether any award shall have been received or whether such award is sufficient to pay for the costs of such repair and restoration or (b) otherwise comply with the provisions of the Credit Agreement relating to the disposition of Net Cash Proceeds from a Recovery Event.

10.    Leases.    The Property is not subject to any Leases except as described on Schedule B.  No Person other than Grantor has any possessory interest in the Premises or right to occupy the same except with respect to the property described on Exhibit A hereto (the "Engelauf Property"), which pursuant to that certain Agreement for the Purchase and Sale of Real Property, dated September 24, 2003 (as in effect on the date hereof, the "Engelauf Property Purchase Agreement") between Majorie Engelauf and Jerry R. Engelauf Trust (the "Engelauf Property Seller") and Rubidoux 60, LLC, as assignee of EMR Residential Properties LLC (the "Engelauf Buyer"), the Engelauf Property Seller shall have sixty (60) days from the date hereof to vacate the Engelauf Property.  Except as expressly permitted under the Credit Agreement, Grantor shall not (a) execute an assignment or pledge of any Lease relating to all or any portion of the Trust Property other than in favor of Beneficiary, or (b) without the prior written consent of Beneficiary, execute or permit to exist any Lease of any of the Trust Property.

11.    Further Assurances.    To further assure Beneficiary's and Trustee's rights under this Deed of Trust, Grantor agrees upon written demand of Beneficiary to do any act or execute any additional documents (including, but not limited to, security agreements on any personalty included or to be included in the Trust Property and a separate assignment of each Lease in recordable form) as may be reasonably required by Beneficiary to confirm the lien of this Deed of Trust and all other rights or benefits conferred on Beneficiary by this Deed of Trust.

12.    Beneficiary's Right to Perform.    If Grantor fails to perform any of the covenants or agreements of Grantor, within the applicable grace or cure period, if any, provided for in the Credit Agreement, Beneficiary or Trustee, without waiving or releasing Grantor from any obligation or default under this Deed of Trust, may, at any time upon delivery of written notice to Grantor (but shall be under no obligation to) pay or perform the same, and the amount or cost thereof, with interest at the Default Rate, shall be due on demand from Grantor to Beneficiary and the same shall be secured by this Deed of Trust and shall be a lien on the Trust Property prior to any right, title to, interest in, or claim upon the Trust Property attaching subsequent to the lien of this Deed of Trust.  No payment or advance of money by Beneficiary or Trustee under this Section shall be deemed or construed to cure Grantor's default or waive any right or remedy of Beneficiary or Trustee.

13.    Remedies  (a)  Upon the occurrence and during the continuance of any Event of Default, Beneficiary may immediately take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Grantor and in and to the Trust Property, including, but not limited to, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such manner as Beneficiary may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Beneficiary:

(i)    Beneficiary may elect to cause the Trust Property or any part thereof to be sold as follows: If an Event of Default occurs and is continuing, Beneficiary, at its option, in addition to other remedies provided at law, may declare all sums secured by this Deed of Trust immediately due and payable by delivering to Trustee a written affidavit or declaration of default and demand for sale, executed by Beneficiary and reciting facts demonstrating such default by Grantor, together with a written notice of default and election to sell the Trust Property. Beneficiary shall also deposit with Trustee the Guarantee, this Deed of Trust, and documents evidencing any additional advances or expenditures secured by this Deed of Trust. On receipt by Trustee of such affidavit or declaration of default and such notice of default and election to sell, Trustee shall accept such election to sell as true and conclusive of all facts and statements in such affidavit or declaration of default and shall cause such notice of default and election to sell to be recorded as required by Requirements of Law. On the expiration of such period as may then be required by Requirements of Law following recordation of such notice of default, and after notice of sale has been given in the manner and for the period required by Requirements of Law, Trustee, without demand on Grantor, shall sell the Trust Property at the time and place fixed in such notice of sale, either in whole or in separate parcels, and in such order as Trustee may determine or Beneficiary may direct (Grantor waives any right it may have under Requirements of Law to direct the order of sale), at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale; provided, however, that Beneficiary may offset its bid at such sale to the extent of the full amount owed to Beneficiary under the Credit Agreement, including, without limitation, Trustee's fees, expenses of sale, and costs, expenses, and attorney fees incurred by or on behalf of Beneficiary in connection with collecting, litigating, or otherwise enforcing any right under the Credit Agreement, the Guarantee or any other Loan Document. Trustee may postpone the sale of all or any portion of the Trust Property by public announcement made at the initial time and place of sale, and from time to time later by public announcement made at the time and place of sale fixed by the preceding postponement. Trustee shall deliver to the purchaser at such public auction its deed conveying the Trust Property sold, but without any covenant or warranty, express or implied. The recital in such deed of any matter of fact shall be conclusive proof of its truthfulness. Any person, including Grantor, Trustee, or Beneficiary, may purchase at such sale.

The proceeds or avails of any sale made under or by virtue of this Deed of Trust, together with any other sums secured by this Deed of Trust, which then may be held by the Trustee or Beneficiary or any other person, shall be applied as pursuant to Section 13(d) hereof.

(ii)    Beneficiary may, to the extent permitted by applicable law, (A) institute and maintain an action of judicial foreclosure against all or any part of the Trust Property, (B) institute and maintain an action on the Credit Agreement, the Guarantee, or any other Loan Document, or (C) take such other action at law or in equity for the enforcement of this Deed of Trust or any of the

Loan Documents as the law may allow. Beneficiary may proceed in any such action to final judgment and execution thereon for all sums due hereunder, together with interest thereon at the applicable Default Rate or a lesser amount if required by law and all costs of suit, including, without limitation, reasonable attorneys' fees and disbursements. To the fullest extent permitted by applicable law, interest at the Default Rate shall be due on any judgment obtained by Beneficiary from the date of judgment until actual payment is made of the full amount of the judgment.

(iii)    Beneficiary may personally, or by its agents, attorneys and employees and without regard to the adequacy or inadequacy of the Trust Property or any other collateral as security for the Obligations enter into and upon the Trust Property and each and every part thereof and exclude Grantor and its agents and employees therefrom without liability for trespass, damage or otherwise (Grantor hereby agreeing to surrender possession of the Trust Property to Beneficiary upon demand at any such time) and use, operate, manage, maintain and control the Trust Property and every part thereof. Following such entry and taking of possession, Beneficiary shall be entitled, without limitation, (x) to lease all or any part or parts of the Trust Property for such periods of time and upon such conditions as Beneficiary may, in its discretion, deem proper, (y) to enforce, cancel or modify any Lease subject to the rights of any existing tenants and (z) generally to execute, do and perform any other act, deed, matter or thing concerning the Trust Property as Beneficiary shall deem appropriate as fully as Grantor might do.

(b)    In the event of any breach of any of the covenants, agreements, terms or conditions contained in this Deed of Trust and the expiration of any applicable notice and/or grace or cure period, Beneficiary shall be entitled to enjoin such breach and obtain specific performance of any covenant, agreement, term or condition and Beneficiary shall have the right to invoke any equitable right or remedy as though other remedies were not provided for in this Deed of Trust.

(c)    Upon completion of any sale or sales made by Trustee under or by virtue of this Deed of Trust and upon satisfaction of any redemption period required by law, Trustee shall execute and deliver to the purchaser or purchasers at such sale or sales a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, and title and interest of Grantor in and to the property and rights sold. Any such sale or sales made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Grantor in and to the properties and rights to be sold, and shall be a perpetual bar both at law and in equity, of Grantor and against any and all persons claiming or who may claim the same, or any part thereof from through or under Grantor. The purchaser at any foreclosure sale hereunder may disaffirm any easement granted or lease made in violation of any provision of this Deed of Trust, and may take immediate possession of the Trust Property free from, and despite the terms of, such grant of easement or rental or lease agreement.

-10-

(d)     It is agreed that if an Event of Default shall occur and be continuing, any and all proceeds of the Trust Property received by Beneficiary shall be held by Beneficiary for the benefit of the Secured Parties as collateral security for the Obligations (whether matured or unmatured), and shall be applied in payment of the Obligations in the manner and in the order set forth in Section 6.5 of the Guarantee.

14.     Right of Beneficiary to Credit Sale.  Upon the occurrence of any sale made under this Deed of Trust in connection with the exercise of remedies hereunder upon the occurrence and during the continuation of any Event of Default, whether made under the power of sale or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Beneficiary may bid for and acquire the Trust Property or any part thereof.  In lieu of paying cash therefor, Beneficiary may make settlement for the purchase price by crediting upon the Obligations or other sums secured by this Deed of Trust, the net sales price after deducting therefrom the expenses of sale and the cost of the action and any other sums which Beneficiary is authorized to deduct under this Deed of Trust.  In such event, this Deed of Trust, the Credit Agreement, the Guarantee and documents evidencing expenditures secured hereby may be presented to the person or persons conducting the sale in order that the amount so used or applied may be credited upon the Obligations as having been paid.

15.     Appointment of Receiver.  If an Event of Default shall have occurred and be continuing, Beneficiary as a matter of right and without notice to Grantor, unless otherwise required by applicable law, and without regard to the adequacy or inadequacy of the Trust Property or any other collateral or the interest of Grantor therein as security for the Obligations, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers or other manager of the Trust Property, and Grantor hereby irrevocably consents to such appointment and waives notice of any application therefor (except as may be required by law). Any such receiver or receivers or manager shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided in this Deed of Trust, including, without limitation and to the extent permitted by law, the right to enter into leases of all or any part of the Trust Property, and shall continue as such and exercise all such powers until the date of confirmation of sale of the Trust Property unless such receivership is sooner terminated.

16.     Extension, Release, etc.  (a)  Without affecting the lien or charge created by this Deed of Trust upon any portion of the Trust Property not then or theretofore released as security for the full amount of the Obligations, Beneficiary may, from time to time and without notice, agree to (i) release any person liable for the indebtedness borrowed or guaranteed under the Loan Documents, (ii) extend the maturity or alter any of the terms of the indebtedness borrowed or guaranteed under the Loan Documents or any other guaranty thereof, (iii) grant other indulgences, (iv) release or reconvey, or cause to be released or reconveyed at any time at Beneficiary's option any parcel, portion or all of the Trust Property, (v) take or release any other or additional security for any obligation herein mentioned, or (vi) make compositions or other arrangements with debtors in relation thereto.

(b)     No recovery of any judgment by Beneficiary and no levy of an execution under any judgment upon the Trust Property or upon any other property of Grantor shall affect the lien created by this Deed of Trust or any liens, rights, powers or remedies of

Beneficiary or Trustee hereunder, and such liens, rights, powers and remedies shall continue unimpaired.

(c)    If Beneficiary shall have the right to foreclose this Deed of Trust or to direct the Trustee to exercise its power of sale, Grantor authorizes Beneficiary at its option to foreclose the lien created by this Deed of Trust (or direct the Trustee to sell the Trust Property, as the case may be) subject to the rights of any tenants of the Trust Property. The failure to make any such tenants parties defendant to any such foreclosure proceeding and to foreclose their rights, or to provide notice to such tenants as required in any statutory procedure governing a sale of the Trust Property by Trustee, or to terminate such tenant's rights in such sale will not be asserted by Grantor as a defense to any proceeding instituted by Beneficiary to collect the Obligations or to foreclose the lien created by this Deed of Trust.

(d)    Unless expressly provided otherwise, in the event that Beneficiary's interest in this Deed of Trust and title to the Trust Property or any estate therein shall become vested in the same person or entity, this Deed of Trust shall not merge in such title but shall continue as a valid lien on the Trust Property for the amount secured hereby.

17.    <u>Security Agreement under Uniform Commercial Code.</u> (a) It is the intention of the parties hereto that this Deed of Trust shall constitute a Security Agreement within the meaning of the Uniform Commercial Code (the "Code") of the State in which the Trust Property is located. If an Event of Default shall occur and be continuing under this Deed of Trust, then in addition to having any other right or remedy available at law or in equity, Beneficiary shall have the option of either (i) proceeding under the Code and exercising such rights and remedies as may be provided to a secured party by the Code with respect to all or any portion of the Trust Property which is personal property (including, without limitation, taking possession of and selling such property) or (ii) treating such property as real property and proceeding with respect to both the real and personal property constituting the Trust Property in accordance with Beneficiary's rights, powers and remedies with respect to the real property (in which event the default provisions of the Code shall not apply). If Beneficiary shall elect to proceed under the Code, then ten days' notice of sale of the personal property shall be deemed reasonable notice and the reasonable expenses of retaking, holding, preparing for sale, selling and the like incurred by Beneficiary shall include, but not be limited to, reasonable attorneys' fees and legal expenses. At Beneficiary's request, Grantor shall assemble the personal property and make it available to Beneficiary at a place designated by Beneficiary which is reasonably convenient to both parties.

(b)    Certain portions of the Trust Property are or will become "fixtures" (as that term is defined in the Code) on the Land, and this Deed of Trust, upon being filed for record in the real estate records of the county wherein such fixtures are situated, shall operate also as a financing statement filed as a fixture filing in accordance with the applicable provisions of said Code upon such portions of the Trust Property that are or become fixtures. The addresses of the Grantor, as debtor, and Beneficiary, as secured party, are set forth in the first page of this Deed of Trust.

(c)    The real property to which the fixtures relate is described in Schedule A attached hereto. The name, type of organization and jurisdiction of organization of the debtor for purposes of this financing statement are the name, type of organization and jurisdiction of organization of the Grantor set forth in the first paragraph of this Deed of Trust, and the name of the secured party for purposes of this financing statement is the name of the Beneficiary set forth in the first paragraph of this Deed of Trust. The mailing address of the Grantor/debtor is the address of the Grantor set forth in the first paragraph of this Deed of Trust. The mailing address of the Beneficiary/secured party from which information concerning the security interest hereunder may be obtained is the address of the Beneficiary set forth in the first paragraph of this Deed of Trust. Grantor's organizational identification number is 4019212.

18.    Assignment of Rents.    (a) Grantor hereby assigns to Trustee, for the benefit of Beneficiary the Rents as further security for the payment and performance of the Obligations, and Grantor grants to Trustee and Beneficiary the right to enter the Trust Property for the purpose of collecting the same and to let the Trust Property or any part thereof, and to apply the Rents on account of the Obligations. The foregoing assignment and grant is present and absolute and shall continue in effect until the Obligations secured hereby are paid in full, but Beneficiary and Trustee hereby waive the right to enter the Trust Property for the purpose of collecting the Rents and Grantor shall be entitled to collect, receive, use and retain the Rents until the occurrence and during the continuation of an Event of Default under this Deed of Trust; such right of Grantor to collect, receive, use and retain the Rents may be revoked by Beneficiary upon the occurrence and during the continuance of any Event of Default under this Deed of Trust by giving not less than five days' written notice of such revocation to Grantor; in the event such notice is given, Grantor shall pay over to Beneficiary, or to any receiver appointed to collect the Rents, any lease security deposits and such Rents. Grantor shall not accept prepayments of installments of Rent to become due for a period of more than one month in advance (except for security deposits and estimated payments of percentage rent, if any).

(b)    Grantor will not affirmatively do any act which would prevent Beneficiary from, or limit Beneficiary in, acting under any of the provisions of the foregoing assignment.

(c)    Except for any matter disclosed in the Credit Agreement, no action has been brought or, to the best of Grantor's knowledge, is threatened, which would interfere in any way with the right of Grantor to execute the foregoing assignment and perform all of Grantor's obligations contained in this Section and in the Leases.

19.    Additional Rights.    The holder of any subordinate lien or subordinate deed of trust on the Trust Property shall have no right to terminate any Lease whether or not such Lease is subordinate to this Deed of Trust nor shall any holder of any subordinate lien or subordinate deed of trust join any tenant under any Lease in any trustee's sale or action to foreclose the lien or modify, interfere with, disturb or terminate the rights of any tenant under any Lease. By recordation of this Deed of Trust all subordinate lienholders and the trustees and beneficiaries under subordinate deeds of trust are subject to and notified of this provision, and any action taken by any such lienholder or beneficiary contrary to this provision shall be null and void.

20. <u>Notices</u>. All notices, requests, demands and other communications hereunder shall be given in accordance with the provisions of Section 5.7 and Section 9.2 of the Credit Agreement, if to Beneficiary, and Schedule 1 to the Guarantee, if to Grantor, in each case as specified therein.

21. <u>No Oral Modification</u>. This Deed of Trust may not be amended, supplemented or otherwise modified except in accordance with the provisions of Section 9.1 of the Credit Agreement. To the fullest extent permitted by law, any agreement made by Grantor and Beneficiary after the date of this Deed of Trust relating to this Deed of Trust shall be superior to the rights of the holder of any intervening or subordinate lien or encumbrance. Trustee's execution of any written agreement between Grantor and Beneficiary shall not be required for the effectiveness thereof as between Grantor and Beneficiary.

22. <u>Partial Invalidity</u>. In the event any one or more of the provisions contained in this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, but each shall be construed as if such invalid, illegal or unenforceable provision had never been included. Notwithstanding to the contrary anything contained in this Deed of Trust or in any provisions of any Loan Document, the obligations of Grantor and of any other obligor under any Loan Document shall be subject to the limitation that Beneficiary shall not charge, take or receive, nor shall Grantor or any other obligor be obligated to pay to Beneficiary, any amounts constituting interest in excess of the maximum rate permitted by law to be charged by Beneficiary.

23. <u>Grantor's Waiver of Rights</u>. (a) To the fullest extent permitted by law, Grantor hereby voluntarily and knowingly releases and waives any and all rights to retain possession of the Trust Property after the occurrence of an Event of Default hereunder and any and all rights of redemption from sale under any order or decree of foreclosure (whether full or partial), pursuant to rights, if any, therein granted, as allowed under any applicable law, on its own behalf, on behalf of all persons claiming or having an interest (direct or indirectly) by, through or under each constituent of Grantor and on behalf of each and every person acquiring any interest in the Trust Property subsequent to the date hereof, it being the intent hereof that any and all such rights or redemption of each constituent of Grantor and all such other persons are and shall be deemed to be hereby waived to the fullest extent permitted by applicable law or replacement statute. Each constituent of Grantor shall not invoke or utilize any such law or laws or otherwise hinder, delay, or impede the execution of any right, power, or remedy herein or otherwise granted or delegated to Beneficiary, but shall permit the execution of every such right, power, and remedy as though no such law or laws had been made or enacted.

(b)    To the fullest extent permitted by law, Grantor waives the benefit of all laws now existing or that may subsequently be enacted providing for (i) any appraisement before sale of any portion of the Trust Property, (ii) any extension of the time for the enforcement of the collection of the Obligations or the creation or extension of a period of redemption from any sale made in collecting such debt and (iii) exemption of the Trust Property from attachment, levy or sale under execution or exemption from civil process. To the full extent Grantor may do so, Grantor agrees that Grantor will not at any time insist upon, plead, claim or take the benefit or advantage of any law now or hereafter in force providing for any appraisement, valuation, stay, exemption, extension

or redemption, or requiring foreclosure of this Deed of Trust before exercising any other remedy granted hereunder and Grantor, for Grantor and its successors and assigns, and for any and all persons ever claiming any interest in the Trust Property, to the extent permitted by law, hereby waives and releases all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature (except as expressly provided in the Credit Agreement) or declare due the whole of the secured indebtedness and marshalling in the event of exercise by Trustee or Beneficiary of the power of sale, or other rights hereby created.

24.    <u>Remedies Not Exclusive</u>.    Beneficiary and Trustee shall be entitled to enforce payment of the Obligations and performance of the Obligations and to exercise all rights and powers under this Deed of Trust or under any of the other Loan Documents or other agreement or any laws now or hereafter in force, notwithstanding some or all of the Obligations may now or hereafter be otherwise secured, whether by deed of trust, mortgage, security agreement, pledge, lien, assignment or otherwise.    Neither the acceptance of this Deed of Trust nor its enforcement, shall prejudice or in any manner affect Beneficiary's or Trustee's right to realize upon or enforce any other security now or hereafter held by Beneficiary and Trustee, it being agreed that Beneficiary and Trustee shall be entitled to enforce this Deed of Trust and any other security now or hereafter held by Beneficiary or Trustee in such order and manner as Beneficiary may determine in its absolute discretion.    No remedy herein conferred upon or reserved to Beneficiary or Trustee is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute.    Every power or remedy given by any of the Loan Documents to Beneficiary or Trustee or to which either may otherwise be entitled, may be exercised, concurrently or independently, from time to time and as often as may be deemed expedient by Beneficiary or Trustee as the case may be.    In no event shall Beneficiary or Trustee, in the exercise of the remedies provided in this Deed of Trust (including, without limitation, in connection with the assignment of Rents to Beneficiary, or the appointment of a receiver and the entry of such receiver on to all or any part of the Trust Property), be deemed a "mortgagee in possession," and neither Beneficiary nor Trustee shall in any way be made liable for any act, either of commission or omission, in connection with the exercise of such remedies.

25.    <u>Multiple Security</u>.    If (a) the Premises shall consist of one or more parcels, whether or not contiguous and whether or not located in the same county, or (b) in addition to this Deed of Trust, Beneficiary shall now or hereafter hold or be the beneficiary of one or more additional mortgages, liens, deeds of trust or other security (directly or indirectly) for the Obligations upon other property in the State in which the Premises are located (whether or not such property is owned by Grantor or by others) or (c) both the circumstances described in clauses (a) and (b) shall be true, then to the fullest extent permitted by law, Beneficiary may, at its election, commence or consolidate in a single trustee's sale or foreclosure action all trustee's sale or foreclosure proceedings against all such collateral securing the Obligations (including the Trust Property), which action may be brought or consolidated in the courts of, or sale conducted in, any county in which any of such collateral is located.    Grantor acknowledges that the right to maintain a consolidated trustee's sale or foreclosure action is a specific inducement to Lenders to extend the indebtedness borrowed pursuant to or guaranteed by the Loan Documents, and Grantor expressly and irrevocably waives any objections to the commencement or consolidation of the foreclosure proceedings in a single action and any objections to the laying of venue or

based on the grounds of forum non conveniens which it may now or hereafter have. Grantor further agrees that if Trustee or Beneficiary shall be prosecuting one or more foreclosure or other proceedings against a portion of the Trust Property or against any collateral other than the Trust Property, which collateral directly or indirectly secures the Obligations, or if Beneficiary shall have obtained a judgment of foreclosure and sale or similar judgment against such collateral (or, in the case of a trustee's sale, shall have met the statutory requirements therefore with respect to such collateral), then, whether or not such proceedings are being maintained or judgments were obtained in or outside the State in which the Premises are located, to the fullest extent permitted by law, Beneficiary may commence or continue any trustee's sale or foreclosure proceedings and exercise its other remedies granted in this Deed of Trust against all or any part of the Trust Property and Grantor waives any objections to the commencement or continuation of a foreclosure of this Deed of Trust or exercise of any other remedies hereunder based on such other proceedings or judgments, and waives any right to seek to dismiss, stay, remove, transfer or consolidate either any action under this Deed of Trust or such other proceedings on such basis. To the fullest extent permitted by law, neither the commencement nor continuation of proceedings to sell the Trust Property in a trustee's sale, to foreclose this Deed of Trust, nor the exercise of any other rights hereunder nor the recovery of any judgment by Beneficiary in any such proceedings or the occurrence of any sale by the Trustee in any such proceedings shall prejudice, limit or preclude Beneficiary's right to commence or continue one or more trustee's sales, foreclosure or other proceedings or obtain a judgment against (or, in the case of a trustee's sale, to meet the statutory requirements for, any such sale of) any other collateral (either in or outside the State in which the Premises are located) which directly or indirectly secures the Obligations, and Grantor expressly waives any objections to the commencement of, continuation of, or entry of a judgment in such other sales or proceedings or exercise of any remedies in such sales or proceedings based upon any action or judgment connected to this Deed of Trust, and Grantor also waives any right to seek to dismiss, stay, remove, transfer or consolidate either such other sales or proceedings or any sale or action under this Deed of Trust on such basis. To the fullest extent permitted by law, it is expressly understood and agreed that to the fullest extent permitted by law, Beneficiary may, at its election, cause the sale of all collateral which is the subject of a single trustee's sale or foreclosure action at either a single sale or at multiple sales conducted simultaneously and take such other measures as are appropriate in order to effect the agreement of the parties to dispose of and administer all collateral securing the Obligations (directly or indirectly) in the most economical and least time-consuming manner.

26.   Successors and Assigns.  All covenants of Grantor contained in this Deed of Trust are imposed solely and exclusively for the benefit of Beneficiary, Trustee and their respective successors and assigns, and no other person or entity shall have standing to require compliance with such covenants or be deemed, under any circumstances, to be a beneficiary of such covenants, any or all of which may be freely waived in whole or in part by Beneficiary or Trustee at any time if in the sole discretion of either of them such a waiver is deemed advisable. All such covenants of Grantor shall run with the land and bind Grantor, the successors and assigns of Grantor (and each of them) and all subsequent owners, encumbrancers and tenants of the Trust Property, and shall inure to the benefit of Beneficiary, Trustee and their respective successors and assigns.  Without limiting the generality of the foregoing, any successor to Trustee appointed by Beneficiary shall succeed to all rights of Trustee as if such successor had been originally named as Trustee hereunder  The word "Grantor" shall be construed as if it read

"Grantors" whenever the sense of this Deed of Trust so requires and if there shall be more than one Grantor, the obligations of the Grantors shall be joint and several.

27.    No Waivers, etc.    Any failure by Beneficiary to insist upon the strict performance by Grantor of any of the terms and provisions of this Deed of Trust shall not be deemed to be a waiver of any of the terms and provisions hereof, and Beneficiary or Trustee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Grantor of any and all of the terms and provisions of this Deed of Trust to be performed by Grantor. Beneficiary may release, regardless of consideration and without the necessity for any notice to or consent by the beneficiary of any subordinate deed of trust or the holder of any subordinate lien on the Trust Property, any part of the security held for the obligations secured by this Deed of Trust without, as to the remainder of the security, in any way impairing or affecting the lien of this Deed of Trust or the priority of this Deed of Trust over any subordinate lien or deed of trust.

28.    Governing Law, etc.    (a) THIS DEED OF TRUST WAS NEGOTIATED IN THE STATE OF NEW YORK, AND MADE BY GRANTOR AND ACCEPTED BY BENEFICIARY IN THE STATE OF NEW YORK, AND THE PROCEEDS UNDER THE CREDIT AGREEMENT SECURED HEREBY WERE DISBURSED FROM THE STATE OF NEW YORK, WHICH STATE THE PARTIES AGREE HAS A SUBSTANTIAL RELATIONSHIP TO THE PARTIES AND TO THE UNDERLYING TRANSACTION EMBODIED HEREBY, AND IN ALL RESPECTS, INCLUDING, WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE, THIS DEED OF TRUST AND THE OBLIGATIONS ARISING HEREUNDER SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK APPLICABLE TO CONTRACTS MADE AND PERFORMED IN SUCH STATE AND ANY APPLICABLE LAW OF THE UNITED STATES OF AMERICA, EXCEPT THAT AT ALL TIMES (I) THE PROVISIONS FOR THE CREATION, PERFECTION, PRIORITY AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED PURSUANT HERETO AND PURSUANT TO THE OTHER LOAN DOCUMENTS WITH RESPECT TO THE PROPERTY (OTHER THAN THAT DESCRIBED IN SUBPARAGRAPH II BELOW) SHALL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAW OF THE STATE IN WHICH THE PROPERTY AND FIXTURES ARE LOCATED AND (II) WITH RESPECT TO THE PERFECTION, PRIORITY AND ENFORCEMENT OF THE LIENS AND SECURITY INTERESTS CREATED BY THIS DEED OF TRUST AND THE OTHER LOAN DOCUMENTS IN PROPERTY WHOSE PERFECTION AND PRIORITY IS COVERED BY ARTICLE 9 OF THE UCC (INCLUDING, WITHOUT LIMITATION, THE ACCOUNTS), THE LAW OF THE JURISDICTION APPLICABLE IN ACCORDANCE WITH SECTIONS 9-301 THROUGH 9-307 OF THE UCC AS IN EFFECT IN THE STATE OF NEW YORK SHALL GOVERN. TO THE FULLEST EXTENT PERMITTED BY LAW, GRANTOR HEREBY UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY CLAIM TO ASSERT THAT THE LAW OF ANY OTHER JURISDICTION GOVERNS THIS DEED OF TRUST, AND THIS DEED OF TRUST SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK PURSUANT TO SECTION 5-1401 OF THE NEW YORK GENERAL OBLIGATIONS LAW EXCEPT AS SPECIFICALLY SET FORTH ABOVE.

(b)   ANY LEGAL SUIT, ACTION OR PROCEEDING AGAINST BENEFICIARY OR GRANTOR ARISING OUT OF OR RELATING TO THIS DEED OF TRUST MAY AT BENEFICIARY'S OPTION BE INSTITUTED IN ANY FEDERAL OR STATE COURT IN THE CITY OF NEW YORK, COUNTY OF NEW YORK, PURSUANT TO SECTION 5-1402 OF THE NEW YORK GENERAL OBLIGATIONS LAW, AND GRANTOR AND BENEFICIARY WAIVE ANY OBJECTIONS WHICH THEY MAY NOW OR HEREAFTER HAVE BASED ON VENUE AND/OR FORUM NON CONVENIENS OF ANY SUCH SUIT, ACTION OR PROCEEDING, AND GRANTOR AND BENEFICIARY HEREBY IRREVOCABLY SUBMIT TO THE JURISDICTION OF ANY SUCH COURT IN ANY SUIT, ACTION OR PROCEEDING. GRANTOR HEREBY AGREES THAT SERVICE OF PROCESS SHALL BE EFFECTED IN THE MANNER PROVIDED IN THE CREDIT AGREEMENT.

29.   <u>Certain Definitions</u>.   Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Deed of Trust shall be used interchangeably in singular or plural form and the word "<u>Grantor</u>" shall mean "each Grantor or any subsequent owner or owners of the Trust Property or any part thereof or interest therein," the word "<u>Beneficiary</u>" shall mean "Beneficiary or any successor agent for the Lenders," the word "<u>Trustee</u>" shall mean "Trustee or any successor Trustee," the word "<u>person</u>" shall include any individual, corporation, partnership, limited liability company, trust, unincorporated association, government, governmental authority, or other entity, and the words "<u>Trust Property</u>" shall include any portion of the Trust Property or interest therein. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa. The captions in this Deed of Trust are for convenience or reference only and in no way limit or amplify the provisions hereof.

30.   <u>Maximum Rate of Interest</u>.   Nothing herein contained, nor in any Loan Document or transaction related thereto, shall be construed or so operate as to require Grantor or any person liable for the payment of the Obligations made pursuant to the Credit Agreement, to pay interest in an amount or at a rate greater than the maximum allowed by law. Should any interest or other charges in the nature of the interest paid by Grantor or any parties liable for the payment of the Obligations made pursuant to the Credit Agreement result in the computation or earning of interest in excess of the maximum rate of interest allowed by applicable law, then any and all such excess shall be and the same is hereby waived by the holder hereof, and all such excess shall be automatically credited against and in reduction of the principal balance, and any portion of said excess which exceeds the principal balance shall be paid by the holder hereof to Grantor or any parties liable for the payment of the Obligations made pursuant to the said Credit Agreement, it being the intent of the parties hereto that under no circumstances shall Grantor or any parties liable for the payment of the Obligations hereunder be required to pay interest in excess of the maximum rate allowed by law.

31.   <u>Intentionally Deleted.</u>

32.   <u>Release.</u> (a)   If any of the Trust Property shall be sold, transferred or otherwise disposed of by Grantor in a transaction permitted by the Credit Agreement, such Trust Property shall be automatically released from the Lien of this Deed of Trust without further action on the

part of Grantor, Beneficiary or the Lenders, and shall cease to constitute collateral hereunder, and then Beneficiary, at the request and sole expense of Grantor, shall execute and deliver to Grantor all releases or other documents reasonably necessary or desirable for the release of the Liens created hereby on such Trust Property. No consent of any Qualified Counterparty shall be required for any release of Trust Property pursuant to this Section 32.

(b)    Specifically, upon the sale or transfer thereof, Beneficiary and Lenders agree to release portions of the Trust Property that Trustor has the obligation to transfer to third parties. These release properties include the following:

1.    The "Commercial Site" which consists of Parcel 1 as designated on Parcel Map No. 32971;

2.    The "Future Church Site" which consists of Parcel 3 as designated on Parcel Map No. 32971;

3.    The "Moses Green Parcel" which consists of Lots 151, 152 and 153 of Parcel Map No. 32976 and as depicted on Exhibit "B" attached hereto; and

4.    The "Sandoval Parcels" _described_ as Remainder Parcels on Exhibit "C" attached hereto.

(c)    Upon the sale or transfer thereof, the Commercial Site, Future Church Site, Moses Green Parcel and Sandoval Parcels shall be automatically released from the lien of this Deed of Trust without further action on the part of Grantor, Beneficiary or the Lenders, and shall cease to constitute collateral hereunder and Beneficiary, at the request and sole expense of Grantor, shall execute and deliver to Grantor all releases and other documents reasonably necessary or desirable for the release of the Liens created hereby on such Trust Property. With respect to the Commercial Site, Future Church Site and the Sandoval Parcels, the release shall be subject to the recordation in the official records in compliance with the Subdivision Map Act of Parcel Map No. 32971. With respect to the Moses Green Parcel, the release shall be subject to the recordation in the official records in compliance with the Subdivision Map Act of Parcel Map No. 32976.

(d)    In connection with the release of the Future Church Site, the Church is required to transfer to Grantor certain real property currently owned by the Church and described on Exhibit "D" attached hereto (the "Current Church Property"). Grantor agrees that, upon acquisition of the Current Church Property, and as a condition of the release of the Future Church Site, Grantor shall execute an amendment to this Deed of Trust and all other documents reasonably necessary or desirable to impose the Lien created by the Deed of Trust on such Current Church Property and to make such Current Church Property part of the collateral hereunder.

33.    Trustee's Powers (and Liabilities).    (a) In case of the resignation of the Trustee, or the inability (through death or otherwise), refusal or failure of the Trustee to act, or at the option of Beneficiary or the holder(s) of a majority of the Obligations for any other reason

(which reason need not be stated), a substitute Trustee ("Substitute Trustee") may be named, constituted and appointed by Beneficiary or the holder(s) of a majority of the Obligations, without other formality than an appointment and designation in writing, which appointment and designation shall be full evidence of the right and authority to make the same and of all facts therein recited, and this conveyance shall vest in the Substitute Trustee the title, powers and duties herein conferred on the Trustee originally named herein, and the conveyance of the Substitute Trustee to the purchaser(s) at any sale of the Trust Property of any part thereof shall be equally valid and effective. The right to appoint a Substitute Trustee shall exist as often and whenever from any of said causes, the Trustee, original or substitute, resigns or cannot, will not or does not act, or Beneficiary or the holder(s) of a majority of the Obligations desires to appoint a new Trustee. No bond shall ever be required of the Trustee, original or substitute. The recitals in any conveyance made by the Trustee, original or substitute, shall be accepted and construed in court and elsewhere as prima facie evidence and proof of the facts recited, and no other proof shall be required as to the request by Beneficiary or the holders(s) of a majority of Obligations to the Trustee to enforce this Deed of Trust, or as to the notice of or holding of the sale, or as to any particulars thereof, or as to the resignation of the Trustee, original or substitute, or as to the inability, refusal or failure of the Trustee, original or substitute, to act, or as to the election of Beneficiary or the holder(s) of a majority of the Obligations to appoint a new Trustee, or as to appointment of a Substitute Trustee, and all prerequisites of said sale shall be presumed to have been performed; and each sale made under the powers herein granted shall be a perpetual bar against Grantor and the heirs, personal representatives, successors and assigns of Grantor. Trustee, original or substitute, is hereby authorized and empowered to appoint any one or more persons as attorney-in-fact to act as Trustee under him and in his name, place and stead in order to take any actions that Trustee is authorized and empowered to do hereunder, such appointment to be evidenced by an instrument signed and acknowledged by said Trustee, original or substitute; and all acts done by said attorney-in-fact shall be valid, lawful and binding as if done by said Trustee, original or substitute, in person.

(b)    At any time or from time to time, without liability therefor, and without notice, upon the written request of Beneficiary and presentation of the documents evidencing the Obligations and this Deed of Trust for endorsement, without affecting the liability of any person for the payment of the indebtedness secured hereby, and without affecting the lien of this Deed of Trust upon the Trust Property for the full amount of all amounts secured hereby, upon Beneficiary's request Trustee may (i) release all or any part of the Trust Property, (ii) consent to the making of any map or plat thereof, (iii) join in granting any easement thereon or in creating any covenants or conditions restricting use or occupancy thereof, or (iv) join in any extension agreement or in any agreement subordinating the lien or charge hereof.

(c)    Except for gross negligence or willful misconduct, Trustee shall not be liable for any act or omission or error of judgment. Trustee may rely on any document believed by him in good faith to be genuine. All money received by Trustee shall, until used or applied as herein provided, be held in trust, and Trustee shall not be liable for interest thereon. Grantor shall indemnify Trustee against all liability and expenses that he may incur in the performance of his duties hereunder except for gross negligence or willful misconduct.

34.    Receipt of Copy.  Grantor acknowledges that it has received a true copy of this Deed of Trust.

35.    Additional State Specific Provisions.

(a)    Principles of Construction.  In the event of any inconsistencies between the terms and conditions of this Section 35 and the terms and conditions of this Security Instrument, the terms and conditions of this Section 35 shall control and be binding.

(b)    Additional Remedies Provision.  Grantor hereby authorizes and empowers Beneficiary in its sole discretion, without any notice or demand except as otherwise provided herein or in the other Loan Documents and without affecting the lien and charge of this Security Instrument, to exercise any right or remedy which Beneficiary may have available to it, including, but not limited to, judicial foreclosure, exercise of rights of power of sale without judicial action as to any collateral security for the Obligations, whether real, personal or intangible property.  Grantor expressly waives any defense or benefits that may be available under California Code of Civil Procedure §580 and in its subdivisions, §726, or comparable provisions of the laws of any other state, as well as all suretyship defenses that Grantor may have under California law and the laws of any other state.  Without limiting the foregoing, Grantor specifically agrees that any action maintained by Beneficiary for the appointment of any receiver, trustee or custodian to collect Rents, issues or profits or to obtain possession of the Property shall not constitute an "action" within the meaning of §726 of the California Code of Civil Procedure.

(c)    Power of Sale.

(i)    Should Beneficiary elect to foreclose by exercise of the power of sale contained herein, Beneficiary shall notify Trustee and shall, if required, deposit with Trustee the Credit Agreement, the original or a certified copy of this Security Instrument, and such other documents, receipts and evidences of expenditures made and secured hereby as Trustee may require.  Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded and delivered to Grantor such notice as may then be required by law and by this Security Instrument.  Trustee shall, without demand on Grantor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale has been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate lots or parcels or items as Trustee shall deem expedient, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale.  Trustee shall deliver to the purchaser or purchasers at such sale its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.  Any person, including, without limitation, Grantor, Trustee or any Lender, may purchase at such sale, and Grantor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(ii)    After deducting all costs, fees and expenses of Trustee and of this Security Instrument, including, without limitation, costs of evidence of title and actual and customary attorneys' fees of Trustee or the Lenders in connection with a sale as provided in subparagraph (i) above, Trustee shall apply the proceeds of such sale (a) first, to the payment of all sums expended by the Lenders under the terms of any of the Loan Documents and not yet repaid, together with interest on such sums at the Default Rate as set forth in the Credit Agreement, (b) second, to the payment of all sums expended under the terms hereof not then repaid, with accrued interest at the rate of interest equal to the rate then in effect under the Credit Agreement, or if the Credit Agreement has been repaid, the rate that would have been in effect under the Credit Agreement, (c) third, to the payment of all other sums then secured hereby, and (d) fourth, the remainder, if any, to the person or persons legally entitled thereto.

(d)    Additional Waivers.

(i)    Grantor has read and hereby approves this Security Instrument, the other Loan Documents and all other agreements and documents evidencing or securing the Loan. Grantor acknowledges that it has been represented by counsel of its choice to review this Security Instrument, the other Loan Documents and all other documents evidencing or securing the Loan and said counsel has explained and Grantor understands the provisions thereof, or that Grantor has voluntarily declined to retain such counsel.

(ii)    Grantor hereby expressly waives diligence, demand, presentment, protest and notice of every kind and nature whatsoever (unless as otherwise required under this Security Instrument or the other Loan Documents) and waives any right to require Beneficiary to enforce any remedy against any guarantor, endorser or other Person whatsoever prior to the exercise of its rights and remedies hereunder or otherwise. Grantor waives any right to require Beneficiary to: (i) proceed or exhaust any collateral security given or held by Beneficiary in connection with the Loan; (ii) give notice of the terms, time and place of any public or private sale of any real or personal property security for the Loan or other guaranty of the Loan; or (iii) pursue any other remedy in Beneficiary's power whatsoever.

(iii)    Until all Obligations shall have been paid in full, Grantor: (i) shall not have any right of subrogation to any of the rights of Beneficiary against any guarantor, maker or endorser; (ii) waives any right to enforce any remedy which Beneficiary now has or may hereafter have against any other guarantor, maker or endorser; and (iii) waives any benefit of, and any other right to participate in, any collateral security for the Loan or any guaranty of the Loan now or hereafter held by Beneficiary.

(e)    Right of Rescission. Beneficiary may from time to time rescind any notice of default or notice of sale before any Trustee's sale in accordance with the laws of the State of California. The exercise by Beneficiary of such right of rescission shall not

constitute a waiver of any breach or default then existing or subsequently occurring, or impair the right of Beneficiary to execute and deliver to Trustee, as above provided, other declarations or notices of default to satisfy the obligations of this Security Instrument or secured hereby, nor otherwise affect any provision, covenant or condition of any Loan Document or any of the rights, obligations or remedies of Trustee or Beneficiary hereunder or thereunder.

(f)    Fixture Filing.  This Security Instrument constitutes a fixture filing under the fixture filing provisions of the UCC, Sections 9-313 and 9-402(6) as enacted and under the equivalent statutes in the State of California, as amended or recodified from time to time.

(g)    Border Zone Property.  Grantor represents and warrants that the Property has not been designated as Border Zone Property under the provisions of California Health and Safety Code, Sections 25220 et seq. or any regulation adopted in accordance therewith, and there has been no occurrence or condition on any real property adjoining or in the vicinity of the Property that is reasonably likely to cause the Property or any part thereof to be designated as Border Zone Property.

(h)    Additional Security Agreement Provisions.

(i)    With respect to fixtures, Beneficiary or Trustee may elect to treat same as either real property or personal property and proceed to exercise such rights and remedies applicable to the categorization so chosen.  Beneficiary may proceed against the items of real property and any items of Property separately or together in any order whatsoever, without in any way affecting or waiving Beneficiary's rights and remedies under the Uniform Commercial Code, this Security Instrument or the Credit Agreement.  Grantor acknowledges and agrees that Beneficiary's rights and remedies under this Security Instrument and the Credit Agreement shall be cumulative and shall be in addition to every other right and remedy now or hereafter existing at law, in equity, by statute or by agreement of the parties.

(ii)    Grantor agrees that this Security Instrument constitutes a financing statement filed as a fixture filing in the Official Records of the County in which the Property is located with respect to any and all fixtures included within the term "Land" or "Property" as used herein and with respect to any goods and other personal property that may now be or hereafter become fixtures.  The names and mailing addresses of the debtor (Grantor) and the secured party (Beneficiary) are set forth on the first page of this Security Instrument.  Grantor is the record owner of the Property.  The personal property described above is the collateral covered by this financing statement.  Any reproduction of this Security Instrument or any other security agreement or financing statement shall be sufficient as a financing statement.

(i)    Future Advances.  This Security Instrument shall secure any and all future advances of the proceeds of the Loan made to Grantor by Beneficiary pursuant to the

terms of the Credit Agreement.  This provision shall not constitute an obligation upon or commitment of Beneficiary to make additional advances or loans to Grantor.

This Deed of Trust has been duly executed by Grantor as of the date first set forth above.

**GRANTOR**:

**SUNCAL EMERALD MEADOWS LLC**

By:_____

    Name:        Bruce V. Cook
    Title:        General Counsel

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Orange_

On _July 11, 2007_ before me, _Jason Fry, notary public_
         Date                             Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared _Bruce V. Cook_
                                     Name(s) of Signer(s)

☑ personally known to me

☐ (or proved to me on the basis of satisfactory evidence)

> JASON FRY
> Commission # 1737295
> Notary Public - California
> Orange County
> My Comm. Expires Apr 7, 2011

to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Place Notary Seal Above

_Jason Fry_
Signature of Notary Public

─────────────── **OPTIONAL** ───────────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _____

Document Date: _____ Number of Pages: _____

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

© 2006 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402    Item No. 5907    Reorder: Call Toll-Free 1-800-876-6827

Government Code 27361.7

I certify under the penalty of perjury that the notary seal on
this document read as follows:

Name of Notary:                    Jason Fry

Date Commission Expires:           April 7, 2011

County where bond is Filed:        Orange

Commission No.:                    1737295

Manufacturer/Vendor No.:           NNA1

Place of execution - Newport Beach          Date -  July 18, 2007

**FIDELITY NATIONAL TITLE COMPANY**

<u>Schedule A</u>

<u>Description of the Land</u>

PARCEL 1:

PARCEL 1A:    (APN 178-252-003)

THAT PORTION OF LOT 2 IN BLOCK 11 OF WEST RIVERSIDE IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 9 PAGE 34 OF MAPS, RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE CENTER LINE OF 30TH STREET (SHOWN AS FIRST STREET ON SAID MAP) WITH THE NORTHEASTERLY PROLONGATION OF THE SOUTHEAST LINE OF SAID LOT 2; THENCE NORTHWESTERLY 84.33 FEET ON SAID CENTER LINE OF 30TH STREET TO THE TRUE POINT OF BEGINNING; THENCE NORTHWESTERLY 164.00 FEET, CONTINUING ON SAID CENTER LINE; THENCE SOUTHWESTERLY 530.00 FEET PARALLEL WITH THE SOUTHEAST LINE OF SAID LOT 2, THE SOUTHWEST LINE OF SAID LOT; THENCE SOUTHEASTERLY 164.00 FEET ON SAID SOUTHWEST LINE TO THE INTERSECTION OF A LINE PARALLEL WITH THE SOUTHEAST LINE OF SAID LOT 2 WHICH PASSES THROUGH THE TRUE POINT OF BEGINNING; THENCE NORTHEASTERLY 520.00 FEET ON LAST SAID LINE TO THE TRUE POINT OF BEGINNING.

EXCEPT THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED JULY 27, 1959 AS INSTRUMENT NO. 64776 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 1B:    (APN 178-252-004)

THAT PORTION OF LOT 2 IN BLOCK 11 OF WEST RIVERSIDE IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 9 PAGE 34 OF MAPS, RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE CENTER LINE OF 30TH STREET (SHOWN AS FIRST STREET ON SAID MAP) WITH THE NORTHEASTERLY PROLONGATION OF THE SOUTHEAST LINE OF SAID LOT 2; THENCE NORTHWESTERLY 84.33 FEET ON SAID CENTER LINE OF 30TH STREET; THENCE SOUTHWESTERLY 520.00 FEET PARALLEL WITH THE SOUTHEAST LINE OF SAID LOT 2 TO THE SOUTHWEST LINE OF SAID LOT; THENCE SOUTHEASTERLY 84.33 FEET ON SAID SOUTHWEST LINE TO THE MOST SOUTHERLY CORNER OF SAID LOT 2; THENCE NORTHEASTERLY 516.50 FEET ON THE SOUTHEAST LINE OF SAID LOT, PROLONGED NORTHEASTERLY, TO THE POINT OF BEGINNING.

PARCEL 2:    (APN 178-261-001)

ALL THAT PORTION OF LOT 1 IN BLOCK 11 OF WEST RIVERSIDE, AS SHOWN BY MAP ON FILE IN BOOK 9, PAGE 34 OF MAPS, SAN BERNARDINO COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEASTERLY CORNER OF LOT 1 WITH THE WESTERLY LINE OF 30TH STREET (FORMERLY FIRST STREET); THENCE SOUTHEASTERLY ALONG THE SOUTHWESTERLY LINE OF SAID 30TH STREET, A DISTANCE OF 426.5 FEET; THENCE SOUTHWESTERLY AT RIGHT ANGLES TO 30TH STREET, A DISTANCE OF 440.69 FEET, MORE OR LESS, TO THE SOUTHWESTERLY LINE OF LOT 1; THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY LINE OF LOT 1, A DISTANCE OF 426.50 FEET, MORE OR LESS, TO THE NORTHWEST CORNER OF LOT 1; THENCE

3

NORTHEASTERLY ALONG THE NORTHWESTERLY LINE OF LOT 1, A DISTANCE OF 483.50 FEET TO THE POINT OF BEGINNING.

PARCEL 3:          (APN 178-261-002)

THE SOUTHERLY 4.00 ACRES OF LOT 1 IN BLOCK 11 OF WEST RIVERSIDE IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP RECORDED IN BOOK 9, PAGE 34 OF MAPS, RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA AND DESCRIBED AS FOLLOWS:

BEGINNING ON THE SOUTHWESTERLY LINE OF FIRST STREET, AT A POINT 426.50 FEET SOUTHEASTERLY FROM THE MOST NORTHERLY CORNER OF SAID LOT 1; THENCE RUNNING SOUTHWESTERLY AT RIGHT ANGLES TO FIRST STREET, THROUGH SAID LOT TO THE SOUTHWESTERLY LINE OF SAID LOT 1; THENCE SOUTHEASTERLY ON THE SOUTHWESTERLY LINE TO THE MOST SOUTHERLY CORNER OF SAID LOT 1; THENCE EASTERLY AND NORTHERLY ALONG THE MEANDERINGS OF THE SOUTHEASTERLY SIDE OF SAID LOT 1 TO THE MOST EASTERLY CORNER THEREOF ON THE SOUTHWESTERLY LINE OF FIRST STREET; THENCE NORTHWESTERLY ON THE SOUTHWESTERLY LINE OF FIRST STREET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION CONVEYED BY FRED. A BAUMANN AND MINNIE BAUMANN, HIS WIFE, TO THE JURUPA DITCH COMPANY, A CORPORATION, BY DEED RECORDED IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, STATE OF CALIFORNIA, IN BOOK 149, PAGE 122 OF DEEDS, SAID EXCEPTED PORTION BEING DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHWESTERLY LINE OF FIRST STREET, AT THE MOST EASTERLY CORNER OF SAID LOT 1; THENCE NORTHWESTERLY ON THE SOUTHWESTERLY LINE OF FIRST STREET, TO A POINT FROM WHICH A LINE DRAWN AT RIGHT ANGLES TO FIRST STREET, IN A SOUTHWESTERLY DIRECTION, WOULD INTEREST THE COURSE LINE OF SAID LOT RUNNING SOUTH 75° 37' WEST, WHEN EXTENDED 15.00 FEET INTO SAID LOT 1; THENCE AT RIGHT ANGLES TO SAID WESTERLY LINE OF FIRST STREET, IN A SOUTHWESTERLY DIRECTION TO THE INTERSECTION OF SUCH LINE RUNNING SOUTHWESTERLY AT RIGHT ANGLES TO FIRST STREET WITH THE COURSE LINE OF SAID LOT 1, RUNNING SOUTH 75° 37' WEST, WHEN EXTENDED 15.00 FEET INTO SAID LOT 1; THENCE SOUTHWESTERLY PARALLEL WITH THE COURSE LINE OF SAID LOT 1, RUNNING SOUTH 05° 55' WEST TO THE INTERSECTION OF SUCH PARALLEL LINE WITH THE COURSE LINE OF SAID LOT 1 RUNNING SOUTH 66° 22' WEST; THENCE EASTERLY AND NORTHERLY ALONG THE MEANDERINGS OF THE SOUTHEASTERLY SIDE OF SAID LOT 1 TO THE POINT OF BEGINNING.

PARCEL 4:          (APN 178-262-002)

THAT PORTION OF LOT 1 IN BLOCK 25 OF WEST RIVERSIDE, AS PER MAP RECORDED IN BOOK 9 PAGE 34 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 1; THENCE SOUTH 53° 00' 00" EAST 330.00 FEET TO THE MOST EASTERLY CORNER OF THE LAND DESCRIBED IN DEED TO JOSEPHINE F. BRIDSON RECORDED FEBRUARY 16, 1917 IN BOOK 454, PAGE 387 OF DEEDS; THENCE SOUTH 37° 00' 00" WEST 619.30 FEET ON THE SOUTHEAST LINE OF SAID LAND TO THE TRUE POINT OF BEGINNING; THENCE SOUTH 53° 00' 00" EAST 394.07 FEET, PARALLEL WITH SAID NORTHEAST LINE OF LOT 1 TO THE CENTER LINE OF "C" STREET; THENCE SOUTH 64° 53' 00" WEST 195.33 FEET ON SAID CENTERLINE OF "C" STREET TO THE CENTER LINE OF FIRST STREET; THENCE NORTH 53° 00' 00" WEST 302.69 FEET ON LAST SAID CENTERLINE TO THE MOST SOUTHERLY CORNER OF SAID LAND DESCRIBED IN DEED TO JOSEPHINE F. BRIDSON; THENCE NORTH 37° 00' 00" EAST 172.70 FEET ON THE SOUTHEAST LINE OF SAID LAND TO THE TRUE POINT OF BEGINNING.

4

EXCEPT THOSE PORTIONS IN SAID "C" STREET AND SAID FIRST STREET.

PARCEL 5:            (APN 178-262-001)

PARCEL 5A:

THAT PORTION OF LOT 1 IN BLOCK 25 OF WEST RIVERSIDE, AS SHOWN BY MAP ON FILE IN BOOK 9 PAGE 34 OF MAPS, RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT; THENCE SOUTH 53° EAST ON THE NORTHEASTERLY LINE OF SAID LOT, TO THE INTERSECTION WITH A LINE DRAWN PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT, AND AT SUCH A DISTANCE FROM SAID NORTHWESTERLY LINE AS WILL INCLUDE IN THIS DESCRIPTION 6 ACRES OF LAND, NO MORE OR LESS; THENCE SOUTH 37° WEST ON SAID LINE DRAWN PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT, 792 FEET, MORE OR LESS, TO THE CENTER LINE OF FIRST STREET; THENCE NORTH 53° WEST ON THE CENTER LINE OF FIRST STREET, TO THE INTERSECTION WITH THE NORTHWESTERLY LINE OF SAID LOT EXTENDED SOUTHWESTERLY; THENCE NORTH 37° EAST ON THE NORTHWESTERLY LINE OF SAID LOT TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM AN EASEMENT IN FAVOR OF THE PUBLIC OVER THAT PORTION INCLUDED IN FIRST STREET.

ALSO EXCEPTING THEREFROM THE FOLLOWING DESCRIBED PORTION:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID LOT 1; THENCE ALONG THE NORTHWESTERLY LINE OF SAID LOT, 1 SOUTH 37° 35' 34" WEST, 650.54 FEET; THENCE NORTH 84° 41' 12" EAST 450.53 FEET TO THE SOUTHEASTERLY LINE OF THAT CERTAIN PARCEL OF LAND AS CONVEYED TO JOSEPHINE F. BRIDSON BY DEED RECORDED FEBRUARY 16, 1917 IN BOOK 454 PAGE 387 OF DEEDS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE ALONG SAID SOUTHEASTERLY LINE NORTH 37° 35' 34" EAST 344.26 FEET TO THE NORTHEASTERLY LINE OF SAID LOT 1; THENCE ALONG SAID NORTHEASTERLY LINE NORTH 52° 28' 59" WEST 330 FEET TO THE POINT OF BEGINNING.

PARCEL 5B:

THAT PORTION OF LOT 4 IN BLOCK 25 OF WEST RIVERSIDE, AS SHOWN BY MAP ON FILE IN BOOK 9 PAGE 34 OF MAPS, RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT 4, BEING A POINT IN THE CENTER LINE OF FIRST STREET, AS SHOWN ON SAID MAP; THENCE ALONG THE SOUTHEASTERLY LINE OF SAID LOT, NORTH 37° 35' 34" EAST 141.59 FEET TO A POINT DISTANT ALONG SAID SOUTHEASTERLY LINE SOUTH 37° 35' 34" WEST 650.54 FEET FROM THE MOST EASTERLY CORNER OF SAID LOT 4; THENCE COURSE "A", SOUTH 84° 41' 12" WEST 95.98 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVE EASTERLY AND HAVING A RADIUS OF 25.00 FEET, AND WHICH CURVE IS TANGENT AT ITS SOUTHERLY TERMINUS WITH THE NORTHEASTERLY LINE OF SAID FIRST STREET; THENCE COURSE "B", SOUTHERLY ALONG SAID CURVE, THROUGH AN ANGLE OF 137° 09' 55", AN ARC DISTANCE OF 59.85 FEET TO SAID NORTHEASTERLY LINE OF FIRST STREET; THENCE AT RIGHT ANGLES TO SAID NORTHEASTERLY LINE SOUTH 37° 31' 17" WEST 33.00 FEET TO SAID CENTER LINE OF FIRST STREET; THENCE ALONG SAID CENTER LINE SOUTH 52° 28' 43" EAST 53.21 FEET TO THE POINT OF BEGINNING.

5

EXCEPTING THEREFROM AN EASEMENT IN FAVOR OF THE PUBLIC OVER THAT PORTION INCLUDED WITHIN THE LINES OF SAID FIRST STREET.

PARCEL 6:          (APN 178-262-003)

THAT PORTION OF LOT 1, BLOCK 25 OF WEST RIVERSIDE, AS SHOWN BY A MAP ON FILE IN BOOK 9 PAGE 34, OF MAPS, RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT ON THE NORTHEASTERLY LINE OF SAID LOT 1, WHICH BEARS SOUTH 53° 00' EAST, A DISTANCE OF 330.0 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT 1; THENCE SOUTH 37° 00' WEST AND PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT 1, A DISTANCE OF 515.93 FEET TO THE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE DESCRIBED; THENCE SOUTH 53° 00' EAST AND PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT 1, A DISTANCE OF 448.76 FEET TO A POINT IN THE CENTER LINE OF C STREET; THENCE SOUTH 64° 53' WEST ALONG THE CENTER LINE OF C STREET, A DISTANCE OF 116.95 FEET; THENCE NORTH 53° 00' WEST AND PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT 1, A DISTANCE OF 394.07 FEET; THENCE NORTH 37° 00' EAST AND PARALLEL WITH NORTHWESTERLY LINE OF SAID LOT 1, A DISTANCE OF 103.37 FEET, TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THAT PORTION INCLUDED IN C STREET.

PARCEL 7:          (APN 178-262-004)

THAT PORTION OF LOT 1, BLOCK 25 OF WEST RIVERSIDE, AS SHOWN ON A MAP ON FILE IN MAP BOOK 9, AT PAGE 34 THEREOF, RECORDS OF THE RECORDER'S OFFICE OF SAN BERNARDINO, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT ON THE NORTHEASTERLY LINE OF SAID LOT 1, WHICH BEARS SOUTH 53° 00' EAST, A DISTANCE OF 330 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT 1; THENCE SOUTH 37° 00' WEST AND PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT 1, A DISTANCE OF 327 FEET, TO THE POINT OF BEGINNING OF THE PARCEL OF LAND TO BE DESCRIBED; THENCE SOUTH 53° 00' EAST AND PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT 1, A DISTANCE OF 462 FEET, TO A POINT IN THE CENTER LINE OF C STREET; THENCE SOUTH 37° 00' WEST ALONG THE CENTER LINE OF C STREET, A DISTANCE OF 163.9 FEET; THENCE SOUTH 64° 53' WEST ALONG THE CENTER LINE OF C STREET, A DISTANCE OF 28.22 FEET; THENCE NORTH 53° 00' WEST AND PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT 1, A DISTANCE OF 448.76 FEET; THENCE NORTH 37° 00' EAST AND PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT 1, A DISTANCE OF 188.93 FEET, TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION INCLUDED IN C STREET.

ALSO EXCEPT THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED JUNE 22, 1959 AS INSTRUMENT NO. 54300, OFFICIAL RECORDS.

PARCEL 8:          (APN 178-290-005)

THAT PORTION OF LOT 2, AS SHOWN BY THE AMENDED MAP OF INDIAN HILL TRACT RECORDED IN BOOK 10 OF MAPS, PAGE 3, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE SOUTHEASTERLY PROLONGATION OF THE NORTHEASTERLY LINE OF SECOND STREET, DISTANT ALONG SAID PROLONGATION, SOUTH 52° 37' 12" EAST 29.30 FEET FROM THE COMMON CORNER OF LOTS "A" AND 2, AS SAID STREET AND LOTS ARE SHOWN ON SAID MAP; THENCE ALONG SAID PROLONGATION, SOUTH 52° 37' 12" EAST 310.70 FEET TO THE MOST SOUTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND DESCRIBED AS PARCEL 4 IN DEED TO THE STATE OF CALIFORNIA RECORDED JUNE 7, 1957, IN BOOK 2100 OF OFFICIAL RECORDS, PAGE 151, IN SAID RECORDER'S OFFICE; THENCE ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL 4, NORTH 37° 22' 48" EAST 183.80 FEET; THENCE NORTH 83° 13' 39" WEST 361.01 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM ALL WATER PERCOLATING OR FLOWING, OR BENEATH THE SURFACE THEREOF, AS RESERVED IN DEED FROM S. C. EVANS AND MARY S. EVANS, HIS WIFE, RECORDED MARCH 5, 1928, IN BOOK 722 OF DEEDS, PAGE 172, IN SAID RECORDER'S OFFICE.

PARCEL 9:          (APN 178-300-001)

THAT PORTION OF LOT 13 OF THE RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 5, PAGE 116 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 13; THENCE NORTH 37° 00' EAST, ALONG THE NORTHWESTERLY LINE OF SAID LOT 13, BEING THE SOUTHEASTERLY LINE OF "C" STREET, A DISTANCE OF 63.00 FEET; THENCE SOUTH 53° 00' EAST, AND PARALLEL WITH THE SOUTHWESTERLY LINE OF SAID LOT 13, A DISTANCE OF 112.47 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF SAID LOT 13; THENCE SOUTH 74° 00' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LOT 13, A DISTANCE OF 78.88 FEET, TO THE MOST SOUTHERLY CORNER OF SAID LOT 13; THENCE NORTH 53° 00' WEST, ALONG THE SOUTHWESTERLY LINE OF SAID LOT 13, A DISTANCE OF 65.00 FEET, TO THE POINT OF BEGINNING.

PARCEL 10:          (APN 178-300-002)

THAT PORTION OF LOT 13 OF THE RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE(S) 116 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT WHICH BEARS NORTH 37° 00' EAST A DISTANCE OF 63 FEET FROM THE MOST WESTERLY CORNER OF SAID LOT 13; THENCE NORTH 37° 00' EAST, ALONG THE NORTHWESTERLY LINE OF SAID LOT 13, BEING THE SOUTHEASTERLY LINE OF "C" STREET, A DISTANCE OF 60.00 FEET; THENCE SOUTH 53° 00' EAST, AND PARALLEL WITH THE SOUTHWESTERLY LINE OF SAID LOT 13, A DISTANCE OF 157.68 FEET TO A POINT ON THE SOUTHEASTERLY LINE OF SAID LOT 13; THENCE SOUTH 74° 00' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LOT 13, A DISTANCE OF 75.13 FEET; THENCE NORTH 53° 00' WEST, A DISTANCE OF 112.47 FEET TO THE POINT OF BEGINNING.

PARCEL 11:          (APN 178-300-003)

THAT PORTION OF LOT 13 OF RIVERSIDE LAND AND IRRIGATING COMPANY, TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 13 THAT BEARS NORTH 37°
EAST, 123.00 FEET FROM THE MOST WESTERLY CORNER THEREOF; THENCE NORTH 37° EAST ON
THE NORTHWESTERLY LINE OF SAID LOT, 175.00 FEET, MORE OR LESS, TO THE MOST WESTERLY
CORNER OF SAID PARCEL OF LAND CONVEYED TO OLIVER WILSON, ET UX, BY DEED FROM IZOLA
MAYFIELD RECORDED JANUARY 26, 1951 AS INSTRUMENT NO. 3917 OF OFFICIAL RECORDS OF
RIVERSIDE COUNTY, CALIFORNIA; THENCE SOUTH 53° EAST ON THE SOUTHWESTERLY LINE OF
SAID PARCEL CONVEYED TO WILSON, 303.15 FEET, MORE OR LESS, TO A POINT ON THE
SOUTHEASTERLY LINE OF SAID LOT 13; THENCE SOUTH 74° WEST ON THE SOUTHEASTERLY LINE
OF SAID LOT, 220.00 FEET, MORE OR LESS, TO THE SOUTHEASTERLY CORNER OF THAT CERTAIN
PARCEL OF LAND CONVEYED TO DANIEL R. HOLLIS, ET UX, BY DEED FROM IZOLA MAYFIELD
RECORDED FEBRUARY 25, 1952 IN BOOK 1344, PAGE 363 OF OFFICIAL RECORDS OF RIVERSIDE
COUNTY, CALIFORNIA; THENCE NORTH 53° WEST ON THE NORTHWESTERLY LINE OF SAID
PARCEL CONVEYED TO HOLLIS, 157.68 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

PARCEL 12:            (APN 178-300-004)

THAT PORTION OF LOT 13 OF RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, AS
SHOWN BY MAP ON FILE IN BOOK 5 PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY,
CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWEST LINE OF SAID LOT 13, BEING A POINT ON THE
EASTERLY LINE OF "C" STREET OF WEST RIVERSIDE, WHICH BEARS SOUTH 37° 00' WEST, A
DISTANCE OF 795.74 FEET, FROM THE MOST NORTHERLY CORNER OF SAID LOT 13; THENCE
SOUTH 53° 00' EAST, A DISTANCE OF 348.36 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF
SAID LOT 13; THENCE SOUTH 74° 00' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LOT 13, A
DISTANCE OF 75.13 FEET; THENCE NORTH 53° 00' WEST, A DISTANCE OF 303.15 FEET, TO A POINT
ON THE NORTHWESTERLY LINE OF SAID LOT 13, THENCE NORTH 37° 00' EAST, ALONG THE
NORTHWESTERLY LINE OF SAID LOT 13, A DISTANCE OF 60.00 FEET, TO THE POINT OF BEGINNING.

PARCEL 13:            (APN 178-300-005)

THAT PORTION OF LOT 13 OF RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT,
COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5, PAGE 116 OF
MAPS, RECORDS OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 13, BEING A POINT ON THE
EASTERLY LINE OF "C" STREET OF WEST RIVER, WHICH BEARS SOUTH 37° 00' WEST, A DISTANCE
OF 684.00 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT 13; THENCE SOUTH 53° 00'
EAST, A DISTANCE OF 432.56 FEET TO A POINT ON THE SOUTHEASTERLY LINE OF SAID LOT 13;
THENCE SOUTH 74° 00' WEST ALONG SOUTHEASTERLY LINE OF SAID LOT 13, A DISTANCE OF
139.91 FEET; THENCE NORTH 53° 00' WEST, A DISTANCE OF 348.36 FEET TO A POINT ON THE
NORTHWESTERLY LINE OF SAID LOT 13; THENCE NORTH 37° 00' EAST ALONG THE
NORTHWESTERLY LINE OF SAID LOT 13, A DISTANCE OF 111.74 FEET TO THE POINT OF
BEGINNING.

EXCEPTING THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA BY DEED
RECORDED NOVEMBER 13, 1959 AS INSTRUMENT NO. 96824.

PARCEL 14:            (APN 178-300-006)

THAT PORTION OF LOT 13 OF RIVERSIDE LAND & IRRIGATING COMPANY'S TURBINE TRACT, AS
SHOWN BY MAP ON FILE IN BOOK 5 PAGE 116 OF MAPS, RIVERSIDE COUNTY RECORDS,
DESCRIBED AS FOLLOWS:

8

COMMENCING AT A POINT ON THE NORTHWESTERLY LINE OF LOT 13, BEING A POINT ON THE EASTERLY LINE OF HALL STREET OF WEST RIVERSIDE, WHICH BEARS SOUTH 37° 0' WEST 582 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT 13; THENCE SOUTH 53° 0' EAST 187.95 FEET TO THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED JULY 23, 1959 AS INSTRUMENT NO. 63725; THENCE SOUTH 70° 38' 03" WEST TO A POINT LOCATED 15 FEET, MEASURED AT RIGHT ANGLES, TO THE NORTHEASTERLY LINE OF THAT CERTAIN PARCEL CONVEYED TO PERCY STRICKLAND, JR., BY DEED RECORDED DECEMBER 5, 1950 IN BOOK 1225, PAGE 328, OFFICIAL RECORDS, AND THE QUITCLAIM DEED RECORDED AUGUST 24, 1955 IN BOOK 1785, PAGE 225, BOTH OF OFFICIAL RECORDS, THE TRUE POINT OF BEGINNING; THENCE SOUTH 53° 0' EAST 123 FEET; THENCE SOUTH 37° 0' WEST 87 FEET TO THE SOUTHWESTERLY LINE OF THE PARCEL CONVEYED TO PERCY STRICKLAND, JR., ABOVE REFERRED TO; THENCE NORTH 53° 0' WEST ON SAID SOUTHWESTERLY LINE 180 FEET, MORE OR LESS, TO THE MOST SOUTHERLY CORNER OF THE PARCEL CONVEYED TO THE STATE OF CALIFORNIA ABOVE REFERRED TO; THENCE NORTH 70° 38' 03" EAST ON THE SOUTHEASTERLY LINE OF SAID PARCEL 106.61 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

PARCEL 15:          (APN 178-300-007)

THAT PORTION OF LOT 13 OF THE RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHWESTERLY LINE OF LOT 13, BEING A POINT ON THE EASTERLY LINE OF HALL STREET OF WEST RIVERSIDE, WHICH BEARS SOUTH 37° 00' WEST, A DISTANCE OF 582.00 FEET, FROM THE MOST NORTHERLY CORNER OF SAID LOT 13; THENCE SOUTH 53° 00' EAST, A DISTANCE OF 408.02 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF SAID LOT 13; THENCE SOUTH 13° 00' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LOT 13, A DISTANCE OF 92.59 FEET; THENCE SOUTH 74° 00' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LOT 13, A DISTANCE OF 21.80 FEET; THENCE NORTH 53° 00' WEST, A DISTANCE OF 432.66 FEET TO A POINT ON THE NORTHWESTERLY LINE OF SAID LOT 13; THENCE NORTH 37° 00' EAST, ALONG THE NORTHWESTERLY LINE OF SAID LOT 13, A DISTANCE OF 102.00 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION OF SAID LAND CONVEYED TO THE STATE OF CALIFORNIA BY GRANT DEED RECORDED JULY 23, 1959 AS INSTRUMENT NO. 63725, IN BOOK 2515, PAGE 40, OFFICIAL RECORDS.

FURTHER EXCEPTING THEREFROM THAT PORTION OF LOT 13 OF THE RIVERSIDE LAND & IRRIGATING COMPANY'S TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, RIVERSIDE COUNTY RECORDS, DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT ON THE NORTHWESTERLY LINE OF LOT 13, BEING A POINT ON THE EASTERLY LINE OF HALL STREET OF WEST RIVERSIDE WHICH BEARS SOUTH 37° 0' WEST, 582.00 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT 13; THENCE SOUTH 53° 0' EAST 187.95 FEET TO THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED JULY 23, 1959 AS INSTRUMENT NO. 63725; THENCE SOUTH 70° 38' 03" WEST TO A POINT LOCATED 15.00 FEET, MEASURED AT RIGHT ANGLES, TO THE NORTHEASTERLY LINE OF THAT CERTAIN PARCEL CONVEYED TO PERCY STRICKLAND, JR., BY DEED RECORDED DECEMBER 5, 1950 IN BOOK 1225, PAGE 328 OF OFFICIAL RECORDS AND THE QUITCLAIM DEED RECORDED AUGUST 24, 1955 IN BOOK 1785, PAGE 225, BOTH OF OFFICIAL RECORDS, THE TRUE POINT OF BEGINNING; THENCE SOUTH 53° 0' EAST 123.00 FEET; THENCE

9

SOUTH 37° 0' WEST 87.00 FEET TO THE SOUTHWESTERLY LINE OF THE PARCEL CONVEYED TO PERCY STRICKLAND, JR., ABOVE REFERRED TO; THENCE NORTH 53° 0' WEST ON SAID SOUTHWESTERLY LINE 180.00 FEET, MORE OR LESS, TO THE MOST SOUTHERLY CORNER OF THE PARCEL CONVEYED TO THE STATE OF CALIFORNIA ABOVE REFERRED TO; THENCE NORTH 70° 38' 03" EAST ON THE SOUTHEASTERLY LINE OF SAID PARCEL 106.61 FEET, MORE OR LESS, TO THE TRUE POINT OF BEGINNING.

PARCEL 16:        (APN 178-300-008)

THAT PORTION OF LOT 13 OF RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5, PAGE 116, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS: .

BEGINNING AT THE MOST SOUTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED JANUARY 18, 1961 AS INSTRUMENT NO. 4358, IN BOOK 2833, PAGE 301 OF OFFICIAL RECORDS;

THENCE NORTHWESTERLY ALONG THE SOUTHWESTERLY LINE OF SAID PARCEL OF LAND, 218.14 FEET TO THE SOUTHERLY LINE OF A CONNECTING ROAD SHOWN AS SEGMENT "S" ON "DETAIL MAP OF RELINQUISHMENT" ON FILE IN BOOK 3, PAGE 37 OF STATE HIGHWAY MAPS, RECORDS OF SAID COUNTY;

THENCE EASTERLY ALONG SAID SOUTHERLY LINE, 124.99 FEET TO THE BEGINNING OF A TANGENT CURVE, CONCAVE SOUTHERLY AND HAVING A RADIUS OF 700 FEET;

THENCE EASTERLY ALONG SAID CURVE, 108.24 FEET TO THE SOUTHEASTERLY LINE OF SAID LOT;

THENCE SOUTHWESTERLY ALONG SAID SOUTHEASTERLY LINE, 208.54 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL OIL, GAS, MINERALS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS PROVIDED IN DEED RECORDED APRIL 28, 1964, INSTRUMENT NO. 52474, OF OFFICIAL RECORDS.

PARCEL 17:        (APN 178-310-001)

THAT PORTION OF LOT 4 OF THE TURBINE TRACT, IN THE CITY OF RIVERSIDE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER RECORDED IN MAP BOOK 5 PAGE 116, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WHICH LIES NORTHERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING AT A POINT IN THE WEST LINE OF SAID LOT 4 WHICH BEARS NORTH 11° 30' 00" WEST 85.61 FEET FROM THE ANGLE POINT SHOWN AS STATION 6 ON SAID MAP; SAID POINT OF BEGINNING BEING ALSO THE MOST NORTHERLY CORNER OF THE LAND DESCRIBED IN THE DEED TO HENRY L. BORDERS, ET UX, RECORDED MAY 24, 1959 AS INSTRUMENT NO. 44110, OFFICIAL RECORDS, THENCE SOUTH 73° 08' 50" EAST 427.63 FEET ALONG THE NORTH LINE OF SAID LAND TO THE EAST LINE OF SAID LOT 4.

EXCEPT THAT PORTION THEREOF LYING NORTHERLY AND EASTERLY OF THE SOUTHERLY AND WESTERLY LINE OF THAT CERTAIN PARCEL CONVEYED TO THE STATE OF CALIFORNIA FOR FREEWAY PURPOSES BY DEED RECORDED DECEMBER 22, 1959 AS INSTRUMENT NO. 108047.

ALSO EXCEPT THAT PORTION THEREOF DESCRIBED AS FOLLOWS:

COMMENCING AT AN ANGLE POINT ON THE EASTERLY LINE OF SAID LOT, SHOWN AS STATION 39 ON SAID MAP; THENCE NORTH 13° 45' EAST ALONG THE EASTERLY LINE OF SAID LOT, 138.33 FEET FOR THE TRUE POINT OF BEGINNING; THENCE CONTINUING NORTH 13° 45' EAST ALONG THE EASTERLY LINE OF SAID LOT, 80 FEET; THENCE NORTH 73° 08' 50" WEST 150 FEET; THENCE SOUTH 13° 45' WEST, 80 FEET; THENCE SOUTH 73° 08' 50" EAST, 150 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 18:          (APN 178-310-002)

THAT PORTION OF LOT 4 OF THE TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5 PAGE 116 OF MAPS, RIVERSIDE COUNTY RECORDS, PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT AN ANGLE POINT ON THE EASTERLY LINE OF SAID LOT, SHOWN AS STATION 39 ON SAID MAP; THENCE NORTH 13° 45' EAST ALONG THE EASTERLY LINE OF SAID LOT, 138.33 FEET FOR THE TRUE POINT OF BEGINNING; THENCE CONTINUING NORTH 13° 45' EAST ALONG THE EASTERLY LINE OF SAID LOT, 80 FEET; THENCE NORTH 73° 08' 50" WEST, 150.00 FEET; THENCE SOUTH 13° 45' WEST, 80 FEET; THENCE SOUTH 73° 08' 50" EAST, 150 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 19:          (APN 178-310-003)

**INTENTIONALLY DELETED**

PARCEL 20:          (APN 178-310-004)

ALL THAT PORTION OF LOT 4 OF THE TURBINE TRACT IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 5 OF MAPS, PAGE 116, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEASTERLY CORNER OF SAID LOT 4; THENCE NORTH 9° 00' WEST ALONG THE EASTERLY LINE OF SAID LOT 4, A DISTANCE OF 325 FEET TO THE POINT OF BEGINNING OF THE PARCEL TO BE DESCRIBED; THENCE CONTINUING NORTH 9° 00' WEST ALONG THE EASTERLY LINE OF SAID LOT 4, A DISTANCE OF 75.00 FEET; THENCE NORTH 81° 38' 40" WEST, A DISTANCE OF 405.97 FEET TO A POINT ON THE NORTHWESTERLY LINE OF SAID LOT; THENCE SOUTH 32° 00' WEST, ALONG THE NORTHWESTERLY LINE OF SAID LOT, A DISTANCE OF 64.00 FEET; THENCE SOUTH 45° 00' WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 4, A DISTANCE OF 55.00 FEET; THENCE SOUTH 55° 00' WEST ALONG THE NORTHWESTERLY LINE OF SAID LOT 4, A DISTANCE OF 31.00 FEET; THENCE SOUTH 42° 40' EAST A DISTANCE OF 2.75 FEET; THENCE SOUTH 87° 44' 20" EAST, A DISTANCE OF 510.12 FEET TO THE POINT OF BEGINNING.

PARCEL 21:

PARCEL 21A:    (APN 178-310-005, 006, AND 008)

THAT PORTION OF LOT 4 OF TURBINE TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 5, PAGE 116 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT 4; THENCE NORTH 41° 50' 19" WEST, 740.60 FEET ON THE SOUTHWESTERLY LINE OF SAID LOT 4 TO STATION 14 AS SHOWN ON SAID MAP; THENCE NORTH 79° 48' 18" EAST, 98.87 FEET TO STATION 13 AS SHOWN ON SAID MAP; THENCE NORTH 81° 06' 08" EAST, 143.81 FEET TO STATION 12 AS SHOWN ON SAID MAP; THENCE

NORTH 68° 11' 46" EAST, 173.03 FEET TO STATION 11 AS SHOWN ON SAID MAP; THENCE NORTH 69°
48' 48" EAST, 94.04 FEET TO STATION 10 AS SHOWN ON SAID MAP; THENCE NORTH 56° 26' 55" EAST,
63.00 FEET TO THE MOST WESTERLY CORNER OF THE LAND DESCRIBED IN DEED TO ARTHUR L.
WHITLEY AND WIFE, RECORDED AUGUST 19, 1959 AS INSTRUMENT NO. 72092 OF OFFICIAL
RECORDS; THENCE SOUTH 41° 50' 19" EAST 2.75 FEET; THENCE SOUTH 86° 57' 26" EAST 509.74 FEET
ON THE SOUTHERLY LINE OF THE LAND DESCRIBED IN SAID DEED TO WHITLEY, TO A POINT ON
THE EASTERLY LINE OF SAID LOT 4; THENCE SOUTH 08° 11' 52" EAST, 325.00 FEET ON SAID
EASTERLY LINE TO THE MOST EASTERLY CORNER OF SAID LOT 4; THENCE SOUTH 58° 25' 01"
WEST, 713.42 FEET ON THE SOUTHEASTERLY LINE OF SAID LOT 4 TO THE POINT OF BEGINNING.

PARCEL 21B:   (APN 178-310-023, 179-310-001, 004, AND 179-340-001)

THAT PORTION OF LOT 2 OF AMENDED MAP OF INDIAN HILL TRACT, IN THE COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10, PAGE 3 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST EASTERLY CORNER OF THE LAND DESCRIBED IN DEED TO THE
CITIZENS NATIONAL TRUST AND SAVINGS BANK OF RIVERSIDE RECORDED MAY 12, 1949 IN BOOK
1075, PAGE 538 OF OFFICIAL RECORDS, SAID POINT ALSO BEING ON THE WESTERLY LINE OF THE
LAND DESCRIBED IN THE DEED TO THE CITY OF RIVERSIDE RECORDED MAY 6, 1949 IN BOOK 1074,
PAGE 193 OF OFFICIAL RECORDS, THE BEARING OF THE NORTHEASTERLY LINE OF SAID LAND
DESCRIBED IN SAID DEED TO CITIZENS NATIONAL TRUST AND SAVINGS BANK BEING SOUTH 52°
34' 10" EAST FOR THE PURPOSES OF THIS DESCRIPTION; THENCE NORTH 37° 26' 50" EAST 55.00
FEET; THENCE NORTH 45° 49' 50" EAST 60.00 FEET; THENCE NORTH 51° 53' 50" EAST 128.00 FEET;
THENCE NORTH 56° 22' 50" EAST 84.00 FEET; THENCE NORTH 67° 19' 50" EAST 84.88 FEET TO A
POINT ON THE SOUTHERLY LINE OF THE LAND DESCRIBED IN THE DEED TO THE STATE OF
CALIFORNIA RECORDED JULY 10, 1957 IN BOOK 2116, PAGE 213 OF OFFICIAL RECORDS, SAID
POINT BEING ON A CURVE CONCAVE SOUTHERLY AND HAVING A RADIUS OF 8,000.00 FEET, A
RADIAL LINE OF SAID CURVE TO SAID POINT BEARS NORTH 10° 52' 04" EAST; THENCE EASTERLY,
ON SAID CURVE, THROUGH A CENTRAL ANGLE OF 05° 34' 17" AN ARC DISTANCE OF 777.90 FEET TO
A POINT OF COMPOUND CURVATURE WITH A CURVE IN SAID SOUTHERLY LINE BEING CONCAVE
SOUTHERLY AND HAVING A RADIUS OF 7,375.00 FEET; THENCE EASTERLY ON SAID SOUTHERLY
LINE AND SAID LAST MENTIONED CURVE, THROUGH A CENTRAL ANGLE OF 01° 03' 50" AN ARC
DISTANCE OF 136.94 FEET TO A POINT FROM WHICH A RADIAL OF SAID LAST MENTIONED CURVE
BEARS NORTH 17° 30' 11" EAST; THENCE SOUTH 35° 38' 11" WEST, 3,576.13 FEET; THENCE NORTH 54°
21' 39" WEST, 153.01 FEET TO THE EASTERLY LINE OF THE LEVEE RIGHT OF WAY DESCRIBED IN
THE DEED TO THE COUNTY OF RIVERSIDE RECORDED SEPTEMBER 27, 1938 IN BOOK 390, PAGE 475
OF OFFICIAL RECORDS; THENCE NORTH 15° 51' 20" EAST ON SAID RIGHT OF WAY LINE, 507.83 FEET
TO THE BEGINNING OF A CURVE, IN SAID EASTERLY LINE, BEING CONCAVE WESTERLY AND
HAVING A RADIUS OF 24,140.37 FEET (RECORDED AS 20,070.00 FEET); THENCE NORTHERLY ON
SAID CURVE, THROUGH A CENTRAL ANGLE OF 02° 47' 52" AN ARC DISTANCE OF 1,178.78 FEET TO A
POINT, A RADIAL LINE OF SAID CURVE TO SAID POINT BEARS SOUTH 76° 56' 32" EAST; THENCE
NORTH 19° 54' 32" EAST 678.13 FEET TO THE MOST EASTERLY CORNER OF THE LAND DESCRIBED
IN THE FINAL DECREE OF CONDEMNATION, A CERTIFIED COPY OF WHICH WAS RECORDED
OCTOBER 13, 1961 AS INSTRUMENT NO. 87691; THENCE NORTH 52° 34' 10" WEST, 135.00 FEET ON
THE NORTHERLY LINE OF THE LAND DESCRIBED IN SAID DECREE OF CONDEMNATION TO ANGLE
POINT IN SAID LINE; THENCE SOUTH 19° 20' 05" WEST, 609.41 FEET ON THE WESTERLY LINE OF THE
LAND DESCRIBED IN SAID DECREE OF CONDEMNATION TO THE MOST SOUTHERLY CORNER OF
SAID LAND DESCRIBED IN SAID DECREE OF CONDEMNATION; THENCE SOUTH 32° 04' 36" WEST
321.76 FEET TO A POINT THAT BEARS SOUTH 52° 59' 00" EAST 622.05 FEET FROM A POINT IN THE
SOUTHEASTERLY LINE OF TURBINE STREET DISTANT SOUTH 58° 25' 00" WEST THEREON 897.85
FEET FROM THAT CERTAIN ANGLE POINT SHOWN ON THE MAP OF THE TURBINE TRACT
RECORDED IN BOOK 5, PAGE 116 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF SAID

COUNTY AS BEING THE MOST EASTERLY CORNER OF LOT 12 OF SAID TURBINE TRACT; THENCE NORTH 52° 59' 00" WEST 622.05 FEET TO SAID POINT IN THE SOUTHEASTERLY LINE OF TURBINE STREET; THENCE NORTH 58° 25' 00" EAST, 897.85 FEET ON SAID SOUTHEASTERLY LINE OF TURBINE STREET, TO THE AFORESAID ANGLE POINT; THENCE NORTH 08° 11' 52" WEST, 418.20 FEET ON THE NORTHEASTERLY LINE OF TURBINE STREET TO AN ANGLE POINT ON SAID TURBINE STREET; THENCE NORTH 14° 38' 13" EAST, 46.06 FEET TO A POINT IN THE NORTHEASTERLY LINE OF TURBINE STREET DISTANCE SOUTH 14° 38' 13" WEST THEREON 339.80 FEET FROM THE INTERSECTION OF THE NORTHEASTERLY LINE OF SAID TURBINE STREET WITH THE SOUTHEASTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF 28TH STREET (FORMERLY SECOND STREET) AS SHOWN ON SAID MAP; THENCE SOUTH 52° 34' 10" EAST, 507.73 FEET PARALLEL WITH SAID SOUTHWESTERLY LINE OF 28TH STREET TO THE WESTERLY LINE OF THE AFORESAID LAND DESCRIBED IN SAID DEED TO THE CITY OF RIVERSIDE; THENCE NORTH 32° 04' 36" EAST, 354.81 FEET ON SAID WESTERLY LINE TO THE POINT OF BEGINNING.

PARCEL 22:        (APN 178-310-007)

THAT PORTION OF LOT 11 OF RIVERSIDE LAND AND IRRIGATION COMPANY'S TURBINE TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

ALL OF LOT 11 OF SAID TRACT, EXCEPTING THEREFROM THE FOLLOWING PORTION:

COMMENCING AT STATION #1 OF SAID TRACT; THENCE IN A STRAIGHT LINE 155 FEET TO STATION #2 OF SAID TRACT; THENCE IN A STRAIGHT LINE 136 FEET TO STATION #3 OF SAID TRACT; THENCE IN A STRAIGHT LINE TO SECOND STREET TO STATION #41 OF SAID TRACT; THENCE IN A STRAIGHT LINE TO STATION #1 AND THE POINT OF BEGINNING; THE PORTION HEREBY RESERVED CONTAINS THIRTY FIVE HUNDREDTHS (.35) OF AN ACRE, MORE OR LESS, AND THE PORTION OF SAID LOT #11 HEREBY CONVEYED CONTAINS SIX (6) ACRES.  THE .35 ACRES HEREBY RESERVED IS A TRIANGULAR PIECE OF LAND FACING TURBINE STREET SAID STATION #41 MENTIONED BEING AT THE POINT WHERE TURBINE AND SECOND STREETS JOIN, AS SHOWN ON THE PLAT OF SAID TRACT ABOVE REFERRED TO.

EXCEPT THEREFROM THAT PORTION OF LOT 11 DEEDED TO WALKER M. MORRISON BY DEED RECORDED AUGUST 18, 1952 IN BOOK 1393, PAGE 513, OFFICIAL RECORDS, AS MORE PARTICULARLY DESCRIBED THEREIN.

FURTHER EXCEPT THEREFROM THAT PORTION OF LOT 11 DEEDED TO THE STATE OF CALIFORNIA BY DEED RECORDED AUGUST 23, 1961 AS INSTRUMENT NO. 71941, OFFICIAL RECORDS, AS MORE PARTICULARLY DESCRIBED THEREIN.

PARCEL 23:        (APN 178-310-009)

LOT 5 OF RIVERSIDE LAND AND IRRIGATION COMPANY'S TURBINE TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT 5; THENCE NORTHEASTERLY, ALONG THE SOUTHEASTERLY LINE OF SAID LOT, 16.00 FEET; THENCE NORTHWESTERLY, PARALLEL WITH THE SOUTHWESTERLY LINE OF SAID LOT, 370.00 FEET; THENCE SOUTHWESTERLY, PARALLEL WITH THE SOUTHEASTERLY LINE OF SAID LOT, 16.00 FEET TO THE SOUTHWESTERLY LINE THEREOF; THENCE SOUTHEASTERLY, ALONG SAID SOUTHWESTERLY LINE, 370.00 FEET TO THE POINT OF BEGINNING.

PARCEL 24:            (APN 178-310-011)

THAT PORTION OF LOT 6 OF THE RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT,
AS SHOWN BY MAP ON FILE IN BOOK 5 PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY,
CALIFORNIA, LYING SOUTHWESTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING ON THE SOUTHEASTERLY LINE OF SAID LOT 6 AT A POINT 197.86 FEET
NORTHEASTERLY FROM THE MOST SOUTHERLY CORNER OF SAID LOT, SAID POINT OF
BEGINNING BEING THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND
CONVEYED TO THOMAS H. GOODE, RECORDED IN BOOK 605, PAGE 95 OF DEEDS, RECORDS OF
RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 34° 42' WEST, 836.76 FEET TO THE
NORTHWESTERLY LINE OF SAID LOT.

EXCEPT THEREFROM THAT PORTION THEREOF DESCRIBED AS BEGINNING AT THE MOST
SOUTHERLY CORNER OF SAID LOT 6; THENCE NORTH 41° 48' WEST, 315.45 FEET; THENCE NORTH
54° 03' EAST, 236.70 FEET; THENCE SOUTH 34° 42' EAST, 326.16 FEET; THENCE SOUTH 57° 36' WEST
ON THE SOUTHERLY LINE OF SAID LOT TO THE POINT OF BEGINNING.

ALSO EXCEPT THEREFROM THAT PORTION THEREOF CONVEYED BY M. PEARL GOOCH, ET CON.,
TO ALFRED E. GOODE, BY DEED RECORDED MARCH 9, 1932 IN BOOK 69, PAGE 203, OFFICIAL
RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 25:            (APN 178-310-012)
LOT 10 OF RIVERSIDE LAND AND IRRIGATION COMPANY'S TRACT, AS SHOWN BY MAP ON FILE IN
BOOK 5 PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

PARCEL 26:            (APN 178-310-013)

THAT PORTION OF LOT 6 OF TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5 PAGE 116 OF
MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT, 315.45 FEET,
NORTHWESTERLY FROM THE MOST SOUTHERLY CORNER THEREOF; THENCE NORTH 41° 48' 00"
WEST, ALONG THE SOUTHWESTERLY LINE OF SAID LOT, 271.78 FEET; THENCE NORTH 42° 41' 00"
EAST, 100.70 FEET; THENCE NORTH 51° 19' 00" WEST, 60.00 FEET; THENCE NORTH 28° 59' 00" EAST,
54.48 FEET, THE LAST THREE COURSES AND DISTANCES FOLLOWING ALONG THE BOUNDARY
LINE OF SAID LOT 6; THENCE SOUTH 41° 48' 00" EAST, 372.60 FEET, TO POINT ON THE
NORTHEASTERLY EXTENSION OF THE NORTHWESTERLY LINE OF THE PARCEL OF LAND
CONVEYED TO ALFRED E. GOODE BY DEED RECORDED OCTOBER 26, 1936 IN BOOK 301, PAGE 286
OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE SOUTH 53° 54' 00" WEST,
ALONG SAID NORTHEASTERLY EXTENSION AND SAID NORTHWESTERLY LINE, 142.18 FEET, TO
THE POINT OF BEGINNING.

PARCEL 27:            (APN 178-310-015)

THAT PORTION OF LOT 6 OF TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5 PAGE 116 OF
MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT 6; THENCE NORTH 41° 48' WEST,
ALONG THE SOUTHWESTERLY LINE OF SAID LOT, 315.45 FEET; THENCE NORTH 54° 03' EAST, 118.35
FEET; THENCE SOUTH 38° 15' EAST, 320.12 FEET, TO A POINT ON THE SOUTHEASTERLY LINE OF

SAID LOT; THENCE SOUTH 57° 36' WEST, ALONG THE SOUTHEASTERLY LINE OF SAID LOT, 98.93 FEET TO THE POINT OF BEGINNING.

PARCEL 28:          (APN 178-310-016)

**INTENTIONALLY DELETED**

PARCEL 29:          (APN 178-310-021 and a portion of 178-310-037, 038)

PARCEL C, AS SHOWN ON EXHIBIT "B", OF LOT LINE ADJUSTMENT NO. 4997, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED MARCH 9, 2007, AS INSTRUMENT NO. 2007-163406, OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT CERTAIN PARCEL DESCRIBED IN CERTIFICATE OF COMPLIANCE NO. 6297, IN THE UNINCORPORATED TERRITORY OF THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED MARCH 6, 2006 AS INSTRUMENT NO. 2006-0158780, OF OFFICIAL RECORDS OF SAID COUNTY, TOGETHER WITH THAT PORTION OF LOT 2 OF THE AMENDED MAP OF INDIAN HILL TRACT, PER MAP RECORDED IN BOOK 10, PAGE 3 OF MAPS, RECORDS OF SAID COUNTY, DESCRIBED AS A WHOLE AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTHEASTERLY LINE OF WALLACE STREET, SHOWN AS TURBINE STREET, 40 FEET WIDE, ON SAID AMENDED MAP, SAID POINT BEING THE MOST NORTHERLY CORNER OF THAT CERTAIN 7.5 ACRE PARCEL CONVEYED TO D.C. MILAN BY DEED RECORDED IN BOOK 221, PAGE 359 OF DEEDS, AS SHOWN ON SAID AMENDED MAP, THENCE NORTH 57°29'43" EAST 334.00 FEET ALONG SAID SOUTHEASTERLY LINE OF WALLACE STREET; THENCE PARALLEL WITH THE NORTHEASTERLY LINE OF SAID 7.5 ACRE PARCEL, SOUTH 53°44'50" EAST 310.34 FEET TO THE TRUE POINT OF BEGINNING, SAID POINT BEING THE INTERSECTION OF SAID PARALLEL LINE WITH A LINE THAT IS DESCRIBED AS FOLLOWS:

BEGINNING AT SAID MOST NORTHERLY CORNER OF THAT CERTAIN 7.5 ACRE PARCEL; THENCE NORTH 57°29'43" EAST 72.00 FEET ALONG SAID SOUTHEASTERLY LINE OF WALLACE STREET; THENCE PARALLEL WITH THE NORTHEASTERLY LINE OF SAID 7.5 ACRE PARCEL, SOUTH 53°44'50" EAST 310.34 FEET TO THE BEGINNING OF SAID LINE; THENCE NORTH 57°29'43" EAST 262.00 FEET ALONG SAID LINE TO SAID POINT;

THENCE CONTINUING ALONG SAID LINE, NORTH 57°29'43" EAST 70.32 FEET TO THE BEGINNING OF A CURVE CONCAVE NORTHWESTERLY, HAVING A RADIUS OF 1243.00 FEET; THENCE NORTHEASTERLY 61.12 FEET ALONG SAID CURVE, THROUGH A CENTRAL ANGLE OF 2°49'02" TO THE SOUTHWESTERLY LINE OF SAID PARCEL DESCRIBED IN SAID CERTIFICATE OF COMPLIANCE; THENCE NORTH 53°44'50" WEST 308.73 FEET ALONG SAID SOUTHWESTERLY LINE TO THE WESTERLY CORNER OF SAID PARCEL, BEING A POINT ON SAID SOUTHEASTERLY LINE OF WALLACE STREET; THENCE NORTH 57°29'43" EAST 132.00 FEET ALONG SAID SOUTHEASTERLY LINE OF WALLACE STREET AND THE NORTHWESTERLY LINE OF SAID PARCEL TO THE NORTHERLY CORNER OF SAID PARCEL; THENCE SOUTH 53°44'50" EAST 620.68 FEET ALONG THE NORTHEASTERLY LINE OF SAID PARCEL TO THE EASTERLY CORNER OF SAID PARCEL; THENCE SOUTH 57°29'43" WEST 132.00 FEET ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL TO THE SOUTHERLY CORNER OF SAID PARCEL; THENCE SOUTH 53°44'50" EAST 42.92 FEET ALONG THE SOUTHEASTERLY PROLONGATION OF THE SOUTHWESTERLY LINE OF SAID PARCEL; THENCE SOUTH 57°29'43" WEST 132.00 FEET TO THE SOUTHEASTERLY PROLONGATION OF THAT LINE HEREINABOVE DESCRIBED AS BEING PARALLEL WITH THE NORTHEASTERLY LINE OF SAID 7.5 ACRE PARCEL AND HAVING A BEARING AND DISTANCE OF SOUTH 53°44'50" EAST 310.34 FEET; THENCE NORTH 53°44'50" WEST 353.26 FEET ALONG SAID SOUTHEASTERLY PROLONGATION TO SAID TRUE POINT OF BEGINNING.

PARCEL 30:          (APN 179-270-001)

THAT PORTION OF LOT 2 OF AMENDED MAP OF INDIAN HILL TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT POINT ON THE WESTERLY LINE OF SAID LOT 2, SAID POINT BEING THE INTERSECTION OF THE CENTER LINE OF A RIGHT OF WAY OF PILES, 12 INCHES IN DIAMETER, WITH THE EASTERLY LINE OF 5.63 ACRE PARCEL SHOWN AS THE LANDS OF MILLIE J. VOORHEES ON SAID MAP; THENCE NORTH 37° 14' 00" EAST 126.10 FEET ON SAID WESTERLY LINE OF LOT 2 TO AN ANGLE POINT THEREIN; THENCE NORTH 12° 29' 00" EAST 154.00 FEET ON SAID WESTERLY LINE TO AN ANGLE POINT THEREIN; THENCE NORTH 43° 08' 00" WEST 396.00 FEET ON SAID WESTERLY LINE TO AN ANGLE POINT THEREIN; THENCE NORTH 30° 14' 00" EAST ON SAID WESTERLY LINE OF LOT 2 TO AN ANGLE POINT THEREIN, ALSO BEING THE MOST EASTERLY CORNER OF THE 7.50 ACRE PORTION OF LOT 3 OF TURBINE TRACT CONVEYED TO D. C. MILAN AS SHOWN ON SAID MAP; THENCE NORTH 53° 41' 00" WEST ON SAID WESTERLY LINE OF LOT 2 AND ON THE LINE OF SAID 7.50 ACRE PARCEL TO THE EASTERLY LINE OF TURBINE STREET (NOW KNOWN AS WALLACE STREET) AS SHOWN ON SAID MAP; THENCE NORTH 56° 43' 00" EAST ON SAID EASTERLY LINE OF TURBINE STREET TO THE MOST WESTERLY CORNER OF THE LAND DESCRIBED IN DEED TO PHILIP D. GORDON, ET UX RECORDED FEBRUARY 17, 1928 IN BOOK 722, PAGE 161 OF DEEDS; THENCE SOUTH 53° 41' 00" EAST 620.68 FEET ON THE SOUTHWEST LINE OF LAST SAID LAND TO THE MOST SOUTHERLY CORNER THEREOF; THENCE NORTH 57° 45' 00" EAST 132.00 FEET ON THE SOUTHEAST LINE OF LAST SAID LAND TO THE MOST EASTERLY CORNER THEREOF, ALSO BEING THE MOST SOUTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO SISTO RODRIGEZ, ET UX, RECORDED MARCH 29, 1928 IN BOOK 722, PAGE 199 OF DEEDS; THENCE NORTH 31° 17' 00" EAST ON THE SOUTHEAST LINE OF LAST SAID LAND TO THE WEST LINE OF THE LAND DESCRIBED AS PARCEL 1 IN DEED TO CITY OF RIVERSIDE RECORDED MAY 6, 1949 AS INSTRUMENT NO. 76; THENCE SOUTH ON SAID WEST LINE TO THE NORTHEAST CORNER OF THE APPROXIMATELY 4.80 ACRE PARCEL DESCRIBED IN DEED TO E. W. TUCKER RECORDED NOVEMBER 1, 1940 IN BOOK 479, PAGE 534 OF OFFICIAL RECORDS; THENCE WEST ON THE NORTH LINE OF LAST SAID LAND TO THE POINT OF BEGINNING.

EXCEPT THAT PORTION DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF SAID 7.50 ACRE PORTION OF LOT 3 OF TURBINE TRACT CONVEYED TO D. C. MILAN; THENCE NORTH 57° 43' 00" EAST 598.00 FEET ON SAID SOUTHEAST LINE OF TURBINE STREET; THENCE SOUTH 53° 41' 00" EAST 620.00 FEET, PARALLEL WITH THE NORTHEAST LINE OF SAID 7.50 ACRE PORTION; THENCE SOUTH 57° 43' 00" WEST 132.00 FEET, PARALLEL WITH SAID SOUTHEAST LINE OF TURBINE STREET; THENCE SOUTH 53° 41' 00" EAST 42.92 FEET, PARALLEL WITH THE NORTHEAST LINE OF SAID 7.50 ACRE PORTION; THENCE SOUTH 57° 43' 00" WEST 132.00 FEET, PARALLEL WITH SAID SOUTHEAST LINE OF TURBINE STREET; THENCE NORTH 53° 41' 00" WEST 42.92 FEET, PARALLEL WITH THE NORTHEAST LINE OF SAID 7.50 ACRE PORTION; THENCE SOUTH 57° 43' 00" WEST 202.00 FEET, PARALLEL WITH THE SAID SOUTHEAST LINE OF TURBINE STREET TO THE NORTHEAST LINE OF THE LAND DESCRIBED IN DEED TO ROBERT V. CANNADY, ET UX, RECORDED AUGUST 29, 1923 IN BOOK 590, PAGE 186 OF DEEDS; THENCE SOUTH 53° 41' 00" EAST 42.92 FEET ON SAID NORTHEAST LINE TO THE MOST EASTERLY CORNER OF LAST SAID LAND; THENCE SOUTH 57° 43' 00" WEST 132.00 FEET ON THE SOUTHEAST LINE OF LAST SAID LAND TO THE MOST SOUTHERLY CORNER THEREOF; THENCE NORTH 53° 41' 00" WEST 663.60 FEET ON THE NORTHWEST LINE OF LAST SAID LAND TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT CERTAIN LAND DESCRIBED IN THAT CERTAIN FINAL ORDER OF
CONDEMNATION IN FAVOR OF THE RIVERSIDE COUNTY FLOOD CONTROL DISTRICT WHICH
RECORDED IN BOOK 2999 PAGE 64 OF OFFICIAL RECORDS.

PARCEL 31:          (APN 178-310-025)

ALL THAT PORTION OF LOT 2, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN
BY AMENDED MAP OF INDIAN HILL TRACT, ON FILE IN BOOK 10 PAGE 3 OF MAPS, IN THE OFFICE
OF THE COUNTY RECORDER OF SAID COUNTY, PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHERLY LINE OF SECOND STREET WITH THE
WESTERLY LINE OF TURBINE STREET; THENCE SOUTH 53° 17' EAST, ALONG SAID SOUTHERLY
LINE OF SECOND STREET, PRODUCED EASTERLY, 43.42 FEET TO A POINT ON THE EASTERLY LINE
OF SAID TURBINE STREET; THENCE SOUTH 13° 52' WEST, ALONG SAID EASTERLY LINE OF
TURBINE STREET, 162.18 FEET FOR POINT OF BEGINNING; THENCE CONTINUING SOUTH 13° 52'
WEST, ALONG SAID EASTERLY LINE OF TURBINE STREET, 177.62 FEET; THENCE SOUTH 53° 17'
EAST, 505 FEET; THENCE NORTH 31° 17' EAST, 165 FEET; THENCE NORTH 53° 17' WEST 558.2 FEET TO
POINT OF BEGINNING.

PARCEL 32:
PARCEL 32A:   (APN 178-290-009)

THAT PORTION OF LOT 2, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT, COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, ON FILE IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

COMMENCING AT THE COMMON CORNER OF LOTS A AND 2 ON THE NORTHEASTERLY SIDE OF
SECOND STREET.   AS SHOWN ON SAID MAP, THENCE SOUTH 53° 17' EAST, ALONG SAID
NORTHEASTERLY SIDE OF SECOND STREET PRODUCED, 340 FEET FOR THE POINT OF BEGINNING;
THENCE NORTH 36° 43' EAST, 650 FEET; THENCE SOUTH 53° 17' EAST, 510 FEET TO A POINT ON THE
SOUTHEASTERLY LINE OF THAT CERTAIN PARCEL OF LAND CONVEYED TO H. B. CROUCH BY
DEED RECORDED JUNE 18, 1929 IN BOOK 819, PAGE 39 OF DEEDS; THENCE SOUTH 67° 48' WEST
ALONG THE SOUTHEASTERLY LINE OF SAID PARCEL OF LAND, 232 FEET TO AN ANGLE POINT IN
SAID SOUTHEASTERLY LINE; THENCE SOUTH 66° 27' WEST 155 FEET; THENCE SOUTH 55° 30' WEST,
84 FEET; THENCE SOUTH 51° 01' WEST, 128 FEET; THENCE SOUTH 44° 57' WEST, 60 FEET; THENCE
SOUTH 36° 34' WEST, 55 FEET TO A POINT WHICH BEARS SOUTH 53° 17' EAST FROM THE POINT OF
BEGINNING; THENCE NORTH 53° 17' WEST, 244 FEET TO THE POINT OF BEGINNING; THE LAST 6
BEARINGS AND DISTANCES BEING ALONG THE SOUTHEASTERLY AND SOUTHWESTERLY LINE OF
SAID PARCEL OF LAND SO CONVEYED TO H. B. CROUCH BY THE ABOVE REFERRED TO DEED.

EXCEPT THEREFROM THAT PORTION GRANTED TO THE STATE OF CALIFORNIA BY DEED FROM W.
J. CLARK AND NANCY B. CLARK, HIS WIFE, DATED MAY 17, 1957 AND FILED FOR RECORD JULY 2,
1957.

PARCEL 32B:   (APN 178-310-026)

THAT PORTION OF LOT 2, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT, COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, ON FILE IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE
COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT AT THE INTERSECTION OF THE SOUTHERLY LINE OF SECOND STREET
WITH THE WESTERLY LINE OF TURBINE STREET; THENCE SOUTH 53° 17' EAST A DISTANCE OF
43.42 FEET TO A POINT IN THE EASTERLY LINE OF TURBINE STREET, SAID POINT BEING THE POINT

OF BEGINNING OF THE PROPERTY HEREIN DESCRIBED; THENCE SOUTH 13° 52' WEST A DISTANCE OF 162.18 FEET TO A POINT; THENCE SOUTH 53° 17' EAST A DISTANCE OF 558.2 FEET TO A POINT; THENCE NORTH 31° 17' EAST A DISTANCE OF 150 FEET TO A POINT; THENCE NORTH 53° 17' WEST A DISTANCE OF 606.58 FEET TO THE POINT OF BEGINNING.

PARCEL 33:          (APN 178-310-028)

THAT PORTION OF LOT 2 OF AMENDED MAP OF INDIAN HILL TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHWEST LINE OF SECOND STREET (NOW KNOWN AS 28TH STREET) WITH THE WESTERLY LINE OF TURBINE STREET (NOW KNOWN AS WALLACE STREET) AS SHOWN ON SAID MAP; THENCE SOUTH 53° 17' 00" EAST 43.42 FEET TO THE EASTERLY LINE OF SAID TURBINE STREET AND THE TRUE POINT OF BEGINNING.

ALSO BEING THE MOST NORTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO W. J. CLARK, ET UX, RECORDED FEBRUARY 17, 1928 IN BOOK 722, PAGE 155 OF DEEDS; THENCE SOUTH 53° 17' 00" EAST 604.58 FEET ON THE NORTHEAST LINE OF LAST SAID LAND TO THE MOST EASTERLY CORNER THEREOF; THENCE NORTHEAST TO THE MOST SOUTHERLY CORNER OF THE LAND DESCRIBED IN DEED TO H. B. CROUCH, ET UX, RECORDED APRIL 28, 1928 IN BOOK 722, PAGE 208 OF DEEDS, SAID CORNER BEING ON THE SOUTHEASTERLY PROLONGATION OF THE NORTHEAST LINE OF SAID SECOND STREET; THENCE NORTH 53° 17' 00" WEST ON SAID PROLONGATION TO SAID EAST LINE OF TURBINE STREET; THENCE SOUTH 13° 58' 00" WEST ON SAID EAST LINE OF TURBINE STREET TO THE TRUE POINT OF BEGINNING.

PARCEL 34:          (APN 178-310-031 AND 178-310-032)

PARCEL 34A:

THAT PORTION OF LOT 6, AS SHOWN BY MAP OF RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT ON FILE IN BOOK 5 PAGE 116, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, LYING NORTHEASTERLY OF THE FOLLOWING DESCRIBED LINE:

BEGINNING ON THE SOUTHEASTERLY LINE OF SAID LOT 6 AT A POINT 197.86 FEET NORTHEASTERLY FROM THE MOST SOUTHERLY CORNER OF SAID LOT, SAID POINT OF BEGINNING BEING THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO THOMAS H. GOODE, RECORDED IN BOOK 605, PAGE 95, OF DEEDS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 34° 42' WEST, 836.76 FEET TO THE NORTHWESTERLY LINE OF SAID LOT.

PARCEL 34B:

THAT PORTION OF LOT 5, AS SHOWN BY MAP OF RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT ON FILE IN BOOK 5, PAGE 116, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST SOUTHERLY CORNER OF SAID LOT; THENCE NORTHEASTERLY ON THE SOUTHEASTERLY LINE OF SAID LOT, 16 FEET; THENCE NORTHWESTERLY PARALLEL WITH THE SOUTHWESTERLY LINE OF SAID LOT 370 FEET; THENCE SOUTHWESTERLY PARALLEL WITH THE SOUTHEASTERLY LINE OF SAID LOT, 16 FEET TO THE SOUTHWESTERLY LINE THEREOF; THENCE SOUTHEASTERLY ON SAID SOUTHWESTERLY LINE 370 FEET TO THE POINT OF BEGINNING.

PARCEL 35:          (APN 178-310-035)

**INTENTIONALLY DELETED**

PARCEL 36:        (APN 178-310-037)

**INTENTIONALLY DELETED**

PARCEL 37:        (APN 178-310-038)

**INTENTIONALLY DELETED**

PARCEL 38:

PARCEL 38A:    (APN 178-310-041)
ALL THAT PORTION OF LOT 2, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY THE
AMENDED MAP OF INDIAN HILL TRACT, ON FILE IN BOOK 10 PAGE 3 OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHERLY LINE OF SECOND STREET WITH THE
WESTERLY LINE OF TURBINE STREET; THENCE SOUTH 53° 17' EAST ALONG SAID SOUTHERLY
LINE OF SECOND STREET, PRODUCED EASTERLY, 43.42 FEET TO A POINT ON THE EASTERLY LINE
OF SAID TURBINE STREET; THENCE SOUTH 13° 52' WEST ALONG SAID EASTERLY LINE OF
TURBINE STREET, 381.95 FEET; THENCE SOUTH 8° 53' EAST ALONG SAID EASTERLY LINE OF
TURBINE STREET, 422.15 FEET; THENCE SOUTH 57° 43' WEST ALONG THE SOUTHEASTERLY LINE
OF SAID TURBINE STREET, 1029.85 FEET FOR THE POINT OF BEGINNING SAID POINT BEING THE
MOST WESTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO BRUCE COLLINS
AND MARY C. COLLINS, BY DEED FILED FOR RECORD OCTOBER 15, 1947 IN THE OFFICE OF THE
COUNTY RECORDER OF SAID RIVERSIDE COUNTY, BEING INSTRUMENT NO. 1567 OF SAID DATE;
THENCE SOUTH 53° 41' EAST ALONG THE SOUTHWESTERLY LINE OF SAID PARCEL, 150 FEET;
THENCE NORTH 57° 43' EAST, 61 FEET; THENCE SOUTH 53° 41' WEST, 150 FEET TO A POINT ON THE
SOUTHEASTERLY LINE OF TURBINE STREET; THENCE SOUTH 57° 43' WEST ALONG THE
SOUTHEASTERLY LINE OF TURBINE STREET, 61 FEET, TO THE POINT OF BEGINNING.

PARCEL 38B:    (APN 178-310-042)

ALL THAT PORTION OF LOT 2, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY THE
AMENDED MAP OF INDIAN HILL TRACT, ON FILE IN BOOK 10, PAGE 3, OF MAPS, IN THE OFFICE OF
THE COUNTY RECORDER OF SAID COUNTY, PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHERLY LINE OF SECOND STREET WITH THE
WESTERLY LINE OF TURBINE STREET; THENCE SOUTH 53° 17' EAST ALONG SAID SOUTHERLY
LINE OF SECOND STREET, PRODUCED EASTERLY, 43.42 FEET TO A POINT ON THE EASTERLY LINE
OF SAID TURBINE STREET; THENCE SOUTH 13° 52' WEST ALONG SAID EASTERLY LINE OF
TURBINE STREET, 381.95 FEET; THENCE SOUTH 8° 53' EAST ALONG SAID EASTERLY LINE OF
TURBINE STREET, 422.15 FEET; THENCE SOUTH 57° 43' WEST ALONG THE SOUTHEASTERLY LINE
OF SAID TURBINE STREET, 897.85 FEET FOR THE POINT OF BEGINNING; THENCE CONTINUING
SOUTH 57° 43' WEST ALONG THE SOUTHEASTERLY LINE OF SAID TURBINE STREET, 897.85 FEET
FOR THE POINT OF BEGINNING; THENCE CONTINUING SOUTH 57° 43' WEST ALONG THE
SOUTHEASTERLY LINE OF TURBINE STREET, 132 FEET; THENCE SOUTH 53° 41' EAST, 620.68 FEET;
THENCE NORTH 57° 43' EAST, 132 FEET; THENCE NORTH 53° 41' WEST, 620.68 FEET TO THE POINT OF
BEGINNING.

EXCEPT THEREFROM ALL THAT PORTION AS DEEDED TO EMERALD MEADOWS RANCH, A CALIFORNIA CORPORATION, IN DEED RECORDED NOVEMBER 9, 1990, INSTRUMENT NO. 412315, AND RE-RECORDED JULY 18, 1991, INSTRUMENT NO. 245104, BOTH OF OFFICIAL RECORDS.

PARCEL 39:          (APN 178-262-005)

THAT PORTION OF LOT 1 IN BLOCK 25 OF WEST RIVERSIDE, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 9 PAGE 34 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAN BERNARDINO COUNTY, CALIFORNIA.

BEGINNING AT A POINT ON THE NORTHEASTERLY LINE OF SAID LOT WHICH BEARS SOUTH 53° 00' 00" EAST 330.00 FEET FROM THE MOST NORTHERLY CORNER THEREOF; THENCE SOUTH 37° 00' 00" WEST, PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT, 232.71 FEET, FOR THE TRUE POINT OF BEGINNING; THENCE SOUTH 53° 00' 00" EAST, PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT, 462.00 FEET, TO A POINT IN THE CENTER LINE OF "C" STREET; THENCE SOUTH 37° 00' 00" WEST, ALONG THE CENTER LINE OF "C" STREET, 94.29 FEET, TO THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO J. C. ALEXANDER AND MONTEZ ALEXANDER, HUSBAND AND WIFE, BY DEED RECORDED SEPTEMBER 28, 1947 IN BOOK 769, PAGE 419 OF OFFICIAL RECORDS, RIVERSIDE COUNTY RECORDS; THENCE NORTH 53° 00' 00" WEST, ALONG THE NORTHEASTERLY LINE OF SAID PARCEL AND PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT, 462.00 FEET, TO THE MOST NORTHERLY CORNER OF SAID PARCEL; THENCE NORTH 37° 00' 00" EAST, PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT, 94.29 FEET, TO THE TRUE POINT OF BEGINNING.

EXCEPT THE PORTION IN "C" STREET.

ALSO EXCEPT THAT PORTION GRANTED TO THE STATE OF CALIFORNIA BY DEED RECORDED OCTOBER 9, 1959 AS INSTRUMENT NO. 86455 OF OFFICIAL RECORDS.

PARCEL 40:          (APN 178-262-006)

THAT PORTION OF LOT 1, BLOCK 25 OF WEST RIVERSIDE, AS SHOWN BY MAP ON FILE IN BOOK 9, PAGE 34 OF MAPS, RECORDS OF SAN BERNARDINO COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT A POINT ON THE NORTHEASTERLY LINE OF SAID LOT, WHICH BEARS SOUTH 53° 00' EAST, 330 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT 1, SAID POINT BEING THE MOST EASTERLY CORNER OF THE NORTHWESTERLY 6 ACRES OF SAID LOT, AS CONVEYED BY C. H. BENEDICT AND WIFE, TO D. B. O'NEILL BY DEED RECORDED MAY 10, 1909 IN BOOK 281, PAGE 35 OF DEEDS, RIVERSIDE COUNTY RECORDS; THENCE SOUTH 37° 00' WEST AND PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT, 94.29 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING SOUTH 37° 00' WEST AND PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT, 138.42 FEET; THENCE SOUTH 53° 00' EAST AND PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT 1, 462 FEET TO A POINT IN THE CENTER LINE OF "C" STREET; THENCE NORTH 37° 11' EAST ALONG THE CENTER LINE OF "C" STREET, 138.42 FEET, MORE OR LESS, TO THE MOST SOUTHERLY CORNER OF PARCEL OF LAND CONVEYED TO NATHANIEL BOWENS AND WIFE, BY DEED FIELD FOR RECORD NOVEMBER 17, 1947 AS INSTRUMENT NO. 1871; THENCE NORTHWESTERLY ON THE SOUTHWESTERLY LINE OF SAID PARCEL CONVEYED TO BOWENS, 462 FEET TO THE TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION INCLUDED IN "C" STREET.

ALSO EXCEPT THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED OCTOBER 14, 1959 AS INSTRUMENT NO. 87540, OFFICIAL RECORDS.

PARCEL 41:

PARCEL 41A:   (APN 178-262-007)

THAT PORTION OF LOT 1, BLOCK 25 OF WEST RIVERSIDE, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 9 PAGE 34 OF MAPS, SAN BERNARDINO COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE NORTHEASTERLY LINE OF SAID LOT 1, WHICH BEARS SOUTH 53° 00' EAST 330 FEET FROM THE MOST NORTHERLY CORNER OF SAID LOT 1; THENCE SOUTH 53° 00' EAST ON THE NORTHEASTERLY LINE OF SAID LOT 1, 462 FEET TO A POINT IN THE CENTER LINE OF "C" STREET; THENCE SOUTH 37° 00' WEST, ON THE CENTER LINE OF "C" STREET 94.29 FEET; THENCE NORTH 53° 00' WEST, AND PARALLEL WITH THE NORTHEASTERLY LINE OF SAID LOT 1, 462 FEET; THENCE NORTH 37° 00' EAST, AND PARALLEL WITH THE NORTHWESTERLY LINE OF SAID LOT 1, 94.29 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM THAT PORTION INCLUDED IN "C" STREET.

ALSO EXCEPT THEREFROM THAT PORTION CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED JUNE 17, 1959 AS INSTRUMENT NO. 52582, OFFICIAL RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO LEON THOMAS, ET AL, BY DEED RECORDED DECEMBER 29, 1948 IN BOOK 1039, PAGE 193, OF OFFICIAL RECORDS, OF RIVERSIDE COUNTY RECORDS; THENCE ON THE NORTHEASTERLY LINE OF SAID THOMAS PARCEL OF LAND, SOUTH 52° 28' 59" EAST, 370.92 FEET; THENCE SOUTH 84° 41' 12" WEST, 138.70 FEET TO THE SOUTHWESTERLY LINE OF SAID THOMAS PARCEL OF LAND; THENCE ON SAID SOUTHWESTERLY LINE NORTH 52° 28' 59" WEST, 269.32 FEET TO THE MOST WESTERLY CORNER OF SAID THOMAS PARCEL OF LAND; THENCE ON THE NORTHWESTERLY LINE OF SAID THOMAS PARCEL OF LAND, NORTH 37° 35' 34" EAST 94.29 FEET TO THE POINT OF BEGINNING.

PARCEL 41B:   (APN 178-262-008)

THAT PORTION OF LOT 2 IN BLOCK 25 OF WEST RIVERSIDE, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 9 OF MAPS, PAGE 34, RECORDS OF THE COUNTY OF SAN BERNARDINO, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE SOUTHWESTERLY LINE OF SAID LOT 2 WITH THE NORTHWESTERLY LINE OF "C" STREET (NOW KNOWN AS HALL STREET) 66 FEET WIDE, AS SHOWN ON SAID MAP; THENCE ALONG SAID SOUTHWESTERLY LINE NORTH 52° 28' 59" WEST 57.47 FEET TO THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO THE STATE OF CALIFORNIA BY DEED RECORDED JUNE 17, 1959 IN BOOK 2493, OFFICIAL RECORDS, PAGE 276, RECORDS OF SAID RIVERSIDE COUNTY; THENCE NORTH 84° 41' 12" EAST 78.53 FEET TO SAID NORTHWESTERLY LINE OF "C" STREET; THENCE SOUTHWESTERLY ALONG SAID NORTHWESTERLY LINE TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ALL MINERALS, OILS, GASES AND OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN THAT MAY BE WITHIN OR UNDER THE PARCEL OF LAND HEREINABOVE DESCRIBED. WITHOUT, HOWEVER, THE RIGHT TO DRILL DIG OR MINE THROUGH

THE SURFACE THEREOF, AS EXCEPTED BY STATE OF CALIFORNIA, IN A DEED RECORDED MAY 7, 1963 IN BOOK 3387, PAGE 386 OF OFFICIAL RECORDS OF SAID COUNTY.

PARCEL 42:          (APN 179-130-003)

**INTENTIONALLY DELETED**

PARCEL 43:

PARCEL 43A:
**INTENTIONALLY DELETED**

PARCEL 43B:

**INTENTIONALLY DELETED**

PARCEL 43C:

**INTENTIONALLY DELETED**

PARCEL 43D:   (APN 179-170-002 AND 179-170-005)

**INTENTIONALLY DELETED (to be purchased at a later date)**

PARCEL 43E:

**INTENTIONALLY DELETED**

PARCEL 44:          (APN 179-130-006)

**INTENTIONALLY DELETED**

PARCEL 45:          (APN 179-130-008)

**INTENTIONALLY DELETED**

PARCEL 46:          (APN 179-170-001 AND 179-170-004)

ALL THAT PORTION OF LOT 1 OF ARTHUR PARKS TRACT, AS SHOWN BY MAP ON FILE IN BOOK 1 PAGE 21, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AND THAT PORTION OF LOT 9, AS SHOWN BY MAP OF THE RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, ON FILE IN BOOK 5 PAGE 116, OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST SOUTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND DESIGNATED AS "LANDS OF W. W. CARR, 13.75 AC", AS SHOWN ON SAID MAP OF TURBINE TRACT; THENCE NORTH 59° 58' WEST ALONG THE NORTHEASTERLY LINE OF THE COUNTY ROAD AS SHOWN ON SAID MAP OF TURBINE TRACT, 395.18 FEET TO AN ANGLE POINT THEREON; THENCE NORTH 60° WEST ALONG THE NORTHEASTERLY LINE OF SAID COUNTY ROAD, 131.02 FEET; THENCE NORTH 33° 53' EAST, 528.49 FEET (FORMERLY RECORDED 528.45 FEET); THENCE NORTH 45° 36' EAST (FORMERLY RECORDED NORTH 45° 37' EAST) 265 FEET; THENCE NORTH 54° 06' EAST, 129.73 FEET FOR THE POINT OF BEGINNING, SAID POINT BEING THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO GEORGE A. CALKINS AND RUTH E. CALKINS,

HUSBAND AND WIFE, BY DEED RECORDED APRIL 15, 1952 IN BOOK 1359 PAGE 363 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 59° 09' WEST ALONG THE NORTHEASTERLY LINE OF SAID PARCEL, SAID NORTHEASTERLY LINE BEING PARALLEL WITH THE NORTHEASTERLY LINE OF ARTHUR PARKS TRACT, 804.14 FEET TO A POINT ON THE NORTHWESTERLY LINE OF LOT 1 OF SAID ARTHUR PARKS TRACT; THENCE NORTH 53° 43' EAST (FORMERLY RECORDED NORTH 53° 30' EAST) ALONG THE NORTHWESTERLY LINE OF SAID LOT 1, A DISTANCE OF 650.32 FEET TO THE MOST NORTHERLY CORNER OF SAID LOT; THENCE SOUTH 59° 09' EAST (FORMERLY RECORDED SOUTH 59° 45' EAST) ALONG THE NORTHEASTERLY LINE OF SAID LOT 1, A DISTANCE OF 801.90 FEET TO THE MOST EASTERLY CORNER OF SAID LOT; THENCE SOUTH 37° 54' WEST ALONG THE SOUTHEASTERLY LINE OF SAID LOT, 102.58 FEET (FORMERLY RECORDED SOUTH 36° 22' WEST, 100.32 FEET); THENCE SOUTH 78° 32' WEST ALONG THE SOUTHEASTERLY LINE OF SAID LOT, 222.70 FEET (FORMERLY RECORDED SOUTH 80° 15' WEST, 221.76 FEET); THENCE SOUTH 61° 01' WEST ALONG THE SOUTHEASTERLY LINE OF SAID LOT, 138.60 FEET (FORMERLY RECORDED SOUTH 61° 30' WEST) TO STATION 56 AS SHOWN ON SAID MAP OF TURBINE TRACT; THENCE SOUTH 34° 49' EAST, ALONG A LINE BETWEEN SAID STATION 56 AND STATION 29, AS SHOWN ON SAID MAP OF TURBINE TRACT, 61.18 FEET TO A POINT 23.10 FEET NORTHWESTERLY FROM SAID STATION 29; THENCE SOUTH 34° 40' WEST, 75.72 FEET; THENCE SOUTH 54° 06' WEST, 137.67 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ANY PORTION THEREOF LYING EASTERLY OF THE JURUPA DITCH AS LOCATED ON APRIL 9, 1918, BEING THE DATE OF DEED TO H. H. VANDERSLICE, TO THE POINT WHERE L. S. WILSON TAKES HIS WATER THROUGH A WOODEN FLUME.

PARCEL 47:          (APN 179-170-003)

LOT 9 OF THE RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT THEREFROM THAT PORTION CONVEYED TO W. W. CARR, BY DEED RECORDED JULY 19, 1905, IN BOOK 202 OF DEEDS, PAGE 361, RECORDS OF SAID COUNTY.
PARCEL 48:          (APN 179-170-006 and a portion of 179-180-012)

PARCEL 1 OF PARCEL MAP NO. 33314, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 200, PAGES 79 AND 80, OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 49:          (APN 179-170-007)

THAT PORTION OF LOT 8 AND 9 OF TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5 PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHEAST CORNER OF A TRACT OF LAND AS SHOWN BY MAP OF THE TURBINE TRACT ON FILE IN BOOK 5 PAGE(S) 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AND THEREON DESIGNATED AS "LAND OF W. W. CARR 13.75 A." SAID POINT BEING STATION #72 OF SURVEY OF SAID TURBINE TRACT; THENCE NORTH 59° 58' WEST ALONG THE NORTH LINE OF THE COUNTY ROAD, AS SHOWN BY MAP OF SAID TURBINE TRACT, 526.2 FEET; THENCE NORTH 33° 53' EAST, 528.45 FEET; THENCE NORTH 45° 37' EAST, 265 FEET; THENCE NORTH 54° 06' EAST, 40 FEET, MORE OR LESS, TO THE SOUTHWESTERLY LINE OF LOT 9, AS SHOWN ON SURVEY OF SAID TURBINE TRACT, FOR THE POINT OF BEGINNING; THENCE CONTINUING NORTH 54° 06' EAST, 227.4 FEET; THENCE 71.4 FEET, MORE OR LESS, TO A POINT ON A LINE RUNNING BETWEEN STATIONS 29 AND 56 OF SURVEY OF SAID TURBINE TRACT AND DISTANT FROM STATION 29, 23.10 FEET; THENCE SOUTH ALONG THE LINE BETWEEN STATIONS 29 AND 56 OF SAID

SURVEY, 23.10 FEET TO SAID STATION 29, THE SAME BEING THE NORTHEAST CORNER OF LOT 8 OF SAID TURBINE TRACT; THENCE SOUTH 41° 48' EAST, 694.75 FEET TO THE NORTHWESTERLY LINE OF TURBINE STREET; THENCE SOUTH 57° 36' WEST ALONG THE NORTHWESTERLY LINE OF TURBINE STREET, 260.3 FEET TO STATION 32 OF SAID SURVEY; THENCE NORTH 43° 28' WEST, ALONG THE SOUTHWESTERLY LINE OF SAID LOTS 8 AND 9 TO THE POINT OF BEGINNING.

ALSO ALL THAT CERTAIN STRIP OF LAND LYING BETWEEN THE NORTHWESTERLY BOUNDARY LINE OF THE FOREGOING DESCRIBED TRACT OF LAND AND SOUTHWESTERLY OF JURUPA DITCH AS NOW LOCATED AND SOUTHEASTERLY OF THAT CERTAIN WOODEN FLUME EXTENDING FROM SAID JURUPA DITCH TO THE COUNTY ROAD.

PARCEL 50:          (A portion of APN 178-310-016, 035; 179-170-009, 010)

PARCEL A, AS SHOWN ON EXHIBIT "B", OF LOT LINE ADJUSTMENT NO. LLA 04996, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED MARCH 9, 2007, AS INSTRUMENT NO. 2007-0163410, OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF PARCEL AS OF LOT LINE ADJUSTMENT NO. 04998, IN THE UNINCORPORATED TERRITORY OF THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, PER DOCUMENT RECORDED MARCH 9, 2007 AS INSTRUMENT NO. 2007-163401, OF OFFICIAL RECORDS OF SAID COUNTY, DESCRIBED AS FOLLOWS:
BEGINNING AT THE MOST NORTHERLY CORNER OF SAID PARCEL A, SAID MOST NORTHERLY CORNER BEING A POINT ON THE SOUTHEASTERLY LINE OF WALLACE STREET, SHOWN AS TURBINE STREET, 40 FEET WIDE, ON SAID AMENDED MAP, SAID POINT BEING THE MOST NORTHERLY CORNER OF THAT CERTAIN 7.5 ACRE PARCEL CONVEYED TO D.C. MILAN BY DEED RECORDED IN BOOK 221, PAGE 359 OF DEEDS, AS SHOWN ON SAID AMENDED MAP; THENCE ALONG THE NORTHEASTERLY LINE OF SAID 7.5 ACRE PARCEL AND SAID PARCEL A, SOUTH 53°44'50" EAST 310.34 FEET; THENCE LEAVING SAID NORTHEASTERLY LINE, AND ALONG THE NORTHWESTERLY LINE OF SAID PARCEL A AND ITS NORTHEASTERLY PROLONGATION, NORTH 57°29'34" EAST 334.00 FEET TO A LINE THAT IS PARALLEL WITH SAID NORTHEASTERLY LINE OF THAT 7.5 ACRE PARCEL, AND PASSES THROUGH SAID SOUTHEASTERLY LINE OF WALLACE STREET AT A POINT NORTH 57°29'43" EAST 334.00 FEET FROM SAID NORTHERLY CORNER OF THAT CERTAIN 7.5 ACRE PARCEL; THENCE ALONG SAID PARALLEL LINE AND THE NORTHEASTERLY LINE OF SAID PARCEL A, SOUTH 53°44'50" EAST 310.34 FEET; THENCE CONTINUING ALONG THE PERIMETER OF SAID PARCEL A IN A CLOCKWISE DIRECTION THE FOLLOWING 14 COURSES: PARALLEL WITH SAID SOUTHEASTERLY LINE OF WALLACE STREET, SOUTH 57°29'43" WEST 334.00 FEET TO SAID NORTHEASTERLY LINE OF SAID 7.5 ACRE PARCEL; THENCE SOUTH 53°44'50" EAST 0.04 FEET ALONG SAID NORTHEASTERLY LINE; THENCE SOUTH 29°55'10" WEST 845.38 FEET ALONG THE SOUTHEASTERLY LINE OF SAID 7.5 ACRE PARCEL AND THE SOUTHEASTERLY LINE OF SAID LOT 1 OF THE TURBINE TRACT, TO A POINT THAT IS NORTH 29°55'10" WEST 10.00 FEET, MORE OR LESS, TO THE NORTHEASTERLY CORNER OF THAT PARCEL OF LAND CONVEYED TO JOHN LAMAIN BY DEED RECORDED JANUARY 7, 1931 IN BOOK 8, PAGE 79 OF OFFICIAL RECORDS OF SAID COUNTY; THENCE NORTH 60°01'40" WEST 350.06 FEET ALONG THE NORTHEASTERLY LINE OF SAID LAMAIN PARCEL TO THE MOST NORTHERLY CORNER THEREOF; THENCE NORTH 29°58'20" EAST 46.00 FEET ALONG THE NORTHEASTERLY PROLONGATION OF THE NORTHWESTERLY LINE OF SAID LAMAIN PARCEL, TO A POINT THEREON, DISTANT 366.00 FEET NORTHEASTERLY FROM THE MOST WESTERLY CORNER OF SAID LAMAIN PARCEL; THENCE NORTH 60°01'40" WEST 329.65 FEET TO THE SOUTHEASTERLY LINE OF SAID WALLACE STREET; THENCE NORTH 57°32'10" EAST 533.04 FEET ALONG SAID SOUTHEASTERLY LINE OF WALLACE STREET TO THE WESTERLY CORNER OF PARCEL D OF SAID LOT LINE ADJUSTMENT NO. 04998; THENCE SOUTH 50°14'50" EAST 204.79 FEET TO THE BEGINNING OF A NON-TANGENT CURVE, CONCAVE NORTHWESTERLY, HAVING A RADIUS OF 563.00 FEET, A RADIAL TO SAID BEGINNING OF CURVE BEARS NORTH 01°10'46" EAST; THENCE NORTHEASTERLY 325.91 FEET ALONG SAID CURVE, THROUGH A

CENTRAL ANGLE OF 33°10'01" TO A NON-TANGENT LINE; THENCE NORTH 53°44'18" WEST 310.44
FEET ALONG SAID NON-TANGENT LINE TO SAID SOUTHEASTERLY LINE OF WALLACE STREET
AND THE NORTHERLY CORNER OF SAID PARCEL D; THENCE NORTH 57°32'10" EAST 183.85 FEET
ALONG SAID SOUTHEASTERLY LINE TO AN ANGLE POINT THEREIN; THENCE CONTINUING ALONG
SAID SOUTHEASTERLY LINE, NORTH 57°29'43" EAST 15.57 FEET TO THE POINT OF BEGINNING.

PARCEL 51:          (APN 179-270-012)

PARCEL 51A:

THAT PORTION OF BLOCK 2 AS SHOWN BY MAP OF INDIAN HILL TRACT, IN THE COUNTY OF
RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 10, PAGE 3 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD, AS SHOWN BY
MAP OF DALEY STOCK FARM TRACT AS PER MAP RECORDED IN BOOK 6 PAGE 21 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, WITH THE EASTERLY LINE OF THE
ROAD KNOWN AS CRESTMORE ROAD, AS SHOWN BY MAP SHOWING A CHANGE IN THE COUNTY
ROAD THROUGH THE DALEY STOCK FARM TRACT AS SHOWN ON RECORD OF SURVEY FILED IN
BOOK 4 OF PAGE 21 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF
RIVERSIDE COUNTY; THENCE EASTERLY ALONG THE EASTERLY EXTENSION OF SAID
NORTHERLY LINE OF WILSON ROAD, TO THE CENTER LINE OF THE ROW OF PILES SHOWN ON
SAID AMENDED MAP OF INDIAN HILL TRACT; THENCE CONTINUING EASTERLY ALONG THE
NORTHERLY EXTENSION OF WILSON ROAD, A DISTANCE OF 220 FEET MORE OR LESS; THENCE
NORTH 15° 21' 30" EAST A DISTANCE OF 246 FEET TO THE TRUE POINT OF BEGINNING; THENCE
CONTINUING ALONG THE LAST MENTIONED COURSE, A DISTANCE OF 123 FEET; THENCE
WESTERLY TO A POINT IN THE CENTER LINE OF SAID ROW OF PILES TO A POINT 313.5 FEET
NORTHWESTERLY OF WILSON ROAD, AS MEASURED ALONG THE CENTER LINE OF SAID ROW OF
PILES; THENCE SOUTHERLY ALONG THE CENTER LINE OF SAID ROW OF PILES, A DISTANCE OF
104.5 FEET; THENCE EASTERLY IN A STRAIGHT LINE TO THE TRUE POINT OF BEGINNING.

PARCEL 51B:

AN EASEMENT FOR ROAD PURPOSES OVER THE WESTERLY 30 FEET OF ALL THAT PORTION OF
BLOCK 2, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT AS PER MAP RECORDED IN BOOK
10 PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS
FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD, AS SHOWN BY
MAP OF DALEY STOCK FARM TRACT AS PER MAP RECORDED IN BOOK 6 PAGE 21 OF MAPS, IN THE
OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WITH THE EASTERLY LINE OF THE ROAD
KNOWN AS CRESTMORE ROAD, AS SHOWN BY MAP SHOWING A CHANGE IN THE COUNTY ROAD
THROUGH THE DALEY STOCK FARM TRACT AS SHOWN ON RECORD OF SURVEY FILED IN BOOK 4
OF PAGE 21 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF SAID
COUNTY; THENCE EASTERLY ALONG THE EASTERLY EXTENSION OF SAID NORTHERLY LINE OF
WILSON ROAD TO THE CENTER LINE OF THE ROW OF PILES SHOWN ON SAID AMENDED MAP OF
INDIAN HILL TRACT; THENCE CONTINUING EASTERLY ALONG THE NORTHERLY EXTENSION OF
WILSON ROAD, A DISTANCE OF 220 FEET MORE OR LESS; THENCE NORTH 15° 21' 30" EAST, A
DISTANCE OF 246 FEET TO THE TRUE POINT OF BEGINNING; THENCE WESTERLY TO A POINT IN
THE CENTER LINE OF SAID ROW OF PILES TO A POINT 209 FEET NORTHWESTERLY OF WILSON
ROAD, AS MEASURED ALONG THE CENTER LINE OF SAID ROW OF PILES; THENCE SOUTHERLY
ALONG THE CENTER LINE OF SAID ROW OF PILES, A DISTANCE OF 209 FEET; THENCE EASTERLY
IN A STRAIGHT LINE TO THE TRUE POINT OF BEGINNING.

PARCEL 52:

PARCEL 52A:    (APN 179-270-024)

ALL THAT PORTION OF BLOCK 2 AS SHOWN BY MAP OF INDIAN HILL TRACT ON FILE IN BOOK 10 PAGE 3 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD, AS SHOWN BY MAP OF DALEY STOCK FARM TRACT ON FILE IN BOOK 6 PAGE 21 OF MAPS IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF RIVERSIDE, CALIFORNIA, WITH THE EASTERLY LINE OF THE ROAD NOW KNOWN AS CRESTMORE ROAD, AS SHOWN BY MAP SHOWING A CHANGE IN THE COUNTY ROAD THROUGH THE DALEY STOCK FARM TRACT ON FILE IN BOOK 4 PAGE 21 OF RECORDS OF SURVEY IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF RIVERSIDE, CALIFORNIA:
THENCE EASTERLY ALONG THE EASTERLY EXTENSION OF SAID NORTHERLY LINE OF WILSON ROAD TO THE CENTER LINE OF THE ROW OF PILES AS SHOWN ON SAID AMENDED MAP OF INDIAN HILL TRACT THE TRUE POINT OF BEGINNING; THENCE CONTINUING EASTERLY ALONG SAID NORTHERLY LINE OF WILSON ROAD, 220 FEET, MORE OR LESS; THENCE NORTH 15° 21' 30" EAST, A DISTANCE OF 123 FEET; THENCE WESTERLY TO A POINT ON THE CENTER LINE OF SAID ROW OF PILES, DISTANT 104.5 FEET NORTHERLY FROM THE NORTHERLY LINE OF WILSON ROAD; THENCE SOUTHERLY ALONG THE CENTER LINE OF SAID ROW OF PILES, A DISTANCE OF 104.5 FEET TO THE TRUE POINT OF BEGINNING.


PARCEL 52B:    (APN 179-270-013)

THAT PORTION OF LOT 2, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT RECORDED IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD OF DALEY STOCK FARM TRACT AS PER MAP RECORDED IN BOOK 6, PAGE 21 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY, WITH THE EASTERLY LINE OF CRESTMORE ROAD, AS SHOWN ON RECORD OF SURVEY FILED IN BOOK 4, PAGE 21 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF RIVERSIDE COUNTY; THENCE EASTERLY ALONG THE EASTERLY EXTENSION OF SAID NORTHERLY LINE OF WILSON ROAD TO THE CENTER LINE OF THE ROW OF PILES AS SHOWN ON SAID AMENDED MAP OF INDIAN HILL TRACT; THENCE CONTINUING EASTERLY ALONG THE NORTHERLY EXTENSION OF WILSON ROAD, 220 FEET; THENCE NORTH 15° 21' 30" EAST, 369 FEET FOR THE TRUE POINT OF BEGINNING, SAID POINT ALSO BEING THE NORTHEASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO MARY JANE MC WILLIAMS, AN UNMARRIED WOMAN, BY DEED RECORDED AUGUST 21, 1980 AS INSTRUMENT NO. 151713, OFFICIAL RECORDS; THENCE CONTINUING NORTH 15° 21' 30" EAST, 123 FEET TO THE SOUTHEASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO FRED RANDOLPH CHRISTOPHERSON AND LYNN BROOKS CHRISTOPHERSON, HUSBAND AND WIFE, BY DEED RECORDED JUNE 3, 1980 AS INSTRUMENT NO. 101981, OFFICIAL RECORDS; THENCE NORTHWESTERLY ON THE SOUTHWESTERLY LINE OF SAID PARCEL SO CONVEYED TO CHRISTOPHERSON, 305.9 FEET, MORE OR LESS, TO THE MOST WESTERLY CORNER THEREOF; THENCE SOUTHWESTERLY IN A DIRECT LINE, 106 FEET, MORE OR LESS, TO THE MOST NORTHERLY CORNER OF SAID PARCEL SO CONVEYED TO MC WILLIAMS; THENCE SOUTHEASTERLY ALONG THE NORTHEASTERLY LINE OF SAID PARCEL SO CONVEYED TO MC WILLIAMS, 290 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

26

EXCEPTING THEREFROM THE WESTERLY 30 FEET FOR A PERPETUAL EASEMENT FOR ROAD PURPOSES.

PARCEL 53:    (APN 179-270-014)

THAT PORTION OF LOT 2, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, ON FILE IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD, AS SHOWN BY MAP OF DALEY STOCK FARM, ON FILE IN BOOK 6, PAGE 21 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WITH THE EASTERLY LINE OF THE ROAD KNOWN AS CRESTMORE ROAD, AS SHOWN BY MAP SHOWING THE CHANGE IN THE COUNTY ROAD THROUGH THE DALEY STOCK FARM TRACT ON FILE IN BOOK 4, PAGE 21, OF RECORDS OF SURVEY, RIVERSIDE COUNTY RECORDS; THENCE EASTERLY ALONG THE EASTERLY EXTENSION OF SAID NORTHERLY LINE OF WILSON ROAD, TO THE CENTER LINE OF THE ROW OF PILES, AS SHOWN ON SAID AMENDED MAP OF INDIAN HILL TRACT; THENCE NORTH 05° 14' EAST, ALONG SAID CENTER LINE OF SAID ROW OF PILES, 419.5 FEET TO THE NORTHERLY CORNER OF THAT CERTAIN PARCEL CONVEYED TO CLARA MISHLER, A WIDOW, BY DEED RECORDED APRIL 2, 1954 AS INSTRUMENT NO. 16393, OFFICIAL RECORDS, FOR THE TRUE POINT OF BEGINNING; THENCE NORTH 05° 14' EAST, ON SAID CENTER LINE OF ROW OF PILES, 100 FEET; THENCE AT A RIGHT ANGLE EASTERLY TO A POINT ON THE WEST BOUNDARY OF THE SANTA ANA RIVER FLOOD CONTROL LEVEE; THENCE SOUTHERLY, ON SAID WEST BOUNDARY OF THE SANTA ANA RIVER FLOOD CONTROL LEVEE TO THE MOST EASTERLY CORNER OF SAID PARCEL SO CONVEYED TO CLARA MISHLER, A WIDOW; THENCE WESTERLY, ON THE NORTHERLY LINE OF SAID PARCEL SO CONVEYED TO CLARA MISHLER, A WIDOW, TO THE TRUE POINT OF BEGINNING.

EXCEPTING THEREFROM THE WESTERLY 30 FEET FOR ROAD PURPOSES.

PARCEL 54:    (APN 179-270-015)

THAT PORTION OF LOT 2, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, ON FILE IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD, AS SHOWN BY MAP OF DALEY STOCK FARM ON FILE IN BOOK 6, PAGE 21 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY, WITH THE EASTERLY LINE OF THE ROAD KNOWN AS CRESTMORE ROAD, AS SHOWN BY MAP SHOWING THE CHARGE IN THE COUNTY ROAD THROUGH THE DALEY STOCK FARM TRACT ON FILE IN BOOK 4, PAGE 21 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY; THENCE EASTERLY, ALONG THE EASTERLY EXTENSION OF SAID NORTHERLY LINE OF WILSON ROAD, TO THE CENTER LINE OF THE ROW OF PILES, AS SHOWN ON SAID AMENDED MAP OF INDIAN HILL TRACT; THENCE NORTH 05° 14' EAST, ALONG SAID CENTER LINE OF SAID ROW OF PILES, 519.5 FEET TO THE NORTHWESTERLY CORNER OF THAT CERTAIN PARCEL CONVEYED TO JERRY D. BARCHENGER AND ELVIE J. BARCHENGER, HUSBAND AND WIFE AS JOINT TENANTS, BY DEED RECORDED NOVEMBER 21, 1926 AS INSTRUMENT NO. 112588, FOR THE TRUE POINT OF BEGINNING; THENCE AT A RIGHT ANGLE EASTERLY TO A POINT ON THE WEST BOUNDARY OF THE SANTA ANA RIVER FLOOD CONTROL LEVEE; THENCE NORTHERLY ON SAID WEST BOUNDARY OF THE SANTA ANA RIVER FLOOD CONTROL LEVEE, 100 FEET MORE OR LESS, TO THE MOST EASTERLY CORNER OF SAID PARCEL SO CONVEYED TO JOHN FREDERICK ROTRAMEL, AN UNMARRIED MAN, BY DEED RECORDED NOVEMBER 21, 1966, AS INSTRUMENT NO. 112590; THENCE WESTERLY ON THE SOUTHERLY LINE OF SAID PARCEL SO CONVEYED TO JOHN FREDERICK ROTRAMEL TO THE SOUTHWESTERLY CORNER OF SAID PARCEL CONVEYED TO JOHN FREDERICK ROTRAMEL;

27

THENCE SOUTH 05° 14' WEST ON THE CENTER LINE OF SAID ROW OF PILES, 100 FEET MORE OR LESS TO THE POINT OF BEGINNING.

PARCEL 55:

PARCEL 55A:   (APN 179-270-019)

**INTENTIONALLY DELETED**

PARCEL 55B:   (APN 179-270-016)

THAT PORTION OF LOT 2, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT, ON FILE IN BOOK 10 PAGE 3 OF MAPS, RIVERSIDE COUNTY RECORDS, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD, AS SHOWN BY MAP OF DALEY STOCK FARM ON FILE IN BOOK 6 PAGE 21 OF MAPS, RIVERSIDE COUNTY RECORDS, WITH THE EASTERLY LINE OF THE ROAD NOW KNOWN AS CRESTMORE ROAD, AS SHOWN BY MAP SHOWING THE CHANGE IN THE COUNTY ROAD THROUGH THE DALEY STOCK FARM TRACT, ON FILE IN BOOK 4 PAGE 21 OF RECORDS OF SURVEY, RIVERSIDE COUNTY RECORDS; THENCE EASTERLY ALONG THE EASTERLY EXTENSION OF SAID NORTHERLY LINE OF WILSON ROAD TO THE CENTER LINE OF THE ROW OF PILES, AS SHOWN ON SAID AMENDED MAP OF INDIAN HILL TRACT; THENCE NORTH 5° 14' EAST ALONG SAID CENTER LINE OF SAID ROW OF PILES, 394.5 FEET; THENCE CONTINUING NORTH 5° 14' EAST ALONG SAID CENTER LINE OF SAID ROW OF PILES, 344.5 FEET, MORE OR LESS, TO THE MOST NORTHEASTERLY CORNER OF THAT CERTAIN 4.355 ACRES OF LAND DEEDED BY MARY S. EVANS TO E. W. TUCKER ON MAY 18, 1937 AND RECORDED MAY 26, 1937 IN BOOK 324 PAGE 178 OF OFFICIAL RECORDS, FOR THE TRUE POINT OF BEGINNING; THENCE AT RIGHT ANGLES EASTERLY, 352.44 FEET, MORE OR LESS, TO THE WEST BOUNDARY OF SANTA ANA RIVER FLOOD CONTROL LEVEE; THENCE SOUTHERLY ON SAID WESTERLY BOUNDARY OF THE SANTA ANA RIVER FLOOD CONTROL LEVEE, 119.5 FEET; THENCE WESTERLY TO A POINT ON THE CENTER LINE OF SAID ROW OF PILES, DISTANT 119.5 FEET SOUTHERLY FROM THE POINT OF BEGINNING; THENCE NORTHERLY ON THE CENTER LINE OF SAID ROW OF PILES, 119.5 FEET TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THE WESTERLY 30 FEET FOR ROAD PURPOSES.

PARCEL 56:        (A portion of APN 179-270-019, 021, 022 AND 023)

PARCEL D, AS SHOWN ON EXHIBIT "B", OF LOT LINE ADJUSTMENT NO. LLA 04995, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, RECORDED JANUARY 23, 2007, AS INSTRUMENT NO. 2007-0052626, OF OFFICIAL RECORDS, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

THAT PORTION OF LOT 2 OF THE AMENDED MAP OF INDIAN HILL TRACT, IN THE UNINCORPORATED TERRITORY OF THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 10, PAGE 3 OF MAPS, RECORDS OF SAID COUNTY, DESCRIBED AS FOLLOWS:

COMMENCING AT THE INTERSECTION OF THE SOUTHEASTERLY PROLONGATION OF THE NORTHEASTERLY LINE OF 34TH STREET, SHOWN AS WILSON STREET, 40.00 FEET WIDE, ON SAID MAP, WITH THE EASTERLY LINE OF THE LANDS OF MILLIE J. VOORHIES, AS SHOWN ON SAID MAP; THENCE NORTH 14°47'20" EAST 177.19 FEET ALONG SAID EASTERLY LINE TO THE TRUE POINT OF BEGINNING; THENCE LEAVING SAID EASTERLY LINE, NORTH 26°58'54" EAST 211.54 FEET; THENCE SOUTH 57°27'50" EAST 158.47 FEET; THENCE SOUTH 08°49'09" WEST 370.07 FEET TO A POINT ON THE EASTERLY LINE OF THAT PARCEL CONVEYED TO SYLVESTER REXROAT, PER DEED RECORDED

AUGUST 13, 1945 IN BOOK 589, PAGE 512 OF OFFICIAL RECORDS OF SAID COUNTY, SAID POINT BEING NORTH 07°19'16" EAST 32.51 FEET FROM THE SOUTHEASTERLY CORNER OF SAID REXROAT PARCEL; THENCE SOUTH 07°19'16" WEST 32.51 FEET ALONG LAST SAID SOUTHEASTERLY LINE TO SAID SOUTHEASTERLY CORNER, ALSO BEING ON SAID SOUTHEASTERLY PROLONGATION OF THE NORTHEASTERLY LINE OF 34TH STREET; THENCE SOUTH 60°01'40" EAST 148.52 FEET ALONG SAID SOUTHEASTERLY PROLONGATION TO ITS INTERSECTION WITH THE EASTERLY LINE OF THAT CERTAIN TRACT OF LAND CONVEYED TO E.W. TUCKER BY DEED RECORDED MAY 26, 1937 IN BOOK 324, PAGE 178 OF OFFICIAL RECORDS OF SAID COUNTY; THENCE NORTH 04°47'51" EAST 738.20 FEET ALONG LAST SAID EASTERLY LINE TO THE NORTHEASTERLY CORNER OF SAID PARCEL CONVEYED TO E.W. TUCKER; THENCE WESTERLY AND SOUTHERLY ALONG THE NORTHERLY LINE OF SAID PARCEL CONVEYED TO E.W. TUCKER AND THE SOUTHERLY AND SAID EASTERLY LINE OF THE LANDS OF MILLIE J. VOORHIES, THE FOLLOWING THREE COURSES: SOUTH 76°31'20" WEST 100.00 FEET; THENCE SOUTH 65°46'20" WEST 213.00 FEET; THENCE SOUTH 14°47'20" WEST 264.79 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 57:

PARCEL 57A:    (APN 179-340-005 AND 179-310-005)

THAT PORTION OF LOT 2 OF AMENDED MAP OF INDIAN HILL TRACT, AS SHOWN BY MAP ON FILE IN BOOK 10, PAGE 3 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF PARCEL 55A OF RECORD OF SURVEY ON FILE IN BOOK 26, PAGES 87 THROUGH 92 OF RECORDS OF SURVEY, RECORDS OF SAID RIVERSIDE COUNTY;

THENCE NORTH 35°38'11" EAST, ALONG THE WEST LINE OF THE STAGE 2 LEVEE R/W AS SHOWN BY SAID RECORD OF SURVEY, A DISTANCE OF 779.92 FEET TO THE MOST SOUTHERLY CORNER OF PARCEL NO. 47 OF JUDGMENT AND FINAL ORDER OF CONDEMNATION BY DOCUMENT RECORDED AUGUST 7, 1963 IN BOOK 3459, PAGE 298, ET SEQ., OF OFFICIAL RECORDS OF SAID RIVERSIDE COUNTY;

THENCE NORTH 54°21'49" WEST, ALONG THE SOUTHERLY LINE OF SAID PARCEL NO. 47, A DISTANCE OF 153.01 FEET TO THE EASTERLY LINE OF THAT CERTAIN RIGHT OF WAY EASEMENT GRANTED TO THE COUNTY OF RIVERSIDE BY DOCUMENT RECORDED SEPTEMBER 27, 1938, IN BOOK 390, PAGE 475, ET SEQ., OF OFFICIAL RECORDS OF SAID RIVERSIDE COUNTY, AND THE POINT OF BEGINNING OF THE PARCEL OF LAND BEING DESCRIBED;

THENCE NORTH 15°51'20" EAST, ALONG SAID EASTERLY LINE AND ALONG THE WESTERLY LINE OF SAID PARCEL NO. 47, A DISTANCE OF 507.83 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVING WESTERLY AND HAVING A RADIUS OF 24,140.37 FEET;

THENCE NORTHERLY TO THE LEFT ALONG SAID CURVE AND CONTINUING ALONG SAID EASTERLY LINE AND ALONG SAID WESTERLY LINE OF PARCEL NO. 47, THROUGH A CENTRAL ANGLE OF 2°47'52" AN ARC LENGTH OF 1178.78 FEET TO THE END OF SAID CURVE;

THENCE NORTH 19°59'30" EAST, A DISTANCE OF 677.77 FEET TO AN INTERSECTION WITH THE WESTERLY LINE OF THAT CERTAIN PARCEL OF LAND CONVEYED TO THE CITY OF RIVERSIDE BY DEED RECORDED IN BOOK 1074, PAGE 193 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; SAID POINT ALSO BEING THE MOST EASTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO THEODORA DE ALCAZAR BY DEED RECORDED IN BOOK 722, PAGE 178 OF DEEDS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA;

THENCE SOUTH 32°02'45" WEST, ALONG SAID WESTERLY LINE, A DISTANCE OF 620.32 FEET TO AN INTERSECTION WITH THE WESTERLY LINE OF SAID STAGE 2 LEVEE R/W;

THENCE SOUTH 13°03'18" WEST, ALONG SAID LAST MENTIONED WESTERLY LINE, A DISTANCE OF 86.26 FEET TO THE BEGINNING OF A TANGENT CURVE CONCAVING WESTERLY AND HAVING A RADIUS OF 24,020.37 FEET; SAID CURVE BEING CONCENTRIC WITH AND DISTANT 120.00 FEET EASTERLY AS MEASURED RADIALLY TO THE PREVIOUS DESCRIBED CURVE HAVING A RADIUS OF 24,140.37 FEET;

THENCE SOUTHERLY TO THE RIGHT ALONG SAID CURVE HAVING A RADIUS OF 24,020.37 FEET AND CONTINUING ALONG SAID WESTERLY LINE OF THE STAGE 2 LEVEE R/W, THROUGH A CENTRAL ANGLE OF 2°47'52" AN ARC LENGTH OF 1172.92 FEET TO THE END OF SAID CURVE;

THENCE SOUTH 15°51'10" WEST, CONTINUING ALONG SAID WESTERLY LINE OF THE STAGE 2 LEVEE R/W, A DISTANCE OF 464.67 FEET TO THE WESTERLY PROLONGATION OF SAID SOUTHERLY LINE OF PARCEL NO. 47;

THENCE SOUTH 54°21'49" EAST, ALONG SAID WESTERLY PROLONGATION OF THE SOUTHERLY LINE OF PARCEL NO. 47, A DISTANCE OF 127.53 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ANY AND ALL WATER RIGHTS IN, TO AND/OR ON THE PROPERTY, AS RESERVED BY THE CITY OF RIVERSIDE, A MUNICIPAL CORPORATION OF THE STATE OF CALIFORNIA, IN DEED RECORDED JANUARY 10, 2007, AS INSTRUMENT NO. 2007-0020306, OF OFFICIAL RECORDS.

PARCEL 57B:   (APN 179-340-002)

THAT PORTION OF LOT 2 OF AMENDED MAP OF INDIAN HILL TRACT, AS SHOWN BY MAP ON FILE IN BOOK 10, PAGE 3 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST NORTHERLY CORNER OF PARCEL 55A OF RECORD OF SURVEY ON FILE IN BOOK 26, PAGES 87 THROUGH 92 OF RECORDS OF SURVEY, RECORDS OF SAID RIVERSIDE COUNTY;

THENCE NORTH 35°38'11" EAST, ALONG THE WEST LINE OF THE STAGE 2 LEVEE R/W AS SHOWN BY SAID RECORD OF SURVEY, A DISTANCE OF 779.92 FEET TO THE MOST SOUTHERLY CORNER OF PARCEL NO. 47 OF JUDGMENT AND FINAL ORDER OF CONDEMNATION BY DOCUMENT RECORDED AUGUST 7, 1963 IN BOOK 3459, PAGE 298, ET SEQ., OF OFFICIAL RECORDS OF SAID RIVERSIDE COUNTY;

THENCE NORTH 54°21'49" WEST, ALONG THE SOUTHERLY LINE OF SAID PARCEL NO. 47, A DISTANCE OF 153.01 FEET TO THE EASTERLY LINE OF THAT CERTAIN RIGHT OF WAY EASEMENT GRANTED TO THE COUNTY OF RIVERSIDE BY DOCUMENT RECORDED SEPTEMBER 27, 1938, IN BOOK 390, PAGE 475, ET SEQ., OF OFFICIAL RECORDS OF SAID RIVERSIDE COUNTY;

THENCE CONTINUING NORTH 54°21'49" WEST, ALONG THE WESTERLY PROLONGATION OF SAID SOUTHERLY LINE OF PARCEL NO. 47, A DISTANCE OF 127.53 FEET TO THE WESTERLY LINE OF SAID RIGHT OF WAY EASEMENT GRANTED TO THE COUNTY OF RIVERSIDE;

THENCE SOUTH 15°51'20" WEST, ALONG SAID WESTERLY LINE, A DISTANCE OF 828.83 FEET TO THE POINT OF BEGINNING.

EXCEPT THEREFROM ANY AND ALL WATER RIGHTS IN, TO AND/OR ON THE PROPERTY, AS RESERVED BY THE REDEVELOPMENT AGENCY OF THE CITY OF RIVERSIDE, CALIFORNIA, A PUBLIC BODY, CORPORATE AND POLITIC, IN DEED RECORDED JANUARY 10, 2007, AS INSTRUMENT NO. 2007-0020307, OF OFFICIAL RECORDS.

PARCEL 58:          (APN 179-170-008)

LOT 7 OF TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA.

EXCEPT THEREFROM ALL WATER AND WATER RIGHTS AS RESERVED BY THE RIVERSIDE LAND AND IRRIGATING CO., A CORPORATION, IN DEED RECORDED FEBRUARY 20, 1905, IN BOOK 199, PAGE 1, OF DEEDS.

PARCEL 59:          (APN 179-230-010)

PARCEL 1 OF PARCEL MAP NO. 10879, IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AS PER MAP FILED IN BOOK 56, PAGES 13, OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 60:          (APN 179-270-011)

ALL THAT PORTION OF BLOCK 2, AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT, ON FILE IN BOOK 10, PAGE 3 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF RIVERSIDE, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE INTERSECTION OF THE NORTHERLY LINE OF WILSON ROAD, AS SHOWN BY MAP OF DALEY STOCK FARM TRACT, ON FILE IN BOOK 6, PAGE 21 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF RIVERSIDE, CALIFORNIA, WITH THE EASTERLY LINE OF THE ROAD NOW KNOWN AS CRESTMORE ROAD, AS SHOWN BY MAP SHOWING A CHANGE IN THE COUNTY ROAD THROUGH THE DALEY STOCK FARM TRACT, ON FILE IN BOOK 4, PAGE 21 OF RECORDS OF SURVEY, IN THE OFFICE OF THE COUNTY RECORDER OF THE COUNTY OF RIVERSIDE, CALIFORNIA; THENCE EASTERLY ALONG THE EASTERLY EXTENSION OF SAID NORTHERLY LINE OF WILSON ROAD TO THE CENTER LINE OF THE ROW OF PILES AS SHOWN ON SAID AMENDED MAP OF INDIAN HILL TRACT; THENCE CONTINUING EASTERLY ALONG THE NORTHERLY LINE OF WILSON ROAD, 220.00 FEET, MORE OR LESS; THENCE NORTH 15° 21' 30" EAST, A DISTANCE OF 123.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE CONTINUING NORTHERLY ALONG THE LAST MENTIONED COURSE, A DISTANCE OF 123.00 FEET; THENCE WESTERLY TO A POINT ON THE CENTER LINE OF SAID AFOREMENTIONED ROW OF PILES TO A POINT 209.00 FEET NORTHERLY OF THE NORTHERLY LINE OF WILSON ROAD; THENCE SOUTHERLY ALONG SAID ROW OF PILES, A DISTANCE OF 104.5 FEET; THENCE EASTERLY IN A STRAIGHT LINE TO THE TRUE POINT OF BEGINNING.

EXCEPT THEREFROM THE WESTERLY 30 FEET FOR A PERPETUAL EASEMENT FOR ROAD PURPOSES.

PARCEL 61:

PARCEL 61A:   (APN 179-270-017)

THAT PORTION OF LOTS 2 AND 3 OF TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF LOT 2; THENCE NORTH 59° 48' WEST, 269.40 FEET TO THE POINT OF BEGINNING; THENCE NORTH 12° 29' EAST, 154.00 FEET; THENCE NORTH 45° 88' WEST TO A POINT WHICH IS 150.00 FEET MEASURED AT RIGHT ANGLES FROM THE MOST WESTERLY LINE OF LOT 2; THENCE SOUTHERLY AND PARALLEL TO THE WESTERLY LINE OF LOT 2 TO A POINT WHICH IS 191.00 FEET FROM THE CENTER LINE OF 34TH STREET AS MEASURED ALONG SAID PARALLEL LINE; THENCE AT A RIGHT ANGLE EASTERLY, 75.00 FEET; THENCE AT A RIGHT ANGLE SOUTHERLY 171.00 FEET; THENCE AT A RIGHT ANGLE EASTERLY AND PARALLEL WITH THE CENTER LINE OF 34TH STREET, 76.00 FEET, MORE OR LESS, TO THE WESTERLY LINE OF LOT 2 OF INDIAN HILLS AS SHOWN BY MAP ON FILE IN BOOK 10, PAGE 3 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 14° 51' EAST, 337.70 FEET; THENCE NORTH 65° 50' EAST, 213.00 FEET; THENCE NORTH 76° 35' EAST, 100.00 FEET; THENCE NORTH 37° 14' EAST, 126.10 FEET TO THE POINT OF BEGINNING.

PARCEL 61B:

THAT PORTION OF LOT 2 OF TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING AT THE MOST WESTERLY CORNER OF SAID LOT 2; THENCE ALONG THE EASTERLY PROLONGATION OF THE NORTHERLY LINE OF 34TH STREET, 225.00 FEET; THENCE NORTHERLY AT A RIGHT ANGLE 120.00 FEET; THENCE AT A RIGHT ANGLE AND PARALLEL WITH THE NORTHERLY LINE OF 34TH STREET, 76.00 FEET TO THE MOST EASTERLY LINE OF SAID LOT 2; THENCE SOUTH 14° 51' WEST, 125.00 FEET MORE OR LESS, TO THE EASTERLY PROLONGATION OF THE NORTHERLY LINE OF 34TH STREET; THENCE 59° 58' WEST, ALONG THE EASTERLY PROLONGATION OF 34TH STREET, 113.00 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

PARCEL 61C:    (APN 179-270-018)

THAT PORTION OF LOTS 2 AND 3 OF RIVERSIDE LAND AND IRRIGATING COMPANY'S TURBINE TRACT, AS SHOWN BY MAP ON FILE IN BOOK 5, PAGE 116 OF MAPS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWESTERLY CORNER OF SAID LOT 2, SAID POINT OF BEGINNING BEING LOCATED ON THE NORTHERLY LINE OF THE COUNTY ROAD AS SHOWN ON SAID MAP; THENCE SOUTH 59° 58' EAST, ON THE NORTHERLY LINE OF SAID COUNTY ROAD 150.00 FEET; THENCE NORTH 29° 59' EAST, TO A POINT ON THE NORTHEASTERLY LINE OF THAT CERTAIN 1.81 ACRE TRACT OF LAND CONVEYED TO MILLIE J. VOORHEES, BY DEED RECORDED MAY 23, 1913 IN BOOK 375, PAGE 379 OF DEEDS, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA; THENCE NORTH 45° 8' WEST, ON THE NORTHEASTERLY LINE OF SAID 1.81 ACRE TRACT TO THE MOST NORTHERLY CORNER THEREOF; THENCE SOUTH 29° 59' WEST, ON THE NORTHWESTERLY LINE OF SAID PARCEL 247.40 FEET TO THE NORTHWEST CORNER OF LOT 2 OF SAID TURBINE TRACT; THENCE SOUTH 29° 59' WEST, ON THE NORTHWESTERLY LINE OF SAID LOT 2, 812.00 FEET, MORE OR LESS, TO THE POINT OF BEGINNING.

EXCEPTING THEREFROM THE FOLLOWING:

BEGINNING AT THE SOUTHWESTERLY CORNER OF SAID LOT 2, SAID POINT OF BEGINNING BEING LOCATED ON THE NORTHERLY LINE OF COUNTY ROAD; THENCE SOUTH 59° 58' EAST, ON THE NORTHERLY LINE OF SAID COUNTY ROAD, 150.00 FEET TO THE TRUE POINT OF BEGINNING; THENCE NORTH 29° 59' EAST, 170.00 FEET; THENCE NORTH 59° 58' WEST AND PARALLEL WITH THE NORTHERLY LINE OF SAID COUNTY ROAD, 69.00 FEET; THENCE SOUTH 29° 59' WEST 170.00 FEET

TO THE NORTHERLY LINE OF SAID COUNTY ROAD; THENCE SOUTH 59° 58' EAST ON THE NORTHERLY LINE OF SAID COUNTY ROAD, 69.00 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 62:          (APN 178-310-024)

IN THE COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, ALL THAT PORTION OF LOT 2 AS SHOWN BY AMENDED MAP OF INDIAN HILL TRACT RECORDED IN BOOK 10 OF MAPS, AT PAGE 3 THEREOF, RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, MORE PARTICULARLY DESCRIBED AS FOLLOWS:

COMMENCING AT THE COMMON CORNER TO SAID LOT 2 AND LOT A OF SAID AMENDED MAP OF INDIAN HILL TRACT, SAID CORNER BEING THE MOST SOUTHERLY CORNER OF SAID LOT A, SAID POINT ALSO BEING ON THE SOUTHEASTERLY PROLONGATION OF THE NORTHEASTERLY LINE OF SECOND STREET AS SHOWN ON SAID MAP;

THENCE NORTH 52° 41' WEST ALONG SAID SOUTHEASTERLY PROLONGATION OF THE NORTHEASTERLY LINE OF SECOND STREET, A DISTANCE OF 37.58 FEET TO AN ANGLE POINT IN THE EASTERLY LINE OF TURBINE STREET AS SHOWN ON SAID MAP;

THENCE SOUTH 14° 33' 30" WEST ALONG SAID EASTERLY LINE OF TURBINE STREET, A DISTANCE OF 428.63 FEET TO AN ANGLE POINT THEREIN;

THENCE SOUTH 08° 11' 30" EAST ALONG SAID EASTERLY LINE OF TURBINE STREET, A DISTANCE OF 324.08 FEET TO A POINT THEREON, SAID POINT BEING THE SOUTHWESTERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO JOHN AND MERCEDES GUERRERO BY DEED RECORDED IN BOOK 1009 OF OFFICIAL RECORDS OF RIVERSIDE COUNTY, CALIFORNIA, AT PAGE 563 THEREOF, SAID POINT ALSO BEING THE MOST NORTHERLY CORNER OF THAT CERTAIN PARCEL OF LAND CONVEYED TO THEODORA DE ALCARAZ BY DEED RECORDED IN BOOK 722 OF DEEDS OF RIVERSIDE COUNTY, CALIFORNIA, AT PAGE 178 THEREOF;

THENCE SOUTH 52° 41' EAST ALONG THE NORTHEASTERLY LINE OF THE PARCEL SO CONVEYED TO ALCARAZ, A DISTANCE OF 148.45 FEET TO A POINT THEREON FOR THE TRUE POINT OF BEGINNING;

THENCE CONTINUING SOUTH 52° 41' EAST ALONG SAID NORTHEASTERLY LINE, A DISTANCE OF 135.00 FEET TO THE MOST EASTERLY CORNER OF THE PARCEL CONVEYED TO ALCARAZ AS AFORESAID, SAID POINT ALSO BEING THE MOST SOUTHERLY CORNER OF THE PARCEL CONVEYED TO GUERRERO AS AFORESAID;

THENCE SOUTH 32° 02' 45" WEST ALONG THE SOUTHEASTERLY LINE OF THE PARCEL SO CONVEYED TO ALCARAZ, A DISTANCE OF 582.39 FEET TO THE MOST SOUTHERLY CORNER THEREOF;

THENCE NORTH 19° 18' 35" EAST, A DISTANCE OF 609.79 FEET TO THE TRUE POINT OF BEGINNING.

PARCEL 63:          (APN 178-310-018)

**INTENTIONALLY DELETED**

PARCEL 64:          (APN 179-230-012)
**INTENTIONALLY DELETED**

EXHIBIT A
TO DEED OF TRUST

DESCRIPTION OF ENGELAUF PROPERTY

| PROPERTY | CURRENT OWNER |
|---|---|
| 178-252-003 | Engelauf |
| 178-252-004 | Engelauf |
| 178-261-001 | Engelauf |
| 178-261-002 | Engelauf |
| 178-262-001 | Engelauf |
| 178-262-002 | Engelauf |

**EXHIBIT "B"**



**Moses Green Parcels**
**Tentative Tract Map 32976, Lots 151, 152 and 153**

EXHIBIT "C"

THE "SANDOVAL PARCELS" SHALL MEAN THE TWO REMAINDER PARCELS OF PARCEL MAP NO. 32971 ABUTTING 34TH STREET, ONE LYING WEST OF APN 179-270-004, AND ONE LYING EAST OF APN 179-270-005.

**EXHIBIT "D"**

All real property currently owned by the Church within Parcels 2 and 4 through 6 of Parcel Map No. 32971