**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
                                                                    :
In re                                                               :          Chapter 11 Case No.
                                                                    :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,                        :          **08-13555 (JMP)**
                                                                    :
          Debtors.                                                  :          (Jointly Administered)
                                                                    :
                                                                    :
------------------------------------------------------------------x

NOTICE OF PARTIAL TRANSFER OF CLAIM
PURSUANT TO FRBP RULE 3001(e)(2)

1.       TO:                    Acta Asset Management ASA ("Transferor")
                                Kungsgatan 8
                                111 43 Stockholm


2.       Please take notice that the transfer of a portion of your claim against LEHMAN BROTHERS
HOLDINGS INC., et al, Case No. 08-13555 (JMP) arising from and relating to Proof of Claim No. 62822
(attached as Exhibit A hereto), has been transferred to:

                                Barclays Bank PLC ("Transferee")
                                745 Seventh Avenue
                                New York, NY 10019
                                Telephone: (212) 412-2865
                                Email:  daniel.crowley@barclayscapital.com
                                          jessica.fainman@barclayscapital.com


          An executed "Evidence of Transfer of Claim" is attached as Exhibit B hereto.  All distributions
and notices regarding the transferred portion of the claim should be sent to the Transferee as provided in
Exhibit C hereto.

3.       No action is required if you do not object to the transfer of your claim.  However, **IF YOU
OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS
NOTICE, YOU MUST:**

--       **FILE A WRITTEN OBJECTION TO THE TRANSFER** with:

          United States Bankruptcy Court
          Southern District of New York
          Attn: Clerk of Court
          Alexander Hamilton Custom House
          One Bowling Green
          New York, NY 10004-1408


--       **SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE**

--      Refer to **INTERNAL CONTROL NO.** _____ in your objection and any further
correspondence related to this transfer.

4.      If you file an objection, a hearing will be scheduled.  **IF YOUR OBJECTION IS NOT
TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED FOR THE TRANSFEROR ON
OUR RECORDS AS A CLAIMANT IN THIS PROCEEDING.**

CLERK

-----------------------------------------------------------------------------------------------------------------

**FOR CLERK'S OFFICE USE ONLY:**

This notice was mailed to the first named party, by first class mail, postage prepaid on _____, 2009.

INTERNAL CONTROL NO._____

Copy: (check) Claims Agent__ Transferee__ Debtors' Attorney__


_____
Deputy Clerk

**<u>EXHIBIT A</u>**

[Proof of Claim]

| **United States Bankruptcy Court/Southern District of New York** | **LEHMAN SECURITIES PROGRAMS PROOF OF CLAIM** |
|---|---|
| Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | |

| In Re:<br>Lehman Brothers Holdings Inc., et al.,<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)        0000062822 |
|---|---|---|

Note: This form may not be used to file claims other than those based on Lehman Programs Securities as listed on http://www.lehman-docket.com as of July 17, 2009

Name and address of Creditor (and name and address where notices should be sent if different from Creditor)

Ålandsbanken Sverige AB (publ), in its capacity     with copies also to: Brown Rudnick LLP
as custodian for, and authorized representative of     One Financial Center
the creditors set forth on Schedule 1, attached     Boston, MA 0211
Attn: Operations, Stureplan 19     Attn: Nina E. Andersson-Willard, Esq.
107 81 Stockholm     Telephone number: 617.856.8319
Telephone number: +46 8 791 47 03     Email Address: nandersson@brownrudnick.com
Email Address: emissionsgruppen@alandsbanken.se

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
   (If known)

Filed on: _____

Name and address where payment should be sent (if different from above)

Ålandsbanken Sverige AB (publ)
Attn: Operations, Stureplan 19
107 81 Stockholm

Telephone number: +46 8 791 47 03          Email Address: emissionsgruppen@alandsbanken.se

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

1.    Provide the total amount of your claim based on Lehman Programs Securities. Your claim amount must be the amount owed under your Lehman Programs Securities as of September 15, 2008, whether you owned the Lehman Programs Securities on September 15, 2008 or acquired them thereafter, and whether such claim matured or became fixed or liquidated before or after September 15, 2008. The claim amount must be stated in United States dollars, using the exchange rate as applicable on September 15, 2008. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the claim amounts for each Lehman Programs Security to which this claim relates.

**Amount of Claim: $ See Schedule 1, Attached**

☒ Check this box if the amount of claim includes interest or other charges in addition to the principal amount due on the Lehman Programs Securities.

2.    Provide the International Securities Identification Number (ISIN) for each Lehman Programs Security to which this claim relates. If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the ISINs for the Lehman Programs Securities to which this claim relates.

**International Securities Identification Number (ISIN): See Schedule 1, Attached (Required)**

3.    Provide the Clearstream Bank Blocking Number, a Euroclear Bank Electronic Reference Number, or other depository blocking reference number, as appropriate (each, a "Blocking Number") for each Lehman Programs Security for which you are filing a claim. You must acquire a Blocking Number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). If you are filing this claim with respect to more than one Lehman Programs Security, you may attach a schedule with the Blocking Numbers for each Lehman Programs Security to which this claim relates.

**Clearstream Bank Blocking Number, Euroclear Bank Electronic Instruction Reference Number and or other depository blocking reference number:**

See Schedule 1, Attached **(Required)**

4.    Provide the Clearstream Bank, Euroclear Bank or other depository participant account number related to your Lehman Programs Securities for which you are filing this claim. You must acquire the relevant Clearstream Bank, Euroclear Bank or other depository participant account number from your accountholder (i.e. the bank, broker or other entity that holds such securities on your behalf). Beneficial holders should not provide their personal account numbers.

**Accountholders Euroclear Bank, Clearstream Bank or Other Depository Participant Account Number:**

See Schedule 1, Attached **(Required)**

5.    **Consent to Euroclear Bank, Clearstream Bank or Other Depository:** By filing this claim, you consent to, and are deemed to have authorized, Euroclear Bank, Clearstream Bank or other depository to disclose your identity and holdings of Lehman Programs Securities to the Debtors for the purpose of reconciling claims and distributions.

FOR COURT USE ONLY
**FILED / RECEIVED**

NOV 0 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date.<br>By: 28 OCT 2009 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. |
|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

## EXHIBIT A

## ADDENDUM TO PROOF OF CLAIM OF ÅLANDSBANKEN SVERIGE AB (PUBL)

1.    This Proof of Claim is, and shall be deemed to be filed, submitted and asserted by Ålandsbanken Sverige AB (publ) (Swedish organizational number 593200-1745) ("ÅBS"), as the authorized representative of, and on behalf of certain customers of ÅBS (the "Noteholders," and collectively with ÅBS, the "Claimant") who have directly or indirectly acquired securities (the "Securities") issued by Lehman Brothers Treasury Co. B.V. ("LBT") identified on the "Lehman Program Securities" list as more fully set forth on the attached Schedule 1, against Lehman Brothers Holdings Inc. ("LBHI") and its affiliates, as debtors and debtors-in-possession (collectively, the "Debtors") in each of their respective chapter 11 cases. The Noteholders' Securities are registered on their various custody accounts at ÅBS pursuant to custodian agreements Depå-/kontoavtal in ÅBS's standard form (the "Custodian Agreement"). Attached hereto as Schedule 2 is a copy of the standard form Custodian Agreement which together with a notice to the respective Noteholders (the "Notice"), attached hereto as Schedule 3, provides ÅBS with power of attorney to file this Proof of Claim on behalf of the respective Noteholders, as no Noteholder objected to the Notice within the time period stated in the Notice.

2.    The Claimant is filing this Proof of Claim in order to set forth the aggregate claims of the Claimant against the Debtors as of September 15, 2008, as more fully described below.

3.    Claimant asserts this claim against LBHI for any and all prepetition and postpetition amounts and liabilities in respect of the Securities, and any other documents related thereto, including, without limitation, any and all principal, premiums, interest, additional

interest, periodic payments, coupon payments, fees, costs, expenses, attorneys' and professionals' fees and disbursements, any final redemption amounts, automatic redemption amounts, cash settlement amounts, physical settlement amounts, fractional share amounts, cancellation amounts, early redemption amounts, and any other amounts owed, and any and all indemnification obligations owed under the Securities (as applicable), and to the extent allowed by law.

4.    Pursuant to that certain Unanimous Written Consent of the Executive Committee of the Board of Directors of LBHI, dated June 9, 2005 (the "2005 Guarantee"), a copy of which is attached hereto as Exhibit B, LBHI has guaranteed the payment of all liabilities, obligations and commitments of certain subsidiaries, including LBT.  Pursuant to that certain Guarantee Agreement in respect of LBT, dated July 24, 2008 (the "2008 Guarantee"), a copy of which is attached hereto as Exhibit C, LBHI unconditionally and irrevocably guaranteed the performance of all of LBT's obligations in the Securities, including, without limitation, the payment of principal and interest, together with all other sums payable by LBT under the Securities.  The 2008 Guarantee extends to the ultimate balance of the Securities notwithstanding any settlement of accounts, or other matters whatsoever, and remains in full force and effect until all obligations have been irrevocably paid and satisfied in full.  Claimant, thus asserts its claims with respect to the Securities against LBHI on the basis of the 2005 Guarantee, the 2008 Guarantee, and any other guarantees, contractual or otherwise, by LBHI for the benefit of LBT.

5.    As certain of the damages described above are contingent, unliquidated and likely to continue, the exact amount of Claimant's total claim as set forth herein is unknown at this time.  Claimant reserves the right to amend, supplement, assign or withdraw this Proof of Claim, and any schedule attached hereto, at any time and in any manner as it may deem

necessary and proper.

6.     Claimant reserves all of its rights and defenses, whether under title 11 of the United States Code or other applicable law, as to any claims that may be asserted against Claimant by the Debtors, including, without limitation, any rights of setoff and/or recoupment not expressly observed above. Claimant reserves the right to file additional proofs of claim for additional claims which may be based on the same or additional documents. Claimant reserves the right to file additional proofs of claim for administrative expenses or other claims entitled to priority. Claimant reserves the right for claims for the payment of interest (subject to applicable law) and for the reimbursement of all reasonable expenses (including attorneys' fees and collection fees) incurred by Claimant in connection with the claims described herein. Claimant further reserves all of its rights as against the other debtors in these Chapter 11 proceedings and against other Lehman entities, in any other Lehman proceeding in the United States or overseas.

7.     This Proof of Claim is filed under the compulsion of the bar date set in this case and is filed to protect Claimant from forfeiture of its claim by reason of said bar date. The filing of this Proof of Claim shall not constitute: (a) a waiver, release, or limitation of Claimant's rights against any person, entity or property (including, without limitation, LBHI or any other person or entity that is or may become a debtor in a case pending in this Court) in which Claimant has a security interest or lien, (b) a consent by Claimant to the jurisdiction or venue of this Court or any other court with respect to the proceedings, if any, commenced in any case against or otherwise involving Claimant with respect to the subject matter of the claims set forth in this Proof of Claim, any objection or other proceeding commenced with respect thereto or any other proceeding commenced in these cases against or otherwise involving Claimant, (c) a waiver, release, or limitation of the right of Claimant to trial by jury in this Court or any other

court in any proceeding as to any and all matters so triable herein, whether or not the same be designated legal or private rights or in any case, controversy, or proceeding related hereto, notwithstanding the designation or not of such matters as "core proceedings" pursuant to 28 U.S.C. § 157(b)(2), and whether such jury trial right is pursuant to statute or the U.S. Constitution, (d) a consent by Claimant to a jury trial in this Court or any other court in any proceeding as to any and all matters so triable herein or in any case, controversy, or proceeding related hereto, pursuant to 28 U.S.C. § 157(e) or otherwise, (e) a waiver, release, or limitation of Claimant's right to have any and all final orders in any and all non-core matters or proceedings entered only after *de novo* review by a U.S. District Court Judge, (f) a waiver of the right to move to withdraw the reference with respect to the subject matter of this claim, any objection thereto or other proceeding which may be commenced in this case against or otherwise involving Claimant, (g) a consent to the termination of the Debtors' liability to Claimant by any particular court, including, without limitation, this Court, (h) a consent to the final determination or adjudication of any claim or right pursuant to 28 U.S.C. § 157(c), or (i) an *election of remedies*. No judgment has been rendered on this claim. This claim is not subject to any setoff or counterclaim rights by the Debtors.

8. All notices concerning this Proof of Claim shall be sent to: Ålandsbanken Sverige AB (publ), Attn: Operations, Stureplan 19, 107 81 Stockholm; with copies to Brown Rudnick LLP, One Financial Center, Boston, MA 02111, Attn: Nina E. Andersson-Willard, Esq.

## **SCHEDULE 1**

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | EC nr | SEB Acc | Volym |
|---|---|---|---|---|---|---|---|
| FI&B FÖRETAGSIDENTIT | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 74,766.36 | 900.78 | 01-002256259 | 500,000.00 |
| SWISS LIFE (LIECHTEN | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 224,299.07 | 900.78 | 01-002256259 | 1,500,000.00 |
| SWISS LIFE (LIECHTEN | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 299,065.42 | 900.78 | 01-002256259 | 2,000,000.00 |
| SWISS LIFE (LIECHTEN | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 299,065.42 | 900.78 | 01-002256259 | 2,000,000.00 |
| SWISS LIFE (LIECHTEN | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 149,532.71 | 900.78 | 01-002256259 | 1,000,000.00 |
| SWISS LIFE (LIECHTEN | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 299,065.42 | 900.78 | 01-002256259 | 2,000,000.00 |
| SWISS LIFE (LIECHTEN | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 299,065.42 | 900.78 | 01-002256259 | 2,000,000.00 |
| HALLBERG RASSY AB | LBT 8G VALUTA US DOLLAR 110103 | XS0372634195 | 6044625 | 299,065.42 | 900.78 | 01-002256259 | 2,000,000.00 |
| Total | | | | 1,345,794.39 | | | 9,000,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | EC nummer | SEB Acc | Volym |
|---|---|---|---|---|---|---|---|
| OSKARSSON, GÖRAN | LEHM SO MARKNADSNEUTRAL 2 TR 110411 | XS0286179923 | 6044611 | 29,906.54 | 900781 | 01-002256259 | 200,000.00 |
| HAGLUND, GÖSTA | LEHM SO MARKNADSNEUTRAL 2 TR 110411 | XS0286179923 | 6044611 | 7,476.64 | 900781 | 01-002256259 | 50,000.00 |
| Total | | | | 37,383.18 | | | 250,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | VP konto | Volym |
|---|---|---|---|---|---|---|
| ARS KAPITAL AB | LBT BD SVERIGE 120416 | SE0002419242 | NECG09102391590 | 82,242.99 | 0111350816 | 500,000.00 |
| VARNAMO SANGSKLADER F | LBT BD SVERIGE 120416 | SE0002419242 | NECG09102391590 | 82,242.99 | 0111350816 | 500,000.00 |
| Total | | | | 164,485.98 | | 1,000,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | VP konto | Volym |
|---|---|---|---|---|---|---|
| COLLECTION 12 AB | LBT 8C SVERIGE 120312 | SE0002379271 | NEG09102391590 | 82,242.99 | 0111350816 | 500,000.00 |
| TENNERSTAM, EVA | LBT 8C SVERIGE 120312 | SE0002379271 | NEG09102391590 | 82,242.99 | 0111350816 | 500,000.00 |
| KNUTMEJER, LARS | LBT 8C SVERIGE 120312 | SE0002379271 | NEG09102391590 | 82,242.99 | 0111350816 | 500,000.00 |
| BOTESON AB | LBT 8C SVERIGE 120312 | SE0002379271 | NEG09102391590 | 164,485.98 | 0111350816 | 1,000,000.00 |
| PERSSON, ANNA-LISA | LBT 8C SVERIGE 120312 | SE0002379271 | NEG09102391590 | 82,242.99 | 0111350816 | 500,000.00 |
| TRIANGELN FORVALTNIN | LBT 8C SVERIGE 120312 | SE0002379271 | NEG09102391590 | 82,242.99 | 0111350816 | 500,000.00 |
| Total | | | | 575,700.93 | | 3,500,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | VP konto | Volym |
|---|---|---|---|---|---|---|
| Alandsbanken Sverige AB | LBT 8C SVERIGE 120312 | SE0002379271 | NEG09102391589 | 131,588.79 | 0111350689 | 800,000.00 |
| Alandsbanken Sverige AB | LBT 7G Banks 100711 | XS0309103546 | 6047460 | 1,562,440.00 | 01-00457021 | 1,000,000.00 |
| Alandsbanken Sverige AB | Valutaobligation Tillvaxtmarknader 4 | XS0292822771 | 6047458 | 52,336.45 | 01-00457021 | 350,000.00 |
| Alandsbanken Sverige AB | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6047435 | 16,448.60 | 01-00457021 | 110,000.00 |
| Alandsbanken Sverige AB | Valutaobligation Tillvaxtmarknader 2 | XS0282145969 | 6047421 | 22,429.91 | 01-00457021 | 150,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim ( in $USD as of 9/15/08) | EC nr | SEB Acc | Volym |
|---|---|---|---|---|---|---|---|
| ENGLUND, KERSTIN | LEHM SO MARKNADSNEUTRAL 2 T1110411 | XS0286181077 | 6044621 | 16,448.60 | 900/78 | 01-002256259 | 100,000.00 |
| Total | | | | 16,448.60 | | | 100,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | Volym |
|---|---|---|---|---|---|
| EKDAHL, PIERRE | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| KLASSON, ÅSA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |
| KLASSON, IDA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 11,962.62 | 80,000.00 |
| LINDEROTH, STELLAN | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| LILIUS, GUNDER | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| LALACH AB | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| WINGSTRAND, PAULA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| NOBEL, TORBJÖRN | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| LILIUS DATASERVICE AB/S. | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| STANESA AB | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 44,859.81 | 300,000.00 |
| JOHANSSON, LARS OLOF | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 59,813.08 | 400,000.00 |
| STENETEG, INGEMAR | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 59,813.08 | 400,000.00 |
| ADV.FIRMAN ANTONSSON & | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 299,065.42 | 2,000,000.00 |
| KESTRUP, INGRID | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 34,392.52 | 230,000.00 |
| SCHÜBERG, ULLA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 44,859.81 | 300,000.00 |
| HJALMARSSON, IRENE | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 34,392.52 | 230,000.00 |
| ASFALTSVERKET ÖST AB | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 74,766.36 | 500,000.00 |
| CARLSSON, BENGT | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 74,766.36 | 500,000.00 |
| PEHRSSON, SVEN | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| WIDES,JO. UNO | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| KJELLERSTEDT, MONIKA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| SCHMEISSER, JOAKIM | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| GUSTAVSSON, URBAN | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| ADAMSSON, GRETA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| NORLIN, ANDERS | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| CONNECT GRAFISK PROD I | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| FRIBERT, TORSTEN | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| ANDERSSON, STELLAN | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 49,345.79 | 330,000.00 |
| SPANGGÅRD, INGRID | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| HALLIN, BO | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| HALLIN, RODHE | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 59,813.08 | 400,000.00 |
| HOLST, INGA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| GANSLANDT, VALTER | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| TORSTENSSON, PER | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| JOHANSSON, JAN-OLOF | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| JOHANSSON, JÖRGEN | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| EKEBRO, MAJ-BRITT | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| MELANDER, EVALD | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| SANDELL, KURT | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 37,383.18 | 250,000.00 |
| LINDBERG, CLAES | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| ELVERDAM, PETER | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| KARLSSON, MARGARETA | Valueaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |

| Name | | | | | Value | Amount |
|---|---|---|---|---|---|---|
| JOHANSSON, BO | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| GARDFORS, SIV | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| HOLST, ELISABET | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| BORJESSON, CARL-ERIK | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| BRITT G HALLQVIST, | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 59,813.08 | 400,000.00 |
| GREY, GREY | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| BENGTSSON, BIRGITTA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| LEONARDSSON, ULLA-BRITT | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| OLOVSSON, INGEBORG | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| CHRISTOFFERSEN, | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| LARSSON, INGRID | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| WINTZELL, OLA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 28,411.21 | 190,000.00 |
| BENGTSSON, CHRISTER | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| SVENSSON, KARIN | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| VIK, MAT | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LARSSON, LARS-OLOF | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| GUSTAFSSON, HAKAN | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| EKHOLM LELKY, INGA-LILL | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| KOUTHOOFD, LILIAN | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| JONASSON, ROGER | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 11,962.62 | 80,000.00 |
| FALK, JAN | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| BJÖRKLUND, HELENA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 11,962.62 | 80,000.00 |
| STERNE, EVA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| CARLSSON, ANETTE | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| STRÖM, KERSTI | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LANDSKAP&MANAGEMENT, I | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| TALJE, DANIEL | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LISTRUP, SYLVIA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| EDNER, ANN-MARI | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| MANSSON, INGEMAR | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| WAHLSTROM, NILS | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| WAHLSTROM, ULLA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| ANDERSSON, RAYMOND | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| FORSGREN LOFVEN, | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| SVANBERG, ANNA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| HANSSON, HAKAN | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| NILSSON, LENNART | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |
| LODIN, KAJ | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |
| SVENSSON, ROGER | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |
| PERSSON, EMELIE | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 11,962.62 | 80,000.00 |
| JOHNSSON, LARS | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| ERIKSSON, ANN-MARIE | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| CEDERVALL, CATARINA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 17,943.93 | 120,000.00 |
| BERNTSSON, INGEMAR | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| SVENSSON, UNO | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| ISAKSSON, LENA | Valutaobligation | Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |

| Name | | | | |
|---|---|---|---|---|
| HANSSON, MARINA | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LARSSON, ANETTE | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| RICHTER, ESTER MARIA | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 59,813.08 | 400,000.00 |
| WAHLQVIST, MAGNUS | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| PERSSON, OLLE | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| ENGELBREKTSSON, JAN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| BJÖRKLUND, HÅKAN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 17,943.93 | 120,000.00 |
| KRISTIANSSON, LEIF | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| WALLIN, FREDRIK | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 11,962.62 | 80,000.00 |
| SVENSSON, ANNA | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| FORSGOLF | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| CEDERQUIST, SOLBRITT | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| ANDERSSON, GUNNEL | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| NORDÉN, STAFFAN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| ÖSTLUND, KARIN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| JOHANSSON, MARITA | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| HOLMBERG, JOHAN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| OLSSON, BENGT-OLOF | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| PERSSON, GÖRAN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| LEVIN, BIRGITTA | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| EURENIUS, CLAES | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| PALAND, MAGNUS | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| BROMAN, MIKAEL | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| HJORTH, LIN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |
| KARLSSON, KERSTIN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| KRISTENSEN, TAGE | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| WAERN, INGA-LILL | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| CARLSSON, LISELOTT | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| OVARNSTRÖM, HÅKAN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| STENSTRÖM, HENRIK | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 59,813.08 | 400,000.00 |
| AHLÉN, INGVAR | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| BRODIN, MAGNUS | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| STENMAN, STENNAN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| HÖÖK, MONA | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| WARFVING, THOMAS | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |
| RENGBO, EMMA | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| LARSSON, HANS | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LASSAGÅRD, ANNA-KARIN | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| ARVIDSSON, DAVID | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LANG, BENGT | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 8,971.96 | 60,000.00 |
| WINDER, HENRY | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| STRÖM, TOMMY | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| ELOFSSON, HENRIK | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| JOHANSSON, INGER | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| SKOGMALM, BERIT | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| SKOGMALM, ALF | Valutaobligation Tillvaxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |

| Name | Instrument | ISIN | Code | Value | Amount |
|---|---|---|---|---|---|
| BERTRAM, MONICA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| LUNDBLAD ANDERSSON, | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| LARSSON, MATTIAS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| TOLOMANOSKI, METODIJA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 13,457.94 | 90,000.00 |
| HILLBERG, ERIK | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 34,392.52 | 230,000.00 |
| LAGSTRÖM, ANDERS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| NILSSON, BRITT-INGER | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 22,429.91 | 150,000.00 |
| NILSSON, PETER | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| JOHANSSON, PETER | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| HANSSON, KJELL | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 29,906.54 | 200,000.00 |
| ERNGAARDS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 29,906.54 | 200,000.00 |
| JACOBSSON, GUNILLA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 40,373.83 | 270,000.00 |
| SVENSSON, CLAES | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 11,962.62 | 80,000.00 |
| IVANSSON, EIVOR | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| LÖFGREN, BIRGITTE | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| WESTER, BIBI | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| SANDELIN, BARBRO | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| THYSELIUS, BIRGITTA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| VILHELMSON, BJÖRN | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| LINDBERG, MALIN | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 22,429.91 | 150,000.00 |
| LÖFGREN, ANDREA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 8,971.96 | 60,000.00 |
| GUSTAFSON, RALF | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| ANDERSSON, ANDREAS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| KARLIN, JAN | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| LUNDIN, NILS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 142,056.07 | 950,000.00 |
| ÅKESSON SJÖGREN, | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 19,439.25 | 130,000.00 |
| JONSSON, MAJBRITT | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| LUBEKONSULT AB | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 44,859.81 | 300,000.00 |
| MÖLLER, NILS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| LINDGREN, RASMUS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| EVANTH, MONA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| ÖRBERG KALLSTRAND, ANNA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| BRUNSTRÖM, ROLF | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 8,971.96 | 60,000.00 |
| BURSTRÖM, ESKIL | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 37,383.18 | 250,000.00 |
| FALU BAKERY AB | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 71,775.70 | 480,000.00 |
| BENGTSSON, ELISABETH | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| EINARSSON, LARS | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| BJÖRKLUND, HÅKAN | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| PEDERSEN, PATRIK | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| GELKNER, STEFAN | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 11,962.62 | 80,000.00 |
| BENGTSSON, IVAR | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| STEGLAND, BENGT | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 37,383.18 | 250,000.00 |
| MANNER, ANNA | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| MANNER, KARIN | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |
| LINDEN, YVONNE | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 14,953.27 | 100,000.00 |
| SKOGMALM, MARTIN | Valutaobligation Tillväxtmarknader 1 | XS0277536681 | 6044627 | 7,476.64 | 50,000.00 |

| Name | Type | Code | Number | Amount | Value |
|---|---|---|---|---|---|
| LARSSON, INGRID | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| KNUTSSON, MARGARETA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 37,383.18 | 250,000.00 |
| KARELD, MARIE-LOVISE | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| BENGTSSON, LENNART | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LUNDELL, ROLAND | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| ÖRENMARK, JESSICA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| EMANUELSSON, KLARA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| ANDERSSON, MARGARETA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| RALUND, ANDREAS | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| EUROTRADE PM AB | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 22,429.91 | 150,000.00 |
| ELMQVIST, INGEMAR | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| BENGTSSON, MARIA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| KARLSSON, KARIN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| ÅKERBLOM, CLAES | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| ÅKERBLOM, SVEN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| WIDHOLM, MONA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| GUNNERVALD, MATHIAS | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 52,336.45 | 350,000.00 |
| ÅKERBLOM, INGA-STINA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| TITUSSON, BIRGER | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 44,859.81 | 300,000.00 |
| GRÖNBERG, MOGEN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| LILEROTH, MONICA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| DOREMAS AB:S SARSKILDA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| REXING, ANITA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| LOMMA BAY TECHNOLOGIES | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| JÖNSSON, JOSEF | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| WELLHARDH, MARCUS | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| SÖREN, LARS | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| KRATZ, AGNETA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| STIFTELSEN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 74,766.36 | 500,000.00 |
| PETERSSON, BIRGIT | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| BRANDT, POUL | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 29,906.54 | 200,000.00 |
| KILANDER, KARIN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 11,962.62 | 80,000.00 |
| PERSSON, TORSTEN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| JOHANSSON, SVEN ÅKE | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| JOHANSSON, GÖRAN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| JOHNSSON, INGRID | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| LJUNG, CONNIE | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 10,467.29 | 70,000.00 |
| SÖRENSSON, JOAKIM | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| JOHANSSON, DAN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| ENGSTRÖM, BRITTA-LENA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 35,887.85 | 240,000.00 |
| JOHANSSON, EVA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 14,953.27 | 100,000.00 |
| RÖNNHOLM, INGER | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| HEDEVAG, REIDON | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| OLAUSSON, ANDERS | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| KARLSSON, MARGARETA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |
| HEMGREN, ERIK | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6044627 | 7,476.64 | 50,000.00 |

| | | | | | |
|---|---|---|---|---|---|
| LEANDERSON, TOMMY | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 7,476.64 | 50,000.00 |
| ALSONIUS, KATARINA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 7,476.64 | 50,000.00 |
| PERSSON, JOHN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 14,953.27 | 100,000.00 |
| FERNEBORG LARSSON, ANN- | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 14,953.27 | 100,000.00 |
| LINDAHL, ANITA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 7,476.64 | 50,000.00 |
| YNGVE, LARS | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 7,476.64 | 50,000.00 |
| PELLNOR, TORBJÖRN | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 7,476.64 | 50,000.00 |
| KJELLERUP, LENA | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 10,467.29 | 70,000.00 |
| THYSELIUS, RUNE | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 7,476.64 | 50,000.00 |
| VILH. WERNER AB:S. | Valutaobligation Tillväxtmarknader 1 | XS0277538681 | 6046627 | 29,906.54 | 200,000.00 |
| | | | | 4,411,196.26 | 29,540,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | Pantsatt volym/tan |
|---|---|---|---|---|---|
| ANDERSSON, LENNART | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| JONSSON, ERLAND | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 13,457.94 | 90,000.00 |
| BORJESSON, KJELL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| PERSSON, LARS HÅKAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 16,448.60 | 110,000.00 |
| SVÄRD, STEFAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 19,439.25 | 130,000.00 |
| KARLSTRÖMS ROSELL, ELISABET | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 25,420.56 | 170,000.00 |
| WALL, TOMMY | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 37,383.18 | 250,000.00 |
| CLAUSEN FÖRVALTNINGS AB, C | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| WITTGREN, BENGT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| LINDSTRÖM, BENGT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| NILSSON, JAN-OLOF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 134,579.44 | 900,000.00 |
| PERSSON, KJELL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 97,196.26 | 650,000.00 |
| SJÖHOLM, CATARINA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 50,841.12 | 340,000.00 |
| BJERNSTAD, ÖSTEN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 89,719.63 | 600,000.00 |
| HAMMARSTRAND, PIA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 89,719.63 | 600,000.00 |
| HARRYSSON, ARNE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 23,925.23 | 160,000.00 |
| BERGLUND, THOMAS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| SVANBERG, INGER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| JAKAUBY, MICHAEL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| SVENSSON, KERSTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| AGENSJÖ, KERSTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| AGENSJÖ, FINN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| JOHANSSON, GERD | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 35,887.85 | 240,000.00 |
| MÜLLER, BO | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 17,943.93 | 120,000.00 |
| LARSSON, WILHELM | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 37,383.18 | 250,000.00 |
| LINDBLOM SANDQVIST, KERSTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| ANDERSSON, OVE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| TYDEN, TOMMY | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ENANDER, ARNOLD | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HOLMSTRÖM, MONA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| MODÉE, BO | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| WINGREN, KERSTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| ELVIN, PER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| SJÖSTRÖM, JAN ÅKE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| DUVANDER, LARS-GÖRAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| LERUD, BARBRO | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| LITZELL, TORBJÖRN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HAKANSSON, SVEN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| SANDBERG, BENGT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| LUNDBERG, BRUNO | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 26,915.89 | 180,000.00 |
| TILLBERG, LEIF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| STENBERG, INGVOR | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| LARSSON, STIG | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 52,336.45 | 350,000.00 |
| LARSSON, STIG | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |

| Name | Description | ISIN | Account | Amount | Nominal |
|---|---|---|---|---|---|
| SUNDBERG, JOHNNY | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| NILSSON, SVEN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| MANSSON, LARS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| MODÉE, BIRGITTA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| WINNBERG, EVERT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| NERAFORS, ANNETTE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| KROON, GÖSTA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ARNESSON, AGNETA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| GUSTAFSSON, ROS-MARIE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| COLLIN, OVE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HRADIL, EVA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ANDREASSON, KENT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 35,887.85 | 240,000.00 |
| EKELUND, MARTA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| JONSSON, CLAES | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| ALBO, ANDRES | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| WINNBERG, INGRID | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| WAHLKVIST, ULF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 13,457.94 | 90,000.00 |
| JONSSON, JAN-ERIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| BURSTRÖM, ESKIL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| BJÖRFJÄLL, LISBETH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 8,971.96 | 60,000.00 |
| OLSSON, JAN-ERIK BERTIL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| GUSTAFSSON, GUNNAR | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| STRANDH, LEIF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| TORVALDSSON, KENNETH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| OHLSÉN, CARINA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| STALBERG, JAN-OLOV | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| AXELSSON, OLLE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| JAGSELL, ANDERS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ARKITEKTGRUPPEN I KUNGSBACKA AB | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| TORBJÖRNSSON, JONAS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| MABRI KONSULT AB | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| SVENSSON, ULRIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| NILSSON, GITT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 19,439.25 | 130,000.00 |
| SANDAHL, KERSTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| FORNSTAM, SOLVEIG | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ELIASSON, ELIASSON | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| JOHANSSON, BENNY | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| JOHANSSON, KJELL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| WÄSTMAN, LARS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 52,336.45 | 350,000.00 |
| VON FREYTAG-LORINGHOVEN, KLAUS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| TÖRN, LEIF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 28,411.21 | 190,000.00 |
| HANSSON, ULF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| KARLSSON, KERSTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 8,971.96 | 60,000.00 |
| CARLEN, MALIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| CARLEN, MARCUS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| CARLEN, SOPHIE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |

| Name | Instrument | ISIN | Number | Amount |
|---|---|---|---|---|
| MONIE, ELIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| AHLBERG, ULLA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 28,411.21 | 190,000.00 |
| KJELLBERG, ROLF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| HARSTRÖM, SIV | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| AXELSSON, ELISABET | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 8,971.96 | 60,000.00 |
| DAHLBERG, ANN-MARIE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| TRANSPORTKONSULTEN FÖRVALTNING AB | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 149,532.71 | 1,000,000.00 |
| BLADH, ANSHELM | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| BORISSON PERNGÅRDEN, LISBETH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| GUSTAFSSON ANN-CHRISTINE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| JOHANSSON, VIGH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| BRORSSON, LASSE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 16,448.60 | 110,000.00 |
| LARSSON MARTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HÖGLIN, TOMMY | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| ÅKESSON, LENA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| NILSSON, ULF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| MAHRSTRÖM, HANS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 41,869.16 | 280,000.00 |
| TIDESTAM, BARBRO | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| JAKOBSSON, ANNA-LENA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| GUSTAFSSON, ANNA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| HAKNERT, BJÖRN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 8,971.96 | 60,000.00 |
| JOHANSSON, KJELL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| GÖTENFELT, MAGNUS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| JAKOBSSON, LEIF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| LÖVSTRAND, PETER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| GRAM TIMANE, ANNA-LENA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 8,971.96 | 60,000.00 |
| FORSSBERG, PER-ERIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| HENNINGSON JANSSON, ÅSA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 17,943.93 | 120,000.00 |
| BODIN, EIRA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| BODIN, OLLE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| GUSTAVSSON LEIF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| LEIBFACHER, UWE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| BERNEROAL, MARIA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 17,943.93 | 120,000.00 |
| TORDENLID, ANITA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| LINDEBERG, MARGARETA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| LINDEBERG, BENGT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 37,383.18 | 250,000.00 |
| OLSSON, BRITA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 37,383.18 | 250,000.00 |
| BARTHOLDSSON, NILS-ERIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| MAGNUSSON, EVEN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| EKBERG, LISS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| JOHANSSON, KJELL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| PERSSON ÅSA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| LARSSON, PER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| BENGTSSON, ANETTE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 37,383.18 | 250,000.00 |
| BENGTSSON, ANETTE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| MYRGÅRD, ROLAND | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| NORLANDER, OLA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 8,971.96 | 60,000.00 |

| Name | | | | |
|---|---|---|---|---|
| JOHANSSON, STIG OLOF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| DANELIUS, JOACHIM | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 29,906.54 |
| RENÅKER PERSSON, MARIETTE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| NIKOLIC, SANJA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 14,953.27 |
| FRIDHOLM, HÅKAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| AHNLUND, ISAK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 19,439.25 |
| LINDBERG, BO | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| WINDSZUS, HELMUTH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 22,429.91 |
| ANDERSSON, BJÖRN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 44,859.81 |
| NILSSON, PATRIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| SANDGREN, BERNT GÖRAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 11,962.62 |
| BURSTRÖM, MATHIAS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| BURSTRÖM, MARTIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| KARLSSON, KJELL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 13,457.94 |
| JARL, LARS-GÖRAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| SJÖGREN, CHRISTINA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| LARSSON, GUN-BRITT | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 11,962.62 |
| MORÉN, FRANK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 19,439.25 |
| GUSTAFSSON, LILL | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 14,953.27 |
| MATS & BERT MALERI AB | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| NORRMAN, JOHN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| STAREFELDT, ULF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 14,953.27 |
| NILSSON, PETER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| ENGSTRÖM, LILLEMOR | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| OLSSON, ANNA-GRETA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 14,953.27 |
| BENKOWSKI, ANITA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| AXÉN SCHUMACHER, ELISABETH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| AKESSON, GUSTAF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| KÄLLOFF, LENA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 37,383.18 |
| AGERHOLM, LARS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| AHLBERG, LARS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| NILSSON, MATS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| PAULSON, INGVAR | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 22,429.91 |
| SVEDNER, FREDRIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 10,467.29 |
| FYRK, STEN-ÅKE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 14,953.27 |
| NORDÉN, JOAR | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 44,859.81 |
| LEANDERSON, MAGNUS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| PERSSON, OLA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| GYRLING, KENNETH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| GELIER, ULF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| ANDERSSON, BIRGITTA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| SVANTESSON, PER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 8,971.96 |
| JARLEVI, LEIF | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| ARVIDSSON, GERT-OVE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |
| FREDIN, LARS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 14,953.27 |
| ALBINSSON, KRISTIAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6045456 | 7,476.64 |

| Name | Product | | ISIN | Code | Value | Amount |
|---|---|---|---|---|---|---|
| LUNDQVIST, GUNNAR | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| JOHNSSON, EVA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HYGERT, HYGERT | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| WIKTOREN, ERIK | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| WILLIAMSSON, JOHN-ERIK | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| OTTOSSON, MONA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| KVALITETSBYGGE GERT LINDAHL AB | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| SJÖGREN, NILS-OLOF | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| GRANSTRÖM, MICHAEL | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HARRYSSON, GÖRAN | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| ALMER, GERD | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| MANSSON, PETER | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| AUGUSTSSON, PER | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| JOHANSSON, ROLAND | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 74,766.36 | 500,000.00 |
| WENNBERG, BJÖRN | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ELLENBERGER, BENGT | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| MARTENSSON, ANNA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| NILSSON, ELIN | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| SCHOUG, CHRISTINA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| GUNNARSSON, PETER | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| BJARTUN, EVA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| BJARTUN, CHRISTIAN | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| SÖDERLUND, BERNDT | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| NERAFORS, CLARA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HANSSON, BENGT | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 17,943.93 | 120,000.00 |
| LUCKANDER, KERSTIN | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| JANSSON, VIOLA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| LINDAHL, MARIANNE | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| LENHOFF, EVA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| LENHOFF, STIG | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| EMANUELSSON, MARIA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| HEDETOFT, JAN | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| OLSSON, MARGARETA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| POPPIUS, LINA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| SNABLA AB | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| GUSTAFSSON, BERITA | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| LINDAHL, BERTIL | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ERNTOFT, MARINO | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| RIGNELL-ZANDER TEXT&BILD AB | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| STARFAST FASTIGHETS FÖRV AB | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 149,532.71 | 1,000,000.00 |
| SKANSPORTENS FASTIGHETS FÖRV. AB | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 224,299.07 | 1,500,000.00 |
| ASENOV, PAVEL | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| WENNBERG, MARIE | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| HANSCH, MALIN | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| SAHLIN, GERD | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ROSÉN, EMILIE | Valutaobligation | Tillvaxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |

| Name | Type | ISIN | | Amount | Nominal |
|---|---|---|---|---|---|
| LANS, MARIELLE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 20,934.58 | 140,000.00 |
| OSTERBERG, SONJA ELISABET | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ALGOTSSON, LISBETH | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 10,467.29 | 70,000.00 |
| SVENSSON, INGER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| JOGBY, AGNETA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| ERNTOFT, URBAN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| ENGBACK ENGSTRÖM, LINDA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| WIHLBORG, INGVAR | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| HULTMARK, PER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| KRON, ERIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| NILSSON, LINDA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| HJART&LUNGSJUKAS FÖRENING I GÄVLE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| AME SVENSKA AB | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 29,906.54 | 200,000.00 |
| HAGE, CHRISTER | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| STRÖMBLAD, MATS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| HILMERSSON, ANITA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 8,971.96 | 60,000.00 |
| ANDERSSON, ELIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| AXHOV, KARL-ERIK | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| ADAMSSON, GUNNY | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| ADAMSSON, BO | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 14,953.27 | 100,000.00 |
| HENRIKSSON, ROLAND | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| REHN, ANDERS | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| GNOSSPELIUS, ANNE CHARLOTTE | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 32,897.20 | 220,000.00 |
| HOLMBERG, ANN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 44,859.81 | 300,000.00 |
| HAKANSSON, CECILIA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 22,429.91 | 150,000.00 |
| DAHLGREN, ANNA-CARIN | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| WERNER, LINDA | Valutaobligation Tillväxtmarknader 2 | XS0282145969 | 6044546 | 7,476.64 | 50,000.00 |
| | | | | 4,936,074.77 | 33,010,000.00 |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | Pantsatt volym/län |
|---|---|---|---|---|---|
| TORNQUIST, ELS-MARI | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ALTMARKER, OLE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| PERSSON, JOAKIM | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| WENDEL, DANIEL | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| BENGTSSON, MONICA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| LIND, ARTO | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| JOHANSSON, CARL-ERIC | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 35,887.85 | 240,000.00 |
| TENGMARK, ULF | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 35,887.85 | 240,000.00 |
| SVENSSON, KRISTER | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| BORG, JAN-OLOF | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 32,897.20 | 220,000.00 |
| FALLMAR, ANNIKA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| STC I LINKÖPING AB | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 44,859.81 | 300,000.00 |
| BLOM, GÖRAN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| TORNEGÅRD, ANNE-MARIE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| LARSSON, FOLKE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| BERNSTRÖM, INGRID | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 26,915.89 | 180,000.00 |
| LINDHOLM, ANITA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| RADIO SKOG AB | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 44,859.81 | 300,000.00 |
| KARLSSON, KARL-ÅKE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| LARSSON, KERSTIN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 44,859.81 | 300,000.00 |
| PERSSON, ANN-CHRISTIN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| SVENSSON, CHRISTER | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| MYREN, OLOF | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ILL, AB | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| OLSSON, HANS | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| JOHANSSON, MATS | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| ERIKSSON, ULLA-BRITT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 16,448.60 | 110,000.00 |
| JOHANSSON, ANN-BRITT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| HYLDETOFT, RIGMOR | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 11,962.62 | 80,000.00 |
| KARLSSON, MATS | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| PICKERING INTERFACES AB | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| JOHANSSON, KJELL | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| OTTERSTRÖM, LEIF | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| SVANSTRÖM, PÄR | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| HEDIN, ULLA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 82,242.99 | 550,000.00 |
| WELLANDER, TERESIA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| MEDIA MOBILITY | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| PETERSSON, VALTER | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 299,065.42 | 2,000,000.00 |
| WAHLBERG, KENT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| SVEDBERG, GLENN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| LAGERSTRÖM, SVEN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| NORDBERG, JENS | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |

| Name | Product | ISIN | | Amount | Nominal |
|---|---|---|---|---|---|
| ANDERSSON, BIRGITTA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| PALM, GÖSTA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| JOHANSSON, SIVE | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| JOHANSSON, ING-BRITT | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| GEOPRO AB | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| TROPP, JOHAN | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| NELANDS, JESSICA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 11,962.62 | 80,000.00 |
| BRAUN, ROLF | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 52,336.45 | 350,000.00 |
| HYLANDER ERICSSON, EVA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| KARLSSON, STEFAN | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| SKOLARKITEKTEN I VÄST AB | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| KARLSSON, ROBERT | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| CARLSSON, LISELOTTE | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| ULFSPARRE, ANNA CHRISTINA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ABDON, BIRGITTA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| SVÄRD+LANDEN, BIRGITTA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| BOGLIN, MATHIAS | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| SVENSSON, EGON | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| HAVNER, CHRISTINA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| KARLSSON, MONICA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| ORMELIUS, DANIEL | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| JONSSON, CARINA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 89,719.63 | 600,000.00 |
| STRÖMBERG, ANNELIE | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 55,327.10 | 370,000.00 |
| LARSSON, CHARLIE | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| DAVIDSSON, ANNA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| JONSSON, ELEANOR | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| JOHANSSON, BRITT | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| JANSSON, MONICA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| BENROTH, LENA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| BERNVETTER, MATHIAS | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| VENDELSTRAND, ÖSTEN | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ANDERSSON, STIG | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| ROJNERT, JEANETTE | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| SUNDSBACKEN AB | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| ENGDAHL, BERTIL | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 22,429.91 | 150,000.00 |
| BRANDSTRÖM, ANN MARIE | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| THURESSON, OVE | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| FAGERSTRÖM-LUNDQVIST, PIA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| MARTENSSON, INGER | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 11,992.62 | 80,000.00 |
| OLSSON, MARIA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| ERIKSON, ANDERS | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| JOHANSEN, HARALD | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 44,859.81 | 300,000.00 |
| SANDER, EIVOR | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| CASSELBRANT, KERSTIN | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ENOCSSON, ANNA | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 149,532.71 | 1,000,000.00 |
| STANSGÅRD, KARIN | Valutaobligation Tillvaxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |

| Name | Product | ISIN | Code | Value | Amount |
|---|---|---|---|---|---|
| LASSON, JOHAN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 13,457.94 | 90,000.00 |
| HOMANN-BRUZELIUS, LISBETH | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| OLSSON, ANNA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| JOHNSSON, SVEN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| MATTSSON, TORBJÖRN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| SPJERN, BRITTA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| BORGLIN, JOHAN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| NICKLASSON WOLF, MARIE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| MAGNUSSON, JAN-ÅKE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| JONSSON, MADELEINE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| PERSSON HEJLL, MARIA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| PAULSSON, CECILIA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| TOPAN, GINA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| SÖDER, MARIANNE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| ANGSELIUS, LENNART | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| CRONBERG, MAJ-BRITT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| BRODIN, BENGT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| HOLMBERG, LEIF | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| JUTZELER, BERIT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| SKOOG, GULLMAJ | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 29,906.54 | 200,000.00 |
| BERGSTAF, STEFAN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 28,411.21 | 190,000.00 |
| SEVERINSSON, BERNT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| AGRELL, EVA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| GUNNARSSON, CLAES-GÖRAN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| MERRICK, DANIEL | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| BAHNER, CHARLOTTE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| HULTEBERG, OLLE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| GUSTAFSSON, TOMMY | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| BÖRJESSON, KJELL | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| BERNTSSON, EVA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ELIASSON, JAN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| OLSSON, BJÖRN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| OVIK, MAGNUS | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| JANSON, SOLVEIG | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| HIRVONEN, CHRISTA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| HAGRE, JENNY | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| NILSSON, MARIE | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| FRIBERG KARLSSON, MÄRTA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ENGLUND, LARS | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| WINBERG, GERT | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| LOMBARD, ÅSA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| MATTSSON, KERSTIN | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| MATTSSON, GUNNAR | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| VESTLUND, PATRIC | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| HOLMQVIST, MATS | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| PERSSON LIDGREN, CAMILLA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |

| | | | | |
|---|---|---|---|---|
| BONDESSON, ASA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 7,476.64 | 50,000.00 |
| ANDERSSON, CARLAXEL | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 14,953.27 | 100,000.00 |
| ERIXON, NILS ERIK | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 10,467.29 | 70,000.00 |
| ROMSON, ULRIKA | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 8,971.96 | 60,000.00 |
| KERSTIN ELANDERS DOCKSTUDIO AB | Valutaobligation Tillväxtmarknader 3 | XS0289028085 | 6044575 | 44,859.81 | 300,000.00 |
| | | | | **2,658,691.59** | **17,780,000.00** |

| Name | Description of Security | ISIN | Blocking Number | Amount of claim (in $USD as of 9/15/08) | Nom vol/ym |
|---|---|---|---|---|---|
| LUNDAHL, MARIANNE | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 20,934.58 | 140,000.00 |
| MARTENSSON, ANETTE | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 74,766.36 | 500,000.00 |
| ACTA ASSET MANAGEMENT ASA | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| NILSSON, LARS | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 10,467.29 | 70,000.00 |
| RINGHAGEN, INGRID | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| HOLMSTROM, LEIF | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| GRAFISKA FACKFORENINGEN SMALAND | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| LINDBERG, BENGT | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| AHMAN, BERNT | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| LUND, TORI | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| SVARD OCH SONER TRYCKERI, FORS AB | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 157,629.05 | 1,050,000.00 |
| HOLMGREN, JAN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 74,766.36 | 500,000.00 |
| LERUD, BARBRO | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| TAGESSON, MONA | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 14,953.27 | 100,000.00 |
| LARSSON, KERSTIN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| SONNERSTEDT, JOHAN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 20,934.58 | 140,000.00 |
| GU CHUNYUAN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 29,906.53 | 200,000.00 |
| NILSSON, LARS | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| JOHANSSON, BJORN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 44,859.81 | 300,000.00 |
| NILSSON, BO | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 44,859.81 | 300,000.00 |
| GILEUS, PER | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 44,859.81 | 300,000.00 |
| PERSSON, GUNNEL | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| PERSSON, CHRISTER | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| ANDERSSON, OVE | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 28,411.21 | 190,000.00 |
| JAKOBSSON, GETRUD | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 13,457.94 | 90,000.00 |
| LOOF, CAMILLA | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 14,953.27 | 100,000.00 |
| GUSTAFSSON, INGER | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 13,457.94 | 90,000.00 |
| GUSTAFSSON, GORAN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 11,962.62 | 80,000.00 |
| LOFGREN, BIRGITTE | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| BRANDER, BJORN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 44,859.81 | 300,000.00 |
| GUSTAFSSON, MARCUS | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 29,906.54 | 200,000.00 |
| KRYLANDER, SIV | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| ANDERSSON, JONAS | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 29,906.54 | 200,000.00 |
| KRYLANDER, CHARLES | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 10,467.29 | 70,000.00 |
| REFFBORN, INGRID | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 14,953.27 | 100,000.00 |
| WIKANDER, IDA | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 14,953.27 | 100,000.00 |
| HANSSON, KARIN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 44,859.81 | 300,000.00 |
| JOHNSON, MARIA | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 8,971.96 | 60,000.00 |
| TONELL, ANNA | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 7,476.64 | 50,000.00 |
| WELLNER, KARIN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 10,467.29 | 70,000.00 |
| TORNELL, KERSTIN | Valueaobligation Tillvaxtmarknader 4 | XS0298282771 | 6045/79 | 8,971.96 | 60,000.00 |
| | | | | 19,439.25 | 130,000.00 |

| Name | Product | ISIN | Number | Amount | Value |
|---|---|---|---|---|---|
| OLSSON, JAN-OLOF | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| ARGSELIUS, IRENE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| FRITOF, MARINA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| LINDE, ANITA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 22,429.91 | 150,000.00 |
| ERIKSSON, MARIA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| SKOGLUND, FREDRIK | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 29,906.54 | 200,000.00 |
| HENNINGSSON, ASTRID | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 10,467.29 | 70,000.00 |
| CALMERBJÖRK, MATS | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| LIS DATA MPS-GRUPPEN AB | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| OLOFSSON, BIRGITTA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| HOLMAN, ANN-MARIE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| TERGESDAL, PER | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 10,467.29 | 70,000.00 |
| BACK, LENNART | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| BENGTSSON, ULLA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| JOWERIN, BO | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| SVENSSON, BARBRO | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| HANSSON, GUNILLA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| ANDERSSON LANDELIUS, THOMAS | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| KARLSSON, BENGT | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| FERRIFEDEN, CHRISTINA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| SWENSSON, HENRIK | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| ANDREN, JONAS | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| GUNNEMO, SIV | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| CHRISTENSEN, ELISABETH | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| ERIKSSON, MAJ BRITT | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 8,971.96 | 60,000.00 |
| NORDBERG, KURT | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| FASTIGHETSMAKLSRE ULF LINDWALL AB | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 74,766.36 | 500,000.00 |
| ENGSTROM, ANN-SOFIE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| ANDERSSON, FREDRIK | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| J. FORSSELL PSYKOTERAPI & HANDL. AB | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| FOGELANDER SJOSTRAND, YVONNE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 10,467.29 | 70,000.00 |
| ARESKOUG TELLER, MARIA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| OLSSON, OLOF | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 29,906.54 | 200,000.00 |
| ANDREASSON, ELLA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 8,971.96 | 60,000.00 |
| SKOSMALM, JORAN | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| PEHRSON, ANDERS | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 13,457.94 | 90,000.00 |
| RASMUSSON, BO | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| LANDEN, ROLF | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| KARLSSON, TOMMY | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| CARSATER, MARIE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| HOLMGREN, CHRISTER | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 11,962.62 | 80,000.00 |
| SJOSTRAND, DAVID | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 10,467.29 | 70,000.00 |
| BLOMQVIST, SVEN-OLOF | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| ELIASSON, MAGNUS | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| SERKITJIS, MIHAIL | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |

| Name | Product | ISIN | Code | Amount 1 | Amount 2 |
|---|---|---|---|---|---|
| NORLEN DAVIDSSON, ULLA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 14,953.27 | 100,000.00 |
| LOFGREN, ERIK | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 44,859.81 | 300,000.00 |
| NILSSON, CHRISTER | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 44,859.81 | 300,000.00 |
| MARKSTAD FORVALTNING AB | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 74,766.36 | 500,000.00 |
| BLOM, HAKAN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 13,457.94 | 90,000.00 |
| ROSEN, STEFAN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| JOHANSSON, BERTIL | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 10,467.29 | 70,000.00 |
| MANHOLM, STINA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| BERGSTAF, ULLA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| WICKBERG, MADELEINE | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| PETTERSSON, KRISTIN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| ANDERSSON, IDA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| LINDAU, MARIE | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| WEGELE FORVALTNINGS AB | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| RINGELS, TORBJORN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| KINDLUND, ANDERS | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 14,953.27 | 100,000.00 |
| OLSSON, LENA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 29,906.54 | 200,000.00 |
| OLSSON, JAN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 43,364.49 | 290,000.00 |
| BARTA LARSEN, MONIKA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 8,971.96 | 60,000.00 |
| SKOGMALM, EMMA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| SCHONFELD, MARGARETA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 303,551.40 | 2,030,000.00 |
| ANDERSSON, ROLAND | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 8,971.96 | 60,000.00 |
| AXLER, KARL | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| NYLIND, BJORN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 14,953.27 | 100,000.00 |
| LUNDBERG, LEIF | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| KATARIA, KATARIA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 14,953.27 | 100,000.00 |
| HELLQVIST, KJELL | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 8,971.96 | 60,000.00 |
| KARLSSON, BORJE | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 10,467.29 | 70,000.00 |
| SVENSSON BENGT OLOF STURE | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| OVILBERG, SYLVE | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 8,971.96 | 60,000.00 |
| OVILBERG, LILLI - ANN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 8,971.96 | 60,000.00 |
| AXLER, KAJSA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| ANDERSSON, PETRA | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| PETERSSON DBO, ERIK | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 44,859.81 | 300,000.00 |
| MAGNUSSON, RUDI | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| SELLMAN, LARS-OLOF | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 14,953.27 | 100,000.00 |
| NOREUS, JONAS | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 10,467.29 | 70,000.00 |
| PERSSON, JAN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| BREVALD, JOHAN | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 14,953.27 | 100,000.00 |
| LIDHOLM, ANDREAS | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| NORBECK, THORVALD | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 7,476.64 | 50,000.00 |
| LIND, LI | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 17,943.93 | 120,000.00 |
| LIND, KRISTOFFER | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 13,457.94 | 90,000.00 |
| LIDHOLM, PER | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 11,962.62 | 80,000.00 |
| HALL, BRITT-MARIE | Valutaobligation Tillvaxtmarknader 4 | XS0293822771 | 6044579 | 14,953.27 | 100,000.00 |

| Name | | ID | | Amount | Amount |
|---|---|---|---|---|---|
| PERSSON, INGEGARD | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| BERNVETTER, ANNE-CHARLOTTE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| LIND, TESS | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 17,943.93 | 120,000.00 |
| LARSSON, INGER | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| STREAMLINE SWEDEN AB | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 37,383.18 | 250,000.00 |
| AHLM, MIKAEL | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| PETTERSSON, GEORG | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| PERSSON, MIKAEL | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| CARLENSTEIN, TORBJORN | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 104,672.90 | 700,000.00 |
| CARLENSTEIN, TORBJORN | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| JOHANSSON, MARGOT | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 89,719.63 | 600,000.00 |
| JOHANNESSON, INGRID | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 8,971.96 | 60,000.00 |
| LARSSON, BO | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| OVARFORDH, BERIT HELEN | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| BLACKADDER, AGNES | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| GOENTORP, ANN-MARI | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| AKESSON, ANN-CHRISTINE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 17,943.93 | 120,000.00 |
| HUNT, REBECKA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 19,439.25 | 130,000.00 |
| OTTOSSON, CAMILLA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| SJOSTROM, MAUD | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| FASSBERG, ROLAND | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| ENQUIST, HAKAN | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| GUSTAVSSON, GOTE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| CARLENAS, BRITT-MARIE | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| CARON, JESPER | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| ANDERSSON, GUNNI | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 23,925.23 | 160,000.00 |
| LOMBARDI, ASA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| OLSSON, ULF | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 7,476.64 | 50,000.00 |
| BYBACK, PER OLA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 29,906.54 | 200,000.00 |
| OLSSON, ANN-BRITT | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 11,962.62 | 80,000.00 |
| TURVESSON, BENGT INGMAR | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 37,383.18 | 250,000.00 |
| LAGER, MARGARETHA | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 14,953.27 | 100,000.00 |
| TIDHOLM, JAN | Valutaobligation Tillväxtmarknader 4 | XS0292822771 | 6044579 | 8,971.96 | 60,000.00 |
| | | | | 3,020,560.75 | 20,200,000.00 |

**SCHEDULE 2**

# ÅLANDSBANKEN

## CUSTODY & CASH ACCOUNT AGREEMENT

| Custody & Cash Account No | Custody & Cash Account No |
|---|---|
| Account manager | Client category |

| CLIENT (if the Custody & Cash Account is held jointly, see next page) | | |
|---|---|---|
| | Name (surname, first name) / Name of company (in full) | Civic or company registration No |
| | Address (street address, box number or fiscal address) | Telephone No Evening |
| | Postal code        Postal district        Country (other than Sweden) | Telephone No Daytime |
| | E-mail | Fax, incl.area code |
| | Fiscal domicile address, if different from above | |
| | Bank        Bank account for transfer of funds        IBAN-No | |
| | Citizen (other than Swedish)    Country (fiscal domicile)    Foreign tax identification No | |
| | Country of birth, if other than Sweden    Birthplace    Year of birth | |

| Postal address for extra advice | | |
|---|---|---|
| | Name (surname, first name) / Name of company (in full) | Country (other than Sweden) |
| | Address (street address, box number or fiscal    Postal code | Postal district |

| ANNUAL REPORTS AND SPECIAL CONDITIONS | ☐ The Client wishes to receive annual reports etc. from issuer registered with VPC AB in which the Client holds securities recorded in the Custody & Cash Account. The Client hereby consents to the fact that Ålandsbanken on request, to the issuer responsible for distribution of annual reports etc., delivers information about the Client's name and address. (Regarding prospectuses etc. see further GENERAL CONDITIONS section B.1.4). |
|---|---|

| CREDIT | ☐ The Client hereby applies for a credit facility of        kronor. See further General Conditions subsec. 4.4.5-4.4.7 Custody & Cash Account Agreement |
|---|---|
| | ☐ The Application for credit is completed with spec. information regarding income etc. See further appendix |

| CONSUMER | ☐ Yes    ☐ No | | Debet | | Credit |
|---|---|---|---|---|---|
| | * The Client is considered as a Consumer only if the Consumer Credit Act(1992:830) is applicable on the relation between the Client and Ålandsbanken. | Nominal %| Effective %| | Nominal %|

| Agreements | Concluded between the undersigned holder(s) of Custody & Cash Account (the Client) and Ålandsbanken Sverige AB (the Company or Ålandsbanken) a Custody & Cash Account Agreement for the Client with Ålandsbanken as per the stated terms and conditions on this page and on the reverse as well as in the GENERAL CONDITIONS GOVERNING CUSTODY AND CASH ACCOUNT SERVICES, GENERAL CONDITIONS FOR TRADING IN FINANCIAL INSTRUMENTS obtaining from time to time, and Ålandsbanken's special Policy regarding execution of orders and aggregation and allocation of orders obtaining from time to time, which provisions, conditions and policy the Client has read and thereby approved. Ålandsbanken has examined the identity of the Client, see above (and on the reverse side). This agreement should be regarded as concluded when the Client has undersigned it and Ålandsbanken due to examination of the case has opened the Custody & Cash Account for the account of the Client. |
|---|---|
| Agreement for several persons jointly | Where two or more persons have together concluded this Agreement with Ålandsbanken each of them may represent the others in every respect in relation to Ålandsbanken, unless otherwise agreed upon in writing. They are jointly liable to Ålandsbanken and, hereinafter, jointly referred to as the Client. |
| Power of Attorney | The Client hereby authorises the Bank or its appointed nominee to sign on the Client's behalf transfers in respect of shares, bonds and other securities and to act on behalf of the Client in acquiring/disposing of securities, and to receive and give receipt for securities and cash. |
| | The Client hereby authorises Ålandsbanken or its appointed nominee to sign on the Client's behalf transfers in respect of shares, bonds and other securities and to act on behalf of the Client in acquiring/disposing of securities, and to receive and give receipt for securities and cash. |

| | |
|---|---|
| Fiscal Domicile | The Client has to convince himself of own fiscal domicile. As regards a physical person it is normally the country/state according to the law of which a liability to taxation exists because of main stay, residence, or similar circumstance. As regards a legal entity it is normally the country/state in which the legal entity is registered or where company board is situated. |
| Changes of Addresses | The Client hereby declares that the information given on this form which is of importance for taxation, the implementation of the legal requirements concerning the giving of information, etc. are correct and undertakes to inform Ålandsbanken in writing promptly of any changes in this respect, e. g. leaving the country and any change of name, telephone number, postal addresses, and e-mail addresses, see above (and on the reverse side). |
| Treatment of Personal Information | The Client is aware that Ålandsbanken may be obliged to deliver information concerning the Client's affairs. The Client approves the use of such personal information by Ålandsbanken for direct marketing purposes, see GENERAL CONDITIONS GOVERNING CUSTODY AND CASH ACCOUNT SERVICES, Section G.4. |
| Consent in respect of funds | The Client hereby consents to the fact that funds received by Ålandsbanken for deposit in connected Cash Account of the Client need not be held separately or held in a bank account. The attention of the Client is drawn to the fact that the funds will be included in Ålandsbanken's own day-to-day operations and the Client will rank *pari passu* with Ålandsbanken's other unsecured creditors. |
| Pledging | As collateral for all of the Client's present and future obligations to Ålandsbanken according to this Agreement or otherwise arisen the Client hereby pledges to Ålandsbanken, *firstly*, all such securities which are from time to time held or are recorded in this Custody Account or in any other Custody Accounts opened by the Client with Ålandsbanken – also including securities recorded and registered in the Client's name in an account based system (for instance, on a Vp-account with VPC AB) – *as well as* all of the Client's securities otherwise transferred or delivered to or acquired through Ålandsbanken *and including* all funds deposited from time to time in the connected Cash Account or another client's account with Ålandsbanken. The Client may not – without Ålandsbanken's consent in each particular case – pledge or otherwise dispose of the securities or funds pledged according to this Agreement to anyone other than Ålandsbanken. In addition, the conditions for pledging as set out in Section D. Pledges of the GENERAL CONDITIONS GOVERNING CUSTODY AND CASH ACCOUNT SERVICES apply. |
| Complaints and Rescission | The Client shall complain in respect of any possible errors or omissions that may be apparent from contract notes or statements of account or summaries of transactions supplied by Ålandsbanken or that such information is missing or in respect of any other errors or omissions in conjunction with Ålandsbanken fulfilment of services according to GENERAL CONDITIONS GOVERNING CUSTODY AND CASH ACCOUNT SERVICES, and the Client shall immediately notify Ålandsbanken thereof (complaint). Where the Client wishes to rescind a buy or sell order, such fact shall be expressly stated and immediately conveyed to Ålandsbanken. Where a complaint or request for rescission is not submitted immediately, the Client shall forfeit the right to demand compensation, rescind the order, or demand that Ålandsbanken adopt other measures. |
| Changes of General Conditions | See Section 3.11 of the GENERAL CONDITIONS GOVERNING CUSTODY AND CASH ACCOUNT SERVICES. |
| Internet agreement | Concluded between the client and Ålandsbanken is an Internet Agreement. Please see subsec. 7 in General Conditions for Cash & Custody Agreement. |

| SIGNATURE | Postal district and date | |
|---|---|---|
| Legal entities shall enclose proof of signing capacity and photo copy of valid identification card or passport belonging to the signatories. Physical persons shall enclose photo copy of valid identification card or passport. | Client's signature | Name in capital letters |
| | Client's signature | Name in capital letters |
| | Postal district and date | |
| | Company's signature | |
| Ålandsbankens´ notes | Proposed trading limit | Approval – signed |
| | Signature of Client's Account manager | Recommendation · signed |
| LoB –form | ☐ LoB-form completed. Concerns "Certification of Treaty Benefits, Limitation on Benefits" according to QI-agreement with the US tax authority IRS | |

Ålandsbanken Sverige AB (publ). 107 81 Stockholm
Tel. 08-791 48 00, Fax: 08 611 26 90
Styrelsens Säte: Stockholm, Org.nr: 593200-1745, www.alandsbanken.se
Stockholm · Göteborg – Malmö

AB april 2009

# ÅLANDSBANKEN

## General Conditions for Custody & Cash Account Agreement

This document is a translation of the Swedish original. The Swedish version shall be the sole authentic version and, in event of discrepancies, shall prevail.

### 1. Introduction

These General Conditions for a Custody & Cash Account Agreement (General Conditions) have been issued by Ålandsbanken Sverige AB (publ) on the 14th of September 2007 and are applicable for Client's (Client) custody and cash accounts at Ålandsbanken Sverige AB (publ) (Ålandsbanken).

### 2. Information regarding risks

Along with these General Conditions, the Client receives information about the characteristics and risks concerning financial instruments as well as with the trading in options, futures or forward contracts, and other derivative instruments. This information can be found at the end of this document.

Ålandsbanken would like to remind the Client that there are risks associated with trading in securities and other financial instruments, which is described in greater detail in the information about risks which can be found at the end of this document.

The Client acknowledges and accepts:

- that the investments and other positions in financial instruments occurs at the sole risk of the Client;

- to thoroughly review these General Conditions, which also covers the General Terms and Conditions for trading in financial instruments;

- that when trading in financial instruments, to review the contract note or statement of account and in the event of any errors, to immediately make a request for correction;

- its responsibility to continuously monitor the changes in value of holdings and positions in the financial instruments; and

- that he/she must on their own initiative initiate the measures which are required in order to minimize the risk of losses in their investments or other positions.

### 3. General

#### 3.1 Definitions

The following terms used in the Custody & Cash Account Agreement and in these General Conditions will have, in addition to the above definitions, the meaning which is stated below.

What is meant by "contract note" is a notification that an order / transaction has been executed.

What is meant by "banking day" is a day which is not a Sunday nor a national holiday in Sweden, or concerning payments for securities, is not treated as an ordinary holiday (the days which are presently treated as a holiday are Saturdays, Midsummer Eve, Christmas Eve and New Year's Eve).

What is meant by "trading market" is a marketplace, a systematic internaliser or a market maker within the European Economic Area or another individual who provides liquidity within the European Economic Area, or an entity outside of the European Economic Area which corresponds to any of those previously stated.

What is meant by "marketplace" is a regulated market or a multilateral trading facility (MTF).

What is meant by "regulated market" is as it is defined in the Swedish Financial Markets Act (lagen (2007:528) om värdepappersmarknaden), i.e. a multilateral system within the European Economic Area which amalgamates or facilitates the amalgation of a number of bids and offers in financial instruments from third parties, on a regular basis, within the system and in accordance with non-discretionary rules, so that this leads to a trade/sale.

What is meant by "financial instrument" includes financial instruments as defined in the Swedish Financial Markets Act (lagen (2007:528) om värdepappersmarknaden), i.e. transferable financial instruments which may be traded (bought and sold) on a capital market, money market instruments, shares in mutual funds and financial derivative instruments, as well as other documents with a financial value which can not be traded on a capital market, such as company shares or simple promissory notes which according to the definition above are not financial instruments, personal guarantees, deeds of gifts, real estate mortgages, or similar documents.

#### 3.2 Fees, etc.

Fees will be charged for custodian and other services rendered in accordance with the above provisions according to what the Company notified the Client at the time of opening the Custody & Cash Account or later, in the manner set out in section 3.11.

The fees will be charged to the connected Cash Account in Swedish kronor unless the Company advises otherwise. Information regarding the valid tariff is available from the Company on request. The charges for credit to Clients who

are not professional investors are stated in the Custody & Cash Account Agreement.

The Client shall compensate the Company for expenses and outlays in connection with the Company's assignment in accordance with these provisions as well as charges and outlays for monitoring and collecting amounts due to the Company by the Client.

#### 3.3 Notices, etc.

The Company shall be entitled to provide information to the Client by e-mail to the e-mail address stated by the Client in respect of the Custody & Cash Account Agreement where the Company determines that provision by e-mail is appropriate.

Notices sent by the Company by registered mail or by ordinary mail shall be regarded as received by the Client no later than five banking days after the date of posting/mailing, if the notice has been sent to the address provided by the Client.

Notices by telefax, telex, S.W.I.F.T., internet or by other electronic communication shall be regarded as received by the Client at the same time as transmission, if sent to the number or electronic address provided by the Client. If such a notice arrives at the Client's address after office hours, the notice shall be regarded as received at the outset of the following banking day.

Notices from the Client to the Company shall be sent to the address given in the Custody & Cash Account Agreement, unless the Company has requested notices/replies to be sent to another address. Notices from the Client shall be regarded as received on the banking day it arrives at the Company at the address given.

#### 3.4 The disclosure of information, management of personal information, etc.

Ålandsbanken may, as a result of Swedish or foreign law, regulation issued by a public authority, regulated market rules or agreements/provisions contained in certain financial instruments, be obligated to provide information to mutual fund companies, tax authorities or others about the Customer's relationship according to the Custody & Cash Account Agreement. Upon the request of Ålandsbanken, the Customer is obligated to provide to Ålandsbanken such information including written documents which Ålandsbanken has determined to be necessary in order to comply with such obligations.

Ålandsbanken may disclose the Customer's personal information (the information provided by the Customer himself/herself, as well as information which may be acquired from other sources) to the extent that it is required for the compliance with Ålandsbanken's legal obligations, and Ålandsbanken may use the Customer's personal information in order to provide information to the Customer about changes in policies or and the terns and conditions, financial instruments, products and services, etc., in connection to the Custody & Cash Account Agreement or another agreement between Ålandsbanken and the Customer, including these General Provisions, and transactions related to such agreements. The use of the Customer's records may also occur by Ålandsbanken for purposes related to direct marketing of products and services which Ålandsbanken and other companies within the Swedish Ålandsbanken Group provides.

The Customer is entitled, according to the Swedish Personal Data Protection Act (Personuppgiftslagen (1998:204)), Pul, to request once per year and free of charge to receive information from Ålandsbanken about which of the Customer's personal information records have been disclosed or is retained by Ålandsbanken. The request must be made in writing to the following address: Ålandsbanken Sverige AB, Personuppgiftsombudet (Personal Data Representative), SE-107 81 Stockholm. The Customer can also send a written request, to that address, that Ålandsbanken refrain from using the Customer's personal information for direct marketing purposes as well as a request for correction of incorrect personal information.

#### 3.5 Statements

The Company will send a contract note to the Client as final confirmation that an order or a commercial mandate has been executed.

Statements for the Custody & Cash Account will be rendered – if nothing to the contrary has been specially agreed - at least once a year unless such summary has been provided in another form on a regular basis.

The Company accepts no responsibility for the accuracy of information that the Company obtains from external sources concerning securities.

#### 3.6 Complaints and Rescission

The client shall complain of any possible errors or omissions that may be apparent from contract notes, or that a contract note is missing, or in respect of any other errors or omissions in conjunction with execution of an order, and the client shall immediately notify Ålandsbanken thereof (complaint).

Where the client wishes to rescind a buy or sell order, such fact shall be expressly stated and immediately conveyed to Ålandsbanken.

Where a complaint or request for rescission is not submitted immediately, the client shall forfeit the right to demand compensation, rescind the order, or demand that Ålandsbanken adopt other measures.

ÅB april 2009

# ÅLANDSBANKEN

### 3.7 Taxes, etc.

The Client shall be responsible for taxes and other dues payable according to Swedish or foreign law in respect to securities recorded in the Custody Account, for example preliminary tax, foreign withholding tax and Swedish coupon tax on dividends.

The Company may, in accordance with Swedish/foreign law, Swedish/foreign public authorities' regulations or decisions or the Company's agreement with Swedish/foreign authorities, be obliged on account of the Client to take measures concerning tax based on dividends/interest/disposals concerning the Client's securities. It is incumbent upon the Client to provide that information, including written documentation, which the Company deems to be necessary in order to fulfil such obligation.

If the Company, as a result of the obligations according to the section above, has paid tax on behalf of the Client, the Company may recompense itself for the equivalent amount in the same manner as set out in section 4.4.3.

The Company shall, if the Client specifically requests, endeavour to assist in achieving a reduction or restitution of tax and payment of the balance with the tax authorities, if the right thereto exists and if the Company considers it feasible in practice and expedient. The Company may in this connection sign on behalf of the Client and also provide information, to the extent necessary, concerning the Client and the Client's securities.

### 3.8 Recording of telephone conversations

The Company may at its own discretion record telephone calls between the Client and the Company.

### 3.9 Deposit guarantees and investor compensation

In the event of the Company's insolvent liquidation and where the Client is not able to withdraw liquid funds deposited in Cash Account with the Company, the Client has the right to individual compensation in a total amount not exceeding SEK 500,000 in terms of the Act on Deposit Guarantees (1995:1571). In such circumstances, compensation is paid out by the Swedish Deposit Guarantee Board, without the necessity of making special application, as a general rule not later than three months from the date of the insolvency order.

In the event of the Company's insolvent liquidation and where the Client is not able to withdraw financial instruments deposited with the Company, the Client has the right to individual compensation in a total amount not exceeding SEK 250,000 in terms of the Act on Investor Compensation Scheme (1999:158) providing investor compensation. Such compensation can also include liquid funds for which the Company is accountable. Not later than one year from the date of the insolvency order a Client seeking compensation must submit a demand to the Swedish Deposit Guarantee Board, which pays compensation following an assessment.

### 3.10 Limitation of the company's responsibilities

The Company shall not be held responsible for any loss or damage resulting from a legal enactment (Swedish or foreign), the intervention of a public authority (Swedish or foreign), an act of war, strike, blockade, boycott, lockout or any other similar circumstance. The reservation in respect of strikes, blockades, boycotts and lockouts shall apply even if the Company itself takes such measures or is the subject of such measures.

Any loss or damage that may occur in other circumstances shall not be indemnified by the Company provided the Company has observed general standard of care.

The Company shall not be responsible for any loss or damage caused by any of the following - Swedish or foreign - execution venue, custodian, central securities depository, clearing organisation, or others who provide equivalent services or by a contractor that the Company has employed with due care or that has been recommended by the Client. The aforementioned applies to loss or damage caused by the insolvency of any of the organisations referred to above or a contractor. The Company shall not be responsible for any loss or damage that occurs for the Client or any other party on account of restriction of disposal that may be applied against the Company in respect of financial instruments.

The Company shall not accept responsibility for indirect loss or damage unless such indirect loss or damage is caused by the Company's gross negligence.

Where a circumstance as referred to in the first paragraph in this section should prevent the Company from entirely or partly carrying out any measure to be taken in accordance with these General Conditions or buy/sell commissions in respect of financial instruments, fulfilment may be postponed until the obstacle no longer exists. If the Company as a consequence of such a circumstance is prevented from making or receiving payment/ delivery, the Company and the Client respectively shall not be obliged to pay interest.

What is stated above shall apply, subject to the provisions of the Act (1998:1479) on Registering of Financial Instruments.

### 3.11 Changes in the general conditions

Any changes in these General Conditions or in the Company's fees shall apply to the Client from and including the thirtieth day after the Client shall be considered, in terms of section 3.3, to have received notice of the change. Should the Client not accept the change, the Client has the right within the time mentioned to terminate the Custody & Cash Account Agreement

according to these General Conditions without observing the time for giving notice of termination specified in section 4.7.13.

### 3.12 Applicable law

Interpretation and application of the Custody & Cash Account Agreement and the General Conditions Governing Custody & Cash Account Services shall be according to Swedish law.

### 4. General conditions

**4.1** In terms of these General Conditions, financial instruments entered in book-entry systems at a central securities depository (CSD) or the equivalent - for example, in VP-accounts with the Swedish Central Securities Depository, VPC AB (VPC) - shall be regarded as having been received when the Company has been put in a position to register, or cause to be registered, information concerning the instrument in such a system. Other securities are regarded as having been received when they have been delivered to the Company. Securities received, which have been issued in document form, shall be held in Custody Account by the Company on behalf of the Client provided that the securities have been accepted with reference to the paragraph above..

### 4.2 Recording and holding in custody account etc

#### 4.2.1 Recording and holding in custody account

The Company shall, under its custody arrangements, record such securities that have been received by the Company for holding etc. while in Custody Account. The Company reserves unto itself the right to give consideration to the receipt of certain securities, see also section 4.7.2. If the Client has several custody accounts with the Company and the Client has not instructed the Company in which Custody Account a particular security shall be recorded, the Company may decide upon the Custody Account in which the record shall be made.

The Company may cause the Client's securities to be registered and, where applicable, deposited with another securities institution in Sweden or abroad, a so-called custodian. The choice of custodian is at the Company's discretion. Securities deposited with a custodian are normally held in the Company's own name on behalf of the Client. The Client's securities may thereby be registered together with the securities of other holders. The Company may also permit the Client's financial instruments to be included in a single document common to a number of owners. The Company may instruct a custodian to allow itself to be registered in place of the Company in respect of the Client's securities. The Client is aware and acknowledges that the Client's securities may be held in an omnibus account with the custodian. Whether or not the Client has a protected property law right of separation in the event the Company or the custodian is placed into insolvent liquidation or affected by another measure with a similar legal effect may vary and depends on applicable legislation. Separation rights apply in Sweden on condition that the securities are held separately from the custodian's or the Company's own securities.

In conjunction with registering and holding at custodians abroad, as a result of applicable foreign law, it may be impossible to identify the Client's securities separately from the custodian's or the Company's own securities, whereupon the Client's securities, in conjunction with an insolvency situation, could be deemed to be included in the assets of the custodian or the Company.

A custodian may have security in, or set-off rights concerning, the Client's securities and claims connected thereto.

The Company undertakes no examination into the authenticity of the Client's securities.

The Company is entitled to reasonable time in order to effect the recording, delivery and transfer of securities.

The Company reserves the right to withdraw securities from the Client's Custody Account when the issuer of the securities has gone into bankruptcy or the securities have become valueless for another reason. If possible, the Company shall then seek to register the securities in the Client's name with the authorised registrar.

#### 4.2.2 Nominee registration (or the equivalent)

The Company, if acting in a nominee capacity, may allow securities received to be registered in its own name with that entity in Sweden, for example VPC, or abroad which undertakes the registration of the instrument. Accordingly, the Client's financial instruments may be registered together with other owners' financial instruments of the same class. The Company may also allow the Client's financial instruments to be included in a single document common to a number of owners. The Company may instruct a custodian to allow itself to be registered in place of the Company in respect of the Client's financial instruments.

### 4.3 The company's undertakings concerning securities

#### 4.3.1 General

The Company undertakes to carry out on behalf of the Client the measures as are set out in section 4.3.2-4.3.4 below in respect of securities received.

The undertaking comes into effect - if nothing to the contrary appears hereunder or has been specially agreed - for Swedish financial instruments registered with VPC from and including the fifth, and for the remaining Swedish securities and for foreign financial instruments from and including the fifteenth, banking day after the securities have been received by the Company. Accordingly, the Company is not obligated to take notice of any time limits that expire prior to that time.

ÅB april 2009

# ÅLANDSBANKEN

The Company undertakes the measures set out below subject to the condition that the Company has received adequate information in good time concerning the circumstances giving rise to the measures through notice from the Client, custodian, issuer, VPC or other central securities depository.

The issuer is responsible for the distribution of annual reports, interim reports, prospectuses and other information. If the Client indicates in the Custody and Cash Account Agreement that annual reports, etc. are desired from a VPC registered issuer in which the Client holds securities recorded in the Custody Account, the Company, at the issuer's request, may provide via VPC the Client's name and address details. The issuer normally distributes annual reports, interim reports and the like. Prospectuses and other information concerning offers are not normally distributed. Instead, the Company provides the Client with a summary of the offer. At the same time, the Client receives directions as to where more information regarding the offer can be obtained.

The Company may fully or partly refrain from taking a measure if there are not sufficient funds on a Cash Account connected to the Custody Account, or if the credit limit, if any, is insufficient to allow for such measure to be taken or if the Company has not been furnished with that information necessary for the measure to be taken.

The Company may, on its own initiative and at its own discretion in each specific case, irrespective of what is stated in sections 4.3.2 and 4.3.3 below, on the Client's behalf take or omit to take measures detailed in the points mentioned if the Company has specified this in a notification concerning such measures to the Client and if the Client has not instructed otherwise within the response period given in the notification. The Client is bound by a measure taken or omitted to be taken by the Company in the same way as if the Client had instructed that the measure should be taken or not taken.

The Company and the Client can agree that the Company shall act in another manner than what the Company should otherwise do according to sections 4.3.2.2 and 4.3.3 below. If the question concerns subscription/additional purchase or the sale of the Client's rights, such an agreement cannot be made after that point in time when the Company concerned has the intention to carry out the subscription/additional purchase or sale of the Client's rights. That point in time, mostly with respect to the remaining time for trading in the rights, occurs regularly before the official last point in time for subscribing.

On the Company's sale of rights according to the terms hereunder, the sale may be combined for several Clients and, where applicable, in accordance with the Company's special Policy regarding execution of orders and aggregation and allocation of orders applicable from time to time. In such circumstances, the funds shall be distributed proportionally between the Clients.

If, according to the applicable law or rules for an issue or an offer, the Client does not have the right to exercise those preferential rights which result from the Client's holding of certain financial instruments, the Company may sell those preferential rights.

### 4.3.2 Swedish financial instruments

As regards Swedish financial instruments the Company's undertaking – with the possible variation that can result from what is stated in section 4.3.1 – covers the following measures. In this section 4.3.2, "Swedish financial instruments" means financial instruments that are issued by issuers whose registered offices are located in Sweden and that are registered in accordance with the Registration of Financial Instruments Act (1998:1479) and traded on a Swedish marketplace.

**4.3.2.1** Regarding Swedish financial instruments, Ålandsbanken's obligations encompass the following measures

- to receive dividends and interest. If the Client has the choice of receiving a dividend in cash or in another form, Ålandsbanken may choose to collect the dividend in cash if the Client has not explicitly instructed otherwise;

- to subscribe on behalf of the Client for a new share issue of shares admitted to trading on a regulated market and the issuance of bonds/promissory notes in which the Client has a preferential right which may be traded on a capital market and to take all necessary related measures. In the event the Client has not provided any instructions, Ålandsbanken may subscribe for such shares and bonds/promissory notes for the account of the Client, unless otherwise instructed or Ålandsbanken in a particular case notifies the Client otherwise. Ålandsbanken will hereby seek to make such purchases of subscription rights which are necessary in order to acquire all of the subscription rights to which the Client is entitled based on the financial instruments recorded in the Custody Account and subscribe thereafter towards all of the subscription rights available to the Client.;

- notify the Client of any public offer for the acquisition of financial instruments, directed to the Client by the issuer (redemption/buy-back) or by any other party (buyout) and regarding which the Company has received information in the manner described in section 4.3.1, or by notice appearing in the daily newspapers Dagens Nyheter or Svenska Dagbladet and, after specific instructions by the Client, to assist in taking any action required in connection therewith. (See also 4.3.2.5) The same applies with any public offer regarding the purchase of shares directed to the Client.

**4.3.2.2** As regards **shares** the Company undertakes to (in addition to 4.3.2.1 above) receive dividends. If the Client has the choice of receiving a dividend in

cash or in another form, the Company may choose to collect the dividend in cash if the Client has not explicitly instructed otherwise;

- subscribe on behalf of the Client for such shares as regards a rights issue of shares admitted to trading on a regulated market in which the Client has a preferential right if nothing else has been agreed. The Company shall thereby make such additional acquisitions of subscription rights as may be necessary in order to acquire all of the subscription rights to which the Client is entitled based on the financial instruments recorded in the Custody Account and subscribe thereafter towards all of the subscription rights available to the Client. However, no subscription is made if the Company – at that point in time when the Company, with regard to the remaining time for trading in the subscription rights, intends to execute the subscription rights – finds that the subscription price is not lower than the actual market price. The Client can, however, insist on the subscription being undertaken nevertheless;

- subscribe on behalf of the Client for such shares as regards a rights issue of other shares in which the Client has a preferential right and which are covered by this section 4.3 unless otherwise agreed. The Company shall thereby seek to make such additional acquisitions of subscription rights as may be necessary in order to acquire all of the subscription rights to which the Client is entitled based on the financial instruments recorded in the Custody Account and subscribe thereafter towards all of the subscription rights available to the Client. However, no subscription is made if the Company – at that point in time when the Company, with regard to the remaining time for trading in the subscription rights, intends to execute the subscription rights – finds that the subscription price is not lower than the actual market price. The Client can, however, insist on the subscription still being undertaken;

- purchase where a bonus issue is concerned regarding shares admitted to trading on a regulated market such fractions as may be necessary so that all fractions to which the Client is entitled, based on the securities recorded with the Company, are used in full in the bonus issue and record such number of new shares as the Client thereafter is entitled to;

- seek to purchase where a bonus issue is concerned regarding other shares covered by this section 4.3 such fractions as may be necessary so that all fractions to which the Client is entitled, based on the securities recorded with the Company, are used in full in the bonus issue and record such number of new shares as the Client thereafter is entitled to;

- notify the Client of any compulsory redemption in the case of shares in the VPC registered companies;

- receive or collect, in the case of shares in the VPC registered companies, capital as well as other sums due where there is a reduction in share capital, redemption or liquidation; and

- register on behalf of the Client the voting rights in the Client's name in respect of shares registered in nominee name with VPC, on the condition that such registration of voting rights may take place in accordance with prevailing procedures at VPC concerning the registration of voting rights and on the condition that the instructions are received by the Company at least five banking days prior to the last date for registration in the share register in order to secure the right to participate in the shareholders' meeting. If the Custody Account is held jointly in the name of two or more parties and the instructions do not specify in whose name the shares shall be registered, registration for voting rights shall be carried out in accordance with each party's respective shareholding. Share voting rights are not registered in respect of excess shares[1].

**4.3.2.3** As regards **warrants in respect of subscription rights**, the Company undertakes to (in addition to 4.3.2.1 above)

- notify the Client in good time of the last date for share subscriptions and, after specific instructions by the Client, to arrange for supplementary purchases of warrants and arrange subscription for new shares. Unless otherwise instructed, at the latest three banking days prior to the last date for trade in such warrants, the Company shall - if the Company considers it feasible in practice and expedient- sell the warrants which are not taken up.

**4.3.2.4** As regards **purchase rights**, the Company undertakes to (in addition to 4.3.2.1 above)

- notify the Client in good time of the last date for notification of purchase and, after specific instructions by the Client, to arrange for supplementary purchases of the purchase rights and to give notification of purchase. Unless otherwise instructed, at the latest three banking days prior to the last date for trade in the purchase rights, the Company shall - if the Company considers it feasible in practice and expedient - sell the purchase rights which are not taken up.

---

[1] Alternatively, if it is the Company's intention to have registration of voting rights on an ongoing basis or if registration of voting rights covers several holders at once, the Company can arrange to have registration in the name of a certain person of the Company's choosing.

3

# ÅLANDSBANKEN

**4.3.2.5** As regards redemption rights, the Company undertakes to (in addition to 4.3.2.1 above)

- notify the Client in good time of the last date for notification of redemption and, after the special instructions of the Client, seek to execute the supplementary purchase of redemption rights and give the requisite notification of redemption. Unless otherwise instructed, at the latest three banking days prior to the last date for trade in the redemption rights, the Company shall - if the Company considers it feasible in practice and expedient - sell the redemption rights which are not taken up.

**4.3.2.6** As regards **Swedish "depository receipts" concerning foreign shares,** the Company undertakes to (in addition to 4.3.2.1 above)

- render the equivalent services as for Swedish shares according to the above if the Company considers it feasible in practice and expedient.

**4.3.2.7** As regards **debt instruments and other promissory notes** that are negotiable on the capital market, the Company undertakes to (in addition to 4.3.2.1 above)

- receive and collect interest and capital or other sums which with redemptions, lottery drawings or cancellation fall due for payment after the debt instrument is received;

- collect prizes drawn on premium bonds according to the lottery lists, in connection with drawings which have taken place after the premium bonds are received by the Company, and to notify the Client of exchange of such premium bonds and to assist the Client in taking any measures required in connection therewith;

- notify the Client in good time as regards convertible instruments and other convertible debt instruments of the last conversion date and, after specific instructions by the Client, to arrange for conversion;

- notify the Client regarding any notice being given of a creditors' meeting with respect to debt instruments/promissory notes in which the Client is a holder and of which the Company has received information in the manner described in section 4.3.1 forth paragraph or through notices in Dagens Nyheter or Svenska Dagbladet, and after taking the Client's specific instructions, assist the Client with the desired measures to be taken in connection therewith.

As regards **financial instruments, which are not covered by sections 4.3.2.2 - 4.3.2.8 above**

such as options, futures and mutual fund units, in the case of the last, the Company undertakes to collect dividends, and in addition to carry out any other measures the Company has agreed to undertake by special agreement with the Client.

As regards **other financial instruments issued by an issuer whose registered office is located in Sweden and admitted to trading on a regulated market outside Sweden,** what is stated below in section 4.3.3 concerning foreign financial instruments applies, instead of what is stated in 4.3.2.2-7 above.

**4.3.3 Foreign financial instrument**

As regards shares and debt instruments which are not covered by section 4.3 above and which are admitted to trading on a regulated market within the EEA or on an equivalent market outside the EEA, the Company shall render – with those possible exceptions which can result from what is stated in section 4.3.1 sixth paragraph the same services as in respect of equivalent Swedish financial instruments - with the exception of the special undertakings regarding convertible instruments/other convertible debt instruments/promissory notes/debt instruments, as stated under sub-section 4.3.2.7 where the Company considers this is feasible in practice and expedient. In connection herewith the Client should be particularly aware of certain foreign shares registered with VPC for which, due to restrictions in VPC's obligations, there are constraints regarding the shareholder's option to exercise some rights e.g. to participate in general meetings and to participate in issues as well as being informed thereof. Such foreign shares are traded on separate lists, e.g "Xterna listan" on Stockholmsbörsen.

As regards foreign financial instruments other than those set out in the previous section, the Company's undertakings shall only include such undertakings as have been subject to separate agreement between the Company and the Client.

When the measure concerns foreign financial instruments, the Client fully acknowledges that the Client's rights may vary depending on the jurisdiction applying to such financial instruments. The Client is also aware and acknowledges that, where the measure relates to a foreign financial instrument the Company may often have to apply different time limits, vis-à-vis the Client, than those applicable in the country where the measure in question should be taken.

**4.3.4 Swedish and foreign documents of value**

As regards Swedish and foreign documents of value, the Company's undertakings – with those possible exceptions which can result from what is stated in section 4.3.1 sixth paragraph - are to do what the Company has taken upon itself to do by separate agreement between the Company and the Client.

**4.4 Cash accounts connected to the custody account and credit facility**

**4.4.1** One or several Cash Accounts are connected to the Custody Account. Unless otherwise agreed, one connected Cash Account shall be maintained in Swedish kronor.

**4.4.2** The Company may credit a connected Cash Account with funds which represent an advance payment for purchase orders or settlement for sales orders (or equivalent), the yield on securities serviced as well as funds which the Client otherwise passes over to the Company or which the Company receives on behalf of the Client and which are related to the Custody Account, unless the Client has instructed the Company another Cash Account to be credited.

**4.4.3** The Company may debit a connected Cash Account in respect of amounts which the Client may have instructed or has accepted and in respect of outlays, costs or preliminary tax related to the connected Cash Account or the Custody Account. The Company may also debit a connected Cash Account with amounts representing outlays, expenses and fees for any other commissions which the Company may have undertaken for the Client, and also payments in respect of any other due claims which the Company may have on the Client from time to time.

**4.4.4** Funds on foreign currency remitted or received by the Company on account of the Client shall be exchanged into Swedish kronor, using the Company's from time to time applicable exchange rate, prior to a connected Cash Account being debited or credited - unless otherwise agreed or provided that none of the Cash Accounts concerned are maintained in that specific foreign currency.

**4.4.5** If the Client, in connection with that a Custody & Cash Account Agreement has been entered into, applies for credit via specifically stating this according to what is provided in greater detail in the first page of the Custody & Cash Account Agreement, Ålandsbanken will review the credit application and notify the Client of its credit decision and any credit limit allowed. A credit limit granted means that the Client receives the right to conduct transactions in financial instruments registered on the custody account or an associated account against the receipt of credit up to an amount which corresponds the then current collateral value of the assets in the custody and in the associated accounts,[*] however never exceeding the amount of the credit limit as notified.

When Ålandsbanken makes its credit granting evaluation of the Client, Ålandsbanken will look at among other things the collateral value of the assets in the custody and associated accounts and the information which the Client provided in the appendix to the Custody & Cash Account Agreement. If the Client has, according to a special agreement, pledged the list of financial instruments and/or assets in the custody and associated accounts for obligations other than the Client's credit (for example trading with derivative instruments) these obligations will however, according to the policies which Ålandsbanken is then applying, be taken into consideration in the assessment of the amount of the credit allowed.

The Client's credit granted according to these conditions is available until further notice, with Ålandsbanken retaining the right to revoke the credit and require repayment upon a one month notice. In the event of notice termination of the Custody & Cash Account Agreement according to point 4.7.3, the first or third paragraph below, if the Client is not a private individual the credit will be due for repayment at the time of the termination of the Custody & Cash Account Agreement.

Regarding any granted and unutilized credit limit, Ålandsbanken is entitled without prior notice to the Client to immediately revoke the unutilized credit limit or a part of the unutilized credit limit. If such a revocation of an unutilized credit limit occurs, Ålandsbanken will notify the Client.

**4.4.6** The collateral value of the assets in the custody and associated accounts is calculated by Ålandsbanken in accordance with the rules which Ålandsbanken has adopted, or will adopt, and applies for credit of the relevant kind. The Client may receive information from Ålandsbanken about the current collateral value, the current collateral value for a specific financial instrument in the custody account, or the collateral value for the respective position of an associated account.

It is the responsibility of the Client to

- keep themselves informed about the present total collateral value of the assets in the custody and associated accounts; and to

- ensure that no short fall in collateral (borrowing in excess of limit) occurs at any time, i.e. that, taking into consideration the other obligations for which the stated assets have been provided as security, that the credit extended may not at any time exceed total collateral value of the assets.

The Client can not in any respect avoid the liability for any short fall in collateral which may have arisen by asserting that they have not been informed by Ålandsbanken of the current total collateral value of the assets in the custody and associated accounts or about any short fall in collateral which has arisen.

If a short fall in collateral as described above nevertheless arises, the Client is obligated to immediately, and even in the absence of a demand from

---

[*] The collateral value of the associated accounts may be lower than their not value in the situation where Ålandsbanken has chosen, for instance, to value an associated foreign currency account at a collateral value lower than 100%.

ÅB april 2009

# ÅLANDSBANKEN

Ålandsbanken, pay the excess amount of the debt or to provide additional collateral to such extent so that no short fall in collateral continues to exist.

If such payment is not made or such provision of additional collateral is not made, the total amount owing on the Custody & Cash Account becomes immediate due for repayment. If the Client is a private individual, what will apply in the last mentioned case instead, is that Ålandsbanken may sell the securities provided as collateral to such extent so that the credit utilized no longer exceeds the credit which the Client is entitled to use.

**4.4.7** rates that the Company applies from time to time in respect of accounts of a similar nature. For amounts owing on the connected Cash Accounts, interest will be charged in the first instance at the interest rate entered on the front page of the Custody & Cash Account agreement.

In determining whether there is a credit balance or an amount owing on connected Cash Accounts, each account is treated separately. This means, for example, that one connected Cash Account can be credited with interest whereas another connected Cash Account can be charged interest.

The interest rates may be changed with immediate effect following official rate changes, changes in the Company's funding costs or other cost increases for the Company. Changes in the interest rates for other

reasons may take place only from and including that day when the Company has informed the Client regarding changes in the interest rate.

If the Client by Swedish law is regarded as a consumer, instead of what is stated in the previous paragraph, the following shall apply in respect of interest on amounts owing on connected Cash Accounts, that the interest rate shall only be varied if caused by: official rate changes, changes in the Company's funding costs or other cost increase that the Company could not reasonably have foreseen when the Custody & Cash Account Agreement was entered into. Such change in the interest rate may take effect from and including the day when the Company has informed the Client.

Information concerning interest rates can be obtained from the Company. The interest on credit balances is calculated from and including the day after deposit until the date of withdrawal[3]. The interest on debit balances applies from the day when the debt arose up to and including the date of repayment[4].

**4.4.8** The Company has the right to charge interest on overdue amounts owing by the Client at such interest rate which by four percentage points exceeds the applicable interest rate according to section 4.4.7 above for amounts owing on a connected Cash Account.

## 4.5 Pledges

**4.5.1** In addition to the provisions concerning pledges in sub-sections 4.5.2-4.5.9 below, there are also provisions in the Custody & Cash Account Agreement under the heading Pledging as well as under sub-section 4.4.5-4.4.6 above as well as under 5.3 sixth paragraph and 6.2 below.

**4.5.2** The yield and all other rights based on the collateral are also covered by the pledge and constitute collateral.

**4.5.3** The Company's undertaking in respect of pledged property in its role as pledge holder should not be more extensive than those stated under these conditions.

**4.5.4** The pledge shall not constitute collateral for claims against the Client which the Company has acquired or may acquire from anyone other than the Client, if such claims either have no connection with the Client's trading with financial instruments or have not arisen through the Client's connected Cash Accounts being debited.

**4.5.5** Should the Client fail to fulfil his/her obligations towards the Company under the conditions of this Custody & Cash Account Agreement, or otherwise arising from the Client's transactions in financial instruments, the Company may utilise the pledge as it deems it appropriate. The Company shall proceed with due care in this and shall notify the Client in advance, if this can be done in the Company's judgement without prejudice to the Company. The Company may determine the sequence in which the collateral pledged (pledges, guarantees, etc.) should be utilised.

In the performance of what has been stated above, the pledged securities may be sold in some other way than in the marketplace where the securities are admitted to trading.

If the pledge consists of a credit balance in the connected cash account, the Company may, without prior notice to the Client, reimburse itself for the amount due out of the funds on the account.

**4.5.6** The Company is empowered, either in person or through the Company's nominee, to sign for the Client where this is necessary in order to utilise the pledge or otherwise to safeguard or exercise the Company's right to pledged property. Towards the same end, the Company may open a separate Custody & Cash Account and/or a Vp-account with the VPC or an account with some other

book-entry system. The Client cannot revoke such authorisation while the pledge is in force.

**4.5.7** If a guarantee has been issued for the Client's obligations according to the Custody & Cash Account Agreement the following shall apply as regards the guarantor's right to property pledged by the Client solely or jointly with another according to the Custody & Cash Account Agreement.

Where the Company has utilised the guarantee, the pledge shall thereafter constitute collateral for the guarantor's right of claim (recourse) against the Client only if this has been stated in the guarantee. Such right is subordinate to the Company's right to the pledge.

If the pledge constitutes collateral for several guarantors' right of recourse, they have the right to the pledge in proportion to each and every right of recourse, provided nothing else to the contrary has been agreed.

The Company may, as long as the Company has not utilised the guarantee, release collateral which is due according to the Custody & Cash Account Agreement, without the guarantor's responsibility decreasing as a result thereof.

**4.5.8** The Client may not, without the Company's prior consent, pledge to a third party property which is pledged according to these General Conditions and the Conditions of the Custody & Cash Account Agreement. Any such pledge to a third party shall be made in accordance with the Company's instructions using such form as has been approved by the Company. If any pledge is made which conflicts with these General Conditions, the Company has the right to terminate this Custody & Cash Account Agreement forthwith and notwithstanding the notice period stated in sub-section 4.7.3. below.

If the Client has pledged a security recorded in the Custody Account or funds on the connected Cash Account to another party, the Company may, regardless of the Client's objections, release or transfer the security or the funds on the Custody & Cash Account to the pledge holder or to a third party in accordance with the pledge holder's instructions. Notice of such release or transfer shall be sent to the Client.

**4.5.9** The Client may not in any other way dispose of the pledged securities or funds covered in the Custody & Cash Account Agreement without the Company's consent in every individual case.

## 4.6 Trade with securities over the custody & cash account

On the Client's instructions - even in terms of what the Client and the Company may have agreed in a separate agreement on trading via electronic means - the Company will buy and sell securities and carry out other commissions concerning trading in securities on behalf of the Client. After fulfilment and if the necessary prior conditions exist, the Company records such transactions in the Client's Custody & Cash Account.

The Client is aware that the Company may record the Client's telephoned instructions to the Company regarding trading or concerning the Client's Custody & Cash Account.

The Client is bound by the Company's special Policy regarding execution of orders and aggregation and allocation of orders applicable from time to time, and the terms and conditions applicable from time to time for trading in each type of financial instrument when using the Company's services in respect of such instrument. It is understood that such conditions include the General Terms and Conditions for trading with financial instruments applicable from time to time, the terms and conditions of the Company's sales/purchase order documents, and the terms and conditions of contract notes prepared by the Company, as well as rules adopted by the Company, Swedish or foreign issuer, execution venue, clearing organisation or central securities depository. It is the Client's responsibility to keep updated and comply with such terms and conditions and rules.

In terms of the General Conditions for trading with financial instruments, the Company has the right to cancel purchases and sales, where the contract is made for the Client's account, to the same extent as the contract is cancelled by the actual execution venue. The same right exists if the Company in other circumstances finds that cancellation of the contract is called for where an obvious mistake has been made by the Company, market counter-party or by the Client personally or, if the Client through the order contravenes the applicable law or other statutes, or if the Client has otherwise contravened good practice on the securities market. If the cancelled contract has already been registered in the Client's Custody Account, the Company will correct the registration and inform the Client in accordance with section 3.5.

In the event of one of the parties being declared bankrupt or if the Client should be subject to company reconstitution, according to the Act (1996:764) governing Company Reconstitution, all outstanding obligations on account of trading in financial instruments shall be set off as between the parties and a balance struck as at the date of such occurrence. Whatever is due by one of the parties after such final settlement becomes payable immediately.

## 4.7 Miscellaneous

**4.7.1** Erroneous entries in the custody & cash account, etc.

If the Company, in error, should record securities in the Client's Custody Account or erroneously deposit funds on the connected Cash Accounts, the Company has the right to reverse the wrong entry or deposit in question. If the Client should have accessed the erroneously entered securities or the funds

---

[3] For the user of the Finess(Wizer)-system the applicable interest rate on balances applies: "Interest on the credit balances is calculated from the day after deposit until and including the date of withdrawal".

[4] Interest is capitalised quarterly/half-yearly by the accrued interest for the quarter/half-year being added to the credit balance or to the amount owing on the account.

5

# ÅLANDSBANKEN

credited in error, the Client shall immediately return the securities or repay those funds received from the sale or from the deposit to the Company. If the Client neglects to do this, the Company has the right, where it concerns the Client's disposal of the securities, to buy in the securities in question and charge the Client's connected Cash Account with what it costs the Company to do so and, where it concerns the disposal of the funds, to debit the Client's Cash Account with the amount in question.

If the Company has taken corrective action, as above, the Company shall immediately notify the Client accordingly. The Client does not have the right to make any claims against the Company in connection with such a mistake.

The terms of the foregoing two paragraphs apply even when, in other circumstances, the Company has recorded securities in the Custody Account or deposited funds on the connected Cash Account that did not relate to the Client.

### 4.7.2 Refrainment from the undertaking, etc.

The Company reserves unto itself the right to refrain from any undertaking under these General Conditions, as it concerns a Swedish financial instrument registered with the VPC within five banking days and for any other Swedish security and a foreign financial instrument within fifteen banking days after receipt of the securities by the Company. For surrendering/transferring the security in question, what is stated in section 4.7.3. that defines surrender/transfer on termination shall apply.

### 4.7.3 Termination

The Company and the Client can each terminate the Custody & Cash Account Agreement, to have effect thirty banking days after notice of termination has been sent by registered letter to the other party. On termination of the Custody & Cash Account Agreement the parties shall immediately settle their obligations. The Custody & Cash Account Agreement shall apply, nevertheless, where relevant, until the parties have fulfilled all their obligations to their counter-party. Further, the Company and the Client can each terminate the undertakings according to these provisions as pertaining to certain securities, on the same conditions as mentioned herein.

Irrespective of the provisions of the previous paragraph, either party may terminate the Custody & Cash Account Agreement with immediate effect if there has been a substantial breach of the Agreement by the other party. In this context, each breach where restitution has been requested but has not been made as soon as possible shall be regarded as a substantial breach of the Agreement. The Company may also terminate the Custody & Cash Account Agreement with immediate effect where changes concerning the Client's fiscal domicile result in the Company being no longer able to fulfil its obligations to take measures concerning tax according to what is stated in section 3.7. or where the fulfilment of such obligations has been made much more difficult.

On termination of the Custody & Cash Account Agreement, the Company shall surrender/transfer over to the Client all the securities recorded in the Custody Account or - if the termination relates to a specific security - that security. The Client shall give instructions to the Company regarding the surrendering/transferring. In the absence of such instructions within sixty calendar days after the day on which notice was given of the termination of the Custody & Cash Account Agreement or if such surrendering/ transferring cannot be fulfilled in terms of the instructions given by the Client, the Company shall

- concerning securities in document form, if nothing prevents delivery on legal or agreed grounds, with due care and at the Client's expense deliver the securities to the address known to the Company,

- concerning financial instruments which are registered according to the Act (1998:1479) on Registering of Financial Instruments: on account of the Client open a VP-account or the equivalent with the central securities depository to which to transfer the financial instruments, and

- concerning securities other than the above mentioned as well as securities in document form if the consignment turns out to be undeliverable, in such manner as the Company deems appropriate, to sell or in any other form dispose of the securities, also if the securities are of no value to either destroy or de-register the same. From the purchase price received, the Company may reimburse itself for the measures taken and for the winding-up costs. Any surplus shall be paid to the Client, while any deficit shall be immediately reimbursed by the Client.

### 4.7.4 Limitation of undertaking and matters concerning other agreements

The Company is not obligated to carry out any measures other than those specified in these General Conditions unless some other specific written agreement has been made. In the event of any inconsistencies between such agreement and these General Conditions, such specific agreement shall prevail.

## 5. General terms and conditions for trading in financial instruments

### 5.1 Orders

Unless otherwise separately agreed, a request ("request") from the client regarding the execution of a trade (an "order") means an undertaking for the securities institution (the "Institution") to seek to enter into an agreement on behalf of the client concerning trading in financial instruments in accordance with the terms and conditions provided by the client. Unless otherwise separately agreed, Ålandsbanken shall not provide any guarantee that an order will result in trading. Unless otherwise agreed, Ålandsbanken shall execute orders in accordance with the

applicable market rules and good market practice. Ålandsbanken shall not be obliged to accept an order. Ålandsbanken shall be entitled to waive an order without providing reasons therefore where Ålandsbanken suspects that execution of the order would breach the provisions of legislation in force from time to time regarding insider dealing or market manipulation or otherwise contravene applicable market rules or, good market practice or where Ålandsbanken for any other reason finds that special reasons exist therefore. The client is aware that Ålandsbanken may record telephone calls in connection with the provision by the client to Ålandsbanken of orders or payment or delivery instructions.

### 5.2 Commission and acting as a Principal, etc.

Unless an agreement has been made to the contrary, the securities institution (the "Institution") may carry out the client's order either through an agreement with a third party on behalf of the client but in the name of Ålandsbanken, i.e. on commission, or by Ålandsbanken itself acting as buyer or seller (what is commonly referred to as acting as a principal, in Swedish called "självinträde"). In the latter case, the provisions concerning acting as a principal in the Commercial Agents Act (1914:45) shall apply.

When acting as a principal, it will be stated on the contract note that the order has been carried out with Ålandsbanken acting as a principal.

Where the order is executed on commission through an agreement with a third party on behalf of the client and a legal person in Ålandsbanken's group or another of Ålandsbanken's clients is a buyer or seller, the contract note shall state that the order is executed on an internal basis unless the order is executed through a trading system that facilitates anonymous trading.

### 5.3 Execution of orders in other ways

Where the client's order is executed through an agreement directly with the Institute in a manner other than that stated in the previous paragraph, the contract note shall state that the order is executed on own account unless the order is executed within through a trading system that facilitates anonymous trading

Where the client's order is executed through an agreement with a third party on behalf of the client and a legal person in Ålandsbanken's group or another of Ålandsbanken's clients is a buyer or seller, the contract note shall state that the order is executed on an internal basis unless the order is executed through a trading system that facilitates anonymous trading.

Where, at the special request of a client, Ålandsbanken prepared a contract note without having bought or sold the financial instruments on behalf of the client, this shall be stated on the contract note, for example, by stating that Ålandsbanken only assisted in the exchange of funds and financial instruments.

### 5.4 Policy regarding execution of orders

Upon the execution of orders for clients who are treated by Ålandsbanken generally or in special cases as retail or professional clients, Ålandsbanken's special policy regarding execution of orders and aggregation and allocation of orders ("Description of order execution") applicable from time to time shall apply.

### 5.5 Execution of so-called "execution-only" services

Upon the execution and/or transmission of orders at the initiative of the client (so-called execution-only services) concerning non-complex instruments set forth in Chapter 8, section 25 of the Securities Market Act (2007:528) Ålandsbanken will not regularly assess whether the actual services or the financial instrument are appropriate for the client.

### 5.6 Purchase Orders

In accordance with that which is set forth in the contract note, and unless otherwise agreed, the purchaser shall pay the total amount stated in the contract note in Swedish kronor to Ålandsbanken not later than 08.00. on the morning of the settlement date.

Where the order has been carried out in a currency other than Swedish kronor, the currency shall be specified in the contract note. The exchange rate applied by the Institution shall be stated in conjunction with currency exchange.

Unless otherwise required by law, regulations of public authorities, special rules for the financial instrument in question, or a separate agreement with the purchaser, the financial instruments to which the order relates shall be transferred to the purchaser:

- by Ålandsbanken undertaking the registration measures which are required in respect of instruments which shall be owner-registered at a central securities depository or the equivalent, or instruments which shall be recorded on a custody account with the institution;

- in relation to instruments which shall be recorded on a custody account or the equivalent with another custodian institution, by the purchaser instructing that institution concerning the receipt of the instruments to which the order relates and

- by surrender to the purchaser in respect of instruments which are issued in document form.

Unless otherwise required pursuant to separate terms and conditions for the purchase, the Institution shall be entitled, in order to satisfy its claim, to debit

ÅB april 2009

# ÅLANDSBANKEN

the account designated by the purchaser with the institution in respect of the total amount as set forth in the contract note.

If no such account has been designated or if funds are lacking on the designated account, any other account which the purchaser maintains with the institution may be debited. In addition, from the receipt of the order, the institution may reserve funds for such claim from an account maintained by the purchaser with the institution.

If the purchaser fails to fulfil his payment obligations to the institution, Ålandsbanken shall be entitled to charge interest on its claim until full payment has been made. Interest shall be calculated from the settlement date set out in the contract note, or from such later date on which the instruments became available to the purchaser, up to and including the date of actual payment. Interest shall be payable, for each week or part thereof during which the payment delay lasts, at an annual rate of interest which by eight percentage units exceeds the one week STIBOR rate (Stockholm Interbank Offered Rate), which is fixed two banking days before the first day of each such period. However, in respect of no day, shall interest be payable at a rate below the reference interest rate fixed by Sveriges Riksbank according to Section 9 of the Act on Interest Rates (1975:635) prevailing at any one time plus eight percentage units.

Ålandsbanken shall have a lien over the instruments purchased as collateral for its claim against the purchaser on account of the order. Ålandsbanken shall be entitled to undertake the necessary measures in order to obtain such a lien. If the purchaser fails to fulfil his payment obligation to Ålandsbanken, Ålandsbanken may in such manner, and at such time, as Ålandsbanken deems appropriate, sell the instrument concerned or undertake other dispositions in order to terminate the transaction. For such purpose, Ålandsbanken may sign on behalf of the purchaser and take any other measures as may be required in connection with the termination. Ålandsbanken shall be entitled to retain the proceeds from funds received which are necessary for payment of Ålandsbanken's claim together with interest thereon according to the above provisions together with compensation for Ålandsbanken's work and costs and, where applicable, for exchange rate losses.

Where, through such sale of other dispositions as aforesaid, the proceeds are insufficient to cover Ålandsbanken's total claim, the purchaser shall be liable for the difference together with interest thereon in accordance with the above. Ålandsbanken may also, in such case, debit an account that the purchaser has with Ålandsbanken in accordance with the procedure specified above.

Where, following a transaction, Ålandsbanken fails to fulfil its obligation to make the instruments available to the purchaser within a reasonable time, the purchaser shall be entitled to revoke the order and be released from his obligations in respect thereof.

That which is specified above shall in no way curtail the rights which Ålandsbanken may have according to law.

## 5.7 Sales Orders

Pursuant to the order, Ålandsbanken shall be afforded full rights of disposition in respect of the instruments to which the order relates.

Ålandsbanken shall be entitled to undertake the registration measures that are required where the instruments are owner-registered at a central securities depository or the equivalent, or recorded on a custody account with Ålandsbanken.

Unless otherwise agreed, in other cases the seller shall concurrently with placement of the order, undertake such measures as are required in order for Ålandsbanken to obtain an unrestricted right of disposition in respect of the instruments. In conjunction with the aforementioned:

- in respect of instruments recorded on a custody account or the equivalent with another custodian institution, the seller shall immediately instruct that institution to promptly transfer the instruments to which the order relates to Ålandsbanken; and

- in respect of instruments which are issued in document form, the seller shall surrender such documents to Ålandsbanken.

Where, either concurrently with the order or within any other time as may have been agreed, Ålandsbanken has not received full rights of disposition to the instruments, Ålandsbanken, in such manner as Ålandsbanken deems appropriate, fulfils the agreement towards the purchaser by making available to him other instruments of the same kind. The seller shall compensate Ålandsbanken for the costs connected therewith together with interest thereon calculated from the date when the costs occurred up to and including the date of actual payment. Interest shall be payable, for each week or part thereof during which the amount is outstanding, at an annual rate of interest which by eight percentage units exceeds the one-week STIBOR rate (Stockholm Interbank Offered Rate) fixed two banking days before the first day of each such period. However, in respect of no day, shall interest be payable at a rate below the reference interest rate fixed by Sveriges Riksbank according to Section 9 of the Act on Interest Rates (1975:635) prevailing at any one time plus eight percentage units. Furthermore, the seller shall compensate Ålandsbanken for Ålandsbanken's work and costs and, where applicable, for exchange rate losses. Ålandsbanken may debit such account with Ålandsbanken as may have been designated by the seller, in order to obtain payment of its claim on the seller. If no such account has been designated or if funds are lacking in the designated account, any other account which the seller has with Ålandsbanken may be debited.

In accordance with that which is set forth in the contract note and unless otherwise agreed, the seller shall receive the stated net amount from Ålandsbanken not later than 18:00 on the settlement date. Where the order has been carried out in a currency other than Swedish kronor, such currency shall be specified in the contract note. In conjunction with currency exchanges, the currency exchange rate applied by Ålandsbanken from time to time shall be stated. Where the seller has not, either concurrently with the placing of the order or at any other time as may have been agreed, undertaken the measures which are necessary in order for Ålandsbanken to obtain a full rights of disposition to the instruments to which the order relates, the seller shall obtain funds not earlier than the second banking day after the time that Ålandsbanken obtains access to the instruments, however, not earlier than the stated settlement date. Where the seller has undertaken the necessary measures later than 12.00 on a certain banking day, the measures may in certain cases be deemed to have occurred on the immediately following banking day.

In the event of a delay by the seller or where Ålandsbanken otherwise has reasonable grounds, Ålandsbanken shall be entitled to cancel the order and be released from its obligations in respect thereof.

Where the seller has undertaken the necessary measures in connection with the order but Ålandsbanken does not provide the funds pursuant to the order within a reasonable time following the transaction, the seller shall have the right to revoke the order and be released from his liabilities thereunder.

## 5.8 Foreign-related Transactions

Departures from the terms set out above regarding purchase and sales orders respectively may occur in connection with foreign-related transactions.

## 5.9 Annulment of Orders and Cancellation of Trades, etc.

Ålandsbanken shall be entitled to annul the client's orders or cancel trades executed on behalf of the client to the extent that the order is annulled or the trade is cancelled by the relevant securities exchange or execution venue. The aforesaid right shall apply in other cases where Ålandsbanken deems that annulment of an order or cancellation of a trade is required due to the fact that a manifest error has been committed by Ålandsbanken, a market counterparty, or the client itself, or where the client, in placing the order, has acted in violation of governing law or other regulations, or where the client has otherwise acted in violation of generally accepted practice on the securities market.

Where an order is annulled or a trade is cancelled, Ålandsbanken shall notify the client thereof without delay. Where, as a consequence of a suspension of trading, technical fault or suchlike, the execution venue has annulled all orders that are affected, Ålandsbanken shall inform the client only where Ålandsbanken does not place the order anew. Where orders are placed anew, such normally takes place subject to unchanged terms and conditions.

## 5.10 Complaints

Regarding Complaints and Rescission, see section 3.6 above.

## 6. Terms and conditions for Disposal Agreements

### 6.1 Introduction

A disposal agreement is entered into between and becomes binding via that the Client and Ålandsbanken, in connection with entering into a Custody & Cash Account Agreement, specifically state that a disposal agreement is entered into between the parties according to what is stated in greater detail in the Custody & Cash Account Agreement.

### 6.2 The Disposal Agreement

If the Client and Ålandsbanken have specifically stated that a disposal agreement will be entered into between the parties, an agreement is hereby entered into between the Client and Ålandsbanken about the right of Ålandsbanken to have at its disposal the financial instruments which belong to the Client.

In accordance with Chap. 3 of the Financial Instruments Trading Act (*lagen (1991:980) om handel med finansiella instrument*), the Client consents that Ålandsbanken is entitled in the following manner to use the financial instruments which the Client at any particular time has pledged to Ålandsbanken.

Ålandsbanken has the right to separate the pledged financial instruments from the obligation to which the pledge is collateral and in its turn pledge the financial instruments with a third party (re-pledge) or to assign the lien concerning these financial instruments to such third party. Such re-pledging or assignment may not be made for a higher amount or on more severe terms than what that applies with respect to pledge from the Client to Ålandsbanken.

## 7 Terms and Conditions for the Internet Agreement

### 7.1 Introduction

Based on the Internet Agreement, Ålandsbanken provides the Customer depository information and market prices along with analytical tools and information via electronic media (Internet and similar communication facilities). Unless a different written agreement is entered into, the Internet Agreement becomes binding when signed in connection with the Customer

ÅB april 2009

# ÅLANDSBANKEN

and Ålandsbanken entering into a depository/account agreement according to what is stated in greater detail in the depository/account agreement.

For the utilisation of the services which are provided according to the Internet Agreement, it is necessary for the Customer to be issued a username and a password, which Ålandsbanken sends to the Customer by post. The services according to the Internet Agreement will become available via the Customer entering the username and password when logging in at Ålandsbanken's website (www.alandsbanken.se). The Customer may choose to change passwords in accordance with the instructions which Ålandsbanken will provide. If the Customer enters the incorrect password five times in a row, Ålandsbanken is entitled to immediately suspend the username and thereby the Customer's access to the services provided according to the Internet Agreement. The Customer can then receive a new password, for the payment of a charge as described above. The hardware and other equipment which is required for the utilization of the services according to the Internet Agreement is not provided by Ålandsbanken.

## 7.2 Depository information, changes in the services

Ålandsbanken undertakes to provide the Customer with information via electronic media about all transactions which have occurred in the Customer's depository and account, as well as information about securities holdings, funds on deposit, the balances of any margin loans outstanding or other liabilities, the margin value of the securities held in the account, and the margin or performance bond requirements. In addition, Ålandsbanken provides current and historical market information and analytical materials.

Ålandsbanken has the right at any time to reduce, increase or to change the presentation of the information which Ålandsbanken provides the Customer via this service.

The information which the Customer receives by under of the Internet Agreement is for the exclusive use of the Customer only. The Customer promises not to transfer the information which the Customer has received electronically under the Internet Agreement to an unauthorised party. Some of the information providers which Ålandsbanken engages may require that the Customer must be informed about any special user terms and conditions concerning the information which such information provider provides the Customer via Ålandsbanken. These special terms and conditions are in available (where relevant) when logging in to Ålandsbanken's website (www.alandsbanken.se) and constitutes an integral part of the Internet Agreement.

## 7.3 Identification of the Customer

The username may only be used by the Customer, or if the Customer is a legal entity, by one or more individuals authorised by the Customer. The Customer undertakes to not to disclose the username to anyone else and to take proper care with any written notations of the username so as to not disclose its potential usage for access to the services which are provided according to the Internet Agreement. If the Customer is a legal entity, the Customer additionally undertakes to ensure that the authorised individuals comply with what has been stated above in this provision in its applicable parts.

The Customer must immediately notify Ålandsbanken if there is any suspicion that any unauthorised party has obtained knowledge of the username or that this been used without authorisation and/or if any of the parties (previously) authorised by the Customer are no longer entitled to use the Customer's username to access the services provided under the Internet Agreement. Ålandsbanken is entitled to block the Customer's the username for continued usage if Ålandsbanken has reasonable grounds to suspect that the Customer's username is being used without authorisation.

In the event of a notification as described above or notice of termination of the Internet Agreement on the part of the Customer, Ålandsbanken will immediate block the Customer's username from further usage. If the Customer so requests, the Customer can receive a new username for continued usage of the services after making a request according to the Internet Agreement. If the Customer receives a new username, the terms and conditions in the Internet Agreement apply to the Customer's usage of the new username.

## 7.4 Term and Termination of the Agreement

The Customer may cancel the Internet Agreement at any time with immediate effect. Ålandsbanken reserves the right to terminate the Internet Agreement with immediate effect if the Customer has committed a material breach of the agreement or if Ålandsbanken has reason to believe that the Customer will commit a material breach of the Internet Agreement. Ålandsbanken also reserves the right to terminate the Internet Agreement with immediate effect if the Customer's username is misused.

Ålandsbanken is entitled to terminate the Internet Agreement at anytime with the termination effective ten (10) calendar days after Ålandsbanken has sent the notification of termination to the Customer. If the Customer is a private consumer, the required notice period for termination will instead be thirty (30) calendar days. Upon the termination of the Internet Agreement, the parties will immediately settle all their obligations according to the Internet Agreement. The Internet agreement will continue however to be valid in its applicable parts until each party has fulfilled all of their obligations vis-à-vis the other party.

## 7.5 Modifications to the Internet Agreement

In addition to what is provided in point 3.3 in the General Provisions, the Internet Agreement will be applicable from when it is sent out and also that a statement of account will be made available on Ålandsbanken's website.

## 7.6 Liability

In addition to the limitations of Ålandsbanken's liability which is stated in point 3.10 of the General Provisions, the following also applies.

The Customer understands and agrees that the information which Ålandsbanken provides according to these terms and conditions about transactions does not give a full and complete picture of all actual facts, and that Ålandsbanken does not assume any liability for the correctness of the information. In addition, the Customer understands and agrees that the information provided according to these terms and conditions does not replace such accounting and other statements which Ålandsbanken provides according to the General Provisions.

The Customer additionally understands and agrees that the information which is provided by Ålandsbanken is obtained from sources deemed by Ålandsbanken to be reliable, but that Ålandsbanken does not assume any responsibility that the information is accurate or correct in all aspects.

Ålandsbanken assumes no liability for damages, unless it is can be shown that Ålandsbanken acted with gross negligence, which arises due to the information which is provided according to the Internet Agreement is incomplete, inadequate or incorrect. Ålandsbanken assumes no liability for damages, , unless it is can be shown that Ålandsbanken acted with gross negligence, which may have arisen due to that the Customer's username and personal password have been improperly used. Ålandsbanken assumes no liability for damages, unless it is can be shown that Ålandsbanken acted with gross negligence, which arises due to electrical, telephone, or computer malfunctioning or other similar situations, such as for instance a computer virus. Nor does Ålandsbanken assume any liability for damages, restrictions or limitations in the Customer 's possibility to use the services according to the Internet Agreement which are partly or entirely related to the Customer's equipment for electronic communication, or to the Customer's administration of such equipment, unless it is can be shown that Ålandsbanken acted with gross negligence. Ålandsbanken assumes no responsibility for damages which arise due to problems relating to the use of the username which Ålandsbanken has provided the Customer according to the Internet Agreement for access to the services, unless it is can be shown that Ålandsbanken acted with gross negligence.

The Customer is liable to Ålandsbanken for any damages which have arisen due to that the Customer has not fulfilled their obligations according to the Internet Agreement. In addition, the Customer is also liable to Ålandsbanken for damages which have arisen due improper usage of the Customer's username and personal password, if the Customer has acted with gross negligence.

## 7.7 Relationship to other agreements

In addition to what is stated in the Internet Agreement, the depository/account agreement and the General Provisions will govern the relationship between the parties.

If the Customer's depository/account agreement with Ålandsbanken is terminated, or otherwise ceases to be valid, the Internet Agreement will cease to be valid concurrently with the depository/account agreement no longer being applicable.

ÅB april 2009

# ÅLANDSBANKEN

Description of order execution

**1. Best Execution**

When Ålandsbanken Sverige AB (publ) (hereafter the "Bank") carries out customer orders regarding financial instruments, the Bank does its best for it to be done according to the "best execution". To achieve the best possible execution results for an order, with observance of the order's nature and markets concerned, the Bank has a policy and follows tried procedures.

Upon execution the Bank takes many different factors into account, which not only include the price, but also factors such as transaction costs (for example costs for execution and costs for liquidation that has been transferred to the client), point in time, liquidity on the relevant market, order size and the financial transaction's nature. The nature of the transaction includes e.g. if the transaction is executed on a regulated market or OTC.

To be able to offer the best possible execution, the Bank decides at its own discretion, which factors can affect the transaction, and in what way.

The Bank pledges to execute orders on the behalf of customers in the best possible manner. The Bank considers that it has received an order and takes action for the customer when it has received an execution instruction that gives rise to a contractual or representative obligation on the part of the Bank towards the customer. These obligations arise as a result of the customer relying on the Bank safeguarding the customer's interests with regards to price and other transaction elements that can be influenced by the choices the Bank makes when it carries out an order.

There are times when the Bank does not carry out a customer order in the usual manner. This may for example be the case if the Bank has submitted an offer and the customer either accepts it or the Bank confirms the price to the customer and the customer accepts. Moreover, in certain special cases the Bank may agree with the customer on special terms and after the transaction confirm to the customer that the results agree with the terms.

The Bank's policy is to apply the same standard and use the same processes on all markets and for all financial instruments in which the Bank executes customer orders to the furthest possible extent. The markets, instruments and the types of orders that the customer can place with the Bank vary however, which means that many different factors must be taken into account when the Bank makes decisions regarding execution policy. There is for instance no formalised market or any formalised settlement procedure for OTC transactions. On certain markets price volatility means that the point in time for execution is the most important, while the best execution on other markets with low liquidity is simply that the order is carried out. In some cases the Bank's possibilities can be limited (there may only be one platform/market on which the Bank can carry out the order).

The Bank believes that financial instruments that are traded on one or more regulated markets or another place of trade should normally be traded at the best price on the market where the financial instrument's liquidity is the best. Therefore, when the Bank chooses between different possibilities, it will, considering the above, most often choose the most liquid alternative – of the markets on which the Bank trades – either to execute the order or determine a reference price (or the like) when the order is carried out outside of the technical system.

If the Bank is given specific instructions regarding a whole or parts of an order, e.g. to choose a specific trading place, the Bank will execute the order in accordance with the instructions. It should however be mentioned that specific instructions can prevent the Bank from applying its order execution policy which is designed according to "best execution". When the Bank follows the customer's instructions, it is considered to have undertaken reasonable measures to provide the best possible results with regard to the order or part of the order covered by the specific instructions.

**2. Execution of orders regarding financial instruments that are primarily trades on external markets**

This section applies to transactions in financial instruments that are traded with reasonable liquidity on a regulated market, Multilateral Trading Facility (MTF), or another organised place of trade. The section covers e.g.:

- Shares trade on a regulated market or MTF (e.g. shares traded on the OMX list).

- Derivatives traded on a regulated market or MTF (e.g. options, forward agreements listed on EUREX, OMX, LIFFE or CBOT) and

- mutual fund units traded on a regulated market or MTF.

- The Bank will normally handle customers' orders regarding such financial instruments by:

- Immediately sending an order for execution to the market considered to provide the best execution in accordance with section 1 above.

- Aggregating the order with other orders (either other customers' orders or own transactions) in accordance with section 7 below and thereafter sending the aggregated orders for execution to the market considered to provide the best execution in accordance with section 1 above.

- Executing the order through several separate transactions on the market.

- Executing the order either against the Bank's own inventory or directly against another customer's order. In such a case, the execution is normally expected to take place at a price that reflects current market conditions.

**3. Execution of orders regarding financial instruments that are not regularly traded on external markets**

This section applies to transactions in financial instruments that are normally traded directly with a counterparty (OTC), e.g.:

- Bonds, treasury bills, and other money market instruments.

- OTC derivatives and other instruments created by us or another institution/another counterparty.

- Structured products.

In these cases, the Bank usually submits an offer to the customer and enters transactions against the Bank's own inventory. The price takes into account the current market price for the underlying asset (where appropriate) and the cost for the Bank's business model.

**4. Execution of orders regarding fund units in investment funds that are not traded on a regulated market or MTF**

The Bank will carry out orders regarding fund units in investment funds that are redeemed or are issued at Net Asset Value (NAV) through a transfer to the fund manager (or equivalent) that is responsible for the administration of the fund in question.

**5. Summary of order execution policy**

Below the Bank has compiled information regarding execution factors that the Bank takes into account when it selects which markets it will carry out customer orders on. The Bank has also identified the types of market places it will most often use and which the bank believes offers the best prospects of best execution.

If the Bank has not received instructions from the customer, it takes the following execution factors into account in the aim of determining how the order shall be executed:

- Price,

- Costs,

- Speed,

- Likelihood of execution or settlement,

- Order size,

- Order type,

- Other potential considerations that can be relevant to effective execution of the order.

If there are no special reasons to the contrary, the total compensation which can reasonably be achieved in a transaction determines where execution shall take place. In some cases the Bank may however consider other factors to be more important, e.g. if due to its size or nature the Banks believes an order can have a significant impact on the price or the likelihood of execution or settlement. Under certain circumstances and for certain products, costs, speed and liquidity can also determine how the customer's order is executed.

The Bank will determine the relative weight of each respective factor with the help of the following criteria:

- The customer's characteristics (including customer categorisation),

- The order's characteristics and nature, and if specific instructions have been provided,

- The characteristics of the financial instruments included in the order,

- The characteristics of the site of execution to which the order is sent (including the market's ability to handle complex orders, their credit worthiness and the quality of potentially related clearing and settlement facilities).

For all products on which the Bank carries out customer orders, in its order policy the Bank has selected such markets that make it possible for the Bank to continuously achieve the best possible execution results. In the aim of fulfilling its obligation to undertake all necessary measures to continuously achieve the best possible execution results, the Bank may use one or more of the following markets when it executes an order for a customer:

- Regulated markets.

- Multilateral Trading Facilities (MTF).

- Systematic internal traders.

- The Bank's own inventory.

- Third parties and/or branches that function as a market maker or another supplier of liquidity.

- Units outside of the EU that carry out similar functions.

9

ÅB april 2009

# ÅLANDSBANKEN

The Bank will determine which markets on this list are most likely to provide the customer the best results on a product basis.  For some financial instruments, there may only be one site of execution and upon execution of trade under such circumstances the Bank presupposes that it has provided the best results with respect to these types of financial instruments.

Orders may be carried out outside a regulated market or MTF if the Bank believes doing so will provide the best possible results.

### 6. Receipt and forwarding of orders or order placement

Unless the Bank has received specific instructions, it has an obligation to undertake all reasonable steps to achieve the best possible results for the customer (i) when the Bank transfers orders from a customer or another trader/the Bank's branch for execution or (ii) places an order at other units for execution as a result of the Bank's decision to trade in financial instruments for the customer. The Bank will therefore either determine a final market for the order on the basis of its order execution policy as per the above and thereafter provide                                                                    specific instructions to the other trader/branch office, or itself verify that the other trader/branch office has what is required for the Bank to be able to fulfil its obligation towards the customer. In those cases the Bank transfers or places orders with other brokers/branch offices, the Bank monitors their execution standard.

### 7. Aggregation and allocation of orders

The Bank will carry out the customers' orders quickly, effectively and accurately. Comparable customer orders will be carried out immediately and in the time order in which they were received unless this is made impossible by the order's characteristics or current market conditions, or if anything else is required due to the customer's interests. The Bank may combine the order with other customer orders or its own transactions. Aggregation of orders can be detrimental with regard to a single order. The Bank will only aggregate orders if it is unlikely that the aggregation may be generally detrimental to an individual customer whose orders are included.

An aggregated order that is carried out in its entirety will be allocated at the average price. If an aggregated order can only be partially executed, that part that can be executed will be proportionally allocated at the average price and in accordance with the Bank's internal instructions. If upon execution a customer order has been aggregated with an order on the part of the Bank and it can only be partially executed, the customer normally has precedence ahead of the Bank upon allocation.

### 8. The effects of market disruptions, system errors etc.

Upon disruptions in the market or in the Bank's own systems, due e.g. to outages or insufficient availability in technical systems, it may in the judgement of the Bank be impossible or inappropriate to carry out orders in any of the ways stated in this policy. The Bank will then undertake all reasonable steps to achieve the best possible results for the customer in another way.

### 9. Oversight and audit

The Bank monitors the effectiveness of its execution procedures and execution policy to be able to identify and, if necessary, correct potential deficiencies. The Bank regularly assesses if the markets included in the order execution policy provide the best possible results for its customers or if the Bank must make changes to its procedures. The Bank revises its order execution procedures and order execution policy regularly and at least once annually or when a substantial change occurs that affects its ability to continue to continuously obtain the best possible results for the execution of customer orders on the markets included in its order execution policy. The Bank will inform the customers of potential substantial changes in its order execution procedures or order execution policy as per above. Changes of this document will be made available on the Bank's Homepage. Changes will enter into effect from the date they were published on the Homepage.

### Appendix 1: List over markets for Ålandsbanken Sverige AB (publ)

Ålandsbanken Sverige AB (publ) primarily carries out customers' orders in share-related financial instruments on the following markets, but may also execute orders through/against counter-parties or against the Bank's own inventory.

- NasdaqOMX                         Stockholm                         AB

- NasdaqOMX Stockholm (Stockholmsbörsen)

- First North

- NGM

- NGM Equity

- Nordic MTF
  Burgundy
  Aktietorget

For stock markets outside of Sweden, external counter-parties or other units within the Ålandsbanken Group are used.

Trade in other financial instruments – such as bonds, OTC derivatives and structured products – is primarily offered through transactions against the Bank's own inventory, but on occasion also through order execution against the Nordic Exchange's SOX market.

ÅB april 2009

**SCHEDULE 3**

**ÅLANDSBANKEN**

Stockholm, September 29, 2009

# Important information to you who have bought notes issued by Lehman Brothers Europe which are held on your custody account at Ålandsbanken

*The information below is sent out by Ålandsbanken as custodian to you who have bought notes (the "Notes") issued by the Dutch company Lehman Brothers Treasury Co. B.V. ("Treasury") such Notes being guaranteed by Lehman Brothers Holdings Inc. ("Holdings"). The information sent out by Ålandsbanken does not purport to be any legal or financial advice.*

## Filing of claims in Holdings' and Treasury's bankruptcies, respectively

Ålandsbanken in its role as custodian will, itself or trough a third party, see to that your claims will be filed in Holdings' and Treasury's bankruptcies respectively, regarding your Notes that are kept on your custody account at Ålandsbanken. No actions are required from you for Ålandsbanken to take actions on your behalf regarding the filing of claims. We will inform you during the filing process.

If you do not wish that Ålandsbanken takes any actions on your behalf, we ask you to send us a written notice thereof, to be received by us no later than 6 October 2009. If Ålandsbanken receives such notice, Ålandsbanken will not take any actions regarding the lodging of your claims regarding the Notes.

Both Treasury and Holdings are subject to insolvency proceedings and therefore the value of the Obligations is very uncertain.

## Why do I receive this letter?

This letter is sent to you who have bought Notes issued by Treasury, which are held in a custody account at Ålandsbanken.

## How can I get more information?

Should you have any questions regarding the above, please contact Ålandsbanken Sweden Middle Office at +46 8 791 48 20 or by e-mail: middleofficestruct@alandsbanken.se.

Should you not wish Ålandsbanken to lodge claims on your behalf in each bankruptcy, such notice is to be sent to Ålandsbanken Sverige AB, AMMO, S-107 81 STOCKHOLM, SWEDEN and be at Ålandsbanken's disposal no later than 6 October 2009.

Further information regarding Treasury and Holdings can be found on the following websites:

http://www.lehmanbrothersestate.com
(information on Holdings' insolvency proceedings)

http://www.houthoff.com
(information on Treasury's insolvency proceedings)

Certain general information can be found in Swedish on Ålandsbankens homepage:
http://www.alandsbanken.se/info/content/sv/service/strukturerade-produkter/info-lehman/

Yours sincerely,

ÅLANDSBANKEN SVERIGE AB (publ)

**<u>EXHIBIT B</u>**

06/08/2005   16:41   LEHMAN → 9164675826   NO.504   P01

# UNANIMOUS WRITTEN CONSENT OF THE

# EXECUTIVE COMMITTEE OF THE

# BOARD OF DIRECTORS OF

# LEHMAN BROTHERS HOLDINGS INC.

The undersigned, being both members of the Executive Committee of the Board of Directors of Lehman Brothers Holdings Inc., a Delaware corporation (the "Corporation"), do hereby adopt the following resolutions by unanimous written consent in lieu of a meeting in accordance with Section 141(f) of the General Corporation Law of the State of Delaware:

**WHEREAS,** the Corporation has previously authorized by specific resolution, which authority has not been revoked (the "Outstanding Guarantee Resolutions"), the guarantee of all or specified obligations and liabilities of certain direct and indirect subsidiaries of the Corporation, each of which is a "Guaranteed Subsidiary" as such term is used in the Corporation's Code of Authorities as currently in effect (the "Code"),

**WHEREAS,** certain of the Guaranteed Subsidiaries presently enjoy full guarantees while others have only partial guarantees, and the Corporation now wishes to expand such partial guarantees to full guarantees,

**WHEREAS,** due to the passage of time the names of certain of the Guaranteed Subsidiaries have changed, rendering the Outstanding Guarantee Resolutions out of date to that extent,

**WHEREAS,** the Corporation wishes to clarify that its guarantee of any Guaranteed Subsidiary with respect to any given transaction is not contingent upon the issuance of a signed guarantee pertaining to such transaction,

**WHEREAS,** Management wishes to establish additional Guaranteed Subsidiaries,

**WHEREAS,** Management wishes to specify that to the extent lawful and allowable, guarantees issued by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, so as to secure certain tax and accounting benefits, and

**WHEREAS,** Management believes that it would facilitate the conduct of the business of the Corporation to supersede and replace the various Outstanding Guarantee Resolutions in their entirety with this single document,

**NOW THEREFORE BE IT,**

06.06.2005    09:11    LEHMAN - 912023380294      NO.290  004
    26/06/2005    16:41    LEHMAN + 912020302034      NO.504  002

**RESOLVED**, that the Corporation hereby fully guarantees the payment of all liabilities, obligations and commitments of the subsidiaries set forth on Schedule A hereto, each of which shall be a Guaranteed Subsidiary for purposes of the Code;

**RESOLVED**, that the Outstanding Guarantee Resolutions are hereby superseded and replaced in their entirety with this single document, provided that any guarantees provided pursuant to the Outstanding Guarantee Resolutions and outstanding on the date hereof, whether in the form of a separately executed individual guarantee or otherwise, shall remain issued, outstanding and valid for all purposes;

**RESOLVED**, that guarantees provided by the Corporation concerning certain of the Guaranteed Subsidiaries should originate with the branch of the Corporation located in London, England, to the extent lawful and allowable, as specified on Schedule A hereto;

**RESOLVED**, that each of the persons listed in the Code (as it may be amended from time to time) as being authorized to approve individual guarantees issued by the Corporation with respect to Guaranteed Subsidiaries, or any proper delegee thereof (collectively, "Authorized Persons"), are hereby authorized, in the name and on behalf of the Corporation, to execute such guarantees in such form as is approved by an attorney of the Corporation and such Authorized Person, subject to any limitations specified herein, his or her execution of each such guarantee to be conclusive evidence of approval thereof; and to do such other acts and things as may be advisable or necessary in order to effect the purposes and intent of these resolutions; and

**FURTHER RESOLVED**, that any and all actions contemplated by the foregoing resolutions and taken by such Authorized Persons prior to the date hereof are hereby ratified, confirmed and approved in all respects.

Dated: June 9, 2005

Richard S. Fuld, Jr.

John D. Macomber

2

06/08/2005   15:41   LEHMAN → 9164675826   NO.504   P03

**Schedule A**
**to LBHI Unanimous Written Consent**
**dated June 9 , 2005**

| | Name of Subsidiary | Issue Corporation guarantee from branch located in London, England, to the extent lawful and allowable? |
|---|---|---|
| 1. | Lehman Brothers Asia Holdings Limited | No |
| 2. | Lehman Brothers Bankhaus A.G. | Yes (London branch of such subsidiary only) |
| 3. | Lehman Brothers Commercial Bank | No |
| 4. | Lehman Brothers Commercial Corporation | No |
| 5. | Lehman Brothers Commercial Corporation Asia Limited | No |
| 6. | Lehman Brothers Equity Finance (Cayman) Limited | No |
| 7. | Lehman Brothers Finance S.A. | No |
| 8. | Lehman Brothers Holdings Plc | Yes |
| 9. | Lehman Brothers International (Europe) | Yes |
| 10. | Lehman Brothers Japan Inc. | No |
| 11. | Lehman Brothers (Luxembourg) Equity Finance S.A. | No |
| 12. | Lehman Brothers (Luxembourg) S.A. | No |
| 13. | Lehman Brothers OTC Derivatives Inc. | No |
| 14. | Lehman Brothers Securities Asia Limited | No |
| 15. | Lehman Brothers Securities N.V. | No |
| 16. | Lehman Brothers Special Financing Inc. | No |
| 17. | Lehman Brothers Treasury Co. B.V. | No |
| 18. | Lehman Re Limited | No |

**<u>EXHIBIT C</u>**

**C L I F F O R D**

**C H A N C E**

CLIFFORD CHANCE LLP

EXECUTION COPY

LEHMAN BROTHERS HOLDINGS INC.
LEHMAN BROTHERS TREASURY CO. B.V.
LEHMAN BROTHERS BANKHAUS AG

**U.S.$100,000,000,000**
**EURO MEDIUM-TERM NOTE PROGRAM**

*Unconditionally and irrevocably guaranteed, as to Notes to be issued by*
*Lehman Brothers Treasury Co. B.V. and Lehman Brothers Bankhaus AG, by*

**LEHMAN BROTHERS HOLDINGS INC.**

---

**GUARANTEE AGREEMENT**

*in respect of*

**LEHMAN BROTHERS TREASURY CO. B.V.**

---

24 July 2008

# CONTENTS

**Clause**                                                                                          **Page**

1.   Definitions................................................................................................................2

2.   Guarantee................................................................................................................3

3.   Status.....................................................................................................................4

4.   Continuing Guarantee.............................................................................................5

5.   Reinstatement.........................................................................................................5

6.   Immediate Recourse...............................................................................................5

7.   Covenants...............................................................................................................5

8.   Deposit Of Guarantee.............................................................................................5

9.   Stamp Duties..........................................................................................................5

10.  Partial Invalidity.....................................................................................................6

11.  Notices...................................................................................................................6

12.  Governing Law.......................................................................................................6

**THIS GUARANTEE AGREEMENT** is made as of 24 July 2008

**BY**

(1)    **LEHMAN BROTHERS HOLDINGS INC.** (the "**Guarantor**")

**IN FAVOUR OF**

(2)    **HOLDERS** (as defined below); and

(3)    **THE ACCOUNTHOLDERS** (as defined below);

**WHEREAS**

(A)    **LEHMAN BROTHERS HOLDINGS INC., LEHMAN BROTHERS TREASURY CO. B.V.** and **LEHMAN BROTHERS BANKHAUS AG** (each an "**Issuer**" and together the "**Issuers**") have established a Program (the "**Program**") for the issuance of medium-term notes (the "**Notes**"). In connection with the Program the Issuers have entered into an Amended and Restated Fiscal Agency Agreement dated 24 July 2008 (as supplemented and amended from time to time, the "**Fiscal Agency Agreement**") with the Bank of New York Mellon, acting through its London Branch, as Fiscal Agent, the Bank of New York Mellon, acting through its New York Branch, as Registrar and the other parties referred to therein. Notes in bearer form may be represented initially by (in the case of Issuers other than Lehman Brothers Holdings Inc.) a permanent global Note (the "**Permanent Global Note**") or by a temporary global Note (the "**Temporary Global Note**") exchangeable in accordance with its terms for a Permanent Global Note or, as the case may be, definitive notes in bearer form ("**Definitive Notes**") and/or registered Notes ("**Registered Notes**") represented by definitive Notes in registered form ("**Definitive Registered Notes**"), global Notes in registered form ("**Global Registered Notes**") or Notes in registered uncertified form. Permanent Global Notes are, in accordance with their respective terms, exchangeable for Definitive Notes. Registered Notes may be represented initially by Definitive Registered Notes and/or Global Registered Notes. Global Registered Notes, are themselves exchangeable, in accordance with their terms, for Definitive Registered Notes. References herein to "**Global Notes**" shall be to Permanent Global Notes, Temporary Global Notes and Global Registered Notes. A Global Note will be delivered to a depositary or a common depositary or a common safekeeper or a custodian, as the case may be, for any one or more of the Clearing Systems (as defined below) for credit to such securities clearing (or any other) account or accounts with any Clearing System as may be determined by the terms and conditions and operating procedures or management regulations of the relevant Clearing System with its respective participants and/or accountholders. Notes denominated in Australian dollars may be issued in the domestic Australian capital markets ("**Australian Domestic Notes**") and Notes denominated in New Zealand dollars that may be cleared through the Austraclear New Zealand System ("**New Zealand Domestic Notes**") may be issued by Lehman Brothers Treasury Co. B.V. ("**LBTCBV**"), in each case pursuant to a deed poll to be executed by LBTCBV (the "**Deed Poll**"), and such Australian Domestic Notes and New Zealand Domestic Notes will be issued in registered, uncertificated and dematerialised book-entry form and take the form of entries on a register to be

maintained by an Australian or New Zealand registrar, as applicable, to be appointed by LBTCBV.

(B)    The Guarantor has agreed to guarantee irrevocably the payment of principal and interest together with all other sums payable by LBTCBV under the Notes issued by LBTCBV (the **"Guaranteed Issuer"**) and to guarantee irrevocably the performance by the Guaranteed Issuer of its obligations under the Deed of Covenant, dated 24 July 2008, by the Guaranteed Issuer in favour of the parties identified therein (as supplemented, amended or replaced from time to time, the **"Deed of Covenant"**) and the performance by the Guaranteed Issuer of its obligations under the Deed Poll.

## NOW THIS GUARANTEE WITNESSES as follows:

1.    **DEFINITIONS**

1.1    In this Guarantee the following words and expressions shall have the following meanings:

"**Accountholder**" shall bear the meaning ascribed thereto in the Deed of Covenant in respect of Guaranteed Notes;

"**Clearing System**" means each of Euroclear, Clearstream, Luxembourg, DTC and any other clearing system specified in the relevant Final Terms;

"**Conditions**" means the terms and conditions of the relevant Notes, as the same may be modified or supplemented in accordance with the terms thereof, and any reference to a numbered "**Condition**" is to the correspondingly numbered provision thereof;

"**DTC**" means The Depositary Trust Company;

"**Guaranteed Note**" shall mean a Note issued by the Guaranteed Issuer (including an Australian Domestic Note and a New Zealand Domestic Note) and shall include any related Coupon, Talon or Receipt;

"**Holder**" shall bear the meaning ascribed thereto in the Conditions, in respect of any Guaranteed Note;

"**Relevant Date**" means either (i) the date on which payment of the relevant Note first becomes due or (ii) if the full amount of the moneys payable has not been received by the Fiscal Agent (or any other paying agent in respect of the relevant Note) on or prior to such due date, the date on which all moneys then due for payment shall have been so received and notice to that effect shall have been duly given to the Holders or Accountholders; and

"**this Guarantee**" shall mean this Guarantee Agreement as amended or supplemented from time to time.

1.2    Headings used in this Guarantee are for each of reference only and shall not affect its construction.

1.3    Unless otherwise defined herein, terms defined in the Conditions have the same respective meanings when used in this Guarantee.

2.   **GUARANTEE**

2.1   The Guarantor hereby irrevocably and unconditionally guarantees to the Holders and the Accountholders the performance by the Guaranteed Issuer of all its obligations pursuant to the Conditions of the Notes including without limitation:

    (a)    the due and punctual payment of each amount payable in respect of any Guaranteed Note, the Deed of Covenant and the Deed Poll as and when the same become due and payable; and

    (b)    any obligation to deliver or procure the delivery of any securities pursuant to such Conditions,

so that the Guarantor shall, if the Guaranteed Issuer shall fail punctually to perform any such obligation forthwith perform or procure the performance of the obligation in accordance with the applicable Conditions upon written demand by such Holder or Accountholder including (without limitation) the due and punctual payment of any such amount in the manner and currency prescribed by such Guaranteed Note which the Guaranteed Issuer shall be liable to pay under and pursuant to such Guaranteed Note, the Deed of Covenant or the Deed Poll or the delivery of any securities pursuant to such Conditions and which the Guaranteed Issuer shall have failed to pay or deliver (as the case may be) at the time such demand is made.

2.2   This Guarantee is one of payment and not collection. The Guarantor acknowledges that its obligations hereunder are several and independent obligations of the Guaranteed Issuer and that the Guarantor shall be liable as sole principal debtor, with the consequence that such liability will not be discharged, impaired or otherwise affected by anything which would not so discharge, impair or otherwise affect its liability if it were a sole principal debtor, including without limitation:

    (a)    any time, indulgence, waiver or consent at any time given to the Guaranteed Issuer or any other person;

    (b)    any amendment to the Conditions in respect of the Guaranteed Notes, the Deed of Covenant or the Deed Poll or to any security or other guarantee or indemnity;

    (c)    the making or absence of any demand on the Guaranteed Issuer or any other person;

    (d)    the enforcement or absence of enforcement of any Guaranteed Notes, the Deed of Covenant or the Deed Poll or of any security or other guarantee or indemnity;

    (e)    the release of any such security, guarantee or indemnity;

    (f)    the dissolution, amalgamation, reconstruction or reorganisation of the Guaranteed Issuer or any other person;

    (g)    the winding up of the Guaranteed Issuer or the bringing of any analogous proceeding in any jurisdiction or any change in its status, function, control or ownership; and

(h)    the illegality, invalidity, irregularity or unenforceability of, or any defect in, any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll or any of the Guaranteed Issuer's obligations in respect thereof.

2.3    As a separate and alternative stipulation, the Guarantor irrevocably agrees that any sum expressed to be payable by the Guaranteed Issuer under any Guaranteed Note, the Deed of Covenant or the Deed Poll which is for any reason (including, without limitation, by reason of any provision of any Guaranteed Note, the Deed of Covenant or the Deed Poll being or becoming void, unenforceable or otherwise invalid under any applicable law) (whether or not now known or becoming known to the Guaranteed Issuer, the Guarantor, the Holder(s), the Accountholder(s) or any other person) not recoverable from it on the basis of a guarantee, will nevertheless be recoverable from it as if it were the sole principal debtor and will be paid by it to the Holder(s) or the Accountholder(s) on written demand.  This indemnity constitutes a separate and independent obligation from the other obligations in this Guarantee, gives rise to a separate and independent cause of action and will apply irrespective of any indulgence granted by the Holder(s), the Accountholder(s) or any other person.

3.    **STATUS**

3.1    The claims of the Holders and Accountholders against the Guarantor in respect of senior Guaranteed Notes will constitute direct, unconditional and (subject to the provisions of Condition 11 (*Negative Pledge with respect to Senior Notes*) and the provisions of the Fiscal Agency Agreement) unsecured obligations of the Guarantor and rank *pari passu* in right of payment among the Guarantor, prior to the equity securities of the Guarantor and equally with all other unsecured and unsubordinated debt obligations of the Guarantor (subject, in the event of insolvency, to laws affecting creditors' rights generally).

3.2    The claims of the Holders and the Accountholders against the Guarantor in respect of subordinated Guaranteed Notes constitute direct, unsecured and subordinated obligations of the Guarantor and rank *pari passu* among themselves and *pari passu* will all other present and future unsecured, unconditional and subordinated indebtedness of the Guarantor and will be subordinated, in the event of the winding-up of the Guarantor, to the claims of its Senior Creditors.  Amounts payable under the Guarantee shall be due and payable by the Guarantor in such winding-up only if and to the extent that all claims against the Guarantor by its Senior Creditors have been paid in full.

3.3    Subject to applicable law, no Holder or Accountholder may be granted any security by the Guarantor or any third party or claim any right of set-off in respect of any amount owed to it by the Guarantor under this Guarantee in connection with subordinated Guaranteed Notes and each Holder or relevant Accountholder shall be deemed to have waived all such rights.

3.4    Subsequent agreements which limit the subordination effected pursuant to Clause 3.2 or which accelerate payments under this Guarantee in respect of subordinated Guaranteed Notes are not permitted by law.  Should payments be effected in respect of subordinated Guaranteed Notes by the Guarantor before the maturity date without legal preconditions

being fulfilled, the amount paid shall be refunded to the Guarantor notwithstanding any agreement to the contrary.

4.    **CONTINUING GUARANTEE**

This Guarantee is a continuing guarantee and shall extend to the ultimate balance of all the obligations of the Guaranteed Issuer under any Guaranteed Note notwithstanding any settlement of account or other matter or thing whatsoever.  It shall remain in full force and effect until all such obligations have been irrevocably paid and satisfied in full. Furthermore, such obligations are additional to, and not in substitution for, any security or other guarantee or indemnity at any time existing in favour of any person.

5.    **REINSTATEMENT**

If any payment received by a Holder or Accountholder shall, on the subsequent bankruptcy, insolvency, corporate reorganisation or other similar event of the Guaranteed Issuer, be avoided or set aside under any laws relating to such events, such payment shall not be considered as discharging or diminishing the liability of the Guarantor and this Guarantee shall continue to apply as if such payment had at all times remained owing by the Guaranteed Issuer, provided that the obligations of the Guaranteed Issuer and/or the Guarantor under this Clause 5 shall, as regards each payment made to the Holder or Accountholder which is avoided or set aside, be contingent upon such payment being reimbursed to the Guaranteed Issuer or other persons entitled through the Guaranteed Issuer.

6.    **IMMEDIATE RECOURSE**

The Guarantor waives any right it may have of first requiring a Holder or Accountholder to proceed against or enforce any other rights or security against the Guaranteed Issuer or any other person before claiming from the Guarantor hereunder.

7.    **COVENANTS**

The Guarantor covenants in favour of the Holders and the Accountholders that it will duly perform and comply with the obligations expressed to be undertaken by it in the Conditions.

8.    **DEPOSIT OF GUARANTEE**

This Guarantee shall be deposited with and held by the Fiscal Agent until all obligations of the Guaranteed Issuer and/or in respect of the Guaranteed Notes have been discharged in full.  The Guarantor hereby acknowledges the right of every Holder and Accountholder to the production of this Guarantee.

9.    **STAMP DUTIES**

The Guarantor shall pay all stamp, registration and other taxes and duties (including any interest and penalties thereon or in connection therewith) which may be payable upon or in connection with the execution and delivery of this Guarantee, and shall indemnify each Holder and Accountholder against any claim, demand, action, liability, damages, cost, loss or expense (including, without limitation, reasonably legal fees and any

applicable value added tax) which it incurs as a result of or arising out of or in relation to any failure of the Guarantor to pay or delay in paying any of the same.

10. **PARTIAL INVALIDITY**

If at any time any provisions hereof is or becomes illegal, invalid or unenforceable in any respect under the laws of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions hereof nor the legality, validity or enforceability of such provision under the laws of any other jurisdiction shall in any way be affected or impaired thereby.

11. **NOTICES**

All notices, demands or other communications by any Holder or Accountholder upon the Guarantor shall be duly served upon the Guarantor if served on the Guarantor by letter at 745 Seventh Avenue, New York, New York 10019.

12. **GOVERNING LAW**

This Guarantee shall be governed by, and construed in accordance with, the law of the State of New York.

**IN WITNESS** whereof the Guarantor has executed this Guarantee the day and year first above written.


**EXECUTED**                                          )
by **LEHMAN BROTHERS HOLDINGS INC.**    )
acting by                                              )
                                                        PAOLO TONUCCI

POWER OF ATTORNEY

Ålandsbanken Sverige AB (publ,) a company organized under the laws of Sweden with
organizational number 593200-1745 (the "**Principal**") hereby empowers Magnus Johansson,
or anyone appointed by Magnus Johansson, to sign and execute proof of claim to be filed with
the United States Bankruptcy Court Southern District Of New York in the matter: In re:
LEHMAN BROTHERS HOLDINGS INC., et al., Chapter 11 Case No.: 08-13555 (JMP)
(Jointly Administered) on behalf of certain of the Principal's customers, to execute and file all
other documents necessary to be executed by the Principal in connection therewith and to
take any other necessary actions in connection therewith.

This power of attorney shall be governed by and construed in accordance with Swedish law
and shall be in effect until 3 November 2009.

27 October 2009

ÅLANDSBANKEN SVERIGE AB (publ)

_____          _____
Mats Andersson                   Charlotte Sandart

I hereby certify that this is a true
copy of the original.

_____
Eleanore Bergtsun

H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

NOV 0 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

RECEIVED BY:                    DATE                    3:01
                                                        TIME

## **EXHIBIT B**

[Executed Evidence of Transfer of Claim]

AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM
LEHMAN PROGRAM SECURITY

TO:     THE DEBTOR AND THE BANKRUPTCY COURT

1.      For value received, the adequacy and sufficiency of which are hereby acknowledged, **Acta Asset Management ASA** ("Seller") hereby unconditionally and irrevocably sells, transfers and assigns to **Barclays Bank PLC** (the "Purchaser"), and Purchaser hereby agrees to purchase, as of the date hereof, (a) an undivided interest, to the extent of the **principal amount** specified in Schedule 1 attached hereto (the "Purchased Claim"), in Seller's right, title and interest in and to Proof of Claim Number **62822** filed by **Alandsbanken AB (publ)** as custodian and authorized representative of the Creditors (as set forth in the Proof of Claim) (the "Proof of Claim") against Lehman Brothers Holdings, Inc., debtor in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Court"), administered under Case No. 08-13555 (JMP) (the "Debtor"), (b) all rights and benefits of Seller relating to the Purchased Claim, including without limitation (i) any right to receive cash, securities, instruments, interest, damages, penalties, fees or other property, which may be paid or distributed with respect to the Purchased Claim or with respect to any of the documents, agreements, bills and/or other documents (whether now existing or hereafter arising) which evidence, create and/or give rise to or affect in any material way the Purchased Claim, whether under a plan or reorganization or liquidation, pursuant to a liquidation, or otherwise, (ii) any actions, claims (including, without limitation, "claims" as defined in Section 101(5) of Title 11 of the United States Code (the "Bankruptcy Code")), rights or lawsuits of any nature whatsoever, whether against the Debtor or any other party, arising out of or in connection with the Purchased Claim, (iii) any rights and benefits arising out of or in connection with any exhibit, attachment and/or supporting documentation relating to the Purchased Claim, and (iv) any and all of Seller's right, title and interest in, to and under the transfer agreements, if any, under which Seller or any prior seller acquired the rights and obligations underlying or constituting a part of the Purchased Claim, but only to the extent related to the Purchased Claim, (c) any and all proceeds of any of the foregoing (collectively, as described in clauses (a), (b), and (c), the "Transferred Claims"), and (d) the security or securities (any such security, a "Purchased Security") relating to the Purchased Claim and specified in Schedule 1 attached hereto.

2.      Seller hereby represents and warrants to Purchaser that:  (a) the Proof of Claim was duly and timely filed on or before 5:00 p.m. (prevailing Eastern Time) on November 2, 2009 in accordance with the Court's order setting the deadline for filing proofs of claim in respect of "Lehman Program Securities"; (b) the Proof of Claim relates to one or more securities expressly identified on the list designated "Lehman Programs Securities" available on http://www.lehman-docket.com as of July 17, 2009; (c) Seller owns and has good and marketable title to the Transferred Claims, free and clear of any and all liens, claims, set-off rights, security interests, participations, or encumbrances created or incurred by Seller or against Seller; (d) Seller is duly authorized and empowered to execute and perform its obligations under this Agreement and Evidence of Transfer; (e) the Proof of Claim includes the Purchased Claim specified in Schedule 1 attached hereto; and (f) Seller has not engaged in any acts, conduct or omissions, or had any relationship with the Debtor or its affiliates, that will result in Purchaser receiving in respect of the Transferred Claims proportionately less payments or distributions or less favorable treatment than other unsecured creditors.

3.      Seller hereby waives any objection to the transfer of the Transferred Claims to Purchaser on the books and records of the Debtor and the Court, and hereby waives to the fullest extent permitted by law any notice or right to receive notice of a hearing pursuant to Rule 3001(e) of the Federal Rules of Bankruptcy Procedure, the Bankruptcy Code, applicable local bankruptcy rules or applicable law, and consents to the substitution of Seller by Purchaser for all purposes in the case, including, without limitation, for voting and distribution purposes with respect to the Transferred Claims.  Purchaser agrees to file a notice of transfer with the Court pursuant to Federal Rule of Bankruptcy Procedure 3001(e) including this Agreement and Evidence of Transfer of Claim.  Seller acknowledges and understands, and hereby stipulates, that an order of the Court may be entered without further notice to Seller transferring to Purchaser the Transferred Claims, recognizing Purchaser as the sole owner and holder of the Transferred Claims, and directing that all payments or distributions of money or property in respect of the Transferred Claim be delivered or made to Purchaser.

4.      All representations, warranties, covenants and indemnities shall survive the execution, delivery and performance of this Agreement and Evidence of Transfer of Claim and the transactions described herein.



Purchaser shall be entitled to transfer its rights hereunder without any notice to or the consent of Seller. Seller hereby agrees to indemnify, defend and hold Purchaser, its successors and assigns and its officers, directors, employees, agents and controlling persons harmless from and against any and all losses, claims, damages, costs, expenses and liabilities, including, without limitation, reasonable attorneys' fees and expenses, which result from Seller's breach of its representations and warranties made herein.

5.     Seller shall promptly (but in any event no later than three (3) business days) remit any payments, distributions or proceeds received by Seller in respect of the Transferred Claims to Purchaser. Seller has transferred, or shall transfer as soon as practicable after the date hereof, to Purchaser each Purchased Security to such account, via Euroclear or Clearstream (or similar transfer method), as Purchaser may designate in writing to Seller. This Agreement and Evidence of Transfer supplements and does not supersede any confirmation, any other automatically generated documentation or any applicable rules of Euroclear or Clearstream (or similar transfer method) with respect to the purchase and sale of the Purchased Security.

6.     Each of Seller and Purchaser agrees to (a) execute and deliver, or cause to be executed and delivered, all such other and further agreements, documents and instruments and (b) take or cause to be taken all such other and further actions as the other party may reasonably request to effectuate the intent and purposes, and carry out the terms, of this Agreement and Evidence of Transfer, including, without limitation, cooperating to ensure the timely and accurate filing of any amendment to the Proof of Claim.

7.     Seller's and Purchaser's rights and obligations hereunder shall be governed by and interpreted and determined in accordance with the laws of the State of New York (without regard to any conflicts of law provision that would require the application of the law of any other jurisdiction). Seller and Purchaser each submit to the jurisdiction of the courts located in the County of New York in the State of New York. Each party hereto consents to service of process by certified mail at its address listed on the signature page below.

IN WITNESS WHEREOF, this AGREEMENT AND EVIDENCE OF TRANSFER OF CLAIM is executed this November 21, 2010.

**Acta Asset Management ASA**

By: _____
Name: JOSTEIN VIHEN
Title: MANAGING DIRECTOR

Kungsgatan 8
111 43 Stockholm
Sweden

**Barclays Bank PLC**

By: _____
Name: Daniel Crowley
Title: Managing Director

745 Seventh Ave
New York, NY 10019

Schedule I

Creditor: Álandsbanken AB (publ)
Claim Number: 62822

Transferred Claims

Purchased Claim

Partial Claims to be transferred are as detailed in the additional columns in the schedule below.

| Description of Security | ISIN/CUSIP | Issuer | Guarantor | Principal/Notional Amount | Coupon | Maturity | Accrued Amount (as of Proof of Claim Filing Date) | Original Claim Amount | Transfer Claim % of Total Claim Amount | Claim Amount to Transfer |
|---|---|---|---|---|---|---|---|---|---|---|
| MTN4570 - QUANTO ASIAN FX BASKET NOTE | XS0277538681 | LEHMAN BROTHERS TREASURY CO. BV | LEHMAN BROTHERS HOLDINGS INC. | SEK 23,140,000 | n/a | 03/02/2010 | USD 0.00 | USD 4,417,195.26 | 78.33% | USD 3,460,186.91 |
| MTN5860 - SEK QUANTO FX BASKET LINKED NOTE | XS0282145669 | LEHMAN BROTHERS TREASURY CO. BV | LEHMAN BROTHERS HOLDINGS INC. | SEK 23,830,000 | n/a | 04/12/2010 | USD 0.00 | USD 4,936,074.77 | 72.19% | USD 3,563,384.49 |
| MTN6371 - ASIAN BASKET | XS0289028685 | LEHMAN BROTHERS TREASURY CO. BV | LEHMAN BROTHERS HOLDINGS INC. | SEK 16,140,000 | n/a | 5/14/2010 | USD 0.00 | USD 2,658,691.59 | 90.78% | USD 2,413,457.95 |
| MTN6886 - ASIAN FX BASKET QUANTO NOTE | XS0292622771 | LEHMAN BROTHERS TREASURY CO. BV | LEHMAN BROTHERS HOLDINGS INC. | SEK 15,100,000 | n/a | 06/11/2010 | USD 0.00 | USD 3,020,660.75 | 74.75% | USD 2,257,943.93 |
| | | | | SEK 78,210,000 | | | Total | USD 15,032,523.37 | | USD 11,694,953.28 |

Schedule I-1

