Hearing Date and Time: May 18, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time:  May 11, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
In re                                                          :    **Chapter 11 Case No.**
                                                                :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :    **08-13555 (JMP)**
                                                                :
                                  Debtors.                :    **(Jointly Administered)**
                                                                :
------------------------------------------------------------------x

**NOTICE OF LEHMAN BROTHERS SPECIAL FINANCING INC.'S
MOTION, PURSUANT TO SECTIONS 105(A) AND 363 OF THE
BANKRUPTCY CODE, FOR AUTHORIZATION TO (I) CAUSE 1271
LLC TO ISSUE CLASSES OF INTERESTS, (II) SELL INTERESTS IN
1271 LLC AND (III) MAKE A CAPITAL CONTRIBUTION TO 1271 LLC**

PLEASE TAKE NOTICE that a hearing on the annexed Motion (the "Motion") of Lehman Brothers Special Financing Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11 cases (together, the "Debtors") pursuant to sections 105(a) and 363 of title 11 to the United States Code, for authorization and approval to (i) take and to cause 1271 LLC to take all actions that may be necessary or appropriate to issue classes of interests in 1271 LLC, (ii) sell free and clear and to cause 1271 LLC to sell or issue the classes of interests in 1271 LLC without further Court approval and (iii) make a capital contribution to 1271 LLC, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House,

Courtroom 601, One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **May 18, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004, Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Robert J. Lemons, Esq. and Sunny Singh, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Tracy Hope Davis, Esq., Elizabetta G. Gasparini, Esq. and Andrea B. Schwartz, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn: Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the official committee of unsecured creditors appointed in these cases, so as to be so filed and received by no later than **May 11, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: April 27, 2011
      New York, New York

/s/ Robert J. Lemons
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Hearing Date and Time: May 18, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: May 11, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Robert J. Lemons

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
In re                                                            :   Chapter 11 Case No.
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,   :   08-13555 (JMP)
                                                                 :
                    Debtors.                                 :   (Jointly Administered)
------------------------------------------------------------------x

**LEHMAN BROTHERS SPECIAL FINANCING INC.'S MOTION, PURSUANT TO
SECTIONS 105(A) AND 363 OF THE BANKRUPTCY CODE, FOR AUTHORIZATION
TO (I) CAUSE 1271 LLC TO ISSUE CLASSES OF INTERESTS, (II) SELL INTERESTS
IN 1271 LLC AND (III) MAKE A CAPITAL CONTRIBUTION TO 1271 LLC**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing Inc. ("LBSF"), as debtor and debtor-in-possession (together with Lehman Brothers Holdings Inc. and its affiliated debtors in the above-captioned cases, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), files this motion (the "Motion") and respectfully represents:

**Preliminary Statement**

1. LBSF owns 100% of the equity interest in its non-debtor subsidiary, 1271 LLC ("1271"), which was created in June 2009 for the sole purpose of taking an assignment of LBSF's interest in a swap agreement with BH Finance LLC ("BH"). In accordance with the order, dated January 28, 2009 [Docket No. 2667], authorizing the consensual assumption and assignment of prepetition derivative contracts, LBSF assumed and assigned its interest in a credit

default swap agreement with BH to 1271 (the "Swap Agreement")[1] and prepaid all payments that could become due from 1271 to BH under the Swap Agreement. The Swap Agreement comprises the sole asset of 1271.

2. Pursuant to the Swap Agreement, BH provides credit protection (similar, in concept, to insurance) to 1271 with respect to a portfolio of reference entities and obligations, including various municipalities, corporations and indices. If certain credit events occur with respect to the reference entities or obligations as set forth in the Swap Agreement, then BH is required to make credit protection payments to 1271. BH's obligations under the Swap Agreement are fully guaranteed by its parent, Berkshire Hathaway Inc. The Swap Agreement covers a portfolio of trades with an aggregate notional value of approximately $10.9 billion, of which approximately $8 billion is with respect to the municipal portfolio that relates to 14 reference municipalities (the "Municipal Portfolio").

3. Since February 2009, LBSF has been trying to monetize the Municipal Portfolio for the benefit of its creditors. To assist with the monetization of the Municipal Portfolio, 1271 recently engaged Morgan Stanley & Co. Inc. and certain of its affiliates (collectively, "MS") pursuant to the terms of an amended and restated engagement letter (the "Engagement Letter"), dated April 25, 2011, among 1271 and MS.[2] MS will assist with the reorganization of 1271's capital structure or organizational form so that classes of securities corresponding to specific reference entities within the Municipal Portfolio can be created and

---

[1] The transactions governed by the Swap Agreement are each evidenced by a confirmation subject to an ISDA Master Agreement (1992 Multicurrency Cross-Border) and Schedule thereto, each dated as of July 23, 2007, as amended by that certain Novation Agreement, dated June 25, 2009, among LBSF, 1271 and BH. A copy of the Swap Agreement is attached hereto as Exhibit A.

[2] A copy of the Engagement Letter is attached hereto as Exhibit B. To the extent there is any inconsistency between the terms of the Engagement Letter and the description thereof in this Motion, the Engagement Letter shall control.

auctioned for sale to investors.[3]  This is necessary to maximize the value of the Swap Agreement due to the size and composition of the Municipal Portfolio, which makes it difficult to find a single assignee for the Swap Agreement.  After the classes of securities have been created, MS will market and pursue financially capable investors to participate in auctions for such securities.  MS will be compensated for its services by 1271 based upon a percentage of the purchase price secured by MS for each such security representing a portion of the Municipal Portfolio.  1271 may become obligated to pay a minimum service fee of $2.5 million to MS (the "Minimum Service Fee").

## Relief Requested

4.  LBSF seeks authorization and approval of its business judgment to (i) take and to cause 1271 to take all actions that may be necessary or appropriate to issue classes of interests in 1271, including to amend the constitutive documents and capital structure of 1271 or change 1271's organizational form, (ii) sell free and clear and/or to cause 1271 to sell or issue interests in 1271 and/or debt obligations and/or take any other action to monetize the Municipal Portfolio without further Court approval, subject to the consent of the Creditors' Committee (defined below), and (iii) make a capital contribution of $2.5 million to 1271 to enable 1271 to pay the Minimum Service Fee to MS pursuant to the terms of the Engagement Letter (collectively, the "Transactions").  LBSF further requests that the Court waive the fourteen-day stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and direct that the order granting the relief requested shall be effective immediately so MS can start performing the necessary tasks to monetize the Municipal Portfolio without delay.

---

[3] One or more classes corresponding to the non-municipal reference obligations under the Swap Agreement, *i.e.*, the corporate and index obligations, will also be created but will not be auctioned at this time.

5.  As set forth more fully below and in the declaration of Daniel Ehrmann (the "Ehrmann Declaration") in support of the Motion, LBSF has exercised sound business judgment and the Motion should be granted.  Additionally, the Creditors' Committee supports the relief requested by the Motion.

## Background

6.  Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), the Debtors commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.  On September 17, 2008, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

8.  On January 25, 2011, the Debtors filed their first amended joint chapter 11 plan [Docket No. 14150] and disclosure statement for their first amended joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 14151].

## Jurisdiction

9.  This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

**The Transactions**

Restructuring and Sale

10. 1271 is currently structured as a Delaware limited liability company that is wholly owned by LBSF. In order to realize the value of the Municipal Portfolio, 1271 intends to restructure its organization and issue several classes of securities to investors, with each class representing an interest in 1271 corresponding to a specific reference entity or obligation (each a "Class" and collectively, the "Classes"). Each Class corresponding to a municipal reference entity will be auctioned off to the highest and best bidder. Any investors that purchase such a Class (or portion thereof) will be entitled to receive ratable cash flows received by 1271 that are attributable to the respective reference entity. For example, Class "A" will correspond to municipality "X". If a credit event occurs with respect to municipality X, in exchange for the purchase price previously paid to 1271 for Class A, 1271 will pass through ratably to the purchaser(s) of Class A securities all credit protection payments made by BH to 1271 under the Swap Agreement with respect to municipality X. 1271 may need to also hire a third party to administer the payments received and other rights of the parties under the Swap Agreement consistent with the interests of the parties that purchase the Classes.

11. In order to protect the estate from a fluctuation in the market value of the Swap Agreement, it is currently contemplated that Classes representing a portion of the Municipal Portfolio will be immediately auctioned and sold off, with the balance of the Municipal Portfolio to be sold over time by December 31, 2011. Minimum reserve prices will be set for the sales. LBSF intends to set those prices based upon its own internal data and assessment of the market value of the Municipal Portfolio and in consultation with the Creditors' Committee.

Engagement Letter and Capital Contribution

    12. 1271 has engaged MS to apply its institutional resources, experience and expertise to assist with the reorganization of 1271 so that Classes can be created and auctioned for sale to the highest and best bidders and to identify prospective purchasers for the Classes. Subject to its duties under the Engagement Letter (including, without limitation, its duties of good faith and fair dealing) and applicable securities laws, MS or its affiliates may, but are not obligated to, bid for the purchase of a particular Class.

    13. 1271 has agreed to compensate MS by paying a structuring fee, marketing fee and placement fee, each of which will be calculated as a percentage of the proceeds realized from the sale of the Classes (the "Percentage Fees"). As set forth in the Engagement Letter, after the initial termination period has expired, if no auctions or sales are completed, MS is entitled to a Minimum Service Fee of $2.5 million. If sales are completed, but the aggregate structuring fee is less than $1.8 million or MS's share of the aggregate marketing fee is less than $700,000, MS is nonetheless entitled to minimum payments on the structuring fee in the amount of $1.8 million and/or the marketing fee in the amount of $700,000 so as to equal the Minimum Service Fee. MS expects to collaborate with (i) a broker dealer of national repute that is reasonably acceptable to MS and 1271 or (ii) 1271 or its designee, to conduct the auctions. Any fees and costs of such party will not be incremental to the fees payable to MS by 1271 pursuant to the Engagement Letter.

    14. In the ordinary course, LBSF periodically sweeps the cash realized by 1271 under the Swap Agreement. It is anticipated that any Percentage Fees payable to MS by 1271 will be paid from the proceeds realized on the sales of the Classes of securities. If, however, a sale is not consummated or the minimum amounts of the Percentage Fees are not

paid from the aggregate proceeds of the sales for any reason other than MS's bad faith, willful misconduct or gross negligence, then 1271 will require funds to compensate MS. Accordingly, LBSF seeks authority to fund a capital contribution of $2.5 million to 1271 to cover such costs.

15. LBSF believes that MS's prominent role and active participation in the municipal credit derivatives market position MS as the best agent to effect the Transactions. In addition, based upon LBSF's understanding of fees charged by peer broker-dealers in connection with the structuring, marketing and placement of comparable asset classes in the market place, as well as the fees charged by MS for other similar engagements, LBSF believes that the Percentage Fees and Minimum Service Fee represent the most competitive pricing achievable for the services to be provided.

### Sound Business Reasons Support the Transactions

16. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). When considering a transaction outside the ordinary course of business, courts in the Second Circuit, and others, require that such transaction be based upon the sound business judgment of the debtor. *Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines, Inc.*), 780 F.2d 1223, 1226 (5th Cir. 1986).

17. It is generally understood that "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). If a valid business justification exists, there is a strong presumption that "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom,* 488 A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). The burden of rebutting this presumption falls to parties opposing the proposed exercise of a debtor's business judgment. *Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

18. The Transactions represent a sound exercise of LBSF's business judgment and are in the best interests of LBSF, its estate and creditors. Most importantly, through the Transactions, LBSF will monetize the value of 1271's "in the money" position on the Municipal Portfolio for the benefit of its creditors. From October 2009 through March 2011, LBSF has marked the value of the Municipal Portfolio on its internal books and records between $375 million and $675 million. LBSF has invested a significant amount of time and resources to monetize the Municipal Portfolio and believes, based upon its review of the Municipal Portfolio, the current and projected market conditions and its prior efforts to monetize the Municipal Portfolio, that the proposed Transactions represent the best and most efficient method to maximize the value of the Municipal Portfolio.

19. The sale of the Classes to various investors also relieves LBSF's estate of the risk that a change in market conditions could shift the value of the Municipal Portfolio into the swap counterparty's favor and reduce the value of 1271's "in the money" position, which would decrease LBSF's ultimate recovery on the Swap Agreement. In short, through the restructuring of 1271 and the sale of the Classes, LBSF's estate obtains the benefit of an

immediate cash payment (as opposed to periodic payments over time) while, at the same time, relieving its estate of the risks that LBSF's recovery for the Swap Agreement could be reduced. Accordingly, the Transactions represent a reasonable exercise of LBSF's business judgment, are in the best interests of its estate and creditors and should be approved.

### Advance Authority to Complete the Sales Is Necessary to Maximize Value

20. Advance approval to sell or to cause 1271 to sell the Classes is appropriate because LBSF's inability to move quickly and consummate a sale could hinder and possibly destroy the ability to pursue an advantageous opportunity. For over two years, LBSF has made numerous attempts to monetize the Municipal Portfolio in a single transaction but has been unsuccessful. In addition, as explained in the Ehrmann Declaration, successful bidders are likely to enter into an immediate hedge with respect to an underlying reference obligation. As a result, LBSF believes that market buyers are unlikely to be willing to wait for motions to be filed and approved for the sale of each and every Class (or portions thereof), particularly if such sales are subject to additional bidding, because of the economic loss they would suffer on the hedge if the sale were not completed. At the very least, bids will be negatively impacted if LBSF cannot immediately consummate a sale to a successful bidder. Accordingly, LBSF requests that the Court authorize it to consummate the sale of any Classes without further Court approval, subject to the consent of the Creditors' Committee.

21. Although LBSF cannot afford to seek separate Court approval for each sale of a Class (or portion thereof), there are sufficient measures in place to ensure that LBSF realizes the best price for the sale of the Classes. There is a limited pool of potential purchasers that have the financial capability of purchasing an economic portion of the Municipal Portfolio of this size and scale. MS will pursue such investors and auction the Classes to obtain the

highest and best offers.  1271 retains the discretion to refuse an offer that it believes to be insufficient.  Minimum reserve prices for the auctions will be set.  Finally, the Creditors' Committee has been and will continue to be regularly consulted regarding the Swap Agreement and LBSF's efforts to monetize the Municipal Portfolio, and all sales are subject to the consent of the Creditors' Committee.

## The Capital Contribution Should Be Approved

22.    1271 has determined to engage MS to apply its institutional knowledge and expertise to restructure 1271 in the most efficient manner and create a structure that will attract the highest and best offers for 1271's interest in the Municipal Portfolio.  Because 1271 retains complete discretion to consummate a sale, there is no guarantee that a sale will be completed or that the minimum Percentage Fees will be paid from the aggregate sales proceeds.  Thus, to ensure that MS will be compensated for its work in the event a sale is not consummated or the minimum Percentage Fees are not paid from the aggregate sales proceeds, 1271 requires a capital contribution of $2.5 million to pay amounts that could become due.  In comparison to the overall benefit that could be realized by LBSF's estate through a monetization of the entire Municipal Portfolio, which LBSF valued on its internal books and records from October 2009 through March 2011 between $375 million and $675 million, the capital contribution ($2.5 million) represents a relatively *de minimis* investment that should be approved.  1271's engagement of MS will best position the estate to maximize the value of the Municipal Portfolio.  In light of these considerations, contribution of amounts to pay the Minimum Service Fee or the minimum Percentage Fees is reasonable.

**The Sale Should Be Free and Clear of All Liens and Claims**

23.   Any sales of LBSF's interests in 1271 should be free and clear of any and all liens, claims, encumbrances and other interests in accordance with section 363(f) of the Bankruptcy Code. A debtor may sell property of its estate free and clear of any interest in such property if one of the conditions in section 363(f)(1) – (5) is satisfied. *See* 11 U.S.C. § 365(f); *MacArthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."); *Circus Time, Inc. v. Oxford Bank & Trust (In re Circus Time, Inc.*), 5 B.R. 1, 8 (Bankr. D. Me. 1979) (finding the court's power to sell property free and clear of liens has long been recognized); *see also In re Riverside Inv. P'ship*, 674 F.2d 634, 640 (7th Cir. 1982) ("Generally, in a 'free and clear' sale, the liens are impressed on the proceeds of the sale and discharged at the time of sale.").

24.   LBSF is not aware of any parties that have any liens, claims, encumbrances, or interests in LBSF's interests in 1271. To the extent that any party asserts a lien, claim, encumbrance or other interest in LBSF's interests in 1271, subject to any claims and defenses LBSF may possess with respect thereto, such party's interests will be adequately protected because LBSF will be able to satisfy one or more of the conditions set forth in section 363(f). If LBSF's interests in 1271 are not sold free and clear, bidders may be deterred from offering the highest and best offers for the purchase of such interests. Accordingly, the Court should authorize all sales of Classes of LBSF's interests in 1271 to be free and clear of any liens, claims, encumbrances or interests.

**Notice**

25.     No trustee has been appointed in these chapter 11 cases. The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) MS; (vii) BH; (viii) Berkshire Hathaway Inc., and (ix) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635]. The Debtors submit that no other or further notice need be provided.

26.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  April 27, 2011
        New York, New York

                                        /a/ Robert J. Lemons
                                        Robert J. Lemons

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
In re                                                              :   Chapter 11 Case No.
                                                                   :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :   08-13555 (JMP)
                                                                   :
                                          Debtors.             :   (Jointly Administered)
------------------------------------------------------------------x

**ORDER AUTHORIZING LEHMAN BROTHERS SPECIAL FINANCING INC. TO (I) CAUSE 1271 LLC TO ISSUE CLASSES OF INTERESTS, (II) SELL INTERESTS IN 1271 LLC AND (III) MAKE A CAPITAL CONTRIBUTION TO 1271 LLC**

Upon the motion, dated April 27, 2011 (the "Motion"), of Lehman Brothers Special Financing Inc. ("LBSF") and its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the "Debtors"), pursuant to sections 105(a) and 363 of title 11 to the United States Code (the "Bankruptcy Code") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization and approval to (i) take and to cause 1271 LLC ("1271") to take all actions that may be necessary or appropriate to issue classes of interests or securities in 1271 representing an interest in 1271 corresponding to a reference obligation governed by the Swap Agreement[1] (collectively, the "Classes"), including to amend the constitutive documents and capital structure of 1271 or change 1271's organizational form, (ii) sell free and clear and/or to cause 1271 to sell or issue the Classes (or portions thereof) or debt obligations or take any other action to monetize the Municipal Portfolio without further Court approval subject to the consent of the Official Committee of Unsecured Creditors (the "Creditors' Committee") and (iii) make a capital contribution of $2.5 million to 1271 (the "Capital Contribution") to pay the Minimum Service Fee or the minimum Percentage Fees that are not paid from aggregate sales proceeds

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

(collectively, the "Transactions"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with the procedures set forth in the amended order entered June 17, 2010 governing case management and administrative procedures [Docket No. 9635] to (i) the United States Trustee for the Southern District of New York; (ii) the attorneys for the Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) all parties who have requested notice in these chapter 11 cases; (vii) MS, (viii) BH, and (ix) Berkshire Hathaway Inc., and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors, and all parties in interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

      ORDERED that the Motion is granted; and it is further

      ORDERED that LBSF is authorized to take and to cause 1271 to take all actions that may be necessary or appropriate to issue the Classes, including to amend the constitutive documents and capital structure of 1271 or change 1271's organizational form; and it is further

ORDERED that LBSF is authorized to sell and/or to cause 1271 to sell or issue the Classes (or portions thereof) and/or debt obligations and/or take any other action to monetize the Municipal Portfolio without further Court approval subject to the consent of the Creditors' Committee in each case; and it is further

ORDERED that purchasers of LBSF's interests in 1271 shall take title to the Classes free and clear of all liens, claims, encumbrances and other interests of any kind or nature whatsoever; and it is further

ORDERED that LBSF is authorized to make the Capital Contribution to 1271 to pay the Minimum Service Fee or the minimum Percentage Fees that are not paid from aggregate sales proceeds; and it is further

ORDERED that LBSF is authorized to execute and deliver and to cause 1271 to execute and deliver all instruments and documents, and to take such other actions, as may be necessary or appropriate to effectuate the Transactions; and it is further

ORDERED that the stay provided by Bankruptcy Rule 6004(h) is waived and this Order shall be effective immediately upon its entry; and it is further

ORDERED that notice of the Motion as provided herein shall be deemed good and sufficient notice of the Motion; and it is further

      ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: New York, New York
       May __, 2011

                                                        _____
                                                        HONORABLE JAMES M. PECK
                                                        UNITED STATES BANKRUPTCY JUDGE