**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
:
In re:                                              :              **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, :              **08-13555 (JMP)**
:
Debtors.                      :              **(Jointly Administered)**
:
-----------------------------------------------------------------x

### AMENDED JOINT SUBSTANTIVELY CONSOLIDATING CHAPTER 11 PLAN FOR LEHMAN BROTHERS HOLDINGS INC. AND CERTAIN OF ITS AFFILIATED DEBTORS OTHER THAN MERIT, LLC, LB SOMERSET LLC AND LB PREFERRED SOMERSET LLC, PROPOSED BY THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Tel: (212) 819-8200
Fax: (212) 354-8113

Attorneys for the Ad Hoc Group of
Lehman Brothers Creditors

Dated: New York, New York
          April 27, 2011

# TABLE OF CONTENTS

**PAGE**

**ARTICLE I.** Definitions and Interpretation ...................................................................1

**ARTICLE II.** Treatment of Administrative  Expense Claims and Priority Tax Claims ..............17

    2.1.    Administrative Expense Claims..............................................................17

    2.2.    Professional Compensation and Reimbursement Claims .....................17

    2.3.    Priority Tax Claims................................................................................17

**ARTICLE III.** Classification of Claims and Equity Interests .......................................18

    3.1.    Introduction............................................................................................18

    3.2.    Classification of Claims ........................................................................18

    3.3.    Separate Classification on an Entity-by-Entity Basis ...........................19

**ARTICLE IV.** Treatment of Claims Against the Debtors and Equity Interests...........................19

    4.1.    Class 1 – Priority Non-Tax Claims........................................................19

    4.2.    Class 2 – Secured Claims......................................................................19

    4.3.    Class 3 – Senior Unsecured Claims ......................................................20

    4.4.    Class 4 – General Unsecured Claims ....................................................20

    4.5.    Class 5A – Subordinated Class 5A Claims............................................20

    4.6.    Class 5B – Subordinated Class 5B Claims ...........................................20

    4.7.    Class 5C – Subordinated Class 5C Claims ...........................................21

    4.8.    Classes 6A through 6n –  Subsidiary Unsecured Claims.......................21

    4.9.    Classes 7A through 7n – Consolidated Third-Party Guarantee Claims................21

    4.10.    Classes 8A through 8n – Senior Non-Consolidated Third-Party Guarantee Claims ........................................................................................22

    4.11.    Classes 9A through 9n – General Non-Consolidated Third-Party Guarantee Claims...............................................................................22

    4.12.    Class 10 – Senior Non-Consolidated Intercompany Claims..................23

# TABLE OF CONTENTS
## (continued)

**PAGE**

4.13.   Class 11 – General Non-Consolidated Intercompany Claims ..............................23

4.14.   Class 12 – Senior Non-Consolidated Affiliate Guarantee Claims........................23

4.15.   Class 13 – General Non-Consolidated Affiliate Guarantee Claims......................24

4.16.   Class 14A – LBT Intercompany Claims ...............................................................24

4.17.   Class 14B – LBSN Intercompany Claims .............................................................24

4.18.   Class 15A – LBT Third-Party Guarantee Claims .................................................24

4.19.   Class 15B – LBSN Third-Party Guarantee Claims ...............................................25

4.20.   Classes 16A through Classes 16n – Designated Non-Debtor Affiliate
Intercompany Claims .............................................................................................25

4.21.   Classes 17A through 17n – Senior Designated Non-Debtor Affiliate Third-
Party Guarantee Claims .........................................................................................25

4.22.   Classes 18A through 18n – General Designated Non-Debtor Affiliate
Third-Party Guarantee Claims ...............................................................................26

4.23.   Class 19 – Section 510(b) Claims..........................................................................26

4.24.   Class 20 – Equity Interests.....................................................................................26

ARTICLE V.   Acceptance or Rejection of the Plan; Effect of Rejection by One or More
Classes of Claims or Equity Interests ....................................................................27

5.1.   Classes Entitled to Vote .........................................................................................27

5.2.   Class Acceptance Requirement...............................................................................27

5.3.   Undivided Voting....................................................................................................27

5.4.   Nonconsensual Confirmation..................................................................................27

ARTICLE VI.   Substantive Consolidation of the Consolidated Debtors.....................................28

6.1.   Substantive Consolidation of the Consolidated Debtors ........................................28

6.2.   Separate Classification for Settlement Purposes.....................................................28

ARTICLE VII.   Substantive Consolidation of Certain Designated Non-Debtor Affiliates..........28

7.1.   Substantive Consolidation of Certain Designated Non-Debtor Affiliates.............28

## TABLE OF CONTENTS
### (continued)

**PAGE**

| | | |
|---|---|---|
| 7.2. | Separate Classification for Settlement Purposes | 29 |
| 7.3. | Identification of Designated Non-Debtor Affiliates | 29 |

**ARTICLE VIII.** Substantive Consolidation of LBT and LBSN .......... 30

| | | |
|---|---|---|
| 8.1. | Substantive Consolidation of LBT and LBSN | 30 |
| 8.2. | Separate Classification for Settlement Purposes | 30 |
| 8.3. | Distributions to Creditors of LBT and LBSN | 30 |

**ARTICLE IX.** Implementation of the Plan .......... 31

| | | |
|---|---|---|
| 9.1. | Plan Administrator | 31 |
| 9.2. | Redistribution of Subordinated Unsecured Claims Recoveries | 32 |
| 9.3. | Special Provisions Regarding LBT | 33 |
| 9.4. | Special Provisions Regarding LBSN | 33 |
| 9.5. | Creation and Distribution of New Securities | 33 |
| 9.6. | Allowance of Non-Consolidated Intercompany Claims | 33 |
| 9.7. | Indenture Trustee, the Creditors' Committee Members and the Plan Proponents | 34 |

**ARTICLE X.** Corporate Governance .......... 34

| | | |
|---|---|---|
| 10.1. | Corporate Existence | 34 |
| 10.2. | Management and Administration on a Consolidated Basis | 34 |
| 10.3. | Board of Directors | 34 |
| 10.4. | Wind-Down | 35 |
| 10.5. | Certificate of Incorporation and By-Laws | 35 |
| 10.6. | Stock Trading Restrictions | 35 |

**ARTICLE XI.** Provisions Regarding Distributions Under the Plan .......... 35

| | | |
|---|---|---|
| 11.1. | Distributions of Plan Consideration | 35 |

## TABLE OF CONTENTS
### (continued)

**PAGE**

11.2.   Minimum Distribution and Manner of Payment ................................................... 36

11.3.   Distributions Free and Clear ................................................................................ 36

11.4.   Delivery of Distributions and Undeliverable Distributions ................................ 36

11.5.   Withholding and Reporting Requirements ........................................................... 36

11.6.   Time Bar to Cash Payment Rights ....................................................................... 37

11.7.   Setoffs and Recoupment ...................................................................................... 37

11.8.   Net Distributions to Foreign Affiliates ............................................................... 37

11.9.   Allocation of Distributions .................................................................................. 37

11.10.  Maximum Distribution ......................................................................................... 37

**ARTICLE XII.** Procedures for Treating Disputed Claims ............................................ 38

12.1.   Objections ............................................................................................................ 38

12.2.   Third-Party Guarantee Claims in Classes 8A through 8n and Classes 9A
        through 9n ............................................................................................................ 38

12.3.   No Distributions Pending Allowance ................................................................... 38

12.4.   Estimation of Claims ............................................................................................ 38

12.5.   Resolution of Disputed Claims ............................................................................ 39

12.6.   No Interest ............................................................................................................ 39

12.7.   Disputed Claims Reserve ..................................................................................... 39

**ARTICLE XIII.** Payment Notes ................................................................................... 39

13.1.   Issuance and Distribution ..................................................................................... 39

13.2.   Transferability of Payment Notes ........................................................................ 40

13.3.   Fractional Distributions ....................................................................................... 40

13.4.   Paying Agent ........................................................................................................ 40

13.5.   Exemption from Registration ............................................................................... 40

# TABLE OF CONTENTS
## (continued)

**PAGE**

13.6.    Deemed Transfer to DTC..................................................................40

13.7.    Discretion of Plan Administrator .................................................40

**ARTICLE XIV.** Liquidating Trust....................................................................41

14.1.    Execution of Liquidating Trust Agreement ...........................41

14.2.    Purpose of the Liquidating Trust ...........................................41

14.3.    Liquidating Trust Assets .......................................................41

14.4.    Administration of the Liquidating Trust................................41

14.5.    Liquidating Trustee's Tax Power for Consolidated Debtors ..................41

14.6.    Cash Investments ..................................................................41

14.7.    Distribution of Liquidating Trust Interests ...........................42

14.8.    Federal Income Tax Treatment of Liquidating Trust ............42

14.9.    Tax Reporting .......................................................................42

14.10.   Dissolution ...........................................................................43

**ARTICLE XV.** Treatment of Executory Contracts and Unexpired Leases ................................44

15.1.    Executory Contracts and Unexpired Leases .........................44

15.2.    Approval of Assumption and Rejection of Executory Contracts and
         Unexpired Leases..................................................................44

15.3.    Cure of Defaults....................................................................45

15.4.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and
         Unexpired Leases Rejected Pursuant to the Plan..................45

15.5.    Insurance Policies .................................................................45

**ARTICLE XVI.** Effectiveness of the Plan .........................................................45

16.1.    Conditions Precedent to the Confirmation of the Plan .........45

16.2.    Conditions Precedent to the Effective Date of the Plan........45

16.3.    Waiver of Conditions.............................................................46

## TABLE OF CONTENTS
### (continued)

PAGE

**ARTICLE XVII.** Effects of Confirmation ...................................................................46

    17.1.   Vesting of Assets ...........................................................................46

    17.2.   Binding Effect................................................................................46

    17.3.   **Release and Exculpation**............................................................46

    17.4.   **Injunction**....................................................................................47

    17.5.   Terms of Injunctions or Stays ......................................................47

    17.6.   Retention of Litigation Claims and Reservation of Rights.....................................47

**ARTICLE XVIII.** Retention of Jurisdiction ...............................................................48

    18.1.   Retention of Jurisdiction ...............................................................48

**ARTICLE XIX.** Miscellaneous Provisions .................................................................49

    19.1.   Dissolution of the Committee .......................................................49

    19.2.   Exemption from Transfer Taxes ....................................................50

    19.3.   Plan Supplement ...........................................................................50

    19.4.   Amendment or Modification of Plan .............................................50

    19.5.   Withdrawal or Revocation of the Plan...........................................50

    19.6.   Courts of Competent Jurisdiction .................................................51

    19.7.   Transactions on Business Days......................................................51

    19.8.   Notices ..........................................................................................51

    19.9.   Severability ...................................................................................51

    19.10.  Governing Law .............................................................................51

    19.11.  Headings .......................................................................................52

    19.12.  Exhibits ........................................................................................52

    19.13.  Successors and Assigns.................................................................52

    19.14.  Special Provisions Regarding Insured Claims...............................52

# TABLE OF CONTENTS
## (continued)

**PAGE**

### Schedules

Debtors................................................................................................................Schedule 1

Foreign Administrators ...................................................................................Schedule 2

Foreign Proceedings.........................................................................................Schedule 3

## **Preamble**

The Plan Proponents propose the following Plan for resolution of outstanding Claims against, and Equity Interests in, the Debtors pursuant to the Bankruptcy Code. Capitalized terms used herein have the meanings ascribed to such terms in Article I of the Plan or, to the extent not defined therein, as such terms are defined in the Bankruptcy Code. Except as otherwise indicated herein, the Plan applies to each of the twenty Debtors for which "exclusivity" has expired, but does not apply to the Excluded Debtors. The Plan Proponents, however, reserve the right to (i) seek a termination of exclusivity with respect to the Excluded Debtors and (ii) make applicable this Plan or any other plan of reorganization to the Excluded Debtors in the future or otherwise to seek to substantively consolidate any or all of the Excluded Debtors with LBHI by separate contested matter or adversary proceeding.

The Plan is premised on the substantive consolidation, for voting and distribution purposes, of the Consolidated Debtors' estates and certain Designated Non-Debtor Affiliates and the potential settlement of issues relating thereto. To avoid the cost and delay associated with litigation over the appropriateness of substantive consolidation, Intercompany Claims, asset ownership disputes and other inter-Debtor and inter-Affiliate entanglements, as a settlement, the Plan offers certain enhanced treatments to holders of Subsidiary Unsecured Claims and certain holders of Third-Party Guarantee Claims over those amounts such creditors would otherwise receive in a purely substantively consolidating plan. Such enhanced treatments, however, are available only to holders of Claims in Classes which vote to accept the Plan. In the event that a Class of Subsidiary Unsecured Claims votes to accept the Plan, the relevant Debtor's estate shall be deemed substantively consolidated as part of a plan settlement pursuant to sections 1123(a)(5) and (b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019. In the event that any such Class for any Debtor fails to accept the Plan, the Plan Proponents intend to seek a determination from the Bankruptcy Court that the substantive consolidation of such Debtor's estate is appropriate as a matter of law and fact. Under either scenario, holders of Claims in any Class that fails to accept the Plan shall not be entitled to receive the enhanced Distributions otherwise offered to such Class. The Consolidated Debtors' assets shall include the assets of the Designated Non-Debtor Affiliates (which are subject to substantive consolidation under the Plan) solely to the extent such Designated Non-Debtor Affiliate makes its assets available for Distribution under the Plan. In the absence of so doing, the Plan provides for other equitable relief with respect to such other Designated Non-Debtor Affiliates.

The Plan Proponents believe that the Plan represents a fair economic resolution for all of the Debtors' claimants and that the Plan will expedite the administration of the Debtors' Chapter 11 Cases and accelerate recoveries. The Plan enables the avoidance of the potential costs and extended time that would otherwise be incurred in connection with litigation of the multifaceted and complex issues among and between each of the Debtors.

*[The remainder of this page is intentionally left blank.]*

## ARTICLE I.
## Definitions and Interpretation

Definitions.  As used in the Plan, the following terms shall have the respective meanings specified below:

1.1     Accredited Investor shall have the meaning assigned to such term in Rule 501 of Regulation D promulgated under the Securities Act.

1.2     Ad Hoc Group of Lehman Brothers Creditors means the informal group of certain holders of Claims against the Debtors represented by White & Case LLP.  A list of the members of the Ad Hoc Group of Lehman Brothers Creditors as of the date hereof is attached to the Disclosure Statement as Exhibit 5.

1.3     Administrative Expense Claim means any right to payment constituting a cost or expense of administration of any of the Consolidated Debtors' Chapter 11 Cases under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estates of the Consolidated Debtors, any actual and necessary expenses of operating the businesses of the Consolidated Debtors, any indebtedness or obligations incurred or assumed by the Consolidated Debtors in connection with the conduct of their business from and after the Commencement Date, all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code, and any fees and charges assessed against the estates of the Consolidated Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.4     ADR Procedures means the procedures established pursuant to the Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts approved and entered by the Bankruptcy Court on September 17, 2009 [Docket No. 5207]; the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors approved and entered by the Bankruptcy Court on April 19, 2010 [Docket No. 8474]; the Order Supplementing the September 17, 2009 Alternative Dispute Resolution Procedures Order to Add a Fourth Mediator approved and entered by the Bankruptcy Court on September 23, 2010 [Docket No. 11537]; and the Tier 2 Alternative Dispute Resolution Procedures Order for Affirmative Claims of Debtors Under Derivatives Contracts for Amounts Not More Than $1 Million approved and entered by the Bankruptcy Court on September 27, 2010 [Docket No. 11649].

1.5     Affiliate shall have the meaning assigned to such term in section 101(2) of the Bankruptcy Code.

1.6     Aggregate LBSN Guarantee Claims Distribution means the total Distribution that would have been made to holders of Third-Party Guarantee Claims for which LBSN is the applicable Primary Obligor but for the reallocation of such Distribution to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims pursuant to Section 9.4 of the Plan.

1.7    Aggregate LBT Guarantee Claims Distribution means the total Distribution that would have been made to holders of Third-Party Guarantee Claims for which LBT is the applicable Primary Obligor but for the reallocation of such Distribution to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims pursuant to Section 9.3 of the Plan.

1.8    Allowed means, with reference to any Claim against the Debtors, (a) any Claim that has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim allowed hereunder, (c) any Claim that is not Disputed, (d) any Claim that is compromised, settled, or otherwise resolved pursuant to authority granted pursuant to a Final Order of the Bankruptcy Court or under Article XII of the Plan, or (e) any Claim that, if Disputed, has been Allowed by Final Order; *provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include interest on such Administrative Expense Claim or Allowed Claim from and after the Commencement Date.

1.9    Available Cash means (a) all Cash of the Consolidated Debtors realized from their business operations, the sale or other disposition of their assets, the interest earned on invested funds, recoveries from Litigation Claims or from any other source or otherwise less (b) the amount of Cash estimated and reserved by the Consolidated Debtors to (i) adequately fund the reasonable and necessary projected costs to carry out the provisions of the Plan on and after the Effective Date, (ii) adequately fund the Disputed Claims Reserve, (iii) pay all fees payable under section 1930 of chapter 123 of title 28 of the United States Code and (iv) pay all other amounts required to be paid to manage and/or liquidate the Consolidated Debtors' assets on and after the Effective Date.

1.10    Avoidance Actions means any actions commenced or that may be commenced before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code.

1.11    Bankruptcy Code means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

1.12    Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Cases.

1.13    Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2072 of title 28 of the United States Code, and any Local Rules of the Bankruptcy Court.

1.14    Bar Date Order means the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form

approved and entered by the Bankruptcy Court on July 2, 2009 [Docket No. 4271], as the same may be amended from time to time.

1.15    **BNC** means BNC Mortgage LLC.

1.16    **Business Day** means any day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required to close by law or executive order.

1.17    **Cash** means legal tender or equivalents thereof, however denominated.

1.18    **Causes of Action** means, without limitation, any and all actions, causes of action, controversies, liabilities, obligations, rights, suits, damages, judgments, Claims, and demands whatsoever, whether known or unknown, reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, existing or hereafter arising, in law, equity, or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Commencement Date or during the course of the Chapter 11 Cases through the Effective Date.

1.19    **CES** means CES Aviation LLC.

1.20    **CES V** means CES Aviation V LLC.

1.21    **CES IX** means CES Aviation IX LLC.

1.22    **Chapter 11 Cases** means the voluntary cases commenced by the Debtors under chapter 11 of the Bankruptcy Code, which are being jointly administered and are currently pending before the Bankruptcy Court, styled *In re Lehman Brothers Holdings Inc.*, *et al.*, Chapter 11 Case No. 08-13555 (JMP).

1.23    **Claim** means (a) any right to payment, whether or not such right is known or unknown, reduced to judgment, liquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is known or unknown, reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. For avoidance of doubt, "Claim" includes, without limitation, a right to payment, or equitable relief that gives rise to a right to payment, that has or has not accrued under non-bankruptcy law that is created by one or more acts or omissions of the Debtors if: (a) the act(s) or omission(s) occurred before or at the time of the Effective Date; (b) the act(s) or omission(s) may be sufficient to establish liability when injuries/damages are manifested; or (c) at the time of the Effective Date, the Debtors have received one or more demands for payment for injuries or damages arising from such acts or omissions.

1.24    **Class** means a category of holders of Claims or Equity Interests as set forth in Article III of the Plan.

3

1.25    Class 5A Subordinated Notes means, collectively, (a) the Floating Rate Junior Subordinated Deferrable Interest Debentures due 2035 issued pursuant to the Eighth Supplemental Indenture, dated as of August 19, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (b) the Fixed/Floating Rate Subordinated Notes due 2016 Series 5065, issued pursuant to a final term sheet dated as of September 26, 2006 under the Euro Medium-Term Note Program; (c) the Floating Rate Subordinated Notes due 2037 Series EB17, issued pursuant to a final term sheet dated as of January 23, 2007 under the Euro Medium-Term Note Program; (d) the Fixed/Floating Rate Subordinated Notes due 2019 Series 6222, issued pursuant to the final term sheet dated as of February 14, 2007 under the Euro Medium-Term Note Program; and (e) the Floating Rate Subordinated Notes due 2037 Series EB 18, issued pursuant to a final term sheet, dated as of May 30, 2007, under the Euro Medium-Term Note Program.

1.26    Class 5B Subordinated Notes means, collectively, (a) the 6.375% Subordinated Deferrable Interest Debentures due 2052, issued pursuant to the Fourth Supplemental Indenture, dated as of March 17, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (b) the 6.375% Subordinated Deferrable Interest Debentures due October 2052, issued pursuant to the Fifth Supplemental Indenture, dated as of October 31, 2003, between LBHI and JPMorgan Chase Bank, as trustee; (c) the 6.00% Subordinated Deferrable Interest Debentures due 2053, issued pursuant to the Sixth Supplemental Indenture, dated as of April 22, 2004, between LBHI and JPMorgan Chase Bank, as trustee; (d) the 6.24% Subordinated Deferrable Interest Debentures due 2054, issued pursuant to the Seventh Supplemental Indenture, dated as of January 18, 2005, between LBHI and JPMorgan Chase Bank, as trustee; (e) the 5.75% Subordinated Notes due 2017, issued pursuant to the Ninth Supplemental Indenture, dated as of October 24, 2006, between LBHI and JPMorgan Chase Bank, as trustee; (f) the Fixed and Floating Rate Subordinated Notes Due 2032, issued pursuant to the Tenth Supplemental Indenture, dated as of May 1, 2007, between LBHI and JPMorgan Chase Bank, as trustee; (g) the 6.50% Subordinated Notes Due 2017, issued pursuant to the Thirteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (h) the 6.875% Subordinated Notes Due 2037, issued pursuant to the Fourteenth Supplemental Indenture, dated as of July 19, 2007, between LBHI and The Bank of New York, as trustee; (i) the 6.75% Subordinated Notes Due 2017, issued pursuant to the Fifteenth Supplemental Indenture, dated as of December 21, 2007, between LBHI and The Bank of New York, as trustee; and (j) the 7.50% Subordinated Notes Due 2038, issued pursuant to the Sixteenth Supplemental Indenture, dated as of May 9, 2008, between LBHI and The Bank of New York, as trustee.

1.27    Class 5C Subordinated Notes means, collectively, (a) the 5.707% Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Eleventh Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee; and (b) the Floating Rate Remarketable Junior Subordinated Debentures due 2043, issued pursuant to the Twelfth Supplemental Indenture, dated as of May 17, 2007, between LBHI and U.S. Bank National Association, as trustee.

1.28    Collateral means any property or interest in property of the estates of the Debtors subject to a Lien to secure the payment of a Claim, which Lien is not subject to avoidance or otherwise invalid and unenforceable under the Bankruptcy Code or applicable non-bankruptcy law.

1.29    Commencement Date means (a) September 15, 2008 with respect to LBHI, (b) September 16, 2008 with respect to LB 745, (c) September 23, 2008 with respect to PAMI, (d) October 3, 2008 with respect to LBCS, LBSF and LOTC, (e) October 5, 2008 with respect to LBDP, LCPI, LBCC, LBFP, CES, CES V, CES IX, East Dover and LS Finance, (f) January 7, 2009 with respect to LUXCO, (g) January 9, 2009 with respect to BNC, (h) February 9, 2009 with respect to SASCO and LB Rose Ranch, and (i) April 23, 2009 with respect to LB 2080.

1.30    Confirmation Date means the date upon which the Bankruptcy Court enters a Confirmation Order on the docket of the Chapter 11 Cases.

1.31    Confirmation Hearing means the hearing held by the Bankruptcy Court, as it may be continued from time to time, to consider the confirmation of the Plan.

1.32    Confirmation Order means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.33    Consolidated Debtors means the Debtors which are substantively consolidated pursuant to the Plan.

1.34    Consolidated-Debtor-Controlled Entity means those Affiliates of the Consolidated Debtors that are managed and controlled by the Consolidated Debtors as of the Effective Date.

1.35    Consolidated Intercompany Claim means any Intercompany Claim against a Consolidated Debtor asserted by another Consolidated Debtor.

1.36    Consolidated Third-Party Guarantee Claim means any Third-Party Guarantee Claim for which a Consolidated Debtor is the Primary Obligor.

1.37    Creditors' Committee means the statutory committee of unsecured creditors appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code.

1.38    Debtor means each of the entities identified on Schedule 1.

1.39    Debtor Consolidated Claim means any Claim against a Designated Non-Debtor Affiliate asserted by a Consolidated Debtor.

1.40    Debtor-Controlled Entities means those Affiliates of the Debtors that are managed and controlled by the Debtors as of the Effective Date.

1.41    Derivatives Questionnaire shall have the meaning assigned to such term in the Bar Date Order.

1.42    Designated Non-Debtor Affiliate means LBIE, LBF, LBAH, LB RE 1, LB RE 2 and such other Affiliates as the Plan Proponents may identify prior to the Confirmation Hearing.

1.43    Designated Non-Debtor Affiliate Intercompany Claim means any Intercompany Claim asserted by a Designated Non-Debtor Affiliate.

1.44    <u>Disallowed</u> means a finding or Final Order, or provision of the Plan providing that a Disputed Claim or Equity Interest, as the case may be, shall not become an Allowed Claim.

1.45    <u>Disclosure Statement</u> means that certain disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.46    <u>Disclosure Statement Order</u> means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code and approving the procedures for solicitation of the Plan.

1.47    <u>Disputed</u> means, with reference to any Claim, (a) any Claim (whether or not proof of which was timely and properly filed) that is disputed under the Plan or as to which a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 has been interposed, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, or (b) any Claim, proof of which was required to be filed by a Final Order of the Bankruptcy Court in a form and manner proscribed in such Final Order, but as to which a proof of claim was not timely or properly filed.

1.48    <u>Disputed Claims Estimated Amount</u> means the aggregate amount estimated to become Allowed Claims of all Disputed Claims as estimated by the Bankruptcy Court for distribution purposes.

1.49    <u>Disputed Claims Reserve</u> means Cash in the amount that must be reserved pursuant to <u>Section 12.5</u> and <u>Section 12.7</u> to satisfy Disputed Claims in the event that a Disputed Claim becomes an Allowed Claim.

1.50    <u>Disputed General Unsecured Claims Estimated Amount</u> means the aggregate amount estimated to become Allowed General Unsecured Claims of all Disputed General Unsecured Claims as estimated by the Bankruptcy Court for distribution purposes.

1.51    <u>Disputed Senior Unsecured Claims Estimated Amount</u> means the aggregate amount estimated to become Allowed Senior Unsecured Claims of all Disputed Senior Unsecured Claims as estimated by the Bankruptcy Court for distribution purposes.

1.52    <u>Disputed Subordinated Unsecured Claims Estimated Amount</u> means the aggregate amount estimated to become Allowed Subordinated Unsecured Claims of all Disputed Subordinated Unsecured Claims as estimated by the Bankruptcy Court for distribution purposes.

1.53    <u>Distribution</u> means any payment or transfer made to a Person other than a Debtor under the Plan.

1.54    <u>Distribution Date</u> means any date that a Distribution is made.

1.55    <u>DTC</u> means The Depository Trust Company.

1.56    <u>East Dover</u> means East Dover Limited.

1.57    Effective Date means the first Business Day on which the conditions to effectiveness of the Plan set forth in Article XVI have been satisfied or waived and on which the Plan shall become effective.

1.58    Equity Interest means shares of common stock, preferred stock, other forms of ownership interest, or an interest or right to convert into such an equity or ownership interest or to acquire any equity or ownership interest or any interest or right for which the amount owing is determined by reference to an equity or ownership interest, including, without limitation, vested and/or unvested restricted stock units, contingent stock awards, contingent equity awards, performance stock units, and stock options or restricted stock awards granted under management ownership plans, the LBHI 2005 stock incentive plan or the LBHI employee incentive plan, in LBHI that was in existence immediately prior to the Commencement Date for LBHI.

1.59    Estimation Order means an order or orders of the Bankruptcy Court (a) estimating or otherwise establishing, among other things, the amount of the Disputed Claims Estimated Amount, Disputed Senior Unsecured Claims Estimated Amount, Disputed General Unsecured Claims Estimated Amount, and Disputed Subordinated Unsecured Claims Estimated Amount, and (b) entered by the Bankruptcy Court in connection with Section 12.4 hereof. The Estimation Order may be the Confirmation Order if the Confirmation Order grants the same relief that otherwise would have been granted in separate Estimation Order(s).

1.60    Excluded Debtors means Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC.

1.61    Final Order means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to the Plan Proponents or the Plan Administrator, as applicable, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that no order shall fail to be a Final Order solely because of the possibility that a motion pursuant to section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or Bankruptcy Rule 9023 or 9024 may be filed with respect to such order; *provided*, *further*, that the Plan Proponents or Plan Administrator, as applicable, may waive any appeal period so long as a stay pending appeal has not been granted by order of the Bankruptcy Court or any other court of competent jurisdiction.

1.62    Foreign Administrator means each person or entity, including those persons or entities identified on Schedule 2, that is managing the affairs and representing the insolvency estate of an Affiliate of the Debtors subject to a Foreign Proceeding.

1.63    <u>Foreign Affiliate</u> means an Affiliate of LBHI that is not incorporated in the United States.

1.64    <u>Foreign Proceeding</u> means an insolvency or similar proceeding involving an Affiliate of the Debtors (other than the Chapter 11 Cases), including each of the proceedings identified on <u>Schedule 3</u>.

1.65    <u>General Designated Non-Debtor Affiliate Third-Party Guarantee Claim</u> means any Third-Party Guarantee Claim for which a Designated Non-Debtor Affiliate is the Primary Obligor, other than any Senior Designated Non-Debtor Affiliate Third-Party Guarantee Claim.

1.66    <u>General Non-Consolidated Affiliate Guarantee Claim</u> means any Guarantee Claim asserted by a Non-Consolidated Affiliate, other than a Senior Non-Consolidated Affiliate Guarantee Claim.

1.67    <u>General Non-Consolidated Intercompany Claim</u> means (a) any Intercompany Claim asserted by a Non-Consolidated Affiliate, other than a Senior Non-Consolidated Intercompany Claim, Senior Non-Consolidated Affiliate Guarantee Claim or General Non-Consolidated Affiliate Guarantee Claim, (b) if LBT is substantively consolidated pursuant to <u>Article VIII</u>, Claims equivalent thereto asserted against LBT in its Foreign Proceeding subject to the provisions of <u>Section 8.1</u>, (c) if LBSN is substantively consolidated pursuant to <u>Article VIII</u>, Claims equivalent thereto asserted against LBSN in its Foreign Proceeding subject to the provisions of <u>Section 8.1</u>, and (d) if a Designated Non-Debtor Affiliate is substantively consolidated pursuant to <u>Article VII</u>, Claims equivalent thereto asserted against such Designated Non-Debtor Affiliate in its Foreign Proceeding subject to the provisions of <u>Section 7.1</u>.

1.68    <u>General Non-Consolidated Third-Party Guarantee Claim</u> means any Third-Party Guarantee Claim for which a Non-Consolidated Affiliate is the Primary Obligor, other than a Senior Non-Consolidated Third-Party Guarantee Claim.

1.69    <u>General Unsecured Claim</u> means (a) any Claim against LBHI, other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, an Intercompany Claim, a Guarantee Claim or a Section 510(b) Claim, (b) if LBT is substantively consolidated pursuant to <u>Article VIII</u>, Claims equivalent thereto asserted against LBT in its Foreign Proceeding subject to the provisions of <u>Section 8.1</u>, (c) if LBSN is substantively consolidated pursuant to <u>Article VIII</u>, Claims equivalent thereto asserted against LBSN in its Foreign Proceeding subject to the provisions of <u>Section 8.1</u>, and (d) if a Designated Non-Debtor Affiliate is substantively consolidated pursuant to <u>Article VII</u>, Claims equivalent thereto asserted against such Designated Non-Debtor Affiliate in its Foreign Proceeding subject to the provisions of <u>Section 7.1</u>.

1.70    <u>Governmental Unit</u> shall have the meaning assigned to such term in section 101(27) of the Bankruptcy Code.

1.71    <u>Guadelete</u> means Guadelete Investments Sarl.

1.72    <u>Guarantee</u> means a guarantee by a Debtor of an obligation of an Affiliate of the Debtors.

1.73    Guarantee Claim means a Claim against a Consolidated Debtor arising on account of a Guarantee.

1.74    Guarantee Questionnaire shall have the meaning assigned to such term in the Bar Date Order.

1.75    Insured Claim means any Claim against a Debtor for which the Debtor is entitled to indemnification, reimbursement, contribution or other payment under a policy of insurance wherein a Debtor is an insured or beneficiary of the coverage of any of the Debtors.

1.76    Intercompany Claim means any Claim against a Consolidated Debtor asserted by an Affiliate of the Consolidated Debtor other than an Administrative Expense Claim, a Priority Non-Tax Claim, and a Secured Claim.

1.77    IRS means the Internal Revenue Service.

1.78    ISDA means the International Swap Dealers Association.

1.79    ISDA Master Agreement means the 1992 or 2002 ISDA Master Agreement form.

1.80    LB RE 1 means LB RE Financing No. 1 Limited.

1.81    LB RE 2 means LB RE Financing No. 2 Limited.

1.82    LB Rose Ranch means LB Rose Ranch LLC.

1.83    LBSN means Lehman Brothers Securities N.V.

1.84    LB 745 means LB 745 LLC.

1.85    LB 2080 means LB 2080 Kalakaua Owners LLC.

1.86    LB UK RE means LB UK RE Holdings Limited.

1.87    LBAH means Lehman Brothers Asia Holdings Limited (In Liquidation).

1.88    LBB means Lehman Brothers Bankhaus AG (in Insolvenz).

1.89    LBCC means Lehman Brothers Commercial Corporation.

1.90    LBCCA means Lehman Brothers Commercial Corporation Asia Limited (in Liquidation).

1.91    LBCS means Lehman Brothers Commodities Services Inc.

1.92    LBDP means Lehman Brothers Derivatives Products Inc.

1.93    LBF means Lehman Brothers Finance AG (in liquidation) a/k/a/ Lehman Brothers Finance S.A. (in liquidation).

1.94    <u>LBFP</u> means Lehman Brothers Financial Products Inc.

1.95    <u>LBHI</u> means Lehman Brothers Holdings Inc.

1.96    <u>LBHJ</u> means Lehman Brothers Holdings Japan Inc.

1.97    <u>LBI</u> means Lehman Brothers Inc.

1.98    <u>LBIE</u> means Lehman Brothers International (Europe) (in Administration).

1.99    <u>LBJ</u> means Lehman Brothers Japan Inc.

1.100   <u>LBL</u> means Lehman Brothers Limited (in Administration).

1.101   <u>LBSF</u> means Lehman Brothers Special Financing Inc.

1.102   <u>LBSN Intercompany Claim</u> means any Intercompany Claim asserted against any of the Consolidated Debtors by LBSN.

1.103   <u>LBSN Third-Party Guarantee Claim</u> means any Third-Party Guarantee Claim for which LBSN is the Primary Obligor.

1.104   <u>LBT</u> means Lehman Brothers Treasury Co. B.V.

1.105   <u>LBT Intercompany Claim</u> means any Intercompany Claim asserted against any of the Consolidated Debtors by LBT.

1.106   <u>LBT Third-Party Guarantee Claim</u> means any Third-Party Guarantee Claim for which LBT is the Primary Obligor.

1.107   <u>LCPI</u> means Lehman Commercial Paper Inc.

1.108   <u>Lehman Re</u> means Lehman Re Ltd.

1.109   <u>Liquidating Trust</u> means a trust that may be created after the Effective Date in accordance with the provisions of Article XIV of the Plan and a Liquidating Trust Agreement for the benefit of holders of Allowed Claims and/or Equity Interests and as determined by the Plan Administrator consistent with the purposes of any such Liquidating Trust pursuant to <u>Section 14.2</u> of the Plan.

1.110   <u>Liquidating Trust Agreement</u> means an agreement evidencing the terms and provisions governing a Liquidating Trust that shall be entered into prior to the establishment of such Liquidating Trust and pursuant to which a Liquidating Trustee shall manage and administer Liquidating Trust Assets.

1.111   <u>Liquidating Trust Assets</u> means the assets of a Consolidated Debtor or Consolidated-Debtor-Controlled Entity to be transferred to a Liquidating Trust as may be determined by the Plan Administrator, which shall be described in a Liquidating Trust Agreement.

1.112    Liquidating Trust Beneficiaries means those holders of Allowed Claims or Equity Interests to the extent such holders receive Liquidating Trust Interests.

1.113    Liquidating Trustee means the person or entity appointed by the Plan Administrator prior to the creation of a Liquidating Trust to administer such Liquidating Trust in accordance with the provisions of Article XIV of the Plan and a Liquidating Trust Agreement; *provided*, *however*, that under no circumstance shall a Liquidating Trustee be a director or officer with respect to any entity over which the Liquidating Trust has control.

1.114    Liquidating Trust Interests means the non-certificated beneficial interests of a Liquidating Trust allocable to holders of Allowed Claims in accordance with the terms and conditions of a Liquidating Trust Agreement, which may or may not be transferable.

1.115    LOTC means Lehman Brothers OTC Derivatives Inc.

1.116    Lien shall have the meaning assigned to such term in section 101(37) of the Bankruptcy Code.

1.117    Litigation Claims means any and all Causes of Action held by a Debtor.

1.118    LS Finance means Lehman Scottish Finance L.P.

1.119    LUXCO means Luxembourg Residential Properties Loan Finance S.a.r.l.

1.120    Merit means Merit, LLC.

1.121    New Securities means any securities to be distributed by the Consolidated Debtors pursuant to and in a manner consistent with the provisions of the Plan representing an interest in any entity formed or utilized by the Consolidated Debtors pursuant to the provisions of Section 9.5 hereof.

1.122    Non-Consolidated Affiliate means any Affiliate of LBHI other than any Consolidated Debtor, LBT, LBSN, or any Designated Non-Debtor Affiliate.

1.123    Non-Consolidated Intercompany Claim means any Intercompany Claim against a Consolidated Debtor asserted by an Affiliate of LBHI other than a Consolidated Debtor or a Designated Non-Debtor Affiliate.

1.124    Non-Debtor Affiliate means any Affiliate of LBHI that is not a Debtor.

1.125    Ordinary Course Professional Order means the Order Pursuant to Sections 105(a), 327, 328, and 330 of the Bankruptcy Code Authorizing the Debtors to Employ Professionals Utilized in the Ordinary Course of Business, approved and entered by the Bankruptcy Court on November 5, 2008 [Docket No. 1394], as the same may be amended from time to time.

1.126    PAMI means PAMI Statler Arms LLC.

1.127    Paying Foreign Affiliate shall have the meaning assigned to such term in Section 11.8 of the Plan.

1.128    Payment Note means an instrument issued pursuant to the Plan evidencing ownership of an Allowed Claim and the obligation of the Consolidated Debtors to make any corresponding Distributions.

1.129    Person shall have the meaning assigned to such term in section 101(41) of the Bankruptcy Code.

1.130    Philippine 1 means Philippine Investment One (SPV-AMC), Inc.

1.131    Philippine 2 means Philippine Investment Two (SPV-AMC), Inc.

1.132    Plan means this chapter 11 plan, including, without limitation, the Plan Supplement and all exhibits, supplements, appendices, and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

1.133    Plan Administrator means the Person, designated by the Board of Directors as of the Effective Date and approved by the Bankruptcy Court, granted with the authority and charged with the responsibilities of the "Plan Administrator" under the Plan.

1.134    Plan Consideration means Available Cash and New Securities, if any, to be distributed pursuant to the Plan.

1.135    Plan Proponents means each member of the Ad Hoc Group of Lehman Brothers Creditors as of the date hereof.

1.136    Plan Supplement means the document containing the forms of documents specified in Section 19.3 of the Plan.

1.137    Preferred Somerset means LB Preferred Somerset LLC.

1.138    Primary Claim means the underlying claim against an Affiliate that gives rise to a Third-Party Guarantee Claim to the extent a Guarantee has been issued in respect of such underlying Claim.

1.139    Primary Obligor means the obligor of a Primary Claim.

1.140    Priority Non-Tax Claim means (a) any Claim, other than an Administrative Expense Claim or Priority Tax Claim, against a Consolidated Debtor entitled to priority in payment under section 507(a) of the Bankruptcy Code, (b) if LBT is substantively consolidated pursuant to Article VIII, Claims equivalent thereto asserted against LBT in its Foreign Proceeding subject to the provisions of Section 8.1, (c) if LBSN is substantively consolidated pursuant to Article VIII, Claims equivalent thereto asserted against LBSN in its Foreign Proceeding subject to the provisions of Section 8.1, and (d) if a Designated Non-Debtor Affiliate is substantively consolidated pursuant to Article VII, Claims equivalent thereto asserted against

12

such Designated Non-Debtor Affiliate in its Foreign Proceeding subject to the provisions of Section 7.1.

1.141   Priority Tax Claim means any Claim of a Governmental Unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.142   Pro Rata Equity Share means the ratio (expressed as a percentage) of an Equity Interest in a Debtor to the aggregate amount of Equity Interests in such Debtor.

1.143   Pro Rata Section 510(b) Claim Share means the ratio (expressed as a percentage) of (a) an Allowed Section 510(b) Claim to (b) the sum of the aggregated amounts of Allowed Section 510(b) Claims and Disputed Section 510(b) Claims.

1.144   Pro Rata Share means with respect to an Allowed Claim or Equity Interest (a) within the same Class, the proportion that an Allowed Claim or Equity Interest bears to the sum of all Allowed Claims and Disputed Claims or Allowed Equity Interests and Disputed Equity Interests within such Class, or (b) among all Classes, the proportion that a Class of Allowed Claims bears to the sum of all Allowed Claims and Disputed Claims, in each of the foregoing instances taking into account adjustments as may be set forth in Article IV; *provided*, *however*, that Administrative Expense Claims shall not be considered for purposes of "Pro Rata Share"; *provided further*, *however*, that only the following Classes of Claims shall be considered in the determination of "Pro Rata Share" with respect to the following Distributions:

(a)  Plan Consideration: Class 3, Class 4, Class 5A, Class 5B, Class 5C, Classes 6A through 6n, Classes 7A through 7n, Classes 8A through 8n, Classes 9A through 9n, Class 10, Class 11, Class 12, Class 13, Class 14A, Class 14B, Class 15A, Class 15B, Classes 16A through 16n, Classes 17A through 17n, and Classes 18A through 18n.

(b)  Subordinated Class 5A Distribution: Class 3 and Class 10.

(c)  Subordinated Class 5B Distribution:  Class 3, Class 10, Class 12 and any Class of Classes 8A through 8n that votes to reject the Plan.

(d)  Subordinated Class 5C Distribution:  Class 3, Class 5A, Class 5B, Class 10, Class 12 and any Class of Classes 8A through 8n that votes to reject the Plan.

(e)  Reallocated LBSN Distribution: Class 3 and Class 4.

(f)  Reallocated LBT Distribution: Class 3 and Class 4.

1.145   Reallocated LBSN Distribution means if both Class 14B and Class 15B vote to accept the Plan, 50% of each Aggregate LBSN Guarantee Claims Distribution, which shall be distributed to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims in accordance with Section 9.4.

1.146   Reallocated LBT Distribution means if both Class 14A and Class 15A vote to accept the Plan, 50% of each Aggregate LBT Guarantee Claims Distribution, which shall be

distributed to holders of Allowed Senior Unsecured Claims and Allowed General Unsecured Claims in accordance with Section 9.3.

1.147   Receiving Affiliate shall have the meaning assigned to such term in Section 11.8 of the Plan.

1.148   Released Parties means, collectively, (a) the Plan Administrator, (b) the Creditors' Committee, (c) each current and former member of the Creditors' Committee, (d) the Ad Hoc Group of Lehman Brothers Creditors, (e) each current and former member of the Ad Hoc Group of Lehman Brothers Creditors, and (f) in the case of (a) through (e), each of their respective officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases (solely in their capacity as officers, directors, managers, members, accountants, financial advisors, investment bankers, agents, restructuring advisors, attorneys, representatives or other professionals serving during the pendency of the Chapter 11 Cases).

1.149   Requisite Amount means (i) with respect to a Class of Claims, two-thirds in amount and one-half in number of the Allowed Claims of such Class held by creditors, other than any entity designated pursuant to section 1126(e) of the Bankruptcy Code, that have voted to accept or reject the Plan, and (ii) with respect to a Class of Equity Interests, two-thirds in amount of the Allowed Equity Interests of such Class held by holders of such Equity Interests, other than any entity designated pursuant to section 1126(e) of the Bankruptcy Code, that have voted to accept or reject the Plan.

1.150   SASCO means Structured Asset Securities Corporation.

1.151   Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors as required by section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, including any supplements or amendments thereto through the Confirmation Date.

1.152   Section 510(b) Claim means any Claim against the Consolidated Debtors arising from rescission of a purchase or sale of a security of the Debtors or an Affiliate of the Debtors for damages arising from the purchase or sale of such security, or for reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

1.153   Secured Claim means (a) any Claim against a Consolidated Debtor (i) to the extent reflected in the Schedules or upon a proof of claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code or (ii) that is subject to a valid right of setoff pursuant to section 553 of the Bankruptcy Code to the extent of such setoff, (b) if LBT is substantively consolidated pursuant to Article VIII, Claims equivalent thereto asserted against LBT in its Foreign Proceeding subject to the provisions of Section 8.1, (c) if LBSN is substantively consolidated pursuant to Article VIII, Claims equivalent thereto asserted against LBSN in its Foreign Proceeding subject to the provisions of Section 8.1, and (d) if a Designated Non-Debtor Affiliate is substantively consolidated pursuant to Article VII, Claims equivalent

thereto asserted against such Designated Non-Debtor Affiliate in its Foreign Proceeding subject to the provisions of Section 7.1.

1.154    Senior Designated Non-Debtor Affiliate Third-Party Guarantee Claim means any Third-Party Guarantee Claim against LBHI for which a Designated Non-Debtor Affiliate is the Primary Obligor that is entitled to a contractual right of priority in payment to Subordinated Class 5B Claims and Subordinated Class 5C Claims, but not Subordinated Class 5A Claims (excluding an "Other Financial Obligation" as defined in the Class 5B Subordinated Notes or Class 5C Subordinated Notes).

1.155    Senior Non-Consolidated Affiliate Guarantee Claim means any Guarantee Claim against LBHI asserted by a Non-Consolidated Affiliate that is entitled to a contractual right of priority in payment to Subordinated Class 5B Claims and Subordinated Class 5C Claims, but not Subordinated Class 5A Claims (excluding an "Other Financial Obligation" as defined in the Class 5B Subordinated Notes or Class 5C Subordinated Notes).

1.156    Senior Non-Consolidated Intercompany Claim means any Intercompany Claim against LBHI asserted by a Non-Consolidated Affiliate that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 5B Subordinated Notes or Class 5C Subordinated Notes), other than any Senior Non-Consolidated Affiliate Guarantee Claim or General Non-Consolidated Affiliate Guarantee Claim.

1.157    Senior Non-Consolidated Third-Party Guarantee Claim means any Third-Party Guarantee Claim for which a Non-Consolidated Affiliate is the Primary Obligor that is entitled to a contractual right of priority in payment to Subordinated Class 5B Claims and Subordinated Class 5C Claims, but not Subordinated Class 5A Claims (excluding an "Other Financial Obligation" as defined in the Class 5B Subordinated Notes or Class 5C Subordinated Notes).

1.158    Senior Notes means, collectively, the various notes issued by LBHI as to which Bank of New York and Wilmington Trust Co. (or any successor thereto) serve as indenture trustees.

1.159    Senior Unsecured Claim means any Claim against LBHI that is entitled to a contractual right of priority in payment to all Subordinated Claims (excluding an "Other Financial Obligation" as defined in the Class 5B Subordinated Notes or Class 5C Subordinated Notes), other than a Senior Non-Consolidated Intercompany Claim, an LBSN Intercompany Claim or an LBT Intercompany Claim (if such LBSN Intercompany Claim or LBT Intercompany Claim would otherwise be entitled to a contractual right of priority in payment to all Subordinated Claims).

1.160    Somerset means LB Somerset LLC.

1.161    Stock Trading Restrictions Order means the Order Pursuant to Sections 105(a) and 362 of the Bankruptcy Code Approving Restrictions on Certain Transfers of Interests in the Debtors' Estates and Establishing Notification Procedures Relating Thereto [Docket No. 1386], as the same may be amended from time to time.

1.162    Subordinated Claim means any Subordinated Class 5A Claim, Subordinated Class 5B Claim or Subordinated Class 5C Claim.

1.163    Subordinated Notes means, collectively, the Class 5A Subordinated Notes, Class 5B Subordinated Notes and Class 5C Subordinated Notes.

1.164    Subordinated Unsecured Claim means any Subordinated Class 5A Claim, Subordinated Class 5B Claim or Subordinated Class 5C Claim.

1.165    Subordinated Class 5A Claim means any Claim against LBHI arising under the Class 5A Subordinated Notes.

1.166    Subordinated Class 5B Claim means any Claim against LBHI arising under the Class 5B Subordinated Notes.

1.167    Subordinated Class 5C Claim means any Claim against LBHI arising under the Class 5C Subordinated Notes.

1.168    Subordinated Class 5A Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 5A Claims but for the reallocation of such Distribution pursuant to Section 9.2.

1.169    Subordinated Class 5B Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 5B Claims but for the reallocation of such Distribution pursuant to Section 9.2.

1.170    Subordinated Class 5C Distribution means the total Distribution that would have been made to holders of Allowed Subordinated Class 5B Claims but for the reallocation of such Distribution pursuant to Section 9.2.

1.171    Subsidiary Debtor means each of the Debtors other than LBHI.

1.172    Subsidiary Unsecured Claim means any Claim asserted against a Consolidated Debtor other than LBHI, other than an Administrative Expense Claim, a Priority Tax Claim, a Priority Non-Tax Claim, a Secured Claim, a Senior Unsecured Claim, an Intercompany Claim, a Guarantee Claim or a Section 510(b) Claim.

1.173    Sunrise means Sunrise Finance Co., Ltd.

1.174    Third-Party Guarantee Claim means any Guarantee Claim asserted by a Person that is not a Consolidated Debtor or an Affiliate of the Debtors.

1.175    Voting Record Date means the date for determining which holders of Claims are entitled to receive the Disclosure Statement and vote to accept or reject the Plan, as applicable, which date is set forth in the Disclosure Statement Order.

Rules of Construction.  Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and

pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  Unless otherwise specified, all section, article, schedule, or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Except for section 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II.
### Treatment of Administrative
### Expense Claims and Priority Tax Claims

2.1.    <u>Administrative Expense Claims</u>.  Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim shall receive Cash from the Consolidated Debtors in an amount equal to the Allowed amount of such Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities or other obligations incurred in the ordinary course of business by a Debtor incurred by such Debtor shall be paid in full and performed by the Consolidated Debtors in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

2.2.    <u>Professional Compensation and Reimbursement Claims</u>.  Other than a professional retained by the Debtors pursuant to the Ordinary Course Professional Order, any entity seeking an award of the Bankruptcy Court of compensation for services rendered and/or reimbursement of expenses incurred through and including the Effective Date under section 105(a), 363(b), 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file its final application for allowance of such compensation and/or reimbursement by no later than the date that is 120 days after the Effective Date or such other date as may be fixed by the Bankruptcy Court, and (b) be paid by or on behalf of the Consolidated Debtors in full and in Cash in the amounts Allowed upon (i) the date the order granting such award becomes a Final Order, or as soon thereafter as practicable, or (ii) such other terms as may be mutually agreed upon by the claimant and the Plan Administrator.  The Consolidated Debtors are authorized to pay compensation for professional services rendered and reimburse expenses incurred after the Effective Date in the ordinary course and without Bankruptcy Court approval.

2.3.    <u>Priority Tax Claims</u>.  Except to the extent that a holder of an Allowed Priority Tax Claim has been paid by or on behalf of a Consolidated Debtor prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim against a Consolidated Debtor shall receive Cash from the Consolidated Debtors in an amount equal to the Allowed amount of such Priority Tax Claim on the later of the Effective Date and the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

# ARTICLE III.
## Classification of Claims and Equity Interests

3.1.    <u>Introduction</u>.  The Plan is premised on the substantive consolidation of (a) the Debtors, (b) if either Class 14A or Class 15A reject the Plan, LBT, (c) if either Class 14B or Class 15B reject the Plan, LBSN and (d) if a Class in Classes 16A through 16n or a corresponding Class in Classes 17A through 17n or Classes 18A through 18n rejects the Plan, the corresponding Designated Non-Debtor Affiliate, for the purposes of voting to accept or reject the Plan, confirmation of the Plan and Distributions under the Plan.

3.2.    <u>Classification of Claims</u>.  Claims against the Consolidated Debtors, other than Administrative Expense Claims and Priority Tax Claims, and Equity Interests are classified for all purposes, including voting and Distribution pursuant to the Plan (except as otherwise specified in the Plan, including with respect to substantive consolidation as described in <u>Article VI</u>, <u>Article VII</u>, and <u>Article VIII</u>), as follows:

| <u>Class</u> | <u>Designation</u> | <u>Impairment</u> | <u>Entitlement to Vote</u> |
|---|---|---|---|
| 1 | Priority Non-Tax Claims | Impaired | Yes |
| 2 | Secured Claims | Impaired | Yes |
| 3 | Senior Unsecured Claims | Impaired | Yes |
| 4 | General Unsecured Claims | Impaired | Yes |
| 5A | Subordinated Class 5A Claims | Impaired | No (deemed to reject) |
| 5B | Subordinated Class 5B Claims | Impaired | No (deemed to reject) |
| 5C | Subordinated Class 5C Claims | Impaired | No (deemed to reject) |
| 6A-6n | Subsidiary Unsecured Claims | Impaired | Yes |
| 7A-7n | Consolidated Third-Party Guarantee Claims | Impaired | Yes |
| 8A-8n | Senior Non-Consolidated Third-Party Guarantee Claims | Impaired | Yes |
| 9A-9n | General Non-Consolidated Third-Party Guarantee Claims | Impaired | Yes |
| 10 | Senior Non-Consolidated Intercompany Claims | Impaired | Yes |
| 11 | General Non-Consolidated Intercompany Claims | Impaired | Yes |
| 12 | Senior Non-Consolidated Affiliate Guarantee Claims | Impaired | Yes |
| 13 | General Non-Consolidated Affiliate Guarantee Claims | Impaired | Yes |
| 14A | LBT Intercompany Claims | Impaired | Yes |
| 14B | LBSN Intercompany Claims | Impaired | Yes |
| 15A | LBT Third-Party Guarantee Claims | Impaired | Yes |
| 15B | LBSN Third-Party Guarantee Claims | Impaired | Yes |
| 16A-16n | Designated Non-Debtor Affiliate Intercompany Claims | Impaired | Yes |
| 17A-17n | Senior Designated Non-Debtor Affiliate Third-Party Guarantee Claims | Impaired | Yes |
| 18A-18n | General Designated Non-Debtor Affiliate Third-Party Guarantee Claims | Impaired | Yes |

| Class | Designation | | Impairment | Entitlement to Vote |
|-------|-------------|---|-----------|--------------------|
| 19 | Section 510(b) Claims | | Impaired | No (deemed to reject) |
| 20 | Equity Interests | | Impaired | No (deemed to reject) |

3.3.    Separate Classification on an Entity-by-Entity Basis.  The Class 6, Class 7, Class 8, Class 9, Class 16, Class 17 and Class 18 Class designations provide for multiple separate classes per category, which are described together for convenience only.  Each Class designated in each of the Class 6, Class 7, Class 8, Class 9, Class 16, Class 17 and Class 18 categories of classification shall constitute a separate Class for all purposes under the Plan, classified separately by relevant entity.  For example, all Classes in the Class 6 category are designated on a Subsidiary-Debtor-by-Subsidiary-Debtor basis.  As a consequence, all Class 6 Subsidiary Unsecured Claims asserted against LBSF are classified in their own Class separately from all other Class 6 Subsidiary Unsecured Claims asserted against each other Subsidiary Debtor.

**ARTICLE IV.**
**Treatment of Claims Against the Debtors and Equity Interests**

4.1.    Class 1 – Priority Non-Tax Claims.

(a)    Impairment and Voting.  Class 1 is unimpaired by the Plan.  Each holder of an Allowed Claim in Class 1 is deemed to have accepted the Plan and is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in Class 1 agrees to less favorable treatment or has been paid by or on behalf of any of the Consolidated Debtors on account of such Claim prior to the Effective Date, on the later of the Effective Date and the date such Priority Non-Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable, each holder of an Allowed Claim in Class 1 shall be paid in Cash by the Consolidated Debtors in an amount equal to the Allowed amount of such Claim.

4.2.    Class 2 – Secured Claims.

(a)    Impairment and Voting.  Class 2 is unimpaired by the Plan.  Each holder of an Allowed Claim in Class 2 is deemed to have accepted the Plan and is entitled to vote to accept or reject the Plan.

(b)    Distributions.  Except to the extent that the holder of an Allowed Claim in Class 2 agrees to less favorable treatment, each holder of an Allowed Claim in Class 2 shall be satisfied by, at the option of the Plan Administrator: (i) payment in Cash by the Consolidated Debtors in an amount equal to the Allowed amount of such Claim on the later of the Effective Date and the date such Claim becomes an Allowed Claim; (ii) the sale or disposition proceeds of the Collateral securing such Allowed Claim to the extent of the value of the Collateral securing such Allowed Claim; (iii) surrender to the holder of such Allowed Claim of the Collateral securing such Allowed Claim; or (iv) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of the Allowed Claim is entitled.  In the event an

Allowed Claim in Class 2 is treated under clause (i) or (ii) above, the Liens securing such Claim shall be deemed released and extinguished without further order of the Bankruptcy Court.

4.3.    <u>Class 3 – Senior Unsecured Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class 3 is impaired by the Plan.  Each holder of an Allowed Claim in Class 3 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in Class 3 shall receive its Pro Rata Share of (i) Plan Consideration, (ii) Subordinated Class 5A Distribution, (iii) Subordinated Class 5B Distribution, (iv) Subordinated Class 5C Distribution, (v) Reallocated LBSN Distribution, if any, and (vi) Reallocated LBT Distribution, if any.

4.4.    <u>Class 4 – General Unsecured Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class 4 is impaired by the Plan.  Each holder of an Allowed Claim in Class 4 is entitled to vote to accept or reject the Plan.

(b)    <u>Distributions</u>.  Each holder of an Allowed Claim in Class 4 shall receive its Pro Rata Share of (i) Plan Consideration, (ii) Reallocated LBSN Distribution, if any, and (iii) Reallocated LBT Distribution, if any.

4.5.    <u>Class 5A – Subordinated Class 5A Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class 5 is impaired by the Plan.  Each holder of an Allowed Claim in Class 5 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Holders of Allowed Claims in Class 5A shall not receive any Distributions on account of such Claims and instead such Distributions shall be allocated to the holders of Allowed Claims in Class 3 and Class 10 in accordance with <u>Section 9.2</u> until all holders of Allowed Claims in such Classes are fully satisfied in the Allowed amount of such Claims, in which case each holder of an Allowed Claim in Class 5A shall receive its Pro Rata Share of (i) Plan Consideration and (ii) Subordinated Class 5C Distribution.

4.6.    <u>Class 5B – Subordinated Class 5B Claims</u>.

(a)    <u>Impairment and Voting</u>.  Class 5B is impaired by the Plan.  Each holder of an Allowed Claim in Class 5B is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b)    <u>Distributions</u>.  Holders of Allowed Claims in Class 5B shall not receive any Distributions on account of such Claims and instead such Distributions shall be allocated to the holders of Allowed Claims in Class 3, Class 10, Class 12, and any Class in Classes 8A through 8n that votes to reject the Plan, in accordance with <u>Section 9.2</u> until all holders of Allowed Claims in such Classes are fully satisfied in the Allowed amount of such Claims, in which case each holder of an Allowed Claim in Class 5B shall receive its Pro Rata Share of (i) Plan Consideration and (ii) Subordinated Class 5C Distribution.

4.7.    <u>Class 5C – Subordinated Class 5C Claims</u>.

(a) <u>Impairment and Voting</u>.  Class 5C is impaired by the Plan.  Each holder of an Allowed Claim in Class 5C is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b) <u>Distributions</u>.  Holders of Allowed Claims in Class 5C shall not receive any Distributions on account of such Claims and instead such Distributions shall be allocated to the holders of Allowed Claims in Class 3, Class 5A, Class 5B, Class 10, Class 12, and any Class of Classes 8A through 8n that votes to reject the Plan, in accordance with <u>Section 9.2</u>, until all holders of Allowed Claims in such Classes are fully satisfied in the Allowed amount of such Claims, in which case each holder of an Allowed Claim in Class 5C shall receive its Pro Rata Share of Plan Consideration.

4.8.    <u>Classes 6A through 6n –  Subsidiary Unsecured Claims</u>.

(a) <u>Separate Classes and Treatment</u>.  Classes 6A through 6n are separate independent Classes, but are described together in this <u>Section 4.8</u> of the Plan.

(b) <u>Impairment and Voting</u>.  Classes 6A through 6n are impaired by the Plan. Each holder of an Allowed Claim in Classes 6A through 6n is entitled to vote to accept or reject the Plan.

(c) <u>Distributions</u>.  Each holder of an Allowed Claim in each of Classes 6A through 6n shall receive its Pro Rata Share of Plan Consideration; *provided*, *however*, that if a Class in Classes 6A through 6n votes to accept the Plan, the Pro Rata Share for each holder of an Allowed Claim in such accepting Class shall be determined using an amount equal to 115% of such Allowed Claim.

4.9.    <u>Classes 7A through 7n – Consolidated Third-Party Guarantee Claims</u>.

(a) <u>Separate Classes and Treatment</u>.  Classes 7A through 7n are separate independent Classes, but are described together in this <u>Section 4.9</u> of the Plan.

(b) <u>Impairment and Voting</u>.  Classes 7A through 7n are impaired by the Plan. Each holder of an Allowed Claim in Classes 7A through 7n is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 6.2</u>.

(c) <u>Distributions</u>.  Each holder of a Claim in Classes 7A through 7n is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if a Class in Classes 7A through 7n votes to accept the Plan, each holder of an Allowed Claim in such accepting Class shall be entitled to receive its Pro Rata Share of Plan Consideration, provided that such Pro Rata Share shall be determined using an amount equal to 25% of such Allowed Claim, which amount shall not be subject to further reduction as a consequence of substantive consolidation in accordance with <u>Article VI</u>, <u>Article VII</u> and <u>Article VIII</u> of the Plan or Distributions received on account of the corresponding Primary Claim; *provided further*, *however*, that the rights of the Plan Proponents and the Plan Administrator to object to the

Allowance of any Claim in any of Classes 7A through 7n which accept the Plan on any grounds other than substantive consolidation are fully reserved.

    4.10.   Classes 8A through 8n – Senior Non-Consolidated Third-Party Guarantee Claims.

    (a) Separate Classes and Treatment.  Classes 8A through 8n are separate independent Classes, but are described together in this Section 4.10 of the Plan.

    (b) Impairment and Voting.  Classes 8A through 8n are impaired by the Plan. Each holder of an Allowed Claim in Classes 8A through 8n is entitled to vote to accept or reject the Plan in its respective Class.

    (c) Distributions.  Each holder of an Allowed Claim in Classes 8A through 8n shall receive its Pro Rata Share of (i) Plan Consideration, (ii) Subordinated Class 5B Distribution and (iii) Subordinated Class 5C Distribution; provided, however, that all Claims in Classes 8A through 8n shall be deemed Disputed Claims and not entitled to Distributions under the Plan unless and until (a) each Debtor and Debtor-Controlled Entity with a Claim against the applicable Primary Obligor has received all distributions on account of such Claim to the extent enforceable as determined by the Bankruptcy Court without subordination, reduction or offset of any kind unless otherwise agreed to by the Plan Proponents or the Plan Administrator, as applicable, and (b) such holder establishes that it has received all distributions it is entitled to receive on account of its Primary Claim and such Primary Claim has not otherwise received payment in full. If the conditions set forth in subclauses (a) and (b) are not properly satisfied as determined by the Bankruptcy Court before the 3rd anniversary following the Effective Date, such Third-Party Guarantee Claim shall be deemed a Disallowed Claim and expunged from the claims register; provided, however, that if a Class in Classes 8A through 8n votes to accept the Plan, all Claims in such Class shall not be deemed Disputed Claims and each holder of an Allowed Claim in such Class shall be entitled to receive at the time such Claim becomes an Allowed Claim its Pro Rata Share of Plan Consideration, provided that such Pro Rata Share shall be determined using an amount equal to 70% of the holder's Allowed Claim without regard to whether the conditions set forth in subclauses (a) and (b) above have been satisfied and shall not be subject to reduction as a consequence of Distributions received on account of the corresponding Primary Claim; provided further, however, that the rights of the Plan Proponents and the Plan Administrator to object to the Allowance of any Claim in any of Classes 8A through 8n which accept the Plan on any grounds other than the failure of the conditions set forth in subclauses (a) and (b) to be satisfied are fully reserved.

    4.11.   Classes 9A through 9n – General Non-Consolidated Third-Party Guarantee Claims.

    (a) Separate Classes and Treatment.  Classes 9A through 9n are separate independent Classes, but are described together in this Section 4.11 of the Plan.

    (b) Impairment and Voting.  Classes 9A through 9n are impaired by the Plan. Each holder of an Allowed Claim in Classes 9A through 9n is entitled to vote to accept or reject the Plan in its respective Class.

(c) <u>Distributions</u>. Each holder of an Allowed Claim in Classes 9A through 9n shall receive its Pro Rata Share of Plan Consideration; *provided*, *however*, that all Claims in Classes 9A through 9n shall be deemed Disputed Claims and not entitled to Distributions under the Plan unless and until (a) each Debtor and Debtor-Controlled Entity with a Claim against the applicable Primary Obligor has received all distributions on account of such Claim to the extent enforceable as determined by the Bankruptcy Court without subordination, reduction or offset of any kind unless otherwise agreed to by the Plan Proponents or the Plan Administrator, as applicable, and (b) such holder establishes that it has received all distributions it is entitled to receive on account of its Primary Claim and such Primary Claim has not otherwise received payment in full. If the conditions set forth in subclauses (a) and (b) are not properly satisfied as determined by the Bankruptcy Court before the 3rd anniversary following the Effective Date, such Third-Party Guarantee Claim shall be deemed a Disallowed Claim and expunged from the claims register; *provided*, *however*, that if a Class in Classes 9A through 9n votes to accept the Plan, all Claims in such Class shall not be deemed Disputed Claims and each holder of an Allowed Claim in such Class shall be entitled to receive at the time such Claim becomes an Allowed Claim its Pro Rata Share of Plan Consideration, provided that such Pro Rata Share shall be determined using an amount equal to 70% of the holder's Allowed Claim without regard to whether the conditions set forth in subclauses (a) and (b) above have been satisfied and shall not be subject to reduction as a consequence of Distributions received on account of the corresponding Primary Claim; *provided further*, *however*, that the rights of the Plan Proponents and the Plan Administrator to object to the Allowance of any Claim in any of Classes 9A through 9n which accept the Plan on any grounds other than the failure of the conditions set forth in subclauses (a) and (b) to be satisfied are fully reserved.

4.12.    <u>Class 10 – Senior Non-Consolidated Intercompany Claims</u>.

(a) <u>Impairment and Voting</u>. Class 10 is impaired by the Plan. Each holder of an Allowed Claim in Class 10 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed Claim in Class 10 shall receive, subject to <u>Section 9.6</u>, its Pro Rata Share of (i) Plan Consideration, (ii) Subordinated Class 5A Distribution, (iii) Subordinated Class 5B Distribution and (iv) Subordinated Class 5C Distribution.

4.13.    <u>Class 11 – General Non-Consolidated Intercompany Claims</u>.

(a) <u>Impairment and Voting</u>. Class 11 is impaired by the Plan. Each holder of an Allowed Claim in Class 11 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>. Each holder of an Allowed Claim in Class 11 shall receive, subject to <u>Section 9.6</u>, its Pro Rata Share of Plan Consideration.

4.14.    <u>Class 12 – Senior Non-Consolidated Affiliate Guarantee Claims</u>.

(a) <u>Impairment and Voting</u>. Class 12 is impaired by the Plan. Each holder of an Allowed Claim in Class 12 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>.  Each holder of an Allowed Claim in Class 12 shall receive, subject to <u>Section 9.6</u>, its Pro Rata Share of (i) Plan Consideration, (ii) Subordinated Class 5B Distribution and (iii) Subordinated Class 5C Distribution.

4.15.    <u>Class 13 – General Non-Consolidated Affiliate Guarantee Claims</u>.

(a) <u>Impairment and Voting</u>.  Class 13 is impaired by the Plan.  Each holder of an Allowed Claim in Class 13 is entitled to vote to accept or reject the Plan.

(b) <u>Distributions</u>.  Each holder of an Allowed Claim in Class 13 shall receive, subject to <u>Section 9.6</u>, its Pro Rata Share of Plan Consideration.

4.16.    <u>Class 14A – LBT Intercompany Claims</u>.

(a) <u>Impairment and Voting</u>.  Class 14A is impaired by the Plan.  Each holder of an Allowed Claim in Class 14A is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 8.2</u>.

(b) <u>Distributions</u>.  Each holder of a Claim in Class 14A is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if both Class 14A and Class 15A vote to accept the Plan, the LBT Intercompany Claims will be Allowed in an aggregate amount equal to $33,170,000,000 and the holder of the Allowed Claim in Class 14A shall be entitled to receive its Pro Rata Share of Plan Consideration.

4.17.    <u>Class 14B – LBSN Intercompany Claims</u>.

(a) <u>Impairment and Voting</u>.  Class 14B is impaired by the Plan.  Each holder of an Allowed Claim in Class 14B is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 8.2</u>.

(b) <u>Distributions</u>.  Each holder of a Claim in Class 14B is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if both Class 14B and Class 15B vote to accept the Plan, the LBSN Intercompany Claims will be Allowed in an aggregate amount equal to $5,250,000,000 and the holder of the Allowed Claim in Class 14B shall be entitled to receive its Pro Rata Share of Plan Consideration.

4.18.    <u>Class 15A – LBT Third-Party Guarantee Claims</u>.

(a) <u>Impairment and Voting</u>.  Class 15A is impaired by the Plan.  Each holder of an Allowed Claim in Class 15A is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 8.2</u>.

(b) <u>Distributions</u>.  Each holder of a Claim in Class 15A is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if both Class 14A and Class 15A vote to accept the Plan, each holder of an Allowed Claim in Class 15A shall receive 50% of its Pro Rata Share of Plan Consideration and shall not be subject to reduction as a consequence of Distributions received on account of the corresponding Primary Claim with the

remaining 50% of such Pro Rata Share of Plan Consideration made available for Distributions to holders of Allowed Claims in Class 3 and Class 4 as described further in <u>Section 9.3</u>.

4.19.    <u>Class 15B – LBSN Third-Party Guarantee Claims</u>.

(a)  <u>Impairment and Voting</u>.  Class 15B is impaired by the Plan.  Each holder of an Allowed Claim in Class 15B is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 8.2</u>.

(b)  <u>Distributions</u>.  Each holder of a Claim in Class 15B is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if both Class 14B and Class 15B vote to accept the Plan, each holder of an Allowed Claim in Class 15B shall receive 50% of its Pro Rata Share of Plan Consideration and shall not be subject to reduction as a consequence of Distributions received on account of the corresponding Primary Claim with the remaining 50% of such Pro Rata Share of Plan Consideration made available for Distributions to holders of Allowed Claims in Class 3 and Class 4 as described further in <u>Section 9.4</u>.

4.20.    <u>Classes 16A through Classes 16n – Designated Non-Debtor Affiliate Intercompany Claims</u>.

(a)  <u>Separate Classes and Treatment</u>.  Classes 16A through 16n are separate independent Classes, but are described together in this <u>Section 4.20</u> of the Plan.

(b)  <u>Impairment and Voting</u>.  Classes 16A through 16n are impaired by the Plan. Each holder of an Allowed Claim in Classes 16A through 16n is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 7.2</u>.

(c)  <u>Distributions</u>.  Each holder of a Claim in Classes 16A through 16n is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if a Class in Classes 16A through 16n and the corresponding Classes in each of Classes 17A through 17n and Classes 18A through 18n vote to accept the Plan, the Claims in such Class and the Debtor Consolidated Claims against such holder shall be Allowed in an aggregate amount as agreed to by the Plan Proponents and the holder of the Allowed Claim in such Class, and such holder shall be entitled to receive its Pro Rata Share of Plan Consideration but solely to the extent the Consolidated Debtors receive distributions from the Designated Non-Debtor Affiliates on account of the Debtor Consolidated Claims without subordination, reduction or offset of any kind unless agreed to by the Plan Proponents or Plan Administrator, as applicable.

4.21.    <u>Classes 17A through 17n – Senior Designated Non-Debtor Affiliate Third-Party Guarantee Claims</u>.

(a)  <u>Separate Classes and Treatment</u>.  Classes 17A through 17n are separate independent Classes, but are described together in this <u>Section 4.21</u> of the Plan.

(b)  <u>Impairment and Voting</u>.  Classes 17A through 17n are impaired by the Plan. Each holder of an Allowed Caim in Classes 17A through 17n is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 7.2</u>.

(c) <u>Distributions</u>. Each holder of a Claim in Classes 17A through 17n is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if a Class in Classes 17A through 17n votes to accept the Plan, each holder of an Allowed Claim in such accepting Class shall be entitled to receive its Pro Rata Share of Plan Consideration, provided that such Pro Rata Share shall be determined using an amount equal to 70% of such Allowed Claim, which amount shall not be subject to further reduction as a consequence of substantive consolidation in accordance with <u>Article VI</u>, <u>Article VII</u>, and <u>Article VIII</u> of the Plan or Distributions received on account of the corresponding Primary Claim; *provided further*, *however*, that the rights of the Plan Proponents and the Plan Administrator to object to the Allowance of any Claim in any of Classes 17A through 17n which accept the Plan on any grounds other than substantive consolidation are fully reserved.

4.22.   <u>Classes 18A through 18n – General Designated Non-Debtor Affiliate Third-Party Guarantee Claims</u>.

(a) <u>Separate Classes and Treatment</u>. Classes 17A through 17n are separate independent Classes, but are described together in this <u>Section 4.22</u> of the Plan.

(b) <u>Impairment and Voting</u>. Classes 18A through 18n are impaired by the Plan. Each holder of an Allowed Claim in Classes 18A through 18n is entitled to vote to accept or reject the Plan solely for the purposes of effecting a settlement as set forth in <u>Section 7.2</u>.

(c) <u>Distributions</u>. Each holder of a Claim in Classes 18A through 18n is not entitled to a Distribution as a consequence of substantive consolidation; *provided*, *however*, that if a Class in Classes 18A through 18n votes to accept the Plan, each holder of an Allowed Claim in such accepting Class shall be entitled to receive its Pro Rata Share of Plan Consideration, provided that such Pro Rata Share shall be determined using an amount equal to 70% of such Allowed Claim, which amount shall not be subject to further reduction as a consequence of substantive consolidation in accordance with <u>Article VI</u>, <u>Article VII</u>, and <u>Article VIII</u> of the Plan or Distributions received on account of the corresponding Primary Claim; *provided further*, *however*, that the rights of the Plan Proponents and the Plan Administrator to object to the Allowance of any Claim in any of Classes 18A through 18n which accept the Plan on any grounds other than substantive consolidation are fully reserved.

4.23.   <u>Class 19 – Section 510(b) Claims</u>.

(a) <u>Impairment and Voting</u>. Class 19 is impaired by the Plan. Each holder of an Allowed Claim in Class 19 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b) <u>Distributions</u>. Holders of Allowed Claims in Class 19 shall not receive any Distributions on account of such Allowed Claims unless and until all holders of Allowed Claims other than Allowed Claims in Class 19 are fully satisfied in the Allowed amount of such Claims, in which case each holder of an Allowed Claim in Class 19 shall receive its Pro Rata Section 510(b) Claim Share of remaining Plan Consideration.

4.24.   <u>Class 20 – Equity Interests</u>.

(a) <u>Impairment and Voting</u>.  Class 20 is impaired by the Plan.  Each holder of an Equity Interest in Class 20 is not entitled to vote to accept or reject the Plan and is conclusively deemed to have rejected the Plan.

(b) <u>Distributions</u>.  On the Effective Date, all Equity Interests in LBHI shall be cancelled and one new share of LBHI's common stock shall be issued to the Plan Administrator which will hold such share for the benefit of the holders of such former Equity Interests consistent with their former economic entitlements; *provided*, *however*, that the Plan Administrator may not exercise any voting rights appurtenant thereto in conflict with <u>Article X</u> of the Plan.  Each holder of an Equity Interest in LBHI shall neither receive nor retain any property or interest in property on account of such Equity Interests; *provided*, *however*, that in the event that all Allowed Claims in Classes 1 through 19 have been satisfied in full in accordance with the Bankruptcy Code and the Plan, each holder of an Equity Interest in LBHI may receive its Pro Rata Equity Share of any remaining assets of the Debtors consistent with such holder's rights of priority of payment existing immediately prior to the Commencement Date.  The rights of the holders of former Equity Interests in LBHI shall be nontransferable.  Unless otherwise determined by the Plan Administrator, on the date that LBHI's Chapter 11 Case is closed, all such former Equity Interests in LBHI shall be deemed cancelled and of no force and effect provided that such cancellation does not adversely impact the Debtors' estates.

## ARTICLE V.
## Acceptance or Rejection of the Plan; Effect of
## <u>Rejection by One or More Classes of Claims or Equity Interests</u>

5.1.    <u>Classes Entitled to Vote</u>.  Except for Class 5A, Class 5B, Class 5C, Class 19 and Class 20, all Classes of Claims and Equity Interests are entitled to vote on the Plan subject to <u>Section 6.2</u>, <u>Section 7.2</u> and <u>Section 8.2</u>.

5.2.    <u>Class Acceptance Requirement</u>.  A Class of Claims shall have accepted the Plan for all purposes herein if at least the Requisite Amount of holders of such Claims have voted to accept the Plan.

5.3.    <u>Undivided Voting</u>.  To the extent an Allowed Primary Claim asserted against a Debtor and a corresponding Allowed Third-Party Guarantee Claim are controlled by the same Person of record on the Voting Record Date, such Person shall be required to vote both Claims in a like manner.  In the event that such Person does not vote both Claims in a like manner, then such Person will be deemed to have voted both Claims to accept the Plan.

5.4.    <u>Nonconsensual Confirmation</u>.  If any impaired Class of Claims entitled to vote on the Plan rejects the Plan, the Plan Proponents reserve the right to undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code.  With respect to impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Plan Proponents shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

## ARTICLE VI.
## Substantive Consolidation of the Consolidated Debtors

6.1.    <u>Substantive Consolidation of the Consolidated Debtors</u>.  The Plan and Disclosure Statement shall constitute a motion to substantively consolidate each Subsidiary Debtor with LBHI.  Accordingly, on the Effective Date, except as otherwise provided in the Plan, (a) for the purposes of making Distributions pursuant to the Plan and post-Effective Date governance, subject to <u>Section 11.7</u> of the Plan, all assets and liabilities of each Consolidated Debtor will be treated as though they are merged into and with the assets and liabilities of LBHI, (b) no Distributions will be made under the Plan on account of Consolidated Debtor Intercompany Claims, and (c) except to the extent set forth in <u>Section 4.9</u> of the Plan, Third-Party Guarantee Claims for which a Consolidated Debtor is the Primary Obligor on the corresponding Primary Claim will be deemed merged and eliminated, so that any claim against such Consolidated Debtor and any Guarantee thereof will be deemed to be one obligation of the Consolidated Debtors with respect to their consolidated estate.

6.2.    <u>Separate Classification for Settlement Purposes</u>.  Notwithstanding that the Plan seeks to substantively consolidate the Subsidiary Debtors, the Plan provides that holders of Claims in Classes 7A through 7n shall be entitled to vote on the Plan solely for the purposes of effecting a proposed settlement.  To the extent that a Class in Classes 7A through 7n accepts the Plan, the Plan and the settlements embodied herein shall become binding on the holders of Claims in such Class and the holders of Allowed Claims in such accepting Class shall be entitled to receive the Distributions set forth in <u>Section 4.9</u>.  Notwithstanding the designation of the Claims in Classes 7A through 7n as a Class separate from the corresponding Primary Claims, to the extent that a Class in Classes 7A through 7n rejects the Plan, each Claim in such Class shall be merged with its corresponding Primary Claim as a consequence of substantive consolidation and such rejecting Class 7A through 7n, if any, shall be deemed extinguished from the Plan.

## ARTICLE VII.
## Substantive Consolidation of Certain Designated Non-Debtor Affiliates

7.1.    <u>Substantive Consolidation of Certain Designated Non-Debtor Affiliates</u>.  The Plan and Disclosure Statement shall constitute a motion to substantively consolidate certain Designated Non-Debtor Affiliates with the Consolidated Debtors.  On the Effective Date, (a) except to the extent set forth in <u>Section 4.20</u> of the Plan, no Distributions will be made under the Plan on account of Designated Non-Debtor Affiliate Intercompany Claims, and (b) except to the extent set forth in <u>Section 4.21</u> and <u>Section 4.22</u> of the Plan, Third-Party Guarantee Claims for which a Designated Non-Debtor Affiliate is the Primary Obligor on the corresponding Primary Claim shall be deemed merged and eliminated, so that any claim against such Designated Non-Debtor Affiliate and any Guarantee thereof shall be deemed to be one obligation of the Consolidated Debtors with respect to their estates.  For the purposes of making Distributions and post-Effective Date governance, including as in <u>Article X</u>, if a Designated Non-Debtor Affiliate makes its assets available fully to the Plan Administrator for Distribution and management under the Plan, (x) subject to <u>Section 11.7</u> of the Plan, all assets and liabilities of the Designated Non-Debtor Affiliate will be treated as though they are merged into and with the assets and liabilities of the Consolidated Debtors, subject further to the rights of trust claimants or the statutory rights of customers pursuant to laws of the applicable local jurisdictions and (y) holders of Allowed

Claims against such Designated Non-Debtor Affiliate shall be entitled to a single distribution and the treatment set forth in Class 1, Class 2, Class 3, Class 11 or Class 19, as applicable. If the Designated Non-Debtor Affiliate refuses or is otherwise unable to make its assets available fully to the Plan Administrator for Distribution and management under the Plan, no holder of a Claim against the Designated Non-Debtor Affiliate (including any Third-Party Guarantee Claim except to the extent otherwise set forth in Section 7.2) shall be entitled to a Distribution under the Plan on account of such Claim and the Confirmation Order shall provide for such other relief necessary to give effect to the substantive consolidation, including the economic equivalent thereof, of such Designated Non-Debtor Affiliate.

7.2.    Separate Classification for Settlement Purposes.  Notwithstanding that the Plan seeks to substantively consolidate the Designated Non-Debtor Affiliates, the Plan provides that holders of Claims in Classes 16A through 16n, 17A through 17n and Classes 18A through 18n shall be entitled to vote on the Plan for the purposes of effecting a proposed settlement. If a Class in Classes 16A through 16n and the corresponding Classes in Classes 17A through 17n and Classes 18A through 18n accept the Plan (the "Accepting Designated Non-Debtor Affiliate Classes"), (a) such Designated Non-Debtor Affiliate shall not be substantively consolidated with the Consolidated Debtors, (b) the Plan and the settlements embodied herein shall become binding on the holders of Claims in the Accepting Designated Non-Debtor Affiliate Classes, (c) the holders of Allowed Claims in the Accepting Designated Non-Debtor Affiliate Classes shall be entitled to receive the Distributions set forth in Section 4.20, Section 4.21 and Section 4.22, respectively, and (d) holders of Claims against such Designated Non-Debtor Affiliate shall not be entitled to any Distributions under the Plan but shall instead retain their rights to receive distributions directly from such Designated Non-Debtor Affiliate. If a Class in Classes 16A through 16n or the corresponding Class in Classes 17A through 17n or Classes 18A through 18n votes to reject the Plan (the "Rejecting Designated Non-Debtor Affiliate Classes"), each Claim in the Rejecting Designated Non-Debtor Affiliate Classes shall be deemed eliminated as a consequence of substantive consolidation and the Rejecting Designated Non-Debtor Affiliate Classes shall be deemed extinguished from the Plan. If a Class in Classes 17A though 17n or Classes 18A through 18n votes to accept the Plan but the corresponding Class in Classes 16A through 16n votes to reject the Plan, holders of Claims in such accepting Class shall be entitled to receive the Distributions set forth in Section 4.21 or Section 4.22, as applicable, as a settlement notwithstanding substantive consolidation.

7.3.    Identification of Designated Non-Debtor Affiliates.  At any time prior to the entry of the Confirmation Order or such other time as may be ordered by the Bankruptcy Court, the Plan Proponents, in their sole discretion, may identify any Affiliate to be a Designated Non-Debtor Affiliate or declassify any previously identified Designated Non-Debtor Affiliate. To the extent the Plan Proponents declassify any Affiliate previously identified as a Designated Non-Debtor Affiliate, the rights of the Plan Proponents and the Plan Administrator to object to the Allowance of any Intercompany Claim of such Affiliate shall be fully preserved. In the event the Bankruptcy Court determines not to substantively consolidate a Designated Non-Debtor Affiliate, the corresponding Claims in the applicable Class in Classes 16A through 16n shall automatically be deemed to be Claims classified in Class 11 and Claims in Classes 17A through 17n and Classes 18A through 18n shall automatically be deemed to be Claims classified in Class 8 or Class 9, respectively.

## ARTICLE VIII.
## Substantive Consolidation of LBT and LBSN

8.1.    Substantive Consolidation of LBT and LBSN.  The Plan and Disclosure Statement shall constitute a motion to substantively consolidate each of LBT and LBSN with LBHI.  On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, (a) for the purposes of making Distributions and post-Effective Date governance, including as in Article X, all assets and liabilities of each of LBT and LBSN will be treated as though they are merged into and with the assets and liabilities of LBHI, subject to Section 11.7 of the Plan, (b) except to the extent set forth in Section 4.16 and Section 4.17 of the Plan, no Distributions will be made under the Plan on account of each of LBT Intercompany Claims and LBSN Intercompany Claims, (c) except to the extent set forth in Section 4.18 and Section 4.19 of the Plan, Third-Party Guarantee Claims for which either LBT or LBSN is the Primary Obligor on the corresponding Primary Claim will be deemed merged and eliminated, so that any claim against either LBT or LBSN and any Guarantee thereof will be deemed to be one obligation of the Consolidated Debtors with respect to their estates and (d) holders of Allowed Claims against LBT and LBSN shall be entitled to a single distribution and the treatment set forth in Class 1, Class 2, Class 4, Class 11, Class 13 or Class 19, as applicable.

8.2.    Separate Classification for Settlement Purposes.  Notwithstanding that the Plan seeks to substantively consolidate each of LBT and LBSN, the Plan provides that holders of Claims in Class 14A, Class 14B, Class 15A and Class 15B shall be entitled to vote on the Plan for the purpose of effecting a proposed settlement.  If both Class 14A and Class 15A accept the Plan, (a) LBT shall not be substantively consolidated with LBHI, (b) the Plan and the settlements embodied herein shall become binding on the holders of Claims in Class 14A and Class 15A, (c) the holders of Allowed Claims in Class 14A and Class 15A shall be entitled to receive the Distributions set forth in Section 4.16 and Section 4.18, respectively, and (d) holders of Claims against LBT shall not be entitled to any Distributions under the Plan but shall instead retain their rights to receive distributions directly from LBT.  Similarly, if both Class 14B and Class 15B accept the Plan, (a) LBSN shall not be substantively consolidated with LBHI, (b) the Plan and the settlements embodied herein shall become binding on the holders of Claims in Class 14B and Class 15B, (c) the holders of Allowed Claims in Class 14B and Class 15B shall be entitled to receive the Distributions set forth in Section 4.17 and Section 4.19, respectively, and (d) holders of Claims against LBSN shall not be entitled to any Distributions under the Plan but shall instead retain their rights to receive distributions directly from LBSN.  If either Class 14A or Class 15A rejects the Plan, each Claim in both Class 14A and Class 15A shall be deemed eliminated as a consequence of substantive consolidation and both Class 14A and Class 15A shall be deemed extinguished from the Plan.  If either Class 14B or Class 15B rejects the Plan, each Claim in both Class 14B and Class 15B shall be deemed eliminated as a consequence of substantive consolidation and both Class 14B and Class 15B shall be deemed extinguished from the Plan.

8.3.    Distributions to Creditors of LBT and LBSN.  If both Class 14A and Class 15A vote to accept the Plan, with respect to the proceeds of Distributions under the Plan, LBT shall make any and all distributions in its Foreign Proceeding on account of Primary Claims against LBT directly from an account (or accounts) located in the State of New York.  If both Class 14B and Class 15B vote to accept the Plan, with respect to the proceeds of Distributions under the Plan, LBSN shall make any and all distributions in its Foreign Proceeding on account of Primary

Claims against LBSN directly from an account (or accounts) located in the State of New York. The Confirmation Order shall provide the Consolidated Debtors with a prejudgment attachment lien against any and all distributions to be made to any Non-Consolidated Affiliate or Designated Non-Debtor Affiliate in respect of any amounts owing by such Non-Consolidated Affiliate or Designated Non-Debtor Affiliate to a Consolidated Debtor or Debtor Controlled Entity.

## ARTICLE IX.
## Implementation of the Plan

9.1.    Plan Administrator.

(a)    Service and Removal.  The Plan Administrator shall report to the Board of Directors as reconstituted on the Effective Date and thereafter may be replaced by the Board of Directors in the Board of Directors' sole discretion.  If the Plan Administrator resigns or is terminated, the Board of Directors shall select a new Plan Administrator.

(b)    Authority.  The Plan Administrator shall have the authority and right on behalf of the Consolidated Debtors, subject to the oversight of the Board of Directors without the need for Bankruptcy Court approval (unless otherwise indicated), to carry out and implement all provisions of the Plan, including, without limitation, to:

(i)    control and effectuate the Claims reconciliation process, including to object to, seek to subordinate, compromise or settle any and all Claims against the Debtors;

(ii)    make Distributions to holders of Allowed Claims in accordance with the Plan;

(iii)    exercise its reasonable business judgment to direct and control the wind down, liquidation and/or abandoning of the assets of the Consolidated Debtors and assets of LBT, LBSN and the Designated Non-Debtor Affiliates made available as set forth in Section 7.1 or Section 8.1, as the case may be;

(iv)    prosecute all Litigation Claims, including Avoidance Actions, on behalf of the Consolidated Debtors, and to elect not to pursue any Litigation Claims and whether and when to compromise, settle, abandon, dismiss, or otherwise dispose of any such Litigation Claims, as the Plan Administrator may determine is in the best interests of the Consolidated Debtors;

(v)    make payments to existing professionals who will continue to perform in their current capacities;

(vi)    retain professionals to assist in performing its duties under the Plan;

(vii)    hire and terminate employees;

(viii)    maintain the books and records and accounts of the Consolidated Debtors;

(ix)    invest Cash of the Consolidated Debtors, including any Cash proceeds realized from the liquidation of any assets of the Consolidated Debtors, including any Litigation Claims, and any income earned thereon;

(x)    incur and pay reasonable and necessary expenses in connection with the performance of duties under the Plan, including the reasonable fees and expenses of professionals retained by the Plan Administrator;

(xi)    administer each Debtor's tax obligations, including (i) filing and paying tax returns, (ii) requesting, if necessary, an expedited determination of any unpaid tax liability of each Debtor or its estate under Bankruptcy Code section 505(b) for all taxable periods of such Debtor ending after the Commencement Date through the liquidation of such Debtor as determined under applicable tax laws and (iii) representing the interest and account of each Debtor or its estate before any taxing authority in all matters including, without limitation, any action, suit, proceeding or audit;

(xii)    prepare and file any and all informational returns, reports, statements, returns or disclosures relating to the Debtors that are required by any Governmental Unit or applicable law; and

(xiii)    determine whether to create a Liquidating Trust pursuant to Section 14.1 and which assets to transfer to such Liquidating trust or to issue New Securities in accordance with Section 9.5.

(c)    No Liability of Plan Administrator.  The Plan Administrator shall have no liability whatsoever for any acts or omissions in its capacity as Plan Administrator to the Debtors, the Designated Non-Debtor Affiliates, LBT, LBSN or holders of Claims against or Equity Interests in the Debtors, the Designated Non-Debtor Affiliates, LBT or LBSN other than for gross negligence or willful misconduct of the Plan Administrator.  The Consolidated Debtors shall indemnify and hold harmless the Plan Administrator for any losses incurred in such capacity, except to the extent such losses were the result of the Plan Administrator's gross negligence or willful misconduct.

9.2.    Redistribution of Subordinated Unsecured Claims Recoveries.  To give effect to agreements of holders of Subordinated Claims, all Distributions under the Plan made by the Consolidated Debtors shall be calculated as if each holder of an Allowed Claim in Class 5A, Class 5B and Class 5C were to receive its Pro Rata Share of Plan Consideration from the Consolidated Debtors, and, in the case of each holder of an Allowed Claim in Class 5A and Class 5B, its Pro Rata Share of Subordinated Class 5C Distribution; *provided*, *however*, that:

(a)  the Subordinated Class 5A Distribution shall be automatically distributed to holders of Allowed Claims in Class 3 and Class 10 pursuant to Section 4.3 and Section 4.12, respectively, until all such Claims are satisfied in full;

(b)  the Subordinated Class 5B Distribution shall be automatically distributed to holders of Allowed Claims in Class 3, Class 10, Class 12 and any Class of Classes 8A through 8n that votes to reject the Plan, pursuant to <u>Section 4.3</u>, <u>Section 4.12</u>, <u>Section 4.14</u> and <u>Section 4.10</u>, respectively, until all such Claims are satisfied in full; and

(c)  the Subordinated Class 5C Distribution shall be automatically distributed to holders of Allowed Claims in Class 3, Class 5A, Class 5B, Class 10, Class 12 and any Class of Classes 8A through 8n that votes to reject the Plan, pursuant to <u>Section 4.3</u>, <u>Section 4.5</u>, <u>Section 4.6</u>, <u>Section 4.12</u>, <u>Section 4.14</u> and <u>Section 4.10</u>, respectively, until all such Claims are satisfied in full; *provided*, *however*, that any portion of the Subordinated Class 5C Distribution payable to holders of Allowed Claims in Class 5A shall be automatically redistributed to holders of Allowed Claims in Class 3 and Class 10 pursuant to <u>Section 9.2(a)</u> until all such Claims are satisfied in full; *provided*, *further*, that any portion of the Subordinated Class 5C Distribution payable to holders of Allowed Claims in Class 5B shall be automatically distributed to holders of Allowed Claims in Class 3, Class 10, Class 12 and any Class of Classes 8A through 8n that votes to reject the Plan, pursuant to <u>Section 9.2(b)</u>, until all such Claims are satisfied in full.

9.3.    <u>Special Provisions Regarding LBT</u>.  For the purpose of settling LBT Intercompany Claims and Third-Party Guarantee Claims for which LBT is the Primary Obligor on the corresponding Primary Claims, if both Class 14A and Class 15A accept the Plan, all Distributions under the Plan shall be calculated as if each holder of an Allowed Third-Party Guarantee Claim in Class 15A were to receive its Pro Rata Share of a Distribution of Plan Consideration; *provided*, *however*, that 50% of the Aggregate LBT Guarantee Claims Distribution shall automatically be distributed to holders of Allowed Claims in Class 3 and Class 4 in accordance with <u>Section 4.18</u> of the Plan.

9.4.    <u>Special Provisions Regarding LBSN</u>.  For the purpose of settling LBSN Intercompany Claims and Third-Party Guarantee Claims for which LBSN is the Primary Obligor on the corresponding Primary Claims, if both Class 14B and Class 15B accept the Plan, all Distributions under the Plan shall be calculated as if each holder of an Allowed Third-Party Guarantee Claim in Class 15B were to receive its Pro Rata Share of a Distribution of Plan Consideration; *provided*, *however*, that 50% of the Aggregate LBSN Guarantee Claims Distribution shall automatically be distributed to holders of Allowed Claims in Class 3 and Class 4 in accordance with Section 4.19 of the Plan.

9.5.    <u>Creation and Distribution of New Securities</u>.  In the discretion of the Plan Administrator, the Consolidated Debtors may form new (or utilize existing) entities that shall principally hold certain existing assets of the Consolidated Debtors and, in connection therewith, create New Securities for Distribution under the Plan, which may include one or more separately managed REIT-Cos. to hold certain real estate assets of the Consolidated Debtors and a separate entity to manage the remaining assets of the Consolidated Debtors.  In the event that the Plan Administrator determines to make multiple types of New Securities available to holders of Allowed Claims and Equity Interests, each such holder shall receive of each type of New Security its pro rata share.

9.6.    <u>Allowance of Non-Consolidated Intercompany Claims</u>.  Each holder of a Non-Consolidated Intercompany Claim shall have an Allowed Non-Consolidated Intercompany

Claim against a Consolidated Debtor only if such holder (a) recognizes and honors each of the Consolidated Debtors' and Consolidated-Debtor-Controlled Entities' Claims, if any, against such holder as determined by the Bankruptcy Court without giving effect to subordination, recharacterization or offset and (b) agrees not to set off such Allowed Non-Consolidated Intercompany Claim against any Claim of a Consolidated Debtor or Consolidated-Debtor-Controlled Entity against such holder.

9.7.    <u>Indenture Trustee, the Creditors' Committee Members and the Plan Proponents</u>. Subject to the occurrence of the Effective Date, the reasonable fees and expenses (including attorneys' fees) of (i) the indenture trustees with respect to the Senior Notes (but solely to the extent such fees were incurred in connection with advancing the interests of the Senior Notes), (ii) the individual members of the Creditors' Committee, in each case, incurred in their capacities as indenture trustees or members of the Creditors' Committee, and (iii) the Plan Proponents, respectively, shall be Allowed as Administrative Expense Claims and shall be paid by the Consolidated Debtors.

**ARTICLE X.**
**<u>Corporate Governance</u>**

10.1.    <u>Corporate Existence</u>.  After the Effective Date, the Plan Administrator may (a) decide to (i) maintain each Debtor as a corporation in good standing until such time as all aspects of the Plan pertaining to such Debtor have been completed, or (ii) at such time as the Plan Administrator considers appropriate and consistent with the implementation of the Plan pertaining to such Debtor, dissolve such Debtor or merge such Debtor with another Debtor and complete the winding up of such Debtor without the necessity for any other or further actions to be taken by or on behalf of such dissolving Debtor or its shareholder or any payments to be made in connection therewith subject to the filing of a certificate of dissolution with the appropriate governmental authorities (including, without limitation, the transfer of all or part of the assets of such Debtor to a liquidating trust), or (iii) dissolve any Debtor-Controlled Entity and complete the winding-up of such Debtor-Controlled Entity in accordance with applicable law; *provided*, *however*, that the foregoing does not limit the Plan Administrator's ability to otherwise abandon an interest in a Debtor-Controlled Entity, and (b) resolve Intercompany Claims in its sole discretion.

10.2.    <u>Management and Administration on a Consolidated Basis</u>.  As a consequence of substantive consolidation, the Consolidated Debtors shall be managed and administered on a consolidated basis.  Any fiduciary duties that the directors and officers of the Consolidated Debtors may owe to creditors or shareholders, as the case may be, shall be owed on a consolidated basis.

10.3.    <u>Board of Directors</u>.

(a)  As of the Effective Date, the existing Board of Directors shall be terminated and a new Board of Directors shall be selected consisting of seven (7) members.  The Debtors and the Creditors' Committee shall appoint one (1) director each.  The remaining five (5) members of the Board of Directors shall be selected from a panel of nominees by a majority vote determined by the amount of Allowed Claims voting in favor of the Plan.  The Debtors and the

Creditors' Committee may each nominate three (3) individuals to the panel.  Any holder or group of holders holding in the aggregate not less than $2.5 billion of Claims Allowed as of the Voting Record Date may nominate one (1) individual to the panel; *provided*, *however*, that such holder or group of holders may also nominate one (1) additional individual to the panel for each additional $5 billion of Claims held by such holder or group of holders and Allowed as of the Voting Record Date.  Vacancies on the Board of Directors following the Effective Date shall be filled by vote of the remaining members of the Board of Directors.

(b)  The new Board of Directors shall have full discretion with respect to the continued retention or termination of any existing managers or advisors to the Consolidated Debtors.

10.4.  <u>Wind-Down</u>.  The wind-down and liquidation of each of the Consolidated Debtors' assets (as determined for federal income tax purposes) shall occur over a period of 3 years after the Effective Date, subject to receiving a private letter or other equivalent guidance from the IRS permitting a longer period of time without adversely impacting the status of the Plan for federal income tax purposes (it being understood that such liquidation may include the transfer of all or part of the assets of the Debtors to one or more liquidating trusts within the meaning of Treas. Reg. § 301.7701-4).

10.5.  <u>Certificate of Incorporation and By-Laws</u>.  As of the Effective Date, the certificate of incorporation and by-laws of each Debtor shall be amended to the extent necessary to carry out the provisions of the Plan.  The amended certificate of incorporation and by-laws of such Debtor (if any) shall be included in the Plan Supplement.

10.6.  <u>Stock Trading Restrictions</u>.  The restrictions imposed by the Stock Trading Restrictions Order shall remain effective and binding through the closing of LBHI's Chapter 11 Case.

## ARTICLE XI.
## Provisions Regarding Distributions Under the Plan

11.1.  <u>Distributions of Plan Consideration</u>.  On the Effective Date, or as soon thereafter as practicable, after the reservation of funds for or satisfaction in full of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims and Allowed Secured Claims (to the extent the Consolidated Debtors determine to pay such Allowed Secured Claim in Cash) against a Debtor, the Consolidated Debtors shall make a Distribution of its Plan Consideration in accordance with the provisions of the Plan to holders of Allowed Claims.  After the initial Distribution, the Plan Administrator on behalf of the Consolidated Debtors shall make Distributions of Plan Consideration in accordance with the Plan to holders of Allowed Claims not less frequently than semi-annually on March 30 and September 30 of each year, provided that each such Distribution in the aggregate is not less than $10,000,000.  Notwithstanding the foregoing, the Plan Administrator may determine, in its sole discretion, (a) to make a Distribution that is less than $10,000,000 in the aggregate, or (b) not to make a Distribution to the holder of an Allowed Claim on the basis that it has not yet determined whether to object to such Claim and such Claim shall be treated as a Disputed Claim for purposes of Distributions under the Plan until the Plan Administrator determines not to object to such Claim (or the time to

object to Claims expires), agrees with the holder of such Claim to allow such Claim in an agreed upon amount or objects to such Claim and such Claim is Allowed by a Final Order.

11.2.   <u>Minimum Distribution and Manner of Payment</u>.  No payment of Cash of less than $100 shall be made to any holder of an Allowed Claim unless a request therefor is made in writing to the Plan Administrator.  Unless the Person receiving a Distribution under the Plan agrees otherwise, any Distribution under the Plan shall be made in United States Dollars and, at the election of the Plan Administrator, by check on a domestic bank or by wire transfer from a domestic bank.  Distributions to foreign creditors may, in addition to the foregoing, be made, at the option of the Plan Administrator, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

11.3.   <u>Distributions Free and Clear</u>.  Except as otherwise provided herein, any Distributions under the Plan shall be free and clear of any Liens, Claims and encumbrances, and no other entity, including the Debtors or the Plan Administrator shall have any interest, legal, beneficial or otherwise, in assets transferred pursuant to the Plan.

11.4.   <u>Delivery of Distributions and Undeliverable Distributions</u>.  Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proof of claim filed by the holder of such Allowed Claim or on the Schedules filed with the Bankruptcy Court, unless the address on such Schedules is superseded by a new address as set forth (a) on a proof of claim filed by a holder of an Allowed Claim or (b) in another writing notifying the Plan Administrator (at the addresses set forth in <u>Section 19.8</u>) of a change of address.  If any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Plan Administrator is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder at its then-current address, without interest.  All demands for undeliverable Distributions shall be made on or before six (6) months after the date such undeliverable Distribution was initially made.  Thereafter, the amount represented by such undeliverable Distribution shall irrevocably revert to the Consolidated Debtors and any Claim in respect of such undeliverable Distribution shall be discharged and forever barred from assertion against any Debtor or its respective property.

11.5.   <u>Withholding and Reporting Requirements</u>.  In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Plan Administrator shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all Distributions under the Plan shall be subject to any such withholding or reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations, on account of such Distribution.  The Plan Administrator has the right, but not the obligation, to not make a Distribution until such holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.  The Plan Administrator may require, as a condition to receipt of a Distribution, that the holder of an Allowed Claim complete and return a Form W-8 or W-9, as applicable, to each such holder.  If the Plan Administrator makes such a request and the holder fails to comply before the date that is 180 days after the request is made,

the amount of such Distribution shall irrevocably revert to the Consolidated Debtors and any Claim in respect of such Distribution shall be discharged and forever barred from assertion against such Debtor or its respective property.

11.6.   <u>Time Bar to Cash Payment Rights</u>.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof. Requests for reissuance of any check shall be made to the Plan Administrator by the holder of the Allowed Claim to whom such check originally was issued.  Any claim in respect of such a voided check shall be made on or before 90 days after the expiration of the 90-day period following the date of issuance of such check.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Consolidated Debtor and any Claim in respect of such voided check shall be discharged and forever barred from assertion against any Debtor and its property.

11.7.   <u>Setoffs and Recoupment</u>.  The Consolidated Debtors may, but shall not be required to, set off against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim any Claims of any nature whatsoever that any Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Consolidated Debtors of any such Claim any Debtors may have against such claimant.  Furthermore, the substantive consolidation of any Debtor with any other Debtor or other Affiliate pursuant to the Plan shall not create mutuality for purposes of determining setoff rights of any holder of any Claim or provide or expand any rights of subordination.

11.8.   <u>Net Distributions to Foreign Affiliates</u>.  In the event a Distribution to a Foreign Affiliate (the "<u>Receiving Affiliate</u>") would affect the amount of Distributions the Consolidated Debtors receive from another Foreign Affiliate (the "<u>Paying Foreign Affiliate</u>") as a consequence of such Paying Foreign Affiliate being a creditor of the Receiving Affiliate, the Consolidated Debtors may, but are not required to, reduce or net any Distribution to a Receiving Affiliate by the anticipated distribution the Paying Foreign Affiliate is due to receive from the Receiving Affiliate.

11.9.   <u>Allocation of Distributions</u>.  Distributions to any holder of an Allowed Claim shall be allocated first to the principal portion of any such Allowed Claim (as determined for federal income tax purposes), and, only after the principal portion of any such Allowed Claim is satisfied in full, to any portion of such Allowed Claim comprising interest (but solely to the extent that interest is an allowable portion of such Allowed Claim).

11.10.  <u>Maximum Distribution</u>.  In no event shall any holder of any Allowed Claim receive Distributions under the Plan in excess of the Allowed amount of such Claim, including after taking into account amounts received from sources other than the Debtors on account of such Allowed Claim.

## ARTICLE XII.
## Procedures for Treating Disputed Claims

12.1.    <u>Objections</u>.  As of the Effective Date, objections to, and requests for estimation of, all Claims against the Debtors may be interposed and prosecuted only by the Plan Administrator.  Objections to and requests for estimation of Claims shall be filed with the Court and served on the claimant on or before the later of (a) the date that is 2 years after the Effective Date and (b) such later date as may be fixed by the Bankruptcy Court for cause shown.

12.2.    <u>Third-Party Guarantee Claims in Classes 8A through 8n and Classes 9A through 9n</u>.  As of the Effective Date and notwithstanding any prior determination by the Bankruptcy Court, each Third-Party Guarantee Claim in Classes 8A through 8n and Classes 9A through 9n shall be deemed Disputed unless and until (a) (i) each  Debtor with Claims against the applicable Primary Obligor has received all distributions on account of such Claims to the extent enforceable as determined by the Bankruptcy Court without being subordinated (statutorily or otherwise), recharacterized, set off or not honored in any other way and (ii) the applicable holder of such Third-Party Guarantee Claim has demonstrated that it (or the holder of the Primary Claim) has received all distributions it is or will ultimately be entitled to receive on account of its Claims against the Primary Obligor, or (b) the Class containing such Third-Party Guarantee Claim has voted to accept the Plan; *provided further*, *however*, that the rights of the Plan Proponents and the Plan Administrator to object to the Allowance of any Third-Party Guarantee Claim in any of Classes 8A through 8n and Classes 9A through 9n which accept the Plan on any grounds other than the satisfaction of the conditions set forth in subclauses (a)(i) and (ii) are fully reserved.

12.3.    <u>No Distributions Pending Allowance</u>.  Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no Distribution shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

12.4.    <u>Estimation of Claims</u>.  An Estimation Order may be used to calculate and to establish the amount of the Disputed Claims Estimated Amount.  The Plan Administrator, or the Plan Proponents, may, at any time, request that the Bankruptcy Court estimate any Disputed Claim regardless of whether the Plan Administrator or Plan Proponents have previously objected to such Claim, and the Bankruptcy Court will retain jurisdiction to estimate any Disputed Claim at any time during litigation concerning any objection to any Disputed Claim, including during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount may, as determined by the Bankruptcy Court, constitute (a) the Allowed amount of such Disputed Claim, (b) a maximum limitation on such Disputed Claim, or (c) in the event such Disputed Claim is estimated in connection with the estimation of other Claims within the same Class, a maximum limitation on the aggregate amount of Allowed Claims on account of such Disputed Claims so estimated; *provided*, *however*, that if the estimate constitutes the maximum limitation on a Claim, or on more than one such Claim within a Class of Claims, as applicable, the Plan Administrator or the Plan Proponents, as the case may be, may elect to pursue supplemental proceedings to object to any ultimate allowance of any such Disputed Claim.  All of the objection, estimation, settlement and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one

another.  Disputed Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

12.5.  <u>Resolution of Disputed Claims</u>.  On and after the Effective Date, the Plan Administrator shall have the authority to settle or otherwise resolve or withdraw any objections to Claims and to compromise, settle or otherwise resolve any Disputed Claims.  Notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, from and after the Effective Date, the Plan Administrator shall have the authority to settle or compromise all Claims and Disputed Claims without further review or approval of the Bankruptcy Court, other than the settlement or compromise of a Claim or Disputed Claim where the proposed Allowed amount of such Claim is greater than or equal to $10,000,000.  On the date of the first Distribution that is at least sixty (60) days after the date a Disputed Claim becomes an Allowed Claim, the Plan Administrator shall remit, solely from the Disputed Claims Reserve to the holder of such Allowed Claim, Cash equal to the amount such holder would have received as of that date under the Plan if the Allowed portion of the Disputed Claim had been an Allowed Claim as of the Effective Date.  Upon the occurrence of each Distribution Date after the first Distribution Date, each holder of a Claim that becomes an Allowed Claim subsequent to the immediately preceding Distribution Date shall have recourse solely to the Plan Consideration reserved in the Disputed Claims Reserve to recover Distributions that such holder would have been entitled to receive through the prior Distribution Date.  To the extent that a Disputed Claim against a Consolidated Debtor is not Allowed or becomes an Allowed Claim in an amount less than the amount of the Disputed Claim set forth in the proof of claim, or as previously estimated by the Bankruptcy Court, the Cash held in the Disputed Claims Reserve on account of such Claim but not distributed to the holder of such Claim in accordance with this <u>Section 12.5</u> shall be released from the Disputed Claims Reserve and become Plan Consideration.  Notwithstanding anything herein to the contrary, the ADR Procedures shall remain in effect unless and until the Plan Administrator determines otherwise.

12.6.  <u>No Interest</u>.  Holders of Disputed Claims shall not be entitled to interest if such Disputed Claim becomes an Allowed Claim unless the holder of such Allowed Claim is entitled to postpetition interest on such Claim under the Bankruptcy Code and the Plan.

12.7.  <u>Disputed Claims Reserve</u>.  On the Effective Date, the Plan Administrator shall establish a Disputed Claims Reserve and fund such Disputed Claims Reserve with Cash in the amount of the Disputed Claim Estimated Amount.  Such reserved Cash will be transferred to the Plan Administrator to be held for holders of Disputed Claims.  If the Plan Administrator determines in its sole discretion that the value of the Consolidated Debtors' assets other than Cash exceeds the amount of Cash reserved in the Disputed Claims Reserve, the Plan Administrator may in its discretion release such Cash for Distribution to holders of Allowed Claims and fund the Disputed Claims Reserve with Plan Consideration when realized from the future disposition of assets or other available sources.

## ARTICLE XIII.
## Payment Notes

13.1.  <u>Issuance and Distribution</u>.  Subject to <u>Section 13.7</u>, on or after the Effective Date, the Consolidated Debtors shall issue Payment Certificates for distribution by the Plan

Administrator for the benefit of holders of Allowed Claims in all Classes other than Class 1, Class 2, Class 5A, Class 5B, Class 5C, Class 19 and Class 20.

13.2.    Transferability of Payment Notes.  Payment Notes shall be freely transferable to the full extent permitted under law.  From and after the Effective Date, Payment Notes shall evidence Allowed Claims and the transfer of a Payment Note shall transfer the corresponding Allowed Claim evidenced thereby.  Holders of Payment Notes shall be the only Persons entitled to Distributions under the Plan on account of such corresponding Allowed Claims.

13.3.    Fractional Distributions.  Payment Notes shall be denominated in whole dollar amounts and no fractional Payment Notes shall be issued.  Allowed Claims shall be rounded down to the nearest dollar for the purpose of determining the amount of Payment Notes to be distributed to any holder of an Allowed Claim.

13.4.    Paying Agent.  The Plan Administrator shall appoint a paying agent which shall be charged with making Distributions to holders of Payment Notes under the Plan, maintaining a register for the Payment Notes and performing such other duties in respect of the Payment Notes as may be required by law.

13.5.    Exemption from Registration.  The issuance and distribution of the Payment Notes shall not be registered under section 5 of the Securities Act or any state or local law on the basis that the issuance and distribution of the Payment Notes does not involve an "offer" or "sale" of securities within the meaning of section 5 of the Securities Act, including Rule 145 promulgated thereunder, or any state or local law.  The Payment Notes issued and distributed on such basis shall not be "restricted securities" within the meaning of Rule 144(a)(3) under the Securities Act.  To the extent that the Bankruptcy Court determines that the issuance and distribution of the Payment Notes involves an "offer" or "sale," the issuance and distribution of Payment Notes shall be exempt from registration under section 5 of the Securities Act and any state or local law requiring registration pursuant to section 1145 of the Bankruptcy Code.  To the extent that the Bankruptcy Court determines that Payment Notes cannot be distributed pursuant to section 1145 of the Bankruptcy Code, the Payment Notes shall be issued and distributed to Accredited Investors only pursuant to the exemption from registration under section 5 of the Securities Act provided by section 4(2) of the Securities Act, or any other available exemption from registration under the Securities Act, as applicable.

13.6.    Deemed Transfer to DTC.  Subject to satisfying DTC's issue eligibility requirements, the Consolidated Debtors will deposit the Payment Notes with DTC (except to the extent that such deposit is not practical or advisable with respect to any particular Payment Notes).  The ownership of Allowed Claims will be deemed transferred to DTC with respect to those Payment Notes registered in the name DTC or its nominee; provided that the rights of holders of Payment Notes shall be reflected through beneficial ownership of Payment Notes in accordance with DTC's rules and practices.  Such transfer shall be deemed to be in compliance with Federal Rule of Bankruptcy Procedure 3001(e).

13.7.    Discretion of Plan Administrator.  Payment Notes shall be issued and distributed pursuant to this Article XIII unless the Plan Administrator determines in its sole discretion that such issuance and distribution would be inadvisable or impractical.  In the event the Plan

Administrator makes such determination, the provisions of this Article XIII shall have no force or effect.

## ARTICLE XIV.
## Liquidating Trust

14.1.    Execution of Liquidating Trust Agreement.  After the Effective Date, and only if the Plan Administrator determines that one or more Liquidating Trusts are in the best interests of one or more Consolidated Debtors and holders of Allowed Claims against and Equity Interests in such Consolidated Debtors, the Plan Administrator and a Liquidating Trustee shall execute a Liquidating Trust Agreement, and shall take all other necessary steps to establish a Liquidating Trust and Liquidating Trust Interests therein, which shall be for the benefit of Liquidating Trust Beneficiaries. In the event of any conflict between the terms of this Section 14.1 and the terms of a Liquidating Trust Agreement as such conflict relates to the establishment of a Liquidating Trust, the terms of this Section 14.1 shall govern. A Liquidating Trust Agreement may provide powers, duties and authorities in addition to those explicitly stated herein, but only to the extent that such powers, duties, and authorities do not affect the status of a Liquidating Trust as a "liquidating trust" for United States federal income tax purposes.

14.2.    Purpose of the Liquidating Trust.  Each Liquidating Trust shall be established for the sole purpose of liquidating and distributing the assets of the Consolidated Debtor that contributed to such Liquidating Trust in accordance with Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

14.3.    Liquidating Trust Assets.  Each Liquidating Trust shall consist of Liquidating Trust Assets.  After the creation of a Liquidating Trust pursuant to Section 14.1 of the Plan, the Plan Administrator shall transfer all of the Liquidating Trust Assets to a Liquidating Trust. Liquidating Trust Assets may be transferred subject to certain liabilities, as provided in a Liquidating Trust Agreement.  Such transfer shall be exempt from any stamp, real estate transfer, mortgage reporting, sales, use or other similar tax pursuant to section 1146(a) of the Bankruptcy Code.

14.4.    Administration of the Liquidating Trust.  Each Liquidating Trust shall be administered by a Liquidating Trustee pursuant to a Liquidating Trust Agreement and the Plan. In the event of an inconsistency between the Plan and a Liquidating Trust Agreement as such conflict relates to anything other than the establishment of a Liquidating Trust, the Liquidating Trust Agreement shall control.

14.5.    Liquidating Trustee's Tax Power for Consolidated Debtors.  A Liquidating Trustee shall have the same authority in respect of all taxes of the Consolidated Debtors, and to the same extent, as if the Liquidating Trustee were the Consolidated Debtor.

14.6.    Cash Investments.  A Liquidating Trustee may invest Cash (including any earnings thereon or proceeds therefrom); *provided*, *however*, that such investments are investments permitted to be made by a "liquidating trust" within the meaning of Treas. Reg. § 301.7701-4(d), as reflected therein, or under applicable IRS guidelines, rulings or other controlling authorities.

14.7.    <u>Distribution of Liquidating Trust Interests</u>.  A Liquidating Trustee is required to distribute to the holders of Allowed Claims on account of their Liquidating Trust Interests, on a semi-annual basis, all Available Cash (including any Cash received from the Consolidated Debtors and treating any permissible investment as Cash for purposes of this <u>Section 14.7</u>), less such amounts that may be reasonably necessary to (a) meet contingent liabilities and to maintain the value of the Liquidating Trust Assets during liquidation, (b) pay reasonable incurred or anticipated expenses (including, without limitation, any taxes imposed on or payable by the Consolidated Debtors or Liquidating Trust or in respect of the Liquidating Trust Assets), or (c) satisfy other liabilities incurred or anticipated by such Liquidating Trust in accordance with the Plan or Liquidating Trust Agreement; *provided*, *however*, that such Liquidating Trustee shall not be required to make a Distribution pursuant to this <u>Section 14.7</u> of the Plan if such Liquidating Trustee determines that the expense associated with making the Distribution would likely utilize a substantial portion of the amount to be distributed, thus making the Distribution impractical.

14.8.    <u>Federal Income Tax Treatment of Liquidating Trust</u>.  For all United States federal income tax purposes, all parties (including, without limitation, the Consolidated Debtors, a Liquidating Trustee and Liquidating Trust Beneficiaries) shall treat the transfer of Liquidating Trust Assets to a Liquidating Trust as (1) a transfer of Liquidating Trust Assets (subject to any obligations relating to those assets) directly to Liquidating Trust Beneficiaries (other than to the extent Liquidating Trust Assets are allocable to Disputed Claims), followed by (2) the transfer by such beneficiaries to a Liquidating Trust of Liquidating Trust Assets in exchange for Liquidating Trust Interests. Accordingly, Liquidating Trust Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of Liquidating Trust Assets (other than such Liquidating Trust Assets as are allocable to Disputed Claims). The foregoing treatment shall also apply, to the extent permitted by applicable law, for state and local income tax purposes.

14.9.    <u>Tax Reporting</u>.

(a)  A Liquidating Trustee shall file tax returns for a Liquidating Trust treating such Liquidating Trust as a grantor trust pursuant to Treas. Reg. § 1.671-4(a) and in accordance with this Section 14.9(a). A Liquidating Trustee also shall annually send to each holder of a Liquidating Trust Interest a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for U.S. federal income tax purposes and will instruct all such holders to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such holders' underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns.

(b)  Allocations of Liquidating Trust taxable income among Liquidating Trust Beneficiaries (other than taxable income allocable to any assets allocable to, or retained on account of, Disputed Claims) shall be determined by reference to the manner in which an amount of Cash representing such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidating Trust had distributed all its assets (valued at their tax book value, other than assets allocable Disputed Claims) to the holders of Liquidating Trust Interests, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from a Liquidating Trust. Similarly, taxable loss of a Liquidating Trust shall be allocated by reference to the manner in

which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets. The tax book value of Liquidating Trust Assets for the purpose of this paragraph shall equal their fair market value on the date Liquidating Trust Assets are transferred to a Liquidating Trust, adjusted in accordance with tax accounting principles prescribed by the IRC, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

(c)   As soon as reasonably practicable after Liquidating Trust Assets are transferred to a Liquidating Trust, a Liquidating Trustee shall make a good faith valuation of Liquidating Trust Assets. Such valuation shall be made available from time to time to all parties to the Liquidating Trust (including, without limitation, the Debtors and Liquidating Trust Beneficiaries), to the extent relevant to such parties for tax purposes, and shall be used consistently by such parties for all United States federal income tax purposes.

(d)   Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by a Liquidating Trustee of a private letter ruling if such Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by such Liquidating Trustee), such Liquidating Trustee (i) may timely elect to treat any Liquidating Trust Assets allocable to Disputed Claims as a "disputed ownership fund" governed by Treas. Reg. § 1.468B-9, and (ii) to the extent permitted by applicable law, shall report consistently for state and local income tax purposes. If a "disputed ownership fund" election is made, all parties (including such Liquidating Trustee, the Debtors and Liquidating Trust Beneficiaries) shall report for United States federal, state and local income tax purposes consistently with the foregoing.

(e)   A Liquidating Trustee shall be responsible for payment, out of Liquidating Trust Assets, of any taxes imposed on a Liquidating Trust or its assets.

(f)   A Liquidating Trustee may request an expedited determination of taxes of a Liquidating Trust, including any reserve for Disputed Claims, or of the Consolidated Debtor as to whom the Liquidating Trust was established, under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, such Liquidating Trust or the Consolidated Debtor for all taxable periods through the dissolution of such Liquidating Trust.

14.10.   Dissolution.

(a)   A Liquidating Trustee and Liquidating Trust shall be discharged or dissolved, as the case may be, at such time as (i) all of the Liquidating Trust Assets have been distributed pursuant to the Plan and a Liquidating Trust Agreement, (ii) a Liquidating Trustee determines, in its sole discretion, that the administration of any remaining Liquidating Trust Assets is not likely to yield sufficient additional Liquidating Trust proceeds to justify further pursuit, or (iii) all Distributions required to be made by a Liquidating Trustee under the Plan and a Liquidating Trust Agreement have been made; provided, however, that in no event shall a Liquidating Trust be dissolved later than three (3) years from the creation of such Liquidating Trust pursuant to Section 14.1 of the Plan unless the Bankruptcy Court, upon motion within the six-month period prior to the third (3rd) anniversary (or within the six-month period prior to the end of an extension period), determines that a fixed-period extension (not to exceed three (3) years,

43

together with any prior extensions, without a favorable private letter ruling from the IRS or an opinion of counsel satisfactory to the Liquidating Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidating Trust Assets.

(b)  If at any time a Liquidating Trustee determines, in reliance upon such professionals as a Liquidating Trustee may retain, that the expense of administering a Liquidating Trust so as to make a final Distribution to Liquidating Trust Beneficiaries is likely to exceed the value of the assets remaining in such Liquidating Trust, such Liquidating Trustee may apply to the Bankruptcy Court for authority to (i) reserve any amount necessary to dissolve such Liquidating Trust, (ii) donate any balance to a charitable organization (A) described in section 501(c)(3) of the IRC, (B) exempt from United States federal income tax under section 501(a) of the IRC, (C) not a "private foundation", as defined in section 509(a) of the IRC, and (D) that is unrelated to the Debtors, such Liquidating Trust, and any insider of such Liquidating Trustee, and (iii) dissolve such Liquidating Trust.

## ARTICLE XV.
## Treatment of Executory Contracts and Unexpired Leases

15.1.    Executory Contracts and Unexpired Leases.  Pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases that exist between a Debtor and any person or entity shall be deemed rejected by such Debtor, as of the Effective Date, except for any executory contract or unexpired lease (i) that has been assumed pursuant to an order of the Bankruptcy Court entered prior to the Effective Date and for which the motion was filed prior to the Confirmation Date, (ii) as to which a motion for approval of the assumption or rejection of such executory contract or unexpired lease has been filed prior to the Confirmation Date, or (iii) that is specifically designated in the Plan Supplement as a contract or lease to be assumed by the Consolidated Debtors; *provided*, *however*, that the Plan Proponents reserve the right, on or prior to the Confirmation Date, to amend the Plan Supplement to remove any executory contract or unexpired lease therefrom or add any executory contract or unexpired lease thereto, in which event such executory contract(s) or unexpired lease(s) shall be deemed to be, respectively, rejected or assumed.  The Plan Proponents shall provide notice of any amendments to the Plan Supplement to the parties to the executory contracts and unexpired leases affected thereby.  The listing of a document in the Plan Supplement shall not constitute an admission by the Plan Proponents that such document is an executory contract or an unexpired lease or that the Debtors have any liability thereunder.

15.2.    Approval of Assumption and Rejection of Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (i) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed or assumed and assigned pursuant to the Plan and (ii) the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to the Plan.  To the extent any provision of an executory contract or unexpired lease to be assumed by the Consolidated Debtors under the Plan limits such Debtor's

ability to assign such executory contract or unexpired lease, the effectiveness of such provision shall be limited or nullified to the full extent provided in section 365(f) of the Bankruptcy Code.

15.3.    Cure of Defaults.  Except as may otherwise be agreed to by the parties, within thirty (30) days after the Effective Date, the Consolidated Debtors shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed by the Consolidated Debtors pursuant to the Plan in accordance with section 365(b) of the Bankruptcy Code.  All disputed defaults that are required to be cured shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Consolidated Debtors' liability with respect thereto, or as may otherwise be agreed to by the parties.

15.4.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan must be filed with the Bankruptcy Court and served upon the Consolidated Debtors no later than forty-five (45) days after the later of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease, (ii) notice of entry of the Confirmation Order, and (iii) notice of an amendment to the Plan Supplement relating to such executory contract or unexpired lease.  **Except as set forth in the preceding sentence, all such Claims must otherwise comply with the provisions of the Bar Date Order, including, without limitation, the Derivatives Questionnaire and the Guarantee Questionnaire.  All such Claims not filed in accordance with the foregoing and within such time will be forever barred from assertion against the Consolidated Debtors and their estates.**  Any Claim arising out of the rejection of an executory contract or unexpired lease pursuant to the Plan shall be classified pursuant to Article III of the Plan.

15.5.    Insurance Policies.  All of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as executory contracts and shall be deemed assumed under the Plan.  Nothing contained herein shall constitute or be deemed a waiver of any Litigation Claims that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

**ARTICLE XVI.**
**Effectiveness of the Plan**

16.1.    Conditions Precedent to the Confirmation of the Plan.  A condition precedent to the confirmation of the Plan is that the Bankruptcy Court shall have entered a Confirmation Order with respect to such Plan in form and substance satisfactory to the Plan Proponents.

16.2.    Conditions Precedent to the Effective Date of the Plan.  The following are conditions precedent to the Effective Date of the Plan with respect to each Debtor:

(a)  the Confirmation Order, in form and substance acceptable to the Plan Proponents, shall have been entered;

(b)  all actions and all agreements, instruments or other documents necessary to implement the terms and provisions of the Plan are effected or executed and delivered, as applicable, in form and substance satisfactory to the Plan Proponents;

(c)  all authorizations, consents and regulatory approvals, if any, required by the Debtors in connection with the consummation of the Plan are obtained and not revoked; and

(d)  the certificate of incorporation and by-laws of the Debtors shall have been amended to the extent necessary to effectuate the Plan.

16.3.    Waiver of Conditions.  Notwithstanding the foregoing, the Plan Proponents reserve the right to waive the occurrence of the conditions precedent to the Effective Date set forth in Section 16.2 of the Plan other than Section 16.2(a) of the Plan.  Any such waiver may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan.  Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action.  If the Plan Proponents decide that one of the conditions precedent to the Effective Date of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Plan Proponents shall file a notice of the inability to satisfy such condition precedent with the Bankruptcy Court.

## ARTICLE XVII.
## Effects of Confirmation

17.1.    Vesting of Assets.  Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of (a) the Consolidated Debtors' estates and (b) LBT, LBSN and the Designated Non-Debtor Affiliates to the extent substantively consolidated pursuant to the Plan shall vest in the Consolidated Debtors free and clear of all Claims, Liens, encumbrances, charges and other interests, except as provided herein.  From and after the Effective Date, the Consolidated Debtors may take any action, including, without limitation, the operation of their businesses, the use, acquisition, sale, lease and disposition of property, and the entry into transactions, agreements, understandings or arrangements, whether in or other than in the ordinary course of business, and execute, deliver, implement, and fully perform any and all obligations, instruments, documents and papers or otherwise in connection with any of the foregoing, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as explicitly provided herein.

17.2.    Binding Effect.  On and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtors and their respective successors and assigns, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

17.3.    **Release and Exculpation.  On and after the Effective Date, the Debtors and all entities who have held, hold or may hold Claims against or Equity Interests in (a) any or all of the Consolidated Debtors and (b) LBT, LBSN and the Designated Non-Debtor Affiliates to the extent substantively consolidated pursuant to the Plan (whether proof of such Claims or Equity Interests has been filed or not), along with such holders' respective present or former employees, agents, officers, directors or principals, shall be deemed to have released the Released Parties from, and none of the Released Parties shall have or**

46

incur any liability for, any Claim, Cause of Action or other assertion of liability for any act taken or omitted to be taken during the Chapter 11 Cases in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or any contract, instrument, document or other agreement related thereto; *provided*, *however*, that (i) in no event shall any Litigation Claim, Cause of Action or other Claim or assertion of liability against any Released Party for any act taken or omitted to be taken prior to the Commencement Date be released by the Plan, and (ii) nothing herein shall affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; *provided*, *further*, that nothing in this Plan shall limit the liability of the professionals of the Debtors or the Creditors' Committee to their respective clients pursuant to DR 6-102 of the Model Code of Professional Responsibility.

17.4.    <u>Injunction</u>.  **Except as expressly provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all entities who have held, hold or may hold Claims against or Equity Interests in any or all of the Debtors and other parties in interest (whether proof of such Claims or Equity Interests has been filed or not), along with such holders' respective present or former employees, agents, officers, directors or principals, are permanently enjoined, on and after the Effective Date, with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan from (i) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Released Parties or the property of any of the Released Parties, (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting, or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against the Released Parties or the property of any of the Released Parties, (iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Released Parties or the property of any of the Released Parties, (iv) asserting any right of setoff, directly or indirectly, against any obligation due the Released Parties or the property of any of the Released Parties, except as contemplated or allowed by the Plan, (v) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan, and (vi) taking any actions to interfere with the implementation or consummation of the Plan.**

17.5.    <u>Terms of Injunctions or Stays</u>.  Unless otherwise provided in the Plan, the Confirmation Order, or a separate order of the Bankruptcy Court, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the closing of all of the Chapter 11 Cases.

17.6.    <u>Retention of Litigation Claims and Reservation of Rights</u>.

(a)  Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or

47

Litigation Claims that the Consolidated Debtors may have or choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against any Debtor, its officers, directors, or representatives, (ii) any and all Claims or rights arising under any tax sharing agreement among the Debtors and their Affiliates (including the tax sharing agreement among the Debtors and LBI based on their regular and consistent course of conduct over many years), (iii) any and all Claims for reimbursement of costs incurred for the benefit of any Affiliate, including in connection with the disposition of an Affiliate's assets, and (iv) any and all Avoidance Actions.

(b)  Except as expressly provided in the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any Litigation Claim, right of setoff, or other legal or equitable defense which a Debtor had immediately prior to the Commencement Date, against or with respect to any Claim.  The Consolidated Debtors shall have, retain, reserve, and be entitled to assert all such Litigation Claims, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Commencement Date fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' legal and equitable rights respecting any Claim may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced; *provided*, *however*, that the foregoing shall not restrict the Consolidated Debtors' ability to retain, prosecute or settle any Avoidance Actions.

(c)  Except as expressly provided in the Plan, the Plan Administrator shall, after the Effective Date, retain the rights of each Debtor to prosecute any Litigation Claims that could have been brought by such Debtor at any time.  The Plan Administrator shall prosecute all such retained Litigation Claims.

## ARTICLE XVIII.
## Retention of Jurisdiction

18.1.   Retention of Jurisdiction.  The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(i)    to hear and determine any motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

(ii)    to determine any and all pending adversary proceedings, applications and contested matters relating to the Chapter 11 Cases;

(iii)    to hear and determine any objection to Claims;

(iv)    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

48

(v)        to issue such orders in aid of execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code;

(vi)       to consider any modifications of the Plan, to cure any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(vii)      to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(viii)     to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, including any agreements or documents contemplated by the Plan;

(ix)       to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(x)        to hear and determine any actions brought against the Plan Administrator in connection with the Plan;

(xi)       to hear and determine any actions brought to recover all assets of the Debtors and property of the estates, wherever located;

(xii)      to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code, including any requests for expedited determinations under section 505(b) of the Bankruptcy Code filed, or to be filed, with respect to tax returns for any and all taxable periods ending after the Commencement Date;

(xiii)     to hear all matters relating to Article XVII of the Plan, including, without limitation, all matters relating to the releases, exculpation, and injunction granted thereunder;

(xiv)      to hear any other matter consistent with the provisions of the Bankruptcy Code; and

(xv)       to enter a final decree closing the Chapter 11 Cases.

### ARTICLE XIX.
### Miscellaneous Provisions

19.1.    Dissolution of the Committee.  On the Effective Date, the Creditors' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in

connection with the Chapter 11 Cases, and the retention or employment of the Creditors' Committee's attorneys, accountants, and other agents shall terminate.

19.2.    <u>Exemption from Transfer Taxes</u>.  Pursuant to section 1146(a) of the Bankruptcy Code, (a) the issuance, transfer, or exchange of notes or equity securities, (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest, (c) the making or assignment of or surrender of any lease or sublease, or (d) the making of or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, and any merger agreements, agreements of restructuring, disposition, liquidation or dissolution, any deeds, bills of sale, transfers of tangible property, or assignments executed in connection with any disposition of assets contemplated by the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, sales, use or other similar tax.

19.3.    <u>Plan Supplement</u>.  The amended certificates of incorporations and by-laws of the Debtors (if any), and a list of any contracts or leases to be assumed or assumed and assigned by the Debtors in accordance with <u>Section 15.1</u>, shall be contained in the Plan Supplement that is filed with the Clerk of the Bankruptcy Court at least ten (10) days prior to the last day upon which holders of Claims may vote to accept or reject the Plan.

19.4.    <u>Amendment or Modification of Plan</u>.  The Plan Proponents reserve the right to propose alterations, amendments, or modifications of or to the Plan in writing at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with section 1125 of the Bankruptcy Code.  The Plan may be altered, amended, or modified at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, modified or amended, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claims of such holder.

19.5.    <u>Withdrawal or Revocation of the Plan</u>.

(a)    The Plan Proponents reserve the right to revoke and withdraw the Plan or to adjourn the Confirmation Hearing with respect to any one or more of the Debtors prior to the occurrence of the Effective Date.  If the Plan Proponents revoke or withdraw the Plan with respect to any one or more of the Debtors, or if the Effective Date does not occur as to any Debtor, then, as to such Debtor, the Plan and all settlements and compromises set forth in the Plan and not otherwise approved by a separate Final Order shall be deemed null and void and nothing contained herein and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims against or Equity Interests in such Debtor or to prejudice in any manner the rights of any of the Debtors or any other Person, including the Plan Proponents, in any other further proceedings involving such Debtor.

(b)    In the event that the Plan Proponents choose to adjourn the Confirmation Hearing with respect to any one or more of the Debtors, the Plan Proponents reserve the right to proceed with confirmation of the Plan with respect to those Debtors in relation to which the Confirmation Hearing has not been adjourned.  With respect to those Debtors with respect to which the Confirmation Hearing has been adjourned, the Plan Proponents reserve the right to amend, modify, revoke or withdraw the Plan and/or submit any new plan under chapter 11 of the Bankruptcy Code at such times and in such manner as they consider appropriate, subject to the provisions of the Bankruptcy Code.

19.6.    <u>Courts of Competent Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

19.7.    <u>Transactions on Business Days</u>.  If the Effective Date or any other date on which a transaction may occur under the Plan shall occur on a day that is not a Business Day, any transactions or other actions contemplated by the Plan to occur on such day shall instead occur on the next succeeding Business Day.

19.8.    <u>Notices</u>.  Any notices to or requests of the Plan Proponents by parties in interest under or in connection with the Plan shall be in writing and served either by (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery, or (c) reputable overnight delivery service, all charges prepaid, and shall be deemed to have been given when received by:

> White & Case LLP
> 1155 Avenue of the Americas
> New York, New York  10036-2787
> Re:  Ad Hoc Group of Lehman Brothers Creditors

19.9.    <u>Severability</u>.  In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision of the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Plan Proponents, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

19.10.    <u>Governing Law</u>.  Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to the principles of conflicts of law thereof.

19.11.  <u>Headings</u>.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

19.12.  <u>Exhibits</u>.  All exhibits and schedules to the Plan as well as the Plan Supplement and any exhibits or schedules thereto are incorporated into and are a part of the Plan as if set forth in full herein.

19.13.  <u>Successors and Assigns</u>.  All the rights, benefits, and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such person.

19.14.  <u>Special Provisions Regarding Insured Claims</u>.  Plan Distributions to each holder of an Allowed Insured Claim against the Consolidated Debtors shall be made in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified; except, that there shall be deducted from any Plan Distribution on account of an Insured Claim, for purposes of calculating the Allowed amount of such Claim, the amount of any insurance proceeds actually received by such holder in respect of such Allowed Insured Claim. Nothing in this <u>Section 19.14</u> shall constitute a waiver of any Claim, right, or Causes of Action the Consolidated Debtors or their Estates may hold against any Person, including any insurer. Pursuant to section 524(e) of the Bankruptcy Code, nothing in the Plan shall release or discharge any insurer from any obligations to any Person under applicable law or any policy of insurance under which a Debtor is an insured beneficiary or for purposes of any insurance recovery.

Dated:      New York, New York
            April 27, 2011

                                                   WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile:  (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JCS – 6031)

By:  /s/ Gerard Uzzi
      Gerard Uzzi

Attorneys for the Ad Hoc Group of
Lehman Brothers Creditors

## **<u>Schedule 1</u>**
### **(Debtors)**

1.    BNC

2.    CES

3.    CES V

4.    CES IX

5.    East Dover

6.    LB 745

7.    LB 2080

8.    LB Rose Ranch

9.    LBCC

10.    LBCS

11.    LBDP

12.    LBFP

13.    LBHI

14.    LBSF

15.    LCPI

16.    LOTC

17.    LS Finance

18.    LUXCO

19.    PAMI

20.    SASCO

## Schedule 2
### (Foreign Administrators)

1.    Rutger Schimmelpenninck and Frederic Verhoeven, in their capacity as bankruptcy trustees ("curators") for LBT

2.    Anthony Victor Lomas, Steven Anthony Pearson, Dan Yoram Schwarzmann, Michael John Andrew Jervis of PricewaterhouseCoopers LLP as administrators of:

    a.    LBL

    b.    Lehman Brothers Holdings PLC (in Administration)

    c.    LB UK Re Holdings Limited (in Administration)

    d.    LBIE

    e.    Storm Funding Limited (in Administration)

    f.    Mable Commercial Funding Limited (in Administration)

    g.    Lehman Brothers Europe Limited (in Administration)

    h.    Lehman Brothers UK Holdings Ltd (in Administration)

    i.    LB UK Financing Ltd (in Administration)

    j.    LB SF No. 1 (in Administration)

    k.    Cherry Tree Mortgages Limited (in Administration)

    l.    Lehman Brothers Lease and Financing (No 1) Limited (in Administration)

    m.    Zestdew Limited (in Administration)

    n.    Monaco NPL (No 1) Limited (in Administration)

    o.    Lehman Commercial Mortgage Conduit Limited (in Administration)

    p.    LB RE Financing NO. 3 Limited (in Administration)

    q.    Lehman Brothers (PTG) Limited (in Administration)

    r.    Eldon Street Holdings Limited (in Administration)

    s.    LB Holdings Intermediate 2 Limited (in Administration)

3.    Edward Simon Middleton and Patrick Cowley as the Joint and Several Liquidators, without personal liability, of and for and on behalf of:

    a.    Lehman Brothers Asia Holdings Limited (In Liquidation)

    b.    Lehman Brothers Asia Limited (In Liquidation)

    c.    Lehman Brothers Futures Asia Limited (In Liquidation)

    d.    Lehman Brothers Securities Asia Limited (in Liquidation)

    e.    LBQ Hong Kong Funding Limited (In Liquidation)

    f.    Lehman Brothers Nominees (H.K.) Limited (In Liquidation)

    g.   Lehman Brothers Asia Capital Company (In Liquidation)

    h.   LBCCA

4.    Edward Simon Middleton and Patrick Cowley as Joint Official Liquidators of Lehman Brothers Equity Finance (Cayman) Limited (In Official Liquidation)

5.    LBJ (debtor in possession)

6.    LBHJ (debtor in possession)

7.    Lehman Brothers Commercial Inc. (debtor in possession)

8.    Sunrise (debtor in possession)

9.    Chay Fook Yuen, Yap Cheng Ghee and Tay Puay Cheng, as Joint and Several Liquidators, without personal liability, of and for and on behalf of:

    a.   Lehman Brothers Investments Pte. Ltd. (In Creditors' Voluntary Liquidation)

    b.   Lehman Brothers Finance Asia PTE Ltd. (In Creditors' Voluntary Liquidation) Lehman Brothers Commodities Pte. Ltd. (In Creditors' Voluntary Liquidation)

    c.   Lehman Brothers Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation)

    d.   Sail Investors Pte. Ltd. (In Creditors' Voluntary Liquidation)

    e.   Lehman Brothers Asia Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation)

10.    Dr. Michael C. Frege in his capacity as insolvency administration ("Insolvenzverwalter") of LBB

11.    Neil Singleton and Stephen Parbery, joint and several administrators of:

    a.   Lehman Brothers Australia Granica Pty Limited (Subject to Deed of Company Arrangement)

    b.   Lehman Brothers Real Estate Australia Commercial Pty Limited (Subject to Deed of Company Arrangement)

    c.   Lehman Brothers Australia Real Estate Holdings Pty Limited (Subject to Deed of Company Arrangement)

    d.   Lehman Brothers Australia Finance Pty Limited (Subject to Deed of Company Arrangement)

    e.   Lehman Brothers Australia Holdings Pty Limited (Subject to Deed of Company Arrangement)

    f.   Lehman Brothers Australia Limited (In Liquidation)

    g.   LBHV 1 Pty Limited (Subject to Deed of Company Arrangement)

    h.   HV 1 Pty Limited (DOCA)

    i.   HV 2 Pty Limited (DOCA)

12.    Mr. Michiel R.B. Gorsira in his capacity as Court appointed receiver ("curator") of LBSN

13.    PricewaterhouseCoopers Ltd., Zurich, Christiana Suhr-Brunner and Pascal Portmann, appointed bankruptcy administrators of LBF

14.    Claudia C.E. Jansen, appointed bankruptcy administrator of Lehman Brothers Capital GmbH

15.    Maître Jacques Delvaux and Maître Laurent Fisch, court appointed bankruptcy receivers of Lehman Brothers (Luxembourg) Equity Finance S.A. (en faillite), LB Infrastructure Europe Holding S.C.A. (en faillite), and LB Infrastructure Europe GP (en faillite), and court appointed Joint Liquidators of Lehman Brothers (Luxembourg) S.A. (in liquidation)

16.    Monico V. Jacob, Receiver of Philippine Investment One (SPV-AMC), Inc. and Philippine Investment Two (SPV-AMC), Inc.

17.    D. Geoffrey Hunter, provisional liquidator, PricewaterhouseCoopers, of Lehman Re

**<u>Schedule 3</u>**
**(Foreign Proceedings)**

<u>The Netherlands</u>

1.      LBT, Faillissementsnummer 08.0494-F

<u>The Netherlands-Antilles</u>

2.      Bankruptcy of the public company LBSN (Faillissement van de naamloze vennootschap LBSN), E.J.F. no. 2/2009

<u>The United Kingdom</u>

3.      LBL

4.      Lehman Brothers Holdings PLC (in Administration)

5.      LB UK Re Holdings Limited (in Administration)

6.      LBIE

7.      Storm Funding Limited (in Administration)

8.      Mable Commercial Funding Limited (in Administration)

9.      Lehman Brothers Europe Limited (in Administration)

10.     Lehman Brothers UK Holdings Ltd (in Administration)

11.     LB UK Financing Ltd (in Administration)

12.     LB SF No. 1 (in Administration)

13.     Cherry Tree Mortgages Limited (in Administration)

14.     Lehman Brothers Lease and Financing (No 1) Limited (in Administration)

15.     Zestdew Limited (in Administration)

16.     Monaco NPL (No 1) Limited (in Administration)

17.     Lehman Commercial Mortgage Conduit Limited (in Administration)

18.     LB RE Financing NO. 3 Limited (in Administration)

19.     Lehman Brothers (PTG) Limited (in Administration)

20.     Eldon Street Holdings Limited (in Administration)

21.     LB Holdings Intermediate 2 Limited (in Administration)

<u>Hong Kong</u>

22.     Lehman Brothers Asia Holdings Limited (In Liquidation), HCCW 443 of 2008

23.     Lehman Brothers Asia Limited (In Liquidation), HCCW 442 of 2008

24.     Lehman Brothers Futures Asia Limited (In Liquidation), HCCW 438 of 2008

25.     LBSN, HCCW 437 of 2008

26.   LBQ Hong Kong Funding Limited (In Liquidation), HCCW 463 of 2008

27.   Lehman Brothers Nominees (H.K.) Limited (In Liquidation), HCCW 464 of 2008

28.   Lehman Brothers Asia Capital Company (In Liquidation), HCCW 452 of 2008

29.   LBCCA, HCCW 441 of 2008

The Cayman Islands

30.   Lehman Brothers Equity Finance (Cayman) Limited (In Official Liquidation), Case No. 374 of 2009

Japan

31.   In the Matter of Petition for Commencement of Rehabilitation Proceedings of LBJ, Tokyo District Court, Heisei 20 (2008) (sai) No. 205

32.   In the Matter of Petition for Commencement of Rehabilitation Proceedings of LBHJ, Tokyo District Court, Heisei 20 (2008) (sai) No. 206

33.   In the Matter of Petition for Commencement of Rehabilitation Proceedings of Lehman Brothers Commercial Inc., Tokyo District Court, Heisei 20 (2008) (sai) No. 207

34.   In the Matter of Petition for Commencement of Rehabilitation Proceedings of Sunrise, Tokyo District Court, Heisei 20 (2008) (sai) No. 208

Singapore

35.   Lehman Brothers Investments Pte. Ltd. (In Creditors' Voluntary Liquidation)

36.   Lehman Brothers Finance Asia PTE Ltd. (In Creditors' Voluntary Liquidation)

37.   Lehman Brothers Commodities Pte. Ltd. (In Creditors' Voluntary Liquidation)

38.   Lehman Brothers Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation)

39.   Sail Investors Pte. Ltd. (In Creditors' Voluntary Liquidation)

40.   Lehman Brothers Asia Pacific Holdings Pte. Ltd. (In Creditors' Voluntary Liquidation)

Germany

41.   In dem Insolvenzverfahren LBB, Court Reference: 810 IN 1120/08 L

42.   In dem Insolvenzantragsverfahren uber das Vermogen der Lehman Brothers Capital GmbH, Court Reference: 810 IN 983/08 L

Australia

43.   Lehman Brothers Australia Granica Pty Limited (Subject to Deed of Company Arrangement)

44.   Lehman Brothers Real Estate Australia Commercial Pty Limited (Subject to Deed of Company Arrangement)

45.  Lehman Brothers Australia Real Estate Holdings Pty Limited (Subject to Deed of Company Arrangement)

46.  Lehman Brothers Australia Finance Pty Limited (Subject to Deed of Company Arrangement)

47.  Lehman Brothers Australia Holdings Pty Limited (Subject to Deed of Company Arrangement)

48.  Lehman Brothers Australia Limited (In Liquidation)

49.  LBHV 1 Pty Limited (Subject to Deed of Company Arrangement)

50.  HV 1 Pty Limited (DOCA)

51.  HV 2 Pty Limited (DOCA)

Switzerland

52.  LBF

Luxembourg

53.  Lehman Brothers (Luxembourg) Equity Finance S.A. (en faillite)

54.  Lehman Brothers (Luxembourg) S.A. (in liquidation).

55.  LB Infrastructure Europe Holding S.C.A. (en faillite)

56.  LB Infrastructure Europe GP. (en faillite)

The Philippines

57.  In the Matter of:  Petition for Rehabilitation with Prayer for Staying All Claims, Actions and Proceedings Against Philippine Investment One (SPV-AMC), Inc., SP Case No. M-6682

58.  In the Matter of:  Petition for Rehabilitation with Prayer for Staying All Claims, Actions and Proceedings Against Philippine Investment Two (SPV-AMC), Inc., SP Case No. M-6683

Bermuda

59.  In the Matter of Lehman Re Ltd., 2008:  No. 2