# EXHIBIT 1

**From:** Oxford, Neil <oxford@HughesHubbard.COM>
**To:** Hamish Hume
**Cc:** Maguire, Bill <maguire@hugheshubbard.com>; Oxford, Neil <oxford@HughesHubbard.COM>
**Sent:** Sat Sep 04 10:29:34 2010
**Subject:** LBI/Barclays: possible DTCC stip

Hamish,

The attached draft is intended to reflect the position we discussed on Thursday and I believe reflects a sensible position that both parties and the judge will be happy with.  It remains subject to our clients' comments but I wanted to get this to you as soon as possible.  Let me know if you would like to discuss.

Best,

Neil

*******************************************************************
This email and any files transmitted with it may contain privileged or confidential information.
Use, disclosure, copying or distribution of this message by anyone other than the intended
recipient is strictly prohibited. If you have received this email in error please notify the sender by
reply email and destroy all copies of this message in your possession, custody or control.
*******************************************************************

Draft – For Discussion Purposes Only

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | : | |
In re: | | : | Chapter 11

LEHMAN BROTHERS HOLDINGS INC., *et al.*, | | : | Case No. 08-13555 (JMP)

Debtors. | | : | (Jointly Administered)

------------------------------------------------------------x

In re: | | : | SIPA Proceeding

LEHMAN BROTHERS INC., | | : | Case No. 08-01420 (JMP)

Debtor. | | : |

------------------------------------------------------------x

## STIPULATION CONCERNING CLEARANCE BOX ASSETS

Barclays Capital, Inc. ("Barclays") and the trustee (the "Trustee") for the SIPA liquidation of

Lehman Brothers Inc. ("LBI") hereby stipulate as follows:

1. Barclays and the Trustee both claim entitlement to the securities in LBI's "clearance box" at the Depository Trust & Clearing Corporation, as defined in the Clarification Letter signed by Lehman Brothers Inc., Lehman Brothers Holdings Inc., LB 745 LLC and Barclays Capital Inc. and dated as of September 20, 2008 (the "Clearance Box Assets"). Nothing in this stipulation shall be deemed to be an admission by either Barclays or the Trustee as to (i) either party's entitlement to the Clearance Box Assets; or (ii) the identity or value of the Clearance Box Assets as of 12:01 am on September 22, 2008 (or as of November 17, 2008).

2. As of the date of this stipulation, some, but not all of the Clearance Box Assets, were transferred to Barclays. These Clearance Box Assets are listed on Movants' Exs. 571 and 512, and BCI Ex. 422, which Barclays and the Trustee stipulate shall be admitted into evidence.

3. In the event that the Court decides that Clearance Box Assets belong to the Trustee for the benefit of the LBI estate, Barclays will return to the Trustee, for the benefit of the LBI estate, the Clearance Box Assets in Barclays' possession or their equivalent value as of 12:01 a.m. September 22, 2008. The parties shall abide by the determination of the Court as to the value of those securities as of 12:01 a.m. September 22, 2008.

61148470_1

Draft – For Discussion Purposes Only

4. After the Closing, Barclays conducted an analysis to attempt to identify additional unencumbered assets held in LBI's clearance boxes as of November 17, 2008. The securities identified through that analysis are listed on BCI Exs. 885, 886 and 967, which Barclays and the Trustee stipulate shall be admitted into evidence.

5. The determination of the universe of Clearance Box Assets is a complex matter that does not need to be determined in the course of the current trial proceedings, but can be deferred until the determination of the parties' respective claims to the Clearnace Box Assets. In the event that the Court decides that Clearance Box Assets belong to Barclays rather than to the Trustee for the benefit of the LBI estate, the parties shall work cooperatively to determine the accuracy of the analysis referred to in paragraph 4 above. To the extent that the parties are unable to agree upon the amount and value of the securities that are the subject of that analysis, the parties will submit any unresolved factual issues to the Court for determination at an additional evidentiary hearing.

BOIES, SCHILLER & FLEXNER LLP

HUGHES HUBBARD & REED LLP

By: _____

Jonathan D. Schiller
Hamish P.M. Hume
Jack G. Stern

575 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-2300
Facsimile: (212) 446-2350

*Attorneys for Barclays Capital Inc.*

By:_____

William R. Maguire
Seth D. Rothman
Neil J. Oxford

One Battery Park Plaza
New York, NY 10004
Telephone: (212) 837-6000
Facsimile: (212) 422-4726

*Attorneys for James W Giddens, as Trustee
for the SIPA Liquidation of Lehman
Brothers Inc.*

61148470_1

Draft -- For Discussion Purposes Only

**SO ORDERED:**

Dated:  New York, New York
       January ___, 2010

                                    _____

                                    UNITED STATES BANKRUPTCY JUDGE

61148470_1

# EXHIBIT 2



Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com


Neil J. Oxford
Direct Dial: 212-837-6843
Direct Fax: 212-299-6843
oxford@hugheshubbard.com

September 15, 2010

By Email

Hamish Hume
Boies Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Washington, DC 20015

Re:    *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555
(JMP) (Bankr. S.D.N.Y.) (Jointly Administered); *In re Lehman
Brothers Inc.*, Case No. 08-1420 (JMP) (Bankr. S.D.N.Y.)

Dear Hamish:

On August 29, 2010, Barclays asked the Trustee to consider signing a stipulation agreeing that certain lists of CUSIPs (Lists A, B1, B2, and C1) were the product of an effort, post-closing, by Barclays employees "to identify, as best as possible, the unencumbered assets owned by LBI and held in LBI's clearance boxes as of the Closing on September 22, 2008" and that remain in the Trustee's possession.

As we explained, the Trustee is not in a position to agree to such a stipulation for a number of reasons, including that the Trustee's financial advisors have not had the benefit of a detailed walk through of the methodology with Mr. Hraska and others who conducted the analysis for Barclays, and that even though Barclays provided us with a summary of Mr. Hraska's methodology around 9:30 pm the evening before Mr. Hraska's January 15, 2010 deposition, the Trustee's financial advisors nevertheless identified several concerns about the analysis, which Mr. Hraska acknowledged at his deposition.

On September 4, we proposed an alternative stipulation that preserves each parties' positions with respect to the identification of those CUSIPs and confirms that the parties would work cooperatively to determine the accuracy of the analysis conducted by Barclays. You indicated to me when we spoke on September 6 that Barclays would want a commitment from the Trustee that his professionals would agree to sit down with Barclays within a specific time frame (I believe you suggested a month) of the determination by the Court of the parties' respective claims to the Clearance Box Assets.

The Trustee readily agrees that his professionals should sit down with Mr. Hraska and the others who created Lists A through C.  As you know, the Trustee's professionals have been requesting information about how these lists were compiled, and for Mr. Hraska to provide Deloitte with a detailed walk through, for almost 18 months (see Movants' Ex. 555 (Jim Kobak's March 27, 2009 letter to Lindsee Granfeld), Movants' Ex. 557 (Mr. Kobak's May 28, 2009 email to Jonathan Hughes), and Movants' Ex. 558 (Mr. Kobak's June 11, 2009 letter to you)).  If you still agree that this can happen once the Court has determined the parties' respective claims to the Clearance Box Assets, we're content to put off such a meeting until that time, but if your thinking on this has changed we need to know that as soon as possible and set up a meeting between Mr. Hraska and Deloitte so that the Trustee fully understands what it is Barclays is claiming.

Sincerely yours,

# EXHIBIT 3



Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

William R. Maguire
Direct Dial: 212-837-6879
maguire@hugheshubbard.com

March 4, 2011

BY HAND

Honorable James M. Peck
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York 10004

Re:    *In re Lehman Brothers Inc.*,
          Case No. 08-01420 (JMP) SIPA

Dear Judge Peck:

I write on behalf of James W. Giddens, as trustee ("Trustee") for the SIPA Liquidation of Lehman Brothers Inc. ("LBI"), respectfully to submit proposed orders pursuant to the Court's February 22, 2011 opinion in the above-referenced matter (the "Court's Opinion," ECF No. 4105).[1]  I enclose three proposed orders:

- Order Granting In Part And Denying In Part The Trustee's Motion For Relief Pursuant To The Sale Orders Or, Alternatively, For Certain Limited Relief Under Rule 60(b) (the "Order Regarding Trustee's Motion");

- Order Granting In Part And Denying In Part Barclays' Motion To Enforce The Sale Order And Secure Delivery Of All Undelivered Assets; and

- Order Resolving Certain Claims In The Trustee's Adversary Complaint.

I have also enclosed a 3.5" diskette containing an electronic copy of each proposed order.

In accordance with the Court's Opinion, we exchanged draft proposed orders with Barclays and discussed these at length in an attempt to reach agreement.  The parties have been unable to agree on the form and content of the orders, and the Trustee continues to have serious

---

1.    Opinion On Motions Seeking Modification Of The Sale Order Pursuant To Rule 60(b), The Trustee's Motion For Relief Under The SIPA Sale Order, Barclays' Cross-Motion To Enforce The Sale Orders And Adjudication Of Related Adversary Proceedings.

objections to Barclays' proposed orders, which we believe are in conflict with the Court's Opinion. Accordingly, we respectfully request a chambers conference with Your Honor to address the disputed issues. In the meantime, the Trustee will continue to work with Barclays to narrow, if not resolve, the differences between the parties.

The Trustee agrees with Barclays that the parties will need to confer among themselves concerning precisely what assets or value are subject to transfer under the Court's Opinion before determining whether any of these possible issues of interpretation or enforcement of the orders need to be resolved by the Court. This is particularly important with respect to the Clearance Box Assets that Barclays is claiming are undelivered. Barclays has produced various documents and lists of securities that purport to refine Schedule B to the Clarification Letter so as to accurately represent Lehman's undelivered Clearance Box Assets. Analysis by the Trustee's professionals indicates that, despite Barclays' efforts, its lists continue to include securities that belong to customers, and include certain CUSIPs that were not in Lehman's clearance boxes on September 19, 2008.[2] It is our understanding that Barclays agrees that such securities should, in fact, not be included in the definition of "Clearance Box Assets." The Trustee has asked Barclays to give the Trustee's professionals a walk-through of the methodology that Barclays used in preparing these lists of CUSIPs. Similarly, with respect to the Margin Assets, and any other cash, government securities or other cash equivalents, the parties need to confer and determine which assets or value have to be delivered by Barclays to the Trustee.

While we are prepared to work closely with Barclays to clarify the above issues, we believe that the orders effectuating the Court's Opinion as to the Disputed Assets should be final and appealable. The Court's Opinion completely resolves the issues of entitlement to these assets and any discussions between the parties regarding which assets should be transferred simply relate to interpretation and enforcement and will not change Court's rulings. Finality of the Court's decision is vital to the LBI estate's ability to return customer property as soon as possible.

I would also like to note for Your Honor that the Court's Opinion refers - I believe inadvertently - to the Margin Assets as having been part of the Friday, September 19, 2008 "asset scramble." *See, e.g.*, Court's Opinion at 9. The parties agreed in their Stipulations of Fact, dated April 2010 ("Stipulations of Fact"), that the only two assets identified by Lehman in the Friday asset scramble were (1) the Clearance Box Assets and (2) the Rule 15c3-3

---

2.  Barclays' Rule 30(b)(6) witness, James Hraska, who was involved in the preparation of one or more of these lists, conceded at his deposition that there could be problems in the lists of CUSIPs being claimed by Barclays. *See, e.g.*, BCI Ex. 1108 (1/15/10 Hraska Dep. Tr.) at 28:21-29:4 (admitting inability to confirm that "PIM conversion omnibus" CUSIPs claimed by Barclays were not also claimed by customers); 91:16-92:3 (CUSIPs on Barclays' lists may not have been at Lehman depots on September 19, 2008).

Customer Reserve Account assets.  Stipulations of Fact ¶ 140.  Trial testimony also confirmed that the Friday asset scramble yielded only these two categories of assets and not the Margin Assets.[3]  Accordingly, we have respectfully included language in the proposed Order Regarding Trustee's Motion that would amend and clarify this detail in the Court's Opinion.

Respectfully,

cc:    Jonathan D. Schiller, Esq. (counsel to Barclays Capital Inc.)
       Robert W. Gaffey, Esq. (counsel to the Chapter 11 Debtors)
       James C. Tecce, Esq. (counsel to the Creditors' Committee)

---

3.   *See* 4/26/10 Trial Tr. (McDade) 195:3-7, 197:25-198:21; 5/7/10 Trial Tr. (Ricci) 211:4-17; 215:16-216:6, 228:22-229:1; 4/29/10 Trial Tr. (Lowitt) 125:11-16; *see also* Movants' Ex. 719 (Tonucci Dep. Tr.) 55:16-57:3, 58:7-11; *id.* (Klein Dep. Tr.) at 107:16-108:2, 108:13-23; *id.* (Lewkow Dep. Tr.) at 122:2-123:5; Post-Hearing Brief Of James W. Giddens, As Trustee For The SIPA Liquidation Of Lehman Brothers Inc., dated November 22, 2010 (ECF No. 3911) ¶¶ 65, 207.

# EXHIBIT 4


# Hughes
# Hubbard

Hughes Hubbard & Reed LLP<br>
One Battery Park Plaza<br>
New York, New York 10004-1482<br>
Telephone: 212-837-6000<br>
Fax: 212-422-4726<br>
hugheshubbard.com

March 9, 2011

By Email
Hamish P.M. Hume, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Washington, DC 20015

      Re:    *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered); *In re Lehman Brothers Inc.*, Case No. 08-1420 (JMP) (Bankr. S.D.N.Y.)

Dear Hamish:

      In connection with the Court's February 22, 2011 decision and opinion in the above-referenced matter and specifically, the clearance box assets, I write to renew our requests that Barclays provide the Trustee's professionals at Deloitte with a walk-through of the various lists that Barclays claims represent undelivered clearance box assets and the methodology used to compile those lists. I strongly believe that such an exercise will facilitate narrowing the factual issues regarding the undelivered clearance box assets.

      As you point out in Barclays' proposed order for its motion to enforce the Sale Orders and recover the Disputed Assets, submitted to the Court on March 4, 2011, Barclays has created a number of different lists purporting to represent undelivered clearance box CUSIPs. *See* Barclays' [Proposed] Order n.1 (identifying at least three such lists, including Schedule B, BCI Ex. 735 and BCI Ex. 886). Other similar lists have been produced to the Trustee over the course of the litigation, including BCI Exs. 734, 885 and 967. As you know, the Trustee requested this walk-through as early as July 2009, and repeated that request subsequently. The Trustee recognizes that, having declined to provide this information prior to litigation, Barclays did produce Mr. James Hraska as its Rule 30(b)(6) witness on this topic. While Mr. Hraska's testimony was useful to some extent, his deposition notes, which attempt to describe Barclays' methodology in identifying undelivered clearance box assets, were produced to the Trustee only the night before the deposition, which left insufficient time for analysis and preparation. Furthermore, Mr. Hraska himself admitted that there were several issues regarding particular

CUSIPs on these lists, and was unable to explain the underlying methodology for identifying many of the undelivered CUSIPs.[1]

In light of the various open issues, a walk-through of the positions Barclays is claiming as undelivered, as well as the underlying methodology used to identify those positions, would greatly assist both Barclays and the Trustee in moving forward the issue of the clearance box assets. When we raised this issue with you last week, you noted that Barclays would want this meeting to be a two-way exchange of information, which I agree makes sense, and confirm that the Trustee's professionals will be prepared to share information about why, for example, they do not believe that a particular CUSIP claimed was in the clearance box, or why they believe that a particular CUSIP is claimed by a customer. For the sake of efficiency, we agree with your suggestion that such a meeting be subject to Rule 408 of the Federal Rules of Evidence, and also (because of the technical nature of the discussion) suggest that the meeting between selected Barclays and Deloitte representatives take place without the presence of lawyers. Please let me know as soon as possible whether Barclays agrees to this meeting and what dates are convenient. The Trustee's professionals are prepared to meet as early as next week.

This letter is not intended to limit or waive the Trustee's rights and arguments with respect to the clearance box assets and the Trustee reserves all such rights. I do hope that the parties can agree to and arrange the suggested meeting in the interest of resolving many of outstanding issues with respect to these assets.

I am happy to discuss these issues further with you.

Very truly yours,

*/s/ Neil J. Oxford*

Neil J. Oxford

cc.    Robert W. Gaffey, Esq. (counsel to the Chapter 11 Debtors) (by e-mail)
James C. Tecce, Esq. (counsel to the Creditors' Committee) (by e-mail)

---

1.    *See, e.g.*, BCI Ex. 1108 (1/15/10 Hraska Dep. Tr.) at 28:21-29:4 (admitting inability to confirm that "PIM conversion omnibus" CUSIPs claimed by Barclays were not also claimed by customers); 91:16-92:3 (conceding that CUSIPs on Barclays' lists may not have been at Lehman depots on September 19, 2008); 135:8-136:8 (admitting lack of knowledge as to why only Prime Broker ranges were used to identify undelivered clearance box assets for "Exhibit C").

-2-

# EXHIBIT 5

# BOIES,    SCHILLER    &    FLEXNER    LLP

5301 WISCONSIN AVENUE, N.W. • WASHINGTON, D.C. 20015-2015 • PH. 202.237.2727 • FAX 202.237.6131

March 17, 2011

<u>BY EMAIL</u>

Neil J. Oxford, Esq.
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004

> Re:  *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555
> *In re Lehman Brothers Inc.*, Case No. 08-1420

Dear Neil:

I write in response to your March 9, 2011 letter in connection with the Court's February 22, 2011 opinion and the undelivered Clearance Box Assets.

As I indicated when we spoke last, we are certainly willing to schedule a meeting to allow the Trustee's financial advisers at Deloitte and the relevant Barclays operations professionals to discuss the identification of the undelivered Clearance Box Assets. We propose scheduling that meeting during the week of April 4, 2011. We are able to do the meeting any day that week that works for you and Deloitte.

We also agree that, as I suggested, it will likely make the meeting more productive and efficient if we agree that the discussions at the meeting will be covered by Federal Rule of Evidence 408, and hence will not be used by either side in any dispute that may arise before the Court. Based upon this letter and your letter of March 9, we will treat that as agreed.

We do not agree, however, with your suggestion that the meeting take place without the involvement of lawyers. While we hope that the meeting will be conducted in a spirit of cooperation and without an adversarial approach, the interests at stake are such that it would not make sense for Barclays to have the meeting with no counsel present.

It will not surprise you to learn that we also do not agree with many of the assertions and characterizations in your letter regarding the history of our efforts to identify the undelivered Clearance Box Assets. Since no later than December 2008, Barclays has been providing information to the Trustee regarding the analysis its operations and finance professionals have performed in an effort to come up with an accurate list of all undelivered Clearance Box Assets. In addition to providing the lists themselves, Barclays provided a description of the methodology used to create those lists. *See e.g.* BCI Ex. 734; Letter from L. Granfield Letter to J. Kobak dated March 6, 2009. Then, as you know, beginning in July 2009, the Trustee along with LBHI and the Creditors Committee, commenced extremely extensive discovery from Barclays which in effect did not end until March of 2010. That discovery included two different depositions of Barclays operations executive Jim Hraska, who as you know played a principal role in putting together the lists of undelivered Clearance Box Assets, and who was questioned at great length

BOIES,    SCHILLER & FLEXNER LLP

Neil J. Oxford, Esq.
March 17, 2011
Page 2

on his methodology. While you complain in your letter that Mr. Hraska's deposition notes were
not provided to you until the eve of his 30(b)(6) deposition, those notes were created specifically
for the deposition: they were provided as a summary and guide to the core of his testimony, and
hence it is illogical to complain that they were not given earlier (they were actually given one
day early, since they were provided as part of his deposition, which was scheduled for the day
after the notes were provided to you).

In any event, while we disagree that Barclays has done anything other than provide full
information to the Trustee regarding the identification of the undelivered Clearance Box Assets,
we agree that we should work together to create a final list so as to implement the Court's order.
The Trustee and his financial advisers have had over two years to identify what they believe are
the undelivered Clearance Box Assets, and have yet to provide *any* information on the subject to
Barclays. We therefore look forward to learning what, if any, analysis Deloitte has performed.

With respect to the Barclays lists, Jim Hraska remains the person most able to talk
through the methodology that was used to create those lists, and why that methodology is
reliable. In addition, as I believe I indicated in our last teleconference, Barclays has been
examining whether the information to which it has access indicates that there are additional
undelivered Clearance Box Assets (over and above those in the lists previously provided to the
Trustee – including, for example, certain physical securities). We will aim to provide you an
update on that analysis at or before the anticipated meeting.

Finally, in preparation for our upcoming meeting, we would be grateful if Deloitte (or the
Trustee's other advisers) could, to the extent practical, attempt to gather the following
information, or at least be prepared to discuss what steps would need to be taken to gather this
information:

- A list showing every LBI clearance box account in existence as of the date of the
  Closing (this list could state, for example, whether or not the Trustee has
  identified any clearance accounts beyond those identified in Deposition Exhibit
  156B (admitted as BCI Ex. 735));

- A list of all transactions that took place in each such clearance box account from
  September 22, 2008 to date;

- A summary of all distributions, interest payments, redemptions, maturities,
  conversions, and similar payments or transfers made with respect to any asset on
  one of the lists of Clearance Box Assets provided by Barclays to the Trustee (i.e.,
  the lists identified as BCI Exs. 735, 885, and 886.

We look forward to working with you and Deloitte to agree upon a list of undelivered
Clearance Box Assets which can be submitted to the Court. Of course, Barclays reserves all
rights to seek appropriate relief in the event that we are unable to reach any agreement. In

BOIES, SCHILLER & FLEXNER LLP

Neil J. Oxford, Esq.
March 17, 2011
Page 3

particular, given the Trustee's failure for two years to put forward any competing analysis to that which Barclays provided, Barclays reserves the right to argue that, absent an agreement between Barclays and the Trustee on a final list, the Court should adopt the lists of assets Barclays has generated and provided to you.

Please let me know if one of the days during the week of April 4 will work for the Trustee and Deloitte.

Very truly yours,

Hamish P.M. Hume

cc:    Robert W. Gaffey, Esq. (counsel to the Chapter 11 Debtors) (by email)
       James C. Tecce, Esq. (counsel to the Creditors' Committee) (by email)

# EXHIBIT 6


**Hughes
Hubbard**

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

March 30, 2011

<u>By Email</u>
Hamish P.M. Hume, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Washington, DC 20015

Re:    *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered); *In re Lehman Brothers Inc.*, Case No. 08-1420 (JMP) (Bankr. S.D.N.Y.)

Dear Hamish:

I write in connection with the Court's February 22, 2011 decision and our discussions regarding the Clearance Box Assets and the Margin Assets.

**<u>Clearance Box Assets:</u>**

As we discussed on the telephone, we accept your proposal to have counsel present at the Rule 408 meeting now scheduled for 10 a.m. at our office on April 7.  Please let me know in advance who will be attending for Barclays.

In connection with that meeting, we do not dispute that Barclays has provided some helpful information during discovery regarding the undelivered Clearance Box Assets and the methodology used to create its various lists of such assets.  However, for the reasons explained in my March 9 letter, there remain some very fundamental gaps in the information provided.  I am optimistic that the April 7 meeting will help both parties narrow such factual gaps.

As indicated when we spoke, I also agree with you that the meeting should be a two-way exchange of information.  Deloitte has been analyzing the various lists of undelivered Clearance Box Assets that Barclays has produced, and will be prepared to share its initial analysis at the April 7 meeting.  With respect to the specific topics you asked that Deloitte address at the meeting, our position is as follows:

- <u>Barclays' Request:</u> A list showing every LBI clearance box account in existence as of the date of the Closing (this list could state, for example, whether or not the

Trustee has identified any clearance accounts beyond those identified in Deposition Exhibit 156B (admitted as BCI Ex. 735)).

- o  Trustee's Response: We believe that the requested information is already available to Barclays through its access to LBI's September 19, 2008 stock record. Therefore, it is unnecessary for Deloitte to provide this information.

- Barclays' Request: A list of all transactions that took place in each such clearance box account from September 22, 2008 to date.

- o  Trustee's Response: Barclays' request is vastly overbroad and unduly burdensome as it covers thousands of CUSIPs and transactions that have potentially no relation to the undelivered clearance box positions, e.g., the PIM transfers. The request may also implicate confidential LBI estate information. However, we are willing to discuss and provide settlement information for a more limited time period and for a discrete set of CUSIPs. To that end, we will aim to provide you, prior to the April 7 meeting, the settlement information for September 22-24, 2008 for a sample of CUSIPs Barclays has identified as undelivered.

- Barclays' Request: A summary of all distributions, interest payments, redemptions, maturities, conversions, and similar payments or transfers made with respect to any asset on one of the lists of Clearance Box Assets provided by Barclays to the Trustee (i.e., the lists identified as BCI Exs. 735, 885, and 886).

- o  Trustee's Response: We will aim to provide you, prior to the April 7 meeting, the requested information for at least a sample of CUSIPs identified on the specified exhibits and will discuss at the meeting the scope and schedule for a similar analysis for other undelivered Clearance Box Assets claimed by Barclays.

We will also be prepared to discuss at the April 7 meeting the results of the Trustee's initial analysis of Barclays' various lists, including a discussion of why certain CUSIPs identified by Barclays are not undelivered clearance box positions. In order to make best use of everybody's time, we will aim to provide you with at least a sample of this analysis in advance of the April 7 meeting.

To facilitate your own preparation for the April 7 meeting, I thought it would be helpful to set out the key issues that the Trustee would like Barclays' representatives to be prepared to address at the meeting:

- identification of the final lists that represent the undelivered Clearance Box Assets that Barclays claims; and

- the methodology underlying the lists.

-2-

61341723

It would be helpful if Barclays could provide us that information in time for us to review in advance of the April 7 meeting.

**Margin Assets:**[1]

When we spoke on March 17, I noted that in addition to the work both the Trustee and Barclays would do in connection with the Clearance Box Assets, in order to facilitate the efficient implementation of the Court's February 22 decision, the Trustee would require certain confirmations regarding the Margin Assets. Accordingly, please confirm that the information that Barclays produced during discovery concerning the Margin Assets – specifically for the issues listed below – is accurate, complete and current. To the extent it is not, please provide the corrected or updated information.[2]

1.    The Margin Assets, including all cash, governments securities and all other cash equivalents associated with LBI's derivatives trading that Barclays has received to date from the Trustee or other parties, irrespective of whether Barclays has booked those assets on its acquisition balance sheet (M. 500 at topics 43(g)(3) and (h); BCI Ex. 353, Exhibits 1-3; M. 495, tab "Money Market Funds");[3]

2.    The $2.2 billion of "Total Futures Collateral Received" (from the Trustee or any other party) (BCI 353, Exhibit 3), particularly in light of Barclays' disclosures on M. 495;

3.    Barclays' knowledge of the Margin Assets that are or were in the possession of third parties (M. 644, M. 500 at topics 43(g)(3) and (h), BCI 353, Exhibits 1-3, M. 494);

4.    In connection with paragraph 3(c)(ii) of Barclays' proposed order concerning Motion of Barclays Capital Inc. to Enforce the Sale Orders and Secure Delivery of Undelivered Assets, the liabilities owed by LBI as of the Closing to futures customers whose segregated and secured accounts were transferred to Barclays (M. 565 at 2), any additional liabilities not included in M. 565 and their inclusion

---

1.    For purposes of this letter, we adopt the definition of "Margin Assets" used in the Court's February 22 decision. *See* February 22, 2011 Decision at 84. That definition covers all assets associated with LBI's derivatives trading on its own behalf and on behalf of its affiliates and non-affiliate customers and irrespective of form (cash, government securities or other cash equivalents). "Cash equivalents" as used herein is defined in accordance with Regulation T, *i.e.*, all "securities issued or guaranteed by the United States or its agencies, negotiable bank certificates of deposit, bankers acceptances issued by banking institutions in the United States and payable in the United States, or money market mutual funds." 12 C.F.R. 220.2.

2.    For updates to issues 1 and 2, the following information is particularly relevant: the amount of the additional assets Barclays has received or identified, the party who had or has possession of these assets, whether the assets were associated with LBI proprietary, affiliate or non-affiliate customer derivatives trading, the form of the assets as of the Closing and, when, if at all, Barclays received these assets. This list of information is intended to be illustrative only, not exhaustive.

3.    For your convenience, I have included a reference to the specific documents in which Barclays primarily provided each piece of this information.

61341723

in Barclays' acquisition balance sheet, and the satisfaction of all assumed liabilities;

5.    Barclays' position with respect to clearing and guaranty fund assets, including status of their recovery (M. 700 at 3-4); and

6.    Barclays' position with respect to LBI's exchange seats and shares (M. 700 at 4-5).

Please provide this information by April 4, 2011 to give us time to review prior to the chambers conference.

*******

This letter is not intended to limit or waive the Trustee's rights and arguments with respect to the Clearance Box Assets or the Margin Assets and the Trustee reserves all such rights, including all claims that Barclays is only entitled to the monetary value of the legitimately claimed Clearance Box Assets as of September 19, 2008.

I am happy to discuss these issues further with you and look forward to the April 7 meeting.

Very truly yours,

*/s/ Neil J. Oxford*

Neil J. Oxford

-4-

61341723

# EXHIBIT 7

# BOIES, SCHILLER & FLEXNER LLP

5301 WISCONSIN AVENUE, N.W. • WASHINGTON, D.C. 20015-2015 • PH. 202.237.2727 • FAX 202.237.6131

April 6, 2011

Mr. Neil Oxford
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004

Dear Neil:

Thank you for your letter of March 30, 2011.

I can confirm that the individuals for Barclays who will attend the meeting scheduled for April 7, 2011 at 10 a.m. at your offices will be some or all of the following: Alastair Blackwell; Jim Hraska; Anthony Crispino; Rick Policke; Bill Gallagher; Alan Kaplan; Jonathan Shaw; Jonathan Schiller; and Hamish Hume. I also confirm our mutual agreement that the communications in the meeting will be covered by FRE 408.

In your March 30 letter, you ask Barclays to provide you in advance of the April 7 meeting with information regarding the "final lists that represent the undelivered Clearance Box Assets that Barclays claims," and "the methodology underlying the lists." As you know, Barclays has created a series of four related lists (previously identified as Lists A, B1, B2 and C) showing undelivered Clearance Box Assets. These lists are contained in BCI Exs. 735, 885, and 886.[1] The methodology used to create those lists was set forth in the written deposition notes produced before Jim Hraska's 30(b)(6) deposition – subsequently marked as BCI Ex. 145 – and was a subject of Mr. Hraska's deposition testimony. Mr. Hraska will attend the April 7 meeting.

These BCI exhibits (735, 885, and 886) represent at least a partial list of the undelivered Clearance Box Assets that were prepared on the basis of the November 17, 2008, stock record. *See* Jan. 15, 2010 Hraska Dep. Tr. at 92:21-93:19. We continue to request the stock records and transaction records that the Trustee has prepared that will show whether any assets were moved out of the clearance boxes between September 22 and November 17, 2008, that should be added to these lists. Please provide us at your earliest convenience any evidence supporting your recent contention that these partial lists include CUSIPs that "are not undelivered clearance box positions."

In addition to the four lists referenced above, Barclays believes there may well be other undelivered Clearance Box Assets. Those lists were prepared based upon the stock records and clearance boxes accessible through the ADP mainframe (through what is

---

[1] As you know, BCI Ex. 735 is the cover letter from Barclays outside counsel Lindsee Granfield attaching lists A and B1 separately. BCI Ex. 885 is another document containing the same of two lists. BCI Ex. 886 contains the assets on Lists B2 and C combined.

1

BOIES,    SCHILLER & FLEXNER LLP

called the TMS system).  To determine if there are other clearance box assets not on those lists, Barclays requires access to the electronic data from the MTS and ITS mainframes to which the Trustee has access.  Please provide Barclays with access to this electronic data on April 7.

You state in your March 30 letter that it is unduly burdensome for the Trustee to provide a record of transactions from all of LBI's clearance box accounts from September 22, 2008 to present.  There is no such burden.  The Trustee has prepared a reconciliation of the LBI stock record and a record of transactions (including journals) which contain the information we have requested.  At our April 7 meeting, please provide the stock records (for ADP, MTS, and ITS) for September 22, 2008, and April 6, 2011, as well as the November 17, 2008 stock record from ADP and a record of all transactions (including journal entries) for each of the three mainframes from September 22, 2008, through April 6, 2011.

We look forward to meeting with you on April 7.

Sincerely,

Hamish Hume

cc:    Jonathan D. Schiller

2

# EXHIBIT 8



Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

April 11, 2011

<u>By Email</u>
Hamish P.M. Hume, Esq.
Boies, Schiller & Flexner LLP
5301 Wisconsin Ave., NW
Washington, DC 20015

Re:  *In re Lehman Brothers Holdings Inc., et al.*, Case No. 08-13555 (JMP) (Bankr. S.D.N.Y.) (Jointly Administered); *In re Lehman Brothers Inc.*, Case No. 08-1420 (JMP) (Bankr. S.D.N.Y.)

Dear Hamish:

I write concerning the Margin Assets and the Clearance Box Assets.

**Margin Assets**

Your April 6 letter does not address the Margin Assets, much less confirm, as requested in my letter of March 30, that the information that Barclays produced during discovery concerning the Margin Assets is complete, accurate and up-to-date. We requested these confirmations in the hope of narrowing and possibly eliminating certain factual issues in anticipation of the April 11 chambers conference with the judge, but did not hear back from you. Please provide the confirmations requested in my March 30 letter concerning the Margin Assets as soon as possible.

Separately, in accordance with the colloquy at today's chambers conference, I believe it would be helpful for us to meet and confer at least by telephone (or in person, if you prefer) to discuss further our clients' differing approaches to the proposed orders on the Margin Assets. We are available after 4:00 p.m. on April 13 or the morning of April 19. Please let me know as soon as possible if those dates work for you. If they do not, please propose some alternatives.

**Clearance Box Assets**

My March 30 letter asked that Barclays provide one final master list of the undelivered Clearance Box Assets it is claiming. This request stems from the confusion caused by the multiple and overlapping lists of undelivered clearance box CUSIPs that Barclays has

provided at various times. Although your April 6 letter indicated that Barclays would not countenance this very reasonable request, Barclays agreed at the April 7 meeting that it will provide the Trustee with one master list of all Clearance Box CUSIPs Barclays has claimed to date, with (if possible) identification of the list or lists (A, B1, etc.) on which that request was made previously.

Separately, your April 6 letter came as a surprise to the Trustee because it suggests for the first time that Barclays is seeking to add an unspecified and potentially unbounded set of CUSIPs to its claim for the Clearance Box Assets, after providing no such indication during trial. Now that a decision has been issued in its favor, Barclays appears to be seeking to conduct extensive post-trial discovery to support an expansive search (across two stock records it apparently neglected for the last 30 months) for additional Clearance Box Assets. This is wholly unwarranted.

As I explained at the meeting, we consider Barclays' request – as articulated for the first time in your April 6 letter – that the Trustee provide Barclays with the ADP, MTS and ITS stock records for September 22, 2008, November 17, 2008 and April 6, 2011 and *all* transactional history from each of these three systems from September 22, 2008 to April 6, 2011 to be entirely unreasonable.[1]  Our reasons include, but are not limited to, the fact that the request is burdensome and overbroad in the extreme, and that a large portion of the requested data is both irrelevant to any issue regarding the Clearance Box Assets and confidential and proprietary to the LBI estate. Nonetheless, as I expressed at the meeting, without waiving any rights, the Trustee is willing to consider any reasonable requests for information by Barclays in an attempt to further the resolution of the Clearance Box issues.

In light of the Trustee's concerns, Barclays agreed at the April 7 meeting to narrow its requests for information to the ADP, MTS and ITS stock record data for September 19 and 22, 2008, ADP stock record data for November 17, 2008 and the MTS and ITS stock records for the last day they were maintained by the Trustee's professionals before all three stock records were consolidated.

In response to your requests, the relevance of which we do not concede, we are hand delivering to your New York office today a disc containing the ADP, MTS and ITS stock record data for September 19 and 22, 2008, the ADP stock record data for November 17, 2008 and the MTS stock record data for May 28, 2010 (the last stock record for MTS prior to conversion).[2, 3]  The request for the later ITS stock record data presents technical issues that we are currently investigating. We will advise you of our position as soon as possible.

---

1.  Your April 6 letter implies that Barclays has been asking for "stock" and "transaction" records for the three mainframes for some time. Other than your March 17, 2011 letter, which asks only for transaction records, we are not aware of any such prior requests, either during the lengthy discovery in this matter or at anytime thereafter.

2.  You requested that the stock record information be provided to Barclays in MS Excel format. We are providing you the information in original text format because that is both more efficient and accurate; specifically, it will allow Barclays to control the integrity of the data during conversion from text to MS Excel format.

61341723

Separately, we also agreed to provide you, pursuant to FRE 408, two additional categories of information:

A.    Deloitte's most complete lists to date of CUSIPs claimed by Barclays in BCI Exs. 885, 886 and 967 (the "Claimed CUSIPs") that we believe do not constitute Clearance Box Assets – these lists are based on Deloitte's ongoing analysis of the Claimed CUSIPs. The MS Excel file, also included on the disc being delivered, includes the following:

1) "Physicals" tab, which reflects the Claimed CUSIPs for which the full or partial claimed quantity are physical securities on September 19, 2008;

2) "Firm Net" tab, which reflects the Claimed CUSIPs for which the firm net position for that CUSIP on the September 19, 2008 LBI stock record was either less than Barclays' claimed quantity or is a net firm short position; and

3) "Non-Firm Longs" tab, which reflects the Claimed CUSIPs that had customer or segregated long positions on the September 19, 2008 LBI stock record, such that they reduce or eliminate the firm positions claimed by Barclays.

The backup for the spreadsheet is available to Barclays in the stock records that we are making available. I think it would be helpful to have another meeting, by telephone initially if that is easier to arrange, once Barclays has had an opportunity to review and analyze the information provided by the Trustee. Please suggest some dates in the middle or towards the end of next week.

B.    Corporate actions that have occurred on the Claimed CUSIPs – we will endeavor to provide you by April 22, 2011, the details, in the aggregate, of the corporate actions delivered to the Trustee.

The data being provided to Barclays is confidential and proprietary information of the LBI estate and, as such, Barclays is prevented from sharing this information with any third party, other than its counsel, without the Trustee's written consent.

## Briefing Schedule

I confirm that we agreed in Court today on the following briefing schedule for any unresolved issues related to the proposed orders: simultaneous exchange of opening briefs on April 28, with simultaneous reply briefs exchanged on May 4th. I propose that we email these, with any referenced exhibits, at 5:00 p.m. on the relevant days. Please confirm your understanding and agreement.

---

3.    All stock record populations were downloaded from E-Doc/HDR. For the ADP stock records, the downloads from E-Doc/HDR were already limited to LBI. The downloads for MTS and ITS were more inclusive. Accordingly, we have only included and are delivering to you the LBI stock records from MTS and ITS for the relevant dates. For MTS, we are providing you the stock record information for the following: Company G – "LBI - LEHMAN BROTHERS INC.", Company P – "LEHMAN BROTHERS INC.", and Company 8 – "LBI-LEHMAN BROTHERS INC- CAN$". For ITS, we are providing you the stock record information for the following: Company 311, Company 369, and Company 459.

-3-

I think it prudent that we continue to monitor our progress in narrowing the issues in dispute and, should a short amount of additional time be considered productive, revisit the May 9 hearing date.

*******

This letter and the provision of the above information to Barclays is not intended to limit or waive the Trustee's rights and arguments with respect to the Clearance Box Assets and the Margin Assets and the Trustee reserves all such rights, including all claims that Barclays is only entitled to the monetary value of the legitimately claimed Clearance Box Assets as of September 19, 2008 and that end of day September 19, 2008 is the relevant point in time as of which Barclays' right to the Clearance Box Assets is to be determined

I am happy to discuss these issues further with you.

Very truly yours,

*/s/ Neil J. Oxford*

Neil J. Oxford

61341723