WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Lori R. Fife
Richard W. Slack
Robert J. Lemons

Attorneys for Debtor
and Debtor in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
:
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*, : **08-13555 (JMP)**
:
Debtors. : **(Jointly Administered)**
:
:
------------------------------------------------------------------x

**DEBTORS' OBJECTION TO GIANTS STADIUM LLC'S MOTION FOR LEAVE
TO CONDUCT DISCOVERY OF THE DEBTORS PURSUANT TO FEDERAL
<u>RULE OF BANKRUPTCY PROCEDURE 2004</u>**

US_ACTIVE:\43691552\10\58399.0008

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

In re Bennett Funding Grp., Inc.,
    203 B.R. 24 (Bankr. N.D.N.Y. 1996) ...............................................................................9

In re Dinubilo,
    177 B.R. 932 (E.D. Cal. 1993)........................................................................................11

In re Duratech Indus., Inc.,
    241 B.R. 283 (E.D.N.Y. 1999) .........................................................................................8

In re Enron Corp.,
    281 B.R. 836 (Bankr. S.D.N.Y. 2002)........................................................................7, 10

In re Hilsen,
    2008 WL 2945996 (Bankr. S.D.N.Y. July 25, 2008) .......................................................7

In re J&R Trucking, Inc.,
    431 B.R. 818 (Bankr. N.D. Ind. 2010)...................................................................... 10-11

Kahn v. Dastejerdi (In re Dastejerdi),
    2001 WL 1168178 (Bankr. E.D. Va. Sept. 21, 2001) ......................................................7

Official Comm. of Unsecured Creditors v. Eagle-Picher Indus., Inc. (In re Eagle-
    Picher Indus., Inc.),
    169 B.R. 130 (Bankr. S.D. Ohio 1994)............................................................................7

In re Strecker,
    251 B.R. 878 (Bankr. D. Colo. 2000) ........................................................................... 7-8

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 2004(b) ........................................................................................................6

Fed. R. Bankr. P. 7026-7037................................................................................................ 9-10

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Special Financing, Inc. ("LBSF") and Lehman Brothers Holdings, Inc. ("LBHI") as debtors in possession (the "Debtors" and, collectively with its debtor and non-debtor affiliates, "Lehman"), object to the Motion (the "Motion") of Giants Stadium LLC ("Giants Stadium") for leave to conduct discovery of the Debtors pursuant to Federal Rule of Bankruptcy 2004 ("Rule 2004") dated April 14, 2011 [Docket No. 16016], and respectfully state:

### PRELIMINARY STATEMENT

1. This Motion represents an inappropriate attempt by Giants Stadium, a counterparty to certain derivative contracts with the Debtors, to circumvent the applicable discovery rules pertaining to allowance or disallowance of its filed proofs of claim (the "Proofs of Claim"). It appears that Giants Stadium is seeking retaliation in response to the Debtors' investigation under Rule 2004 as to the merits of Giants Stadium's claims focused upon certain derivative contracts with Giants Stadium as authorized by the Court's November 23, 2009 order (the "Rule 2004 Order").

2. In the context of the complex issues raised by the unwinding of the somewhat opaque derivative contracts and claims in these chapter 11 cases, the Debtors have served Rule 2004 discovery on many counterparties relating to unresolved derivative contracts. Giants Stadium filed proofs of claim for approximately $300 million in connection with these derivative contracts. The Debtors' Rule 2004 discovery regarding Giants Stadium's claims and the related derivative contracts is ongoing. The conclusion of the Debtors' examination of Giants Stadium's claims may result in no

objection to the allowance of such claims.

3. In that context, the Rule 2004 examination sought by Giants Stadium is inappropriate and unnecessary. Indeed, if the Debtors' review of Giants Stadium's derivatives contracts results in allowance of Giants Stadium's claims, the examination sought by Giants Stadium would be a complete waste of estate resources. Should the Debtors conclude the claims of Giants Stadium should be challenged, then any objection will be subject to applicable discovery rules and Giants Stadium will have the opportunity to take discovery from the Debtors in the context of such objection.

4. In addition, Rule 2004 examinations are discretionary and primarily to assist estate fiduciaries to ascertain the facts and circumstances pertaining to a bankrupt's estate. It is not intended to subsume discovery rules applicable to contested matters or adversary proceedings. Rule 2004 enables a "fishing expedition" to facilitate estate fiduciaries in ascertaining the assets and liabilities of a bankrupt estate. Rule 2004 may not be used by a creditor as a substitute for the applicable discovery rules. Giants Stadium has already filed claims in the LBHI and LBSF chapter 11 cases. It has no need to investigate whether it has a claim under Rule 2004.

5. The Debtors are still in the process of reviewing hundreds of thousands of unresolved derivative contracts with thousands of counterparties. Allowing these counterparties to take broad and intrusive Rule 2004 discovery of the Debtors before the filing of objections to allowance of claims or the filing by Debtors of adversary proceedings would be burdensome, time-consuming and unreasonably expensive. This is especially true here, where the Debtors' investigation is incomplete.

**FACTUAL BACKGROUND**

6.      In August 2007, Giants Stadium issued auction rate securities (the "ARS"). Auction rate securities are debt instruments with a long-term nominal maturity for which the interest rate is regularly reset through an auction. Goldman Sachs & Co. ("Goldman Sachs") and Lehman were initial purchasers of the ARS, and each managed auctions for certain tranches of the ARS.

7.      In connection with the ARS offering, LBSF and Giants Stadium entered into two substantively identical interest rate swaps guaranteed by LBHI (the "Transactions"), each pursuant to two separate 1992 ISDA Master Agreements dated July 27, 2007 (collectively, and together with the schedules and exhibits thereto and each confirmation exchanged with regard to the Transactions, the "Master Agreements"). (Copies of the Master Agreements are attached as Exhibit A to the Motion.) Under the Transactions, LBSF paid a floating rate of interest to Giants Stadium based on the auction rate for the underlying ARS.

8.      On September 15, 2008, LBHI filed its chapter 11 petition. Three days later, on September 18, 2008, Giants Stadium purported to terminate the Transactions.

9.      On October 2, 2008, Giants Stadium sent LBSF letters for each of the Transactions (the "Calculation Letters"), which purported to calculate the Settlement Amount owed under the Master Agreements. (Copies of the Calculation Letters are attached as Exhibit C to the Motion.) Purportedly applying the Loss methodology, Giants Stadium determined that LBSF owed Giants Stadium a Settlement Amount of $301,025,197 as a result of its early termination of the Transactions.

10. Giants Stadium filed the Proofs of Claim against LBHI and LBSF, each in the amount of $301,804,617.14. See Motion ¶ 6. The Giants Stadium Proofs of Claim are but two of the thousands of claims which have been filed against the Debtors by different counterparties in connection with their pre-petition derivative contracts with Lehman. In the aggregate, these claims seek to recover hundreds of billions of dollars from the Debtors.

11. In order to assist the Debtors in their investigation of such claims, as well as to determine whether the Debtors have any affirmative claims against their derivative counterparties, among other things, on November 23, 2009 the Court entered the Rule 2004 Order, which permits the Debtors to serve subpoenas for document production and initiate oral examinations pursuant to Bankruptcy Rule 2004. See Declaration of Michael J. Firestone (the "Firestone Decl.") ¶ 2. To date, the Debtors have served subpoenas pursuant to the Rule 2004 Order upon more than fifty derivative counterparties. See id.

12. As they have with numerous other derivative counterparties, the Debtors are reviewing the issues surrounding the Transactions, and pursuant to the Rule 2004 Order, served a subpoena (the "Subpoena") upon Giants Stadium for the production of documents. See id. ¶ 3. Giants Stadium has produced certain documents pursuant to the Subpoena. The Debtors intend to examine Giants Stadium's Chief Financial Officer. See id. The 2004 discovery in not complete. In the interim, the parties are attempting to work out certain remaining examination issues with respect to the 2004 examinations, including Giant Stadium's assertion of attorney-client and work product privilege over communications that included Goldman Sachs, which (as noted above) acted, among

other things, as initial purchaser and auction agent for the ARS. <u>See</u> <u>id.</u> The Debtors' examination of the issues surrounding the derivative contracts with Giants Stadium is ongoing. <u>See</u> <u>id.</u>

13. On April 6, 2011, Giants Stadium's attorneys informed the Debtors that Giants Stadium intended to file a Motion seeking discovery from Debtors under Rule 2004; in addition to providing Debtors with a copy of the Motion, Giants Stadium asked whether Debtors would consent to the Motion. <u>See</u> <u>id.</u> ¶ 4. On April 8, 2011, Giants Stadium was advised that its request for examination was unnecessary and premature at best, because the Debtors' investigation was ongoing. As we stated:

> We are still engaged in our investigative process. At the conclusion of that process, we could agree with Giants Stadium's views of the swap as set forth in the proof of claim or we could determine that there are issues that the parties need to resolve. Those disputes will be the subject of either a claims process or an adversary proceeding in the Bankruptcy Court. In either case, Giants Stadium will have ample opportunity, if the need arises, to take discovery at that time in the context of such proceedings. We look forward to completeing [sic] our investigation and working with you on the next steps.

<u>See</u> <u>id.</u> ¶ 5. Giants Stadium did not respond to this communication or provide the Debtors with any basis to support any supposed need for Rule 2004 discovery at this time. <u>See</u> <u>id.</u>, at ¶ 6.

14. Instead, on April 14, 2011, Giants Stadium filed this Motion seeking broad discovery from Debtors in connection with the Transactions under Rule 2004. Giants Stadium claims it is

> seeking the information at this time because information regarding the valuation methodology Debtors have employed when valuing other derivative transactions, and information relating to any 'hedging' transactions Debtors entered into in relation to the

> Transactions, may relate to the calculation of Loss resulting from the Termination of the Transactions, and also to the property, liabilities, financial condition, and administration of the Debtors' estate, and thus to Giants Stadium's claims against the estate."

Motion ¶ 16.

15. Patently, if the Giants Stadium claims are allowed, there will be no need for the broad and expansive examination requested. Information as to the financial condition of the Debtors' estates is readily available from public records and will be set forth in any approved disclosure statement. Further, the production of documents concerning "valuation methodologies that DEBTORS have employed to value 'Loss,' as defined in an ISDA master agreement and covering an interest rate swap to which Debtors are or were a party" is extremely broad. See Request No. 2, attached in Schedule 1 to the Motion. This request would require Debtors to produce documents potentially with respect to over ***one million derivative contracts***. It would require the Debtors to examine its more than a million derivative contracts to determine whether the Loss method was used to value the transactions at issue, and then further determine the specific methodology used each time under Loss – under the circumstances, a totally unwarranted burden to be imposed on the Debtors.

## ARGUMENT

### I. APPLICABLE STANDARD UNDER RULE 2004

16. The scope of an examination sought under Bankruptcy Rule 2004 may relate to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge." See Fed. R. Bankr. P. 2004(b). The standard for granting a motion for examination under Rule 2004 is well-established. As this Court has

US_ACTIVE:\43691552\10\58399.0008

6

previously held, a "party in interest may use Rule 2004 to determine the nature and extent of a bankruptcy estate and to ascertain whether wrongdoing has occurred." In re Hilsen, 2008 WL 2945996, *4 (Bankr. S.D.N.Y. July 25, 2008) (Peck, J.) (citations omitted).

17.  The granting of a motion under Bankruptcy Rule 2004 is within the discretion of the Court. See In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As the permissive language of the rule suggests, the Court has the discretion to grant a request for a 2004 examination . . . .") (citations omitted).  Courts have *not* hesitated to exercise their discretion to deny Rule 2004 motions brought by creditors where, among other grounds:  (i) it would be burdensome, costly and/or disruptive to the debtor, see, e.g., Official Comm. of Unsecured Creditors v. Eagle-Picher Indus., Inc. (In re Eagle-Picher Indus., Inc.), 169 B.R. 130, 134-35 (Bankr. S.D. Ohio 1994) (denying Rule 2004 motion by Unsecured Creditors' Committee; "Furthermore, the discovery proposed in the present motions is extremely broad and would clearly be disruptive and costly for debtors, while the benefit to movants [in obtaining the information sought] is far from clear.") (ii) it would be unnecessary because the information sought could be obtained with respect to a contested matter via the normal discovery process,  see, e.g., Kahn v. Dastejerdi (In re Dastejerdi), 2001 WL 1168178, at *6 (Bankr. E.D. Va. Sept. 21, 2001) (denying Rule 2004 motion by creditor; "Since the documents the plaintiff is seeking from the debtor may be obtained by the normal discovery process, a Rule 2004 examination is unnecessary and improper."); or (iii) where the Rule 2004 motion is brought for an improper purpose, see, e.g., In re Strecker, 251 B.R. 878, 882 (Bankr. D. Colo. 2000) (denying Rule 2004 motion by creditor; "As a general rule, examinations under Rule 2004 are allowed for the purpose of discovering assets, examining

transactions, and determining whether wrongdoing has occurred. . . . Although Rule 2004 examinations have been characterized as fishing expeditions, they are not without bounds." (internal quotations and citations omitted) (<u>citing</u> <u>In re Duratech Indus., Inc.</u>, 241 B.R. 283, 289 (E.D.N.Y. 1999) (affirming Bankruptcy Court's denial of Rule 2004 motion by creditor; "Examinations under Rule 2004 are allowed for the 'purpose of discovering assets and unearthing frauds . . . .'")).

### II.     <u>GIANTS STADIUM'S RULE 2004 MOTION SHOULD BE DENIED</u>

18. The 2004 request by Giants Stadium should be denied for the independent grounds that (1) Giants Stadium has not and cannot show why discovery of the Debtors should occur now; (2) Giants Stadium's claims as filed have not been contested. Any discovery by Giants Stadium should await the outcome of the Debtors' review of the claims. If objections are interposed, the applicable discovery rules should prevail and not Rule 2004; (3) it would be burdensome, costly, and disruptive to the Debtors to engage in Rule 2004 examinations now; and (4) the overwhelmingly broad scope and timing (i.e., coming only after Debtors pursued Rule 2004 examinations) warrants denial.

### A.     <u>Rule 2004 Discovery By Giants Stadium At This Time Is Unnecessary</u>

19. Giants Stadium has not cited a single case or any other authority in support of its argument that it should be allowed to use Rule 2004 as a discovery tool at a time when the Debtors are engaged in an intensive review of the swaps at issue – as authorized by this Court's prior order. This review may render further proceedings unnecessary. Indeed, and as the Debtors informed Giants Stadium prior to the Motion being filed, the Debtors are in the process of determining whether there are any

sustainable objections to its claims.

20. The Debtors may ultimately agree with Giants Stadium's calculation of the Settlement Amount, or they could determine that there are issues which need to be resolved through either the claims process or in a contested matter. Under the former scenario, there will be no need for Giants Stadium to take any appropriate discovery; under the latter, Giants Stadium will have ample opportunity to take proper discovery during the claims reconciliation process. Rule 2004 examinations are inappropriate.

> B. Giants Stadium's Attempted Use Of Rule 2004 After Filing A Claim Is Inappropriate

21. Rule 2004 discovery, if granted by a court, permits parties to conduct a "fishing expedition" so that they can determine – outside of a litigation or contested claim context – information as to the affairs of a debtor. Rule 2004 "is properly used ***as a pre-litigation device to determine whether there are grounds to bring an action*** to determine a debtor's right to discharge or the dischargeability of a particular debt." In re Bennett Funding Grp., Inc., 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996) (emphasis added) (citation omitted).

22. This delineation between Rule 2004 and a contested matter or an adversary proceeding is critical since Rule 2004 "is meant to give the inquiring party broad power to investigate the estate, [but] it does not provide the procedural safeguards offered by Fed. R. Bankr. P. 7026." Id. Once a contested matter or an adversary proceeding is commenced, the Bankruptcy Rules apply the safeguards of the Federal Rules of Civil Procedure related to evidentiary objections, such as discovery that is not reasonably calculated to lead to admissible evidence, discovery that is outside the scope of triable issues, and the amount of time allocated for discovery responses. See Fed. R.

Bankr. P. 7026-7037.  Thus, "[b]ased on Rule 2004's substantive differences [from the Federal Rules of Civil Procedure], courts have expressed concern that Rule 2004 examinations not be used as a tactic to circumvent the safeguards of the Federal Rules of Civil Procedure."  In re Enron Corp., 281 B.R. at 841.

23.  Here, Giants Stadium has already determined that it has claims, and it has filed those claims against LBHI and LBSF.  It is therefore inappropriate for Giants Stadium to conduct a "fishing expedition" under Rule 2004, since Giants Stadium does not need to conduct broad examinations to establish whether and to what extent it has a claim against the estate.  Giants Stadium's claims represent prima facie allowable claims until contrary action is taken by the Debtors or other parties in interest.

24.  A recent decision by the Bankruptcy Court for the Northern District of Indiana, In re J&R Trucking, Inc., 431 B.R. 818 (Bankr. N.D. Ind. 2010), is instructive.  In that case, several creditors sought Rule 2004 discovery from a chapter 7 debtor and other non-debtor third parties.  The Court denied their motion, holding that if granted, it would "transform [Rule 2004] from an investigatory device, designed to expedite the administration of the bankruptcy estate, into something not unlike a proceeding supplemental, which creditors could use in an effort to collect the amounts due them outside the bankruptcy proceeding."  Id. at 821.  Echoing the Bennett Funding decision cited above, the Court noted that

> [d]iscovery can only take place in the context of some sort of dispute—be it an adversary proceeding or a contested matter—and the scope of inquiry is limited to issues which are relevant to that dispute.  A 2004 examination, on the other hand, not only does not require the existence of litigation to justify the inquiry, but, such a dispute prevents recourse to it.  A 2004 examination is not a substitute for discovery; if the traditional discovery tools are available the potential examiner is required to use them and may not

> take advantage of Rule 2004. . . . ***[Rule 2004] allows the trustee to do the necessary investigatory work without the need for initiating formal litigation which would trigger the traditional discovery tools. Indeed, one purpose for such an examination is to give the trustee the information needed to determine whether litigation should be filed.***

Id. at 821-22 (emphasis added) (citations omitted). Thus, while the Debtors can use Rule 2004 discovery as an investigatory tool "without the need for initiating formal litigation," that tool is generally not available to creditors. Accordingly, Giants Stadium may not use Rule 2004 as a "substitute for discovery." See also In re Dinubilo, 177 B.R. 932, 939-940 (E.D. Cal. 1993) ("Without any limiting principles on the Rule of 2004 as a discovery tool, Rule 9014, adopting Federal Rules of Civil Procedure for conducting discovery in contested bankruptcy matters, would be rendered superfluous").

25.     Nowhere in the Motion does Giants Stadium provide the Court with any compelling justification for allowing it to bypass established discovery if and when objections may be interposed to its claims. Moreover, as Giants Stadium's Proofs of Claim were filed nineteen months ago, the very notion that Giants Stadium has now suddenly determined (not coincidentally, only after Debtors have sought Rule 2004 discovery from Giants Stadium), that it somehow needs to conduct a fishing expedition is not credible.

      C.    Granting Giants Stadium's Motion Would Be Costly And An Enormous Burden On Debtors

26.     Giants Stadium is but one of thousands of derivative counterparties with unresolved derivative contracts, all of whom are in a similar position as Giants Stadium here. Discovery by these derivative counterparties would constitute a significant, expensive, and time consuming burden on the resources of the Debtors. Such examinations, if permitted, would divert essential resources of the Debtors and

would disrupt the ability of the Debtors to effectively deal with the claims reconciliation process which has been authorized by the Court.[1]

27.  As this Court recognized in connection with the 2004 Order, Rule 2004 discovery is a tool which should be readily available to *the Debtors* in order to aid their recovery of estate assets. Clearly, Giants Stadium misconstrues the purpose of Rule 2004. It should not be allowed to use Rule 2004 in order to set in motion an examination process which would be costly, burdensome as well as counter-productive to the orderly administration of the chapter 11 cases.

D.   Reservation Of The Debtors' Rights

28.  The actual document requests proposed by Giants Stadium in Schedule 1 to the Motion are subject to numerous objections, including, as noted above, burden and breadth. The Debtors reserve all of their rights to object to the requests, including as to scope and breadth of the requests, at the appropriate time.

---

[1] Indeed, this Court has ordered in the Claims Order that the "hearing to consider an objection to Proofs of Claim as to which a Response is properly filed and served (each a 'Contested Claim'), shall be set for a contested hearing (each, a 'Claims Hearing'), *to be scheduled by the Debtors, in their sole discretion* . . ." Ex. A to Claims Order, Claims Procedures at § 3 (emphasis added) [Docket No. 8474].

## **CONCLUSION**

29. Giants Stadium's Motion should be denied in all respects.

Dated: May 9, 2011
New York, New York

By: <u>s / Richard W. Slack</u>
Lori R. Fife
Richard W. Slack
Robert J. Lemons

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtor
and Debtor in Possession

US_ACTIVE:\43691552\10\58399.0008

13