Hearing Date and Time: June 2, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: May 11, 2011 at 4:00 p.m. (Prevailing Eastern Time)

**EDWARDS ANGELL PALMER & DODGE LLP**
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411
Fax: (212) 308-4844
Larry D. Henin
Paul J. Labov

And

**EDWARDS ANGELL PALMER & DODGE LLP**
111 Huntington Avenue
Boston, MA 02199-7613
Telephone: (617) 239-0100
Facsimile: (617) 227-4420
Charles L. Glerum

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | Chapter 11 Case No. |
| LEHMAN BROTHERS HOLDINGS, INC., | : | 08-13555 (JMP) |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

### EDWARD J. LILL'S RESPONSE TO DEBTORS' ONE HUNDRED TENTH OMNIBUS OBJECTION TO CLAIMS

Edward J. Lill (the "Respondent"), by and through his undersigned counsel, hereby files this response to the above-captioned Debtors' One Hundred Tenth Objection to Claims (the "Objection"),[1] and respectfully states as follows:

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

BOS111 12576657.6

**INTRODUCTION**

The Debtors allege that Respondent's claim for pension benefits arises out of the Lehman Brothers Holdings Inc. Retirement Plan (the "LBHI Retirement Plan") and that, as a result of the settlement agreement that the Debtors' entered into with the Pension Benefit Guaranty Corporation (the "PBGC") in May of 2009 (the "Settlement Agreement") providing for, among other things, the termination of the LBHI Retirement Plan, Respondent's claim should be disallowed. As set forth in detail below, Respondent's claim was not related to the LBHI Retirement Plan but rather was based upon separate contractual agreements with the Debtors which were in no way impacted by the Settlement Agreement. Accordingly, the Objection to the Respondent's claim should be overruled.

**BACKGROUND**

A.     The Bankruptcy Case

1.     On September 15, 2008 (the "Petition Date"), Lehman Brothers Holdings Inc. ("LBHI") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. sections 101, et seq. (the "Bankruptcy Code"). Subsequently, twenty-two additional affiliates of LBHI (together with LBHI, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. These Debtors' bankruptcy cases have been consolidated for procedural purposes only and are being jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2.     On July 2, 2009, this Court entered its Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form establishing September 22, 2009 as the last date upon which creditors could submit timely proofs of claim in this case.

B.    The PBGC Settlement

3.    On May 7, 2009, the Debtors filed a motion (the "Settlement Motion") seeking authorization from this Court to settle claims of the PBGC regarding the termination of the LBHI Retirement Plan.

4.    According to the Settlement Motion, the LBHI Retirement Plan was a defined benefit pension plan covered by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").  See Settlement Motion at ¶ 10.  The LBHI Retirement Plan was open to the Debtors' employees and had approximately 22,000 participants.  After the Debtors' filed their bankruptcy petitions, the value of the assets in the LBHI Retirement Plan declined significantly, resulting in the LBHI Retirement Plan being underfunded relative to its total benefit liabilities.  As a defined pension plan falling within the coverage of ERISA, termination of the plan could only be effected by implementing the procedures set forth in Title IV of ERISA.  These procedures allow the PBGC to initiate the termination of an underfunded plan such as the LBHI Retirement Plan if it determines, among other things, that the plan will be unable to pay benefits when due.

5.    As more fully set forth in the Settlement Motion, the PBGC filed a complaint in the Southern District of New York on December 12, 2008, in which it sought to terminate the LBHI Retirement Plan and assume the plan's assets and liabilities, resulting in a potential claim against the Debtors' estates as well as certain non-debtor affiliates of LBHI in an amount estimated by the Debtors to total as much as $267,000,000.

6.    After months of negotiations, on May 4, 2009 the PBGC and the Debtors entered into the Settlement Agreement, which, among other things, provided for the termination of the LBHI Retirement Plan and provided for the resolution of the PBGC's claims for unfunded

benefit liabilities and additional premiums by requiring payment of $127,600,000 to the PBGC and the PBGC's withdrawal of its claims against LBHI and its affiliates arising from the LBHI Retirement Plan. See Settlement Agmt. at ¶ 5.

7. On June 3, 2009, this Court entered an order granting the Debtors' Settlement Motion thereby authorizing the payment of $127,600,000 to the PBGC and releasing the PBGC's claims against the Debtors arising from the LBHI Retirement Plan.

C. The Respondent's Claim

8. The Respondent served as a vice president and the chief financial officer of E.F. Hutton Group Inc. ("E.F. Hutton") pursuant to an employment agreement executed by the Respondent and E.F. Hutton on May 8, 1986 (the "Employment Agreement"). A copy of the Employment Agreement is attached hereto as Exhibit A. Under the terms of the Employment Agreement, the Respondent was entitled to participate in the qualified pension plan of E.F. Hutton and was contractually entitled to an annual pension benefit adopted for executives (the "Contractual Retirement Benefit"). At no time did Respondent participate in the LBHI Retirement Plan. See Employment Agmt. at 5.

9. The Contractual Retirement Benefit guaranteed minimum annual payments of $50,000 to the Respondent after he reached sixty years of age. See Employment Agmt. at 7. The Contractual Retirement Benefit further provided for upward adjustments to Mr. Lill's guaranteed annual pension payments by referencing any increase in the Consumer Price Index as of January 1st of each year after the Respondent qualified for payment. See Employment Agmt. at 6.

10. E.F. Hutton was acquired by Shearson Lehman Brothers on April 29, 1988 and the Respondent's employment by E.F. Hutton was terminated as a result of the acquisition on

April 30, 1988. E.F. Hutton's acquisition by Shearson Lehman Brothers constituted a "Change of Control" under the Employment Agreement and as such the Respondent's right to payment pursuant to the E.F. Hutton Plan was preserved. See Employment Agmt. at 6, 11. As part of the acquisition of E.F. Hutton, Shearson Lehman Brothers assumed the liabilities contained in the Employment Agreement, along with the employment agreements of other E.F. Hutton executives.

11. The Respondent began receiving annual payments in monthly installments pursuant to the Contractual Retirement Benefit directly from Lehman Brothers Inc. on July 16, 1997. The letter sent by Lehman Brothers Inc. confirming the initiation of payments to the Respondent under the Contractual Retirement Benefit (the "Plan Initiation Letter") is attached hereto as Exhibit B. These payments continued until September of 2008, when the Debtors filed their petition for relief under the Bankruptcy Code.

12. On July 14, 2009, the Respondent filed a timely proof of claim in the amount of $3,899,728.69 (the "Proof of Claim"). The Proof of Claim is attached hereto as Exhibit C. As set forth more fully in the Proof of Claim, this claim amount represents total amounts owing pursuant to the Contractual Retirement Benefit, using the mechanisms allowing for upward cost-of-living adjustments specifically called for in the Employment Agreement, beginning in September 2008 and terminating when the Respondent reaches ninety-four years of age. The Respondent's life expectancy is based upon an actuarial analysis provided by his current life insurance provider. The Proof of Claim does not assert any claim in connection with or related to the LBHI Retirement Plan.

13. On March 14, 2011, the Debtors filed the Objection in which they sought to expunge the claims of 280 claimants, including that of the Respondent, on the grounds that the

claims were against the LBHI Retirement Plan, subject to the Settlement Agreement, and therefore that the Debtors were not liable for the payment of such claims.

## LEGAL AUTHORITY

14. The Debtors bear the initial burden of persuasion in objecting to a proof of claim, and must produce "evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." In re Spiegel, Inc., No. 03-11540, 2007 WL 2456626, at *15 (Bankr. S.D.N.Y. Aug. 22, 2007) (citing In re Allegheny Int'l, Inc., 954 F.2d 167, 173–74 (3d Cir. 1992); see also In re Cluff, 313 B.R. 323, 337 (Bankr. D. Utah 2004) (to negate the prima facie validity of a claim, an objection must (i) assert in a writing filed with the court that there is some reason the claimant does not have a right to payment, (ii) be signed, (iii) assert, if appropriate, that the claim is in fact based on a writing and that the documentation attached to the claim is insufficient, and (iv) come forward with some legal reason or some factual evidence to defeat the claim).

## RESPONSE

15. The Objection should be overruled as it pertains to the claim of the Respondent because the Debtors have provided no evidence or legal reason upon which this Court could find that the disallowance of the Respondent's claim could be appropriate. The basis for the Debtors' Objection to the Respondent's claim rests solely on the erroneous conclusion that the Respondent's claim was related to the LBHI Retirement Plan and therefore settled pursuant to the terms of the Settlement Agreement, when it was not in fact contemplated by, or subject to, that agreement in any way. The Debtors state that "[i]n their review of the claims filed on the claims register in these chapter 11 cases, the Debtors have identified the [claims subject to the

Objection] as claims based upon pension-related obligations related to the LBHI Retirement Plan." See Objection at ¶ 9. The Respondent's claim, however, bears no relation to the LBHI Retirement Plan and is not subject to the Settlement Agreement. Instead, the Respondent's claim relates solely to the Contract Retirement Benefit. The Contract Retirement Benefit possesses the characteristics of a "top-hat" plan and as such is entirely separate from any benefits that may be payable under the LBHI Retirement Plan in connection with its termination.[2] Importantly, the Respondent never accrued any benefit under the LBHI Retirement Plan, guaranteed by the PBGC or otherwise.

16.   In brief, a "top-hat" plan is a plan providing benefits to a select group of executives such as the Contractual Retirement Benefit provided to Respondent and other executives at E.F. Hutton, as set forth in private employment agreements and not pursuant to the LBHI Retirement Plan. A "top-hat" plan is not subject to PBGC coverage under the provisions of Title IV of ERISA. See ERISA § 4021(b)(6).

17.   The dominant characteristic of a "top-hat" plan is its near-complete exemption from ERISA's substantive requirements. ERISA § 201(2) exempts top-hat plans from ERISA's minimum participation standards, minimum vesting standards, and various other content requirements. In addition, ERISA § 301(a)(3) exempts top-hat plans from ERISA's minimum funding requirements, and therefore the assets of a top-hat plan, unlike a fully-regulated pension

---

[2] That the Contract Retirement Benefit is a top hat plan and not a qualified pension plan under ERISA is based on a number of facts. For one, the Contract Retirement Benefit appears to have been made available to only a select group of highly-paid executives ("top hats") and therefore could not be deemed a qualified plan under ERISA because it is discriminatory. See 26 U.S.C. § 410(b) (setting forth prohibitions on ERISA-qualified plans that discriminate in favor of highly compensated employees). Additionally, given the value of the benefits provided under the Contract Retirement Benefit, it would be impractical for EF Hutton to have provided similar benefits on a company-wide basis in a manner satisfying the minimum coverage requirements needed to qualify for ERISA coverage. See id. (imposing minimum coverage requirements for all company employees with respect to employer-sponsored retirement plans). Further evidence that the Contract Retirement Benefit is not a qualified plan is the fact that the Respondent has not received any of the notices or reports with respect to that agreement that ERISA requires plan sponsors to send to the beneficiaries of qualified plans. See 29 CFR 2520. Finally, as set forth in paragraph 18 infra, the Debtors themselves have repeatedly referred to the Contract Retirement Benefit as a "special pension agreement", and not a qualified pension plan.

plan such as the LBHI Retirement Plan, are not set aside in trust, and are not subject to Title IV of ERISA or the PBGC's protections.

18.  As a "top-hat" plan, the Contractual Retirement Benefit was neither a pension plan covered by Title IV of ERISA nor affiliated in any way with the LBHI Retirement Plan. The Debtors' own correspondence with the Respondent confirms the fact that the Contractual Retirement Benefit was in fact not payable under, or part of, a pension plan covered by Title IV of ERISA. The Plan Initiation Letter itself, sent to the Respondent from the assistant vice president of Lehman Brothers Inc.'s savings and retirement division, states "[t]he enclosed check in the amount of $7,157.77 represents the initial payment due you as a result of your contract agreement with E.F. Hutton & Co. Your subsequent monthly <u>supplemental pension benefit check payments</u> will be . . . mailed directly from the Lehman Brothers payroll department." <u>See</u> Plan Initiation Letter (emphasis added). Further, subsequent letters from Lehman Brothers Inc. expressly stated that the benefits the Respondent received from Lehman Brothers Inc. were paid under a "Lehman Brothers Special Pension Agreement" and not the Lehman Brothers Retirement Plan. Copies of these letters are attached hereto as Exhibit D.

19.  Lending further support to the fact that Contractual Retirement Benefit was not related to the LBHI Retirement Plan nor intended to be impacted by the Settlement Agreement is the fact that the Respondent did not receive a copy of the Settlement Motion in advance of the hearing before this Court held to consider that Motion, nor did the Respondent receive notice of the fact that the hearing was being held at all. In the Settlement Motion, the Debtors state that they served a personalized notice of the Settlement Agreement and the relief requested by the Settlement Motion "on each of the [LBHI Retirement Plan] participants". <u>See</u> Settlement

Motion at ¶ 31.[3]  While whatever internal operations that lead to the Debtors' inconsistent treatment of the Respondent's claim cannot be ascertained, it would appear more than likely that the reason the Respondent's claim was not originally included on the service list for the Settlement Motion is because, at that time, the Debtors correctly did not identify the Respondent's claim as being subject to the Settlement Agreement because it was not within the LBHI Retirement Plan.

20.     The facts set forth above indicate that the inclusion of the Respondent's claim in the Objection most likely resulted from a simple clerical error and the Objection should therefore be overruled as it pertains to the Respondent for that reason alone.  However, out of an abundance of caution, the Respondent asserts that separate grounds exist to overrule the Objection to Mr. Lill's claim due to the fact that the Debtors failed to provide the Respondent notice of the Settlement Motion and this Court's hearing to consider that Motion.  Bankruptcy Rule 9019(a) explicitly requires a debtor to provide notice to its affected creditors before a bankruptcy court may approve the terms of a proposed settlement.  See Fed. R. Bankr. P. 9019(a) (On motion by the trustees and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors . . . as provided in [Bankruptcy Rule] 2002"); see also In re Leslie Fay Cos., Inc., 168 B.R. 294, 305 (Bankr. S.D.N.Y. 1994) ("Compromises may not be made in bankruptcy absent notice and a hearing and a court order.").  Given the fact that the Respondent did not receive notice of the Motion which sought to his settle his claim with the Debtors, the terms of the Settlement Agreement may not be enforced upon the Respondent and therefore, for this additional reason, the Debtors' Objection should be overruled.

---

[3] In connection with the service of the Settlement Motion, an Affidavit of Service was filed by an employee of Epiq Bankruptcy Solutions LLC attesting to service of the personalized notice to the persons on Exhibit C to the Affidavit. Mr. Lill (Respondent) was not among those listed in Exhibit C. See, DKT. NO. 3545 (5/11/2009).

WHEREFORE, the Respondent respectfully requests that the Court overrule the Objection as it relates to the Proof of Claim and grant such other and further relief as the Court deems just and proper.

Dated: May 11, 2011
      New York, New York

By: ____/s/ Paul J. Labov_____
EDWARDS ANGELL PALMER
 & DODGE LLP
750 Lexington Avenue
New York, New York 10022
Telephone: (212) 308-4411
Fax: (212) 308-4844
Larry D. Henin
Paul J. Labov

and

EDWARDS ANGELL PALMER
 & DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
Telephone: (617) 239-0100
Facsimile: (617) 227-4420
Charles L. Glerum