*United States Bankruptcy Court/Southern District of New York*    Pg 1 o

| | |
|---|---|
| Lehman Brothers Holdings Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | **UNIQUE IDENTIFICATION NUMBER: 1000193316** |
|---|---|---|
| Name of Debtor Against Which Claim is Held | Case No. of Debtor | Filed: USBC - Southern District of New York<br>Lehman Brothers Holdings Inc., Et Al.<br>08-13555 (JMP)    0000005343 |

NOTE: This form should not be used to make a claim for an administrative expense arising *after* the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

| | |
|---|---|
| Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)<br><br>L.BH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000193316\*\*\*\*\*\*<br>LILL,EDWARD J.<br>415 L'AMBIANCE DRIVE<br>UNIT 404<br>LONGBOAT KEY, FL 34228 | ☐ Check this box to indicate that this claim amends a previously filed claim.<br><br>**Court Claim Number:**<br>_____<br>*(If known)*<br><br>Filed on: _____ |
| Telephone number: *941-383-7200* Email Address: *edlill@comcast.Net* | |
| Name and address where payment should be sent (if different from above)<br><br>*Same As Above*<br><br>Telephone number: *941-383-7200* Email Address: *edlill@comcast.NET* | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>☐ Check this box if you are the debtor or trustee in this case. |

| | |
|---|---|
| **1.    Amount of Claim as of Date Case Filed: $** *3,889,728.69 (see discription of claim Attached)*<br><br>If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br>If all or part of your claim is entitled to priority, complete Item 5.<br>If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.<br><br>☐  Check this box if all or part of your claim is based on a Derivative Contract.\*<br>☐  Check this box if all or part of your claim is based on a Guarantee.\*<br>**\*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.**<br><br>☐  Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is based on a Derivative Contract or Guarantee. | **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim:<br><br>☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).<br><br>☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).<br><br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).<br><br>☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).<br><br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).<br><br>☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).<br><br>**Amount entitled to priority:**<br><br>$_____ |
| **2.    Basis for Claim:** *Pension Payments due to me by Lehman*<br>(See instruction #2 on reverse side.) | |
| **3.    Last four digits of any number by which creditor identifies debtor:** *employee # 10076837*<br>**3a.** Debtor may have scheduled account as: _____<br>(See instruction #3a on reverse side.) | |
| **4.    Secured Claim** (See instruction #4 on reverse side.)<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br>Nature of property or right of setoff:  ☐ Real Estate    ☐ Motor Vehicle    ☐ Other<br><br>Describe: _____<br><br>Value of Property: $_____ Annual Interest Rate _____%<br>Amount of arrearage and other charges as of time case filed included in secured claim, if any:<br>$_____ Basis for perfection: _____<br><br>**Amount of Secured Claim: $_____ Amount Unsecured: $_____** | |
| **6.    Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____**<br>(See instruction #6 on reverse side.) | |

| | |
|---|---|
| **7.    Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.<br>**8.    Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of *"redacted" on reverse side.*) If the documents are voluminous, attach a summary.<br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING. *See discription of claim with supporting documents Attached*<br>If the documents are not available, please explain: | **FOR COURT USE ONLY**<br><br>**FILED / RECEIVED**<br>**JUL 15 2009**<br>**EPIQ BANKRUPTCY SOLUTIONS, LLC** |
| Date:<br>*7/14/2009* | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.    *Edward Lill* |

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

**LEHMAN BROTHERS HOLDINGS INC., et al.**
**DESCRIPTION OF CLAIM**
**EDWARD J. LILL**

In the early 1980's E.F.Hutton Group Inc (Hutton) was indicted by the U.S. Justice Department on a significant number of counts involving fraud. After extended negotiations Hutton settled the matter by signing a Consent Decree with the U.S. Justice Department which provided, among other things, for Hutton to employ, on an executive level, a Chief Financial Officer. I was recruited to fill that position and in March 1986 I joined Hutton as Executive Vice President & Chief Financial Officer under an Employment Agreement dated May 8, 1986 (the Agreement). A copy of the Agreement is attached as EXHIBIT 1. In 1988, an affiliate of Shearson Lehman Brothers acquired the common stock of Hutton which constituted a Change of Control within the meaning of section 9 (D) of the Agreement. I was then notified that my employment would be terminated as of close of business on April 30, 1988. As a consequence of the Change of Control and Termination Without Cause provisions of the Agreement the minimum pension payments referred to in section 6 of the Agreement were paid without reduction. The amount of the minimum pension, before adjustment in accordance with the Consumer Price Index increase provisions applicable to the minimum pension as described in section 6 of the Agreement is $50,000.00 a year. The Consumer Price Index for New York Urban Consumers for January 1, 1988, the last January 1 preceding the date of my termination of employment, as stated in my termination agreement, is 121.3.

Subsequent to the acquisition by Shearson Lehman Brothers, there was a reorganization of their business which involved the sale of certain of the retail brokerage businesses to Smith Barney and the remaining capital markets type of business being retained by Lehman Brothers (LBI) and, for some reason, the responsibility for my pension payments and those of other former Hutton executives, was maintained by LBI. Payments for the eleven years 1997 through September 2008 (date of bankruptcy) were made by LBI with the appropriate CPI Index increases in accordance with the provisions of the Agreement. A SCHEDULE SHOWING ACTUAL PENSION PAYMENTS TO EDWARD J. LILL FROM FIRST PENSION PAYMENT JULY 16, 1997 TO SEPTEMBER 10, 2008 AND THE ANNUAL CPI ADJUSTMENTS MADE EACH JANUARY 1. is attached EXHIBIT 2.

A SCHEDULE SHOWING COMPUTATION OF CLAIM OF EDWARD J. LILL is attached as EXHIBIT 3. This claim assumes my life expectancy is to 94 years of age. I am now 77 and recently bought a life insurance policy that actuaries assume my life to 94. This claim also assumes the actual annual CPI Index increase for the 22 years 1986 to 2008 of 6.08% will be the average annual CPI Index increase for the remaining years of my life expectancy.

EXHIBIT 3 shows the total claim to be $3,889,728.69. If this claim is settled by a lump sum payment, this amount would be discounted to the present value at an appropriate rate to the date of the lump sum payment.

*EXHIBIT 1*

**EMPLOYMENT AGREEMENT,**

**dated MAY 8, 1986,**

**between**

**THE E.F. HUTTON GROUP INC. ("HUTTON"),**

**E.F. HUTTON & COMPANY INC. ("EFH")**

**and**

**EDWARD J. LILL ("LILL")**

WHEREAS Hutton and EFH desire to employ Lill and to enter into an agreement embodying the terms of such employment (the "Agreement"); and

WHEREAS Lill desires to accept such employment and to enter into such agreement;

NOW, THEREFORE, in consideration of the premises and mutual covenants contained herein and for other good and valuable consideration, the parties agree as follows:

1.    Term of Agreement.

The term shall be three years beginning March 3, 1986 and ending March 2, 1989, subject to automatic renewal for two consecutive one-year terms unless, in the case of each renewal, either party notifies the other that it does not want the term to so renew by written notice at least 12 months prior to the date the term will expire absent such renewal.

2.    Position.

Lill shall serve as (i) Executive Vice President of Hutton; (ii) Executive Vice President of Finance of EFH; (iii) Chief Financial Officer of Hutton and EFH; and (iv) Member of Hutton's Management Committee and any other committee composed of senior officers of Hutton or EFH with general management responsibilities.

In fulfilling the foregoing capacities Lill shall have responsibility for, and supervisory authority over, financial and regulatory reporting, annual planning and budgeting, treasury, tax, corporate development, internal and annual financial audits, and financial operations in all affiliates and subsidiaries.

In carrying out the foregoing positions, authorities and responsibilities of Hutton and EFH, Lill shall be appointed to appropriate positions with appropriate authorities and responsibilities in the subsidiaries of Hutton, including the Board of Directors of EFH.

It is the intention of the parties that, during the term of the Agreement, no officer or employee of Hutton or of any subsidiary of Hutton, other than the Chairman of Hutton, the President of Hutton and Scott Pierce, the Vice Chairman of Hutton, shall become a member of the Board of Directors of Hutton (the "Board") prior to Lill and no officer or employee of Hutton or of any subsidiary of Hutton, other than the Chairman of Hutton, the President of Hutton and Scott Pierce, the Vice Chairman of Hutton, shall be nominated by management of Hutton for election to the Board unless Lill is also nominated for election to the Board. Further, at all times during his employment, Lill shall be entitled to attend meetings of the Board in his capacity as Chief Financial Officer of Hutton whether or not he is then serving as a member of the Board.

Lill shall report directly to the President and Chief Operating Officer of Hutton.

3.    Base Salary.

EFH shall pay Lill a minimum base salary at the annual rate of $300,000. The base salary shall be reviewed annually and shall be subject to increase at the discretion of the Compensation Committee of the Board (the "Compensation Committee") taking into account such factors as Hutton and individual performance, salary increases for other senior officers and increases, if any, in the Consumer Price Index for New York (the "Consumer Price Index").

4.    Annual Bonuses.

For each calendar year during the term of the Agreement (including 1986), EFH shall pay Lill a minimum bonus of $300,000 or such larger amount as the Compensation Committee in its discretion shall determine, taking into account such factors as Hutton and individual performance, bonuses for other senior officers and increases, if any, in the Consumer Price Index. For the period of employment during the last calendar year in which falls the term of the Agreement, EFH shall pay Lill a pro rata bonus equal to $300,000, or such larger amount as the Compensation Committee in its discretion shall determine, taking into account such factors as Hutton and individual performance, bonuses for other senior officers and increases, if any, in the Consumer Price Index, multiplied by a fraction the numerator of which is the number of days in such calendar year during which Lill is employed, and the denominator of which is 365. All bonuses shall be paid to Lill at the same time bonuses are paid to other senior officers, which usually takes place within 45 days following the close of the calendar year to which such bonuses relate, unless Lill has elected to defer receipt of all or part of the bonus to which he is entitled in respect of such calendar year in accordance with the terms of Hutton's Partnership Awards Deferred Compensation Plan and/or EFH's Universal Savings Account. The parties

-3-

shall give consideration to the setting aside of the amounts deferred
by Lill in a life insurance policy.  Upon termination of employment
for whatever reason, EFH shall deliver to Lill, or to his legal
representative in the event of his death or legal incompetency,
ownership of any such life insurance policy unless the Board
determines otherwise taking into account the financial best interests,
including tax considerations, of Lill.

    5.    Equity Grant and Option.

        Upon his commencement of employment Lill shall be granted
20,000 Equity Shares, as defined in this Paragraph 5 below, under the
Hutton's Equity Ownership Plan (the "Equity Shares") and an option
under the Hutton Equity Ownership Plan to purchase 70,000 Equity
Shares or, in the case of an incentive stock option as described in
this Paragrah 5 below, to purchase Equity Shares or shares of the
Common Stock of Hutton in accordance with the provisions of the option
agreement.  Lill's option to purchase Equity Shares (or, to the extent
noted in the preceding sentence, to purchase shares of Common Stock of
Hutton) shall be accompanied by related "Limited Rights" as that term
is defined in Section II(q) of Hutton's Equity Ownership Plan.  To the
extent permitted under applicable law and if requested by Lill, the
option shall be in the form of an incentive stock option within the
meaning of Section 422A of the Internal Revenue Code of 1954, as
amended (the "Code").  The term "Equity Shares" shall have the meaning
given that term in Section II(n) of Hutton's Equity Ownership Plan and
the term shall include, where appropriate, "Proceeds" as that term is
defined in Section II(aa) of such Plan.  Lill shall be entitled to all
of the rights and privileges of participants in accordance with the
terms of Hutton's Equity Ownership Plan.

        Lill's rights to the Equity Shares granted to him shall
vest at the rate of 16 2/3 percent on each anniversary date of the
Agreement, with the grant being fully vested at the end of the sixth
year.

        Lill shall be entitled to exercise all of his option
immediately upon grant for a period of six years beginning with the
date of grant except that his rights to the Equity Shares or shares of
Hutton Common Stock as set forth in Hutton's Equity Ownership Plan
shall vest in him at the rate of 16 2/3 percent on each anniversary
date of the Agreement, with his rights to the Equity Shares or shares
of Hutton Common Stock as set forth in Hutton's Equity Ownership Plan
being fully vested at the end of the sixth year.

        In the event the Agreement expires on March 2, 1991,
following two successive one year renewals, as provided in Paragraph
1, Lill's rights to the Shares granted to him under this Paragraph 5
and his rights to Equity Shares or shares of Hutton Common Stock upon
the exercise of his option granted to him under this Paragraph 5 shall

-4-

become fully vested at the end of the sixth year following date of grant, or sooner, on the same basis as would apply under this Paragraph 5 if the Agreement continued in effect through the end of the sixth year (that is, subject to the same conditions on the vesting of the remaining 16 2/3 percent as would apply if the term of the Agreement continued).

Notwithstanding anything to the contrary above in this Paragraph 5:

(A)    Upon the occurrence of (i) Lill's termination of employment for any reason other than for Cause as defined in Paragraph 9(B) or a voluntary termination as provided in Paragraph 9(E), or (ii) a change of control as defined in Section XII(e) of Hutton's Equity Ownership Plan, other than a change of control with Board approval in respect of which the Board determines as provided in Section XII(b) thereof either (x) that a change of control will not be deemed to have occurred or (y) that no acceleration of vesting shall take place, Lill's rights to all of the Equity Shares or shares of Hutton Common Stock granted to him and to the Equity Shares or shares of Hutton Common Stock with respect to which he has been granted options shall become immediately fully vested.

Upon a delivery by Hutton or EFH to Lill of a notice of its intent not to renew the Agreement as provided in Paragraph 1, Lill's rights to the Equity Shares or shares of Hutton Common Stock granted to him and to the Equity Shares or shares of Hutton Common Stock with respect to which he has been granted an option shall become immediately vested to the extent they would have been vested if he had remained in employment with Hutton and EFH for a period of 25 months beyond the anniversary date of the Agreement next following such notice of non-renewal.

(B)    If Lill's employment is terminated by EFH for "just cause" as that term is defined in Section XII(b)(i) of Hutton's Equity Ownership Plan he shall forfeit his rights to unvested Equity Shares or shares of Hutton Common Stock granted to him or acquired upon exercise of the option granted to him and to the rights to acquire the unvested Equity Shares or shares of Hutton Common Stock under the option granted to him as set forth in Hutton's Equity Ownership Plan.

(C)    If Lill voluntarily terminates his employment, as provided in Paragraph 9(E), he shall forfeit his rights to unvested Equity Shares or shares of Hutton Common Stock granted to him or acquired upon exercise of the option granted to him and to the rights to acquire unvested Equity Shares or shares of Hutton Common Stock under the option granted to him as set forth in Hutton's Equity Ownership Plan.

-5-

(D)   The Compensation Committee or such other committee as shall
be the administrator of Hutton's Equity Ownership Plan, in its sole
discretion and to the extent permitted by Hutton's Equity Ownership
Plan may at any time fully vest Lill in all of the Equity Shares or
shares of Hutton Common Stock granted to him and to the rights to
acquire Equity Shares or shares of Hutton Common Stock under the
option granted to him as set forth in Hutton's Equity Ownership Plan.

In the event of a termination of Lill's employment, Lill,
or his estate, as the case may be, shall be entitled to exercise the
option to the extent it entitles him, or in the event of his death,
his estate, to acquire Equity Shares or shares of Hutton Common Stock,
according to the following schedule but not beyond the date such
option would otherwise expire:

| Type of Termination | Period of Exercisability |
|---|---|
| Death | One year after date of death |
| Disability | One year after date of termination |
| Cause | Date of termination |
| Without Cause | Three months after date of termination |
| Change of Control | Six months after date of termination |
| Voluntary | One month after date of termination |
| Upon Expiration of Agreement | Three months after date of termination |

6.    <u>Pension and Additional Deferred Compensation.</u>

Lill shall be entitled to participate in the qualified
pension plan of EFH as well as in any supplemental pension plan
adopted or to be adopted for executives of Hutton and EFH.

Except as hereinafter provided in this Paragraph 6, in all
events Lill shall be entitled to a fully vested pension in an annual
amount of no less than $50,000 as described below ("Minimum
Pension"). In the event that either Lill's employment is terminated
before March 3, 1991 for Cause, as provided in Section 9(B), or Lill
terminates his employment voluntarily as provided in Section 9(E), the
amount of his Minimum Pension shall be reduced to an amount equal to
$50,000, multiplied by the product of the applicable percentage set
forth above (the "Applicable Percentage") and the applicable factor
determined by the Date of Termination as provided in the following
table:

-6-

| Date of Termination | Factor |
|---|---|
| Before March 3, 1987 | 0 |
| On or after March 3, 1987, but before March 3, 1988 | .50 |
| On or after March 3, 1988, but before March 3, 1989 | .625 |
| On or after March 3, 1989, but before March 3, 1990 | .75 |
| On or after March 3, 1990, but before March 3, 1991 | .875 |

In the event of a Change of Control, as described in Paragraph 9(D), prior to, or coincident with, Lill's termination of employment, the above reduction shall not take effect and the Applicable Percentages shall remain unchanged.

The Board, in its sole discretion, may at any time determine that the above reduction shall not take effect in which event the Applicable Percentages shall remain unchanged.

Anything herein to the contrary notwithstanding, the amount of Minimum Pension determined as provided above in this Paragraph 6 shall be adjusted to reflect the increase, if any, in the Consumer Price Index following Lill's termination of employment. Accordingly, the amount of Minimum Pension so determined shall be adjusted as of the January 1 concurrent with or immediately preceding commencement of payment of the Minimum Pension to reflect the increase, if any, in the Consumer Price Index since the last January 1 preceding the date of Lill's termination of employment. On each January 1 subsequent to the commencement of payment of the Minimum Pension the amount of Minimum Pension shall be adjusted to reflect the increase, if any, in the Consumer Price Index since the last preceding January 1 as of which an adjustment as herein described was made.

In addition to the Minimum Pension referred to above, Lill shall also be entitled following termination of employment to receive annually an amount of Additional Deferred Compensation equal to 25 percent of Lill's average bonus (including deferrals) in excess of $300,000 from Hutton and EFH for the 36 consecutive calendar months preceding his termination of employment with Hutton and EFH (or such lesser period of actual employment) for which he has the highest average bonus (including deferrals). Such Additional Deferred Compensation amount shall be subject to the same reduction factors under the same circumstances applicable to the Minimum Pension as described above. Such Additional Deferred Compensation shall likewise be adjusted in accordance with the Consumer Price Index increase provisions applicable to the Minimum Pension as described above and shall be payable at the same time, in the same manner and subject to

-7-

the same procedures as applicable to the Minimum Pension as described above. For the purpose of this Paragraph 6, Lill's bonus shall be deemed to have been paid ratably over the months during which Lill was employed during the year in respect of which it was earned.

For purposes of determinining the aggregate of the Minimum Pension and Additional Deferred Compensation payment under this Paragraph 6, the amount determined above under this Paragraph 6, shall be calculated on an equivalent basis (i.e., assuming the same frequency of payment, the same form of annuity and the same commencement date of payment), and payments made under this Paragraph 6 shall be made to Lill or to his survivor at such time and in such manner (e.g., pre-retirement widow's benefit, joint and survivor benefit, actuarial reduction factors for early commencement or for alternate forms of payment, etc.) as provided under the terms and procedures of EFH's qualified pension plan (except that (i) in no event shall there be an offset for any social security benefits and (ii) upon attaining age 60, Lill shall be entitled, at his election, which shall be made on an irrevocable basis prior to his attainin age 60, to commence receiving the Minimum Pension and the Additional Deferred Compensation payment subject to actuarial reduction).

7.   Employee Benefits.

Employee benefits will be provided Lill in accordance with programs at Hutton and EFH for similarly situated officers. Lill shall, in all events, be entitled to vacation of four weeks in each calendar year.

8.   Business Expenses and Perquisites.

Business expenses incurred by Lill shall be reimbursed in accordance with Hutton's and EFH's policies. Perquisites shall be provided in accordance with EFH's policies. In all events Lill shall be entitled to the use of a leased car and to the use of a car service on the same basis as available to the very senior management at Hutton and EFH.

9.   Termination of Employment.

(A)   Termination Due to Death or Disability:   In the event Lill's employment is terminated due to death or disability, Lill or Lill's legal representative, as the case may be, shall be entitled to receive (i) salary as in effect immediately prior to Lill's death or disability, as the case may be, for a period of 12 months following the month in which the date of Lill's death or termination due to disability occurs; (ii) any annual bonus amounts awarded but not yet paid; (iii) the annual bonus amount attributable to the period of the calendar year that precedes the date of death or termination due to disability, as the case may be; (iv) the annual bonus amount

-8-

attributable to the 12 month period following the date of death or termination due to disability, as the case may be; and (v) any deferred bonuses (including interest or other credits due on the deferred amounts), except to the extent otherwise provided in the case of a life insurance policy as described in the last sentence of Paragraph 4.

For purposes of items (iii) and (iv), above, the amount of annual bonus for a calendar year shall be $300,000 or such greater amount as the Compensation Committee of the Board in its discretion shall determine, taking into account such factors as Hutton and individual performance, bonuses for other senior officers and increases, if any, in the Consumer Price Index, and the portion of the annual bonus for a calendar year attributable to a period of less than such calendar year shall be determined by a fraction the numerator of which shall be the number of days of the applicable period that fall within such calendar year and the denominator of which shall be 365.

For purposes of this Paragraph 10(A), disability shall mean that for a period of 8 consecutive months or for a period of 9 months in any 12 month period Lill is incapable of fulfilling the positions, authorities, and responsibilities as set forth in Paragraph 2, because of physical or mental incapacity.

Amounts due and rights involved in respect of equity grant and option described in Paragraph 5, shall be determined in accordance with applicable plans but subject to the provisions of Paragraph 5, and the Minimum Pension and Additional Deferred Compensation for Lill (or the widow's rights thereunder in the event of a termination due to death) as provided in Paragraph 6, shall be determined in accordance with the terms of that paragraph. Other benefits will be determined in accordance with applicable plans, policies, and practices of Hutton and EFH.

(B) Termination by EFH for Cause: Lill may be terminated for "Cause" by Hutton or EFH. "Cause" shall mean (i) Lill is convicted of a felony involving moral turpitude; or (ii) Lill, in carrying out his duties hereunder, has been guilty of willful gross neglect or willful gross misconduct resulting, in either case, in material harm to Hutton or EFH; provided, however, that any act or non-act committed by Lill shall not constitute Cause if such act or non-act occurred in good faith and in a manner he reasonably believed to be in or not opposed to the best interests of Hutton or EFH. Lill shall be permitted to respond and defend himself before the Board or a committee thereof within a reasonable time after written notification of any proposed determination for Cause under clause (ii).

In the event of a termination for Cause, Lill shall be entitled to receive (i) salary through the date employment terminates; (ii) any annual bonus awarded but not yet paid; (iii) the annual bonus

-9-

attributable to the year in which employment terminates due to Cause
in an amount no less than $300,000 multiplied by a fraction the
numerator of which shall be the number of days during which Lill was
employed during the calendar year in which his termination for Cause
occurs and the denominator of which shall be 365; and (iv) any
deferred bonuses (including interest or other credits due on the
deferred amounts), except to the extent otherwise provided in the case
of a life insurance policy as described in the last sentence of
Paragraph 4.

The amounts and rights to which Lill is entitled in the
respect of equity grant and option, as provided in Paragraph 5, shall
be determined in accordance with applicable plans (including the
definition of cause under such plans) but subject to the provisions of
Paragraph 5, and the Minimum Pension and Additional Deferred
Compensation rights pursuant to Paragraph 6, shall be determined in
accordance with the terms of that paragraph. Other benefits, if any,
shall be determined in accordance with plans, policies, and practices
of Hutton and EFH.

(C) Termination Without Cause: A "Termination Without Cause"
shall mean a termination of employment (i) by Hutton or EFH other than
due to disability as described in Paragraph 9(A) or Cause as defined
in Paragraph 9(B); (ii) by Lill following a reduction in his annual
base salary or the minimum $300,000 bonus as described in Paragraph 4
without regard to any subsequent bonus increase; (iii) by Lill
following the loss of any of the positions described in Paragraph 2
other than as a result of a promotion to which he agrees in writing or
Termination for Cause; (iv) by Lill following a material alteration in
his authorities and responsibilties, as described in, and contemplated
by, Paragraph 2 other than as a result of a promotion to which he
agrees in writing or Termination for Cause; (v) by Lill following the
election of any officer or employee of Hutton or of any subsidiary of
Hutton, other than the Chairman of Hutton, the President of Hutton and
Scott Pierce (the Vice Chairman of Hutton), as a member of the Board
prior to or in the absence of the election of Lill as a member of the
Board or a failure to appoint Lill a member of the Hutton Management
Committee and any other committee composed of senior officers of
Hutton or EFH with general management responsibilities as provided in
Paragraph 2(iv); (vi) by Lill within 90 days of a delivery to Lill of
a notice by Hutton or EFH of its intent not to renew the Agreement as
provided in Paragraph 1 other than due to a Termination for Cause;
(vii) by Lill following a material alteration in his reporting
relationship with the President and Chief Operating Officer of Hutton
as described in Paragraph 2 other than as a result of a promotion to
which he agress is writing or Termination for Cause; or (viii) by Lill
following a material breach of the Agreement by Hutton or EFH.

-10-

A Termination Without Cause within the meaning of Clause (ii), (iii), (iv), (v), (vi), (vii) or (viii), above, shall not take effect unless Lill shall have delivered a written notice to the President of Hutton within 120 days of his having knowledge of one of the events listed above, stating that he intends to terminate his employment as a result of one of those events.

In the event of a Termination Without Cause, Lill shall be entitled to receive (i) salary in effect immediately prior to Lill's termination for a period of 12 months following the month in which Lill's employment terminates without cause; (ii) any annual bonus amounts awarded but not yet paid; (iii) the annual bonus amount attributable to the period of the calendar year that precedes the date of Lill's Termination Without Cause; (iv) the annual bonus amount attributable to the 12 month period following the date of Lill's Termination Without Cause; and (v) any deferred bonuses (including interest or other credits due on the deferred amounts), except to the extent otherwise provided in the case of a life insurance policy as described in the last sentence of Paragraph 4.

For purposes of Subparagraphs (iii) and (iv) above, (a) the amount of annual bonus for a calendar year shall be $300,000 or such greater amount as the Compensation Committee of the Board in its discretion shall determine, taking into account such factors as Hutton and individual performance, bonuses for other senior officers and increases, if any, in the Consumer Price Index and (b) the portion of the annual bonus for a calendar year attributable to a period of less than such calendar year shall be determined by a fraction the numerator of which shall be the number of days of the applicable period that fall within such calendar year and the denominator of which shall be 365.

The amounts and rights to which Lill is entitled in respect of the equity grant and option, as provided in Paragraph 5, shall be determined in accordance with applicable plans (including the definition of Cause under such plans) but subject to the provisions of Paragraph 5, and the Minimum Pension and Additional Deferred Compensation rights pursuant to Paragraph 6 shall be determined in accordance with the terms of that paragraph.

During the period of salary continuation under this Paragraph 9(C), Lill shall be entitled to continued participation in all of Hutton's and EFH's employee benefit plans, including without limitation, continued accrual of retirement benefits and continued coverage under Hutton's and EFH's medical and hospitalization and life insurance plans or shall be provided the economic equivalent thereof. Other benefits, if any, shall be determined in accordance with plans, policies and practices of Hutton and EFH.

-11-

(D) **Termination by Lill Following a Change of Control:** A "Change of Control" shall mean the happening of any of the following: (i) the acquisition by any entity, person or group (other than Hutton or a subsidiary of Hutton) of beneficial ownership of 20 percent or more of the outstanding voting stock of Hutton; (ii) the occurrence of a transaction requiring stockholder approval for the acquisition of Hutton through purchase of stock or assets, or by merger, or otherwise; or (iii) the election during any period of 24 months or less of 20 percent or more of the members of the Board without the approval of the nomination of such members by a majority of the Board consisting of members who were serving at the beginning of the period. As used in this section 9(D) "Group" shall mean persons who act in concert as described in Sections 13(d)(3) and/or 14(d)(2) of the Securities Exchange Act of 1934, as amended, and the regulations thereunder.

If, within 24 months after a Change of Control, Lill shall terminate his employment, then, in addition to rights vested as provided in Paragraphs 5 and 6, he shall be entitled to receive (i) salary as in effect immediately prior to Lill's termination for a period of 12 months following the date Lill terminates his employment following a Change of Control; (ii) any annual bonus amounts awarded but not yet paid; (iii) the annual bonus amount attributable to the period of the calendar year that precedes the date Lill terminates his employment following a Change of Control; (iv) the annual bonus amount attributable to the 12 month period following the date Lill terminates his employment following a Change of Control; and (v) any deferred bonuses (including interest or other credits due on the deferred amounts), except to the extent otherwise provided in the case of a life insurance policy as described in the last sentence of Paragraph 4.

For purposes of Subparagraphs (iii) and (iv), above, (a) the amount of annual bonus for a calendar year shall be $300,000 or such greater amount as the Compensation Committee of the Board in its discretion shall determine, taking into account such factors as Hutton and individual performance, bonuses for other senior officers and increases, if any, in the Consumer Price Index, and (b) the portion of the annual bonus for a calendar year attributable to a period of less than such calendar year shall be determined by a fraction the numerator of which shall be the number of days of the applicable period that fall within such calendar year and the denominator of which shall be 365.

The amounts and rights to which Lill is entitled in respect of the equity grant and option, as provided in Paragraph 5, shall be determined in accordance with applicable plans but subject to the provisions of Paragraph 5, and the Minimum Pension and Additional Deferred Compensation rights pursuant to Paragraph 6 shall be determined in accordance with the terms of that paragraph.

-12-

Lill shall continue to be covered for a 12 month period
following termination of employment under all of Hutton's and EFH's
employee benefit plans including, without limitation, retirement
benefits and continued coverage under the Hutton's and EFH's medical
and hospitalization and life insurance plans or shall be provided the
economic equivalent thereof. Other benefits, if any, shall be
determined in accordance with plans, policies and practices of Hutton
and EFH.

To the extent that any payment under the Agreement is
determined to constitute a "parachute payment" under Section 280G of
the Code as a result of the receipt by Lill of his bonus in respect of
1986 after the end of 1986 (i.e., it is not included in his "base
amount" for purposes of Section 280G(b)(3) in determining the amount
of "excess parachute payments" under Section 280G(b)(1) of the Code),
Hutton or EFH shall pay to Lill an amount which, after the imposition
of (i) any income taxes and (ii) any excise tax under Section 4999 of
the Code, equals that portion of excise tax incurred as a result of
the bonus not having been received by Lill in 1986 which is not in
excess of the amount of bonus in respect of 1986 multiplied by
applicable excise tax rate under Section 4999 of the Code.

(E)  Voluntary Termination:  A "Voluntary Termination" under
this Paragraph 9(E) shall mean a termination of employment by Lill on
his own initiative other than a termination by Lill (i) due to
disability under Paragraph 9(A), (ii) Without Cause as described in
Paragraph 9(C), or (iii) following a Change of Control, as described
in 9(D). Such a termination shall not be deemed a breach of the
Agreement and shall entitle Lill to all of the rights and benefits to
which he would be entitled in the event of a Termination for Cause as
described in Paragraph 10(B), and, in addition, Lill shall be entitled
to participate in Hutton's and EFH's medical and hospitalization, life
insurance and disability plans for a period of three months following
the date of his termination or shall be provided the economic
equivalent thereof.

(F)  Nature of Payments:  Any payments pursuant to the
provisions of this Paragraph 9 shall be severance payments or
liquidated damages or both, shall not be subject to any requirement as
to mitigation or offset and shall not be in the nature of penalty.

10.    Effectivenss of Agreement.

The Agreement shall not become effective unless it has been
approved by the Board or the Compensation Committee on or before May
28, 1986 and the equity grant and option provided for in Paragrah 5
have been approved on or before that date by the Compensation
Committee. Approval by the Board or the Compensation Committee, as
the case may be, shall be evidenced in writing either by a certified
copy of the minutes of the meeting approving the Agreement or by a
similar written document.

-13-

11.    <u>Legal Fees.</u>

EFH shall pay all legal costs in connection with the preparation of the Agreement.

12.    <u>Public Announcements.</u>

Hutton, EFH and Lill agree to cooperate with respect to the initial public and internal announcements by Hutton and EFH or by Lill regarding Lill's employment by Hutton and EFH. No such announcement shall be made without each party's prior approval.

13.    <u>Confidentiality.</u>

Lill shall be subject to the policies of Hutton and EFH relating to confidentiality.

14.    <u>Disputes.</u>

Any controversy or claim arising out of or relating to this Agreement, or any breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association then in effect in the State of New York, and judgment upon such award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The arbitration shall be held in New York City. The cost of the arbitration shall be borne among the parties to the arbitration as determined by the arbitrator(s). To the extent Lill's position is upheld, any reasonable expenses (including costs of witnesses, evidence, and attorneys) incurred by Lill in connection with the arbitration shall be reimbursed to Lill by Hutton or EFH.

15.    <u>Governing Law.</u>

The Agreement shall be governed by the laws of the State of New York without reference to the principles of conflict of laws.

-14-


IN WITNESS WHEREOF, Hutton and EFH have caused this
Agreement to be executed and Lill has hereunto set his hand as of the
day and year first above written.


THE E.F. HUTTON GROUP INC.

BY: _____

E.F. HUTTON & COMPANY INC.

BY: _____

_____
Edward J. Lill


The E.F. Hutton Group Inc. guarantees performance by E.F. Hutton & Company
Inc. of each of its obligations under this Agreement.


THE E.F. HUTTON GROUP INC.

BY: _____

**EXHIBIT 2**

### LEHMAN BROTHERS HOLDINGS INC., et al.
### EDWARD J. LILL
### SCHEDULE SHOWING ACTUAL PENSION PAYMENTS TO EDWARD LILL
### FROM FIRST PENSION PAYMENT JULY 16,1997 TO SEPTEMBER 10, 2008
### AND THE ANNUAL CPI ADJUSTMENTS MADE EACH JANUARY 1.

| YEAR | MONTHLY | ANNUAL | INC. $ | INC % |
|---|---|---|---|---|
| May 8, 1986, Employment Agreement<br>Pension Provision section 6 | $ 4,166.67 | $ 50,000.00 | | |
| July 16, 1997 First Pension payment | $ 7,157.77 | $ 85,893.24 | $35,893.24 | 71.79% |
| 1998 | $ 7,302.36 | $ 87,628.32 | $ 1,735.08 | 2.02% |
| 1999 | $ 7,421.39 | $ 89,056.68 | $ 1,428.36 | 1.63% |
| 2000 | $ 7,587.06 | $ 91,044.72 | $ 1,988.04 | 2.23% |
| 2001 | $ 7,833.17 | $ 93,998.04 | $ 2,953.32 | 3.24% |
| 2002 | $ 7,968.96 | $ 95,627.52 | $ 1,629.48 | 1.73% |
| 2003 | $ 8,206.59 | $ 98,479.08 | $ 2,851.56 | 2.98% |
| 2004 | $ 8,461.19 | $101,534.28 | $ 3,055.20 | 3.10% |
| 2005 | $ 8,792.17 | $105,506.04 | $ 3,971.76 | 3.91% |
| 2006 | $ 9,135.94 | $109,631.28 | $ 4,125.24 | 3.91% |
| 2007 | $ 9,373.57 | $112,482.84 | $ 2,851.56 | 2.60% |
| 2008 | $ 9,738.67 | $116,864.04 | $ 4,381.20 | 3.89% |
| | | | | 31.24% |
| | | | $ 66,864.04 | |

| SUMMARY | | Amount | % | YEARS | AV.ANNUAL |
|---|---|---|---|---|---|
| | 1986 | $ 50,000.00 | | | |
| | 1997 | $ 85,893.24 | | | |
| Increase | | $ 35,893.24 | 71.79% | 11yrs | 6.53% |
| | 1997 | $ 85,893.24 | | | |
| | 2008 | $116,864.04 | | | |
| Increase | | $ 30,970.80 | 36.06% | 11yrs | 3.28% |
| | 1986 | $ 50,000.00 | | | |
| | 2008 | $116,864.04 | | | |
| Increase | | $ 66,864.04 | 1.34% | 22yrs | 6.08% |

SEE ATTACHED ANNUAL LETTERS FROM LEHMAN ADVISING OF THE COST OF LIVING ADJUSTMENT
AND THE AMOUNT OF THE ADJUSTED MONTHLY PENSION PAYMENTS FOR EACH YEAR 1997 7 THRU
YR 2008

# LEHMAN BROTHERS

July 16, 1997

Mr. Edward J. Lill
15 Beverly Road
Madison, NJ 07940

Dear Mr. Lill:

The enclosed check in the amount of $ 7,157.77 represents the initial payment due you as a result of your contract agreement with E.F. Hutton & Co. Your subsequent monthly supplemental pension benefit check payments will be dated the 10th of each month and mailed directly from the Lehman Brothers payroll department.

A W-4P Form is enclosed. Our payroll department requires that they have a Withholding Certificate for Pension or Annuity Payments on file with your election. The faxed form was unreadable. I would greatly appreciate you returning the signed form to my attention at 3 World Financial Center, 24th Floor, NY, NY 10285.

I can be reached at (212) 526-3047, should you require any further assistance.

Best Regards,

Arlene McInereney
Assistant Vice President, Savings & Retirement

Encl: 2

cc: W. Masterson
    P. Ryan

# LEHMAN BROTHERS

November 24, 1998

Mr. Edward J. Lill
15 Beverly Road
Madison, NJ 07940

Dear Mr. Lill:

This letter is to inform you of your revised pension under the Lehman Brothers Special Pension Agreement, effective January 1, 1998. Your revised monthly benefit under the Straight Life Annuity, the option you had previously chosen, is $7,302.36.

Payment of this benefit will begin December 10, 1998. You will receive a separate check in the amount of $1,590.49 representing the retro-active amount due to you from January 1998 through November 1998. This amount will represent the difference between your new amount and your old amount for those prior months. Please note that tax withholding will be based on your prior election.

If you have any questions, I can be reached at (212)526-3049.

Sincerely,

Thomas J. Courtney
Sr. Benefits Representative

# LEHMAN BROTHERS

July 15, 1999

Mr. Edward J. Lill
15 Beverly Road
Madison, NJ 07940

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 1999. Your revised monthly benefit under the Straight Life Annuity, the option you had previously chosen, is $7,421.39

Payment of this benefit will begin August 10, 1999. You will receive a separate check in the amount of $833.21 representing the retroactive amount due to you from January 1999 through July 1999. This amount will represent the difference between your new amount and your old amount for those prior months. Please note that tax withholding will be based on your prior election.

If you have any questions, I can be reached at (201)524-4854.

Sincerely,

Thomas J. Courtney
Sr. Benefits Analyst

$
119.03
x 7 mcs
7 833.21

 # LEHMAN BROTHERS

STUART FINKELSTEIN
BENEFITS

June 20, 2000

Mr. Edward Lill
15 Beverly Road
Madison, NJ 07940

**Re: Lehman Brothers Special Pension Agreement**

Dear Mr. Lill,

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2000. Your revised monthly benefit under the Straight Life Annuity option, the option previously elected, is $7,587.06.

Payment of the revised amount will begin July 10, 2000. You will receive an additional payment of $944.02, representing the retroactive amount due to you from January 2000 through June 2000. This amount represents the difference between your new amount and your old amount for these months.

Please note that tax withholding will be based on your prior election.

If you have any questions, please call me at 201-524-4854.

Sincerely,

Stuart Finkelstein

 # LEHMAN BROTHERS

KELLY W. PATTERSON
BENEFITS

June 4, 2001

Mr. Edward Lill
15 Beverly Road
Madison, NJ 07940

**Re: Lehman Brothers Holdings Inc. Retirement Plan**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2001. Your revised benefit under the Straight Life Annuity option, the option previously elected, is $7,833.17

Payment of the revised amount will begin July 10, 2001. You will receive an additional payment of $1,476.66, representing the retroactive amount due to you from January 2001 through June 2001. This amount represents the difference between your new amount and your old amount for these months.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (646) 836-1713.

Sincerely,

*Kelly W. Patterson*

Kelly W. Patterson

# LEHMAN BROTHERS

STUART FINKELSTEIN
ASSISTANT VICE PRESIDENT
BENEFITS

January 24, 2002

Mr. Edward Lill
15 Beverly Road
Madison, NJ 07940

**Re: Lehman Brothers Holdings Inc. Retirement Plan**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2002. Your revised benefit under the Straight Life Annuity option, the option previously elected, is $7,968.96.

Payment of the revised amount will begin February 10, 2002. You will receive an additional payment of $135.79, representing the retroactive amount due to you, as a result of the increase in your benefit amount, for January 2002.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (201) 524-5592.

Sincerely,

Stuart Finkelstein

LEHMAN BROTHERS INC.
101 HUDSON STREET, 29TH FLOOR JERSEY CITY, NJ 07302
PHONE 201-524-5592  FAX 646-758-1417
EMAIL SFINKELS@LEHMAN.COM

# LEHMAN BROTHERS

KELLY WILLIAM PATTERSON
BENEFITS

December 19, 2002

Mr. Edward Lill
15 Beverly Road
Madison, NJ 07940

**Re: Lehman Brothers Special Pension Agreement**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2003.  Your revised benefit under the Straight Life Annuity option, the option previously elected, is $8,206.59.  Payment of the revised amount will begin January 10, 2003.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (212) 526-8170.

Sincerely,

*Kelly W. Patterson*

Kelly W. Patterson

# LEHMAN BROTHERS

COREY WASHINGTON
BENEFITS

December 19, 2003

Mr. Edward Lill
15 Beverly Road
Madison, NJ 07940

**Re: Lehman Brothers Special Pension Agreement**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2004. Your revised benefit under the Straight Life Annuity option, the option previously elected, is $8,461.19. Payment of the revised amount will begin January 9, 2004.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (212) 526-8170.

Sincerely,

*Corey Washington*

Corey Washington

$$8461.19 \quad 2004$$
$$8206.59 \quad 2003$$
$$\overline{254.60}$$

LEHMAN BROTHERS INC.
399 PARK AVENUE 11TH FLOOR NEW YORK, NY 10022
PHONE 212 526 8170 FAX 646 885 9599 EMAIL CWASHING@LEHMAN.COM

# LEHMAN BROTHERS

COREY WASHINGTON
BENEFITS

December 22, 2004

Mr. Edward Lill
15 Beverly Road
Madison, NJ 07940

**Re: Lehman Brothers Special Pension Agreement**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2005. Your revised benefit under the Straight Life Annuity option, the option previously elected, is $8,792.17. Payment of the revised amount will begin January 10, 2005.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (212) 526-8170.

Sincerely,

*Corey Washington*

Corey Washington

# LEHMAN BROTHERS

DIANE PAPALEONARDOS
BENEFITS

December 22, 2005

Mr. Edward Lill
415 L'Ambiance Drive
Unit C404
Longboat Key, FL 34228

**Re: Lehman Brothers Special Pension Agreement**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2006. Your revised benefit under the Straight Life Annuity option, the option previously elected, is $9,135.94. Payment of the revised amount will begin January 10, 2006.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (212) 320-7045.

Sincerely,

Diane Papaleonardos

LEHMAN BROTHERS INC.
1301 AVENUE OF THE AMERICAS 6TH FLOOR NEW YORK, NY 10019
PHONE 212 320 7045 FAX 646 834 4542 EMAIL DIANE.PAPALEONARDOS@LEHMAN.COM

08-13555-mg    Doc 16705-3    Filed 05/10/11    Entered 05/10/11 17:58:03    Exhibit 8cd...

Pg 28 of 31

# LEHMAN BROTHERS

DIANE PAPALEONARDOS
BENEFITS

January 3, 2007

Mr. Edward Lill
415 L'Ambiance Drive
Unit 404
Longboat Key, FL 34228

**Re: Lehman Brothers Special Pension Agreement**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2007. Your revised benefit under the Straight Life Annuity option, the option previously elected, is $9,373.57. Payment of the revised amount will begin January 10, 2007.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (212) 320-7045.

Sincerely,

Diane Papaleonardos

LEHMAN BROTHERS INC.

1301 AVENUE OF THE AMERICAS 8TH FLOOR NEW YORK, NY 10019

PHONE 212 320 7045 FAX 646 834 4442 EMAIL DIANE.PAPALEONARDOS@LEHMAN.COM

# LEHMAN BROTHERS

ERIN D'SOUZA
HR ANALYST
BENEFITS

December 14, 2007

Mr. Edward Lill
415 L'Ambiance Drive
Unit 404
Longboat Key, FL 34228

**Re: Lehman Brothers Special Pension Agreement**

Dear Mr. Lill:

This letter is to inform you of your revised pension benefit under the Lehman Brothers Special Pension Agreement, effective January 1, 2008. Your revised benefit under the Straight Life Annuity option, the option previously elected, is $9,738.67. Payment of the revised amount will begin January 10, 2008.

Please note that tax withholding will be based on your prior election.

If you have any questions please call me at (212) 320-7977.

Sincerely,

Erin D'Souza

LEHMAN BROTHERS INC
1301 AVENUE OF THE AMERICAS 6TH FLOOR NEW YORK, NY 10019
PHONE 212 320 7977 FAX 212 520 9310 EMAIL ERIN.DSOUZA@LEHMAN.COM

**EXHIBIT 3**

**LEHMAN BROTHERS HOLDINGS INC., et al.**
**EDWARD J. LILL**
**SCHDULE SHOWING COMPUTATION OF CLAIM OF EDWARD J. LILL**

| BASIS | | MONTHLY | ANNUAL |
|---|---|---|---|
| March 1986 Pension Contract | | | |
| Annual payment of $ 50,000 adjusted each year for the increase in CPI | | $4,166.67 | $50,000.00 |
| Actual payments in 2008 which included annual CPI adjustments | | $9,738.67 | $116,864.04 |
| Increase 1986 to 2008 (22 years) | | $5,572.00 | $66,864.04 |
| Percentage increase oner 22 years | | 133.73% | |
| Annual average | | 6.08% | |
| Actuarial life expectancy for 76 year old in good health | | 93/94 yrs. | |

**SCHEDULE**      **MONTHLY & ANNUAL PENSION PAYMENTS DUE FROM LEHMAN**

| YEAR | AGE | CPI INC. 6.08% | MONTHLY PAYMENT | | ANNUAL AMOUNT |
|---|---|---|---|---|---|
| 2008 | 76 | | $ 9,738.67 | Note 1 | $ 29,216.01 |
| 2009 | 77 | $ 592.11 | $10,330.78 | | $ 123,969.36 |
| 2010 | 78 | $ 628.11 | $10,958.89 | | $ 131,506.68 |
| 2011 | 79 | $ 666.30 | $11,625.19 | | $ 139,502.28 |
| 2012 | 80 | $ 706.81 | $12,332.00 | | $ 147,984.00 |
| 2013 | 81 | $ 749.79 | $13,081.79 | | $ 156,981.36 |
| 2014 | 82 | $ 795.37 | $13,877.16 | | $ 166,525.92 |
| 2015 | 83 | $ 843.73 | $14,720.89 | | $ 176,650.68 |
| 2016 | 84 | $ 895.03 | $15,615.92 | | $ 187,391.04 |
| 2017 | 85 | $ 949.45 | $16,565.37 | | $ 198,784.44 |
| 2018 | 86 | $1,007.17 | $17,572.54 | | $ 210,870.48 |
| 2019 | 87 | $1,068.41 | $18,640.95 | | $ 223,691.40 |
| 2020 | 88 | $1,133.37 | $19,774.32 | | $ 237,291.84 |
| 2021 | 89 | $1,202.28 | $20,976.60 | | $ 251,719.20 |
| 2022 | 90 | $1,275.38 | $22,251.98 | | $ 267,023.76 |
| 2023 | 91 | $1,352.92 | $23,604.90 | | $ 283,258.80 |
| 2024 | 92 | $1,435.18 | $25,040.08 | | $ 300,480.96 |
| 2025 | 93 | $1,522.44 | $26,562.52 | | $ 318,750.24 |
| 2026 | 94 | $1,615.00 | $28,177.52 | | $ 338,130.24 |
| | | TOTAL | | | $ 3,889,728.69 |

Notes

1   Received payments for first nine months of 2008. Amount shown
    is for the three months for which payments were not received.

2   Assumes the average annual increase in the Consumer Price Index
    for New York Urban Consumers for the remaining years of my life
    expectancy will be the same as the actual average annual increase
    experienced over the prior 22 years.



This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Express Mail®. Misuse may be a violation of federal law. This packaging is not for resale. EP13F © U.S. Postal Service; May 2006. All rights reserved.