| ANDERSON KILL & OLICK, P.C.<br>Robert M. Horkovich<br>Todd E. Duffy<br>Dennis J. Nolan<br>1251 Avenue of the Americas<br>New York, New York 10020<br>Tel: (212) 278-1000<br>Fax: (212) 278-1733<br>*Attorneys for Essex Equity Holdings USA, LLC* | Hearing Date: June 2, 2011<br>at 10:00 a.m. |

| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | |
|---|---|
| In re:<br><br>LEHMAN BROTHERS HOLDINGS INC., et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 08-13555 (JMP)<br><br>Jointly Administered |

**RESPONSE OF CREDITOR ESSEX EQUITY HOLDINGS
USA, LLC TO DEBTORS' ONE HUNDRED ELEVENTH
<u>OMNIBUS OBJECTION TO CLAIMS (NO LIABILITY CLAIMS)</u>**

Essex Equity Holdings USA, LLC ("Essex"), by and through its counsel, Anderson Kill & Olick, P.C., respectfully submits this Response, pursuant to Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Rule 9014-2 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York, and this Court's Order Approving Claims Procedures, dated January 14, 2010 (the "Procedures Order"), to the Debtors' One Hundred Eleventh Omnibus Objection to Claims (No Liability Claims) [Docket Number 15012] (the "Claims Objection") seeking to expunge Claim #30596, filed by Essex on September 22, 2009, for damages suffered as a result of the wrongful acts of Lehman Brothers Holdings Inc.'s ("LBH" or "Debtors") subsidiary, Lehman Brothers Inc. ("LBI"), and certain of LBI's officers and

directors (the "Essex Claim").[1]  A copy of the Essex Claim is annexed hereto as Exhibit A.  In support of its Response, Essex respectfully states as follows:

## INTRODUCTION

1.  The Debtors object to the Essex Claim by asserting in conclusory fashion that "no liability of the Debtors could possibly arise from such proceeding [against LBI]".  Yet LBH's filings in this case cast doubt on that assertion.  For example, in both the Proposed Plans (defined below), LBH expressed certain indemnification obligations that apply to current and former officers, directors, and employees of the Debtors' subsidiaries.  The Amended Plan and Disclosure Statement do not make clear, however, which entities and which directors and officers LBH is required to indemnify, and more specifically, whether the indemnification obligations extend to LBI and its directors and officers.  Last month, Essex tried unsuccessfully to obtain this information from LBH through informal discovery, but counsel for LBH has since indicated that LBH will not provide such information to Essex.

2.  To the extent LBH is required to indemnify LBI directors and officers, LBH may, in fact, be liable to Essex and any judgment may be executable against its assets if non-Debtor assets are insufficient to satisfy a future arbitration award in full or

---

[1] Essex also filed an identical Proof of Claim in the LBI Bankruptcy (defined below).  Furthermore, based on the lack of clarity regarding LBH's obligations toward certain former LBI employees, and in furtherance of its efforts to protect its legal rights and interests, Essex also filed objections contesting the adequacy of the Debtors' Amended Disclosure Statement.  *See* Objection of Creditor Essex Equity Holdings USA, LLC to Debtors' Disclosure Statement for the First Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code [Docket Number15193] and Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of Its Affiliated Debtors Other Than Merit, LLC, LB Somerset and LB Preferred Somerset LLC Proposed By the Ad Hoc Group of Lehman Brothers Creditors [Docket Number 15195] (collectively, the "Disclosure Statement Objections").  Essex adopts and incorporates by reference into this Response the arguments raised in the Disclosure Statement Objections.

in part.[2] In order to clarify this ambiguity, Essex requests that this Court schedule an evidentiary hearing.

3. Moreover, pursuant to their advancement and indemnification obligations expressed in their by-laws and certificates of incorporation, LBH and its affiliated Debtors purchased primary and umbrella/excess directors' and officers' liability insurance (the "D&O Policies"), which provides coverage for the Debtors' current and former officers, directors, and employees, as well as the current and former officers, directors, and employees of non-debtor LBI, in connection with civil, criminal, regulatory and other actions and investigations.

4. Thus, whether the Debtors have liability for the asserted obligations of LBI remains an unanswered question. In light of the vagueness surrounding the scope of LBH's indemnification of affiliate officers, employees and directors (as well as the releases and injunctions it appears LBH seeks to benefit these non-debtor parties within its proposed Plan), the Objection is wholly deficient at this stage, under the Bankruptcy Rules and the Procedures Order, to satisfy the Debtors' burden in objecting to the Essex Claim. Simply put, based on the record, the Debtors cannot demonstrate that expungement of the Essex Claim is warranted. Absent discovery addressing these outstanding issues and confirming that LBH could in no way be liable to Essex, LBH's Objection is premature, lacks the requisite factual record support, and must be denied.

---

[2] The Debtors have repeatedly asserted that the proceeds of the D&O policies are not the property of the Debtors' estate. The Debtors have filed numerous motions seeking relief from stay to allow advancement and payment of claims under the D&O Policies and Fiduciary Liability Policies, underscoring this point. *See, e.g.*, Docket Numbers 5652, 10463, 12369. This Court has allowed those payments but has reserved judgment upon whether the proceeds of these insurance policies are property of the Debtors' estates.

## BACKGROUND

5.     In July 2007, Maher Terminals Holdings Corp. ("MTHC"), the predecessor to Essex, which was and continues to be owned by M. Brian Maher and Basil Maher, sold the Maher family business, which specialized in the operation of marine terminals. In July 2007, shortly after the sale, MTHC wired some $600 million in proceeds from the sale to LBI, entrusting LBI with the safe, conservative investment of those proceeds. However, LBI wrongfully invested Essex's money in ways that differed radically from the explicit instructions of Essex. In particular, LBI invested millions of dollars in complex, high-risk structured products and private placements.

6.     In January, 2008, Essex commenced an arbitration proceeding (the "Arbitration") under the auspices of the Financial Industry Regulatory Authority ("FINRA") against LBI and certain LBI officers and directors (collectively, the "Arbitration Respondents") seeking in excess of $286 million, for, among other claims, failure to supervise, conversion and unauthorized trading. The Arbitration is one of many legal proceedings pending against LBI.[3]

7.     On September 19, 2008 (the "LBI Commencement Date"), a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to LBI (the "LBI Bankruptcy"). A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate. As a result of the LBI Bankruptcy, the Arbitration was stayed as to LBI, but proceeded against the individual Arbitration Respondents.

---

[3] In addition to LBI, the Arbitration Respondents include Jeffrey L. Chernick, Peter M. Gambee, William C. Gourd, Neil J. Greenspan, Sanford A. Haber, and Mark J. Stevenson.

8. On September 15, 2008 (the "LBH Commencement Date"), LBH and many of its affiliates filed voluntary petitions under chapter 11 of the Bankruptcy Code (the "LBH Bankruptcy"). The LBH Bankruptcy was consolidated with the bankruptcy cases of certain of its subsidiaries for procedural purposes and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

9. On September 22, 2009, believing that it had a legitimate claim against the LBH estate, Essex filed the Essex Claim with this Court in the amount of $1,198,776,791.90. Essex filed an identical Proof of Claim in the LBI Bankruptcy.

10. LBH filed its initial plan of reorganization in November 2010. That plan was amended on January 25, 2011 (the "Amended Plan"). On December 15, 2010, an Ad Hoc Group of Lehman Brothers creditors (the "Ad Hoc Committee") filed its competing Plan and Disclosure Statement with the Bankruptcy Court (together with the Amended Plan, the "Proposed Plans"). The Proposed Plans were filed with respect to LBH and its affiliated chapter 11 Debtors, and each contains indemnification provisions and injunctions for directors and officers of LBH and those named affiliated Debtors, and possibly for directors and officers of LBI (although the scope and intent of these provisions in the proposed Plan are far from clear).

## ARGUMENT

11. The Objection should be denied because LBH has failed to provide sufficient evidence rebutting the presumptive validity of the Essex Claim. The Objection is based on LBH's unsupported conclusion that it could not be liable in any way for the Essex Claim, despite LBH's prior representations concerning potential indemnification obligations to directors and officers arising out of FINRA Arbitrations involving LBI.

12. To gain clarity on these issues, Essex proposed to LBH counsel that informal discovery be provided by LBH regarding, chiefly, the issues of: (1) the scope of LBH's indemnification obligations; and (2) available liability insurance. LBH counsel agreed to this proposal. Accordingly, on April 25, 2011, at the request of the Debtors' counsel, counsel for Essex provided a list of the documents sought. Last Friday, May 6, 2011, LBH informed Essex that it would not supply any of the information sought by Essex. No explanation was offered by LBH.

13. Therefore, issues of fact presently exist regarding LBH's potential liability to Essex. Given the lack of clarity at this stage as to whether LBH is or potentially could be liable for all, or part of, the Essex Claim, Essex should be allowed to engage in discovery to confirm whether or not LBH may be liable before the Essex Claim is disallowed and expunged. Regardless, the remaining questions of fact illustrate that the Debtors' unsupported assertions cannot substitute for the evidence needed to meet their burden.

A.   A Party Objecting to a Claim Must Come Forward with Sufficient Evidence to Satisfy Its Burden

14. LBH overlooks its burden to effectively object to a creditor's proof of claim and shift the burden back to the creditor. *See* Objection at ¶4 ("If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim"). In fact, a debtor has a more onerous burden.

15. According to the Bankruptcy Rules, a properly filed proof of claim is "*prima facie* evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). The cases relied on by LBH establish the general burden-shifting framework.

*See* Objection at ¶9. After a creditor files a valid proof of claim, the debtor bears the "initial burden of persuasion" with respect to its objection to a proof of claim. *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009).

16. LBH neglects to mention the quantum of evidence necessary to satisfy its burden, which is "sufficient evidence to overcome the *prima facie* validity of the claim." *See In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000); Fed. R. Bankr. P. 9017; Fed. R. Evid. 301. This Court has more recently noted that a party objecting to a proof of claim must submit "substantial evidence" to rebut a proof of claim's presumptive validity. *See In re Enron Creditors' Recovery Corp.*, No. 01-16034, 2007 WL 2480531, at *3 (Bankr. S.D.N.Y. Aug. 28, 2007) (citation omitted). Moreover, the Procedures Order, in setting forth the categories of objections that the Debtors might file, expressly states that the Debtors could object to "claims seek[ing] recovery of amounts from which the Debtors are not liable; *provided* that the Debtors will include the legal basis for such objection." The Procedures Order at p. 3. Generally, such evidence includes affidavits or declarations, not, as what was offered here by LBH, factually unsupported legal conclusions. The Objection falls well short of satisfying LBH's burden under this Court's Order and established precedent in this jurisdiction.

B.    <u>LBH's Objection Lacks Sufficient Evidence and Must Be Overruled</u>

17. LBH fails to provide any remotely specific information or evidence warranting the drastic relief it seeks – expungement and disallowance of the Essex Claim. Instead, LBH resorts to unsupported generalizations and conclusory statements as to the fact that only LBI is liable for the Essex Claim.

18. LBH asserts: "Many of the No Liability Claims assert a claim against the Debtors related to pending litigations in which the Debtors are not defendants. As such,

no liability of the Debtors could possibly arise from such proceedings. In particular, some of the No Liability Claims are based on pending litigation or legal proceedings with LBI. LBI is a separate legal entity and not a Debtor in these chapter 11 cases. The Debtors are not liable for any potential liability LBI may have as a result of such legal proceedings. Pending litigation against LBI does not result in a claim against the Debtors The other No Liability Claims are based on causes of action for which only non-Debtor entities are liable." *See* Objection at ¶10. This statement by LBH reflects the extent of the "evidence" offered by LBH in its Objection to support expungement and disallowance.[4] This LBH statement also stands in stark contrast to LBH's prior filings with this Court which indicate that LBH has indemnification obligations to former directors, officers and employees arising out of securities law violations for investments purchased through LBI. *See* Debtors' Motion, Pursuant to Section 362 of the Bankruptcy Code and Bankruptcy Rules 9019 and 4001, For an Order (I) Modifying the Automatic Stay to Allow Settlement Payment under Directors and Officers Insurance Policies and (II) Approving an Agreement and Release, dated Dec. 17, 2010 at ¶ 25 [Docket No. 13559]; Debtors' Motion, Pursuant to Section 362 of the Bankruptcy Code, For an Order Modifying the Automatic Stay to Allow Settlement Payment under Directors and Officers Insurance Policies, dated Oct. 27, 2010 at ¶ 24 [Docket No. 12363] (stating that the "Debtors believe that they have an obligation under their by-laws to advance the settlement costs incurred by the individual Insureds, including Fuld."); *see also* Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Bankruptcy Rule 6004(h) For Authorization to Purchase "Tail" Extension Under Directors and

---

[4] It is further noted that the Objection does not even indicate which of the two potential reasons – (a) based upon pending litigation with LBI or (b) based upon causes for which on non-Debtor entities are liable – applies to the Essex claim.

Officers Insurance Policy, dated May 26, 2010 at ¶ 20 [Docket No. 9256] (stating that "the availability of the 2008-09 D&O Policy should also reduce and potentially eliminate sizeable unsecured claims that could be asserted by the Individual Insureds against the Debtors to the extent they incur legal costs and/or judgments <u>for which they have rights of indemnification</u>.") (emphasis added).

19. In support of LBH's claim for the drastic relief of disallowance and expungement, LBH references section 502(b)(1) of the Bankruptcy Code and contends that a claim may not be allowed if it is "unenforceable against the debtor and property of the debtor…" *See id.* at ¶9; 11 U.S.C. § 502(b)(1). But the relevant Bankruptcy Code section (which LBH has quoted in other omnibus claims objections) reads, in its entirety: "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." 11 U.S.C. § 502(b)(1).

20. Here, the record does not inform Essex or the Court if LBH has an obligation under any of its corporate documents to indemnify the Arbitration Respondents. However, if LBH is required to indemnify the Arbitration Respondents, Essex may be permitted to recover in whole or in part from LBH in the event that other channels of recovery do not satisfy a future FINRA award against the individual Arbitration Respondents. Thus, by virtue of the indemnification, LBH may be liable to Essex.

21. The only way to determine whether LBH's indemnification arguments have any merit is to assess the scope of LBH's indemnification agreement and

obligations. Absent LBH providing Essex and the Court with reliable information to make this determination, LBH's assertions remain devoid of any reliable support.

22. Furthermore, if any of the Debtors' property is implicated or could potentially help satisfy a judgment on the Essex Claim, Essex must be allowed to pursue that property to be made whole.

23. The myriad of vague references to various indemnification obligations in both of the Proposed Plans call into doubt the Debtors' absolute assertion in its Objection that "no liability of the Debtors could possibly arise from such proceedings." Objection at ¶10. While it may turn out that LBH does not, in fact, have any liability with respect to the Essex Claim, there simply is insufficient information at this point to make that determination. Therefore, Essex respectfully submits that discovery is warranted to address the disputed facts at this stage of the proceeding. Otherwise, if the Court disallows the Essex Claim, Essex will have no ability to recover from LBH if it is found to be liable or if the property of LBH's estate is implicated.

## **CONCLUSION**

WHEREFORE, because the Debtors have failed to meet their burden, genuine issues of material fact exist as to the propriety of LBH's objection to the Essex Claim, and/or discovery is necessary to resolve certain facts, Essex respectfully requests that the Court enter an order overruling the Objection and granting Essex any further relief it deems appropriate. In the alternative, Essex respectfully requests that Court stay the scheduled hearing and/or its decision on the Claim and Objection, and allow Essex to conduct discovery as to the issues raised herein.

Dated:   May 11, 2011
         New York, New York

                                              Respectfully submitted,

                                              ANDERSON KILL & OLICK, P.C.

                                                          /s/ Todd E. Duffy
                                              Robert M. Horkovich
                                              Todd E. Duffy
                                              Dennis J. Nolan
                                              1251 Avenue of the Americas
                                              New York, New York 10020
                                              Tel: (212) 278-1000
                                              Fax: (212) 278-1733