# EXHIBIT A-2

# EXHIBIT B

# Opportunistic Investments

## Based on your needs and objectives we can create innovative solutions to take advantage of tactical opportunities



- ◆ Research-driven investments based on our top-rated equity and fixed income research
- ◆ We interpret and transform the volumes of financial information into meaningful investments that create value



- ◆ Opportunities to create liquidity and diversification with downside protection of your concentrated assets
- ◆ Including specialists to work with your advisors to address:
  - – Tax implications
  - – Restrictions
  - – Look-up periods



- ◆ Structured equity and fixed income investments for opportunistic investors through private placements and publicly registered offerings
- ◆ Including investments to:
  - – Focus on a specific sector, index, country or single stock in a way not possible using cash markets
  - – Seek a higher yield alternative to common stock, with or without principal protection
  - – Seek to leverage equity market exposure with our without principal protection
  - – For yield enhancement and / or volatility reduction on a diversified portfolio

Note: The strategies and funds listed here carry different risks and rewards. Please consult your Lehman Brothers Investment Representative to determine which investment are right for you. Neither Lehman Brothers Inc. nor its employees render tax or legal advice. Please consult your investment, tax adviser and/or attorney for advice concerning your particular circumstances.

## LEHMAN BROTHERS

10

**From:** Catherine Wilkins
**Sent:** Tuesday, July 10, 2007 4:36 PM
**To:** John Liu
**Subject:** RE: Maher Investment Policy

---

**From:** John Liu
**Sent:** Tuesday, July 10, 2007 4:36 PM
**To:** Catherine Wilkins
**Subject:** RE: Maher Investment Policy

Can you email me a copy?  Thanks.

---

**From:** Catherine Wilkins
**Sent:** Tuesday, July 10, 2007 4:35 PM
**To:** John Liu
**Subject:** FW: Maher Investment Policy

Lehman received the investment policy.

---

**From:** Haber, Sandy [mailto:SHaber@lehman.com]
**Sent:** Tuesday, July 10, 2007 4:34 PM
**To:** Catherine Wilkins
**Subject:** RE: Maher Investment Policy

Catherine,

Thank you for sending this.

Kind Regards,
Sandy

---

**From:** Catherine Wilkins ███████████████
**Sent:** Tuesday, July 10, 2007 4:11 PM
**To:** Haber, Sandy
**Subject:** FW: Maher Investment Policy

Dear Mr. Haber:

Attached please find a PDF of Maher's Investment Policy.

If you have any questions, please do not hesitate to contact John Liu or me.

Sincerely,
Catherine

---

Catherine M. Wilkins

Assistant to John D. Liu

--------------------------------------------------------------
The information contained in this message may be privileged and
confidential and protected from disclosure.If the reader of this
message is not the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is
strictly prohibited. If you have received this
communication in error, please notify us immediately by replying to
this message and deleting it from your computer. Thank you.
Greenhill & Co. LLC.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - This message is intended
only for the personal and confidential use of the designated recipient(s) named above. If
you are not the intended recipient of this message you are hereby notified that any
review, dissemination, distribution or copying of this message is strictly prohibited. This
communication is for information purposes only and should not be regarded as an offer to
sell or as a solicitation of an offer to buy any financial product, an official confirmation
of any transaction, or as an official statement of Lehman Brothers. Email transmission
cannot be guaranteed to be secure or error-free. Therefore, we do not represent that this
information is complete or accurate and it should not be relied upon as such. All
information is subject to change without notice. -------- IRS Circular 230 Disclosure:
Please be advised that any discussion of U.S. tax matters contained within this
communication (including any attachments) is not intended or written to be used and
cannot be used for the purpose of (i) avoiding U.S. tax related penalties or (ii) promoting,
marketing or recommending to another party any transaction or matter addressed herein.
--------------------------------------------------------------
The information contained in this message may be privileged and
confidential and protected from disclosure.If the reader of this
message is not the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is
strictly prohibited. If you have received this
communication in error, please notify us immediately by replying to
this message and deleting it from your computer. Thank you.
Greenhill & Co. LLC.

# MAHER TERMINALS HOLDINGS CORP.

1. *Purpose.* This corporate investment policy is designed to provide the operational guidelines for the management of the company's corporate cash assets.

2. *Objectives.*

   A. Preserve capital;

   B. Provide sufficient liquidity to satisfy operating requirements, working capital purposes and strategic initiatives;

   C. Capture a market rate of return based on the company's investment policy parameters and market conditions.

3. *Eligible Instruments.* Assets subject to this investment policy may be invested only in the following U.S. dollar denominated securities:

   - Money market mutual funds
   - Obligations of a U.S. Federal Agency or U.S. government sponsored enterprise
   - Auction Rate Certificates
   - Auction Preferred Stock
   - Commercial Paper
   - Obligations issued by the U.S. Treasury
   - Certificates of Deposit
   - Corporate Debt
   - Municipal Securities
   - Variable Rate Demand Obligations
   - Repurchase Transactions

4. *Final Maturity.* No security in the account may have a final maturity of more than 3 months. With respect to any Eligible Instrument that has an auction or put feature, the next auction, put or reset date, and not final maturity, should be used as the instrument's final maturity for all purposes hereunder including, but not limited to, application of the weighted average maturity restriction below.

5. *Weighted Average Maturity.* The account's weighted average maturity may not exceed 2 months.

6. *Credit Rating Minimums.* Account assets may be invested only in Eligible Instruments: (i) bearing a credit rating of A1/P1/F1 or higher for short-term investments and; (ii) bearing a credit rating of A1/A+ or higher for longer-term investments.

7. *Issuer Concentration.* No more than 15% of the total portfolio per issuer [and/or] no more than 15% of the total issue size outstanding, at the time of purchase.

8. *Communication.* The investment provider will contact the Scott Schley and John Liu as soon as reasonably practicable upon the occurrence of any of the following events:

   A. A security held in the account is downgraded;

   B. A security held in the account is downgraded causing the credit quality to fall below the minimum standards stated in this Investment Policy.

9. *Internal Controls.* Scott Schley, General Counsel, and John Liu, Advisor, of the company are responsible for ensuring that the company's investment portfolio is properly accounted for at all times. This will include:

   A. The establishment and maintenance of files for all accounts with broker-dealers or asset managers and related transaction confirmations and periodic account statements

   B. The preparation of journal entries on a monthly basis to accrue investment income earned on investments, amortization of premiums or discounts, cash receipts and fund transfers

   C. The reconciliation of all periodic account statements received from the organizations investing the company's cash, and from the company's custodian, to the general ledger

   D. The notification to an investment provider in the event of any change in the company's investment policy objectives, authorized persons or income tax status

   E. Confirming that an account at a broker-dealer or asset manager conforms to the terms of this investment policy statement and notifying the investment provider in the event of nonconformance

   Scott Schley, General Counsel, and John Liu, Advisor, are authorized to amend this IPS.

10. *Other.* List any other guidelines, limits or restrictions applicable to the account.

# EXHIBIT C

# LEHMAN BROTHERS

**Client Agreement**
**(Separate Tax Form Required)**

Before you sign this agreement, read it thoroughly and return this completed and signed agreement to your Investment Representative. Subsequently you will receive literature containing important information about your new account. Read the information carefully and retain it for future reference.

| Account Number | | T | C | IR |
|---|---|---|---|---|

Name (as shown on your IRS Form W-9 or W-8, if applicable)
*Maher Terminals Holdings Corp.*

Business Name (if different from above)

Mailing Address
*See Page 2*

Mailing Address (Continued)

---

**A.   Name Disclosure.** *Please indicate your choice as to the release or withholding of your name, address and securities positions to issuing corporations.*

☐   YES, I do want my name, address and securities positions disclosed to any companies, upon their request, in which I own securities that are being held for me at Lehman Brothers Inc. ("Lehman").

☑   NO, I do not want my name, address and securities positions disclosed to any companies, upon their request, in which I own securities that are being held for me at Lehman Brothers Inc. ("Lehman").

---

**B.   Cash Sweep (Please check one)**

☑   I Elect Cash Sweep

☐   I Do Not Elect Cash Sweep

If I Elect Cash Sweep by checking the appropriate box above, I agree and direct that available cash in my account will automatically be swept to Lehman Brothers Bank, FSB ("Lehman Bank") through the Lehman Bank Cash Deposit Account ("LBCDA"). I understand and agree that I may elect an available money market fund sweep for my cash if I meet certain eligibility requirements. Eligibility requirements are set forth in the Lehman Brothers Cash Sweep Program Disclosure Statement that is being forwarded to me; I can also contact my Investment Representative. I understand and agree that it is my responsibility to monitor my account(s), including any linked account, to determine whether I meet the eligibility requirements for a money market fund sweep, and I must contact my Investment Representative to change my cash sweep from the LBCDA to an eligible money market fund.

If I am not eligible to have cash swept to the LBCDA and I Elect Cash Sweep, then I agree and direct that available cash in my account will sweep to a money market fund which I direct and for which I am eligible. Available money market funds are set forth in the Lehman Brothers Cash Sweep Program Disclosure Statement, or I can contact my Investment Representative.

If I Do Not Elect Cash Sweep by checking the appropriate box above (or I do not check either box), I understand and agree that available cash in my account will be a "free credit balance" and will not earn interest.

Please see Paragraph 12 of the account terms and conditions and the Lehman Brothers Cash Sweep Program Disclosure Statement for more information. Clients subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA") or Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code") please also see Paragraph 13 of the account terms and conditions.

---

**C.   Joint Account With Rights of Survivorship.** If the account has more than one owner, this agreement establishes a Joint Account with Rights of Survivorship. To establish a Tenancy in Common instead, all account owners must execute a Joint Account Agreement As Tenants In Common (LB form 2103) in addition to this Client Agreement. *Note: Texas residents must also execute a Texas Joint Account Supplement To Client Agreement (LB form 0171).*

---

**D.   Tax Information.** As applicable, please submit the appropriate IRS Form W-8 or W-9 (available from your Lehman Brothers representative or at  www.irs.gov

If you find that you encounter any questions regarding the tax implications of your Lehman Brothers account, please consult with your tax adviser and/or attorney for advice considering your particular circumstances. Neither Lehman Brothers nor any of its affiliated companies renders tax advice or legal advice.

---

Form: 0004/0232,0131,0233,0134 ; Rev V1.1, 06/07
Name: Client Agreement (Ind. Cash/Ind. Margin/JL Cash/JL Margin)
© Lehman Brothers Inc., Member SIPC, All Rights Reserved

**Client Acknowledgment (Applies to all accounts)**

I (we) hereby acknowledge that I (we) have read, understand and agree to the terms of this Agreement. If this is a joint account, we further acknowledge that we have read, understand and agree to the terms of this agreement contained in paragraph 20. *Note: Texas residents must execute a Texas Joint Account Supplement To Client Agreement (LB form 0171).* I (We) acknowledge that I (we) have received a copy of the agreement(s). **The Client Agreement contains a pre-dispute arbitration clause on page 3 at Paragraph 21. I (We) have read the Agreement(s) and agree to the terms. Read and Acknowledged:**

| Sign Here ▶ | 1. Account Owner's Signature | Date (MMM-DD-YYYY) 7/10/07 | Sign Here ▶ | 2. Account Owner's Signature | Date (MMM-DD-YYYY) 7/10/07 |
|---|---|---|---|---|---|
| Sign Here ▶ | 3. Account Owner's Signature | Date (MMM-DD-YYYY) | Sign Here ▶ | 4. Account Owner's Signature | Date (MMM-DD-YYYY) |

**Margin Account Supplement.** *Complete this section only if you accept the margin agreement described in paragraphs 29 through 32 of this agreement.*

In consideration of Lehman opening and maintaining one or more margin accounts on my behalf, I (we) hereby acknowledge that I (we) have read, understand and agree to the terms of a margin account contained in paragraphs 29 through 32 of this agreement.  By signing this agreement, I (we) acknowledge that my (our) securities may be loaned to you or loaned out to others.  If this is a joint margin account, all parties must sign. Read and Acknowledged:

| Sign Here ▶ | 1. Account Owner's Signature | Date (MMM-DD-YYYY) | Sign Here ▶ | 2. Account Owner's Signature | Date (MMM-DD-YYYY) |
|---|---|---|---|---|---|
| Sign Here ▶ | 3. Account Owner's Signature | Date (MMM-DD-YYYY) | Sign Here ▶ | 4. Account Owner's Signature | Date (MMM-DD-YYYY) |

All STATEMENTS, ETC TO bE SENT TO following AdDRESSES:

M. BR.AN MAhER
MAhER TERMINAls Holdings CORP



BASIl MAhER
MAhER TERMINAls Holdings CORP.



SCOTT Schley
MAhER TERMINAls Holdings CORP.

Form: 0004/0232,0131,0233,0134 ; Rev V1.1, 06/07
Name: Client Agreement (Ind. Cash/Ind. Margin/Jt. Cash/Jt. Margin)
© Lehman Brothers Inc., Member SIPC, All Rights Reserved

CLIENT DISCLOSURE. This account agreement is for a brokerage account and not an advisory account. Lehman's interests may not always be the same as the Client's. Please ask Lehman questions to make sure Client understands his or her rights and Lehman's obligations to Client, including the extent of Lehman's obligations to disclose conflicts of interest and to act in Client's best interest. Lehman is paid both by Client and, sometimes, by people who compensate Lehman based on what Client buys. Therefore, Lehman's profits, and Lehman's salespersons' compensation, may vary by product and over time.

Furthermore, Client's account may be invested in investment products or services from which Lehman or Lehman's affiliates derive compensation and which Lehman may have an incentive to use instead of other similar investments. Client understands that Lehman and Lehman's affiliates act in various capacities with respect to such products, services, and funds and may receive fees for doing so. Lehman may compensate its employees who refer Client's account(s) to the firm. The sale of certain investment products and funds may result in an additional payment to the selling registered representative.

In consideration of Lehman accepting my account and agreeing to act as my registered representative, I agree to the following with respect to any of my accounts with you for extensions of credit and the purchase and sale of securities, options, and other property. This agreement shall not become effective until accepted by you. Throughout this agreement, "I," "me," "my," "we," and "us" refer to the client and all others who are legally obligated on my accounts. "You" and "your" refer to Lehman, its subsidiaries, parents and their officers, directors, agents and/or employees.

1. MY REPRESENTATIONS. I represent that I am of the age of majority according to the laws of my place of residence and that I am not an employee of any exchange or the National Association of Securities Dealers, Inc. ('NASD'), or of a member firm of any exchange of the NASD or of a bank, trust company, insurance company, registered investment company or registered investment advisory firm, unless I have notified you. If I become so employed, I will notify you promptly. I represent that no persons other than those signing this agreement have an interest or beneficial ownership in my account. I represent that the financial information and investment objectives provided to you are accurate in all material respects and that I will promptly inform you of any material changes in my financial or other circumstances, including investment objectives.

2. DEFINITION OF "PROPERTY." In this agreement the word "property" means securities of all kinds, certificates of deposit, commercial paper, monies, cash deposits, options, commodities and contracts for the future delivery of, or otherwise relating to, commodities or securities and all other property currently and customarily dealt in by brokerage firms.

3. ORDERS, EXECUTIONS, DELIVERIES, SETTLEMENTS AND ORAL AUTHORIZATIONS. In giving orders to sell, I will inform you which sales are "short" and which are "long" sales. A "short sale" means any sale of a security not owned by the seller or any sale that is consummated by delivery of a borrowed security. If the security is not in your possession at the time of the contract for sale, I will deliver it to you by settlement date. In case of non-delivery of a security, you are authorized to purchase the security to cover my position and charge any loss, commissions and fees to my accounts. If you fail to receive payment for securities purchased on my way, without prior demand or notice, sell all securities and other property held by you in any of my accounts and charge any resulting loss to my account. Unless otherwise agreed, you will, at your sole discretion and without prior notice, execute the order on the over- the counter market or on any exchange in any location, including a foreign exchange where such security is traded, either on a principal or agency basis.

4. OPTION POSITIONS; MARGIN DEPOSITS. I understand and agree to be bound by the Rules of the applicable Options Exchange or Association as well as the Options Clearing Corporation (OCC). I agree not to buy or sell any equity, debt, foreign currency or index put or call options without having read and fully understood the terms, conditions, and risks, as set forth in the Characteristics and Risks of Standardized Options booklet and applicable supplements that you provide prior to such transactions. Clients' short options positions can be assigned at any time, including the day written, and are assigned on an automated random basis. Solely for purposes of retaining late-options positions, you may treat my account as a margin account except that you may not pledge, rehypothecate or rehypothecate my property in your possession or control unless I exercise the margin agreement herein. I agree not to exceed the position or exercise limits set by the options exchange, either acting alone or with others.

5. NOTICE TO EXERCISE OPTIONS. If I purchase any listed option, I will notify you of my intention to exercise such option no later than two hours before the expiration of the option (one hour in the case of an over-the-counter option). Failure to give such notice constitutes abandonment of the option, in which event it may, if profitable, be exercised for my account. Except as required by the Options Clearing Corporation Rules, you have no obligation to exercise any option absent my specific instructions. If, due to commissions expenses, exercising an option would not profit my account, the option may be permitted to expire or, at your discretion, sold or acquired by you for some equitable payment to me based on your expenses and risk, without liability or responsibility on your part to me.

6. IMPARTIAL LOTTERY ALLOCATION SYSTEM; CALL FEATURES. When you hold on my behalf bonds or preferred stocks in street or bearer form that are callable in part, I agree to participate in the impartial lottery allocation of called securities in accordance with New York Stock Exchange, Inc. ('NYSE') rules. When the call is favorable, no allocation will be made to an account in which you, your officers, or employees, have a financial interest until all other clients' positions in such securities are satisfied on an impartial lottery basis. For debt securities there may exist call or other redemption features in addition to those disclosed on the trade confirmation. Debt securities subject to call or redemption features, such as sinking funds, may be redeemed in whole or in part before maturity or before the first scheduled call dates. The existence of sinking funds, or other special mandatory redemption features, may not be disclosed on a trade confirmation. It is my obligation to review all prospectuses and offering statements I may receive, and to understand risks of extraordinary calls or early redemptions, which may affect yield. You are not obligated to notify me of such partial calls or notices relating to calls or redemptions, nor will you tender securities on my behalf.

7. RESTRICTIONS ON TRADING; TERMINATION. You may in your sole discretion prohibit or restrict trading or substitution of securities in any of my accounts and refuse to enter into any transaction with me. You have the right to terminate my accounts (including multiple owner accounts) at any time by notice to me.

8. TRANSFER OF FUNDS. By giving you instructions to transfer funds from any accounts to a bank or other entity, I agree to provide an accurate account number and designating the account to receive such funds. I indemnify and hold you harmless from and against all liabilities arising from my providing an inaccurate account number.

9. TRANSFER OF EXCESS FUNDS; EXCHANGE RATE FLUCTUATIONS. You may transfer excess funds (also called "free credit balances") between my accounts (including commodity accounts) for any reason not in conflict with the Commodity Exchange Act or other applicable law. If you effect transactions for me requiring foreign currency, my accounts will be charged loss and credited profit resulting from exchange rate fluctuations.

10. PRINCIPAL, INTEREST AND DIVIDEND PAYMENTS. With respect to principal and interest payments

on debt instruments, you may credit my accounts with principal and interest due on the payment dates and are entitled to recover payments from me if the same are not received by you from the trustee or payment agent. You may redeem any money market or cash deposit investment without notice, to satisfy debits arising in my accounts. Interest will not be paid on credit balances in any account(s) unless you specifically agree in writing. You are not required to permit interest or dividends to me on a daily basis.

11. FEES AND CHARGES. You may impose various service charges and other fees relating to my accounts as well as charge commissions and other fees for execution of transactions to buy and sell securities, options or other property. Such charges, commissions and fees may be changed from time to time without notice. Accounts that produce insufficient commission revenue for any calendar year may be subject to administrative fees, with advance notice. If I purchase securities on a cash basis and fail to pay by settlement date, I will pay a late charge as permitted by law. Any late charges you impose will be at the maximum interest rate set forth in your disclosure statement and may be charged from the settlement date to the payment date.

12. LEHMAN BROTHERS CASH SWEEP PROGRAM. Cash will be periodically generated in my account by the deposit of checks, sale of securities and other activity. I authorize Lehman to redeem or withdraw amounts from my cash sweep option to satisfy amounts owed in connection with my account, including the purchase of securities.

Deposits held at Lehman Bank are financially beneficial to Lehman and its affiliates. Interest rates paid on deposits are determined at the discretion of Lehman Bank based on economic and business conditions. Interest rates are tiered based on my relationship with Lehman or my deposit accounts at Lehman Bank, as well as any linked deposit accounts. Interest rates will be reasonable. Interest rates and interest rate tiers may change periodically. Clients with higher total deposits at Lehman Bank (and in some cases total higher assets at Lehman) generally receive a higher yield on their bank deposits – clients with lower total deposits at Lehman Bank and lower total assets at Lehman generally receive a lower yield on their bank deposits. Managed accounts (excluding IRA accounts and accounts subject to ERISA) may elect to sweep to either the LBCDA or an available money market fund. Managed accounts that sweep to the LBCDA will receive the highest tier interest rate regardless of balances at Lehman. The LBCDA with the highest tier interest rate is the only cash sweep option available for managed IRA accounts and managed ERISA accounts.

Cash is deposit accounts at Lehman Bank is insured by the Federal Deposit Insurance Corporation ('FDIC') up to applicable limits under FDIC rules. It is my responsibility to monitor the total amount of my deposits with Lehman Bank to determine whether my deposits exceed the FDIC insurance limits. The Securities Investor Protection Corporation (SIPC) does not cover cash on deposit at Lehman Bank. Money market fund shares in my account are covered by SIPC.

Additional information about the Lehman Brothers Cash Sweep Program, including eligibility requirements for money market funds, linking accounts for higher interest rates, FDIC insurance, SIPC coverage, the benefits to Lehman Bank of bank deposits and investment alternatives for cash balances is available from my Investment Representative and the Lehman Brothers Cash Sweep Program Disclosure Statement which I will receive in connection with the establishment of my account, and which is incorporated herein.

Lehman reserves the right to change or terminate its Cash Sweep Program. I agree that Lehman may change or offer different cash sweep arrangements, at its discretion, from time to time with prior notice.

13. LEHMAN BROTHERS CASH SWEEP PROGRAM – CLIENTS SUBJECT TO ERISA OR SECTION 4975 OF THE INTERNAL REVENUE CODE. In agreeing to the terms of the Lehman Brothers Cash Sweep Program (including if I Do Not Elect Cash Sweep) I have independently determined that my account will receive adequate consideration (including, if I am subject to Title I of ERISA or Section 4975 of the Code, within the meaning of Section 408(b)(17) of ERISA and Section 4975(d)(10) of the Code).

14. ACCURACY OF REPORTS; COMMUNICATIONS. I will contact the Client Services Department at 800.233.4625 or 212.526.5600 immediately to report any error, omissions or discrepancies found in my statement or confirmation of orders. Confirmation of orders and statements of my accounts shall be conclusive if not objected to in writing within ten days after mailing. I will send written inquiries to: Lehman Brothers Inc. Compliance Division 399 Park Ave, 9th floor New York, New York 10022-35. If I fail to receive a confirmation while ten days from the date of a transaction in my account, I will notify you immediately in writing. Until you receive written notice from me of a different address, communications mailed to me at the address specified by me shall be deemed to have been personally delivered to me and I waive all claims resulting from failure to receive such communications.

15. SECURITY INTEREST. As security for the payment or performance of all liabilities or indebtedness to Lehman Brothers or any of its affiliates (now or hereafter existing (collectively, the "Lehman Brothers Entities") presently outstanding or to be incurred under this or any other agreement or otherwise, I grant the Lehman Brothers Entities a security interest in any and all property belonging to me or in which I may have an interest, held by any Lehman Brothers Entity or carried in any of my accounts with any Lehman Brothers Entity including individual, multiple owner or margin accounts ("collateral"). The collateral shall be subject to such security interest to collateral to discharge my obligations to the Lehman Brothers Entities, wherever or however arising and without regard to whether or not any Lehman Brothers Entity has made loans with respect to such collateral. The Lehman Brothers Entities are authorized to sell and/or purchase any and all property in any of my accounts or to liquidate open options, commodity futures or forward contracts or redeem money market or cash deposit investments in any of my accounts without notice in order to satisfy such obligations, the aforetofore mentioned, that the Lehman Brothers Entities shall have the discretion to determine the amount, order and manner of property to be sold and shall have all the rights and remedies available to secured parties under the New York Uniform Commercial Code (the "UCC"). Without prior written consent, I will not cause or allow any of the collateral held in my accounts, whether now owned or hereafter acquired, to be or become subject to liens, security interests, mortgages or encumbrances of any nature other than your security interest.

Form: 0034/0232,0131,0233,0134 ; Rev V1.1, 09/07
Name: Client Agreement (Ind. Cash/Ind. Margin/Jt. Cash/Jt. Margin)
© Lehman Brothers Inc., Member SIPC, All Rights Reserved

CLIENT DISCLOSURE. This account agreement is for a brokerage account and not an advisory account. Lehman's interests may not always be the same as the Client's. Please ask Lehman questions to make sure Client understands his or her rights and Lehman's obligations to Client, including the extent of Lehman's obligations to disclose conflicts of interest and to act in Client's best interest. Lehman is paid both by Client and, sometimes, by people who compensate Lehman based on what Client buys. Therefore, Lehman's profits, and Lehman's salespersons' compensation, may vary by product and over time.

Furthermore, Client's account may be invested in investment products or services from which Lehman or Lehman's affiliates derive compensation and which Lehman may have an incentive to use instead of other similar investments. Client understands that Lehman and Lehman's affiliates act in various capacities with respect to such products, services, and funds and may receive fees for doing so. Lehman may compensate its employees who refer Client's account(s) to the firm. The sale of certain investment products and funds may result in an additional payment to the selling registered representative.

16. LIQUIDATION OF COLLATERAL OR ACCOUNT. You may sell property in my account and cancel open orders for the purchase or sale of property without notice in the event of my death or whenever, in your discretion, it is necessary for your protection or in the event I fail to make payment(s) for loan balances as set forth in Paragraph 30. In such events you also may borrow or buy-in all property required to make delivery against any sale, including a short sale, effected for me. Such sale or purchase may be public or private and may be made without advertising or notice to me and in such manner as you determine. No demands, calls, tenders or notices by you shall invalidate my waiver. At any such sale you may purchase the property free of any right of redemption and I shall be liable for any remaining deficiency in my account(s).

17. USA PATRIOT ACT. To comply with the money laundering prevention provisions of the USA Patriot Act, you may request identification, documents, or other information from me or other sources. You may share this information with regulators or the government as necessary. Until required information or documentation is provided, you may not be able to open an account or effect any transactions for me.

18. POLITICALLY COVERED PERSONS. If applicable, I have disclosed to you my identity as, and my relationships and connections to, senior non-US political officials. This includes my immediate family, close associates, and any corporation, business, or other entity that has been formed by, or for the benefit of, a senior non-US political official.

19. CREDIT AND BUSINESS CONDUCT INFORMATION AND INVESTIGATION. I authorize you, at your discretion, to obtain reports and provide information to others concerning my credit standing and business conduct.

20. JOINT ACCOUNTS; DESIGNATION OF TENANCY. If title is a Joint Account, each of us shall have the authority on behalf of the account and generally to deal with you as if each of us alone were the account owner, without notice to all account owners. Notice to any account owner is deemed notice to all account owners. Each account owner shall be jointly and severally liable for this account. We are authorized, in your discretion, to require joint action by the joint tenants with respect to any matter concerning the joint account, including giving or cancellation of orders and withdrawal or transfer of monies, securities or other property. In the event of the death of any of us, the survivor(s) shall immediately give you written notice, and you may, before or after receiving notice, take actions, receive papers, retain a portion of the account and/or restrict transactions in the account as you deem advisable to protect you against any tax, liability, penalty or loss under any present or future laws or otherwise. It is our express intention to create an estate or account as joint tenants with rights of survivorship and not as tenants-in-common, unless a separate Tenancy-in-Common form is properly completed and submitted to you. In the event of the death of any of us, the entire interest in the joint account shall be vested in the survivor(s) on the same terms and conditions as theretofore held, without releasing the decedent's estate from liability, unless property designated as a Tenancy-in-Common.

21. ARBITRATION.
THIS AGREEMENT CONTAINS A PREDISPUTE ARBITRATION CLAUSE. BY SIGNING AN ARBITRATION AGREEMENT THE PARTIES AGREE AS FOLLOW:

• ALL PARTIES TO THIS AGREEMENT ARE GIVING UP THE RIGHT TO SUE EACH OTHER IN COURT, INCLUDING THE RIGHT TO A TRIAL BY JURY, EXCEPT AS PROVIDED BY THE RULES OF THE ARBITRATION FORUM IN WHICH A CLAIM IS FILED.

• ARBITRATION AWARDS ARE GENERALLY FINAL AND BINDING; A PARTY'S ABILITY TO HAVE A COURT REVERSE OR MODIFY AN ARBITRATION AWARD IS VERY LIMITED.

• THE ABILITY OF THE PARTIES TO OBTAIN DOCUMENTS, WITNESS STATEMENTS AND OTHER DISCOVERY IS GENERALLY MORE LIMITED IN ARBITRATION THAN IN COURT PROCEEDINGS.

• THE ARBITRATORS DO NOT HAVE TO EXPLAIN THE REASON(S) FOR THEIR AWARD.

• THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.

• THE RULES OF SOME ARBITRATION FORUMS MAY IMPOSE TIME LIMITS FOR BRINGING A CLAIM IN ARBITRATION. IN SOME CASES, A CLAIM THAT IS INELIGIBLE FOR ARBITRATION MAY BE BROUGHT IN COURT.

• THE RULES OF THE ARBITRATION FORUM IN WHICH THE CLAIM IS FILED, AND ANY AMENDMENTS THERETO, SHALL BE INCORPORATED INTO THIS AGREEMENT.

ANY CONTROVERSY: (1) ARISING OUT OF OR RELATING TO ANY OF MY ACCOUNTS WITH YOU, MAINTAINED INDIVIDUALLY OR JOINTLY WITH ANY OTHER PARTY, IN ANY CAPACITY; OR (2) WITH RESPECT TO TRANSACTIONS OF ANY KIND EXECUTED BY, THROUGH OR WITH YOU, YOUR OFFICERS, DIRECTORS, AGENTS AND/OR EMPLOYEES; OR (3) RELATING TO MY TRANSACTIONS OR ACCOUNTS WITH ANY OF YOUR PREDECESSOR FIRMS BY MERGER, ACQUISITION OR OTHER BUSINESS COMBINATION FROM THE INCEPTION OF SUCH ACCOUNT; OR (4) WITH RESPECT TO THIS AGREEMENT OR ANY OTHER AGREEMENTS ENTERED INTO WITH YOUR RELATING TO MY ACCOUNTS, OR THE BREACH THEREOF, SHALL BE RESOLVED BY ARBITRATION CONDUCTED ONLY AT THE NYSE, NASD, OR AMEX OR ANY OTHER SELF-REGULATORY ORGANIZATION ("SRO") SUBJECT TO THE JURISDICTION OF THE SECURITIES AND EXCHANGE COMMISSION AND PURSUANT TO THE ARBITRATION PROCEDURES THEN IN EFFECT AT ANY SUCH EXCHANGE OR SRO AS I ELECT. IF I DO NOT MAKE SUCH ELECTION BY REGISTERED MAIL ADDRESSED TO YOU AT YOUR MAIN OFFICE WITHIN 5 DAYS AFTER DEMAND BY YOU THAT I MAKE SUCH ELECTION, THEN YOU WILL HAVE THE RIGHT TO ELECT THE ARBITRATION TRIBUNAL OF YOUR CHOICE. JUDGMENT UPON ANY AWARD RENDERED BY THE ARBITRATORS MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF. NO PERSON SHALL BRING A PUTATIVE OR CERTIFIED CLASS ACTION TO ARBITRATION, NOR SEEK TO ENFORCE ANY PRE-DISPUTE ARBITRATION AGREEMENT AGAINST ANY PERSON WHO HAS INITIATED IN COURT A PUTATIVE CLASS ACTION, OR WHO IS A MEMBER OF A PUTATIVE CLASS BUT WHO HAS NOT OPTED OUT OF THE CLASS WITH RESPECT TO ANY CLAIMS ENCOMPASSED BY THE PUTATIVE CLASS ACTION, UNTIL: (i) THE CLASS CERTIFICATION IS DENIED; (ii) THE CLASS ACTION IS DECERTIFIED OR (iii) SUCH PERSON IS EXCLUDED FROM THE CLASS BY THE COURT. SUCH FORBEARANCE TO ENFORCE AN AGREEMENT TO ARBITRATE SHALL NOT CONSTITUTE A WAIVER OF ANY RIGHTS UNDER THIS AGREEMENT EXCEPT TO THE EXTENT STATED HEREIN. THE FOREGOING AGREEMENT TO ARBITRATE DOES NOT ENTITLE ME TO OBTAIN ARBITRATION OF CLAIMS THAT WOULD BE BARRED BY THE RELEVANT STATUTES OF LIMITATIONS IF SUCH CLAIMS WERE BROUGHT IN A COURT OF COMPETENT JURISDICTION. IF AT THE TIME THAT A DEMAND FOR ARBITRATION IS MADE OR AN ELECTION OR NOTICE OF INTENTION TO ARBITRATE IS SERVED, THE CLAIMS SOUGHT TO BE ARBITRATED WOULD HAVE BEEN BARRED BY THE RELEVANT STATUTE OF LIMITATIONS OR OTHER TIME BAR, ANY PARTY TO THIS AGREEMENT MAY ASSERT THE LIMITATIONS AS A BAR TO THE ARBITRATION EITHER BEFORE THE ARBITRATORS OR BY APPLYING TO ANY COURT OF COMPETENT JURISDICTION. I EXPRESSLY AGREE THAT ANY ISSUES RELATING TO THE APPLICATION OF A STATUTE OF LIMITATIONS OR OTHER TIME BAR ARE REFERABLE TO SUCH COURT. .

22. GOVERNING LAW AND APPLICABLE REGULATIONS. This agreement, including the arbitration provisions in paragraph 21, shall be governed by the laws of the State of New York without giving effect to the choice of law or conflict of laws provisions thereof. All transactions entered into under this agreement shall be subject to any applicable constitution, rules, regulations, customs and usages of the exchange or market and its clearinghouse, if any, where such transactions are executed by Lehman or its agents and to all applicable laws, rules, regulations of governmental authorities and SROs (collectively the "Rules"). Any reference to such Rules in this agreement shall not be construed to create a cause of action arising from any violation of such Rules. If any Rule is enacted that would be inconsistent with any of the provisions of this agreement, the provision so affected shall be deemed modified or superseded by the enactment, but the remaining provisions of this agreement shall remain in full force and effect.

23. BINDING EFFECT; ASSIGNMENT. This agreement shall bind my heirs, executors, successors, administrators, assigns, committee and conservators ("successors"). In the event of my death, incompetency, or disability, whether or not successors of my estate and property shall have qualified or been appointed, you may continue to operate as though I were alive and competent and liquidate my account as described in Paragraph 16 without notice to or demand upon my successors. This agreement shall inure to the benefit of your assigns and successors, by merger, consolidation or otherwise, and you may transfer my accounts to your successors and assigns at your discretion.

24. WAIVER NOT IMPLIED. Your failure to insist upon strict compliance with this agreement or with any of its terms or any continued course of such conduct on your part shall not constitute or be considered a waiver of any of your rights.

25 AMENDMENTS; EFFECT ON PRIOR AGREEMENTS. I agree that you have the right to amend this agreement and any disclosures relating to this agreement or this account at any time by sending notice of the amendment to me. The amendment will be effective on the date contained in the notice. The signing of this agreement supersedes any prior agreement (except those governing transactions in my commodity account) made with you or any of your predecessors or assignors. To the extent this agreement is inconsistent with any other agreement governing my account, the provisions of this agreement shall govern.

26. FOREIGN SECURITIES. If my account contains securities issued by a foreign issuer, I acknowledge that you are acting solely as custodian with respect to such securities and have no obligation to provide me any proxies, annual statements or other disclosures from the issuer or to facilitate my participation in any rights offer or other transaction that the issuer conducts with or offers to holders of its securities.

27. NOTICES. You will endeavor to notify me in advance of any sale in my Margin Account. You will provide various other notices relating to activities in my accounts, unless this agreement provides otherwise. However, you assume no obligation to take any appropriate action for my account permitted by this agreement unless required by law or regulation without just cause. I acknowledge and consent that you may, from time to time, monitor and/or electronically record conversations between agents and your employees or agents for quality assurance, employee training or the mutual protection of both of us. You may offer such recordings as evidence in any arbitration or other proceedings relating this agreement.

28. FORCE MAJEURE. Your performance under this agreement is excused in the event that a trade is prevented, delayed, or otherwise made impossible, due to an unforeseeable business-disrupting event or occurrence beyond your reasonable control, including, but not limited to: Acts of God, fire, epidemic, blizzard, or terrorism; civil commotion; acts of government or military; shortages or failures in transportation, telecommunications, labor, or energy; computer failures; hacking, or viruses; and natural or man-made disasters resulting in destruction of records.

Form: 0004/0232,0131,0233,0134 ; Rev V1.1, 06/07
Name: Client Agreement (Ind. Cash/Ind. Margin/Jt. Cash/Jt. Margin)
© Lehman Brothers Inc., Member SIPC, All Rights Reserved

MARGIN AGREEMENT; PARAGRAPHS 29 THROUGH 32 APPLY ONLY TO MARGIN ACCOUNTS.

29. MARGIN LOANS. From time to time you may, at your discretion, make loans to me to purchase, carry, or trade in securities ("Margin Loans"). Pursuant to Regulation T, Margin Loans will be made in a Margin Account. You will determine, in your discretion, the minimum and maximum amounts of any particular loan, regardless of the amount of collateral delivered to you and you may change such minimum and maximum amounts from time to time.

30. PAYMENT OF LOANS ON DEMAND. I will pay ON DEMAND any balance owing on my account(s), including interest, commissions, late charges and any collection costs, including attorneys' fees you may incur. You may demand full payment of the balance due in my account(s) plus interest charges at your sole option, at any time, whether or not demand is made for your protection. Loans are not for any specific term or duration but are due and payable at your discretion upon demand for payment. You may apply payments received for my account(s), including interest, dividends, premiums, principal or other payments, to balance(s) due in my account(s).

31. MAINTENANCE OF COLLATERAL. The securities or other instruments ("securities") in my Margin Account may be carried as general loans and may be pledged, hypothecated or otherwise used by you in a financing transaction (collectively "pledge(d)") separately or in common with other properties. I may not be entitled to vote the securities in my Margin Account during a period in which they have been pledged by you. In addition, while I will receive an amount equal to any dividends or other distributions in respect of such securities, the actual dividend or other distributions will be made to the entity to which the securities have been pledged. In connection with certain changes to Federal tax law effective January 1, 2004, this payment of "in-lieu of dividends" will be treated as ordinary income. Your pledge may secure your indebtedness equal to or greater than the amount I owe you. I will deposit additional collateral, as you may in your discretion require from time to time, in the form of cash or securities in accordance with the rules and regulations of the Federal Reserve Board, NYSE, American Stock Exchange, Inc. ("AMEX"), other national securities exchanges, associations or regulatory agencies under whose jurisdiction you are subject and your own minimum house margin maintenance requirements. If I no longer maintain a debit balance or indebtedness to you, you will fully segregate all securities in my account(s) in your safekeeping or control (directly or through a clearing house) and/or deliver them upon my request.

32. INTEREST CHARGES AND PAYMENTS. I will pay interest, to the extent not prohibited by the laws of the State of New York, upon amounts advanced and balances due in my account(s) in accordance with your current disclosure statement, hereby specifically incorporated. By entering into transactions with you after I receive your current disclosure statement, I acknowledge that I have read and agree to its terms for all past and future transactions in my account. Interest on all debit balances shall be payable ON DEMAND and that in the absence of demand, interest shall be due on the first business day of each interest period. My daily net debit balance includes any accrued interest I have not paid from prior interest periods. Thus, to the extent permitted by law, you may charge me compound interest. Payments of interest and principal and all other payments made by me under this agreement shall be made to your main office in New York. You may, in your discretion, not deem any check or other remittance to constitute payment until paid by the drawee and the funds representing such payments are available to you.

Form: 0004/0232,0131,0239,0134 ; Rev V1.1, 08/07
Name: Client Agreement (Incl. Cash/Ind. Margin/Jt. Cash/Jt. Margin)
© Lehman Brothers Inc., Member SIPC, All Rights Reserved

# LEHMAN BROTHERS

P.O. Box 2016
Jersey City, NJ 07303-2016

## Corporation Account   CPI 0004

### Security Cash Accounts Only

### Full Authority

| ITS Cust. # | | | MTS Cust. # | | | |
|---|---|---|---|---|---|---|
| TNS Cust. # | | | | | | |
| Branch | Account | | | T | C | R |

Please read carefully, sign and return

To: Lehman Brothers Inc.

The undersigned Corporation __Maher Terminals Holdings Corp.__
                              *Corporation Name*

by __Basil Maher__ _____ Its President
   *Please Print*

or duly authorized officer pursuant to the resolutions set forth on the back of this document, hereby authorizes you to open an account in the name of said Corporation; and represents that no one other than the Corporation has any interest in such account. The undersigned also encloses herewith your Client's Agreement duly executed on behalf of the Corporation and acknowledges receipt of a copy of the Client Agreement. The authorization shall continue in force until written notice of its revocation is delivered to you at the office servicing this account.

Dated __July 10, 2007__

By _____
              Signature Required

Title __President & COO__

I, __Scott Schley__ _____ being the
        *Please Print*

Secretary of __Maher Terminals Holdings Corp__
             *Corporation Name*

hereby certify that the resolutions set forth on page 2 of this document or the attached were duly adopted at a meeting of the Board of Directors of said Corporation, duly held on the __10th__ day of __July__, 20 __07__ at which a quorum of said Board of Directors was present and acting throughout and that no action has been taken to rescind or amend said resolutions and that the same are now in full force and effect.

I further certify that each of the following has been duly elected and is now legally holding the office set opposite his or her name:

__M. Brian Maher, Chairman & CEO__ , President

__Basil Maher__ _____ , Vice-President & COO

__Vacant__ _____ , Treasurer

__Scott Schley, Sr. V.P., General Counsel__ , Secretary

I further certify that the said Corporation is duly organized and existing and has the power to take the action called for by the resolutions annexed hereto.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said Corporation this __10th__ day of __July__, 20 __07__

_____ , Secretary
        Signature Required

\* Executive Committee of the

CERTIFIED COPY OF CERTAIN RESOLUTIONS ADOPTED BY THE BOARD OF DIRECTORS
WHEREBY THE ESTABLISHMENT AND MAINTENANCE OF SECURITY CASH ACCOUNTS HAVE BEEN AUTHORIZED

RESOLVED –
FIRST: That ~~the President or any Vice President of this Corporation,~~

a CHAIRMAN, PRESIDENT AND GENERAL
<span style="font-size:smaller">Please Print</span>

OF COUNSEL
<span style="font-size:smaller">Please Print</span>

be, and they hereby are, and each of them hereby is authorized and empowered, for and on behalf of this Corporation (herein called the "Corporation"), to establish and maintain one or more accounts with Lehman Brothers Inc. (herein called the "Brokers") for the purpose of purchasing, investing in, or otherwise acquiring, selling, possessing, transferring, exchanging, or otherwise disposing of, or turning to account of, or realizing upon, and generally dealing in and with any and all forms of securities including, but not by way of limitation, shares, stocks, bonds, debentures, notes, scrip, participation certificates, rights to subscribe, equity options, debt options, warrants, certificates of deposit, mortgages, choses in action, evidences of indebtedness, commercial paper, certificates of indebtedness and certificates of interest of any and every kind and nature whatsoever, secured or unsecured, whether represented by trust, participating and/or other certificates or otherwise; but such authorization shall not include the opening of marginal accounts or the making of short sales.

The fullest authority at all times with respect to any such commitment or with respect to any transaction deemed by any of the said officers and/or agents to be proper in connection therewith is hereby conferred, including authority (without limiting the generality of the foregoing) to give written or oral instructions to the Brokers with respect to said transactions; to bind and obligate the Corporation to and for the carrying out of any contract, arrangement, or transaction, which shall be entered into by any such officer and/or agent for and on behalf of the Corporation with or through the Brokers; to pay in cash or by checks and/or drafts drawn upon the funds of the Corporation such sums as may be necessary in connection with any of the said accounts; to deliver securities to, deposit funds with, the Brokers; to order the transfer or delivery of securities to any other person whatsoever, and/or to order the transfer of record of any securities to any name selected by any of the said officers or agents; to affix the corporate seal to any documents or agreements, or otherwise; to endorse any securities in order to pass title thereto; to direct the sale or exercise of any rights with respect to any securities; to sign for the Corporation all releases, power of attorney and/or other documents in connection with any such account, and to agree to any terms or conditions to control any such account; to direct the Brokers to surrender any securities to the proper agent or party for the purpose of effecting any exchange or conversion, or for the purpose of effecting any exchange or conversion, or for the purpose of deposit with any protective or similar committee, or otherwise; to accept delivery of any securities; to appoint any other person or persons to do any and all things which any of the said officers and/or agents is hereby empowered to do, and generally to do and take all action necessary in connection with the account, or considered desirable by such officer and/or agent with respect thereto.

\# EXECUTIVE COMMITTEE OF THE

SECOND: That the Brokers may deal with any and all of the persons directly or indirectly by the foregoing resolution empowered, as though they were dealing with the Corporation directly.

THIRD: That the Secretary of the Corporation be and he hereby is authorized, empowered and directed to certify, under the seal of the Corporation, or otherwise, to the Brokers:

    (a) a true copy of these resolutions;
    (b) specimen signatures of each and every person by the resolutions empowered;
    (c) a certificate (which, if required by the Brokers, shall be supported by an opinion of the general counsel of the Corporation, or other counsel satisfactory to the Brokers) that the Corporation is duly organized and existing, that its charter empowers it to transact the business by these resolutions defined, and that no limitation has been imposed upon such powers by the By-Laws otherwise.

FOURTH: That the Brokers may rely upon any certification given in accordance with these resolutions, as continuing fully effective unless and until the Brokers shall receive due written notice of a change in or the rescission of the authority so evidenced and the dispatch or receipt of any other form of notice shall not constitute a waiver of this provision, nor shall the fact that any person hereby empowered ceases to be an officer of the Corporation or becomes an officer under some other title in any way affect the powers hereby conferred. The failure to supply any specimen signature shall not invalidate any transaction if the transaction is in accordance with authority actually granted.

FIFTH: That in the event of any change in the officer or powers or persons hereby empowered, the Secretary shall certify such changes to the Brokers in writing in the manner hereinabove provided, which notification, when received, shall be adequate both to terminate the powers of the persons theretofore authorized, and to empower the persons thereby substituted.

SIXTH: That the foregoing resolutions and the certificates actually furnished to the Brokers by the Secretary of the Corporation pursuant thereof, be and they hereby are, made irrevocable until written notice of the revocation thereof shall have been received by the Brokers.

By _____
                Signature Required

Date   July 10, 2007

Title   Sr. V.P. General Counsel + Secretary

**SIGNATURE CARD**
For each corporate officer listed on page 1 or 2 of this form, a signature is required below:

Name of Account
Maher Terminals Holdings Corp.

| ITS Customer Number | MTS Customer Number | TMS Customer Number |
|---|---|---|

Taxpayer Identification Number

☐ Sole Proprietorship  ☐ Partnership  ☑ Corporation  ☐ Non-Profit Organization  ☐ Others _____

| | |
|---|---|
| ✳ Signature | |
| Print Name  M. Brian Maher | Title  CHAIRMAN & CEO |
| ✳ Signature | |
| Print Name  Basil Maher | Title  President & COO |
| Signature | |
| Print Name | Title |
| Signature | |
| Print Name | Title |
| Signature | |
| Print Name | Title |
| Signature | |
| Print Name | Title |

**LEHMAN BROTHERS**
SIGNATURE CARD

LB 1/06

✳ 2 SIGNATURES REQUIRED

# LEHMAN BROTHERS
P.O. Box 2016
Jersey City, NJ 07303-2016

# Corporation Account  [CPI 0014]
## Authorizing Trading in
## Securities and Commodities and
## Permitting Margin Transaction
## and Short Sales

| ITS Cust. # | | MTS Cust # | |
|---|---|---|---|
| TMS Cust. # Branch | Account | T  C  IR | |

Please read carefully, sign and return

To: Lehman Brothers Inc.

The undersigned Corporation  Maher Terminals Holdings Corp
                            Corporation Name

by  Basil Maher                    its President
        Please Print

or duly authorized officer pursuant to the resolutions set forth on the back of this document, hereby authorizes you to open an account in the name of said Corporation; and represents that no one other than the Corporation has any interest in such account. The undersigned also encloses herewith your Client's Agreement with consent to loan of securities duly executed on behalf of the Corporation and acknowledges receipt of a copy of the Client Agreement. The authorization shall continue in force until written notice of its revocation is delivered to you at the office servicing this account.

Dated    July 10, 2007

By  _____
        Signature Required

Title  President & COO

I,  Scott Schley                    being the
            Please Print

Secretary of  Maher Terminals Holdings Corp.
                    Corporation Name

hereby certify that the resolutions set forth on page 2 of this document or the attached were duly adopted at a meeting of the Board of Directors of said Corporation, duly held on the _____ day of _____, 20 ____ at which a quorum of said Board of Directors was present and acting throughout and that no action has been taken to rescind or amend said resolutions and that the same are now in full force and effect.

I further certify that each of the following has been duly elected and is now legally holding the office set opposite his or her name:

M. Brad Maher, Chairman & CEO , President

Basil Maher                    , Vice President & COO

Vacant                        , Treasurer

Scott Schley, Sr.V.P., General Counsel & Secretary

I further certify that the said Corporation is duly organized and existing and has the power to take the action called for by the resolutions annexed hereto.

IN WITNESS WHEREOF, I have hereunto affixed my hand and the seal of said Corporation this  10th  day of  July , 20 07

_____ , Secretary
        Signature Required

⨡ Executive Committee of the

Rev. 1/06

**CERTIFIED COPY OF CERTAIN RESOLUTIONS ADOPTED BY THE BOARD OF DIRECTORS
WHEREBY THE ESTABLISHMENT AND MAINTENANCE OF SECURITY CASH ACCOUNTS HAVE BEEN AUTHORIZED**

RESOLVED –
FIRST: ~~That the President or any Vice President of this Corporation,~~

or _CHAIRMAN, PRESIDENT + General Counsel_
Please Print

or _____
Please Print

be, and they hereby are, and each of them hereby is authorized and empowered, for and on behalf of this Corporation (herein called the "Corporation"), to establish and maintain one or more accounts with Lehman Brothers, Inc. (herein called the "Brokers") for the purpose of purchasing, investing in, or otherwise acquiring, selling (including short sales), possessing, transferring, exchanging, pledging or otherwise disposing of, or turning to account of, or realizing upon, and generally dealing in and with (a)* any and all forms of securities including, but not by way of limitation, shares, stocks, bonds, debentures, notes, scrip, participation certificates, rights to subscribe, equity options, debt options, warrants, certificates of deposit, mortgages, choses in action, evidence of indebtedness, commercial paper, certificates of indebtedness and certificates of interest of any and every kind and nature whatsoever, secured or unsecured, whether represented by trust, participating and/or other certificates or otherwise; and (b)* any and all commodities and/or contracts for the future delivery thereof, whether represented by trust, participating and/or other certificates or otherwise.

The fullest authority at all times with respect to any such commitment or with respect to any transaction deemed by any of the said officers and/or agents to be proper in connection therewith is hereby conferred, including authority (without limiting the generality of the foregoing) to give written or oral instructions to the Brokers with respect to said transactions; to borrow money and securities and if transactions in commodities are authorized hereby to borrow commodities and/or future contracts in commodities, and to borrow such money, securities, commodities and/or future contracts in commodities in from or through the Brokers, and to secure repayment thereof with the property of the Corporation; to bind and obligate the Corporation to and for the carrying out of any contract, arrangement, or transaction, which shall be entered into by any such officer and/or agent for and on behalf of the Corporation with or through the Brokers; to pay in cash or by checks and/or drafts drawn upon the funds of the Corporation such sums as may be necessary in connection with any of the said accounts; to deliver securities, contracts and/or commodity futures to the Brokers; to order the transfer or delivery thereof to any other person whatsoever, and to order the transfer of record of any securities, or contracts, or titles, to any name selected by any of the said officers or agents; to affix the corporate seal to any documents or order to pass title thereto; to direct the sale or exercise of any rights with respect to any securities; to sign for the Corporation all releases, power of attorney and/or other documents in connect with any such account; and to agree to any terms or conditions to control any such account; to direct the Brokers to surrender any securities to the proper agent or party for the purpose of effecting any exchange or conversion, or for the purpose of deposit with any protective or similar committee, or otherwise; to accept delivery of any securities, contracts and/or commodity futures; to appoint any other person or persons to do any and all things which any of the said officers and/or agents is hereby empowered to do, and generally to do and take all action necessary in connection with the account, or considered desirable by such officer and/or agent with respect thereto.

**Note: If either (a) or (b) in the first paragraph is not applicable please strike out the inapplicable part.

SECOND: That the Brokers may deal with any and all of the persons directly or indirectly for the foregoing resolution empowered, as though they were dealing with the Corporation directly.

THIRD: That the Secretary of the Corporation be and he hereby is authorized, empowered and directed to certify, under the seal of the Corporation, or otherwise, to the Brokers:

(a) a true copy of these resolutions;
(b) specimen signatures of each and every person by the resolutions empowered;
(c) a certificate (which, if required by the Brokers, shall be supported by an opinion of the general counsel of the Corporation, or other counsel satisfactory to the Brokers) that the Corporation is duly organized and existing, that its charter empowers it to transact the business by these resolutions defined, and that no limitation has been imposed upon such powers by the By-Laws otherwise.

FOURTH: That the Brokers may rely upon any certification given in accordance with these resolutions, as continuing fully effective unless and until the Brokers shall receive due written notice of a change in or the rescission of the authority so evidenced and the dispatch or receipt of any other form of notice shall not constitute a waiver of this provision, nor shall the fact that any person hereby empowered ceases to be an officer of the Corporation or becomes an officer under some other title in any way affect the powers hereby conferred. The failure to supply any specimen signature shall not invalidate any transaction if the transaction is in accordance with authority actually granted.

FIFTH: That in the event of any change in the officer or powers or persons hereby empowered, the Secretary shall certify such changes to the Brokers in writing in the manner hereinabove provided, which notification, when received, shall be adequate both to terminate the powers of the persons theretofore authorized, and to empower the persons thereby substituted.

SIXTH: That the foregoing resolutions and the certificates actually furnished to the Brokers by the Secretary of the Corporation pursuant thereof, be and they hereby are, made irrevocable until written notice of the revocation thereof shall have been received by the Brokers.

By _____
Signature Required

Date _July 10, 2007_

Title _Sr. V.P., General Counsel & Secretary_

+ EXECUTIVE COMMITTEE OF THE

**SIGNATURE CARD**
For each corporate officer listed on page 1 or 2 of this form, a signature is required below:

Name of Account

Maher Terminals Holdings Corp

| ITS Customer Number | MTS Customer Number | TMS Customer Number |
|---|---|---|

Taxpayer Identification Number

☐ Sole Proprietorship   ☐ Partnership   ☐ Corporation   ☐ Non-Profit Organization   ☐ Others _____

\* Signature _M. Brian Maher_

Print Name   M. Brian Maher                          Title   Chairman & CEO

\* Signature _____

Print Name   Basil Maher                          Title   President & COO

Signature

Print Name                          Title

Signature

Print Name                          Title

Signature

Print Name                          Title

Signature

Print Name                          Title

**LEHMAN BROTHERS**
SIGNATURE CARD

LB 1/06

\* 2 Signatures Required

# EXHIBIT D

CASH MANAGEMENT BROKERAGE AGREEMENT AND LIMITED
DISCRETIONARY AUTHORIZATION

IMPORTANT CLIENT DISCLOSURE: Your account is a brokerage account and not an advisory account. Our interests may not always be the same as yours. Please ask us questions to make sure you understand your rights and our obligations to you, including the extent of our obligations to disclose conflicts of interest and to act in your best interest. We are paid both by you and, sometimes, by people who compensate us based on what you buy. Therefore, our profits, and our salespersons' compensation, may vary by product and over time. If you have any questions regarding the specific nature of your account or the obligations owed to you, please contact the business control group at 212-526-9966.

## CASH MANAGEMENT BROKERAGE AGREEMENT AND LIMITED DISCRETIONARY AUTHORIZATION

This Cash Management Brokerage Agreement and Limited Discretionary Authorization (the "Agreement"), dated as of _____, 2007, is entered into by and between Lehman Brothers Inc. ("Lehman Brothers") and _____*_____ (the "Client") wherein the Client directs Lehman Brothers to handle the cash account referenced on Schedule I hereto pursuant to the instructions set forth in Schedule II (the "Account").   * Hoher Terminals Holdings Corp.

1.     **Investment Guidelines.** Lehman Brothers is to invest and reinvest the securities, cash and/or other investments held in the Account and to engage in such transactions as directed by the Client, provided; however, that all investments, reinvestments and transactions by Lehman Brothers shall at all times comply with the investment guidelines of Client attached hereto as Schedule II, which may be amended from time to time by the Client in writing. In connection with the handling of this account, Lehman Brothers is entitled to rely on the financial and other information provided by Client. Client agrees to inform Lehman Brothers promptly in writing of any material change in Client's circumstances or objectives which might affect the manner in which Client's assets should be invested and to provide Lehman Brothers with such other information as it shall reasonably request.

✓   Client understands that:

✓   Where the investment guidelines in Schedule II specifically state a limit or percentage of the Account to an issuer or security type, Lehman Brothers will interpret this to represent a parameter to be considered at the time of purchase only.

✓   Where the investment guidelines in Schedule II place a dollar limit to an issuer or security type, Lehman Brothers will not include accrued interest in this calculation. All securities will be valued at "par".

✓   Where the investment guidelines in Schedule II permit investments in securities that have perpetual interest rate reset features such as auction rate securities or floating rate notes, Lehman Brothers will calculate the maturity based on the rate reset period.

✓   For new debt issued by US Agencies, Lehman Brothers uses the "implied issuer ratings" as specific-issue ratings for these types of agency securities.

If the above discussion conforms with Client's interpretation of the Account's investment guidelines in Schedule II, please acknowledge by initialing in the space provided next to each item. If this is not the case, please contact your corporate cash manager.

2.      Other Services. Client will be furnished with confirmations of Account transactions and Account statements monthly. Client is responsible for reviewing statements and confirming and reporting any discrepancies to Lehman Brothers.

To the extent possible, Lehman Brothers will, at Client's option, maintain custody of the assets held in the Account, in which case it will, at no additional charge, credit the Account with dividends and interest paid on securities held in the Account and with principal paid on called or matured securities as and when received. If Lehman Brothers has custody of the assets, it will be responsible for the timely presentment of called bonds, but when assets are custodied elsewhere, Lehman Brothers will not be responsible for such redemptions. If the assets in the Account are custodied outside Lehman Brothers, Client shall instruct the custodian to provide Lehman Brothers with such periodic reports concerning the status of the Account as Lehman Brothers may reasonably request from time to time. The Client will not change the custodian without giving Lehman Brothers reasonable prior notice of its intention to do so together with the name and other relevant information with respect to the new custodian.

3.      Discretionary Authorization. Client hereby grants Lehman Brothers limited discretionary authorization, pursuant to and in accordance with Schedule II. Pursuant to such authorization, Lehman Brothers may and at Client's risk, purchase, sell, exchange, convert and otherwise trade in the securities and other investments in the Account, as well as arrange for delivery and payment in connection with the above, and act on behalf of the Client in all other matters necessary or incidental to the handling of the Account pursuant to and in accordance with Schedule II. Should Client appoint a custodian other than Lehman Brothers in connection with the Account, Client grants Lehman Brothers full authorization to issue such instructions to and engage in such transactions with custodian as may be appropriate in connection with the management of the Account.

This limited discretionary authorization is in addition to (and in no way limits or restricts) any rights which the parties hereto may have under any other agreement or agreements between the Client and Lehman Brothers.

The discretionary trading authorization is a continuing one and shall remain in full force and effect until terminated by Client or Lehman Brothers pursuant to the provisions of paragraph 10 of this Agreement. The termination of this authorization will constitute a termination of this Agreement. To terminate this authorization, the Client hereby agrees to submit a written notice addressed to Lehman Brothers at the address set forth on Schedule IV hereto, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation.

This agreement shall inure to the benefit of the parties hereto and their respective successor corporation(s) or assigns.

4.    **Execution Services.** Lehman Brothers will act as a broker/dealer or use an affiliate as broker/dealer, although unaffiliated broker/dealers may be used as well. In selecting broker/dealers for a particular transaction, Lehman Brothers may consider all relevant factors, including the execution capabilities required by the transaction, the importance of speed, efficiency or confidentiality, familiarity with sources from whom or to whom particular securities might be purchased or sold, as well as any other relevant matters. Lehman Brothers may select broker/dealers which provide it with research or other transaction-related services and such research and other services may be used for its own and for other client accounts to the extent permitted by law.

In that this is a brokerage account, Client acknowledges and agrees that the rules governing investment advisers are not applicable. Accordingly, Lehman Brothers may execute transactions in a principle or agency capacity based on its discretionary trading authority, subject to applicable rules governing a broker/dealer and in accordance with Schedule II. In no event will Lehman Brothers or its affiliates be obligated to effect any transaction for Client which it or they believe would violate any applicable state or federal law, rule or regulation, or of the regulations of any regulatory or self-regulatory body.

5.    **Conflicts of Interest.** Client understands that the Account may be invested in investment products or services, including sweep vehicles, from which Lehman Brothers or its affiliates derive compensation and which Lehman Brothers has an incentive to use instead of other similar investments which could be more or less beneficial for Client. Client further understands that Lehman Brothers and its affiliates act in various capacities with respect to such products and services and receive fees for doing so. This Agreement shall have no effect on the application to Client of the terms of products or services that the Client invests in from which Lehman Brothers or its affiliates derive compensation.

The Client understands that transactions may be effected with Lehman Brothers as principal or dealer, or through Lehman Brothers as agent or broker, and that any such purchase may involve securities in the distribution of which Lehman Brothers may have an interest as underwriter, member of selling group, or otherwise.

6.    **Valuation.** Any securities or investments in the Account shall be valued at amortized cost or in such other manner as Lehman Brothers reasonably determines reflects fair market value. To the extent possible, all valuations will be performed by an independent portfolio information service, and will be relied upon by Lehman Brothers. Any valuation shall not be deemed a guarantee of any kind whatsoever with respect to the value of the assets of the Account.

7.    **Client Authority.** No written notice shall affect, in any matter, Lehman Brothers' rights under this Agreement with respect to any obligation arising prior to actual receipt of such written notice. Client represents and warrants that at all times during the term of the Agreement, (i) this

Agreement has been duly authorized, executed and delivered by the Client and constitutes its valid and binding obligation, enforceable against the Client in accordance with its terms, (ii) no governmental authorizations, approvals, consents or filings are required in connection with the execution, delivery or performance of this Agreement by the Client, (iii) the execution, delivery and performance of this Agreement by the Client will not violate or result in any default under the Client's certificate of incorporation or by-laws (or equivalent constituent documents), or any provision of any plan or trust governing the assets in the Account, any contract or other agreement to which the Client is a party or by which it or its assets may be bound or any statute or any rule, regulation or order of any governmental agency or body, (iv) the list of signatures attached hereto as Schedule III constitutes the valid signatures of all persons authorized by the Client to take action with respect to the Account (or all such persons to whom Client has delegated fiduciary responsibility to take action with respect to the Account) and Lehman Brothers shall be entitled to rely conclusively on any document executed by any of them, and (v) the Client is not an investment company (as that term is defined in the Investment Advisers Act of 1940. If the Client is an organization, the organization has authorized and empowered each of the individual(s) listed hereto as Schedule III to act on behalf of the organization; to open one or more accounts; enter orders; make and receive payments of money; give instructions; register, deliver, and accept delivery of securities; enter into and execute agreements and do all things necessary or advisable to effect transactions in all matters and business relating to the account.

8.    **Duty of Care.**  Lehman Brothers is acting in the capacity of a broker in handling the Account and as such will handle the Account of Client in accordance with the responsibilities as required by the federal securities laws and the rules imposed by the self regulatory organizations, including the New York Stock Exchange, the National Association of Securities Dealers, and in accordance with Schedule II. Neither Lehman Brothers nor any of its officers, directors or employees shall be responsible hereunder for any action, performed or omitted to be performed in good faith, or for any errors in judgment in managing the Account other than those caused by failure to comply with Schedule II, gross negligence or willful misconduct. Client acknowledges that Lehman Brothers does not warrant the rate of return on or the market value of the investments in the Account. Lehman Brothers and its officers, directors and employees shall not be responsible for any loss incurred by reason of any act or omission of any broker, dealer or custodian; provided, however, that Lehman Brothers will make reasonable efforts to require that brokers/dealers perform their obligations with respect to the Account.

9.    **Confidentiality.**  All material and information supplied by Client to Lehman Brothers, including but not limited to information concerning Client's marketing plans, investment strategy, business methods and financial results, is confidential and proprietary to Client ("Confidential Information"). Lehman Brothers will not disclose, sell or in any way transfer Confidential Information to any third party, unless it received Client's prior written approval of each such use. Upon written request or upon the termination of this Agreement, Lehman Brothers shall return to Client all Confidential Information in Lehman Brothers possession or control. This paragraph 9 will survive termination of this Agreement.

10.    **Termination of Agreement.**  This Agreement may be terminated at any time upon written notice by either party and termination will become effective upon receipt of such notice.

Such termination will not, however, affect the liabilities or obligations of the parties under this Agreement arising from transactions initiated prior to such termination, including the provisions regarding arbitration which shall survive any expiration or termination. Upon the termination of this Agreement, Lehman Brothers shall be under no obligation whatsoever to recommend any action with regard to, or to liquidate, the securities or other investments in the Account. Lehman Brothers retains the right, however, to complete any transaction open as of the termination date and to retain amounts in the Account sufficient to effect such completion. Upon termination, it shall be Client's exclusive responsibility to issue instructions in writing regarding the disposition of any assets held in the Account and Lehman Brothers shall comply with such instructions. Client is responsible for providing Lehman Brothers with the name of another custodian at the time the Agreement is terminated if Client chooses not to maintain custody of the Account with Lehman Brothers.

11.    Arbitration.

This agreement contains a predispute arbitration clause. By signing an arbitration agreement the parties agree as follows:

(a) Arbitration Disclosures.

- All parties to this agreement are giving up their right to sue each other in court, including the right to trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed.
- Arbitration awards are generally final and binding; a party's ability to have a court reverse or modify an arbitration award is very limited.
- The ability of the parties to obtain documents, witness statements and other discovery is generally more limited in arbitration than in court proceedings.
- The arbitrators do not have to explain the reason(s) for their award.
- The panel of arbitrators will typically include a minority of arbitrators who were or are affiliated with the securities industry.
- The rules of some arbitration forums may impose time limits for bringing a claim in arbitration. In some cases, a claim that is ineligible for arbitration may be brought in court.
- The rules of the arbitration forum in which the claim is filed, and any amendments thereto, shall be incorporated into this agreement.

(b)    Arbitration Agreement.

Client and Lehman Brothers agree that all claims or controversies arising from or relating to the construction, performance or breach of this Agreement, or relating to any Account referenced herein, shall be resolved by arbitration conducted only at the New York Stock Exchange, Inc., National Association of Securities Dealers, Inc. or the American Stock Exchange, Inc., or any other self-regulatory organization or exchange of which Lehman Brothers or any affiliated broker/dealer is a member. Client may elect which of these arbitration forums shall hear the matter by sending a registered letter or telegram to:

Lehman Brothers Inc., General Counsel's Office, 399 Park Avenue, New York 10022. If the Client fails to make such election before the expiration of ten (10) days after receipt of a written request from Lehman Brothers to make such election, Lehman Brothers shall have the right to choose the forum.

Such forbearance to enforce an agreement to arbitrate shall not constitute a waiver of any rights under this Agreement except to the extent stated herein.

The foregoing agreement to arbitrate does not entitle Client to obtain arbitration of claims that would be barred by the relevant statute of limitations, if such claims were brought in a court of competent jurisdiction. If at the time that a demand for arbitration is made or an election or notice of intention to arbitrate is served, the claims sought to be arbitrated would have been barred by the relevant statute of limitations or other time bar, any party to this Agreement may assert the limitations as a bar to the arbitration by applying to any court of competent jurisdiction, and Client expressly agrees that any issues relating to the application of a statute of limitations or other time bar are referable to such court. The failure to assert such bar by application to a court, however, shall not preclude its assertion before the arbitrators.

12.    Miscellaneous  In the event of any change in the identity or powers of persons authorized to act on the Client's behalf, the secretary or other designated officer of Client shall notify Lehman Brothers in writing which notification, when received, shall be adequate both to terminate the authorization of the persons previously authorized, and to authorize the persons thereby substituted.

Client agrees to promptly notify Lehman Brothers if it or any other persons or entities having a beneficial interest in the account are or become restricted, as such term is defined in the NASD's Rule 2790, from purchasing securities in certain public offerings.

Each of the parties hereto reserves the right to refuse to accept or renew this Agreement in its sole discretion and for any reason.

All paragraphs headings in this Agreement are for convenience of reference only, do not form part of this Agreement, and shall not affect in any way the meaning and interpretation of this Agreement.

Except for the election described in Section 11 hereof which shall be sent to the address set forth in such Section 11, all other written communication to Lehman Brothers from Client pursuant to this Agreement shall be sent to Lehman Brothers at the address set forth on Schedule IV hereto. All written communications to Client from Lehman Brothers shall be sent to the address set forth on Schedule IV hereto.

Neither party shall use the other party's name as a commercial reference to potential clients without the other party's prior written consent, which consent may be withheld at other party's sole discretion.

*[Remainder of this page has been intentionally left blank; signature page follows.]*

[Client] MAher Terminals Holdings Corp.

By: _____

Name: BAsil MAher

Title: President & COO

Lehman Brothers Inc.

By: _____

Name: _____

Title: _____

Date: _____

## SCHEDULE I

Account Name:

Account Number:

## SCHEDULE II

### INVESTMENT GUIDELINES

[MUST BE COMPLETED/PROVIDED BY THE CLIENT].

**SCHEDULE III**

Persons Authorized to take Action on behalf of the Account:

| Signature | | |
|---|---|---|
| M. Brian Maher | | |
| Print Name M. BRiAN MAHER | Title CHAiRMAN & CEO | Date 7/10/07 |
| Signature | | |
| | | |
| Print Name BAsil MAHER | Title PRESidENT & COO | Date 7/10/07 |
| Signature | | |
| | | |
| Print Name | Title | Date |
| Signature | | |
| | | |
| Print Name | Title | Date |

* 2 SigNATURES REquiReD

## SCHEDULE IV

### Addresses for Notices

If to Lehman Brothers, addressed to:

Lehman Brothers Inc.
[Branch Address]
Attn: [Sales Team]

       In copy to:    Lehman Brothers Inc.
                     [Branch Address]
                     Attn: Administrative Manager

If to Client, addressed to:

Scott Schley



M. Brian Maher



Basil Maher





**ADMIT ONE**

H
A
N
D

D
E
L
I
V
E
R
Y

**FILED / RECEIVED**

SEP 2 2 2009

EPIQ BANKRUPTCY SOLUTIONS, LLC

RECEIVED BY:

DATE

3:57

TIME