Hearing Date and Time: June 2, 2011 at 10:00 a.m. (Eastern Time)
Response Deadline: May 18, 2011 at 4:00 p.m. (Eastern Time)

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Jennifer C. DeMarco
Jennifer B. Premisler

*Attorney for Gazprombank Mortgage Funding 2 S.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

--------------------------------------------------------------------x

**RESPONSE OF GAZPROMBANK MORTGAGE FUNDING 2 S.A. TO DEBTORS' ONE HUNDRED THIRTY-SECOND OMNIBUS OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

Gazprombank Mortgage Funding 2 S.A. ("GMF2"), by and through its undersigned counsel, submits this response ("Response") to the Debtors' One Hundred Thirty-Second Omnibus Objection to Claims (Valued Derivative Claims) [Docket No.16117], dated April 18, 2011 (the "Objection"). In support of its Response, GMF2 respectfully states as follows:

**PRELIMINARY STATEMENT AND BACKGROUND**

1. The Debtors' Objection is insufficient to overcome the *prima facie* validity of the properly filed claims of GMF2. To properly shift the burden back to GMF2, the Debtors are required to adduce evidence of equal or greater probative force to that put forth by GMF2. The

cursory allegations that GMF2's calculations are "greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors after a review of the supporting documentation provided by the claimants and the Debtors' books and records" is not sufficient. Objection at ¶ 11.

2. On July 22, 2007, GMF2 and Lehman Brothers Special Financing Inc. ("LBSF", together with GMF2, the "Parties") entered into an ISDA Master Agreement[1] that governs the terms of certain swap transactions entered into between the Parties (together with the appurtenant Schedule dated as of the same date, the "ISDA Master"). The Parties entered into one transaction under the ISDA Master evidenced by a confirmation also dated June 22, 2007 (such confirmation together with the ISDA Master, the "Agreement").[2]

3. Lehman Brothers Holdings Inc. ("LBHI") was designated as a Credit Support Provider in relation to LBSF, and LBHI issued a guarantee dated July 22, 2007 in relation to LBSF's obligations under the Agreement as a Credit Support Document (the "Guarantee").

4. On September 15, 2008, LBHI commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York (the "Court"). On October 3, 2008, LBSF commenced a voluntary case in this Court under the Bankruptcy Code. These chapter 11 cases, as well as the chapter 11 cases of certain affiliates of LBHI (such affiliates together with LBHI and LBSF, the "Debtors"), have been consolidated for procedural purposes only and are being jointly administered pursuant to the Federal Rules of Bankruptcy Procedure.

---

[1]  Capitalized terms not defined herein shall have the meaning ascribed to them in the Agreement.

[2]  In accordance with the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated as of April 19, 2010, all of the information and documentation submitted by GMF2 in connection with the Claims (as defined herein) and Questionnaires (as defined herein) are part of the record and incorporated herein. GMF2 is not required to submit such information or documentation in connection with this Response.

5. The commencement of the chapter 11 cases of LBHI and LBSF constituted Events of Default under Section 5(a)(vii) of the ISDA Master. Section 6(a) of the ISDA Master states that upon an occurrence of an Event of Default, the Non-Defaulting Party may elect to terminate all transactions under the Agreement and designate an Early Termination Date. On March 26, 2009, GMF2 exercised its rights under Section 6(a) of the ISDA Master and designated March 30, 2009 as the Early Termination Date.

6. Under the Agreement, the Non-Defaulting Party is entitled to calculate the Early Termination Amount and send notice of the same to the Defaulting Party. The Agreement specifies Market Quotation and Second Method as being the applicable payment measure and method. In accordance with these provisions, GMF2 sought to obtain quotations from Reference Market-makers of an amount that would be required to be paid to such Reference Market-makers (or that such Reference Market-makers would be willing to pay) to enter into a transaction that would have the effect of preserving for GMF2 the economic equivalent of the terminated transaction with LBSF.

7. On April 2, 2009, GMF2 delivered a calculation statement (the "Calculation Statement") to LBSF and LBHI pursuant to Section 6(d)(i) of the ISDA Master. The Calculation Statement included the market quotes given by the Reference Market-makers to enter into a transaction as described above, or notations where such Reference Market-maker was unable to provide a quote, as applicable, as of the Early Termination Date, and GMF2's calculation of the amount LBSF owed to GMF2 in respect of the early termination of the transaction (the "Early Termination Amount").

8. GMF2 has a claim against LBSF for the entirety of the Early Termination Amount calculated in accordance with Section 6(e) of the Agreement (and such other amounts as permitted under the Agreement and as set forth in the LBSF Claim).

9. On July 2, 2009, the Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

10. Pursuant to the Bar Date Order, on September 16, 2009, GMF2 filed a proof of claim against LBSF (the "LBSF Claim") in the amount of $159,544,969.34 with respect to the Early Termination Amount and other amounts (as further described in the Claims and Questionnaires) and a proof of claim against LBHI in the amount of $161,944,844.83 with respect to amounts owing under the Guarantee (the "LBHI Claim" and together with the LBSF Claim, the "Claims"). On October 19, 2009, GMF2 submitted derivative and guarantee questionnaires pursuant to the Bar Date Order (collectively, the "Questionnaires").

11. By its Objection, the Debtors are seeking to reduce both the LBSF Claim and the LBHI Claim by over 49 percent, from $159,544,969.34 to $80,575,237.04 with respect to the LBSF Claim and from $161,944,844.83 to $82,458,766.19 with respect to the LBHI Claim.

12. The Objection summarily states that the claims appearing in the objection "are greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors after a review of the supporting documentation provided by the claimants and the Debtors' books and records." Objection at ¶ 11. The Objection also sets forth a generic description of the "multi-step process" used by the Debtors to review claims based on derivative contracts. However, the Objection fails to identify *any* basis to support an objection to the Claims.

## ARGUMENT

**A.     The Applicable Standard**

13.     A properly filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). Section 502(b) provides, in pertinent part, that if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim and shall allow the claim in such amount except to the extent that one of the exceptions enumerated in section 502(b) applies. 11 U.S.C. §502(b); *In re Rockefeller Center Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). A properly filed proof of claim[3] is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).

14.     Following the establishment of a claim's *prima facie* validity, the burden shifts to the objector to show "sufficient evidence" to negate such *prima facie* validity. *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15 (Bankr. S.D.N.Y., Feb. 20, 2007); *J.P. Morgan Sec's., Inc. v. Spiegel Creditor Trust (In re Spiegel, Inc.)*, Case Nos. 03-11540 (BRL), 06-CV-13477 (CM), 2007 WL 2456626 at * 15 n.6 (S.D.N.Y. Aug. 22, 2007). Such "sufficient evidence" must be of equal or greater probative force to that of the proof of claim which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. In *re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (*internal quotations omitted*) (quoting *In re Allegheny Intern., Inc.* 954 F.2d 167, 173-174 (3d Cir. 1992) quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)); *In re Spiegel, Inc.*, 2007 WL 2456626 at *15; *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (evidence must be of equal force). "Mere objections" do not constitute "sufficient evidence" and are insufficient to

---

[3]    The Objection does not allege that the Claims were not properly filed.

refute a claimant's *prima facie* evidence. See *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim."); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (testimonial evidence was sufficient to shift the burden back to the claimant to prove the validity of its claim).

15.     Only when the objector overcomes its burden and puts forth such "sufficient evidence" does the burden of going forward shift back to the claimant and the claimant "is required to meet the usual burden of proof to establish the validity of the claim." *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15-16; *In re Oneida Ltd.*, 400 B.R. at 389.

**B.     The Debtors Have Not Put Forth Evidence to Rebut the Claims**

16.     In order satisfy its burden the Debtors would have had to put forth sufficient evidence to demonstrate that GMF2 failed to calculate the Early Termination Amount in accordance with the Agreement. The Debtors did not put forth any "evidence" to rebut the *prima facie* validity of the Claims. Instead, the Objection summarily asserts that the amounts of the Claims are "greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors."[4] Objection at ¶ 11.

17.     The Debtors' sole statement with respect to the fairness, reasonableness and accuracy of the amount of the Claims is conclusory and amounts to, at best, a mere assertion.

---

[4] The Objection also describes the Debtors' purported "thorough, multi-step process to review claims," which in general terms is set forth as follows: "collect and review documents… reconcile posted collateral…review valuation methodology." Following the implementation of such process the Debtors apparently sought review of the Proposed Settlement Amount from the Settlement Adjudication Committee, as those terms are defined in the Objection. Objection at ¶¶ 14-15. It is the Debtors' senior management and chief restructuring officer, Alverez & Marsal, that make up the "committee".

See *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence).

18. The Agreement is clear that the Non-Defaulting Party is the party that is entitled to calculate the Early Termination Amount. LBSF as the Defaulting Party is not entitled pursuant to the Agreement to merely put forth its own determination of such amount. Pursuant to the Agreement, the Debtors' determination with respect to value is irrelevant unless the Debtors put forth evidence that GMF2's calculations do not comply with the Agreement. The Debtors have not put forth such evidence.

19. The Debtors have not met their burden of refuting the Claims which would shift the burden of proving the Claims to GMF2. The burden remains with the Debtors to produce "sufficient evidence" that GMF2's calculations do not comply with the Agreement.

20. GMF2 reserves its right to file a supplemental and/or amended response to the Objection shall it deem it necessary. To the extent that an evidentiary hearing is necessary on the merits of GMF2's Claims, GMF2 reserves the right to request a full evidentiary hearing pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the basis for the calculation of and amount of the Claims.

WHEREFORE, GMF2 respectfully requests that the Bankruptcy Court (i) overrule the Objection as it pertains to GMF2's Claims, and (ii) grant GMF2 such further relief as the Bankruptcy Court deems just.

Dated:     New York, New York
             May 16, 2011

CLIFFORD CHANCE US LLP

By: /s/ Jennifer C. DeMarco\_\_\_\_
    Jennifer C. DeMarco
    Jennifer B. Premisler

    31 West 52nd Street
    New York, NY 10019
    Tel: (212) 878-8000
    Fax: (212) 878-8375

*Attorney for Gazprombank Mortgage Funding 2 S.A.*