Hearing Date and Time: June 2, 2011 at 10:00 a.m. (Eastern Time)
Response Deadline: May 18, 2011 at 4:00 p.m. (Eastern Time)

CLIFFORD CHANCE US LLP
31 West 52nd Street
New York, New York 10019
Telephone: (212) 878-8000
Facsimile: (212) 878-8375
Jennifer C. DeMarco
Sarah N. Campbell

*Counsel for BlackRock Institutional Trust Company, N.A.,
as successor-in-interest to Barclays Global Investors, N.A.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | : | Case No. 08-13555 (JMP) |
| | : | |
| Debtors. | : | (Jointly Administered) |

---------------------------------------------------------------------x

**RESPONSE OF BLACKROCK FIXED INCOME GLOBAL ALPHA FUND LTD. TO
DEBTORS' ONE HUNDRED THIRTY-SECOND OBJECTION
TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

BlackRock Institutional Trust Company, N.A., successor-in-interest to Barclays Global Investors, N.A. (the "Investment Manager"), as investment manager on behalf of BlackRock Fixed Income Global Alpha Fund Ltd.[1] ("FIGA" or the "Claimant"), by and through its undersigned counsel, hereby submits this response ("Response") to the Debtors' One Hundred Thirty-Second Objection to Claims (Valued Derivative Claims) [Docket No. 16117], dated April 18, 2011 (the "Objection"), and in support thereof respectfully state as follows:

---

[1] f/k/a BGI Fixed Income Global Alpha Fund Ltd.

PRELIMINARY STATEMENT AND BACKGROUND

1.  The Debtors' Objection is insufficient to overcome the *prima facie* validity of the properly filed claim of FIGA.  To properly shift the burden back to the Claimant, the Debtors are required to adduce evidence of equal or greater probative force than that put forth by the Claimant.  The cursory allegation that Claimant's calculations are "greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors after a review of the supporting documentation provided by the claimants and the Debtors' books and records" is not sufficient.  Objection at ¶ 13.[2]

2.  On December, 22, 2005, The 3D Global Opportunities Fund Ltd. ("3D"), acting by the Investment Manager, and Lehman Brothers Special Financing Inc. ("LBSF") entered into an ISDA Master Agreement that governs the terms of certain swap transactions entered into between the parties (together with the appurtenant Schedule and the Credit Support Annex dated as of the same date and as amended from time-to-time, the "3D ISDA Master").  The parties entered into various transactions under the 3D ISDA Master evidenced by confirmations (such confirmations together with the 3D ISDA Master, the "3D Agreement").[3]

3.  On May 30, 2006, FIGA, acting by the Investment Manager, and LBSF entered into an ISDA Master Agreement that governs the terms of certain swap transactions entered into between the parties (together with the appurtenant Schedule and the Credit Support Annex dated

---

[2]  The Declaration of Gary H. Mandelblatt, which is also cited in support of the Objection, [Docket No. 4113] (the "Mandelblatt Declaration") is of no moment as it contains a generalized discussion of the Debtors' 'valuation process' and does not in any way purport to address the specific merits of any claim let alone the claims of FIGA identified in the currently pending Objection.

[3]  On November 28, 2008, an agreement with respect to the assignment and assumption of interests was entered into between FIGA and 3D pursuant to which, *inter alia*, 3D transferred its rights under the 3D Agreement (and certain other agreements) to FIGA (the "Assignment").

2

as of the same date and as amended from time-to-time, the "FIGA ISDA Master"). The parties entered into various transactions under the FIGA ISDA Master evidenced by confirmations (such confirmations together with the FIGA ISDA Master, the "FIGA Agreement" and, collectively, with the 3D Agreement, the "ISDA Documentation").[4]

    4.    Lehman Brothers Holdings Inc. ("LBHI") was designated as a Credit Support Provider in relation to LBSF under the ISDA Documentation, and LBHI issued guarantees dated December 8, 2006 and January 10, 2007 in relation to, *inter alia*, LBSF's obligations under the 3D Agreement and FIGA Agreement, respectively.

    5.    On September 15, 2008, an Additional Termination Event occurred under section 5(b)(v) of each of the 3D and FIGA ISDA Master Agreements and Part 1(h)(vi) of the appurtenant Schedules thereto.[5] On that same date, Barclays Global Investors, N.A. ("BGI"), acting as investment manager to 3D and FIGA, gave notice pursuant to section 6(b) of each of the 3D and FIGA Agreements and designated September 15, 2008 as the Early Termination Date in respect of all outstanding Transactions thereunder.

    6.    On October 15, 2008, BGI (acting as investment manager) delivered statements pursuant to sections 6(d) of each of the 3D and FIGA Agreements containing calculations of the

---

[4]  The 3D ISDA Master and the FIGA ISDA Master are both based upon the 1992 form agreement promulgated by the International Swaps Dealers Association.

[5]  Part 1(h)(vi) provides as follows:

The occurrence of a Ratings Event (as defined herein) with respect to Lehman Brothers Holdings Inc. ("Holdings") (in which event Party A will be the Affected Party). For purposes of this Agreement, a "Ratings Event" shall have been deemed to occur if at any time (A) the senior unsecured long-term indebtedness of Holdings is (1) rated below (x) BBB by Standard & Poor's Ratings Services, a division of The McGraw-Hill Companies, Inc. (or any successor entity) ("S&P") or (y) Baa2 by Moody's Investors Service, Inc. (or any successor entity) ("Moody's").

termination amount due and payable between the relevant parties under the ISDA Documentation (as amended on October 6, 2009, the "Calculation Statement").[6]

7. Pursuant to the Bar Date Order,[7] on September 14, 2009, the Claimant filed a proof of claim against LBSF in the amount of $8,733,195.00, comprised of $8,403,758.00 principal plus interest and costs (claim no. 12020, the "LBSF Claim") based upon the ISDA Documentation and a corresponding guarantee claim against Lehman Brothers Holdings Inc. in the same amount based upon its guarantee thereof (claim no. 12019, the "Guarantee Claim" and, together with the LBSF Claim, the "Claims"). On October 14, 2009, FIGA submitted derivative and guarantee questionnaires pursuant to the Bar Date Order (collectively, the "Questionnaires").[8]

8. By its Objection, the Debtors are seeking to reduce each of the Claims by over fifty percent, from $8,733,195.00 to $4,063,330.76.

9. The ISDA Documentation is clear, upon an occurrence of an Additional Termination Event where there is only one Affected Party (in this case, LBSF), the party which is not the Affected Party may designate an Early Termination Date. *See*, 3D and FIGA ISDA Master Agreements at § 6(b). In addition, the non-Affected Party as the Non-defaulting Party is

---

[6] The amendment to the Calculation Statement, among other things takes into account the Assignment by 3D to FIGA.

[7] On July 2, 2009, the Court entered the Order Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form [Docket No. 4271] (the "Bar Date Order").

[8] In accordance with the Order Pursuant to Section 105 of the Bankruptcy Code, Bankruptcy Rule 9014, and General Order M-390 Authorizing the Debtors to Implement Claims Hearing Procedures and Alternative Dispute Resolution Procedures for Claims Against Debtors, dated as of April 19, 2010, all of the information and documentation submitted by FIGA in connection with the Claims and Questionnaires are part of the record and incorporated herein. FIGA is not required to submit them in connection with this Response.

4

entitled to calculate the amount due in respect of such Early Termination Date and send notice of such valuation to the Affected Party as the Defaulting Party.[9]

10. As noted above, this reduction is sought based upon no more than a generic statement that the Claims "are greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors after a review of the supporting documentation provided by the claimants and the Debtors' books and records." Objection at ¶ 13. The Objection also sets forth a generic description of the "multi-step process" used by the Debtors to review claims based on derivative contracts. To the extent that the Objection rests upon the foregoing to shift the burden back to the Claimant who was entitled to calculate the Settlement Amount as the Non-defaulting Party under the ISDA Documentation, it fails.

## ARGUMENT

*Applicable Legal Standard*

11. A properly filed proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. §502(a). Section 502(b) provides, in pertinent part, that if an objection to a claim is made, the court, after notice and a hearing, shall determine the amount of the claim and shall allow the claim in such amount except to the extent that one of the exceptions enumerated in section 502(b) applies. 11 U.S.C. §502(b); *In re Rockefeller Center Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000). A properly filed proof of claim[10] is *prima facie* evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f).

---

[9] Pursuant to section 6(e)(ii)(1), *inter alia*, where there is one Affected Party if Loss applies the amount payable is determined in accordance with section 6(e)(i)(4) (*i.e.*, Second Method and Loss) and references to the Affected Party will be deemed references to the Defaulting Party and references to the party which is not the Affected Party will be deemed references to the Non-defaulting Party.

[10] The Objection does not allege that the Claims were not properly filed.

5

12. Following the establishment of a claim's *prima facie* validity, the burden shifts to the objector to show "sufficient evidence" to negate such *prima facie* validity. *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15 (Bankr. S.D.N.Y., Feb. 20, 2007); *J.P. Morgan Sec's., Inc. v. Spiegel Creditor Trust (In re Spiegel, Inc.)*, Case Nos. 03-11540 (BRL), 06-CV-13477 (CM), 2007 WL 2456626 at * 15 n.6 (S.D.N.Y. Aug. 22, 2007). Such "sufficient evidence" must be of equal or greater probative force to that of the proof of claim which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. In *re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) (*internal quotations omitted*) (quoting *In re Allegheny Intern., Inc.* 954 F.2d 167, 173-174 (3d Cir. 1992) quoting *In re Holm*, 931 F.2d 620, 623 (9th Cir. 1991)); *In re Spiegel, Inc.*, 2007 WL 2456626 at *15; *In re DJK Residential LLC*, 416 B.R. 100, 105 (Bankr. S.D.N.Y. 2009) (evidence must be of equal force). "Mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence. *See*, *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("The case law is clear. To prevail, the objector must affirmatively *produce* evidence to counter the creditor's claim."); *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (testimonial evidence was sufficient to shift the burden back to the claimant to prove the validity of its claim).

13. Only when the objector overcomes its burden and puts forth such "sufficient evidence" does the burden of going forward shift back to the claimant and the claimant "is required to meet the usual burden of proof to establish the validity of the claim." *In re Adelphia Comm's Corp.*, Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 *15-16; *In re Oneida Ltd.*, 400 B.R. at 389.

*The Debtors Have Not Put Forth Evidence to Rebut the Claims*

14. In order to satisfy their burden, the Debtors would have had to put forth sufficient evidence to demonstrate that FIGA failed to calculate the Settlement Amounts in accordance with the ISDA Documentation. The Debtors did not put forth any "evidence" to rebut the *prima facie* validity of the Claims. Instead, the Objection summarily asserts that the amounts of the Claims are "greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors."[11] Objection at ¶ 13.

15. The Debtors' sole statement with respect to the fairness, reasonableness and accuracy of the amount of the Claims is conclusory and amounts to, at best, a mere assertion. *See*, *Riverbank, Inc. v. Make Meat Corp. (In re Make Meat Corp.)*, Case No. 98 Civ. 4990 (HB), 1999 WL 178788 at *3-4 (S.D.N.Y. Mar. 31, 1999) ("mere objections" do not constitute "sufficient evidence" and are insufficient to refute a claimant's *prima facie* evidence).

16. As noted above, the ISDA Documentation clearly provides the Non-defaulting Party with the right to calculate amounts owing with respect to an Early Termination Date as well as the method of calculation. In the instant case, the Debtors have not asserted that the Claimant did not properly apply the methodology called for under the ISDA Documentation.

17. LBSF, as the Defaulting Party, is simply not entitled pursuant to the ISDA Documentation to merely put forth its own Settlement Amount.

---

[11] The Objection also describes the Debtors' purported "thorough, multi-step process to review claims," which in general terms is set forth as follows: "collect and review documents… reconcile posted collateral…review valuation methodology." Following the implementation of such process the Debtors apparently sought review of the Proposed Settlement Amount from the Settlement Adjudication Committee, as those terms are defined in the Objection. Objection at ¶¶ 14-15. It is the Debtors' senior management and chief restructuring officer, Alverez & Marsal, that make up the "committee".

18. The Debtors have not met their initial burden of refuting the Claims and, accordingly, have not shifted the burden of proving the Claims to FIGA. The burden remains with the Debtors to produce "sufficient evidence" that FIGA's calculations do not comply with the ISDA Documentation.

*Reservation of Rights*

19. FIGA reserves its right to file a supplemental and/or amended response to the Objection shall it deem it necessary. To the extent that an evidentiary hearing is necessary on the merits of FIGA 's Claims, FIGA reserves the right to request a full evidentiary hearing pursuant to Rule 9014(e) of the Federal Rules of Bankruptcy Procedure and Rule 9014-2 of the Local Rules of Bankruptcy Procedure to determine the basis for the calculation of and amount of the Claims.

WHEREFORE, FIGA respectfully requests that the Bankruptcy Court (i) overrule the Objection as it pertains to FIGA's Claims, and (ii) grant FIGA such further relief as the Bankruptcy Court deems just.

Dated: New York, New York
       May 17, 2011

                                    CLIFFORD CHANCE US LLP

                                    By: /s/ Jennifer C. DeMarco
                                        Jennifer C. DeMarco
                                        Sarah N. Campbell

                                    31 West 52nd Street
                                    New York, NY 10019
                                    Telephone: (212) 878-8000
                                    Facsimile: (212) 878-8375

                                    *Counsel for BlackRock Institutional Trust Company, N.A., as successor-in-interest to Barclays Global Investors, N.A.*