HEARING DATE AND TIME: June 2, 2011 at 10:00 a.m. (Eastern Time)
RESPONSE DEADLINE: May 17, 2011 at 4:00 p.m. (Eastern Time)

CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois 60603
Telephone: (312) 845-3000
James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)

-and-

CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York 10017-5010
Telephone: (212) 655-6000
Craig M. Price

Attorneys for U.S. Bank National Association, as Trustee

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | CHAPTER 11 |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | CASE NO. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

## RESPONSE OF U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, TO THE DEBTORS' OMNIBUS OBJECTIONS TO RESIDENTIAL MORTGAGE SECURITIZATION CLAIMS (INCLUDED IN, BUT NOT LIMITED TO, THE 98TH, 99TH AND 101ST OMNIBUS OBJECTIONS)

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

NOW COMES U.S. Bank National Association, not individually but as Trustee

("*U.S. Bank*" or the "*Trustee*"), by and through its counsel, Chapman and Cutler LLP, to

2962496.01.08.doc

respond (the "*Response*") to the Debtors' Omnibus Objections to the Residential Mortgage Securitization Claims filed with respect to a large number of securitization trusts sponsored by the Debtors (and serviced or Master Serviced by an affiliate of the Debtors), included in, but not limited to, the Debtors' 98th, 99th and 101st Omnibus Objections [Docket Nos. 14493, 14494, and 14496] (collectively, the "*Objection*").  In support of its Response, the Trustee states as follows:[1]

## SUMMARY

U.S. Bank serves as trustee under the terms of a large number of securitization trusts.  In addition, in connection with the purchase by U.S. Bank of certain assets from Bank of America, National Association ("*Bank of America*"), U.S. Bank has recently succeeded Bank of America as Trustee under the terms of a number of additional securitization trusts.  This Response is intended to be responsive to all of the objections contained in the Objection to the various claims (the "*Claims*"), asserted by the Trustee, including those filed with respect to the Claims that have been transferred from Bank of America to U.S. Bank, as trustee.

Pursuant to the Objection, the Debtors seek to disallow the Claims because, among other things, the Debtors allege that the Trustee has failed to provide required supporting documentation to the Claims and because, while not part of the Objection, the Debtors believe that certain Claims are duplicative.  With respect to the allegation that the Trustee failed to provide supporting documentation, the Trustee objects to the relief requested in the Objection on the following grounds: (1) under the terms of the relevant securitization documentation, the Trustee is not in control or possession of the business records required in order to provide the support for the Claims requested by the Debtors[2]; and (2) the Trustee has supplied or is in the

---

[1]    Capitalized terms not defined herein shall have the meaning ascribed to them in the Objection.

[2]    An affiliate of the Debtors, Aurora Loan Services, has access to or control over the business records necessary to support and quantify the Claims for which Aurora serves as Servicer or Master Servicer.

process of supplying all of the information requested by the Debtors.  Upon receiving a request

from the Debtors to obtain additional and updated information regarding the Claims, the Trustee

sought and ultimately received the information that the Debtors have requested.  Initially, the

Trustee was unable to provide the requested information to the Debtors immediately upon receipt

of the request because of confidentiality concerns regarding certain borrower information the

Debtors sought.[3]  The Trustee prepared and attempted to negotiate a reasonable confidentiality

agreement.  However, the Debtors did not agree to such an agreement because it purportedly

inhibited the Debtors' ability to use the information for reasons other than evaluating the Claims

(the Trustee understands that the Debtors wanted to use the information to assert claims of their

own against third parties).  As a result, the Debtors and the Trustee finally agreed that, at least

for the interim, the information would be provided to the Debtors on a redacted basis.  As of the

date hereof, the Trustee has provided the Debtors with the vast majority of the information the

Debtors were seeking with respect to claims of breaches of representations and warranties and is

currently redacting the remaining information in its possession with respect to document

exception claims.  Since providing the information to the Debtors, the Trustee has had no further

requests from the Debtors seeking any additional information that might be required to permit

the Debtors to evaluate the Claims.[4]

        As a result, the Trustee believes it would be appropriate to adjourn the Hearing on the

Objection until such time as the Debtors and the Trustee reach an impasse regarding the

---

[3]    Not unlike certain provisions of the Bankruptcy Code and Bankruptcy Rules requiring care and
confidentiality in connection with references to private data of individuals, the Gramm-Leach-Bliley Act
likewise requires the imposition of safeguards to maintain the confidentiality of borrower information.

[4]    This process has been further complicated because U.S. Bank recently purchased certain assets from Bank
of America, which included certain trusteeships for securitization transactions in which Bank of America
received similar objections.  In addition to the other stated reasons, U.S. Bank believes the Objection ought
to be adjourned to permit this transfer to be facilitated.

documentation for these Claims.  Barring an adjournment, the Trustee believes the Objection ought to be denied.

Finally, the Debtors have requested that certain duplicative Claims be withdrawn from the Claims docket.  With respect to the Claims filed by the Trustee, it acknowledges that, as a precaution, the Trustee did file multiple claims with respect to the residential mortgage loan securitization trusts (the "*RMBS Trusts*").  The Trustee filed two Master Claims with respect to the RMBS Trusts in a particular program; one against Structured Asset Securities Corporation ("*SASCO*"), as Depositor, and one against Lehman Brothers Holdings Inc. ("*LBHI*"), as a seller of loans to the Depositor.  In addition, the Trustee filed an individual Claim with respect to each individual transaction which references the relevant Master Claim.  As the individual Claims did not "assert" anything more than what was set forth in the Master Claim, but merely referenced the Master Claim, the Trustee does not believe the Claims are "duplicative" per se, but would be willing to enter into a stipulation with the Debtors deeming these individual Claims withdrawn. The parties are in the process of finalizing a stipulation with respect to these claims.  The Trustee filed Claims against both SASCO and LBHI in connection with the RMBS Trusts.  The Debtors believe that the filing of Claims against each of SASCO and LBHI is duplicative.  While the Trustee is willing to consider the Debtors' position regarding this issue, evaluating this request will require a trust by trust review to determine the extent, *if any*, of duplication.

In short, in the context of very complex transactions, involving numerous service providers to the RMBS Trusts, the Trustee provided all of the information at its disposal regarding its Claims as of the Bar Date, which included a detailed description of the substance of the underlying Claims and numerous other matters which, as recognized by the Objection, provide fair notice to the Debtors of the basis for the Trustee's Claims.  Moreover, the Trustee has provided, at the Debtors' request, additional and updated information required to substantiate

an exceptionally large number of the Claims.  In fact, the Trustee is currently only finalizing the redaction of schedules of document exception claims.

The Trustee notes that much of this information has always been in the hands of the Debtors or their affiliates.  As noted above, Aurora Loan Services, an affiliate of the Debtors, is the Master Servicer for an extremely large percentage of the asserted Claims made in connection with securitization transactions sponsored by one or more of the Lehman entities.  As Master Servicer, Aurora provides information and assistance to the Trustee in connection with prosecuting any Claims as they arise with respect to the mortgage loans (the "*Mortgage Loans*") that are contained in the securitization trusts.  Aurora has been very cooperative in providing the information, but it takes a significant amount of time to evaluate the Mortgage Loans in the respective securitization trusts to prepare the necessary Claims.[5]

## 1.    General Background on the Types of Claims Filed by the Trustee

The following description, at least in part, is contained in each of the Master Proofs of Claims filed by the Trustee with respect to each different securitization program.  The Trustee serves as trustee under certain trust agreements by and between SASCO, as Depositor, and the Trustee (the "*Trust Agreements*"), with respect to the relevant RMBS Trusts.  The RMBS Trusts are bankruptcy-remote mortgage loan securitization trusts that hold Mortgage Loans purchased by the Debtors and sold and/or assigned to the Trusts.  Under the terms of the Trust Agreements,

---

[5]    The Trustee notes that these types of Claims have always been difficult to evaluate and value, and a mere two- and a half years after the filing of these proceedings is not an inordinate amount of time in connection with this process.  Many bankruptcy proceedings involving mortgage loan originators and servicers have greatly simplified the process for all by coming up with a formula based primarily on historical data to calculate the claims based upon the outstanding principal balance in the portfolio as of the date of the proceedings.  The fact is that there are generally a significant number of loan files with missing (or copied) documentation.  Rather than evaluate each loan file on an individual basis to determine whether the deficiency will give rise to a claim, the formula "predicts" the rate of loss based on past history.  This method has been suggested to the Debtors on many occasions as a way of simplifying the process.  *See*, *e.g.* *In re New Century TRS Holdings Inc*. *et al*., Case No. 07-10416 (KJC) pending in the United States Bankruptcy Court for the District of Delaware, *In re American Home Mortgage Inc*., Case No. 07-11047 (CSS) pending in the United States Bankruptcy Court for the District of Delaware.

the Mortgage Loans were purchased by the Trusts using funds obtained from investors through the issuance of certificates.

The Mortgage Loans giving rise to the Proofs of Claim filed in these proceedings were originated by various third parties (collectively, the "*Originator*"), and were purchased by Lehman Brothers Bank F.S.B. or LBHI, or another affiliate thereof (the "*Initial Purchaser*") under the terms of loan purchase and warranty agreements (or similar agreements) (the "*Purchase Agreement*").  Thereafter, the Initial Purchaser, if not LBHI, assigned these loans for value to LBHI (the "*Seller*"), who thereafter transferred the Mortgage Loans for value to SASCO (the "*Depositor"*) under the terms of Mortgage Loan Sale and Assignment Agreements (the "*Mortgage Loan Sale Agreements*").   In exchange for the proceeds from the issuance of certificates, the Depositor transferred and conveyed the Mortgage Loans to the Trustee for the benefit of the holders of the certificates pursuant to the terms of the Trust Agreements.   In addition, the Trustee was assigned all of the Depositor's rights under the Mortgage Loan Sale Agreements.

Under the terms of the Trust Agreements and the Mortgage Loan Sale Agreements, the Depositor and Seller made certain representations and warranties with respect to the Mortgage Loans to or for the benefit of the Trustee.   In the event certain representations and warranties were breached with respect to individual Mortgage Loans which materially and/or adversely affected the value of such Mortgage Loan, the Debtors, as Depositor, and/or the Seller had the obligation to either: (a) cure the breach in all material respects; (b) repurchase the Mortgage Loan; or (c) within two years of the Closing Date, substitute a Qualifying Substitute Mortgage Loan for the affected Mortgage Loan (the *"Representation and Warranty Claims"*).  The Claims were filed as unsecured and/or administrative expense claims with respect to breaches of these

representations and warranties, and alternatively, as a secured claim in the event that the securitization transactions are deemed a financing and not a true sale.

**2.      Repurchase Obligations.**

Pursuant to the Trust Agreements, one or both of the relevant Debtors made certain representations, warranties and covenants about the Mortgage Loans that were subsequently acquired by the Trusts.  If there is a violation of a representation, warranty or covenant with respect to any Mortgage Loan that was sold to a Trust that materially adversely affects the value of such Mortgage Loan or the interest of the holders of the certificates therein, the relevant Debtor may be obligated to repurchase that Mortgage Loan.

As of the date of the filing of the Proofs of Claim, the Trustee has been advised that the Debtors' representations, warranties and/or covenants with respect to some of the Mortgage Loans were incorrect or untrue which materially and adversely affects the value of such Mortgage Loans and the interest of the holders of the certificates therein and such breaches cannot be or have not been cured.  For each of these breaches the total outstanding principal balance of such Mortgage Loans was provided in the Proof of Claim.  To date, the Debtors have not fulfilled their obligation to repurchase these Mortgage Loans.  As a result of the breach by one or more of the Debtors of such representations, warranties and/or covenants in respect of the Mortgage Loans and the Debtors' (and Seller's) failure to repurchase them, the Trustee asserted a claim against the Debtors in an amount not less than the repurchase price as and when required by the Trust Agreements and/or the Mortgage Loan Sale Agreements.

The Debtors have since asked for additional information with respect to these Claims. The Trustee does not have any role in monitoring any of the Mortgage Loans in the RMBS Trusts.  The Servicer (the entity charged with making collections and conducting remedies on a individual Mortgage Loan basis), and the Master Servicer (the entity charged with overseeing the

Servicer(s) on behalf of the relevant RMBS Trust) are the two entities that possess information concerning the (1) ongoing performance of the Mortgage Loans, (2) if any breaches of substantive representations made regarding the subject loans exist, and (3) the manner in which the Mortgage Loans were underwritten.  The Trustee obtained the original information to file the Proofs of Claim from the relevant Master Servicer in August and September of 2009.  Upon the Debtors' request for additional information in August 2010, the Trustee requested that the Master Servicer gather the relevant information.  Virtually all of this additional information has been provided to the Debtors.  It is important to note that this does not mean that all breached Mortgage Loans have been identified at this time.  Rather, breached Mortgage Loans become known only after the individual borrower thereunder fails to make payments in accordance with the terms of the relevant Mortgage Loan.  It is therefore possible, if not highly likely, that other latent repurchase claims exist.

3.      **Obligation to Cure Documentary Exceptions.**

In addition to the foregoing, the Debtors also made representations and warranties regarding the quality of each loan file relating to a Mortgage Loan.  A typical loan file is required to have the items listed on the attached Appendix A.  The Trustee does not have possession of the loan files; rather, the loan files are in the hands of the various Custodians. Under the terms of the Trust Agreements, the Custodians are charged with reviewing the loan files and advising all of the parties of any deficiencies based upon a provided list of expected documents.  The Seller and/or Depositor is then required to "cure" these deficiencies.  Some of these deficiencies are material and lead to losses for the portfolio.  Some, even if material, never give rise to a loss, and others, while technically a breach of a representation, do not give rise to loss.

In preparing the Proofs of Claim, the Trustee sought information from the Custodians regarding the loan file deficiencies that remains unresolved as of the petition date. The Custodians identified loan files that were missing or contained defective documentation. It is not certain at this time whether any of these defects in the loan files will give rise to any loss to the Trusts, although many, if not all, of these may impair the value of the respective Mortgage Loan or the interest of the holders of the certificates therein. As a result, the Trustee asserted a Claim up to the lesser of the full principal amount of these Mortgage Loans or the outstanding balance of the certificates as set forth by Trust. While the Debtors have not indicated what methodology they believe is appropriate to resolve these loan file claims, debtors in other bankruptcy proceedings have developed a formula in part based upon the historical losses suffered by similar trusts sponsored by such debtors in connection with these types of claims. The Trustee does not believe that evaluation of these Claims on a loan by loan basis is cost effective for either the Trustee or for the Debtors.

4.      **Early Payment Default.**

If a Mortgage Loan contributed to an RMBS Trust goes into default within a certain period after contribution, such default constitutes an Early Payment Default. Upon an Early Payment Default, the Depositor and/or the Seller are required to repurchase the respective Mortgage Loan from the relevant RMBS Trust. The Trustee also asserted these types of claims in its Proofs of Claim. However, it is in the process of redacting custodial reports with respect to a large number of trusts to the Debtors.

ARGUMENT

In the Objection, the Debtors seeks to disallow over ***450 Claims*** based upon a blanket assertion that the Trustee has failed to provide supporting documents in support of its Claims. See *Obj*., Ex. A. The Debtors' assertion is both factually incorrect and legally insufficient to

9

warrant disallowance of the Trustee's Claims.  Furthermore, notwithstanding the Debtors' misplaced argument that certain prior orders of this Court imposed additional burdens on claims, as described below, the Objection fails to comply with the requirements for filing an omnibus objection set forth in Federal Rule of Bankruptcy Procedure 3007(d).  The Debtors' allegation that the Claims should be disallowed for failure to attach sufficient documentation is also flawed. For each Claim, the Trustee noted that additional documentation was available upon request, and that such documentation was not being included with the filed Claim due to lack of access.  The Trustee also noted certain confidentiality concerns, since the documents on which the Claims are based are not public documents and contain information with respect to individual borrowers of Mortgage Loans and their financial standing.  In addition, the documentation needed to support the Claims in many respects was already accessible to the Debtors through their affiliate Aurora Loan Services, who serves as Master Servicer for a very large proportion of the Mortgage Loans in the RMBS Trusts.  It is clear from the Objection that the Debtors have many of the relevant documents in their possession and have a full understanding of the Claims that the Trustee is asserting. *See Obj.* ¶ 10-12.

It is axiomatic that a timely and properly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount.  *See* FED. R. BANKR. P. 3001(f); *see also McGee v. O'Connor (In re O'Connor),* 153 F.3d 258, 260-261 (5th Cir. 1998); *In re Mid-Am. Waste Sys., Inc.,* 284 B.R. 53, 65 (Bankr. D. Del. 2002) ("A claimant filing a proof of claim must allege facts sufficient to support a legal basis for the claim. If the assertions in the filed claim meet this standard of sufficiency, the claim is *prima facie* valid pursuant to FED. R. BANKR. P. 3001(f)."). It is only after the objector presents "substantial evidence" to overcome the *prima facie* validity of the claim that the burden shifts to the claimant to prove his claim by a preponderance of the evidence.  *Mid-Am. Waste Sys.,* 284 B.R. at 65.

Therefore, a party objecting to a timely and properly filed proof of claim bears the initial burden of presenting "enough evidence to overcome the *prima facie* effect of the claim." *O'Connor*, 153 F.3d at 261.  To warrant further inquiry, the objector must "produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim." *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985).  Legal memoranda and oral argument do not suffice as evidence sufficient to create a factual dispute. *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994).  Rather, it is only when the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim that the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. *See, In re WHET, Inc.*, 33 B.R. 424, 437 (Bankr. D.Mass. 1983).

Here, the Objection presents no evidence to refute the *prima facie* validity of the Claims, but rather attempts to use the Bar Date Order to impermissibly shift the burden of proof away from well-established principles of bankruptcy claims administration.  The Debtors argue that: (i) the claimant has failed to produce sufficient supporting documentation and/or (ii) the Debtors have been unable to verify in its books and records the Debtors' liability for the amount stated in the Claim. (*Obj.* ¶17.)  These conclusory assertions are insufficient, in and of themselves, to shift the burden back to the Trustee to produce any additional evidence regarding these Claims. Further, upon resolving bona fide issues with respect to the confidentiality concerns of the Trustee based upon the Gramm-Leach-Bliley Act, the information being sought by the Debtors has by and large been provided.

Given that the Objection does not address the merits of any specific Claim, the Debtors have not met their burden of presenting "enough evidence" to overcome the presumptive validity of the Claims under Rule 3001(f).  The Debtors cursory statements do not provide a basis for a valid objection, nor do they satisfy the Debtors burden to produce "substantial evidence." *See In*

*re Allegheny Int'l, Inc*., 954 F.2d 167, 173-74 (3d Cir. 1992) (noting that "the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency").  As the Debtors have not alleged any substantive grounds for disallowance, the Trustee's Claims are *prima facie* valid and should be allowed in full.  FED. R. BANKR. PROC. 3001(f); *In re White*, 168 B.R. 825, 829 (Bankr. D. Conn. 1994) (mere allegation that full amount of claim is not owed is insufficient to rebut *prima facie* validity of claim); *In re Pan*, 209 B.R. 152 (D. Mass. 1997) (same); *In re Hollars*, 198 B.R. 270 (Bankr. S.D. Ohio 1996) ("A bald assertion, a mere conclusory statement, is, in and of itself, insufficient to rebut the presumption of validity. Instead, there must be some production of evidence by the debtor to rebut the presumption favoring the claimant").  As a result, the Objection should be overruled.

Additionally, none of the Debtors' blanket assertions are grounds for disallowance under 11 U.S.C. § 502.  A claim is "deemed allowed" unless a party-in-interest, such as the Debtors, objects. 11 U.S.C. § 502(a).  After an objection to a claim is made, "the court, after notice and hearing, shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount" except to the extent that any of the nine statutory exceptions apply. 11 U.S.C. § 502(b); *In re Moreno*, 341 B.R. 813, 817-819 (Bankr. S.D. Fla. 2006) ("this Court will not tolerate attempts to obtain orders disallowing these claims if the only basis for the objection is lack of documentation").

The objecting party must then establish a dispute as to the validity of the claim, or show that the claim's allowance is subject to one of the enumerated exceptions specified in §502(b). *Moreno,* 341 B.R. at 817. Section 502(b) sets out the exclusive exceptions for disallowance of a claim.  These exceptions do not provide for disallowance based on a lack of documentation. Thus, the vast majority of courts have held that a creditor's mere failure to fully comply with the documentary requirements in Rule 3001(c) does not provide a basis for objecting to, or

12

disallowing, a claim. *See, e.g., In re Dove-Nation*, 318 B.R. 147, 152 (8th Cir. BAP 2004)

("Even if the proofs of claim are not entitled to *prima facie* validity, they are some evidence of

the Claimant's claims.  Here, the Debtor never presented any evidence to contradict the claims,

much less any evidence that the claims fall within one of the exceptions set forth in Section

502(b); therefore, the claims' validity stands."); *In re Burkett*, 329 B.R. 820, 825-829 (Bankr.

S.D. Ohio 2005) ("lack of documentation, alone, is not a statutory basis for disallowance of a

claim nor can Rule 3001 and Official Form 10 expand on the statutory bases for disallowance");

*In re Shank*, 315 B.R. 799, 812 (Bankr. N.D.Ga. 2004) ("In summary, the debtor has made no

showing that there is an actual dispute over any of the claims and has identified no good faith

basis for a potential dispute. For all of the reasons set forth above, the Court will not require the

claimants to amend their proofs of claim to attach sufficient documentation in compliance with

Rule 3001(c)"); *In re Cluff*, 313 B.R. 323, 337 n. 47 (Bankr.D.Utah 2004) ("Section 502 states

that the court 'shall allow such claim in such amount, except to the extent that' one of the

exceptions found in the statute apply. 'The term 'shall' is mandatory and generally acts as a

command.' Courts have no discretion to disallow claims for reasons beyond those stated in the

statute.").

Finally, Federal Rule of Bankruptcy Procedure 3007(d) sets forth the only grounds upon

which an omnibus objection to claims may be based.  Neither of the stated grounds for the

Objection - "insufficient supporting documentation" and "books and records" - is listed under

Rule 3007(d) as a basis upon which an omnibus objection seeking the disallowance of claims

may be based.  Thus, the Objection fails for the additional reason that it does not comply with the

Federal Rules of Bankruptcy Procedure.[6]

---

[6]    The Debtors also assert a "books and records" objection as an alternate objection to the Claims.  However,
this is not a proper basis for an objection.   This conclusory statement is insufficient to rebut the
presumption of validity of a claim. *See, In re Hollars*, 198 B.R. 270, 271 (Bankr. S.D. Ohio 1996) ("A bald
assertion, a mere conclusory statement, is, in and of itself, insufficient to rebut the presumption of
validity."). If it were sufficient, then the Debtors' "books and records" could be substituted for the claims

### CONCLUSION

The Trustee is entitled to preserve its rights by filing contingent claims pending discovery of the specific dollar amount of the claim.  The standard advanced by the Debtors would, by their own admission, require that a claimant isolate each residential mortgage and each type of breach associated with each Mortgage Loan to provide "sufficient" documentation.  As noted above, this is a flawed and overly broad interpretation of the Bar Date Order and applicable law, particularly in a situation where an entity affiliated with the Debtors is in possession of information necessary to evaluate the Claims.  Additionally, contrary to the assertion that the Claims lack sufficient documentation, the Debtors' Objection reflects an understanding of the basis for the Claims.  The Debtors understand that the Trustee is making Claims for certain breaches arising out of the Debtors failure to comply with certain representations and warranties with respect to Mortgage Loans sold to securitization trusts for which U.S. Bank serves as Trustee.  In most cases, the information required to substantiate the Claims is within the hands of the Debtors, and the Trustee's investigation is ongoing.  Therefore, the Trustee requests that the Objection either be overruled or continued so that the parties may conduct informal discovery and attempt to agree on a value for these Claims.  To the extent that an agreement cannot be reached after good faith negotiations, the parties can return to the Court for further proceedings as a contested matter under Rule 9014.

WHEREFORE, for all of the foregoing reasons, U.S. Bank, as Trustee, respectfully requests that this Court adjourn the hearing on this matter to permit the Trustee and the Debtors to discuss documents reasonably necessary for the Debtors to evaluate the Claims, or alternatively, overrule the Objection in its entirety without prejudice.

Dated: May 17, 2011

---

register and there would be no basis for the process of filing proofs of claim that are presumptively valid on their own.

Respectfully submitted,

U.S. BANK NATIONAL ASSOCIATION, not
   individually but as Trustee


By: _____/s/ James Heiser_____
                        One of Its Attorneys


James E. Spiotto (admitted *pro hac vice*)
Ann E. Acker (admitted *pro hac vice*)
Franklin H. Top, III (admitted *pro hac vice*)
James Heiser (JH-3660)
CHAPMAN AND CUTLER LLP
111 West Monroe Street
Chicago, Illinois  60603
(312) 845-3000

Craig M. Price
CHAPMAN AND CUTLER LLP
330 Madison Avenue, 34th Floor
New York, New York  10017-5010
(212) 655-6000