Hearing Date and Time: June 2, 2011 at 10:00 a.m.
Response Deadline: May 18, 2011 at 4:00 p.m.

BAKER & McKENZIE LLP
1114 Avenue of the Americas
New York, New York  10036
Telephone:  (212) 626-4100
Ira A. Reid (IR-0113)
Joseph Samet (JS-7692)

Attorneys for Banque Cantonale du Valais

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) ) ) | Case No. 08-13555 (JMP) (Jointly Administered) |
| LEHMAN BROTHERS HOLDINGS INC., *et al.*, | ) ) ) ) | Chapter 11 |
| Debtors. | ) ) ) | Judge James M. Peck |

RESPONSE BY BANQUE CANTONALE DU VALAIS
TO DEBTORS' ONE HUNDRED TWELFTH OMNIBUS OBJECTION
TO CLAIMS (INVALID BLOCKING NUMBER LPS CLAIMS)

Banque Cantonale du Valais ("Banque Cantonale"), by its undersigned counsel, responds

to the Debtors' One Hundred Twelfth Omnibus Objection to Claims (the "Claim Objection") as

follows:

<u>Preliminary Statement</u>

1.    The the claims filed by Banque Cantonale should be allowed and the Claim

Objection denied.  On October 30, 2009, Banque Cantonale, a Swiss bank, timely filed sixty-

eight proofs of claim, totaling approximately $7.6 million, in connection with various Lehman

Programs Securities (as defined in the Court's July 2, 2009 claims bar date order (the "Bar Date

Order"), in which it owns either a beneficial interest or holds on behalf of its customer/clients

(collectively, the "Claims"). Sixty-two of these Claims are the subject of this Claim Objection and are set forth in Exhibit A of the Claim Objection. Most of the Claims are for very small denominations (thousands or tens of thousands of dollars) and are beneficially owned by clients of Banque Cantonale, including individuals.

2.    The Banque Cantonale Claims fully comply with the requirements of the Bar Date Order except that Banque Cantonale inserted into its Lehman Programs Securities proofs of claim numbers that it understood were blocking numbers, after affirmatively requesting actual blocking numbers from its depository, SegaIntersettle SIS ("SIS"). The numbers that Banque Cantonale inserted actually represented an SIS account number with Clearstream that appeared on a Swift message from SIS in response to Banque Cantonale's request for blocking numbers. Banque Cantonale believed that the number on the Swift message was a blocking number and inserted that number in the blocking number box on its proofs of claim, not realizing that blocking numbers had not yet been assigned and that further action was required. *See* Swift message (the "SIS Swift Message") annexed as Exhibit A.

3.    A review of Exhibit A demonstrates that Banque Cantonale's belief that it had been assigned blocking numbers was reasonable. Much of the information in the Swift message is in the form of shorthand code, including that Banque Cantonale take a further step to actually obtain the numbers. Unless the person at the Bank reading the Swift message was very familiar with these messages in relation to assignment of blocking numbers, it would have been easy to misinterpret what was required. At the same time, the assignment of blocking numbers, particularly in connection with the filing of proofs of claim, is so unusual in bankruptcy cases that such misinterpretation by a foreign bank was understandable.

4.      In any event, no harm has occurred because there was no trading of the securities by Banque Cantonale or its customers as described in the paragraphs below. Indeed, trading would have been impossible, even had Banque Cantonale or its customers wished to do so, because the Claims were filed in New York at 12:54 p.m. Eastern Time (6:54 p.m. Swiss time) on the Friday before the Monday November 2, 2009 claims bar date (the "Bar Date") and, if initiated on the Bar Date (the next available business date), could not have closed until after the Bar Date. Thus, the Debtors' professed goal in requiring blocking numbers, the avoidance of potential transfers of Lehman Program Securities during the period from the time that the claimslaims were filed through the Bar Date, was achieved in the case of Banque Cantonale notwithstanding the absence of actual blocking numbers.

5.      Notwithstanding that no actual blocking numbers were obtained, neither the legal nor the beneficial ownership of the Claims or the Lehman Programs Securities which underlie the Claims, were transferred during the period from October 23, 2009 through November 9, 2009, the date on which the Debtors authorized that securities accounts be "unblocked." *See* SIS Attestation annexed as Exhibit B. Moreover, Banque Cantonale sent written notices to its client/customers pursuant to which the client/customers were advised that Banque Cantonale would file proofs of claim on their behalf, and obtain blocking numbers that would preclude trading of the securities underlying the claims. *See* customer letter dated October 6, 2009 annexed (together with an unofficial English translation) as Exhibit C.

6.      As a result, Banque Cantonale's lack of recognition that the blocking numbers it had requested had not yet been assigned should not result in the expunging of 62 proofs of claim that represent Lehman Program Securities held predominantly by small, non-institutional investors. The penalty is simply too harsh and unwarranted for timely filed claims that otherwise

3

fully comply with the Bankruptcy Code, Federal Rules of Bankruptcy Procedure and this Court's Bar Date Order, particularly since the underlying securities have always remained in Banque Canonale's accounts at SIS, owned throughout by the same beneficial holders.  Moreover, the Debtors had actual notice of the Claims and are not prejudiced if the Claims are allowed.

7.    Even if the Court were to determine that the failure to obtain proper blocking numbers render the Claims invalid formal proofs of claim, the Claims meet all the requirements of informal proofs of claim, and they should be deemed allowed on that basis.[1]

## Argument

## The Claims Are Valid and Should be Allowed

8.    The Banque Cantonale Claims are valid in all respects, were timely filed, and neither the Claims nor the underlying Lehman Program Securities have been traded notwithstanding the lack of valid blocking numbers.  Banque Cantonale affirmatively sought blocking numbers, in accordance with the Lehman Program Securities bar date notice dated July 27, 2009 (the "Bar Date Notice"), and believed that it had received blocking numbers when it received and reviewed the the responsive SIS Swift Message from SIS.  It prepared and filed the Claims and included the numbers it believed were blocking numbers.  Accordingly, the purported harm to the chapter 11 estate that the Debtors sought to avoid has not occurred, notwithstanding the inadvertent lack of valid blocking numbers.

9.    The Debtors have asserted that they believed blocking numbers were important to the Lehman Program Securities ("LPS") claim process because the LPS had no indenture trustee which could file a claim on behalf of all the holders of a particular issue and identify through its

---

[1] Banque Cantonale reserved the right to amend its proofs of claim, including after the Bar Date and, since there has been no transfer of the securities, it could have prepared amended claims with blocking number if blocking numbers were still available or required.

own records the various holders of the securities.  The Debtors contend that requiring holders to

obtain blocking numbers could accomplish the same purpose by preventing the underlying

security from being traded through the period ending November 2, 2009, *see* Claim Objection at

¶10, which was only one business day after the Banque Cantonale Claims were filed, and to

enable the Debtors to confirm the ownership and amount of a particular security.  Without a

blocking number, the Debtors assert that there would have been a "risk" of multiple claims being

asserted if the underlying Note was traded, and that the Debtors might "make distributions in

excess of the outstanding amount of the Lehman Programs Securities and multiple distributions

on the same obligation".  *See* Claim Objection at ¶11.  By adopting this stratagy, however, the

Debtors added an additional element to the required documentation of the claim, and imposed a

potential onerous sanction on holders (disallowance of their claim) that would not exist in a

traditional trust indenture structure.  Judge Glenn noted in *In re Minbatiwalla*, 424 B.R. 104

(Bankr. S.D.N.Y. 2010), however, that failure to properly document a claim is not a statutory

ground for disallowance *Id.* at 118.  Accordingly, the court in *Minbatiwalla* refused to disallow

the claim.

     10.    A similar result should obtain here.  Banque Cantonale and its client/customers

have not sold or otherwise disposed of the securities which are the subject of the Claims.  Indeed,

it would have been virtually impossible to do so even <u>if</u> they had so desired.  The Claims were

filed with Epiq Bankruptcy Solutions on Friday, October 30, 2009 at 12:54 p.m. Eastern Time

(6:54 p.m. local time in Switzerland).  Thus, it would have been impossible to trade until the next

business day, which was the Monday, November 2, 2009 Bar Date, and any transfer initiated on

that date could not have been completed until at least the next business day.  Accordingly, the

lack of actual blocking numbers did not provide either Banque Cantonale or its customers with

any ability to transfer the underlying securities even if they had wanted to do so.

11.    Moreover, the Debtors acknowledge the existence of the particular securities

programs out of which the Claims derive.  Permitting holders, such as Banque Cantonale, which

timely filed proofs of claim, actively sought to obtain blocking numbers and otherwise properly

documented their claims, to establish that they continuously held the securities through the Bar

Date, would not impose an undue burden on the Debtors.  It would strike an appropriate balance

between the ability of the Debtors to properly identify the universe of holders of their program

securities and the right of investors in the Lehman Programs Securities to obtain their

distributions.  Banque Cantonale has provided proof that the Claims were not transferred and

thus the Claims should be deemed allowed.

12.    This Court previously heard and ruled on several Lehman Program Securities

claims objected to by the Debtors for lack of blocking numbers in connection with the Debtors'

*Twenty-Ninth Omnibus Objection to Claims (No Blocking Number LPS Claims)*, filed on July 19,

2010. The relevant portion of the transcript of the hearing with respect to this objection is

attached hereto as Exhibit D.

13.    In response to the explanation of the blocking number system by Debtors' counsel

in that hearing, this Court recognized that, even though the unusual blocking number system was

important to the Debtors, the absence of a blocking number on a claim is a minor form of

technical noncompliance:

> THE COURT: I hear you [Mr. Shai Waisman, representing
> the Debtors] although I must say that this adds strength to
> the argument made by Mr. Friedman [representing a
> claimant] that on a scale of one to ten, this is a one. This
> isn't a ten in terms of technical noncompliance because the
> blocking number is, in effect, an extra protection designed

> to make sure that the party who filed the claim with respect
> to these freely tradable instruments in fact was the owner of
> the claim at a particular point in time that is relevant for
> bankruptcy purposes but for no other purpose because the
> instruments may have traded multiple times already, in
> some instances, and may continue to trade in the future.

Exhibit D at 34–35.

14.    While the Court carved out an exception to disallowance at the hearing of the

*Twenty-Ninth Omnibus Objection to Claims,* specifically in cases where the claimant actually

obtained blocking numbers but neglected to include them on the proof of claim form, Banque

Cantonale submits that its recognition of the blocking number requirement set forth in the Bar

Notice, its affirmative effort to obtain blocking numbers, the fact that it obtained what it thought

was Swift message confirmation of its receipt of blocking numbers and the fact that the securities

in question were not traded, should excuse its inadvertent lack of recognition that the number it

submitted on its proofs of claim were not actual blocking numbers.  Accordingly, Banque

Cantonale contends that the exception to the blocking number requirement articulated by this

Court in connection with the *Twenty-Ninth Omnibus Objection to Claims* can and should be

utilized and expanded to include the facts set forth herein.

15.    While the blocking number system may generally have been important to the

Debtors, in this instance, it is not appropriate for the blocking number requirement to be

mechanically enforced where the claimant made an affirmative effort to obtain blocking

numbers, there is no harm to the Debtors because the securities were not traded, and there would

be substantial harm to many small investors whose claims would be wiped out by claim

disallowance.  Moreover, there is no risk of duplicate payments on these Claims.

16.    Other than for the lack of correct blocking numbers, these Claims constitutes

unrebutted *prima facie* evidence of Banque Cantonale's holdings of Lehman Program Securities.

It would be inequitable if these otherwise valid Claims, evidencing securities held in small

denominations by small investors, were disallowed based upon a technical objection, particularly

where the Debtors have not suffered any harm but where the holders of the securities would

suffer the total loss of their investments.

### Alternatively, the Claims Constitute Informal Proofs of Claim that Should be Allowed

17.    Alternatively, the Claims are legally sufficient informal proofs of claim. The

Debtors were given notice of the Claims, including their nature, amount and Banque Cantonale's

intent to hold the Debtors liable. Moreover, the Debtors do not contest their validity. It is

undisputed that the Claims' sole deficiency is the absence of blocking numbers and that,

although blocking numbers are required by the Bar Date Order, they are not essential to the legal

sufficiency of the Claims, taken as informal claims. *See, e.g., In re Enron Creditors Recovery*

*Corp.* 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007) (requiring nothing more of an informal proof of

claim than that it be timely filed, stating the nature of the claim, the amount of the claim and

evidencing an intent to hold the debtor liable), *In re Houbigant, Inc.*, 190 B.R. 185, 187 (Bankr.

S.D.N.Y. 1995), *In re Drexel Burnham Lambert Group, Inc.*, 129 B.R. 22, 26 (Bankr. S.D.N.Y.

1991); *see also In re Reilly*, 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000) (citing numerous cases for

the proposition that a merely formal objection cannot overcome an otherwise valid proof of

claim); *In re Minbatiwalla*, 424 B.R. 104, 112 (Bankr. S.D.N.Y. 2010).

## Conclusion

For all the reasons set forth above, the Claim Objection should be denied as to Banque

Cantonale.

Dated: New York, New York
       May 17, 2011

                    **BAKER & McKENZIE LLP**

                    By:  /s/ Ira A. Reid_____  _____

                         Ira A. Reid (IR-0113)
                         Joseph Samet (JS-7692
                         1114 Avenue of the Americas
                         New York, New York 10036
                         Telephone:  (212) 626-4100

                         Attorneys for Banque Cantonale du Valais

Exhibit A

```
                                                      FP-BO1  /133853
From: SECN
  To: FP-BO1
-----------------------------------------------------------------------------
  RFK: S564-001722          Printed On: 2009-08-06 14:48:35    Page No:   1
  TRN:
-----------------------------------------------------------------------------
* Incoming *                                           * Live Message *
     MT: S564 Corporate Action Notification
  Sender: SECN
          SECOM Center
          Zuerich
Receiver: CH102279
          BANQUE CANTONALE DU VALAIS
          SION/SITTEN
  Owner: FE-CORP                          Internal Priority: Normal
  Stage: Inb-Cmpl                            Next Activity: Archive
  Input: SECOM   /F-SEC  /3829  /001722/2009-08-06 14:48:35


-----------------------------------------------------------------------------
:16R:Start of Block:                 GENL
:?  :Reference:                      :SEME// BP38083514481406
:20C:Reference:                      :CORP// 155804
:20C:Reference:                      :COAF// SIS/LBHI-CLAIM
:23G:Function of the Message:        NEWM
:22F:Indicator:                      :CAEV/ /DFLT
:22F:Indicator:                      :CAMV/ /VOLU
:98A:Preparation Date:               :PREP/ /09-08-06
:25D:Processing Status:              :PROC/ /COMP
:16S:End of Block:                   GENL
:16R:Start of Block:                 USECU
:35B:Identification of Financial Instru.:
                                     ISIN XS0186243118
                                     /CH/1784540
                                     LEHMAN BROTHERS ( 1/2   MIN.) BONUS
                                      COUPON NOTES 2004-8.3.10 VARIABLE
                                      RATE
:16R:Start of Block:                 ACCTINFO
:97A:Safekeeping Account:            :SAFE/ /20085079
:93B:Balance:                        :ELIG/ /FAMT/ *35,000.*
:16S:End of Block:                   ACCTINFO
:16S:End of Block:                   USECU
:16R:Start of Block:                 CADETL
:98C:Date/Time:                      :RDDT/ /09-10-23 14:00:00
:69A:Period:                         :PWAL/ /01-01-01 /09-10-23
:22F:Dividend Type or Offers:        :ESTA/ /WHOU
:70E:Narrative:                      :TXNR// CATYPE/5040CLAIM PROCEDURE
:70E:Narrative:                      :OFFO// .
:16S:End of Block:                   CADETL
:16R:Start of Block:                 CAOPTN
:13A:CA Option Number:               :CAON/ /001
:22F:Indicator:                      :CAOP/ /OTHR
:17B:Default Processing Flag:        :DFLT/ /N
:70E:Narrative:                      :ADTX// BLOCK HOLDING AND SEND BLOCKING
                                     REFERENCE
                                     ++ NO DEADLINE MONITORING WILL
                                        BE DONE                          ++

:16S:End of Block:                   CAOPTN
:16R:Start of Block:                 CAOPTN
:13A:CA Option Number:               :CAON/ /002
```

```
RFK: S564-001722              Printed On: 2009-08-06 14:48:35      Page No:    2
TRN:
------------------------------------------------------------------------------
:22F:Indicator:                    :CAOP/  /NOAC
:17B:Default Processing Flag:      :DFLT/ /Y
:70E:Narrative:                    :ADTX// TAKE NO ACTION
:16S:End of Block:                 CAOPTN
:16R:Start of Block:               ADDINFO
:70E:Narrative:                    :ADTX// NOTIFICATION SERVICE LEVEL 2
                                           VOLUNTARY ACTION SERVICE LEVEL 4
                                           FOR SA REMARKS, PLEASE SEE MT568
:70E:Narrative:                    :PACO// CORPACTIONSEUROPE.GROUP(AT)ISIS.SIS
                                           CLEAR.COM
:70E:Narrative:                    :TXNR// POSTYPU/NO
:16S:End of Block:                 ADDINFO
------------------------------------------------------------------------------
Message History:
                    Action  User                            Stage    Next Act
Date     Time       Xmt Rslt Net Prio Recipient    DelServ  ComServ  Com Seq#
======== ========  ======== ======== ================ ======== ======== ========
09-08-06 14:48:35 MSG READ TABLE: No. of Distribution: 2
09  8-06 14:48:35 IOK      N                         SECOM    Inb-Cmpl Archive
------------------------------- E N D   M E S S A G E -----------------------------
```

```
From: SECN                                                    FP-BO1   /133854
  To: FP-BO1
------------------------------------------------------------------------------
  RFK: S568-001723            Printed On: 2009-08-06 14:48:36      Page No:   1
  TRN:
------------------------------------------------------------------------------
* Incoming *                                                 * Live Message *
      MT: S568
  Sender: SECN
          SECOM Center
          Zuerich
Receiver: CH102279
          BANQUE CANTONALE DU VALAIS
          SION/SITTEN
   Owner: FE-CORP                            Internal Priority: Normal
   Stage: Inb-Cmpl                           Next Activity: Archive
   Input: SECOM   /F-SEC  /3829  /001723/2009-08-06 14:48:35
```

```
------------------------------------------------------------------------------
:16R:Start of Block:              GENL
:20C:Reference:                   :SEME// BP07037915481406
:20C:Reference:                   :CORP// 155804
:20C:Reference:                   :COAF// SIS/LBHI-CLAIM
:23G:Function of the Message:     NEWM
:22F:Corporate Action Event Indic.: :CAEV/ /DFLT
:16R:Start of Block:              LINK
:13A:Number Identification:       :LINK/ /564
:20C:Reference:                   :PREV// BP38083514481406
:16S:End of Block:                LINK
:16S:End of Block:                GENL
:16R:Start of Block:              USECU
:97A:Safekeeping Account:         :SAFE/ /20085079
:35B:Identification of Financial Instru.:
                                  ISIN XS0186243118
                                  /CH/1784540
                                  LEHMAN BROTHERS ( 1/2  MIN.) BONUS
                                   COUPON NOTES 2004-8.3.10 VARIABLE
                                   RATE
:93B:Balance:                     :ELIG/ /FAMT/ *35,000.*
:16S:End of Block:                USECU
:16R:Start of Block:              ADDINFO
:70F:Narrative:                   :ADTX// +- LEHMAN PROGRAMS SECURITIES -+ .
PLEASE NOTE THAT, ON 02.07.2009, THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK, HAVING JURISDICTION OVER THE
CHAPTER 11 CASES OF LEHMAN BROTHERS HOLDINGS INC (LBHI), ENTERED AN
ORDER ESTABLISHING 02.11.2009, AT 5:00PM (US EASTERN TIME) AS THE
LAST DATE FOR EACH PERSON OR ENTITY FO FILE A PROOF OF CLAIM BASED ON
THE LEHMAN PROGRAMS SECURITIES AS LISTED ON HTTP://WWW.LEHMAN-DOCKET.COM AS
OF 17.07.2009. . HOW TO INSTRUCT (OPTION1): STEP 1: IF YOU WISH TO FILE A
PROOF OF CLAIM, YOU WILL RECEIVE A BLOCKING REFERENCE FROM SIX SIS
VIA SWIFT MT599 WITHIN 24HOURS AFTER YOUR INSTRUCTION.
IF YOU DO NOT RECEIVE THE BLOCKING REFERENCE WITHIN 24HOURS, PLEASE
CONTACT US VIA E-MAIL: CORPACTIONSEUROPE.GROUP(AT)ISIS. SISCLEAR.COM
THE INSTRUCTED SECURITIES ARE NOT PERMITTED TO BE TRADED AND REMAIN
BLOCKED UNTIL THE BAR DATE. . STEP 2: PLEASE FILL-IN THE CLAIM FORM:
1/AMOUNT OF CLAIM IN USD USING THE EXCHANGE RATE AS PER
15.09.2008. (THE DEBTOR HAS NOT PUBLISHED ANY OFFICIAL EXCHANGE RATE)
2/ISIN CODE 3/BLOCKING REFERENCE 4/CLEARSTREAM LUXEMBOURG A/C 83320
PLEASE SEND THE CORRECTLY SIGNED FORM DIRECTLY TO EPIQ BANKRUPTCY
```

RFK: S568-001723                 Printed On: 2009-08-06 14:48:36          Page No:   2
TRN:
--------------------------------------------------------------------------------
SOLUTIONS LLC OR THE COURT TO ONE OF THE ADDRESSES MENTIONED IN THE
BONDHOLDER NOTICE WHICH IS AVAILABLE ON WWW.LEHMAN-DOCKET.COM OR IN CAES. .
DO NOT SEND COPIES OR ORIGINALS OF THE CLAIM FORM TO SIX SIS. .
CONSEQUENCES  OF FAILURE TO FILE A PROOF OF CLAIM OR FILING IT INCORRECTLY:
ANY CREDITOR WHO FAILS TO FILE A PROOF OF CLAIM BY THE MENTIONED
DEADLINE OR FILE IT INCORRECTLY WILL BE FOREVER BARRED, ESTOPPED,
AND ENJOINED FROM ASSERTING SUCH CLAIM AGAINST THE DEBTORS AND THEIR
ESTATES, AND THEIR PROPERTY WILL BE FOREVER DISCHARGED FROM ANY AND ALL
INDEBTEDNESS OR LIABILITY WITH RESPECT TO SUCH CLAIM, AND THE
HOLDER OF SUCH CLAIM SHALL NOT BE PERMITTED TO VOTE ON ANY CHAPTER 11
PLAN OR REGARDING SUCH CLAIM OR WITH RESPECT TO THE DEBTORS CHAPTER 11 CASES. .
PLEASE NOTE THAT THIS ANNOUNCEMENT IS ONLY A SUMMARY. FOR DETAILED
INFORMATION AND DOWNLOADING THE CLAIM FORM PLEASE REFER TO THE
BONDHOLDER NOTICE DATED 27.07.2009, WHICH IS AVAILABLE ON
WWW.LEHMAN-DOCKET.COM OR IN CAES. .
:16S:End of Block:                    ADDINFO
--------------------------------------------------------------------------------
Message History:
                     Action   User                        Stage     Next Act
Date      Time       Xmt Rslt Net Prio Recipient   DelServ ComServ   Com Seq#
=======   =======    ======== ======== ================== ======= ========= =======
09-08-06  14:48:36   MSG READ TABLE: No. of Distribution: 2
09-08-06  14:48:36   IOK      N                    SECOM   Inb-Cmpl  Archive
-------------------------- E N D   M E S S A G E ----------------------------

# Exhibit B

**SIX** SECURITIES SERVICES

Banque Cantonale du Valais
Corporate Actions
Gregoire Tavelli
Place de Cedres 8
1951 Sion
Switzerland

SIX SIS Ltd
Baslerstrasse 100
CH-4600 Olten

Mailing address:
P.O. Box
CH-4601 Olten

T +41 58 399 3111
F +41 58 499 3111
www.six-sis.com

Your contact:
Armin Zimmerstädt
T +41 58 399 6445
F +41 58 499 1300
armin.zimmerstaedt@sisclear.com

Olten, May 16, 2011

**Attestation of Holding**

Dear Mister Tavelli

We, SIX SIS Ltd, hereby confirm that from October 23, 2009 through November 9, 2009 (the "Applicable Period"), Banque Cantonale du Valais held the bonds identified in attached Schedule A (the "Securities"). The CH ISIN's in account 20.085'011 and the XS ISIN's in account 20.085'079.

We further confirm that the Securities were not traded by Banque Cantonale du Valais or any beneficial holder of the Securities during the Applicable Period, and were owned by the same entity throughout this period.

Yours faithfully,

SIX SIS Ltd

U. Eggler
Head of Unit Corporate Actions

Armin Zimmerstädt
Head of Unit Corporate Actions

Schedule A: (*Lehman pour attestation*)

SIX SECURITIES SERVICES

## Schedule A ("Lehman pour attestation")

| Swiss security | Security name | Maturity Date | Security category | Currency | QUANTITE | ISIN | Amount of Claim USD |
|---|---|---|---|---|---|---|---|
| 2691552 | Lehman 09 FRN EMTN | 2009 | Obligations | CHF | 100'000 | CH0026915527 | 22'405.00 |
| 2698508 | 2.5 Lehman Brothers 08-10 | 2010 | Obligations | CHF | 75'000 | CH0026985082 | 8'068.00 |
| 2698508 | 2.5 Lehman Brothers 08-10 | 2010 | Obligations | CHF | 20'000 | CH0026985082 | 2'151.00 |
| 1784540 | LehBros 10 VRN | 2010 | Pr str. Cap Garanti | CHF | 35'000 | XS0186243118 | 23'896.00 |
| 1938561 | LehmanBroHldg 09VRN | 2009 | Pr str. Cap Garanti | CHF | 33'000 | XS0200265709 | 24'157.00 |
| 2268585 | 5.125 Lehman05-Perpétuel | no date | Obligations | EUR | 70'000 | XS0229259856 | 28'920.00 |
| 2304054 | LB 35 VRN | 2035 | Obligations | EUR | 100'000 | XS0232364966 | 42'729.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 200'000 | XS0286897219 | 172'911.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 150'000 | XS0286897219 | 129'683.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 100'000 | XS0286897219 | 86'456.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 75'000 | XS0286897219 | 64'842.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 57'000 | XS0286897219 | 49'280.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 50'000 | XS0286897219 | 43'228.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 50'000 | XS0286897219 | 43'228.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 45'000 | XS0286897219 | 38'905.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 30'000 | XS0286897219 | 25'937.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 25'000 | XS0286897219 | 21'614.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 20'000 | XS0286897219 | 17'292.00 |
| 2920452 | SX5E/LBT Ct11 | 2011 | Pr structurés | EUR | 10'000 | XS0286897219 | 8'646.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 400'000 | XS0286900708 | 189'063.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 300'000 | XS0286900708 | 141'797.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 200'000 | XS0286900708 | 94'532.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 150'000 | XS0286900708 | 70'899.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 150'000 | XS0286900708 | 70'899.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 150'000 | XS0286900708 | 70'899.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 100'000 | XS0286900708 | 47'266.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 100'000 | XS0286900708 | 47'266.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 100'000 | XS0286900708 | 47'266.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 100'000 | XS0286900708 | 47'266.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 80'000 | XS0286900708 | 37'813.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 80'000 | XS0286900708 | 37'813.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 80'000 | XS0286900708 | 37'813.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 70'000 | XS0286900708 | 33'086.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 70'000 | XS0286900708 | 33'086.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 70'000 | XS0286900708 | 33'086.00 |

SIX SECURITIES SERVICES

| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 60'000 | XS0286900708 | 28'360.00 |
|---|---|---|---|---|---|---|---|
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 60'000 | XS0286900708 | 28'360.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 50'000 | XS0286900708 | 23'633.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 50'000 | XS0286900708 | 23'633.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 50'000 | XS0286900708 | 23'633.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 50'000 | XS0286900708 | 23'633.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 50'000 | XS0286900708 | 23'633.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 50'000 | XS0286900708 | 23'633.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 44'000 | XS0286900708 | 20'792.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 40'000 | XS0286900708 | 18'907.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 40'000 | XS0286900708 | 18'907.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 40'000 | XS0286900708 | 18'907.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 35'000 | XS0286900708 | 16'543.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 35'000 | XS0286900708 | 16'543.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 30'000 | XS0286900708 | 14'180.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 30'000 | XS0286900708 | 14'180.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 30'000 | XS0286900708 | 14'180.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 26'000 | XS0286900708 | 12'290.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 20'000 | XS0286900708 | 9'454.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 20'000 | XS0286900708 | 9'454.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 20'000 | XS0286900708 | 9'454.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 20'000 | XS0286900708 | 9'454.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 15'000 | XS0286900708 | 7'090.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 15'000 | XS0286900708 | 7'090.00 |
| 2920451 | SMI/LBT Ct11 | 2011 | Pr structurés | CHF | 10'000 | XS0286900708 | 4'727.00 |
| 3215980 | 6.125 Lehman 14EMTN | 2014 | Obligations | EUR | 50'000 | XS0307745744 | 21'365.00 |
| 2712197 | 13.5 Bskt/Leh 08 | 2008 | Pr structurés | EUR | 150'000 | XS0324618676 | 143'719.00 |
| 2712197 | 13.5 Bskt/Leh 08 | 2008 | Pr structurés | EUR | 100'000 | XS0324618676 | 95'813.00 |
| 3610779 | 17.75 Bskt/Leh 09 | 2009 | Pr structurés | EUR | 30'000 | XS0338544041 | 25'839.00 |
| 3610779 | 17.75 Bskt/Leh 09 | 2009 | Pr structurés | EUR | 150'000 | XS0338544041 | 129'192.00 |
| 3610779 | 17.75 Bskt/Leh 09 | 2009 | Pr structurés | EUR | 500'000 | XS0338544041 | 430'638.00 |
| 3610779 | 17.75 Bskt/Leh 09 | 2009 | Pr structurés | EUR | 50'000 | XS0338544041 | 43'084.00 |
| 3698302 | SMI/Leh Bros 11EMTN | 2011 | Pr str. Cap Garanti | CHF | 5'000'000 | XS0340950608 | 4'481'000.00 |

Ueli Eggler
Head of Unit Corporate Actions

Armin Zimmerstädt
Head of Unit Corporate Actions

Exhibit C

Siège principal

Place des Cèdres 8
1950 Sion
http://www.bcvs.ch

Téléphone    0848 765 765
Téléfax       027/324 66 66

6 octobre 2009

Lehman Brothers

**Sehr geehrte ,**

Im April 2009 hatten wir Sie über die Situation bei den Insolvenzverfahren der verschiedenen Lehman Brothers Gesellschaften informiert. Mit dem vorliegenden Schreiben möchten wir Sie über einige in der Zwischenzeit erfolgte Entwicklungen orientieren. Ausserdem möchten wir Sie darauf hinweisen, dass im Gläubigerschutzverfahren (Chapter 11-Verfahren) der Lehman Brothers Holdings Inc. eine Frist zur Forderungseingabe festgesetzt wurde.

1)      Stand der Insolvenzverfahren

Bei der Lehman Brothers Holding Inc., New York, hat das zuständige Gericht im Chapter 11 – Verfahren am 2. Juli 2009 die Frist für die Eingabe der Forderungen festgelegt. Während die allgemeine Eingabefrist der 22. September 2009 ist, müssen Forderungen aus den von Ihnen gehaltenen Produkten bis am 2. November 2009 in der richtigen Form eingegeben werden (siehe nachstehend Ziffer 2). Weitere Details zum Verfahren in den USA können Sie unter www.lehman-docket.com abrufen.

Bei der Lehman Brothers Treasury Co B.V., Amsterdam, hat der Konkursverwalter weitere Berichte zum Konkursverfahren veröffentlicht (siehe www.lehmanbrotherstreasury.com), eine Frist für die Eingabe von Forderungen wurde nach wie vor nicht festgelegt.

Auch im Konkursverfahren der Lehman Brothers Securities N.V., Curacao, wurde noch keine Frist für die Eingabe von Forderungen festgelegt.

Garantie de l'Etat
Staatsgarantie

2)      Forderungseingabe im Chapter 11 – Verfahren

Die Eingabe der Forderung muss mit einem bestimmten Formular, nämlich dem beiliegenden "Proof of Claim" bis zum 2. November 2009 erfolgen. Sie haben folgende Möglichkeiten:

a)      Anmeldung durch die Bank

Die Verfügung des Insolvenzgerichts lässt ausdrücklich eine Anmeldung durch die depotführende Bank zu. Die Walliser Kantonalbank offeriert, diese erste Anmeldung für Sie kostenfrei durchzuführen. Wenn Sie uns bis zum 16.Oktober 2009 nicht mitteilen, dass Sie individuell anmelden möchten (siehe Ziff. 2.2), so nehmen wir an, dass Sie uns beauftragen, diese erste Anmeldung für Sie vorzunehmen. Bitte beachten Sie dazu, dass eine solche Anmeldung für Sie insbesondere folgende Konsequenzen hat:

- Angemeldete Wertpapiere werden bis auf weiteres gesperrt, d. h. sie können im Regelfall nicht oder nur unter Einhaltung gewisser Vorschriften an Dritte übertragen werden.
- Eine Anmeldung durch die Bank führt dazu, dass für Ihre Wertpapiere allein die Bank am Chapter 11-Verfahren beteiligt ist. Alle Mitteilungen und Zahlungen gehen an die Bank. Soweit wir im weiteren Verfahren für Ihre Forderung relevante Mitteilungen oder Zahlungen erhalten, werden wir diese an Sie weiterleiten.
- Bisher ist nicht restlos geklärt, mit welchen Beträgen Forderungen aus Zertifikaten oder anderen strukturierten Wertpapieren im Chapter 11-Verfahren anzumelden sind. Ihre Forderung wird daher zum wahrscheinlichen Wert per 15. September 2008 angemeldet. Es ist aber möglich, dass die Forderungen nicht in der angemeldeten Höhe oder überhaupt nicht anerkannt werden. Wir können daher keine Verantwortung dafür übernehmen, dass und in welcher Höhe Ihre Forderung im Chapter 11-Verfahren anerkannt wird.
- Die Bank ist nach gegenwärtigem Informationsstand nicht verpflichtet, die Identität des Kunden offenzulegen. Es ist aber möglich, dass im weiteren Verfahren auch Ihre persönlichen Daten zur Wahrung Ihrer Rechte weitergegeben werden müssen oder dass zur weiteren Verfolgung Ihrer Ansprüche Ihre Mitwirkung erforderlich ist.
- Wir können Sie lediglich bei dieser erstmaligen Forderungseinreichung im Chapter 11-Verfahren unterstützen. Sollten weitere Schritte notwendig werden, behalten wir uns vor, diese nicht zu unternehmen, das Verfahren an Sie abzutreten oder die Forderungseingabe zurückzuziehen. Auch würden wir Ihnen bzw. Ihrem Konto in Zukunft allenfalls anfallende Kosten, insbesondere Anwaltskosten, verrechnen.

b)      Individuelle Anmeldung

Sie können Ihre Forderung auch selbst durch Einreichung des Formulars anmelden.

Bitte beachten Sie in diesem Fall insbesondere, dass mit der Einreichung der Forderung notwendigerweise den amerikanischen Behörden Ihr Name bzw. der Name der Kontoinhaberin offen gelegt wird. Zudem wird Ihr Name bzw. der Name der Kontoinhaberin im Internet veröffentlicht. In Verbindung mit den auf dem Formular angegebenen Wertpapiernummern kann auch ein Rückschluss auf Ihre Beziehung zu unserer Bank erfolgen. Wenn Sie also das Formular einreichen, so verzichten Sie auf das Bankgeheimnis und Ihre Daten sind im Ausland bekannt. Auch begründen Sie allenfalls einen Gerichtsstand in den USA.

Sollten Sie sich selbst anmelden wollen, so erwarten wir Ihre entsprechende Mitteilung bis zum 16.Oktober 2009. Wir stellen Ihnen dann eine "Blocking Number" und eine "Participant Account Number" zu, welche Sie für die Anmeldung benötigen.

Bei nach dem 16.Oktober 2009 erhaltenen Mitteilungen können wir eine rechtzeitige Blockierung der Wertpapiere bei der Clearingorganisation nicht garantieren. Bitte beachten Sie, dass Forderungen, welche nicht oder verspätet angemeldet werden im weiteren Verfahren nicht mehr berücksichtigt werden.

Wir danken Ihnen für Ihre Treue.

Mit freundlichen Grüssen,

Beilage: Proof of Claim

Walliser Kantonalbank

Georges Luggen                    Stéphane Jean
Mitglied der Generaldirektion      Mitglied der Direktion

Unofficial Translation

October 6, 2009

Dear  ,

In April 2009, we informed you about the situation regarding the insolvency proceedings of the different Lehman Brothers entities. With the instant letter, we want to update you regarding certain developments that took place in the meantime. In addition, we want to point out that a deadline to submit claims has been established in the Chapter 11 proceedings.

1)  Status of the insolvency proceedings

Regarding the Lehman Brothers Holding Inc., New York, on July 2, 2009, the competent court in the Chapter 11 proceedings has set the deadline for submission of claims. While the general deadline is September 22, 2009, claims resulting out of the commodities [products?] you own must be submitted in the correct form by November 2, 2009 (see point 2 below). Further details regarding the proceedings in the U.S. may be obtained from www.lehman-docket.com.

Regarding Lehman Brothers Treasury Co. B.V., Amsterdam, the trustee in bankruptcy has published further reports regarding the bankruptcy proceedings (see www.lehmanbrotherstreasury.com), a deadline for the submission of claims has still not been set.

Similarly, in the bankruptcy proceedings regarding Lehman Brothers Securities N.V., Curacao, no deadline for the submission of claims has yet been set.

2)  Submission of claims in the Chapter 11 proceeding

The submission of claims must be effected by November 2, 2009, on a particular form, namely the attached "Proof of Claim". You have the following options:

a)  Submission/Registration through the Bank

The order of the bankruptcy court expressly permits registration through the custodial bank. The *Walliser Katonalbank* [Bank of the Canton of Wallis] offers to effect this first registration for you for free. If you do not advise us by October 16, 2009 that you will undertake the registration individually (see point 2.2), we will assume that you appoint us to effect that first registration for you. Please note that the registration has the following consequences for you:

* Registered [securities, stocks, bonds] are blocked until further notice, which means that, they may not, as a rule or only subject to certain prescriptions, be transferred to third parties.
* A registration effected by the bank results in only the bank being involved in the Chapter 11 proceedings with respect to your [securities, stocks, bonds]. All communication/notices and payments are received by the bank. To the extend that we receive communication/notices during the ongoing proceedings that are relevant to your claims, we will forward these to you.
* Until now, it has not yet been finally decided, with which amount claims arising out of certificates or other structured [securities, stocks, bonds] are to be registered in the Chapter 11 proceeding. Accordingly, your claim will likely be registered with the value of September 15, 2008. It is however possible that claims may not be recognized in the amount they were registered for or that they may not be recognized at all. We can hence not assume any responsibility if and for what amount your claim will be recognized in the Chapter 11 proceeding.

- According to the current information status, the bank is not obliged to reveal the identity of the client. It is however possible that, during the course of the proceedings, your personal data needs to be disclosed in order to preserve your rights or that your participation is required to pursue your claims.
- We can merely assist you with the initial submission of the claims in the Chapter 11 proceeding. If additional steps become necessary, we reserve the right not to undertake such additional steps, to assign the proceeding to you or to withdraw the claim submission. Furthermore, we would charge you or your account for any arising costs, especially legal costs.

b)  Individual Submission/Registration

You can also submit your claim yourself by submitting the form. In this case, please note that, with submission of the claim, your name or rather the name of the account holder will necessarily be disclosed to the American authorities. In addition, your name or rather the name of the account holder will be published in the internet. Through the [securities, stocks, bonds] numbers noted on the form, the relationship between yourself and our bank may also be deduced. Accordingly, if you submit the form, you waive the banking secrecy and your data will be known abroad. Furthermore, you will agree to U.S. [jurisdiction, venue].

Should you wish to submit your claim yourself, we expect to be notified accordingly <u>by October 16, 2009</u>. We will then provide you with a "Blocking Number" and a "Participant Account Number", which you require for the registration.

For notifications received after October 16, 2009, we cannot guarantee a timely blocking of the [securities, stocks, bonds] with the clearing organization. Please note that claims which are not registered or registered too late will not be considered in the proceeding.

# Exhibit D

NYCDMS/1179758.3

13

Page 1

1

2 UNITED STATES BANKRUPTCY COURT

3 SOUTHERN DISTRICT OF NEW YORK

4 Case Nos. 08-13555(JMP)

5

6 - - - - - - - - - - - - - - - - - - -x

7 In the Matter of:

8

9 LEHMAN BROTHERS HOLDINGS INC., et al.

10

11          Debtors.

12 - - - - - - - - - - - - - - - - - - -x

13

14          United States Bankruptcy Court

15          One Bowling Green

16          New York, New York

17

18          October 27, 2010

19          10:07 AM

20

21 B E F O R E:

22 HON. JAMES M. PECK

23 U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Debtors' Twenty-Eighth Omnibus Objection to Claims

3    (Valued Derivative Claims)

4

5    HEARING re Debtors' Thirty-Fifth Omnibus Objection to Claims

6    (Valued Derivative Claims)

7

8    HEARING re Debtors' Thirty-Sixth Omnibus Objection to Claims

9    (Failure to Submit Guarantee Questionnaire Claims)

10

11   HEARING re Debtors' Thirty-Seventh Omnibus Objection to Claims

12   (No Liability Claims)

13

14   HEARING re Debtors' Thirty-Eighth Omnibus Objection to Claims

15   (Amended and Superseded Claims)

16

17   HEARING re Debtors' Fortieth Omnibus Objection to Claims (Late-

18   Filed Claims)

19

20   HEARING re Debtors' Forty-First Omnibus Objection to Claims

21   (Late-Filed Claims)

22

23   HEARING re Debtors' Forty-Second Omnibus Objection to Claims

24   (Late-Filed Lehman Programs Securities Claims)

25

Page 3

1

2    HEARING re Debtors' Forty-Third Omnibus Objection to Claims

3    (Late-Filed Lehman Programs Securities Claims)

4

5    HEARING re Debtors' Forty-Fourth Omnibus Objection to Claims

6    (Settled Derivative Claims)

7

8    HEARING re Debtors' Twenty-Ninth Omnibus Objection to Claims

9    (No Blocking Number LPS Claims)

10

11   HEARING re Debtors' Thirty-Ninth Omnibus Objection to Claims

12   (Duplicative Claims)

13

14   HEARING re Debtors' Objection to Proofs of Claim Filed By

15   William Kuntz III (Claim Nos. 33550, 33551, 33552, 35121, and

16   35430)

17

18

19

20

21

22

23

24

25   Transcribed by:  Lisa Bar-Leib

```
                                                    Page 4

 1

 2     A P P E A R A N C E S :

 3     WEIL, GOTSHAL & MANGES LLP

 4           Attorneys for Debtors and Debtors-in-Possession

 5           767 Fifth Avenue

 6           New York, NY 10153

 7

 8     BY:   SHAI Y. WAISMAN, ESQ.

 9           PENNY P. REID, ESQ.

10           MARK BERNSTEIN, ESQ.

11

12     WEIL, GOTSHAL & MANGES LLP

13           Attorneys for Debtors and Debtors-in-Possession

14           200 Crescent Court

15           Suite 300

16           Dallas, TX 75201

17

18     BY:   ERIN D. ECKOLS, ESQ.

19

20

21

22

23

24

25
```

Page 5

1

2   MILBANK, TWEED, HADLEY & MCCLOY LLP

3        Attorneys for the Official Committee of Unsecured

4         Creditors

5        One Chase Manhattan Plaza

6        New York, NY 10005

7

8   BY:   DENNIS C. O'DONNELL, JR.

9        MATTHEW KANTOR, ESQ.

10

11  DUANE MORRIS LLP

12        Attorneys for Aspecta Assurance International

13         Luxembourg, S.A.

14        1540 Broadway

15        New York, NY 10036

16

17  BY:   PATRICIA H. HEER, ESQ.

18

19  KATTEN MUCHIN ROSENMAN LLP

20        Attorneys for RBC Capital Markets Corp.

21        575 Madison Avenue

22        New York, NY 10022

23

24  BY:   JEFF J. FRIEDMAN, ESQ.

25

Page 6

1

2   THALER & GERTLER LLP

3        Attorneys for August '98 Trust

4        90 Merrick Avenue

5        Suite 400

6        East Meadow, NY 11554

7

8   BY:   KIM D. VICTOR, ESQ.

9

10   POLSINELLI & SHUGHART

11        Attorneys for Interested Party

12        700 West 47th Street

13        Suite 1000

14        Kansas City, MO 64112

15

16   BY:   MICHAEL S. FOSTER, ESQ.

17        (TELEPHONICALLY)

18

19

20

21

22

23

24

25

Page 7

1

2    STUTMAN, TREISTER & BLATT

3         Attorneys for Lehman Brothers Holdings, Inc.

4         1901 Avenue of the Stars

5         12th Floor

6         Los Angeles, CA 90067

7

8    BY:   MARINA FINEMAN, ESQ.

9         (TELEPHONICALLY)

10

11   ALSO APPEARING:

12   WILLIAM A. KUNTZ, PRO SE

13         Box 461

14         Lake Placid, NY 12946

15

16   BY:   WILLIAM A. KUNTZ

17

18

19

20

21

22

23

24

25

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 14

1    allow claims that were settled pursuant to assigned termination

2    agreements.  These claims were where parties had reached an

3    agreement with the debtors with respect to the claim amount of

4    classification that is not reflected on the group of claims.

5    And omnibus objection is simply seeking to modify those claims

6    to conform to the parties' agreement.  Therefore, the debtors

7    respectfully request that the Court grant omnibus objection 44.

8            THE COURT:  Omnibus objection 44 is granted.

9            MS. ECKOLS:  Your Honor, that wraps up the uncontested

10   claims matters.  And moving on to the contested claim matters,

11   agenda item number 11 which is some carryover items from

12   debtors' twenty-ninth omnibus objection to claims.

13           As Your Honor may recall, omnibus objection 29 sought

14   to disallow and expunge Lehman program securities claims that

15   violated the bar date order because they did not include the

16   required blocking number.  At the September 1 claims hearing,

17   Your Honor granted the omnibus objection with respect to the

18   uncontested claims and today we are taking up the three

19   contested claims.

20           The responses or the parties contesting are RBC

21   Capital Markets, the August '86 Trust and Aspecta Assurances

22   International.  Each of these respondents failed to include the

23   required blocking number with their proof of claim and thus

24   violated the bar date order.  The debtors ask that this Court

25   enforce the blocking number requirement uniformally and expunge

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 15

1    the noncompliant claims.

2           The blocking number requirement is critical and needs

3    to be enforced in order for debtors to effectively reconcile

4    the Lehman program securities claims.   The bar date order

5    established specific procedures for the filing of those claims

6    because of the unique characteristic of those securities.

7    Specifically, the program securities did not have an indenture

8    trustee that could file a global claim on behalf of the

9    individual holders of those securities.   So the individual

10   holders would have to file their own claims.

11          This presented serious issues as far as reconciliation

12   of the claims because the debtors would not be able to confirm

13   ownership or amount of a particular security.   A security could

14   have been traded every day for thirty days prior to the bar

15   date and each holder could have filed the claim risking

16   duplicative and/or excessive distributions.   The blocking

17   number requirement was specifically designed to address this

18   problem.   The blocking number, when issued, would confirm

19   ownership and amount of a security as of a certain date and,

20   once it was issued, trading for that particular security was

21   frozen through the securities program bar date.   The blocking

22   number requirement was two part.   A claimant had to actually

23   obtain the blocking number and then include it with their

24   timely filed proof of claim.   That again, the blocking number

25   plays a critical role for reconciliation of these claims and

LEHMAN BROTHERS HOLDINGS INC., et al.

1  significantly reduces the burden on debtors of reconciling

2  these claims.

3       THE COURT:  Can I break in for a minute --

4       MS. ECKOLS:  Sure.

5       THE COURT:  -- and just ask a very basic question

6  about how one obtains blocking numbers.  Let's just say that

7  you're the August '86 Trust to pick one that happens to be up

8  today.  And you're trying to comply faithfully with the

9  requirements of the order establishing procedures for filing

10  proofs of claim.  And you know that there is a need to obtain a

11  blocking number.  Procedurally, how would you go about doing

12  that?

13       MS. ECKOLS:  Your Honor, the claimant would need to

14  reach out to the applicable clearing agency, Euroclear or

15  Clearstream, and they would issue the blocking number for the

16  claimant.

17       THE COURT:  And once that blocking number is issued,

18  that becomes, in effect, the tracking number for the claim?

19       MS. ECKOLS:  Yes, Your Honor.  That is correct.

20       THE COURT:  Okay.

21       MS. ECKOLS:  Allowing parties to circumvent the

22  blocking number requirement eviscerates the benefits that it

23  was intended to have and will make it incredibly difficult, if

24  not impossible, for the debtors to reconcile those claims.  And

25  there are a large number of Lehman program securities claims to

LEHMAN BROTHERS HOLDINGS INC., et al.

1   reconcile.  There are over approximately 31,000 Lehman program

2   securities claims which is almost half of the amount of claims

3   in total filed in these Chapter 11 cases.  Again, debtors

4   believe that the blocking requirement must be uniformally and

5   strictly enforced.

6         The blocking number requirement was expressly set

7   forth in the bar date order.  It specifically stated that

8   claimants had to obtain the blocking number and include it on

9   their proof of claim.  This requirement was also specifically

10  set forth in the securities program bar date notice and, in

11  fact, that bar date notice had a whole section that said

12  "special note regarding blocking numbers".  That was in bold.

13  And that was on the court-approved bar date notice.

14        The proof of claim form that this Court approved for

15  Lehman program securities claim also expressly said that the

16  claimant had to obtain had to obtain the blocking number and

17  had a space for them to put it on there.  The bar date notice

18  was widely disseminated.  It was given to the clearing agencies

19  and it was also published in twenty-six papers in eighteen

20  countries, ten languages plus seven local dialects.

21        Now the respondents do not dispute that they failed to

22  comply with one or both parts of the blocking number

23  requirement.  And the responses do not dispute that they

24  received notice of the blocking number requirement or that

25  notice was somehow deficient.  The responses do not dispute

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 18

1  that the requirement to obtain the blocking number and put it

2  on the proof of claims was clear.  Instead, the responses

3  assert that they should be treated differently from other

4  Lehman program securities claimants that had to comply with the

5  bar date order's procedures.

6       Now I did want to alert Your Honor to the fact that

7  the August '86 Trust did file an affidavit on Monday afternoon

8  that did, for the first time, assert that they had no notice of

9  this requirement and that they didn't receive proper notice of

10  it.  So it appears as though the August '86 Trust in response

11  to debtors' reply has changed position a little bit.  Again,

12  debtors just wanted to notify the Court of this.  We believe it

13  is an impermissible surreply but we did want you to know that

14  August '86 Trust was raising this now kind of belatedly.

15       The reasons provided by each respondent are vague and

16  unsubstantiated.  They cite a mistake or inadvertence of some

17  sort.  But whatever the excuse, the respondents all seek to

18  justify their noncompliance with a no harm no foul argument

19  that doesn't withstand scrutiny.

20       Specifically, with respect to Aspecta.  Aspecta failed

21  to obtain a blocking number altogether but claims no harm no

22  foul because it says it held the securities "at all relevant

23  times".  There is no explanation of what "all relevant times"

24  actually means and no support other than two unsubstantiated

25  documents that purport to establish ownership of the securities

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 19

1   as of September 2010 which, obviously, is nearly a year after

2   the applicable bar date.  So even if Aspecta had produced

3   admissible evidence establishing ownership of the securities as

4   of September 2010, which it did not, this does not accomplish

5   the goals of the blocking number requirement or render the

6   blocking number unnecessary.  It does not confirm ownership

7   prior to bar date.  It does not prevent others from claiming

8   those same securities.  And so, the reconciliation issues that

9   the blocking number requirement specifically sought to avoid

10  are present here.  Because Aspecta utterly failed to comply

11  with the blocking number procedures, its claim should be

12  expunged.

13        The no harm no foul arguments asserted by RBC and the

14  August '86 Trust simply miss the point.  RBC and the August '86

15  Trust assert that the failure to include a blocking number with

16  their claim should be excused because they have the number and

17  simply didn't give it to the debtors.  However, the blocking

18  number requirement is two-fold.  The claimant had to obtain the

19  blocking number and actually put it on their timely filed proof

20  of claim.  Obtaining a blocking number but not providing it to

21  the debtors does not allow the debtors to effectively process

22  and reconcile these 31,000 program securities claims.

23        Moreover, the harm to the debtors in making exceptions

24  to the blocking number requirement, whether because the

25  claimant forgot to include it with their proof of claim or

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 20

1    simply did not obtain one, the harm is that it encourages other

2    claimants to come and seek similar exceptions.  The debtors

3    implemented the blocking number procedures because it knew that

4    the volume of the Lehman program securities claims was going to

5    be large and the reconciliation was going to be difficult.  The

6    blocking number was designed to avoid a parade of claimants

7    seeking to engage in contested hearings, possible lengthy

8    evidentiary hearings, regarding whether or not they are the

9    valid holder as a Lehman program securities claim.  In short,

10   the contested hearing that debtors are engaging in right now

11   with the possibility of hundreds more to follow if leniency is

12   granted demonstrates the harm to the debtors and is precisely

13   why the blocking number requirement should be strictly

14   enforced.

15          THE COURT:  Can I break in and ask you a question --

16          MS. ECKOLS:  Of course.

17          THE COURT:  -- about that?  My understanding of how

18   this works procedurally is that the blocking number is to be

19   included on the filed claim and it's used by those who are

20   processing claims for the debtor in determining how to allow

21   claims based upon Lehman program securities.  Assuming that a

22   claimant has obtained a blocking number and fails for whatever

23   reason to include that number on the documents that are being

24   processed but later cures that defect by providing what I'll

25   call an amended claim saying I'm sorry, I forgot, how is the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 21

1   debtor prejudiced if at all?

2        MS. ECKOLS:  Your Honor, it's really the slippery

3   slope problem and the encouraging other parties who did not,

4   for whatever reason, comply with the blocking number

5   requirement to come in and seek exceptions.

6        THE COURT:  Yes.  But if the party who was seeking the

7   exception has a blocking number that doesn't create an

8   exception for a party that failed to obtain a blocking number,

9   does it?

10       MR. WAISMAN:  If I may, Your Honor.  And this is the

11   reason we -- Your Honor's very question is the reason that we

12   are here on this objection and discussing it with the Court.

13   The internal fear and concern is that if we are to say to those

14   folks that call and say I actually complied.  I called my

15   broker or Euroclear or Clearstream obtaining my blocking

16   number.  I just forgot to include it.  Here it is, no harm no

17   foul.  The concern is if we allow those in, we're then going to

18   have the next variation, of which we're hearing about already

19   which is, look, I didn't get the blocking number but I will

20   provide an affidavit and a witness in court saying I held it in

21   the years before the bar date, at the bar date, I still hold it

22   today.  So, in essence, you're blocking number requirement is

23   met, no harm no foul.  And we start to go down this slope where

24   the magnitude of the claims here, 30,000 -- approximately

25   30,000 people got notice, understood the notice complied.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 22

1    There's obviously, as with the entirety of this bar date

2    process, a large number of claimants that didn't comply.  And

3    if we made exception now, we are concerned that we are just

4    allowing additional variations on the exception that are going

5    to bog us down in the claims reconciliation process at this

6    late date with a plan on file and bog down the process here in

7    court with a magnitude of claims that have not yet really been

8    seen in the Chapter 11 cases.  So that's -- those are the

9    reasons we are pressing the objections.

10              THE COURT:  Okay.

11              MS. ECKOLS:  Your Honor, just in conclusion, the

12   debtors believe that the blocking number requirement -- clear

13   notice was given.  These respondents didn't comply and

14   respectfully request that the Court overrule the responses and

15   grant the twenty-ninth omnibus objection as to the RBC, the

16   August '86 Trust and the Aspecta claims.

17              THE COURT:  Okay.  I see counsel in the room so I'll

18   hear what they have to say.  Mr. Friedman, you're number one.

19              MR. FRIEDMAN:  Thank you, Your Honor.  Jeff Friedman

20   of KattenMuchinRosenman for RBC Capital Markets, Your Honor.

21   According to what Ms. Eckols just said, the crux of the matter

22   this morning is whether the bar date should be strictly and

23   rigidly enforced based on a slippery slope argument that RBC is

24   allowed to amend its claim and add a blocking number that it

25   timely and properly obtained but merely failed to write down on

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 23

1    the proof of claim form, everyone will want to use that excuse.

2         I don't know what the magnitude of claims are that fit

3    into that category.  I do know that this omnibus objection

4    before the Court, the twenty-ninth omnibus objection, objected

5    to eleven claims apparently, a number of which didn't obtain

6    blocking numbers.

7         It seems to me, Your Honor, that the issue is not

8    simply the rigid enforcement of the Court's order.  Every Court

9    that enters a bar date order, Your Honor -- it's not only in

10   this case; it's in other cases -- other judges in this court,

11   bankruptcy judges generally expect their bar date orders will

12   be complied with.  And the penalty for doing so, particularly

13   if you're late, that your claim may be disallowed in its

14   entirety.  But it seems to me, Your Honor, that the issue

15   really is whether, in Lehman's case, decades of jurisprudence

16   regarding amendments to claims, informal proofs of claims, will

17   simply not apply in the Lehman case no matter how insignificant

18   the harm is to Lehman.  This is, in my view, the most

19   hypertechnical objection because Lehman has known since we were

20   put on notice that we had a blocking number, it was timely

21   obtained.  So that if they went to Euroclear and said, send us

22   a list of blocking numbers you have for the bonds, they'd know

23   that RBC obtained its blocking number for these bonds.  And I

24   don't know whether they've done that or not.  But it would be

25   surprising if there was not a double check against sort of

Page 24

1    Euroclear and Clearstream's master list of blocking numbers.  I

2    don't know how they're doing this but it would be somewhat

3    odd --

4         THE COURT:  Well, let me just ask you something

5    because I don't know how this procedure would ordinarily work.

6    Are you saying that the blocking number requirement is

7    effectively a redundancy because any complying creditor who has

8    obtained a blocking number can have that number reproduced

9    through the clearing systems by simply requesting a download?

10   Are you saying that as a matter of fact or is that just surmise

11   on your part?

12        MR. FRIEDMAN:  I'm not suggesting that we could have

13   done it.  I would be somewhat surprised if Lehman, given the

14   nature of what they're doing here, couldn't have done it.  I

15   mean, this whole blocking number system was set up for this

16   procedure.  Now maybe Euroclear has said to Lehman well, we're

17   not telling you who we assigned particular blocking numbers to

18   and what they're claim is.  But clearly, Euroclear's got our

19   blocking number assigned to RBC for at least 300,000 dollars

20   worth of bonds with this ISIN number.  The proof of claim that

21   RBC filed, and it's attached to our response, used the wrong

22   claim form.  I mean, we represent RBC generally in this case

23   and we filed and helped them file a number of properly

24   completed program securities.  RBC is a fairly far flung

25   organization.  For some reason that no one can really explain,

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 25

1    this claim came through their Minneapolis office, didn't go to

2    the attorneys in New York or Toronto for RBC and there was a

3    guy in RBC's office in Minneapolis that took his best shot.  He

4    had gotten information from the Bank of New York.  That

5    information had the blocking number on it.  It had the

6    Euroclear account number on it.  He wrote the Euroclear account

7    number on the proof of claim.  But because he was using the

8    regular Lehman proof of claim and not the program securities

9    claim, there was no blank that said insert your blocking number

10   here that would have tipped him off.  He just didn't know.

11            Now I'm not claiming that we didn't get notice.  We

12   actually got direct notice.  I'm not even saying this was a

13   publication notice issue.  This was a screw-up.  And the

14   question is, is this screw-up so bad that it's not subject to

15   being amended.  Because we do think in this case that the harm

16   to Lehman is negligible.  Again, I don't know how many claims

17   are going to fit in this.  But the slippery slope argument

18   probably isn't all that significant for people who actually

19   timely got blocking numbers and didn't include them.  I mean,

20   had we included the blocking number but transposed two digits

21   also fatal because it's not the blocking number; it's a

22   different number.  I mean, I don't know where you draw the

23   line, Your Honor.  But it just seems to me that whether you use

24   an informal proof of claim which is simply intended to put the

25   debtor on notice that a particular claimant seeks to hold the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 26

1   debtor and the estate liable with respect to a particular

2   obligation has been satisfied in spades here.

3           On a scale of one to ten of the most aggressive

4   amendments you might make, this is a 1.  This is such a minor

5   change.  I mean, as the Seventh Circuit said in the Stoecker

6   case, if I may briefly quote it, "If a documentation is

7   missing, the creditor cannot rest on the proof of claim.  It

8   does not follow, however, that he is forever barred from

9   establishing the claim.  Nothing in the principles or

10  practicalities of bankruptcy or in the language of any rule or

11  statute justifies so disproportionate a sanction for a harmless

12  error.  A creditor should therefore be allowed to amend his

13  incomplete proof of claim to comply with the requirements of

14  3001 provided that other creditors are not harmed by the

15  belated completion of the filing."

16          In fact, Your Honor, with respect to the data required

17  by 3001, this claim meets that in its entirety.  It is only

18  this Court's additional requirement as requested by Lehman that

19  a blocking number be obtained and be put on the proof of claim

20  that's lacking here.  And it's only that second part because we

21  did timely obtain the blocking number.

22          So, Your Honor, we think that this satisfies the

23  claim.  We have filed an amended claim.  We think that that

24  claim satisfies it.  We don't think there's been real harm to

25  Lehman here because there's certainly been no distributions.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 27

1    They're still in the reconciliation process.  They have had

2    our blocking number since we filed our response a couple of

3    months ago.  And we just think that, on these facts, the Court

4    should allow the amended claim to stand.

5            THE COURT:  Okay.  Thank you.

6            MS. VICTOR:  Good morning, Your Honor.  Kim Victor

7    from Thaler & Gertler representing the creditor, the August '86

8    Trust.  I also concur with the arguments that were just made.

9    My client timely filed its proof of claim, signed, fully

10   completed it, put in a broker's number, the brokerage number,

11   the Barclay brokerage number rather than the blocking number.

12   It was clearly just a misunderstanding.  All the information

13   was filled out, twenty-four pages were connected to the proof

14   of claim that sufficiently the nature of the claim for the

15   debtor.  Once the debtor had advised that the blocking number

16   was not included in the proof of claim, the creditor provided

17   it debtors' counsel.  We have also amended the original timely

18   filed proof of claim which corrects any defects as to form to

19   the original timely filed claim.

20           The point is that there is absolutely no harm to the

21   debtor in this case.  The debtor had sufficient knowledge of

22   the claim.  They don't put anywhere in their papers that they

23   were unable to identify the nature of the claim, that they

24   weren't given notice, properly timely filed notice of the

25   claim.  In this case, it's the creditor who stands to

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 28

1   completely lose a valid claim of 450,000 dollars. At this

2   time, Your Honor, we ask that the amendment that has been

3   attached to our responsive papers be included as a timely filed

4   proof of claim as amended.

5           THE COURT:  Just a question about the affidavit of

6   Joseph Kelly.  What am I supposed to do with that?  And how

7   does that affidavit which was filed on Monday impact the

8   argument you've just made?

9           MS. VICTOR:  It doesn't really, Your Honor.  It

10  doesn't really.  It's just proof that there is a blocking

11  number, that the blocking number was provided, that now the

12  debtor is able to track the claim and that any amendment to the

13  original claim is purely just to include that blocking number.

14  There will be no changes to the original claim.  So there is no

15  prejudice to the debtor in this case.  It was merely just a

16  misunderstanding as far as the number was concerned.

17          THE COURT:  Okay.

18          MS. HEER:  Good morning, Your Honor.  Patricia Heer

19  Piskorski of Duane Morris on behalf of Aspecta Assurance

20  International Luxembourg.  Your Honor, Aspecta has filed a

21  proof of claim timely and it provided sufficient documentation

22  to sufficiently identify the notes at issue in that proof of

23  claim.

24          THE COURT:  Can I stop you for a second now because if

25  I'm understanding the position of Aspecta which is a little bit

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 29

1   different from the position of RBC and the August '86 Trust.

2   It's that even though you didn't obtain and disclose on your

3   form a blocking number that that shouldn't matter because

4   you've demonstrated that you always held the securities that

5   are the subject to the proof of claim, is that right?

6       MS. HEER:  Your Honor, we have attached documentation

7   to the response to the objection seeking to disallow the claim

8   which does give proof that at the time of the proof of claim

9   those notes at issue in the proof of claim were held and owned

10   and have continued to be held by Aspecta.

11       THE COURT:  Yes.  But it's true that Aspecta did not

12   obtain a blocking number and didn't include a blocking number

13   on its proof of claim.

14       MS. HEER:  That's correct, Your Honor.  And it did

15   not.  And it does understand the requirements of the bar

16   date -- the program securities bar date order and the terms

17   thereof.  And the argument is set forth in the motion and there

18   is the documentation provided in there.  And we do thank you,

19   Your Honor, for considering it.

20       THE COURT:  Okay.  Is there any response from the

21   debtor?

22       MS. ECKOLS:  Just a few points that we wanted to

23   respond to, Your Honor.  First, with respect to the no

24   prejudice to the debtor, this is not a matter of ten or twenty

25   or thirty claims that did not comply with the blocking number

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 30

1    requirement. Debtors are still trying to get a handle on the

2    number of claims but right now believe it is definitely north

3    of 500. So that is a significant number; it's not just one or

4    two. And that is going to increase the burden significantly on

5    debtors especially if all the claimants decide to come to court

6    and seek to prove ownership of the securities at issue in some

7    other manner.

8            With respect to August '86 request that the Court

9    allow them to amend their claims, that issue -- the issue today

10   is simply whether omnibus objection number 29 should be

11   granted. No motions have been filed to date to allow

12   amendments to these claims and we do not believe such relief

13   should be considered today.

14           With respect to Aspecta -- Aspecta's argument that

15   they've established that they've had ownership of the security,

16   I guess, from the inception of this Chapter 11 case through the

17   bar date, that is simply incorrect. The attachments to their

18   response are simply two pages of documents that appear to have

19   been created by the Bank of Luxembourg. And, at most, what

20   they show is that as of September 2010, which is after the

21   twenty-ninth omnibus objection was filed, that as of that late

22   date, they appeared to own the securities. Therefore, it does

23   not satisfy the goals of the blocking number requirement. And

24   thus, Your Honor, we ask that omnibus objection 29 as to those

25   three claimants be granted.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 31

1    THE COURT:  One more question about the impact of the

2    blocking number.  If a blocking number has been obtained and a

3    proof of claim has been filed in reference to a security

4    identified by such blocking number, is it permissible for the

5    claim to be traded or is it, in fact, blocked until such time

6    as a distribution is available from this estate?

7    MS. ECKOLS:  Your Honor, I am actually going to allow

8    Mr. Waisman to answer that question.

9    MR. WAISMAN:  Your Honor may recall that subsequent to

10   the bar date, there were supplemental procedures that were --

11   THE COURT:  I recall.

12   MR. WAISMAN:  And part of those procedures were to

13   permit the claims to freely trade.

14   THE COURT:  Yes.  I recall.  So here's where I become

15   perplexed.  Is the blocking number which is obtained as a

16   condition to submitting a proof of claim based on Lehman

17   program securities purely designed to facilitate tracking and

18   claim management or is it also designed to limit trading at

19   least up to the point that the proof of claim is filed?  Or

20   does it have no impact on trading?

21   MR. WAISMAN:  It absolutely had impact on trading.

22   Once somebody obtained a blocking number -- it could have been

23   a day before the program securities bar date or a month prior.

24   The moment they obtained that blocking number, that security

25   could not trade.  It was locked.  And it was not until a date

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 32

1    well past the Lehman program securities bar date that the

2    number became unblocked and was freely tradable.  And the

3    issues become even more complex because the bar date wasn't

4    purely to track the individual security but it was also to

5    reconcile duplications with the larger issuances that were held

6    by the banks.  And we have obviously inferences where the bank

7    holding the note filed a proof of claim with the blocking

8    number and then the individual holders who called their brokers

9    who called Euroclear and Clearstream also obtained blocking

10   numbers.  You have this multiple layer.

11        THE COURT:  I'm reminded by your comment that when

12   there was a request jointly made by the debtors and certain

13   creditor constituencies for a modification of the restrictions

14   building to the bar date order to permit trading of Lehman

15   program securities, even though there were no objections lodged

16   to that request, that's my recollection that I did not

17   immediately approve that motion but carried it to another

18   omnibus hearing date out of expressed concern that there might

19   be an impact upon the integrity of the bar date order itself.

20   And I was  ultimately satisfied that there would be no impact

21   upon the bar date.  And now I find myself at a claims hearing

22   where the integrity of the proof of claim process is at issue

23   as it relates to the blocking number component of the proof of

24   claim.  And what I'm still puzzling over, and I think I'd like

25   just a little bit more explanation from debtors' counsel on

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 33

1   this, is the actual practical use of the blocking number in

2   tracking claims, reconciling claims and allowing claims

3   particularly in the environment in which these Lehman program

4   securities are now being freely traded.

5        MR. WAISMAN:  Your Honor, may I have a brief moment?

6        THE COURT:  Sure.

7   (Pause)

8        MR. WAISMAN:  Your Honor, Shai Waisman.  Your Honor

9   recalls correctly that the debtors came back with a group of

10  interested creditors previously known as the Coalition of the

11  Willing to seek an addendum to the Lehman program securities

12  procedures.  Those procedures -- we -- the debtors and, I

13  believe, the committee always thought were part and parcel of

14  the original program securities notice but they were -- there

15  was enough concern that people wanted a supplemental order.

16  Your Honor expressed concern that perhaps the debtors were

17  succumbing to the hew and cry of the street in doing something

18  that would undermine the integrity of the procedures and

19  adjourn the matter.  And we came back with an affidavit of a

20  businessperson setting forth that the purpose of the program

21  securities was to provide the debtors comfort that the party

22  filing the proof of claim had actual ownership of the security

23  at the time the claim was filed and at the time the bar date

24  came.  It was required to illustrate the integrity of the claim

25  that the party held the claim that it wasn't traded every

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 34

1  single day up until the bar date and multiple claims being

2  filed.  And given that we were past the program securities bar

3  date and therefore anybody that filed a proof of claim with the

4  blocking number, we knew owned the security on that day and

5  that's the only day that matters for the purpose of

6  establishing the claims.  Thereafter, there was no reason to

7  require them to continue to hold the claim.  No benefit to us.

8  There should be a free market as the bankruptcy rules suggest

9  there should be in the trading of claims.  And the order was

10  meant to facilitate the fact that we were so far removed from

11  the bar date there was going to be no benefit to us from

12  restricting trading any further.  Parties could continue to

13  trade because what we needed we had at that point.  We had

14  proof that a party that filed the claim owned the security on

15  the day in question.

16        We do not use blocking numbers now to track claims at

17  all.  When we go through the 66,000 claims that sit in a pile,

18  we get to a Lehman program securities claim, we verify that

19  there's a blocking number.  We do check it against our master

20  list to make sure that it's a real blocking number.  And that

21  proves to us that the party that filed the claim owned the

22  security and therefore is the rightful claimant.  The next

23  step, of course, is to make sure whether somebody else filed a

24  proof of claim on behalf of that issuance.

25        THE COURT:  I hear you although I must say that this

Page 35

1    adds strength to the argument made by Mr. Friedman that on a

2    scale of one to ten, this is a one.  This isn't a ten in terms

3    of technical noncompliance because the blocking number is, in

4    effect, an extra protection designed to make sure that the

5    party who filed the claim with respect to these freely tradable

6    instruments in fact was the owner of the claim at a particular

7    point in time that is relevant for bankruptcy purposes but for

8    no other purpose because the instruments may have traded

9    multiple times already, in some instances, and may continue to

10   trade in the future.

11         Now I have no problem with the free trading of

12   securities.  The only problem I'm having right now is whether

13   the significance of the failure to include a blocking number on

14   a proof of claim is so material a failure to comply with the

15   expressed requirements of the proof of claim bar date

16   procedures as to warrant claim disallowance when a party

17   objects.  And I'm having some trouble with this right now,

18   particularly, I must tell you in the case -- it kind of goes up

19   in significance, A, B and C.  RBC has the strongest position;

20   August '86 Trust has the next strongest position; and Aspecta

21   Assurance has the weakest position, as I see it.  But I think

22   Aspecta is simply making an argument well, we didn't do it but

23   we own the security.  Here.  See this attachment to our

24   response.  They clearly didn't comply with the no blocking

25   number problem.  But they, in effect, make an argument for the

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 36

1    great unwashed that didn't comply at all.  That's your

2    floodgates problem, the problem that parties who never obtained

3    a blocking number will come forward and say we have the ability

4    through extrinsic evidence to demonstrate that we, in fact, own

5    the security at the time that we filed the proof of claim.  I

6    have a problem with that.

7            But as to anybody else who actually had a blocking

8    number and somehow messed up, I'm having a hard time seeing why

9    this is such a problem for the debtor.  And I need to

10   understand a little bit more about why procedurally this

11   creates such a potential hornet's nest of claim administration

12   difficulty down the road.

13           MR. WAISMAN:  Your Honor, I'd say a couple things.

14   First of all, there is nothing Your Honor has just said that we

15   disagree with.  We have spent a lot of time struggling with

16   these very issues.  The obvious statement that the bar date in

17   this case was so unique that it does not fit squarely within

18   the precedent, and I understand Mr. Friedman citing to the

19   legend of case law on amendments, but this case just doesn't

20   fit squarely within those parameters and it is difficult to

21   reconcile.

22           The program securities requirement was very explicit

23   and specific and absolutely necessary.  Without it, this case

24   would be a quagmire and we would have no ability to reconcile

25   over 30,000 claims.

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 37

1    In many ways the program's security's blocking number

2    is itself the claim.  Without it, you're submitting a statement

3    that at some point you own something.  But if you don't submit

4    the program security's number it doesn't -- it doesn't comply

5    for the purposes of a bar date in this case.  We have, in other

6    circumstances, been to Your Honor with claims issues, claims

7    objections and have agreed with Your Honor that we need to

8    strictly enforce the very specific and very unique requirements

9    of this bar date order because it is such a slippery slope.

10   And the fear here is that we know of here eleven, we already

11   know of 500 more, it's a reconciliation.  We haven't been

12   through the lion's share of our claims.  The number is

13   certainly to grow of claimants who got the blocking number but

14   simply didn't include, forgot for whatever reason.  And as I

15   said before, we are here because that's a slippery slope to --

16   well, they forgot -- I forgot to get it but I can prove to you

17   that I had it, and then we're going to be inundated with

18   thousands upon thousands of claimants coming to this court to

19   prove that they held the security and that they can meet the

20   purpose of the program securities blocking number requirement

21   by extrinsic evidence, even though they didn't supply the

22   number.

23        And when you try to differentiate those two, you come

24   back to there was a requirement, it was to be strictly enforced

25   and people didn't comply.  And as Ms. Eckols said, a number of

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 38

1   times, there were two requirements; to get the number and to

2   include it.  If we start to excuse one people are certainly

3   going to argue you have to excuse the other, and we have a hard

4   time differentiating between those two.

5          THE COURT:  I'm not sure I have such a hard time

6   differentiating between those two.

7          MR. WAISMAN:  Well, you wear the black robe.

8          THE COURT:  That's true.  But obviously claimants that

9   do everything perfectly are to be applauded for navigating what

10  is a fairly complex claims process in this case.  This is not,

11  by any means, standard issue.  But as I understand the purpose

12  to be served by the obtaining and inclusion of a blocking

13  number, it is to establish, in a user-friendly way from the

14  perspective of the debtors, that a particular claimant within

15  the pool of holders of Lehman program securities, in fact was a

16  holder on the relevant date, correct?

17         MR. WAISMAN:  That's correct.

18         THE COURT:  I think that in the case of RBC capital

19  that there really has been the kind of compliance that fits

20  within the applicable case law that I cited in my omnibus late

21  filed claims decision, in which good faith attempts to comply

22  coupled with confusion can lead to an excuse.  And here there

23  was good faith compliance in the sense of obtaining a blocking

24  number and somebody in Minneapolis goofed, they win.  Now, they

25  win on particularized facts and I don't think that opens a

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 39

1    door.

2          My next question to myself is well does August '86

3    Trust win? And maybe I need to think some more about that

4    after taking a look at the affidavit of Joseph Kelly, which

5    obviously Mr. Kelly, who's a solicitor, thought worthy of my

6    attention.  I haven't paid enough attention to it yet and I

7    want to think about it some more.

8          But let's just say, for the sake of discussion, that

9    August '86 Trust wins too, what's the principle that has just

10   been established?  It seems to me that the principle is that

11   anybody who has gone to the trouble of getting a blocking

12   number but who has failed, through negligence or administrative

13   error, to include the blocking number but who later provides

14   that blocking number is, in effect, curing the defect in a

15   manner that doesn't take away from the integrity of the bar

16   date order.  Nor does it in a material way because I don't

17   imagine there's going to be a huge class, but I could be wrong,

18   of parties who actually obtain the blocking number and then

19   negligently failed to include it.

20          It seems to me that the debtor is still in a position

21   to use the blocking number because the blocking number has been

22   provided and the integrity of the proof of claim, as it relates

23   to Lehman program securities is preserved.

24          The Aspecta case is different.  That's the we didn't

25   do it at all problem but we have other means of establishing,

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 40

1    in a way that we think should be credible, that we held Lehman

2    program securities at the time that a proof of claim was filed

3    and completely ignored the requirement of including a blocking

4    number.  They lose.

5           And I believe that you can draw a line here that says

6    if you have a blocking number you have done everything that you

7    can reasonably do to meet the spirit of the bar date notice as

8    it relates to Lehman program securities, assuming that you

9    have, for good cause, failed to include.  That you have reason

10   to establish that there was legitimate confusion or a

11   legitimate failure to comply, not just I willfully held it back

12   because I thought it was a stupid requirement, that's not going

13   to work.  But if there was what amounts to good faith efforts

14   to comply with that requirement and you then later provide the

15   number, it seems to me that the blocking number component of

16   this requirement is satisfied.

17          MR. WAISMAN:  Your Honor, if I may interject for one

18   moment.  As Your Honor is describing this narrow exception, it

19   might be helpful if it relates to entities that timely filed

20   proofs of claim, have obtained a blocking number but for good

21   cause failed to include and later provide it.

22          THE COURT:  That's exactly what I'm saying.  That

23   can't be a very big class of claimants and if it turns out to

24   be, well, so be it.

25          That's my best effort at walking a tightrope created

LEHMAN BROTHERS HOLDINGS INC., et al.

Page 41

1   by these requested exceptions to the blocking number

2   requirement of the bar date notice.  I'm not making a ruling

3   yet with respect to the August '86 Trust because I want to take

4   some time to look at the affidavit of Joseph Kelly.  But if the

5   August '86 Trust fits within the exception, I've just

6   articulated, then they'll prevail.  I'm sorry Aspecta loses.

7   They just didn't get a blocking number and they're out of

8   court.

9          MR. WAISMAN:  Thank you, Your Honor.  That guidance is

10  very, very helpful as we try to navigate these waters and turn

11  to Your Honor for guidance on the narrow calls.

12          THE COURT:  Okay.

13          MR. WAISMAN:  Greatly appreciated.

14          MS. ECKOLS:  Thank you, Your Honor.

15          MR. FRIEDMAN:  Your Honor, I just want to figure out

16  the best mechanics to get an order reflecting your decision

17  with respect to RBC.

18          MR. WAISMAN:  I think what we would do is remove it

19  from the proposed -- remove your claim from the proposed order

20  that we hand up today and there's no objection pending to your

21  claim.

22          MR. FRIEDMAN:  Okay.  We do have an amended claim; we

23  can deal with that by stipulation.

24          MR. WAISMAN:  Why don't we speak and take care of it?

25          MR. FRIEDMAN:  Thank you very much, Your Honor.

LEHMAN BROTHERS HOLDINGS INC., et al.

1          THE COURT:  Okay.

2          MR. WAISMAN:  I'm sorry, Your Honor, just one moment.

3    Thank you.

4          THE COURT:  You can feel free to confer.

5          (Pause)

6          MS. ECKOLS:  Your Honor, taking up agenda item number

7    12, which is debtor's thirty-ninth omnibus objection to claims,

8    this is seeking to disallow and expunge claims that are

9    duplicative, either exactly or in substance of another claim

10   filed for the same party.

11         There is only one formal response.  It was filed on

12   behalf of eight claimants.  Hesitate to call it an objection

13   because it states that if our omnibus objection is only seeking

14   to disallow duplicative claims, then it has no objection to us

15   doing so and the debtors are only seeking to disallow and

16   expunge claims that are duplicative by this omni.

17         THE COURT:  Everybody in that category appears to be a

18   citizen and resident of Greece.

19         MS. ECKOLS:  That is correct.

20         THE COURT:  And I read that objection or response or

21   reservation of rights, however we're going to characterize it

22   and it wasn't entirely clear to me whether or not in fact they

23   will have surviving claims.

24         If the answer is that they will have surviving claims,

25   then I have no hesitation in granting the thirty-ninth omnibus