May 16, 2011

To: United States Bankruptcy Court

    Southern District of New York

In re: Lehman Brothers Holdings Inc., et al., Debtors

    Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered)

On April 6, 2011, Lehman Brothers Holdings Inc. ("LBHI") and certain of its affiliates (collectively, the "Debtors") filed their One Hundred Eighteenth Omnibus Objection to Claims (To Reclassify Proofs of Claim as Equity Interests) (the "Objection") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

Regarding Claims to be reclassified

| *Creditor Name and Address*: | |
|---|---|
| Antoncic, Madelyn | Claim Number: 16516 |
| 350 East 57th Street | Date Filed: 9/18/2009 |
| Apartment 13 A | Classification and Amount: |
| New York, New York 10022 | Priority: $477,386.90 |
| 646-497-0719 | Unsecured: $9,727,184.10 |
| | Total: $10,204,571.00 |

I object to the reclassification of my claim which was compensation paid to me for services rendered by me to the Debtors for the fiscal years 2003, 2004, 2005, 2006, 2007 and the partial year 2008, but was held back (payments deferred) by the Debtor in each of those years with the promise of the Debtor to delivery said compensation to me five years hence from the respective year of service and payment (i.e., 2003 earned but deferred compensation to be paid in 2008; 2004 earned but deferred compensation to be paid in 2009; 2005 earned but deferred compensation to be paid in 2010, etc).

I object to the Debtor objection that my claims be reclassified as an equity interest on the ground that it is based on either restricted stock units, contingent stock awards, or other equity-related compensation, both distributed and not distributed, and vested and unvested (collectively, the "Equity Awards"), and that ownership of the Equity Awards constitutes an equity interest in a Debtor but does not constitute a claim against a Debtor's estate as such term is defined in section 101 of title 11 of the United States Code (the "Bankruptcy Code").

I object for the following reasons:

1

1. The practice of deferring a portion of compensation earned by an employee in any one year was long held and established at the Debtor. This practice was established well before the Debtor was a public company and thus well before there was any outstanding equity in the Debtor. Specifically, well prior to the Debtor's spin-off and IPO in 1994, the Debtor used such a "compensation scheme" of deferring a portion of each year's earned compensation until paying it out at a pre-specified future date. <u>Since this practice existed well before the Debtor was ever a public company, it was impossible that this deferred compensation represented equity in the Debtor since no equity existed</u>. Instead, it was a scheme designed to hold-back compensation earned by employees (payable by the Debtor) until a future distribution date. This very practice was continued once the Debtor became a public company. The deferred compensation represents a liability of the Debtor to employees. This Debtor liability to employees holds a priority status over other liabilities of the Debtor.

2. Under Generally Accepted Accounting Principles (GAAP) the compensation owed yet deferred under the compensation scheme was not equity. It only became common stock <u>issuable</u> once the compensation was amortized. It only became equity once it was delivered which was 5 years after it was granted.

   <u>Since the deferred compensation was not immediately expensed or amortized, under GAAP it was not equity</u>. <u>All financial statements issued by the Debtor reflected the fact that the deferred compensation was not equity</u>. The practice of the Debtor was to amortize the deferred compensation over 3 and 5 year horizons (i.e., part of deferred compensation in any one year was amortized over 3 years; part was amortized over 5 years; and the discount at which it was awarded was likewise amortized ). <u>Only once deferred compensation was amortized was it reflected in the Debtor's balance sheet in the Equity account as Common Stock *issuable*</u>.

   Thus, prior to amortization deferred compensation was NOT equity. After the deferred compensation was amortized it was only Common Stock ISSUABLE. *Common Stock issuable means common stock <u>capable of being issued</u>. It does NOT mean common stock ISSUED*. Only after the deferred compensation was delivered (i.e., after 5 years) was it equity. My claim is for deferred compensation which was not delivered and thus, was not equity.

   In fact, in the footnotes of the Debtor's Annual report it states "…the RSU Trust has had no effect on total equity, net income, or earnings per share of the company." If the Debtor now claims that the deferred compensation was equity then the Debtor filed false and misleading financial statements.

3. The practice of the Debtor was to buy-back stock in the market once it issued stock to employees. This practice was done to prevent dilution. The Debtor ONLY bought back stock in the market to prevent dilution once the deferred compensation was amortized and once the deferred compensation was reflected in the Debtor's balance sheet in the Equity account as Common Stock *issuable*. These buy-backs were done as an offsetting entry in the Equity account. These buy-backs were done in anticipation, and for the management, of the Debtor's delivery of equity at a future date. <u>This practice of only</u>

<u>buying back stock to prevent dilution is further evidence that the Debtor NEVER considered the deferred compensation awards as equity under GAAP</u>. Again, if the Debtor now claims that the deferred compensation was equity then the Debtor filed false and misleading financial statements with respect to common stock outstanding, net income, EPS, ROE and with respect to dilution.

4. If the deferred compensation was equity as the Debtor now claims, then the Debtor has violated United States Securities Regulations protecting investors by preventing employees, against their will, to exercise their rights under securities law. Specifically, employees were not permitted to (i) dispose of the deferred compensation, (ii) hedge the deferred compensation, or (iii) short the Debtor's stock. Employees were disadvantaged relative to other equity holders by this practice if the Debtor now claims the deferred compensation was equity.

5. If the deferred compensation was equity as the Debtor now claims, then the Debtor has violated United States Securities Regulations concerning Market Manipulation since the Debtor purposely prohibited the free sale of its equity and short sales of its equity.

6. If the deferred compensation was equity as the Debtor now claims, then the Debtor has violated United States Securities Regulations protecting investors voting rights. Specifically, employees did not have voting rights attached to their deferred compensation equal to other common equity holders. Employees did not have the same rights to vote as did other holders of equity in the Debtor and were thus, disadvantaged by the Debtor relative to other equity holders if the deferred compensation was equity as the Debtor now claims.

7. In its annual financial planning, the Debtor essentially treated deferred compensation as a liability to its employees. Every year when the Debtor did its financial planning for the following year it went through an exercise of establishing balance sheet, cash capital and risk appetite limits. It was common practice during those planning exercises for the Debtor to treat the "compensation and benefits" ratio as something which could be varied in order to hit financial targets. Furthermore, the practice was to use the deferred compensation portion of total compensation as something that could be increased in times of potential revenue shortfalls. The Debtor essentially treated deferred compensation in its financial planning as a liability to employees, not as equity.

8. The practices of the Debtor, the financial reporting and filings with regulators, the audited financials, and the restrictions put on employees by the Debtor, show deferred compensation was not equity.

By Madelyn Antoncic  *M. Antoncic*

Submitted to
The Honorable James M. Peck
One Bowling Green  Courtroom 601
New York, New York  10004

Weil Gotshal & Manges LLP
767 Fifth Avenue
New York, New York  10153
Attn: Robert J. Lemons, Esq. and Mark Bernstein, Esq.

The Office of the United States Trustee for Region 2
33 Whitehall Street  21st floor
New York, New York 10004
Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq., and Andrea Schwartz, Esq.

Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, New York  10005
Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.

FILED
U.S. BANKRUPTCY COURT
2011 MAY 17  P 1:25
S.D. OF N.Y.