D. Ross Martin (*pro hac vice*)
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

*Attorney for FYI Ltd.,
FFI Fund Ltd., and Olifant Fund, Ltd.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| Lehman Brothers Holdings Inc., et al., | Case No. 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF FYI LTD., FFI FUND LTD., AND OLIFANT FUND, LTD.
TO THE DEBTORS' ONE HUNDRED AND THIRTY-SECOND OMNIBUS
OBJECTION TO CLAIMS (VALUED DERIVATIVE CLAIMS)**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

FYI Ltd. ("FYI"), FFI Fund Ltd. ("FFI"), and Olifant Fund, Ltd. ("Olifant" and, together with FYI and FFI, the "Funds") hereby file their response in opposition to the Debtors' One Hundred and Thirty-Second Omnibus Objection to Claims (Valued Derivative Claims) (the "Objection"), which objects to the claims numbered 21714, 21715, 21716, 21717, 21718, and 21719 (the "Claims") that the Funds filed against Lehman Brothers Special Financing Inc. ("LBSF") and Lehman Brothers Holdings Inc. ("LBHI").

26704629_5

**Preliminary Statement**

1.      Olifant filed Claim No. 21715 against LBSF in the amount of $24,224,740.00 and Claim No. 21714 against LBHI in the same amount.  FYI filed Claim No. 21717 against LBSF in the amount of $45,609,450.00 and Claim No. 21716 against LBHI in the same amount.  FFI filed Claim No. 21718 against LBSF in the amount of $192,466,323.00 and Claim No. 21719 against LBHI in the same amount.  The Funds' claims against LBSF arise out of derivative transactions with LBSF that the Funds terminated after LBHI filed a petition for bankruptcy protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The claims against LBHI are based on LBHI's guarantees of LBSF's obligations with respect to those transactions.

2.      The Funds' claims against LBSF were properly calculated in accordance with the parties' agreements.  The Funds' claims against LBHI are based on the same calculations, since they arise from LBHI's unconditional guarantee of payment of LBSF's obligations.  The Debtors proffer no evidence to suggest that these calculations are in error, or not in accordance with the parties' agreements, or otherwise incorrect.  Nevertheless, the Objection asks this Court to reduce the amount of the Claims by approximately 90% and to allow the Claims only in dramatically reduced amounts, based solely on the Debtors' assertions of what the Debtors would find fair and reasonable.  Because the Objection offers no supporting evidence, the Debtors have not, and cannot, overcome the *prima facie* validity that attached to the Claims.  Further, the Debtors ignore one of the most fundamental tenets of bankruptcy law: that state law determines the allowable amount of a claim (subject only to certain provisions of section 502(b) of the Bankruptcy Code, none of which are applicable here).  Instead, the Debtors somehow think they can merely substitute their own conception of "fairness" in determining the allowed claim.  Notably, the Debtors do not cite a single Bankruptcy Code provision or case in

support of their objection to the allowable amount of the claim. Accordingly, the Objection must be overruled as it applies to the Claims.

## Background

4. LBSF was party to three ISDA Master Agreements, one with Olifant (dated as of August 26, 2004), one with FYI (dated as of January 21, 1998), and one with FFI (dated as of January 21, 1998) (each, together with a schedule to the ISDA Master Agreement and a credit support annex, a "Master Agreement" and, collectively, the "Master Agreements"). LBHI unconditionally guaranteed LBSF's obligations under each Master Agreement pursuant to three Guarantees in favor of Olifant, FYI, and FFI respectively, each dated on or around the date of the Master Agreement with such Fund.

5. LBHI filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 15, 2008. This constituted an Event of Default under Section 5(a)(vii) of each Master Agreement. Each Fund delivered a notice to LBSF the same day terminating all transactions under its Master Agreement and designating that day as the "Early Termination Date" under the Master Agreement. On October 27, 2008, each Fund delivered to LBSF a calculation statement (the "Calculation Statements") notifying LBSF of the amounts due under its Master Agreement. The Funds calculated these amounts, which reflected the total settlement amount for all outstanding transactions under each Master Agreement, using the "Second Method" under Part 1(f) of the schedule to each Master Agreement.

6. On September 21, 2009, the Funds timely filed proofs of claim for the Claims. In the proofs of claim, each Fund supplemented its Calculation Statement with the Fund's calculation of the interest and costs the Debtors owe under the Master Agreements. On or before October 21, 2009, the Funds filed the Derivative Questionnaires and Guarantee Questionnaires for their claims against LBSF and LBHI, respectively.

7. Throughout this process, the Funds have cooperated with the Debtors' requests for additional information.[1]

8. By the Objection, the Debtors seek to reduce the Claims by approximately 90%. Their sole purported justification for this demand is an unsupported and unexplained statement that the Claims are "greater than the fair, accurate, and reasonable values determined by the Debtors." Objection at ¶ 11. The Debtors have not provided any justification supporting their valuations, nor have they asserted that the Funds improperly calculated the Claims under the methodology of the Master Agreements. The Debtors' Objection, as it applies to the Claims, must therefore be overruled.

**Argument**

9. A proof of claim, timely and properly filed, is *prima facie* evidence of the validity and amount of the claim. See Fed. R. Bankr. P. 3001(f); see also In re DJK Residential LLC, 416 B.R. 100, 104 (Bankr. S.D.N.Y. 2009); In re Hess, 404 B.R. 747, 750 (Bankr. S.D.N.Y. 2009). "To overcome this *prima facie* evidence, the [Debtors] must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." Sherman v. Novak (In re Reilly), 245 B.R. 768, 773 (B.A.P. 2d Cir. 2000); In re Alper Holdings USA, 2008 Bankr. LEXIS 86 at *10 (Bankr. S.D.N.Y. Jan. 15, 2008) (a party filing an objection to a properly filed proof of claim bears the burden of producing "evidence sufficient to negate the prima facie validity of the filed claim."); see also Riverbank, Inc. v. Make Meat Com. (In re Make Meat Corp.), 1999 WL 178788 at *3 (S.D.N.Y. Mar. 31, 1999) ("[o]nce the claimant has

---

[1] The Debtors claim that the Debtors' negotiations with the Funds have reached an "impasse." See Objection at ¶ 16. The only impasse has been of the Debtors' own making. The Funds have provided thorough and timely responses to all of the Debtors' information requests. The Debtors have failed to respond to any of the Funds' information requests whatsoever. And they have failed to respond to any of the Funds' requests for explanations of the Debtors' valuations. By refusing to provide the Funds any basis for negotiation, the Debtors have generated this impasse – not the Funds.

established its prima facie case, the burden of going forward then shifts to the debtor to produce evidence sufficient to negate the prima facie validity of the filed claim"); <u>In re Woodmere Investors Ltd. P'ship</u>, 178 B.R. 346, 354-55 (Bankr. S.D.N.Y. 1995) (overruling debtor's objection to claim where debtor failed to offer any evidence to support its contention that the claim was unreasonable).

        10.     To overcome the *prima facie* effect of a properly filed proof of claim, the objecting party must "affirmatively <u>produce</u> evidence." <u>In re Make Meat Corp.</u>, 1999 WL 178788, at *4 (emphasis in original). That evidence must "refute at least one of the allegations that is essential to the claim's legal sufficiency." <u>In re Oneida Ltd.</u>, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). Thus, the burden shifts back to the claimant if, and only if, the objecting party meets the burden. <u>In re Reilly</u>, 245 B.R. at 773; <u>In re Martinez</u>, 409 B.R. 35, 38 (Bankr. S.D.N.Y. 2009).

        11.     Here, the Debtors have produced no evidence whatsoever to support their request that the Court reduce the Claims by approximately 90%. Merely stating that the Claims are "greater than the fair, accurate, and reasonable value of the claim as determined by the Debtors after a review of the supporting documentation provided by the claimants and the Debtors' books and records," Objection at ¶ 13 — the sole purported justification proffered by the Debtors — does not come close to satisfying the Debtors' burden. This solitary unsupported statement does not constitute evidence at all, much less "evidence [that], if believed, would refute at least one of the allegations essential to the claim." See <u>In re Reilly</u>, 245 B.R. at 773. The Debtors have failed to give the Funds or this Court any insight into their rationale for reducing the Claims.

12. Indeed, the Objection fundamentally misunderstands the basis for allowing claims in bankruptcy, when the Debtors assert that somehow their determination of "fairness" is the standard. It is completely clear that state law determines the allowable amount of a claim, subject only to limited exceptions set forth in section 502(b) of the Bankruptcy Code, none of which are relevant here. See Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000). The notion that the Debtors' determinations are at all relevant to the Claim values contradicts the plain language of Section 6(e) of the Master Agreements. See Master Agreement § 6(e) ("[I]f an Early Termination Date is deemed to occur and there is a Defaulting Party. . . . the *other party* will determine the Settlement Amount in respect of the Terminated Transactions.") (emphasis added). The *post-hoc*, idiosyncratic determinations in the Objection, and the Debtors' unsupported assertions about which values are fair or reasonable, have nothing to do with the agreements embodied in that unambiguous language. The Debtors' determinations therefore have nothing to do with the value of the Claims under the Bankruptcy Code.

13. Accordingly, the Objection, as it applies to the Claims, must be overruled.

**Conclusion**

WHEREFORE, for the foregoing reasons, the Funds respectfully request that this Court (a) deny the Objection as to the Claims, (b) allow the Claims against LBSF and LBHI of (i) Olifant in the amount of $24,224,740.00, (ii) FFI in the amount of $192,466,323.00, and (iii) FYI in the amount of $45,609,450.00, and (c) grant such other relief as this Court deems just and proper.

26704629_5

Dated: May 18, 2011
      Boston, Massachusetts

ROPES & GRAY LLP

/s/ *D. Ross Martin*_____
D. Ross Martin (*pro hac vice*)
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Telephone: (617) 951-7000
Facsimile: (617) 951-7050

*Attorney for FYI Ltd.,
FFI Fund Ltd., and Olifant Fund, Ltd.*

-7-

26704629_5