Law Office of A. James Boyajian
333 S. Grand Ave., 25th Floor
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile: 323.887.0891

Attorney for Priority Claimant Jeffery K. Wardell

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re:** | |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.,* | **Chapter 11**<br>**Case No. 08-13555 (JMP)**<br>**Jointly Administered** |
| **Debtors.** | |

**RESPONSE AND OPPOSITION OF PRIORITY CLAIMANT JEFFERY K. WARDELL
(CLAIM # 14743) TO "DEBTORS' ONE HUNDRED SEVENTEENTH OMNIBUS
OBJECTION TO CLAIMS (NO LIABILITY NON-DEBTOR EMPLOYEE CLAIMS)"**

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Jeffery K. Wardell (the "Priority Claimant") submits this response and opposition to

"Debtors' One Hundred Seventeenth Omnibus Objection to Claims (No Liability Non-Debtor

Employee Claims)," which was filed on March 25, 2011 (the "Debtors' Objection") by Lehman

Brothers Holdings, Inc. ("LBHI") and its affiliated debtors in the above-captioned cases

(collectively, the "Debtors"). Priority Claimant is an individual who timely filed two separate

claims in the above-captioned Chapter 11 cases, including an 11 U.S.C. § 507(a)(4) priority

claim for $9,365.10 in unpaid wages, salaries, or compensation for services he performed as a

Senior Vice President of Lehman Brothers' San Francisco Office (the "Claim #14743"). He

hereby objects to Debtors' request for disallowance and expungement of his Claim #14743 based on the following reasons, factual representations, and legal foundations:

### Summary of Arguments

1. Priority Claimant files this response to Debtors' Objection through the Court's Case Management/Electronic Case File ("CM/ECF") System, in preparation for the hearing set for June 2, 2011, and pursuant to §§ 501, 502, and 507 of the United States Bankruptcy Code (the "Bankruptcy Code"), Rules 3001, *et. seq.,* and 7001, *et. seq.,* of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), General Orders M-182 and M-399, and the Second Amended Case Management Order (the "Second Amended Order") [Docket #9635], to request that this Court deny and overrule Debtors' Objection because Claim #14743 was timely and accurately asserted against the appropriate entity, Debtor LBHI.

2. Specifically, the proof of claim filed by Priority Claimant on September 17, 2009 should be allowed because of four alternative arguments as discussed further below: (A) Debtors' Objection fails to make an effective objection which refutes any of Claim #14743's essential allegations; (B) Claim # 14743 is a valid claim against Debtor LBHI, since Priority Claimant was at all times an LBHI employee, was led to believe that he was at all times an LBHI employee, and rendered services for LBHI; (C) Lehman Brothers Incorporated ("LBI"), a non-Debtor affiliate, is an alter ego of LBHI and this Court should pierce the corporate veil which LBHI is using to unjustly shield itself from compensating its workers; and (D) disallowance and expungement of this 507(a) priority claim, if granted, would render an unjust result that is unfair and contrary to the letter and spirit of the Bankruptcy Code because Priority Claimant's hard work benefitted Debtors and he would likely have no other recourse to recover these claims for unpaid wages, salaries, or compensation from non-Debtor entities.

2

## Jurisdiction

3. This Court has proper jurisdiction to consider and determine a resolution to this matter pursuant to 28 U.S.C. §§ 157 and 1334, because this is a "core proceeding" which will affect ultimate administration of and distributions from Debtors' bankruptcy estate.

## Factual Background

4. Priority Claimant was employed as a "Senior Vice President" at Lehman Brothers' San Francisco Office, from April 6, 2001 to September 17, 2008 (Exhibit 1 entitled "General Affidavit Under Oath of Jeffery K. Wardell"; Exhibit 1A entitled "Original Employment Agreement").

5. From the outset, Priority Claimant was an LBHI employee. Upon agreeing to work for Lehman Brothers, Priority Claimant was enrolled in the LBHI "Employee Incentive Plan," which was given only to "selected officers, employees, consultants and directors of Holdings and its subsidiaries" (Exhibit 1B entitled "Lehman Brothers Equity Reward Program for Senior Vice Presidents / Lehman Brothers Holdings Inc. Employee Incentive Plan . . . pursuant to the Holdings Employee Incentive Plan (the "EIP") and the Holding 1996 Management Ownership Plan (the "1996 Plan")). Furthermore, and importantly, the letterhead on which Lehman Brothers' Director of Human Resources offered Priority Claimant employment simply states "Lehman Brothers" on its header and footer. It does not mention or distinguish between LBHI and LBI, and refers to Lehman Brothers only as "the firm" which would issue Priority Claimant "cash commissions and RSUs." (Exhibit 1A).

6. For over seven years, Priority Claimant was led to believe and still believes that he was an employee of LBHI until the day he resigned (Exhibit 1, Page 2, Paragraphs 8-9). Priority

3

Claimant received wages, salaries, commissions, stock, and benefits, as well as W-2 and 1099

tax forms from both LBHI and its wholly-owned subsidiary LBI (See, e.g., Exhibit 1, Page 2,

Paragraph 8; Exhibit 2, a 1099-B form addressed from LBHI), unequivocally indicating that he

has previously received work-related compensation from LBHI in exchange for his work for

Lehman Brothers. At no point was he ever led to believe that he was not an LBHI employee by

his supervisors or anyone else at Lehman Brothers. (Exhibit 1, page 2, paragraph 9).

 7. Lehman Brothers and its affiliates commenced these Chapter 11 bankruptcy cases on

Monday, September 15, 2008. Priority Claimant handed in his resignation and exited the office

building with all of his personal effects two days later on Wednesday, September 17, 2008.

 8. In early September 2009, Priority Claimant was provided with blank "proof of claims"

forms by Epiq Bankruptcy Solution, LLC ("Epiq") and instructed to file any claims he had in

these Debtors' cases (Exhibit A, paragraph 6). He immediately filled out and filed two proof of

claims on September 13 and 14, 2009 against LBHI for unpaid compensation and unpaid

deferred compensation, relying on the understanding that he had been an LBHI employee for

over seven years. (Exhibit 1, paragraph 7).

 9. Priority Claimant thought the above proof of claims were all that would be need to

recover his unpaid compensations and had absolutely no notice or knowledge of the separate LBI

SIPA liquidation proceeding until he received the Notice of Debtors' Objection on March 30,

2011. (Exhibit 1, Page 2, Paragraph 10). At no point was Priority Claimant ever notified by Epiq,

Debtors, non-Debtor affiliates nor any of their representatives, agents, attorneys, or officials that

LBI was under a separate SIPA liquidation proceeding. Nor was he provided with any forms to

file a proof of claim in that separate proceeding in order to receive his unpaid wages, salaries,

commissions, deferred compensation benefits, or other compensation or benefits as an employee

of Lehman Brothers. (Exhibit 1, Page 2, Paragraph 12).

10. According to the SIPC website for the LBI SIPA liquidation, it is far too late to file a

proof of claim in that administrative proceeding: "For the avoidance of doubt, claims of

customers seeking the maximum protection under SIPA must be received by the Trustee on or

before January 30, 2009 . . . No claim of any kind will be allowed unless received by the Trustee

on or before June 1, 2009." https://www.lbiclaim.com/ (Last visited, May 17, 2011).

11. To this day, Lehman Brothers has failed to pay Priority Claimant $9,365.10 in wages

(Exhibit 1C), salaries, or compensation as well as $50,638.80 in unpaid deferment compensation

(Exhibit 1D).


### Argument (A): Claim # 14743 Should be Allowed Because Debtors' Objection Fails to Refute or Effectively Object to Any of the Claim's Essential Allegations

12. A "claim" is defined in "11 U.S.C. 101(5) as a (A) right to payment, whether or not

such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an

equitable remedy for breach of performance if such breach gives rise to a right to payment,

whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent,

matured, unmatured, disputed, undisputed, secured or unsecured."

13. A proof of claim is "deemed allowed, unless a party in interest objects." 11 U.S.C. §

502(a). Rule 3001(f) of the Bankruptcy Rules, "A proof of claim executed and filed in

accordance with these rules shall constitute prima facie evidence of the validity and amount of

the claim." *See, e.g., In re 183 Lorraine St. Assoc.* (Bankr. E.D.N.Y. 1996); *In re Angeles Corp.,*

177 B.R. 920 (Bankr. C.D.Cal. 1995). To overcome the Rule 3001(f) presumption and serve as

an effective objection under § 502(a), the objection must "refut[e] at least one of the claim's

essential allegations[.]" in order to shift the burden to the claimant to demonstrate the validity of

the claim. *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia*

*Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb.

20, 2007); *In re Rockefell er Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

13. Priority Claimant timely and accurately filed a proof of claim on September 17, 2009

for Claim #14743. (See Exhibit 1C). As such it stated a prima facie valid priority claim for

$9,365.10 in unpaid compensation under §§ 501, 502(a), 507(a)(4), and Rule 3001(f). In order to

overcome the presumptions of validity, Debtors' Objection needs to refute at least one of Priority

Claimant's essential allegations. However, Debtor both fails to show any evidence as to its

assertions and fails to make an argument that refutes any of the essential allegations made in

Claim #14743. "The Debtors' records indicate that the claimants were employees of Lehman

Brothers Inc. ("LBI") or other non-Debtor entities. The Debtors have no liability for the

compensation-related obligations of LBI and other non-Debtor affiliates and no liability for any

No Liability Non-Debtor Employee Claim" (Debtors' Objection, Page 2, Paragraph 2). This

statement is ineffective as an objection under § 502(a)-(b) for several reasons: (1) it posits zero

evidence to show that Priority Claimant was not an LBHI employee or contractor, (2) it

fallaciously presumes that because a creditor was officially recorded as an employee of a non-

Debtor entity, it could not also concurrently or supplementally work as an employee,

independent contractor, or de facto laborer for a Debtor entity, and (3) it fallaciously presumes

that just because a creditor was officially recorded as an employee of a non-Debtor entity, it

could not also be entitled to compensation for rendering services that directly or indirectly

6

benefit a Debtor entity. Given these logical flaws, such a lethargic objection cannot refute an essential allegation – that LBHI is liable to Priority Creditor for unpaid compensation for benefits it received from his services whether or not Priority Creditor was an LBHI employee.

14. Along the same lines is the next argument: "The Debtors reviewed their records and determined that none of the claimants were employees of the Debtors, but were employees of non-Debtor entities such as LBI . . . and as a result, those non-Debtor employers are liable for such compensation claims." (Debtor's Objection, Page 4, Paragraph 10). First of all, § 507(a) does not require an individual to be an "employee" to be entitled to wages, salaries, sales commissions, or other compensation. And once again, this statement neither accounts for the possibility that creditors can effectively serve as employees of both entities nor the possibility that they are entitled to non-employee compensation under equitable remedy theories such as quantum meruit, promissory estoppel, implied-in-fact contract, or restitution. Recall the definition of "Claim" in paragraph 12 above.

15. Thus Claim #14743 should be allowed because Debtor has not posited an effective objection to shift the burden.

## Argument (B): Claim # 14743 should be Allowed Because it is a Valid Claim Against Debtors in that it alleges facts sufficient to support a legal liability owed by LBHI

16. Even if this Court deems Debtors' objection has shifted the burden, Claim #14743 should still be allowed because the following demonstrates that it is a valid claim. A claim is valid if it gives right to a payment, whether by law or in equity. 11 U.S.C. § 101(5). However, §502(b)(1) provides, in relevant part, that a claim may not be allowed to the extent that "such

claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."

17. As discussed in the "Background" section above, Priority Claimant is advancing Claim #14743 not against non-Debtor LBI, but rather quite consciously against LBHI. After all, he worked for "Lehman Brothers" over seven years as a Senior Vice President and was at all times led to believe that he was an LBHI employee. These assurances came from multiple sources including the letterhead used by the firm, supervisors, shared office buildings (i.e., their "Lehman Brothers" San Francisco and New York Office buildings) and financial resources between the entities, as well as the compensations and benefits he received from LBHI over the years. The facts discussed above indicate that he was indeed an LBHI employee.

18. The amount claimed in unpaid compensation is for financial services that Priority Claimant believes he rendered for "Lehman Brothers" and LBHI, not LBI. LBHI and LBI shared office locations, managers, human resources, financial resources, and clients to generate business for one another. (See, Jenner & Block, "Lehman Brothers – Company Overview; Third Quarter 2007," available at http://lehmanreport.jenner.com/docs/BARCLAYS/LBEX-LL%202165164-2165176.pdf, last visited 5/17/2011; stating that "LBI funds most its activities through many of the sources utilized by LBHI, including the $9 billion CP program[.]") Because LBI was a wholly-owned subsidiary, it is at best equivocal whether the services rendered were truly commissioned to benefit only LBI or also LBHI? The more plausible conclusion is the latter. Even if Priority Claimant was officially (and without knowledge) an LBI employee or contractor on the records that Debtors' Objection cites, the slight chance that his hard work benefitted LBHI means that his claim should be allowed to move forward for distribution as part of the estate.

8

**Argument (C): Alter Ego/Piercing the Veil to Avoid Injustice to Priority Creditor**

19. Even if this Court is unwilling to find that Priority Claimant was actually or effectively an employee of contractor of LBHI, it should pierce the corporate veil by recognizing that LBI is nothing more than an alter ego for LBHI.

20. To show alter ego and/or pierce the veil of the holding company, a two prong-test must be satisfied in the Second Circuit: (1) the corporation was operated as a mere tool, instrumentality, or business conduit of the parent shareholder, and (2) the corporation was operated in such a manner that respect for the corporate shield would result in an unjust injury. *Passalachua Builders, Inc. v. Resnick Developers south, Inc.* 933 F.2d 131 (2d Cir. 1991); *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979).

21. LBI was a mere instrumentality of LBHI. Prior to September 19, 2008, LBI was a wholly-owned subsidiary of LBHI, was entirely controlled by LBHI, and was functionally a shell corporation financed and man-powered by the resources of LBHI. The two companies shared many of the same resources, whether physical, monetary, or human resources, operations, or properties. They used the same equivocal letterhead stating "Lehman Brothers" and failed to show distinct formalities even to their highest ranking employees such as Senior Vice Presidents. In sum, they are hardly any different than two internal divisions within the same business entity.

23. Upholding the corporate façade between these intertwined organizations would result in unjust injury to Priority Claimant and presumably many others. Lehman Brothers is hiding its assets in LBHI while it pawns off its liabilities, such as 507(a)(4) priority claim obligations to its loyal workers, to LBI for liquidation. It is using the corporate veil to effectively avoid paying its dues as required by the bankruptcy code. The unjust injury is clear in this case: if the Court refuses to hold LBHI liable under alter ego theory, piercing the veil theory, or any alternative

theory it finds appropriate, Priority Claimant will be deprived of just compensation worth

thousands of dollars and countless hours. As stated above, it is now too late to file a proof of

claim in the LBI SIPA proceedings; and yet that is essentially what Debtors' Objection suggests

for Priority Client and 365 other claimants to do. Even if the Trustee administering that

liquidation proceeding agrees to allow a tardy filing of a proof of claim, the chances of any

recovery for such § 507(a)(4) priority claims will be significantly diminished.

24. Because LBI was an indistinguishable instrumentality of LBHI and because not

holding LBHI liable to Priority Claimant's unpaid compensation claim would result in an

effective forfeiture of that claim, this Court should take action under any one or more of the

theories advanced herein.

### Argument (D): Claim # 14743 Should be Allowed Because Disallowance and Expungement Would Render an Unjust and Unfair Result that is Contrary to the Bankruptcy Code

25. Even if this Court deems that piercing the veil or alter-ego liability is unwarranted in

this situation, it should allow Priority Claimant's § 507(a)(4) claim to proceed because to

disallow and expunge it would be an unfair and unjust result.

26. Priority Claimant was given absolutely no notice by Debtors, Epiq, Courts, Trustees,

Officers, Examiners, nor any other parties or administrators involved in these cases. The first

time Priority Claimant heard about the LBI cases was when he was served Notice in this

Debtors' Objection on March 30, 2011. However, as noted above, the SIPC Trustee stated that

"No claim of any kind will be allowed unless received by the Trustee on or before June 1, 2009."

And even if it were, it is now two years after the proof of claim filing cutoff in that proceeding.

Even if a tardy filing is somehow miraculously allowed to enter into the administration of the

liquidation estate, the amounts that Priority Creditor and other similarly situated creditors may recover will be unfavorable, severely diminished, and likely nonexistent. Thus, there is virtually no other recourse for Priority Claimant if this Court rules in favor of Debtors' Objection.

27. Moreover, disallowing and expunging these claims entirely would run contrary to the letter and spirit of the Bankruptcy Code. As a matter of policy, it would be unpalatable to allow Lehman Brothers to get away scot-free from its § 507(a)(4) obligations to pay unpaid wages, salaries, commissions, benefits, and compensation to employees, contractors, and others who have spent many years working persistently to benefit its overall business endeavors. There is a reason why § 507(a) provides a hierarchy of priorities to certain claimants. Workers are among the highest rung of that list because it is important to our society to compensate people for their hard work and assure them that their efforts in supporting their own livelihood will not be in vain. Moreover, the Bankruptcy Code tries to strike a balance between debtor and creditor interests. *See, e.g., In re Energy Res. Co.*, 871 F.2d 223, 230 (1st Cir. 1989) (observing that the Bankruptcy Code's twin purposes—"ensure fair payment to creditors and provide the bankrupt firm with an opportunity to make a 'fresh start'"—are "often conflicting"), *aff'd*, 495 U.S. 545 (1990). The claims made by Priority Claimant are earnest and valid claims asserted against a large and complex, multi-entity institution. They must be balanced against the interests of the Debtors and of other creditors, not disallowed and expunged based on intricate technicalities.

28. The bottom line seems to be that Lehman Brothers is indebted to Priority Claimant, whether through its wholly-owned subsidiary LBI or through actual or equitable debt assumed by LBHI in benefitting from Priority Claimant's financial services, whether or not he was an actual LBHI employee. Because to grant Debtors' Objection would be unfair, unjust, and

11

contrary to the organization and spirit of the Bankruptcy Code, this Court should dismiss Debtors' Objection and allow the legitimate Claim #14743 to proceed in these cases.

### Reservation of Rights

29. Priority Claimant reserves the right to amend this response, conduct discovery, and add any additional relevant details to the extent allowed under law and by this Court. Priority Claimant also reserves all rights to object on any basis to any other claims, objections, or responses made by Debtors at the hearing, in subsequent court filings, and in unrelated cases and controversies involving both Debtors and any non-debtor entities. Priority Claimant does not agree to release any non-debtor parties from liability regardless of the outcome of this issue.

### Representation

30. Priority Claimant has granted to Armen James Boyajian, Esq., his attorney in fact and attorney at law whom is duly admitted by Order (See Exhibit 4) to practice *pro hac vice* in this Court, the ultimate authority to reconcile, settle, or otherwise resolve Claim # 14743 on his behalf (See Exhibit 5). Any replies by Debtors or questions regarding this response should be directed to the Law Office of A. James Boyajian, at its below-stated address, e-mail address, or telephone number.

### Service

31. Pursuant to the Second Amended Order, counsel for Priority Claimant, A. James Boyajian hereby declares under penalty of perjury under the laws of the State of California that he has served this response document on all required parties, via hand-delivery made by Lawson Legal Services in New York City, New York (Telephone Phone # 646.667.3437), on May 18, 2011 prior to the Response Deadline of 4:00 PM Eastern Standard Time at the following addresses: (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York,

New York 10004, Courtroom 601; (ii) attorneys for the Debtors, Weil, Gotshal & Manges LLP,

767 Fifth Avenue, New York, New York 10153 (Attn: Shai Y. Waisman, Esq.); (iii) the Office

of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York

10004 (Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.);

and (iv) attorneys for the official committee of unsecured creditors appointed in these cases,

Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York

10005 (Attn: Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.). Priority

Claimant understands and submits that no other service need be provided and that this paragraph

supplements the "Proof of Service" as attached hereto as Exhibit 3.

WHEREFORE, Priority Claimant respectfully requests (1) denial of Debtors' request for

an order disallowing and expunging Claim #14743 as part of Debtors' Objection, (2) allowance

of Claim #14743 to proceed as a legitimate § 507(a)(4) priority claim against Debtor LBHI, and

(3) such other further relief as this Court deems appropriate in the interest of justice.

Dated: May 18, 2011
Los Angeles, California

By: /s/  A. James Boyajian_____
A. James Boyajian
Law Office of A. James Boyajian
333 S. Grand Ave., 25th Floor
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile: 323.887.0891

Attorney for Priority Claimant Jeffery K. Wardell.

13

# Exhibit 1

<u>General Affidavit Under Oath of Jeffery K. Wardell</u>

1. I, Jeffery K. Wardell ("Declarant"), am a resident of San Francisco, County of San Francisco, State of California, and do hereby certify, swear or affirm, and declare under penalty of perjury that I am competent to give the following declaration based on my personal knowledge and that the following facts and things are true and correct to the best of my knowledge:

2. I was employed as a "Senior Vice President" of Lehman Brothers, in the San Francisco branch office of Lehman Brothers, from April 06, 2001 to September 17, 2008. See offer of employment letter attached herein as Exhibit "A".

3. Lehman Brothers filed for Chapter 11 bankruptcy protection on Monday, September 15, 2008.

4. My employment with Lehman Brothers ended when I handed in my resignation and exited the office building with all of my personal effects on Wednesday, September 17, 2008.

5. Lehman Brothers still owes me $9,365.10 in unpaid employee wages as well as $50,638.80 in unpaid deferred compensation (withheld in accrual and was never issued as "Restricted Stock Units" under their "Senior Vice Presidents Equity Award Program"; see Exhibit "B" attached herein), which is money that I earned through my hard work as an employee of Lehman Brothers within 180 days prior to Lehman Brothers' filing for Chapter 11 bankruptcy protection.

6. In September 2009, I was provided with blank forms by Epiq Bankruptcy Solutions, LLC and instructed to file "Proof of Claims" in the "In re: Lehman Brothers Holdings, Inc., et al. (Case No. 08-13555(JMP))" Chapter 11 consolidated bankruptcy proceedings.

7. I filed one Proof of Claim on September 13, 2009 for the unpaid $9,365.10 as a Priority Claim under 11 U.S.C. 507(a)(4)("(A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; or (B) sales commissions earned by an individual[.]") (herein attached as Exhibit "C") and another Proof of Claim on September 14, 2009 for the

Affidavit of Jeffery K. Wardell - Pg. 1

1  unpaid $50,638.80 as a Priority Claim under 11 U.S.C. 507(a)(5)("contributions to an employee

2  benefit plan.") (herein attached as Exhibit "D").

3

4  8. I was an employee of both Lehman Brothers Holdings, Inc. ("LBHI") and Lehman Brothers,

5  Inc. ("LBI") during the time that I worked for Lehman Brothers, having received wages, salaries,

6  commissions, stock, and benefits, as well as W-2 and 1099 tax forms, from both LBHI and LBI.

7

8  9. At no time during my employment with Lehman Brothers was I led to believe that I was not

9  an employee of LBHI by any of my superiors or anyone else at Lehman Brothers.

10

11  10. I never received any notice of LBI's withdrawal from the Lehman Brothers Chapter 11

12  consolidated bankruptcy proceedings and was not aware that LBI was no longer a listed Debtor

13  in the "In re: Lehman Brothers Holdings, Inc., et al. (Case No. 08-13555(JMP))" cases until I

14  received the "Notice of Hearing on Debtors' One Hundred Seventeenth Omnibus Objection to

15  Claims (No Liability Non-Debtor Employee Claims)" on March 30, 2011.

16

17  11. I never received any notice to file proof of claims against LBI in its SIPA liquidation

18  proceeding from Epiq Bankruptcy Solutions, LBI, LBHI, or anyone else.

19

20  12. Neither Lehman Brothers, nor Epiq Bankruptcy Solutions, nor any of their representatives,

21  agents, attorneys, or related entities or professionals notified me that I need to file a Proof of

22  Claim in any other proceeding than one listed in Paragraphs 6 and 7 above in order to receive my

23  unpaid wages, salaries, commissions, deferred compensation benefits, or other compensation or

24  benefits as an employee of Lehman Brothers.

25

26  WITNESS my signature this ___18th___ day of April, 2011.

27  _____

28  Signature of Declarant    JEFFERY WARDEN

Affidavit of Jeffery K. Wardell - Pg. 2

# Exhibit A / Exhibit 1A



# LEHMAN BROTHERS

*Original Employment Agreement.*

JEFFREY H. BOYLE
SENIOR VICE PRESIDENT
DIRECTOR OF HUMAN RESOURCES
PRIVATE CLIENT SERVICES

April 05, 2001

Mr. Jeffery K. Wardell
240 Scott Street
San Francisco CA, 94117

Dear Jeffery,

We are pleased to extend to you our offer of employment to join Lehman Brothers as an Investment Representative in the San Francisco branch office of Private Client Services. Your title of Senior Vice President will be submitted for official approval by the Executive Committee of our Board of Directors as part of the next quarterly approval process. We expect your employment to commence on or April 06, 2001.

1.   During the first 12 months of your employment by the Firm, you will earn total compensation in accordance with the following payout schedule:  High Net Worth (Retail) business (as determined by the Firm) 40%;  For all other products/businesses thereafter, you will earn total compensation in accordance with the Firm's standard payout formula.  In the event you are part of a 'team' assigned to any one or more accounts, you will receive payout only on your individual share of the gross production for such accounts.  The amount of any such share will be as agreed by team members and approved by the Firm in advance.  Payout includes cash commissions and RSUs.

2.   Within four weeks after your start date, provided we have received your executed offer letter and promissory note, you will receive ▓▓▓▓▓▓ in the form of a forgivable loan which will be forgiven in 5 equal installments of ▓▓▓▓▓ on the first through the fifth anniversaries of the commencement of your employment.  Both the amount of the forgiven principal and imputed interest as specified by applicable tax regulations for loans made at less than the market rate will be reported to you as income and will be subject to all applicable taxes.  You will be required on each forgiveness date to pay Lehman an amount equal to the applicable withholding tax with respect to the installment being forgiven on that date.   Should you separate from the Firm's employment for any reason prior to the forgiveness dates of this loan, you will be required to repay the then unforgiven balance of the loan in full, together with interest on such balance at the Firm's margin rate from your separation date.  Neither this loan nor the amounts reported to you as income in connection with respect to this loan will be considered part of your total compensation for purposes of the Firm's stock award program.

3.   The Firm will reimburse you for reasonable expenses associated with travel and client entertainment consistent with the Firm's standard policies.

Page 2

4. Except as otherwise provided in this letter, the Firm will have the right, without notice, to withhold any amounts payable to you as compensation or otherwise and apply such withheld amounts to repay any recoverable deficit or satisfy any indebtedness to the Firm to the maximum extent permitted by law. If any such deficit or indebtedness exists at the time of your termination of employment from the Firm, the Firm will have the right, to the maximum extent permitted by law, to recover such amount by offset against any amount otherwise awarded, credited or owing to you, including but not limited to amounts awarded to you under the Firm's Stock Award Program. By your signature below, you hereby authorize and consent to the aforementioned deductions.

5. Please understand that this letter is not a contract of continuing employment. Employment is for no fixed term, and either you or the Firm may decide to terminate the employment relationship at any time for any reason. In making this offer of employment, the Firm has relied on your representations (a) that you are not currently party to any agreement or dispute or litigation that might impede your ability to accept this offer or perform the duties of this position and (b) that you are not subject to any non-competition arrangement or other restrictive covenants that might affect your employment by the Firm as contemplated by this letter.

6. Please understand that the terms and conditions of your employment by our Firm are governed by standard Firm policies. Among other things, this means that you must have and maintain in good standing all applicable licenses and registrations. This also means that this offer of employment is contingent on the successful completion of a background investigation, as well as on your satisfactorily meeting all pre-employment requirements including producing documentation to verify your identity and eligibility to work in the United States.

7. This letter and your employment by the Firm shall be governed by the laws of the State of New York. By your signature below, you agree that any controversies arising out of or relating to this letter or your employment by the Firm, shall be submitted to and settled by arbitration pursuant to the rules of the National Association of Securities Dealers or the New York Stock Exchange.

8. You will be eligible to participate in the Firm's employee benefits program, in accordance with the terms of the applicable plans and programs, which will be described to you. The Firm reserves the right to change its benefits program, payout formula and other standard policies from time to time.

9. You will keep in strictest confidence the terms of this offer and will not disclose this letter or its terms to anyone other than your immediate family or professional advisors.

LEHMAN BROTHERS

1 WORLD FINANCIAL CENTER 29TH FLOOR NEW YORK NY 10281 TELEPHONE 646-836-1189

**Page 3**

Jeffery, we are enthusiastic and pleased that you are going to be a part of our organization. If you agree with the terms outlined in this letter, please acknowledge same by signing this letter and returning it to me. An additional copy of this letter is enclosed for your files.

Sincerely,

Jeffrey H. Boyle
Senior Vice President
Director of Human Resources
Private Client Services

Accepted and agreed to this _____ day of April 2001

by: _____
Jeffery K. Wardell

**Exhibit B / Exhibit 1B**

# 2001 Lehman Brothers Equity Award Program for Senior Vice Presidents

Front page of Brochue given upon employment for Restricted Stock Units



**LEHMAN BROTHERS**

PROSPECTUS

*Given @ Employment*

# Lehman Brothers Holdings Inc.
## Employee Incentive Plan
### 160,183,918 Shares of Common Stock

---

# Lehman Brothers Holdings Inc.
## 1996 Management Ownership Plan
### 29,463,913 Shares of Common Stock

---

This Prospectus relates to the granting of Incentive Stock Options, Non-qualified Stock Options, Limited Rights, Stock Appreciation Rights, Restricted Stock, and other awards of Common Stock and Awards that are valued by reference to Common Stock, including but not limited to RSUs (all as hereinafter defined), relating to the Common Stock, par value $.10 per share ("Common Stock"), of Lehman Brothers Holdings Inc. ("Holdings"), pursuant to the Holdings Employee Incentive Plan (the "EIP") and the Holdings 1996 Management Ownership Plan (the "1996 Plan"), to selected officers, employees, consultants and directors of Holdings and its subsidiaries.

---

THIS DOCUMENT CONSTITUTES PART OF A PROSPECTUS COVERING SECURITIES THAT HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933.

---

March 15, 2002

# Lehman Brothers Holdings Inc. Employee Incentive Plan

*As amended through March 15, 2002*

Given to me @ employment

# Exhibit C / Exhibit 1C

**United States Bankruptcy Court/Southern District of New York**
Lehman Brothers Holdings Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
FDR Station, P.O. Box 5076
New York, NY 10150-5076

# PROOF OF CLAIM

| In Re: Lehman Brothers Holdings Inc., et al. Debtors. | Chapter 11 Case No. 08-13555 (JMP) (Jointly Administered) | UNIQUE IDENTIFICATION NUMBER: 555153290 |
|---|---|---|
| Name of Debtor Against Which Claim is Held LEHMAN BROTHERS HOLDINGS, INC. | Case No. of Debtor 08-13555 (JMP) | |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Additionally, this form should not be used to make a claim for Lehman Programs Securities (See definition on reverse side.)

**THIS SPACE IS FOR COURT USE ONLY**

Name and address of Creditor: (and name and address where notices should be sent if different from Creditor)

LBH [MERGE2.DBF,SCHED_NO] SCHEDULE #: 555153290*****
JEFFERY K., WARDELL
2255 BUSH STREET#1
SAN FRANCISCO, CA 94115

Telephone number: 415.694.9949   Email Address: Wardell_1@gmail.com

Name and address where payment should be sent (if different from above)

Telephone number:              Email Address:

**NOTICE OF SCHEDULED CLAIM:**
Your Claim is scheduled by the indicated Debtor as:

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(*If known*)

Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

SCHEDULE G - EXECUTORY CONTRACT OR UNEXPIRED LEASE

DESCRIPTION:
RESTRICTED STOCK UNIT AGREEMENT

1. **Amount of Claim as of Date Case Filed:** $ 9365.10
If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*
*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2. **Basis for Claim:** UNPAID WAGES
(See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____
Value of Property: $ _____   Annual Interest Rate _____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ _____ Basis for perfection: _____
Amount of Secured Claim: $ _____ Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim:

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
☒ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).
☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).
☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).
☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).
☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)( ).

**Amount entitled to priority:**

$ 9365.10

6. **Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9):** $ _____
(See instruction #6 on reverse side.)

7. **Credits:** The amount of all pay[me]king this proof of claim.
8. **Documents:** Attach redacted co[pies of any] ssory notes, purchase orders, invoices, itemized statements security agreements. Attach redacted copies of documents [providing] e definition of "redacted" *on reverse side.*) If the documents an[e not available] DO NOT SEND ORIGINAL DOC SCANNING.
If the documents are not available, pl[ease]

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)      0000014743

STROYED AFTER

**FOR COURT USE ONLY**

FILED / RECEIVED
SEP 17 2009
EPIQ BANKRUPTCY SOLUTIONS LLC

| Date: 9/13/09 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.    JEFFERY WARDELL |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.



# Exhibit D / Exhibit 1D

| **United States Bankruptcy Court/Southern District of New York**<br>Lehman Brothers Claims Processing Center<br>c/o Epiq Bankruptcy Solutions, LLC<br>FDR Station, P.O. Box 5076<br>New York, NY 10150-5076 | **PROOF OF CLAIM** |

| In Re:<br>Lehman Brothers Holdings Inc., et al.<br>Debtors. | Chapter 11<br>Case No. 08-13555 (JMP)<br>(Jointly Administered) | UNIQUE IDENTIFICATION NUMBER: 1000245443 |
| Name of Debtor Against Which Claim is Held | Case No. of Debtor | |

Filed: USBC - Southern District of New York
Lehman Brothers Holdings Inc., Et Al.
08-13555 (JMP)                    0000024545

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503. Administrative expenses other than claims for Lehman Program Securities (see definition on reverse side).

TI

**Name and address of Creditor:** (and name and address where notices should be sent if different from Creditor)

LBH (CREDITOR.DBF,CREDNUM)CREDNUM # 1000245443******
WARDELL, JEFFERY K.
2255 BUSH STREET#1
SAN FRANCISCO, CA 94115

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:**_____
   (If known)

Filed on: _____

Telephone number: 415)694·9949  Email Address: wardell1@gmail.com

**Name and address where payment should be sent** (if different from above)

SAME AS ABOVE

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number: ____    Email Address: ____

| 1.  Amount of Claim as of Date Case Filed: $ 50,638.80 | 5.  Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount. |

1.  Amount of Claim as of Date Case Filed: $ 50,638.80

If all or part of your claim is secured, complete Item 4 below; however, if all of your claim is unsecured, do not complete item 4.
If all or part of your claim is entitled to priority, complete Item 5.
If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if all or part of your claim is based on a Derivative Contract.*
☐ Check this box if all or part of your claim is based on a Guarantee.*

*IF YOUR CLAIM IS BASED ON AMOUNTS OWED PURSUANT TO EITHER A DERIVATIVE CONTRACT OR A GUARANTEE OF A DEBTOR, YOU MUST ALSO LOG ON TO http://www.lehman-claims.com AND FOLLOW THE DIRECTIONS TO COMPLETE THE APPLICABLE QUESTIONNAIRE AND UPLOAD SUPPORTING DOCUMENTATION OR YOUR CLAIM WILL BE DISALLOWED.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges. Attach itemized statement of interest or charges to this form or on http://www.lehman-claims.com if claim is a based on a Derivative Contract or Guarantee.

2.  Basis for Claim: MONEY DEDUCTED FROM WAGES FOR DEFERRED COMPENSATION NOT PAID, HELD IN ACCRUAL.
(See instruction #2 on reverse side.)

3.  Last four digits of any number by which creditor identifies debtor: ____
3a.  Debtor may have scheduled account as: ____
(See instruction #3a on reverse side.)

4.  Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff: ☐ Real Estate    ☐ Motor Vehicle    ☐ Other ____
Describe: ____
Value of Property: $ ____ Annual Interest Rate ____%
Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$ ____ Basis for perfection: ____
Amount of Secured Claim: $ ____    Amount Unsecured: $ ____

6.  Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $ ____
(See instruction #6 on reverse side.)

**Specify the priority of the claim:**

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $10,950), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☒ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).   I BELIEVE THIS IS CORRECT

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).   NOT TO CHECK

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$ 50,638.80

7.  Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim.
8.  Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. Attach redacted copies of documents providing evidence of perfection of a security interest. (See definition of "redacted" on reverse side.) If the documents are voluminous, attach a summary.
DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
If the documents are not available, please explain:

FOR COURT USE ONLY
**FILED / RECEIVED**
SEP 21 2009
EPIQ BANKRUPTCY SOLUTIONS, LLC

| Date:<br>9/14/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.       JEFFERY WARDELL |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

# Exhibit 2

*Sale of RSU stock* (handwritten)

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1a Date of sale or exchange 11/30/2007 | OMB No. 1545-0715 **2007** | **Proceeds From Broker and Barter Exchange Transactions** |
|---|---|---|---|
| LEHMAN BROTHERS HOLDINGS INC<br>ATTN: TAX OPERATIONS<br>70 HUDSON STREET, 7TH FLOOR<br>JERSEY CITY, NJ 07302<br>(877) 802-4501 | 1b CUSIP no. 524908100 | Form 1099-B | |

| | 2 Stocks, bonds, etc. 9,958.17 | Reported to IRS ☐ Gross proceeds ☒ Gross proceeds less commissions and option premiums |
|---|---|---|

| PAYER'S federal identification number 13-3216325 | RECIPIENT'S identification number ▓▓▓▓▓▓ | 3 Bartering $ | 4 Federal income tax withheld $ | **Copy B For Recipient** |
|---|---|---|---|---|
| RECIPIENT'S name | | 5 No. of shares exchanged | 6 Classes of stock exchanged | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| 005125<br>JEFFERY K. WARDELL<br>2255 BUSH ST APT 1<br>SAN FRANCISCO, CA 94115-6104 | | 7 Description 2002 - TAX SHARES | | |
| | | 8 Profit or (loss) realized in 2007 $ | 9 Unrealized profit or (loss) on open contracts-12/31/2006 $ | |
| CORPORATION'S name | | 10 Unrealized profit or (loss) on open contracts-12/31/2007 $ | 11 Aggregate profit or (loss) $ | |
| Account number (see instructions) 10142380 | | 12 If the box is checked, the recipient cannot take a loss on their tax return based on the amount in box 2 ☐ | | |

Form 1099-B          (keep for your records)          Department of the Treasury - Internal Revenue Service

---

**Instructions for Recipient - 1099-B (2007)**

Brokers and barter exchanges must report proceeds from transactions to you and the IRS on Form 1099-B. Reporting is also required when your broker knows or has reason to know that a corporation in which you own stock has had a change in control or a substantial change in capital structure. You may be required to recognize gain from the receipt of cash, stock, or other property that was exchanged for the corporation's stock. If your broker reported this type of transaction to you, the corporation is identified in the box below your name and address on Form 1099-B.

**Account number.** May show an account or other unique number the payer assigned to distinguish your account.

**Box 1a.** Shows the trade date of the transaction. For aggregate reporting, no entry will be present.

**Box 1b.** For broker transactions, may show the CUSIP (Committee on Uniform Security Identification Procedures) number of the item reported.

**Box 2.** Shows the aggregate proceeds from transactions involving stocks, bonds, other debt obligations, commodities, or forward contracts. May show the proceeds from the disposition of your interest(s) in a widely held fixed investment trust. Losses on forward contracts and changes in control or substantial change in capital structure are shown in parentheses. This box does not include proceeds from regulated futures contracts. The broker must indicate whether gross proceeds or gross proceeds less commissions and option premiums were reported to the IRS. Report this amount on Schedule D (Form 1040), Capital Gains and Losses. However, if box 12 is checked, you cannot take a loss on your tax return based on gross proceeds from an acquisition of control or substantial change in capital structure reported in box 2. Do not report this loss on Schedule D (Form 1040). The broker should advise you of any losses on a separate statement.

**Box 3.** Shows the cash you received, the fair market value of any property or services you received, and/or the fair market value of any trade credits or scrip credited to your account by a barter exchange. See Pub. 525, Taxable and Nontaxable Income, for information on how to report this income.

**Box 4.** Shows backup withholding. Generally, a payer must backup withhold at a 28% rate if you did not furnish your taxpayer identification number to the payer. See Form W-9, Request for Taxpayer Identification Number and Certification, for information on backup withholding. Include this amount on your income tax return as tax withheld.

**Box 5.** Shows the number of shares of the corporation's stock that you held which were exchanged in the change in control or substantial change in capital structure.

**Box 6.** Shows the class or classes of the corporation's stock that were exchanged in the change in control or substantial change in capital structure.

**Box 7.** Shows a brief description of the item or service for which the proceeds or bartering income is being reported. For regulated futures contracts and forward contracts, "RFC" or other appropriate description may be shown.

**Regulated Futures Contracts:**

**Box 8.** Shows the profit or (loss) realized on regulated futures or foreign currency contracts closed during 2007.

**Box 9.** Shows any year-end adjustment to the profit or (loss) shown in box 8 due to open contracts on December 31, 2006.

**Box 10.** Shows the unrealized profit or (loss) on open contracts held in your account on December 31, 2007. These are considered sold as of that date. This will become an adjustment reported in box 9 in 2008.

**Box 11.** Boxes 8, 9, and 10 are all used to figure the aggregate profit or (loss) on regulated futures or foreign currency contracts for the year. Include this amount on your 2007 Form 6781.

---

☐ CORRECTED (if checked)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | 1a Date of sale or exchange 11/30/2007 | OMB No. 1545-0715 **2007** | **Proceeds From Broker and Barter Exchange Transactions** |
|---|---|---|---|
| LEHMAN BROTHERS HOLDINGS INC<br>ATTN: TAX OPERATIONS<br>70 HUDSON STREET, 7TH FLOOR<br>JERSEY CITY, NJ 07302<br>(877) 802-4501 | 1b CUSIP no. 524908100 | Form 1099-B | |

| | 2 Stocks, bonds, etc. 9,958.17 | Reported to IRS ☐ Gross proceeds ☒ Gross proceeds less commissions and option premiums |
|---|---|---|

| PAYER'S federal identification number 13-3216325 | RECIPIENT'S identification number ▓▓▓▓▓▓ | 3 Bartering $ | 4 Federal income tax withheld $ | **Copy B For Recipient** |
|---|---|---|---|---|
| RECIPIENT'S name | | 5 No. of shares exchanged | 6 Classes of stock exchanged | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
| 005125<br>JEFFERY K. WARDELL<br>2255 BUSH ST APT 1<br>SAN FRANCISCO, CA 94115-6104 | | 7 Description 2002 - TAX SHARES | | |
| | | 8 Profit or (loss) realized in 2007 $ | 9 Unrealized profit or (loss) on open contracts-12/31/2006 $ | |
| CORPORATION'S name | | 10 Unrealized profit or (loss) on open contracts-12/31/2007 $ | 11 Aggregate profit or (loss) $ | |
| Account number (see instructions) 10142380 | | 12 If the box is checked, the recipient cannot take a loss on their tax return based on the amount in box 2 ☐ | | |

Form 1099-B          (keep for your records)          Department of the Treasury - Internal Revenue Service

# Exhibit 3

Law Office of A. James Boyajian
333 S. Grand Ave., 25th Floor
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile: 323.887.0891

Attorney for Priority Claimant Jeffery K. Wardell

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ ) | |
| **In re:** ) | |
| ) | **Chapter 11** |
| **LEHMAN BROTHERS HOLDINGS, INC.,** *et al.*, ) | **Case No. 08-13555 (JMP)** |
| ) | **Jointly Administered** |
| **Debtors.** ) | |
| _____ ) | |

### PROOF OF SERVICE

I, A. James Boyajian, Esq., do hereby swear and certify that:

1) I am an attorney and counsel to Jeffery K. Wardell, a priority claimant in this action. I am over the age of twenty-one years. I am not a party of interest to this proceeding.

2) On this 18th day of May, 2011, I caused a copy of the Response and Opposition of Priority Claimant Jeffery K. Wardell (Claim # 14743) to "Debtors' One Hundred Seventeenth Omnibus Objection to Claims (No Liability Non-Debtor Employee Claims)" to be served via hand delivery using Lawson Legal Service, a New York City-based legal document service company, on the following parties:

(1)   The Chambers of the Honorable James M. Peck,
Re: Courtesy Copy in Ch. 11 Case # 08-13555 (JMP)
Courtroom 601
One Bowling Green New York, New York 10004

(2)   Weil, Gotshal & Manges LLP,
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Shai Y. Waisman, Esq;
Mark Bernstein, Esq.
767 Fifth Avenue
New York, New York 10153

(3)  Office of the U.S. Trustee for Region 2,
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Tracy Hope Davis, Esq.;
Elisabetta Gasparini, Esq.; and
Andrea B. Schwartz, Esq.
Re: Case # 08-13555 (JMP)
33 Whitehall Street, 21st Floor
New York, New York 10004

(4)  Milbank, Tweed, Hadley & McCloy LLP,
Re: Ch. 11 Case # 08-13555 (JMP)
Attn: Dennis F. Dunne, Esq.;
Dennis O'Donnell, Esq.;
and Evan Fleck, Esq.
1 Chase Manhattan Plaza
New York, New York 10005


Dated: May 18, 2011
Los Angeles, California

By: /s/  A. James Boyajian
A. James Boyajian
Law Office of A. James Boyajian
333 S. Grand Ave., 25th Floor
Los Angeles, California 90071
E-mail: JamesBoyajian@gmail.com
Telephone: 424.258.0777
Facsimile: 323.887.0891

Attorney for Priority Claimant Jeffery K. Wardell.