**HALPERIN BATTAGLIA RAICHT, LLP**  Hearing Date: June 2, 2011 @ 10:00 am
555 Madison Avenue, 9th Floor
New York, New York 10022
Phone: (212) 765-9100
Fax: (212) 765-0964
Walter Benzija, Esq.
wbenzija@halperinlaw.net
Debra J. Cohen, Esq.
dcohen@halperinlaw.net

Counsel for *ESOPUS Creek Value LP*

UNITED STATES BANKRUPTCY COURT
SOUTHER DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>**LEHMAN BROTHERS HOLDINGS INC.,** *et al.*,<br><br>Debtor. | Chapter 11<br>Case No. 08-13555 (JMP)<br>Jointly Administered |

**RESPONSE OF ESOPUS CREEK VALUE LP TO THE DEBTORS'**
**ONE HUNDRED TWELFTH OMNIBUS OBJECTION TO CLAIMS**
**(INVALID BLOCKING NUMBER LPS CLAIM)**

ESOPUS Creek Value LP ("ESOPUS"), as and for its response to the *One Hundred Twelfth Omnibus Objection to Claims (Invalid Blocking Number LPS Claim)* (the "Claims Objection") filed by Lehman Brothers Holdings Inc., *et al.* (the "Debtors"), respectively set forth and represents as follows:

**Preliminary Statement**

1. The Debtors' Claims Objection seeks to elevate form over substance to prevent the recognition of ESOPUS' validly asserted claim. Based on the facts at bar, such an attempt is contrary to the interests of justice and should be denied. ESOPUS did not neglect or ignore the requirements of the Court's Bar Date Order (defined below). To the contrary, ESOPUS took all necessary and appropriate steps to provide the Debtors with all of the information required,

{00144057.4 / 0766-001}

including a Euroclear Reference Number or Clearstream Blocking Number. As instructed on the claims form, ESPOUS asked its broker to provide it with the necessary blocking number and was given what ESOPUS believed in good faith comported with what the proof of claim required.

2. Due to an error or misapprehension on the part of ESOPUS's broker, the blocking number provided to ESOPUS was not a validly issued number. When this fact was made known to ESOPUS by the Debtor's Claims Objection, ESOPUS investigated and was able to demonstrated, as discussed below, that notwithstanding the good faith error in filling out the proof of claim, the essential purpose behind procuring a blocking number was and continues to be met: ESOPUS was and remains the beneficial owner of the subject program securities from the date of acquisition, including as of the Bar Date, and to the present.

3. ESOPUS recognizes the axiomatic truth that bar date orders are crucial aspects of the chapter 11 bankruptcy process that serve to (a) put the debtor on notice of the claims against it, and (b) define the universe of such claims. Failure to file a claim timely is often fatal to the recognition and allowance of a creditor's claim. Thus, if ESOPUS had failed to file a timely claim or in good faith provide information about its claim mandated by the Bar Date Order, there would be little doubt that the Claim Objection should be sustained. In this case, however, where the objective facts establish that the Debtors were made aware of ESOPUS's claim within the timeframe established under the Bar Date Order and that ESOPUS was and is the beneficial owner of the Securities, thus satisfying the intent behind the procurement of blocking numbers, there is no prejudice to the Debtors or their estates. The Debtors' argument that a technical failure should override an otherwise substantively valid claim is simply contrary to the bankruptcy rules regarding the filing and recognition of claims and the paramount interests of justice.

4. Therefore, ESOPUS respectfully asks the Court to exercise its equitable powers to find that despite the good faith technical error in the identification of the blocking number, ESOPUS has satisfied its burden in establishing its claim in accordance with the intent and purposes underlying the blocking number requirement.

**Response**

5. Prior to the Petition Date, on or about June 12, 2009 (the "Acquisition Date"), ESOPUS acquired certain Lehman Program Securities described as "Standard and Poors 500 Index 10/25/2010" and bearing International Securities Identification Number ("ISIN") XS0326516746, issued by Lehman Brothers Treasury Co. BV in the principal amount of $2,000,000 (the "Securities"). Declaration of Joe Criscione at ¶ 2 (the "Criscione Decl."). The Securities in turn were guaranteed by the Debtors (the "Guaranty"). Criscione Decl. at ¶ 3.

6. ESOPUS held and continues to hold the entire position with respect to the series of the Securities since the Acquisition Date. Criscione Decl. at ¶ 4. Indeed, the Securities have never been traded, transferred or encumbered in any manner by ESOPUS. Criscione Decl. at ¶ 5.

7. After the Petition Date, by order dated July 2, 2009 (the "Bar Date Order"), November 2, 2009 was established as the deadline (the "Bar Date") to file proofs of claim based on any Lehman Program Security.

8. The Bar Date Order provided, among other things, that claims submitted in respect of any Lehman Program Security (a "Program Security Claim") must conform substantially with a specific proof of claim form (the "Claim Form") and, among other things, identify the ISIN for each Lehman Program Security, specify the Depository Participant Account (the "Account") and include either a Euroclear electronic instruction reference number

("Euroclear Reference Number") or a Clearstream blocking reference number ("Clearstream Blocking Number").[1]

9. Accordingly, by email dated September 14, 2009, a copy of which is annexed to the Criscione Decl. as Exhibit A, ESOPUS sought from its broker (the "Broker") the relevant information necessary to complete a Program Security Claim, including the Account and a Euroclear Reference Number or Clearstream Blocking Number with respect to the Securities. Criscione Decl. at ¶ 7. By reply email the same day, a copy of which is annexed to the Criscione Decl. as Exhibit B, the Broker provided the requisite information. Criscione Decl. at ¶ 7. After receipt of the requested information, ESOPUS contacted the Broker by telephone on September 15, 2009 and the Broker confirmed that the Euroclear Reference Number for the Securities was 94589 and the Account number was 7JAX1209 (the "ESOPUS Account").[2] Criscione Decl. at ¶ 7.

10. Based upon the information provided by the Broker, ESOPUS prepared a Program Security Claim on the correct Claim Form in the amount of $2 million (the "Claim") with respect to the Guaranty, which was timely filed prior to the expiration of the Bar Date on or about September 18, 2009. Upon information and belief, the Claim was designated as claim number 16474 in these cases. A copy of the Claim is annexed to the Criscione Decl. as Exhibit D.

---

[1] It should be noted, however, that despite emphasis given to the inclusion of blocking numbers in Program Security Claims, there was no mention of a blocking number requirement in the Debtors' underlying motion to set a bar date nor in the form of proposed orders submitted by the Debtors. *See* Docket Nos. 3654, 4113 and 4205.

[2] A copy of an email from ESOPUS confirming the conversation is annexed to the Criscione Decl. as Exhibit C.

{00144057.4 / 0766-001}

11. Upon receipt of the Claims Objection, ESOPUS immediately contacted the Broker to look into the matter and discovered that the Broker had inadvertently provided to it an internal reference number rather than a Euroclear Reference Number. Criscione Decl. at ¶ 10. Thus, while the Claim substantially conformed to the Claim Form as required by the Bar Order and otherwise contained all of the information required by the Bar Date Order, including the correct ISIN and Account numbers for the Securities, the Euroclear Reference Number did not specifically pertain to the Securities.

12. However, by letter dated April 6, 2011, a copy of which is annexed to the Criscione Decl. as Exhibit E (the "Broker's Letter"), the Broker acknowledged that it is the prime broker/custodian for the ESOPUS Account and that the Securities were reflected on their records for the ESOPUS Account from the Acquisition Date through the present, having never been traded, transferred or encumbered in any manner.[3] Moreover, the Securities are listed on the Debtors' list of Lehman Programs Securities as of July, 17 2009 that was heretofore filed by the Debtors with the Court (the "Program Securities List") and, as confirmed by the Broker's Letter, ESOPUS holds the entire position with respect to the series. Thus, there can be no doubt that the Securities held in the ESOPUS Account have always been owned solely by ESOPUS including at and through the Bar Date.

13. "[A] bankruptcy court is a court of equity at least in the sense that in the exercise of the jurisdiction conferred upon it by the act, it applies the principles and rules of equity jurisprudence. Among the granted powers are the allowance and disallowance of claims." Pepper v. Litton, 308 US 295, 304 (1939) (internal citations omitted). The failure to supply the requisite information to support a claim results in the loss of the *prima facie* validity of the claim

---

[3] A copy of the Broker's Letter was previously forwarded to the Debtors' counsel.

but it does not automatically render the claim invalid. See e.g., In re Kerman J. Minbatiwalla, 424 B.R. 104, 112 (Bankr.S.D.N.Y. 2010); In re Lehman Brothers Holdings Inc., *et al.*, 2010 Bankr. LEXIS 4147, *13 (Bankr.S.D.N.Y. 2010). Upon an objection to the claim, the burden of proof as to the validity of the claim merely shifts to the claimant. Lehman Brothers, 2010 Bankr. LEXIS 4147 at *13. Although the court must consider the debtor's right to be able to verify that the claimant is the owner of the debt, it must avoid invalidating a claim when the creditor could establish that it is the actual holder of a valid claim against the debtor, especially when the debtor's schedules provide some level of support for the claim. See e.g., Minbatiwalla, 424 B.R. at 117-18.

14. As confirmed by the Debtors in *Debtors' Omnibus Reply To Responses To Debtors' Twenty-Ninth Omnibus Objection To Claims (No Blocking Number LPS Claims)* (Docket #12220), the purpose of the blocking number requirement "is to prevent the Debtors from making duplicative distributions by confirming ownership of a particular security at a particular time prior to the bar date and prevent trading of the security through the bar date." Indeed, in the Claim Objection, the Debtors stated:

> The issuance of a blocking number *prevented the holder of a Lehman Program Security from trading that security through November 2, 2009*[.] The blocking number requirement was necessary because the Lehman Program Securities did not have an indenture trustee that would file a global claim on behalf of all holders of a particular security, but rather *individual holders* of such securities (or custodians thereof) would be filing claims based on such securities. Accordingly, *the blocking number requirement provided the only mechanism for the Debtors to confirm the ownership and amount of a particular security for purposes of the Securities Program Proof of Claim. Absent the blocking number requirement and temporary restriction on trading, the risk would exist that the Debtors would make distributions in excess of the outstanding amount of the Lehman Program Securities and multiple distributions on the same obligation.*

Claim Objection at ¶ 10 (emphasis added). Though it now appears that the Broker had not procured a Euroclear Reference Number or Clearstream Blocking Number with respect to the Securities and erroneously provided to ESOPUS in internal reference number, ESOPUS owned the Securities at all times from the Acquisition Date (*i.e.*, prior to the Petition Date) and still holds them today in the same ESOPUS Account. See generally Criscione Decl. Thus, the Claim should not be invalidated when ESOPUS can and has otherwise satisfied the purpose of the blocking number requirement and established that it was and continues to be the actual beneficial owner of Securities and the Claim prior to the Petition Date, though and including the Bar Date and to date.

15. Indeed, ESOPUS timely filed the Claim, which included all of the requisite information but for the erroneous Euroclear Reference Number. However, all of the other requisite information was correctly completed in the Claim, including the amount, ISIN number and Account number. Moreover, the Securities and the Guaranty are listed on the Debtors' Program Securities List, clearly manifesting the Debtors' obligation in connection therewith. See the Program Securities List at page 52 (the highlighted line), a copy of which is annexed hereto as Exhibit 1.

16. Accordingly, the Program Securities List taken together with the Broker's Letter stating that the Securities were reflected on their records for the ESOPUS Account at all times from the Acquisition Date through the present in the exact same custodial account without ever having been traded, and the fact that ESOPUS holds the entire position with respect to the series listed on the Program Securities List, evidences the validity of the Claim and satisfies the intent of the Bar Date Order requirement to include a Euroclear Reference Number or Clearstream Blocking Number in a Program Security Claim. At bottom, although ESOPUS believed in good

faith that it was providing all of the information mandated by the Bar Date Order, the purpose of the requirements are nevertheless satisfied here by proof that the subject Securities are identifiable and that ESOPUS was and is the holder of such Securities. There is no administrative burden on the Debtors' estate to verify ownership or prejudice to the Debtors or any other party from an allowance of the Claim.[4]

17.   Furthermore, § 502(b) of the Bankruptcy Code identifies specific limited grounds for the disallowance of claims. 11 U.S.C. § 502(b). Thus, even where a party in interest objects, the court must allow the claim except to the extent it implicates any of the exceptions enumerated in § 502(b). 11 U.S.C. § 502(b), see also Travelers Cas. & Surety Co. of Am. v. Pac. Gas & Electr. Co., 549 U.S. 443, 449-50 (2007). Indeed, the Supreme Court made clear that a claim can be disallowed only based upon the limited reasons set forth in § 502(b). Travelers, 549 U.S. at 449 ("where a party in interest objects, the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b).").

18.   Here, the only exceptions enumerated in § 502(b) that applies at all with respect to the Claim is § 502(b)(1) that the Claim is unenforceable against the Debtors.[5] However, the Program Securities List manifests the Debtors' obligation with respect to the Securities and the Broker's Letter confirms that the Securities were and still are owned by ESOPUS.

---

[4] Any argument that allowing the Claim will open a floodgate with respect to other claims and require the Debtors to evaluate the validity of a large number of claims is without merit here. While the Debtors may have valid concerns about the manageability of the claims process, substantively valid and timely filed claims should not be disallowed solely on the basis of a lack of a blocking number when the purpose of blocking number requirement is otherwise satisfied.

[5] The only basis for which the Debtors seek to disallow the Claim is a lack of a blocking number, which does not fall within the scope of § 502(b) except to the extent the intent of the blocking number is to confirm the unenforceability of a claim against the Debtors.

{00144057.4 / 0766-001}

**Conclusion**

19. ESOPUS respectfully submits that its timely filed and valid Claim against the Debtors be allowed on the merits. The risk identified by the Debtors through the Claim Objection that they might end up paying twice on a given claim if it were not properly tracked is not implicated here. ESOPUS is able to demonstrate that it held the Securities that formed the basis of the Claim prior to the Petition Date, through the Bar Date (the date through which blocked Program Securities could not be traded) and through the present date. The Securities remained in the ESOPUS Account during that entire time, having never been traded or moved. As such, the inadvertent failure to provide a valid blocking number, the purpose of which was otherwise fully satisfied, should not be sole reason to expunge a substantively valid claim.

**WHEREFORE**, ESOPUS respectfully asks the Court exercise its equitable powers to elevate form over substance and (a) overrule the Debtors' objection to the Claim; (b) allow the Claim in the full amount as filed aggregating $2,000,000.00, and (c) grant ESOPUS such other relief as it just and proper.

Dated: New York, New York
    May 18, 2011

ESOPUS CREEK VALUE LP
By its Counsel,
HALPERIN BATTAGLIA RAICHT, LLP

By: */s/ Walter Benzija*
    Walter Benzija, Esq.
    Debra J. Cohen, Esq.
    555 Madison Avenue - 9th Floor
    New York, New York 10022
    (212) 765-9100