DAY PITNEY LLP
One International Place
Boston, MA 02110
(617) 345-4600
DANIEL J. CARRAGHER, ESQ. (DC-0328)
ATTORNEYS FOR FABIO LIOTTI

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| LEHMAN BROTHERS HOLDINGS, INC., *et al.*, | Case No.: 08-13555 (JMP) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF FABIO LIOTTI TO**
**DEBTORS' 118TH OMNIBUS OJBECTION TO CLAIMS**

Fabio Liotti (the "claimant"), by and through his undersigned attorneys, hereby responds to the Debtors' 118th Omnibus Objection to Claims (To Reclassify Claims as Equity Interests) (the "Claim Objection"). In support thereof, claimant respectfully states as follows:

1. Claimant timely filed a proof of claim against Debtor Lehman Brothers Holdings, Inc. (the "Debtor") on September 21, 2009, designated as Claim 25895 (the "Claim"). The Claim was filed in the total amount of $3,519,222, with priority asserted for $593,024 for commissions earned within 180 days prior to the petition date. Claimant did not receive a base salary or bonus, and his compensation was based solely on commissions for his production. The

Claim was filed to recover regular commissions earned for work between 2006 and 2008 and deferred compensation.[1]

2. The Claim Objection seeks to reclassify claimant's claim as an equity interest that will receive no distribution under the Amended Chapter 11 Plan currently on file in these proceedings. In support of the requested relief, the Claim objection also invokes notions of contractual subordination under section 510(a) of the Bankruptcy Code and subordination under section 510(b) of the Bankruptcy Code.

**GROUNDS FOR RESPONSE**

3. Claimant opposes the relief sought in the Claim Objection on the following grounds. First, claimant denies that any equity-based compensation awarded to him by the Debtor should be classified as equity interests under a Chapter 11 plan or subordinated to the claims of other creditors under section 510(b) of the Bankruptcy Code. Claimant also denies that any contractual subordination provisions apply to his claims. Second, and in the alternative, claimant submits that over $970,000 that he earned from December 1, 2007 through September 30, 2008 and for which no Contingent Stock Awards ("CSAs") were ever issued to him should not be reclassified as an equity interest or subordinated to the claims of other creditors under section 510(b). Third, also in the alternative, the amounts withheld from claimant's monthly commission payments from December 2007 through September 2008 exceeded the maximum amount that should have been withheld under the compensation formulas applicable to claimant by more than $292,000, and claimant should be compensated for such over-withholding by the

---

[1] Claimant filed an additional claim docketed as Claim 25897 for $1,914,315 for underpayment of commissions and other awards during 2008. The Debtors have not objected to Claim 25897, and this response does not address the substance of claim 25897.

allowance of a claim in such amount and treated as a priority wage claim to the extent allowed by section 507(a)(4) of the Bankruptcy Code.

<u>The claim should not be reclassified as an equity interest or subordinated to the claims of other creditors.</u>

4. As part of the compensation arrangements under his employment agreement, claimant was entitled to periodic payment of commissions based on his production. A portion of each production payout was to be paid in cash, with the remainder to be paid in the form of conditional equity awards, which could include CSAs, options and/or other equity awards. The portion of claimant's production payouts that were to be paid other than in cash varied from year to year in accordance with the equity award program in effect for each plan year as described in the Lehman Brothers Equity Award Program booklets distributed to claimant and other employees, the Debtor's 2005 Stock Incentive Plan and the prospectus applicable thereto, and the Debtor's Employee Incentive Plan and the prospectus applicable thereto.

5. Through December 7, 2007, claimant was awarded 41,858.77 CSAs by the Debtor based on the commission income he earned less the cash compensation paid to him. These CSAs gave claimant the right to the future delivery of shares of common stock five years after the award date. The future delivery of shares was subject to various conditions, including continued employment. As of the filing of the Debtor's Chapter 11 petition on September 15, 2008, no shares had been issued to claimant on account of these CSAs, and no shares were due to be delivered to him until various dates in 2009-2012. These CSAs were not assignable by claimant and could not be sold, traded or pledged. Claimant did not receive or hold any common stock certificates, book entry certificates, options, warrants or any other form of security. Instead, over $2.8 million was withheld from his commission payments over a three year period,

and the only consideration received by claimant for such withholding was the issuance of these CSAs.

6. For the period December 1, 2007 through September 15, 2008, it is undisputed that claimant earned regular commission income of at least $3,467,270.[2] As described in the Lehman Brothers 2008 Equity Award Program book, the component to be paid in the form of equity-based awards was at $822,600 plus 54% of his 2008 total compensation over $2.5 million up to a max of 36% of his 2008 total compensation.

7. In July 2008, only two months before the commencement of these Chapter 11 proceedings and the administration proceedings in the United Kingdom, claimant received 27,201.82 CSAs, representing twenty percent of his estimated CSA allocation for the year based on annualized figures for the first half of the plan year. These CSAs entitled claimant to the future delivery of shares of common stock three years after the date of the grant. As with the earlier CSAs, delivery of shares was subject to various conditions, including continued employment. As was the case with the earlier CSAs, the 2008 CSAs were not assignable by claimant and could not be sold, traded or pledged. Claimant did not receive or hold any common stock certificates, book entry certificates, options, warrants or any other form of security.

8. The CSAs and dividend equivalents issued to claimant differ from the stock options or phantom stock at issue in In re Enron Corp., 341 B.R. 141 (Bankr. S.D.N.Y. 2006). In Enron, the employee claimants held actual securities in the form of stock options, and the court ruled that claims related to the election to receive such options or claims that the employees were fraudulently induced to retain their options were ones that arose in connection with a purchase of

---

[2] Claim 25897, which is not the subject of the Claim Objection, includes a claim that the commissions due for December 2007 through September 15, 2008 were understated by $943,514 through the use of improper pay rates on two trades.

securities for purposes of section 510(b) of the Bankruptcy Code. The one employee claimant whose claim was based on phantom stock already had a contractual entitlement to the delivery of the shares prior to the petition date. Id. at 162-63. Here, by contrast, no stock option or other security was issued to claimant, and the time for delivery of shares of stock was still years in the future when the Chapter 11 case was filed.

9. Claimant's employment agreement was with Lehman Brothers Limited, an indirect United Kingdom subsidiary of the Debtor. On information and belief, that subsidiary reserved cash on its books and in its accounts for the sums withheld from claimant's commission payments in 2008. On further information and belief, shortly before the filing of the Chapter 11 petition by the Debtor, several billion dollars were upstreamed to the Debtor from the accounts of the United Kingdom affiliates with the result that the Debtor obtained the benefit of the cash reserves held against the issuance of future equity awards and then never paid the withheld amounts to claimant or compensated claimant in any other manner. Under these circumstances, it would be highly inequitable to reclassify claimant's claim against the Debtor as an equity interest in these proceedings or to interpret section 510(b) of the Bankruptcy Code to require the subordination of claimant's claims to the claims of other creditors.

> In the alternative, the Claim should be allowed for at least $970,784.85, representing amounts withheld from claimant's commission payments and for which no consideration was ever received.

10. Claimant would have received additional awards with a monetary value of $970,800.63 in late 2008, but with the filing of the Debtor's Chapter 11 petition on September 15, 2008, it became impossible for the Debtor to issue any further awards under its Employee Incentive Plan, and claimant did not receive any additional CSAs.

11.     A total of $1,518,677 was withheld from claimant's cash commission payments from December 2007 through August 2008 and an additional $22,268 was withheld from his commission payment for the month of September 2008.  This latter amount was withheld even after the commencement of administration proceedings in the United Kingdom and the Chapter 11 proceedings in this Court.  Thus, the total withheld from claimant's commission payments in 2008 was $1,540,945.  The CSAs issued to claimant in July 2008 had a value as of the date of grant of $570,150.15, leaving a shortfall of $970,784.85 for which there was a total failure of consideration to claimant.

> <u>In the alternative, the Claim should be allowed for at least $292,728, representing amounts withheld from claimant's 2008 commission payments in excess of the amounts provided under his employment agreement.</u>

12.     The $1,540,945 withheld from claimant's commission payments from December 1, 2007 through September 30, 2008 represented over 44.4% of the undisputed amount of claimant's commission income.  This exceeded the 36% cap on the equity-based component of his compensation as specified in the Lehman Brothers Equity Award Program booklet for 2008 by $292,728.

13.     This over-withholding resulted from the use of an annualization mechanism for calculating monthly withholdings, and no adjustment was made to take into account the 36% cap on equity-based compensation.  Under that formula, the amount withheld should have been limited to $1,248,217.  The resulting underpayment of $292,728 would never, under any circumstances, have been paid in the form of equity-based awards and should have been paid in cash.  At a minimum, claimant should be entitled to an allowed claim for the $292,728 shortfall and treated as a priority wage claim to the extent allowed by section 507(a)(4) of the Bankruptcy Code.

## RESERVATION OF RIGHTS

14. Claimant has submitted this response to the Claim Objection to preserve his rights in these proceedings and prevent the reclassification or subordination of the Claim. Claimant reserves all rights with respect to Claim 25897 and any additional claims he has filed in these proceedings that are not included in the Claim Objection. In submitting this response, Claimant fully reserves all rights he may have against all non-Debtor Lehman Brothers affiliates and any other third parties, including the right to assert claims in any administration or insolvency proceedings pending in the United Kingdom. Nothing in this response shall be taken as a waiver by claimant of any claims against non-debtor affiliates or a consent to the jurisdiction of this court to determine or adjudicate claimant's rights vis-à-vis such affiliates.

## RELIEF REQUESTED

WHEREFORE, Fabio Liotti respectfully requests that this Court:

(i) deny the Claim Objection to the extent that it requests the reclassification of the Claim as an equity interest or subordination of the Claim under § 510 of the Bankruptcy Code;

(ii) allow the Claim as a general unsecured claim against the Debtor in the full amount claimed, with priority treatment to the extent allowed by section 507(a)(4) of the Bankruptcy Code;

(iii) in the alternative, allow the Claim in the amount of $970,798.85 on account of amounts withheld from his commission payments in 2008 and for which he received no consideration, with priority treatment to the extent allowed by section 507(a)(4) of the Bankruptcy Code;

(iv) in the alternative, allow the Claim in the amount of $292,728 for excess amounts withheld from his commission payments in 2008 that should not have been

reserved for equity-based compensation, with priority treatment to the extent allowed by section 507(a)(4) of the Bankruptcy Code; and

    (v) grant such other or further relief as the Court deems just and proper.

Dated: May 18, 2011

    DAY PITNEY LLP
    Attorneys for Fabio Liotti

    By: /s/ Daniel J. Carragher
    DANIEL J. CARRAGHER (DC-0328)
    One International Place
    Boston, MA 02110
    (617) 345-4600
    - and -
    7 Times Square
    New York, NY 10036-7311
    (212) 297-5800