**CLAIM FORM FILING CONFIRMATION**

Your claim form was successfully filed on 10/22/2009 at 2:36 PM Central. Please print this page as proof of your filing.

KSC AFFORDABLE HOUSING INVESTMENT FUND, LLC
c/o Bret H. Reed, Jr., A Law Corporation
621 Acacia Avenue
Corona Del Mar, CA 92625 UNITED STATES

| | |
|---|---|
| Name of Debtor | Lehman Brothers Special Financing Inc. (08-13888) |
| Please identify the counterparties, guarantor and/or credit support provider to the derivative contract. | KSC Affordable Housing Investment Fund, LLC |
| Have you entered into a termination agreement with the Debtors establishing the agreed upon amounts due in respect of derivative contracts? | Selected: No |
| Have the derivative contracts matured or been terminated? | Selected: Yes |

| Item | Amount due to Debtor | Amount due from Debtor |
|---|---|---|
| Transaction Valuations | $0.00 | $40,500.00 |
| Unpaid Amounts | $0.00 | $0.00 |
| Collateral | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Other costs | $0.00 | $11,750.00 |
| **DERIVATIVE CLAIM AMOUNT** | | $52,250.00 |

Documentation of Transactions: Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim.

**Documents**
SchedOfDocs DQ LBSF KSC.doc
Rate Cap Confirm10-10-06.pdf
1992 ISDA MstrAgmt.doc
AttchmtBKDerivQuestKSCFinal.doc
Loan Agreement Capmark.pdf

| | |
|---|---|
| Documentation of Transactions: Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim. | (1) The attached schedule of documents is provided to facilitate tracking the uploaded documents, and the factual summary attachment provides additional explanatory information. The relevance of the last uploaded document (the Capmark Loan Agreement) is explained in the factual summary attachment. (2) The rate cap agreement (derivative contract) consists of both the confirm and the form ISDA Master Agreement, so both were uploaded under this category. |

**Documents**
SchedOfDocs DQ LBSF KSC.doc

| |
|---|
| Rate Cap Confirm10-10-06.pdf |
| 1992 ISDA MstrAgmt.doc |
| AttchmtBKDerivQuestKSCFinal.doc |
| Loan Agreement Capmark.pdf |

Termination Notice: Please provide a copy of the termination notice, including evidence supporting delivery date of the termination notice.

| Documents |
|---|
| KSC LBSF NoticeEarlyTerm8-18-09w- exhs.pdf |

Valuation Statement: Please provide a copy of the valuation statement. Please identify any collateral that has been posted by any party in connection with the transactions and any claims of set-off against other transactions reflected in the claim.

| Documents |
|---|
| KSC LBSF ValueStmt9-16-09.pdf |
| MktQuotTermSheet8-11-09.doc |
| KSC MarketQuoteEmail Solicitation.pdf |
| KSC KCG - Cap Quotation Form 8-20-09.pdf |
| KSC LBSF 4 Bid Results.pdf |
| KSC KCG - MQ Summary8-27-09.pdf |
| KSC KCG Invoice Cap Market Quotation.pdf |
| Inv RLC KSC 9-18-09.pdf |
| KSC LBSF ValueStmt9-16-09FedexDelConfirms.pdf |

Individual Trade Level Detail: Please provide with respect to each transaction (i) the valuation date (to the extent not included in your valuation statement) and value and (ii) details for the purpose of identifying and reconciling each transaction (e.g. including, as applicable, trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, factor and original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call or put, cap or floor, effective date, and maturity date. (For the avoidance of doubt, you are not required to submit each and every one of the foregoing)). Please provide this information in Microsoft Excel format.    Included in (c) above.

ISDA Master Agreements Specifying Market Quotation Methodology: If not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.    Selected: Yes
Included in the attachments above.

ISDA Master Agreements Specifying Loss Methodology: To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.    Selected: No

ISDA Master Agreements Specifying Close-Out Amount Methodology: To the extent applicable, if not already provided in the valuation statement, provide the date and    Selected: No

| | |
|---|---|
| identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions. | |
| ISDA Master Agreements Specifying Any Other Methodology: To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions. | Selected: No |
| Non-ISDA Master Agreements: To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions. | Selected: No |
| Replacement Transactions: If you replaced a terminated transaction with a transaction with the same economic terms as the terminated transaction, provide documentation evidencing such replacement transaction and the quotation(s) used, including specifying any cash (or other consideration) paid or received by or to any person to replace the transactions, the name of each entity that effectuated a replacement and when any such transactions were effected. | Selected: No |
| If claim includes other costs, please include a schedule that lists each such cost by vendor and indicates the service provided and amount paid. | |

**Documents**
KSC KCA Invoice Cap Market Quotation.pdf
Inv RLC KSC 9-18-09.pdf

| | |
|---|---|
| Unpaid Amounts: Please specify any unpaid amounts and interest accrued thereon included in calculation of any amounts due with respect to the transactions. | The break down is: $40,500 Market Quotation, $10,000 counterparty legal fees and $1,750 cap consultant fee = $52,250 total claim. |

## Exhibit C

### Derivative Questionnaire

*Please note that information stated on or uploaded on this website is being submitted as part of the Proof of Claim form. As such, criminal penalties apply for making a false statement. The penalty for presenting fraudulent claim is a fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

YOU MUST COMPLETE ONE DERIVATIVE QUESTIONNAIRE PER PROOF OF CLAIM BASED ON AMOUNTS OWED PURSUANT TO A MASTER AGREEMENT. IF A MASTER AGREEMENT DOES NOT EXIST, YOU MUST COMPLETE ONE DERIVATIVE QUESTIONNAIRE PER DERIVATIVE CONTRACT.

General:

**Name of Debtor (drop down of Lehman entities):** Lehman Brothers Special Financing, Inc. ("LBSF")

**Name of Creditor:** KSC Affordable Housing Investment Fund, LLC, a California limited liability company

**Name and address where notices should be sent:** Bret H. Reed, Jr., A Law Corporation, 621 Acacia Avenue, Corona Del Mar, CA 92625

**Creditor contact person and phone number:** Bret H. Reed, Jr., Esq., (949) 955-9150, bhrjr@reedlawcorp.com

**Name and address where payment should be sent if different from above:** Mr. Alan Bogomilsky, KSC Affordable Housing Investment Fund, LLC, 550 California Avenue, Suite 330, Palo Alto, CA 94306

**1. Is the Debtor identified above (i) a counterparty to the derivative contract or (ii) a guarantor or credit support provider?** Yes. **Please identify the counterparties, guarantors and/or credit support providers to the derivative contract.** LBSF is the counterparty; there is no credit support provider or guarantor.

**2. Have Termination Agreement(s) related to the allowance of a claim in respect of derivatives been entered into with the debtor?** No.

If Yes—Enter the amount of the derivative claim $N/A

Please attach Termination Agreement and go to ___ (end).

If No, proceed to #3.

**3. Have the derivatives matured or been terminated?** Yes.
If Yes—Enter the derivative claim amount and each line item included in the calculation thereof on the provided table and provide the information in 4.

If No, STOP HERE. For Derivative Contracts that have not matured or been terminated, you do not need to complete the rest of the Derivative Questionnaire or submit any of the documents or information requested below.

4. a. <u>Documentation of Transactions.</u> Please provide copies of all master agreements and schedules thereto, netting agreements, credit support agreements, guarantees and other agreements (other than confirmations) evidencing the transactions, in each case that relate to the claim. Attached – see Schedule of Documents.

b. <u>Termination Notice.</u> Please provide a copy of the termination notice, including evidence supporting delivery date of the termination notice. Attached – see Schedule of Documents.

c. <u>Valuation Statement.</u> Please provide a copy of the valuation statement. Please identify any collateral that has been posted by any party in connection with the transactions and any claims of set-off against other transactions reflected in the claim. Attached – see Schedule of Documents.

d. <u>Individual Trade Level Detail.</u> Please provide with respect to each transaction (i) the valuation date (to the extent not included in your valuation statement) and value and (ii) details for the purpose of identifying and reconciling each transaction (e.g. including, as applicable, trade id, electronic trade reference id, trade type, product, trade date, reference obligation or reference entity, factor and original contract notional amount, quantity/unit of measure, currency, price or strike price, buy/sell, call or put, cap or floor, effective date, and maturity date. (For the avoidance of doubt, you are not required to submit each and every one of the foregoing)). Please provide this information in Microsoft Excel format. Included in Valuation Statement.

e. <u>Trade Valuation Methodology and Quotations.</u> Please check the box next to each valuation methodology used to support the claim (if multiple methodologies were used, please check multiple boxes and identify the trade population listed in clause d. above to which each valuation method applies):

 _X_  ISDA Master Agreements Specifying Market Quotation Methodology: If not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

 ____  ISDA Master Agreements Specifying Loss Methodology. To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

 ____  ISDA Master Agreements Specifying Close-Out Amount Methodology. To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

____ ISDA Master Agreements Specifying Any Other Methodology. To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

____ Non-ISDA Master Agreements. To the extent applicable, if not already provided in the valuation statement, provide the date and identity of and quotations received from Reference Market-makers or other persons (i.e. name of institution) concerning the transactions.

____ Replacement Transactions: If you replaced a terminated transaction with a transaction with the same economic terms as the terminated transaction, provide documentation evidencing such replacement transaction and the quotation(s) used, including specifying any cash (or other consideration) paid or received by or to any person to replace the transactions, the name of each entity that effectuated a replacement and when any such transactions were effected.

f. <u>Unpaid Amounts.</u> Please specify any unpaid amounts and interest accrued thereon included in calculation of any amounts due with respect to the transactions. $52,250

g. <u>Collateral.</u> Please provide CUSIP/ISIN for collateral listed, if applicable, or other information that reasonably identifies collateral reflected in the claim calculation and the valuation of such collateral. Please provide this information in Microsoft Excel format.

h. <u>Other costs</u>.
     i. If claim includes other costs, please include a schedule that lists each such cost by vendor and indicates the service provided and amount paid. Included on Valuation Statement.

     ii. If claim includes interest charges, please provide calculation in Microsoft Excel format of interest including principal amount, interest rate, term and assumptions.

**ATTACHMENT TO DERIVATIVE QUESTIONNAIRE
KSC AFFORDABLE HOUSING INVESTMENT FUND, LLC
BANKRUPTCY OF LEHMAN BROTHERS SPECIAL FINANCING, INC.
CASE NO.: 08-13888**

KSC Affordable Housing Investment Fund, LLC, a California limited liability company ("Creditor") sets forth the following summary of the facts and information that serve in support of its Derivative Questionnaire ("DQ") supplemental to its proof of claim (the "Proof of Claim") in the above-entitled case of Lehman Brothers Special Financing, Inc. (the "Debtor"). This claim is based on a Derivative Contract. All claims of the Creditor arise out of and/or relate to the business, contractual, fiduciary, trust, and/or legal/equitable relationships, rights and obligations between the Creditor and the Debtor and investigations and review of documents are ongoing regarding these relationships, rights and obligations and the right to amend, supplement and/or modify this DQ for other amounts owing or due to the Creditor based on these relationships, rights and obligations is hereby reserved, to the fullest extent allowable.

## SUMMARY OF CLAIM

On or about October 10, 2006, Creditor and Debtor entered into a Confirmation of LIBOR Interest Rate Cap Agreement Global ID: 2689265 (the "Rate Cap Agreement"), and the ISDA Master Agreement dated October 10, 2006 (the "ISDA Master Agreement") under which the Rate Cap Agreement was issued (together, the "Hedge"), true and correct copies of which are being electronically uploaded on the web site http://www.lehman-claims.com concurrently herewith as required by the Motion for the filing of Proofs of Claims based on Derivative Contracts and Guarantees, and the Notice of Deadlines for Filing Proofs of Claim and Order thereon issued July 2, 2009.

-2-

Creditor was required to obtain the Hedge under the terms of its project financing ("Financing") with Capmark Bank ("Capmark"). Creditor was under an express, mandatory obligation by virtue of its Financing agreements with Capmark to maintain at all times a qualifying "hedge" to protect both Capmark and Creditor against the variable interest rate risk inherent in the Financing. Capmark required that the Hedge have certain terms including, but not limited to, early termination and default provisions, Market Quotation damage quantification provisions and procedures upon the default or termination of the Hedge, and for the qualification of replacement hedge agreements and the eligible providers thereof.

Creditor has fully performed all duties and obligations under the Hedge, other than those duties which have been excused or waived as a result of Debtor's breach of the Hedge.

As a consequence of the filing by Debtor of a voluntary petition in the United States Bankruptcy Court seeking relief under Chapter 11 of Title 11 of the United States Bankruptcy Code on or about October 5, 2008, Debtor became unable to perform under the Hedge, constituting an Event of Default under Section 5(a)(vii) of the Master Agreement. The foregoing constitutes an Early Termination Event under the Hedge (the "Early Termination").

At the time of successfully bidding and entering into the Hedge, Debtor had notice that (1) the purchase by Creditor of the forward starting Hedge was a requirement for approval by Capmark of a loan to Creditor's affiliate, M2 178 Vallejo LP (in which Creditor is the principal equity investor), and (2) it was a mandatory Capmark requirement that the Hedge be issued by a rate cap provider that satisfied the credit criteria set forth in Section 2.07(c) of the Loan Agreement dated August 9, 2006 between Creditor's affiliate and Capmark (the "Capmark Loan Agreement"), including but not limited to the rate cap provider's maintaining a minimum investment-grade rating, and entering into and executing

rate cap documents approved by Capmark. A true and correct copy of the Capmark Loan Agreement is being electronically filed concurrently herewith.

On or about August 18, 2009, Creditor gave written notice to Debtor that Creditor declared an Early Termination of the Hedge under Sections 5 and 6 of the Hedge because of Debtor's inability to perform its duties thereunder as a consequence of the Bankruptcy Filing, and that Debtor was liable for damages under the Hedge on account of the same pursuant to the Market Quotation methodology set forth in the Hedge. A true and correct copy of the Notice of Early Termination dated August 18, 2009, together with evidence of delivery to Debtor, is being electronically filed concurrently herewith.

In connection with fixing and liquidating the damages caused by Debtor's breach of the Hedge by virtue of the Early Termination, Creditor engaged Kensington Capital Advisors (the "Cap Consultant") to price the cost for purchasing replacement interest rate cap protection equivalent to the rate cap protection provided by Debtor under the terminated Hedge, by obtaining Market Quotations therefor from Reference Market-makers as required under the Hedge. On or about August 11, 2009 the Cap Consultant prepared a Term Sheet dated as of August 11, 2009 ("Market Quotation Term Sheet") to be transmitted to qualifying Reference Market-makers for the purpose of soliciting bids ("Market Quotations") for the cost to acquire the replacement cap rate protection. True and correct copies of the Market Quotation Term Sheet, together with the e-mail solicitation message transmitted to Reference Market-makers on August 20, 2009, are being electronically filed concurrently herewith.

On or about August 25, 2009, Creditor received the Market Quotations from three Capmark-approved Reference Market-makers responding to the Market Quotation Term Sheet, and one 'pass' response. On August 27, 2009 Creditor received from the Cap Consultant the summary recap of the Market Quotation solicitation process and bidding

-3-

results (the "Market Quotation Recap Correspondence"). True and correct copies of completed Market Quotations and the e-mailed 'pass' response, each dated August 25, 2009, and the Market Quotation Recap Correspondence are being electronically filed concurrently herewith.

On September 17, 2009 Creditor transmitted written notice to Debtor (the "Valuation Notice"), as required by the Hedge, notifying Debtor that Creditor had, in accordance with the Hedge, obtained Market Quotations for replacement rate cap protection, and that Creditor had suffered other incidental and consequential damages and incurred recoverable fees and costs as a result of Debtor's breach of the Hedge and the Early Termination of the same. A true and correct copy of the Valuation Notice is being electronically filed concurrently herewith.

A summary of Creditor's damages is as follows:

| | |
|---|---|
| Market Quotation from the Cap Consultant: | $ 40,500.00 |
| Creditor's Accrued Attorneys Fees and Costs: | $10,000.00 |
| Cap Consultant Fees: | $  1,750.00 |
| **TOTAL CLAIM:** | **$52,250.00** |

The foregoing claims are not exhaustive. Accounting, legal and other investigations are ongoing and will generate additional fees owed to Creditor by Debtor. The right to amend and supplement the Proof of Claim and the DQ is hereby reserved and all claims are reserved, according to proof, whether stated herein or not.

///

///

///

-4-

# DERIVATIVE QUESTIONNAIRE
## KSC AFFORDABLE HOUSING INVESTMENT FUND, LLC
## BANKRUPTCY OF LEHMAN BROTHERS SPECIAL FINANCING, INC.
## CASE NO.: 08-13888

## SCHEDULE OF DOCUMENTS

1. Confirmation of LIBOR Interest Rate Cap Agreement Global ID: 2689265 dated October 10, 2006, together with ISDA Master Agreement.

2. Loan Agreement dated August 9, 2006 between Creditor's affiliate, M2 178 Vallejo LP, and Capmark Bank.

3. Termination Notice dated August 18, 2009 (Notice of Early Termination) together with Federal Express Delivery confirmations.

4. Valuation Statement dated September 16, 2009 together with:
   a. Bid term sheet dated August 11, 2009 for solicitation of Market Quotations from Market Reference-makers prepared by Kensington Capital Advisors ("KCA"), with Market Quotation Form (Interest Rate Cap) and electronic mail solicitation notice;
   b. Market Quotation bid results recap correspondence from KCA dated August 27, 2009, together with four (4) bid responses;
   c. Invoice of KCA;
   d. Invoice of Counterparty's legal counsel Bret H. Reed, Jr., A Law Corp.; and
   e. Valuation Statement Federal Express delivery confirmations.

5. Summary Attachment to Derivative Questionnaire.