**From:** Koyama, Satoko [mailto:satoko.koyama@lamcollc.com]
**Sent:** Thursday, December 02, 2010 10:00 AM
**To:** Bret H. Reed, Jr.
**Subject:** RE: We would like to postpone the call today

Understood. I will call your office at 1:30 p.m. (PST) / 4:30 p.m. (EST).

**From:** Bret H. Reed, Jr. [mailto:bhrjr@reedlawcorp.com]
**Sent:** Thursday, December 02, 2010 1:00 PM
**To:** Koyama, Satoko
**Subject:** RE: We would like to postpone the call today

1:30 P.M. Pacific today is fine.

---
Bret H. Reed, Jr., Esq.
BRET H. REED, JR., A LAW CORPORATION
2737 East Coast Highway
Corona Del Mar, CA 92625
Telephone: (949) 955-9150
Facsimile: (949) 566-0090
E-mail: bhrjr@reedlawcorp.com

**CONFIDENTIALITY NOTICE TO RECIPIENT:** The information contained in this e-mail message and in any attachments thereto may contain confidential information covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged. It is intended only for the use of the recipient (s) named above. If you received this e-mail in error, you are hereby notified that any review, use, dissemination, distribution or copying of this message is strictly prohibited. Please notify the sender immediately of the error by return e-mail and please delete this message from your system. If all pages

**From:** Koyama, Satoko [mailto:satoko.koyama@lamcollc.com]
**Sent:** Wednesday, December 08, 2010 6:32 AM
**To:** Bret H. Reed, Jr.
**Cc:** Kapoor, Manish
**Subject:**

Bret,

I have not had a chance to verify claim numbers listed below, but I hereby confirm that the numbers listed as "Proposed allowed claim amount" are exactly the same as I communicated to you, except for Easton Investments II, the number should be $30,000.

With respect to KSC Affordable, UCC's view is that their termination in late August 2009 is not acceptable. As such our allowable claim is based on the current MTM + expenses.

We look forward to hearing from you.

Kind regards,


Satoko S. Koyama
Vice President - Derivatives Legal
LAMCO LLC
*Legacy Asset Management Company*
*a subsidiary of Lehman Brothers Holdings Inc.*

1271 Avenue of the Americas

**From:** Koyama, Satoko [mailto:satoko.koyama@lamcollc.com]
**Sent:** Thursday, January 06, 2011 2:06 PM
**To:** Bret H. Reed, Jr.
**Cc:** Bogomilsky Alan; Moore, Jim
**Subject:** RE: Metavante Decision and Transcript - claim of KSC Affordable Housing Investment Fund, LLC against LBSF

There is no need to submit KSC Affordable market quotation process. As I said before, our view is that KSC played the market until they were forced to replace the hedge. Whether or not the effective date of the trade was forward starting is not relevant in our view.

---

**From:** Bret H. Reed, Jr. [mailto:bhrjr@reedlawcorp.com]
**Sent:** Thursday, January 06, 2011 5:02 PM
**To:** Koyama, Satoko
**Cc:** Bogomilsky Alan; Moore, Jim
**Subject:** RE: Metavante Decision and Transcript - claim of KSC Affordable Housing Investment Fund, LLC against LBSF

Thanks Satoko. Several points jump out immediately from what you attached, including but not limited to the following:

- The Metavante case concerned a swap transaction, with ongoing mutual payment obligations of both LBSF and Metavante, with an apparent suspension by Metavante of its required payments based on a claimed default by LBSF under the swap; KSC's agreement was a rate cap agreement, not a swap; KSC paid the price of the hedge up front in 2006, and the only ongoing payment obligations were from LBSF to KSC if the Bond rates exceeded the Strike Rate; KSC never suspended any payments.

- Metavante's swap contract was in effect at the time of the LBSF BK filing; KSC's cap agreement had a future effective date of August 2009.

- Most significantly, Metavante didn't terminate it swap arrangement with LBSF during the 12-month period following the LBSF BK on 10/3/08; KSC followed the Early Termination provisions prior to the effective date of the cap agreement in August 2009 several months prior to the first anniversary of the LBSF BK filing date.

As Judge Peck says on Pg. 109 of the attached transcript, Metavante 'has attempted neither to liquidate, terminate or accelerate the Agreement'. In contrast, KSC did terminate on or about the cap agreement's effective date.

Further, Judge Peck addresses the issue that is before him in that case, being ". . . whether Metavante's withholding performance is permitted." He emphasizes the dispositive issue that what was before the court was ". . . a garden variety executory contract, one for which there remains something still to be done on both sides . . ." in terms of payment obligations. Whatever the court may have said about swaps has no relevance to the instant cap agreement that had yet to go into effect, in connection with which only one party had any remaining payment obligations: LBSF. That Metavante had never terminated its swap was the material factor in the Court's concluding that, more than a year after the LBSF BK was filed, there was a waiver. KSC, as the non-defaulting party, timely terminated this cap contract that was executory only on the part of LBSF, at the time the cap was to become effective.

For these and other reasons, the swap claim transcript you provided has little to no relevance

We maintain our view that the termination of this forward starting cap in August of 2009 well within the time period referenced by Judge Peck. The Early Termination provisions were implemented at a time when the earlier replacement cap market turmoil had calmed down, replacement cap bidders had re-entered the marketplace and cap pricing had fallen from the highs of the final quarter of 2008. The process was valid, effective and in accordance with the relevant Early Termination provisions of the KSC – LBSF cap.

Based on the foregoing, we will be transmitting to you shortly the MQ bid documentation supporting the KSC claim. Thank you Satoko.

Bret

---

Bret H. Reed, Jr., Esq.
BRET H. REED, JR., A LAW CORPORATION
2737 East Coast Highway
Corona Del Mar, CA 92625
Telephone: (949) 955-9150
Facsimile: (949) 566-0090
E-mail: bhrjr@reedlawcorp.com