KEVIN J. NASH, ESQ.
GOLDBERG WEPRIN FINKEL
   GOLDSTEIN LLP
*Attorneys for Rocco F. Andriola*
1501 Broadway, 22nd Floor
New York, New York 10036
(212) 221-5700

Hearing Date: June 2, 2011
10:00AM

**CLAIM NO. 10544**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re

LEHMAN BROTHERS HOLDINGS INC., *et al.*,

                         Debtors.
------------------------------------------------------------X

Chapter 11

Case No. 08-13555 (JMP)

(Jointly Administered)

## RESPONSE OF ROCCO F. ANDRIOLA TO DEBTORS'
## ONE HUNDRED EIGHTEENTH OMNIBUS OBJECTION TO CLAIM
## (TO RECLASSIFY PROOFS OF CLAIM AS EQUITY INTERESTS)
## RE: CLAIM NO. 10544

**TO THE HONORABLE JAMES M. PECK,**
**UNITED STATES BANKRUPTCY JUDGE:**

       Rocco F. Andriola ("Andriola"), by his attorneys, Goldberg Weprin Finkel Goldstein LLP, as and for his response to Debtors' one hundred eighteenth omnibus objection to claims ("Objection"), specifically objecting to the allowance of proof of claim submitted by Andriola (Claim No. 10544), represents and shows this Court as follows:

       1.     Claimant Andriola is a former employee and managing director of Lehman Brothers Inc. ("Lehman"), having first commenced employment on November 10, 1986, and thereafter worked continuously for Lehman until November 10, 2008 (twenty-two years to the date).

2. Andriola's yearly compensation was paid in the form of a base salary, plus a bonus funded by a combination of cash, restricted stock units ("RSUs") and stock options. The RSUs were subject to a vesting period of five years.

3. Following the bankruptcy filing, Andriola filed a claim in the total sum of $ 1,507,706 for unpaid deferred compensation, comprised of unpaid and unvested RSUs relating to employment primarily in the years 2003–2007 ($822,269) and stock options provided to him in years 1999–2003 ($685,437).

4. The Andriola claim has come under objection and the Debtors seek to reclassify it as an equity interest. Since the claim involves certain stock of the company, the Debtor naturally posits it as an equity interest and not a right to payment. At first blush, the reclassification seems proper, but the Objection involves a more nuanced analysis in view of the fact that Andriola's interest had not vested at the time of the bankruptcy and therefore, had not ripened into actual stock ownership.

5. Thus, it is not altogether clear that the claim should be summarily reclassified as an equity interest prior to the actual vesting. Indeed, Andriola's participation in the awards program does not fit squarely within the definition of an "equity security" under the Bankruptcy Code.

6. Section 101(15) of the Bankruptcy Code defines "equity security" as "(A) share in a corporation, whether or not transferable or denominated 'stock', or similar security; (B) interest of a limited partner in a limited partnership; or (C) warrant or right, other than a right to convert, to purchase, sell, or subscribe to a share, security, or interest of a kind specified in subparagraph (A) or (B) of this paragraph."

2

7. The unpaid and unvested RSUs at issue here do not fall into any of these categories including subsection (C) as Andriola did not actually have the "right . . . to purchase, sell, or subscribe to a share, security . . . ." In fact, Andriola's unpaid and unvested RSUs lacked any indicia of ownership generally associated with equity interest, such as voting rights, ability to sell the stock, or possession of stock certificates. See In re Motels of Am., 146 B.R. 542 (Bankr. Del. 1992).

8. Lehman's own Question and Answer prospectus on the Equity award program expressly provides that RSUs may not be sold, traded, pledged, or transferred for a defined period of time. See 2008 Equity Award Program, Questions and Answers for Bonus-Eligible Employees and Production-Based Employees, p. 16 (in defining RSUs, noting that "[g]enerally, RSUs cannot be sold, traded, pledged or transferred" during the three-year period after the grant date, or November 30, 2011). (See Definitional page attached hereto as Exhibit "A").

9. The Debtors assume without a fact-specific analysis that unpaid and unvested RSUs constitute equity interests. The Debtors' reliance on section 510(b) and In re Enron Corp., 341 B.R. 141 (Bankr. S.D.N.Y. 2006) is misplaced as that case did not involve *unvested* RSUs or similar compensation methods. The Enron Court also made it a point to note that its decision is limited to its facts. Enron, 341 B.R. at 144 fn. 3 ("The Court notes that its conclusions apply only to stock options similar to those presented here. The Court issues no opinion as to whether stock options might be designed in such fashion that would result in different treatment under section 510(b)."). In contrast to the situation here, Enron involved stock options which Enron employees were free to, but chose not to, exercise before filing of the petition. Enron, 341 B.R. at 151–52.

3

10. Because Andriola was not able to exercise his rights with respect to the RSUs prior to the Lehman bankruptcy filing, this case presents a fundamentally different set of facts. Indeed, there is a distinction between the RSUs and the stock options, with only the latter being exercisable.

11. Likewise, Debtors' reliance on the "phantom stock" portion of the Enron decision is also unavailing. Because the "phantom stock", or stock for which delivery of shares is deferred for tax purposes, at issue in Enron was vested before the filing of the petition, the purchaser there had the right to physical possession of the shares. Enron, 341 B.R. at 162–63. By contrast, Andriola did not enjoy any actual rights in connection with the unvested RSUs at the time of the Debtors' bankruptcy filings even though his entitlement to compensation had already matured based upon past service.

12. This past service gave rise to a matured right to payment, with payment simply deferred to a later date. Because this payment can no longer be made, Andriola should have a claim for purposes of bankruptcy, at least with respect to the RSUs if not the whole, even if a part of the funding mechanism was through potential stock in the company.

13. Finally, as a pure procedural matter, subordination of a claim under section 510(b) appears subject to an adversary proceeding requirement under Bankruptcy Rule 7001(8) and can not be done by motion. Fed. R. Bankr. P. 7001(8) ("The following are adversary proceedings . . . (8) a proceeding to subordinate any allowed claim or interest, except where a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination.").

WHEREFORE, for all the reasons advanced throughout, Debtors' objection to the allowance of proof of claim submitted by Andriola (Claim No. 10544) should be denied consistent with the foregoing, together with such other and further relief as is just and proper.

Dated: New York, New York
May 18, 2011

>GOLDBERG WEPRIN FINKEL
>GOLDSTEIN LLP
>*Attorneys for Rocco F. Andriola*
>1501 Broadway, 22nd Floor
>New York, New York 10036
>(212) 221-5700
>
>By: _____
>Kevin J. Nash

TO:

Weil, Gotshal & Manges LLP
*Attorneys for the Debtors*
767 Fifth Avenue
New York, New York 10153
Attn:   Robert J. Lemons, Esq
        Mark Bernstein, Esq.

Office of the United States Trustee for Region 2
33 Whitehall Street, 21st Floor
New York, New York 10004
Attn:   Tracy Hope Davis, Esq.
        Elisabetta Gasparini, Esq.
        Andrea B. Schwartz, Esq.

Milbank, Tweed, Hadley & McCloy LLP
*Attorneys for the Official Committee*
*of Unsecured Creditors*
1 Chase Manhattan Plaza
New York, New York 10005
Attn:   Dennis F. Dunne, Esq.
        Dennis O'Donnell, Esq.
        Evan Fleck, Esq.

H:\sylvia\word\Andriola, Rocco\Lehman Objection Response (5.18.11) (v.5).doc