Hearing Date and Time: June 15, 2011 at 10:00 a.m. (Prevailing Eastern Time)
Objection Date and Time: June 8, 2011 at 4:00 p.m. (Prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JCS – 6031)

Attorneys for the Ad Hoc Group
of Lehman Brothers Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------x
In re                                                            :       Chapter 11 Case No.
                                                                 :
**LEHMAN BROTHERS HOLDINGS INC., et al.,**   :       08-13555 (JMP)
                                                                 :
                                                   Debtors.      :       (Jointly Administered)
---------------------------------------------------------------------x

**MOTION OF THE AD HOC GROUP OF LEHMAN BROTHERS CREDITORS
PURSUANT TO SECTIONS 105(a) AND 1109(b) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2019 AND 7026
TO ESTABLISH DISCLOSURE PROCEDURES**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Group of Lehman Brothers Creditors (the "Group"), by and through its undersigned counsel, moves to establish and implement disclosure procedures, and respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      On April 13, 2011, this Court held a hearing to consider the Debtors' motion (the "2019 Motion") to compel the Group to make disclosures required by Rule 2019 of the Federal Rules of Bankruptcy Procedure ("Rule 2019"). At such hearing, the Group expressed concerns regarding the potential dangers of what might be undisclosed conflicts of interest held by parties who seek to participate materially in the resolution of these chapter 11 cases. Accordingly, in

response to the 2019 Motion (the "Group's Response"), the Group proposed that the Court adopt uniform disclosure procedures that would be specifically tailored to ensure greater transparency in these cases.

2.  At the hearing on the 2019 Motion, the Court understandably focused on the narrow issue before it and ruled that (i) Rule 2019 applied to ad hoc committees, such as the Group, and (ii) the Group must make complying disclosures. That ruling is now law of the case. On April 22, 2011, the Group filed a statement which it understands that the Debtors have found sufficient and compliant with the Court's ruling. To date, no other ad hoc committee or other collection of creditors has filed similar disclosures, notwithstanding that an additional plan of reorganization has now been filed by another "collection" of creditors and others may follow. Nor have the Debtors sought to require additional disclosures from any other collection of creditors.

3.  The Group is mindful of the Court's expressed concerns regarding what might have been questionable timing of requests to enforce disclosure rules in other cases. As such, the Group believes that it is appropriate to bring this Motion at the present time while the issues raised by the Debtors' 2019 Motion and the Group's Response thereto are still fresh. Accordingly, by this Motion, in the interest of fair and transparent disclosure, the Group respectfully requests the Court to adopt uniform disclosure procedures concerning discrete categories of creditors in these cases. The Group has discussed the relief set forth herein, including the sharing of a copy of this Motion in advance of its filing with the Debtors, and understands that the Debtors intend to join in the Motion in the interests of full transparency and disclosure in these cases.

2

## RELIEF REQUESTED

4.      By this Motion, pursuant to sections 105 and 1109 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2019 and 7026 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Group seeks entry of an order establishing and implementing uniform disclosure procedures in substantially similar form attached hereto as Annex A (the "Proposed Disclosure Procedures Order") with respect to each of the following persons or group of persons:

- Any plan proponent;

- Any Participant in the plan discovery (as that term is defined in the Order Establishing Schedule and Procedures In Connection with Discovery Related to Plan Confirmation and Other Issues (the "Plan Discovery Order") [Docket No. 16003]);

- Any parties acting in cooperation or concert with others in these cases whether or not represented jointly or by a single law firm or other advisors; and

- To the extent any formal plan negotiation process is ever implemented, whether by Court order, such as mediation, or by effort of the Debtors or the Official Committee of Unsecured Creditors appointed in these chapter 11 cases (the "Creditors Committee"), any party seeking to participate in any such negotiation.

## JURISDICTION

5.      This Court has subject matter jurisdiction to consider and determine this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

6.      On September 15, 2008 and periodically thereafter, LBHI and certain of its subsidiaries (together with LBHI, the "Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code.

7.      On December 15, 2010, the Group filed a joint chapter 11 plan for certain of the Debtors [Docket No. 13504] and a related disclosure statement [Docket No. 13505].

8. On January 25, 2011, the Debtors filed a first amended joint chapter 11 plan [Docket No. 14150] and a related disclosure statement [Docket No. 14151].

9. On March 30, 2011, the Debtors filed their 2019 Motion [Docket No. 15461]. On April 8, 2011, the Group filed the Group's Response to the Debtors' 2019 Motion [Docket No. 15746]. On April 18, 2011, the Court entered an order compelling the Group to comply with Rule 2019 [Docket No. 16107]. On April 22, 2011, the Group filed a statement pursuant to Rule 2019 [Docket No. 16222].

10. On April 25, 2011, certain creditors of LBHI, various operating subsidiaries of the Debtors, and creditors of certain other affiliated entities (the "Non-Consolidation Plan Proponents") filed a joint chapter 11 plan for certain of the Debtors (the "Non-Consolidation Plan") [Docket No. 16229] and a related disclosure statement (the "Non-Consolidation Disclosure Statement") [Docket No. 16230].

11. On April 27, 2011, the Group filed an amended joint chapter 11 plan for certain of the Debtors [Docket No. 16315] and a related disclosure statement [Docket No. 16316].

12. Throughout theses cases, in addition to the Group, numerous other conglomerations of creditors and counsel, including the "Non-Consolidation Plan Proponents," have acted in a coordinated and collective manner to advance their various positions.

13. The Non-Consolidation Plan Proponents consist of certain creditors holding asserted claims across the Lehman capital structure. In the Non-Consolidation Plan, the Non-Consolidation Plan Proponents are listed as ten separate creditors or groups of creditors, represented by eight separate attorneys.[1] According to the Non-Consolidation Plan, Bingham

---

[1] The Non-Consolidation Plan lists the following Non-Consolidation Plan Proponents and attorneys representing such proponents: (i) Deutsche Bank AG represented by Bingham McCutchen LLP; (ii) State Street Bank and Trust Company represented by Bingham McCutchen LLP; (iii) Cyrus Capital Partners, LP, Silver Point Capital L.P., and York Capital Management Global Advisors, LLC represented by Brown Rudnick LLP; (iv)

4

McCutchen LLP and Dewey & LeBoeuf LLP each represent two distinct sets of Non-Consolidation Plan Proponents.[2] And, in two instances, a particular Non-Consolidation Plan Proponent is listed under two counsel headings as such entity is represented in different capacities by separate counsel.[3] Despite the fact that the Non-Consolidation Plan Proponents are coordinating their actions and acting collectively to advance their rights, no statement pursuant to Rule 2019 has ever been filed by the Non-Consolidation Plan Proponents.

14. Other creditors, largely made up of members of the Non-Consolidation Plan Proponents, have also appeared in these cases as various groups with overlapping membership. Specifically, the ad hoc consortium of Lehman Brothers Special Financing Inc. claimants represented by Brown Rudnick LLP (the "Brown Rudnick LBSF Consortium")[4], the ad hoc

---

Morgan Stanley & Co. International plc. and Morgan Stanley Capital Services Inc. represented by Cadwalader Wickersham & Taft LLP; (v) D.E. Shaw Composite Portfolios, L.L.C., D.E. Shaw Oculus Portfolios, L.L.C., Goldman Sachs Bank U.S.A. and Goldman Sachs International represented by Cleary Gottlieb Steen & Hamilton LLP; (vi) Credit Agricole CIB represented by Clifford Chance LLP; (vii) Credit Suisse International represented by Cravath Swaine & Moore LLP; (viii) certain funds managed by and/or affiliated with Angelo, Gordon & Co., L.P., Contrarian Capital Management, LLC, Goldentree Asset Management, LP, Hayman Capital Management, LP, Knighthead Capital Management, LLC, Mason Capital Management LLC, Mount Kellett Capital Management, Oaktree Capital Management, L.P., and Serengeti Asset Management LP represented by Dewey & LeBoeuf LLP; (ix) The Royal Bank of Scotland plc represented by Dewey & LeBoeuf LLP; and (x) Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries, and Silver Point Capital, L.P. on behalf of its affiliated investment funds represented by Paul, Weiss Rifkind, Wharton & Garrison LLP.

[2]   Bingham McCutchen LLP represents both Deutsche Bank AG and State Street Bank and Trust Company. Dewey & LeBoeuf LLP represents certain funds managed by and/or affiliated with Angelo, Gordon & Co., L.P., Contrarian Capital Management, LLC, Goldentree Asset Management, LP, Hayman Capital Management, LP, Knighthead Capital Management, LLC, Mason Capital Management LLC, Mount Kellett Capital Management, Oaktree Capital Management, L.P., and Serengeti Asset Management LP and The Royal Bank of Scotland plc.

[3]   Silver Point Capital, L.P. is represented by Brown Rudnick LLP and, on behalf of its affiliated investment funds, by Paul, Weiss, Rifkind, Wharton & Garrison LLP. Certain funds managed by and/ or affiliated with Oaktree Capital Management, L.P. are represented by Dewey & Leboeuf LLP and Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries, is represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP.

[4]   According to the verified statement submitted by Brown Rudnick LLP pursuant to Rule 2019, dated August 19, 2010 [Docket No.10887], the Brown Rudnick LBSF Consortium consists of the following entities: Anchorage Advisors; Blue Angel Claims LLC; Canyon Capital Advisors LLC; CBW LLC; CFIP Master Fund, Ltd.; Fir Tree, Inc.; GFA I LLC; Longacre Fund Management, LLC; Monarch Alternative Capital LP; Serengeti Asset Management LP; Silver Point Capital LP; Stone Lion Capital Partners LP; Stonehill Capital Management LLC; TSO LLC; and Varde Partners, Inc.

5

committee of holders of notes issued by Lehman Brothers Treasury Co. B.V. ("<u>LBT Noteholders</u>") represented by Brown Rudnick LLP (the "<u>Brown Rudnick LBT Ad Hoc Group</u>")[5], the ad hoc committee of LBT Noteholders represented by Dewey & LeBoeuf LLP (the "<u>Dewey & LeBoeuf LBT Ad Hoc Committee</u>")[6], the ad hoc committee of operating company creditors (the "<u>Operating Company Ad Hoc Committee</u>")[7] and certain significant derivatives creditors of

---

[5] According to the verified statement submitted by Brown Rudnick LLP pursuant to Rule 2019, dated August 19, 2010 [Docket No.10887],the Brown Rudnick LBT Ad Hoc Committee consists of the following entities: Aurelius Capital Management, LP; Citigroup Global Markets, Inc.; Cyrus Capital Partners LP; Fir Tree Partners LP; Ore Hill Partners, LLC; Monarch Alternative Capital LP; The Royal Bank of Scotland plc; Silverpoint Capital LP; TPG Opportunity Fund I, LP; and Varde Partners, Inc.  Brown Rudnick LLP signed the Statement of Various LBT Noteholders regarding the Motion of the Ad Hoc Group of Lehman Brothers Creditors for Entry of (i) an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof and (ii) an Order Approving the Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Filed by the Ad Hoc Group of Lehman Brothers Creditors [Docket No. 15671] on behalf of certain funds and accounts managed by Cyrus Capital Partners, LP, Ore Hill Partners LLC, Morgan Stanley & Co. International plc, Silver Point Capital LP, and York Capital Management Global Advisors, LLC.

[6] Dewey & LeBoeuf LLP signed the Statement of Various LBT Noteholders regarding the Motion of the Ad Hoc Group of Lehman Brothers Creditors for Entry of (i) an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof and (ii) an Order Approving the Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Filed by the Ad Hoc Group of Lehman Brothers Creditors [Docket No. 15671] on behalf of certain funds managed by: Angelo, Gordon & Co., L.P.; Caspian Capital Advisors; Contrarian Capital Management, LLC; Goldentree Asset Management, LP; Hayman Capital; Knighthead Capital Management, LLP; Mason Capital Management LLC; Mount Kellett Capital Management; Oaktree Capital Management LP; Serengeti Asset Management LP; Stonehill Capital Management LLC; and Vendor Capital Management, LP.

[7] The Operating Company Ad Hoc Committee, according to the Response of the Operating Company Creditors to the Motion of the Ad Hoc Group of Lehman Brothers Creditors Seeking, Among Other Things, an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof [Docket No. 15668], consists of the following entities: Deutsche Bank AG represented by Bingham McCutchen LLP; Morgan Stanley Capital Services Inc. and Morgan Stanley & Co. International plc represented by Cadwalader, Wickersham & Taft LLP; D.E. Shaw Composite Portfolios L.L.C., D.E. Shaw Oculus Portfolios, L.L.C., Goldman Sachs Bank USA (successor by merger to Goldman Sachs Capital Markets, L.P.), and Goldman Sachs International represented by Cleary Gottlieb Steen & Hamilton LLP; Credit Agricole CIB represented by Clifford Chance US LLP; Credit Suisse International represented by Cravath Swaine & Moore; The Royal Bank of Scotland plc represented by Dewey & LeBoeuf LLP; and Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries, and Silver Point Capital, L.P. on behalf of its affiliated investment funds represented by Paul, Weiss Rifkind, Wharton & Garrison LLP.

6

Lehman Brothers Special Financing Inc. (the "LBSF Derivative Creditors Ad Hoc Committee")[8] have each appeared or otherwise have filed joint pleadings in these chapter 11 cases.[9]

15. No statement pursuant to Rule 2019 has ever been filed by the Dewey & LeBoeuf LBT Ad Hoc Committee, the Operating Company Ad Hoc Committee or the LBSF Derivative Creditors Ad Hoc Committee.

16. Existing disclosures with respect to other conglomerations, even when made, are less than elucidating on the issue of where the economic interests of creditors lie. On April 13, 2011, Cleary Gottlieb Steen & Hamilton LLP ("Cleary Gottlieb"), as attorneys for various entities holding claims and/or interests in the Debtors, including Barclays Capital Inc. and affiliates, Barclays Bank, PLC and affiliates, and Non-Consolidation Plan Proponents D.E. Shaw Composite Portfolios, L.L.C., D.E. Shaw Oculus Portfolios, L.L.C., Goldman Sachs Bank U.S.A. and Goldman Sachs International, filed a second amended verified statement pursuant to Rule 2019 (the "Cleary Gottlieb Statement"). The Cleary Gottlieb Statement, however, is

---

[8] The LBSF Derivative Creditors Ad Hoc Committee, according to the Objection of Certain LBSF Derivative Creditors to Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules for Authorization to Enter Into Certain Asset Management and Related Agreements [Docket No. 8029] consists of the following entities: Deutsche Bank AG represented by Bingham McCutchen LLP; Morgan Stanley & Co. International plc. and Morgan Stanley Capital Services Inc. represented by Cadwalader Wickersham & Taft LLP; D.E. Shaw Composite Portfolios, L.L.C., D.E. Shaw Oculus Portfolios, L.L.C., Goldman Sachs Bank U.S.A. and Goldman Sachs International represented by Cleary Gottlieb Steen & Hamilton LLP; Credit Suisse International represented by Cravath Swaine & Moore LLP; The Royal Bank of Scotland plc represented by Dewey & LeBoeuf LLP; Oaktree Capital Management, L.P., solely in its capacity as agent on behalf of certain funds advised by it or their respective subsidiaries represented by Paul, Weiss Rifkind, Wharton & Garrison LLP; and Bank of America, N.A. and Merrill Lynch International represented by Shearman & Sterling LLP.

[9] See Objection of Certain LBSF Derivative Creditors to Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules for Authorization to Enter Into Certain Asset Management and Related Agreements [Docket No. 8029]; Response of the Operating Company Creditors to the Motion of the Ad Hoc Group of Lehman Brothers Creditors Seeking, Among Other Things, an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof [Docket No. 15668]; Statement of Various LBT Noteholders regarding the Motion of the Ad Hoc Group of Lehman Brothers Creditors for Entry of (i) an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof and (ii) an Order Approving the Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Filed by the Ad Hoc Group of Lehman Brothers Creditors [Docket No. 15671].

restricted such that those entities "may hold claims against and/or interests in the Debtors' estates in addition to those disclosed herein that do not fall within the scope of Cleary Gottlieb's representation of such entities." (Cleary Gottlieb Statement ¶ 6.)

17. Similarly, on August 19, 2010, Brown Rudnick LLP, as attorneys for the Brown Rudnick LBSF Consortium and the Brown Rudnick LBT Ad Hoc Group, filed a verified statement pursuant to Rule 2019 [Docket No. 10887] in which it listed fifteen entities as members of the Brown Rudnick LBSF Consortium and ten entities as members of the Brown Rudnick LBT Ad Hoc Group. The statement filed by Brown Rudnick LLP does not disclose, among other things, the nature and amount of the claims or interests held by the members of either the Brown Rudnick LBSF Consortium or the Brown Rudnick LBT Ad Hoc Group, and the time of acquisition.

## ARGUMENT

### A.    There Is a Pressing Need for Uniform Disclosure Procedures in These Cases

18. The Debtors have projected that there will be roughly $361 billion of allowed claims against the twenty-three Debtors. Certain of those claims are held by Debtors, certain are held by the Debtors' foreign affiliates (which themselves may be the subject of insolvency proceedings), and certain are held by third parties who are participating not only in these cases, but also in the proceedings of the Debtors' foreign affiliates. Certain of those claims are guarantee claims (sometimes held by a Debtor or a foreign affiliate of the Debtors) for which there is a related primary claim against a Debtor or a foreign affiliate. Also, in some instances, parties may hold significant claims against foreign affiliates (not included in the $361 billion of estimated allowed claims) that are unrelated to less substantial claims against the chapter 11 Debtors. As a result of this complexity, coupled with the web of entities appearing together in

8

these cases through a multitude of attorneys, the prospect of conflicting motives arising during plan negotiations and later plan-related litigation is considerable. To promote fundamental fairness and transparency in these cases, the Group respectfully submits that any party seeking to participate in plan litigation be required to provide comprehensive disclosure regarding their economic interests.

19. Singular entities with sufficient size in the capital structure that aim to participate in plan negotiations and plan-related litigation should be required to disclose their economic interests. As this Court is already aware, there are parties in these cases that intend to take action and voice concerns in an individual capacity with respect to plan-related issues. For instance, CarVal Investors UK Limited recently filed a pleading stating that it "holds or has a controlling economic interest in claims exceeding $5 billion against the Debtors" and "strongly opposes the Debtors' and the Ad Hoc Group's proposed plans in their current forms."[10] Likewise, Bank of America, N.A. ("BofA"), has filed a pleading stating that BofA believes that both the Group's plan and the Debtors' plan are "objectionable and not confirmable."[11]

20. The Group is not intending to disparage any of the foregoing parties. However, even a single party can hold material but undisclosed interests throughout the global Lehman enterprise, and such undisclosed interests can impact the outcome of these chapter 11 cases. For example, a creditor may hold a comparatively minor claim against a Debtor, but also hold a substantial claim against a non-Debtor affiliate. That creditor may involve itself in plan-related litigation claiming to speak on account of its economic interests in a Debtor, but with the hidden

---

[10] Joinder of CarVal Investors UK Limited to Response of Operating Company Creditors to Motion of Ad Hoc Group of Lehman Brothers Creditors, Seeking, Among Other Things, Order Scheduling Disclosure Statement Hearing and Approving Form and Manner of Notice Thereof ¶ 2 [Docket No. 15674].

[11] Limited Response of Bank of America, N.A. to the Motion of the Ad Hoc Group of Lehman Brothers Creditors Seeking, Among Other Things, an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Therein ¶ 3.

motive to advance the position of the non-Debtor affiliate and thereby its own interest, which is derivative thereof.

21. The above is certainly an oversimplified example and, upon information and belief, a number of significant third-party creditors in these cases hold exceedingly more complex positions across the global Lehman Brothers capital structure. Indeed, unlike the holdings of such parties, the Group's positions, which are heavily weighted toward senior bonds issued by LBHI, are relatively easy to understand. In order for the plan process to work in these cases, all parties in interest, including the participants in the plan process and, more importantly, the Court needs to know who is standing at the podium before it.

22. To that end, the Group believes that the Court can and should implement uniform procedures requiring parties that intend to be active participants in plan negotiations and plan-related litigation to disclose their interests. Specifically, the Group suggests that the following parties be required to make public disclosures regarding their interests:

- Any plan proponent;

- Any Participant in the plan discovery (as that term is defined in the Plan Discovery Order [Docket No. 16003]);

- Any parties acting in cooperation or concert with others whether or not represented jointly or by a single law firm or other advisors; and

- To the extent any formal plan negotiation process is ever implemented, whether by Court order, such as mediation, or by effort of the Debtors or the Creditors Committee, any party seeking to participate in any such negotiation.

23. With respect to the type of information that such parties must disclose, the Group suggests that such parties be required to disclose, at a minimum, the following:

- All holdings including those of affiliates broken down on a creditor legal entity basis and Lehman legal entity basis, including material foreign affiliates;

- Whether holdings are held solely of record or beneficially and, to the extent the power to vote such holdings is not under common control, how such voting power is divided;

10

- The nature of the claim, e.g., whether such claim is bond debt, a derivative claim, a guarantee claim, etc., and if such claim is a guarantee claim, the nature of the underlying primary claim and the basis for asserting the guarantee;

- Whether such claim was acquired or accrued prepetition or postpetition and, if such claim was acquired postpetition, the date of purchase and the price paid;

- Any agreements, whether oral or written, regarding the governance of any group of entities working together; and

- Any arrangements or agreements, whether oral or written, with respect to the sharing of fees and costs among parties.

B.   **Rule 2019 Is Not A Wholly Effective Tool for Enforcing Such Disclosures**

24.    The Debtors' 2019 Motion was heard at the April 13, 2011 omnibus hearing. At that time, the Court found that, in light of its consolidated pleadings and action, the Group was a "committee" for the purpose of Rule 2019. The Court further noted that a "collection of creditors that has filed a competing plan of reorganization" presents "a case of obvious enforcement" of the Rule. (Hr'g Tr. 54:24 – 54:25, 55:2, April 13, 2011.)

25.    Notwithstanding, the Non-Consolidating Plan Proponents have now filed their own plan and have made virtually none of the disclosures required by this Court. Similarly, the Brown Rudnick LBSF Consortium, the Brown Rudnick LBT Ad Hoc Group, the Dewey & LeBoeuf LBT Ad Hoc Committee, the Operating Company Ad Hoc Committee, and the LBSF Derivative Creditors Ad Hoc Committee have also been active in these cases. Each has appeared or otherwise has filed joint pleadings with a view toward affecting the outcome of these chapter 11 cases. (See Objection of Certain LBSF Derivative Creditors to Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules for Authorization to Enter Into Certain Asset Management and Related Agreements [Docket No. 8029]; Response of the Operating Company Creditors to the Motion of the Ad Hoc Group of Lehman Brothers Creditors Seeking, Among Other Things, an Order Scheduling a Disclosure

11

Statement Hearing and Approving the Form and Manner of Notice Thereof [Docket No. 15668]; Statement of Various LBT Noteholders regarding the Motion of the Ad Hoc Group of Lehman Brothers Creditors for Entry of (i) an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof and (ii) an Order Approving the Disclosure Statement for the Joint Substantively Consolidating Chapter 11 Plan for Lehman Brothers Holdings Inc. and Certain of its Affiliated Debtors Other than Merit, LLC, LB Somerset LLC and LB Preferred Somerset LLC, Filed by the Ad Hoc Group of Lehman Brothers Creditors [Docket No. 15671].) Despite these actions, none of the foregoing groups have made the level of disclosure mandated by this Court with respect to the Group.

26.    It appears that certain of these parties, while clearly acting in concert, may be attempting to avoid having Rule 2019 applied to them by nominally appearing through separate counsel but filing joint pleadings. (See, e.g., Objection of Certain LBSF Derivative Creditors to Debtors' Motion Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and Rule 6004(h) of the Bankruptcy Rules for Authorization to Enter Into Certain Asset Management and Related Agreements [Docket No. 8029]; Response of the Operating Company Creditors to the Motion of the Ad Hoc Group of Lehman Brothers Creditors Seeking, Among Other Things, an Order Scheduling a Disclosure Statement Hearing and Approving the Form and Manner of Notice Thereof [Docket No. 15668].) If this is an attempt to avoid Rule 2019 disclosure, this tactic should not be tolerated; it should be viewed for what it ostensibly is – a shallow "form over substance" attempt to end-run the disclosure requirements of the Bankruptcy Code and the Court.

27.    If such obfuscation is permitted, the result would be absurd. For instance, if the mere hiring of separate counsel becomes dispositive of who must make disclosures the consequence would be numerous law firms appearing and filing multiple pleadings, multiplied

12

by the many different groups that will ultimately participate in the cases, all elevating their own disclosure concerns over this Court's time. Additionally, to the extent creditor participants may be reimbursed under section 503 of the Bankruptcy Code, the amplification of the involvement of creditors' attorneys will only serve to exponentially increase the administrative fees incurred in these cases.

### C.  This Court Has the Authority to Establish Uniform Disclosure Procedures

28.    The question then becomes – if not Rule 2019, what? There are three additional sources of authority for this Court to order disclosure.

29.    First, section 1109(b) of the Bankruptcy Code provides, in unqualified terms, that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). Accordingly, to even appear in these cases, a party must have standing and it is within the inherent powers of the Court to probe the basis for such standing. While the Group is not aware of similar disclosure procedures being implemented in any other cases, the Group submits that (i) this Court has the authority to implement such procedures to ensure the integrity of the proceedings before it and (ii) such procedures are necessary and appropriate in light of the uniqueness of these cases.

30.    Second, Rule 7026 applies to all of the contested matters around the plans. The information proposed to be disclosed is clearly discoverable and no expectation of privacy can be expected in light of Rule 2019. Accordingly, the Court can and should require additional preliminary disclosures of financial data. Indeed, the Court has already entered its Plan Discovery Order [Docket No. 16603]. The Court could simply expand the disclosures required

by the Plan Discovery Order to include disclosures as suggested hereby or otherwise deemed appropriate by the Court.[12]

31.     Finally, section 105(a) of the Bankruptcy Code provides, in pertinent part, that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]." 11 U.S.C. § 105(a). Under section 105(a), the Court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets. See, e.g., Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances."). By its express terms, section 105(a) also makes clear that the Court may take "any action . . . necessary or appropriate . . . to prevent an abuse of process." 11 U.S.C. § 105(a). Although undefined in the Bankruptcy Code, an "abuse of process" has been characterized by bankruptcy courts as a "maneuver[] or scheme[] which would have the effect of undermining the integrity of the bankruptcy system."[13]

---

[12]     Pursuant to the Discovery Order, a creditor or group of creditors seeking to participate in Plan Discovery must complete a Notice of Intent, which must contain: (i) the name and address of the creditor or party in interest and the name of the law firm(s) and individual attorneys representing such creditor or party in interest or group of creditors or parties in interests; and (ii) at the option of the Proposed Proponent, either (A) a list of all proof(s) of claim filed either individually or by the group provided there have not been any material changes to such proof(s) of claim since their filing, or (B) a statement setting forth the types and aggregate amount(s) of claim(s) currently held by such Proposed Participant as against each of the Debtors. (Discovery Order at 3.) Such disclosures are inadequate to promote full transparency. See, e.g., Notice of Intent filed by Paul, Weiss, Rifkind, Wharton & Garrison LLP on behalf of Citigroup Inc. and its affiliates [Docket No. 16361] ("The aggregate amount of Citi's claims stated above is not intended to be a full accounting of all claims Citi has asserted against the debtors in these Chapter 11 Cases and excludes certain contingent and/or unliquidated claims as well as claims related to Lehman Program Securities that Citi filed either on its own behalf or on behalf of its customers).

[13]     In re Eagle-Picher Indus., Inc., 169 B.R. 135, 138 n.1, 138 (Bankr. S.D. Ohio 1994) (granting motion under 105(a) to stay discovery sought by unsecured creditors committee that court deemed to be useless and wasteful).

14

**NOTICE**

32.     The Group has served notice of this Motion in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures [Docket No. 9635], on (i) the United States Trustee for Region 2; (ii) the attorneys for the Debtors; (iii) the attorneys for the Creditors Committee; (iv) the Securities and Exchange Commission; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the attorneys for the Non-Consolidation Plan Proponents, (viii) the designated contacts for all participants set forth in the Notice of First Amended Official Service List for Plan Discovery, dated May 5, 2011 [Docket No. 16619]; and (ix) all parties who have requested notice in these chapter 11 cases.  The Group submits that no other or further notice need be provided.

33.     No previous request for the relief sought herein has been made by the Group to this or any other court.

WHEREFORE, the Group respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: May 23, 2011
      New York, New York

Respectfully submitted,

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Gerard Uzzi (GU – 2297)
J. Christopher Shore (JS – 6031)

  By: /s/ Gerard Uzzi
      Gerard Uzzi

ATTORNEYS FOR THE AD HOC GROUP
OF LEHMAN BROTHERS CREDITORS