Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6                                            Case No.

7  LEHMAN BROTHERS HOLDINGS INC., ET AL.,   08-13555-jmp

8          Debtors.

9

10 - - - - - - - - - - - - - - - - - - - -x

11 In the Matter of:

12                                           Case No.

13 LEHMAN BROTHERS INC.,                    08-01420-jmp SIPA

14          Debtor.

15

16 - - - - - - - - - - - - - - - - - - - -x

17              U.S. Bankruptcy Court

18              One Bowling Green

19              New York, New York

20              May 18, 2011

21              10:06 AM

22

23 B E F O R E:

24 HON. JAMES M. PECK

25 U.S. BANKRUPTCY JUDGE

Page 2

1

2    Motion of Prudence M. Waltz for Abstention

3

4    Lehman Brothers Special Financing Inc.'s Motion for

5    Authorization to (i) Cause 1271 LLC to Issue Classes of

6    Interests, (ii) Sell Interests in 1271 LLC and (iii) Make a

7    Capital Contribution to 1271 LLC

8

9    Debtors' Motion Authorizing the Debtors to Implement Procedures

10   for the Settlement of Avoidance Claims

11

12   Debtors' Motion for Authorization to Settle and Satisfy

13   Corporate Franchise Tax Claims of the New York State Department

14   of Taxation and Finance

15

16   Debtors' Motion to Assume Certain Aircraft Lease Agreements and

17   to Consummate Certain Related Transactions

18

19

20

21

22

23

24

25   Transcribed by:  Dena Page

Page 3

```
 1
 2   A P P E A R A N C E S :
 3   WEIL, GOTSHAL & MANGES LLP
 4        Attorneys for Debtors
 5        767 Fifth Avenue
 6        New York, NY 10153
 7
 8   BY:   SUNNY SINGH, ESQ.
 9        LEE JASON GOLDBERG, ESQ.
10        RICHARD P. KRASNOW, ESQ.
11
12
13   WEIL, GOTSHAL & MANGES LLP
14        Attorneys for Debtors
15        700 Louisiana
16        Suite 1600
17        Houston, TX 77002
18
19   BY:   ALFREDO R. PEREZ, ESQ.
20
21
22
23
24
25
```

Page 4

1

2    MILBANK, TWEED, HADLEY & MCCLOY LLP

3          Attorneys for Official Committee of Unsecured Creditors

4          One Chase Manhattan Plaza

5          New York, NY 10005

6

7    BY:   EVAN R. FLECK, ESQ.

8

9

10   HUGHES HUBBARD & REED LLP

11         Attorneys for James W. Giddens, SIPA Trustee

12         One Battery Park Plaza

13         New York, NY 10004

14

15   BY:   JEFFREY S. MARGOLIN, ESQ.

16

17

18   MCBREEN & KOPKO

19         Attorneys for Executive Fliteways

20         80 Broad Street

21         23rd Floor

22         New York, NY 10004

23

24   BY:   RANDOLPH E. WHITE, ESQ., Of Counsel

25

Page 5

1

2    WHITE & CASE LLP

3         Attorneys for Ad Hoc Group of Lehman Brothers Creditors

4         1155 Avenue of the Americas

5         New York, NY 10036

6

7    BY:    ANDREW W. HAMMOND, ESQ.

8

9

10   CHAPMAN AND CUTLER LLP

11        Attorneys for U.S. Bank

12        111 West Monroe Street

13        Chicago, IL 60603

14

15   BY:    FRANKLIN H. TOP, III, ESQ.

16

17

18   ALSO PRESENT:

19        DANIEL EHRMANN, Lehman Brothers Special Financing Inc.

20

21

22

23

24

25

1                       P R O C E E D I N G S

2           MR. SINGH:  Good morning, Your Honor.  Sunny Singh,

3    Weil, Gotshal & Manges on behalf of the Chapter 11 debtors.

4           Your Honor, if we could just proceed through the

5    agenda.

6           THE COURT:  That's fine.

7           MR. SINGH:  The first matter on the agenda, Your

8    Honor, is the motion of Prudence Waltz for abstention and

9    clarification of this Court's December 22nd, 2010 order.  As

10   Your Honor may recall, this matter relates to a state court

11   proceeding in California where Ms. Waltz seeks to cancel a

12   purportedly fraudulent deed and recover the underlying

13   property.  There were a number of subsequent transfers and the

14   mortgage ultimately came to be owned by LBHI.  Your Honor, this

15   motion, which we believe really is a request for clarification,

16   has been resolved by stipulation.  The stipulation would set

17   for the claims and matters that could be determined in the

18   state court proceeding, and we believe that resolves the

19   motion.

20          THE COURT:  Fine.

21          MR. SINGH:  Your Honor, the next matter on the agenda

22   is the motion filed at docket number 16299 that was

23   supplemented by the debtors on May 9th at docket number 16664

24   for authority to restructure the corporate organization of

25   LBSF's wholly-owned subsidiary, 1271 LLC and to issue classes

08-13555-mg    Doc 17034    Filed 05/19/11    Entered 05/24/11 14:46:49    Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 7 of 32

Page 7

1    of those securities pursuant to auctions.

2         Your Honor, as set forth in the motion, in order to

3    monetize the municipal portfolio that's underlying the

4    collateral default swap obligation, here, LBSF would

5    reconstitute the organizational form of 1271 and issue classes

6    of securities that relate to the referenced obligations.  Those

7    classes would then be sold to investors for the highest and

8    best offers after auction.

9         Your Honor, the goal, here, is to maximize the value

10   of the sizable portfolio.  In order to do that, the debtors

11   request that they be permitted to consummate the sales

12   immediately after the auction subject to the consent of the

13   creditors' committee to the purchase price.  We think the

14   process that will be undertaken will ensure the best -- that

15   the estate realizes the best price for this portfolio.

16        And the motion also seeks authority to make some

17   capital contributions of approximately totaling 3.5 million

18   dollars to pay certain fees and expenses such as filing fees

19   that may be incurred in connection with the transactions.

20        Your Honor, Mr. Ehrmann filed a declaration in support

21   of the motion.  He's here in court today if you have any

22   questions.  The creditors' committee has filed a statement in

23   support and no other responses were filed.  We request --

24   unless Your Honor has any questions, we request the Court enter

25   the order.

08-13555-mg   Doc 17034   Filed 05/19/11   Entered 05/24/11 14:46:49   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 8 of 32

Page 8

1          THE COURT:  I've reviewed the papers, as well as Mr.

2     Ehrmann's declaration.  One question that I had involved the

3     role of the advisor, Morgan Stanley, in this process and why it

4     is that it was thought appropriate to go to Morgan Stanley, as

5     opposed to any other advisor.  Was that a competitive process?

6     How did that choice come about?  Those are some of my

7     questions.  And I'm also interested in knowing whether or not

8     this was something that could have been done by LAMCO.

9          MR. SINGH:  Your Honor, to answer the first question,

10    in terms of competitive process, as we set forth in the motion,

11    1271, this asset, the estate has been trying to monetize that

12    for over a period of years, and there were conversations with

13    other parties to monetize the asset.  And in connection with

14    those discussions, there were discussions with Morgan Stanley,

15    and then, we believe, when we decided to move forward with this

16    structure, that Morgan Stanley, in light of its experience, and

17    particularly, in light of the investors that it would be able

18    to bring in, was the appropriate party.  There will be other

19    parties, as the engagement letter sets forth that could be

20    brought in to assist the estate and to make sure that the price

21    is not going to be -- that we have to pay is not incremental to

22    anything that would be agreed to be paid to Morgan Stanley.

23          In terms of your second question as to LAMCO, the

24    estate is going to be involved in this process.  The real issue

25    here was the expertise of Morgan Stanley in terms of the

08-13555-mg   Doc 17034   Filed 05/19/11   Entered 05/24/11 14:46:49   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 9 of 32

Page 9

```
 1    investors we think it can access, beyond what the estate can

 2    bring in.  And in addition, their expertise in terms of just

 3    securitizing -- I shouldn't say securitizing -- in terms of

 4    issuing the classes of securities that we need to undertake

 5    here, the documentation, the process which they're very

 6    familiar with and have an expertise in.

 7              THE COURT:  I don't question their expertise, nor do I

 8    question whether it was appropriate to select them.  It's not

 9    clear to me how they were selected and whether or not the fees

10    that are being paid are fees that should escape attention.

11    That's one of my concerns.  And I'd be interested in hearing

12    from Mr. Ehrmann, who's here, as to the process that led to the

13    selection of Morgan Stanley.  I have no quarrel with that

14    selection, and I'm also encouraged that the creditors'

15    committee is supporting the transaction.  But I want to make

16    sure, even though it's a transaction that is not fetch any

17    objections, that it's nonetheless one that's in all respects

18    pure.

19              MR. SINGH:  Certainly, Your Honor.  And if -- should I

20    just ask Mr. Ehrmann to come here and inform the Court?

21              THE COURT:  I would appreciate hearing from him.

22              MR. SINGH:  Sure.

23              THE COURT:  And Mr. Ehrmann, I can just hear from you

24    from the podium.  You don't have to come to the witness stand.

25    This is -- I'm just looking for information.
```

08-13555-mg    Doc 17034    Filed 05/19/11    Entered 05/24/11 14:46:49    Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 10 of 32

Page 10

1            MR. EHRMANN:  Sure.  Good morning, Your Honor.

2            THE COURT:  Good morning.  If you could just tell me

3    how Morgan Stanley came to be involved in this process.

4            MR. EHRMANN:  Of course.

5            THE COURT:  And how the fees were determined.

6            MR. EHRMANN:  Okay.  We actually, you know, this

7    process, the book that we're trying to market is a very

8    specialized book, and as such, the number of institutions that

9    would have the capability and know-how and sales force

10   necessary to actually market this book were limited.  We did

11   select a handful of institutions, broker-dealers, that would

12   have that expertise and capability and approached them on this

13   transaction.  We had rather detailed discussion with a select

14   group of three, two of which actually rejected to move forward

15   based on complexity of the transaction, but also fees.  So we

16   had a process where we had a handful of institutions, we

17   narrowed it down to three, and then we selected this one based

18   on expertise and pricing.  And so we actually believe -- we

19   also worked closely with Houlihan Lokey in order to make sure

20   that they agree that the fee that we're getting here is a, you

21   know, fee that was arrived to after a competitive process.

22           THE COURT:  And how was the fee determined?

23           MR. EHRMANN:  The fee's broken up, you know, as I

24   think Your Honor saw in the paper, the fee is broken up in

25   three pieces.  One is a structuring fee piece -- and it's

1    really, Your Honor, it's a package which is essentially based

2    on how successful we'll be in raising funds for these

3    securities, but in addition to that, there's a protection fee

4    of about, I think, 2.5 million dollars, which is merely based

5    on the fact that putting this structure together is highly

6    complex because it requires a securitization, selling

7    securities in the marketplace.  It's a somewhat atypical

8    transaction.  So the fee was based on two components, really.

9    One was a percentage of actual sales proceeds raised, and two,

10   a floor based on the structure of the transaction.

11           THE COURT:  Okay.  I appreciate the clarification.

12   Thank you.

13           MR. EHRMANN:  Thank you.

14           THE COURT:  I'd like to hear from the creditors'

15   committee on this.

16           MR. FLECK:  Good morning, Your Honor.  Evan Fleck of

17   Milbank Tweed on behalf of the official committee.  As Mr.

18   Singh indicated, we are supporting the transaction.  The

19   committee actually, unlike some transactions where we say it's

20   above the lowest point in the rating of reasonableness or it's

21   acceptable, this is a transaction that the committee

22   enthusiastically supports.  We think it's a creative approach

23   to monetize a portfolio that I think Mr. Ehrmann may have even,

24   perhaps in modesty or otherwise, is suggesting is somewhat

25   complicated; in the committee's view, it's very complicated and

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 12

1    as reflected in the fact that when the debtors and Houlihan

2    Lokey, the committee's financial advisor went out to look for

3    agents and other parties to assist in the monetization of the

4    portfolio, it was quite difficult, and unlike traditional

5    transactions that we've looked at for these cases where we had

6    the ability to go out to a broad cross-section of the market to

7    help us to, in this case, monetize transactions or implement

8    other strategies here, that just wasn't available.

9           However, the issue that's caught the Court's attention

10   with respect to the fees was certainly at the forefront of the

11   committee's attention and they pushed aggressively on the

12   committee's advisors who then pushed on Morgan Stanley and the

13   debtors to make sure the fees were negotiated.  They were at

14   arm's-length, and that reductions -- there were several

15   iterations of the negotiations to arrive at fees that the

16   committee is supportive of and believe reflect appropriate fees

17   for the complexity of the transaction and for the benefits that

18   the transaction will provide to LBSF's estate and its

19   creditors.

20          THE COURT:  All right, thank you for that.  It's

21   approved.

22          MR. SINGH:  Thank you, Your Honor.

23          MR. GOLDBERG:  Good morning, Your Honor.  Lee

24   Goldberg, Weil, Gotshal & Manges for the Chapter 11 debtors.

25          Your Honor, before the Court this morning is the third

08-13555-mg    Doc 17034    Filed 05/19/11    Entered 05/24/11 14:46:49    Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 13 of 32

Page 13

1    item on the agenda, the motion of the debtors seeking

2    authorization to implement procedures for the settlement of

3    avoidance claims.  Your Honor, the debtors have submitted a

4    notice of revised proposed order and I have a blackline of that

5    if Your Honor would like me to hand that up at this time.

6            THE COURT:  Is that different from what appeared on

7    the docket?

8            MR. GOLDBERG:  It's what appeared on the docket, Your

9    Honor.

10           THE COURT:  If it's what appeared on the docket, I've

11   seen it.

12           MR. GOLDBERG:  Your Honor, as the debtors have often

13   done in these cases, we're seeking authorization to implement

14   procedures for settlement of avoidance claims that have been

15   commenced by the debtors or that may be commenced by the

16   debtors outside of your courtroom.  The procedures set forth

17   various thresholds for committee involvement as well as notice

18   to the SIPA trustee and the U.S. trustee, and ultimately, court

19   involvement at the highest threshold.  Your Honor, we believe

20   that the thresholds are reasonable and provide the appropriate

21   level of involvement for all interested parties and keep

22   matters that do not need to burden your docket outside of this

23   courtroom.

24           THE COURT:  Can you tell me how many of the avoidance

25   claims are within the highest level?

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 14

1          MR. GOLDBERG:  Your Honor, at this time, the debtors

2    are still quantifying and evaluating many avoidance claims.  At

3    this time, I cannot provide you with a precise number that are

4    at the highest level.  At this time, many of the claims that

5    the debtors have worked on have been at lower levels.  At this

6    point, the debtors anticipate that there may be claims at the

7    highest levels but we're still in the process of evaluating

8    that.

9          THE COURT:  Okay, well, here's, I guess, my question.

10   It's not that I'm quibbling with what's another uncontested

11   motion, but in order to determine the reasonableness of the

12   various thresholds, it's often helpful to know on a stacked

13   basis what number of claims or kinds of claims fall within the

14   various thresholds.  That's one of the ways that, I believe,

15   that financial advisors determine the reasonableness of certain

16   threshold numbers.  500 million is the top number here, isn't

17   it?

18          MR. GOLDBERG:  I'm sorry, Your Honor.  The top

19   number's fifty million.

20          THE COURT:  Oh, fifty million.  I had a decimal off.

21          MR. GOLDBERG:  Okay.

22          THE COURT:  So how do we know that fifty million's the

23   right number?

24          MR. GOLDBERG:  Your Honor, the debtors have looked at

25   the possible avoidance claims that have been told and that for

Page 15

1   which we have commenced actions, and the debtors believe that

2   fifty million is an appropriate number that will provide

3   parties with -- provide the creditors' committee with the

4   appropriate level of input on the level one step down, and then

5   for the higher level transactions that -- or, the higher level

6   claims, the Court's involvement may be required.  But at this

7   time, it's difficult to say that what exactly the number of

8   claims above that level will be as the debtors are still in

9   that evaluation process.

10          THE COURT:  Okay.  Does the committee have anything to

11  say on this?  And perhaps you can illuminate me as to how these

12  thresholds were derived?

13          MR. FLECK:  Your Honor, Evan Fleck, once again, on

14  behalf of the committee.  We are supportive of the motion.  The

15  thresholds were the subject of a lot of discussion, debate, I

16  mean, it's kind of the usual dance between a committee and a

17  debtor.

18          THE COURT:  But it had to have been informed by

19  something, and it's hard for me to tell how you're able to

20  determine that a particular number is anything but arbitrary at

21  this point.

22          MR. FLECK:  No, it was as a result of looking at the

23  claims and having a better understanding of what the

24  expected -- breaking up the portfolio to what we thought would

25  be likely, how many claims within each category, the level of

Page 16

```
 1    sophistication or complexity, is a better word, for the claims,

 2    and basically the cost-benefit, also, analysis was part of it

 3    for really small claims where there's a small deviation

 4    potential between the claim and oversight of a particular

 5    matter, then we were comfortable that if it was a smaller claim

 6    amount, then the debtors could do that with less oversight from

 7    the committee or from the Court.

 8         THE COURT:  No, I actually encourage that.  I think

 9    it's fine.  My only question, and I'm not delving into the

10    determination of these various breakpoints with a view to

11    changing them as much as I'm trying to understand how they were

12    developed and whether or not they bear any relationship to the

13    actual claim amounts in the pool of avoidance claims.

14         MR. FLECK:  Well, from our perspective, they do, Your

15    Honor, because of our familiarity with the claims themselves.

16    I mean, it wasn't as though there were a pile of claims and we

17    just kind of broke them up and the limit of our -- the

18    committee's understanding was this was the amount of the claim

19    or the amount that's sought.  We have been involved with the

20    debtors in identifying claims to actually pursue, which claims

21    we think have significant merit, which require more discovery

22    before further consideration, and that helped to inform our

23    decision as to what appropriate thresholds would be because we

24    knew which claims fell into the different buckets that we had

25    ultimately agreed upon with the debtors.
```

08-13555-mg   Doc 17034   Filed 05/19/11   Entered 05/24/11 14:46:49   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 17 of 32

Page 17

1        THE COURT:  I'm confused.  Has there been an analysis

2    as to the claims that are anticipated to fall within each of

3    the breakpoints in the protocol that's being proposed here, and

4    if so, who performed that analysis, and what claims are likely

5    to fall in the fifty million and above range?

6        MR. GOLDBERG:  Your Honor, that level of analysis was

7    performed by the debtors.  It was performed in consultation

8    with the creditors' committee.  Just to give you an idea of

9    what sorts of avoidance claims are out there, there are a

10   number of vendor claims that have been -- as Your Honor is

11   aware, that were commenced at the deadline for commencing

12   avoidance actions.  As Your Honor is also aware, there were

13   claims that were tolled.  Many of those claims fall within the

14   lowest and the second to lowest.  Some fall into the third to

15   lowest threshold, which is the negative notice threshold.

16   Those claims -- the vendor claims do not fall, for example, in

17   the fifty million or above threshold.

18        Your Honor, there were some other claims that were

19   identified by the debtors as being potential actions.  The

20   debtors have tolled with those parties.  I don't feel it's

21   appropriate to discuss what those particular claims may be at

22   this time because of those tolling agreements; however, Your

23   Honor, some of those claims were significant dollar amounts.

24   And so the purpose setting the thresholds at the levels that

25   they were at was a combination of what the debtors and the

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 18

1    creditors' committee felt like needed to be in front of this

2    Court and where this Court would want to have some level of

3    input.

4         As for the precise number of claims that the debtors

5    may commence above the fifty million dollar threshold, Your

6    Honor, I can't answer that question accurately because the

7    debtors are still in the evaluation process.  However, the

8    debtors felt that was an appropriate number given the nature of

9    the claims and the counterparties that the debtors were dealing

10   with.  And I would add that these are claim amounts; these

11   aren't settlement amounts.  So to the extent that the debtors

12   felt like the Court would want to have a say in whether a

13   preference or a fraudulent transfer action was going to be

14   brought against some party and it involved a high dollar

15   figure, the debtors felt like the Court would want to be

16   involved, and the debtors, in fact, set what may have been a

17   low threshold for the Court's involvement at that level and

18   didn't set something higher, as Your Honor said 500 million

19   dollars before; the debtors set something that we felt was more

20   conservative and would give the Court a higher level of

21   oversight over claims that may be -- what even in this case are

22   not necessarily the highest dollars that we've seen in this

23   courtroom but are, as far as avoidance actions go, high dollar

24   claims.

25        THE COURT:  Okay.  I guess I've heard enough.  It's

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

1   approved.  I think it's consistent with a pattern in earlier

2   orders relating to orderly case management to remove more

3   routine matters from the 9019 process and the need for

4   hearings.

5           One aspect here which you've highlighted is the role

6   for the Court has been predicated upon the claim amount, not

7   the amount of the settlement, not the percentage of the

8   settlement relative to the claim amount.  And I'm simply going

9   to rely upon the involvement of the creditors' committee and

10  the good communication that appears to exist in reference to

11  this subject as the means to make sure that, as to those

12  settlements that are below the threshold for court approval,

13  that the parties will be doing everything they can to maximize

14  value for the estate.

15          MR. GOLDBERG:  And that's been a guiding principle,

16  Your Honor.  And if I may, as to the percentage amounts, there

17  is -- I would just draw Your Honor's attention to the fact that

18  in the second to highest threshold, there is an opportunity for

19  the debtors to come into court if the debtors desire to settle

20  for below a certain percentage amount and seek the Court's

21  approval of such a settlement.

22          THE COURT:  Okay.  Fine.  It's approved.  Thank you.

23          MR. GOLDBERG:  Thank you, Your Honor.  My colleague,

24  Richard Krasnow, will present the next motion.

25          MR. KRASNOW:  Good morning, Your Honor.  Richard

Page 20

1       Krasnow, Weil, Gotshal & Manges on behalf of the debtors.

2               THE COURT:  Good morning.

3               MR. KRASNOW:  Your Honor, I'm pleased to appear before

4       the Court today in support of the debtors' motion which appears

5       on docket number 16254 which is the debtors' motion seeking

6       approval of a settlement of claims asserted by New York State

7       with respect to corporate franchise tax, the asserted claims of

8       which are approximately 1.2 billion dollars, of which

9       approximately a billion dollars have been asserted as priority

10      claims.  The settlement contemplates that those claims would be

11      allowed in the amount of approximately -- not approximately --

12      in the amount of 153 million dollars and would be satisfied by

13      payment of approximately 144 million dollars, the differential

14      being due to a credit which would be applied against the

15      allowed claim.

16              Your Honor, the motion, as well as the declarations

17      filed in connection therewith, that is the declaration of Mr.

18      Jeffrey Ciongoli, a managing director and director of global

19      tax at LBHI, as well as the declaration of Jack Kramer, a

20      principal of PricewaterhouseCoopers who assisted the debtors in

21      connection with the analysis of the tax claims and the

22      negotiations with the state that led to the settlement, all

23      describe in some detail the claims themselves, the nature of

24      the dispute, the issues attendant to the dispute, the reasons

25      why the debtors believe that this, from the debtors'

Page 21

1   perspective, is an excellent settlement.  No doubt the state

2   correctly believes it is a very good settlement for the State

3   of New York.  As noted, Your Honor, the settlement contemplates

4   a payment which would be paid now, not upon emergence, and that

5   was a significant component of the discussions which led to the

6   resolution here.

7           Your Honor, unless the Court has questions, I won't go

8   through the arcane tax issues attendant to the dispute and the

9   arcane tax issues that would be attendant to any litigation.  I

10  would simply note, Your Honor, that this is, indeed, an

11  uncontested motion and, indeed, the three pleadings that were

12  filed in response to this motion either were very much in

13  support of the settlement -- and those were filed by the

14  creditors' committee and the ad hoc group -- or were not in

15  opposition to the settlement, which was what was filed by the

16  trustee.

17          Those three pleadings, in fact, focus -- beyond saying

18  they supported the settlement or had no objection as to the

19  supports, they do indicate the reasons for that position, but

20  they focus more so on a separate issue attendant to this

21  settlement.  LBHI is jointly and severally liable for all of

22  these taxes, and that is the reason why LBHI will be making the

23  payment.  However, while it is jointly and severally liable

24  with respect to all of the taxes that are attributable to those

25  members of the tax group that are New York taxpayers, in fact,

```
 1    there are various elements of these taxes that are attributable
 2    to various other Lehman entities.  And consequently, in the
 3    motion, we do indicate that we will be seeking to allocate
 4    appropriate portions of the tax payment to other Lehman
 5    entities, and so there was great focus in our discussions with
 6    the committee and the ad hoc group and, to a certain extent,
 7    with respect to LBI as to that process.  We are not, today,
 8    seeking approval of any such allocation, and as a result of
 9    that, the discussions that we had with these parties really
10    centered on certain language which is reflected in a revised,
11    proposed order which was filed with the Court on Monday in both
12    a clean and blackline form to make it clear that all of the
13    rights and claims with respect to that allocation, as well as
14    any defenses that there may be to the allocation itself, as
15    well as any priority is fully preserved, and we have agreed
16    that at the appropriate time when we have made a -- in our
17    view, a final determination as to what that allocation should
18    be, and whatever priorities we believe are appropriate with
19    respect to that allocation, which will be an allocation made, I
20    should note, not only amongst the -- certain of the Chapter 11
21    debtors, but there are nondebtors as to whom we believe there
22    is liability, LBI as well, that at the appropriate time, we
23    will file a notice with the Court reflecting what we believe is
24    appropriate.
25           The only observation I would make is that at LBI's
```

08-13555-mg   Doc 17034   Filed 05/19/11   Entered 05/24/11 14:46:49   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 23 of 32

Page 23

1 | request, we have made it clear that whatever orders may be

2 | entered by this Court --

3 | (Loud noise in background)

4 | MR. KRASNOW:  I feel like a need for Novocain.

5 | THE COURT:  If this continues, we're going to take a

6 | break, go upstairs, and yell at the people doing that.

7 | MR. KRASNOW:  A Novocain order.  Your Honor, to make

8 | it clear that any order that is entered in the Chapter 11 cases

9 | cannot be an allowance or determination with respect to any

10 | claim that LBHI might have against LBI with respect to its

11 | share of the settlement payment, and that is one of --

12 | THE COURT:  Just one second.

13 | Could one of you go inside, make sure that Vito knows

14 | what's going on upstairs and make sure that they stop?

15 | Okay.  I just don't want it to repeat.

16 | MR. KRASNOW:  Your Honor, all of those changes that

17 | I've alluded to are reflected in the blackline.  Your Honor,

18 | Messrs. Kramer and Ciongoli are in the courtroom, should the

19 | Court have any questions with respect to what is set forth in

20 | their declarations.  But as I said, I believe that the motions

21 | and those declarations set forth in some details all of the

22 | issues attendant to the dispute and the settlement, and we

23 | would request that based on all of those pleadings, Your Honor

24 | approve this settlement and the payment that we are seeking to

25 | make to the state in furtherance of the settlement.

08-13555-mg    Doc 17034    Filed 05/19/11    Entered 05/24/11 14:46:49    Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 24 of 32

Page 24

1          THE COURT:  Okay, I'm certainly prepared to approve

2     it.  I thought that the ad hoc group's comments were more in

3     the nature of a reservation of rights with respect to the

4     allocation.

5          MR. KRASNOW:  That's correct, Your Honor.  They also,

6     I believe, indicated their support for the settlement, as well.

7          THE COURT:  Is there anyone who wishes to be heard in

8     connection with this matter?

9          Apparently not.  It's approved.

10          MR. KRASNOW:  Thank you, Your Honor.

11          MR. PEREZ:  Good morning, Your Honor.  Alfredo Perez.

12     I'm the -- I think I'm the last person on the docket for this

13     morning.

14          Your Honor, this is -- what I thought was a routine

15     motion when I filed it on March 25th, 2009.  It had to do with

16     the Fleet --

17          THE COURT:  I think we're going to take a five-minute

18     break, and I'm just going to make sure that whoever's doing the

19     work upstairs knows that there's a hearing going on here that's

20     being interrupted.  And I don't want it to happen while we're

21     talking.  So we'll take a five-minute break, and we'll see if

22     we can get them to stop.

23          MR. PEREZ:  Thank you, Your Honor.

24          (Recess from 10:33 a.m. until 10:40 a.m.)

25          THE COURT:  Be seated.  I can almost assure you

08-13555-mg    Doc 17034    Filed 05/19/11    Entered 05/24/11 14:46:49    Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 25 of 32

Page 25

1    there'll be no noise.

2        MR. PEREZ:  We confirmed that in your absence.

3        Your Honor, Alfredo Perez on behalf of the debtors.

4    Your Honor, this is a motion that was filed originally in March

5    of 2009.  At the time of Lehman's filing, it had a fleet of

6    corporate aircraft; I believe one of Mr. Marsal's first

7    directives was to sell that aircraft.  It took some time; there

8    were two GIVs, a Dassault Falcon 50, and a Sikorsky --

9        THE COURT:  I believe Mr. Miller was asked a question

10   about this during the movie, Inside Job.

11       MR. PEREZ:  So those were all gone.  And EFI was the

12   party who basically managed those assets for Lehman.  They

13   participated in the sale, they basically extended post-petition

14   credit, they did the work.  This motion was filed at the time

15   that the last asset was pending sale, so it was filed

16   contemporaneously with -- the Sikorsky hadn't been sold yet;

17   there was a motion pending for that.  What we were going to do

18   was assume the contracts, pay, it's -- I think, it's actually

19   out-of-pocket 237,000 dollars, so this -- today, you've had

20   high numbers and low numbers, and then terminate the contracts.

21   Obviously, as a result of the passage of time, we've had -- EFI

22   filed five proofs of claim that will be expunged with this

23   order.  There has been some analysis made of payments that were

24   made within the last ninety days, so there's a paragraph in the

25   revised form of order which preserves everybody's rights,

Page 26

1    claims, and defenses vis-a-vis any potential payments.  And the

2    actual contracts expired by their terms in September of -- I'm

3    sorry, in November of last year.  So we can't assume them since

4    they're expired.  Your Honor --

5           THE COURT:  I know this resulted in part from an

6    objection by the creditors' committee, but what isn't clear to

7    me is why so much time went by.

8           MR. PEREZ:  Your Honor, two reasons, primarily, and

9    they basically had to do with the form that we were doing it.

10   Had we assumed the contracts, any potential avoidance liability

11   would have gone away, and there had just been discussion about

12   that back and forth as to the relative merits and -- because

13   part of what we had undertaken to do was to assume the

14   contracts for that reason.  So that's part of the reason why a

15   lot of the time went by, Your Honor.  And this has been on the

16   docket -- I mean, we've been kicking it --

17          THE COURT:  It's been over two years.

18          MR. PEREZ:  It's been over two years, Your Honor.  I

19   think it's one of the oldest motions pending.

20          THE COURT:  It is.  And in part, for that reason, I

21   hesitate to say what I'm about to say.  In effect, the revised

22   form of order which you're now seeking calls for relief in

23   connection with a motion which is so out of date by virtue of

24   changed circumstances that it's tough to match the order to the

25   original motion.  And I have a question as to whether or not

Page 27

1     the relief that's being now sought, the payment of 237,500

2     dollars, would have been requested at all in an environment in

3     which the contracts were not the subject of an original

4     assumption motion which is now moot.  So my question is

5     procedural.  If you were going to bring on a motion today to

6     obtain authority to make this payment, what would that motion

7     look like?

8               MR. PEREZ:  Your Honor, it would be a motion to pay an

9     administrative expense for value added to the estate during the

10    period.  And if the Court will recall, the creditors' committee

11    objection said we don't think you should assume the contracts.

12    But it also said in the second rung, there may be an

13    appropriate payment here as a result of the post-petition

14    services that were conducted.  And Your Honor, the main thing

15    that EFI did was they could have come into court before any of

16    these sales and said, you've got to assume our contract.  We've

17    got people out there that are doing the work; we're moving your

18    aircraft.  We had to move one to California so that people

19    could test it.  So, I mean, they clearly did the work.  The

20    orders authorized payment of pre-petition, in essence, amounts

21    that had been accrued on those planes that they had been liable

22    for, but it didn't really pay the charges that occurred as a

23    result of the sale of all of the aircraft.  So it would have

24    been a motion for payment of an administrative expense for

25    actual benefit to the estate.

08-13555-mg   Doc 17034   Filed 05/19/11   Entered 05/24/11 14:46:49   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 28 of 32

Page 28

 1          THE COURT:  Okay.  And the creditors' committee says

 2     what?

 3          MR. FLECK:  Your Honor, good morning again.  Evan

 4     Fleck on behalf of the committee.  The committee is comfortable

 5     with the relief that is now being sought.  The committee

 6     obviously had an objection; it was the first objection in the

 7     case to a motion that we just didn't think was -- didn't make

 8     sense to assume these contracts.  We still stand by that

 9     position, although now there's further support because they've

10     expired, so --

11          THE COURT:  So they can't be assumed.

12          MR. FLECK:  That's right.  But we do think, and part

13     of the reason, as Mr. Perez alluded to or suggested, part of

14     the reason for delay was going through on a line-by-line basis

15     the actual benefit that was provided to the estate by EFI.

16     We're comfortable that the benefit is at least at the level

17     that is being sought by the debtors to pay them now, and for

18     that reason, we will -- the committee's comfortable withdrawing

19     the objection and supporting the payment.

20          THE COURT:  There's someone standing and apparently

21     wishes to say something about this.

22          MR. WHITE:  Yes, Your Honor.  It's Randolph White.

23     I'm of counsel to McBreen & Kopko.  Just thought Your Honor

24     should know, I'm representing Executive Fliteways, Inc.  And

25     only for the Court's benefit, although this wasn't before the

08-13555-mg   Doc 17034   Filed 05/19/11   Entered 05/24/11 14:46:49   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 29 of 32

Page 29

1      Court and heard and decided over the course of the last couple

2      of years, we have been actively involved, particularly over the

3      last several months, providing a tremendous amount of

4      information and material to the creditors' committee, and I

5      believe based on that information, they've been assured as to

6      the quality, the exemplary, in fact, nature of the services

7      that were rendered and the tremendous value that my client

8      provided as a consequence to the estate.  So it was a -- they

9      were a tough party to convince, but I think we met that burden,

10     and for that reason, it's really a question of business

11     judgment that the debtor has behind this motion.  And we ask,

12     obviously, that it be approved.  It was resolved after a great

13     deal of negotiation, Your Honor.

14          THE COURT:  Okay, it's approved.  I recognize in

15     approving this that, in effect, I am approving a payment that

16     no longer ties to the original purpose of the motion because of

17     the passage of time and the changed circumstances, but given

18     the support of the creditors' committee and the lack of

19     controversy surrounding the work that was performed and the

20     entitlement to the administrative expense, it's approved.

21          MR. PEREZ:  Thank you, Your Honor.

22          THE COURT:  All right.

23          MR. WHITE:  Thank you, Judge.

24          THE COURT:  Is there anything more for this morning?

25          MR. PEREZ:  I don't believe, Your Honor.

1           THE COURT:  We're adjourned to the 2 o'clock calendar

2    this afternoon.

3         (Whereupon these proceedings were concluded at 10:49 AM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 31

1

2                                    I N D E X

3

4                                    RULINGS

5                                                    Page       Line

6    LBSF's Motion for Authorization to (i) Cause    12         20

7    1271 LLC to Issue Classes of Interests, (ii)

8    Sell Interests in 1271 LLC and (iii) Make a

9    Capital Contribution to 1271 LLC Approved

10   Debtors' Motion Authorizing the Debtors to      18         25

11   Implement Procedures for the Settlement of

12   Avoidance Claims Approved

13   Debtors' Motion for Authorization to Settle     24         9

14   and Satisfy Corporate Franchise Tax Claims

15   of the New York State Department of Taxation

16   and Finance Approved

17   Debtors' Motion to Assume Certain Aircraft      29         14

18   Lease Agreements and to Consummate Certain

19   Related Transactions Approved

20

21

22

23

24

25

Page 32

1

2                           C E R T I F I C A T I O N

3

4      I, Dena Page, certify that the foregoing transcript is a true

5      and accurate record of the proceedings.

6

7      Dena Page          Digitally signed by Dena Page
                          DN: cn=Dena Page, c=US
                          Reason: I am the author of this
8                         document
       _____   Date: 2011.05.19 16:29:39 -04'00'

9      DENA PAGE

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date:  May 19, 2011

17

18

19

20

21

22

23

24

25