Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   - - - - - - - - - - - - - - - - - - - -x

5   In the Matter of:

6                                          Case No.

7   LEHMAN BROTHERS HOLDINGS INC., ET AL.,  08-13555-jmp

8          Debtors.

9

10  - - - - - - - - - - - - - - - - - - - -x

11  In the Matter of:

12                                         Case No.

13  LEHMAN BROTHERS INC.,                  08-01420-jmp SIPA

14         Debtor.

15

16  - - - - - - - - - - - - - - - - - - - -x

17                 U.S. Bankruptcy Court

18                 One Bowling Green

19                 New York, New York

20                 May 18, 2011

21                 2:07 PM

22

23  B E F O R E:

24  HON. JAMES M. PECK

25  U.S. BANKRUPTCY JUDGE

Page 2

1

2    Pre-Trial Conference [Adversary Case No. 11-01681, Giddens v.

3    Citibank, N.A.]

4

5    Presentment of Order Establishing Briefing and Hearing Schedule

6    [Adversary Case No. 11-01540, Kathleen Arnold and Timothy A.

7    Cotten v. Lehman Brothers Holdings Inc.]

8

9

10   Aurora Bank FSB's Motion to Dismiss Adversary Complaint

11   [Adversary Case No. 11-01353 The Brooklyn Hospital Center v.

12   Aurora Bank FSB f/k/a Lehman Brothers Bank FSB]

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dena Page

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES LLP

4        Attorneys for LBHI and its Affiliate Aurora Bank FSB

5        767 Fifth Avenue

6        New York, NY 10153

7

8   BY:   JACQUELINE MARCUS, ESQ.

9        ZAW WIN, ESQ.

10

11

12   MENAKER & HERRMANN LLP

13        Attorneys for SIPA Trustee

14        10 East 40th Street

15        New York, NY 10016

16

17   BY:   RICHARD G. MENAKER, ESQ.

18

19

20

21

22

23

24

25

1

2    HASS & GOTTLIEB

3         Attorneys for Brooklyn Hospital Center

4         670 White Plains Road

5         Suite 121

6         Scarsdale, NY 10583

7

8    BY:   LAWRENCE M. GOTTLIEB, ESQ.

9

10

11   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

12        Attorneys for Citibank

13        1285 Avenue of the Americas

14        New York, NY 10019

15

16   BY:   STEPHEN J. SHIMSHAK, ESQ.

17        CLAUDIO HAMMERMAN, ESQ.

18

19

20   ALSO PRESENT:

21        KATHLEEN ARNOLD, Party Pro Se (Telephonically)

22        TIMOTHY COTTEN, Party Pro Se (Telephonically)

23

24

25

08-13555-mg   Doc 17038   Filed 05/19/11   Entered 05/24/11 15:03:43   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 5 of 34

Page 5

```
1                   P R O C E E D I N G S

2            THE COURT:  I think the first matter for the afternoon

3      calendar is Giddens v. Citibank.

4            MR. MENAKER:  Good afternoon, Your Honor.  Richard

5      Menaker, special counsel to the trustee, 10 East 40th Street,

6      New York, 10016.

7            THE COURT:  Okay.  I'll take other appearances, as

8      well.

9            MR. SHIMSHAK:  Good afternoon, Your Honor.  Steve

10     Shimshak, Paul, Weiss, for Citibank.

11           MS. HAMMERMAN:  Claudia Hammerman, also Paul, Weiss,

12     for Citibank.

13           THE COURT:  Okay, I know this is a case that already

14     has a scheduling order, but we haven't had a pre-trial.  Are

15     things going well?  Do you need an adjustment to the order?  I

16     know that there's some things to happen, I think it's on May

17     26th.

18           MR. MENAKER:  This matter's been handled cooperatively

19     from the word go.  In fact, the parties cooperated long before

20     we ever filed.  The principals had discussions, there was much

21     amicable communication over a possible resolution.  There are

22     some intellectual issues that are going to require rulings.

23     We're sorry we have to be here for that, but I'm pleased to be

24     able to report that all has gone smoothly, it continues to go

25     smoothly, and we don't see any need for judicial intervention.
```

Page 6

1    Certainly to date, we haven't had any need for judicial

2    intervention and don't see any need for the near future.

3            May 26th is going to be the initial motion date;

4    that's when opening papers will be served.  The trustee will

5    serve his papers at the beginning of August.  Reply comes in in

6    September.  So there's an extended period where we will be

7    teeing up the issues for the Court's consideration.  In the

8    meantime, discovery proceeds on a cooperative basis.  We're

9    meeting and conferring even before objections have been issued

10   to see if we can narrow things and get those aspects worked

11   out.

12           If a further settlement conference seems

13   appropriate -- or, sorry, if a further status conference,

14   rather, seems appropriate, we will contact chambers, set it up

15   for a Lehman regular date, but at this point, it may be we

16   won't have to be before the Court until the motion has already

17   been presented.  And that's really all I have.

18           THE COURT:  Okay.  I don't want too much of a preview,

19   but given the communications that you've described as being

20   quite excellent and the fact that there may be some issues that

21   you describe as intellectual ones, can you give me a preview as

22   to what kinds of issues you anticipate will be presented for

23   judicial determination?

24           MR. MENAKER:  Sure.  The broker-dealer is a creditor

25   of Citibank and certain of its affiliates in virtue of the fact

08-13555-mg   Doc 17038   Filed 05/19/11   Entered 05/24/11 15:03:43   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 7 of 34

Page 7

1    that it had big deposits with Citibank here, all over the

2    world.  And at the time of filing, there was a billion dollars

3    in a single account and there were deposits in many parts of

4    the world in excess of 360 million dollars.  At the same time,

5    Citibank has been a creditor as a service provider to the

6    broker-dealer, largely, or primarily in the basis of the fact

7    that it was providing a kind of service, a payment

8    administrative service or settlement service in the continuous

9    linked settlement process for handling foreign exchange.  This

10   is that program that was developed in order to avoid the

11   Herstatt issues and has been in place for about a decade.  So

12   Citibank was our settlement member with the CLS bank

13   administering payments.

14          On September 15th, Citibank -- this is 2008, of

15   course, Citibank terminated its service agreement with LBI and

16   then, being pleaded for on bended knee that it continue this,

17   said, well, you've got to deposit a billion dollars with us.

18   And a billion-dollar deposit was set up of very much-needed

19   funds, but it was put in Citibank's hands, and Citibank

20   continued administering the CLS settlement.  By the end of the

21   week, an indebtedness had emerged in connection with these

22   services, and at the time of filing, there was -- and we would

23   submit, after filing, there was a setoff of that billion

24   dollars and a freeze on the 300 million-plus in the various

25   accounts around the world.  And this adversary proceeding is an

1   effort by the trustee to reclaim those deposited funds.

2           There are some other types of issues -- claims between

3   the parties that are in the single-digit millions or tens of

4   millions and are relatively small compared to the big CLS

5   issues.  We know that Citibank's view of this is that it has a

6   right of triangular setoff.  We know that Citibank is taking a

7   position that the CLS services that it was providing was safe-

8   harbored, so they're going to make safe harbor insulation

9   arguments.  They may make other arguments in their motion;

10  obviously, it hasn't come in yet.  But it's -- the kinds of

11  issues that will be presented to the Court will be, to some

12  degree, familiar issues from other proceedings, and the Court

13  will also want to know about CLS and how CLS works, how that

14  settlement process works.  And I think some of that will be

15  fact-intensive and some of it will involve applying some basic

16  principles of bankruptcy law to a field of commerce which has

17  not been heavily litigated.  In fact, we've had difficulty

18  finding anything where CLS has actually been ruled upon by any

19  courts.

20          THE COURT:  All right, as a result of that, Mr.

21  Shimshak, co you want to say a few words?

22          MR. SHIMSHAK:  Yeah, I do want to say a few words.

23  First, I wanted to say that Mr. Menaker has accurately

24  characterized the relationship that we've had in the past many

25  months as we've tried to work through the issues, but they've

1    culminated in our being here before you in this adversary

2    proceeding.

3           He is correct that we will be filing a motion to

4    dismiss on the 26th.  That motion to dismiss -- and here I

5    deviate from his account -- it will not be dependent on

6    additional facts because it's a motion to dismiss.  It's going

7    to be based on the allegations of the complaint.  And we

8    believe that based on those allegations, we will be able to

9    demonstrate to your satisfaction the application of the safe

10   harbors to the CLS relationship that Citi had with Lehman

11   Brothers Inc.

12          In addition, the complaint contains more traditional

13   avoidance claims, those focusing in Section 544, 548, 547, and

14   the like.  We believe that those claims as pled are deficient

15   on their face, and we'll be moving to dismiss those claims.

16          I wanted to alert the Court to one other thing which I

17   don't think is covered by the agreed order.  There have been a

18   series of stipulations that we've executed since the beginning

19   of the case with LBI, rolling forward, our obligation to seek

20   relief from the automatic stay as to some of these remaining

21   accounts.  We do have a one billion dollar setoff which we

22   maintain we took before the petition date, though for purposes

23   of the application of the safe harbors, it doesn't really

24   matter whether it was before or after, but in contrast to Mr.

25   Menaker, we believe through appropriate judicial notice, we can

08-13555-mg   Doc 17038   Filed 05/19/11   Entered 05/24/11 15:03:43   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 10 of 34

Page 10

1    demonstrate that it occurred before the petition date.

2         But then there are accounts where we have not

3    exercised our right of setoff, as yet.  We believe those, too,

4    are within the safe harbor protection, and with the advent of

5    the litigation, we are obligated, now, to seek relief from the

6    stay to effectuate those remaining setoffs.  So while he seeks

7    the turnover of the accounts, we seek, correspondingly, to

8    exercise rights of setoff against them.  We will be filing, in

9    addition to our motion to dismiss, a separate motion on that

10   date, on the 26th of May.

11        Now, to give you a preview of where we see this going

12   procedurally, because the issues are ultimately so intertwined,

13   we propose that that matter move in companionship with this

14   matter and that ultimately the adjudication of the rights in

15   the accounts and our rights of setoff are all of a piece and

16   thus, on the face of the motion, you will see that while we

17   have the statutory right under Section 362 to have this matter

18   heard after sixty days, we are prepared to continue that in

19   companionship with the underlying adversary proceeding.

20        THE COURT:  Would there be a stipulation or some other

21   writing that will evidence what you just said?

22        MR. SHIMSHAK:  We haven't gotten to that point.

23   Frankly, the issues surrounding the adversary proceeding

24   presented their own complexity in terms of putting those two

25   things together because the adversary proceeding was a separate

1    litigation, as is the stay relief motion.  So when we meet and

2    confer, our hope is that we can work out a satisfactory order,

3    I predict immediately after the motion is filed.  But I don't

4    anticipate, given the relationship that we've had with Mr.

5    Menaker's firm, that we're going to have any difficulty in

6    reaching an accommodation.

7            THE COURT:  Fine.  I appreciate your bringing all this

8    to my attention.  Is there anything more?

9            Fine.

10           MR. MENAKER:  No, Your Honor, except that I agree as

11   far as working out the stipulation, that I'm sure we'll have no

12   problems on that.

13           THE COURT:  I rather guess that the next time that

14   I'll see you will be an argument in connection with a motion to

15   dismiss.

16           Okay, fine.

17           MR. MENAKER:  May we be excused, Your Honor?

18           THE COURT:  You may be excused.

19           MR. MENAKER:  Thank you, Your Honor.

20           THE COURT:  Thank you.

21           The next matter is the Kathleen Arnold and Timothy

22   Cotten adversary proceeding against Lehman Brothers Holdings.

23   I understand that Kathleen Arnold is on the telephone or was

24   scheduled to be on the telephone.

25           MS. ARNOLD:  Yes, Your Honor.

1          THE COURT:  Is Mr. Cotten available, as well?

2          MS. ARNOLD:  Yes, he is.

3          THE COURT:  Is he also on --

4          MS. ARNOLD:  Go ahead and speak to the judge.

5          THE COURT:  I'm sorry?

6          MR. COTTEN:  Good afternoon, Your Honor.

7          THE COURT:  All right, fine.

8          Let's proceed.

9          MS. MARCUS:  Good afternoon, Your Honor.  Jacqueline

10   Marcus from Weil, Gotshal & Manges on behalf of Lehman Brothers

11   Holdings Inc. and its affiliated debtors, as well as Aurora

12   Bank.

13          We're here, Your Honor, on the debtors' notice of

14   presentment of order establishing briefing and hearing schedule

15   in the adversary number 11-1540.  At the last hearing, which

16   was a pre-trial conference, the parties, with the help of the

17   Court, agreed upon a briefing schedule.  The debtors prepared

18   the form of order and tried to get Ms. Arnold and Mr. Cotten to

19   agree to the form of the order.  When we were unable to get

20   their agreement, we filed a notice of presentment on April

21   21st.  At about the same time, plaintiffs filed an amended

22   complaint.

23          On April 26th, 2011, plaintiffs filed an objection to

24   the form of the order that the debtors had proposed.  It's not

25   quite clear whether plaintiffs object that LBHI is seeking too

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 13

1    much time or not enough time to respond.  They seem to believe

2    that LBHI is treading on rights granted to the plaintiffs under

3    the federal rules and ignore the fact that the Court dealt with

4    these issues at the April 13th conference.

5        While it is probably procedurally proper for the

6    debtors to request the Court to enter the order in the form

7    that we filed which we believe accurately reflects the Court's

8    ruling on April 13th, the debtors believe it's more practical

9    to set the briefing schedule in light of the subsequent

10   developments, in particular, the filing of the amended

11   complaint which required LBHI to respond by filing a new motion

12   to dismiss.  Thus, without changing the June 15th hearing date,

13   the debtors have suggested that plaintiffs be provided until

14   May 31 to respond to LBHI's motion to dismiss the amended

15   complaint which was filed on May 9th, and the debtors' reply

16   would be due on June 8th, and we would proceed with the hearing

17   on June 15th.

18       The debtors notified the plaintiffs of their

19   intentions on May 11th.  The plaintiffs have indicated that

20   they're not in agreement with the proposed schedule, and they

21   want to conduct discovery and have a trial on June 15th.

22       Yesterday, we provided the plaintiffs with the

23   blacklined copy of the proposed pre-trial order.  The

24   plaintiffs' position appears to be similar to the argument that

25   they made at the April 13th hearing, and as indicated on the

Page 14

1    transcript of the April 13th hearing, the plaintiffs are

2    required to respond to the motion and discovery is not

3    appropriate at this point.  As a result, the debtors request

4    that the Court enter the revised pre-trial order and require

5    the plaintiffs to respond to the motion to dismiss by May 31.

6                THE COURT:  Okay.  Well --

7                MS. MARCUS:  I have a marked up order.

8                THE COURT:  I'll take a look at the order.  I want to

9    give Ms. Arnold and Mr. Cotten an opportunity to respond.  But

10   I'd like to make a couple of points before I hear from them.

11               First of all, I have looked at the papers that have

12   been filed of record, including the amended complaint and the

13   renewed and modified motion to dismiss filed by LBHI.  There is

14   also a pleading that was filed this week which I have not had a

15   chance to read in full detail, but I have reviewed it to get an

16   understanding of generally what's being asserted, although I

17   must admit, I don't entirely understand it, which is a pleading

18   by the plaintiffs seeking some form of expedited relief.  And

19   it is not clear to me why that was filed and what relief was

20   being sought.  But it seems to me that that's a separate matter

21   unless the plaintiffs can demonstrate that it connects to the

22   proposed briefing schedule.

23               So my first question for Kathleen Arnold is to explain

24   the purpose of the filing that was made this week and whether

25   or not there is a request that that matter be combined in some

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 15

1   fashion or another with the briefing in respect of the motion

2   to dismiss.  It seems to me that it's a separate matter, but I

3   can't tell.

4         MS. ARNOLD:  Your Honor, you're correct, it is.  Thank

5   you.  It is a separate matter, and probably what I'm seeking

6   from what I can understand will be a process here is that that

7   would be heard at the June 15th hearing.

8         THE COURT:  Okay, well, I'm not sure we're going to

9   have a hearing on June 15th --

10        MS. ARNOLD:  Okay.

11        THE COURT:  -- yet.  We haven't scheduled that.  One

12  of my concerns -- and I mentioned this last month -- is that

13  the issues that are being presented by LBHI in their motions to

14  dismiss are fundamentally questions of bankruptcy jurisdiction.

15  And as a consequence, generally speaking, it takes an

16  experienced bankruptcy lawyer to comprehend and deal with these

17  issues.  And for that reason, I'm going to reiterate what I

18  said last month which is that I think even though you have said

19  you don't have the financial ability to engage counsel, it

20  would be desirable if you could at least seek out pro bono

21  counsel.  And I am aware, just from having checked the web

22  sites in Baltimore, that there are a variety of services

23  comparable to those that are available in New York to provide

24  legal services at no charge to individuals who can't afford

25  private counsel.

08-13555-mg    Doc 17038    Filed 05/19/11    Entered 05/24/11 15:03:43    Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 16 of 34

Page 16

```
 1          I'd like to ask whether or not you've given any

 2   thought to engaging pro bono counsel to assist you in this

 3   matter.

 4          MS. ARNOLD:  Yes, Your Honor, we have, and as a matter

 5   of fact, we've taken it a step further and tried to engage

 6   counsel within the last two weeks.  But we will -- we have not,

 7   with earnest -- the last time that we tried to engage pro bono

 8   counsel was probably a couple years ago in Baltimore.  We have

 9   not tried that since our last meeting or conference but will do

10   that.

11          THE COURT:  Okay, well, it's partly for that reason

12   that I'm not sure that this schedule is the schedule that we

13   should be following.  I'd like to give the plaintiffs what

14   amounts to one last opportunity to get counsel involved.  And

15   frankly, and I'm just going to tell you this because I've

16   reviewed the papers, I believe that if counsel were involved in

17   this matter, that counsel might advise the plaintiffs that they

18   have a serious jurisdictional problem, and as a result, so much

19   of the effort which is going into the bankruptcy case might be

20   expended elsewhere.  That's not to say that I have prejudged

21   this, but the issues raised in the two motions to dismiss in

22   connection with subject matter jurisdiction would be very

23   difficult to rebut, and that's one of the reasons why I think

24   it's important that a lawyer be involved.  This is

25   fundamentally a question of whether proper claims can be made
```

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 17

1    based upon the facts as I understand them against Lehman

2    Brothers Holdings Inc., the ultimate parent of Aurora.  And

3    that will be very challenging because there is separate

4    corporate status and Aurora is not a debtor in this court.

5         So before we get into scheduling, it seems to me that

6    these plaintiffs need sound legal advice.  And I can tell from

7    what I've read that they feel aggrieved, aggrieved by facts and

8    circumstances that go back perhaps eight years.  I also

9    understand based upon my review of the papers, that these

10   plaintiffs have been involved in litigation in state court, in

11   federal court, and in bankruptcy court in Maryland and are now

12   seeking relief here.  And all of this litigation suggests that

13   these individual plaintiffs are experienced when it comes to

14   what goes on in court, but by their own admission, do not have

15   the kind of legal training and knowledge to be able to

16   understand some of the sophisticated legal theories that are

17   being advanced by the debtor.

18        So I think step one in this process is for the

19   plaintiffs to renew their efforts to retain counsel.  But that

20   can't be an open-ended opportunity.  It seems to me that

21   between now and, say, June 15, there might be an opportunity to

22   engage counsel, and you'll either be successful or unsuccessful

23   in that effort.  And that once counsel has been engaged,

24   counsel might either choose not to pursue this litigation or

25   identify legal arguments that I haven't considered, and papers

08-13555-mg   Doc 17038   Filed 05/19/11   Entered 05/24/11 15:03:43   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 18 of 34

Page 18

1    should be filed in opposition to the motion to dismiss.  For

2    that reason, I think that a better schedule would be a hearing

3    in July at the July omnibus hearing, instead of in June, and

4    the subject matter of that hearing would be purely the question

5    of subject matter jurisdiction.  There will not be an

6    evidentiary hearing that relates to the facts and circumstances

7    that involved the property that was owned by these plaintiffs,

8    but rather whether or not their original complaint and amended

9    complaint assert claims that are cognizable in this bankruptcy

10   case.

11            MS. ARNOLD:  Thank you, Your Honor.

12            THE COURT:  I think the parties should once again try

13   to work out a deadline consistent with this timeline for the

14   submission of papers in opposition to the motion to dismiss.

15   And if the parties can't do that, I'm going to make a

16   suggestion.  And that suggestion is -- and I don't have the

17   date of the July hearing in mind.  Do you have that date?

18   Let's see if we can find that date, so we can tie this to

19   actual --

20            MS. MARCUS:  Your Honor, I think it may be July 20th,

21   but I'll know in a minute.

22            THE COURT:  Is it July 20th?

23            MS. MARCUS:  I don't know yet.  Technical

24   difficulties.

25            THE COURT:  Let's see if anybody on my side knows.

1          It looks like it's July 20th.  So if July 20th is the

2     date of the omnibus hearing, I think we should back up about

3     ten days from that, and that it would be reasonable for papers

4     in opposition to the motion to dismiss no later than the close

5     of business on July 8th, and it would be responsible for any

6     further reply in support of the motion to be made by no later

7     than the close of business on July 15th.

8          MS. MARCUS:  That's fine, Your Honor.  I take it we're

9     just going to that timeline, rather than trying to work it out

10    amongst ourselves.  That's the debtors' preference.

11         THE COURT:  If you can work it out amongst yourselves,

12    that's fine, but if you can't, I've spoken --

13         MS. ARNOLD:  That's fine.

14         THE COURT:  -- in terms of the dates.  I've just come

15    to the conclusion that it's hard to reach agreement, and for

16    that reason, I'm simply imposing some discipline on the process

17    by proposing dates.

18         MS. MARCUS:  I appreciate that, Your Honor.

19         THE COURT:  Okay.

20         MS. ARNOLD:  Thank you.

21         THE COURT:  So and I think it would really be helpful

22    to the plaintiffs to get a lawyer.  I can't vouch for either of

23    these organizations, but my chambers staff found two names and

24    numbers just by looking online.  One is Maryland Volunteer

25    Lawyer Services --

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

```
 1              MS. ARNOLD:  Okay.

 2              THE COURT:  -- and the other is Civil Justice,

 3    Incorporated.  I have no idea if these are good groups --

 4              MS. ARNOLD:  We understand.

 5              THE COURT:  -- but they may be helpful.  The phone

 6    number of the first is 410-547-6537.  The phone number of the

 7    second is 410-706-0174.

 8              MS. ARNOLD:  Thank you.

 9              THE COURT:  I would also suggest that you might place

10    a call to the Baltimore Bar Association and speak to people

11    there about their business bankruptcy committee -- I'm sure

12    they have one -- and there might be people within that group

13    who could be helpful to you.

14              MS. ARNOLD:  Thank you, Your Honor.

15              THE COURT:  Okay.

16              MS. ARNOLD:  We appreciate it.

17              THE COURT:  All right.

18              MS. ARNOLD:  Have a good day, now.

19              THE COURT:  The next matter is Brooklyn Hospital

20    Center v. Aurora Bank.  And we have a similar issue.

21              MS. MARCUS:  Yes, we do, Your Honor.

22              MR. GOTTLIEB:  Good afternoon, Your Honor.  Lawrence

23    Gottlieb, Hass & Gottlieb, on behalf of Brooklyn Hospital

24    Center.

25              THE COURT:  Okay.
```

08-13555-mg   Doc 17038   Filed 05/19/11   Entered 05/24/11 15:03:43   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 21 of 34

Page 21

1          MS. MARCUS:  Your Honor, Jacqueline Marcus, again, on

2     behalf of Aurora Bank.

3          Brooklyn Hospital -- we're here today on Aurora Bank's

4     motion to dismiss the complaint for lack of subject matter

5     jurisdiction.  Brooklyn Hospital Center filed the complaint

6     against Aurora seeking a determination of the extent, validity,

7     and priority of a mortgage lien ostensibly held by Aurora.  To

8     refresh the Court's recollection, Aurora is not one of the

9     debtors in these cases.  Aurora is not even a subsidiary of one

10    of the debtors, although that wouldn't really matter.  Rather,

11    Aurora is a subsidiary of Lehman Brothers Bank Corp., Inc., a

12    nondebtor subsidiary of LBHI.

13         Based on the fact that the action was commenced

14    against the nondebtor, Aurora filed the motion to dismiss

15    pursuant to Federal Rule of Civil Procedure 12(b)(1) and

16    Federal Bankruptcy Rule 7012(b).  As set forth in Aurora's

17    motion and again in its reply, under Section 1334(b), this

18    Court has subject matter jurisdiction over all civil proceeding

19    arising under Title 11 or arising in or related to cases under

20    Title 11.  The incident adversary proceeding is none of those.

21         In its complaint, Brooklyn Hospital Center alleges, in

22    effect, that the assets of Aurora are the assets of LBHI, and

23    therefore, are property of the estate.  That position is

24    squarely at odds with the Second Circuit's decision in In re:

25    Beck Industries, Inc., 479 F.2d 410.  In Beck, the Second

1    Circuit held, and I quote, "Ownership of all of the outstanding

2    stock of a corporation, however, is not the equivalent of

3    ownership of a subsidiary's property or assets."  That's at 479

4    F.2d at 415.  As Brooklyn Hospital Center notes, Beck was

5    decided prior to the enactment of the Bankruptcy Code.

6    However, several cases have already held that the reasoning of

7    Beck applied equally to jurisdiction under the Bankruptcy Code,

8    and I refer the Court to the Mayco and Tower order decisions in

9    this Court, as well as the Windstar case in the Delaware

10   Bankruptcy Court.

11        Moreover, the ramifications of the interpretation of

12   related to jurisdiction advocated by Brooklyn Hospital Center

13   would be profound.  Basically, this Court would have subject

14   matter jurisdiction over every dispute regarding any asset

15   belonging or ostensibly belonging to any of the debtors' more

16   than 1,000 active nondebtor subsidiaries.  That simply can't be

17   the right answer and would make administration of these cases

18   even more impossible than it already is.

19        An additional reason that the Court lacks subject

20   matter jurisdiction over this dispute is that the debtors'

21   nondebtor subsidiaries no longer even own an interest in the

22   loan that is the subject of the dispute.  In support of its

23   motion to dismiss, Aurora filed a declaration of Daniel Glanz

24   (ph.), a vice president, portfolio management, at LAMCO, LLC.

25   Mr. Glanz is present in court this afternoon.  In his

1    declaration, Mr. Glanz explains that the loan was sold by

2    Aurora to LBHI, and then by LBHI to Fannie Mae in April of

3    2004.  As a result, even if Aurora has no interest in the loan,

4    BHC's premise that the assets of Aurora constitute property of

5    the estate is not even applicable here.

6           In its objection to the motion to dismiss, Brooklyn

7    Hospital makes essentially three points.  First, it relies on

8    Celotex Corporation v. Edwards to assert that related to

9    jurisdiction exists here.  In Celotex, the Supreme Court quoted

10   with approval the tests set forth in Paycorp v. Higgins (ph.)

11   as follows:  "An action is related to bankruptcy if the outcome

12   could alter the debtors' rights, liabilities, options, or

13   freedom of action either positively or negatively, and which in

14   any way impacts upon the handling and the administration of the

15   bankruptcy estate."  The Court went on to note, "But whatever

16   test is used, these cases make clear that bankruptcy courts

17   have no jurisdiction over proceedings that have no effect on

18   the estate of the debtor."

19           The facts in Celotex are instructive and

20   distinguishable from the facts, here.  Celotex, the debtor,

21   prior to its petition date, had obtained a supersedeas bond to

22   secure a judgment while it appealed that judgment.  To secure

23   its obligation to the insurer, Celotex posted collateral with

24   the insurer.  Post-petition, Celotex obtained the Section 105

25   injunction from the bankruptcy court that precluded the

Page 24

1    plaintiff in the litigation from executing on the bond.  The

2    Supreme Court upheld the subject matter jurisdiction of the

3    bankruptcy court to issue the Section 105 injunction on the

4    basis that the action to execute on the bond was related to

5    Celotex's Chapter 11 case.  The distinction is very apparent.

6    If the plaintiff were permitted to enforce the bond, the

7    insurer would have had a secured claim against the debtor.  The

8    bankruptcy court, in its determination, had concluded that

9    permitting judgment creditors to execute on their bonds, "would

10   have a direct and substantial adverse effect on Celotex's

11   ability to undergo a successful reorganization."

12        BHC also relies on the Third Circuit's decision in

13   Paycorp v. Higgins.  While Paycorp sets for the generally

14   accepted test for related to jurisdiction, it's notable that

15   the Paycorp court found that related to jurisdiction did not

16   exist in that matter.  In that case, Paycorp was the defendant

17   in a products liability action.  It filed a third-party

18   complaint against Johns-Manville.  When Johns-Manville filed

19   for relief under Chapter 11, Paycorp tried to have the entire

20   action removed to the bankruptcy court on the basis of related-

21   to jurisdiction.  The Third Circuit noted as a threshold matter

22   that the suit was between two nondebtors, like in this case.

23   As importantly, the Court noted that even though the outcome of

24   the state court action might lead Paycorp to file an

25   indemnification claim against the debtor, Manville, "The

1    bankruptcy estate could not be affected in any way until the

2    Paycorp/Manville third-party action is actually brought and

3    tried."  The court, therefore, held that there was no related

4    to jurisdiction, and the action could not be removed.

5         Here, if Brooklyn Hospital Center prevails in

6    establishing in the state court action that it has a superior

7    interest in the real estate that is the subject of the dispute,

8    it will have no effect on any of the debtors, either directly

9    or indirectly.  Thus, there is no related to jurisdiction under

10   the standards articulated in Celotex or Paycorp.

11        Brooklyn Hospital Center's second argument is that

12   Aurora has submitted to the Court's jurisdiction in the past.

13   However, unlike personal jurisdiction, a party cannot consent

14   to subject matter jurisdiction.  If a court lacks subject

15   matter jurisdiction, then the matter may not be heard.  In

16   addition, Brooklyn Hospital Center misconstrues what has

17   occurred in this court in the past with respect to Aurora.  The

18   two proceedings cited by Brooklyn Hospital Center in which no

19   motion to dismiss for lack of subject matter jurisdiction was

20   made, involved actions against Aurora as well as one or more of

21   the debtors in these cases.  That is a critical and dispositive

22   difference.

23        Third, Brooklyn Hospital Center contends that the

24   motion to dismiss should not be granted because there is no

25   pending state court proceeding.  Aurora has filed a declaration

Page 26

1    of Avery S. Mehlman, a partner at Herrick Feinstein, co-counsel

2    to Aurora in the state court action in support of the motion.

3    Mr. Mehlman hoped to participate telephonically because he's

4    tied up in a deposition today, but I'm not sure if he was able

5    to join the hearing.

6             THE COURT:  Let's find out.  Are you on the line, sir?

7             No response suggests that he's not on the line.

8             MS. MARCUS:  I agree.  Mr. Mehlman's declaration

9    states that he was present in court on June 16th, 2010 when the

10   state court issued a default judgment granting the motion of

11   Aurora Loan Servicing to reargue.  Moreover, whether there is a

12   pending state court proceeding is really irrelevant to the

13   question of the Court's subject matter jurisdiction.

14            For all of the foregoing reasons, Your Honor, the

15   debtors request that the Court grant the motion to dismiss.

16            THE COURT:  All right, thank you.

17            MR. GOTTLIEB:  Good afternoon, again, Judge.  Lawrence

18   Gottlieb.

19            Your Honor, when I was retained by this client,

20   Brooklyn Hospital, they were faced with the collection of a

21   debt that's been due for approximately eight years, and you

22   probably understand from the facts, which aren't particularly

23   germane for purposes of a subject matter jurisdiction dismissal

24   motion.  However, the underlying procedural and factual

25   determinations that have to be made are something that jumped

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 27

```
 1    out to me as something that this Court has absolute expertise
 2    over, i.e., determining the extent, validity, and priority of a
 3    lien.  So when I was brought this case and we were going to
 4    commence a new action seeking a declaratory judgment as to
 5    whether Brooklyn Hospital has superior lien interest, vis-a-vis
 6    this property, we looked through the file and saw, among other
 7    things, Mr. Mehlman, the self-same Mr. Mehlman who isn't here
 8    today, had written a letter in June 2009, and that's appended
 9    as Exhibit G to our opposition.  Mr. Mehlman said, post the
10    commencement of the foreclosure proceeding, post the filing of
11    the Lehman bankruptcy, and I quote his letter of June 22, 2009,
12    in part, he says to Mr. Tamsen who's special real estate
13    counsel to Brooklyn Hospital, "As you are aware, Herrick
14    Feinstein represents Lehman Brothers Bank, FSB, the holder of
15    the note and mortgage encumbering the above-referenced
16    property."  Your Honor, I know as a bankruptcy practitioner,
17    when I'm faced with that kind of representation and the
18    potential to run afoul of the automatic stay, I'm not going to
19    risk commencing an action in state court without either moving
20    to lift the stay or alternatively, which seemed to me the
21    better alternative, again, counting on this Court's expertise
22    in this matter -- this type of matter to commence an adversary
23    proceeding where this Court could ultimately determine the
24    extent and validity and priority of the lien held by Aurora
25    Bank which Mr. Mehlman represented was actually a mortgage held
```

08-13555-mg   Doc 17038   Filed 05/19/11   Entered 05/24/11 15:03:43   Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 28 of 34

Page 28

1    by Lehman Brothers Bank.  And that's what brought us here

2    today, Judge.

3              THE COURT:  Well, whether it's Aurora or Lehman

4    Brothers Bank, and I believe Aurora is simply Lehman Brothers

5    Bank, renamed, that entity is not a debtor here.

6              MR. GOTTLIEB:  I understand, Judge, and we've been

7    made very well aware of that.  And again, based on my

8    experience and fearing running afoul of the automatic stay, we

9    didn't want to take the shot at prosecuting a new state court

10   litigation.  Judge, just by -- tangentially, that state court

11   litigation, if you check the Unified Court System screenshot,

12   it shows -- and it's appended to our papers -- that the case is

13   marked disposed.  That's the only written determination on

14   file.  It shows a decision by Judge Starkey of four years ago

15   where he, on his own sua sponte motion, on a routine motion to

16   appoint a referee, determined that Lehman Brothers was out of

17   luck because by virtue of a sheriff sale, it wiped out a junior

18   lien.  Now, Judge Starkey may have been wrong, he may have been

19   right, and ultimately, Mr. Mehlman brought a motion to reargue,

20   and it was granted on default.  There's no paper memorializing

21   that determination; in fact, that determination took place --

22   we're coming up on the year anniversary, and it sounds like,

23   based on the motion papers, as well as the reply, that that's

24   something that's going to be starting up again, and

25   unfortunately, Brooklyn Hospital's going to have to dig itself

Page 29

1    out of a bit of hole in the state court action.  As you may

2    have seen in our papers, there was an improper notice of

3    appearance filed by corporation counsel on behalf of Brooklyn

4    Hospital apparently under the false presumption that it was the

5    New York Health and Hospitals Corporation that was being sued.

6    And they filed the notice of appearance and waiver of papers

7    and didn't participate within the confines of that foreclosure

8    proceeding.  So I don't believe it's going to concern you, Your

9    Honor, but we're going to have to move for leave to intervene

10   and vacate the default.

11        THE COURT:  Well, you have a long-standing dispute

12   relating to the collection of a bill for services rendered to

13   somebody that used to own this piece of property who

14   transferred the property to her daughter who obtained a life

15   tenancy to stay in the property.  And your goal here is not to

16   complicate things, but presumably establish whatever rights you

17   can establish in a court of competent jurisdiction, correct?

18        MR. GOTTLIEB:  That's correct, Judge, and we felt this

19   was the court of most competent jurisdiction.

20        THE COURT:  So having heard the arguments of counsel

21   for Aurora, which I find persuasive, I might add, let's just

22   say for the sake of discussion that I were to dismiss this

23   litigation on the grounds of subject matter jurisdiction, and

24   having heard but not making a finding on the basis of what I've

25   heard, that there is a pending state court litigation that you

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 30

1    could attempt to get involved in to protect your interests or,

2    alternatively, based on what you just said five minutes ago,

3    you could commence another litigation in state court, how is

4    your client aggrieved by virtue of a determination that I make

5    that you don't have -- that there's no subject matter

6    jurisdiction as to this claim against Aurora?

7            MR. GOTTLIEB:  Other than the fact that we're going to

8    have to go across the river, Judge, and deal with a state court

9    judge, I don't think we are.

10           THE COURT:  Okay.  I appreciate your saying that,

11   because that's what I thought.  And that's a very good reason

12   to grant the motion to dismiss.  The arguments made -- I'm

13   going to give you a chance to make whatever argument you want

14   to make, and I've looked at your papers, but the arguments made

15   by Aurora in this case are compelling.

16           For one, for the last about two and a half years, I

17   have been involved in matters that involve Lehman Brothers

18   Holdings Inc. and its filed and, in some cases, unfiled

19   subsidiaries, one of those being Aurora.  And on various

20   occasions, I have approved the advances of capital from the

21   debtors to Aurora to support Aurora's regulatory capital.

22   Throughout that process, and there have been perhaps four or

23   five hearings that have involved the debtors' support of

24   Aurora, it was made very clear to me that Aurora was a

25   nondebtor.  And the Lehman entities were supporting Aurora in

08-13555-mg    Doc 17038    Filed 05/19/11    Entered 05/24/11 15:03:43    Main Document
LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.
Pg 31 of 34

Page 31

1  reference to protecting their indirect equity investment in

2  that enterprise.

3        I happen to agree with the parade of horribles

4  argument made by Ms. Marcus.  If every claim relating to Lehman

5  Brothers Bank, now known as Aurora FSB, were deemed to be a

6  claim related to the administration of the LBHI bankruptcy

7  case, as they said in Jaws, I'm going to need a bigger boat.

8  I'm going to need a much bigger boat.  And we couldn't manage

9  that.

10        But more particularly, if you apply the fundamentals

11  of bankruptcy jurisprudence, recognizing that bankruptcy

12  jurisprudence should be interpreted broadly, there is still no

13  conceivable impact that the litigation that you are bringing

14  against Aurora can have on the administration of any of these

15  debtors, and I'm unable to find it.  If you can tell me that

16  I'm missing something, this is your chance.

17        MR. GOTTLIEB:  Your Honor, without further factual

18  discovery, I'm just not able to do that.  And I don't know if I

19  want to spend my client's money engaging some kind of pre-

20  filing discovery.  It's just not worth it.  So I'm going to, of

21  course, defer to the Court's ruling.  I thought under Celotex

22  and given what we perceive to be very broad-based jurisdiction,

23  the Court's ability to assert broad-based jurisdiction, we were

24  hoping that we'd find ourselves in this court.  But I

25  understand that when the facts present themselves, that we may

LEHMAN BROTHERS INC. (SIPA)/LBHI, ET AL.

Page 32

1    not have a basis for jurisdiction, and of course, we're going

2    to defer to your ruling.

3         THE COURT:  Fine.  On the basis of this argument and

4    colloquy, I'm granting the motion to dismiss.  I will entertain

5    an order consistent with this ruling.  And if, by chance, you

6    should decide to appeal this determination, I reserve the right

7    to supplement the statements made on today's record with a

8    written opinion.

9         MR. GOTTLIEB:  Your Honor, can we ask that that order

10   be settled.

11        THE COURT:  I see no reason why you can't agree on the

12   form of order.

13        MS. MARCUS:  Sure, absolutely.

14        MR. GOTTLIEB:  Okay, so we'll consensually attempt to

15   do that.

16        THE COURT:  That's fine.  In that case, I believe we

17   have concluded the afternoon's calendar.

18        MS. MARCUS:  I think that's right.  Thank you, Your

19   Honor.

20        MR. GOTTLIEB:  Thank you, Judge.

21        THE COURT:  We are adjourned.

22        (Whereupon these proceedings were concluded at 2:54 PM)

23

24

25

Page 33

1

2                              I N D E X

3

4                              RULINGS

5                                                    Page      Line

6   Aurora Bank FSB's Motion to Dismiss Adversary   32         4

7   Complaint Granted

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 34

1

2                          C E R T I F I C A T I O N

3

4      I, Dena Page, certify that the foregoing transcript is a true

5      and accurate record of the proceedings.

6

7      Dena Page    Digitally signed by Dena Page
                     DN: cn=Dena Page, c=US
                     Reason: I am the author of this document
8      _____    Date: 2011.05.19 16:32:38 -04'00'

9      DENA PAGE

10

11     Veritext

12     200 Old Country Road

13     Suite 580

14     Mineola, NY 11501

15

16     Date:  May 19, 2011

17

18

19

20

21

22

23

24

25