WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 Case No. |
|  | : |  |
| **LEHMAN BROTHERS HOLDINGS INC.,** *et al.,* | : | **08-13555 (JMP)** |
|  | : |  |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------------x

### NOTICE OF MOTION OF LEHMAN BROTHERS HOLDINGS INC., PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004, 6006 AND 9014, FOR AUTHORIZATION TO ASSUME AND ASSIGN SETTLEMENT AGREEMENT AND TO ENTER INTO SHARING AGREEMENT WITH URBANISM-CORAL WAY, LLC

            **PLEASE TAKE NOTICE** that a hearing on the annexed motion (the "Motion") of Lehman Brothers Holdings Inc. ("LBHI," and together with its affiliated debtors in the above-referenced chapter 11 cases, the "Debtors") for authorization to assume and assign a settlement agreement and to enter into a sharing agreement with Urbanism-Coral Way, LLC to FL 3232 Coral Way LLC, all as more fully described in the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge, at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601, One Bowling Green, New York, New York, 10004 (the "Bankruptcy Court"), on **June 15, 2011 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

            **PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion, **including any alleged claims for cure pursuant to 11 U.S.C. section 365(b)**, shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court for the Southern District of New York, shall set forth the name of the objecting party, the basis for the objection and the specific grounds thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: Jacqueline Marcus, Esq., attorneys for the Debtors; (iii) the Office of the United States Trustee for Region 2, 33 Whitehall Street, 21st Floor, New York, New York 10004 Attn: Tracy Hope Davis, Esq., Elisabetta Gasparini, Esq. and Andrea B. Schwartz, Esq.; and (iv) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005, Attn:  Dennis F. Dunne, Esq., Evan Fleck, Esq., and Dennis O'Donnell, Esq., attorneys for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed and received by no later than **June 8, 2011 at 4:00 p.m. (Prevailing Eastern Time)** (the "Objection Deadline").

> **PLEASE TAKE FURTHER NOTICE** that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

> **PLEASE TAKE FURTHER NOTICE** that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 25, 2011
      New York, New York

           /s/ Jacqueline Marcus
           Jacqueline Marcus

           WEIL, GOTSHAL & MANGES LLP
           767 Fifth Avenue
           New York, New York 10153
           Telephone: (212) 310-8000
           Facsimile: (212) 310-8007

           Attorneys for Debtors
           and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-----------------------------------------------------------------x

## MOTION OF LEHMAN BROTHERS HOLDINGS INC., PURSUANT TO SECTIONS 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004, 6006 AND 9014, FOR AUTHORIZATION TO ASSUME AND ASSIGN SETTLEMENT AGREEMENT AND TO ENTER INTO SHARING AGREEMENT WITH URBANISM-CORAL WAY, LLC

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

Lehman Brothers Holdings Inc ("LBHI," and together with its affiliated debtors in the above-referenced chapter 11 cases, as debtors and debtors in possession, the "Debtors" and, collectively with their non-debtor affiliates, "Lehman"), files this motion (the "Motion") and respectfully represents:

### Preliminary Statement

1. On November 17, 2005, LBHI and Gables Marquis, L.L.C. ("Gables Marquis") entered into a construction loan agreement (the "Gables Loan Agreement"), pursuant to which LBHI agreed to make a loan to Gables Marquis (the "Gables Loan") for the construction of a condominium project (the "Gables Project"). Gables defaulted on the Gables

Loan, and LBHI has declared the full amount remaining due under the Gables Loan due and payable.

2.        In February 2008, Urbanism-Coral Way, LLC ("Urbanism"), the initial seller of the land to Gables Marquis, filed a lawsuit against Gables Marquis and LBHI (the "Urbanism Litigation") in the Florida State Court (as defined hereinafter) alleging that, *inter alia*, Gables Marquis owes Urbanism a payment of $1 million as deferred purchase price for the land.  Urbanism sought to establish and foreclose upon a priority equitable lien, in the amount of $1 million, against certain condominium units in the Gables Project.  Soon thereafter, LBHI filed a separate foreclosure action against Gables Marquis, Urbanism and other parties in interest in the Florida State Court (the "Foreclosure Action") seeking to foreclose on its mortgage against the Gables Project.  The Foreclosure Action currently is pending.

3.        Prior to the Commencement Date (as defined hereinafter), LBHI and Urbanism (together, the "Parties") resolved their issues by executing a settlement agreement, a copy of which is annexed hereto as Exhibit A (the "Settlement Agreement").  LBHI agreed to, *inter alia*, pay Urbanism $150,000 (the "Settlement Payment"), and Urbanism agreed to, *inter alia*, withdraw the Urbanism Litigation with prejudice and consent to the Foreclosure Action. Additionally, as part of the Settlement Agreement, the Parties agreed to enter into a sharing agreement to share the net proceeds of sales of certain condominium units to the extent the buyers of such units were procured by Urbanism.  Prior to the Commencement Date, LBHI made the Settlement Payment, Urbanism withdrew the Urbanism Litigation with prejudice, and Urbanism filed a notice of consent to the Foreclosure Action.  Although the Parties had finalized the terms of a sharing agreement (the "Initial Sharing Agreement"), the Parties did not execute the Initial Sharing Agreement prior to the Commencement Date.

4.      Since the Commencement Date, LBHI has continued to prosecute the Foreclosure Action.  Urbanism has alleged that LBHI has defaulted on the Settlement Agreement by failing to execute the Initial Sharing Agreement and has sought to withdraw its consent to the Foreclosure Action.  Urbanism has also filed a motion in the Foreclosure Action to impose an equitable lien, in the amount of $150,000, based upon an alleged failure of LBHI to close a sale of a condominium unit to a potential purchaser procured by Urbanism.  LBHI has challenged the merits of these filings.

5.      LBHI and Urbanism have agreed to a settlement of their dispute, which is to be effected primarily through LBHI's assumption of the Settlement Agreement.  In order to cure the default under the Settlement Agreement, LBHI proposes to enter into a revised version of the Initial Sharing Agreement with Urbanism, a copy of which is annexed hereto as Exhibit B (the "Sharing Agreement," and together with the Settlement Agreement, the "Agreements").  Additionally, consistent with its approach to dealing with foreclosures, LBHI proposes to assign its interests in the Agreements as well as the expected Foreclosure Judgment (as defined hereinafter) to FL 3232 Coral Way LLC ("Coral Way"), a Foreclosure SPE (as defined hereinafter).

6.      Urbanism has alleged that the Gables Project is encroaching on land owned by Urbanism (the "Alleged Encroachment").  The Alleged Encroachment dispute is currently between Urbanism and the Gables Receiver (as defined hereinafter).  If Coral Way takes title to the Gables Project, however, it may need to resolve the Alleged Encroachment.  LBHI seeks authority, if necessary, for LBHI and/or Coral Way, as applicable, to resolve the Alleged Encroachment, provided, however, that any payment by LBHI or Coral Way to resolve

the Alleged Encroachment will be subject to approval from the Creditors' Committee, upon

reasonable notice, if such payment has not been authorized by any other order of the Court.

7.      Given the expense, delay and risks attendant to litigating these matters,

LBHI believes that the Proposed Transactions (as defined hereinafter) represent its best

opportunity to maximize recoveries from its interests in the Gables Property for its estate and its

creditors.

## Background

8.      Commencing on September 15, 2008 and periodically thereafter (as

applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with

this Court voluntary cases under chapter 11 of title 11 of the United States Code (the

"Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural

purposes only and are being jointly administered pursuant to Rule 1015(b) of the Federal Rules

of Bankruptcy Procedure (the "Bankruptcy Rules").  The Debtors are authorized to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.

9.      On September 17, 2008, the United States Trustee for the Southern

District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured

creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

10.      On September 19, 2008, a proceeding was commenced under the

Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc.

("LBI").  A trustee appointed under SIPA is administering LBI's estate.

11.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as

examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January

20, 2009 [Docket No. 2583], the Court approved the U.S. Trustee's appointment of the

Examiner.  On March 11, 2010, the Examiner filed its report with the Court [Docket No. 7531].

12.    On September 24, 2009, the Court entered its order pursuant to sections

105(a) and 363(b) of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules establishing

procedures for the Debtors to transfer their interests in respect of residential and commercial

loans subject to foreclosure to wholly-owned non-Debtor subsidiaries [Docket No. 5272] (the

"SPE Protocol").

13.    On January 25, 2011, the Debtors filed their first amended joint chapter 11

plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 14150] and a related

disclosure statement pursuant to section 1125 of the Bankruptcy Code [Docket No. 14151].

## **Jurisdiction**

14.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Lehman's Business**

15.    Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

16.    Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

**Relief Requested**

17.     By this Motion, LBHI seeks authorization pursuant to sections 363 and

365 of the Bankruptcy Code and Bankruptcy Rules 6004, 6006 and 9014, to:

> (a)     assume the Settlement Agreement and assign its interests therein to Coral Way; and

> (b)     enter into the Sharing Agreement with Urbanism.

18.     In connection with effectuation of the terms of the Agreements, LBHI

intends to transfer its interests in the Foreclosure Judgment to Coral Way consistent with the

authority granted in the SPE Protocol.

19.     LBHI further requests that the Court grant LBHI and/or Coral Way, as

applicable, the authority, if necessary, to resolve the Alleged Encroachment by either paying

Urbanism or eliminating the Alleged Encroachment, provided, however, that any payment by

LBHI or Coral Way to resolve the Alleged Encroachment shall be subject to approval from the

Creditors' Committee, upon reasonable notice, if such payment has not been authorized by any

other order of the Court.

20.     LBHI requests that the Court waive the fourteen-day stay under

Bankruptcy Rules 6004(h) and 6006(d) and direct that the order granting the relief requested be

effective immediately, in order to allow LBHI to immediately capture the value of the

transactions.

**Events Leading Up to the Settlement Agreement**

*The Gables Loan*

21.     On November 17, 2005, LBHI and Gables Marquis entered into the

Gables Loan Agreement, pursuant to which LBHI agreed to make the Gables Loan in the

principal amount of $46,842,839.49.  Consistent with the Gables Loan Agreement, Gables

Marquis executed and delivered a promissory note, mortgage, assignment of leases and rents, financing statements, and certain other documents evidencing or securing the Gables Loan Agreement (collectively with the Gables Loan Agreement, the "Gables Loan Documents"). The real property described in the Gables Loan Documents includes the Gables Project. LBHI currently holds the Gables Loan Documents.

22.    Gables Marquis defaulted on the Gables Loan Documents by, among other things, failing to pay the Gables Loan in full on or before its scheduled maturity date of December 9, 2007. Additionally, Gables Marquis was in default under the Loan Documents due to Gables Marquis' nonpayment of real estate taxes for the years 2008, 2009 and 2010. LBHI paid the aggregate amount of approximately $1.17 million to the County Tax Collector for such real estate taxes. As a result of these defaults, LBHI has declared due and payable the full amount payable under the Gables Loan Documents, which amount is not less than $17,595,289.79.

*Florida State Court Actions*

23.    On February 20, 2008, Urbanism commenced the Urbanism Litigation in the Circuit Court for the Eleventh Judicial Circuit, Dade County, Florida (the "Florida State Court").[1] Urbanism alleged in the complaint that Gables Marquis owed Urbanism a payment of $1 million representing the deferred purchase price of the land, or alternatively a conveyance of five developed commercial condominium units (the "Commercial Units"). Additionally, Urbanism alleged that LBHI knew or had reason to know of the $1 million debt or conveyance owed by Gables Marquis to Urbanism. In the Urbanism Litigation, Urbanism sought to (i) establish and foreclose upon an equitable lien against the Commercial Units in the amount of $1

---

[1] *Urbanism-Coral Way, LLC v. Gables Marquis, LLC and Lehman Brothers Holdings Inc.*, Case No. 08-09071-CA-25.

million and (ii) subordinate LBHI's mortgage lien to Urbanism's equitable lien (such actions together, the "Gables Equitable Lien"). In connection with the Urbanism Litigation, Urbanism filed a notice of lis pendens against the Commercial Units.

24.     On April 17, 2008, LBHI commenced the Foreclosure Action,[2] seeking to foreclose on the Commercial Units and other residential condominium units within the Gables Project. After it receives a foreclosure judgment (the "Foreclosure Judgment"), LBHI plans to credit bid at the foreclosure sale (the "Foreclosure Sale") in order to take title to the Gables Project. LBHI is confident that it will be the successful bidder at the Foreclosure Sale.

25.     On May 16, 2008, Coscan Construction, LLC ("Coscan") filed a counterclaim against LBHI and Gables Marquis in the Foreclosure Action asserting claims for (i) breach of construction contract; (ii) quantum meruit; (iii) violation of Fla. Sta. § 713.3417; and (iv) priority of lien. LBHI and Coscan have since resolved their issues and have filed a joint stipulation of dismissal with prejudice of Coscan's counterclaim. Coscan has also consented to the Foreclosure Judgment.

26.     In connection with the Foreclosure Action, on June 2, 2008, LBHI sought and obtained an order appointing a receiver (the "Gables Receiver") for all of the property included in the Foreclosure Action, including the Commercial Units.

27.     Urbanism filed a complaint against the Gables Receiver based on the Alleged Encroachment. Recently, Urbanism's complaint was dismissed without prejudice for lack of prosecution.

---

[2] *Lehman Brothers Holdings Inc. v. Gables Marquis, L.L.C. et al*, Case No. 08-21804-CA-05.

**The Settlement Agreement**

28.    In connection with the Urbanism Litigation and the Foreclosure Action,

prior to the Commencement Date, the Parties negotiated terms of a settlement agreement in order

to resolve their issues with respect to the Commercial Units.  The Parties executed the Settlement

Agreement, as of August 12, 2008.

29.    The salient terms of the Settlement Agreement are, as follows:[3]

- LBHI agreed to pay Urbanism the Settlement Payment.  Upon receipt of the Settlement Payment, Urbanism agreed to dismiss with prejudice the Urbanism Litigation and record a notice of discharge of lis pendens that it filed in connection with the Urbanism Litigation.

- Urbanism agreed to file a notice of consent to the relief sought by LBHI in the Foreclosure Action and waive any further notice in and of matters arising in the Foreclosure Action.

- If the Gables Receiver or LBHI enters into a lease-purchase or purchase and sale agreement for a certain Commercial Unit ("Unit 2") with RDZ Fine Arts, Inc. ("RDZ"), which at one point was a potential purchaser procured by Urbanism, then LBHI will remit to Urbanism a payment of up to $150,000 from the proceeds of the sale of Unit 2 (the "RDZ Closing Payment").

- Upon delivery of the Settlement Payment, Urbanism agreed to release, acquit and forever discharge LBHI and its related parties of all liability in connection with the Urbanism Litigation, the Foreclosure Action, the Commercial Units or the Gables Project, and all other dealings between Urbanism and LBHI. The release does not apply to release any obligations under the Settlement Agreement.

- LBHI and Urbanism agree to enter into an agreement to share the net proceeds of sales of Commercial Units procured by Urbanism.  If LBHI or its subsidiary purchases the Commercial Units at the Foreclosure Sale, then upon the closing of any sale of a Commercial Unit to a buyer procured by Urbanism or Zully Ruiz Enterprises ("ZRE"),[4] Urbanism will be entitled to receive 15% of the net proceeds received from such sale.  Also, if any party other than

---

[3] The terms listed below are provided as a summary of the terms of the Settlement Agreement. In the case of an inconsistency between the terms set forth in the summary and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

[4] ZRE is an affiliate of Urbanism.

LBHI or its subsidiary purchases the Commercial Units at the Foreclosure
Sale, then LBHI will remit to Urbanism $45,000 after the proceeds of the
Foreclosure Sale have been distributed, and the Sharing Agreement will be
extinguished upon issuance of the certificate of sale from the Foreclosure
Sale.

## The Initial Sharing Agreement

30.    The Initial Sharing Agreement contained the provisions regarding sharing

of sales of proceeds required under the Settlement Agreement.  The other salient terms of the

Initial Sharing Agreement were, as follows:

- Every prospective purchaser of a Commercial Unit procured by Urbanism or
  ZRE (each a "Procured Purchaser"), and every offer to purchase a
  Commercial Unit made by a Procured Purchaser, shall be subject to LBHI's
  review and approval, and LBHI may elect to approve or reject any such offer
  in the exercise of its sole and absolute discretion.

- Urbanism agreed to hold harmless and indemnify LBHI from and against any
  and all loss, cost, expense, liability or claim arising out of any act, omission or
  misconduct by Urbanism or ZRE in connection with the Commercial Units.
  Such indemnification will inure to the benefit of, and be enforceable by, any
  Lehman Entity (as defined therein) if such entity acquires title to the
  Commercial Units.

31.    Although Urbanism signed the Initial Sharing Agreement prior to the

Commencement Date, neither LBHI nor ZRE did so.

## Events Subsequent to the Commencement Date

32.    Since the Commencement Date, LBHI has continued to prosecute the

Foreclosure Action.  LBHI filed a motion for partial summary judgment of foreclosure on July

23, 2009 and an amended motion for partial summary judgment of foreclosure on April 15, 2011.

33.    In an attempt to enforce the terms of the Settlement Agreement, Urbanism

alleged that LBHI breached the Settlement Agreement by failing to sell Unit 2 to RDZ.  In

February 2009, Urbanism filed a motion in the Foreclosure Action to impose an equitable lien in

the amount of $150,000, the maximum amount of the RDZ Closing Payment (such action, the

"Unit 2 Equitable Lien," and together with the Gables Equitable Lien, the "Urbanism Equitable

Liens"). LBHI has challenged the merits of the Unit 2 Equitable Lien and asserts that it has not

failed to perform any obligation with respect to the RDZ Closing Payment and/or Unit 2. In

November 2010, in an attempt to enforce the terms of the Settlement Agreement and require

LBHI to execute the Initial Sharing Agreement, Urbanism filed a motion in the Foreclosure

Action for leave to revoke consent to LBHI's foreclosure based on LBHI's failure to sign the

Initial Sharing Agreement.

34.     LBHI believes that Urbanism's efforts to enforce the Settlement

Agreement and require LBHI to sign the Initial Sharing Agreement violate the automatic stay

extant in the Debtors' chapter 11 cases.

35.     The Parties, each having recognized the benefits of avoiding further

expenses and costs attendant to further protracted, costly and uncertain litigation with respect to

the Urbanism Equitable Liens, the Settlement Agreement and the Initial Sharing Agreement,

have agreed to the Proposed Transactions.

## The Proposed Transactions

36.     The Parties have agreed to resolve the outstanding issues among them by

LBHI's (i) assumption of the Settlement Agreement, (ii) entry into the Sharing Agreement, and

(iii) assignments of (a) the Agreements and (b) LBHI's rights and interests in the Foreclosure

Judgment to Coral Way (collectively, the "Proposed Transactions").

37.     The Proposed Transactions will (i) enable LBHI to benefit from the terms

of the Settlement Agreement, (ii) resolve the Urbanism Equitable Liens, and (iii) permit LBHI to

proceed with the Foreclosure Action. The salient terms of the Proposed Transactions are, as

follows:

- <u>Assumption of the Settlement Agreement</u>.  LBHI will assume the Settlement Agreement.  LBHI has already fulfilled certain material obligations required under the Settlement Agreement, including making the Settlement Payment.  Upon assumption of the Settlement Agreement, Urbanism shall be required to release, acquit and discharge LBHI, its affiliates, and its successors, from, among other things, any claims relating to the Urbanism Litigation, the Foreclosure Action, the Commercial Units or the Gables Project, as well as all other dealings between Urbanism and LBHI.

- <u>Entry into the Sharing Agreement</u>.  In order to cure its default under the Settlement Agreement, LBHI will enter into the Sharing Agreement with Urbanism.  By entering into the Sharing Agreement, LBHI will obtain Urbanism's release of the Urbanism Equitable Liens.  LBHI may also benefit from Urbanism's services in procuring purchasers for the Commercial Units.  The terms of the Sharing Agreement are identical to those of the Initial Sharing Agreement, except that the Sharing Agreement provides for Urbanism's (i) release of all actions or claims against LBHI with respect to the Urbanism Litigation, the Foreclosure Action, the Urbanism Equitable Liens, and all other dealings between the Parties, (ii) consent to LBHI's assignment of the Sharing Agreement to Coral Way, and (iii) release of all of LBHI's obligations under and liabilities resulting from the Sharing Agreement upon such assignment.

- <u>Transfer of Foreclosure Judgment to Coral Way</u>.  On May 16, 2011, the Debtors created Coral Way, a non-debtor special purpose entity wholly owned indirectly by LBHI (a "<u>Foreclosure SPE</u>").[5]  As indirect owner of Coral Way, LBHI retains the full beneficial interest in Coral Way, including any proceeds resulting from Coral Way's asset dispositions.  LBHI intends to transfer the Foreclosure Judgment to Coral Way so that Coral Way may foreclose upon and subsequently dispose of the Gables Project.  Transfer of LBHI's interests in the Foreclosure Judgment will pave the way for the Debtors effectively to foreclose on the mortgage, sell the Gables Project, and retain the economic benefit, while at the same time significantly limiting the potential administrative expense liability that could result from the Gables Project.

- <u>Assignment of the Agreements to Coral Way</u>.  LBHI will assign all of its rights and interests in the Agreements to Coral Way.  Upon such assignments, LBHI will be released of any and all obligations under the Agreements.

---

[5] Coral Way is wholly owned directly by Lunar Real Estate Holdings LLC, which is a wholly-owned non-debtor subsidiary of LBHI that was created for the sole purpose of owning the equity of Foreclosure SPEs.

**The Assumption and Assignment of the**
**Settlement Agreement Is a Sound Exercise of LBHI's Business Judgment**

38.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  In determining whether an executory contract or unexpired lease should be assumed, courts apply the "business judgment" test.  *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures)*, 4 F.3d 1095, 1099 (2d Cir. 1993); *see also Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985) ("More exacting scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially"); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006) ("The decision to assume or reject an executory contract is within the sound business judgment of the debtor-in-possession. . . .").  Under this test, a court should approve the assumption of a contract under section 365(a) of the Bankruptcy Code if it finds that a debtor has exercised its sound business judgment in determining that assumption of an agreement is in the best interests of its estate.  *See, e.g., In re Child World, Inc.*, 142 B.R. 87, 89-90 (Bankr. S.D.N.Y. 1992).

39.    LBHI's assumption, and assignment, of the Settlement Agreement represents a sound exercise of its business judgment that should be approved.  By assuming and assigning the Settlement Agreement, LBHI will benefit from protections afforded under the Settlement Agreement, including Urbanism's withdrawal of the Urbanism Equitable Liens and consent to the Foreclosure Action.  By eliminating any threat of the Urbanism Equitable Liens and Urbanism's interference with the Foreclosure Action, LBHI will be able to further ensure its

priority mortgage lien on the Gables Project, maximize the proceeds from the ultimate sale of the

Gables Project, and move forward expeditiously with the Foreclosure Action.

40.    Furthermore, by curing and assuming the Settlement Agreement, LBHI

avoids the risks associated with continued default under the Settlement Agreement.  LBHI has

already made the Settlement Payment, and LBHI risks forfeiting such payment if it does not

assume the Settlement Agreement.  Moreover, the Settlement Payment, which has already been

made, represents a fraction of the potential Gables Equitable Lien of $1 million.  A rejection of

the Settlement Agreement, which would constitute a breach of such agreement, arguably may

result in Urbanism's successful imposition of the Gables Equitable Lien.  Finally, although LBHI

believes that it has strong arguments against the Unit 2 Equitable Lien that would support an

ultimate ruling in LBHI's favor, Urbanism has agreed to withdraw the Unit 2 Equitable Lien

upon LBHI's assumption of the Settlement Agreement and entry into the Sharing Agreement.

Together, the Urbanism Equitable Liens may substantially reduce the distribution of proceeds to

LBHI from a subsequent sale of the Gables Project.  By resolving the Urbanism Equitable Liens,

LBHI avoids the expenses and risks associated with further litigation.

41.    Finally, pursuant to section 365(k) of the Bankruptcy Code, after

assignment to Coral Way, LBHI's estate will be relieved from any liability for breach of the

Settlement Agreement.  Coral Way may continue the Foreclosure Action and ultimately realize

the proceeds from disposing of the Gables Project.  LBHI, as the ultimate equity owner of Coral

Way, will realize the economic benefits as the sale proceeds are upstreamed from Coral Way to

LBHI.

42.    In short, through the assumption and assignment of the Settlement

Agreement, LBHI obtains the benefit of the Settlement Agreement.  Accordingly, the assumption

and assignment of the Settlement Agreement represents a reasonable exercise of LBHI's

business judgment, is in the best interests of its estate and its creditors, and should be approved.

### LBHI Will Cure Its Default Under the Settlement Agreement Upon Assumption

43.    Section 365(b) of the Bankruptcy Code establishes certain conditions that

must be satisfied prior to the assumption of an executory contract if there has been a default:

> (b)(1) If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the trustee—
>
> > (A) cures, or provides adequate assurance that the trustee will
> > promptly cure, such default . . .
> >
> > (B) compensates, or provides adequate assurance that the trustee will
> > promptly compensate, a party other than the debtor to such contract or
> > lease, for any actual pecuniary loss to such party resulting from such
> > default; and
> >
> > (C) provides adequate assurance of future performance under such
> > contract or lease.

11 U.S.C. § 365(b)(1).

44.    The only event of default under the Settlement Agreement that needs to be

cured by LBHI to satisfy section 365(b) of the Bankruptcy Code is LBHI's entry into the Sharing

Agreement.  LBHI proposes that, upon assumption of the Settlement Agreement, it will promptly

cure this nonmonetary default by entering into the Sharing Agreement, the terms of which

comply with the requirements set forth in the Settlement Agreement.  Urbanism has agreed that

entry into the Sharing Agreement is the only default under the Settlement Agreement that must

be cured.

### Entry Into the Sharing Agreement Is an Exercise of Sound Business Judgment
### by the Debtors and Meets the Standard Under Section 363 of the Bankruptcy Code

45.    Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee,

after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate." *Id.* § 363(b)(1).  When considering a transaction outside the ordinary

course of business, courts in the Second Circuit, and others, require that such transaction be

based upon the sound business judgment of the debtor.  *Comm. of Equity Sec. Holders v. Lionel

Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *accord In re Chateaugay Corp.*,

973 F.2d 141, 143 (2d Cir. 1992); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton

State Bank v. Schipper (In Re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991)); *Institutional

Creditors of Cont'l Airlines, Inc. v. Cont'l Airlines, Inc. (In re Cont'l Airlines, Inc.)*, 780 F.2d

1223, 1226 (5th Cir. 1986).

       46.     It is generally understood that "[w]here the debtor articulates a reasonable

basis for its business decisions (as distinct from a decision made arbitrarily or capriciously),

courts will generally not entertain objections to the debtor's conduct."  *In re Johns-Manville

Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  If a valid business justification exists, there is

a strong presumption that "the directors of a corporation acted on an informed basis, in good

faith and in the honest belief that the action taken was in the best interests of the company."  *In

re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting *Smith v. Van Gorkom*, 488

A.2d 858, 872 (Del. 1985)), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).  The burden of rebutting

this presumption falls to parties opposing the proposed exercise of a debtor's business judgment.

*Id.* (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

       47.     LBHI's entry into the Sharing Agreement is in the best interests of its

estate and its creditors and satisfies the standard under section 363(b)(1) of the Bankruptcy Code.

Entry in the Sharing Agreement is an integral part of the Proposed Transactions, cures the

remaining default under the Settlement Agreement, and resolves the issues between LBHI and

Urbanism.  As set forth in the Declaration of Craig Burns filed contemporaneously herewith,

without the Sharing Agreement, Urbanism would not have agreed to withdraw its motion to

impose the Unit 2 Equitable Lien or its motion for leave to revoke consent to the Foreclosure

Action. The Parties have added terms to the Sharing Agreement pursuant to which Urbanism

shall release, acquit and discharge LBHI, its affiliates, and it successors from any action relating

to the Urbanism Litigation, the Foreclosure Action, the Gables Project, and all other dealings

between with Parties. Resolution of the Urbanism Equitable Liens facilitates LBHI's foreclosure

on the Gables Project and its realization of proceeds from subsequent sales.

48. By entering into the Sharing Agreement, LBHI will benefit from services

rendered by Urbanism in procuring possible purchasers of the Commercial Units, without being

bound to accept offers procured by Urbanism. Every Procured Purchaser, and every offer made

by a Procured Purchaser, shall be subject to LBHI's review and approval, and LBHI may

approve or reject any such offer in the exercise of its sole and absolute discretion. Significantly,

any payments owed to Urbanism will come from the net proceeds of the sale of the Commercial

Units or, if LBHI is not the successful bidder at the Foreclosure Sale, the Foreclosure Sale itself.

49. Based on the foregoing, LBHI respectfully submits that the entry into the

Sharing Agreement is an exercise of sound business judgment and should be approved.

**Assignments of the Agreements and Foreclosure Judgment to Coral Way**

50. As part of the Proposed Transactions, LBHI will transfer its interests in

the Foreclosure Judgment to Coral Way. Such transfer falls within the range of authority granted

to the Debtors pursuant to the SPE Protocol, which authorizes the Debtors to transfer certain

interests in commercial real estate loans to Foreclosure SPEs. The SPE Protocol authorizes the

Debtors, without further order of the Court or approval of or notice to any party, to transfer

Commercial Foreclosure Loans[6] (or other loans secured by commercial real estate subject to foreclosure) or the related foreclosure judgments to Foreclosure SPEs that are directly or indirectly wholly owned by the Debtor that owns the subject Commercial Foreclosure Loans.

51.    LBHI has created Coral Way as a Foreclosure SPE to which it will transfer the interests in the Foreclosure Judgment.  LBHI is authorized to transfer its interests in the Foreclosure Judgment without Court approval, pursuant to the SPE Protocol.

52.    To properly effectuate the transfer of the Foreclosure Judgment to Coral Way, and to prevent any future problems or liabilities in disposing of the Gables Project, LBHI must also transfer its rights and interests in the Agreements to Coral Way, inasmuch as such Agreements directly impact the disposition of the Commercial Units.  Failure to transfer the Agreements may disrupt the Foreclosure Action or create unnecessary administrative expense liabilities for LBHI.  The SPE Protocol authorizes the Debtors to "carry out all other actions as may be necessary to . . .  dispose of Real Estate Foreclosure Loans and Foreclosure Property,[7] including through Commercial Property Sales[8] . . . in accordance with th[e] Order [approving the SPE Protocol]."  The Debtors do not believe, however, that the SPE Protocol can override the requirement in section 365 for court approval of the assumption and assignment of the

---

[6] Commercial Foreclosure Loans are defined in the SPE Protocol as "commercial mortgage loans, commercial mezzanine loans . . . and other loans owned by the Debtors ultimately secured directly or indirectly by real property or interests therein . . . that may be subject to foreclosure or deeds or assignments in lieu of foreclosure."

[7] Foreclosure Property is defined in the SPE Protocol as "real property underlying Real Estate Foreclosure Loans."

[8] Commercial Property Sale is defined in the SPE Protocol as a Debtor's sale of "Foreclosure Property underlying a Commercial Foreclosure Loan held by a Foreclosure SPE, or an entire Foreclosure SPE holding a Commercial Foreclosure Property."

Settlement Agreement.  Accordingly, LBHI requests that the Court approve the assignment of

the Settlement Agreement to Coral Way, free and clear of all claims or interests against LBHI.

53.     LBHI submits that Urbanism has adequate assurance of future

performance by Coral Way.  Pursuant to 365(f)(2) of the Bankruptcy Code, the trustee may only

assign an executory contract if "adequate assurance of future performance by the assignee of

such contract or lease is provided."  11 U.S.C. § 365(f)(2).  Under section 365(f)(2), the meaning

of "adequate assurance of future performance" depends on the facts and circumstances of each

case, but should be given "practical, pragmatic construction."  *Carlisle Homes, Inc. v. Arrari (In

re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (internal citations omitted); *see

also In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (explaining that adequate

assurance of future performance does not mean absolute assurance that debtor will thrive and pay

rent).  Among other things, adequate assurance may be given by demonstrating the assignee's

financial health and experience in managing the type of enterprise or property assigned.  *See In

re Bygraph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (holding that adequate assurance

of future performance is present when prospective assignee of lease has financial resources and

expressed willingness to devote sufficient funding to business to give it strong likelihood of

succeeding; chief determinant of adequate assurance is whether rent will be paid).

54.     Any of LBHI's remaining financial obligations under the Settlement

Agreement will be paid from the proceeds of either the Foreclosure Sale or the sale of the

Commercial Units and, therefore, will be available to Coral Way as the owner of the Commercial

Units.  These payment obligations may include any of the following: (a) payment of $45,000 to

Urbanism from the proceeds of the Foreclosure Sale if LBHI or its subsidiary is not the

purchaser of the Gables Project at such sale; (b) payment of 15% of the net proceeds received

from Procured Purchasers if LBHI or its subsidiary is the purchaser of the Gables Project at the

Foreclosure Sale; or (c) the RDZ Payment.  As for the RDZ Payment,  LBHI has confirmed that

no such lease-purchase or purchase and sale agreement has been consummated, nor is one likely

to be executed going forward.  In the unlikely event that such an agreement is consummated,

LBHI's liability for the RDZ Closing Payment will be no more than $150,000 of the proceeds of

the sale of Unit 2.  As such, there can be no serious dispute that Coral Way has the financial

capability to satisfy any and all financial obligations that may arise under the Agreements.

    55.  Furthermore, Coral Way will be managed by LAMCO LLC, an asset

management company specializing in, among other things, the management and sale of

distressed commercial real estate property.  LAMCO LLC has extensive experience in managing

similar properties and can effectively determine whether to hold or liquidate the Gables Project,

thereby ensuring maximum recovery for all parties in interest to the Settlement Agreement.  As a

result, Urbanism has adequate assurance of future performance by Coral Way.  In addition,

Urbanism has consented to the assignment of the Agreements to Coral Way.  Accordingly, LBHI

requests that the Court approve the assignment of the Settlement Agreement to Coral Way, free

and clear of all claims or interests against LBHI.

### The Alleged Encroachment

    56.  Currently, the Alleged Encroachment is between Urbanism and the Gables

Receiver.  LBHI recognizes, however, that if the Alleged Encroachment is not resolved before

the Foreclosure Sale, Coral Way may need to resolve the Alleged Encroachment if Coral Way

takes title to the Gables Project.  Although Urbanism's complaint based on the Alleged

Encroachment was recently dismissed for lack of prosecution, and LBHI has informally

challenged the merits of the Alleged Encroachment, LBHI requests that the Court grant LBHI

and/or Coral Way, as applicable, the authority, if necessary, to resolve the Alleged

Encroachment by either paying Urbanism or eliminating the Alleged Encroachment, provided,

however, that any decision by LBHI or Coral Way to make a payment to resolve the Alleged

Encroachment will be subject to approval from the Creditors' Committee, upon reasonable

notice, if such payment has not been authorized by any other order of the Court.

### Waiver of Bankruptcy Rules 6004 and 6006

57.    To implement the foregoing immediately, the Debtors seek a waiver of the

fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy

Rule 6004(h) and approving the assignment of an executory contract imposed under Bankruptcy

Rule 6006(d).

### Notice

58.    No trustee has been appointed in these chapter 11 cases.  The Debtors

have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the United States Attorney for the Southern District of New York; (iv)

Urbanism; (v) ZRE; and (vi) all other parties entitled to notice in accordance with the procedures

set forth in the second amended order entered on June 17, 2010 governing case management and

administrative procedures for these cases [Docket No. 9635].  The Debtors submit that no other

or further notice need be provided.

59.    No previous request for the relief sought herein has been made by the

Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief

requested herein and such other and further relief as it deems just and proper.

Dated:  May 25, 2011
        New York, New York

                                    /s/ Jacqueline Marcus
                                    Jacqueline Marcus

                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

## Exhibit A

**(Settlement Agreement)**

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "**Agreement**") is entered into as of August _12_ 2008 (the "**Effective Date**") by and between Urbanism-Coral Way, LLC ("**URBANISM**") and Lehman Brothers Holdings Inc. ("**LEHMAN**").

## WITNESSETH

**WHEREAS**, on February 20, 2008, URBANISM filed a law suit against Gables Marquis, L.L.C. and LEHMAN in the Circuit Court for the Eleventh Judicial Circuit, Dade County, Florida, styled *Urbanism-Coral Way, LLC v. Gables Marquis, LLC and Lehman Brothers Holdings Inc.*, Case No. 08-09071-CA-25 (the "**Urbanism Litigation**");

**WHEREAS**, the Urbanism Litigation seeks to establish and foreclose upon an equitable lien against certain commercial condominium units identified on attached Exhibit A (the "**Commercial Units**");

**WHEREAS**, in connection with the Urbanism Litigation, URBANISM filed a Notice of Lis Pendens against the Commercial Units;

**WHEREAS**, on April 17, 2008, LEHMAN filed a foreclosure action against Gables Marquis, L.L.C., URBANISM and others seeking to foreclose against its mortgage against the Gables Marquis condominium project (the "**Project**"), which includes the Commercial Units and residential condominium units, in the Circuit Court for the Eleventh Judicial Circuit, Dade County, Florida, styled *Lehman Brothers Holdings Inc. v. Gables Marquis, L.L.C. et al*, Case No. 08-21804-CA-05 (the "**Foreclosure Action**");

**WHEREAS**, in connection with the Foreclosure Action, on June 2, 2008, LEHMAN sought and obtained an Order appointing Jeff W. Staley of Apogee Residential, LLC (the "**Gables Receiver**") as the receiver for all of the property included in the Foreclosure Action, including the Commercial Units;

**WHEREAS**, URBANISM has procured RDZ Fine Arts, Inc. ("**RDZ**") as a potential purchaser for Unit No. 2 of the Commercial Units;

**NOW, THEREFORE**, in consideration of the promises and covenants contained herein, URBANISM and LEHMAN hereby agree as follows:

1.      **Recitals**.  The above recitals are true and correct and are incorporated herein by reference as a material and integral part of this Agreement.

2.      **Settlement Payment**.  Within ten (10) business days of the date of this Agreement, LEHMAN will pay URBANISM $150,000.00 ("**Settlement Payment**") by wire transfer to URBANISM'S counsel of record in the Urbanism Litigation, the firm of Coffey Burlington, in accordance with wiring instructions to be provided by Coffey Burlington; provided, however, the Settlement Payment shall be held in escrow by Coffey Burlington pending completion and satisfaction of the terms and conditions set forth in paragraphs 3 and 4 of this Agreement.

3.      **Dismissal of Urbanism Litigation With Prejudice**.  Immediately upon receipt of the Settlement Payment by Coffey Burlington, URBANISM shall (a) file a Stipulation for Voluntary Dismissal with Prejudice of the Urbanism Litigation, pursuant to Fla. R. Civ. P. 1.420(A)(1), and (b) record in the Public Records of Miami-Dade County a Notice of Discharge of the Lis Pendens filed in connection with the Urbanism Litigation. Dismissal of the Urbanism Litigation shall be with prejudice as to both LEHMAN and Gables Marquis, L.L.C.  LEHMAN agrees that, if requested by URBANISM, LEHMAN will join in the execution of the Stipulation for Voluntary Dismissal.

Settlement Agreement-2673422v7

4.    **Consent to the Foreclosure Action**.  Within three (3) days of receipt of the Settlement Payment by Coffey Burlington, URBANISM shall file a notice of consent to the relief sought by LEHMAN in the Foreclosure Action and a waiver of any further notice in and of matters arising in the Foreclosure Action.

5.    **Release of Claims by URBANISM.**   Subject only to the condition that the Settlement Payment be delivered to Coffey Burlington in accordance with paragraph 2 above, URBANISM, for each of its members, officers, employees, directors, agents, attorneys, successors and assigns, hereby releases, acquits and forever discharges LEHMAN and its predecessors, successors, assigns, officers, managers, directors, shareholders, employees, agents, attorneys, representatives, parent corporations, subsidiaries, and affiliates (collectively, the **"Released Parties"**), jointly and severally, from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, accounts, offsets, rights, actions and causes of action, including, without limitation, for contribution and indemnity, and liabilities of any kind or character whatsoever, whether arising at law or in equity (including without limitation, claims based on fraud, duress, mistake, tortious interference, usury, or control), whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, suspected or unsuspected, and whether or not heretofore asserted, for or because of or as a result of any act, omission, communication, transaction, occurrence, representation, promise, damage, breach of contract, fraud, violation of any statute or law, commission of any tort, or any other matter whatsoever or thing done, omitted or suffered to be done by any of the Released Parties, which has occurred in whole or in part, or was initiated at any time from the beginning of the world up to and immediately preceding the moment of the execution of this Agreement, including without limiting the generality of the foregoing language, all of the foregoing which URBANISM ever had, now has, or might hereinafter have against any of the Released Parties, for or by reason of any matter, cause, claim, or thing whatsoever relating in whole or in part, directly or indirectly, to: (a) the Urbanism Litigation; (b) the Foreclosure Action; (c) the Commercial Units or the Project; (d) all other dealings between URBANISM and LEHMAN and any one or more of the Released Parties; and (e) any and all other matters whatsoever.  The provisions of this paragraph shall survive the expiration or termination of this Agreement, BUT SHALL NOT SERVE TO RELEASE ANY OBLIGATIONS UNDER THIS AGREEMENT.

6.    **Sale to RDZ**.   If the Gables Receiver or LEHMAN (each in the exercise of its sole discretion) enters into a lease-purchase or purchase and sale agreement for Unit No. 2 in the Project (a/k/a the gallery space) with RDZ (any such agreement being hereinafter called the **"RDZ Contract"**), then:

    **a.**    If the sale and conveyance of Unit No. 2 to RDZ pursuant to the RDZ Contract is actually consummated either (i) prior to the occurrence of a foreclosure sale in the Foreclosure Action, or (ii) after the occurrence of a foreclosure sale in the Foreclosure Action if (but only if) LEHMAN (or a subsidiary of LEHMAN) is the purchaser of Unit 2 at such sale, then (A) LEHMAN will remit to URBANISM the RDZ Closing Payment (as hereinafter defined) within three (3) business days after the closing of the sale to RDZ, and (B) URBANISM shall have no right, claim or interest whatsoever in or to any proceeds of such sale; and

    **b.**    If the sale and conveyance of Unit No. 2 to RDZ pursuant to the RDZ Contract is <u>not</u> consummated prior to the entry of a final judgment of foreclosure in the Foreclosure Action, then LEHMAN agrees to request the Court to include in the final foreclosure judgment a provision to the effect that URBANISM'S right to receive the RDZ Closing Payment from the seller of Unit No. 2 upon a closing under the RDZ Contract, as provided in subparagraph a. above, will be binding on any person who purchases Unit No. 2 at the foreclosure sale conducted in the Foreclosure Action.

Settlement Agreement-2673422v7

2.



If (i) neither the Gables Receiver nor LEHMAN closes on a sale of Unit No. 2 to RDZ as contemplated by the foregoing provisions of this Paragraph 6, **and** (ii) the Court declines to issue a final foreclosure judgment in accordance with subparagraph b. above, then and in either such event, URBANISM'S rights in connection with any sale of Unit No. 2 will be governed by paragraph 7 below.

As used herein, **"RDZ Closing Payment"** means $150,000 if the final gross purchase price under the RDZ Contract is $569,250 or more. If the final gross purchase under the RDZ Contract is less than said amount, then the RDZ Closing Payment will equal the product of $150,000 multiplied by a fraction, the numerator of which is the actual final gross purchase price under the RDZ Contract and the denominator of which is $569,250.

7.    **Sales Proceeds Sharing Agreement**.

a.    LEHMAN will enter into an agreement with URBANISM, the scope of which will be limited to the sharing of net proceeds from sales of Commercial Units procured by URBANISM (the "**Sharing Agreement**"). The Sharing Agreement will provide that if LEHMAN (or a subsidiary of LEHMAN) purchases the Commercial Units at the foreclosure sale conducted in the Foreclosure Action, then in the event of and upon the closing of any sale of a Commercial Unit procured by URBANISM or Zully Ruiz Enterprises, Inc. ("**ZRE**"), URBANISM will be entitled to receive an amount equal to 15% of the net proceeds received from such sale (i.e., the gross sales price of the unit less (i) all closing costs paid by the seller and (ii) all costs and expenses paid or payable by the seller in connection with tenant improvements or similar construction).

b.    The Sharing Agreement (i) will apply only to initial sales of Commercial Units (and not to any resale), (ii) will be terminable by LEHMAN only in the event of a material default by URBANISM, and (iii) will include a joinder by ZRE, consenting to LEHMAN'S payment to URBANISM of any amounts that become due, pursuant to subparagraph a. above, in connection with the closing of any sale of a Commercial Unit procured by ZRE.

c.    Notwithstanding anything to the contrary contained herein, if any person or entity other than LEHMAN (or a subsidiary of LEHMAN) purchases the Commercial Units at the foreclosure sale conducted in the Foreclosure Action, then (i) the Sharing Agreement will not be binding upon such purchaser but will instead be extinguished by the Clerk's issuance of the certificate of title, and (ii) within three (3) business days after the Clerk distributes the proceeds of the foreclosure sale in accordance with the final judgment, LEHMAN will remit to URBANISM the sum of $45,000.00 in full and final settlement of URBANISM'S rights under this paragraph 7.

8.    **Notice**. All notices and other communications delivered hereunder (whether or not required to be delivered hereunder) shall be deemed to be sufficient and duly given if contained in a written instrument (a) personally delivered, (b) sent by nationally-recognized overnight courier guaranteeing next business day delivery or (c) sent by first class registered or certified mail, postage prepaid, return receipt requested, in each case addressed to the address set forth opposite the addressee's name, with a copy to their counsel, as set forth below:

As to URBANISM:

Brian L. Strelitz
Urbanism Group
1400 NE Miami Gardens Drive #210-A
Miami, Florida  33179



Settlement Agreement-2673422v7

3.

<u>with a copy to</u>:

David Freedman, Esquire
Coffey Burlington
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133

As to LEHMAN:

c/o TriMont Real Estate Advisors, Inc.
3424 Peachtree Road, Suite 2200
Atlanta, GA 30326
Attention: Peter B. Hoelzle

<u>with a copy to</u>:

Roberta A. Colton, Esquire
Trenam, Kemker, Scharf, Barkin,
Frye, O'Neill & Mullis, P.A.
P. O. Box 1102
Tampa, Florida 33601-1102

9.    **Review of Agreement**.  The Parties to this Agreement acknowledge that they have carefully read and understand the effect of this Agreement and execute this Agreement as a free and voluntary act, without any duress, coercion or undue influence exerted by or on behalf of any other individual or entity.

10.    **Reliance Only on Representations Herein**.  The parties acknowledge and agree that execution of this Agreement is not based upon reliance upon any representation, understanding or agreement not expressly set forth herein.

11.    **Binding Effect**.  This Agreement shall inure to the benefit of and shall be binding on the respective successors and permitted assigns of the parties hereto.

12.    **No Drafting Presumption**.  This Agreement shall not be construed more strongly against any party regardless of who is responsible for its preparation. The parties to this Agreement acknowledge that the Agreement is the product of an arms-length negotiation.  All parties have contributed to the terms of this Agreement, and all parties are equally responsible for its preparation.

13.    **Severability**.  If any clause or provision of this Agreement is determined to be illegal, invalid or unenforceable under any present or future law by the final judgment of a court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby.  It is the intention of the parties that if any such provision is held to be illegal, invalid or unenforceable, there shall be added, in lieu thereof, a provision as similar in terms to such provision as is possible which shall be legal, valid and enforceable.

14.    **Counterparts**.  This Agreement may be executed in a number of multiple identical counterparts which, when taken together, shall constitute collectively one (1) agreement, but in making proof of this Agreement it shall not be necessary to produce or account for more than one such counterpart executed by the party to be charged.  For purposes of this Agreement, signatures by facsimile or electronic means shall be considered as valid original signatures.

Settlement Agreement-2673422v7

4.



15.    **Headings**.  Headings are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.

16.    **Amendments, Modifications, and Waivers**.  The terms and provisions of this Agreement may not be modified or amended, nor may any of the provisions hereof be waived, temporarily or permanently, except pursuant to a written instrument executed by the party against whom enforcement of such modification, amendment or waiver is sought.

17.    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Florida and of the United States of America and the rules and regulations promulgated under the authority thereof.

18.    **No Partnership or Joint Venture**.  Nothing contained in this Agreement, and no act or undertaking by URBANISM or LEHMAN pursuant hereto or in connection herewith, is intended or shall be construed to create a partnership or joint venture of any kind or for any purpose between URBANISM and LEHMAN.

19.    **Entire Agreement**.  This Agreement constitutes the entire agreement of the parties and cannot be modified except by written agreement signed by all parties.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement to be effective for all purposes as of the Effective Date.

WITNESSES:                                    URBANISM-CORAL WAY, LLC

Sign: _____              BY: _____
Print: _JEANNIE GALLO_

Sign: _____              ITS: _Managing Member_
Print: _DIANA HORTON_
As to Urbanism-Coral Way, LLC


WITNESSES:                                    LEHMAN BROTHERS HOLDINGS INC.

Sign: _Deanna Emilio_                   BY: _____
Print: _DEANNA EMILIO_

Sign: _Ronnie Baptiste_                 ITS: _____Authorized Signatory_____
Print: _RONNIE BAPTISTE_
As to Lehman Brothers Holdings Inc.


Settlement Agreement-2673422v7

5.

As to the escrow provision in paragraph 2 only:

COFFEY BURLINGTON

By: _____
      David Freedman

[CERTIFICATES OF ACKNOWLEDGMENT ON NEXT PAGE]

STATE OF _Florida_ )
                                                )
COUNTY OF _Miami Dade_ )

THE FOREGOING INSTRUMENT was acknowledged before me this 12ᵗʰ day of August, 2008, by _Brian L. Starlite_ as **Managing Member for Urbanism-Coral Way, LLC.** (He/She *[please check as applicable]* ___ is personally known to me, or ___ has presented his/her _____ driver's license as identification.

Notary Public State of Florida
Jennie Gallo
My Commission DD754816
Expires 05/18/2011

(NOTARIAL SEAL)

_Jennie Gallo_
NOTARY PUBLIC *[Signature Above]*
Print Name: __JENNIE Gallo__
Notary Public, State of __Florida__
My Commission Expires: __DD754816__


STATE OF _New York_ )
                                                )
COUNTY OF _New York_ )

THE FOREGOING INSTRUMENT was acknowledged before me this 19 day of August, 2008 by ___CHRISTOPHER MCKENNA___ as **agent for Lehman Brothers Holdings Inc.** He/She *[please check as applicable]* ___ is personally known to me, or _____ has presented his/her _____ driver's license as identification.

_Angela Marigliano_
NOTARY PUBLIC *[Signature Above]*
Print Name:_____
Notary Public, State of _____
My Commission Expires: _____

ANGELA MARIGLIANO
NOTARY PUBLIC, State of New York
No. 01MA6133217
Qualified in Richmond County
Commission Expires September 12, 2009

(NOTARIAL SEAL)

**<u>Exhibit B</u>**

**(Sharing Agreement)**

## SHARING AGREEMENT

THIS SHARING AGREEMENT (this "**Agreement**") is entered into this _____ day of _____, 2011 (the "**Effective Date**"), by **LEHMAN BROTHERS HOLDINGS INC**., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP) ("**Lehman**"), and **URBANISM-CORAL WAY, LLC**, a Florida limited liability company ("**Urbanism**"), with joinder by Zully Ruiz Enterprises, Inc., a Florida corporation ("**ZRE**").

Recitals:

1.       On or about February 20, 2008, Urbanism filed an action in the Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, Florida, styled *Urbanism-Coral Way, LLC v. Gables Marquis, LLC and Lehman Brothers Holdings Inc.*, Case No. 08-09071-CA-25 (the "**Urbanism Litigation**"), seeking to establish and foreclose an equitable lien (the "**Gables Equitable Lien**") against the commercial condominium units identified on Exhibit A attached hereto and by this reference incorporated herein (the "**Commercial Units**" or "**Units**").

2.       On or about April 17, 2008, Lehman filed an action in the Circuit Court for the Eleventh Judicial Circuit, Miami-Dade County, Florida, styled *Lehman Brothers Holdings Inc. v. Gables Marquis, L.L.C. et al*, Case No. 08-21804-CA-05 (the "**Foreclosure Action**") seeking, among other relief, to foreclose a mortgage against the Commercial Units.

3.       In connection with the Urbanism Litigation and the Foreclosure Action, Lehman and Urbanism entered into a Settlement Agreement dated as of August 12, 2008 (the "**Settlement Agreement**"). All capitalized terms that are used but not specifically defined herein shall have the meanings ascribed to them in the Settlement Agreement.

4.       On or about February 5, 2009, Urbanism filed in the Foreclosure Action its Motion to Impose Equitable Lien for Breach of Settlement, seeking to establish and foreclose an equitable lien (the "**Unit 2 Equitable Lien**") against Unit No. 2 of the Commercial Units.  On or about November 3, 2010, Urbanism filed in the Foreclosure Action its Motion for Leave to Revoke Consent to Foreclosure (the "**Revocation of Consent**").

5.       The Settlement Agreement provides, inter alia, that Lehman and Urbanism will enter into an agreement to share the net proceeds of certain sales of the Commercial Units.

6.       The parties wish to memorialize such agreement as hereinafter set forth.

NOW, THEREFORE, for and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and pursuant to Paragraph 7 of the Settlement Agreement, the parties agree as follows:

1.       Recitals; Definitions. The foregoing recitals are true and correct, and are incorporated herein by this reference.

2.      Definitions. As used in this Agreement, the following terms have the meanings set forth below:

(a)      Eligible Sale. A sale of a Commercial Unit that satisfies all of the following criteria:

(i)      The Unit was acquired by a Lehman Entity at a foreclosure sale of the Commercial Units conducted pursuant to the Foreclosure Action (the "Foreclosure Sale").

(ii)      The sale in question is the initial sale of the applicable Unit following its acquisition by a Lehman Entity at the Foreclosure Sale.

(iii)      The purchaser of the Unit was procured by Urbanism or ZRE.

(b)      Lehman Entity. Lehman or a subsidiary of Lehman, including, without limitation, FL 3232 Coral Way LLC ("**Coral Way**"), a non-debtor special purpose entity wholly owned indirectly by Lehman.

(c)      Net Proceeds: With respect to an Eligible Sale, the gross purchase price paid by the purchaser of the applicable Unit to the Lehman Entity that sells the Unit, less (i) all closing costs paid by a Lehman Entity in connection with the sale, and (ii) all costs and expenses paid or payable by a Lehman Entity in connection with tenant improvements or similar construction in the Unit.

3.      Condition Precedent to Listing and Sharing Provisions. Notwithstanding anything to the contrary contained herein:

(a)      neither Urbanism nor ZRE shall have any rights whatsoever under Paragraphs 4 or 5 of this Agreement until and unless (i) the Clerk of the Circuit Court for Miami-Dade County conducts a foreclosure sale at which the Commercial Units are offered for sale, and (ii) a Lehman Entity is the successful bidder at such Foreclosure Sale, and (iii) a certificate of title to the Commercial Units is issued in favor of a Lehman Entity by the Clerk of the Circuit Court; and

(b)      if any of the conditions set forth in clause (a) above are not satisfied, then except as specifically provided in Paragraph 6 hereof, Urbanism and ZRE shall have no right whatsoever to receive any payment or other compensation from Lehman or any other Lehman Entity pursuant to or in connection with (i) paragraph 7 of the Settlement Agreement, (ii) this Agreement, or (iii) any sale or other disposition of the Commercial Units.

Lehman, in the exercise of its sole and absolute discretion, may decide (A) whether to proceed with the scheduling of a foreclosure sale of the Commercial Units, (B) when to make any such decision, (C) whether to bid (or cause another Lehman Entity to bid) at any such Foreclosure Sale, and (D) the amount or amounts of any such bid(s) made by a Lehman Entity.

4.      <u>Listing Arrangement</u>. Subject to the provisions of Paragraph 3 above, Urbanism and ZRE may act as non-exclusive listing agents for the Commercial Units, with the authority to:

(a)      market Commercial Units;

(b)      solicit offers to purchase Commercial Units; and

(c)      deliver such purchase offers to Lehman for its consideration;

<u>provided</u>, <u>however</u>, that (i) every prospective purchaser of a Commercial Unit procured by Urbanism or ZRE (each, a "**Procured Purchaser**"), and every offer to purchase a Commercial Unit made by a Procured Purchaser, shall be subject to Lehman's review and approval, and (ii) Lehman may elect to approve or reject any such offer in the exercise of its sole and absolute discretion.

5.      <u>Net Proceeds Sharing Agreement</u>. Subject to the provisions of Paragraph 3 above, upon the closing of each Eligible Sale, Lehman shall pay or cause to be paid to Urbanism an amount equal to fifteen percent (15%) of the Net Proceeds of such sale. Each such payment shall constitute full and complete payment and satisfaction of any and all claims by Urbanism or ZRE in relation to the sale of the applicable Commercial Unit, whether arising hereunder, under the Settlement Agreement or otherwise.

6.      <u>Lehman's Failure to Acquire Property</u>. If any person or entity other than a Lehman Entity is the successful bidder at the Foreclosure Sale, then:

(a)      Lehman's obligations under this Agreement shall not be binding on such purchaser but shall instead terminate automatically upon the issuance of a certificate of sale to the purchaser (or to any assignee of the purchaser's rights as the high bidder at the Foreclosure Sale) by the Clerk of the Circuit Court; and

(b)      within three (3) business days after the Clerk distributes the proceeds of the Foreclosure Sale in accordance with the final judgment in the Foreclosure Action, Lehman shall pay or cause to be paid to Urbanism the sum of $45,000.00 in full and final settlement of any and all rights of Urbanism or ZRE to receive any payment or other compensation, from Lehman or any other Lehman Entity, pursuant to or in connection with (i) paragraph 7 of the Settlement Agreement, (ii) this Agreement, or (iii) any sale or other disposition of the Commercial Units.

7.      <u>Termination</u>. Upon the occurrence of any material default by Urbanism hereunder or under the Settlement Agreement, this Agreement may be terminated by Lehman upon written notice to Urbanism.

8.      <u>Miscellaneous</u>.

(a)      This Agreement is not assignable, in whole or in part, by Urbanism without the prior written consent of Lehman.    Urbanism consents to Lehman's assignment of all of Lehman's rights and interests in and obligations under this

Agreement to Coral Way.  Upon Lehman's assignment of such rights and interests in and obligations under this Agreement, and consistent with Paragraph 8(d) hereof, Lehman shall be relieved of all obligations under and liabilities resulting from this Agreement.

(b)     In its marketing of the Commercial Units, Urbanism shall comply with all applicable laws and governmental regulations of the jurisdictions in which the Commercial Units are located, including (but not limited to) the provisions of any federal, state or local law or ordinance prohibiting discrimination on the grounds of race, color, sex, sexual orientation, creed or national origin.

(c)     Urbanism covenants and agrees to hold harmless and indemnify Lehman from and against any and all loss, cost, expense, liability or claim arising out of any act, omission or misconduct by Urbanism or ZRE, or their respective employees, invitees, licensees, agents or contractors, in connection with the Commercial Units. If a Lehman Entity other than Lehman acquires title to the Commercial Units, then the foregoing indemnification shall inure to the benefit of, and shall be enforceable by, such other Lehman Entity.

(d)     Urbanism, for each of its members, officers, employees, directors, agents, attorneys, successors and assigns, hereby releases, acquits and forever discharges Lehman and its predecessors, successors, assigns, officers, managers, directors, shareholders, employees, agents, attorneys, representatives, parent corporations, subsidiaries, and affiliates (collectively, the "**Released Parties**"), from any and all claims, counterclaims, demands, damages, debts, agreements, covenants, suits, contracts, obligations, accounts, offsets, rights, actions and causes of action, including, without limitation, for contribution and indemnity, and liabilities of any kind or character whatsoever, whether arising at law or in equity (including without limitation, claims based on fraud, duress, mistake, tortious interference, usury, or control), whether presently possessed or possessed in the future, whether known or unknown, whether liability be direct or indirect, liquidated or unliquidated, whether presently accrued or to accrue hereafter, whether absolute or contingent, foreseen or unforeseen, suspected or unsuspected, and whether or not heretofore asserted, for or because of or as a result of any act, omission, communication, transaction, occurrence, representation, promise, damage, breach of contract, fraud, violation of any statute or law, commission of any tort, or any other matter whatsoever or thing done, omitted or suffered to be done by any of the Released Parties, which has occurred in whole or in part, or was initiated at any time from the beginning of the world up to and immediately preceding the moment of the execution of this Agreement, including without limiting the generality of the foregoing language, all of the foregoing which Urbanism ever had, now has, or might hereinafter have against any of the Released Parties, for or by reason of any matter, cause, claim, or thing whatsoever relating in whole or in part, directly or indirectly, to: (a) the Urbanism Litigation; (b) the Foreclosure Action; (c) the Commercial Units or the Project; (d) the Gables Equitable Lien (e) the Unit 2 Equitable Lien; (f) the Revocation of Consent; (g) all other dealings between Urbanism and Lehman and any one or more of the Released Parties; and (h) any and all other matters whatsoever.  The provisions of this paragraph

shall survive the expiration or termination of this Agreement, but shall not serve to release any obligations of Coral Way under this Agreement.

(e)      In the event that any party shall institute any action or proceedings to construe, interpret, enforce or declare the rights of the parties hereto, the prevailing party in such action or proceeding shall be entitled to recover all costs and expenses incurred, including reasonable attorneys and legal assistants' fees and court costs, including those incurred before suit or trial of the issues, at trial, on appeal or in federal bankruptcy or reorganization proceedings.

(f)      Any notice, request, demand, consent, approval or other communication provided or permitted hereunder shall be in writing and be sent by United States registered or certified mail return receipt requested, postage prepaid, or by prepaid guaranteed overnight courier, and in any case addressed to the party for which it is intended at the addresses of the parties as set forth below:

| | |
|---|---|
| If to Lehman: | FL 3232 Coral Way LLC |
| | c/o LAMCO LLC |
| | 1271 Avenue of the Americas, 38th Floor |
| | New York, NY 10020 |
| | Attention: Craig Burns |
| | Joelle Halperin, Esq. |
| | |
| With a copy to: | Trenam Kemker |
| | 101 E. Kennedy Boulevard, Suite 2700 |
| | Tampa, Florida 33602 |
| | Attention: Roberta A. Colton, Esquire |
| | |
| If to Urbanism: | c/o Urbanism Group |
| | 1400 NE Miami Gardens Drive, #210-A |
| | Miami, Florida 33179 |
| | Attention: Brian L. Strelitz |
| | |
| With a copy to: | Coffey Burlington |
| | 2699 South Bayshore Drive, Penthouse |
| | Miami, Florida 33133 |
| | Attention: David Freedman, Esquire |

(g)      This Agreement shall be governed by and construed in accordance with the laws of the State of Florida.

(h)      This Agreement shall not be construed more strongly against any party regardless of who is responsible for its preparation. The parties to this Agreement acknowledge that the Agreement is the product of an arms-length negotiation. All parties have contributed to the terms of this Agreement, and all parties are equally responsible for its preparation.

(i)      This Agreement may be executed in any number of identical counterparts. Each such counterpart, when executed and delivered, shall be an original, but all such counterparts together shall constitute one and the same agreement. Signature and acknowledgment pages may be detached from the counterparts and attached to a single copy of this Agreement to physically form one document. Executed signature pages may be delivered by facsimile or email and, when so delivered, shall have the same force and effect as an original.

(j)      Headings are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.

(k)      This Agreement and Paragraph 7 of the Settlement Agreement contain the entire agreement between Lehman and Urbanism and/or ZRE with respect to the subject matter hereof, and cannot be modified except by written agreement signed by the party sought to be charged therewith. In the event of any conflict between the terms of this Agreement and the terms of the Settlement Agreement, the terms of this Agreement shall control and govern in all respects; provided, however, that to the greatest extent possible, the provisions of this Agreement shall be deemed supplemental to and not in derogation of the provisions of the Settlement Agreement.

**[REMAINDER OF PAGE INTENTIONALLY BLANK —
SIGNATURE AND ACKNOWLEDGMENT PAGES FOLLOW]**

IN WITNESS WHEROF, the parties hereto have executed this Agreement to be effective for all purposes as of the Effective Date.

WITNESSES:                                    **LEHMAN BROTHERS HOLDINGS INC.,**
as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP)

_____

Name: _____        By: _____
                                      Name _____
_____      Title: _____
Name: _____


STATE OF _____
COUNTRY OF _____


The foregoing instrument was acknowledged before me this _____ day of _____, 2011, by _____, as _____ of LEHMAN BROTHERS HOLDINGS INC., as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555 (JMP), on behalf of the corporation. He/She is personally known to me, or_____produced a_____as identification.


                                      _____
                                      Notary Public
                                      State of _____
                                      Name: _____
                                      My commission expires: _____

WITNESSES:

**URBANISM-CORAL WAY, LLC,**
a Florida limited liability company


_____
Name: _____

By: _____
Name _____
Title: _____

_____
Name: _____


STATE OF FLORIDA _____

COUNTRY OF _____


    The foregoing instrument was acknowledged before me this ____day of _____, 2011, by _____, as _____ of URBANISM-CORAL WAY, LLC, a Florida limited liability company, on behalf of the company. He/She      is personally known to me, or____produced a_____as identification.


_____
Notary Public-State of Florida
Name: _____
My commission expires: _____

US_ACTIVE:\43713905\05\58399.0008

## <u>JOINDER OF ZRE</u>

**ZULLY RUIZ ENTERPRISES, INC**., a Florida corporation ("**ZRE**"), hereby joins in the execution of this Sharing Agreement for the purpose of evidencing its consent to and agreement to be bound by the terms and conditions hereof, including without limitation paragraphs 3 and 6 of this Agreement..

WITNESSES:                                    **ZULLY RUIZ ENTERPRISES, INC.,**
                                              a Florida corporation

_____

Name: _____              By: _____
                                           Name _____
_____            Title: _____

Name: _____


STATE OF FLORIDA
COUNTRY OF _____


          The foregoing instrument was acknowledged before me this _____day of _____, 2011, by _____, as _____ of ZULLY RUIZ ENTERPRISES, INC., a Florida corporation, on behalf of the corporation. He/She    is personally known to me, or____ produced a_____as identification.


                              _____
                              Notary Public – State of Florida
                              Name: _____
                              My commission expires: _____

**<u>Exhibit A</u>**

## Legal Description

     Units R-1, R-2, R-3, R-4 and R-5 of Gables Marquis, a Condominium, according to the Declaration of Condominium thereof, recorded April 23, 2007 in O.R. Book 25555, at pages 2532-2696, of the Public Records of Miami-Dade County, Florida; also bearing Clerk's File Number 2007 R0404371.



**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                              :        **Chapter 11 Case No.**
                                                   :
**LEHMAN BROTHERS HOLDINGS INC.,** *et al.,*  :   **08-13555 (JMP)**
                                                   :
                          **Debtors.**             :        **(Jointly Administered)**
-------------------------------------------------------------------x

ORDER GRANTING MOTION OF LEHMAN BROTHERS
HOLDINGS INC., PURSUANT TO SECTIONS 363 AND 365 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 6004, 6006 AND 9014, FOR
AUTHORIZATION TO ASSUME AND ASSIGN SETTLEMENT AGREEMENT AND
TO ENTER INTO SHARING AGREEMENT WITH URBANISM-CORAL WAY, LLC

Upon the motion, dated May 25, 2011 (the "Motion")[9] of Lehman Brothers

Holdings Inc. ("LBHI," and together with its affiliated debtors in the above-referenced chapter

11 cases, as debtors and debtors-in-possession, the "Debtors"), pursuant to sections 363 and 365

of title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004, 6006 and 9014 of

the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for authorization to

assume and assign a Settlement Agreement and to enter into a Sharing Agreement with

Urbanism-Coral Way LLC ("Urbanism"), all as more fully described in the Motion; and upon

the Declaration of Craig Burns filed in support of the Motion; and the Court having jurisdiction

to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and

1334 and the Standing Order M-61 Referring to Bankruptcy Judges for the Southern District of

New York Any and All Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.);

and consideration of the Motion and the relief requested therein being a core proceeding pursuant

to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408

and 1409; and due and proper notice of the Motion having been provided in accordance with the

---

[9] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion.

procedures set forth in the second amended order entered on June 17, 2010 governing case

management and administrative procedures for these cases [Docket No. 9635]; and a hearing

having been held to consider the relief requested in the Motion; and the Court having found and

determined that the relief sought in the Motion is in the best interests of LBHI, its estates and its

creditors, and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that pursuant to sections 365(a), (b) and (f) of the Bankruptcy Code,

LBHI is hereby authorized to assume the Settlement Agreement and, immediately upon

assumption, assign its interests therein to Coral Way; and it is further

ORDERED that upon assumption of the Settlement Agreement, LBHI shall

promptly cure the existing nonmonetary default under the Settlement Agreement by entering into

the Sharing Agreement; and it is further

ORDERED that, pursuant to section 363 of the Bankruptcy Code, LBHI is

authorized and empowered to enter into the Sharing Agreement and is authorized to execute,

deliver, implement, and perform any and all obligations, instruments, documents and papers, and

to take all corporate and other actions that may be necessary or appropriate to consummate all of

the transactions contemplated by the Proposed Transactions without the necessity or requirement

of further court proceedings or approval; and it is further

ORDERED that upon the cure of the default and the assignment of the Settlement

Agreement, Urbanism is forever barred from asserting against LBHI, or the property of LBHI,

any default under or administrative expense claim based on the Settlement Agreement, whether

arising before or after the assignment; and it is further

ORDERED that all parties to the Settlement Agreement shall forever be barred from asserting any objections with regard to the assumption and assignment thereof; and it is further

ORDERED that upon assumption of the Settlement Agreement and as soon as practicable after LBHI's execution of the Sharing Agreement, Urbanism shall withdraw any motion, action or other assertion based upon the Urbanism Equitable Liens or any other alleged breach or default by LBHI, including Urbanism's motion for leave to revoke consent to the Foreclosure Action, without regard to any alleged existing defaults; and it is further

ORDERED that, upon the assumption and assignment of the Settlement Agreement, LBHI shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, of all further obligations under and any liability resulting from any subsequent breach of the Settlement Agreement; and it is further

ORDERED that, upon the execution of and assignment of the Sharing Agreement, LBHI shall be relieved of all further obligations under and any liability resulting from any subsequent breach of the Sharing Agreement; and it is further

ORDERED that LBHI and/or Coral Way, as applicable, is hereby authorized to resolve, if necessary, the Alleged Encroachment by either paying Urbanism or eliminating the Alleged Encroachment, provided, however, that any decision by LBHI or Coral Way to make a payment to resolve the Alleged Encroachment shall be subject to approval from the Creditors' Committee, upon reasonable notice, if such payment has not been authorized by any other order of the Court; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good and sufficient notice of such Motion; and it is further

ORDERED that notwithstanding any applicability of Bankruptcy Rules 6004(h) and 6006(d), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation and/or interpretation of this Order and/or the terms of any assumption and assignment consummated in the manner set forth herein.

Dated: June ___, 2011
         New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE