# Exhibit A
**(The Settlement Agreement)**

US_ACTIVE:\43708004\11\58399.0003

## SETTLEMENT AGREEMENT

This Settlement Agreement (this "Agreement") is made as of this 25th day of May, 2011 (the "Effective Date"), by and among Lehman Brothers Holdings Inc., debtor and debtor in possession, in its capacity as lender and lead arranger and administrative agent for itself and certain co-lenders as mortgage lender ("LBHI"), Lehman Brothers Holdings Inc., debtor and debtor in possession ("Senior Mezzanine Lender"), 1107 Broadway Mezz Holdings LLC, a Delaware limited liability company ("Junior Mezzanine Lender"; together with LBHI and Senior Mezzanine Lender, collectively, the "Lender"), 1107 Broadway LLC, a Delaware limited liability company ("Mortgage Borrower"), 1107 Broadway Mezz I LLC, a Delaware limited liability company ("Senior Mezzanine Borrower") and 1107 Broadway Mezz II LLC, a Delaware limited liability company ("Junior Mezzanine Borrower"; together with Mortgage Borrower and Senior Mezzanine Borrower, collectively, the "Borrower") and Yitzchak Tessler, an individual ("Guarantor").

## RECITALS

WHEREAS, on or about October 16, 2007, Mortgage Lender made a certain loan in the original principal amount of up to $246,000,000.00 ("Mortgage Loan") to Mortgage Borrower as evidenced by that certain Acquisition Loan Promissory Note A, Acquisition Loan Promissory Note B, Building Loan Promissory Note A, Building Loan Promissory Note B, Project Loan Promissory Note A and Project Loan Promissory Note B, each dated as of October 16, 2007, and executed by Mortgage Borrower for the benefit of Mortgage Lender (collectively, the "Mortgage Note");

WHEREAS, the Mortgage Loan is further evidenced by that certain Master Credit Agreement by and among Mortgage Borrower and Mortgage Lender (the "Mortgage Loan Agreement") and secured, inter alia, by that certain Consolidated Amended and Restated Acquisition Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing Statement executed by Mortgage Borrower in favor of Mortgage Lender, that certain Consolidated Amended and Restated Building Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing Statement executed by Mortgage Borrower in favor of Mortgage Lender, and that certain Consolidated Amended and Restated Project Loan Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing Statement executed by Mortgage Borrower in favor of Mortgage Lender, all dated October 16, 2007 (collectively, the "Mortgage"), creating a first priority security interest in, inter alia, the real property described in **Exhibit A** thereto (the "Property");

WHEREAS, in connection with the Mortgage Loan, (x) Guarantor executed for the benefit of Mortgage Lender the following: (i) a Guaranty of Recourse Obligations (the "Mortgage Loan Limited Recourse Guaranty"), (ii) a Guaranty of Completion (the "Mortgage Loan Completion Guaranty"), and (iii) a Carry Guaranty (the "Mortgage Loan Carry Guaranty"), and (y) Mortgage Borrower and Guarantor executed for the benefit of Mortgage Lender an Environmental and Hazardous Substance Indemnification

16355541.16.BUSINESS

Agreement (the "<u>Mortgage Loan Indemnification Agreement</u>"; together with the Mortgage Loan Limited Recourse Guaranty, the Mortgage Loan Completion Guaranty and the Mortgage Loan Carry Guaranty, collectively, the "<u>Mortgage Loan Guaranties</u>") (the Mortgage Note, the Mortgage, the Mortgage Loan Guaranties, and all other documents executed and delivered in connection with the Mortgage Loan shall be collectively referred to herein as the "<u>Mortgage Loan Documents</u>");

WHEREAS, on or about October 16, 2007, Senior Mezzanine Lender made a certain loan in the original principal amount of up to $59,200,000 ("<u>Senior Mezzanine Loan</u>") to Senior Mezzanine Borrower as evidenced by that certain Secured Senior Loan Promissory Note, dated as of October 16, 2007, and executed by Senior Mezzanine Borrower for the benefit of Senior Mezzanine Lender (the "<u>Senior Mezzanine Note</u>");

WHEREAS, the Senior Mezzanine Loan is further evidenced by that certain Senior Mezzanine Construction Loan Agreement, dated as of October 16, 2007 (the "<u>Senior Mezzanine Loan Agreement</u>") and secured, inter alia, by that certain Pledge and Security Agreement, dated as of October 16, 2007, executed by Senior Mezzanine Borrower in favor of Senior Mezzanine Lender (the "<u>Senior Mezzanine Pledge</u>"), creating a first priority security interest in, inter alia, the equity interests in Mortgage Borrower (the "<u>Senior Mezzanine Pledged Collateral</u>");

WHEREAS, in connection with the Senior Mezzanine Loan, (x) Guarantor executed for the benefit of Senior Mezzanine Lender the following: (i) a Guaranty of Recourse Obligations (the "<u>Senior Mezzanine Loan Limited Recourse Guaranty</u>"), (ii) a Guaranty of Completion (the "<u>Senior Mezzanine Loan Completion Guaranty</u>"), and (iii) a Carry Guaranty (the "<u>Senior Mezzanine Loan Carry Guaranty</u>"), and (y) Senior Mezzanine Borrower and Guarantor executed for the benefit of Senior Mezzanine Lender an Environmental and Hazardous Substance Indemnification Agreement (the "<u>Senior Mezzanine Loan Indemnification Agreement</u>"; together with the Senior Mezzanine Loan Limited Recourse Guaranty, the Senior Mezzanine Loan Completion Guaranty and the Senior Mezzanine Loan Carry Guaranty, collectively, the "<u>Senior Mezzanine Loan Guaranties</u>") (the Senior Mezzanine Note, the Senior Mezzanine Pledge, the Senior Mezzanine Loan Guaranties and all other documents executed and delivered in connection with the Senior Mezzanine Loan shall be collectively referred to herein as the "<u>Senior Mezzanine Loan Documents</u>");

WHEREAS, on or about October 16, 2007, Junior Mezzanine Lender made a certain loan in the original principal amount of up to $38,200,000 ("<u>Junior Mezzanine Loan</u>"; together with the Mortgage Loan and the Senior Mezzanine Loan, collectively, the "<u>Loans</u>") to Junior Mezzanine Borrower as evidenced by that certain Secured Junior Loan Promissory Note, dated as of October 16, 2007 and executed by Junior Mezzanine Borrower for the benefit of Junior Mezzanine Lender (the "<u>Junior Mezzanine Note</u>"; together with the Mortgage Note and the Senior Mezzanine Note, collectively, the "<u>Note</u>");

WHEREAS, the Junior Mezzanine Loan is further evidenced by that certain Junior Mezzanine Construction Loan Agreement, dated as of October 16, 2007 (the "Junior Mezzanine Loan Agreement") and secured, inter alia, by that certain Pledge and Security Agreement, dated as of October 16, 2007, executed by Junior Mezzanine Borrower in favor of Junior Mezzanine Lender (the "Junior Mezzanine Pledge"), creating a first priority security interest in, inter alia, the equity interests in Senior Mezzanine Borrower (the "Junior Mezzanine Pledged Collateral");

WHEREAS, in connection with the Junior Mezzanine Loan, (x) Guarantor executed for the benefit of Junior Mezzanine Lender the following: (i) a Guaranty of Recourse Obligations (the "Junior Mezzanine Loan Limited Recourse Guaranty"), (ii) a Guaranty of Completion (the "Junior Mezzanine Loan Completion Guaranty"), and (iii) a Carry Guaranty (the "Junior Mezzanine Loan Carry Guaranty"), and (y) Junior Mezzanine Borrower and Guarantor executed for the benefit of Junior Mezzanine Lender an Environmental and Hazardous Substance Indemnification Agreement (the "Junior Mezzanine Loan Indemnification Agreement"; together with the Junior Mezzanine Loan Limited Recourse Guaranty, the Junior Mezzanine Loan Completion Guaranty and the Junior Mezzanine Loan Carry Guaranty, collectively, the "Junior Mezzanine Loan Guaranties"; together with the Mortgage Loan Guaranties and the Senior Mezzanine Loan Guaranties, collectively, the "Guaranties") (the Junior Mezzanine Note, the Junior Mezzanine Pledge, the Junior Mezzanine Loan Guaranties, and all other documents executed in connection with the Junior Mezzanine Loan shall be collectively referred to herein as the "Junior Mezzanine Loan Documents"; the Junior Mezzanine Loan Documents together with the Mortgage Loan Documents and the Senior Mezzanine Loan Documents shall be collectively referred to herein as the "Loan Documents");

WHEREAS, the maturity date of the Mortgage Loan was October 15, 2008, and, as of the Effective Date, the Mortgage Loan remains unpaid (the "Mortgage Loan Maturity Default"), the maturity date of the Senior Mezzanine Loan was October 15, 2008, and, as of the Effective Date, the Senior Mezzanine Loan remains unpaid (the "Senior Mezzanine Loan Maturity Default"), and the maturity date of the Junior Mezzanine Loan was October 15, 2008, and, as of the Effective Date, the Junior Mezzanine Loan remains unpaid (the "Junior Mezzanine Loan Maturity Default"; together with the Mortgage Loan Maturity Default and the Senior Mezzanine Loan Maturity Default, collectively, the "Maturity Default");

WHEREAS, Mortgage Lender has commenced a mortgage foreclosure action (the "Mortgage Foreclosure") in the New York State Supreme Court, New York County, Index No. 601084/2010 against the Property, due to the Mortgage Loan Maturity Default and certain other alleged defaults of Mortgage Borrower and Guarantor;

WHEREAS, Senior Mezzanine Lender has commenced a mezzanine loan foreclosure action for a public sale of the Senior Mezzanine Pledged Collateral (the "Senior Mezzanine Foreclosure"), due to the Senior Mezzanine Loan Maturity Default;

WHEREAS, Junior Mezzanine Lender has commenced a mezzanine loan foreclosure action for a public sale of the Junior Mezzanine Pledged Collateral (the "Junior Mezzanine Foreclosure", due to the Junior Mezzanine Loan Maturity Default;

WHEREAS, commencing on September 15, 2008 and periodically thereafter, LBHI and certain of its affiliates filed those certain chapter 11 bankruptcy proceedings, Chapter 11 Case No. 08-13555 (JMP) (the "Bankruptcy Proceedings") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), and LBHI and certain of its affiliates continue to operate their respective businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the United States Bankruptcy Code;

WHEREAS, Borrower, Guarantor and certain of their affiliates have filed those certain proofs of claim Nos. 30017, 30018, 30019 and 30020, in the Bankruptcy Proceedings (the "Proofs of Claim");

WHEREAS, Lender, Borrower and Guarantor have been in negotiations regarding the Loans, the Property and certain related matters including the Proofs of Claim, and have agreed to resolve same in accordance with the terms hereof; and

WHEREAS, Lender, Borrower and Guarantor wish to settle all claims, obligations and causes of action of any kind whatsoever arising out of or relating to the Loans, the Proofs of Claim, the Loan Documents, and/or the Property, and wish to resolve any and all defaults under the Note and the other Loan Documents by, among other things, providing for a payment by Borrower to Lender of proceeds in connection with the sale of the Property or a discounted payoff of the Loans in accordance with the terms of this Agreement, and the complete cancellation and extinguishment of: (x) Borrower's obligations and liabilities under the Note and the other Loan Documents and (y) Borrower's and Guarantor's obligations and liabilities under the Guaranties, subject to the terms hereof.

NOW THEREFORE, in consideration of the mutual covenants and agreements contained herein, Ten and No/100 Dollars ($10.00), and other good and valuable consideration, the receipt and sufficiency of which is acknowledged, Lender, Borrower and Guarantor hereby agree as follows:

I.   [intentionally deleted]

II.  **EXECUTION DELIVERIES AND ACTIONS**

2.1.  Borrower Deliveries into Escrow. Simultaneously with the execution of this Agreement, Mortgage Borrower, Senior Mezzanine Borrower, Junior Mezzanine Borrower and Guarantor, as applicable, shall deliver into escrow with Commonwealth Land Title Insurance Company (the "Settlement Escrow Agent") the following (the "Borrower Escrow Deliveries"):

(a) original, executed pleadings evidencing the consent of Mortgage Borrower and Guarantor, and, if necessary, Senior Mezzanine Borrower and Junior Mezzanine Borrower, to the entry of a judgment of foreclosure of the Property and a waiver of defenses, claims and counterclaims of any of Mortgage Borrower, Guarantor or any of their respective affiliates to the entry of a judgment of foreclosure of the Property in the forms attached hereto as **Exhibit A-1** (the "Stipulated Foreclosure Pleadings");

(b) original, executed consent to a strict foreclosure of the Senior Mezzanine Loan Collateral and a waiver of defenses, claims and counterclaims of any of Mortgage Borrower, Senior Mezzanine Borrower, Guarantor or any of their respective affiliates with respect to such consent to a strict foreclosure of the collateral for the Senior Mezzanine Loan in the forms attached hereto as **Exhibit A-2** (the "Senior Mezzanine Foreclosure Consent";

(c) original, executed consent to a strict foreclosure of the Junior Mezzanine Loan Collateral and a waiver of defenses, claims and counterclaims of any of Mortgage Borrower, Senior Mezzanine Borrower, Junior Mezzanine Borrower, Guarantor or any of their respective affiliates with respect to such consent to a strict foreclosure of the collateral for the Junior Mezzanine Loan in the forms attached hereto as **Exhibit A-3** (the "Junior Mezzanine Foreclosure Consent";

(d) original, executed withdrawals of the Proofs of Claim for filing in the Bankruptcy Proceedings in the forms attached hereto as **Exhibit B** (the "Proofs of Claim Withdrawals");

(e) original, executed releases (i) from the Mortgage Borrower and Guarantor of LBHI, Lehman Brothers Commercial Bank ("LBCB") (as holder of an interest in the Mortgage Loan) and their affiliates (each release to be in the form of a separate instrument), (ii) from the Senior Mezzanine Borrower and Guarantor of the Senior Mezzanine Lender and its affiliates, and (iii) from the Junior Mezzanine Borrower and Guarantor of the Junior Mezzanine Lender and its affiliates (LBHI, LCBC, Senior Mezzanine Lender, Junior Mezzanine Lender, and each of their respective affiliates, the "Lender Parties"), each in the form attached hereto as **Exhibit C** (collectively, the "Release of Lender");

(f) original, executed deed to the Property (collectively, the "Deed"), original, executed transfer tax forms for the City of New York and the State of New York (the "Transfer Tax Forms"), original, executed bill of sale, original, executed assignment of leases and contracts at the Property, original, executed Foreign Investment in Real Property Tax Act Affidavit, and original, executed settlement statement (the "Conveyance Documents"), which, together with the Deed and the Transfer Tax Forms, shall be in the forms attached hereto as collective **Exhibit D**;

(g) certificates from all of the members of 1107 Broadway SPE LLC, in the form attached hereto as **Exhibit E**;

(h) [intentionally deleted];

16355541.16.BUSINESS

5

(i)  an assignment of the ground sublessor's interest in and to that certain ground sublease, dated as of December 1, 1997, by and between Mortgage Borrower as successor-in-interest to 200 Fifth Avenue Associates, as ground sublessor, and 724 Development, LLC, as successor-in-interest to GDM Construction Services Inc., as ground sublessee (as amended, the "Sublease"), to Mortgage Lender in the form attached hereto as **Exhibit F-1** and notice and rent direction to such ground sublessee advising that the Sublease has been conveyed in the form attached hereto as **Exhibit F-2** (such assignment and notice and rent direction, the "Sublease Documents"; together with the Prime Lease Documents, the "Ground Lease Documents"); and

(j)  an assignment of the landlord's interest in and to that certain lease, dated as of September 21, 1994, by and between Mortgage Borrower as successor-in-interest to 200 Fifth Avenue Associates L.L.C., as landlord, and Citibank, N.A. as successor-in-interest by merger to European Bank, as tenant (as amended, the "Citibank Lease"), to Mortgage Lender in the form attached hereto as **Exhibit G-1**, and a notice and rent direction to Citibank, N.A. advising that the Citibank Lease has been conveyed in the form attached hereto as **Exhibit G-2** (such assignment and notice and rent direction, the "Citibank Documents") (the Stipulated Foreclosure Pleadings, the Senior Mezzanine Foreclosure Consent, the Junior Mezzanine Foreclosure Consent, Proofs of Claim Withdrawals, Release of Lender, Deed, Transfer Tax Forms, Conveyance Documents, the Certificates, Ground Lease Documents, and Citibank Documents, collectively, the "Borrower Escrowed Documents").

2.2.  Lender Deliveries into Escrow.  Simultaneously with the execution of this Agreement, Lender shall deliver into escrow with Settlement Escrow Agent original, executed releases of the Mortgage Borrower, Senior Mezzanine Borrower, Junior Mezzanine Borrower, Guarantor and their affiliates (collectively, the "Borrower Parties") and covenant not to sue Borrower or Guarantor with respect to the Loans in the form attached hereto as **Exhibit H** (the "Release of Borrower and Guarantor").  Borrower and Guarantor agree that the Settlement Escrow Agent shall hold the Release of Borrower and Guarantor in escrow in accordance with Section 4.7.

2.3.  Settlement Escrow Instructions; Acknowledgement Regarding Released Documents.  Each of the deliveries made to Settlement Escrow Agent pursuant to this Article II shall be held by Settlement Escrow Agent pursuant to the escrow instructions by and among Lender, Borrower, Guarantor and Settlement Escrow Agent attached hereto as **Exhibit I** (the "Settlement Escrow Instructions").  Borrower and Guarantor acknowledge and agree that in the event the Borrower Escrowed Documents are released to Lender pursuant to the terms and conditions of this Agreement, Settlement Agent has the authority to deliver the Borrower Escrowed Documents to Lender and Lender has the authority (and may delegate such authority to the Settlement Escrow Agent) to assemble, date, file and/or record any Borrower Escrowed Document as Lender may direct.  Lender acknowledges and agrees that in the event the Release of Borrower and Guarantor is released to Borrower and Guarantor pursuant to the terms and conditions of this Agreement, Settlement Escrow Agent has the authority to deliver the Release of

16355541.16.BUSINESS

6

Borrower and Guarantor to Borrower and Guarantor, and Borrower and Guarantor have the authority to assemble and date the Release of Borrower and Guarantor.

2.4. <u>Adjournment of Senior Mezzanine Foreclosure and Junior Mezzanine Foreclosure</u>. Simultaneously with the execution of this Agreement, Senior Mezzanine Lender and Junior Mezzanine Lender shall each deliver to Borrower a notice of adjournment with respect to the Senior Mezzanine Foreclosure and the Junior Mezzanine Foreclosure (collectively, the "<u>Mezzanine Foreclosures</u>"), postponing the respective public sales of the Senior Mezzanine Pledged Collateral and the Junior Mezzanine Pledged Collateral.

2.5. <u>Retention of Eastdil</u>. Within three (3) Business Days of the Effective Date, Mortgage Borrower shall engage Eastdil Secured, L.L.C. ("<u>Eastdil</u>") to market the Property and to conduct an auction sale (the "<u>Auction</u>") pursuant to Section 4.2(b) below and in accordance with the terms and conditions set forth on **Schedule 1** attached hereto (the "<u>Auction Terms</u>").

### III. COURT APPROVAL

3.1. <u>Lender Obligation to Seek Approval</u>. As soon as reasonably practicable following (i) the execution of this Agreement and (ii) receipt by the Settlement Escrow Agent of the Borrower Escrow Deliveries, Lender shall file a motion with the Bankruptcy Court to approve the transactions contemplated by this Agreement (the "<u>Settlement</u>") (such approval, the "<u>Court Approval</u>"). As an accommodation to 1107 L&L (as hereinafter defined), and without limitation or waiver of any other provision hereunder, Lender shall endeavor to have said motion heard by the Bankruptcy Court on June 15, 2011.

3.2. <u>Cutoff Date</u>. The term "<u>Cutoff Date</u>" as used herein shall mean the date that is 90 days after the Effective Date; provided, however, that in the event on not more than one (1) occasion, the Bankruptcy Court unilaterally adjourns the hearing date for consideration of the motion seeking the approval of the Settlement to a date beyond said 90 days, then the Cutoff Date shall mean the date that is ten (10) days after such adjourned date; provided further, however, that in no event shall the Cutoff Date be a date that is more than 120 days after the Effective Date.

3.3. <u>Court Approval Obtained On or before the Cutoff Date</u>. In the event that the Court Approval is obtained on or before the Cutoff Date, the Settlement will be implemented in accordance with the provisions set forth herein.

3.4. <u>Court Approval Not Obtained On or Before the Cutoff Date</u>. In the event the Court Approval is not obtained on or before the Cutoff Date, the following actions shall occur:

(a) Lender shall promptly give written notice (the "<u>Non-approval Notice</u>") to Borrower, Guarantor and Settlement Escrow Agent that the Court Approval has not been obtained.

16355541.16.BUSINESS

(b) Subject to sub-section (e) below, within twenty-one (21) days following receipt of the Non-approval Notice, Mortgage Borrower and Guarantor shall file their respective answers, if any, in the Mortgage Foreclosure.

(c) Subject to sub-section (e) below, on the thirty-first (31st) day after its receipt of the Non-approval Notice (and if such day is not a Business Day, then on the next Business Day immediately thereafter), Settlement Escrow Agent shall return the Borrower Escrowed Documents to Borrower and return the Release of Borrower and Guarantor to Lender.

(d) Subject to sub-section (e) below, upon the return of the Borrower Escrowed Documents to Borrower and the return of the Release of Borrower and Guarantor to Lender, this Agreement shall terminate automatically and the Borrower Parties and the Lender and its affiliates shall be deemed to hold all of their rights, remedies and claims as existed immediately prior to the execution of this Agreement and Lender may immediately re-notice the Mezzanine Foreclosures.

(e) Notwithstanding any of the foregoing to the contrary, within thirty (30) days following its receipt of the Non-approval Notice, **TIME BEING OF THE ESSENCE**, Borrower and Guarantor may elect, in their sole and absolute discretion, to direct Settlement Escrow Agent to deliver to Lender the Borrower Escrowed Documents, and to reasonably cooperate with Lender with respect to (x) Mortgage Lender's filing of the Stipulated Foreclosure Pleadings, prosecution of the Mortgage Foreclosure (subject to Section 7.3 below, specifically excluding any claims against Guarantor), and appointment of a receiver if desired by Mortgage Lender, and/or, at Lender's sole option, (y) Mortgage Lender's recording of the Deed and any other recordable Conveyance Document, and/or, at Lender's sole option, (z) Senior Mezzanine Lender's and/or Junior Mezzanine Lender's completion of the Senior Mezzanine Foreclosure and/or the Junior Mezzanine Foreclosure and enforcement of the Senior Mezzanine Foreclosure Consent and/or the Junior Mezzanine Foreclosure Consent. In the case of either (x) or (y) above, upon title to and possession of the Property vesting in Mortgage Lender, or, in the case of (z) above, upon title to and possession of the Senior Mezzanine Loan Collateral and/or the Junior Mezzanine Loan Collateral vesting in Senior Mezzanine Lender and/or Junior Mezzanine Lender, as applicable, and, in the case of any of (x), (y) or (z) above, provided no Interference Event (as hereinafter defined) occurs, the Settlement Escrow Agent shall deliver the Release of Borrower and Guarantor to Mortgage Borrower and Guarantor on the 91st day after the applicable transfer of title to Lender, Senior Mezzanine Lender or Junior Mezzanine Lender, as applicable, in accordance with Section 4.7.

(f) In the event that Borrower and Guarantor reasonably cooperate with Lender pursuant to Section 3.4(e) above, neither Borrower nor Guarantor shall be obligated to incur any material third party costs or expenses, including, without limitation, transfer taxes, with respect to the actions of Borrower and/or Guarantor taken in connection with, and/or in furtherance of such cooperation; provided, however that Borrower and Guarantor shall be solely responsible for their respective attorneys fees.

3.5. <u>Forbearance</u>. Subject to the Borrower's compliance, in all material respects, with the terms of this Agreement and provided no Interference Event occurs, Lender agrees it shall forbear from exercising any of its rights or remedies under the Loan Documents, at law and/or in equity for the period commencing on the Effective Date and continuing until the later to occur of (x) subject to <u>Section 3.4(e)</u> above, the Cutoff Date, and (y) the date the Settlement is implemented in accordance with the provisions set forth herein (the "<u>Forbearance Period</u>"), which forbearance shall include the adjournment of the time period in which Mortgage Borrower and Guarantor must respond to the Mortgage Foreclosure complaint. For the avoidance of doubt, the forbearance provided hereunder shall not apply to any cross-claims or counterclaims by any other party other than Mortgage Borrower, Guarantor or Lender in the Mortgage Foreclosure, and no action taken by Borrower or Guarantor in respect of such cross-claims or counterclaims shall constitute an Interference Event (as hereinafter defined). Notwithstanding the foregoing, in the event that Mortgage Borrower has elected to direct Settlement Escrow Agent to deliver to Lender the Borrower Escrowed Documents pursuant to <u>Section 3.4(e)</u> above and no Interference Event has occurred, the Forbearance Period shall be extended to the date upon which the Release of Borrower and Guarantor is released to the Mortgage Borrower and Guarantor pursuant to <u>Section 3.4(e)</u> above.

IV.  **IMPLEMENTATION OF SETTLEMENT**

4.1. <u>L&L PSA</u>.

(a) Subject to the terms of this Agreement (including without limitation, Court Approval and the occurrence of the Auction), Lender acknowledges that it has consented to a sale of the Property (the "<u>L&L Sale</u>") by Mortgage Borrower to 1107 Broadway Owner, LLC ("<u>1107 L&L</u>") pursuant to (a) that certain Purchase and Sale Agreement by and between 1107 L&L and Mortgage Borrower, dated as of May 25, 2011, a copy of which is attached hereto as **Exhibit J-1** (the "<u>1107 PSA</u>") and (b) that certain Purchase and Sale Agreement by and between 7 West 24th Street Owner LLC ("<u>West 24 L&L</u>"; together with 1107 L&L, collectively, "<u>L&L</u>") and Mortgage Borrower, dated as of May 25, 2011, a copy of which is attached hereto as **Exhibit J-2** (the "<u>West 24th PSA</u>"); together with the 1107 PSA, collectively, the "<u>L&L PSA</u>"). Borrower and Lender acknowledge and agree that the L&L PSA contains certain terms which Lender requires as a condition to its consent to the Settlement including, but not limited to:

(i) all transfer taxes to be paid by purchaser,

(ii) a combined sales price in the amount of $161,500,000, plus, as adjustments to be paid at the closing of the sale, any Carry Costs (as hereinafter defined; such amount, the "<u>Carry Cost Amount</u>") and transfer taxes,

(iii) a deposit in the amount of $5,000,000 to be deposited into escrow pursuant to the terms of the L&L PSA simultaneously with the execution of the L&L PSA,

16355541.16.BUSINESS

9