(iv)    a second deposit in the amount of $5,000,000 to be deposited into escrow pursuant to the terms of the L&L PSA on or before June 6, 2011,

(v)    the conditions to performance under the L&L PSA shall include Court Approval, the occurrence of the Auction and such other customary conditions for the transfer of real property as set forth therein,

(vi)    transfer of the Property on an "AS-IS, WHERE IS" basis, subject to any and all mechanics' liens, and

(vii)    a closing date to occur on or before 90 days after the date of the Auction, *TIME BEING OF THE ESSENCE*.

(b)    Simultaneously with the execution of this Agreement, Lender, Mortgage Borrower, L&L and Escrow Agent (as defined in the L&L PSA) shall enter into a letter agreement which provides that (i) in the event the Deposit (as defined in the L&L PSA) is to be released from escrow to Mortgage Borrower under the terms of the L&L PSA, any portion of such Deposit released shall be disbursed 50% to Mortgage Borrower and 50% to Mortgage Lender, and (ii) no amendment to or waiver of the terms pertaining to the disbursement of the Deposit shall be valid without the prior written consent of Lender.

(c)    Mortgage Borrower shall not waive or modify any material term of the L&L PSA without the prior written consent of Lender, which consent shall not be unreasonably withheld, conditioned or delayed.

4.2.    Scheduling of Auction.

(a)    Lender shall promptly give notice to Borrower and Guarantor and Settlement Escrow Agent (the "Approval Notice") of the receipt of the Court Approval, which notice shall include, without limitation, the date that the Bankruptcy Court approves the Settlement (the "Approval Order Date").

(b)    As an accommodation to 1107 L&L and subject to receipt of the Approval Order Date occurring on or before June 17, 2011, Mortgage Borrower shall instruct Eastdil, to conduct the Auction on or before June 29, 2011 or as soon thereafter as practicable. The failure of the Auction to occur on or before such date shall not waive or modify any parties' rights or obligations hereunder, including, without limitation Section 4.2(c). The Auction shall be conducted in accordance with the Auction Terms and on such other terms and in a manner reasonably satisfactory to Lender.

(c)    In the event that 1107 L&L does not participate in the Auction Sale, withdraws its offer set forth in the L&L PSA, fails to sign the L&L PSA, defaults under the L&L PSA, and/or is excused from performing under the L&L PSA (the occurrence of any such event, a "L&L Withdrawal"), (A) Lender shall have the right, in its sole discretion, to modify the Auction Terms, including without limitation, (i) to extend the Auction date to on or before the later of (x) August 31, 2011, and (y) two

16355541.16.BUSINESS

weeks after the Approval Order Date, (ii) modify the bidding procedures, and (iii) extend the marketing period, and (B) Borrower or an entity affiliated with Borrower or any member of Borrower (such entity, the "Substitute Purchaser"), shall assume the obligations of 1107 L&L under the L&L PSA, including, without limitation, the obligation to participate in the Auction.    Within three (3) Business Days of the occurrence of the L&L Withdrawal, the Substitute Purchaser shall provide written notice to Lender of the assumption, including, without limitation the identity of the assuming entity and any modifications of the L&L PSA as so assumed, which modifications must be acceptable to Lender.

4.3.    Auction Sale.  In the event there is a qualified bidder at the Auction who agrees to purchase the Property for a purchase price in the amount of $164,500,000 plus payment of all transfer taxes and Carry Costs (said aggregate amount, the "Floor Amount"), pursuant to a purchase and sale agreement (the "Auction PSA") that is in substantially the same form as the L&L PSA and which provides for a time is of the essence closing date that is on or before 90 days after the date of the Auction (the "Auction Sale"), then upon the closing of the Auction Sale, all proceeds, including the additional amounts that are payable by the bidder for transfer taxes, Carry Costs and any adjustments shall be allocated and disbursed as follows (the "Auction Waterfall"):

(i)    *First*, to the payment of any transfer taxes;

(ii)    *Then*, the Carry Cost Amount to Mortgage Lender;

(iii)    *Then*, $142,500,000 to Mortgage Lender;

(iv)    *Then,* $19,000,000 to Mortgage Borrower;

(v)    *Then*, $2,500,000 to L&L as a "break-up fee" pursuant to Section 23 of the L&L PSA; provided no break-up fee shall be payable in the event of an L&L Withdrawal; and

(vi)    *Then*, any additional proceeds shall be allocated 50% to Mortgage Lender and 50% to Mortgage Borrower.

4.4.    L&L Sale.  In the event that there is no bidder at the Auction meeting the requirements of Section 4.3 above, then Mortgage Borrower shall proceed with the L&L Sale pursuant to the terms and conditions of the L&L PSA, and upon the closing of the L&L Sale, all proceeds, including the Deposit, transfer taxes, Carry Costs and any adjustments shall be allocated as follows (the "L&L Waterfall"):

(i)    *First*, to the payment of any transfer taxes;

(ii)    *Then*, the Carry Cost Amount to Mortgage Lender;

(iii)    *Then*, $142,500,000 to Mortgage Lender; and

16355541.16.BUSINESS

(iv)    *Then*, $19,000,000 to Mortgage Borrower.

4.5.    <u>Payment of Eastdil</u>.  Notwithstanding the fact that Eastdil shall be retained by Mortgage Borrower, Lender acknowledges and agrees that in the event of the closing of either the L&L Sale or the Auction Sale, the fee payable to Eastdil attributable to the first $164,000,000 of proceeds (specifically excluding any adjustments for Carry Cost Amount and transfer taxes) shall be paid by Lender.  The fee payable to Eastdil attributable to any additional proceeds (specifically excluding any adjustments for Carry Cost Amount and transfer taxes) shall be paid 50% by Lender and 50% by Borrower. Such payments shall be made from the proceeds distributable to such party from any such sale.

4.6.    <u>Failure to Close under the L&L PSA or Auction PSA</u>.

(a)    In the event that the purchaser (including if applicable, the Substitute Purchaser) under the L&L PSA or the Auction PSA fails to close the L&L Sale or the Auction Sale, as the case may be, as determined by Lender in its sole and absolute discretion (the "<u>Failure to Close</u>"), then promptly after the occurrence of the Failure to Close, Lender shall instruct the escrow agent under the L&L PSA or the Auction PSA, as the case may be, to release any deposit being held pursuant to the L&L PSA or the Auction PSA, as follows:  50% to Mortgage Lender and 50% to Mortgage Borrower.

(b)    In the event the Auction had resulted in a designated back up bidder in accordance with the Auction Terms (which may be L&L) (the "<u>Back Up Bidder</u>"), then Mortgage Borrower shall proceed with a sale of the Property to the Back Up Bidder and the proceeds and adjustments of any such sale shall be applied pursuant to <u>Section 4.3</u> above (or <u>Section 4.4</u> above, in the event L&L is the Back Up Bidder).  A sale to the Back Up Bidder pursuant to this <u>subsection (b)</u> shall be an "Auction Sale" and its related purchase and sale agreement, an "Auction PSA", for purposes of this Agreement, including, without limitation <u>subsection (a)</u> above.

(c)    In the event there is no Back Up Bidder, or there occurs a Failure to Close by the Back Up Bidder, then within three (3) Business Days after the occurrence of the Failure to Close, Borrower shall give written notice to Lender of its election (the "<u>Election Notice</u>") either:

(i)    to make a payment (the "<u>Discounted Payoff</u>") to Lender in an amount (the "<u>Discounted Payoff Amount</u>") equal to (x) the Carry Cost Amount, plus (y) $142,500,000, which payment shall be made on or before the 30th day following the giving of the Election Notice, or

(ii)    to direct Settlement Escrow Agent to deliver to Lender within three (3) Business Days after the date of the Election Notice the Borrower Escrowed Documents, and to reasonably cooperate with Lender with respect to (x) Mortgage Lender's filing of the Stipulated Foreclosure Pleadings, prosecution of the Mortgage Foreclosure (subject to <u>Section 7.3</u> below, specifically excluding any claims against Guarantor), and appointment of a receiver if desired by Mortgage Lender, and/or,

at Lender's sole option, (y) Mortgage Lender's recording of the Deed and any other recordable Conveyance Document, and/or, at Lender's sole option, (z) Senior Mezzanine Lender's and/or Junior Mezzanine Lender's completion of the Senior Mezzanine Foreclosure and/or the Junior Mezzanine Foreclosure and enforcement of the Senior Mezzanine Foreclosure Consent and/or the Junior Mezzanine Foreclosure Consent (any and all) of the foregoing (x), (y) and/or (z), the "Property Conveyance").

    4.7.   Release and Delivery of Certain Documents.

    (a)   In the event of (a) a Discounted Payoff, or (b) the closing of either the L&L Sale or the Auction Sale, and simultaneously with (x) the payment of the Discounted Payoff Amount or (y) the distribution to Lender of proceeds pursuant to the L&L Waterfall or the Auction Waterfall, as the case may be:

    (i)   Settlement Escrow Agent shall (x) deliver to Mortgage Borrower the Stipulated Foreclosure Pleadings, the Deed, the Transfer Tax Forms, the Senior Mezzanine Foreclosure Consent, the Junior Mezzanine Foreclosure Consent, the Conveyance Documents, the Ground Lease Documents, the Citibank Lease Documents, and (y) deliver to Lender the Proofs of Claim Withdrawals, Certificates and Release of Lender.  Upon delivery of the Proofs of Claim Withdrawals to Lender pursuant to the terms hereof, Lender shall be fully authorized to file the Proofs of Claim Withdrawals; and

    (ii)   Lender shall deliver to Borrower the original promissory notes securing the Loans (or in the event the originals can not be located, customary lost note affidavits), UCC-3 termination statements and satisfaction of mortgages, evidencing the termination of the Lenders' respective security interests securing the Loans. Alternatively, at the request of Borrower, in lieu of satisfactions of mortgage, Mortgage Lender shall, at Borrower's request, execute an assignment of the mortgage liens that secure the Mortgage Loan to Borrower's designee provided that such assignment shall be without recourse, covenant or warrant of any nature, express or implied.

    (b)   Settlement Escrow Agent shall deliver to Borrower the Release of Borrower and Guarantor, (x) in the event of a L&L Sale or Auction Sale, simultaneously with the distribution of proceeds to Lender, (y) in the event of a Discounted Payoff, on the 91st day thereafter, and (z) in the event of a Property Conveyance, and title to and possession of the Property, the Senior Mezzanine Loan Collateral and/or the Junior Mezzanine Loan Collateral, as applicable, vesting in Lender, on the 91st day thereafter.

    4.8.   Encumbrances to Title.  Borrower acknowledges and agrees that Borrower shall not voluntarily permit any encumbrances or liens on the Property (excluding the Mortgage Loan) not existing as of the Effective Date.

16355541.16.BUSINESS

V.      [intentionally deleted]

VI.     **OPERATION OF PROPERTY**

    6.1.   <u>Operating Costs and Insurance</u>.

        (a)    Borrower acknowledges that Lender has previously paid certain operating and carry costs of the Property, including, but not limited to, costs related to maintaining the skybridge located on the Property, real estate taxes for 2011 assessed against the Property, and insurance premiums for the Property, as further detailed on **Schedule 2** attached hereto (the "<u>Paid Carry Costs</u>").  Borrower further acknowledges that from and after the Effective Date, Lender may elect, in its sole and absolute discretion, to fund future amounts to pay certain operating and carry costs associated with the Property (the "<u>Future Carry Costs</u>"; together with the Paid Carry Costs, the "<u>Carry Costs</u>"; for the avoidance of doubt all interest accrued on the amounts payable to Lender hereunder shall accrue at the Mortgage Loan contract rate).

        (b)    Lender acknowledges that it has paid the insurance premium for the Property through the Effective Date.  The Borrower Parties acknowledge that the insurance coverage carried by Lender is solely for the benefit of Lender and the Borrower Parties have no rights to receive any amounts that may be payable thereunder.  In the event of a casualty and Lender receives insurance proceeds in connection with such casualty, at Lender's option, in its sole and absolute discretion, Lender may (i) assign such insurance proceeds to Mortgage Borrower to be applied towards the restoration of the Property, or (ii) in the event of a Discounted Payoff, adjust the Discounted Payoff Amount to credit Borrower in the amount of such insurance proceeds received by Lender, or estimated by Lender to be received.  In the event of such an estimation, Lender shall promptly give notice to Borrower upon its receipt of actual insurance proceeds, including a notice of whether Lender was overpaid or underpaid and the amount of such discrepancy, and Borrower or Lender, as applicable, shall remit said discrepancy amount to the other within five (5) Business Days of receipt of Lender's notice.

    6.2.   <u>Work on the Property</u>.  From and after the Effective Date, Borrower agrees that no Borrower Party shall have the right to commence any work on or to the Property or to enter into any agreements with respect to the Property in contravention of the Loan Documents or that would have a binding effect on (i) Mortgage Lender in the event that Mortgage Lender took title to the Property through the Mortgage Foreclosure or the recording of the Deed or any other Conveyance Document as may be required, (ii) Senior Mezzanine Lender in its capacity as direct owner of Mortgage Borrower in the event that Senior Mezzanine Lender took title to the Senior Mezzanine Pledged Collateral through the Senior Mezzanine Foreclosure, and (iii) Junior Mezzanine Lender in its capacity as indirect owner of Mortgage Borrower in the event that Junior Mezzanine Lender took title to the Junior Mezzanine Pledged Collateral through the Junior Mezzanine Foreclosure, each in accordance with this Agreement, without the prior written consent of Lender.  Lender's consent may be conditioned on any and all of the following:

16355541.16.BUSINESS