(a)    the delivery of evidence reasonably satisfactory to Lender that Borrower or Guarantor has funds available for full payment of any work to be done to or on the Property, such funds to be evidenced by a cash deposit to be held in escrow with Lender or a letter of credit for the benefit of Lender, and the delivery of conditional lien waivers by any contractor performing such work;

       (b)    the terms of any such agreements providing that Lender shall have no liability thereunder if Lender takes title to the Property after the occurrence of a Borrower Default (as hereinafter defined);

       (c)    the terms of any such agreements expressly providing that such agreements will be subordinate to the rights of Lender; and

       (d)    the Court Approval shall have been obtained.

    6.3.   <u>Lender Remedies</u>.  Notwithstanding anything in this Agreement to the contrary, Borrower, Lender and Guarantor each agree that if within ten (10) days after receipt by Borrower of written notice from Lender of a default by any Borrower Party under this <u>Article VI</u>, Borrower fails to cure such default, the limitations set forth in the first sentence of the last paragraph of <u>Section 7.2</u> shall not be applicable.

## VII.   DEFAULT

    7.1.   <u>Borrower Default</u>.  Should any of the following occur (each a "<u>Borrower Default</u>"):

       (a)    Borrower fails to remit to Lender, Lender's share of any proceeds actually received by Borrower in connection with the closing of the L&L Sale or an Auction Sale;

       (b)    Borrower fails to pay to Lender the Discounted Payoff Amount on the closing date of the Discounted Payoff;

       (c)    Borrower fails to cooperate in the Auction, including the Auction Sale or the L&L Sale, as applicable, or pay its share of the fee payable to Eastdil pursuant to <u>Section 4.5</u> above;

       (d)    Borrower interferes with the release to Lender of the portion of any deposit held by an escrow agent pursuant to the terms of the L&L PSA or an Auction PSA that is to be paid to Lender pursuant to the terms hereof;

       (e)    Borrower fails to timely perform its obligations under <u>Section 4.6(c)</u> hereof, ***TIME BEING OF THE ESSENCE***;

       (f)    Borrower is in breach of any other material obligation hereunder, and fails to cure same within ten (10) days after written notice thereof from Lender;

16355541.16.BUSINESS

15

(g) Borrower allows a lien or other encumbrance to be placed on the Property in violation of Section 4.8 above and fails to cure the same within ten (10) days after written notice thereof from Lender; or

(h) the occurrence of an Interference Event;

then, Lender, at its election, shall provide written notice of the Borrower Default to the Settlement Escrow Agent, which notice shall instruct the Settlement Escrow Agent to release immediately the Borrower Escrowed Documents and the Borrower Escrowed Documents shall, upon such release, be deemed unconditionally delivered. For all purposes in calculating the time periods set forth above, the parties agree that **_TIME IS OF THE ESSENCE_**.

7.2. Lender Remedies. Upon the occurrence and during the continuance of a Borrower Default, Lender shall have the unilateral and absolute right to take any and/or all of the following actions (the "Lender Remedies"):

(a) receive the Borrower Escrowed Documents from the Settlement Escrow Agent;

(b) file the Stipulated Foreclosure Pleadings and prosecute the Mortgage Foreclosure;

(c) record the Deed and any other Conveyance Document that may be required to be recorded, and file the Transfer Tax Forms with the applicable governmental authorities;

(d) take control and possession of the Property;

(e) file the Proofs of Claim Withdrawals;

(f) enforce the Release of Lender;

(i) enforce the Senior Mezzanine Foreclosure Consent; and

(j) enforce the Junior Mezzanine Foreclosure Consent.

The Lender Remedies constitute the sole and exclusive remedies available to Lender with respect to the Borrower Defaults against Borrower and Guarantor. In addition, and notwithstanding the foregoing, in the event that an Interference Event occurs, then the limitation of remedies in the preceding sentence shall be null and void and Lender shall have access to all remedies available at law and in equity. Further, in the event the Borrower Escrowed Documents are released to Lender due to a Borrower Default under Sections 7.1(f) or 7.1(g) above, then, provided no Interference Event occurs, the Settlement Escrow Agent shall deliver the Release of Borrower and Guarantor to Mortgage Borrower and Guarantor on the 91st day after the transfer of title of the Property to Lender.

7.3. <u>Interference Event</u>. As used in this Agreement, an "<u>Interference Event</u>" shall mean (a) the occurrence of any obstruction, impediment, delay, or, the failure to reasonably cooperate by any Borrower Party with respect to the following actions by Lender, each pursuant to and in accordance with the terms of this Agreement: (i) prosecution of the Mortgage Foreclosure, including without limitation, with respect to the filing of the Stipulated Foreclosure Pleadings, (ii) recordation of the Deed or any other Conveyance Document that may be required to be recorded, (iii) taking possession and control of the Property, (iv) filing or enforcing the Proofs of Claim Withdrawals, (v) enforcing the Release of Lender, (vi) enforcing the Senior Mezzanine Foreclosure Consent, and (vii) enforcing the Junior Mezzanine Foreclosure Consent; (b) a Bankruptcy Event (as hereinafter defined) by any Borrower Party that results in the occurrence of any of the foregoing (a)(i)-(vii); (c) an act occurring on or after the Effective Date which gives rise to a claim under the Guaranty of Recourse Obligations, except for those acts arising under subsections (iii), (iv), (vi), (viii), (ix), (xii), (xiii) or (xiv) of the definition of "Partial Recourse Event" (as such term is defined in the Mortgage Loan Agreement); or (d) the granting of a lien or other encumbrance on the Property in violation of <u>Section 4.8</u> above after the applicable notice and cure period provided therein. Borrower and Guarantor acknowledge and agree that the Release of Borrower and Guarantor shall, by its terms, automatically be null and void and of no further force and effect upon the occurrence of an Interference Event.

7.4. <u>Rescission of Payments to Lender</u>. If at any time, the payment of all or any portion of any amount paid to Lender pursuant to the terms and conditions of this Agreement (including, without limitation, amounts under the L&L Waterfall, amounts under the Auction Waterfall, the Discounted Payoff Amount or the Carry Cost Amount) or the release of Lender contained in the Release of Lender is rescinded, withdrawn, avoided, overturned, clawed-back, retracted, made null and void or otherwise invalidated or must be otherwise restored or returned, in whole or in part, upon the occurrence of a Bankruptcy Event with respect to any Borrower Party, <u>then</u>:

(a) the Borrower shall indemnify and hold the Lender Parties harmless from and against, and shall reimburse the Lender Parties, for any actual out-of-pocket loss, actual damage, cost, expense, liability, claim or other obligation incurred by them (including, without limitation, reasonable attorneys' fees and reasonable costs incurred and such portion of the Settlement Amount of the Release of Lender that was rescinded, withdrawn, avoided, overturned, clawed-back, retracted, made null and void or otherwise invalidated, restored or returned) arising from the (1) acts and/or omissions of any Borrower Party or any affiliate of any Borrower Party in furtherance thereof, (2) consent, approval, agreement, solicitation thereof, and/or acquiescence thereto by any Borrower Party or any affiliate of any Borrower Party, if any, and/or (3) negligence, bad faith, fraud, willful misconduct and/or malfeasance of any Borrower Party or any affiliate of any Borrower Party in connection therewith,

(b) any release, termination and/or waiver granted pursuant to this Agreement, including, without limitation, the Release of Borrower and Guarantor, shall be automatically and unconditionally rescinded, withdrawn, overturned, retracted, and be

16355541.16.BUSINESS

17

deemed null and void *ab initio* and the liens of the Loan Documents and the Guaranties shall automatically be deemed to be unconditionally and absolutely restored to the same effect and priority as existed immediately prior to the Closing Date (and each of the Borrower Parties shall cooperate with Lender and execute and deliver such documents and instruments and do and perform such other acts deemed necessary and/or appropriate by Lender to effectuate the foregoing),

(c) the Borrower shall be unconditionally, absolutely, irrevocably and directly obligated to pay, or cause the payment of any amount actually payable to Lender pursuant to the terms and conditions of this Agreement (including, without limitation, amounts under the L&L Waterfall, amounts under the Auction Waterfall, the Discounted Payoff Amount or the Carry Cost Amount) and the delivery of the Release of Lender as contemplated under Article IV of this Agreement, and

(d) the Lender Parties shall have the sole and absolute right, exercisable upon notice to the Borrower Parties, to rescind, overturn, unwind, retract, make null and void and otherwise invalidate all or any of the transactions which shall have otherwise been consummated hereunder.

As used herein, "Bankruptcy Event" shall mean, with respect to any Borrower Party, the occurrence of any of the events described in Section 7.1(a)(vi) of the Mortgage Loan Agreement.

Each of the Borrower Parties hereby unconditionally, absolutely and irrevocably agrees not to assert any claims or counterclaims against, or otherwise interfere with, the exercise by any of the Lender Parties of the rights and remedies afforded to such parties under this Section 7.4. Notwithstanding the foregoing, nothing contained herein shall be deemed or construed as in any manner impairing, abridging or rescinding this Agreement, or any of the transfers and conveyances set forth or contemplated therein or herein.

## VIII. BORROWER REPRESENTATIONS AND WARRANTIES

8.1.    Borrower represents, warrants, acknowledges, certifies and agrees to and for the benefit of Lender that, as of the Effective Date:

(a) Default. Each of the Loans is in default, including, without limitation, by reason of the Maturity Default with respect to each Loan.

(b) Good Standing. Each entity that constitutes Borrower (i) is a duly organized and validly existing limited liability company in good standing under the laws of the State of Delaware, (ii) has the requisite power and authority to carry on its business as now being conducted, and (iii) is duly qualified to do business in each jurisdiction in which the nature of its business makes such qualification necessary or desirable.

(c) Authorization, No Conflict. The execution, delivery and performance by Borrower and Guarantor of this Agreement (i) have been duly authorized by all requisite action on the part of the Borrower, (ii) will not violate any provision of

16355541.16.BUSINESS

18

any applicable legal requirements, decree, injunction or demand of any court or other governmental authority, any organizational document of Borrower or any indenture or agreement or other instrument to which Borrower or Guarantor is a party or by which Borrower or Guarantor is bound, (iii) will not be in conflict with, result in breach of, or constitute (with due notice or lapse of time or both) a default under, or result in the creation or imposition of any lien of any nature whatsoever upon any of the property or assets of the Borrower or Guarantor pursuant to any such indenture, agreement or instrument, and (iv) have been duly executed and delivered by Borrower and Guarantor. Except for those obtained or filed on or prior to the Effective Date, neither Borrower nor Guarantor is required to obtain any consent, approval or authorization from, or to file any declaration or statement with, any governmental authority or other agency in connection with or as a condition to the execution, delivery or performance of this Agreement.

(d)     Enforceability. This Agreement constitutes a legal, valid and binding obligation of Borrower and Guarantor, enforceable against Borrower and Guarantor in accordance with its terms, subject to bankruptcy, insolvency and other limitations on creditors' rights generally and to equitable principles. By its execution of this Agreement, each of 1107 Broadway YT, LLC; Arbor Toy Holdings II, LLC; CF 1107 LLC and YT 7 West LLC hereby acknowledges and agrees that on behalf of itself, it hereby irrevocably and unconditionally consents to the transactions contemplated by this Agreement.

(e)     No Bankruptcy Intent. Neither Borrower nor Guarantor has any intent to (i) file any voluntary petition under any Chapter of the Bankruptcy Code, Title 11, U.S.C.A., or in any manner to seek any proceeding for relief, protection, reorganization, liquidation, dissolution or similar relief for debtors under any local, state, federal or other insolvency law or laws providing relief for debtors, (ii) directly or indirectly cause any involuntary petition under any Chapter of the Bankruptcy Code, Title 11, U.S.C.A. to be filed against Borrower or Guarantor, or (iii) directly or indirectly cause the Property or any portion or any interest of Borrower in the Property to become the property of any bankrupt estate or the subject of any proceeding for relief, protection, reorganization, liquidation, dissolution or similar relief for debtors under any local, state, federal or other insolvency law or laws providing relief for debtors. Each of Borrower and Guarantor acknowledges that the filing of any petition or the seeking of any relief in such a proceeding, whether directly or indirectly, would be in bad faith and solely for purposes of delaying, inhibiting or otherwise impeding the exercise by Lender of Lender's rights and remedies under the Loan Documents.

(f)     No Modifications. Other than as expressly set forth herein, there are no modifications, waivers, extensions, novations, to the Loan Documents and there has been no forgiveness of the Loans.

(g)     Survival. Without in any way limiting any provision of any of the Loan Documents which provide for a longer period of survival, Borrower hereby agrees that (i) all representations and warranties made by Borrower in this Agreement shall continue for so long as any amount remains owing to Lender in respect of the Loans or

16355541.16.BUSINESS

any of the other Loan Documents, and (ii) all representations, warranties and agreements made in this Agreement shall be deemed to have been relied upon by Lender notwithstanding any investigation heretofore or hereafter made by Lender or on its behalf.

## IX.   NOTICES

9.1.   Notwithstanding anything set forth in the Loan Documents to the contrary, all notices, consents, approvals and requests required or permitted hereunder or under any other Loan Document shall be given in writing and shall be effective for all purposes if hand delivered or sent by (a) certified or registered United States mail, postage prepaid, return receipt requested, or (b) national overnight delivery service, or (c) "PDF" transmission (provided that the original shall be simultaneously delivered by national overnight delivery service or personal delivery), or (d) personal delivery, addressed as follows (or at such other address as the parties hereto may designated from time to time, as the case may be, in a written notice to the other parties hereto in the manner provided for in this Section 9.1):

If to Mortgage Lender:

**Lehman Brothers Holdings Inc.**
1271 Avenue of the Americas
New York, New York 10020
Attention:   Joelle Halperin
(joelle.halperin@lamcollc.com)
Chad DeMartino
(chad.demartino@lamcollc.com)

With a copy to:

Dechert LLP
90 State House Square; 12th Floor
Hartford, Connecticut 06103
Attention:  Katherine A. Burroughs, Esq.
(katherine.burroughs@dechert.com)

If to Senior Mezzanine Lender:

**Lehman Brothers Holdings Inc.**
1271 Avenue of the Americas
New York, New York 10020
Attention:   Joelle Halperin
(joelle.halperin@lamcollc.com)
Chad DeMartino
(chad.demartino@lamcollc.com)

With a copy to:

16355541.16.BUSINESS

20