**Exhibit B**
**(The Fitts Declaration)**

US_ACTIVE:\43708004\11\58399.0003

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Jacqueline Marcus

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
LEHMAN BROTHERS HOLDINGS INC., et al.,    :    08-13555 (JMP)
                                          :
                Debtors.                  :    (Jointly Administered)
                                          :
                                          :
------------------------------------------------------------x
```

**DECLARATION OF JEFFREY**
**FITTS IN SUPPORT OF LEHMAN BROTHERS**
**HOLDINGS INC.'S MOTION PURSUANT TO SECTIONS 105 AND**
**363 OF THE BANKRUPTCY CODE AND RULE 9019 OF THE FEDERAL**
**RULES OF BANKRUPTCY PROCEDURE FOR APPROVAL OF SETTLEMENT**
**AGREEMENT RELATING TO REAL PROPERTY LOCATED AT 1107 BROADWAY**

I, Jeffrey Fitts, do hereby declare and depose that the following is true to the best of my knowledge, information, and belief:

1. I am a Managing Director with Alvarez & Marsal Real Estate Advisory Services ("A&M"). I submit this declaration in support of Lehman Brothers Holdings Inc.'s *Motion Pursuant to Sections 105(a), 363 And 365 of the Bankruptcy Code and Bankruptcy Rule 9019 for Approval of Settlement Agreement among LBHI, 1107 Broadway Mezz Holdings LLC, 1107 Broadway LLC, 1107 Broadway Mezz I LLC, 1107 Broadway Mezz II LLC, and Yitzchak Tessler Relating to Real Property Located At 1107 Broadway* (the "Motion") filed on May 25, 2011.

US_ACTIVE:\43708004\11\58399.0003

2.   I have more than 22 years of experience in assisting insolvent and troubled companies, with a focus on operational and financial restructuring efforts. Prior to joining A&M, I was a Managing Director with GE Commercial Finance ("GE"), where I led GE's Distressed Debt and Alternative Investment Group and managed complex distressed credits. Before joining GE, I was with the Corporate Workout Division (IRM) of Citicorp, where I spent three years managing investment grade and middle market corporate workouts. I began my career in 1990 as a workout officer and, later, an asset manager with Citicorp Real Estate, where I managed more than $1 billion of office, retail, and industrial projects. I received a bachelor's degree from the University of Delaware in 1988.

3.   I was assigned to the representation of Lehman in September 2008. I currently serve as the Co-Head of Lehman's real estate group (the "Real Estate Group"). My primary responsibility as Co-Head of the Real Estate Group is day-to-day management and oversight of Lehman's real estate portfolio, including management and oversight of the real estate, real estate finance and related activities that are the subject of the Motion and this Declaration. As Co-Head of the Real Estate Group, I oversee a number of Lehman employees who have been actively involved in finalizing the terms of the transactions described in this Declaration and in the Motion. If called to testify at the June 15, 2011 hearing on the Motion, the following would be my direct testimony.

4.   It is my business judgment that LBHI's entry into the Settlement Agreement[1] is in the best interests of LBHI's estate and its creditors. As described in the Motion, LBHI believes that the Borrowers have defaulted under their obligations under the Loans and Lehman is not currently receiving any return on its investment in the Property. While Lehman has commenced

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the Foreclosures and believes that they will ultimately result in LBHI's acquisition of title to the Property, such an outcome will require significant litigation which will be costly and time consuming. Further, even after LBHI has acquired title to the Property, it will still be required to (i) invest additional resources in the Property to complete the development process and conduct a sale, and (ii) resolve other disputes with the Borrowers and the Guarantor, including with respect to the Proofs of Claim.

5. The Settlement Agreement addresses these issues in several ways. First, the Settlement Agreement calls for a public auction process that gives LBHI the opportunity to monetize its interests in the Property at a market rate, either pursuant to the L&L PSA, which provides for a payment to Lehman of at least $142,500,000 (plus carry costs paid by LBHI with respect to the Property) or pursuant to an Auction PSA, which would provide an even more favorable return. In addition, the terms of the Settlement Agreement create an incentive for the Borrowers to conduct an auction process that maximizes the value of the Property. Second, if the Borrowers are not able to close with L&L or the proponent of the relevant Auction PSA, then the Borrowers have agreed to either acquire the Property on the terms of the L&L PSA, or convey the Property to LBHI pursuant to a deed in lieu of foreclosure – thereby relieving LBHI from the expense and delay attendant to the Foreclosures. In either scenario, the Borrowers and the Guarantor have agreed to withdraw the Proofs of Claim.

6. In light of these factors, I believe that entering into the Settlement Agreement is a reasonable exercise of LBHI's business judgment and is in the best interests of LBHI's estate and its creditors. Accordingly, the Settlement Agreement should be approved.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 25th day of May 2011.

/s/ Jeffrey Fitts
Jeffrey Fitts