WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **LEHMAN BROTHERS HOLDINGS INC.**, *et al.*, | : | **08-13555 (JMP)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

--------------------------------------------------------------------x

## NOTICE OF MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR APPROVAL OF THE TERMINATION OF THE SASCO 2008-C2 SECURITIZATION

PLEASE TAKE NOTICE that a hearing on the annexed motion (the "Motion") of

Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") and

their affiliated debtors in the above-referenced chapter 11 cases as debtors and debtors in

possession (together, the "Debtors"), pursuant to section 363 of the Bankruptcy Code, for

approval of the termination of the SASCO 2008-C2 securitization, all as more fully described in

the Motion, will be held before the Honorable James M. Peck, United States Bankruptcy Judge,

at the United States Bankruptcy Court, Alexander Hamilton Customs House, Courtroom 601,

One Bowling Green, New York, New York 10004 (the "Bankruptcy Court"), on **June 15, 2011**

**at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing").

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion shall

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules") and the Local Rules of the Bankruptcy Court for the Southern District of New York,

shall set forth the name of the objecting party, the basis for the objection and the specific grounds

thereof, shall be filed with the Bankruptcy Court electronically in accordance with General Order

M-242 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy

Court's case filing system and by all other parties in interest, on a 3.5 inch disk, preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing

format (with two hard copies delivered directly to Chambers), and shall be served upon:  (i) the

chambers of the Honorable James M. Peck, One Bowling Green, New York, New York 10004,

Courtroom 601; (ii) Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153, Attn: Richard P. Krasnow, Esq. and Mark Bernstein Esq., attorneys for the Debtors; (iii)

Alston & Bird LLP, 101 S. Tryon Street, Suite 4000, Charlotte, North Carolina, 28280, Attn:

Stacey Ackerman, Esq., attorneys for Wachovia Bank, National Association; (iv) Locke Lorde

Bissell & Lidell LLP, 600 Travis Street, Suite 2800, Houston, Texas 77002, Attn: Paul

Kjelsberg, Esq., attorneys for Wells Fargo Bank, National Association; (v) Kilpatrick, Townsend

& Stockton LLP, 1100 Peachtree Street, Suite 2800, Atlanta, Georgia, 30309, Attn: Rex Veal,

Esq., attorneys for Trimont Real Estate Advisors Inc.; (vi) the Office of the United States Trustee

for Region 2 (the "U.S. Trustee"), 33 Whitehall Street, 21st Floor, New York, New York 10004

Attn:  Elisabetta G. Gasparini, Esq., Andrea B. Schwartz, Esq., and Tracy Hope Davis, Esq.; and

(vii) Milbank, Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York

10005, Attn:  Dennis F. Dunne, Esq., Dennis O'Donnell, Esq., and Evan Fleck, Esq.,  attorneys

for the Official Committee of Unsecured Creditors appointed in these cases, so as to be so filed

and received by no later than **June 8, 2011 at 4:00 p.m. (prevailing Eastern Time)** (the

"Objection Deadline").

PLEASE TAKE FURTHER NOTICE that if an objection to the Motion is not received by the Objection Deadline, the relief requested shall be deemed unopposed, and the Bankruptcy Court may enter an order granting the relief sought without a hearing.

PLEASE TAKE FURTHER NOTICE that objecting parties are required to attend the Hearing, and failure to appear may result in relief being granted or denied upon default.

Dated: May 25, 2011
     New York, New York

            /s/ Richard P. Krasnow
            Richard P. Krasnow

            WEIL, GOTSHAL & MANGES LLP
            767 Fifth Avenue
            New York, New York 10153
            Telephone: (212) 310-8000
            Facsimile: (212) 310-8007

            Attorneys for Debtors
            and Debtors in Possession

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Richard P. Krasnow

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                                                        :        **Chapter 11 Case No.**
                                                             :
**LEHMAN BROTHERS HOLDINGS INC.**, *et al.*,    :        **08-13555 (JMP)**
                                                             :
                                    **Debtors.**             :        **(Jointly Administered)**
-------------------------------------------------------------------x

### MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE FOR APPROVAL OF THE TERMINATION OF THE SASCO 2008-C2 SECURITIZATION

TO THE HONORABLE JAMES M. PECK
UNITED STATES BANKRUPTCY JUDGE:

>        Lehman Commercial Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc.

("LBHI") and their affiliated debtors in the above-referenced chapter 11 cases, as debtors in

possession (together, the "Debtors"), submit this motion (the "Motion") and respectfully

represent:

### Preliminary Statement

>        1.        LBHI and LCPI collectively own all of the notes and preferred interests

issued by SASCO 2008-C2, LLC ("SASCO"), a special purpose entity formed to hold interests

in commercial real estate loans and other assets and to issue securities supported by the cash-

flows from such interests.  The Debtors have determined that the value of the underlying real

estate assets (the "<u>Underlying Assets</u>") can be maximized through active management, which is impeded at times by the current structure of the SASCO securitization.

2.       This Motion seeks approval of the termination of the SASCO securitization pursuant to the Termination Agreement, substantially in the form attached hereto as <u>Exhibit A</u> (the "<u>Termination Agreement</u>"), among LCPI, LBHI, SASCO, Wells Fargo Bank, National Association, as trustee, paying agent, calculation agent, custodial securities intermediary and notes registrar under the transaction document ("<u>Wells Fargo</u>"), and as successor to Wachovia Bank, National Association, as advancing agent and servicer under the transaction documents (the "<u>Servicer</u>"), and TriMont Real Estate Advisors, Inc., as special servicer under the transaction documents ("<u>TriMont</u>").  Pursuant to the Termination Agreement, LCPI and LBHI will pay, pro rata in proportion to each of their holdings of the notes issued by SASCO, all amounts payable (either directly or out of cash flow from SASCO's assets) by SASCO to each of Wells Fargo, the Servicer and TriMont under the terms of the transaction documents and each such party will be terminated.

3.       Following the transactions contemplated herein, SASCO will continue to hold its interests in the Underlying Assets and LBHI or LCPI shall retain the substantially identical economic interests in SASCO and the Underlying Assets as they currently hold.  The transactions described herein will enable the Debtors to achieve their overall business plan for the Underlying Assets and represents a reasonable exercise of LBHI's and LCPI's business judgment, and is in the best interests of their estate and creditors.  Accordingly, the relief requested in this Motion should be granted.

## **Background**

4.      Commencing on September 15, 2008 and periodically thereafter (as applicable, the "Commencement Date"), LBHI and certain of its subsidiaries commenced with this Court voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.      On September 17, 2008, the United States Trustee for Region 2 (the "U.S. Trustee") appointed the statutory committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Creditors' Committee").

6.      On September 19, 2008, a proceeding was commenced under the Securities Investor Protection Act of 1970 ("SIPA") with respect to Lehman Brothers Inc. ("LBI").  A trustee appointed under SIPA (the "SIPC Trustee") is administering LBI's estate.

7.      On January 19, 2009, the U.S. Trustee appointed Anton R. Valukas as examiner in the above-captioned chapter 11 cases (the "Examiner") and by order, dated January 20, 2009 [Docket No. 2583] the Court approved the U.S. Trustee's appointment of the Examiner.  On March 11, 2010, the Examiner filed its report with the Court (the "Examiner's Report") [Docket No. 7531]

8.      On January 25, 2011, the Debtors filed their first amended joint chapter 11 plan pursuant to section 1121 of the Bankruptcy Code [Docket No. 14150] and disclosure statement for their first amended joint chapter 11 plan pursuant to section 1125 of the Bankruptcy Code [Docket No. 14151].

## Jurisdiction

9.    This Court has subject matter jurisdiction to consider and determine this

matter pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b).

## Lehman's Business

10.    Prior to the events leading up to these chapter 11 cases, Lehman was the

fourth largest investment bank in the United States.  For more than 150 years, Lehman had been

a leader in the global financial markets by serving the financial needs of corporations,

governmental units, institutional clients and individuals worldwide.

11.    Additional information regarding the Debtors' businesses, capital

structures, and the circumstances leading to the commencement of these chapter 11 cases is

contained in the Affidavit of Ian T. Lowitt Pursuant to Rule 1007-2 of the Local Bankruptcy

Rules for the Southern District of New York in Support of First-Day Motions and Applications,

filed on September 15, 2008 [Docket No. 2].

## Relief Requested

12.    This Motion seeks approval of (i) the termination of the SASCO

securitization in the manner set forth in the Termination Agreement and (ii) the payment by

LBHI and LCPI, *pro rata* in amounts proportionate to their ownership interests in the notes

issued by SASCO, of all amounts due and payable to Wells Fargo, the Servicer and TriMont in

the amounts set forth in the Termination Agreement (either directly or out of collections held by

Wells Fargo, as trustee).

## The SASCO Securitization

13.    Prior to the Commencement Date, in order to increase liquidity, the

Debtors sold participations (the "Participations") in the Underlying Assets to SASCO.  LBHI or

LCPI, as applicable, remains the lender of record for most of the Underlying Assets and may

own other loans or interests related to the participated portion.  SASCO, in turn, issued one class

of notes with an initial outstanding amount of $2,050,000,000 (the "Notes")  secured by the

Underlying Assets and the cash flow therefrom, and one class of preferred interests with an

initial notional amount of $1,384,909,548 (evidencing the economic equity interest in SASCO)

(the "Preferred Interests").

14.     As of the Commencement Date, (i) LCPI owned 28.3% of the Notes and

all of the Preferred Interests, (ii) Lehman Brothers Bankhaus AG ("Bankhaus"), a non-Debtor

affiliate of LBHI, owned 70.7% off the Notes (the "Bankhaus Notes") and (iii) Lehman Brothers

Inc. owned 0.99% of the Notes.  Pursuant to an order entered by this Court on March 23, 2011

[Docket No. 15278], LBHI purchased the Bankhaus Notes from Bankhaus.  The portion of the

Notes held by LBI on the Commencement Date were subsequently transferred to a third party.

LCPI subsequently acquired the 0.99% of the Notes.

15.     The structure of the SASCO securitization, has impeded the efficient and

economic management of the Underlying Assets.  Specifically, the Participation Agreement and

Indenture (each as defined below) impose various restrictions and/or contain consents required in

order for LBHI and LCPI to take actions with respect to the Underlying Assets, including the

restructuring or sale of such assets.  The Underlying Assets require active management if such

assets are in default or if there is an opportunity for a sale of such assets on short notice.  In

addition, the Debtors often own other loans to the borrowers, or equity interests in various real

estate investments, that relate to the Underlying Assets.  The restrictions contained in the

SASCO securitization inhibit the Debtors' ability to maximize the value of assets held outside of

the securitization.  Moreover, the SASCO securitization is expensive and provides for the

payment of fees and expenses of Wells Fargo, the Servicer and TriMont for their services.  The

Debtors have determined that it is in their best interests to terminate the SASCO securitization. As described below, the transactions described herein will not have any affect on the economic interests currently held by LBHI and LCPI in SASCO or the Underlying Assets.

16.    Wells Fargo, the Servicer and TriMont each serve a role in administering the Underlying Assets and the SASCO securitization.  The Transaction Documents provide for fees and expenses to be paid to such parties by SASCO out of the proceeds received on the Underlying Assets prior to making any distributions to holders of the Notes.  In addition, the Servicing Agreement (defined below) provides for the Servicer to be reimbursed by SASCO to the extent of any advances that it made on behalf of SASCO to preserve the value of the Underlying Assets.  The Servicing Agreement also provides for the payment to TriMont of workout fees in connection with the restructure of LBHI's interest in a loan secured by the assets of Hilton Hotel Corporation (the "Hilton Loans") and a loan secured by real property known as The Point ("The Point Loan"), which at one time were defaulted and are now performing.  As of the date hereof, the amounts set forth on Exhibit A to the Termination Agreement are due and payable by SASCO to Wells Fargo, the Servicer and TriMont under the terms of the Transaction Documents.  These parties are given an additional 90 days following the date of the Termination Agreement to bill SASCO for fees (accrued through the Termination Date) and expenses.

**The Termination Agreement**

17.    The salient terms of the Termination Agreement are set forth below.[1]

| | |
|---|---|
| ***Termination of the SASCO Transaction*** | Each of the following documents, (collectively, the "Transaction Documents") will be terminated and have no further force or effect: |

---

[1]    This summary, as well as the other descriptions of the Termination Agreement contained in the Motion (the "Summary") are qualified in their entirety by the provisions of the Termination Agreement.  This Summary is intended to be used for information purposes only and shall not, in any way, affect the meaning or interpretation of the Termination Agreement.  Capitalized terms used, but not otherwise defined herein, have the meanings ascribed to such terms in the Termination Agreement.

| | |
|---|---|
| ***Documents*** | (i) Indenture, dated as of May 22, 2008, among SASCO, Wachovia, Wells Fargo (the "Indenture"); |
| | (ii) Administrative Agency Agreement, dated as of May 22, 2008, among SASCO and Lehman Commercial Paper Inc. (as successor to Lehman Brothers Inc.); |
| | (iii) Preferred Interests Paying Agency Agreement, dated as of May 22, 2008 among SASCO and Wells Fargo; |
| | (iv) the Securities Account Control Agreement, dated as of May 22, 2008 among SASCO and Wells Fargo; and |
| | (v) Servicing Agreement, dated as if May 22, 2008 among LBHI, LCPI, SASCO, Wachovia, Wells Fargo and TriMont (the "Servicing Agreement"). |
| ***Notes and Preferred Interests*** | LBHI and LCPI will deliver the Notes and the Preferred Interests to Wells Fargo and Wells Fargo will cancel the Notes and the Preferred Interests. |
| ***Releases*** | Each of LCPI, LBHI and SASCO will release each of Wells Fargo, the Servicer and Trimont from all liability, expenses and claims of any kind arising under or related to the Indenture, the obligations thereunder, including without limitation the obligation to make payments on the Notes, or the Transaction Documents, their negotiation, execution, performance, any breaches thereof, or their termination pursuant to the Termination Agreement, other than claims arising from gross negligence or willful misconduct of Wells Fargo, the Servicer and Trimont. |
| | Each of Wells Fargo, the Servicer and Trimont will release each of LCPI, LBHI and SASCO from all liability, expenses and claims of any kind arising under or related to the Indenture, the obligations thereunder, including without limitation the obligation to make payments on the Notes, or the Transaction Documents, their negotiation, execution, performance, any breaches thereof, or their termination pursuant to the Termination Agreement, other than claims arising from gross negligence or willful misconduct of LCPI, LBHI and SASCO, except TriMont will continue to receive workout fees in connection with the Hilton Loans and The Point Loan, since the rights to these fees survive the termination of the Servicing Agreement. |
| | Wells Fargo will release its lien on the Underlying Assets. |
| ***Outstanding Fees and Expenses*** | LBHI and LCPI will pay the following amounts to the applicable party on the Termination Date pro rata in proportion to each of their holdings of the Notes: |

|  | Wells Fargo: | $62,117.35 |
|--|--------------|-----------|
|  | Servicer: | $17,607,355.69 |
|  | TriMont: | $275,785.45 |

Such amounts may be increased by the amounts of fees (accrued through the Termination Date) and expenses that are billed within 90 days after the date of the Termination Agreement.

These amounts represent the total amounts owing to such parties under the Transaction Documents.

***Claims Filed Against Debtors Relating to SASCO***      Wells Fargo, at the direction of LBHI and LCPI, will withdraw with prejudice all filed proofs of claim filed against any of the Debtors based on the Transaction Documents and the SASCO securitization.

18.     Simultaneously with the consummation of the transactions set forth in the Termination Agreement, the Participation Agreement will be amended to modify any provisions that restrict the administration of the Underlying Assets by LBHI and LCPI.  In addition, the Notes previously held by LBHI and LCPI may be converted into preferred equity interests in SASCO in identical outstanding amounts and with substantially identical terms to the currently outstanding Notes.  The Limited Liability Company Agreement of SASCO will be amended to provide for the distributions of proceeds collected by SASCO on the Underlying Assets to the holders of the Notes (or if the Notes are converted to preferred interests, then to the preferred interests) in the same manner and priority as provided for in the indenture for distributions on the Notes.  If the Notes are converted to preferred interests in SASCO, then the existing Preferred Interests will be converted into regular membership interests in SASCO.

19.     The effect of the foregoing transactions is that SASCO will continue to hold the Participations in the Underlying Assets and LBHI and LCPI will retain the exact same economic rights vis-à-vis SASCO that they currently hold.  The administration of the assets Underlying Assets following these transactions will enable the Debtors to maximize the value of such assets for the benefit of their estates and creditors.

**The Termination of the SASCO Securitization and
Payment of Fees and Expenses of Various Third Parties
Represent An Appropriate Exercise of The Debtors' Business Judgment**

20.    Ample authority exists for approval of the proposed termination of the

SASCO securitization and the payment by LBHI and LCPI of the fees and expenses as set forth

in the Termination Agreement.  Section 363 of the Bankruptcy Code provides, in relevant part,

"[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course

of business, property of the estate." 11 U.S.C. § 363(b)(1).

21.    While section 363 of the Bankruptcy Code does not set forth a standard

for determining when it is appropriate for a court to authorize the sale, disposition or other use of

a debtor's assets, courts in the Second Circuit and others, in applying this section, have required

that it be based upon the sound business judgment of the debtor.  *See In re Chateaugay Corp.*,

973 F.2d 141 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must

find from the evidence presented a good business reason to grant such application); *Comm. of

Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983)

(same).

22.    In the previous motion filed with this Court seeking authority to purchase

the Bankhaus Notes, LBHI asserted that part of the justification for the purchase of the Bankhaus

Notes was the benefit that LBHI would receive from the termination of the SASCO

securitization.  [Docket No. 14743][2]  The termination of the SASCO securitization will permit

LBHI and LCPI to eliminate the approval procedures and other provisions currently in place that

---

[2] The Note Sale Agreement, dated as of March 1, 2011 by and between LBHI and Dr. Michael C. Frege, in his
capacity as insolvency administrator over the assets of Lehman Brothers Bankhaus AG (the "Note Sale
Agreement"), provides that following the occurrence of certain events, LBHI's could require Bankhaus to
repurchase the Bankhaus Notes from LBHI.  The Note Sale Agreement further provides that to the extent the
SASCO securitization has been terminated, instead of transferring the Bankhaus Notes back to Bankhaus, LBHI will
transfer to Bankhaus all proceeds from the Underlying Assets. The relief requested herein does prejudice
Bankhaus's rights under the Note Sale Agreement in any respect.

restrict the modification, restructuring or sale of the Underlying Assets. LBHI and LCPI remain

the lender of record for many of the Underlying Assets and, in many cases, hold other loans or

interests that relate to the Underlying Assets. The Underlying Assets and related interests

require active management, including modification of terms, restructurings and sales in order to

maximize their value. Often it is necessary to enter into such transactions on short notice. The

flexibility to manage the Underlying Assets will permit LBHI and LCPI to take the necessary

actions to maximize the value of such assets. The termination of the SASCO securitization will

also avoid the ongoing payment of significant fees and expenses to Wells Fargo, the Servicer and

TriMont for services performed in connection with the securitization. For example, for the

month of April 2011, expenses were $1.8 million, including over $200,000 in fees to Wells

Fargo, the Servicer and TriMont. This Court previously approved the termination of the Pine

CCS, Ltd. securitization for similar reasons as set forth herein.

        23.      The payment by LBHI and LCPI of the amounts set forth above to Wells

Fargo, the Servicer and TriMont is in the best interests of their estates. Currently, under the

terms of the Transaction Documents, amounts due to such parties are paid by SASCO from the

proceeds of the Underlying Assets prior to making any distributions to LBHI and LCPI on the

Notes. As a result, such amounts are effectively paid out of LBHI's and LCPI's interests in the

Underlying Assets. Most of the amounts to be paid to the Servicer represent unreimbursed

servicing advances. Under the Servicing Agreement, these would normally be reimbursed from

collections on the related loans. The payment of the amounts directly by LBHI and LCPI

pursuant to the Termination Agreement (in the event that collections held by the trustee are

insufficient therefore) merely accelerates the payment. LBHI and LCPI will recoup such paid

amounts from future proceeds of the Underlying Assets. In addition, the termination of the

SASCO securitization will eliminate any future fees and expenses that would otherwise have been payable to Wells Fargo, the Servicer and TriMont, other than the workout fees related to the Hilton Loans and The Point Loan.

24.     The Debtors believe that payment of the fees and expenses, the reimbursement of the Servicer for the Servicing Advances, and the ongoing payments to TriMont of the workout fees are minimal compared to the benefits they will receive from the termination of the SASCO securitization and the maximization of the Underlying Assets.  Moreover, as described above, Wells Fargo, the Servicer and TriMont would have been entitled to such amounts from the proceeds of the Underlying Assets in any event.  The payment of such amounts by LBHI and LCPI, as part of the termination of the SASCO securitization, is in the best interests of the Debtors, their estates and creditors.

25.     While LBHI and LCPI believe that authorization of the Court is not required in order to terminate the SASCO Transaction Documents, since Debtors are paying the fees and expenses of Wells Fargo, the Servicer and TriMont pursuant to this transaction, this motion seeks authority for the transactions set forth herein, including the payment of the fees and expenses and the termination of the SASCO Transaction Documents.

26.     For all the foregoing reasons, entry into the Termination Agreement, the termination of the SASCO securitization and the payment by LBHI and LCPI of all amounts due and payable to Wells Fargo, the Servicer and TriMont represent an exercise of the Debtors' sound business judgment, is in the best interest the Debtors' estates and creditors, and all other parties in interest, and should be approved.

## **Notice**

27.     No trustee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the U.S. Trustee; (ii) the attorneys for the Creditors'

Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys for TriMont; (vii) the attorneys for Wells Fargo; and (viii) the attorneys for the Servicer; (ix) all other parties entitled to notice in accordance with the procedures set forth in the second amended order entered on June 17, 2010 governing case management and administrative procedures for these cases [Docket No. 9635].  The Debtors submit that no other or further notice need be provided.

28.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated:  May 25, 2011
        New York, New York


/s/ Richard P. Krasnow
Richard P. Krasnow

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

## Exhibit A

**Termination Agreement**

# TERMINATION AGREEMENT

This Termination Agreement (the "<u>Agreement</u>") is entered into as of May 25, 2011, among SASCO 2008-C2, LLC, as issuer under the Transaction Documents (as defined herein) ("<u>SASCO</u>"), Wells Fargo Bank, National Association ("<u>Wells Fargo</u>"), not in its individual capacity, but in its capacities as trustee, paying agent, calculation agent, transfer agent, custodial securities intermediary and notes registrar (the "<u>Trustee</u>"), as Preferred Interests Paying Agent (the "<u>Preferred Interests Paying Agent</u>"), and as Securities Intermediary (the "<u>Securities Intermediary</u>") under the respective Transaction Documents, Wells Fargo Bank, National Association, as successor to Wachovia Bank, National Association, as advancing agent and servicer under the Transaction Documents (collectively, the "<u>Servicer</u>"), TriMont Real Estate Advisors, Inc., as special servicer under the Transaction Documents ("<u>TriMont</u>"), Lehman Brothers Holdings Inc., as owner and seller ("<u>LBHI</u>") and Lehman Commercial Paper Inc., as owner, seller and administrative agent under the Transaction Documents ("<u>LCPI</u>", and together with LBHI, the "<u>Lehman Parties</u>") (each a "<u>Party</u>", and collectively, the "<u>Parties</u>").

**WHEREAS**, SASCO, the Trustee and the Servicer are parties to that certain Indenture ("<u>Indenture</u>") dated as of May 22, 2008;

**WHEREAS**, SASCO and the Preferred Interests Paying Agent are parties to that certain Preferred Interests Paying Agency Agreement ("<u>Preferred Interests Paying Agency Agreement</u>") dated as of May 22, 2008

**WHEREAS**, LBHI, LCPI, SASCO, the Servicer, TriMont, the Trustee and Lehman Brothers Inc. ("<u>LBI</u>") are parties to that certain Servicing Agreement ("<u>Servicing Agreement</u>") dated as of May 22, 2008;

**WHEREAS**, LBI and SASCO are parties to that certain Administrative Agency Agreement ("<u>Administrative Agency Agreement</u>") dated as of May 22, 2008;

**WHEREAS**, LCPI and LBI are parties to that certain Assignment and Assumption Agreement dated as of October 30, 2008 (the "<u>Assignment and Assumption Agreement</u>") pursuant to which LCPI succeeded LBI as administrative agent under the Administrative Agency Agreement and the Servicing Agreement;

**WHEREAS**, SASCO, LCPI and LBHI are parties to that certain Master Participation Agreement dated as of May 22, 2008 (the "<u>Master Participation Agreement</u>" and together with the Indenture, Preferred Interests Paying Agency Agreement, Servicing Agreement, Administrative Agency Agreement, Assignment and Assumption Agreement and Master Participation Agreement, the "<u>Transaction Documents</u>");

**WHEREAS**, LCPI is the holder of $600,000,000 original principal amount of the Notes and 100% of the Outstanding Preferred Interests (as such terms are defined in the Indenture);

**WHEREAS**, LBHI and LCPI together constitute the Holders or beneficial owners of 100% of the Outstanding Notes and Preferred Interests;

**WHEREAS**, LBHI is the holder of $1,450,000,000 original principal amount of the Notes (as such term is defined in the Indenture); and

**WHEREAS**, the Parties desire to terminate the Transaction Documents (other than the Master Participation Agreement) on June 30, 2011 or such later date on which all the conditions to the Termination have been satisfied (the "Termination Date");

**NOW**, **THEREFORE**, the Parties, for valuable consideration, the sufficiency of which is hereby acknowledged, agree as follows:

1.      Definitions.   Capitalized terms used herein and not otherwise defined shall have the meanings specified in the Indenture and if not defined therein, in the Servicing Agreement.

2.      Incorporation of Recitals.   The above recitals are hereby incorporated into and made a part of this Agreement.

3.      Cancellation of the Notes and Preferred Interests.   LCPI and LBHI, as holders of 100% of the Outstanding Notes and Preferred Interests, and the Trustee and Preferred Interests Paying Agent, at the direction of LBHI and LCPI, agree that the Notes and Preferred Interests shall be surrendered by LBHI and LCPI to the Trustee and Preferred Interests Paying Agent on the Termination Date and the Trustee and Preferred Interests Paying Agent shall cancel on such date all Global Securities representing such Notes and Preferred Interests, and cancel and destroy any Certificated Notes or Preferred Interests in accordance with the Trustee and Preferred Interests Paying Agent's internal document retention policies.

4.      Representations and Warranties.

(a)     In order to induce the Parties to enter into and perform their respective obligations under this Agreement, SASCO hereby represents, warrants and acknowledges as follows:

(i)     it is a limited liability company duly organized, validly existing and of good standing in its state of organization;

(ii)     it has full limited liability company power, authority and right to execute, deliver and perform its obligations under this Agreement, and has taken all necessary corporate action or limited liability company action, as the case may be, to authorize the execution, delivery and performance by it of this Agreement;

(iii)     this Agreement has been duly executed and delivered by it, and constitutes the legal, valid and binding agreement of it, enforceable against it in accordance with its terms, except as enforceability may be limited by bankruptcy,

2

insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law;

(iv)    no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by it of this Agreement or any of the documents and instruments executed and delivered in connection herewith; and

(v)    it has good and valid title to and has not assigned, transferred or conveyed to any other person or entity, in whole or in part, including for security, any of its claims or causes of action that are the subject of this Agreement or any of the other documents and instruments executed and delivered in connection herewith.

(b)    In order to induce the Parties to enter into and perform their respective obligations under this Agreement, each of the Lehman Parties hereby represents, warrants and acknowledges as follows:

(i)    such Lehman Party is a corporation duly organized, validly existing and of good standing in its state of organization;

(ii)    subject to approval by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), such Lehman Party has full corporate power, authority and right to execute, deliver and perform its obligations under this Agreement, and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement;

(iii)    subject to approval by the Bankruptcy Court, this Agreement has been duly executed and delivered by such Lehman Party, and constitutes the legal, valid and binding agreement of such Lehman Party, enforceable against it in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law; and

(iv)    no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority (other than an order or other approval or consent of the Bankruptcy Court) is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by it of this Agreement or any of the documents and instruments executed and delivered in connection herewith;

(v)    it has good and valid title to the Notes and Preferred Interests identified in the above recitals and has not assigned, transferred or conveyed to any other person or entity, in whole or in part, including for security, any of such Notes or Preferred

Interests or any other claims or causes of action that are the subject of this Agreement or any of the other documents and instruments executed and delivered in connection herewith; and

(c)     In order to induce the Parties to enter into and perform their respective obligations under this Agreement, the Trustee and Preferred Interests Paying Agent hereby represents, warrants and acknowledges as follows:

(i)     it is a national association duly organized and validly existing under the laws of the United States;

(ii)     it has full corporate power, authority and right to execute, deliver and perform its obligations under this Agreement, and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement;

(iii)     this Agreement has been duly executed and delivered by Wells Fargo, and constitutes the legal, valid and binding agreement of it, enforceable against it in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law;

(iv)     no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by it of this Agreement or any of the documents and instruments executed and delivered in connection herewith; and

(v)     it has not assigned, transferred or conveyed to any other person or entity, in whole or in part, including for security, any of its claims or causes of action that are the subject of this Agreement or any of the other documents and instruments executed and delivered in connection herewith.

(c)     In order to induce the Parties to enter into and perform their respective obligations under this Agreement, TriMont hereby represents, warrants and acknowledges as follows:

(i)     TriMont is a corporation duly organized, validly existing and of good standing in its state of organization;

(ii)     TriMont has full corporate power, authority and right to execute, deliver and perform its obligations under this Agreement, and has taken all necessary corporate action to authorize the execution, delivery and performance of this Agreement;

(iii)     this Agreement has been duly executed and delivered by TriMont, and constitutes the legal, valid and binding agreement of TriMont, enforceable

against it in accordance with its terms, except as enforceability may be limited by bankruptcy, insolvency, reorganization or other similar laws affecting the enforcement of creditors' rights generally and by general principles of equity, regardless of whether such enforceability is considered in a proceeding in equity or at law;

(iv)    no action by (including any authorization, consent or approval), in respect of, or filing with, any governmental authority is required for, or in connection with, the valid and lawful authorization, execution, delivery and performance by TriMont of this Agreement or any of the documents and instruments executed and delivered in connection herewith; and

(v)    TriMont has good and valid title to and has not assigned, transferred or conveyed to any other person or entity, in whole or in part, including for security, any of its claims or causes of action that are the subject of this Agreement or any of the other documents and instruments executed and delivered in connection herewith.

5.    <u>Termination of the Transaction Documents</u>.    (a) Each of the Parties agrees that the Transaction Documents to which they are a party (other than the Master Participation Agreement) and the Notes and Preferred Interests shall terminate on the Termination Date following execution and delivery of this Agreement, the delivery of the Notes and Preferred Interests to the Trustee and the Preferred Interests Paying Agent, the delivery of notice (which may be by email) from the Trustee and the Preferred Interests Paying Agent to the other parties stating that the Trustee has received the Notes and the Preferred Interests and the receipt by the relevant Parties of the payments specified in Exhibit A whereupon any and all duties and obligations of the parties thereunder (other than the Master Participation Agreement) shall terminate and be of no further force or effect (the "Termination") except as expressly provided in this Agreement or that by their terms expressly survive the termination of the Transaction Documents (such as certain indemnification obligations).

(b) The Parties acknowledge and agree that, notwithstanding anything in the Servicing Agreement to the contrary, (a) as of the date hereof, the Servicer has no obligation to make any Servicing Advance or otherwise advance any funds for any Servicing Expense or other fees or expenses under the Servicing Agreement and (c) the Servicer shall not have any liability for failure to make any such Servicing Advance or advance any funds for any Servicing Expense or other fees or expenses under the Servicing Agreement.

6.    <u>Release of Assets</u>.    In furtherance of the transactions contemplated by this Agreement, the Trustee hereby releases its lien on the Assets, effective upon the Termination.    In connection with such release, Wells Fargo as the Trustee, hereby authorizes the filing of one or more UCC-3 financing statements with the Secretary of State of the State of Delaware and in any other applicable jurisdictions to evidence the release of the lien on such Assets.

5

7.    <u>Waiver of Notices</u>.   Each of the Parties agrees that (i) any and all conditions precedent (including, without limitation, any notices required to be delivered) contained in any of the Transaction Documents or other agreements referred to herein or contemplated hereby relating to the subject matter of this Agreement are hereby waived and (ii) each Termination described herein shall be effective without any further action by any party and notwithstanding any event, notice, waiting period or other condition provided for in any such Transaction Document or such other agreements referred to herein or contemplated hereby.

8.    <u>Further Assurances</u>.   Each Party hereby agrees to duly execute and deliver to LCPI or LBHI all such other and further instruments of conveyance, transfer and assignment and to take such other actions as LCPI or LBHI may reasonably deem necessary to effectuate the release of the Collateral and to take such further actions as may be reasonably requested by LCPI or LBHI to obtain the full and complete benefit of such release of the rights and property intended to be released hereunder subject, in each case, to the payment by LCPI or LBHI of such other party's costs and expenses (including reasonable counsel fees and disbursements) in connection therewith; <u>provided</u>, <u>however</u>, that a Party shall not be required to take any action which is contrary to any applicable law or to any provision of this Agreement..

9.    <u>Execution in Counterparts</u>.   This Agreement may be executed by the Parties in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement.

10.    <u>Amounts Outstanding</u>.   The Parties agree that (following the delivery and termination of the Notes and Preferred Interests), the amounts set forth in Exhibit A hereto are the only amounts currently owing to the Parties under the Transaction Documents on the date hereof (or known to become owing on or prior to the Termination Date); provided that to the extent other amounts not reflected on Exhibit A become owing on or prior to the Termination Date or in the event Exhibit A contains any errors, a Party may notify SASCO of such updated amount or error prior to the date that is 90 days from the date hereof and (i) SASCO shall direct the Trustee to pay such updated or corrected amount owing to such Party on or prior to the Termination Date or (ii) in the event such notice is delivered after the Termination Date, SASCO, LBHI or LCPI shall pay such updated or corrected amount within ten (10) days after receipt by SASCO of such notice. Such amounts shall be paid in full to the Parties by the Trustee as provided on Exhibit A (or pursuant to instructions of SASCO in accordance with the preceding sentence) on the Termination Date from amounts in the Accounts, except as provided above, any deficiency to be wire transferred to the Trustee by LCPI and LBHI in the proportion of their respective holdings of the Notes on or prior to the Termination Date.   Following distribution of amounts in the Accounts to pay such parties as set forth on Exhibit A, the Trustee and Securities Intermediary shall distribute the remainder to LBHI and LCPI through the Depository Trust Company as a payment on the Notes and shall close the Accounts.

11.     <u>Release of Wells Fargo, the Servicer and TriMont.</u>   In consideration of each other Party's execution of this Termination Agreement and the transactions contemplated hereby, effective upon the Termination, LCPI, LBHI and SASCO and any other party, person or entity claiming under or through them, hereby releases, discharges and acquits the Trustee, the Preferred Interests Paying Agent, the Servicer and TriMont, and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, a "<u>Non-Issuer Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that LBHI, LCPI and SASCO ever had or claimed to have, or now has or claims to have currently or at any future date, against any Non-Issuer Released Party arising under or related to the Indenture, the obligations thereunder including but not limited to the obligation to make payments on the Notes issued thereunder, or the Transaction Documents, their negotiation, execution, performance, any breaches thereof, or their termination pursuant to this Agreement (each a "<u>Claim</u>") other than Claims resulting from a Non-Issuer Released Party's own gross negligence or willful misconduct or any claim arising out of this Agreement (except for claims expressly released pursuant to Section 13 hereof).

12.     <u>Release of LCPI, LBHI and SASCO.</u>   In consideration of each other Party's execution of this Termination Agreement and the transactions contemplated hereby, effective upon the Termination, the Trustee, the Preferred Interests Paying Agent, the Servicer and TriMont and any other party, person or entity claiming under or through them, hereby releases, discharges and acquits LBHI, LCPI and SASCO, and their respective current and former agents, servants, officers, directors, shareholders, employees, subsidiaries, divisions, branches, units, affiliates, parents, attorneys, successors, predecessors, heirs, personal representatives, and assigns (each of the foregoing, an "<u>Issuer Released Party</u>"), from all manners of action, causes of action, judgments, executions, debts, demands, rights, damages, costs, expenses, and claims of every kind, nature, and character whatsoever, whether in law or in equity, whether based on contract (including, without limitation, quasi-contract or estoppel), statute, regulation, tort (including, without limitation, intentional torts, fraud, misrepresentation, defamation, breaches of alleged fiduciary duty, recklessness, gross negligence, or negligence) or otherwise, accrued or unaccrued, known or unknown, matured, unmatured, liquidated or unliquidated, certain or contingent, that the Trustee, the Preferred Interests Paying Agent, the Servicer and TriMont ever had or claimed to have, or now has or claims to have currently or at any future date, against any Issuer Released Party arising under or related to the Indenture, the obligations thereunder including but not limited the obligation to make to payments on the Notes issued thereunder, or the other Transaction Documents, their negotiation, execution, performance, any breaches thereof, or their termination

pursuant to this Agreement (each a "<u>Claim</u>") other than Claims resulting from an Issuer Released Party's own gross negligence or willful misconduct, Claims that by the terms of the Transaction Documents survive termination thereof (including but not limited to, the indemnification obligations set forth in Section 6.02 of the Servicing Agreement) or Claims arising out of this Agreement.   Notwithstanding the foregoing, TriMont shall continue to have rights to Workout Fees with respect to the Hilton Investment and The Point Investment (and for avoidance of doubt, no other Investment) as and to the extent provided in the Servicing Agreement.

        13.    <u>Direction to Wells Fargo</u>.

        (a)    LCPI, LBHI, SASCO, each consent and direct the Trustee, the Servicer and TriMont to execute this Agreement and take such actions as specified herein and each acknowledges and agrees that the Trustee, the Servicer and TriMont shall be fully protected in relying upon the foregoing consent and direction and hereby releases the Trustee, the Servicer and TriMont from any liability for complying with such direction, including but not limited to any claim that this Termination Agreement is not authorized or permitted by the Transaction Documents or any applicable law (including the Bankruptcy Code) or any claim that some or all of the conditions precedent to the execution of this Termination Agreement have not been complied with.

        (b)    LCPI and LBHI direct and instruct the Trustee, and the Trustee agrees, to withdraw with prejudice on the Termination Date any proofs of claim filed against LBHI, LCPI or any other Debtor that relate to the Transaction Documents or the transactions contemplated therein.

        14.    <u>Governing Law and Venue</u>.

        (a)    THIS AGREEMENT SHALL BE A CONTRACT MADE UNDER THE LAWS OF THE STATE OF NEW YORK AND THIS AGREEMENT AND ALL MATTERS ARISING OUT OF OR IN ANY MANNER RELATING TO THIS AGREEMENT SHALL BE GOVERNED BY THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO CHOICE OF LAW PRINCIPLES TO THE EXTENT SUCH PRINCIPLES WOULD APPLY A LAW OTHER THAN THAT OF THE STATE OF NEW YORK.

        (b)    To the maximum extent permissible by law, the Parties expressly consent and submit to the exclusive jurisdiction of the Bankruptcy Court over any actions or proceedings relating to the enforcement or interpretation of this Agreement or any documents executed and delivered in connection herewith and any Party bringing such action or proceeding shall bring such action or proceeding in the Bankruptcy Court.   Each of the Parties agrees that a final judgment in any such action or proceeding, including all appeals, shall be conclusive and may be enforced in other jurisdictions (including any foreign jurisdictions) by suit on the judgment or in any other manner provided by law.   If the Bankruptcy Court refuses or abstains from exercising jurisdiction over the enforcement of this Agreement or any other documents executed and delivered in connection herewith

and/or any actions or proceedings arising hereunder or thereunder, then the Parties agree that venue shall be in any court in the State of New York having proper jurisdiction. Each Party hereby irrevocably and unconditionally waives, to the fullest extent it may legally and effectively do so, (i) any objection which it may now or hereafter have to the laying of venue of any suit, action or proceeding arising out of or relating to this Agreement or any other documents executed and delivered in connection herewith with the Bankruptcy Court or with any other state or federal court located within the County of New York in the State of New York; and (ii) the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court. Each Party irrevocably consents to service of process in the manner provided for notices in Section 18 hereof. Nothing in this Agreement will affect the right, or requirement, of any Party to this Agreement to serve process in any other manner permitted or required by law.

15.    Waiver of Trial by Jury.    EACH OF THE PARTIES HERETO HEREBY KNOWINGLY, VOLUNTARILY, INTENTIONALLY, UNCONDITIONALLY AND IRREVOCABLY WAIVES ANY RIGHT TO A TRIAL BY JURY, AND FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS AGREEMENT OR ANY OTHER DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH OR IN RESPECT OF ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENT (WHETHER VERBAL OR WRITTEN) OR ACTION OF ANY PARTY OR ARISING OUT OF ANY EXERCISE BY ANY PARTY OF ITS RESPECTIVE RIGHTS UNDER THIS AGREEMENT OR ANY OTHER DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION HEREWITH OR IN ANY WAY RELATING TO THE TRANSACTIONS CONTEMPLATED HEREBY (INCLUDING, WITHOUT LIMITATION, WITH RESPECT TO ANY ACTION TO RESCIND OR CANCEL THIS AGREEMENT OR ANY OTHER DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION HEREWITH AND WITH RESPECT TO ANY CLAIM OR DEFENSE ASSERTING THAT THIS AGREEMENT OR ANY OTHER DOCUMENTS EXECUTED AND DELIVERED IN CONNECTION HEREWITH WAS FRAUDULENTLY INDUCED OR IS OTHERWISE VOID OR VOIDABLE). THIS WAIVER OF RIGHT TO TRIAL BY JURY IS INTENDED TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE. EACH OF THE PARTIES HERETO IS HEREBY AUTHORIZED TO FILE A COPY OF THIS SECTION 16 IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER. THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT FOR THE PARTIES HERETO TO ENTER INTO THIS AGREEMENT.

16.    Specific Performance.    Without limiting or waiving any rights or remedies under this Agreement now existing or hereafter arising at law, in equity or by statute, each Party acknowledges that there is no adequate remedy at law for a breach of the covenants and obligations of the Parties under this Agreement and each Party agrees that, except as otherwise expressly provided in this Agreement, the other Parties shall be entitled to specific performance of this Agreement as a remedy to any such breach, and each Party

hereby waives any legal or equitable defense to the granting thereof, including, without limitation, the requirement of posting a bond.

17.     Further Assurances.    From time to time after the Closing, without further consideration, the Parties will execute and deliver, or cause to be executed and delivered, such documents to the other Parties, and take such actions as the other Parties may reasonably request to consummate the transactions contemplated herein and to assure that the benefits of this Agreement are realized by the other Parties.

18.     No Admission of Liability.    Each Party acknowledges that this Agreement effects a settlement of potential claims and counterclaims and that nothing contained herein shall be construed as an admission of liability or wrongdoing.

19.     Entire Agreement.    This Agreement and all documents executed and delivered in connection herewith constitutes the entire and only agreement of the Parties concerning the subject matter hereof.    This Agreement supersedes and replaces any and all prior or contemporaneous verbal or written agreements between the Parties except as otherwise expressly provided herein.    The Parties acknowledge that this Agreement is not being executed in reliance on any verbal or written agreement, promise or representation not contained herein.

20.     No Oral Modifications.    This Agreement may not be modified or amended orally. This Agreement only may be modified or amended by a writing signed by a duly authorized representative of each Party hereto.    Any waiver of compliance with any term or provision of this Agreement on the part of any Party hereto must be provided in a writing signed by the other Parties hereto.    No waiver of any breach of any term or provision of this Agreement shall be construed as a waiver of any subsequent breach.

21.     Construction.    This Agreement constitutes a fully negotiated agreement among commercially sophisticated parties and therefore shall not be construed or interpreted for or against any Party, and any rule or maxim of construction to such effect shall not apply to this Agreement.

22.     Binding Effect; Successors and Assigns.    This Agreement shall inure to the benefit of and be binding upon the Parties and their respective successors and permitted assigns; provided, however, that no Party may assign its rights or obligations under this Agreement without the prior written consent of the other Parties, which consent may be granted or withheld in such Party's sole and absolute discretion and any assignment not in accordance with the terms hereof shall be null and void *ab initio*.

23.     Effectiveness of Agreement.    This Agreement shall be effective upon (i) execution and delivery thereof by the Parties and (ii) approval by the Bankruptcy Court of the transactions described herein pursuant to a Final Order.    A Lehman Party will provide a notice to the other Parties when the relevant approval has become a Final Order.

For the purpose of this Section 23, "<u>Final Order</u>" means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived in writing in form and substance satisfactory to LBHI and LCPI or, in the event that an appeal, writ for certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument, or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided*, *however*, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable law, may be filed with respect to such order shall not cause such order not to be a Final Order.

24.    <u>Headings</u>.    The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement or any provisions hereof or thereof.

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement as of day and year first above written.

LEHMAN COMMERCIAL PAPER INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13900

By: _____

Name: Jeff Fitts

Title: Authorized Signatory

LEHMAN BROTHERS HOLDINGS INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13555

By: _____

Name: Jeff Fitts

Title: Authorized Signatory

SASCO 2008-C2, LLC

By: LEHMAN COMMERCIAL PAPER INC. as Debtor and Debtor in Possession in its chapter 11 case in the United States Bankruptcy Court for the Southern District of New York, Case No. 08-13900 as Member

By: _____

Name: Jeff Fitts

Title: Authorized Signatory

WELLS FARGO BANK,
NATIONAL ASSOCIATION, as
Trustee and Preferred Interests Paying
Agent

By: _____
      Name: Tammy Blick
      Title: VICE PRESIDENT

WELLS FARGO BANK,
NATIONAL ASSOCIATION, as
Servicer and Advancing Agent

By: _____
      Name:
      Title:

TRIMONT REAL ESTATE
INVESTORS INC., as Special
Servicer

By: _____
      Name:
      Title:

WELLS FARGO BANK,
NATIONAL ASSOCIATION, as
Trustee and Preferred Interests Paying
Agent

By: _____
      Name:
      Title:

WELLS FARGO BANK,
NATIONAL ASSOCIATION, as
Servicer and Advancing Agent

By: _____
      Name: Nachette Hadden
      Title:   Vice President

TRIMONT REAL ESTATE
INVESTORS INC., as Special
Servicer

By: _____
      Name:
      Title:

WELLS FARGO BANK,
NATIONAL ASSOCIATION, as
Trustee and Preferred Interests Paying
Agent

By: _____
      Name:
      Title:

WELLS FARGO BANK,
NATIONAL ASSOCIATION, as
Servicer and Advancing Agent

By: _____
      Name:
      Title:

TRIMONT REAL ESTATE
INVESTORS INC., as Special
Servicer

By: _____
      Name: Brian D. Pittard
      Title: Authorized Signatory

**EXHIBIT A**

| Party | Itemized Amount | Total Amount |
|---|---|---|
| Trustee | - Trustee Expense (legal counsel): $15,000<br>- Trustee Expense (for ongoing 3rd party subpoena costs): $42,000<br>- Trustee termination fee: $8,000<br>- Trustee Fee & Preferred Paying Agent Fee for June 2011 Payment: $7,117.35 | $62,117.35 |
| Servicer | - Outstanding Advances: $16,892,948.84<br>- Interest on Advances: $687,212.93<br>- Projected Primary Fee: $4,795.34<br>- Projected Master Fee:$7,409.58<br>- Servicer Legal Fee: $15,000 | $17,607,355.69 |
| TriMont | - Legal Fees and Expense: $3,000<br>- TriMont Sub-Servicing Fees: $22,874.18<br>- TriMont Special Servicing Fees - May (partial): $100,827.98<br>- TriMont Special Servicing Fees - June: $140,148.35<br>- TriMont Travel Expenses: $880.67<br>- June Workout Fee - Project Murphy: $8,054.27 | $275,785.45 |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                 :

In re                             :        Chapter 11 Case No.
                                   :

LEHMAN BROTHERS HOLDINGS INC., *et al.*,   :        08-13555 (JMP)
                                   :

             Debtors.       :        (Jointly Administered)
                                   :
                                   :
------------------------------------------------------------------x

### ORDER PURSUANT TO SECTION AND 363 OF THE BANKRUPTCY CODE APPROVING THE TERMINATION OF THE SASCO 2008-C2 SECURITIZATION

        Upon the motion, dated May 25, 2011 (the "Motion"), of Lehman Commercial

Paper Inc. ("LCPI") and Lehman Brothers Holdings Inc. ("LBHI") and their affiliated debtors in

the above-referenced chapter 11 cases, as debtors and debtors-in-possession (collectively, the

"Debtors" and, together with their non-debtor affiliates, "Lehman") pursuant to section 363 of

the Bankruptcy Code, for approval of the termination of the SASCO 2008-C2 securitization, all

as more fully described in the Motion; and the Court having jurisdiction to consider the Motion

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the Standing

Order M-61 Referring to Bankruptcy Judges for the Southern District of New York Any and All

Proceedings Under Title 11, dated July 10, 1984 (Ward, Acting C.J.); and consideration of the

Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b);

and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Motion having been provided to (i) the U.S. Trustee; (ii) the attorneys for the

Creditors' Committee; (iii) the Securities and Exchange Commission; (iv) the Internal Revenue

Service; (v) the United States Attorney for the Southern District of New York; (vi) the attorneys

for Wells Fargo; (vii) the attorneys for Wachovia; (viii) the attorneys for TriMont; and (ix) all

other parties entitled to notice in accordance with the procedures set forth in the second amended

order entered on June 17, 2010 governing case management and administrative procedures for

these cases [Docket No. 9635]; and a hearing (the "Hearing") having been held to consider the

relief requested in the Motion; and the Court having found and determined that the relief sought

in the Motion is in the best interests of LCPI and LBHI, their estates and creditors, and all parties

in interest and that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion, that is granted; and it is further

ORDERED that pursuant to sections 105 and 363(b) of the Bankruptcy Code, (i)

Termination Agreement is approved, and LCPI and LBHI are duly authorized to execute, deliver,

implement and fully perform any and all obligations, instruments, documents and papers and to

take any and all actions reasonably necessary or appropriate to consummate the transactions set

forth in the Termination Agreement, including, without limitation, the payments to Wells Fargo,

the Servicer and TriMont set forth in the Termination Agreement; and it is further

ORDERED that notice of the Motion as provided therein shall be deemed good

and sufficient notice of such Motion; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising

from or related to the implementation of this Order and the Agreement.

Dated: _____, 2011
　　　　New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE